CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (___) |
| Debtors. | Joint Administration Pending |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND FOREIGN VENDORS, (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH CLAIMS AND (III) GRANTING RELATED RELIEF

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and these cases, the "Chapter 11 Cases"), hereby submit this motion (this "Motion") for entry of interim and final orders, substantially in the form attached hereto as Exhibit A (the "Proposed Interim Order") and Exhibit B (the "Proposed Final Order" and, together with the Proposed Interim Order, the "Proposed Orders"), pursuant to sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the United States

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

Code (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, certain prepetition claims of critical vendors and service providers (the "Critical Vendors" whose claims shall be collectively identified herein as the "Critical Vendor Claims"); (ii) certain foreign vendors and service providers located outside the United States (collectively, the "Foreign Vendors," whose claims shall be identified herein as the "Foreign Vendor Claims"); and (iii) authorizing banks and other financial institutions (collectively, the "Banks") to honor and process check and electronic transfer requests related to the foregoing. A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' Chapter 11 Cases (as defined herein), is set forth in the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations"),[2] filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012. This matter is a core proceeding within

---

[2]     Capitalized terms used but not defined herein shall have the meaning given to them in the First Day Declarations.

2

the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.      Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

5.      Over the past few months, the digital asset industry has experienced tremendous dislocation.  The collapse of LUNA and TerraUSD and subsequent liquidation of 3AC signalled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.  As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022.  Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed for Chapter 11 proceedings.

6.      These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business.  This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's

3

available liquidity.  As a result of the unprecedented number and size of the loan calls, on

November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors'

estates, ensure fair distribution and begin discussions with our stakeholders.

7.      Over the past two months, the Debtors and their advisors have engaged in extensive

negotiations with various advisors to creditor groups to explore strategic solutions.  In addition,

the Debtors have undertaken cost-saving and liquidity-preserving measures.  As a result of those

efforts, the Debtors have determined that an in-court process is the best path to continue their

efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

8.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are

operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the

Bankruptcy Code.  No trustee, examiner or official committee of unsecured creditors has been

appointed in the Debtors' Chapter 11 Cases.

9.      Additional information regarding the Debtors' business, capital structure and the

circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day

Declarations.

10.     While the Company's discussions with advisors to various creditor groups and

DCG have been very productive in narrowing issues, they have not yet achieved a global

resolution.  Accordingly, the Debtors commenced the Chapter 11 Cases to continue their efforts

towards a consensual resolution through a transparent, court supervised process.  To that end, the

Debtors are concurrently filing a proposed plan of reorganization, which will be amended as

necessary to reflect the results of our continued negotiations.

**VENDOR CLAIMS**[3]

11.     The Debtors have determined, in an exercise of their business judgment, that their continued receipt of certain goods and services is critical and necessary to ensure that there are no unexpected or inopportune interruptions in the Debtors' business operations, and to preserve and maximize the value of the Debtors' estates.  Accordingly, without the relief requested herein, many of the Critical Vendors and Foreign Vendors (collectively, the "Vendors") may cease delivering goods and providing services to the Debtors, which could be detrimental to the success of these Chapter 11 Cases.

12.     The Debtors respectfully submit that payment of the Critical Vendor Claims and Foreign Vendor Claims (collectively, the "Vendor Claims") should be authorized by the Court. The Debtors have reviewed their business relationships and identified the Vendors that, in the Debtors' sound business judgment, are so essential that the loss of their particular goods or services would cause immediate and irreparable harm to the Debtors' businesses.  If the Vendors are unwilling to provide such goods and services because of their outstanding prepetition claims, the Debtors' operations would suffer dramatically, complicating the Debtors' restructuring efforts and compromising the value of the Debtors' estates to the detriment of all creditors.  Such actions would have an immediate negative impact on the Debtors' ability to operate and would threaten critical long-term relationships with the Debtors' vendors, threatening the Debtors' continued successful business operations.  This relief is particularly necessary where segments of the Debtors' operations are located outside of the United States and local vendors or suppliers may be unfamiliar with the protections of the automatic stay or may assert that they are not subject to the jurisdiction of this Court.

