CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (___) |
| Debtors. | Joint Administration Pending |

## DEBTORS' APPLICATION FOR APPOINTMENT OF KROLL RESTRUCTURING ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT

Genesis Global Holdco, LLC ("Holdco") and its above-captioned affiliate debtors and

debtors-in-possession (collectively, the "Debtors" and these cases, the "Chapter 11 Cases"),

hereby file this application (this "Section 156(c) Application") for entry of an order, substantially

in the form of Exhibit A hereto (the "Retention Order"), pursuant to section 156(c) of title 28 of

the United States Code, section 105(a) of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 5075-1 of the Local Bankruptcy Rules for the Southern District of New York

(the "Local Rules"), appointing Kroll Restructuring Administration LLC ("Kroll") as claims and

noticing agent ("Claims and Noticing Agent") in the Debtors' Chapter 11 Cases (as defined below)

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

effective *nunc pro tunc* to the Petition Date (as defined below).[2]  A detailed description of the

Debtors and their businesses, and the facts and circumstances supporting this Motion and the

Debtors' Chapter 11 Cases, is set forth in the *Declaration of Michael Leto in Support of First Day*

*Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration"), the

*Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance*

*with Local Rule 1007-2* (the "Aronzon Declaration") and the *Declaration of A. Derar Islim in*

*Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim

Declaration" and, together with the Leto Declaration and Aronzon Declaration, the "First Day

Declarations"),[3] filed contemporaneously herewith and incorporated herein by reference. In

support of the Section 156(c) Application, the Debtors rely on and incorporate by reference submit

the *Declaration of Benjamin J. Steele, Managing Director of Kroll Restructuring Administration*

*LLC* (the "Steele Declaration"), attached hereto as Exhibit B, and respectfully represent as follows:

### BACKGROUND

1.      Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries,

the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide

---

[2]      In *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, the U.S. Supreme Court rejected a district court's *nunc pro tunc* order that made remand to state court effective as of a previous date, finding that the order could not "creat[e] 'facts' that never occurred" to cure the state court's lack of jurisdiction while the case was removed to federal court. 140 S. Ct. 696, 701 (2020).  This is not relevant to *nunc pro tunc* orders where, as here, the court plainly has jurisdiction over the Chapter 11 Cases as of the Petition Date and looks to exercise its discretion to grant retroactive compensation.  Indeed, courts have continued to routinely approve *nunc pro tunc* employment of estate professionals following *Acevedo*.  *See, e.g.*, Order, *In re Internap Tech. Sols. Inc.*, Case No. 20-22393 (RDD) (Bankr. S.D.N.Y. Apr. 23, 2020), ECF No. 131; Order, *In re The McClatchy Co.*, Case No. 20-10418 (MEW) (Bankr. S.D.N.Y. Mar. 26, 2020), ECF No. 232; Order, *In re Fairway Grp. Holdings Corp.*, Case No. 20-10161 (JLG) (Bankr. S.D.N.Y. Mar. 4, 2020), ECF No. 251.  To the extent that this Court or others find that *Acevedo* impacts this Court's ability to grant *nunc pro tunc* relief, this Court would nonetheless retain power to exercise its equitable discretion and award compensation prior to the date of entry of the order.  *See In re Benitez*, No. 8-19-70230 (REG), 2020 WL 1272258, at *2 (Bankr. E.D.N.Y. Mar. 13, 2020); *see also In re Miller*, 620 B.R. 637, 641–43 (Bankr. E.D. Cal. Oct. 13, 2020).

[3]      Capitalized terms not defined herein have the meaning ascribed to them in the First Day Declarations.

lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services.  Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

2.     Over the past few months, the digital asset industry has experienced tremendous dislocation.  The collapse of LUNA and TerraUSD and subsequent liquidation of 3AC signaled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.   As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022.  Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed for Chapter 11 bankruptcy.

3.     These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business.  This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's available liquidity.   As a result of the unprecedented number and size of the loan calls, on November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders.

4.     Over the past two months, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups to explore strategic solutions.  In addition, the Debtors have undertaken cost-saving and liquidity-preserving measures.  As a result of those efforts, the Debtors have determined that an in-court process is the best path to continue their efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

5.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date"). The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' Chapter 11 Cases.

