CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (___) |
| Debtors. | Joint Administration Pending |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING DEBTORS TO CONTINUE TO OPERATE THE
EXISTING CASH MANAGEMENT SYSTEM, INCLUDING EXISTING
BANK ACCOUNTS, HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO, AND MAINTAIN EXISTING BUSINESS FORMS;
(II) PERMITTING CONTINUED INTERCOMPANY TRANSACTIONS AND
GRANTING CERTAIN ADMINISTRATIVE CLAIMS; (III) EXTENDING
THE TIME TO COMPLY WITH THE REQUIREMENTS OF SECTION
345 OF THE BANKRUPTCY CODE; AND (IV) GRANTING RELATED RELIEF**

**("CASH MANAGEMENT MOTION")**

Genesis Global Holdco, LLC ("Holdco") and its above-captioned debtors and debtors-in-

possession (collectively, the "Debtors" and these cases, the "Chapter 11 Cases"), hereby submit this

motion (this "Motion") for entry of interim and final orders, substantially in the form attached hereto

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd.. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

as <u>Exhibit A</u> (the "<u>Proposed Interim Order</u>") and <u>Exhibit B</u> (the "<u>Proposed Final Order</u>" and, together with the Proposed Interim Order, the "<u>Proposed Orders</u>"), pursuant to section 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") (a) authorizing, but not directing, the Debtors to (i) continue to operate their existing cash and cryptocurrency management system, including existing bank accounts; (ii) honor certain prepetition obligations related thereto and maintain their existing business forms; (iii) continue to perform intercompany transactions with each other and with certain non-Debtors on a post-petition basis in the ordinary course of business and consistent with historical practice and according administrative expense priority status to post-petition Intercompany Transactions (as defined below); (b) extending the time for the Debtors to comply with section 345(b) of the Bankruptcy Code; and (c) granting the Debtors such other and further relief as the Court deems just and proper.  A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' Chapter 11 Cases, is set forth in the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "<u>Leto Declaration</u>"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "<u>Aronzon Declaration</u>") and the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "<u>Islim Declaration</u>" and, together with the Leto Declaration and Aronzon Declaration, the "<u>First Day Declarations</u>"),[2] filed contemporaneously

---

[2]        Capitalized terms not defined herein have the meaning ascribed to them in the First Day Declarations.

herewith and incorporated herein by reference.   In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.       The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).   The statutory predicates for the relief requested herein are sections 105, 345, 363, 364, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

2.       Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.   The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

3.       Over the past few months, the digital asset industry has experienced tremendous dislocation.   The collapse of LUNA and TerraUSD and subsequent liquidation of 3AC signaled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.   As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022.   Most recently, FTX Trading

3

Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed Chapter 11 proceedings.

4.      These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business.  This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's available liquidity.  As a result of the unprecedented number and size of the loan calls, on November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders.

5.      Over the past two months, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups to explore strategic solutions.  In addition, the Debtors have undertaken cost-saving and liquidity-preserving measures.  As a result of those efforts, the Debtors have determined that an in-court process is the best path to continue their efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

6.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' Chapter 11 Cases.

7.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

8.      While the Company's discussions with advisors to various creditor groups and DCG have been very productive in narrowing issues, they have not yet achieved a global

4

resolution.  Accordingly, the Debtors commenced the Chapter 11 Cases to continue their efforts towards a consensual resolution through a transparent, court supervised process.  To that end, the Debtors are concurrently filing a proposed plan of reorganization, which will be amended as necessary to reflect the results of our continued negotiations.

## RELIEF REQUESTED

9.      By this Motion, the Debtors seek entry of the Proposed Orders (a) authorizing the Debtors to: (i) continue to operate their existing cash and cryptocurrency management system, including existing bank accounts; (ii) honor certain prepetition obligations related thereto and maintain their existing business forms; (iii) continue to perform intercompany transactions with each other and with certain non-Debtors on a post-petition basis in the ordinary course of business and consistent with historical practice and according administrative expense priority status to post-petition Intercompany Transactions (as defined below); (c) extending the time for the Debtors to comply with the requirements in section 345(b) of the Bankruptcy Code; and (d) granting the Debtors such other and further relief as the Court deems just and proper.

## THE DEBTORS' CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS

10.      In the ordinary course of their business, the Company utilizes an integrated, centralized cash and cryptocurrency management system (the "Cash Management System"), which includes all activities necessary and pertinent to the collection, transfer, disbursement and investment of the Debtors' cash and cryptocurrency assets.  The Cash Management System allows the Debtors to efficiently identify and report the Debtors' cash and digital asset requirements and transfer assets as needed to respond to these requirements in a cost-effective, efficient manner.

11.      The Debtors' finance department maintains oversight of the Cash Management System and implements cash management controls for accepting, processing, and releasing funds on behalf of the Debtors' businesses, including in connection with Intercompany Transactions

5

(defined below).   As part of the Debtors' cash management system, the Debtors' operations department maintains the cryptocurrency management system that manages digital asset wallets and transfers between internal wallets and third-party wallets to settle lending and trading transactions.   The Cash Management System has several main functions:

    (a)    Cash collections, including the collection of payments/deposits/interest made to the Debtors from revenue generated in the ordinary course of business;

    (b)    Cash disbursements to fund the business operations, which primarily consist of payroll, taxes, payments to vendors, service providers, repayments of assets borrowed from counterparties, payments of interest and transfers within the Debtors' and non-Debtors' other bank accounts;

    (c)    Facilitate the movement of various cryptocurrency and the storing of digital assets on third-party platforms.[3]

12.    The Cash Management System was specifically structured to meet the Debtors' operating needs, enabling them to centrally facilitate, monitor and control the collection, storing and disbursement of funds and digital assets, enable efficient forecasting and reporting on a daily basis, ensure asset availability and liquidity, invest excess assets, and reduce administrative expenses by facilitating the movement of assets and enhancing the development of accurate account balances.   Any disruption of the Cash Management System would be extremely detrimental to the Debtors' operations, as their business requires prompt access to its cash and digital assets to operate.

13.    The following is a detailed description of the Debtors' Cash Management System and its associated Bank Accounts (as defined below).  A diagram illustrating the flow of funds in the Debtors' Cash Management System is annexed as Exhibit C attached hereto (the "Funds Flow Diagram").

---

[3]    The description of the cryptocurrency wallets are included herein to provide the Court with a complete picture of the Debtors' Cash Management System.

