CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (__) |
| Debtors. | Joint Administration Pending |

**MOTION OF GENESIS ASIA PACIFIC PTE. LTD. FOR**
**ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING GENESIS ASIA**
**PACIFIC PTE. LTD. TO (A) PAY CERTAIN EMPLOYEE WAGES AND OTHER**
**COMPENSATION AND RELATED OBLIGATIONS AND (B) MAINTAIN AND**
**CONTINUE EMPLOYEE BENEFITS AND PROGRAMS IN THE ORDINARY**
**COURSE, AND (II) AUTHORIZING AND DIRECTING APPLICABLE BANKS TO**
**HONOR ALL TRANSFERS RELATED TO SUCH OBLIGATIONS**

Debtor Genesis Asia Pacific Pte. Ltd. ("GAP")[2] hereby submits this motion (this "Motion")

for entry of interim and final orders, substantially in the form attached hereto as Exhibit A (the

"Proposed Interim Order") and Exhibit B (the "Proposed Final Order" and, together with the

Proposed Interim Order, the "Proposed Orders"), pursuant to sections 105(a), 363(b), 507(a),

---

[1]        The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]        GAP, together with the above-captioned debtors and debtors-in-possession are referred to as the "Debtors," and these cases, as the "Chapter 11 Cases."

541(b) and 1129(a)(9)(B) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules

6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i)

authorizing GAP to (a) pay certain employee wages and other compensation and related

obligations and (b) maintain and continue employee benefits and programs in the ordinary course,

(ii) authorizing and directing applicable banks to honor all transfers related to such obligations,

and (iii) granting GAP such other and further relief as the Court deems just and proper.  In support

of this Motion, GAP relies on the *Declaration of A. Derar Islim in Support of First Day Motions*

*and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration*

*of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule*

*1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day*

*Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and

along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations"), filed

contemporaneously herewith.[3]  In further support of this Motion, GAP respectfully presents as

follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of New York (the

"Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

Amended Standing Order of Reference from the United States District Court for the Southern

District of New York dated January 31, 2012 (Preska, C.J.).  Venue is proper pursuant to 28 U.S.C.

§§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory bases for the relief requested herein are sections 105(a), 363(b),

507(a), 541(b) and 1129(a)(9)(B) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

---

[3]      Capitalized terms used but not defined herein shall have the meaning ascribed to them in the First Day
Declarations.

"Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.     Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency. The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

4.     Over the past few months, the digital asset industry has experienced tremendous dislocation. The collapse of LUNA and TerraUSD and subsequent liquidation of 3AC signalled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies. As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022. Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed for Chapter 11 proceedings.

5.     These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business. This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's available liquidity. As a result of the unprecedented number and size of the loan calls, on November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders

6.      Over the past two months, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups to explore strategic solutions.  In addition, the Debtors have undertaken cost-saving and liquidity-preserving measures.  As a result of those efforts, the Debtors have determined that an in-court process is the best path to continue their efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

7.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' Chapter 11 Cases.

8.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

9.      While the Company's discussions with advisors to various creditor groups and DCG have been very productive in narrowing issues, they have not yet achieved a global resolution.  Accordingly, the Debtors commenced the Chapter 11 Cases to continue  their efforts towards  a consensual resolution through a transparent, court supervised process.  To that end, the Debtors are concurrently filing a proposed plan of reorganization, which will be amended as necessary to reflect the results of our continued negotiations.

**RELIEF REQUESTED**

10.      By this Motion, GAP requests the entry of an order pursuant to sections 105(a), 363, 507 and 541 of the Bankruptcy Code authorizing, but not directing, GAP to pay and honor certain prepetition employment-related claims, including (i) wages, salaries and other variable

compensation, (ii) reimbursable expenses, (iii) health,  pension, and insurance benefits, (iv) severance benefits, (v) paid time-off and other leave, and (vi) all other benefits that GAP has historically provided to Employees in the ordinary course of business (collectively, as more fully described below and together with attendant costs and expenses, the "Wages and Benefits").  In addition, GAP intends to continue to exercise its rights to modify or discontinue any of the Wages and Benefits, or to implement new Wages and Benefits in the ordinary course of business and consistent with its past practices, during the Chapter 11 Cases without the need for further Court approval.

11.     Given that GAP's employees are integral to the Debtors' ability to operate their businesses during the Chapter 11 Cases, GAP's failure to satisfy certain Wages and Benefits in the ordinary course would jeopardize employee loyalty and morale, potentially causing employees to seek alternative employment and significantly harming the Debtors' operations.  Accordingly, GAP seeks authority, but not direction, in its sole discretion, to continue to honor, pay, satisfy, or remit all claims and prepetition obligations related to Wages and Benefits in the ordinary course and consistent with its past practices, subject to the limitations discussed herein.

