CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al*.,[1] | Case No.: 23-10063 (__) |
| Debtors. | Joint Administration Pending |

**DECLARATION OF A. DERAR ISLIM
IN SUPPORT OF FIRST DAY MOTIONS AND
APPLICATIONS IN COMPLIANCE WITH LOCAL RULE 1007-2**

I, A. Derar Islim, hereby declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, as follows:

1.  I am the interim Chief Executive Officer of Genesis Global Holdco, LLC ("Holdco" and, together with the other Debtors (as defined below) and Holdco's Non-Debtor subsidiaries, the "Company"), a limited liability company organized under the laws of Delaware. I have held my current title since August 17, 2022, and have been a member of senior management at the Company

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global HoldCo, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

and Genesis Global Trading, Inc. ("GGT"), which is a sister company of Holdco, for about two years and was historically Chief Operating Officer at GGT.

2. I am generally familiar with the day-to-day operations and affairs of Holdco, Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific PTE. Ltd. ("GAP," and together with Holdco and GGC, the "Debtors"), which have filed voluntary petitions for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). Concurrently herewith, the Debtors have filed a motion seeking joint administration of their chapter 11 cases (the "Chapter 11 Cases") pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. I submit this declaration (this "First Day Declaration") in support of the various motions seeking first day relief (the "First Day Motions") and pursuant to 28 U.S.C. § 1746, as well as Rule 1007 of the Bankruptcy Rules and Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"). Except as otherwise indicated herein, all facts set forth in this First Day Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, information supplied to me by members of the Debtors' management, other personnel and professional advisors or my opinion based on my experience, knowledge and information concerning the Debtors' operations and financial condition and the digital asset industry as a whole. To the extent that the Debtors learn that any information provided herein is materially inaccurate, the Debtors will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my knowledge, information and belief. I am authorized to submit this First Day Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

4.      On January 19, 2023 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases to reach the best outcome for all affected creditors. A restructuring of the Debtors' balance sheets is necessary to restore the Debtors' businesses, to evaluate options to preserve their value and to move their businesses forward as swiftly as possible. These Chapter 11 Cases are necessary to protect the Debtors' assets and to administer and manage the Debtors' estates.

5.      Section I describes the Company and GGT and, more specifically, the Company's and GGT's corporate structure, business and current operations, and Section II describes the events leading to the filing of these Chapter 11 Cases.

## I. DEBTORS' CORPORATE BACKGROUND AND BUSINESS OPERATIONS

### A. The Company's and GGT's Corporate History and Organizational Structure

6.      GGT was the first Genesis entity and has been trading digital assets since 2013. Since its inception, the Company and GGT have grown into a number of entities that handle different aspects of the digital asset services offered.

7.      Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG"), a corporation organized under the laws of Delaware. GGC and GAP are in turn 100% owned by Holdco. Schedule 1 of the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* provides an organizational chart that contains further details on the Company's and GGT's structure.

8.      The Board of Directors at Holdco (the "Board") is comprised of Paul Aronzon, Thomas Conheeney, Michael Kraines, Mark Murphy and me. The Board formed the Special Committee on November 18, 2022, comprised of Paul Aronzon and Thomas Conheeney, two independent directors.

9.      GGC is a private limited liability company organized under the laws of Delaware that provides lending and borrowing services for digital assets and fiat currency primarily to and

3

from institutional and high net worth individual customers. It is registered as a Money Services Business with the Financial Crimes Enforcement Network ("FinCEN").

10. GAP is a Singapore-based digital payment token service provider which carries out digital asset trading and lending activities. As of July 2022, GAP has received an In-principle Approval for a Major Payment Institution license under the Payment Services Act 2019 by the Monetary Authority of Singapore and is operational under the pre-licensing regime.

11. Most of Holdco's subsidiaries and its sister company GGT have not filed petitions for relief and are not a part of these Chapter 11 Cases (collectively, the "Non-Debtor Subsidiaries"). The Non-Debtor Subsidiaries include, without limitation, Genesis UK Holdco Limited, Genesis Global Assets, LLC, Genesis Asia (Hong Kong) Limited, Genesis Bermuda Holdco Limited, Genesis Custody Limited ("GCL"), GGC International Limited ("GGCI"), GGA International Limited, Genesis Global Markets Limited, GSB 2022 II LLC, GSB 2022 III LLC and GSB 2022 I LLC.

