**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al*.,[1] | Case No.: 23-10063 (___) |
| Debtors. | Joint Administration Pending |

---

### DEBTORS' JOINT CHAPTER 11 PLAN

---

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

Dated: January 20, 2023

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

# TABLE OF CONTENTS

## ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION,
### COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms* ........................................................................................ 1
B.    *Rules of Interpretation* ........................................................................... 17
C.    *Computation of Time* ............................................................................. 18
D.    *Governing Law* ....................................................................................... 18
E.    *Reference to Monetary Figures* ............................................................. 18
F.    *Reference to the Debtors or the Reorganized Debtors* .......................... 19
G.    *Controlling Document* ............................................................................ 19

## ARTICLE II.
### ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS

A.    *Administrative Expense Claims* ............................................................. 19
B.    *Professional Compensation* .................................................................... 20
C.    *Priority Tax Claims* ............................................................................... 21
D.    *Statutory Fees* ........................................................................................ 21

## ARTICLE III.
### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims* ........................................................................ 22
B.    *Treatment of Claims Against and Interests in GGH* .............................. 23
C.    *Treatment of Claims Against and Interests in GGC* .............................. 26
D.    *Treatment of Claims Against and Interests in GAP* .............................. 28
E.    *Special Provision Governing Unimpaired or Reinstated Claims* ........... 30
F.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code* ................................................................................................ 31
G.    *Elimination of Vacant Classes* .............................................................. 31
H.    *Voting Classes; Presumed Acceptance by Non-Voting Classes* ............ 31
I.    *Controversy Concerning Impairment* ..................................................... 31
J.    *Subordinated Claims* .............................................................................. 31

## ARTICLE IV.
### MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Liquidation Trust* ................................................................................... 32
B.    *GUC Trust* .............................................................................................. 36
C.    *Means for Implementation if an Equitization Does Not Occur* .............. 38
D.    *Means for Implementation if an Equitization Occurs* ............................ 42
E.    *The DCG Settlement* ............................................................................... 50
F.    *The Gemini Settlement* ........................................................................... 51

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.   *Assumption and Rejection of Executory Contracts and Unexpired Leases* ..................... 52
B.   *Claims Based on Rejection of Executory Contracts or Unexpired Leases* ..................... 53
C.   *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases* ................... 53
D.   *Indemnification Obligations* ...................................................................................... 54
E.   *Insurance Policies* ...................................................................................................... 54
F.   *Modifications, Amendments, Supplements, Restatements, or Other Agreements* ............. 55
G.   *Reservation of Rights* ................................................................................................. 55
H.   *Nonoccurrence of Effective Date* ............................................................................... 55

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.   *Timing and Calculation of Amounts to Be Distributed* ................................................ 56
B.   *Disbursing Agent.* ...................................................................................................... 56
C.   *Delivery of Distributions and Undeliverable or Unclaimed Property* ........................... 57
D.   *Compliance with Tax Requirements* ............................................................................ 58
E.   *Foreign Currency Exchange Rate* ............................................................................... 59
F.   *Digital Asset Exchange Rate* ...................................................................................... 59
G.   *Surrender of Cancelled Instruments or Securities* ....................................................... 59
H.   *Allocations* ................................................................................................................ 59
I.   *No Postpetition Interest on Claims* .............................................................................. 59
J.   *Setoffs and Recoupment* ............................................................................................. 59
K.   *Claims Paid or Payable by Third Parties* .................................................................... 60

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.   *Allowance of Claims* .................................................................................................. 61
B.   *Claims and Interests Administration Responsibilities* ................................................... 61
C.   *Estimation of Claims* .................................................................................................. 62
D.   *Adjustment to Claims or Interests Without Objection* ................................................... 62
E.   *Time to File Objections to Claims* ............................................................................... 62
F.   *Disallowance of Claims* .............................................................................................. 62
G.   *Amendments to Claims* ............................................................................................... 63
H.   *No Distributions Pending Allowance* ........................................................................... 63
I.   *Single Satisfaction of Claims* ...................................................................................... 63

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.   *Compromise and Settlement of Claims, Interests, and Controversies* ............................. 63
B.   *Discharge of Claims and Termination of Interests* ....................................................... 64
C.   *Term of Injunctions or Stays* ...................................................................................... 64
D.   *Release of Liens* ........................................................................................................ 65
E.   *Releases by the Debtors* .............................................................................................. 65

F.    *Releases by Releasing Parties* ........................................................................ 67
G.    *Exculpation* ...................................................................................................... 68
H.    *Injunction* ......................................................................................................... 69
I.    *Protection Against Discriminatory Treatment* ................................................ 69
J.    *Recoupment* ...................................................................................................... 70
K.    *Subordination Rights* ....................................................................................... 70
L.    *Reimbursement or Contribution* ...................................................................... 70
M.    *Document Retention.* ......................................................................................... 70

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Effective Date* .................................................... 70
B.    *Waiver of Conditions* ........................................................................................ 71
C.    *Substantial Consummation* ............................................................................... 71
D.    *Effect of Non-Occurrence of Conditions to the Confirmation Date or the Effective
      Date* ................................................................................................................... 72

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments* .......................................................................... 72
B.    *Effect of Confirmation on Modifications* ......................................................... 72
C.    *Revocation or Withdrawal of the Plan* ............................................................. 72

## ARTICLE XI.
## RETENTION OF JURISDICTION

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect* .................................................................................. 75
B.    *Additional Documents* ....................................................................................... 75
C.    *Reservation of Rights* ........................................................................................ 75
D.    *Successors and Assigns* ..................................................................................... 75
E.    *Service of Documents* ........................................................................................ 76
F.    *Term of Injunctions or Stays* ............................................................................ 76
G.    *Entire Agreement* ............................................................................................... 76
H.    *Exhibits* .............................................................................................................. 76
I.    *Nonseverability of Plan Provisions* .................................................................. 77
J.    *Votes Solicited in Good Faith* ........................................................................... 77
K.    *Request for Expedited Determination of Taxes* ............................................... 77
L.    *Closing of Chapter 11 Cases* ............................................................................ 77
M.    *No Stay of Confirmation Order* ......................................................................... 78
N.    *Waiver or Estoppel* ............................................................................................ 78
O.    *Dissolution of the Committee* ............................................................................ 78

**INTRODUCTION**

Genesis Global Holdco, LLC and its affiliated debtors, as Debtors and debtors-in-possession in the above-captioned chapter 11 cases, jointly propose this chapter 11 plan for the resolution of outstanding Claims against, and Interests in, the Debtors.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against, and Interests in, such Debtor.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Article I.A of the Plan or the Bankruptcy Code or Bankruptcy Rules.  Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, Assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

> **ALL HOLDERS OF CLAIMS WHO ARE ELIGIBLE TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.     *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below.

1.     "***Administrative Expense Claim***" means any Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Debtors' Estates and operating the Debtors' businesses; (ii) Allowed Professional Fee Claims; and (iii) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

2.     "***Administrative Expense Claims Bar Date***" means the deadline for Filing requests for payment of Administrative Expense Claims, which: (i) with respect to Administrative Expense Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (ii) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

3.     "***Affiliate***" shall have the meaning set forth in section 101(2) of the Bankruptcy Code when used in reference to a Debtor, and when used in reference to an Entity other than a Debtor, means any other Entity that controls such Entity other than a Debtor.

4.     "***Allowed***" means, with reference to any Claim or Interest, (i) any Claim or Interest arising on or before the Effective Date (a) as to which no objection to allowance has been interposed within the time period set forth in the Plan and such Claim or Interest is not Disputed or (b) as to which any objection has been determined by a Final Order of the Bankruptcy Court to

the extent such objection is determined in favor of the respective Holder, (ii) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (iii) any Claim or Interest expressly allowed under the Plan; *provided*, *however*, that notwithstanding the foregoing, the Reorganized Debtors (to the extent applicable) will retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

5.      "***Assets***" means all of the Debtors' property, rights, and interests that are property of the Estates pursuant to section 541 of the Bankruptcy Code.

6.      "***Asset Sale***" means the sale of any of the Debtors' Assets pursuant to one or more transactions conducted in accordance with the Bidding Procedures.

7.      "***Available Assets***" means cash and cash equivalents and, to the extent the Debtors so determine after considering legal, financial, tax, and other factors in good faith, Digital Assets held by the Debtors after paying for, or reserving for payment of, (i) the Claims Reserve Amount, (ii) the Professional Fee Reserve Amount, (iii) the GUC Trust Funding, (iv) if an Equitization occurs, the Capital Reserves, and (v) if an Equitization does not occur, the Liquidation Trust Funding.

8.      "***Avoidance Actions***" means any and all actual or potential avoidance, recovery, subordination or other Claims, actions or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553 and 724(a) of the Bankruptcy Code or under similar or related local, state, federal or foreign statutes and common law, including fraudulent transfer laws.

9.      "***Avoidance Recoveries***" means any proceeds arising from Avoidance Actions, including, without limitation, the proceeds from any settlements thereof.

10.     "***Ballots***" means the ballots distributed to certain Holders of Impaired Claims entitled to vote on the Plan upon which such Holders shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

11.     "***Bankruptcy Code***" means title 11 of the United States Code, as amended and in effect during the pendency of the Chapter 11 Cases.

12.     "***Bankruptcy Court***" means the United States Bankruptcy Court in which the Chapter 11 Cases are commenced or another United States Bankruptcy Court with jurisdiction over the Chapter 11 Cases.

13.     "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, in each case, as amended from time to time.

14.      "***Bar Date Order***" means the order entered by the Bankruptcy Court setting the Claims Bar Date and the Governmental Bar Date.

15.      "***Bidding Procedures***" means the procedures approved by the Bankruptcy Court governing the marketing process for the sale of the Debtors' Assets.

16.      "***Business Day***" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

17.      "***Capital Reserves***" means, if an Equitization occurs, Cash or Digital Assets with an aggregate value of $150 million as of the Effective Date, which shall be used to restart the business of the Debtors following the Effective Date; *provided* that, if the Capital Reserves Shortfall as of the Effective Date is greater than zero, the GUC Trust shall pay the Capital Reserves Funding to the Reorganized Debtors prior to making any distributions to the GUC Trust Beneficiaries on account of their Class A GUC Trust Units or Class B2 GUC Trust Units.

18.      "***Capital Reserves Funding***" means, if an Equitization occurs and the Capital Reserves Shortfall is greater than zero, proceeds of Avoidance Recoveries and Class B2 GUC Trust Recoveries in an amount equal to the Capital Reserves Shortfall in the aggregate.

19.      "***Capital Reserves Shortfall***" means, if an Equitization occurs, an amount equal to (i) $150 million *minus* (ii) the total amount of Cash and Digital Assets available to the Reorganized Debtors on the Effective Date.

20.      "***Cash***" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

21.      "***Cause of Action***" means any action, claim, cause of action, controversy, third-party claim, dispute, demand, right, action, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, account, defense, remedy, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract, in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, a "Cause of Action" includes: (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to Claims or Interests; (iii) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code (including Avoidance Actions); (iv) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any state or foreign law fraudulent transfer or similar claim.

22.      "***Chapter 11 Cases***" means each individual case or the jointly administered cases pending under chapter 11 of the Bankruptcy Code for each individual Debtor or the Debtors, as applicable, in the Bankruptcy Court.

23.      "***Claim***" shall have the meaning set forth in section 101(5) of the Bankruptcy Code, against any Debtor.

24.     "***Claims Bar Date***" means such time and date established pursuant to the Bar Date Order by which Proofs of Claim (other than for Administrative Expense Claims and Claims held by Governmental Units) must be Filed.

25.     "***Claims Objection Deadline***" means the deadline for objecting to a Claim against a Debtor, which shall be on the date that is the later of (i) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court, (ii) 90 days after the Filing of a Proof of Claim, or (iii) such other period of limitation as may be fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order for objecting to a Claim.

26.     "***Claims Register***" means the official register of Claims against and Interests in the Debtors maintained by the Noticing and Claims Agent.

27.     "***Claims Reserve***" means a reserve to be established by the Debtors on or before the Effective Date and comprised of Cash (or, at the option of the Debtors in the case of Secured Claims that are secured by Digital Assets, Digital Assets) in the amount of the Claims Reserve Amount, less any portion of such amount that is distributed on the Effective Date pursuant to the Plan, which reserve shall vest in the Reorganized Debtors or the Liquidation Trust (as applicable) as of the Effective Date.

28.     "***Claims Reserve Amount***" means the sum of (i) the Other Priority Claims Reserve Amount, (ii) the Secured Claims Reserve Amount, (iii) the estimated aggregate face amount of accrued but unpaid Administrative Expense Claims (excluding Professional Fee Claims) against the Debtors as of the Effective Date, and (iv) the U.S. Trustee Fees.

29.     "***Class***" means a category of Claims against or Interests in the Debtors as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

30.     "***Class 3 Election Notice***" means the notice, substantially in the form included in the Plan Supplement, to be sent to the Holders of Class 3 General Unsecured Claims.

31.     "***Class 4 Election Notice***" means the notice, substantially in the form included in the Plan Supplement, to be sent by Gemini to the Holders of Class 4 Gemini Lender Claims.

32.     "***Class A GUC Trust Units***" means Class A1 GUC Trust Units, Class A2 GUC Trust Units and Class A3 GUC Trust Units.

33.     "***Class A1 GUC Trust Units***" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of GGH Avoidance Recoveries, subject to the prior payment of the Capital Reserves Funding, if applicable.

34.     "***Class A2 GUC Trust Units***" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of GGC Avoidance Recoveries, subject to the prior payment of the Capital Reserves Funding, if applicable.

35.     "***Class A3 GUC Trust Units***" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of GAP Avoidance Recoveries, subject to the prior payment of the Capital Reserves Funding, if applicable.

36. "***Class B GUC Trust Recoveries***" means the Class B1 GUC Trust Recoveries and Class B2 GUC Trust Recoveries.

37. "***Class B GUC Trust Units***" means Class B1 GUC Trust Units and Class B2 GUC Trust Units.

38. "***Class B1 GUC Trust Recoveries***" means the DCG Contribution.

39. "***Class B1 GUC Trust Units***" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of Class B1 GUC Trust Recoveries.

40. "***Class B2 GUC Trust Recoveries***" means any proceeds from the DCG Loans, the DCG Note, and any and all Causes of Action or other claims against the DCG Parties, including, without limitation, the proceeds from any settlements thereof; *provided* that, for the avoidance of doubt, the Class B2 GUC Trust Recoveries shall not include the DCG Contribution.

41. "***Class B2 GUC Trust Units***" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of Class B2 GUC Trust Recoveries, subject to the prior payment of the Capital Reserves Funding, if applicable.

42. "***Class C GUC Trust Recoveries***" means the Class C1 GUC Trust Recoveries and Class C2 GUC Trust Recoveries.

43. "***Class C GUC Trust Units***" means Class C1 GUC Trust Units and Class C2 GUC Trust Units.

44. "***Class C1 GUC Trust Recoveries***" means the Gemini Contribution.

45. "***Class C1 GUC Trust Units***" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of Class C1 GUC Trust Recoveries.

46. "***Class C2 GUC Trust Recoveries***" means any proceeds from Causes of Action or other claims against the Gemini Parties, including, without limitation, the proceeds from any settlements thereof; *provided* that, for the avoidance of doubt, the Class C2 GUC Trust Recoveries shall not include the Gemini Contribution.

47. "***Class C2 GUC Trust Units***" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of Class C2 GUC Trust Recoveries.

