**Hearing Date and Time: February 9, 2023 at 2:00 p.m. (Prevailing Eastern Time)**

Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al*.,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF DEBTORS' EMERGENCY
MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR
GENESIS GLOBAL HOLDCO, LLC TO CONSENT TO PRIMING OF LIEN**

  **PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

  **PLEASE TAKE FURTHER NOTICE** that on February 8, 2023, the debtors and debtors in possession (collectively, the "Debtors"), filed the annexed *Debtors' Emergency Motion for*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Holdco and its Debtor and non-Debtor subsidiaries are collectively referred to as the "Company".

*Entry of an Order Authorizing Debtor Genesis Global Holdco, LLC to Consent to Priming of Lien* (the "Motion").  A hearing (the "Hearing") on the Motion will be held via zoom before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 at 2:00 p.m. on February 9, 2023, prevailing Eastern Time.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections, if any, to the Motion or the relief requested therein shall be entertained orally at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that if no objections are heard, the Debtors shall submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit A to the Motion, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Debtors.

|  |  |
|---|---|
| Dated: February 8, 2023<br>New York, New York | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>/s/ *Sean A. O'Neal*<br>Sean A. O'Neal<br>Jane VanLare<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>*Proposed Counsel for the Debtors<br>and Debtors-in-Possession* |

**Hearing Date and Time: Thursday, February 9, at 2:00 p.m. (Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al*.,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING
DEBTOR GENESIS GLOBAL HOLDCO, LLC TO CONSENT TO PRIMING OF LIEN**

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and these cases, collectively, the "Chapter 11 Cases"), hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing Holdco to consent to the priming of that certain lien (the "Lien") granted by Cash Cloud Inc. ("Cash Cloud") in favor of Holdco in respect of borrowings under that certain 2022 A&R Promissory Note by that certain debtor-in-possession facility (the "Cash Cloud DIP Facility" and

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

1

the governing agreement, the "Cash Cloud DIP Agreement") to be proposed by Cash Cloud in connection with Cash Cloud's bankruptcy proceedings under title 11 of the United States Code (the "Bankruptcy Code"); and (ii) modifying the automatic stay to the extent necessary to permit Holdco to consent to Cash Cloud's entry into the Cash Cloud DIP Agreement, and to permit CKDL Credit, LLC or its designee or assignee (the "Cash Cloud DIP Lender") to exercise remedies over the collateral subject to the Lien. In support of this Motion, the Debtors rely upon, and incorporate by reference, the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, ECF No. 17 (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, ECF No. 19 (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, ECF No. 28 (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations").[2] In further support of this Motion, the Debtors also rely upon the *Declaration of Zul Jamal in Support of Debtors' Emergency Motion for Entry of an Order Authorizing Debtor Genesis Holdco, LLC to Consent to Priming of Lien* (the "Jamal Declaration)," filed contemporaneously herewith.

In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern

---

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declarations.

2

District of New York dated January 31, 2012 (Preska, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of these Chapter 11 Cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are §§ 362(a), 363(b) and 363(c) of the Bankruptcy Code, Rules 4001, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Rules 4001-1, 9013-1 and 9014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### BACKGROUND

4. Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency. The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services.

5. On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date"). The Debtors are operating their businesses as debtors-in-possession under §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases. These Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b), ECF No. 37. An official committee of unsecured creditors (the "Committee") was appointed on February 3, 2023, ECF No. 55.

3

6. On January 23, 2023, the Court held a first-day hearing in which it considered the Debtors' initial requests for relief. A second-day hearing is scheduled for February 22, 2023.

7. Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

## THE CASH CLOUD LOAN FACILITIES AND PROPOSED DIP FACILITY

8. Cash Cloud is a Las Vegas, Nevada-based entity that provides customers with virtual currency transaction services. It offers four types of services through which customers can buy or sell virtual currency: virtual currency kiosks, over-the-counter or "Private Client Desk" transactions, a mobile wallet application, and online purchases via the Coin Cloud website. In support of these services, Cash Cloud engages in transactions involving the exchange of sovereign currency-backed "stablecoins" for fiat currency.

