**Hearing Date: February 22, 2023 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: February 15, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF APPLICATION OF DEBTORS FOR ENTRY**
**OF ORDER AUTHORIZING EMPLOYMENT AND RETENTION**
**OF MOELIS & COMPANY LLC AS INVESTMENT BANKER AND CAPITAL**
**MARKETS ADVISOR TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

      **PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

      **PLEASE TAKE FURTHER NOTICE** that on February 8, 2023, the debtors and debtors in possession (collectively, the "Debtors"), filed the annexed *Application of Debtors and Debtors in Possession for Entry of Order Authorizing Employment and Retention of Moelis & Company*

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]      Holdco, and its Debtor and non-Debtor subsidiaries are collectively referred to as the "Company".

*LLC as Investment Banker and Capital Markets Advisor Effective as of the Petition Date* (the "Application").  A hearing (the "Hearing") on the Application will be held via zoom before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 on **February 22, 2023 at 11:00 a.m. (Eastern Time) (the "Hearing Date")**.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections, if any, to the Application or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **February 15, 2023 at 4:00 p.m. (Eastern Time) (the "Objection Deadline")** and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order").

**PLEASE TAKE FURTHER NOTICE** that if no written objections are timely filed and served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit B to the Application, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Debtors.

Dated:  February 8, 2023
        New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**APPLICATION OF DEBTORS FOR ENTRY**
**OF ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF**
**MOELIS & COMPANY LLC AS INVESTMENT BANKER AND CAPITAL**
**MARKETS ADVISOR TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and these cases, collectively, the "Chapter 11 Cases") respectfully state as follows in support of this application (this "Application"):

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

## RELIEF REQUESTED

1.      The Debtors hereby file this Application for entry of an order attached hereto as
Exhibit B (the "Proposed Order"):  (a) authorizing the employment and retention of Moelis &
Company LLC ("Moelis") to serve as the Debtors' investment banker and capital markets advisor
effective as of the Petition Date (as defined below) in accordance with the terms and conditions
set forth in that certain engagement letter between Moelis and Cleary Gottlieb Steen & Hamilton
LLP, solely in its capacity as legal counsel to Debtor Genesis Global Holdco, LLC and its direct
and indirect subsidiaries, dated as of November 20, 2022 (such agreement, together with all
amendments, modifications, renewals thereof, and all documents ancillary thereto or otherwise
entered into in connection therewith, the "Engagement Letter"),[2] a copy of which is attached as
Exhibit 1 to the Proposed Order, pursuant to sections 327(a) and 328(a) of title 11 of the United
States Code (the "Bankruptcy Code"); (b) approving the provisions of the Engagement Letter,
including the compensation arrangements and Indemnification Provisions (as defined below) set
forth therein; (c) modifying certain timekeeping requirements of Rule 2016(a) of the Federal Rules
of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy
Rules for the Southern District of New York (the "Local Rules"), General Order M-447 Amended
Guidelines for Fees and Disbursements for Professionals in Southern District of New York
Bankruptcy Cases, dated January 29, 2013 (the "Amended Guidelines"), the *U.S. Trustee
Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed
Under 11 U.S.C. § 330*, effective January 30, 1996 (the "U.S. Trustee Guidelines") of the United
States Trustee for Region 2 (the "U.S. Trustee"), and any other applicable procedures and orders

---

[2]      Capitalized terms used and not otherwise defined in this Application shall have the meanings ascribed to
them in the Engagement Letter.

of the Court (as defined herein) in connection with Moelis' engagement; and (d) granting such other relief as is just and proper.  In support of this Application, the Debtors submit the *Declaration of Zul Jamal in Support of Application of Debtors for Entry of Order Authorizing Employment and Retention of Moelis & Company LLC as Investment Banker and Capital Markets Advisor Effective as of the Petition Date* (the "Jamal Declaration"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference, and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration") and the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration" and, together with the Leto Declaration and Aronzon Declaration, the "First Day Declarations"), which were filed with the Court on or shortly after the Petition Date.  In further support of this Application, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Debtors confirm their consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## BACKGROUND

5.      Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

6.      Over the past few months, the digital asset industry has experienced tremendous dislocation.  The collapse of LUNA and TerraUSD and subsequent liquidation of 3AC signaled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.  As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022.  Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed Chapter 11 proceedings.

7.      These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business.  This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's available liquidity.  As a result of the unprecedented number and size of the loan calls, on November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders.

8.      Over the past two months, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups to explore strategic solutions. In addition, the Debtors have undertaken cost-saving and liquidity-preserving measures. As a result of those efforts, the Debtors have determined that an in-court process is the best path to continue their efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

9.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date"). The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b), ECF No. 37. No trustee or examiner has been appointed in the Chapter 11 Cases. On February 3, 2023, an official committee of unsecured creditors (the "Committee") was appointed in these cases, ECF No. 55.

10.      While the Company's discussions with advisors to various creditor groups and DCG have been very productive in narrowing issues, they have not yet achieved a global resolution. Accordingly, the Debtors commenced the Chapter 11 Cases to continue their efforts towards a consensual resolution through a transparent, court supervised process. To that end, the Debtors have also filed the Debtors' Joint Chapter 11 Plan, ECF No. 20, a proposed plan of reorganization which will be amended as necessary to reflect the results of the Debtors' continued negotiations.

11.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the First Day Declarations.

## MOELIS' QUALIFICATIONS

12.     Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has approximately 1,100 employees and geographic locations in North America, South America, Europe, the Middle East, and Asia.  Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

13.     Moelis provides a broad range of capital advisory and investment banking services to its clients, including: (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases.  Moelis' business reorganization professionals have served as capital markets advisors and/or investment bankers in numerous cases, including: *In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12, 2021); *In re Mallinkrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. Nov. 23, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22,

2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020).[3]

14.     The Debtors have selected Moelis as their investment banker and capital markets advisor based upon, among other things:  (a) the Debtors' need to retain a skilled investment banker and capital markets advisor to provide advice with respect to the Debtors' restructuring activities; (b) Moelis' extensive experience and excellent reputation in providing investment banking and capital markets advisory services in complex chapter 11 cases such as these; and (c) Moelis' extensive knowledge of the Debtors, as described below.  In light of the size and complexity of these chapter 11 cases, Moelis' resources, capabilities and experience are crucial to the resolution of these cases.  An experienced investment banker and capital markets advisor such as Moelis, fulfills a critical service that complements the services provided by the Debtors' other professionals.

15.     Moelis began advising the Debtors on strategic and restructuring initiatives prior to the commencement of these chapter 11 cases.  Moelis was initially engaged as the Debtors' investment banker and capital markets advisor in November 2022 and has provided advisory services in connection with the Debtors' restructuring efforts since its engagement.

16.     As a result of its prepetition work with the Debtors, Moelis has developed valuable institutional knowledge regarding the Debtors' businesses, operations, capital structure and other material information and has become well-acquainted with the Debtors' business operations and capital structure.  Thus, Moelis has developed relevant experience and expertise regarding the Debtors' businesses that will assist it in providing effective and efficient services.

---

[3]     Because of the voluminous nature of the orders cited herein, such orders are not attached to this Application. Copies of these orders are available upon request of the Debtors' proposed counsel.

17.     Accordingly, the Debtors believe Moelis is well-qualified to represent them in a cost-effective, efficient and timely manner, and the Debtors submit that the employment and retention of Moelis is in the best interests of the Debtors, their creditors and all parties in interest.

## SERVICES TO BE PROVIDED

18.     Subject to further order of the Court, and as set forth more fully in the Engagement Letter attached as Exhibit 1 to the Proposed Order, in consideration for the compensation contemplated therein, Moelis has and will perform the following services (the "Services"), as requested, for the Debtors:[4]

(a)     assist the Debtors in reviewing and analyzing the Debtors' results of operations, financial condition and business plan;

(b)     assist the Debtors in reviewing and analyzing any potential Restructuring, Sale Transaction or Capital Transaction;

(c)     assist the Debtors in negotiating any Restructuring, Sale Transaction or Capital Transaction;

(d)     advise the Debtors on the terms of securities they may offer in any potential Capital Transaction;

(e)     advise the Debtors on their preparation of information memoranda for a potential Sale Transaction or Capital Transaction (each, an "Information Memo");

(f)     assist the Debtors in contacting potential purchasers of a Capital Transaction that Moelis, Counsel and/or the Debtors agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Debtors' assets, properties or businesses that is acceptable to the Debtors, subject to customary business confidentiality agreements; and

(g)     provide such other capital advisory and investment banking services in connection with a Restructuring, Sale Transaction or Capital Transaction as Moelis and the Debtors may mutually agree upon.

---

[4]     The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

19.    Such professional services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.

20.    If Moelis is required to perform services not contemplated by the Engagement Letter, Moelis and the Debtors will agree, in writing, on the terms for such services, including reasonable costs and documented expenses related thereto, and seek the Court's supplemental approval thereof.

### PROFESSIONAL COMPENSATION

21.    Moelis' decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter.

22.    Moelis does not typically charge for its services on an hourly basis.  Instead, it customarily charges a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction.  The Engagement Letter follows this custom in the capital advisory and investment banking industry and sets forth the monthly and transaction-based fees that are to be payable to Moelis.

23.    As set forth more fully in the Engagement Letter, Moelis and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee Structure") pursuant to section 328(a), and not section 330, of the Bankruptcy Code.  The Debtors have agreed to pay Moelis the following cash fees:

      i.    **Retainer Fee.** Promptly after execution of the Engagement Letter, a retainer fee of $500,000 (the "Retainer Fee"). The Retainer Fee shall be offset, to the

extent previously paid, against the Restructuring Fee or the Sale Transaction Fee.

ii.  **Monthly Fee.** During the term of the Engagement Letter, a fee of $200,000 per month (the "Monthly Fee"), payable in advance of each month. The Debtors paid the first Monthly Fee immediately upon the execution of the Engagement Letter, and shall pay all subsequent Monthly Fees prior to each monthly anniversary of the date of the Engagement Letter.  Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of the Engagement Letter. After 4 months, 50% of the Monthly Fee shall be offset, to the extent previously paid, against the first Sale Transaction Fee or the first Restructuring Fee.

iii.  **Restructuring Fee.** At the closing of a Restructuring, a fee (the "Restructuring Fee") of $10,000,000; *provided*, that only one Restructuring Fee shall be payable pursuant to the Engagement Letter irrespective of the occurrence of any later events involving the Debtors that fall within the definition of Restructuring; *provided* further if the Restructuring occurs in one or more transactions or a series of transactions, the Restructuring Fee shall be paid only upon the completion of the Restructuring.

iv.  **Sale Transaction Fee.** At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $10,000,000. In the event of a Sale Transaction that is consummated pursuant to section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Restructuring Fee. To the extent a Transaction is both a Sale Transaction and a Restructuring Transaction, the Debtors shall pay only the Restructuring Fee.

v.  **Capital Transaction Fee.** At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") as follows:

a.  1.0% of the amount Raised (as defined below) in a Capital Transaction that is a first-lien debt financing, including a debtor-in-possession ("DIP") financing; *provided*, however, that 50% of any fee earned on a DIP financing will be offset, to the extent previously paid, against the first Sale Transaction Fee or the first Restructuring Fee; plus

b.  2.50% of the amount Raised in a Capital Transaction that is any other debt financing; plus

c.  3.00% of the amount Raised in a Capital Transaction that is equity, equity-linked interests, options, warrants or other rights to acquire equity interests.

