**Hearing Date: February 22, 2023 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: February 15, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, *et al.*,[1]<br><br>                  Debtors. | Chapter 11<br><br>Case No.:  23-10063 (SHL)<br><br>Jointly Administered |

**NOTICE OF DEBTORS' APPLICATION FOR AN**
**ORDER AUTHORIZING EMPLOYMENT AND RETENTION**
**OF KROLL RESTRUCTURING ADMINISTRATION LLC AS**
**ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE**

      **PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

      **PLEASE TAKE FURTHER NOTICE** that on February 8, 2023, the debtors and debtors in possession (collectively, the "Debtors"), filed the annexed *Debtors' Application For An Order Authorizing Employment And Retention Of Kroll Restructuring Administration LLC As Administrative Advisor* Nunc Pro Tunc *To The Petition Date* (the "Application").  A hearing (the

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]     Holdco, and its Debtor and non-Debtor subsidiaries are collectively referred to as the "Company".

"Hearing") on the Application will be held via Zoom before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 on **February 22, 2023 at 11:00 a.m. (Eastern Time) (the "Hearing Date")**.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections, if any, to the Application or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **February 15, 2023 at 4:00 p.m (Eastern Time) (the "Objection Deadline")** and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order").

**PLEASE TAKE FURTHER NOTICE** that if no written objections are timely filed and served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit A to the Motion, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Debtors.

Dated:  February 8, 2023
      New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT
AND RETENTION OF KROLL RESTRUCTURING ADMINISTRATION LLC
AS ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE**

Genesis Global Holdco, LLC ("Holdco") and its above-captioned debtors and debtors-in-

possession (collectively, the "Debtors" and these cases, the "Chapter 11 Cases"), hereby submit

this motion (this "Motion") for entry of an order, substantially in the form attached hereto as

Exhibit A (the "Retention Order"), authorizing the employment and retention of Kroll

Restructuring Administration LLC ("Kroll") as administrative advisor ("Administrative Advisor")

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

in the Debtors' Chapter 11 Cases effective *nunc pro tunc* to the Petition Date (as defined below).[2] In support of this Application, the Debtors rely upon the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration") and the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration" and, together with the Leto Declaration and Aronzon Declaration, the "First Day Declarations"),[3] filed contemporaneously herewith and incorporated herein by reference, and submit the *Declaration of Benjamin J. Steele, Managing Director of Kroll* (the "Steele Declaration"), attached hereto as Exhibit B, and respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter under to 28 U.S.C. §§ 157 and 1134. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are section 327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

---

[2]      In *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, the U.S. Supreme Court rejected a district court's *nunc pro tunc* order that made remand to state court effective as of a previous date, finding that the order could not "creat[e] 'facts' that never occurred" to cure the state court's lack of jurisdiction while the case was removed to federal court. 140 S. Ct. 696, 701 (2020).  This is not relevant to *nunc pro tunc* orders where, as here, the court plainly has jurisdiction over the Chapter 11 Cases as of the Petition Date and looks to exercise its discretion to grant retroactive compensation.  Indeed, courts have continued to routinely approve *nunc pro tunc* employment of estate professionals following *Acevedo*.  *See, e.g.*, Order, *In re Internap Tech. Solutions Inc.*, Case No. 20-22393 (RDD) (Bankr. S.D.N.Y. Apr. 23, 2020), ECF No. 131; Order, *In re The McClatchy Co.*, Case No. 20-10418 (MEW) (Bankr. S.D.N.Y. Mar. 26, 2020), ECF No. 232; Order, *In re Fairway Group Holdings Corp.*, Case No. 20-10161 (JLG) (Bankr. S.D.N.Y. Mar. 4, 2020), ECF No. 251.  To the extent that this Court or others find that *Acevedo* impacts this Court's ability to grant *nunc pro tunc* relief, this Court would nonetheless retain power to exercise its equitable discretion and award compensation prior to the date of entry of the order.  *See In re Benitez*, No. 8-19-70230 (REG), 2020 WL 1272258, at *2 (Bankr. E.D.N.Y. Mar. 13, 2020); *see also In re Miller*, 620 B.R. 637, 641–43 (Bankr. E.D. Cal. Oct. 13, 2020).

[3]      Capitalized terms not defined herein have the meaning ascribed to them in the First Day Declarations.

and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

## BACKGROUND

2.      Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

3.      Over the past few months, the digital asset industry has experienced tremendous dislocation.  The collapse of LUNA and TerraUSD and subsequent liquidation of 3AC signaled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.  As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022.  Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed Chapter 11 proceedings.

4.      These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business.  This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's available liquidity.  As a result of the unprecedented number and size of the loan calls, on November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders.

5.        Over the past two months, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups to explore strategic solutions.  In addition, the Debtors have undertaken cost-saving and liquidity-preserving measures.  As a result of those efforts, the Debtors have determined that an in-court process is the best path to continue their efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

6.        On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b), ECF No. 37.  No trustee or examiner has been appointed in the Chapter 11 Cases.  On February 3, 2023, an official committee of unsecured creditors (the "Committee") was appointed in these cases, ECF No. 55.

