**Hearing Date: February 22, 2023 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: February 15, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF DEBTORS' APPLICATION TO EMPLOY AND**
**RETAIN ALVAREZ & MARSAL NORTH AMERICA, LLC AS**
**FINANCIAL ADVISORS TO DEBTORS AND DEBTORS IN POSSESSION**
**PURSUANT TO SECTIONS 327(A) AND 328 OF THE BANKRUPTCY CODE**

    **PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

---

1      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

2      Holdco, and its Debtor and non-Debtor subsidiaries are collectively referred to as the "Company".

**PLEASE TAKE FURTHER NOTICE** that on February 8, 2023, the debtors and debtors in possession (collectively, the "Debtors"), filed the annexed *Debtors' Application To Employ And Retain Alvarez & Marsal North America, LLC As Financial Advisors To Debtors And Debtors In Possession Pursuant To Sections 327(A) And 328 Of The Bankruptcy Code* (the "Application"). A hearing (the "Hearing") on the Application will be held via Zoom before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 on **February 22, 2023 at 11:00 a.m. (Eastern Time) (the "Hearing Date")**.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections, if any, to the Application or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **February 15, 2023 at 4:00 p.m (Eastern Time) (the "Objection Deadline")** and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order").

**PLEASE TAKE FURTHER NOTICE** that if no written objections are timely filed and served with respect to the Application, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit C to the Motion, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Debtors.

Dated:  February 8, 2023
      New York, New York

*/s/ Sean A. O'Neal*_____
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[3] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' APPLICATION TO EMPLOY AND**
**RETAIN ALVAREZ & MARSAL NORTH AMERICA, LLC AS**
**FINANCIAL ADVISORS TO DEBTORS AND DEBTORS IN POSSESSION**
**PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE**

The debtors in possession in the above-captioned action (collectively, the "Debtors" or the

"Company") hereby submit this application (the "Application") for entry of an order, substantially

in the form attached hereto as Exhibit C (the "Proposed Order") pursuant to sections 327(a) and

328 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the employment

and retention of Alvarez & Marsal North America, LLC, together with employees of its affiliates

(all of which are wholly-owned by its parent company and employees), its wholly owned

subsidiaries, and independent contractors (collectively, "A&M") to serve as financial advisors to

---

[3]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

the Debtors, *nunc pro tunc* to the date of filing of these cases (the "Petition Date"). In support of the Application, the Debtors respectfully state as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 327(a), 328, 330, 331, and 1107(b) of the Bankruptcy Code, as supplemented by Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"). No examiner or trustee has been appointed in these cases. On February 3, 2023, an official committee of unsecured creditors (the "Committee") was appointed in these Chapter 11 Cases, ECF No. 55.

## RELIEF REQUESTED

3.      By this Application, the Debtors seek to employ and retain A&M as their financial advisors, pursuant to sections 327(a) and 328 of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, to perform the services set forth more fully herein, *nunc pro tunc* to the Petition Date.[4]

---

[4]      In *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, the U.S. Supreme Court rejected a district court's *nunc pro tunc* order that made remand to state court effective as of a previous date, finding that the order could not "creat[e] 'facts' that never occurred" to cure the state court's lack of jurisdiction while the case was removed to federal court. 140 S. Ct. 696, 701 (2020). This is not relevant to *nunc pro tunc* orders where, as here, the court plainly has jurisdiction over the Chapter 11 Cases as of the Petition Date and looks to exercise its discretion to grant retroactive compensation. Indeed, courts have continued to routinely approve *nunc pro tunc* employment of estate professionals following *Acevedo*. *See, e.g.*, Order, *In re Internap Tech. Solutions Inc.*, Case No. 20-22393 (RDD) (Bankr. S.D.N.Y. Apr. 23, 2020), ECF No. 131; Order, *In re The McClatchy Co.*, Case No. 20-10418 (MEW) (Bankr. S.D.N.Y. Mar. 26, 2020), ECF No. 232; Order, *In re Fairway Group Holdings Corp.*, Case No. 20-10161 (JLG) (Bankr. S.D.N.Y. Mar. 4, 2020), ECF No. 251. To the extent that this Court or others find that *Acevedo* impacts this Court's ability to grant *nunc pro tunc* relief, this Court would nonetheless retain power to exercise its equitable discretion and award compensation prior to the date of entry of the order. *See In re Benitez*, No. 8-19-70230

**Retention of A&M**

4.        In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced financial advisors will substantially enhance their attempts to maximize the value of their estates. A&M is well qualified to provide these services in light of their extensive knowledge and expertise with respect to chapter 11 proceedings.

5.        A&M specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring.  A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

6.        In addition, A&M is familiar with the Debtors' businesses, financial affairs, and capital structure.  Since the firm's initial engagement on November 11, 2022, the A&M personnel providing services to the Debtors (the "<u>A&M Professionals</u>") have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these chapter 11 cases.  Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors and the unique circumstances of this case. For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases.  Accordingly, the Debtors

---

(REG), 2020 WL 1272258, at *2 (Bankr. E.D.N.Y. Mar. 13, 2020); *see also In re Miller*, 620 B.R. 637, 641–43 (Bankr. E.D. Cal. Oct. 13, 2020).

submit that the retention of A&M on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

### Scope of Services

7.      The Debtors' prepetition engagement letter (the "Engagement Letter") with A&M is attached hereto as Exhibit A, the terms of which shall govern the Debtors' retention of A&M except as explicitly set forth herein or in any order granting this Application.

8.      It is our understanding that the Debtors have chosen Moelis & Company LLC ("Moelis") to act as its investment banker.  A&M will work closely with Moelis to prevent any duplication of efforts in the course of advising the Debtors.

9.      Among other things, A&M will provide assistance to the Debtors with respect to management of the overall restructuring process, the development of ongoing business and financial plans and supporting restructuring negotiations among the debtors, their advisors and their creditors with respect to an overall exit strategy for their chapter 11 cases.

