Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shI

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GENESIS GLOBAL HOLDCO, LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    300 Quarropas Street, Room 248

14                    White Plains, NY 10601

15

16                    February 9, 2023

17                    2:09 PM

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

1    HEARING re Doc. #61 Emergency Motion To Authorize Debtor

2    Genesis Global Holdco, LLC To Consent To Priming Of Lien

3

4    HEARING re Doc. #62 Motion To Shorten Time / Debtors Motion

5    To Shorten Notice Period And Schedule A Hearing With Respect

6    To Debtors Emergency Motion For Entry Of An Order

7    Authorizing Debtor Genesis Global Holdco, LLC To Consent To

8    Priming Of Lien

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    CLEARY GOTTLIEB STEEN & HAMILTON LLP

4        Attorneys for the Debtors

5        One Liberty Plaza

6        New York, NY 10006

7

8    BY:  JANE VANLARE

9        JACK MASSEY

10

11   PROSKAUER ROSE LLP

12       Attorneys for Ad Hoc Group of Genesis Customers

13       Eleven Times Square

14       New York, NY 10036

15

16   BY:  BRIAN ROSEN

17

18   KIRKLAND & ELLIS LLP

19       Attorneys for Ad Hoc Group of Creditors

20       601 Lexington Avenue

21       New York, NY 10022

22

23   BY:  ROSS FIEDLER

24       CHRISTOPHER MARCUS

25

1   UNITED STATES DEPARTMENT OF JUSTICE

2        Attorneys for the U.S. Trustee

3        201 Varick Street, Suite 1006

4        New York, NY 10014

5

6   BY:  GREG ZIPES

7

8   HUGHES HUBBARD & REED LLP

9        Attorneys for Gemini Trust Company, LLC

10       One Battery Park Plaza

11       New York, NY 10004

12

13  BY:  ANSON B. FRELINGHUYSEN

14       JEFFREY S. MARGOLIN

15

16  ALSO PRESENT TELEPHONICALLY:

17  PHILIP ABELSON

18  NATHANIEL ALLARD

19  ERIC C. DAUCHER

20  ADAM J. GOLDBERG

21  VINCENT INDELICATO

22  ZUL JAMAL

23  KEN LUKASZEWSKI

24  JACK MASSEY

25  KYLE MCKUHEN

Page 5

1   BRETT MATTHEW NEVE

2   SEAN A. O'NEAL

3   GREGORY F. PESCE

4   STEVEN J. REISMAN

5   SHAYA ROCHESTER

6   BRIAN SANDLOW ROSEN

7   AIDAN RYAN

8   JEFFREY SAFERSTEIN

9   JORDAN SAZANT

10   GORDON SUN

11   JOSH SUSSBERG

12   NACIF TAOUSSE

13   BENJAMIN TEICH

14   FRANCISCO VAZQUEZ

15   MEGHANA VUNNAMADALA

16   MICHAEL WEINBERG

17   PAUL ARONZON

18   ARIAM ASMEROM

19   ERIC ASQUITYH

20   BRENDON BARNWELL

21   BRIANNA B. BILTER

22   SABRINA BREMER

23   BRIAN BULTHUIS

24   RYAN CHEN

25   TOM CONHEENEY

Page 6

1    OLIVER CORREA

2    COURTENAY CULLEN

3    JARED DERMONT

4    MICHAEL DIYANNI

5    THOMAS DIRCKS

6    LEIA-LEE DORAN

7    JAMES V. DREW

8    LISA FAUCHER

9    JULIA FOSTER

10   UDAY GORREPATI

11   JASON GOTTLIEB

12   BRANDON HAMMER

13   MIRANDA HATCH

14   AUTUMN HIGHSMITH

15   JEREMY HILL

16   DAVID HOLLERITH

17   DERAR ISLIM

18   KEEFE JOHNSON

19   BRAD MICHAEL KAHN

20   PAUL KINEALY

21   BARAK KLEIN

22   DIETRICH KNAUTH

23   KONRAD LAESSER

24   GREGORY LANDEGGER

25   CHRISTINE LEE

Page 7

1    MICHAEL LETO

2    SAMUEL LEVANDER

3    DAVID LOPEZ

4    ALEXANDRA LOTTY

5    AKIKO MATSUDA

6    DAVID MAYO

7    MICHELE MEISES

8    JOHN NGUYEN

9    TYLER OKADA

10   KENNETH L. PERKINS

11   AMELIA POLLARD

12   ARIANNA PRETTO-SAKMANN

13   GREGORY RAAB

14   MOHIT RATHI

15   CHRISTIAN RIBEIRO

16   PHILIP REIS

17   ANDREW FELIPE SAENZ

18   THERESE SCHEUER

19   JACK SCHICKLER

20   JOE SCIAMETTA

