Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shl

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GENESIS GLOBAL HOLDCO, LLC,

8

9          Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                     United States Bankruptcy Court

13                     300 Quarropas Street, Room 248

14                     White Plains, NY 10601

15

16                     February 22, 2023

17                     11:11 AM

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

Page 2

1    HEARING re SECOND DAY HEARING

2

3    HEARING re Doc. #89 Notice Of Agenda

4

5    HEARING re Doc. #9 (Taxes And Fees) Motion To Pay Taxes

6    /Debtors' Motion For Entry Of Interim And Final Orders

7    Authorizing The Payment Of Certain Taxes And Fees

8

9    HEARING re Doc. #11 (Critical Vendor) Motion To Authorize /

10   Debtors' Motion For Entry Of Interim And Final Orders (I)

11   Authorizing, But Not Directing, The Debtors To Pay Certain

12   Prepetition Claims Of Critical Vendors And Foreign Vendors,

13   (II) Authorizing And Directing Financial Institutions To

14   Honor and Process Checks And Transfers Related To

15   Such Claims And (III) Granting Related Relief

16

17   HEARING re Doc. #16 (Employee Wages) Motion To Authorize /

18   Motion Of Genesis Asia Pacific PTE. LTD. For Entry of

19   Interim and Final Orders (I) Authorizing Genesis Asia

20   Pacific PTE. LTD. To (A) Pay Certain Employee Wages and

21   Other Compensation and Related Obligations and (B) Maintain

22   and Continue Employee Benefits and Programs in the Ordinary

23   Course, and (II) Authorizing and Directing Applicable Banks

24   to Honor All Transfers Related to Such Obligations

25

Page 3

1    HEARING re Doc. #64 (Interim Compensation) Motion To

2    Authorize Procedures For Interim Compensation And

3    Reimbursement Of Expenses Of Professionals

4

5    HEARING re Doc. #65 (Ordinary Course Professional)

6    Application To Employ Professionals Used In The Ordinary

7    Course Of Business Nunc Pro Tune To The Petition Date

8

9    HEARING re Doc. #69 Application To Employ Cleary Gottlieb

10   Steen & Hamilton LLP As Counsel For The Debtors And Debtors-

11   In-Possession Nunc Pro Tune To The Petition Date

12

13   HEARING re Doc. #72 Application To Employ Kroll

14   Restructuring Administration LLC As Administrative Advisor

15   Nunc Pro Tune To The Petition Date

16

17   HEARING re Doc. #71 Application To Employ Morrison Cohen LLP

18   As Special Counsel To The Debtors And Debtors-In-Possession

19   Effective Nunc Pro Tune To The Petition Date

20

21   HEARING re Doc. #73 Application To Employ Alvarez & Marsal

22   North America, LLC As Financial Advisors To Debtors And

23   Debtors In Possession

24

25

1    HEARING re Doc. #70 Application To Employ Kobre & Kim LLP As

2    Special Litigation Counsel Filed By Danielle L. Rose On

3    Behalf Of Genesis Global Holdco, LLC

4

5    HEARING re Doc. #15 (Cash Management) Motion To Authorize /

6    Debtors' Motion For Entry Of Interim And Final Order (I)

7    Authorizing Debtors To Continue To Operate The Existing

8    Cash Management System, Including Existing Bank Accounts,

9    Honor Certain Prepetition Obligations Related Thereto, and

10    Maintain Existing Business Forms; (II) Permitting Continued

11    Intercompany Transactions and Granting Certain

12    Administrative Claims; (III) Extending the Time to Comply

13    with the Requirements of Section 345 of the Bankruptcy

14    Code and (IV) Granting Related Relief

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2

3   CLEARY GOTTLIEB STEEN & HAMILTON LLP

4        Attorneys for the Debtor

5        One Liberty Plaza

6        New York, NY 10006

7

8   BY:  JANE VANLARE

9        HOORI KIM

10       RICHARD MINOTT

11       MICHAEL WEINBERG

12       CHRISTIAN RIBEIRO

13       SEAN O'NEAL

14

15   WHITE & CASE LLP

16        Attorneys for Official Committee

17        1221 Avenue of the Americas

18        New York, NY 10020

19

20   BY:  J. CHRISTOPHER SHORE

21        GREGORY F. PESCE

22        PHILIP ABELSON

23        COLIN WEST

24

25

Page 6

1    PROSKAUER ROSE LLP

2          Attorneys for Ad Hoc Group of GGC Lenders

3          Eleven Times Square

4          New York, NY 10036

5

6    BY:  BRIAN ROSEN

7

8    KIRKLAND & ELLIS LLP

9          Attorneys for the Ad Hoc Group

10          601 Lexington Avenue

11          New York, NY 10022

12

13    BY:  ROSS FIELDER

14

15    WEIL, GOTSHAL & MANGES LLP

16          Attorneys for Digital Currency Group

17          767 Fifth Avenue

18          New York, NY 10153

19

20    BY:  JEFFREY SAFERSTEIN

21

22

23

24

25

1   HUGHES HUBBARD & REED LLP

2        Attorneys for Gemini Trust Company, LLC

3        One Battery Park Plaza

4        New York, NY 10004

5

6   BY:   JEFFREY MARGOLIN

7        ANSON FRELINGHUYSEN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 8

1                      P R O C E E D I N G S

2              THE COURT:  Good morning.  This is Judge Sean Lane

3    in the United States Bankruptcy Court for the Southern

4    District of New York here this morning for an 11:00 hearing

5    in Genesis Global Holdco LLC, a Chapter 11 case that is

6    jointly administered.  And we are here for a second day

7    hearing and there has been an amended agenda filed on the

8    docket for this second day hearing, I believe the right

9    version.  It's at Docket Number 93.

10             And so we'll start this hearing as we do always by

11   getting appearances, folks who expect to participate

12   actively in terms of actually speaking during the hearing.

13   I realize that there are a lot of folks who are on various

14   devices, both Zoom and the telephone, who don't expect to be

15   heard in the sense of talk at the hearing, so we don't need

16   appearances from them.  But let's start with the Debtors.

17             MS. VANLARE:  Good morning, Your Honor.  Jane

18   Vanlare, Cleary Gottlieb Steen & Hamilton, proposed counsel

19   for the Debtors.  And with me also in the virtual courtroom

20   are my colleagues, Ms. Hoori Kim, Mr. Richard Minott, Mr.

21   Michael Weinberg, and Mr. Christian Ribeiro.

22             THE COURT:  All right.  Good morning to you all.

23   Anyone else from the Debtors?  All right.

24             Next up, the Official Committee of Unsecured

25   Creditors.

Page 9

1          MR. SHORE:  Good morning, Your Honor.  Chris Shore

2     from White & Case, proposed counsel to the Official

3     Committee.  I am here today with my partners, Greg Pesce,

4     Phil Abelson, and Colin West.

5          THE COURT:  All right.  Good morning.  And on

6     behalf of the Ad Hoc Group of Creditors.  I know there are

7     two.  So let me get those appearances.

8          MR. ROSEN:  Good morning, Your Honor.  Brian

9     Rosen, Proskauer Rose LLP, on behalf of the Ad Hoc Group of

10    GGC Lenders.

11         THE COURT:  All right.  Go ahead.

12         MR. FIELDER:  Good morning, Your Honor, Ross

13    Fielder of Kirkland & Ellis, on behalf of the Ad Hoc Group.

14         THE COURT:  All right.  Good morning.  And on

15    behalf of Genesis Global Holdco LLC?  All right, maybe those

16    folks don't expect to chime in this morning.

17         The same may be true or may not be true of Gemini

18    Trust Company LLC.

19         MS. VANLARE:  Your Honor, apologies.  Just on

20    that, Genesis Holdco is one of the (indiscernible).

21         THE COURT:  Oh, all right.  All right.  Well, let

22    me ask if the parent company, who is a non-debtor, wants to

23    make an appearance or not.

