## Exhibit B

**Burian Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*, | Case No. 23-10063 (SHL) |
| Debtors.[4] | Jointly Administered |

**DECLARATION OF SAUL E. BURIAN IN SUPPORT OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF HOULIHAN LOKEY CAPITAL, INC. AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS *NUNC PRO TUNC* TO FEBRUARY 3, 2023**

I, SAUL E. BURIAN, declare as follows:

1.       I am a Managing Director of Houlihan Lokey Capital, Inc. ("**Houlihan Lokey**"), and am duly authorized to execute this declaration (the "**Declaration**") on behalf of Houlihan Lokey.  I am familiar with the matters set forth herein and, if called as a witness, I could and would testify thereto.[5]

2.       I make this Declaration in support of the *Application of the Official Committee of Unsecured Creditors for Entry of an Order pursuant to 11 U.S.C. §§ 328(a) and 1103, Fed. R. Bankr. P. 2014 and 5002, and Local Rule 2014-1 Authorizing the Retention and Employment of*

---

[4]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[5]     Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Houlihan Lokey and are based on information provided by them. Unless otherwise stated, all matters set forth in this Declaration are based on my personal knowledge, my review of the relevant documents, information supplied to me by others, or my views, which are based on, among other things, my experience and knowledge of the Debtors' business and financial condition.

*Houlihan Lokey Capital, Inc. as Investment Banker to the Official Committee of Unsecured Creditors,* nunc pro tunc *to February 3, 2023* (the "**Application**")[6]  This Declaration is also submitted to comply with the applicable provisions of sections 328(a), 504 and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016 and 5002, and Local Rule 2014-1.

## Houlihan Lokey's Qualifications and Services

3.      The Houlihan Lokey Group (as defined below) is an internationally recognized investment banking and financial advisory firm, with offices worldwide and more than 1,900 professionals.  Houlihan Lokey is a leader in providing such services to unsecured and secured creditors, debtors, acquirers, and other parties in interest involved with financially troubled companies both in and outside of bankruptcy.  Houlihan Lokey has been, and is, involved in some of the largest restructurings in the United States, both out of court and in chapter 11 cases. Houlihan Lokey has been retained to provide investment banking and financial advisory services in, among other cases, *In re Revlon, Inc.*, Case No. 22-10760 (Bankr. S.D.N.Y. Jun. 15, 2022), *In re Sungard AS New Holdings, LLC*, Case No. 22-90018 (Bankr. S.D. Tex. Apr. 11, 2022), *In re LTL Management LLC (Johnson & Johnson)*, Case No. 21-30589 (Bankr. N.J. Oct. 14, 2021), *In re The Hertz Corporation*, Case No. 20-11218 (Bankr. D. Del. May 22, 2020), *In re Neiman Marcus Group LTD LLC*, Case No. 20-32519 (Bankr. S.D. Tex. May 7, 2020), *In re Frontier Communications Corporation*, Case No. 20-22476 (Bankr. S.D.N.Y. Apr 14, 2020); *In re McDermott International, Inc.*, Case No. 20-30336 (Bankr. S.D. Tex. Jan 21, 2020); *In re Barneys New York, Inc.*, Case No. 19-36300 (Bankr. S.D.N.Y. Aug. 06, 2019), *In re Bristow Group Inc.*, Case No. 19-32713 (Bankr. S.D. Tex. May 11, 2019); *In re PHI, Inc.*, Case No. 19- 30923 (Bankr.

---

[6]      Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Application.

N.D. Tex. Mar 14, 2019), *In re Sears Holdings Corporation,* No. 18-23538 (RDD) (Bankr. S.D.N.Y. Dec. 18, 2018), *In re Nine West Holdings, Inc.,* No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 18, 2018), *In re Walter Investment Management Corporation*, Case No. 17-13446 (Bankr. S.D.N.Y. Nov. 30, 2017); *In re Seadrill Limited*, Case No. 17-60079 (Bankr. S.D. Tex. Sep. 12, 2017); *In re Westinghouse Electric Company LLC*, Case No. 17-10751 (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Roust Corporation*, Case No. 16-23786 (Bankr. S.D.N.Y. Dec. 30, 2016); *In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (Bankr. D. Del. Mar. 2, 2016); *In re Relativity Fashion, LLC* (a.k.a. Relativity Media), Case No. 15-11989 (Bankr. S.D.N.Y. Jul. 30, 2015); *In re RadioShack Corporation*, Case No. 15-10197 (Bankr. D. Del. Feb. 5, 2015); *In re Caesars Entertainment Operating Company, Inc.*, Case No. 15-01145 (Bankr. N.D. Ill. Jan. 15, 2015); *In re Entegra Power Group LLC*, Case No. 14-11859 (Bankr. D. Del. Aug. 4, 2014); *In re Premier International Holdings Inc.* (a.k.a. Six Flags Theme Parks), Case No. 09-12019 (Bankr. D. Del. June 13, 2009); *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (Bankr. D. Del. Jan. 22, 2008); *In re Conseco Inc*, Case No. 02-49672 (Bankr. N.D. Ill. Dec. 17, 2002); *In re WorldCom, Inc.*, Case No. 02-13533 (Bankr. S.D.N.Y. July 21, 2002); and *In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 2, 2001).

4.    In addition, prior to the Petition Date, Houlihan Lokey provided investment banking and financial advisory services jointly to separate ad hoc groups of creditors represented by Proskauer LLP and Kirkland & Ellis LLP (the "**Ad Hoc Groups**"), which included diligence and in negotiations with the Debtors and Digital Currency Group, Inc. that culminated in the term sheet filed with the Court on February 10, 2023 (the "**Term Sheet**").  As a result of the foregoing, Houlihan Lokey has expertise regarding the panoply of issues the Committee must address in a

crypto case such as the chapter 11 cases for the Debtors. Houlihan Lokey has expertise regarding the panoply of issues the Committee must address in a crypto case such as the chapter 11 cases for the Debtors. Houlihan Lokey has had extensive experience working with creditors of the Debtors in prepetition diligence and in negotiations with the Debtors and Digital Currency Group, Inc. that culminated in the term sheet filed with the Court on February 10, 2023 (the "**Term Sheet**").

