**Hearing Date: March 30, 2023, at 11:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: March 23, 2023, at 4:00 p.m. (prevailing Eastern Time)**

**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
David Turetsky
Michele J. Meises
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:   cshore@whitecase.com
         philip.abelson@whitecase.com
         david.turetsky@whitecase.com
         michele.meises@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:   gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of*
*Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No. 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF HEARING ON THE APPLICATION
FOR ENTRY OF AN ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF BERKELEY RESEARCH
GROUP, LLC AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS EFFECTIVE AS OF FEBRUARY 14, 2023**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these chapter 11 cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

PLEASE TAKE NOTICE that a hearing on the *Application for Entry of an Order Authorizing the Employment and Retention of Berkeley Research Group, LLC, as Financial Advisor to the Official Committee of Unsecured Creditors Effective as of February 14, 2023* (the "**Application**") will be held on **March 30, 2023, at 11:00 a.m. (prevailing Eastern Time)** (the "**Hearing**"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for both telephonic and video appearances. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl no later than 4:00 p.m. (Eastern Time), one business day prior to the Hearing.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the relief requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, and the *Order Implementing Certain Notice and Case Management Procedures* [Docket No. 44]; (c) be filed electronically with the Court on the docket of *In re Genesis Global Holdco, LLC, et al.*, No. 23-10063 (SHL) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **March 23, 2023, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in

possession (the "**Debtors**") at https://restructuring.ra.kroll.com/genesis and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Committee.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Kroll at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.  You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*Remainder of page left intentionally blank*]

Dated:    March 16, 2023

*/s/ Gregory F. Pesce*
_____

**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
David Turetsky
Michele J. Meises
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: cshore@whitecase.com
        philip.abelson@whitecase.com
        david.turetsky@whitecase.com
        michele.meises@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email: gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
David Turetsky
Michele J. Meises
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  cshore@whitecase.com
          philip.abelson@whitecase.com
          david.turetsky@whitecase.com
          michele.meises@whitecase.com

– and –
**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of
Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No. 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT
AND RETENTION OF BERKELEY RESEARCH GROUP, LLC AS FINANCIAL
ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
<u>EFFECTIVE AS OF FEBRUARY 14, 2023</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these chapter 11 cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

The Official Committee of Unsecured Creditors (the "**Committee**" or "**UCC**") of Genesis Global Holdco, LLC, *et al.*, as debtors and debtors-in-possession in these proceedings (the "**Debtors**" or "**Genesis**") hereby files this application (this "**Application**") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 328(a) and 1103(a) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") authorizing the retention and employment of Berkeley Research Group, LLC ("**BRG**") as its financial advisor effective as of February 14, 2023. In support of this Application, the Committee also submits the *Declaration of Evan Hengel in Support of the Application for Entry of an Order Authorizing the Employment and Retention of Berkeley Research Group, LLC as Financial Advisor to the Official Committee of Unsecured Creditors, effective as of February 14, 2023* (the "**Hengel Declaration**"), attached hereto as **Exhibit B**. In further support of this Application, the Committee respectfully represents as follows:

### Jurisdiction, Venue and Predicates for Relief

1.      The United States Bankruptcy Court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  The Committee confirms its consent to the Court entering a final order in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The predicates for the relief requested by this Application are sections 328(a) and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

### Background

4.     On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "**Petition Date**").  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 37].   No trustee or examiner has been appointed in the chapter 11 cases.  On February 3, 2023, an official committee of unsecured creditors (the "**Committee**") was appointed in these cases [Docket No. 55].

5.     On February 14, 2023, the Committee selected BRG to serve as its financial advisor. The Committee has also selected White & Case LLP ("**White & Case**" or "**Counsel**") to serve as its legal counsel and Houlihan Lokey, Inc. ("**Houlihan**") to serve as its investment banker.

### Requested Relief and Reasons Therefor

6.     The Committee respectfully requests entry of an order pursuant to sections 328, 330, and 1103(a) of the Bankruptcy Code authorizing BRG to perform financial advisory services for the Committee that will be necessary during these cases. The Debtors are a large, complex enterprise, and the Committee requires the services of an experienced financial advisor such as BRG to provide financial advisory services that are critical to the success of these cases.

