**Exhibit B**

**Steele Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | ) ) | Case No. 23-10063 (SHL) |
| Debtors. | ) ) ) | Jointly Administered |

**DECLARATION OF BENJAMIN J. STEELE IN SUPPORT OF
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' APPLICATION FOR
ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION
OF KROLL RESTRUCTURING ADMINISTRATION LLC AS NOTICING AND
INFORMATION AGENT EFFECTIVE AS OF FEBRUARY 22, 2023**

I, Benjamin J. Steele, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Managing Director of Kroll Restructuring Administration LLC ("**Kroll**"),[2] whose principal office is located at 55 East 52nd Street, 17th Floor, New York, New York 10055. I am authorized to submit this declaration on behalf of Kroll.

2. I submit this declaration (the "**Declaration**") pursuant to sections 105(a), 1102(b)(3) and 1103 of title 11 of the United States Code (the "**Bankruptcy Code**"), in support of *The Official Committee of Unsecured Creditors' Application for Entry of an Order Authorizing the Employment and Retention of Kroll Restructuring Administration LLC as Noticing and Information Agent Effective as of February 22, 2023* (the "**Application**"), filed

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these chapter 11 cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC. There has not been any change in the company's leadership, ownership, or organizational structure.

contemporaneously herewith by the Committee.[3]

3. Kroll is extremely experienced in acting as an Information Agent for debtors and creditors, including cases such as: *In re TPC Group Inc.*, No. 22-10493 (CTG) (Bankr. D. Del. Aug. 11, 2022) [Docket No. 626]; *In re GBG USA Inc.*, No. 21-11369 (MEW) (Bankr. S.D.N.Y. Oct. 15, 2021) [Docket No. 305]; *In re Fieldwood Energy LLC*, No. 20-33948 (MI) (Bankr. S.D. Tex. Dec. 22, 2020) [Docket No. 691]; *In re Global Eagle Entertainment Inc.*, No. 20-11835 (JTD) (Bankr. D. Del. Oct. 5, 2020) [Docket No. 448]; *In re LATAM Airlines Group S.A.,* No. 20-11254 (JLG) (Bankr. S.D.N.Y. Aug. 23, 2021) [Docket No. 2994]; *In re The Hertz Corporation*, No. 20-11218 (MFW) (Bankr. D. Del. Dec. 11, 2020) [Docket No. 2064]; and *In re LSC Communications, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020) [Docket No. 328].

4. To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Kroll, nor any of its professionals, has any materially adverse connection to the Committee, the Debtors' creditors or other relevant parties. Kroll may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Kroll serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

5. Kroll has reviewed its electronic database to determine whether it has any relationships with the list of entities provided by the Debtors. Based on the results of such search, at this time, Kroll is not aware of any relationship that would present a disqualifying conflict of interest. Should Kroll discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Kroll will use reasonable efforts to promptly

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application or, if not defined in the Application, then the meaning ascribed to such term in the Information Motion.

file a supplemental declaration.

6. Certain of Kroll's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in this case. Such firms include: Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; Gibson, Dunn & Crutcher LLP; Willkie Farr & Gallagher LLP; KPMG LLP; PricewaterhouseCoopers LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC. Except as may be disclosed herein or in a previous declaration I made, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

7. Kroll is an indirect subsidiary of Kroll, LLC ("**Kroll Parent**"). Kroll Parent is the world's premier provider of services and digital products related to governance, risk and transparency. Within the Kroll Parent corporate structure, Kroll operates independently from Kroll Parent and its affiliates. As such, any relationships that Kroll and its affiliates maintain do not create an interest of Kroll's that is materially adverse to the Debtors' estates or any class of creditors or security holders. Kroll Parent is not currently identified on the Potential Parties in Interest list, but Kroll makes this disclosure out of an abundance of caution

8. As noted in the Application, Kroll currently serves as the Debtors' claims and noticing agent and administrative advisor. It is my understanding that the services to be provided by Kroll in its capacity as Information Agent to the Committee are akin to services provided by claims and noticing agents. Accordingly, Kroll does not believe that its existing roles in these

3

cases prevent it from being the Committee's Information Agent.

9. Kroll, as well as its personnel, has and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' chapter 11 cases. Kroll may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

10. Kroll, and its personnel in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Kroll or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest. All engagements where such firms represent Kroll or its personnel in their individual capacities are unrelated to these chapter 11 cases.

11. Based on the forgoing, I believe that Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code (and to the extent applicable to a retention by the Committee). Moreover, to the best of my knowledge, and based solely upon information provided to me by the Debtors and the Committee, and except as provided herein, neither Kroll nor any of its professionals hold or represent any interest materially adverse to the Debtors, their estates, their creditors, the Committee or other relevant parties. Kroll may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Kroll serves or has served in a neutral capacity as an agent or advisor for another Committee or chapter 11 debtor.

