CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION SEEKING ENTRY**
**OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES AND RELATED**
**DEADLINES, (II) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH**
**RESPECT TO THE DEBTORS' SALE, AND (III) GRANTING RELATED RELIEF**

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and these cases, collectively, the "Chapter 11 Cases"), hereby submit this motion (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Bidding Procedures Order"):

(a) authorizing and approving the proposed bidding procedures attached as **Exhibit 1** to the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC ("GGC") (8564); Genesis Asia Pacific Pte. Ltd. ("GAP") (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

Proposed Bidding Procedures Order (the "Bidding Procedures"),[2] (b) establishing dates and deadlines relating to the potential sale (a "Sale") of equity in, or assets of, the Debtors' and certain of their non-Debtor subsidiaries (the "GGH Assets"), as well as non-Debtor affiliate Genesis Global Trading, Inc. ("GGT," together with the GGH Assets, the "Assets") and scheduling an auction (the "Auction"), if any, (c) approving the manner of notice of the Auction, attached as **Exhibit 2** to the Proposed Bidding Procedures Order (the "Sale Notice"), and (d) granting related relief. In support of this Motion, the Debtors rely on the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration") and the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration" and, together with the Leto Declaration and Aronzon Declaration, the "First Day Declarations"), which were filed with the Court on or shortly after the Petition Date. In further support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). This matter is a core

---

[2]        Capitalized terms not defined herein shall have the meanings ascribed to them in that certain Restructuring Term Sheet (the "Restructuring Term Sheet") attached as Exhibit A to the *Notice of Filing of the Restructuring Term Sheet*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Feb. 10, 2023) [ECF. No. 80], the Bidding Procedures attached hereto as Exhibit 1 to the Bidding Procedures Order or, if not defined therein, in the First Day Declarations.

proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are sections 105, 363, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 3016, 3017, 3018, 3020, 6004, 6006, 9006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 3017-1, 3018-1, 3020-1, 6004-1, 6006-1 and 9006-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

## **BACKGROUND**

4.     Holdco (together with the other Debtors and Holdco's non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate GGT provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services.  Holdco is a sister company of GGT, and both Holdco and GGT are 100% wholly owned by Digital Currency Group, Inc. ("DCG").  Additional information regarding the Debtors' businesses, capital structure and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the First Day Declarations.

5.     On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only

and are jointly administered pursuant to Bankruptcy Rule 1015(b), ECF No. 37.  No trustee or examiner has been appointed in the Chapter 11 Cases.  On February 3, 2023, an official committee of unsecured creditors (the "Committee") was appointed in these cases, ECF No. 55.

6.    Over the past several months, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups and DCG to explore strategic solutions.  On February 10, 2023, the Debtors filed the Restructuring Term Sheet, which reflects an agreement in principle with DCG and an ad hoc group of certain GGC creditors holding or representing over $2 billion in claims.  The Restructuring Term Sheet contemplates, among other things, a dual path "toggle structure" whereby the Debtors will engage in a marketing and sale process to monetize GGT (a non-debtor that is wholly owned by DCG), Holdco (a Debtor that is wholly owned by DCG) and Holdco's subsidiaries (including Debtors and non-Debtors that are indirectly owned by DCG) and their respective assets, comprising the Company's business (the "Genesis Platform").  The sale will be effectuated pursuant to a chapter 11 plan and the proceeds will be used to pay the Debtors' creditors on a pro rata basis in accordance with the allocated value of the transactions.  Simultaneously, the Debtors will pursue confirmation of the *Joint Chapter 11 Plan* (as it may be further amended, supplemented, or modified from time to time, the "Plan") pursuant to which any unsold Assets may be restructured through an Equitization or Wind-Down.[3]

7.    By this Motion, the Debtors seek to establish formal Bidding Procedures to set the guidelines for the Sale.  The Debtors have determined, in their business judgment and in consultation with the Required Consenting GGC Creditors, the Ad Hoc Group Advisors and the Committee (collectively, the "Consultation Parties") and with the consent of DCG, as it relates to

---

[3]    The Debtors intend to file a motion seeking to establish a schedule related to Plan solicitation and approval process in short order.

GGT, that the Bidding Procedures represent the best path forward to effectuate an efficient Sale process that maximizes recoveries to creditors of the Debtors. These Bidding Procedures are designed to allow Potential Bidders (as defined in the Bidding Procedures) adequate time to review the data room and submit bids, as well as adequate time for the Debtors to evaluate the bids. Further, these Bidding Procedures will minimize time and expense in these Chapter 11 Cases by providing the Debtors substantial flexibility with respect to the structure of any Sale and allowing the Debtors to toggle between the dual paths contemplated by the Restructuring Term Sheet.

## RELIEF REQUESTED

8.      By this Motion, the Debtors request entry of an order (a) authorizing and approving the Bidding Procedures, (b) establishing certain dates and deadlines relating to the Sale and scheduling an Auction, if any, (c) approving the manner of the Sale Notice, and (d) granting related relief.

## THE PROPOSED BIDDING PROCEDURES AND SALE SCHEDULE

A.    **The Bidding Procedures**

9.      The Debtors are seeking approval of the Bidding Procedures to establish an open process for the solicitation, receipt, and evaluation of bids on an efficient timeline. The Bidding Procedures provide that parties must execute confidentiality agreements in accordance with the Bidding Procedures in order to gain access to the virtual data room throughout the sale process. The Debtors and DCG have agreed that DCG shall have all final decision-making power regarding the Sale process and Sale transaction terms relating to non-Debtor GGT. Accordingly, DCG shall have prior consent rights on all aspects of the Bidding Procedures and Sale as they relate to GGT, and such consent rights shall apply to all future proposed amendments thereto.

10.    These Bidding Procedures were designed by the Debtors, with assistance from the Debtors' proposed investment banker, Moelis & Company LLC ("Moelis"), and in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, to garner competitive bids from qualified bidders on an efficient timeline.  The timeline set forth in the Bidding Procedures is intended to give Potential Bidders an appropriate length of time to submit bids and for the Debtors, in consultation with the Consultation Parties and DCG (solely with respect to GGT) to have sufficient time to evaluate these bids and for the Debtors to hold an Auction, if necessary.  The Bidding Procedures describe, among other things, (i) the procedures for interested parties to access diligence, (ii) the manner in which bidders and Bids become "qualified," (iii) the receipt and negotiation of Bids received, (iv) the Auction process, (v) the selection and approval of any Successful Bidder(s), (vi) the potential designation of a Stalking Horse Bidder and related Bid Protections and (vii) the deadlines with respect to the foregoing.

11.    The Bidding Procedures are attached as **Exhibit 1** to the Proposed Bidding Procedures Order.  Accordingly, the Bidding Procedures are not restated in their entirety herein. Generally speaking, the Bidding Procedures establish the following, among other things: [4]

(a) the availability of, access to, and conduct during due diligence by Acceptable Bidders (*see* Bid. Proc., at ¶ E);

(b) the requirements that Potential Bidders must satisfy to participate in the bidding process and become "Acceptable Bidders" (*see* Bid. Proc., at ¶ F);

---

[4]    This summary is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Bidding Procedures, the Bidding Procedures shall govern.  Defined terms in this section A are defined in the Bidding Procedures.

(c)   the deadline and criteria by which the Debtors may select, in consultation with the Consultation Parties and consent of DCG as it relates to GGT, one or more Acceptable Bidders to act as a Stalking Horse Bidder and may provide customary Bid Protections to such Stalking Horse Bidder (*see* Bid. Proc., at ¶ H);

(d)   the deadlines and requirements for submitting competing bids and the method and criteria by which such competing bids are deemed to be "Qualified Bids" sufficient to trigger an Auction, the terms and conditions that must be satisfied, and the deadline that must be met by any Acceptable Bidder to be considered a "Qualified Bidder," with the consent of DCG as it relates to GGT (*see* Bid. Proc., at ¶¶ I, J);

(e)   the manner in which Qualified Bids will be evaluated by the Debtors, and DCG, as it relates to GGT, in consultation with the Consultation Parties, to determine the initial minimum overbid for the Auction (*see* Bid. Proc., at ¶ K);

(f)   the conditions for having an Auction and procedures for conducting the Auction, if any, with the consent of DCG as it relates to GGT (*see* Bid. Proc., at ¶ M);

(g)   the criteria by which the Successful Bidder(s) will be selected by the Debtors, in consultation with the Consultation Parties and the consent of DCG as it relates to GGT (*see* Bid. Proc., at ¶ N); and

(h)   various other matters relating to the sale process generally, including the designation of the back-up bid, the return of any good faith deposits to Qualified Bidders that submit Qualified Bids, and certain reservations of rights (*see* Bid. Proc., at ¶¶ O–P).

12.     Significantly, the Bidding Procedures provide the framework for the Debtors to conduct a transparent, efficient Sale process in a manner consistent with the Debtors' fiduciary obligations to maximize recovery for the Debtors' creditors.

## B.    The Sale Schedule

13.     In addition to seeking approval of the Bidding Procedures, the Debtors are seeking approval of the following proposed timeline for the Sale (the dates set forth below, the "Sale Schedule").  The Debtors believe that these timelines establish a clear and open process for the solicitation, receipt, and evaluation of third-party bids for the Assets and are essential for the Debtors to preserve the value of their estates and emerge expeditiously from these Chapter 11 Cases.

| Action | Description | Deadline |
|---|---|---|
| Bidding Procedures Hearing | The hearing before the Court to consider this Motion | March 30, 2023 |
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received | May 5, 2023 |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures | June 15, 2023 |
| Stalking Horse Designation Deadline | The deadline to designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any | June 19, 2023 |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom | June 27, 2023 |
| Deadline to file the Designation of Successful Bid | The deadline to file a notice designating the Successful Bid and Successful Bidder, as well as the Back-up Bid and Back-up Bidder | One business day following the conclusion of the Auction |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline") | July 7, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |
| Sale Hearing (subject to the Court's availability) | The Sale will be implemented under the Plan and shall be approved at the Confirmation Hearing | July 14, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |

14.     In the event the Sale Hearing and the hearing confirming the Debtors' Plan (the "Confirmation Hearing") are held separately and the Assets (including GGT) are sold prior to the Confirmation Hearing, the proceeds of the sale of GGT[5] shall be held for the sole benefit of DCG and treated in accordance with the Restructuring Term Sheet upon confirmation of the Plan or otherwise transferred immediately to DCG if a Plan is not confirmed in these Chapter 11 Cases within 180 days of consummation of a Sale of GGT.

