Hearing Date: March 30, 2023 at 11:00 a.m. (prevailing Eastern Time)

**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
David Turetsky
Michele J. Meises
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: cshore@whitecase.com
      philip.abelson@whitecase.com
      david.turetsky@whitecase.com
      michele.meises@whitecase.com

– and –

Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606-4302
Telephone: (312) 881-5400
Facsimile: (305) 881-5450
Email:  gregory.pesce@whitecase.com

*Proposed Counsel to Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 137** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these chapter 11 cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

**DECLARATION OF MARK RENZI IN SUPPORT
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION
FOR ENTRY OF AN ORDER REQUIRING THE REDACTION
OF CERTAIN PERSONALLY IDENTIFIABLE INFORMATION**

I, Mark Renzi, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Managing Director at, and the Head of Corporate Finance Financial Institutions Group for, Berkeley Research Group, LLC ("**BRG**"). BRG is the proposed financial advisor to the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**").

2. I respectfully submit this declaration (the "**Declaration**") in support of *The Official Committee of Unsecured Creditors' Motion for an Order Requiring the Redaction of Certain Personally Identifiable Information* [Docket No. 137] (the "**Motion**"), which seeks an order directing the redaction of the names, physical addresses, and e-mail addresses of the Debtors' lenders (the "**Confidential Information**") from the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules and Statements**") as well as other documents or papers filed in the Debtors' chapter 11 cases.

3. The statements made in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by other professionals in these cases and/or employees working under my supervision, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations. I declare the following statements are true to the best of my knowledge, information, and belief formed after a reasonable inquiry under the circumstances.

4. I am over the age of 18 and authorized to submit this Declaration on behalf of the Committee. If called as a witness, I would testify truthfully to the matters stated in this Declaration.

2

**Background**

5.      On January 20, 2023, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders Waiving the Requirement that Each Debtor File a List of Creditors and Authorizing Preparation of a Consolidated List of Creditors, in Lieu of Submitting a Formatted Mailing Matrix, (II) Authorizing the Debtors to File a Consolidated List of the Debtors Fifty (50) Largest Unsecured Creditors, (III) Authorizing the Debtors to Redact Certain Personally Identifiable Information, and (IV) Granting Related Relief* [Docket No. 14] (the "**Creditor Matrix Motion**").

6.      On January 27, 2023, the Court entered an order [Docket No. 46] (the "**Interim Creditor Matrix Order**") authorizing the Debtors to, among other things, redact the names, home addresses, and e-mail addresses of individual creditors, and the addresses and e-mail addresses of all other creditors, listed on the Debtors' consolidated creditors list or other documents filed with this Court on an interim basis pursuant to sections 107(c) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 9018-1.

7.      On February 8, 2023, the Debtors filed the *Debtors' Motion Pursuant to 11 U.S.C. §§ 107(b), 107(c), and 105(a) for Entry of an Order Authorizing the Debtors to Redact and File Under Seal Certain Information About the Confidential Parties Listed in the Debtors' Professional Retention Applications and Schedules* [Docket No. 67] (the "**Redaction Motion**"), which seeks authorization for, among other things, the Debtors to redact the names, addresses, and contact information of individual creditors, the addresses and contact information of the institutional creditors whose addresses are individual home addresses, the names of potential

counterparties to mergers and acquisitions, and the names of parties involved in confidential or sealed litigation or regulatory actions or proceedings.

8. On January 27, 2023, the Court entered an order extending the Debtors' time to file their Schedules and Statements to March 9, 2023 [Docket No. 42], which was further extended to March 20, 2023 with the consent of the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**") [Docket No. 119].

9. On March 13, 2022, the Debtors, the Committee, and the U.S. Trustee entered into a Stipulation and Agreed Order (the "**Stipulation and Order**"), whereby the Debtors agreed to redact the Confidential Information from the Schedules and Statements, pending the Court's ruling on the Motion, the Creditor Matrix Motion, and the Redaction Motion [Docket No. 124].

## The Need to Redact the Confidential Information

10. The Committee is the only fiduciary solely for the Debtors' unsecured creditors. The Committee's primary objectives are maximizing value for the benefit of creditors and minimizing the deleterious effects these chapter 11 cases could have on creditors' lives.

