WILLIAM K. HARRINGTON
United States Trustee
U.S. Department of Justice                          **Hearing Date:**  March 30, 2023
Office of the United States Trustee                 **Hearing Time**: 11:00 a.m.
One Bowling Green
Suite 515
New York, New York 10004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
*In re*                                              :    Chapter 11
                                                     :
GENESIS GLOBAL HOLDCO, LLC, *et. al.*,[1]            :    Case No. 23-10063 (SHL)
                                                     :
                    Debtors.                         :    (Jointly Administered)
---------------------------------------------------------------- x

### STATEMENT OF THE UNITED STATES TRUSTEE TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§105, 345 AND 363

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), hereby submits his objection (the "**Statement**") to the motion of Genesis Global Holdco, LLC and its affiliated debtors (collectively, the "**Debtors**") for entry of an order approving the cash management system [ECF No. 15] (the "**Cash Management Motion**").

### PRELIMINARY STATEMENT

The Debtors ask the Court to waive the protections under 11 U.S.C. § 345, or otherwise approve their management of their cash management system under 11 U.S.C. § 363. In the Cash Management Motion the Debtors reference three distinct types of investments: Cash Assets, Digital Assets, and certain Trust Assets (all as more fully defined below). With respect to the Cash Assets, the Debtors have confirmed that all of the Cash Assets have been moved into authorized depositories and that appropriate collateral has been posted for these funds. However,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

in addition, these Debtors have significant crypto-asset holdings,[2] and as part of their request, they ask this Court to approve their holdings in these Digital Assets and Trust Assets. Holdings in cryptocurrency-assets continue to be a somewhat novel issue in Chapter 11 cases.  To the extent a waiver of Section 345 is appropriate for the Debtors' investments in the Digital Assets and the Trust Assets, the United States Trustee leaves the Debtors to their burden to demonstrate that the requirements of 11 U.S.C. § 345, as applicable, are satisfied with respect to their handling of the estate's funds.

## BACKGROUND

### A.    General Background

1.    On January 19, 2023 (the "Petition Date"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code. *See* Voluntary Petitions, SDNY Case Nos. 23-10063 (Genesis Holdco); 23-10064 (Genesis Global Capital LLC); and 23-10065 (Genesis Asia Pacific PTE Ltd.); ECF Doc. No. 1. On January 26, 2023, the Court entered an Order directing that these cases be jointly administered. ECF Doc. No. 37.

2.    In a first day affidavit, the Debtors stated that they have more than $150 million in cash (the "**Cash Assets**"), approximately $500 million in digital assets held in "wallets" (the "**Digital Assets**"), and approximately $385 million in shares in cryptocurrency trusts held in brokerage accounts (the "**Trust Assets**"). *See* Leto Decl. ¶ 7. ECF Doc. No. 28.

3.    The Debtors continue to operate their business and manage their properties as debtors-in-possession under sections 1107 and 1008 of the Bankruptcy Code.

4.    On February 3, 2023, the United States Trustee appointed an official committee of unsecured creditors.  ECF No. 53.

---

[2] This includes holding digital assets including various forms of cryptocurrencies and also holding shares in trusts that hold cryptocurrencies.

**B.      The Cash Management Motion**

5.      As part of the suite of "First Day" motions, the Debtors filed the Cash

Management Motion, seeking, *inter alia*, the continued use of their existing cash management

system, including its cryptocurrency management system.  *See* ECF No. 15.

6.      According to the Debtors, the cash management system was comprised of

approximately 19 Bank Accounts (the Cash Assets described in the Leto Decl.) and the five

brokerage accounts (the Trust Assets described in the Leto Decl.).  *See id*. at ¶¶ 14-15.[3]

7.      In addition to the bank and brokerage accounts described above, the Debtors also

maintain cryptocurrency "wallets" on third-party platforms (these are the Digital Assets

described in the Leto Decl.). *Id*. at ¶ 17. Substantially all of the Debtors' Digital Assets are held

in these wallets. *Id*. These wallets can also hold fiat currency. *Id*.

8.      As of the date of this Statement, the Debtors have now confirmed: (a) they have

moved their Cash Assets into an authorized depository, which has posted appropriate collateral

to protect such deposits; (b) they continue to retain significant ownership interests, exceeding

$400 million, in Trust Assets in the brokerage accounts; and (c) they continue to retain

significant Digital Assets, exceeding $400 million.

