**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
David Turetsky
Michele J. Meises
1221 Avenue of the Americas
New York, New York 10020
Telephone:     (212) 819-8200
Facsimile:     (212) 354-8113

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606-4302
Telephone:     (312) 881-5400
Facsimile:     (305) 881-5450

*Proposed Counsel to Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 133** |

**THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS' LIMITED OBJECTION AND RESERVATION OF
RIGHTS TO THE DEBTORS' MOTION SEEKING ENTRY OF AN
ORDER (I) APPROVING THE BIDDING PROCEDURES AND RELATED
DEADLINES, (II) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH
RESPECT TO THE DEBTORS' SALE, AND (III) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") respectfully states as follows in support of this limited objection and reservation of rights to the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Deadlines,*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

*(II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, and (III) Granting Related Relief* [Docket No. 133] (the "**Motion**"):[2]

### Limited Objection

1. By the Motion, the Debtors seek to launch a joint process for the sale of the equity in, or assets of, the Debtors as well as non-Debtor affiliate Genesis Global Trading, Inc. ("**GGT**"). The Committee supports the joint marketing process, provided it is run in a fair and transparent manner that maximizes value for the Debtors' estates. In that regard, the Committee has been focused on two overarching concerns.

2. *First*, the Committee has sought to ensure that pursuit of the marketing process—which is contemplated by the Restructuring Term Sheet, dated February 10, 2023—does not presage approval of that term sheet or the transactions contemplated thereby. As it has expressed to the Debtors on multiple occasions, the Committee views the Restructuring Term Sheet as a useful framework and positive step to resolving these cases. However, absent resolution of certain significant outstanding issues, the Committee does not expect that the Restructuring Term Sheet represents a realistic path toward a successful restructuring. To that end, the Committee continues to work with the Debtors and other parties to address such issues and further develop the Restructuring Term Sheet into a viable restructuring construct. But until those efforts conclude, this Court's order, if any, granting the relief requested in the Motion should make clear that the Court is not approving or in any way sanctioning the Restructuring Term Sheet (or the transactions contemplated by it) and all rights of the Committee and other stakeholders are preserved with respect to such term sheet.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

3.      *Second*, the Committee has sought to ensure that the joint marketing process or a potential sale do not impair the Committee's investigation of Digital Currency Group, Inc. ("**DCG**"), the Debtors and GGT's ultimate equity owner, and various non-Debtor affiliates, which the Committee understands are also under scrutiny by Genesis Global Holdco, LLC's Special Committee.  The Committee's investigation of DCG and its affiliates is not yet complete and requests for information directed to the Debtors and DCG remain pending.  It is clear from the work to date, however, the estates hold significant claims and causes of action against DCG and its affiliates.  Thus, it is imperative that any sale involving the Debtors and GGT (whose executive team also manages the Debtors but does not report to the Special Committee) includes appropriate guardrails to ensure that DCG does not seek to directly or indirectly improperly influence or control any sale process or the ability of the estates to pursue potential claims and causes of action involving DCG or its affiliates.

4.      To that end, since prior to the filing of the Motion, the Debtors, the Committee, and the Ad Hoc Group of Genesis Lenders' respective professionals have engaged in extensive dialogue regarding the marketing process.  Those productive discussions have resulted in consensus regarding many—but not all—of the issues implicated by the marketing process.  In particular, the Committee expects that the Debtors will modify the proposed order and Bidding Procedures to address the following concerns raised by the Committee:

- *Role of the Special Committee*.  The Committee expects that the order and Bidding Procedures will provide that any actions taken by the Debtors with respect to the marketing process should be directed solely by the Special Committee, and not by any management that also reports to DCG.

- *Termination of DCG Consent and Consultation Rights*.  To allow the Debtors to make any determination involving DCG's consultation and consent rights and to provide clarity to interested parties regarding DCG's interest in a potential transaction, the Committee expects that the order and Bidding Procedures will establish a deadline by which DCG or any of its insiders or controlled affiliates

3

must identify whether or not it will submit a Bid or is an investor or affiliate of a party that intends to submit a Bid.

