CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF REVISED ORDER AUTHORIZING THE DEBTORS' MOTION SEEKING
ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES AND
RELATED DEADLINES, (II) SCHEDULING HEARINGS AND OBJECTION
DEADLINES WITH RESPECT TO THE DEBTORS' SALE,
AND (III) GRANTING RELATED RELIEF**

 **PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and certain of its debtor affiliates, as debtors and debtors-in-possession in the above captioned chapter 11 cases (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

 **PLEASE TAKE FURTHER NOTICE** that on March 16, 2023, the Debtors filed *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, and (III) Granting Related Relief*, ECF No. 133 (the "Motion"), which attached a proposed order as Exhibit A thereto (the "Proposed Order").

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that on March 29, 2023, the Debtors filed a revised version of the Proposed Order, attached hereto as <u>Exhibit A</u>.  A blackline against the previous version of the Proposed Order is attached hereto as <u>Exhibit B</u>.

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "<u>Hearing</u>") on the Motion will be held before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York on **March 30, 2023, at 11:00 A.M. (Prevailing Eastern Time)**.  The Hearing will be conducted only through Zoom for government.

**PLEASE TAKE FURTHER NOTICE** copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov, or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, at https://restructuring.ra.kroll.com/genesis or by calling +1 212 257 5450.  Note that a PACER password is needed to access documents on the Court's website.

**PLEASE TAKE FURTHER NOTICE** that the relief requested in the Motion may affect your rights.  Please read the pleadings carefully and, if you have one available, discuss it with your attorney.  (If you do not have an attorney, you should consider consulting with one.)

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Pleadings and may enter orders granting the relief requested by the Debtors.

Dated:   March 30, 2023
         New York, New York

*/s/ Jane VanLare*
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and Debtors-in-Possession*

**<u>EXHIBIT A</u>**
**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**ORDER AUTHORIZING THE DEBTORS' MOTION SEEKING ENTRY
OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES AND RELATED
DEADLINES, (II) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH
RESPECT TO THE DEBTORS' SALE, AND (III) GRANTING RELATED RELIEF**

Upon the consideration of the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, and (III) Granting Related Relief* (the "Motion")[2] and the First Day Declarations; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms not described herein shall have the meanings ascribed to them in the Motion.

Debtors, their estates, their creditors and other parties in interest; and upon all of the proceedings

had before the Court; and after due deliberation and sufficient cause appearing therefor,

### THE COURT HEREBY FINDS THAT

A.      The Court has jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      The bases for the relief requested in the Motion are sections 105(a), 363, 503, and

507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 3016, 3017, 3018, 3020, 6004,

6006(a), 9006, and 9007, and Local Rules 2002-1, 3017-1, 3018-1, 3020-1, 6004-1, 6006-1, and

9006-1, and the *Guidelines for the Conduct of Asset Sales* established and adopted by the Court on

November 19, 2009 pursuant to General Order M-383, and as updated on June 17, 2013.

C.      The Debtors have articulated good and sufficient reasons for authorizing and

approving the Bidding Procedures attached hereto as **Exhibit 1**, which are fair, reasonable, and

appropriate under the circumstances and designed to maximize the recovery on, and realizable

value of, the Debtors' enterprise and GGT, including with respect to the proposed procedures for

providing Bid Protections as determined by the Debtors in an exercise of their business judgment,

and upon consultation with the Consultation Parties and consent of DCG, as it relates to GGT,

subject to, and in accordance with, the procedures contained in this Bidding Procedures Order and

the Bidding Procedures.

D.      The findings and conclusions set forth herein constitute the Court's findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding

pursuant to Bankruptcy Rule 9014.  To the extent that any of the preceding findings of fact

3

constitute conclusions of law, they are adopted as such.   To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

E.      The Debtors' proposed notice of the Motion, the Bidding Procedures, the Hearing and the proposed entry of this Bidding Procedures Order is (a) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (b) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and (c) adequate and sufficient under the circumstances of these Chapter 11 Cases, and no other or further notice is required.   A reasonable opportunity to object or be heard regarding the relief granted by this Bidding Procedures Order has been afforded to the following parties and/or their respective counsel, as applicable: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Ad Hoc Group of Genesis Lenders; (iii) all creditors holding secured claims against the Debtors' estates; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.

F.      The Bidding Procedures comply with the requirements of Local Rule 6004-1.

G.      The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and certain dates and deadlines related thereto, and no other or further notice of the Auction shall be required.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.       Any objections, statements and reservations of rights to the relief requested in the

Motion that have not been withdrawn with prejudice, waived, or settled, and all reservations of

rights included in such objections, are OVERRULED and DENIED on the merits with prejudice.

A.       **Important Dates and Deadlines**

3.       The Sale Schedule as set forth below and all other dates and deadlines set forth in

the Bidding Procedures are approved, subject to modification, in consultation with the

Consultation Parties, in accordance with the Bidding Procedures; *provided* that the Debtors shall

provide notice of such modified dates in accordance with the terms of this Bidding Procedures

Order; *provided further* that the Committee reserves the right to object to any modification of the

Sale Schedule set forth below or any modification to the other dates and deadlines set forth in the

Bidding Procedures.

| Action | Description | Deadline |
|---|---|---|
| Bidding Procedures Hearing | The hearing before the Court to consider this Motion | March 30, 2023 |
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received | May 5, 2023 |
| Stalking Horse Designation Deadline | The date by which the Debtors may designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any; provided however that the Debtors may designate a Stalking Horse Bidder at any time prior to the Stalking Horse Designation Deadline; and provided further that the Debtors, in consultation with the Consultation Parties, may extend the Stalking Horse Designation Deadline provided that a notice of any such extension is filed on the docket | June 12, 2023 |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures, as well as the deadline by which DCG must identify whether it or any of its insiders or controlled affiliates will submit a Bid or whether any newly created entity wholly-owned or directly or indirectly controlled by DCG'S insiders or controlled affiliates (other than by virtue of its existing equity ownership in the Debtors) intends to submit a Bid | June 19, 2023 |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom | June 27, 2023 |

| Deadline to file the Designation of Successful Bid | The deadline to file a notice designating the Successful Bid and Successful Bidder, as well as the Back-up Bid and Back-up Bidder | One business day following the conclusion of the Auction |
|---|---|---|
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline") | July 7, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |
| Sale Hearing (subject to the Court's availability) | The Sale will be implemented under the Plan and shall be approved at the Confirmation Hearing | July 14, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |

B.    **The Bidding Procedures.**

4.    The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and incorporated as though fully set forth herein, are hereby approved in their entirety, and the Debtors are authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures.[3]  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale.  Any party desiring to bid on one or more individual assets or all or substantially all of the Assets shall comply with the Bidding Procedures and this Bidding Procedures Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

5.    Notwithstanding anything to the contrary in this Bidding Procedures Order or the Bidding Procedures, each of DCG's consultation and consent rights reflected in the Bidding Procedures or in this Bidding Procedures Order shall terminate in the event the Debtors determine that DCG or any of its insiders or any controlled affiliates of DCG or its insiders plans to submit

---

[3]    Any reference to the Debtors in this Bidding Procedures Order or the Bidding Procedures shall mean the Debtors acting at the sole and exclusive direction of the Special Committee of the Board of Directors of Genesis Global Holdco, LLC.

a Bid or if any newly created entity wholly-owned or directly or indirectly controlled by DCG'S

insiders or controlled affiliates (other than by virtue of its existing equity ownership in the Debtors)

intends to submit a Bid; *provided*, however, DCG shall have the right to consent to the ultimate

Sale of GGT.

6.      Notwithstanding anything to the contrary in this Bidding Procedures Order or the

Bidding Procedures, the Debtors and their professionals shall make reasonable efforts to provide

the Committee's professionals with reasonably timely updates regarding the status of the Sale

process, including taking reasonable steps to notify the Committee's professionals regarding: (i)

the names of Potential Bidders contacted regarding the Sale process; (ii) the names of Potential

Bidders that execute Confidentiality Agreements; (iii) the names of Potential Bidders that

participate in management meetings or similar material meetings or discussions with the Debtors

regarding a potential Bid; and (iv) any potential modifications to, or potential waivers of, the

Bidding Procedures.

**C.      Stalking Horse and Bid Protections.**

7.      Subject to approval by the Court as provided in this paragraph, the Debtors are

authorized, but not directed, in a manner consistent with the exercise of their fiduciary duties, after

consultation with the Consultation Parties (including, for the avoidance of any doubt, with respect

to any proposed Bid Protections) and with the consent of DCG,  as it relates to GGT, to select one

or more bidders to act as a Stalking Horse Bidder for some or all of the Assets, and enter into a

Stalking Horse Agreement with such Stalking Horse Bidder.  If the Debtors, after consultation

with the Consultation Parties (including, for the avoidance of any doubt, with respect to any

proposed Bid Protections) and with the consent of DCG, as it relates to GGT, select one or more

bidders to act as the Stalking Horse Bidder and enter into a Stalking Horse Agreement with such

Stalking Horse Bidder, then, within one (1) business day following such selection, the Debtors shall file a notice (a "Stalking Horse Designation Notice"): (i) setting forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) setting forth the amount of the Stalking Horse Bid and what portion (if any) is cash or digital assets (and the denominations of such digital assets); (iii) stating whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specifying any proposed Bid Protections (including the amount and calculation thereof); (v) attaching the Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (vi) setting forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections. If no objections to the Stalking Horse Designation Notice (including, for the avoidance of any doubt, with respect to any proposed Bid Protections) are filed on the Court's docket by 12:00 p.m. (prevailing Eastern Time) on the date that is five (5) business days of filing of the Stalking Horse Designation Notice (the "Notice Period"), the Debtors shall submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for further hearing. If a party timely files an objection to the Stalking Horse Designation Notice on the Court's docket, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

8.      For purposes of this Bidding Procedures Order and the Bidding Procedures, the Bid Protections shall consist of: (a) the Breakup Fee in an amount not to exceed three percent (3%) of the cash portion of the proposed Purchase Price; and (b) the Expense Reimbursement. Subject to approval by the Court following the Notice Period as provided in the preceding paragraph, the Debtors are authorized, but not directed, to incur and pay such Bid Protections to any or no Stalking

Horse Bidder, in an exercise of their business judgment, in consultation with the Consultation Parties, without further action or order by the Court; *provided* that the Bid Protections shall only be payable upon consummation of an alternative transaction.  To the extent a Stalking Horse Bidder is selected with respect to sale of GGT, any portion of the Breakup Fee payable to any such Stalking Horse Bidder on account of GGT shall be deducted from the value ascribed to GGT pursuant to the Plan.  In the event GGT is sold outside of the Plan, portions of proceeds proportionate to the allocation of value ascribed to GGT shall be used to reimburse the Debtors for the Breakup Fee paid to any Stalking Horse Bidder on account of the sale of GGT.  To the extent the parties are not able to agree upon the portion of the Breakup Fee payable to any such Stalking Horse Bidder on account of GGT, an independent accounting firm to be selected by agreement among such parties shall determine the appropriate amount of such portion of the Breakup Fee.

9.      No person or entity, other than a Stalking Horse Bidder (that is not an insider or affiliate of the Debtors), shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

10.     Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement or order of this Court.

D.    **The Sale Notice**

11.    The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  As soon as reasonably practicable following the entry of this Bidding Procedures Order, but in no event later than five business days, the Debtors will cause the Bidding Procedures Order, the Bidding Procedures and the Sale Notice to be served by first-class mail upon: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Ad Hoc Group of Genesis Lenders; (iii) all creditors holding secured claims against the Debtors' estates; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. In addition, by no later than seven (7) days following the mailing date, the Debtors shall publish the Sale Notice, with any modifications necessary for ease of publication, once in the national edition of *The New York Times* and *USA Today*, to provide notice to any other potential interested parties, and post the Sale Notice on the Debtors' restructuring website at https://restructuring.ra.kroll.com/genesis.

E.    **The Auction**

12.    The date and time of the Auction, if needed, is June 27, 2023 at 10:00 a.m. prevailing Eastern Time, which time may be adjourned or extended by the Debtors in consultation with the Consultation Parties and DCG, as it relates to the sale of GGT, upon written notice to the Court.  The Auction will be held at the offices of counsel to the Debtors:  Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom.  The Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than two business days before such Auction and will post notice of the date, time, and place of the Auction no later than two business days before such Auction on the docket for

these Chapter 11 Cases and on the website of the Debtors' notice, claims, and solicitation agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/genesis.   For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.

F.    **Miscellaneous**

13.    Notwithstanding anything to the contrary in the Motion, this Bidding Procedures Order, or any findings announced at the hearing, nothing in the Motion, this Bidding Procedures Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission or the Committee to challenge transactions involving crypto tokens on any basis are expressly reserved.

14.    The Court, at the request of the Debtors (with consent of DCG, as it relates to GGT) and subject to its availability, may modify the dates of and adjourn any hearing set by this Bidding Procedures Order without further Order of this Court, *provided* that the Debtors will serve notice to all requisite parties informing them of such modification.

15.    Subject to paragraph 3, the Debtors may, in consultation with the Consultation Parties and with consent of DCG, as it relates to GGT, continue or adjourn the Auction at any time, re-open the Auction at any time prior to the deadline to file the notice designating the Successful Bidder, and otherwise modify any of the deadlines set forth herein; *provided* that the Debtors will serve notice to all requisite parties informing them of such action.

16.    In the event the Sale Hearing and Confirmation Hearing are held separately and the Assets (including GGT) are sold prior to the Confirmation Hearing, the proceeds of the sale of GGT shall be agreed upon among the Debtors the Committee, the Ad Hoc Group of Genesis

Lenders, and DCG or, in the event no agreement is reached, as determined by an independent accounting firm to be selected by agreement among such parties. The proceeds of the sale of GGT shall thereafter be distributed in accordance with the Plan or, to the extent a plan of reorganization is not confirmed within 60 days following the sale of GGT, or as otherwise provided in a plan support agreement to be entered into by the parties. The Debtors and the Committee reserve the right to file a motion with Court to extend the 60-day period.

17.    The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order shall not diminish or impair the effectiveness or enforceability of such a provision.

18.    In the event of any inconsistencies between this Bidding Procedures Order and the Motion and/or the Bidding Procedures, this Bidding Procedures Order shall govern in all respects.

19.    The Debtors may modify any Bid Deposit, upon consultation with the Consultation Parties and with consent of DCG, as it relates to GGT, as necessary or appropriate, based on the Assets being sold.

20.    Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Bidding Procedures Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Bidding Procedures Order.

21.    Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

22.    All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23.    This Court shall retain exclusive jurisdiction with respect to all matters arising from

or related to the implementation, interpretation or enforcement of this Bidding Procedures Order.

Dated: _____, 2023
          White Plains, New York

                                                            The Honorable Sean H. Lane
                                                            United States Bankruptcy Judge

**<u>Exhibit 1</u>**

**Bidding Procedures**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT AND ANALYSIS**
**OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS**

On January 19, 2023 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" and the cases, the "Chapter 11 Cases"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the Bankruptcy Court for the Southern District of New York (the "Court").

On March 16, 2023, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Deadlines, (II) Scheduling the Hearings and Objection Deadlines with Respect to the Debtors' Sale, and (III) Granting Related Relief* [Docket No. 133] (the "Motion")[2] seeking, among other things, the entry of an order approving these bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

process by which the Debtors are authorized to solicit the highest or otherwise best bids (each, a "Bid") and conduct an auction (the "Auction") for the sale (the "Sale") of equity in, or assets of, the Debtors and certain of their affiliates, including Genesis Global Trading, Inc. (collectively, unless otherwise waived or released pursuant to a plan support agreement to be entered into by the parties, the "Assets").

The Sale, if any, will be implemented pursuant to a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan") (subject to approval of the relevant procedures, dates, and other requirements for confirmation of the Plan).

Copies of the Bidding Procedures Order, the Bidding Procedures, and any other related documents can be viewed and/or obtained: by (i) accessing the Court's website at www.nysb.uscourts.gov or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, at https://restructuring.ra.kroll.com/genesis/ or by calling +1 888-524-2017.   Note that a PACER password is needed to access documents on the Court's website.

