**Presentment Date: April 20, 2023 at 12:00 PM (Prevailing Eastern Time)**
**Objection Deadline: April 19, 2023 at 4:00 PM (Prevailing Eastern Time)**

Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### NOTICE OF PRESENTMENT OF ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISORS FOR THE DEBTORS AND DEBTORS-IN-POSSESSION

**PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that on April 13, 2023, the Debtors filed the annexed *Debtors' Application for an Order Authorizing the Employment and Retention of M3 Advisory Partners, LP as Financial Advisors to the Debtors and Debtors-In-Possession Pursuant to Sections 327(a) and 328 of the Bankruptcy Code* (the "Application").

**PLEASE TAKE FURTHER NOTICE** that, the Debtors shall present the *Order Authorizing the Employment and Retention of M3 Advisory Partners, LP as Financial Advisors to*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

*the Debtors and Debtors-In-Possession Pursuant to Sections 327(a) and 328 of the Bankruptcy Code*, attached hereto as **Exhibit D** (the "Order"), to the Honorable Sean H. Lane, United States Bankruptcy Judge, for approval and signature, on **April 20, 2023 at 12:00 p.m. (ET)** (the "Presentment Date").

       **PLEASE TAKE FURTHER NOTICE** that any responses or objections, if any, to the Application or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **April 19, 2023 at 4:00 p.m. (Eastern Time) (the "Objection Deadline")** and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order").

       **PLEASE TAKE FURTHER NOTICE** that if no written objections are timely filed and served by the Objection Deadline, the Debtors shall, on the Presentment Date, submit the Order to the Court, which order the Court may enter without further notice or opportunity to be heard.

       **PLEASE TAKE FURTHER NOTICE** that if a written objection is timely filed and served by the Objection Deadline, the Debtors shall notice a hearing (the "Hearing") with respect to the Order, which shall be held via Zoom and attended by the Debtors and all objecting parties. Failure to attend the Hearing may result in entry of the Order without further notice or opportunity to be heard.

       **PLEASE TAKE FURTHER NOTICE** that copies of the Application can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

Dated:  April 13, 2023
       New York, New York

                                  */s/ Sean A. O'Neal*
                                   Sean A. O'Neal
                                   Jane VanLare
                                   CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                   One Liberty Plaza
                                   New York, New York 10006
                                   Telephone: (212) 225-2000
                                   Facsimile: (212) 225-3999
                                   *Counsel to the Debtors*
                                   *and Debtors-in-Possession*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' APPLICATION**
**TO EMPLOY AND RETAIN M3 ADVISORY PARTNERS, LP AS**
**FINANCIAL ADVISORS TO DEBTORS AND DEBTORS-IN-POSSESSION**
**PURSUANT TO SECTIONS 327(A) AND 328 OF THE BANKRUPTCY CODE**

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession

in the above-captioned jointly-administered cases (collectively, the "Debtors" and these cases,

collectively, the "Chapter 11 Cases"), hereby file this application (this "Application") for entry of

an order, substantially in the form attached hereto as Exhibit D (the "Proposed Order"), pursuant to

sections 327(a) and 328 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a)

and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable) are:  Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") (a) authorizing, but not directing, the employment and retention of M3 Advisory Partners, LP ("M3 Partners") as financial advisors for the Debtors and the debtors-in-possession in these Chapter 11 Cases *nunc pro tunc* to March 30, 2023; and (b) granting such other and further relief as the Court deems just and proper. In support of this Application, the Debtors rely upon and incorporate by reference the *Declaration of Kunal S. Kamlani in Support of the Application Authorizing Employment and Retention of M3 Advisory Partners, LP as Financial Advisors for the Debtors and Debtors-in-Possession Pursuant to Sections 327(a) and 328 of the Bankruptcy Code*, attached to this Application as Exhibit A (the "Kamlani Declaration"). In further support of this Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 327(a), 328, 330, 331, and 1107(b) of the Bankruptcy Code, as supplemented by Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").  No examiner or trustee has been appointed in these cases.  On February 3, 2023, an official committee of unsecured creditors (the "Committee") was appointed in these Chapter 11 Cases, ECF No. 55.

## RELIEF REQUESTED

3.     By this Application, the Debtors seek to employ and retain M3 Partners as their financial advisors, pursuant to sections 327(a) and 328 of the Bankruptcy Code to perform the services set forth more fully herein, *nunc pro tunc* to March 30, 2023.[2]

## BASIS FOR RELIEF

4.     The Debtors submit that the retention of M3 Partners under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

(a)     is not a creditor, an equity security holder, or an insider;

(b)     is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(c)     does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect

---

[2]     In *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, the U.S. Supreme Court rejected a district court's *nunc pro tunc* order that made remand to state court effective as of a previous date, finding that the order could not "creat[e] 'facts' that never occurred" to cure the state court's lack of jurisdiction while the case was removed to federal court. 140 S. Ct. 696, 701 (2020). This is not relevant to *nunc pro tunc* orders where, as here, the court plainly has jurisdiction over the Chapter 11 Cases as of the Petition Date and looks to exercise its discretion to grant retroactive compensation. Indeed, courts have continued to routinely approve *nunc pro tunc* employment of estate professionals following *Acevedo*. *See, e.g.*, Order, *In re Internap Tech. Solutions Inc.*, Case No. 20-22393 (RDD) (Bankr. S.D.N.Y. Apr. 23, 2020), ECF No. 131; Order, *In re The McClatchy Co.*, Case No. 20-10418 (MEW) (Bankr. S.D.N.Y. Mar. 26, 2020), ECF No. 232; Order, *In re Fairway Group Holdings Corp.*, Case No. 20-10161 (JLG) (Bankr. S.D.N.Y. Mar. 4, 2020), ECF No. 251. To the extent that this Court or others find that *Acevedo* impacts this Court's ability to grant *nunc pro tunc* relief, this Court would nonetheless retain power to exercise its equitable discretion and award compensation prior to the date of entry of the order. *See In re Benitez*, No. 8-19-70230 (REG), 2020 WL 1272258, at *2 (Bankr. E.D.N.Y. Mar. 13, 2020); *see also In re Miller*, 620 B.R. 637, 641–43 (Bankr. E.D. Cal. Oct. 13, 2020).

relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

5.       Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . ."  11 U.S.C. § 328(a).   Debtors submit that the terms and conditions of M3 Partners' retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since Debtors will require substantial assistance with the reorganization process, it is reasonable for Debtors to seek to employ and retain M3 Partners to serve as its financial advisor on the terms and conditions set forth herein.

6.       As required, this Application and the exhibits attached hereto set forth specific facts showing the necessity for the employment, the reasons for selecting M3 Partners, the professional services to be rendered, the proposed arrangements for compensation, and M3 Partners' connections to parties in interest.

7.       Counsel for the Debtors engaged M3 Partners in connection with supporting the Debtors with respect to matters relating to certain payments received by the Debtors from Alameda Research LLC, Alameda Research Ltd. (BVI), and/or certain of their affiliates (the "Alameda Payments") and matters ancillary thereto.  M3 Partners may also perform such other services as M3 and the Debtors may agree in writing from time to time with approval of the Court, (together the "M3 Partners' Services").

8.       M3 Partners is uniquely positioned to advise the Debtors in connection with the M3 Partners' Services.  The Debtors selected M3 Partners due to M3 Partners' reputation and expertise in restructuring services.  M3 Partners also has extensive experience advising clients in connection with cryptocurrency.

4

9.      The Debtors retained Alvarez & Marsal as financial advisors in these Chapter 11 Cases (ECF No. 108) *nunc pro tunc* to the Petition Date.  However, Alvarez & Marsal have provided financial advisory services to Alameda Research Ltd. and its affiliates (collectively, "FTX") and therefore must recuse themselves from any involvement in disputes related to the Debtor's FTX accounts or other matters adverse to FTX or its affiliates.  M3 Partners' Services are needed to provide financial advisory services regarding FTX.

10.     The Debtors' engagement letter (the "Engagement Letter") with M3 Partners is attached hereto as Exhibit C, the terms of which shall govern the Debtors' retention of M3 Partners except as explicitly set forth herein or in any order granting this Application.

11.     In addition to this Application, Debtors have submitted, or expect to submit shortly, separate applications to retain, among others: (a) Cleary Gottlieb Steen & Hamilton LLP, as main legal counsel; (b) Kroll Restructuring Administration LLC, as claims and noticing agent and, separately, as administrative advisor; (c) Moelis & Company LLC, as investment banker; (d) Alvarez & Marsal North America, LLC, as financial advisor; (e) Morrison Cohen LLP as special counsel; (f) Kobre & Kim LLP, as conflicts counsel; and (g) Grant Thornton LLP as tax services provider.  Further, the Debtors have submitted a motion to retain and compensate those professionals that the Debtors employ in the ordinary course of business.

12.     M3 Partners will not serve as the Debtors' general or financial advisors on matters not set forth in this Application, and will not advise the Debtors or their estates with respect to their duties under the Bankruptcy Code.  M3 Partners will coordinate with the Debtors' other retained professionals and use its best efforts to avoid any duplication of services.

13.     Pursuant to the Debtors' request, M3 Partners has agreed to serve as financial advisors for the Debtors with assurances that the Debtors would seek approval of its employment

and retention *nunc pro tunc* to the date on which M3 Partners began providing services for the Debtors so that it may be compensated for its pre-Application services. The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided in this Application, because M3 Partners has provided and continues to provide valuable services to the Debtors' estates in the interim period. Accordingly, the Debtors submit that such relief is justified here.

