**Presentment Date: May 1, 2023 at 2:00 p.m. (Prevailing Eastern Time)**
**Objection Deadline: April 24, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF PRESENTMENT OF DEBTORS' APPLICATION FOR AN ORDER
AUTHORIZING THE EMPLOYMENT AND RETENTION OF
GRANT THORNTON LLP AS TAX SERVICES PROVIDER FOR THE
DEBTORS AND DEBTORS-IN-POSSESSION *NUNC PRO TUNC* TO APRIL 4, 2023**

    **PLEASE TAKE NOTICE** that, on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

    **PLEASE TAKE FURTHER NOTICE** that, on April 17, 2023, the Debtors filed the *Debtors' Application for an Order Authorizing Employment and Retention of Grant Thornton LLP as Tax Services Provider for the Debtors and Debtors-in-Possession* Nunc Pro Tunc *to April 4, 2023* (the "Application").

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that an order, substantially in the form attached to the Application as <u>Exhibit B</u> (the "Proposed Order"), will be presented to the Honorable Sean H. Lane, United States Bankruptcy Judge, for signature on **May 1, 2023 at 2:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (each an "<u>Objection</u>") to the Proposed Order must be made in writing and received in the chambers of the Honorable Sean H. Lane and by the undersigned not later than **4:00 p.m. on April 24, 2023 (the "Objection Deadline").**

**PLEASE TAKE FURTHER NOTICE** that in the event any Objections to the proposed Order are timely filed and served on or before the Objection Deadline as set forth herein, a hearing to consider the Proposed Order and such Objection(s) shall be scheduled by the Bankruptcy Court.

Dated:  April 17, 2023
      New York, New York

*/s/ Jane VanLare*
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING
EMPLOYMENT AND RETENTION OF GRANT THORNTON LLP
AS TAX SERVICES PROVIDER FOR THE DEBTORS AND
DEBTORS-IN-POSSESSION *NUNC PRO TUNC* TO APRIL 4, 2023**

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-

possession in the above-captioned cases (collectively, the "Debtors" and these cases, collectively,

the "Chapter 11 Cases") hereby submit this application (the "Application") for entry of an order,

substantially in the form attached hereto as Exhibit B (the "Proposed Order"), pursuant to sections

327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy

Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification
number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia
Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park
Avenue South, 5th Floor, New York, NY 10003.

Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"): (i) authorizing the employment and retention of Grant Thornton LLP ("Grant Thornton") as tax services provider for the Debtors in the Chapter 11 Cases *nunc pro tunc* to April 4, 2023; and (ii) granting such other and further relief as the Court deems just and proper. In support of this Application, the Debtors rely on (i) the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Application in Compliance with Local Rule 1007-2* (the "Aronzon First Day Declaration") and the *Declaration of Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration" and, together with the Leto Declaration and Aronzon First Day Declaration, the "First Day Declarations")[2], and (ii) the *Declaration of Brian Angstadt in Support of Debtors' Application for an Order Authorizing Employment and Retention of Grant Thornton LLP as Tax Services Provider for the Debtors and Debtors-in-Possession* Nunc Pro Tunc *to April 4, 2023* (the "Angstadt Declaration"), attached to this Application as Exhibit A, and respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory

---

[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the First Day Declarations.

predicates for the relief requested herein are sections 327(a) and 330 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016.

## BACKGROUND

2.       Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

3.       On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b), ECF No. 37.  No trustee or examiner has been appointed in the Chapter 11 Cases.  On February 3, 2023, an official committee of unsecured creditors (the "Committee") was appointed in these cases, ECF No. 55.

4.       Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the Day Declarations.

## RELIEF REQUESTED

5.       By this Application, the Debtors seek entry of an order substantially in the form attached hereto as Exhibit B pursuant to sections 327(a) and 330 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules and Rules 2014-1 and 2016-1 of the Local Rules: (i) authorizing the Debtors to employ and retain Grant Thornton as their tax services provider, *nunc*

3

*pro tunc* to April 4, 2023, and (ii) granting such other and further relief as the Court deems just and proper.

## **BASIS FOR RELIEF**

6.      The Debtors have determined that it will be necessary to engage a tax services provider with knowledge and experience assisting debtors in chapter 11 cases.  Such a tax services provider will enable the Debtors to carry out their duties in the Chapter 11 Cases and assist in the reorganization of the estates.  The Debtors, therefore, propose to retain and employ Grant Thornton in the Chapter 11 Cases.

7.      Bankruptcy Rule 2014(a) requires that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

8.      As required, this Application and the exhibits attached hereto set forth specific facts showing the necessity for the employment, the reasons for selecting Grant Thornton, the professional services to be rendered, the proposed arrangements for compensation and Grant Thornton's connections to parties in interest.

9.      Grant Thornton is the U.S. member of Grant Thornton International Ltd., a global audit, tax and advisory organization of separate and independent network firms providing services in more than 135 countries. Grant Thornton LLP has more than 45 offices in the United States.  The professionals in Grant Thornton's Tax Practice consist of senior tax, accounting and other professionals specializing in tax, financial, business and strategic advice to enterprises,

4

including distressed enterprises. Grant Thornton has significant qualifications, experience and extensive knowledge in the fields of accounting and taxation for large, sophisticated companies, both in and out of chapter 11 bankruptcy. Accordingly, the Debtors have determined that Grant Thornton has the resources and experience necessary to perform tax accounting, tax compliance services and tax advisory services in these Chapter 11 Cases.

10.    Grant Thornton has provided accounting and tax advisory services in numerous large cases in this and other jurisdictions, including: *In re Voyager Digital Hldgs., Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Sept. 30, 2022); *In re Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Apr. 28, 2021); *In re Bouchard Transp. Co., Inc.*, No. 20-34682 (DRJ) (Bankr S.D. Tex. July 26, 2021); *In re Gulfport Energy Corp.*, No. 20-35562 (DRJ) (Bankr. S.D. Tex. Feb. 4, 2021); *In re Stage Stores, Inc.*, No. 20-32564 (DRJ) (Bankr. S.D. Tex. Sept. 25, 2020); *In re Unit Corp.*, No. 20-32740 (DRJ) (Bankr. S.D. Tex. Sept. 11, 2020); *In re LSC Commc'ns, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. Aug. 18, 2020); *In re Akorn, Inc.*, No. 20-11177 (KBO) (Bankr. D. Del. June 23, 2020).

11.    Grant Thornton began having discussions with Holdco regarding various tax matters on February 28, 2023. Grant Thornton's engagement was finalized on April 4, 2023, when Holdco and Grant Thornton executed an engagement letter (the "Engagement Letter") and statement of work for tax structuring services (the "Statement of Work"), which are attached as Exhibit C to this Application.

12.    The Debtors seek to employ and retain Grant Thornton as their tax services provider because of Grant Thornton's expertise and extensive knowledge of federal, state and local tax matters. Grant Thornton is both well qualified and best positioned to provide tax services to the

Debtors in the Chapter 11 Cases in an efficient and timely manner.  Grant Thornton's services fulfill an important need and are not provided by any of the Debtors' other professionals.

13.    The employment of Grant Thornton in accordance with the discounted rates set forth in the Statement of Work, as may be adjusted from time to time, is necessary and essential to enable the Debtors to execute faithfully their duties as debtors and debtors-in-possession and to prosecute these Chapter 11 Cases.  Subject to further order of this Court and consistent with the Statement of Work, Grant Thornton will provide tax services as Grant Thornton and the Debtors shall deem appropriate and feasible to assist management with assessing the tax consequences of the Chapter 11 Cases, including, but not limited to, the following professional services:

(a)    meeting with the Company and/or their service providers to discuss status, questions, recommendations and/ or conclusions;

(b)    reviewing and commenting on bankruptcy documents, draft sales agreements and/ or other transaction related agreements;

(c)    with respect to the tax basis of the balance sheet, (i) calculating the tax basis of assets (except stock in subsidiaries) held by the Debtors and their subsidiaries and (ii) reviewing the allocation of consolidated net operating losses and general business credit carryforwards to the Debtors and their subsidiaries under Treasury Regulation Section 1.1502-21;

(d)    analyzing subsidiary stock basis, including calculating the stock basis of the stock of subsidiaries held by the Debtors under Treasury Regulation Section 1.1502-32;

(e)    analyzing attribute reduction, including calculating the tax attribute reduction under section 108(b) and Treasury Regulation Section 1.1502-28 for the Debtors and their subsidiaries;

(f)    to the extent necessary, (i) calculating the taxable gain (loss) on any sale of assets in connection with the Chapter 11 Cases and (ii) analyzing whether any realized taxable gain (loss) is capital or ordinary in nature for income tax purposes;

(g)    analyzing intercompany transactions, including the effect of Treasury Regulation Section 1.1502-13 on the Chapter 11 Cases, including the effect of intercompany

obligations between the Debtors and their subsidiaries and the members of DCG resulting from the Chapter 11 Cases;

(h)     analyzing the applicability of section 382(l)(5)/(l)(6) related to any ownership changes and, to the extent requested, reviewing any historic section 382 analysis prepared by DCG related to historic ownership shifts occurring prior to the Chapter 11 Cases;

(i)     assessing the availability of alternative transactions and structures (e.g., Bruno's-like transaction, etc.);

(j)     performing state income tax analysis, including analyzing the state income tax treatment related to the Chapter 11 Cases; and

(k)     preparing written technical documentation with conclusions and technical support of such conclusions.

14.     Grant Thornton is willing to act on behalf of the Debtors to render the foregoing professional services.  In addition to the foregoing, Grant Thornton will provide other tax services as may be requested by the Debtors from time to time.  To the extent those requested services are Additional Tax Services (as defined in the Statement of Work), such services will be performed under an addendum to the Statement of Work that confirms the request and includes the facts and issues to be addressed, the deliverable and expected timeline and an estimate of expected hours and fees.

15.     In addition to this Application, the Debtors have filed separate applications to retain, among others: (i) Kroll Restructuring Administration LLC as claims and noticing agent and, separately, as administrative advisor; (ii) Moelis & Company LLC as investment banker; (iii) Alvarez & Marsal North America, LLC as financial advisor; (iv) Morrison Cohen LLP as special counsel on regulatory and enforcement matters; (v) Cleary Gottlieb Steen & Hamilton LLP as main legal counsel; (vi) Kobre & Kim LLP as conflicts counsel; and (vii) M3 Advisory Partners LP as financial advisor.  The Debtors have also filed a motion for the retention of a variety of ordinary course professionals.  Grant Thornton, in conjunction with the Special Committee and

other members of the Debtors' senior management intends to carefully monitor and coordinate the efforts of all professionals retained by the Debtors in the Chapter 11 Cases and will delineate their respective duties so as to prevent duplication of services whenever possible.

16.    Pursuant to the Debtors' request, Grant Thornton has agreed to serve as tax services provider for the Debtors on and after April 4, 2023 with assurances that the Debtors would seek approval of its employment and retention, *nunc pro tunc* to April 4, 2023, so that Grant Thornton may be compensated for its pre-Application services.[3]  The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided in this application, because Grant Thornton has provided and continues to provide valuable services to the Debtors' estates in the interim period.  The Local Rules empower courts in this district to approve *nunc pro tunc* employment, and the Debtors submit that such approval is justified here.

