CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**CERTIFICATE OF PUBLICATION**

I, Jane VanLare, an attorney admitted to practice before this court and an employee of the firm of Cleary Gottlieb Steen & Hamilton LLP, hereby certify that the *Notice of Deadlines for Submitting Proofs of Claim ((General Claims Bar Date: May 22, 2023 at 4:00 PM (ET)))*, which is substantially similar to the form of notice attached as Exhibit C to the above-captioned debtors' filing at ECF No. 190, was published in *The New York Times* on Monday, April 14, 2023, as more fully set forth in the Proof of Publication of Larnyce Tabron (attached hereto as Exhibit A).

Dated: April 17, 2023
New York, New York

*/s/ Jane VanLare*
Jane VanLare

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

# EXHIBIT A

**Proof of Publication**



The New York Times
Company

620 8th Avenue
New York, NY 10018
nytimes.com

## PROOF OF PUBLICATION

April 14, 2023

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

4/14/2023, NY & NATL, pg B3

________________________________________________

Larnyce Tabron

JOHN MCGILL
Electronic Notary Public
Commonwealth of Virginia
Registration No. 8038092
My Commission Expires Dec 31, 2027

Digitally signed by John McGill
Date: 2023.04.14 14:14:39 -04'00'

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: Genesis Global Holdco, LLC, *et al.*,[1] Debtors. | Chapter 11<br>Case No.: 23-10063 (SHL)<br>Jointly Administered |
| --- | --- |

**NOTICE OF DEADLINES FOR SUBMITTING PROOFS OF CLAIM ((GENERAL CLAIMS BAR DATE: MAY 22, 2023 AT 4:00 PM (ET)))**

**PLEASE TAKE NOTICE THAT ANY ENTITY THAT FILES A PROOF OF CLAIM IN THESE CHAPTER 11 CASES SHALL BE DEEMED, FOR THE PURPOSES OF THE PROOF OF CLAIM AND POSSIBLY RELATED MATTERS, TO HAVE SUBMITTED TO THE JURISDICTION OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK. ANY ENTITY WHO IS REQUIRED TO TIMELY FILE A PROOF OF CLAIM AS SET FORTH IN THIS NOTICE BUT FAILS TO DO SO WILL BE (A) FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH PREPETITION CLAIM AGAINST ANY OF THE DEBTORS AND (B) FOREVER BARRED FROM VOTING TO ACCEPT OR REJECT ANY PLAN OR PLANS OR PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CHAPTER 11 CASES ON ACCOUNT OF SUCH PREPETITION CLAIMS.**

On April 4, 2023, the United States Bankruptcy Court for the Southern District of New York entered an Order (ECF No. 200) (the "Bar Date Order") in the above-captioned jointly-administered Chapter 11 Cases of Genesis Global Holdco, LLC and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), establishing **May 22, 2023 at 4:00 p.m., Eastern Time** (the "General Bar Date") as the general deadline for each entity (including individuals, partnerships, corporations, joint ventures, trusts and governmental units) to submit a Proof of Claim (defined below) against any of the Debtors.

The General Bar Date, the other deadlines established by the Bar Date Order and the procedures set forth below for filing proofs of claim apply to all claims against the Debtors that arose prior to the date, as indicated in the above table, on which each Debtor commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), except for claims described in paragraph 5 of the Bar Date Order as being excluded. Governmental units have until **July 18, 2023 at 4:00 p.m., Eastern Time** to file proofs of claims (the "Governmental Bar Date").

1. **WHO MUST FILE A PROOF OF CLAIM.** You MUST submit a Claim Form (defined below) and any required supporting documentation indicated thereon (together, a "Proof of Claim") to vote on a chapter 11 plan filed by the Debtors or to share in distributions from the Debtors' bankruptcy estates if you have a claim that arose prior to **January 19, 2023** (as applicable to each Debtor, the "Petition Date" and any such claim, a "Prepetition Claim"), and it is not one of the types of claim described in paragraph 5 of the Bar Date Order. Prepetition Claims based on acts or omissions of the Debtors that occurred before the Petition Date must be filed on or prior to the General Bar Date (or, if applicable, one of the other deadlines described below), even if such claims are not fixed, liquidated or certain as of the applicable deadline or did not mature or become fixed, liquidated or certain before the Petition Date.

The Bar Date Order establishes the following bar dates for filing proofs of claim in these Chapter 11 Cases (collectively, the "Bar Dates"):

(a) **General Bar Date:** Pursuant to the Bar Date Order and except as otherwise described in this Notice, all entities that hold a claim against any of the Debtors that arose prior to the Petition Date (whether secured, unsecured priority, or unsecured nonpriority) shall file a proof of claim as described in this Notice by **May 22, 2023 at 4:00 p.m., Eastern Time**. For the avoidance of doubt and without limitation, the General Bar Date applies to claims asserted against the Debtors pursuant to section 503(b)(9) of the Bankruptcy Code (a "503(b)(9) Claim").

(b) **Rejection Bar Date**: Pursuant to the Bar Date Order, any person or entity that has a Prepetition Claim against any of the Debtors arising out of the rejection of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code that becomes effective after the entry of the Bar Date Order must submit a Proof of Claim on or before the later of (i) the General Bar Date, and (ii) any date the Court may fix in the applicable order authorizing such rejection (the "Rejection Bar Date").

