Benjamin Mintz
Marcus Asner
Justin Imperato
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
Tel: (212) 836-8000
Facsimile: (212) 836-8689
Email: benjamin.mintz@arnoldporter.com
Email: marcus.asner@arnoldporter.com
Email: justin.imperato@arnoldporter.com

*Counsel to Soichiro "Michael" Moro*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No. 23-10063 (SHL) |
| Debtors. | (Jointly Administered) |

**REPLY IN SUPPORT OF THE MOTION FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO ALLOW FOR ADVANCEMENTS AND PAYMENTS UNDER D&O INSURANCE POLICY**

Soichiro "Michael" Moro (the "Insured") files this reply (this "Reply") in further support of his *Motion for Entry of An Order Modifying The Automatic Stay, To The Extent Applicable, To Allow for Advancements and Payments Under D&O Insurance Policy* [ECF No. 165] (the "Motion")[2] and in response to:

- the *Objection of The Official Committee of Unsecured Creditors To The Motion For Entry of An Order Modifying The Automatic Stay, To The Extent Applicable, To Allow For*

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Capitalized terms used but not otherwise defined in this Reply shall have the meanings given to those terms in the Motion.

*Advancements and Payments Under D&O Insurance Policy* [ECF No. 235] (the "Committee Objection"); and

- the *Debtors' Response To Motion For Entry of An Order Modifying The Automatic Stay, To The Extent Applicable, To Allow For Advancements and Payments Under D&O Insurance Policy* [ECF No. 234] (the "Debtors' Statement").

The Committee Objection should be overruled and the Motion should be granted. In support of this Reply and in further support of the Motion, the Insured respectfully submits the *Declaration of Marcus A. Asner in Support of The Motion For Entry of An Order Modifying The Automatic Stay, To The Extent Applicable, To Allow For Advancements and Payments Under D&O Insurance Policy* and states as follows:

## PRELIMINARY STATEMENT

1. The Debtors do not object to the relief sought in the Motion. In fact, the Debtors' Statement suggests that this Court could go further and lift the stay for ***all current and former directors and officers*** to submit requests for coverage under the D&O Policy ***and the E&O Policy and Excess Policies***. The Insured does not object to that result; current and former directors and officers covered by the Debtors' insurance policies, as well as the Debtors themselves, have the contractual right—indeed, a priority right—to submit claims to the insurers under the applicable insurance policies.

2. This now contested Motion is before the Court for one reason: The Committee wants to pursue causes of action against the directors and officers and recover the entire $2.5 million available under the D&O Policy as well as the $17.5 million of additional coverage under the E&O Policy and Excess Policies for distributions to unsecured creditors to the exclusion of others that are entitled to coverage under the same policies. That result is inequitable and inconsistent with the D&O Policy (and the other policies) and does not find support in the Bankruptcy Code, applicable case law, or the D&O Policy's and other policies' terms.

2

3. More particularly, the Committee seeks to invoke the automatic stay in order to allow the D&O Policy proceeds to be exhausted and thereby permanently prevent the Insured from enforcing his *priority* right to the policy proceeds. In effect, the Committee is using the stay to subordinate the Insured's first priority right to the proceeds. That is not proper.

4. To the extent the stay applies (which is not conceded), this Court must lift the automatic stay upon a movant's showing that there is cause to do so. *See* 11 U.S.C. § 362(d)(1). The Insured has demonstrated as a matter of law that cause exists to lift the stay to allow him to enforce his rights and demand and receive proceeds payable under the D&O Policy and authorize the Insurer to advance such proceeds to the Insured for his defense costs. *See* Motion ¶¶ 26-31. Accordingly, the Motion should be granted.

## REPLY

**A. The Court Should Reject the Committee Objection**

5. The Court should reject the Committee Objection because it was filed in violation of the D&O Policy. The D&O Policy provides that "[i]n the event of bankruptcy or insolvency of the **Insured Entity**, the **Insureds** shall waive and release any automatic stay or injunction in such proceeding that may apply to this Policy or its proceeds, and agree not to oppose or object to any efforts by the Insurer or any **Insured** to obtain relief from any such stay or injunction." D&O Policy at 11-12 (emphasis in original). While the Debtors reserved their rights with respect to the enforceability of that provision, the Debtors have not opposed the Motion.

