CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**APPROVING A SETTLEMENT AGREEMENT BY AND**
**AMONG GENESIS ASIA PACIFIC PTE. LTD AND ONE RAFFLES QUAY PTE. LTD**
**AND AUTHORIZING THE DEBTORS TO IMPLEMENT CERTAIN TRANSACTIONS**

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and these cases, collectively, the "Chapter 11 Cases"), hereby submit this motion (the "Motion"), for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order") pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002

---

[1]       The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In support of this Motion, the Debtors rely upon the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration") and the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration" and, together with the Leto Declaration and Aronzon Declaration, the "First Day Declarations"), which were filed with the Court on or shortly after the Petition Date.  In further support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## BACKGROUND

1.      Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services.  Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

2.      Throughout 2022, the digital asset industry has experienced tremendous dislocation, which led to the onset of a "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.  As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022.  Most recently, FTX

Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed for Chapter 11 proceedings.

3.      These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business.  This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's available liquidity.  As a result of the unprecedented number and size of the loan calls, on November 16, 2022, Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific Pte. Ltd ("GAP") paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders.

4.      Over the past several months, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups to explore strategic solutions.  In addition, the Debtors have undertaken cost-saving and liquidity-preserving measures.  As a result of those efforts, the Debtors have determined that an in-court process is the best path to continue their efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

5.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b), ECF No. 37.  No trustee or examiner has been appointed in the Chapter 11 Cases.  On February 3, 2023, an official committee of unsecured creditors (the "Committee") was appointed in these cases, ECF No. 55.

6.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

## JURISDICTION AND VENUE

7.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 9019.

## FACTS RELEVANT TO THIS MOTION

8.      GAP, as lessee, entered into that certain Lease of 1 Raffles Quay, #45-03, North Tower, Singapore 048583, dated January 28, 2022 (as it has been or may be amended, restated, modified, or supplemented from time to time, the "Singapore Lease"), pursuant to which One Raffles Quay Pte Ltd ("One Raffles") leased to GAP 366 square meters of office space for a three year term beginning on April 1, 2022 and ending on March 31, 2025.

9.      Upon the terms of the Singapore Lease, throughout the three year term of the lease, GAP would be required to pay S$42,551.16[2] per month (calculated at the rate of S$116.26 per square meter per month), additional management charges of S$5,124.00 per month, along with certain other maintenance fees, totaling approximately S$61,770.61 per month for the office space. If GAP were to continue under the Singapore Lease through the remaining lease

---

[2]      All dollar amounts provided herein are in Singapore dollars.

term, the lifetime cost of leasing the office space would amount to approximately S$1,420,724.03 (assuming no increases in rent and other fees). After assessing their demand for office space following the institution of the pause on lending operations at GAP on November 16, 2022, the Debtors determined an early termination of the Singapore Lease was important to align with the business needs of the Debtors and to reduce expenses.

10.    As part of the Debtors' overall restructuring efforts, the Debtors and One Raffles engaged in good faith, arms' length negotiations regarding the Singapore Lease. Those negotiations have resulted in that certain Agreement to Surrender In Respect Of 1 Raffles Quay, #45-03, North Tower, Singapore 048583 (the "Lease Surrender," attached hereto as Exhibit B), which operates as a settlement agreement between GAP and One Raffles with regards to the rejection and early termination of the Singapore Lease. Among other things, the Lease Surrender (i) establishes an earlier termination date for the Singapore Lease, (ii) seeks to resolve claims under the Singapore Lease (or rejection thereof) through One Raffles' retention of the Deposit (as defined herein) paid by GAP, and (iii) establishes the bases on which One Raffles may assert claims against GAP (solely to the extent such claims exceed the Deposit).

11.    One Raffles has advised GAP that, as of the date of the Lease Surrender, it does not intend to raise any claims and is not aware of any claims against GAP for breaches of the Singapore Lease, in particular for the condition of the leased premises. One Raffles has further confirmed that the Lease Surrender constitutes acceptance of the early termination of the Singapore Lease and surrender of the premises and that no claim shall be brought by One Raffles on account of such early termination or surrender.

