Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shl

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GENESIS GLOBAL HOLDCO, LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                   United States Bankruptcy Court

12                   300 Quarropas Street, Room 248

13                   White Plains, NY 10601

14

15                   April 25, 2023

16                   2:35 PM

17

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  ART

1    HEARING re Status Conference Re:  Doc #252 Motion for

2    Appointment of a Mediator

3

4    HEARING re Status Conference Re:  Doc #253 Motion to Shorten

5    Time to Consider Debtor's Motion for Appointment of a

6    Mediator and Order Appointing Mediator

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    CLEARY GOTTLIEB

4        Attorneys for the Debtor

5        One Liberty Plaza

6        New York, NY 10006

7

8    BY:  SEAN O'NEAL

9

10   WHITE CASE

11   Attorneys for the Official Committee of Unsecured

12   Creditors

13   1221 Avenue of the Americas

14   New York, NY 10020

15

16   BY:  CHRIS SHORE

17

18   PROSKAUER ROSE LLP

19       Attorneys for Ad Hoc Group of Genesis Customers

20       Eleven Times Square

21       New York, NY 10304

22

23   BY:  BRIAN ROSEN

24

25

**Page 4**

1   WEIL GOTSHAL MANGES LLP

2        Attorneys for Digital Currency Group, Inc.

3   767 Fifth Avenue

4   New York, NY 10153

5

6   BY:  JESSICA LIOU

7

8   HUGHES HUBBARD REED LLP

9        Attorneys for Gemini Trust Company, LLC, as Agent

10        One Battery Park Plaza

11        New York, NY 10004

12

13   BY:  ANSON B. FRELINGHUYSEN

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Good afternoon.  This is Judge Sean

 3     Lane in the United States Bankruptcy Court for the Southern

 4     District of New York, and we're here for a 2:30 status

 5     conference in Genesis Global Holdco.  And so I just wanted

 6     to start by confirming that the intentions to have this on

 7     the record.  I know there was some discussion back and forth

 8     about what best suited the needs of the parties, and so if

 9     I'm wrong about that, then that voice -- disembodied

10     electronic voice that we heard that just said this is being

11     recorded, we should remedy that, but otherwise, we'll

12     proceed on the record.

13              So Mr. O'Neal, maybe I'll start with you to make

14     sure that we're -- we've got it organized the way it should

15     be.

16              MR. O'NEAL:  Good afternoon, Your Honor.  Yes,

17     that's exactly right.  This is on the record.  We wanted it

18     to be open to the public in the interest of transparency and

19     other reasons.  There may come a time where, you know,

20     something more off the record is appropriate but we didn't

21     think that was today.

22              THE COURT:  All right.  That's fine.  So I have

23     Mr. O'Neal's appearance so let me get the committee's

24     appearance.

25              MR. SHORE:  Good afternoon, Your Honor.  Chris
```

Page 6

1    Shore from White & Case on behalf of the UCC.  I'm here with

2    my partner Phil Abelson.

3              THE COURT:  All right.  Good afternoon.  And let

4    me get the ad hoc group's appearance.

5              MR. ROSEN:  Thank you, Your Honor.  Brian Rosen,

6    Proskauer Rose.  I apologize for the lack of tie and coat.

7    I was caught unaware about this one.  I'm along with my

8    colleague Jordan Sazant.

9              THE COURT:  All right.  If that's the biggest

10   problem I have today, then my life is truly blessed.  No

11   worries.

12             MR. ROSEN:  Thank you.

13             THE COURT:  Let me get -- any other appearances

14   for folks who -- I'm sure there are a lot of people who

15   might be here to listen so that's why I'll just send out the

16   general request.  Anyone else who wants to make an

17   appearance?

18             MS. LIOU:  Yes, Your Honor.  Good afternoon.

19   Jessica Liou from Weil Gotshall & Manges on behalf of

20   Digital Currency Group.

21             THE COURT:  All right.  Good afternoon.  Anyone

22   else?

23             MR. FRELINGHUYSEN:  Good afternoon, Your Honor.

24   This is Anson Frelinghuysen from Hughes Hubbard & Reed on

25   behalf of Gemini Trust Company LLC.

```
 1              THE COURT:  All right.  Good afternoon.  Anyone

 2    else?  All right.

 3              So I think we were going to talk about the timing

 4    of a motion, when we'd have a hearing.  I think it was

 5    briefly touched upon so I'll turn it over to you, Mr.

 6    O'Neal, to sort of start us off.

 7              MR. O'NEAL:  Thank you, Your Honor.  Sean O'Neal

 8    on behalf of the Debtors, Cleary Gottlieb Steen & Hamilton.

 9    I appreciate your setting up the time to have this

10    discussion.  It is just simply a status conference.  We're

11    going to attempt to have a scheduling discussion.  There's a

12    lot to say on the merits and we'll try to hold off on the

13    merits.

14              I would just say that we've been having

15    discussions over the past week with a variety of

16    stakeholders, the ad hoc group, Jim and I, the unsecured

17    creditors committee, and DCG among others.  And late last

18    night, we filed a mediation motion.  Our hope has been that

19    if we build a ballpark people will show up and that may

20    still happen.  But I think, Your Honor, we could use a

21    little bit more time to have discussions among the

22    stakeholders.

23              Our attempts to reach kind of an agreement on a

24    mediation approach have not yet been successful.  I think we

25    have some possibility of achieving that result and so what
```

Page 8

1   we'd like to do is, over the next few days, try to work on a

2   -- kind of a consensual form of a mediation order and I'll

3   get more into that.  I will tell you that we are trying to

4   do what's best for the estate.  We are concerned that we've

5   hit a bit of an impasse.  We had some strong momentum going

6   when we filed our term sheet on February 10th and then we've

7   kind of -- you know, kind of -- since that time, we have not

8   made as much progress as we would like.

9           We do take our direction from the special

10  committee, and the special committee has been clear at every

11  step that our job is to maximize creditor recoveries and try

12  to get recoveries in the hands of creditors as soon as

13  possible, and that's really our guiding light.

14          In terms of the mediation itself, we're going to

15  try to work through the issues over the course of the week.

16  We've asked for proposals from the creditor constituencies

17  as to how they would like to approach mediation.  We haven't

18  yet received those proposals.  We have asked for them.  I

19  would say at that this point, we still are working through

20  issues such as the selection of a mediator, the timing of

21  the mediation, the duration of the mediation, and the scope

22  of the mediation.  You know, we may in fact need a mediator

23  to mediate how we're going to mediate.

24          It is -- we are in a state right now where we're

25  trying with all of our efforts to create a platform that

Page 9

1    achieves a consensual resolution that is better than the

2    plan we originally proposed which is simply a litigation

3    trust.  And so, Your Honor, I think that, you know, over the

4    next week, we hope to achieve some kind of resolution about

5    how we want to approach the mediation, but at some point, we

6    may just ask you to approve a mediation motion even without

7    Creditor support.  As Your Honor knows, you have the ability

8    to order sua sponte mediation.  We'd like to try to help you

9    first, but if our efforts fail, we may need to ask you for

10   help.

11          So I think what our suggestion would be, Your

12   Honor, is to, rather than have the hearing on Wednesday as

13   we had proposed in our mediation motion last night, we would

14   like to set that motion up for next week, maybe towards the

15   latter part of the week, you know, anywhere from May 2nd to

16   May 5th, and, you know, that might be an evidentiary hearing

17   so just bear that in mind, Your Honor.  But that would be

18   our desire.  Try to use that date to see if we can achieve a

19   consensual approach to the mediation and if we can't, we'll

20   appear before you and try to hash it out.

21          THE COURT:  All right.  I'm going to circle the

22   virtual room in a second here but just a couple of

23   preliminary thoughts.

24          I can't see any way in the world that an

25   evidentiary hearing on a mediation request is a good idea.

Page 10

```
1     I suppose in this job I've learned to say that -- I've

2     learned that, you know, it's always something new that you

3     hadn't thought of but that seems highly improbable to be a

4     good idea.

5              And then I will say two contradictory things, but

6     I guess the shoe fits in that vein.  One is, in doing a

7     mediation panel a while back with an academic, the academic

8     on the panel said something that was surprising to me that

9     studies have shown that whether people are -- volunteer for

10    mediation or it's done without -- not at their request that

11    the success rates in studies have shown that there's

12    actually no difference which I actually found to be a

13    surprising statistic and some of the bankruptcy judges in

14    the room who heard the academic gave her a little bit of a

15    stress test on that because they were also surprised.

16             That said, my experience, buy-in is always good

17    for a lot of reasons, all of which you know so I won't bore

18    you with a lengthy discussion of that.  I anticipated that

19    we would be angling towards sometime next week.  That sounds

20    sensible to me, and I have dates that we can talk about next

21    week.  So with that, let me circle the room and I'll start

22    with the committee.

23             MR. SHORE:  Thank you, Your Honor.  Chris Shore

24    from White & Case on behalf of the committee.

