Hearing Date and Time: June 5, 2023 at 11:00 a.m. (Prevailing Eastern Time)
Objection Deadline: June 2, 2023 at 12:00 noon (Prevailing Eastern Time) [by consent]

**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
David Turetsky
Michele J. Meises
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113

– and –

Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606-4302
Telephone: (312) 881-5400
Facsimile: (305) 881-5450

*Counsel to Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 329** |

**STATEMENT AND RESERVATION OF RIGHTS
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
WITH RESPECT TO THE DEBTORS' MOTION FOR ENTRY
OF AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS
IN WHICH TO FILE A CHAPTER 11 PLAN
AND SOLICIT ACCEPTANCES THEREOF AND GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "**Official Committee**") appointed in

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's tax identification number (as applicable) are as follows:  Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these chapter 11 cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

the cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") respectfully states as follows in support of this statement and reservation of rights to the *Debtors' Motion for Entry of an Order Extending the Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Acceptances Thereof and Granting Related Relief* [Docket No. 329] (the "**Motion**"):[2]

1. By the Motion, the Debtors sought to extend their exclusive period to file a chapter 11 plan (the "**Exclusive Filing Period**") and obtain acceptances of such plan (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**") by 100 days (to August 27, 2023 and October 3, 2023, respectively). Subsequent to the filing of the Motion, the Official Committee has had a productive meeting with the special committee of the board of directors (the "**Special Committee**"), after which the parties agreed to shorten the extension of the Exclusive Periods to 75 days.

2. As explained below, the Official Committee is not opposed to this 75-day extension of the Exclusive Periods so long as the Debtors continue to work cooperatively with the Official Committee and the steering committee of the Ad Hoc Group of Genesis Lenders (the "**Ad Hoc Group**")[3] to expeditiously pursue confirmation of a chapter 11 plan within the next four months. The Official Committee is concerned, however, that the Debtors' cooperation with creditors could be affected by ongoing events in these cases and the crypto markets generally and, therefore, believes that additional protections should be provided to ensure prompt confirmation and consummation of a plan supported by creditors.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

[3] *See* Verified Statement Pursuant to Bankruptcy Rule 2019 of Ad Hoc Group of Genesis Lenders [Docket No. 114].

2

3.     As this Court is aware, the Debtors filed a restructuring term sheet on February 10, 2023 [Docket No. 80] (the "**Term Sheet**"), which contemplated, among other things, a full release for the Debtors' ultimate parent, Digital Currency Group, Inc. and its non-Debtor affiliates, and each of their officers, directors, and shareholders (collectively, "**DCG**") in exchange for the restructuring of the more than $1.6 billion DCG owes to the Debtors pursuant to various prepetition intercompany transfers and transactions. Given the Debtors' stated intent for a rapid exit built around this settlement framework, the Official Committee started to review and analyze the Term Sheet immediately upon its filing, and launched an investigation into the claims and causes of action proposed to be released in the Term Sheet. It quickly became clear to the Official Committee that the Term Sheet was overly complex, introduced significant implementation and tax risk, and did not provide sufficient compensation for the proposed releases to DCG. Indeed, had the Debtors insisted on pursuing the chapter 11 plan contemplated by the Term Sheet, the Official Committee would have vigorously opposed that effort and would certainly have sought to challenge the Debtors' continued exclusivity over the plan process and their control over estate claims. Fortunately, it did not come to that, and the Debtors have instead provided the space necessary for the Official Committee and the creditors to seek a fair and equitable resolution of the estates' valuable and colorable claims against DCG.

4.     To that end, the Debtors, DCG, the Official Committee, the Ad Hoc Group, and Gemini Trust Company, LLC (collectively, the "**Mediation Parties**") have been participating in an ongoing mediation process approved by the Court on May 1, 2023 [Docket No. 279] regarding, among other things, the appropriate contribution to be provided by DCG in exchange for estate releases. While the mediation remains ongoing and the Official Committee continues to believe

3

that the best path forward for the Debtors, their estates, and the unsecured creditors is through a comprehensive plan settlement with DCG, at some point one has to recognize that may not happen.

5.      To prepare for this potential eventuality, the Official Committee and the Debtors, along with the Ad Hoc Group and Gemini Trust Company, LLC, are actively and constructively working to formulate a chapter 11 plan that contemplates no plan settlement with DCG. Specifically, the Official Committee is seeking to ensure that any chapter 11 plan that goes out for solicitation, among other things, (i) distributes the Debtors' available cash and digital assets to creditors, (ii) minimizes the tax effect to creditors on account of distributions under the plan, (iii) maximizes like-kind distributions, (iv) preserves any and all non-released estate claims and causes of action and ensures the ability to pursue them for the benefit of creditors following the effective date of the plan (including, without limitation, all claims and causes of action against DCG if no settlement is reached), (v) adequately funds the plan to ensure the ability to perform transactions under the plan and litigate estate claims, (vi) addresses the treatment of holders of claims against GAP, (vii) quickly and efficiently determines and caps the amount of any dilution of recoveries to unsecured creditors caused by deliberately outsized (and disallowable) claims asserted by certain prepetition counterparties against the Debtors' estates, and (viii) does not include nonconsensual third party releases and, in the absence of a global deal with DCG, does not include third party releases (consensual or otherwise) for DCG.

