Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shl

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GENESIS GLOBAL HOLDCO, LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    300 Quarropas Street, Room 248

14                    White Plains, NY 10601

15

16                    June 5, 2023

17                    12:26 PM

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: ALIANNA PERSAUD

```
1    HEARING re Omnibus Hearing

2

3    HEARING re Doc. #378 Amended Notice Of Agenda

4

5    HEARING re Doc. #311 Motion To Authorize Debtors To (I)

6    Extend The Coverage Period Of Certain Insurance Policies And

7    (II) Granting Related Relief

8

9    HEARING re Doc. #312 Motion To Authorize Genesis Asia

10   Pacific Pte. Ltd. To Pay Certain Employee Severance

11   Obligations

12

13   HEARING re Doc. #329 Motion To Extend Exclusivity Period For

14   Filing A Chapter 11 Plan And Disclosure Statement

15

16   HEARING re Doc. #350 (Presentment With Objections) Notice Of

17   Proposed Amended Consensual Order Extending Mediation

18

19   HEARING re Doc. #377 Letter To Judge Lane Requesting Status

20   Conference Filed On Behalf Of FTX

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde
```

```
                                                    Page 3

 1   A P P E A R A N C E S :

 2

 3   CLEARY GOTTLIEB STEEN & HAMILTON LLP

 4        Attorneys for the Debtors

 5        One Liberty Plaza

 6        New York, NY 10006

 7

 8   BY:  JANE VANLARE

 9        HOO RI KIM

10        LUKE A. BAREFOOT

11

12   WEIL, GOTSHAL & MANGES LLP

13        Attorneys for Digital Currency Group, Inc.

14        767 Fifth Avenue

15        New York, NY 10153

16

17   BY:  JESSICA LIOU

18

19   HUGHES HUBBARD & REED LLP

20        Attorneys for Gemini Trust Company, LLC, as Agent

21        One Battery Park Plaza

22        New York, NY 10004

23

24   BY:  BRIAN D. GLUECKSTEIN

25        ANSON B. FRELINGHUYSEN
```

Page 4

1   LATHAM WATKINS

2       Attorneys for Interested Party

3       1271 Avenue of the Americas

4       New York, NY 10020

5

6   BY:  ADAM J. GOLDBERG

7

8   PAUL HASTINGS LLP

9       Attorneys for the Official Committee of Unsecured

10      Creditors of FTX

11      200 Park Avenue

12      New York, NY 10166

13

14  BY:  KENNETH PASQUALE

15

16  UNITED STATES DEPARTMENT OF JUSTICE

17      Attorneys for the U.S. Trustee

18      201 Varick Street, Suite 1006

19      New York, NY 10014

20

21  BY:  GREG ZIPES

22

23

24

25

1    PROSKAUER ROSE LLP

2        Attorneys for Ad Hoc Group of Genesis Lenders

3        Eleven Times Square

4        New York, NY 10036

5

6    BY:  BRIAN S. ROSEN

7

8    WHITE & CASE LLP

9        Attorneys for the Official Committee of Unsecured

10       Creditors

11       1221 Avenue of the Americas

12       New York, NY 10020

13

14   BY:  PHILIP ABELSON

15

16   GLEN KRATOCHVIL, Pro Se Creditor

17   CLINTON MUELLER, Pro Se Creditor

18

19   ALSO PRESENT TELEPHONICALLY:

20   ERIC IAN ASQUITH

21   BENJAMIN S. BELLER

22   ERIC C. DAUCHER

23   ANDREW G. DEITERICH

24   MICHAEL S. ETKIN

25   ADAM J. GOLDBERG

Page 6

1   KRIS HANSEN

2   AUTUMN D. HIGHSMITH

3   CHRISTIAN T. HODGES

4   OXANA KOZLOV

5   ZIA LIU

6   KEN LUKASZEWSKI

7   JEFFREY S. MARGOLIN

8   MARCY J. MCLAUGHLIN SMITH

9   MICHELE MEISES

10   RICHARD CHESTER MINOTT

11   SEAN A. O'NEAL

12   AMANDA PARRA CRISTE

13   GREGORY F. PESCE

14   ARIANNA PRETTO-SAKMANN

15   CHRISTIAN RIBEIRO

16   JEFFREY D. SAFERSTEIN

17   ISAAC SASSON

18   J. CHRISTOPHER SHORE

19   JAMES M. SULLIVAN

20   GORDON SUN

21   WILLIAM MATTHEW UPTEGROVE

22   FRANCISCO VAZQUEZ

23   COLIN WEST

24   PAUL ARONZON

25   BRENDON BARNWELL

1   ANDREW BEHLMANN

2   SABRINA BREMER

3   JESSICA BROOKS

4   BRIAN BULTHUIS

5   DONALD BURKE

6   JASON CHA

7   TOM CONHEENEY

8   COURTENAY CULLEN

9   JARED DERMONT

10   MICHAEL DIYANNI

11   JOSHUA IAN DIVACK

12   LEIA DORAN

13   MELISSA DZENIS-GARCIA

14   DAN FORMAN

15   UDAY GORREPATI

16   JASON GOTTLIEB

17   BRANDON HAMMER

18   SANDALL HANDAGAMA

19   MIRA HAQQANI

20   TAYLOR HARRISON

21   MIRANDA HATCH

22   JEREMY HILL

23   DERAR ISLIM

24   ZUL JAMAL

25   BARRY JONES

Page 8

1   PAUL KINEALY

2   BARAK KLEIN

3   LEONIE KOCH

4   BENJAMIN KROLL

5   KONRAD LAESSAR

6   CHRISTINE LEE

7   MICHAEL LETO

8   DAVID LOPEZ

9   MICHAEL MAGZAMEN

10   JACK MASSEY

11   AKIKO MATSUDA

12   DAVID MAYO

13   KYLE MCKUHEN

14   KAYLA MILLIGAN

15   ANAIS MITRA

16   SAMUEL NADEL

17   ELIZABETH K. NAPOLITANO

18   REBEKAH PRESLEY

19   CRAIG V. RASSILE

20   PHILIP RIES

21   KATIE ROSS

22   THERESE SCHEUER

23   JACK SCHICKLER

24   SAMUEL A. SCHWARZ

25   JOE SCIAMETTA

1    PETER J. SPROFERA

2    MARK STANCIL

3    ANDREW SULLIVAN

4    VINCE SULLIVAN

5    ANDREW SWIFT

6    NACIF TAOUSSE

7    BRIAN TICHENOR

8    ANDREW TSANG

9    MEGHANA VUNNAMADELA

10   LAUREN WALKER

11   MICHAEL WEINBERG

12   JACK WESTNER

13   PAUL WIRTZ

14   LILY YARBOROUGH

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  All right.  Thank you very much.  And

3    so with that, we turn to the matter on for 11:00, 90 minutes

4    behind schedule, so let me first thank everybody for their

5    patience in waiting for the matter to be called.  I never

6    know exactly how long a calendar is going to go, this hazard

7    of the job, but thank you for your patience.

8              So with that, let me start as we always do with

9    appearances.  So first on behalf of the Debtor.

10             MS. VANLARE:  Good afternoon, Your Honor.  Jane

11   VanLare, Cleary Gottlieb Steen & Hamilton, on behalf of the

12   Debtors.  I'm joined today by my colleagues, Mr. Barefoot,

13   Miss Kim, and Mr. O'Neal.

14             THE COURT:  All right.  I guess I should say now

15   good afternoon.  On behalf of the Official Committee?

16             MR. ABELSON:  Yes, thank you, Your Honor.  Good

17   afternoon.  Phil Abelson, White & Case, on behalf of the

18   UCC.

19             THE COURT:  All right, good afternoon.  On behalf

20   of the Ad Hoc Group?

21             MR. ROSEN:  Good afternoon, Your Honor.  Brian

22   Rosen, Proskauer Rose, on behalf of the Ad Hoc Group.

23             THE COURT:  All right.  On behalf of Digital

24   Currency Group?

25             MS. LIOU:  Good afternoon, Your Honor.  Jessica

Page 11

1    Liou from Weil, Gotshal & Manges, on behalf of Digital

2    Currency Group.

3              THE COURT:  All right.  On behalf of FTX?

4              MR. GLUECKSTEIN:  Good afternoon, Your Honor.

5    Brian Glueckstein, Sullivan & Cromwell, on behalf of FTX

6    Trading and its affiliated debtors.

7              THE COURT:  All right, good afternoon.  And there

8    are, as is always the case in a case like this, a lot of

9    appearances that are noted on the Zoom record; a lot of them

10   are for people who are going to listen.

11             So at this point, I'll turn it over to folks who

12   anticipate talking and so, let me get other appearances for

13   those folks.

14             MR. FRELINGHUYSEN:  Good afternoon, Your Honor.

15   Anson Frelinghuysen from Hughes Hubbard & Reed for Gemini

16   Trust Company.  I'm joined by my colleague, Dustin Smith.

17             THE COURT:  All right, good afternoon.  Anyone

18   else?

19             MR. GOLDBERG:  Good afternoon, Your Honor.  Adam

20   Goldberg of Latham & Watkins on behalf of the joint

21   liquidators of Three Arrows Capital.

22             THE COURT:  All right, good afternoon.  Anyone

23   else?

24             MR. PASQUALE:  Good afternoon, Your Honor.  This

25   is Ken Pasquale from Paul Hastings for the Official

Page 12

1    Creditors' Committee in the FTX cases.

2            THE COURT:  All right, good afternoon.  Anyone

3    else?

4            MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

5    Trustee's Office.  I'm attempting to fix my camera now.

6            THE COURT:  All right, that's fine.  As long as we

7    can hear you, Mr. Zipes, that's the most important thing.

8            So let me interject here.  The Court did receive a

9    number of emails -- and as we've received them, we've been

10   putting them on the docket -- from various individuals

11   regarding their requests for one of the motions, that is the

12   request for an extension of exclusivity.  The usual subject

13   matter is either the case name or that somebody identifies

14   themselves as a creditor in the case.  And so, again, I'll

15   put these on the docket as we get them.  We've put on a

16   number that we already have gotten; some of them are

17   identified as objection against extension of mediation.

