CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' OBJECTION TO MOTION OF FTX TRADING LTD. AND ITS AFFILIATED DEBTORS FOR AN ORDER MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1) AND BANKRUPTCY RULE 4001**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

Genesis Global Holdco, LLC and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors," and the above-captioned cases, the "Chapter 11 Cases") hereby submit this objection to the *Motion of FTX Trading Ltd. and its Affiliated Debtors* ("Movants" and collectively with the Debtors, the "Parties") *for an Order Modifying the Automatic Stay Pursuant to 11. U.S.C. 362(d)(1) and Bankruptcy Rule 4001*, ECF No. 289 (the "Lift Stay Motion" or "Mot."), seeking to pursue actions against the Debtors in *In re FTX Trading Ltd., et al.*, Case No. 22-11068 (Bankr. D. Del. Nov. 11 2022) (the "FTX Delaware Proceedings").

**PRELIMINARY STATEMENT**

1.  Movants ask this Court to lift the automatic stay in these Chapter 11 Cases to allow another court (the "Delaware Bankruptcy Court") to rule on alleged claims that purportedly amount to more than 250% of the value of the Debtors' liquid assets.[2] The Lift Stay Motion seeks extraordinary relief that would allow Movants to litigate disputed proofs of claim filed in these Chapter 11 Cases in another forum, severely undermining the Debtors' ability to confirm a plan.

2.  Movants argue that lifting the automatic stay in these Chapter 11 Cases so as to pursue the FTX Claims in Movants' chapter 11 cases would "balance the parties' interests." Mot. ¶ 4. On the contrary, the relief sought would advance the Movants' interests *to the detriment of* the interests of the Debtors and their creditors. Allowing litigation concerning the FTX Claims to proceed in the Delaware Bankruptcy Court would deprive the Debtors of the ability to control when and how the FTX Claims are resolved. Given their asserted size, fixing the value of the FTX Claims is an integral step in the Debtors' restructuring process. As a result, the Debtors have moved to

---

[2] *Compare* Mot. ¶ 1 (stating that Movants will seek to claw back (i) loan repayments to Debtor Genesis Global Capital, LLC ("GGC") in the amount of approximately $1.8 billion, (ii) pledges of collateral to GGC amounting to approximately $273 million, and (iii) asset withdrawals from FTX.com by GGC amounting to $1.6 billion (collectively, the "FTX Claims")) *with* ECF No. 349 (Debtors' Cash and Coin Report as of 5/31/2023) (reporting approximately $1.4 billion in cash, digital assets, and shares held in brokerage accounts).

2

estimate the FTX Claims asserted in the FTX Proofs of Claims (as defined below) on a schedule consistent with their confirmation timeline. *See Motion to Establish Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the Debtors*, ECF No. 373 (the "Motion to Estimate").

3. Significantly, because the Movants filed the FTX Proofs of Claims in these Chapter 11 Cases, they have submitted themselves to the equitable power of this Court to disallow or estimate the FTX Claims for the purposes of allowance, which is a core function. Moreover, because such claims are presently unliquidated, the Court is required to undertake the estimation process requested by the Debtors;[3] by contrast, the relief sought by the present Motion is merely discretionary.

4. As a matter of law, Movants have not established sufficient cause to lift the automatic stay. Both the policies underlying the Bankruptcy Code and the *Sonnax* factors heavily weigh against lifting the stay, which exists for the sole purpose of protecting the Debtors and their creditors, and is expressly designed to frustrate attempts like these — namely, attempts by putative creditors to litigate their claims against debtor entities in a forum other than this Court. Indeed, the Motion fails to identify any decision in which a court in this Circuit has previously granted the relief requested in the Lift Stay Motion based on facts similar to those at issue here. For these reasons and those that follow, the Lift Stay Motion should be denied.

## FACTUAL BACKGROUND

5. Holdco and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc., the Debtors' ultimate parent company.

---

[3] *See In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007).

6. On February 6, 2019, GGC, as lender, and Alameda Research LLC, as borrower, entered into a master loan agreement (the "February 2019 MLA"), which set forth the terms and conditions for GGC's and Alameda Research Ltd.'s ("Alameda") lending and borrowing relationship. On May 9, 2019, GGC and Alameda Research LLC entered into another master loan agreement specifying the terms of the lending and borrowing relationship, but where Genesis was defined as the borrower and Alameda Research LLC was defined as the lender (the "May 2019 MLA"). On December 22, 2020, Alameda Research LLC, Alameda, and GGC entered into an Assignment and Assumption of Master Digital Currency Loan Agreement (the "First A&A Agreement"). Under the First A&A Agreement, Alameda Research LLC assigned its rights and obligations under the February 2019 MLA to Alameda. On December 22, 2020, GGC as lender, and Alameda, as borrower, entered into an amended and restated version of the February 2019 MLA (the "A&R MLA"). The A&R MLA defined general loan terms, collateral requirements, and loan repayment procedures pursuant to which GGC and Alameda engaged in a large number of complex transactions involving fiat currency and digital assets between February 6, 2019 and November 11, 2022. On June 23, 2022, Alameda Research LLC, Alameda, and GGC entered an Assignment and Assumption of Master Loan Agreement (the "Second A&A Agreement" and together with the First A&A Agreement, the "A&A Agreements"). Under the Second A&A Agreement, Alameda Research LLC assigned its rights and obligations under the May 2019 MLA to Alameda.