---

[3]     All amounts contained herein are listed in U.S. dollars unless otherwise indicated.

13.    The Debtors estimate that, as of the Petition Date, the aggregate amount of the

Vendor Claims is approximately $100,000.

**The Vendors**

14.    Prior to the pause in lending on November 16, 2022, the Debtors operated a leading

digital asset borrowing and lending service.  The preservation of the business depends on the

Debtors' ability to retain their Vendors, which will allow the Debtors to continue to provide these

essential functions to their customers.  The Vendors supply the Debtors with essential,

hyperspecialized goods and services, including information technology platforms, cybersecurity

infrastructure, custodial storage, and resources for the Debtors' lending and borrowing operations.

These goods and services form the mainstay of the Debtors' businesses, and if access to these

goods and services were cut off or disrupted, even for a limited amount of time, the Debtors could

not operate and would therefore suffer irreparable harm.

15.    To identify the Critical Vendors, the Debtors reviewed their accounts payable and

prepetition vendor lists to identify those vendors and suppliers most essential to the Debtors'

operations pursuant to the following criteria:  (a) which suppliers were sole source or limited

source suppliers, without whom the Debtors could not continue operations without disruption; (b)

the Debtors' ability to find timely alternative sources of supply and the potential disruption while

sourcing a new supplier; (c) which suppliers would be prohibitively expensive to replace;

(d) which suppliers would present an unacceptable risk to the Debtors' operations given the

volume of essential services or products that such suppliers provide; and (e) whether a vendor

meeting the foregoing criteria is able or likely to refuse to ship product to the Debtors or provide

services post-petition if its prepetition balances are not paid.

16.    To the best of the Debtors' knowledge, the majority of Vendors are Foreign

Vendors, who may lack minimum contacts with the United States and, thus, may assert that they

are not subject to the jurisdiction of the Court or the provisions of the Bankruptcy Code that
otherwise protect the Debtors' assets and business operations—particularly the automatic stay.
Based on the knowledge of the Debtors' personnel regarding the Foreign Vendors, the Debtors
believe there is a material risk that these vendors holding Foreign Vendor Claims against the
Debtors may consider themselves to be beyond the jurisdiction of the Court and disregard the
automatic stay, or may simply be confused by the chapter 11 process. Notably, Foreign Vendors
that believe the automatic stay does not govern their actions may exercise self-help (if permitted
under local law), which could result in significant disruption to the Debtors' operations.

17.    Given the importance of the Vendors' good and services to the preservation of the
Debtors' business, even a temporary disruption in the good and services provided would have a
devastating effect on the Debtors' businesses. Accordingly, the Debtors need the ability to pay
the Vendor Claims on an uninterrupted basis.

## RELIEF REQUESTED

18.    The Debtors request that the Court enter the Proposed Orders authorizing the
Debtors to pay, in their discretion, the Vendor Claims[4] in an amount not to exceed (i) $70,000 on
an interim basis, and (ii) $100,000 on a final basis. The Debtors further request that they be
authorized, in their discretion, to condition the payment of Vendor Claims on the agreement of the
applicable vendors to continue supplying goods and services to the Debtors on terms that are as or
more favorable to the Debtors than the most favorable trade terms, practices, and programs in
effect between the applicable vendors and the Debtors in the six months prior to the Petition Date
(collectively, the "Customary Terms"), or such other trade terms as are agreed to by the Debtors
and the applicable vendors to the extent the Debtors determine, in their reasonable business

---

[4]    Nothing in this Motion is intended or should be construed as an admission as to the validity of any claim
against the Debtors or a waiver of the Debtors' rights to dispute any claim.

judgment, that such terms are necessary to procure essential services or are otherwise in the best interest of the Debtors' estates.