6.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

7.      While the Company's discussions with advisors to various creditor groups and DCG have been very productive in narrowing issues, they have not yet achieved a global resolution. Accordingly, the Debtors commenced the Chapter 11 Cases to continue their efforts towards a consensual resolution through a transparent, court supervised process. To that end, the Debtors are concurrently filing a proposed plan of reorganization, which will be amended as necessary to reflect the results of our continued negotiations.

## JURISDICTION

8.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

## RELIEF REQUESTED

9.      The Debtors request entry of an order appointing Kroll as the Claims and Noticing Agent for the Debtors and their Chapter 11 Cases, including assuming full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtors' Chapter 11 Cases. The Debtors' selection of Kroll to act as the Claims and Noticing Agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under*

4

28 U.S.C. § 156(c) (the "Claims Agent Protocol"), in that the Debtors have obtained and reviewed

engagement proposals from at least two other court-approved claims and noticing agents to ensure

selection through a competitive process.  Moreover, the Debtors submit, based on all engagement

proposals obtained and reviewed, that Kroll's rates are competitive and reasonable given Kroll's

quality of services and expertise.  The terms of Kroll's retention are set forth in the Engagement

Agreement attached hereto as Exhibit C (the "Engagement Agreement"); *provided, however*, that

the Debtors are seeking approval solely of the terms and provisions as set forth in this Section

156(c) Application and the proposed Retention Order attached hereto.

10.     Although the Debtors have not yet filed their schedules of assets and liabilities, they

anticipate that there will be over 600 entities to be noticed.  Local Rule 5075-1(b)(1) provides that

"[i]n a case in which the number of creditors and equity security holders, in the aggregate, is 250

or more, the estate shall retain, subject to approval of the Court, a claims and noticing agent in

accordance with the [Claims Agent Protocol]."  In view of the number of anticipated claimants

and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims

and noticing agent is required by Local Rule 5075-1(b) and is otherwise in the best interests of

both the Debtors' estates and their creditors.

11.     By separate application, the Debtors will seek authorization to retain and employ

Kroll as administrative advisor in the Chapter 11 Cases pursuant to section 327(a) of the

Bankruptcy Code because the administration of the Chapter 11 Cases will require Kroll to perform

duties outside the scope of 28 U.S.C. § 156(c).

## KROLL'S QUALIFICATIONS

12.     Kroll is comprised of leading industry professionals with significant experience in

both the legal and administrative aspects of large, complex chapter 11 cases.  Kroll's professionals

have experience in noticing, claims administration, solicitation, balloting and facilitating other

administrative aspects of chapter 11 cases and experience in matters of this size and complexity.

Kroll's professionals have acted as debtor's counsel, official claims and noticing agent and/or

administrative advisor in many large bankruptcy cases in this District and in other districts

nationwide.   Kroll's active and former cases include: *SAS AB*, No. 22-10925 (MEW) (Bankr.

S.D.N.Y.); *Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y.*); GTT Communications, Inc.*, No.

21-11880 (MEW) (Bankr. SDNY); *Automotores Gildemeister SpA*, No. 21-10685 (LGB) (Bankr.

S.D.N.Y.); *Stoneway Cap. Ltd.*, No. 21-10646 (JLG) (Bankr. S.D.N.Y.); *KB US Holdings, Inc.*,

No. 20-22962 (SHL) (Bankr. S.D.N.Y.); *Hermitage Offshore Servs. Ltd.*, No. 20-11850 (MG)

(Bankr. S.D.N.Y.); *Centric Brands Inc.*, No. 20-22637 (SHL) (Bankr. S.D.N.Y.); *Cyprus Mines*

*Corp.*, No. 21-10398 (LSS) (Bankr. D. Del); *Yatsen Grp. of Co. Inc.*, No. 21-10073 (BLS) (Bankr.

D. Del.); *Ferrellgas Partners, L.P.*, No. 21-10021 (MFW) (Bankr. D. Del.); *White Stallion Energy,*

*LLC,* No. 20-13037 (LSS) (Bankr. D. Del); *Sundance Energy, Inc. and SEA Eagle Ford LLC*, No.