**A.    Description of Bank Accounts, and Storage and Flow of Funds and Digital Assets**

14.    As of the Petition Date, the Debtors maintain 19 bank accounts and 5 brokerage accounts (the "Bank Accounts").  The Bank Accounts are maintained at 10 banking institutions in the United States, Singapore and Denmark (collectively, the "Banks").  The 5 brokerage accounts are maintained by Marex Capital Markets, Inc., Continental Stock Transfer and Trust, Interactive Brokers LLC., and Tradestation Securities, Inc.  A detailed schedule of the Bank Accounts including the last four digits of each account number and the associated entity for each account is attached hereto as Exhibit D.[4]  In the ordinary course of business, the Debtors make payments and transfers through automated clearinghouse ("ACH"), wires, account debits and other similar methods.

15.    The Bank Accounts and Cash Management System are described further in the table below.  The following describes the Debtors' Bank Accounts as used prior to the Petition Date.  Because the Debtors' pause of lending, borrowing and trading activity, these accounts are largely inactive and certain accounts maintain minimal or no balances.  The description is included to provide the Court with a complete picture of the Debtors' Cash Management System.

| Bank Accounts | Description of Accounts |
|---|---|
| **Operating Accounts** | |
| *Signature Bank x8433* | The Signature Bank account ending in 8433 is maintained by Holdco and is an operating account.  The account is used to make transfers to its subsidiaries. As of the Petition Date, this account has a balance of $0. |
| *Silvergate Bank x7955* | The Silvergate account ending in 7955 is maintained by GGC and is an operating account used for lending activity with institutional and retail clients and non-Debtor and Debtor affiliates. |

---

[4]    The Debtors maintain and do not waive the right to open and close any of the Bank Accounts in their discretion.

| | |
|---|---|
| | As of the Petition Date, this account has a balance of $0. |
| *Silvergate Bank x3731* | The Silvergate account ending in 3731 is maintained by GGC and is an operating account used for lending activity with institutional and retail clients and non-Debtor and Debtor affiliates. As of the Petition Date, this account has a balance of $0. |
| *Signature Bank x7593* | The Signature Bank account ending in 7593 is maintained by GGC and is an operating account used for lending activity with institutional and retail clients and non-Debtor and debtor affiliates. As of the Petition Date, this account has a balance of $0.[5] |
| *Signature Bank x5985* | The Signature Bank account ending in 5985 is maintained by GGC and receives cash interest from institutional counterparties. As of the Petition Date, this account has a balance of approximately $17 million. |
| *Silvergate Bank x3861* | The Silvergate Bank account ending in 3861 is maintained by GAP and is an operating account used for lending and trading activity with institutional counterparties and non-Debtor and debtor affiliates. As of the Petition Date, this account has a balance of approximately $1.5 million. |
| *Silvergate Bank x3879* | The Silvergate Bank account ending in 3879 is maintained by GAP and is an operating account used for lending and trading activity with institutional counterparties and non-Debtor and debtor affiliates. As of the Petition Date, this account has a balance of $0. |
| **Disbursement Accounts** | |
| | The JPMorgan Chase Bank account ending in 6531 is maintained by GGC to pay operating expenses and reimbursement of expenses to non- |

---

[5]      Signature Bank x7593 operates a sub-account through Signet, which is a blockchain-based digital payments platform offered through Signature Bank.

| | |
|---|---|
| *JPMorgan Chase Bank x6531*[6] | Debtors.  As of the Petition Date, this account has a balance of $0. |
| *Signature Bank x5162* | The Signature Bank account ending in 5162 is maintained by GGC and is used to pay counterparty interest and operating disbursements and can be used to reimburse expenses to non-Debtors.  As of the Petition Date, this account has a balance of $114,843. |
| *Silvergate Bank x3749* | The Silvergate Bank account ending in 3749 is maintained by GGC and is used to pay counterparty interest and operating disbursements and can be used to reimburse expenses to non-Debtors.  As of the Petition Date, this account has a balance of $0. |
| *JPMorgan Chase Bank x7324* | The JPMorgan Chase Bank account ending in 7324 is maintained by GAP and used to pay operating expenses of GAP and to reimburse expenses to Debtors and non-Debtors.  This account is maintained in Singapore and denominated in USD.  As of the Petition Date, this account has a balance of $0. |
| *JPMorgan Chase Bank x7316* | The JPMorgan Chase Bank account ending in 7316 is maintained by GAP and used to pay operating expenses and payroll of GAP.  This account is maintained in Singapore and denominated in Singapore dollars.  As of the Petition Date, this account has a balance of $0. |
| *JPMorgan Chase Bank x8488* | The JPMorgan Chase Bank account ending in 8488 is maintained by GAP and used to pay operating expenses of GAP and to reimburse expenses to Debtors and non-Debtors.  This account is maintained in Singapore and denominated in U.S. dollars.  As of the Petition Date, this account has a balance of $0. |
| **Bank Deposit (Savings) Accounts** | |
| *Signature Bank x5578* | The Signature Bank account ending in 5578 is maintained by GGC and used by GGC to invest |

---

[6]     The Debtors are in the process of closing all of their JPMorgan Chase Bank accounts in response to a request for closure by JPMorgan Chase.

| | |
|---|---|
| *Signature Bank x7848* | excess cash to earn interest.  As of the Petition Date, this account has a balance of $723.<br><br>The Signature Bank account ending in 7848 is maintained by GGC and used by GGC to invest excess cash to earn interest.  As of the Petition Date, this account has a balance of approximately $158 million. |
| **Brokerage Accounts** | |
| *Marex Capital Markets, Inc. x6000* | The Marex Capital Markets account ending in 6000 is maintained by GGC and provides GGC access to trading futures contracts.  As of the Petition Date, this account has a USD equivalent balance of approximately $3.3 million. |
| *Continental Stock Transfer and Trust x620* | The Continental Stock Transfer and Trust account ending in 620 is maintained by GGC and holds ETHE shares.  As of the Petition Date, this account has a USD equivalent balance of approximately $8.8 million. |
| *Continental Stock Transfer and Trust x1059* | The Continental Stock Transfer and Trust account ending in 1059 is maintained by GGC and holds GBTC shares.  As of the Petition Date, this account has a USD equivalent balance of approximately $358 million. |
| *Interactive Brokers, LLC x6030* | The Interactive Brokers, LLC account ending in 6030 is maintained by GGC and holds ETHE shares and maintains other equity shares.  As of the Petition Date, this account has a USD equivalent balance of approximately $20 million. |
| *Tradestation Securities, Inc. x8621* | The Tradestation Securities, Inc. account ending in 8621 is maintained by GGC and holds GBTC shares.  As of the Petition Date, this account has a USD equivalent balance of approximately $54 million. |
| **Inactive Accounts (Pending Closure)** | |
| *Metropolitan Commercial Bank x0134* | The Metropolitan Commercial Bank account ending in 0134 is maintained by GGC and is inactive with a balance of $0. |
| *Signature Bank x1829* | The Signature Bank account ending in 1829 is maintained by GGC and is inactive with a balance of $0.<br><br>The Banking Circle Denmark account ending in 2784 was opened by GAP in 2022 as a foreign |

| | |
|---|---|
| *Banking Circle Denmark x2784* | currency account but is inactive with a balance of $0. |
| *Industrial and Commercial Bank of China x0190* | The ICBC bank account ending in 0190 was opened by GAP in 2022 as a foreign currency account but is inactive with a balance of $0. |

16.     By this Motion, the Debtors seek authority to continue, at their discretion, to maintain, service and administer the Bank Accounts.