12.     The relief requested herein will avoid unnecessary harm to the Employees or the Debtors' businesses.

### THE WORKFORCE[4]

13.     GAP's workforce consists of approximately 15 wage earners as of the Petition Date (the "Employees"),[5] including executives, managers, professionals, and other personnel working

---

[4]     All amounts contained herein are listed in U.S. dollars unless otherwise indicated.

[5]     Additional employees providing services for Holdco and GGC are employed by Genesis Global Trading ("GGT"), an affiliate of the Debtors that has not sought relief under chapter 11.  Additional details about the payroll and payroll expenses for these employees relating to GGT is further described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Continue to Operate the Existing Cash Management System, Including Existing Bank Accounts, Honor Certain Prepetition Obligations Related Thereto, and Maintain Existing Business Forms; (II) Permitting Continued Intercompany Transactions and Granting Certain Administrative Claims;*

in finance, trading, operations, technology, compliance, and other key functions.  All of the Employees are based in Singapore, which is the principal place of business of GAP.

14.    The Employees perform a variety of critical functions for GAP's business as the Employees' skills, their specialized knowledge of GAP's business model, industry and operations, as well as their relationships with customers and other third parties, are essential to the value of the Debtors' assets and businesses.  Without the support and dedication of the Employees to ensure the continued operation of their businesses, the Debtors would be unable to preserve their business.

15.    Each Employee signs an individual employment contract with GAP.  The employment contracts stipulate each Employee's relationship with GAP, describing, for example, the Employee's base salary, variable compensation components, and the rights and obligations of each Employee (such as adherence to GAP's internal policies).

16.    The Employees perform a variety of critical functions on behalf of GAP. Accordingly, with the commencement of the Chapter 11 Cases, it is critical for their morale and the continued operation of the businesses to ensure that there is no interruption to the payment of the Employees' Wages and Benefits.

## **WAGES AND BENEFITS**

17.    On average, GAP's average monthly gross payroll is approximately $245,000 in base wages and salaries ("Wages").  GAP also pays certain forms of variable compensation (such compensation, "Variable Compensation" and together with Wages, the "Employee Compensation"), which amount varies annually.  Variable Compensation includes, but is not limited to, performance bonuses, commissions, and retention bonuses.

---

*(III) Extending the Time to Comply with the Requirements of Section 345 of the Bankruptcy Code; and (IV) Granting Related Relief*, filed contemporaneously herewith.

### A.    Employee Compensation

18.    GAP pays Employee Compensation once a month, generally on the last day of every month.  Variable Compensation is paid under different payment schedules depending on the type of Variable Compensation: Bonuses are paid at GAP's discretion annually.  GAP does not believe that there are any outstanding amounts in prepetition Wages as of the Petition Date (the "Unpaid Compensation").[6]

19.    As of the Petition Date, GAP believes that all Employees would have a priority claim of less than $15,150 pursuant to section 507(a)(4) of the Bankruptcy Code with respect to their earned Unpaid Compensation.  GAP seeks authority, but not direction, in its sole discretion, to pay any Unpaid Compensation as it comes due in the ordinary course of business and consistent with past practices.  GAP further requests authority, but not direction, to continue to pay Employee Compensation on a post-petition basis in the ordinary course of business.

### B.    Deductions and Withholdings

20.    During each applicable pay period, GAP directly, or through its payroll processors, routinely deducts certain amounts from the Employees' paychecks, including CPF Contributions, SGH Contributions, SDL Contributions and other miscellaneous deductions (each as defined below and collectively, the "Employee Deductions").  These amounts are then generally remitted to the appropriate private third-party or non-U.S. government authority.  As detailed below, on average, GAP has historically deducted a total of approximately $18,010 from Employee paychecks per month, comprised of the following:

| Employee Deductions | Average Monthly Amount |
| --- | --- |
| CPF Contributions | $17,900.00 |
| CDAC Contributions | $20.00 |
| SINDA Contributions | $90.00 |

---

[6]    GAP last processed payroll to Employees on January 19, 2023.  GAP is not asking the Court for authority to pay any outstanding pre-petition Variable Compensation at this time.

| Miscellaneous | N/A |
|---|---|
| **Total** | **$18,010** |

21.     ***CPF Contributions.***  The Central Provident Fund ("CPF") is a mandatory social security savings scheme funded by contributions from employers and employees.  The CPF is essentially a legally mandated pension fund for employees.  GAP pays approximately $17,900 per month in CPF Contributions.