### B. The Company and GGT's Business Operations

12. The Company and GGT's operations are divided into four main categories: (i) the trading service, which facilitates spot trading in digital assets; (ii) the lending and borrowing service, whereby the Company lends and borrows digital assets in consideration for the payment of interest; (iii) the derivatives service, which allows customers to enter into a variety of derivatives on digital asset underliers; and (iv) the custodial service, which permits customers to securely store digital assets. The Debtors engage in lending, borrowing and certain trading services, while the derivatives, custodial and most of the trading services are operated by Non-Debtor Subsidiaries.

#### i. Trading Service

13. GGT launched its first over the counter ("OTC") bitcoin trading desk in 2013. Since then, the Company and GGT have offered spot trading services to a wide variety of

4

institutional investors seeking exposure to the digital asset market. The trading service historically operated 24 hours a day, seven days a week. Other than GAP, none of the trading business entities have commenced Chapter 11 Cases.

14. As part of its trading service, the Company and GGT make markets in digital assets by offering liquidity to buyers and sellers. This service functions similarly to a traditional brokerage in some respects, in that the Company and GGT, respectively, receive requests for quotes or buy/sell orders from their respective customers on a variety of accepted digital assets. The Company and GGT, respectively, then gather the quotes from, or execute the orders with, a variety of digital asset exchanges, institutional service providers and counterparties worldwide, endeavoring to achieve optimal price and point-in-time execution.

15. The Company and GGT's trading brokerage service is offered through three entities: GGT, GGCI and GAP. GGT is a New York-based non-custodial, OTC market-maker in digital assets and brokerage, that has a virtual currency BitLicense issued by the New York State Department of Financial Services ("NYDFS") and that is registered as a broker-dealer with the U.S. Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA"). As noted above, GGT is a sister company to Holdco that has not commenced a chapter 11 case; Holdco has no ownership interests in GGT and GGT has no ownership interests in any of the Debtors. GGCI is a British Virgin Islands company that carries out spot and derivatives trading activity. GGCI is not a Debtor in these Chapter 11 Cases. GAP, which is one of the Debtors in these Chapter 11 Cases, is the entity that provides similar trading services primarily to Singapore residents and is operated from Singapore. In addition, GGT provides services and employees to the Debtors and Holdco's various subsidiaries pursuant to various contractual arrangements.

16. Through September 30, 2022, the Company's and GGT's spot volume traded was approximately $38.2 billion in a variety of digital assets with hundreds of institutional trading counterparties.

    **ii.  Lending and Borrowing Service**

17. The Company's lending and borrowing service permits customers to loan digital assets to the Company and provides institutional funds and market makers with access to liquidity designed to meet their needs.

18. While the lending and borrowing service is currently paused, the service generally permitted customers to enter into bespoke loan terms and structures specifically designed to meet their needs. These loans were often open-term loans (*i.e.*, callable on demand), but could also be fixed-term loans with maturity dates of up to 12 months. Loans were made across a variety of digital assets, including stablecoins, BTC, ETH and more than 20 other assets. In connection with this service, the Company provided its customers with access to additional tools, such as custody services offered by third-party custodians for loan collateral (including by tri-party custodians), real-time and historical analytics, instant collateral transfer and a platform for ease of portfolio management.

19. The Company's lending and borrowing service was offered primarily through two entities serving different geographies: GGC and GAP. Through September 30, 2022, GGC and GAP had originated loans totaling approximately $93.1 billion, with active outstanding loans totaling approximately $1.7 billion.

    **iii.  Derivatives Service**

20. The Company also offers a derivatives service through its sell-side dealing desk and acts as a liquidity provider that operates across all major crypto option markets. In connection

with this service, the Company offers customers customized derivatives solutions to express nuanced market views, generate yield, manage volatility and hedge risk.

21. The derivatives service provides customers exposure to digital assets through a variety of derivative transactions, from options, forwards, lending and repo transactions to price and risk-managed options and structured products used to hedge specific risks. The service accepts a broad range of assets as collateral (although some trade formats require U.S. dollar collateral). The derivatives service also supports crypto-native form of yield generation, including staking.

22. The Company's derivatives service is currently offered through GGCI, which carries out spot and derivatives trading activity. GGCI also provides the Company with access to digital asset exchanges through its membership on such exchanges.

23. Through September 30, 2022, the notional value of derivatives traded through the service was approximately $73.1 billion.

    **iv.    Custody Service**

24. One of Holdco's subsidiaries, GCL, provides an institutional-grade custody service to manage, move and store digital assets. GCL is not a Debtor in these Chapter 11 Cases. The custody service is intended as an integrated offering for sophisticated investors that incorporates best practices used by government agencies to protect digital assets. These measures include multiple layers of cryptographic security, including multi-party computation technology and private keys that are stored in hardware security modules in bunkers. The service also permits customers to earn liquidity on assets stored in cold storage by leveraging the trading desk.