48. "***Committee***" means the official committee of unsecured creditors of the Debtors to be appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

49. "***Confirmation***" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

50.     "***Confirmation Date***" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

51.     "***Confirmation Hearing***" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

52.     "***Confirmation Order***" means the Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

53.     "***Consummation***" means the occurrence of the Effective Date.

54.     "***Cure Claim***" means a monetary Claim based upon a Debtor's defaults under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code.

55.     "***Cure Notice***" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include (i) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases, (ii) Cure Claims to be paid in connection therewith and (iii) procedures for resolution by the Bankruptcy Court of any related disputes.

56.     "***D&O Liability Insurance Policies***" means all unexpired directors', managers', and officers' liability insurance policies (including any "tail policy") maintained by any of the Debtors with respect to directors, managers, officers, and employees of the Debtors.

57.     "***DCG***" means Digital Currency Group, Inc.

58.     "***DCG Contribution***" means $[●] to be contributed to the GUC Trust by DCG or its affiliates or control persons.

59.     "***DCG Loans***" means those certain loans in the principal amount of approximately $575 million, consisting of (i) the loans between GGC (as lender) and DCG (as borrower) (a) in the principal amount of approximately $200 million due on May 9, 2023 and (b) in the principal amount of approximately $300 million due on May 11, 2023, and (ii) the loan between GGC (as lender) and DCGI (as borrower) in the principal amount of 4,550.45 Bitcoin (~$75mm) due on May 11, 2023.

60.     "***DCG Note***" that certain $1.1 billion promissory note, dated as of June 30, 2022 and due on June 30, 2032, issued by DCG to GGC with an interest rate of 1% per annum, which may, at DCG's option, be paid in kind.

61.     "***DCG Parties***" means DCG, its affiliates or their respective former or current officers, directors, employees, agents or representatives (other than in their capacities as current directors or officers of any the Debtors).

62.    "***DCG Settlement***" means any compromises, settlements, and resolutions of all Claims, Causes of Action, controversies, and disputes, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, between the Debtors and the DCG Parties.

63.    "***DCG Settlement Procedures***" means the procedures set forth in the Class 3 Election Notice and the Class 4 Election Notice pursuant to which Holders of General Unsecured Claims can elect to receive the DCG Contribution and opt into the releases set forth in the Class 3 Election Notice or the Class 4 Election Notice (as applicable) and Article IV.E of the Plan.

64.    "***Debtors***" means, collectively, GGH, GGC, and GAP.  Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors shall mean the Reorganized Debtors to the extent context requires.

65.    "***Definitive Documents***" means (i) the Plan (and any and all exhibits, annexes, and schedules thereto); (ii) the Confirmation Order; (iii) the Disclosure Statement and all other solicitation materials with respect to the Plan; (iv) the order approving the Disclosure Statement; (v) all pleadings filed by the Debtors in connection with the Chapter 11 Cases (or related orders), including the "first day" motions, applications, and other documents that any Debtor intends to file with the Bankruptcy Court and seeks to have heard on an expedited basis at the "first-day hearing" in the Chapter 11 Cases and any proposed orders related thereto; (vi) the Plan Supplement; (vii) the New Governance Documents, if applicable; (viii) all documentation with respect to any post-emergence management incentive plan, including the MIP; (ix) any other disclosure documents related to the issuance of the Reorganized GGH Interests; (x) any new material employment, consulting, or similar agreements; and (xi) any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments, or other documents reasonably desired or necessary to consummate and document the transactions contemplated by the Restructuring (including any exhibits, amendments, modifications, or supplements made from time to time thereto).

66.    "***Digital Asset***" means a digital currency or crypto asset in which transactions are verified and records are maintained by a decentralized system using cryptography, rather than by a centralized authority, including stablecoins, digital coins, and tokens, such as security tokens, utility tokens, and governance tokens.

67.    "***Disallowed***" means, with respect to any Claim, or any portion thereof, that such Claim, or such portion thereof, is not Allowed; *provided, however*, that a Disputed Claim shall not be considered Disallowed until so determined by entry of a Final Order.

68.    "***Disbursing Agent***" means, (i) if an Equitization does not occur, the Debtors, the Liquidation Trustee, the GUC Trust Trustee, or the Entity or Entities selected by the Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) to make or facilitate distributions pursuant to the Plan, or (ii) if an Equitization occurs, the Reorganized Debtors, the GUC Trust Trustee, or the Entity or Entities selected by the Reorganized Debtors or the GUC Trust Trustee (as applicable) to make or facilitate distributions pursuant to the Plan.  For the avoidance of doubt, the GUC Trust Trustee will only be the Disbursing Agent as it relates to making or facilitating distributions to Holders of Allowed General Unsecured Claims pursuant to the Plan.

69.    "*Disclosure Statement*" means the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan*, dated as of [●], 2023, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

70.    "*Disputed*" means, with respect to any Claim or Interest, that such Claim or Interest (i) is not yet Allowed, (ii) is not Disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable, (iii) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law, or (iv) is or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim is or has been timely Filed in accordance with the Bar Date Order.

71.    "*Dissolution Transactions*" means, if an Equitization does not occur, the transactions that the Debtors or Liquidation Trustee determine to be necessary or appropriate to implement the terms of the Plan, and ultimately result in the dissolution or other termination of the corporate entities that comprise the Debtors.

72.    "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) on or after the Effective Date upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

73.    "*Distribution Record Date*" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date as designated in an order of the Bankruptcy Court.

74.    "*Effective Date*" means the date selected by the Debtors on which: (i) no stay of the Confirmation Order is in effect; (ii) all conditions precedent specified in Article IX have been satisfied or waived (in accordance with Article IX.C); and (iii) the Plan becomes effective; *provided, however*, that if such date does not occur on a Business Day, the Effective Date shall be deemed to occur on the first Business Day after such date.

75.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

76.    "*Equitization*" means, if the Asset Sale does not result in the sale of all or substantially all of the Debtors' assets, the Restructuring under this Plan pursuant to which the Holders of Allowed General Unsecured Claims will receive, among other things, one hundred percent (100%) of the Reorganized GGH Interests, subject to dilution on account of the MIP.

77.    "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

78.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

79.    "***Exculpated Party***" means each of the following solely in its capacity as such: (i) the Debtors, (ii) the Reorganized Debtors (as applicable), (i) the Debtors' Professionals, and (iv) each Related Party of each Person described in the foregoing clauses (i), (ii), and (iii) (in each case, solely in such Person's capacity as such); *provided* that, notwithstanding anything to the contrary in the Plan, the DCG Parties, the Gemini Parties, and each of their respective Related Parties (in each such Person's capacity as such) and the former officers and directors of the Debtors as of the Effective Date (in each such Person's capacity as such) shall not be Exculpated Parties under the Plan; *provided further* that any of the current officers and directors of the Debtors shall be an Exculpated Party only with the written consent of the Special Committee following the conclusion of the Investigation.

80.    "***Executory Contract***" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

81.    "***Federal Judgment Rate***" means the federal judgment rate in effect as of the Petition Date, compounded annually.

82.    "***File***," "***Filed***," or "***Filing***" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Noticing and Claims Agent or the Bankruptcy Court through the PACER or CM/ECF website.

83.    "***Final Decree***" means the decree contemplated under Bankruptcy Rule 3022.

84.    "***Final Order***" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

85.    "***GAP***" means Genesis Asia Pacific Pte. Ltd.

86.    "***GAP Avoidance Recoveries***" means Avoidance Recoveries in respect of Causes of Action or other claims of GAP.

87.    "***Gemini***" means Gemini Trust Company, LLC.

88.    "***Gemini Contribution***" means $[●] to be contributed to the GUC Trust by Gemini or its affiliates or control persons.

89.     "***Gemini Lender Unsecured Claim***" means a General Unsecured Claim held by a customer of Gemini in connection with loans made to GGC under the Gemini Earn Program.

90.     "***Gemini Earn Program***" means the arrangement set forth in those certain tri-party master loan agreements between GGC, Genesis and certain customers of Gemini pursuant to which such customers agreed to lend Digital Assets to GGC, with Gemini acting as custodian and agent for such customers in certain respects.

91.     "***Gemini Parties***" means Gemini, its affiliates or their respective former or current officers, directors, employees, agents or representatives.

92.     "***Gemini Settlement***" means any compromises, settlements, and resolutions of all Claims, Causes of Action, controversies, and disputes, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, between the Debtors and the Gemini Parties.

93.     "***Gemini Settlement Procedures***" means the procedures set forth in the Class 4 Election Notice pursuant to which Holders of such Class can elect to receive the Gemini Contribution and opt into the releases set forth in the Class 4 Election Notice and Article IV.F of the Plan.

94.     "***General Unsecured Claim***" means any Claim that is not secured, subordinated, or entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court (other than an Intercompany Claim or a Subordinated Claim). Any Intercompany Claims or Subordinated Claims shall not constitute General Unsecured Claims.

95.     "***GGC***" means Genesis Global Capital, LLC.

96.     "***GGC Avoidance Recoveries***" means Avoidance Recoveries in respect of Causes of Action or other claims of GGC.

97.     "***GGH***" means Genesis Global Holdco, LLC.

98.     "***GGH Avoidance Recoveries***" means Avoidance Recoveries in respect of Causes of Action or other claims of GGH.

99.     "***Governmental Bar Date***" means such time and date established pursuant to the Bar Date Order by which Proofs of Claim of Governmental Units must be Filed.

100.     "***Governmental Unit***" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

101.     "***GUC Trust***" means the trust established pursuant to Article IV.B of the Plan to, among other things, hold the GUC Trust Assets and make distributions pursuant to the Plan.

102.     "***GUC Trust Accounts***" means the bank accounts to be held in the name of the GUC Trust Trustee that are created pursuant to Article IV.B of the Plan.

103.    "***GUC Trust Agreement***" means the trust agreement, to be dated prior to the Effective Date, between the Debtors and the GUC Trust Trustee, governing the GUC Trust.

104.    "***GUC Trust Assets***" means, subject to the prior payment of the Capital Reserves Funding, the DCG Loans, the DCG Note, and all rights arising out of or related to the Avoidance Recoveries, the Class B GUC Trust Recoveries, the Class C GUC Trust Recoveries, and the GUC Trust Funding, which shall be transferred to, and vested in, the GUC Trust on the Effective Date.

105.    "***GUC Trust Beneficiaries***" means the holders of GUC Trust Units.

106.    "***GUC Trust Expenses***" means any and all reasonable and documented fees, costs, and expenses incurred by the GUC Trust or the GUC Trust Trustee (or any Disbursing Agent, Person, entity, or professional engaged by the GUC Trust Trustee to effect distributions or otherwise assist the GUC Trust Trustee with its duties under the GUC Trust Agreement) in connection with any of their duties under the Plan and the GUC Trust Agreement, including, without limitation, any reasonable and documented administrative fees, attorneys' or other professionals' fees and expenses, insurance fees, taxes, escrow expenses and fees payable under 28 U.S.C. § 1930, or costs to maintain certain assets while they are held.

107.    "***GUC Trust Funding***" means an amount equal to $15.0 million to be funded by the Debtors out of available cash, cash equivalents or Digital Assets; *provided* that, if an Equitization occurs, the GUC Trust Funding shall be repaid to the Reorganized Debtors by the GUC Trust following the GUC Trust's receipt of Avoidance Recoveries and Class B2 GUC Trust Recoveries, and Class C2 GUC Trust Recoveries in the aggregate amount of $20.0 million.

108.    "***GUC Trust Trustee***" means the trustee appointed pursuant to Article IV.B of the Plan (or any successor trustee), in their or its capacity as the trustee of the GUC Trust.

109.    "***GUC Trust Units***" means the Class A GUC Trust Units, the Class B GUC Trust Units, and the Class C GUC Trust Units.

110.    "***Holder***" means a Person or Entity holding a Claim against or Interest in a Debtor, as applicable.

111.    "***Impaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

112.    "***Indemnification Obligations***" means each of the Debtors' indemnification obligations, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment contracts, for the current and former directors and the officers of the Debtors.

113.    "***Insider***" has the meaning set forth in section 101(31) of the Bankruptcy Code.

114.    "***Institutional Unsecured Claim***" means a General Unsecured Claim against GGC that is not a Gemini Lender Unsecured Claim.

115.    "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor.

116.    "*Investigation*" means the Special Committee's investigation into certain matters, including various prepetition transactions involving certain DCG Parties and other Persons, as described in that certain *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, dated as of the Petition Date (Docket No. 19).

117.    "*Intercompany Interest*" means any Interest in a Debtor held by another Debtor.

118.    "*Interest*" means any equity interest (as defined in section 101(16) of the Bankruptcy Code) in any Debtor, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instrument, evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest, that existed immediately before the Effective Date.

119.    "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended.

120.    "*IRS*" means the Internal Revenue Service.

121.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

122.    "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

123.    "*Liquidation Trust*" means the trust established pursuant to Article IV.A to, among other things, hold the Liquidation Trust Assets and make distributions pursuant to the Plan.

124.    "*Liquidation Trust Accounts*" means the bank accounts to be held in the name of the Liquidation Trustee that are created pursuant to Article IV.A of the Plan.

125.    "*Liquidation Trust Agreement*" means the trust agreement, to be dated prior to the Effective Date, between the Debtors and the Liquidation Trustee, governing the Liquidation Trust.

126.    "*Liquidation Trust Assets*" means, if an Equitization does not occur, (i) any Assets of the Debtors' Estates (other than the GUC Trust Assets) not sold in the Asset Sale, including, but not limited to, any Retained Causes of Action and (ii) the Liquidation Trust Funding. For the avoidance of doubt, no GUC Trust Assets shall be Liquidation Trust Assets.

127.    "*Liquidation Trust Beneficiaries*" means the "Beneficiaries" as defined in the Liquidation Trust Agreement.

128.    "*Liquidation Trust Expenses*" means any and all reasonable and documented fees, costs, and expenses incurred by the Liquidation Trust or the Liquidation Trustee (or any Disbursing Agent, Person, entity, or professional engaged by the Debtors or the Liquidation Trustee to effect distributions or otherwise assist the Liquidation Trustee with its duties under the Liquidation Trust Agreement) in connection with any of their duties under the Plan and the Liquidation Trust Agreement, including, without limitation, any reasonable and documented administrative fees,

attorneys' or other professionals' fees and expenses, insurance fees, taxes, escrow expenses and fees payable under 28 U.S.C. § 1930, costs associated with any maintenance of any going concern as part of the wind down of such going concern's business operations, or costs to maintain certain assets while they are held.

129.    "*Liquidation Trust Funding*" means, if the Equitization does not occur, Cash in the amount the Debtors determine is necessary to fund the Liquidation Trust Expenses until all distributions required to be made under the Plan are made.

130.    "*Liquidation Trustee*" means the trustee appointed pursuant to Article IV.A (or any successor trustee), in their or its capacity as the trustee of the Liquidation Trust.

131.    "*Local Rules*" means the Local Bankruptcy Rules for the Southern District of New York.

132.    "*MIP*" means, if an Equitization occurs, a post-Effective Date management incentive plan, pursuant to which Reorganized GGH Interests shall be reserved for the New Board to grant Reorganized GGH Interests to directors, officers, and employees of Reorganized GGH subject to terms and conditions to be determined by the New Board.

133.    "*Money Transmitter Licenses*" means any license or similar authorization of a Governmental Unit that an Entity is required to obtain to operate as a broker of Digital Assets.

134.    "*New Board*" means, if an Equitization occurs, (i) with respect to Reorganized GGH, the initial board of directors of Reorganized GGH and (ii) with respect to each other Reorganized Debtor, the initial board of directors, board of managers, or other governing body of such Reorganized Debtor, in each case as determined pursuant to Article IV.C of the Plan and the Plan Supplement.