9. On July 27, 2020, GGC and Cash Cloud entered into that certain *Master Loan Agreement* (the "2020 Loan Agreement"). As of October 29, 2022, GGC had made loans to Cash Cloud in an aggregate principal amount of $100 million on an unsecured basis, with $10 million in accrued interest payments outstanding as of the date hereof (such outstanding principal and interest amounts, the "Outstanding Unsecured Loans"). On October 29, 2022, GGC and Holdco entered into that certain Assignment and Assumption Agreement, pursuant to which GGC irrevocably assigned to Holdco all of GGC's rights and obligations in and to the Unsecured Loans, together with other fees, amounts or obligations owed to GGC in its capacity as lender under the 2020 Loan Agreement.

10. On November 1, 2022, Holdco and Cash Cloud entered into that certain *Secured Demand Promissory Note* (the "2022 Promissory Note"), pursuant to which Holdco lent to Cash Cloud an aggregate principal amount of $6 million, which obligation was secured by substantially

4

all of the assets of Cash Cloud. On November 23, 2022, Holdco and Cash Cloud entered into that certain *Amended and Restated Secured Demand Promissory Note* (the "2022 A&R Promissory Note"), pursuant to which Holdco lent to Cash Cloud an additional principal amount of $1.5 million, for an aggregate principal amount of $7.5 million outstanding under the 2022 A&R Promissory Note (such amounts together with accrued interest, the "Outstanding Secured Loans" and together with the Outstanding Unsecured Loans, the "Outstanding Loans").[3] Borrowings under the 2022 A&R Promissory Note are secured by substantially all of the assets of Cash Cloud.

11. On February 8, 2023, Cash Cloud filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, ECF No. 1, Case No. 23-10423-mkn (Bankr. D. Nev.).

12. The Debtors understand that Cash Cloud will be requesting authority of the bankruptcy court overseeing its proceedings to approve entry into the Cash Cloud DIP Agreement with the Cash Cloud DIP Lender, pursuant to which the Cash Cloud DIP Lender will receive a priming, superpriority lien on all of the assets of Cash Cloud.

13. As adequate protection for any diminution in the value of the collateral securing the Outstanding Secured Loans, Cash Cloud would provide to Holdco: (i) cash payments equivalent to interest calculated at 5% of the outstanding amount under the 2022 A&R Promissory Note (approximately $8 million); (ii) reasonable and documented attorneys' fees up to $100,000, (iii) replacement liens in Holdco's collateral securing the Outstanding Secured Loans; (iv) superpriority claims junior only to $5 million in DIP financing (solely to protect Holdco from the diminution in the value of its collateral); (v) a covenant that no person other than the Cash Cloud

---

[3] In mid-2022, Cash Cloud began experiencing financial distress and ceased making interest payments pursuant to the 2020 Loan Agreement. In an attempt to provide rescue financing, Holdco agreed to extend further lending, on a secured basis, pursuant to the 2022 Promissory Note and subsequently the 2022 A&R Promissory Note; Cash Cloud has not met its obligation to make interest payments in the amount of 10% per annum on a monthly basis pursuant to the 2022 A&R Promissory Note.

5

DIP Lender shall be granted a senior or *pari passu* lien on collateral securing Holdco's liens; (vi) a covenant that following an event of default under the Cash Cloud DIP, the Cash Cloud DIP Lender shall marshal first toward the cash collateral securing only its claims before resorting to other items of collateral to satisfy its secured claim; (vii) a covenant that Cash Cloud shall maintain insurance on all of Holdco's collateral; (viii) customary stipulations to the validity of the loans and Holdco's liens, subject to a customary challenge period; (ix) access to information, including periodic budget reporting; and (x) consent over milestones and amendments to milestones, not to be unreasonably withheld or delayed (items described in (i) through (x) collectively, the "Adequate Protection").

14.     For the reasons described in the Jamal Declaration, the Debtors have reviewed the proposed Adequate Protection and consulted with their advisors, and believe that agreeing to priming of the Lien, as granted by the 2022 A&R Promissory Note, will maximize the value of Holdco's claims against Cash Cloud and are, therefore, in the best interest of Holdco and its creditors.