The Debtors will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs. "Raised" includes the amount committed to the Debtors, whether or not the Debtors draw the full amount, and whether or not the Debtors apply such amounts to refinance any of their obligations. Notwithstanding anything to the contrary, in the event that the source of the capital is Digital Currency Group, Inc. ("DCG"), Gemini Trust Company, LLC, ("Gemini") or existing creditors of the Company ("Creditors") or any affiliates of DCG, Gemini or Creditors (each, a "Designated Party") such transaction will not constitute a "Capital Transaction" under the Engagement Letter and the Capital Transaction Fee will not be payable; *provided*, however, that if Moelis has launched a process with respect to a Capital Transaction at the request of the Debtors, and the Debtors have received a bona fide bid (a "Bid") for a Capital Transaction from a third party that is not a Designated Party and a Designated Party completes a transaction on economic terms substantially similar to or better than those set forth in such Bid, Moelis will be entitled to a Capital Transaction Fee equal to 50% of the Capital Transaction Fee that would have been paid had a Capital Transaction been completed pursuant to such Bid.[5]

24.    If, at any time prior to the end of the Tail Period,[6] the Debtors consummate any Restructuring, Sale Transaction, or Capital Transaction or enter into an agreement or a Plan is filed regarding any Restructuring, Sale Transaction, or Capital Transaction and a Restructuring, Sale Transaction, or Capital Transaction is subsequently consummated, then the Debtors (or their bankruptcy estates) shall pay Moelis the applicable Transaction Fee(s) as specified above and in section 2(a) of the Engagement Letter immediately upon the closing of any such Transaction(s).

25.    In addition to any fees payable to Moelis, the Debtors will reimburse Moelis for all its expenses as they are incurred in performing services pursuant to the Engagement Letter, whether or not the Debtors consummate a Restructuring, Sale Transaction, or Capital Transaction.

---

[5]    In addition, the Engagement Letter provides for a fee payable upon the closing of a Discrete Asset Sale (as defined below) in a customary and market amount to be agreed upon by the Debtors and Moelis in good faith (the "Discrete Asset Sale Fee"), a to-be-negotiated portion of which would be offset against the first Sale Transaction Fee or the first Restructuring Fee (to the extent previously paid).   A "Discrete Asset Sale" includes any sale, disposition or other transfer of the assets, properties, or businesses of the Debtors that does not constitute a Sale Transaction. Moelis and the Debtors are not seeking approval of the Discrete Asset Sale Fee at this time.

[6]    The "Tail Period" shall end 12 months following the expiration or termination of the Engagement Letter.

Such expenses include, without limitation, insourced document production costs, travel costs, and the reasonable costs of Moelis' external legal counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

26.     The Debtors understand that Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

27.     However, because (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys, (b) Moelis does not ordinarily keep time records on a "project category" basis, and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees, the Debtors respectfully request that only Moelis' restructuring professionals who advise or provide professional services to or on behalf of the Debtors be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments) and the identity of the restructuring professionals who provided those services, consistent with its ordinary practice.  Moelis will present such records to the Court in its fee application(s).  Moreover, the Debtors respectfully request that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative

departments (including internal legal) not be required to maintain any time records, and that it not

be required to provide or conform to any schedule of hourly rates. To the extent that Moelis would

otherwise be required to submit more detailed time records for its professionals by the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee

Guidelines, or other applicable procedures and orders of the Court, the Debtors respectfully request

that this Court waive such requirements.

28.    Moelis will maintain records in support of any actual, necessary costs and expenses

incurred in connection with the rendering of its services in these Chapter 11 Cases. In the event

that Moelis seeks reimbursement for attorneys' fees during the term of these Chapter 11 Cases,

Moelis will include the applicable invoices and supporting time records from such attorneys in

Moelis' own application, both interim and final. Such invoices and time records will be subject to

the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code,

without regard to whether such attorneys have been retained under section 327 of the Bankruptcy

Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the

Bankruptcy Code.

29.    The Debtors believe that the Fee Structure is reasonable, consistent with, and

typical of compensation arrangements entered into by Moelis and other comparable firms in

connection with the rendering of similar services under similar circumstances, both in and out of

bankruptcy proceedings. The Debtors also believe that the Fee Structure reflects a proper balance

between a fixed, monthly fee, and a contingency amount, which is tied to the consummation and

closing of the transactions and services contemplated by the Debtors and Moelis in the

Engagement Letter. The Fee Structure is consistent with Moelis' normal and customary billing

practices for cases of this size and complexity that require the level of scope and services outlined

herein.  After discussions and arm's-length negotiations, the Debtors believe that the Fee Structure is reasonable, market-based and designed to compensate Moelis fairly for its work.

30.     Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which have been and will be required by the Debtors during the term of Moelis' engagement, were all important factors to the Debtors in agreeing to the Fee Structure.  The Debtors believe that the ultimate benefit of Moelis' services hereunder cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services.  The Debtors and Moelis have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these Chapter 11 Cases and in light of the fact that (a) such commitment may foreclose other opportunities for Moelis, and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

31.     During the 90-day period prior to the Petition Date, the Debtors paid in the ordinary course certain fees and expense reimbursements due under the Engagement Letter.  Specifically, according to the Debtors' books and records, the Debtors paid Moelis (a) the Retainer Fee in the amount of $500,000; (b) Monthly Fees in the amount of $677,419.34 for the period from November 20, 2022 to February 28, 2023; (c) reimbursement of expenses in the amount of $9,557.32; and (d) an expense advance retainer in the amount of $25,000 (the "Expense Advance").  As of the Petition Date, the Debtors do not owe Moelis any fees for services performed or expenses incurred under the Engagement Letter in excess of the Expense Advance, which

Moelis is holding on account of prepetition expenses incurred in connection with the Engagement Letter.

## INDEMNIFICATION PROVISIONS

32.    As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtors have agreed to indemnify and hold harmless any and all Indemnified Persons (as defined in the Engagement Letter), and pay certain contributions and reimbursements to Moelis in accordance with the terms and conditions set forth in the Engagement Letter, including Annex A thereto (such provisions, collectively, the "Indemnification Provisions").    As set forth more fully therein, under the Indemnification Provisions, if any Indemnified Person becomes involved in any capacity in any Action (as defined in the Engagement Letter), the Debtors will reimburse such Indemnified Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing the Engagement Letter, as they are incurred.    The Debtors will also indemnify and hold harmless any Indemnified Person from and against, and the Debtors agree that no Indemnified Person shall have any liability to the Debtors, Counsel or their respective affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to the Debtors' or Counsel's actions or omissions (or the actions or omissions of the Debtors' officers, directors, employees and agents other than Moelis) in connection with the Engagement Letter or the matters referred to therein), or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Debtors or their agents in connection with the Engagement Letter or the matters referred to therein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Debtors to any purchaser or seller of a security in any transaction contemplated by the Engagement Letter), or (B) otherwise arising

out of, related to or in connection with the Engagement Letter or Moelis' performance thereunder or any other services or advice the Debtors request any Indemnified Person to provide (in each case, including prior to the date of the Engagement Letter), except that this clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, gross negligence or willful misconduct of such Indemnified Person.[7]

33.    These Indemnification Provisions were negotiated at arm's length and in good faith between the Debtors and Moelis.  The Debtors believe that the Indemnification Provisions in the Engagement Letter reflect the customary qualifications and limits on such terms for investment banking and capital markets advisor engagements both out of court and in chapter 11 cases and respectfully submit that the Indemnification Provisions are reasonable, subject to the modifications set forth in the Proposed Order.  The Debtors believe that the proposed modifications to the Indemnification Provisions are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

34.    The Debtors have applied, or expect to apply, to the Court to retain additional professionals, including: (a) Cleary Gottlieb Steen & Hamilton LLP, (b) Alvarez & Marsal North America, LLC and (c) Morrison Cohen LLP.  The Debtors do not believe that the services to be performed by Moelis on behalf of the Debtors will be duplicative of services provided by these additional professionals.  The Debtors and Moelis are mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Moelis' retention as investment banker and capital markets

---

[7]    To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Annex A to the Engagement Letter, the terms of the Engagement Letter shall control.

advisor.  The Debtors understand that Moelis will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

### MOELIS' DISINTERESTEDNESS

35.     Moelis has reviewed the list of parties in interest provided by the Debtors.  To the best of Moelis' knowledge, information and belief as of the date hereof, and except to the extent disclosed herein or in the Jamal Declaration, Moelis:  (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors or related parties except as disclosed in the Jamal Declaration.

36.     Given the large number of parties in interest in these Chapter 11 Cases, and despite the efforts to identify and disclose Moelis' relationships with parties in interest in these Chapter 11 Cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed in the Jamal Declaration.  Moelis has informed the Debtors that it will make continued inquiries following the filing of this Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

37.     Moelis informed the Debtors that it will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.

**BASIS FOR RELIEF**

A.    **The Debtors Should be Permitted to Retain and Employ Moelis on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code.**

38.    The Debtors seek approval of the retention and employment of Moelis pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides that a debtor in possession "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying out its duties.  11 U.S.C. § 327(a).

39.    In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Accordingly, section 328 permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

40.     As discussed above and in the Jamal Declaration, Moelis satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.  Moelis has advised  the Debtors since November 2022 and has already committed a significant amount of time and effort assisting the Debtors with their restructuring efforts.  Additionally, given the numerous issues that Moelis may be required to address in the performance of its services for the Debtors pursuant to the Engagement Letter, Moelis' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Moelis' services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

41.     Indeed, the Debtors believe that the Fee Structure including, without limitation, the Indemnification Provisions, appropriately reflects: (a) the nature and scope of services to be provided by Moelis; (b) Moelis' substantial experience with respect to investment banking and capital markets advisory services; and (c) the fee structures typically utilized by Moelis and other leading investment banks and capital markets advisors who do not bill their clients on an hourly basis, in bankruptcy or otherwise.