7.        While the Company's discussions with advisors to various creditor groups and DCG have been very productive in narrowing issues, they have not yet achieved a global resolution.  Accordingly, the Debtors commenced the Chapter 11 Cases to continue their efforts towards a consensual resolution through a transparent, court supervised process.  To that end, the Debtors have also filed the *Debtors' Joint Chapter 11 Plan*, ECF No. 20, a proposed plan of reorganization which will be amended as necessary to reflect the results of the Debtors' continued negotiations.

8.        Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the First Day Declarations.

**RELIEF REQUESTED**

9.     The Debtors previously filed an application (the "Section 156(c) Application") for an order appointing Kroll as claims and noticing agent pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code and Rule 5075-1 of the Local Rules, which application was granted by this Court on January 26, 2023, ECF No. 39.  The Debtors believe that administration of these Chapter 11 Cases will require Kroll to perform duties outside the scope requested in the Section 156(c) Application.  Therefore, to enable Kroll to provide services outside the scope of the order approving the Section 156(c) Application, the Debtors submit this Application, pursuant to section 327 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1, for an order authorizing the Debtors to employ and retain Kroll as Administrative Advisor for the Debtors in accordance with the Engagement Agreement, attached hereto as Exhibit C (the "Engagement Agreement").[4]

**KROLL'S QUALIFICATIONS**

10.     Kroll is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Kroll's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Kroll's professionals have acted as debtor's counsel, official claims and noticing agent and/or administrative advisor in many large bankruptcy cases in this District and in other districts nationwide.  Kroll's active and former cases include: *SAS AB*, No. 22-10925 (MEW) (Bankr. S.D.N.Y.); *Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y.); *GTT Communications, Inc.*, No.

---

[4]     The summary of the Engagement Agreement in this Application is solely for the benefit of the Court and parties in interest.  To the extent that the summary and terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control.

21-11880 (MEW) (Bankr. S.D.N.Y.); *Stoneway Cap. Ltd.*, No. 21-10646 (JLG) (Bankr. S.D.N.Y.); *GenapSys, Inc.*, No. 22-10621 (BLS) (Bankr. D. Del); *GT Real Estate Holdings, LLC*, No. 22-10505 (KBO) (Bankr. D. Del.); *Stimwave Technologies Incorporated*, No. 22-10541 (KBO) (Bankr. D. Del.); *TPC Group Inc.*, No. 22-10493 (CTG) (Bankr. D. Del); *Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex.); *Sungard AS New Holdings, LLC*, No. 22-90018 (DRJ) (Bankr. S.D. Tex.); *Aearo Technologies LLC*, No. 22-02890 (KRH) (Bankr. E.D. Va.); and *PG&E Corporation*, No. 19-30088 (DM) (Bankr. N.D. Cal.).

## SERVICES TO BE PROVIDED

11.     Pursuant to the Engagement Agreement, the Debtors seek to retain Kroll to provide, among other things, the following bankruptcy administration services, if and to the extent requested:

(a)     Assist with, among other things, solicitation, balloting and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders;

(b)     Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

(c)     Assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

(d)     Provide a confidential data room, if requested;

(e)     Manage and coordinate any distributions pursuant to a chapter 11 plan; and

(f)     Provide such other processing, solicitation, balloting and other administrative services described in the Engagement Agreement, but not included in the Section 156(c) Application, as may be requested from time to time by the Debtors, the Court or the Office of the Clerk of the Bankruptcy Court (the "Clerk").

6

## PROFESSIONAL COMPENSATION

12.     The fees Kroll will charge in connection with providing services to the Debtors are set forth in the Engagement Agreement.  The Debtors respectfully submit that Kroll's rates are competitive and comparable to the rates its competitors charge for similar services.  Indeed, the Debtors conducted a review and competitive comparison of other firms and reviewed the rates of other firms before selecting Kroll as Administrative Advisor.  The Debtors believe Kroll's rates are more than reasonable given the quality of Kroll's services and its professionals' bankruptcy expertise.  Additionally, Kroll will seek reimbursement from the Debtors for reasonable expenses in accordance with the terms of the Engagement Agreement.

13.     Kroll intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in connection with the services it provides as Administrative Advisor pursuant to the Engagement Agreement.  Kroll will comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the *Amended Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010, and any orders entered in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses.

14.     As stated in the Section 156(c) Application, prior to the Petition Date, in accordance with the terms of the Engagement Agreement, the Debtors provided Kroll an advance in the amount of $150,000, which was received by Kroll on January 11, 2023.  Kroll applied a portion of the advance (which is subject to replenishment in accordance with the order approving the 156(c) Application) to cover its actual and/or estimated prepetition fees and expenses.

15.     Except as stated in the preceding paragraph, Kroll has not received any payments from the Debtors in the 90 days prior to the Petition Date.