10.     A&M will provide such restructuring support services as A&M and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of these chapter 11 cases, including, but not limited to:

(a)      assistance to the Debtors in the preparation of financial-related disclosures required by the Court, including the Debtors' Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

(b)      assistance in evaluation of the Debtors' current business plan and in preparation of a revised operating plan and cash flow forecast;

(c)      assistance in review of the Debtors' business lines, profitability analysis and liquidity requirements;

(d)     assistance in the development and management of a 13-week cash flow forecast;

(e)     assistance to Debtors' management team and counsel focused on the coordination of resources related to the ongoing reorganization effort;

(f)     assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(g)     attendance at meetings and assistance in discussions with potential investors, banks, and other secured lenders, any official committee(s) appointed in these chapter 11 cases, the United States Trustee, other parties in interest and professionals hired by same, as requested;

(h)     analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

(i)     assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in these chapter 11 cases, including information contained in the disclosure statement; and

(j)     rendering such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary consistent with the role of a financial advisor to the extent that it would not be duplicative of services provided by other professionals in this proceeding.

### A&M's Disinterestedness

11.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Declaration of Michael S. Leto (the "Leto Declaration"), annexed hereto as

<u>Exhibit B</u>, A&M: (i) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (i) does not hold any interest adverse to the Debtors' estates; and (i) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

12.    Accordingly, the Debtors believe that A&M is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

13.    In addition, as set forth in the Leto Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

## **<u>Terms of Retention</u>**

14.    Subject to approval by the Court, the Debtors propose to employ and retain A&M to serve as the Debtors' financial advisor on the terms and conditions set forth in the Engagement Letter.

15.    <u>Compensation</u>. In accordance with the terms of the Engagement Letter, A&M will be paid by the Company for the services of the A&M Professionals at their customary hourly billing rates which shall be subject to the following ranges[5]:

| | | |
|---|---|---|
| i. | Managing Director | $1,025 - $1,375 |
| ii. | Director | $775 - 975 |
| iii. | Associate/Analyst | $425 - 775 |

Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally. In addition, A&M will be reimbursed for the reasonable out-of-pocket expenses of the A&M Professionals incurred in connection with this assignment, such as travel, lodging, third

---

[5] The rates set forth in the Application reflect current billing rates that were increased in January 2023.

party duplications, messenger and telephone charges. A&M shall also be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the preparation and approval of this Application. All fees and expenses due to A&M will be billed in accordance with any interim compensation orders entered by this Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules and the Local Rules.

16.     <u>Indemnification</u>. As a material part of the consideration for which the A&M Professionals have agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions in paragraph 10 of the Engagement Letter. Notwithstanding the foregoing, the Debtors and A&M have agreed to modify such provisions as follows, during the pendency of these Chapter 11 cases: All requests of A&M for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall A&M be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct. In no event shall A&M be indemnified if the Debtor or a representative of the estate, asserts a claim for, and a court determines by final order that such claim arose out of, A&M's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

**<u>Fees</u>**

17.     The Debtors understand that A&M intends to apply to the Court for allowance of compensation and reimbursement of expenses for its financial advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules,

corresponding Local Rules, orders of this Court and guidelines established by the United States
Trustee.

18.     A&M received $300,000 as a retainer in connection with preparing for and
conducting the filing of these Chapter 11 cases, as described in the engagement Letter.  In the 90
days prior to the Petition Date, A&M received retainers and payments totaling $2,813,625 in the
aggregate for services performed for the Debtors.  A&M has applied these funds to amounts due
for services rendered and expenses incurred prior to the Petition Date. A precise disclosure of the
amounts or credits held, if any, as of the Petition Date will be provided in A&M's first interim fee
application for postpetition services and expenses to be rendered or incurred for or on behalf of
the Debtors.  The unapplied residual retainer, which is estimated to total approximately $300,000,
will be held in a segregated non-interest-bearing account (which may hold other A&M and A&M
affiliate client retainers), separate from the general account to which A&M will direct payment of
ongoing fees and expenses until the end of these Chapter 11 cases and applied to A&M's finally
approved fees in these proceedings.

19.     Given the numerous issues that the A&M may be required to address in the
performance of their services, A&M's commitment to the variable level of time and effort
necessary to address all such issues as they arise, and the market prices for such services for
engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit
that the fee arrangements set forth herein are reasonable under the standards set forth in section
328(a) of the Bankruptcy Code.

## Applicable Authority

20.     The Debtors submit that the retention of A&M under the terms described
herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code.  Section
327(a) of the Bankruptcy Code empowers the trustee, with the Court' s approval, to employ

8

professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

      (a)     is not a creditor, an equity security holder, or an insider;

      (b)     is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

      (c)     does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

      21.     Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). A&M's prepetition relationship with Debtors is therefore not an impediment to A&M's retention as Debtors' postpetition financial advisor.

      22.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . ." 11 U.S.C. § 328(a). Debtors submit that the terms and conditions of A&M's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since Debtors will require substantial assistance with the reorganization process, it is reasonable for Debtors to seek to employ and retain A&M to serve as its financial advisor on the terms and conditions set forth herein.

## **Notice**

23.     Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Committee, if any; (iii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iv) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

24.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, Debtors respectfully request that the Court enter the Proposed Order attached hereto as <u>Exhibit C</u> granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:    February 8, 2023
            New York, New York

                    */s/ Sean A. O'Neal*

Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors and
Debtors-in-Possession*

## Exhibit A

**Engagement Letter**

DocuSign Envelope ID: 336D9B5C-52DB-461E-A8F0-86A03EB292AB

Alvarez & Marsal North America, LLC
600 Madison Avenue
New York, New York 10022
Phone: +1 212 759 4433

November 11, 2022

A. Derar Islim, Ph.D
Interim CEO and COO
Genesis Global Holdco, LLC
250 Park Avenue South
New York, NY 10003

Dear Mr Islim:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal North America, LLC ("A&M") and Genesis Global Holdco, LLC and its subsidiaries and their respective assigns and successors (jointly and severally, the "Company"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company and A&M (the "Agreement").