21   IAN SILVERBRAND

22   KUNALKUMAR S. SOMANI

23   BENJAMIN STEELE

24   BRIAN STOUT

25   ANDREW SULLIVAN

Page 8

1    ANDREW SWIFT

2    BENJAMIN TAYLOR

3    BRIAN TICHENOR

4    ETHAN TROTZ

5    MARIANNA UDEM

6    RICHARD R. WESTON

7    LAUREN WALKER

8    NELSON WANG

9    JACK WESTNER

10   PAUL WIRTZ

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  Good afternoon.  This is Judge Lane.

3    Can folks hear me?

4              MS. VANLARE:  Good afternoon, Your Honor.  Jane

5    Vanlare, Cleary Gottlieb Steen & Hamilton proposed counsel

6    to the Debtors.  Thank you so much for agreeing to have this

7    hearing on an emergency basis.  We very much appreciate it.

8    I will --

9              THE COURT:  It's my pleasure.  No problem at all.

10   So I guess we'll go ahead with appearances and I just got

11   yours.  Anyone else from your team that you want to

12   introduce?

13             MS. VANLARE:  Yes, Your Honor.  I have my

14   colleague Jack Massey here as well.

15             MR. MASSEY:  Good afternoon.

16             THE COURT:  All right.  Good afternoon to you

17   both.  And let me ask if there's anybody here for the

18   official committee unsecured creditors.

19             MR. ROSEN:  Your Honor, this is Brian Rosen,

20   counsel to one of the ad hoc groups.  It's my understanding

21   that the official committee at this time has not selected

22   counsel.

23             THE COURT:  All right.  Well, thank you very much

24   for that update.  It's a question I had and I've gotten your

25   appearances.  Is there anyone else here for either of the ad

Page 10

```
 1    hoc groups?

 2            MR. FIEDLER:  Your Honor, Ross Fiedler of Kirkland

 3    & Ellis on behalf of an ad hoc group.  I'm joined on the

 4    phone by my colleague Christopher Marcus.

 5            THE COURT:  All right.  Good afternoon. Anyone

 6    else for the ad hoc groups?  All right.  Anyone here for the

 7    United States Trustee's office?

 8            MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

 9    Trustee's office.

10            THE COURT:  All right.  Good afternoon.  I wasn't

11    sure if there's anyone here from any Gemini entity.

12            MR. FRELINGHUYSEN:  Good afternoon, Your Honor.

13    Anson B. Frelinghuysen, Hughes Hubbard & Reed with my

14    colleague Jeff Margolin as well for Gemini Trust Company,

15    LLC.

16            THE COURT:  All right.  Good afternoon.  Anyone

17    here for DCG?  All right.  And is there anyone here for

18    Cashcloud?  All right.  Any other appearances from anyone

19    who has not yet chimed in?  All right.  Hearing no further

20    appearances, I'll turn it over to Debtors' counsel to walk

21    us through.  I have read the motion and -- supporting the

22    declaration and have it all including the order so take it

23    away, counsel.

24            MS. VANLARE:  Thank you, Your Honor.  I'm going to

25    pass the virtual podium to my colleague Mr. Massey.
```

Page 11

1          MR. MASSEY:  Thanks.  Good afternoon, Your Honor.

2     Can you hear me okay?

3          THE COURT:  I can hear you just fine.  Thanks.

4          MR. MASSEY:  Great.  For the record again, Jack

5     Massey, Cleary Gottlieb Steen & Hamilton, proposed counsel

6     to the Debtors.  Again, thank you so much for hearing us on

7     short notice and we really appreciate your chambers'

8     assistance in arranging this hearing on short notice as

9     well.