24         MR. SAFERSTEIN:  Good morning, Your Honor.

25    Jeffrey Saferstein from Weil Gotshal & Manges on behalf of

Page 10

1    Digital Currency Group.

2           THE COURT:  Thank you very much.  All right.  And

3    on behalf of the United States Trustee's Office.

4           MR. ZIPES:  Good morning, Your Honor.  Greg Zipes

5    with the U.S. Trustee's Office.

6           THE COURT:  All right.  Thank you very much.  And

7    at this point I'll throw it open for any other appearances

8    of any other party that expects that they might be heard

9    this morning.

10          MR. MARGOLIN:  Good morning, Your Honor.  Going

11   back to Gemini, Jeffrey Margolin, Hughes Hubbard & Reed on

12   behalf of Gemini, along with my colleague, Anson

13   Frelinghuysen.

14          THE COURT:  All right.  Good morning.  Anyone

15   else?  All right.

16          Ms. Vanlare, thank you for your assist there in

17   getting this squared away properly.  And with that, I will

18   turn the virtual podium over to Debtor's counsel to walk us

19   through the status and the agenda.

20          MS. VANLARE:  Thank you, Your Honor.  Can you hear

21   me okay?

22          THE COURT:  I can hear you just fine.

23          MS. VANLARE:  Perfect.  Thank you so much.

24          So, Your Honor, I am pleased to report that we

25   have an uncontested hearing before you this morning.  We

Page 11

1  have received comments from a number of parties, most

2  notably of course the Committee of Unsecured Creditors and

3  the U.S. Trustee's Office.  We've been able to resolve all

4  comments.  We've also gotten comments from certain other

5  parties in interest.

6          We did file the proposed revised orders yesterday

7  afternoon, all but the cash management order.  That one we

8  filed separately late last night after reaching agreement on

9  that order with the Committee of Unsecured Creditors.

10          So, Your Honor, I would propose we go through the

11  agenda.  Of course we're happy to answer any questions on

12  any of the motions.  We do have all the declarants available

13  as well should anyone have questions.

14          And with that, I guess I will make one additional

15  note, which is that we did adjourn certain motions that were

16  originally scheduled for today, and the agenda indicates

17  that in particular the consolidated creditor's list motion

18  and the redaction motion or the sealing motion, both of

19  those have been adjourned to March 30th.  And we've been in

20  discussions with that U.S. Trustee in connection with the

21  redaction issues, which of course we've previewed with Your

22  Honor as well during our first day hearing.  We're

23  continuing those discussions.  We anticipate the Committee

24  will likely have some views on those topics.  And so what we

25  are proposing -- and again, we've discussed this with the

Page 12

1   Office of the U.S. Trustee -- is to adjourn those issues to

2   that hearing.

3          And I'll note that this may mean that we will need

4   to file additional or unredacted exhibits to some of the

5   retention applications depending on the outcome of the

6   redaction motions to be heard on March 30th.  So I did want

7   to make that clear.

8          And with that, Your Honor, I would propose that we

9   go through the agenda in a slightly modified order, but we

10  will go through all of the items.

11         So with that, I will pass the virtual podium to my

12  colleague, Ms. Kim.

13         THE COURT:  All right.  And let me just for

14  purposes of transparency on the record for those who may not

15  have the most recent copy of the agenda, the consolidated

16  creditor motion and the sealing motion are pushed off to

17  March 30th.  We also have a hearing scheduled for March

18  15th.  And I understand that there are some things that had

19  been adjourned to that hearing date as well.  So it's

20  probably worth just stating that on the record for purposes

21  of disseminating information if you would be so kind.

22         MS. VANLARE:  Of course, Your Honor.  Yes.  And

23  apologies.  I was going to do that later, but perhaps now is

24  probably to make sure that everyone is aware.

25         Yes, there is going to be another hearing on March

Page 13

```
 1    15th.  We have modified the cash management order to be a

 2    second interim order that we're going to ask for Your

 3    Honor's approval today, and we've adjourned the hearing on

 4    the final order on the cash management motion to March 15th.

 5    We have also adjourned the (indiscernible) for Moelis &

 6    Company.  That's following a request by the Committee of

 7    Unsecured Creditors.  So that too right now has been

 8    adjourned to the March 15th hearing.

 9              THE COURT:  All right.  Thank you very much.  And

10    just for purposes of being on the same page, I do have the

11    binder of all the revised orders and the blacklines, thank

12    you very much, that were all teed up except for the cash

13    management, which is now as you say proposed to be a second

14    interim.  That was filed on the docket at Docket Number 94.

15    And I have that as well.  I haven't gotten a chance to take

16    a look at that, at the blackline version to see all the

17    changes.  And my last note on that is you all sent along an

18    update last evening about where you were and all that.  And

19    I very much appreciate the heads up on that.  So thank you

20    very much for the courtesy.

21              And with that, I'll turn the party back over to

22    you.

23              MS. VANLARE:  Thank you, Your Honor.

24              MR. MINOTT:  Good morning, Your Honor.  I'll

25    actually start with the agenda.  For the record, Richard
```

Page 14

1    Minott of Cleary Gottlieb, proposed counsel to the Debtors.

2           Your Honor, I'll start with the Debtor's motion

3    seeking authorization to pay certain taxes and fees, which

4    was originally filed at Docket Number 9 and is at Tab 1 of

5    Your Honor's binder.

6           Your Honor, following entry of the interim order,

7    we received informal comments from the Committee and other

8    parties in interest, and those have all been incorporated in

9    the revised proposed order which was filed under a

10   certificate of no objection at Docket Number 92.

11          Your Honor, I'm happy to walk through the redline

12   if it would be helpful to the Court or otherwise discuss the

13   substance of the relief sought, which has not changed since

14   the first-day hearing.

15          THE COURT:  All right.  I have the redlines.  I've

16   taken a look at them.  They all make sense to me.  I think

17   the only one that might be worthy of having you comment is I

18   see that there is a paragraph that snuck its way into all

19   these orders for purposes of explaining that nothing here

20   constitutes a certain kind of finding under federal

21   securities law.  Perhaps you want to just briefly address

22   that paragraph.

23          MR. MINOTT:  Sure, Your Honor.  We received that

24   comment from the SEC to include that language in all orders

25   that may pertain to any crypto-related findings.  So it's

1    just a reservation of rights from the SEC.  There is -- I

2    think it's more of an avoidance of doubt than anything else

3    at this point, Your Honor.

4              THE COURT:  Yeah.  I think that that's right.  But

5    I thought it would be helpful to have that context for

6    people who might not quite know why it's in there.

7              All right, somebody has an open mic.  And again,

8    unless you're speaking in court, you need to mute your mic.

9    And we all know the potential dangers of an open mic moment.

10   So please make sure to do that.

11             And the paragraph here for this particular order

12   is Paragraph 8.  It says nothing here in connection with

13   this motion order, final order, constitutes a finding under

14   federal securities laws to whether crypto tokens or

15   transactions involving from tokens of securities.

16             And so with that, I didn't see anything else that

17   seemed to warrant separate comment, but Mr. Minott, do you

18   have anything else you wanted to address in connection with

19   the revised order?

20             MR. MINOTT:  Nothing unless you have any

21   questions, Your Honor.  Really this is exactly the same as

22   we discussed on the first day motion where the Debtors would

23   like to pay an aggregate amount up to --

24             THE COURT:  All right.  Someone needs to close

25   their microphone.  And I'm going to ask somebody here in

Page 16

1    court to assist in having that happen.  So obviously we're

2    happy to have participation.  This is a public courtroom,

3    albeit that looks somewhat unusual in what it looks like

4    these days.  I look forward to the days when we're

5    completely fully in-person for things like this where

6    possible.  But just as you wouldn't speak out in open court

7    in person, you should not speak out in open court unless

8    it's your turn on Zoom of the telephone.

9            All right.  Thank you, Mr. Minott.  Let me ask if

10   there's anybody who wishes to be heard on the request for

11   entry of a final order authorizing the payment of certain

12   taxes and fees.