5.      Houlihan Lokey has agreed to provide investment banking services to the official committee of unsecured creditors (the "**Committee**") appointed in the chapter 11 cases for the above-captioned debtors and debtors in possession (the "**Debtors**") pursuant to the terms and conditions of the Engagement Agreement between the Committee and Houlihan Lokey (the "**Engagement Agreement**"), a copy of which is attached to the Proposed Order as **Exhibit 1**.

6.      In addition to me, the principal professionals who are expected to render services to the Committee are set forth on **Exhibit A** attached hereto and incorporated herein by reference (the "**Principal Professionals**").

7.      Houlihan Lokey believes that its services will not duplicate the services that other professionals will be providing to the Committee in these chapter 11 cases.  Houlihan Lokey will use reasonable efforts to coordinate with the Committee's other retained professionals to avoid unnecessary duplication of services.

## Houlihan Lokey's Compensation

8.      Houlihan Lokey believes that the Fee and Expense Structure is comparable to those generally charged by investment bankers of similar stature to Houlihan Lokey for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed fee and a contingency amount tied to the consummation and closing of the transactions and services contemplated by the Committee and Houlihan Lokey in the Engagement Agreement.

9.    The Fee and Expense Structure is consistent with Houlihan Lokey's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of bankruptcy proceedings, involving the services to be provided in connection with these chapter 11 cases.  Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Houlihan Lokey and other investment banks in connection with the rendering of comparable services to clients such as the Committee.

10.    Houlihan Lokey's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions expertise, some or all of which may be required by the Committee during the term of Houlihan Lokey's engagement, were important factors in determining the Fee and Expense Structure.  The ultimate benefit to the Committee derived from the services provided by Houlihan Lokey pursuant to the Engagement Agreement cannot be measured by a reference to the number of hours expended by Houlihan Lokey's professionals.

11.    The Committee and Houlihan Lokey negotiated the Fee and Expense Structure to function as an interrelated, integrated unit corresponding to Houlihan Lokey's overall services.  It would be contrary to the intention of Houlihan Lokey and the Committee for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Houlihan Lokey's services.  Instead, the Committee and Houlihan Lokey intend that Houlihan Lokey's services be considered as a whole for which Houlihan Lokey is to be compensated by the Fee and Expense Structure in its entirety.

12.    In light of the foregoing and given the numerous issues that Houlihan Lokey may be required to address in the performance of its services pursuant to the Engagement Agreement, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Houlihan Lokey's services for both in court

and out of court engagements of this nature, the Committee believes that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

### Record Keeping and Applications for Compensation

13.    It is not the general practice of investment banking firms, including Houlihan Lokey, to keep detailed time records similar to those customarily kept by attorneys and required by the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases.    Because Houlihan Lokey does not ordinarily maintain contemporaneous time records in one-tenth hour (0.10) increments or provide or conform to a schedule of hourly rates for professional services, Houlihan Lokey requests that it be excused from compliance with such requirements and instead should only be required to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a reasonably detailed description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Committee. In addition, Houlihan Lokey respectfully requests its non-financial restructuring professionals and personnel (including traditional investment banking and capital markets professionals) not be required to maintain any time records.

14.    Houlihan Lokey will also maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

15.    Houlihan Lokey's applications for compensation and expense reimbursement will be paid by the Debtors pursuant to the terms of the Engagement Agreement and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures established by the Court.

## Houlihan Lokey's Disinterestedness

16.     To determine its connections with parties in interest in these chapter 11 cases, Houlihan Lokey relied upon a list of entities that were identified to Houlihan Lokey by the Debtors and their representatives (each individually, an "**Interested Party**", and collectively, the "**Interested Parties**").  The Interested Parties are set forth on **Exhibit B** attached hereto and incorporated herein by reference.

17.     I, or one or more of my designees, reviewed a report that was based on a comparison of this list of Interested Parties against certain internal databases of Houlihan Lokey, including Houlihan Lokey's client management information system.  To the extent that this report revealed that certain Interested Parties (or their apparent affiliates or entities that Houlihan Lokey believes to be affiliates, as the case may be) were current or former Houlihan Lokey Group clients that engaged a member of the Houlihan Lokey Group in the past three years (as of the date such report was generated) pursuant to a written engagement letter to provide services for which the Houlihan Lokey Group has received, or is expected to receive, fees, such parties are identified on **Exhibit C** attached hereto and incorporated herein by reference.  To the extent that the aforementioned report revealed certain other connections with Interested Parties (or their apparent affiliates or entities that Houlihan Lokey believes to be affiliates, as the case may be), such parties may also be identified on **Exhibit C** or otherwise described or referenced (whether generally or specifically by name) elsewhere in this Declaration. **Exhibit C** is based upon the information contained in the aforementioned report and may not include information to the extent not included in, or not reflected in the results of Houlihan Lokey's review of, such report, or not otherwise identified by Houlihan Lokey.

18.     Neither the term "connection," as used in Bankruptcy Rule 2014, nor the proper scope of a professional's search for a "connection", has been defined.  I am therefore uncertain what this Court may consider a "connection" requiring disclosure.