7.     The Committee determined that the services of BRG are necessary to enable the Committee to assess and monitor the efforts of the Debtors and their professionals, to ensure that

the Debtors are able to successfully reorganize (through a standalone reorganization and/or asset sale(s)), and to maximize the value of the Debtors' estates for the benefit of the unsecured creditors.

8.      Immediately upon its selection, BRG commenced work on several time-sensitive matters and promptly devoted substantial resources to these cases pending submission and approval of this Application. To allow BRG to be compensated for work performed prior to and after the submission of the Application, the Committee seeks to employ and retain BRG as its financial advisor effective as of February 14, 2023.

## A.    **Qualifications of Professionals**

9.      BRG has significant qualifications and experience in providing the services contemplated herein. BRG's Corporate Finance practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing restructuring, transaction advisory, litigation support, solvency, and valuation assistance and providing a focus on viable solutions that maximize value for companies and creditors, typically in distressed business settings. BRG has acted as financial advisor, crisis manager, and corporate officer in middle market to large multinational companies in crisis or those in need of performance improvement in specific financial and operational areas across a wide array of industries. Moreover, the professionals at BRG have assisted and advised debtors, independent boards, creditors, creditors' committees, bondholders, investors, and others in numerous bankruptcy cases, including Endo International plc., Voyager Digital Holdings, Inc., BlockFi, Inc., Centric Brands, Inc., The Hertz Corporation, CBL & Associates Properties, Inc.; GNC Holdings, Inc., Molycorp Inc, Nortel Networks Inc, The McClatchy Company, Diamond Offshore Drilling, Inc., Speedcast International Limited, Briggs & Stratton Corporation, The Collected Group, LLC, Nine West Holdings, Inc., Bouchard Transportation, Co., Inc., General Wireless Operations, Inc (a.k.a. RadioShack Inc.), Verity Health System of California, Seadrill Partners, LLC; Bumble Bee Foods;

4

Peabody Energy Corporation, Aluminum Shapes, L.L.C., MF Global Holdings, Ltd., Southern

Foods Group, LLC (a.k.a. Dean Foods), and Refco, Inc.[2]

10.     The Committee chose BRG to act as its financial advisor in these cases based in

large part on the experience outlined above. The Committee believes that BRG's services are

necessary to enable the Committee to assess and monitor the Debtors' restructuring efforts in

furtherance of the Committee's obligations to protect the interests of and maximize value for all

unsecured creditors. Moreover, based on the experience of BRG's professionals in large, complex

chapter 11 cases, the Committee believes that BRG is well-qualified to provide such services in a

cost-effective, efficient, and timely manner.

**B.     Services to be Rendered**

11.     BRG will provide such financial advisory services to the Committee as the

Committee deems appropriate and necessary to advise the Committee during the course of these

cases. The services to be rendered by BRG, which services may be subject to modification at the

Committee's request, are necessary to enable the Committee to faithfully execute its statutory

duties to unsecured creditors. BRG intends to communicate regularly with the Committee and its

legal advisors to ensure that the actual financial advisory services performed are appropriate based

on the status of the case and needs of the Committee.

12.     The services to be provided by BRG will be at the request and direction of the

Committee, so as to avoid duplicative efforts among the Committee's professionals retained in the

cases. BRG will coordinate the execution of its services with Counsel who also has been selected

by the Committee to perform certain financial advisory services for the Committee, to minimize

or eliminate any duplication of effort. BRG will also coordinate with Houlihan, who has been

---

[2] The professionals were employed in certain of these engagements prior to joining BRG.

selected by the Committee to perform investment banking services. The investment banking services that Houlihan is to provide to the Committee are separate and distinct from the restructuring and financial advisory services that BRG will be providing to the Committee.