12. Kroll further declares that Kroll does not now have nor has it ever had any contract or agreement with XClaim Inc. or with any other party under which Kroll provides, provided, or will provide exclusive access to claims data and/or under which Kroll would be compensated for

4

claims data made available by Kroll.

13. Based upon the foregoing, I respectfully submit that the requirements for Kroll's retention by the Committee have been met.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 16, 2023

      /s/ *Benjamin J. Steele*
Benjamin J. Steele
Managing Director
Kroll Restructuring Administration LLC

# Exhibit 1

## Engagement Letter



**Kroll Restructuring Administration LLC Engagement Agreement**

This Agreement is entered into as of February 22, 2023 between Kroll Restructuring Administration LLC ("**Kroll**") and the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the chapter 11 cases (the "**Cases**") of Genesis Global Holdco, LLC and its affiliated debtors (collectively, the "**Debtors**") pending before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") [Case No. 23-10063].

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

    (a) Kroll agrees to provide the Committee with technology and consulting services regarding the Committee's involvement in the Cases, including but not limited to noticing service and hosting a website, responding to inquiries from creditors through chats and email correspondence (but not calls), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").
    (b) The Committee acknowledges and agrees that Kroll will often take direction from the Committee's representatives, employees, agents and/or professionals (collectively, the "**Committee Parties**") with respect to providing Services hereunder. The parties agree that Kroll may rely upon, and the Committee agrees to be bound by, any requests, advice or information provided by the Committee Parties to the same extent as if such requests, advice or information were provided by the Committee.
    (c) The Committee agrees and understands that Kroll shall not provide the Committee or any other party with legal advice.

2. **Rates, Expenses and Payment**

    (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Committee, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "**Rate Structure**"); provided, however, that Kroll will extend to the Committee the same discounts provided to the Debtors. The Committee agrees to seek reimbursement from the Debtors for reasonable out of pocket expenses incurred by Kroll in connection with providing Services hereunder.
    (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Committee may request separate Services or all of the Services.
    (c) Kroll will bill the Debtors and the Committee no less frequently than monthly. The Debtors and their estates will be solely responsible for paying Kroll's fees and expenses under this Agreement. The Committee shall use reasonable efforts to seek the payment of Kroll's fees and expenses from the Debtors. In no event shall the Committee, its Members, or its advisors be obligated or responsible for the payment of Kroll's fees and expenses under this Agreement. All invoices shall be due and payable upon receipt and shall be redacted for any confidential information of the Committee. Where an expense to be incurred is expected to exceed $5,000 (e.g., publication notice), Kroll may require advance or direct payment from



    the Debtors before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, a late charge shall be due equal to 1.5% of the total amount unpaid every 30 days.

(d) In case of a good faith dispute with respect to an invoice amount, the objecting party shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Debtors shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Committee or the Committee Parties.

(f) The Debtors shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Committee and the Debtors of such increases.

3. **Confidentiality**

(a) The Committee and Kroll agree to keep confidential all non-public documents, communications, records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder, including any draft website materials or content; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.  For the avoidance of doubt, Kroll shall not share any such information provided by the Committee with the Debtors or their advisors.

(b) If either party reasonably believes that it is legally required to disclose any confidential information (whether pursuant to an order from a governmental authority, regulatory request, subpoena, or similar process) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

(c) Kroll agrees to establish a screen between those primary client service and communications team members assisting the Committee with the Services hereunder and those team members assisting the Debtors with any other services related to the Cases.  Support team members, which provide data processing (i.e., claims input and review), mail processing, technological and legal services, and similar customary shared firm services, may provide services to both the Debtors and the Committee; provided, however, that communications personnel (including anyone receiving/monitoring creditor inquiries submitted to the Committee inbox) will be separate from the Debtors' team and dedicated to the Committee Services hereunder.



4.  **Property Rights**

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "**Property**") furnished by Kroll for itself or for use by the Committee hereunder.  Fees and expenses paid by the Debtors do not vest in the Debtors or the Committee any rights in such Property.  Such Property is only being made available for the Committee's use during and in connection with the Services provided by Kroll hereunder.

5.  **Term and Termination**

    (a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein).  "**Cause**" means (i) gross negligence or willful misconduct of Kroll that causes material harm to the Committee's efforts in the Cases, (ii) the failure of the Debtors to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of any retainer held by Kroll where Kroll reasonably believes it will not be paid.
    (b) If the Committee is terminated or disbanded by Bankruptcy Court order, this Agreement will be considered terminated within 30 days of that date.
    (c) If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Committee promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.
    (d) If this Agreement is terminated, the Debtors and their estates shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.
    (e) If this Agreement is terminated, Kroll shall coordinate with the Committee and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Debtors and their estates shall pay for such Services pursuant to the Rate Structure.