15.     Additional requirements related to approval and consummation of the Sale (including contract and lease assumption, assumption and assignment, and rejection procedures and objection deadlines) under a chapter 11 plan will be described in further detail in a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan.

C.     **Form and Manner of Sale Notice**

16.     The Auction, if needed, will be held on June 27, 2023 at 10:00 a.m. prevailing Eastern Time (or such other date as selected by the Debtors, in consultation with DCG) at the offices of counsel to the Debtors: Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom.

17.     The Debtors propose the following notice and objection procedures with respect to the potential Sale and Auction, and request that notice of the potential Sale and Auction and the Proposed Bidding Procedures Order be deemed adequate and sufficient if:

(a) by not later than three (3) days after entry of the Proposed Bidding Procedures Order, the Debtors shall serve or cause to be served by first-class mail, postage

---

[5]     The allocation of value for the sale of GGT shall be agreed upon by DCG and the Debtors or by order of the Court.

prepaid, copies of the Bidding Procedures Order, the Bidding Procedures, and the Sale Notice on the following parties or their respective counsel, if known: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Ad Hoc Group of Genesis Lenders (as defined in the Restructuring Term Sheet); (iii) all creditors holding secured claims against the Debtors' estates; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1; and

(b) by not later than seven (7) days after the mailing date, the Debtors shall publish a notice (the "<u>Publication Notice</u>"), substantially similar to the Sale Notice (or a summary thereof), in the national edition of [The New York Times and USA Today].

### **<u>BASIS FOR RELIEF</u>**

A.    **The Bidding Procedures Are Fair, Designed to Maximize Recovery for the Debtors' Creditors, and Consistent with the Debtors' Reasonable Business Judgment.**

18.    Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1).   The Debtors' business judgment is entitled to substantial deference with respect to the Bidding Procedures.  *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, *appeal dismissed* 3 F. 3d 49 (2d Cir. 1993), 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that the business judgment rule applies to bidding incentives); *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under [Section 363], courts require the [Debtor] to show that a sound business purpose justifies such actions.'  If the [Debtor's] decision evidences

a sound business purpose, then the Bankruptcy Court should approve the sale.") (quoting *In re Montgomery Ward Holding Corp*., 242 B.R. 147, 153 (D. Del. 1999)); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification.'") (internal citations omitted).

19.    The Bidding Procedures are designed to encourage competitive bidding and thereby maximize the value of the Sale and potential recoveries. *See In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (noting that directors have a "duty to encourage bidding" and that bidding protections can "be necessary to discharge the directors' duties to maximize value"); *see also In re Metaldyne Corp*., 409 B.R. 661, 668 (Bankr. S.D.N.Y. 2009) (remarking that "it is the overarching objective of sales in bankruptcy to maximize value to the estate"). Bidding procedures that encourage competitive bidding are recognized by courts to be consistent with the fundamental goal of maximizing the value of a debtor's estate. *See In re Integrated Res. Inc*., 147 B.R. at 659 (observing that sale procedures "encourage bidding" and "maximize the value of the debtor's assets").

20.    The Bidding Procedures provide for an orderly, uniform, and competitive process through which interested parties may submit offers to purchase the Assets. The Debtors, with the assistance of their advisors, in consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT, have structured the Bidding Procedures to promote active bidding by interested parties and to reach the highest or otherwise best offer reasonably available for the Assets. Additionally, the Bidding Procedures will allow the Debtors to conduct the Auction, if necessary, in a fair and transparent manner that will encourage participation by financially capable bidders, with demonstrated ability to timely consummate a Sale of some or all of the Assets. The

Bidding Procedures provide the Debtors, in consultation with Consultation Parties, and DCG, as it relates to GGT, with an adequate opportunity to consider competing bids and to select the highest or otherwise best offer for the Assets—as well as to select another bidder that will provide a safety net should the successful bidder(s) fail to close the Sale.

21.    Moreover, an orderly and expeditious sale process is critical to preserve and realize the Debtors' value and maximize recoveries for the Debtors' creditors.  In formulating the Bidding Procedures, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to quickly and efficiently run a sale process.  The Bidding Procedures provide for the marketing of the Debtors' assets and for the consummation of a Sale under the Plan (subject to approval of the relevant procedures, dates and other requirements for confirmation of the Plan).

22.    Courts in this and other districts have approved procedures substantially similar to the proposed Bidding Procedures.  *See, e.g.*, *In re BlockFi Inc.*, Case No. 22-19361 (MBD), Dkt. No. 441 (Bankr. N.J. Jan. 30, 2023); *In re Times Square JV LLC*, Case No. 22-11715 (JPM), Dkt. No. 110 (Bankr. S.D.N.Y, Jan. 19, 2023); *In re Celsius Network LLC*, Case No. 22-10964 (MG), Dkt. No. 1272 (Bankr. S.D.N.Y. Nov. 2, 2022); *In re Voyager Digital Holdings, Inc.,* Case No. 22-10943 (MEW), Dkt. No. 248; *In re Fusion Connect, Inc.*, Case No. 19-11811 (SMB), Dkt. No. 164 (Bankr. S.D.N.Y. July 3, 2019); *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG), Dkt. No. 456 (Bankr. S.D.N.Y. Apr. 23, 2019); *In re Sears Holdings Corp.*, Case No. 18-23538 (RDD), Dkt. No. 816 (Bankr. S.D.N.Y. Nov. 19, 2018).  Accordingly, the Bidding Procedures should be approved.

B.    **The Bid Protections Are Necessary and Appropriate and Should Be Approved**

23.    In the event the Debtors seek to appoint a Stalking Horse Bidder, the Debtors seek

authority to offer certain customary Bid Protections.  Approval of bid protections, such as the

Breakup Fee and Expense Reimbursement contemplated in the Bidding Procedures, in connection

with the sale of significant assets is analyzed under the business judgment standard and courts

routinely deem bid protections appropriate in chapter 11 cases.  *See In re Integrated Res*., 147 B.R.

at 657–58 (holding that in evaluating bid protections, courts should employ the business judgment

rule); *In re 995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that the

business judgment standard protects breakup fees and other provisions negotiated in good faith).

In particular, courts in this jurisdiction consider whether: (a) the relationship of the parties who

negotiated the breakup fee was tainted by self-dealing or manipulation, (b) the fee encourages,

rather than hampers, bidding and (c) the amount of the fee is unreasonable relative to the proposed

purchase price.  *See In re Genco Shipping & Trading Ltd*., 509 B.R. 455, 465 (Bankr. S.D.N.Y

2014) (citing *In re Metaldyne Corp*., 409 B.R. at 670); *In re Integrated Res., Inc.*, 147 B.R. at 657-

58.  In this instance, the Debtors will have the flexibility to award a bidder with a Breakup Fee of

up to 3% of the Purchase Price of the Assets being sold.  This Breakup Fee encourages a

competitive bidding process and is within the percentage routinely approved by courts in this

jurisdiction.  The Bid Protections will not be awarded to any Stalking Horse Bidder that is an

affiliate or insider of the Debtors.

24.    First, the Debtors decided to include authority to provide the Bid Protections

because the Debtors, at an arms-length from any Potential Bidders, determined the Bid Protections,

if granted, may benefit the Debtors' estates by encouraging competitive bidding.  Specifically, the

Breakup Fee is included in the Bidding Procedures as a good faith effort by the Debtors to induce

a Stalking Horse Bid, if any exists, to act as an opening benchmark for the sale process to ensure that the Debtors receive the highest and best offer for the Assets, which is in the interest of the Debtors' creditors and the estates, and consistent with their fiduciary duties. Courts recognize this justification as a basis to include a breakup fee. *See Integrated Res.*, 147 B.R.at 659–60 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . In fact, because the directors of a corporation have a duty to encourage bidding, breakup fees can be necessary to discharge the directors' duties to maximize value.").

25.    Second, bidding incentives such as the Breakup Fee and Expense Reimbursement, are commonly authorized by courts in connection with sales under chapter 11 because such protections encourage, rather than hamper, bidding. *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. at 28 (internal quotation marks and citation omitted) (noting that bid protections "may be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking."); *see also In re Barneys New York, Inc*., Case No. 19-36300, Dkt. No. 156 (Bankr. S.D.N.Y. Aug. 22, 2019) (approving breakup fee and expense reimbursement); *In re Ditech Holding Corp*., Case No. 19-10412, Dkt. No. 456 (Bankr. S.D.N.Y. Apr. 23, 2019) (same). In this case, the Bid Protections will encourage bidding because the sale process requires Potential Bidders to invest time and resources in completing due diligence. The Bid Protections will provide assurance to Potential Bidders that the Debtors are pursuing a competitive sale process. Further, under the Bidding Procedures, the Debtors are authorized but not obligated to provide the Breakup Fee and Expense Reimbursement. This optionality protects the Debtors' estates by allowing the Debtors to provide the Bid Protections only if the Debtors determine in their business judgment that such protections are necessary.