11. Preventing the disclosure of the Confidential Information is critical to preserving the value of the Debtors' assets and maintaining the lenders' safety and privacy. The Committee fully appreciates the public policy of transparency in the bankruptcy process. However, the circumstances of cryptocurrency bankruptcy cases, such as the Debtors' chapter 11 cases, present particular risks to both the Debtors' estates and creditors, as discussed more fully below. To the extent any benefit of publicly disclosing the Confidential Information exists, such benefit is vastly outweighed by the potential harm to the Debtors' estates and lenders, regardless of whether the lenders are individuals or institutions. Therefore, I believe that the relief requested in the Motion strikes an appropriate balance between transparency and protection.

I. **The Confidential Information Is an Important and Valuable Asset that Must be Protected Under Section 107(b) of the Bankruptcy Code.**

12. I understand that the Debtors historically lent and borrowed cash and digital assets from third parties and generally permitted customers to enter into bespoke loan terms and structures specifically designed to meet their needs. The vast majority of the Debtors' unsecured creditors are lenders that utilized the Debtors' lending platform prepetition. The lenders' Confidential Information is commercially sensitive information that will inure to the benefit of the lenders. The lenders are akin to customers, whose confidential information is uniformly protected in other contexts. The value of the lenders' Confidential Information to the Debtors' estates depends upon it being kept private and confidential; the Confidential Information will have minimal, if any, value if it were publicly disseminated.

13. I believe that unrestricted public disclosure of the Confidential Information in the absence of approval of the relief requested by the Motion would negatively impact the Debtors' restructuring process and stakeholder recoveries. The value of the Debtors' enterprise is tied to their relationships with their lenders. The Debtors operate in a highly competitive market and have spent significant time, money, and resources developing their existing customer base. Were the Confidential Information made public in the Schedules and Statements or other documents filed in these cases, potential transaction counterparties and competitors would have unfettered access to contact and poach the Debtors' lenders. Disclosing the Confidential Information would shrink the Debtors' lender base and market share, all while unnecessarily giving competitors a significant competitive advantage. This, in turn, would diminish the value of the Confidential Information as an estate asset, lead to a less competitive marketing process, and overall would prevent the Debtors from maximizing the value of their estates. The fact that the identities of the

5

lenders is not public, and not available to the Debtors' competitors, is precisely what makes the list of the Debtors' lenders a valuable asset of the estates.

14. I further believe that unrestricted public disclosure of the Confidential Information would negatively impact the Debtors' relationships with their lenders. The nature of digital assets affords market participants some level of privacy with respect to their transactions, including those conducted between the Debtors and their lenders. That is particularly true here, where the Debtors' lenders expected their identities to remain private. For example, the information that the Debtors collect in connection with lender accounts is subject to a privacy policy (the "**Genesis Privacy Policy**"), a true and correct copy of which is attached hereto as **Exhibit A**.

15. Similarly, the Master Digital Asset Loan Agreement governing the Gemini Earn Program between Debtor Genesis Global Capital, LLC, Gemini Trust Company, LLC ("**Gemini**"), and Gemini lenders (the "**Master Loan Agreement**"), contemplates similar protections. A true and correct copy of the Master Loan Agreement is attached hereto as **Exhibit B**. Paragraph XI(a) of the Master Loan Agreement provides: "Each Party to this Agreement shall hold in confidence all information obtained from the other Party in connection with this Agreement . . . ." Paragraph XI(b) of the Master Loan Agreement further provides: "Each Party shall (i) keep such Confidential Information confidential and shall not, without the prior written consent of the other Party, disclose or allow the disclosure of such Confidential Information to any third party . . . and (ii) restrict internal access to and reproduction of the Confidential Information to a Party's Representatives only on a need to know basis." Additionally, Paragraph X(c) of the Master Loan Agreement provides: "Each Party also agrees not to use Confidential Information for any purpose other than in connection with transactions contemplated by this Agreement."

16.     The potential disclosure of the Confidential Information would contravene the Genesis Privacy Policy and Master Loan Agreement, thereby damaging the Debtors' relationships with their lenders and inevitably leading many lenders to leave for competing platforms. The resulting lender attrition would diminish the value of the Confidential Information as an estate asset, lead to a less competitive marketing process, and overall would prevent the Debtors from maximizing the value of their estates.