<u>**OBJECTION AND
RESERVATION OF RIGHTS**</u>

**I.   *Statutory And Regulatory Framework***

**A.   <u>Section 345 is Designed to Protect Assets of the Bankruptcy Estate</u>**

Section § 345(b) of the Code provides as follows:

(b) Except with respect to a deposit or investment that is insured or guaranteed by the
United States or by a department, agency, or instrumentality of the United States or

---

[3] By email to the United States Trustee dated March 17, 2023, the Debtors stated that their cash had been moved to
Western Alliance, a United States Trustee authorized depository bank.

backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested--
(1) a bond--

    (A) in favor of the United States;

    (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and generally, unless the funds are insured, guaranteed, or backed by the full faith and credit of the United States Government or its agencies, the institution holding the estate funds must post a bond in favor of the United States or, in the alternative, deposit securities pursuant to 31 U.S.C. § 9303 as security.

    (C) conditioned on--

        (i) a proper accounting for all money so deposited or invested and for any return on such money;

        (ii) prompt repayment of such money and return; and

        (iii) faithful performance of duties as a depository; or
(2) the deposit of securities of the kind specified in section 9303 of title 31; unless the court for cause orders otherwise.

11 U.S.C. § 345(b). Generally, unless the funds are insured, guaranteed, or backed by the full faith and credit of the United States Government or its agencies, the institution holding the estate funds must post a bond in favor of the United States or, in the alternative, deposit securities pursuant to 31 U.S.C. § 9303 as security.

This Court has recognized that

[t]he legislative purpose behind the enactment of section 345(b) was to ensure "that the funds of a bankrupt that are obligated to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankrupt estate," while also giving bankruptcy courts the flexibility to modify such requirement for "just cause" where strict compliance might "work to needlessly handcuff larger, more sophisticated debtors."

*In re Ditech Holding Corp.*, 605 B.R. 10, 22 (Bankr. S.D.N.Y. 2019) (citing H.R. Rep. 103-835, 103rd Cong., 2d Sess. 210 (Oct. 4, 1994)); *see also* 3 Collier on Bankruptcy ¶ 345.03 (16th 2022) ("Section 345(a) provides for the deposit or investment of the money of the bankruptcy estate in a

manner that will yield the greatest reasonable return while considering the safety of such deposit or investment.").

The most common way that debtors comply with Section 345(b) is to have their accounts at banks(s) insured by the Federal Deposit Insurance Corporation (FDIC), which protects funds up to $250,000, and (b) which have signed Uniform Depository Agreement("UDA")with the United States Trustee's office, which requires the signatory bank to post a bond to protect all of the debtor's funds at a bank insured by the FDIC, regardless of amount. With the enactment of the Bankruptcy Code in 1978 and the creation of the United States Trustee Program, many of the Bankruptcy Court's duties to oversee the investment of estate funds devolved to the United States Trustee. *See In re Columbia Gas Systems Inc*., 33 F.3d 294, 297-98 (3d Cir. 1994). For example, Section 345(b)(1)(B) provides that the United States Trustee must approve of corporate sureties used under that section. *Id*. at 297. Accordingly, to ensure that trustees and debtors in possession meet their responsibilities to safeguard funds in accordance with section 345, the United States Trustee monitors fiduciaries and depositories and requires that chapter 11estate assets be held in accounts at "authorized depositories," *i.e.*, those that have entered into UDA with the United States Trustee. *See* United States Trustee Program Policy and Practices Manual, Volume 7, "Banking and Bonding," ("Manual"), § 7-1.1, pp. 1-2, at

https://www.justice.gov/ust/file/volume_7_banking_and_bonding.pdf/download.

The UDA requires the depository to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit. Pursuant to the UDA, each authorized depository is required to provide quarterly reports for all bankruptcy estate accounts on deposit at all branches of the depository within the district. *See* Manual, § 7- 1.3.2, p. 6. *See* Manual, § 7-1.2.1, p. 2. The Manual also states that, should a chapter 11 debtor, trustee, or

examiner establish accounts in financial institutions or depositories outside the United States, it is

required to seek prior approval of the United States Trustee or the bankruptcy court. *See* Manual, §

7-1.2.3, pp. 4-5.

This Court may exercise its discretion to waive the requirements under 11 U.S.C. § 345(b),

but only "for cause." *See, e.g.*, *In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn.

1999) (finding "cause" exists for waiver of investment, deposit, and reporting requirement where

debtor is large, sophisticated entity with complex cash management system); *see also Ditech*

*Holding*, 605 B.R. at 17-18.

**B.  Debtors Fail to Address How the Risk of Institutional Failure and Market Risk of**
**the Trust Assets Will be Mitigated, or Why the Risk Does Not Need to be Mitigated.**

The Debtors request that the Court waive the requirements of section 345(b) of the

Bankruptcy Code and permit them to maintain over $400 million in Trust Assets in accounts at

entities that are not Authorized Depositories and are not secured by the undertaking of a corporate

surety. *See* Cash Management Motion at ¶ 9, 16, 17, 20.