- *Allocation of Proceeds Involving GGT*.  The Committee expects that the order and Bidding Procedures will provide that where the assets are sold under section 363 of the Bankruptcy Code rather than under a chapter 11 plan, the allocation of the proceeds of the sale of GGT should be agreed upon among the Debtors, the Committee, the Ad Hoc Group of Genesis Lenders, and DCG or, in the event no agreement is reached, as determined by an independent accounting firm to be selected by agreement among such parties.

- *Role of Committee Professionals.*  To ensure that the Committee's professionals are kept abreast of sale related developments, the Committee expects that the order and Bidding Procedures will provide that the Debtors and their professionals keep the Committee's professionals reasonably updated regarding the status of the Sale process.

- *Allocation of Bid Protections Involving Joint Bid*.  The Committee expects that the order and Bidding Procedures will provide that the cost of any proposed Bid Protections with respect to a joint bid involving GGT should be allocated based on the portions of the Purchase Price attributable to the Debtors' assets and GGT, which will ensure that the estates do not bear the costs of Bid Protections with respect to GGT.

- *Disclosures Regarding Certain Bid Components*.  The Committee expects that the order and Bidding Procedures will provide that Bidders must identify any claims and causes of action under chapter 5 of the Bankruptcy Code that they wish to acquire and the portion of the Purchase Price attributable to such claims and causes of action.  The Committee expects that the order and Bidding Procedures will also clarify that Bidders may submit Bids denominated in whole or in part in digital assets as part of the marketing process.

5. The Committee commends the Debtors for their good-faith efforts to resolve many issues implicated by the Motion.  However, discussions regarding other issues remain ongoing and there is no consensual resolution regarding the following issues.  To the extent that those discussions do not result in a consensual resolution, the Committee respectfully requests that the Court condition approval of the Motion on the Debtors making the following modifications to the proposed order and Bidding Procedures:

- *Termination of DCG's Consultation and Consent Rights Following a Bid*. Under the Bidding Procedures, DCG has extensive consultation and consent rights with respect to GGT.  Consistent with past practice in this District, and to ensure the

4

integrity of the bidding process, those consent and consultation rights (including access to confidential Bids) should terminate if DCG or any of its insiders or controlled affiliates plan to submit a Bid or is an investor or affiliate of a Bidder (other than by virtue of its existing equity ownership in the Debtors).

- ***Modification of Certain Terms Should Require the Committee's Consent (Not to Be Unreasonably Withheld)***. Unlike most other complex chapter 11 cases, there are no funded debt creditors (such as a bank syndicate or bondholder group) in these cases. Rather, the Debtors' primary constituents are the lenders represented by the Committee. Much like the consent of a bank agent or bond trustee is typically required to modify or waive certain terms of a bidding procedures order, the Court should require the Debtors to obtain the Committee's consent (or a further order of the Court) prior to modifying the Sale Schedule and all other dates and deadlines set forth in the Bidding Procedures. Courts in this District have granted similar relief in at least one other complex cryptocurrency bankruptcy filing. *See In re Celsius Network LLC*, No. 22-10964 (MG), Dkt. No. 1272 (Bankr. S.D.N.Y. Nov. 2, 2022) at ¶ 3.

- ***Stalking Horse Designation Deadline***. The Bidding Procedures propose that the Stalking Horse Designation Deadline will occur after the Bid Deadline. To ensure that potentially interested parties have knowledge of any potential stalking horse, the Debtors should retain the opportunity (but not the obligation) to select a potential Stalking Horse Bidder prior to the Bid Deadline, which would set a minimum price for the Assets and encourage competitive bidding.

## Reservation of Rights

6. The Committee reserves all of its rights to supplement or amend this limited objection, to raise additional issues with the Motion at the hearing, and to present evidence at the hearing.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Bidding Procedures and order be modified in accordance with this limited objection, or, alternatively, that the Court deny the relief requested in the Motion, and grant such other and further relief as may be just and proper.

Dated: March 28, 2023

Respectfully submitted,

By: */s/ Gregory F. Pesce*

**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
David Turetsky
Michele J. Meises
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: cshore@whitecase.com
      philip.abelson@whitecase.com
      david.turetsky@whitecase.com
      michele.meises@whitecase.com

– and –

Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606-4302
Telephone: (312) 881-5400
Facsimile: (305) 881-5450
Email:  gregory.pesce@whitecase.com

*Proposed Counsel to Official*
*Committee of Unsecured Creditors*