A.      **Overview of the Marketing Process and Assets to Be Sold.**

On February 10, 2023, the Debtors filed the Restructuring Term Sheet, which contemplates, among other things, a marketing and sales process to maximize the value of any disposition of Genesis Global Trading, Inc. ("GGT," a non-debtor owned by Digital Currency Group, Inc. "DCG"), Genesis Global Holdco, LLC (a Debtor owned by DCG) ("Holdco") and Holdco's subsidiaries (indirectly owned by DCG) and their respective assets comprising the Genesis Platform.  The Debtors, through their investment banker Moelis & Company LLC ("Moelis"), are marketing for Sale of the Genesis Platform, including the assets or equity of GGT, and will consider Bids: (i)(A) for all or substantially all of the Genesis Platform ("All Assets") to a Successful Bidder (as defined below) or (B) to the extent that, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties (as defined below) separating the Assets into more than one potential Sale is in the best interest of their estates, for subsets of the Assets (each, an "Asset Package") to two or more Successful Bidder(s); and (ii) in the form of a reorganization or acquisition of equity interests in the Debtors and certain non-debtor affiliates, or a merger or other combination with one or more Successful Bidders. Additionally, the Debtors may, in their reasonable business judgment and in consultation with the Consultation Parties, consummate a Sale(s) of any Asset Package(s) with consent of DCG,[3] as it relates to GGT, and also pursue the Equitization (as defined in the Restructuring Term Sheet) with respect to the remaining Assets that are not subject to such Sale(s).  References to the "Confirmation Hearing" (as defined below) shall mean the hearing to confirm the Plan including the Equitization provisions set forth therein and the plan sale provisions, if applicable.

---

[3]      Notwithstanding anything to the contrary in these Bidding Procedures, each of DCG's consultation and consent rights herein shall terminate in the event the Debtors determine that DCG or any of its insiders, or any controlled affiliates of DCG or its insiders plans to submit a Bid or whether any newly created entity wholly-owned or directly or indirectly controlled by DCG'S insiders or controlled affiliates (other than by virtue of its existing equity ownership in the Debtors) intends to submit a Bid; *provided*, however, DCG shall have the right to consent to the ultimate Sale of GGT.

The Debtors shall determine, in consultation with the Required Consenting GGC Creditors, the Ad Hoc Group Advisors, and the Committee (each as defined in the Restructuring Term Sheet and, collectively, the "Consultation Parties"), together with the consent of DCG, as it relates to GGT, whether a Sale, a Wind-Down, an Equitization, or another course of action represents the most value maximizing disposition of the Genesis Platform. If the Debtors do not receive any Qualified Bid (or any combination of Bids for separate Asset Packages that, when taken together, would constitute a single Qualified Bid) by the Bid Deadline (each as defined below) that is acceptable to the Debtors, the Debtors may, in consultation with the Consultation Parties and with consent of DCG, as it relates to GGT, cancel the Auction. The Debtors reserve their rights, subject to prior written consent of DCG as it relates to GGT and in consultation with the Consultation Parties and subject to the terms of the Bidding Procedures Order, to (i) modify, change or extend the deadlines set forth in these Bidding Procedures; (ii) modify bidding increments; (iii) adjourn, reschedule or cancel the Auction; withdraw from the Auction any or all of the Assets at any time prior to or during the Auction; or (v) cancel the Sale process or, if the Debtors determine, in consultation with the Consultation Parties, that it will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties and not be inconsistent in any material respect with any Court order, modify these Bidding Procedures at any time or impose, at or prior to the Auction(s), additional customary terms and conditions on the sale of the Assets after consultation with the Consulting Parties (*provided* that the Debtors may not increase the Bid Protections without further approval of the Court). The Debtors also reserve their rights, in consultation with the Consultation Parties, to adjourn the Sale Hearing by an announcement of the adjourned date at a hearing before the Court or by filing a notice on the Court's docket. For the avoidance of any doubt, notwithstanding anything to the contrary herein, no party that submits an Indication of Interest or Bid shall have any consultation rights hereunder.

## B.    **Key Dates and Deadlines.**

The key dates and deadlines for the bidding and sale of the Assets are as follows:

| Action | Description | Deadline |
|---|---|---|
| Bidding Procedures Hearing | The hearing before the Court to consider this Motion | March 30, 2023 |
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received | May 5, 2023 |
| Stalking Horse Designation Deadline | The date by which the Debtors may designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any; provided however that the Debtors may designate a Stalking Horse Bidder at any time prior to the Stalking Horse Designation Deadline; and provided further that the Debtors, in consultation with the Consultation Parties, may extend the Stalking Horse Designation Deadline provided that a notice of any such extension is filed on the docket | June 12, 2023 |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures, as well as the deadline by which DCG must identify whether or not it or any of its insiders or controlled affiliates will submit a Bid or whether any newly | June 19, 2023 |

| | | |
|---|---|---|
| | created entity wholly-owned or directly or indirectly controlled by DCG'S insiders or controlled affiliates (other than by virtue of its existing equity ownership in the Debtors) intends to submit a Bid | |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom | June 27, 2023 |
| Deadline to file the Designation of Successful Bid | The deadline to file a notice designating the Successful Bid and Successful Bidder, as well as the Back-up Bid and Back-up Bidder | One business day following the conclusion of the Auction |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline") | July 7, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |
| Sale Hearing (subject to the Court's availability) | The Sale will be implemented under the Plan and shall be approved at the Confirmation Hearing | July 14, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |

Pursuant to the Bidding Procedures Order, the Debtors may, upon consultation with the Consultation Parties, modify the key dates and deadlines; *provided* that the Debtors shall provide notice of such modified dates in accordance with the Bidding Procedures Order; *provided further* that the Committee reserves the right to object to any modification of the Sale Schedule set forth above or any modification of the other dates and deadlines set forth herein.

Additional requirements related to approval and consummation of the Sale (including contract and lease assumption, assumption and assignment, and rejection procedures and objection deadlines) under a chapter 11 plan will be described in further detail in a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan.

C.     **Public Announcement of Auction.**

As soon as reasonably practicable following the entry of this Bidding Procedures Order, but in no event later than five business days, the Debtors will cause the Bidding Procedures Order, the Bidding Procedures, and the Sale Notice to be served by first-class mail upon (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Ad Hoc Group of Genesis Lenders; (iii) all creditors holding secured claims against the Debtors' estates; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. In addition, by no later than seven (7) days following the mailing date, the Debtors shall publish the Sale Notice, with any modifications necessary for ease of publication, once in the national

edition of *The New York Times* and *USA Today*, to provide notice to any other potential interested parties, and post the Sale Notice on the Debtors' restructuring website at https://restructuring.ra.kroll.com/genesis.

D.     **Confidentiality Agreement.**

The Debtors, in consultation with Moelis, the Consultation Parties and with the consent of DCG, as it relates to GGT, have developed a list of Potential Bidders (as defined herein) whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a Sale. The Debtors have distributed, or shall distribute (to the extent not already distributed), to each such Potential Bidder and any other interested Potential Bidder an "Information Package" consisting of: (i) a copy of these Bidding Procedures, the Bidding Procedures Order, and the Bidding Procedures Motion; (ii) a form confidentiality agreement to be entered into with the Debtors and GGT (a "<u>Confidentiality Agreement</u>"); and (iii) such other diligence materials as the Debtors and DCG, as it relates to GGT, deem appropriate under the circumstances to provide the Potential Bidders with information necessary to prepare their Indications of Interest (as defined herein).

E.     **Participation Requirements and Non-Binding Indications of Interest.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, an entity interested in submitting a Bid (a "<u>Potential Bidder</u>") must deliver (unless previously delivered) to each of (i) the Debtors' investment banker, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Zul Jamal (zul.jamal@moelis.com), Barak Klein (barak.klein@moelis.com), Michael DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com); (ii) counsel to the Debtors, Cleary Gottlieb, Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006 Attn: Sean A. O'Neal, Esq. (soneal@cgsh.com) and Jane VanLare, Esq. (jvanlare@cgsh.com); (iii) counsel to DCG, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Jeffrey D. Saferstein (jeffrey.saferstein@weil.com), Ronit Berkovich (ronit.berkovich@weil.com) and Jessica Liou (jessica.liou@weil.com); (iv) counsel to the Committee, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com), and 1221 Avenue of the Americas, New York, New York 10020, Attn: Philip Abelson (philip.abelson@whitecase.com); (v) the Committee's investment banker, Houlihan Lokey Capital, Inc., 225 South Sixth St., Suite 4950, Minneapolis, Minnesota 55402, Attn: Brad Geer (BGeer@HL.com), and 245 Park Avenue, 20th Floor, New York, New York 10167, Attn: David Cumming (DCumming@HL.com); and (vi) counsel to the Ad Hoc Group, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Brian S. Rosen (brosen@proskauer.com) and Jordan Sazant (jsazant@proskauer.com) (collectively, the "<u>Notice Parties</u>"), together with an executed Confidentiality Agreement, a written non-binding indication of interest (the "<u>Indication of Interest</u>") containing all material terms, including, but not limited to:

> (i)   the identity and a description (including entity type, jurisdiction of formation or organization, such legal entity's ultimate parent company, the identity of all key equity owners, and ultimate beneficial owners of such person or legal entity (and/or sponsors, if the purchaser is an entity formed for the purpose of consummating

the acquisition of the Assets), credit rating, and regulators, if applicable) of the Potential Bidder;

(ii) (a) the proposed Purchase Price (as defined herein) in U.S. dollars; (b) the form(s) of consideration and the amount of each form of consideration valued in U.S. dollars; (c) the allocation of value for GGT and GGH Assets in the proposed Purchase Price (as defined herein); and (d) the acquisition structure and key terms and conditions;

(iii) a statement of which specific Assets the Potential Bidder intends to acquire, any liabilities the Potential Bidder intends to assume, and which Assets the Potential Bidder does not intend to acquire;

(iv) a statement specifying whether the Potential Bidder proposes to acquire claims and causes of action of the Debtors under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law and identifying the proposed purchase price for such claims;

(v) a statement specifying any key assumptions and any variables to which the Potential Bidder's valuation is sensitive, as well as any other information the Potential Bidder believes will assist in evaluation of the Indication of Interest;

(vi) a brief assessment of the Potential Bidder's rationale for the Indication of Interest and the Potential Bidder's intentions with respect to the applicable Assets.  The Indication of Interest should also highlight any former involvement in similar sectors to the Debtors and any other relevant facts that support the basis for the Indication of Interest;

(vii) a statement regarding the level of review and, if necessary, approval that the Indication of Interest has received within the Potential Bidder's organization.  The Indication of Interest should also provide a list of any corporate, shareholder, regulatory, or other approvals required to complete the Sale and the timing to obtain such approvals as well as any other conditions or potential impediments to the consummation of the Sale;

(viii) a detailed description of the intended sources of any financing required for the proposed Sale and any contingencies related thereto, as well as an indication of the timing and steps, if any, required to secure such financing, or preliminary proof of information as to the Potential Bidder's financial capacity to close a proposed Sale;

(ix) a description of the Potential Bidder's intention with respect to any relevant members of the Debtors', GGT's and Holdco's subsidiaries' current management team and other employees and a description of

any contemplated incentive plan, to the extent applicable;

(x)  a detailed list of due diligence topics, documents required to review, and other material diligence items including site visits, as well as timing in order to finalize a definitive written agreement;

(xi) a description of any anticipated regulatory approval process for the applicable Assets and the Potential Bidder's ability to obtain any required regulatory approvals on a timely basis;

(xii) a description of the expected timetable to consummate a Sale.  Any material conditions or other relevant information that might influence the Potential Bidder's ability to consummate a transaction in a timely fashion should be disclosed;

(xiii) a list of the names, and respective functions, of the Potential Bidder's due diligence team and any legal, financial, and other advisors the Potential Bidder has engaged or would plan to engage in connection with the Sale, including their contact information, and the names, phone numbers, and email addresses of the individuals prepared to answer any questions regarding the Indication of Interest;

(xiv) a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a description of the nature of such partnership and joint Bid; and

(xv) to the extent known, a statement detailing whether the Potential Bidder is an affiliate or insider of DCG or any of its insiders.

The submission of an Indication of Interest by a Person does not (i) obligate such Potential Bidder to submit a Bid or to participate in the sale process, or (ii) exempt such Potential Bidder from also having to submit a Bid by the Bid Deadline to participate in the Auction.

Within four (4) business days after a Potential Bidder delivers the Indication of Interest, the Debtors will determine in their reasonable business judgment, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, whether such Potential Bidder has submitted acceptable documents (any such Potential Bidder being referred to as an "Acceptable Bidder") and notify each Potential Bidder if it is determined to be an Acceptable Bidder.  In the event that the Debtors deem that a Potential Bidder has not met the requirements for being deemed an Acceptable Bidder, the Debtors must promptly inform the Consultation Parties of such determination (and the reasons therefor).  Only those Potential Bidders that have submitted acceptable documentation to the reasonable satisfaction of the Debtors and their advisors and DCG and their advisors, as it relates to GGT, may submit bids to purchase the Debtors' Assets.  The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the documents.  The Debtors will provide regular updates to the Consultation

Parties and DCG, through their counsel, regarding Potential Bidders, Indications of Interest, and Acceptable Bidders.

**Indications of Interest must be sent to the Notice Parties so as to be <u>actually received</u> no later than May 5, 2023, at 12:00 p.m., prevailing Eastern Time (the "<u>Indication of Interest Deadline</u>").**

F.     <u>**Involvement of the Committee's Professionals in the Sale Process.**</u>

Notwithstanding anything to the contrary in these Bidding Procedures, the Debtors and their professionals shall make reasonable efforts to provide the Committee's professionals reasonably timely updates regarding the status of the Sale process, including taking reasonable steps to notify the Committee's professionals regarding:  (i) the names of Potential Bidders contacted regarding the Sale process; (ii) the names of Potential Bidders that execute Confidentiality Agreements; (iii) the names of Potential Bidders that participate in management meetings or similar material meetings or discussions with the Debtors regarding a potential Bid; (iv) any potential modifications to, or potential waivers of, the Bidding Procedures.

G.     **Due Diligence.**

(i)     <u>Access to Due Diligence</u>.

Only Potential Bidders who have fully executed Confidentiality Agreements will be eligible to receive access to the virtual data room and reasonable due diligence information concerning those Assets that are the subject of such Potential Bidder's Bid (or such other Assets if the list provided in accordance with section E(iii) above is amended or modified), as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, but shall only extend to those Assets (or such other Assets if the list provided in accordance with section E(iii) above is amended or modified) that are the subject of such Potential Bidder's Bid.  Such dataroom shall also be accessible by DCG.  The due diligence period will end on the Bid Deadline (as defined herein), after which the Debtors will have no obligation to furnish any due diligence information, unless otherwise deemed reasonably appropriate by the Debtors.

The Debtors and their advisors will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders, with the consent of DCG, as it relates to GGT; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' reasonable business judgment, with the consent of DCG, as it relates to GGT, have not established that such Potential Bidders intend in good faith to, or have the capacity to, consummate their Bid.   No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline (as defined herein).

The Debtors also reserve the right in their business judgment, with the consent of DCG, as it relates to GGT, to withhold any diligence materials at any time and for any reason, including, without limitation, if (i) the Potential Bidder does not become, or the Debtors and/or DCG, as it relates to GGT, in consultation with the Consultation Parties, determine that the Potential Bidder is not likely to become, a Qualified Bidder (as defined herein), (ii) the Potential Bidder violates the terms of its executed Confidentiality Agreement, (iii) the Debtors and/or DCG, as it relates to GGT, become aware (A) that the information set forth in the Indication of Interest is inaccurate or

misleading or (B) of any other reason to doubt such Potential Bidder's ability to close its contemplated transaction, (iv) the bidding process is terminated for any reason, or (v) the Debtors and/or DCG, as it relates to GGT, determine that the diligence materials are sensitive, proprietary, or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors and/or DCG, as it relates to GGT, reasonably determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors or GGT.   Neither the Debtors, DCG nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder (as defined herein).

Each Potential Bidder will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct any and all due diligence regarding the Assets and liabilities that are the subject of the Auction to the extent of the Assets and liabilities that are the subject of their Bid prior to making any such Bid; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures; and (d) unless and until a definitive written agreement is executed and delivered by all parties thereto, none of the Debtors or Debtors' representatives shall have any obligations to any Bidder.   Neither the Debtors, DCG, GGT nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders in connection with the Sale.

**The Debtors have designated Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Zul Jamal (zul.jamal@moelis.com), Barak Klein (barak.klein@moelis.com), Michael DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com), to coordinate all reasonable requests for additional information and due diligence access.**

(ii)      No Communications with Restricted Parties.

No Potential Bidder, Acceptable Bidder or Qualified Bidder (each as defined herein) shall communicate with any of the Debtors', DCG's, GGT's or Holdco's subsidiaries' vendors, suppliers, directors, employees, customers, creditors, or regulators, DCG or any other Potential Bidder, Acceptable Bidder or Qualified Bidder (each of the foregoing, a "Restricted Party") with respect to any potential bid or transaction or receive or be given access to any non-public information or documentation related to a potential bid or transaction absent the prior written consent of the Debtors or its advisors, and DCG or its advisors, as it relates to GGT; *provided* that if such consent is given, a representative of the Moelis and DCG, as it relates to GGT, shall be present for or party to any such communications (unless otherwise agreed by the Debtors or DCG, as it relates to GGT).

The Debtors reserve the right, in their reasonable business judgment upon consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT, to disqualify any Potential Bidders and/or Acceptable Bidders that have had communications with any Restricted Party.