## DISCLOSURES OF M3 PARTNERS

14.    To the best of the Debtors' knowledge, and except as otherwise disclosed in the Kamlani Declaration, the members, counsel and associates of M3 Partners neither hold nor advise any interest that is materially adverse to the Debtors' estates in connection with any matter on which they would be employed.

15.    As disclosed in the Kamlani Declaration, M3 Partners currently advises certain of the Debtors' parties in interest in matters wholly unrelated to M3 Partners' limited role in these Chapter 11 Cases. M3 Partners has fully informed the Debtors of its ongoing advisement of such entities, and the Debtors have consented to M3 Partners' continued advisement of these entities in matters unrelated to its role in these Chapter 11 Cases. The Debtors believe that M3 Partners' current and future advisement of these certain entities will not in any way adversely affect M3 Partners' advisement of the Debtors as financial advisors regarding the M3 Partners' Services.

16.    To the best of the Debtors' knowledge and as disclosed in the Kamlani Declaration, M3 Partners does not hold or advise any interest adverse to the Debtors or their estates as required pursuant to Bankruptcy Code § 327(a), and M3 Partners' employment and retention is necessary and in the best interests of the Debtors and their estates.

6

17.    M3 Partners will periodically review its files during the pendency of the Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, M3 Partners will use reasonable efforts to identify such further developments and will file a supplemental declaration, in conformity with Bankruptcy Rule 2014(a).

## PROFESSIONAL COMPENSATION

18.    The Debtors understand and have agreed that M3 Partners intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of the Court and the terms of M3 Partners' engagement with the Debtors.  Subject to such provisions and Court orders, compensation will be payable to M3 Partners on an hourly basis for services rendered, plus reimbursement of actual, necessary expenses incurred by M3 Partners in accordance with the terms and conditions of this engagement.  In accordance with the terms of the Engagement Letter, M3 Partners' hourly rates ranges are:

| | |
|---|---|
| Managing Partner | $1,350 |
| Senior Managing Director | $1,245 |
| Managing Director | $1,025 - $1,150 |
| Director | $840 - $945 |
| Vice President | $750 |
| Senior Associate | $650 |
| Associate | $550 |
| Analyst | $450 |

19.    In connection with the reimbursement of actual, necessary expenses, the Debtors have been informed that it is M3 Partners' policy to charge its clients in all areas of practice for expenses and charges incurred in connection with the clients' cases.  The expenses generally charged to M3 Partners' clients include, among other things, travel expenses, photocopying, messenger, courier, postage, expert and mediator fees, electronic legal research and other database usage, overtime expenses, third-party service fees, and filing fees, all of which are charged at cost and duly documented.  The Debtors have been informed that M3 Partners believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.  The Debtors have agreed that M3 Partners will charge the Debtors for these expenses in a manner and at rates consistent with charges generally made to M3 Partners' other clients and in accordance with the terms and conditions of M3 Partners' engagement.  The Debtors respectfully submit that M3 Partners' hourly rates and disbursement and other charges policies are reasonable.

20.    This compensation structure is consistent with M3 Partners' normal and customary billing practices for cases of this size and complexity that require the level of scope and services

outlined herein.  Moreover, the compensation is reasonable in light of (a) industry practice, (b) market rates charged for comparable services, (c) M3 Partners' substantial experience with respect to restructuring and cryptocurrency matters, and (d) the nature and scope of work to be performed by M3 Partners in these Chapter 11 Cases.

21.    To the best of the Debtors' knowledge, information and belief, no promises have been received by either M3 Partners or any partner or employee thereof as to compensation or payment in connection with the Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code.  M3 Partners has no agreement with any other entity to share with such entity any compensation received by M3 Partners in connection with these Chapter 11 Cases.

## **NOTICE**

22.    Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) counsel to the Committee; (iii) all creditors holding secured claims against the Debtors' estates; (iv) all creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

23.    No prior request for the relief requested herein has been made to this or any other Court.

*[Remainder of page intentionally left blank]*

9

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) grant this Application and the relief requested herein; (b) enter the Proposed Order attached hereto as Exhibit D; and (c) grant such other and further relief as it deems just and proper.

Dated:  April 13, 2023
       New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ Sean A. O'Neal
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

*Counsel for the Debtors
and Debtors-in-Possession*

10

**<u>EXHIBIT A</u>**

**Kamlani Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DECLARATION OF KUNAL S. KAMLANI IN SUPPORT**
**OF THE APPLICATION AUTHORIZING EMPLOYMENT**
**AND RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL**
**ADVISORS FOR THE DEBTORS AND DEBTORS-IN-POSSESSION**
**PURSUANT TO SECTIONS 327(A) AND 328 OF THE BANKRUPTCY CODE**

I, KUNAL S. KAMLANI, pursuant to 28 U.S.C. § 1746, do hereby state and declare as follows:

1.      I am over the age of eighteen (18) and am the Senior Managing Director of M3 Advisory Partners, LP ("M3 Partners" or the "Firm"), which maintains an office at 1700 Broadway, 19th Floor, New York, NY 10019.

2.      I submit this declaration (the "Kamlani Declaration") in support of the application (the "Application")[2] of the above-captioned debtors (collectively, the "Debtors") for an order approving the retention of M3 Partners as financial advisors in these Chapter 11 Cases in compliance with and to provide disclosures pursuant to sections 327, 328 and 504 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a), 2016(b) and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the " Local Rules") on the terms set forth in this Application and the engagement letter between Debtors and M3 Partners attached to the Application as Exhibit C (the "Engagement Letter"). Unless otherwise stated in this Kamlani Declaration, I have personal knowledge of the facts set forth herein. To the extent that any information disclosed herein requires amendment or modification upon M3 Partners' completion of further analysis or as additional information becomes available to it, a supplemental declaration will be submitted to this Court.

3.    M3 Partners is a leading, independent corporate advisory firm that provides operational, strategic, and financial solutions to a broad range of clients across a wide range of industries. M3 Partners employs more than 50 professionals and its senior professionals have led hundreds of engagements, including some of the most significant restructurings in the market, while working alongside or across from the largest lenders, private equity sponsors, hedge funds, investment bankers, and legal advisors in the industry.

4.    M3 Partners' restructuring services and experience generally includes, among other things: (a) developing and implementing business plans and turnaround strategies; (b) planning and implementing financial and operational restructurings and debt reorganizations; (c) financial modeling; (d) managing negotiations with stakeholders; (e) stabilizing business operations; and (f) improving and managing liquidity.

5.    M3 Partners has been advising the Debtors since March 30, 2023. My operating experience spans more than 25 years and includes significant restructuring experience. Among other roles, I have served as president of ESL Investments (where, among other things, I helped to lead the restructuring and bankruptcy of Sears Holdings Corporation), in various executive roles

with Prestige Cruise Holdings and with financial institutions such as Bank of America/Merrill Lynch, Citi Smith Barney and Citigroup.

6.    I believe that M3 Partners is well qualified to provide services to the Debtors and represent the Debtors' interests in these Chapter 11 Cases.

7.    I believe that M3 Partners has substantial knowledge of the Debtors and their businesses.  M3 Partners began providing financial advisory services to the Debtors and its legal advisors.  The Engagement Letter pursuant to which those services are being provided and which outlines the scope of those services is attached to the Application as Exhibit C.  Since then, M3 Partners and I have continued providing financial advisory services to the Debtors through the date hereof. In providing such services to the Debtors, M3 Partners has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, litigation, operations, and related matters.

8.    Accordingly, I believe that M3 Partners has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases. I believe the retention of M3 Partners is necessary and appropriate, in the best interest of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

9.    The Debtors engaged M3 Partners in connection with supporting the Debtors in connection with matters relating to certain payments received by the Debtors from Alameda Research LLC, Alameda Research Ltd. (BVI), and/or certain of their affiliates (the "Alameda Payments") and matters ancillary thereto.  M3 Partners may also perform such other services as M3 Partners and the Debtors may agree in writing from time to time with approval of the Court, (together the "M3 Partners' Services").

10.     I have been informed that the Debtors retained Alvarez & Marsal North America, LLC ("A&M") as their financial advisor in these Chapter 11 Cases, However, Alvarez & Marsal have provided financial advisory services to Alameda Research Ltd. and its affiliates (collectively, "FTX") and therefore must recuse themselves from any involvement in disputes related to the Debtor's FTX accounts or other matters adverse to FTX or its affiliates.  M3 Partners' Services are needed to provide financial advisory services regarding FTX.

11.     I believe that M3 Partners is uniquely positioned to advise the Debtors in connection with the M3 Partners' Services.  The Debtors selected M3 Partners to provide the M3 Partners' Services due to M3 Partners' reputation and expertise in restructuring services.  M3 Partners also has extensive experience advising clients in connection with cryptocurrency.

## DISCLOSURES OF M3 PARTNERS

12.     Insofar as I have been able to ascertain, except as described herein, the other managing directors, directors, associates, and analysts of M3 Partners and I are disinterested parties within the meaning of section 101(14) of the Bankruptcy Code (as modified by section 1103(b) of the Bankruptcy Code), and have no interest adverse to the Debtors or their estates with respect to matters for which M3 Partners is to be engaged under the Application.