## **GRANT THORNTON'S DISINTERESTEDNESS**

17.    To the best of the Debtors' knowledge, and except as otherwise disclosed in the Angstadt Declaration, Grant Thornton does not hold any claims against the Debtors or any securities issued by the Debtors.

18.    As disclosed in the Angstadt Declaration, Grant Thornton currently provides tax services to certain of the Debtors' creditors and other parties in interest in matters wholly unrelated

---

[3]    In *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, the U.S. Supreme Court rejected a district court's *nunc pro tunc* order that made remand to state court effective as of a previous date, finding that the order could not "creat[e] 'facts' that never occurred" to cure the state court's lack of jurisdiction while the case was removed to federal court. 140 S. Ct. 696, 701 (2020).  This is not relevant to *nunc pro tunc* orders where, as here, the court plainly has jurisdiction over the Chapter 11 Cases as of the Petition Date and looks to exercise its discretion to grant retroactive compensation.  Indeed, courts have continued to routinely approve *nunc pro tunc* employment of estate professionals following *Acevedo*.  *See, e.g.*, Order, *In re Internap Tech. Solutions Inc.*, Case No. 20-22393 (RDD) (Bankr. S.D.N.Y. Apr. 23, 2020), ECF No. 131; Order, *In re The McClatchy Co.*, Case No. 20-10418 (MEW) (Bankr. S.D.N.Y. Mar. 26, 2020), ECF No. 232; Order, *In re Fairway Group Holdings Corp.*, Case No. 20-10161 (JLG) (Bankr. S.D.N.Y. Mar. 4, 2020), ECF No. 251.  To the extent that this Court or others find that *Acevedo* impacts this Court's ability to grant *nunc pro tunc* relief, this Court would nonetheless retain power to exercise its equitable discretion and award compensation prior to the date of entry of the order.  *See In re Benitez*, No. 8-19-70230 (REG), 2020 WL 1272258, at *2 (Bankr. E.D.N.Y. Mar. 13, 2020); *see also In re Miller*, 620 B.R. 637, 641–43 (Bankr. E.D. Cal. Oct. 13, 2020).

to these proceedings. Grant Thornton has fully informed the Debtors of its ongoing representation of such entities, and the Debtors have consented to Grant Thornton's continued representation of these entities in matters unrelated to these proceedings. The Debtors believe that Grant Thornton's current and future representation of these entities will not in any way adversely affect Grant Thornton's representation of the Debtors.

19.     To the best of the Debtors' knowledge, except as otherwise disclosed in the Angstadt Declaration, Grant Thornton does not hold or represent any interest adverse to the Debtors or their estates, Grant Thornton is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and Grant Thornton's employment and retention is necessary and in the best interests of the Debtors and their estates.

20.     Grant Thornton will periodically review its files during the pendency of the Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Grant Thornton will use reasonable efforts to identify such further developments and will file a supplemental declaration, in conformity with Bankruptcy Rule 2014(a).

## PROFESSIONAL COMPENSATION

21.     The Debtors understand and have agreed that Grant Thornton intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of the Court and the terms of Grant Thornton's engagement with the Debtors. Subject to such provisions and Court orders, compensation will be payable to Grant Thornton on an hourly basis for services rendered, plus reimbursement of actual and necessary expenses incurred by Grant Thornton, in accordance with the terms and conditions of this engagement. For the purposes of

this engagement, Grant Thornton's discounted hourly rates for timekeepers, subject to periodic adjustments to reflect economic and other conditions, are:

| Position | Discounted Hourly Rate |
|---|---|
| Partner | $980 |
| Managing Director | $935 |
| Senior Manager | $860 |
| Manager | $750 |
| Senior Associate | $600 |
| Associate | $370 |
| Intern | $95 |

22.    Grant Thornton will also seek reimbursement for reasonable, documented, and out-of-pocket expenses incurred, including, but not limited to, overtime meals, lodging, travel, and other similar out-of-pocket expenses incurred in providing professional services. Expenses charged to the Debtors may also include the reasonable legal expenses for counsel, time, and expenses associated with administering the engagement and bankruptcy court appearances. The Debtors have been informed that Grant Thornton believes it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all of its clients.  The Debtors have agreed that Grant Thornton will charge the Debtors for these expenses in a manner and at rates consistent with charges generally made to Grant Thornton's other clients and in accordance with the terms and conditions of Grant Thornton's engagement. The Debtors respectfully submit that Grant Thornton's rates and policies are reasonable.

23.    To the best of the Debtors' knowledge, information and belief, the Debtors did not make any payments to Grant Thornton during the ninety-day period prior to the Petition Date, and Grant Thornton is not a prepetition creditor of the Debtors.

24.    To the best of the Debtors' knowledge, information and belief, (i) no promises have been received by either Grant Thornton or any partner, principal, managing director, associate or other employee thereof as to compensation or payment in connection with the Chapter 11 Cases

10

other than in accordance with the provisions of the Bankruptcy Code and (ii) Grant Thornton has

no agreement with any other entity to share with such entity any compensation received by Grant

Thornton in connection with these Chapter 11 Cases.

## **INDEMNIFICATION**

25.    As part of the overall compensation payable to Grant Thornton under the terms of

the Engagement Letter, the Debtors have agreed to certain indemnification obligations as set

forth in Section 3 of the Engagement Letter (the "Indemnification Provisions").

26.    Grant Thornton has agreed to certain modifications to the Indemnification

Provisions set forth in the Engagement Letter, which are reflected in the Proposed Order and

summarized as follows:

(a)    All requests by the Grant Thornton Firm (as defined in the Engagement
Letter) for payment of indemnity pursuant to the Engagement Letter shall be made by
means of an application (interim or final as the case may be) and shall be subject to
review by the Court to ensure payment of such indemnity conforms to the terms of the
Engagement Letter and is reasonable based upon the circumstances of the litigation or
settlement in respect of which indemnity is sought; provided, however, that in no event
shall the Grant Thornton Firm be indemnified in the case of its own bad faith, self-
dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

(b)    In the event that the Grant Thornton Firm seeks reimbursement from the
Debtors for reasonable attorneys' fees in connection with a request by the Grant Thornton
Firm for payment of indemnity pursuant to the Engagement Letter, as modified by this
Order, the invoices and supporting time records from such attorneys shall be included in
Grant Thornton's own application (both interim and final) and such invoices and time
records shall be subject to the approval of the Court under the standards of sections 330
and 331 of the Bankruptcy Code without regard to whether such attorney has been
retained under section 327 of the Bankruptcy Code and without regard to whether such
attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

27.    The terms and conditions of Grant Thornton's engagement, including the

Indemnification Provisions contained in the Engagement Letter, were negotiated by the parties at

arm's-length and in good faith. The Debtors understand, and Grant Thornton believes, that the

Indemnification Provisions, as modified by the Proposed Order, are appropriate and reasonable for the types of engagements covered by the Engagement Letter, both in the Chapter 11 context and outside the Chapter 11 context, and are in the best interest of the Debtors, their estates and their stakeholders. *See, e.g.*, *In re Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Apr. 28, 2021). Accordingly, the Debtors request that the Court approve the Indemnification Provisions as modified by the Proposed Order.

## NOTICE

28.     Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iii) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) counsel to the Committee; and (vii) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

29.     No prior application for the relief requested herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as Exhibit B, and (b) grant such other and further relief as is just and proper.

Dated:     April 17, 2023         */s/ Jane VanLare*
               New York, New York      Sean A. O'Neal
                                         Jane VanLare
                                           CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                           One Liberty Plaza
                                           New York, New York 10006
                                           Telephone: (212) 225-2000
                                           Facsimile: (212) 225-3999

                                           *Counsel to the Debtors and Debtors-in-Possession*

## **EXHIBIT A**

**Angstadt Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

### DECLARATION OF BRIAN ANGSTADT IN SUPPORT OF DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF GRANT THORNTON LLP AS TAX SERVICES PROVIDER FOR THE DEBTORS AND DEBTORS-IN-POSSESSION *NUNC PRO TUNC* TO APRIL 4, 2023

I, Brian Angstadt, do hereby declare as follows:

1.      I am a Managing Director of the firm Grant Thornton LLP ("Grant Thornton"),

which maintains an office for tax services at, among other places, 171 N. Clark St., Suite 200,

Chicago IL 60601.

2.      I submit this declaration (the "Declaration") in support of the application (the

"Application") of the above-captioned debtors (collectively, the "Debtors") for an order approving

the retention of Grant Thornton as tax services provider in the above-captioned cases (the "Chapter

11 Cases"),[2] *nunc pro tunc* to April 4, 2023, at discounted hourly rates in effect from time to time

and in accordance with its normal reimbursement policies, in compliance with and to provide

disclosures pursuant to sections 327, 328, 329 and 504 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2014(a), 2016(b) and 5002 of the Federal Rules of Bankruptcy

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.
[2]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the First Day Declarations, as applicable.

Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules

for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

To the extent that any information disclosed herein requires amendment or modification upon

Grant Thornton's completion of further analysis or as additional information becomes available to

it, a supplemental declaration will be submitted to this Court.

3.      Grant Thornton is the U.S. member of Grant Thornton International Ltd., a global

audit, tax and advisory organization of separate and independent network firms providing

services in more than 135 countries. Grant Thornton LLP has more than 45 offices in the United

States.  The professionals in Grant Thornton's Tax Practice consist of senior tax, accounting and

other professionals specializing in tax, financial, business and strategic advice to enterprises,

including distressed enterprises. Grant Thornton has significant qualifications, experience and

extensive knowledge in the fields of accounting and taxation for large, sophisticated companies,

both in and out of chapter 11 bankruptcy. Accordingly, the Debtors have determined that Grant

Thornton has the resources and experience necessary to perform tax accounting, tax compliance

services and tax advisory services in these Chapter 11 Cases.

4.      Grant Thornton has provided accounting and tax advisory services in numerous

large cases in this and other jurisdictions, including: *In re Voyager Digital Hldgs., Inc.*, No. 22-

10943 (MEW) (Bankr. S.D.N.Y. Sept. 30, 2022); *In re Purdue Pharma L.P.*, No. 19-23649 (RDD)

(Bankr. S.D.N.Y. Apr. 28, 2021); *In re Bouchard Transp. Co., Inc.*, No. 20-34682 (DRJ) (Bankr

S.D. Tex. July 26, 2021); *In re Gulfport Energy Corp.*, No. 20-35562 (DRJ) (Bankr. S.D. Tex.

Feb. 4, 2021); *In re Stage Stores, Inc.*, No. 20-32564 (DRJ) (Bankr. S.D. Tex. Sept. 25, 2020); *In

re Unit Corp.*, No. 20-32740 (DRJ) (Bankr. S.D. Tex. Sept. 11, 2020); *In re LSC Commc'ns, Inc.*,

No. 20-10950 (SHL) (Bankr. S.D.N.Y. Aug. 18, 2020); *In re Akorn, Inc.*, No. 20-11177 (KBO) (Bankr. D. Del. June 23, 2020).