(c) **Amended Schedule Bar Date**: Pursuant to the Bar Date Order, if any of the Debtors amends or supplements its Schedules, the Debtors shall give notice of such amendment to the holders of any Prepetition Claims affected thereby and such holders must submit a Proof of Claim or amend any previously filed Proof of Claim in respect of such amended scheduled Prepetition Claim or added claim as the later of (a) General Bar Date and (b) thirty-five days after the date that notice of the amendment is served on the affected claimant, which date shall be forth in the notice of amendment (the "Amended Schedule Bar Date").

(d) **Governmental Bar Date**: Pursuant to the Bar Date Order, all governmental units, as defined in section 101(27) of the Bankruptcy Code, must file Proofs of Claim against the Debtors on account of claims that arose prior to the Petition Date by **July 18, 2023 at 4:00 p.m., Eastern Time** (the "Governmental Bar Date").

2. **WHAT TO FILE.** Your filed proof of claim must conform substantially to Official Form No. 410; a case-specific proof of claim form accompanies this Notice. The Debtors are enclosing a Proof of Claim form for use in these cases (the "Claim Form"); if your claim is scheduled by the Debtors, the form also sets forth the amount of your claim as scheduled by the Debtors, the specific Debtor against which the claim is scheduled and whether the claim is scheduled as disputed, contingent or unliquidated. You will receive a different Claim Form for each claim scheduled in your name by the Debtors. You may utilize the Claim Form(s) provided by the Debtors to file your claim. Additional Claim Forms may be obtained at the following websites: www.uscourts.gov/forms/bankruptcy-forms or https:/restructuring.ra.kroll.com/genesis.

Each Claim Form must (i) be written in English; (ii) set forth (A) for any Prepetition Claim based on cryptocurrency, the number and type of units of each cryptocurrency held by the claimant as of the Petition Date or (B) solely to the extent a Prepetition Claim is not based on cryptocurrency, the amount of such Prepetition Claim denominated in United States dollars;[2] (iii) conform substantially with the Claim Forms provided by the Debtors or Official Form No. 410, as applicable; (iv) be signed by the claimant or by an authorized agent or legal representative of the claimant; and (v) include supporting documentation unless otherwise consented to by the Debtors in writing (e-mail will suffice).

In addition to the requirements set forth in the immediately preceding paragraph, any Proof of Claim asserting a 503(b)(9) Claim must also include, with specificity: (i) the amount of the 503(b)(9) Claim; (ii) the particular Debtor against which the 503(b)(9) Claim is asserted; (iii) the date of delivery of the goods purportedly delivered to a Debtor within twenty days before the Petition Date; (iv) documentation, including invoices, receipts, bills of lading and the like, identifying with specificity the particular goods for which the 503(b)(9) Claim is being asserted; (v) an identification of which goods (if any) were subject to a demand for reclamation asserted under section 546(c) of the Bankruptcy Code; and (vi) documentation or other evidence that the goods with respect to which the 503(b)(9) Claim is being filed were sold in the ordinary course of the Debtor's business.

**Your Claim Form must not contain complete social security numbers or taxpayer identification numbers (only the last four digits), a complete birth date (only the year), the name of a minor (only the minor's initials) or a financial account number (only the last four digits of such financial account).**

All entities asserting claims against more than one Debtor are required to (i) file a separate proof of claim with respect to each such Debtor and (ii) identify on each proof of claim the particular Debtor against which their claim is asserted. Any claim that fails to identify a Debtor shall be deemed as filed only against Genesis Global Capital, LLC. If more than one Debtor is listed on the form, the proof of claim will be treated as filed only against the first-listed Debtor.

3. **WHEN AND WHERE TO FILE.** Except as provided for herein, all Proofs of Claim must be submitted so as to be **actually received on or before the applicable Bar Date: IF ELECTRONICALLY:** By using the website established by the Debtors' claims and noticing agent, Kroll Restructuring Administration ("Kroll") for these Chapter 11 Cases (the "Case Website") located at https://restructuring.ra.kroll/com/genesis by following instructions for filing proofs of claim electronically. **IF BY U.S. MAIL, OVERNIGHT MAIL, DELIVERY BY HAND OR COURIER:** Genesis Inc. Claims Processing Center, c/o Prime Clerk LLC (now known as Kroll Restructuring Administration), 850 3rd Avenue, Suite 412, Brooklyn, NY 11232.

**PROOFS OF CLAIM MUST BE SUBMITTED BY MAIL, BY HAND, OR THROUGH THE CASE WEBSITE. PROOFS OF CLAIM SUBMITTED BY ELECTRONIC MEANS OTHER THAN THE CASE WEBSITE (E.G., VIA E-MAIL, FACSIMILE, TELECOPY, OR SIMILAR ELECTRONIC MEANS) WILL NOT BE ACCEPTED AND WILL NOT BE DEEMED TIMELY SUBMITTED. CLAIMS FOR WHICH PROOFS OF CLAIM NEED NOT BE FILED, INCLUDING GEMINI LENDER CLAIMS.**

The Bar Date Order further provides that certain persons or entities, whose claims otherwise would be subject to the General Bar Date, need not file Proofs of Claim. To review a copy of the Bar Date Order, please visit https://restructuring.ra.kroll.com/genesis.

In particular Gemini Trust Company, LLC ("Gemini") users (each a "Gemini Lender") holding a claim in connection with those certain loans of digital assets at Gemini to GGC (the "Gemini Borrowings") in exchange for the return of such digital assets upon request or at the expiration of a specified period and the payment by GGC of a loan fee pursuant to the relevant master loan agreements ("Gemini MLA") between GGC, Gemini and the Gemini Lender need not file Proofs of Claim. Should a Gemini Lender wish to assert a Prepetition Claim against the Debtors for an amount greater than the Gemini Lender's Gemini Borrowings in the Gemini Earn Program or Prepetition Claims other than for the repayment of Gemini Borrowings under the Gemini Earn Program, the Gemini Lender must file a proof of claim with respect to such Prepetition Claim on or before the applicable Bar Date, unless another exception to the applicable Bar Date applies.