6. The Committee should not be permitted to evade the limitations of the D&O Policy and other policies to which the Debtors and the estates are bound at the same time that it seeks to gain benefits under that same policy. If it wants to avail itself of the benefits of the policy, it must accept the burdens including the waiver of the automatic stay, the agreement not to oppose stay

relief, and the contractually subordinated property interest. Accordingly, the Court should not permit the Committee to end run around a restriction enforceable against the Debtors.

7.    This limitation in the D&O Policy is plainly intended to protect the rights of the directors and officers and enable them to enforce their priority rights to coverage under the policy. The Committee Objection flies in the face of that. Even if this Court is inclined to consider the Committee Objection, the Court should overrule it for the reasons set forth below.

**B. Ample Cause Exists to Lift the Stay**

8.    The D&O Policy here provides direct coverage to both the Insured and the Debtors. In these instances, "courts have held that 'the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.'" *In re MF Global Holdings Ltd.*, 469 B.R. 177, 190–91 (Bankr. S.D.N.Y. 2012).

9.    The estate's property interest in the policy is contractually subordinate to the directors' and officers' priority Side-A coverage. Its property interest under Section 541 is accordingly limited. The automatic stay does not expand and cannot be used to enhance a debtor's property interest. *See In re M.J. & K. Co., Inc.*, 161 B.R. 586, 593 (Bankr. S.D.N.Y. 1993) (holding the filing of a Chapter 11 petition did not expand the debtor's rights under a license agreement for purposes of determining what estate property was protected by the automatic stay). The Committee's objection seeks to do just that —invoke the automatic stay as an improper means of elevating the Debtors' property interest from a subordinated claim to a priority claim. Thus, the requested relief does not adversely impact the estate's property interest insofar as that interest is by its terms contractually subordinate.

10. To the extent that the stay applies, "cause" under 11 U.S.C. § 362(d) exists to warrant relief from the stay to allow the Insured to enforce his rights and demand and receive proceeds payable under the D&O Policy and authorize the Insurer to advance such proceeds to the Insured for the Insured's defense costs. *See* Motion ¶¶ 26-31.

11. The Committee's stated goal of exhausting the policy limits before the Insured is permitted to enforce his rights under the policy is ample cause in and of itself to warrant stay relief. This effort by the Committee goes beyond the purpose and scope of the automatic stay which, as noted, does not expand a debtor's property interests.

12. The Insured's Side-A coverage in the D&O Policy includes the rights contained in the Payment Provision, which specifies that when covered claims exceed the limit of coverage, payment of Side-A coverage takes precedence over any right of payment for Side-B or Side-C coverage. According to the Committee though, the Payment Provision is not implicated here because the Insured has not demonstrated that his defense cost losses exceed the coverage limit. The Committee's argument is a classic misdirection: either the total losses of the Insured and other insured parties including the Debtors do not exceed the coverage limit, or the total losses do in fact exceed the coverage limit. In the former case, both the Insured and the Debtors can submit their claims and there is adequate coverage for everyone. In that instance, the relief requested should not be controversial in any way since all of the insureds including the Debtors and the Insured can be reimbursed in full under the policies. In the latter case, where the losses do exceed the coverage limit, the Insured would be harmed if the stay relief is not granted particularly if the policy limits were exhausted before he could advance his claim. In contrast, the Debtors' property interests would not be harmed because those interests are contractually subordinated to the payment rights of the Insured. Again, the Debtors can only be viewed as facing harm if the automatic stay is

improperly used to elevate the Debtors' contractually subordinated property interest. Thus, in either scenario, the Insured is entitled to coverage under the D&O Policy and the Debtors' property interests are not adversely affected. In contrast, denial would unfairly harm the Insured and undermine and potentially eliminate the Insured's contractual rights.