## <u>OVERVIEW OF THE LEASE SURRENDER</u>

12.     The principal terms and conditions[3] of the Lease Surrender are generally as follows:[4]

(a)     GAP agrees to surrender all its estate, interest, right and title in the leased premises by delivering up possession of the leased premises and keys to One Raffles.  One Raffles agrees to accept the surrender by accepting possession of the leased premises and keys on the Surrender Date.

(b)     GAP and One Raffles agree to the early termination of the Singapore Lease on the surrender date of April 30, 2023 (the "<u>Surrender Date</u>").

(c)     In full and final satisfaction of any and all monetary claims against GAP resulting from the early termination of the Singapore Lease, GAP and One Raffles agree:

(i)     The security deposit currently held by One Raffles in the amount of S$291,936.24 (the "<u>Deposit</u>") shall be applied towards the payment of any amounts owed under section 3.1.1. of the Lease Surrender (which the parties believe is $0.00 as of the execution of the Lease Surrender) and the Compensation Sum as agreed under section 3.1.2 of the Lease Surrender. For purposes of the Lease Surrender, Compensation Sum means the sum of (a) S$270,311.33 and (b) the goods and services tax thereon;

(ii)    Notwithstanding anything in section 5.3 of the Lease Surrender to the contrary, if the Deposit is less than the amount required to be paid to One

---

[3]     The following summary is intended only to assist the Court and parties in interest by providing a summary of the material terms of the Lease Surrender.  To the extent there are any inconsistencies between this summary and the terms of the Lease Surrender, the terms of the Lease Surrender shall control.

[4]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Singapore Lease or Lease Surrender.

Raffles under the terms of the Lease Surrender, One Raffles shall be entitled to file an unsecured claim against GAP for the payment or reimbursement of any such shortfall;

(iii)   To the extent there are any breaches of the Lease Surrender, GAP shall pay One Raffles' legal costs and disbursements on a full indemnity basis for costs arising from the enforcement of any terms of the Lease Surrender.

(iv)   GAP shall pay all goods and services tax on all sums payable by GAP under the Lease Surrender.

(d)   Nothing in the Lease Agreement shall limit One Raffles' rights and remedies under the Lease Surrender in respect of any antecedent default by GAP of any provisions of the Singapore Lease (other than any claim for early termination) and any breach of the Lease Surrender.  For the avoidance of doubt, to the extent One Raffles seeks to assert claims against the Debtors for breaches of the Singapore Lease, such claims shall constitute general unsecured claims against GAP.

## RELIEF REQUESTED

13.   By this Motion, the Debtors request entry of an order substantially in the form annexed hereto as Exhibit A, pursuant to Bankruptcy Code Section 105, 363 and 365 and Bankruptcy Rule 9019 authorizing (i) the settlement agreement between the Debtors and One Raffles, (ii) rejection of the Singapore Lease, and (iii) such other actions as may be required under the Lease Surrender.

## BASIS FOR RELIEF

14.   Under section 105 of the Bankruptcy Code, the Court has broad discretion to "carry out the provisions of this title." 11 U.S.C. § 105(a); *see also Croton River Club, Inc. v.*

*Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.)*, 52 F.3d 41, 45 (2d Cir. 1995) (holding that bankruptcy courts have broad equity power to manage the affairs of debtors); *Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[B]ankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

15.     The purpose of section 105(a) is "to assure the bankruptcy courts' power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  2 Collier on Bankruptcy ¶ 105.01 at 105-06 (15th ed. Rev. 2008).  Such power conforms to the Court's inherent equitable authority.  *See, e.g.*, *U.S. v. Energy Res. Co.*, 495 U.S. 545, 549 (1990). The relief requested herein is both necessary and appropriate to allow the Debtors to successfully administer these Chapter 11 Cases, to optimize their postpetition business performance and to maximize the value of their estates.  Accordingly, the Court may enter the Proposed Order and authorize the Debtors to perform all obligations under the Lease Surrender.