25             Yeah, I've heard those studies before and I've
```

Page 11

1    seen courts actually rule the other way and circuit courts

2    rule the other way so (indiscernible) my experience, buy-in

3    is always great so we're heartened by the Debtor's decision

4    to seek out buy-in over the next week.

5         I just want to make a couple of points.  First,

6    with respect to the evidentiary issue, I don't know whether

7    Your Honor had an opportunity to see the proposed order, but

8    in the first paragraph of the proposed order, the Debtor's

9    are seeking an order of the Court authorizing them but not

10   requiring them to forebear on the extension of a $600-plus

11   million loan with the parent.  That's the issue that we're

12   going to try to work through.  There is --

13        THE COURT:  Yeah.  Well, no, that -- I actually

14   consider that to be -- I understand why it's in this

15   conversation but that's a substantive issue, right, in terms

16   of people's rights and I understand that.  It may be that

17   it's the thing that needs to be addressed to open the window

18   to the possibility of having sufficient time, and we all

19   know that it's very difficult to predict how long mediations

20   will last.  I mediated Aeromexico and that was a plan

21   mediation and I think when I was originally invited to do

22   that, people said, well, that's -- we really need something

23   quick this summer.  And as the calendar turned month to

24   month, it just -- you don't know.

25        So I'm going to stay out of that.  In my head,

1    I've sort of put that to the side.  I understand why it's

2    part of this conversation, but I also understand that's

3    substantive in a different way than simply who's the

4    mediator, what's the process.  Got it.

5              MR. SHORE:  Second, I would ask Your Honor to

6    encourage the parties in due respect.  Encourage the parties

7    to really engage on the process that we don't have to have

8    that hearing.  Maybe you don't need to do that.  We're all

9    supposed to be doing that anyway.  But also have Your Honor

10   encourage people not to be out in the public talking about

11   the mediation.

12             There have been some tweets fly around.  DCG put a

13   tweet out this morning about the process.  I think it's

14   going to be much easier for the parties trying to set the

15   table if the Twitterverse isn't exploding over the mediation

16   --

17             THE COURT:  So I will jump in immediately on that.

18   This case has the benefit of having a lot of experienced and

19   highly competent attorneys, and while clients, obviously,

20   it's your money, it's your time, it's your interest, but

21   there are times when it is highly advisable to let the

22   lawyers that you think are really great which is why you've

23   hired them to let them do their jobs.

24             This is one of those times, and so I think any

25   stray comments, you know, even when we're talking about

Page 13

1    institutions and things here -- people are people.  It can

2    rub people the wrong way.  It can make people unwilling and

3    unhappy about pursuing reasonable courses of action.  So

4    bankruptcy court works really well and a lot of things get

5    resolved because people act in an economically rational way,

6    but if it becomes personal, all those rules get upended.

7    And again, I'm not telling you all anything you don't

8    profoundly know, but sometimes it's helpful to hear it from

9    somebody's who's wearing a robe for better or for worse.

10           So, yeah, everybody should -- as Judge Chapman

11   would say -- keep your powder dry, keep your personal views

12   out of this.  You have lawyers.  There's a reason you have

13   lawyers.  People should -- also mediation is meant to be

14   confidential and so if we start the process -- before we

15   even get to the process, people are sort of firing off in

16   all different directions, it makes the ability for this

17   process to work greatly diminished.

18           So, yes, people should treat this as a discrete

19   matter that is not supposed to be discussed in public

20   extensively and lower the temperature in the virtual room

21   because that raises the chances of success.

22           So, I'm sorry, Mr. Shore, I cut you off.

23           MR. SHORE:  No.  Thank you, Your Honor for that.

24   And then last, as far as the actual setting, if we do it

25   next Thursday or Friday for two reasons.  One, I'm hoping we

Page 14

1    won't have to make it an evidentiary issue, but if it is

2    going to be one, we're going to need to get some maybe

3    discovery out of at least have a substantive meeting so we

4    can understand (indiscernible).

5            And second, I've got a trial that starts in DC on

6    Monday morning.  If I -- it'll have calmed down by the

7    latter part of the week, but I anticipate I'm going to be

8    full steam ahead on Monday, Tuesday, and Wednesday.

9            THE COURT:  All right.  All right.  And let me

10   hear from the ad hoc group.

11           MR. ROSEN:  Thank you very much, Your Honor.

12   Brian Rosen, Proskauer Rose.

13           As all the attorneys know on this call, the ad hoc

14   group is perfectly prepared to participate in mediation.  We

15   just need to, as Mr. O'Neal has said several times over, set

16   the table correctly and make sure that everybody is prepared

17   for the conduct of the mediation.  And in that regard, it's

18   critically important from our perspective that we get the

19   benefit of a lot of information that has been passed around.

20   And we know from Mr. O'Neal that he is going to do his best

21   to do it and to provide that for us, and I hope that we get

22   the same benefit from DCG.

23           I appreciate what the Court said about the

24   Twitterverse because that has been an issue and we're very

25   glad by the Court's comments in that regard.  And I'm also

1    very glad about --

2            THE COURT:  Well, all I will say is -- I may have

3    bored one or two of you with this comment in the past -- I

4    have a box in my office that I keep in the closet of various

5    things from my prior life as a lawyer to remind me of how

6    difficult it can be in the attorney/client relationship and

7    people having strong views.  So I no longer have that

8    problem.  I've exchanged that for other problems -- well,

9    challenges.  It's not a problem.  It's a challenge.  So, yes

10   -- so again, you know, things work well in this court

11   because we have a very impressive bar that is very good at

12   what they do.  And so we really -- cases should take

13   advantage of that.  So go ahead, Mr. Rosen.

14           MR. ROSEN:  Thank you, Your Honor.  With respect

15   to the forbearance, we also agree with you because that is

16   something that we believe that at the point that we get

17   involved in mediation, if necessary, we believe it's

18   something that the mediator should take up with the parties

19   and if it's in the best interest of the mediation, go

20   forward.  I'm sure everybody will reach the correct

21   conclusion.

22           Your Honor, as far as timing, you know, we'll work

23   with whatever works best for all the parties and the Court.

24   You know, we're just happy to get his process moving along

25   as quickly as possible, and we're prepared to be engaged in

1    the mediation as I said before.  Thank you.

2            THE COURT:  All right.  Thank you very much.

3    Anyone else who wishes to be heard on the issues we're

4    discussing?

5            MR. O'NEAL:  Your Honor, I don't know if I'm

6    permitted to speak again but would like to follow --

7            THE COURT:  You are but let me just make sure

8    there's no one else.  I -- sometimes I see people --

9            MR. O'NEAL:  Certainly.

10           THE COURT:  -- appear to be gesturing towards

11   their computer to unmute themselves but I'm never quite sure

12   so I always want to wait a beat to see if there's anybody

13   else who wants to be heard, and I do see a hand raised.

14   Thank you very much for that.  That's a clear sign.  So Mr.

15   O'Neal, I think we'll leave you bat cleanup.

16           So Mr. Anson.

17           MR. FREYLINGHUYSEN:  Yeah, Anson Frelinghuysen

18   from Hughes Hubbard & Reed for Gemini Trust Company.

19           We just want to say how important it is for Gemini

20   Trust Company on behalf of its 340,000 users that this

21   process be accelerated.  We were extremely pleased with the

22   momentum that brought us through to the proposed term sheet.

23   That was two months ago -- a little more than two months ago

24   -- and since then, it has been very slow to the point where

25   we are dealing with a lot of issues every day from our

Page 17

1    (indiscernible) users that are stuck in the Genesis

2    bankruptcy, and we are trying our best to do the best for

3    them and it seems at times it is going in the right path.

4            MR. FREYLINGHUYSEN:  Mr. O'Neal mentioned that we

5    might need a mediator for our mediator session.  That is an

6    unacceptable -- it's a funny --

7            THE COURT:  No, I think that was just trying to

8    find humor in the challenges that everyone faces.

9            MR. FREYLINGHUYSEN:  Right.  But I think it belies

10   the problem where we have, you know -- constantly butting

11   heads and I really would encourage --

12           THE COURT:  Don't worry.  I promise you I will not

13   appoint a mediator to determine the ground rules for

14   mediation.  Whatever is going to happen, I can promise you

15   that's off the table.

16           MR. FREYLINGHUYSEN:  We are just down the street

17   from most of these parties and most of these attorneys.

18   We're in the office every day.  We're ready to meet with

19   them.  We're ready to talk.  We're ready to get a deal done,

20   and we're ready to do that for our users, and we hope that

21   all the other parties are too.  And we're ready to mediate

22   if that's what needs to happen.  It doesn't seem to be the

23   time for it, though.

24           THE COURT:  All right.  Anyone else who wishes to

25   be heard?

Page 18

1          MS. LIOU:  Yes, Your Honor.  Jessica Liou from

2     Weil on behalf of Digital Currency Group.

3          I just want to echo everyone's comments and

4     indicate that DCG is prepared to participate in the

5     mediation process and that we are generally supportive of

6     any process that will bring the parties together in a

7     constructive and productive manner to fashion a consensus

8     that minimizes costs to the Debtors' estates and their

9     Creditors and maximizes recovery overall to all the Creditor

10    groups.

11         I do want to say that putting aside whatever

12    mischaracterizations may have been made about my client's

13    statements publicly or otherwise in the Twitterverse, we all

14    take the judge's comments to heart and we hope that everyone

15    else here as well takes the judge's comments to heart about

16    the public statements that can be made that both result in a

17    productive process all in a productive --

18         THE COURT:  All right.  Yeah, my intent is not to

19    point a finger at anyone.  My intent is to just help the

20    parties move forward so let me make that clear.  Anyone else

21    who wishes to be heard?  All right.

22         Before Mr. O'Neal jumps back in, I have -- let me

23    ask the specific question.  What is the deadline here that

24    is driving the timing -- and I know that was the substantive

25    issues that Mr. Shore mentioned before about essentially --

Page 19

1    that's wrapped up in all this.  What's that date?

2            MR. O'NEAL:  Sure, Your Honor.  I think there's a

3    few things going on.  I mean, one is, to what counsel to

4    Gemini stated, is just the desire to move more quickly

5    because every moment of this case as long it goes, you know,

6    has a -- delays and it delays Creditor recovery.  So I think

7    we start with that proposition which is that we had a term

8    sheet that was agreed upon and -- on February 10th.  It's

9    now, you know, almost three months --

10           THE COURT:  No, no, I got that.  But what is the -

11   - it sounds like there's a deadline coming up --

12           MR. O'NEAL:  Yeah, and that's the next --

13           THE COURT:  -- there's a general idea of pushing

14   off that deadline to allow mediation.  My question is, what

15   is that deadline.

16           MR. O'NEAL:  Sure, sure.  And -- but I just wanted

17   you to know that there's -- that it's an overall desire to

18   move as well.  But on May 9th, 10th, and 11th, DCG owes GGC

19   appropriate in total $630 million.

20           THE COURT:  All right.

21           MR. O'NEAL:  May 9th is about 200 million.  May

22   10th is about 100 million, and then May 11th is around 330

23   million.

24           THE COURT:  All right.

25           MR. O'NEAL:  And so --