6.      Most recently, the Debtors seem to have become fully aligned with the Official Committee's chapter 11 plan goals, and the Official Committee believes that a proposed plan may be ready to go out to creditors for solicitation by mid-July (which, if the schedule follows from there, would include a confirmation hearing by late August and the plan going effective as soon as possible after confirmation). In other words, the proposed schedule for a creditor-supported plan

is wholly aligned with a 75 day extension of the Exclusive Periods. If, however, there were to be a change in the level of cooperation by the Debtors, or if the schedule were to slip without justification, then the Official Committee believes that it may become imperative to have the ability to pivot to an alternative scenario in which the Official Committee is free to pursue a chapter 11 plan along the lines outlined above.

7. The Official Committee further believes that its reticence is justified here. While the Debtors and the Official Committee are currently aligned on a chapter 11 plan process, the Official Committee does have concerns about the prior positions taken by the Debtors on certain key issues, including issues related to DCG which could impact the ongoing level of cooperation between the Debtors and the Official Committee.

8. *First*, these chapter 11 cases have been ongoing for nearly six months and, despite repeated requests, the Special Committee was not able to meet with the Official Committee until May 31. The Official Committee was particularly frustrated by this delay given the Debtors' representations that the Special Committee is empowered to drive the restructuring process and actively investigate the Debtors' relationship with DCG and the estates' claims related to the prepetition activity between the Debtors and DCG. As stated above, however, the Official Committee's first meeting with the Special Committee was very constructive, and has led to further discussions, resulting in the agreed reduction of the extended Exclusive Periods to 75 days. The Official Committee appreciates the Special Committee's efforts to address the concerns of the Official Committee by reducing the requested extension of the Exclusive Periods by 25 days. Going forward, the Official Committee hopes the Special Committee will continue to actively engage with the Official Committee on all aspects of the cases on a regular basis to ensure coordination to the fullest extent possible.

9.   *Second*, as mentioned above, the Official Committee is conducting its own broad investigation into the scope and extent of the estates' claims against DCG. That investigation, which is ongoing, has demonstrated that the estates do, in fact, have valuable, colorable claims against DCG beyond the $1.6 billion of recorded intercompany claims. And, while the Debtors have largely cooperated with that investigation and have not forced the Official Committee to engage in more coercive measures to obtain access to relevant documents and communications, the Debtors have nonetheless withheld large categories of documents, including some relating to potential litigation claims against DCG that the Debtors assert are subject to a "joint privilege" with the directly adverse parent. The Official Committee reserves all rights with respect to the withheld documents and the assertion of any joint privilege.

10.  *Third*, as the Court may recall from the conference regarding the appointment of the mediator, the Special Committee had, over the Official Committee's protest, proposed a free forbearance to DCG on certain of its funded debt obligations in exchange for DCG's participation in the mediation and the ongoing payment of non-default interest. Indeed, the looming maturities on those obligations were the sole basis on which the Debtors' mediation motion was expedited. Now, however, DCG has defaulted on its obligations to pay approximately $638 million that came due on May 9-11, 2023. This amount, which indisputably is due and owing to the Debtors, represents a substantial portion of the estates' assets and is absolutely essential for maximizing cash and crypto distributions to creditors. The Debtors and the Special Committee must consider all options with respect to DCG's default, including the commencement of immediate enforcement actions seeking preliminary relief where appropriate. The Official Committee reserves all rights to have this Court compel the Debtors and the Special Committee to take certain actions in pursuit

of their fiduciary duties or to grant the Official Committee standing to do so on behalf of the estates.

11. Despite these historical issues, all signs currently indicate that the Debtors are now aligned with the Official Committee on a chapter 11 plan and related process. Given the concerns outlined above, however, the Official Committee seeks to take into account the possibility that such cooperation may cease. Therefore, the Official Committee requests that the order approving the Motion be modified to provide an expedited procedure for the Official Committee to seek to terminate the Exclusive Periods based on subsequent adverse developments.

12. Specifically, the Official Committee proposes that the following underlined language be added to Paragraph 2 of the order approving the Motion:

> Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Filing Period pursuant to section 1121(b) of the Bankruptcy Code is hereby extended through and including August 27, 2023; *provided* that if the Debtors are no longer working cooperatively with the Official Committee of Unsecured Creditors (the "Committee") to pursue a joint chapter 11 plan with the Committee, as determined by the Committee in its discretion, the Committee may file with the Court and serve on parties in interest a motion to terminate such extended Exclusive Filing Period on seven (7) days' notice.

13. The Official Committee believes that this modification to the proposed order will ensure that the chapter 11 cases continue to progress in an efficient manner, while allowing the Debtors, the Official Committee, and the Ad Hoc Group the time needed to pursue a global settlement with DCG in parallel to pursuing a no DCG deal joint chapter 11 plan.

## RESERVATION OF RIGHTS

14. The Official Committee reserves the right to (i) further amend, modify, or supplement this Statement and Reservation of Rights to raise additional issues with the Motion at the hearing and (ii) seek to terminate the Debtors' Exclusive Periods at any time.

## CONCLUSION

WHEREFORE, the Official Committee respectfully requests that the Court grant the Motion as modified herein and grant the Official Committee such other and further relief as is just, proper, and equitable.

[*Remainder of page intentionally left blank.*]

Dated: June 2, 2023  
New York, New York

Respectfully submitted,

By: */s/ J. Christopher Shore*

**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
David Turetsky
Michele J. Meises
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
E-mail: cshore@whitecase.com
philip.abelson@whitecase.com
david.turetsky@whitecase.com
michele.meises@whitecase.com

– and –

Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606-4302
Telephone: (312) 881-5400
Facsimile: (305) 881-5450
E-mail: gregory.pesce@whitecase.com

*Counsel to Official Committee of Unsecured Creditors*