18           So these are folks who I think are creditors in

19   the case, unsecured creditors, and I just want to note from

20   the outset because people may or may not be familiar with

21   this feature of bankruptcy that you do have an unsecured

22   creditors' committee.  It's always helpful to have a visual

23   aid.  This is the bankruptcy code.  The bankruptcy code has

24   lots of provisions, as one would expect of a book this size,

25   one of which provides that in a Chapter 11 case, as

Page 13

1    appropriate, that there is a committee of unsecured

2    creditors appointed where certain representative creditors

3    serve on a committee of unsecured creditors, that that

4    committee hires counsel, and they represent the interests of

5    unsecured creditors.

6           And so, I mention that just to the extent that the

7    folks who are filing these letters appear to be unsecured

8    creditors.  And obviously I've read all the emails that

9    we've received, and I'll continue to read whatever else is

10   submitted to me, but I just wanted to let people know that

11   because it means that by statute, that is the bankruptcy

12   code itself, those folks who are unsecured creditors have

13   representation; they have somebody looking out for them and

14   speaking for them.

15          So with that, let me ask if there's anyone else

16   who anticipates speaking at today's hearing who needs to

17   enter an appearance.

18          MAN 1:  Your Honor, (indiscernible), Liberty

19   Unlimited.  I am what you consider an indirect creditor.

20   Not to contradict you, but I believe Gemini actually

21   asserted a secured creditor claim, and I know that several

22   of the letters which were written were written by Gemini

23   users like myself.

24          THE COURT:  All right.  But then you might be a

25   creditor of a creditor?

1          MAN 1:  I believe they submitted a master claim,

2     and we were included in that.

3          THE COURT:  Well, yeah, so there's actually

4     bankruptcy case law that says a creditor of a creditor is

5     not a creditor in a bankruptcy proceeding.  Sorry, it sounds

6     a little bit hard to follow.  It sounds like a -- but what

7     the idea is that the creditor is the one who has standing to

8     come into court because they have the right to payment in

9     some capacity and that folks who are owed money from that

10    party don't have bankruptcy standing; that is, the right to

11    come in and say, geez, I will end up on the worse end of it

12    if the party who is a creditor isn't paid, so I just want to

13    make those distinctions clear.

14          I know that there are a lot of interrelationships

15    in the cryptocurrency space, and we'll deal with them as

16    need be over the course of time.

17          MR. FRELINGHUYSEN:  Your Honor, Anson

18    Frelinghuysen for Gemini.  Would you like me to clarify the

19    master claim and the creditor of creditor position with

20    respect to the earnings now or at a later point?

21          THE COURT:  I'd say let's get to it a little bit

22    later as needed because we haven't gotten through

23    appearances yet, so it's always good to get through those

24    first.

25          MR. FRELINGHUYSEN:  Right.

1          THE COURT:  Thank you.  I appreciate the offer and

2    we, in fact, may get there.

3          So let me ask if there's any other party that

4    needs to enter an appearance this morning or this afternoon

5    as the case may be?  All right.

6          So I do have a copy of the agenda that was filed,

7    as well as the amended agenda that was filed.  And so, it

8    lists the matters to be -- I'm sorry, I'm picking up

9    something.  If somebody has an open mic, you probably want

10   to make sure to mute that and nobody wants to have an open

11   mic moment; those are bad, as the internet and other

12   circumstances have shown us.  So anybody who is not

13   speaking, make sure to mute your mic, and then when it's

14   time for you to speak, we'll make sure to unmute it and hear

15   from everybody.

16         So the agenda lists a number of things and matters

17   to be heard and they are briefly to use the nomenclature,

18   that is the way they're identified in the agenda: the

19   insurance motion, the severance motion, the exclusivity

20   motion, and the order extending mediation period which has a

21   number of different things, as well as a status conference;

22   that's item no. 5.

23         So with that, I'll turn it over to Debtors'

24   counsel maybe for a status and then to start walking us

25   through the agenda.  And as we go through each step in the

Page 16

1    agenda, I'll make sure to, at some point, throw it open to

2    any party who wishes to be heard.  So with that, counsel?

3              MS. VANLARE:  Thank you, Your Honor.  Jane

4    VanLare, Clear Gottlieb Steen & Hamilton, on behalf of the

5    Debtors.

6              Your Honor, as you correctly noted, we filed an

7    amended objection I believe on Friday reflecting additional

8    filings.  We filed a further amended agenda earlier this

9    morning just to make sure that everything -- we believe now

10   everything is included on the amended agenda.

11             We'd like to proceed this afternoon in the order

12   of the agenda, so we'd like to begin with the insurance

13   motion with my colleague, Mr. Barefoot, to present.  We

14   would then like to move to the severance motion presented by

15   my colleague, Ms. Kim.  And then the exclusivity mediation

16   and the status conference in that order, and I will be

17   addressing those on behalf of the Debtor.

18             THE COURT:  All right, that sounds perfectly fine

19   to me.  And so, with that, take it away, counsel.

20             MR. BAREFOOT:  Thank you, Your Honor.  For the

21   record, Luke Barefoot, Cleary Gottlieb Steen & Hamilton, for

22   the Debtors.

23             THE COURT:  Mr. Barefoot, I hate to be the bearer

24   of bad news, but your audio sounds like it's breaking up a

25   bit.

1          MR. BAREFOOT:  Is this any better?

2          THE COURT:  We'll give it a show.  If you see my

3    arms wave, that means that it's not working out, but

4    hopefully it will.  Just stay close to the microphone.

5    Again, it's hard to pinpoint exactly when things don't work

6    why they don't work, and I don't have any monopoly on wisdom

7    on that subject, so take it away.

8          MR. BAREFOOT:  Thank you, Your Honor.  Turning to

9    agenda item no. 1 (sound glitch).

10          THE COURT:  Sorry, Mr. Barefoot, it's not working.

11    So here's what I would suggest.  You can always just log off

12    Zoom and log in on a telephone as long as we can hear you.

13    I confess I'll speak for myself, I'm not a whole lot to look

14    at at these Zoom hearings, so as long as we can hear you,

15    we're good to go.

16          So what we can do perhaps is go to item no. 2 and

17    then we'll come back to you.  Thank you.  So I think we can

18    go to the severance motion, Ms. Kim.

19          MS. KIM:  Good afternoon, Your Honor.  Can you

20    hear me well?

21          THE COURT:  Can hear you just fine.

22          MS. KIM:  Great.  Thank you, Your Honor.  I'm

23    going to present the motion of Genesis Asia Pacific, or GAP,

24    to pay certain severance obligations for a few of its former

25    employees in excess of the statutory cap for wages and

Page 18

1    benefits.

2              As explained further in the motion, Your Honor,

3    GAP has filed this in an abundance of caution as the amounts

4    paid to each employee would exceed the priority cap,

5    although the final wages order, we believe, allows the

6    Debtor to continue its severance obligations.

7              We filed a declaration as Exhibit B to the motion,

8    Your Honor, at ECF 312, of Mr. Michael Leto of Alvarez &

9    Marsal, financial advisor to the Debtors, who is present on

10   the Zoom hearing and is available to answer any questions.

11   So we would ask otherwise that the declaration to be

12   admitted.

13             THE COURT:  All right.  Any objection to admitting

14   the Declaration of Michael Leto at Docket 312 in support of

15   this motion?  All right.  Hearing no opposition, I'm happy

16   to receive it.  Proceed.

17             (Declaration of Michael Leto Entered into

18   Evidence)

19             MS. KIM:  Thank you, Your Honor.  GAP is

20   requesting authority to pay the prepetition severance

21   obligations for four former GAP employees who were

22   terminated prepetition with a total amount of approximately

23   29,000 Singapore dollars, which is the equivalent of

24   approximately $21,850 United States dollars, in excess of

25   the cap.  None of these employees are insiders under the

Page 19

1    bankruptcy code in pertinent part.

2            GAP believes that there's cause to pay these

3    amounts, including under the doctrine of necessity.  And the

4    payment of the severance obligations will help to preserve

5    the Debtors' estates and prevent GAP from expending further

6    resources related to these amounts and increasing from

7    employees.  In turn, we believe that it'll also help

8    increase employee morale.

9            And explained further in the motion, Your Honor,

10   we'd like to note that although GAP had intended to pay

11   these amounts fully prepetition, they were not paid due a

12   bank error and they're very relatively minor compared to any

13   amounts that we have previously requested authority for

14   under the wages and benefits motion.

15           We received no formal objections to the motion,

16   Your Honor, including from the unsecured creditors'

17   committee.  We also filed a revised proposed order at ECF

18   No. 345, and that reflects comments from the United States

19   Trustee's Office.  The changes include listing the

20   approximate amount to be paid and that each employee agrees

21   to release GAP from any claims related to the severance

22   obligation.

23           Unless Your Honor has any questions, we would ask

24   the Court to enter the order.

25           THE COURT:  All right.  Thank you very much.

Page 20

1        Anything from the unsecured creditors' committee?

2               MR. ABELSON:  Nothing, Your Honor.

3               THE COURT:  All right, thank you.  And I know the

4     U.S. Trustee's Office often takes a keen interest in these

5     such things.  Anything from the United States Trustee's

6     Office?

7               MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

8     Trustee's Office.  With those changes to the proposed order,

9     my office has no objections.

10              THE COURT:  All right.  Thank you very much.  Any

11    other party that might wish to be heard in connection with

12    this motion?  All right.  Hearing nothing, I'm happy to

13    approve the motion for all the reasons that have been

14    described on the record this morning and are set forth in

15    the motion itself and to enter the revised proposed order

16    that's at Docket 345.  I find that the motion is appropriate

17    under applicable law, including Section 363.

18              So with that, I think we can go back to the

19    insurance motion at item no. 1 and Mr. Barefoot.

20              MR. BAREFOOT:  Good morning, Your Honor.  Luke

21    Barefoot from Cleary Gottlieb.  Can you hear me okay now?

22              THE COURT:  I can hear you clear as a bell.  Thank

23    you very much and I appreciate your flexibility.

24              MR. BAREFOOT:  Of course, Your Honor, and I

25    apologize.  Turning to agenda item --

1             THE COURT:  No, no, it happens to all of us.  A

2      day without these problems is welcome but, you know, we

3      can't always can't what we want.

4             MR. BAREFOOT:  Understood, Your Honor.  Turning to

5      agenda item no. 1, that's the Debtors' motion for

6      authorization to extend the coverage period under their

7      insurance policies by six months; that was filed at docket

8      item no. 311.