7. Under the A&R MLA, when GGC loaned funds or digital currency to Alameda, Alameda was required to maintain a certain level of collateral with GGC (also generally in the form of fiat currency or digital assets) and to pay a financing fee (as specified in the relevant loan term sheet) which would accrue on a daily basis and become payable in-kind on a monthly basis

4

(upon the delivery of a monthly invoice) until the loan was repaid. The collateral provided pursuant to the A&R MLA and relevant term sheets served as security for the payment of Alameda's obligations under the A&R MLA. In the event that the value of the total amount of collateral maintained with GGC fell below a specified percentage of the total value of the Loaned Assets outstanding under the A&R MLA, Alameda was required, at GGC's request, to provide additional collateral to GGC.

8. When Alameda repaid a loan to GGC, GGC was required to return certain collateral that had been provided by Alameda in connection with that loan. Because GGC could also borrow funds from Alameda pursuant to the May 2019 MLA, the same process also occurred in reverse. Between February 2019 and November 2022, GGC provided cryptocurrency loans to Alameda, and Alameda provided cryptocurrency loans to GGC; in connection with those loans, assets held as collateral also transferred between GGC and Alameda.

9. On January 19, 2023, the Debtors filed voluntary petitions for relief and initiated the Chapter 11 Cases. On April 4, 2023, this Court entered an order establishing May 22, 2023 at 4:00 p.m., Eastern Time, as the bar date for filing proofs of claim, ECF No. 200. On May 3, 2023, the Movants filed the Lift Stay Motion. On May 22, 2023, FTX Trading Ltd. filed Claim No. 415 against Holdco, Claim No. 419 against Genesis Asia Pacific, Ltd., and Claim No. 426 against GGC; Alameda Research LLC brought Claim No. 422 against Holdco, Claim No. 420 against GAP, and Claim No. 513 against GGC; and Alameda Research Ltd. filed Claim No. 508 against Holdco, Claim No. 457 against GAP, and Claim No. 512 against GGC (collectively, the "FTX Proofs of Claims").[4] Each FTX Proof of Claim asserts the same facts and is for a total amount of $3,876,473,714.

---

[4] Claims Nos. 415, 419, 420, 422, 426, 457, 508, 512, and 513 correspond to the FTX Claims.

5

10. On June 7, 2023, the Debtors filed and served a notice of the disclosure statement and confirmation hearings scheduled for July 12, 2023 and August 24, 2023, respectively. *See Notice of Hearing on (I) the Adequacy of Information in the Debtors' Disclosure Statement and (II) Confirmation of the Debtors' Chapter 11 Plan*, ECF No. 401.

## ARGUMENT

10. A party seeking to lift the automatic stay under 11 U.S.C. § 362(d) bears the burden of showing cause that the stay should be lifted. *In re Residential Cap., LLC*, No. 12-12020 (MG), 2012 WL 3555584, at *2 (Bankr. S.D.N.Y. Aug. 16, 2012) ("The moving party bears the initial burden to demonstrate that cause exists to lift the stay.") (internal quotations omitted); *In re Pioneer Com. Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990) ("The issue of cause for relief from the stay is peculiarly within the responsibility of the creditor to present a *prima facie* case of cause for relief."). In determining whether a movant has shown cause to lift the automatic stay, courts in this District look to the policies reflected in the bankruptcy code, *In re Residential Cap., LLC,* 2012 WL 3555584, at *5, as well as the twelve factors set out by the Second Circuit in *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990) (the "Sonnax Factors").[5] Where the movant is an unsecured creditor, courts do not lift the automatic stay absent "extraordinary circumstances." *In re Pioneer*

---

[5] The *Sonnax* Factors are:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

6

*Com. Funding Corp.*, 114 B.R. at 48; *see also In re Residential Cap.*, 2012 WL 3860586, at *5 ("[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief"). Movants have not met this very high burden. As demonstrated below, a majority of the *Sonnax* Factors and the policies underlying the Bankruptcy Code weigh against lifting the stay, and Movants have not established (and do not even assert) the type of extraordinary circumstances that would warrant lifting the stay here.