19.     The Proposed Orders require that if a Vendor, after receiving a payment under the Proposed Orders, ceases to provide Customary Terms, then the Debtors may, in their sole discretion, deem such payment to apply instead to any post-petition amount that may be owing to such Vendor or treat such payment as an avoidable post-petition transfer of property.

20.     To facilitate the payment of these Vendors, the Debtors additionally respectfully request that the banks that provide banking services to the Debtors be authorized and required to (i) honor any checks drawn against their accounts but not cleared prior to the Petition Date and (ii) complete any fund transfer requests made but not completed prior to the Petition Date.  In addition, the Debtors respectfully request authorization to issue new post-petition checks and to make post-petition fund transfer requests to replace any prepetition checks and prepetition transfers to the Vendors that may be dishonored by the banks.

## **BASIS FOR RELIEF**

### A.    **Payment of Prepetition Critical Vendor Claims and Foreign Vendor Claims Is Authorized Under Section 363 of the Bankruptcy Code**

21.     Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A debtor's decision to use, sell or lease assets outside the ordinary course of business requires only the sound business judgment of that debtor.  *See Off. Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Co. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court determining an application pursuant to section 363(b) must find from the evidence a good business reason to grant such application); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *In re*

*Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (same); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 676 (Bankr. S.D.N.Y. 1989) (standard for determining a section 363(b) motion is whether the debtor has a "good business reason" for the requested relief). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

22.     The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Significantly, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts in this district have consistently been unwilling to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *In re Integrated Res. Inc.*, 147 B.R. at 656.

23.     The Debtors have satisfied the business judgment standard. The Debtors have relationships with numerous Vendors that provide the Debtors with goods and services needed to

run the Debtors' business, and the Debtors interact with these Vendors pursuant to a variety of contractual relationships. In many cases, the Debtors' failure to pay Vendor Claims may result in certain Vendors stopping the provision of goods and services to the Debtors, which may severely disrupt the Debtors' business. While in certain cases the Debtors may successfully bring an action before this Court to compel a Vendor to perform, substantial damage—such as dissatisfied customers and related liability—may be incurred before the Debtors have succeeded in such an action. Additionally, the Debtors may have arrangements that are not executory in nature and counterparties to these arrangements may refuse to continue to do business with the Debtors unless paid on account of prepetition amounts due from the Debtors.

24.     Any disruption to the Debtors' operations that may result from the nonpayment of the Vendor Claims could threaten the Debtors' ability to efficiently maintain their operations and successfully restructure their business through these Chapter 11 Cases. Accordingly, it is prudent that the Debtors take any and all reasonable steps to pay Vendor Claims in the ordinary course during the Chapter 11 Cases, subject to the Vendors performing their obligations in accordance with the Customary Terms. Moreover, the Debtors, as debtors-in-possession, are fiduciaries of their estates. *See* 11 U.S.C. § 1107(a). As fiduciaries, the debtors must "maximiz[e] the value of the estate." *In re Smart World Techs., LLC*, 423 F.3d 166, 175 (2d Cir. 2005) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985)). The fiduciary requirement to maximize the value of the estate available to creditors may require the payment of prepetition claims. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Thus, section 363(b)(1) authorizes the payment of certain prepetition claims when the debtors, in their business judgment, believe that such payments would preserve or increase the value of the estate.

25.     Finally, the Debtors believe that failure to grant the relief requested may cause a contraction in trade terms with certain vendors or service providers—thereby disrupting going concern stability and the prospect for successful confirmation of a plan of reorganization.  Thus, the Debtors submit that the relief requested is warranted and narrowly tailored to facilitate their chapter 11 reorganization process.