21-30882 (DRJ) (Bankr. S.D. Tex.); *Seadrill Ltd.*, No. 21-30427 (DRJ) (Bankr. S.D. Tex.); *Guitar*

*Ctr., Inc.*, No. 20- 34656 (KRH) (Bankr. E.D. Va.); and *PG&E Corp.,* No. 19-30088 (DM) (Bankr.

N.D. Cal.).

13.     By appointing Kroll as the Claims and Noticing Agent in the Chapter 11 Cases, the

distribution of notices and the processing of claims will be expedited and the Office of the Clerk

of the Bankruptcy Court (the "Clerk") will be relieved of the administrative burden of processing

what may be an overwhelming number of claims.

## SERVICES TO BE PROVIDED

14.     This Section 156(c) Application pertains only to the work to be performed by Kroll

under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 5075-1,

and any work to be performed by Kroll outside of this scope is not covered by this Section 156(c)

Application or by any order granting approval hereof.   Specifically, Kroll will perform the

following tasks in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

(a)     Prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the Chapter 11 Cases and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Cases;

(b)     Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(d)     Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     For *all* notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service and (iv) the date served;

(g)     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

(h)     Provide an electronic interface for filing proofs of claim;

(i)     Maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk on a case specific website; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the applicable Debtor and (vii) any disposition of the claim;

(j)     Provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(k)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(l)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Kroll, not less than weekly;

(n)     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(o)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(p)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(q)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding the Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(r)     If the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of notice to Kroll of entry of the order converting the cases;

(s)     Thirty (30) days prior to the close of the Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Kroll as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Cases;

(t)     Within seven (7) days of notice to Kroll of entry of an order closing the Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the Chapter 11 Cases; and

(u)     At the close of the Chapter 11 Cases, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office.

## PROFESSIONAL COMPENSATION

15.     The Debtors respectfully request that the undisputed fees and expenses incurred by Kroll in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  Kroll agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

16.     Prior to the Petition Date, in accordance with the terms of the Engagement Agreement, the Debtors provided Kroll an advance in the amount of $150,000, which was received by Kroll on January 11, 2023.  Kroll seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

17.     Except as stated in the preceding paragraph, Kroll has not received any payments from the Debtors in the ninety days prior to the Petition Date.

18.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors. and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Kroll's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Retention Order.  The Debtors believe that such an indemnification obligation is customary, reasonable and necessary to retain the services of a Claims and Noticing Agent in the Chapter 11 Cases.

## DISINTERESTEDNESS

19.     Although the Debtors do not propose to employ Kroll under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (such retention will be sought by separate application), Kroll has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Steele Declaration, Kroll has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

10

20.    Moreover, in connection with its retention as Claims and Noticing Agent, Kroll represents in the Steele Declaration, among other things, that:

(a)    Kroll is not a creditor of the Debtors;

(b)    Kroll will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Cases;

(c)    By accepting employment in the Chapter 11 Cases, Kroll waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

(d)    In its capacity as the Claims and Noticing Agent in the Chapter 11 Cases, Kroll will not be an agent of the United States and will not act on behalf of the United States;

(e)    Kroll will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in the Chapter 11 Cases;

(f)    Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)    In its capacity as Claims and Noticing Agent in the Chapter 11 Cases, Kroll will not intentionally misrepresent any fact to any person;

(h)    Kroll shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)    Kroll will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)    None of the services provided by Kroll as Claims and Noticing Agent in the Chapter 11 Cases shall be at the expense of the Clerk's office.

Kroll will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

21.    This Section 156(c) Application complies with the Claims Agent Protocol and substantially conforms to the standard Section 156(c) Application in use in this Court.  To the

extent that there is any inconsistency between this Section 156(c) Application, the Retention Order and the Engagement Agreement, the Retention Order shall govern.