17.     The Debtors also maintain cryptocurrency "wallets" (the "Wallets") on third-party platforms that hold substantially all of the Debtors' digital assets and facilitate the Debtors' use of those assets for lending and borrowing activity, the receipt of collateral by third-party counterparties or pledged by the Debtors and to pay and receive interest on cryptocurrency loans. The Wallets can also hold fiat currency. The Debtors' business operations department oversees and manages the movement of digital assets and funds located in Wallets. The Debtors seek authority to continue, at their discretion, to maintain the Wallets in the same manner they have been prior to the Petition Date.[7]

**B.     Investment Practices**

18.     Prior to the Petition Date, in the ordinary course of their businesses, the Debtors developed practices for deposits and investments of funds in connection with the Investment Accounts within the Cash Management System (the "Investment Practices"). The Debtors store their excess cash in the Bank Deposit (Savings) Accounts maintained at Signature Bank to generate interest income on money in such accounts (the "Investments").

19.     All of the Debtors Bank Deposit (Savings) Accounts are maintained at Signature Bank. Signature Bank is designated an authorized depository in the Southern District of New York

---

[7]     Prior to the Petition Date, the Debtors had approximately $6.8 million in funds and digital assets located in accounts held at Gemini Trust Company, LLC, which they have been unable to access or transfer.

by the Office of the United States Trustee for the Southern District of New York   (the   "U.S. Trustee").  Signature Bank is party to a uniform depository agreement with the U.S. Trustee, and therefore, the Debtors believe that the accounts at this institution will be collateralized in a manner consistent with the requirements of section 345 of the Bankruptcy Code.

20.     By this Motion, the Debtors request that the Court authorize them to continue their Investment Practices during the Chapter 11 Cases and allow them to continue to maintain the Bank Deposit (Savings) Accounts in the same manner as they have prepetition.

**C.     Bank Fees**

21.     In the ordinary course of business, the Banks charge, and the Debtors pay, honor or allow to be deducted from the appropriate Bank Accounts, certain service charges, payment processing fees and other fees, costs and expenses charged by the Banks (collectively, the "Bank Fees"). The Bank Fees currently average approximately $3,000 per month in the aggregate which are predominantly paid by Debtors.  The Debtors believe that there will be approximately $3,000 outstanding and unpaid Bank Fees as of the Petition Date (collectively, the "Prepetition Bank Fees").  To ensure continued access to their Bank Accounts without disruption, the Debtors seek authority to pay any such due and owing Bank Fees, including any Prepetition Bank Fees, they incur in the ordinary course on a post-petition basis, consistent with historical practice.

**D.     Existing Business Forms and Checks**

22.     In the ordinary course of business, the Debtors use a variety of checks and business forms.  To minimize the expense to their estates and avoid unnecessarily confusing their employees, customers and suppliers (particularly those in foreign jurisdictions unfamiliar with the Bankruptcy Code and U.S. bankruptcy procedures), the Debtors believe it is appropriate to continue to use all checks, correspondence and other business forms (including, without limitation, letterhead, purchase orders and invoices) (collectively, the "Business Forms") as such forms were

in existence immediately before the Petition Date—without reference to the Debtors' status as debtors in possession—rather than requiring the Debtors to incur the expense and delay of ordering entirely new business forms.  The Debtors submit that once they have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtor in Possession," and with respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such Business Forms are clearly labeled "Debtor in Possession.

**E.      Intercompany Claims and Transactions**

23.      In the ordinary course of business, the Debtors maintain business relationships with each other that give rise to claims among the Debtors and certain of their non-Debtor affiliates (the "Intercompany Transactions").[8]  The Intercompany Transactions may result in intercompany receivables and payables (the "Intercompany Claims") and are made to either (a) reimburse certain Debtors or non-Debtor affiliates for various expenditures associated with their business or (b) fund certain Debtors' or non-Debtor affiliates' accounts in anticipation of such expenditures as needed. The Debtors engage in transactions among bank accounts to manage liquidity in each entity's bank accounts, and make disbursements on behalf of other entities, including for employees' payroll, local and state taxes, and shared service operations.  Whenever a Debtor funds expenses incurred by or allocable to other affiliates, an intercompany receivable is generated at such Debtor and an intercompany payable is generated at the affiliate entity.  The affiliate entity settles intercompany receivables on a monthly or quarterly basis or when funds are available.

---

[8]      Because the Debtors historically maintained Intercompany Transactions and such arrangements are common among enterprises similar to those of the Debtors, the Debtors believe the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval.  Nevertheless, out of an abundance of caution, the Debtors are seeking express authority to continue such arrangements on a post-petition basis.

24.     To facilitate and streamline the Debtors' intercompany expenses, GGC and non-Debtor GGT, a Delaware corporation and sister company to Holdco, entered into that certain Intercompany Services and Expense Allocation Agreement dated January 1, 2022 (the "Shared Services Agreement").  Under the Shared Services Agreement, GGT agreed to provide to the Debtors certain services, such as customer onboarding, management and administrative support. GGC agreed to pay for those services as set forth in Schedule A to the agreement.  Pursuant to the Shared Services Agreement, the cost of certain expenses, such as payroll and administrative support, is allocated by GGT to GGC based on allocations provided by internal services providers and actual payroll for all of the GGC's employees plus an allocated percentage of shared employees.  For example, individuals providing services to GGC are employed by GGT, but GGC reimburses the payroll expenses for those individuals under the Shared Services Agreement. Where employees are shared between entities, the cost of paying those employees is allocated between entities based on their respective time spent at each entity.