22.     ***CDAC Contributions.***  Employees can also elect to contribute funds to the Chinese Development Assistance Council ("CDAC"), which is a non-profit organization and self-help group for the Chinese community in Singapore.  GAP pays approximately $20 per month in CDAC Contributions.

23.     ***SINDA Contributions.***  Similar to CDAC Contributions, Employees can also elect to contribute funds to the Singapore Indian Development Association ("SINDA"), which is a non-profit organization and self-help group for the Indian community in Singapore.  GAP pays approximately $90 per month in SINDA Contributions.

24.     Due to the commencement of the Chapter 11 Cases or other miscellaneous omissions, there may be Employee Deductions that were not forwarded to the appropriate third-party recipients prior to the Petition Date.  Accordingly, GAP seeks entry of a final order authorizing, but not directing, GAP to continue to forward these prepetition Employee Deductions, through payroll processors or directly to the applicable third-party recipients on a post-petition basis, as routinely done prior to the Petition Date.  As discussed more fully herein, GAP believes that, under section 541(d) of the Bankruptcy Code, the Employee Deductions are held in trust and are not the property of GAP's estates and, therefore, such funds are not available for general distribution to a debtor's creditors.

C.      **Payment of Reimbursable Expenses**

25.      Prior to the Petition Date, and in the ordinary course of business, GAP reimburses certain Employees for certain reasonable and customary expenses incurred on behalf of GAP in the scope of their employment in accordance with applicable laws and regulations (the "Reimbursable Expenses").

26.      A Reimbursable Expense is an expense incurred by an Employee in the performance of their duties that is deemed to be necessary to the performance of his/her job and is reasonable.  Reimbursable Expenses include paid-for expenses such as travel, meals, accommodations, and other business-related expenses that are paid out of pocket by the Employees.

27.      The Employees are required to submit the receipts for Reimbursable Expenses to GAP within thirty (30) days of incurrence, which are then approved within seven (7) days of submission.  After the approval of the receipts, GAP generally reimburses the travel and entertainment expenses to Employees each month as part of the next payroll.  In addition, certain Employees use company credit cards for business-related expenses.  GAP estimates that the total amount of unpaid prepetition Reimbursable Expenses is approximately $1,500.

28.      The Reimbursable Expenses were all incurred on GAP's behalf and with the understanding that they would be reimbursed.  Accordingly, to avoid harming individuals who incurred the Reimbursable Expenses while performing their duties, GAP seeks authority, but not direction, in its sole discretion, to (i) pay any outstanding prepetition Reimbursable Expenses and (ii) continue, during the course of these Chapter 11 Cases, to pay the Reimbursable Expenses in accordance with prepetition practices.

D.     **Payroll Processing**

29.     GAP relies on the services of CSCGFM Corporate Services (Singapore) Pte. Ltd. ("CSC"), a payroll vendor (the "Payroll Vendor") for payroll processing and other payroll-related services to facilitate the administration of the Wages and Benefits. The Payroll Vendor provides services that help with keeping and consolidating accounting information and processing payroll for Employees according to the applicable payroll cycle.  Failure to pay the Payroll Vendor could cause delays in payroll processing, which in turn could delay disbursements of the Employee Compensation and Benefits and the Deductions to the detriment of the Employees and GAP's operations.

30.     GAP does not believe there are any outstanding unpaid prepetition amounts to be paid to the Payroll Vendor (the "Payroll Processing Fees") as of the Petition Date.  Out of an abundance of caution, however, GAP seeks authority, but not direction, in their sole discretion, to pay the Payroll Processing Fees to the Payroll Vendors  in the ordinary course and any prepetition expenses or other amounts related thereto, and to continue administering payroll on a post-petition basis in the ordinary course of business and consistent with past practices.

## EMPLOYEE BENEFITS

31.     In the ordinary course of business, GAP provides Employees with a number of benefits, including: (i) health insurance; (ii) pension plans; (iii) paid time-off and leave; (iv) severance benefits; and (v) other Employee benefits (collectively, the "Employee Benefits"). These Employee Benefits are provided through employer and third-party sponsored contributory and non-contributory benefit plans and voluntary insurance coverage.

A.     **Health Insurance**

32.     GAP has various plans and policies pursuant to which Employees are provided with health care and life insurance benefits (collectively the "Health Insurance Plans").  GAP

makes contributions annually except certain programs for which contributions are made on an ad-hoc basis, and estimates the average amount of contributions made by GAP annually to the Health Insurance Plans is approximately $204,000.