25. GCL is a UK-based provider of non-fiduciary digital asset storage services to institutional clients and high net worth individuals in permitted jurisdictions. GCL is registered as a cryptoasset business with the Financial Conduct Authority ("FCA") under the Money

Laundering Regulations 2017 ("MLRs") as of December 2021 and as a Money Services Business with FinCEN.

26.  As of the year ended December 31, 2022, GCL had approximately 90 customers.

## II.  CIRCUMSTANCES LEADING TO THE COMMENCEMENT OF THE CHAPTER 11 CASES

### A.  Events Leading to the Chapter 11 Filing

27.  The Debtors have commenced this Chapter 11 Case to maximize value for creditors and restructure their balance sheets, including approximately $5.1 billion of total liabilities outstanding (including intercompany balances) as of November 30, 2022.

28.  Over the past few months, the digital asset industry has experienced tremendous dislocation. In particular, in May 2022, LUNA ("Luna") and TerraUSD ("UST") collapsed, causing widespread market turmoil. Shortly thereafter, the digital asset hedge fund Three Arrows Capital Ltd. ("3AC") commenced liquidation proceedings. The collapse of Luna and UST and subsequent liquidation of 3AC signalled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.

29.  As market conditions worsened, other companies faced financial difficulties. In July 2022, Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates filed for bankruptcy. Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed for Chapter 11 bankruptcy on November 11, 2022.

30.  These drastic market shifts have decreased investor confidence in the digital asset markets in which the Company operates and severely and adversely impacted the Company's business. As the FTX Entities' situation unfolded, the Company experienced unprecedented withdrawals, leading GGC and GAP to pause all lending and borrowing on November 16, 2022.

8

### i. Impact of the 3AC Liquidation

31. In 2020, GAP established a lending relationship with 3AC. In June 2022, the various loans extended to 3AC by GAP amounted to approximately $2.4 billion in cash and digital assets. After it became clear that 3AC would not be in a position to pay back its loans, GAP foreclosed on collateral pledged by 3AC in connection with those loans. But by the time GAP foreclosed on the collateral, the value of that collateral was approximately $1.2 billion.

32. In light of these events, DCG assumed $1.1 billion of the remaining $1.2 billion payable GAP owed to GGC in connection with the 3AC lending relationship. On June 30, 2022, DCG evidenced the assumed payable with a $1.1 billion promissory note in favor of GGC that had a 10 year maturity and fixed interest rate of 1% that may, at DCG's option, be paid in kind.

### ii. FTX Collapse

33. In early November, the digital asset market plummeted further as the FTX Entities, including what was previously one of the world's largest and most respected digital asset exchanges, collapsed.

34. Starting November 6, 2022, the FTX Entities' digital asset, FTT, lost over 80% of its worth in the span of 72 hours. The contagion effect from the FTX Entities' collapse spread throughout the digital asset market.

35. The Debtors have been adversely affected by the FTX Entities' collapse. As of the petition date in the FTX Entities' Chapter 11 proceedings, GGCI had a total exposure in digital assets held at FTX of approximately $175 million. GGC had outstanding loans to Alameda in digital assets having a value of approximately $37 million. However, because GGC hedged its exposure to price changes in the value of the digital assets underlying the Alameda loans, its estimated loss from these loans is approximately $7 million.

### iii. Impact on Customer Confidence

36. Consistent with industry practice, many of the loans offered by the Company were open term loans, meaning that the Company could repay a loan in full or in part at any point in time and lenders could "call" (demand repayment) under the loans in whole or in part at any point in time.

37. As the FTX Entities began to experience their collapse, the Company received calls on its loans amounting to approximately $827 million. This "run on the bank" following the FTX Entities' collapse was outsized and severely impacted the Company's available liquidity.

38. At the same time, Holdco's corporate parent, DCG, and its various subsidiaries, including DCG International Investments Ltd., were also impacted by the market turmoil and did not have the liquidity to pay back the Company on certain loans, adding pressure to the Debtors' balance sheets.

39. As a result of the unprecedented number and size of the loan calls, on November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders.

40. The Debtors believe that Chapter 11 proceedings will incentivize all stakeholders to move expeditiously toward a consensual resolution that avoids the costs and uncertainty of litigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  January 20, 2023
    New York, New York

/s/ A. Derar Islim
A. Derar Islim
Interim Chief Executive Officer
Genesis Global Holdco, LLC