135.    "*New Governance Documents*" means, if an Equitization occurs, the organizational and corporate governance documents of Reorganized GGH and its subsidiaries, including, without limitation, certificates of incorporation, certificates of formation, certificates of limited partnership (or equivalent organizational documents), bylaws, and limited liability company agreements (or equivalent governing documents).

136.    "*Noticing and Claims Agent*" means Kroll Restructuring Administration LLC, the noticing, claims, and solicitation agent proposed to be retained by the Debtors in the Chapter 11 Cases.

137.    "*Other Priority Claim*" means any Claim that is entitled to priority of payment under section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

138.    "*Other Priority Claims Reserve Amount*" means the aggregate face amount, or estimated amount under section 502(c) of the Bankruptcy Code, if applicable, of all Claims, including Other Priority Claims and Priority Tax Claims, but excluding Administrative Expense Claims, against the Debtors that are either (i) identified in the Schedules as entitled to priority in right of payment under section 507(a) of the Bankruptcy Code or (ii) asserted to be entitled to such

13

priority in a Proof of Claim validly submitted on or before the Claims Bar Date, less the face amount, or estimated amount under section 502(c) of the Bankruptcy Code, if applicable, of any such Claims identified by the Debtors in their reasonable discretion as duplicative of other such Claims.

139. "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

140. "*Petition Date*" means the date on which each Debtor Filed its voluntary petition for relief commencing the Chapter 11 Cases.

141. "*Plan*" means this chapter 11 plan, as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms of the Plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules to the Plan, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

142. "*Plan Supplement*" means, to the extent applicable, the Class 3 Election Notice, the Class 4 Election Notice, the Liquidation Trust Agreement, the GUC Trust Agreement, a list of Retained Causes of Action (if any), an exhibit disclosing the identity and affiliations of any Person proposed to serve on any of the New Boards or proposed to serve as an officer of any of the Reorganized Debtors, the New Governance Documents, the Secured Claims Schedule, the Schedule of Assumed Executory Contracts and Leases, and the Schedule of Rejected Executory Contracts and Leases, all of which shall be incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced, and/or supplemented from time to time, which shall be filed with the Bankruptcy Court on or before three business days prior to the Confirmation Hearing.

143. "*Priority Tax Claim*" means a Claim held by a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

144. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest bears to the aggregate amount of Allowed Claims, Allowed Interests, or other matter so referenced, as the context requires.

145. "*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

146. "*Professional Fee Claims*" means a Claim for the compensation of the Professionals and other professionals and the reimbursement of expenses incurred by such professionals through and including the Effective Date to the extent such fees and expenses have not been previously paid, including, for the avoidance of doubt, any costs, fees, expenses, or commissions (including with respect to any investment banking transaction fees or commissions) incurred in connection with the Restructuring.

147. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors on the Effective Date in an amount equal to the Professional Fee Reserve Amount, pursuant to Article II.B.

148. "*Professional Fee Reserve Amount*" means the total amount of Professional Fee Claims estimated in accordance with Article II.B.

149. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

150. "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

151. "*Related Party*" means, with respect to any Entity, such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' current directors, managers, officers, employees, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current equity Holders, officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such

152. "*Released Party*" means each of the following solely in its capacity as such: (i) the Debtors, (ii) the Reorganized Debtors (as applicable), (iii) the Debtors' Professionals, and (iv) each Related Party of each Person described in the foregoing clauses (i), (ii), and (iii) (in each case, solely in such Person's capacity as such); *provided* that, notwithstanding anything to the contrary in the Plan, the DCG Parties, the Gemini Parties, and each of their respective Related Parties (in each such Person's capacity as such) and the former officers and directors of the Debtors as of the Effective Date (in each such Person's capacity as such) shall not be Released Parties under the Plan; *provided further* that any of the current officers and directors of the Debtors shall be a Released Party only with the written consent of the Special Committee following the conclusion of the Investigation.

153. "*Releasing Party*" means each of the following solely in its capacity as such: (i) all Released Parties and (ii) all Holders of Claims who affirmatively cast a timely ballot to accept the Plan.

154. "*Reorganized*" means, in relation to a Debtor, such Debtor (or any successor thereto, by merger, consolidation, or otherwise) as reorganized on or after the Effective Date.

155. "*Reorganized GGH*" means, if an Equitization occurs, GGH as reorganized on the Effective Date.

156. "*Reorganized GGH Interest*" means, if an Equitization occurs, an Interest in Reorganized GGH that will be issued on the Effective Date (or such other date as set forth in the Confirmation Order) or upon implementation of the MIP.

157.    "*Restructuring*" means all actions that may be necessary or appropriate to effectuate the transactions described in, approved by, contemplated by, or necessary to effectuate, the Plan.

158.    "*Retained Causes of Action*" means those Causes of Action, if any, identified in the Plan Supplement that are not released, waived, or transferred pursuant to the Plan or any Asset Sale.   For the avoidance of doubt, the Retained Causes of Action shall not include any GUC Trust Assets.

159.    "*Sales Process*" means the marketing and sales process for the Debtors' Assets conducted pursuant to the Bidding Procedures.

160.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Reorganized Debtors pursuant to the Plan, as set forth in the Plan Supplement, as may be amended from time to time prior to the Effective Date.

161.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as may be amended from time to time prior to the Effective Date.

162.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the official bankruptcy forms, as the same may have been amended, modified, or supplemented from time to time.

163.    "*SEC*" means the United States Securities and Exchange Commission.

164.    "*Secured Claim*" means a Claim (i) secured by a lien on collateral to the extent of the value of such collateral as (a) set forth in the Plan, (b) agreed to by the Holder of such Claim and the Debtors, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any right of setoff of the Holder thereof in accordance with section 553 of the Bankruptcy Code.

165.    "*Secured Claims Reserve Amount*" means the aggregate amount of Claims that are (i) included on the Secured Claims Schedule or (ii) deemed by Final Order of the Bankruptcy Court to be a Secured Claim.

166.    "*Secured Claims Schedule*" means the schedule of Claims that the Debtors identify as Secured Claims.

167.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state, or local law.

168.    "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

169.    "**_Special Committee_**" means that certain Special Committee of the Board of Directors of GGH, established on November 18, 2022, comprised of Paul Aronzon and Thomas Conheeney.

170.    "**_Subordinated Claim_**" means any Claim against a Debtor arising from (i) rescission of a purchase or sale of a Security in any Debtor or an Affiliate of any Debtor, (ii) purchase or sale of such a Security, or (iii) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

171.    "**_Successful Bid_**" means a qualified bid submitted in accordance with the Bidding Procedures that is determined to be a highest or otherwise best bid in accordance with the Bidding Procedures.

172.    "**_Successful Bidder_**" means a bidder determined to have a Successful Bid pursuant to the Bidding Procedures.

173.    "**_Transfer of Control_**" means the transfer of control of the Money Transmitter Licenses held by the Debtors or any of their subsidiaries as a result of the issuance of the Reorganized GGH Interests to Holders of Allowed General Unsecured Claims.

174.    "**_Unclaimed Property_**" means any distribution under the Plan on account of an Allowed Claim whose Holder has not: (i) accepted such distribution or, in the case of distributions made by check, negotiated such check; (ii) given notice to the Reorganized Debtors of an intent to accept such distribution; (iii) responded to the Debtors', Reorganized Debtors', Liquidation Trustee's or GUC Trust Trustee's (as applicable) requests for information necessary to facilitate such distribution; or (iv) taken any other action necessary to facilitate such distribution.

175.    "**_Unexpired Lease_**" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

176.    "**_Unimpaired_**" means, with respect to a Class of Claims or Interests, a Class consisting of Claims or Interests that are not "impaired" within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash or Reinstatement.

177.    "**_Unsecured_**" means, with respect to a Claim, not a Secured Claim.

178.    "**_U.S. Trustee_**" means the Office of the United States Trustee for the Southern District of New York.

179.    "**_U.S. Trustee Fees_**" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

B.    _Rules of Interpretation_

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

(2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified, or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan; (4) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (5) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (8) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (10) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction, action, or event shall or may occur pursuant to the Plan is a day that is not a Business Day, then such transaction, action, or event shall instead occur on the next succeeding Business Day.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided that* the corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or Reorganized Debtor.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.    *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.    *Controlling Document*

In the event of an inconsistency between the Plan, the Disclosure Statement, or any other Final Order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing, other than the Plan Supplement), the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

A.    *Administrative Expense Claims*

Except with respect to Administrative Expense Claims that are Professional Fee Claims, and except to the extent that an Administrative Expense Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Expense Claim and the applicable Debtor(s), Reorganized Debtor(s), or Liquidation Trustee (as applicable) agrees to less favorable treatment, each Holder of an Allowed Administrative Expense Claim shall be paid in full in Cash on the latest of: (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Expense Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Expense Claim is Allowed; and (c) the date such Allowed Administrative Expense Claim becomes due and payable, or as soon thereafter as is reasonably practicable; *provided* that, **if an Equitization occurs**, Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' businesses may be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

Except as otherwise provided in this Article II.A of the Plan and except with respect to Administrative Expense Claims that are Professional Fee Claims, requests for allowance and payment of Administrative Expense Claims must be Filed and served on the Debtors, the Reorganized Debtors, or the Liquidation Trustee (as applicable), pursuant to the procedures specified in the Bar Date Order, the Confirmation Order, and the notice of entry of the Confirmation Order no later than the Administrative Expense Claims Bar Date.  Holders of Administrative Expense Claims that are required to, but do not, File and serve on the Debtors, the Reorganized Debtors, or the Liquidation Trustee (as applicable) a request for allowance and

payment of such Administrative Expense Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, the Liquidation Trust, or their respective assets or property and such Administrative Expense Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Debtors, the Reorganized Debtors, or the Liquidation Trustee (as applicable) and the requesting party no later than ninety (90) days after the Effective Date or such other date fixed by the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be Filed with respect to an Administrative Expense Claim previously Allowed.

B.      *Professional Compensation*

1.      <u>Final Fee Applications</u>

All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through and including the Effective Date, shall be Filed and served on the Reorganized Debtors or the Liquidation Trustee, as applicable, no later than sixty (60) days after the Effective Date. Each such final request will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, and once approved by the Bankruptcy Court, such Allowed Professional Fee Claims shall be promptly paid in Cash from the Professional Fee Escrow Account up to their full Allowed amount.

If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims shall be promptly paid by the Reorganized Debtors or the Liquidation Trustee, as applicable, without any further action or order of the Bankruptcy Court.  Obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.

Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtors or the Liquidation Trustee, as applicable, and the requesting party no later than twenty (20) days after such Professional Fee Claim is Filed with the Bankruptcy Court.

2.      <u>Professional Fee Escrow Account</u>

On the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the "Professional Fee Reserve Amount" described in Article II.B.3 of the Plan. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors or of the Reorganized Debtors or the Liquidation Trust.  The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors or the Liquidation Trust (as applicable) from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  After all such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be distributed to the Reorganized Debtors or the Liquidation Trust (as applicable) without any further action or order of the Bankruptcy Court.

3.        Professional Fee Reserve Amount

No later than five (5) Business Days prior to the Effective Date, the Debtors shall solicit Professionals for estimates of their unpaid Professional Fee Claims before and as of the Effective Date, and such Professionals shall deliver such estimate to the Debtors in writing via email two (2) Business Days prior to the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not timely provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4.        Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors or the Liquidation Trustee (as applicable) shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred on or after the Effective Date by the Professionals (including any fees related to the preparation of Professional fee applications). Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors or the Liquidation Trustee (as applicable) may employ and pay any Professional for fees and expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on the Effective Date or as soon as practicable thereafter or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

D.    *Statutory Fees*

On or before the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtors in Cash.

After the Effective Date, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) will pay any and all such fees for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first. The Liquidation Trust will pay any and all fees due and payable pursuant to 28 U.S.C. § 1930, if any, on account of disbursements from the Liquidation Trust only. The GUC Trust will pay any and all fees due and payable pursuant to 28 U.S.C. § 1930, if any, on account of disbursements from the GUC Trust only.

The Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) shall continue to file quarterly, post-confirmation operating reports in accordance with the U.S. Trustee's guidelines.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims*

The Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest fits within the description of that Class and is classified in other Class(es) to the extent that any portion of the Claim or Interest fits within the description of such other Class(es).  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

1.    Classification of Claims Against and Interests in GGH

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Secured Claims | Unimpaired | Presumed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Subordinated Claims | Impaired | Deemed to Reject |
| 5 | Intercompany Claims | Impaired or Unimpaired | Presumed to Accept or Deemed to Reject |
| 6 | Interests | Impaired | Deemed to Reject |

2.      Classification of Claims Against and Interests in GGC

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Institutional Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Gemini Lender Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Subordinated Claims | Impaired | Deemed to Reject |
| 6 | Intercompany Claims | Impaired or Unimpaired | Presumed to Accept or Deemed to Reject |
| 7 | Intercompany Interests | Impaired or Unimpaired | Presumed to Accept or Deemed to Reject |

3.      Classification of Claims Against and Interests in GAP

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Secured Claims | Unimpaired | Presumed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Subordinated Claims | Impaired | Deemed to Reject |
| 5 | Intercompany Claims | Impaired or Unimpaired | Presumed to Accept or Deemed to Reject |
| 6 | Intercompany Interests | Impaired or Unimpaired | Presumed to Accept or Deemed to Reject |

B.      *Treatment of Claims Against and Interests in GGH*

1.      Class 1 — Other Priority Claims

a.      *Classification*: Class 1 consists of all Other Priority Claims against GGH.

b.      *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim against GGH agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim against GGH will, at the option of the Debtors or the Reorganized Debtors, as applicable, (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such

Other Priority Claim becomes an Allowed Other Priority Claim against GGH, in each case, or as soon as reasonably practicable thereafter.

c.     *Voting*: Class 1 is Unimpaired under the Plan. Holders of Class 1 Other Priority Claims against GGH are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.     <u>Class 2 — Secured Claims</u>

a.     *Classification*: Class 2 consists of all Secured Claims against GGH.

b.     *Treatment*: Except to the extent that a Holder of an Allowed Secured Claim against GGH agrees to less favorable treatment, in full and final satisfaction of such Allowed Secured Claim, at the option of Debtors or the Reorganized Debtors, as applicable, such Holder will receive (i) payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Secured Claim becomes an Allowed Secured Claim against GGH, in each case, or as soon as reasonably practicable thereafter, (ii) the return of the collateral securing such Allowed Secured Claim, or (iii) such other treatment so as to render such Holder's Allowed Secured Claim against GGH Unimpaired pursuant to section 1124 of the Bankruptcy Code.

c.     *Voting*: Class 2 is Unimpaired under the Plan. Holders of Class 2 Secured Claims against GGH are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.     <u>Class 3 — General Unsecured Claims</u>

a.     *Classification*: Class 3 consists of all General Unsecured Claims against GGH.

b.     *Treatment*: In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim against GGH, each Holder of an Allowed General Unsecured Claim against GGH shall receive its Pro Rata share of (i) the Available Assets (including proceeds of the Asset Sale that are allocated, in the Debtors' discretion, to GGH), (ii) to the extent an Equitization occurs, one hundred percent (100%) of the Interests in Reorganized GGH, subject to dilution on account of the MIP, (iii) the Class A1 GUC Trust Units, (iv) the Class B2 GUC Trust Units, and (v) if such Holder has elected to opt into the releases set forth in the DCG Settlement Procedures and Article IV.E of the Plan, the Class B1 GUC Trust Units.

      c.      *Voting*: Class 3 is Impaired under the Plan. Holders of Class 3 General Unsecured Claims against GGH will be entitled to vote to accept or reject the Plan.