## RELIEF REQUESTED

15.     By this Motion, pursuant to §§ 362(a), 363(b) and 363(c) of the Bankruptcy Code, the Debtors request entry of the Proposed Order (i) authorizing Holdco to consent to the priming of the Lien in favor of Holdco in respect of borrowings under that certain 2022 A&R Promissory Note by the Cash Cloud DIP Facility to be proposed by Cash Cloud in connection with Cash Cloud's chapter 11 proceedings under the Bankruptcy Code; and (ii) modifying the automatic stay to the extent necessary to permit the Debtors to consent to Cash Cloud's entry into the Cash Cloud DIP Agreement, and to permit the Cash Cloud DIP Lender to exercise remedies over the collateral subject to the Lien.

6

**BASIS FOR RELIEF**

A.     **The Requested Relief Should be Granted Under § 363 of the Bankruptcy Code.**

16.     Section 363(b) of the Bankruptcy Code authorizes a debtor to "use, sell, or lease" property of the estate outside the ordinary course of business only after notice and a hearing, 11 U.S.C. § 363(b)(1), and § 363(c) of the Bankruptcy Code authorizes a debtor to "enter into transactions . . . in the ordinary course of business, without notice or a hearing," and provides that a debtor may use property of the estate in the ordinary course of business without notice or a hearing, 11 U.S.C. § 363(c)(1).

17.     As described above, the Debtors entered into the 2020 Loan Agreement and the 2022 A&R Promissory Note before the Petition Date. Holdco now seeks to protect its interests in connection with its lending arrangements with Cash Cloud, by permitting Cash Cloud to enter into the Cash Cloud DIP Agreement. The Cash Cloud DIP Facility would provide the liquidity that Cash Cloud requires in order to effectuate an efficient sale or restructuring of its business, including its obligations to Holdco. Jamal Declaration at ¶ 10. The Debtors understand that Cash Cloud has conducted a marketing process and has concluded that the terms of the Cash Cloud DIP Agreement represent the best available financing option for Cash Cloud under the present circumstances. Jamal Declaration at ¶ 10. The Debtors themselves are in no position to provide debtor-in-possession financing. Jamal Declaration at ¶ 10. The negotiated terms, as one would expect in light of all of the exigent circumstances, include the granting of a superpriority lien on all of the assets of Cash Cloud, which would have the effect of priming the Lien, and therefore require the consent of Holdco as a condition to its execution. Jamal Declaration at ¶ 10. The Debtors respectfully submit that providing such consent constitutes an ordinary-course action under § 363(c). Nevertheless, and out of an abundance of caution, the Debtors request this Court's approval under § 363(b).

7

> i. *Granting Consent to the Cash Cloud DIP Agreement Constitutes an Act in the Ordinary Course Under § 363(c) of the Bankruptcy Code.*

18. Section 363 of the Bankruptcy Code is designed to permit a debtor to continue its operations without undue court or creditor oversight while protecting creditors from dissipation of the assets of the estate. *See In re Lavigne*, 114 F.3d 379, 384 (2d Cir. 1997). Therefore, a debtor in possession is permitted to enter into transactions without the need for prior court approval where such transactions are in the ordinary course. *See* id. Courts in the Second Circuit apply a two-part test to determine whether a transaction is in the ordinary course, consisting of the objective "horizontal" test and the subjective "vertical" test. *See In re Celsius Network LLC*, No. 22-10964 (MG), 2023 WL 439707, at *2 (Bankr. S.D.N.Y. Jan. 26, 2023) (citing *Lavigne*, 114 F.3d at 384–85 (citation omitted). "The horizontal test is a factual analysis that requires a determination whether the transaction in question is of the sort commonly undertaken by companies in the relevant industry . . . [and the] vertical test is an analysis conducted from the perspective of a hypothetical creditor to determine whether the transaction subjects such creditor to a level of economic risk of a nature different from what it accepted when it entered into a contract with the debtors. . . . In making this determination, courts look to the debtor's prepetition business practices and conduct and compare them to the debtor's postpetition conduct." *Celsius* at *2 (internal citation omitted). Holdco's consent to the Cash Cloud DIP Facility satisfies both parts of the test.