42.     As set forth above, and notwithstanding approval of Moelis' Engagement Letter under section 328 of the Bankruptcy Code, Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court, with certain limited modifications as set forth herein.  Furthermore, the Debtors propose that their obligation

to pay any fee, expense or indemnity to Moelis or an Indemnified Person not be subject to any reduction by way of setoff, recoupment or counterclaim.

43.    The Debtors request that the requirements of Local Rule 2016-1, the Amended Guidelines, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court be tailored to the nature of Moelis' engagement and its compensation structure.  Moelis has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis.  Additionally, it is not the general practice of investment banking firms like Moelis to keep detailed time records similar to those customarily kept by attorneys.  As discussed above, however, Moelis' restructuring professionals, when formally retained in these Chapter 11 Cases, and when required by Local Rules, do, and in these Chapter 11 Cases, will, keep summary time records in hourly increments describing their daily activities and the identity of the restructuring professionals who performed such tasks.  As such, the Debtors request modification of the requirements under Local Rule 2016-1, the Amended Guidelines, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court.

*44.*    Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases.  *See, e.g.*, *In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12 2021); *In re Mallinkrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. Nov. 23, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); *In re Intelsat S.A.*, No. 20-

32299 (KLP) (Bankr. E.D. Va. Sept. 22, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020).

45.     The Debtors also believe that employment of Moelis effective as of the Petition Date is warranted under the circumstances of these Chapter 11 Cases.[8]  Moelis has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated transactions. *See*, *e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)).  Further, the Debtors believe that no party in interest will be prejudiced by the granting of Moelis' employment effective as of the Petition Date because Moelis has provided, and will continue to provide, valuable services to the Debtors' estates in the interim period.

**B.      The Indemnification Provisions Are Appropriate.**

46.     The Indemnification Provisions, as modified by the Proposed Order annexed hereto, were negotiated  at arm's length between the Debtors and Moelis.  The Debtors and Moelis believe that the Indemnification Provisions are customary and reasonable for investment banking engagements both out of court and in chapter 11 cases. Similar provisions have been approved by

---

[8]      In *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, the U.S. Supreme Court rejected a district court's *nunc pro tunc* order that made remand to state court effective as of a previous date, finding that the order could not "creat[e] 'facts' that never occurred" to cure the state court's lack of jurisdiction while the case was removed to federal court. 140 S. Ct. 696, 701 (2020).  This is not relevant to *nunc pro tunc* orders where, as here, the court plainly has jurisdiction over the Chapter 11 Cases as of the Petition Date and looks to exercise its discretion to grant retroactive compensation.  Indeed, courts have continued to routinely approve *nunc pro tunc* employment of estate professionals following *Acevedo*.  *See, e.g.*, Order, *In re Internap Tech. Solutions Inc.*, Case No. 20-22393 (RDD) (Bankr. S.D.N.Y. Apr. 23, 2020), ECF No. 131; Order, *In re The McClatchy Co.*, Case No. 20-10418 (MEW) (Bankr. S.D.N.Y. Mar. 26, 2020), ECF No. 232; Order, *In re Fairway Group Holdings Corp.*, Case No. 20-10161 (JLG) (Bankr. S.D.N.Y. Mar. 4, 2020), ECF No. 251.  To the extent that this Court or others find that *Acevedo* impacts this Court's ability to grant *nunc pro tunc* relief, this Court would nonetheless retain power to exercise its equitable discretion and award compensation prior to the date of entry of the order.  *See In re Benitez*, No. 8-19-70230 (REG), 2020 WL 1272258, at *2 (Bankr. E.D.N.Y. Mar. 13, 2020); *see also In re Miller*, 620 B.R. 637, 641–43 (Bankr. E.D. Cal. Oct. 13, 2020).

courts in other large chapter 11 cases. *See, e.g.*, *In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12 2021); *In re Mallinkrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re CBL & Assocs. Props., Inc.*, No. 20-35224 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. Nov. 23, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020).

47.     Accordingly, the Debtors respectfully submit that the terms of the modified Indemnification Provisions are reasonable and customary and should be approved in these chapter 11 cases.

**C.     The Retention of Moelis Is Critical to the Debtors' Chapter 11 Efforts.**

48.     The Debtors submit that the retention of Moelis is in the best interests of all parties in interest in these Chapter 11 Cases.  As set forth above, Moelis has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  Moelis is a preeminent investment banking and capital markets advisory firm that is intimately familiar with the Debtors' businesses.  Denial of the relief requested herein will deprive the Debtors of the assistance of Moelis' uniquely qualified professionals who began advising them in November 2022 and have continued to assist them following the Petition Date.  Indeed, if the Debtors were forced to engage a new investment banker and capital markets advisor, such replacement would lack a thorough understanding of the Debtors' businesses and the initiatives that have been implemented over the course of Moelis' engagement, and would require

the commitment of significant resources to educate such replacement, causing significant delay and increased cost.  Based on services performed to date, Moelis has been integral to preparing the Debtors for these Chapter 11 Cases.

49.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Debtors to retain and employ Moelis in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

## NOTICE

50.    Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Committee, if any; (iii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iv) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

51.    No previous application or other request for the relief sought herein has been made to this or any other court.

[*The remainder of this page is intentionally left blank.*]

## **CONCLUSION**

WHEREFORE, for the reason set forth herein the Debtors respectfully request that this

Court (a) enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit B</u> and (b)

grant such other and further relief as is just and proper.


Dated:    February 8, 2023
         New York, New York

        */s/ Sean A. O'Neal*
        Sean A. O'Neal
        Jane VanLare
        CLEARY GOTTLIEB STEEN & HAMILTON LLP
        One Liberty Plaza
        New York, New York 10006
        Telephone: (212) 225-2000
        Facsimile: (212) 225-3999

        *Proposed Counsel to the Debtors and*
        *Debtors-in-Possession*

## **EXHIBIT A**

**Jamal Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### DECLARATION OF ZUL JAMAL
### IN SUPPORT OF APPLICATION OF DEBTORS
### FOR ENTRY OF ORDER AUTHORIZING EMPLOYMENT AND
### RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER
### AND CAPITAL MARKETS ADVISOR EFFECTIVE AS OF THE PETITION DATE

I, Zul Jamal, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1.    I am a Managing Director in the Capital Structure Advisory Group at Moelis & Company LLC ("Moelis"), the proposed investment banker and capital markets advisor to the above-captioned debtors and debtors-in-possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), which has its principal office at 399 Park Avenue, 5th Floor, New York, New York 10022.

2.    I received a B.S. in Economics from the Wharton School at the University of Pennsylvania, graduating magna cum laude in 1999.

3.    I have extensive experience in investment banking and for the past twenty two years my work has focused on advising debtors, creditors, and equity holders in a wide range of recapitalization and restructuring transactions, including procuring, structuring, and negotiating

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

postpetition financing facilities across a broad range of industries, such as industrials, transportation, media, and telecommunications.

4.      Prior to joining Moelis, I was a Senior Vice President at Jefferies & Company, where I advised clients on a wide variety of restructuring transactions, including chapter 11 bankruptcies, exchange offers, consent solicitations, lender negotiations, and distressed financings. I also worked at Jefferies International in London where I was responsible for international financial sponsor, restructuring, and leveraged finance activities. I joined Moelis in 2008 as a Senior Vice President and was promoted to the position of Managing Director in 2011.

5.      At Moelis, I have focused full-time on bankruptcy and restructuring situations, representing debtors, creditors, and investors in both in-court and out-of-court restructurings in the United States, Europe, and Asia.  As a Managing Director, I am responsible for the day-to-day activities of the Moelis deal team.

6.      Since I began my career, my experience includes numerous notable restructuring assignments, such as Alpha Media, American Media, Inc., AMR Corporation, Core Digital Media, Inc., Dex Media, Inc., Energy Future Holdings, Hexion Topco, LLC, Innkeepers USA Trust, Lyondell Chemical Company, Momentive Performance Materials, Inc., RentPath, Sorenson Communications, Inc., Tribune Company, Aleris International Inc., Aston Martin., Advanced Glassfiber Yarns, Advanced Lighting Technologies, Cone Mills Corp, Crown Cork & Seal Co, Holley Performance Products, Inc., Jason Industries, and Russell-Stanley Holdings, Inc.

7.      I am authorized to submit this declaration (the "Declaration") in support of the *Application of Debtors for Entry of an Order Authorizing the Employment and Retention of Moelis*

*& Company LLC as Investment Banker and Capital Markets Advisor Effective as of the Petition Date* (the "Application").[2]

8.      The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, or upon client matter records kept in the ordinary course of business that were reviewed either by me or other employees of Moelis under my supervision and direction.  If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

## MOELIS' QUALIFICATIONS

9.      Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has approximately 1,100 employees with geographic locations in North and South America, Europe, the Middle East, and Asia.  Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

10.     Moelis provides a broad range of capital advisory and investment banking services to its clients, including:  (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases.  Moelis' business reorganization professionals have served as capital markets advisors and/or investment bankers in numerous cases, including:  *In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y.

---

[2]      Capitalized terms used but not otherwise defined herein have the meanings given to them in the Application.

Aug. 16, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022);

*In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12 2021); *In re Mallinkrodt plc*, No.

20-12522 (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re CBL & Assocs. Props., Inc.*, No. 20-35226

(DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); *In re Energy Alloys Holdings, LLC*, No. 20-12088

(MFW) (Bankr. D. Del. Nov. 23, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr.

S.D.N.Y. Aug. 27, 2020); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22,

2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5,

2020).[3]

11.      Moelis began advising the Debtors on strategic and restructuring initiatives prior to

the commencement of these cases.  Moelis was initially engaged as the Debtors' investment banker

and capital markets advisor in November 2022 and has provided extensive prepetition services in

connection with the Debtors' restructuring efforts since then.

12.      As a result of its prepetition work with the Debtors, Moelis has developed valuable

institutional knowledge regarding the Debtors' businesses, operations, capital structure and other

material information.  Accordingly, I believe Moelis is well-qualified to represent the Debtors in

a cost-effective, efficient and timely manner.

<u>**SERVICES TO BE PROVIDED**</u>

13.      Subject to further order of the Court, and as set forth more fully in the Engagement

Letter attached to the Proposed Order as <u>Exhibit 1</u>, in consideration for the compensation

---

[3]      Because of the voluminous nature of the orders cited herein, such orders are not attached to this Declaration.
Copies of these orders are available upon request of the Debtors' proposed counsel.

contemplated therein, Moelis has and will perform the following services the ("Services"), as

requested, for the Debtors:[4]

    (a)    assist the Debtors in reviewing and analyzing the Debtors' results of operations, financial condition and business plan;

    (b)    assist the Debtors in reviewing and analyzing any potential Restructuring, Sale Transaction, or Capital Transaction;

    (c)    assist the Debtors in negotiating any Restructuring, Sale Transaction or Capital Transaction;

    (d)    advise the Debtors on the terms of securities they may offer in any potential Capital Transaction;

    (e)    advise the Debtors on their preparation of information memoranda for, a potential Sale Transaction or Capital Transaction (each, an "Information Memo");

    (f)    assist the Debtors in contacting potential purchasers of a Capital Transaction that Moelis, Counsel and/or the Debtors agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Debtors' assets, properties or businesses that is acceptable to the Debtors, subject to customary business confidentiality agreements; and

    (g)    provide such other capital advisory and investment banking services in connection with Restructuring, Sale Transaction, or Capital Transaction as Moelis and the Debtors may mutually agree upon.