16.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend and hold harmless Kroll and its members, officers, employees, representatives and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Kroll's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement.   The Debtors believe that such an indemnification obligation is customary, reasonable and necessary to retain the services of an Administrative Advisor in the Chapter 11 Cases.

## DISINTERESTEDNESS

17.     Kroll has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Steele Declaration, Kroll is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

18.     Kroll believes that it does not have any relationships with creditors or parties in interest that would present a disqualifying conflict of interest.  Kroll will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## BASIS FOR RELIEF

19.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested

8

persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

20.     Bankruptcy Rule 2014(a) requires that an application for retention include:

[S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

21.     In light of the size and complexity of the Chapter 11 Cases, the Debtors respectfully submit that retaining and employing Kroll pursuant to the terms of the Engagement Agreement is necessary and in the best interests of the Debtors' estates and all parties in interest to the Chapter 11 Cases.  The Debtors also believe that the terms and conditions of the Engagement Agreement are reasonable in light of the anticipated high volume of creditors and other parties-in-interest that will be involved in the Chapter 11 Cases.

22.     Accordingly, to help manage administrative tasks with respect to the numerous creditors and other parties-in-interest that are expected to be involved in the Debtors' Chapter 11 Cases, and the complexity of such cases, the Debtors respectfully request the Court enter an order appointing Kroll as the Administrative Advisor in the Chapter 11 Cases pursuant to sections 327(a), 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1.

## NOTICE

23.     Notice of this Section 156(c) Application has been provided to the following parties or, in lieu thereof, their counsel: (a) the Office of the United States Trustee for the Southern District

9

of New York; (b) counsel to the Committee, if any, (c) the holders of the fifty (50) largest unsecured claims against the Debtors (on a consolidated basis); (d) the holders of the five (5) largest secured claims against the Debtors (on a consolidated basis); (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.  A copy of the Section 156(c) Application is also available on the Debtors' case website at https://restructuring.ra.kroll.com/genesis.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

24.    No prior request for the relief requested herein has been made to this or any other Court.

*[The remainder of the page is intentionally left blank]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form

attached hereto as <u>Exhibit A</u>, authorizing the employment and retention of Kroll as Administrative

Advisor for the Debtors and granting such other relief as may be appropriate.

Dated:  February 8, 2023        CLEARY GOTTLIEB STEEN & HAMILTON LLP
       New York, New York

                                      */s/ Sean A. O'Neal*
                                        Sean A. O'Neal
                                        Jane VanLare
                                        One Liberty Plaza
                                        New York, New York 10006
                                        Telephone:  (212) 225-2000
                                        Facsimile:  (212) 225-3999

                                        *Proposed Counsel for the Debtors*
                                        *and Debtors-in-Possession*

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

## ORDER AUTHORIZING EMPLOYMENT AND
## RETENTION OF KROLL RESTRUCTURING ADMINISTRATION LLC
## <u>AS ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE</u>

Upon the application (the "<u>Application</u>")[2] by Genesis Global Holdco, LLC ("Genesis")

and its above-captioned affiliate debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"),

for employment and retention of Kroll Restructuring Administration LLC ("<u>Kroll</u>") as

administrative advisor ("<u>Administrative Advisor</u>") *nunc pro tunc* to the Petition Date pursuant to

section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-

1 and 2016-1, all as more fully described in the Application; and upon the First Day Declarations;

and upon the Steele Declaration submitted in support of the Application as <u>Exhibit B</u>; and the

Court being satisfied that Kroll has the capability and experience to provide the services described

in the Application and that Kroll does not hold an interest adverse to the Debtors or the estates;

and good and sufficient notice of the Application having been given and no other or further notice

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

being required; and it appearing that the employment of Kroll is in the best interests of the Debtors,

their estates and creditors; and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Application is APPROVED to the extent set forth in this Order.

2.      The Debtors are authorized to retain Kroll as Administrative Advisor effective *nunc pro tunc* to the Petition Date under the terms of the Engagement Agreement, and Kroll is authorized to perform the bankruptcy administration services described in the Application and set forth in the Engagement Agreement.

3.      Kroll is authorized to take such other action to comply with all duties set forth in the Application.

4.      Kroll shall be compensated in accordance with and will file interim and final fee applications for allowance of its compensation and expenses and shall be subject to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 and the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, effective February 5, 2013 (the "Amended Guidelines").

5.      The Debtors shall indemnify Kroll under the terms of the Engagement Agreement, as modified pursuant to this Order.

6.      All requests by Kroll for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement

in respect of which indemnity is sought; *provided, however*, that in no event shall Kroll be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

7.      In the event that Kroll seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Kroll's own applications, both interim and final, and these invoices and time records shall be subject to the Amended Guidelines and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

8.      Kroll shall not be entitled to reimbursement by the Debtors for any fees, disbursements and other charges of Kroll's counsel other than those incurred in connection with a request of Kroll for payment of indemnity.