1.    Description of Services

(a) A&M shall provide consulting services to the Company at the direction of the Company's Interim Chief Executive Officer and/or the Chief Financial Officer (the "Responsible Officers") in connection with their efforts in seeking to improve the Company's financial and operating performance, reporting directly to them.  It is anticipated that A&M's activities shall include the following:

(i)     *assistance in evaluation of the Company's current business plan and in preparation of a revised operating plan and cash flow forecast;*

(ii)     *assistance in review of the Company's business lines, profitability analysis and liquidity requirements;*

(iii)     *assistance in the development and management of a 13-week cash flow forecast;*

(iv)     *report to the Board as desired or directed by the Responsible Officers; and*

Genesis Global Holdco, LLC
11/11/2022

    (v)    *other activities as are approved by you, the Responsible Officers or the Board and agreed to by A&M.*

    In rendering its services to the Company, A&M will report directly to the Responsible Officers and will make recommendations to and consult with the Responsible Officers and other senior officers as the Board or Responsible Officers direct.

(b) In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates, subsidiaries and independent contractors. Such affiliates are wholly owned by A&M's parent company and employees.

    A&M personnel providing services to the Company may also work with other A&M clients in conjunction with unrelated matters.

2.    <u>Information Provided by the Company and Forward Looking Statements</u>

The Company shall use all reasonable efforts to: (i) provide A&M with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that A&M reasonably request in connection with the services to be provided to the Company. A&M shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company and otherwise reviewed by A&M in connection with the services performed for the Company. The Company acknowledges and agrees that A&M is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. A&M is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Board to do so.

You understand that the services to be rendered by A&M may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, A&M will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3.    <u>Limitation of Duties</u>

A&M makes no representation or guarantee that, inter alia, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Board or Responsible Officers will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best

-2-

DocuSign Envelope ID: 32ED9B5C-52DB-461E-A8F0-86A03EB292AB

Genesis Global Holdco, LLC
11/11/2022

course of action for the Company or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, A&M does not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. A&M shall be responsible for assistance with the implementation only of the restructuring proposal or strategic alternative approved by the Board or Responsible Officers and only to the extent and in the manner authorized by and directed by the Board or Responsible Officers and agreed to by A&M.

Depending on future developments the spread of the Coronavirus has the potential to affect the services provided under this Agreement. Travel, work place and mobility restrictions (to include measures reasonably mandated by A&M with respect to its employees and personnel) may restrict travel to the Company and other work sites as well as limit access to facilities, infrastructure, information and personnel of A&M, the Company or others. Such circumstances may adversely affect the timetable or content of A&M's deliverables and completion of the scope of services included in this Agreement. A&M will discuss with the Company if A&M believes that the services may be impacted in this way. The Company accepts and acknowledges that A&M employees and personnel may attend at the Company's locations or physically interact with the Company's employees and personnel in connection with the services, unless A&M or the Company decide that this should not be the case.

4.    Compensation

(a) A&M will receive fees based on the following hourly rates:

| | |
|---|---|
| Managing Directors | $975-1,295 |
| Directors | $750-950 |
| Analysts/Associates | $425-750 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

(b) In addition, A&M will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, meals, messenger and wireless charges. A&M also charges a flat rate of 3% of professional fees to cover otherwise unbilled items such as telephone and conferencing charges, computer use, technology and software license fees, research subscriptions and other internal services. All fees and expenses will be billed on a weekly basis or, at A&M's discretion, more frequently. Invoices are payable upon receipt.

(c) The Company shall promptly remit to A&M a retainer in the amount of $300,000, which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.

DocuSign Envelope ID: 426D9B5C-52DB-461E-A8F0-06A03EB292AB

Genesis Global Holdco, LLC
11/11/2022

5.    <u>Term</u>

   (a) This Agreement will apply from the commencement of the services referred to in
   Section 1 and may be terminated with immediate effect by either party without cause
   by written notice to the other party.

   (b) A&M normally does not withdraw from an engagement unless the Company
   misrepresents or fails to disclose material facts, fails to pay fees or expenses, or
   makes it unethical or unreasonably difficult for A&M to continue performance of
   the engagement, or other just cause exists.

   (c) On termination of the Agreement, any fees and expenses due to A&M shall be
   remitted promptly (including fees and expenses that accrued prior to but are invoiced
   subsequent to such termination).

   (d) The provisions of this Agreement that give the parties rights or obligations beyond
   its termination shall survive and continue to bind the parties.

6.    <u>Relationship of the Parties</u>

   The parties intend that an independent contractor relationship will be created by this
   engagement letter. Neither A&M nor any of its personnel or agents is to be considered
   an employee or agent of the Company and the personnel and agents of A&M are not
   entitled to any of the benefits that the Company provides for the Company employees.
   The Company acknowledges and agrees that A&M's engagement shall not constitute an
   audit, review or compilation, or any other type of financial statement reporting
   engagement that is subject to the rules of the AICPA, SEC or other state or national
   professional or regulatory body.

7.    <u>No Third Party Beneficiary</u>

   The Company acknowledges that all advice (written or oral) provided by A&M to the
   Company in connection with this engagement is intended solely for the benefit and use
   of the Company (limited to its Board and management) in considering the matters to
   which this engagement relates. The Company agrees that no such advice shall be used
   for any other purpose or reproduced, disseminated, quoted or referred to at any time in
   any manner or for any purpose other than accomplishing the tasks referred to herein
   without A&M's prior approval (which shall not be unreasonably withheld), except as
   required by law.