10          Your Honor, we're here today --

11          THE COURT:  Well, I understand you were probably

12     quite surprised by the need of this hearing as -- as

13     surprised as anyone else so that's -- certainly happy to

14     arrange it and understand that the timing -- involved so

15     happy to help.

16          MR. MASSEY:  That's exactly right.  Okay.

17          Well, Your Honor, we're here today on an emergency

18     motion filed at docket number 61, as you know, seeking this

19     Court's authorization for Genesis Global Holdco, LLC, which

20     is one of the Debtors in these cases which I'll call Holdco

21     for short to provide its consent to a DIP facility for the

22     benefit of Cashcloud, Inc., which is a debtor in an

23     unrelated Chapter 11 proceeding where that DIP facility

24     would have the effect of priming the lien held by Holdco

25     over assets of Cashcloud.

Page 12

1            Cashcloud is a Las Vegas-based entity that

2     operates in the crypto currency space.  It is the borrower

3     under two debt facilities for which Holdco is the lender

4     with a combine aggregate principle amount of approximately

5     $108 million.  The first is an unsecured debt facility in

6     the aggregate principle amount of $100 million.  The second

7     is a secured debt facility in the aggregate principle amount

8     of $7.5 million.  Cashcloud's borrowings under the secured

9     debt facility are secured by a lien on substantially all of

10    the assets of Cashcloud.

11            Yesterday, February 8th, Cashcloud filed a

12    bankruptcy petition in the federal bankruptcy court in Las

13    Vegas.  It has sought that court's interim authority to

14    approve a DIP facility in the amount of $3 million which we

15    understand will be followed by a request for borrowings up

16    to $5 million on a final basis.  It is our understanding

17    that the financing is critical to Cashcloud's ability to

18    efficiently reorganize or sell its business under Chapter

19    11.

20            The proposed Cashcloud DIP would grant to the DIP

21    lender a priming lien on all of the assets of Cashcloud.

22    This would have the effect of reducing the priority of

23    Holdco's existing lien and that reduction in priority

24    requires Holdco's consent.  Cashcloud has offered to provide

25    adequate protection for Holdco' secured claim in exchange

Page 13

1      for the priming which would come in the form of cash

2      interest payments in the amount of 6.25 percent per annum of

3      the outstanding amount under the secured facility and I'll

4      note this is a more favorable rate than the 5 percent that

5      was proposed as of the date that we submitted the motion.

6      And the adequate protection package also includes payment of

7      Holdco's attorney's fees associated with Cashcloud

8      proceedings up to $100,000, replacement liens, super

9      priority claims by Holdco that would be junior only to the

10     DIP facility, and other customary stipulations and

11     provisions.

12             The Debtors believe that the adequate protection

13     package is reasonable and that providing Holdco's consent to

14     the DIP facility will maximize the likelihood and the amount

15     of Holdco's recovery from Cashcloud on both its secured and

16     unsecured claims.

17             As we note in our papers, we've filed the

18     emergency motion out of an abundance of caution as we think

19     that the consent by Holdco to the priming of its lien

20     arguably constitutes an action in the ordinary course under

21     Section 363(c) of the bankruptcy code for which no court

22     approval is required.  But in the alternative, we seek

23     authority to grant Holdco's consent under Section 363(b) of

24     the bankruptcy code as an extent -- excuse me -- as an

25     exercise of the Debtors' sound business judgment.

Page 14

1           Section 363(b) requires that a debtor show a good

2    business reason for any action taken outside of the ordinary

3    course of business.  The good business reason here is

4    twofold:  First, the Debtors believe that an efficient

5    reorganization or sale by Cashcloud would not be possible in

6    the absence of DIP financing, and we believe that a prompt

7    efficient process in the Cashcloud bankruptcy will maximize

8    Holdco's recovery under the two outstanding loan facilities.

9           Second, the Debtors believe that the proposed

10   adequate protection provides reasonable compensation to

11   Holdco for any diminution in the value of its asset, the

12   lien, that might result from the -- from its priming or from

13   the potential exercise of remedies by the DIP lender.