13           All right, hearing nothing, I am happy to grant

14   the requested relief as reflected in the revised final order

15   authorizing the payment of certain taxes and fees.

16           And so we can move on to the next matter, Mr.

17   Minott.

18           MR. MINOTT:  Thank you, Your Honor.  Next is the

19   Debtor's motion to pay certain critical vendors, which was

20   originally filed at Docket Number 11 and is at Tab 3 of Your

21   Honor's binder.

22           Your Honor, similar to the taxes and fees interim

23   order, we received informal comments from the Committee and

24   other parties in interest following entry of the interim

25   critical vendors order.  These comments too have been

Page 17

1   reflected in the revised proposed order filed under

2   certificate of no objection at Docket Number 92.  Again,

3   happy to walk through the redline if we need help for Your

4   Honor.  But the relief here has remained the same since the

5   first day hearing.

6            THE COURT:  All right.  Thank you very much.  Let

7   me ask if the Official Committee wants to weigh in.  I know

8   this is something that the Official Committee often does

9   wish to be heard on.  Mr. Shore?

10           MR. SHORE:  No, we're fine, Your Honor.  Thank

11   you.

12           THE COURT:  All right.  Thank you very much.

13   Anyone else who wishes to be heard in connection with the

14   request for a final order on critical vendors?  All right.

15           Having looked at the revisions and the very

16   helpful blackline, I'm happy to grant this request for a

17   final order for substantially the same reasons as I granted

18   the request for an interim order given the record here and

19   the importance of these particular payments.

20           So next up.

21           MR. MINOTT:  Thank you, Your Honor.  Last on my

22   list is the Debtor's ordinary course professionals motion,

23   which is filed at Docket Number 65 and is at Tab 6 of Your

24   Honor's binder.

25           Your Honor, pursuant to Section 327 of the

Page 18

1    Bankruptcy Code, the Debtors seek to establish certain

2    procedures for the retention and compensation of certain

3    professionals that the Debtors employ in the ordinary course

4    of business without the need to file separate retention

5    applications for these professionals and further seek

6    authority to compensate these professionals without

7    requiring individual fee applications.

8            Your Honor, the ordinary course professionals have

9    extensive background, knowledge, and expertise with the

10   debtors and their business operations and the Debtors

11   believe the employment and compensation of these

12   professionals is in the best interest of the Debtor's

13   estates, their creditors, and other parties in interest.

14           Under the procedures, the Debtors will require

15   that each ordinary course professional submit a declaration

16   of disinterestedness and complete a retention questionnaire

17   which will be filed to the docket by the Debtors and served

18   on the U.S. Trustee, the Committee, and any other noticed

19   parties in these cases.

20           Overall, the Debtors estimate the payments will

21   not exceed $100,000 per month per ordinary course

22   professionals and $300,000 for the duration of the cases.

23           Unless Your Honor has any questions, the Debtors

24   respectfully request that Your Honor approve the motion and

25   enter an order substantiating the form of the proposed

1    revised order filed under certificate of no objection at

2    Docket Number 92.

3              THE COURT:  All right.  Thank you very much.

4              Anything from the Official Committee as to this

5    request?

6              MR. SHORE:  No, Your Honor.

7              THE COURT:  All right, thank you.  Anything from

8    any other party in connection with the request for an order

9    regarding the retention, compensation of professionals

10   utilized in the ordinary course of business?  All right.

11             Hearing nothing, I am happy to approve this

12   request.  It's consistent with the kind of relief granted in

13   other cases, that is to allow the professionals who are

14   necessary for the Debtor's ongoing operations and who are

15   not bankruptcy-specific, or as they say, ordinary course

16   professionals to be utilized and it's an efficient way do

17   that.  And again, it's consistent with how this issue is

18   handled in large cases.  So the request is granted.

19             All right, Mr. Minott, I guess you're passing the

20   podium.  Thank you very much.

21             MR. MINOTT:  Thank you, Your Honor.

22             THE COURT:  Next up.

23             MS. KIM:  Good morning, Your Honor.  Hoori Kim,

24   Cleary Gottlieb, proposed counsel for the Debtors.  Can you

25   hear me well?

Page 20

1              THE COURT:  Yes.  I can hear you just fine.  Thank

2      you.

3              MS. KIM:  Great.  Next up on the agenda we are

4      going to go to Agenda Number 3, Binder 4.  It's the wages

5      motion and the final order.

6              We received no formal objections to the proposed

7      final order for the wages motion.  The revised final order,

8      which was filed yesterday with the certificate of no

9      objection, has been reviewed by and reflects comments from

10     the Office of the U.S. Trustee, the Unsecured Creditors'

11     Committee, and the Securities and Exchange Commission as

12     well, which includes that language that we discussed earlier

13     about the representation regarding the securities.

14             We're happy to go through the changes to the order

15     if that would be helpful.  If not, we're happy to answer any

16     questions, Your Honor.

17             THE COURT:  All right.  I just had one comment.  I

18     see that in the revised version, Paragraph 2, at the very

19     end there's language added -- well, let me back up.  The

20     context obviously is right that you grant wages up to the

21     statutory cap, the idea being that those wages are priority

22     and would have to be paid anyway first in line because of

23     the nature of them and that there's a cap on that in the

24     Bankruptcy Code itself.  And so that's what these orders

25     always say, which makes sense.  And that anything beyond

Page 21

1    that, there's a specific request for.  So in this Paragraph

2    2, it says provided the Debtor shall obtain the Committee's

3    prior written consent, email shall suffice, prior to paying

4    or honoring any prepetition wages or benefits that exceed

5    the statutory cap set forth in Sections 507(a)(4) and (a)(5)

6    of the Bankruptcy Code.  And I think I flag that just to the

7    extent that it might imply that that could be done without

8    court approval, because obviously those are the wages that

9    are above the statutory cap.  We might be talking about an

10   entirely hypothetical issue.  I don't know.  So I just

11   wanted to flag that, that that's just obviously subject to

12   further order -- would be required subject to a further

13   order of the Court upon request.

14            MS. KIM:  Understood, Your Honor.  We can

15   incorporate that language in that paragraph as well when we

16   submit the proposed order.

17            THE COURT:  All right.  That's great.  And I'm

18   sure you can say it more artfully than I just said it, but I

19   think you get the gist.

20            MR. ZIPES:  Greg Zipes with the U.S. Trustee's

21   Office.  It is my understanding that there are few if any

22   payments that would be made above the cap.

23            THE COURT:  Yeah.  And that's often the case.  So

24   it's a more hypothetical issue oftentimes.  But just in an

25   abundance of caution.  So thank you, Mr. Zipes.

Page 22

1              All right.  Let me ask if there's anything from

2    the Committee in connection with this proposed request.

3              MR. SHORE:  No, Your Honor.

4              THE COURT:  All right.  Thank you, Mr. Shore.

5              Anything from any other party in connection with

6    this request for a final order on wages and related relief?

7              All right.  Hearing nothing, I am happy to approve

8    the proposed final order on wages for substantially the same

9    reasons as it was approved on an interim basis as consistent

10   with applicable law and appropriate under the facts and

11   circumstances of the case.

12             So, Ms. Kim, next up?

13             MS. KIM:  Thank you, Your Honor.  And we would

14   just like to note that we'll incorporate that language about

15   court approval.  And at this time, we're actually not really

16   expecting any payments above the statutory cap, but if there

17   are any, we will of course obtain the consent of the

18   Committee and the Court.

19             THE COURT:  All right.  And that's fine.  And

20   obviously I'm not saying that such payments might not be

21   appropriate.  We would just deal with them as the need

22   arises.

23             MS. KIM:  Understood, Your Honor.

24             Next on the agenda is Agenda Item 6, which is the

25   application to employ Clearly Gottlieb Steen & Hamilton as

Page 23

1    counsel for the Debtors.  It's also in Binder 7, Binder Tab

2    7.