19.     Given the large number of Interested Parties, despite the efforts described herein, I am unable to state with certainty that every connection has been disclosed in this Declaration. In particular, among other things, members or certain employees of the Houlihan Lokey Group may have connections with Interested Parties or persons who are beneficial owners, affiliates, equity holders and/or sponsors of certain Interested Parties; persons whose beneficial owners, affiliates, equity holders and/or sponsors are Interested Parties; and persons who otherwise have connections with certain Interested Parties.  Furthermore, the Debtors may have had, or currently have, customers, creditors, lenders, equity owners, competitors, and other parties with whom they maintain business relationships that are parties in interest (but are not listed as Interested Parties), and with whom the Houlihan Lokey Group may have had, or may currently or in the future have, connections. In addition, new parties may become parties in interest and the Houlihan Lokey Group may have had, or may currently or in the future have, connections with such new parties in interest.

20.     It is my understanding that Houlihan Lokey is engaged as an investment banker to Babel Holding Limited, an affiliate of Moonalpha Financial Services Limited ("**Moonalpha**"), an Interested Party.  No Houlihan Lokey employee on that engagement will have direct involvement with dealings relating solely to Moonalpha and, if necessary, BRG Capital Advisors, LLC will primarily advise the Committee concerning issues relating to Moonalpha.

21.     Prior to the Petition Date, Houlihan Lokey provided investment banking and financial advisory services jointly to separate ad hoc groups of creditors represented by Proskauer

LLP and Kirkland & Ellis LLP (the "**Ad Hoc Groups**").  The Ad Hoc Groups were aware of, and consented to, Houlihan Lokey providing investment banking and financial advisory services to the Ad Hoc Groups on a joint basis.  Houlihan Lokey did not have an executed engagement letter with the Ad Hoc Groups in connection with the foregoing nor did the Debtors execute a fee payment letter or other similar agreement; however, the Debtors paid Houlihan Lokey $300,000 in fees and $0 in expense reimbursements on account of investment banking and financial advisory services rendered in connection with the negotiation of the Term Sheet.  The Ad Hoc Groups consented to Houlihan Lokey terminating its prior engagement and representing the Committee in these chapter 11 cases.  The Ad Hoc Groups consented to Houlihan Lokey terminating its prior engagement and representing the Committee in these chapter 11 cases.  As of the Petition Date, Houlihan Lokey possesses no claims against or interests in any of the Debtors. To the extent any claim could be asserted pursuant to Houlihan Lokey's prepetition work in connection with the Term Sheet, those claims have been waived. Houlihan Lokey's prior engagement and representation does not preclude it from meeting the standard for employment under section 1103 of the Bankruptcy Code.

22.    In addition:

a)    From time to time, Houlihan Lokey's Financial Restructuring Group, which is providing the services in this case, may have represented, may currently be representing, or may in the future represent, certain parties in interest in matters unrelated to these chapter 11 cases, either individually or as part of a representation of a committee or group of creditors, lenders, equity owners or other interest holders.

b)    In addition to its Financial Restructuring Group, Houlihan Lokey and the other subsidiaries of its direct parent company, Houlihan Lokey, Inc., that are engaged in providing investment banking and financial advisory services globally (collectively, and together with Houlihan Lokey, Inc., the "Houlihan Lokey Group") provide services to a wide range of institutions and individuals and may have had, or may currently or in the future have, investment banking or financial advisory relationships with certain parties in interest.

c)    In the ordinary course of business, members or certain employees (or relatives of such employees) of the Houlihan Lokey Group, as well as investment funds in

which any of them may have financial interests or with which they may co-invest, but over whose investment decisions such members or employees have no control, may (i) acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Debtors or certain other parties in interest or have other relationships with such parties, and/or (ii) have mortgages, consumer loans, investment, brokerage accounts, or other banking, brokerage, or other customer relationships with institutions that are parties in interest or with funds sponsored by or affiliated with such parties. With respect to any such securities, financial instruments, investments, and/or customer relationships, all rights in respect of such securities, financial instruments, investments, and/or customer relationships, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. Moreover, the Principal Professionals are subject to compliance mechanisms and policies and procedures designed to prevent confidential, non-public information from being improperly shared.

d)  HL Finance, LLC, a direct subsidiary of Houlihan Lokey, Inc., acts as an arranger of syndicated loans for corporate entities and, in connection with such activities, may contract with third-party investors that may provide commitments with respect to certain syndicated loans arranged by HL Finance, LLC. The third-party investors are unrelated to and are not affiliates of the Houlihan Lokey Group; the Houlihan Lokey Group does not engage in asset management activities. HL Finance and certain employees of the Houlihan Lokey Group may have arranged, may currently be arranging or may in the future arrange, syndicated loans for entities that may be or become parties in interest in matters unrelated to these chapter 11 cases, and third-party investors that provided commitments with respect to such syndicated loans may be or become parties in interest.

e)  Houlihan Lokey Financial Advisors, Inc., a direct subsidiary of Houlihan Lokey, Inc., among other things, provides valuation opinions on the securities, derivatives, and other financial instruments (which may have included, or may currently or in the future include, securities, derivatives, or other financial instruments of the Debtors) held by various business development companies, private equity funds, hedge funds, and other investment funds, primarily for financial reporting purposes, through its Portfolio Valuation and Fund Advisory Group. This work is unrelated to the financial advisory and investment banking services that Houlihan Lokey intends to provide in these chapter 11 cases. Moreover, there is an "Information Wall" between Houlihan Lokey Financial Advisors, Inc.'s Portfolio Valuation and Fund Advisory Group and Houlihan Lokey's Financial Restructuring Group, including the Principal Professionals. This "Information Wall" includes technological barriers and policies and procedures designed to prevent confidential, non-public information and work product from being improperly shared.

f)  In the ordinary course of their business, members of the Houlihan Lokey Group from time to time discuss issues concerning stressed and distressed companies with such companies, their creditors and their prospective creditors that are clients of the

firm, that are referred to the firm in light of Houlihan Lokey's reputation for covering such companies and/or relevant industry expertise, or with which the firm may otherwise be in contact. At the time of those contacts, typically it is not known whether any of these companies will actually file for bankruptcy, or if any of these creditors and/or prospective creditors will serve on any future official committee appointed in any such future bankruptcy case, or even be a creditor of the relevant estate in the event of a future bankruptcy. It is also Houlihan Lokey's customary practice to communicate with and, when appropriate or requested, send materials to one or more of the 50 largest unsecured creditors identified by a debtor and who are, therefore, potential members of a creditors' committee.