13.     The services to be rendered by BRG, which services may be subject to modification at the Committee's request, are necessary to enable the Committee to faithfully execute its statutory duties to unsecured creditors. Subject to further order of this Court, the Committee has requested that BRG render the following financial advisory services:

a)  Develop periodic monitoring reports to enable the Committee to evaluate effectively the Debtors' financial performance relative to projections and any relevant operational issues, including assessments of liability coverage on a by-coin basis, going forward;

b)  Monitor liquidity and cash flows throughout the cases and scrutinizing cash disbursements and capital requirements, including, but not limited to, the amount of intercompany disbursements made to non-debtors and other payments permitted pursuant to first day motions;

c)  Analyze relief requested by the Debtors in connection with their cash management system, including proper controls related to and financial transparency into intercompany transactions and claims between Debtor entities and non-debtor affiliates;

d)  Analyze both historical and ongoing intercompany and/or related party transactions and or material unusual transactions of the Debtors and international non-Debtor affiliates. Such analysis to include developing an oversight protocol with the Debtors' advisors to closely monitor such transactions to prevent value leakage;

e)  Advise the Committee in its analysis of the Debtors' and non-Debtor affiliates' historical, current, and projected financial affairs;

f)  Assist in the review of financial related disclosures, including the Debtors' schedules of assets and liabilities, statements of financial affairs and monthly operating reports;

6

g) As appropriate and in concert with the Committee's other professionals, analyze and monitor any sale processes and transactions and assess the reasonableness of the process and the consideration received;

h) Analyze the Debtors' business plan / operational restructuring and monitoring the implementation of any strategic initiatives and preparing reports related thereto;

i) Advise and assist the Committee in its assessment of the Debtors' employee needs and related costs, including any proposed employee bonuses such as the proposed key employee incentive plan for the Debtors' insiders, and providing expert testimony related thereto;

j) Assist in the development and review of a cost/benefit analysis with respect to the assumption or rejection of executory contracts and leases;

k) Provide support for Committee Counsel as necessary to address restructuring issues, including, but not limited to, plan of reorganization, valuation and liquidity issues;

l) Advise and assist the Committee and its Counsel in reviewing and evaluating any court motions, applications, or other forms of relief, filed or to be filed by the Debtors or any other parties in interest, as necessary and appropriate;

m) Analyze the Debtors' and non-Debtor affiliates assets (tangible and intangible) and possible recoveries to creditor constituencies under various scenarios and develop strategies to maximize recoveries

n) Identify and develop strategies related to the Debtors' intellectual property;

o) Assess the Debtors' international operations and analyzing the impact of any insolvency proceedings in foreign countries;

p) Advise the Committee with respect to any potential preference payments, fraudulent conveyances, and other potential causes of action that the Debtors' estates may hold against insiders and/or third parties;

q) Provide support to the Committee and its Counsel regarding potential litigation strategies and/or the value of any releases provided as part of a Plan of Reorganization;

r) Monitor the Debtors' claims management process, including analyzing all classes of claims and guarantees and summarizing claims by entity;

s) Prepare a waterfall of expected recoveries to creditor classes under various settlement scenarios;

t) Review and provide analysis of any bankruptcy plan and disclosure statement relating to the Debtors including, if applicable, the development and analysis of any bankruptcy plans proposed by the Committee to assess their achievability;

u) Work with the Debtors' tax advisors to ensure that any restructuring or sale transaction is structured to minimize tax liabilities to the estate as well as assist with the review of any tax issues associated with, for example, claims/stock trading, preservation of net operating losses, and refunds from any plan of reorganization and/or asset sales;

v) Conduct asset tracing activities to verify that current digital asset holdings tie to the Company's books and records, in addition to tracing past transactions to inform any investigations into causes of action against other parties;

w) Negotiate with parties in interest;

x) Attend Committee meetings and court hearings as may be required; and

y) Perform other services as may be requested by the Committee or its Counsel from time to time, consistent with the role of a financial advisor, including: rendering expert testimony, issuing expert reports, valuations and/or preparing litigation, valuation, and/or forensic analyses that have not yet been identified but as may be requested by the Committee and its Counsel.

In addition to services related to these areas, BRG understands that it may be requested to participate, at the Committee's request and to the extent appropriate, in meetings and discussions with the Committee, the Debtors, and the other parties-in-interest and with their respective professionals.

## C.    **No Duplication of Services**

14.    The services to be provided by BRG will be at the request and direction of the Committee, so as to avoid duplicative efforts among the Committee's professionals retained in these cases.