6.  **No Representations or Warranties**

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

7.  **Limitations of Liability**

Except as expressly provided herein, Kroll's liability to the Committee for any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses (collectively, "**Losses**"), unless due to Kroll's gross negligence or willful misconduct, shall be limited to the total amount paid by the Committee for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Kroll's liability to the Committee for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided

3



hereunder. In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

8. **Committee Data**

   (a) The Committee is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Committee Party submits for processing to Kroll and for the output of such information.
   (b) The Committee agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Committee has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.
   (c) Any data, storage media, programs or other materials furnished to Kroll by the Committee may be retained by Kroll until the Services provided hereunder are paid in full. The Debtors and their estates shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll. Any such disposal shall be in a manner requested by or acceptable to the Committee; provided that if the Committee has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Debtors for the expense of such disposition, after giving the Debtors and the Committee 30 days' notice. The Committee agrees to initiate and maintain backup files that would allow the Committee to regenerate or duplicate all programs, data or information provided by the Committee to Kroll.
   (d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Committee data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

9. **No Agency Relationship**

The Committee and Kroll are and shall be independent contractors of each other, and no agency, partnership, joint venture or employment relationship shall arise as a result of this Agreement.

10. **Force Majeure**

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, pandemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

11. **Choice of Law**

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

12. **Arbitration**

4



Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

13. **Integration; Severability; Modifications; Assignment**

   (a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.
   (b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.
   (c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Committee and an officer of Kroll.
   (d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Committee's consent.

14. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

15. **Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

    If to Kroll:    Kroll Restructuring Administration LLC
                          55 E 52nd Street, 17th Floor
                          New York, NY 10055
                          Attn:    Legal Department
                          Tel:     (212) 257-5450
                          Email:  [Legal@kbs.kroll.com](mailto:Legal@kbs.kroll.com)

    If to the Committee:    White & Case LLP
                          111 South Wacker Drive, Suite 5100
                          Chicago, IL 60606
                          Attn:    Gregory F. Pesce



|  |  |
|---|---|
|  | Tel:    (312) 881-5360 |
|  | Email: gregory.pesce@whitecase.com |
| If to the Debtors: | Genesis Global Holdco, LLC |
|  | 250 Park Avenue South, 5th Floor |
|  | New York, NY 10003 |
|  | Attn:   Arianna Pretto-Sakmann |
|  | Tel:    (646) 416-4571 |
|  | Email: arianna@genesistrading.com |
| With a copy to: | Cleary Gottlieb Steen & Hamilton LLP |
|  | One Liberty Plaza |
|  | New York, NY 10006 |
|  | Attn:   Jane VanLare |
|  | Tel:    (212) 225-2872 |
|  | Email: jvanlare@cgsh.com |

*[Signature page follows]*



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

_____

By:   Shira Weiner
Title:  General Counsel

**The Committee**

_____

By:
Title:

7



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Claim and Noticing Rates | |
| --- | --- |
| TITLE | HOURLY RATE |
| **Analyst** <br> The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $60 |
| **Technology Consultant** <br> The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 - $110 |
| **Consultant/Senior Consultant** <br> The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Consultants have between three and five years of experience. <br><br> The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Senior Consultants average over five years of experience. | $65 - $195 |
| **Director** <br> The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Kroll Restructuring Administration will serve in this role at this rate. Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 - $245 |

**About Kroll**
As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# RATES

Quality.
Partnership.
Expertise.
Innovation.

### Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
|---|---|
| Solicitation Consultant<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | $220 |
| Director of Solicitation<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Kroll Restructuring Administration's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | $245 |

### Printing & Noticing Services

| | |
|---|---|
| Printing | $0.10 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

**About Kroll**
As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Case Website | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Client Access** | |
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |
| **Data Administration and Management** | |
| *Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.* | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |
| **On-line Claim Filing Services** | |
| On-line claim filing | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services & Securities Eligibility Services** | |
| Securities Eligibility Services | Available on request |
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of EIN/TIN database | Standard rates |

**About Kroll**
As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

*/s/ Shira Weiner/*

By:  Shira Weiner
Title:  General Counsel

**The Committee**

*/s/ Amelia Alvarez/*

By: Amelia Alvarez
Title: UCC Member



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By: Shira Weiner
Title: General Counsel


**The Committee**

By: Richard R. Weston
Title: UCC Co-Chair