26.     Third, the Bid Protections are also fair and reasonable in amount under the circumstances.  The Breakup Fee is up to 3% of the total purchase price and the Expense Reimbursement will not exceed an aggregate amount of $50,000.  Courts in this jurisdiction have found such percentages to be acceptable.  *See, e.g.*, *In re Hooper Holmes, Inc. d/b/a Provant Health*, Case No. 18-23302 (RDD) (Bankr. S.D.N.Y. Sept. 20, 2018) (authorizing stalking horse breakup fee of 3% and expense reimbursement); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. May 7, 2018) (same); *In re Avaya, Inc.*, Case No. 17-10089 (SMB) (Bank. S.D.N.Y. Apr. 5, 2017) (same); *In re Hostess Brands, Inc.*, Case No. 12-22052 (Bankr. S.D.N.Y. 2013) (authorizing stalking horse breakup fee of 3.5% and expense reimbursement); *In re Global Crossing Ltd.*, Case No. 02-40187 (Bankr. S.D.N.Y. 2002) (authorizing stalking horse breakup fee of 4% and expense reimbursement).  Based on the above, the Bid Protections included in the Bidding Procedures satisfy the business judgment standard.

27.     Importantly, in the event that the Debtors seek to select one or more bidders to act as the Stalking Horse Bidder, all parties in interest, including the Committee, will have the opportunity to object to the selection of the Stalking Horse Bidder and/or the Bid Protections proposed to be offered to the Stalking Horse Bidder.  The Debtors will file a notice (a "Stalking Horse Designation Notice") identifying each such Stalking Horse Bidder, the material terms of the Stalking Horse Bid (including the Purchase Price and the Assets subject to such Stalking Horse Bid), and the amount and terms of any Bid Protections, and setting a hearing before the Court for a date that is seven (7) days after the filing of the Stalking Horse Designation Notice (the "Stalking Horse Hearing"), subject to the Court's availability.  Parties in interest will have three (3) days from the filing of the Stalking Horse Designation Notice to object to the Stalking Horse Bidder and/or the Bid Protections.

23-10063-shl   Doc 133   Filed 03/16/23   Entered 03/16/23 23:01:22   Main Document
Pg 16 of 56

C.      **The Form and Manner of Sale Notice Should Be Approved**

28.      The Debtors will serve the Sale Notice in accordance with the Proposed Bidding Procedures Order.  The notice of the proposed Sale to be provided by the Debtors as set forth in **Exhibit 2** to the Proposed Bidding Procedures Order sufficiently describes the process through which the Debtors seek to sell the Assets pursuant to the Sale.

29.      Several sections of the Bankruptcy Code and Bankruptcy Rules dictate the sufficiency of notice and adequacy of service.  *See* Bankruptcy Rules 2002 and 6004.

Bankruptcy Rule 2002.  Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to such a sale.  The Sale Notice constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 and Local Rule 2002-1.  Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the notice of the Sale Notice.

Bankruptcy Rules 6004.  Bankruptcy Rule 6004 requires that notices of sales of property outside the ordinary course of business comply with Bankruptcy Rule 2002.  As set forth above, the Debtors have complied with Bankruptcy Rule 2002.

Procedural Due Process.  The notices of this Motion being provided as described herein, including the notice being provided by publication, are "reasonably calculated" to apprise interested parties of the pendency of the matter and to afford them an opportunity to object. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950).  Parties in interest have been and should be found to have been afforded adequate notice of this Motion, the Bidding Procedures, the Sale Schedule and the other relief requested herein.

30.      The Debtors submit that the notice to be provided, including by publication of the Sale Notice in the national edition of [The New York Times and USA Today] is reasonable, appropriate and constitutes good and adequate notice of the proposed Sale and Auction, if any, and the procedures and proceedings related thereto and therefore should be approved by the Court.

## **NOTICE**

31.    Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Ad Hoc Group of Genesis Lenders; (iii) all creditors holding secured claims against the Debtors' estates; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

32.    No prior motion for the relief requested herein has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) enter the Proposed Bidding Procedures Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated:  March 16, 2023          CLEARY GOTTLIEB STEEN & HAMILTON LLP
        New York, New York

                */s/ Sean A. O'Neal*

Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for the Debtors
and Debtors-in-Possession*

**<u>EXHIBIT A</u>**

**Proposed Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**ORDER AUTHORIZING THE DEBTORS' MOTION SEEKING ENTRY
OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES AND RELATED
DEADLINES, (II) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH
RESPECT TO THE DEBTORS' SALE, AND (III) GRANTING RELATED RELIEF**

Upon the consideration of the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, and (III) Granting Related Relief* (the "Motion")[2] and the First Day Declarations; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Capitalized terms not described herein shall have the meanings ascribed to them in the Motion.

Debtors, their estates, their creditors and other parties in interest; and upon all of the proceedings

had before the Court; and after due deliberation and sufficient cause appearing therefor,

### THE COURT HEREBY FINDS THAT

A.      The Court has jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      The bases for the relief requested in the Motion are sections 105(a), 363, 503, and

507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 3016, 3017, 3018, 3020, 6004,

6006(a), 9006, and 9007, and Local Rules 2002-1, 3017-1, 3018-1, 3020-1, 6004-1, 6006-1, and

9006-1, and the *Guidelines for the Conduct of Asset Sales* established and adopted by the Court on

November 19, 2009 pursuant to General Order M-383, and as updated on June 17, 2013.

C.      The Debtors have articulated good and sufficient reasons for authorizing and

approving the Bidding Procedures attached hereto as **Exhibit 1**, which are fair, reasonable, and

appropriate under the circumstances and designed to maximize the recovery on, and realizable

value of, the Debtors' enterprise and GGT, including with respect to the proposed procedures for

providing Bid Protections as determined by the Debtors in an exercise of their business judgment,

and upon consultation with the Consultation Parties and consent of DCG, as it relates to GGT,

subject to, and in accordance with, the procedures contained in this Bidding Procedures Order and

the Bidding Procedures.

D.      The findings and conclusions set forth herein constitute the Court's findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding

pursuant to Bankruptcy Rule 9014.  To the extent that any of the preceding findings of fact

constitute conclusions of law, they are adopted as such.  To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

E.      The Debtors' proposed notice of the Motion, the Bidding Procedures, the Hearing and the proposed entry of this Bidding Procedures Order is (a) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (b) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and (c) adequate and sufficient under the circumstances of these Chapter 11 Cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Bidding Procedures Order has been afforded to following parties and/or their respective counsel, as applicable: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Ad Hoc Group of Genesis Lenders; (iii) all creditors holding secured claims against the Debtors' estates; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.

F.      The Bidding Procedures comply with the requirements of Local Rule 6004-1.

G.      The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and certain dates and deadlines related thereto, and no other or further notice of the Auction shall be required.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.     Any objections, statements and reservations of rights to the relief requested in the Motion that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are OVERRULED and DENIED on the merits with prejudice.

A.     **Important Dates and Deadlines**

3.     The Sale Schedule as set forth below and all other dates and deadlines set forth in the Bidding Procedures are approved, subject to modification, in consultation with the Consultation Parties, in accordance with the Bidding Procedures; *provided* that the Debtors shall provide notice of such modified dates in accordance with the terms of this Bidding Procedures Order.

| Action | Description | Deadline |
|---|---|---|
| Bidding Procedures Hearing | The hearing before the Court to consider this Motion | March 30, 2023 |
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received | May 5, 2023 |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures | June 15, 2023 |
| Stalking Horse Designation Deadline | The deadline to designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any | June 19, 2023 |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom | June 27, 2023 |
| Deadline to file the Designation of Successful Bid | The deadline to file a notice designating the Successful Bid and Successful Bidder, as well as the Back-up Bid and Back-up Bidder | One business day following the conclusion of the Auction |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline") | July 7, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |
| Sale Hearing (subject to the Court's availability) | The Sale will be implemented under the Plan and shall be approved at the Confirmation Hearing | July 14, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |

B.      **The Bidding Procedures.**

4.      The Bidding Procedures, substantially in the form attached hereto as __Exhibit 1__ and incorporated as though fully set forth herein, are hereby approved in their entirety, and the Debtors are authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures.  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale.  Any party desiring to bid on one or more individual assets or all or substantially all of the Assets shall comply with the Bidding Procedures and this Bidding Procedures Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

C.      **Stalking Horse and Bid Protections.**

5.      The Bid Protections, including: (a) the Breakup Fee in an amount not to exceed three percent (3%) of the cash portion of the proposed Purchase Price; and (b) the Expense Reimbursement shall be deemed approved on the terms set forth in the Bidding Procedures and the Debtors are authorized, but not directed, to incur and pay such Bid Protections to any or no Stalking Horse Bidder, in an exercise of their business judgment, in consultation with the Consultation Parties, without further action or order by the Court; *provided* that the Bid Protections shall only be payable upon consummation of an alternative transaction.

6.      No person or entity, other than a Stalking Horse Bidder (that is not an insider or affiliate of the Debtors), shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

7.      Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement or order of this Court.

D.    **The Sale Notice**

8.      The Sale Notice, substantially in the form attached hereto as **<u>Exhibit 2</u>**, is hereby approved.  As soon as reasonably practicable following the entry of this Bidding Procedures Order, but in no event later than five business days, the Debtors will cause the Bidding Procedures Order, the Bidding Procedures and the Sale Notice to be served by first-class mail upon: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Ad Hoc Group of Genesis Lenders; (iii) all creditors holding secured claims against the Debtors' estates; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. In addition, by no later than seven (7) days following the mailing date, the Debtors shall publish the Sale Notice, with any modifications necessary for ease of publication, once in the national edition of [The New York Times and USA Today], to provide notice to any other potential interested parties, and post the Sale Notice on the Debtors' restructuring website at https://restructuring.ra.kroll.com/genesis.