17.     These chapter 11 cases are expected to result in either a sale of the Debtors' assets (including the Confidential Information) to a third-party investor, or, in the absence of a sale, a reorganization of the business under the control of the Debtors' creditors.  I believe disclosure of the Confidential Information would frustrate either outcome.  In a sale scenario, investors would be expected to pay less in a potential transaction if the Confidential Information (and one of the most significant estate assets) is available for free on the Court's docket. Similarly, disclosure of the lender's confidential information would frustrate a reorganization because an otherwise valuable source of stakeholder recoveries—the Confidential Information—would be publicly available on the Court's docket.

II.     **Disclosure of the Confidential Information Creates an Extreme Risk of Harm that Section 107(c) of the Bankruptcy Code Was Designed to Protect.**

18.     It is also necessary to order redaction of the Confidential Information as requested in the Motion because the potential unrestricted public disclosure of the Confidential Information would likely lead to a host of financial and other threats against the Debtors' lenders.  For example, disclosure is expected to result in "phishing" attempts, threats, and other impermissible conduct, including hacking, blackmail, harassment, and stalking.  Those risks are particularly salient in this case given its connection to cryptocurrency, where "phishing" and other improper conduct has occurred following the disclosure of confidential customer information.  The

Committee submits that protecting lenders from social, economic, and other harm greatly outweighs any perceived benefit to the public's receiving unfettered access to the Confidential Information.

19. For example, these risks are playing out in real time in the pending cryptocurrency case in the Southern District of New York, *In re Celsius Network, LLC*. In *Celsius*, the court partially denied the debtors' request, requiring public disclosure of all creditor names, but authorizing the redaction of physical and e-mail addresses for individuals. Since then, scammers, posing as debtors' counsel and using fake Kirkland & Ellis e-mail accounts, have repeatedly contacted and harassed *Celsius* customers and creditors in order to steal their account information. Details of this ongoing phishing scam are attached hereto as **Exhibit C.** Thus, the partial relief afforded in *Celsius* has been insufficient to protect the identities of *Celsius* customers and creditors. Based on my extensive industry experience, I strongly believe that there is no reason to expect that similar phishing threats will not materialize in these cases, involving other similarly sophisticated financial criminals who specialize in identity theft.

20. These concerns are not isolated to the Debtors' individual lenders. Individuals employed by, or associated with, institutional lenders are equally at risk of phishing, hacking, blackmail, harassment, stalking, or other injury to their person or property. The *Celsius* court specifically denied redacting any personally identifiable information of "entities." As mentioned, the partial relief granted in *Celsius* has not prevented repeated, targeted attacks on their customers and creditors from occurring. The names, addresses, and other personally identifiable information of individuals employed by, or associated with, institutional lenders is frequently available online. Bad actors could easily identify such individuals and engage in impermissible conduct in the same manner as they would with individual lenders. Therefore, redacting the Confidential Information

8

of both individual as well as institutional lenders limits the ability of bad faith actors from targeting them and is critical in allowing the Debtors' lenders to maintain their financial and other security.

21. Based on my experience, noting "Name and Address on File" in lieu of the Confidential Information on the publicly filed Schedules and Statements is a cost-effective and minimally burdensome approach to addressing the risk associated with disclosing the Confidential Information to the public. If the Confidential Information were made immediately available, it would be disseminated across the internet, putting all the Debtors' creditors at an unnecessary risk of phishing, hacking, blackmail, harassment, stalking, or other injury to their person or property. These risks are especially apparent in the cryptocurrency industry, and there is no discernable reason to make the Confidential Information readily available to everyone.

22. Therefore, I believe that disclosure of the Confidential Information would (i) have significant, adverse effects on the Debtors restructuring process and stakeholders recoveries, and (ii) pose a credible risk of injury to individual lenders and the individuals associated with institutional lenders. The harm could be minimized by requiring the Debtors to redact the Confidential Information of (a) individual lenders, as contemplated by the Creditor Matrix and the Redaction Motion; and (b) institutional lenders, as specifically requested by the Motion contemplated herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 22, 2023

/s/ *Mark Renzi*
Mark Renzi
Berkeley Research Group, LLC

*Proposed Financial Advisor to the Committee*