While on its face, Section 345 appears to deal with only the deposit or investment of the

"money of the estate" 11 U.S.C. 345(a), the Bankruptcy Code does not define the term "money."

*See* 11 U.S.C. § 101.[4]  Further, the Debtors have not provided sufficient information regarding the

nature of the investment in the Trust Assets and the nature of the risk of such investment in the

Trust Assets.

The Debtors do not address in their motion the underlying market risk of holding assets in

---

[4] Legislative bodies have interpreted "money" in a variety of other contexts, but have not made a probative
determination regarding cryptocurrency. *See*, *e.g.,* UCC ¶1-201(b)(24) (stating "'Money' means a medium of exchange
currently authorized or adopted by a domestic or foreign government … [including] a monetary unit of account
established by an intergovernmental organization or by agreement between two or more countries."); *see also*
31C.F.R.§1010.100(m) ("The coin and paper money of the United States or of any other country that is designated as
legal tender and that circulates and is customarily used and accepted as a medium of exchange in the country of
issuance.");*see also* I.R.S., Notice 2014-21,at 1-2 (2014), available at http://www.irs.gov/pub/irs-drop/n-14-21.pdf
(stating that virtual currencies are considered property for income tax purposes).

securities that trade on the "OTC"[5] market. These securities appear to subject the estate to greater

market risk than holding funds in United States dollars. Failure to even address the market risk of

the securities held by the Debtors is failure to show cause to be excuse from compliance with

Section 345 because market risk is one of the primary risks that Section 345 seeks to protect.

In support of their request to be excused from compliance with Section 345, the Debtors

advance three arguments:

(i)     the Debtors cash management system is "cost-effective" and "efficient;
        (Cash Management Motion at ¶ 10, 12, 27)

(ii)    any disruption to the Debtors' cash management system would be
        "extremely detrimental" because it would impair their ability to promptly
        access cash and digital assets (Cash Management Motion at ¶ 12); and

(iii)   continuing use of the cash management system is consistent with section
        363(c)(1) because the cash management system is part of the ordinary
        course of the Debtors' businesses (Cash Management Motion at ¶ 28).

But these conclusory arguments are not supported by evidence, and significant questions

remain. The United States Trustee leaves the Debtors to their burden to demonstrate that the

requirements of 11 U.S.C. § 345, as applicable, are satisfied in connection with the Debtors'

investment in the Trust Assets.

### C.  Reservation of Rights in Connection with the Digital Assets

Bankruptcy courts or other courts have had limited opportunity to determine whether

cryptocurrency is money. In contrast to fiat currency, cryptocurrencies are not controlled by a

central authority (*e.g.*, a central bank) and are not FDIC-insured or held on deposit in accounts at

traditional banks that have executed a uniform depository agreement with the United States

Trustee. Regardless of whether cryptocurrency is characterized as digital money or property, it has

value, and the issue is what should be done to protect the Debtors', and by extension its creditors',

---

[5] OTC stands for "Over the Counter." Shares in GBTC and ETHE appear to be securities as they filed forms with SEC including Form 8-Ks and 10-Qs with SEC. *See* https://grayscale.com/sec/#btc and https://grayscale.com/sec/#eth (both last accessed on 3/16/2023).

risk with respect to the handling of the same under the circumstances. *See, generally*, 3 Collier on Bankruptcy ¶ 345.02 (16th 2022) ("safeguarding cash is important in every case, particularly when the debtor is a business of any sort"). In the Cash Management Motion, the Debtors have requested that the Court waive the requirements of section 345(b) of the Bankruptcy Code as it pertains to the Digital Assets. According to the Debtors, the value of the Debtors' digital assets as of March 10, 2023, is approximately $469 million.[6] The Debtors and the Committee have devised security protocols in connection with the Digital Assets. These protocols were outlined and built into the second interim order authorizing the Debtors to continue to operate the existing cash management system. *See* ECF Doc. No. 99 at ¶ 7. The United States Trustee leaves the Debtors to their burden to demonstrate that the requirements of 11 U.S.C. § 345, as applicable, are satisfied in connection with the agreed to security protocols. To the extent these protocols change, the United States Trustee reserves his right to argue that such a protocol may be improper, given market risks.

---

[6] By email to the United States Trustee dated March 17, 2023, the Debtors provided updated information about their holdings.

**CONCLUSION**

For the reasons set forth in this Statement, the United States Trustee requests that the

Court deny the Cash Management Motion with respect to the Debtors' request for a waiver of the

requirements under section 345 and 363 and grant other relief as is just.

Dated: March 20, 2023
New York, New York

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2

By:*/s/ Benjamin Teich*
Greg Zipes
Benjamin Teich
Tara Tiantian
Trial Attorneys
Office of the United States Trustee – NY Office
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10014 Tel.
No. (212) 510-0500
Fax No. (212) 668-2255