H.    **Due Diligence from Potential Bidders (including Qualified Bidders).**

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated transaction.  Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

I.    **Stalking Horse Bidders and Bid Protections.**

Subject to approval by the Court as provided in the Bidding Procedures Order, the Debtors are authorized, but not obligated, in a manner consistent with the exercise of their fiduciary duties, after consultation with the Consultation Parties (including, for the avoidance of any doubt, with respect to any proposed Bid Protections) and with the consent of DCG, as it relates to GGT, to: (a) select one or more Acceptable Bidders to act as stalking horse bidder(s) in connection with the Auction (each, a "Stalking Horse Bidder"); (b) enter into an agreement for the sale of the applicable Assets to a Stalking Horse Bidder (a "Stalking Horse Agreement"); and (c) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder (i) provide a breakup fee (the "Breakup Fee") in an amount up to three percent (3%) of the cash portion of the proposed Purchase Price, and/or (ii) agree to reimburse reasonable and documented out-of-pocket fees and expenses of such Stalking Horse Bidder in an aggregate amount not to exceed $50,000 (the "Expense Reimbursement," and together with the Breakup Fee, the "Bid Protections"); *provided* that if there are multiple Stalking Horse Bidders for separate Asset Packages then the expense reimbursement component of the Bid Protections shall be pro-rated between each such Stalking Horse Bidder based on the total consideration of each Bid; *provided* that the Bid Protections shall only be payable upon consummation of an alternative transaction.  The Debtors shall not provide a Breakup Fee to any Stalking Horse Bidder on account of the portion of the Purchase Price of such Bid that is a credit bid, assumption of liabilities, or other non-cash (or cash-equivalent) consideration, nor provide any Bid Protection to an insider or affiliate of the Debtors.  The Debtors reserve all rights to determine, in their reasonable business judgment and with the consent of DCG, as it relates to GGT, in consultation with the Consultation Parties, whether to pay any amounts constituting Bid Protections to any Stalking Horse Bidder.  To the extent a Stalking Horse Bidder is selected with respect to Sale of GGT, any portion of the Breakup Fee payable to any such Stalking Horse Bidder on account of GGT shall be deducted from the value ascribed to GGT pursuant to the Plan.  In the event GGT is sold outside of the Plan, portions of proceeds proportionate to the allocation of value ascribed to GGT shall be used to reimburse the Debtors for the Breakup Fee paid to any Stalking Horse Bidder on account of the sale of GGT.  To the extent the parties are not able to agree upon the portion of the Breakup Fee payable to any such Stalking Horse Bidder on account of GGT, an independent accounting firm to be selected by agreement among such parties shall determine the appropriate amount of such portion of the Breakup Fee.

If the Debtors, after consultation with the Consultation Parties (including, for the avoidance of any doubt, with respect to any proposed Bid Protections) and with the consent of DCG, as it relates to GGT, select one or more Acceptable Bidders to serve as the Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder, then, within one (1)

business day following such selection, the Debtors shall file a notice of each such Stalking Horse Bidder, Bid Protections, and Stalking Horse Agreement(s) (the "Stalking Horse Designation Notice") with the Court. The Stalking Horse Designation Notice shall: (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Stalking Horse Bid and what portion (if any) is cash or digital assets (and the denominations of such digital assets); (iii) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specify any proposed Bid Protections (including the amount and calculation thereof); (v) attach the Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (vi) set forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections. If no objections to the Stalking Horse Designation Notice (including, for the avoidance of any doubt, with respect to any proposed Bid Protections) are filed on the Court's docket by 12:00 p.m. (prevailing Eastern Time) on the date that is five (5) business days of filing of the Stalking Horse Designation Notice (the "Notice Period"), the Debtors shall submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for further hearing. If a party timely files an objection to the Stalking Horse Designation Notice on the Court's docket, the court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

**The date by which Debtors' may designate a Stalking Horse Bidder shall be June 12, 2023, at 12:00 p.m., prevailing Eastern Time (the "Stalking Horse Designation Deadline"); *provided* however that the Debtors may designate a Stalking Horse Bidder at any time prior to the Stalking Horse Designation Deadline; and *provided further* that the Debtors, in consultation with the Consultation Parties, may extend the Stalking Horse Designation Deadline provided that a notice of any such extension is filed on the docket.**

J.      **Bid Requirements.**

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors, DCG and their advisors, a written, binding and irrevocable offer that is determined by the Debtors, in their business judgment, in consultation with the Consultation Parties, and by DCG, as it relates to GGT, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

(i)    Purpose. Each Acceptable Bidder must state that the Bid includes an offer by the Acceptable Bidder to acquire equity and/or some or all of the Assets, and identify the Assets with reasonable specificity.

(ii)   Transaction Structure and Purchase Price. Each Bid must clearly set forth: (i) the purchase price to be paid for the Assets (the "Purchase Price"); (ii) the form and source of consideration, including funding commitments; and (iii) the structure and key terms and conditions. The Bid should confirm that such consideration is not subject to any contingencies and include a detailed sources and uses schedule. Each Bid for a combination of Assets must: (x) provide a breakdown of the share of the Purchase Price allocable to each of the Assets included in

the Bid, (y) state whether the Bid is conditioned upon the Bid being a Successful Bid (as defined below) for any of the other Assets included in the Bid (and, if so, which Assets), and (z) state whether the Person is willing to purchase any of the Assets included in the Bid individually and, if so, the price such Person would pay for each such Asset.

(iii)    <u>Bid Deposit</u>.    Each Bid must be accompanied by a cash deposit equal to the greater of (a) 10 percent of the aggregate Purchase Price of the Bid and (b) $10 million (the "<u>Good Faith Deposit</u>"),[4] to be submitted by wire transfer to an escrow account to be identified and established by the Debtors.[5]  To the extent that a Bid is modified at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals 10 percent of the increased Purchase Price promptly, and in no event later than one (1) business day following the conclusion of the Auction.

(iv)    <u>Committed Financing</u>.    To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, in consultation with the Consultation Parties, and DCG's satisfaction as it relates to GGT that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and other obligations under its Bid.    Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties, and reasonably acceptable to DCG, as it relates to GGT.

(v)    <u>Good Faith Offer</u>.    Each Bid must represent an irrevocable, binding, good faith, and *bona fide* offer to purchase all, or if acceptable to the Debtors, in consultation with the Consultation Parties, and DCG, as it relates to GGT, a portion of the Assets identified in such Bid if such Bid is selected as the Successful Bid or the Back-Up Bid (each as defined herein).

(vi)    <u>Marked Agreement</u>.    Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, (a) a draft purchase agreement, including the exhibits and schedules related thereto and any related material documents integral to such Bid

---

[4]    Any Good Faith Deposit paid to the Debtors on account of GGT shall be held for the benefit of DCG.

[5]    Notwithstanding anything to the contrary, the Debtors may modify any Good Faith Deposit, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, as necessary or appropriate, based on the Assets being sold.

pursuant to which the Acceptable Bidder proposes to effectuate the Sale (b) a redline of such agreement marked to reflect any amendments and modifications to a form of purchase agreement which will be provided to any Acceptable Bidder prior to the Bid Deadline (as defined herein), which amendments and modifications may not be materially more burdensome or otherwise inconsistent with these Bidding Procedures. The Debtors, and DCG, as it relates to GGT, in their reasonable business judgment, will determine whether any such amendments and modifications are materially more burdensome.

(vii)   No Financial or Diligence Outs.   A Bid must not be conditioned on any contingency, including, among others, on obtaining any: (a) financing and/or (b) the outcome or completion of a due diligence review by the Acceptable Bidder.

(viii)   Shareholder and Other Approvals.  A Bid must include a description of any anticipated need (and associated timing) for further shareholder or other authorization, approvals and waivers and any other material conditions or time constraints related to closing the proposed Sale.

(ix)   Binding and Irrevocable.   An Acceptable Bidder's Bid must be irrevocable unless and until the Debtors and DCG, as it relates to GGT, accept a higher Bid and such Acceptable Bidder is not selected as the Back-Up Bidder (as defined herein).

(x)   Back-Up Bid.   Each Bid must provide that the Acceptable Bidder will serve as Back-Up Bidder (as defined herein) if the Acceptable Bidder's Bid is the second highest or otherwise best Bid for the applicable Assets.

(xi)   Joint Bids.   The Debtors and DCG, as it relates to GGT, will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis.

(xii)   Adequate Assurance Information.  Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors, after consultation with the Consultation Parties, and DCG, as it relates to GGT, that such Acceptable Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Assets (the "Closing"), and (b) can provide adequate assurance of future performance in connection with the proposed transaction.  The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.

(xiii)   Identity and Corporate Authority.   Each Bid must fully disclose the

14

identity of each entity that will be participating in connection with such Bid, each such legal entity's ultimate parent company, the identity of all key equity owners, and ultimate beneficial owners of such person or legal entity (and/or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the Assets), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties.  A Bid must also fully disclose any connections or agreements with the Debtors, DCG and GGT, any known, potential, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, or equity security holder of the Debtors.

(xiv)   Authorization.  Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtors and DCG, as it relates to GGT) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(xv)   No Fees.  Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion, upon consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT to provide the Bid Protections to one or more Stalking Horse Bidders in accordance with these Bidding Procedures; *provided, further*, that nothing in these Bidding Procedures shall limit, alter or impair the rights of any party to payment and reimbursement of fees and expenses pursuant to the Restructuring Term Sheet or Plan Support Agreement, and parties entitled to payment or reimbursement of fees and expenses pursuant thereto shall be entitled to payment or reimbursement of fees and expenses incurred in connection with these Bidding Procedures and the proposed Sale.

(xvi)   Adherence to Bidding Procedures.  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xvii)   Assumed Liabilities.  Each Bid must identify the Debtors' or GGT's liabilities that the Acceptable Bidder seeks to assume.

(xviii)  <u>Adequate Assurance of Future Performance</u>.  Each Bid must: (a) identify any executory contracts and unexpired leases to be assumed and assigned in connection with such Bid; (b) provide for the payment by the Acceptable Bidder of all cure costs related to such executory contracts and unexpired leases; and (c) demonstrate, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, that the Acceptable Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases.

(xix)  <u>Regulatory Approvals and Covenants</u>.   A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible).  Each Acceptable Bidder agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel and DCG's legal counsel (as it relates to GGT) to discuss and explain such Acceptable Bidder's regulatory analysis, strategy and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated to submit a Qualified Bid.

(xx)  <u>As-Is, Where-Is</u>.  Each Bid must include a written acknowledgement and representation that the Acceptable Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Acceptable Bidder's proposed purchase agreement for the Assets.

(xxi)  <u>Procedural Considerations</u>.   Each Bid must state whether the Acceptable Bidder intends to consummate the Sale pursuant to section 363 of the Bankruptcy Code or through a sale pursuant to a confirmed plan of reorganization.

(xxii)  <u>Time Frame for Closing</u>.   Each Bid must state the Acceptable Bidder's expected date of Closing of the Sale.  A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtors, in consultation with the

16

Consultation Parties, and DCG, as it relates to GGT.

(xxiii) <u>Consent to Jurisdiction</u>.    The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Plan, the Sale documents, and the Closing, as applicable.

(xxiv) <u>Conditions to Closing</u>.    Each Bid must identify each and every condition to Closing required by the Acceptable Bidder.

(xxv) <u>Minimum Bid</u>.    In the event a Stalking Horse Bidder is approved, the Initial Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of the Bid Protections (if any), *plus* either $1 million or such other amount as determined by the Debtors in consultation with the Consultation Parties.

(xxvi) <u>Estate Claims</u>.    Each Bid must identify whether it proposes to acquire claims and causes of action of the Debtors under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal or foreign statutes or common law and identify the proposed purchase price for such claims.

(xxvii) <u>DCG Affiliation</u>.    To the extent known, a statement detailing whether the Acceptable Bidder is an affiliate or insider of DCG or any of its insiders.

**Bids must be sent to the Notice Parties so as to be <u>actually received</u> no later than June 19, 2023, at 12:00 p.m., prevailing Eastern Time (the "<u>Bid Deadline</u>").**

K.    **Designation of Qualified Bids.**

   i.    *Qualified Bidder*

The Debtors shall deliver any and all bids received to the Consultation Parties' advisors as soon as possible upon receipt, but in no event later than 11:59 p.m. Eastern Time on the Bid Deadline.  Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors, upon consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT, will be deemed to be "<u>Qualified Bids</u>," and those parties submitting Qualified Bids will be deemed to be "<u>Qualified Bidders</u>." The Debtors and DCG (as it relates to GGT) reserve the right to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors, with the consent of DCG, as it relates to GGT, may determine multiple Acceptable Bids for non-overlapping material portions of the Assets are Qualified Bids to the extent that, if taken together in the aggregate, they would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of the Auction; *provided* that  the  Debtors

also reserve the right to conduct more than one Auction with respect to non-overlapping material portions of the Assets, with the consent of DCG, as it relates to GGT).

The Debtors and their advisors, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, will determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to Bid at the Auction.   Any Bid that is not deemed a Qualified Bid will not be considered by the Debtors or DCG (as it relates to GGT).    For the avoidance of doubt, any Acceptable Bidders designated as Stalking Horse Bidders by the Debtors, with the consent of DCG, as it relates to GGT, and in accordance with these Bidding Procedures will be deemed to be Qualified Bidders, and any Stalking Horse Agreement entered into with such Stalking Horse Bidders will be deemed Qualified Bids, which qualify such Stalking Horse Bidders to participate in the Auction as Qualified Bidders.

ii.    *Notification*

Within four (4) days after the Bid Deadline, the Debtors will notify each Acceptable Bidder whether such Acceptable Bidder is a Qualified Bidder.  If any Bid is determined by the Debtors, in consultation with the Consultation Parties and with consent of DCG, as it relates to GGT, not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Good Faith Deposit and all accumulated interest thereon, if any, within five (5) business days after the Bid Deadline.

iii.    *Bid Modifications*

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction: (a) the Debtors may, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, discuss, negotiate, or seek clarification or enhancement of any Qualified Bid from a Qualified Bidder; and (b) a Qualified Bidder may not, without the prior written consent of the Debtors or DCG, as it relates to GGT, modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid; *provided* that any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

iv.    *Combination of Bids; Overlapping Bids*

Notwithstanding anything herein to the contrary, the Debtors, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, reserve the right to (a) negotiate with any Bidder individually or simultaneously with other Bidders; (b) discuss with any Bidders the terms of any Bid submitted by that Bidder; and (c) work with:  (i) Acceptable Bidders and Qualified Bidders to aggregate two or more Indications of Interest or Bids into a single consolidated Bid prior to the Bid Deadline; (ii) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction; and (iii) any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors may, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, qualify multiple Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, the Bids would otherwise meet

18

the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

L.    **Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors and their advisors, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, the highest or otherwise best Bid (the "Initial Bid").  In the event a Stalking Horse Bidder is selected, the Initial Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of the bid protections (if any), *plus* either $1 million or such other amount as determined by the Debtors in consultation with the Consultation Parties and DCG, as it relates to GGT.  For the avoidance of doubt, the Debtors may, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, select more than one Qualified Bid to collectively serve as the Initial Bid if each such Qualified Bid contemplates the purchase of different Assets.  In making such determination, the Debtors and DCG will take into account, among other things, (i) the amount of the Qualified Bid and the form of consideration, (ii) the impact on the Debtors' customers, vendors, and employees, (iii) the certainty of a Qualified Bid leading to a confirmed Plan, and (iv) the execution risk attendant to any Qualified Bids.  Within 24 hours of such determination, but in no event later than the start of the Auction, the Debtors will distribute copies of the Initial Bid to each Qualified Bidder who has submitted a Qualified Bid.

M.    **No Qualified Bids.**

If no Qualified Bid or only one Qualified Bid is received by the Bid Deadline for any non-overlapping material portion of the Assets, then the Auction will not occur with respect to such Assets.  If only one Qualified Bid is received by the Bid Deadline for any non-overlapping material portion of the Assets, the Debtors may determine, after consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT, to designate such Qualified Bidder as the Successful Bidder for the applicable Assets and to pursue entry of an order approving a Sale to such Qualified Bidder with respect to such Assets.  The Debtors shall promptly file notice of any cancellation of the Auction and/or designation of a Qualified Bid as a Successful Bid with the Court.

N.    **Auction.**

If one or more Qualified Bids (in addition to any Stalking Horse Bid) is received by the Bid Deadline, the Debtors will conduct the Auction with respect to the Assets.  For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-overlapping material portions of the Assets.  The Auction will commence on June 27, 2023, at 10:00 a.m. prevailing Eastern Time, at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom, or such later time or other place as the Debtors, with the consent of DCG, as it relates to GGT, may determine.

If the Auction is cancelled pursuant to these Bidding Procedures, then the Debtors shall file a notice with the Court of such election within two business days of the determination of such election by the Debtors.