13.     In preparing this Kamlani Declaration, in order to ensure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding the retention of professionals by a debtor, I directed that a list (the "Potential Parties-in-Interest List") provided by the Debtors which disclosed (a) entities affiliated with or related to the Debtors, (b) professionals expected to be retained by the Debtors, (c) key creditors of the Debtors, and (d) certain other parties in interest in the Debtors' Chapter 11 Cases, be submitted to the appropriate personnel at M3 Partners for review in the computerized conflict database system maintained by M3 Partners.  The

Potential Parties-in-Interest List is attached hereto as <u>Exhibit 1</u>.  M3 Partners will submit to its conflict database additional parties-in-interest provided by Debtor and update these disclosures accordingly.

14.     M3 Partners has compared the names disclosed on the Potential Parties-in-Interest List attached hereto as <u>Exhibit 1</u> to the persons and entities contained in M3 Partners' client database (the "<u>Client Database</u>") to determine which persons or entities, if any, M3 Partners currently advises ("<u>Current Clients</u>") or has advised ("<u>Former Clients</u>").  M3 Partners maintains and systematically updates its conflict check system in the regular course of business of M3 Partners, and it is the regular practice of M3 Partners to make and maintain these records.  The conflict check system maintained by M3 Partners is designed to include every matter on which M3 Partners is now or within the past three years has been engaged, the entity for which M3 Partners is now or within the past three years has been engaged, and in each instance, the identity of such related parties and adverse parties as have been formally notified to M3 Partners and the attorney in M3 Partners that is knowledgeable about the matter.  It is the policy of M3 Partners that no new matter may be accepted or opened within M3 Partners without completing and submitting to those charged with maintaining the conflict check system the information necessary to check each such matter for conflicts, including the identity of the prospective client and, where applicable, related and adverse parties with which M3 Partners is likely to have material contact.  Accordingly, the database is regularly updated for new matters undertaken by M3 Partners.

15.     Some of those entities are or may consider themselves to be creditors or parties in interest in the Chapter 11 Cases or to otherwise have interests in these cases. M3 Partners has advised, currently advises and/or may advise in the future persons or entities listed in the Potential Parties-in-Interest List (or their affiliates) in matters totally unrelated to the Debtors.  For the

avoidance of doubt, M3 Partners has not and will not advise any such persons or entities with respect to the matters involving the Debtors or the Chapter 11 Cases with respect to any matters that would reasonably be expected to fall within the M3 Partners' Services.

16.     To the extent that the above-described search indicated that M3 Partners has or had a relationship with any searched entity, Exhibit 2 contains a list of the Parties-in-Interest or their affiliates that M3 Partners has any connection to, including those it advised within the past three years or currently advises, and those who are currently or were within the past three years client-friendly, adverse, or other interested parties in matters wholly unrelated to Debtor and its estate. As disclosed in Exhibit 2, M3 Partners and its directors, associates, and analysts have in the past advised or currently advise entities that are creditors of Debtor, or other parties in interest in the Chapter 11 Case in matters unrelated to these cases. M3 Partners has not, and will not, advise any creditors of the Debtors or other parties in interest in connection with the Debtors or the Chapter 11 Cases, or have any relationship with any such entity which would be adverse to the Debtors or their estates with respect to the M3 Partners' Services.

17.     M3 Partners has and will continue to review the parties in interest in the Chapter 11 Cases, and will make every effort to disclose all material connections to interested parties in the Chapter 11 Cases which relate to the M3 Partners' Services as they become known to M3 Partners.  Despite the efforts described herein to identify and disclose M3 Partners' connections with the parties in interest in these Chapter 11 Cases, because of the Debtors' numerous relationships, M3 Partners is unable to state with absolute certainty that every client relationship or other connection has been disclosed.  If any new material relevant facts or relationships are discovered or arise which relate to the M3 Partners' Services, M3 Partners will file a supplemental disclosure detailing the same with the Court.

18.     No promises have been received by M3 Partners, or by any partner or employee thereof  to compensation in connection with the Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  M3 Partners has no agreement with any other entity to share with such entity any compensation received by M3 Partners.

19.     For the avoidance of doubt, M3 Partners professionals may personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds, through which such M3 Partners professionals may indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, without the M3 Partners professional's knowledge.  Individually, no M3 Partners professional manages, or otherwise controls, such investment or has any influence over the investment funds' decisions to buy, sell or vote on any particular security.

20.     Based upon the documents and information available and provided to me by the Debtors, and except as otherwise described herein, (a) M3 Partners does not hold or advise any interest adverse to the Debtors with respect to the matters for which it is being engaged; (b) M3 Partners is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code (as modified by section 1103(b) of the Bankruptcy Code); (c) except as otherwise stated herein, neither M3 Partners nor its professionals have any material connection with the Debtors, their estates, or its creditors; and (d) I believe that M3 Partners' employment and retention is necessary and in the best interest of the Debtors' and their estates, its creditors and other Parties-in-Interest. I know of no reason why M3 Partners could not have acted and cannot act as financial advisors for the Debtors in connection with the M3 Partners' Services. The foregoing constitutes

the statement of M3 Partners pursuant to section 1103 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1.

21.     M3 Partners believes that it can adequately represent the interests of the Debtors. M3 Partners has not advised any creditor, interest holder or other party-in-interest in connection with their respective dealings with the Debtors, except as disclosed above.  M3 Partners has fully informed the Debtors of its ongoing advisement of the entities identified in <u>Exhibit 2</u> and the Debtors have agreed both to M3 Partners' continued advisement of these entities in matters unrelated to these proceedings and to M3 Partners' advisement of the Debtors in the Chapter 11 Cases.

## **M3 PARTNERS' RATES AND BILLING PRACTICES**

22.     M3 Partners has informed the Debtors, and the Debtors agreed, that M3 Partners intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of the Court and the terms of M3 Partners' engagement with the Debtors.  Subject to such provisions and Court orders, compensation will be payable to M3 Partners on an hourly basis for services rendered, plus reimbursement of actual, necessary expenses incurred by M3 Partners in accordance with the terms and conditions of this engagement.  In accordance with the terms of the Engagement Letter, M3 Partners' hourly rates ranges are:

| | |
|---|---|
| Managing Partner | $1,350 |
| Senior Managing Director | $1,245 |
| Managing Director | $1,025 - $1,150 |
| Director | $840 - $945 |
| Vice President | $750 |
| Senior Associate | $650 |
| Associate | $550 |
| Analyst | $450 |

23.     In connection with the reimbursement of actual, necessary expenses, the Debtors have been informed that it is M3 Partners' policy to charge its clients in all areas of practice for expenses and charges incurred in connection with the clients' cases.  The expenses generally charged to M3 Partners' clients include, among other things, travel expenses, photocopying, messenger, courier, postage, expert and mediator fees, electronic legal research and other database usage, overtime expenses, third-party service fees, and filing fees, all of which are charged at cost and duly documented.  The Debtors have been informed that M3 Partners believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.  The Debtors have agreed that M3 Partners will charge the Debtors for these expenses in a manner and at rates consistent with charges generally made to M3 Partners' other clients and in accordance with the terms and conditions of M3 Partners' engagement.  The Debtors respectfully submit that M3 Partners' hourly rates and disbursement and other charges policies are reasonable.

24.     This compensation structure is consistent with M3 Partners' normal and customary billing practices for cases of this size and complexity that require the level of scope and services

outlined herein.  Moreover, the compensation is reasonable in light of (a) industry practice, (b) market rates charged for comparable services, (c) M3 Partners' substantial experience with respect to restructuring and cryptocurrency matters, and (d) the nature and scope of work to be performed by M3 Partners in these Chapter 11 Cases.

25.     No promises have been received by either M3 Partners or any partner or employee thereof as to compensation or payment in connection with the Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code.  M3 Partners has no agreement with any other entity to share with such entity any compensation received by M3 Partners in connection with these Chapter 11 Cases.

## COORDINATION WITH OTHER PROFESSIONALS FOR THE DEBTORS

26.     M3 Partners is aware that the Debtors have submitted, or expect to submit shortly, separate applications to retain, among others: (a) Cleary Gottlieb Steen & Hamilton LLP, as main legal counsel; (b) Kroll Restructuring Administration LLC, as claims and noticing agent and, separately, as administrative advisor; (c) Moelis & Company LLC, as investment banker; (d) Alvarez & Marsal North America, LLC, as financial advisor; (e) Morrison Cohen LLP as special counsel; (f) Kobre & Kim LLP, as conflicts counsel; and (g) Grant Thornton LLP as tax services provider.  Further, the Debtors have submitted a motion to retain and compensate those professionals that the Debtors employ in the ordinary course of business.  M3 Partners will work closely with the Debtors' other advisors to ensure there is no duplication of services performed by the Debtors' advisors.