5.      Grant Thornton began having discussions with Holdco regarding various tax matters on February 28, 2023.    Grant Thornton's engagement was finalized on April 4, 2023, when Holdco and Grant Thornton executed an engagement letter (the "Engagement Letter") and statement of work for tax structuring services (the "Statement of Work"), which are attached as Exhibit C to the Application.

6.      To the best of Grant Thornton's information and belief, the Debtors did not make any payments to Grant Thornton during the ninety-day period prior to the Petition Date, and Grant Thornton is not a prepetition creditor of the Debtors.

## DISCLOSURES OF GRANT THORNTON

7.      In preparing this Declaration, in order to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules regarding the retention of professionals by a debtor, Grant Thornton received and reviewed a list of parties-in-interest from the Debtors (the "Potential Parties-in-Interest List") and has run a conflict check on the individuals and entities on the list attached hereto as Exhibit I to determine which persons or entities, if any, Grant Thornton currently provides tax services to  ("Current Clients") or has provided tax services to in the past two years ("Former Clients").  A list of Current or Former Tax Clients matching those entities on the Potential Parties-in-Interest List is attached hereto as Exhibit II.

8.      Grant Thornton's review consisted of queries of internal databases and lists containing names of individuals and entities that are present or recent and former clients including vendors of Grant Thornton in order to identify potential relationships. These databases and lists include vendor activity, engagement activity or potential engagement activity dating back three years to present. An international relationship check was sent to Grant Thornton International Ltd.

member firms in which international entities were identified. An internal database search was requested in order for them to report their existing and past relationships. On an ongoing basis, Grant Thornton will conduct further reviews of its professional contacts as it becomes aware of new parties of interest, as is stated below.

9.      To the best of my knowledge, Grant Thornton: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors or their related parties. To the extent that Grant Thornton discovers any new relevant facts or relationships bearing on the matters described herein during the period of Grant Thornton's retention, Grant Thornton will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

10.      Grant Thornton has in the past been retained by, and presently provides and likely in the future will provide services for, certain creditors of the Debtors, other parties-in-interest and their respective attorneys and accountants in matters unrelated to such parties' claims against the Debtors or interests in these chapter 11 cases.  Grant Thornton currently performs, has previously performed or may have performed such services for the entities listed in Exhibit II; however, such services, to the extent performed by Grant Thornton, are unrelated to the Debtors or their chapter 11 cases.

11.      Grant Thornton is the United States member firm of Grant Thornton International, Ltd., a United Kingdom cooperative of member firms, each a separate legal entity, located worldwide. Only Grant Thornton is being retained in these matters. Grant Thornton cannot assure that an engagement will not be accepted by a foreign member firm of Grant Thornton International for another party that may bear upon Grant Thornton's engagement by the Debtors. However, to the extent Grant Thornton is aware of such engagement and believes such engagement may bear

upon Grant Thornton's engagement by the Debtors, Grant Thornton will file a supplemental declaration with the Bankruptcy Court.

12.    Because the Debtors operate an integrated business, certain interrelationships exist among the Debtors.  For example, the Debtors share certain services, including legal services. Nevertheless, the Debtors have advised Grant Thornton that these relationships do not pose any conflicts of interest because of the general unity of interest among the Debtors.  Insofar as I have been able to ascertain, I know of no conflicts of interest that would preclude Grant Thornton from providing tax services to all of the Debtors in the Chapter 11 Cases.

13.    To the best of my knowledge, there is no other connection or interest (as such terms are used in Section 101(14) of the Bankruptcy Code and Bankruptcy Rule 2014(a)) between  Grant Thornton and the United States Trustee for the Southern District of New York or any person employed by the Office of the United States Trustee for the Southern District of New York.

14.    The proposed engagement of Grant Thornton is not prohibited by Bankruptcy Rule 5002.  Despite the efforts described herein to identify and disclose Grant Thornton's connections with the parties in interest in these Chapter 11 Cases, because of the Debtors' numerous relationships, Grant Thornton is unable to state with absolute certainty that every client relationship or other connection has been disclosed.  If any new material relevant facts or relationships are discovered or arise, Grant Thornton will file a supplemental disclosure detailing the same with the Court.

15.    Grant Thornton believes that it can adequately provide tax services to the Debtors. Grant Thornton has not provided, and will not provide, any professional services to any creditor, interest holder or other party in interest in connection with their respective dealings with the Debtors or these Chapter 11 Cases.  Grant Thornton has fully informed the Debtors of its ongoing provision of services for the entities identified in <u>Exhibit II</u> and the Debtors have agreed both to

Grant Thornton's continued provision of services for these entities in matters unrelated to these proceedings and to Grant Thornton's representation of the Debtors in the Chapter 11 Cases.  In the event that any adversary proceeding is required to be commenced as to any of the entities identified in <u>Exhibit II</u>, or any other then active client of Grant Thornton, another tax services provider will handle such matters unless appropriate waivers are obtained.

### **<u>GRANT THORNTON'S  RATES AND BILLING PRACTICES</u>**

16.     Grant Thornton intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of the Court and the terms of Grant Thornton's engagement with the Debtors.  Subject to such provisions and Court orders, compensation will be payable to Grant Thornton on an hourly basis for services rendered, plus reimbursement of actual and necessary expenses incurred by Grant Thornton, in accordance with the terms and conditions of this engagement.   For the purposes of this engagement, Grant Thornton's discounted hourly rates for timekeepers, subject to periodic adjustments to reflect economic and other conditions, are:

| Position | Discounted Hourly Rate |
|----------|------------------------|
| Partner | $980 |
| Managing Director | $935 |
| Senior Manager | $860 |
| Manager | $750 |
| Senior Associate | $600 |
| Associate | $370 |
| Intern | $95 |

17.     Grant Thornton will also seek reimbursement for reasonable, documented, and out-of-pocket expenses incurred, including, but not limited to, overtime meals, lodging, travel, and other similar out-of-pocket expenses incurred in providing professional services. Expenses charged to the Debtors may also include the reasonable legal expenses for counsel, time, and

expenses associated with administering the engagement and bankruptcy court appearances. Grant Thornton believes it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.  The Debtors have agreed that Grant Thornton will charge the Debtors for these expenses in a manner and at rates consistent with charges generally made to Grant Thornton's other clients and in accordance with the terms and conditions of Grant Thornton's engagement.  I believe that the terms and conditions in the Engagement Letter are in fact reasonable, consistent with the market for providers of similar services and designed to compensate Grant Thornton fairly for its work.

18.     Grant Thornton will seek approval of payment of the above described compensation and expenses upon its filing of applications for allowance of interim or final compensation pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of the Court and in accordance with the terms and conditions Grant Thornton's engagement.

19.     No promises have been received by either Grant Thornton or any partner, principal, managing director, associate or other employee thereof as to compensation or payment in connection with the Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code.

20.     Grant Thornton has no agreement with any other entity to share with such entity any compensation received by Grant Thornton in connection with these Chapter 11 Cases.

### COORDINATION WITH OTHER PROFESSIONALS FOR THE DEBTORS

21.     Grant Thornton is aware that the Debtors have filed separate applications to retain, among others:  (i) Kroll Restructuring Administration LLC as claims and noticing agent and, separately, as administrative advisor; (ii) Moelis & Company LLC as investment banker; (iii) Alvarez & Marsal North America, LLC as financial advisor; (iv) Morrison Cohen LLP as special

counsel on regulatory and enforcement matters; (v) Cleary Gottlieb Steen & Hamilton LLP as main legal counsel; (vi) Kobre & Kim LLP as conflicts counsel; and (vii) M3 Advisory Partners LP as financial advisor. The Debtors have also filed a motion for the retention of a variety of ordinary course professionals, and the Debtors anticipate filing additional retention applications as the Chapter 11 Cases progress. Grant Thornton, the Special Committee and other members of the Debtors' senior management intend to carefully monitor and coordinate the efforts of all professionals retained by the Debtors in these Chapter 11 Cases and will delineate their respective duties so as to prevent duplication of services whenever possible.

*[The remainder of the page is intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 17, 2023
        New York, New York

_____
Brian Angstadt
Managing Director
Grant Thornton LLP

## Exhibit I

### Potential Parties-in-Interest

**Debtor Entities**
Genesis Asia Pacific PTE. LTD.
Genesis Global Capital, LLC
Genesis Global Holdco, LLC

**Non-Debtor Affiliates**
Genesis Asia (Hong Kong) Limited
Genesis Bermuda Holdco Limited
Genesis Custody Limited
Genesis Global Assets, LLC
Genesis Global Labs, LLC
Genesis Global Markets Limited
Genesis Global Trading, Inc.
Genesis UK Holdco Limited
GGA International Limited (BVI)
GGC International, Limited (BVI)

**Major Equity Holders**
Digital Currency Group, Inc.

**Major Equity Holders' Counsel**
Weil, Gotshal, and Manges LLP

**Senior Management**
Agnes Chen Meiyun
Andrew Sullivan
Brian Bulthius
Diana Kim

**Current Directors**
A. Derar Islim
Alice Chan
Arianna Pretto-Sakmann
Lip Chih Ng
Mark Murphy
Paul Aronzon
Tom Conheeney

**Debtors' Restructuring Professionals**
Cleary Gottlieb Steen & Hamilton LLP
Alvarez & Marsal Holdings, LLC
Kobre & Kim LLP
Kroll Restructuring Administration LLC

Moelis & Company

**Insurers**
Axis Capital
Forge Insurance Company
Lloyd's of London
Starr Insurance & Reinsurance Limited
Woodruff Sawyer

**Bankruptcy Court for the Southern District of New York**
Christine Azzaro
Hon. Cecelia G. Morris
Hon. David S. Jones
Hon. James L. Garrity, Jr.
Hon. John P. Mastando
Hon. Lisa G. Beckerman
Hon. Martin Glenn
Hon. Michael E. Wiles
Hon. Philip Bentley
Hon. Sean H. Lane
Jaqueline Tran
Sarah Rosenthal

**U.S. Trustee Office, Region 2, Southern District of New York, Manhattan Division**
Abriano, Victor
Allen, Joseph
Arbeit, Susan
Bentley, Phillip
Black, Christine
Bruh, Mark
Cornell, Shara
Gannone, James
Harrington, William K.
Higgins, Benjamin J.
Higgins, David S.
Joseph, Nadkarni
Leonhard, Alicia
Masumoto, Brian S.
Mendoza, Ercilia A.
Moroney, Mary V.
Morrissey, Richard C.

Ogunleye, Alaba
Penpraze, Lisa
Riffkin, Linda A.
Rodriguez, Ilusion
Schmitt, Kathleen
Schwartz, Andrea B.
Schwartzberg, Paul K.
Scott, Shannon
Sharp, Sylvester
Tiantian, Tara
Van Baalen, Guy A.
Velez-Rivera, Andy
Vescovacci, Madeleine
Wells, Annie
Zipes, Greg M.