The Bar Date Order authorized and directed Gemini, given Gemini's appointment as agent for each Gemini Lender under the Gemini MLAs, to file a single proof of claim on behalf of each and all Gemini Lenders against the Debtors on account of all Prepetition Claims for the repayment of Gemini Borrowings on or before the General Bar Date (the "Gemini Master Claim").

The Bar Date Order authorized the ad hoc group of creditors of Genesis Global Capital, LLC represented by Proskauer Rose LLP (the "Ad Hoc Group") to file a single Proof of Claim pursuant to section 501(a) of the Bankruptcy Code, together with a schedule of amounts asserted by each such member (with copies of any master loan agreements or loan term sheets to be made available to the Debtors upon request) on or before the General Bar Date, on account of the Prepetition Claims against the Debtors held by members of the Ad Hoc Group; *provided, however*, that any member of the Ad Hoc Group wanting to assert a claim, other than the amount owing pursuant to the underlying agreement and loan term sheets, shall be required to submit a Proof of Claim with respect to such additional claim on or before the General Bar Date, unless another exception to the applicable Bar Date applies.

4. **CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE BAR DATE.** ANY ENTITY WHO IS REQUIRED TO TIMELY FILE A PROOF OF CLAIM AS SET FORTH IN THIS NOTICE BUT FAILS TO DO SO WILL BE (A) FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST ANY OF THE DEBTORS AND (B) FOREVER BARRED FROM VOTING TO ACCEPT OR REJECT ANY PLAN OR PLANS OR PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CHAPTER 11 CASES ON ACCOUNT OF SUCH CLAIMS.

5. **THE DEBTORS' SCHEDULES AND ACCESS THERETO.** You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "Schedules").

Copies of the Debtors' Schedules are available for inspection on the Court's website at http://www.nysb.uscourts.gov. A login and password to the Court's Public Access to Electronic Court Records ("PACER") are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.gov. Copies of the Debtors' Schedules are also available at the Case Website at https://restructuring.ra.kroll.com/genesis. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' Claim Agent at the following address: Genesis Inc. Claims Processing Center, c/o Prime Clerk LLC (now known as Kroll Restructuring Administration), 850 3rd Avenue, Suite 412, Brooklyn, NY 11232.

If you rely on the Debtors' Schedules, it is your responsibility to determine that your Prepetition Claim is accurately listed in the Schedules in all respects. Similarly, if you are a Gemini Lender and you rely on your individual account page that may be accessed through the Gemini Earn Program's website (https://exchange.gemini.com/signin) and the Gemini mobile app, it is your responsibility to determine that the claim is accurately listed in such website and mobile app as that is the amount that will be listed for your Prepetition Claim in the Gemini Master Claim.

As set forth above, if you agree with the nature, amount and status of your Prepetition Claim as listed in the Debtors' Schedules, and if you do not dispute that your Prepetition Claim is only against the Debtor specified in the Schedules, and if your Prepetition Claim is not described as "disputed," "contingent" or "unliquidated," you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the applicable Bar Date in accordance with the procedures set forth in this Notice.

The Debtors reserve the right to (a) dispute, or to assert offsets or defenses against, any filed claim or any claim listed or reflected in the Schedules as to nature, amount, liability, priority, classification or otherwise; (b) subsequently designate any scheduled claim as disputed, contingent, or unliquidated; and (c) otherwise amend or supplement the Schedules. Nothing contained in this Notice shall preclude the Debtors from objecting to any claim, whether scheduled or filed, on any grounds.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered by this notice, such as whether the holder should file a Proof of Claim.**

Dated: April 4, 2023, New York, New York **BY ORDER OF THE COURT**
*/s/ Sean A. O'Neal*, Sean A. O'Neal, Jane VanLare, CLEARY GOTTLIEB STEEN & HAMILTON LLP, One Liberty Plaza, New York, New York 10006, Telephone: (212) 225-2000, Facsimile: (212) 225-3999, *Counsel to the Debtors and Debtors-in-Possession*

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] For the avoidance of doubt, all claims for cryptocurrency must clearly indicate (i) each type of cryptocurrency held and (ii) the number of units of each cryptocurrency held (which may be done through the table of cryptocurrency on the proposed Claim Form).

**INTERNET | COURTS**

# Fewer Voters Visited Untrustworthy Sites In 2020, Study Finds

By TIFFANY HSU

SAN FRANCISCO — Not long after misinformation plagued the 2016 election, journalists and content moderators scrambled to turn Americans away from untrustworthy websites before the 2020 vote.

A new study suggests that, to some extent, their efforts succeeded.

When Americans went to the polls in 2020, a far smaller portion had visited websites containing false and misleading narratives compared with four years earlier, according to researchers at Stanford. Although the number of such sites ballooned, the average visits among those people dropped, along with the time spent on each site.

Efforts to educate people about the risk of misinformation after 2016, including content labels and media literacy training, most likely contributed to the decline, the researchers found. Their study was published on Thursday in the journal Nature Human Behaviour.

*Efforts to educate people and moderate social media content.*

"I am optimistic that the majority of the population is increasingly resilient to misinformation on the web," said Jeff Hancock, the founding director of the Stanford Social Media Lab and the lead author of the report. "We're getting better and better at distinguishing really problematic, bad, harmful information from what's reliable or entertainment."