13. Next, the Committee asserts that lifting the stay to allow the Insured to request advancements and payments under the D&O Policy would cause harm to the Debtors' estates that outweighs the harm to the Insured by keeping the stay in place. *See* Committee Objection ¶ 29. That argument does not stand scrutiny.

14. The Committee objects to the Motion claiming the Debtors will be harmed if the stay is lifted because, among other reasons, the D&O Policy is a "wasting policy" that covers both the Debtors and the Insured and every dollar paid to the Insured under Side-A will reduce the proceeds available to the Debtors under Side-B and Side-C. *See* Committee Objection ¶¶ 17-19, 30-31. More specifically, the Committee's concern is that insurance proceeds will not be available to the Debtors "to cover Losses for Securities Claims against the Debtors as well as any Losses the Debtors incur in respect of indemnification obligations" should the stay be lifted for the Insured to submit claims for defense costs under Side-A. *Id.* ¶ 19 ("not only is the SEC Complaint against the Debtors currently pending, but there are also other ongoing regulatory investigations as well as private actions . . . related to the Debtors' crypto operations); *see id.* ¶¶ 30-31.

15. That argument fails, including for the reasons noted above regarding the subordinated nature of the Debtors' property interest. Indeed, the *Adelphia* court has already implicitly rejected this very same argument: the court recognized that debtor entity coverage requests could be significant but nevertheless lifted the stay because "in essence and at its core, a D & O policy remains a safeguard of officer and director interests and not a vehicle for corporate

6

protection, . . . and that bankruptcy courts should be wary of impairing the contractual rights of directors and officers even in cases where the policies provide entity coverage as well." *In re Adelphia Commc'ns Corp.*, 285 B.R. 580, 598 (Bankr. S.D.N.Y. 2002), *vacated and remanded on other grounds*, 298 B.R. 49 (S.D.N.Y. 2003) ("*Adelphia*") (internal quotations omitted)).[3]

16.     The Committee asserts that lifting the stay would cause further harm as it would limit the unsecured creditors' ability to recover any judgment against the Debtors' current or former directors and officers "in the event the Committee were to commence and prevail on litigation against them." Committee Objection ¶ 29. This argument is not a basis to deny the Motion and was squarely rejected by the court in *In re Nat'l Fish & Seafood, Inc.*, Case No. 19-11824-FJB, ECF No. 155, at *8 (Bankr. D. Mass. Feb. 26, 2021). There, the court held: "As the Movants have need of their A-side coverage now and in any event enjoy contractual priority over B- and C- side coverage, regardless of timing, ***the Trustee's concern for protection of potential B- and C-side Coverage is not a basis for denying the relief the Movants seek***." *Id.* (emphasis added). Indeed, in this regard, the Committee is not seeking protection of property of the estates and its objection should be overruled. *See id.* (holding the Chapter 7 trustee "has cited no provision in the D&O Policy, and I have found none, on the basis of which he, either as holder of the Debtor's rights under the policy or as a (potential) judgment creditor on the claims for which the Movants' are seeking A-side coverage, would have any right to control the apportionment of A-side

---

[3] The Committee asks this Court to disregard the *Adelphia* decision because the debtors' need for insurance coverage in that case was hypothetical and speculative. *See* Committee Objection ¶ 30. That is wrong: Judge Gerber noted in *Adelphia* that entity coverage claims against debtor Adelphia Communications Corporation could ultimately be significant but nevertheless lifted the stay for directors and officers to submit defense cost reimbursement requests under the D&O policies. *See id*. Indeed, the *Enron* bankruptcy court lifted the stay to permit insurers to advance defense costs when, at the time, there were significant securities claims pending against debtor Enron Corporation. *Cf. In re Enron Corp.*, No. 01-16034 (AJG), 2002 WL 1008240, at *1 (Bankr. S.D.N.Y. May 17, 2002) (lifting the stay to permit the insurer to advance Enron directors' and officers' defense costs) *with Newby, et al. v. Enron Corp., et al.*, No. H-01-3624, ECF No. 1 (S.D. Tex. Oct. 22, 2001) (class action securities fraud complaint filed against Enron Corporation and certain of its officers and directors).