**GAP is Authorized Pursuant to Bankruptcy Rule 9019 to Settle Claims and Perform Obligations under the Lease Surrender**.

16.     Bankruptcy Rule 9019 permits a debtor–in–possession to enter into compromises and settlements, subject to approval by the Bankruptcy Court.  *See* Bankruptcy Rule 9019(a).  In order to approve a compromise or a settlement under Bankruptcy Rule 9019(a), the bankruptcy court must find that the compromise or settlement is "in the best interests of the estate." *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 523 (S.D.N.Y. 1993) (citation omitted).  In making this finding, the bankruptcy court should form an informed and independent judgment as to whether a proposed compromise is in the best interests of the debtor's estate.  *Id.*  However, the settlement need not result in the best possible outcome for the debtor, but must not "fall below the

lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (citation omitted).

17.     In determining whether a compromise or settlement should be approved under Bankruptcy Rule 9019(a), the bankruptcy court should not substitute its own judgment for that of the debtor. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986). In fact, the bankruptcy court may consider the opinions of the debtor-in-possession or the trustee that the settlement is fair and reasonable. *See Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994). Furthermore, the bankruptcy court need not conduct a "mini-trial" to decide the numerous issues of law and fact raised by the settlement, but rather must "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Purofied Down Prods.*, 150 B.R. at 522 (citations omitted); *see also In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Frost Bros., Inc.*, No. 91 Civ. 5244 (PNL), 1992 U.S. Dist. LEXIS 18301, at *16 (S.D.N.Y. Nov. 30, 1992). This requirement "reflect[s] the considered judgment that little would be saved by the settlement process if bankruptcy courts could approve settlements only after an exhaustive investigation and determination of the underlying claims," *Purofied Down Prods.*, 150 B.R. at 522-23, and the fact that settlements are "favored and, in fact, encouraged" in bankruptcy. *Nellis*, 165 B.R. at 123.

18.     Additionally, in exercising its discretion to approve a compromise or settlement under Bankruptcy Rule 9019, the bankruptcy court should consider, among other things, "the extent to which the settlement is truly the product of 'arms-length' bargaining, and not of fraud or collusion," *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citation omitted), and the prospect of complex and protracted litigation if

the settlement is not approved, *see Purofied Down Prods.*, 150 B.R. at 522; *see also Frost Bros.*,

1992 U.S. Dist. LEXIS 18301, at *16.

19.     It is well within the range of reasonableness for GAP to enter into the Lease

Surrender, which is the result of good faith and arm's length negotiations.  The agreement will

allow GAP to reject the Singapore Lease, while avoiding the incurrence of substantial rejection

damages.  The Lease Surrender operates as a settlement agreement as it sets forth the relevant

compensation associated with the rejection of the Singapore Lease, which is an important part of

the Debtors' larger claims reconciliation efforts.

**GAP is Authorized Pursuant to Section 363 of the Bankruptcy Code to Enter into the Lease Surrender and Related Transactions.**

20.     The Debtors also seek authority to enter into the Lease Surrender and carry

out the terms of such agreement pursuant to section 363 of the Bankruptcy Code so far as such

undertakings constitute the use, sale or lease of property in the estate other than in the ordinary

course of the business.

21.     Section 363 of the Bankruptcy Code provides that a debtor, "after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1).  When applying this section, courts in the Second Circuit and

elsewhere have required that the debtor's decision be supported by its sound business judgment.

*See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining

a section 363(b) application must find from the evidence presented a good business reason to grant

such application); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d

1063, 1071 (2d Cir. 1983) (same); *Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986)

(holding that a "bankruptcy court can authorize a sale of all of a chapter 11 debtor's assets under

§ 363(b)(1) when a sound business purpose dictates such action"); *In re Phoenix Steel Corp.*, 82

B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale, and that the transaction is in good faith).