```
 1              THE COURT:  So -- but let me -- so let me build on

 2      that a bit.  As you all know in your experience, things work

 3      least well when people have to act to protect their rights

 4      as a theoretical matter, right, to say, well, you know,

 5      let's talk about an extension.  What does that look like and

 6      how is it going to play out and things.

 7              My suggestion is that's it's April 25th.  There is

 8      time between now and May 9th to address this question of

 9      whatever the deadlines are.  I'm not saying they're not

10      important.  They're obviously hugely important.  But if we

11      let that bog us down before we actually go ahead with

12      mediation -- you can have mediation sessions that happen

13      between now and the first of these deadlines.  You can

14      mediate the entire thing theoretically.

15              And so my thought is that the theoretical issues

16      that will -- where the rubber hits the road on May 9th,

17      10th, and 11th -- let's just -- everybody preserves their

18      rights and why not leverage those deadlines as a way to try

19      to get this process moving, and we can talk about it at the

20      same time.  Now if the mediation falls apart or is

21      threatened to fall apart because of it, then we can talk

22      about it and I'm happy to do that.  Everybody keeps their

23      powder dry by agreeing to move forward with the mediation.

24      Nobody's waiving their rights on any of this substance of

25      what happens on the 9th, 10th, and 11th.
```

1          But my thought is, we're -- you don't want to

2     fiddle while Rome burns so I'm just wondering if it isn't

3     wise, if you get a mediator and pick some dates and try to

4     get some things done, that we do that, and if the mediation

5     order needs to be explicit to reserve everybody's rights on

6     that substantive issue -- which I don't think is necessary

7     but I understand people get nervous and they don't want

8     their consent in one thing to be construed in -- as consent

9     on something else -- we can make that very explicit.  And I

10    will remain available to deal with those issues if we need

11    to get there.

12         But I just don't want to have people gear up the

13    war machine to deal with those issues in an evidentiary way

14    when you're really are hoping to have discussions.  So

15    again, I realize I'm not in the room and I learned as a

16    lawyer on that side of the bench that judges are always not

17    as well informed about what's going on in the case as the

18    lawyers are so there's that caveat for my comments.  At the

19    same time, whenever I have to deal with cases where people

20    are sort of protecting their rights -- say, Judge, we don't

21    know if we're going to get there, but if we get there, we

22    have the following problems with this issue -- it's always -

23    - it's almost always inefficient and if we can find a way to

24    at least kick that can down the road a little bit to allow

25    some progress or process to start that everybody agrees that

Page 22

 1   that's otherwise a good idea, let's see if we can navigate

 2   that.

 3          And I'm happy to make myself available to talk

 4   through that, to talk about language, to do whatever it

 5   takes to get there.  And in the meantime, you can -- if you

 6   haven't secured somebody who wishes -- is willing to mediate

 7   yet, then I'm happy to help you with that as well.  But I

 8   understand, there's a significant issue out there.  It's

 9   clearly a significant issue, but today's the 25th of April.

10   That's May 9th and it's the bankruptcy court where we do a

11   lot of things in a really short amount of time, and so I

12   throw that out there for what it's worth in terms of trying

13   to move the process forward.

14          MR. O'NEAL:  Your Honor, may I just maybe hop in

15   here on two points.  One, would you entertain -- if

16   everybody who is a named mediation party came up with an

17   agreed mediation order, would you entertain it under a COC?

18   And then we don't have to wait until the end of next week to

19   try to get somebody in place.

20          THE COURT:  If there's an agreement to mediate and

21   you all have a proposed order and you want to submit it to

22   me, I will sign it.  Yes.  And so I trust that you all are

23   keeping people involved and so nobody has some profound --

24   there's nothing that's profoundly odd about the order that

25   somebody feels surprised about.

Page 23