9             At the outset, just from an evidentiary

10     perspective, I'd like to move into evidence the Declaration

11     of Arianna Pretto-Sakmann, which was attached to the motion

12     as Exhibit B, as her direct testimony in support of the

13     motion.  Miss Pretto-Sakmann is on the line should the Court

14     have any questions, but the motion is proceeding on an

15     unopposed basis.

16             THE COURT:  All right.  Anybody wish to be heard

17     in connection with receiving this declaration into evidence?

18     All right.  Hearing no response, I am happy to receive it.

19     Thank you very much.

20             (Declaration of Arianna Pretto-Sakmann Entered

21     into Evidence)

22             MR. BAREFOOT:  Thank you, Your Honor, and I'll be

23     brief on the merits.  The Court may recall from the lift

24     stay motion brought by one of the Debtors' former directors

25     back in April that the Debtors do have a series of both

1    primary and excess directors and officers insurance

2    policies.  Those are all claims made to policies and the

3    current claims period is set to expire in late June.

4              No amounts have currently been paid out against

5    the principal amounts of the policies, but based on

6    discussions with their insurance broker, the Debtors believe

7    that it would be very difficult to obtain new policies at

8    this juncture in the case without clarity on a post-

9    emergence capital structure, as well as the scope of

10   releases that will ultimately be included in a plan of

11   reorganization.

12             The Debtors have obtained a quote for

13   approximately $617,000 for a six-month extension of the

14   policies -- of the claims periods under the policies.  And

15   while the Debtors believe this should be viewed as ordinary

16   course, they anticipate that the insurers will insist on an

17   order to issue the extension that we're contemplating.

18             To the extent required, Your Honor, I believe that

19   the motion and Miss Pretto-Sakmann's Declaration show that

20   this is a valid exercise of the Debtors' business judgment,

21   and unless the Court has any questions, would ask that the

22   order be entered.

23             THE COURT:  All right.  Thank you very much.  In

24   the interest of efficiency, let me just ask if there's any

25   party that wishes to be heard in connection with this

Page 23

```
1    motion.  All right.  Hearing no response, I'm happy to

2    approve the motion as the valid exercise of the Debtors'

3    business judgment for all the reasons explained this morning

4    on the record and as set forth in the hearing -- I'm sorry

5    -- in the pleadings that were submitted and find it complies

6    with all applicable law, so that motion is granted.

7              And so we can move on to item agenda no. 3, the

8    exclusivity motion.

9              MS. VANLARE:  Thank you, Your Honor.  Jane VanLare

10   again, Cleary Gottlieb Steen & Hamilton, on behalf of the

11   Debtors.  Next on the agenda is the Debtors' motion to

12   extend exclusivity; that was filed at docket no. 329.

13             We have sought to extend our exclusive period to

14   file and solicit a plan, and we believe that an extension of

15   our exclusive periods is warranted.  Over the past four and

16   a half months, we have made tremendous progress in these

17   cases, including among other things, obtaining first and

18   second day release on a variety of different motions to

19   ensure the preservation of estate assets and preserve

20   operations to the extent applicable.

21             We filed a plan of reorganization to provide a

22   path to confirmation, even if the Debtors are not able to

23   reach a global resolution with their stakeholders.  We

24   facilitated and participated in extensive discussions among

25   our key stakeholders in these cases on (sound glitch)
```

Page 24

1    consensual restructuring, including participating in a

2    court-ordered mediation process which is ongoing.  We have

3    shared and facilitated access to a wide range of diligence

4    information, and we've provided input on restructuring

5    proposals that have been exchanged.

6         We've worked extensively and collaboratively with

7    the unsecured creditors' committee to obtain orders to

8    redact certain identifying information regarding our

9    creditor body, and we've assisted the special committee.

10   Not to be confused with the unsecured creditors' committee,

11   we've assisted the special committee with an investigation

12   into certain prepetition transactions involving the company,

13   the DCG entities, and others.

14        We've also worked cooperatively with the Office of

15   the U.S. Trustee.  We've obtained retention of numerous

16   estate professionals and ordinary course professionals,

17   again to ensure that the Debtors' operations are progressing

18   and proceeding.  And we have filed a schedules of assets and

19   liabilities and statements of financial affairs.  We've set

20   a bar date and we've commenced our claims reconciliation

21   process.

22        Finally, we've launched and are in the process of

23   conducting a robust sale process for the Debtors' assets in

24   conjunction with DCG, which is a non-debtor affiliate, and

25   we think the sale process will maximize value for the

Page 25

1    Debtors' estates.  Our focus throughout these proceedings

2    has been to preserve assets, to minimize litigation, and

3    conclude these cases as quickly as possible so that we can

4    begin distributions to our creditors.  We've worked

5    collaboratively with various parties in interest, including

6    the unsecured creditors' committee and the ad hoc group in

7    order to achieve these objectives.

8            We had originally asked for, in our motion, to

9    extend exclusivity by 100 days.  After further discussions

10   with counsel to the UCC and the ad hoc group, we've agreed

11   to reduce that request to 75 days.  That would extend the

12   exclusive period to file a plan through and including August

13   2nd, and the exclusive solicitation period through and

14   including October 1st.

15           We have filed an amended order to reflect this

16   change, along with some additional language requested by the

17   unsecured creditors' committee.  Your Honor, I'm not sure if

18   you've had a chance to look at the amended order as we filed

19   it late this morning in advance of the hearing, and so I'm

20   happy to walk you through or read the additional language if

21   that would be helpful.

22           THE COURT:  That's would be great, and I do have

23   the committee's statement and reservation of rights that, in

24   fact, proposes some additional language, so I have that in

25   front of me.  So, yeah, it would be very helpful if you

Page 26

1    could walk me through the changes to the proposed order.

2              MS. VANLARE:  Happy to do that, Your Honor.  So as

3    I mentioned, we've modified the dates from August 22nd to

4    August 2nd for the exclusive period to file a plan, and the

5    solicitation -- the exclusive solicitation period from

6    October 26th to October 1st.

7              And then in Paragraph -- actually, I think our

8    numbering is off here, which we'll fix -- it's really

9    Paragraph 2 of the order should say that the exclusive

10   period to file a plan is extended through August 2nd, and

11   this is the new language, "Provided that if the Debtors are

12   no longer working cooperatively with the Official Committee

13   of Unsecured Creditors, defined the Committee, to pursue a

14   joint Chapter 11 plan with the Committee.  As determined by

15   the Committee in its discretion, the Committee may file with

16   the Court and serve on parties in interest a motion to

17   terminate such extended exclusive filing period on seven

18   days' notice."

19             And then the only other change is, again, the

20   solicitation period deadline, which was changed from October

21   26th to October 1st.

22             As you noted and as our agenda reflects, both the

23   unsecured creditors' committee and the ad hoc group filed

24   statements in response.  We filed a responsive statement in

25   response to the statements before the deadline agreed upon

1    with Your Honor's chambers.  We don't believe we received

2    any other objections.  Your Honor had noted, which I have

3    as well, a number of Gemini lenders and other creditors who

4    filed letters.  We believe those are objections to the

5    mediation order and certainly plan to address those later on

6    in the agenda, but we don't believe we received objections

7    to the exclusivity motion.

8              With that, Your Honor, we would ask that you enter

9    the motion.

10             THE COURT:  All right.  Thank you very much.  So

11   let me hear from the Committee of Unsecured Creditors.

12             MR. ABELSON:  Thank you, Your Honor.  Again for

13   the record, Phil Abelson, White & Case, on behalf of the

14   committee.

15             Your Honor, I don't have much to add.  Miss

16   VanLare covered the points that we wanted to highlight,

17   which is the reduction from 100 days to 75 and then the

18   additional language added to the order that makes it clear

19   that if something were to change in the case and we're no

20   longer working cooperatively that we do have an opportunity

21   to come in on an expedited basis to Your Honor and we'll

22   discuss it at that time.  But we're optimistic, frankly,

23   that we're not going to get there and we're working with the

24   Debtors cooperatively, so we support extension of

25   exclusivity for the 75 days subject to that language in the

1    order.

2            THE COURT:  All right.  Thank you very much.  And

3    I did also see a statement and reservation of rights by the

4    ad hoc group, so let me hear from them.

5            MR. ROSEN:  Thank you very much, Your Honor.

6    Again for the record, Brian Rosen, Proskauer Rose, on behalf

7    of the ad hoc group.

8            Yes, we are in favor of the extension of

9    exclusivity and for the 75-day period.  However, I would

10   like to note that when we did communicate/correspond with

11   Ms. VanLare and Mr. O'Neal with respect to the agreement to

12   extend.  There was an agreement that we would reserve our

13   rights with respect to the termination if, in fact, we

14   thought it was appropriate to do so.  As I said, there was

15   an agreement on that.

16           So the language that Ms. VanLare and Mr. Abelson

17   have now suggested be put in there seems to be a little bit

18   limiting, certainly with respect to only the committee

19   seeking the right to terminate exclusivity, and we would

20   merely suggest that all parties reserve their rights to

21   terminate for cause or for any other reason the exclusive

22   periods in accordance with the provisions of the bankruptcy

23   code, Your Honor, rather than just limiting it to the UCC

24   because that was not our agreement that we had reached.

25           THE COURT:  All right.  Miss VanLare, let me hear

1    from you on that.

2          MS. VANLARE:  Your Honor, we would be fine adding

3    the ad hoc group to that language and can submit a revised

4    order.

5          MR. FRELINGHUYSEN:  Your Honor, Miss VanLare, if

6    you could add Gemini to that group, we would appreciate that

7    as well.

8          MS. VANLARE:  We can do that.  We can do that and

9    incorporate those changes.

10          THE COURT:  All right.

11          MR. ROSEN:  With that agreement, Your Honor, we

12    have no objection to the entry of the order.

13          THE COURT:  All right.  So those were the two

14    responses that were filed on the docket to this motion, and

15    so, I didn't see any other -- I didn't see any oppositions

16    and I did see any other reservation of rights or statements.

17          And so, with that, is there any other party that

18    wishes to be heard in connection with this motion?  All

19    right.  Hearing no further responses, I am happy to grant

20    the motion to extend the exclusive periods as has been

21    modified on the record and the standard is well set forth in

22    the papers, Section 1121(d).