      **A.**      **The *Sonnax* Factors Weigh Against Lifting the Automatic Stay**

11.      The relief requested by Movants should be denied because, of twelve *Sonnax* Factors, nine clearly favor maintaining the stay; two are neutral;[6] and the other is irrelevant. *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2022 WL 16952443, at *13 (Bankr. S.D.N.Y. Nov. 14, 2022) (noting that "[a]ll twelve [*Sonnax*] factors may not be relevant in every case, . . . nor is each factor assigned equal weight in every case" and denying relief from stay where a majority of relevant factors weighed against the moving party).

      *i.*      <u>The Relief Requested by the Movants Would not Result in a Complete Resolution of the Issues (*Sonnax* Factor 1)</u>

12.      The first *Sonnax* factor favors maintaining the stay because granting the relief requested in the Motion would result in protracted adversarial proceedings in Delaware. Courts in this Circuit routinely hold that the first *Sonnax* factor weighs in favor of maintaining the stay when lifting it would not result in swift resolution of the underlying dispute. *See, e.g., In re Motors Liquidation Co.*, No. 09-50026 REG 10 Civ. 36 RJH, 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8,

---

[6] The fourth *Sonnax* factor, which inquires whether a specialized tribunal has been established to adjudicate the cause of action, is neutral here because both this Court and the Delaware Bankruptcy Court have the requisite expertise to adjudicate claims arising under the Bankruptcy Code. *See In Re Motors Liquidation*, No. 09-50026-MG, ECF No. 4416, Tr. at 43: 9-14 (holding the fourth *Sonnax* factor neutral because "the Middle District of Florida has no particular expertise . . . that I don't have."). The eighth Sonnax factor, which inquires whether the judgment claim arising from the other action is subject to equitable subordination is also neutral at this time.

2010) (holding that the first *Sonnax* factor weighed against lifting the stay where debtor would be exposed to "protracted litigation rather than a [resolution of the]… suit"); *In re Residential Cap., LLC*, 2012 WL 3555584, at *3 (finding that the first *Sonnax* factor favored maintaining the stay because "[w]hile relief may eventually result in partial or complete resolution of the issue at hand, the resolution may not be immediate."). Moreover, Movants admit that they will need to return to this Court to enforce any judgment against the Debtors stemming from litigation in the FTX Delaware Proceedings. *See* Mot. ¶ 4. And even a determination as to the assertable amount of the FTX Claims in Delaware will not address issues relating to allowability and priority of the FTX Claims against the Debtors in these Chapter 11 Cases, leading to an inefficient and bifurcated process for liquidating the FTX Claims.

> ii. The FTX Claims are Connected to the Debtors' Chapter 11 Cases, and Lifting the Stay Will Interfere with the Debtors' Reorganization (*Sonnax* Factor 2)

13. As an initial matter, Movants' suggestion that the second *Sonnax* factor favors granting the Lift Stay Motion because doing so "will not prejudice the Genesis Debtors" misstates the applicable legal inquiry[7] and in any event, is false. Mot. ¶ 29.

14. The focus of this *Sonnax* factor is the interference that lifting the stay would have on the Chapter 11 Cases, not the Movants' Chapter 11 proceedings. There is no question that lifting the stay would harm the Debtors' ability to reorganize by allowing Movants, rather than Debtors, to control how and when the issues of fact and law underlying those claims are resolved. By filing the Motion to Estimate, the Debtors are seeking to estimate, for all purposes, the FTX Claims on a

---

[7] The second *Sonnax* factor focuses on whether lifting the stay to permit litigation to proceed in another forum would interfere with a debtor's reorganization process, and whether that litigation is "intertwined" with the debtor's reorganization, *i.e.* whether both proceedings involve common issues of fact and law. *In re Celsius Network LLC*, 642 B.R. 497, 502-03 (Bankr. S.D.N.Y. 2022); *see also In re Residential Cap., LLC*, 2012 WL 3555584, at *3; *In re N.Y. Classic Motors, LLC*, No. 21-10670 (MG), 2021 WL 2285440, at *5 (Bankr. S.D.N.Y. June 4, 2021).

8

timeline that would enable a Chapter 11 plan to be confirmed by the end of the summer. Granting the Lift Stay Motion could divest this Court of the ability to control and manage the timeline for addressing the FTX Proofs of Claims and would subject the Court and the estates to protracted adversarial proceedings in Delaware, leaving the Debtors and their creditors stuck in limbo at the Movants' discretion. In any event, the law is clear that even slight interference with the bankruptcy process is sufficient to deny lift stay motions. *See BDA Design Grp., Inc.* v. *Off. Unsecured Creditors' Comm.*, No. 3:13-cv-0568, 2013 WL 12100467, at *5 (N.D. Tex. Sept. 2, 2013) ("[E]ven slight interference with the administration may be enough to preclude relief."), *aff'd*, 576 F. App'x 369 (5th Cir. 2014); *In re Curtis*, 40 B.R. 795, 806 (D. Utah 1984) ("The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit"); *see also In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836–37 (Bankr. S.D.N.Y. 1980) (denying stay relief where plaintiff sought only to proceed with limited discovery of customer lists; finding such requests "cannot be shrugged off as *de minimis*" because "[i]nterference by creditors in the administration of the estate, no matter how small . . . is prohibited").