**B.     Payment of the Vendor Claims Is Warranted Under Section 105(a) of the Bankruptcy Code and the "Necessity of Payment" Doctrine**

26.     The Court should likewise authorize the Debtors to pay the Vendor Claims pursuant to its equitable powers under section 105 of the Bankruptcy Code and the "doctrine of necessity." Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under [section] 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs*, 98 B.R. at 177); *accord In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) ("To invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is 'critical to the debtor's reorganization.'") (quoting *In re Fin. News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991)); *see also In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

27.     Federal courts have consistently permitted post-petition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286, 311-12 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945), *cert. denied* 325 U.S. 873 (1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–87 (S.D.N.Y. 1987), *appeal dismissed*, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

28.     The "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); *In re Just for Feet*, 242 B.R. at 824 ("[C]ourts have used their equitable power under section 105(a) of the Code to authorize the payment of pre-petition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization.").  The court in *In re Structurlite Plastics Corp.* observed the decisional authority which supports "the principle that a bankruptcy court may exercise its equity powers under

[section] 105(a) to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *In re Chateaugay Corp.*, 80 B.R. at 287). Indeed, the *Structurlite Plastics* Court stated that "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932. The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor . . ."*In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *see also Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (noting payment of certain prepetition claims outside of the Bankruptcy Code's priority scheme can promote reorganization of a debtor's business and maximization of the value of a debtor's estate). Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

## C.    Processing of Checks and Electronic Fund Transfers Should Be Authorized

29.    The Debtors have sufficient funds to pay the Vendor Claims. The Debtors believe there is minimal risk that check or wire transfer requests that this Court has not authorized will be inadvertently made. Before the Petition Date, the Debtors sent checks or electronic transfers on account of certain Vendor Claims that did not clear as of the Petition Date. To the extent any check or electronic transfer has not cleared their bank or financial institution (the "Banks") as of the Petition Date, the Debtors request that the Court authorize the Banks, in the Debtors' sole discretion, to receive, process, honor and pay the checks or electronic transfers. If the Creditors have not received payments for amounts owed, the Debtors seek authority to issue replacement checks, re-issue electronic transfers or otherwise make payment to such Creditors on account of the claim. The Debtors represent that each of the checks and electronic transfers can be readily

identified as relating directly to the authorized payment of amounts owed on account of Vendor Claims.

**D.      The Requirements of Bankruptcy Rule 6003(b) Are Satisfied**

30.      Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr.  P. 6003.  For the reasons discussed above and in the First Day Declarations, authorizing the Debtors to pay the Vendor Claims and granting the other relief requested herein is critical to the Debtors' ability to continue operating with the least amount of disruption as possible following the Petition Date.  Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtor's restructuring.  The relief requested is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**E.      Reservation of Rights**

31.      Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; (e) a waiver of the requirement for a creditor to comply with any bar date established by order of the Court or (f) anything otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to the Proposed Orders once entered.  The Debtors expressly reserve their right to contest any claim

related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Proposed Orders is not intended to be, nor should be construed as, an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute that claim.

**F.      Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

32.      To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

33.      Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iii) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; and (vi) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

34.      No prior motion for the relief requested herein has been made to this or any other Court.

*[The remainder of this page is left intentionally blank]*

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) enter the orders, substantially in the form attached hereto as <u>Exhibits A</u> and <u>B</u>, and (b) grant such other and further relief as is just and proper.

Dated:    January 20, 2023            */s/ Sean A. O'Neal*
             New York, New York        Sean A. O'Neal
                                          Jane VanLare
                                          CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                          One Liberty Plaza
                                          New York, New York 10006
                                          Telephone: (212) 225-2000
                                          Facsimile: (212) 225-3999

                                          *Proposed Counsel to the Debtors and*
                                          *Debtors in Possession*

# **EXHIBIT A**

## **Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (___) |
| Debtors. | Joint Administration Pending |

### INTERIM ORDER (I) AUTHORIZING,
### BUT NOT DIRECTING, THE DEBTORS TO PAY
### CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND
### FOREIGN VENDORS, (II) AUTHORIZING AND DIRECTING FINANCIAL
### INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS
### RELATED TO SUCH CLAIMS AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Genesis Global Holdco, LLC and the affiliated debtors

and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of

an order (this "Interim Order") (i) authorizing, but not directing, the Debtors, in their discretion,

to pay all or a portion of the prepetition claims of the Critical Vendors and Foreign Vendors in the

ordinary course of business; and (ii) authorizing the Banks to honor and process check and

electronic transfer requests related to the foregoing; and (iii) granting the Debtors such other and

further relief as the Court deems just and proper, all as more fully set forth in the Motion; and due

and sufficient notice of the Motion having been given under the particular circumstances, and it

appearing that no other or further notice is necessary, and upon the *Declaration of A. Derar Islim*