## **NOTICE**

22.    No creditors' committee, trustee or examiner has been appointed in these Chapter 11 Cases.  Notice of this Section 156(c) Application has been provided to the following parties or, in lieu thereof, their counsel: (a) the Office of the United States Trustee for the Southern District of New York; (b) the holders of the fifty (50) largest unsecured claims against the Debtors (on a consolidated basis); (c) the holders of the five (5) largest secured claims against the Debtors (on a consolidated basis); (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; and (f) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.  A copy of the Section 156(c) Application is also available on the Debtors' case website at https://restructuring.ra.kroll.com/genesis.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

23.    No prior request for the relief requested herein has been made to this or any other Court.

*[Remainder of page intentionally left blank]*

## <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form

attached hereto as <u>Exhibit A</u>, authorizing Kroll to act as Claims and Noticing Agent for the Debtors

and granting such other relief as may be appropriate.

Dated:  January 20, 2023                    CLEARY GOTTLIEB STEEN & HAMILTON LLP
   New York, New York

             <u>/s/ *Sean A. O'Neal*</u>
             Sean A. O'Neal
             Jane VanLare
             One Liberty Plaza
             New York, New York 10006
             Telephone:  (212) 225-2000
             Facsimile:  (212) 225-3999

             *Proposed Counsel for the Debtors*
             *and Debtors-in-Possession*

**<u>Exhibit A</u>**

**Proposed Retention Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (___) |
| Debtors. | Joint Administration Pending |

**ORDER AUTHORIZING RETENTION AND APPOINTMENT OF KROLL
RESTRUCTURING ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT**

Upon the application (the "Section 156(c) Application") by Genesis Global Holdco, LLC

("Genesis") and its above-captioned affiliate debtors and debtors-in-possession (collectively, the

"Debtors") for retention and appointment of Kroll Restructuring Administration LLC ("Kroll") as

claims and noticing agent ("Claims and Noticing Agent") pursuant to 28 U.S.C. §156(c), section

105(a) of the Bankruptcy Code[2] and Local Rule 5075-1 to, among other things, (i) distribute

required notices to parties in interest, (ii) receive, maintain, docket and otherwise administer the

proofs of claim filed in the Chapter 11 Cases and (iii) provide such other administrative services—

as required by the Debtors—that would fall within the purview of services to be provided by the

Clerk's office; and upon the Steele Declaration submitted in support of the Section 156(c)

Application; and the Debtors having estimated that there are over 250 entities to be noticed and

creditors in the Chapter 11 Cases, many of which are expected to file proofs of claim; and it

appearing that the receiving, docketing and maintaining of proofs of claim would be unduly time

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. §156(c)

to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in title

11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court

being satisfied that Kroll has the capability and experience to provide such services and that Kroll

does not hold an interest adverse to the Debtors or the estates respecting the matters upon which it

is to be engaged; and good and sufficient notice of the Section 156(c) Application having been

given and no other or further notice being required; and it appearing that the employment of Kroll

is in the best interests of the Debtors, their estates and creditors; and sufficient cause appearing

therefor,

**IT IS HEREBY ORDERED THAT:**

1.      Notwithstanding the terms of the Engagement Agreement attached to the Section

156(c) Application, the Section 156(c) Application is approved solely as set forth in this Order.

2.      The Debtors are authorized to retain Kroll as Claims and Noticing Agent effective

*nunc pro tunc* to the Petition Date under the terms of the Engagement Agreement, and Kroll is

authorized and directed to perform noticing services and to receive, maintain, record and otherwise

administer the proofs of claim filed in the Chapter 11 Cases, and all related tasks, all as described

in the Section 156(c) Application.

3.      Kroll shall serve as the interim custodian of court records and shall be designated

as the authorized repository for all proofs of claim filed in the Chapter 11 Cases and is authorized

and directed to maintain official claims registers for each of the Debtors, to provide public access

to every proof of claim unless otherwise ordered by the Court and to provide the Clerk with a

certified duplicate thereof upon the request of the Clerk who remains the official custodian of court

records under 28 U.S.C. § 156(e).

4.      Kroll is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

5.      Kroll is authorized to take such other action to comply with all duties set forth in the Section 156(c) Application.

6.      The Debtors are authorized to compensate Kroll in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Kroll and the rates charged for each, and to reimburse Kroll for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Kroll to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Kroll shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Kroll under this Order shall be an administrative expense of the Debtors' estates.