25.     Additionally, Holdco and all of its direct and indirect subsidiaries entered into that certain Master Services Agreement dated October 18, 2022 (the "Master Services Agreement"). Under the Master Services Agreement, the Debtors and their non-Debtor affiliates agreed to provide each other with certain services as necessary and appropriate for the operation and management of any entity.  The Debtors intend to continue to honor their obligations to each other and their non-Debtor affiliates for post-petition services in respect of the Shared Services Agreement and the Master Services Agreements, including making payments thereunder, and other similar intercompany transactions in the nature of expense sharing and reimbursement, to enable and facilitate the streamlined operation of the Debtors' businesses, which the Debtors

14

submit are typical arrangements in similar multi-debtor enterprises with complex cash management systems such as the Debtors'. [9]

## **BASIS FOR RELIEF**

**A.      Maintaining the Existing Cash Management System Is Essential to the Debtors' Ongoing Operations and Restructuring Efforts**

26.      The Debtors hereby seek an order authorizing them to maintain the Cash Management System as described in this Motion.  In light of the nature of the Debtors' complex operations and the benefits of the Cash Management System, the continuation of the Debtors' existing cash and cryptocurrency management operations is essential for a successful reorganization, as well as the preservation and enhancement of the value of the Debtors' businesses.

27.      The U.S. Trustee has propounded Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "U.S. Trustee Guidelines") that, unless otherwise ordered by the Court, require a debtor to, among other things: (a) establish one debtor-in-possession account for all estate monies required for the payment of taxes (including payroll taxes); (b) close all existing bank accounts and open new debtor-in-possession accounts; (c) maintain a separate debtor-in-possession account for cash collateral; (d) obtain checks that bear the designation "debtor-in-possession;" and (e) reference the bankruptcy case number and the type of account on such checks.  These requirements are designed to provide a clear line of demarcation

---

[9]      Prior to the Petition Date, the Debtors also engaged in intercompany transactions with each other to facilitate their dealings with third parties and in the ordinary course of operating their respective businesses.  The Debtors' lending and borrowing operations were paused on November 16, 2022, and the Debtors do not seek authorization to continue intercompany transactions of such nature.  GAP continues to engage in spot trading activities with third parties and non-Debtor affiliates and intends to continue doing so post-petition in the ordinary course of business. Spot trading entails the delivery of a cryptocurrency asset in exchange for a price. For these trades, GAP will typically source the digital asset from a non-Debtor affiliate and deliver these digital assets to the third party.  GAP will receive a spread on this transaction and does not assume credit or market risk.

between prepetition and post-petition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the petition date. Strict enforcement of the U.S. Trustee Guidelines in these Chapter 11 Cases, however, would severely disrupt the ordinary financial operations of the Debtors by reducing efficiencies and causing unnecessary expenses and could cause confusion and alarm among their employees, customers and suppliers who are unfamiliar with chapter 11.

28.     The Debtors' request for authorization to continue to use their Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in those transactions that make up the bulk of its day-to-day operations without incurring the excessive monitoring costs that would result from the need to provide notice of, and obtain approval for, such ordinary course activities. Within the purview of section 363(c) of the Bankruptcy Code, a debtor in possession is authorized to continue utilizing its cash management system "in the ordinary course of business." *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Enron Corp.*, No. 01-16034, 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *See In re Frigitemp Corp.*, 34 B.R. 1000, 1010 (S.D.N.Y. 1983), aff'd, 753 F. 2d 230 (2d Cir. 1985); *see also Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).

29.     Indeed, bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R.

321, 327 (Bankr. S.D. Ohio 1987).  This is particularly true when, as here, a chapter 11 case involves affiliated debtors with complex financial affairs.  In addition, courts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part, rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom;see also Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994).  As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."  *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

30.    In other large and complex chapter 11 cases, courts in this and other districts routinely waive certain U.S. Trustee Guideline requirements and allow the continued use of cash management systems and prepetition bank accounts employed in the ordinary course of a debtor's prepetition business. *See, e.g.*, *In re Automotores Gildemeister SpA*, Case No. 21-10685 (LGB) (Bankr. S.D.N.Y. May 11, 2021); *In re Jason Indus.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Jul. 27, 2020); *In re Frontier Commc'ns. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020); *In re Deluxe Entm't Servs. Grp.*, Inc., No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 25, 2019); *In re Hollander Sleep Prods.*, LLC, No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 2, 2019); *In re Sungard Availability Servs. Cap.*, Inc. No. 19-22915 (RDD) (Bankr. S.D.N.Y. May 2, 2019); *In re FULLBEAUTY Brands Holdings Corp.*, No. 19-22185 (RDD) (Bankr. S.D.N.Y. Feb. 7, 2019). Moreover, similar relief has been granted in other chapter 11 cases involving entities

17

engaged in providing financial cryptocurrency services like the Debtors. *See In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Oct. 21, 2022) (granting relief on a final basis); *In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Nov. 15, 2022) (granting relief on an interim basis).[10]

31.    In addition, the Debtors concurrently have sought certain other first-day relief authorizing the Debtors to pay certain prepetition obligations on an uninterrupted basis. Without continued operation of the Cash Management System, the Debtors likely would be unable to implement the relief sought in such motions.

**B.    Authorizing the Debtors to Continue Using Debit, Wire and ACH Payments Is Warranted**

32.    The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check. In particular, the U.S. Trustee Guidelines require that all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement. As discussed above, in the ordinary course of business, the Debtors make payments through ACH, wires, account debits and other similar methods. If the Debtors' ability to conduct transactions by non-check methods were impaired, the Debtors may be unable to perform under certain contracts, their business operations may be disrupted and their estates would incur additional costs. Therefore, the Debtors submit that authorizing the continued use of existing non-check methods is warranted.

---

[10]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

C.    **Authorizing the Banks to Continue to Maintain, Service and Administer the Bank Accounts and Wallets in the Ordinary Course of Business Is Warranted**

33.    The Debtors respectfully request that the Court authorize and direct the Banks to continue to maintain, service and administer the Bank Accounts as accounts of debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized and directed to receive, process, honor and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn or directed on the Bank Accounts after the Petition Date by holders, makers or other parties entitled to issue instructions with respect thereto (in accordance with the Proposed Order, as set forth below).

34.    The Debtors further request that the Court authorize and direct the Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH payments should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires or ACH payments are dated before or after the Petition Date. The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any account either (a) at the direction of the Debtors; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite the above-described protective measures, such Bank shall not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other item honored post-petition.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

35.    The Debtors also request authorization to continue to maintain and administer their Wallets in the ordinary course of business.  The Wallets are a necessary component of the Debtors' Cash Management System and enable the Debtors to store their digital assets.  Therefore, the

Debtors respectfully submit that the requested relief is necessary and appropriate and should be granted.