33.    GAP does not believe there are any outstanding unpaid prepetition contributions to the Health Insurance Plans as of the Petition Date.  Out of an abundance of caution, however, GAP seeks authority, but not direction, in their sole discretion, to continue the Health Insurance Plans in the ordinary course of business and pay any prepetition expenses or other amounts related thereto, including any claims incurred before the Petition Date but reported after the Petition Date.

**B.    Pension Plan**

34.    GAP makes monthly contributions to the CPF along with the employees' contributions to the CPF (the "Pension Plan") for all Employees.  GAP estimates that the outstanding unpaid prepetition contributions to the Pension Plan is approximately $8,250 as of the Petition Date.  GAP seeks authority, but not direction, in its sole discretion, to continue making contributions to the Pension Plan and any other related payments mandated by local law, including any that accrued prepetition in the ordinary course of business.

**C.    Workers' Compensation**

35.    GAP contributes to workers' compensation plans for all Employees (the "Workers' Compensation Contributions").  These benefits are administered by a private vendors to provide Employees with workers' compensation coverage for claims arising from or related to accidents that occur during their employment with GAP.  GAP remits the Workers' Compensation Contributions annually, and estimates that the average annual sum made by GAP to the Workers' Compensation Plan is approximately $2,650.  GAP does not believe there are any outstanding unpaid prepetition contributions to the Workers' Compensation Contributions as of the Petition Date.  Out of an abundance of caution, however, GAP seeks authority, but not direction, in their

sole discretion, to continue to pay the Workers' Compensation Contributions and any other related payments, including any that accrued prepetition in the ordinary course of business.

**D.    SDL Contributions**

36.    GAP also makes monthly contributions to the Skills Development Fund ("SDL Contributions") in a fixed amount for each Employee. Employers are required to make regular contributions to the SDL, which is used to support training programs for employees. GAP estimates that the outstanding unpaid prepetition SDL Contributions are approximately $169 as of the Petition Date. GAP seeks authority, but not direction, in its sole discretion, to continue the SDL Contributions and any other related payments mandated by local law, including any that accrued prepetition in the ordinary course of business.

**E.    Paid Time-Off and Leave**

37.    All Employees are entitled to paid time off (the "Vacation Obligations") that accrue based on the period of service. GAP does not believe it has any outstanding accrued Vacation Obligations prepetition. The Vacation Obligations will continue to accrue for use by Employees in the ordinary course of business.

38.    Out of an abundance of caution, however, GAP seeks authority, but not direction, in its sole discretion, to continue the Vacation Obligations and make any payments attributable to the Vacation Obligations, including obligations that accrued prepetition in the ordinary course of business.

39.    GAP also offers paid sick leave for their Employees ("Paid Sick Leave") on a case by case basis. Employees must contact their managers to be granted Paid Sick Leave, which is separately recorded from Vacation Obligations.

40.     By this Motion, GAP seeks authority, but not direction, in its sole discretion, to continue Paid Sick Leave and make any payments attributable to Paid Sick Leave, including any that accrued prepetition in the ordinary course of business.

**F.     Severance**

41.     GAP has certain obligations under its severance programs for certain employees (the "Severance Obligations").  Under Employees' contracts, GAP is obligated to give at least one month notice for the termination of employment but reserves the right to terminate the employment of an Employee with immediate effect or with less notice than required if GAP makes a payment of an amount equal to one month of base salary.  Upon termination of an Employee, GAP typically pays an amount equal to two months of base salary as severance.

42.     GAP seeks authority, but not direction, to continue the Severance Obligations and make any payments attributable to the Severance Obligations, including any that accrued prepetition in the ordinary course of business.[7]

**G.     Benefits Providers**

43.     GAP also utilizes the services of various benefit providers to administer benefits for its Employees, including for the Health Insurance Plans and Workers' Compensation Contributions.  In connection with these services, GAP pays such benefit providers certain fees, which GAP considers de minimis ("Benefits Administration Fees"), which are included in the amounts for the Health Insurance Plans and Workers' Compensation Contributions.

44.     GAP does not believe that there are any outstanding unpaid prepetition Benefits Administration Fees as of the Petition Date.  Out of an abundance of caution, however, the Debtors

---

[7]     GAP seeks authority only to make payments for Severance Obligations for Employees who are not "insiders" under section 101(31) of the Bankruptcy Code.  Accordingly, the restrictions of section 503(c) of the Bankruptcy Code are not implicated in the Debtors' requested relief.

seek authority, but not direction, in their sole discretion, to pay the Benefits Administration Fees

in the ordinary course and any prepetition expenses or other amounts related thereto.