4.      <u>Class 4 — Subordinated Claims</u>

      a.      *Classification*: Class 4 consists of all Subordinated Claims against GGH.

      b.      *Treatment*: Holders of Subordinated Claims against GGH shall not receive any distribution on account of such Subordinated Claims. On the Effective Date, all such Subordinated Claims shall be discharged, cancelled, released, and extinguished.

      c.      *Voting*: Class 4 is Impaired under the Plan. Holders of Class 4 Subordinated Claims against GGH will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders will not be entitled to vote to accept or reject the Plan.

5.      <u>Class 5 — Intercompany Claims</u>

      a.      *Classification*: Class 5 consists of all Intercompany Claims against GGH.

      b.      *Treatment*: All Intercompany Claims against GGH will be adjusted, Reinstated, compromised, or discharged on the Effective Date in the Debtors' discretion.

      c.      *Voting*: Class 5 is Unimpaired/Impaired under the Plan.  Holders of Class 5 Intercompany Claims against GGH are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

6.      <u>Class 6 — Interests</u>

      a.      *Classification*: Class 6 consists of all Interests in GGH.

      b.      *Treatment*: Holders of Interests in GGH shall not receive any distribution on account of such Interests unless all senior Claims are paid in full or otherwise treated as Unimpaired.  On the Effective Date, all Interests in GGH shall be discharged, cancelled, released, and extinguished.

      c.      *Voting*: Class 6 is Impaired under the Plan. For purposes of solicitation, it is presumed that Holders of Class 6 Interests in GGH shall not receive any distribution on account of such Interests and will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders will not be entitled to vote to accept or reject the Plan.

C.     *Treatment of Claims Against and Interests in GGC*

    1.     <u>Class 1 — Other Priority Claims</u>

        a.     *Classification*: Class 1 consists of all Other Priority Claims against GGC.

        b.     *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim against GGC agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim against GGC will, at the option of the Debtors or the Reorganized Debtors, as applicable, (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Priority Claim becomes an Allowed Other Priority Claim against GGC, in each case, or as soon as reasonably practicable thereafter.

        c.     *Voting*: Class 1 is Unimpaired under the Plan. Holders of Class 1 Other Priority Claims against GGC are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

    2.     <u>Class 2 — Secured Claims</u>

        a.     *Classification*: Class 2 consists of all Secured Claims against GGC.

        b.     *Treatment*: Except to the extent that a Holder of an Allowed Secured Claim against GGC agrees to less favorable treatment, in full and final satisfaction of such Allowed Secured Claim, at the option of Debtors or the Reorganized Debtors, as applicable, such Holder will receive (i) payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Secured Claim becomes an Allowed Secured Claim against GGC, in each case, or as soon as reasonably practicable thereafter, (ii) the return of the collateral securing such Allowed Secured Claim, or (iii) such other treatment so as to render such Holder's Allowed Secured Claim against GGC Unimpaired pursuant to section 1124 of the Bankruptcy Code.

        c.     *Voting*: Class 2 is Unimpaired under the Plan. Holders of Class 2 Secured Claims against GGC are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

    3.     <u>Class 3 — Institutional Unsecured Claims</u>

        a.     *Classification*: Class 3 consists of all Institutional Unsecured Claims against GGC.

b.      *Treatment*: In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Institutional Unsecured Claim against GGC, each Holder of an Allowed General Unsecured Claim against GGC shall receive its Pro Rata share of (i) the Available Assets (including proceeds of the Asset Sale that are allocated, in the Debtors' discretion, to GGC), (ii) to the extent an Equitization occurs, its Pro Rata Share of one hundred percent (100%) of the Interests in Reorganized GGH, subject to dilution on account of the MIP, (iii) the Class A2 GUC Trust Units, (iv) the Class B2 GUC Trust Units, and (v) if such Holder has elected to opt into the releases set forth in the DCG Settlement Procedures and Article IV.E of the Plan, the Class B1 GUC Trust Units.

c.      *Voting*: Class 3 is Impaired under the Plan. Holders of Class 3 General Unsecured Claims against GGC will be entitled to vote to accept or reject the Plan.

4.      <u>Class 4 — Gemini Lender Unsecured Claims</u>

a.      *Classification*: Class 4 consists of all Gemini Lender Unsecured Claims against GGC.

b.      *Treatment*: In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Gemini Lender Unsecured Claim against GGC, each Holder of an Allowed Gemini Lender Unsecured Claim against GGC shall receive its Pro Rata share of (i) the Available Assets (including proceeds of the Asset Sale that are allocated, in the Debtors' discretion, to GGC), (ii) to the extent an Equitization occurs, one hundred percent (100%) of the Interests in Reorganized GGH, subject to dilution on account of the MIP, (iii) the Class A2 GUC Trust Units, (iv) the Class B2 GUC Trust Units, (v) the Class C2 GUC Trust Units, (vi) if such Holder has elected to opt into the releases set forth in the DCG Settlement Procedures and Article IV.E of the Plan, the Class B1 GUC Trust Units, and (vii) if such Holder has elected to opt into the releases set forth in the Gemini Settlement Procedures and Article IV.F of the Plan, the Class C1 GUC Trust Units,.

c.      *Voting*: Class 4 is Impaired under the Plan.  Holders of Class 4 General Unsecured Claims against GGC will be entitled to vote to accept or reject the Plan.

5.      <u>Class 5 — Subordinated Claims</u>

a.      *Classification*: Class 5 consists of all Subordinated Claims against GGC.

b.      *Treatment*: Holders of Subordinated Claims against GGC shall not receive any distribution on account of such Subordinated Claims. On the Effective Date, all Subordinated Claims against GGC shall be discharged, cancelled, released, and extinguished.

c.    *Voting*: Class 5 is Impaired under the Plan. Holders of Class 5 Subordinated Claims against GGC will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders will not be entitled to vote to accept or reject the Plan.

6.    Class 6 — Intercompany Claims

a.    *Classification*: Class 6 consists of all Intercompany Claims against GGC.

b.    *Treatment*:  All Intercompany Claims against GGC will be adjusted, Reinstated, compromised, or discharged on the Effective Date in the Debtors' discretion.

c.    *Voting*: Class 6 is Unimpaired/Impaired under the Plan.  Holders of Class 6 Intercompany Claims against GGC are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

7.    Class 7 — Intercompany Interests

a.    *Classification*: Class 7 consists of all Intercompany Interests in GGC.

b.    *Treatment*: All Intercompany Interests in GGC will be adjusted, Reinstated, compromised, or discharged on the Effective Date in the Debtors' discretion.

c.    *Voting*: Class 7 is Unimpaired/Impaired under the Plan.  Holders of Class 7 Intercompany Interests in GGC are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

D.    *Treatment of Claims Against and Interests in GAP*

1.    Class 1 — Other Priority Claims

a.    *Classification*: Class 1 consists of all Other Priority Claims against GAP.

b.    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim against GAP agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim against GAP will, at the option of the Debtors or the Reorganized Debtors, as applicable, (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Priority Claim becomes an Allowed Other Priority Claim against GAP, in each case, or as soon as reasonably practicable thereafter

28

c.      *Voting*: Class 1 is Unimpaired under the Plan. Holders of Class 1 Other Priority Claims against GAP are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.      Class 2 — Secured Claims

a.      *Classification*: Class 2 consists of all Secured Claims against GAP.

b.      *Treatment*: Except to the extent that a Holder of an Allowed Secured Claim against GAP agrees to less favorable treatment, in full and final satisfaction of such Allowed Secured Claim, at the option of the Debtors or the Reorganized Debtors, as applicable, such Holder will receive (i) payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Secured Claim becomes an Allowed Secured Claim against GAP, in each case, or as soon as reasonably practicable thereafter, (ii) the return of the collateral securing such Allowed Secured Claim, or (iii) such other treatment so as to render such Holder's Allowed Secured Claim against GAP Unimpaired pursuant to section 1124 of the Bankruptcy Code.

c.      *Voting*: Class 2 is Unimpaired under the Plan. Holders of Class 2 Secured Claims against GAP are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.      Class 3 — General Unsecured Claims

a.      *Classification*: Class 3 consists of all General Unsecured Claims against GAP.

b.      *Treatment*: In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim against GAP, each Holder of an Allowed General Unsecured Claim against GAP shall receive its Pro Rata share of (i) the Available Assets (including proceeds of the Asset Sale that are allocated, in the Debtors' discretion, to GAP), (ii) to the extent an Equitization occurs, one hundred percent (100%) of the Interests in Reorganized GGH, subject to dilution on account of the MIP, (iii) the Class A3 GUC Trust Units, (iv) the Class B2 GUC Trust Units, and (v) if such Holder has elected to opt into the releases set forth in the DCG Settlement Procedures and Article IV.E of the Plan, the Class B1 GUC Trust Units.

c.      *Voting*: Class 3 is Impaired under the Plan. Holders of Class 3 General Unsecured Claims against GAP will be entitled to vote to accept or reject the Plan.

4.      <u>Class 4 — Subordinated Claims</u>

a.      *Classification*: Class 4 consists of all Subordinated Claims against GAP.

b.      *Treatment*: Holders of Subordinated Claims against GAP shall not receive any distribution on account of such Subordinated Claims. On the Effective Date, all Subordinated Claims against GAP shall be discharged, cancelled, released, and extinguished.

c.      *Voting*: Class 4 is Impaired under the Plan. Holders of Class 4 Subordinated Claims against GAP will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders will not be entitled to vote to accept or reject the Plan.

5.      <u>Class 5 — Intercompany Claims</u>

a.      *Classification*: Class 5 consists of all Intercompany Claims against GAP.

b.      *Treatment*: All Intercompany Claims against GAP will be adjusted, Reinstated, compromised, or discharged on the Effective Date in the Debtors' discretion.

c.      *Voting*: Class 5 is Unimpaired/Impaired under the Plan.  Holders of Class 5 Intercompany Claims are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

6.      <u>Class 6 — Intercompany Interests</u>

a.      *Classification*: Class 6 consists of all Intercompany Interests in GAP.

b.      *Treatment*: All Intercompany Interests in GAP will be adjusted, Reinstated, compromised, or discharged on the Effective Date in the Debtors' or Reorganized Debtors' discretion.

c.      *Voting*: Class 6 is Unimpaired/Impaired under the Plan. Holders of a Class 6 Intercompany Interests in GAP are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

E.      *Special Provision Governing Unimpaired or Reinstated Claims*

Nothing under the Plan shall affect the Debtors', the Reorganized Debtors', the Liquidation Trustee's, or the GUC Trust Trustee's (as applicable) claims, Causes of Action, rights, or defenses in respect of any Unimpaired Claims or Reinstated Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims or Reinstated Claims.

F.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B–D of the Plan.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

G.     *Elimination of Vacant Classes*

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court for voting purposes as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

H.     *Voting Classes*; *Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

I.     *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date

J.     *Subordinated Claims*

Except as may be the result of the settlement described in Article VIII.A of the Plan, the allowance, classification, and treatment of all Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) reserve(s) the right to reclassify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Liquidation Trust*

**If an Equitization does not occur, the following provisions in this Article IV.A of the Plan shall apply to the implementation of the Plan.  For the avoidance of doubt, all provisions in this Article IV.A of the Plan shall apply only if an Equitization does not occur.**

1.    Liquidation Trust Generally

On or prior to the Effective Date, the Liquidation Trust shall be established in accordance with the Liquidation Trust Agreement for the purpose of liquidating the Liquidation Trust Assets, resolving all Disputed Claims (other than General Unsecured Claims) to the extent related to the Liquidation Trust Assets, making all distributions of the proceeds of the Liquidation Trust Assets to Holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan.  Subject to and to the extent set forth in the Plan, the Confirmation Order, the Liquidation Trust Agreement, or any other order of the Bankruptcy Court entered in connection therewith, the Liquidation Trust shall be empowered to: (a) perform all actions and execute all agreements, instruments, and other documents necessary to implement the Plan; (b) establish, maintain, and administer the Liquidation Trust Accounts, which shall be segregated to the extent appropriate in accordance with the Plan; (c) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, prosecute, settle, and protect, as applicable, the Liquidation Trust Assets (directly or through its professionals or a Disbursing Agent), in accordance with the Plan and the Liquidation Trust Agreement; (d) to the extent Claims relate to the Liquidation Trust Assets, review, reconcile, settle, or object to all such Claims (other than General Unsecured Claims) that are Disputed Claims as of the Effective Date pursuant to the procedures for allowing Claims prescribed in the Plan; (e) calculate and make distributions of the proceeds of the Liquidation Trust Assets to Holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan; (f) subject to Article VIII of the Plan, pursue Retained Causes of Actions that are transferred to the Liquidation Trust to the extent that their pursuit would likely result in a material economic benefit to the Liquidation Trust Beneficiaries and raise any defenses in any adverse actions or counterclaims; (g) retain, compensate, and employ professionals to represent the Liquidation Trust; (h) file appropriate tax returns and other reports on behalf of the Liquidation Trust and pay or seek refunds in respect of taxes or other obligations owed by the Liquidation Trust; (i) file, to the extent reasonably feasible and subject to the Liquidation Trust Agreement, appropriate tax returns on behalf of the Debtors and pay taxes or other obligations arising in connection therewith; (j) exercise such other powers as may be vested in the Liquidation Trust under the Liquidation Trust Agreement and the Plan, or as are deemed by the Liquidation Trustee to be necessary and proper to implement the provisions of the Plan and the Liquidation Trust Agreement; (k) take such actions as are necessary or appropriate to close the Debtors' Chapter 11 Cases; and (l) dissolve and terminate the Liquidation Trust in accordance with the terms of the Liquidation Trust Agreement and the Plan.  For the avoidance of doubt, the Liquidation Trust shall not be empowered with performing any actions designated to the GUC Trust or the GUC Trust Trustee.

Notwithstanding anything to the contrary in this Article IV.A, the Liquidation Trust's primary purpose is liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidation Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidation Trust Assets and provide for the orderly liquidation thereof. Accordingly, the Liquidation Trustee shall, in an orderly manner, liquidate the Liquidation Trust Assets and make timely distributions pursuant to the Plan, and not unduly prolong the duration of the Liquidation Trust.

### 2.   Funding of and Transfer of Assets into the Liquidation Trust

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtor shall transfer the Liquidation Trust Assets to the Liquidation Trust, and all such assets shall vest in the Liquidation Trust on such date, to be administered by the Liquidation Trustee in accordance with the Plan and the Liquidation Trust Agreement.  Except as set forth in the Plan, the Liquidation Trust Assets shall be transferred to the Liquidation Trust free and clear of all Claims, Liens, and encumbrances to the fullest extent provided by section 363 or 1123 of the Bankruptcy Code.

The act of transferring the Liquidation Trust Assets, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidation Trust as if the asset or right was still held by the Debtors.

The Liquidation Trustee shall have the authority to create additional sub-accounts in the Liquidation Trust Accounts and sub-trusts within the Liquidation Trust, which may have a separate legal existence, but which shall be considered sub-accounts or sub-trusts of the Liquidation Trust. This shall include the creation of sub-accounts and/or sub-trusts to accomplish the purposes of the Liquidation Trust.

### 3.   Liquidation Trustee

The Liquidation Trustee shall be selected by the Debtors. The Liquidation Trustee shall be the successor to and representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include the authority and responsibility to fulfill the items identified in the Plan. Other rights and duties of the Liquidation Trustee and the Liquidation Trust Beneficiaries shall be as set forth in the Liquidation Trust Agreement.