19. In the event a borrower entity such as Cash Cloud faces a change in financial circumstances, it is common practice to approach its existing secured lenders to request consent to enter into further lending transactions that would alter the rights and obligations of the parties to existing financing facilities (in this case, Holdco). This is particularly true where the borrower entity, as here, has sought to reorganize under Chapter 11, and has sought debtor-in-possession financing, which is often unavailable except on terms that are highly preferential to the DIP lender.

8

Faced with the alternative of liquidation, it is common practice for a creditor entity such as Holdco to provide its consent to have its existing liens primed by a much-needed DIP financing facility such as the contemplated Cash Cloud DIP Facility. As such, the consent satisfies the horizontal test under § 363(c).

20. The Debtors' contemplated consent to the priming satisfies the vertical test as well. By definition, provision of an adequate protection package under § 364(d)(1)(b) of the Bankruptcy Code ensures that the creditor whose lien position will be primed pursuant to the contemplated DIP financing transaction is made whole. As such, when viewed "from the perspective of a hypothetical creditor," there is no change in the risk profile at all. Holdco's proposed consent to the Cash Cloud DIP Financing therefore satisfies both prongs of the test used to determine whether a debtor's act constitutes an act in the ordinary course for purposes of § 363.

    ii. *Granting Consent to the Cash Cloud DIP Facility is an Exercise of the Debtors' Sound Business Judgment Under § 363(b) of the Bankruptcy Code.*

21. While the Debtors believe that Holdco's consent to the Cash Cloud DIP Facility constitutes use of estate property in the ordinary course of business, out of an abundance of caution, the Debtors seek authority to provide consent to the Cash Cloud DIP Facility pursuant to § 363(b), which provides, in relevant part, that that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under § 363(b) of the Bankruptcy Code, courts require only that the debtor show "a good business reason" for such actions. *See In re Adelphia Commc'ns Corp.*, No. 02-41729, 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,

9

60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). *See also In re Endo Int'l plc*, No. 22-22549 (JLG), 2022 WL 16935997, at *9 (Bankr. S.D.N.Y. Nov. 14, 2022) ("It is settled that a debtor can satisfy the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'") (internal citations omitted).

22. The Debtors believe that an efficient sale or reorganization by Cash Cloud under chapter 11 would likely enhance Holdco's likelihood of recovery (and the amount of such recovery) under the Outstanding Secured Loans as well as the Outstanding Unsecured Loans, and that such a reorganization would not be possible in the absence of DIP financing. Jamal Declaration at ¶ 11. Therefore, the Debtors believe that providing Holdco's consent to the priming by the Cash Cloud DIP Facility would likely enhance Holdco's possible recovery under the Outstanding Loans. Jamal Declaration at ¶ 11.

23. Second, the Debtors believe that the proposed Adequate Protection, described herein above, provides reasonable compensation to Holdco for any diminution in the value of its asset that might result from the priming of the Lien. Jamal Declaration at ¶ 12. The proposed Adequate Protection package has been negotiated between the parties and represents market-standard terms for a secured creditor whose existing lien is proposed to be primed by a superpriority DIP facility under these circumstances. Jamal Declaration at ¶ 12.

24. To the extent this Court determines that approval under § 363(b) is required for Holdco to provide its consent to the Cash Cloud DIP Facility, for the above reasons, the Debtors respectfully submit that the decision to provide such consent is an exercise of sound business judgment and, therefore, should be approved by this Court.

B. **The Automatic Stay Should be Modified to the Extent Needed to Grant the Requested Relief.**

10

25. Section 362 of the Bankruptcy Code prevents third parties from taking actions affecting a debtor's property. 11 U.S.C. § 362(a). In relevant part, § 362 prevents "any act to . . . exercise control over property of the estate," "any act to create, perfect, or enforce any lien against property against the estate, or "any act to create, perfect, or enforce against property of the debtor to the extent that such lien secures [a pre-petition claim]." 11 U.S.C. § 362(a)(3)-(5).