    14.    I believe these professional services are necessary to the Debtors' restructuring

efforts and in the ongoing operation and management of the Debtors' businesses while subject to

chapter 11 of the Bankruptcy Code.  Further, if the Debtors request that Moelis perform services

not contemplated by the Moelis Engagement Letter, Moelis and the Debtors will agree, in writing,

on the terms for such services and seek the Court's approval.  I believe that the employment of

Moelis is important to enabling the Debtors to execute their duties as debtors in possession and to

effectuate their reorganization efforts.

---

[4]    The summary of the Engagement Letter in this Declaration is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used and not otherwise defined in this Declaration shall have the meanings ascribed to them in the Engagement Letter.

## PROFESSIONAL COMPENSATION

15.     Moelis' decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter, pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

16.     Moelis does not typically charge for its services on an hourly basis. Instead, it customarily charges a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction. The Engagement Letter follows this custom in the capital advisory and investment banking industry and sets forth the monthly and transaction-based fees that are to be payable to Moelis.

17.     As set forth more fully in the Engagement Letter, Moelis and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee Structure"). The Debtors have agreed to pay Moelis the following cash fees:

i.   **Retainer Fee.** Promptly after execution of the Engagement Letter, a retainer fee of $500,000 (the "Retainer Fee"). The Retainer Fee shall be offset, to the extent previously paid, against the Restructuring Fee or the Sale Transaction Fee.

ii.  **Monthly Fee.** During the term of the Engagement Letter, a fee of $200,000 per month (the "Monthly Fee"), payable in advance of each month. The Debtors paid the first Monthly Fee immediately upon the execution of the Engagement Letter, and shall pay all subsequent Monthly Fees prior to each monthly anniversary of the date of the Engagement Letter. Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of the Engagement Letter. After 4 months, 50% of the Monthly Fee shall be offset, to the extent previously paid, against the first Sale Transaction Fee or the first Restructuring Fee.

iii. **Restructuring Fee.** At the closing of a Restructuring, a fee (the "Restructuring Fee") of $10,000,000; provided, that only one Restructuring Fee shall be payable pursuant to the Engagement Letter irrespective of the occurrence of

any later events involving the Debtors that fall within the definition of Restructuring; provided further if the Restructuring occurs in one or more transactions or a series of transactions, the Restructuring Fee shall be paid only upon the completion of the Restructuring.

iv.  **Sale Transaction Fee.** At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $10,000,000. In the event of a Sale Transaction that is consummated pursuant to section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Restructuring Fee. To the extent a Transaction is both a Sale Transaction and a Restructuring Transaction, the Debtors shall pay only the Restructuring Fee.

v.  **Capital Transaction Fee.** At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") as follows:

   a.  1.0% of the amount Raised (as defined below) in a Capital Transaction that is a first-lien debt financing, including a debtor-in-possession ("DIP") financing; provided, however, that 50% of any fee earned on a DIP financing will be offset, to the extent previously paid, against the first Sale Transaction Fee or the first Restructuring Fee; plus

   b.  2.50% of the amount Raised in a Capital Transaction that is any other debt financing; plus

   c.  3.00% of the amount Raised in a Capital Transaction that is equity, equity-linked interests, options, warrants or other rights to acquire equity interests.

The Debtors will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs. "Raised" includes the amount committed to the Debtors, whether or not the Debtors draw the full amount, and whether or not the Debtors apply such amounts to refinance any of their obligations. Notwithstanding anything to the contrary, in the event that the source of the capital is Digital Currency Group, Inc. ("DCG"), Gemini Trust Company, LLC, ("Gemini") or existing creditors of the Company ("Creditors") or any affiliates of DCG, Gemini or Creditors (each, a "Designated Party") such transaction will not constitute a "Capital Transaction" under the Engagement Letter and the Capital Transaction Fee will not be payable; provided, however, that if Moelis has launched a process with respect to a Capital Transaction at the request of the Debtors, and the Debtors have received a bona fide bid (a "Bid") for a Capital Transaction from a third party that is not a Designated Party and a Designated Party completes a transaction on economic terms substantially similar to or better than those set forth in such Bid, Moelis will be entitled to a Capital

> Transaction Fee equal to 50% of the Capital Transaction Fee that would have
> been paid had a Capital Transaction been completed pursuant to such Bid.[5]

18.     If, at any time prior to the end of the Tail Period,[6] the Debtors consummate any

Restructuring, Sale Transaction, or Capital Transaction or enter into an agreement or a Plan is filed

regarding any Restructuring, Sale Transaction, or Capital Transaction and a Restructuring, Sale

Transaction, or Capital Transaction is subsequently consummated, then the Debtors (or their

bankruptcy estates) shall pay Moelis the applicable Transaction Fee(s) as specified above and in

section 2(a) of the Engagement Letter immediately upon the closing of any such Transaction(s).

19.     In addition to any fees payable to Moelis, the Debtors will reimburse Moelis for all

its expenses as they are incurred in performing services pursuant to the Engagement Letter,

whether or not the Debtors consummate a Restructuring, Sale Transaction, or Capital Transaction.

Such expenses include, without limitation, insourced document production costs, travel costs, and

the reasonable costs of Moelis' external legal counsel (without the need for such legal counsel to

be retained as a professional in these Chapter 11 Cases and without regard to whether such legal

counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

20.     Moelis intends to apply for compensation for professional services rendered and

reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the

Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, the Amended Guidelines and any

other applicable procedures and orders of the Court, including any order granting this Application

---

[5]     In addition, the Engagement Letter provides for a fee payable upon the closing of a Discrete Asset Sale (as
defined below) in a customary and market amount to be agreed upon by the Debtors and Moelis in good faith (the
"Discrete Asset Sale Fee"), a to-be-negotiated portion of which would be offset against the first Sale Transaction Fee
or the Restructuring Fee (to the extent previously paid).  A "Discrete Asset Sale" includes any sale, disposition or
other transfer of the assets, properties, or businesses of the Debtors that does not constitute a Sale Transaction. Moelis
and the Debtors are not seeking approval of the Discrete Asset Sale Fee at this time.

[6]     The "Tail Period" shall end 12 months following the expiration or termination of the Engagement Letter.

(to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

21.    However, because (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys, (b) Moelis does not ordinarily keep time records on a "project category" basis, and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees, I respectfully request that only Moelis' restructuring professionals who advise or provide professional services to or on behalf of the Debtors be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments) and the identity of the professionals who provided those services, consistent with its ordinary practice. Moelis will present such records to the Court in its fee application(s). Moreover, I respectfully request that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including internal legal) not be required to maintain any time records, and that we not be required to provide or conform to any schedule of hourly rates. To the extent that Moelis would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, I respectfully request that this Court waive such requirements.

22.    Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these Chapter 11 Cases. In the event that Moelis seeks reimbursement for attorneys' fees during the term of these Chapter 11 Cases, Moelis will include the applicable invoices and supporting time records from such attorneys in

Moelis' own application, both interim and final.  Such invoices and time records will be subject to

the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code,

without regard to whether such attorneys have been retained under section 327 of the Bankruptcy

Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the

Bankruptcy Code.

23.    I believe the Fee Structure is reasonable, consistent with, and typical of

compensation arrangements entered into by Moelis and other comparable firms in connection with

the rendering of similar services under similar circumstances, both in and out of bankruptcy

proceedings.  I also believe that the Fee Structure reflects a proper balance between a fixed,

monthly fee, and a contingency amount, which is tied to the consummation and closing of the

transactions and services contemplated by the Debtors and Moelis in the Engagement Letter.  The

Fee Structure is consistent with Moelis' normal and customary billing practices for cases of this

size and complexity that require the level of scope and services outlined herein.  After discussions

and arm's-length negotiations with the Debtors, I believe that the Fee Structure is reasonable,

market based and designed to compensate Moelis fairly for its work.

24.    I understand that Moelis' strategic and financial expertise, as well as its capital

markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions

expertise, some or all of which have been and will be required by the Debtors during the term of

Moelis' engagement, were all important factors in determining the Fee Structure.  I believe that

the ultimate benefit of Moelis' services cannot be measured by reference to the number of hours

to be expended by Moelis' professionals in the performance of such services.  Moelis and the

Debtors have agreed upon the Fee Structure in anticipation that a substantial commitment of

professional time and effort will be required of Moelis and its professionals in connection with

these Chapter 11 Cases and in light of the fact that (a) such commitment may foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

25.    During the 90-day period prior to the Petition Date, the Debtors paid in the ordinary course certain fees and expense reimbursements due under the Engagement Letter.  Specifically, according to the Debtors' books and records, the Debtors paid Moelis (a) the Retainer Fee in the amount of $500,000; (b) Monthly Fees in the amount of $677,419.34 for the period from November 20, 2022 to February 28, 2023; (c) reimbursement of expenses in the amount of $9,557.32; and (d) an expense advance retainer in the amount of $25,000 (the "Expense Advance").  As of the Petition Date, the Debtors do not owe Moelis any fees for services performed or expenses incurred under the Engagement Letter in excess of the Expense Advance, which Moelis is holding on account of prepetition expenses incurred in connection with the Engagement Letter.

## INDEMNIFICATION PROVISIONS

26.    As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtors have agreed to indemnify and hold harmless any and all Indemnified Persons (as defined in the Engagement Letter), and pay certain contributions and reimbursements to, Moelis in accordance with the terms and conditions set forth in the Engagement Letter, including Annex A thereto (such provisions, collectively, the "Indemnification Provisions").  As set forth more fully therein, under the Indemnification Provisions, if any Indemnified Person becomes involved in any capacity in any Action (as defined in the Engagement Letter), the Debtors will reimburse such Indemnified Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such

Action or enforcing the Engagement Letter, as they are incurred.  The Debtors will also indemnify and hold harmless any Indemnified Person from and against, and the Debtors agree that no Indemnified Person shall have any liability to the Debtors, Counsel or their respective affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to the Debtors' or Counsel's actions or omissions (or the actions or omissions of the Debtors' officers, directors, employees and agents other than Moelis) in connection with the Engagement Letter or the matters referred to therein), or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Debtors or their agents in connection with the Engagement Letter or the matters referred to therein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Debtors to any purchaser or seller of a security in any transaction contemplated by the Engagement Letter), or (B) otherwise arising out of, related to or in connection with the Engagement Letter or Moelis' performance thereunder or any other services or advice the Debtors request any Indemnified Person to provide (in each case, including prior to the date of the Engagement Letter), except that this clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, gross negligence or willful misconduct of such Indemnified Person.[7]

27.    I believe that the Indemnification Provisions are customary and reasonable terms of consideration for investment bankers and capital markets advisors such as Moelis in connection with in court and out of court restructuring activities.  Moelis negotiated the Engagement Letter, including the Indemnification Provisions, with the Debtors in good faith and at arm's length.