9.      Notwithstanding any provision to the contrary in the Engagement Agreement, any dispute relating to the services provided by Kroll shall be referred to arbitration consistent with the terms of the Engagement Agreement only to the extent that this Court does not have, retain or exercise jurisdiction over the dispute.

10.     The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

11.     Kroll shall exclude the Debtors' bankruptcy cases and related information, as well as information regarding any of the Debtors' non-debtor affiliates, from any file sharing

arrangement with Xclaim, Inc. or any other entity operating a marketplace or similar service to facilitate trade or resolution of claims held against bankrupt or insolvent entities.

12.     Any services Kroll will provide relating to the Debtors' schedules of assets and liabilities and statements of financial affairs shall be limited to administrative and ministerial services.  The Debtors shall remain responsible for the content and accuracy of its schedules of assets and liabilities and statements of financial affairs.

13.     The Debtors and Kroll are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

14.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

15.     In the event of any inconsistency between the Engagement Agreement, the Application, the Steele Declaration and this Order, this Order shall govern.

16.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Order.

Dated: _____, 2023       _____
          White Plains, New York              THE HONORABLE SEAN H. LANE
                                              UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**Steele Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### DECLARATION OF BENJAMIN J. STEELE IN SUPPORT OF APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF KROLL RESTRUCTURING ADMINISTRATION LLC AS ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

1.      I am a Managing Director of Kroll Restructuring Administration LLC ("Kroll"), a chapter 11 administrative services firm whose headquarters are located at 55 East 52nd Street, 17th Floor, New York, NY 10055.  Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the above-captioned debtors' (collectively, the "Debtors") *Application for an Order Authorizing Employment and Retention of Kroll Restructuring Administration LLC as Administrative Advisor* Nunc Pro Tunc *to the Petition Date*, which was filed contemporaneously herewith (the "Application").[2]

3.      Kroll is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Kroll's professionals

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Kroll's professionals have acted as debtor's counsel, official claims and noticing agent and/or administrative advisor in many large bankruptcy cases in this District and in other districts nationwide.   Kroll's active and former cases include: *SAS AB*, No. 2-10925 (MEW) (Bankr. S.D.N.Y.); *Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y.); *GTT Communications, Inc.*, No. 21-11880 (MEW) (Bankr. S.D.N.Y.); *Stoneway Capital Ltd.*, No. 21-10646 (JLG) (Bankr. S.D.N.Y.); *GenapSys, Inc.*, No. 22-10621 (BLS) (Bankr. D. Del); *GT Real Estate Holdings, LLC*, No. 22-10505 (KBO) (Bankr. D. Del.); *Stimwave Technologies Incorporated*, No. 22-10541 (KBO) (Bankr. D. Del.); *TPC Group Inc.*, No. 22-10493 (CTG) (Bankr. D. Del); *Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex.); *Sungard AS New Holdings, LLC*, No. 22-90018 (DRJ) (Bankr. S.D. Tex.); *Aearo Technologies LLC*, No. 22-02890 (KRH) (Bankr. E.D. Va.); and *PG&E Corporation*, No. 19-30088 (DM) (Bankr. N.D. Cal.).

4.      As Administrative Advisor, Kroll will perform the bankruptcy administration services specified in the Application and the Engagement Agreement.  In performing such services, Kroll will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as <u>Exhibit C</u> to the Application.

5.      As stated in the Section 156(c) Application, prior to the Petition Date, the Debtors provided Kroll an advance in the amount of $150,000, which was received by Kroll on January 11, 2023.  Kroll applied a portion of the advance (which is subject to replenishment in accordance with the order approving the 156(c) Application) to cover actual and/or estimated prepetition fees and expenses.

2

6.      Except as stated in the preceding paragraph, Kroll has not received any payments from the Debtors in the ninety days prior to the Petition Date.

7.      Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Kroll and its professional personnel:

     (a)      are not creditors, equity security holders, or insiders of the Debtors;

     (b)      are not and were not, within two years before the date of the filing of these cases, directors, officers, or employees of the Debtors; and

     (c)      do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

8.      I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in the Chapter 11 Cases, which is attached as Exhibit D to the Application.  The list of Potential Parties in Interest was provided by the Debtors and included the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, major equity holders, the Debtors' fifty largest unsecured creditors on a consolidated basis, significant contract counterparties, significant vendors, significant unsecured creditors, taxing authorities, the United States Trustee and persons employed in the office of the United States Trustee, and other parties.  The results of the conflict check were compiled and reviewed by Kroll professionals under my supervision.  At this time, and as set forth in further detail herein, Kroll is not aware of any connection that would present a disqualifying conflict of interest.  Should Kroll discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Kroll will use reasonable efforts to file promptly a supplemental declaration.

9.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Kroll, nor any of its professionals, has any

3

materially adverse connection to the Debtors, their creditors or other relevant parties. Kroll may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Kroll serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

10.    Certain of Kroll's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP ("Weil"); O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; Gibson, Dunn & Crutcher LLP; Willkie Farr & Gallagher LLP; Jones Day; Shearman & Sterling LLP ("Shearman"); KPMG LLP; PricewaterhouseCoopers LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC. Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these Chapter 11 Cases were filed.