8.    <u>Conflicts</u>

   A&M is not currently aware of any relationship that would create a conflict of interest
   with the Company or those parties-in-interest of which you have made us aware.    We
   note that A&M has made certain personnel available to provide financial advisory
   services to FTX Trading Ltd, and certain of its affiliates ("FTX") in connection with
   FTX's Chapter 11 bankruptcy cases. The Company has informed us that they have an

Genesis Global Holdco, LLC
11/11/2022

account with FTX and may be creditor in FTX's bankruptcy.   Because of A&M's representation of FTX, A&M personnel will recuse themselves on this engagement from any involvement in disputes related to the Company's FTX account or other matters adverse to FTX.   Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "Firm") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained. Each of the entities comprising the definition of Company (each, a "Company Entity") acknowledges and agrees that the services being provided hereunder are being provided on behalf of each of them and each of them hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any other Company Entity. Each Company Entity represents that it has taken all corporate action necessary and is authorized to waive such potential conflicts of interest.

9.   Confidentiality / Non-Solicitation

A&M shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except:  (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement.  All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.  The Company, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("Solicited Person").  Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Company breaches this provision.  The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

10.   Indemnification and Limitations on Liability

The attached indemnification and limitation on liability agreement is incorporated herein by reference and shall be executed upon the acceptance of this Agreement. Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect.

-5-

Genesis Global Holdco, LLC
11/11/2022

11.    <u>Joint and Several Liability</u>

Each Company Entity hereby acknowledges and agrees that they are each jointly and severally liable to A&M and its affiliates for all of the Company's representations, warranties, covenants, liabilities and obligations set forth in the Agreement. Any beneficiary of this agreement may seek to enforce any of its rights and remedies hereunder against any or all Company Entities in any order at any time in its sole discretion.

12.    <u>Data Protection.</u>  In the provision of services under this Agreement, it is expected that the Company and third parties will provide to A&M certain personally identifiable information or other personal data regarding creditors, employees and other constituents, the processing or transfer of which may be subject to Data Protection Laws. "Data Protection Laws" means all applicable U.S. and foreign national, federal, state and/or local laws, rules, regulations or other binding instruments in relation to the processing or protection of personal data, including, but not limited to, the EU General Data Protection Regulation (GDPR). In furtherance thereof, the Company acknowledges and agrees: it is expected that such information (and work product containing such information) will be transferred by A&M, on behalf of the Company, to third parties including other agents and professionals of the Company acting within this matter (i.e., the Company's counsel, other advisors, and claims agent) as well as, at the Company's direction, other constituents in the Company's case, including but not limited to creditors and their representatives as well as any applicable judicial, regulatory or governmental bodies; and, that A&M's transfer of such data directly to third parties (rather than by the Company to a third party) is for the Company's convenience and such transfers shall always be deemed to be on the Company's behalf. Without limiting the foregoing, each party agrees to comply with Data Protection Laws in connection with this Agreement.

13.    <u>Miscellaneous</u>

This Agreement (together with the attached indemnity provisions), including, without limitation, the construction and interpretation thereof and all claims, controversies and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the State of New York, without regard to principles of conflict of law that would defer to the laws of another jurisdiction. The Company and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder. The Company and A&M agree, to the extent permitted by applicable law, that any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement.

-6-

DocuSign Envelope ID: 326D9B5C-52DB-461E-A8F0-06A03EB292AB

Genesis Global Holdco, LLC
11/11/2022

This Agreement shall be binding upon A&M and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of A&M's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company and A&M. The Company agrees that A&M may aggregate information provided by or on behalf of the Company during this engagement with information provided by or on behalf of others and use and disclose that information in de-identified form as part of research and advice, including, without limitation, benchmarking services. Notwithstanding anything herein to the contrary, A&M may reference or list the Company's name and/or logo and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By: _Michael S. Leto_
     15D45C4273D84A0...
     Michael S. Leto
     Title:   Managing Director

Accepted and agreed:

Genesis Global Holdco, LLC.
*on behalf of itself and its subsidiaries*

By: _Derar Islim_
     112CB3D00F63428...
     A.  Derar Islim, Ph.D

-7-

Genesis Global Holdco, LLC
11/11/2022

## INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

This indemnification and limitation on liability agreement is made part of an agreement, dated 10/( )/2022 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement"), by and between Alvarez & Marsal North America, LLC ("A&M") and Genesis Global Trading Inc. together with its subsidiaries (jointly and severally, the "Company"), for services to be rendered to the Company by A&M.

A.     The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.  The Company also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.     These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal

-8-

Genesis Global Holdco, LLC
11/11/2022

(including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.      If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action. The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.  Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense.  The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.      In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement.  No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

-9-

Genesis Global Holdco, LLC
11/11/2022

E.       In the event the Company and A&M seek judicial approval for the assumption of the
Agreement or authorization to enter into a new engagement agreement pursuant to either of
which A&M would continue to be engaged by the Company, the Company shall promptly pay
expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and
expenses, in connection with any motion, action or claim made either in support of or in
opposition to any such retention or authorization, whether in advance of or following any
judicial disposition of such motion, action or claim, promptly upon submission of invoices
therefor and regardless of whether such retention or authorization is approved by any court.
The Company will also promptly pay the Indemnified Parties for any expenses reasonably
incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts
owed it under the Agreement (or any new engagement agreement) whether through submission
of a fee application or in any other manner, without offset, recoupment or counterclaim, whether
as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or
a postpetition claim.

F.       Neither termination of the Agreement nor termination of A&M's engagement nor the
filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the
conversion of an existing case to one under a different chapter) shall affect these
indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.       The rights provided herein shall not be deemed exclusive of any other rights to which
the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the
Company, any other agreements, any vote of stockholders or disinterested directors of the
Company, any applicable law or otherwise.