14   Finally, and also out of an abundance of caution, we seek a

15   modification of the automatic stay to the extent required to

16   permit Holdco to consent to the Cashcloud DIP facility.

17           In support of the motion, we have filed a

18   declaration at docket number 61-1 by Mr. Zul Jamal of

19   Moelis, proposed investment banker to the Debtors.  I'd like

20   to offer his declaration into evidence now and Mr. Zul is

21   with us in the virtual courtroom today via Zoom if Your

22   Honor has any questions for him.

23           THE COURT:  All right.  Thank you, Mr. Zul, for

24   being here.  Anybody wish to be heard as to the request to

25   admit his declaration into evidence?

Page 15

1          MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

2     Trustee's Office.  We have no objection.  We did have some

3     questions later on which we don't know would require his

4     testimony or not, but we just want to reserve our right to

5     ask questions later on.

6          THE COURT:  Yeah, that's fine.  So anyone wish to

7     be heard as to Mr. Zul's declaration being admitted into

8     evidence?  All right.  I'm going to receive it into evidence

9     in support of the motion.  Obviously, that doesn't prevent

10    any party from, if necessary, seeking information from Mr.

11    Zul, either informally through counsel in the form of

12    questions and answers which I suspect is how we'll go or if

13    we actually need something more formal.  But it seems --

14    that seems unlikely but we'll see.  So that is admitted into

15    evidence.  So let me hear the rest of the presentation from

16    Debtors' counsel.

17          (Declaration admitted into evidence)

18          MR. MASSEY:  That's all for me, Your Honor.  We

19    have submitted a proposed order attached to the motion as

20    Exhibit A and I and others from Cleary are happy to answer

21    any questions that Your Honor or others may have about the

22    proposed relief.

23          THE COURT:  All right.  I think the only question

24    that popped into my head as to the order was whether you

25    wanted to lay out the specific terms for adequate

Page 16

1    protection, especially -- I was wondering if they might

2    change -- they often do -- over time, and it sounds like

3    their improved and I know the language in the order says

4    substantially in the form of so I think you're -- of what's

5    the motion, I think you're covered.  I don't know if you

6    want to say on terms as least as good as what's set forth in

7    the motion or something else.  Did you have a thought?

8             MR. MASSEY:  So I will say that I think that we

9    had anticipated that the terms might change and that the

10   language that we drafted, the substantially in the form of

11   language, was intended to cover minor revisions to the

12   adequate protection package such as the one that I mentioned

13   earlier.  So we think that the proposed language works and

14   applies to where we expect to land but we'll take Your

15   Honor's guidance if you think language --

16            THE COURT:  Well, that's fine I guess.  If you

17   think you're far enough along in the process that you have

18   terms and I don't know when their -- Cashcloud's -- hearing

19   is but obviously, things can also change between the interim

20   and the final.  So am I understanding correctly that your

21   thought is that it's best say substantially in the form

22   described in the motion to offer the flexibility that in

23   case there's some tweaks along the way?

24            MR. MASSEY:  That's right, Your Honor.

25            THE COURT:  All right.  All right.  Anything else,

Page 17

1    counsel, before I canvas the virtual room?

2              MR. MASSEY:  Nothing more from me.  Thank you.

3              MS. VANLARE:  Your Honor, just to -- one other

4    point.  This is Jane Vanlare, Cleary Gottlieb Steen &

5    Hamilton.  Just for the record, it's Mr. Zul Jamal who is

6    the declarant.

7              THE COURT:  Oh, I'm sorry.  My -- a thousand

8    apologies to your declarant for getting his name wrong.

9    Shame on me and thank you for the correction.

10             MS. VANLARE:  Thank you very much, Your Honor.

11             THE COURT:  All right.  All right.  So with that,

12   let me ask if anyone from the ad hoc committees wishes to be

13   heard in connection with the pending motion.