3              We believe that the application is uncontested,

4    Your Honor.  We received no formal objections.  The

5    application has been reviewed by and incorporates comments

6    from the U.S. Trustee and the Unsecured Creditors Committee.

7    Separately, as Ms. Vanlare addressed earlier, we would like

8    to note that the issues around the confidentiality and

9    disclosure of the names of certain parties in interest are

10   still pending per the Debtor's sealing motion filed at ECF

11   67, which will be heard on March 30th.

12             We believe that this does not affect the entry of

13   the order in connection with the application being presented

14   today and the U.S. Trustee's office agrees with us.  But we

15   wanted to make a note of this at the hearing.

16             THE COURT:  All right.

17             MS. KIM:  Unless you have any questions, Your

18   Honor, we ask that you would approve the application and

19   enter the proposed order.

20             THE COURT:  All right.  Thank you very much.

21             Mr. Zipes, anything from the United States

22   Trustee's Office on this application?

23             MR. ZIPES:  No, Your Honor.  We appreciate the

24   representation, and that's accurate.

25             THE COURT:  All right.  Thank you very much.

Page 24

```
 1     Anything from any other party in connection with this

 2     application?

 3             All right, hearing nothing, I am happy to approve

 4     the request to employ and retain Cleary Gottlieb Steen &

 5     Hamilton LLP as counsel for the Debtors and debtors in

 6     possession nunc pro tunc to the petition date as entirely

 7     appropriate.  And having looked at the order, I find the

 8     order to be appropriate as well.  And so that's granted

 9     obviously with the understanding and already on the record

10     that any sealing issues will be dealt with separately.

11             I did look once again at Judge Garrity's opinion

12     dealing with some of these issues in advance of today.  It

13     sounds like we're not there yet to have a discussion.  So I

14     won't wade into those waters in the interest of not

15     upsetting the apple cart in terms of any discussions.  But

16     I'll just mention it now just to the extent that if I can

17     ever be of any assistance before people start -- if people

18     might otherwise file papers, feel free to reach out to

19     chambers and we can have a discussion.  Obviously you all

20     have an interest in handling issues as efficiently as

21     possible.

22             So with that, Ms. Kim, next up.

23             MS. KIM:  Great.  We appreciate that, Your Honor.

24     Thank you so much.  And I will pass the virtual podium to my

25     colleague, Mr. Ribeiro.
```

```
 1              THE COURT:  All right.  Thank you, Ms. Kim.

 2    Counsel?  You're on mute.  The joys of the COVID world

 3    strike again.

 4              MR. RIBEIRO:  That should work.  Can you hear me

 5    now?

 6              THE COURT:  Yes.  I can hear you now.

 7              MR. RIBEIRO:  Thank you, Your Honor.  Christian

 8    Ribeiro, Clearly Gottlieb, proposed counsel to the Debtors.

 9    I will be presenting today the Debtor's motion to authorize

10    procedures for interim compensation and reimbursement of

11    expenses for professionals.  And that's at ECF 64.  It

12    should be Binder Tab 5.

13              The Debtors pursuant to this motion

14    (indiscernible) order attached as Exhibit A to the motion

15    pursuant to Sections 105 and 330 of the Bankruptcy Code

16    establishing procedures for the monthly allowance and

17    payment of compensation and reimbursement of expenses and

18    professionals who have been -- whose retention was

19    authorized pursuant to -- by the Court today.

20              In short, the procedures provide for the filing of

21    a monthly statement showing the expenses and fees incurred

22    and will also provide procedures for the filing of interim

23    fee applications at four-month intervals throughout the

24    case.

25              The interim compensation motion is unopposed.  It
```

Page 26

1    incorporates comments received from the U.S. Trustee's

2    Office as well as the UCC.  And we filed the certificate of

3    no objection.  The revised order is attached as Exhibit D to

4    that notice.  Unless Your Honor has any questions, we submit

5    that the (indiscernible).

6              THE COURT:  All right.  Thank you very much.  Any

7    party wish to heard in connection with this request?  All

8    right.  Hearing no response, I am happy to approve the

9    request for an order establishing procedures for interim

10   compensation reimbursement of expenses of professionals.

11   The proposed order here -- and indeed this request is

12   consistent with how these sort of matters are dealt with in

13   large cases, and the order is entirely appropriate.  So that

14   is approved.

15             Next up.

16             MR. RIBEIRO:  Thank you, Your Honor.  Next is the

17   application to employe Kroll Restructuring Administration as

18   administrative advisor to the Debtors.  That's at ECF 72 and

19   it's Binder Tab 9.

20             At the first day hearing, we sought an order

21   retaining Kroll as claims and noticing agent pursuant to

22   Section 156(c) of the Bankruptcy Code.  This motion seeks

23   entry of an order authorizing their retention in pursuit of

24   duties inside the scope of their duty as an administrative

25   advisor.  We seek entry of an order attached as Exhibit A to

Page 27

1    the motion.  This motion is also unopposed.  We filed the

2    certificate of no objection.  It's attached as Exhibit H to

3    the notice.

4            Unless Your Honor has any questions, we seek entry

5    of the order attached as Exhibit A to the motion.

6            THE COURT:  All right.  Thank you very much.  I do

7    not have any questions.  Any party wish to be heard in

8    connection with this request for an order authorizing the

9    employment and retention of Kroll Restructuring

10   Administration LLC?

11           MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

12   Trustee's Office.  My office has no objection to the entry

13   of the order.  Again, we would note that we're in

14   discussions with Kroll on various issues.  Kroll is a part

15   of a bigger entity and is involved with other crypto cases,

16   among other things.  So we're in discussions about

17   disclosure issues and other issues.  But for the purposes of

18   this case right now, we have no objection to the order being

19   entered.

20           THE COURT:  All right.  Anyone else wish to be

21   heard?  All right.

22           I'm happy to approve the request for an order

23   authorizing the retention or its retention for purposes of

24   this case as administrative advisor nunc pro tunc to the

25   petition date.  Obviously this kind of service is important

Page 28

1   in a large case like this and consistent with the usual way

2   these matters are handled.  And the order that's proposed is

3   entirely appropriate.  So that request is granted.  Next up?

4           MR. RIBEIRO:  Thank you, Your Honor.  Last is the

5   application to employ Alvarez & Marsal North America as

6   financial advisors to the Debtor.  That's at ECF 73 and is

7   Binder Tab 10.  We filed this motion to seek entry of an

8   order attached as Exhibit C to the motion authorizing the

9   employment and retention of A&M as financial advisors to the

10  debtor.  They were retained initially on November 11th and

11  they've been providing assistance to the Debtor with respect

12  to the management of the overall restructuring process,

13  development of ongoing business and financial plans, and

14  supporting restructuring negotiations among the Debtors and

15  their parties of interest.

16          The application is unopposed.  We filed the

17  certificate of no objection yesterday.  The revised proposed

18  order is attached as Exhibit I to the certificate and

19  incorporates comments received by the UCC and the U.S.

20  Trustee.

21          Unless Your Honor has any questions, we submit

22  that entry of the proposed order is appropriate here.

23          THE COURT:  All right.  Thank you very much.  Any

24  party wish to be heard in connection with this request?

25          All right.  Hearing no responses, I'm happy to

Page 29

1    grant the request as appropriate under the facts and

2    circumstances of the case and applicable law.  Obviously the

3    services of a financial advisor are appropriate in a case

4    like this and are consistent with how large cases operate.

5    And so I'm happy to approve this request and find the order

6    to be entirely appropriate.  So that is granted.

7              Next up?

8              MR. RIBEIRO:  Thank you, Your Honor.  I will be

9    turning the virtual podium over to my colleague, Michael

10   Weinberg.

11             THE COURT:  All right.

12             MR. WEINBERG:  Good morning, Your Honor.  For the

13   record, Michael Weinberg, Clearly Gottlieb Steen & Hamilton,

14   proposed counsel for the Debtors.