g) Members or certain employees of the Houlihan Lokey Group may have business associations with certain parties in interest, including attorneys, accountants, investment bankers, financial advisors, financial consultants and other professional advisors, some of whom may represent certain of the parties in interest or be parties in interest. Members of the Houlihan Lokey Group may have appeared, or may currently or in the future appear, in numerous cases, proceedings or transactions involving, had or have mutual clients with, or had or have referral relationships with, these professionals. Furthermore, members of the Houlihan Lokey Group have been, and may currently or in the future be, represented or advised by accountants, auditors, attorneys, law firms and other professionals, some of whom may be involved in these chapter 11 cases. In addition, members of the Houlihan Lokey Group may have worked, or may currently or in the future work, with, for or opposite other professionals involved in these chapter 11 cases in matters unrelated to these chapter 11 cases.

h) Certain employees of the Houlihan Lokey Group may have been formerly employed by other investment banking, financial services or other professional services firms that are among, or represent other parties that are among, certain of the parties in interest. While employed by other firms, certain professionals presently employed by the Houlihan Lokey Group may have represented certain parties in interest.

i) Members of the Houlihan Lokey Group may be involved in litigation from time to time that may have involved, or may currently or in the future involve, entities that may be parties in interest. Also, certain of the parties in interest may have been, or may currently or in the future be, vendors or insurers of members of the Houlihan Lokey Group and/or have corporate or other business relationships with members of the Houlihan Lokey Group.

23.    To the best of my knowledge and belief, other than as disclosed in this Declaration, neither Houlihan Lokey, nor I, nor any other Principal Professionals, represents any other entity having a material adverse interest in connection with these chapter 11 cases.

24.     To the best of my knowledge and belief, other than as disclosed in this Declaration, Houlihan Lokey has not been retained to assist any Interested Party other than the Committee on matters relating to, or in direct connection with, these chapter 11 cases.

25.     In addition, other than as disclosed in this Declaration, I do not believe that any connection that the Houlihan Lokey Group may have with any Interested Party in connection with any unrelated matters, including those involving the parties identified on **Exhibit C**, or any of the matters set forth in paragraph 21 of this Declaration, constitutes an interest materially adverse to the interest of the estate or of any class of creditors or equity holders in these chapter 11 cases.

26.     Other than as disclosed in this Declaration, I am not related to and, to the best of my knowledge and belief, no other Principal Professional is related to, any United States Bankruptcy Judge for this District or known employee in the United States Trustee's Office for this District.

27.     Based on all of the foregoing, I believe that Houlihan Lokey is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

28.     To the extent Houlihan Lokey discovers any material facts bearing on the matters described herein during the period of Houlihan Lokey's retention, Houlihan Lokey undertakes to amend and supplement the information contained in the Application and this Declaration to disclose such facts.

29.     Prior to the Petition Date, the Ad Hoc Groups were aware of, and consented to, Houlihan Lokey providing investment banking and financial advisory services to the Ad Hoc Groups on a joint basis. Houlihan Lokey did not have an executed engagement letter with the Ad Hoc Groups in connection with the foregoing nor did the Debtors execute a fee payment letter or other similar agreement; however, in connection with Houlihan Lokey's investment banking and

financial advisory services in connection with the negotiation of the Term Sheet, during the 90 days immediately preceding the Petition Date, the Debtors paid Houlihan Lokey $300,000 in fees and $0 in expense reimbursements.  Other than as set forth herein, Houlihan Lokey did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date.

30.     Within one year prior to the Petition Date, the Debtors paid Houlihan Lokey $300,000 in fees and $0 in expense reimbursements in connection with Houlihan Lokey's investment banking and financial advisory services in connection with the negotiation of the Term Sheet.

31.     As of the Petition Date, Houlihan Lokey possesses no claims against or interests in any of the Debtors. To the extent any claim could be asserted pursuant to Houlihan Lokey's prepetition work in connection with the Term Sheet, those claims have been waived.

32.     Houlihan Lokey has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.  If any such agreement is entered into, Houlihan Lokey has undertaken to amend and supplement the information contained in this Application and this Declaration to disclose the terms of any such agreement.

33.     No promises have been received by Houlihan Lokey, or by any professionals engaged hereunder, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 16, 2023

Respectfully submitted,

*/s/ Saul E. Burian*

Saul E. Burian
Managing Director
Houlihan Lokey Capital, Inc.

# EXHIBIT A

## PRINCIPAL PROFESSIONALS

Saul Burian, Managing Director

Brad Geer, Managing Director

David Cumming, Senior Vice President

Steven White, Associate

Rijul Malik, Associate

Tom Dircks, Analyst

Braedon Kehoe, Analyst

Odessa Fung, Analyst

**Exhibit B**

**Match List**

**Houlihan Lokey Corporate Finance – Active Engagements**

Eldridge Industries



**Houlihan Lokey Corporate Finance – Closed Engagements**

Bain Capital Ventures

Davidson Kempner

Wolters Kluwer Financial Services Inc.

**Houlihan Lokey Financial And Valuation Advisory – Active Engagements**

Axis Capital

Bain Capital Ventures

Bloomberg Lp

Davidson Kempner

Davis Polk & Wardwell LLP

Fir Tree Partners

███████████████████

████████████████████

Friedman LLP

██████████████████████

████████████████████

Goodwin Procter LLP

████████████

Jpmorgan Chase Bank, Na Singapore

Kirkland & Ellis LLP

█████████████

██████████████████

Mintz Levin Cohn Ferris Glovsky And Popeo P.C.