15.     The Committee believes that if this Court approves the employment of BRG and Houlihan, these firms will allocate their delivery of services to the Committee so as to avoid any unnecessary duplication of services. The Committee has discussed with BRG and Houlihan the appropriate and efficient methods for the allocation of services and responsibilities between the firms and its other professionals. Ultimately, BRG and Houlihan recognize the difficulty in predicting how these complex chapter 11 cases will proceed. As such, they will undertake to coordinate their services to the Committee to avoid or minimize unnecessary duplication of services. The Committee firmly believes that considering the size and complexity of these cases and the various interests involved, representation of the Committee by BRG and Houlihan is necessary and in the best interests of the Committee.

16.     BRG will coordinate all tasks with the Committee, Counsel, and the Committee's other professionals to achieve case efficiencies and avoid duplication of efforts. The Committee believes it is necessary to employ BRG as its financial advisor to render the foregoing professional services. In light of BRG's substantial experience and expertise and the complex nature of the Debtors' business and financial affairs, the Committee believes that BRG is well qualified to advise it in these cases.

**D.    Use of Contractors**

17.     Notwithstanding anything in this Application to the contrary, BRG shall (i) to the extent that, with the prior consent of the Committee, it uses the services of independent contractors or subcontractors ("**Contractors**") in these cases, pass-through the cost of Contractors to the Debtors at the same rate that BRG pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required for BRG; and (iv) file with the Court such disclosures required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, orders of the Court, and applicable law.

E.      **Indemnification and Limitation of Liability**

18.      The Committee understands that BRG's decision to accept this engagement is contingent upon its ability to be retained in accordance with the terms and conditions set forth below (the "**Indemnity Provisions**").

19.      In connection with BRG's engagement to provide financial advisory services to the Committee, BRG seeks to be indemnified and held harmless by the Debtors against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements including, without limitation, defending any action, suit, proceedings or investigation (whether or not in connection with proceedings or litigation in which BRG is a party), caused by, relating to, based upon, arising out of or in connection with the engagement of BRG hereunder or any services rendered pursuant to such engagement or any claim, litigation, investigation or proceeding relating to the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by the Debtors or its affiliates, and regardless of whether BRG is a party thereto, unless there is a final non-appealable order of a court of competent jurisdiction finding BRG directly liable for bad faith, fraud, gross negligence or willful misconduct. The foregoing indemnification obligations of the Debtors shall survive any termination of this engagement. These indemnification provisions extend to the principals, employees, representatives, agents, independent contractors, counsel and affiliates of BRG. All requests for payment of indemnity provided herein shall be made by means of an application and review of the Bankruptcy Court in accordance with an order of the Bankruptcy Court approving the Committee's engagement of BRG. BRG acknowledges that neither the Committee nor any of its individual members shall have any liability hereunder for the indemnification in favor of BRG by the Debtors.

10

20.     BRG understands that the Indemnity Provisions discussed above in paragraphs 18 through 19, are customary provisions in chapter 11 cases in New York. Accordingly, the Committee and BRG believe that the Indemnity Provisions are customary and reasonable for engagements of this type and should be approved.

**F.    Disinterestedness of Professionals**

21.     To the best of the Committee's knowledge and based upon and subject to the disclosures made in the Hengel Declaration filed contemporaneously herewith, BRG (inclusive of its affiliates, subsidiaries, and parent entities) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and the Committee is satisfied that (i) BRG represents no interest adverse to the Committee, the Debtors, their estates, or any other party in interest in the matters upon which it is to be engaged and that its employment is in the best interest of the estates; (ii) BRG and the Managing Directors and Directors of BRG do not have any financial interest or business with the Debtors; (iii) BRG has no connection with the United States Trustee or any other person employed in the office of the United States Trustee; and (iv) BRG has no connection with the bankruptcy judge approving the employment of BRG as the Committee's financial advisor. BRG has not provided, and will not provide, any professional services to the Debtors, any other creditors, other parties in interest, or their respective attorneys and accountants with regard to any matter related to these cases.

**G.    Professional Compensation**

22.     BRG has advised the Committee that it intends to charge its standard hourly rates for professional services rendered, plus reimbursement of actual and necessary expenses incurred by BRG. The professional fees shall be calculated by multiplying the hours worked by the standard hourly billing rates in effect for the specific personnel involved. The hourly rates charged by BRG for the services provided by its personnel differ based upon, among other things, each

professional's level of experience, geographic differentials, and the types of services being provided. In the ordinary course of business, BRG periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business.