E.    **The Auction**

9.      The date and time of the Auction, if needed, is June 27, 2023 at 10:00 a.m. prevailing Eastern Time, which time may be adjourned or extended by the Debtors in consultation with the Consultation Parties and DCG, as it relates to the sale of GGT, upon written notice to the Court.  The Auction will be held at the offices of counsel to the Debtors:  Cleary Gottlieb Steen &

Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom.   The

Debtors shall send written notice of the date, time, and place of the Auction to the Qualified

Bidders no later than two business days before such Auction and will post notice of the date, time,

and place of the Auction no later than two business days before such Auction on the docket for

these Chapter 11 Cases and on the website of the Debtors' notice, claims, and solicitation agent,

Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/genesis.   For the

avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-

overlapping material portions of the Debtors' Assets.

F.     **Miscellaneous**

10.     Notwithstanding anything to the contrary in the Motion, this Bidding Procedures

Order, or any findings announced at the hearing, nothing in the Motion, this Bidding Procedures

Order, or announced at the hearing constitutes a finding under the federal securities laws as to

whether crypto tokens or transactions involving crypto tokens are securities, and the right of the

United States Securities and Exchange Commission or the Committee to challenge transactions

involving crypto tokens on any basis are expressly reserved.

11.     The Court, at the request of the Debtors (with consent of DCG, as it relates to GGT)

and subject to its availability, may modify the dates of and adjourn any hearing set by this Bidding

Procedures Order without further Order of this Court, *provided* that the Debtors will serve notice

to all requisite parties informing them of such modification.

12.     Subject to paragraph 3, the Debtors may, in consultation with the Consultation

Parties and with consent of DCG, as it relates to GGT, continue or adjourn the Auction at any time,

re-open the Auction at any time prior to the deadline to file the notice designating the Successful

Bidder, and otherwise modify any of the deadlines set forth herein; *provided* that the Debtors will serve notice to all requisite parties informing them of such action.

13.     In the event the Sale Hearing and Confirmation Hearing are held separately and the Assets (including GGT) are sold prior to the Confirmation Hearing, the proceeds of the sale of GGT (the value allocation of which shall be agreed upon by the Debtors and DCG or by order of the Court) shall be held for the sole benefit of DCG and treated in accordance with the Restructuring Term Sheet upon confirmation of the Plan or otherwise transferred immediately to DCG if a Plan is not confirmed in these Chapter 11 Cases within 180 days of consummation of a Sale of GGT.

14.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order shall not diminish or impair the effectiveness or enforceability of such a provision.

15.     In the event of any inconsistencies between this Bidding Procedures Order and the Motion and/or the Bidding Procedures, this Bidding Procedures Order shall govern in all respects.

16.     The Debtors may modify any Bid Deposit, upon consultation with the Consultation Parties and with consent of DCG, as it relates to GGT, as necessary or appropriate, based on the Assets being sold.

17.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Bidding Procedures Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Bidding Procedures Order.

18.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

19.     All time periods set forth in this Bidding Procedures Order shall be calculated in

accordance with Bankruptcy Rule 9006(a).

20.     This Court shall retain exclusive jurisdiction with respect to all matters arising from

or related to the implementation, interpretation or enforcement of this Bidding Procedures Order.

Dated: _____, 2023
       White Plains, New York                   _____
                                       The Honorable Sean H. Lane
                                       United States Bankruptcy Judge

<u>**Exhibit 1**</u>

**Bidding Procedures**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT AND ANALYSIS
OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS**

On January 19, 2023 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" and the cases, the "Chapter 11 Cases"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the Bankruptcy Court for the Southern District of New York (the "Court").

On March 16, 2023, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Deadlines, (II) Scheduling the Hearings and Objection Deadlines with Respect to the Debtors' Sale, and (III) Granting Related Relief* [Docket No. [[•]]] (the "Motion")[2] seeking, among other things, the entry of an order approving these bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

23-10063-shl   Doc 133   Filed 03/16/23   Entered 03/16/23 23:01:22   Main Document
Pg 31 of 56

process by which the Debtors are authorized to solicit the highest or otherwise best bids (each, a "Bid") and conduct an auction (the "Auction") for the sale (the "Sale") of equity in, or assets of, the Debtors and certain of their affiliates, including Genesis Global Trading, Inc. (collectively, the "Assets").

The Sale, if any, will be implemented pursuant to a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan") (subject to approval of the relevant procedures, dates, and other requirements for confirmation of the Plan).

Copies of the Bidding Procedures Order, the Bidding Procedures, and any other related documents can be viewed and/or obtained: by (i) accessing the Court's website at www.nysb.uscourts.gov or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, at https://restructuring.ra.kroll.com/genesis/ or by calling +1 888-524-2017.   Note that a PACER password is needed to access documents on the Court's website.

A.    **Overview of the Marketing Process and Assets to Be Sold.**

On February 10, 2023, the Debtors filed the Restructuring Term Sheet, which contemplates, among other things, a marketing and sales process to maximize the value of any disposition of Genesis Global Trading, Inc. ("GGT," a non-debtor owned by Digital Currency Group, Inc. "DCG"), Genesis Global Holdco, LLC (a Debtor owned by DCG) ("Holdco") and Holdco's subsidiaries (indirectly owned by DCG) and their respective assets comprising the Genesis Platform.  The Debtors are marketing for Sale and will consider Bids: (i)(A) for all or substantially all of the Genesis Platform ("All Assets") to a Successful Bidder (as defined below) or (B) to the extent that, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties (as defined below) separating the Assets into more than one potential Sale is in the best interest of their estates, for subsets of the Assets (each, an "Asset Package") to two or more Successful Bidder(s); and (ii) in the form of a reorganization or acquisition of equity interests in the Debtors and certain non-debtor affiliates, or a merger or other combination with one or more Successful Bidders.  Additionally, the Debtors may, in their reasonable business judgment and in consultation with the Consultation Parties, consummate a Sale(s) of any Asset Package(s) with consent of DCG, as it relates to GGT, and also pursue the Equitization (as defined in the Restructuring Term Sheet) with respect to the remaining Assets that are not subject to such Sale(s).  References to the "Confirmation Hearing" (as defined below) shall mean the hearing to confirm the Plan including the Equitization provisions set forth therein and the plan sale provisions, if applicable.

The Debtors shall determine, in consultation with the Required Consenting GGC Creditors, the Ad Hoc Group Advisors, and the Committee (each as defined in the Restructuring Term Sheet and, collectively, the "Consultation Parties"), together with the consent of DCG, as it relates to GGT, whether a Sale, a Wind-Down, an Equitization, or another course of action represents the most value maximizing disposition of the Genesis Platform.  If the Debtors do not receive any Qualified Bid (or any combination of Bids for separate Asset Packages that, when taken together, would constitute a single Qualified Bid) by the Bid Deadline (each as defined below) that is acceptable to the Debtors, the Debtors may, in consultation with the Consultation Parties and with consent of DCG, as it relates to GGT, cancel the Auction.  The

Debtors reserve their rights, subject to prior written consent of DCG as it relates to GGT and in consultation with the Consultation Parties and subject to the terms of the Bidding Procedures Order, to (i) modify, change or extend the deadlines set forth in these Bidding Procedures; (ii) modify bidding increments; (iii) adjourn, reschedule or cancel the Auction; withdraw from the Auction any or all of the Assets at any time prior to or during the Auction; or (v) cancel the Sale process or, if the Debtors determine, in consultation with the Consultation Parties, that it will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties and not be inconsistent in any material respect with any Court order, modify these Bidding Procedures at any time or impose, at or prior to the Auction(s), additional customary terms and conditions on the sale of the Assets after consultation with the Consulting Parties (*provided* that the Debtors may not increase the Bid Protections without further approval of the Court). The Debtors also reserve their rights, in consultation with the Consultation Parties, to adjourn the Sale Hearing by an announcement of the adjourned date at a hearing before the Court or by filing a notice on the Court's docket. For the avoidance of any doubt, notwithstanding anything to the contrary herein, no party that submits an Indication of Interest or Bid shall have any consultation rights hereunder.

B.    **Key Dates and Deadlines.**

The key dates and deadlines for the bidding and sale of the Assets are as follows:

| Action | Description | Deadline |
|---|---|---|
| Bidding Procedures Hearing | The hearing before the Court to consider this Motion | March 30, 2023 |
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received | May 5, 2023 |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures | June 15, 2023 |
| Stalking Horse Designation Deadline | The deadline to designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any | June 19, 2023 |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom | June 27, 2023 |
| Deadline to file the Designation of Successful Bid | The deadline to file a notice designating the Successful Bid and Successful Bidder, as well as the Back-up Bid and Back-up Bidder | One business day following the conclusion of the Auction |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline") | July 7, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |
| Sale Hearing (subject to the Court's availability) | The Sale will be implemented under the Plan and shall be approved at the Confirmation Hearing | July 14, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and |

| | | setting forth the timeline for confirmation of a plan |
|---|---|---|

Pursuant to the Bidding Procedures Order, the Debtors may, upon consultation with the Consultation Parties, modify the key dates and deadlines; *provided* that the Debtors shall provide notice of such modified dates in accordance with the Bidding Procedures Order.

Additional requirements related to approval and consummation of the Sale (including contract and lease assumption, assumption and assignment, and rejection procedures and objection deadlines) under a chapter 11 plan will be described in further detail in a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan.

C.      **Public Announcement of Auction.**

As soon as reasonably practicable following the entry of this Bidding Procedures Order, but in no event later than five business days, the Debtors will cause the Bidding Procedures Order, the Bidding Procedures, and the Sale Notice to be served by first-class mail upon (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Ad Hoc Group of Genesis Lenders; (iii) all creditors holding secured claims against the Debtors' estates; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. In addition, by no later than seven (7) days following the mailing date, the Debtors shall publish the Sale Notice, with any modifications necessary for ease of publication, once in the national edition of [The New York Times and USA Today], to provide notice to any other potential interested parties, and post the Sale Notice on the Debtors' restructuring website at https://restructuring.ra.kroll.com/genesis.