The Auction will be conducted in accordance with the following procedures (the "<u>Auction Procedures</u>"):

    (i)   the Auction will be conducted openly;

    (ii)   only the Qualified Bidders, including any Stalking Horse Bidders, will be entitled to Bid at the Auction;

    (iii)   the Qualified Bidders, including any Stalking Horse Bidders, must appear in person or through duly-authorized representatives at the Auction (which may be by videoconference). If a Qualified Bidder appears through a duly authorized representative, such representative must have been granted a valid and enforceable power of attorney or have other written proof evidencing his or her ability to bind such Qualified Bidder, which document(s) shall be delivered to the Debtors and DCG at least one (1) business day before the Auction;

    (iv)   only such authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors, DCG, the Consultation Parties, and their respective advisors will be permitted to attend the Auction;

    (v)   bidding at the Auction will begin at the Initial Bid;

    (vi)   subsequent Bids at the Auction, including any Bids by any Stalking Horse Bidder, must be made (i) in minimum increments in an amount that the Debtors determine, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, *plus*, (ii) in the event the Debtors have entered into a Stalking Horse Agreement with respect to the Assets to which the Overbid relates, the aggregate amount of the Bid Protections pursuant to such Stalking Horse Agreement, if applicable;

    (vii)   each Qualified Bidder will be informed of the terms of the previous Bids;

    (viii)   the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

    (ix)   each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale; *provided* that this requirement does not restrict Qualified Bidders from working with other Bidders or participating in joint bids pursuant to the terms of these Bidding Procedures;

(x) the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest Bid, subject to the Debtors' right, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, to require last and final Bids to be submitted on a "blind" basis;

(xi) the Debtors reserve the right, in their reasonable business judgment, and in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors, GGT and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, (c) alter or combine Asset Packages, and (d) provide Qualified Bidders the opportunity to provide the Debtors and DCG, as it relates to GGT, with such additional evidence as the Debtors, in their reasonable business judgment, with the consent of DCG, as it relates to GGT, may require in order that the Qualified Bidder demonstrate it has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount;

(xii) the Debtors, in consultation with the Consultation Parties, are authorized to reopen the Auction with respect to all or a portion of the Assets at any time prior to the selection and announcement by the Debtors of one or more Successful Bids for such Assets; and

(xiii) the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, from time to time on the record at the Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any other order of the Court, (b) disclosed orally or in writing to all Qualified Bidders, and (c) determined by the Debtors, in good faith, to further the goal of attaining the highest or otherwise best offer.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law with respect to the Debtors' GGH Assets (as reasonably determined in good faith by the Debtors, based on the advice of counsel).

O.   **Acceptance of the Successful Bid or Successful Bids.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, will identify the highest or otherwise best Qualified Bid or Qualified  Bids (each, a "Successful Bid"), which will be

21

determined by considering, among other things, (a) the type and amount of Assets sought to be purchased in the Bid or Bids, (b) the form and total expected consideration to be received by the Debtors and DCG (it being understood that the Debtors and DCG, as it relates to GGT, will consider Bids denominated in whole or in part in digital assets), (c) the likelihood of the Qualified Bidder's or Qualified Bidders' ability to close a transaction and the timing thereof (including any anticipated delays to Closing and the cost to the Debtors of such delays), (d) the expected net benefit to the estates, (e) the impact on the Debtors' vendors, customers, and employees (f) the certainty of the Debtors being able to confirm a Plan, and (g) any other criteria as may be considered by the Debtors in their reasonable, good-faith business judgment, in consultation with the Consultation Parties. For the avoidance of doubt, the Debtors, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Assets. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "<u>Successful Bidder</u>" or "<u>Successful Bidders</u>," as applicable. The Successful Bidder or Successful Bidders and the Debtors, GGT and/or DCG (as applicable) must, as soon as commercially reasonably practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid or Successful Bids were made.

The Debtors shall file a notice setting forth the results of the Auction and identify any Successful Bidder with the Court within one business day following the conclusion of the Auction.

The Debtors will present the results of the Auction to the Court at the Sale Hearing (as defined herein), at which certain findings will be sought from the Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, and (c) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Assets to maximize recovery for the Debtors' creditors and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors will be deemed to have accepted a Qualified Bid only when (a) such Qualified Bid is declared a Successful Bid at the Auction, and (b) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Court of the Successful Bid or Successful Bids and entry of an order approving such Successful Bid or Successful Bids (the "<u>Confirmation Order</u>").

P.    **Sale Hearing.**

In the event a Sale is consummated through a Plan, the terms of the Successful Bid or Successful Bids will be incorporated into the Plan and presented to the Court for approval at the Confirmation Hearing before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601, and otherwise in accordance with any scheduling orders entered by the Court relating to confirmation of the Plan or approval of any disclosure statement related thereto. The Debtors will file a separate motion seeking to establish the deadlines related to confirmation of a Plan, including scheduling a hearing before the Court to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>").

At the Confirmation Hearing, the Debtors will present the Plan, which will incorporate the terms of the Successful Bid or Successful Bids, to the Court for confirmation.

In the event a hearing approving the Sale Hearing and the Confirmation Hearing are held separately and the Assets (including GGT) are sold prior to the Confirmation Hearing, the proceeds of the sale of GGT shall be agreed upon among the Debtors, the Committee, the Ad Hoc Group of Genesis Lenders, and DCG or, in the event no agreement is reached, as determined by an independent accounting firm to be selected by agreement among such parties. The proceeds of GGT shall thereafter be distributed in accordance with the Plan or, to the extent a plan of reorganization is not confirmed within 60 days following the sale of GGT or as otherwise provided in a plan support agreement to be entered into by the parties. The Debtors and the Committee reserve the right to file a motion with the Court to extend the 60-day period.

Q.      **Designation of Back-Up Bidder or Back-Up Bidders.**

If for any reason the Successful Bidder or Successful Bidders fail to consummate the Qualified Bid or Qualified Bids within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder or Successful Bidders, then the Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid or Bids (each, a "Back-Up Bidder"), as determined by the Debtors upon consultation with their advisors and the Consultation Parties and with the consent of DCG, as it relates to GGT, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid or Bids (each, a "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid or Back-Up Bids as soon as is commercially reasonable without further order of the Court upon at least 24 hours advance notice, which notice will be filed with the Court; *provided* that the Debtors shall file a notice with the Court that such Backup Bidder has been deemed the Successful Bidder.   Upon designation of the Back-Up Bidder or Back-Up Bidders at the Auction, the Back-Up Bid or Back-Up Bids must remain open until the Closing of the Successful Bid or Successful Bids, as applicable, notwithstanding any outside date set forth in such Back-Up Bidder's or Back-Up Bidders' proposed purchase agreement or Plan. The Backup Bidder's Good Faith Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.

R.      **Return of Good Faith Deposit to Qualified Bidders that Submit Qualified Bids.**

The Good Faith Deposit of the Successful Bidder or Successful Bidders will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and DCG, as it relates to GGT, and be credited to the portion of the Purchase Price, allocated accordingly for the portion of the Good Faith Deposit attributable to GGT and the GGH Assets. If the Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) fail or fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit of such Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and DCG and may be retained by the Debtors and DCG as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and DCG.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five (5) business days after consummation of the Sale or upon the permanent withdrawal by the Debtors of the proposed Sale. The Good Faith Deposit of the Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days after the Closing with the Successful Bidder or Successful Bidders or, if the Successful Bidder or Successful Bidders fail or fails to consummate a proposed transaction and the Debtors elect to not consummate the proposed transaction with the applicable Back-Up Bidder, then such Back-Up Bidder's Good Faith Deposit shall be returned within three (3) business days thereof, or as soon as is reasonably practicable thereafter.

All deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court, except to the extent set forth herein.

S.  **Reservation of Rights.**

The Debtors reserve their rights, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, to modify, change or extend the deadlines set forth in these Bidding Procedures; modify bidding increments; adjourn, reschedule or cancel the Auction; withdraw from the Auction any or all of the Assets at any time prior to or during the Auction; cancel the Sale process or, if the Debtors determine that it will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties and not be inconsistent in any material respect with any Court order, modify these Bidding Procedures at any time or impose, at or prior to the Auction(s), additional customary terms and conditions on the sale of the Assets after consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT (*provided* that the Debtors may not increase the Bid Protections without further approval of the Court).

The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidder.

The Debtors reserve the right to reject any or all Bids at any point, in consultation with the Consultation Parties, without providing any reasons for the rejection to any Bidder.

T.  **Consent to Jurisdiction.**

All Qualified Bidders will be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Sale, the Auction, the construction and enforcement of these Bidding Procedures, and/or any Indication of Interest, the Bid Requirements, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, the Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

U.  **Fiduciary Out.**

Nothing in these Bidding Procedures or the Bidding Procedures Order will require a Debtor or non-Debtor affiliate or the board of directors, board of managers, or such similar governing body of a Debtor or non-Debtor affiliate, after consulting with counsel, to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, or any Sale, to the extent such Debtor or non-Debtor affiliate or board of directors, board of managers, or such similar governing body reasonably determines in good faith that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law; *provided* that the Debtors shall consult with the Committee promptly after exercising any fiduciary out in accordance with these Bidding Procedures, and nothing in this Section S shall modify or supersede any consultation or consent rights of the Committee set forth in these Bidding Procedures or the Bidding Procedures Order.

Furthermore, notwithstanding anything to the contrary in these Bidding Procedures, through the date of an Auction, nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Debtors' Assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases (including the Consultation Parties and the United States Trustee), or any other entity regarding Alternate Proposals. The Debtors shall promptly distribute any Alternate Proposal (and any response thereto) to the Consultation Parties.

V.  **Sale Is As Is/Where Is.**

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then-present condition, "as is, with all faults, and without any warranty whatsoever, express or implied."

W.  **Assumption and Rejection Procedures.**

Procedures for the assumption, assumption and assignment, and rejection of certain executory contracts and unexpired licenses in connection with the Sale will be described in a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan.

**<u>Exhibit 2</u>**
**Sale Notice**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF BIDDING PROCEDURES,**
**POTENTIAL AUCTION, AND SALE HEARING**

       **PLEASE TAKE NOTICE** that, on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC and its affiliates Genesis Global Capital, LLC and Genesis Asia Pacific Pte. Ltd., as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and the cases, the "Chapter 11 Cases"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the Bankruptcy Court for the Southern District of New York (the "Court").[2]

       **PLEASE TAKE FURTHER NOTICE** that on March 16, 2023, the Debtors filed a motion [Docket No. 133] (the "Motion") seeking, among other things, the entry of an order approving (a) bidding procedures (the "Bidding Procedures") in connection with the proposed auction (the "Auction") and sale (the "Sale") of the Debtors', Genesis Global Trading, Inc.'s and non-Debtor subsidiaries' equity or some or all of their assets (the "Assets") to one or more Successful Bidders, (b) the selection of a Stalking Horse Bidder and the

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]     Capitalized terms used in this notice and not defined herein shall have the meanings given to them in the Bidding Procedures (as defined herein).

payment of Bid Protections in certain instances as set forth in the Bidding Procedures, and (c) scheduling dates and deadlines in connection with approval of the Sale (the "Sale Schedule").

PLEASE TAKE FURTHER NOTICE that on [[•]], 2023, the Bankruptcy Court entered an order [Docket No. [[•]]] (the "Bidding Procedures Order") granting the relief sought in the Motion, including, among other things, approving the Bidding Procedures and the Sale Schedule.

## Contact Parties for Parties Interested in Submitting a Bid

| Investment Banker to the Debtors | Counsel to the Debtors |
|---|---|
| Moelis & Company LLC<br>399 Park Avenue, 4th Floor<br>New York, NY 10022<br>Attn.: Zul Jamal<br>(zul.jamal@moelis.com)<br>Barak Klein (barak.klein@moelis.com) | Cleary Gottlieb, Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006<br>Attn: Sean A. O'Neal, Esq. (soneal@cgsh.com)<br>Jane VanLare, Esq. (jvanlare@cgsh.com) |

## Obtaining Information

Copies of the Bidding Procedures Order, the Bidding Procedures, and any other related documents can be viewed and/or obtained: by (i) accessing the Court's website at www.nysb.uscourts.gov or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, at https://restructuring.ra.kroll.com/genesis/ or by calling +1 888-524-2017.   Note that a PACER password is needed to access documents on the Court's website.

## The Sale Schedule

| Action | Description | Deadline |
|---|---|---|
| Bidding Procedures Hearing | The hearing before the Court to consider this Motion | March 30, 2023 |
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received | May 5, 2023 |
| Stalking Horse Designation Deadline | The date by which the Debtors may designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any; provided however that the Debtors may designate a Stalking Horse Bidder at any time prior to the Stalking Horse Designation Deadline; and provided further that the Debtors, in consultation with the Consultation Parties, may extend the Stalking Horse Designation Deadline provided that a notice of any such extension is filed on the docket | June 12, 2023 |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures, as well as the deadline by which DCG must identify whether or not it or any of its insiders or controlled affiliates will submit a Bid or whether any newly created entity wholly-owned or directly or indirectly controlled by DCG'S insiders or | June 19, 2023 |

| | | |
|---|---|---|
| | controlled affiliates (other than by virtue of its existing equity ownership in the Debtors) intends to submit a Bid | |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom | June 27, 2023 |
| Deadline to file the Designation of Successful Bid | The deadline to file a notice designating the Successful Bid and Successful Bidder, as well as the Back-up Bid and Back-up Bidder | One business day following the conclusion of the Auction |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline") | July 7, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |
| Sale Hearing (subject to the Court's availability) | The Sale will be implemented under the Plan and shall be approved at the Confirmation Hearing | July 14, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |

## **Filing Objections to the Sale**

The Debtors request that the Court require that objections to the Sale (a) be in writing; (b) comply with the Bankruptcy Rules, the Local Rules and other case management rules and orders of this Court; (c) state the name and address of the objecting party and the amount and nature of the claim or interest asserted by the objecting party against the estate or property of the Debtors; (d) state with particularity the legal and factual basis for such objections, and, if applicable, a proposed modification to the Sale that would resolve such objection; and (e) be filed with the Court with proof of service thereof and served upon, so as to be actually received by the Sale Objection Deadline, the following parties: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Debtors, Cleary Gottlieb, Steen and Hamilton LLP, One Liberty Plaza, NY, NY 10006 Attn: Sean O'Neal (soneal@cgsh.com) and Jane VanLare (jvanlare@cgsh.com); (iii) the investment banker to the Debtors, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn: Zul Jamal and Barak Klein, and; (iv) counsel to the Committee, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com) and 1221 Avenue of the Americas, New York, New York 10020, Attn: Philip Abelson (philip.abelson@whitecase.com).

## **Consequences of Failing to Timely File an Objection**

**Any party or entity who fails to timely file an objection to the Sale on or before the Sale Objection Deadline, in accordance with the Bidding Procedures, shall be forever barred from asserting any objection to the Sale.**

## **EXHIBIT B**
**Blackline of the Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**ORDER AUTHORIZING THE DEBTORS' MOTION SEEKING ENTRY
OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES AND RELATED
DEADLINES, (II) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH
RESPECT TO THE DEBTORS' SALE, AND (III) GRANTING RELATED RELIEF**

Upon the consideration of the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, and (III) Granting Related Relief* (the "Motion")[2] and the First Day Declarations; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms not described herein shall have the meanings ascribed to them in the Motion.

is in the best interests of the Debtors, their estates, their creditors and other parties in interest;

and upon all of the proceedings had before the Court; and after due deliberation and sufficient

cause appearing therefor,

### THE COURT HEREBY FINDS THAT

A.      The Court has jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      The bases for the relief requested in the Motion are sections 105(a), 363, 503, and

507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 3016, 3017, 3018, 3020, 6004,

6006(a), 9006, and 9007, and Local Rules 2002-1, 3017-1, 3018-1, 3020-1, 6004-1, 6006-1, and

9006-1, and the *Guidelines for the Conduct of Asset Sales* established and adopted by the Court

on November 19, 2009 pursuant to General Order M-383, and as updated on June 17, 2013.

C.      The Debtors have articulated good and sufficient reasons for authorizing and

approving the Bidding Procedures attached hereto as **Exhibit 1**, which are fair, reasonable, and

appropriate under the circumstances and designed to maximize the recovery on, and realizable

value of, the Debtors' enterprise and GGT, including with respect to the proposed procedures for

providing Bid Protections as determined by the Debtors in an exercise of their business

judgment, and upon consultation with the Consultation Parties and consent of DCG, as it relates

to GGT, subject to, and in accordance with, the procedures contained in this Bidding Procedures

Order and the Bidding Procedures.

D.      The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the preceding findings

of fact constitute conclusions of law, they are adopted as such.  To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

E.    The Debtors' proposed notice of the Motion, the Bidding Procedures, the Hearing and the proposed entry of this Bidding Procedures Order is (a) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (b) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and (c) adequate and sufficient under the circumstances of these Chapter 11 Cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Bidding Procedures Order has been afforded to the following parties and/or their respective counsel, as applicable: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Ad Hoc Group of Genesis Lenders; (iii) all creditors holding secured claims against the Debtors' estates; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.