## **CONCLUSION**

27.     The Application requests approval of the retention of M3 Partners at M3 Partners' normal hourly rates in effect at the time the services are rendered and in accordance with M3 Partners' normal reimbursement policies, subject to any modifications to such policies that M3 Partners may be required to make to comply with orders of this Court, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Subject to these terms and conditions, M3 Partners intends to apply, pursuant to section 330 of the Bankruptcy Code, for allowances of compensation for professional services rendered in these Chapter 11 Cases and for reimbursement of actual and necessary expenses incurred in connection therewith in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

* * *

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 13, 2023

*/s/ Kunal S. Kamlani*
Kunal S. Kamlani
Senior Managing Director
M3 Advisory Partners, LP

## Exhibit 1

### Potential Parties-in-Interest

**Debtor Entities**
Genesis Asia Pacific PTE. LTD.
Genesis Global Capital, LLC
Genesis Global Holdco, LLC

**Non-Debtor Affiliates**
Genesis Asia (Hong Kong) Limited
Genesis Bermuda Holdco Limited
Genesis Custody Limited
Genesis Global Assets, LLC
Genesis Global Labs, LLC
Genesis Global Markets Limited
Genesis Global Trading, Inc.
Genesis UK Holdco Limited
GGA International Limited (BVI)
GGC International, Limited (BVI)

**Major Equity Holders**
Digital Currency Group, Inc.

**Major Equity Holders' Counsel**
Weil, Gotshal, and Manges LLP

**Senior Management**
Agnes Chen Meiyun
Andrew Sullivan
Brian Bulthius
Diana Kim

**Current Directors**
A. Derar Islim
Alice Chan
Arianna Pretto-Sakmann
Lip Chih Ng
Mark Murphy
Paul Aronzon
Tom Conheeney

**Debtors' Restructuring Professionals**
Cleary Gottlieb Steen & Hamilton LLP
Alvarez & Marsal Holdings, LLC
Kobre & Kim LLP
Kroll Restructuring Administration LLC

Moelis & Company

**Insurers**
Axis Capital
Forge Insurance Company
Lloyd's of London
Starr Insurance & Reinsurance Limited
Woodruff Sawyer

**Bankruptcy Court for the Southern District of New York**
Christine Azzaro
Hon. Cecelia G. Morris
Hon. David S. Jones
Hon. James L. Garrity, Jr.
Hon. John P. Mastando
Hon. Lisa G. Beckerman
Hon. Martin Glenn
Hon. Michael E. Wiles
Hon. Philip Bentley
Hon. Sean H. Lane
Jaqueline Tran
Sarah Rosenthal

**U.S. Trustee Office, Region 2, Southern District of New York, Manhattan Division**
Abriano, Victor
Allen, Joseph
Arbeit, Susan
Bentley, Phillip
Black, Christine
Bruh, Mark
Cornell, Shara
Gannone, James
Harrington, William K.
Higgins, Benjamin J.
Higgins, David S.
Joseph, Nadkarni
Leonhard, Alicia
Masumoto, Brian S.
Mendoza, Ercilia A.
Moroney, Mary V.
Morrissey, Richard C.

Ogunleye, Alaba
Penpraze, Lisa
Riffkin, Linda A.
Rodriguez, Ilusion
Schmitt, Kathleen
Schwartz, Andrea B.
Schwartzberg, Paul K.
Scott, Shannon
Sharp, Sylvester
Tiantian, Tara
Van Baalen, Guy A.
Velez-Rivera, Andy
Vescovacci, Madeleine
Wells, Annie
Zipes, Greg M.

**Taxing Authorities**
Monetary Authority of Singapore

**Debtors' Banks & Financial Services Providers**
Anchorage Lending CA, LLC
Banking Circle
Continental Stock Transfer & Trust
Houlihan Lokey
Industrial and Commercial Bank of China
Interactive Brokers
JPMorgan Chase Bank, NA
JPMorgan Chase Bank, NA Singapore
Kraken
Signature Bank
Tradestation

**Significant Vendors**
250 Park LLC
ACRION GROUP INC/Dmitri Gofshtein
Agon Litigation
Amazon Web Services
American Arbitration Association
Anchorage Digital Bank, National Association
Andy McMullen
BitGo, Inc.
Bloomberg LP
CAPITEQ PTE. LTD.
CDW Direct LLC

Chicago Mercantile Exchange Inc
CJD Technologies
CloudFlare, Inc.
CMS Cameron McKenna Nabarro Olswang LLP
Coinbase Custody Trust
Compliancy Services
Corver Roos
Cyberfort Ltd
Dashlane USA Inc
Davis Polk & Wardwell LLP
DCG Real Estate Management LLC
Donnelley Financial LLC
Driven
Ernst & Young LLP
Fireblocks Inc.
Friedman LLP
GitLab Inc
Global Fund Media Limited
Goodwin Procter LLP
Gowling WLG (Canada) LLP
Grab Pte. Ltd.
Halborn Inc.
IBM Corporation
I-Net Technologies
Inland Revenue Authority Of Singapore
Intelliware Development Inc
ISS Facility Services Private Limited
JAMS, Inc.
Kleinberg Kaplan Wolff & Cohen P.C.
Kyte Broking Limited
Levin Group Ltd
Mana Holdings Ltd
Managed Funds Association
Massive Computing, Inc
Meitar Law Offices
Milken Institute
Mintz Levin Cohn Ferris Glovsky and Popeo P.C.
Mitchell Martin
Moore & Van Allen PLLC
Mount Studio Pte Ltd
Murphy & Mcgonigle P.C.
Nakul Verma
Numerix LLC
Office Secretaries Pte Ltd.

Okta Inc
One Raffles Quay Pte Ltd
One11 Racing LLC
OnStream LLC
Opswat, Inc.
Opus Recruitment Solutions Ltd
Ordinary Folk
Orrick, Herrington & Sutcliffe, LLP
Papaya Global, Inc.
Perkins Coie LLP
Phaidon International Inc
Pico Quantitative Trading
Private Chefs of Atlanta
Pythian Services, Inc.
Reed Smith Pte. Ltd
Richards Layton & Finger
Roman Mashtalyar
SALT Venture Group, LLC
Savills (Singapore) PTE LTD
Shearman & Sterling LLP
Singtel (Singapore Telecommunications Limited)

**Potential M&A Counterparties**
[LIST ON FILE]

Snowflake Inc.
Spire Search Partners
Stop Pest Control Of NY, INC.
STORM2 PTE LTD
Stott and May
Structure Works
T2 CONSULTING, LLC
The Furniture X-Change
The TIE, Inc
Unispace Of Boston, LLC
United Corporate Services Inc
VIP Sports Marketing, Inc.
Wolters Kluwer financial Services Inc.
Woodruff Sawyer
Xenetix Pte Ltd

**Litigation Counterparties**
[LIST ON FILE]

**Top 50 Creditors**
[LIST ON FILE]

## EXHIBIT 2

### Potential Connections or Related Parties[1]

- In the ordinary course of its financial advisory practice, M3 Advisory Partners, LP or its senior professionals (collectively, "<u>M3</u>") have recently had and/or currently have relationships with various law firms, accounting firms, financial advisory firms, and other professionals and service providers, as well as affiliates of the foregoing who are listed on Exhibit 1 to the Declaration of Kunal S. Kamlani (the "***Debtor Disclosure Schedule***") as parties-in-interest in these proceedings (each, an "***Ancillary Entity***"). Such relationships have included, among other things, M3 or its senior professionals[2] serving as an advisor to clients in engagements where (a) such client was or is represented by one or more Ancillary Entities or (b) one or more Ancillary Entities has represented or currently represents one or more parties-in-interest who are not clients of M3. Additionally, certain of the Ancillary Entities may have retained, or been retained by M3 and its affiliates, in the recent past with respect to matters unrelated to the Debtors and their bankruptcy cases. The Persons shown on the Debtor Disclosure Schedule who constitute (or whose affiliates constitute) Ancillary Entities include, without limitation, Alvarez & Marsal Holdings, LLC; Cleary Gottlieb Steen & Hamilton LLP; CMS Cameron McKenna Nabarro Olswang LLP; Davis Polk & Wardwell LLP; Ernst & Young LLP; Goodwin Procter LLP; Houlihan Lokey; Kobre & Kim LLP; Kroll Restructuring Administration LLC; Mintz Levin Cohn Ferris Glovsky & Popeo P.C.; Moelis & Company; Moore & Van Allen PLLC; Orrick, Herrington & Sutcliffe, LLP; Perkins Coie LLP; Reed Smith Pte. Ltd; Richards Layton & Finger; Shearman & Sterling LP; and Weil Gotshal & Manges LLP. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- M3 has currently has or recently has had relationships with various bank and non-bank lenders, trustees, other financial institutions acting in various capacities, and other equity and debt financing sources, as well as affiliates of any of the foregoing, who are listed on the Debtor Disclosure Schedule as parties-in-interest to these proceedings (collectively, the "***Financial Institutions***"). Such relationships may include, among other things, (a) a direct relationship between M3 and one or more of the Financial Institutions, (b) M3 advising Persons who themselves have relationships with such Financial Institutions and (c) M3 being involved in a proceeding or other engagement in which one or more Financial Institutions was separately a

---

[1]    References in this Schedule to parties-in-interest with which M3 currently has or recently has had relationships in any category described above are not exclusive and the party-in-interest or an affiliate thereof also may have other relationships with M3 in the same or other categories without specific identification. All disclosures contained herein are made to the knowledge of M3 based upon parties-in-interest disclosures provided in various engagements and other information of which the senior professionals at M3 have actual knowledge. For purposes of this Schedule, the term "<u>Persons</u>" shall include entities and natural persons and any reference to a specific Person shall be deemed to also be a reference to affiliates of such Person.