**Taxing Authorities**
Monetary Authority of Singapore

**Debtors' Banks & Financial Services Providers**
Anchorage Lending CA, LLC
Banking Circle
Continental Stock Transfer & Trust
Houlihan Lokey
Industrial and Commercial Bank of China
Interactive Brokers
JPMorgan Chase Bank, NA
JPMorgan Chase Bank, NA Singapore
Kraken
Tradestation

**Significant Vendors**
250 Park LLC
ACRION GROUP INC/Dmitri Gofshtein
Agon Litigation
Amazon Web Services
American Arbitration Association
Anchorage Digital Bank, National Association
Andy McMullen
BitGo, Inc.
Bloomberg LP
CAPITEQ PTE. LTD.
CDW Direct LLC

Chicago Mercantile Exchange Inc NEED PO
CJD Technologies
CloudFlare, Inc.
CMS Cameron McKenna Nabarro Olswang LLP
Coinbase Custody Trust
Compliancy Services
Corver Roos
Cyberfort Ltd
Dashlane USA Inc
Davis Polk & Wardwell LLP
DCG Real Estate Management LLC
Donnelley Financial LLC
Driven
Ernst & Young LLP
Fireblocks Inc.
Friedman LLP
GitLab Inc
Global Fund Media Limited
Goodwin Procter LLP
Gowling WLG (Canada) LLP
Grab Pte. Ltd.
Halborn Inc.
IBM Corporation
I-Net Technologies
Inland Revenue Authority Of Singapore
Intelliware Development Inc
ISS Facility Services Private Limited
JAMS, Inc.
Kleinberg Kaplan Wolff & Cohen P.C.
Kyte Broking Limited
Levin Group Ltd
Mana Holdings Ltd
Managed Funds Association
Massive Computing, Inc
Meitar Law Offices
Milken Institute
Mintz Levin Cohn Ferris Glovsky and Popeo P.C.
Mitchell Martin
Moore & Van Allen PLLC
Mount Studio Pte Ltd
Murphy & Mcgonigle P.C.
Nakul Verma
Numerix LLC

Office Secretaries Pte Ltd.
Okta Inc
One Raffles Quay Pte Ltd
One11 Racing LLC
OnStream LLC
Opswat, Inc.
Opus Recruitment Solutions Ltd
Ordinary Folk
Orrick, Herrington & Sutcliffe, LLP
Papaya Global, Inc.
Perkins Coie LLP
Phaidon International Inc
Pico Quantitative Trading
Private Chefs of Atlanta
Pythian Services, Inc.
Reed Smith Pte. Ltd
Richards Layton & Finger
Roman Mashtalyar
SALT Venture Group, LLC
Savills (Singapore) PTE LTD
Shearman & Sterling LLP
Singtel (Singapore Telecommunications
Limited)
Snowflake Inc.
Spire Search Partners

Stop Pest Control Of NY, INC.
STORM2 PTE LTD
Stott and May
Structure Works
T2 CONSULTING, LLC
The Furniture X-Change
The TIE, Inc
Unispace Of Boston, LLC
United Corporate Services Inc
VIP Sports Marketing, Inc.
Wolters Kluwer financial Services Inc.
Woodruff Sawyer
Xenetix Pte Ltd

**Litigation Counterparties**
[LIST ON FILE]

**Top 50 Creditors**
[LIST ON FILE]

**Potential M&A Counterparties**
[LIST ON FILE]

**<u>Exhibit II</u>**

**Tax Clients**

As described in the Application, Grant Thornton has provided tax services to the Debtors with respect to their Chapter 11 Cases.

Grant Thornton provides, or has provided, tax services to the following entities (or their affiliates) on matters unrelated to the Debtors.  For the avoidance of doubt, Grant Thornton has not and will not provide tax services to any such entities (or their affiliates) in matters adverse to the Debtors or the Chapter 11 Cases.

**<u>Debtors' Banks & Financial Services Providers</u>**
TradeStation

**<u>Top 50 Creditors</u>**
[ON FILE]

**<u>EXHIBIT B</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
**GRANT THORNTON LLP AS TAX SERVICES PROVIDER FOR THE DEBTORS**
**AND DEBTORS-IN-POSSESSION *NUNC PRO TUNC* TO APRIL 4, 2023**

Upon the application, by notice of presentment dated April 17, 2023 (the "Application"),[2] of Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to employ and retain, pursuant to sections 327(a) and 330 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for Southern District of New York (the "Local Rules"), Grant Thornton LLP ("Grant Thornton") as their tax services provider; and upon consideration of the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Application in Compliance with Local Rule 1007-2* (the "Aronzon First Day Declaration") and the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

1007-2 (the "Islim Declaration" and, together with the Leto Declaration and Aronzon Declaration, the "First Day Declarations"), and the *Declaration of Brian Angstadt in Support of Debtors' Application for an Order Authorizing Employment and Retention of Grant Thornton LLP as Tax Services Provider for the Debtors and Debtors-in-Possession* Nunc Pro Tunc *to April 4, 2023* (the "Angstadt Declaration"), attached to the Application as Exhibit A; and the Court being satisfied based on the representations in the Application and Angstadt Declaration that Grant Thornton is "disinterested" as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and holds no interest adverse to the Debtors or their estates in connection with the matters for which Grant Thornton is to be retained by the Debtors, as required by section 327(a) of the Bankruptcy Code; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and the Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application was appropriate and no other notice need be provided; and there being no objections to the requested relief and no hearing being required; and the Court having reviewed the Application and having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Application is GRANTED to the extent set forth herein.

2.      The Debtors are hereby authorized to employ and retain Grant Thornton as tax services provider in the Chapter 11 Cases on the terms and conditions set forth in the Application and the Angstadt Declaration, as modified by this Order, *nunc pro tunc* to April 4, 2023.

3.      Grant Thornton is authorized to perform any and all tax services for the Debtors that are necessary or appropriate in connection with the tax services described in the Application.

4.      Grant Thornton shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' Chapter 11 Cases in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court.

5.      Prior to any increases in Grant Thornton's rates for any professional providing services in these Chapter 11 Cases, Grant Thornton shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the U.S. Trustee and counsel to the Committee.  The supplemental affidavit shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether Grant Thornton's client has consented to the rate increase.  All parties in interest retain the right to object to any rate increase on any grounds.

6.      The Indemnification Provisions in the Engagement Letter are hereby modified and restated in their entirety as follows:

(a)      All requests by the Grant Thornton Firm (as defined in the Engagement Letter) for payment of indemnity pursuant to the Engagement Letter

3

shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall the Grant Thornton Firm be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

(b)    In the event that the Grant Thornton Firm seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by the Grant Thornton Firm for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Grant Thornton's own application (both interim and final) and such invoices and time records shall be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

7.    Grant Thornton shall use its reasonable best efforts to avoid any unnecessary duplication of services provided by any of the other retained professionals in these Chapter 11 Cases.

8.    Notwithstanding anything in the Application or the Engagement Letter to the contrary, to the extent Grant Thornton uses the services of any independent contractors, subcontractors or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") retained in relation to these Chapter 11 Cases, Grant Thornton shall (i) pass-through the cost of services from such Contractors at the same rate that Grant Thornton pays the Contractors; (ii) seek reimbursement for actual costs incurred only; (iii) ensure that the Contractors are subject to the same conflict checks as required for Grant Thornton; and (iv) file with the Court such disclosures as required by Bankruptcy Rule 2014.

9.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the

4

Debtors are not subject to any stay in the implementation, enforcement or realization of the relief

granted in this Order and (iii) the Debtors may, in their discretion and without further delay, take

any action and perform any act authorized under this Order.

10.     If there is any inconsistency between the terms of this Order, the

Application, any engagement letter and the supporting declarations, the terms of this Order shall

govern.

11.     This Court shall retain exclusive jurisdiction with respect to all matters

arising from or related to the implementation, interpretation or enforcement of this Order.


Dated:     _____, 2023
        White Plains, New York

                          _____
                          The Honorable Sean H. Lane
                          United States Bankruptcy Judge

## <u>EXHIBIT C</u>

**Engagement Letter & Statement of Work**



**GRANT THORNTON LLP**

GRANT THORNTON TOWER
171 N. CLARK ST. SUITE 200
CHICAGO, IL
60601-3370
**D**   312 856 0200
**F**   1 312 602 8099
**S**   linkd.in/grantthorntonus
       twitter.com/grantthorntonus

April 4, 2023

Alice Chan
Genesis Global Holdco, LLC
250 Park Avenue, Fifth Floor
New York, NY 10003

 Dear Alice:

Grant Thornton LLP ("Grant Thornton") is pleased to provide tax services (the "Services") to Genesis Global Holdco, LLC and affiliates ("Client"). The purpose of this letter, Attachment A, and any related Statement(s) of Work (collectively, the "Agreement"), as defined below, is to confirm the scope and terms of the engagement.

The Agreement is intended to remain in effect indefinitely from the date of this letter (the "Effective Date"), unless terminated or modified in accordance with Attachment A.  It is structured to facilitate serving Client's current and future tax services needs by allowing multiple tax services to be provided under this Agreement through the execution of additional Statements of Work.

## Providing the services

The Services Grant Thornton provides to Client under this Agreement typically will be set forth in distinct Statements of Work signed by Grant Thornton and Client or Client's authorized representatives, specifying matters including scope, deliverables, timing, fees and payment terms. From time to time in the course of the relationship Grant Thornton may perform services Client explicitly requests without a Statement of Work. This Agreement will cover all services rendered whether the parties execute a Statement of Work. Such services will be billed at Grant Thornton's standard hourly rates as appropriate or as otherwise agreed.

Attachment A is an important part of this Agreement; please read it carefully.

If Client fails to meet any undisputed payment obligation under this Agreement, Grant Thornton may immediately suspend performance of the Services.  If we elect to suspend performance due to non-payment, the Services will not be resumed until Client's account is paid as agreed, including the payment of any retainer that may be required for continuing services.

"Grant Thornton" refers to Grant Thornton LLP, the U.S. member firm of Grant Thornton International Ltd (GTIL), and/or refers to the brand under which the GTIL member firms provide audit, tax and advisory services to their clients, as the context requires. GTIL and each of its member firms are separate legal entities and are not a worldwide partnership. GTIL does not provide services to clients. Services are delivered by the member firms in their respective countries. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. In the United States, visit GT.COM for details.



## Grant Thornton's professional responsibilities

The Services will be performed in accordance with the American Institute of Certified Public Accountants' Statements on Standards for Tax Services and other applicable professional standards, and applicable federal and state laws and regulations.

Professional and regulatory standards require Grant Thornton to secure Client's consent prior to providing any Client information to third parties, including Client's request to allow workpaper access to third parties. Grant Thornton will secure Client's written consent before sharing information with any third-party.

Upon Client's request, we will return documents provided to Grant Thornton as well as provide copies of other Client records to the extent required by applicable professional standards.  Client is solely responsible for maintaining its books and records, including retaining copies of filed tax returns, and should not rely on Grant Thornton as a record-keeper.

Generally, the Services will be based upon information furnished by Client, and Grant Thornton will not evaluate nor have any responsibility to verify independently the accuracy, completeness or sufficiency of any such information. However, circumstances may arise where Grant Thornton, in its professional judgment, determines that additional fact gathering and due diligence is required.