Still, nearly 68 million people in the United States checked out websites that were not credible, visiting 1.5 billion times in a month in 2020, the researchers estimated. That included domains that are now defunct, such as theantimedia.com and obamawatcher.com. Some people in the study visited some of those sites hundreds of times.

As the 2024 election approaches, the researchers worry that misinformation is evolving and splintering. Beyond web browsers, many people are exposed to conspiracy theories and extremism simply by scrolling through mobile apps such as TikTok. More dangerous content has shifted onto encrypted messaging apps with difficult-to-trace private channels, such as Telegram or WhatsApp.

The boom in generative artificial intelligence, the technology behind the popular ChatGPT chatbot, has also raised alarms about deceptive images and mass-produced falsehoods.

The Stanford researchers said that even limited or concentrated exposure to misinformation could have serious consequences. Baseless claims of election fraud incited a riot at the Capitol on Jan. 6, 2021. More than two years later, congressional hearings, criminal trials and defamation court cases are still addressing what happened.

The Stanford researchers monitored the online activity of 1,151 adults from Oct. 2 through Nov. 9, 2020, and found that 26.2 percent visited at least one of 1,796 unreliable websites. They noted that the time frame did not include the postelection period when baseless claims of voter fraud were especially pronounced.

That was down from an earlier, separate report that found that 44.3 percent of adults visited at least one of 490 problematic domains in 2016.

The shrinking audience may have been influenced by attempts, including by social media companies, to mitigate misinformation, according to the researchers. They noted that 5.6 percent of the visits to untrustworthy sites in 2020 originated from Facebook, down from 15.1 percent in 2016. Email also played a smaller role in sending users to such sites in 2020.

Other researchers have highlighted more ways to limit the lure of misinformation, especially around elections. The Bipartisan Policy Center suggested in a report this week that states adopt direct-to-voter texts and emails that offer vetted information.

Social media companies should also do more to discourage performative outrage and so-called groupthink on their platforms — behavior that can fortify extreme subcultures and intensify polarization, said Yini Zhang, an assistant communication professor at the University at Buffalo.

Professor Zhang, who published a study this month about QAnon, said tech companies should instead encourage more moderate engagement, even by renaming "like" buttons to something like "respect."

"For regular social media users, what we can do is dial back on the tribal instincts, to try to be more introspective and say: 'I'm not going to take the bait. I'm not going to pile on my opponent,'" she said.

With next year's presidential election looming, researchers said they are concerned about populations known to be vulnerable to misinformation, such as older people, conservatives and people who do not speak English.

More than 37 percent of people older than 65 visited misinformation sites in 2020 — a far higher rate than younger groups but an improvement from 56 percent in 2016, according to the Stanford report. In 2020, 36 percent of people who supported President Donald J. Trump in the election visited at least one misinformation site, compared with nearly 18 percent of people who supported Joseph R. Biden Jr. The participants also completed a survey that included questions about their preferred candidate.

Mr. Hancock said that misinformation should be taken seriously, but that its scale should not be exaggerated. The Stanford study, he said, showed that the news consumed by most Americans was not misinformation but that certain groups of people were most likely to be targeted. Treating conspiracy theories and false narratives as an ever-present, wide-reaching threat could erode the public's trust in legitimate news sources, he said.

"I still think there's a problem, but I think it's one that we're dealing with and that we're also recognizing doesn't affect most people most of the time," Mr. Hancock said. "If we are teaching our citizens to be skeptical of everything, then trust is undermined in all the things that we care about."

ALYSSA SCHUKAR FOR THE NEW YORK TIMES

IAN C. BATES FOR THE NEW YORK TIMES

**Jeff Hancock, left, the lead author of a report that found Americans visited fewer misleading websites in 2020 compared with 2016. "The majority of the population is increasingly resilient to misinformation on the web," he said.**

# For Judge, the Fox-Dominion Defamation Trial Is a High-Profile Test of Skills

FROM FIRST BUSINESS PAGE

most closely watched defamation case involving a media organization in decades and an important measure of how big a shield the First Amendment offers.

In the lawsuit, Dominion Voting Systems, a voting technology company, accuses Fox and some of its hosts and executives of harming its reputation by reporting unsubstantiated claims that it was involved in mass voter fraud. Fox has responded that it was reporting on newsworthy allegations made by former President Donald J. Trump and his supporters.

In pretrial rulings, Judge Davis, 61, has shown that he is "comprehensive, clear and direct," important qualities in such a prominent case, said Carl Tobias, a law professor at the University of Richmond.

"Davis seems to refrain from inserting himself into disputes, so that cases are about the merits and the litigants rather than the judge," Mr. Tobias said. "Perhaps most important, Davis displays measured judicial temperament, which is essential when the stakes are huge and emotions run high."

A judge since 2010, Judge Davis has spent the past decade on the Superior Court, overseeing cases as diverse as that of a neurosurgeon who molested his patients, a cold-case murder and a dispute over whether insurers should have to pay for fraud by a former chief executive of the Dole food empire. Cases currently on his docket include personal injury claims and mortgage mediation.

Judge Davis is also overseeing a defamation suit that bears a strong resemblance to the Fox-Dominion trial. Smartmatic, another voting technology company, is suing Newsmax, another right-wing cable channel, over similar accusations of unproven allegations of rigging votes in the election. That case is not as far along as the Fox-Dominion suit.

Jury selection in the Fox-Dominion case began on Thursday. Opening statements are expected on Monday, and the trial is scheduled to continue through late May.