7

Coverage as between defense costs and payment of the judgment. This particular stick is not part of the bundle of rights that constitute the estate's property here. Accordingly, it too is not a basis on which the Court may or should deny the relief sought.").[4]

17. While the Debtors will not be harmed if the stay is lifted, the Insured will be harmed if the stay remains in place. He has a real need for the coverage and has and will continue to suffer material monetary harm if he were denied access to proceeds of the D&O Policy to cover his defense costs. *See* Declaration ¶¶ 5-13. Again, the Committee's stated purpose to exhaust the policy limits and thereby undermine the Insured's priority right under Side A is indisputable evidence of the harm the Insured faces.

18. The Committee asserts that the Insured has not met his evidentiary burden to lift the stay because, among other reasons, he failed to demonstrate the: (i) harm he would suffer if the Motion were denied; (ii) other assets to which he has access; (iii) exact amount of his defense costs to date; (iv) specific proceedings and investigations for which he seeks defense costs; and (v) nature of the causes of action asserted against him. *See* Committee Objection ¶¶ 32-33. In support of its view that the Court should deny the Motion, the Committee cites to Judge Dorsey's recent decision in *In re FTX Trading, Ltd.* where he denied Samuel Bankman-Fried's lift stay motion to proceed against a D&O policy for the advancement and payment of his defense costs. *See* Case No. 22-11068, April 12, 2023 Hr'g Tr. at 53:7-8 (Bankr. D. Del. April 12, 2023); Committee Objection ¶ 33. Notably, the Committee fails to disclose a key distinction between the lift stay motion in *FTX Trading* and this Motion: the FTX debtors agreed to retain Covington &

---

[4] The Committee also asserts that lifting the stay for the Insured will harm the Debtors and interfere with their Chapter 11 cases by opening the floodgates for others to seek similar stay relief. *See* Committee Objection ¶¶ 29, 36. That argument fails because granting the relief sought in the Motion will not harm the Debtors for the reasons noted above regarding the subordinated nature of the Debtors' property interest in the policy. To the extent that the Insured and other insureds have priority rights to the policy proceeds, that is their contractual right and permitting the enforcement of those rights does not impair the Debtors' contractually subordinated property interests.

8

Burling (and pay the fees of that firm) to represent certain directors and officers cooperating and providing information to the FTX debtors, just as the Insured is doing here for the Debtors. *See In re FTX Trading, Ltd.*, Case No. 22-11068 (JTD), *Declaration* at ECF No. 675 ¶ 5 (ordinary course professional declaration from Covington & Burling LLP stating "[t]he Debtors have requested, and the Firm has agreed, to provide services to the Debtors, and the Firm has consented to provide such services (the "Services"). The Services include, without limitation, the following: ***to represent certain current and former employees of the Debtors in connection with ongoing investigations by the U.S. Government, as well as related inquiries from counsel for the Debtors and other third-parties***." (emphasis added)).

19. The relevant facts are not in dispute and the Motion and this Reply demonstrate that the stay should be lifted as a matter of law. However, to further aid the Court in making its determination, the Insured is filing the Declaration contemporaneously with this Reply. There can be little to no dispute that the Insured would suffer irreparable harm if the Motion is denied: he has incurred significant defense costs to date for which he has not been reimbursed in connection with the Civil Cases and Investigations that he is involved in stemming from his various roles at the various Genesis entities, and there is potential the D&O Policy will be exhausted before he receives any reimbursement of his defense costs (and indeed that is the Committee's stated intent). Other factual evidence the Committee Objection claims the Motion lacks is wholly irrelevant to the relief sought.