22.     Once a debtor sets forth good business reasons for the transaction under review, there "is a presumption that in making a business decision the [debtor] acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Allard*, No. 18-14092 (MG), 2019 WL 4593854, at *4 (Bankr. S.D.N.Y. Sept. 20, 2019) (internal quotations omitted).

23.     For the reasons discussed herein, the Debtors have demonstrated their sound business judgment and good faith in entering into the Lease Surrender.  Specifically, the agreement will allow GAP to resolve certain claims associated with the early termination of the Singapore Lease in a manner that is fair and reasonable.

**GAP is Authorized to Reject the Singapore Lease Pursuant to Section 365 of the Bankruptcy Code.**

24.     Bankruptcy Code section 365(a) provides that a trustee, "subject to the court's approval, may assume or reject any executory contract or an unexpired lease []." 11 U.S.C. § 365(a); *see also In re Wireless Data, Inc.*, 547 F.3d 484, 488 (2d Cir. 2008).  Section 1107 of the Bankruptcy Code provides the same power to a debtor-in-possession.  *See* 11 U.S.C. § 1107; *In re Wireless Data*, 547 F.3d at 488.

25.     The Court should approve a debtor's rejection of an executory contract or unexpired lease where such rejection is made in the exercise of sound business judgment and if the rejection benefits its estate.  *See In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008) ("That the debtor's interests are paramount in the balance of control is underscored by the business judgment standard employed by courts in determining whether to permit the debtor to assume or

reject the contract."); *Westbury Real Est. Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) ("Under this business judgment test, . . . [a court should approve a debtor's proposed rejection] if the debtor can demonstrate that rejection will benefit the estate.").

26.    A motion to reject should thus be granted if a debtor determines in its business judgment that a benefit will be realized by rejecting a contract or lease. *See In re Penn Traffic Co.*, 524 F.3d at 383 ("Th[e] [business judgment] standard rather obviously presupposes that the estate . . . will reject contracts whose performance would benefit the counterparty at the expense of the estate."); *In re Sabine Oil & Gas Corp.*, 550 B.R. 59, 74-5 (Bankr. S.D.N.Y. 2016). The business judgment standard requires that the court approve the debtor's business decision unless that judgment is the product of bad faith. *See In re G Survivor Corp.*, 171 B.R. 755, 758 (Bankr. S.D.N.Y. 1994).

27.    Rejection of the Singapore Lease and approval of the Lease Surrender furthers the Debtors' goal of undergoing an overall restructuring of their obligations throughout the Chapter 11 process and is an important part of the Debtors' larger claims reconciliation efforts.

28.    As outlined herein, absent rejection of the Singapore Lease, the Debtors would continue to incur monthly rent and other lease obligations associated with the leased premises that do not further the Debtors' restructuring goals or align with current business needs. Additionally, the Lease Surrender: (1) resolves any rejection damages claim that may be asserted by One Raffles; (2) sets forth all going forward obligations (monetary or otherwise) for GAP and One Raffles on account of the rejection and surrender of the leased premises; and (3) cuts off all future obligations under the Singapore Lease upon entry of an approval order, all of which will support the Debtors' business goals and align with their business plan.

29.     Based on the foregoing, rejection of the Singapore Lease and entry into the Lease Surrender and subsequent related agreements is in the best interests of the Debtors' estates and creditors and constitutes proper exercise of the Debtors' sound business judgment. Accordingly, the Court should approve the entry into and performance under the Lease Surrender. The Debtors respectfully request that the Court grant the relief requested and enter an order substantially in the form attached hereto as Exhibit A.

## **NOTICE**

30.     The Debtors have provided notice of this Motion in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 44).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **NO PRIOR REQUEST**

31.     No prior request for the relief requested herein has been made to this or any other Court.

[*The remainder of this page is left blank intentionally*]

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as <u>Exhibit A</u> and (b) grant such other and further relief as is just and proper.