```
 1            But if it's a mediation order that's sort of a
 2    standard order, yeah, you get it to me.  You can put it on
 3    presentment for -- you give it to me that day and you put it
 4    on presentment to 12:00 noon the next day.  I'd have no
 5    problem with that.  We're here to try to help the parties
 6    get done what they need to get done.  Yeah, absolutely.
 7            MR. O'NEAL:  And just so Your Honor can understand
 8    and I think you appreciate, we're all -- everybody on this
 9    Zoom right now is involved in other crypto cases.  We're
10    speaking from just experiences in what has gone on in the
11    past and every single case where you blow a maturity on a
12    loan and extend it out and then it gets paid, those -- all
13    debtors get caught in a situation where their repayments get
14    clawed back as a preference or anything else.  There are a
15    lot of economic issues that's surround the extension of a
16    loan to a party who is engaged in the crypto space.
17            So we'll work --
18            THE COURT:  I can imagine.
19            MR. O'NEAL:  -- but it's going to -- it has to be
20    addressed.
21            THE COURT:  Yeah.  And so one way to do that would
22    be to schedule -- I'm a big fan of regular status
23    conferences which allow people to say, Judge, I'm getting
24    nervous about this issue.  I want to tell people and
25    publicize that I'm getting nervous about this issue.  I'm
```

Page 24

1    not filing something but if I do need to file something,

2    what time would work for the Court to put everybody on

3    notice.  But it allows people to not have to start to file

4    things and so we can have as many status conferences as are

5    helpful so that people can keep their powder dry and not to

6    file an engage on the issues but -- again, I understand.

7           I'm not surprised that there's a huge amount of

8    issues dealing with the extension and maturity.  That makes

9    perfect sense to me.  I mercifully don't know what all of

10   those issues are yet, but we'll get there if we have to get

11   there.  But I certainly think process-wise, we can hopefully

12   find a way given the smarts of the people on this call to at

13   least table that for a little bit so that you can get the

14   mediation off and running as quickly as possible.  Have as

15   many sessions as you can squeeze in.

16          And then also a certain -- people don't want to

17   agree to things when they feel like it's a blank check.

18   Nobody likes a blank check.  And so I can understand that in

19   the context of a mediation it might be easier to reach

20   certain kinds of agreements about the commercial realities

21   you all face.  But again, you know better than I do on that

22   front.  So Mr. O'Neal, I know we were going to circle back

23   to you.

24          MR. O'NEAL:  Yeah.  Three points.  Number one is,

25   what we're trying to achieve is actually that consensual

Page 25

1    order that we can present to you.  Then we don't need a

2    hearing.  So we'd like to use the next few days to do that.

3         THE COURT:  Yeah.  I mean, my thought is, take a

4    sample form order and if there's a speech somebody wants to

5    make on the record so that they preserve their rights if

6    you're having trouble ironing out the precise

7    (indiscernible) go in the order -- don't wait.  I'll -- you

8    can put it on for -- you can get a garden variety order.

9    You all have them, a mediation order, and you say, Judge,

10   our agreement to do this is conditioned on the following.

11   And then make that speech on the record and make whatever

12   record you need to do -- anybody needs to -- to lower the

13   blood pressure of their clients.  That's fine.

14        I'm open to suggestions I guess is what I'm saying

15   as to how to best do that in an efficient way that doesn't

16   waste all of your time and money and your clients' money and

17   allows you to go forward.  So my thought is, don't -- I

18   wouldn't dither in the sense saying, well, we're going to

19   work on perfect language.  Let's just get a form order and

20   get it entered, and, again, I'm happy to put anything on the

21   record that people want to do.  That sometimes is just

22   easier to do.

23        But, again, you all are smart people.  You'll come

24   up with suggestions, but the sooner the better in my eyes

25   and I'm -- I'll make myself available at the drop of a hat.

Page 26

1    You just let me know and we can have whatever proceedings

2    you need to say whatever needs to be said on the record to

3    smooth the pathway.

4              MR. O'NEAL:  We appreciate that, Your Honor.

5              And I'm going to -- there's a little bit more

6    context on the forbearance issue that I just want to

7    describe.  I really don't want to go down the rabbit hole,

8    but I do want to give you a little bit of insight into some

9    of the views, which is basically that the desire is to have

10   people focused on the mediation and a potential resolution

11   versus obtaining financing to take out the debt that is due

12   on May 9th, 10th, and 11th, and then the implications that

13   the financing could have with terms of financing, expense of

14   the financing, the rights that the lenders may have under

15   that financing.

16             So it is a rather -- you know, there are creditors

17   that are worried about that as well so I just wanted to give

18   you that insight.  I don't want to go down too far into that

19   road, but I did want you to know that it's a rather

20   complicated issue as you --

21             THE COURT:  Listen, I totally understand that in

22   my job it's much easier to simplify these things because I

23   don't have to deal with those realities and I have no doubt

24   that it is not nearly as simple as one might hope.  And so

25   it's not as easy as just waving it off until the last second

Page 27

1    because given what you need to do, it's unclear what that

2    is.

3              MR. O'NEAL:  Correct.

4              THE COURT:  I guess my thought is that, rather

5    than let it be an impediment to starting conversations,

6    let's not do that, and if it means that people have to do

7    work on both fronts, that may be somewhat regrettable but it

8    might be better off to just get that mediation started so

9    that you can see what progress you're making.

10             MR. O'NEAL:  Understood, Your Honor.  Appreciate

11   those comments and that guidance.

12             I think next step is -- we just need to identify

13   the date of a hearing.  I think Mr. Shore had requested May

14   8th.  I think we do have some concerns just from a timing --

15             THE COURT:  Well, here's my thought is, if you can

16   come up with a garden variety order, just give it to me.  I

17   mean, you know, if your deadline is May 9th and we're

18   talking about May 8th, I don't think we've succeeded this

19   afternoon as -- the way we had hoped.

20             So, you know, my thought is, I don't know why that

21   can't be just done this week -- an order can't be entered

22   sometime this week if it's not something that you need a

23   knock-down, drag-out fight over.  And the mediation process

24   itself (indiscernible) right?  What I haven't heard today is

25   somebody say, Judge, we think mediation's a terrible idea

1    and we don't want to do it.

2           So in light of that, let's just get a mediation

3    order entered even if it's a vanilla one-paragraph order

4    that appoints a mediator and reserves everyone's rights on

5    all other issues.

6           MR. O'NEAL:  Sure.  Can we set up a date for a

7    hearing in the event that we don't achieve that consensual

8    approach or a status conference or something --

9           THE COURT:  Well, my thought -- yeah.  I'm happy

10   to do that.  I'm happy to set up a status conference.  Today

11   is -- what -- Tuesday?  I certainly have time Friday, but

12   I'm happy to set it up before then if just to keep the

13   pressure on.  I mean, again, you'll have to tell me what's -

14   - I don't want to waste all your time and have everybody get

15   together and you say, well, Judge, we'll still working on

16   it.

17          But if the deadline for the 9th, 10th, and 11th

18   are a concern, it seems like a terrible idea to wait to get

19   an order entered until later.  But, again -- you know, I

20   never get a full picture so there's clearly other things

21   going on here that are more complicated than we've gotten a

22   chance to get into today, but I'm happy to set whatever

23   conference date this week works.

24          And I understand Mr. Shore has got some other

25   things going on.  That's perfectly fine and understandable.

Page 29

1    I guess my thought is if we can make it so that the order

2    that's entered is nothing that's controversial then he

3    doesn't have to engage in -- at least in this courthouse in

4    any sort of contested hearing or something that requires

5    that kind of band width.  But, again, you'll have to let me

6    know if this works.

7         MR. O'NEAL:  Sure.  And --

8         THE COURT:  And this is putting aside getting a

9    mediator in the first instance so you'll have to let me know

10   where you are on that.  I know from my own experience that

11   that can be done in a lot of different ways.  Because I

12   don't know the timing of everything and that's what we're

13   talking about, I haven't sent out an email request to my

14   colleagues.  I do know that from my own personal experience

15   I have gotten calls in cases from people saying, are you

16   free for mediation.  My usual response is, does the judge

17   whose case this is know you're calling me.

18        So I'm happy to have you call people if you think

19   that that's useful and try to set that up.  Just do me the

20   favor of always letting that judge know -- we've spoken to

21   Judge Lane.  He said it's okay to call just so that they

22   don't -- they sort of can check that box off and then think

23   about their timing.

24        But -- so let me ask the group then, what do you

25   think would be helpful?  Do you want to get together

Page 30

1    tomorrow?  Do you want to get together Thursday?  Do you

2    want to get together Friday?  Again, just as a status not as

3    a substantive hearing just to figure out where we are.

4              MR. O'NEAL:  Your Honor, I believe that a Friday

5    status conference would give us sufficient time to try to

6    reach a conclusion, but I'm looking to my colleagues on the

7    screen to see if that sounds amenable to them.  Any

8    (indiscernible)?

9              MR. ROSEN:  Sean, this is Brian.  Other than the

10   fact than you -- Sean meaning Sean O'Neal, excuse me --

11   sorry about that.

12             THE COURT:  Not at all.

13             MR. ROSEN:  Friday would be fine, Sean, although

14   you and I have something we have to do from 10:30 to 12:00 I

15   think.

16             MR. SHORE:  Can we do it early in the morning?

17             MR. ROSEN:  That's fine with me.  9:00 a.m. is

18   fine, Chris.

19             MS. LIOU:  Fine here.

20             MR. FREYLINGHUYSEN:  That also works for Gemini.

21             THE COURT:  All right.  So we'll say Friday at

22   9:00, status.  Nobody needs to be file anything.  It's an

23   opportunity to vent -- to air any concerns you have with

24   everybody preserving all their rights.  And if I can be

25   helpful before then, fine.  Just let me know and also if you

Page 31

```
 1    reach a -- there's a way to resolve the issues and you have

 2    a form order, just get it to me and we'll think about what

 3    the process is to get that entered if it's notice of

 4    presentment or even if it's a stipulation.  Whatever it is.

 5    We can figure out how to do it promptly so that would be

 6    fine.

 7              So for Friday, I'm assuming it's on the record and

 8    if for some reason that changes, you know, let me know, and

 9    just to assuage any concerns, in suggesting bench

10    conferences, again, I throw that -- I'm not suggesting

11    offering them.  I offer them just because I don't know

12    what's going on and there have been times I've been told by

13    attorneys it would be helpful to have something off the

14    record so that you're not having sensitive discussions in

15    the public.  But, again, it's always a condition upon folks

16    who are interested parties to be included in those bench

17    conferences.  So, again, I just make those offers just to

18    see, again, whatever's useful for the case, to keep the case

19    moving and so I'll be guided by the parties' wisdom on that.

20              MR. O'NEAL:  Thank you, Your Honor.  The bench

21    conferences in the White Plains Bankruptcy Court are

22    legendary so we appreciate your offer.

23              THE COURT:  Well, I have big shoes to fill that

24    way.  I know Judge (indiscernible) accomplished at that.