23          And I think the totality of the circumstances and

24    all the factors that are identified in Paragraph 12 of the

25    motion, which I will not recite here in interest of brevity

Page 30

```
 1    but that you all are quite familiar with, and I find those

 2    are satisfied here, given that, among other things, the size

 3    and complexity of the case and obviously the good faith

 4    progress in renegotiation, which is reflected in the

 5    statements that have been made on the record.

 6            My only other comment then is just so that no one

 7    has to worry is sort of at the end of the additional

 8    language to just put something that says, "with a hearing to

 9    be scheduled subject to the Court's availability," just so

10    no one feels like there's some issue that might crop up.

11    I've actually added that language to a number of orders over

12    almost 13 years now.  It's actually never mattered, but I

13    think it helps to lower peoples' blood pressure just in case

14    there's a scheduling conflict or concern of any sort.  But I

15    will, of course, make myself available if the need arises

16    and, hopefully again, we don't get there, so this motion is

17    granted.

18            And so we can move on to item no. 4, which is the

19    proposed amended consensual order extending mediation, and

20    I'll turn that over to Debtors in the first instance.  I do

21    note that the amended agenda does list now all of what's

22    been put on the docket in terms of objections by various

23    folks who were Gemini lenders, as well as the other

24    objections that were received.

25            So Miss VanLare.
```

Page 31

1          MS. VANLARE:  Thank you, Your Honor.  Jane VanLare

2     on behalf of the Debtors.

3          So, Your Honor, as you probably recall, on May

4     1st, you entered an order appointing a mediator in these

5     cases.  We subsequently filed a consensual order to extend

6     the mediation to and include June 16th, and that's what's on

7     the agenda this afternoon.

8          We, first of all, would like to note that under

9     Paragraph 1 of the original mediation order, we're not

10    required to seek Court approval as the order provides for

11    extension upon agreement of the parties, which we do have

12    here, but we wanted to do it in the spirit of transparency

13    of the process.

14          I think what I'd like to do is --

15          THE COURT:  Let me just jump in here and say I

16    agree with you.  I think that's exactly the way to go so

17    that people know where we are and where things are going, so

18    I appreciate you proceeding in that fashion.

19          MS. VANLARE:  Thank you, Your Honor.  So what I'd

20    like to do is address some of the points made in the various

21    objections and letters that have been filed on the docket.

22          First, with respect to the Gemini lenders, many of

23    whom filed letters on the docket, we think the key point

24    made by these objections is that these creditors would like

25    us to conclude these proceedings and emerge from Chapter 11

Page 32

1    as quickly as possible.  We understand and we, frankly,

2    share these goals.  We've been working tirelessly to achieve

3    those goals in collaboration with counsel to our major

4    stakeholders, including the Official Committee of Unsecured

5    Creditors and others, but we do not think that shortening

6    the mediation process will make these proceedings go any

7    faster.  In fact, we think that the goal of pursuing

8    mediation in these cases has been to bring various parties

9    to the table to achieve a consensual resolution that would

10   minimize litigation and secure a prompt exit from Chapter

11   11.

12           Therefore, Your Honor, we do urge you to overrule

13   these objections.  Again, we very much hear our creditor

14   body and the fact that I think everyone would like a

15   resolution to these proceedings as quickly as possible, and

16   we do believe that extending the mediation actually promotes

17   that objective.

18           Next, I'd like to address objections that were

19   filed by the FTX debtors and the counsel to former

20   representatives of Three Arrows Capital liquidators.  These

21   parties filed objections to extending the mediation because

22   they have not participated in it to date.

23           First, I'll note that the parties' desire to

24   participate in the mediation is at odds, frankly, with their

25   objections to extend the mediation.  However, putting that

Page 33

1    to the side, the focus of the current mediation to date has

2    been on resolving contributions of DCG to the plan,

3    including the repayment of over 1.7 billion owed to the

4    Debtors, plus additional claims.  It has not involved

5    mediation of a liquidated claims against the Debtors or any

6    other issues.  We are far along in our plan discussions.  We

7    filed our plan months ago and are working to file an amended

8    plan and disclosure statement shortly.

9           Neither FTX nor Three Arrows Capital has asked to

10   participate in the DCG mediation until now which, frankly

11   again, makes sense to us.  And, indeed, it's the Debtors'

12   business judgment to structure the mediation in the best way

13   possible to facilitate an efficient and fair resolution to

14   these cases and we think we've done that.

15          So with that, Your Honor, we would ask you to

16   overrule these objections to the order extending the

17   mediation to June 16th.

18          THE COURT:  All right.  Thank you very much.  And

19   so, let me hear from the committee.

20          MR. ABELSON:  Thank you, Your Honor.  Again, Phil

21   Abelson, White & Case, on behalf of the committee.

22          Your Honor, I'll be brief.  Basically, this is

23   just a -- it's not even really a request.  As noted, we

24   didn't need to seek it, but it was just to put everybody on

25   notice that the mediation would continue.  All that means is

Page 34

1    that negotiations are continuing, and we think it makes

2    sense to do that under the umbrella of the mediation order.

3    And, you know, we share Ms. VanLare and the Debtors' concern

4    about the length of the cases and the need to move on, which

5    is exactly why we have decided to figure out what a world

6    looks like if we don't have an agreement with -- a global

7    agreement with DCG, which is why we've started to work

8    through the plan process for that exact circumstance.

9           And so, the mediation is important to allow for

10   the discussions to happen.  We still think that's the best

11   way to try to move these cases forward and to reach a global

12   deal with DCG, but if we can't, we're figuring out how to

13   move on and trying to move this as quickly as we can.

14          THE COURT:  All right.  And I know there was

15   earlier an offer to address the Gemini lender objections and

16   make a comment about the understanding of the relationship

17   and I'd be happy to hear that comment now.

18          MR. FRELINGHUYSEN:  Thank you, Your Honor.  Anson

19   Frelinghuysen, Hughes Hubbard & Reed, on behalf of Gemini

20   Trust Company, agent for our Earn users.

21          Your Honor, the Court directed that Gemini file a

22   master proof of claim on behalf of the 232,000 Earn users

23   and we did file that claim last week, a week ago Monday.

24   This was done to facilitate the administration of the case

25   by avoiding the need for these hundreds of thousands of Earn

Page 35

1   users to file individual claims.  The Earn users or the Earn

2   lenders are direct lenders to the Debtors and each of them

3   is a direct creditor of the Debtors; it's not a creditor of

4   a creditor situation.

5          The master claim was filed and secured in part,

6   but there also will be a significant unsecured deficiency

7   claim that remains after setoff.  And also, I just want to

8   clarify a record, my statements previously to the Court

9   regarding the number of Earn users.  The number is actually

10  232,824, which is something that we came to in the process

11  of filing the Gemini master claim and they're collectively

12  owed 1.122 billion.

13          Your Honor, if we also could speak to the

14  extension of the mediation a little bit.  Do you have

15  further questions on the master claim?

16          THE COURT:  No, no, that's fine.  I had suspected

17  that to be the case, but I appreciate the clarification, so

18  please proceed.

19          MR. FRELINGHUYSEN:  Hopefully, that is clear to

20  the Earn users as well, and they can continue to call me as

21  well.

22          The Gemini position remains, as it has for the

23  past six months, is that Genesis has to do all it can to

24  return the Gemini Earn users assets as promptly as possible.

25  Gemini has supported the Debtors in each of the approaches

Page 36

1    it has tried to reach this goal.  When there was an all-

2    party deal on the table at the beginning of the year, Gemini

3    actively engaged and agreed on those terms.  When the Debtor

4    engaged with its important work with the UCC, Gemini

5    supported that process to the extent the greater value could

6    be extracted and achieved.

7           When the Debtors proposed mediation, Gemini

8    supported that as well and actively engaged in the initial

9    two-day mediation and has been actively involved with all

10   parties since then.

11          The Debtors latest push to get the amended plan on

12   file this week, Gemini supports that as well.  Genesis has

13   our comments, and we will do all we can to get that and to

14   help the Debtors get that filed this week.  Whether the

15   mediation period is extended, I think it's already been

16   stated, does not slow that down; that's just kind of a side

17   part of getting the whole deal on the table, and I think the

18   overriding immediate goal is moving forward.

19          What we have are 232,000 people, actual people,

20   with real investments and savings impacted here.  Gemini has

21   been the intermediary of their frustrations for months.

22   Last week, a lot of those frustrations bubbled over into the

23   objections that the Court saw, and we've been talking about.

24   I can assure you that Gemini sees multiples of that nearly

25   every day.

Page 37

1          Gemini urges all the parties, as we know, to keep

2     in mind that each delay has actual people separated from

3     their investments and that while Gemini actively supports

4     the Debtors' current efforts, Gemini's patience, just like

5     the patience of its Earn users, is wearing thin.  Without

6     real progress in coming weeks, Gemini is ready to exercise

7     available rights to advance alternative methods to

8     distribute property to Gemini Earn users as promptly as

9     possible in an effort to minimize any ongoing harm.

10          The bottom line is that we remain committed to the

11     process and committed to the plan or the mediation,

12     whichever moves things forward as fast as possible.  We hope

13     all the parties remain focused on getting recoveries out to

14     these actual users as promptly as possible and we remain

15     available to any discussion any time on any of that.

16          THE COURT:  All right.  Thank you very much.  With

17     that, I thought I would hear from the parties who did file

18     an objection.  So I've heard certainly just now from Gemini

19     Trust Company.  I think that reflects the views, generally

20     speaking, of the individual Gemini lenders who submitted

21     their own individual emails, which are substantially similar

22     in content if you take a look at the list of them.

23          So let me turn now to FTX Trading Ltd.

24          MR. GLUECKSTEIN:  Thank you.  Good afternoon, Your

25     Honor.  Again for the record, Brian Glueckstein of Sullivan

Page 38

```
 1    & Cromwell, for FTX Trading and its affiliated debtors in

 2    their Chapter 11 cases pending in Delaware.

 3              Your Honor, the FTX debtors, and we appreciate

 4    Your Honor hearing from us today; it's our first appearance

 5    in the case.  While we have filed some papers, this is the

 6    first time appearing before Your Honor on behalf of FTX.

 7              The FTX debtors have never sought to interfere in

 8    any way with Genesis Chapter 11 cases.  But our priority,

 9    Your Honor, is certainly our need to ensure that our rights

10    are protected in any plan process.  The FTX debtors have

11    been content up to this point to let the Debtors propose

12    mediation parties, negotiate a plan, and then we intended to

13    evaluate that proposed plan and its terms once filed with

14    the Court.

15              However, in the estimation motion that was filed

16    by the Genesis debtors late Thursday --

17              THE COURT:  Well, let me -- so I realize the

18    estimation question is not technically on for today.  I

19    realize it's, from your view, relevant, but it is a separate

20    request for relief that I'm not -- it's not teed up for

21    today.  I'm not ruling on it today, and so, you obviously

22    reserve all your rights as to that.  I believe it's on for

23    June 15th, so I don't want to do a deep dive in that because

24    obviously any comments -- the more you say about it, the

25    more people will feel the need to respond, and we'll end up
```

Page 39

1    sort of repeating I think all of those issues when we come

2    together on the motion.