15. Moreover, "it is undeniable that [the FTX Claims are] connected to, and would interfere with, the [Chapter 11 Cases] because [they are] inextricably intertwined" with the Chapter 11 Cases in three ways. *Sonnax*, 907 F.2d at 1286–87 (internal quotations omitted). *First*, the majority of the Debtors' creditors, like Movants, were counterparties to the Debtors in transactions involving digital assets exchanged pursuant to agreements that are substantially similar to the A&R MLA and the A&A Agreements. The FTX Claims, like those of other unsecured creditors in the Chapter 11 Cases, derive from such transactions, and will require this Court to make findings

9

regarding the interpretation and enforceability of such agreements. *Second*, resolution of the FTX Claims will require this Court to determine the legal classification and value of the digital assets exchanged between the Debtors and their creditors. Those findings are central to the resolution of the Chapter 11 Cases because they will necessarily impact the treatment of similar claims brought by other unsecured creditors as well as avoidance claims that the Debtors may assert.[8] *Third*, liquidation of the FTX Claims will have a significant impact on the recoveries available for the Debtors' creditors. As a result, the second *Sonnax* factor weighs heavily in favor of denying the Lift Stay Motion. *See, e.g., In re N.Y. Classic Motors, LLC*, 2021 WL 2285440, at *5 (weighing the second *Sonnax* factor against lifting the stay "given that the Concession Agreement, the remaining term and the amounts due by the Debtor thereunder are issues central to the chapter 11 case"); *In re Celsius Network LLC*, 642 B.R. 497 at 502-03 (holding that the second *Sonnax* factor weighed against lifting the stay where movant's claims, like those of other creditors, related to transactions involving digital assets, and were therefore "inextricably intertwined" with the Chapter 11 cases).

          iii.     The FTX Delaware Proceedings Do Not Involve the Debtor as a Fiduciary (*Sonnax* Factor 3)

16.    None of the Debtors are fiduciaries of the Movants. As a result, the third *Sonnax* factor weighs against lifting the stay. *See In re Residential Cap., LLC*, 2012 WL 3555584, at *3 ("The Motion did not include any evidentiary showing that [the debtor] was acting as a fiduciary. Therefore, the third *Sonnax* Factor weighs against lifting the stay."); *accord In re Ditech Holding Corp.*, 2022 WL 16952443, at *14 ("Because no fiduciary relationship exists here, the third *Sonnax* Factor weighs against lifting the stay").

---

[8]    The impact of maintaining the stay on the FTX Delaware Proceedings, *see* Mot. ¶ 26, is not relevant to the analysis under the second *Sonnax* factor, which examines the relationship between the FTX Claims and the Chapter 11 Cases, not the Movants' own reorganization process.

10

        *iv.*      No Insurer Has Assumed Responsibility for Defending the Debtors Against the FTX Claims (*Sonnax* Factor 5)

17. The fifth *Sonnax* factor weighs against granting the Lift Stay Motion because no insurer has assumed responsibility for defending the Debtors against the FTX Claims, or otherwise agreed to cover the costs associated with a litigation in the FTX Delaware Proceedings. As such, requiring the Debtors to defend the FTX Claims in Delaware (which, as noted, would require the Debtors and other parties in interest to hire local counsel and incur travel costs), in addition to litigating similar issues in this Court, including the Motion to Estimate, would result in an unnecessary diminution in the value of the Debtors' estates. *See, e.g., In re Ditech Holding Corp.*, 2022 WL 16952443, at *15 (explaining that the fifth *Sonnax* factor is "binary" and that where debtors would be "forced to directly incur the costs of all legal fees and expenses to defend their interests" in an ancillary proceeding, the factor weighs against lifting the stay); *In re Residential Cap., LLC*, 2012 WL 3555584, at *4 ("No insurer has assumed responsibility for the action here, and the Debtors would therefore need to pay all expenses in litigating the action with out-of-pocket funds from the bankruptcy estate. As a result, the fifth *Sonnax* Factor does not support relief from the stay.").