*in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the

"Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

*Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having determined that consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter an interim order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      Objections to entry of the Final Order must be filed by _____, 2023 at 4:00 pm. (ET) and served on: (i) counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn: Sean A. O'Neal, Esq. and Jane VanLare, Esq.; (ii) the United States Trustee, 201 Varick Street, Room 1006, New York, New York, 10014,

Attn.: Greg Zipes, Esq.   A final hearing, if required, on the Motion will be held on

_____, 2023 at _____ __.m. (ET) (the "Final Hearing").   If no

objections are filed to the Final Order, the Court may enter the Final Order without further notice

or hearing.

3.      The Debtors are authorized, but not directed, in their sole discretion, to continue

their prepetition business operations, policies and programs and pay the prepetition amounts owed

to Vendors on account of Vendor Claims on a post-petition basis in the ordinary course of business;

provided, however, that any payments shall only be made as they become due, and that no

payments shall be accelerated prior to the final hearing of this Motion.  Pursuant to this Interim

Order, payments to Vendors shall not exceed $70,000 in the aggregate, except to the extent such

payments are authorized by separate order of the Court (the "Interim Vendor Cap").

4.      The Debtors are authorized, but not directed, to condition payment of Vendor

Claims on a Vendor's maintenance or application of Customary Terms; provided, however, that

any Vendor that accepts payment pursuant to the authority granted in the Interim Order agrees to

supply goods and services to the Debtors post-petition on Customary Terms or on such other

favorable terms as are acceptable to the Debtors; provided further that the Debtors' inability to

agree on Customary Terms shall not preclude them from paying the claim of a Vendor if the

Debtors determine, in the reasonable exercise of their business judgment that such payment is

necessary to the Debtors' operations.

5.      If a Vendor, after receiving payment on account of a Vendor Claim, ceases to

provide Customary Terms or otherwise fails to perform under a contract with a Debtor, the Debtors

may, without further notice to or action, order or approval of the Bankruptcy Court, deem such

payment to apply to post-petition amounts payable to such Vendor.  Such Vendor shall then

3

immediately repay to the Debtors any payments made to it on account of its Vendor Claims to the extent that such payments exceed the post-petition amounts then owing to such Vendor, without the right of setoff or reclamation, it being the express intention of this Court to return the parties to the status quo in effect as of the date of entry of this Interim Order with respect to all prepetition Vendor Claims if a Vendor ceases to perform under any existing contract or other obligation the payments in respect of which were authorized pursuant to this Interim Order.

6.      All applicable banks and other financial institutions are authorized to rely on the Debtors' direction in paying amounts under this Interim Order.  Furthermore, all applicable banks and other financial institutions are authorized to (i) honor any checks drawn against the Debtors' accounts but not cleared prior to the Petition Date, (ii) complete any fund transfer requests made but not completed prior to the Petition Date and (iii) issue new post-petition checks and to make post-petition fund transfer requests to replace any prepetition checks and prepetition transfers to Vendors that may be dishonored by the banks or financial institutions.

7.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity, priority or amount of any claim against a Debtor entity; (b) a waiver of the Debtors' or any party-in-interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code; (e) a waiver of the Debtors' or any party-in-interest's rights under the Bankruptcy Code or any other applicable law, (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors' estates or (g) a concession by the Debtors that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief granted in this Interim Order are

4

valid, and the rights of all parties-in-interest are expressly reserved to contest the extent, validity or perfection or seek avoidance of all such liens.