10.     Kroll may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and thereafter, Kroll may hold its advance under the

Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify Kroll under the terms of the Engagement Agreement, as modified pursuant to this Order.

12.     All requests by Kroll for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided however*, that in no event shall Kroll be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

13.     In the event that Kroll seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Kroll's own applications, both interim and final, but determined by this Court after notice and a hearing.

14.     In the event Kroll is unable to provide the services set out in this order, Kroll will immediately notify the Clerk and the Debtors' attorney and, upon approval of the Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney.

15.     The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Kroll but is not specifically authorized by this Order.

16.     Kroll shall exclude the Debtors' bankruptcy cases and related information, as well as information regarding any of the Debtors' non-debtor affiliates, from any file sharing arrangement with Xclaim, Inc. or any other entity operating a marketplace or similar service to facilitate trade or resolution of claims held against bankrupt or insolvent entities.

17.     The Debtors and Kroll are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Section 156(c) Application.

18.     Paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services provided pursuant to this Order.

19.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains exclusive jurisdiction with respect to all matters arising from or related to the Section 156(c) Application or the implementation of this Order.

20.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

21.     Kroll shall not cease providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of the Court.

22.     In the event of any inconsistency between the Engagement Agreement, the Section 156(c) Application and the Order, the Order shall govern.


Dated: _____, 2023       _____
       New York, New York              United States Bankruptcy Judge

## Exhibit B

**Steele Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (___) |
| Debtors. | Joint Administration Pending |

### DECLARATION OF BENJAMIN J. STEELE IN SUPPORT OF DEBTORS' APPLICATION FOR APPOINTMENT OF KROLL RESTRUCTURING ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

1.      I am a Managing Director of Kroll Restructuring Administration LLC ("Kroll"), a chapter 11 administrative services firm whose headquarters are located at 55 East 52nd Street, 17th Floor, New York, NY 10055.  Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the above-captioned debtors' (collectively, the "Debtors") *Application for Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent*, which was filed contemporaneously herewith (the "Section 156(c) Application").[2]

3.      Kroll is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Kroll's professionals

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific PTE. LTD. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the 156(c) Application.

have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Kroll's professionals have acted as debtor's counsel, official claims and noticing agent and/or administrative advisor in many large bankruptcy cases in this District and in other districts nationwide. Kroll's active and former cases include: *SAS AB*, No. 22-10925 (MEW) (Bankr. S.D.N.Y.); *Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y.); *GTT Communications, Inc.*, No. 21-11880 (MEW) (Bankr. SDNY); *Automotores Gildemeister SpA*, No. 21-10685 (LGB) (Bankr. S.D.N.Y.); *Stoneway Cap. Ltd.*, No. 21-10646 (JLG) (Bankr. S.D.N.Y.); *KB US Holdings, Inc.*, No. 20-22962 (SHL) (Bankr. S.D.N.Y.); *Hermitage Offshore Servs. Ltd.*, No. 20-11850 (MG) (Bankr. S.D.N.Y.); *Centric Brands Inc.*, No. 20-22637 (SHL) (Bankr. S.D.N.Y.); *Cyprus Mines Corp.*, No. 21-10398 (LSS) (Bankr. D. Del); *Yatsen Group of Companies Inc.*, No. 21-10073 (BLS) (Bankr. D. Del.); *Ferrellgas Partners, L.P.*, No. 21-10021 (MFW) (Bankr. D. Del.); *White Stallion Energy, LLC,* No. 20-13037 (LSS) (Bankr. D. Del); *Sundance Energy, Inc. and SEA Eagle Ford, LLC*, No. 21-30882 (DRJ) (Bankr. S.D. Tex.); *Seadrill Limited*, No. 21-30427 (DRJ) (Bankr. S.D. Tex.); *Guitar Ctr., Inc.*, No. 20- 34656 (KRH) (Bankr. E.D. Va.); and *PG&E Corp.,* No. 19-30088 (DM) (Bankr. N.D. Cal.).

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Kroll will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "Clerk"), the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical and support services as specified in the Section 156(c) Application and the Engagement Agreement. In performing such services, Kroll will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as Exhibit C to the Section 156(c) Application.