36.     Moreover, the Debtors request that the Court authorize (a) the Banks to charge, and the Debtors to pay or honor, both prepetition and post-petition service and other fees, costs, charges and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors, and (b) charge back returned items to the Bank Accounts, whether such items are dated before, on or subsequent to the Petition Date, in the ordinary course of business. Courts in this district have regularly waived certain U.S. Trustee Guidelines and allowed the continued use of cash management systems and prepetition bank accounts employed in the ordinary course of a debtor's prepetition business. *See, e.g.*, *In re Voyager Digit. Holdings, Inc.*, No. 22-10493 (MEW) (Bankr. S.D.N.Y. Nov. 15, 2022) (authorizing debtors to continue to operate their cash management system on an interim basis); *In re Pareteum Corp.*, No. 22-10615 (LGB) (Bankr. S.D.N.Y. June 8, 2022) (authorizing debtors to continue to operate their cash management system on a final basis); *In re Grupo Posadas S.A.B. de C.V.*, No. 21-11831 (SHL) (Bankr. S.D.N.Y. Dec. 9, 2021) (same); *In re Lakeland Tours, LLC*, No. 20-11647 (JLG) (Bankr. S.D.N.Y. Aug. 6, 2020) (same).[11]

**D.     The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms**

37.     In the ordinary course of their businesses, the Debtors use a variety of checks, letterhead and other business forms.  To avoid disruption of the Cash Management System and unnecessary delay and expense, the Debtors request authorization to continue to use their business forms substantially in the form existing immediately before the Petition Date, without reference to

---

[11]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion.  Copies of these orders are available upon request of the Debtors' proposed counsel.

their status as debtors in possession. The Debtors submit that parties in interest will not be prejudiced if the Debtors are authorized to continue to use their business forms. The Debtors will be sending a notice of commencement of these Chapter 11 Cases to all creditors, which will advise them of the Debtors' status as debtors in possession, such that requiring the Debtors to change their Business Forms would be unnecessary and unduly burdensome. The Debtors further submit that once they have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtor-in-Possession." With respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor-In-Possession."

38.     In other chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label, at least until the debtors' existing check stock is depleted. *See, e.g.*, *In re Jason Indus.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Jul. 27, 2020) (allowing the debtors to use their prepetition business forms without the "debtor in possession" label); *In re Frontier Commc'ns. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020) (same); *In re Deluxe Entm't Servs. Grp.*, Inc., No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 25, 2019) (same); *In re Hollander Sleep Prods.*, LLC, No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 2, 2019) (same); *In re Sungard Availability Servs. Cap., Inc.*, No. 19-22915 (RDD) (Bankr. S.D.N.Y. May 2, 2019) (same); *In re FULLBEAUTY Brands Holdings Corp.*, No. 19-22185 (RDD) (Bankr. S.D.N.Y. Feb. 7, 2019) (same); *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Oct. 21, 2022).[12]

---

[12]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

E.      **Cause Exists to Extend the Deadline to Comply with Section 345(b)**

39.     Pursuant to section 345(b) of the Bankruptcy Code, any deposit or other investment of money made by a debtor, except those insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, must be secured by a bond in favor of the United States that is secured by the undertaking of a corporate surety approved by the U.S. Trustee or by the deposit of securities of the kind specified in 31 U.S.C. § 9303. *See* 11 U.S.C. § 345(b). Section 345(b) provides further, however, that a bankruptcy court may allow the use of alternatives to these approved investment guidelines "for cause." *Id.*; *see also In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

40.     In determining whether cause exists to waive the requirements of section 345(b) of the Bankruptcy Code, courts have used a totality of circumstances inquiry considering a number of factors, including, among others: the sophistication and size of the debtor's business, the amount of investments involved, bank ratings, the complexity of the case; the debtors' safeguards for the funds, the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions, the benefit to the debtor of current practices, the harm, if any, to the estate, and the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case. *See Serv. Merch.*, 240 B.R. at 896; *see also In re Ditech Holding Corp.*, 605 B.R. 10, 20 (Bankr. S.D.N.Y. 2019) (citing *Serv. Merch.*, 240 B.R. at 896). Examining these factors, the court in *Service Merchandise* concluded that "cause" existed in that case because the debtors were "large, sophisticated [companies] with a complex cash management system," with the ability to shift money as needed to insure the safety of their funds. *Id.* Moreover, the benefits to the debtor of waiving the section 345(b) requirements far outweighed any potential

harm to the estate, and the failure to waive the requirements "would needlessly handcuff these debtors' reorganization efforts." *Id.* at 896–97.

41.     As in *Service Merchandise*, the Debtors operate a sophisticated enterprise with a complex cash management system that provides the Debtors with the ability to transfer funds a therein.  Although certain of the Bank Accounts are maintained at institutions that are not Authorized Depositories, the Debtors are in the process of closing and transferring the funds in these Bank Accounts.  To the extent the Bank Accounts do not comply with section 345 of the Bankruptcy Code, the Debtors solely request that this Court grant them a 45-day extension of the time to comply with such deposit requirements.[13]  During the extension period, the Debtors propose to discuss with the U.S. Trustee what further modifications to their Bank Accounts and Cash Management System, if any, would be appropriate under the circumstances.

42.     Courts in this district have granted debtors' requests for relief from section 345(b) of the Bankruptcy Code.  *See In re Automotores Gildemeister SpA*, Case No. 21-10685 (LGB) (Bankr. S.D.N.Y. May 11, 2021), ECF No. 102 (order granting 60-day extension); *In re Inversiones Alsacia S.A.*, Case No. 14-12896 (MG) (Bankr. S.D.N.Y. Dec. 4, 2014), ECF No. 99 (same)*; In re Newland Int'l Props., Corp.*, Case No. 13-11396 (MG) (Bankr. S.D.N.Y. May 1, 2013), ECF No. 32 (interim order granting same); *In re TBS Shipping Servs. Inc.*, Case No. 12-22224 (RDD) (Bankr. S.D.N.Y. Feb. 8, 2012), ECF No. 37 (order granting same).  Moreover, similar relief has been granted in other chapter 11 cases involving entities engaged in providing cryptocurrency financial services. *See In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Oct. 21, 2022), ECF No. 1152 (waiving the requirements of section 345(b) on a final

---

[13]     This relief is without prejudice to the Debtors' ability to seek a further extension of their time to comply with section 345(b) of the Bankruptcy Code.

basis); *In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Nov. 15,

2022), ECF No. 641 (waiving the requirements of section 345(b) on an interim basis).

**F.     The Bankruptcy Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions and Grant Administrative Priority Status for Post-Petition Intercompany Claims**

43.     The Debtors engage in various Intercompany Transactions in the ordinary course

of their respective businesses.  As a result of the Intercompany Transactions, at any given time,

there may be Intercompany Claims owing by one Debtor, to another Debtor or non-Debtor

affiliate.  Intercompany Transactions are made between and among Debtor affiliates in the

ordinary course of business as part of the Cash Management System.  To ensure that each

individual Debtor will not fund, at the expense of its creditors, the operations of another entity, the

Debtors respectfully request that, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy

Code, all post-petition Intercompany Transactions arising in the ordinary course be granted

administrative priority expense status.  The Debtors seek the authority to honor all post-petition

Intercompany Claims and continue the Intercompany Transactions in the ordinary course of

business.