## BASIS FOR RELIEF

**A.      Cause Exists to Authorize Payment of GAP's Wages and Benefits**

### i.      The Court May Authorize Payment of Wages and Benefits Pursuant to Section 363 of the Bankruptcy Code

45.      Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor],

after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b), courts require only that the

debtor articulate a sound business justification for its actions.  *See Comm. of Equity Sec. Holders

v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Adelphia Commc'ns

Corp.*, No. 02-41729, 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003).  Moreover,

"[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a

decision made arbitrarily or capriciously), courts will generally not entertain objections to the

debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-

Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted).

46.      Courts have authorized payment of prepetition employee compensation and related

obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists

to do so.  *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating

that relief regarding payment of prepetition wage claims was appropriate to "preserve and protect

[the debtor's] business and ultimately reorganize, retain its currently working employees and

maintain positive employee morale").  In addition, to the extent a debtor-in-possession enters into

transactions involving property of the estate in the ordinary course of business, section 363(c) of

the Bankruptcy Code authorizes such transactions without an order of the court.  *See, e.g.,*

*Armstrong World Indus., Inc., v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 395 n.2 (Bankr. S.D.N.Y. 1983) ("Insofar as transactions are actually in the ordinary course, they are authorized automatically by § 363(c)(1) and § 1107(a), and do not require Bankruptcy Court approval.").

47.     GAP has satisfied the business judgment standard.  The Debtors' ability to engage in a successful restructuring will be put at risk if GAP does not pay the Wages and Benefits.  If GAP does not pay the Wages and Benefits, its workforce will face significant financial hardship and other risks, such as the lack of receipt of healthcare coverage and insurance, and likely will seek alternative employment opportunities or will be demoralized and less productive. Additionally, the deterioration of GAP's workforce may detract from GAP's focus on restructuring-related activities and require resource and cost-intensive recruitment efforts to continue GAP's operations.  Paying the Wages and Benefits also is necessary for GAP to avoid unnecessary recruitment, severance, and related costs, to avoid certain operating risks to completing GAP's reorganization.

48.     In addition, because GAP pays the Wages and Benefits in the ordinary course of business, GAP submits that Court approval to continue its existing policies, programs, and related payments post-petition is not necessary because of the authority granted under section 363(c) of the Bankruptcy Code.  Nonetheless, for the avoidance of doubt and in an abundance of caution, GAP requests that the Court grant the relief requested herein, enter interim and final orders permitting them to pay the Wages and Benefits and to authorize, but not require, GAP, in its discretion, to continue and maintain its employee benefit contributions, programs, policies and practices as those plans, programs, policies and practices were in effect as of the Petition Date, as they may be modified, terminated, amended, or supplemented from time to time.

ii.     **Payment of Wages and Benefits Is Warranted Under Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity**

49.     GAP's proposed payment of the Wages and Benefits also should be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity." Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Specifically, this Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "doctrine of necessity" (also referred to as the "necessity of payment" doctrine). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. "Under [section] 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. at 177); *see also In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D.N.Y. 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

50.     Courts have consistently permitted post-petition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport C. & S.W.R. Co.*, 106 U.S. 286, 311-12 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of [the]

corpus"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279 (Bankr. S.D.N.Y. 1987), *appeal dismissed*, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

51.     This approach is particularly critical where a prepetition creditor provides vital goods or services to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations.  In *In re Structurlite Plastics Corp.*, the bankruptcy court stated that it "may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *In re Chateaugay Corp.*, 80 B.R. at 287).  The court explained that "a per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."  *Id.* at 932 (emphasis omitted).  The rationale for the doctrine of necessity is consistent with the paramount goal of Chapter 11 – "facilitating the continued operation and rehabilitation of the debtor . . ." *In re Ionosphere Clubs*, 98 B.R. at 176.  Indeed, as noted above, this Court and others have routinely authorized debtors to pay the prepetition claims of employees for wages, salaries, expenses, and benefits on the grounds that the payment of such claims was necessary to effectuate a successful reorganization of a debtor's business.

52.     Payment of the Wages and Benefits is warranted under the doctrine of necessity. The Employees provide GAP with essential services necessary to conduct its business.  Payment of the prepetition claims of the Employees is essential to avoid attrition, service disruption, and associated costs.