### 4.   Liquidation Trust Agreement

The Liquidation Trust Agreement generally will provide for, among other things: (i) the payment of reasonable and documented compensation to the Liquidation Trustee; (ii) the payment of other expenses of the Liquidation Trust, including the cost of pursuing the Retained Causes of Action assigned to the Liquidation Trust; (iii) the retention of counsel, accountants, financial advisors, or other professionals and the payment of their compensation; (iv) the investment of Cash by the Liquidation Trustee within certain limitations; (v) the preparation and filing of appropriate

tax returns and other reports on behalf of the Liquidation Trust and the Debtors and the payment of taxes or other obligations owed by the Liquidation Trust and the Debtors; (vi) the maintenance (if appropriate) of any going concern vested in the Liquidation Trust (subject to the limitations described herein and therein); (vii) the orderly liquidation of the Liquidation Trust Assets; and (viii) the litigation, settlement, abandonment, or dismissal of the Retained Causes of Action or any other claims, rights, or causes of action assigned to the Liquidation Trust.

5.    Reports to Be Filed by the Liquidation Trustee

The Liquidation Trustee, on behalf of the Liquidation Trust, shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the Liquidation Trust Agreement), no later than thirty-one (31) days after June 30 and December 31 of each calendar year, a semi-annual report regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it, and other matters relating to the implementation of the Plan.

6.    Fees and Expenses of the Liquidation Trust

The fees and expenses of the Liquidation Trustee (including those incurred prior to the Effective Date in connection with the preparation of the Liquidation Trust Agreement) shall be paid after the Effective Date pursuant to the terms and conditions of the Liquidation Trust Agreement.  The Liquidation Trustee, on behalf of the Liquidation Trust, may employ, without further order of the Bankruptcy Court, professionals (including professionals previously employed by the Debtors) to assist in carrying out its duties under the Liquidation Trust Agreement and may compensate and reimburse the expenses of these professionals based upon the nature of the work performed by such professional, without further order of the Bankruptcy Court, subject to any limitations and procedures established by the Liquidation Trust Agreement.

7.    Indemnification

The Liquidation Trust Agreement may include reasonable and customary indemnification provisions for the benefit of the Liquidation Trustee and/or other parties. Any such indemnification shall be the sole responsibility of the Liquidation Trust and payable solely from the Liquidation Trust Assets.

8.    Tax Treatment

The Liquidation Trust is intended to be treated for U.S. federal income tax purposes in part as a liquidating trust described in Treasury Regulation § 301.7701-4(d) and in part as one or more Disputed Claims reserves treated as disputed ownership funds described in Treasury Regulation § 1.468B-9 (each of which will be taxable as a "qualified settlement fund" if all assets of the Disputed Claims reserve are passive assets for U.S. federal income tax purposes).  For U.S. federal income tax purposes, the transfer of assets by the Debtors to the Liquidation Trust will be treated in part as the transfer of assets by the Debtors to the Holders of Allowed General Unsecured Claims , subject to any liabilities of the Debtors or the Liquidation Trust payable from the proceeds of such assets, followed by the deemed transfer of such assets (subject to such liabilities) by such Holders to the Liquidation Trust in exchange for interests in the trust, and in part as the transfer of assets by the Debtors to one more Disputed Claims reserves.  The Holders of Allowed General

Unsecured Claims will be treated for U.S. federal income tax purposes as the grantors and deemed owners of their respective shares of the assets in the Liquidation Trust (subject to such liabilities), depending on their rights to distributions under the Plan. As grantors and deemed owners of such assets, the Holders of Allowed General Unsecured Claims will be required to include in income their respective shares of the income, deductions, gains, losses, and credits attributable to such assets. The value of such assets will be determined by the Liquidation Trustee as the trustee of the Liquidation Trust, and such values will be used consistently by all parties for all U.S. federal (and applicable state and local) income tax purposes. Among other things, the Holders of Allowed General Unsecured Claims will be required to use the values assigned to such assets by the Liquidation Trustee for all U.S. federal (and applicable state and local) income tax purposes, including the recognition of income, deduction, gain or loss with respect to their Allowed Claims and any gain or loss recognized on the subsequent disposition of an asset in which the Holder holds an interest. The Liquidation Trust Agreement will contain certain provisions intended to comply with IRS guidance for trusts treated as liquidating trusts. The Liquidation Trust Agreement will (i) require that the Liquidation Trust terminate no later than three years after the Effective Date; *provided, however*, if the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the Liquidation Trust to complete its liquidating purpose, the term of the Liquidation Trust may be extended one or more times for a finite period not to exceed six months (and such extensions shall not exceed a total of four extensions unless the Liquidation Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the liquidating trust as a grantor trust for U.S. federal income tax purposes, (ii) limit the Liquidation Trustee's investment powers, (iii) limit the business operations carried on by the Liquidation Trust to activities reasonably necessary to and consistent with the Liquidation Trust's purpose, (iv) prohibit the Liquidation Trust from receiving or retaining Cash or Digital Assets in excess of an amount reasonably necessary to meet Claims and contingent liabilities or to maintain the value of the trust assets during liquidation and (v) distribute at least annually to the Holders of Allowed General Unsecured Claims the Liquidation Trust's net income and the net proceeds from the sale of Liquidation Trust Assets in excess of an amount reasonably necessary to meet Claims and contingent liabilities (including Disputed Claims) and to maintain the value of the Liquidation Trust Assets. Liquidation Trust Assets reserved for Holders of Disputed Claims will be treated as one or more Disputed Claims reserves for U.S. federal income tax purposes, which will be subject to an entity-level tax on some or all of their net income or gain. No Holder of a Claim will be treated as the grantor or deemed owner of an asset reserved for Disputed Claims until such Holder receives or is allocated an interest in such asset. The Liquidation Trustee will file all tax returns on a basis consistent with the treatment of the Liquidation Trust in part as a liquidating trust (and grantor trust pursuant to Treasury Regulation § 1.671-1(a)) and in part as one or more Disputed Claims reserves taxed as disputed ownership funds governed by Treasury Regulation § 1.468B-9 (each of which will be taxable as "qualified settlement fund" if all assets of the Disputed Claims reserve are passive assets for U.S. federal income tax purposes), and will pay all taxes owed from Liquidation Trust Assets.

9.    Settlement of Claims

Except as otherwise provided in the Plan or the Liquidation Trust Agreement, on and after the Effective Date, the Liquidation Trustee may compromise or settle any Claims (other than any General Unsecured Claims) related to the Liquidation Trust Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules

and may pay the charges that it incurs on or after the Effective Date for Liquidation Trust Expenses, professionals' fees, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

10.   Sales of Assets by the Liquidation Trust

The Liquidation Trustee may conduct any sales or liquidations of non-Cash Liquidation Trust Assets on any terms it deems reasonable, without further order of the Bankruptcy Court. Upon the sale, liquidation, transfer, or other disposition of the Liquidation Trust Assets by the Liquidation Trustee, the Liquidation Trustee shall deposit the proceeds of all such sales, liquidations, transfers, or dispositions into one or more of the Liquidation Trust Accounts.

11.   Abandonment of Assets by Liquidation Trust

The Liquidation Trustee may abandon any Liquidation Trust Assets which the Liquidation Trustee determines in his, her, or its reasonable discretion to be of de minimis value or burdensome to the Liquidation Trust, including any pending adversary proceeding or other legal action commenced or commenceable by the Debtor prior to the Effective Date.

B.   *GUC Trust*

1.   GUC Trust Generally

On or prior to the Effective Date, the GUC Trust shall be established in accordance with the GUC Trust Agreement for the purpose of distributing the GUC Trust Assets, resolving all Disputed Claims to the extent related to the GUC Trust Assets, making all distributions of the proceeds of the GUC Trust Assets to Holders of Allowed General Unsecured Claims in accordance with the terms of the Plan and otherwise implementing the Plan.  Subject to and to the extent set forth in the Plan, the Confirmation Order, the GUC Trust Agreement, or any other order of the Bankruptcy Court entered in connection therewith, the GUC Trust shall be empowered to: (a) perform all actions and execute all agreements, instruments, and other documents necessary to implement the Plan; (b) establish, maintain, and administer the GUC Trust Accounts, which shall be segregated to the extent appropriate in accordance with the Plan as it relates to General Unsecured Claims; (c) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, and protect, as applicable, the GUC Trust Assets (directly or through its professionals or a Disbursing Agent), in accordance with the Plan; (d) subject to the GUC Trust Agreement and the Plan, review, reconcile, settle, or object to all General Unsecured Claims that are Disputed Claims as of the Effective Date pursuant to the procedures for allowing Claims prescribed in the Plan; (e) calculate and make distributions of the proceeds of the GUC Trust Assets to Holders of Allowed General Unsecured Claims in accordance with the terms of the Plan and otherwise implementing the Plan; (f) retain, compensate, and employ professionals to represent the GUC Trust; (g) file, to the extent reasonably feasible and subject to the GUC Trust Agreement, appropriate tax returns on behalf of the GUC Trust and pay taxes or other obligations arising in connection therewith; (h) exercise such other powers as may be vested in the GUC Trust under the GUC Trust Agreement and the Plan, or as are deemed by the GUC Trust Trustee to be necessary and proper to implement the provisions of the Plan and the GUC Trust Agreement; and (i) terminate the GUC Trust in accordance with the terms of the GUC Trust Agreement. For the

avoidance of doubt, the GUC Trust shall have no authority to pursue any Claims or Causes of Action against Released Parties or Exculpated Parties pursuant to Article VIII of the Plan.

Notwithstanding anything to the contrary in this Article IV.B, the GUC Trust's primary purpose is to reconcile General Unsecured Claims and distribute the GUC Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the GUC Trust's purpose and reasonably necessary to conserve and protect the GUC Trust Assets and provide for the orderly liquidation and distribution thereof. Accordingly, the GUC Trust Trustee shall, in an orderly manner, liquidate the GUC Trust Assets and make timely distributions pursuant to the Plan, and not unduly prolong the duration of the GUC Trust.

2.      Funding of and Transfer of Assets into the GUC Trust

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors shall transfer the GUC Trust Assets to the GUC Trust, and all such assets shall vest in the GUC Trust on such date, to be administered by the GUC Trust Trustee in accordance with the Plan and the GUC Trust Agreement. Except as set forth in the Plan, the GUC Trust Assets shall be transferred to the GUC Trust free and clear of all Claims, Liens, and encumbrances to the fullest extent provided by section 363 or 1123 of the Bankruptcy Code.

The act of transferring the GUC Trust Assets, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the GUC Trust as if the asset or right was still held by the Debtors.

The GUC Trust Trustee shall have the authority to create additional sub-accounts in the GUC Trust Accounts, which may have a separate legal existence, but which shall be considered sub-accounts of the GUC Trust. This shall include the creation of sub-accounts to accomplish the purposes of the GUC Trust.

3.      GUC Trust Trustee

Solely with respect to the GUC Trust Assets and the administration of General Unsecured Claims, the GUC Trust Trustee shall be the successor to and representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The powers, rights, and responsibilities of the GUC Trust Trustee shall be specified in the GUC Trust Agreement and shall include the authority and responsibility to fulfill the items identified in the Plan. Other rights and duties of the GUC Trust Trustee and the GUC Trust Beneficiaries shall be as set forth in the GUC Trust Agreement.

The GUC Trust Trustee shall be selected by the Debtors following consultation with the Committee.

4.      GUC Trust Agreement

The GUC Trust Agreement generally will provide for, among other things: (i) the payment of reasonable and documented compensation to the GUC Trust Trustee; (ii) the payment of other expenses of the GUC Trust; (iii) the retention of counsel, accountants, financial advisors, or other

professionals and the payment of their compensation; (iv) the investment of Cash by the GUC Trust Trustee within certain limitations; (v) the preparation and filing of appropriate tax returns and other reports on behalf of the GUC Trust and the payment of taxes or other obligations owed by the GUC Trust, if any; (vi) the orderly liquidation of the GUC Trust Assets; and (vii) any reconciliation, administration, objection, resolution, and distribution on account of General Unsecured Claims.

Additional terms of the GUC Trust and obligations of the GUC Trust Trustee, if any, will be addressed in the Plan Supplement or the GUC Trust Agreement, as applicable.

5.      Reports to Be Filed by the GUC Trust Trustee

The GUC Trust Trustee, on behalf of the GUC Trust, shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the GUC Trust Agreement), no later than thirty-one (31) days after June 30 and December 31 of each calendar year, a semi-annual report regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it, and other matters relating to the implementation of the Plan.

6.      Settlement of Claims

Except as otherwise provided in the Plan or the GUC Trust Agreement, on and after the Effective Date, the GUC Trust Trustee may compromise or settle any Claims related to the GUC Trust Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and may pay the charges that it incurs on or after the Effective Date for GUC Trust Expenses, professionals' fees, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

C.      *Means for Implementation if an Equitization Does Not Occur*

**If an Equitization does not occur, the following provisions in this Article IV.C of the Plan shall govern the implementation of the Plan.  For the avoidance of doubt, all provisions in this Article IV.C of the Plan shall apply only if an Equitization does not occur.**

1.      Asset Sale and Abandonment of Certain Assets

Unless otherwise specified in the Plan, all Assets, other than the GUC Trust Assets, that are not sold pursuant to the Debtors' Sales Process will be contributed to the Liquidation Trust as part of the Liquidation Trust Assets pursuant to the Plan.  The Plan shall constitute a motion to abandon such Assets to the Liquidation Trust pursuant to section 554 of the Bankruptcy Code and relinquish such abandoned Assets.  Entry of the Confirmation Order shall constitute (i) approval, pursuant to section 554 of the Bankruptcy Code, of the abandonment of such abandoned Assets and (ii) authorization to relinquish any interest the Debtors hold in such abandoned Assets.

2.        Segregated Accounts for Plan Distributions

           a.        Claims Reserve

The Claims Reserve shall be held in trust in a segregated account by the Liquidation Trustee for distributions and/or payment in accordance with the terms of Articles II and III of the Plan.  Any Cash or Digital Assets held in the Claims Reserve after all applicable distributions are made and any surplus Cash or Digital Assets in the Claims Reserve, such surplus determined by the Liquidation Trustee based on the potential amount of Administrative Expense Claims, Other Priority Claims, and Secured Claims that remain unpaid as of such date of determination, shall constitute Available Assets and be distributed pursuant to Article VI of the Plan.

           b.        Professional Fee Claims Escrow Account

The Professional Fee Reserve Amount shall be held in trust in a segregated Professional Fee Claims Escrow Account by the Liquidation Trustee for distributions or payment in accordance with the terms of Article II of the Plan.  Any Cash held in the Professional Fee Claims Escrow Account after all applicable distributions and/or payments are made shall constitute Available Assets and be distributed pursuant to Article VI of the Plan.

3.        Corporate Existence

Each of the Debtors will be subject to a Dissolution Transaction on the Effective Date, or as promptly thereafter as possible, and each Debtor will be deemed to cease to exist as of the Effective Date after the abandonment of any remaining Assets of their Estates.

4.        Dissolution Transactions

On or after the entry of the Confirmation Order, the Debtors or the Liquidation Trustee will enter into such Dissolution Transactions and will take such actions as may be necessary or appropriate to merge, dissolve, or otherwise terminate the corporate existence of the Debtors as of the Effective Date or as promptly as possible thereafter.  The actions to effect the Dissolution Transactions may include: (i) the execution and delivery of appropriate agreements or other documents of transfer, merger, consolidation, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law, as well as other terms to which these entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and having such other terms as these entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, continuance, or dissolution or similar instruments with the applicable governmental authorities; and (iv) the taking of all other actions that these entities determine to be necessary or appropriate, including making other filings or recordings that may be required by applicable law in connection with the Dissolution Transactions.