26. The requested relief does not fall into any of the categories of actions prohibited by the automatic stay. For one, the requested relief would involve the debtor exercising control over its own asset (i.e. the Lien). In the context of the litigation proscribed by § 362(a)(1), courts have consistently held that actions brought by a debtor are not subject to the automatic stay. *See Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994) ("This Court has recognized that the automatic stay is applicable only to proceedings 'against' the debtor." (internal citation omitted); *Carley Capital Grp. v. Fireman's Fund Ins. Co.*, 889 F.2d 1126, 1127 (D.C. Cir. 1989) (finding § 362(a) "does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate"); *Vitranschart, Inc. v. Levy*, No. 00-CV-3618, 2000 WL 1239081, at *5 (S.D.N.Y. Aug. 31, 2000) ("[T]he automatic stay provision applies only to claims 'against the debtor' and not to claims brought by the debtor against other parties."); *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 499 (E.D.N.Y. 1998), aff'd, 205 F.3d 1327 (2d Cir. 2000) ("The § 362 stay provision 'does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate.'" (internal quotes omitted).

27. Similarly, acts by the debtor outside of the context of litigation are not proscribed by the analogous subsections of 362(a) that prevent actions by other parties with respect to property of the estate. Furthermore, to the extent that the Cash Cloud DIP Lender seeks to exercise remedies pursuant to its rights under the Cash Cloud DIP Agreement, such exercise of remedies would be

11

pursuant to an affirmative agreement by Holdco (by way of its consent to the Cash Cloud DIP Facility, permits exercise of remedies under appropriate circumstances by the Cash Cloud DIP Lender), and therefore also would not constitute violations of the automatic stay applicable to Holdco and its assets.

28.     However, to the extent there is any doubt concerning whether the automatic stay is implicated by the Debtors' proposal to consent to the Cash Cloud DIP Facility, the Debtors request that this Court modify the stay to the extent necessary to grant the relief requested.

## BANKRUPTCY RULE 6004 SHOULD BE WAIVED

29.     The urgency of the Debtors' need for the relief requested, in particular the need for Cash Cloud to seek interim approval of the Cash Cloud DIP Facility, justifies immediate relief. To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the fourteen (14)-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h), if applicable.

## RESERVATION OF RIGHTS

30.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to § 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant

to this Motion are valid, and the Debtors expressly reserves their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

## NOTICE

31. Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iii) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

32. No prior request for the relief requested herein has been made to this or any other Court.

[*The remainder of this page is left blank intentionally*]

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, and (b) grant such other and further relief as is just and proper.

Dated: February 8, 2023
New York, New York

*Sean A. O'Neal*
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors and Debtors-in-Possession*

14

*Privileged & Confidential*
*Attorney Work Product*
*CGSH Draft 2.6.23*

# **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**ORDER GRANTING DEBTORS' EMERGENCY
MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR
GENESIS GLOBAL HOLDCO, LLC TO CONSENT TO PRIMING OF LIEN**

Upon consideration of the *Debtors' Emergency Motion for Entry of an Order Authorizing Debtor Genesis Holdco, LLC to Consent to Priming of Lien* (the "Motion")[2] filed by the above-captioned debtors (the "Debtors"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided, and upon the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007*-2, ECF No. 17 (the "Islim Declaration"), the *Declaration of Paul Aronzon*

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]   Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

16

*in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, ECF No. 19 (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, ECF No. 28 (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations"), as well as the *Declaration of Zul Jamal in Support of Debtors' Debtors' Emergency Motion for Entry of an Order Authorizing Debtor Genesis Holdco, LLC to Consent to Priming of Lien* (the "Jamal Declaration); and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on a final basis to the extent set forth herein.

2. Holdco is authorized to provide its consent to the Cash Cloud DIP Facility, including its superpriority priming lien and the reduction in priority of the Lien, in exchange for the provision of adequate protection substantially in the form described in the Motion, in respect of such reduction in lien priority as required by the Cash Cloud DIP Agreement.

3. The automatic stay is hereby modified to the extent necessary to permit Holdco to provide its consent to the Cash Cloud DIP Facility, and to permit the Cash Cloud DIP Lender to exercise remedies with respect to collateral under the Lien pursuant to the Cash Cloud DIP Agreement.

4. Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion.

5. This Order shall be immediately effective and enforceable upon its entry.

6. The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

7. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2023
       White Plains, New York

_____
The Honorable Sean H. Lane
United States Bankruptcy Judge