---

[7]    To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Annex A to the Engagement Letter, the terms of the Engagement Letter shall control.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

28.     The Debtors have applied, or expect to apply, to the Court to retain additional professionals, including: (a) Cleary Gottlieb Steen & Hamilton LLP; (b) Alvarez & Marsal North America, LLC, (c) Morrison Cohen LLP, (d) Kroll Restructuring Administration LLC, and (e) Kobre & Kim LLP.  Moelis is mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Moelis' retention as investment banker and capital markets advisor.  Moelis will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

## MOELIS' DISINTERESTEDNESS

29.     Moelis has undertaken to determine whether it has any conflicts or other relationships that might cause it not to be eligible for employment by the Debtors in these cases. Specifically, Moelis obtained from the Debtors the names of individuals and entities that may be parties in interest in these cases.  Moelis then (a) researched its internal records to determine whether Moelis has any connections with the Debtors and the parties listed on Schedule 1 attached hereto (the "Potential Parties in Interest"), and (b) issued a general inquiry to certain of its officers with respect to the Debtors and certain Potential Parties in Interest.

30.     Based on the foregoing inquiry, other than in connection with this engagement and as otherwise disclosed herein, Moelis has no relationships or connections with the Debtors of which I am aware.  In particular, to the best of my knowledge, information and belief, neither I, Moelis, nor any of its professionals:

> i.      is a creditor, equity security holder or insider of the Debtors;
>
> ii.     is or has been within three years before the Petition Date, a director, officer or employee of the Debtors; or

iii.    has any interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

31.    Accordingly, I believe Moelis is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors or their estates.

32.    Neither I nor any of the Moelis professionals who will provide services for the Debtors is related to any Judge of this Court, the U.S. Trustee, or any person employed in the office of the U.S. Trustee assigned to these chapter 11 cases.

33.    To the extent that I have been able to ascertain to date that Moelis has been engaged within the last three years or is currently engaged by any of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to these cases, such facts are disclosed on Schedule 2 attached hereto.  Schedule 2 also sets forth certain other relationships Moelis has with certain Potential Parties in Interest.  In addition to the facts disclosed on Schedule 2, Moelis may in the future be engaged by parties that are or may become parties in interest in these cases.  As these cases progress, new parties may become parties in interest in these cases and similarly, Moelis may have been engaged, may be currently engaged, and may in the future be engaged by such new parties in interest in matters unrelated to these Chapter 11 Cases.  Also, Moelis may have engaged or had mutual clients with, may currently engage or have mutual clients with, and may in the future engage or have mutual clients with certain law firms, capital markets advisors, accounting firms, and other professionals that are Potential Parties in Interest or may become parties in interest, all in matters unrelated to these cases.  In addition, Moelis may have also been engaged by, be currently engaged by, or in the future be engaged by persons who are creditors or shareholders of the Debtors, otherwise have a business relationship with the Debtors, or who are

competitors or customers of the Debtors.  Potential Parties in Interest, persons that may become parties in interest in these cases, and persons that have business relationships with the Debtors, are competitors of the Debtors, or that are customers of the Debtors may be:  (a) parties in interest in other bankruptcy cases where Moelis is acting as investment banker or capital markets advisor to the debtors or to other parties in interest therein; or (b) may be affiliates of or creditors of persons who Moelis may have been engaged, is currently engaged, or may in the future be engaged by.  In the ordinary course of its business, Moelis may also purchase services or products from Potential Parties in Interest and other persons that are or may become parties in interest in these Chapter 11 Cases.

34.     Given the large number of parties in interest in these Chapter 11 Cases, despite the efforts described above to identify and disclose Moelis' relationships with parties in interest in these Chapter 11 Cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed.  In particular, among other things, Moelis may have relationships with persons who are beneficial owners of parties in interest and persons whose beneficial owners include parties in interest or persons who otherwise have relationships with parties in interest.  Moreover, Moelis' employees may have relationships with Potential Parties in Interest, persons that may become parties in interest in these cases, and/or persons that have business relationships with the Debtors, are competitors of the Debtors, or are customers of the Debtors.  Continued inquiry will be made following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

35.     Moelis Asset Management ("MAM") is an asset management holding company that is controlled by Kenneth Moelis, who also controls Moelis.  MAM holds interests in various funds, including private equity, credit investments, direct lending and collateralized loan

obligations funds.  These funds may hold investment positions in various entities from time-to-time, some of which may be parties in interest in these Chapter 11 Cases.  MAM and its subsidiaries are operated in separate legal and operating entities from Moelis and its financial advisory affiliates.  MAM and its subsidiaries are separated from Moelis and its financial advisory affiliates by a compliance information barrier that prevents (a) an employee of Moelis and its financial advisory affiliates from disclosing non-public information concerning the Debtors or these cases to any employee of MAM or its subsidiaries, and (b) an employee of MAM or its subsidiaries from disclosing non-public information concerning an investment of a MAM subsidiary to an employee of Moelis or its financial advisory affiliates.  No employees of MAM or its subsidiaries will work on these cases, and employees of Moelis working on these cases have no involvement in the investment decisions of MAM's subsidiaries.  Based on the business separation and compliance information barriers referred to above, I do not believe that the investment activities of MAM's subsidiaries constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.

36.    To the best of my knowledge, information, and belief, some of Moelis' present and future employees may have, or may in the future have, personal investments in funds or other investment vehicles over whose investment decisions such employees have no input or control. Such entities may have made, or may in the future make, investments in the claims or securities of the Debtors, or those of their creditors or other parties in interest in these Chapter 11 Cases.

37.    Moelis will not share any compensation to be paid by the Debtors in connection with services to be performed after the Petition Date with any other person, other than other principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code. In the ordinary course of its business, Moelis regularly retains the services of senior advisors with

specific industry or other expertise to supplement the investment banking and financial advisory services offered by Moelis' regular employees to Moelis' clients.  Upon Moelis' engagement on a particular assignment, one such senior advisor may be assigned to assist the other Moelis professionals for such engagement.  Such advisor acts under the management of the Moelis Managing Director who retains the lead role and primary responsibility for such assignment.  The fees and expenses of such senior advisor are paid solely by Moelis.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 8th day of February, 2023.


*/s/ Zul Jamal*
Zul Jamal
Managing Director
Moelis & Company LLC

## SCHEDULE 1

**Potential Parties in Interest**

**(A) ALL DEBTORS**

Genesis Asia Pacific PTE. LTD
Genesis Global Capital LLC
Genesis Global Holdco, LLC

## (B) KNOWN AFFILIATES – JV

Digital Currency Group, Inc.

Genesis Asia (Hong Kong) Limited

Genesis Bermuda Holdco Limited

Genesis Custody Limited

Genesis Global Assets, LLC

Genesis Global Labs, LLC

Genesis Global Markets Limited

Genesis Global Trading, Inc.

Genesis UK Holdco Limited

GGA International Limited (BVI)

GGC International, Ltd (BVI)

## (C) DIRECTORS AND OFFICERS

A. Derar Islim

Agnes Chen Meiyun

Alice Chan

Andrew Sullivan

Arianna Pretto-Sakmann

Brian Bulthius

Diana Kim

Gan Lee Teng

Mark Murphy

Matthew Johnson

Michael Kraines

Michael Patterson

Paul Aronzon

Sugandhi Govil

Tom Conheeney

## (D) TOP 50 CLIENTS

Altcoinomy SA

[On File]

[On File]

[On File]

Bayhawk Fund LLC

[On File]

Big Time Studios Ltd.

[On File]

[On File]

[On File]

Caramila Capital Management LLC

Claure Group LLC

Coincident Capital International, Ltd.

Coinhouse

Cumberland DRW LLC

[On File]

[On File]

[On File]

Digital Finance Group

Donut, Inc.

Heliva International Corp

[On File]

[On File]

Levity & Love, LLC

[On File]

[On File]

Mirana Corp.

Moonalpha Financial Services Limited

[On File]

[On File]

[On File]

Plutus Lending LLC

[On File]

Ripio International

[On File]

[On File]

Schnutz Investments LP

Stellar Development Foundation

Streami Inc.

[On File]

The Badger Technology Company
Holdings, Ltd.

Valour, Inc.

VanEck New Finance Income Fund, LP

[On File]

[On File]

[On File]

[On File]

Winah Securities S.A.

[On File]

[On File]

## (E) BANKS/LENDER/UCC LIEN PARTIES/ADMINISTRATIVE AGENTS

Anchorage Lending CA, LLC

Banking Circle

Continental Stock Transfer & Trust

Houlihan Lokey

Industrial and Commercial Bank of China

JPMorgan Chase Bank, NA

JPMorgan Chase Bank, NA Singapore

Marex Captial Markets, Inc.

Metropolitan  Commercial Bank

Signature Bank

Silvergate Bank

Tradestation

## (F) SIGNIFICANT VENDORS OF THE DEBTOR

250 Park LLC

ACRION GROUP INC/Dmitri Gofshtein

Agon Litigation

Amazon Web Services

American Arbitration Association

Anchorage Digital Bank, National Association

Andy McMullen

BitGo, Inc.

Bloomberg LP

CAPITEQ PTE. LTD.

CDW Direct LLC

Chicago Mercantile Exchange Inc NEED PO

CJD Technologies

CloudFlare, Inc.

CMS Cameron McKenna Nabarro Olswang LLP

Coinbase Custody Trust

Compliancy Services

Corver Roos

Cyberfort Ltd

Dashlane USA Inc

Davis Polk & Wardwell LLP

DCG Real Estate Management LLC

Driven

Ernst & Young LLP

Fireblocks Inc.

Friedman LLP

GitLab Inc

Global Fund Media Limited

Goodwin Procter LLP

Gowling WLG (Canada) LLP

Halborn Inc.

IBM Corporation

I-Net Technologies

Intelliware Development Inc

JAMS, Inc.

Kleinberg Kaplan Wolff & Cohen P.C.