11.    Kroll hereby discloses the following connection, which Kroll believes does not present an interest adverse to the Debtors and is disclosed solely out of an abundance of caution:

- Christina Pullo, Managing Director of Kroll and Head of Corporate Actions, was previously an associate at Weil, counsel to the Debtors' non-Debtor affiliates in these chapter 11 cases. Shira D. Weiner, General Counsel of Kroll and its divisional affiliates, was formerly an associate at Weil. Certain other employees of Kroll were also formerly associates at Weil. Ms. Pullo left Weil in May 2009, and Ms. Weiner left Weil in February 2008. Neither Ms. Pullo nor Ms. Weiner, or any other former Weil associates now working at Kroll worked on any matters involving the Debtors during their time at Weil. Stephen Karotkin is a consultant at Weil. Mr. Karotkin's son, Joshua Karotkin, a Director at Kroll, has been an employee of Kroll since April 2014.

4

- Oleg Bitman, a Director at Kroll, was previously a paralegal at Linklaters LLP ("Linklaters"), one of the Debtors' vendors. Mr. Bitman left Linklaters in 2017. Mr. Bitman did not work on any matters involving the Debtors during his time at Linklaters.

- Stacey Corr-Irvine, a Director at Kroll, was formally an associate at Shearman, one of the Debtors' significant vendors. Ms. Corr-Irvine left Shearman in 2015. Ms. Corr-Irvine did not work on any matters involving the Debtors during her time at Shearman. Additionally, Mrs. Corr-Irvine's husband is a Vice President of Fixed Income Finance at JPMorgan Chase Bank N.A. ("JPM"), one of the Debtors' Banks and Financial Services Providers. Mr. Irvine's role is administrative in nature, and he is not involved in any of JPM's investment decisions.

- James Waldron, former Clerk of the United States Bankruptcy Court for the District of New Jersey, joined Kroll as Senior Advisor in March 2017. Mr. Waldron's daughter, Keara Waldron, is a counsel at Lowenstein Sandler LLP, one of the Debtors' vendors.

- Christopher Schepper is a Managing Director of Kroll. Mr. Schepper's wife, Alison Schepper, is a Director at Kroll. Ms. Schepper's father, Paul Tearnen, is a Managing Director at Alvarez & Marsal, which is the Debtors' proposed financial advisor. Mr. Tearnen is not a restructuring professional and upon information and belief does not have any involvement in these Chapter 11 Cases.

- Robert "Bobby" DeStefano, an associate at Kroll, was formally an analyst at Ducera Partners LLC ("Ducera"), one of the Debtors' customers. Mr. DeStefano left Ducera in January 2021. Mr. DeStefano did not work on any matters involving the Debtors during his time at Ducera. Mr. DeStefano's role at Kroll is purely administrative and, as such, he does not work on any of the firm's cases.

- The spouse of a current employee at Kroll is a Gemini Lender in the amount of approximately $3,000.

12.     Kroll is an indirect subsidiary of Kroll, LLC ("Kroll Parent"). Kroll Parent is the world's premier provider of services and digital products related to governance, risk and transparency. Within the Kroll Parent corporate structure, Kroll operates independently from Kroll. As such, any relationships that Kroll and its affiliates maintain do not create an interest of Kroll's that is materially adverse to the Debtors' estates or any class of creditors or security

holders.  Kroll Parent is not currently identified on the Potential Parties in Interest list, but Kroll
makes this disclosure out of an abundance of caution.

13.     Notwithstanding the foregoing, out of an abundance of caution, Kroll hereby
discloses that certain Kroll employees and temporary employees under their general supervision
have recently commenced providing administrative project management and data review services
to a confidential client of Kroll Parent that appears on the Potential Parties in Interest List. The
services provided to the confidential client by Kroll and Kroll Parent are unrelated to the Debtors
and these chapter 11 cases. Kroll therefore believes that this connection does not present an interest
adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders.

14.     Kroll has and will continue to represent clients in matters unrelated to the Chapter
11 Cases.  In addition, in matters unrelated to these cases, Kroll and its personnel have and will
continue to have relationships personally or in the ordinary course of business with certain vendors,
professionals, financial institutions, and other parties in interest that may be involved in the
Debtors' Chapter 11 Cases.  Kroll may also provide professional services to entities or persons that
may be creditors or parties in interest in the Chapter 11 Cases, which services do not directly relate
to, or have any direct connection with, the Chapter 11 Cases or the Debtors.

15.     Certain personnel at Kroll involved in these Chapter 11 Cases may also be
providing similar services to the Debtors that they provide to the debtors in *In re FTX Trading,
Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.). Each matter has distinct primary client contacts
responsible for day-to-day case matters and performing services such as assisting in the
preparation of schedules and statements of financial affairs, to the extent requested. The matters
share support teams, which provide communications, data processing (i.e., claims input and
review), mail processing, technological and legal services (and similar customary shared firm

6

services) to both.  Moreover, if plan solicitation occurs, both matters may utilize the same solicitation teams.