GENESIS GLOBAL HOLDCO, LLC.
*on behalf of itself and its subsidiaries*

By: *Derar Islim*
Name: A. Derar Islim Ph.D
Title:   Interim CEO and COO

ALVAREZ & MARSAL NORTH
AMERICA, LLC

By: *Michael S. Leto*
Name: Michael S. Leto
Title:   Managing Director

### Exhibit B

**Declaration of Michael S. Leto**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

## DECLARATION OF MICHAEL S. LETO IN
## SUPPORT OF DEBTORS' APPLICATION TO EMPLOY
## AND RETAIN ALVAREZ & MARSAL NORTH AMERICA, LLC AS
## FINANCIAL ADVISORS TO DEBTORS AND DEBTORS IN POSSESSION
## PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE

Michael S. Leto, being duly sworn, hereby states as follows:

1.      I am a Managing Director with Alvarez & Marsal North America, LLC (together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors, "A&M"), a restructuring advisory services firm with numerous offices throughout the country.  I submit this declaration on behalf of A&M (the "Declaration") in support of the Debtors' Application to Employ and Retain Alvarez & Marsal North America, LLC as Financial Advisors to Debtors and Debtors in Possession Pursuant to Sections 327(a) and 328 of the Bankruptcy Code (the "Application") on the terms and conditions set forth in the Application and the engagement letter between Debtors and A&M attached to the Application as Exhibit A (the "Engagement Letter").  Except as otherwise noted,[2] I have personal knowledge of the matters set forth herein.

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]      Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at A&M and are based on information provided by them.

## **Disinterestedness and Eligibility**

2.      A&M together with its professional service provider affiliates (the "Firm")

utilize certain procedures ("Firm Procedures") to determine the Firm's relationships, if any, to

parties that may have a connection to a client debtor.  In implementing the Firm Procedures, the

following actions were taken to identify parties that may have connections to the Debtors, and the

Firm's relationship with such parties:

(a)      A&M requested and obtained from the Debtors extensive lists of interested

parties and significant creditors (the "Potential Parties in Interest").[3]  The list of Potential Parties

in Interest which A&M reviewed is annexed hereto as Schedule A.  The Potential Parties in Interest

reviewed include, among others, the Debtors, their affiliates, prepetition lenders, officers,

directors, the fifty (50) largest unsecured creditors of the Debtors (on a consolidated basis),

significant customers and suppliers, parties holding ownership interests in the Debtors, significant

counterparties to material agreements and significant litigation claimants.

(b)      A&M then compared the names of each of the Potential Parties in Interest

to the names in its master electronic database of the Firm's clients (the "Client Database").  The

Client Database generally includes the name of each client of the Firm, the name of each party

who is or was known to be adverse to the client of the Firm in connection with the matter in which

the Firm is or was representing such client, the name of each party that has, or had, a substantial

---

[3]      The list of Potential Parties in Interest is expected to be updated during these cases.  A&M continues to
review the relationships its professionals may have with potentially interested parties and to determine whether any
relationships other than those set forth herein exist.  As may be necessary, A&M will supplement this Declaration if
it becomes aware of a relationship that may adversely affect A&M's retention in these cases or discovers additional
parties in interest through the filing of statements of financial affairs or statements under Rule 2019.  A&M will update
this disclosure if it is advised of any trading of claims against or interests in the Debtors that may relate to A&M's
retention or otherwise requires such disclosure.

role with regard to the subject matter of the Firm's retention, and the names of the Firm professionals who are, or were, primarily responsible for matters for such clients.

(c)     An email was issued to all Firm professionals requesting disclosure of information regarding:  (i) any known personal connections between the respondent and/or the Firm on the one hand, and certain significant Potential Parties in Interest or the Debtors, on the other hand,[4] (ii) any known connections or representation by the respondent and/or the Firm of any of those Potential Parties in Interest in matters relating to the Debtors; and (iii) any other conflict or reason why A&M may be unable to represent the Debtors.

(d)     Known connections between clients of the Firm and the Potential Parties in Interest were compiled for purposes of preparing this Declaration.  These connections are listed in Schedule B annexed hereto.

3.     As a result of the Firm Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, A&M:

(a)     is not a creditor of the Debtors (including by reason of unpaid fees for prepetition services),[5] an equity security holder of the Debtors except certain Firm employees may own de minimis amounts representing not more than 0.01% of the equity interests in the related

---

[4]     In reviewing its records and the relationships of its professionals, A&M did not seek information as to whether any A&M professional or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain A&M professionals have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors or any other party in interest; or (b) has engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, I do not believe it would impact A&M's disinterestedness or otherwise give rise to a finding that A&M holds or represents an interest adverse to the Debtors' estates. It is also noted that in the course of our review it came to A&M's attention that A&M personnel hold de minimis investments, representing not more than 0.01% of the equity interests in the related entity, in various parties in interest, including but not limited to JP Morgan and IBM.

[5]     See paragraph 11 below.

entity, or an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code);

(b)    is not, and has not been, within 2 years before the date of the filing of the petition, a director, officer, or employee of the Debtors; and

(c)    does not have an interest materially adverse to the interests of the Debtors' estates, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

4.    As can be expected with respect to any international professional services firm such as A&M, the Firm provides services to many clients with interests in the Debtors' chapter 11 cases.  To the best of my knowledge, except as indicated below, the Firm's services for such clients do not relate to the Debtors' chapter 11 cases.

5.    In addition to the relationships disclosed on Schedule B, I note the following:

(a)    A&M has made certain personnel available to provide crisis management services to FTX Trading Ltd. and its affiliated debtors and debtors-in-possession including Alameda Research LLC and LedgerPrime (collectively, "FTX") in connection with FTX's Chapter 11 bankruptcy cases. An affiliate of the Debtors, GGC International Ltd ("GGCI"), used FTX as a trading platform in the past and has a claim against FTX, and Debtor GGC has a claim against Alameda Research Ltd.   In December, GGCI was appointed to the Official Committee of Unsecured Creditors of FTX.  A&M has an understanding with both the Debtors and FTX that A&M personnel will recuse themselves on both engagements from any involvement in disputes between them, including GGCI.