14             MR. ROSEN:  Your Honor, this is Brian Rosen,

15   Proskauer Rose.  We have nothing to add to this today.

16             THE COURT:  All right.  Thank you very much.

17   Anyone else?

18             MR. FIEDLER:  Your Honor, Ross Fiedler of Kirkland

19   & Ellis on behalf of an ad hoc group.  We have spoken with

20   Moelis and Cleary about the relief requested.  We understand

21   the expedited timing here and although we wish we had more

22   time to review the motion, we defer to the Debtors' business

23   judgment.

24             We did have questions around the transfer of the

25   obligations under the secured -- unsecured loans from GGC to

1     Holdco but we are working through those with the Debtors so

2     we do not have an objection and we will leave it at that.

3            THE COURT:  All right.  Thank you very much.  And

4     from the United States Trustee's Office?

5            MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

6     Trustee's Office.  We are a little surprised that the

7     committee has not selected professionals right now which

8     might have been helpful for this hearing, but my office has

9     had a chance to review the motion.  We obviously didn't have

10    a lot of time on this as with other parties.  And we did

11    have a couple questions which probably can be addressed

12    informally.

13           We had a chance to look at Cashcloud's initial

14    declaration and at least according to the declarant in that

15    case in Las Vegas, there's cash of about $8.6 million

16    altogether and, again, we're just going based on the papers

17    that are filed so we'd just like the Debtors representation

18    they've looked into this and they're satisfied that there's

19    sufficient assets with Cashcloud in the event that they're

20    allowing their lien to be primed.

21           Your Honor, maybe I can just give the two or three

22    points right now that they can --

23           THE COURT:  Yeah.  I would go ahead.  I'm not

24    quite sure what you mean by sufficient assets.  Are you

25    talking about the need for the financing which I assume the

1    bankruptcy judge in Nevada will address or are you talking

2    about where it leaves the Debtor in terms of its position?

3    I'm assuming that, looking at the big picture, that the

4    Debtors made a determination that given its business

5    relationship and what I understand is Cashcloud that this is

6    the best option available, but they can speak to that.  But

7    I'm just -- let me -- I just want to clarify your question.

8            MR. ZIPES:  Your Honor, that's exactly it and I

9    might not have articulated that in the way that intended to

10   do that.

11           THE COURT:  All right.  All right.  So what else

12   was on your mind, Mr. Zipes?

13           MR. ZIPES:  Okay.  And then this on -- this

14   ordinary course -- the Debtors' position this is ordinary

15   course, I don't know that there's sufficient information to

16   make that finding but I also think that the way they're

17   arguing this, they would meet the burden of bankruptcy rule

18   6003 so I don't know that there needs to be a finding in

19   that regard, and the Debtor can explain whether it does --

20   they do need a finding that -- it doesn't appear to be

21   ordinary course but that -- there just might not be enough

22   information in that regard.

23           And the final point is that, obviously, they need

24   this today for some reason and we looked at the docket.  It

25   looks like there's a hearing tomorrow maybe in Las Vegas,

1    but --

2            THE COURT:  Yes.  That's what I was assuming was

3    the driver for this is that they need to have a position to

4    go into court with on -- in front of that judge and wanted

5    to make sure that they had all their -- everything in a row

6    and set up to be able to do that.  That was my assumption.

7            MR. ZIPES:  And, Your Honor, I think that's it

8    from our --

9            THE COURT:  All right.  So let me ask Debtors'

10   counsel what you wanted to -- whether you wanted to address

11   -- how you wanted to address those specific questions.  I

12   seem to have lost Debtors' counsel.

13           MS. VANLARE:  We're here, Your Honor.

14           THE COURT:  Oh, okay.  Great.

15           MS. VANLARE:  I think in terms of the first

16   question, you know, we don't -- we think that this is

17   appropriate in the ordinary course; however, we did plead in

18   the -- we did argue in the alternative and we think we do

19   meet the standard for this being appropriate transaction

20   given the exercise of the Debtors' business judgment as a

21   non-ordinary course transaction as well.

22           THE COURT:  Let me make it clear.  I would agree

23   with that.  I think you have no choice but really to come up

24   with a position in order to represent yourselves in the

25   bankruptcy court in Nevada and so you've -- and again, do

Page 21

1    correct me or confirm this, whatever's appropriate -- but my

2    understanding is that you're -- you need to do that.  You

3    have done that, and you think that this -- the best course

4    as a creditor in that bankruptcy.