15             THE COURT:  All right.  Good to see you.

16             MR. WEINBERG:  Good to see you.  I'll be

17   presenting two more of the retention applications.  The

18   first of these is the retention application for Morris &

19   Cohen as the Debtor's special counsel in these Chapter 11

20   cases, which application was filed at Docket Number 71.

21             In support of the application, we have on the line

22   Jason Gottlieb and Paul Aronzon, who submitted declarations

23   attached as Exhibits A and B to the application.  We filed

24   the revised proposed order at Docket 92 that reflects minor

25   comments from the Creditors' Committee.  The application is

Page 30

1    otherwise unopposed.  And unless Your Honor has any

2    questions, we ask that you approve the application.

3              THE COURT:  All right.  Thank you very much.  Any

4    party wish to be heard in connection with this application?

5              Hearing no response, I am happy to grant the

6    application as appropriate under the facts and circumstances

7    of the case and applicable law and again consistent with the

8    kind of services that are appropriate and necessary in a

9    case of this size.  Thank you very much.

10             MR. WEINBERG:  Thank you, Your Honor.  And then

11   the final retention application scheduled for today's

12   hearing is the application of Kobre & Kim as special

13   litigation counsel.  And that application was filed at

14   Docket 70.  And in support of that application, we have on

15   the line Danielle Rose and Paul Aronzon, again, whose

16   declarations were attached to the application as Exhibits B

17   and C.

18             As with the other retention applications, we filed

19   a revised proposed order at Docket 92.  And that again

20   reflects minor comments we received from the Creditors

21   Committee.  No objection to the application were filed, and

22   we believe the application is uncontested.

23             Once again, unless Your Honor has any questions,

24   we ask that you approve the Kobre & Kim application.

25             THE COURT:  All right.  Thank you very much.  Any

1   party wish to be heard as to this request?  Again, hearing

2   no response, I'm happy to approve the request as appropriate

3   under the facts and circumstances of the case, and the order

4   is appropriate, so I will enter it once we are concluded

5   here today.  Thank you very much.

6           MR. WEINBERG:  Thank you, Your Honor.  With that,

7   I will cede the virtual podium to my colleague, Ms. Vanlare.

8           MS. VANLARE:  Your Honor, the last on today's

9   agenda is the cash management motion.  As I mentioned

10   earlier in the hearing, we are seeking entry of a second

11   interim cash management order.  We did receive an objection

12   from the Committee that we have resolved.  And as I

13   mentioned earlier, we did file a revised proposed order late

14   yesterday reflecting changes.

15           I am happy to walk through the blackline and

16   highlight some of the changes that we've made and otherwise

17   answer any questions Your Honor may have.

18           THE COURT:  All right.  I think for this

19   particular order it does make sense to walk through the

20   significant changes because it addresses the kind of things

21   that we were discussing at the first day hearing.  So I'll

22   turn it back to you to do exactly that.  Thank you.

23           MS. VANLARE:  Very happy to do that, Your Honor.

24   So I am going to be referencing the blackline that was

25   attached to the proposed order that we filed last night.

Page 32

1      That's Docket 94.  And I'll highlight kind of the key

2      changes that we've made and of course am happy to answer

3      questions.

4              First, as we mentioned earlier in the hearing,

5      this interim order is meant to take us through to the next

6      hearing in this case, which has been scheduled for March

7      15th at 2:00 p.m., at which point we anticipate seeking a

8      final order on the cash management motion.

9              The first set of substantive issues addressed is

10     in Paragraph 3.  And I'll highlight some of these.

11             First, Your Honor, we have tweaked the language

12     here regarding the continuation of intercompany

13     transactions, and in particular transactions among debtors

14     and non-debtors.  Here, the order provides that the Debtors

15     are permitted to continue to perform intercompany

16     transactions we note as expressly provided for herein.  And

17     I'll just preview later on in the blackline we have agreed

18     to limit the intercompany transactions during this interim

19     period to a cap of $750,000.  That does not include the spot

20     trading activities for gap that we discussed previously.

21     But other intercompany transactions are subject to that cap

22     between now and March 15th.

23             Paragraph 3 also has some tweaks to the language

24     relating to investment practices.  As before, here the

25     Debtors are permitted to continue to deposit and invest

Page 33

1   funds in accordance with the Debtor's investment practices.

2   We've also added that they may do so, or to invest in U.S.

3   treasuries notwithstanding Section 345(b) of the Bankruptcy

4   Code.  We've added language here, the provided language that

5   the Debtors shall consult with the Committee with respect to

6   any investments or staking of funds other than the U.S.

7   Treasury bonds including cryptocurrency collateral.

8          We have also added here, as is customary, certain

9   reporting obligations, additional reporting obligations for

10  the Debtor.  In particular here in Paragraph 3, we provide

11  that the Debtors will provide to the Committee a 13-week

12  budget setting forth the Debtor's anticipated disbursements

13  and expenditures as well as agreeing to provide a cash

14  variance report reflecting variances to that budget on a

15  weekly basis to the Committee.  We have also agreed to

16  provide a reasonable access to current records of

17  intercompany balances to the advisors for the Committee.

18         We have added -- I am now moving to Paragraph 4 of

19  the blackline.  We've added language again incorporating

20  comments received that nothing in this order shall

21  constitute a determination of whether any property is

22  property of the estate, nor is this a determination of the

23  validity of any intercompany claims.  All rights are

24  reserved.

25         Paragraph 5, this is what I alluded to earlier in

Page 34

1    my discussion of Paragraph 3 where we make clear that the

2    Debtors are permitted to continue to perform intercompany

3    transactions.  However, they are subject to that $750,000

4    cap that I mentioned earlier unless the Debtors receive

5    prior written consent from the Committee or its counsel.

6            The next set of changes is to the new paragraph 7.

7    It has to do with cryptocurrency assets and their

8    maintenance as well as certain reporting obligations.  So

9    here some of the changes make clear that the Debtors are

10   authorized to continue to maintain and manage their

11   cryptocurrency assets in the course of ongoing spot trading

12   as well as to ensure that the cryptocurrency assets are

13   safely stored, consistent with historical practices.

14           However, we have agreed to provide to the advisors

15   to the Committee certain summary reports on a weekly basis

16   setting forth both cash and cryptocurrency holdings.  And

17   once a month we will be filing that same report as part of

18   our monthly operating report so that we have that

19   information available for all parties in interest.  We have

20   also agreed to provide a detailed report of all of the

21   holdings to the Committee as per their request.

22           There is also language here making clear that the

23   Debtors are not permitted to convert cryptocurrency from one

24   type to another, to move any cryptocurrencies or digital

25   assets, to stake or invest any cryptocurrency assets, or to

Page 35

1    liquidate or convert cryptocurrencies into cash without

2    obtaining consent of the Committee or pursuant to a further

3    order from this Court after notice and hearing.  And so this

4    paragraph makes clear that, again, other than the spot

5    trading at gap, which we previously discussed, the Debtors

6    are not permitted to engage in intercompany transactions

7    involving cryptocurrency assets.

8         The next change, Your Honor, is at Paragraph 9.

9    We've extended the waiver (indiscernible) until March 29th,

10   consistent with our discussions with the Office of the U.S.

11   Trustee.  We are continuing to have discussions and are

12   trying to resolve issues relating to our compliance with

13   Section 345 and are appreciative of the work that has been

14   done by the Office of the U.S. Trustee to help arrive at a

15   solution that makes sense for these cases.

16        The next change, Your Honor, is at Paragraph 14.

17   We've previously agreed to provide notice of opening or

18   closing any bank accounts.  We have clarified that we must

19   do so within 15 days and we also need to give notice of any

20   material changes to the cash management system and

21   procedures to the Office of the U.S. Trustee and to advisors

22   to the Committee.