██████████████

New York Life

█████████████████████

█████████████████████

Opswat, Inc.

Orrick, Herrington & Sutcliffe, LLP

█████████████████████████

██████████

Softbank Vision Fund 2.0

█████████████

██████████████

Transamerica Ventures

Vaneck New Finance Income Fund, Lp

█████████████

**Houlihan Lokey Financial And Valuation Advisory – Closed Engagements**

Abra

█████████████

███████████████████

Axis Capital

Bain Capital Ventures

████████████

Bloomberg Lp



Davidson Kempner

Fir Tree Partners

Ibm Corporation

Jpmorgan Chase Bank, Na Singapore

Kirkland & Ellis LLP

Omers Ventures

Opswat, Inc.

Orrick, Herrington & Sutcliffe, LLP

Perkins Coie LLP

Proskauer Rose, LLP

Reed Smith Pte. Ltd

Social+Capital

**Houlihan Lokey Financial Restructuring Group – Active Engagements**



Bain Capital Ventures



Cleary Gottlieb

Davidson Kempner

Davis Polk & Wardwell LLP

Jpmorgan Chase Bank, Na Singapore

Mintz Levin Cohn Ferris Glovsky And Popeo P.C.

Moonalpha Financial Services Limited

New York Life

Shearman & Sterling LLP

Vaneck New Finance Income Fund, Lp

Weil, Gotshal & Manges LLP

White & Case, LLP

**Houlihan Lokey Financial Restructuring Group – Closed Engagements**

Bain Capital Ventures

Capital Group Us High Yield Fixed Income Trust (Us)

Cleary Gottlieb

Davidson Kempner

Davis Polk & Wardwell LLP



Jpmorgan Chase Bank, Na Singapore

Kirkland & Ellis LLP

Mintz Levin Cohn Ferris Glovsky And Popeo P.C.

New York Life

Proskauer Rose, LLP

Softbank Vision Fund 2.0

Vaneck New Finance Income Fund, Lp

Weil, Gotshal & Manges LLP

White & Case, LLP

## **Exhibit 1**

**Engagement Agreement**

# HOULIHAN LOKEY

_**Personal and Confidential**_

As of February 12, 2023

The Official Committee (the "Committee") of Unsecured Creditors of Genesis Global Holdco, LLC and its affiliated debtors and debtors-in-possession (the "Debtors") in care of the Co-Chairs of the Committee

Bitvavo Custody B.V.
Keizersgracht 281
1016 ED Amsterdam
The Netherlands
Attn: Mark Nuvelstijn, CEO

Richard R. Weston

Teddy Andre Amadeo Gorisse

Dear Ladies and Gentlemen:

This letter agreement (this "Agreement") confirms the terms under which the Committee has engaged Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date") and subject to the approval of the Bankruptcy Court (defined below), to provide financial advisory and investment banking services to the Committee in connection with the Debtors' Chapter 11 cases (the "Cases"), which are pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

1.      **Services**.  Pursuant to its engagement by the Committee, Houlihan Lokey's services will consist of, if appropriate and if requested by the Committee:

      a)      Analyzing business plans, forecasts and related financial projections of the Debtors;

      b)      Evaluating the assets and liabilities of the Debtors;

      c)      Assessing the financial issues and options concerning (i) the sale of the Debtors, either in whole or in part, and (ii) the Debtors' Chapter 11 plan(s) of reorganization or liquidation or any other Chapter 11 plan(s);

      d)      Analyzing and reviewing the financial and operating statements of the Debtors;

      e)      Providing such financial analyses as the Committee may require in connection with the Cases;

      f)      Analyzing the capital structure of the Debtors;

      g)      Assisting with a review of the Debtors' employee benefit programs, including key employee retention, incentive, pension and other post-retirement benefit plans;

The Official Committee of Unsecured Creditors of Genesis Global Holdco, LLC
Page 2

h)      Analyzing strategic alternatives available to the Debtors;

i)      Evaluating the Debtors' debt capacity in light of its projected cash flows;

j)      Assisting in the review of claims and with the reconciliation, estimation, settlement, and litigation with respect thereto;

k)      Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

l)      Providing testimony in court on behalf of the Committee with respect to any of the foregoing, if necessary; and

m)      Providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Committee, subject to Bankruptcy Court approval and in coordination with BRG Capital Advisors, LLC to ensure that there is not duplication of such services to be provided to the Committee.

As used herein, the term "Transaction" means the consummation of any of the following, whether through one transaction or a series of transactions:

(i)      Any merger, consolidation, reorganization, recapitalization, business combination or other transaction pursuant to which any entity comprising the Debtors is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (including, without limitation, existing creditors, employees, affiliates, and/or shareholders of the Debtors) (collectively, a "Purchaser");

(ii)      The acquisition, directly or indirectly, by a Purchaser (or by one or more persons acting together with a Purchaser pursuant to a written agreement or otherwise) of any entity comprising the Debtors, in a single transaction or a series of transactions, of (x) all or substantially all of the assets or operations of any entity comprising the Debtors; or (y) all or substantially all of the outstanding or newly issued shares or units of equity securities of any entity comprising the Debtors (or any securities convertible into, or options, warrants or other rights to acquire such equity securities);

(iii)      Any other sale, transfer or assumption of all or substantially all of the assets or liabilities of any entity comprising the Debtors (including, without limitation, any consolidation or merger involving any entity comprising the Debtors);

(iv)      The consummation of any other Chapter 11 plan.