23.     BRG has advised the Committee that its fees will be commensurate with the fees charged to its other clients and in other cases of this size (provided such clients are billed hourly). BRG has also advised the Committee that it intends to make application to the Court for allowance of its compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the 1996 U.S. Trustee *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330* (the "**UST Guidelines**") and the terms of any order establishing procedures for interim compensation that may be entered in these cases. BRG's compensation for services rendered on behalf of the Committee shall be fixed by the Court after due application.

24.     For professional services, fees are usually based on BRG's standard hourly rates. The proposed rates of compensation, subject to final Court approval, are the customary hourly rates in effect when services are performed by the professionals and paraprofessionals who provide services to the Committee. The current standard hourly rates for BRG Personnel (defined below) that are expected to work on this engagement are as follows[3]:

---

[3] The below ranges are for BRG professionals in the Corporate Finance practice group who may practice in bankruptcy and non-bankruptcy related matters. They exclude BRG professionals in other industry practice groups, such as healthcare, who may also provide specialized services in these chapter 11 cases. To the extent such other professionals provide services, they will charge their standard hourly rates as they would in non-bankruptcy matters and in no event do their standard hourly rates exceed the ranges set forth below for the Corporate Finance practice group.

| Position | Hourly Rate |
|---|---|
| Managing Directors | $1,050 - $1,250 |
| Associate Directors & Directors | $810 – 990 |
| Professional Staff | $395 - $795 |
| Support Staff | $175 - $350 |

25.     These hourly rates are subject to periodic adjustment, which shall be noted on the invoices for the first time period in which the revised rates become effective. The standard hourly rates for the BRG experts anticipated to be assigned to this engagement are as follows: Christopher Kearns ($1,250), Mark Renzi ($1,250), Evan Hengel ($1,150), Michael C. Canale ($1,150), Andrew Cowie ($900), and Christopher Goodrich ($900), (together with the assigned professional staff the "**BRG Personnel**"). BRG believes that its standard hourly rates are at or below those of firms it considers its peers.

26.     To the extent BRG requires services of personnel from specialized practices or its international divisions, the standard hourly rates for that specialized practice or international division will apply.

27.     Consistent with BRG's policy with respect to its other clients, BRG will charge for all other services provided and for other charges and disbursements incurred in rendering services to the Committee. These customary items include, among other things, travel and lodging expenses, business meals, costs of reproduction, research, communications, our legal counsel, any applicable sales or excise taxes and other direct expenses. Internal or overhead costs and document production services (including regular secretarial and word processing time) will not be charged for separately.

28.     BRG will also request compensation for any time and expenses (including, without limitation, reasonable legal fees and expenses, except in the case of legal fees pertaining to any fee

13

defense) that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, including, without limitation, those other than the instant matter, as a result of BRG's performance of these services.

29.    BRG acknowledges that neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to Counsel), shall be liable for the fees, expenses, or other amounts payable to BRG.

30.    Regardless of the time and manner of interim compensation, BRG understands that, subject to this Court's orders, BRG will be required to follow the procedures for final allowance of fees at the end of these cases.

31.    No promises have been received by BRG, nor any employee thereof, as to payment or compensation in connection with these cases other than in accordance with the provisions of section 504 of the Bankruptcy Code. Except for internal agreements among the employees and of BRG regarding the sharing of revenue or compensation, neither BRG nor any of its employees has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Code section 504 and Bankruptcy Rule 2016.

## **Notice**

32.    Notice of this Application has been provided to: (a) the Debtors; (b) the United States Trustee; (c) those creditors holding the fifty (50) largest unsecured claims against Debtors' estates (on a consolidated basis); (d) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. The Committee submits that,

in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

33.     No prior application has been made in this or any other court.

**Conclusion**

WHEREFORE, the Committee hereby respectfully requests that it be authorized to retain and employ BRG as its financial advisor effective as of February 14, 2023 and that BRG be paid such compensation as may be allowed by this Court, and for such other further relief as is deemed just and proper.

*[Remainder of page intentionally left blank]*

Dated:    March 16, 2023

*/s/ Gregory F. Pesce*

**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
David Turetsky
Michele J. Meises
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  cshore@whitecase.com
            philip.abelson@whitecase.com
            david.turetsky@whitecase.com
            michele.meises@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of
Unsecured Creditors*