D.      **Confidentiality Agreement.**

The Debtors, in consultation with their proposed investment banker, Moelis & Company LLC ("Moelis"), the Consultation Parties and with the consent of DCG, as it relates to GGT, have developed a list of Potential Bidders (as defined herein) whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a Sale. The Debtors have distributed, or shall distribute (to the extent not already distributed), to each such Potential Bidder and any other interested Potential Bidder an "Information Package" consisting of: (i) a copy of these Bidding Procedures, the Bidding Procedures Order, and the Bidding Procedures Motion; (ii) a form confidentiality agreement to be entered into with the Debtors and GGT (a "Confidentiality Agreement"); and (iii) such other diligence materials as the Debtors and DCG, as it relates to GGT, deem appropriate under the circumstances to provide the Potential Bidders with information necessary to prepare their Indications of Interest (as defined herein).

E.      **Due Diligence.**

(i)      Access to Due Diligence.

Only Potential Bidders who have fully executed Confidentiality Agreements will be eligible to receive access to the virtual data room and reasonable due diligence information concerning those Assets that are the subject of such Potential Bidder's Bid (or such other Assets if the list provided in accordance with section F(iii) below is amended or modified), as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, but shall only extend to those Assets (or such other Assets if the list provided in accordance with section F(iii) below is amended or modified) that are the subject of such Potential Bidder's Bid. Such dataroom shall also be accessible by DCG. The due diligence period will end on the Bid Deadline (as defined herein), after which the Debtors will have no obligation to furnish any due diligence information, unless otherwise deemed reasonably appropriate by the Debtors.

The Debtors and their advisors will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders, with the consent of DCG, as it relates to GGT; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' reasonable business judgment, with the consent of DCG, as it relates to GGT, have not established that such Potential Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline (as defined herein).

The Debtors also reserve the right in their business judgment, with the consent of DCG, as it relates to GGT, to withhold any diligence materials at any time and for any reason, including, without limitation, if (i) the Potential Bidder does not become, or the Debtors and/or DCG, as it relates to GGT, in consultation with the Consultation Parties, determine that the Potential Bidder is not likely to become, a Qualified Bidder (as defined herein), (ii) the Potential Bidder violates the terms of its executed Confidentiality Agreement, (iii) the Debtors and/or DCG, as it relates to GGT, become aware (A) that the information set forth in the Indication of Interest is inaccurate or misleading or (B) of any other reason to doubt such Potential Bidder's ability to close its contemplated transaction, (iv) the bidding process is terminated for any reason, or (v) the Debtors and/or DCG, as it relates to GGT, determine that the diligence materials are sensitive, proprietary, or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors and/or DCG, as it relates to GGT, reasonably determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors or GGT. Neither the Debtors, DCG nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder (as defined herein).

Each Potential Bidder will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct any and all due diligence regarding the Assets and liabilities that are the subject of the Auction to the extent of the Assets and liabilities that are the subject of their Bid prior to making any such Bid; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures; and (d) unless and until a definitive written agreement is executed and delivered by all parties thereto, none of the Debtors or Debtors' representatives shall have any obligations to any Bidder. Neither the Debtors, DCG, GGT nor any of their employees, officers, directors, affiliates, subsidiaries,

representatives, agents, advisors or professionals are responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders in connection with the Sale.

**The Debtors have designated Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Zul Jamal (zul.jamal@moelis.com), Barak Klein (barak.klein@moelis.com), Michael DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com), to coordinate all reasonable requests for additional information and due diligence access.**

(ii)      No Communications with Restricted Parties.

No Potential Bidder, Acceptable Bidder or Qualified Bidder (each as defined herein) shall communicate with any of the Debtors', DCG's, GGT's or Holdco's subsidiaries' vendors, suppliers, directors, employees, customers, creditors, or regulators, DCG or any other Potential Bidder, Acceptable Bidder or Qualified Bidder (each of the foregoing, a "Restricted Party") with respect to any potential bid or transaction or receive or be given access to any non-public information or documentation related to a potential bid or transaction absent the prior written consent of the Debtors or its advisors, in consultation with GGT, and DCG, as it relates to GGT; *provided* that if such consent is given, a representative of the Moelis and DCG, as it relates to GGT, shall be present for or party to any such communications (unless otherwise agreed by the Debtors or DCG, as it relates to GGT).

The Debtors reserve the right, in their reasonable business judgment upon consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT, to disqualify any Potential Bidders and/or Acceptable Bidders that have had communications with any Restricted Party.

**F.      Participation Requirements and Non-Binding Indications of Interest.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, an entity interested in submitting a Bid (a "Potential Bidder") must deliver (unless previously delivered) to each of (i) the Debtors' investment banker, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Zul Jamal (zul.jamal@moelis.com), Barak Klein (barak.klein@moelis.com), Michael DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com); (ii) counsel to the Debtors, Cleary Gottlieb, Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006 Attn: Sean A. O'Neal, Esq. (soneal@cgsh.com) and Jane VanLare, Esq. (jvanlare@cgsh.com); (iii) counsel to DCG, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Jeffrey D. Saferstein (jeffrey.saferstein@weil.com), Ronit Berkovich (ronit.berkovich@weil.com) and Jessica Liou (jessica.liou@weil.com); (iv) counsel to the Committee, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com), and 1221 Avenue of the Americas, New York, New York 10020, Attn: Philip Abelson (philip.abelson@whitecase.com); and (v) the Committee's investment banker, Houlihan Lokey Capital, Inc., 225 South Sixth St., Suite 4950, Minneapolis, Minnesota 55402, Attn: Brad Geer (BGeer@HL.com), and 245 Park Avenue, 20th Floor, New York, New York 10167, Attn: David Cumming (DCumming@HL.com)  (collectively, the "Notice Parties"),

together with an executed Confidentiality Agreement, a written non-binding indication of interest (the "Indication of Interest") containing all material terms, including, but not limited to:

(i) the identity and a description (including entity type, jurisdiction of formation or organization, such legal entity's ultimate parent company, the identity of all key equity owners, and ultimate beneficial owners of such person or legal entity (and/or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the Assets), credit rating, and regulators, if applicable) of the Potential Bidder;

(ii) (a) the proposed Purchase Price (as defined herein) in U.S. dollars; (b) the form(s) of consideration and the amount of each form of consideration valued in U.S. dollars; (c) the allocation of value for GGT and GGH Assets in the proposed Purchase Price (as defined herein); and (d) the acquisition structure and key terms and conditions;

(iii) a statement of which specific Assets the Potential Bidder intends to acquire, any liabilities the Potential Bidder intends to assume, and which Assets the Potential Bidder does not intend to acquire;

(iv) a statement specifying any key assumptions and any variables to which the Potential Bidder's valuation is sensitive, as well as any other information the Potential Bidder believes will assist in evaluation of the Indication of Interest;

(v) a brief assessment of the Potential Bidder's rationale for the Indication of Interest and the Potential Bidder's intentions with respect to the applicable Assets.   The Indication of Interest should also highlight any former involvement in similar sectors to the Debtors and any other relevant facts that support the basis for the Indication of Interest;

(vi) a statement regarding the level of review and, if necessary, approval that the Indication of Interest has received within the Potential Bidder's organization.   The Indication of Interest should also provide a list of any corporate, shareholder, regulatory, or other approvals required to complete the Sale and the timing to obtain such approvals as well as any other conditions or potential impediments to the consummation of the Sale;

(vii) a detailed description of the intended sources of any financing required for the proposed Sale and any contingencies related thereto, as well as an indication of the timing and steps, if any, required to secure such financing, or preliminary proof of information as to the Potential Bidder's financial capacity to close a proposed Sale;

(viii) a detailed list of due diligence topics, documents required to review,

and other material diligence items including site visits, as well as timing in order to finalize a definitive written agreement;

(ix) a description of any anticipated regulatory approval process for the applicable Assets and the Potential Bidder's ability to obtain any required regulatory approvals on a timely basis;

(x) a description of the expected timetable to consummate a Sale. Any material conditions or other relevant information that might influence the Potential Bidder's ability to consummate a transaction in a timely fashion should be disclosed;

(xi) a list of the names, and respective functions, of the Potential Bidder's due diligence team and any legal, financial, and other advisors the Potential Bidder has engaged or would plan to engage in connection with the Sale, including their contact information, and the names, phone numbers, and email addresses of the individuals prepared to answer any questions regarding the Indication of Interest; and

(xii) a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a description of the nature of such partnership and joint Bid.

The submission of an Indication of Interest by a Person does not (i) obligate such Potential Bidder to submit a Bid or to participate in the sale process, or (ii) exempt such Potential Bidder from also having to submit a Bid by the Bid Deadline to participate in the Auction.

Within four (4) business days after a Potential Bidder delivers the Indication of Interest, the Debtors will determine in their reasonable business judgment, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, whether such Potential Bidder has submitted acceptable documents (any such Potential Bidder being referred to as an "Acceptable Bidder") and notify each Potential Bidder if it is determined to be an Acceptable Bidder. In the event that the Debtors deem that a Potential Bidder has not met the requirements for being deemed an Acceptable Bidder, the Debtors must promptly inform the Consultation Parties of such determination (and the reasons therefor). Only those Potential Bidders that have submitted acceptable documentation to the reasonable satisfaction of the Debtors and their advisors may submit bids to purchase the Debtors' Assets. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the documents. The Debtors will provide regular updates to the Consultation Parties and DCG, through their counsel, regarding Potential Bidders, Indications of Interest, and Acceptable Bidders.