F.    The Bidding Procedures comply with the requirements of Local Rule 6004-1.

G.    The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and certain dates and deadlines related thereto, and no other or further notice of the Auction shall be required.

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is GRANTED to the extent set forth herein.

2.      Any objections, statements and reservations of rights to the relief requested in the

Motion that have not been withdrawn with prejudice, waived, or settled, and all reservations of

rights included in such objections, are OVERRULED and DENIED on the merits with prejudice.

A.      **Important Dates and Deadlines**

3.      The Sale Schedule as set forth below and all other dates and deadlines set forth in

the Bidding Procedures are approved, subject to modification, in consultation with the

Consultation Parties, in accordance with the Bidding Procedures; *provided* that the Debtors shall

provide notice of such modified dates in accordance with the terms of this Bidding Procedures

Order; *provided further that the Committee reserves the right to object to any modification of the

Sale Schedule set forth below or any modification to the other dates and deadlines set forth in the

Bidding Procedures*.

| Action | Description | Deadline |
|--------|-------------|----------|
| Bidding Procedures Hearing | The hearing before the Court to consider this Motion | March 30, 2023 |
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received | May 5, 2023 |
| ~~Bid~~Stalking Horse Designation Deadline | The ~~deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures~~date by which the Debtors may designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any; provided however that the Debtors may designate a Stalking Horse Bidder at any time prior to the Stalking Horse Designation Deadline; and provided further that the Debtors, in consultation with the Consultation Parties, may extend the Stalking Horse Designation Deadline provided that a notice of any such extension is filed on the docket | June ~~15~~12, 2023 |
| ~~Stalking Horse Designation~~Bid Deadline | The deadline ~~to designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any~~by which all binding Bids must be actually received pursuant to the Bidding Procedures, as well as the deadline by which DCG must identify whether it or any of its insiders or controlled affiliates will submit a Bid or whether any newly created entity wholly-owned or directly or indirectly controlled by DCG'S insiders or controlled affiliates (other than by virtue of its existing equity ownership in the Debtors) intends to submit a Bid | June 19, 2023 |

| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom | June 27, 2023 |
|---|---|---|
| Deadline to file the Designation of Successful Bid | The deadline to file a notice designating the Successful Bid and Successful Bidder, as well as the Back-up Bid and Back-up Bidder | One business day following the conclusion of the Auction |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline") | July 7, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |
| Sale Hearing (subject to the Court's availability) | The Sale will be implemented under the Plan and shall be approved at the Confirmation Hearing | July 14, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |

**B.    The Bidding Procedures.**

4.    The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and incorporated as though fully set forth herein, are hereby approved in their entirety, and the Debtors are authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures.[3]  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale.  Any party desiring to bid on one or more individual assets or all or substantially all of the Assets shall comply with the Bidding Procedures and this Bidding Procedures Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

---

[3]    Any reference to the Debtors in this Bidding Procedures Order or the Bidding Procedures shall mean the Debtors acting at the sole and exclusive direction of the Special Committee of the Board of Directors of Genesis Global Holdco, LLC.

5.     Notwithstanding anything to the contrary in this Bidding Procedures Order or the Bidding Procedures, each of DCG's consultation and consent rights reflected in the Bidding Procedures or in this Bidding Procedures Order shall terminate in the event the Debtors determine that DCG or any of its insiders or any controlled affiliates of DCG or its insiders plans to submit a Bid or if any newly created entity wholly-owned or directly or indirectly controlled by DCG'S insiders or controlled affiliates (other than by virtue of its existing equity ownership in the Debtors) intends to submit a Bid; *provided*, however, DCG shall have the right to consent to the ultimate Sale of GGT.

6.     Notwithstanding anything to the contrary in this Bidding Procedures Order or the Bidding Procedures, the Debtors and their professionals shall make reasonable efforts to provide the Committee's professionals with reasonably timely updates regarding the status of the Sale process, including taking reasonable steps to notify the Committee's professionals regarding: (i) the names of Potential Bidders contacted regarding the Sale process; (ii) the names of Potential Bidders that execute Confidentiality Agreements; (iii) the names of Potential Bidders that participate in management meetings or similar material meetings or discussions with the Debtors regarding a potential Bid; and (iv) any potential modifications to, or potential waivers of, the Bidding Procedures.

C.     **Stalking Horse and Bid Protections.**

7.     Subject to approval by the Court as provided in this paragraph, the Debtors are authorized, but not directed, in a manner consistent with the exercise of their fiduciary duties, after consultation with the Consultation Parties (including, for the avoidance of any doubt, with respect to any proposed Bid Protections) and with the consent of DCG,  as it relates to GGT, to select one or more bidders to act as a Stalking Horse Bidder for some or all of the Assets, and

enter into a Stalking Horse Agreement with such Stalking Horse Bidder.  If the Debtors, after

consultation with the Consultation Parties (including, for the avoidance of any doubt, with

respect to any proposed Bid Protections) and with the consent of DCG, as it relates to GGT,

select one or more bidders to act as the Stalking Horse Bidder and enter into a Stalking Horse

Agreement with such Stalking Horse Bidder, then, within one (1) business day following such

selection, the Debtors shall file a notice (a "Stalking Horse Designation Notice"):  (i) setting

forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly

formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) setting forth the

amount of the Stalking Horse Bid and what portion (if any) is cash or digital assets (and the

denominations of such digital assets); (iii) stating whether the Stalking Horse Bidder has any

connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specifying

any proposed Bid Protections (including the amount and calculation thereof); (v) attaching the

Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (vi)

setting forth the deadline to object to the Stalking Horse Bidder designation and any Bid

Protections.  If no objections to the Stalking Horse Designation Notice (including, for the

avoidance of any doubt, with respect to any proposed Bid Protections) are filed on the Court's

docket by 12:00 p.m. (prevailing Eastern Time) on the date that is five (5) business days of filing

of the Stalking Horse Designation Notice (the "Notice Period"), the Debtors shall submit an

order to the Court that incorporates any comments received during the Notice Period that

authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse

Agreement, without the need for further hearing.  If a party timely files an objection to the

Stalking Horse Designation Notice on the Court's docket, the Court shall hold a hearing after the

expiration of the Notice Period and as soon thereafter as the Court is available.

8.    5. The For purposes of this Bidding Procedures Order and the Bidding Procedures, the Bid Protections, including shall consist of: (a) the Breakup Fee in an amount not to exceed three percent (3%) of the cash portion of the proposed Purchase Price; and (b) the Expense Reimbursement shall be deemed.  Subject to approvedal onby the terms set forth in the Bidding Procedures and Court following the Notice Period as provided in the preceding paragraph, the Debtors are authorized, but not directed, to incur and pay such Bid Protections to any or no Stalking Horse Bidder, in an exercise of their business judgment, in consultation with the Consultation Parties, without further action or order by the Court; *provided* that the Bid Protections shall only be payable upon consummation of an alternative transaction.  To the extent a Stalking Horse Bidder is selected with respect to sale of GGT, any portion of the Breakup Fee payable to any such Stalking Horse Bidder on account of GGT shall be deducted from the value ascribed to GGT pursuant to the Plan.  In the event GGT is sold outside of the Plan, portions of proceeds proportionate to the allocation of value ascribed to GGT shall be used to reimburse the Debtors for the Breakup Fee paid to any Stalking Horse Bidder on account of the sale of GGT.  To the extent the parties are not able to agree upon the portion of the Breakup Fee payable to any such Stalking Horse Bidder on account of GGT, an independent accounting firm to be selected by agreement among such parties shall determine the appropriate amount of such portion of the Breakup Fee.

9.    6. No person or entity, other than a Stalking Horse Bidder (that is not an insider or affiliate of the Debtors), shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense

reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

10.    ~~7.~~ Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement or order of this Court.

D.    **The Sale Notice**

11.    ~~8.~~ The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  As soon as reasonably practicable following the entry of this Bidding Procedures Order, but in no event later than five business days, the Debtors will cause the Bidding Procedures Order, the Bidding Procedures and the Sale Notice to be served by first-class mail upon: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Ad Hoc Group of Genesis Lenders; (iii) all creditors holding secured claims against the Debtors' estates; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.  In addition, by no later than seven (7) days following the mailing date, the Debtors shall publish the Sale Notice, with any modifications necessary for ease of publication, once in the national edition of [*The New York Times* and *USA Today*], to provide notice to any other potential interested parties, and post the Sale Notice on the Debtors' restructuring website at https://restructuring.ra.kroll.com/genesis.

E.    **The Auction**

12.    ~~9.~~ The date and time of the Auction, if needed, is June 27, 2023 at 10:00 a.m. prevailing Eastern Time, which time may be adjourned or extended by the Debtors in

consultation with the Consultation Parties and DCG, as it relates to the sale of GGT, upon written notice to the Court. The Auction will be held at the offices of counsel to the Debtors: Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom. The Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than two business days before such Auction and will post notice of the date, time, and place of the Auction no later than two business days before such Auction on the docket for these Chapter 11 Cases and on the website of the Debtors' notice, claims, and solicitation agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/genesis. For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.

F.     **Miscellaneous**

13.     ~~10.~~ Notwithstanding anything to the contrary in the Motion, this Bidding Procedures Order, or any findings announced at the hearing, nothing in the Motion, this Bidding Procedures Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission or the Committee to challenge transactions involving crypto tokens on any basis are expressly reserved.

14.     ~~11.~~ The Court, at the request of the Debtors (with consent of DCG, as it relates to GGT) and subject to its availability, may modify the dates of and adjourn any hearing set by this Bidding Procedures Order without further Order of this Court, *provided* that the Debtors will serve notice to all requisite parties informing them of such modification.

15.    12. Subject to paragraph 3, the Debtors may, in consultation with the Consultation Parties and with consent of DCG, as it relates to GGT, continue or adjourn the Auction at any time, re-open the Auction at any time prior to the deadline to file the notice designating the Successful Bidder, and otherwise modify any of the deadlines set forth herein; *provided* that the Debtors will serve notice to all requisite parties informing them of such action.

16.    13. In the event the Sale Hearing and Confirmation Hearing are held separately and the Assets (including GGT) are sold prior to the Confirmation Hearing, the proceeds of the sale of GGT (the value allocation of which shall be agreed upon by among the Debtors and DCG or by order of the Court) shall be held for the sole benefit of DCG and treated the Committee, the Ad Hoc Group of Genesis Lenders, and DCG or, in the event no agreement is reached, as determined by an independent accounting firm to be selected by agreement among such parties. The proceeds of the sale of GGT shall thereafter be distributed in accordance with the Restructuring Term Sheet upon confirmation of the Plan or otherwise transferred immediately to DCG if a Plan Plan or, to the extent a plan of reorganization is not confirmed in these Chapter 11 Cases within 180 60 days of consummation of a Sale of GGT. following the sale of GGT, or as otherwise provided in a plan support agreement to be entered into by the parties. The Debtors and the Committee reserve the right to file a motion with Court to extend the 60-day period.

17.    14. The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order shall not diminish or impair the effectiveness or enforceability of such a provision.

18.    15. In the event of any inconsistencies between this Bidding Procedures Order and the Motion and/or the Bidding Procedures, this Bidding Procedures Order shall govern in all respects.

19.    16. The Debtors may modify any Bid Deposit, upon consultation with the Consultation Parties and with consent of DCG, as it relates to GGT, as necessary or appropriate, based on the Assets being sold.

20.    17. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Bidding Procedures Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Bidding Procedures Order.

21.    18. Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

22.    19. All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23.    20. This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Bidding Procedures Order.

Dated: _____, 2023
      White Plains, New York

_____
The Honorable Sean H. Lane
United States Bankruptcy Judge

**<u>Exhibit 1</u>**

**Bidding Procedures**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT AND ANALYSIS
OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS**

On January 19, 2023 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" and the cases, the "Chapter 11 Cases"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the Bankruptcy Court for the Southern District of New York (the "Court").

On March 16, 2023, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Deadlines, (II) Scheduling the Hearings and Objection Deadlines with Respect to the Debtors' Sale, and (III) Granting Related Relief*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[Docket No. ~~[[•]]~~133] (the "Motion")[2] seeking, among other things, the entry of an order approving these bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise best bids (each, a "Bid") and conduct an auction (the "Auction") for the sale (the "Sale") of equity in, or assets of, the Debtors and certain of their affiliates, including Genesis Global Trading, Inc. (collectively, unless otherwise waived or released pursuant to a plan support agreement to be entered into by the parties, the "Assets").

The Sale, if any, will be implemented pursuant to a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan") (subject to approval of the relevant procedures, dates, and other requirements for confirmation of the Plan).

Copies of the Bidding Procedures Order, the Bidding Procedures, and any other related documents can be viewed and/or obtained: by (i) accessing the Court's website at www.nysb.uscourts.gov or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, at https://restructuring.ra.kroll.com/genesis/ or by calling +1 888-524-2017. Note that a PACER password is needed to access documents on the Court's website.

A.    **Overview of the Marketing Process and Assets to Be Sold.**

On February 10, 2023, the Debtors filed the Restructuring Term Sheet, which contemplates, among other things, a marketing and sales process to maximize the value of any disposition of Genesis Global Trading, Inc. ("GGT," a non-debtor owned by Digital Currency Group, Inc. "DCG"), Genesis Global Holdco, LLC (a Debtor owned by DCG) ("Holdco") and Holdco's subsidiaries (indirectly owned by DCG) and their respective assets comprising the Genesis Platform. The Debtors, through their investment banker Moelis & Company LLC ("Moelis"), are marketing for Sale of the Genesis Platform, including the assets or equity of GGT, and will consider Bids: (i)(A) for all or substantially all of the Genesis Platform ("All Assets") to a Successful Bidder (as defined below) or (B) to the extent that, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties (as defined below) separating the Assets into more than one potential Sale is in the best interest of their estates, for subsets of the Assets (each, an "Asset Package") to two or more Successful Bidder(s); and (ii) in the form of a reorganization or acquisition of equity interests in the Debtors and certain non-debtor affiliates, or a merger or other combination with one or more Successful Bidders. Additionally, the Debtors may, in their reasonable business judgment and in consultation with the Consultation Parties, consummate a Sale(s) of any Asset Package(s) with consent of DCG,[3] as it relates to GGT, and also pursue the Equitization (as defined in the Restructuring Term Sheet) with respect to the remaining Assets that are not

---

[2]        Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3]        Notwithstanding anything to the contrary in these Bidding Procedures, each of DCG's consultation and consent rights herein shall terminate in the event the Debtors determine that DCG or any of its insiders, or any controlled affiliates of DCG or its insiders plans to submit a Bid or whether any newly created entity wholly-owned or directly or indirectly controlled by DCG'S insiders or controlled affiliates (other than by virtue of its existing equity ownership in the Debtors) intends to submit a Bid; *provided*, however, DCG shall have the right to consent to the ultimate Sale of GGT.

subject to such Sale(s).  References to the "Confirmation Hearing" (as defined below) shall mean the hearing to confirm the Plan including the Equitization provisions set forth therein and the plan sale provisions, if applicable.

The Debtors shall determine, in consultation with the Required Consenting GGC Creditors, the Ad Hoc Group Advisors, and the Committee (each as defined in the Restructuring Term Sheet and, collectively, the "Consultation Parties"), together with the consent of DCG, as it relates to GGT, whether a Sale, a Wind-Down, an Equitization, or another course of action represents the most value maximizing disposition of the Genesis Platform.  If the Debtors do not receive any Qualified Bid (or any combination of Bids for separate Asset Packages that, when taken together, would constitute a single Qualified Bid) by the Bid Deadline (each as defined below) that is acceptable to the Debtors, the Debtors may, in consultation with the Consultation Parties and with consent of DCG, as it relates to GGT, cancel the Auction.  The Debtors reserve their rights, subject to prior written consent of DCG as it relates to GGT and in consultation with the Consultation Parties and subject to the terms of the Bidding Procedures Order, to (i) modify, change or extend the deadlines set forth in these Bidding Procedures; (ii) modify bidding increments; (iii) adjourn, reschedule or cancel the Auction; withdraw from the Auction any or all of the Assets at any time prior to or during the Auction; or (v) cancel the Sale process or, if the Debtors determine, in consultation with the Consultation Parties, that it will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties and not be inconsistent in any material respect with any Court order, modify these Bidding Procedures at any time or impose, at or prior to the Auction(s), additional customary terms and conditions on the sale of the Assets after consultation with the Consulting Parties (*provided* that the Debtors may not increase the Bid Protections without further approval of the Court).   The Debtors also reserve their rights, in consultation with the Consultation Parties, to adjourn the Sale Hearing by an announcement of the adjourned date at a hearing before the Court or by filing a notice on the Court's docket. For the avoidance of any doubt, notwithstanding anything to the contrary herein, no party that submits an Indication of Interest or Bid shall have any consultation rights hereunder.