[2]    For purposes of this Schedule, the term "senior professionals" refers to Managing Directors and Directors of M3.

party-in-interest (the parties-in-interest described in clauses (a), (b) and (c) collectively, "***Ancillary Institutions***"). Such Ancillary Institutions include, without limitation: Anchorage Digital Bank, National Association; Anchorage Lending CA, LLC; [ON FILE]; [ON FILE]; [ON FILE]; [ON FILE]; [ON FILE]; [ON FILE]; [ON FILE]; [ON FILE]; [ON FILE]; [ON FILE]; [ON FILE]; [ON FILE]; JPMorgan Chase Bank, NA/JPMorgan Chase Bank, NA Singapore; [ON FILE]; [ON FILE]; Metropolitan Commercial Bank; [ON FILE]; [ON FILE]; [ON FILE]; [ON FILE]; [ON FILE]; Signature Bank; Silvergate Bank; [ON FILE]; and VanEck New Finance Income Fund, LP. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, each of [LIST ON FILE] has been disclosed as a "Potential M&A Counterparty."

  o Such entities or affiliates thereof have been identified as an "Institutional Customer" of one or more recent clients of M3 who are unrelated to the Debtors. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, each of [LIST ON FILE] has been disclosed as a "Potential M&A Counterparty."

  o Such entities or affiliates thereof also have been identified as a "Secured Lender," "Potential M&A Bidding Party", "Loan Counterparty," "Institutional Customer," "Custodian," "Exchange/Marketplace" and/or "Equity Holder" in connection with one or more other engagements of M3.

  o One or more affiliates of [ON FILE] was a client of M3 with respect to a recent engagement which was completed prior to the date hereof.

  o A senior professional of M3 is a limited partner in an investment fund managed by [ON FILE]. As such fund is focused on energy and power opportunities, the members of the team which manages such fund would not reasonably be expected to be involved in any M&A transaction with the Debtors.

  To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, [ON FILE] has been disclosed as a "Potential M&A Counterparty" and "Debtors' Banks and Financial Services Provider."

  o [ON FILE] currently serves as transfer agent for two special purpose acquisition companies sponsored, in part, by certain senior members of the M3 team. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, [ON FILE] is disclosed as a "Top 50 Creditor" and as a "Potential M&A Counterparty."

  - [ON FILE] has been identified as a "Loan Counterparty" or "Institutional Customer" in connection with one or more other engagements of M3. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, Donnelley Financial LLC is disclosed as a "Significant Vendor."

  - An affiliate of M3 currently is adverse to Donnelley Financial Solutions in litigation that is entirely unrelated to the Debtors and/or the Chapter 11 Cases. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, Fireblocks Inc. has been disclosed as a "Significant Vendor."

  - Fireblocks Inc. or affiliates thereof have been identified as "Custodians," "Potential Bidding Parties" and/or "Significant Vendors" in connection with one or more other engagements of M3. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, each of [ON FILE] has been disclosed as a "Top 50 Creditor."

  - Each such person has been identified as a "Significant Client," "Institutional Customer" and/or "Top 50 Unsecured Creditor" in connection with one or more other engagements of M3. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- M3 currently serves as financial advisor to the Official Committee of Unsecured Creditors of BlockFi, Celsius Network and Voyager.

  - Genesis Global Capital, LLC has been identified as an "Institutional Customer" or "Lender" in the disclosure schedules filed in connection with the Celsius and Voyager proceedings.

  To the best knowledge of the senior professionals at M3 on the date hereof, such relationships do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, [ON FILE] has been disclosed as a "Top 50 Creditor".

  - Certain Affiliates of [ON FILE] have been identified as a "Legal Matter and Litigant," "Retail Customer" or "Institutional Customer" in connection with one or more other engagements of M3. To the best knowledge of the senior professionals at M3 on the date

hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- On the Debtor Disclosure Schedule, [ON FILE] has been disclosed as a "Litigation Counterparty."

  o [ON FILE] has been identified as an "Institutional Customer" and "Lenders/Lending" in connection with one or more other engagements of M3. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- M3 currently purchases or recently has purchased goods and services in the ordinary course of business and in the open market from vendors who are listed on the Debtor Disclosure Schedule as parties-in-interest to these proceedings. Similarly, clients of M3, and debtors and parties-in-interest with respect to matters in which M3 is currently involved or recently has been involved in various capacities, also purchase or recently have purchased, or sell or recently have sold, goods and services in the ordinary course of business and in the open market from or to certain of the Persons listed on the Debtor Disclosure Schedule as parties-in-interest to these proceedings. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- M3 currently serves or recently has served as a financial advisor to various Persons which have (a) purchased, or currently purchase, insurance (including, without limitation, health and similar insurance), employment benefits services, or utilities from, (b) leased property or assets from landlords or lease counterparties who are, or (c) recently have been or are subject to the taxing or other regulatory authority of, Persons listed on the Debtor Disclosure Schedule as parties-in-interest to these proceedings. In addition, M3 itself purchases or has recently purchased insurance, employments benefits services or utilities from, or currently or recently has leased property or assets from, or is or recently has been subject to the taxing or other regulatory authority of, Persons who are listed on the Debtor Disclosure Schedule as parties-in-interest to these proceedings. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

  o In addition, each of the [ON FILE] and [ON FILE] has been disclosed as a "Litigation Counterparty" on the Debtor Disclosure Schedule and each such entity has also been identified as a "Taxing Authority or Regulatory Agency" in connection with one or more other engagements of M3. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- In the ordinary course of its business, M3 provides services to Persons currently or recently conducting, or involved in, bankruptcy proceedings in various federal bankruptcy courts in the United States. In connection with these proceedings, M3 interacts with Judges of the United States Bankruptcy Courts and personnel of the Office of the United States Trustee in various

jurisdictions, including, without limitation, those of the Southern District of New York.  To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

# EXHIBIT C

**Engagement Letter**



1700 Broadway, 19th Floor
New York, NY 10019-5905
212.202.2300
www.m3-partners.com

March 30, 2023

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

**<u>Engagement Letter</u>**

Ladies and Gentlemen:

This letter agreement (this "*Agreement*") confirms that Cleary Gottlieb Steen & Hamilton LLP (the "*Client*"), as counsel to Genesis Global Holdco, LLC and its affiliated debtors (collectively, the "*Company*"), has engaged M3 Advisory Partners, LP ("*M3*") to provide the Services described below (the "*Engagement*").  M3 and the Client are collectively referred to in this Agreement as the "*Parties*."

    1.  <u>Services</u>:  M3 will act at the direction and under the supervision of attorneys at the Client only, with the Client acting upon instruction from the Company, to assist the Client in rendering legal advice and in performing legal services for the Company.  In so doing, M3 hereby agrees to provide the following services (the "*Services*") for the Client and the Company upon the terms and subject to the conditions set forth in this Agreement:

        (a)     Supporting the Client and the Company in connection with matters relating to FTX Trading Ltd., Alameda Research LLC, Alameda Research Ltd. (BVI), and/or certain of their affiliates; and

        (b)     such other services as M3 and the Client may agree in writing from time to time with approval of the Court.

    2.  <u>Engagement Term</u>.  The Engagement shall commence on the date of acceptance of this Agreement and may be terminated by either Party at any time upon ten business days' written notice.  Following any such termination, neither Party shall have further liability to the other, except with respect to fees and expenses earned and incurred through the date of termination and any provisions of this Agreement which are expressly stated to survive its termination or expiration.

    3.  <u>Staffing</u>.  M3 will staff a team that it believes to be appropriate to provide the Services in accordance with the terms of this Agreement.  The team initially will be comprised of Kunal Kamlani (Senior Managing Director), Javier Schiffrin (Managing Director), William Foster (Vice

President), Matthew Altman (Associate) and Monique Ianella (Associate).  The individual members of the team shall be subject to change by M3 from time to time to facilitate the efficient and effective delivery of the Services.  M3 also may provide Services through independent contractors and, unless the context shall otherwise indicate, references in this Agreement to M3 and its employees or staff shall be deemed to include any such independent contractors and their respective employees.

    4.  <u>Compensation for Services</u>.  (a)  M3's compensation for services rendered under this Agreement shall consist of the following:

        (i)    <u>Service Fees</u>:  As compensation for providing the Services hereunder, M3 shall be entitled to non-refundable professional fees based on the actual hours incurred by M3 personnel on matters pertinent to this case (the "***Service Fees***").  The Service Fees shall be based upon the following hourly rates:

| Professional | Hourly Rate |
|---|---|
| Managing Partner | $1,350 |
| Senior Managing Director | $1,245 |
| Managing Director | $1,025 - $1,150 |
| Director | $840 - $945 |
| Vice President | $750 |
| Senior Associate | $650 |
| Associate | $550 |
| Analyst | $450 |

The Service Fees shall be billed by M3 to the Company in accordance with the procedures approved by the U.S. Bankruptcy Court overseeing the Company's chapter 11 proceedings (the "***Court***").  M3 shall provide Client copies of an invoice for the Service Fees in respect of the billing period and be responsible for filing all necessary fee applications or other statements consistent with the requirements of the Court.  M3 may adjust its billing rates from time to time in the normal course of business upon notice to the Company, in accordance with all applicable requirements of the Court.

        (ii)    <u>Expenses</u>:  In addition to any compensation for providing the Services, subject to the applicable procedures approved by the Court, the Company shall reimburse M3 for all reasonable and documented out-of-pocket expenses incurred in the performance of the Services (including, without limitation, reasonable travel costs).