Federal and State laws and professional standards impose significant responsibilities on tax return preparers, including non-signing preparers who provide tax advice. Grant Thornton prepares tax returns and/or provides tax advice consistent with these professional responsibilities. Grant Thornton's professional responsibilities may include communicating with Client about differences between standards applicable to tax return preparers and penalty provisions that may be imposed on a taxpayer regarding a tax position. Grant Thornton may not sign a tax return or provide tax advice unless a position is supported by sufficient authority or is appropriately disclosed.

The Internal Revenue Code and Treasury Regulations require taxpayers to disclose certain types of transactions, known as reportable transactions, for which failure to disclose may result in the imposition of substantial penalties. For tax return preparation engagements, a completed and signed Reportable Transactions Questionnaire, and Client's cooperation in regard to any follow-up requests for information, are required prior to processing any tax returns Grant Thornton may be engaged to prepare.

Unless expressly stated otherwise in a Statement of Work, any written advice provided by Grant Thornton is limited to the matters and potential tax consequences specifically addressed therein, and not intended or written as advice on the application or potential application of any penalties that may be imposed under any federal, state, or foreign statute or regulation in any manner.

## Term

This Agreement shall remain in full force and effect in accordance with its terms and conditions and shall constitute legal, valid, binding, and enforceable



obligations of both Grant Thornton and Client until terminated by either party in accordance with the termination provision set forth in Attachment A. Because applicable professional standards, law, and regulations may change in the future, Grant Thornton reserves the right to amend this Agreement upon appropriate notice and consent of Client.

## Other matters

Please confirm acceptance of this Agreement by signing this letter below, signing the enclosed Statement(s) of Work, and returning the complete signed Agreement to Grant Thornton. We look forward to the opportunity to serve you.

Sincerely,


**GRANT THORNTON LLP**

Date:    04-04-23

Brian Angstadt, Managing Director



**Genesis Global Holdco, LLC and Affiliates**


DocuSigned by:

*Alice Chan*

F21A6C2431F6488...

Alice Chan, CFO

Date:    4/13/2023  |  14:58:44  EDT



# ATTACHMENT A - STANDARD GRANT THORNTON LLP ENGAGEMENT TERMS

This Attachment A – Standard Grant Thornton LLP Engagement Terms (this "<u>Attachment A</u>") is incorporated into and a part of the attached Engagement Letter by and between Grant Thornton LLP ("<u>Grant Thornton</u>") and Genesis Global Holdco, LLC ("<u>Client</u>").  Any Statement of Work (a "<u>SOW</u>") attached hereto or referencing this Attachment A is incorporated into and subject to the terms and conditions of this Attachment A.  The Engagement Letter, each Statement of Work, and this Attachment A are collectively referred to as the "<u>Agreement</u>".  Any capitalized terms in this Attachment A that are not defined shall have the meanings set forth in the Engagement Letter.

**1.**    **Standards of Performance**. Grant Thornton warrants that it will perform the services described in each SOW (the "<u>Services</u>") and provide any reports, information or other documents (the "<u>Deliverables</u>") specified in each SOW in substantial conformity with all applicable professional standards and the terms and conditions expressly set forth in the Agreement.  Accordingly, Grant Thornton's Services and the Deliverables shall be evaluated solely on Grant Thornton's substantial conformance with such terms and conditions, professional standards expressly set forth in the SOW, and applicable law. This warranty is in lieu of, and Grant Thornton expressly disclaims, all other warranties, express, implied, or otherwise, including without limitation, any implied warranties of merchantability or fitness for a particular purpose. Grant Thornton cannot and does not warrant computer hardware, software, or services provided by other parties.

**2.**    **Management Responsibilities**. Grant Thornton assumes no management responsibilities for Client. Accordingly, Client agrees to perform all management responsibilities and oversee the Services by designating an individual, preferably within senior management, who possesses suitable skill, knowledge, and experience, to evaluate the adequacy and results of the Services performed and accept responsibility for the results of the Services.

Because Grant Thornton cannot assume management responsibilities when providing Services, Client agrees that its management, including its designated representative, will make an informed judgment on the results of the Services and be responsible for making the significant judgments and decisions that are the responsibility of management. In addition, Client agrees to undertake: (a) all management decisions and performance of all management functions, including maintaining all internal books and records; (b) the evaluation of the adequacy and results of the Services and responsibility for such results; and (c) the establishment and maintenance of effective internal controls, including monitoring activities, retaining custody of Client's assets, and controlling Client's premises.

**3.**    **Business Risk Allocations**. The terms of this Section 3 shall apply regardless of the nature of any claim asserted (including but not limited to contract, statute, tort, strict liability, or negligence, whether by Client, Grant Thornton, or others) but such terms shall not apply to the extent finally determined to be contrary to applicable law.

(a)    With respect to the Services and this Agreement generally, the liability of Grant Thornton and its present, future, and former partners, principals, directors, employees, agents and contractors (collectively referred to as the "<u>Grant Thornton Firm</u>") for all claims, including but not limited to the Grant Thornton Firm's own negligence, shall not exceed and shall be limited to the fees payable for the portion of the work giving rise to such liability. This limitation shall not apply to the extent that it is finally determined that any claims, losses, or damages are the result of the Grant Thornton Firm's willful misconduct or fraud.

(b)    EACH PARTY HEREBY WAIVES, AND IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR, ANY INDIRECT, SPECIAL, CONSEQUENTIAL, PUNITIVE, INCIDENTAL, OR EXEMPLARY DAMAGES OR LOSS, INCLUDING WITHOUT LIMITATION, ANY LOST PROFITS, TAXES, INTEREST, PENALTIES, LOSS OF SAVINGS, OR LOST BUSINESS OPPORTUNITY.

(c)    In responding to any claim asserted, each party may avail itself of any defense available under applicable law, but in no event shall the aggregate liability of each party for any claims, losses or damages related to this Agreement exceed an amount that is proportional to the relative fault of such party that is finally determined to have caused the other party's losses.

(d)    Client shall, upon the receipt of written notice, indemnify, defend, and hold harmless the Grant Thornton Firm from and against any liability, damages, fees, expenses, losses, demands and costs (including reasonable defense costs) (collectively, "<u>Losses</u>") associated with third-party claims arising out of or relating to (i) misrepresentations made by, or false or incomplete information provided by, Client or its agents or representatives or (ii) such third party's use of or reliance upon the Services or Deliverables. Client agrees to reimburse the Grant Thornton Firm for all reasonable expenses, including reasonable attorneys' fees and expenses, as they are incurred in connection with

DocuSign Envelope ID: E9E51A89-CD20-4449-9911-B402B8EF0024

Genesis Global Holdco, LLC
Agreement dated April 4, 2023

the investigation of, preparation for, or defense of, any pending or threatened claim or action or proceeding for which the Grant Thornton Firm is entitled to indemnification.

(e)     In the event of any controversy or claim against Grant Thornton arising from or related to the Services, Grant Thornton shall be entitled, at its option, to defend itself from such controversy or claim. Grant Thornton also reserves the right to participate in any settlement, administrative, or judicial proceedings. Grant Thornton's decision to abstain or defend or participate in any proceedings as set forth above shall in no way prejudice its rights to indemnification.

**4.      Use of Documentation and Reliance.**

(a)     Professional standards require Grant Thornton to maintain sufficient documentation to support its work. This documentation may include copies of Client's information. However, to the extent that Grant Thornton has copies of Client's information, Grant Thornton will protect and safeguard Client's information from unauthorized disclosure.

(b)     Unless provided for differently in the applicable SOW, all Deliverables provided by Grant Thornton to Client in performing the Services are the sole and exclusive property of Grant Thornton and are prepared solely for the internal use of Client's management, employees and board of directors. Except as provided below, upon full payment of Grant Thornton's billings, Client shall acquire a limited, perpetual, non-transferable, royalty-free license to use the Deliverables for Client's internal business purposes.

(c)     Client agrees to protect all Deliverables from unauthorized use and prevent disclosure of the Deliverables to third parties who may rely on them.  Further, Grant Thornton has not and shall not be deemed to assume any duties or obligations to any third party.

(d)     If the Client wishes to make reference to Grant Thornton or to disclose or disseminate in any manner and in any medium (e.g., Client website), any portion of any Deliverable to a third party Client agrees to first (i) provide Grant Thornton with a draft of the proposed disclosure, (ii) obtain Grant Thornton's advance written approval, and (iii) if requested by Grant Thornton, obtain from any third party and provide Grant Thornton with a non-disclosure agreement and/or release in a form satisfactory to Grant Thornton  in its sole discretion.

(e)     Grant Thornton shall retain sole and exclusive ownership of and all right, title, and interest in and to any know-how, concepts, techniques, methodologies, ideas, processes, models, templates, tools, utilities, routines, trade secrets, and other intellectual property that (i) existed prior to, or were developed independent of, Client's engagement or (ii) may have been discovered, created, or developed by Grant Thornton as a result of its own efforts during the engagement, which are of general application and do not contain Client's confidential information (collectively, the "Grant Thornton Property"). Client shall acquire no right to or interest in the Grant Thornton Property, except for a non-exclusive, non-transferable, royalty-free right to use such Grant Thornton Property solely in connection with Client's permitted use of the Deliverables to the extent any Grant Thornton Property is incorporated therein. Client will not sublicense or otherwise grant any other party any rights to use, copy, or otherwise exploit or create derivative works from the Grant Thornton Property.

(f)     Except as expressly contemplated by the applicable SOW, Grant Thornton assumes no responsibility to update any conclusions or Deliverables.

**5.      Third-Party Proceedings**. Unless expressly provided for, the Services do not include giving testimony or appearing or participating in discovery proceedings, administrative hearings, court, or other legal or regulatory inquiries or proceedings. Except with respect to a dispute or litigation between Grant Thornton and Client, Grant Thornton's costs (including reasonable attorneys' fees) and time spent in legal and regulatory matters or proceedings relating to Grant Thornton's engagement, whether made at the Client's request or by subpoena, request for testimony, or consultation involving private litigation, arbitration, industry, or government regulatory inquiries, will be billed to Client separately.

**6.      Access to Resources and Information**. Unless specified in a SOW as the responsibility of Grant Thornton to provide, Client shall have obtained on a timely basis as required for Grant Thornton's performance of the Services (i) any internal and third-party permissions, licenses or approvals (including use of any necessary software or data); and (ii) all information, approvals and assistance as may be necessary or as Grant Thornton may reasonably request. Grant Thornton's personnel assigned to any engagement shall not be assumed or deemed to have knowledge of information provided to other Grant Thornton engagement teams or third parties.