A series of recent pretrial rulings has provided more clarity on how Judge Davis operates, and shows he has taken steps to reassure both parties that he had not predetermined the outcomes.

In a hearing on March 22, as Judge Davis commended the professionalism of lawyers for both Fox and Dominion, he warned that a trial would be "a truth-seeking situation and not a game of gotcha and not a game of playing around with me."

But he has also made some important decisions that have shaped the parameters of the case. In a setback for Fox in late March, Judge Davis dismissed the news network's argument that the First Amendment protected it on the grounds that it accurately reported on the voter fraud allegations and that its hosts' endorsement of the false claims were covered as "opinion."

*Lauded as reasonable and evenhanded in a wide range of cases.*

"The evidence developed in this civil proceeding demonstrates that is CRYSTAL clear that none of the statements relating to Dominion about the 2020 election are true," Judge Davis wrote in a 130-page decision.

It was a partial win for Dominion, which still has to convince the jury that Fox acted with "actual malice," a legal standard for defamation that requires proof that the defendant either knowingly spread lies or was so reckless that it amounted to a disregard of abundant evidence that the claims were not true.

On Tuesday, Judge Davis dealt a blow to Dominion, ruling that its lawyers could not refer to the Jan. 6, 2021, insurrection at the Capitol because it could prejudice the jury. At that hearing, he also limited how much Dominion's legal team could tell jurors about death threats that the company's employees had received, saying there should be no mention of the specific content of the threats.

On Wednesday, the judge scorned Fox's lawyers over evidence in the case — including recordings of conversations between the network's hosts and people who claimed to have knowledge of the supposed fraud — that is only just coming to light. He indicated that he was likely to appoint a special master to investigate whether they were deliberately withholding relevant evidence, and ruled that Dominion would be able to redo depositions of any witnesses at Fox's expense.

"Judge Davis has lived with, and labored mightily on bringing to a fair resolution, what may be the most consequential defamation case since N.Y.T. v. Sullivan," Mr. Tobias said, referring to the 1964 Supreme Court decision that established the need for a plaintiff to prove that false information was published with "actual malice."

The judge's decisions, even small ones, have gotten plenty of media attention. But that will surely pale in comparison with the scrutiny to come, as news outlets from around the world descend on the unassuming courthouse in Wilmington, Del., for the trial, which is likely to be punctuated by appearances by Fox hosts and leaders, including Tucker Carlson, Maria Bartiromo, Mr. Murdoch, his son Lachlan, and Suzanne Scott, the chief executive of Fox News.

There are already limits on how the proceedings can be covered, which may help dampen the spectacle somewhat: No video or audio is allowed to be broadcast from the courtroom, and reporters in the courtroom will not be allowed to use the internet.

Judge Davis declined to comment for this article, as did representatives for Dominion and Fox.

A graduate of the University of Virginia, Judge Davis attended the Emory University School of Law, graduating in 1992. After a stint at the Miles & Stockbridge law firm in Baltimore, he became a partner in the Wilmington office of the multinational firm Skadden, Arps, Slate, Meagher & Flom, where he worked as a commercial litigator specializing in corporate restructuring.

Jack Markell, Delaware's Democratic governor at the time, appointed Judge Davis in 2010 to the Court of Common Pleas, which oversees everyday criminal matters, such as misdemeanors and motor vehicle offenses, and civil cases without a jury.

In November 2012, Governor Markell nominated Judge Davis to join the Superior Court, which has jurisdiction over most criminal and civil cases in Delaware, and has no monetary limit on what it can award in damages.

Judge Davis said in a news release announcing his nomination that he had worked to speed up civil trials in the Common Pleas Court with the creation of an expedited docket "so that we can resolve these disputes more quickly and efficiently."

"I look forward to contributing in the same way on Superior Court if I am confirmed," he said.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: TRICIDA, INC.,[1] Debtor. | Chapter 11<br>Case No. 23-10024 (JTD) |
|---|---|

**Hearing Date: May 19, 2023 at 10:00 a.m. (ET)**
**Obj. Deadline: May 5, 2023 at 4:00 p.m. (ET)**

**NOTICE OF (I) HEARING TO CONSIDER CONFIRMATION OF THE CHAPTER 11 PLAN OF LIQUIDATION FOR TRICIDA INC. AND (II) RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE** that on March 27, 2023, the United States Bankruptcy Court for the District of Delaware entered an order [Docket No. 327] (the "Solicitation Procedures Order"): (a) approving the *Fourth Amended Disclosure Statement for the Chapter 11 Plan of Liquidation for Tricida, Inc.* [Docket No. 318] (including all exhibits thereto and as may be amended, supplemented, or modified from time to time, the "Disclosure Statement"), (b) approving the solicitation and voting procedures with respect to the proposed *Third Amended Chapter 11 Plan of Liquidation for Tricida, Inc.* [Docket No. 306] (as may be amended, modified, amended, or supplemented from time to time, the "Plan")[2]; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Package"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **May 19, 2023 at 10:00 a.m. prevailing Eastern Time**, before the Honorable John T. Dorsey, United States Bankruptcy Judge, via Zoom or at the Court, 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801.

**Voting Record Date.** The voting record date was **March 24, 2023**, except as otherwise provided in the Solicitation Procedures (the "Voting Record Date"), which is the date for determining which Holders of Claims in Classes 3, 4, 5, and 6 are entitled to vote on the Plan.