20. Nevertheless, the Declaration discloses much of the information the Committee asserts the Motion lacks. Neither it, the Motion, nor this Reply, however, identifies any litigation in which the Insured is a defendant nor do those pleadings set forth the pending lawsuits, investigations, and disputes (besides the SEC Action) for which the Insured seeks to recover his

9

defense costs. As the Debtors and the Committee are well aware, there are a number of governmental investigations involving the Insured and it would not have been nor is it appropriate to publicly divulge the specifics of those investigations for a variety of reasons that this Court should appreciate. The Insured is, however, prepared to disclose the details of those investigations to the Court *in camera*. *See* Declaration ¶ 5. Debtors' counsel also has sought information and material from the Insured as part of its own inquires: the Insured is cooperating with the Debtors' requests, and Arnold & Porter is assisting the Insured with his efforts to cooperate with the Debtors. *See id.* ¶ 6. In connection with these various investigations and inquiries, including in connection with the prosecution of the Motion, the Insured has incurred $374,043.49 in defense costs as of April 21, 2023. *See id.* ¶ 7. To properly provide assistance to the Debtors, to respond to governmental inquiries, and to the extent he is named as a defendant in any related action, the Insured will continue to incur significant defense costs. *See id.* ¶ 10.

21. Despite multiple requests, the Debtors declined the Insured's requests to cover his defense costs. *See id*. ¶ 12. The Insured currently is paying for these defense costs out of pocket and "[c]ourts in this Circuit have recognized that '[t]he failure to receive defense costs when they are incurred constitutes an immediate and direct injury'" that rises to the level of irreparable harm. *Rochester Drug Co-operative, Inc. v. Hisox Ins. Co.*, 466 F. Supp.3d 337, 350 (W.D.N.Y. 2020) (quoting *In re WorldCom, Inc.* 354 F. Supp.2d 455, 469 (S.D.N.Y. 2005) (holding the failure to receive defense costs under a D&O policy when they are incurred constitutes "an immediate and direct injury.")); *see id.* ¶ 8 (providing that the Insured is paying defense costs out of pocket). This, however, is not sustainable because the Insured does not have the financial wherewithal to cover the anticipated fees going forward without reimbursement from the D&O Policy. *See* Declaration ¶ 8. Including himself, the Insured is part of a family of five and is the sole source of income for

10

his family. *See id.* ¶ 9. The Insured must work to provide for his family and continuing to pay these various investigation and defense costs will add significant expenses that the Insured cannot afford. *See id.* In fact, the Insured has already taken money out of his savings to cover a portion of his defense costs to date, but he does not have the financial wherewithal, particularly given his family obligations, to cover these fees for more than a few months. *See id.* If the Committee had its way, the D&O Policy would be exhausted solely for its benefit without any payment of legal fees, thereby effecting irreparable harm to the Insured.

22. Further, the Insured is not covered by, nor does he have access to, another insurance policy in connection with the duties he performed at Genesis (other than the D&O Policy, the E&O Policy, and the Excess Policies). *See id.* ¶ 11. Indeed, the Insured relied on the coverage in these policies in electing to serve as an officer of certain of the Debtors and other non-Debtor subsidiaries and affiliates. *See id.* ¶ 13 (providing that the D&O Policy that is the subject of the Motion has, in various iterations, been in existence since the Insured assumed his various executive roles at the various Genesis entities and that as the Genesis' lending business began to grow substantially and the balance sheet began to carry significant risk, the existence of the D&O Policy was an important consideration for the Insured in deciding to continue his employment at Genesis over the course of several years). To deny the Insured access to the very same policy he relied upon in electing to serve would be inequitable.

23. Therefore, to the extent the stay applies, cause has been show to warrant stay relief.

*[Remainder of the Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, for the reasons set forth in this Reply and the Motion, the Insured respectfully requests that this Court (a) enter an order, substantially in the form attached to the Motion as Exhibit A and (b) grant such other and further relief as is just and proper.

Dated: April 24, 2023
     New York, New York

ARNOLD & PORTER KAYE SCHOLER LLP

*/s/ Benjamin Mintz*
Benjamin Mintz
Marcus Asner
Justin Imperato
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
Tel: (212) 836-8000
Facsimile: (212) 836-8689
Email: benjamin.mintz@arnoldporter.com
Email: marcus.asner@arnoldporter.com
Email: justin.imperato@arnoldporter.com