Dated:  April 25, 2023                    CLEARY GOTTLIEB STEEN & HAMILTON LLP
       New York, New York

                                       /s/ *Jane VanLare*
                                       Sean A. O'Neal
                                       Luke A. Barefoot
                                       Jane VanLare
                                         CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                       One Liberty Plaza
                                       New York, New York 10006
                                       Telephone: (212) 225-2000
                                       Facsimile: (212) 225-3999

                                       *Counsel for the Debtors*
                                       *and Debtors-in-Possession*

**<u>Exhibit A</u>**

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### ORDER APPROVING THE DEBTORS' MOTION FOR ENTRY INTO A SETTLEMENT AGREEMENT BY AND AMONG GENESIS ASIA PACIFIC PTE. LTD AND ONE RAFFLES QUAY PTE LTD AND AUTHORIZING THE DEBTORS TO IMPLEMENT CERTAIN TRANSACTIONS

Upon the Motion[2] of Genesis Global Holdco, LLC ("Holdco"), and its affiliated

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for

entry of an order (this "Order") approving the settlement agreement by and among the Genesis

Asia Pacific Pte. Ltd ("GAP") and One Raffles Quay Pte Ltd and authorizing the Debtors to

implement certain transactions; and upon the *Declaration of Michael Leto in Support of First Day*

*Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration"), the

*Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance*

*with Local Rule 1007-2* (the "Aronzon Declaration") and the *Declaration of A. Derar Islim in*

*Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim

Declaration" and, together with the Leto Declaration and Aronzon Declaration, the "First Day

Declarations"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference* from the United States District Court for

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

the Southern District of New York dated January 31, 2012; and the Court having found that this is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order

consistent with Article III of the United States Constitution; and the Court having found that venue

of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and the Court having found that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors and other parties in interest; and the Court having found that

the Debtors' notice of the Motion and opportunity for a hearing on the Motion was appropriate

and no other notice need be provided; and the Court having reviewed the Motion and having heard

the statements in support of the relief requested therein at a hearing before the Court (the

"Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion

and on the record of the Hearing establish just cause for the relief granted herein; and all objections

to the Motion (if any) having been withdrawn or overruled; and upon all of the proceedings had

before the Court; and after due deliberation and sufficient cause appearing therefor;

### IT IS HEREBY FOUND AND DETERMINED THAT:

1.      The Debtors have demonstrated sound business judgment for entering into

and performing under the Lease Surrender, and it is a sound exercise of the Debtors' business

judgment to perform under the Lease Surrender and consummate the transactions contemplated

thereby.

2.      There are no amounts due and owing by GAP to One Raffles in

respect of section 3.1.1 of the Lease Surrender.

3.      The rejection of the Singapore Lease is in the best interests of the Debtors'

estates, including their creditors and other stakeholders.  The Singapore Lease is burdensome to

the Debtors' estates and therefore, rejection of the Singapore Lease is a sound exercise of GAP's business judgment.

4.      The terms of the settlement associated with the Lease Surrender evidence good faith, arms' length negotiations, are fair and in the best interest of the Debtors' estates, including their creditors and other stakeholders.

5.      Based on the record before the Court, the Debtors have demonstrated good and sufficient basis for the Court to approve the Motion.

**IT IS THEREFORE ADJUDGED, ORDERED AND DECREED THAT:**

The Motion is GRANTED to the extent set forth herein.

6.      The settlement embodied in the Lease Surrender is plainly within the range of reasonableness and in the best interest of the Debtors and their estates and the creditors in this case.

7.      The settlement embodied in the Lease Surrender is approved and authorized and GAP is authorized to perform in accordance with the terms of the Lease Surrender, as set forth herein.

8.      The rejection of the Singapore Lease as of April 30, 2023 (the "Rejection Date") is hereby approved.  Unless otherwise set forth in the Lease Surrender, the Debtors shall have no go forward obligations under the Singapore Lease as of the Rejection Date.

9.      The provisions of the Lease Surrender are incorporated herein by reference and shall be effective and binding as though fully set forth herein.

10.     GAP is authorized to enter into the Lease Surrender and to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to

take any and all actions that may be reasonably necessary or appropriate to implement the agreements, and perform all obligations contemplated thereunder.