25              MR. O'NEAL:  And lastly, to avoid any confusion, I
```

Page 32

1   was not serious when I said that we need a mediator for a

2   mediator so I do want to clear that up.  So thank you very -

3   -

4            THE COURT:  We find humor where we can.  That's

5   perfectly fine.  All right.  With that, anything else from

6   any other party?

7            MR. SHORE:  No, sir.  Thank you.

8            MR. ROSEN:  I think we're going to need a setting

9   on the 353 aspect but why don't we just take that up on

10  Friday if we haven't worked it out.

11           THE COURT:  All right.  All right.  I will see you

12  all -- I'll see some of you I guess tomorrow for other

13  things and I will see you all on Friday at 9:00 a.m.  Again,

14  if I can be of any help between now and then, talk amongst

15  yourselves and then just reach out to chambers.

16           And with that, have a good rest of your afternoon.

17           MR. O'NEAL:  Thank you.

18           THE COURT:  Thank you.

19           MS. LIOU:  Thank you.

20           MR. SHORE:  Thank you, Your Honor.

21           MR. FREYLINGHUYSEN:  Thank you, Your Honor.

22           (Whereupon these proceedings were concluded at

23  0:00 PM)

24

25

Page 33

1          C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7   *[signature]*

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  April 28, 2023

| & | | | |
|---|---|---|---|
| **&** 6:1,19,24 7:8 10:24 16:18 | **25th** 20:7 22:9 **28** 33:25 **2:30** 5:4 **2:35** 1:16 **2nd** 9:15 | **absolutely** 23:6 **academic** 10:7 10:7,14 **accelerated** 16:21 **accomplished** 31:24 **accurate** 33:4 **achieve** 9:4,18 24:25 28:7 **achieves** 9:1 **achieving** 7:25 **act** 13:5 20:3 **action** 13:3 **actual** 13:24 **actually** 10:12 10:12 11:1,13 20:11 24:25 **ad** 3:19 6:4 7:16 14:10,13 **address** 20:8 **addressed** 11:17 23:20 **advantage** 15:13 **advisable** 12:21 **aeromexico** 11:20 **afternoon** 5:2 5:16,25 6:3,18 6:21,23 7:1 27:19 32:16 **agent** 4:9 **ago** 16:23,23 **agree** 15:15 24:17 | **agreed** 19:8 22:17 **agreeing** 20:23 **agreement** 7:23 22:20 25:10 **agreements** 24:20 **agrees** 21:25 **ahead** 14:8 15:13 20:11 **air** 30:23 **allow** 19:14 21:24 23:23 **allows** 24:3 25:17 **amenable** 30:7 **americas** 3:13 **amount** 22:11 24:7 **angling** 10:19 **anson** 4:13 6:24 16:16,17 **anticipate** 14:7 **anticipated** 10:18 **anybody** 16:12 25:12 **anyway** 12:9 **apart** 20:20,21 **apologize** 6:6 **appear** 9:20 16:10 **appearance** 5:23,24 6:4,17 **appearances** 6:13 |

| 0 | 3 |
|---|---|
| **0:00** 32:23 | **300** 1:12 33:22 **330** 19:22 33:21 **340,000** 16:20 **353** 32:9 |

| 1 |
|---|
| **100** 19:22 **10004** 4:11 **10006** 3:6 **10020** 3:14 **10153** 4:4 **10304** 3:21 **10601** 1:13 **10:30** 30:14 **10th** 8:6 19:8 19:18,22 20:17 20:25 26:12 28:17 **11501** 33:23 **11th** 19:18,22 20:17,25 26:12 28:17 **12151** 33:7 **1221** 3:13 **12:00** 23:4 30:14 |

| 5 |
|---|
| **5th** 9:16 |

| 6 |
|---|
| **600** 11:10 **630** 19:19 |

| 7 |
|---|
| **767** 4:3 |

| 8 |
|---|
| **8th** 27:14,18 |

| 9 |
|---|
| **9:00** 30:17,22 32:13 **9th** 19:18,21 20:8,16,25 22:10 26:12 27:17 28:17 |

| 2 |
|---|
| **200** 19:21 **2023** 1:15 33:25 **23-10063** 1:3 **248** 1:12 **25** 1:15 **252** 2:1 **253** 2:4 |

| a |
|---|
| **a.m.** 30:17 32:13 **abelson** 6:2 **ability** 9:7 13:16 |

**appoint** 17:13
**appointing** 2:6
**appointment** 2:2,5
**appoints** 28:4
**appreciate** 7:9 14:23 23:8 26:4 27:10 31:22
**approach** 7:24 8:17 9:5,19 28:8
**appropriate** 5:20 19:19
**approve** 9:6
**april** 1:15 20:7 22:9 33:25
**art** 1:25
**aside** 18:11 29:8
**asked** 8:16,18
**aspect** 32:9
**assuage** 31:9
**assuming** 31:7
**attempt** 7:11
**attempts** 7:23
**attorney** 15:6
**attorneys** 3:4 3:11,19 4:2,9 12:19 14:13 17:17 31:13
**authorizing** 11:9
**available** 21:10 22:3 25:25
**avenue** 3:13 4:3

**avoid** 31:25

**b**

**b** 1:21 4:13
**back** 5:7 10:7 18:22 23:14 24:22
**ballpark** 7:19
**band** 29:5
**bankruptcy** 1:1,11,23 5:3 10:13 13:4 17:2 22:10 31:21
**bar** 15:11
**basically** 26:9
**bat** 16:15
**battery** 4:10
**bear** 9:17
**beat** 16:12
**behalf** 6:1,19 6:25 7:8 10:24 16:20 18:2
**belies** 17:9
**believe** 15:16 15:17 30:4
**bench** 21:16 31:9,16,20
**benefit** 12:18 14:19,22
**best** 5:8 8:4 14:20 15:19,23 17:2,2 25:15
**better** 9:1 13:9 24:21 25:24 27:8
**big** 23:22 31:23

**biggest** 6:9
**bit** 7:21 8:5 10:14 20:2 21:24 24:13 26:5,8
**blank** 24:17,18
**blessed** 6:10
**blood** 25:13
**blow** 23:11
**bog** 20:11
**bore** 10:17
**bored** 15:3
**box** 15:4 29:22
**brian** 3:23 6:5 14:12 30:9
**briefly** 7:5
**bring** 18:6
**brought** 16:22
**build** 7:19 20:1
**burns** 21:2
**butting** 17:10
**buy** 10:16 11:2 11:4

**c**

**c** 3:1 5:1 33:1,1
**calendar** 11:23
**call** 14:13 24:12 29:18,21
**calling** 29:17
**calls** 29:15
**calmed** 14:6
**case** 1:3 3:10 6:1 10:24 12:18 19:5 21:17 23:11 29:17 31:18,18

**cases** 15:12 21:19 23:9 29:15
**caught** 6:7 23:13
**caveat** 21:18
**certain** 24:16 24:20
**certainly** 16:9 24:11 28:11
**certified** 33:3
**challenge** 15:9
**challenges** 15:9 17:8
**chambers** 32:15
**chance** 28:22
**chances** 13:21
**changes** 31:8
**chapman** 13:10
**check** 24:17,18 29:22
**chris** 3:16 5:25 10:23 30:18
**circle** 9:21 10:21 24:22
**circuit** 11:1
**clawed** 23:14
**cleanup** 16:15
**clear** 8:10 16:14 18:20 32:2
**clearly** 22:9 28:20
**cleary** 3:3 7:8

client 15:6
client's 18:12
clients 12:19
  25:13,16
closet 15:4
coat 6:6
coc 22:17
colleague 6:8
colleagues
  29:14 30:6
come 5:19
  25:23 27:16
coming 19:11
comment 15:3
comments
  12:25 14:25
  18:3,14,15
  21:18 27:11
commercial
  24:20
committee
  3:11 7:17 8:10
  8:10 10:22,24
committee's
  5:23
company 4:9
  6:25 16:18,20
competent
  12:19
complicated
  26:20 28:21
computer
  16:11
concern 28:18
concerned 8:4
concerns 27:14
  30:23 31:9

concluded
  32:22
conclusion
  15:21 30:6
condition
  31:15
conditioned
  25:10
conduct 14:17
conference 2:1
  2:4 5:5 7:10
  28:8,10,23
  30:5
conferences
  23:23 24:4
  31:10,17,21
confidential
  13:14
confirming 5:6
confusion
  31:25
consensual 8:2
  9:1,19 24:25
  28:7
consensus 18:7
consent 21:8,8
consider 2:5
  11:14
constantly
  17:10
constituencies
  8:16
constructive
  18:7
construed 21:8
contested 29:4

context 24:19
  26:6
contradictory
  10:5
controversial
  29:2
conversation
  11:15 12:2
conversations
  27:5
correct 15:20
  27:3
correctly 14:16
costs 18:8
counsel 19:3
country 33:21
couple 9:22
  11:5
course 8:15
courses 13:3
court 1:1,11
  5:2,3,22 6:3,9
  6:13,21 7:1
  9:21 11:9,13
  12:17 13:4
  14:9,23 15:2
  15:10,23 16:2
  16:7,10 17:7