3            So I do have -- you know, so I'll give you a brief

4    opportunity to talk about it, but only a brief one.

5            MR. GLUECKSTEIN:  And I'm only intending briefly,

6    Your Honor.  I'm not intending to get into the merits, of

7    course, at all and we'll address the timing of that motion

8    with respect to the next agenda item, the status conference.

9            I simply was intending to note, Your Honor, that

10   the premise of that motion talks about the need to estimate

11   claims for purposes of the plan process, and that motion, of

12   course, seeks to estimate our claims to zero.

13           This is the first time it's become evident to us

14   that, despite what Miss VanLare seems to have suggested for

15   the first time to use this morning of the limited nature of

16   the mediation, it certainly appears to us in the filings

17   prior to this morning's hearing that the mediation and the

18   motions filed in support of it now are seeking to address

19   issues that are premised on the treatment of FTX's claims.

20           If it is, in fact, true that the estimation motion

21   as filed in furtherance of the mediation and plan process

22   that's proceeding, it is our position, Your Honor, that the

23   statement that the Debtors are working expeditiously with

24   all parties to formulate a plan omits their biggest

25   creditor.  While we have apparently a dispute about our

Page 40

1   claim --

2           THE COURT:  So are you asking to be -- there's

3   sort of a couple of ways I could take your comments, but one

4   of which is that you want to be at the table.  Am I

5   understanding that correctly?

6           MR. GLUECKSTEIN:  We certainly think, Your Honor,

7   that at this point in light of the filing last week that if

8   the path that this mediation appears to be on, which of

9   course, is confidential and we could be off base as to that

10  -- there isn't a public discussion of the scope of the

11  mediation -- we do believe we should be at the table as the

12  largest creditor of this case, in our view, with respect to

13  the plan formation process if the plan is going to be

14  premised on the treatment of our claims in some way.

15          THE COURT:  So I would anticipate, and somebody

16  could correct me if I'm wrong, that the motion certainly was

17  intended to start conversations between the estate and FTX;

18  these motions usually are.  And again, we'll get to it in

19  the fullness of time.

20          So anything else, Mr. Glueckstein, in terms of

21  your objection?

22          MR. GLUECKSTEIN:  Not with respect to the

23  mediation, Your Honor.

24          THE COURT:  All right.  Thank you very much.  And

25  let me hear from the foreign representatives of Three Arrows

Page 41

1    Capital, Ltd.

2            MR. GOLDBERG:  Thank you, Your Honor.  Adam

3    Goldberg of Latham & Watkins on behalf of the joint

4    liquidators of Three Arrows Capital as foreign

5    representatives.

6            First let me add, Your Honor, we respectfully

7    request leave of the Court to appear today after filing

8    objection over the weekend in light of the expedited nature

9    of the request and the response that it has generated today.

10           THE COURT:  That's fine, yes, happy to have you

11   here.

12           MR. GOLDBERG:  Thank you, Your Honor.  Three

13   Arrows Capital is in a liquidation proceeding in the British

14   Virgin Islands.  Russell Crumpler and Christopher Farmer

15   were appointed as joint liquidators on June 27th, 2022, and

16   that proceeding was recognized as a foreign main proceeding

17   by a court in this district, Judge Glenn, on June 28th,

18   2022; the case number for that is 22-10920.

19           I'd like to just make a brief remark about the

20   context of the Three Arrows case before getting into the

21   issues before the Court today, which is that the Three

22   Arrows liquidation has been made very challenging by the

23   absence of proper records and the flight of the two founders

24   that operated the business.  They are currently in -- the

25   founders are currently in violation of orders from the BBI,

Page 42

1    Singapore, and indeed this Court before Judge Glenn to turn

2    over documents and be available for examination.

3              The joint liquidators have been forced to engage

4    in extensive efforts to obtain record, marshal assets, and

5    effectively rebuild the records of the business.  Prior to

6    Three Arrows being in liquidation, it had engaged in

7    extensive transactions with the Debtors, essentially

8    financing transactions denominated in cryptocurrency among

9    other things.  By the time Three Arrows Capital was put into

10   liquidation, those transactions were will into the billions

11   of dollars.

12             And I should note as well that Three Arrows

13   Capital was also engaged in other transactions with some of

14   the Debtors' affiliates, including --

15             THE COURT:  Well, I understand that you have an

16   extensive claim in your view and also an extensive

17   involvement with the Debtors.  I guess just to cut a little

18   more to the heart of it, which is your objection to the

19   proposed order extending mediation in terms of how this case

20   is going to work.

21             MR. GOLDBERG:  Yes, Your Honor.  Essentially, I

22   think, as with FTX, we view ourselves as a key party in this

23   case.  Other parties may decide to dispute our claims, but

24   we should be at the table as well, Your Honor.

25             THE COURT:  All right.  Thank you very much,

Page 43

1    counsel.

2           MR. GOLDBERG:  Thank you.

3           THE COURT:  So I do have a stack in front of me of

4    the letters that were submitted, which are the only other

5    objections to the motion, and they are my only other -- it's

6    a bit of an understatement in the sense that there are quite

7    a few of them, and so, they've been filed at various parts

8    in the docket that are listed now on the amended agenda, the

9    most recent amended agenda.

10          And I think in the interest of full transparency

11   and just so people understand that I'm reading these,

12   there's a discussion in them about a number of different

13   things.  One is about folks needing access to the funds that

14   they've invested, the importance of that, which I think has

15   been echoed by other parties today.  There is also some

16   discussion with various folks about good faith in various

17   different ways that's expressed, and there's also obviously

18   a lot of discussion about delay.  There's some, in some

19   instances, a mention of multiple delays in the context of

20   this case, and I wasn't sure if people were referring to the

21   extension of exclusivity or the mediation motion, neither

22   one of which have been up for extension until today.

23          So I just -- I wanted to make sure people

24   understood that I have these, I've read these, and I will

25   continue to read what's been submitted.  So, for example,

1    someone says Genesis has already been granted multiple

2    extensions, so there may be a certain amount of sort of

3    misunderstanding about how the bankruptcy process works,

4    which is understandable that folks are not experts in

5    bankruptcy; that's a very uncommon thing to be unless you've

6    spent some time here in bankruptcy court.

7            And so, to just level set a bit, there's a couple

8    of different kinds of extensions that we're talking about

9    here today, and I just want to provide a little bit of

10   information to the extent it's helpful for folks.

11   Obviously, a Chapter 11 is a debtor who is in possession,

12   that is a debtor who is operating a business who comes to

13   court and so, it's real litigation in real time.  There are

14   lots of deadlines and lots of requirements as a Chapter 11

15   debtor, and that's why you'll see folks -- the debtor will

16   come in here and ask for permission to do lots of things;

17   we've already dealt with a couple of those early on in the

18   motions that weren't contested here today.

19           But one of the things that is related to the

20   mediation motion -- it's not the same, it's different, but

21   in terms of requesting additional time that's already come

22   in is the extension of exclusivity, and that's the amount of

23   time the debtor as a party that can propose a plan.  And

24   that's related to the mediation in the sense that the debtor

25   is trying to figure out the economic terms of what a plan

1   might look like, so there's lots of different kinds of

2   conversations that have to happen in connection with that.

3   And there's a statute for extension of exclusivity; it's

4   referenced in the papers and that I referenced in granting

5   the extension, and that was the first extension of

6   exclusivity in this case, it's important to note.

7          And Chapter 11 cases are large and complicated.  I

8   don't think you need to look much further than the first day

9   declaration in this case, that is the declaration provided

10  by the Debtors when they filed the case, talking about the

11  crypto winter and the difficulties in the crypto industry,

12  to understand how complicated and complex these cases are.

13         And so, segueing from that to this motion, the

14  mediation motion, the idea behind mediation, it's often used

15  in bankruptcy to give people essentially a structure around

16  negotiations and to give them the aid of somebody who's

17  outside the parties to provide some insight and wisdom in

18  terms of the parties trying to reach deals in their

19  negotiations.  And it is often a concern that's raised by

20  parties who are not in the room where it happens, to quote

21  Hamilton, of the mediation that they're not in the room,

22  which is, of course, a source of great anxiety.

23         The challenge always, of course, is that you can't

24  negotiate everything all at once.  Complicated Chapter 11

25  cases often are a series of negotiations, some of which sort

Page 46

```
 1    of happen naturally first, second, third.  Sometimes people

 2    need to know what the economic terms that might be out there

 3    in order to start thinking about the claims pool and what

 4    people are entitled to; you can't start paying people until

 5    you know what they're entitled to under law, and the minute

 6    you pay one person, then somebody else who complains saying

 7    what about me, so that's what a plan of reorganization is

 8    for.

 9              So I mention all this just to sort of level set

10    the bankruptcy as a process for litigating in real time the

11    reorganization of a company.  In a case like this, it's very

12    complicated; it means that it does take time and it has a

13    lot of moving pieces.  And there are times when transparency

14    is and for most of it, transparency is foremost, but for

15    negotiations in something like mediation, transparency is

16    not part of the equation because no one wants to negotiation

17    in public; that's not the way negotiations work well.

18              So I mention all this just to try to respond maybe

19    to some of the tenor of the emails that I received so that

20    people have a sense of what the case -- what's going on and

21    how to understand what's going on because people may not

22    have any context at all, but it is a court-supervised

23    process.  We have regular omnibus hearings and people come

24    in to give updates just like those that we've had today.

25              So with that, I'll ask if there's any other party
```

1  who very briefly wants to be heard on the order, the

2  proposed order requesting an extension of the mediation

3  period.

4          MS. VANLARE:  Your Honor, I'm not sure if you're

5  still waiting to hear from others, but I would like an

6  opportunity to quickly respond to some of the points made

7  whenever Your Honor thinks it's appropriate.