        *v.*      The FTX Claims Primarily Involve the Debtors, not Third Parties (*Sonnax* Factor 6)

18. None of the FTX Claims as described in the Lift Stay Motion, *see* Mot. ¶ 1, concern parties other than the Movants and the Debtors. No other parties besides the Debtors and the Movants would be involved in any litigation in the FTX Delaware Proceedings. The sixth *Sonnax* factor therefore weighs against lifting the stay. *See, e.g., In re Ditech Holding Corp.*, 2022 WL 16952443, at *16 ("A bankruptcy court should not grant relief from the stay under the sixth Sonnax Factor if the debtor is the main party to the litigation'"); *In re Residential Cap., LLC*, 2012 WL 3555584, at *4 (same).

11

       *vi.*    Litigating FTX's Claims in the FTX Delaware Proceedings Would Prejudice the Interests of Creditors (*Sonnax* Factor 7)

19. Movants contend that the seventh *Sonnax* Factor weighs in favor of lifting the stay because the stay "significantly prejudices the *FTX Debtors and their creditors* . . . by preventing the filing and adjudication of the Avoidance Actions against the Genesis Debtors in [the FTX Delaware Proceedings]." Mot. ¶¶ 26-28 (emphasis supplied). Movants misunderstand the focus of the inquiry under the seventh *Sonnax* factor. How the stay affects FTX's creditors is not relevant under *Sonnax*, which examines how the Debtors' creditors—not the Movants or the Movants' creditors—would be affected by granting relief from the automatic stay. Contrary to Movant's representations, the seventh *Sonnax* factor favors maintaining the stay because litigating the FTX Claims in Delaware would prejudice the Debtors' creditors in three principal ways. *First*, lifting the stay threatens the confirmation timeline for the reasons discussed above. *See supra* Section A.(ii). *Second*, allowing litigation concerning the FTX Claims to proceed in Delaware would privilege the Movants at the expense of similarly situated creditors, because only Movants stand "to benefit from a successful motion, while the automatic stay would continue to prohibit other constituents from pursuing their claims outside this Court." *In re Celsius Network LLC*, 642 B.R. at 503. *Third*, forcing the Debtors litigate the FTX Claims in Delaware would unnecessarily diminish the Debtors' estates, by imposing additional costs associated with litigating in another forum, including but not limited to hiring local counsel. Movants, who have already filed claims in these proceedings and are represented by New York counsel, face no such burden. *See In re Residential Cap., LLC*, 2012 WL 3249641, at *6 (holding that litigation of claims in other forums prejudices debtors' creditors because "such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization."); *In re Motors Liquidation Co.*, No. 09-50026-MG, ECF No. 4416, Tr. at 41:24-42:4 ("If the [debtors'] estate has to go through the burden of litigation elsewhere and the estate is

paying full administrative expense . . . to defend a claim that may be satisfied in the range of ten cents on the dollar, that is something harmful to the estate and to the remainder of the creditor community.").

> *vii.* The Interests of Judicial Economy and Economical Resolution of the Actions Are Best Served by Enforcing the Automatic Stay (*Sonnax* Factor 10)

20. Movants' primary argument in support of lifting the stay is that "litigation of the [FTX Claims] in the [FTX Delaware Proceedings] serves the interests of judicial economy and the expeditious and economical resolution of the disputes." Mot. ¶ 19. However, estimating the FTX Claims here would be more economical for the Debtors, their creditors, and the Movants.

21. As a preliminary matter, each of the grounds that the Movants allege warrant litigating the FTX Claims in Delaware also supports estimating those claims in these Chapter 11 Cases, and therefore, do not warrant relief from the stay. For example:

- Movants assert that "core legal and factual issues likely to be raised in connection with [the FTX Claims] will be at issue in other avoidance action litigation brought by the FTX Debtors and integral to the FTX Debtors' plan of reorganization process." Mot. ¶ 19. Those same "core legal and factual issues", *id.*, including "issues concerning the valuation of collateral" and "payment practices on retail international cryptocurrency exchanges," Mot. ¶ 21, would need to be resolved with respect to claims brought by other creditors against the Debtors in these Chapter 11 Cases. Moreover, given the size of the amounts asserted in the FTX Proofs of Claims relative to the Debtors' estates, resolving those issues is likely more important to the Debtors' reorganization than to the Movants'.