8.      None of the Debtors, their officers, directors, attorneys or agents will have any liability on account of any decision by the Debtors not to pay a Vendor Claim.

9.      Nothing in this Motion or Interim Order shall increase, reclassify or elevate to administrative expense status or otherwise affect any Vendor Claims to the extent that they are not paid.

10.     Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments, and the Debtors are only authorized under this Interim Order to pay amounts that are due and owing prior to the final hearing on this Motion.

11.     Nothing in the Motion or this Interim Order, nor the Debtors' actions in executing this Interim Order, is intended or shall be construed as a modification or waiver of the Debtors' rights with respect to goods or services requested or received from the Vendors.  This includes, but is not limited to, the Debtors' rights to (i) cancel a purchase order (including outstanding orders); (ii) decline the acceptance of goods or services; (iii) return any defective, nonconforming or unacceptable goods or (iv) contest the amount of any invoice or claim.

12.     The entry of this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors under Bankruptcy Rule 6003(b).  Thus, this Interim Order shall be effective and enforceable immediately upon entry hereof.  To the extent that this Interim Order constitutes a use of property under section 363(b) of the Bankruptcy Code, the fourteen-day stay under Bankruptcy Rule 6004(h) is waived.

13.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Interim Order shall be immediately effective and enforceable upon

its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Interim Order and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Interim Order.

14.    This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Interim Order.


Dated:    _____, 2023
        New York, NY                          _____
                                              United States Bankruptcy Judge

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (___) |
| Debtors. | Joint Administration Pending |

### FINAL ORDER (I) AUTHORIZING,
### BUT NOT DIRECTING, THE DEBTORS TO PAY
### CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND
### FOREIGN VENDORS, (II) AUTHORIZING AND DIRECTING FINANCIAL
### INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS
### RELATED TO SUCH CLAIMS AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Genesis Global Holdco, LLC and its affiliated debtors

and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of

an order (this "Final Order") (i) authorizing, but not directing, the Debtors, in their discretion, to

pay all or a portion of the prepetition claims of the Critical Vendors and Foreign Vendors in the

ordinary course of business; and (ii) authorizing the Banks to honor and process check and

electronic transfer requests related to the foregoing; and (iii) granting the Debtors such other and

further relief as the Court deems just and proper, all as more fully set forth in the Motion; and due

and sufficient notice of the Motion having been given under the particular circumstances, and it

appearing that no other or further notice is necessary, and upon the *Declaration of A. Derar Islim*

*in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the

"Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

*Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the
*Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with
Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon
Declaration, the "First Day Declarations"); and adequate notice of the Motion having been given
as set forth in the Motion; and the Court having entered the *Interim Order (I) Authorizing, But Not
Directing, Debtors to Pay Prepetition Claims of Certain Critical Vendors and Foreign Vendors,
(II) Authorizing and Directing Financing Institutions to Honor and Process Checks and Transfers
Related to Such Claims, and (III) Granting Related Relief*; and it appearing that no other or further
notice is necessary; and the Court having jurisdiction to consider the Motion and the relief
requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of
Reference* from the United States District Court for the Southern District of New York dated
January 31, 2012; and the Court having determined that consideration of the Motion is a core
proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court having found that the relief requested
in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-
in-interest; and the Court having reviewed the Motion and having heard the arguments of counsel
on the record; and the Court having determined that the legal and factual bases set forth in the
Motion and at the hearing held establish just cause for the relief granted herein; and upon all of the
proceedings had before the Court; and after due deliberation and sufficient cause appearing
therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis, to the extent provided herein.

2.      The Debtors are authorized, but not directed, in their sole discretion, to continue
their prepetition business operations, policies and programs and pay the prepetition amounts owed

to Vendors on account of Vendor Claims on a post-petition basis in the ordinary course of business; provided, however, that any payments shall only be made as they become due, and that no payments shall be accelerated prior to the final hearing of this Motion. Notwithstanding the foregoing, payments to Vendors shall not exceed $100,000 in the aggregate, except to the extent such payments are authorized by separate order of the Court (the "Final Vendor Cap").