5.     Prior to the Petition Date, in accordance with the terms of the Engagement Agreement, the Debtors provided Kroll an advance in the amount of $150,000, which was received by Kroll on January 11, 2023.  Kroll seeks to first apply this advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

6.     Except as stated in the preceding paragraph, Kroll has not received any payments from the Debtors in the ninety days prior to the Petition Date.

7.     Kroll represents, among other things, the following:

(a)     Kroll is not a creditor of the Debtors;

(b)     Kroll will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Cases;

(c)     By accepting employment in the Chapter 11 Cases, Kroll waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

(d)     In its capacity as the Claims and Noticing Agent in the Chapter 11 Cases, Kroll will not be an agent of the United States and will not act on behalf of the United States;

(e)     Kroll will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in the Chapter 11 Cases;

(f)     Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent in the Chapter 11 Cases, Kroll will not intentionally misrepresent any fact to any person;

(h)     Kroll shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

      (i)      Kroll will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

      (j)      None of the services provided by Kroll as Claims and Noticing Agent in the Chapter 11 Cases shall be at the expense of the Clerk's office.

8.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Kroll , nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.  Kroll may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Kroll serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

9.      Kroll has reviewed its electronic database to determine whether it has any relationships with the list of entities provided by the Debtors.  Based on the results of such search, at this time, Kroll is not aware of any relationship that would present a disqualifying conflict of interest.  Should Kroll discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Kroll will use reasonable efforts to promptly file a supplemental declaration.

10.      Certain of Kroll's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases.  Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; Gibson, Dunn & Crutcher LLP; Willkie Farr & Gallagher LLP; Jones Day; Shearman & Sterling LLP; KPMG LLP; PricewaterhouseCoopers LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc.; and Kurtzman Carson Consultants LLC.  Except as may be

disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when the Chapter 11 Cases were filed.

11.     Kroll is an indirect subsidiary of Kroll, LLC ("Kroll Parent"). Kroll Parent is the world's premier provider of services and digital products related to governance, risk and transparency. Within the Kroll Parent corporate structure, Kroll operates independently from Kroll Parent. As such, any relationships that Kroll Parent and its affiliates maintain do not create an interest of Kroll's that is materially adverse to the Debtors' estates or any class of creditors or security holders. Kroll Parent is not currently identified on the list of entities provided by the Debtors, but Kroll makes this disclosure out of an abundance of caution.

12.     Kroll, as well as its personnel, has and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions and other parties in interest that may be involved in the Debtors' Chapter 11 Cases. Kroll may also provide professional services to entities or persons that may be creditors or parties in interest in the Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, the Chapter 11 Cases or the Debtors.

13.     Certain personnel at Kroll involved in these Chapter 11 Cases may also be providing similar services to the Debtors that they provide to the debtors in *In re FTX Trading, Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.). Each matter has distinct primary client contacts responsible for day-to-day case matters and performing services such as assisting in the preparation of schedules and statements of financial affairs, to the extent requested. The matters share support teams, which provide communications, data processing (i.e., claims input and review), mail

processing, technological and legal services (and similar customary shared firm services) to both. Moreover, if plan solicitation occurs, both matters may utilize the same solicitation teams.

14.      Kroll, and its personnel in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms and financial advisors. Such firms engaged by Kroll or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest.  All engagements where such firms represent Kroll or its personnel in their individual capacities are unrelated to the Chapter 11 Cases.

15.      Kroll further declares that Kroll does not now have nor has it ever had any contract or agreement with Xclaim Inc. or with any other party under which Kroll provides, provided, or will provide exclusive access to claims data and/or under which Kroll would be compensated for claims data made available by Kroll.

16.      Based on the foregoing, I believe that Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge and belief, neither Kroll nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Kroll is to be engaged.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on January 20, 2023

 /s/ *Benjamin J. Steele*
 Benjamin J. Steele
 Managing Director
 55 East 52nd Street, 17th Floor
 New York, NY 10055

## **Exhibit C**

**Engagement Agreement**



### Kroll Restructuring Administration LLC Engagement Agreement

This Agreement is entered into as of January 15, 2023 between Kroll Restructuring Administration LLC ("***Kroll***") and Genesis Global Holdco, LLC (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

    (a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

    (b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder.  The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

    (c) The Company agrees and understands that Kroll shall not provide the Company or any party with legal advice.