44.     The continued use of Intercompany Transactions will reduce the administrative

costs incurred by the Debtors and allow for the smooth operation of the Debtors' businesses.  If

the Intercompany Transactions were discontinued, the Debtors' operations would be disrupted to

the detriment of the Debtors' estates and creditors.  The Debtors thus submit that an order allowing

the Debtors to continue the Intercompany Transactions is in the best interests of the Debtors'

estates and creditors.

45.     Similar relief has been granted in chapter 11 cases in this district. *See, e.g., In re

Grupo Posadas S.A.B. de C.V.*, No. 21-11831 (SHL) (Bankr. S.D.N.Y. Dec. 9, 2021) (allowing

debtors to continue intercompany transactions); *In re Frontier Commc'ns. Corp.*, No. 20-22476

(RDD) (Bankr. S.D.N.Y. May 26, 2020) (same); *In re Deluxe Entm't Servs. Grp. Inc.*, No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 25, 2019) (same); *In re Hollander Sleep Prods.*, LLC, No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 2, 2019) (same); *In re Sungard Availability Servs. Cap., Inc.*, No. 19-22915 (RDD) (Bankr. S.D.N.Y. May 2, 2019) (same); *In re FULLBEAUTY Brands Holdings Corp.*, No. 19-22185 (RDD) (Bankr. S.D.N.Y. Feb. 7, 2019) (same).[14]

## G.   The Requirements of Bankruptcy Rule 6003 Are Satisfied

46.   Bankruptcy Rule 6003(b) empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). Because the Debtors process large amounts of cash to facilitate their operations, any disruption to the Cash Management System would seriously harm the Debtors' estates and creditors. Indeed, without the seamless continuation of the Cash Management System, the Debtors may be unable to track incoming receipts and payments may not be made in a timely fashion. This could result in employees, creditors and counterparties refusing to provide essential services, thereby causing a diminution in the value of the Debtors' estates to the detriment of all parties in interest and, thus, immediate and irreparable harm. Accordingly, the Debtors meet the "immediate and irreparable harm" standard of Bankruptcy Rule 6003(b).

## H.   Waiver of Bankruptcy Rules 6004(a) and 6004(h)

47.   To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen day stay period under Bankruptcy Rule 6004(h).

---

[14]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

## <u>RESERVATION OF RIGHTS</u>

48.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserves their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

## <u>NOTICE</u>

49.     Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iii) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; and (vi) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## <u>NO PRIOR REQUEST</u>

50.     No prior request for the relief requested herein has been made to this or any other Court.

[*Remainder of page intentionally left blank*]

**CONCLUSION**

WHEREFORE, for the reason set forth herein the Debtors respectfully request that this

Court (a) enter the Proposed Orders, substantially in the form attached hereto as Exhibit A and

Exhibit B and (b) grant such other and further relief as is just and proper.

Dated:      January 20, 2023
            New York, New York

_/s/ Sean A. O'Neal_
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors and
Debtors-in-Possession*

## **EXHIBIT A**

### **Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (___) |
| Debtors. | Joint Administration Pending |

**INTERIM ORDER (I) AUTHORIZING
DEBTORS TO CONTINUE TO OPERATE THE EXISTING
CASH MANAGEMENT SYSTEM, INCLUDING EXISTING BANK
ACCOUNTS, HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO, AND MAINTAIN EXISTING BUSINESS FORMS;
(II) PERMITTING CONTINUED INTERCOMPANY TRANSACTIONS AND
GRANTING CERTAIN ADMINISTRATIVE CLAIMS; (III) EXTENDING
THE TIME TO COMPLY WITH THE REQUIREMENTS OF SECTION
345 OF THE BANKRUPTCY CODE AND (IV) GRANTING RELATED RELIEF**

**("INTERIM CASH MANAGEMENT ORDER")**

Upon the motion (the "Motion")[2] of Genesis Global Holdco, LLC ("Holdco") and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order (this "Order"), as more fully described in the Motion, (a) authorizing the Debtors to (i) continue to operate their existing cash and cryptocurrency management system, including existing bank accounts; (ii) honor certain prepetition obligations related thereto and maintain their existing business forms; (iii) continue to perform intercompany transactions with each other and with certain non-Debtors on a post-petition basis and in the ordinary course of business and consistent with historical practice and according administrative

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

expense priority status to post-petition Intercompany Transactions; (c) extending the time for the

Debtors to comply with section 345(b) of the Bankruptcy Code; and (d) granting such other and

further relief; and upon the *Declaration of Michael Leto in Support of First Day Motions and*

*Applications in Compliance with Local Rule 1007-2*; and the Court having jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from

the United States District Court for the Southern District of New York, dated January 31, 2012;

and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and

that the Court may enter a final order consistent with Article III of the United States Constitution;

and the Court having found that venue of this proceeding and the Motion in this District is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in

the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in

interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a

hearing on the Motion was appropriate and no other notice need be provided; and the Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before the Court (the "Hearing"); and the Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis to the extent provided herein.

2.      The final hearing on the Motion shall be held on _____, 2023, at__:__ _.m.

Eastern Time (the "Final Hearing").  Any objections or responses to entry of the Proposed Final

Order shall be filed by _____, 2023, at 4:00 p.m. Eastern Time and served on the following

parties:  (i) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201

Varick Street, Suite 1006, New York, NY 10014, Attn: Greg Zipes, Esq.; (ii) proposed counsel to

the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York

10006, Attn: Sean A. O'Neal, Esq. and Jane VanLare, Esq.; and (iii) the Office of the United States

Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014,

Attn: Greg Zipes, Esq.; and (iv) counsel to any statutory committee appointed in these chapter 11

cases.  If no objections are filed to the Final Order, the Court may enter the Final Order without

further notice or hearing.

3.      The Debtors are authorized, on an interim basis and in their sole discretion, to: (a)

continue operating the Cash Management System; (b) honor their prepetition obligations related

thereto; (c) continue to perform Intercompany Transactions consistent with historical practice, and

(d) pending the Final Hearing, continue to deposit and invest funds in accordance with the

Investment Practices, as described in the Motion, notwithstanding section 345(b) of the

Bankruptcy Code.  The Debtors will maintain records in the ordinary course of business reflecting

transfers of cash, if any, including Intercompany Transactions, so as to permit all such transactions

to be ascertainable.