53.     Courts in this district have approved relief similar to that requested here. *See, e.g.*, Final Order, *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. August 17, 2022), ECF No. 518 (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a post-petition basis); Final Order, *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. August 4, 2022), ECF No. 233 (same); Final Order, *In re Jason Industries, Ind.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. July 27, 2020), ECF No. 135 (same); Final Order, *In re LATAM Airlines Group S.A., et al.*, No. 20-11254 (JLG) (Bankr. S.D.N.Y. June 28, 2020), ECF No. 392 (same); Final Order, *In re Frontier Commc'ns. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020), ECF No. 365 (same); Final Order, *In re Deluxe Entm't Servs. Grp. Inc.*, No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 25, 2019), ECF No. 94 (same); Final Order, *In re Barneys N.Y., Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y. Sept. 4, 2019), ECF No. 208 (same); Final Order, *In re Hollander Sleep Prods., LLC*, No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 2, 2019), ECF No. 166 (same).[8]

## H.     The Court Should Authorize and Direct Applicable Banks to Honor and Make Other Transfers to Pay the Wages and Benefits

54.     GAP has sufficient funds to pay or remit the Wages and Benefits in the ordinary course of business using expected cash flows from ongoing business operations.  GAP believes there is minimal risk that wire transfer requests that this Court has not authorized will be inadvertently made.  Thus, GAP requests that this Court authorize all applicable financial institutions to receive, process, honor, and pay any and all wire transfer requests in respect of the Wages and Benefits.

---

[8]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.  Copies of these orders are available upon request of the Debtors' proposed counsel.

I.      **The Requirements of Bankruptcy Rule 6003 Are Satisfied**

55.      Under Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay
all or part of a prepetition claim within twenty-one (21) days after the Petition Date if the relief is
necessary to avoid immediate and irreparable harm.  Immediate and irreparable harm exists where
the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future
as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990)
(discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule
4001(c)(2)).

56.      Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to
the estate alone.  Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm"
generally. *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate")
(emphasis added).  Indeed, the "irreparable harm" standard is analogous to the traditional standards
governing the issuance of preliminary injunctions. *See* 9 Collier on Bankruptcy ¶ 4001.07[3] (16th
ed. 2014) (discussing source of "irreparable harm" standard under Rule 4001(c)(2)).  And courts
will routinely consider third-party interests when granting such relief. *See, e.g., Cap. Ventures
Int'l v. Repub. of Arg.*, 443 F.3d 214, 223 n.7 (2d Cir. 2006) (stating that potential effect on the
public interest is a factor in considering whether to grant preliminary injunction).

57.      This Court and others have recognized that the potential loss of critical employees,
the lapse in benefit coverage and the financial hardship imposed on employees that would certainly
result if relief requested by this Motion were not granted poses a threat of immediate and
irreparable harm to a debtor's business. *See, e.g., Nev. Power Co. v. Calpine Corp. (In re Calpine
Corp.)*, 365 B.R. 401, 410 (Bankr. S.D.N.Y. 2007) (holding that potential distractions to
employees constitute "imminent irreparable harm" if they would impact the restructuring process);
*Lomas Fin. Corp. v. The N. Trust Co. (In re Lomas Fin. Corp.),*117 B.R. 64, 67 (Bankr. S.D.N.Y.

1990) (imminent and irreparable harm found where "key personnel would be distracted from participating in the reorganization process").

58.     The relief requested in this Motion is necessary to avoid immediate and irreparable harm to GAP, its estates, and all parties in interest.  The Employees are vital to the GAP's operations and the success of the Plan.  Failure to satisfy the Wages and Benefits in the ordinary course of business will likely cause Employees to terminate employment or will reduce productivity on account of lowered employee morale and detract from GAP's focus on the restructuring process.  Additionally, the Employees rely on their compensation, benefits, and reimbursement of expenses to pay their living expenses and the effect could be financially ruinous if GAP cannot pay the Wages and Benefits in the ordinary course of business.  Accordingly, the requirements of Bankruptcy Rule 6003 are satisfied.

**J.      Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

59.     To implement the foregoing successfully, GAP requests that the Court enter the Proposed Orders providing that the notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that GAP has established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

**K.      GAP's' Reservation of Rights**

60.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against GAP, a waiver of GAP's rights to dispute any claim, applicability of any law, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  GAP expressly reserves its rights to contest any claim, applicability of any law, or an approval or assumption of any agreement or contract under section 365 of the Bankruptcy Code.  GAP expressly reserves its rights to contest any invoice or claim with respect to any obligation described herein in accordance with applicable bankruptcy and non-bankruptcy

law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the GAP's rights to subsequently dispute such claim.