Notwithstanding the foregoing and regardless of whether the actions described above have yet been taken with respect to a particular Debtor, as of the Effective Date and upon the transfer of the assets to the Liquidation Trust under the Plan, the Debtors shall be deemed dissolved and their business operations withdrawn for all purposes without any necessity of filing any document,

taking any further action, or making any payment to any governmental authority in connection therewith.

5.      Recourse Solely to Liquidation Trust Assets

All Claims against the Debtors are deemed satisfied, waived, and released as to the Debtors in exchange for the treatment of such Claims under the Plan, and Holders of Allowed Claims (other than Holders of Allowed General Unsecured Claims) against any Debtor will have recourse solely to the assets of the Liquidation Trust for the payment of their Allowed Claims (other than Allowed General Unsecured Claims) in accordance with the terms of the Plan and the Liquidation Trust Agreement.

6.      Cancellation of Existing Securities and Agreements.

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests, and any Interests that are not represented by certificates or other instruments, shall be canceled and surrendered and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, canceled, and of no force or effect against the Debtors or the Liquidation Trust, without any further action on the part of the Debtors, the Liquidation Trust, or any other Person. Holders of or parties to such canceled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.

Notwithstanding anything to the contrary in this Article IV.C.6, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, a Debtor or its Interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Article IV.C.6 shall be deemed null and void and shall be of no force and effect.

7.      Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date concurrently and consistent with the treatment provided for Claims and Interests in Article III, all mortgages, deeds of trust, Liens against, security interests in, or other encumbrances or interests in property of any Estate shall be deemed fully released and discharged.

8.      Corporate Governance, Directors and Officers.

a.      Certificates of Incorporation and Bylaws

Consistent with the Plan, each of the Debtors will cease to exist, and all existing certificates of incorporation and by-laws will be canceled, effective as of the Effective Date; accordingly, no new certificates of incorporation and by-laws will be necessary for any Debtors.

b.      Directors and Officers

As of the Effective Date, the term of the current members of the board of directors of each Debtor shall expire automatically and each person serving as a director of a Debtor shall be removed and shall be deemed to have resigned and cease to serve automatically.  Consistent with the Plan, each of the Debtors will cease to exist effective as of the Effective Date and, thus, no individuals will serve as directors, officers, or voting trustees after the Effective Date for any Debtors.

c.      Dissolution Transactions

The Dissolution Transactions will occur and be effective as of the date specified in the documents effectuating the applicable Dissolution Transactions or the Effective Date if no such other date is specified in such other documents, and will be authorized and approved in all respects and for all purposes without any requirement of further action by the Debtors or any other Person.

9.      Indemnification and Insurance

Prior to the Effective Date, the Debtors and the Successful Bidder(s) shall determine at such time whether the Indemnification Obligations shall be assumed, assumed and assigned, or rejected by the Debtors under the Plan.

10.     Preservation of Causes of Action

Except as provided in the Plan, or in any contract, instrument, release, or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trustee will retain and may enforce any claims, demands, rights, and causes of action that any Estate may hold against any Person to the extent not satisfied, settled, and released under the Plan or otherwise, including the Retained Causes of Action; *provided* that, for the avoidance of doubt, the Liquidation Trustee will not retain any Avoidance Actions or other GUC Trust Assets, or any Causes of Action that are assigned to a buyer in connection with the Asset Sale.  The Liquidation Trustee may pursue any such retained claims, demands, rights, or causes of action, as appropriate, in accordance with the best interests of the Liquidation Trust Beneficiaries.  Except to the extent any such claim is specifically satisfied, settled, and released herein, in accordance with and subject to any applicable law, the Debtor's inclusion or failure to specifically identify any Retained Causes of Action in the Plan Supplement shall not be deemed an admission, denial, or waiver of any claims, demands, rights, or causes of action that the Debtor or Estate may hold against any Person.  Except to the extent any such claim is specifically satisfied, settled, and released herein, the Debtors intend to preserve those claims, demands, rights, or causes of action designated as Retained Causes of Action.  For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.C.10 include any claim or Cause of Action with respect to, or against, an Exculpated Party that is exculpated under the Plan or a Released Party that is released under the Plan.

11.     Substitution in Pending Legal Actions

On the Effective Date, the Liquidation Trust or the Liquidation Trustee, as applicable, shall be deemed to be substituted as the party to any litigation in which the Debtors are a party, including

(but not limited to) (i) pending contested matters or adversary proceedings in the Bankruptcy Court, (ii) any appeals of orders of the Bankruptcy Court, and (iii) any state court or federal or state administrative proceedings pending as of the Petition Date. The Liquidation Trustee and its professionals are not required to, but may, take such steps as are appropriate to provide notice of such substitution.

12.      Effectuating Documents; Further Transactions

The Debtors (prior to the Effective Date) and the Liquidation Trustee (on or after the Effective Date) are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and evidence the terms and conditions of the Plan and the Dissolution Transactions, in each case, in the name of and on behalf of any Debtor or the Liquidation Trust, as applicable, without the need for any approvals, authorizations, or consents except those expressly required pursuant to the Plan.

Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment: (a) any transfer made by the Debtors to the Liquidation Trust; (b) any sales made by the Liquidation Trust to liquidate such assets in the trust and convert such assets into Cash; (c) any sales of Assets made by the Debtors under section 363 of the Bankruptcy Code, to the extent that title to the assets being sold transfers after the Confirmation Date; (d) the making or assignment of any lease or sublease; (e) any Dissolution Transaction; (f) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to the Plan.

D.      *Means for Implementation if an Equitization Occurs*

**If an Equitization occurs, the following provisions in this Article IV.D of the Plan shall govern the implementation of the Plan.  For the avoidance of doubt, all provisions in this Article IV.D of the Plan shall apply only if an Equitization occurs.**

1.      Restructuring

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall undertake the Restructuring, including: (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, sale transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the rejection, assumption, or assumption and assignment, as

applicable, of Executory Contracts and Unexpired Leases; (4) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (5) the issuance of securities, including the Reorganized GGH Interests, which shall be authorized and approved in all respects in each case without further action being required under applicable law, regulation, order, or rule; (6) the execution and delivery of Definitive Documents not otherwise included in the foregoing, if any; (7) the creation and funding of the GUC Trust; and (8) all other actions that the Debtors or the Reorganized Debtors determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.  The Confirmation Order shall and shall be deemed, pursuant to sections 363, 365 1123, and 1145(a) of the Bankruptcy Code, to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring.

       2.     <u>Segregated Accounts for Plan Distributions</u>

       a.     Claims Reserve

The Claims Reserve shall be held in trust in a segregated account by the Reorganized Debtors for distributions and/or payment in accordance with the terms of Articles II and III of the Plan.  The Reorganized Debtors shall be entitled to retain any Cash or Digital Assets held in the Claims Reserve after all applicable distributions are made and any surplus Cash or Digital Assets in the Claims Reserve, such surplus determined by the Reorganized Debtors based on the potential amount of Administrative Expense Claims, Other Priority Claims, and Secured Claims that remain unpaid as of such date of determination.

       b.     Professional Fee Claims Escrow Account

The Professional Fee Reserve Amount shall be held in trust in a segregated Professional Fee Claims Escrow Account by the Reorganized Debtors for distributions or payment in accordance with the terms of Article II of the Plan.  The Reorganized Debtors shall be entitled to any Cash held in the Professional Fee Claims Escrow Account after all applicable distributions and/or payments are made.

       3.     <u>Sources of Consideration for Plan Distributions</u>

On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall make all distributions required to be made under the Plan, including funding the GUC Trust, the Claims Reserve, and the Professional Fee Escrow Account, using Cash and Digital Assets on hand as of the Effective Date, including Cash from operations.  All remaining Cash and Digital Assets on hand as of the Effective Date, after payment of all distributions required to be made on the Effective Date, but excluding the Cash and Digital Assets (as applicable) funded into the Claims Reserve and the Professional Fee Escrow Account, shall be retained by or transferred to, as applicable, the Reorganized Debtors.  Cash or Digital Asset payments to be made pursuant to the Plan will be made by the Debtors or the Reorganized Debtors, as applicable.  The Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from

such transfers may be accounted for and/or settled in accordance with the Debtors' historical intercompany account settlement practices and any such action will not violate the terms of the Plan.

### 4. Issuance and Distribution of Reorganized GGH Interests

On the Effective Date, Reorganized GGH shall be authorized to and shall issue the Reorganized GGH Interests and any other Securities, if any, offered, issued, or distributed in accordance with the terms of the Plan without the need for any further corporate action and without the need for any further action by Holders of any Claims. All of the Reorganized GGH Interests or Securities, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of the Reorganized GGH Interests or Securities under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

### 5. Management Incentive Plan

On the Effective Date, a portion of the Reorganized GGH Interests shall be reserved for the issuance by the New Board of stock, warrants, options, or other Equity Securities in connection with the MIP, and issuances of the Reorganized GGH Interests in respect thereof will dilute the Reorganized GGH Interests issued on the Effective Date. The remaining terms of the MIP shall be determined by the New Board.

### 6. Corporate Existence

Except as otherwise provided in the Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, including, with respect to Reorganized GGH, pursuant to the New Governance Documents.

### 7. Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date: all Assets in each Estate, including all Causes of Action, and any Assets acquired by any of the Debtors, shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances; *provided* that the foregoing vesting of Assets shall not apply to (a) any Assets sold pursuant to the Sales Process prior to the Effective Date, which Assets will vest in the applicable Successful Bidder(s) and (b) any GUC Trust Assets, which Assets will vest in the GUC Trust on the Effective Date or as soon as reasonably practicable thereafter. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Except as otherwise provided for in the Plan, to the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary to cancel and/or extinguish such Liens and/or security interests.

After the Effective Date, the Reorganized Debtors may present Bankruptcy Court order(s) or assignment(s) suitable for filing in the records of every county or governmental agency where the property vested in accordance with the foregoing paragraph is or was located, which provide that such property is conveyed to and vested in the Reorganized Debtors. The Bankruptcy Court order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred, assigned, and/or vested free and clear of. The Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished and no notice, other than by the Plan, shall be given prior to the presentation of such Bankruptcy Court order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any of the property vested in accordance with the foregoing paragraph shall be conclusively deemed to have consented to the transfer, assignment, and vesting of such property to or in the Reorganized Debtors free and clear of all Liens, Claims, charges, or other encumbrances by failing to object to confirmation of the Plan, except as otherwise provided in the Plan. Notwithstanding any of the foregoing in this Article IV.D.6 of the Plan, no GUC Trust Assets shall vest in the Reorganized Debtors.

8.     Cancellation of Existing Securities and Agreements

On the Effective Date, all Interests shall be cancelled, released, discharged, and extinguished, and the Reorganized GGH Interests shall be issued pursuant to the Plan.  Except as otherwise provided in the Plan, on the Effective Date: (a) all Interests, and each certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest shall be cancelled or extinguished and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of, or Claims against or Interests in, the Debtors shall be released and discharged; *provided* that, notwithstanding the releases set forth in Article VIII of the Plan, Confirmation, or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of enabling Holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided herein; *provided*, *further*, absent the consent of the Debtors, nothing in this section shall effectuate a cancellation of any Reorganized GGH Interests, Intercompany Interests, or Intercompany Claims.

Notwithstanding anything to the contrary in this Article IV.D.7, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, a Debtor or its Interests, as

a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Article IV.D.7 shall be deemed null and void and shall be of no force and effect. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of a Debtor or any of its counterparties under any Executory Contract or Unexpired Lease to the extent such executory contract or unexpired lease has been assumed by such Debtor or Reorganized Debtor, as applicable, pursuant to the Plan or a Final Order of the Bankruptcy Court.

9.   Corporate Action

Upon the Effective Date, all actions (whether to occur before, on, or after the Effective Date) contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (1) the issuance of the Reorganized GGH Interests; (2) appointment of the New Board and other directors and officers for Reorganized GGH and the other Reorganized Debtors; (3) implementation of the Restructuring, including the creation and funding of the GUC Trust; and (4) all other actions contemplated by the Plan. Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of Reorganized GGH and the other Reorganized Debtors, and any corporate action required by the Debtors, Reorganized GGH, or the other Reorganized Debtors in connection with the Plan (including any items listed in the first sentence of this paragraph) shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security Holders, directors, managers, or officers of the Debtors, Reorganized GGH, or the other Reorganized Debtors, as applicable. On or (as applicable) before the Effective Date, the appropriate directors, managers, officers, or other authorized persons of the Debtors, Reorganized GGH, or the other Reorganized Debtors shall be authorized and empowered to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the transactions contemplated by the Plan) in the name of and on behalf of Reorganized GGH and the other Reorganized Debtors to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.D.8 of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

10.   New Governance Documents

To the extent required under the Plan or applicable non-bankruptcy law, Reorganized GGH and the other Reorganized Debtors, as applicable, will, on or as soon as practicable after the Effective Date, file their respective New Governance Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation. To the extent required by section 1123(a)(6) of the Bankruptcy Code, the New Governance Documents of the Reorganized Debtors will prohibit the issuance of non-voting equity securities. After the Effective Date, Reorganized GGH and the other Reorganized Debtors, as applicable, may amend and restate their respective New Governance Documents and other constituent documents, as permitted by the laws of their respective states, provinces, or countries of organization and their respective New Governance Documents.

On the Effective Date, the New Governance Documents, substantially in the forms set forth in the Plan Supplement, shall be deemed to be valid, binding, and enforceable in accordance with their terms and provisions.

11.    <u>Directors and Officers of the Reorganized Debtors</u>

As of the Effective Date, the term of the current members of the board of directors, board of managers, or other governing body of the Debtors shall expire automatically and each person serving as a director or manager of a Debtor shall be removed and shall be deemed to have resigned and cease to serve automatically, and the New Board and the officers of each of the Reorganized Debtors shall be appointed in accordance with the Plan, New Governance Documents, and other constituent documents of each Reorganized Debtor.  Additionally, each Person serving as an officer of a Debtor shall be removed and cease to serve automatically as of the Effective Date, and the initial officers of each Reorganized Debtor will be appointed pursuant to the Plan and the New Governance Documents.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will, to the extent known, disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial New Boards, as well as those Persons that will serve as an officer of Reorganized GGH or any of the other Reorganized Debtors. If any such director or officer is an "insider" as defined in section 101(31) of the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed to the extent required under the Bankruptcy Code. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Governance Documents and other constituent documents of Reorganized GGH and each of the other Reorganized Debtors.

12.    <u>Effectuating Documents; Further Transactions</u>

On and after the Effective Date, the Reorganized Debtors, the Reorganized Debtors' officers, and the members of the New Boards are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the Reorganized GGH Interests, in the name of and on behalf of Reorganized GGH or the other Reorganized Debtors, without the need for any approvals, authorization, or consents except those expressly required pursuant to the Plan.

13.    <u>Exemption from Certain Taxes and Fees</u>

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, (a) any issuance, transfer, or exchange of a Security (including of the Reorganized GGH Interests), (b) any creation of any Lien, mortgage, deed of trust, or other security interest, or (c) any transfer of property, in each case, pursuant to, in contemplation of, or in connection with, the Plan, including the transfer of any Assets to the GUC Trust, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any instruments of transfer or other relevant documents without the payment of any such tax, recordation fee, or governmental assessment.