Kyte Broking Limited

Levin Group Ltd

Mana Holdings Ltd

Managed Funds Association

Massive Computing, Inc

Meitar Law Offices

Milken Institute

Mintz Levin Cohn Ferris Glovsky and Popeo P.C.

Mitchell Martin

Moore & Van Allen PLLC

Morrison Cohen LLP

Murphy & Mcgonigle P.C.

Nakul Verma

Numerix LLC

Okta Inc

One Raffles Quay Pte Ltd

One11 Racing LLC

OnStream LLC

Opswat, Inc.

Opus Recruitment Solutions Ltd

Ordinary Folk

Orrick, Herrington & Sutcliffe, LLP

Papaya Global, Inc.

Perkins Coie LLP

Phaidon International Inc

Pico Quantitative Trading

Private Chefs of Atlanta

Pythian Services, Inc.

Reed Smith Pte. Ltd

Richards Layton & Finger

Roman Mashtalyar

SALT Venture Group, LLC

Savills (Singapore) PTE LTD

Shearman & Sterling LLP

Snowflake Inc.

Spire Search Partners

Stop Pest Control Of NY, INC.

STORM2 PTE LTD

Stott and May

Structure Works

T2 CONSULTING, LLC

The Furniture X-Change

The TIE, Inc

Unispace Of Boston, LLC

United Corporate Services Inc

VIP Sports Marketing, Inc.

Wolters Kluwer financial Services Inc.

Woodruff Sawyer

## (G)CONTRACT COUNTERPARTIES

Talos Trading, Inc
WorkSocial.com LLC

## (H)SIGNIFICANT INSURERS

Axis Capital

Forge Insurance Company

Lloyd's of London

Starr Insurance & Reinsurance Limited

### (I)  BANKRUPTCY PROFESSIONALS - OTHER

Alvarez & Marsal Holdings, LLC

Cleary Gottlieb Steen & Hamilton LLP

Kirkland & Ellis LLP

### (J) TAXING AUTHORITY/GOVERNMENTAL/REGULATORY AGENCIES

Inland Revenue Authority of Singapore
Monetary Authority of Singapore

## (K)LITIGATION

[On File]

### (L) U.S. TRUSTEE, JUDGES, AND COURT CONTACTS FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Abriano, Victor | Schmitt, Kathleen |
| Allen, Joseph | Schwartz, Andrea B. |
| Arbeit, Susan | Schwartzberg, Paul K. |
| Beckerman, Lisa G. | Scott, Shannon |
| Bentley, Phillip | Sharp, Sylvester |
| Black, Christine | Tiantian, Tara |
| Bruh, Mark | Van Baalen, Guy A. |
| Chapman, Shelley C. | Velez-Rivera, Andy |
| Cornell, Shara | Vescovacci, Madeleine |
| Drain, Robert D. | Wells, Annie |
| Gannone, James | Wiles, Michael E. |
| Garrity, James L., Jr. | Zipes, Greg M. |
| Glenn, Martin | |
| Harrington, William K. | |
| Higgins, Benjamin J. | |
| Higgins, David S. | |
| Jones, David S. | |
| Joseph, Nadkarni | |
| Lane, Sean H. | |
| Leonhard, Alicia | |
| Mastando III, John P. | |
| Masumoto, Brian S. | |
| Mendoza, Ercilia A. | |
| Moroney, Mary V. | |
| Morris, Cecelia G. | |
| Morrissey, Richard C. | |
| Ogunleye, Alaba | |
| Penpraze, Lisa | |
| Riffkin, Linda A. | |
| Rodriguez, Ilusion | |

6

### (M)    POTENTIAL TRANSACTION COUNTERPARTIES

[List on File].

## SCHEDULE 2

**Relationship with Potential Parties in Interest**

Moelis (and its financial advisory affiliates) has been engaged within the last three years or is currently engaged by the following Potential Parties in Interest (or one or more of their affiliates, as the case may be) in matters unrelated to these cases (including where the Potential Party in Interest was only a member of an official or an ad hoc creditor committee or an equity committee):

BANKRUPTCY PROFESSIONALS - OTHER – PAST CLIENTS AND/OR AFFILIATES
- Alvarez & Marsal Holdings, LLC

TOP 50 CREDITORS – CURRENT CLIENTS AND/OR AFFILIATES
- Plutus Lending LLC

BANKS/LENDER/UCC LIEN AND PARTIES/ADMINISTRATIVE AGENTS – PAST CLIENTS AND/OR AFFILIATES
- JPMorgan Chase Bank, NA
- JPMorgan Chase Bank, NA Singapore

POTENTIAL M&A COUNTERPARTIES – CURRENT CLIENTS AND/OR AFFILIATES
- [List on File]

POTENTIAL M&A COUNTERPARTIES – PAST CLIENTS AND/OR AFFILIATES
- [List on File]

## **EXHIBIT B**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### ORDER AUTHORIZING EMPLOYMENT
### AND RETENTION OF MOELIS & COMPANY LLC
### AS INVESTMENT BANKER AND CAPITAL MARKETS
### ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases") for entry of an order ("Order"):  (a) authorizing the employment and retention of Moelis & Company LLC ("Moelis") to serve as the Debtors' investment banker and capital markets advisor effective as of the Petition Date pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"); (b) approving the provisions of the engagement letter between Moelis and Cleary Gottlieb Steen & Hamilton LLP, solely in its capacity as legal counsel to Debtor Genesis Global Holdco, LLC and its direct and indirect subsidiaries, dated as of November 20, 2022 (such agreement, together with all amendments, modifications, renewals thereof, and all documents ancillary thereto or otherwise entered into in connection therewith, the "Engagement Letter"), attached hereto as Exhibit 1, including the compensation arrangements and

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]      Capitalized terms used but not defined herein have the meanings given to them in the Application.

indemnification, contribution and reimbursement provisions set forth therein; (c) modifying the timekeeping requirements of Local Rule 2016-1, the Amended Guidelines, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court in connection with Moelis' engagement; and (d) granting such other relief as is just and proper, all as more fully set forth in the Application; and upon the Jamal Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. §157(b); and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Bankruptcy Court having determined that the relief sought in the Application is in the best interests of the Debtors estates, their creditors and other parties in interest, and that the legal and factual bases set forth in the Application, the Jamal Declaration, and at the Hearing establish just cause for the relief granted herein; and the Court being satisfied, based upon the representations made in the Application and the Jamal Declaration, that (a) Moelis does not hold or represent an interest adverse to the Debtors' estates and (b) Moelis is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and upon all of the proceedings had before this Bankruptcy Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted as set forth in this Order and the provisions set forth in the Engagement Letter (and all attachments thereto) are hereby approved, to the extent provided herein and except as otherwise expressly modified herein to the contrary.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Moelis as their investment banker and capital markets advisor in these Chapter 11 Cases in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein, to pay fees and reimburse expenses, and to provide indemnification, contribution, and/or reimbursement to Moelis on the terms and at the times specified in the Engagement Letter as modified herein, effective as of the Petition Date.

3.      Moelis shall be compensated for fees and reimbursed for out-of-pocket expenses by the Debtors in accordance with the terms of the Application and/or Engagement Letter, as modified herein, and all fees and out-of-pocket expense reimbursements to be paid to Moelis, including without limitation the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee, and the Restructuring Fee, and any amounts under the Indemnification provisions, are approved pursuant to, and shall be subject to review only under, section 328(a) of the Bankruptcy Code, except as otherwise set forth herein.  For the avoidance of doubt, the Court is not presently approving the Discrete Asset Sale Fee, without prejudice to the Debtors' and Moelis' right to seek approval of such fee at a later date.

4.      Moelis is authorized to apply the Expense Advance to any unbilled or otherwise remaining prepetition expenses that Moelis becomes aware of during its ordinary course billing review and reconciliation.  Moelis shall apply any remaining amounts of the Expense Advance as

a credit towards postpetition fees and expenses after such postpetition fees and expenses are

approved pursuant to the first order of the Court awarding fees and expenses to Moelis.

5.      Moelis shall file interim and final fee applications for allowance of compensation

and reimbursement of reasonable and documented out-of-pocket expenses pursuant to sections

330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended

Guidelines, the U.S. Trustee Guidelines and any other procedures or orders of the Bankruptcy

Court; *provided, however*, that the interim and final fee applications filed by Moelis shall be

subject to review only pursuant to the standard of review set forth in section 328(a) of the

Bankruptcy Code, and not subject to the standard of review set forth in section 330 of the

Bankruptcy Code, except as set forth herein.

6.      Notwithstanding any provision contrary in this Order, the U.S. Trustee retains all

rights to respond or object to Moelis' interim and final applications for compensation (including

without limitation the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee, and

the Restructuring Fee) and reimbursement of out-of-pocket expenses pursuant to section 330 of

the Bankruptcy Code, and the Court retains jurisdiction to consider the U.S. Trustee's response or

objection to Moelis' interim and final fee applications pursuant to section 330 of the Bankruptcy

Code; *provided, further*, that "reasonableness" shall be evaluated by comparing (among other

things) the fees payable in these Chapter 11 Cases to fees paid to comparable investment banking

firms with similar experience and reputation offering comparable services in other chapter 11 cases

and shall not be evaluated solely on an hourly or length-of-case based criteria.

7.      Notwithstanding anything to the contrary in the Application, the Engagement Letter

or herein, the requirements of the Bankruptcy Rules, the Local Rules, the Amended Guidelines,

the U.S. Trustee Guidelines and any other procedures or orders of the Court are hereby modified

such that Moelis' restructuring professionals, with the exception of clerical and administrative staff, shall be required only to keep summary time records of the services they have performed in one-hour increments, Moelis' non-restructuring professionals and personnel in administrative departments (including internal legal) shall not be required to keep time records, Moelis' professionals shall not be required to keep time records on a project category basis, and Moelis shall not be required to provide or conform to any schedule of hourly rates.

8.      In the event that Moelis seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records (appropriately redacted to preserve applicable privileges) for the attorneys' fees and expenses shall be included in Moelis' own applications, both interim and final, and such invoices and time records shall be subject to the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.      The indemnification, exculpation, contribution, and reimbursement provisions included in Annex A to the Engagement Letter are approved, subject to the pendency of these cases to the following modifications:

  a.      Subject to the provisions of subparagraphs (b), (c), and (d) below, the Debtors are authorized to indemnify, and shall indemnify, the Indemnified Persons (as defined in the Engagement Letter) in accordance with the Engagement Letter and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with Moelis' performance of the Services described in the Engagement Letter;

  b.      All requests by Indemnified Persons for the payment of indemnification as set forth in the Engagement Letter shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter; *provided*, *however*, that in no event shall any Indemnified Person be indemnified to the extent that a court determined by final order that such

person acted in its own bad-faith, self-dealing, to which the Debtors have not consented, gross negligence, or willful misconduct;

c. In no event shall any Indemnified Person be indemnified to the extent the Debtors or a representative of the estates assert a claim for, and the Court determines by final order that such claim arose out of, such Indemnified Person's own bad-faith, self-dealing to which the Debtors have not consented, gross negligence, or willful misconduct; and

d. If Moelis or any Indemnified Person seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Moelis' own applications, both interim and final, and such invoices and time records shall be subject to the U.S. Trustee Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

10. Moelis shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

11. Such services other than set forth in the Application that the Debtors may request that Moelis provide during the course of these Chapter 11 Cases, and as agreed to by Moelis, shall be subject to separate application and order of this Court.