16.     Kroll, and its personnel in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms and financial advisors.  Such firms engaged by Kroll or its personnel may appear in the Chapter 11 Cases representing the Debtors or parties in interest.  All engagements where such firms represent Kroll or its personnel in their individual capacities are unrelated to the Chapter 11 Cases.

17.     As part of its conflicts check process, Kroll submitted for review by each of its partners and employees the list of Potential Parties in Interest provided by the Debtors to determine whether any partner or employee holds an adverse interest to any of the Debtors and/or is a "disinterested person," as such term is defined in the Bankruptcy Code.  In addition, the partners and employees of Kroll were asked to review their investment holdings, to the extent possible, to determine whether they have any direct or indirect ownership of the Debtors' securities.  Upon information and belief, and upon such reasonable inquiry by Kroll and the results thereof, Kroll is not aware that any of its partners or employees directly or indirectly own any debt or equity securities of a company that is a Debtor or of any of its affiliates.  Moreover, Kroll has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, subject to non-discretionary Investment Funds (as defined below), all Kroll partners and employees are barred from trading in securities with respect to matters in which Kroll is retained.

18.     As a general matter, in the infrequent case when a Kroll partner or employee may, directly or indirectly, own a debt or equity security of a company which may become or becomes a debtor or a debtor affiliate, such ownership would be substantially less than one percent of any

such debtor or debtor affiliate.  Additionally, from time to time, Kroll partners or employees may personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals may indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates.  Any partner or employee who has made any such investment does not manage or otherwise control such Investment Fund.  The Investment Funds are managed by third parties, and Kroll partners or employees that may invest in the particular Investment Fund have no influence, discretion, or control over the Investment Fund's decision to buy, sell or vote any particular debt or equity securities comprising the particular Investment Fund and in certain instances, partners or employees may not be aware of the particular debt or equity securities comprising the particular Investment Fund.

19.     Based on the foregoing, I believe that Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge and belief, neither Kroll nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates.

20.     Kroll further declares that Kroll does not now have nor has it ever had any contract or agreement with XClaim Inc. or with any other party under which Kroll provides, provided, or will provide exclusive access to claims data and/or under which Kroll would be compensated for claims data made available by Kroll..

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on February 8, 2023

*/s/ Benjamin J. Steele*

Benjamin J. Steele
Managing Director
Kroll Restructuring Administration LLC
55 East 52nd Street, 17th Floor
New York, NY 10055

## **Exhibit C**

**Engagement Agreement**



### Kroll Restructuring Administration LLC Engagement Agreement

This Agreement is entered into as of January 15, 2023 between Kroll Restructuring Administration LLC ("**Kroll**") and Genesis Global Holdco, LLC (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>Services</u>

   (a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder.  The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Kroll shall not provide the Company or any other party with legal advice.

2. <u>Rates, Expenses and Payment</u>

   (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "**Rate Structure**").  The Company agrees to pay for reasonable out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

   (c) Kroll will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Kroll an advance of $150,000. Kroll may use such advance against unpaid fees and expenses hereunder. Kroll may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Kroll may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

**3.    Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.    Confidentiality**

(a) The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

DocuSign Envelope ID: 76645788-57D1-4E5B-A5A8-9EB0CF6696BB



## 5.    Property Rights

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Kroll for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder. The Company reserves all property rights in and to all information provided by the Company to Kroll in connection with the Services.

## 6.    Bank Accounts

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Kroll's agreement with financial institutions, Kroll may receive compensation from such institutions for the services Kroll provides pursuant to such agreement.

## 7.    Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.

(b) If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.

(d) If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

## 8.    No Representations or Warranties

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9.  **Indemnification**

    (a)    To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Kroll's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b)    Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c)    The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's gross negligence or willful misconduct.

    (d)    The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10.  **Limitations of Liability**

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder.  In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11.  **Company Data**

    (a)    The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Kroll bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b)    The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

    (c)    Any data, storage media, programs or other materials furnished to Kroll by the Company may be retained by Kroll until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the

DocuSign Envelope ID: 964E5783-57D1-4E5B-A5A8-9F80CF66905B



Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the client.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(e) Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. Integration; Severability; Modifications; Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

**17. <u>Effectiveness of Counterparts</u>**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**18. <u>Notices</u>**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  |  |
|---|---|
| If to Kroll: | Kroll Restructuring Administration LLC |
|  | 55 East 52nd Street, 17th Floor |
|  | New York, NY 10055 |
|  | Attn:    Legal Department |
|  | Tel:      (212) 257-5450 |
|  | Email:  <u>Legal@kbs.kroll.com</u> |
|  |  |
| If to the Company: | Genesis Global Holdco, LLC |
|  | 250 Park Avenue South, 5th Floor |
|  | New York, NY 10003 |
|  | Attn: Arianna Pretto-Sakmann |
|  | Tel: (646) 416-4571 |
|  | Email: arianna@genesistrading.com |
|  |  |
| With a copy to: | Cleary Gottlieb Steen & Hamilton LLP |
|  | One Liberty Plaza |
|  | New York, NY 10006 |
|  | Attn: Jane VanLare |
|  | Tel: (212) 225-2872 |
|  | Email: jvanlare@cgsh.com |