4

(b)     JPMorgan Chase Bank, N.A. ("JPMC") together with certain of its affiliates (collectively, "JPM") are Potential Parties in Interest. Under a credit facility (the "Credit Facility") to A&M's parent company Alvarez & Marsal Holdings, LLC: JPMC is a syndication agent and participating lender and J.P. Morgan Securities LLC is a joint lead arranger and joint book runner. In addition to the receipt of interest in their capacity as a lender under the Credit Facility, JPM has received certain customary and negotiated fees and reimbursement of expenses in connection with their roles under the Credit Facility.

6.      Further, as part of its diverse practice, the Firm appears in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who represent claimants and parties-in-interest in the Debtors' chapter 11 cases.  Further, the Firm has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which A&M is to be employed, and none are in connection with these cases.

7.      To the best of my knowledge, no employee of the Firm is a relative of, or has been connected with the United States Trustee in this district or its employees.

8.      Accordingly, to the best of my knowledge, A&M is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that A&M:  (i) is not a creditor, equity security holder, or insider of the Debtors; (ii) was not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors;

and (iii) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders.

9.      If any new material relevant facts or relationships are discovered or arise, A&M will promptly file a supplemental declaration.

### Compensation

10.      Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable United States Trustee guidelines, and the Local Rules of this Court, A&M will seek from the Debtors payment for compensation on an hourly basis and reimbursement of actual and necessary expenses incurred by A&M.  A&M's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application.  These hourly rates are adjusted annually.

11.      To the best of my knowledge, (i) no commitments have been made or received by A&M with respect to compensation or payment in connection with these cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (ii) A&M has no agreement with any other entity to share with such entity any compensation received by A&M in connection with these chapter 11 cases.

12.    By reason of the foregoing, I believe A&M is eligible for employment and retention by the Debtors pursuant to sections 327(a) (as modified by sections 1107(b)), 328, 330 and 331 of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

Dated this 8th day of February 2023

By:    */s/ Michael Leto*
Michael S. Leto
Managing Director

**Schedule A**
**List of Potential Parties in Interest**

**Debtor Entities**
Genesis Asia Pacific PTE. LTD
Genesis Global Capital LLC
Genesis Global Holdco, LLC

**Non-Debtor Affiliates**
Genesis Asia (Hong Kong) Limited
Genesis Bermuda Holdco Limited
Genesis Custody Limited
Genesis Global Assets, LLC
Genesis Global Labs, LLC
Genesis Global Markets Limited
Genesis Global Trading, Inc.
Genesis UK Holdco Limited
GGA International Limited (BVI)
GGC International, Ltd (BVI)

**Major Equity Holders**
Digital Currency Group, Inc.

**Major Equity Holders' Counsel**
Weil, Gotshal, and Manges LLP

**Senior Management**
Agnes Chen Meiyun
Alice Chan
Andrew Sullivan
Diana Kim

**Current Directors**
A. Derar Islim
Arianna Pretto-Sakmann
Gan Lee Teng
Mark Murphy
Michael Kraines
X`Sugandhi Govil
Paul Aronzon
Tom Conheeney

**Debtors' Restructuring Professionals**
Cleary Gottlieb Steen & Hamilton LLP
Moelis & Company
Morrison Cohen LLP

**Material Contract Counterparties**
Talos Trading, Inc.
WorkSocial.com LLC

**Insurers**
Axis Capital
Forge Insurance Company
Lloyd's of London
Starr Insurance & Reinsurance Limited
Woodruff Sawyer

**Bankruptcy Court for the Southern District of New York**
Hon. Cecelia G. Morris
Hon. David S. Jones
Hon. James L. Garrity, Jr.
Hon. John P. Mastando
Hon. Lisa G. Beckerman
Hon. Martin Glenn
Hon. Michael E. Wiles
Hon. Philip Bentley
Hon. Sean H. Lane

**U.S. Trustee Office, Region 2, Southern District of New York, Manhattan Division**
Abriano, Victor
Allen, Joseph
Arbeit, Susan
Bentley, Phillip
Black, Christine
Bruh, Mark
Cornell, Shara
Gannone, James
Harrington, William K.
Higgins, Benjamin J.
Higgins, David S.
Joseph, Nadkarni
Leonhard, Alicia
Masumoto, Brian S.
Mendoza, Ercilia A.
Moroney, Mary V.
Morrissey, Richard C.
Ogunleye, Alaba

Penpraze, Lisa
Riffkin, Linda A.
Rodriguez, Ilusion
Schmitt, Kathleen
Schwartz, Andrea B.
Schwartzberg, Paul K.
Scott, Shannon
Sharp, Sylvester
Tiantian, Tara
Van Baalen, Guy A.
Velez-Rivera, Andy
Vescovacci, Madeleine
Wells, Annie
Zipes, Greg M.

**Taxing Authorities**
Inland Revenue Authority of Singapore
Monetary Authority of Singapore

**Debtors' Banks & Financial Services Providers**
Anchorage Lending CA, LLC
Banking Circle
Continental Stock Transfer & Trust
Houlihan Lokey
Industrial and Commercial Bank of China
Interactive Brokers
JPMorgan Chase Bank, NA
JPMorgan Chase Bank, NA Singapore
Kraken
Marex Captial Markets, Inc.
Metropolitan Commercial Bank
Signature Bank
Silvergate Bank
Tradestation

**Significant Vendors**
250 Park LLC
ACRION GROUP INC/Dmitri Gofshtein
Agon Litigation
Amazon Web Services
American Arbitration Association
Anchorage Digital Bank, National Association
Andy McMullen