5              MS. VANLARE:  That's exactly right, Your Honor,

6    and we did -- would appreciate Your Honor's granting us this

7    motion so that we could be ready for the first day hearing

8    which is currently scheduled for tomorrow in the Cashcloud

9    bankruptcy proceeding.

10             THE COURT:  All right.  All right.  And as to any

11   other issues that Mr. Zipes raised?  Anything in particular

12   that you wanted to address?

13             MS. VANLARE:  I believe I've addressed both of his

14   points, Your Honor, but if not, I'm happy to answer any

15   other questions that you have or that Mr. Zipes has.

16             THE COURT:  All right.  Let me turn it over to Mr.

17   Zipes for anything that he would like to follow up on.

18             MR. ZIPES:  Your Honor, we have no further

19   questions in this regard, and we would just ask that the

20   order provide that the priming lien be limited to the $5

21   million which I think is clear.

22             THE COURT:  All right.  I think that's the

23   intention and that if there's any to come back to address

24   other than to that court that we can cross that bridge when

25   we come to it, but let me ask Debtors' counsel if I'm

Page 22

1     reading the tealeaves correctly.

2              MS. VANLARE:  That's fine with us, Your Honor.

3              THE COURT:  All right.  All right.  Any other

4     party that wishes to be heard on the Debtors' current

5     motion?  All right.  Hearing no responses, I am happy to

6     approve the request and I'm basing it on the evidence that's

7     in record which exists of the declarations that are already

8     in the record at ECF number 17 and 19 as the declaration of

9     Mr. Jamal in support of this specific motion.

10             I find that the request satisfies all requirements

11    of the applicable law and is in fact exactly the kind of

12    things that judges appreciate.  You know, the timing is what

13    it is, but it's important that there's transparency and --

14    from folks -- and it's exactly what this motion provides

15    which is a window into what's going on, what needs to go on

16    with the Debtor as a Creditor in the Cashcloud bankruptcy in

17    Nevada.  So I am certainly -- understand the timing.

18             I'm more than happy to be here today for this kind

19    of emergency hearing because, again, we appreciate the

20    transparency of folks coming saying even if it is arguably

21    ordinary course, we just want to be clear and get our ducks

22    in a row.  So I find it is an appropriate exercise of the

23    Debtors' business judgment under all the facts and

24    circumstances of the case and complies with all aspects of

25    the bankruptcy code, including 363 that may be applicable

Page 23

1    either as ordinary course or as a non-ordinary course matter

2    of the Debtors' sound exercise of business judgment under

3    363(b).

4            So with that, my -- I'd ask one question about the

5    order and I'm satisfied with the answer and the explanation.

6    I can understand that, as we all know from the other side of

7    this, that you may be conducting some negotiations.  There

8    may be some tweaks so I don't need you to change that

9    language, in substantially in the form, discussed in the

10   motion.  And, obviously, the understanding is to the extent

11   you can get to the best terms you can get, that's what

12   you're going to do and that's -- I think that goes without

13   saying.

14           So with that, the motion is approved, and let me

15   ask Debtors' counsel if there's anything else that we need

16   to address here this afternoon.

17           MS. VANLARE:  Thank you very much, Your Honor.

18   Nothing else from the Debtors.

19           THE COURT:  All right.  Thank you.  Anything else

20   from any other party?  All right.  Hearing no responses,

21   that's not surprising.  I know we will just scheduled for

22   this hearing for this motion, but thank you very much.  I'm

23   going to so order the record so that even before the order

24   is entered, the Debtors have authority to take the steps set

25   forth in the motion, but we will obviously get the order

Page 24

1    entered promptly.

2             So with that, all of you have a good afternoon.

3    Be well.  And I'm sure I'll be talking to you soon.  Thank

4    so much.

5             MS. VANLARE:  Thank you, Your Honor.

6             (Whereupon these proceedings were concluded at

7    2:32 PM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 25

1                               I N D E X

2

3                               RULINGS

4                                                    Page       Line

5

6    Motion Approved                                 23         14

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 13, 2023