23        Paragraph 15, I believe that's just a minor tweak.

24        THE COURT:  Right.

25        MS. VANLARE:  Non-substantive.  Paragraph 17.

Page 36

```
 1    This language was added.  Aging, this is more of a

 2    reservation of rights type language that we've added in

 3    response to comments that we received that this order is not

 4    intended to constitute the admission or waiver or promise or

 5    requirement to pay any claims or any sort of admission or

 6    approval of contracts or, again, waiver of any sort of

 7    limitations of the Debtors, the committees, or any other

 8    parties (indiscernible) respective rights.  I think this

 9    language is customary and is meant to clarify that, again,

10    the order is limited to the relief that's described and is

11    not intended to do any of the things described in

12    (indiscernible).

13              Paragraph 18 has some of the similar language and

14    it's been expanded to include the Committee and other

15    parties in interest.  Paragraph 19, this language, as with

16    the other orders that we've previously described, was added

17    in response to a comment received by the SEC.  And again, is

18    meant to make clear that this order is not intended to make

19    any findings relating to federal securities laws or whether

20    or not they constitute securities and to make clear that the

21    rights of the SEC are reserved along with the rights of the

22    Committee and the parties in interest.

23              THE COURT:  All right.  Thank you very much.

24    Anything else, Ms. Vanlare, in connection with the revised

25    proposed second interim order?
```

Page 37

1           MS. VANLARE:  Nothing further, Your Honor.  With

2     that, we ask that Your Honor enter the order --

3           THE COURT:  You're breaking up a little bit, Ms.

4     Vanlare, but I took your -- I took your next comment to be

5     unless I had anything else, then we're ready to circle the

6     virtual room, which I will first turn to the Committee.  Mr.

7     Shore, anything from the Committee in connection with this

8     requested relief?

9           MR. SHORE:  Yeah.  Very briefly, Your Honor.

10    Obviously it's not uncommon to have a subsidiary of a parent

11    filed for Chapter 11 and not bring in all the sister

12    corporations.  And there is an issue that arises with

13    respect to ongoing post-petition activity between the

14    businesses.  And typically we come to a commercial

15    resolution as to how those debtors and non-debtors are going

16    to interact during the case and protect the debtors who are

17    under the jurisdiction of the court.

18           Given the timing of everything going on, the

19    Committee just wasn't able to get sufficient information to

20    even understand the ways in which the sister corporations

21    interacted with the Debtors.  And Ms. Vanlare laid it out

22    accurately.  What we are seeking now is a whole slate of

23    information that will allow us more transparency into those

24    relationships and if acceptable come to some sort of

25    arrangement that allows that intercompany activity to

Page 38

1    continue.

2            If it's acceptable to the Court at the end of the

3    hearing, I would like to talk about the Committee's views

4    more generally since we weren't here on the first days.  But

5    Ms. Vanlare has accurately laid out the deal we have cut

6    with respect to this.  Hopefully we get the information

7    quickly.  Hopefully that information validates the business

8    relationship and the fairness to the Debtors, and hopefully

9    we can come to a consensual resolution.  We just weren't

10   able to given the data set we had at the time.

11           THE COURT:  All right.  Thank you very much.  That

12   all makes a lot of sense.

13           Any other party that wishes to be heard on this

14   particular request for entry of a second interim order?

15           MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

16   Trustee's Office.  And we have no objection to the entry of

17   this interim order, and we would just echo some of what the

18   Committee just stated in terms of getting information.  My

19   office has also been requesting this information, and we do

20   appreciate the Debtor's cooperation in that regard.

21           THE COURT:  All right.  Thank you very much.

22   Anyone else who wishes to be heard?

23           MS. VANLARE:  Your Honor, if I may.

24           THE COURT:  Go ahead, Ms. Vanlare.

25           MS. VANLARE:  Thank you very much, Your Honor.  I

1     just wanted to add a couple of points in response to and to

2     add to what Mr. Shore said.

3            First, in terms of the exchange of information, I

4     did want to share with the Court that we have been and are

5     very much committed to continuing to share and provide

6     information to the Committee.  We've provided access to a

7     data room containing substantial numbers of documents and

8     will continue to share information with the Committee to

9     facilitate a collaborative process going forward.

10            And secondly, just in terms of the transactions

11     between the debtors and the certain of their non-debtor

12     affiliates such as the global trading and particular just in

13     terms of the overall context under the terms sheet that we

14     had filed reflecting a proposed terms for restructuring for

15     these cases.  We do think it's important to remember that

16     the unsecured creditors will be monetizing, either through a

17     sale or through ownership, subsidiaries of Genesis Global

18     Holdco who are non-debtors.  So it's all kind of connected.

19     And as I mentioned, we do expect to continue working

20     collaboratively with the Committee and other parties in

21     interest to bring these cases to a resolution.

22            THE COURT:  All right.  Yeah, I took Mr. Shore's

23     comment to basically be that he ran out of time to get to a

24     more permanent-looking solution.  And that's not uncommon.

25     And I look forward to seeing the results of your continued

Page 40

1   collaboration and cooperation.  And that's the kind of thing

2   that makes these cases work.  So, great.  But I appreciate

3   everyone's comments on that.  All right.

4          With that, I do appreciate the explanation, Ms.

5   Vanlare, as well as the context of the Committee in

6   addressing the kind of issues that we're talking about in

7   the first day hearing and that sort of are inevitable, the

8   kinds of things that we have to work through in cases in

9   their early stages.  So that's all been helpful and

10  informative to me as well.

11         So with all that said, let me ask if there's any

12  other party that wishes to be heard on this second interim

13  order.  All right.

14         I am happy to grant the request to enter the

15  revised proposed second interim order dealing with cash

16  management systems and all the related relief as being

17  appropriate under the facts and circumstances of the case

18  and applicable law.  Again, I appreciate everybody's hard

19  work and communication and cooperation to move these cases

20  forward on these kinds of issues which are obviously crucial

21  to the  Debtor continuing to operate appropriately as well

22  as to, as Ms. Vanlare notes, sort of the endgame for these

23  cases and where people see them going.  So this is granted.

24         And with that, Ms. Vanlare, what else do we need

25  to discuss here this morning?

1          MS. VANLARE:  We don't have anything further, Your

2     Honor.  Thank you very much.

3          THE COURT:  All right.  I know Mr. Shore had

4     wanted to have an opportunity as the Committee to address

5     the Court.  So, Mr. Shore, the podium is yours.

6          MR. SHORE:  Thank you very much, Your Honor.

7     Again, Chris Shore from White & Case as proposed counsel to

8     the Official Committee.  And I welcome Your Honor allowing

9     to me to make the kind of second day presentation from a

10    committee to give you a sense of how we're looking at the

11    case right now and to give you an expectation maybe of where

12    things might be going.

13          As Your Honor can expect, over the last two weeks

14    we have been getting up to speed very quickly along with

15    Houlihan Lokey as proposed banker and BRG as proposed

16    financial advisor to the Committee.

17          And given that, as Ms. Vanlare noted, there is a

18    term sheet on file, we've been in constant dialogue, both

19    within the Committee, with the Debtors, and with our

20    constituency regarding that terms sheet and the path of

21    these cases.  It's still early days, but there's sort of

22    three key themes that seem to be emerging: transparency,

23    velocity, and accountability.

24          With respect to transparency, look, we all

25    understand there's a tension between the nature of digital

1    assets and the goldfish bowl of Chapter 11, particularly

2    with respect to the security of assets and the security of

3    information.  But we really are of the view that the whole

4    case doesn't need to be in the black box that some other

5    crypto cases have existed in.  And that transparency plays

6    out, as Ms. Vanlare noted, first with the Debtor.  It was a

7    little choppy at the beginning.  Information is flowing.

8    There are issues that are going to need to be addressed

9    (indiscernible).

10         From our perspective, there's a direct relation

11   between the amount of transparency and the speed with which

12   the case (indiscernible).