2.      **Committee Engagement**.    Neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee ("Committee Counsel")), shall be liable for the fees, expenses or other amounts payable to Houlihan Lokey hereunder.  Houlihan Lokey is providing its services as the financial advisor to the Committee, and is not providing any services on behalf of the individual members of the Committee.  To the extent any issue arises as to the scope, nature or substance of Houlihan Lokey's analysis, Houlihan Lokey and the Committee, with the advice of Committee Counsel, shall in good faith work to mutually resolve such issue.  At the direction of Committee Counsel, certain communications and correspondence from Houlihan Lokey, and work product and analyses prepared by Houlihan Lokey for the Committee in connection with this matter, will be considered in preparation for litigation over the restructuring of the Debtors and, accordingly, will be subject to the attorney-client privilege and/or work-product doctrine.

3.      **Fees and Expenses.**    In consideration of Houlihan Lokey's acceptance of this engagement, the Debtors shall pay the following:

(i)      *Monthly Fees*:  Houlihan Lokey shall be paid in advance a nonrefundable monthly cash fee of $150,000 ("Monthly Fee").  The first payment shall be made upon the approval of this Agreement by the Bankruptcy

The Official Committee of Unsecured Creditors of Genesis Global Holdco, LLC
Page 3

Court and shall be in respect of the period as from the Effective Date through the month in which payment is made. Thereafter, payment of the Monthly Fee shall be made on every monthly anniversary of the Effective Date during the term of this Agreement. Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. Beginning with the seventh Monthly Fee, 50% of the Monthly Fees timely received by Houlihan Lokey and approved by final order of the Bankruptcy Court shall be credited against the Deferred Fee (as defined below) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Deferred Fee be reduced below zero; and

(ii) *Deferred Fee*:  In addition to the other fees provided for herein, the Debtors shall pay Houlihan Lokey a fee (the "Deferred Fee") to be paid in cash of $5,500,000. The Deferred Fee shall be earned and payable upon the consummation of a Transaction; and

(iii) *Discretionary Fee*: In addition to the other fees provided for herein, at any time the Committee, based upon the Committee's business judgement, and Houlihan Lokey may, in good faith and subject to approval by the Bankruptcy Court, agree on additional compensation to be paid (the "Discretionary Fee"). The Committee shall file a motion seeking Court approval of the Discretionary Fee, which may be objected to by any party in interest including, but not limited to, the U.S. Trustee.

4.      **Term and Termination.**  In the event that (a) the Committee's application for employment of Houlihan Lokey under Sections 328(a) and 1103 of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") is not granted by the Bankruptcy Court or (b) the form of the order entered by the Bankruptcy Court granting such employment application is not acceptable to Houlihan Lokey in its sole discretion, this Agreement shall terminate immediately. Otherwise, this Agreement may be terminated at any time by either Houlihan Lokey or the Committee upon thirty days prior written notice of termination to the other party. The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 and 3, and (ii) Houlihan Lokey's right to receive, and the Debtors' obligation to pay, any and all fees, expenses and other amounts due hereunder, as more fully set forth in this Agreement.

In addition, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Debtors of the Deferred Fee described in this Agreement so long as the conditions set forth in Section 3(ii) hereunder causing such Deferred Fee to be due and payable are satisfied during the term of this Agreement or within 12 months after the date of expiration or termination of this Agreement.

5.      **Reasonableness of Fees.**  The Committee acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and of the industry in which the Debtors operate, financing skills and merger and acquisition capabilities will inure to the benefit of the Committee, that the value to the Committee of Houlihan Lokey's services derives in substantial part from that experience, expertise, knowledge, skills and capabilities and that, accordingly, the structure and amount of the contingent Deferred Fee is reasonable, regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder.

The parties also acknowledge that this engagement will require a substantial professional commitment of time and effort by Houlihan Lokey. Moreover, the amount of time and effort may vary substantially during different periods of the engagement, thereby creating potential "peak load" issues. As a result, in order to ensure the availability of all necessary professional resources, whenever required, Houlihan Lokey may be foreclosed from pursuing other alternative engagement opportunities. In light of the foregoing, and given: (i) the numerous issues which can currently be anticipated in engagements such as this, (ii) Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, (iii) the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and (iv) the market rate for professionals of Houlihan Lokey's stature and reputation for services of this nature, whether in-court or out-of-court, the parties agree that (x) the fee and expense reimbursement arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Debtors and the Committee, and (y) none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law. The parties further agree

The Official Committee of Unsecured Creditors of Genesis Global Holdco, LLC
Page 4

and acknowledge that: (a) additional issues and developments, not currently anticipated, may arise and have an impact upon the services to be rendered by Houlihan Lokey hereunder, and may result in substantially more work and/or services being performed by Houlihan Lokey than is anticipated at this time; and (b) as a result of such unanticipated issues and/or developments, the results of Houlihan Lokey's services under this Agreement may also be substantially more beneficial than anticipated at this time.

6.    **Expenses.**  In addition to all of the other fees and expenses described in this Agreement, the Debtors shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors and reprographic expenses to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Houlihan Lokey shall, in addition, be reimbursed by the Debtors for the fees and expenses of Houlihan Lokey's legal counsel incurred in connection with (i) the negotiation and performance of this Agreement and the matters contemplated hereby, (ii) Houlihan Lokey's employment as a professional person in the Cases, and (iii) the payment of all fees and expenses due to Houlihan Lokey hereunder.