**Indications of Interest must be sent to the Notice Parties so as to be <u>actually received</u> no later than May 5, 2023, at 12:00 p.m., prevailing Eastern Time (the "<u>Indication of Interest Deadline</u>").**

G.    **Due Diligence from Potential Bidders (including Qualified Bidders).**

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated transaction. Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

H.      **Stalking Horse Bidders and Bid Protections.**

Upon entry of the Bidding Procedures Order, the Debtors shall be authorized but not obligated, in an exercise of their business judgment, and upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, to: (a) select one or more Acceptable Bidders to act as stalking horse bidder(s) in connection with the Auction (each, a "Stalking Horse Bidder"); (b) enter into an agreement for the sale of the applicable Assets to a Stalking Horse Bidder (a "Stalking Horse Agreement"); and (c) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder (i) provide a breakup fee (the "Breakup Fee") in an amount up to three percent (3%) of the cash portion of the proposed Purchase Price, and/or (ii) agree to reimburse reasonable and documented out-of-pocket fees and expenses of such Stalking Horse Bidder in an aggregate amount not to exceed $50,000 (the "Expense Reimbursement," and together with the Breakup Fee, the "Bid Protections"); *provided* that if there are multiple Stalking Horse Bidders for separate Asset Packages then the expense reimbursement component of the Bid Protections shall be pro-rated between each such Stalking Horse Bidder based on the total consideration of each Bid; *provided* that the Bid Protections shall only be payable upon consummation of an alternative transaction. The Debtors shall not provide a Breakup Fee to any Stalking Horse Bidder on account of the portion of the Purchase Price of such Bid that is a credit bid, assumption of liabilities, or other non-cash (or cash-equivalent) consideration, nor provide any Bid Protection to an insider or affiliate of the Debtors. The Debtors reserve all rights to determine, in their reasonable business judgment and with the consent of DCG, as it relates to GGT, in consultation with the Consultation Parties, whether to pay any amounts constituting Bid Protections to any Stalking Horse Bidder.

In the event that the Debtors and DCG, as it relates to GGT, select one or more Acceptable Bidders to serve as the Stalking Horse Bidder, within one(1) business day following such selection, the Debtors shall file notice of each such Stalking Horse Bidder, Bid Protections, and Stalking Horse Agreement(s) (the "Stalking Horse Designation Notice") with the Court. The Stalking Horse Designation Notice shall: (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Stalking Horse Bid and what portion (if any) is cash or digital assets (and the denominations of such digital assets); (iii) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specify any proposed Bid Protections (including the amount and calculation thereof); (v) attach the Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (vi) set forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections. If there are no objections to the Stalking Horse Designation Notice within five business days of filing with the Court, (the "Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need

for further hearing. If a party timely files an objection to the Stalking Horse Designation Notice, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

**The Debtors' deadline to designate a Stalking Horse Bidder shall be June 19, 2023, at 12:00 p.m., prevailing Eastern Time (the "Stalking Horse Designation Deadline") (which deadline may be extended by the Debtors without notice or hearing before the Court).**

I.    **Bid Requirements.**

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors, DCG and their advisors, a written, binding and irrevocable offer that is determined by the Debtors, in their business judgment, in consultation with the Consultation Parties, and by DCG, as it relates to GGT, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

(i)   Purpose.  Each Acceptable Bidder must state that the Bid includes an offer by the Acceptable Bidder to acquire equity and/or some or all of the Assets, and identify the Assets with reasonable specificity.

(ii)  Transaction Structure and Purchase Price.  Each Bid must clearly set forth: (i) the purchase price to be paid for the Assets (the "Purchase Price"); (ii) the form and source of consideration, including funding commitments; and (iii) the structure and key terms and conditions.  The Bid should confirm that such consideration is not subject to any contingencies and include a detailed sources and uses schedule.  Each Bid for a combination of Assets must: (x) provide a breakdown of the share of the Purchase Price allocable to each of the Assets included in the Bid, (y) state whether the Bid is conditioned upon the Bid being a Successful Bid (as defined below) for any of the other Assets included in the Bid (and, if so, which Assets), and (z) state whether the Person is willing to purchase any of the Assets included in the Bid individually and, if so, the price such Person would pay for each such Asset.

(iii) Bid Deposit.  Each Bid must be accompanied by a cash deposit equal to the greater of (a) 10 percent of the aggregate Purchase Price of the Bid and (b) $10 million (the "Good Faith Deposit"),[3] to be submitted by wire transfer to an escrow account to be identified and established by the Debtors.[4]  To the extent that a Bid is modified at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals 10 percent of the increased Purchase Price promptly, and in no event later than one (1) business day following the

---

[3]    Any Good Faith Deposit paid to the Debtors on account of GGT shall be held for the benefit of DCG.

[4]    Notwithstanding anything to the contrary, the Debtors may modify any Good Faith Deposit, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, as necessary or appropriate, based on the Assets being sold.

conclusion of the Auction.

(iv)  <u>Committed Financing</u>.    To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, in consultation with the Consultation Parties, and DCG's satisfaction as it relates to GGT that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and other obligations under its Bid.    Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties, and reasonably acceptable to DCG, as it relates to GGT.

(v)  <u>Good Faith Offer</u>.    Each Bid must represent an irrevocable, binding, good faith, and *bona fide* offer to purchase all, or if acceptable to the Debtors, in consultation with the Consultation Parties, and DCG, as it relates to GGT, a portion of the Assets identified in such Bid if such Bid is selected as the Successful Bid or the Back-Up Bid (each as defined herein).

(vi)  <u>Marked Agreement</u>.    Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, (a) a draft purchase agreement, including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate the Sale (b) a redline of such agreement marked to reflect any amendments and modifications to a form of purchase agreement which will be provided to any Acceptable Bidder prior to the Bid Deadline (as defined herein), which amendments and modifications may not be materially more burdensome or otherwise inconsistent with these Bidding Procedures. The Debtors, and DCG, as it relates to GGT, in their reasonable business judgment, will determine whether any such amendments and modifications are materially more burdensome.

(vii)  <u>No Financial or Diligence Outs</u>.    A Bid must not be conditioned on any contingency, including, among others, on obtaining any: (a) financing and/or (b) the outcome or completion of a due diligence review by the Acceptable Bidder.

(viii)  <u>Shareholder and Other Approvals</u>.  A Bid must include a description of any anticipated need (and associated timing) for further shareholder or other authorization, approvals and waivers and any other material

conditions or time constraints related to closing the proposed Sale.

(ix)    <u>Binding and Irrevocable</u>.    An Acceptable Bidder's Bid must be irrevocable unless and until the Debtors and DCG, as it relates to GGT, accept a higher Bid and such Acceptable Bidder is not selected as the Back-Up Bidder (as defined herein).

(x)    <u>Back-Up Bid</u>.  Each Bid must provide that the Acceptable Bidder will serve as Back-Up Bidder (as defined herein) if the Acceptable Bidder's Bid is the second highest or otherwise best Bid for the applicable Assets.

(xi)    <u>Joint Bids</u>.    The Debtors and DCG, as it relates to GGT, will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis.

(xii)    <u>Adequate Assurance Information</u>.  Each Bid must be accompanied by sufficient and adequate financial and other information (the "<u>Adequate Assurance Information</u>") to demonstrate, to the reasonable satisfaction of the Debtors, after consultation with the Consultation Parties, and DCG, as it relates to GGT, that such Acceptable Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Assets (the "<u>Closing</u>"), and (b) can provide adequate assurance of future performance in connection with the proposed transaction.  The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.

(xiii)    <u>Identity and Corporate Authority</u>.  Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid, each such legal entity's ultimate parent company, the identity of all key equity owners, and ultimate beneficial owners of such person or legal entity (and/or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the Assets), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties.   A Bid must also fully disclose any connections or agreements with the Debtors, DCG and GGT, any known, potential, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, or equity security holder of the Debtors.

(xiv)    <u>Authorization</u>.  Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtors and DCG, as it relates to GGT) with respect to the submission of its Bid and the consummation of the transactions

contemplated in such Bid.

(xv)  <u>No Fees</u>.  Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion, upon consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT to provide the Bid Protections to one or more Stalking Horse Bidders in accordance with these Bidding Procedures; *provided*, *further*, that nothing in these Bidding Procedures shall limit, alter or impair the rights of any party to payment and reimbursement of fees and expenses pursuant to the Restructuring Term Sheet or Plan Support Agreement, and parties entitled to payment or reimbursement of fees and expenses pursuant thereto shall be entitled to payment or reimbursement of fees and expenses incurred in connection with these Bidding Procedures and the proposed Sale.

(xvi)  <u>Adherence to Bidding Procedures</u>.  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xvii)  <u>Assumed Liabilities</u>.  Each Bid must identify the Debtors' or GGT's liabilities that the Acceptable Bidder seeks to assume.

(xviii)  <u>Adequate Assurance of Future Performance</u>.  Each Bid must: (a) identify any executory contracts and unexpired leases to be assumed and assigned in connection with such Bid; (b) provide for the payment by the Acceptable Bidder of all cure costs related to such executory contracts and unexpired leases; and (c) demonstrate, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, that the Acceptable Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases.

(xix)  <u>Regulatory Approvals and Covenants</u>.  A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible).  Each Acceptable Bidder agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel and DCG's legal counsel (as it relates to GGT) to discuss and explain such Acceptable Bidder's

14

regulatory analysis, strategy and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated to submit a Qualified Bid.

(xx)    <u>As-Is, Where-Is</u>.   Each Bid must include a written acknowledgement and representation that the Acceptable Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Acceptable Bidder's proposed purchase agreement for the Assets.

(xxi)    <u>Procedural Considerations</u>.    Each Bid must state whether the Acceptable Bidder intends to consummate the Sale pursuant to section 363 of the Bankruptcy Code or through a sale pursuant to a confirmed plan of reorganization.

(xxii)    <u>Time Frame for Closing</u>.   Each Bid must state the Acceptable Bidder's expected date of Closing of the Sale.  A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtors, in consultation with the Consultation Parties, and DCG, as it relates to GGT.

(xxiii)    <u>Consent to Jurisdiction</u>.    The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Plan, the Sale documents, and the Closing, as applicable.

(xxiv)    <u>Conditions to Closing</u>.    Each Bid must identify each and every condition to Closing required by the Acceptable Bidder.