B.    **Key Dates and Deadlines.**

The key dates and deadlines for the bidding and sale of the Assets are as follows:

| Action | Description | Deadline |
|---|---|---|
| Bidding Procedures Hearing | The hearing before the Court to consider this Motion | March 30, 2023 |
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received | May 5, 2023 |
| ~~Bid~~Stalking Horse Designation Deadline | The ~~deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures~~date by which the Debtors may designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any; provided however that the Debtors may designate a Stalking Horse Bidder at any time prior to the Stalking Horse Designation Deadline; and provided further that the Debtors, in consultation with the Consultation Parties, may extend the Stalking Horse Designation Deadline provided that a notice of | June ~~15~~12, 2023 |

| | any such extension is filed on the docket | |
|---|---|---|
| ~~Stalking Horse Designation~~Bid Deadline | The deadline ~~to designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any~~by which all binding Bids must be actually received pursuant to the Bidding Procedures, as well as the deadline by which DCG must identify whether or not it or any of its insiders or controlled affiliates will submit a Bid or whether any newly created entity wholly-owned or directly or indirectly controlled by DCG'S insiders or controlled affiliates (other than by virtue of its existing equity ownership in the Debtors) intends to submit a Bid | June 19, 2023 |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom | June 27, 2023 |
| Deadline to file the Designation of Successful Bid | The deadline to file a notice designating the Successful Bid and Successful Bidder, as well as the Back-up Bid and Back-up Bidder | One business day following the conclusion of the Auction |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline") | July 7, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |
| Sale Hearing (subject to the Court's availability) | The Sale will be implemented under the Plan and shall be approved at the Confirmation Hearing | July 14, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |

Pursuant to the Bidding Procedures Order, the Debtors may, upon consultation with the Consultation Parties, modify the key dates and deadlines; *provided* that the Debtors shall provide notice of such modified dates in accordance with the Bidding Procedures Order; *provided further that the Committee reserves the right to object to any modification of the Sale Schedule set forth above or any modification of the other dates and deadlines set forth herein.*

Additional requirements related to approval and consummation of the Sale (including contract and lease assumption, assumption and assignment, and rejection procedures and objection deadlines) under a chapter 11 plan will be described in further detail in a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan.

C.      **Public Announcement of Auction.**

As soon as reasonably practicable following the entry of this Bidding Procedures Order, but in no event later than five business days, the Debtors will cause the Bidding Procedures Order, the Bidding Procedures, and the Sale Notice to be served by first-class mail upon (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Ad Hoc Group of Genesis Lenders; (iii) all creditors holding secured claims against the Debtors' estates; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.  In addition, by no later than seven (7) days following the mailing date, the Debtors shall publish the Sale Notice, with any modifications necessary for ease of publication, once in the national edition of [*The New York Times* and *USA Today*], to provide notice to any other potential interested parties, and post the Sale Notice on the Debtors' restructuring website at https://restructuring.ra.kroll.com/genesis.

D.      **Confidentiality Agreement.**

The Debtors, in consultation with ~~their proposed investment banker,~~ Moelis ~~& Company LLC ("Moelis"),~~ the Consultation Parties and with the consent of DCG, as it relates to GGT, have developed a list of Potential Bidders (as defined herein) whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a Sale.  The Debtors have distributed, or shall distribute (to the extent not already distributed), to each such Potential Bidder and any other interested Potential Bidder an "Information Package" consisting of: (i) a copy of these Bidding Procedures, the Bidding Procedures Order, and the Bidding Procedures Motion; (ii) a form confidentiality agreement to be entered into with the Debtors and GGT (a "Confidentiality Agreement"); and (iii) such other diligence materials as the Debtors and DCG, as it relates to GGT, deem appropriate under the circumstances to provide the Potential Bidders with information necessary to prepare their Indications of Interest (as defined herein).

~~E.  Due Diligence.~~

~~(i) Access to Due Diligence.~~

~~Only Potential Bidders who have fully executed Confidentiality Agreements will be eligible to receive access to the virtual data room and reasonable due diligence information concerning those Assets that are the subject of such Potential Bidder's Bid (or such other Assets if the list provided in accordance with section F(iii) below is amended or modified), as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, but shall only extend to those Assets (or such other Assets if the list provided in accordance with section F(iii) below is amended or modified) that are the subject of such Potential Bidder's Bid.  Such dataroom shall also be accessible by DCG.  The due diligence period will end on the Bid Deadline (as defined herein), after which the Debtors will have no obligation to furnish any due diligence information, unless otherwise deemed reasonably appropriate by the Debtors.~~

~~The Debtors and their advisors will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders, with the consent of DCG, as it~~

relates to GGT; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' reasonable business judgment, with the consent of DCG, as it relates to GGT, have not established that such Potential Bidders intend in good faith to, or have the capacity to, consummate their Bid.   No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline (as defined herein).

The Debtors also reserve the right in their business judgment, with the consent of DCG, as it relates to GGT, to withhold any diligence materials at any time and for any reason, including, without limitation, if (i) the Potential Bidder does not become, or the Debtors and/or DCG, as it relates to GGT, in consultation with the Consultation Parties, determine that the Potential Bidder is not likely to become, a Qualified Bidder (as defined herein), (ii) the Potential Bidder violates the terms of its executed Confidentiality Agreement, (iii) the Debtors and/or DCG, as it relates to GGT, become aware (A) that the information set forth in the Indication of Interest is inaccurate or misleading or (B) of any other reason to doubt such Potential Bidder's ability to close its contemplated transaction, (iv) the bidding process is terminated for any reason, or (v) the Debtors and/or DCG, as it relates to GGT, determine that the diligence materials are sensitive, proprietary, or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors and/or DCG, as it relates to GGT, reasonably determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors or GGT.   Neither the Debtors, DCG nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder (as defined herein).

Each Potential Bidder will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct any and all due diligence regarding the Assets and liabilities that are the subject of the Auction to the extent of the Assets and liabilities that are the subject of their Bid prior to making any such Bid; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures; and (d) unless and until a definitive written agreement is executed and delivered by all parties thereto, none of the Debtors or Debtors' representatives shall have any obligations to any Bidder.   Neither the Debtors, DCG, GGT nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders in connection with the Sale.

**The Debtors have designated Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Zul Jamal (zul.jamal@moelis.com), Barak Klein (barak.klein@moelis.com), Michael DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com), to coordinate all reasonable requests for additional information and due diligence access.**

(ii) No Communications with Restricted Parties.

7

No Potential Bidder, Acceptable Bidder or Qualified Bidder (each as defined herein) shall communicate with any of the Debtors', DCG's, GGT's or Holdco's subsidiaries' vendors, suppliers, directors, employees, customers, creditors, or regulators, DCG or any other Potential Bidder, Acceptable Bidder or Qualified Bidder (each of the foregoing, a "Restricted Party") with respect to any potential bid or transaction or receive or be given access to any non-public information or documentation related to a potential bid or transaction absent the prior written consent of the Debtors or its advisors, in consultation with GGT, and DCG, as it relates to GGT; *provided* that if such consent is given, a representative of the Moelis and DCG, as it relates to GGT, shall be present for or party to any such communications (unless otherwise agreed by the Debtors or DCG, as it relates to GGT).

The Debtors reserve the right, in their reasonable business judgment upon consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT, to disqualify any Potential Bidders and/or Acceptable Bidders that have had communications with any Restricted Party.

E.   ~~F.~~ **Participation Requirements and Non-Binding Indications of Interest.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, an entity interested in submitting a Bid (a "Potential Bidder") must deliver (unless previously delivered) to each of (i) the Debtors' investment banker, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Zul Jamal (zul.jamal@moelis.com), Barak Klein (barak.klein@moelis.com), Michael DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com); (ii) counsel to the Debtors, Cleary Gottlieb, Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006 Attn: Sean A. O'Neal, Esq. (soneal@cgsh.com) and Jane VanLare, Esq. (jvanlare@cgsh.com); (iii) counsel to DCG, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Jeffrey D. Saferstein (jeffrey.saferstein@weil.com), Ronit Berkovich (ronit.berkovich@weil.com) and Jessica Liou (jessica.liou@weil.com); (iv) counsel to the Committee, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com), and 1221 Avenue of the Americas, New York, New York 10020, Attn: Philip Abelson (philip.abelson@whitecase.com); ~~and~~ (v) the Committee's investment banker, Houlihan Lokey Capital, Inc., 225 South Sixth St., Suite 4950, Minneapolis, Minnesota 55402, Attn: Brad Geer (BGeer@HL.com), and 245 Park Avenue, 20th Floor, New York, New York 10167, Attn: David Cumming (DCumming@HL.com); and (vi) counsel to the Ad Hoc Group, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Brian S. Rosen (brosen@proskauer.com) and Jordan Sazant (jsazant@proskauer.com) (collectively, the "Notice Parties"), together with an executed Confidentiality Agreement, a written non-binding indication of interest (the "Indication of Interest") containing all material terms, including, but not limited to:

> (i)   the identity and a description (including entity type, jurisdiction of formation or organization, such legal entity's ultimate parent company, the identity of all key equity owners, and ultimate beneficial owners of such person or legal entity (and/or sponsors, if the purchaser is an entity formed for the purpose of consummating

the acquisition of the Assets), credit rating, and regulators, if applicable) of the Potential Bidder;

(ii) (a) the proposed Purchase Price (as defined herein) in U.S. dollars; (b) the form(s) of consideration and the amount of each form of consideration valued in U.S. dollars; (c) the allocation of value for GGT and GGH Assets in the proposed Purchase Price (as defined herein); and (d) the acquisition structure and key terms and conditions;

(iii) a statement of which specific Assets the Potential Bidder intends to acquire, any liabilities the Potential Bidder intends to assume, and which Assets the Potential Bidder does not intend to acquire;

(iv) a statement specifying whether the Potential Bidder proposes to acquire claims and causes of action of the Debtors under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law and identifying the proposed purchase price for such claims;

(v) (iv) a statement specifying any key assumptions and any variables to which the Potential Bidder's valuation is sensitive, as well as any other information the Potential Bidder believes will assist in evaluation of the Indication of Interest;

(vi) (v) a brief assessment of the Potential Bidder's rationale for the Indication of Interest and the Potential Bidder's intentions with respect to the applicable Assets.  The Indication of Interest should also highlight any former involvement in similar sectors to the Debtors and any other relevant facts that support the basis for the Indication of Interest;

(vii) (vi) a statement regarding the level of review and, if necessary, approval that the Indication of Interest has received within the Potential Bidder's organization.  The Indication of Interest should also provide a list of any corporate, shareholder, regulatory, or other approvals required to complete the Sale and the timing to obtain such approvals as well as any other conditions or potential impediments to the consummation of the Sale;

(viii) (vii) a detailed description of the intended sources of any financing required for the proposed Sale and any contingencies related thereto, as well as an indication of the timing and steps, if any, required to secure such financing, or preliminary proof of information as to the Potential Bidder's financial capacity to close a proposed Sale;

(ix) a description of the Potential Bidder's intention with respect to any relevant members of the Debtors', GGT's and Holdco's subsidiaries' current management team and other employees and a

9

description of any contemplated incentive plan, to the extent applicable;

(x) (viii) a detailed list of due diligence topics, documents required to review, and other material diligence items including site visits, as well as timing in order to finalize a definitive written agreement;

(xi) (ix) a description of any anticipated regulatory approval process for the applicable Assets and the Potential Bidder's ability to obtain any required regulatory approvals on a timely basis;

(xii) (x) a description of the expected timetable to consummate a Sale. Any material conditions or other relevant information that might influence the Potential Bidder's ability to consummate a transaction in a timely fashion should be disclosed;

(xiii)(xi) a list of the names, and respective functions, of the Potential Bidder's due diligence team and any legal, financial, and other advisors the Potential Bidder has engaged or would plan to engage in connection with the Sale, including their contact information, and the names, phone numbers, and email addresses of the individuals prepared to answer any questions regarding the Indication of Interest; and

(xiv) (xii) a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a description of the nature of such partnership and joint Bid.; and

(xv) to the extent known, a statement detailing whether the Potential Bidder is an affiliate or insider of DCG or any of its insiders.

The submission of an Indication of Interest by a Person does not (i) obligate such Potential Bidder to submit a Bid or to participate in the sale process, or (ii) exempt such Potential Bidder from also having to submit a Bid by the Bid Deadline to participate in the Auction.

Within four (4) business days after a Potential Bidder delivers the Indication of Interest, the Debtors will determine in their reasonable business judgment, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, whether such Potential Bidder has submitted acceptable documents (any such Potential Bidder being referred to as an "Acceptable Bidder") and notify each Potential Bidder if it is determined to be an Acceptable Bidder.  In the event that the Debtors deem that a Potential Bidder has not met the requirements for being deemed an Acceptable Bidder, the Debtors must promptly inform the Consultation Parties of such determination (and the reasons therefor).  Only those Potential Bidders that have submitted acceptable documentation to the reasonable satisfaction of the Debtors and their advisors and DCG and their advisors, as it relates to GGT, may submit bids to purchase the Debtors' Assets.  The Debtors reserve the right to work with any Potential Bidder to cure any

deficiencies in the documents. The Debtors will provide regular updates to the Consultation Parties and DCG, through their counsel, regarding Potential Bidders, Indications of Interest, and Acceptable Bidders.

**Indications of Interest must be sent to the Notice Parties so as to be <u>actually received</u> no later than May 5, 2023, at 12:00 p.m., prevailing Eastern Time (the "<u>Indication of Interest Deadline</u>").**

F. **Involvement of the Committee's Professionals in the Sale Process.**

Notwithstanding anything to the contrary in these Bidding Procedures, the Debtors and their professionals shall make reasonable efforts to provide the Committee's professionals reasonably timely updates regarding the status of the Sale process, including taking reasonable steps to notify the Committee's professionals regarding: (i) the names of Potential Bidders contacted regarding the Sale process; (ii) the names of Potential Bidders that execute Confidentiality Agreements; (iii) the names of Potential Bidders that participate in management meetings or similar material meetings or discussions with the Debtors regarding a potential Bid; (iv) any potential modifications to, or potential waivers of, the Bidding Procedures.

G. **Due Diligence.**

(i) Access to Due Diligence.

Only Potential Bidders who have fully executed Confidentiality Agreements will be eligible to receive access to the virtual data room and reasonable due diligence information concerning those Assets that are the subject of such Potential Bidder's Bid (or such other Assets if the list provided in accordance with section E(iii) above is amended or modified), as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, but shall only extend to those Assets (or such other Assets if the list provided in accordance with section E(iii) above is amended or modified) that are the subject of such Potential Bidder's Bid. Such dataroom shall also be accessible by DCG. The due diligence period will end on the Bid Deadline (as defined herein), after which the Debtors will have no obligation to furnish any due diligence information, unless otherwise deemed reasonably appropriate by the Debtors.

The Debtors and their advisors will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders, with the consent of DCG, as it relates to GGT; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' reasonable business judgment, with the consent of DCG, as it relates to GGT, have not established that such Potential Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline (as defined herein).

The Debtors also reserve the right in their business judgment, with the consent of DCG, as it relates to GGT, to withhold any diligence materials at any time and for any reason, including, without limitation, if (i) the Potential Bidder does not become, or the Debtors and/or DCG, as it relates to GGT, in consultation with the Consultation Parties, determine that the Potential Bidder is not likely to become, a Qualified Bidder (as defined herein), (ii) the Potential Bidder violates the terms of its executed Confidentiality Agreement, (iii) the Debtors and/or

DCG, as it relates to GGT, become aware (A) that the information set forth in the Indication of Interest is inaccurate or misleading or (B) of any other reason to doubt such Potential Bidder's ability to close its contemplated transaction, (iv) the bidding process is terminated for any reason, or (v) the Debtors and/or DCG, as it relates to GGT, determine that the diligence materials are sensitive, proprietary, or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors and/or DCG, as it relates to GGT, reasonably determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors or GGT. Neither the Debtors, DCG nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder (as defined herein).

Each Potential Bidder will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct any and all due diligence regarding the Assets and liabilities that are the subject of the Auction to the extent of the Assets and liabilities that are the subject of their Bid prior to making any such Bid; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures; and (d) unless and until a definitive written agreement is executed and delivered by all parties thereto, none of the Debtors or Debtors' representatives shall have any obligations to any Bidder. Neither the Debtors, DCG, GGT nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders in connection with the Sale.

**The Debtors have designated Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Zul Jamal (zul.jamal@moelis.com), Barak Klein (barak.klein@moelis.com), Michael DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com), to coordinate all reasonable requests for additional information and due diligence access.**

(ii)         No Communications with Restricted Parties.