    (b)  All amounts owing hereunder shall be paid by the Company in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, Case No. 23-10063 (Bankr. S.D.N.Y), ECF No. 101 (the "***Interim Compensation Order***"), entered by the Court. Payments shall be made by wire transfer of immediately available funds in accordance with instructions from time to time provided by M3 or otherwise in a manner consistent with the requirements of the Court.  Any amounts payable hereunder which are not paid in accordance with the Interim Compensation Order shall be deemed "past due." M3 reserves the right to suspend further Services until payment is received on past due invoices and to exercise all

rights and remedies available under applicable law (with the Company being obligated to pay M3's reasonable attorney fees and other costs of collection and enforcement).  In the event that M3 so suspends the Services, M3 shall not be responsible or liable for any resulting loss, damage or expense due to such suspension.

(c)  It is understood and agreed that, even though all billing submitted by M3 will be the sole obligation and expense of the Company, M3 has been engaged on behalf of the Client in its capacity as counsel to the Company.  Notwithstanding anything to the contrary contained in this Agreement, it is understood and agreed that neither the Client nor its attorneys will be liable for any amounts owing to M3 pursuant to or in connection with this Agreement.

(d)  Unless expressly stated otherwise in the relevant invoice, none of the amounts invoiced by M3 from time to time with respect to the Engagement shall be contingent upon, or in any way tied to the delivery of, any reports or other work product in the future, nor upon the outcome of any case or matters.

(f)  All fees payable to M3 are exclusive of taxes or similar charges, which shall be the sole obligation of the Company (other than any taxes which may be payable on account of M3's income generally, which shall be the obligation of M3).

(g)  The provisions of this Section shall survive the termination or expiration of this Agreement.

5.  <u>Cooperation from Client and Company</u>.  In order to properly perform the Services and fulfill its responsibilities on a timely basis, M3 will rely on the timely cooperation of the Client and the Company, and their respective professional advisors, including, without limitation, making available to M3 relevant data, information and personnel, performing any tasks or responsibilities assigned to the Client or the Company, as applicable, and notifying M3 of any issues or concerns that the Client or the Company may have relating to the Services.  The Client and the Company each understands and acknowledges that M3's proper delivery of the Services is dependent upon timely decisions and approvals by the Client and the Company.  M3 shall have no responsibility or liability for any delays, additional costs or other deficiencies caused by the Company or the Client failing to properly fulfill its responsibilities under this Agreement or lack of cooperation from any third party.

6.  <u>Deliverables</u>.  (a) In connection with the Engagement, M3 may furnish the Company or the Client with information, advice, reports, analyses, presentations or other materials (the "***Deliverables***"). The Deliverables may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available.  The Company and the Client each acknowledges that M3 will have no obligation to update the Deliverables as part of the Services in the event of such a change.

(b)  Any Deliverables prepared by M3 under this Agreement will be submitted to the Client, or if so instructed by the Client, the Company.  M3 acknowledges that work performed by it as part of this Engagement constitutes privileged and confidential communications and that any Deliverable or other document prepared by M3 is prepared for the Client and, to the extent

provided in Section 11, is the property of the Client. Any materials prepared by M3 are solely for the confidential use of the Client and the Company and may not be reproduced, summarized, referred to, disclosed publicly or given to any other person (including, without limitation, the Company) without our prior consent, which permission shall not be unreasonably withheld, *provided* that such permission shall not be required if the materials are required to be disclosed by process of law or regulatory requirements.

(c) The provisions of this Section shall survive the termination or expiration of this Agreement.

7.  <u>Limitations on Services</u>.  (a)  The Services are limited to those specifically noted in this Agreement.

(b)  M3 does not provide accounting or tax-related assistance and no Deliverable or other information or advice provided to the Client or the Company shall be deemed to be accounting or tax-related assistance.  The Client and the Company shall be solely responsible for determining the accounting and tax-related implications of the Deliverables and other information and advice provided to it by M3.  M3 shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with the Engagement. The Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts.  M3 shall assume the accuracy and completeness of all information submitted by or on behalf of the Client and Company to M3 for analysis and which will form the basis of M3's conclusions, without any obligation of M3 to verify the accuracy or completeness of such information, and M3 shall not be responsible for any analysis, advice or other Services to the extent based on inaccurate or incomplete information provided or accepted by or on behalf of the Client or the Company.

(c)  The Services shall not include preparing, auditing or otherwise attesting in any way (including without limitation, with respect to the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Company's financial projections, and the Client has not engaged M3 for that purpose.  The Services are provided based upon the understanding that the Company has sole responsibility for its financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto.  To the extent that, during the performance of Services hereunder, M3 is required to consider the Company's financial projections, each of the Client and the Company understands that M3's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide assurance that M3 might not become aware of significant matters affecting the reasonableness of the projections that might be disclosed by more extensive procedures.  There will usually be differences between projected and actual results, and those differences may be material.  Each of the Client and the Company understands and agrees that M3 will have no responsibility or liability relating to any such differences.

(d) To the extent that the performance of the Services requires that M3 form conclusions or reach opinions, M3 shall do so without regard to or consideration of the impact that such conclusions or opinions may have on the initiation or outcome of any litigation to which the Client or the Company is a party.

(e) M3 does not provide investment advice and the Services shall not include the provision of investment advice.  Each of the Client and the Company shall have sole responsibility for all investment decisions made by it.  Similarly, M3 is providing advisory and consulting services only and will not make management decisions for the Client or the Company.  Although M3 may from time to time suggest or recommend options that may be available to the Client or the Company, the ultimate decision with respect to such options rests with the Client or the Company, as applicable, and the Client or the Company, as applicable, shall be solely responsible for such decision and its outcome.  M3 makes no representation, promise or guarantee with respect to the outcome of any matter affecting the Client or the Company.

(f) The Company shall be solely responsible for the work and fees of any third parties engaged by the Client or the Company to provide services in connection with the Engagement, regardless of whether such third party was recommended to the Client or the Company by M3 or M3 is involved with the services provided by it.  M3 shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.

(g) The provisions of this Section shall survive the termination or expiration of this Agreement.

8.  <u>Non-Solicitation</u>.  Each of the Client and the Company covenants and agrees that, prior to the six-month anniversary of the termination or expiration of this Agreement, it will not hire directly or as an independent contractor, or refer to another for employment, any person who was during the term of this Agreement an employee or contractor of M3 or any of its affiliated entities who was involved on behalf of M3 with the Engagement or the performance of the Services. In the event of the breach of the foregoing covenant, the Client or the Company, as applicable, shall be liable to M3, and shall pay on demand to M3, liquidated damages equal to 200% of the total annual compensation of each relevant employee for the preceding calendar year (and, in the event that any such employee was not employed for the full year, the amount equal to 200% of his or her annualized compensation).  The Parties mutually agree that the actual damages that would be sustained by M3 as the result of any such breach will be substantial and will be impossible to measure accurately, and that the foregoing liquidated damage amount is fair and reasonable.  The provisions of this Section shall survive the termination or expiration of this Agreement.

9.  <u>Confidentiality</u>.

(a)  Each Party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other party in the scope of the Engagement (the "***Confidential Information***"), and neither Party will disclose any Confidential Information of the other Party to any other person or entity.  For the avoidance of doubt, the term "Confidential

Information" shall include (i) all non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models and (ii) any work product relating to the business of either party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.  Notwithstanding the foregoing, the term "Confidential Information" shall not include information that (x) is or becomes publicly available other than as a result of disclosure by the receiving Party in violation of this Agreement, (y) was already known to the receiving Party or (z) was independently acquired or developed by the receiving Party from a source not known by it to be bound by a confidentiality requirement with respect to such information.  In performing the Services, M3 will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information.

(b)  M3 also agrees to be bound by and comply with the terms and conditions of any reasonable and customary confidentiality agreement entered into between the Client and the Company of which it has been provided a copy (with receipt acknowledged in writing), and, if requested by the Company, shall execute a confidentiality agreement for the benefit of the Company.

(c)  The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, M3 from making such disclosures of Confidential Information that M3 reasonably believes are required by law or any regulatory requirement or authority, or to clear client conflicts.  M3 also may disclose Confidential Information to its partners, directors, officers, employees, independent contractors and agents who have a need to know the Confidential Information for the proper performance of the Services or otherwise in connection with the Engagement.

(d)  The provisions of this Section shall survive for a period of two years following the termination or expiration of this Agreement and shall supersede any separate confidentiality or analogous agreement between M3 and the Client.

10.  Privilege.  (a) The Client has advised M3 that it believes the work product and all correspondence between the Client and M3 relating to the Engagement are protected from disclosure to third parties under the attorney work product doctrine and/or as confidential attorney-client communications that are prepared at the request of counsel, and, therefore, shall be treated by M3 as privileged and confidential.  M3's work shall be performed under the direction of the Client to assist the Client in providing legal advice, analysis and consultation to the Company.  Deliverables that M3 prepares under this Agreement shall be prominently labeled as "Privileged and Confidential; Attorney Work Product."