**7.      Term and Termination**. This Agreement will commence on the Effective Date and it will not expire, unless earlier terminated as provided in this Section. Grant Thornton and Client shall each have the right to terminate this Agreement (or

5

DocuSign Envelope ID: F9E51A23-CD20-4449-9911-B492E88EFD024

Genesis Global Holdco, LLC
Agreement dated April 4, 2023

applicable SOW therein), in whole or in part at any time without further obligation to the other by giving not less than thirty (30) days written notice to the other party. Further, Grant Thornton shall have the right to terminate this Agreement and/or any SOW immediately if it discovers practices by Client that it deems dishonest, fraudulent, or illegal; or Grant Thornton determines that application of or changes in applicable rules or professional standards, such as those established by the American Institute of Certified Public Accountants, Public Company Accounting Oversight Board, or U.S. Securities and Exchange Commission, restrict the Grant Thornton Firm's ability to complete the work.  If either party terminates this Agreement or any SOW as set forth in this Section, Client agrees to pay Grant Thornton for the Services performed, including out-of-pocket expenses and costs, rendered up to the date of such termination.  Grant Thornton retains the right to suspend or terminate the Services in the event of nonpayment.  Services will not be resumed until Client's account is paid as agreed.

**8.    Third-Party Service Providers**.  Grant Thornton LLP is the U.S. member firm of Grant Thornton International Ltd ("GTIL"), a global organization of member firms. Member firms are neither members of one international partnership nor otherwise legal partners with one other. There is no common ownership, control, governance, or agency relationship among member firms.  GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. In the event Grant Thornton subcontracts some of the Services to a GTIL member firm, Grant Thornton takes sole responsibility for all work performed in relation to the applicable SOW and Client agrees that, with respect to work that is the subject of the SOW, its sole recourse is against Grant Thornton.

Additionally, Grant Thornton may use third parties to provide administrative and operational support to Grant Thornton business operations, or to provide engagement team resource services. All of these third-party service providers are subject to confidentiality obligations to protect the confidentiality of client data. Such entities may be located within or outside the United States.

**9.    Electronic Communications**. During the course of the engagement, the parties may need to electronically transmit confidential information to each other and to third-party service providers or other entities engaged by either Grant Thornton or Client. Electronic methods include telephones, mobile devices, e-mail, cloud services and fax. All forms of electronic communication have inherent security weaknesses, and the risk of compromised confidentiality cannot be eliminated. Client agrees to the use of electronic methods to transmit and receive information, including confidential information. Grant Thornton shall not be liable for any loss, damage, expense, inconvenience, or harm resulting from the loss, delay, interception, corruption, or alteration of any electronic communication due to any reason beyond its reasonable control.

If applicable, Grant Thornton may use automated data gathering tools developed by it, its affiliates, or third-party providers, such as SQL scripts to extract data for further analysis for purposes of the applicable engagement.  These tools are designed to be executed by the Client's information technology professionals within the Client's information systems environment.  Client hereby consents and authorizes Grant Thornton to use these tools only for the purpose of performing the applicable engagement.

Grant Thornton shall not be responsible for any service interruptions of, or corruption or damages to, Client's or third-party information systems and the information and data contained therein, including but not limited to denial of access, and automatic shutdown of information systems caused by or resulting from Grant Thornton's performance of the Services.

**10.    Management Representations**. Grant Thornton's findings, conclusions, and recommendations are limited solely to the matters for which Grant Thornton was engaged. No conclusions should be inferred as to any matters not specifically covered by the applicable SOW. Further, the findings, conclusions, and recommendations are based upon the facts and information presented by Client and may be inapplicable if the actual facts differ from those presented in any respect.

Because of the importance of the information that Client provides to Grant Thornton with respect to Grant Thornton's ability to perform the Services, Client hereby releases the Grant Thornton Firm from any liability, damages, fees, expenses, and costs (including defense costs) relating to the Services, that arise from or relate to any information (including representations by management) provided by Client, its personnel or agents, that is misleading or not complete, accurate, or current.

**11.    Confidential Information**. Each party (the "Disclosing Party") may disclose to the other party (the "Receiving Party") information that it considers confidential or proprietary ("Confidential Information").

(a)    Confidential Information includes but is not limited to (i) reports, financial information, studies, drawings, contracts, business plans, inventions, technical information, know-how, plans, and specifications and (ii) any information or data which is disclosed by a party to the other party under or in contemplation of this Agreement which has been marked or identified as confidential or which a reasonable person would know to be confidential or

Genesis Global Holdco, LLC
Agreement dated April 4, 2023

proprietary due to the circumstances of its disclosure or is marked as such. Client will provide the minimum amount of Confidential Information and minimum access to such information necessary for Grant Thornton to perform the Services.

(b)     A party's Confidential Information shall not include information that (i) is or becomes part of the public domain through no act or omission of the other party; (ii) was in the other party's lawful possession prior to the disclosure and had not been obtained from the Disclosing Party; (iii) is lawfully disclosed to the other party by a third party without restriction on disclosure; or (iv) is independently developed by one party without use of or reference to the other party's Confidential Information. In addition, nothing contained herein shall be construed as preventing either party from using the information retained from the Confidential Information of the other party as part of its general skill, knowledge, talent, and expertise.

(c)     The Receiving Party agrees to hold in confidence and not to disclose or reveal to any person or entity except its Representatives (as defined below), the Confidential Information of the Disclosing Party.  The Receiving Party further agrees to protect the Disclosing Party's Confidential Information in the same manner it protects its own confidential information, provided no less than reasonable care shall be used.  The Receiving Party may disclose Confidential Information to its partners, principals, officers, directors, employees, agents, GTIL member firms, and contractors (collectively, its "Representatives") who have a legitimate need to review such information.  The Receiving Party shall be responsible for any breach of this Agreement by its Representatives and shall take all reasonable steps to cause its Representatives to comply with the terms hereof.

(d)     If Receiving Party is requested or required by law, regulation, legal process or an oversight body to disclose Confidential Information, Receiving Party will, to the extent practical and legally permitted, notify Disclosing Party of such request or requirement so that Disclosing Party may seek an appropriate protective order or other relief.  In the absence of a protective order or other applicable relief, Receiving Party may disclose the portion of Confidential Information subject to such request or requirement without liability hereunder.

(e)     Grant Thornton may be requested to make certain documentation available to regulators, governmental agencies, or their representatives ("Regulator(s)") pursuant to law or regulations. If requested, access to the documentation will be provided to Regulators under the supervision of Grant Thornton personnel and at a location designated by Grant Thornton. Furthermore, upon request, Grant Thornton may provide photocopies of selected documentation to Regulators. Regulators may intend, or decide, to distribute the photocopies or information contained therein to others, including other governmental agencies. Client hereby authorizes Grant Thornton to allow Regulators access to, and photocopies of, the documentation in the manner discussed above. To the extent legally permissible, Grant Thornton will notify Client of any requests made by Regulators prior to granting access or release of such information to Regulators.

**12.     Privacy**.  Grant Thornton will maintain Client's personal information in confidence in accordance with professional standards and governing laws. Client will not provide any personal information unless necessary for Grant Thornton to perform the Services. Client will strictly limit provision of personal information to that personal information essential to Grant Thornton's performance of the Services. Client will anonymize, mask, obfuscate, and/or de-identify all personal information unless Grant Thornton requires otherwise to provide the Services. Client is responsible for obtaining, pursuant to law or regulation, consents for any personal information that Client provides to Grant Thornton.

**13.     Dispute Resolution.**

(a)     Mediation.  Any controversy or claim arising out of or relating to the Services, related fees, or this Agreement shall first be submitted to mediation. A mediator will be selected by agreement of the parties, or if the parties cannot agree, a mediator acceptable to all parties will be appointed by the American Arbitration Association. The mediation will proceed in accordance with the customary practice of mediation and shall be concluded within sixty (60) days from receipt of written notice unless the parties agree otherwise. Any facts disclosed related to the mediation shall be kept confidential and each side shall pay its own costs of the mediation but will share equally the mediator's expenses.

(b)     Arbitration. In the event mediation is not successfully resolved, then the parties agree that such dispute(s) or claim(s) shall be settled by binding arbitration. The provisions herein supersede any contrary arbitral rules that might otherwise apply. The arbitration proceeding shall take place in Chicago, Illinois unless the parties mutually agree to a different location. The proceeding, including any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be

Genesis Global Holdco, LLC
Agreement dated April 4, 2023

governed by the provisions of the Federal Arbitration Act and will proceed in accordance with the then current Conflict Prevention & Resolution ("CPR") or the similar rules of another arbitration association if one other than CPR is selected, except that pre-hearing discovery shall be limited as provided for herein or unless specifically authorized by the arbitrators. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators.

i.      To begin the arbitration process, a party shall provide written notice of the issues to be resolved by arbitration (the "Notice") within fifteen (15) days of the parties' agreement to terminate or waive mediation, and the other party shall respond within twenty one (21) days and shall add any other issues to be resolved within the arbitration. The arbitrators shall only resolve those issues identified in the Notice, and issues that are not identified shall not be arbitrated nor brought to court.

ii.     The arbitration shall be conducted by three (3) arbitrators. Each party shall select an arbitrator experienced in relevant subject matters within twenty-one (21) days of the Notice. The two (2) designated arbitrators shall then select a third neutral arbitrator within twenty-one (21) days of their selection. It is the parties' intention that the two (2) arbitrators selected by the parties be "neutrals" who will not be informed as to which party selected them. If the two (2) arbitrators cannot agree on selection of a third arbitrator within twenty-one (21) days of their appointment, the governing arbitration agency shall request a list of arbitrators and select a third arbitrator under the agency's rules within thirty (30) days. If both parties are in agreement, the dispute may be heard by one (1) arbitrator selected within sixty (60) days following receipt of the Notice.

iii.    The parties shall not be entitled to discovery except as it directly relates to the underlying Services that are at issue and shall submit a joint proposed schedule to the arbitrators within thirty (30) days of the arbitrators' selection. Other than described herein, no other discovery is allowed except by the arbitrators and only for good cause shown.

iv.     Except for impeachment-only information, each party must disclose within thirty (30) days after the selection of the arbitrators: (1) the names, addresses, telephone numbers, and email addresses of persons who have knowledge and/or discoverable information relating to the issues submitted for resolution; (2) its claims and defenses; and (3) a computation showing each element of claimed damages.

v.      The parties shall be entitled to take (i) up to three (3) depositions and (ii) the depositions of any expert witness who will testify in the arbitration proceeding.  No deposition shall exceed seven (7) hours. Each testifying expert shall provide the same materials required under Federal Rule of Civil Procedure 26(a)(2)(B). The parties must confer in good faith to resolve all discovery disputes. If they cannot resolve these themselves, the parties must attempt to do so in conference with the arbitrators. If the dispute is not resolved in conference, the arbitrators must promptly rule on the issues.  Each side may file dispositive motions without obtaining leave from the arbitrators but must confer with the other side prior to filing any dispositive motions. All motions should be filed no later than sixty (60) days prior to the arbitration hearing, unless agreed otherwise by the parties or ordered by the arbitrators.

vi.     The arbitrators shall have no authority to award non-monetary equitable relief or indirect, consequential, or punitive damages. The award of the arbitration shall be in writing and shall be accompanied by a well-reasoned opinion. The award issued by the arbitrators may be confirmed in a judgment by any federal or state court of competent jurisdiction. Each party shall be responsible for its own costs associated with the arbitration, except that the costs of the arbitrators shall be equally divided by each side involved in the arbitration. The arbitration proceeding and all information disclosed during the arbitration shall be maintained as confidential, except as required to confirm the award, or disclosed to professional or regulatory bodies, as required by law or a court of law, or in a related confidential mediation or arbitration. The parties agree that arbitration is the sole and exclusive remedy for disputes arising out of or related to this Agreement.  If arbitration is initiated and the other party declines to participate and instead initiates litigation elsewhere, doing so will constitute a default judgment.