**Voting Deadline.** The deadline for voting on the Plan is on **May 5, 2023 at 4:00 p.m. prevailing Eastern Time** (the "Voting Deadline"). If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan, you **must**: (a) follow the instructions carefully; (b) complete **all** of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **actually received** by the Debtor's voting and solicitation agent, Kurtzman Caron Consultants LLC ("KCC" or the "Voting Agent"), on or before the Voting Deadline. **A failure to follow such instructions may disqualify your vote.**

**ARTICLE IX** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**Plan Objection Deadline**. The deadline for filing objections to the Plan is **May 5, 2023 at 4:00 p.m. prevailing Eastern Time** (the "Plan Objection Deadline"). All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline: (1) the Debtor, 7000 Shoreline Court, Suite 201, South San Francisco, CA 94080, Attn: Bob McKague (bmckague@tricida.com); (2) counsel to the Debtor, Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019, Attn: Geoff Levin (glevin@sidley.com) and Sam Newman (sam.newman@sidley.com); (3) Young Conaway Stargatt & Taylor LLP, 1000 N. King St., Wilmington, Delaware 19801, Attn: Sean Beach (sbeach@ycst.com) and Allison Mielke (amielke@ycst.com); and (4) The Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Timothy J. Fox Jr.

**Obtaining Solicitation Materials**. The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received electronic access to the solicitation materials), please feel free to contact the Debtor's Voting Agent, by: (a) writing to Tricida, Inc. Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtor's restructuring hotline at (866) 476-0898 within the United States or Canada or (781) 575-2114 if outside the United States or Canada or emailing TricidaInfo@kccllc.com; or (c) visiting the Debtor's restructuring website at https://www.kccllc.net/tricida. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov/. Please be advised that the Voting Agent is authorized to answer any questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

**Notice of the Assumption or Rejection of Executory Contracts.** Under the terms of Article V of the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor not otherwise assumed or rejected will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date. Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Documents or this Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

**BINDING NATURE OF THE PLAN: IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASE OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

[1] The Debtor in this chapter 11 case, together with the last four digits of the Debtor's federal tax identification number, is Tricida, Inc. (2526). The Debtor's service address is 7000 Shoreline Court, Suite 201, South San Francisco, CA 94080.

[2] Capitalized terms used herein and not otherwise defined has the meanings given to them in the *Third Amended Chapter 11 Plan of Liquidation for Tricida, Inc.*, dated March 21, 2023.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re:<br>Genesis Global Holdco, LLC, *et al.*,[1] Debtors. | Chapter 11<br>Case No.: 23-10063 (SHL)<br>Jointly Administered |
|---|---|

**NOTICE OF DEADLINES FOR SUBMITTING PROOFS OF CLAIM ((GENERAL CLAIMS BAR DATE: MAY 22, 2023 AT 4:00 PM (ET)))**

**PLEASE TAKE NOTICE THAT ANY ENTITY THAT FILES A PROOF OF CLAIM IN THESE CHAPTER 11 CASES SHALL BE DEEMED, FOR THE PURPOSES OF THE PROOF OF CLAIM AND POSSIBLY RELATED MATTERS, TO HAVE SUBMITTED TO THE JURISDICTION OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK. ANY ENTITY WHO IS REQUIRED TO TIMELY FILE A PROOF OF CLAIM AS SET FORTH IN THIS NOTICE BUT FAILS TO DO SO WILL BE (A) FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH PREPETITION CLAIM AGAINST ANY OF THE DEBTORS AND (B) FOREVER BARRED FROM VOTING TO ACCEPT OR REJECT ANY PLAN OR PLANS OR PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CHAPTER 11 CASES ON ACCOUNT OF SUCH PREPETITION CLAIMS.**

On April 4, 2023, the United States Bankruptcy Court for the Southern District of New York entered an Order (ECF No. 200) (the "Bar Date Order") in the above-captioned jointly-administered Chapter 11 Cases of Genesis Global Holdco, LLC and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), establishing **May 22, 2023 at 4:00 p.m., Eastern Time** (the "General Bar Date") as the general deadline for each entity (including individuals, partnerships, corporations, joint ventures, trusts and governmental units) to submit a Proof of Claim (defined below) against any of the Debtors.

The General Bar Date, the other deadlines established by the Bar Date Order and the procedures set forth below for filing proofs of claim apply to all claims against the Debtors that arose prior to the date, as indicated in the above table, on which each Debtor commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), except for claims described in paragraph 5 of the Bar Date Order as being excluded. Governmental units have until **July 18, 2023 at 4:00 p.m., Eastern Time** to file proofs of claims (the "Governmental Bar Date").

**1. WHO MUST FILE A PROOF OF CLAIM.** You MUST submit a Claim Form (defined below) and any required supporting documentation indicated thereon (together, a "Proof of Claim") to vote on a chapter 11 plan filed by the Debtors or to share in distributions from the Debtors' bankruptcy estates if you have a claim that arose prior to **January 19, 2023** (as applicable to each Debtor, the "Petition Date" and any such claim, a "Prepetition Claim"), and it is not one of the types of claim described in paragraph 5 of the Bar Date Order. Prepetition Claims based on acts or omissions of the Debtors that occurred before the Petition Date must be filed on or prior to the General Bar Date (or, if applicable, one of the other deadlines described below), even if such claims are not fixed, liquidated or certain as of the applicable deadline or did not mature or become fixed, liquidated or certain before the Petition Date.