11.      Notwithstanding anything in the Lease Surrender to the contrary, (i) GAP shall not be required to pay any amounts to One Raffles under section 3.1.1 of the Lease Surrender, (ii) to the extent of any shortfall between the Deposit and the amounts owed under section 3.1.2 of the Lease Surrender, One Raffles shall be entitled to file an unsecured claim against GAP for the payment or reimbursement of any such shortfall, (iii) to the extent One Raffles seeks to assert claims in excess of the Deposit on account of any breaches under the Singapore Lease (other than any claims relating to the early termination of the Singapore Lease or the conditions of the leased premises upon surrender, both of which are waived), any such claim shall be treated as a general unsecured claim in accordance with the Bankruptcy Code, (iv) One Raffles may not assert any claim arising from the rejection and early termination of the Singapore Lease or the conditions of the leased premises upon surrender, (v) GAP's performance of its obligations under the Lease Surrender shall not amount to a breach of section 4.2.1 of the Lease Surrender, and (vi) disclosure of the terms of the Lease Surrender for purposes of this Court's approval of the Motion shall not constitute a breach of section 8 of the Lease Surrender.  For the avoidance of doubt, One Raffles may not assert any claim arising from the rejection and early termination of the Singapore Lease or the conditions of the leased premises upon surrender.

12.      Furthermore, One Raffles has agreed that, as of the date of this Order, it does not intend to raise any claims and is not aware of any claims against GAP for breaches of the Singapore Lease.

13.      This Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, their creditors, One Raffles and all of their respective

- 4 -

affiliates, successors, and assigns, and any affected third parties, notwithstanding the subsequent

appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s)

this Order likewise shall be binding.  All parties to the Lease Surrender consent to the jurisdiction

of this Court for purposes of the Court's enforcement of the terms of the Lease Surrender and this

Order.

14.     The terms and provisions of this Order shall be immediately effective and

enforceable upon its entry. The effectiveness of this Order shall not be stayed pursuant to Rule

6004(h) of the Federal Rules of Bankruptcy Procedure or otherwise.

15.     The automatic stay arising pursuant to section 362(a) of the Bankruptcy

Code is modified to the extent necessary to effect the terms set forth in the Lease Surrender.

16.     The Debtors' claims agent, Kroll Restructuring Administration, and the

clerk of this Court are authorized to take all actions necessary and appropriate to give effect to this

Order and the Lease Surrender.

17.     This Court shall retain jurisdiction with respect to any matters, claims,

rights or disputes arising from or related to the Motion or the implementation, interpretation or

enforcement of this Order.


 Dated: _____, 2023
            White Plains, New York

                                        _____
                                        The Honorable Sean H. Lane
                                        United States Bankruptcy Judge

**<u>Exhibit B</u>**

**LEASE SURRENDER**

Dated _____

**ONE RAFFLES QUAY PTE LTD**

AND

**GENESIS ASIA PACIFIC PTE. LTD.**

---

**AGREEMENT TO SURRENDER
IN RESPECT OF
1 RAFFLES QUAY
#45-03 NORTH TOWER**

**SINGAPORE 048583**

---



**TABLE OF CONTENTS**

**Contents**                                                                                      **Page**

1.    INTERPRETATION ...................................................................................................1

2.    AGREEMENT TO SURRENDER ............................................................................2

3.    TENANT'S OBLIGATIONS......................................................................................2

4.    SURRENDER...............................................................................................................3

5.    APPLICATION OF SECURITY DEPOSIT ............................................................3

6.    COSTS...........................................................................................................................4

7.    CONFIDENTIALITY ..................................................................................................4

8.    GOVERNING LAW ....................................................................................................4

9.    CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 2001 .......................................4

**THIS AGREEMENT** is made on _____

Between:

(1)   **One Raffles Quay Pte Ltd** (Company Registration No. 200101576E), a company incorporated in Singapore and having its registered office at 1 Raffles Quay #19-10 Singapore 048583 (the "**Landlord**"); and

(2)   **Genesis Asia Pacific Pte. Ltd.** (Company Registration No. 202002164R), a company incorporated in Singapore and having its registered office at 1 Raffles Quay #45-03 Singapore 048583 (the "**Tenant**").