  17:12,24 18:18
  19:10,13,20,24
  20:1 22:10,20
  23:18,21 24:2
  25:3 26:21
  27:4,15 28:9
  29:8 30:12,21
  31:21,23 32:4
  32:11,18

court's 14:25
courthouse
  29:3
courts 11:1,1
create 8:25
creditor 8:11
  8:16 9:7 18:9
  19:6
creditors 3:12
  7:17 8:12 18:9
  26:16
critically 14:18
crypto 23:9,16
currency 4:2
  6:20 18:2
customers 3:19
cut 13:22

d

d 5:1
date 9:18 19:1
  27:13 28:6,23
  33:25
dates 10:20
  21:3
day 16:25
  17:18 23:3,4
days 8:1 25:2
dc 14:5
dcg 7:17 12:12
  14:22 18:4
  19:18
deadline 18:23
  19:11,14,15
  27:17 28:17
deadlines 20:9
  20:13,18

**deal** 17:19
21:10,13,19
26:23
**dealing** 16:25
24:8
**debt** 26:11
**debtor** 1:9 3:4
**debtor's** 2:5
11:3,8
**debtors** 7:8
18:8 23:13
**decision** 11:3
**delays** 19:6,6
**describe** 26:7
**desire** 9:18
19:4,17 26:9
**determine**
17:13
**difference**
10:12
**different** 12:3
13:16 29:11
**difficult** 11:19
15:6
**digital** 4:2 6:20
18:2
**diminished**
13:17
**direction** 8:9
**directions**
13:16
**discovery** 14:3
**discrete** 13:18
**discussed**
13:19
**discussing** 16:4

**discussion** 5:7
7:10,11 10:18
**discussions**
7:15,21 21:14
31:14
**disembodied**
5:9
**district** 1:2 5:4
**dither** 25:18
**doc** 2:1,4
**doing** 10:6
12:9
**doubt** 26:23
**drag** 27:23
**driving** 18:24
**drop** 25:25
**dry** 13:11
20:23 24:5
**due** 12:6 26:11
**duration** 8:21

**e**

**e** 1:21,21 3:1,1
5:1,1 33:1
**early** 30:16
**easier** 12:14
24:19 25:22
26:22
**easy** 26:25
**echo** 18:3
**economic**
23:15
**economically**
13:5
**ecro** 1:25
**efficient** 25:15
**efforts** 8:25 9:9

**electronic** 5:10
**eleven** 3:20
**email** 29:13
**encourage** 12:6
12:6,10 17:11
**engage** 12:7
24:6 29:3
**engaged** 15:25
23:16
**entered** 25:20
27:21 28:3,19
29:2 31:3
**entertain**
22:15,17
**entire** 20:14
**essentially**
18:25
**estate** 8:4
**estates** 18:8
**event** 28:7
**everybody**
13:10 14:16
15:20 20:17,22
21:25 22:16
23:8 24:2
28:14 30:24
**everybody's**
21:5
**everyone's**
18:3 28:4
**evidentiary**
9:16,25 11:6
14:1 21:13
**exactly** 5:17
**exchanged**
15:8

**excuse** 30:10
**expense** 26:13
**experience**
10:16 11:2
20:2 29:10,14
**experienced**
12:18
**experiences**
23:10
**explicit** 21:5,9
**exploding**
12:15
**extend** 23:12
**extension**
11:10 20:5
23:15 24:8
**extensively**
13:20
**extremely**
16:21
**eyes** 25:24

**f**

**f** 1:21 33:1
**face** 24:21
**faces** 17:8
**fact** 8:22 30:10
**fail** 9:9
**fall** 20:21
**falls** 20:20
**fan** 23:22
**far** 13:24 15:22
26:18
**fashion** 18:7
**favor** 29:20
**february** 8:6
19:8

feel 24:17
feels 22:25
fiddle 21:2
fifth 4:3
fight 27:23
figure 30:3
31:5
file 24:1,3,6
30:22
filed 7:18 8:6
filing 24:1
fill 31:23
financing
26:11,13,13,14
26:15
find 17:8 21:23
24:12 32:4
fine 5:22 25:13
28:25 30:13,17
30:18,19,25
31:6 32:5
finger 18:19
firing 13:15
first 9:9 11:5,8
20:13 29:9
fits 10:6
fly 12:12
focused 26:10
folks 6:14
31:15
follow 16:6
following
21:22 25:10
forbearance
15:15 26:6
forebear 11:10

foregoing 33:3
form 8:2 25:4
25:19 31:2
forth 5:7
forward 15:20
18:20 20:23
22:13 25:17
found 10:12
free 29:16
frelinghuysen
4:13 6:23,24
16:17
freylinghuysen
16:17 17:4,9
17:16 30:20
32:21
friday 13:25
28:11 30:2,4
30:13,21 31:7
32:10,13
front 24:22
fronts 27:7
full 14:8 28:20
funny 17:6

**g**

g 5:1
garden 25:8
27:16
gear 21:12
gemini 4:9
6:25 16:18,19
19:4 30:20
general 6:16
19:13
generally 18:5
genesis 1:7
3:19 5:5 17:1

gesturing
16:10
getting 23:23
23:25 29:8
ggc 19:18
give 23:3 26:8
26:17 27:16
30:5
given 24:12
27:1
glad 14:25 15:1
global 1:7 5:5
go 15:13,19
20:11 25:7,17
26:7,18
goes 19:5
going 7:3,11
8:5,14,23 9:21
11:12,25 12:14
14:2,2,7,20
17:3,14 19:3
20:6 21:17,21
23:19 24:22
25:18 26:5
28:21,25 31:12
32:8
good 5:2,16,25
6:3,18,21,23
7:1 9:25 10:4
10:16 15:11
22:1 32:16
gotshal 4:1
gotshall 6:19
gotten 28:21
29:15
gottlieb 3:3 7:8

great 11:3
12:22
greatly 13:17
ground 17:13
group 3:19 4:2
6:20 7:16
14:10,14 18:2
29:24
group's 6:4
groups 18:10
guess 10:6
25:14 27:4
29:1 32:12
guidance 27:11
guided 31:19
guiding 8:13

**h**

h 1:22
hamilton 7:8
hand 16:13
hands 8:12
happen 7:20
17:14,22 20:12
happens 20:25
happy 15:24
20:22 22:3,7
25:20 28:9,10
28:12,22 29:18
hash 9:20
hat 25:25
head 11:25
heads 17:11
hear 13:8
14:10
heard 5:10
10:14,25 16:3
16:13 17:25

18:21 27:24

**hearing**  2:1,4
  7:4 9:12,16,25
  12:8 25:2
  27:13 28:7
  29:4 30:3
**heart**  18:14,15
**heartened**  11:3
**help**  9:8,10
  18:19 22:7
  23:5 32:14
**helpful**  13:8
  24:5 29:25
  30:25 31:13
**highly**  10:3
  12:19,21
**hired**  12:23
**hit**  8:5
**hits**  20:16
**hoc**  3:19 6:4
  7:16 14:10,13
**hold**  7:12
**holdco**  1:7 5:5
**hole**  26:7
**hon**  1:22
**honor**  5:16,25
  6:5,18,23 7:7
  7:20 9:3,7,12
  9:17 10:23
  11:7 12:5,9
  13:23 14:11
  15:14,22 16:5
  18:1 19:2
  22:14 23:7
  26:4 27:10
  30:4 31:20
  32:20,21

**hop**  22:14
**hope**  7:18 9:4
  14:21 17:20
  18:14 26:24
**hoped**  27:19
**hopefully**
  24:11
**hoping**  13:25
  21:14
**hubbard**  4:8
  6:24 16:18
**huge**  24:7
**hugely**  20:10
**hughes**  4:8
  6:24 16:18
**humor**  17:8
  32:4
**hyde**  2:25 33:3
  33:8

### i

**idea**  9:25 10:4
  19:13 22:1
  27:25 28:18
**identify**  27:12
**imagine**  23:18
**immediately**
  12:17
**impasse**  8:5
**impediment**
  27:5
**implications**
  26:12
**important**
  14:18 16:19
  20:10,10
**impressive**
  15:11

**improbable**
  10:3
**included**  31:16
**indicate**  18:4
**indiscernible**
  11:2 14:4 17:1
  25:7 27:24
  30:8 31:24
**inefficient**
  21:23
**information**
  14:19
**informed**
  21:17
**insight**  26:8,18
**instance**  29:9
**institutions**
  13:1
**intent**  18:18,19
**intentions**  5:6
**interest**  5:18
  12:20 15:19
**interested**
  31:16
**invited**  11:21
**involved**  15:17
  22:23 23:9
**ironing**  25:6
**issue**  11:6,11
  11:15 14:1,24
  21:6,22 22:8,9
  23:24,25 26:6
  26:20
**issues**  8:15,20
  16:3,25 18:25
  20:15 21:10,13
  23:15 24:6,8

24:10 28:5
31:1
**it'll**  14:6

### j

**jessica**  4:6 6:19
  18:1
**jim**  7:16
**job**  8:11 10:1
  26:22
**jobs**  12:23
**jordan**  6:8
**judge**  1:23 5:2
  13:10 21:20
  23:23 25:9
  27:25 28:15
  29:16,20,21
  31:24
**judge's**  18:14
  18:15
**judges**  10:13
  21:16
**jump**  12:17
**jumps**  18:22

### k

**keep**  13:11,11
  15:4 24:5
  28:12 31:18
**keeping**  22:23
**keeps**  20:22
**kick**  21:24
**kind**  7:23 8:2,7
  8:7 9:4 29:5
**kinds**  24:20
**knock**  27:23
**know**  5:7,19
  8:7,22 9:3,15

9:16 10:2,17
11:6,19,24
12:25 13:8
14:13,20 15:10
15:22,24 16:5
17:10 18:24
19:5,9,17 20:2
20:4 21:21
24:9,21,22
26:1,16,19
27:17,20,20
28:19 29:6,9
29:10,12,14,17
29:20 30:25
31:8,8,11,24
**knows**  9:7

**l**

**lack**  6:6
**lane**  1:22 5:3
  29:21