8          THE COURT:  Oh, yeah, and certainly you'll get

9  that Miss VanLare, absolutely.  I figured I would hear from

10  everybody else who might wish to be heard before I'll allow

11  you to clean up, so to speak.

12          MS. VANLARE:  Thank you.

13          THE COURT:  All right.  Any other party that

14  wishes to be heard?

15          MR. ROSEN:  Your Honor, Brian Rosen, if you don't

16  mind.

17          THE COURT:  Sure.

18          MR. ROSEN:  Your Honor, we are representing the ad

19  hoc group.  We've actually probably been the longest playing

20  party in this situation, having started the negotiation

21  process well before the committee actually was formed before

22  the Debtors' cases were filed and probably doing it

23  alongside Gemini for the longest period of time.

24          Your Honor, we think the intrusion of the other

25  parties into the mediation process will not add to this

Page 48

1      process at this time.  We are only discussing the DCG

2      matters.  We are not discussing the plan formulation with

3      respect to recoveries for people who have a contingent on

4      liquidated claims like FTX or potentially like Three Arrows.

5      And so, we would concur and echo what has been said

6      previously by Miss VanLare and Mr. Abelson with respect to

7      limiting this process at this point in time to the parties

8      that have engaged in it to date.

9              Thank you, Your Honor.

10             THE COURT:  All right.  Thank you very much.  Any

11     other party that wishes to be heard before I hear from Miss

12     VanLare?

13             MR. MUELLER:  Your Honor?

14             THE COURT:  Yes.

15             MR. MUELLER:  Hi, this is Clinton Mueller.  I'm

16     actually one of the people who submitted one of those emails

17     to you.  And first off, I wanted to thank you for actually

18     taking the time to read those emails from a lot of us.

19             The reason why you're seeing so many Gemini Earn

20     users here and in submitting this is actually because of the

21     fact that we acknowledge the fact that Gemini has claimed

22     that they obviously are representing us, the Earn victims,

23     here in this case.  But quite frankly, they have done an

24     inadequate job of actually communicating with many of us,

25     which is why all of us are here and speaking up, hoping that

1    maybe our voices will help draw some light here and perhaps

2    inspire them to improve their communications with us.  As

3    they already said, there's over 232,000 of us and we haven't

4    received a single dollar from Gemini since November of last

5    year, not one.

6              Now, the thing about it is from Gemini, you know,

7    we're asking basically for all the parties to please provide

8    greater transparency here.  We're not institutional

9    investors, we don't have the luxury of this litigating

10   endlessly.  This has real-world implications to our homes

11   and our families.

12             And lastly, if possible, we'd like to ask Gemini

13   while we're here and on record, to please look at the

14   possibility of adding liability to CoinDesk, to Grayscale,

15   or even looking at claw back provisions to that, and then

16   please explore the relationship between the HQ cash

17   management group.

18             Thank you very much for your time.

19             THE COURT:  All right, thank you.  Well, one thing

20   I will say, a mediation is often done in large Chapter 11

21   cases and there's a reason for that: it's because when you

22   talk about endless litigation, that's what is often the

23   alternative.  Endless litigation is incredibly time-

24   consuming and, even more importantly, it's incredibly

25   expensive.

```
 1              And so, in a bankruptcy case -- I will say I've
 2     been on the bench for 13 years, presided over cases like
 3     American Airlines, Aeropostale, and others -- and if parties
 4     in large 11 cases litigated every issue that needed to be
 5     decided, instead of talking to each other, none of those
 6     cases would have worked: it's just too time-consuming and
 7     too expensive, and I have certainly seen mediation work
 8     incredibly well in cases.
 9              So I think everybody here shares your concern
10     about the potential for endless litigation.  I do think that
11     in terms of transparency, that's very important, there's a
12     committee here, there are lots of constituents.  I suspect
13     that there will be some discussion among the various folks
14     who are at today's hearing about the best ways to
15     communicate with Gemini lenders who filed these letters for
16     today and other folks who are in the boat about the best way
17     to sort of keep them up to date on developments.
18              But there will be, for things like mediation, a
19     certain amount of radio silence because mediation needs that
20     kind of process for it to work; it's not sinister.  It
21     allows people to be very candid about their views, and
22     without that candor, people don't reach agreements.  So it
23     can certainly be very frustrating, however, to be on the
24     outside and waiting to hear, so I think everybody
25     appreciates that concern.
```

1            I guess to loop back to where you started is

2    nobody's seeing a dime.  That's really kind of the

3    bankruptcy code's fault.  It works that way because people

4    get paid as creditors and interested parties, based on the

5    priority scheme in the bankruptcy code and the terms of a

6    plan.  And there are some exceptions to that, but largely,

7    that's how it works, and so it does mean that you have to

8    reach a conclusion on a plan before folks can get paid,

9    which I understand is frustrating.  I understand that these

10   are investments by people who don't have the luxury of

11   waiting forever.

12           But I think people are trying to figure out the

13   appropriate resolution thinking about the bankruptcy code,

14   thinking about everybody's individual interests, but it's a

15   multiparty dispute; it's very different than a plaintiff

16   versus defendant litigation.  There are many, many parties

17   at the table.  I have mediated some large Chapter 11 cases,

18   and I can tell you the mediations are very challenging.  But

19   I do appreciate the letters.  I actually have your email of

20   June 1st in front of me, sir.  And so, again, I will

21   everything that's submitted and, again, I think everybody

22   takes very seriously the concerns that folks have.

23           We have a challenging situation.  Nobody comes

24   into bankruptcy court with a rosy story, right?  You come in

25   with bad news that tells people, well, we're here in

Page 52

1    bankruptcy court because we need the tools of the bankruptcy

2    code to deal with the issues and the problems that we have

3    as an ongoing business.  And if anybody's paying attention

4    to this space, there are lots of cryptocurrency cases and

5    none of them have been resolved quickly.  You can take a

6    look at Judge Glenn who has presided over a number of cases,

7    Judge Wiles in our court has presided over Voyager, there's

8    the FTX case that's in Delaware, so there are a lot of

9    cases.  They all have their own individual challenges and

10   that leads to the need to take some time to figure them out.

11           But with that, let me ask if there's anybody else

12   who wishes to be heard before I hear from Miss VanLare.  All

13   right.  Hearing no further party, Miss VanLare, let me hear

14   from you in reply to the comments.

15           MS. VANLARE:  Thank you, Your Honor.  I'd just

16   like to briefly address some of the comments made by the FTX

17   debtors and the Three -- counsel to the FTX debtors and

18   counsel to the Three Arrows Capital liquidators.

19           First on the FTX debtors, Mr. Glueckstein noted

20   that they are our largest creditor.  We obviously do not

21   believe that that is the case and I think we've made that

22   quite clear in our motion to estimate their claim at zero

23   dollars.

24           I go with what Mr. Rosen has said.  We do not

25   believe it's appropriate or helpful to force the admission

Page 53

1    of these parties into the current mediation process for the

2    reasons that I outlined earlier, and we do think that it's

3    within our business judgment to structure the mediation to

4    facilitate the resolution of these cases in the best way

5    possible and I believe that we've done that.  I do not think

6    that it would be helpful, again, to force us to change the

7    way that the mediation has been conducted.

8              So with that, Your Honor, we would ask again that

9    you overrule these objections and enter the order extending

10   the mediation.

11             THE COURT:  All right.  Having heard from all the

12   parties at this point and thought about the matter after

13   reviewing all the papers before coming out here, I'm going

14   to grant the extension of time to mediate for much the same

15   reasons that we've been discussing.  Everybody wants the

16   case to move quickly and to emerge quickly.  Mediation has

17   been proven to be a tool that helps further that goal,

18   rather than stand in the way of that goal.

19             If you litigate everything that needs to be

20   litigated and if litigation is your first and only impulse

21   in a large Chapter 11 case, you're rarely going to have a

22   successful case.  And so, shortening the mediation does not

23   shorten the case; furthering the mediation tends to further

24   prompt resolution of the case.

25             So a couple of other comments that I'd have in

1    reaching this conclusion to grant the requested extension.

2    There is certainly about who's at the table and who's not;

3    that's, again, a common concern and a common challenge in

4    cases about who's at the table for mediation.  You need to

5    start somewhere, and what I have suggested is in cases where

6    that becomes a sticking point is for the parties who are

7    actively involved in mediation to keep the mediator apprised

8    of court proceedings and the kinds of things that they're

9    hearing in court, such as today's hearing.  And that way, if

10   the mediator thinks or wants to be a strong advocate for

11   saying, well, somebody's not here who needs to be here to

12   move this along, well, the mediator can communicate that.

13         But I'm not in the business of dictating the terms

14   of the mediation to parties.  I think that runs the risk of

15   the procedure not working well and also of a judge who is

16   not as close to the negotiations trying to impose of my

17   sense of what's happening on the parties who actually are

18   close to the negotiations and do know what's happening, so I

19   think that runs a real risk for the process.

20         In terms of speed, that's the other sort of theme

21   of a lot of these things.  I don't think there's anything

22   about this case that signals to me that there's been undue

23   delay in any shape or form.  Cases often zig and zag back

24   and forth, as we came in an agreement and then things

25   changed, and that sometimes happens as people start

1    negotiating and the bankruptcy process kicks in.

2            I don't think the timing here is inconsistent with

3    Chapter 11 cases generally or with any of the kind of

4    cryptocurrency cases that I've been seeing here in this

5    court and other courts, so I don't think there's been any

6    misuse of the mediation process as a way to unduly delay

7    things.  And I think the other protection involved, and that

8    is certainly you have -- the Debtors are negotiating with

9    other parties.  They're negotiating with the committee of

10   unsecured creditors who's appointed by statute, with the ad

11   hoc group that involves lots of interested parties.

12           They all have an interest that's very much aligned

13   in the interests of the need for speed that other parties

14   have expressed and the desire to get paid, so I think there

15   are some guardrails around the process by virtue of the

16   participants.

17           And so, turning specifically to the letters,

18   again, the issue of good faith was raised.  I haven't seen

19   anything that raises any concerns about good faith use of

20   the process at this point in time in any way, shape, or

21   form.

22           And again, to tie this back to the motion for

23   extension of exclusivity, the reason why you ask for an

24   extension of exclusivity is because the code gives you a

25   certain amount of time, but it also provides for additional

1    time to come back to the court; it's court-supervised

2    process.  So I think that that's exactly how it's working

3    here; it's working the way it's supposed to.