- Movants allege that this Court should lift the stay to allow the Delaware Bankruptcy Court to adjudicate the FTX Claims "to avoid potentially inconsistent rulings from multiple courts on common issues relating to core matters" impacting "the relationship between the [Movants] and the [Debtors]." Mot. ¶ 20. That argument makes no sense. Regardless of whether the Delaware Bankruptcy Court or this Court adjudicates the FTX Claims, both courts will deliver rulings that impact how the FTX Claims are resolved. The risk of inconsistent rulings is not diminished by resolving the FTX Claims in one forum or the other.[9]

---

[9] Movants' reliance on *In re Project Orange Assocs.*, 432 B.R. 89, 108-09 (Bankr. S.D.N.Y. 2010) is misplaced. That case did not involve a dispute over which bankruptcy court should hear the issue. The bankruptcy

13

- Finally, Movants contend that "many of the legal issues to be adjudicated are questions of Third Circuit law given the [location of the Movants'] cases in the District of Delaware." Mot. ¶ 25. But the transfers at issue in the FTX Claims occurred between Alameda, an entity located in the British Virgin Islands and GGC, a limited liability company based in New York. Moreover, these Chapter 11 Cases are located in the Second Circuit and this Court "is expert in the law of the [Second] Circuit. *Id*. Should this Court deny the Lift Stay Motion, under the same logic advanced by the Movants, Second Circuit law would apply to the FTX Claims, and this Court – not the Delaware Bankruptcy Court – would be better situated to adjudicate them.[10]

22. Significantly, the Lift Stay Motion completely ignores that this Court already has jurisdiction over the Movants, by filing the FTX Proofs of Claims in this Court, the Movants "submitted [themselves] to the equitable power [of this] [B]ankruptcy Court to disallow [their] claim[s]." *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389 (2d Cir. 1990); *see also In re CBI Holding Co.*, Inc., 529 F.3d 432, 466 (2d Cir. 2008) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989)) ("Filing a proof of claim against a bankruptcy estate triggers the process of 'allowance and disallowance of claims,' and, therefore, a creditor who files such a claim subjects itself to the bankruptcy court's equitable jurisdiction in proceedings affecting that claim."). The filing of claims "invokes the special rules of bankruptcy concerning objections to the claim [and] estimation of the claim for allowance purposes." *Id*. at 1389-90 (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir. 1987)). "Nothing is more directly at the core of bankruptcy administration . . . than the quantification of all liabilities of the debtor [making] the bankruptcy

---

court lifted the stay so that the action could be brought in state court. The legislative history of section 362 reveals that Congress intended that "one of the factors to consider when determining whether to modify the stay is whether doing so would permit pending litigation involving the debtor to continue in a nonbankruptcy forum," as "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." (quoting H.R. Rep. No. 95-595, at 341). Those considerations do not apply here.

[10] Movants also assert that litigating the FTX Claims in the Delaware Bankruptcy Court would promote judicial economy because the FTX Debtors "will be asserting" claims against an affiliate of the Debtors, GGC International, Mot. ¶¶ 6, 19, and that hypothesized litigation may involve common issues of law and fact to the FTX Claims. In fact, Movants have asserted no claims against GGCI, and regardless, the initiation of litigation involving GGCI in the Delaware Bankruptcy Proceedings would not warrant lifting the stay.

14

court's determination whether to allow or disallow a claim . . . a core function." *In re S.G. Phillips Constructors., Inc.*, 45 F.3d 702, 705 (2d Cir. 1995). Moreover, this Court will begin deciding issues of law and fact relevant to the FTX Claims when it hears arguments on the Motion to Estimate on June 15, 2023. Judicial economy would be best served if this Court – not the Delaware Bankruptcy Court – were to resolve the FTX Claims.

### viii. The FTX Claims are not Ready for Trial (*Sonnax* Factor 11)

23. The eleventh *Sonnax* factor weighs in favor of maintaining the stay because the Movants do not allege that the FTX Claims are "ready for trial" in Delaware—nor can they. As noted, the Movants have offered no timeline for resolving or litigating the FTX Claims in Delaware, and the FTX Delaware Proceedings are much less advanced than the Chapter 11 cases.[11] Courts in this district weigh the eleventh *Sonnax* factor against the party seeking to lift the stay even where the other action is significantly further along than the Delaware Proceedings. *See, e.g.*, *In re Residential Cap., LLC*, No. 12-12020 MG, 2012 WL 3555584, at *3 (Bankr. S.D.N.Y. Aug. 16, 2012) (holding that the eleventh *Sonnax* factor weighed against lifting the stay where "[t]he [litigation for which stay relief was sought] is in its early stages. Discovery, trial preparation and, absent a settlement, trial all remain to be done."); *In re Motors Liquidation Co.*, 2010 WL 4630327, at *4 (finding that the eleventh *Sonnax* factor favored maintaining the stay where "the dispositive motions filed in the ERISA suit were pending for over a year before the automatic stay came into effect, hardly an indication that the case was ready for trial").

---

[11] The FTX Bar Date for non-customer claims is not scheduled until June 30, 2023, and the Movants have not set a bar date for customer claims. By comparison, the Debtors' bar date passed on May 22, 2023 and the Debtors are prepared to estimate the FTX Claims before August 24, 2023 when this Court will consider confirmation of the Debtors chapter 11 plan.