3.      The Debtors are authorized, but not directed, to condition payment of Vendor Claims on a Vendor's maintenance or application of Customary Terms; provided, however, that any Vendor that accepts payment pursuant to the authority granted in the Final Order agrees to supply goods and services to the Debtors post-petition on Customary Terms or on such other favorable terms as are acceptable to the Debtors; provided further that the Debtors' inability to agree on Customary Terms shall not preclude them from paying the claim of a Vendor if the Debtors determine, in the reasonable exercise of their business judgment that such payment is necessary to the Debtors' operations.

4.      If a Vendor, after receiving payment on account of a Vendor Claim, ceases to provide Customary Terms or otherwise fails to perform under a contract with a Debtor, the Debtors may, without further notice to or action, order or approval of the Bankruptcy Court, deem such payment to apply to post-petition amounts payable to such Vendor. Such Vendor shall then immediately repay to the Debtors any payments made to it on account of its Vendor Claims to the extent that such payments exceed the post-petition amounts then owing to such Vendor, without the right of setoff or reclamation, it being the express intention of this Court to return the parties to the status quo in effect as of the date of entry of this Final Order with respect to all prepetition Vendor Claims if a Vendor ceases to perform under any existing contract or other obligation the payments in respect of which were authorized pursuant to this Final Order.

5.      All applicable banks and other financial institutions are authorized to rely on the
Debtors' direction in paying amounts under this Final Order.  Furthermore, all applicable banks
and other financial institutions are authorized to (i) honor any checks drawn against the Debtors'
accounts but not cleared prior to the Petition Date, (ii) complete any fund transfer requests made
but not completed prior to the Petition Date and (iii) issue new post-petition checks and to make
post-petition fund transfer requests to replace any prepetition checks and prepetition transfers to
Vendors that may be dishonored by the banks or financial institutions.

6.      Notwithstanding the relief granted in this Final Order and any actions taken
pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the
validity, priority or amount of any claim against a Debtor entity; (b) a waiver of the Debtors' or
any party-in-interest's right to dispute any claim on any grounds; (c) a promise or requirement to
pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease under
section 365 of the Bankruptcy Code; (e) a waiver of the Debtors' or any party-in-interest's rights
under the Bankruptcy Code or any other applicable law, (f) an admission as to the validity, priority,
enforceability or perfection of any lien on, security interest in or other encumbrance on property
of the Debtors' estates or (g) a concession by the Debtors that any liens (contractual, common law,
statutory or otherwise) that may be satisfied pursuant to the relief granted in this Final Order are
valid, and the rights of all parties-in-interest are expressly reserved to contest the extent, validity
or perfection or seek avoidance of all such liens.

7.      None of the Debtors, their officers, directors, attorneys or agents will have any
liability on account of any decision by the Debtors not to pay a Vendor Claim.

8.      Nothing in this Motion or Final Order shall increase, reclassify or elevate to administrative expense status or otherwise affect any Vendor Claims to the extent that they are not paid.

9.      Nothing in the Motion or this Final Order shall be deemed to authorize the Debtors to accelerate any payments, and the Debtors are only authorized under this Final Order to pay amounts that are due and owing prior to the final hearing on this Motion.

10.      Nothing in the Motion or this Final Order, nor the Debtors' actions in executing this Final Order, is intended or shall be construed as a modification or waiver of the Debtors' rights with respect to goods or services requested or received from the Vendors.  This includes, but is not limited to, the Debtors' rights to (i) cancel a purchase order (including outstanding orders); (ii) decline the acceptance of goods or services; (iii) return any defective, nonconforming or unacceptable goods or (iv) contest the amount of any invoice or claim.

11.      Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Final Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Final Order and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Final Order.

12.      This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Final Order.


Dated:      _____, 2023
          New York, NY                              _____
                                                    United States Bankruptcy Judge