2. **Rates, Expenses and Payment**

    (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***").  The Company agrees to pay for reasonable out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

    (b) The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

    (c) Kroll will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Kroll an advance of $150,000. Kroll may use such advance against unpaid fees and expenses hereunder. Kroll may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Kroll may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

## 3.  Retention in Bankruptcy Case

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## 4.  Confidentiality

(a) The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

DocuSign Envelope ID: 68AE5783-57D1-4E5B-A5A8-9EB0CF64D5BD



### 5.    Property Rights

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Kroll for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder. The Company reserves all property rights in and to all information provided by the Company to Kroll in connection with the Services.

### 6.    Bank Accounts

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Kroll's agreement with financial institutions, Kroll may receive compensation from such institutions for the services Kroll provides pursuant to such agreement.

### 7.    Term and Termination

(a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.

(b)  If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

(c)  If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.

(d)  If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

### 8.    No Representations or Warranties

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

DocuSign Envelope ID: 56456788-57D1-4E5B-A5A8-9F80CF664050



9. __Indemnification__

    (a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Kroll's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b)  Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c)  The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's gross negligence or willful misconduct.

    (d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. __Limitations of Liability__

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder.  In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. __Company Data__

    (a)  The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "__SOFAs and Schedules__").  Kroll bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b)  The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

    (c)  Any data, storage media, programs or other materials furnished to Kroll by the Company may be retained by Kroll until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the

DocuSign Envelope ID: 56A5792-57D1-4E5B-A5A8-9F80CF66495D



Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the client.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(e) Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. Integration; Severability; Modifications; Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. <u>Effectiveness of Counterparts</u>

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. <u>Notices</u>

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  |  |
|---|---|
| If to Kroll: | Kroll Restructuring Administration LLC |
| | 55 East 52nd Street, 17th Floor |
| | New York, NY 10055 |
| | Attn:    Legal Department |
| | Tel:    (212) 257-5450 |
| | Email:  <u>Legal@kbs.kroll.com</u> |
| | |
| If to the Company: | Genesis Global Holdco, LLC |
| | 250 Park Avenue South, 5th Floor |
| | New York, NY 10003 |
| | Attn: Arianna Pretto-Sakmann |
| | Tel: (646) 416-4571 |
| | Email: arianna@genesistrading.com |
| | |
| With a copy to: | Cleary Gottlieb Steen & Hamilton LLP |
| | One Liberty Plaza |
| | New York, NY 10006 |
| | Attn: Jane VanLare |
| | Tel: (212) 225-2872 |
| | Email: jvanlare@cgsh.com |



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

_Shira Weiner_

By: Shira Weiner
Title: General Counsel

**Genesis Global Holdco, LLC**

DocuSigned by:

_Arianna Pretto-Sakmann_

By: Arianna Pretto-Sakmann
Title: Chief Legal Officer



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

## Claim and Noticing Rates

| TITLE | HOURLY RATE |
|---|---|
| **Analyst** <br> The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 – $60 |
| **Technology Consultant** <br> The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 – $110 |
| **Consultant/Senior Consultant** <br> The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Consultants have between three and five years of experience. <br><br> The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Senior Consultants average over five years of experience. | $65 – $195 |
| **Director** <br> The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Kroll Restructuring Administration will serve in this role at this rate. Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 – $245 |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

## Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
|---|---|
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | $220 |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Kroll Restructuring Administration's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | $245 |

## Printing & Noticing Services

| | |
|---|---|
| Printing | $0.10 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

## Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Case Website | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

| Client Access | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

| Data Administration and Management | |
|---|---|
| *Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.* | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

| On-line Claim Filing Services | |
|---|---|
| On-line claim filing | No charge |

| Call Center Services | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

| Disbursement Services & Securities Eligibility Services | |
|---|---|
| Securities Eligibility Services | Available on request |
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of EIN/TIN database | Standard rates |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106