4.      The Debtors are further authorized, on an interim basis and in their sole discretion,

to: (a) continue to use, with the same account numbers, all of the Bank Accounts in existence

as of the Petition Date, including those accounts identified on <u>Exhibit D</u> to the Motion;  (b) use,

in their present form, all  correspondence  and business forms (including letterhead, purchase

orders and invoices), as well as checks and other documents related to the Bank Accounts existing

immediately  before  the  Petition  Date,  without  reference  to  the  Debtors'  status  as  debtors  in

possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors

in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual

means, including checks, wire transfers and other debits; and (e) pay any ordinary course bank fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Account.

5.      The Debtors are authorized to continue to maintain and manage their cryptocurrency assets in their reasonable discretion, including by the continued use of their Wallets.

6.      Nothing herein shall be interpreted as authorizing the Debtors to restart their lending or borrowing business absent further order of the Court; for the avoidance of doubt, GAP is authorized to continue engaging in spot trading transactions in the ordinary course of business.

7.      The Debtors shall have forty-five (45) days (or such additional time to which the U.S. Trustee may agree) from the entry of the Interim Order to either comply with section 345(b) of the Bankruptcy Code or to make such other arrangements as agreed to by the U.S. Trustee or approved by the Court; provided that such extension is without prejudice to the Debtors' right to request a further extension or the waiver of the requirement of section 345(b) of the Bankruptcy Code, which the Debtors may obtain in consultation with the U.S. Trustee, without the need for further Court approval.

8.      All Banks at which the Bank Accounts are maintained are authorized and directed to continue to maintain, service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor and pay, to the extent of available funds, any and all checks, drafts, wires and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

9.      All Banks provided with notice of this Order maintaining any of the Bank
Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or
otherwise issued before the Petition Date for which the Debtors specifically issue stop payment
orders in accordance with the documents governing such Bank Accounts.

10.     In the course of providing cash management services to the Debtors, each of the
Banks, at which the Bank Accounts are maintained, are authorized, without further order of this
Court, to deduct the applicable fees from the appropriate accounts of the Debtors, and further, to
charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks
or other returned items, including returned items that result from ACH transactions, wire transfers
or other electronic transfers of any kind, regardless of whether such items were deposited or
transferred prepetition or post-petition and regardless of whether the returned items relate to
prepetition or post-petition items or transfers.

11.     Notwithstanding any other provision of this Order, any Bank may rely upon the
representations of the Debtors with respect to whether any check, draft, wire or other transfer
drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any
order of this Court, and any Bank that honors a prepetition check or other item drawn on any
account that is the subject of this Order (a) at the direction of the Debtors; or (b) in a good-faith
belief that the Court has authorized such prepetition check or item to be honored, shall neither
be deemed to be in violation of this Order nor be liable to the Debtors or their estates on their
account of such prepetition check or other item being honored post-petition, or otherwise deemed
to be in violation of this Order.

12.     All Banks are further authorized and directed to (a) honor the Debtors' directions
with respect to the opening and closing of any Bank Account; and (b) accept and hold, or invest,

the Debtors' funds in accordance with the Debtors' instructions; provided in each case that the Debtors' Banks shall not have any liability to any party for relying on such representations.

13.     All Intercompany Claims held by a Debtor against another Debtor or by a non-Debtor affiliate of a Debtor against a Debtor arising from post-petition Intercompany Transactions shall be entitled to administrative expense status under section 503(b)(1)(A) of the Bankruptcy Code.

14.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors or a waiver of the Debtors' rights to dispute any claim or lien.

15.     The requirements set forth in Bankruptcy Rules 6003(b) and 6004(a) are satisfied by the contents of the Motion.

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

17.     As soon as practicable after entry of this Order, the Debtors will serve a copy of this Order on the Banks listed in <u>Exhibit D</u> attached to the Motion.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

19.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.


Dated: _____, 2023      _____
        New York, New York              United States Bankruptcy Judge

# **EXHIBIT B**

## **Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (___) |
| Debtors. | Joint Administration Pending |

### FINAL ORDER (I) AUTHORIZING DEBTORS TO CONTINUE TO OPERATE THE EXISTING CASH MANAGEMENT SYSTEM, INCLUDING EXISTING BANK ACCOUNTS, HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, AND MAINTAIN EXISTING BUSINESS FORMS; (II) PERMITTING CONTINUED INTERCOMPANY TRANSACTIONS AND GRANTING CERTAIN ADMINISTRATIVE CLAIMS; (III) EXTENDING THE TIME TO COMPLY WITH THE REQUIREMENTS OF SECTION 345 OF THE BANKRUPTCY CODE AND (IV) GRANTING RELATED RELIEF

### ("FINAL CASH MANAGEMENT ORDER")

Upon the motion (the "Motion")[2] of Genesis Global Holdco, LLC ("Holdco") and certain of its affiliate, as debtors and debtors in possession in the above captioned cases (collectively, the "Debtors"), for entry of an order (this "Order"), as more fully described in the Motion, (a) authorizing the Debtors to (i) continue to operate their existing cash and cryptocurrency management system, including existing bank accounts; (ii) honor certain prepetition obligations related thereto and maintain their existing business forms; (iii) continue to perform intercompany transactions with each other and with certain non-Debtors on a post-petition basis and in the ordinary course of business and consistent with historical practice and according administrative

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

expense priority status to post-petition Intercompany Transactions; (c) extending the time for the

Debtors to comply with section 345(b) of the Bankruptcy Code; and (d) granting such other and

further relief; and upon the *Declaration of Michael Leto in Support of First Day Motions and

Applications in Compliance with Local Rule 1007-2*; and the Court having jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from

the United States District Court for the Southern District of New York, dated January 31, 2012;

and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and

that the Court may enter a final order consistent with Article III of the United States Constitution;

and the Court having found that venue of this proceeding and the Motion in this District is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in

the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in

interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a

hearing on the Motion was appropriate and no other notice need be provided; and the Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before the Court (the "Hearing"); and the Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted to the extent provided herein.

2.      The Debtors are authorized to:  (a) continue operating the Cash Management

System; (b) honor their prepetition obligations related thereto; (c) continue to perform

Intercompany Transactions consistent with historical practice, and (d) continue to deposit and

invest funds in accordance with the Investment Practices, as described in the Motion,

notwithstanding section 345(b) of the Bankruptcy Code. The Debtors will maintain records in the ordinary course of business reflecting transfers of cash, if any, including Intercompany Transactions, so as to permit all such transactions to be ascertainable.

3.       The Debtors are further authorized to: (a) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date, including those accounts identified on Exhibit D to the Motion; (b) use, in their present form, all correspondence and business forms (including letterhead, purchase orders and invoices), as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers and other debits; and (e) pay any ordinary course bank fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts.