## NOTICE

61.     Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iii) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; and (vi) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

62.     No prior motion for the relief requested herein has been made to this or any other court.


*[The remainder of this page is left intentionally blank]*

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, GAP respectfully requests that this Court

(a) enter the orders, substantially in the form attached hereto as Exhibits A and B and (b) grant

such other and further relief as is just and proper.


Dated:    January 20, 2023
             New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*

## **EXHIBIT A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (__) |
| Debtors. | Joint Administration Pending |

### INTERIM ORDER (I) AUTHORIZING GENESIS ASIA PACIFIC PTE. LTD TO (A) PAY CERTAIN EMPLOYEE WAGES AND OTHER COMPENSATION AND RELATED OBLIGATIONS AND (B) MAINTAIN AND CONTINUE EMPLOYEE BENEFITS AND PROGRAMS IN THE ORDINARY COURSE, AND (II) AUTHORIZING AND DIRECTING APPLICABLE BANKS TO <u>HONOR ALL TRANSFERS RELATED TO SUCH OBLIGATIONS</u>

### (<u>"INTERIM WAGES AND BENEFITS ORDER"</u>)

Upon the motion (the "<u>Motion</u>")[2] of Genesis Asia Pacific Pte. Ltd. ("<u>GAP</u>")  and the above captioned affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), for entry of interim and final orders, as more fully described in the Motion, authorizing GAP to pay certain Wages and Benefits, and for certain related relief; and upon the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "<u>Islim Declaration</u>"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "<u>Aronzon Declaration</u>"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "<u>Leto Declaration</u>," and along with the Islim Declaration and the Aronzon Declaration, the "<u>First Day Declarations</u>"); and the Court having jurisdiction over this matter pursuant to 28

---

[1]       The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]       Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

U.S.C. § 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court of New York dated January 31, 2012*; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution, and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of GAP, its estates, its creditors and the other parties in interest; and the Court having found that GAP's notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis to the extent set forth herein.

2.      Objections to entry of the Final Order must be filed by _____, at 4:00 pm. (ET) and served on: (i) counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn: Sean A. O'Neal, Esq. and Jane VanLare, Esq.; (ii) the United States Trustee, 201 Varick Street, Room 1006, New York, New York, 10014; and (iii) counsel to any statutory committee appointed in the Chapter 11 Cases.  A final hearing, if required, on the Motion will be held on _____ at _____ (ET) (the "Final Hearing").  If no objections are filed to the Final Order, the Court may enter the Final Order without further notice or hearing.

3.      GAP is authorized to pay pre-petition Wages and Benefits, as payments come due in the ordinary course and/or honor its wage and benefit obligations in accordance with its stated policies and in the ordinary course of its business and consistent with its past practices, including amounts owing as of, or accrued prior to, the Petition Date on account of (i) Employee Compensation, (ii) Unpaid Compensation, (iii) Employee Deductions, (iv) Reimbursable Expenses, (v) Payroll Processing Fees (vi) Employee Benefits, and (vii) Benefits Administration Fees.

4.      GAP is authorized, but not directed, to continue to honor the Wages and Benefits, make necessary contributions, pay any unpaid premium, claim, or amount owed in connection therewith as of, or accrued prior to, the Petition Date, in accordance with GAP's ordinary course of business, stated policies, and consistent with its past practices, as set forth in the Motion.

5.      GAP is authorized to modify, change, or discontinue any of its Wages and Benefits and to implement new programs, policies, and benefits in the ordinary course of business during these Chapter 11 Cases in GAP's discretion and without the need for further approval by this Court, subject to applicable law.

6.      GAP is authorized, but not directed, to continue the Severance Obligations and make any payments attributable to the Severance Obligations, including any that accrued prepetition in the ordinary course of business.

7.      Nothing in this order should be construed as approving any transfer pursuant to 11 U.S.C. § 503(c), and a separate motion will be filed for any request that could fall within Section 503(c).  No payment to any employee may be made to the extent that it is a transfer in derogation of section 503(c) of the Bankruptcy Code.

8.       GAP is authorized to make payments to applicable third parties from the Employee Deductions and Employee Benefits, in accordance with GAP's ordinary course of business and stated policies, as set forth in the Motion.

9.       The banks and financial institutions on which electronic payment requests were made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such electronic payment requests when presented for payment and all such banks and financial institutions are authorized to rely on the Debtors' designation of any electronic payment request as approved by this Order.

10.       GAP is authorized to reissue any electronic payment that was originally given in payment of any prepetition amount authorized to be paid under this Order that is not cleared by the applicable bank or financial institution.