14.   <u>Exemption from Registration Requirements</u>

The offering, issuance, and distribution of the Reorganized GGH Interests and any other Securities pursuant to Article III of the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without any further act or action by any Entity, from registration under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities.

The Reorganized GGH Interests and other Securities, if any, offered, issued, or distributed pursuant to section 1145 of the Bankruptcy Code (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any Holder thereof that (i) is not an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, (iii) has not acquired the Reorganized GGH Interests or Securities from an "affiliate" within one year of such transfer, and (iv) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code; *provided* that the foregoing clause (b) is subject to (x) compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (y) the restrictions, if any, on the transferability of such securities or instruments, including any restrictions on the transferability under the terms of the New Governance Documents; and (z) any other applicable regulatory approval. Under Rule 144(a)(1), an "affiliate" of Reorganized GGH is a person that directly or indirectly controls, or is controlled by, or is under common control with Reorganized GGH. If any recipients of Reorganized GGH Interests are Affiliates of Reorganized GGH, such recipients will receive restricted Reorganized GGH Interests or Securities that are subject to the non-holding period requirements of Rule 144, including volume limitations, current public information requirement, manner of sale requirements, and filing requirements.

The offer and sale of Equity Securities to directors, officers, and employees of the Reorganized Debtors pursuant to the MIP shall be effected without registration under section 5 of the Securities Act, and without registration under any applicable state securities or "blue sky" law, in reliance upon available exemptions from such registration requirements afforded by section 4(a)(2) of the Securities Act and Rule 506 of Regulation D and/or Rule 701 promulgated thereunder.

Notwithstanding anything to the contrary in the Plan, no Person shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including whether the Reorganized GGH Interests are exempt from registration and/or eligible for book-entry delivery, settlement, and depository services.

15.   <u>Preservation of Causes of Action</u>

In accordance with section 1123(b)(3) of the Bankruptcy Code, but subject in all respects to Article VIII, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. Notwithstanding the foregoing or anything to the contrary herein, all rights in any Avoidance Actions shall vest in the GUC Trust as of the Effective Date. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, including pursuant to Article VIII of the Plan, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.D.14 include any claim or Cause of Action with respect to, or against, a Released Party.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

16.     Director and Officer Liability Insurance

Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all D&O Liability Insurance Policies (including tail coverage liability insurance) pursuant to section 365(a) of the Bankruptcy Code, to the extent they are Executory Contracts. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of each of the D&O Liability Insurance Policies, to the extent they are Executory Contracts. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be Filed, and shall survive the Effective Date.

17.     Transfer of Control of Money Transmitter Licenses and Other Related Approvals

The Plan and the Confirmation Order shall provide the Debtors or the Reorganized Debtors, as applicable, with the requisite authority to proceed with any Transfer of Control

required under the Money Transmitter Licenses and any other requirements for similarly situated state and/or federal regulatory approvals.

E.    *The DCG Settlement*

The treatment of the General Unsecured Claimsunder the Plan, together with the other terms and conditions set forth in the Plan and the Confirmation Order (including the releases set forth herein and in the Confirmation Order), reflects the proposed compromise and settlement pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code of all claims, causes of action, controversies, and disputes against any of the DCG Parties that relate to these Chapter 11 Cases.   The DCG Settlement includes the following material terms, conditions, and transactions:

1.    Notice of the DCG Settlement Procedures

The DCG Settlement Procedures are set forth in the Class 3 Election Notice and the Class 4 Election Notice.  DCG shall send the Class 3 Election Notice to the Holders of Institutional Unsecured Claims and Gemini shall send the Class 4 Election Notice to the Holders of Gemini Lender Unsecured Claims.

2.    The DCG Contribution; Releases; Binding Effect

The DCG Election Procedures provide, among other things, that all Holders of Allowed General Unsecured Claims are eligible to receive their Pro Rata share of the DCG Contribution provided that they elect to opt into the release and injunction provisions set forth in the Class 3 Election Notice or Class 4 Election Notice (as applicable) and below in this Article IV.E.  The DCG Settlement Procedures provide that any payment obligation of the DCG Parties to Holders on account of their General Unsecured Claims shall be governed solely by the Plan, and that DCG's payment of the DCG Contribution constitutes the full and final satisfaction of the amount each Holder is owed by the DCG Parties on account of such Holder's General Unsecured Claims.

**Except as otherwise set forth in the Confirmation Order or the DCG Settlement Procedures, effective immediately upon the occurrence of the Effective Date, each Holder of General Unsecured Claims who elects to receive the DCG Consideration, and opts into the releases set forth in the DCG Election Notice, shall be deemed to release, remise, and forever discharge the DCG Parties of and from any and all debts, losses, demands, actions, Claims, Causes of Action, suits, accounts, covenants, contracts, agreements, claims, counterclaims, controversies, disputes, obligations, judgments, rights, damages, costs, losses, expenses, liens, or liabilities of any and every nature or description whatsoever, both at law or in equity, whether asserted or unasserted, express or implied, known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, that arose at any time before the Effective Date and arise out of or directly relate to the General Unsecured Claims of such Holder, or the transactions underlying or that otherwise gave rise to such General Unsecured Claims.**

**Upon the occurrence of the Effective Date, except as otherwise set forth in the DCG Settlement Procedures, or to the extent that the Bankruptcy Court orders otherwise, the Holders of General Unsecured Claims and their respective affiliates and representatives**

**shall be forever barred and enjoined from interfering with the implementation of this Plan or the DCG Settlement or taking any action against the DCG Parties or their property solely with respect to the DCG Settlement, any Claim or Cause of Action in any way related to the General Unsecured Claims, or the specific transactions underlying, or that otherwise gave rise to, the General Unsecured Claims or any portion thereof; *provided, however*, that nothing herein releases or waives the Debtors', the Reorganized Debtors', or the DCG Parties' obligations under the DCG Settlement.**

F.      *The Gemini Settlement*

The treatment of the Gemini Lender Unsecured Claims under the Plan, together with the other terms and conditions set forth in the Plan and the Confirmation Order (including the releases set forth herein and in the Confirmation Order), reflects the proposed compromise and settlement pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code of all claims, causes of action, controversies, and disputes against any of the Gemini Parties that relate to these Chapter 11 Cases.   The Gemini Settlement includes the following material terms, conditions, and transactions:

1.      Notice of the Gemini Settlement Procedures

The Gemini Settlement Procedures are set forth in the Class 4 Election Notice.   Gemini shall send the Class 4 Election Notice to the Holders of Gemini Lender Unsecured Claims.

2.      The Gemini Contribution; Releases; Binding Effect

The Gemini Settlement Procedures provide, among other things, that all Holders of Gemini Lender Unsecured Claims are eligible to receive their Pro Rata share of the Gemini Contribution provided that they elect to opt into the release and injunction provisions set forth in the Class 4 Election Notice and below in this Article IV.F.   The Gemini Settlement Procedures provide that any payment obligation of the Gemini Parties to Holders on account of their Gemini Lender Unsecured Claims shall be governed solely by the Plan, and that Gemini's payment of the Gemini Contribution constitutes the full and final satisfaction of the amount each Holder is owed by the Gemini Parties on account of such Holder's Gemini Lender Unsecured Claims.

**Except as otherwise set forth in the Confirmation Order or the Gemini Settlement Procedures, effective immediately upon the occurrence of the Effective Date, each Holder of Gemini Lender Unsecured Claims who elects to receive the Gemini Consideration, and opts into the releases set forth in the Gemini Settlement Procedures, shall be deemed to release, remise, and forever discharge the Gemini Parties of and from any and all debts, losses, demands, actions, Claims, Causes of Action, suits, accounts, covenants, contracts, agreements, claims, counterclaims, controversies, disputes, obligations, judgments, rights, damages, costs, losses, expenses, liens, or liabilities of any and every nature or description whatsoever, both at law or in equity, whether asserted or unasserted, express or implied, known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, that arose at any time before the Effective Date and arise out of or directly related to the Gemini Lender Unsecured Claims or the Gemini Earn Program.**

**Upon the occurrence of the Effective Date, except as otherwise set forth in the Gemini Settlement Procedures, or to the extent that the Bankruptcy Court orders otherwise, the Holders of Gemini Lender Unsecured Claims and their respective affiliates and representatives shall be forever barred and enjoined from interfering with the implementation of this Plan or the Gemini Settlement or taking any action against the Gemini Parties or their property solely with respect to the Gemini Settlement, any Claim or Cause of Action in any way related to the Gemini Lender Unsecured Claims, or the specific transactions underlying, or that otherwise gave rise to, the Gemini Lender Unsecured Claims or any portion thereof; *provided, however*, that nothing herein releases or waives the Debtors', the Reorganized Debtors', or the Gemini Parties' obligations under the Gemini Settlement.**

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, whether or not an Equitization has occurred, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to assume, assume and assign, or reject Executory Contracts and Unexpired Leases, and all Executory Contracts or Unexpired Leases shall be rejected as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (i) is designated on a schedule of assumed contracts by a Successful Bidder; (ii) is designated on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement; (iii) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court; (iv) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (v) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date; or (vi) is subject to a motion to reject pursuant to which the requested effective date of such rejection is after the Effective Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's order approving the assumptions, assumptions and assignments, or rejections, as applicable, of Executory Contracts or Unexpired Leases as set forth in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court.  Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases at any time prior to the Effective Date on no less than seven days' notice to the applicable non-Debtor counterparties.

Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective

Date. Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court in accordance with the Bar Date Order. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Liquidation Trust, the GUC Trust, the Estates, or their property (as applicable), without the need for any objection by the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable), or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B–D of the Plan.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

***If an Equitization occurs***, any monetary defaults under an Executory Contract or Unexpired Lease, as reflected on the applicable Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the proposed cure amount (if any) in Cash by the Debtors or the Reorganized Debtors, as applicable, on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. At least fourteen (14) days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption and proposed cure amounts to the applicable third parties. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount paid or proposed to be paid by the Debtors or the Reorganized Debtors to such counterparty must be filed with the Bankruptcy Court and served on and actually received by the Debtors at least seven (7) days before the Confirmation Hearing. **Any counterparty that fails to timely object to the proposed assumption or proposed cure amount shall be deemed to have assented to such assumption and cure amount, and any such objection shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**

Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the amount set forth in the applicable Cure Notice or, if the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is determined by a Final Order to be greater than the applicable amount set forth in the Cure Notice,

the amount of such Allowed Cure Claim; *provided*, *however*, that following entry of a Final Order resolving any such dispute, the applicable Debtor or Reorganized Debtor shall have the right to reject any Executory Contract or Unexpired Lease within thirty (30) days of such resolution; *provided further, however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure Claim despite the failure of the relevant counterparty to file such request for payment of such Cure Claim.  The Reorganized Debtors also may settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.

If there is any dispute regarding any Cure Claim, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the Cure Claim shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  Notwithstanding the foregoing, to the extent the dispute relates solely to any Cure Claims, the applicable Debtor may assume the Executory Contract or Unexpired Lease prior to the resolution of any such dispute; *provided*, *however*, that the Debtor reserves Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure Claim by the contract counterparty; *provided further, however*, that following entry of a Final Order resolving any such dispute, the applicable Debtor or Reorganized Debtor shall have the right to reject any Executory Contract or Unexpired Lease within thirty (30) days of such resolution.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy or insolvency-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Indemnification Obligations*

The Indemnification Obligations shall not be discharged or Impaired by Confirmation of the Plan, and the Indemnification Obligations shall be deemed and treated as Executory Contracts assumed by the Debtors under the Plan, and shall continue as obligations of the Reorganized Debtors; *provided*, *however*, that the Reorganized Debtors shall not indemnify directors or officers of the Debtors for any Claims or Causes of Action arising out of or relating to any act or omission that constitutes knowing and intentional fraud, gross negligence, or willful misconduct.

E.      *Insurance Policies*

1.      If an Equitization Does Not Occur

***If an Equitization does not occur***, then to the extent that any of the Debtors' insurance policies constitute Executory Contracts, such insurance policies (including all D&O Liability

Insurance Policies) and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan and shall be assumed by the Liquidation Trust on the Effective Date, and all other insurance policies shall vest in the Liquidation Trust.

2.    <u>If an Equitization Occurs</u>

***If an Equitization occurs***, then to the extent any of the Debtors' insurance policies constitute Executory Contracts, such insurance policies (including all D&O Liability Insurance Policies) and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan and shall be assumed by the respective Reorganized Debtors on the Effective Date. All other insurance policies shall vest in the Reorganized Debtors.

F.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed or assumed and assigned shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.    *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor or the Liquidation Trustee or the GUC Trust Trustee (as applicable) has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, or, after the Effective Date, the Reorganized Debtors or the Liquidation Trustee (as applicable) shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.    *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim, including any portion of a Claim that is an Allowed Claim notwithstanding that other portions of such Claim are a Disputed Claim, shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.    *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors or the Liquidation Trust (as applicable).  For the avoidance of doubt, ***if an Equitization does not occur***, then notwithstanding anything to the contrary in the Plan, all distributions shall be made by the Liquidation Trustee or the GUC Trust Trustee (as applicable) pursuant to the terms of the Plan, the Confirmation Order, the Liquidation Trust Agreement, and the GUC Trust Agreement

a.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

b.    Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date, and any reasonable and documented compensation and expense reimbursement claims (including reasonable and documented attorney fees and expenses) made by the Disbursing Agent, shall be

paid in Cash by the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable).

        c.      No Liability

Except on account of gross negligence, fraud, or willful misconduct, the Disbursing Agent shall have no (a) liability to any party for actions taken in accordance with the Plan or in reliance upon information provided to it in accordance with the Plan or (b) obligation or liability to any party who does not hold a Claim against the Debtors as of the Distribution Record Date or any other date on which a distribution is made or who does not otherwise comply with the terms of the Plan.

C.    *Delivery of Distributions and Undeliverable or Unclaimed Property*

    1.    <u>Delivery of Distributions</u>

        a.      Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims and Interests maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims and Interests. The Disbursing Agent shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

        b.      Delivery of Distributions in General

Except as otherwise provided in the Plan (including in the next paragraph), the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable).

        c.      Delivery of Distributions on Gemini Lender Unsecured Claims.

Gemini shall be deemed to be the Holder of all Gemini Lender Claims for purposes of distributions to be made hereunder, and all distributions on account of such Allowed Claims shall be made to Gemini and held in trust in a segregated account for the benefit of the Holders of Allowed Gemini Lender Unsecured Claims.  As soon as practicable following compliance with the requirements set forth in Article VI of the Plan, Gemini shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of Allowed Gemini Lender Unsecured Claims, subject to any modifications to such distributions in accordance with the terms of the Plan.

        d.      Minimum Distributions

No Distribution shall be made by the Disbursing Agent on account of an Allowed Claim if the amount to be distributed to the Holder of such Claim on the applicable Distribution Date has an economic value of less than $250.

No fractional shares of Reorganized GGH Interests shall be distributed, no Cash shall be distributed in lieu of such fractional amounts, and such fractional amounts shall be deemed to zero.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of Reorganized GGH Interests that is not a whole number, the actual distribution of Reorganized GGH Interests shall be rounded as follows: (a) fractions of greater than one-half shall be rounded to the next higher whole number and (b) fractions of one-half or less shall be rounded to the next lower whole number with no further payment thereto. The total number of authorized Reorganized GGH Interests to be distributed to Holders may (at the Debtors' discretion) be adjusted as necessary to account for the foregoing rounding.