12. The Debtors and Moelis are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

13. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

14. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     Notwithstanding any provision to the contrary in the Application or the Engagement Letter, the Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation of this Order.

16.     To the extent that there may be any inconsistency between the terms of the Application, the Jamal Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

Dated: _____, 2023
          White Plains, New York


_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

**Engagement Letter**

Execution Copy

November 20, 2022

<u>CONFIDENTIAL</u>

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

Attention: Sean A. O'Neal

Dear Mr. O'Neal:

This agreement confirms that, since  November 20, 2022, Cleary Gottlieb Steen & Hamilton LLP ("<u>Counsel</u>"), solely in its capacity as  legal counsel to Genesis Global Holdco, LLC and its direct and indirect subsidiaries (collectively, the "<u>Company</u>") and the Company, pursuant to which Counsel, on behalf of the Company, has engaged Moelis & Company LLC ("<u>Moelis</u>") to act as the Company's exclusive financial advisor, capital markets advisor and investment banker in connection with the Company's proposed Restructuring, Sale Transaction or Capital Transaction (each as defined below).

For purposes of this Agreement, Moelis' engagement shall be deemed to be on behalf of Counsel (acting as legal counsel on behalf of the Company), and all direction as to the financial advisory services and investment banking services provided herein shall be received by Moelis from Counsel or the Company. All work done with respect to this engagement shall be confidential and protected by any applicable privileges, immunities and protections, including, but not limited to, the attorney-client privilege and the work product doctrine.  Moelis makes no representation or warranty as to the enforceability of any such privilege or doctrine.

"<u>Restructuring</u>" means any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or any material portion of the liabilities of the Company (or its direct or indirect subsidiaries) and obligations owed to the Company (or its direct or indirect subsidiaries) from other parties, including Digital Currency Group, Inc. ("<u>DCG</u>") (or its affiliates), however such result is achieved, whether in one or more transactions or a series of transactions, including, without limitation, through a plan of reorganization (a "<u>Plan</u>") going effective or conversion to Chapter 7 or any other liquidation of the Debtors confirmed in connection with a case (a "<u>Bankruptcy Case</u>") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments, an issuance of new securities, raising of new debt or equity capital, or a sale, disposition or other transfer (regardless of form), including to existing creditors of the Company, of all or a significant portion of the equity, interests, assets, properties, cash flows or businesses of the Company, it being understood and agreed that consummation of a Plan will be a Restructuring in any event.

"<u>Sale Transaction</u>" means (a) the sale, disposition or other transfer (in one or a series of transactions) of a significant portion of (i) the equity securities of the Company, or (ii) the assets, properties or businesses of the Company; or, (b) the merger, consolidation, spin-off, split-off, joint venture, partnership, reverse merger or other business combination transaction involving the Company.

"<u>Discrete Asset Sale</u>" means any sale, disposition or other transfer of the assets, properties, or businesses of the Company that does not constitute a Sale Transaction.

DocuSign Envelope ID: F1BAA04A1745B46BCAD46 49A5 47A36A7B

MOELIS & COMPANY

"Capital Transaction" means a transaction in which the Company (or any entity formed to acquire the business or assets of the Company) raises or issues any (a) secured or unsecured debt (including, without limitation, any asset-backed debt, or debtor-in-possession ("DIP") financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests.

A "Transaction" means either a Restructuring, a Sale Transaction, a Discrete Asset Sale, and/or a Capital Transaction, as the context requires.

1.  As part of our engagement, Moelis will if appropriate and requested by Counsel or the Company, as applicable:

(a)    assist in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b)    assist in reviewing and analyzing any potential Restructuring, Sale Transaction or Capital Transaction;

(c)    assist in negotiating any Restructuring, Sale Transaction or Capital Transaction;

(d)    advise on the terms of securities the Company may offer in any potential Capital Transaction.

(e)    advise on its preparation of information memoranda for a potential Sale Transaction or Capital Transaction (each, an "Information Memo");

(f)    assist in contacting potential purchasers of a Capital Transaction ("Purchasers") that Moelis, Counsel and/or the Company agree are appropriate, and meet with and provide them with the  Information Memo and such additional information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements; and

(g)    provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction or Capital Transaction as Moelis and the Company may mutually agree upon.

Please note that Moelis does not provide legal, tax, accounting or actuarial advice.  This agreement is not a commitment, express or implied, on the part of Moelis to purchase or place the Capital Transaction or any other financing and it is acknowledged that Moelis' services with respect to a Capital Transaction will be made on a reasonable best efforts basis.  Moelis' obligations under this agreement with respect to a Capital Transaction are subject to, among other things: (i) satisfactory completion of its due diligence review and (ii) satisfactory market conditions.

2.   (a)  As compensation for our services hereunder, the Company agrees to pay (and Counsel shall under no circumstances be responsible for) to Moelis the following nonrefundable cash fees:

MOELIS & COMPANY

Retainer Fee

(i)    Promptly after execution of this agreement, a retainer fee of $500,000 (the "Retainer Fee"). The Retainer Fee shall be offset, to the extent previously paid, against the Restructuring Fee or the Sale Transaction Fee (as defined below).

Monthly Fee

(ii)    During the term of this agreement, a fee of $200,000 per month (the "Monthly Fee"), payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement. Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this agreement. After 4 months, 50% of the Monthly Fee shall be offset, to the extent previously paid, against the first Sale Transaction Fee or the first Restructuring Fee (as defined below).

Restructuring Fee

(iii)    At the closing of a Restructuring, a fee (the "Restructuring Fee") of $10,000,000; provided, that only one Restructuring Fee shall be payable pursuant to this agreement irrespective of the occurrence of any later events involving the Company that fall within the definition of Restructuring; provided further if the Restructuring occurs in one or more transactions or a series of transactions, the Restructuring Fee shall be paid only upon the completion of the Restructuring.

Sale Transaction Fee

(iv)    At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $10,000,000.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Restructuring Fee. To the extent a Transaction is both a Sale Transaction and a Restructuring Transaction, the Company shall pay only the Restructuring Fee.

Capital Transaction Fee

(v)    At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") as follows:

(a) 1.0% of the amount Raised (as defined below) in a Capital Transaction that is a first-lien debt financing, including a DIP financing; provided, however, that 50% of any fee earned on a DIP financing will be offset, to the extent previously paid, against the first Sale Transaction Fee or the first Restructuring Fee; plus

(b) 2.50% of the amount Raised in a Capital Transaction that is any other debt financing, plus

- -3

DocuSign Envelope ID: F1BAA04A1745946BCAD46184E547636A7B

MOELIS & COMPANY

(c) 3.00% of the amount Raised in a Capital Transaction that is equity, equity-linked interests, options, warrants or other rights to acquire equity interests.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs.  "Raised" includes the amount committed to the Company, whether or not the Company draws the full amount, and whether or not the Company applies such amounts to refinance any of its obligations.  Notwithstanding anything to the contrary, in the event that the source of the capital is DCG, Gemini Trust Company, LLC, ("Gemini") or existing creditors of the Company ("Creditors") or any affiliates of DCG, Gemini or Creditors (each, a "Designated Party") such transaction will not constitute a "Capital Transaction" hereunder and the Capital Transaction Fee will not be payable; provided, however, that if Moelis has launched a process with respect to a Capital Transaction at the request of the Company, and the Company has received a bona fide bid (a "Bid") for a Capital Transaction from a third party that is not a Designated Party and a Designated Party completes a transaction on economic terms substantially similar to or better than those set forth in such Bid, Moelis will be entitled to a Capital Transaction Fee equal to 50% of the Capital Transaction Fee that would have been paid had a Capital Transaction been completed pursuant to such Bid.

Discrete Asset Sale Transaction Fee

(vi)    At the closing of a Discrete Asset Sale, a non-refundable cash fee (the "Discrete Asset Sale Fee"), in a customary and market amount to be agreed upon by the Company and Moelis in good faith; provided, however, that a to-be-negotiated portion of the Discrete Asset Sale Fee will be offset, to the extent previously paid, against the first Sale Transaction Fee or the First Restructuring Fee.

The fees set forth in Section 2(a)(iii), (iv), (v) and (vi) shall be referred to herein as the "Transaction Fees". The Company agrees that it will pay the applicable Transaction Fee(s) for each Transaction in accordance with the terms hereof.

If, at any time prior to the end of the Tail Period (as defined below), the Company consummates any Restructuring, Sale Transaction or Capital Transaction, or enters into an agreement (or a Plan is filed) regarding any Restructuring, Sale Transaction or Capital Transaction, and a Restructuring, Sale Transaction or Capital Transaction is subsequently consummated, then the Company (or its bankruptcy estates) shall pay Moelis the applicable Transaction Fee(s) specified in Section 2(a) above immediately upon the closing of any such Transaction(s).  The "Tail Period" shall end 12 months following the expiration or termination of this agreement.

(b) Whether or not the Company consummates a Restructuring, Sale Transaction or Capital Transaction, the Company will reimburse Moelis for all of its expenses as they are incurred in entering into and performing services pursuant to this agreement, including the costs of its legal counsel.. Moelis agrees to provide the Company with reasonable support for its expenses at the Company's request or at the Bankruptcy Court's direction.

(c) The Company's obligation to pay any fees or expenses set forth herein or to pay any amounts under **Annex A** hereto are not subject to any reduction by way of setoff, recoupment or counterclaim. All fees, expenses and any other amounts payable hereunder are payable in U.S. dollars, free and clear of any withholding taxes or deductions, to the bank account set forth on **Schedule 1**.

- -4

(d)  If Moelis is required to render services not set forth in this agreement, including, without limitation, producing documents, being deposed, providing testimony, relating to this agreement or the transactions contemplated by this agreement, the Company will pay Moelis additional fees to be mutually agreed for such services, plus reasonable costs and expenses related thereto.

(e)  Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for it.  Moreover, the actual time and effort required for the engagement may vary substantially from time to time.  In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Company.