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By: Shira Weiner
Title: General Counsel

**Genesis Global Holdco, LLC**

DocuSigned by:

Arianna Pretto-Sakmann

By: Arianna Pretto-Sakmann
Title: Chief Legal Officer



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Claim and Noticing Rates | |
| --- | --- |
| **TITLE** | **HOURLY RATE** |
| **Analyst** <br> The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $60 |
| **Technology Consultant** <br> The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 - $110 |
| **Consultant/Senior Consultant** <br> The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Consultants have between three and five years of experience. <br><br> The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Senior Consultants average over five years of experience. | $65 - $195 |
| **Director** <br> The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Kroll Restructuring Administration will serve in this role at this rate. Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 - $245 |

---

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

## Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
| --- | --- |
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | $220 |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Kroll Restructuring Administration's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | $245 |

## Printing & Noticing Services

| | |
| --- | --- |
| Printing | $0.10 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

## Newspaper and Legal Notice Publishing

| | |
| --- | --- |
| Coordinate and publish legal notices | Available on request |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# R A T E S

Quality.

Partnership.

Expertise.

Innovation.

| Case Website | |
| --- | --- |
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Client Access** | |
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |
| **Data Administration and Management** | |
| *Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.* | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |
| **On-line Claim Filing Services** | |
| On-line claim filing | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services & Securities Eligibility Services** | |
| Securities Eligibility Services | Available on request |
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of EIN/TIN database | Standard rates |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106

**Exhibit D**

**Potential Parties-in-Interest**

**Debtor Entities**
Genesis Asia Pacific PTE. LTD
Genesis Global Capital LLC
Genesis Global Holdco, LLC

**Non-Debtor Affiliates**
Genesis Asia (Hong Kong) Limited
Genesis Bermuda Holdco Limited
Genesis Custody Limited
Genesis Global Assets, LLC
Genesis Global Labs, LLC
Genesis Global Markets Limited
Genesis Global Trading, Inc.
Genesis UK Holdco Limited
GGA International Limited (BVI)
GGC International, Ltd (BVI)

**Major Equity Holders**
Digital Currency Group, Inc.

**Major Equity Holders' Counsel**
Weil, Gotshal, and Manges LLP

**Senior Management**
Agnes Chen Meiyun
Alice Chan
Andrew Sullivan
Brian Bulthius
Diana Kim

**Current Directors**
A. Derar Islim
Arianna Pretto-Sakmann
Gan Lee Teng
Lip Chih Ng
Matthew Johnson
Mark Murphy
Michael Kraines
Michael Patterson
Sugandhi Govil
Paul Aronzon
Tom Conheeney

**Debtors' Restructuring Professionals**
Alvarez & Marsal Holdings, LLC
Kobre & Kim LLP

Kroll Restructuring Administration LLC
Moelis & Company
Morrison Cohen LLP

**Material Contract Counterparties**
Talos Trading, Inc.
WorkSocial.com LLC

**Insurers**
Axis Capital
Forge Insurance Company
Lloyd's of London
Starr Insurance & Reinsurance Limited
Woodruff Sawyer

**Bankruptcy Court for the Southern District of New York**
Ali Ismail
Brenda Robie
Chantel Barrett
Christine Azzaro
Connor Farley
Daniel Slemmer
Deanna Anderson
Dorie Arthur
Francis O'Rourke
Graham Fisher
Greg White
Hon. Cecelia G. Morris
Hon. David S. Jones
Hon. James L. Garrity, Jr.
Hon. John P. Mastando
Hon. Lisa G. Beckerman
Hon. Martin Glenn
Hon. Michael E. Wiles
Hon. Philip Bentley
Hon. Sean H. Lane
Ian Kitts
Jacob Schuerger
Jacqueline DePierola
James Vincenti
Jaqueline Tran
Jenna MacDonald
Jennifer Pollan
John Churchill
John Kuebler

Julia Bonnell
Karra Puccia
Leslie Wybiral
Liza Ebanks
Lorraine Echevarria
Lynda Calderon
Maria Rodriguez-Castillo
Sarah Rosenthal
Tammi Hellwig
Tracey Mercado
Tyler Talton
Vanessa Ashmeade
Willie Rodriguez

**U.S. Trustee Office, Region 2, Southern District of New York, Manhattan Division**
Abriano, Victor
Allen, Joseph
Arbeit, Susan
Bentley, Phillip
Black, Christine
Bruh, Mark
Cornell, Shara
Gannone, James
Harrington, William K.
Higgins, Benjamin J.
Higgins, David S.
Joseph, Nadkarni
Leonhard, Alicia
Masumoto, Brian S.
Mendoza, Ercilia A.
Moroney, Mary V.
Morrissey, Richard C.
Ogunleye, Alaba
Penpraze, Lisa
Riffkin, Linda A.
Rodriguez, Ilusion
Schmitt, Kathleen
Schwartz, Andrea B.
Schwartzberg, Paul K.
Scott, Shannon
Sharp, Sylvester
Tiantian, Tara
Van Baalen, Guy A.
Velez-Rivera, Andy
Vescovacci, Madeleine

Wells, Annie
Zipes, Greg M.