BitGo, Inc.
Bloomberg LP
CAPITEQ PTE. LTD.
CDW Direct LLC
Chicago Mercantile Exchange Inc NEED PO
CJD Technologies
CloudFlare, Inc.
CMS Cameron McKenna Nabarro Olswang LLP
Coinbase Custody Trust
Compliancy Services
Corver Roos
Cyberfort Ltd
Dashlane USA Inc
Davis Polk & Wardwell LLP
DCG Real Estate Management LLC
Donnelley Financial LLC
Driven
Ernst & Young LLP
Fireblocks Inc.
Friedman LLP
GitLab Inc
Global Fund Media Limited
Goodwin Procter LLP
Gowling WLG (Canada) LLP
Grab Pte. Ltd.
Halborn Inc.
IBM Corporation
I-Net Technologies
Inland Revenue Authority Of Singapore
Intelliware Development Inc
ISS Facility Services Private Limited
JAMS, Inc.
Kleinberg Kaplan Wolff & Cohen P.C.
Kyte Broking Limited
Levin Group Ltd
Mana Holdings Ltd
Managed Funds Association
Massive Computing, Inc
Meitar Law Offices
Milken Institute
Mintz Levin Cohn Ferris Glovsky and Popeo P.C.
Mitchell Martin

9

| | |
|---|---|
| Moore & Van Allen PLLC | **Litigation Counterparties** |
| Morrison Cohen LLP | [On File] |
| Mount Studio Pte Ltd | [On File] |
| Murphy & Mcgonigle P.C. | [On File] |
| Nakul Verma | [On File] |
| Numerix LLC | |
| Office Secretaries Pte Ltd. | **Top 50 Creditors** |
| Okta Inc | Altcoinomy SA |
| One Raffles Quay Pte Ltd | [On File] |
| One11 Racing LLC | [On File] |
| OnStream LLC | [On File] |
| Opswat, Inc. | Bayhawk Fund LLC |
| Opus Recruitment Solutions Ltd | [On File] |
| Ordinary Folk | Big Time Studios Ltd. |
| Orrick, Herrington & Sutcliffe, LLP | [On File] |
| Papaya Global, Inc. | [On File] |
| Perkins Coie LLP | [On File] |
| Phaidon International Inc | Caramila Capital Management LLC |
| Pico Quantitative Trading | Claure Group LLC |
| Private Chefs of Atlanta | Coincident Capital International, Ltd. |
| Pythian Services, Inc. | Coinhouse |
| Reed Smith Pte. Ltd | Cumberland DRW LLC |
| Richards Layton & Finger | [On File] |
| Roman Mashtalyar | [On File] |
| SALT Venture Group, LLC | [On File] |
| Savills (Singapore) PTE LTD | Digital Finance Group |
| Shearman & Sterling LLP | Donut, Inc. |
| Singtel (Singapore Telecommunications | Heliva International Corp |
| Limited) | [On File] |
| Snowflake Inc. | [On File] |
| Spire Search Partners | Levity & Love, LLC |
| Stop Pest Control Of NY, INC. | [On File] |
| STORM2 PTE LTD | [On File] |
| Stott and May | Mirana Corp. |
| Structure Works | Moonalpha Financial Services Limited |
| T2 CONSULTING, LLC | [On File] |
| The Furniture X-Change | [On File] |
| The TIE, Inc | [On File] |
| Unispace Of Boston, LLC | Plutus Lending LLC |
| United Corporate Services Inc | [On File] |
| VIP Sports Marketing, Inc. | Ripio International |
| Wolters Kluwer financial Services Inc. | [On File] |
| Woodruff Sawyer | [On File] |
| Xenetix Pte Ltd | Schnutz Investments LP |
| | Stellar Development Foundation |

Streami Inc.
[On File]
The Badger Technology Company
Holdings, Ltd.
Valour, Inc.
VanEck New Finance Income Fund, LP
[On File]
[On File]

[On File]
[On File]
Winah Securities S.A.
[On File]

**Potential M&A Counterparties**

[List on File]

11

### Current and Former Clients of A&M and/or its Affiliates [11]

| | |
|---|---|
| [On File] | [On File] |
| [On File] | JAMS, Inc. |
| [On File] | JPMorgan Chase Bank, NA |
| [On File] | [On File] |
| Amazon Web Services | [On File] |
| [On File] | [On File] |
| [On File] | [On File] |
| [On File] | Lloyd's of London |
| [On File] | [On File] |
| [On File] | [On File] |
| [On File] | [On File] |
| [On File] | Moelis & Company |
| Bloomberg LP | [On File] |
| [On File] | [On File] |
| [On File] | [On File] |
| Capitaq Pte Ltd. | [On File] |
| [On File] | [On File] |
| [On File] | Opus Recruitment Solutions Ltd.Phaidon |
| Chicago Mercantile Exchange Inc | International Inc. |
| [On File] | [On File] |
| Coinbase Custody Trust | [On File] |
| DFG | [On File] |
| [On File] | [On File] |
| Ernst & Young LLP | [On File] |
| [On File] | Savills (Singapore) PTE Ltd. |
| [On File] | Signature Bank |
| [On File] | [On File] |
| [On File] | Starr Insurance & Reinsurance Limited |
| Friedman LLP | [On File] |
| [On File] | [On File] |
| [On File] | [On File] |
| [On File] | [On File] |
| Gowling WLG (Canada) LLP | [On File] |
| [On File] | [On File] |
| Halborn Inc. | [On File] |
| Houlihan Lokey | [On File] |
| IBM Corporation | [On File] |
| [On File] | [On File] |

---

11 A&M and/ or an affiliate is currently providing or has previously provided certain consulting or interim management services to these parties or their affiliates (or, with respect to those parties that are investment funds or trusts, to their portfolio or asset managers or their affiliates) in wholly unrelated matters.

[On File]

Weil, Gotschal, and Manges LLP

Wolters Kluwer Financial Services Inc.

**Significant Equity Holders of Current and Former A&M Clients**[12]

[On File]

[On File]

Amazon Web Services

[On File]

[On File]

[On File]

Axis Capital

[On File]

[On File]

[On File]

[On File]

Bloomberg LP

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

Digital Currency Group, Inc.