13         In that term sheet, there are also parties who are

14   seeking to compromise their claims with the Debtors.  As far

15   as transparency, we end up having to default to Rule 7026 to

16   get things done in relation --

17         THE COURT:  Hold on a second, Mr. Shore.  You're

18   breaking up a little bit.  I can still follow you and

19   understand you, but I want to make sure that that's the case

20   for everybody else.

21         Ms. Vanlare, can you hear everything Mr. Shore is

22   saying?

23         MS. VANLARE:  I was in a similar boat to Your

24   Honor where I could hear, but it sounded like Mr. Shore was

25   disappearing a bit at the end.

1          THE COURT:  All right.  I'd like to say I know the

2     source of when this happens and why it happens, but I would

3     be lying if I said that because I don't know, speaking of

4     black boxes.

5          So, Mr. Shore, what I would ask is if you continue

6     and if for some reason it becomes a serious problem that I

7     think would affect your ability to get your message out to

8     the wider group, I will wave at you to save your oxygen.

9     But we'll be mindful of it.  And with that, I will turn the

10    podium back over to you.

11         MR. SHORE:  Thank you, Your Honor.  And obviously

12    we're going to be seeing a lot of each other over the coming

13    months, so we don't have to get (indiscernible).  I just

14    wanted to kind of give you (indiscernible) of where we're

15    going.

16         But what I was saying when it seemed like

17    (indiscernible), I mean, there are parties that

18    (indiscernible) claims with the Debtors and --

19         THE COURT:  All right.  I'm going to wave now

20    because I don't -- we are definitely having a transmission

21    issue.  I would like to say it's not the court, but I again

22    don't know.  It's above my pay grade, actually.

23         So give me one second.

24         All right.  So here's what I'm going to do.  Mr.

25    Shore, we're going to give it one more shot.  Maybe the

Page 44

1   second time is the charm.  If for some reason that doesn't

2   work, I will pause the hearing and the Court will log off

3   and log back on with the hope that that's a shorter, more

4   efficient, and less painful remedy than having everybody

5   else have to log off and log back on.

6          And I will say as a preview, I am hoping in the

7   not-too-distant future to have hearings that are essentially

8   hybrid where folks come into court who expect to make

9   presentations, that they're welcome to be here and that

10  other folks are remote.  But we're not there quite today.

11  So hence our little sideshow here.

12         So, Mr. Shore, we're going to give it one more

13  shot.  And if I wave you off, then I will log back on and

14  off.  And I hope we don't get there.  Mr. Shore?

15         MR. SHORE:  And to the extent this may be on my

16  end, why don't I turn off my video with Your Honor's

17  permission and --

18         THE COURT:  Absolutely.  That's a good option.

19  Thank you very much.

20         MR. SHORE:  All right.  Look, I think where I am

21  is with respect to the parties who are seeking to have their

22  claims with the Debtors compromised under the

23  (indiscernible) we're going to have to default to

24  (indiscernible) have a direct impact (indiscernible), which

25  we are (indiscernible).

```
 1              Finally, with respect to --

 2              THE COURT:  Mr. Shore, I don't think it's your

 3      video.  I think it's something beyond that.  So I hate to do

 4      this to everybody, and I beg your indulgence and patience

 5      and good humor.  So we're going to as a court log off and

 6      log back on with the hope that, as we all know, the most

 7      magical cure-all in the technical world is the on and off

 8      button.  Maybe that will help reset whatever bedevils us at

 9      the moment.  It's also an efficient and short way for me to

10      do it rather than everybody else worry about it.

11              So give me probably 90 seconds for us to do that,

12      and we'll take it from there.  So thank you for your

13      patience.

14              All right.  Good afternoon once again.  We're

15      back.  And if for some reason this doesn't work, I'll ask

16      Mr. Shore to actually abandon Zoom and just call in on the

17      telephone number.  We find that that's the option of last

18      resort that seems to always work.

19              But, Mr. Shore, with that I'll turn the podium

20      back over to you, recognizing that this is exactly the

21      context in which you wanted to deliver your comments here

22      this morning, and I appreciate your good humor and patience.

23              So, Mr. Shore?

24              MR. SHORE:  Thank you, Your Honor.  I am actually

25      dialed into the Zoom now too.  So if this audio isn't
```

Page 46

1    working, I can just convert over quickly.  So just wave your

2    arm if I'm not coming through.  Okay?  All right.

3           I think for the third time where I was was, look,

4    there are a number of people under the terms sheet who are

5    seeking to compromise their claims with the Debtors.

6    Perfectly fine.  But the Committee intends to exercise its

7    rights to (indiscernible).  And if we have to rely on Rule

8    7026 to get things done, it's going to slow the process

9    down.

10          Finally, transparency with respect to creditors.

11   One thing we're finding in other crypto (indiscernible) has

12   an appetite for information that goes beyond (indiscernible)

13   disclosure statements.  We've already started some social

14   media processes to get information out to people and look

15   forward to working with the Debtors to make sure that if

16   (indiscernible) want to move quickly and they want

17   (indiscernible).

18          THE COURT:  All right, Mr. Shore, I'm going to ask

19   you to go to the telephone.  I'm getting the gist of what

20   you say, but I don't -- at the risk of slowing things down,

21   I want to make sure that you're well-heard by everyone.

22          MR. SHORE:  Thank you, Your Honor.  Can you hear

23   me now?

24          THE COURT:  Yes.  And just turn off your Zoom so

25   we remove any echo.  And, frankly, I'm nothing much to look

Page 47

1    at personally, so you're not giving up anything.  As long as

2    we can hear you, we're good to go.

3            MR. SHORE:  Very good, Your Honor.

4            So the last piece on transparency that I was

5    talking about is ensuring that the creditor community here,

6    which has an interest as we've seen in other cases beyond

7    just reviewing SOPAs and the disclosure statements to make

8    sure people are getting information, particularly if the

9    idea here is to build creditor consensus around a rapid

10   exit.  To that end, the Committee itself has started some

11   outreach through social media and we look forward to working

12   with the Debtors to see if we can't get them engaged in as

13   well, consistent with the goal of protecting the Debtor's

14   sensitive information.

15           With respect to velocity, we understand what the

16   Debtors want to do and when they want to do it.  But as I

17   said, consistent with the Committee's duties, we intend to

18   form views with respect to the terms sheet.  Our

19   constituency wants it quickly and we're focused, laser-

20   focused really, on the viability of the structure and the

21   economic recovery.  So now the whole team is full steam

22   ahead on plan diligence, particularly determining the

23   appropriate exit structure, investigating claims and

24   determining what has to be settled now to have a viable

25   business going forward and what doesn't, trying to

1  rationalize tax and distribution schemes so that our

2  creditors' all-in recoveries are maximized to the fullest

3  extent possible.  We are getting the message loud and clear.

4  I think the Court is seeing it from correspondence that's

5  hit the docket.  I know the Debtors are getting it.  The

6  creditors want their crypto back and they want it yesterday.

7          At the same time though, it's clear that unsecured

8  creditors are not interested in any deal for, you know a

9  deal's sake.  The plan needs to be held to account.  There

10  have been some published views, really speculation about

11  distributable value in the case.  All of that needs

12  significant diligence into a ton of variables, including the

13  availability of payment-in-kind distributions and

14  dollarization, valuation of (indiscernible) currency, sale

15  of the business, the reorganization of all or parts of the

16  Debtors, sizing of the claim pools, tracing and recovery of

17  prepetition transfers, assessment of the potential

18  settlements on claims that have been disclosed, claims that

19  haven't been disclosed.  There needs to be a real account.

20  We're hearing loud and clear from the creditors, from those

21  who contributed to the problem.

22          We also -- and I'm sure Your Honor has already

23  heard a bunch of this -- need to keep in mind and mitigate

24  the risk to the deal structure or any deal structure in the

25  crypto space, including regulatory oversight and

Page 49

1    involvement, ongoing investigations, the possibility of

2    further crypto contagion, potential cash constrictions.  Our

3    view is a term sheet is only in a deal, even one that sets

4    forth a perfect distribution scheme, has no worth if it

5    can't be executed consistent with the Code.  And so we're

6    looking to work with the Debtors to see if we can't find a

7    plan and distribution scheme that gets unsecured creditors

8    paid in full if possible.  And if not, to get every dollar

9    that can be paid to them.