7.    **Invoicing and Payment.**  All amounts payable to Houlihan Lokey shall be made in lawful money of the United States, in accordance with the payment instructions set forth on the invoice provided from time to time, or to such accounts as Houlihan Lokey shall direct, and the Debtors shall provide contemporaneous written notice of each such payment to Houlihan Lokey.  All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes").  All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

8.    **Information.**  The Committee shall use all reasonable efforts to cause the Debtors (i) to provide Houlihan Lokey with access to management and other representatives of the Debtors and other participants in a transaction, as reasonably requested by Houlihan Lokey, and (ii) to furnish all data, material and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition, and prospects of the Debtors, as reasonably requested by Houlihan Lokey, in connection with the services to be performed for the Committee hereunder.  With respect to financial forecasts and projections that may be furnished to or discussed with Houlihan Lokey by the Debtors or any other entity, Houlihan Lokey will be entitled to assume that such financial forecasts and projections have been or will be reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the Debtors' or such other entity's management, as the case may be, as to the matters covered thereby.  The Committee shall, or will use reasonable efforts to cause the Debtors to, promptly notify Houlihan Lokey in writing of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to, or discussed with, Houlihan Lokey, or any materials provided to any interested party.  Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Debtors or the Committee or otherwise reviewed by, or discussed with, Houlihan Lokey.  The Committee understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein.  The Committee acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any assets or liabilities of the Debtors or any other party or to evaluate the solvency of any party under any applicable laws relating to bankruptcy, insolvency or similar matters.  The Committee acknowledges that Houlihan Lokey's ability to render the services hereunder will depend upon the extent of cooperation that it receives from the Debtors and the Debtors' advisors.  Houlihan Lokey's role in reviewing any information is limited solely to performing such a review as it shall deem necessary to support its own advice and analysis and shall not be on behalf of any other party.  Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Committee in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or entity or used for any other purpose.  Any advice rendered by, or other materials prepared by, or any

The Official Committee of Unsecured Creditors of Genesis Global Holdco, LLC
Page 5

communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey.

9.    **Limitations on Services as Advisor.**  Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing, by Houlihan Lokey and the Committee.  Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, profitability or liquidity improvements or similar activities.  Houlihan Lokey makes no representation or warranty about the Debtors ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business or (iii) successfully complete any transaction(s).  The parties understand that Houlihan Lokey is being engaged hereunder as an independent contractor to provide the services hereunder solely to the Committee, and that Houlihan Lokey is not acting as an agent or fiduciary of the Debtors, the Committee or any other person or entity in connection with this engagement, and the Committee agrees that it shall not make, and hereby waives, any claim based on an agency or fiduciary relationship or the assertion thereof.  In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Committee's or the Debtors' decision on whether to pursue, endorse or support any business strategy, or to effect, or not to effect, any transaction(s).

10.    **Bankruptcy Court Approval.**  The Committee shall, as soon as practicable following the execution of this Agreement by the Committee, seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Sections 328(a) and 1103 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders, and Houlihan Lokey's employment hereunder shall not be subject to any other standard of review, including under Section 330 of the Bankruptcy Code.  In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges the reasonableness of Houlihan Lokey's fee and expense reimbursement arrangement (as set forth more fully in Section 5 hereof).  The Committee shall use its best efforts to cause Houlihan Lokey's employment application to be considered on the most expedited basis.  The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of their filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion.  Following entry of the order authorizing the employment of Houlihan Lokey, the Debtors shall pay all fees and expenses due pursuant to this Agreement, as approved by the Bankruptcy Court, as promptly as possible in accordance with the terms of this Agreement and applicable orders of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses (including, without limitation, monthly, interim, and final) with the Bankruptcy Court.

The Committee agrees that Houlihan Lokey's post-petition compensation as set forth herein and payments made pursuant to the expense reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(l)(A), 503(b)(2) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Debtors to pay Houlihan Lokey's fees and expenses, fully and promptly) in effect pursuant to one or more financing or cash collateral orders entered by the Bankruptcy Court in accordance with the terms thereof; *provided*, however, that the form of documentation to be used to satisfy the foregoing obligations of the Debtors shall be acceptable to Houlihan Lokey in its sole discretion.  The Committee will use its best efforts to ensure that any sale order, debtor-in-possession financing order, cash collateral order, adequate protection order and/or similar order entered in any bankruptcy case involving the Debtors (i) permits the use of sale, financing and cash collateral proceeds for the full and prompt payment of all of Houlihan Lokey's fees and expenses contemplated hereby, and (ii) contains the agreements by the Debtors' lenders (or parties whose cash collateral is being used) that Houlihan Lokey's fees and expenses will be paid at the times and from the sources specified herein.  If such orders and carve-outs are or become insufficient to provide the foregoing assurances, Houlihan Lokey shall then have no obligation to provide further services under this Agreement.

Houlihan Lokey shall have no obligation to provide services under this Agreement unless the foregoing authorizations, including authorization to employ Houlihan Lokey under Section 328(a) of the Bankruptcy Code, are granted

The Official Committee of Unsecured Creditors of Genesis Global Holdco, LLC
Page 6

by final order of the Bankruptcy Court that is no longer subject to appeal, rehearing, reconsideration or petition for certiorari and is acceptable to Houlihan Lokey in all respects.  If such an order is not obtained, or is later reversed, vacated, stayed or set aside for any reason, Houlihan Lokey may terminate this Agreement, and the Debtors shall reimburse Houlihan Lokey for all fees and reasonable expenses incurred prior to the date of such termination, subject to any requirements of the Bankruptcy Code, the Bankruptcy Rules, applicable orders of such Bankruptcy Court and applicable local rules and orders.

The Committee will use its best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan in the Cases contains typical and customary release provisions (both from the Debtors and from third parties) and exculpation provisions releasing, waiving and forever discharging the HL Parties (as defined below) from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities related to the Debtors or the engagement described in this Agreement.  The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

11.     **Credit.**  Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Debtors' logo or other identifying marks) describing its services in connection with this engagement.

12.     **Choice of Law; Jury Trial Waiver; Jurisdiction.  THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK.  THIS AGREEMENT AND ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.  EACH OF HOULIHAN LOKEY AND THE COMMITTEE IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.  REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT AND MAINTAINED IN THE BANKRUPTCY COURT.**

13.     **Indemnification and Exculpation.**  As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services to the Committee under this Agreement, the Debtors shall (i) indemnify and hold harmless each HL Party, to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, and (ii) reimburse each HL Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action or any claim to enforce this Agreement), arising out of or related to the formulation of any plan of reorganization for the Debtors or Houlihan Lokey's engagement under, or any matter referred to in, this Agreement.  However, the Debtors shall not be liable under the foregoing indemnification provision for any loss, claim, damage or liability which arises out of any action or failure to act by such HL Party (other than an action or failure to act undertaken at the request or with the consent of the Committee) and is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such HL Party.