(xxv)    <u>Minimum Bid</u>.   In the event a Stalking Horse Bidder is approved, the Initial Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of the Bid Protections (if any), *plus* either $1 million or such other amount as determined by the Debtors in consultation with the Consultation Parties.

(xxvi)    <u>Estate Claims</u>.   Each Bid must identify whether it proposes to acquire

estate claims and causes of action and identify the proposed purchase price for such claims.

**Bids must be sent to the Notice Parties so as to be <u>actually received</u> no later than June 15, 2023, at 12:00 p.m., prevailing Eastern Time (the "<u>Bid Deadline</u>").**

J.     **Designation of Qualified Bids.**

   i.   *Qualified Bidder*

The Debtors shall deliver any and all bids received to the Consultation Parties' advisors as soon as possible upon receipt, but in no event later than 11:59 p.m. Eastern Time on the Bid Deadline. Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors, upon consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT, will be deemed to be "<u>Qualified Bids</u>," and those parties submitting Qualified Bids will be deemed to be "<u>Qualified Bidders</u>." The Debtors and DCG (as it relates to GGT) reserve the right to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors, with the consent of DCG, as it relates to GGT, may determine multiple Acceptable Bids for non-overlapping material portions of the Assets are Qualified Bids to the extent that, if taken together in the aggregate, they would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of the Auction; *provided* that  the  Debtors also reserve the right to conduct more than one Auction with respect to non-overlapping material portions of the Assets, with the consent of DCG, as it relates to GGT).

The Debtors and their advisors, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, will determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to Bid at the Auction.  Any Bid that is not deemed a Qualified Bid will not be considered  by  the  Debtors or DCG (as it relates to GGT).   For the avoidance of doubt, any Acceptable Bidders  designated as Stalking Horse Bidders by the Debtors, with the consent of DCG, as it relates to GGT, and in accordance with these Bidding Procedures will be deemed to be Qualified Bidders, and any Stalking Horse Agreement entered into with such Stalking Horse Bidders will be deemed Qualified Bids, which qualify such Stalking Horse Bidders to participate in the Auction as Qualified Bidders.

   ii.   *Notification*

Within four (4) days after the Bid Deadline, the Debtors will notify each Acceptable Bidder whether such Acceptable Bidder is a Qualified Bidder. If any Bid is determined by the Debtors, in consultation with the Consultation Parties and with consent of DCG, as it relates to GGT, not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Good Faith Deposit and all accumulated interest thereon, if any, within five (5) business days after the Bid Deadline.

   iii.   *Bid Modifications*

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction: (a) the Debtors may, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, discuss, negotiate, or seek clarification or enhancement of any Qualified Bid from a Qualified Bidder; and (b) a Qualified Bidder may not, without the prior written consent of the Debtors or DCG, as it relates to GGT, modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid; *provided* that any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

iv.    *Combination of Bids; Overlapping Bids*

Notwithstanding anything herein to the contrary, the Debtors, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, reserve the right to (a) negotiate with any Bidder individually or simultaneously with other Bidders; (b) discuss with any Bidders the terms of any Bid submitted by that Bidder; and (c) work with: (i) Acceptable Bidders and Qualified Bidders to aggregate two or more Indications of Interest or Bids into a single consolidated Bid prior to the Bid Deadline; (ii) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction; and (iii) any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors may, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, qualify multiple Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, the Bids would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

K.    **Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors and their advisors, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, the highest or otherwise best Bid (the "Initial Bid").  In the event a Stalking Horse Bidder is selected, the Initial Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of the bid protections (if any), *plus* either $1 million or such other amount as determined by the Debtors in consultation with the Consultation Parties.  For the avoidance of doubt, the Debtors may, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, select more than one Qualified Bid to collectively serve as the Initial Bid if each such Qualified Bid contemplates the purchase of different Assets.  In making such determination, the Debtors and DCG will take into account, among other things, (i) the amount of the Qualified Bid and the form of consideration, (ii) the impact on the Debtors' customers, vendors, and employees, (iii) the certainty of a Qualified Bid leading to a confirmed Plan, and (iv) the execution risk attendant to any Qualified Bids.  Within 24 hours of such determination, but in no event later than the start of the Auction, the Debtors will distribute copies of the Initial Bid to each Qualified Bidder who has submitted a Qualified Bid.

L.    **No Qualified Bids.**

If no Qualified Bid or only one Qualified Bid is received by the Bid Deadline for any non-overlapping material portion of the Assets, then the Auction will not occur with respect to such Assets. If only one Qualified Bid is received by the Bid Deadline for any non-overlapping material portion of the Assets, the Debtors may determine, after consultation with the Consultation Parties, to designate such Qualified Bidder as the Successful Bidder for the applicable Assets and to pursue entry of an order approving a Sale to such Qualified Bidder with respect to such Assets. The Debtors shall promptly file notice of any cancellation of the Auction and/or designation of a Qualified Bid as a Successful Bid with the Court.

M.    **Auction.**

If one or more Qualified Bids (in addition to any Stalking Horse Bid) is received by the Bid Deadline, the Debtors will conduct the Auction with respect to the Assets. For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-overlapping material portions of the Assets. The Auction will commence on June 27, 2023, at 10:00 a.m. prevailing Eastern Time, at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom, or such later time or other place as the Debtors, with the consent of DCG, as it relates to GGT, may determine.

If the Auction is cancelled pursuant to these Bidding Procedures, then the Debtors shall file a notice with the Court of such election within two business days of the determination of such election by the Debtors.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

    (i)   the Auction will be conducted openly;

    (ii)   only the Qualified Bidders, including any Stalking Horse Bidders, will be entitled to Bid at the Auction;

    (iii)   the Qualified Bidders, including any Stalking Horse Bidders, must appear in person or through duly-authorized representatives at the Auction (which may be by videoconference). If a Qualified Bidder appears through a duly authorized representative, such representative must have been granted a valid and enforceable power of attorney or have other written proof evidencing his or her ability to bind such Qualified Bidder, which document(s) shall be delivered to the Debtors and DCG at least one (1) business day before the Auction;

    (iv)   only such authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors, DCG, the Consultation Parties, and their respective advisors will be permitted to attend the Auction;

    (v)   bidding at the Auction will begin at the Initial Bid;

    (vi)   subsequent Bids at the Auction, including any Bids by any Stalking

Horse Bidder, must be made (i) in minimum increments in an amount that the Debtors determine, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, *plus*, (ii) in the event the Debtors have entered into a Stalking Horse Agreement with respect to the Assets to which the Overbid relates, the aggregate amount of the Bid Protections pursuant to such Stalking Horse Agreement, if applicable;

(vii)   each Qualified Bidder will be informed of the terms of the previous Bids;

(viii)   the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

(ix)   each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale; *provided* that this requirement does not restrict Qualified Bidders from working with other Bidders or participating in joint bids pursuant to the terms of these Bidding Procedures;

(x)   the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest Bid, subject to the Debtors' right, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, to require last and final Bids to be submitted on a "blind" basis;

(xi)   the Debtors reserve the right, in their reasonable business judgment, and in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors, GGT and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, (c) alter or combine Asset Packages, and (d) provide Qualified Bidders the opportunity to provide the Debtors and DCG, as it relates to GGT, with such additional evidence as the Debtors, in their reasonable business judgment, with the consent of DCG, as it relates to GGT, may require in order that the Qualified Bidder demonstrate it has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount;

(xii)   the Debtors, in consultation with the Consultation Parties, are authorized to reopen the Auction with respect to all or a portion of the Assets at any time prior to the selection and announcement by the Debtors of one or more Successful Bids for such Assets; and

(xiii)   the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, upon consultation

19

with the Consultation Parties and with the consent of DCG, as it relates to GGT, from time to time on the record at the Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any other order of the Court, (b) disclosed orally or in writing to all Qualified Bidders, and (c) determined by the Debtors, in good faith, to further the goal of attaining the highest or otherwise best offer.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law with respect to the Debtors' GGH Assets (as reasonably determined in good faith by the Debtors, based on the advice of counsel).

N.    **Acceptance of the Successful Bid or Successful Bids.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, will identify the highest or otherwise best Qualified Bid or Qualified Bids (each, a "Successful Bid"), which will be determined by considering, among other things, (a) the type and amount of Assets sought to be purchased in the Bid or Bids, (b) the form and total expected consideration to be received by the Debtors and DCG, (c) the likelihood of the Qualified Bidder's or Qualified Bidders' ability to close a transaction and the timing thereof (including any anticipated delays to Closing and the cost to the Debtors of such delays), (d) the expected net benefit to the estates, (e) the impact on the Debtors' vendors, customers, and employees (f) the certainty of the Debtors being able to confirm a Plan, and (g) any other criteria as may be considered by the Debtors in their reasonable, good-faith business judgment, in consultation with the Consultation Parties. For the avoidance of doubt, the Debtors, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Assets. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "Successful Bidder" or "Successful Bidders," as applicable. The Successful Bidder or Successful Bidders and the Debtors, GGT and/or DCG (as applicable) must, as soon as commercially reasonably practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid or Successful Bids were made.

The Debtors shall file a notice setting forth the results of the Auction and identify any Successful Bidder with the Court within one business day following the conclusion of the Auction.

The Debtors will present the results of the Auction to the Court at the Sale Hearing (as defined herein), at which certain findings will be sought from the Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, and (c) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Assets to maximize recovery for the Debtors' creditors and is in the best interests of the Debtors' estates.

20

If an Auction is held, the Debtors will be deemed to have accepted a Qualified Bid only when (a) such Qualified Bid is declared a Successful Bid at the Auction, and (b) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Court of the Successful Bid or Successful Bids and entry of an order approving such Successful Bid or Successful Bids (the "Confirmation Order").