No Potential Bidder, Acceptable Bidder or Qualified Bidder (each as defined herein) shall communicate with any of the Debtors', DCG's, GGT's or Holdco's subsidiaries' vendors, suppliers, directors, employees, customers, creditors, or regulators, DCG or any other Potential Bidder, Acceptable Bidder or Qualified Bidder (each of the foregoing, a "Restricted Party") with respect to any potential bid or transaction or receive or be given access to any non-public information or documentation related to a potential bid or transaction absent the prior written consent of the Debtors or its advisors, and DCG or its advisors, as it relates to GGT; *provided* that if such consent is given, a representative of the Moelis and DCG, as it relates to GGT, shall be present for or party to any such communications (unless otherwise agreed by the Debtors or DCG, as it relates to GGT).

The Debtors reserve the right, in their reasonable business judgment upon consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT, to disqualify

any Potential Bidders and/or Acceptable Bidders that have had communications with any Restricted Party.

**H.** ~~G.~~ **Due Diligence from Potential Bidders (including Qualified Bidders).**

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated transaction. Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

**I.** ~~H.~~ **Stalking Horse Bidders and Bid Protections.**

~~Upon entry of~~Subject to approval by the Court as provided in the Bidding Procedures Order, the Debtors ~~shall be~~are authorized, but not obligated, in ~~an~~a manner consistent with the exercise of their ~~business judgment, and upon~~fiduciary duties, after consultation with the Consultation Parties (including, for the avoidance of any doubt, with respect to any proposed Bid Protections) and with the consent of DCG, as it relates to GGT, to: (a) select one or more Acceptable Bidders to act as stalking horse bidder(s) in connection with the Auction (each, a "Stalking Horse Bidder"); (b) enter into an agreement for the sale of the applicable Assets to a Stalking Horse Bidder (a "Stalking Horse Agreement"); and (c) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder (i) provide a breakup fee (the "Breakup Fee") in an amount up to three percent (3%) of the cash portion of the proposed Purchase Price, and/or (ii) agree to reimburse reasonable and documented out-of-pocket fees and expenses of such Stalking Horse Bidder in an aggregate amount not to exceed $50,000 (the "Expense Reimbursement," and together with the Breakup Fee, the "Bid Protections"); *provided* that if there are multiple Stalking Horse Bidders for separate Asset Packages then the expense reimbursement component of the Bid Protections shall be pro-rated between each such Stalking Horse Bidder based on the total consideration of each Bid; *provided* that the Bid Protections shall only be payable upon consummation of an alternative transaction. The Debtors shall not provide a Breakup Fee to any Stalking Horse Bidder on account of the portion of the Purchase Price of such Bid that is a credit bid, assumption of liabilities, or other non-cash (or cash-equivalent) consideration, nor provide any Bid Protection to an insider or affiliate of the Debtors. The Debtors reserve all rights to determine, in their reasonable business judgment and with the consent of DCG, as it relates to GGT, in consultation with the Consultation Parties, whether to pay any amounts constituting Bid Protections to any Stalking Horse Bidder. To the extent a Stalking Horse Bidder is selected with respect to Sale of GGT, any portion of the Breakup Fee payable to any such Stalking Horse Bidder on account of GGT shall be deducted from the value ascribed to GGT pursuant to the Plan. In the event GGT is sold outside of the Plan, portions of proceeds proportionate to the allocation of value ascribed to GGT shall be used to reimburse the Debtors for the Breakup Fee paid to any Stalking Horse Bidder on account of the sale of GGT. To the extent the parties are not able to agree upon the portion of the Breakup Fee payable to any such Stalking Horse Bidder on account of GGT, an independent accounting firm to be selected by agreement among such parties shall determine the appropriate amount of such portion of the Breakup Fee.

In the event thatIf the Debtors and, after consultation with the Consultation Parties (including, for the avoidance of any doubt, with respect to any proposed Bid Protections) and with the consent of DCG, as it relates to GGT, select one or more Acceptable Bidders to serve as the Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder, then, within one (1) business day following such selection, the Debtors shall file a notice of each such Stalking Horse Bidder, Bid Protections, and Stalking Horse Agreement(s) (the "Stalking Horse Designation Notice") with the Court.  The Stalking Horse Designation Notice shall: (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Stalking Horse Bid and what portion (if any) is cash or digital assets (and the denominations of such digital assets); (iii) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specify any proposed Bid Protections (including the amount and calculation thereof); (v) attach the Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (vi) set forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections.  If there are no objections to the Stalking Horse Designation Notice within five(including, for the avoidance of any doubt, with respect to any proposed Bid Protections) are filed on the Court's docket by 12:00 p.m. (prevailing Eastern Time) on the date that is five (5) business days of filing with the Court,of the Stalking Horse Designation Notice (the "Notice Period"), the Debtors mayshall submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for further hearing. If a party timely files an objection to the Stalking Horse Designation Notice on the Court's docket, the Ccourt shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

**The date by which Debtors' deadline tomay designate a Stalking Horse Bidder shall be June 1912, 2023, at 12:00 p.m., prevailing Eastern Time (the "Stalking Horse Designation Deadline") (which deadline may be extended by the Debtors without notice or hearing before the Court).;** *provided* **however that the Debtors may designate a Stalking Horse Bidder at any time prior to the Stalking Horse Designation Deadline; and** *provided further* **that the Debtors, in consultation with the Consultation Parties, may extend the Stalking Horse Designation Deadline provided that a notice of any such extension is filed on the docket.**

J.      I. Bid Requirements.

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors, DCG and their advisors, a written, binding and irrevocable offer that is determined by the Debtors, in their business judgment, in consultation with the Consultation Parties, and by DCG, as it relates to GGT, to  satisfy  each of the  following conditions  (collectively, the "Bid Requirements"):

  (i)    Purpose.  Each Acceptable Bidder must state that the Bid includes an offer by the Acceptable Bidder to acquire equity and/or some or all of the Assets, and identify the Assets with reasonable specificity.

(ii)  <u>Transaction Structure and Purchase Price</u>.    Each Bid must clearly set forth: (i) the purchase price to be paid for the Assets (the "<u>Purchase Price</u>"); (ii) the form and source of consideration, including funding commitments; and (iii) the structure and key terms and conditions. The Bid should confirm that such consideration is not subject to any contingencies and include a detailed sources and uses schedule.  Each Bid for a combination of Assets must: (x) provide a breakdown of the share of the Purchase Price allocable to each of the Assets included in the Bid, (y) state whether the Bid is conditioned upon the Bid being a Successful Bid (as defined below) for any of the other Assets included in the Bid (and, if so, which Assets), and (z) state whether the Person is willing to purchase any of the Assets included in the Bid individually and, if so, the price such Person would pay for each such Asset.

(iii)  <u>Bid Deposit</u>.    Each Bid must be accompanied by a cash deposit equal to the greater of (a) 10 percent of the aggregate Purchase Price of the Bid and (b) $10 million (the "<u>Good Faith Deposit</u>"),[24] to be submitted by wire transfer to an escrow account to be identified and established by the Debtors.[35]  To the extent that a Bid is modified at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals 10 percent of the increased Purchase Price promptly, and in no event later than one (1) business day following the conclusion of the Auction.

(iv)  <u>Committed Financing</u>.    To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, in consultation with the Consultation Parties, and DCG's satisfaction as it relates to GGT that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties, and reasonably acceptable to DCG, as

---

[24]    Any Good Faith Deposit paid to the Debtors on account of GGT shall be held for the benefit of DCG.

[35]    Notwithstanding anything to the contrary, the Debtors may modify any Good Faith Deposit, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, as necessary or appropriate, based on the Assets being sold.

it relates to GGT.

(v)   <u>Good Faith Offer</u>.    Each Bid must represent an irrevocable, binding, good faith, and *bona fide* offer to purchase all, or if acceptable to the Debtors, in consultation with the Consultation Parties, and DCG, as it relates to GGT, a portion of the Assets identified in such Bid if such Bid is selected as the Successful Bid or the Back-Up Bid (each as defined herein).

(vi)   <u>Marked Agreement</u>.    Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, (a) a draft purchase agreement, including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate the Sale (b) a redline of such agreement marked to reflect any amendments and modifications to a form of purchase agreement which will be provided to any Acceptable Bidder prior to the Bid Deadline (as defined herein), which amendments and modifications may not be materially more burdensome or otherwise inconsistent with these Bidding Procedures. The Debtors, and DCG, as it relates to GGT, in their reasonable business judgment, will determine whether any such amendments and modifications are materially more burdensome.

(vii)   <u>No Financial or Diligence Outs</u>.    A Bid must not be conditioned on any contingency, including, among others, on obtaining any: (a) financing and/or (b) the outcome or completion of a due diligence review by the Acceptable Bidder.

(viii)   <u>Shareholder and Other Approvals</u>.  A Bid must include a description of any anticipated need (and associated timing) for further shareholder or other authorization, approvals and waivers and any other material conditions or time constraints related to closing the proposed Sale.

(ix)   <u>Binding and Irrevocable</u>.    An Acceptable Bidder's Bid must be irrevocable unless and until the Debtors and DCG, as it relates to GGT, accept a higher Bid and such Acceptable Bidder is not selected as the Back-Up Bidder (as defined herein).

(x)   <u>Back-Up Bid</u>.    Each Bid must provide that the Acceptable Bidder will serve as Back-Up Bidder (as defined herein) if the Acceptable Bidder's Bid is the second highest or otherwise best Bid for the applicable Assets.

(xi)   <u>Joint Bids</u>.    The Debtors and DCG, as it relates to GGT, will be authorized to approve joint Bids in their reasonable discretion on a

16

case-by-case basis.

(xii)    <u>Adequate Assurance Information</u>.  Each Bid must be accompanied by sufficient and adequate financial and other information (the "<u>Adequate Assurance Information</u>") to demonstrate, to the reasonable satisfaction of the Debtors, after consultation with the Consultation Parties, and DCG, as it relates to GGT, that such Acceptable Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Assets (the "<u>Closing</u>"), and (b) can provide adequate assurance of future performance in connection with the proposed transaction.  The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.

(xiii)    <u>Identity and Corporate Authority</u>.  Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid, each such legal entity's ultimate parent company, the identity of all key equity owners, and ultimate beneficial owners of such person or legal entity (and/or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the Assets), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties.   A Bid must also fully disclose any connections or agreements with the Debtors, DCG and GGT, any known, potential, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, or equity security holder of the Debtors.

(xiv)    <u>Authorization</u>.  Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtors and DCG, as it relates to GGT) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(xv)    <u>No Fees</u>.    Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion, upon consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT to provide the Bid Protections to one or more Stalking Horse Bidders in accordance with these Bidding Procedures; *provided*, *further*, that nothing in these Bidding Procedures shall limit, alter or impair the rights of any party to

17

payment and reimbursement of fees and expenses pursuant to the Restructuring Term Sheet or Plan Support Agreement, and parties entitled to payment or reimbursement of fees and expenses pursuant thereto shall be entitled to payment or reimbursement of fees and expenses incurred in connection with these Bidding Procedures and the proposed Sale.

(xvi)   <u>Adherence to Bidding Procedures</u>.   By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xvii)   <u>Assumed Liabilities</u>.  Each Bid must identify the Debtors' or GGT's liabilities that the Acceptable Bidder seeks to assume.

(xviii)   <u>Adequate Assurance of Future Performance</u>.  Each Bid must: (a) identify any executory contracts and unexpired leases to be assumed and assigned in connection with such Bid; (b) provide for the payment by the Acceptable Bidder of all cure costs related to such executory contracts and unexpired leases; and (c) demonstrate, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, that the Acceptable Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases.

(xix)   <u>Regulatory Approvals and Covenants</u>.   A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible).  Each Acceptable Bidder agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel and DCG's legal counsel (as it relates to GGT) to discuss and explain such Acceptable Bidder's regulatory analysis, strategy and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated to submit a Qualified Bid.

(xx)   <u>As-Is, Where-Is</u>.    Each Bid must include a written acknowledgement and representation that the Acceptable Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by

operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Acceptable Bidder's proposed purchase agreement for the Assets.

(xxi)  Procedural Considerations.   Each Bid must state whether the Acceptable Bidder intends to consummate the Sale pursuant to section 363 of the Bankruptcy Code or through a sale pursuant to a confirmed plan of reorganization.

(xxii)  Time Frame for Closing.   Each Bid must state the Acceptable Bidder's expected date of Closing of the Sale.   A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtors, in consultation with the Consultation Parties, and DCG, as it relates to GGT.

(xxiii)  Consent to Jurisdiction.   The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Plan, the Sale documents, and the Closing, as applicable.

(xxiv)  Conditions to Closing.   Each Bid must identify each and every condition to Closing required by the Acceptable Bidder.

(xxv)  Minimum Bid.   In the event a Stalking Horse Bidder is approved, the Initial Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of the Bid Protections (if any), *plus* either $1 million or such other amount as determined by the Debtors in consultation with the Consultation Parties.

(xxvi)  Estate Claims.   Each Bid must identify whether it proposes to acquire ~~estate~~ claims and causes of action of the Debtors under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal or foreign statutes or common law and identify the proposed purchase price for such claims.

(xxvii)  DCG Affiliation.   To the extent known, a statement detailing whether the Acceptable Bidder is an affiliate or insider of DCG or any of its insiders.

**Bids must be sent to the Notice Parties so as to be <u>actually received</u> no later than June ~~15~~19, 2023, at 12:00 p.m., prevailing Eastern Time (the "<u>Bid Deadline</u>").**

K.    ~~J.~~ **Designation of Qualified Bids.**

i.    *Qualified Bidder*

The Debtors shall deliver any and all bids received to the Consultation Parties' advisors as soon as possible upon receipt, but in no event later than 11:59 p.m. Eastern Time on the Bid Deadline. Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors, upon consultation with the Consultation Parties, and with the consent of DCG, as it relates to GGT, will be deemed to be "Qualified Bids," and those parties submitting Qualified Bids will be deemed to be "Qualified Bidders." The Debtors and DCG (as it relates to GGT) reserve the right to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors, with the consent of DCG, as it relates to GGT, may determine multiple Acceptable Bids for non-overlapping material portions of the Assets are Qualified Bids to the extent that, if taken together in the aggregate, they would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of the Auction; *provided* that the Debtors also reserve the right to conduct more than one Auction with respect to non-overlapping material portions of the Assets, with the consent of DCG, as it relates to GGT).

The Debtors and their advisors, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, will determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to Bid at the Auction. Any Bid that is not deemed a Qualified Bid will not be considered by the Debtors or DCG (as it relates to GGT). For the avoidance of doubt, any Acceptable Bidders designated as Stalking Horse Bidders by the Debtors, with the consent of DCG, as it relates to GGT, and in accordance with these Bidding Procedures will be deemed to be Qualified Bidders, and any Stalking Horse Agreement entered into with such Stalking Horse Bidders will be deemed Qualified Bids, which qualify such Stalking Horse Bidders to participate in the Auction as Qualified Bidders.

ii.    *Notification*

Within four (4) days after the Bid Deadline, the Debtors will notify each Acceptable Bidder whether such Acceptable Bidder is a Qualified Bidder. If any Bid is determined by the Debtors, in consultation with the Consultation Parties and with consent of DCG, as it relates to GGT, not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Good Faith Deposit and all accumulated interest thereon, if any, within five (5) business days after the Bid Deadline.

iii.    *Bid Modifications*

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction: (a) the Debtors may, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, discuss, negotiate, or seek clarification or enhancement of any Qualified Bid from a Qualified Bidder; and (b) a Qualified Bidder may not, without the prior

written consent of the Debtors or DCG, as it relates to GGT, modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid; *provided* that any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

iv.    *Combination of Bids; Overlapping Bids*

Notwithstanding anything herein to the contrary, the Debtors, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, reserve the right to (a) negotiate with any Bidder individually or simultaneously with other Bidders; (b) discuss with any Bidders the terms of any Bid submitted by that Bidder; and (c) work with: (i) Acceptable Bidders and Qualified Bidders to aggregate two or more Indications of Interest or Bids into a single consolidated Bid prior to the Bid Deadline; (ii) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction; and (iii) any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors may, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, qualify multiple Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, the Bids would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

L.    ~~K.~~ **Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors and their advisors, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, the highest or otherwise best Bid (the "Initial Bid").  In the event a Stalking Horse Bidder is selected, the Initial Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of the bid protections (if any), *plus* either $1 million or such other amount as determined by the Debtors in consultation with the Consultation Parties and DCG, as it relates to GGT.  For the avoidance of doubt, the Debtors may, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, select more than one Qualified Bid to collectively serve as the Initial Bid if each such Qualified Bid contemplates the purchase of different Assets. In making such determination, the Debtors and DCG will take into account, among other things, (i) the amount of the Qualified Bid and the form of consideration, (ii) the impact on the Debtors' customers, vendors, and employees, (iii) the certainty of a Qualified Bid leading to a confirmed Plan, and (iv) the execution risk attendant to any Qualified Bids.  Within 24 hours of such determination, but in no event later than the start of the Auction, the Debtors will distribute copies of the Initial Bid to each Qualified Bidder who has submitted a Qualified Bid.