(b)  Unless instructed by the Client, M3 shall not disclose any of its communications, or any of the information received or developed in the course of its work for the Client, to anyone other than the Client and the Company, subject to applicable law, regulations and court order.  In the event of a subpoena, discovery request or other circumstance in which M3 is requested to produce or disclose its work product and files, M3 will promptly notify the Client and the Company, permit the Client and the Company to interpose any attorney work product privilege or attorney-client communications privilege that may be available, and unless the Client and the Company expressly consent to disclosure, M3 will maintain such confidentiality unless and until

directed otherwise by express order or directive of a court or administrative authority overriding the Client's objections to disclosure and the lapse of any relevant appeal periods concerning such order or direction. Notwithstanding the foregoing, M3 may produce or disclose such work product or files without any such order or directive in the event that M3 is advised by counsel that it is at material risk of liability for failing to do so; *provided*, *however*, that M3 will advise the Client of such disclosure and will (at the sole expense of the Company) use commercially reasonable efforts to seek confidential treatment of such work product or files from such court or administrative authority. M3 takes no responsibility for any court's or tribunal's failure to uphold the privilege or related doctrines.

(c) Each of the Client and the Company agrees and acknowledges that nothing in this Agreement (including, without limitation, any payment by the Company of the Service Fees and other amounts owing hereunder) shall operate to modify or waive the privileged nature of the information generated by M3 in the course of this Engagement or consultation with M3 personnel as to matters relating to this Engagement.

(d) The provisions of this Section shall survive the termination or expiration of this Agreement.

11. <u>Intellectual Property</u>. Upon payment in full of all amounts owing to M3 hereunder, the Client will own all Deliverables furnished by M3 to the Client in connection with the Services, *provided* that M3 will retain ownership of (a) all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by M3 in connection with the Services and (b) all other intellectual property not containing Confidential Information which has been developed by M3 outside of the provision of the Services (the "***M3 Tools***"), it being understood that M3 will have no ownership right to, and will maintain in accordance with the provisions of this Agreement the confidentiality of, any Confidential Information of the Client contained in the M3 Tools. To the extent that the Deliverables include any M3 Tools, M3 hereby grants the Client a non-exclusive, non-transferable, non-sublicensable worldwide, royalty-free license to use and copy the M3 Tools solely as part of the Deliverables and subject to the confidentiality provisions contained in this Agreement. The Client acknowledges and agrees that the M3 Tools are provided to the Client on an "as is" basis and without any warranty or condition of any kind (whether express, implied or otherwise), and including without limitation any implied warranty of merchantability or fitness for a particular purpose. The provisions of this Section shall survive the termination or expiration of this Agreement.

12. <u>Indemnification</u>. The Company hereby irrevocably agrees to indemnify and hold harmless M3 and its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors to the extent described in Annex I to this Agreement, with such Annex I being incorporated herein by reference and constituting an integral and enforceable part of this Agreement. The provisions of this Section (including, without limitation, the provisions of Annex I) shall survive the termination or expiration of this Agreement. For the avoidance of doubt, neither the Client nor its attorneys shall be liable for any indemnification or reimbursement obligations pursuant to or in connection with this Agreement.

13. <u>Limitation on Damages</u>.  In no event shall M3 or any other Indemnitee be liable to the Client, the Company, or their respective its affiliates and successors, or any person claiming on behalf or in the right of any of the foregoing (including the Client's or the Company's respective owners, parents, affiliates, successors, directors, officers, employees, agents, security holders, or creditors) for (i) any amount which, when taken together with all losses for which M3 and the Indemnitees are liable in connection with this Agreement or the Engagement, would exceed the amount of fees for the Services actually received by M3 from the Company in connection with the Engagement during the immediately preceding 12 months or (ii) any special, consequential, incidental or exemplary damages or loss (or any lost profits, savings or business opportunity) (collectively, the "***Liability Cap***").  This paragraph shall apply regardless of the nature of any claim(s) (including claims based on contract, statute, negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not M3 was advised of the possibility of the damage or loss asserted, but shall not apply to the extent finally determined by final and non-appealable judgment of a court of competent jurisdiction to be prohibited by applicable law.  For the avoidance of doubt, the Parties and the Company hereby irrevocably agree that the Liability Cap is intended to be the total limit of liability for M3 and all other Indemnitees in the aggregate for any and all claims and demands by anyone in connection with this Agreement, the Services and the Engagement, including without limitation any liability to the Client and to any others making claims relating to the Services and the Engagement.  Any such claimants shall allocate among themselves any amounts payable by M3, but the failure of the claimants to reach such an agreement shall not affect the enforceability of the Liability Cap.  Under no circumstances shall the collective liability of M3 and the other Indemnitees in connection with this Agreement exceed the Liability Cap.  The provisions of this Section shall survive the termination or expiration of this Agreement.

14. <u>Client Acknowledgement</u>.  Each of the Client and the Company hereby acknowledges and agrees that M3 may, in the ordinary course of its business, serve clients who are competitive with, or have conflicting interests with, the Client or the Company.  Consistent with its confidentiality obligations hereunder and its confidentiality obligations to its other clients, M3 will not advise or consult to the Client with respect to any aspect of M3's engagement or potential engagement with any other client, potential client or former client.  Similarly, M3 will not advise or consult to any other client, potential client or former client with respect to any aspect of the Engagement.  M3 will maintain the confidentiality of the Confidential Information in accordance with the terms of this Agreement and, similarly, will not share confidential information of any client, potential client or former client of M3 with the Client or the Company.  The provisions of this Section shall survive the termination or expiration of this Agreement.

15. <u>Retention Application</u>.  Promptly following the execution and delivery of this Agreement by the Parties and the Company, the Company will apply to the Court for approval of M3's retention, *nunc pro tunc* to the date of this Agreement and use commercially reasonable efforts to obtain an order of the Court authorizing the retention of M3 upon the terms of this Agreement. The Client shall provide a copy of such application and proposed order to M3 for review as much in advance of filing as is reasonably practicable and such application and order must be acceptable to the Company and M3. Following entry of the order authorizing M3's retention, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the Court, as promptly as possible in accordance with the terms of this Agreement,

the order of the Court approving the Engagement, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with M3 to promptly file any and all necessary applications regarding such fees and expenses with the Court. M3 shall have no obligation to provide services under this Agreement unless M3's retention under this Agreement is approved by final order of the Court which is acceptable to M3 and which approves this Agreement in all material respects. The Company shall reimburse M3 for all reasonable and documented costs and expenses incurred by M3 (including, without limitation, reasonable and documented fees of counsel to M3) in obtaining such order of the Court and, if requested by M3, the Client shall provide reasonable assistance to M3 in seeking to obtain such order. If the order authorizing M3's employment is not obtained, or is later reversed, modified or set aside for any reason, then M3 may terminate this Agreement, and the Company shall promptly reimburse M3 for all fees and expenses due pursuant to this Agreement. The provisions of this Section shall survive the termination or expiration of this Agreement.

16. Miscellaneous.

(a)  This Agreement (i) constitutes the entire agreement of M3, the Client and the Company with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among M3, the Client and the Company with respect to the subject matter hereof, and (ii) may be modified, amended or supplemented only by prior written agreement of each of M3, the Client and the Company.

(b)  The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction.  If feasible, any such offending provision shall be deemed modified to be within the limits of enforceability or validity; *provided* that, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

(c)  M3's services hereunder are personal in nature and may not be assigned without the written consent of the Client and the Company.  The obligations of M3 hereunder are owing only to the Client and the Company and there shall be no third-party beneficiaries of the obligations of M3 hereunder.

(d)  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.

(e)  This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be executed and performed within such state.  The Parties and the Company hereby submit to the exclusive jurisdiction of and venue in the federal and state courts located in New York City and waive any right to trial by jury in connection with any dispute related to this Agreement.

(f)    The provisions of this Section shall survive the termination or expiration of this Agreement.

*[Remainder of Page Intentionally Left Blank]*

This Agreement shall be binding upon the Parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

M3 ADVISORY PARTNERS, LP

By _____
    Name:  Mohsin Y. Meghji
    Title:  Managing Member


ACCEPTED AND AGREED
as of the date first set forth above:

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By:_____
    Name: Sean A. O'Neal
    Title: Partner


ACKNOWLEDGED AND AGREED:

GENESIS GLOBAL HOLDCO LLC, on its
  own behalf and on behalf of its affiliated debtors in possession


By:_____
    Name:
    Title:

This Agreement shall be binding upon the Parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

M3 ADVISORY PARTNERS, LP

By _____
    Name:  Mohsin Y. Meghji
    Title:  Managing Member

ACCEPTED AND AGREED
as of the date first set forth above:

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _Sean A. O'Neal_____
       70F9ED9A13D443C...
    Name: Sean A. O'Neal
    Title: Partner

ACKNOWLEDGED AND AGREED:

GENESIS GLOBAL HOLDCO LLC, on its
 own behalf and on behalf of its affiliated debtors in possession

By: _Arianna Pretto-Sakmann_
       77A200507D6D40F...
    Name:  Arianna Pretto-Sakmann
    Title:  Chief Legal Officer

Annex I

## AGREEMENTS REGARDING INDEMNIFICATION

In consideration of M3 performing the Services for the benefit of the Client, the Company (the "***Indemnitor***") shall indemnify M3 and its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each (collectively hereinafter called the "***Indemnitees***") against all costs, fees, expenses, damages, and liabilities (including defense costs) associated with any pending or threatened claim, action or proceeding (a "***Claim***") relating to or arising as a result of the Engagement or the provision of the Services, the Client's or the Company's use or disclosure of the Deliverables, or this Agreement ("***Losses***"). This provision is intended to apply regardless of the nature of any Claim (including contract, statute, any form of negligence, whether of the Client, the Company, M3, or others, tort, strict liability or otherwise), except to the extent such Losses are determined to be the result of M3's bad faith, gross negligence or willful misconduct.