(c)     Limitation on Period to File Claims.  It is expressly agreed by each party that any action, regardless of form, arising out of the Services, whether it be in contract, tort, or otherwise, shall be deemed waived if a claim is asserted more than two (2) years from the earlier of the date that the applicable Deliverable is issued or the Services are completed.

DocuSign Envelope ID: F9E51A23-CD20-4449-9911-B402B8EED024

Genesis Global Holdco, LLC
Agreement dated April 4, 2023

**14.    Personnel.**

(a)    During the term of a SOW and for a period of one (1) year after the Services are completed, Client agrees not to solicit, directly or indirectly, or hire, Grant Thornton's personnel performing Services hereunder without Grant Thornton's written consent. If this Section is violated, Client will pay Grant Thornton a fee equal to the hired person's annual salary in effect at the time of the violation as reimbursement for the estimated costs of replacement personnel. The foregoing shall not apply if the individual is hired in response to a general advertisement made available to the public.

(b)    For engagements subject to the SEC independence rules, Client acknowledges that hiring Grant Thornton (or GTIL) personnel participating on an engagement may be perceived as compromising Grant Thornton's objectivity, and if applicable, impairing Grant Thornton's independence. Accordingly, prior to entering into any employment discussions with such personnel, Client agrees to discuss the potential employment, including any applicable independence ramifications, with the engagement partner responsible for the Services.

**15.    Miscellaneous.**

(a)    No Assignment.  Neither party shall assign any rights, obligations or claims relating to this Agreement without the prior written consent of the other party, except Grant Thornton may assign this Agreement to a successor in interest upon written notice in connection with a change of control or sale of a line of business or all or substantially all of its assets.

(b)    Force Majeure.  Neither party shall be liable for any delay or failure in performance (except for payment obligations) due to any strikes, work stoppages, accidents, acts of war or terrorism, governmental actions, civil or military disturbances, pandemics, epidemics, contagious diseases, nuclear or natural catastrophes or acts of god, or other circumstances beyond its reasonable control.

(c)    No Third-Party Beneficiaries.  No third-party beneficiaries are intended under this Agreement.

(d)    Name Use.  Neither party shall use the other's name, service marks, or trademarks in external publicity materials without prior written consent.

(e)    Governing Law.  This Agreement, including its formation and the parties' respective rights and duties and all disputes that might arise from or in connection with this Agreement or its subject matter, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to its conflicts of laws rules that would require the application of another state's laws.

(f)    Independent Contractors.  Each party is an independent contractor with respect to the other and shall not be construed as having an employee/employer, trustee, joint venture, agency or fiduciary relationship.

(g)    Effect of Invalidity.  If any portion of this Agreement is held invalid, it is agreed that such invalidity shall not affect any of the remaining portions.  Moreover, if the terms of any provision hereof are determined to be unenforceable under applicable law as a result of their duration, scope, limitation, or exclusions, such provision shall be construed to the extent possible to be valid and enforceable while adhering as closely as possible to the parties intent as contemplated hereby. If because of a change in Client's status or due to any other reason, any provision in this Agreement or the Services hereunder would be prohibited by laws, regulations, or published interpretations by governmental bodies, commissions, state boards of accountancy, or other regulatory agencies, such provision shall, to that extent, be of no further force and effect, and the Agreement shall consist of the remaining portions.

(h)    Entire Agreement.  This Agreement, including any other incorporated attachments, sets forth the entire understanding between and among the parties regarding the Services and the exchange of information and supersedes all prior and contemporaneous agreements (whether written or oral), arrangements and communications which shall hereby be terminated and may not be modified or amended, except by the mutual written agreement of both parties that references and is incorporated into this Agreement. If there is a conflict between this Attachment A, the Engagement Letter, or any SOWs, this Attachment A shall control unless the applicable SOW specifically references the applicable provision of this Attachment A to be overridden. Except as otherwise agreed in an attachment to this Agreement, no "click-through," "shrink-wrap," "browse-wrap," similar agreements or other terms, whether entered into before, on, or after the date of this Agreement, will be effective to add to or modify the terms of this Agreement or alter the relationship of the parties, regardless of any party's (or its personnel's) acceptance of or agreement to such terms by electronic or other means.

9

Genesis Global Holdco, LLC
Agreement dated April 4, 2023

(i)     Survival.  The Sections regarding confidentiality, liability limitations, third-party proceedings, indemnification, dispute resolution and any such terms that by their nature should survive shall survive any termination of this Agreement.

**16.     Tax Terms and Conditions**.  This Section 16 is applicable to all Tax Services provided under this Agreement.

(a)     Reportable Transactions. Taxpayers are required to disclose their participation in certain types of transactions ("Reportable Transactions") on forms filed with their federal income tax returns and/or with the IRS Office of Tax Shelter Analysis, and with agencies of certain states (or, in some cases, foreign jurisdictions) that impose similar requirements.  Failure to adhere to Reportable Transaction disclosure and filing requirements may result in the imposition of significant penalties under applicable federal, state and/or foreign law. Grant Thornton may be a "Material Advisor" with regard to Services provided to Client and Grant Thornton may be subject to Grant Thornton's own federal and/or state reporting, registration and list maintenance obligations, which are separate and independent of any taxpayer disclosure obligation. Grant Thornton may be required to maintain and disclose to applicable federal and/or state regulatory agencies certain information regarding Client's participation in a Reportable Transaction, including Client's name and federal identification number, and other information as required.

Except as specifically stated in this Agreement, Grant Thornton does not assume any obligation to express any opinion on, provide any advice related to, or identify from any information provided by Client or obtained by Grant Thornton during the course of providing Services to Client under this Agreement, whether any particular transaction is a Reportable Transaction or the potential consequences of non-compliance with disclosure and filing requirements pertaining to a Reportable Transaction. Reliance on any opinion or advice Grant Thornton may provide regarding whether a transaction is or is not a Reportable Transaction and/or any disclosure and filing requirements may not avoid the imposition of any penalty imposed on Client under federal or state law for the failure to comply with such disclosure and filing obligations.

(b)     Privileges Relating to Taxpayer Communications. Any advice given by Grant Thornton with respect to a matter that is within the scope of Grant Thornton's authority to practice before the IRS may be privileged under federal and state laws. This privilege may be asserted in any non-criminal tax matter before the IRS and in any non-criminal tax proceeding in Federal court and may be asserted to the extent such communication would be considered privileged communication if it were between a taxpayer and an attorney. At Client's sole cost and expense, Grant Thornton will cooperate with Client's efforts to assert taxpayer privileges when Grant Thornton receive a demand or inquiry for Client's information to the extent required by law.

(c)     Conditions of Confidentiality Not Imposed. Notwithstanding anything to the contrary herein, Grant Thornton imposes no conditions of confidentiality on any information it provides to Client to the extent that it concerns the tax structure or tax treatment of any transaction.

(d)     No Responsibility to Update. Tax Deliverables will be based on Grant Thornton's interpretation of the federal and state laws, regulations, administrative and judicial pronouncements, and other relevant authorities, in effect when Grant Thornton provides the Tax Deliverables. All of these authorities are subject to change, and such change may be retroactive or prospective in effect. Grant Thornton assumes no responsibility to either advise Client of, or to update conclusions, for changes in respect to federal and state laws, regulations, administrative and judicial pronouncements, and other relevant authorities expressly set forth in this Agreement and applicable law.

(e)     Tax Deliverables. Client is authorized to provide Tax Deliverables to taxing jurisdictions with respect to tax filings contemplated in a SOW.

**Grant Thornton**

**Genesis Global Holdco, LLC**
**Statement of Work for Tax Structuring Services**

This Statement of Work ("Statement of Work") dated April 4, 2023 becomes a part of and is subject to the terms and conditions of the Agreement dated April 4, 2023 between Genesis Global Holdco, LLC, and affiliates ("Client," "Company," or "you") and Grant Thornton LLP ("Grant Thornton," "Firm," or "we"). Any capitalized terms that are not defined in this Statement of Work shall have the meanings in the Agreement.

The purpose of this Statement of Work is to describe the scope of services ("Services") the Company is requesting Grant Thornton to perform, and to set forth the agreed fee, timing and other matters related to the Services.

Client and Grant Thornton agree that this agreement shall be valid and effective upon the entry of an appropriate order in Client's bankruptcy case before the United States Bankruptcy Court for the New York Southern Bankruptcy Court, authorizing and approving Grant Thornton's engagement. Client and Grant Thornton agree to cooperate in the filing of a motion seeking such authorization and approval and that such motion shall be filed within twenty days of the mutual execution of this agreement. The motion and all accompanying documents filed with the Bankruptcy Court shall be in a form reasonably satisfactory to both Client and Grant Thornton.

**The services we will provide**

Our Services will consist of assisting the management of the Company with assessing the tax consequences of its Chapter 11 case (the "Proposed Transaction"). Our Services may include (but are not limited to):

- Quantitative analysis and modeling to assist management to quantify the Company's tax consequences related to the Proposed Transaction, which may include assisting with assessing one or more of the following:

  - Various meetings with the Company and/or their service providers to discuss status, questions, recommendations, and/or conclusions.

  - Review and comment on bankruptcy documents, draft sales agreements and/or other transaction related agreements.

  - Cancellation of Debt Income:
    - Review the Company's historic business transactions and debt agreements, including terms of service with loan agreements to customers.
    - Analyze whether settlement of loan payables are recourse or nonrecourse for income tax purposes.
    - Review calculation of adjusted issue price of relevant instruments.

**Grant Thornton**

  &#10149; Analyze tax treatment of accrued interest on instruments compromised in the bankruptcy plan.
  &#10149; If applicable, calculate the cancellation of debt income realized in the Proposed Transaction.

o Exclusion of Cancellation of Debt Income, including analyzing whether any cancellation of debt income realized in the Proposed Transaction is excludable from taxable income under section 108.

o Tax Basis Balance Sheet
  &#10149; Calculate the tax basis of assets (except stock in subsidiaries) held by the Company and its subsidiaries.
  &#10149; Review of allocation of consolidated net operating losses and general business credit carryforwards to the Company and its subsidiaries under Treas. Reg. Sec. 1.1502-21.

o Subsidiary Stock Basis, including calculating the stock basis of the stock of subsidiaries held by the Company under Treas. Reg. Sec. 1.1502-32.

o Attribute Reduction, including calculating the tax attribute reduction under section 108(b) and Treas. Reg. Sec. 1.1502-28 for the Company and its subsidiaries.

o Gain (loss) on Sale of Assets
  &#10149; To extent necessary, calculate the taxable gain (loss) on sale of assets in connection with the Proposed Transaction (if any).
  &#10149; To extent necessary, analyze whether any realized taxable gain (loss) is capital or ordinary in nature for income tax purposes.

o Intercompany Transaction Analysis, including analyzing the effect of Treas. Reg. Sec. 1.1502-13 on the Proposed Transaction, including the effect of intercompany obligations between the Company and its subsidiaries and members of Digital Currency Group, Inc. resulting from the Proposed Transaction.

o Section 382
  &#10149; Analyze the applicability of section 382(l)(5)/(l)(6) related to any ownership changes
  &#10149; To extent requested review any historic section 382 analysis prepared by Digital Currency Group, Inc. related to historic ownership shifts occurring prior to the Proposed Transaction.

o Alternative transactions, including analyzing availability of alternative structures (*e.g.*, Bruno's-like transaction, etc.).