The Bar Date Order establishes the following bar dates for filing proofs of claim in these Chapter 11 Cases (collectively, the "Bar Dates"):

(a) **General Bar Date:** Pursuant to the Bar Date Order and except as otherwise described in this Notice, all entities that hold a claim against any of the Debtors that arose prior to the Petition Date (whether secured, unsecured priority, or unsecured nonpriority) shall file a proof of claim as described in this Notice by **May 22, 2023 at 4:00 p.m., Eastern Time**. For the avoidance of doubt and without limitation, the General Bar Date applies to claims asserted against the Debtors pursuant to section 503(b)(9) of the Bankruptcy Code (a "503(b)(9) Claim").

(b) **Rejection Bar Date**: Pursuant to the Bar Date Order, any person or entity that has a Prepetition Claim against any of the Debtors arising out of the rejection of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code that becomes effective after the entry of the Bar Date Order must submit a Proof of Claim on or before the later of (i) the General Bar Date, and (ii) any date the Court may fix in the applicable order authorizing such rejection (the "Rejection Bar Date").

(c) **Amended Schedule Bar Date**: Pursuant to the Bar Date Order, if any of the Debtors amends or supplements its Schedules, the Debtors shall give notice of such amendment to the holders of any Prepetition Claims affected thereby and such holders must submit a Proof of Claim or amend any previously filed Proof of Claim in respect of such amended scheduled Prepetition Claim or added claim as the later of (a) General Bar Date and (b) thirty-five days after the date that notice of the amendment is served on the affected claimant, which date shall be forth in the notice of amendment (the "Amended Schedule Bar Date").

(d) **Governmental Bar Date**: Pursuant to the Bar Date Order, all governmental units, as defined in section 101(27) of the Bankruptcy Code, must file Proofs of Claim against the Debtors on account of claims that arose prior to the Petition Date by **July 18, 2023 at 4:00 p.m., Eastern Time** (the "Governmental Bar Date").

**2. WHAT TO FILE.** Your filed Proof of Claim must conform substantially to Official Form No. 410; a case-specific proof of claim form accompanies this Notice. The Debtors are enclosing a Proof of Claim form for use in these cases (the "Claim Form"); if your claim is scheduled by the Debtors, the form also sets forth the amount of your claim as scheduled by the Debtors, the specific Debtor against which the claim is scheduled and whether the claim is scheduled as disputed, contingent or unliquidated. You will receive a different Claim Form for each claim scheduled in your name by the Debtors. You may utilize the Claim Form(s) provided by the Debtors to file your claim. Additional Claim Forms may be obtained at the following websites: www.uscourts.gov/forms/bankruptcy-forms or https://restructuring.ra.kroll.com/genesis.

Each Claim Form must (i) be written in English; (ii) set forth (A) for any Prepetition Claim based on cryptocurrency, the number and type of units of each cryptocurrency held by the claimant as of the Petition Date or (B) solely to the extent a Prepetition Claim is not based on cryptocurrency, the amount of such Prepetition Claim denominated in United States dollars;[2] (iii) conform substantially with the Claim Forms provided by the Debtors or Official Form No. 410, as applicable; (iv) be signed by the claimant or by an authorized agent or legal representative of the claimant; and (v) include supporting documentation unless otherwise consented to by the Debtors in writing (e-mail will suffice).

In addition to the requirements set forth in the immediately preceding paragraph, any Proof of Claim asserting a 503(b)(9) Claim must also include, with specificity: (i) the amount of the 503(b)(9) Claim; (ii) the particular Debtor against which the 503(b)(9) Claim is asserted; (iii) the date of delivery of the goods purportedly delivered to a Debtor within twenty days before the Petition Date; (iv) documentation, including invoices, receipts, bills of lading and the like, identifying with specificity the particular goods for which the 503(b)(9) Claim is being asserted; (v) an identification of which goods (if any) were subject to a demand for reclamation asserted under section 546(c) of the Bankruptcy Code; and (vi) documentation or other evidence that the goods with respect to which the 503(b)(9) Claim is being filed were sold in the ordinary course of the Debtor's business.

**Your Claim Form must not contain complete social security numbers or taxpayer identification numbers (only the last four digits), a complete birth date (only the year), the name of a minor (only the minor's initials) or a financial account number (only the last four digits of such financial account).**

All entities asserting claims against more than one Debtor are required to (i) file a separate proof of claim with respect to each such Debtor and (ii) identify on each proof of claim the particular Debtor against which their claim is asserted. Any claim that fails to identify a Debtor shall be deemed as filed only against Genesis Global Holdco, LLC. If more than one Debtor is listed on the form, the proof of claim will be treated as filed only against the first-listed Debtor.

**3. WHEN AND WHERE TO FILE.** Except as provided for herein, all Proofs of Claim must be submitted so as to be **actually received on or before the applicable Bar Date: IF ELECTRONICALLY:** By using the website established by the Debtors' claims and noticing agent, Kroll Restructuring Administration ("Kroll") for these Chapter 11 Cases (the "Case Website") located at https://restructuring.ra.kroll.com/genesis by following instructions for filing proofs of claim electronically. **IF BY U.S. MAIL, OVERNIGHT MAIL, DELIVERY BY HAND OR COURIER:** Genesis Inc. Claims Processing Center, c/o Prime Clerk LLC (now known as Kroll Restructuring Administration), 850 3rd Avenue, Suite 412, Brooklyn, NY 11232.