**WHEREAS**:

(A)   By the Lease Agreement (as defined below), the Landlord has leased to the Tenant the Surrender Premises (as defined below) for the Term (as defined below), subject to the compliance by the Tenant of its obligations and the conditions contained in the Lease Agreement.

(B)   The Tenant wishes to surrender the Surrender Premises to the Landlord and the Landlord has agreed to accept the surrender, subject to the terms and conditions set out below.

**IT IS AGREED** as follows:

1.      **INTERPRETATION**

1.1     **Definitions**

The following definitions apply unless the context requires otherwise:

"**Building**" means the building known as 1 Raffles Quay Singapore 048583.

"**Compensation Sum**" means the sum of (a) S$270,311.33 and (b) the goods and services tax thereon.

"**Deposit**" has the meaning ascribed to it in clause 5.1 below.

"**Lease Agreement**" means the lease agreement dated 28 January 2022 made between the Landlord and the Tenant in respect of the Surrender Premises and includes any documents supplemental to the Lease Agreement.

"**Surrender Date**" means 30 April 2023.

"**Surrender Premises**" means the premises known as #45-03 at the Building (North Tower), more particularly described in the Lease Agreement.

"**Term**" means the term of the lease of the Surrender Premises under the Lease Agreement of three (3) years commencing on 1 April 2022 and expiring on 31 March 2025 (both dates inclusive).

1.2     **General**

1.2.1   Headings are for convenience only and do not affect interpretation. The following rules of interpretation apply unless the context requires otherwise.

1.2.2   The singular includes plural and conversely.

1.2.3    A gender includes all genders.

1.2.4    A reference to any party to this Agreement or any other agreement or document includes the party's successors or assigns.

1.2.5    A person includes an individual and a corporation.

1.2.6    A reference to a right or obligation of any two or more persons confers that right, or imposes that obligation, on each of them individually and both (or all) of them together.

1.2.7    Unless stated otherwise, one word or provision does not limit the effect of another.

## 2.    AGREEMENT TO SURRENDER

2.1    The Tenant agrees to surrender, and shall surrender, all its estate, interest, right and title in the Surrender Premises to the Landlord by delivering up possession of the Surrender Premises and the keys relating to the Surrender Premises to the Landlord, on the Surrender Date (time being of the essence).

2.2    The Landlord agrees to accept the surrender by accepting possession of the Surrender Premises and the keys relating to the Surrender Premises on the Surrender Date.

## 3.    TENANT'S OBLIGATIONS

3.1    On or before the Surrender Date, the Tenant agrees as follows:

3.1.1    the Tenant shall pay to the Landlord, the rent, management charge and other sums (including interest) payable by the Tenant to the Landlord under the Lease Agreement in respect of the Surrender Premises calculated up to and including the Surrender Date; and

3.1.2    in consideration of the Landlord allowing the Tenant to surrender the Surrender Premises on the Surrender Date, the Tenant shall pay to the Landlord the Compensation Sum as compensation for loss of income and costs and expenses suffered or incurred by the Landlord arising out of or in connection with the surrender of the Surrender Premises prior to the expiry of the Term.

3.2    Notwithstanding clause 4.27 of the Lease Agreement, the Tenant shall not be required to make good and reinstate the Surrender Premises to the original condition as at the date the Surrender Premises was handed over to the Tenant, provided that:

3.2.1    the Tenant shall remove from the Surrender Premises all notices, notice boards and signs bearing the name of or otherwise related to the Tenant (including in this context any persons deriving title to the Surrender Premises under the Tenant) or its business;

3.2.2    if the Tenant has installed its own access system, the Tenant shall ensure either that such access system is deactivated and access is given to the Landlord for activation and use, or that such access system has been removed;

3.2.3    if the Tenant has installed its own locks, the Tenant shall ensure that such locks have been removed;

3.2.4    the Tenant shall make good to the reasonable satisfaction of the Landlord all damage to the Surrender Premises and the development in which the Surrender Premises is comprised resulting from the said removal and deactivation; and

3.2.5    the Tenant shall be responsible for the termination of (i) its agreements with all power and other utility suppliers it has entered into and (ii) the decommissioning of all data points and associated conducting media and pipework related thereto, at the Surrender Premises.