**language**  22:4
  25:19
**lastly**  31:25
**late**  7:17
**lawyer**  15:5
  21:16
**lawyers**  12:22
  13:12,13 21:18
**learned**  10:1,2
  21:15
**leave**  16:15
**ledanski**  2:25
  33:3,8
**legal**  33:20
**legendary**
  31:22

**lenders**  26:14
**lengthy**  10:18
**letting**  29:20
**leverage**  20:18
**liberty**  3:5
**life**  6:10 15:5
**light**  8:13 28:2
**likes**  24:18
**liou**  4:6 6:18
  6:19 18:1,1
  30:19 32:19
**listen**  6:15
  26:21
**litigation**  9:2
**little**  7:21
  10:14 16:23
  21:24 24:13
  26:5,8
**llc**  1:7 4:9 6:25
**llp**  3:18 4:1,8
**loan**  11:11
  23:12,16
**long**  11:19 19:5
**longer**  15:7
**look**  20:5
**looking**  30:6
**lot**  6:14 7:12
  10:17 12:18
  13:4 14:19
  16:25 22:11
  23:15 29:11
**lower**  13:20
  25:12

**m**

**machine**  21:13
**made**  8:8 18:12
  18:16

**make**  5:13 6:16
  11:5 13:2 14:1
  14:16 16:7
  18:20 21:9
  22:3 25:5,11
  25:11,25 29:1
  31:17
**makes**  13:16
  24:8
**making**  27:9
**manges**  4:1
  6:19
**manner**  18:7
**matter**  1:5
  13:19 20:4
**maturity**  23:11
  24:8
**maximize**  8:11
**maximizes**
  18:9
**mean**  19:3 25:3
  27:17 28:13
**meaning**  30:10
**means**  27:6
**meant**  13:13
**mediate**  8:23
  8:23 17:21
  20:14 22:6,20
**mediated**
  11:20
**mediation**  7:18
  7:24 8:2,14,17
  8:21,21,22 9:5
  9:6,8,13,19,25
  10:7,10 11:21
  12:11,15 13:13
  14:14,17 15:17

15:19 16:1
  17:14 18:5
  19:14 20:12,12
  20:20,23 21:4
  22:16,17 23:1
  24:14,19 25:9
  26:10 27:8,23
  28:2 29:16
**mediation's**
  27:25
**mediations**
  11:19
**mediator**  2:2,6
  2:6 8:20,22
  12:4 15:18
  17:5,5,13 21:3
  28:4 29:9 32:1
  32:2
**meet**  17:18
**meeting**  14:3
**mentioned**
  17:4 18:25
**mercifully**  24:9
**merits**  7:12,13
**million**  11:11
  19:19,21,22,23
**mind**  9:17
**mineola**  33:23
**minimizes**  18:8
**mischaracter...**
  18:12
**moment**  19:5
**momentum**  8:5
  16:22
**monday**  14:6,8
**money**  12:20
  25:16,16

**month**  11:23
  11:24
**months**  16:23
  16:23 19:9
**morning**  12:13
  14:6 30:16
**motion**  2:1,4,5
  7:4,18 9:6,13
  9:14
**move**  18:20
  19:4,18 20:23
  22:13
**moving**  15:24
  20:19 31:19

**n**

**n**  3:1 5:1 33:1
**named**  22:16
**navigate**  22:1
**nearly**  26:24
**necessary**
  15:17 21:6
**need**  8:22 9:9
  11:22 12:8
  14:2,15 17:5
  21:10 23:6
  24:1 25:1,12
  26:2 27:1,12
  27:22 32:1,8
**needs**  5:8
  11:17 17:22
  21:5 25:12
  26:2 30:22
**nervous**  21:7
  23:24,25
**never**  16:11
  28:20

**new**  1:2 3:6,14
  3:21 4:4,11 5:4
  10:2
**night**  7:18 9:13
**nobody's**  20:24
**noon**  23:4
**notice**  24:3
  31:3
**number**  24:24
**ny**  1:13 3:6,14
  3:21 4:4,11
  33:23

**o**

**o**  1:21 5:1 33:1
**o'neal**  3:8 5:13
  5:16 7:6,7,7
  14:15,20 16:5
  16:9,15 17:4
  18:22 19:2,12
  19:16,21,25
  22:14 23:7,19
  24:22,24 26:4
  27:3,10 28:6
  29:7 30:4,10
  31:20,25 32:17
**o'neal's**  5:23
**obtaining**
  26:11
**obviously**
  12:19 20:10
**odd**  22:24
**offer**  31:11,22
**offering**  31:11
**offers**  31:17
**office**  15:4
  17:18

**official**  3:11
**okay**  29:21
**old**  33:21
**open**  5:18
  11:17 25:14
**opportunity**
  11:7 30:23
**order**  2:6 8:2
  9:8 11:7,8,9
  21:5 22:17,21
  22:24 23:1,2
  25:1,4,7,8,9,19
  27:16,21 28:3
  28:3,19 29:1
  31:2
**organized**  5:14
**originally**  9:2
  11:21
**overall**  18:9
  19:17
**owes**  19:18
**own**  29:10,14

**p**

**p**  3:1,1 5:1
**paid**  23:12
**panel**  10:7,8
**paragraph**
  11:8 28:3
**parent**  11:11
**park**  4:10
**part**  9:15 12:2
  14:7
**participate**
  14:14 18:4
**parties**  5:8
  12:6,6,14
  15:18,23 17:17

  17:21 18:6,20
  23:5 31:16,19
**partner**  6:2
**party**  22:16
  23:16 32:6
**passed**  14:19
**past**  7:15 15:3
  23:11
**path**  17:3
**pathway**  26:3
**people**  6:14
  7:19 10:9
  11:22 12:10
  13:1,1,2,2,5,13
  13:15,18 15:7
  16:8 20:3 21:7
  21:12,19 22:23
  23:23,24 24:3
  24:5,12,16
  25:21,23 26:10
  27:6 29:15,18
**people's**  11:16
**perfect**  24:9
  25:19
**perfectly**  14:14
  28:25 32:5
**permitted**  16:6
**personal**  13:6
  13:11 29:14
**perspective**
  14:18
**phil**  6:2
**pick**  21:3
**picture**  28:20
**place**  22:19
**plains**  1:13
  31:21

plan  9:2 11:20
platform  8:25
play  20:6
plaza  3:5 4:10
pleased  16:21
plus  11:10
pm  1:16 32:23
point  8:19 9:5
    15:16 16:24
    18:19
points  11:5
    22:15 24:24
possibility  7:25
    11:18
possible  8:13
    15:25 24:14
potential  26:10
powder  13:11
    20:23 24:5
precise  25:6
predict  11:19
preference
    23:14
preliminary
    9:23
prepared
    14:14,16 15:25
    18:4
present  25:1
presentment
    23:3,4 31:4
preserve  25:5
preserves
    20:17
preserving
    30:24

pressure  25:13
    28:13
prior  15:5
problem  6:10
    15:8,9 17:10
    23:5
problems  15:8
    21:22
proceed  5:12
proceedings
    26:1 32:22
    33:4
process  12:4,7
    12:13 13:14,15
    13:17 15:24
    16:21 18:5,6
    18:17 20:19
    21:25 22:13
    24:11 27:23
    31:3
productive
    18:7,17,17
profound
    22:23
profoundly
    13:8 22:24
progress  8:8
    21:25 27:9
promise  17:12
    17:14
promptly  31:5
proposals  8:16
    8:18
proposed  9:2
    9:13 11:7,8
    16:22 22:21

proposition
    19:7
proskauer  3:18
    6:6 14:12
protect  20:3
protecting
    21:20
provide  14:21
public  5:18
    12:10 13:19
    18:16 31:15
publicize  23:25
publicly  18:13
pursuing  13:3
pushing  19:13
put  12:1,12
    23:2,3 24:2
    25:8,20
putting  18:11
    29:8

q

quarropas
    1:12
question  18:23
    19:14 20:8
quick  11:23
quickly  15:25
    19:4 24:14
quite  16:11

r

r  1:21 3:1 5:1
    33:1
rabbit  26:7
raised  16:13
raises  13:21

rates  10:11
rather  9:12
    26:16,19 27:4
rational  13:5
reach  7:23
    15:20 24:19
    30:6 31:1
    32:15
ready  17:18,19
    17:19,20,21
realities  24:20
    26:23
realize  21:15
really  8:13
    11:22 12:7,22
    13:4 15:12
    17:11 21:14
    22:11 26:7
reason  13:12
    31:8
reasonable
    13:3
reasons  5:19
    10:17 13:25
received  8:18
record  5:7,12
    5:17,20 25:5
    25:11,12,21
    26:2 31:7,14
    33:4
recorded  5:11
recoveries  8:11
    8:12
recovery  18:9
    19:6
reed  4:8 6:24
    16:18

**regard**  14:17
  14:25
**regrettable**
  27:7
**regular**  23:22
**relationship**
  15:6
**remain**  21:10
**remedy**  5:11
**remind**  15:5
**repayments**
  23:13
**request**  6:16
  9:25 10:10
  29:13
**requested**
  27:13
**requires**  29:4
**requiring**
  11:10
**reserve**  21:5
**reserves**  28:4
**resolution**  9:1
  9:4 26:10
**resolve**  31:1
**resolved**  13:5
**respect**  11:6
  12:6 15:14
**response**  29:16
**rest**  32:16
**result**  7:25
  18:16
**right**  5:17,22
  6:3,9,21 7:1,2
  8:24 9:21
  11:15 14:9,9
  16:2 17:3,9,24