4           So one of these emails, I believe, said that or

5    talked about multiple extensions.  There haven't been

6    multiple extensions.  Today was the first request for an

7    extension of exclusivity.  It was also the first request to

8    extend the time for mediation.

9           And one of the concerns that was raised about

10   access to funds, sadly, I wish I had better news for folks.

11   I do have bad news to deliver.  Oftentimes in bankruptcy

12   cases as a bankruptcy judge, I can't do anything about folks

13   right now in terms of their desire to access funds; that's

14   bad news.  It's unfortunate, but again, that's because of

15   the need to treat equally situated people the same way.  So

16   we can't -- if we start paying one party, somebody else

17   doesn't get paid, before we've even figured out who's

18   entitled to what kind of treatment, so that's what the plan

19   of reorganization is for.

20          So again, I sympathize with the frustration and

21   the concerns of all the folks who are submitting emails, as

22   well as the members of the unsecured creditors' committee

23   and the ad hoc group on that score.  We will all do the best

24   we can to move the case along efficiently and I do think

25   mediation is a big part of that.

Page 57

```
 1            So for all those reasons, I'll grant the requested
 2    extension of the mediation process, and I will ask the
 3    parties to think about the best ways to communicate status
 4    generally to the folks who are most interested in this case.
 5    If there's something that can be done in the bankruptcy
 6    court using the bankruptcy court process that would be
 7    helpful, you'll be sure to let me know.
 8            If there are -- there were requests to submit some
 9    sort of reports or if you're going to handle that directly,
10    that is the folks who are reaching out, certainly as the
11    discussion earlier about the amount of inquiries that Gemini
12    Trust Company is getting.  And so, I will leave it all to
13    you all in the first instance to think about those issues,
14    but if there's ever anything I can do on that front, that
15    the institution of the bankruptcy court can do, you'll let
16    me know.  I'd be happy to assist in any way I can.
17            So that's the ruling on that motion, that's number
18    four on the agenda.  Again, I thank everybody who submitted
19    documents and their views in connection with all of that
20    and, again, I will continue to read everything that is filed
21    in the case.
22            So what's left, I believe, is no. 5, which is the
23    status conference on estimation of reserve requests by
24    letter to have a status conference on the Debtors' motion
25    for estimation.  And I realize that came in late; I'm not
```

Page 58

1    trying to surprise anybody.  My general view is that status

2    conferences can be helpful, and so that's the spirit in

3    which I agreed to add that to the agenda.  I'm not trying to

4    put anybody in an awkward spot, but if we can have a

5    conversation and get something useful done, great; sometimes

6    that happens, sometimes it doesn't.

7             So I'm not making any value judgments, I guess is

8    what I'm trying to say, in setting this down for a status

9    conference; just trying to be a vehicle for perhaps a useful

10   conversation.  So with that, I think I did get a sense in

11   FTX's earlier remarks and the paper that they filed about

12   some of their concerns about estimation.

13            But maybe Mr. Glueckstein, I'll give you a brief

14   opportunity to expand upon that, recognizing that today is

15   not a status conference, no one is arguing the merits of any

16   of these things; that's on for later this month.  So the

17   question is what can we hope to accomplish, so that usually

18   means focusing on procedures and what's an efficient way to

19   handle things, so with that, Mr. Glueckstein.

20            MR. GLUECKSTEIN:  Thank you, Your Honor.  Again

21   for the record, Brian Glueckstein, Sullivan & Cromwell, for

22   the FTX debtors, and appreciate very much Your Honor

23   scheduling this status conference today.

24            I will be brief, but I would like to expand a bit

25   on our submission to the court and the reason for the

1    request today.  We did think it made sense, consistent with

2    Your Honor's comments, to get the parties together to

3    discuss the status of this motion, given the timing in which

4    it's been noticed, and we would like to avoid filing

5    unnecessary motion practice.

6         As we did explain in our letter, the debtors have

7    sought -- the FTX debtors -- to transparently address in

8    good faith their substantial preference claims against the

9    Genesis debtors.  We understand those claims are disputed,

10   but, Your Honor, these are very important claims to the FTX

11   estates.  Understanding that there are always issues that

12   arise when both parties are debtors in pending Chapter 11

13   cases and there are complexities to that dynamic, we have

14   sought to address our claims in an organized and efficient

15   manner.  We did preview our claims to Genesis's counsel.  We

16   suggested being open to mediation of the substance of those

17   claims.

18        We filed the motion, as Your Honor knows, seeking

19   relief from the automatic stay to assert those claims in our

20   Chapter 11 cases, which Your Honor has currently scheduled

21   to hear next week on June 15th; that motion was originally

22   noticed and scheduled for hearing last month on May 25th.

23   And when the Genesis debtors' counsel came to us and

24   requested that we adjourn the hearing to permit them to

25   focus on plan mediation, we immediately agreed.

1            In return, the Genesis debtors filed the

2    estimation motion and it's before the filing deadline,

3    providing us the absolute minimum notice of that motion with

4    zero advanced notice or discussion and then noticed it for

5    the same June 15th hearing.  We have, as Your Honor alluded

6    to, concerns about that motion.  We would be objecting to

7    that motion and certainly as currently presented.

8            From our perspective, it does not seek procedures

9    at all.  There's no discussion about the scope of any

10   estimation proceeding, the issues to be considered, the

11   scope of discovery to be conducted, or anything else for

12   that matter.  It contains only a proposed truncated schedule

13   to estimate claims by mid-August that are the subject of our

14   stay relief motion and that we've submitted in proofs of

15   claim that have not been objected to.

16           And, Your Honor, the stated purpose of that

17   motion, which of course Your Honor will hear in due course,

18   is to avoid undue delay in the plan process.  And it's for

19   that reason, Your Honor, we do think this is the example of

20   putting the cart before the horse in scheduling this motion

21   for next week.  From our perspective, Your Honor, the first

22   thing that should happen is the Court should consider the

23   FTX debtors' stay relief motion as scheduled; that motion

24   has been pending, it's been noticed, it was adjourned and is

25   now scheduled for hearing on June 15th.  The outcome of that

Page 61

1    motion will guide the parties as to next step with respect

2    to liquidating the FTX debtors' substantial claims.

3            If the Court were to grant that motion, we

4    certainly are prepared to discuss an expedited litigation

5    schedule on the merits of those claims with respect to that

6    litigation with the Genesis debtors.  But that motion, in

7    our view, is a gating issue, which is why we filed it.

8            Second, Your Honor, and fundamentally, we believe

9    that the Genesis debtors should have a plan on file with

10   sufficient time for the FTX debtors and all of their

11   stakeholders to consider it before we have to respond to the

12   estimation procedures motion.  The plan at this point

13   remains undisclosed and, as we heard this afternoon in

14   connection with the discussion around extension of

15   mediation, clearly is still being negotiated and formed.

16   And so, from our perspective, the idea that we need to rush

17   mediation procedures on an extremely truncated timeline

18   before we've even seen the plan isn't appropriate.

19           And third, Your Honor, the estimation procedures

20   motion itself raises numeral procedural issues, substantive

21   issues, that we're concerned about, and we think we should

22   be given a reasonable opportunity to respond to the motion,

23   certainly longer than this Thursday given the issues

24   presented.  As I noted, there's nothing in the motion itself

25   with respect to the actual procedures that are being sought

Page 62

1    or proposed.  And, of course, the basis of any estimation

2    motion is satisfaction of Section 502(c) of the Bankruptcy

3    Code.  The Debtors assert that that provision is satisfied,

4    but there's nothing in the motion that actually presented

5    how so or any evidence in support of the motion.

6          So from our perspective, Your Honor, we believe

7    discovery is necessary before the procedures motion could be

8    heard to understand exactly why it is we're seeking to

9    estimate claims that are the subject of claims that have

10   been filed but not objected to in these cases and subject to

11   our stay relief motion that we have been very clear from the

12   beginning we'd be asking Your Honor to bring in Delaware.

13         So, Your Honor, the reason for -- for all of those

14   reasons from our perspective, we believe that what should

15   happen here, as Your Honor alluded to after my earlier

16   remarks with respect to the mediation, is that the Genesis

17   debtors should talk to us.  We should get an understanding

18   of what it is they're trying to accomplish and on what

19   schedule.  But we think all of that should happen at least

20   in parallel, but certainly ultimately, any decisions made

21   after consideration of our stay relief motion next week and

22   after we've seen the plan.  We've now heard that the current

23   mediation is not including plan treatment issues, the way it

24   suggested to us as this motion was contemplating, which

25   raises more questions in my mind as to why we're proposing a

Page 63

1     schedule to estimate very significant claims with an unknown

2     scope and process by August.

3            So, Your Honor, before we respond to all of this

4     in writing, we thought it made sense to get together and

5     have the parties perhaps elaborate and get some guidance

6     from Your Honor as to whether this motion is, in fact, going

7     to be heard on the 15th, in which case, we'll need to talk

8     to our stakeholders on our side.  We think it's, frankly,

9     just premature at this point in the discussion.

10            Thank you, Your Honor.

11            THE COURT:  All right.  Thank you very much.  So

12    I'll start with Miss VanLare.  Again, I don't have a motion

13    in front of me, and so one of the hazards of putting

14    something on for a status conference quickly is to just end

15    up having people sharpen the points on their weapons and I'm

16    not trying to do that.  So my focus is really on procedural

17    questions and timing and efficiencies, rather than obviously

18    the merits, which I'm going to stay away from both in terms

19    of the stay relief motion and in terms of the motion to

20    estimate.

21            So Miss VanLare?

22            MS. VANLARE:  Thank you, Your Honor.  I'd like to

23    address some of the points made by Mr. Glueckstein.  So

24    first, we filed our motion to estimate on 14-days' notice,

25    so we did not seek to shorten notice; it's the full notice

Page 64

1    provided by the rules.

2          I think it's important to remember what's on for

3    hearing on June 15th with respect to this motion is really

4    procedural in nature.  It's a request to estimate these

5    claims and to set a process for doing so, and we've laid out

6    what we think is a necessary timeline for that.  And the

7    reason for that timeline is we've said in the motion and

8    alluded to today, is that we are trying to implement a

9    confirmation timeline that would allow us to confirm a plan

10   by the end of August.