15

        *ix.*      The Balance of Harms Weighs Against Lifting the Automatic Stay (*Sonnax* Factor 12)

24. The final *Sonnax* Factor, the balance of the harms, heavily favors maintaining the stay. As discussed, *see supra* Section A.(ii), lifting the stay will undermine the Debtors' restructuring process. The harm of lifting the stay to the Debtors and their creditors is therefore substantial. *See In re Motors Liquidation Co.*, 2010 WL 4630327, at *4 (affirming decision denying motion to lift stay where lifting the stay "would force [debtor] to expend estate resources" and thereby harm the debtor and its creditors); *In re Residential Cap., LLC*, 2012 WL 3555584, at *5 (same). Movants assert that they will suffer prejudice unless the stay is lifted because their creditors have a substantial interest in litigating the FTX Claims in the FTX Delaware Proceedings, where they "have a fundamental right to be heard." Mot. ¶ 27. But as debtors in possession, Movants will be obligated to advance the interests of their creditors regardless of where the FTX Claims are litigated, and both Movants and their creditor groups will benefit from the efficient resolution of the FTX Proofs of Claims in these Chapter 11 Cases. Moreover, Movants will not be prejudiced because they have already submitted to jurisdiction of this Court to address the FTX Proofs of Claims.

    **B.**    **The Policies Underlying the Bankruptcy Code Weigh Against Lifting the Automatic Stay**

25. The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws," *Midlantic Nat'l Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986), because without it, "the debtor's assets might well be dismembered, and its business destroyed, before the debtor has an opportunity to put forward a plan for future operations." *In re Project Orange Assocs., LLC*, 432 B.R. 89, 101 (Bankr. S.D.N.Y. 2010) (internal citations omitted).

26. By allowing "the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently," *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted), the automatic stay advances two bedrock principles

16

underlying the Bankruptcy Code: it "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell" in which to reorganize. *In re Pioneer*, 114 B.R. at 48; *E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (noting that the automatic stay is designed to shield the debtor from creditor litigations in other forums when the debtor should focus on its restructuring efforts); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) (same).

27. An unsecured creditor is "not entitled to relief from the automatic stay unless it can establish extraordinary circumstances." *In re Tristar Auto. Grp., Inc.*, 141 B.R. 41, 44 (Bankr. S.D.N.Y. 1992); *see also In re Pioneer Com. Funding Corp.*, 114 B.R. at 44, 48 (similar); *In re Residential Cap.*, 2012 WL 3860586, at *5 (similar); *In re I. Burack, Inc.*, 132 B.R. 814, 817 (Bankr. S.D.N.Y. 1991) ("[A]n unsecured, unliquidated claimholder should not be permitted to [lift the automatic stay to] pursue litigation against the debtor in another court unless extraordinary circumstances are shown."); *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992) (similar).

28. The automatic stay was imposed at the commencement of these proceedings a mere five months ago in order to "assist the Debtors in effecting a prompt and orderly reorganization." ECF No. 13 at ¶ 19. Lifting the stay to resolve the FTX claims through a litigation that could "delay and interfere with the Chapter 11 cases," rather than doing so "through the centralized bankruptcy process" available *in this Court* would directly contravene the rationale behind the stay in this, or any, chapter 11 case. *See In re Celsius Network LLC*, 642 B.R. at 503.

29. Moreover, Movants – whose claims are unsecured – have failed to allege the type of "extraordinary circumstances" which would warrant lifting the stay or treating the FTX Claims differently than those of other creditors who are similarly situated in these Chapter 11 Cases. *See In re Residential Cap., LLC*, 501 B.R. 624, 643 (Bankr. S.D.N.Y. 2013). Neither Movants' clear preference to litigate in their home court, nor their unsupported gestures at "the interests of judicial

17

economy," Mot. ¶ 19; *see supra* Section A.(vii), meets the high bar of "extraordinary circumstances," and the Debtors are not aware of any decision in this Circuit that has granted similar relief based on facts like those at issue here.[12] Movants point to *Alameda Research v. Voyager Digital, LLC*, to suggest that lifting the stay in the Chapter 11 Cases is appropriate because "there is already a preference action" pending in the FTX Delaware Proceedings. Mot. ¶ 5 & n.5 (citing *Alameda Research Ltd., et al. v. Voyager Digital, LLC, et al. (In re FTX Trading Ltd.)*, Adv. Pro No. 23-50084 (JTD)). But Movants *never sought to lift the stay* in the Voyager bankruptcy proceedings because their preference claims against Voyager arose from funds transferred to Voyager "after the commencement of the Voyager Chapter 11 Cases." See Complaint at ¶ 4, *In re. Voyager Digital Holdings, Inc.* No. 22-10943 (MEW) (Bankr. S.D.N.Y. Jan. 24, 2023), ECF No. 1. Moreover, the parties only agreed to resolve a host of disputes – including Movants' preference claims – in the FTX Delaware Proceedings after Movants agreed to fully support Voyager's plan of reorganization in advance of the confirmation hearing to avoid costly litigation.[13]

30. The cases cited by Movants consistently underscore the extraordinary nature of the remedy provided in section 362(d). *See* Mot. ¶¶ 14-31.[14] Nothing resembling the facts at issue in

---

[12] Movants' claim that *Shared Techs. Cellular, Inc.* presented "substantially similar facts as here" is also false. Mot ¶ 17. In that case, the movants sought to lift the stay in order to "obtain a judgment against [the debtors]" which would be used to establish "a defense to the allowance and payment of a proof of claim" filed *by the debtors* nearly two years prior in the movants' own bankruptcy proceedings. *In re Shared Techs. Cellular, Inc.*, 281 B.R. 804, 806 (Bankr. D. Conn. 2002), *aff'd*, 293 B.R. 89 (D. Conn. 2003). In other words, the movants in that case only sought relief from the automatic stay to defend against claims which the debtors had already filed in the movants' bankruptcy proceedings. By contrast, the Debtors to date have filed no claims in the FTX Delaware Proceedings to which the Movants would need to assert a defense. Moreover, the decision in *Shared Techs.* hinged on section 502(d) of the Bankruptcy Code, and the transferee consented to lift the stay only if the order was conditioned on the transferor's not seeking relief under that provision.

[13] As part of a stipulation, the parties agreed that Movants' preference claims would be adjudicated in the FTX Delaware Proceedings and that such claim would be allowed by a stipulation in Voyager's case. The stipulation further provided, among other things, that, (i) if the preference claims were deemed valid, the administrative or general unsecured status of the claims would be decided by the court overseeing the Voyager bankruptcy proceedings and (ii) Voyager and Voyager's creditors' committee could elect to initiate proceedings in the Voyager bankruptcy proceedings to classify or equitably subordinate the Movants' preference claims while they were being litigated in Delaware. *See* Debtor's Motion Approving Stipulation, *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Jan. 24, 2023), ECF No. 769.

[14] *Citing In re Xenon Anesthesia of Texas, PLLC,* 510 B.R. 106, 112 (S.D. Tex. 2014) (lifting stay against

those cases is present here. As discussed, *see supra* Section A.(vii), the FTX Claims raise issues of law and fact that are common to other unsecured claims currently pending in this forum. Movants do not explain why the FTX Claims should be treated differently than those of the Debtors' other unsecured creditors, much less assert the type of extraordinary circumstances which courts typically rely on to lift the automatic stay. For these reasons alone, the Lift Stay Motion should be denied.

## CONCLUSION

31. For the foregoing reasons, the Debtors respectfully request that the Court deny the Lift Stay Motion and maintain the stay.

Dated: June 8, 2023
      New York, New York

*/s/ Jane VanLare*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 1006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and Debtors-in-Possession*

---

debtors "in connection with [creditor's] motion for criminal contempt" pending in different proceeding); *In re Shared Techs. Cellular, Inc.*, 281 B.R. 804, 806 (Bankr. D. Conn. 2002) (lifting stay where debtors had brought claims against creditor in separate bankruptcy proceedings, and creditors sought to lift the stay to assert defenses against those claims), *aff'd*, 293 B.R. 89 (D. Conn. 2003); *In re Burger Boys, Inc.*, 183 B.R. 682, 686 (S.D.N.Y. 1994) (lifting stay to allow conclusion of *in rem* proceedings in which debtor had brought pre-petition claims for damages against creditors and where debtor filed Chapter 11 petition "on the eve of trial"); *In re Rochester Drug Coop., Inc.*, 620 B.R. 699, 705 (Bankr. W.D.N.Y. 2020) (lifting stay to allow creditor to assert counterclaims against claims brought by debtor in different bankruptcy proceedings); *In re Lyondell Chem. Co.*, 402 B.R. 596, 609–10 (Bankr. S.D.N.Y. 2009) (denying stay relief, except to allow creditor to prosecute an appeal, initiated pre-petition, in state court); *In re New York Med. Grp., P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) (granting relief where none of the *Sonnax* factors weighed in favor of maintaining the stay). In *In re Voyager Digital Holdings, Inc.*, the Court *did not grant the relief from stay* because there was no valid claim to pursue. Moreover, contrary to Movants' representations, *see* Mot. ¶ 24, Judge Wiles indicated that it would not be inappropriate for him to consider defenses to the movants' preference claims. *See* Tr. at 104:10-104:16, *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Jan. 24, 2023), ECF No. 921.