4.       The Debtors are authorized to continue to maintain and manage their cryptocurrency assets in their reasonable discretion, including by the continued use of their Wallets.

5.       Nothing herein shall be interpreted as authorizing the Debtors to restart their lending or borrowing business absent further order of the Court; for the avoidance of doubt, GAP is authorized to continue engaging in spot trading transactions in the ordinary course of business.

6.       All Banks at which the Bank Accounts are maintained are authorized and directed to continue to maintain, service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive,

process, honor and pay, to the extent of available funds, any and all checks, drafts, wires and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

7.      All Banks provided with notice of this Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

8.      In the course of providing cash management services to the Debtors, each of the Banks, at which the Bank Accounts are maintained, are authorized, without further order of this Court, to deduct the applicable fees from the appropriate accounts of the Debtors, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or post-petition and regardless of whether the returned items relate to prepetition or post-petition items or transfers.

9.      Notwithstanding any other provision of this Order, any Bank may rely upon the representations of the Debtors with respect to whether any check, draft, wire or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors; or (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, shall neither be deemed to be in violation of this Order nor be liable to the Debtors or their estates on their

4

account of such prepetition check or other item being honored post-petition, or otherwise deemed to be in violation of this Order.

10.    All Banks are further authorized and directed to (a) honor the Debtors' directions with respect to the opening and closing of any Bank Account; and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions: provided in each case that the Debtors' Banks shall not have any liability to any party for relying on such representations.

11.    All Intercompany Claims held by a Debtor against another Debtor or by a non-Debtor affiliate of a Debtor against a Debtor arising from post-petition Intercompany Transactions shall be entitled to administrative expense status under section 503(b)(1)(A) of the Bankruptcy Code.

12.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors or a waiver of the Debtors' rights to dispute any claim or lien.

13.    The requirements set forth in Bankruptcy Rules 6003(b) and 6004(a) are satisfied by the contents of the Motion.

14.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

15.    As soon as practicable after entry of this Order, the Debtors will serve a copy of this Order on the Banks listed in <u>Exhibit D</u> attached to the Motion.

16.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

17.     The Court retains jurisdiction with respect to all matters arising from or related to

the interpretation or implementation of this Order.


Dated: _____, 2023        _____
        New York, New York                      United States Bankruptcy Judge

# **EXHIBIT C**

**Cash Flow Process**

## Cash Schematic (Excludes Brokerage Accounts)



**Notes:**

(1) The GGH operating x8433 account is used to make transfers to GGH's subsidiaries. This account can send and receive cash from any debtor or non-debtor bank account.

(2) Bank Deposit (Savings) accounts Signature Bank x5578 and x7848, can be funded by any debtor or non-debtor bank account. Most recently, this account received a cash transfer from Signature Bank 7593.

(3) Signature Bank x7593 operates a sub-account through Signet, which is a blockchain based digital payments platform offered through Signature Bank.

(4) The GAP operating accounts (Silvergate Bank x3879 and x3861) are used as intermediaries between counterparties that want to access trading with non-debtor affiliates.

(5) Non-debtor lending/borrowing/trading accounts can receive/send transfers from GAP and GGC accounts to support lending, borrowing, or trading activites.

(6) The Debtors have a Shared Services Agreement with GGC and non-debtor affiliate GGT and a Master Services Agreement between GGH and all debtor and non-debtor affiliates pursuant to which certain entities provide services to other entities or reimburse amounts paid to third parties on behalf of such entities, giving rise to intercompany claims.

## **EXHIBIT D**

**Bank Accounts**

| No. | Entity | Bank | Location | Bank Account Number | Description |
|---|---|---|---|---|---|
| 1. | Genesis Global Capital, LLC | Signature Bank | New York | x7593 | Operating |
| 2. | Genesis Global Capital, LLC | Signature Bank | New York | x5985 | Operating |
| 3. | Genesis Global Capital, LLC | Signature Bank | New York | x5162 | Disbursement |
| 4. | Genesis Global Capital, LLC | Signature Bank | New York | x5578 | Bank Deposits (Savings) |
| 5. | Genesis Global Capital, LLC | Signature Bank | New York | x7848 | Bank Deposits (Savings) |
| 6. | Genesis Global Capital, LLC | Signature Bank | New York | x1829 | Inactive (Pending Closure) |
| 7. | Genesis Global Capital, LLC | Silvergate Bank | California | x3731 | Operating |
| 8. | Genesis Global Capital, LLC | Silvergate Bank | California | x7955 | Operating |
| 9. | Genesis Global Capital, LLC | Silvergate Bank | California | x3749 | Disbursement |
| 10. | Genesis Global Capital, LLC | JPMorgan Chase Bank, NA | New York | x6531 | Disbursement |
| 11. | Genesis Global Capital, LLC | Metropolitan  Commercial Bank | New York | x0134 | Inactive (Pending Closure) |
| 12. | Genesis Global Capital, LLC | Marex Capital Markets Inc. | Illinois | x6000 | Brokerage |
| 13. | Genesis Global Capital, LLC | Continental Stock Transfer and Trust Company | New York | x620 | Brokerage |
| 14. | Genesis Global Capital, LLC | Continental Stock Transfer and Trust Company | New York | x1059 | Brokerage |
| 15. | Genesis Global Capital, LLC | Interactive Brokers LLC | Connecticut | x6030 | Brokerage |
| 16. | Genesis Global Capital, LLC | Tradestation Securities, Inc. | Florida | x8621 | Brokerage |
| 17. | Genesis Asia Pacific Pte. Ltd. | Silvergate Bank | California | x3861 | Operating |
| 18. | Genesis Asia Pacific Pte. Ltd. | Silvergate Bank | California | x3879 | Operating |
| 19. | Genesis Asia Pacific Pte. Ltd. | JPMorgan Chase Bank, NA Singapore | Singapore | x7324 | Disbursement |
| 20. | Genesis Asia Pacific Pte. Ltd. | JPMorgan Chase Bank, NA Singapore | Singapore | x7316 | Disbursement |
| 21. | Genesis Asia Pacific Pte. Ltd. | JPMorgan Chase Bank, NA Singapore | Singapore | x8488 | Disbursement |
| 22. | Genesis Asia Pacific Pte. Ltd. | Banking Circle | Denmark | x2784 | Inactive (Pending Closure) |
| 23. | Genesis Asia Pacific Pte. Ltd. | Industrial and Commercial Bank of China | Singapore | x0190 | Inactive (Pending Closure) |
| 24. | Genesis Global Holdco, LLC | Signature Bank | New York | x8433 | Operating |