11.       Notwithstanding anything to the contrary in this Interim Order, payments made pursuant to this Interim Order shall only be made as they become due, and no payments shall be accelerated prior to the Final Hearing.

12.       Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (i) an admission as to the validity, priority, or amount of any claim against a Debtor entity; (ii) a waiver of GAP's or any party-in-interest's right to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (v) a requirement or authorization to assume any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code or (vi) a waiver of GAP's or any party-in-interest's rights under the Bankruptcy Code or any other applicable law.

13.     GAP is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

14.     The requirements of Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.  Notwithstanding Bankruptcy Rule 6004, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____          _____
            New York, New York                    United States Bankruptcy Judge

## EXHIBIT B

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*, [1] | Case No.:  23-10063 (__) |
| Debtors. | Joint Administration Pending |

**FINAL ORDER (I) AUTHORIZING GENESIS ASIA PACIFIC PTE. LTD  TO (A) PAY
CERTAIN EMPLOYEE WAGES AND OTHER COMPENSATION AND RELATED
OBLIGATIONS AND (B) MAINTAIN AND CONTINUE EMPLOYEE
BENEFITS AND PROGRAMS IN THE ORDINARY COURSE, AND
(II) AUTHORIZING AND DIRECTING APPLICABLE BANKS TO
HONOR ALL TRANSFERS RELATED TO SUCH OBLIGATIONS**

**("FINAL WAGES AND BENEFITS ORDER")**

Upon the motion (the "Motion")[2] of Genesis Asia Pacific Pte. Ltd. ("GAP")  and the above

captioned affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of

interim and final orders, as more fully described in the Motion, authorizing GAP to pay certain

Wages and Benefits, and for certain related relief; and upon the *Declaration of A. Derar Islim in*

*Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim

Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications*

*in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of*

*Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule*

*1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration,

the "First Day Declarations"); and the Court having jurisdiction over this matter pursuant to 28

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification
number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia
Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park
Avenue South, 5th Floor, New York, NY 10003.
[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

U.S.C. § 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court of New York dated January 31, 2012*; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution, and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of GAP, its estates, their creditors and the other parties in interest; and the Court having found that GAP's notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.       GAP is authorized to pay the Wages and Benefits and/or honor its wage and benefit obligations, as payments come due in the ordinary course, in accordance with its  stated policies, in the ordinary course of its business, and consistent with its past practices, including amounts owing as of, or accrued prior to, the Petition Date on account of (i) Employee Compensation, (ii) Unpaid Compensation, (iii) Employee Deductions, (iv) Reimbursable Expenses, (v) Payroll Processing Fees (vi) Employee Benefits, and (vii) Benefits Administration Fees.

3.      GAP is authorized, but not directed, to continue to honor the Wages and Benefits, make necessary contributions, pay any unpaid premium, claim, or amount owed in connection

therewith as of, or accrued prior to, the Petition Date, in accordance with GAP's ordinary course of business and stated policies, as set forth in the Motion.

4.      GAP is authorized to modify, change or discontinue any of the Wages and Benefits and to implement new programs, policies, and benefits in the ordinary course of business during these Chapter 11 Cases in GAP's discretion and without the need for further approval by this Court, subject to applicable law.

5.      GAP is authorized, but not directed, to continue the Severance Obligations and make any payments attributable to the Severance Obligations, including any that accrued prepetition in the ordinary course of business.

6.      Nothing in this order should be construed as approving any transfer pursuant to 11 U.S.C. § 503(c), and a separate motion will be filed for any request that could fall within Section 503(c).   No payment to any employee may be made to the extent that it is a transfer in derogation of section 503(c) of the Bankruptcy Code.

7.      GAP is authorized to make payments to applicable third parties from the Employee Deductions and Employee Benefits, in accordance with GAP's ordinary course of business and stated policies, as set forth in the Motion.

8.      The banks and financial institutions on which electronic payment requests were made in payment of the prepetition obligations approved herein are authorized to receive, process, honor all electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular electronic payment request as approved by this Order.

9.      GAP is authorized to reissue any electronic payment that was originally given in payment of any prepetition amount authorized to be paid under this Order that is not cleared by the applicable bank or financial institution.

10.      Nothing in the Motion or this Order, nor GAP's payment of any claims pursuant to this Order, shall be deemed or construed as an admission as to the validity or priority of any claim against GAP or an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

11.      GAP is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

12.      The requirements of Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.  Notwithstanding Bankruptcy Rule 6004, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.      This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____
        New York, New York                    _____
                                              United States Bankruptcy Judge