2.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee, as applicable, shall have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided that* such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall be redistributed Pro Rata (it being understood that, for purposes of this Article VI.C, "Pro Rata" shall be determined as if the Claim underlying such unclaimed distribution had been Disallowed) without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

D.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors, the Reorganized Debtors, the Liquidation Trustee, the Disbursing Agent, the GUC Trust Trustee, and any applicable withholding agent shall comply with all applicable tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions until receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. All Persons holding Claims against any Debtor shall be required to provide any additional information reasonably necessary for the Debtors, the Reorganized Debtors, the Liquidation Trustee, the Disbursing Agent, the GUC Trust Trustee, and any applicable withholding agent to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, including an IRS Form W-8 or W-9, as applicable, and any other applicable tax forms. The Debtors, the Reorganized Debtors, the Liquidation Trustee, the Disbursing Agent, and the GUC Trust Trustee (as applicable) reserve the right to allocate all distributions made under the Plan in a manner that complies with all other legal requirements, such as applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.  Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received

58

by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

E.      *Foreign Currency Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in government issued currency (for the avoidance of doubt, not including any Digital Assets) other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

F.      *Digital Asset Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in a Digital Asset shall be automatically deemed converted to the equivalent U.S. dollar value using the price of such Digital Asset as of [●] (prevailing Eastern time) on the Petition Date.

G.      *Surrender of Cancelled Instruments or Securities*

As a condition precedent to receiving any distribution on account of its Allowed Claim, each Holder of a Claim shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentation shall be deemed to be cancelled pursuant to Article IV of the Plan, except to the extent otherwise provided in the Plan.

H.      *Allocations*

The aggregate consideration to be distributed to each Holder of an Allowed Claim will be allocated first to the principal amount of such Allowed Claim, with any excess allocated to unpaid interest that accrued on such Allowed Claims, if any.

I.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.

J.      *Setoffs and Recoupment*

The Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) may, but shall not be required to, set off against, or recoup from, any Allowed Claim against a Debtor of any nature whatsoever that the applicable Debtor, Reorganized Debtor, Liquidation Trustee, or GUC Trust Trustee (as applicable) may have against the Holder of such

Claim, but neither the failure to do so nor the allowance of any Claim against a Debtor hereunder shall constitute a waiver or release by the applicable Debtor, Reorganized Debtor, Liquidation Trustee, or GUC Trust Trustee (as applicable) of any such Claim it may have against the Holder of such Allowed Claim.

K.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

The Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable), shall reduce in full an Allowed Claim, and such Claim shall be Disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, a Reorganized Debtor, the Liquidation Trustee, or the GUC Trust Trustee (as applicable); *provided that* the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) shall provide 21 days' notice to the Holder prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a party that is not a Debtor, a Reorganized Debtor, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the Petition Date. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.      Claims Payable by Insurers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged to the extent of any agreed upon satisfaction without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any insurers under any policies of insurance, nor shall anything contained herein

constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.   *Allowance of Claims*

On or after the Effective Date, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim immediately prior to the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim. All settlements of Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019, or otherwise shall be binding on all parties.

Unless relating to a Claim that is expressly Allowed pursuant to the Plan, all Proofs of Claim filed in these Chapter 11 Cases shall be considered objected to and Disputed without further action by the Debtors. Upon the Effective Date, all Proofs of Claim filed against the Debtors, regardless of the time of filing, and including Proofs of Claim filed after the Effective Date, shall be deemed withdrawn and expunged, other than as provided below. Notwithstanding anything in this Plan to the contrary, (1) Claims against the Debtors that result from the Debtors' rejection of an Executory Contract or Unexpired Lease, (2) Claims filed to dispute the amount of any proposed Cure pursuant to section 365 of the Bankruptcy Code, and (3) Claims that the Debtors seek to have determined by the Bankruptcy Court shall in all cases be determined by the Bankruptcy Court, if not otherwise resolved through settlement with the applicable claimant.

B.   *Claims and Interests Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable), by order of the Bankruptcy Court, shall together have the sole authority to: (1) File, withdraw, or litigate to judgment objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  In any action or proceeding to determine the existence, validity, or amount of any Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such Claim are preserved as if the Chapter 11 Cases had not been commenced.

C.      *Estimation of Claims*

Before or after the Effective Date, the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims or Interests Without Objection*

Any duplicate Claim or Interest, any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded may be adjusted or expunged on the Claims Register without the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims, which, prior to the Effective Date, may be Filed by any party, shall be Filed on or before the Claims Objection Deadline.

F.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the GUC Trust Trustee (as applicable).

**ANY CLAIM THAT HAS BEEN LISTED IN THE SCHEDULES AS DISPUTED, CONTINGENT, OR UNLIQUIDATED, AND FOR WHICH NO PROOF OF CLAIM HAS**

**BEEN TIMELY FILED, SHALL BE DEEMED DISALLOWED AND SHALL BE EXPUNGED WITHOUT FURTHER ACTION AND WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE BANKRUPTCY COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

G.      *Amendments to Claims*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

H.      *No Distributions Pending Allowance*

Notwithstanding any other provision of this Plan to the contrary, no payment or distribution of any kind or nature provided under the Plan shall be made to the extent that all or any portion of any Claim is a Disputed Claim, including if an objection to a Claim or portion thereof is Filed as set forth in Article VII, unless and until such Disputed Claim becomes an Allowed Claim; *provided* that any portion of a Claim that is an Allowed Claim shall receive the payment or distribution provided under the Plan thereon notwithstanding that any other portion of such Claim is a Disputed Claim.

I.      *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100% of such Allowed Claim.

**ARTICLE VIII.
SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, which distributions, releases, and other benefits shall be irrevocable and not subject to challenge

upon the Effective Date, the provisions of the Plan, and the distributions, releases, and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

B.      *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and the Plan Supplement, or in any contract, instrument, or other agreement or document created pursuant to the Plan and the Plan Supplement, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors or the Liquidation Trustee, as applicable), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C.      *Term of Injunctions or Stays*

Unless otherwise provided herein, the Confirmation Order, or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full

force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

D.    *Release of Liens*

**Except as otherwise specifically provided in the Plan, the Plan Supplement, or in any other contract, instrument, agreement, or document created pursuant to the Plan or Plan Supplement, on the Effective Date and concurrently with the applicable distributions or other treatment made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Liquidation Trust, the GUC Trust, or the Reorganized Debtors (as applicable), and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable).**

From and after the Effective Date, any Holder of a Secured Claim (and the applicable agents for such Holder) secured by Liens or security interests which are to be released under this Plan shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested to give effect to the Plan by the Reorganized Debtors or the Liquidation Trustee (as applicable) and to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.  To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Reorganized Debtors or the Liquidation Trustee (as applicable) that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests in accordance with the Plan, and the Reorganized Debtors or the Liquidation Trustee (as applicable) shall be entitled to make any such filings or recordings on such Holder's behalf.

E.    *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is hereby released and discharged by the Debtors, their Estates, and the Reorganized Debtors (as applicable) from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter**

arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors (as applicable), that such Person or its estate, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Reorganized Debtors, their Estates, the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the MIP, any Asset Sale, the related agreements, instruments, and other documents (including the Definitive Documents), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Sales Process, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan and the Sales Process, including the issuance or distribution of any property pursuant to the Plan and the Sales Process, the Definitive Documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.E do not release any post-Effective Date obligations of any party or Entity under the Plan, including any such obligations created in connection with the Restructuring; (ii) nothing in this Article VIII.E shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct; and (iii) nothing in this Article VIII.E shall, nor shall it be deemed to, release any Retained Causes of Action or any claims or Causes of Action against the DCG Parties or the Gemini Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to such releases.

F.      *Releases by Releasing Parties*

As of the Effective Date, each Releasing Party hereby releases and discharges each Debtor, Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, that such Releasing Party or its estate, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Reorganized Debtors, their Estates, the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the MIP, any Asset Sale, the related agreements, instruments, and other documents (including the Definitive Documents), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Sales Process, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan and the Sales Process, including the issuance or distribution of any property pursuant to the Plan and the Sales Process, the Definitive Documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that except as expressly provided under the Plan, the foregoing releases shall not release obligations of the Debtors on account of any Allowed Claims that are treated under the Plan or obligations otherwise arising under any contract, agreement, or other business arrangement between any non-Debtor Releasing Party and any non-Debtor Released Party. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.F do not release any post-Effective Date obligations of any party or Entity under the Plan, including any such obligations created in connection with the Restructuring; and (ii) nothing in this Article VIII.F shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.  For the avoidance of doubt, nothing in this Article VIII.F shall, nor shall it be deemed to, release any Retained Causes of Action or any claims or Causes of Action against the DCG Parties or the Gemini Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such releases.

G.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan, the Plan Supplement, the MIP, any Asset Sale, or the related agreements, instruments, and other documents (including the Definitive Documents), the solicitation of votes with respect to the Plan, or the Restructuring, or any related contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the MIP, the related agreements, instruments, and other documents (including the Definitive Documents), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Sales Process, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan and the Sales Process, including the issuance of or distribution of any property pursuant to the Plan and the Sales Process, the related agreements, instruments, and other documents (including the Definitive Documents), or upon any other act or omission, the transaction, agreement, event, or other occurrence taking place on or before the Effective Date related to the foregoing, except for claims related to any act or omission that is determined in a Final Order to have constituted fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Confirmation Order shall provide that the Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  For the avoidance of doubt, nothing in this Article VIII.G shall, nor shall it be deemed to,

exculpate any Exculpated Party from any Retained Causes of Action or any claims or Causes of Action against the DCG Parties or the Gemini Parties.

H.     *Injunction*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.**

I.     *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or the Liquidation Trustee (as applicable) or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors or the Liquidation Trustee (as applicable), or another Entity with whom the Reorganized Debtors or the Liquidation Trustee (as applicable) have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable), unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.      *Subordination Rights*

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

L.      *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

M.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors, the Liquidation Trustee ,or the GUC Trust Trustee (as applicable).

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date*

It shall be a condition to the occurrence of the Effective Date that the following conditions, as determined by the Debtors, shall have been satisfied (or waived pursuant to the provisions of Article IX.B of the Plan):

1.      the Confirmation Order shall have been entered and the Confirmation Order shall not have been stayed, modified, or vacated on appeal;

2.       the Asset Sale (if any) shall have closed and the transactions contemplated thereby shall have been consummated in accordance with the terms of the applicable asset purchase agreements;

3.       *if an Equitization occurs*, the New Governance Documents, the effectiveness of which requires filing with the Secretary of State of any jurisdiction, shall have been duly filed with the applicable authorities in the relevant jurisdictions;

4.       all other Definitive Documents shall have been effected or be executed and delivered in accordance with the terms of the Plan;

5.       *if an Equitization occurs*, all conditions precedent to the issuance of the Reorganized GGH Interests, other than any conditions related to the occurrence of the Effective Date, shall have occurred;

6.       all required governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions provided for in the Plan shall have been obtained, shall not be subject to unfulfilled conditions, and shall be in full force and effect, and all applicable waiting periods shall have expired without any action having been taken by any competent authority that would restrain or prevent such transactions;

7.       all documents and agreements necessary to implement the Plan and the Restructuring shall have been (a) tendered for delivery and (b) effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements (other than any conditions related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements;

8.       the GUC Trust shall have been created and funded in accordance with the Plan;

9.       the Claims Reserve shall have been funded in an amount equal to the Claims Reserve Amount; and

10.      the Professional Fee Escrow Account shall have been funded with Cash in an amount equal to the Professional Fee Reserve Amount.

B.      *Waiver of Conditions*

The Debtors may waive any of the conditions precedent to the Effective Date of the Plan set forth in Article IX.A at any time, without any notice to any other parties in interest, any further notice, leave, or order of the Bankruptcy Court, or any formal action other than proceedings to confirm or consummate the Plan.

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.      *Effect of Non-Occurrence of Conditions to the Confirmation Date or the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors or any other Entity; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect; or (4) be used by the Debtors or any Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments, or claims.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Subject to the limitations contained herein, the Debtors reserve the right to alter, amend, or modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and the restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan with respect to any or all Debtors prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation do not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity; or (iv) be used by the Debtors or any

other Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments, or claims.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1. Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured, unsecured, or subordinated status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections relating to any of the foregoing;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to Holders of Allowed Claims or Interests are accomplished pursuant to the provisions of the Plan;

5. consider any modifications of the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in each case, to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into, delivered, or created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

6. adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

7. adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor;

8. adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code;

73

9.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

10.      enter and enforce any order for the sale of property pursuant to sections 363 or 1123 of the Bankruptcy Code;

11.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

12.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII of the Plan;

15.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

17.      adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

18.      determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.      hear and determine matters concerning state, local, and U.S. federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.      hear and determine matters concerning section 1145 of the Bankruptcy Code;

21.      hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute or matter involving the GUC Trust or relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

22.      enforce all orders previously entered by the Bankruptcy Court;

23. enter an order concluding or closing the Chapter 11 Cases;

24. enforce the injunction, release, and exculpation provisions set forth in Article VIII of the Plan; and

25. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect*

Subject to Article IX.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Reorganized Debtors, as applicable, and any and all Holders of Claims or Interests (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B. *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Reorganized Debtors, the Liquidation Trustee, or GUC Trust Trustee, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C. *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect unless the Effective Date occurs. Prior to the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests.

D. *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor,

administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee, as applicable, shall be served on:

| **Debtors or the Reorganized Debtors** | **Genesis Global Holdco, LLC** 250 Park Avenue South, 5th Floor New York, NY 10003 Attn:  A. Derar Islim |
|---|---|
| **Attorneys to the Debtors** | **Cleary Gottlieb Steen & Hamilton LLP** One Liberty Plaza New York, NY 10006 Attn:  Sean A. O'Neal           Jane VanLare |
| **Liquidation Trustee** | [●] |
| **GUC Trust Trustee** | [●] |

F.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.      *Entire Agreement*

Except as otherwise indicated, on the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors'

counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://restructuring.ra.kroll.com/genesis/ or the Bankruptcy Court's website at https://www.nysb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted. Notwithstanding any such alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

J.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities (if any) offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals nor the Reorganized Debtors or Liquidation Trustee (as applicable) will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities (if any) offered and sold under the Plan and any previous plan.

K.      *Request for Expedited Determination of Taxes*

The Debtors, the Reorganized Debtors, or the Liquidation Trustee, as the case may be, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

L.      *Closing of Chapter 11 Cases*

The Reorganized Debtors or the Liquidation Trustee (as applicable) shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

M.       *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

N.       *Waiver or Estoppel*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement or the Debtors,' Reorganized Debtors', the Liquidation Trustee's, or the GUC Trust Trustee's (as applicable) right to enter into settlements was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court or the Noticing and Claims Agent prior to the Confirmation Date.

O.       *Dissolution of the Committee*

On the Effective Date, the Committee and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof (solely in their capacities as such) shall be released and discharged from all rights, duties, and responsibilities arising from, or related to, the Chapter 11 Cases; *provided*, *however*, that the Committee shall continue to exist and its Professionals shall continue to be retained without further order of the Court with respect to (1) the preparation and prosecution of any final fee applications of the Committee's Professionals and (2) all final fee applications Filed with the Bankruptcy Court.

* * * *

Respectfully submitted, as of the date first set forth below,

Dated:        January 20, 2023
              Park City, Utah

                              GENESIS GLOBAL HOLDCO, LLC
                              on behalf of itself and all other Debtors


                               */s/ Paul Aronzon*                                
                              Paul Aronzon
                              Member of the Special Committee