3.  If a Bankruptcy Case is commenced:

(a)  The Company will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Company's exclusive financial adviser under this agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the date of the filing of the Bankruptcy Case.  The retention application and any order authorizing Moelis' retention must be acceptable to Moelis. Prior to commencing a Bankruptcy Case, the Company will pay all fees then earned and payable and will reimburse Moelis for all expenses that Moelis incurred prior to commencement in accordance with this agreement.

(b)  Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case.  If neither the Company nor Moelis obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Company shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to the requirements of the Bankruptcy Rules, and Moelis shall be entitled to a contingent claim with respect to any fees that become payable under the last paragraph of Section 2(a).

(c)  Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of *Annex A* shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court.  Following entry of an order authorizing our retention, the Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application.  The Company will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

(d)  The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its

DocuSign Envelope ID: F1BAA04A1745B46BCAD46 18A547A36A7B

MOELIS & COMPANY

affiliates, and their respective current and former directors, officers, partners, managers, members, agents, representatives and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4. The Company will furnish Moelis with all information concerning the Company as Moelis reasonably deems appropriate (collectively, the "Information") to execute this engagement and will provide Moelis with access to the Company's officers, directors, employees, accountants, counsel and other representatives of the Company. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will advise Moelis promptly of any material event or change in the business, affairs, condition (financial or otherwise) or prospects of the Company that occurs during the term of this agreement. In performing our services hereunder, Moelis will be entitled to use and rely upon the Information as well as publicly available information without independent verification. Moelis is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company. Moelis will be entitled to assume that financial forecasts and projections the Company or any Acquirer makes available to Moelis have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company as to the matters covered thereby. The Company authorizes Moelis to transmit any Information Memos to potential parties to a Sale Transaction or Capital Transaction. The Company will be solely responsible for the contents of any Information Memo and all other information provided to prospective Purchasers in a Capital Transaction.

Moelis will keep Information concerning the Company provided to Moelis in connection with this agreement confidential pursuant to the Confidentiality Agreement between the Company and Moelis, dated November 19, 2022, for the term thereof; provided Moelis may provide such Information to prospective Transaction parties as contemplated by this agreement.

The Company represents and warrants to Moelis that the information provided to any prospective purchaser or seller of a security by or on behalf of the Company in any Restructuring, Sale Transaction or Capital Transaction, Discrete Asset Sale Transaction (or any combination thereof), at the closing thereof, taken as a whole, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

At the closing of a Capital Transaction pursuant to an exemption from registration other than Section 1145 of the Bankruptcy Code, (i) the Company shall be deemed to make all the representations and warranties to Moelis that the Company has made to purchasers of any security, (ii) the Company shall deliver to Moelis an opinion of Company counsel to the effect that the Capital Transaction was exempt from registration under the Securities Act of 1933, as amended (the "Securities Act") and which shall also include all opinions delivered to the purchasers of any security, (iii) the Company shall deliver to Moelis from each purchaser of securities for Moelis' express benefit a big boy representation in the form of *Annex B* and (iv) the Company will also deliver to Moelis copies of such agreements, opinions, certificates and other documents delivered at the closing as Moelis may reasonably request. In addition, the Company hereby

MOELIS & COMPANY

makes the representation, warranty and covenant with respect to bad actor disqualifications set forth in **Annex B**.

5.  The Company will not disclose, summarize or refer to any of Moelis' advice or our valuation or the terms of this agreement publicly or to any third party without the prior written consent of Moelis. In the event disclosure is required by subpoena or court order, the Company will provide Moelis with reasonable advance notice and permit Moelis to comment on the form and content of the disclosure. Moelis consents to the inclusion of a summary of its valuation in the disclosure statement for a Plan, if required to be included in such disclosure statement; provided that Moelis and its counsel have approved any reference to or summary or description of the valuation in advance.  Moelis may, at our option and expense after announcement of any Transaction, announce or disclose publicly such transaction and Moelis' role in it for marketing purposes, including, without limitation, on Moelis' website, stating that Moelis has acted as exclusive financial advisor, capital markets advisor and/or investment banker, as applicable, to the Company in connection with any Transaction.  If requested by Moelis, the Company shall include a mutually acceptable reference to Moelis in any public announcement of a Restructuring.  Following a public announcement or public confirmation or Company public filing relating to a potential Transaction, Moelis may also announce or disclose publicly its role in the potential Transaction.

6.  Moelis is an independent contractor with the contractual obligations described herein owing solely to the Company. The parties agree that Moelis is not acting as an agent or fiduciary of the Company or any other party, and the Company agrees to not make any claims against Moelis based on an agency or fiduciary relationship. The Company, Counsel and Moelis agree to the indemnity and other provisions set forth in **Annex A**. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement. The obligations hereunder of the entities comprising the Company shall be joint and several.

7.  Either Counsel, the Company or Moelis may terminate this agreement upon written notice thereof to the other party.  In the event of any termination, (i) Moelis will continue to be entitled to the fees and expenses that became payable hereunder prior to termination or expiration and (ii) **Annex A**, the last paragraph of Section 2(a) and Sections 3 through 9 shall remain in full force and effect after the completion, termination or expiration of this agreement.

8.  Moelis is an independent investment bank which is engaged in a range of investment banking activities. Certain affiliates of Moelis are engaged in asset management and other activities for their own account and otherwise.  Moelis and its affiliates may have interests that differ from the interests of the Company.  Moelis and its affiliates have no duty to disclose to any party, or use for the benefit of any party, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses.  Moelis' employees, officers, partners and affiliates may at any time own the Company's securities or those of any other entity involved in any transaction contemplated by this agreement.  Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities.

Moelis is required to obtain, verify, and record information that identifies each party with whom it does business in a manner that satisfies the requirements of and in accordance with the USA Patriot Act.  Upon request, each of the parties hereto will provide Moelis with information necessary to verify such party's identity for purposes of the USA Patriot Act.

MOELIS & COMPANY

9.   This agreement and any disputes or claims that may arise out of this agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and this agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Company and Moelis. If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this agreement shall be heard exclusively in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Moelis and the Company irrevocably submit. The Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above. This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.  This agreement shall be binding upon the Company and Moelis and its and our respective successors and permitted assigns. MOELIS AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

MOELIS & COMPANY

Moelis is delighted to accept this engagement and looks forward to working with the Company.  Please sign and return the enclosed duplicate of this agreement.  The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____
    Name:  Jared Dermont
    Title: Managing Director

Accepted and agreed to as of the date first written above:

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
    Name: Sean A. O'Neal
    Title: Partner

Acknowledged and agreed to as of the date first written above:

GENESIS GLOBAL CAPITAL, LLC (ON BEHALF OF ITSELF AND ITS DIRECT AND INDIRECT SUBSIDIARIES)

By: _____
    Name: A. Derar Islim
    Title: Interim Chief Executive Officer & Board Member

-  -9

MOELIS & COMPANY

## ANNEX A

In the event that Moelis or its affiliates or any of Moelis' or Moelis' affiliates' respective current or former directors, officers, partners, managers, members, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (collectively, "Indemnified Persons") becomes involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding (an "Action") arising out of, related to or in connection with this agreement or any matter referred to herein (including, without limitation, related matters prior to the date of this agreement), the Company will reimburse such Indemnified Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing this agreement, as they are incurred; provided, however, that if it is finally judicially determined that some or all of such costs and expenses resulted from the bad faith, gross negligence or willful misconduct of an Indemnified Person, the Indemnified Person shall remit to the Company any amounts reimbursed pursuant to this sentence that relate to such costs and expenses. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company and Counsel each agrees that no Indemnified Person shall have any liability to the Company, Counsel or their respective affiliates, owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to the Company's or Counsel's actions or omissions (or the actions or omissions of the Company's officers, directors, employees and agents other than Moelis) in connection with the agreement or the matters referred to herein), or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents in connection with the agreement or the matters referred to herein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Company to any purchaser or seller of a security in any transaction contemplated by the agreement), or (B) otherwise arising out of, related to or in connection with this agreement or Moelis' performance hereunder or any other services or advice the Company requests any Indemnified Person to provide (in each case, including prior to the date of this agreement), except that this clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, gross negligence or willful misconduct of such Indemnified Person.

If such indemnification or limitation on liability for any reason is not available or is insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by Moelis, on the other hand, with respect to this agreement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company, on the one hand, and of Moelis, on the other hand, and any other equitable considerations; provided, however, that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be responsible for amounts that exceed the fees actually received by Moelis from the Company in connection with this agreement. Relative benefits to the Company, on the one hand, and Moelis, on the other hand, with respect to this agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by this agreement bears to (ii) the fees actually received by Moelis in connection with this agreement.

The Company will not without the prior written consent of Moelis (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any Action or participate in or facilitate a Settlement of any Action in respect of which indemnification is or may be sought hereunder (whether or not an Indemnified Person is a party thereto) unless such Settlement

MOELIS & COMPANY

includes a release of each Indemnified Person from any Losses arising out of such Action.  The Company will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of an Indemnified Person without such Indemnified Person's prior written consent.  No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action.  The Company's obligations set forth herein shall be in addition to any rights that any Indemnified Person may have at law or otherwise.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify Moelis in writing of its arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company and Moelis.

MOELIS & COMPANY

## ANNEX B

### Big Boy Representation

The undersigned Purchaser represents and warrants that (i) the Purchaser is a sophisticated institutional accredited investor with extensive expertise and experience in financial and business matters and in evaluating private companies and purchasing and selling their securities; (ii) the Purchaser has conducted and relied upon its own due diligence investigation of the Company and its own in-depth analysis of the merits and risks of the Capital Transaction in making its investment decision and has not relied upon any information provided by Moelis or any investigation of the Company conducted by Moelis; and (iii) the Purchaser agrees that Moelis shall have no liability to the Purchaser in connection with its purchase of the Capital Transaction.

### Bad Actor Representation and Covenant

The Company represents and warrants to Moelis that, as of the date of this engagement letter, neither the Company nor any of its respective managing members, general partners, directors and executive officers, any other officers participating in the Capital Transaction, any 20% beneficial owners of the Company, calculated on the basis of total voting power, promoters connected to the Company, nor any persons compensated for soliciting investors, including their directors, general partners and managing members (each, a "Covered Person"), have been convicted of or are otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act and as of the closing date of any Capital Transaction, neither the Company nor any Covered Person will have been convicted of or otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act. Furthermore, the Company agrees to notify Moelis immediately if at any time it becomes aware that it or any of its Covered Persons have been convicted of or are otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act.

M O E L I S & C O M P A N Y

## <u>SCHEDULE 1</u>

Wire Instructions:
Beneficiary Account: Moelis & Company LLC
Routing Number: 122016066
Account Number: 412956230
International SWIFT Code: CINAUS6L

City National Bank
525 S. Flower Street
24th Floor
Los Angeles, CA 90071