**Taxing Authorities**
Inland Revenue Authority of Singapore
Monetary Authority of Singapore

**Debtors' Banks & Financial Services Providers**
Anchorage Lending CA, LLC
Banking Circle
Continental Stock Transfer & Trust
Houlihan Lokey
Industrial and Commercial Bank of China
Interactive Brokers
JPMorgan Chase Bank, NA
JPMorgan Chase Bank, NA Singapore
Kraken
Marex Captial Markets, Inc.
Metropolitan  Commercial Bank
Signature Bank
Silvergate Bank
Tradestation

**Significant Vendors**
250 Park LLC
ACRION GROUP INC/Dmitri Gofshtein
Agon Litigation
Amazon Web Services
American Arbitration Association
Anchorage Digital Bank, National Association
Andy McMullen
BitGo, Inc.
Bloomberg LP
CAPITEQ PTE. LTD.
CDW Direct LLC
Chicago Mercantile Exchange Inc NEED PO
CJD Technologies
CloudFlare, Inc.
CMS Cameron McKenna Nabarro Olswang LLP
Coinbase Custody Trust
Compliancy Services

Corver Roos
Cyberfort Ltd
Dashlane USA Inc
Davis Polk & Wardwell LLP
DCG Real Estate Management LLC
Donnelley Financial LLC
Driven
Ernst & Young LLP
Fireblocks Inc.
Friedman LLP
GitLab Inc
Global Fund Media Limited
Goodwin Procter LLP
Gowling WLG (Canada) LLP
Grab Pte. Ltd.
Halborn Inc.
IBM Corporation
I-Net Technologies
Intelliware Development Inc
ISS Facility Services Private Limited
JAMS, Inc.
Kleinberg Kaplan Wolff & Cohen P.C.
Kyte Broking Limited
Levin Group Ltd
Mana Holdings Ltd
Managed Funds Association
Massive Computing, Inc
Meitar Law Offices
Milken Institute
Mintz Levin Cohn Ferris Glovsky and
Popeo P.C.
Mitchell Martin
Moore & Van Allen PLLC
Morrison Cohen LLP
Mount Studio Pte Ltd
Murphy & Mcgonigle P.C.
Nakul Verma
Numerix LLC
Office Secretaries Pte Ltd.
Okta Inc
One Raffles Quay Pte Ltd
One11 Racing LLC
OnStream LLC
Opswat, Inc.
Opus Recruitment Solutions Ltd
Ordinary Folk

Orrick, Herrington & Sutcliffe, LLP
Papaya Global, Inc.
Perkins Coie LLP
Phaidon International Inc
Pico Quantitative Trading
Private Chefs of Atlanta
Pythian Services, Inc.
Reed Smith Pte. Ltd
Richards Layton & Finger
Roman Mashtalyar
SALT Venture Group, LLC
Savills (Singapore) PTE LTD
Shearman & Sterling LLP
Singtel (Singapore Telecommunications
Limited)
Snowflake Inc.
Spire Search Partners
Stop Pest Control Of NY, INC.
STORM2 PTE LTD
Stott and May
Structure Works
T2 CONSULTING, LLC
The Furniture X-Change
The TIE, Inc
Unispace Of Boston, LLC
United Corporate Services Inc
VIP Sports Marketing, Inc.
Wolters Kluwer financial Services Inc.
Woodruff Sawyer
Xenetix Pte Ltd

**Litigation Counterparties**
[List On File]

**Top 50 Creditors**
Altcoinomy SA
[On File]
[On File]
[On File]
Bayhawk Fund LLC
[On File]
Big Time Studios Ltd.
[On File]
[On File]
[On File]
Caramila Capital Management LLC

Claure Group LLC
Coincident Capital International, Ltd.
Coinhouse
Cumberland DRW LLC
[On File]
[On File]
[On File]
Digital Finance Group
Donut, Inc.
Heliva International Corp
[On File]
[On File]
Levity & Love, LLC
[On File]
[On File]
Mirana Corp.
Moonalpha Financial Services Limited
[On File]
[On File]
[On File]
Plutus Lending LLC
[On File]
Ripio International
[On File]
[On File]
Schnutz Investments LP
Stellar Development Foundation
Streami Inc.
[On File]
The Badger Technology Company
Holdings, Ltd.
Valour, Inc.
VanEck New Finance Income Fund, LP
[On File]
[On File]
[On File]
[On File]
Winah Securities S.A.
[On File]

**<u>Potential M&A Counterparties</u>**
[List on File]