Ernst & Young LLP

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

IBM Corporation

[On File]

[On File]

[On File]

JPMorgan Chase Bank, NA

[On File]

[On File]

[On File]

[On File]

Lloyd's of London

[On File]

[On File]

Moelis & Company

Monetary Authority of Singapore

[On File]

Multicoin Opportunities Fund I LP

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

Reed Smith Pte. Ltd.

[On File]

[On File]

[On File]

[On File]

Singtel (Singapore Telecommunications Limited)

Starr Insurance & Reinsurance Limited

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

[On File]

---

12 These parties or their affiliates (or, with respect to those parties that are investment funds or trusts, their portfolio or asset managers or other funds or trusts managed by such managers) are significant equity holders of clients or former clients of A&M or its affiliates in wholly unrelated matters.

**Professionals & Advisors**[13]

American Arbitration Association
Cleary Gottlieb Steen & Hamilton LLP
CMS Cameron McKenna Nabarro Olswang
Davis Polk & Wardwell LLP
Donnelley Financial LLC
Ducera LLC
Ernst & Young LLP
FMR LLC (d/b/a Fidelity)
Goodwin Procter LLP
Gowling WLG (Canada) LLP
Houlihan Lokey
JPMorgan Chase Bank, NA
Kirkland & Ellis LLP
KKR & Co. Inc.
Mintz Levin Cohn Ferris Glovsky and
    Popeo P.C.
Moelis & Company
Moore & Van Allen PLLC
Morgan Stanley & Co. LLC
Morrison Cohen LLP
Orrick, Herrington & Sutcliffe, LLP
Perkins Coie LLP
Piper Sandler & Co.
Proskauer Rose LLP
Reed Smith Pte. Ltd.
Richards Layton & Finger
Shearman & Sterling LLP
Weil, Gotschal, and Manges LLP
Wolters Kluwer Financial Services Inc.

**Government and Regulatory**[14]
[On File]

**Significant Joint Venture Partners**[15]

[On File]
[On File]
[On File]
Ernst & Young LLP
IBM Corporation
JPMorgan Chase Bank, NA

**Board Members**[16]
Aronzon, Paul
Hawkins, Michael
Kramer, Michael
Williams, Brandon

**A&M Vendors**[17]
Amazon Web Services
[On File]
Bloomberg LP
CDW Direct LLC
Cleary Gottlieb Steen & Hamilton LLP
Davis Polk & Wardwell LLP
Ernst & Young LLP
[On File]
[On File]
Goodwin Procter LLP
Houlihan Lokey
IBM Corporation
ISS Facility Services Private Limited
JAMS, Inc.
JPMorgan Chase Bank, NA
Kirkland & Ellis LLP

---

13 These professionals have represented clients in
   matters where A&M was also an advisor (or
   provided interim management services) to the
   same client. In certain cases, these professionals
   may have engaged A&M on behalf of such client.
14 A&M and/or an affiliate is currently providing or
   has provided certain consulting or interim
   management services to these government entities
   or regulatory agencies in wholly unrelated
   matters.
15 These parties or their affiliates are significant
   venture partners of other clients or former clients

of A&M or its affiliates in wholly unrelated
matters.
16 These parties or their affiliates are board members
   of other clients or former clients of A&M or their
   affiliates in wholly unrelated matters.
17 These parties or their affiliates provide or have
   provided products, goods and/or services
   (including but not limited to legal representation)
   to A&M and/or its affiliates

Lloyd's of London
Mintz Levin Cohn Ferris Glovsky and
    Popeo P.C.
Moelis & Company
[On File]
Orrick, Herrington & Sutcliffe, LLP

Perkins Coie LLP
Proskauer Rose LLP
Reed Smith Pte. Ltd.
Shearman & Sterling LLP
Weil, Gotschal, and Manges LLP
Wolters Kluwer Financial Services Inc.

**<u>Exhibit C</u>**

**Proposed Order**

16

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL ADVISORS TO DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE

Upon the application (the "Application") of the debtors in possession in the above-captioned case (collectively, the "Debtors" or the "Company") for an order (this "Order") pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to employ and retain Alvarez & Marsal North America, LLC, together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively, "A&M") as financial advisors, *nunc pro tunc* to the date of filing of these cases (the "Petition Date") on the terms set forth in the engagement letter (the "Engagement Letter") annexed to the Application as Exhibit A; and upon the Declaration of Michael S. Leto in support of the Application annexed thereto as Exhibit B; and due and adequate notice of the Application having been given; and the Court being satisfied that A&M is a "disinterested person" as such term is defined under section 101(14) of the Bankruptcy Code; and it appearing that no other or further notice need be provided;

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

and it appearing that the relief requested by this Application is in the best interests of the Debtors,

their estates, their creditors, and other parties in interest; and after due deliberation and sufficient

cause appearing therefor, it is hereby

ORDERED, ADJUDGED AND DECREED that:

1.    The Application is granted to the extent set forth herein.

2.    Capitalized terms not otherwise defined herein shall have the meanings

ascribed to such terms in the Application.

3.    Pursuant to sections 327(a) and 328 of the Bankruptcy Code, the Debtors

are hereby authorized to retain A&M as financial advisors to the Debtors, *nunc pro tunc* to the

Petition Date on the terms set forth in the Engagement Letter.

4.    The terms of the Engagement Letter, including without limitation, the

compensation provisions and the indemnification provisions, as modified by the Application, are

reasonable terms and conditions of employment and are hereby approved.

5.    To the extent there is inconsistency between the terms of the Engagement

Letter, the Application, and this Order, the terms of this Order shall govern.

6.    This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation or interpretation of this Order.

Dated:    _____, 2023
            White Plains, New York          _____
                                             The Honorable Sean H. Lane
                                             United States Bankruptcy Judge

2