10            So I think, Your Honor, hopefully it will be in-

11   person.  But if it has to be by Zoom, it will be by Zoom.

12   We'll see a small part of that play out in court.  But

13   please know the bulk of our work for now is going to be

14   behind the scenes, trying to reach consensus where we can as

15   we did with virtually all of the second day motions.  And,

16   you know, consistent with our approach in past cases, we'll

17   only be involving Your Honor when we can't get to

18   resolutions that are consistent with the goals of

19   transparency, the velocity, and accountability.  And thank

20   you.  I'm sorry for the technical snafu there.

21            THE COURT:  No, not at all.  Not at all.  Thank

22   you for the comments.  It's appreciated.  The phone was a

23   significant improvement.  And thank you for your

24   flexibility.

25            So with that, let me canvass the virtual room and

1    see if anybody else wishes to be heard, and then I'll turn

2    it back to the Debtors for any final thoughts before we

3    adjourn.

4          Anyone else who wishes to be heard?

5          MR. ROSEN:  Yes, Your Honor.  This is Brian Rosen

6    from Proskauer Rose.  May I go -- thank you, sir.

7          We appreciate Mr. Shore's comments.  Since the

8    Committee appointed or retained White & Case as counsel and

9    Houlihan, we've been attempting to work with them to convey

10   some of our thoughts with respect to the term sheet.  We are

11   still working with the Debtors and with DCG on the term

12   sheet itself as well as a plan support agreement that would

13   be consistent with it and as laid out in the term sheet.

14         We are hoping to move forward with that

15   expeditiously.  We understand that there are some tax

16   issues.  We in fact have engaged with the White & Case tax

17   team to let the -- and with the Proskauer team and with

18   others to coordinate with respect to the best structure

19   going forward.

20         Mr. Shore did briefly mention two issues, the

21   dollarization and in-kind.  These are very important issues

22   which probably are issues that the drafters of the

23   Bankruptcy Code didn't take into account when they were

24   thinking about the crypto world, Your Honor.  And these are

25   issues that we believe we're going to have to bring forward

Page 51

1    to the Court at some point in time because that is what's

2    critically important to our constituency, which I've told

3    the Court before holds in excess of $1.6 billion of the

4    outstanding claims against the Debtor's estates.

5            So we continue to work with White & Case.  We'll

6    continue to work with Houlihan Lokey, who did serve as our

7    financial advisor before moving over to the unsecured

8    creditors' committee.  But I just wanted the Court to be

9    aware that we are still progressing with the Debtors and

10   with DCG along the lines of the term sheet and the plan

11   support agreement.  And to the extent that the UCC can

12   provide some needed firepower in that regard, we look

13   forward to integrating their thoughts into the process.

14   Thank you, sir.

15           THE COURT:  All right.  Thank you very much.  Let

16   me ask if there's anybody else who wishes to be heard.

17           MR. O'NEAL:  Your Honor, Sean O'Neal, Clearly

18   Gottlieb, for the Debtors unless any of the creditors would

19   like to add any additional color.

20           THE COURT:  It doesn't appear so, Mr. O'Neal.  The

21   floor is yours.

22           MR. O'NEAL:  Thank you.  And, Your Honor, I hadn't

23   planned on speaking today, but just wanted to respond

24   briefly to Mr. Shore's comments and Mr. Rosen's comments.

25           We very much appreciate the focus on transparency,

Page 52

1    velocity, and accountability.  I think those are very much

2    in keeping with the standards and our own goals that we have

3    applied in this case.  We would add to that efficiency.

4    Efficiency is important here.  Every dollar that is spent on

5    professionals is a dollar that does not go to creditors.

6    And so, Your Honor, we take our stewardship very seriously.

7            Since November 16th when we put in the pause, we

8    put in the pause for one reason, so that we could treat our

9    creditors fairly and equitably.  And that's going to

10   continue to be exactly what we try to do in this case.

11           And I think as is clear from the term sheet, we

12   have given all we can as debtors.  As part of the term

13   sheet, we have given all of our assets, we have given the

14   right to equitize, and the right to sell our assets.  So I

15   think as Debtors, we have given virtually everything that we

16   possibly could to our creditors.

17           There are three sources of recoveries in this

18   case.  Those sources of recoveries kind of set us apart --

19   or I should say three sources of recoveries that set us

20   apart from other cases.  Of course we have our assets, cash

21   and crypto.  All crypto cases have that.  What sets us apart

22   is we have additional assets.  We have our subsidiaries that

23   are non-debtors.  We also have GGT, which is a sister

24   company that DCG has offered to contribute.  In addition, we

25   have potential access, as is clear in the term sheet that

Page 53

```
 1    we've negotiated, to assets from DCG and assets from Gemini.

 2    Those are important assets to us, and we are very much

 3    pursuing those.  And we appreciate the Committee's attempts

 4    to assist us in that effort.

 5               I would also say, Your Honor, that we are pleased

 6    that we are continuing to work on the terms sheet and

 7    working with the Ad Hoc Group, which does represent more

 8    than $2 billion in claims in terms of pooling together a

 9    plan support agreement as Mr. Rosen has said.  And we are

10    committed to doing that.  And we are also committed to our

11    fiduciary (indiscernible).

12               As you know, the special committee has launched an

13    investigation.  It is a very credible investigation.  It is

14    led by Lev Dassin, who is part of our enforcement team at

15    Clearly and is a former acting U.S. Attorney for the

16    Southern District of New York.  He and his team are

17    continuing that investigation and we are continuing to

18    report on the efforts of that investigation to the special

19    committee.

20               And with that, Your Honor, I will just pause and

21    offer to answer any questions.  But we do appreciate all of

22    the efforts and we have pledge and will continue to work

23    with the Committee and all creditors as we try to get

24    through this process efficiently with velocity and

25    accountability and transparency.  Thank you.
```

1          THE COURT:  All right.  Thank you very much.  And

2     I will just say this for purposes of putting people at ease.

3     There is no one for anyone to defend their honor either of

4     their actions or of their proposed course of action.  At

5     this time, we are not there yet.  And obviously there's a

6     lot of fine professionals on the phone that I can -- on

7     Zoom.  I can say that from prior experience having had the

8     privilege of presiding in this court for more than 12 years.

9          So I look forward to all the wonderful things that

10    you all will do collectively.  And with that, let me ask if

11    there's anything else that we need to address before we

12    adjourn here today.  All right.

13          Ms. Vanlare, I just want to confirm we have -- so

14    we have the two dates, the 15th through the 30th, and that

15    you don't need any other dates.  Or if for some reason

16    something comes up and you do, you'll just reach out to

17    chambers.

18          MS. VANLARE:  That's right, Your Honor.  Thank you

19    very much.

20          THE COURT:  All right.  With that, thank you very

21    much to everyone, and look forward to seeing you in a few

22    weeks.  In the meantime, be well and good luck in your

23    conversations and communications.  Thank you so much.

24          (Whereupon these proceedings were concluded at

25    12:22 PM)

1                            I N D E X

2

3                            RULINGS

4                                            Page      Line

5

6    Taxes and Fees Motion Granted            16        13

7    Critical Vendors Motion Granted    1     7         16

8    Ordinary Course professionals Motion Granted 19    12

9    Cleary Gottlieb Retention Motion Granted  24       8

10   Kroll Retention Motion Granted           28        3

11   Alvarez & Marsal Employment Motion Granted  29     1

12   Morris & Cohen Retention Motion Granted   30        5

13   Kobre & Kim Retention Motion Granted      31        2

14   Cash Management Motion Granted            40        14

15

16

17

18

19

20

21

22

23

24

25

Page 56

1                     C E R T I F I C A T I O N

2

3         I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 24, 2023