If for any reason the foregoing indemnification or reimbursement is unavailable to any HL Party or insufficient to fully indemnify any HL Party or hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in subsections (i) or (ii) of such indemnification or reimbursement provisions, then the Debtors shall contribute to the amount paid or payable by such HL Party as a result of such losses, claims, damages, liabilities or expenses in such

The Official Committee of Unsecured Creditors of Genesis Global Holdco, LLC
Page 7

proportion as is appropriate to reflect the relative benefits received by the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, in connection with the services rendered by Houlihan Lokey.  If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Debtors shall contribute to such amount paid or payable by such HL Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Committee and Debtors (and their respective affiliates, and their respective directors, employees, agents and other advisors), on the one hand, and such HL Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations.  Notwithstanding the foregoing, in no event shall the HL Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Debtors pursuant to this Agreement.  Relative benefits received by the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Debtors, and their respective security holders, creditors (including members of the Committee), and other affiliates, as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under this Agreement.  Neither the Committee nor any of the Debtors shall settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement (whether or not an HL Party is an actual or potential party thereto), or participate in or otherwise facilitate any such settlement, compromise, consent or termination by or on behalf of any person or entity, unless such settlement, compromise, consent or termination contains a release of the HL Parties reasonably satisfactory in form and substance to Houlihan Lokey.

Neither Houlihan Lokey nor any other HL Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Committee, the Debtors or any person or entity asserting claims arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, except for losses, claims, damages or liabilities incurred by the Committee and/or the Debtors which arise out of any action or failure to act by such HL Party (other than an action or failure to act undertaken at the request or with the consent of the Committee) and are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such HL Party, and no HL Party shall have any liability whatsoever to Committee Counsel, any individual member of the Committee, or any other person or entity.  The indemnity, reimbursement, and other obligations and agreements of the Committee and the Debtors set forth herein (i) shall, for the avoidance of doubt, apply to any activities or actions arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, prior to the Effective Date, and to any modifications of this Agreement, and (ii) shall be in addition to any obligation or liability which such parties may otherwise have to any HL Party.  The parties agree that Houlihan Lokey would be irreparably injured by any breach of any such obligations or agreements, that money damages alone would not be an adequate remedy for any such breach and that, in the event of any such breach, Houlihan Lokey shall be entitled, in addition to any other remedies, to injunctive relief and specific performance.

For purposes of this Agreement, the term "HL Parties" shall mean Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (each, an "HL Party").

14.    **Miscellaneous.**    This Agreement shall be binding upon the parties hereto, the Debtors and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed in the Cases.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the Committee, the HL Parties and each of their respective successors, heirs and assigns, any rights or remedies (directly or indirectly as a third party beneficiary or otherwise) under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or

The Official Committee of Unsecured Creditors of Genesis Global Holdco, LLC
Page 8

oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by Houlihan Lokey and the Co-Chairs or other authorized representative of the Committee and approved by the Bankruptcy Court.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, each of the parties hereto will provide Houlihan Lokey upon request (i) certain information regarding the identities of all individuals who, directly or indirectly, own 25% or more of the Debtors' equity interests as well as the Debtors' executive officers and other control persons, and (ii) certain identifying information necessary to verify such party's identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement, or trust instrument.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

In order to enable Houlihan Lokey to bring relevant resources to bear on its engagement hereunder from among its global affiliates, the Committee agrees that Houlihan Lokey may share information obtained from the Committee, the Debtors and other parties hereunder with certain of its affiliates, and may perform the services contemplated hereby in conjunction with such affiliates.

The Committee has all requisite power and authority to enter into this Agreement. This Agreement has been duly and validly authorized by all necessary action on the part of the Committee and has been duly executed and delivered by the Committee and constitutes a legal, valid and binding agreement of the Committee, enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Committee understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Committee confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

The Committee understands and acknowledges that Houlihan Lokey and its affiliates (collectively, the "Houlihan Lokey Group") engage in providing investment banking, securities trading, financing, financial advisory, and consulting services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business, the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests or with which they may co-invest, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, one or more Debtors or any other party that may be involved in the matters contemplated by this Agreement or have other relationships with such parties. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. In addition, the Houlihan Lokey Group may in the past have had, and may currently or in the future have, financial advisory or other investment banking or consulting relationships with parties involved in the matters contemplated by this Agreement, including parties that may have interests with respect to one or more Debtors, a transaction or other parties involved in a transaction, from which conflicting interests or duties may arise. Although the Houlihan Lokey Group in the course of such other activities and relationships or otherwise may have acquired, or may in the future acquire, information about one or more Debtors, a

The Official Committee of Unsecured Creditors of Genesis Global Holdco, LLC
Page 9

transaction or such other parties, or that otherwise may be of interest to the Committee, the Houlihan Lokey Group shall have no obligation to, and may not be contractually permitted to, disclose such information, or the fact that the Houlihan Lokey Group is in possession of such information, to the Committee or to use such information on the Committee's behalf.

The Official Committee of Unsecured Creditors of Genesis Global Holdco, LLC
Page 10

All of us at Houlihan Lokey thank you for choosing us to advise the Committee, and look forward to working with you on this engagement.

Very truly yours,

**HOULIHAN LOKEY CAPITAL, INC.**

By: _____
  Saul E. Burian
  Managing Director

Accepted and agreed to as of the Effective Date:

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF GENESIS GLOBAL HOLDCO, LLC**

By: _____
  Gregory F. Pesce
  Authorized Signatory