O.      **Sale Hearing.**

In the event a Sale is consummated through a Plan, the terms of the Successful Bid or Successful Bids will be incorporated into the Plan and presented to the Court for approval at the Confirmation Hearing before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601, and otherwise in accordance with any scheduling orders entered by the Court relating to confirmation of the Plan or approval of any disclosure statement related thereto. The Debtors will file a separate motion seeking to establish the deadlines related to confirmation of a Plan, including scheduling a hearing before the Court to consider confirmation of the Plan (the "Confirmation Hearing").

At the Confirmation Hearing, the Debtors will present the Plan, which will incorporate the terms of the Successful Bid or Successful Bids, to the Court for confirmation.

In the event a hearing approving the Sale Hearing and the Confirmation Hearing are held separately and the Assets (including GGT) are sold prior to the Confirmation Hearing, the proceeds of the sale of GGT (the value allocation of which shall be agreed upon by the Debtors and DCG or by order of the Court) shall be held for the sole benefit of DCG and treated in accordance with the Restructuring Term Sheet upon confirmation of the Plan or otherwise transferred immediately to DCG if a Plan is not confirmed in these Chapter 11 Cases within 180 days of consummation of a Sale of GGT.

P.      **Designation of Back-Up Bidder or Back-Up Bidders.**

If for any reason the Successful Bidder or Successful Bidders fail to consummate the Qualified Bid or Qualified Bids within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder or Successful Bidders, then the Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid or Bids (each, a "Back-Up Bidder"), as determined by the Debtors upon consultation with their advisors and the Consultation Parties and with the consent of DCG, as it relates to GGT, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid or Bids (each, a "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid or Back-Up Bids as soon as is commercially reasonable without further order of the Court upon at least 24 hours advance notice, which notice will be filed with the Court; *provided* that the Debtors shall file a notice with the Court that such Backup Bidder has been deemed the Successful Bidder.  Upon designation of the Back-Up Bidder or Back-Up Bidders at the Auction, the Back-Up Bid or Back-Up Bids must remain open until the Closing of the Successful Bid or Successful Bids, as applicable, notwithstanding any outside date set forth in such Back-Up Bidder's or Back-Up Bidders' proposed purchase agreement or Plan.  The Backup Bidder's Good

Faith Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.

Q.    **Return of Good Faith Deposit to Qualified Bidders that Submit Qualified Bids.**

The Good Faith Deposit of the Successful Bidder or Successful Bidders will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and DCG, as it relates to GGT, and be credited to the portion of the Purchase Price, allocated accordingly for the portion of the Good Faith Deposit attributable to GGT and the GGH Assets. If the Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) fail or fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit of such Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and DCG and may be retained by the Debtors and DCG as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and DCG.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five (5) business days after consummation of the Sale or upon the permanent withdrawal by the Debtors of the proposed Sale. The Good Faith Deposit of the Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days after the Closing with the Successful Bidder or Successful Bidders or, if the Successful Bidder or Successful Bidders fail or fails to consummate a proposed transaction and the Debtors elect to not consummate the proposed transaction with the applicable Back-Up Bidder, then such Back-Up Bidder's Good Faith Deposit shall be returned within three (3) business days thereof, or as soon as is reasonably practicable thereafter.

All deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court, except to the extent set forth herein.

R.    **Reservation of Rights.**

The Debtors reserve their rights, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, to modify, change or extend the deadlines set forth in these Bidding Procedures; modify bidding increments; adjourn, reschedule or cancel the Auction; withdraw from the Auction any or all of the Assets at any time prior to or during the Auction; cancel the Sale process or, if the Debtors determine that it will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties and not be inconsistent in any material respect with any Court order, modify these Bidding Procedures at any time or impose, at or prior to the Auction(s), additional customary terms and conditions on the sale of the Assets after consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT (*provided* that the Debtors may not increase the Bid Protections without further approval of the Court).

The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidder.

23-10063-shl    Doc 133    Filed 03/16/23    Entered 03/16/23 23:01:22    Main Document
Pg 51 of 56

The Debtors reserve the right to reject any or all Bids at any point, in consultation with the Consultation Parties, without providing any reasons for the rejection to any Bidder.

S.      **Consent to Jurisdiction.**

All Qualified Bidders will be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Sale, the Auction, the construction and enforcement of these Bidding Procedures, and/or any Indication of Interest, the Bid Requirements, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, the Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

T.      **Fiduciary Out.**

Nothing in these Bidding Procedures or the Bidding Procedures Order will require a Debtor or non-Debtor affiliate or the board of directors, board of managers, or such similar governing body of a Debtor or non-Debtor affiliate, after consulting with counsel, to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, or any Sale, to the extent such Debtor or non-Debtor affiliate or board of directors, board of managers, or such similar governing body reasonably determines in good faith that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law; *provided* that the Debtors shall consult with the Committee promptly after exercising any fiduciary out in accordance with these Bidding Procedures, and nothing in this Section S shall modify or supersede any consultation or consent rights of the Committee set forth in these Bidding Procedures or the Bidding Procedures Order.

Furthermore, notwithstanding anything to the contrary in these Bidding Procedures, through the date of an Auction, nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Debtors' Assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases (including the Consultation Parties and the United States Trustee), or any other entity regarding Alternate Proposals. The Debtors shall promptly distribute any Alternate Proposal (and any response thereto) to the Consultation Parties.

U.      **Sale Is As Is/Where Is.**

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then-present condition, "as is, with all faults, and without any warranty whatsoever, express or implied."

V.      **Assumption and Rejection Procedures.**

Procedures for the assumption, assumption and assignment, and rejection of certain executory contracts and unexpired licenses in connection with the Sale will be described in a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan.

**Exhibit 2**

**Sale Notice**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF BIDDING PROCEDURES,**
**POTENTIAL AUCTION, AND SALE HEARING**

      **PLEASE TAKE NOTICE** that, on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC and its affiliates Genesis Global Capital, LLC and Genesis Asia Pacific Pte. Ltd., as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and the cases, the "Chapter 11 Cases"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the Bankruptcy Court for the Southern District of New York (the "Court").[2]

      **PLEASE TAKE FURTHER NOTICE** that on March 16, 2023, the Debtors filed a motion [Docket No. [[•]]] (the "Motion") seeking, among other things, the entry of an order approving (a) bidding procedures (the "Bidding Procedures") in connection with the proposed auction (the "Auction") and sale (the "Sale") of the Debtors', Genesis Global Trading, Inc.'s and non-Debtor subsidiaries' equity or some or all of their assets (the "Assets") to one or more Successful Bidders, (b) the selection of a Stalking Horse Bidder and the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms used in this notice and not defined herein shall have the meanings given to them in the Bidding Procedures (as defined herein).

payment of Bid Protections in certain instances as set forth in the Bidding Procedures, and (c) scheduling dates and deadlines in connection with approval of the Sale (the "<u>Sale Schedule</u>").

PLEASE TAKE FURTHER NOTICE that on [[•]], 2023, the Bankruptcy Court entered an order [Docket No. [[•]]] (the "<u>Bidding Procedures Order</u>") granting the relief sought in the Motion, including, among other things, approving the Bidding Procedures and the Sale Schedule.

### Contact Parties for Parties Interested in Submitting a Bid

| Investment Banker to the Debtors | Counsel to the Debtors |
|---|---|
| Moelis & Company LLC<br>399 Park Avenue, 4th Floor<br>New York, NY 10022<br>Attn.: Zul Jamal<br>(zul.jamal@moelis.com)<br>Barak Klein (barak.klein@moelis.com) | Cleary Gottlieb, Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006<br>Attn: Sean A. O'Neal, Esq. (soneal@cgsh.com)<br>Jane VanLare, Esq. (jvanlare@cgsh.com) |

### Obtaining Information

Copies of the Bidding Procedures Order, the Bidding Procedures, and any other related documents can be viewed and/or obtained: by (i) accessing the Court's website at www.nysb.uscourts.gov or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, at https://restructuring.ra.kroll.com/genesis/ or by calling +1 888-524-2017.   Note that a PACER password is needed to access documents on the Court's website.

### The Sale Schedule

| Action | Description | Deadline |
|---|---|---|
| Bidding Procedures Hearing | The hearing before the Court to consider this Motion | March 30, 2023 |
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received | May 5, 2023 |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures | June 15, 2023 |
| Stalking Horse Designation Deadline | The deadline to designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any | June 19, 2023 |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom | June 27, 2023 |
| Deadline to file the Designation of Successful Bid | The deadline to file a notice designating the Successful Bid and Successful Bidder, as well as the Back-up Bid and Back-up Bidder | One business day following the conclusion of the Auction |

| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline") | July 7, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |
| --- | --- | --- |
| Sale Hearing (subject to the Court's availability) | The Sale will be implemented under the Plan and shall be approved at the Confirmation Hearing | July 14, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |

### Filing Objections to the Sale

The Debtors request that the Court require that objections to the Sale (a) be in writing; (b) comply with the Bankruptcy Rules, the Local Rules and other case management rules and orders of this Court; (c) state the name and address of the objecting party and the amount and nature of the claim or interest asserted by the objecting party against the estate or property of the Debtors; (d) state with particularity the legal and factual basis for such objections, and, if applicable, a proposed modification to the Sale that would resolve such objection; and (e) be filed with the Court with proof of service thereof and served upon, so as to be actually received by the Sale Objection Deadline, the following parties: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Debtors, Cleary Gottlieb, Steen and Hamilton LLP, One Liberty Plaza, NY, NY 10006 Attn: Sean O'Neal (soneal@cgsh.com) and Jane VanLare (jvanlare@cgsh.com); (iii) the investment banker to the Debtors, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn: Zul Jamal and Barak Klein, and; (iv) counsel to the Committee, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com) and 1221 Avenue of the Americas, New York, New York 10020, Attn: Philip Abelson (philip.abelson@whitecase.com).

### Consequences of Failing to Timely File an Objection

**Any party or entity who fails to timely file an objection to the Sale on or before the Sale Objection Deadline, in accordance with the Bidding Procedures, shall be forever barred from asserting any objection to the Sale.**