M.    ~~L.~~ **No Qualified Bids.**

If no Qualified Bid or only one Qualified Bid is received by the Bid Deadline for any non-overlapping material portion of the Assets, then the Auction will not occur with respect to such Assets.  If only one Qualified Bid is received by the Bid Deadline for any non-overlapping material portion of the Assets, the Debtors may determine, after consultation with the

Consultation Parties, and with the consent of DCG, as it relates to GGT, to designate such Qualified Bidder as the Successful Bidder for the applicable Assets and to pursue entry of an order approving a Sale to such Qualified Bidder with respect to such Assets.  The Debtors shall promptly file notice of any cancellation of the Auction and/or designation of a Qualified Bid as a Successful Bid with the Court.

N.    M. **Auction.**

If one or more Qualified Bids (in addition to any Stalking Horse Bid) is received by the Bid Deadline, the Debtors will conduct the Auction with respect to the Assets.  For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-overlapping material portions of the Assets.  The Auction will commence on June 27, 2023, at 10:00 a.m. prevailing Eastern Time, at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom, or such later time or other place as the Debtors, with the consent of DCG, as it relates to GGT, may determine.

If the Auction is cancelled pursuant to these Bidding Procedures, then the Debtors shall file a notice with the Court of such election within two business days of the determination of such election by the Debtors.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(i)    the Auction will be conducted openly;

(ii)    only the Qualified Bidders, including any Stalking Horse Bidders, will be entitled to Bid at the Auction;

(iii)    the Qualified Bidders, including any Stalking Horse Bidders, must appear in person or through duly-authorized representatives at the Auction (which may be by videoconference).  If a Qualified Bidder appears through a duly authorized representative, such representative must have been granted a valid and enforceable power of attorney or have other written proof evidencing his or her ability to bind such Qualified Bidder, which document(s) shall be delivered to the Debtors and DCG at least one (1) business day before the Auction;

(iv)    only such authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors, DCG, the Consultation Parties, and their respective advisors will be permitted to attend the Auction;

(v)    bidding at the Auction will begin at the Initial Bid;

(vi)    subsequent Bids at the Auction, including any Bids by any Stalking Horse Bidder, must be made (i) in minimum increments in an amount that the Debtors determine, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, *plus*, (ii)

in the event the Debtors have entered into a Stalking Horse Agreement with respect to the Assets to which the Overbid relates, the aggregate amount of the Bid Protections pursuant to such Stalking Horse Agreement, if applicable;

(vii)   each Qualified Bidder will be informed of the terms of the previous Bids;

(viii)   the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

(ix)   each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale; *provided* that this requirement does not restrict Qualified Bidders from working with other Bidders or participating in joint bids pursuant to the terms of these Bidding Procedures;

(x)   the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest Bid, subject to the Debtors' right, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, to require last and final Bids to be submitted on a "blind" basis;

(xi)   the Debtors reserve the right, in their reasonable business judgment, and in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors, GGT and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, (c) alter or combine Asset Packages, and (d) provide Qualified Bidders the opportunity to provide the Debtors and DCG, as it relates to GGT, with such additional evidence as the Debtors, in their reasonable business judgment, with the consent of DCG, as it relates to GGT, may require in order that the Qualified Bidder demonstrate it has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount;

(xii)   the Debtors, in consultation with the Consultation Parties, are authorized to reopen the Auction with respect to all or a portion of the Assets at any time prior to the selection and announcement by the Debtors of one or more Successful Bids for such Assets; and

(xiii)   the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, from time to time on the record at the

Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any other order of the Court, (b) disclosed orally or in writing to all Qualified Bidders, and (c) determined by the Debtors, in good faith, to further the goal of attaining the highest or otherwise best offer.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law with respect to the Debtors' GGH Assets (as reasonably determined in good faith by the Debtors, based on the advice of counsel).

O.   ~~N.~~ **Acceptance of the Successful Bid or Successful Bids.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, will identify the highest or otherwise best Qualified Bid or Qualified  Bids (each, a "Successful Bid"), which will be determined by considering, among other things, (a) the type and amount of Assets sought to be purchased in the Bid or Bids, (b) the form and total expected consideration to be received by the Debtors and DCG~~,~~ (it being understood that the Debtors and DCG, as it relates to GGT, will consider Bids denominated in whole or in part in digital assets), (c) the likelihood of the Qualified Bidder's or Qualified Bidders' ability to close a transaction and the timing thereof (including any anticipated delays to Closing and the cost to the Debtors of such delays), (d) the expected net benefit to the estates, (e) the impact on the Debtors' vendors, customers, and employees (f) the certainty of the Debtors being able to confirm a Plan, and (g) any other criteria as may be considered by the Debtors in their reasonable, good-faith business judgment, in consultation with the Consultation Parties.  For the avoidance of doubt, the Debtors, upon consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Assets.  The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "Successful Bidder" or "Successful Bidders," as applicable.  The Successful Bidder or Successful Bidders and the Debtors, GGT and/or DCG (as applicable) must, as soon as commercially reasonably practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid or Successful Bids were made.

The Debtors shall file a notice setting forth the results of the Auction and identify any Successful Bidder with the Court within one business day following the conclusion of the Auction.

The Debtors will present the results of the Auction to the Court at the Sale Hearing (as defined herein), at which certain findings will be sought from the Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, and (c) consummation of the Successful Bid or Successful

Bids will provide the highest or otherwise best value for the Assets to maximize recovery for the Debtors' creditors and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors will be deemed to have accepted a Qualified Bid only when (a) such Qualified Bid is declared a Successful Bid at the Auction, and (b) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Court of the Successful Bid or Successful Bids and entry of an order approving such Successful Bid or Successful Bids (the "Confirmation Order").

P.    O. Sale Hearing.

In the event a Sale is consummated through a Plan, the terms of the Successful Bid or Successful Bids will be incorporated into the Plan and presented to the Court for approval at the Confirmation Hearing before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601, and otherwise in accordance with any scheduling orders entered by the Court relating to confirmation of the Plan or approval of any disclosure statement related thereto. The Debtors will file a separate motion seeking to establish the deadlines related to confirmation of a Plan, including scheduling a hearing before the Court to consider confirmation of the Plan (the "Confirmation Hearing").

At the Confirmation Hearing, the Debtors will present the Plan, which will incorporate the terms of the Successful Bid or Successful Bids, to the Court for confirmation.

In the event a hearing approving the Sale Hearing and the Confirmation Hearing are held separately and the Assets (including GGT) are sold prior to the Confirmation Hearing, the proceeds of the sale of GGT (the value allocation of which shall be agreed upon by among the Debtors and DCG or by order of the Court) shall be held for the sole benefit of DCG and treated, the Committee, the Ad Hoc Group of Genesis Lenders, and DCG or, in the event no agreement is reached, as determined by an independent accounting firm to be selected by agreement among such parties. The proceeds of GGT shall thereafter be distributed in accordance with the Restructuring Term Sheet upon confirmation of the Plan or otherwise transferred immediately to DCG if a Plan Plan or, to the extent a plan of reorganization is not confirmed in these Chapter 11 Cases within 180 60 days of consummation of a Sale of GGT. following the sale of GGT or as otherwise provided in a plan support agreement to be entered into by the parties. The Debtors and the Committee reserve the right to file a motion with the Court to extend the 60-day period.

Q.    P. Designation of Back-Up Bidder or Back-Up Bidders.

If for any reason the Successful Bidder or Successful Bidders fail to consummate the Qualified Bid or Qualified Bids within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder or Successful Bidders, then the Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid or Bids (each, a "Back-Up Bidder"), as determined by the Debtors upon consultation with their advisors and the Consultation Parties and with the consent of DCG, as it relates to GGT, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid or Bids (each, a

"Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid or Back-Up Bids as soon as is commercially reasonable without further order of the Court upon at least 24 hours advance notice, which notice will be filed with the Court; *provided* that the Debtors shall file a notice with the Court that such Backup Bidder has been deemed the Successful Bidder. Upon designation of the Back-Up Bidder or Back-Up Bidders at the Auction, the Back-Up Bid or Back-Up Bids must remain open until the Closing of the Successful Bid or Successful Bids, as applicable, notwithstanding any outside date set forth in such Back-Up Bidder's or Back-Up Bidders' proposed purchase agreement or Plan. The Backup Bidder's Good Faith Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.

R. ~~Q.~~ **Return of Good Faith Deposit to Qualified Bidders that Submit Qualified Bids.**

The Good Faith Deposit of the Successful Bidder or Successful Bidders will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and DCG, as it relates to GGT, and be credited to the portion of the Purchase Price, allocated accordingly for the portion of the Good Faith Deposit attributable to GGT and the GGH Assets. If the Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) fail or fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit of such Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and DCG and may be retained by the Debtors and DCG as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and DCG.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five (5) business days after consummation of the Sale or upon the permanent withdrawal by the Debtors of the proposed Sale. The Good Faith Deposit of the Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days after the Closing with the Successful Bidder or Successful Bidders or, if the Successful Bidder or Successful Bidders fail or fails to consummate a proposed transaction and the Debtors elect to not consummate the proposed transaction with the applicable Back-Up Bidder, then such Back-Up Bidder's Good Faith Deposit shall be returned within three (3) business days thereof, or as soon as is reasonably practicable thereafter.

All deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court, except to the extent set forth herein.

S. ~~R.~~ **Reservation of Rights.**

The Debtors reserve their rights, in consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT, to modify, change or extend the deadlines set forth in these Bidding Procedures; modify bidding increments; adjourn, reschedule or cancel the Auction; withdraw from the Auction any or all of the Assets at any time prior to or during the Auction; cancel the Sale process or, if the Debtors determine that it will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties and not be inconsistent in any

material respect with any Court order, modify these Bidding Procedures at any time or impose, at or prior to the Auction(s), additional customary terms and conditions on the sale of the Assets after consultation with the Consultation Parties and with the consent of DCG, as it relates to GGT (*provided* that the Debtors may not increase the Bid Protections without further approval of the Court).

The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidder.

The Debtors reserve the right to reject any or all Bids at any point, in consultation with the Consultation Parties, without providing any reasons for the rejection to any Bidder.

T.    ~~S.~~  **Consent to Jurisdiction.**

All Qualified Bidders will be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Sale,  the Auction, the construction and enforcement of these Bidding Procedures, and/or any Indication of Interest, the Bid Requirements, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, the Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

U.    ~~T.~~  **Fiduciary Out.**

Nothing in these Bidding Procedures or the Bidding Procedures Order will require a Debtor or non-Debtor affiliate or the board of directors, board of managers, or such similar governing body of a Debtor or non-Debtor affiliate, after consulting with counsel, to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, or any Sale, to the extent such Debtor or non-Debtor affiliate or board of directors, board of managers, or such similar governing body reasonably determines in good faith that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law; *provided* that the Debtors shall consult with the Committee promptly after exercising any fiduciary out in accordance with these Bidding Procedures, and nothing in this Section S shall modify or supersede any consultation or consent rights of the Committee set forth in these Bidding Procedures or the Bidding Procedures Order.

Furthermore, notwithstanding anything to the contrary in these Bidding Procedures, through the date of an Auction, nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Debtors' Assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue

discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases (including the Consultation Parties and the United States Trustee), or any other entity regarding Alternate Proposals. The Debtors shall promptly distribute any Alternate Proposal (and any response thereto) to the Consultation Parties.

V.      U. **Sale Is As Is/Where Is.**

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then-present condition, "as is, with all faults, and without any warranty whatsoever, express or implied."

W.      V. **Assumption and Rejection Procedures.**

Procedures for the assumption, assumption and assignment, and rejection of certain executory contracts and unexpired licenses in connection with the Sale will be described in a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan.

**<u>Exhibit 2</u>**

**Sale Notice**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF BIDDING PROCEDURES,**
**POTENTIAL AUCTION, AND SALE HEARING**

PLEASE TAKE NOTICE that, on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC and its affiliates Genesis Global Capital, LLC and Genesis Asia Pacific Pte. Ltd., as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and the cases, the "Chapter 11 Cases"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the Bankruptcy Court for the Southern District of New York (the "Court").[2]

PLEASE TAKE FURTHER NOTICE that on March 16, 2023, the Debtors filed a motion [Docket No. [[•]]133] (the "Motion") seeking, among other things, the entry of an order approving (a) bidding procedures (the "Bidding Procedures") in connection with the proposed auction (the "Auction") and sale (the "Sale") of the Debtors', Genesis Global Trading, Inc.'s and non-Debtor subsidiaries' equity or some or all of their assets (the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms used in this notice and not defined herein shall have the meanings given to them in the Bidding Procedures (as defined herein).

"Assets") to one or more Successful Bidders, (b) the selection of a Stalking Horse Bidder and the payment of Bid Protections in certain instances as set forth in the Bidding Procedures, and (c) scheduling dates and deadlines in connection with approval of the Sale (the "Sale Schedule").

PLEASE TAKE FURTHER NOTICE that on [[• ]], 2023, the Bankruptcy Court entered an order [Docket No. [[• ]]] (the "Bidding Procedures Order") granting the relief sought in the Motion, including, among other things, approving the Bidding Procedures and the Sale Schedule.

**Contact Parties for Parties Interested in Submitting a Bid**

| Investment Banker to the Debtors | Counsel to the Debtors |
|---|---|
| Moelis & Company LLC<br>399 Park Avenue, 4th Floor<br>New York, NY 10022<br>Attn.: Zul Jamal<br>(zul.jamal@moelis.com)<br>Barak Klein (barak.klein@moelis.com) | Cleary Gottlieb, Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006<br>Attn: Sean A. O'Neal, Esq. (soneal@cgsh.com)<br>Jane VanLare, Esq. (jvanlare@cgsh.com) |

**Obtaining Information**

Copies of the Bidding Procedures Order, the Bidding Procedures, and any other related documents can be viewed and/or obtained: by (i) accessing the Court's website at www.nysb.uscourts.gov or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, at https://restructuring.ra.kroll.com/genesis/ or by calling +1 888-524-2017.   Note that a PACER password is needed to access documents on the Court's website.

**The Sale Schedule**

| Action | Description | Deadline |
|---|---|---|
| Bidding Procedures Hearing | The hearing before the Court to consider this Motion | March 30, 2023 |
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received | May 5, 2023 |
| ~~Bid~~Stalking Horse Designation Deadline | The ~~deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures~~date by which the Debtors may designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any; provided however that the Debtors may designate a Stalking Horse Bidder at any time prior to the Stalking Horse Designation Deadline; and provided further that the Debtors, in consultation with the Consultation Parties, may extend the Stalking Horse Designation Deadline provided that a notice of any such extension is filed on the docket | June ~~15~~12, 2023 |
| ~~Stalking Horse Designation~~Bid | The deadline ~~to designate one or more Qualified Bidders as the Stalking Horse Bidder(s), if any~~by which all | June 19, 2023 |

| Deadline | binding Bids must be actually received pursuant to the Bidding Procedures, as well as the deadline by which DCG must identify whether or not it or any of its insiders or controlled affiliates will submit a Bid or whether any newly created entity wholly-owned or directly or indirectly controlled by DCG'S insiders or controlled affiliates (other than by virtue of its existing equity ownership in the Debtors) intends to submit a Bid | |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, 38th Floor, New York, NY 10006 and/or via Zoom | June 27, 2023 |
| Deadline to file the Designation of Successful Bid | The deadline to file a notice designating the Successful Bid and Successful Bidder, as well as the Back-up Bid and Back-up Bidder | One business day following the conclusion of the Auction |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline") | July 7, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |
| Sale Hearing (subject to the Court's availability) | The Sale will be implemented under the Plan and shall be approved at the Confirmation Hearing | July 14, 2023, or as otherwise determined in accordance with a motion seeking entry of an order approving the adequacy of a disclosure statement and setting forth the timeline for confirmation of a plan |

### **Filing Objections to the Sale**

The Debtors request that the Court require that objections to the Sale (a) be in writing; (b) comply with the Bankruptcy Rules, the Local Rules and other case management rules and orders of this Court; (c) state the name and address of the objecting party and the amount and nature of the claim or interest asserted by the objecting party against the estate or property of the Debtors; (d) state with particularity the legal and factual basis for such objections, and, if applicable, a proposed modification to the Sale that would resolve such objection; and (e) be filed with the Court with proof of service thereof and served upon, so as to be actually received by the Sale Objection Deadline, the following parties: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Debtors, Cleary Gottlieb, Steen and Hamilton LLP, One Liberty Plaza, NY, NY 10006 Attn: Sean O'Neal (soneal@cgsh.com) and Jane VanLare (jvanlare@cgsh.com); (iii) the investment banker to the Debtors, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn: Zul Jamal and Barak Klein, and; (iv) counsel to the Committee, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com)

and 1221 Avenue of the Americas, New York, New York 10020, Attn: Philip Abelson (philip.abelson@whitecase.com).

### Consequences of Failing to Timely File an Objection

**Any party or entity who fails to timely file an objection to the Sale on or before the Sale Objection Deadline, in accordance with the Bidding Procedures, shall be forever barred from asserting any objection to the Sale.**