The Indemnitor shall not, without M3's prior written consent (which will not be unreasonably withheld) settle, compromise, or consent to the entry of any judgment in any pending or threatened Claim in respect of which indemnification could reasonably be sought hereunder (whether or not M3 or any other Indemnitee is an actual or potential party to such Claim), if such settlement, compromise, or consent does not include an unconditional release of each Indemnitee from all liability arising out of such Claim; *provided*, *however*, that the Indemnitor shall not enter into any such settlement, compromise or consent of a Claim without M3's prior written consent (which may be granted or withheld in M3's sole discretion) if such settlement, compromise or proceeding provides for injunctive relief against an Indemnitee, an admission of liability by an Indemnitee, or would require payment of any amount by an Indemnitee or any insurer of an Indemnitee. The Indemnitor shall not be liable hereunder to any Indemnitee for any amount paid or payable in the settlement of any action, proceeding or investigation entered into by such Indemnitee without the Indemnitor's written consent.

Upon receipt by an Indemnitee of actual notice of a Claim against such Indemnitee in respect of which indemnity may be sought hereunder, such Indemnitee shall promptly notify the Company. In addition, an Indemnitee shall promptly notify the Company after any action is commenced (by way of service with a summons or other legal process giving information as to the nature and basis of the claim) against such Indemnitee in respect of which indemnity may be sought hereunder. In any event, delay or failure to notify the Client shall not relieve the Indemnitor from any liability which the Indemnitor may have on account of this indemnity or otherwise, except to the extent, and only to the extent, that the Indemnitor shall have been materially prejudiced by such delay or failure.

The Indemnitor shall advance all expenses indemnifiable hereunder that are reasonably incurred by or on behalf of each Indemnitee in connection with any Claim within thirty (30) days after receipt by Indemnitor of a statement or statements from Indemnitee requesting such advance or advances from time to time, whether prior to or after final disposition of such Claim. Such statement or statements shall reasonably evidence the expenses incurred by Indemnitee and shall include or be preceded or accompanied by a written undertaking by or on behalf of Indemnitee to

repay any expenses advanced if it shall ultimately be determined that Indemnitee is not entitled to be indemnified against such expenses. Any advances and undertakings to repay pursuant to this paragraph shall be unsecured and interest free.

To the extent that the Company so elects, the Company (on behalf of the Indemnitor) shall be entitled to assume the defense, with counsel selected by the Company (and approved by M3, with such approval not to be unreasonably withheld), of any action that is the subject of the proceeding in respect of which indemnity may be sought. After notice to the Indemnitees of its election to assume the defense thereof, the Indemnitor will not be liable to any Indemnitee under this Agreement for any expenses subsequently incurred by such Indemnitee in connection with the defense thereof except as otherwise provided below. Such Indemnitee shall have the right to employ counsel of its choice in such Claim, but the fees and expenses of such counsel incurred after notice from the Indemnitor of the assumption of the defense thereof shall be at the expense of such Indemnitee unless the employment of counsel by such Indemnitee has been authorized by the Company, in which case the reasonably incurred fees and expenses of such counsel of such Indemnitee shall be at the expense of the Indemnitor.

Each of the Client and the Company agrees that neither M3 nor any other Indemnitee shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Client, the Company, or any person or entity asserting claims on behalf of or in right of the Client or the Company, caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, except for losses, claims, damages, penalties or liabilities incurred by the Client which are finally determined by a non-appealable judgment of a court of competent jurisdiction to have resulted primarily and directly from the bad faith, willful misconduct or gross negligence of M3 or any other Indemnitee and do not exceed the Liability Cap.

In the event that any M3 personnel are requested or required to appear as a witness in connection with any claim, action or proceeding relating to or arising as a result of the Engagement or the provision of the Services, the use or disclosure of the Deliverables by the Client or the Company, or this Agreement, the Indemnitor shall, to the extent permitted by applicable law, reimburse M3 for all reasonable and documented out-of-pocket expenses incurred by it in connection with such personnel appearing and preparing to appear as a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel, and to compensate M3 at a rate equal to M3's then standard hourly rate for the relevant personnel for each day that such personnel is involved in preparation, discovery, proceedings or testimony pertaining to such Claim. Additionally, M3 will have the right to obtain advice from independent legal counsel with respect to its actual or potential obligations and liability hereunder and the Indemnitor will promptly reimburse M3 for the reasonable out-of-pocket fees and expenses paid by M3 on account thereof; *provided* that such fees and expenses shall not exceed $50,000 without prior written consent of the Company.

The provisions of this Annex I shall be deemed to be an integral part of this Agreement to which this Annex I is affixed and shall survive the termination or expiration of this Agreement for any reason. The provisions of this Annex I shall be binding upon the Client, the Company and their respective successors and assigns.

## **EXHIBIT D**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### ORDER AUTHORIZING THE
### EMPLOYMENT AND RETENTION OF M3 ADVISORY PARTNERS, LP AS
### FINANCIAL ADVISORS FOR THE DEBTORS AND DEBTORS-IN-POSSESSION

Upon the Application[2] of Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession in the above-captioned jointly-administered cases (collectively, the "Debtors" and these cases, collectively, the "Chapter 11 Cases"), for entry of an order (this "Order") authorizing the Debtors to employ and retain, pursuant to sections 327(a) and 328 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for Southern District of New York (the "Local Rules"), M3 Advisory Partners, LP ("M3 Partners") as their financial advisors on the terms set forth in the engagement letter (the "Engagement Letter") annexed to the Application as Exhibit C; and upon consideration of the *Declaration of  Kunal S.*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application, as may be applicable.

*Kamlani in Support of the Application Authorizing Employment and Retention of M3 Advisory Partners, LP as Financial advisors for the Debtors and Debtors-in-Possession Pursuant to Sections 327(a) and 328 of the Bankruptcy Code* ("Kamlani Declaration"), a copy of which was attached to the Application as Exhibit A; and the Court being satisfied based on the representations in the Application and the Kamlani Declaration that M3 Partners does not have a conflict of interest with the Debtors or their estates in connection with the matters for which M3 Partners is to be retained by the Debtors, as required by section 327(a) of the Bankruptcy Code; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and the Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application was appropriate and no other notice need be provided; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Application is GRANTED to the extent set forth herein.

2.      Pursuant to sections 327(a) and 328 of the Bankruptcy Code, the Debtors and its counsel are hereby authorized to employ and retain M3 Partners as financial advisors in the Chapter 11 Cases on the terms and conditions set forth in the Application, Kamlani Declaration, and Engagement Letter *nunc pro tunc* to March 30, 2023.

3.      M3 Partners is authorized to perform any and all financial advisory services for the Debtors that are necessary or appropriate in connection with the financial advisory services described in the Application and the Engagement Letter.

4.      M3 Partners shall apply for hourly compensation for professional services rendered and reimbursement of expenses incurred, including the fees incurred in relation to the fixed compensation structure discussed herein, in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

5.      Prior to any increases in M3 Partners' rates, M3 Partners shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the United States Trustee and any official committee, which supplemental affidavit shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.  The United States Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and all rates and rate increases are subject to review by the Court.

6.      Notwithstanding any provision in the Application or the Kamlani Declaration to the contrary, all major expenses will be paid by M3 Partners and reimbursed by the Debtors only after approval of a fee application by the Court.

7.      M3 Partners shall use reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

8.      Notwithstanding anything in the Application or M3 Partners' Engagement Letter with the Debtors to the contrary, M3 Partners shall (a) to the extent that M3 Partners uses the services of independent contractors, subcontractors or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, M3 Partners shall pass-through the cost of such Contractors to the Debtors at the same rate that M3 Partners pays the Contractors; (b) seek reimbursement for actual costs only; and (c) ensure that the Contractors are subject to the same conflict checks as required for M3 Partners and (d) shall file with the Court such disclosures required by Bankruptcy Rule 2014.

9.      The terms of the Engagement Letter, including without limitation, the compensation provisions and the indemnification provisions are reasonable terms and conditions of employment and are hereby approved to the extent set forth herein.

10.     In the event that M3 Partners seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in M3 Partners' own applications, both interim and final, and these invoices and time records shall be subject to the Amended Guidelines and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to

whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without

regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

11.     Notwithstanding any provision in the Bankruptcy Rules to the contrary,

(a) the terms of this Order shall be immediately effective and enforceable upon its entry, (b) the

Debtors are not subject to any stay in the implementation, enforcement or realization of the relief

granted in this Order, and (c) the Debtors may, in their discretion and without further delay, take

any action and perform any act authorized under this Order.

12.     Notwithstanding any provision to the contrary in the Application or the

Engagement Letter, the Court shall retain jurisdiction to hear and to determine all matters arising

from or related to implementation of this Order.

13.     To the extent that there may be any inconsistency between the terms of the

Application, the Kamlani Declaration, the Engagement Letter, and this Order, the terms of this

Order shall govern.

Dated: _____, 2023        _____
      White Plains, New York        THE HONORABLE SEAN H. LANE
                                       UNITED STATES BANKRUPTCY JUDGE