DocuSign Envelope ID: F9FD91A29-CD20-4449-9011-B402B8EFD024



3

      o   State income tax analysis, including analyzing the state income tax treatment related to the Proposed Transaction.

      o   Prepare written technical documentation with conclusions and technical support of such conclusions.

           ➢  Prior to completion of our Services, we will discuss with the Company the form of such documentation (*e.g.,* technical memorandum, written opinion, etc.). To the extent that the Company requests a written tax opinion, our anticipated fee range may be significantly increased.

- If requested, we will assist the Company with assessing additional tax items in connection with the Proposed Transaction ("Additional Tax Services"). If requested, we will discuss with you the scope and fees for such additional tax services. These additional tax services may include (but are not limited to) the following:

      o   Perform a historic section 382 ownership analysis for the Company and its subsidiaries for the period prior to the Proposed Transaction.

      o   Analyze the deductibility of the fees incurred in the Proposed Transaction by the Company and its subsidiaries, including (but not limited): (i) allocate fees between bankruptcy, sale of assets, reorganization, and other items, (ii) analyze and allocate fees applicable to taxpayers, and (iii) analyze costs related to debt issuance for income tax purposes.

      o   Analyze sales tax and/or transfer taxes related to the Proposed Transaction.

      o   Analyze the foreign tax consequences related to the Proposed Transaction including (but not limited to) analysis of tax consequences related to indirect ownership of interest in such foreign entity.

      o   Assist the Company with tax reporting related to the Proposed Transaction.

**Grant Thornton will confirm in writing (includes email) the scope, timing, deliverable, and estimated fees for each request prior to proceeding. Services constituting distinct projects will be performed under an Addendum to this Statement of Work which will confirm the request, the facts and issues to be addressed, identify the Deliverable and expected timeline, and provide an estimate of expected hours/fees.**

The Services are provided solely for tax purposes. Client management is solely responsible for calculating and determining any amounts they record in the books, records, financial statements and footnotes thereto.

### Delivering the services

We will discuss with you an appropriate timeline for providing the Services listed above, including an agreed upon timeframe for completion. We will provide the Company with a

DocuSign Envelope ID: F9FD1A29-CD20-4449-9911-B402B8EFD024

**Grant**Thornton

request for information required to complete the Services based on the mutually agreed timeline.

The Services are provided solely for the benefit of the Company. Our Deliverables may not be shared or provided to any third party without the advance consent of Grant Thornton and receipt of executed access or release letters as required by Grant Thornton.

This Statement of Work and the Services provided hereunder are subject to approval of the applicable United States Bankruptcy Court for the New York Southern Bankruptcy Court (the "Bankruptcy Court") in any case filed by the Company and/or its subsidiaries under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Company agrees to assist Grant Thornton and its counsel in promptly seeking Bankruptcy Court approval of this Statement of Work and Grant Thornton's retention in the bankruptcy cases nunc pro tunc to the date any such case is filed, including filing and serving any pleadings in connection therewith.

The parties are entering into this Statement of Work at a time when a national emergency has been declared and the nation is responding to the Coronavirus (COVID-19) pandemic. Grant Thornton will use reasonable efforts to complete the Services as specified herein, while also taking the steps it deems necessary to protect the health, welfare, and safety of its professionals. Neither party shall be liable for any delay or failure in performance (excluding payment for fees and expenses incurred) due to circumstances resulting from the pandemic which are beyond its reasonable control.

### Information collection and use authorization

Grant Thornton is committed to using technology to improve quality and efficiency in providing tax services, including reducing or eliminating duplicative requests for information from clients. The information Client provides to Grant Thornton in connection with a particular engagement may be necessary or useful in other engagements for which Client has also engaged Grant Thornton, whether tax, audit, or advisory. Client authorizes Grant Thornton to use the information Client provides to Grant Thornton to perform both tax and non-tax services in any engagement letter or Statement of Work executed with Grant Thornton.

Completion by Client of all information and data requests, electronic or otherwise, is expected to be timely, and Client agrees that the accuracy and completeness of information provided to Grant Thornton by any Client representative, to be relied on for the purpose of delivering the Services, is the responsibility of Client management.

### Limitations

Our responsibility under this Statement of Work extends only to Services we expressly agree to provide herein. Our responsibility does not include, for example, studies, detailed research or analysis not specifically set forth in this Statement of Work. If such items arise or you request additional Services, we will provide you a fee estimate and a new Statement of Work before we invest significant professional time.

Statement of Work – SEC M&A Tax Structuring 09/28/2022 C19

**Grant Thornton LLP**
U.S. member firm of Grant Thornton International Ltd.

DocuSign Envelope ID: F9ED1A29-CD20-4449-9011-B402B8EED024

Grant Thornton

5

U.S. federal and state tax laws are ever-changing and complex. Grant Thornton is engaged to provide only those Services expressly set forth in this Statement of Work, in accordance with applicable professional standards. Such obligation expressly does not include any obligation or responsibility to identify, suggest, model or advise on tax minimization or deferral opportunities, including but not limited to, any such matters that may arise from recently enacted legislation or regulatory guidance.

All engagements undertaken by Grant Thornton are subject to evaluating and resolving any potential or actual conflict of interest or independence concerns. While the occurrence is highly unusual, matters may arise from the ordinary course of our business operations, or yours, requiring us to resolve a conflict matter and/or terminate or suspend this engagement until any conflict or independence issue is resolved.

Additionally, Grant Thornton may use third parties to provide administrative and operational support to Grant Thornton business operations. All of these third-party service providers are subject to confidentiality obligations to protect the confidentiality of client data. Such entities may be located within or outside the United States.

Appropriate use of technology and resources is an important aspect of serving you. In our tax return preparation and tax consulting processes, we use the technology and resources of GT US Shared Services Center India Private Limited ("GTSSC") and/or the Grant Thornton Knowledge and Capability Center India Private Limited ("KCC"), affiliates of Grant Thornton located in Bangalore, India, to assist in providing tax services. Our affiliates' address is No.65/2, Bagmane Tridib, Block "A", 3rd and 4th Floor, Bagmane Tech Park, C.V. Raman Nagar, Bangalore – 560093.

The Firm's contract with such affiliates requires that they maintain the confidentiality of any tax return information provided to them in connection with providing tax services.

Professional and regulatory standards require us to obtain your written consent prior to providing your tax return information to such affiliates.  Your authorization includes only prior year(s) and current year information in the possession of Grant Thornton that is necessary for the purpose of providing the Services covered by this Statement of Work.

If you do not advise us that you wish to limit the duration of your consent, your consent is valid for one year from the date of signature or the time period necessary to complete the Services under this Statement of Work, whichever is greater. If you wish, you may limit the amount, type, or scope of tax return information disclosed by letting us know in writing.

To acknowledge your consent to the disclosure of your tax return information as set forth above, please sign this Statement of Work.

**Grant Thornton**

**Fees and payment terms**

Fees

Our fees for the Services under the Statement of Work will be based on our hourly rates for this type of work, discounted to the rates listed below:

| Position | Discounted Hourly Rate |
|----------|------------------------|
| Partner | $980 |
| Managing Director | $935 |
| Senior Manager | $860 |
| Manager | $750 |
| Senior Associate | $600 |
| Associate | $370 |
| Intern | $95 |

Based on our experience and the information received to date, we anticipate that the fees for our Services are as follows:

- Quantitative Analysis and Modeling        $250,000 to $750,000

- Additional Tax Services                         To be determined

**Payment schedule**

Upon execution of this Statement of Work you understand and agree that we will invoice you monthly as time is incurred.  In the event of a chapter 11 case, we will request payment of our fees and expenses in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Bankruptcy Court's Local Rules (the "Local Rules"), and any orders entered by the Bankruptcy Court in the chapter 11 case.  We will submit our invoices as work progresses and payment of them will be made upon receipt or as quickly as is permitted under the Bankruptcy Code, the Bankruptcy Rules, Local Rules, and any other applicable orders entered by the Bankruptcy Court.  We acknowledge that payment of our fees and expenses hereunder is subject to the jurisdiction of the Bankruptcy Court and approval of such payment by the Bankruptcy Court under Section 330 and 331 of the Bankruptcy Code.

In addition, our billing will include reasonable expenses related to this engagement including, but not limited to, the reasonable legal expenses for counsel, time, and expenses associated with administering the engagement and bankruptcy court appearances.

From time to time, Grant Thornton may receive certain incentives in the form of bonuses and rewards from its corporate card and other vendors.  Such incentives, to the extent received, will be retained by Grant Thornton to cover firm expenses.

We will discuss with you circumstances that require us to do additional work which may include, but are not limited to, work to satisfy our obligations under applicable professional standards including additional fact gathering, analysis and preparation of disclosure forms, unforeseen scope changes including additional state returns or previously unidentified

Statement of Work – SEC M&A Tax Structuring 09/28/2022 C19

**Grant Thornton LLP**
U.S. member firm of Grant Thornton International Ltd.

**Grant Thornton**

7

transactions or tax positions requiring analysis, and late or incomplete client provided information. If it appears that the stated fee will be exceeded, we will consult with you before continuing with the engagement.

We will seek to be compensated for reasonable services rendered and disbursements incurred by filing fee applications in the United States Bankruptcy Court pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, the guidelines promulgated by the United States Trustee, and in accordance with such orders or procedures as may be applicable for the more regular compensation of professionals in this bankruptcy case generally.

From time to time, Grant Thornton may receive certain incentives in the form of bonuses and rewards from its corporate card and other vendors. Such incentives to the extent received will be retained by Grant Thornton to cover firm expenses.

**Entire agreement**

This Statement of Work represents the parties' entire understanding with respect to the Services in this document.  This Statement of Work does not modify or amend the Agreement. In the event of a conflict between this Statement of Work, Attachment A – Standard Grant Thornton LLP Terms and Conditions, and any other exhibit or attachment included in the Agreement, the terms of the Attachment A shall govern.

**Agreed and accepted**

The undersigned hereby agree to the terms and conditions as set forth above and authorizes Grant Thornton to provide your tax return information to the GT US Shared Services Center India Private Limited (GTSSC) solely for them to assist in providing the services covered by this Statement of Work.

**GRANT THORNTON LLP**

DocuSigned by:

*Brian Angstadt*

─BC0C5B5584E048F─

Brian Angstadt, Managing Director

Date: 4/13/2023 | 15:22:20 EDT
_____

**Management's Acknowledgment of the Statement of Work:**

DocuSigned by:

*Alice Chan*

─F21A8C2431F6488─

Alice Chan, CFO

Date: 4/13/2023 | 14:58:44 EDT
_____