**PROOFS OF CLAIM MUST BE SUBMITTED BY MAIL, BY HAND, OR THROUGH THE CASE WEBSITE. PROOFS OF CLAIM SUBMITTED BY ELECTRONIC MEANS OTHER THAN THE CASE WEBSITE (E.G., VIA E-MAIL, FACSIMILE, TELECOPY, OR SIMILAR ELECTRONIC MEANS) WILL NOT BE ACCEPTED AND WILL NOT BE DEEMED TIMELY SUBMITTED. CLAIMS FOR WHICH PROOFS OF CLAIM NEED NOT BE FILED, INCLUDING GEMINI LENDER CLAIMS.**

The Bar Date Order further provides that certain persons or entities, whose claims otherwise would be subject to the General Bar Date, need not file Proofs of Claim. To review a copy of the Bar Date Order, please visit https://restructuring.ra.kroll.com/genesis.

In particular Gemini Trust Company, LLC ("Gemini") users (each a "Gemini Lender") holding a claim in connection with those certain loans of digital assets to GGC (the "Gemini Borrowings") in exchange for the return of such digital assets upon request or at the expiration of a specified period and the payment by GGC of a loan fee pursuant to the relevant master loan agreements ("Gemini MLA") between GGC, Gemini and the Gemini Lender need not file Proofs of Claim. Should a Gemini Lender wish to assert a Prepetition Claim against the Debtors for an amount greater than the Gemini Lender's Gemini Borrowings in the Gemini Earn Program or Prepetition Claims other than for the repayment of Gemini Borrowings under the Gemini Earn Program, the Gemini Lender must file a proof of claim with respect to such Prepetition Claim on or before the applicable Bar Date, unless another exception to the applicable Bar Date applies.

The Bar Date Order authorized and directed Gemini, given Gemini's appointment as agent for each Gemini Lender under the Gemini MLAs, to file a single proof of claim on behalf of each and all Gemini Lenders against the Debtors on account of all Prepetition Claims for the repayment of Gemini Borrowings on or before the General Bar Date (the "Gemini Master Claim").

The Bar Date Order authorized the ad hoc group of creditors of Genesis Global Capital, LLC represented by Proskauer Rose LLP (the "Ad Hoc Group") to file a single Proof of Claim pursuant to section 501(a) of the Bankruptcy Code, together with a schedule of amounts asserted by each such member (with copies of any master loan agreements or loan term sheets to be made available to the Debtors upon request) on or before the General Bar Date, on account of the Prepetition Claims against the Debtors held by members of the Ad Hoc Group; *provided, however*, that any member of the Ad Hoc Group wanting to assert a claim, other than the amount owing pursuant to the underlying agreement and loan term sheets, shall be required to submit a Proof of Claim with respect to such additional claim on or before the General Bar Date, unless another exception to the applicable Bar Date applies.

**4. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE BAR DATE.** ANY ENTITY WHO IS REQUIRED TO TIMELY FILE A PROOF OF CLAIM AS SET FORTH IN THIS NOTICE BUT FAILS TO DO SO WILL BE (A) FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST ANY OF THE DEBTORS AND (B) FOREVER BARRED FROM VOTING TO ACCEPT OR REJECT ANY PLAN OR PLANS OR PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CHAPTER 11 CASES ON ACCOUNT OF SUCH PREPETITION CLAIMS.

**5. THE DEBTORS' SCHEDULES AND ACCESS THERETO.** You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "Schedules").

Copies of the Debtors' Schedules are available for inspection on the Court's website at http://www.nysb.uscourts.gov. A login and password to the Court's Public Access to Electronic Court Records ("PACER") are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.gov. Copies of the Debtors' Schedules are also available at the Case Website at https://restructuring.ra.kroll.com/genesis. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' Claim Agent at the following address: Genesis Inc. Claims Processing Center, c/o Prime Clerk LLC (now known as Kroll Restructuring Administration), 850 3rd Avenue, Suite 412, Brooklyn, NY 11232.

If you rely on the Debtors' Schedules, it is your responsibility to determine that your Prepetition Claim is accurately listed in the Schedules in all respects. Similarly, if you are a Gemini Lender and you rely on your individual account page that may be accessed through the Gemini Earn Program's website (https://exchange.gemini.com/signin) and the Gemini mobile app, it is your responsibility to determine that the claim is accurately listed in such website and mobile app as that is the amount that will be listed for your Prepetition Claim in the Gemini Master Claim.

As set forth above, if you agree with the nature, amount and status of your Prepetition Claim as listed in the Debtors' Schedules, and if you do not dispute that your Prepetition Claim is only against the Debtor specified in the Schedules, and if your Prepetition Claim is not described as "disputed," "contingent" or "unliquidated," you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the applicable Bar Date in accordance with the procedures set forth in this Notice.

The Debtors reserve the right to (a) dispute, or to assert offsets or defenses against, any filed claim or any claim listed or reflected in the Schedules as to nature, amount, liability, priority, classification or otherwise; (b) subsequently designate any scheduled claim as disputed, contingent, or unliquidated; and (c) otherwise amend or supplement the Schedules. Nothing contained in this Notice shall preclude the Debtors from objecting to any claim, whether scheduled or filed, on any grounds.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered by this notice, such as whether the holder should file a Proof of Claim.**

Dated: April 4, 2023, New York, New York **BY ORDER OF THE COURT**
/s/ Sean A. O'Neal Sean A. O'Neal, Jane VanLare, CLEARY GOTTLIEB STEEN & HAMILTON LLP, One Liberty Plaza, New York, New York 10006, Telephone: (212) 225-2000, Facsimile: (212) 225-3999, *Counsel to the Debtors and Debtors-in-Possession*

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] For the avoidance of doubt, all claims for cryptocurrency must clearly indicate (i) each type of cryptocurrency held and (ii) the number of units of each cryptocurrency held (which may be done through the table of cryptocurrency on the proposed Claim Form).