3.3    The provisions of this clause **3** shall continue to apply notwithstanding the surrender of the Term of the lease in respect of the Surrender Premises on the Surrender Date pursuant to this Agreement.

**4.    SURRENDER**

4.1    Upon:

4.1.1    the Tenant delivering up possession of the Surrender Premises and the keys relating to the Surrender Premises to the Landlord on the Surrender Date; and

4.1.2    the acceptance by the Landlord of possession of the Surrender Premises and the keys relating to the Surrender Premises,

the Term in respect of the Surrender Premises will be surrendered to the Landlord free of any estate, interest, right, title or claim of any nature of the Tenant arising from or in connection with the Lease Agreement.

4.2    The surrender will not affect:

4.2.1    the obligations to be complied with by the Tenant in respect of the Surrender Premises under the provisions of the Lease Agreement up to (and including) the Surrender Date and which have not been complied with;

4.2.2    the rights and remedies of the Landlord in respect of any antecedent default by the Tenant of any provisions of the Lease Agreement;

4.2.3    the rights and remedies of the Landlord in respect of the Tenant's default (if any) in complying with any of its obligations contained in clause **3** above; and

4.2.4    the provisions of clause 4.3 of the Lease Agreement which shall survive such surrender and remain in full force.

**5.    APPLICATION OF SECURITY DEPOSIT**

5.1    The Landlord and the Tenant hereby acknowledge and agree that the Landlord is currently holding the sum of S$291,936.24 being the security deposit paid by the Tenant under the Lease Agreement (the "**Deposit**").

5.2    The Tenant authorises and directs the Landlord to apply the Deposit (or the balance thereof after proper deductions (if any) by the Landlord) towards payment of the Compensation Sum.

5.3    If the Deposit is less than the amount required to remedy the Tenant's breaches under the Lease Agreement, the Tenant shall pay or reimburse to the Landlord on demand such shortfall.

6.    **COSTS**

The Tenant shall pay to the Landlord immediately upon demand by the Landlord:

6.1    the Landlord's legal costs and disbursements on a full indemnity basis incurred by the Landlord in enforcing any provision of this Agreement in the event of a breach by the Tenant or any claims or proceedings by the Landlord against the Tenant arising under or pursuant to this Agreement; and

6.2    all goods and services tax on all sums payable by the Tenant under this Agreement.

7.    **CONFIDENTIALITY**

The parties hereto agree to keep confidential and not to disclose to any third party any information in respect of, arising from or in connection with the terms, conditions and provisions of this Agreement and all correspondence and discussions between the Landlord and the Tenant in relation to this Agreement unless the disclosure is required by law.

8.    **GOVERNING LAW**

This Agreement will be construed in accordance with the laws of Singapore and the Courts of Singapore will have non-exclusive jurisdiction.

9.    **CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 2001**

A person who is not a party to this Agreement has no right under the Contracts (Rights of Third Parties) Act 2001 to enforce or enjoy the benefit of any term of this Agreement.

**AS WITNESS** the parties have executed this Agreement.


**<u>Landlord</u>**


| | |
|---|---|
| Signed by | ) |
| for and on behalf of | ) |
| **One Raffles Quay Pte Ltd** | ) |
| in the presence of: | ) |

_____
Name:
Designation:


_____
Witness's signature
Name:
Designation: _____


**<u>Tenant</u>**


| | |
|---|---|
| Signed by | ) |
| for and on behalf of | ) |
| **Genesis Asia Pacific Pte. Ltd.** | ) |
| in the presence of: | ) |

_____
Name:
Designation:


_____
Witness's signature
Name:
Designation: _____