  18:18,21 19:20
  19:24 20:4
  23:9 27:24
  30:21 32:5,11
  32:11
**rights**  11:16
  20:3,18,24
  21:5,20 25:5
  26:14 28:4
  30:24
**road**  20:16
  21:24 26:19
  33:21
**robe**  13:9
**rome**  21:2
**room**  1:12 9:22
  10:14,21 13:20
  21:15
**rose**  3:18 6:6
  14:12
**rosen**  3:23 6:5
  6:5,12 14:11
  14:12 15:13,14
  30:9,13,17
  32:8
**rub**  13:2
**rubber**  20:16
**rule**  11:1,2
**rules**  13:6
  17:13
**running**  24:14

---

               **s**

**s**  3:1 5:1
**sample**  25:4
**saying**  20:9
  25:14,18 29:15

**sazant**  6:8
**schedule**  23:22
**scheduling**
  7:11
**scope**  8:21
**screen**  30:7
**sean**  1:22 3:8
  5:2 7:7 30:9,10
  30:10,13
**second**  9:22
  12:5 14:5
  26:25
**secured**  22:6
**see**  9:18,24
  11:7 16:8,12
  16:13 22:1
  27:9 30:7
  31:18 32:11,12
  32:13
**seek**  11:4
**seeking**  11:9
**seem**  17:22
**seems**  10:3
  17:3 28:18
**seen**  11:1
**selection**  8:20
**send**  6:15
**sense**  24:9
  25:18
**sensible**  10:20
**sensitive**  31:14
**sent**  29:13
**serious**  32:1
**session**  17:5
**sessions**  20:12
  24:15

**set**  9:14 12:14
  14:15 28:6,10
  28:12,22 29:19
**setting**  7:9
  13:24 32:8
**several**  14:15
**sheet**  8:6 16:22
  19:8
**shl**  1:3
**shoe**  10:6
**shoes**  31:23
**shore**  3:16 5:25
  6:1 10:23,23
  12:5 13:22,23
  18:25 27:13
  28:24 30:16
  32:7,20
**short**  22:11
**shorten**  2:4
**show**  7:19
**shown**  10:9,11
**side**  12:1 21:16
**sign**  16:14
  22:22
**signature**  33:7
**significant**
  22:8,9
**simple**  26:24
**simplify**  26:22
**simply**  7:10 9:2
  12:3
**single**  23:11
**sir**  32:7
**situation**  23:13
**slow**  16:24
**smart**  25:23

smarts  24:12
smooth  26:3
solutions  33:20
somebody  22:6
  22:19,25 25:4
  27:25
somebody's
  13:9
somewhat  27:7
sonya  2:25
  33:3,8
soon  8:12
sooner  25:24
sorry  13:22
  30:11
sort  7:6 12:1
  13:15 21:20
  23:1 29:4,22
sounds  10:19
  19:11 30:7
southern  1:2
  5:3
space  23:16
speak  16:6
speaking  23:10
special  8:9,10
specific  18:23
speech  25:4,11
spoken  29:20
sponte  9:8
square  3:20
squeeze  24:15
stakeholders
  7:16,22
standard  23:2
start  5:6,13 7:6
  10:21 13:14

19:7 21:25
  24:3
started  27:8
starting  27:5
starts  14:5
state  8:24
stated  19:4
statements
  18:13,16
states  1:1,11
  5:3
statistic  10:13
status  2:1,4 5:4
  7:10 23:22
  24:4 28:8,10
  30:2,5,22
stay  11:25
steam  14:8
steen  7:8
step  8:11 27:12
stipulation
  31:4
stray  12:25
street  1:12
  17:16
stress  10:15
strong  8:5 15:7
stuck  17:1
studies  10:9,11
  10:25
sua  9:8
submit  22:21
substance
  20:24
substantive
  11:15 12:3
  14:3 18:24

21:6 30:3
succeeded
  27:18
success  10:11
  13:21
successful  7:24
sufficient
  11:18 30:5
suggesting
  31:9,10
suggestion
  9:11 20:7
suggestions
  25:14,24
suite  33:22
suited  5:8
summer  11:23
support  9:7
supportive
  18:5
suppose  10:1
supposed  12:9
  13:19
sure  5:14 6:14
  14:16 15:20
  16:7,11 19:2
  19:16,16 28:6
  29:7
surprised
  10:15 22:25
  24:7
surprising
  10:8,13
surround
  23:15

**t**

t  33:1,1
table  12:15
  14:16 17:15
  24:13
take  8:9 15:12
  15:18 18:14
  25:3 26:11
  32:9
takes  18:15
  22:5
talk  7:3 10:20
  17:19 20:5,19
  20:21 22:3,4
  32:14
talking  12:10
  12:25 27:18
  29:13
tell  8:3 23:24
  28:13
telling  13:7
temperature
  13:20
term  8:6 16:22
  19:7
terms  8:14
  11:15 22:12
  26:13
terrible  27:25
  28:18
test  10:15
thank  6:5,12
  7:7 10:23
  13:23 14:11
  15:14 16:1,2
  16:14 31:20
  32:2,7,17,18

32:19,20,21
**theoretical**
20:4,15
**theoretically**
20:14
**thing** 11:17
20:14 21:8
**things** 10:5
13:1,4 15:5,10
19:3 20:2,6
21:4 22:11
24:4,17 26:22
28:20,25 32:13
**think** 5:21 7:3
7:4,20,24 9:3
9:11 11:21
12:13,22,24
16:15 17:7,9
19:2,6 21:6
23:8 24:11
27:12,13,14,18
27:25 29:18,22
29:25 30:15
31:2 32:8
**thought** 10:3
20:15 21:1
25:3,17 27:4
27:15,20 28:9
29:1
**thoughts** 9:23
**threatened**
20:21
**three** 19:9
24:24
**throw** 22:12
31:10

**thursday** 13:25
30:1
**tie** 6:6
**time** 2:5 5:19
7:9,21 8:7
11:18 12:20
17:23 20:8,20
21:19 22:11
24:2 25:16
28:11,14 30:5
**times** 3:20
12:21,24 14:15
17:3 31:12
**timing** 7:3 8:20
15:22 18:24
27:14 29:12,23
**today** 5:21
6:10 27:24
28:10,22
**today's** 22:9
**together** 18:6
28:15 29:25
30:1,2
**told** 31:12
**tomorrow** 30:1
32:12
**total** 19:19
**totally** 26:21
**touched** 7:5
**towards** 9:14
10:19 16:10
**transcribed**
2:25
**transcript** 33:4
**transparency**
5:18

**treat** 13:18
**trial** 14:5
**trouble** 25:6
**true** 33:4
**truly** 6:10
**trust** 4:9 6:25
9:3 16:18,20
22:22
**try** 7:12 8:1,11
8:15 9:8,18,20
11:12 20:18
21:3 22:19
23:5 29:19
30:5
**trying** 8:3,25
12:14 17:2,7
22:12 24:25
**tuesday** 14:8
28:11
**turn** 7:5
**turned** 11:23
**tweet** 12:13
**tweets** 12:12
**twitterverse**
12:15 14:24
18:13
**two** 10:5 13:25
15:3 16:23,23
22:15

**u**

**u.s.** 1:23
**ucc** 6:1
**unacceptable**
17:6
**unaware** 6:7
**unclear** 27:1

**under** 22:17
26:14
**understand**
11:14,16 12:1
12:2 14:4 21:7
22:8 23:7 24:6
24:18 26:21
28:24
**understandable**
28:25
**understood**
27:10
**unhappy** 13:3
**united** 1:1,11
5:3
**unmute** 16:11
**unsecured** 3:11
7:16
**unwilling** 13:2
**upended** 13:6
**use** 7:20 9:18
25:2
**useful** 29:19
31:18
**users** 16:20
17:1,20
**usual** 29:16

**v**

**vanilla** 28:3
**variety** 7:15
25:8 27:16
**various** 15:4
**vein** 10:6
**vent** 30:23
**veritext** 33:20
**versus** 26:11

[views - zoom]

**views** 13:11
15:7 26:9
**virtual** 9:22
13:20
**voice** 5:9,10
**volunteer** 10:9

**w**

**wait** 16:12
22:18 25:7
28:18
**waiving** 20:24
**want** 9:5 11:5
16:12,19 18:3
18:11 21:1,7
21:12 22:21
23:24 24:16
25:21 26:6,7,8
26:18,19 28:1
28:14 29:25
30:1,2 32:2
**wanted** 5:5,17
19:16 26:17
**wants** 6:16
16:13 25:4
**war** 21:13
**waste** 25:16
28:14
**waving** 26:25
**way** 5:14 9:24
11:1,2 12:3
13:2,5 20:18
21:13,23 23:21
24:12 25:15
27:19 31:1,24
**ways** 29:11
**we've** 5:14
7:14 8:4,6,16

27:18 28:21
29:20
**wearing** 13:9
**wednesday**
9:12 14:8
**week** 7:15 8:15
9:4,14,15
10:19,21 11:4
14:7 22:18
27:21,22 28:23
**weil** 4:1 6:19
18:2
**whatever's**
31:18
**white** 1:13 3:10
6:1 10:24
31:21
**width** 29:5
**willing** 22:6
**window** 11:17
**wisdom** 31:19
**wise** 21:3 24:11
**wishes** 16:3
17:24 18:21
22:6
**wondering**
21:2
**work** 8:1,15
11:12 13:17
15:10,22 20:2
23:17 24:2
25:19 27:7
**worked** 32:10
**working** 8:19
28:15
**works** 13:4
15:23 28:23

29:6 30:20
**world** 9:24
**worried** 26:17
**worries** 6:11
**worry** 17:12
**worse** 13:9
**worth** 22:12
**wrapped** 19:1
**wrong** 5:9 13:2

**x**

**x** 1:4,10

**y**

**yeah** 10:25
11:13 13:10
16:17 18:18
19:12 23:2,6
23:21 24:24
25:3 28:9
**york** 1:2 3:6,14
3:21 4:4,11 5:4

**z**

**zoom** 23:9