11         Mr. Glueckstein has said, you know, nobody's seen

12   a plan; that's simply not the case.  We've had a plan on

13   file in these cases since the middle of January.  We are

14   also, as I noted earlier, intending to file an amended plan

15   and disclosure statement; however, we've had a plan on file

16   for months.

17         The mediation, which has been ongoing, is a way to

18   improve, so to speak, on the plan in the sense that we have

19   hoped and are continuing to hope that we can reach a

20   consensual resolution.  However, the plan on file allows us

21   to confirm it and to emerge from these cases, which as Your

22   Honor has heard and read from the various letters that have

23   been filed, it's critically important to us and our

24   creditors.  The process that we've proposed for the

25   estimation and the timeline is driven entirely by the

1   confirmation timeline, and again, we hope to achieve that by

2   the end of the summer.

3          Mr. Glueckstein has said in his letter and just a

4   few minutes ago that he thinks we should -- that Your Honor

5   should hear the lift stay motion before hearing the

6   estimation motion.  In fact, Your Honor, we think it's

7   critically important that you consider them at the same

8   time, which is why we thought it was important to bring the

9   estimation motion for the same hearing date as the stay

10  relief motion.

11         We think that it's important to consider the full

12  context -- when you consider the stay relief to consider the

13  full context of the timeline for confirmation that we're

14  hoping to achieve in these cases, and we think that's

15  directly relevant, which is why, again, we've sought to have

16  those considered at the same hearing.

17         We do think that the issues on for that hearing

18  are limited; they're procedural in nature.  We don't think

19  discovery is necessary.  We're simply asking to set a

20  process and a timeline for estimating these claims because

21  the amounts alleged with -- which, again, we disagree fully,

22  the amounts alleged are extremely large.  And so, we think

23  this is critical in order to implement our confirmation

24  timeline.

25         So with that, Your Honor, I think really the only

Page 66

1    issue for today is the question of adjournment.  We think

2    it's absolutely critical that the motion proceed on June

3    15th; that is, that it's not adjourned for all the reasons

4    that I articulated.  We think it's important to these cases,

5    it's important to our creditors.  Thank you.

6           THE COURT:  All right.  So, Mr. Abelson, on behalf

7    of the committee?

8           MR. ABELSON:  Thank you, Your Honor.  Again, Phil

9    Abelson, White & Case.

10          The committee echo everything that Miss VanLare

11   just said, but I think she was being a little understated

12   when she said it's an extremely large claim.  FTX filed a

13   claim that doubles the size of our claims pool.  It is

14   exactly where we anticipated or right around where we

15   anticipated the claims would be and their claim creates what

16   we have as a two times claims pool.

17          And so, it is absolutely essential and critical to

18   these cases that that claim is resolved before we get to

19   plan confirmation and are able to figure out what

20   distributions might be had for all of the creditors, some of

21   whom you've heard from today, you know, before we can get

22   distributions out to them.  That's it, Your Honor.

23          THE COURT:  All right.  Mr. Rosen, on behalf of

24   the ad hocs?

25          MR. ROSEN:  Thank you very much, Your Honor.  I

1    actually have nothing more to add than what Miss VanLare and

2    Mr. Abelson, other than the fact that in order for these

3    cases to move at the speed that all the creditors need them

4    to move to get distributions in the third quarter of this

5    year, we need to move this process forward and the

6    estimation is the best way to do so.  Thank you, Your Honor.

7            THE COURT:  All right, so just a couple of

8    thoughts.  My thoughts are really procedural more than

9    anything else.  What's teed up for the hearing is teed up.

10   I'm not going to micromanage that, but I'm going to do what

11   judges often do, which is to encourage and indeed direct

12   people to talk to one another.

13           And so, there's two things here that I think are

14   process points that loom over things, one is the

15   confirmation timeline.  We all know how important it is to

16   move cases, but we also know based on prior experience how

17   quickly cases must move versus how quickly they do move and

18   when negotiations need to happen and things of that sort.

19   It's probably, frankly, too soon to get into that.  But I

20   don't want the confirmation timetable to prevent people from

21   talking to people, other people, about the process and

22   procedure.

23           So estimation, the devil's in the details, right?

24   It's in the code, but anybody who's been representing a

25   party who's had an estimation motion filed, the first

Page 68

1    reaction I think is one of panic and concern because you

2    don't know what it's going to mean for your claim, and the

3    other source of panic and concern is that you don't know

4    what the judge is going to do.

5         The code is not particularly detailed about what

6    an estimation hearing looks like and it really has to suit

7    the facts and circumstances of a case.  And so, there's

8    always due process.

9         I'm not sure who, somebody has an open mic, so

10   please make sure to address that if you would.

11        So you need to think practically about it because

12   judges want things to be fair.  It's in the code, so it's

13   not a question of whether it's available.  It is available

14   and the grounds under which it's available are well known;

15   that part actually, the law is well developed.  But what an

16   actual estimation process looks like is a lot less well

17   developed, and so people should have conversations about

18   that and to the extent it's possible, share their thinking

19   about sort of the -- whether you want to use the Jenga

20   blocks metaphor or a Tetris metaphor, which parts of the

21   process are going first and have to go forward before next

22   things happen and where they fit in that process.

23        And so, what I would hope is some of these

24   conversations can happen before the hearing on the 15th.

25   I'll hear everybody out on the 15th on the merits, but the

1   status conference can be useful in starting some discussions

2   now that otherwise might not take place until a little bit

3   closer to the 15th, if at all.  I know you all are very busy

4   people, there's a lot of things going on here.  But

5   certainly a discussion about process, procedure, and timing

6   is something that -- we're going to get there, right, so the

7   conversation on the 15th is so what do you propose, what do

8   you think should happen, and so, you all should share those

9   views with each other in a practical way ahead of time

10   because we're going to have those discussions anyway.

11          So that's what I would ask you all to do and that

12   would be my takeaway from the discussions is that I don't

13   expect you all to agree; this is not the kind of discussion

14   where that's going to happen necessarily.  But sharing your

15   views to narrow the scope of disputes, or at least the range

16   of disagreements, a bit is always useful and it, frankly,

17   comes much better from you than it does from me.  You have

18   better information and are closer to the problem, so that's

19   my takeaway.

20          I can't offer, Mr. Glueckstein, anything much more

21   than that today, but it does help to give me context in

22   which to read the papers, both your comments and Ms. VanLare

23   and Mr. Abelson and Mr. Rosen's comments in terms of

24   understanding where the parties are coming from, so it's

25   helpful for me to get that overview and reading everything

Page 70

1    that's on for the 15th.

2          So I'd leave it there unless anybody has something

3    else that they think can be productively discussed or

4    anything else where I can be of actual tangible assistance

5    for purposes of today.  All right.

6          So what I would say is if things develop in terms

7    of what you think the process looks like, just keep chambers

8    in the loop as you have done throughout the case, which is

9    much appreciated.  And, if not, I'll see you on the 15th.

10          MR. ZIPES:  Your Honor?

11          THE COURT:  Yeah.

12          MR. ZIPES:  It's Greg Zipes with the U.S.

13    Trustee's Office.  I was waiting until the end of the

14    proceeding by way of status to bring up one point here.  I

15    know this Court has already ruled on the redaction issues.

16    I'm not aware of any opinion yet, and I assume that's coming

17    soon, and I'm not in any way seeking to reargue any points.

18    But I will note that there were 30 objections filed by

19    individuals here and the Debtor did file a response and it

20    didn't really address concerns relating to disclosures of

21    these names.  These people --

22          THE COURT:  That's a very appropriate thing to

23    point out, Mr. Zipes.  I appreciate that.  I would ask that

24    folks think about that.

25          So right now, the status quo is the protections

1   that were granted, the U.S. Trustee's Office filed something

2   saying we think, Judge, you should change this.  And, again,

3   as is often the case with sealing, they're granted so to

4   prophylactically because you can't un-ring that bill, and we

5   will continue to act in accordance with that until we get

6   the opinion out and so, I'm glad you identified that.

7   Frankly, I did not think of that, and I don't know how I

8   didn't think of that in hindsight, but I'm glad somebody

9   did.

10          So I would ask the folks who were involved in the

11  sealing motions -- that is the Debtor and the committee, and

12  I think the ad hoc group as well -- to address those kinds

13  of issues.  Now there is a certain point where someone may

14  be entitled to certain protections in terms of

15  confidentiality and they agreed to sort of waive those

16  protections, I'm not going to consider these emails as sort

17  of a substantive waive where somebody is telling me that.

18          So I'd like to essentially deal with it so that we

19  preserve the status quo until I get the opinion out, which

20  is something we're working on in chambers, but thank you,

21  Mr. Zipes, for mentioning that.  I do appreciate the extra

22  set of eyes on that particular issue.

23          All right.  And if there's something that anybody

24  needs me to do or the clerk's office, more appropriately,

25  you can let me know however you think is the most efficient

1   way to do it.  That could take a number of forms: it could

2   take the form of a letter; it could take the form of a

3   proposed order to provide for the handling of certain

4   documents and redaction of certain information.  Just again,

5   continue to do what you've been doing, which is to talk to

6   each other about the issue.

7           If for some reason it's helpful to have a quick

8   chat about it, just let chambers know.  I'm happy to do that

9   if that's efficient because I realize that I'm in a better

10  position to let you know how the clerk's office works on

11  these things than you are.  But orders are always helpful

12  because they provide clarity to the clerk's office as to

13  exactly what should happen with what documents and things of

14  that sort, so just to put a little more of a fine point on

15  it, so thank you, Mr. Zipes.

16          And with that, anything else from any other party

17  here I'd say this morning, but it's now hopelessly this

18  afternoon.  Anything from any party?  All right.

19          Thank you very much for everybody's participation

20  today and assistance on teeing up all these issues.  I

21  believe the next time we get together is the 15th.  If

22  anything changes between now and then, I'll let chambers

23  now.  And otherwise, have yourself a good day.

24          (Whereupon these proceedings were concluded at

25  2:00 PM)

Page 73

1                               **I N D E X**

2

3                                  RULINGS

4                                              Page        Line

5    Declaration of Arianna Pretto-Sakmann      21         10-11

6    Accepted into Evidence

7    Lift Stay Motion Granted                   23         2

8    Exclusivity Motion Granted                 29         19

9    Extension of Time to Mediate Granted       53         14

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 74

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date: