**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No. 23-10063 (SHL) |
| Debtors. | Jointly Administered |

## AFFIDAVIT OF SERVICE

I, Nataly Diaz, depose and say that I am employed by Kroll Restructuring Administration LLC ("***Kroll***"), the claims and noticing agent for the Debtors in the above-captioned chapter 11 cases.

On May 25, 2023, at my direction and under my supervision, employees of Kroll caused the following documents to be served via email on the Notice Party Service List attached hereto as **Exhibit A**:

- Notice of Recognition Applications in the General Division of the High Court of the Republic of Singapore, a copy of which has been attached hereto as **Exhibit B**

- Affidavit of Ahmed Derar Islim, a copy of which has been attached hereto as **Exhibit C**

- Originating Application (Without Notice), a copy of which has been attached hereto as **Exhibit D**

- Originating Application (Without Notice) (Amendment No. 1, By Order of Court made on 19 May 2023), a copy of which has been attached hereto as **Exhibit E**

- Registrar's Notice – Hearing Date Fixed, a copy of which has been attached hereto as **Exhibit F**

- Originating Application (Without Notice), a copy of which has been attached hereto as **Exhibit G**

- Originating Application (Without Notice) (Amendment No. 1, By Order of Court made on 19 May 2023), a copy of which has been attached hereto as **Exhibit H**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

- Registrar's Notice – Hearing Date Fixed, a copy of which has been attached hereto as **Exhibit I**

- Originating Application (Without Notice), a copy of which has been attached hereto as **Exhibit J**

- Originating Application (without Notice) (Amendment No. 1, By Order of Court made on 19 May 2023), a copy of which has been attached hereto as **Exhibit K**

- Registrar's Notice – Hearing Date Fixed, a copy of which has been attached hereto as **Exhibit L**

Dated: June 6, 2023

*/s/ Nataly Diaz*
Nataly Diaz

State of New York
County of New York

Subscribed and sworn (or affirmed) to me on June 6, 2023, by Nataly Diaz, proved to me on the bases of satisfactory evidence to be the person who executed this affidavit.

*/s/ HERBERT BAER*
Notary Public, State of New York
No BA6205563
Qualified in Westchester County
Commission Expires May 11, 2025

SRF 70025

**<u>Exhibit A</u>**

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12245185 | NAME ON FILE | EMAIL ON FILE |
| 12171209 | NAME ON FILE | EMAIL ON FILE |
| 12047489 | NAME ON FILE | EMAIL ON FILE |
| 12047489 | NAME ON FILE | EMAIL ON FILE |
| 12047490 | NAME ON FILE | EMAIL ON FILE |
| 12868362 | NAME ON FILE | EMAIL ON FILE |
| 12047430 | NAME ON FILE | EMAIL ON FILE |
| 12047491 | NAME ON FILE | EMAIL ON FILE |
| 12047492 | NAME ON FILE | EMAIL ON FILE |
| 12047493 | NAME ON FILE | EMAIL ON FILE |
| 12047494 | NAME ON FILE | EMAIL ON FILE |
| 12047494 | NAME ON FILE | EMAIL ON FILE |
| 12047494 | NAME ON FILE | EMAIL ON FILE |
| 12047494 | NAME ON FILE | EMAIL ON FILE |
| 12047495 | NAME ON FILE | EMAIL ON FILE |
| 12047495 | NAME ON FILE | EMAIL ON FILE |
| 12047496 | NAME ON FILE | EMAIL ON FILE |
| 12047496 | NAME ON FILE | EMAIL ON FILE |
| 12047503 | NAME ON FILE | EMAIL ON FILE |
| 12047036 | NAME ON FILE | EMAIL ON FILE |
| 12873503 | NAME ON FILE | EMAIL ON FILE |
| 12875492 | NAME ON FILE | EMAIL ON FILE |
| 12647650 | NAME ON FILE | EMAIL ON FILE |
| 12242134 | NAME ON FILE | EMAIL ON FILE |
| 12242134 | NAME ON FILE | EMAIL ON FILE |
| 12047517 | NAME ON FILE | EMAIL ON FILE |
| 12047518 | NAME ON FILE | EMAIL ON FILE |
| 12649421 | NAME ON FILE | EMAIL ON FILE |
| 12046227 | AIA | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046226 | AIA | EMAIL ON FILE |
| 12047521 | NAME ON FILE | EMAIL ON FILE |
| 12047521 | NAME ON FILE | EMAIL ON FILE |
| 12047522 | NAME ON FILE | EMAIL ON FILE |
| 12047522 | NAME ON FILE | EMAIL ON FILE |
| 12047522 | NAME ON FILE | EMAIL ON FILE |
| 12047522 | NAME ON FILE | EMAIL ON FILE |
| 12047524 | NAME ON FILE | EMAIL ON FILE |
| 12047525 | NAME ON FILE | EMAIL ON FILE |
| 12875849 | NAME ON FILE | EMAIL ON FILE |
| 12047527 | NAME ON FILE | EMAIL ON FILE |
| 12046710 | NAME ON FILE | EMAIL ON FILE |
| 12047033 | NAME ON FILE | EMAIL ON FILE |
| 12171228 | NAME ON FILE | EMAIL ON FILE |
| 12171228 | NAME ON FILE | EMAIL ON FILE |
| 12872497 | NAME ON FILE | EMAIL ON FILE |
| 12047542 | NAME ON FILE | EMAIL ON FILE |
| 12047543 | NAME ON FILE | EMAIL ON FILE |
| 12242135 | NAME ON FILE | EMAIL ON FILE |
| 12242135 | NAME ON FILE | EMAIL ON FILE |
| 12047547 | NAME ON FILE | EMAIL ON FILE |
| 12104320 | NAME ON FILE | EMAIL ON FILE |
| 12047549 | NAME ON FILE | EMAIL ON FILE |
| 12046815 | NAME ON FILE | EMAIL ON FILE |
| 12242136 | NAME ON FILE | EMAIL ON FILE |
| 12242136 | NAME ON FILE | EMAIL ON FILE |
| 12871811 | NAME ON FILE | EMAIL ON FILE |
| 12047550 | NAME ON FILE | EMAIL ON FILE |
| 12047551 | NAME ON FILE | EMAIL ON FILE |

Exhibit A
Notice Party Service List
Served via Email

| ADDRESS ID | NAME | EMAIL |
| --- | --- | --- |
| 12047552 | NAME ON FILE | EMAIL ON FILE |
| 12047553 | NAME ON FILE | EMAIL ON FILE |
| 12047554 | NAME ON FILE | EMAIL ON FILE |
| 12047555 | NAME ON FILE | EMAIL ON FILE |
| 12047555 | NAME ON FILE | EMAIL ON FILE |
| 12047556 | NAME ON FILE | EMAIL ON FILE |
| 12047556 | NAME ON FILE | EMAIL ON FILE |
| 11841979 | NAME ON FILE | EMAIL ON FILE |
| 12047556 | NAME ON FILE | EMAIL ON FILE |
| 12047558 | NAME ON FILE | EMAIL ON FILE |
| 12242137 | NAME ON FILE | EMAIL ON FILE |
| 12242137 | NAME ON FILE | EMAIL ON FILE |
| 12171250 | NAME ON FILE | EMAIL ON FILE |
| 12046491 | NAME ON FILE | EMAIL ON FILE |
| 12047559 | NAME ON FILE | EMAIL ON FILE |
| 12047559 | NAME ON FILE | EMAIL ON FILE |
| 12047560 | NAME ON FILE | EMAIL ON FILE |
| 12047560 | NAME ON FILE | EMAIL ON FILE |
| 12046230 | NAME ON FILE | EMAIL ON FILE |
| 12046230 | NAME ON FILE | EMAIL ON FILE |
| 12046230 | NAME ON FILE | EMAIL ON FILE |
| 12046230 | NAME ON FILE | EMAIL ON FILE |
| 12047563 | NAME ON FILE | EMAIL ON FILE |
| 12047564 | NAME ON FILE | EMAIL ON FILE |
| 12047564 | NAME ON FILE | EMAIL ON FILE |
| 12047564 | NAME ON FILE | EMAIL ON FILE |
| 12047564 | NAME ON FILE | EMAIL ON FILE |
| 12047564 | NAME ON FILE | EMAIL ON FILE |
| 12047564 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047564 | NAME ON FILE | EMAIL ON FILE |
| 12822483 | NAME ON FILE | EMAIL ON FILE |
| 12242138 | NAME ON FILE | EMAIL ON FILE |
| 12242138 | NAME ON FILE | EMAIL ON FILE |
| 12835426 | NAME ON FILE | EMAIL ON FILE |
| 12875024 | NAME ON FILE | EMAIL ON FILE |
| 12764482 | NAME ON FILE | EMAIL ON FILE |
| 12171211 | NAME ON FILE | EMAIL ON FILE |
| 12046731 | NAME ON FILE | EMAIL ON FILE |
| 12046828 | NAME ON FILE | EMAIL ON FILE |
| 12047575 | NAME ON FILE | EMAIL ON FILE |
| 12047575 | NAME ON FILE | EMAIL ON FILE |
| 12047575 | NAME ON FILE | EMAIL ON FILE |
| 12047575 | NAME ON FILE | EMAIL ON FILE |
| 12047575 | NAME ON FILE | EMAIL ON FILE |
| 12047504 | NAME ON FILE | EMAIL ON FILE |
| 12046772 | NAME ON FILE | EMAIL ON FILE |
| 12047576 | NAME ON FILE | EMAIL ON FILE |
| 12047137 | NAME ON FILE | EMAIL ON FILE |
| 12047578 | NAME ON FILE | EMAIL ON FILE |
| 12762898 | NAME ON FILE | EMAIL ON FILE |
| 12047579 | NAME ON FILE | EMAIL ON FILE |
| 12047579 | NAME ON FILE | EMAIL ON FILE |
| 12047579 | NAME ON FILE | EMAIL ON FILE |
| 12047579 | NAME ON FILE | EMAIL ON FILE |
| 12047579 | NAME ON FILE | EMAIL ON FILE |
| 12047072 | NAME ON FILE | EMAIL ON FILE |
| 12046554 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*

Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047580 | NAME ON FILE | EMAIL ON FILE |
| 12047197 | NAME ON FILE | EMAIL ON FILE |
| 12047583 | NAME ON FILE | EMAIL ON FILE |
| 12047583 | NAME ON FILE | EMAIL ON FILE |
| 12871639 | NAME ON FILE | EMAIL ON FILE |
| 12047584 | NAME ON FILE | EMAIL ON FILE |
| 12875807 | ARK CRYPTOCURRENCY MASTER FUND LLC | EMAIL ON FILE |
| 12873437 | ARK CRYPTOCURRENCY MASTER FUND LLC | EMAIL ON FILE |
| 12873437 | ARK CRYPTOCURRENCY MASTER FUND LLC | EMAIL ON FILE |
| 12828327 | NAME ON FILE | EMAIL ON FILE |
| 12047586 | NAME ON FILE | EMAIL ON FILE |
| 12047587 | NAME ON FILE | EMAIL ON FILE |
| 12047588 | NAME ON FILE | EMAIL ON FILE |
| 12047589 | NAME ON FILE | EMAIL ON FILE |
| 12047568 | NAME ON FILE | EMAIL ON FILE |
| 12046911 | NAME ON FILE | EMAIL ON FILE |
| 12047591 | NAME ON FILE | EMAIL ON FILE |
| 12047593 | NAME ON FILE | EMAIL ON FILE |
| 12148643 | NAME ON FILE | EMAIL ON FILE |
| 12242139 | NAME ON FILE | EMAIL ON FILE |
| 12242139 | NAME ON FILE | EMAIL ON FILE |
| 12047596 | NAME ON FILE | EMAIL ON FILE |
| 12047596 | NAME ON FILE | EMAIL ON FILE |
| 12047598 | NAME ON FILE | EMAIL ON FILE |
| 12047598 | NAME ON FILE | EMAIL ON FILE |
| 12047598 | NAME ON FILE | EMAIL ON FILE |
| 12242140 | NAME ON FILE | EMAIL ON FILE |
| 12242140 | NAME ON FILE | EMAIL ON FILE |
| 12046829 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047487 | NAME ON FILE | EMAIL ON FILE |
| 12046233 | AXIS CAPITAL | EMAIL ON FILE |
| 12046234 | AXIS CAPITAL | EMAIL ON FILE |
| 12047602 | NAME ON FILE | EMAIL ON FILE |
| 12046995 | NAME ON FILE | EMAIL ON FILE |
| 12047604 | NAME ON FILE | EMAIL ON FILE |
| 12046779 | NAME ON FILE | EMAIL ON FILE |
| 12873585 | NAME ON FILE | EMAIL ON FILE |
| 12047153 | NAME ON FILE | EMAIL ON FILE |
| 12762845 | NAME ON FILE | EMAIL ON FILE |
| 12046933 | NAME ON FILE | EMAIL ON FILE |
| 12047606 | NAME ON FILE | EMAIL ON FILE |
| 12047608 | NAME ON FILE | EMAIL ON FILE |
| 12242141 | NAME ON FILE | EMAIL ON FILE |
| 12242141 | NAME ON FILE | EMAIL ON FILE |
| 12242142 | NAME ON FILE | EMAIL ON FILE |
| 12046807 | NAME ON FILE | EMAIL ON FILE |
| 12047535 | NAME ON FILE | EMAIL ON FILE |
| 12819048 | NAME ON FILE | EMAIL ON FILE |
| 12046879 | NAME ON FILE | EMAIL ON FILE |
| 12872273 | NAME ON FILE | EMAIL ON FILE |
| 12762888 | NAME ON FILE | EMAIL ON FILE |
| 12046727 | NAME ON FILE | EMAIL ON FILE |
| 12047305 | NAME ON FILE | EMAIL ON FILE |
| 12047214 | NAME ON FILE | EMAIL ON FILE |
| 12046858 | NAME ON FILE | EMAIL ON FILE |
| 12864505 | NAME ON FILE | EMAIL ON FILE |
| 12047612 | NAME ON FILE | EMAIL ON FILE |
| 12047613 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*

Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047613 | NAME ON FILE | EMAIL ON FILE |
| 12046934 | NAME ON FILE | EMAIL ON FILE |
| 12047309 | NAME ON FILE | EMAIL ON FILE |
| 12873446 | NAME ON FILE | EMAIL ON FILE |
| 12242143 | NAME ON FILE | EMAIL ON FILE |
| 12242143 | NAME ON FILE | EMAIL ON FILE |
| 12047533 | NAME ON FILE | EMAIL ON FILE |
| 12047619 | NAME ON FILE | EMAIL ON FILE |
| 12242144 | NAME ON FILE | EMAIL ON FILE |
| 12242144 | NAME ON FILE | EMAIL ON FILE |
| 12868296 | NAME ON FILE | EMAIL ON FILE |
| 12242145 | NAME ON FILE | EMAIL ON FILE |
| 12242145 | NAME ON FILE | EMAIL ON FILE |
| 12651078 | NAME ON FILE | EMAIL ON FILE |
| 12046661 | NAME ON FILE | EMAIL ON FILE |
| 12046712 | NAME ON FILE | EMAIL ON FILE |
| 12046768 | NAME ON FILE | EMAIL ON FILE |
| 12819909 | NAME ON FILE | EMAIL ON FILE |
| 12047359 | NAME ON FILE | EMAIL ON FILE |
| 12047622 | NAME ON FILE | EMAIL ON FILE |
| 12047623 | NAME ON FILE | EMAIL ON FILE |
| 12047623 | NAME ON FILE | EMAIL ON FILE |
| 12242146 | NAME ON FILE | EMAIL ON FILE |
| 12046626 | NAME ON FILE | EMAIL ON FILE |
| 12047209 | NAME ON FILE | EMAIL ON FILE |
| 12046498 | NAME ON FILE | EMAIL ON FILE |
| 12047624 | NAME ON FILE | EMAIL ON FILE |
| 12873638 | NAME ON FILE | EMAIL ON FILE |
| 12046794 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047625 | NAME ON FILE | EMAIL ON FILE |
| 12047625 | NAME ON FILE | EMAIL ON FILE |
| 12046861 | NAME ON FILE | EMAIL ON FILE |
| 12244717 | NAME ON FILE | EMAIL ON FILE |
| 12242147 | NAME ON FILE | EMAIL ON FILE |
| 12046671 | NAME ON FILE | EMAIL ON FILE |
| 12171215 | NAME ON FILE | EMAIL ON FILE |
| 12171215 | NAME ON FILE | EMAIL ON FILE |
| 12171196 | BITGO | EMAIL ON FILE |
| 12047626 | NAME ON FILE | EMAIL ON FILE |
| 12047627 | NAME ON FILE | EMAIL ON FILE |
| 12047627 | NAME ON FILE | EMAIL ON FILE |
| 12047628 | NAME ON FILE | EMAIL ON FILE |
| 12047628 | NAME ON FILE | EMAIL ON FILE |
| 12047628 | NAME ON FILE | EMAIL ON FILE |
| 12171216 | NAME ON FILE | EMAIL ON FILE |
| 12047629 | NAME ON FILE | EMAIL ON FILE |
| 12047630 | NAME ON FILE | EMAIL ON FILE |
| 12047630 | NAME ON FILE | EMAIL ON FILE |
| 12047630 | NAME ON FILE | EMAIL ON FILE |
| 12047630 | NAME ON FILE | EMAIL ON FILE |
| 12047631 | NAME ON FILE | EMAIL ON FILE |
| 12047631 | NAME ON FILE | EMAIL ON FILE |
| 12047633 | NAME ON FILE | EMAIL ON FILE |
| 12047634 | NAME ON FILE | EMAIL ON FILE |
| 12873431 | NAME ON FILE | EMAIL ON FILE |
| 12872475 | NAME ON FILE | EMAIL ON FILE |
| 12243900 | NAME ON FILE | EMAIL ON FILE |
| 12047635 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|------------|------|-------|
| 12047636 | NAME ON FILE | EMAIL ON FILE |
| 12047637 | NAME ON FILE | EMAIL ON FILE |
| 12047638 | NAME ON FILE | EMAIL ON FILE |
| 12047639 | NAME ON FILE | EMAIL ON FILE |
| 12047640 | NAME ON FILE | EMAIL ON FILE |
| 12047641 | NAME ON FILE | EMAIL ON FILE |
| 12047642 | NAME ON FILE | EMAIL ON FILE |
| 12047643 | NAME ON FILE | EMAIL ON FILE |
| 12047644 | NAME ON FILE | EMAIL ON FILE |
| 12047644 | NAME ON FILE | EMAIL ON FILE |
| 12047645 | NAME ON FILE | EMAIL ON FILE |
| 12047018 | NAME ON FILE | EMAIL ON FILE |
| 12047570 | NAME ON FILE | EMAIL ON FILE |
| 12047423 | NAME ON FILE | EMAIL ON FILE |
| 12242148 | NAME ON FILE | EMAIL ON FILE |
| 12242148 | NAME ON FILE | EMAIL ON FILE |
| 12047097 | NAME ON FILE | EMAIL ON FILE |
| 12242149 | NAME ON FILE | EMAIL ON FILE |
| 12242149 | NAME ON FILE | EMAIL ON FILE |
| 12046693 | NAME ON FILE | EMAIL ON FILE |
| 12862086 | NAME ON FILE | EMAIL ON FILE |
| 12862079 | NAME ON FILE | EMAIL ON FILE |
| 12047646 | NAME ON FILE | EMAIL ON FILE |
| 12242150 | NAME ON FILE | EMAIL ON FILE |
| 12242150 | NAME ON FILE | EMAIL ON FILE |
| 12046523 | NAME ON FILE | EMAIL ON FILE |
| 12046394 | NAME ON FILE | EMAIL ON FILE |
| 12047354 | NAME ON FILE | EMAIL ON FILE |
| 12047647 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046416 | NAME ON FILE | EMAIL ON FILE |
| 12047255 | NAME ON FILE | EMAIL ON FILE |
| 12760689 | NAME ON FILE | EMAIL ON FILE |
| 12827845 | NAME ON FILE | EMAIL ON FILE |
| 12868777 | NAME ON FILE | EMAIL ON FILE |
| 12171212 | NAME ON FILE | EMAIL ON FILE |
| 12046945 | NAME ON FILE | EMAIL ON FILE |
| 12047660 | NAME ON FILE | EMAIL ON FILE |
| 12873617 | NAME ON FILE | EMAIL ON FILE |
| 12242151 | NAME ON FILE | EMAIL ON FILE |
| 12242151 | NAME ON FILE | EMAIL ON FILE |
| 12046823 | NAME ON FILE | EMAIL ON FILE |
| 12047663 | NAME ON FILE | EMAIL ON FILE |
| 12047664 | NAME ON FILE | EMAIL ON FILE |
| 12046440 | NAME ON FILE | EMAIL ON FILE |
| 12856968 | NAME ON FILE | EMAIL ON FILE |
| 12242152 | NAME ON FILE | EMAIL ON FILE |
| 12873635 | NAME ON FILE | EMAIL ON FILE |
| 12648513 | NAME ON FILE | EMAIL ON FILE |
| 12857193 | NAME ON FILE | EMAIL ON FILE |
| 12869636 | NAME ON FILE | EMAIL ON FILE |
| 12047131 | NAME ON FILE | EMAIL ON FILE |
| 12047331 | NAME ON FILE | EMAIL ON FILE |
| 12047403 | NAME ON FILE | EMAIL ON FILE |
| 12046962 | NAME ON FILE | EMAIL ON FILE |
| 12046808 | NAME ON FILE | EMAIL ON FILE |
| 12047621 | NAME ON FILE | EMAIL ON FILE |
| 12244603 | NAME ON FILE | EMAIL ON FILE |
| 12047665 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047666 | NAME ON FILE | EMAIL ON FILE |
| 12171217 | NAME ON FILE | EMAIL ON FILE |
| 12171217 | NAME ON FILE | EMAIL ON FILE |
| 12047669 | NAME ON FILE | EMAIL ON FILE |
| 12046392 | NAME ON FILE | EMAIL ON FILE |
| 12245216 | NAME ON FILE | EMAIL ON FILE |
| 12244682 | NAME ON FILE | EMAIL ON FILE |
| 12251717 | NAME ON FILE | EMAIL ON FILE |
| 12644100 | NAME ON FILE | EMAIL ON FILE |
| 12046599 | NAME ON FILE | EMAIL ON FILE |
| 12873526 | NAME ON FILE | EMAIL ON FILE |
| 12047154 | NAME ON FILE | EMAIL ON FILE |
| 12046917 | NAME ON FILE | EMAIL ON FILE |
| 12047277 | NAME ON FILE | EMAIL ON FILE |
| 12046397 | NAME ON FILE | EMAIL ON FILE |
| 12046397 | NAME ON FILE | EMAIL ON FILE |
| 12046397 | NAME ON FILE | EMAIL ON FILE |
| 12046397 | NAME ON FILE | EMAIL ON FILE |
| 12046397 | NAME ON FILE | EMAIL ON FILE |
| 12829062 | NAME ON FILE | EMAIL ON FILE |
| 12047245 | NAME ON FILE | EMAIL ON FILE |
| 12046606 | NAME ON FILE | EMAIL ON FILE |
| 12046399 | NAME ON FILE | EMAIL ON FILE |
| 12046401 | NAME ON FILE | EMAIL ON FILE |
| 12047571 | NAME ON FILE | EMAIL ON FILE |
| 12046402 | NAME ON FILE | EMAIL ON FILE |
| 12244617 | NAME ON FILE | EMAIL ON FILE |
| 12046403 | NAME ON FILE | EMAIL ON FILE |
| 12244631 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12872617 | NAME ON FILE | EMAIL ON FILE |
| 12191612 | NAME ON FILE | EMAIL ON FILE |
| 12644099 | NAME ON FILE | EMAIL ON FILE |
| 12046405 | NAME ON FILE | EMAIL ON FILE |
| 12858521 | NAME ON FILE | EMAIL ON FILE |
| 12046504 | NAME ON FILE | EMAIL ON FILE |
| 12242153 | NAME ON FILE | EMAIL ON FILE |
| 12046242 | NAME ON FILE | EMAIL ON FILE |
| 12856348 | NAME ON FILE | EMAIL ON FILE |
| 12174026 | NAME ON FILE | EMAIL ON FILE |
| 12760962 | NAME ON FILE | EMAIL ON FILE |
| 12046411 | NAME ON FILE | EMAIL ON FILE |
| 12046412 | NAME ON FILE | EMAIL ON FILE |
| 12046412 | NAME ON FILE | EMAIL ON FILE |
| 12046412 | NAME ON FILE | EMAIL ON FILE |
| 12168471 | NAME ON FILE | EMAIL ON FILE |
| 12046774 | NAME ON FILE | EMAIL ON FILE |
| 12047529 | NAME ON FILE | EMAIL ON FILE |
| 12047141 | NAME ON FILE | EMAIL ON FILE |
| 12047180 | NAME ON FILE | EMAIL ON FILE |
| 12827079 | NAME ON FILE | EMAIL ON FILE |
| 12046845 | NAME ON FILE | EMAIL ON FILE |
| 12047367 | NAME ON FILE | EMAIL ON FILE |
| 12047566 | NAME ON FILE | EMAIL ON FILE |
| 12046744 | NAME ON FILE | EMAIL ON FILE |
| 12046882 | NAME ON FILE | EMAIL ON FILE |
| 12046425 | NAME ON FILE | EMAIL ON FILE |
| 12046745 | NAME ON FILE | EMAIL ON FILE |
| 12242154 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12242154 | NAME ON FILE | EMAIL ON FILE |
| 12046499 | NAME ON FILE | EMAIL ON FILE |
| 12046434 | NAME ON FILE | EMAIL ON FILE |
| 12046436 | NAME ON FILE | EMAIL ON FILE |
| 12046437 | NAME ON FILE | EMAIL ON FILE |
| 12046437 | NAME ON FILE | EMAIL ON FILE |
| 12046438 | NAME ON FILE | EMAIL ON FILE |
| 12246390 | NAME ON FILE | EMAIL ON FILE |
| 12242155 | NAME ON FILE | EMAIL ON FILE |
| 12242155 | NAME ON FILE | EMAIL ON FILE |
| 12046441 | NAME ON FILE | EMAIL ON FILE |
| 12046442 | NAME ON FILE | EMAIL ON FILE |
| 12242156 | NAME ON FILE | EMAIL ON FILE |
| 12242156 | NAME ON FILE | EMAIL ON FILE |
| 12046443 | NAME ON FILE | EMAIL ON FILE |
| 12046443 | NAME ON FILE | EMAIL ON FILE |
| 12046443 | NAME ON FILE | EMAIL ON FILE |
| 12046443 | NAME ON FILE | EMAIL ON FILE |
| 12046471 | NAME ON FILE | EMAIL ON FILE |
| 12046444 | NAME ON FILE | EMAIL ON FILE |
| 12047389 | NAME ON FILE | EMAIL ON FILE |
| 12046445 | NAME ON FILE | EMAIL ON FILE |
| 12046446 | NAME ON FILE | EMAIL ON FILE |
| 12046447 | NAME ON FILE | EMAIL ON FILE |
| 12046448 | NAME ON FILE | EMAIL ON FILE |
| 12047163 | NAME ON FILE | EMAIL ON FILE |
| 12047658 | NAME ON FILE | EMAIL ON FILE |
| 12046817 | NAME ON FILE | EMAIL ON FILE |
| 12872465 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*
Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046449 | NAME ON FILE | EMAIL ON FILE |
| 12046450 | NAME ON FILE | EMAIL ON FILE |
| 12046450 | NAME ON FILE | EMAIL ON FILE |
| 12046451 | NAME ON FILE | EMAIL ON FILE |
| 12046452 | NAME ON FILE | EMAIL ON FILE |
| 12171219 | NAME ON FILE | EMAIL ON FILE |
| 12171219 | NAME ON FILE | EMAIL ON FILE |
| 12171219 | NAME ON FILE | EMAIL ON FILE |
| 12046454 | NAME ON FILE | EMAIL ON FILE |
| 12046454 | NAME ON FILE | EMAIL ON FILE |
| 12046454 | NAME ON FILE | EMAIL ON FILE |
| 12046455 | NAME ON FILE | EMAIL ON FILE |
| 12244975 | NAME ON FILE | EMAIL ON FILE |
| 12046456 | NAME ON FILE | EMAIL ON FILE |
| 12046456 | NAME ON FILE | EMAIL ON FILE |
| 12046457 | NAME ON FILE | EMAIL ON FILE |
| 12046426 | NAME ON FILE | EMAIL ON FILE |
| 12655081 | NAME ON FILE | EMAIL ON FILE |
| 12656264 | NAME ON FILE | EMAIL ON FILE |
| 12046791 | NAME ON FILE | EMAIL ON FILE |
| 12868825 | NAME ON FILE | EMAIL ON FILE |
| 12646670 | NAME ON FILE | EMAIL ON FILE |
| 12046460 | NAME ON FILE | EMAIL ON FILE |
| 12046460 | NAME ON FILE | EMAIL ON FILE |
| 12242157 | NAME ON FILE | EMAIL ON FILE |
| 12242157 | NAME ON FILE | EMAIL ON FILE |
| 12046439 | NAME ON FILE | EMAIL ON FILE |
| 12046462 | NAME ON FILE | EMAIL ON FILE |
| 12047138 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12242158 | NAME ON FILE | EMAIL ON FILE |
| 12242158 | NAME ON FILE | EMAIL ON FILE |
| 12046795 | NAME ON FILE | EMAIL ON FILE |
| 12046463 | NAME ON FILE | EMAIL ON FILE |
| 12046463 | NAME ON FILE | EMAIL ON FILE |
| 12047015 | NAME ON FILE | EMAIL ON FILE |
| 12872255 | NAME ON FILE | EMAIL ON FILE |
| 12649861 | NAME ON FILE | EMAIL ON FILE |
| 12046467 | NAME ON FILE | EMAIL ON FILE |
| 12649445 | NAME ON FILE | EMAIL ON FILE |
| 12046433 | NAME ON FILE | EMAIL ON FILE |
| 12046468 | NAME ON FILE | EMAIL ON FILE |
| 12046469 | NAME ON FILE | EMAIL ON FILE |
| 12046470 | NAME ON FILE | EMAIL ON FILE |
| 12046476 | NAME ON FILE | EMAIL ON FILE |
| 12046477 | NAME ON FILE | EMAIL ON FILE |
| 12649713 | NAME ON FILE | EMAIL ON FILE |
| 12046479 | NAME ON FILE | EMAIL ON FILE |
| 12047668 | NAME ON FILE | EMAIL ON FILE |
| 12046586 | NAME ON FILE | EMAIL ON FILE |
| 12246202 | NAME ON FILE | EMAIL ON FILE |
| 12046480 | NAME ON FILE | EMAIL ON FILE |
| 12046481 | NAME ON FILE | EMAIL ON FILE |
| 12046482 | NAME ON FILE | EMAIL ON FILE |
| 12833236 | NAME ON FILE | EMAIL ON FILE |
| 12046920 | NAME ON FILE | EMAIL ON FILE |
| 12242159 | NAME ON FILE | EMAIL ON FILE |
| 12242159 | NAME ON FILE | EMAIL ON FILE |
| 12046483 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*
Case No. 22-10063 (SHL)

Exhibit A
Notice Party Service List
Served via Email

| ADDRESS ID | NAME | EMAIL |
| --- | --- | --- |
| 12242160 | NAME ON FILE | EMAIL ON FILE |
| 12242160 | NAME ON FILE | EMAIL ON FILE |
| 12242161 | NAME ON FILE | EMAIL ON FILE |
| 12242161 | NAME ON FILE | EMAIL ON FILE |
| 12046486 | NAME ON FILE | EMAIL ON FILE |
| 12046487 | NAME ON FILE | EMAIL ON FILE |
| 12046487 | NAME ON FILE | EMAIL ON FILE |
| 12046487 | NAME ON FILE | EMAIL ON FILE |
| 12046487 | NAME ON FILE | EMAIL ON FILE |
| 12046488 | NAME ON FILE | EMAIL ON FILE |
| 12245822 | NAME ON FILE | EMAIL ON FILE |
| 12242162 | NAME ON FILE | EMAIL ON FILE |
| 12242162 | NAME ON FILE | EMAIL ON FILE |
| 12867662 | NAME ON FILE | EMAIL ON FILE |
| 12046964 | NAME ON FILE | EMAIL ON FILE |
| 12242163 | NAME ON FILE | EMAIL ON FILE |
| 12242163 | NAME ON FILE | EMAIL ON FILE |
| 12047616 | NAME ON FILE | EMAIL ON FILE |
| 12648123 | NAME ON FILE | EMAIL ON FILE |
| 12047074 | NAME ON FILE | EMAIL ON FILE |
| 12242164 | NAME ON FILE | EMAIL ON FILE |
| 12242164 | NAME ON FILE | EMAIL ON FILE |
| 12875266 | NAME ON FILE | EMAIL ON FILE |
| 12046516 | NAME ON FILE | EMAIL ON FILE |
| 12046516 | NAME ON FILE | EMAIL ON FILE |
| 12046516 | NAME ON FILE | EMAIL ON FILE |
| 12046948 | NAME ON FILE | EMAIL ON FILE |
| 12047185 | NAME ON FILE | EMAIL ON FILE |
| 12046517 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*
Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046517 | NAME ON FILE | EMAIL ON FILE |
| 12046517 | NAME ON FILE | EMAIL ON FILE |
| 12046517 | NAME ON FILE | EMAIL ON FILE |
| 12046518 | NAME ON FILE | EMAIL ON FILE |
| 12046518 | NAME ON FILE | EMAIL ON FILE |
| 12046519 | NAME ON FILE | EMAIL ON FILE |
| 12046520 | NAME ON FILE | EMAIL ON FILE |
| 12875871 | NAME ON FILE | EMAIL ON FILE |
| 12872336 | DECENTRALIZED WIRELESS FOUNDATION, INC. | EMAIL ON FILE |
| 12872336 | DECENTRALIZED WIRELESS FOUNDATION, INC. | EMAIL ON FILE |
| 12047195 | NAME ON FILE | EMAIL ON FILE |
| 12046521 | NAME ON FILE | EMAIL ON FILE |
| 12650622 | NAME ON FILE | EMAIL ON FILE |
| 12650622 | NAME ON FILE | EMAIL ON FILE |
| 12046427 | NAME ON FILE | EMAIL ON FILE |
| 12107322 | DEPARTMENT OF TREASURY- INTERNAL REVENUE SERVICE | EMAIL ON FILE |
| 12871888 | NAME ON FILE | EMAIL ON FILE |
| 12191638 | NAME ON FILE | EMAIL ON FILE |
| 12191639 | NAME ON FILE | EMAIL ON FILE |
| 12868545 | NAME ON FILE | EMAIL ON FILE |
| 12046526 | NAME ON FILE | EMAIL ON FILE |
| 12046527 | NAME ON FILE | EMAIL ON FILE |
| 12046527 | NAME ON FILE | EMAIL ON FILE |
| 12046258 | NAME ON FILE | EMAIL ON FILE |
| 12242165 | NAME ON FILE | EMAIL ON FILE |
| 12242165 | NAME ON FILE | EMAIL ON FILE |
| 12046528 | NAME ON FILE | EMAIL ON FILE |
| 12047386 | NAME ON FILE | EMAIL ON FILE |
| 12046529 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046530 | NAME ON FILE | EMAIL ON FILE |
| 12046530 | NAME ON FILE | EMAIL ON FILE |
| 12046532 | NAME ON FILE | EMAIL ON FILE |
| 12046533 | NAME ON FILE | EMAIL ON FILE |
| 12046534 | NAME ON FILE | EMAIL ON FILE |
| 12046536 | NAME ON FILE | EMAIL ON FILE |
| 12046537 | NAME ON FILE | EMAIL ON FILE |
| 12046537 | NAME ON FILE | EMAIL ON FILE |
| 12046537 | NAME ON FILE | EMAIL ON FILE |
| 12046537 | NAME ON FILE | EMAIL ON FILE |
| 12046537 | NAME ON FILE | EMAIL ON FILE |
| 12171222 | NAME ON FILE | EMAIL ON FILE |
| 12242166 | NAME ON FILE | EMAIL ON FILE |
| 12242166 | NAME ON FILE | EMAIL ON FILE |
| 12245187 | NAME ON FILE | EMAIL ON FILE |
| 12047174 | NAME ON FILE | EMAIL ON FILE |
| 12046539 | NAME ON FILE | EMAIL ON FILE |
| 12046784 | NAME ON FILE | EMAIL ON FILE |
| 12046540 | NAME ON FILE | EMAIL ON FILE |
| 12046541 | NAME ON FILE | EMAIL ON FILE |
| 12827065 | NAME ON FILE | EMAIL ON FILE |
| 12242167 | NAME ON FILE | EMAIL ON FILE |
| 12242167 | NAME ON FILE | EMAIL ON FILE |
| 12242168 | NAME ON FILE | EMAIL ON FILE |
| 12242168 | NAME ON FILE | EMAIL ON FILE |
| 12047083 | NAME ON FILE | EMAIL ON FILE |
| 12046542 | NAME ON FILE | EMAIL ON FILE |
| 12046542 | NAME ON FILE | EMAIL ON FILE |
| 12046424 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12875481 | NAME ON FILE | EMAIL ON FILE |
| 12046544 | NAME ON FILE | EMAIL ON FILE |
| 12046545 | NAME ON FILE | EMAIL ON FILE |
| 12171223 | NAME ON FILE | EMAIL ON FILE |
| 12171223 | NAME ON FILE | EMAIL ON FILE |
| 12244736 | NAME ON FILE | EMAIL ON FILE |
| 12242169 | NAME ON FILE | EMAIL ON FILE |
| 12242169 | NAME ON FILE | EMAIL ON FILE |
| 12046916 | NAME ON FILE | EMAIL ON FILE |
| 12046547 | NAME ON FILE | EMAIL ON FILE |
| 12835394 | NAME ON FILE | EMAIL ON FILE |
| 12046548 | NAME ON FILE | EMAIL ON FILE |
| 12046548 | NAME ON FILE | EMAIL ON FILE |
| 12046548 | NAME ON FILE | EMAIL ON FILE |
| 12046548 | NAME ON FILE | EMAIL ON FILE |
| 12046548 | NAME ON FILE | EMAIL ON FILE |
| 12046549 | NAME ON FILE | EMAIL ON FILE |
| 12046550 | NAME ON FILE | EMAIL ON FILE |
| 12046551 | NAME ON FILE | EMAIL ON FILE |
| 12046552 | NAME ON FILE | EMAIL ON FILE |
| 12046552 | NAME ON FILE | EMAIL ON FILE |
| 12046553 | NAME ON FILE | EMAIL ON FILE |
| 12761076 | NAME ON FILE | EMAIL ON FILE |
| 12244664 | NAME ON FILE | EMAIL ON FILE |
| 12047601 | NAME ON FILE | EMAIL ON FILE |
| 12046804 | NAME ON FILE | EMAIL ON FILE |
| 12046686 | NAME ON FILE | EMAIL ON FILE |
| 12046559 | NAME ON FILE | EMAIL ON FILE |
| 12046560 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047266 | NAME ON FILE | EMAIL ON FILE |
| 12046566 | NAME ON FILE | EMAIL ON FILE |
| 12046570 | NAME ON FILE | EMAIL ON FILE |
| 12046570 | NAME ON FILE | EMAIL ON FILE |
| 12171224 | NAME ON FILE | EMAIL ON FILE |
| 12171224 | NAME ON FILE | EMAIL ON FILE |
| 12046571 | NAME ON FILE | EMAIL ON FILE |
| 12242170 | NAME ON FILE | EMAIL ON FILE |
| 12242170 | NAME ON FILE | EMAIL ON FILE |
| 12046572 | NAME ON FILE | EMAIL ON FILE |
| 12171225 | NAME ON FILE | EMAIL ON FILE |
| 12046577 | NAME ON FILE | EMAIL ON FILE |
| 12046577 | NAME ON FILE | EMAIL ON FILE |
| 12046577 | NAME ON FILE | EMAIL ON FILE |
| 12046578 | NAME ON FILE | EMAIL ON FILE |
| 12046579 | NAME ON FILE | EMAIL ON FILE |
| 12046580 | NAME ON FILE | EMAIL ON FILE |
| 12046581 | NAME ON FILE | EMAIL ON FILE |
| 12046582 | NAME ON FILE | EMAIL ON FILE |
| 12244656 | NAME ON FILE | EMAIL ON FILE |
| 12046583 | NAME ON FILE | EMAIL ON FILE |
| 12046583 | NAME ON FILE | EMAIL ON FILE |
| 12046584 | NAME ON FILE | EMAIL ON FILE |
| 12046585 | NAME ON FILE | EMAIL ON FILE |
| 12046585 | NAME ON FILE | EMAIL ON FILE |
| 12046585 | NAME ON FILE | EMAIL ON FILE |
| 12046921 | NAME ON FILE | EMAIL ON FILE |
| 12047299 | NAME ON FILE | EMAIL ON FILE |
| 12046589 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*

Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046590 | NAME ON FILE | EMAIL ON FILE |
| 12873702 | NAME ON FILE | EMAIL ON FILE |
| 12046996 | NAME ON FILE | EMAIL ON FILE |
| 12093512 | NAME ON FILE | EMAIL ON FILE |
| 12047355 | NAME ON FILE | EMAIL ON FILE |
| 12046965 | NAME ON FILE | EMAIL ON FILE |
| 12869394 | NAME ON FILE | EMAIL ON FILE |
| 12046459 | NAME ON FILE | EMAIL ON FILE |
| 12046592 | NAME ON FILE | EMAIL ON FILE |
| 12046592 | NAME ON FILE | EMAIL ON FILE |
| 12046593 | NAME ON FILE | EMAIL ON FILE |
| 12046594 | NAME ON FILE | EMAIL ON FILE |
| 12046594 | NAME ON FILE | EMAIL ON FILE |
| 12046594 | NAME ON FILE | EMAIL ON FILE |
| 12047256 | NAME ON FILE | EMAIL ON FILE |
| 12046596 | NAME ON FILE | EMAIL ON FILE |
| 12047534 | NAME ON FILE | EMAIL ON FILE |
| 12046922 | NAME ON FILE | EMAIL ON FILE |
| 12046783 | NAME ON FILE | EMAIL ON FILE |
| 12046395 | NAME ON FILE | EMAIL ON FILE |
| 12046719 | NAME ON FILE | EMAIL ON FILE |
| 12171227 | NAME ON FILE | EMAIL ON FILE |
| 12096075 | NAME ON FILE | EMAIL ON FILE |
| 12096069 | NAME ON FILE | EMAIL ON FILE |
| 12046600 | NAME ON FILE | EMAIL ON FILE |
| 12046600 | NAME ON FILE | EMAIL ON FILE |
| 12761361 | NAME ON FILE | EMAIL ON FILE |
| 12046505 | NAME ON FILE | EMAIL ON FILE |
| 12046601 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*

Case No. 22-10063 (SHL)

Exhibit A
Notice Party Service List
Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046601 | NAME ON FILE | EMAIL ON FILE |
| 12046602 | NAME ON FILE | EMAIL ON FILE |
| 12046602 | NAME ON FILE | EMAIL ON FILE |
| 12647386 | NAME ON FILE | EMAIL ON FILE |
| 12046809 | NAME ON FILE | EMAIL ON FILE |
| 12046603 | NAME ON FILE | EMAIL ON FILE |
| 12046603 | NAME ON FILE | EMAIL ON FILE |
| 12046604 | NAME ON FILE | EMAIL ON FILE |
| 12046605 | NAME ON FILE | EMAIL ON FILE |
| 12047229 | NAME ON FILE | EMAIL ON FILE |
| 12763622 | NAME ON FILE | EMAIL ON FILE |
| 12046799 | NAME ON FILE | EMAIL ON FILE |
| 12046966 | NAME ON FILE | EMAIL ON FILE |
| 12046627 | NAME ON FILE | EMAIL ON FILE |
| 12046608 | NAME ON FILE | EMAIL ON FILE |
| 12046609 | NAME ON FILE | EMAIL ON FILE |
| 12047605 | NAME ON FILE | EMAIL ON FILE |
| 12046610 | NAME ON FILE | EMAIL ON FILE |
| 12046610 | NAME ON FILE | EMAIL ON FILE |
| 12126062 | FOREIGN REPRESENTATIVE OF THREE ARROWS CAPITAL | EMAIL ON FILE |
| 12126062 | FOREIGN REPRESENTATIVE OF THREE ARROWS CAPITAL | EMAIL ON FILE |
| 12126071 | FOREIGN REPRESENTATIVE OF THREE ARROWS CAPITAL | EMAIL ON FILE |
| 12126071 | FOREIGN REPRESENTATIVE OF THREE ARROWS CAPITAL | EMAIL ON FILE |
| 12126071 | FOREIGN REPRESENTATIVE OF THREE ARROWS CAPITAL | EMAIL ON FILE |
| 12126062 | FOREIGN REPRESENTATIVE OF THREE ARROWS CAPITAL | EMAIL ON FILE |
| 12126062 | FOREIGN REPRESENTATIVE OF THREE ARROWS CAPITAL | EMAIL ON FILE |
| 12047617 | NAME ON FILE | EMAIL ON FILE |
| 12148631 | NAME ON FILE | EMAIL ON FILE |
| 12872434 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*,
Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12875386 | NAME ON FILE | EMAIL ON FILE |
| 12872434 | NAME ON FILE | EMAIL ON FILE |
| 12046611 | NAME ON FILE | EMAIL ON FILE |
| 12171198 | FOUNDRY DIGITAL LLC | EMAIL ON FILE |
| 12046612 | NAME ON FILE | EMAIL ON FILE |
| 12046612 | NAME ON FILE | EMAIL ON FILE |
| 12046612 | NAME ON FILE | EMAIL ON FILE |
| 12046612 | NAME ON FILE | EMAIL ON FILE |
| 12046612 | NAME ON FILE | EMAIL ON FILE |
| 12871864 | NAME ON FILE | EMAIL ON FILE |
| 12046612 | NAME ON FILE | EMAIL ON FILE |
| 12862068 | NAME ON FILE | EMAIL ON FILE |
| 12046613 | NAME ON FILE | EMAIL ON FILE |
| 12046614 | NAME ON FILE | EMAIL ON FILE |
| 12046615 | NAME ON FILE | EMAIL ON FILE |
| 12046615 | NAME ON FILE | EMAIL ON FILE |
| 12047186 | NAME ON FILE | EMAIL ON FILE |
| 12046830 | NAME ON FILE | EMAIL ON FILE |
| 12046265 | NAME ON FILE | EMAIL ON FILE |
| 12875050 | NAME ON FILE | EMAIL ON FILE |
| 12649369 | NAME ON FILE | EMAIL ON FILE |
| 12648504 | NAME ON FILE | EMAIL ON FILE |
| 12046616 | NAME ON FILE | EMAIL ON FILE |
| 12046620 | NAME ON FILE | EMAIL ON FILE |
| 12046963 | NAME ON FILE | EMAIL ON FILE |
| 12046587 | NAME ON FILE | EMAIL ON FILE |
| 12047300 | NAME ON FILE | EMAIL ON FILE |
| 12872480 | NAME ON FILE | EMAIL ON FILE |
| 12046268 | FULLERTON HEALTH | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*

Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046269 | FULLERTON HEALTH | EMAIL ON FILE |
| 12046270 | FULLERTON HEALTH | EMAIL ON FILE |
| 12046776 | NAME ON FILE | EMAIL ON FILE |
| 12046621 | NAME ON FILE | EMAIL ON FILE |
| 12046622 | NAME ON FILE | EMAIL ON FILE |
| 12046622 | NAME ON FILE | EMAIL ON FILE |
| 12047516 | NAME ON FILE | EMAIL ON FILE |
| 12046623 | NAME ON FILE | EMAIL ON FILE |
| 12046914 | NAME ON FILE | EMAIL ON FILE |
| 12115822 | NAME ON FILE | EMAIL ON FILE |
| 12047269 | NAME ON FILE | EMAIL ON FILE |
| 12046624 | NAME ON FILE | EMAIL ON FILE |
| 12857201 | NAME ON FILE | EMAIL ON FILE |
| 12242171 | NAME ON FILE | EMAIL ON FILE |
| 12046800 | NAME ON FILE | EMAIL ON FILE |
| 12046928 | NAME ON FILE | EMAIL ON FILE |
| 12046928 | NAME ON FILE | EMAIL ON FILE |
| 12046928 | NAME ON FILE | EMAIL ON FILE |
| 12046625 | NAME ON FILE | EMAIL ON FILE |
| 12047310 | NAME ON FILE | EMAIL ON FILE |
| 12047301 | NAME ON FILE | EMAIL ON FILE |
| 12047301 | NAME ON FILE | EMAIL ON FILE |
| 12047301 | NAME ON FILE | EMAIL ON FILE |
| 12046628 | NAME ON FILE | EMAIL ON FILE |
| 12046677 | NAME ON FILE | EMAIL ON FILE |
| 12046629 | NAME ON FILE | EMAIL ON FILE |
| 12872084 | NAME ON FILE | EMAIL ON FILE |
| 12871713 | GEMINI TRUST COMPANY, LLC, ON BEHALF OF GEMINI LENDERS | JEFF.MARGOLIN@HUGHESHUBBARD.COM |
| 12873490 | GEMINI TRUST COMPANY, LLC, ON BEHALF OF GEMINI LENDERS | GENESISCLAIMS@GEMINI.COM |

In re: Genesis Global Holdco, LLC, *et al.*

Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12875975 | GENESIS GLOBAL TRADING, INC. | EMAIL ON FILE |
| 12875975 | GENESIS GLOBAL TRADING, INC. | EMAIL ON FILE |
| 12875975 | GENESIS GLOBAL TRADING, INC. | EMAIL ON FILE |
| 12875975 | GENESIS GLOBAL TRADING, INC. | EMAIL ON FILE |
| 12046636 | GENESIS GLOBAL TRADING, INC. | EMAIL ON FILE |
| 12823459 | NAME ON FILE | EMAIL ON FILE |
| 12833230 | NAME ON FILE | EMAIL ON FILE |
| 12046638 | NAME ON FILE | EMAIL ON FILE |
| 12872645 | NAME ON FILE | EMAIL ON FILE |
| 12046643 | NAME ON FILE | EMAIL ON FILE |
| 12046923 | NAME ON FILE | EMAIL ON FILE |
| 12242172 | NAME ON FILE | EMAIL ON FILE |
| 12242172 | NAME ON FILE | EMAIL ON FILE |
| 12171186 | GGC INTERNATIONAL LIMITED | EMAIL ON FILE |
| 12046647 | NAME ON FILE | EMAIL ON FILE |
| 12046648 | NAME ON FILE | EMAIL ON FILE |
| 12858034 | NAME ON FILE | EMAIL ON FILE |
| 12047649 | NAME ON FILE | EMAIL ON FILE |
| 12648467 | NAME ON FILE | EMAIL ON FILE |
| 12046755 | NAME ON FILE | EMAIL ON FILE |
| 12047662 | NAME ON FILE | EMAIL ON FILE |
| 12047207 | NAME ON FILE | EMAIL ON FILE |
| 12242173 | NAME ON FILE | EMAIL ON FILE |
| 12242173 | NAME ON FILE | EMAIL ON FILE |
| 12047162 | NAME ON FILE | EMAIL ON FILE |
| 12046781 | NAME ON FILE | EMAIL ON FILE |
| 12828680 | NAME ON FILE | EMAIL ON FILE |
| 12047422 | NAME ON FILE | EMAIL ON FILE |
| 12046649 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046650 | NAME ON FILE | EMAIL ON FILE |
| 12046650 | NAME ON FILE | EMAIL ON FILE |
| 12046651 | NAME ON FILE | EMAIL ON FILE |
| 12046651 | NAME ON FILE | EMAIL ON FILE |
| 12242174 | NAME ON FILE | EMAIL ON FILE |
| 12242174 | NAME ON FILE | EMAIL ON FILE |
| 12046801 | NAME ON FILE | EMAIL ON FILE |
| 12245239 | NAME ON FILE | EMAIL ON FILE |
| 12046652 | NAME ON FILE | EMAIL ON FILE |
| 12046762 | NAME ON FILE | EMAIL ON FILE |
| 12762875 | NAME ON FILE | EMAIL ON FILE |
| 12872261 | GOODWIN PROCTER LLP | EMAIL ON FILE |
| 12046967 | NAME ON FILE | EMAIL ON FILE |
| 12047075 | NAME ON FILE | EMAIL ON FILE |
| 12047507 | NAME ON FILE | EMAIL ON FILE |
| 12046275 | NAME ON FILE | EMAIL ON FILE |
| 12872588 | NAME ON FILE | EMAIL ON FILE |
| 12171229 | NAME ON FILE | EMAIL ON FILE |
| 12875879 | NAME ON FILE | EMAIL ON FILE |
| 12873496 | NAME ON FILE | EMAIL ON FILE |
| 12047614 | NAME ON FILE | EMAIL ON FILE |
| 12046522 | NAME ON FILE | EMAIL ON FILE |
| 12242175 | NAME ON FILE | EMAIL ON FILE |
| 12242175 | NAME ON FILE | EMAIL ON FILE |
| 12046658 | NAME ON FILE | EMAIL ON FILE |
| 12046658 | NAME ON FILE | EMAIL ON FILE |
| 12046658 | NAME ON FILE | EMAIL ON FILE |
| 12046658 | NAME ON FILE | EMAIL ON FILE |
| 12046659 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*
Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047569 | NAME ON FILE | EMAIL ON FILE |
| 12855778 | NAME ON FILE | EMAIL ON FILE |
| 12046660 | NAME ON FILE | EMAIL ON FILE |
| 12046660 | NAME ON FILE | EMAIL ON FILE |
| 12046660 | NAME ON FILE | EMAIL ON FILE |
| 12046660 | NAME ON FILE | EMAIL ON FILE |
| 12046660 | NAME ON FILE | EMAIL ON FILE |
| 12046982 | NAME ON FILE | EMAIL ON FILE |
| 12046734 | NAME ON FILE | EMAIL ON FILE |
| 12648524 | NAME ON FILE | EMAIL ON FILE |
| 12242176 | NAME ON FILE | EMAIL ON FILE |
| 12242176 | NAME ON FILE | EMAIL ON FILE |
| 12648492 | NAME ON FILE | EMAIL ON FILE |
| 12046666 | NAME ON FILE | EMAIL ON FILE |
| 12046666 | NAME ON FILE | EMAIL ON FILE |
| 12046667 | NAME ON FILE | EMAIL ON FILE |
| 12046667 | NAME ON FILE | EMAIL ON FILE |
| 12047530 | NAME ON FILE | EMAIL ON FILE |
| 12047022 | NAME ON FILE | EMAIL ON FILE |
| 12873522 | NAME ON FILE | EMAIL ON FILE |
| 12046279 | NAME ON FILE | EMAIL ON FILE |
| 12046656 | NAME ON FILE | EMAIL ON FILE |
| 12242177 | NAME ON FILE | EMAIL ON FILE |
| 12046662 | NAME ON FILE | EMAIL ON FILE |
| 12171214 | NAME ON FILE | EMAIL ON FILE |
| 12872150 | NAME ON FILE | EMAIL ON FILE |
| 12046428 | NAME ON FILE | EMAIL ON FILE |
| 12171251 | NAME ON FILE | EMAIL ON FILE |
| 12171210 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*

Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047023 | NAME ON FILE | EMAIL ON FILE |
| 12242178 | NAME ON FILE | EMAIL ON FILE |
| 12242178 | NAME ON FILE | EMAIL ON FILE |
| 12046746 | NAME ON FILE | EMAIL ON FILE |
| 12651058 | NAME ON FILE | EMAIL ON FILE |
| 12046668 | NAME ON FILE | EMAIL ON FILE |
| 12046984 | NAME ON FILE | EMAIL ON FILE |
| 12242179 | NAME ON FILE | EMAIL ON FILE |
| 12242179 | NAME ON FILE | EMAIL ON FILE |
| 12046673 | NAME ON FILE | EMAIL ON FILE |
| 12046674 | NAME ON FILE | EMAIL ON FILE |
| 12046674 | NAME ON FILE | EMAIL ON FILE |
| 12046674 | NAME ON FILE | EMAIL ON FILE |
| 12046531 | NAME ON FILE | EMAIL ON FILE |
| 12652290 | NAME ON FILE | EMAIL ON FILE |
| 12047156 | NAME ON FILE | EMAIL ON FILE |
| 12046947 | NAME ON FILE | EMAIL ON FILE |
| 12046675 | NAME ON FILE | EMAIL ON FILE |
| 12046675 | NAME ON FILE | EMAIL ON FILE |
| 12046785 | NAME ON FILE | EMAIL ON FILE |
| 12242180 | NAME ON FILE | EMAIL ON FILE |
| 12242180 | NAME ON FILE | EMAIL ON FILE |
| 12046567 | NAME ON FILE | EMAIL ON FILE |
| 12242181 | NAME ON FILE | EMAIL ON FILE |
| 12047191 | NAME ON FILE | EMAIL ON FILE |
| 12046968 | NAME ON FILE | EMAIL ON FILE |
| 12242182 | NAME ON FILE | EMAIL ON FILE |
| 12242182 | NAME ON FILE | EMAIL ON FILE |
| 12046679 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046680 | NAME ON FILE | EMAIL ON FILE |
| 12046680 | NAME ON FILE | EMAIL ON FILE |
| 12047201 | NAME ON FILE | EMAIL ON FILE |
| 12046681 | NAME ON FILE | EMAIL ON FILE |
| 12046681 | NAME ON FILE | EMAIL ON FILE |
| 12046682 | NAME ON FILE | EMAIL ON FILE |
| 12046682 | NAME ON FILE | EMAIL ON FILE |
| 12046683 | NAME ON FILE | EMAIL ON FILE |
| 12046683 | NAME ON FILE | EMAIL ON FILE |
| 12046492 | NAME ON FILE | EMAIL ON FILE |
| 12171230 | NAME ON FILE | EMAIL ON FILE |
| 12245696 | NAME ON FILE | EMAIL ON FILE |
| 12242183 | NAME ON FILE | EMAIL ON FILE |
| 12242183 | NAME ON FILE | EMAIL ON FILE |
| 12046747 | NAME ON FILE | EMAIL ON FILE |
| 12245819 | NAME ON FILE | EMAIL ON FILE |
| 12047508 | NAME ON FILE | EMAIL ON FILE |
| 12762894 | NAME ON FILE | EMAIL ON FILE |
| 12762894 | NAME ON FILE | EMAIL ON FILE |
| 12046687 | NAME ON FILE | EMAIL ON FILE |
| 12046687 | NAME ON FILE | EMAIL ON FILE |
| 12046429 | NAME ON FILE | EMAIL ON FILE |
| 12046688 | NAME ON FILE | EMAIL ON FILE |
| 12046689 | NAME ON FILE | EMAIL ON FILE |
| 12827093 | NAME ON FILE | EMAIL ON FILE |
| 12047238 | NAME ON FILE | EMAIL ON FILE |
| 12046692 | NAME ON FILE | EMAIL ON FILE |
| 12046805 | NAME ON FILE | EMAIL ON FILE |
| 12856513 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046721 | NAME ON FILE | EMAIL ON FILE |
| 12046735 | NAME ON FILE | EMAIL ON FILE |
| 12046735 | NAME ON FILE | EMAIL ON FILE |
| 12760694 | NAME ON FILE | EMAIL ON FILE |
| 11842064 | NAME ON FILE | EMAIL ON FILE |
| 12046798 | NAME ON FILE | EMAIL ON FILE |
| 12242184 | NAME ON FILE | EMAIL ON FILE |
| 12242184 | NAME ON FILE | EMAIL ON FILE |
| 12046694 | NAME ON FILE | EMAIL ON FILE |
| 12046695 | NAME ON FILE | EMAIL ON FILE |
| 12046696 | NAME ON FILE | EMAIL ON FILE |
| 12046696 | NAME ON FILE | EMAIL ON FILE |
| 12046696 | NAME ON FILE | EMAIL ON FILE |
| 12171231 | NAME ON FILE | EMAIL ON FILE |
| 12171232 | NAME ON FILE | EMAIL ON FILE |
| 12869869 | NAME ON FILE | EMAIL ON FILE |
| 12829975 | NAME ON FILE | EMAIL ON FILE |
| 12242185 | NAME ON FILE | EMAIL ON FILE |
| 12242185 | NAME ON FILE | EMAIL ON FILE |
| 12046697 | NAME ON FILE | EMAIL ON FILE |
| 12046697 | NAME ON FILE | EMAIL ON FILE |
| 12046697 | NAME ON FILE | EMAIL ON FILE |
| 12763559 | NAME ON FILE | EMAIL ON FILE |
| 12046699 | NAME ON FILE | EMAIL ON FILE |
| 12242186 | NAME ON FILE | EMAIL ON FILE |
| 12242186 | NAME ON FILE | EMAIL ON FILE |
| 12870348 | NAME ON FILE | EMAIL ON FILE |
| 12046946 | NAME ON FILE | EMAIL ON FILE |
| 12869922 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12244555 | NAME ON FILE | EMAIL ON FILE |
| 12046835 | NAME ON FILE | EMAIL ON FILE |
| 12046700 | NAME ON FILE | EMAIL ON FILE |
| 12046701 | NAME ON FILE | EMAIL ON FILE |
| 12046657 | NAME ON FILE | EMAIL ON FILE |
| 12047146 | NAME ON FILE | EMAIL ON FILE |
| 12046786 | NAME ON FILE | EMAIL ON FILE |
| 12650340 | NAME ON FILE | EMAIL ON FILE |
| 12046417 | NAME ON FILE | EMAIL ON FILE |
| 12046703 | NAME ON FILE | EMAIL ON FILE |
| 12046705 | NAME ON FILE | EMAIL ON FILE |
| 12046707 | NAME ON FILE | EMAIL ON FILE |
| 12171226 | NAME ON FILE | EMAIL ON FILE |
| 12046408 | NAME ON FILE | EMAIL ON FILE |
| 12046709 | NAME ON FILE | EMAIL ON FILE |
| 12648413 | NAME ON FILE | EMAIL ON FILE |
| 12857449 | NAME ON FILE | EMAIL ON FILE |
| 12873631 | NAME ON FILE | EMAIL ON FILE |
| 12046711 | NAME ON FILE | EMAIL ON FILE |
| 12047230 | NAME ON FILE | EMAIL ON FILE |
| 12046715 | NAME ON FILE | EMAIL ON FILE |
| 12046716 | NAME ON FILE | EMAIL ON FILE |
| 12046716 | NAME ON FILE | EMAIL ON FILE |
| 12046716 | NAME ON FILE | EMAIL ON FILE |
| 12046717 | NAME ON FILE | EMAIL ON FILE |
| 12046717 | NAME ON FILE | EMAIL ON FILE |
| 12046717 | NAME ON FILE | EMAIL ON FILE |
| 12046718 | NAME ON FILE | EMAIL ON FILE |
| 12046720 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047520 | NAME ON FILE | EMAIL ON FILE |
| 12873456 | NAME ON FILE | EMAIL ON FILE |
| 12047502 | NAME ON FILE | EMAIL ON FILE |
| 12046722 | NAME ON FILE | EMAIL ON FILE |
| 12046285 | J K MEDORA CORPORATE ASSISTANCE PTE LTD N | EMAIL ON FILE |
| 12171236 | NAME ON FILE | EMAIL ON FILE |
| 12046418 | NAME ON FILE | EMAIL ON FILE |
| 12046733 | NAME ON FILE | EMAIL ON FILE |
| 12046733 | NAME ON FILE | EMAIL ON FILE |
| 12047332 | NAME ON FILE | EMAIL ON FILE |
| 12047157 | NAME ON FILE | EMAIL ON FILE |
| 12047611 | NAME ON FILE | EMAIL ON FILE |
| 12046753 | NAME ON FILE | EMAIL ON FILE |
| 12046754 | NAME ON FILE | EMAIL ON FILE |
| 12046756 | NAME ON FILE | EMAIL ON FILE |
| 12823945 | NAME ON FILE | EMAIL ON FILE |
| 12046653 | NAME ON FILE | EMAIL ON FILE |
| 12245163 | NAME ON FILE | EMAIL ON FILE |
| 12872386 | NAME ON FILE | EMAIL ON FILE |
| 12046769 | NAME ON FILE | EMAIL ON FILE |
| 12869453 | NAME ON FILE | EMAIL ON FILE |
| 12047117 | NAME ON FILE | EMAIL ON FILE |
| 12047509 | NAME ON FILE | EMAIL ON FILE |
| 12046576 | NAME ON FILE | EMAIL ON FILE |
| 12046826 | NAME ON FILE | EMAIL ON FILE |
| 12242188 | NAME ON FILE | EMAIL ON FILE |
| 12242188 | NAME ON FILE | EMAIL ON FILE |
| 12242189 | NAME ON FILE | EMAIL ON FILE |
| 12242189 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047557 | NAME ON FILE | EMAIL ON FILE |
| 12047378 | NAME ON FILE | EMAIL ON FILE |
| 12046811 | JPMORGAN CHASE BANK, NA | EMAIL ON FILE |
| 12046813 | NAME ON FILE | EMAIL ON FILE |
| 12763552 | NAME ON FILE | EMAIL ON FILE |
| 12046286 | NAME ON FILE | EMAIL ON FILE |
| 12046758 | NAME ON FILE | EMAIL ON FILE |
| 12096057 | NAME ON FILE | EMAIL ON FILE |
| 12047092 | NAME ON FILE | EMAIL ON FILE |
| 12046728 | NAME ON FILE | EMAIL ON FILE |
| 12870138 | NAME ON FILE | EMAIL ON FILE |
| 12047053 | NAME ON FILE | EMAIL ON FILE |
| 12242190 | NAME ON FILE | EMAIL ON FILE |
| 12242190 | NAME ON FILE | EMAIL ON FILE |
| 12046969 | NAME ON FILE | EMAIL ON FILE |
| 12242191 | NAME ON FILE | EMAIL ON FILE |
| 12242191 | NAME ON FILE | EMAIL ON FILE |
| 12046825 | NAME ON FILE | EMAIL ON FILE |
| 12046825 | NAME ON FILE | EMAIL ON FILE |
| 12046738 | NAME ON FILE | EMAIL ON FILE |
| 12047393 | NAME ON FILE | EMAIL ON FILE |
| 12819030 | NAME ON FILE | EMAIL ON FILE |
| 12652100 | NAME ON FILE | EMAIL ON FILE |
| 12046409 | NAME ON FILE | EMAIL ON FILE |
| 12046872 | NAME ON FILE | EMAIL ON FILE |
| 12046833 | NAME ON FILE | EMAIL ON FILE |
| 12046836 | NAME ON FILE | EMAIL ON FILE |
| 12046842 | NAME ON FILE | EMAIL ON FILE |
| 12242192 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*
Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12242192 | NAME ON FILE | EMAIL ON FILE |
| 12046844 | NAME ON FILE | EMAIL ON FILE |
| 12823445 | NAME ON FILE | EMAIL ON FILE |
| 12046464 | NAME ON FILE | EMAIL ON FILE |
| 12046796 | NAME ON FILE | EMAIL ON FILE |
| 12047567 | NAME ON FILE | EMAIL ON FILE |
| 12047394 | NAME ON FILE | EMAIL ON FILE |
| 12242193 | NAME ON FILE | EMAIL ON FILE |
| 12046847 | NAME ON FILE | EMAIL ON FILE |
| 12242194 | NAME ON FILE | EMAIL ON FILE |
| 12242194 | NAME ON FILE | EMAIL ON FILE |
| 12244688 | NAME ON FILE | EMAIL ON FILE |
| 12046970 | NAME ON FILE | EMAIL ON FILE |
| 12046970 | NAME ON FILE | EMAIL ON FILE |
| 12047419 | NAME ON FILE | EMAIL ON FILE |
| 12047510 | NAME ON FILE | EMAIL ON FILE |
| 12047510 | NAME ON FILE | EMAIL ON FILE |
| 12046848 | NAME ON FILE | EMAIL ON FILE |
| 12046848 | NAME ON FILE | EMAIL ON FILE |
| 12046430 | NAME ON FILE | EMAIL ON FILE |
| 12046851 | NAME ON FILE | EMAIL ON FILE |
| 12046850 | NAME ON FILE | EMAIL ON FILE |
| 12046690 | NAME ON FILE | EMAIL ON FILE |
| 12047546 | NAME ON FILE | EMAIL ON FILE |
| 12047175 | NAME ON FILE | EMAIL ON FILE |
| 12047337 | NAME ON FILE | EMAIL ON FILE |
| 12046831 | NAME ON FILE | EMAIL ON FILE |
| 12830370 | NAME ON FILE | EMAIL ON FILE |
| 12046891 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*

Case No. 22-10063 (SHL)

Exhibit A
Notice Party Service List
Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046937 | NAME ON FILE | EMAIL ON FILE |
| 12047536 | NAME ON FILE | EMAIL ON FILE |
| 12046971 | NAME ON FILE | EMAIL ON FILE |
| 12244723 | NAME ON FILE | EMAIL ON FILE |
| 12046824 | NAME ON FILE | EMAIL ON FILE |
| 12047231 | NAME ON FILE | EMAIL ON FILE |
| 12763664 | NAME ON FILE | EMAIL ON FILE |
| 12835421 | NAME ON FILE | EMAIL ON FILE |
| 12868939 | NAME ON FILE | EMAIL ON FILE |
| 12047434 | KRAKEN CUSTODIAL | EMAIL ON FILE |
| 12875503 | NAME ON FILE | EMAIL ON FILE |
| 12875503 | NAME ON FILE | EMAIL ON FILE |
| 12873589 | NAME ON FILE | EMAIL ON FILE |
| 12046854 | NAME ON FILE | EMAIL ON FILE |
| 12171239 | NAME ON FILE | EMAIL ON FILE |
| 12047537 | NAME ON FILE | EMAIL ON FILE |
| 12047084 | NAME ON FILE | EMAIL ON FILE |
| 12047519 | NAME ON FILE | EMAIL ON FILE |
| 12046607 | NAME ON FILE | EMAIL ON FILE |
| 12047030 | NAME ON FILE | EMAIL ON FILE |
| 12046857 | NAME ON FILE | EMAIL ON FILE |
| 12244960 | NAME ON FILE | EMAIL ON FILE |
| 12046757 | NAME ON FILE | EMAIL ON FILE |
| 12046290 | NAME ON FILE | EMAIL ON FILE |
| 12047179 | NAME ON FILE | EMAIL ON FILE |
| 12047217 | NAME ON FILE | EMAIL ON FILE |
| 12823922 | NAME ON FILE | EMAIL ON FILE |
| 12047382 | NAME ON FILE | EMAIL ON FILE |
| 12047275 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046732 | NAME ON FILE | EMAIL ON FILE |
| 12046292 | KYTE BROKING LIMITED | EMAIL ON FILE |
| 12046852 | NAME ON FILE | EMAIL ON FILE |
| 12171213 | NAME ON FILE | EMAIL ON FILE |
| 12242195 | NAME ON FILE | EMAIL ON FILE |
| 12046617 | NAME ON FILE | EMAIL ON FILE |
| 12046639 | NAME ON FILE | EMAIL ON FILE |
| 12046561 | NAME ON FILE | EMAIL ON FILE |
| 12046739 | NAME ON FILE | EMAIL ON FILE |
| 12046871 | NAME ON FILE | EMAIL ON FILE |
| 12047366 | NAME ON FILE | EMAIL ON FILE |
| 12046856 | NAME ON FILE | EMAIL ON FILE |
| 12242196 | NAME ON FILE | EMAIL ON FILE |
| 12242196 | NAME ON FILE | EMAIL ON FILE |
| 12046508 | NAME ON FILE | EMAIL ON FILE |
| 12873697 | NAME ON FILE | EMAIL ON FILE |
| 12046618 | NAME ON FILE | EMAIL ON FILE |
| 12046866 | NAME ON FILE | EMAIL ON FILE |
| 12046866 | NAME ON FILE | EMAIL ON FILE |
| 12046866 | NAME ON FILE | EMAIL ON FILE |
| 12046866 | NAME ON FILE | EMAIL ON FILE |
| 12046868 | NAME ON FILE | EMAIL ON FILE |
| 12046869 | NAME ON FILE | EMAIL ON FILE |
| 12046870 | NAME ON FILE | EMAIL ON FILE |
| 12855645 | NAME ON FILE | EMAIL ON FILE |
| 12242197 | NAME ON FILE | EMAIL ON FILE |
| 12830376 | NAME ON FILE | EMAIL ON FILE |
| 12242198 | NAME ON FILE | EMAIL ON FILE |
| 12242198 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047387 | NAME ON FILE | EMAIL ON FILE |
| 12046913 | NAME ON FILE | EMAIL ON FILE |
| 12046506 | NAME ON FILE | EMAIL ON FILE |
| 12046748 | NAME ON FILE | EMAIL ON FILE |
| 12046846 | NAME ON FILE | EMAIL ON FILE |
| 12046864 | NAME ON FILE | EMAIL ON FILE |
| 12047224 | NAME ON FILE | EMAIL ON FILE |
| 12047395 | NAME ON FILE | EMAIL ON FILE |
| 12875254 | NAME ON FILE | EMAIL ON FILE |
| 12046293 | NAME ON FILE | EMAIL ON FILE |
| 12046939 | NAME ON FILE | EMAIL ON FILE |
| 12171246 | NAME ON FILE | EMAIL ON FILE |
| 12242200 | NAME ON FILE | EMAIL ON FILE |
| 12242200 | NAME ON FILE | EMAIL ON FILE |
| 12047183 | NAME ON FILE | EMAIL ON FILE |
| 12171208 | NAME ON FILE | EMAIL ON FILE |
| 12242201 | NAME ON FILE | EMAIL ON FILE |
| 12046729 | NAME ON FILE | EMAIL ON FILE |
| 12046973 | NAME ON FILE | EMAIL ON FILE |
| 12242202 | NAME ON FILE | EMAIL ON FILE |
| 12242202 | NAME ON FILE | EMAIL ON FILE |
| 12047511 | NAME ON FILE | EMAIL ON FILE |
| 12046876 | NAME ON FILE | EMAIL ON FILE |
| 12046759 | NAME ON FILE | EMAIL ON FILE |
| 12648500 | NAME ON FILE | EMAIL ON FILE |
| 12862094 | NAME ON FILE | EMAIL ON FILE |
| 12242203 | NAME ON FILE | EMAIL ON FILE |
| 12827343 | NAME ON FILE | EMAIL ON FILE |
| 12242204 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12242204 | NAME ON FILE | EMAIL ON FILE |
| 12046877 | NAME ON FILE | EMAIL ON FILE |
| 12046878 | NAME ON FILE | EMAIL ON FILE |
| 12046878 | NAME ON FILE | EMAIL ON FILE |
| 12046878 | NAME ON FILE | EMAIL ON FILE |
| 12046295 | LIFEWORKS | EMAIL ON FILE |
| 12046880 | NAME ON FILE | EMAIL ON FILE |
| 12046787 | NAME ON FILE | EMAIL ON FILE |
| 12046298 | NAME ON FILE | EMAIL ON FILE |
| 12046810 | NAME ON FILE | EMAIL ON FILE |
| 12046881 | NAME ON FILE | EMAIL ON FILE |
| 12655906 | NAME ON FILE | EMAIL ON FILE |
| 12047414 | NAME ON FILE | EMAIL ON FILE |
| 12046883 | NAME ON FILE | EMAIL ON FILE |
| 12046884 | NAME ON FILE | EMAIL ON FILE |
| 12046676 | NAME ON FILE | EMAIL ON FILE |
| 12046885 | NAME ON FILE | EMAIL ON FILE |
| 12047581 | NAME ON FILE | EMAIL ON FILE |
| 12047599 | NAME ON FILE | EMAIL ON FILE |
| 12047562 | NAME ON FILE | EMAIL ON FILE |
| 12046849 | NAME ON FILE | EMAIL ON FILE |
| 12046886 | NAME ON FILE | EMAIL ON FILE |
| 12046886 | NAME ON FILE | EMAIL ON FILE |
| 12046509 | NAME ON FILE | EMAIL ON FILE |
| 12046888 | NAME ON FILE | EMAIL ON FILE |
| 12046743 | NAME ON FILE | EMAIL ON FILE |
| 12650361 | NAME ON FILE | EMAIL ON FILE |
| 12242205 | NAME ON FILE | EMAIL ON FILE |
| 12046432 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12762906 | NAME ON FILE | EMAIL ON FILE |
| 12046892 | NAME ON FILE | EMAIL ON FILE |
| 12046895 | NAME ON FILE | EMAIL ON FILE |
| 12046896 | NAME ON FILE | EMAIL ON FILE |
| 12046897 | NAME ON FILE | EMAIL ON FILE |
| 12046898 | NAME ON FILE | EMAIL ON FILE |
| 12171200 | LUNO AUSTRALIA PTY LTD | EMAIL ON FILE |
| 12046900 | NAME ON FILE | EMAIL ON FILE |
| 12046900 | NAME ON FILE | EMAIL ON FILE |
| 12046901 | NAME ON FILE | EMAIL ON FILE |
| 12046901 | NAME ON FILE | EMAIL ON FILE |
| 12046901 | NAME ON FILE | EMAIL ON FILE |
| 12046903 | NAME ON FILE | EMAIL ON FILE |
| 12046940 | NAME ON FILE | EMAIL ON FILE |
| 12822627 | NAME ON FILE | EMAIL ON FILE |
| 12830156 | NAME ON FILE | EMAIL ON FILE |
| 12830180 | NAME ON FILE | EMAIL ON FILE |
| 12046906 | NAME ON FILE | EMAIL ON FILE |
| 12046907 | NAME ON FILE | EMAIL ON FILE |
| 12046907 | NAME ON FILE | EMAIL ON FILE |
| 12046941 | NAME ON FILE | EMAIL ON FILE |
| 12046908 | NAME ON FILE | EMAIL ON FILE |
| 12046588 | NAME ON FILE | EMAIL ON FILE |
| 12242206 | NAME ON FILE | EMAIL ON FILE |
| 12242206 | NAME ON FILE | EMAIL ON FILE |
| 12046501 | NAME ON FILE | EMAIL ON FILE |
| 12046723 | NAME ON FILE | EMAIL ON FILE |
| 12763647 | NAME ON FILE | EMAIL ON FILE |
| 12047093 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046497 | NAME ON FILE | EMAIL ON FILE |
| 12047251 | NAME ON FILE | EMAIL ON FILE |
| 12046818 | NAME ON FILE | EMAIL ON FILE |
| 12047435 | NAME ON FILE | EMAIL ON FILE |
| 12096023 | NAME ON FILE | EMAIL ON FILE |
| 12819007 | NAME ON FILE | EMAIL ON FILE |
| 12242207 | NAME ON FILE | EMAIL ON FILE |
| 12242207 | NAME ON FILE | EMAIL ON FILE |
| 12244650 | NAME ON FILE | EMAIL ON FILE |
| 12047166 | NAME ON FILE | EMAIL ON FILE |
| 12046926 | NAME ON FILE | EMAIL ON FILE |
| 12046873 | NAME ON FILE | EMAIL ON FILE |
| 12046396 | NAME ON FILE | EMAIL ON FILE |
| 12242064 | NAME ON FILE | EMAIL ON FILE |
| 12046930 | NAME ON FILE | EMAIL ON FILE |
| 12047216 | NAME ON FILE | EMAIL ON FILE |
| 12046822 | NAME ON FILE | EMAIL ON FILE |
| 12047512 | NAME ON FILE | EMAIL ON FILE |
| 12047302 | NAME ON FILE | EMAIL ON FILE |
| 12046713 | NAME ON FILE | EMAIL ON FILE |
| 12046931 | NAME ON FILE | EMAIL ON FILE |
| 12046974 | NAME ON FILE | EMAIL ON FILE |
| 12046932 | NAME ON FILE | EMAIL ON FILE |
| 12046932 | NAME ON FILE | EMAIL ON FILE |
| 12046932 | NAME ON FILE | EMAIL ON FILE |
| 12046932 | NAME ON FILE | EMAIL ON FILE |
| 12046932 | NAME ON FILE | EMAIL ON FILE |
| 12654953 | NAME ON FILE | EMAIL ON FILE |
| 12046493 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047538 | NAME ON FILE | EMAIL ON FILE |
| 12047024 | NAME ON FILE | EMAIL ON FILE |
| 12047189 | NAME ON FILE | EMAIL ON FILE |
| 12760930 | NAME ON FILE | EMAIL ON FILE |
| 12652094 | NAME ON FILE | EMAIL ON FILE |
| 12046740 | NAME ON FILE | EMAIL ON FILE |
| 12835374 | NAME ON FILE | EMAIL ON FILE |
| 12047651 | NAME ON FILE | EMAIL ON FILE |
| 12649484 | NAME ON FILE | EMAIL ON FILE |
| 12854908 | NAME ON FILE | EMAIL ON FILE |
| 12047320 | NAME ON FILE | EMAIL ON FILE |
| 12046555 | NAME ON FILE | EMAIL ON FILE |
| 12870264 | NAME ON FILE | EMAIL ON FILE |
| 12829110 | NAME ON FILE | EMAIL ON FILE |
| 12829110 | NAME ON FILE | EMAIL ON FILE |
| 12652085 | NAME ON FILE | EMAIL ON FILE |
| 12242208 | NAME ON FILE | EMAIL ON FILE |
| 12242209 | NAME ON FILE | EMAIL ON FILE |
| 12242209 | NAME ON FILE | EMAIL ON FILE |
| 12242210 | NAME ON FILE | EMAIL ON FILE |
| 12242210 | NAME ON FILE | EMAIL ON FILE |
| 12047202 | NAME ON FILE | EMAIL ON FILE |
| 12047253 | NAME ON FILE | EMAIL ON FILE |
| 12047297 | NAME ON FILE | EMAIL ON FILE |
| 12047582 | NAME ON FILE | EMAIL ON FILE |
| 12046950 | NAME ON FILE | EMAIL ON FILE |
| 12046952 | NAME ON FILE | EMAIL ON FILE |
| 12046954 | NAME ON FILE | EMAIL ON FILE |
| 12046955 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046955 | NAME ON FILE | EMAIL ON FILE |
| 12046955 | NAME ON FILE | EMAIL ON FILE |
| 12046955 | NAME ON FILE | EMAIL ON FILE |
| 12046955 | NAME ON FILE | EMAIL ON FILE |
| 12046955 | NAME ON FILE | EMAIL ON FILE |
| 12046956 | NAME ON FILE | EMAIL ON FILE |
| 12046956 | NAME ON FILE | EMAIL ON FILE |
| 12046956 | NAME ON FILE | EMAIL ON FILE |
| 12046958 | NAME ON FILE | EMAIL ON FILE |
| 12046959 | NAME ON FILE | EMAIL ON FILE |
| 12046959 | NAME ON FILE | EMAIL ON FILE |
| 12046959 | NAME ON FILE | EMAIL ON FILE |
| 12046961 | METROPOLITAN  COMMERCIAL BANK | EMAIL ON FILE |
| 12046960 | METROPOLITAN  COMMERCIAL BANK | EMAIL ON FILE |
| 12830361 | NAME ON FILE | EMAIL ON FILE |
| 12047058 | NAME ON FILE | EMAIL ON FILE |
| 12047059 | NAME ON FILE | EMAIL ON FILE |
| 12251685 | NAME ON FILE | EMAIL ON FILE |
| 12245152 | NAME ON FILE | EMAIL ON FILE |
| 12046985 | NAME ON FILE | EMAIL ON FILE |
| 12046310 | NAME ON FILE | EMAIL ON FILE |
| 12242211 | NAME ON FILE | EMAIL ON FILE |
| 12242211 | NAME ON FILE | EMAIL ON FILE |
| 12862040 | NAME ON FILE | EMAIL ON FILE |
| 12046986 | NAME ON FILE | EMAIL ON FILE |
| 12046986 | NAME ON FILE | EMAIL ON FILE |
| 12046986 | NAME ON FILE | EMAIL ON FILE |
| 12046986 | NAME ON FILE | EMAIL ON FILE |
| 12046986 | NAME ON FILE | EMAIL ON FILE |

Exhibit A
Notice Party Service List
Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12242212 | NAME ON FILE | EMAIL ON FILE |
| 12242212 | NAME ON FILE | EMAIL ON FILE |
| 12242213 | NAME ON FILE | EMAIL ON FILE |
| 12242213 | NAME ON FILE | EMAIL ON FILE |
| 12829517 | NAME ON FILE | EMAIL ON FILE |
| 12046989 | NAME ON FILE | EMAIL ON FILE |
| 12046989 | NAME ON FILE | EMAIL ON FILE |
| 12046990 | NAME ON FILE | EMAIL ON FILE |
| 12245862 | NAME ON FILE | EMAIL ON FILE |
| 12245244 | NAME ON FILE | EMAIL ON FILE |
| 12046991 | NAME ON FILE | EMAIL ON FILE |
| 12649379 | NAME ON FILE | EMAIL ON FILE |
| 12046893 | NAME ON FILE | EMAIL ON FILE |
| 12872118 | NAME ON FILE | EMAIL ON FILE |
| 12046992 | NAME ON FILE | EMAIL ON FILE |
| 12046993 | NAME ON FILE | EMAIL ON FILE |
| 12046993 | NAME ON FILE | EMAIL ON FILE |
| 12046994 | NAME ON FILE | EMAIL ON FILE |
| 12047539 | NAME ON FILE | EMAIL ON FILE |
| 12830380 | NAME ON FILE | EMAIL ON FILE |
| 12171240 | NAME ON FILE | EMAIL ON FILE |
| 12871929 | NAME ON FILE | EMAIL ON FILE |
| 12871929 | NAME ON FILE | EMAIL ON FILE |
| 12871899 | NAME ON FILE | EMAIL ON FILE |
| 12871687 | NAME ON FILE | EMAIL ON FILE |
| 12764630 | NAME ON FILE | EMAIL ON FILE |
| 12046510 | NAME ON FILE | EMAIL ON FILE |
| 12869081 | NAME ON FILE | EMAIL ON FILE |
| 12046782 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046983 | NAME ON FILE | EMAIL ON FILE |
| 12869075 | NAME ON FILE | EMAIL ON FILE |
| 12046320 | MSIG | EMAIL ON FILE |
| 12046321 | MSIG | EMAIL ON FILE |
| 12046319 | MSIG | EMAIL ON FILE |
| 12047247 | NAME ON FILE | EMAIL ON FILE |
| 12867493 | NAME ON FILE | EMAIL ON FILE |
| 12242214 | NAME ON FILE | EMAIL ON FILE |
| 12242214 | NAME ON FILE | EMAIL ON FILE |
| 12046557 | NAME ON FILE | EMAIL ON FILE |
| 12046998 | NAME ON FILE | EMAIL ON FILE |
| 12046999 | NAME ON FILE | EMAIL ON FILE |
| 12047000 | NAME ON FILE | EMAIL ON FILE |
| 12047001 | NAME ON FILE | EMAIL ON FILE |
| 12047002 | NAME ON FILE | EMAIL ON FILE |
| 12047003 | NAME ON FILE | EMAIL ON FILE |
| 12868346 | NAME ON FILE | EMAIL ON FILE |
| 12047004 | NAME ON FILE | EMAIL ON FILE |
| 12242215 | NAME ON FILE | EMAIL ON FILE |
| 12046918 | NAME ON FILE | EMAIL ON FILE |
| 12242216 | NAME ON FILE | EMAIL ON FILE |
| 12242216 | NAME ON FILE | EMAIL ON FILE |
| 12047006 | NAME ON FILE | EMAIL ON FILE |
| 12047198 | NAME ON FILE | EMAIL ON FILE |
| 12047076 | NAME ON FILE | EMAIL ON FILE |
| 12046323 | NAME ON FILE | EMAIL ON FILE |
| 12047009 | NAME ON FILE | EMAIL ON FILE |
| 12047009 | NAME ON FILE | EMAIL ON FILE |
| 12646352 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047005 | NAME ON FILE | EMAIL ON FILE |
| 12171220 | NAME ON FILE | EMAIL ON FILE |
| 12046324 | NAME ON FILE | EMAIL ON FILE |
| 12047013 | NAME ON FILE | EMAIL ON FILE |
| 12648596 | NAME ON FILE | EMAIL ON FILE |
| 12047014 | NAME ON FILE | EMAIL ON FILE |
| 12047014 | NAME ON FILE | EMAIL ON FILE |
| 12047014 | NAME ON FILE | EMAIL ON FILE |
| 12242217 | NAME ON FILE | EMAIL ON FILE |
| 12047655 | NAME ON FILE | EMAIL ON FILE |
| 12047027 | NAME ON FILE | EMAIL ON FILE |
| 12171221 | NAME ON FILE | EMAIL ON FILE |
| 12046862 | NAME ON FILE | EMAIL ON FILE |
| 12242218 | NAME ON FILE | EMAIL ON FILE |
| 12242218 | NAME ON FILE | EMAIL ON FILE |
| 12869227 | NAME ON FILE | EMAIL ON FILE |
| 12242219 | NAME ON FILE | EMAIL ON FILE |
| 12242219 | NAME ON FILE | EMAIL ON FILE |
| 12868317 | NAME ON FILE | EMAIL ON FILE |
| 12872599 | NAME ON FILE | EMAIL ON FILE |
| 12046473 | NAME ON FILE | EMAIL ON FILE |
| 12047020 | NAME ON FILE | EMAIL ON FILE |
| 12047020 | NAME ON FILE | EMAIL ON FILE |
| 12171242 | NAME ON FILE | EMAIL ON FILE |
| 12047021 | NAME ON FILE | EMAIL ON FILE |
| 12650908 | NAME ON FILE | EMAIL ON FILE |
| 12871657 | NAME ON FILE | EMAIL ON FILE |
| 12047349 | NAME ON FILE | EMAIL ON FILE |
| 12046788 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12819902 | NAME ON FILE | EMAIL ON FILE |
| 12047025 | NAME ON FILE | EMAIL ON FILE |
| 12047026 | NAME ON FILE | EMAIL ON FILE |
| 12047026 | NAME ON FILE | EMAIL ON FILE |
| 12046766 | NAME ON FILE | EMAIL ON FILE |
| 12047168 | NAME ON FILE | EMAIL ON FILE |
| 12047031 | NAME ON FILE | EMAIL ON FILE |
| 12242220 | NAME ON FILE | EMAIL ON FILE |
| 12242220 | NAME ON FILE | EMAIL ON FILE |
| 12242221 | NAME ON FILE | EMAIL ON FILE |
| 12242221 | NAME ON FILE | EMAIL ON FILE |
| 12047032 | NAME ON FILE | EMAIL ON FILE |
| 12650605 | NAME ON FILE | EMAIL ON FILE |
| 12047034 | NAME ON FILE | EMAIL ON FILE |
| 12242222 | NAME ON FILE | EMAIL ON FILE |
| 12242222 | NAME ON FILE | EMAIL ON FILE |
| 12047037 | NAME ON FILE | EMAIL ON FILE |
| 12046924 | NAME ON FILE | EMAIL ON FILE |
| 12047242 | NAME ON FILE | EMAIL ON FILE |
| 12047038 | NAME ON FILE | EMAIL ON FILE |
| 12047038 | NAME ON FILE | EMAIL ON FILE |
| 12047039 | NAME ON FILE | EMAIL ON FILE |
| 12047040 | NAME ON FILE | EMAIL ON FILE |
| 12047041 | NAME ON FILE | EMAIL ON FILE |
| 12857908 | NAME ON FILE | EMAIL ON FILE |
| 12047041 | NAME ON FILE | EMAIL ON FILE |
| 12047042 | NAME ON FILE | EMAIL ON FILE |
| 12047042 | NAME ON FILE | EMAIL ON FILE |
| 12047043 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047044 | NAME ON FILE | EMAIL ON FILE |
| 12046925 | NAME ON FILE | EMAIL ON FILE |
| 12191770 | NAME ON FILE | EMAIL ON FILE |
| 12191770 | NAME ON FILE | EMAIL ON FILE |
| 12191770 | NAME ON FILE | EMAIL ON FILE |
| 12046431 | NAME ON FILE | EMAIL ON FILE |
| 12242223 | NAME ON FILE | EMAIL ON FILE |
| 12242223 | NAME ON FILE | EMAIL ON FILE |
| 12047046 | NAME ON FILE | EMAIL ON FILE |
| 12047047 | NAME ON FILE | EMAIL ON FILE |
| 12047047 | NAME ON FILE | EMAIL ON FILE |
| 12046741 | NAME ON FILE | EMAIL ON FILE |
| 12046484 | NAME ON FILE | EMAIL ON FILE |
| 12648464 | NAME ON FILE | EMAIL ON FILE |
| 12047049 | NAME ON FILE | EMAIL ON FILE |
| 12047049 | NAME ON FILE | EMAIL ON FILE |
| 12047049 | NAME ON FILE | EMAIL ON FILE |
| 12047050 | NAME ON FILE | EMAIL ON FILE |
| 12047051 | NAME ON FILE | EMAIL ON FILE |
| 12047051 | NAME ON FILE | EMAIL ON FILE |
| 12244646 | NAME ON FILE | EMAIL ON FILE |
| 12047052 | NAME ON FILE | EMAIL ON FILE |
| 12826988 | NAME ON FILE | EMAIL ON FILE |
| 12654868 | NAME ON FILE | EMAIL ON FILE |
| 12046511 | NAME ON FILE | EMAIL ON FILE |
| 12047232 | NAME ON FILE | EMAIL ON FILE |
| 12047011 | NAME ON FILE | EMAIL ON FILE |
| 12047055 | NAME ON FILE | EMAIL ON FILE |
| 12651047 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047057 | NAME ON FILE | EMAIL ON FILE |
| 12047061 | NAME ON FILE | EMAIL ON FILE |
| 12047016 | NAME ON FILE | EMAIL ON FILE |
| 12046975 | NAME ON FILE | EMAIL ON FILE |
| 12046802 | NAME ON FILE | EMAIL ON FILE |
| 12046865 | NAME ON FILE | EMAIL ON FILE |
| 12047160 | NAME ON FILE | EMAIL ON FILE |
| 12047062 | NAME ON FILE | EMAIL ON FILE |
| 12047062 | NAME ON FILE | EMAIL ON FILE |
| 12047063 | NAME ON FILE | EMAIL ON FILE |
| 12047064 | NAME ON FILE | EMAIL ON FILE |
| 12047065 | NAME ON FILE | EMAIL ON FILE |
| 12047066 | NAME ON FILE | EMAIL ON FILE |
| 12047066 | NAME ON FILE | EMAIL ON FILE |
| 12047067 | NAME ON FILE | EMAIL ON FILE |
| 12047068 | NAME ON FILE | EMAIL ON FILE |
| 12047068 | NAME ON FILE | EMAIL ON FILE |
| 12047069 | NAME ON FILE | EMAIL ON FILE |
| 12047070 | NAME ON FILE | EMAIL ON FILE |
| 12047070 | NAME ON FILE | EMAIL ON FILE |
| 12649790 | NAME ON FILE | EMAIL ON FILE |
| 12046490 | NAME ON FILE | EMAIL ON FILE |
| 12047421 | NAME ON FILE | EMAIL ON FILE |
| 12242224 | NAME ON FILE | EMAIL ON FILE |
| 12242224 | NAME ON FILE | EMAIL ON FILE |
| 12046691 | NAME ON FILE | EMAIL ON FILE |
| 12649870 | NAME ON FILE | EMAIL ON FILE |
| 12046987 | NAME ON FILE | EMAIL ON FILE |
| 12096029 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047237 | NAME ON FILE | EMAIL ON FILE |
| 12047360 | NAME ON FILE | EMAIL ON FILE |
| 12047250 | NAME ON FILE | EMAIL ON FILE |
| 12171243 | NAME ON FILE | EMAIL ON FILE |
| 12242225 | NAME ON FILE | EMAIL ON FILE |
| 12242225 | NAME ON FILE | EMAIL ON FILE |
| 12242226 | NAME ON FILE | EMAIL ON FILE |
| 12242226 | NAME ON FILE | EMAIL ON FILE |
| 12046413 | NAME ON FILE | EMAIL ON FILE |
| 12047078 | NAME ON FILE | EMAIL ON FILE |
| 12047079 | NAME ON FILE | EMAIL ON FILE |
| 12047080 | NAME ON FILE | EMAIL ON FILE |
| 12656361 | NAME ON FILE | EMAIL ON FILE |
| 12191787 | NAME ON FILE | EMAIL ON FILE |
| 12045389 | NAME ON FILE | EMAIL ON FILE |
| 12864323 | NAME ON FILE | EMAIL ON FILE |
| 12047609 | NAME ON FILE | EMAIL ON FILE |
| 12047082 | NAME ON FILE | EMAIL ON FILE |
| 12047082 | NAME ON FILE | EMAIL ON FILE |
| 12046466 | NAME ON FILE | EMAIL ON FILE |
| 12047087 | NAME ON FILE | EMAIL ON FILE |
| 12046410 | NAME ON FILE | EMAIL ON FILE |
| 12242227 | NAME ON FILE | EMAIL ON FILE |
| 12242227 | NAME ON FILE | EMAIL ON FILE |
| 12762456 | NAME ON FILE | EMAIL ON FILE |
| 12764918 | NAME ON FILE | EMAIL ON FILE |
| 12047088 | NAME ON FILE | EMAIL ON FILE |
| 12165072 | NAME ON FILE | EMAIL ON FILE |
| 12161627 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047089 | NAME ON FILE | EMAIL ON FILE |
| 12047090 | NAME ON FILE | EMAIL ON FILE |
| 12047091 | NAME ON FILE | EMAIL ON FILE |
| 12047091 | NAME ON FILE | EMAIL ON FILE |
| 12047096 | NAME ON FILE | EMAIL ON FILE |
| 12046820 | NAME ON FILE | EMAIL ON FILE |
| 12047388 | NAME ON FILE | EMAIL ON FILE |
| 12046778 | NAME ON FILE | EMAIL ON FILE |
| 12242228 | NAME ON FILE | EMAIL ON FILE |
| 12242228 | NAME ON FILE | EMAIL ON FILE |
| 12186116 | NAME ON FILE | EMAIL ON FILE |
| 12047098 | NAME ON FILE | EMAIL ON FILE |
| 12173893 | NAME ON FILE | EMAIL ON FILE |
| 12242229 | NAME ON FILE | EMAIL ON FILE |
| 12242229 | NAME ON FILE | EMAIL ON FILE |
| 12047028 | NAME ON FILE | EMAIL ON FILE |
| 12047099 | NAME ON FILE | EMAIL ON FILE |
| 12047099 | NAME ON FILE | EMAIL ON FILE |
| 12047100 | NAME ON FILE | EMAIL ON FILE |
| 12047540 | NAME ON FILE | EMAIL ON FILE |
| 12047418 | NAME ON FILE | EMAIL ON FILE |
| 12047101 | NAME ON FILE | EMAIL ON FILE |
| 12047101 | NAME ON FILE | EMAIL ON FILE |
| 12047102 | NAME ON FILE | EMAIL ON FILE |
| 12047102 | NAME ON FILE | EMAIL ON FILE |
| 12047102 | NAME ON FILE | EMAIL ON FILE |
| 12047103 | NAME ON FILE | EMAIL ON FILE |
| 12763275 | NAME ON FILE | EMAIL ON FILE |
| 12047104 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047105 | NAME ON FILE | EMAIL ON FILE |
| 12047107 | NAME ON FILE | EMAIL ON FILE |
| 12047108 | NAME ON FILE | EMAIL ON FILE |
| 12047109 | NAME ON FILE | EMAIL ON FILE |
| 12047656 | NAME ON FILE | EMAIL ON FILE |
| 12242230 | NAME ON FILE | EMAIL ON FILE |
| 12242230 | NAME ON FILE | EMAIL ON FILE |
| 12047110 | NAME ON FILE | EMAIL ON FILE |
| 12047110 | NAME ON FILE | EMAIL ON FILE |
| 12047110 | NAME ON FILE | EMAIL ON FILE |
| 12047110 | NAME ON FILE | EMAIL ON FILE |
| 12047111 | NAME ON FILE | EMAIL ON FILE |
| 12047541 | NAME ON FILE | EMAIL ON FILE |
| 12046641 | NAME ON FILE | EMAIL ON FILE |
| 12047203 | NAME ON FILE | EMAIL ON FILE |
| 12047112 | NAME ON FILE | EMAIL ON FILE |
| 12047113 | NAME ON FILE | EMAIL ON FILE |
| 12046859 | NAME ON FILE | EMAIL ON FILE |
| 12047115 | NAME ON FILE | EMAIL ON FILE |
| 12047116 | NAME ON FILE | EMAIL ON FILE |
| 12873559 | NAME ON FILE | EMAIL ON FILE |
| 12046976 | NAME ON FILE | EMAIL ON FILE |
| 12046976 | NAME ON FILE | EMAIL ON FILE |
| 12047118 | NAME ON FILE | EMAIL ON FILE |
| 12047118 | NAME ON FILE | EMAIL ON FILE |
| 12047119 | NAME ON FILE | EMAIL ON FILE |
| 12047120 | NAME ON FILE | EMAIL ON FILE |
| 12047120 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047120 | NAME ON FILE | EMAIL ON FILE |
| 12047121 | NAME ON FILE | EMAIL ON FILE |
| 12108970 | NAME ON FILE | EMAIL ON FILE |
| 12047122 | NAME ON FILE | EMAIL ON FILE |
| 12096086 | NAME ON FILE | EMAIL ON FILE |
| 12047123 | NAME ON FILE | EMAIL ON FILE |
| 12047123 | NAME ON FILE | EMAIL ON FILE |
| 12046834 | NAME ON FILE | EMAIL ON FILE |
| 12835577 | NAME ON FILE | EMAIL ON FILE |
| 12047125 | NAME ON FILE | EMAIL ON FILE |
| 12047125 | NAME ON FILE | EMAIL ON FILE |
| 12047125 | NAME ON FILE | EMAIL ON FILE |
| 12046936 | NAME ON FILE | EMAIL ON FILE |
| 12244706 | NAME ON FILE | EMAIL ON FILE |
| 12046957 | NAME ON FILE | EMAIL ON FILE |
| 12047129 | NAME ON FILE | EMAIL ON FILE |
| 12047130 | NAME ON FILE | EMAIL ON FILE |
| 12047133 | NAME ON FILE | EMAIL ON FILE |
| 12047133 | NAME ON FILE | EMAIL ON FILE |
| 12047133 | NAME ON FILE | EMAIL ON FILE |
| 12047133 | NAME ON FILE | EMAIL ON FILE |
| 12047133 | NAME ON FILE | EMAIL ON FILE |
| 12047133 | NAME ON FILE | EMAIL ON FILE |
| 12047133 | NAME ON FILE | EMAIL ON FILE |
| 12046855 | NAME ON FILE | EMAIL ON FILE |
| 12046855 | NAME ON FILE | EMAIL ON FILE |
| 12047523 | NAME ON FILE | EMAIL ON FILE |
| 12875404 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047204 | NAME ON FILE | EMAIL ON FILE |
| 12867463 | NAME ON FILE | EMAIL ON FILE |
| 12242232 | NAME ON FILE | EMAIL ON FILE |
| 12047499 | NAME ON FILE | EMAIL ON FILE |
| 12047271 | NAME ON FILE | EMAIL ON FILE |
| 12046494 | NAME ON FILE | EMAIL ON FILE |
| 12047142 | NAME ON FILE | EMAIL ON FILE |
| 12047142 | NAME ON FILE | EMAIL ON FILE |
| 12047143 | NAME ON FILE | EMAIL ON FILE |
| 12047144 | NAME ON FILE | EMAIL ON FILE |
| 12047144 | NAME ON FILE | EMAIL ON FILE |
| 12047144 | NAME ON FILE | EMAIL ON FILE |
| 12047144 | NAME ON FILE | EMAIL ON FILE |
| 12047144 | NAME ON FILE | EMAIL ON FILE |
| 12047144 | NAME ON FILE | EMAIL ON FILE |
| 12867514 | NAME ON FILE | EMAIL ON FILE |
| 12047145 | NAME ON FILE | EMAIL ON FILE |
| 12046919 | NAME ON FILE | EMAIL ON FILE |
| 12047148 | NAME ON FILE | EMAIL ON FILE |
| 12047149 | NAME ON FILE | EMAIL ON FILE |
| 12047150 | NAME ON FILE | EMAIL ON FILE |
| 12251709 | NAME ON FILE | EMAIL ON FILE |
| 12651083 | NAME ON FILE | EMAIL ON FILE |
| 12047151 | NAME ON FILE | EMAIL ON FILE |
| 12047151 | NAME ON FILE | EMAIL ON FILE |
| 12047151 | NAME ON FILE | EMAIL ON FILE |
| 12047152 | NAME ON FILE | EMAIL ON FILE |
| 12868874 | NAME ON FILE | EMAIL ON FILE |
| 12242233 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12242233 | NAME ON FILE | EMAIL ON FILE |
| 12868746 | NAME ON FILE | EMAIL ON FILE |
| 12047159 | NAME ON FILE | EMAIL ON FILE |
| 12047159 | NAME ON FILE | EMAIL ON FILE |
| 12047136 | NAME ON FILE | EMAIL ON FILE |
| 12046742 | NAME ON FILE | EMAIL ON FILE |
| 12046737 | NAME ON FILE | EMAIL ON FILE |
| 12046512 | NAME ON FILE | EMAIL ON FILE |
| 12827552 | NAME ON FILE | EMAIL ON FILE |
| 12046568 | NAME ON FILE | EMAIL ON FILE |
| 12046793 | NAME ON FILE | EMAIL ON FILE |
| 12047308 | NAME ON FILE | EMAIL ON FILE |
| 12245170 | NAME ON FILE | EMAIL ON FILE |
| 12761349 | NAME ON FILE | EMAIL ON FILE |
| 12656358 | NAME ON FILE | EMAIL ON FILE |
| 12655036 | NAME ON FILE | EMAIL ON FILE |
| 12046474 | NAME ON FILE | EMAIL ON FILE |
| 12046702 | NAME ON FILE | EMAIL ON FILE |
| 12047171 | NAME ON FILE | EMAIL ON FILE |
| 12246024 | NAME ON FILE | EMAIL ON FILE |
| 12047199 | NAME ON FILE | EMAIL ON FILE |
| 12047169 | NAME ON FILE | EMAIL ON FILE |
| 12047170 | NAME ON FILE | EMAIL ON FILE |
| 12856435 | NAME ON FILE | EMAIL ON FILE |
| 12242234 | NAME ON FILE | EMAIL ON FILE |
| 12824380 | NAME ON FILE | EMAIL ON FILE |
| 12047353 | NAME ON FILE | EMAIL ON FILE |
| 12046564 | NAME ON FILE | EMAIL ON FILE |
| 12868923 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047177 | NAME ON FILE | EMAIL ON FILE |
| 12047178 | NAME ON FILE | EMAIL ON FILE |
| 12047178 | NAME ON FILE | EMAIL ON FILE |
| 12046789 | NAME ON FILE | EMAIL ON FILE |
| 12046458 | NAME ON FILE | EMAIL ON FILE |
| 12046419 | NAME ON FILE | EMAIL ON FILE |
| 12242235 | NAME ON FILE | EMAIL ON FILE |
| 12242235 | NAME ON FILE | EMAIL ON FILE |
| 12244605 | NAME ON FILE | EMAIL ON FILE |
| 12872428 | NAME ON FILE | EMAIL ON FILE |
| 12047182 | NAME ON FILE | EMAIL ON FILE |
| 12242236 | NAME ON FILE | EMAIL ON FILE |
| 12242236 | NAME ON FILE | EMAIL ON FILE |
| 12875414 | NAME ON FILE | EMAIL ON FILE |
| 12873419 | NAME ON FILE | EMAIL ON FILE |
| 12046598 | NAME ON FILE | EMAIL ON FILE |
| 12872239 | NAME ON FILE | EMAIL ON FILE |
| 12170788 | NAME ON FILE | EMAIL ON FILE |
| 12245248 | NAME ON FILE | EMAIL ON FILE |
| 12047188 | NAME ON FILE | EMAIL ON FILE |
| 12047190 | NAME ON FILE | EMAIL ON FILE |
| 12047008 | NAME ON FILE | EMAIL ON FILE |
| 12855095 | NAME ON FILE | EMAIL ON FILE |
| 12047192 | NAME ON FILE | EMAIL ON FILE |
| 12047192 | NAME ON FILE | EMAIL ON FILE |
| 12047192 | NAME ON FILE | EMAIL ON FILE |
| 12047193 | NAME ON FILE | EMAIL ON FILE |
| 12046832 | NAME ON FILE | EMAIL ON FILE |
| 12047194 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047323 | NAME ON FILE | EMAIL ON FILE |
| 12047248 | NAME ON FILE | EMAIL ON FILE |
| 12046863 | NAME ON FILE | EMAIL ON FILE |
| 12047196 | NAME ON FILE | EMAIL ON FILE |
| 12047196 | NAME ON FILE | EMAIL ON FILE |
| 12047196 | NAME ON FILE | EMAIL ON FILE |
| 12047196 | NAME ON FILE | EMAIL ON FILE |
| 12047196 | NAME ON FILE | EMAIL ON FILE |
| 12047196 | NAME ON FILE | EMAIL ON FILE |
| 12047196 | NAME ON FILE | EMAIL ON FILE |
| 12046678 | NAME ON FILE | EMAIL ON FILE |
| 12046420 | NAME ON FILE | EMAIL ON FILE |
| 12047257 | NAME ON FILE | EMAIL ON FILE |
| 12649456 | NAME ON FILE | EMAIL ON FILE |
| 12242237 | NAME ON FILE | EMAIL ON FILE |
| 12242237 | NAME ON FILE | EMAIL ON FILE |
| 12046664 | NAME ON FILE | EMAIL ON FILE |
| 12835396 | NAME ON FILE | EMAIL ON FILE |
| 12046495 | NAME ON FILE | EMAIL ON FILE |
| 12243915 | NAME ON FILE | EMAIL ON FILE |
| 12046806 | NAME ON FILE | EMAIL ON FILE |
| 12047132 | NAME ON FILE | EMAIL ON FILE |
| 12046874 | NAME ON FILE | EMAIL ON FILE |
| 12764389 | NAME ON FILE | EMAIL ON FILE |
| 12047205 | NAME ON FILE | EMAIL ON FILE |
| 12047205 | NAME ON FILE | EMAIL ON FILE |
| 12651049 | NAME ON FILE | EMAIL ON FILE |
| 12047573 | NAME ON FILE | EMAIL ON FILE |
| 12047206 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047206 | NAME ON FILE | EMAIL ON FILE |
| 12047206 | NAME ON FILE | EMAIL ON FILE |
| 12047592 | NAME ON FILE | EMAIL ON FILE |
| 12242238 | NAME ON FILE | EMAIL ON FILE |
| 12242238 | NAME ON FILE | EMAIL ON FILE |
| 12242239 | NAME ON FILE | EMAIL ON FILE |
| 12242239 | NAME ON FILE | EMAIL ON FILE |
| 12046669 | NAME ON FILE | EMAIL ON FILE |
| 12047085 | NAME ON FILE | EMAIL ON FILE |
| 12047085 | NAME ON FILE | EMAIL ON FILE |
| 12823203 | NAME ON FILE | EMAIL ON FILE |
| 12823300 | NAME ON FILE | EMAIL ON FILE |
| 12830162 | NAME ON FILE | EMAIL ON FILE |
| 12047114 | NAME ON FILE | EMAIL ON FILE |
| 12873515 | NAME ON FILE | EMAIL ON FILE |
| 12047210 | NAME ON FILE | EMAIL ON FILE |
| 12047211 | NAME ON FILE | EMAIL ON FILE |
| 12047213 | NAME ON FILE | EMAIL ON FILE |
| 12047140 | NAME ON FILE | EMAIL ON FILE |
| 12047135 | NAME ON FILE | EMAIL ON FILE |
| 12047603 | NAME ON FILE | EMAIL ON FILE |
| 12046422 | NAME ON FILE | EMAIL ON FILE |
| 12046942 | NAME ON FILE | EMAIL ON FILE |
| 12047184 | NAME ON FILE | EMAIL ON FILE |
| 12046749 | NAME ON FILE | EMAIL ON FILE |
| 12047500 | NAME ON FILE | EMAIL ON FILE |
| 12242240 | NAME ON FILE | EMAIL ON FILE |
| 12242240 | NAME ON FILE | EMAIL ON FILE |
| 12047215 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*

Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046797 | NAME ON FILE | EMAIL ON FILE |
| 12242241 | NAME ON FILE | EMAIL ON FILE |
| 12242241 | NAME ON FILE | EMAIL ON FILE |
| 12047545 | NAME ON FILE | EMAIL ON FILE |
| 12244967 | NAME ON FILE | EMAIL ON FILE |
| 12047221 | NAME ON FILE | EMAIL ON FILE |
| 12047220 | SIGNATURE BANK | EMAIL ON FILE |
| 12047219 | SIGNATURE BANK | EMAIL ON FILE |
| 12047219 | SIGNATURE BANK | EMAIL ON FILE |
| 12047223 | NAME ON FILE | EMAIL ON FILE |
| 12047223 | NAME ON FILE | EMAIL ON FILE |
| 12047528 | NAME ON FILE | EMAIL ON FILE |
| 12875398 | NAME ON FILE | EMAIL ON FILE |
| 12875399 | NAME ON FILE | EMAIL ON FILE |
| 12047226 | SILVERGATE BANK | EMAIL ON FILE |
| 12047225 | SILVERGATE BANK | EMAIL ON FILE |
| 12047225 | SILVERGATE BANK | EMAIL ON FILE |
| 12047225 | SILVERGATE BANK | EMAIL ON FILE |
| 12047225 | SILVERGATE BANK | EMAIL ON FILE |
| 12047225 | SILVERGATE BANK | EMAIL ON FILE |
| 12047225 | SILVERGATE BANK | EMAIL ON FILE |
| 12046730 | NAME ON FILE | EMAIL ON FILE |
| 12242242 | NAME ON FILE | EMAIL ON FILE |
| 12242242 | NAME ON FILE | EMAIL ON FILE |
| 12046894 | NAME ON FILE | EMAIL ON FILE |
| 12242243 | NAME ON FILE | EMAIL ON FILE |
| 12242243 | NAME ON FILE | EMAIL ON FILE |
| 12047597 | NAME ON FILE | EMAIL ON FILE |
| 12046354 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047352 | NAME ON FILE | EMAIL ON FILE |
| 12047233 | NAME ON FILE | EMAIL ON FILE |
| 12046943 | NAME ON FILE | EMAIL ON FILE |
| 12047620 | NAME ON FILE | EMAIL ON FILE |
| 12857882 | NAME ON FILE | EMAIL ON FILE |
| 12047234 | NAME ON FILE | EMAIL ON FILE |
| 12047235 | NAME ON FILE | EMAIL ON FILE |
| 12046513 | NAME ON FILE | EMAIL ON FILE |
| 12046770 | NAME ON FILE | EMAIL ON FILE |
| 12047236 | NAME ON FILE | EMAIL ON FILE |
| 12047236 | NAME ON FILE | EMAIL ON FILE |
| 12047316 | NAME ON FILE | EMAIL ON FILE |
| 12648629 | NAME ON FILE | EMAIL ON FILE |
| 12047254 | NAME ON FILE | EMAIL ON FILE |
| 12046819 | NAME ON FILE | EMAIL ON FILE |
| 12047187 | NAME ON FILE | EMAIL ON FILE |
| 12862058 | NAME ON FILE | EMAIL ON FILE |
| 12047240 | NAME ON FILE | EMAIL ON FILE |
| 12047241 | NAME ON FILE | EMAIL ON FILE |
| 12046565 | NAME ON FILE | EMAIL ON FILE |
| 12046485 | NAME ON FILE | EMAIL ON FILE |
| 12242244 | NAME ON FILE | EMAIL ON FILE |
| 12242244 | NAME ON FILE | EMAIL ON FILE |
| 12047347 | NAME ON FILE | EMAIL ON FILE |
| 12046761 | NAME ON FILE | EMAIL ON FILE |
| 12829198 | NAME ON FILE | EMAIL ON FILE |
| 12873752 | NAME ON FILE | EMAIL ON FILE |
| 12868798 | NAME ON FILE | EMAIL ON FILE |
| 12047667 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046821 | NAME ON FILE | EMAIL ON FILE |
| 12047243 | NAME ON FILE | EMAIL ON FILE |
| 12047239 | NAME ON FILE | EMAIL ON FILE |
| 12047244 | NAME ON FILE | EMAIL ON FILE |
| 12046478 | NAME ON FILE | EMAIL ON FILE |
| 12047007 | NAME ON FILE | EMAIL ON FILE |
| 12047246 | NAME ON FILE | EMAIL ON FILE |
| 12046790 | NAME ON FILE | EMAIL ON FILE |
| 12047615 | NAME ON FILE | EMAIL ON FILE |
| 12864544 | NAME ON FILE | EMAIL ON FILE |
| 12047249 | NAME ON FILE | EMAIL ON FILE |
| 12047249 | NAME ON FILE | EMAIL ON FILE |
| 12864544 | NAME ON FILE | EMAIL ON FILE |
| 12868552 | STELLAR DEVELOPMENT FOUNDATION | EMAIL ON FILE |
| 12824459 | NAME ON FILE | EMAIL ON FILE |
| 12648490 | NAME ON FILE | EMAIL ON FILE |
| 12047659 | NAME ON FILE | EMAIL ON FILE |
| 12047258 | NAME ON FILE | EMAIL ON FILE |
| 12047259 | NAME ON FILE | EMAIL ON FILE |
| 12047313 | NAME ON FILE | EMAIL ON FILE |
| 12046765 | NAME ON FILE | EMAIL ON FILE |
| 12047260 | NAME ON FILE | EMAIL ON FILE |
| 12171248 | NAME ON FILE | EMAIL ON FILE |
| 12171248 | NAME ON FILE | EMAIL ON FILE |
| 12171248 | NAME ON FILE | EMAIL ON FILE |
| 12047261 | NAME ON FILE | EMAIL ON FILE |
| 12047262 | NAME ON FILE | EMAIL ON FILE |
| 12047263 | NAME ON FILE | EMAIL ON FILE |
| 12047264 | NAME ON FILE | EMAIL ON FILE |

Exhibit A
Notice Party Service List
Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047402 | NAME ON FILE | EMAIL ON FILE |
| 12171249 | NAME ON FILE | EMAIL ON FILE |
| 12242245 | NAME ON FILE | EMAIL ON FILE |
| 12242245 | NAME ON FILE | EMAIL ON FILE |
| 12047267 | NAME ON FILE | EMAIL ON FILE |
| 12047268 | NAME ON FILE | EMAIL ON FILE |
| 12242246 | NAME ON FILE | EMAIL ON FILE |
| 12047270 | NAME ON FILE | EMAIL ON FILE |
| 12242247 | NAME ON FILE | EMAIL ON FILE |
| 12047384 | NAME ON FILE | EMAIL ON FILE |
| 12868354 | NAME ON FILE | EMAIL ON FILE |
| 12046915 | NAME ON FILE | EMAIL ON FILE |
| 12046890 | NAME ON FILE | EMAIL ON FILE |
| 12047272 | NAME ON FILE | EMAIL ON FILE |
| 12830071 | NAME ON FILE | EMAIL ON FILE |
| 12047273 | NAME ON FILE | EMAIL ON FILE |
| 12047077 | NAME ON FILE | EMAIL ON FILE |
| 12047012 | NAME ON FILE | EMAIL ON FILE |
| 12047396 | NAME ON FILE | EMAIL ON FILE |
| 12858515 | NAME ON FILE | EMAIL ON FILE |
| 12047274 | NAME ON FILE | EMAIL ON FILE |
| 12046773 | NAME ON FILE | EMAIL ON FILE |
| 12148777 | NAME ON FILE | EMAIL ON FILE |
| 12761398 | NAME ON FILE | EMAIL ON FILE |
| 12242248 | NAME ON FILE | EMAIL ON FILE |
| 12242248 | NAME ON FILE | EMAIL ON FILE |
| 12047276 | NAME ON FILE | EMAIL ON FILE |
| 12047276 | NAME ON FILE | EMAIL ON FILE |
| 12171218 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12046538 | NAME ON FILE | EMAIL ON FILE |
| 12046750 | NAME ON FILE | EMAIL ON FILE |
| 12047279 | NAME ON FILE | EMAIL ON FILE |
| 12047650 | NAME ON FILE | EMAIL ON FILE |
| 12046368 | NAME ON FILE | EMAIL ON FILE |
| 12047282 | NAME ON FILE | EMAIL ON FILE |
| 12047282 | NAME ON FILE | EMAIL ON FILE |
| 12650336 | NAME ON FILE | EMAIL ON FILE |
| 12047284 | NAME ON FILE | EMAIL ON FILE |
| 12047285 | NAME ON FILE | EMAIL ON FILE |
| 12047286 | NAME ON FILE | EMAIL ON FILE |
| 12047287 | NAME ON FILE | EMAIL ON FILE |
| 12047288 | NAME ON FILE | EMAIL ON FILE |
| 12047288 | NAME ON FILE | EMAIL ON FILE |
| 12047289 | NAME ON FILE | EMAIL ON FILE |
| 12047290 | NAME ON FILE | EMAIL ON FILE |
| 12047291 | NAME ON FILE | EMAIL ON FILE |
| 12047292 | NAME ON FILE | EMAIL ON FILE |
| 12047293 | NAME ON FILE | EMAIL ON FILE |
| 12822517 | NAME ON FILE | EMAIL ON FILE |
| 12047293 | NAME ON FILE | EMAIL ON FILE |
| 12047294 | NAME ON FILE | EMAIL ON FILE |
| 12047294 | NAME ON FILE | EMAIL ON FILE |
| 12047295 | NAME ON FILE | EMAIL ON FILE |
| 12047296 | NAME ON FILE | EMAIL ON FILE |
| 12047278 | NAME ON FILE | EMAIL ON FILE |
| 12873664 | NAME ON FILE | EMAIL ON FILE |
| 12875734 | NAME ON FILE | EMAIL ON FILE |
| 12873683 | NAME ON FILE | EMAIL ON FILE |

## Exhibit A
Notice Party Service List
Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047303 | NAME ON FILE | EMAIL ON FILE |
| 12047303 | NAME ON FILE | EMAIL ON FILE |
| 12873563 | NAME ON FILE | EMAIL ON FILE |
| 12047304 | NAME ON FILE | EMAIL ON FILE |
| 12763484 | NAME ON FILE | EMAIL ON FILE |
| 12047306 | NAME ON FILE | EMAIL ON FILE |
| 12046665 | NAME ON FILE | EMAIL ON FILE |
| 12047307 | NAME ON FILE | EMAIL ON FILE |
| 12827091 | NAME ON FILE | EMAIL ON FILE |
| 12047172 | NAME ON FILE | EMAIL ON FILE |
| 12047314 | NAME ON FILE | EMAIL ON FILE |
| 12047314 | NAME ON FILE | EMAIL ON FILE |
| 12047315 | NAME ON FILE | EMAIL ON FILE |
| 12873757 | NAME ON FILE | EMAIL ON FILE |
| 12243930 | NAME ON FILE | EMAIL ON FILE |
| 12046415 | NAME ON FILE | EMAIL ON FILE |
| 12047139 | NAME ON FILE | EMAIL ON FILE |
| 12047181 | NAME ON FILE | EMAIL ON FILE |
| 12047317 | NAME ON FILE | EMAIL ON FILE |
| 12047317 | NAME ON FILE | EMAIL ON FILE |
| 12047317 | NAME ON FILE | EMAIL ON FILE |
| 12046373 | NAME ON FILE | EMAIL ON FILE |
| 12047318 | NAME ON FILE | EMAIL ON FILE |
| 12047424 | NAME ON FILE | EMAIL ON FILE |
| 12047319 | NAME ON FILE | EMAIL ON FILE |
| 12245669 | NAME ON FILE | EMAIL ON FILE |
| 12047321 | NAME ON FILE | EMAIL ON FILE |
| 12869166 | NAME ON FILE | EMAIL ON FILE |
| 12870246 | TRANSLUNAR CRYPTO LP | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*
Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047324 | NAME ON FILE | EMAIL ON FILE |
| 12047324 | NAME ON FILE | EMAIL ON FILE |
| 12046860 | NAME ON FILE | EMAIL ON FILE |
| 12047325 | NAME ON FILE | EMAIL ON FILE |
| 12047326 | NAME ON FILE | EMAIL ON FILE |
| 12047326 | NAME ON FILE | EMAIL ON FILE |
| 12047327 | NAME ON FILE | EMAIL ON FILE |
| 12047328 | NAME ON FILE | EMAIL ON FILE |
| 12047329 | NAME ON FILE | EMAIL ON FILE |
| 12047329 | NAME ON FILE | EMAIL ON FILE |
| 12047329 | NAME ON FILE | EMAIL ON FILE |
| 12047330 | NAME ON FILE | EMAIL ON FILE |
| 12047330 | NAME ON FILE | EMAIL ON FILE |
| 12047330 | NAME ON FILE | EMAIL ON FILE |
| 12047330 | NAME ON FILE | EMAIL ON FILE |
| 12047330 | NAME ON FILE | EMAIL ON FILE |
| 12047330 | NAME ON FILE | EMAIL ON FILE |
| 12242250 | NAME ON FILE | EMAIL ON FILE |
| 12242250 | NAME ON FILE | EMAIL ON FILE |
| 12046574 | NAME ON FILE | EMAIL ON FILE |
| 12827060 | NAME ON FILE | EMAIL ON FILE |
| 12827083 | NAME ON FILE | EMAIL ON FILE |
| 12242251 | NAME ON FILE | EMAIL ON FILE |
| 12242251 | NAME ON FILE | EMAIL ON FILE |
| 12244625 | NAME ON FILE | EMAIL ON FILE |
| 12047661 | NAME ON FILE | EMAIL ON FILE |
| 12046726 | NAME ON FILE | EMAIL ON FILE |
| 12047333 | NAME ON FILE | EMAIL ON FILE |
| 12047334 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047334 | NAME ON FILE | EMAIL ON FILE |
| 12047334 | NAME ON FILE | EMAIL ON FILE |
| 12047335 | NAME ON FILE | EMAIL ON FILE |
| 12047336 | NAME ON FILE | EMAIL ON FILE |
| 12047336 | NAME ON FILE | EMAIL ON FILE |
| 12652286 | NAME ON FILE | EMAIL ON FILE |
| 12047338 | NAME ON FILE | EMAIL ON FILE |
| 12875486 | NAME ON FILE | EMAIL ON FILE |
| 12873349 | NAME ON FILE | EMAIL ON FILE |
| 12047339 | NAME ON FILE | EMAIL ON FILE |
| 12047340 | NAME ON FILE | EMAIL ON FILE |
| 12047341 | NAME ON FILE | EMAIL ON FILE |
| 12047342 | NAME ON FILE | EMAIL ON FILE |
| 12047342 | NAME ON FILE | EMAIL ON FILE |
| 12829829 | NAME ON FILE | EMAIL ON FILE |
| 12046642 | NAME ON FILE | EMAIL ON FILE |
| 12047343 | NAME ON FILE | EMAIL ON FILE |
| 12047343 | NAME ON FILE | EMAIL ON FILE |
| 12047344 | NAME ON FILE | EMAIL ON FILE |
| 12047344 | NAME ON FILE | EMAIL ON FILE |
| 12763539 | NAME ON FILE | EMAIL ON FILE |
| 12047345 | NAME ON FILE | EMAIL ON FILE |
| 12171252 | NAME ON FILE | EMAIL ON FILE |
| 12875906 | NAME ON FILE | EMAIL ON FILE |
| 12171252 | NAME ON FILE | EMAIL ON FILE |
| 12171252 | NAME ON FILE | EMAIL ON FILE |
| 12171252 | NAME ON FILE | EMAIL ON FILE |
| 12872668 | NAME ON FILE | EMAIL ON FILE |
| 12171192 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12762878 | NAME ON FILE | EMAIL ON FILE |
| 12046980 | NAME ON FILE | EMAIL ON FILE |
| 12047071 | NAME ON FILE | EMAIL ON FILE |
| 12047212 | NAME ON FILE | EMAIL ON FILE |
| 12046889 | NAME ON FILE | EMAIL ON FILE |
| 12762912 | NAME ON FILE | EMAIL ON FILE |
| 12242252 | NAME ON FILE | EMAIL ON FILE |
| 12242252 | NAME ON FILE | EMAIL ON FILE |
| 12046562 | NAME ON FILE | EMAIL ON FILE |
| 12047348 | NAME ON FILE | EMAIL ON FILE |
| 12047348 | NAME ON FILE | EMAIL ON FILE |
| 12047348 | NAME ON FILE | EMAIL ON FILE |
| 12047348 | NAME ON FILE | EMAIL ON FILE |
| 12047350 | NAME ON FILE | EMAIL ON FILE |
| 12047350 | NAME ON FILE | EMAIL ON FILE |
| 12047350 | NAME ON FILE | EMAIL ON FILE |
| 12047350 | NAME ON FILE | EMAIL ON FILE |
| 12873464 | NAME ON FILE | EMAIL ON FILE |
| 12047351 | NAME ON FILE | EMAIL ON FILE |
| 12047379 | NAME ON FILE | EMAIL ON FILE |
| 12242253 | NAME ON FILE | EMAIL ON FILE |
| 12242253 | NAME ON FILE | EMAIL ON FILE |
| 12047029 | NAME ON FILE | EMAIL ON FILE |
| 12047164 | NAME ON FILE | EMAIL ON FILE |
| 12046556 | NAME ON FILE | EMAIL ON FILE |
| 12046981 | NAME ON FILE | EMAIL ON FILE |
| 12242254 | NAME ON FILE | EMAIL ON FILE |
| 12244551 | NAME ON FILE | EMAIL ON FILE |
| 12047356 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047298 | NAME ON FILE | EMAIL ON FILE |
| 12047357 | NAME ON FILE | EMAIL ON FILE |
| 12046465 | NAME ON FILE | EMAIL ON FILE |
| 12047358 | NAME ON FILE | EMAIL ON FILE |
| 12047361 | NAME ON FILE | EMAIL ON FILE |
| 12242255 | NAME ON FILE | EMAIL ON FILE |
| 12242255 | NAME ON FILE | EMAIL ON FILE |
| 12047362 | NAME ON FILE | EMAIL ON FILE |
| 12046672 | NAME ON FILE | EMAIL ON FILE |
| 12046672 | NAME ON FILE | EMAIL ON FILE |
| 12047363 | NAME ON FILE | EMAIL ON FILE |
| 12047363 | NAME ON FILE | EMAIL ON FILE |
| 12047364 | NAME ON FILE | EMAIL ON FILE |
| 12047365 | NAME ON FILE | EMAIL ON FILE |
| 12047365 | NAME ON FILE | EMAIL ON FILE |
| 12046591 | NAME ON FILE | EMAIL ON FILE |
| 12046771 | NAME ON FILE | EMAIL ON FILE |
| 12047176 | NAME ON FILE | EMAIL ON FILE |
| 12047200 | NAME ON FILE | EMAIL ON FILE |
| 12242256 | NAME ON FILE | EMAIL ON FILE |
| 12242256 | NAME ON FILE | EMAIL ON FILE |
| 12862045 | NAME ON FILE | EMAIL ON FILE |
| 12046407 | NAME ON FILE | EMAIL ON FILE |
| 12046838 | NAME ON FILE | EMAIL ON FILE |
| 12047126 | NAME ON FILE | EMAIL ON FILE |
| 12047127 | NAME ON FILE | EMAIL ON FILE |
| 12242257 | NAME ON FILE | EMAIL ON FILE |
| 12242257 | NAME ON FILE | EMAIL ON FILE |
| 12047368 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12830144 | NAME ON FILE | EMAIL ON FILE |
| 12047017 | NAME ON FILE | EMAIL ON FILE |
| 12655047 | NAME ON FILE | EMAIL ON FILE |
| 12047652 | NAME ON FILE | EMAIL ON FILE |
| 12047371 | NAME ON FILE | EMAIL ON FILE |
| 12047371 | NAME ON FILE | EMAIL ON FILE |
| 12047372 | NAME ON FILE | EMAIL ON FILE |
| 12047373 | NAME ON FILE | EMAIL ON FILE |
| 12047374 | NAME ON FILE | EMAIL ON FILE |
| 12047375 | NAME ON FILE | EMAIL ON FILE |
| 12047376 | NAME ON FILE | EMAIL ON FILE |
| 12047377 | NAME ON FILE | EMAIL ON FILE |
| 12047377 | NAME ON FILE | EMAIL ON FILE |
| 12047380 | NAME ON FILE | EMAIL ON FILE |
| 12047381 | NAME ON FILE | EMAIL ON FILE |
| 12828032 | NAME ON FILE | EMAIL ON FILE |
| 12047383 | NAME ON FILE | EMAIL ON FILE |
| 12242258 | NAME ON FILE | EMAIL ON FILE |
| 12047086 | NAME ON FILE | EMAIL ON FILE |
| 12242259 | NAME ON FILE | EMAIL ON FILE |
| 12242259 | NAME ON FILE | EMAIL ON FILE |
| 12171245 | NAME ON FILE | EMAIL ON FILE |
| 12875743 | NAME ON FILE | EMAIL ON FILE |
| 12873462 | NAME ON FILE | EMAIL ON FILE |
| 12047390 | NAME ON FILE | EMAIL ON FILE |
| 12047158 | NAME ON FILE | EMAIL ON FILE |
| 12242260 | NAME ON FILE | EMAIL ON FILE |
| 12242260 | NAME ON FILE | EMAIL ON FILE |
| 12047514 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12242261 | NAME ON FILE | EMAIL ON FILE |
| 12046406 | NAME ON FILE | EMAIL ON FILE |
| 12046563 | NAME ON FILE | EMAIL ON FILE |
| 12046736 | NAME ON FILE | EMAIL ON FILE |
| 12047252 | NAME ON FILE | EMAIL ON FILE |
| 12047391 | NAME ON FILE | EMAIL ON FILE |
| 12047392 | NAME ON FILE | EMAIL ON FILE |
| 12047392 | NAME ON FILE | EMAIL ON FILE |
| 12047648 | NAME ON FILE | EMAIL ON FILE |
| 12873407 | NAME ON FILE | EMAIL ON FILE |
| 12046514 | NAME ON FILE | EMAIL ON FILE |
| 12047398 | NAME ON FILE | EMAIL ON FILE |
| 12047399 | NAME ON FILE | EMAIL ON FILE |
| 12047399 | NAME ON FILE | EMAIL ON FILE |
| 12047400 | NAME ON FILE | EMAIL ON FILE |
| 12047400 | NAME ON FILE | EMAIL ON FILE |
| 12856442 | WIND TALKER INNOVATIONS, INC. | EMAIL ON FILE |
| 12047401 | NAME ON FILE | EMAIL ON FILE |
| 12047401 | NAME ON FILE | EMAIL ON FILE |
| 12648727 | NAME ON FILE | EMAIL ON FILE |
| 12047404 | NAME ON FILE | EMAIL ON FILE |
| 12047405 | NAME ON FILE | EMAIL ON FILE |
| 12047405 | NAME ON FILE | EMAIL ON FILE |
| 12047405 | NAME ON FILE | EMAIL ON FILE |
| 12047406 | NAME ON FILE | EMAIL ON FILE |
| 12046904 | NAME ON FILE | EMAIL ON FILE |
| 12046978 | NAME ON FILE | EMAIL ON FILE |
| 12046979 | NAME ON FILE | EMAIL ON FILE |
| 12047128 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12872159 | NAME ON FILE | EMAIL ON FILE |
| 12047590 | NAME ON FILE | EMAIL ON FILE |
| 12046558 | NAME ON FILE | EMAIL ON FILE |
| 12046724 | NAME ON FILE | EMAIL ON FILE |
| 12047283 | NAME ON FILE | EMAIL ON FILE |
| 12046777 | NAME ON FILE | EMAIL ON FILE |
| 12046777 | NAME ON FILE | EMAIL ON FILE |
| 12242262 | NAME ON FILE | EMAIL ON FILE |
| 12242262 | NAME ON FILE | EMAIL ON FILE |
| 12047407 | NAME ON FILE | EMAIL ON FILE |
| 12873541 | NAME ON FILE | EMAIL ON FILE |
| 12824659 | NAME ON FILE | EMAIL ON FILE |
| 12242263 | NAME ON FILE | EMAIL ON FILE |
| 12242263 | NAME ON FILE | EMAIL ON FILE |
| 12047409 | NAME ON FILE | EMAIL ON FILE |
| 12047409 | NAME ON FILE | EMAIL ON FILE |
| 12047409 | NAME ON FILE | EMAIL ON FILE |
| 12047397 | NAME ON FILE | EMAIL ON FILE |
| 12047410 | NAME ON FILE | EMAIL ON FILE |
| 12046839 | NAME ON FILE | EMAIL ON FILE |
| 12764066 | NAME ON FILE | EMAIL ON FILE |
| 12245213 | NAME ON FILE | EMAIL ON FILE |
| 12047548 | NAME ON FILE | EMAIL ON FILE |
| 12242264 | NAME ON FILE | EMAIL ON FILE |
| 12242264 | NAME ON FILE | EMAIL ON FILE |
| 12047165 | NAME ON FILE | EMAIL ON FILE |
| 12047228 | NAME ON FILE | EMAIL ON FILE |
| 12148651 | NAME ON FILE | EMAIL ON FILE |
| 12762359 | NAME ON FILE | EMAIL ON FILE |

In re: Genesis Global Holdco, LLC, *et al.*

Case No. 22-10063 (SHL)

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12047369 | NAME ON FILE | EMAIL ON FILE |
| 12047411 | NAME ON FILE | EMAIL ON FILE |
| 12047411 | NAME ON FILE | EMAIL ON FILE |
| 12047412 | NAME ON FILE | EMAIL ON FILE |
| 12047413 | NAME ON FILE | EMAIL ON FILE |
| 12823791 | NAME ON FILE | EMAIL ON FILE |
| 12242265 | NAME ON FILE | EMAIL ON FILE |
| 12242265 | NAME ON FILE | EMAIL ON FILE |
| 12242266 | NAME ON FILE | EMAIL ON FILE |
| 12242266 | NAME ON FILE | EMAIL ON FILE |
| 12047415 | NAME ON FILE | EMAIL ON FILE |
| 12242267 | NAME ON FILE | EMAIL ON FILE |
| 12046595 | NAME ON FILE | EMAIL ON FILE |
| 12242267 | NAME ON FILE | EMAIL ON FILE |
| 12046670 | NAME ON FILE | EMAIL ON FILE |
| 12047416 | NAME ON FILE | EMAIL ON FILE |
| 12047417 | NAME ON FILE | EMAIL ON FILE |
| 12047417 | NAME ON FILE | EMAIL ON FILE |
| 12046751 | NAME ON FILE | EMAIL ON FILE |
| 12046912 | NAME ON FILE | EMAIL ON FILE |
| 12047574 | NAME ON FILE | EMAIL ON FILE |
| 12046988 | NAME ON FILE | EMAIL ON FILE |
| 12651061 | NAME ON FILE | EMAIL ON FILE |
| 12046840 | NAME ON FILE | EMAIL ON FILE |
| 12046386 | NAME ON FILE | EMAIL ON FILE |
| 12046684 | NAME ON FILE | EMAIL ON FILE |
| 12046489 | NAME ON FILE | EMAIL ON FILE |
| 12047095 | NAME ON FILE | EMAIL ON FILE |
| 12242268 | NAME ON FILE | EMAIL ON FILE |

Exhibit A

Notice Party Service List

Served via Email

| ADDRESS ID | NAME | EMAIL |
|---|---|---|
| 12242268 | NAME ON FILE | EMAIL ON FILE |
| 12047561 | NAME ON FILE | EMAIL ON FILE |
| 12047420 | NAME ON FILE | EMAIL ON FILE |
| 12046619 | NAME ON FILE | EMAIL ON FILE |
| 12047134 | NAME ON FILE | EMAIL ON FILE |
| 12047594 | NAME ON FILE | EMAIL ON FILE |
| 12871957 | NAME ON FILE | EMAIL ON FILE |
| 12046421 | NAME ON FILE | EMAIL ON FILE |
| 12047425 | NAME ON FILE | EMAIL ON FILE |
| 12045387 | NAME ON FILE | EMAIL ON FILE |
| 12045387 | NAME ON FILE | EMAIL ON FILE |
| 12047426 | NAME ON FILE | EMAIL ON FILE |
| 12047427 | NAME ON FILE | EMAIL ON FILE |
| 12046752 | NAME ON FILE | EMAIL ON FILE |
| 12856974 | NAME ON FILE | EMAIL ON FILE |
| 12871831 | NAME ON FILE | EMAIL ON FILE |
| 12046997 | NAME ON FILE | EMAIL ON FILE |
| 12047428 | NAME ON FILE | EMAIL ON FILE |
| 12046725 | NAME ON FILE | EMAIL ON FILE |
| 12764546 | NAME ON FILE | EMAIL ON FILE |
| 12047595 | NAME ON FILE | EMAIL ON FILE |
| 12171194 | NAME ON FILE | EMAIL ON FILE |
| 12047488 | NAME ON FILE | EMAIL ON FILE |
| 12047035 | NAME ON FILE | EMAIL ON FILE |
| 12047429 | NAME ON FILE | EMAIL ON FILE |
| 12047429 | NAME ON FILE | EMAIL ON FILE |
| 12046814 | NAME ON FILE | EMAIL ON FILE |

**Exhibit B**

**NOTICE OF RECOGNITION APPLICATIONS**

**<u>IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE</u>**

|  |  |
|---|---|
| | In the matter of Part 11 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) |
| | And |
| | In the matter of Section 252 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) |
| | And |
| | In the matter of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) |
| | And |
| | In the matter of Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency |
| | And |
| | In the matter of the Appointment of Foreign Representative in the United States Bankruptcy Court in the Southern District of New York in Case No. 2310063 (Genesis Global Holdco, LLC (EIN 38-4058219)), jointly administered with Case No. 2310064 (Genesis Global Capital, LLC (EIN 37-1878564)) and Case No. 2310065 (Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R)) on 26 January 2023 |
| | And |
| HC/OA 400/2023 | In the matter of GENESIS ASIA PACIFIC PTE. LTD. (Singapore UEN No. 202002164R) |
| | 1. GENESIS ASIA PACIFIC PTE. LTD. (Singapore UEN No. 202002164R) (in its capacity as foreign representative of Genesis Asia Pacific Pte. Ltd.) |
| | 2. GENESIS ASIA PACIFIC PTE. LTD. (Singapore UEN No. 202002164R) |
| | And |

HC/OA 402/2023

In the matter of GENESIS GLOBAL HOLDCO, LLC (United States Registration No. 38-4058219)

1. GENESIS ASIA PACIFIC PTE. LTD.
   (Singapore UEN No. 202002164R)
   (in its capacity as foreign representative of Genesis Global Holdco, LLC)

2. GENESIS GLOBAL HOLDCO, LLC
   (United States Registration No. 38-4058219)

And

HC/OA 403/2023

In the matter of GENESIS GLOBAL CAPITAL, LLC (United States Registration No. 37-1878564)

1. GENESIS ASIA PACIFIC PTE. LTD.
   (Singapore UEN No. 202002164R)
   (in its capacity as foreign representative of Genesis Global Capital, LLC)

2. GENESIS GLOBAL CAPITAL, LLC
   (United States Registration No. 37-1878564)

… Applicant(s)

Reference is made to:

(1) The proceedings of Genesis Global Holdco, LLC (EIN 38-4058219) ("**Holdco**") in Case No. 23-10063, consolidated for procedural purposes only by the *Order Directing Joint Administration of Related Chapter 11 Cases* (ECF No. 37) dated 26 January 2023 under Case No. 23-10063 in respect of Holdco, Genesis Global Capital, LLC (EIN 37-1878564) ("**GGC**") and Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R) ("**GAP**") filed under Chapter 11, Title 11 of the United States Bankruptcy Code with the Bankruptcy Court for the Southern District of New York (these cases collectively, the "**Chapter 11 Proceedings**").

(2) The *Order Authorizing Debtor Genesis Asia Pacific Pte. Ltd. to Act as Foreign Representative of the Debtors* (ECF No. 38) dated 26 January 2023 ("**Foreign Representative Order**") permitting GAP to act as the foreign representative to Holdco, GGC and GAP (each an "**Applicant**", and collectively, the "**Applicants**").

**NOTICE IS HEREBY GIVEN** that on 20 April 2023, the Applicants filed applications in HC/OA 400/2023 (for GAP), HC/OA 402/2023 (for Holdco) and HC/OA 403/2023 (for GGC) (the "**Recognition Applications**") seeking, *inter alia*:

(1) that the Chapter 11 Proceedings be recognised by the Singapore Courts and in Singapore as foreign main proceedings within the meaning of Article 2(f) of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 ("**IRDA**") i.e. the UNCITRAL Model Law on Cross-Border Insolvency as adopted in Singapore by way of Section 252 of the IRDA (the "**Model Law**"), or in the alternative, that the Chapter 11 Proceedings be recognised by the Singapore Courts and in Singapore as foreign non-main proceedings within the meaning of Article 2(g) of the Model Law.

(2) that GAP's appointment as the foreign representative of each Applicant pursuant to the Foreign Representative Order be recognised by the Singapore Courts and in Singapore as a foreign representative within the meaning of Article 2(i) of the Model Law.

**TAKE FURTHER NOTICE** that on 18 May 2023, the Applicants filed the Applicants' applications in HC/SUM 1497/2023 (for GAP), HC/SUM 1499/2023 (for Holdco) and HC/SUM 1498/2023 (for GGC) for leave to amend the Originating Applications filed in the Recognition Applications. The Singapore Court approved the applications on 19 May 2023.

The Recognition Applications have been fixed for a half-day hearing before the Honourable Justice Aedit Abdullah, sitting at the General Division of the High Court of the Republic of Singapore (the "Singapore Court"), on **6 July 2023 at 10:00AM Singapore time (SGT)** (the "**Hearing**").

The Singapore Court issued the following directions in respect of all three Recognition Applications at the first Case Conference on 18 May 2023 (with the timelines below in **SGT**):

(1) Creditors to file reply affidavits (if any) by **22 June 2023**.

(2) If there are no reply affidavits filed, Applicants to write in to inform the Court by **26 June 2023.**

(3) An attendance list of parties (including any creditors) who wish to attend the Hearing to be submitted by **26 June 2023, 4PM.**

(4) A further Case Conference to be fixed for **28 June 2023, 9.30AM.**

(5) The following are to be tendered to Court by **30 June 2023, 4PM:**

    a. Submissions and Bundle of Authorities to be exchanged, e-filed and tendered to Court.

    b. A time bank for oral submissions by any party who wishes to address the Court at the Hearing.

Any creditor that wishes to attend the Hearing should contact the Applicants' Singapore legal advisers (referred to below) by no later than **23 June 2023, 6PM SGT.**

Copies of the full set of papers filed by the Applicants in respect of the Recognition Applications (including the amended Originating Applications dated 25 May 2023) are accessible via the link sent by the Claims Agent with this notice.

For further information of a general nature regarding the Applications, please contact the Applicants' Singapore legal advisers:

**<u>LEGAL ADVISERS TO THE APPLICANTS</u>**

Singapore legal advisers

**Allen & Gledhill LLP**
One Marina Boulevard
#28-00
Singapore 018989
Email: agteam.gap@allenandgledhill.com

New York legal advisers

**Cleary Gottlieb Steen & Hamilton LLP**
One Liberty Plaza, New York NY 10006
Email: genesiscreditorinquiry@cgsh.com

**<u>CLAIMS AGENT</u>**

Kroll Inc.
Genesis Global Holdco, LLC Claims Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232
Email: genesisinquiries@ra.kroll.com

25 May 2023

**Exhibit C**

*Applicants: Ahmed Derar Islim: 1st: 8 May 2023*

## IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

In the matter of Part 11 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Section 252 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency

And

In the matter of the Appointment of Foreign Representative in the United States Bankruptcy

Court in the Southern District of New York in Case No. 23-10063 (Genesis Global Holdco, LLC, a New York Corporation (EIN 38-4058219)), jointly administered with Case No. 23-10064 (Genesis Global Capital, LLC, a New York Corporation (EIN 37-1878564)) and Case No. 23-10065 (Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R)) on 26 January 2023

And

HC/OA 400/2023

In the matter of **GENESIS ASIA PACIFIC PTE. LTD.** (Singapore UEN No. 202002164R)

**1. GENESIS ASIA PACIFIC PTE. LTD.**
(Singapore UEN No. 202002164R)
(in its capacity as foreign representative of Genesis Asia Pacific Pte. Ltd.)

**2. GENESIS ASIA PACIFIC PTE. LTD.**
(Singapore UEN No. 202002164R)

And

HC/OA 402/2023

In the matter of **GENESIS GLOBAL HOLDCO, LLC** (United States Registration No. 38-4058219)

**1. GENESIS ASIA PACIFIC PTE. LTD.**
(Singapore UEN No. 202002164R)
(in its capacity as foreign representative of Genesis Global Holdco, LLC)

**2. GENESIS GLOBAL HOLDCO, LLC**
(United States Registration No. 38-4058219)

And

HC/OA 403/2023

In the matter of **GENESIS GLOBAL CAPITAL, LLC** (United States Registration No. 37-1878564)

3

**1. GENESIS ASIA PACIFIC PTE. LTD.**
(Singapore UEN No. 202002164R)
(in its capacity as foreign representative of
Genesis Global Capital, LLC)

**2. GENESIS GLOBAL CAPITAL, LLC**
(United States Registration No. 37-1878564)

… Applicant(s)

**<u>AFFIDAVIT</u>**

**Name of Maker**: Ahmed Derar Islim, (ID No. XXXXX3262)

**Address**: c/o 61 Robinson Road, #07-01, Singapore 068893

**Occupation**: Director

**Description**: On behalf of Applicants

I, **Ahmed Derar Islim, (ID No. XXXXX3262)**, c/o 61 Robinson Road, #07-01, Singapore 068893, do hereby solemnly and sincerely affirm and say as follows:

1.      I am a director of Genesis Asia Pacific Pte. Ltd., which was appointed by the United States Bankruptcy Court for the Southern District of New York pursuant to an Order of Court dated 26 January 2023 as foreign representative of Genesis Asia Pacific Pte. Ltd. ("**GAP**"), Genesis Global Holdco, LLC ("**Holdco**") and Genesis Global Capital, LLC ("**GGC**") in Singapore in connection with the Chapter 11 Cases (defined below). I am duly authorised to make this affidavit on the Applicants' behalf.

2.      Insofar as the matters deposed to herein are derived from my own personal knowledge, they are true. Otherwise, if they are derived from documents that I have seen, or conveyed to me by other persons, they are true to the best of my knowledge, information, and belief.

3.      Now shown to me and marked as **"ADI-1"** is a bundle of documents which I will refer to in the course of this affidavit. For ease of reference, where specific documents are being referred to in this affidavit, I will refer to them by the tab numbers within exhibit "**ADI-1**".

4.      I depose this affidavit in support of the Applicants' application (the "**Applications**") for, among other things, the following orders:

(1)     the recognition of the Chapter 11 Cases in respect of each Debtor (defined below) as foreign main proceedings within the meaning of Article 2(f) of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 ("**IRDA**") i.e. the UNCITRAL Model Law on Cross-Border Insolvency as adopted in Singapore by way of Section 252 of the IRDA (the "**Model Law**"), and that each Debtor is each immediately entitled to relief pursuant to Article 20 of the Model Law and that the relief sought at prayer 1(d) of each Debtor's Originating Application subsist for as long as their Chapter 11 Cases, including any extensions thereto, are in force;

(2)     alternatively, that the Chapter 11 Cases in respect of each Debtor be recognised as foreign non-main proceedings within the meaning of Article 2(g) of the Model Law, and that the said Debtor be entitled to relief pursuant to Article 21 of the Model Law, as specified in the

Originating Application for that Debtor, for as long as their Chapter 11

Cases, including any extensions thereto, are in force; and

(3)     that GAP's appointment as the foreign representative of each

Debtor (defined below) pursuant to the order granted in respect of

the Foreign Representative Appointment Motion (defined below) on

26 January 2023 is recognised by the Singapore Courts and in

Singapore as a foreign representative within the meaning of Article

2(i) of the Model Law.

I.      **THE APPLICANTS**

5.      **Holdco**, **GGC** and **GAP** are companies that operate in the cryptocurrency

space. Holdco (together with the other Debtors and Holdco's Non-Debtor

Subsidiaries (defined below), the "**Company**") and its non-Debtor affiliate

Genesis Global Trading, Inc. ("**GGT**") provide lending and borrowing, spot

trading, derivatives and custody services for digital assets and fiat currency.

6.      **GGC** and **GAP** (together with Holdco, the "**Debtors**"), provide lending and

borrowing services and certain trading services. The other subsidiaries of

Holdco (the "**Non-Debtor Subsidiaries**") engage in derivatives and custody

services, as well as most of the trading services.

7.      A chart depicting the Company's and GGT's corporate structure as at the date

of this affidavit is annexed hereto and marked **[Tab-1]**.

8.    **Genesis Global Holdco, LLC (i.e. Holdco)** is a limited liability company organised under the laws of Delaware and incorporated on 28 November 2017. Both Holdco and GGT are 100% owned by Digital Currency Group ("**DCG**"), a corporation organised under the laws of Delaware. Copies of Holdco's company profiles obtained from Bloomberg and the Delaware Division of Corporations, as well as a certificate of change by entity in respect of Holdco are annexed hereto and marked **[Tab-2]**.

9.    **Genesis Global Capital, LLC (i.e. GGC)** is a wholly-owned Delaware-incorporated subsidiary of Holdco. It is a private limited liability company organised under the laws of Delaware and incorporated on 28 November 2017. GGC provides lending and borrowing services for digital assets and fiat currency primarily to and from institutional and high net worth individual customers. Copies of GGC's company profiles obtained from Bloomberg and the Delaware Division of Corporations, as well as GGC's certificate of formation are annexed hereto and marked **[Tab-3]**.

10.   **Genesis Asia Pacific Pte. Ltd. (i.e. GAP)** is a wholly-owned subsidiary of Holdco. It was incorporated in Singapore on 16 January 2020. The registered office of GAP is at 61 Robinson Road, #07-01, Singapore 068893. A copy of GAP's business profile obtained from ACRA on 8 May 2023 is annexed hereto and marked **[Tab-4]**. The identification numbers of GAP's officers in the said business profile have been redacted for confidentiality reasons.

11.   GAP is a Singapore-based digital payment token service provider which carries out digital asset trading and lending activities. As of 22 June 2022, GAP had received an in-principle approval for a Major Payment Institution

license under the Payment Services Act 2019 ("**MPI Licence**") by the Monetary Authority of Singapore ("**MAS**") and is operational under the pre-licensing regime. A copy of the aforementioned approval is annexed hereto and marked **[Tab-5]**.

II.    **BACKGROUND TO CHAPTER 11 PROCEEDINGS**

A.    *Events leading up to Chapter 11 proceedings*

12.    Over the past year, the digital asset industry experienced tremendous dislocation. In particular, in May 2022, LUNA ("**Luna**") and TerraUSD ("**UST**") collapsed, causing widespread market turmoil. Shortly thereafter, the digital asset hedge fund Three Arrows Capital Ltd. ("**3AC**") commenced liquidation proceedings. The collapse of Luna and UST, and the subsequent liquidation of 3AC, signalled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.

13.    As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates, as well as Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 proceedings in July 2022. Most recently, FTX Trading Ltd. ("**FTX**"), Alameda Research Ltd. ("**Alameda**") and certain affiliates (together with FTX and Alameda, the "**FTX Entities**") filed for Chapter 11 proceedings around mid-November 2022.

14.    I elaborate on the impact of the aforementioned events in further detail below.

***Impact of the 3AC liquidation***

(1)     In 2020, GAP established a lending relationship with 3AC. In June 2022, the various loans extended to 3AC by GAP amounted to approximately US$2.4 billion in cash and digital assets. After it became clear that 3AC would not be in a position to pay back its loans, GAP foreclosed on collateral pledged by 3AC in connection with those loans.  But by the time GAP foreclosed on the collateral, the value of that collateral was only approximately US$1.2 billion.

(2)     In light of these events, DCG assumed US$1.1 billion of the remaining US$1.2 billion payable GAP owed to GGC in connection with the 3AC lending relationship. On 30 June 2022, DCG evidenced the assumed payable with a US$1.1 billion promissory note in favour of GGC that had a 10-year maturity and fixed interest rate of 1% that may, at DCG's option, be paid in kind.

***Impact of FTX's collapse***

(3)     In early November, the digital asset market plummeted further as FTX, previously one of the world's largest and most respected digital asset exchanges, collapsed. Starting from 6 November 2022, FTX's digital asset, FTT, lost over 80% of its worth in the span of 72 hours. The contagion effect from FTX's collapse spread throughout the digital asset market.

(4)     The Debtors have been adversely affected by the FTX collapse.  As of the petition date in the FTX Chapter 11 proceedings, GGC had a

total exposure in digital assets held at FTX Digital Markets Ltd. of approximately US$175 million. GGC had outstanding loans to Alameda in digital assets having a value of approximately US$37 million. However, because GGC hedged its exposure to price changes in the value of the digital assets underlying the Alameda loans, its estimated loss from these loans is approximately US$7 million.

### *Impact on customer confidence*

(5)     These drastic market shifts have decreased investor confidence in the digital asset market and severely and adversely impacted the Company's business. Consistent with industry practice, many of the loans offered by the Company were open term loans, meaning that the Company could repay a loan in full or in part at any point in time and lenders could "call" (demand repayment) under the loans in whole or in part at any point in time.

(6)     As FTX began to experience its collapse in and around November 2022, the Company received calls on its loans amounting to approximately US$827 million. This "run on the bank" following the FTX Entities' collapse in early November was outsized and severely impacted the Company's available liquidity. As a result of the unprecedented number and size of the loan calls, on 16 November 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions

with stakeholders. All lending and borrowing business of GGC and GAP remains paused.

15.     The Debtors and their advisors engaged in extensive negotiations with various advisors to creditor groups to explore strategic solutions. In addition, the Debtors have undertaken cost-saving and liquidity-preserving measures. As a result of those efforts, the Debtors determined that an in-court process is the best path to continue their efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

B.      *Filing of Chapter 11 Cases*

16.     On 19 January 2023, the Debtors each filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**US Bankruptcy Court**") (for each of the Debtors, a "**Chapter 11 Case**" and collectively, the "**Chapter 11 Cases**"). The aforementioned petitions were filed on the basis that *inter alia*, a restructuring of the Debtors' balance sheet is necessary to restore the Debtors' businesses, to evaluate options to preserve their value and to move their businesses forward as swiftly as possible.

17.     Concurrently, the Debtors filed a motion seeking joint administration of their Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. In essence, the Chapter 11 Cases were commenced to maximise value for creditors and restructure their balance sheets, including approximately US$5.1 billion of total liabilities outstanding (including intercompany balances) as of 30 November 2022.

18.     Copies of the Debtors' voluntary petitions filed for the Chapter 11 Cases on 19 January 2023 (the "**Petition Date**"), as well as the Notice of commencement of Chapter 11 Cases and first day hearing, along with the Debtors' various motions and applications seeking first day relief and related pleadings as filed on 20 January 2023 (collectively, the "**First Day Pleadings**"), are annexed hereto and marked **[Tab-6]**.

19.     As part of the First Day Pleadings, the Debtors concurrently filed a joint proposed plan of reorganization ("**Chapter 11 Plan**"), which will be amended as necessary to reflect the results of our continued negotiations. A copy of the Chapter 11 Plan filed on 20 January 2023 is included in the First Day Pleadings exhibited at **[Tab-6]**.

20.     On 6 February 2023, the Debtors, the parent company of Holdco (i.e. DCG), and creditors representing over US$2 billion in claims against the Debtors announced in the US Bankruptcy Court that they had reached an agreement in principle on a global settlement and have finalized a non-binding term sheet (the "**Term Sheet**") to be signed by parties to the settlement. A copy of the Notice of Filing of the Restructuring Term Sheet (enclosing the Term Sheet) filed with the US Bankruptcy Court on 10 February 2023 is annexed hereto at **[Tab-7]**. The Debtors and their stakeholders are now working to negotiate and finalize a binding plan support agreement on the basis of the term sheet. The Debtors and their stakeholders have stated a shared goal of finalizing their agreement and commencing a sale process to be incorporated into a plan of reorganization.

12

C.    <u>Authorisation of GAP as foreign representative of the Debtors in the Chapter</u>
<u>11 Cases</u>

21.    The First Day Pleadings included the *Debtors' Motion Pursuant to Section
1505 of the Bankruptcy Code for Authorization of Genesis Asia Pacific Pte.
Ltd. to Act as the Foreign Representative of the Debtors* filed on 20 January
2023 (the "**Foreign Representative Appointment Motion**", exhibited at
**[Tab-6]**).

22.    The Foreign Representative Appointment Motion sought, *inter alia*, the
following orders (see Exhibit A):

> *"2. The Debtors' filing of voluntary petitions for relief under
> chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"),
> constitute "foreign proceedings" as that term is used in Article
> II(a) of the Model Law on Cross-Border Insolvency adopted
> by the United Nations Commission on International Trade Law.
> The Chapter 11 Cases have been commenced by the filing of
> the Debtors' petitions for relief with this Court.*
>
> *3. GAP is authorized and empowered (i) to act as the "foreign
> representative" of the Debtors in Singapore, including within
> the meaning of Article 2(i) of the Third Schedule of the
> Insolvency, Restructuring and Dissolution Act 2018 of the
> Republic of Singapore or any other applicable laws of
> Singapore, (ii) to seek recognition by the Singapore High
> Court of the Chapter 11 Cases and of certain orders made by
> the Court in the Chapter 11 Cases from time to time, (iii) to*

*request that the Singapore High Court lend assistance to this Court, including but not limited to granting relief under Articles 19 to 21 of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 of the Republic of Singapore or any other applicable laws of Singapore, and (iv) to seek any other appropriate relief from the Singapore High Court or any other court, tribunal, regulatory body or administrative body having its jurisdiction in Singapore as the Debtors deem just and proper.*

*4. The Singapore High Court and any other court, tribunal, regulatory body or administrative body having its jurisdiction in Singapore are hereby respectfully requested (i) to grant foreign representative status to GAP in any foreign proceeding, (ii) to make such orders and to provide such assistance to GAP as the foreign representative and an officer of this Court, as may be necessary or desirable to give effect to this Order and all applicable provisions of the Bankruptcy Code and (iii) to assist the Debtors, GAP, in its capacity as the foreign representative, and their respective agents in carrying out the terms of (x) this Order, including but not limited to granting relief under Articles 19 to 21 of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 of the Republic of Singapore or any other applicable laws of Singapore, (y) any other order of this Court and (z) the*

> *provisions of the Bankruptcy Code, including, for the avoidance of doubt, the automatic stay pursuant to Section 362 of the Bankruptcy Code.*
>
> *5. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry. …"*

23.   The relief sought in the Foreign Representative Appointment Motion was essentially the first in a two-step process, the second step being the present Applications to the Singapore Court for recognition and assistance:

> *"12. An explicit grant of authority to act as the foreign representative is meant to facilitate the process of petitioning for recognition in a foreign court.*
>
> *…*
>
> *16. The relief sought by this Motion is, therefore, the first in a two-step process.* ___**If granted, GAP expects in due course to submit an application to the Singapore High Court that seeks recognition of the Chapter 11 Cases as foreign main proceedings**___*.*
>
> *17. Consistent with one of the key objectives of the Model Law—to provide "[c]ooperation between the courts and other competent authorities . . . involved in cases of cross-border insolvency" (Model Law, preamble)—*___**the application for recognition that GAP will file, if this Motion is granted, will seek to obtain the assistance of**___

*__the Singapore High Court. If the Singapore High Court__*

*__recognizes the Chapter 11 Cases as foreign main__*

*__proceedings, the Debtors will benefit from the__*

*__protection of an automatic stay against commencement__*

*__or continuation of actions or proceedings concerning__*

*__the Debtors' assets, rights, obligations and liabilities in__*

*__Singapore__. ..."*

(emphasis added)

24.     Accordingly, in this application, the Debtors seek recognition and assistance, in order to (among other things) protect the Debtors from proceedings or other enforcement steps in Singapore that may derail the Chapter 11 Cases.

D.      *Automatic Stay upon Chapter 11 filings*

25.     Further, the Debtors' filings in the Chapter 11 Cases triggered an automatic stay under section 362 of the Bankruptcy Code, pursuant to which the Debtors sought a global moratorium by way of, *inter alia*, the following orders:

> *"2. Pursuant to section 362 of the Bankruptcy Code, all persons (including individuals, partnerships, corporations and all those acting for or on their behalf) and all foreign or domestic governmental or quasi-governmental units, including any state, locality or territory thereof (and all those acting for or on their behalf), regardless of whether or not they*

*have received a copy of the order, are stayed, restrained and enjoined from:*

(a) *commencing or continuing any judicial, administrative or other action or proceeding against the Debtors, including the issuance or employment of process that was or could have been initiated before the Debtors' Chapter 11 Cases commenced;*

(b) *enforcing, against the Debtors or their estates, a judgment obtained before the commencement of these Chapter 11 Cases;*

(c) *collecting, assessing or recovering a claim against the Debtors that arose before the commencement of these Chapter 11 Cases;*

(d) *taking any action to obtain possession of property of the estates or of property from the estates or to exercise control over property of the Debtors' estates;*

(e) *taking any action to create, perfect or enforce any lien against property of the Debtors' estates;*

(f) *taking any action to create, perfect or enforce any lien against property of the Debtors, to the extent that such lien secures a claim that arose before the commencement of these Chapter 11 Cases;*

(g)     *offsetting any debt owing to the Debtors that arose
before the commencement of these Chapter 11
Cases against any claim against the Debtors; and*

(h)     *commencing or continuing a proceeding before the
United States Tax Court concerning the Debtors' tax
liability for a taxable period the Court may
determine. …*"

See paragraphs 13 to 19, and the proposed order at Exhibit A of *Debtors'
Motion for an Order Authorizing Debtors to Operate their Businesses in the
Ordinary Course and Ordering Implementation of the Automatic Stay* filed on
20 January 2023 (the "**Automatic Stay Motion**"), exhibited at **[Tab-6]**.

26.     A hearing in respect of the Debtors' First Day Pleadings was held on 23
January 2023 at 2.00pm (Prevailing Eastern Time) (the "**First Day Hearing**")
before the Honourable Sean H. Lane, United States Bankruptcy Judge, US
Bankruptcy Court. The Debtors' counsel from Cleary Gottlieb Steen &
Hamilton LLP also provided a presentation to the Court on the Company's
background and outline of the proposed restructuring plan. The presentation
deck is annexed hereto and marked **[Tab-8]**.

27.     On 3 February 2023, a creditors' committee was appointed in the Chapter 11
Cases.

28.     At the First Day Hearing, the Chapter 11 Cases in relation to the Debtors were
approved to be consolidated for procedural purposes only, and to be jointly

administered by an Order dated 26 January 2023. The court orders sought in the Foreign Representative Appointment Motion and the Automatic Stay Motion (referred to in part at paragraphs **[22]** and **[25]** above) were also granted by Orders of the same date. Accordingly, the US Bankruptcy Court has authorised GAP as foreign representative of the Debtors (including GAP itself) in Singapore to seek recognition of the Chapter 11 Cases on the Debtors' behalf, and to request that the Singapore High Court lend assistance to the US Bankruptcy Court in protecting the Debtors' property, including but not limited to granting relief under Articles 19 to 21 of the Model Law.

29.    Copies of the Court orders granted at the First Day Hearing are annexed hereto and marked **[Tab-9]**.

### III.    THE DEBTORS' CHAPTER 11 CASES SHOULD BE RECOGNISED IN SINGAPORE

30.    I am advised and verily believe that under Article 17 of the Model Law, this Honourable Court is required to determine whether the Debtors' Chapter 11 Cases are to be recognised as either foreign main proceedings or foreign non-main proceedings.

### A.    *Recognition as Foreign Main Proceedings*

31.    Based upon the totality of the circumstances, I am advised and verily believe that each of the Debtors' Chapter 11 Cases are foreign main proceedings within the meaning of Article 2(f) of the Model Law, as the centre of main interests ("**COMI**") of each Debtor is the United States ("**US**").

32.     The facts supporting the conclusion that the US is the COMI for each of
Holdco, GGC and GAP include, *inter alia*:

(1)     Holdco is organized under the laws of Delaware and carries on the
majority of its business from its headquarters in New York (see the
documents exhibited at **[Tab-2]**, referred to at paragraph **[8]** above).

(2)     GGC is organized under the laws of Delaware and its main place of
business is in New Jersey. GGC is registered with the U.S. Treasury
Department's Financial Crimes Enforcement Network ("**FinCEN**") as
a money services business. GGC holds the majority of its assets in
the US. Copies of GGC's Annual Report Certificate for the year 2023
and GGC's money service business (MSB) registration search
obtained from the FinCEN website are annexed hereto and marked
**[Tab-10]**.

(3)     Most of the creditors of GGC and Holdco are located in the US.

(4)     A special committee of the board of Holdco has been established,
operating from the US, to direct the restructuring of all three Debtor
entities and continuing business operations during the said
restructuring.

(5)     Restructuring advisors have been appointed, operating from the US,
whose mandate includes advising on the restructuring of the three
Debtor entities.

(6)     GAP has also entered into significant transactions with US-based parties.

     i.     First of all, the bulk of GAP's business is conducted with the US-based entities GGC and GGT, including entering into intercompany loans with GGC.

     ii.     GAP's spot trading activity is also closely tied to US-based entities. When GAP enters into spot trading with clients in Singapore and elsewhere in Asia, it also completes a back-to-back trade with GGC International or with GGT.

     iii.     Finally, GAP also provides derivative operational support for US-based affiliates.

33.     While I believe that the US is the COMI for GAP, out of completeness, I do highlight for the Honourable Court's attention the following facts:

(1)     As mentioned above, GAP is a Singapore-based and -incorporated digital payment token service provider which carries out digital asset trading and lending activities.

(2)     GAP provides certain trading and lending services primarily to Singapore residents.

(3)     GAP's workforce consists of approximately 15 wage earners as of the Petition Date (the "**Employees**"), including executives, managers, professionals, and other personnel working in finance, trading, operations, technology, compliance, and other key functions. All of the

21

Employees are based in Singapore, which is the principal place of business of GAP.

(4)    Many of GAP's other creditors, vendors and contractual parties (besides those set out in preceding paragraphs) are located in Singapore.

B.    *Recognition as Foreign Non-Main Proceedings*

34.    **Alternatively**, even if this Honourable Court does not recognise each or any of the Debtors' Chapter 11 Cases as foreign main proceedings, I verily believe that the Debtors' Chapter 11 Cases should be considered (at least) as "foreign non-main proceedings" within the meaning of Article 2(g) of the Model Law for the same reasons as set out above, and the further details below:

(1)    The Debtors each has an 'establishment' in the US, in that each of them has property in the US, or has places of operations in the US where each of the Debtors carries out a non-transitory economic activity with human means and property or services.

(2)    As stated above, Holdco is organized under the laws of Delaware and is qualified to carry on business in New York, and owns property, i.e., equity interests in GGC, located in the US. GGC is organized under the laws of Delaware and its main place of business is in New Jersey.

(3)    GGC holds the majority of its assets in the US.

(4)     GAP owns property located in the US, including (in addition to what has been set out in preceding paragraphs) a bank account with cash in the US and an intercompany receivable from the US-based entity, GGT.

35.     I am advised and verily believe that each of the Debtors should be entitled to the relief sought in their respective Originating Applications even if this Honourable Court does not recognise the Debtors' Chapter 11 Cases as foreign main proceedings within the meaning of Article 2(f) of the Model Law, but as foreign non-main proceedings within the meaning of Article 2(g) of the Model Law. I elaborate more on the relief sought below.

## IV.     <u>ASSISTANCE FOLLOWING RECOGNITION OF THE CHAPTER 11 CASES IN SINGAPORE</u>

36.     I have set out above the reasons why the Chapter 11 Cases of Holdco, GGC and GAP should be recognized as foreign main proceedings in Singapore (or in the alternative, as foreign non-main proceedings in Singapore). I now turn to the assistance sought by the Debtors generally.

37.     The assistance sought by the Debtors mainly relate to various moratoriums against enforcement actions. Such relief is sought, in particular, to ensure that the Debtors' Chapter 11 Cases are not disrupted by creditor action in Singapore. As of the date of this affidavit, the Debtors are aware of at least one creditor who has sent a default notice in respect of outstanding loans purportedly owed by GGC and GAP and threatened litigation in Singapore. A copy of the default notice dated 28 November 2022 (redacted for confidentiality reasons) is annexed hereto and marked **[Tab-11]**.

38.     I am advised that upon recognition of the Debtors' Chapter 11 Cases as foreign main proceedings, pursuant to Article 20 of the Model Law, the Debtors are immediately entitled to the relief sought in the Debtors' respective Originating Applications, including but not limited to a stay of proceedings against the Debtors, a stay of execution against their property and a suspension of the right to transfer, encumber or dispose property of the Debtors.

39.     Even if the Debtors' Chapter 11 Cases are recognised only as foreign non-main proceedings, I verily believe that the assistance sought in respect of each of their Applications should nevertheless be granted as a matter of this Honourable Court's discretion.

40.     The reasons below apply to the Debtors' application for assistance (in the event their Chapter 11 Cases are recognized only as foreign non-main proceedings):

    (1)     Holdco wholly owns GAP, an entity located in Singapore (see GAP's ACRA business profile exhibited at **[Tab-4]**, and page 7 of GAP's voluntary petition for its Chapter 11 Case, referred to at paragraph **[18]** above and exhibited at **[Tab-6]**), and GGC has an intercompany payable from GAP (see page 59 of the Statement of Financial Affairs of GGC filed in its Chapter 11 Case on 21 March 2023, annexed hereto and marked **[Tab-12]**). Holdco and GGC are seeking further protection of these interests by way of the recognition orders sought in the present Applications from the Singapore High Court (including

entrusting GAP as foreign representative of Holdco and GGC with the administration, realisation and distribution of their assets, per prayer 1(d)(xi) of Holdco and GGC's respective Originating Applications). While the automatic stay imposed by the US Bankruptcy Court under the order approving the Automatic Stay Motion has a worldwide reach and bars such actions under the law of the US, for the avoidance of doubt, the Debtors would also like assistance from the Singapore High Court in having these actions barred under Singapore law.

(2) GAP is an important part of the Debtors' business operations and necessary to the restructuring of the Company. Actions taken by creditors that put GAP at risk would be detrimental to the Debtors' rehabilitation prospects.

41. I am advised and verily believe that Singapore's recognition of the Debtors' Chapter 11 Cases and the rendering of assistance to these proceedings would be justified.

42. Based on the foregoing, and based on the Orders granted at the First Day Hearing by the US Bankruptcy Court, I am advised and verily believe that:

(1) this Honourable Court has jurisdiction to recognise the Debtors' Chapter 11 Cases which are the subject of the Applications as foreign main proceedings within the meaning of Article 2(f) of the Model Law, as each of the Debtors' COMI is the US;

(2) alternatively, this Honourable Court has jurisdiction to recognise each of the Debtors' Chapter 11 Case as a foreign non-main proceeding

within the meaning of Article 2(g) of the Model Law, as each of the

Debtors has an establishment in the US;

(3)   upon recognition of the Debtors' Chapter 11 Cases, pursuant to

Article 20 of the Model Law, the Debtors are immediately entitled to

the relief sought in their respective Originating Applications, including

but not limited to a stay of proceedings, a stay of execution against

their property and a suspension of the right to transfer, encumber or

dispose property of the Debtors; and

(4)   in the alternative, upon recognition of the Debtors' Chapter 11 Cases

as foreign non-main proceedings, pursuant to Article 21 of the Model

Law, each of the Debtors ought to be granted the relief sought in their

respective Originating Applications before this Honourable Court.

43.   As mentioned at paragraph 17 of the Foreign Representative Appointment

Motion, if this Honourable Court recognises the Chapter 11 Cases as foreign

main proceedings, the Debtors will benefit from the protection of an automatic

stay against commencement or continuation of actions or proceedings

concerning the Debtors' assets, rights, obligations and liabilities in Singapore.

I am advised that this refers to the automatic stay pursuant to Article 20(1) of

the Model Law.

44.   Notwithstanding the application of the automatic stay under Article 20(1) of

the Model Law, each Debtor seeks a carve-out from the moratorium relief

sought – in particular, that so long as the Chapter 11 Cases (including any

extensions thereto) are in force, any suspension of each Debtor's "right to transfer, encumber or otherwise dispose of any property of the debtor" under Article 20(1)(c) of the Model Law be disapplied (prayer 1(d)(x)). In respect of the relief sought pursuant to Article 21(1)(c) of the Model Law (under prayer 1(d)(iii) of each Debtor's Originating Application), each Debtor also seeks to preserve its own right to transfer, encumber or otherwise dispose its own property.

45.    GAP is looking to seek an extension of MAS' in-principle approval for a MPI Licence referred to at paragraph **[11]** above, which expires on 31 March 2023. I am advised and verily believe that GAP should not be precluded from continuing its digital asset trading operations, as its Chapter 11 Case allows the disposal of assets (including the joint Chapter 11 Plan currently envisioned which involves the disposition of property) (see paragraph **[19]** above).

46.    Likewise, I verily believe that Holdco and GGC should not be precluded from continuing their respective operations, as Holdco and GGC's Chapter 11 Cases allow them to operate in the ordinary course of business. Holdco and GGC's Chapter 11 Cases also allow the disposal of assets, including through the administration of a sale of assets. The purpose of the Chapter 11 Cases is to effect a restructuring of Holdco, GGC and GAP. I am advised and verily believe that a moratorium which prevents Holdco, GGC and GAP from being able to continue trading or doing business in the ordinary course will defeat this very purpose.

## V.     <u>STATEMENT UNDER ARTICLE 15(3) READ WITH 17(1)(C) OF THE MODEL LAW</u>

47.     I am advised and verily believe that under the regime provided by the IRDA, an application for recognition of foreign proceedings must be accompanied by a statement from the foreign representative identifying all foreign proceedings and proceedings under Singapore insolvency law in respect of the relevant debtor that are known to the said foreign representative. In this respect, I wish to state that I am aware of the following foreign proceedings and proceedings under Singapore insolvency law in respect of each of the Debtors:

    (1)     *SEC v. Genesis Global Capital, LLC*, No. 23-cv-00287 (S.D.N.Y. Jan. 12, 2023).

    (2)     *Levin v. Genesis Global Capital, LLC*, No. 22-cv-7249 (N.D. Ill. Jan. 31, 2023).

48.     There are also confidential proceedings relating to two of the Debtors which I am unable to disclose details of publicly in this affidavit. A separate application will be filed for the sealing of these details that the Applicants seek to disclose in a subsequent affidavit. I shall leave it to my solicitors to elaborate more on this at the appropriate juncture.

28

## VI.    CONCLUSION

49.    For the reasons set out above, I humbly pray for an order in terms of the
Applications made herein.

Affirmed by the abovenamed                              )

**AHMED DERAR ISLIM**                              )

On this  8th   day of May 2023                              )

In New York, United States of America                              )


Before me,


_____

**A NOTARY PUBLIC**

DIANA KIM
NOTARY PUBLIC-STATE OF NEW YORK
No. 02KI6316748
Qualified in Kings County
My Commission Expires 12-22-2026


This Affidavit is filed on behalf of the Applicants.

This is the exhibit marked **"ADI-1"**

referred to in the Affidavit of

**AHMED DERAR ISLIM**

and affirmed on

this   8th   day of May 2023.

Before me,

**A NOTARY PUBLIC**

DIANA KIM
NOTARY PUBLIC-STATE OF NEW YORK
No. 02KI6316748
Qualified in Kings County
My Commission Expires 12-22-2026

**Index to Exhibits**

| Reference in Affidavit under "ADI-1" | Nature of Exhibit | Page No. |
|---|---|---|
| Tab-1 | Company and GGT's corporate structure | 32 |
| Tab-2 | Holdco's company profiles and certificate of change by entity | 34-56 |
| Tab-3 | GGC's company profiles and certificate of formation | 58-74 |
| Tab-4 | ACRA business profile of GAP dated 8 May 2023 | 76-81 |
| Tab-5 | GAP's in-principle approval from MAS for a MPI Licence | 83-94 |
| Tab-6 | Debtors' First Day Pleadings in their Chapter 11 Cases | 96-399 |
| Tab-7 | Notice of Filing of the Restructuring Term Sheet | 401-432 |
| Tab-8 | First Day Hearing presentation deck | 434-452 |
| Tab-9 | Court orders granted at the First Day Hearing | 454-480 |
| Tab-10 | 1.  GGC's Annual Report Certificate for the year 2023<br>2.  GGC's FinCEN MSB registration search | 482-483 |
| Tab-11 | Default notice to GGC and GAP dated 28 November 2022 | 485-488 |
| Tab-12 | Statement of Financial Affairs of GGC filed on 21 March 2023 | 490-571 |

# TAB 1

# The Genesis Group Corporate Structure and the Debtors

© 2022 Genesis |



# TAB 2

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

---

**Department of State: Division of Corporations**

Allowable Characters

| HOME | Entity Details |
|------|----------------|

<div align="center">

**THIS IS NOT A STATEMENT OF GOOD STANDING**

</div>

| File Number: | **6635490** | Incorporation Date / Formation Date: | **11/28/2017** (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | **GENESIS GLOBAL HOLDCO, LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| Name: | **NATIONAL REGISTERED AGENTS, INC.** | | |
|---|---|---|---|
| Address: | **1209 ORANGE STREET** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **302-658-7581** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.
Would you like ○ Status ○ Status,Tax & History Information

Submit

View Search Results          New Entity Search

---

For help on a particular field click on the Field Tag to take you to the help area.

# Company Report

## GENESIS GLOBAL HOLDCO LLC

*Generated 02/27/2023*

## Table of Contents

Company Overview....................................................1
Issuer Credit Ratings.................................................. 2
Historical Price, Volume, and Earnings Data............3
Most Recent Litigation...............................................4
Company Management................................................5
Financial Results........................................................6
Debt and Equity Offerings.........................................7
Holdings.....................................................................8
Company Hierarchy....................................................9
Corporate Actions....................................................10
Most Recent Filings................................................. 11
Recent Company News............................................ 12

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LL

# Company Overview

**DESCRIPTION**

N/A

**QUICK-PROFILE**

| | |
|---|---|
| Country Of Incorporation | United States |
| State Of Incorporation | Delaware |
| Fiscal Year End | N.A. |
| Website | N.A. |
| Employees | N.A. |
| Transfer Agent | N.A. |
| Auditor | N.A. |
| Primary Exchange | N.A. |
| Sector | Financial |
| Industry Group | Investment Companies |
| Industry Sub-Group | Investment Companies |
| SIC Code | N.A. |
| SIC Name | N.A. |
| Equity Float | N.A. |
| Institutional Ownership | N.A. |
| Phone | N.A. |
| Last Closing Price | N.A. |
| Market Capitalization | N.A. |
| 52 Week High | N.A. |
| 52 Week Low | N.A. |
| Shares Outstanding | N.A. |
| Last Dividend | N.A. |
| Cash Flow From Operations | N.A. |
| Cash And Near Cash Items | N.A. |

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

# Issuer Credit Ratings

*Up to last 3 ratings shown.*

### STANDARD & POOR'S

This subsection has no data available.

### MOODY'S

This subsection has no data available.

### FITCH

This subsection has no data available.

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

**Generated 02/27/23**

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP.

# Historical Price, Volume, and Earnings Data

*For comprehensive historical prices, see the Company Overview section on Bloomberglaw.com*

No data available.

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

# Most Recent Litigation

**SELECTED DOCUMENTS**

*25 documents. For a complete listing of Litigation, see the Litigation section on Bloomberglaw.com.*

| Filing Date | Docket | Docket Number | Court |
|---|---|---|---|
| 01/19/23 | Genesis Global Holdco, LLC | 1:23-bk-10063 | Bankr. S.D.N.Y. |

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON L

# Company Management

## EXECUTIVES

This subsection has no data available.

## BOARD OF DIRECTORS

This subsection has no data available.

## COMMITTEES

This subsection has no data available.

## CHANGES

This subsection has no data available.

## INTERLOCKS

This subsection has no data available.

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

**Generated 02/27/23**

This document is being provided for the exclusive use of Lynn Zoubek at CLEARY GOTTLIEB STEEN & HAMILTON LLP

# Financial Results

All financials are in millions of (except Per Share, Per Employee); quarterly data is shown for 01/01/2022 to 12/31/2022

**KEY RATIOS**

This subsection has no data available.

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

**Generated 02/27/23**

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON L...

# Debt and Equity Offerings

**MOST RECENT PUBLIC OFFERING**

This subsection has no data available.

**CORPORATE BONDS**

This subsection has no data available.

**PREFERREDS**

This subsection has no data available.

**EQUITIES**

This subsection has no data available.

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON L

# Holdings

*Up to 20 largest holdings shown. For a complete list of Company Holdings, see the Holdings section on Bloomberglaw.com.*

**INSIDER HOLDINGS**

This subsection has no data available.

**CURRENT INSTITUTIONAL HOLDINGS**

This subsection has no data available.

**HISTORICAL HOLDINGS**

This subsection has no data available.

**BOND HOLDERS**

This subsection has no data available.

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

## Company Hierarchy

Genesis Global Holdco LLC

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON L

# Corporate Actions

*Displaying actions for 02/27/2022 to 02/27/2023. For a complete list see the Corporate Actions section of Bloomberglaw.com.*

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON L

# Most Recent Filings

*Up to 50 most recent filings shown. For a complete list, see the Filings section on Bloomberglaw.com.*

**SELECTED DOCUMENTS**

This subsection has no data available.

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

**Generated 02/27/23**

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON L 47

# Recent Company News

**ALL NEWS**

*5 stories shown. Note: For web stories only headlines are shown. For complete news, see the Overview section on Bloomberglaw.com.*

**Genesis Creditors to Get DCG Loans, Stock Under Proposed Deal**
**Published: Fri Feb 10 18:34:54 EST 2023**

- Deal would restructure $1.7 billion of debt owed to Genesis
- Gemini Earn users may share in $100 million payout, collateral

By Olga Kharif

(Bloomberg) --

Genesis Global Holdco's lawyers submitted a term sheet outlining a settlement with creditors that suggests its parent, Digital Currency Group, will shoulder a major burden in the bankrupt crypto lender's restructuring.

The deal calls for DCG to restructure some $1.7 billion of debt owed to Genesis by issuing new loans and stock to Genesis creditors. It would also see DCG forfeit its ownership in Genesis Global Trading, its non-bankrupt crypto brokerage.

Specifically, DCG will issue junior term loans of about $500 million and 4,600 Bitcoin payable to Genesis creditors, according to details disclosed in court papers Friday. DCG will also issue $575 million of convertible preferred stock that Genesis creditors can sell on an exchange by June of 2025.

The general agreement was outlined Monday during a bankruptcy court hearing. The arrangement is supported by creditors representing more than $2 billion of claims against Genesis, including Gemini Trust Co.

Meanwhile, Gemini — which partnered with Genesis on a high-yield product called Earn — will kick in $100 million as part of the deal. Earn users can collect their share of that cash in exchange for giving up their right to sue Gemini, court papers show.

In addition, Gemini will distribute the value of certain collateral it previously received from Genesis — more than $350 million worth — to Earn customers.

The settlement should provide some relief for Gemini Earn's 340,000 customers, who had loaned out their coins through the Genesis lending business to earn yields of up to 8%. After getting stung by the failures of Three Arrows Capital and FTX, Genesis halted withdrawals in November, leaving Earn users unable to withdraw their assets.

        Bloomberg

The plan is still being finalized and could still change. A special committee is examining potential lawsuits against DCG, and that could impact whether the plan goes forward, the filing said.

The case is Genesis Global Holdco LLC, 23-10063, U.S. Bankruptcy Court for the Southern District of New York (Manhattan).

Read more on Genesis and Gemini:

- Crypto Lender Genesis, Felled By Bank Run, Eyes Quick Bankruptcy
- Gemini and Genesis Sued by SEC Over Crypto 'Earn' Program
- Silbert Wanted to Be Crypto's Rockefeller. Now He's Under Siege
- Winklevoss Brand 'Severely Tarnished' After $900 Million Debacle

To contact the reporter on this story:
Olga Kharif in Portland at okharif@bloomberg.net

To contact the editors responsible for this story:
stacy-marie ishmael at sishmael@bloomberg.net
Dave Liedtka, Jeremy Hill

**Genesis Temporarily Allowed to Reveal a Portion of Creditors**

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

Generated 02/27/23

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON L...

**Published: Fri Jan 27 12:32:43 EST 2023**

By Amelia Pollard

(Bloomberg) --

Crypto lender Genesis Global Holdco LLC will only have to disclose its 50 largest unsecured creditors in its bankruptcy proceeding and can redact certain personal information for now, according to a Friday filing.

- US Bankruptcy Judge Sean H. Lane waived the requirement for the firm to include all of its creditors on an interim basis
    - The firm is temporarily permitted to file a consolidated list, as opposed to each entity filing separately, and a status conference will be held on Feb. 1
- Lawyers representing the firm at a hearing on Jan. 23 argued some creditors shouldn't have to disclose contact information, citing privacy concerns
- A final hearing on the request has been set for Feb. 23
- The case is Genesis Global Holdco LLC, 23-10063, U.S. Bankruptcy Court, Southern District of New York

To contact the reporter on this story:
Amelia Pollard in New York at apollard18@bloomberg.net

To contact the editors responsible for this story:
Claire Boston at cboston6@bloomberg.net
Dawn McCarty

## Crypto Firm Genesis Aims for Creditor Deal in Days, or Mediator
**Published: Mon Jan 23 16:10:46 EST 2023**

- Company appeared in bankruptcy court for first time Monday
- US Trustee questions probe of claims against parent DCG

By Steven Church and Amelia Pollard

(Bloomberg) --

Crypto lender Genesis Global Holdco LLC will either have a deal in days with creditors owed about $3 billion, or it will ask the judge overseeing its bankruptcy to appoint a mediator to lead negotiations, the company said in court Monday.

The talks have included Barry Silbert's Digital Currency Group, which is Genesis' parent and one of the company's top borrowers, company attorney Sean O'Neal said during a court hearing held by video. Genesis holds more than $1.65 billion in claims against DCG, O'Neal said.

"In this case there are literally hundreds of thousands of individuals whose money is at stake," said Chris Marcus of Kirkland & Ellis, who represents a group of creditors which includes Gemini Trust Co., the crypto firm run by Tyler and Cameron Winklevoss. They have pushed Silbert to make good on $900 million of its customers' funds that have been trapped since Genesis ran into trouble in November. That creditor group is owed around $1.5 billion, Marcus said.

Genesis filed bankruptcy last week after collapsing under the force of a prolonged selloff in digital assets. For the last two months, DCG and two creditor groups owed about $3 billion have been negotiating a plan to repay debt holders by either reorganizing Genesis or selling the company.

The company will push to get a deal so it can implement a payout plan no later than May 19, bankruptcy filings show. Genesis will try to sell itself and distribute the proceeds to creditors, according to a statement. If a sale isn't viable, creditors would receive stock in the restructured company.

Any plan would require approval from US Bankruptcy Judge Sean Lane in the Southern District of New York.

Creditors could also wind up collecting money from DCG. Genesis has hired a former federal prosecutor to investigate an $850 million loan the company made to DCG entities, Genesis board member Paul Aronzon said in a court filing. Under the company's reorganization proposal, any money collected from lawsuits filed by Genesis would help repay creditors, Aronzon said.

An attorney for the US Trustee's office signaled that the agency has questions about the company's relationship with Digital Currency Group and Genesis' attempt to investigate its parent company.

The case is Genesis Global Holdco LLC, 23-10063, U.S. Bankruptcy Court, Southern District of New York (Manhattan).

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

**Generated 02/27/23**

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON L49

To contact the reporters on this story:
Steven Church in Wilmington, Delaware at schurch3@bloomberg.net;
Amelia Pollard in New York at apollard18@bloomberg.net

To contact the editors responsible for this story:
Claire Boston at cboston6@bloomberg.net
Michael B. Marois

### Crypto Lender Genesis, Felled By Bank Run, Eyes Quick Bankruptcy
### Published: Fri Jan 20 13:19:24 EST 2023

- Company wants to implement restructuring plan by May 19
- Advisers investigate DCG loan as potential source of recovery

By Jeremy Hill and Steven Church

(Bloomberg) --

Crypto lender Genesis Global Holdco LLC is aiming for a relatively quick exit from bankruptcy court after collapsing under the force of a prolonged selloff in digital assets.

The company, backed by Barry Silbert's Digital Currency Group, filed for Chapter 11 bankruptcy in New York late Thursday. It entered court protection with a restructuring plan already drawn up, with hopes to implement it no later than May 19, bankruptcy filings show.

Genesis will try to sell itself and distribute the proceeds to creditors, according to a statement. If a sale isn't viable, creditors would receive stock in the restructured company. That plan isn't final and requires approval from a federal judge, as well as input from any creditors getting hurt along the way. These include Gemini Trust Co., the crypto firm run by Tyler and Cameron Winklevoss, who have been pushing Silbert to make good on $900 million of its customers' funds that have been trapped since Genesis ran into trouble in November.

If successful, the four-month restructuring would amount to a much faster process than has been seen for other collapsed crypto lenders like Voyager Digital Ltd. and Celsius Network LLC. Genesis is seeking bids for all of its assets no later than April 14, the court papers show.

Creditors could also wind up collecting money from DCG. Genesis has hired a former federal prosecutor to investigate an $850 million loan the company made to DCG entities, Genesis board member Paul Aronzon said in a court filing. Under the company's reorganization proposal, any money collected from lawsuits filed by Genesis would help repay creditors, Aronzon said.

> WATCH: Cryptocurrency lender Genesis Global Capital has filed for Chapter 11 bankruptcy, becoming the latest firm to collapse in the aftermath
> of FTX's swift downfall.
> Source: Bloomberg

DCG has been under financial pressure in the wake of hedge fund Three Arrows Capital's sudden collapse last year. Months later, FTX — where Genesis held some of its funds — began imploding, and Genesis fell prey to a wave of loan redemption requests.

"As the FTX Entities began to experience their collapse, the company received calls on its loans amounting to approximately $827 million," Derar Islim, interim chief executive officer of Genesis, said in court papers. The quasi bank run "was outsized and severely impacted the Company's available liquidity," he said.

Genesis's lending unit suspended withdrawals in November, soon after FTX went bankrupt. Redemptions and loan originations at Genesis's lending operation remain suspended, according to the statement.

The bankruptcy filing doesn't include Genesis Global Trading and other units involved in its derivatives, spot trading and custody businesses. The units in Chapter 11 had more than $5 billion of liabilities — including intercompany balances — as of Nov. 30, according to court papers.

Genesis will have to negotiate with its creditors as it looks to restructure, including the Winklevoss's Gemini Trust. Babel Finance, listed as the third-biggest named Genesis creditor, holds a $150 million claim.

Silbert is locked in an escalating battle with Gemini's Cameron Winklevoss, whose customers lost access to funds placed with Genesis. Winklevoss said in a tweet after the bankruptcy filing that "unless Barry and DCG come to their senses and make a fair offer to creditors, we will be filing a lawsuit against Barry and DCG imminently." The threat follows Winklevoss's accusations earlier this month that Silbert repeatedly misrepresented Genesis's financial position, and his calls for Silbert to be removed as CEO.

DCG has called Winklevoss's statements publicity stunts and said accusations of wrongdoing are baseless. "DCG will continue to engage in constructive

www.bloomberglaw.com © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

negotiations with Genesis and its creditors with the goal of arriving at a solution that works for all parties," the company said in an emailed statement Friday.

The case is Genesis Global Holdco LLC, 23-10063, U.S. Bankruptcy Court, Southern District of New York (Manhattan).

**Read more coverage of the Genesis bankruptcy:**

- Crypto Lender Genesis Files for Bankruptcy as Crisis Spreads
- Bankrupt Genesis Owes Its Top 50 Creditors $3.4 Billion
- How Serial Meltdowns Are Shaking Crypto's Foundations: QuickTake

(Updates with additional details beginning in paragraph one.)

To contact the reporters on this story:
Jeremy Hill in New York at jhill273@bloomberg.net;
Steven Church in Wilmington, Delaware at schurch3@bloomberg.net

To contact the editors responsible for this story:
Claire Boston at cboston6@bloomberg.net
Shannon D. Harrington, Beth Williams

## Crypto Lender Genesis Seeks Quick Exit From Bankruptcy
**Published: Fri Jan 20 09:20:15 EST 2023**

By Jeremy Hill

(Bloomberg) --

Crypto lender Genesis is aiming for a relatively quick exit from bankruptcy court after either selling itself or turning its customers into owners.

The company, backed by Barry Silbert's Digital Currency Group, plans to emerge from Chapter 11 protection no later than May 19, according to bankruptcy court papers. If successful, the four-month restructuring would amount to a much faster process than has been seen for other collapsed crypto lenders like Voyager Digital Ltd. and Celsius Network LLC.

Genesis is seeking bids for all of its assets no later than April 14, the court papers show. If the company doesn't sell itself to repay customers, they'll get stock in the post-bankruptcy company.

WATCH: Cryptocurrency lender Genesis Global Capital has filed for Chapter 11 bankruptcy, becoming the latest firm to collapse in the aftermath of FTX's swift downfall.
Source: Bloomberg

The case is Genesis Global Holdco LLC, 23-10063, U.S. Bankruptcy Court, Southern District of New York (Manhattan).

**Read more coverage of the Genesis bankruptcy:**

- Crypto Lender Genesis Files for Bankruptcy as Crisis Spreads
- Bankrupt Genesis Owes Its Top 50 Creditors $3.4 Billion
- How Serial Meltdowns Are Shaking Crypto's Foundations: QuickTake

To contact the reporter on this story:
Jeremy Hill in New York at jhill273@bloomberg.net

To contact the editors responsible for this story:
Claire Boston at cboston6@bloomberg.net
Shannon D. Harrington

The BLOOMBERG PROFESSIONAL service and data products are owned and distributed by Bloomberg Finance L.P. and its subsidiaries (BFLP) except in Argentina, Bermuda, China, India, Japan and Korea (where Bloomberg L.P. and its subsidiaries (BLP) distribute these products). BLP provides BFLP with global marketing and operational support and service for these products. BFLP and BLP believe the information herein came from reliable sources, but do not guarantee its accuracy. No information or opinion herein constitutes a solicitation of the purchase or sale of securities or commodities. BLOOMBERG, BLOOMBERG LAW, BLOOMBERG PROFESSIONAL, and BLOOMBERG.COM are trademarks and service marks of Bloomberg Finance L.P., a Delaware limited partnership, or its subsidiaries.

**Access live, 24/7 Customer Support at +1 (888) 560-2529**

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

For Terms Of Service and Privacy Policy see **http://www.bloomberglaw.com**

# NEW YORK STATE DEPARTMENT OF STATE
## DIVISION OF CORPORATIONS, STATE RECORDS AND UNIFORM COMMERCIAL CODE
## FILING RECEIPT

| | |
|---|---|
| **ENTITY NAME :** | GENESIS GLOBAL HOLDCO, LLC |
| **DOCUMENT TYPE :** | CERTIFICATE OF CHANGE BY ENTITY |
| **ENTITY TYPE :** | FOREIGN LIMITED LIABILITY COMPANY |

| | |
|---|---|
| **DOS ID :** | 5584882 |
| **FILE DATE :** | 11/02/2022 |
| **FILE NUMBER :** | 221103002123 |
| **TRANSACTION NUMBER :** | 202211020003181-1408212 |
| **EXISTENCE DATE :** | 07/10/2019 |
| **DURATION/DISSOLUTION :** | PERPETUAL |
| **COUNTY :** | NEW YORK |

| | |
|---|---|
| **SERVICE OF PROCESS ADDRESS :** | THE LLC<br>ATTN: ARIANNA PRETTO-SAKMANN, 250 PARK AVENUE SOUTH, 5TH FLOOR<br>NEW YORK, NY, 10003, USA |
| **FILER :** | GENESIS GLOBAL TRADING, INC.<br>250 PARK AVENUE SOUTH 5TH FLOOR,<br>NEW YORK, NY, 10003, USA |
| **SERVICE COMPANY :** | UNITED CORPORATE SERVICES, INC. |
| **SERVICE COMPANY ACCOUNT :** | 37 |

| | |
|---|---|
| ***You may verify this document online at :*** | *http://ecorp.dos.ny.gov* |
| **AUTHENTICATION NUMBER :** | 100002443678 |

| | | | |
|---|---|---|---|
| TOTAL FEES: | $65.00 | TOTAL PAYMENTS RECEIVED: | $65.00 |
| FILING FEE: | $30.00 | CASH: | $0.00 |
| CERTIFICATE OF STATUS: | $0.00 | CHECK/MONEY ORDER: | $0.00 |
| CERTIFIED COPY: | $10.00 | CREDIT CARD: | $0.00 |
| COPY REQUEST: | $0.00 | DRAWDOWN ACCOUNT: | $65.00 |
| EXPEDITED HANDLING: | $25.00 | REFUND DUE: | $0.00 |

# STATE OF NEW YORK
# DEPARTMENT OF STATE

I hereby certify that the annexed copy for GENESIS GLOBAL HOLDCO, LLC, File Number 221103002123 has been compared with the original document in the custody of the Secretary of State and that the same is true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on November 03, 2022.

Brendan C. Hughes
Executive Deputy Secretary of State

**NEW YORK** STATE OF OPPORTUNITY. | **Division of Corporations, State Records and Uniform Commercial Code**

New York State
Department of State
DIVISION OF CORPORATIONS,
STATE RECORDS AND
UNIFORM COMMERCIAL CODE
One Commerce Plaza
99 Washington Ave.
Albany, NY 12231-0001
www.dos.ny.gov

# CERTIFICATE OF CHANGE
# OF

Genesis Global Holdco, LLC

*(Insert Name of Foreign Limited Liability Company)*

Under Section 804-A of the Limited Liability Company Law

**FIRST:** The name of the foreign limited liability company is:

Genesis Global Holdco, LLC

If applicable, the fictitious name the foreign limited liability company has agreed to use in this state is:

**SECOND:** The application for authority was filed with the Department of State on:

7/10/2019

**THIRD:** The change(s) effected hereby are: *(Check appropriate statement(s))*

☐ The county location, within this state, in which the office of the foreign limited liability company is located, is changed to:

☑ The address to which the Secretary of State shall forward copies of process accepted on behalf of the foreign limited liability company is changed to read in its entirety as follows:

The LLC, Attn:Arianna Pretto-Sakmann, 250 Park Avenue South, 5th Fl, New York, NY 10003

☐ The foreign limited liability company hereby: *(check one)*

    ☐ Designates _____

    as its registered agent upon whom process against the foreign limited liability company may be served. The street address of the registered agent is:

DOS-1362-f (Rev. 03/17)                                                    Page 1 of 3

Filed with the NYS Department of State on 11/02/2022
Filing Number: 221103002123 DOS ID: 5584882

☐ Changes the designation of its registered agent to:_____.

The street address of the registered agent is:

_____.

☐ Changes the address of its registered agent to:

_____.

☐ Revokes the authority of its registered agent.

X    /s/ Arianna Pretto-Sakmann
        *(Signature)*

Capacity of signer *(Check appropriate box)*:
☐ Member
☐ Manager
☑ Authorized Person

_____
    Arianna Pretto-Sakmann
        *(Type or Print Name)*

Filed with the NYS Department of State on 11/02/2022
Filing Number: 221103002123 DOS ID: 5584882

# CERTIFICATE OF CHANGE
## OF

Genesis Global Holdco, LLC

*(Insert Name of Foreign Limited Liability Company)*

### Under Section 804-A of the Limited Liability Company Law

Filer's Name and Mailing Address:

*Name:*

Genesis Global Trading, Inc.

*Company, if Applicable:*

250 Park Avenue South 5th Floor

*Mailing Address:*

New York, NY 10003

*City, State and Zip Code:*

**NOTES:**
1. The name of the foreign limited liability company and the date of filing of the application for authority must exactly match the records of the Department of State. This information should be verified on the Department of State's website at www.dos.ny.gov.
2. This form was prepared by the New York State Department of State for filing a certificate of change by a foreign limited liability company. You are not required to use this form. You may draft your own form or use forms available at legal supply stores.
3. The Department of State recommends that legal documents be prepared under the guidance of an attorney.
4. The certificate must be submitted with a $30 filing fee made payable to the Department of State.

*(For office use only)*

DOS-1362-f (Rev. 03/17)                                                                                          Page 3 of 3

Filed with the NYS Department of State on 11/02/2022
Filing Number: 221103002123 DOS ID: 5584882

# TAB 3

Delaware.gov                                                    Governor | General Assembly | Courts | Elected Officials | State Agencies

Department of State: Division of Corporations

Allowable Characters

HOME

| | Entity Details |
|---|---|

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | **6635503** | Incorporation Date / Formation Date: | **11/28/2017** (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | **GENESIS GLOBAL CAPITAL, LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| Name: | **NATIONAL REGISTERED AGENTS, INC.** | | |
|---|---|---|---|
| Address: | **1209 ORANGE STREET** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **302-658-7581** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status  ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map   |   privacy   |   about this site   |   contact us   |   translate   |   delaware.gov

# Company Report

## GENESIS GLOBAL CAPITAL LLC

**111 Town Square Place**
**Suite 1203**
**Jersey City, NJ 07310**
**United States**
**www.genesistrading.com**
**1-917-536-6804**
*Generated 02/27/2023*

## Table of Contents

**Company Overview**.......................................................1
**Issuer Credit Ratings**................................................. 2
**Historical Price, Volume, and Earnings Data**............3
**Most Recent Litigation**...............................................4
**Company Management**.................................................5
**Financial Results**.........................................................6
**Debt and Equity Offerings**.........................................7
**Holdings**.......................................................................8
**Company Hierarchy**..................................................... 9
**Corporate Actions**..................................................... 10
**Most Recent Filings**.................................................. 11
**Recent Company News**.............................................. 12

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights
Reserved.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

# Company Overview

## DESCRIPTION

Genesis Global Capital, LLC provides financial services. The Company specializes in lending and borrowing services for digital assets and fiat currency to and from institutional and HNWI clients. Genesis Global Capital serves customers globally.

## QUICK-PROFILE

| | |
|---|---|
| Country Of Incorporation | United States |
| State Of Incorporation | Delaware |
| Fiscal Year End | N.A. |
| Website | www.genesistrading.com |
| Employees | N.A. |
| Transfer Agent | N.A. |
| Auditor | N.A. |
| Primary Exchange | N.A. |
| Sector | Financial |
| Industry Group | Diversified Finan Serv |
| Industry Sub-Group | Finance-Other Services |
| SIC Code | N.A. |
| SIC Name | N.A. |
| Equity Float | N.A. |
| Institutional Ownership | N.A. |
| Phone | 1-917-536-6804 |
| Last Closing Price | N.A. |
| Market Capitalization | N.A. |
| 52 Week High | N.A. |
| 52 Week Low | N.A. |
| Shares Outstanding | N.A. |
| Last Dividend | N.A. |
| Cash Flow From Operations | N.A. |
| Cash And Near Cash Items | N.A. |

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON L

# Issuer Credit Ratings

*Up to last 3 ratings shown.*

## STANDARD & POOR'S

This subsection has no data available.

## MOODY'S

This subsection has no data available.

## FITCH

This subsection has no data available.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

62

# Historical Price, Volume, and Earnings Data

*For comprehensive historical prices, see the Company Overview section on Bloomberglaw.com*

No data available.

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

**Generated 02/27/23**

This document is being provided for the exclusive use of Lynn Zoubek at CLEARY GOTTLIEB STEEN & HAMILTON LLP

# Most Recent Litigation

**SELECTED DOCUMENTS**

*25 documents. For a complete listing of Litigation, see the Litigation section on Bloomberglaw.com.*

| Filing Date | Docket | Docket Number | Court |
|---|---|---|---|
| 12/27/22 | Levin v. Genesis Global Capital, LLC | 1:22-cv-07249 | N.D. Ill. |
| 01/12/23 | Securities and Exchange Commission v. Genesis Global Capital, LLC et al | 1:23-cv-00287 | S.D.N.Y. |
| 01/19/23 | Genesis Global Capital, LLC | 1:23-bk-10064 | Bankr. S.D.N.Y. |

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

# Company Management

## EXECUTIVES

This subsection has no data available.

## BOARD OF DIRECTORS

This subsection has no data available.

## COMMITTEES

This subsection has no data available.

## CHANGES

This subsection has no data available.

## INTERLOCKS

This subsection has no data available.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON L

# Financial Results

All financials are in millions of (except Per Share, Per Employee); quarterly data is shown for 01/01/2022 to 12/31/2022

**KEY RATIOS**

This subsection has no data available.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

# Debt and Equity Offerings

**MOST RECENT PUBLIC OFFERING**

This subsection has no data available.

**CORPORATE BONDS**

This subsection has no data available.

**PREFERREDS**

This subsection has no data available.

**EQUITIES**

This subsection has no data available.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

# Holdings

*Up to 20 largest holdings shown. For a complete list of Company Holdings, see the Holdings section on Bloomberglaw.com.*

### INSIDER HOLDINGS

This subsection has no data available.

### CURRENT INSTITUTIONAL HOLDINGS

This subsection has no data available.

### HISTORICAL HOLDINGS

This subsection has no data available.

### BOND HOLDERS

This subsection has no data available.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

# Company Hierarchy

Genesis Global Capital LLC

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

69

# Corporate Actions

*Displaying actions for 02/27/2022 to 02/27/2023. For a complete list see the Corporate Actions section of Bloomberglaw.com.*

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

# Most Recent Filings

*Up to 50 most recent filings shown. For a complete list, see the Filings section on Bloomberglaw.com.*

**SELECTED DOCUMENTS**

This subsection has no data available.

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

# Recent Company News

## ALL NEWS
*1 stories shown. Note: For web stories only headlines are shown. For complete news, see the Overview section on Bloomberglaw.com.*

## Gemini Faced Criminal Probe Over Claims in CFTC Lawsuit
## Published: Mon Feb 13 19:38:39 EST 2023

- Former executives turned over laptops to federal prosecutors
- CFTC wants to search laptops in civil case against Gemini

By Ava Benny-Morrison

(Bloomberg) --

Former executives at cryptocurrency exchange Gemini Trust Co. were the subject of a now-closed criminal investigation surrounding the company's debut of the first US-related Bitcoin futures contract, according to a court filing.

The probe focused on issues at the heart of a civil case brought by the Commodity Futures Trading Commission in June. Regulators accused the Winklevoss twins' exchange of misleading authorities about how it would prevent manipulation in Bitcoin prices that were to serve as a reference for the derivatives based on the cryptocurrency.

As part of the criminal investigation that had started earlier, the Manhattan US Attorney's Office subpoenaed laptops from two former executives — Benjamin Small and Shane Molidor, according to a court filing last week by lawyers for Gemini. The exchange handed over the company-issued laptops to federal prosecutors in late 2017 or early 2018, according to a person familiar with the matter.

The CFTC is now pushing to examine the laptops as part of its own civil case against Gemini. According to court filings, one of the employees, either Small or Molidor, "drafted, edited, reviewed and made statements to CFTC staff concerning the bitcoin futures contract."

During a hearing about pretrial information sharing in federal court in Manhattan on Monday, Gemini's lawyer John Baughman said that one of the laptops was encrypted and his team was attempting to find the password.

Small, the former chief operating officer, became a whistleblower after leaving the exchange. He unsuccessfully sued Gemini last year, alleging the company fired him for blowing the whistle on improper transactions. An arbitrator found Small was properly fired in 2017 for being "grossly negligent" in his duties, resulting in a huge financial losses for Gemini.

Molidor worked in business development at Gemini. He was appointed chief executive officer of AscendEX, formerly BitMax, last year.

After a lengthy inquiry, prosecutors returned the laptops to Gemini last year. No criminal charges were filed and the probe is now closed. The investigation highlights the intense focus on cryptocurrency exchanges in recent years with inquiries from regulators often crossing over with prosecutors.

Gemini had refused to let the CFTC copy the entire contents of the laptops, but the regulator will be allowed to provide search terms. Gemini said it originally provided the computers to prosecutors "in connection with an investigation into potential wrongdoing by two Gemini employees," according to last week's filing.

Gemini and Molidor didn't immediately respond to requests for comment. Small couldn't immediately be reached for comment.

Read More: Bitcoin Manipulation Said to Be Focus of U.S. Criminal Probe

According to the CFTC, Gemini loaned market makers funds to induce more trading on the exchange, which allegedly reduced protections against price manipulation. The regulator also said that Gemini staff decided to leave it to market-making firms to figure out how to keep people from trading with themselves, saying in one internal message that the traders "'are grownups, they can figure it out,'" according to the lawsuit.

The agency said in the complaint that self-trading, which can distort markets, only rarely occurred on the platform after the exchange took steps in May 2017 to prevent it.

In January, the Securities and Exchange Commission sued crypto brokerage Genesis Global Capital over its role in the Gemini Earn Program, which let customers loan their assets in exchange for interest payments. This amounted to the offering of unregistered securities, the SEC alleged.

The case is Commodity Futures Trading Commission v. Gemini Trust Co., 22-cv-04563, US District Court, Southern District of New York (Manhattan).

To contact the reporter on this story:

www.bloomberglaw.com © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

Generated 02/27/23

This document is being provided for the exclusive use of Lynn Zoubok at CLEARY GOTTLIEB STEEN & HAMILTON LLP

Ava Benny-Morrison in New York at abennymorris@bloomberg.net

To contact the editors responsible for this story:
Anthony Lin at alin364@bloomberg.net;
Angela Moon at hmoon43@bloomberg.net
Peter Blumberg

The BLOOMBERG PROFESSIONAL service and data products are owned and distributed by
Bloomberg Finance L.P. and its subsidiaries (BFLP) except in Argentina, Bermuda, China, India,
Japan and Korea (where Bloomberg L.P. and its subsidiaries (BLP) distribute these products). BLP
provides BFLP with global marketing and operational support and service for these products. BFLP
and BLP believe the information herein came from reliable sources, but do not guarantee its
accuracy. No information or opinion herein constitutes a solicitation of the purchase or sale of
securities or commodities. BLOOMBERG, BLOOMBERG LAW, BLOOMBERG PROFESSIONAL,
and BLOOMBERG.COM are trademarks and service marks of Bloomberg Finance L.P., a Delaware
limited partnership, or its subsidiaries.

**Access live, 24/7 Customer Support at +1 (888) 560-2529**

**www.bloomberglaw.com** © 2023 The Bureau of National Affairs, Inc. All Rights Reserved.

For Terms Of Service and Privacy Policy see **http://www.bloomberglaw.com**

# CERTIFICATE OF FORMATION

## OF

## GENESIS GLOBAL CAPITAL, LLC

This Certificate of Formation of Genesis Global Capital, LLC, dated as of November 28, 2017, is being duly executed and filed by James Morgan, as Authorized Person, to form a Limited Liability Company under the Delaware Limited Liability Company Act.

FIRST:  The name of the limited liability company is Genesis Global Capital, LLC (the "Company").

SECOND:  The address of the Company's registered office in the State of Delaware is 160 Greentree Dr. Ste 101, Dover, Delaware, 19904 in the County of Kent.  The name of the Company's registered agent at such address is National Registered Agents, Inc.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation of Genesis Global Capital, LLC as of the date first above written.

By: _____,
Authorized Person

# TAB 4

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
(ACRA)

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Business Profile (Company) of GENESIS ASIA PACIFIC PTE. LTD. (202002164R)

Date: 08 May 2023

| | | |
|---|---|---|
| Name of Company | : | GENESIS ASIA PACIFIC PTE. LTD. |
| Former Name if any | : | |
| Date of Change of Name | : | |
| UEN | : | 202002164R |
| Incorporation Date | : | 16 JAN 2020 |
| Company Type | : | PRIVATE COMPANY LIMITED BY SHARES |
| Status of Company | : | LIVE COMPANY |
| Status Date | : | 16 JAN 2020 |
| Registered Office Address | : | 61 ROBINSON ROAD #07-01 61 ROBINSON SINGAPORE (068893) |
| Date of Address | : | 30 APR 2023 |
| Date of Last AGM | : | 30 JUN 2022 |
| Date of Last AR | : | 29 JUL 2022 |
| FYE As At Date of Last AR | : | 31 DEC 2021 |

## Business Activities

| | | |
|---|---|---|
| Primary Activity | : | TRANSACTION/PAYMENT PROCESSING SERVICES(66195) |
| Primary User-Described Activity | : | |

**Verify Document Instantly**

Check if this document is issued by ACRA.

https://www.acratrustbar.gov.sg/verify/xef6t3j-ef



ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
(ACRA)

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Business Profile (Company) of GENESIS ASIA PACIFIC PTE. LTD. (202002164R)

Date: 08 May 2023

| Secondary Activity | : |
|---|---|
| Secondary User-Described Activity | : |

### Issued Share Capital

| Amount | Number of Shares [1] | Currency | Share Type |
|---|---|---|---|
| 1000 | 1000 | SINGAPORE, DOLLARS | ORDINARY |

[1] Number of Shares includes number of Treasury Shares

### Paid-Up Capital

| Amount | Number of Shares | Currency | Share Type |
|---|---|---|---|
| 1000 | 1000 | SINGAPORE, DOLLARS | ORDINARY |

### Company has the following Ordinary Shares held as Treasury Shares

| Number of Shares | Currency |
|---|---|

### Audit Firm(s)

| Name |
|---|
| JK MEDORA PAC |

**Verify Document Instantly**

Check if this document is issued by ACRA.

https://www.acratrustbar.gov.sg/verify/xef6t3j-ef



ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
(ACRA)

biz*file*  78 +

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Business Profile (Company) of GENESIS ASIA PACIFIC PTE. LTD. (202002164R)

Date: 08 May 2023

## Charge(s)

| Charge Number | Date Registered | Currency | Amount Secured | Chargee(s) |
|---|---|---|---|---|

## Officer(s)

| Name Address | Identification Number | Nationality/ Citizenship | Position | Date of Appointment | Source of Address |
|---|---|---|---|---|---|
| CHAN LAI KAM ALICE<br><br>250 PARK AVENUE SOUTH, 5TH FLOOR,<br>NEW YORK, NY 10003, UNITED STATES OF AMERICA | ▉ | AMERICAN | DIRECTOR | 12 SEP 2022 | ACRA |
| AHMED DERAR ISLIM<br><br>250 PARK AVENUE SOUTH, 5TH FLOOR,<br>NEW YORK, NY 10003, UNITED STATES OF AMERICA | ▉ | AMERICAN | DIRECTOR | 12 SEP 2022 | ACRA |
| NG LIP CHIH<br><br>30 CECIL STREET<br>#11-04<br>PRUDENTIAL TOWER<br>SINGAPORE (049712) | ▉ | SINGAPORE CITIZEN | DIRECTOR | 13 JAN 2023 | ACRA |

**Verify Document Instantly**

Check if this document is issued by ACRA.

https://www.acratrustbar.gov.sg/verify/xef6t3j-ef



ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
(ACRA)

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

## Business Profile (Company) of GENESIS ASIA PACIFIC PTE. LTD. (202002164R)

Date: 08 May 2023

| Officer(s) | | | | | |
|---|---|---|---|---|---|
| **Name** **Address** | **Identification Number** | **Nationality/ Citizenship** | **Position** | **Date of Appointment** | **Source of Address** |
| ARIANNA PRETTO<br><br>250 PARK AVENUE SOUTH, 5TH FLOOR,<br>NEW YORK, NY 10003, UNITED STATES OF AMERICA | ██████ | ITALIAN | DIRECTOR | 16 JAN 2020 | ACRA |
| CHEN MEIYUN, AGNES<br><br>30 RAFFLES PLACE<br>#23-01<br>OXLEY @ RAFFLES<br>SINGAPORE (048622) | ██████ | SINGAPORE CITIZEN | SECRETARY | 09 JUN 2021 | ACRA |

**Verify Document Instantly**

Check if this document is issued by ACRA.

https://www.acratrustbar.gov.sg/verify/xef6t3j-ef



ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
(ACRA)

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

## Business Profile (Company) of GENESIS ASIA PACIFIC PTE. LTD. (202002164R)

Date: 08 May 2023

### Shareholder(s)

| Name | Identification Number | Nationality [2]/ Place of origin [3] | Number of Shares | Currency | Address Changed |
|---|---|---|---|---|---|
| Address | | | | | Source of Address |
| GENESIS GLOBAL HOLDCO, LLC | T20UF0454D | UNITED STATES OF AMERICA | 1000 (ORDINARY) | SINGAPORE, DOLLARS | |
| 160 GREENTREE DR. STE 101, DOVER, DELAWARE, 19904, USA | | | | | ACRA |

[2] Includes nationality and citizenship
[3] Includes place of incorporation, place of origin and place of registration

## Abbreviation

| | | |
|---|---|---|
| UL | : | Local Entity not registered with ACRA |
| UF | : | Foreign Entity not registered with ACRA |
| AR | : | Annual Return |
| AGM | : | Annual General Meeting |
| FS | : | Financial Statements |
| FYE | : | Financial Year End |
| OSCARS | : | One Stop Change of Address Reporting Service by Immigration & Checkpoint Authority. |



**Verify Document Instantly**

Check if this document is issued by ACRA.

https://www.acratrustbar.gov.sg/verify/xef6t3j-ef

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
(ACRA)

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Business Profile (Company) of GENESIS ASIA PACIFIC PTE. LTD. (202002164R)

Date: 08 May 2023

## Notes

1  All the information provided above are extracted from lodgements filed with ACRA and/or from other government sources.

2  Please check to ensure that this document is issued by ACRA by:
   (a) scanning the verification QR code at the bottom of the page, or
   (b) visiting the verification URL at the bottom of the page, or
   (c) uploading the verifiable OpenAttestation file (e.g. Business_Profile.oa) on www.acratrustbar.gov.sg.



TAN YONG TAT

ASST REGISTRAR OF COMPANIES & BUSINESS NAMES
ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)
SINGAPORE

RECEIPT NO.   :   ACRA230508180915

DATE   :   08 MAY 2023

**Verify Document Instantly**

Check if this document is issued by ACRA.

https://www.acratrustbar.gov.sg/verify/xef6t3j-ef



# TAB 5

RESTRICTED

Monetary Authority of Singapore
10 Shenton Way MAS Building Singapore 079117  Telephone: (65) 6225 5577  Facsimile: (65) 6229 9229



File Ref: PS 2020/0564
DID: (65) 6229 9582
Email: Dorothy_SIM@mas.gov.sg

22 June 2022

Genesis Asia Pacific Pte. Ltd.
1 Raffles Quay
#45-03 North Tower
Singapore 048583

Attention:  Ms Satbir Walia

Dear Satbir

## APPLICATION FOR MAJOR PAYMENT INSTITUTION LICENCE UNDER THE PAYMENT SERVICES ACT 2019

We refer to Genesis Asia Pacific Pte. Ltd.'s (the "Company") application for a major payment institution ("MPI") licence (the "Licence") dated 27 July 2020 and subsequent correspondence in relation to the Company's application to provide a digital payment token service.

Conditions of the Company's Licence

2        Pursuant to section 6(7)(a) of the Payment Services Act ("PS Act"), the Monetary Authority of Singapore (the "Authority") is prepared to grant the Company the Licence subject to the following conditions:

(a)   the Company must notify the Authority of significant changes to its business model, including the listing of higher risk digital payment tokens and any changes to its compliance arrangements in respect of the value transfer requirements set out in paragraph 13 of MAS Notice PSN02; and

RESTRICTED

84

Monetary Authority of Singapore

**RESTRICTED**

(b) the Company must notify the Authority of any change in business address, phone number, email address or any other contact details within seven days of such change.

3    The Authority's approval will be based on the business model set out in the Company's proposal submitted to the Authority on 27 July 2020, as well as in the subsequent meetings, emails and correspondence with the Authority between 29 March 2021 and 16 June 2022.

<u>Information to be provided to the Authority</u>

4    Pursuant to section 6(9)(g) of the PS Act, the Company must, within **six months** from the date of this letter –

(a) inform the Authority of its intended date of commencement of its payment services in Singapore;

(b) submit an application for Interbank GIRO ("GIRO Application"), for annual licence fee and MASNET subscription fee payments to MAS, to DBS Bank at the following address –

> Cheque & GIRO
> GIRO Application (DDA Maintenance)
> DBS Bank
> 2 Changi Business Park Crescent
> #07-05, DBS Asia Hub
> Singapore 486029

Parts 1 and 2 of the GIRO Application must be completed by the Company prior to submission. The Company must submit a <u>physical, original</u> copy of the GIRO Form, signed by its authorised signatories in <u>wet ink</u>;

(c) submit **soft copies** of the following documents and information to the Authority via email:

(i)  the Company must perform a penetration test of its proposed online financial services, remediate all identified high risk findings, and conduct independent validation on the effectiveness of the

**RESTRICTED**

Monetary Authority of Singapore

**RESTRICTED**

remediation actions taken prior to the commencement of regulated payment services. The Company must furnish a written confirmation that it has completed these steps and provide a copy of the penetration test report;

(ii)    the Company must implement security measures for DevSecOps management and software release management in accordance with paragraphs 6.3.2 and 7.6.1 respectively of the Technology Risk Management Guidelines. The Company must furnish a written confirmation that it has completed these steps;

(iii)    address and contact number of the permanent place of business or registered office where the regulated payment services will be conducted;

(iv)    the Financial Year End of the Company;

(v)    contact details of the person who the Authority can correspond with for supervisory matters;

(vi)    a copy of the GIRO Application;

(vii)    signed copies of the following forms (sent to the Company via email) required for the establishment of a MAS Network Service ("MASNET") account:

- Application-cum-Agreement for MAS Network Service (two copies)
- MASNET User Account Creation Form (one copy)

(viii)    if the Company opts to place its security deposit[1] in the form of a <u>cash deposit</u> with the Authority, a copy of the transaction statement or record, as set out in **Annex 1**; and

(d)    submit **physical copies** of the following documents and information to the Authority at the following address –

---

[1] As required by section 22 of the PS Act read with regulation 13 of the Payment Services Regulations 2019.

**RESTRICTED**

**Page 3 of 12**

Monetary Authority of Singapore

**RESTRICTED**

Licensing Team
Payments Department
The Monetary Authority of Singapore
10 Shenton Way, MAS Building
Singapore 079117

as well as **soft copies** of the same via email:

(i)     Genesis Global Holdco, LLC ("Genesis Global") must furnish a Letter of Responsibility ("LR") to the Authority that it will be responsible for the Company's operations in Singapore. A specimen of the LR is in **Annex 2**. The LR must be made under the corporate letterhead of Genesis Global; and

(ii)    if the Company opts to place its security deposit in the form of a banker's guarantee with the Authority, the physical, original copy of the banker's guarantee, as set out in **Annex 3**. The banker's guarantee must not be sent via unregistered mail.

The information requested in paragraphs 4(a) to 4(d) above will hereinafter be collectively referred to as the "Licence Approval Information".

Grant of Licence

5       Upon receiving the Licence Approval Information, the Authority will grant the Licence.

Other Obligations and Duties of the Company

6       The Authority collects licence fees annually by deducting the fees from the licensee's Interbank GIRO account. The Company must ensure that sufficient funds are maintained for payment, and the Company must inform the Authority immediately if there are any changes to its account details.

7       MASNET will be used for important communications from the Authority to all licensees. The Company's MASNET Liaison Officer(s) must also access all communications

**RESTRICTED**

Monetary Authority of Singapore

**RESTRICTED**

sent via MASNET in a timely manner, and ensure that they are disseminated to relevant personnel within the Company.

8       The Authority expects all financial institutions to keep up-to-date with developments relating to anti-money laundering/countering the financing of terrorism regulations and comply with suspicious transactions reporting requirements.  Within one month from the date of this letter, the Company should –

(a)   subscribe to the email notification feature in the Authority's website at https://www.mas.gov.sg/subscription-services for updates.  On the subscription page, under the "Regulations" section, the Company should check "All Regulations", as well as any other topics of interest to the Company; and

(b)   register for a STRO Online Notices and Reporting platform ("SONAR") user account with the Suspicious Transactions Reporting Office of the Commercial Affairs Department. Please visit https://www.police.gov.sg/sonar and login with the Company's CorpPass credentials to register for an account.  For technical assistance, the Company may email SPF_STRO_IT_Team@spf.gov.sg.

9       The Authority reserves the right to impose such further conditions (including varying any conditions imposed) and to withdraw this letter where appropriate.

10      This letter, including its Annexes, is confidential and must not be disclosed or made available in any manner, in whole or in part, to any person without the prior written approval of the Authority.

**RESTRICTED**

Monetary Authority of Singapore

**RESTRICTED**

11      Please contact Ms Dorothy Sim at (65) 6229 9582 (Dorothy_SIM@mas.gov.sg) should you need any further clarification.


Yours faithfully


MICHELLE TAN
DEPUTY DIRECTOR & HEAD
PAYMENTS SUPERVISION DIVISION
PAYMENTS DEPARTMENT

**RESTRICTED**

**RESTRICTED**

ANNEX 1

**CASH DEPOSIT**

All payments are to be made to the Authority's current account via an electronic funds transfer system designated from time to time by the Authority.

| | |
|---|---|
| Account Name: | Monetary Authority of Singapore Account 2 |
| Bank Name: | DBS Bank Ltd |
| Bank Address: | 12 Marina Boulevard, Level 3 Marina Bay Financial Centre Tower 3, Singapore 018982 |
| Branch: | MBFC Branch |
| Branch Code: | 001 |
| Account No.: | 001-027239-0 |
| DBS SWIFT BIC: | DBSSSGSG |
| PayNow: | T08GB0031LAC2 (Please quote this in the UEN field) |

2    If the Company opts to place a cash deposit as the security deposit, please make a separate payment and include the suffix "MPISD" followed by the Company UEN number and indicate the payment details as "security deposit for MPI".

3    Upon completion of payment of the security deposit, please provide the Authority with a copy of the transaction statement or record in softcopy via email, indicating the relevant transaction reference numbers.

**RESTRICTED**

**RESTRICTED**

<div align="right">ANNEX 2</div>

**SPECIMEN LETTER OF RESPONSIBILITY**

To:     The Monetary Authority of Singapore
        10 Shenton Way
        MAS Building
        Singapore 079117

This letter sets out the responsibilities of Genesis Global Holdco, LLC ("Genesis Global") in respect of Genesis Asia Pacific Pte. Ltd. (the "Company") and does not, of itself, create any new legal obligations.

2      In consideration of the Monetary Authority of Singapore granting a licence to the Company under section 6(7)(a) of the Payment Services Act 2019 (Act 2 of 2019), we hereby confirm that we, Genesis Global, will at all times –

(a)   accept full responsibility for all the operations of the Company;

(b)   ensure that the Company maintains a sound financial position at all times;

(c)   provide adequate funds to meet, pay and settle all present and future obligations and liabilities of the Company, whether actual or contingent and howsoever arising;

(d)   ensure that the Company complies with all the relevant laws as may be in force and other legal requirements that may be applicable;

(e)   ensure that the Company establishes adequate and robust internal control and risk management systems commensurate with the level and risk profile of its activities in Singapore;

(f)   provide the appropriate management and technical expertise to the Company;

(g)   provide training to the employees of the Company sufficient to equip them with the knowledge and skills to perform their responsibilities; and

**RESTRICTED**

**RESTRICTED**

    (h)  provide the Company with any other form of support (financial or otherwise) should weaknesses be identified in any area of the Company's operations.

SIGNED BY:

_____

Director on behalf of Genesis Global

<u>Note:</u>

(1)  This letter should be furnished on Genesis Global's company letterhead.

(2)  This letter should be accompanied by a certified copy of the Board Resolution of Genesis Global authorising the execution of this letter by Genesis Global's authorised signatory(ies).

**RESTRICTED**

**RESTRICTED**

**BANKER'S GUARANTEE**

Ref No:

To :    The Monetary Authority of Singapore
        10 Shenton Way
        MAS Building
        Singapore 079117

IN CONSIDERATION OF the Monetary Authority of Singapore ("MAS") granting [Name of Licensee] (the "Licensee") a major payment institution licence (the "Licence") under the Payment Services Act 2019 ("PS Act") and forbearing to require the security deposit required under section 22 of the PS Act to be provided in cash, we, [Name of Bank], acting through our branch at [address of Bank branch] hereby irrevocably and unconditionally undertake and guarantee as follows:

1       We shall, on first demand made in writing by MAS to us at the address above stated, pay to MAS a sum of Singapore Dollars ……………. (S$................) ("the sum guaranteed").  Upon such written demand by MAS, we shall pay to MAS the sum guaranteed in full without MAS being required to show that the Licensee has ceased to carry on business or has otherwise defaulted or will default on any of its obligations or contravened or will contravene any provision of the PS Act or any conditions of its Licence.

2       Any demand, notification or certificate given by MAS to us specifying the sums due and payable under or in connection with any of the provisions of this banker's guarantee shall, in the absence of manifest error, be conclusive and binding upon us.

3       We shall on demand indemnify MAS and keep MAS indemnified against all losses, actions, claims, costs, charges, expenses and liabilities suffered or incurred by MAS in respect of this banker's guarantee (including the costs, charges and expenses incurred in the enforcement of any of the provisions of this banker's guarantee or occasioned by any breach by us of any of our obligations to MAS under this banker's guarantee), subject to our liability not exceeding the sum guaranteed.

**RESTRICTED**

4      The obligations and liabilities assumed by us under this banker's guarantee are those of a primary obligor and not merely as a surety.  Our liability under this banker's guarantee shall not be affected, discharged or diminished by any act or omission which would but for this provision have exonerated us from our liability as a surety.

5      We hereby warrant and represent to MAS that this banker's guarantee is a legal, valid and binding obligation of [name of bank] and is enforceable against [name of bank] according to its terms.

6      Subject to clause 8, this banker's guarantee shall not be amended, withdrawn or terminated, without the prior written consent of MAS.

7      We shall also not assign or otherwise transfer this banker's guarantee, except with the prior written consent of MAS.

8      This banker's guarantee —
   (a)      shall take effect on [date] and remain valid and effective for one calendar year thereafter notwithstanding:
      (i)      the cessation of business of the Licensee;
      (ii)       any variation of the Licence; or
      (iii)      the revocation, lapsing, suspension or surrender of the Licence; and

   (b)      shall be automatically renewed on identical terms, including this clause for renewal, for successive periods of one year thereafter unless:

      (i)      we serve written notice upon MAS that this banker's guarantee will not be automatically renewed; and
      (ii)      such notice is served 3 months prior to the date upon which this banker's guarantee is to be automatically renewed.

In the event that such notice is served upon MAS, MAS may make a demand under this banker's guarantee notwithstanding the expiry of this banker's guarantee provided that the demand is received by us no later than 3 months after the date of expiry of this banker's guarantee.

9      The Contracts (Rights of Third Parties) Act (Cap. 53B) shall have no application whatsoever to this banker's guarantee.  No person other than MAS may seek to enforce the terms of this banker's guarantee.

**RESTRICTED**

10      This banker's guarantee shall be governed by and interpreted according to the laws of the Republic of Singapore and we irrevocably submit to the non-exclusive jurisdiction of the Courts of the Republic of Singapore.

Dated this        day of                20__.

Signed for and on behalf of            )
[Full name of Bank]                    )
by its Attorney                        )
[Name of Attorney] [NRIC No.]          )
acting under a Power of Attorney       )
dated [date]                           )

**(Signature of Attorney)**

In the presence of
[Name of witness] [NRIC No.]           **(Signature of Witness)**

Note:

(1)     This banker's guarantee should be furnished on the Bank's letterhead.

(2)     This banker's guarantee should be accompanied by:

**Either** –

(i)     a certified copy of the Board Resolution of the Bank authorising the execution of this banker's guarantee by the signatories; **or**

(ii)    a certified copy of the Power of Attorney or other document conferring authority on the signatories to execute this banker's guarantee on behalf of the Bank.

**RESTRICTED**

# TAB 6

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Joint Administration Pending |

**NOTICE OF COMMENCEMENT OF
CHAPTER 11 CASES AND FIRST DAY HEARING**

  **PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC and its affiliates Genesis Global Capital, LLC and Genesis Asia Pacific Pte. Ltd. as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and the cases, the "Chapter 11 Cases"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the Bankruptcy Court for the Southern District of New York (the "Court").

  **PLEASE TAKE FURTHER NOTICE** that a hearing (the "First Day Hearing") has been scheduled for January 23, 2023, at 2:00 pm (Prevailing Eastern Time) before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601, in order to consider, among other things, the relief requested by the Debtors in the First Day Pleadings (as defined below).  The First Day Hearing will be conducted only through Zoom for government.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

PLEASE TAKE FURTHER NOTICE that parties wishing to register for the Zoom hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances.

PLEASE TAKE FURTHER NOTICE that copies of each pleading identified below can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, at https://restructuring.ra.kroll.com/genesis/ or by calling +1 888-524-2017. Note that a PACER password is needed to access documents on the Court's website.

PLEASE TAKE FURTHER NOTICE that the First Day Hearing may affect your rights. Please read the below motions and applications to be heard at the First Day Hearing (the "First Day Pleadings") carefully and, if you have one available, discuss them with your attorney. (If you do not have an attorney, you should consider consulting with one.)

PLEASE TAKE FURTHER NOTICE that, if you oppose the relief requested in the First Day Pleadings, or if you want the Court to hear your position on the First Day Pleadings, then you or your attorney must attend the First Day Hearing. If you or your attorney does not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the First Day Pleadings and may enter orders granting the relief requested by the Debtors.

PLEASE TAKE FURTHER NOTICE that an agenda for the First Day Hearing is set forth below.

## AGENDA FOR FIRST DAY HEARING

**I.  Motions and Applications to be Heard at the First Day Hearing**

1.  **Joint Administration Motion.** *Debtors' Motion for Entry of an Order Directing Joint Administration of their Chapter 11 Cases*. ECF No. 2.

2.  **Consolidated Creditors List Motion.** *Debtors' Motion for an Order Waiving the Requirement That Each Debtor File a List of Creditors and (i) Authorizing Preparation of a Consolidated List of Creditors, In Lieu of Submitting a Formatted Mailing Matrix, (ii) Authorizing the Debtors to File a Consolidated List of the Debtors' Fifty (50) Largest Unsecured Creditors, (iii) Authorizing the Debtors to Redact Certain Personally Identifiable Information, and (iv) Granting Related Relief.* ECF No. 14.

3.  **Schedules Extension/Waiver Motion.** *Debtors' Motion for an Order Extending Time to File Schedules Of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, Statements of Financial Affairs, and Rule 2015.3 Financial Reports*. ECF No. 3.

4. **Automatic Stay Motion.** *Debtors' Motion for an Order Authorizing Debtors to Operate Their Businesses in the Ordinary Course and Ordering Implementation of the Automatic Stay.* ECF No. 13.

5. **Cash Management Motion.** *Debtors' Motion For Entry Of Interim And Final Orders (i) Authorizing Debtors To Continue To Operate The Existing Cash Management System, Including Existing Bank Accounts, Honor Certain Prepetition Obligations Related Thereto, And Maintain Existing Business Forms; (ii) Permitting Continued Intercompany Transactions And Granting Certain Administrative Claims; (iii) Extending The Time To Comply With The Requirements Of Section 345 Of The Bankruptcy Code; And (iv) Granting Related Relief.* ECF No. 15.

6. **Taxes and Fees Motion.** *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Payment of Certain Taxes and Fees.* ECF No. 9.

7. **Critical Vendor Motion.** *Debtors' Motion for Entry of Interim and Final Orders (i) Authorizing, but Not Directing, the Debtors to Pay Certain Prepetition Claims of Critical Vendors and Foreign Vendors, (ii) Authorizing And Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Claims and (iii) Granting Related Relief.* ECF No. 11.

8. **Employee Wages Motion.** *Debtors' Motion Of Genesis Asia Pacific Pte. Ltd. for Entry of Interim and Final Orders (i) Authorizing Genesis Asia Pacific Pte. Ltd. to (A) Pay Certain Employee Wages and Other Compensation and Related Obligations and (B) Maintain and Continue Employee Benefits and Programs in the Ordinary Course, and (ii) Authorizing and Directing Applicable Banks To Honor All Transfers Related To Such Obligations.* ECF No. 16.

9. **Foreign Representative Appointment Motion.** *Debtors' Motion Pursuant to Section 1505 of the Bankruptcy Code for Authorization of Genesis Asia Pacific Pte Ltd. to Act As the Foreign Representative of the Debtors.* ECF No. 4.

10. **Case Management Motion.** *Debtors' Motion For Entry of an Order Implementing Certain Notice and Case Management Procedures.* ECF No. 10.

11. **Kroll Claims and Noticing Agent Application.** *Debtors' Application for Appointment of Kroll Restructuring Administration LLC As Claims and Noticing Agent.* ECF No. 12.

II. **Related Pleadings**

1. **Islim Declaration.** *Declaration of A. Derar Islim in Support of First Day Motions and Application in Compliance with Local Rule 1007-2.* ECF No. 17.

2. **Leto Declaration.** *Declaration of Michael Leto in Support of First Day Motions and Application in Compliance with Local Rule 1007-2.* ECF No. 18.

3. **Aronzon Declaration**. *Declaration of Paul Aronzon in Support of First Day Motions and Application in Compliance with Local Rule 1007-2.* ECF No. 19.

4. **Plan.** *Debtors' Joint Prepackaged Chapter 11 Plan.* ECF No. 20.

Dated:  January 20, 2023       CLEARY GOTTLIEB STEEN & HAMILTON LLP
        New York, New York

                               /s/ Sean A. O'Neal
                               Sean A. O'Neal
                               Jane VanLare
                               One Liberty Plaza
                               New York, New York 10006
                               Telephone:  (212) 225-2000
                               Facsimile:  (212) 225-3999

                               *Proposed Counsel for the Debtors*
                               *and Debtors-in-Possession*

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

__Southern__ District of __New York__
(State)

Case number (*If known*): __23-10063 (SHL)__   Chapter __11__

☒ Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Genesis Global Holdco, LLC |
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 3 8 – 4 0 5 8 2 1 9 |

| | | |
|---|---|---|
| 4. | **Debtor's address** | **Principal place of business**<br><br>250 Park Avenue South<br>Number  Street<br><br>5th Floor<br><br>New York   NY   10003<br>City   State   ZIP Code<br><br>New York<br>County | **Mailing address, if different from principal place of business**<br><br>Number   Street<br><br>P.O. Box<br><br>City   State   ZIP Code<br><br>**Location of principal assets, if different from principal place of business**<br><br>Number   Street<br><br>City   State   ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | www.genesistrading.com |

| Debtor | Genesis Global Holdco, LLC | Case number (if known) | 23-10063 (SHL) |
|---|---|---|---|
| | Name | | |

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

5   2   3   9

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☑ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

| Debtor | Genesis Global Holdco, LLC | Case number *(if known)* | 23-10063 (SHL) |
|---|---|---|---|
| | Name | | |

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes. District _____ When _____ Case number _____
                              MM / DD / YYYY

District _____ When _____ Case number _____
                     MM / DD / YYYY

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☒ Yes. Debtor  See attached Schedule 1                Relationship  Affiliate

District  Southern District of New York          When  Date hereof
                                                       MM / DD / YYYY

Case number, if known _____

---

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                          Number       Street

_____

_____
City                              State ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

---

| Debtor | Genesis Global Holdco, LLC | Case number *(if known)* | 23-10063 (SHL) |
|---|---|---|---|
| | Name | | |

---

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

---

**14. Estimated number of creditors**

☒ 1-49     ☐ 1,000-5,000     ☐ 25,001-50,000
☐ 50-99     ☐ 5,001-10,000     ☐ 50,001-100,000
☐ 100-199     ☐ 10,001-25,000     ☐ More than 100,000
☐ 200-999

---

**15. Estimated assets**

☐ $0-$50,000     ☐ $1,000,001-$10 million     ☐ $500,000,001-$1 billion
☐ $50,001-$100,000     ☐ $10,000,001-$50 million     ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000     ☐ $50,000,001-$100 million     ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million     ☒ $100,000,001-$500 million     ☐ More than $50 billion

---

**16. Estimated liabilities**

☐ $0-$50,000     ☐ $1,000,001-$10 million     ☐ $500,000,001-$1 billion
☐ $50,001-$100,000     ☐ $10,000,001-$50 million     ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000     ☐ $50,000,001-$100 million     ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million     ☒ $100,000,001-$500 million     ☐ More than $50 billion

---

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   01/19/2023
           MM / DD / YYYY

✘ /s/ A. Derar Islim                 A. Derar Islim
Signature of authorized representative of debtor       Printed name

Title   Interim CEO

---

| Debtor | Genesis Global Holdco, LLC | Case number (if known) | 23-10063 (SHL) |
|--------|-------------|-------------|-------------|
|        | Name        |             |             |

**18. Signature of attorney**

✗ /s/ Sean A. O'Neal

Signature of attorney for debtor

Date 01/19/2023

MM / DD / YYYY

Sean A. O'Neal

Printed name

Cleary Gottlieb Steen & Hamilton LLP

Firm name

One Liberty Plaza

Number          Street

New York

City

NY          10006

State          ZIP Code

212-225-2000

Contact phone

soneal@cgsh.com

Email Address

3979267

Bar number

NY

State

## SCHEDULE 1

### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York. The Debtors have moved for joint administration of these cases for procedural purposes only under the case number assigned to the chapter 11 case of Genesis Global Holdco, LLC.

1. Genesis Global Holdco, LLC

2. Genesis Global Capital, LLC

3. Genesis Asia Pacific Pte. Ltd.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Joint Administration Pending |

**CONSOLIDATED CORPORATE OWNERSHIP STATEMENT PURSUANT**
**TO FEDERAL RULES OF BANKRUPTCY PROCEDURES 1007 AND 7007.1**

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure,

the above-captioned debtors and debtors in possession (each, a "Debtor") hereby state as follows:

1. Genesis Global Holdco, LLC is 100% owned by Digital Currency Group, Inc.

2. Genesis Global Capital, LLC is 100% owned by Genesis Global Holdco, LLC.

3. Genesis Asia Pacific Pte. Ltd. is 100% owned by Genesis Global Holdco, LLC.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

**Fill in this information to identify the case and this filing:**

Debtor Name __Genesis Global Holdco LLC_____

United States Bankruptcy Court for the: _____ __Southern__ District of __New York__
(State)

Case number (*If known*): __23-10063 (SHL)_____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐   *Schedule H: Codebtors* (Official Form 206H)

☐   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐   Amended *Schedule* ____

☒   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒   Other document that requires a declaration__Corporate Ownership Statement_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  __01/19/2023__          ✗ __/s/ A. Derar Islim_____
MM / DD / YYYY                     Signature of individual signing on behalf of debtor

                                   __A. Derar Islim_____
                                   Printed name

                                   __Interim CEO_____
                                   Position or relationship to debtor

Fill in this information to identify the case:

Debtor name  Genesis Global Holdco, LLC, et al.

United States Bankruptcy Court for the: Southern District of New York

Case number (If known): 23-10063

☑ Check if this is an amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 50 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 50 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Various Lenders as defined in certain Master Digital Asset Loan Agreements entered into with Gemini Trust Company, LLC, as agent for the Lenders | On File | Loan Payable | Unliquidated Disputed* | | | $ 765,900,135 |
| 2 | On File | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 462,209,125 |
| 3 | On File | On File | Loan Payable | Unliquidated | $ 446,863,828 | Undetermined | Undetermined |
| 4 | On File | On File | Collateral Payable | Unliquidated | | | $ 230,023,000 |
| 5 | Mirana Corp. | On File | Loan Payable | Unliquidated | | | $ 151,568,100 |
| 6 | Moonalpha Financial Services Limited | On File | Loan Payable | Unliquidated | | | $ 150,015,000 |
| 7 | On File | On File | Loan Payable | Unliquidated | | | $ 114,507,650 |
| 8 | Coincident Capital International, Ltd. C/O Forbes Hare Trust Company | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 112,272,921 |
| 9 | On File | On File | Loan Payable | Unliquidated | | | $ 90,000,000 |
| 10 | Donut, Inc. | On File | Loan Payable | Unliquidated | | | $ 78,037,054 |
| 11 | On File | On File | Loan Payable | Unliquidated | | | $ 75,451,600 |
| 12 | On File | On File | Loan Payable | Unliquidated | | | $ 64,912,001 |
| 13 | Altcoinomy SA | On File | Loan Payable | Unliquidated | | | $ 61,801,095 |
| 14 | Streami Inc. | On File | Loan Payable | Unliquidated | | | $ 56,766,174 |
| 15 | Heliva International Corp | On File | Loan Payable | Unliquidated | | | $ 55,005,190 |
| 16 | VanEck New Finance Income Fund, LP | On File | Loan Payable | Unliquidated | | | $ 53,101,676 |
| 17 | On File | On File | Loan Payable | Unliquidated | | | $ 51,785,259 |
| 18 | On File | On File | Loan Payable | Unliquidated | | | $ 47,202,205 |
| 19 | Claure Group LLC | On File | Loan Payable | Unliquidated | | | $ 45,857,828 |
| 20 | On File | On File | Loan Payable | Unliquidated | | | $ 40,822,287 |
| 21 | On File | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 40,266,984 |
| 22 | On File | On File | Collateral Payable | Unliquidated | | | $ 39,787,136 |
| 23 | On File | On File | Loan Payable | Unliquidated | | | $ 38,532,747 |
| 24 | Digital Finance Group | On File | Loan Payable | Unliquidated | | | $ 37,907,447 |
| 25 | On File | On File | Loan Payable | Unliquidated | | | $ 35,214,334 |
| 26 | On File | On File | Loan Payable | Unliquidated | | | $ 32,557,600 |
| 27 | Plutus Lending LLC | On File | Loan Payable | Unliquidated | | | $ 30,003,000 |
| 28 | Ripio International | On File | Loan Payable | Unliquidated | | | $ 27,552,174 |
| 29 | Winah Securities S.A. | On File | Loan Payable | Unliquidated | | | $ 26,896,243 |
| 30 | On File | On File | Loan Payable | Unliquidated | | | $ 26,176,466 |
| 31 | Levity & Love, LLC | On File | Loan Payable | Unliquidated | | | $ 25,534,533 |
| 32 | On File | On File | Loan Payable | Unliquidated | | | $ 21,622,568 |
| 33 | Caramila Capital Management LLC | On File | Loan Payable | Unliquidated | | | $ 21,561,663 |
| 34 | On File | On File | Loan Payable | Unliquidated | | | $ 20,645,334 |
| 35 | On File | On File | Loan Payable | Unliquidated | | | $ 20,152,817 |
| 36 | Big Time Studios Ltd. | On File | Loan Payable | Unliquidated | | | $ 20,000,000 |
| 37 | Cumberland DRW LLC | On File | Collateral Payable | Unliquidated | | | $ 18,720,061 |
| 38 | On File | On File | Loan Payable | Unliquidated | | | $ 17,463,057 |

*Claim amount is estimated and is net of proceeds from foreclosure on certain collateral. GGC disputes whether the foreclosure satisfied applicable law.

Debtor Genesis Global Holdco, LLC, et al.

Case number (if known) 23-10063

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount.  If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 39 | On File | On File | Loan Payable | Unliquidated | | | $ 17,246,080 |
| 40 | On File | On File | Loan Payable | Unliquidated | | | $ 15,445,729 |
| 41 | Coinhouse | On File | Loan Payable | Unliquidated | | | $ 14,857,000 |
| 42 | Stellar Development Foundation | On File | Loan Payable | Unliquidated | | | $ 13,187,008 |
| 43 | On File | On File | Loan Payable | Unliquidated | | | $ 13,127,878 |
| 44 | Bayhawk Fund LLC | On File | Loan Payable | Unliquidated | | | $ 12,562,500 |
| 45 | On File | On File | Loan Payable | Unliquidated | | | $ 11,292,345 |
| 46 | On File | On File | Loan Payable | Unliquidated | | | $ 10,905,742 |
| 47 | On File | On File | Loan Payable | Unliquidated | | | $ 10,369,828 |
| 48 | The Badger Technology Company Holdings, Ltd. | On File | Loan Payable | Unliquidated | | | $ 10,245,821 |
| 49 | Valour, Inc. | On File | Collateral Payable | Unliquidated | | | $ 10,239,290 |
| 50 | Schnutz Investments LP | On File | Loan Payable | Unliquidated | | | $ 10,148,492 |

U.S. Dollar balances based off of market prices as of 01/18/2023

** This revised list is being filed to remove certain sensitive, non-public information contained herein.

**CERTIFICATION OF RESOLUTIONS**
**OF THE SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF**
**GENESIS GLOBAL HOLDCO, LLC**

The undersigned, being all the members the Special Committee (the "Special Committee") of the Board of Directors (the "Board") of Genesis Global Holdco, LLC ("Company"), a Delaware limited liability corporation, does hereby certify that the following resolutions was adopted by the Special Committee at a meeting of the Special Committee on January 19, 2023, upon the request of the Directors, Paul Aronzon and Thomas Conheeney, and that the same have not been revoked, rescinded, cancelled, annulled, modified, or amended in any manner and are in full force and effect. Capitalized terms used in this certification (this "Certification") that are not otherwise defined herein shall have such meaning as is assigned to them in the Amended and Restated Operating Agreement of Genesis Global Holdco, LLC (the "LLC Agreement").

**WHEREAS**, the Special Committee was formed with the purpose and role to (i) evaluate, on behalf of the Company or its subsidiaries, various strategic alternatives or transactions involving the Company and its subsidiaries that affect the liquidity or balance sheet of the Company or its subsidiaries, including, without limitation, the commencement of any financing, sale, restructuring, reorganization, liquidations, or other strategic alternatives (collectively, the "Special Matters"), and (ii) act on behalf of, and bind, the Company with respect to the Special Matters;

**WHEREAS**, the Special Committee has reviewed and had the opportunity to ask questions about the materials presented by the management and the legal and financial advisors of the Company regarding the liabilities and liquidity of the Company, the strategic alternatives available to it and the impact of the foregoing on the Company's businesses; and

**WHEREAS**, the Special Committee, pursuant to its authority under that certain Genesis Global Holdco, LLC Special Committee Charter (the "Special Committee Charter"), desires to approve the following resolutions.

**Commencement of Chapter 11 Cases**

**NOW, THEREFORE, BE IT HEREBY,**

**RESOLVED**, that the Special Committee has determined, after consultation with the management and legal and financial advisors of the Company, that it is desirable and in the best interests of the Company, its creditors, and other parties in interest that a petition be filed by the Company seeking relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and be it further

**RESOLVED**, that the Special Committee has determined, after consultation with the management and legal and financial advisors of the Company, that it is desirable and in the best interests of the Company and its subsidiaries that petitions be filed by Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific Pte. Ltd. ("GAP," along with the Company and GGC, the "Filing Entities") seeking relief under the Bankruptcy Code and the Special Committee hereby directs the members or board, as applicable, of GGC and GAP to take all necessary and appropriate actions to ratify this Certification; and be it further

**RESOLVED**, that any officer of the Filing Entities (each, an "Authorized Person"), in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, to negotiate, execute, deliver, file and perform, in the name and on behalf of the Filing Entities, and under its corporate seal or otherwise, all petitions, schedules, motions, lists, applications, pleadings, orders and other documents (the "Chapter 11 Filings") (with such changes therein and additions thereto as any such Authorized Person may deem necessary, appropriate or advisable, the execution and delivery of any of the Chapter 11 Filings by any such Authorized Person with any changes thereto to be conclusive evidence that any such Authorized Person deemed such changes to meet such standard); and be it further

**RESOLVED**, that each Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Filing Entities, to take and perform any and all further acts and deeds that such Authorized Person deems necessary, appropriate, or desirable in connection with the chapter 11 cases (the "Chapter 11 Cases"), the Chapter 11 Filings or the plan term sheet (the "Plan Term Sheet," attached hereto as **Exhibit A**), including, without limitation, (i) the payment of fees, expenses and taxes such Authorized Person deems necessary, appropriate, or desirable, and (ii) negotiating, executing, delivering, performing and filing any and all additional documents, schedules, statements, lists, papers, agreements, certificates and/or instruments (or any amendments or modifications thereto) in connection with, or in furtherance of, the Filing Entities' Chapter 11 Cases with a view to the successful prosecution of such Chapter 11 Cases (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard); and be it further

**Retention of Advisors**

**RESOLVED**, that the law firm of Cleary Gottlieb Steen & Hamilton LLP, located at One Liberty Plaza, New York, New York 10006, has been retained as restructuring counsel for the Filing Entities in the Chapter 11 Cases; and be it further

**RESOLVED**, that the firm of Alvarez & Marsal Holdings, LLC, located at 600 Madison Avenue, New York, NY 10022, has been retained as financial advisor for the Filing Entities in the Chapter 11 Cases; and be it further

**RESOLVED**, that the firm of Moelis & Company LLC, located at 399 Park Avenue, 4th Floor, New York, NY 10022, has been retained as financial advisor, capital markets advisor and investment banker for the Filing Entities in the Chapter 11 Cases; and be it further

**RESOLVED**, that the firm of Kroll Restructuring Administration, located at 55 East 52nd Street, 17th Floor, New York, NY 10055 has been retained as claims, noticing and solicitation agent for the Filing Entities in the Chapter 11 Cases; and be it further

**RESOLVED**, that, with respect to the Filing Entities, each Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Filing Entities, to negotiate, execute, deliver, file and perform any agreement, document or certificate and to take and perform any and all further acts and deeds (including, without limitation, (i) the payment of any consideration and (ii) the payment of fees, expenses and taxes) that such Authorized Person deems necessary, proper, or desirable in connection with the Chapter 11 Cases, including, without limitation, negotiating, executing, delivering and performing any and all documents, agreements, certificates and/or instruments (or any amendments or modifications thereto) in connection with the engagement of

DocuSign Envelope ID: 98F86A38-6B41-49CD-A2CA-fEBE3016A8B4
23-10063-shl Doc 22 Filed 01/20/23 Entered 01/20/23 13:50:43 Main Document Pg 193 of 694

113

professionals contemplated by these resolutions, with a view to the successful prosecution of the Chapter 11 Cases; and be it further

## Ratification

**RESOLVED**, that any and all past actions heretofore taken by any Authorized Person, any director, or any member of the Filing Entity in the name and on behalf of the Filing Entity in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects.

**RESOLVED**, that, with respect to the Filing Entities, each Authorized Person, any one of whom may act without the joinder of any of the others, hereby is authorized in the name and on behalf of the Filing Entities, to take all such further actions, including, but not limited to, (i) the negotiation of such additional agreements, amendments, modifications, supplements, reports, documents, instruments, applications, notes or certificates not now known but which may be required, (ii) the execution, delivery and filing (if applicable) of any of the foregoing and (iii) the payment of all fees, consent payments, taxes and other expenses as any such Authorized Person, in his or her sole discretion, may approve or deem necessary, appropriate or desirable in order to carry out the intent and accomplish the purposes of the foregoing resolutions and the transactions contemplated thereby, all of such actions, executions, deliveries, filings and payments to be conclusive evidence of such approval or that such Authorized Person deemed the same to be so necessary, appropriate or desirable; and be it further

**RESOLVED**, that any and all past actions heretofore taken by any Authorized Person, any director, or any member of any Filing Entity in the name and on behalf of the Filing Entity in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects.

*[Signature Page Follows]*

**IN WITNESS WHEREOF,** the undersigned have executed this Certificate as of January 19, 2023.

DocuSigned by:

*Paul Aronzon*

029DAA6CE23D465...

**Paul Aronzon**

DocuSigned by:

*Thomas Conheeney*

D9F48433A8D042B...

**Thomas Conheeney**

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern _____ District of New York _____
(State)

Case number (*If known*): 23-10064 (SHL) _____ Chapter 11 ___

☒ Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Genesis Global Capital, LLC |

2. **All other names debtor used in the last 8 years**

Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number** (EIN)

3 7 – 1 8 7 8 5 6 4

4. **Debtor's address**

**Principal place of business**

250 Park Avenue South
Number     Street

New York            NY      10003
City                State    ZIP Code

New York
County

**Mailing address, if different from principal place of business**

Number        Street

P.O. Box

City                State    ZIP Code

**Location of principal assets, if different from principal place of business**

Number        Street

City                State    ZIP Code

5. **Debtor's website** (URL)        www.genesistrading.com

| Debtor | Genesis Global Capital, LLC | Case number *(if known)* | 23-10064 (SHL) |
|---|---|---|---|
| | Name | | |

**6.  Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding  LLP)

☐ Other. Specify: _____

**7.  Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C.  NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes .

| 5 | 2 | 3 | 9 |
|---|---|---|---|

**8.  Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11.  *Check **all** that apply*:

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☑ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

| Debtor | Genesis Global Capital, LLC | Case number (if known) | 23-10064 (SHL) |
|---|---|---|---|
| | Name | | |

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes. District _____ When _____ Case number _____
MM / DD / YYYY

District _____ When _____ Case number _____
MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes. Debtor __See attached Schedule 1__ Relationship __Affiliate__

District __Southern District of New York__ When __Date hereof__
MM / DD / YYYY

Case number, if known _____

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (Check all that apply.)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number    Street

_____
City    State ZIP Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

---

| Debtor | Genesis Global Capital, LLC | Case number (if known) | 23-10064 (SHL) |
|---|---|---|---|
| | Name | | |

---

**13. Debtor's estimation of available funds**

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

---

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☑ More than 100,000 |
| ☐ 200-999 | | |

---

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☑ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☑ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

### Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  01/19/2023
MM / DD / YYYY

✗  /s/ A. Derar Islim

Signature of authorized representative of debtor

A. Derar Islim

Printed name

Title  Director

---

| Debtor | Genesis Global Capital, LLC | Case number *(if known)* | 23-10064 (SHL) |
|---|---|---|---|
| | Name | | |

**18. Signature of attorney**

✖   /s/ Sean A. O'Neal
Signature of attorney for debtor

Date   01/19/2023
        MM / DD / YYYY

Sean A. O'Neal
Printed name

Cleary Gottlieb Steen & Hamilton LLP
Firm name

One Liberty Plaza
Number        Street

New York                                          NY        10006
City                                              State     ZIP Code

212-225-2000                          soneal@cgsh.com
Contact phone                         Email address

3979267                               NY
Bar number                            State

**SCHEDULE 1**

**Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**

On the date hereof, each of the entities listed below (collectively, the "Debtors"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York.  The Debtors have moved for joint administration of these cases for procedural purposes only under the case number assigned to the chapter 11 case of Genesis Global Holdco, LLC.

1. Genesis Global Holdco, LLC

2. Genesis Global Capital, LLC

3. Genesis Asia Pacific Pte. Ltd.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-( 10064 )(SHL) |
| Debtors. | Joint Administration Pending |

**CONSOLIDATED CORPORATE OWNERSHIP STATEMENT PURSUANT
TO FEDERAL RULES OF BANKRUPTCY PROCEDURES 1007 AND 7007.1**

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the above-captioned debtors and debtors in possession (each, a "Debtor") hereby state as follows:

1. Genesis Global Holdco, LLC is 100% owned by Digital Currency Group, Inc.

2. Genesis Global Capital, LLC is 100% owned by Genesis Global Holdco, LLC.

3. Genesis Asia Pacific Pte. Ltd. is 100% owned by Genesis Global Holdco, LLC.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

Fill in this information to identify the case and this filing:

Debtor Name __Genesis Global Capital LLC__

United States Bankruptcy Court for the: _____ __Southern__ District of __New York__
                                                                              (State)

Case number (*If known*):  __23-10064 (SHL)__

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule _____*

☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒ Other document that requires a declaration __Corporate Ownership Statement__

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __01/19/2023__              ✗ __/s/ A. Derar Islim__
             MM / DD / YYYY                 Signature of individual signing on behalf of debtor

                                        __A. Derar Islim__
                                        Printed name

                                        __Director__
                                        Position or relationship to debtor

Official Form 202                **Declaration Under Penalty of Perjury for Non-Individual Debtors**

| Fill in this information to identify the case: |
| --- |
| Debtor name Genesis Global Holdco, LLC, et al. |
| United States Bankruptcy Court for the: Southern District of New York |
| Case number (If known): 23-10063 |

☑ Check if this is an
amended filing

Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 50 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 50 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Various Lenders as defined in certain Master Digital Asset Loan Agreements entered into with Gemini Trust Company, LLC, as agent for the Lenders | On File | Loan Payable | Unliquidated Disputed* | | | $ 765,900,135 |
| 2 | On File | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 462,209,125 |
| 3 | On File | On File | Loan Payable | Unliquidated | $ 446,863,828 | Undetermined | Undetermined |
| 4 | On File | On File | Collateral Payable | Unliquidated | | | $ 230,023,000 |
| 5 | Mirana Corp. | On File | Loan Payable | Unliquidated | | | $ 151,568,100 |
| 6 | Moonalpha Financial Services Limited | On File | Loan Payable | Unliquidated | | | $ 150,015,000 |
| 7 | On File | On File | Loan Payable | Unliquidated | | | $ 114,507,650 |
| 8 | Coincident Capital International, Ltd. C/O Forbes Hare Trust Company | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 112,272,921 |
| 9 | On File | On File | Loan Payable | Unliquidated | | | $ 90,000,000 |
| 10 | Donut, Inc. | On File | Loan Payable | Unliquidated | | | $ 78,037,054 |
| 11 | On File | On File | Loan Payable | Unliquidated | | | $ 75,451,600 |
| 12 | On File | On File | Loan Payable | Unliquidated | | | $ 64,912,001 |
| 13 | Altcoinomy SA | On File | Loan Payable | Unliquidated | | | $ 61,801,095 |
| 14 | Streami Inc. | On File | Loan Payable | Unliquidated | | | $ 56,766,174 |
| 15 | Heliva International Corp | On File | Loan Payable | Unliquidated | | | $ 55,005,190 |
| 16 | VanEck New Finance Income Fund, LP | On File | Loan Payable | Unliquidated | | | $ 53,101,676 |
| 17 | On File | On File | Loan Payable | Unliquidated | | | $ 51,785,259 |
| 18 | On File | On File | Loan Payable | Unliquidated | | | $ 47,202,205 |
| 19 | Claure Group LLC | On File | Loan Payable | Unliquidated | | | $ 45,857,828 |
| 20 | On File | On File | Loan Payable | Unliquidated | | | $ 40,822,287 |
| 21 | On File | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 40,266,984 |
| 22 | On File | On File | Collateral Payable | Unliquidated | | | $ 39,787,136 |
| 23 | On File | On File | Loan Payable | Unliquidated | | | $ 38,532,747 |
| 24 | Digital Finance Group | On File | Loan Payable | Unliquidated | | | $ 37,907,447 |
| 25 | On File | On File | Loan Payable | Unliquidated | | | $ 35,214,334 |
| 26 | On File | On File | Loan Payable | Unliquidated | | | $ 32,557,600 |
| 27 | Plutus Lending LLC | On File | Loan Payable | Unliquidated | | | $ 30,003,000 |
| 28 | Ripio International | On File | Loan Payable | Unliquidated | | | $ 27,552,174 |
| 29 | Winah Securities S.A. | On File | Loan Payable | Unliquidated | | | $ 26,896,243 |
| 30 | On File | On File | Loan Payable | Unliquidated | | | $ 26,176,466 |
| 31 | Levity & Love, LLC | On File | Loan Payable | Unliquidated | | | $ 25,534,533 |
| 32 | On File | On File | Loan Payable | Unliquidated | | | $ 21,622,568 |
| 33 | Caramila Capital Management LLC | On File | Loan Payable | Unliquidated | | | $ 21,561,663 |
| 34 | On File | On File | Loan Payable | Unliquidated | | | $ 20,645,334 |
| 35 | On File | On File | Loan Payable | Unliquidated | | | $ 20,152,817 |
| 36 | Big Time Studios Ltd. | On File | Loan Payable | Unliquidated | | | $ 20,000,000 |
| 37 | Cumberland DRW LLC | On File | Collateral Payable | Unliquidated | | | $ 18,720,061 |
| 38 | On File | On File | Loan Payable | Unliquidated | | | $ 17,463,057 |

*Claim amount is estimated and is net of proceeds from foreclosure on certain collateral. GGC disputes whether the foreclosure satisfied applicable law.

Debtor Genesis Global Holdco, LLC, et al.                                                    Case number (if known) 23-10063

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 39 | On File | On File | Loan Payable | Unliquidated | | | $ 17,246,080 |
| 40 | On File | On File | Loan Payable | Unliquidated | | | $ 15,445,729 |
| 41 | Coinhouse | On File | Loan Payable | Unliquidated | | | $ 14,857,000 |
| 42 | Stellar Development Foundation | On File | Loan Payable | Unliquidated | | | $ 13,187,008 |
| 43 | On File | On File | Loan Payable | Unliquidated | | | $ 13,127,878 |
| 44 | Bayhawk Fund LLC | On File | Loan Payable | Unliquidated | | | $ 12,562,500 |
| 45 | On File | On File | Loan Payable | Unliquidated | | | $ 11,292,345 |
| 46 | On File | On File | Loan Payable | Unliquidated | | | $ 10,905,742 |
| 47 | On File | On File | Loan Payable | Unliquidated | | | $ 10,369,828 |
| 48 | The Badger Technology Company Holdings, Ltd. | On File | Loan Payable | Unliquidated | | | $ 10,245,821 |
| 49 | Valour, Inc. | On File | Collateral Payable | Unliquidated | | | $ 10,239,290 |
| 50 | Schnutz Investments LP | On File | Loan Payable | Unliquidated | | | $ 10,148,492 |

U.S. Dollar balances based off of market prices as of 01/18/2023

** This revised list is being filed to remove certain sensitive, non-public information contained herein.

**WRITTEN CONSENT IN LIEU OF A MEETING**
**OF THE SOLE MEMBER OF**
**GENESIS GLOBAL CAPITAL, LLC**

**January 19, 2023**

The undersigned, being the sole member (the "<u>Sole Member</u>") of Genesis Global Capital, LLC, a Delaware limited liability company (the "<u>Company</u>"), in lieu of holding a meeting, hereby takes the following actions and adopts, consents to and ratifies the following resolutions by written consent, in each case effective as the date set forth above. Capitalized terms used in this Written Consent that are not otherwise defined herein shall have such meaning as is assigned to them in the Amended and Restated Operating Agreement of Genesis Global Capital, LLC (the "<u>LLC Agreement</u>").

**WHEREAS**, the Special Committee of Genesis Global Holdco, LLC (the "<u>Special Committee</u>") formed with the purpose and role to evaluate, on behalf of the Company, various strategic alternatives or transactions involving the Company that affect the liquidity or balance sheet of the Company, including, without limitation, the commencement of any financing, sale, restructuring, reorganization, liquidations, or other strategic alternatives;

**WHEREAS**, the Special Committee, upon review of materials regarding the liabilities and liquidity of the Company, the strategic alternatives available to it and the impact of the foregoing on the Company's businesses, have directed the Sole Member to ratify its decision that a petition be filed by the Company seeking relief under chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"); and

**WHEREAS**, the Sole Member has reviewed and had the opportunity to ask questions about the materials presented by the management and the legal and financial advisors of the Company regarding the liabilities and liquidity of the Company, the strategic alternatives available to it and the impact of the foregoing on the Company's businesses; and

**WHEREAS**, the Sole Member desires to approve the following resolutions.

<u>**Commencement of Chapter 11 Case**</u>

**NOW, THEREFORE, BE IT HEREBY,**

**RESOLVED**, that upon direction of Special Committee and after consultation with the management and legal and financial advisors of the Company, that it is desirable and in the best interests of the Company, its creditors, and other parties in interest that a petition be filed by the Company seeking relief under the Bankruptcy Code; and be it further

**RESOLVED**, that any officer of the Company (each, an "<u>Authorized Person</u>"), in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, to negotiate, execute, deliver, file and perform, in the name and on behalf of the Company, and under its corporate seal or otherwise, all petitions, schedules, motions, lists, applications, pleadings, orders and other documents (the "<u>Chapter 11 Filings</u>") (with such changes therein and additions thereto as any such Authorized Person may deem necessary, appropriate or advisable, the execution and delivery of any of the Chapter 11 Filings by any such Authorized Person with any changes thereto to be conclusive evidence that any such Authorized Person

1

deemed such changes to meet such standard); and be it further

**RESOLVED**, that each Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to take and perform any and all further acts and deeds that such Authorized Person deems necessary, appropriate, or desirable in connection with the chapter 11 case (the "Chapter 11 Case"), the Chapter 11 Filings or the plan term sheet (the "Plan Term Sheet," attached hereto as **Exhibit A**), including, without limitation, (i) the payment of fees, expenses and taxes such Authorized Person deems necessary, appropriate, or desirable, and (ii) negotiating, executing, delivering, performing and filing any and all additional documents, schedules, statements, lists, papers, agreements, certificates and/or instruments (or any amendments or modifications thereto) in connection with, or in furtherance of, the Company Chapter 11 Case with a view to the successful prosecution of such Chapter 11 Case (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard); and be it further

## Retention of Advisors

**RESOLVED**, that the law firm of Cleary Gottlieb Steen & Hamilton LLP, located at One Liberty Plaza, New York, New York 10006, has been retained as restructuring counsel for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the firm of Alvarez & Marsal Holdings, LLC, located at 600 Madison Avenue, New York, NY 10022, has been retained as  financial advisor for the  Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the firm of Moelis & Company LLC, located at 399 Park Avenue, 4th Floor, New York, NY 10022, has been retained as financial advisor, capital markets advisor and investment banker for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the firm of Kroll Restructuring Administration, located at 55 East 52nd Street, 17th Floor, New York, NY 10055 has been retained as claims, noticing and solicitation agent for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that, with respect to the Company, each Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to negotiate, execute, deliver, file and perform any agreement, document or certificate and to take and perform any and all further acts and deeds (including, without limitation, (i) the payment of any consideration and (ii) the payment of fees, expenses and taxes) that such Authorized Person deems necessary, proper, or desirable in connection with the Chapter 11 Case, including, without limitation, negotiating, executing, delivering and performing any and all documents, agreements, certificates and/or instruments (or any amendments or modifications thereto) in connection with the engagement of professionals contemplated by these resolutions, with a view to the successful prosecution of the Chapter 11 Case; and be it further

## Ratification

**RESOLVED**, that any and all past actions heretofore taken by any Authorized Person, any director, or any member of the Company in the name and on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified,

DocuSign Envelope ID: 81BB5BB1-A241-47A8-95B5-EE23E6656565

confirmed, and approved in all respects.

     **RESOLVED**, that, with respect to the Company, each Authorized Person, any one of whom may act without the joinder of any of the others, hereby is authorized in the name and on behalf of the Company, to take all such further actions, including, but not limited to, (i) the negotiation of such additional agreements, amendments, modifications, supplements, reports, documents, instruments, applications, notes or certificates not now known but which may be required, (ii) the execution, delivery and filing (if applicable) of any of the foregoing and (iii) the payment of all fees, consent payments, taxes and other expenses as any such Authorized Person, in his or her sole discretion, may approve or deem necessary, appropriate or desirable in order to carry out the intent and accomplish the purposes of the foregoing resolutions and the transactions contemplated thereby, all of such actions, executions, deliveries, filings and payments to be conclusive evidence of such approval or that such Authorized Person deemed the same to be so necessary, appropriate or desirable; and be it further

     **RESOLVED**, that any and all past actions heretofore taken by any Authorized Person, any director, or any member of any Company in the name and on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects.

*[Signature Page Follows]*

**IN WITNESS WHEREOF, the undersigned have executed this Unanimous Written Consent as of January 19, 2023.**

**GENESIS GLOBAL HOLDCO, LLC**

DocuSigned by:

*A. Derar Islim*

112CB3D00F63428...

Name:  A. Derar Islim

Title:   Interim CEO

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern District of New York
(State)

Case number (*If known*): 23-10065 (SHL)    Chapter 11

☒ Check if this is an
amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | |
|---|---|
| 1. **Debtor's name** | Genesis Asia Pacific PTE. LTD. |
| 2. **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | |
| 3. **Debtor's federal Employer Identification Number** (EIN) | 202002164R (Singapore UEN) |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 30 Raffles Place | 1 Raffles Quay, #45-03 North Tower |
| Number    Street | Number    Street |
| #23-01 Oxley @ Raffles | |
| | P.O. Box |
| Singapore    048583 | Singapore    048583 |
| City    State    ZIP Code | City    State    ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| County | |
| | Number    Street |
| | |
| | City    State    ZIP Code |

| | |
|---|---|
| 5. **Debtor's website** (URL) | www.genesistrading.com |

| Debtor | Genesis Asia Pacific PTE. LTD | Case number *(if known)* 23-10065 (SHL) |
|---|---|---|
| | Name | |

**6. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes .

_5_  _2_  _3_  _9_

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☒ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

| Debtor | Genesis Asia Pacific PTE. LTD | Case number (if known) | 23-10065 (SHL) |
|---|---|---|---|
| | Name | | |

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes.  District _____  When _____  Case number _____
                                              MM / DD / YYYY

          District _____  When _____  Case number _____
                                              MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☑ Yes.  Debtor    See attached Schedule 1              Relationship   Affiliate

          District   Southern District of New York        When   Date Hereof
                                                                     MM / DD / YYYY

          Case number, if known  _____

**11. Why is the case filed in this district?**

Check all that apply:

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (Check all that apply.)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                             Number        Street

_____

_____
City                                          State ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

          Contact name _____

          Phone _____

**Statistical and administrative information**

| Debtor | Genesis Asia Pacific PTE. LTD | Case number *(if known)* 23-10065 (SHL) |
|---|---|---|
| | Name | |

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☐ 1-49
☒ 50-99
☐ 100-199
☐ 200-999
☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000
☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

**15. Estimated assets**

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million
☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☒ $100,000,001-$500 million
☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

**16. Estimated liabilities**

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million
☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☒ $100,000,001-$500 million
☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

---

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  01/19/2023
MM  / DD / YYYY

✗  /s/ A. Derar Islim

Signature of authorized representative of debtor

A. Derar Islim

Printed name

Title  Director

---

| Debtor | Genesis Asia Pacific PTE. LTD | Case number *(if known)* | 23-10065 (SHL) |
|---|---|---|---|
| | Name | | |

**18. Signature of attorney**

✖ /s/ Sean A. O'Neal
Signature of attorney for debtor

Date  01/19/2023
MM  / DD / YYYY

Sean A. O'Neal
Printed name

Cleary Gottlieb Steen & Hamilton LLP
Firm name

One Liberty Plaza
Number      Street

New York
City

NY
State

10006
ZIP Code

212-225-2000
Contact phone

soneal@cgsh.com
Email address

3979267
Bar number

NY
State

## SCHEDULE 1

### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York.  The Debtors have moved for joint administration of these cases for procedural purposes only under the case number assigned to the chapter 11 case of Genesis Global Holdco, LLC.

1. Genesis Global Holdco, LLC

2. Genesis Global Capital, LLC

3. Genesis Asia Pacific Pte. Ltd.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 23-10065 (SHL)<br><br>Joint Administration Pending |

**CONSOLIDATED CORPORATE OWNERSHIP STATEMENT PURSUANT
TO FEDERAL RULES OF BANKRUPTCY PROCEDURES 1007 AND 7007.1**

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the above-captioned debtors and debtors in possession (each, a "Debtor") hereby state as follows:

1. Genesis Global Holdco, LLC is 100% owned by Digital Currency Group, Inc.

2. Genesis Global Capital, LLC is 100% owned by Genesis Global Holdco, LLC.

3. Genesis Asia Pacific Pte. Ltd. is 100% owned by Genesis Global Holdco, LLC.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

| Fill in this information to identify the case and this filing: |
| --- |

Debtor Name  Genesis Asia Pacific PTE. LTD.

United States Bankruptcy Court for the: _____ Southern _____ District of _ New York _
(State)

Case number (*If known*): ____ 23-10065 (SHL) ____

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

| | **Declaration and signature** |
| --- | --- |

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐  *Schedule H: Codebtors* (Official Form 206H)

☐  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐  Amended *Schedule* _____

☒  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒  Other document that requires a declaration___ Corporate Ownership Statement _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___ 01/19/2023 ___             ✗ /s/ A. Derar Islim _____
        MM / DD / YYYY                          Signature of individual signing on behalf of debtor

                                       A. Derar Islim _____
                                       Printed name

                                       Director _____
                                        Position or relationship to debtor

Fill in this information to identify the case:

Debtor name  Genesis Global Holdco, LLC, et al.

United States Bankruptcy Court for the: Southern District of New York

Case number (If known): 23-10063

☑ Check if this is an
amended filing

Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 50 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 50 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Various Lenders as defined in certain Master Digital Asset Loan Agreements entered into with Gemini Trust Company, LLC, as agent for the Lenders | On File | Loan Payable | Unliquidated Disputed* | | | $ 765,900,135 |
| 2 | On File | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 462,209,125 |
| 3 | On File | On File | Loan Payable | Unliquidated | $ 446,863,828 | Undetermined | Undetermined |
| 4 | On File | On File | Collateral Payable | Unliquidated | | | $ 230,023,000 |
| 5 | Mirana Corp. | On File | Loan Payable | Unliquidated | | | $ 151,568,100 |
| 6 | Moonalpha Financial Services Limited | On File | Loan Payable | Unliquidated | | | $ 150,015,000 |
| 7 | On File | On File | Loan Payable | Unliquidated | | | $ 114,507,650 |
| 8 | Coincident Capital International, Ltd. C/O Forbes Hare Trust Company | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 112,272,921 |
| 9 | On File | On File | Loan Payable | Unliquidated | | | $ 90,000,000 |
| 10 | Donut, Inc. | On File | Loan Payable | Unliquidated | | | $ 78,037,054 |
| 11 | On File | On File | Loan Payable | Unliquidated | | | $ 75,451,600 |
| 12 | On File | On File | Loan Payable | Unliquidated | | | $ 64,912,001 |
| 13 | Altcoinomy SA | On File | Loan Payable | Unliquidated | | | $ 61,801,095 |
| 14 | Streami Inc. | On File | Loan Payable | Unliquidated | | | $ 56,766,174 |
| 15 | Heliva International Corp | On File | Loan Payable | Unliquidated | | | $ 55,005,190 |
| 16 | VanEck New Finance Income Fund, LP | On File | Loan Payable | Unliquidated | | | $ 53,101,676 |
| 17 | On File | On File | Loan Payable | Unliquidated | | | $ 51,785,259 |
| 18 | On File | On File | Loan Payable | Unliquidated | | | $ 47,202,205 |
| 19 | Claure Group LLC | On File | Loan Payable | Unliquidated | | | $ 45,857,828 |
| 20 | On File | On File | Loan Payable | Unliquidated | | | $ 40,822,287 |
| 21 | On File | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 40,266,984 |
| 22 | On File | On File | Collateral Payable | Unliquidated | | | $ 39,787,136 |
| 23 | On File | On File | Loan Payable | Unliquidated | | | $ 38,532,747 |
| 24 | Digital Finance Group | On File | Loan Payable | Unliquidated | | | $ 37,907,447 |
| 25 | On File | On File | Loan Payable | Unliquidated | | | $ 35,214,334 |
| 26 | On File | On File | Loan Payable | Unliquidated | | | $ 32,557,600 |
| 27 | Plutus Lending LLC | On File | Loan Payable | Unliquidated | | | $ 30,003,000 |
| 28 | Ripio International | On File | Loan Payable | Unliquidated | | | $ 27,552,174 |
| 29 | Winah Securities S.A. | On File | Loan Payable | Unliquidated | | | $ 26,896,243 |
| 30 | On File | On File | Loan Payable | Unliquidated | | | $ 26,176,466 |
| 31 | Levity & Love, LLC | On File | Loan Payable | Unliquidated | | | $ 25,534,533 |
| 32 | On File | On File | Loan Payable | Unliquidated | | | $ 21,622,568 |
| 33 | Caramila Capital Management LLC | On File | Loan Payable | Unliquidated | | | $ 21,561,663 |
| 34 | On File | On File | Loan Payable | Unliquidated | | | $ 20,645,334 |
| 35 | On File | On File | Loan Payable | Unliquidated | | | $ 20,152,817 |
| 36 | Big Time Studios Ltd. | On File | Loan Payable | Unliquidated | | | $ 20,000,000 |
| 37 | Cumberland DRW LLC | On File | Collateral Payable | Unliquidated | | | $ 18,720,061 |
| 38 | On File | On File | Loan Payable | Unliquidated | | | $ 17,463,057 |

*Claim amount is estimated and is net of proceeds from foreclosure on certain collateral. GGC disputes whether the foreclosure satisfied applicable law.

Debtor Genesis Global Holdco, LLC, et al.                                                                                            Case number (if known) 23-10065

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 39 | On File | On File | Loan Payable | Unliquidated | | | $ 17,246,080 |
| 40 | On File | On File | Loan Payable | Unliquidated | | | $ 15,445,729 |
| 41 | Coinhouse | On File | Loan Payable | Unliquidated | | | $ 14,857,000 |
| 42 | Stellar Development Foundation | On File | Loan Payable | Unliquidated | | | $ 13,187,008 |
| 43 | On File | On File | Loan Payable | Unliquidated | | | $ 13,127,878 |
| 44 | Bayhawk Fund LLC | On File | Loan Payable | Unliquidated | | | $ 12,562,500 |
| 45 | On File | On File | Loan Payable | Unliquidated | | | $ 11,292,345 |
| 46 | On File | On File | Loan Payable | Unliquidated | | | $ 10,905,742 |
| 47 | On File | On File | Loan Payable | Unliquidated | | | $ 10,369,828 |
| 48 | The Badger Technology Company Holdings, Ltd. | On File | Loan Payable | Unliquidated | | | $ 10,245,821 |
| 49 | Valour, Inc. | On File | Collateral Payable | Unliquidated | | | $ 10,239,290 |
| 50 | Schnutz Investments LP | On File | Loan Payable | Unliquidated | | | $ 10,148,492 |

U.S. Dollar balances based off of market prices as of 01/18/2023

** This revised list is being filed to remove certain sensitive, non-public information contained herein.

## CERTIFICATION OF RESOLUTIONS OF
## THE BOARD OF DIRECTORS OF GENESIS ASIA PACIFIC PTE. LTD.

The undersigned, being all the members of the Board of Directors (the "Board") of Genesis Asia Pacific Pte. Ltd. ("Company"), a Singapore entity, does hereby certify that the following resolutions was adopted by the Board at a meeting of the Board on January 19, 2023, upon the request of the Directors, A. Derar Islim and Arianna Pretto-Sakmann, and that the same have not been revoked, rescinded, cancelled, annulled, modified, or amended in any manner and are in full force and effect.

**WHEREAS**, the Special Committee of Genesis Global Holdco, LLC (the "Special Committee") formed with the purpose and role to evaluate, on behalf of the Company, various strategic alternatives or transactions involving the Company that affect the liquidity or balance sheet of the Company, including, without limitation, the commencement of any financing, sale, restructuring, reorganization, liquidations, or other strategic alternatives;

**WHEREAS**, the Special Committee, upon review of materials regarding the liabilities and liquidity of the Company, the strategic alternatives available to it and the impact of the foregoing on the Company's businesses, have directed the Board to ratify its decision that a petition be filed by the Company seeking relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") (the "Chapter 11 Case");

**WHEREAS**, the Board has reviewed and had the opportunity to ask questions about the materials presented by the management and the legal and financial advisors of the Company regarding the liabilities and liquidity of the Company, the strategic alternatives available to it and the impact of the foregoing on the Company's businesses; and

**WHEREAS**, the Board desires to approve the following resolutions.

### Commencement of Chapter 11 Case

**NOW, THEREFORE, BE IT HEREBY,**

**RESOLVED**, that upon direction of Special Committee and after consultation with the management and legal and financial advisors of the Company, that it is desirable and in the best interests of the Company, its creditors, and other parties in interest that a petition be filed by the Company seeking relief under the Bankruptcy Code; and be it further

**RESOLVED**, that any officer of the Company (each, an "Authorized Person"), in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, to negotiate, execute, deliver, file and perform, in the name and on behalf of the Company, and under its corporate seal or otherwise, all petitions, schedules, motions, lists, applications, pleadings, orders and other documents (the "Chapter 11 Filings") (with such changes therein and additions thereto as any such Authorized Person may deem necessary, appropriate or advisable, the execution and delivery of any of the Chapter 11 Filings by any such Authorized Person with any changes thereto to be conclusive evidence that any such Authorized Person deemed such changes to meet such standard); and be it further

**RESOLVED**, that each Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on

1

behalf of the Company, to take and perform any and all further acts and deeds that such Authorized Person deems necessary, appropriate, or desirable in connection with the Chapter 11 Case, the Chapter 11 Filings or the plan term sheet (attached hereto as **Exhibit A**), including, without limitation, (i) the payment of fees, expenses and taxes such Authorized Person deems necessary, appropriate, or desirable, and (ii) negotiating, executing, delivering, performing and filing any and all additional documents, schedules, statements, lists, papers, agreements, certificates and/or instruments (or any amendments or modifications thereto) in connection with, or in furtherance of, the Company Chapter 11 Case with a view to the successful prosecution of such Chapter 11 Case (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard); and be it further

## Retention of Advisors

**RESOLVED**, that the law firm of Cleary Gottlieb Steen & Hamilton LLP, located at One Liberty Plaza, New York, New York 10006, has been retained as restructuring counsel for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the firm of Alvarez & Marsal Holdings, LLC, located at 600 Madison Avenue, New York, NY 10022, has been retained as financial advisor for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the firm of Moelis & Company LLC, located at 399 Park Avenue, 4th Floor, New York, NY 10022, has been retained as financial advisor, capital markets advisor and investment banker for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the firm of Kroll Restructuring Administration, located at 55 East 52nd Street, 17th Floor, New York, NY 10055 has been retained as claims, noticing and solicitation agent for the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that the firm of Allen & Gledhill LLP, located at One Marina Boulevard #28-00 Singapore 018989 has been retained as Singapore legal advisors of the Company in the Chapter 11 Case; and be it further

**RESOLVED**, that, with respect to the Company, each Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to negotiate, execute, deliver, file and perform any agreement, document or certificate and to take and perform any and all further acts and deeds (including, without limitation, (i) the payment of any consideration and (ii) the payment of fees, expenses and taxes) that such Authorized Person deems necessary, proper, or desirable in connection with the Chapter 11 Case, including, without limitation, negotiating, executing, delivering and performing any and all documents, agreements, certificates and/or instruments (or any amendments or modifications thereto) in connection with the engagement of professionals contemplated by these resolutions, with a view to the successful prosecution of the Chapter 11 Case; and be it further

## Ratification

**RESOLVED**, that any and all past actions heretofore taken by any Authorized Person, any director, or any member of the Company in the name and on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified,

confirmed, and approved in all respects.

      **RESOLVED**, that, with respect to the Company, each Authorized Person, any one of whom may act without the joinder of any of the others, hereby is authorized in the name and on behalf of the Company, to take all such further actions, including, but not limited to, (i) the negotiation of such additional agreements, amendments, modifications, supplements, reports, documents, instruments, applications, notes or certificates not now known but which may be required, (ii) the execution, delivery and filing (if applicable) of any of the foregoing and (iii) the payment of all fees, consent payments, taxes and other expenses as any such Authorized Person, in his or her sole discretion, may approve or deem necessary, appropriate or desirable in order to carry out the intent and accomplish the purposes of the foregoing resolutions and the transactions contemplated thereby, all of such actions, executions, deliveries, filings and payments to be conclusive evidence of such approval or that such Authorized Person deemed the same to be so necessary, appropriate or desirable; and be it further

      **RESOLVED**, that any and all past actions heretofore taken by any Authorized Person, any director, or any member of any Company in the name and on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects.

*[Signature Page Follows]*

**IN WITNESS WHEREOF, the undersigned have executed this Certificate as of January 19, 2023.**

DocuSigned by:

*Alice Chan*

——F21A6C2431F6488...

**Alice Chan**


_____

**Sugandhi Govil**


DocuSigned by:

*A. Derar Islim*

——112CB3D00F63428...

**A. Derar Islim**


DocuSigned by:

*Arianna Pretto*

——77A200507D6D40F...

**Arianna Pretto**

4

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (__) |
| Debtors. | Joint Administration Pending |

**DECLARATION OF A. DERAR ISLIM**
**IN SUPPORT OF FIRST DAY MOTIONS AND**
**APPLICATIONS IN COMPLIANCE WITH LOCAL RULE 1007-2**

I, A. Derar Islim, hereby declare under penalty of perjury, pursuant to section 1746

of title 28 of the United States Code, as follows:

1.       I am the interim Chief Executive Officer of Genesis Global Holdco, LLC ("Holdco"

and, together with the other Debtors (as defined below) and Holdco's Non-Debtor subsidiaries, the

"Company"), a limited liability company organized under the laws of Delaware.  I have held my

current title since August 17, 2022, and have been a member of senior management at the Company

---

[1]       The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification
number (as applicable), are: Genesis Global HoldCo, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia
Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park
Avenue South, 5th Floor, New York, NY 10003.

and Genesis Global Trading, Inc. ("GGT"), which is a sister company of Holdco, for about two years and was historically Chief Operating Officer at GGT.

2.      I am generally familiar with the day-to-day operations and affairs of Holdco, Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific PTE. Ltd. ("GAP," and together with Holdco and GGC, the "Debtors"), which have filed voluntary petitions for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").  Concurrently herewith, the Debtors have filed a motion seeking joint administration of their chapter 11 cases (the "Chapter 11 Cases") pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.      I submit this declaration (this "First Day Declaration") in support of the various motions seeking first day relief (the "First Day Motions") and pursuant to 28 U.S.C. § 1746, as well as Rule 1007 of the Bankruptcy Rules and Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").  Except as otherwise indicated herein, all facts set forth in this First Day Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, information supplied to me by members of the Debtors' management, other personnel and professional advisors or my opinion based on my experience, knowledge and information concerning the Debtors' operations and financial condition and the digital asset industry as a whole.  To the extent that the Debtors learn that any information provided herein is materially inaccurate, the Debtors will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my knowledge, information and belief.  I am authorized to submit this First Day Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

4.      On January 19, 2023 (the "Petition Date"), the Debtors commenced the Chapter 11

Cases to reach the best outcome for all affected creditors.  A restructuring of the Debtors' balance

sheets is necessary to restore the Debtors' businesses, to evaluate options to preserve their value

and to move their businesses forward as swiftly as possible.   These Chapter 11 Cases are necessary

to protect the Debtors' assets and to administer and manage the Debtors' estates.

5.      Section I describes the Company and GGT and, more specifically, the Company's

and GGT's corporate structure, business and current operations, and Section II describes the events

leading to the filing of these Chapter 11 Cases.

## I.      DEBTORS' CORPORATE BACKGROUND AND BUSINESS OPERATIONS

### A.      The Company's and GGT's Corporate History and Organizational Structure

6.      GGT was the first Genesis entity and has been trading digital assets since 2013.

Since its inception, the Company and GGT have grown into a number of entities that handle

different aspects of the digital asset services offered.

7.      Holdco is a sister company of GGT and 100% owned by Digital Currency Group,

Inc. ("DCG"), a corporation organized under the laws of Delaware. GGC and GAP are in turn

100% owned by Holdco.  Schedule 1 of the *Declaration of Michael Leto in Support of First Day*

*Motions and Applications in Compliance with Local Rule 1007-2* provides an organizational chart

that contains further details on the Company's and GGT's structure.

8.      The Board of Directors at Holdco (the "Board") is comprised of Paul Aronzon,

Thomas Conheeney, Michael Kraines, Mark Murphy and me.  The Board formed the Special

Committee on November 18, 2022, comprised of Paul Aronzon and Thomas Conheeney, two

independent directors.

9.      GGC is a private limited liability company organized under the laws of Delaware

that provides lending and borrowing services for digital assets and fiat currency primarily to and

from institutional and high net worth individual customers.  It is registered as a Money Services Business with the Financial Crimes Enforcement Network ("FinCEN").

10.      GAP is a Singapore-based digital payment token service provider which carries out digital asset trading and lending activities.  As of July 2022, GAP has received an In-principle Approval for a Major Payment Institution license under the Payment Services Act 2019 by the Monetary Authority of Singapore and is operational under the pre-licensing regime.

11.      Most of Holdco's subsidiaries and its sister company GGT have not filed petitions for relief and are not a part of these Chapter 11 Cases (collectively, the "Non-Debtor Subsidiaries").  The Non-Debtor Subsidiaries include, without limitation, Genesis UK Holdco Limited, Genesis Global Assets, LLC, Genesis Asia (Hong Kong) Limited, Genesis Bermuda Holdco Limited, Genesis Custody Limited ("GCL"), GGC International Limited ("GGCI"), GGA International Limited, Genesis Global Markets Limited, GSB 2022 II LLC, GSB 2022 III LLC and GSB 2022 I LLC.

### B.      The Company and GGT's Business Operations

12.      The Company and GGT's operations are divided into four main categories: (i) the trading service, which facilitates spot trading in digital assets; (ii) the lending and borrowing service, whereby the Company lends and borrows digital assets in consideration for the payment of interest; (iii) the derivatives service, which allows customers to enter into a variety of derivatives on digital asset underliers; and (iv) the custodial service, which permits customers to securely store digital assets.  The Debtors engage in lending, borrowing and certain trading services, while the derivatives, custodial and most of the trading services are operated by Non-Debtor Subsidiaries.

### i.      Trading Service

13.      GGT launched its first over the counter ("OTC") bitcoin trading desk in 2013. Since then, the Company and GGT have offered spot trading services to a wide variety of

institutional investors seeking exposure to the digital asset market. The trading service historically operated 24 hours a day, seven days a week. Other than GAP, none of the trading business entities have commenced Chapter 11 Cases.

14.    As part of its trading service, the Company and GGT make markets in digital assets by offering liquidity to buyers and sellers. This service functions similarly to a traditional brokerage in some respects, in that the Company and GGT, respectively, receive requests for quotes or buy/sell orders from their respective customers on a variety of accepted digital assets. The Company and GGT, respectively, then gather the quotes from, or execute the orders with, a variety of digital asset exchanges, institutional service providers and counterparties worldwide, endeavoring to achieve optimal price and point-in-time execution.

15.    The Company and GGT's trading brokerage service is offered through three entities: GGT, GGCI and GAP. GGT is a New York-based non-custodial, OTC market-maker in digital assets and brokerage, that has a virtual currency BitLicense issued by the New York State Department of Financial Services ("NYDFS") and that is registered as a broker-dealer with the U.S. Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA"). As noted above, GGT is a sister company to Holdco that has not commenced a chapter 11 case; Holdco has no ownership interests in GGT and GGT has no ownership interests in any of the Debtors. GGCI is a British Virgin Islands company that carries out spot and derivatives trading activity. GGCI is not a Debtor in these Chapter 11 Cases. GAP, which is one of the Debtors in these Chapter 11 Cases, is the entity that provides similar trading services primarily to Singapore residents and is operated from Singapore. In addition, GGT provides services and employees to the Debtors and Holdco's various subsidiaries pursuant to various contractual arrangements.

16.     Through September 30, 2022, the Company's and GGT's spot volume traded was approximately $38.2 billion in a variety of digital assets with hundreds of institutional trading counterparties.

### ii.     Lending and Borrowing Service

17.     The Company's lending and borrowing service permits customers to loan digital assets to the Company and provides institutional funds and market makers with access to liquidity designed to meet their needs.

18.     While the lending and borrowing service is currently paused, the service generally permitted customers to enter into bespoke loan terms and structures specifically designed to meet their needs.  These loans were often open-term loans (*i.e.*, callable on demand), but could also be fixed-term loans with maturity dates of up to 12 months.  Loans were made across a variety of digital assets, including stablecoins, BTC, ETH and more than 20 other assets.  In connection with this service, the Company provided its customers with access to additional tools, such as custody services offered by third-party custodians for loan collateral (including by tri-party custodians), real-time and historical analytics, instant collateral transfer and a platform for ease of portfolio management.

19.     The Company's lending and borrowing service was offered primarily through two entities serving different geographies: GGC and GAP.  Through September 30, 2022, GGC and GAP had originated loans totaling approximately $93.1 billion, with active outstanding loans totaling approximately $1.7 billion.

### iii.     Derivatives Service

20.     The Company also offers a derivatives service through its sell-side dealing desk and acts as a liquidity provider that operates across all major crypto option markets.  In connection

with this service, the Company offers customers customized derivatives solutions to express nuanced market views, generate yield, manage volatility and hedge risk.

21.     The derivatives service provides customers exposure to digital assets through a variety of derivative transactions, from options, forwards, lending and repo transactions to price and risk-managed options and structured products used to hedge specific risks.  The service accepts a broad range of assets as collateral (although some trade formats require U.S. dollar collateral). The derivatives service also supports crypto-native form of yield generation, including staking.

22.     The Company's derivatives service is currently offered through GGCI, which carries out spot and derivatives trading activity.  GGCI also provides the Company with access to digital asset exchanges through its membership on such exchanges.

23.     Through September 30, 2022, the notional value of derivatives traded through the service was approximately $73.1 billion.

### iv.     Custody Service

24.     One of Holdco's subsidiaries, GCL, provides an institutional-grade custody service to manage, move and store digital assets.  GCL is not a Debtor in these Chapter 11 Cases.  The custody service is intended as an integrated offering for sophisticated investors that incorporates best practices used by government agencies to protect digital assets.  These measures include multiple layers of cryptographic security, including multi-party computation technology and private keys that are stored in hardware security modules in bunkers.  The service also permits customers to earn liquidity on assets stored in cold storage by leveraging the trading desk.

25.     GCL is a UK-based provider of non-fiduciary digital asset storage services to institutional clients and high net worth individuals in permitted jurisdictions.  GCL is registered as a cryptoasset business with the Financial Conduct Authority ("FCA") under the Money

Laundering Regulations 2017 ("MLRs") as of December 2021 and as a Money Services Business with FinCEN.

26.     As of the year ended December 31, 2022, GCL had approximately 90 customers.

## II.    CIRCUMSTANCES LEADING TO THE COMMENCEMENT OF THE CHAPTER 11 CASES

### A.    Events Leading to the Chapter 11 Filing

27.     The Debtors have commenced this Chapter 11 Case to maximize value for creditors and restructure their balance sheets, including approximately $5.1 billion of total liabilities outstanding (including intercompany balances) as of November 30, 2022.

28.     Over the past few months, the digital asset industry has experienced tremendous dislocation.   In particular, in May 2022, LUNA ("Luna") and TerraUSD ("UST") collapsed, causing widespread market turmoil.   Shortly thereafter, the digital asset hedge fund Three Arrows Capital Ltd. ("3AC") commenced liquidation proceedings.   The collapse of Luna and UST and subsequent liquidation of 3AC signalled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.

29.     As market conditions worsened, other companies faced financial difficulties.   In July 2022, Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates filed for bankruptcy.   Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed for Chapter 11 bankruptcy on November 11, 2022.

30.     These drastic market shifts have decreased investor confidence in the digital asset markets in which the Company operates and severely and adversely impacted the Company's business.   As the FTX Entities' situation unfolded, the Company experienced unprecedented withdrawals, leading GGC and GAP to pause all lending and borrowing on November 16, 2022.

i.     **Impact of the 3AC Liquidation**

31.     In 2020, GAP established a lending relationship with 3AC.  In June 2022, the various loans extended to 3AC by GAP amounted to approximately $2.4 billion in cash and digital assets. After it became clear that 3AC would not be in a position to pay back its loans, GAP foreclosed on collateral pledged by 3AC in connection with those loans.  But by the time GAP foreclosed on the collateral, the value of that collateral was approximately $1.2 billion.

32.     In light of these events, DCG assumed $1.1 billion of the remaining $1.2 billion payable GAP owed to GGC in connection with the 3AC lending relationship.  On June 30, 2022, DCG evidenced the assumed payable with a $1.1 billion promissory note in favor of GGC that had a 10 year maturity and fixed interest rate of 1% that may, at DCG's option, be paid in kind.

ii.     **FTX Collapse**

33.     In early November, the digital asset market plummeted further as the FTX Entities, including what was previously one of the world's largest and most respected digital asset exchanges, collapsed.

34.     Starting November 6, 2022, the FTX Entities' digital asset, FTT, lost over 80% of its worth in the span of 72 hours.  The contagion effect from the FTX Entities' collapse spread throughout the digital asset market.

35.     The Debtors have been adversely affected by the FTX Entities' collapse.  As of the petition date in the FTX Entities' Chapter 11 proceedings, GGCI had a total exposure in digital assets held at FTX of approximately $175 million.  GGC had outstanding loans to Alameda in digital assets having a value of approximately $37 million.  However, because GGC hedged its exposure to price changes in the value of the digital assets underlying the Alameda loans, its estimated loss from these loans is approximately $7 million.

### iii.    Impact on Customer Confidence

36.    Consistent with industry practice, many of the loans offered by the Company were open term loans, meaning that the Company could repay a loan in full or in part at any point in time and lenders could "call" (demand repayment) under the loans in whole or in part at any point in time.

37.    As the FTX Entities began to experience their collapse, the Company received calls on its loans amounting to approximately $827 million.  This "run on the bank" following the FTX Entities' collapse was outsized and severely impacted the Company's available liquidity.

38.    At the same time, Holdco's corporate parent, DCG, and its various subsidiaries, including DCG International Investments Ltd., were also impacted by the market turmoil and did not have the liquidity to pay back the Company on certain loans, adding pressure to the Debtors' balance sheets.

39.    As a result of the unprecedented number and size of the loan calls, on November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders.

40.    The Debtors believe that Chapter 11 proceedings will incentivize all stakeholders to move expeditiously toward a consensual resolution that avoids the costs and uncertainty of litigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct.

Dated: January 20, 2023
     New York, New York

                                       */s/ A. Derar Islim*
                                       A. Derar Islim
                                       Interim Chief Executive Officer
                                       Genesis Global Holdco, LLC

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone:  212-225-2000
Facsimile:  212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (__) |
| Debtors. | Joint Administration Pending |

**DECLARATION OF PAUL ARONZON**
**IN SUPPORT OF FIRST DAY MOTIONS AND**
**APPLICATIONS IN COMPLIANCE WITH LOCAL RULE 1007-2**

      I, Paul Aronzon, hereby declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, as follows:

      1.     I am a member of the Special Committee of Board of Directors (the "Special Committee") of Genesis Global Holdco, LLC, a limited liability company organized under the laws of Delaware ("Holdco"), which owns 100% of the interest in Genesis Global Capital, LLC ("GGC"), Genesis Asia Pacific PTE. Ltd. ("GAP") and Holdco's other, non-debtor subsidiaries (collectively with Holdco, GGC, and GAP, the "Company").  I was appointed to Holdco's Board

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

of Directors and the Special Committee on November 18, 2022.  I have over 40 years of experience as lead advisor in corporate reorganizations, including extensive experience advising companies, boards and board committees, independent directors, sponsors, debtors, creditors, parties acquiring debt, assets or companies and other parties in corporate transactions.  I was admitted to practice law in 1979 and was licensed in California, New York and Washington DC.  I joined Milbank LLP, an international law firm, in 1989 as a partner in the firm's Global Financial Restructuring Group and Los Angeles office.  I stayed at the firm until 2006, when I left to join Imperial Capital, as an Executive Vice President and Managing Director.  At Imperial Capital, I was co-head of the corporate finance business, including managing groups in restructurings, financings, mergers and acquisitions and valuations.  In 2008 I returned to Milbank where I was the co-managing partner of the Los Angeles office and co-leader of Milbank's Global Financial Restructuring Group.  I have advised companies, boards, board committees, independent directors, sponsors, parties acquiring assets, debt or companies, and others in transactions across a wide array of industries.

2.    I am generally familiar with the day-to-day operations and affairs of Holdco, GGC and GAP (together, the "Debtors"), which have filed voluntary petitions for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").  Concurrently herewith, the Debtors have filed a motion seeking joint administration of its chapter 11 cases (the "Chapter 11 Cases") pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

3.    I submit this declaration (this "First Day Declaration") in support of the various motions seeking first day relief (the "First Day Motions") and pursuant to 28 U.S.C. § 1746, as well as Rule 1007 of the Bankruptcy Rules and Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").  Except as otherwise indicated herein, all

facts set forth in this First Day Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, information supplied to me by members of the Debtors' management, other personnel and professional advisors or my opinion based on my experience, knowledge and information concerning the Debtors' operations and financial condition and the digital asset industry as a whole.  To the extent that the Debtors learn that any information provided herein is materially inaccurate, the Debtors will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my knowledge, information and belief.  I am authorized to submit this First Day Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

4.      This First Day Declaration provides a description of the circumstances leading to the commencement of these Chapter 11 Cases.

## A.      Events Leading to the Chapter 11 Filing

5.      As has been widely reported, the digital asset industry has been experiencing significant turmoil, as evidenced by the various bankruptcy filings of Three Arrows Capital, FTX Trading Ltd., Voyager Digital Holdings, Celsius Network LLC, BlockFi Inc. and other companies involved in the cryptocurrency industry.  This crisis of confidence and turmoil has deeply affected the Company.

### i.      Governance Initiatives

6.      After GGC's decision to pause all withdrawals following the unprecedented number of loan calls on November 16, 2022, the Company took a number of measures to try to resolve the numerous financial and other issues it was facing from the industry volatility and its lending and other businesses.  The Company moved quickly to protect and maximize assets,

minimize claims, address litigation and regulatory matters and preserve the various businesses of Holdco and its affiliates out of court.

7.     On November 18, 2022, the Board of Directors approved the establishment of the Special Committee, comprised of myself and Thomas Conheeney, two independent directors.  The purposes of the Special Committee are, among other things, to (i) evaluate on behalf of Holdco or its subsidiaries various strategic alternatives or transactions involving Holdco and its subsidiaries that affect the liquidity or balance sheet of Holdco or its subsidiaries, (collectively, the "Special Matters"), including, without limitation, the commencement of any financing, sale, restructuring, reorganization, liquidation, or other strategic alternatives or any transaction involving Digital Currency Group ("DCG" and together with its affiliates other than the Company, the "DCG Entities"), Holdco's corporate parent and its largest borrower; (ii) address issues of real or potential conflicts; (iii) conduct investigations; and (iv) act on behalf of, and bind, the Company with respect to such Special Matters.

8.     Since its formation, the Special Committee has met frequently to discuss and evaluate matters within its purview, including the commencement of these Chapter 11 Cases.

### ii.     Creditor Negotiations

9.     Almost immediately upon my appointment, under the direction of the Special Committee, GGC and its legal and financial advisors began to engage in substantive discussions with creditors, focusing on two ad hoc groups of GGC lenders representing more than $2 billion in outstanding loans (the "Ad Hoc Groups").  In addition, GGC and its advisors engaged in substantive discussions with the DCG Entities which owe the Debtors at least $1.65 billion, including approximately $575 million in loans due in May 2023 (the "DCG Loans") and a $1.1 billion promissory note due in June 2032 (the "DCG Note").  As part of these efforts, GGC and its advisors provided access to information on an advisors' eyes only basis to allow advisors to the

Ad Hoc Groups to conduct diligence.  GGC and its advisors also actively facilitated multiple discussions and in-person meetings among the various advisors to the Ad Hoc Groups and the DCG Entities, resulting in the exchange of more than ten iterations of term sheets and proposals since my appointment.

### iii.    Investigation of the Prepetition Transactions

10.    In the exercise of its fiduciary duties, the Special Committee has directed the Company's counsel, Cleary Gottlieb Steen & Hamilton LLP, to investigate certain prepetition transactions involving the Company, the DCG Entities and others.  The investigation is led by Lev Dassin, a former Acting U.S. Attorney for the Southern District of New York, who has significant experience in internal investigations, government enforcement matters, and related civil litigation. Among other things, this investigation is focused on GGC's lending of approximately $850 million in unsecured loans to the DCG Entities, the DCG Note, various transactions that restructured the $850 million in unsecured loans in November 2022, DCG's purported exercise of a $52.5 million set off in November 2022, the treatment of the DCG Note by the Company and the DCG Entities for accounting and other purposes and related communications with lenders, dividends paid by the Debtors to DCG, and other conduct between the DCG Entities and the Company.  The purpose of this investigation is, among other things, to assess whether the Debtors have viable claims against the DCG Entities and other parties related to these transactions and assist the Special Committee in the exercise of its independent fiduciary duties as the Company continues to pursue a consensual restructuring.   In addition, the Special Committee and the Company's advisors are also investigating potential avoidance actions and other potential actions concerning  the DCG Entities, Gemini Trust Company, LLC ("Gemini"), and the Company's Lenders. The Special Committee is also working with the Company and its professionals to respond to various regulators and regulatory investigations or actions.

### B.    These Chapter 11 Cases

11.    While the Company's discussions with advisors to the DCG Entities and the Ad Hoc Groups have been fruitful, they have not achieved a global resolution of all the numerous issues facing the Company and its various stakeholders.  Accordingly, the Debtors commenced the Chapter 11 Cases with a goal of continuing their efforts to achieve a consensual resolution through a court supervised process.  The Debtors are concurrently filing a proposed timeline, a proposed plan of reorganization, and a summary of the proposed plan of reorganization to provide a roadmap and framework for continued discussions among the Debtors and their major stakeholders with a goal of achieving a transparent, efficient and consensual restructuring.

### i.    Chapter 11 Plan

12.    A term sheet (the "Plan Term Sheet") setting forth certain key terms of a proposed plan of reorganization (the "Plan") and a related timeline is attached to this First Day Declaration as Exhibit A, which can be adjusted based on the results of our discussions with the Ad Hoc Groups, the DCG Entities and other stakeholders.  Under the Plan, holders of general unsecured claims against the Debtors will receive a combination of (i) available cash and other assets, (ii) equity interests in Holdco and (iii) trust units entitling holders to receive their pro rata shares of the proceeds from certain causes of action and other claims of the Debtors, including proceeds from the DCG Note, the DCG Loans, avoidance actions against various parties and other claims against the DCG Entities and Gemini, in each case to be set forth in the Plan.  The assets contributed to the trust will be the subject of ongoing discussions and negotiations with the Debtors' stakeholders.

13.    To maximize the value of such recoveries, the Debtors intend to seek court approval to conduct a competitive marketing and sales process to sell their assets or otherwise raise capital during these Chapter 11 Cases.  If the marketing and sales process does not result in the sale of all

or substantially all of the Debtors' assets, the holders of general unsecured claims will receive 100% of the equity interests in Holdco, subject to dilution for a management incentive plan and perhaps other equity grants or awards of options or warrants, which in turn will own any unsold assets.

14.    The Debtors will also file the Plan contemporaneously with this First Day Declaration.   The Plan is intended to provide a transparent path to a confirmable plan of reorganization even if the Debtors are not able to reach a global resolution with the DCG Entities and the Ad Hoc Groups.   In the event that a consensual resolution is reached, the Plan can be amended to reflect such resolution.

### ii.    Ongoing Discussions with Parties in Interest

15.    The discussions among the advisors to GGC, the DCG Entities and the Ad Hoc Groups are continuing even as the Chapter 11 Cases are being commenced. The Debtors will continue trying to broker an agreement in principle among a core group of stakeholders prior to the first day hearing and look forward to reporting on any progress to the Court as soon as possible. To the extent that an agreement is not reached imminently, the Debtors intend to seek the appointment of a mediator, but the Debtors are hopeful that a deal can be reached without the assistance of a mediator.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 20, 2023
       Park City, Utah

/s/ Paul Aronzon
Paul Aronzon
Independent Director
Genesis Global Holdco, LLC

**Exhibit A**

**Plan Term Sheet**

# GENESIS GLOBAL HOLDCO, LLC

## PLAN TERM SHEET

This term sheet (this "Term Sheet") summarizes certain terms and conditions of a potential restructuring (the "Restructuring") of the debt obligations and equity ownership of Genesis Global Holdco, LLC ("GGH"), Genesis Global Capital, LLC ("GGC"), Genesis Asia Pacific Pte. Ltd. ("GAP") and their respective direct and indirect subsidiaries (together, the "Company").

The regulatory, tax, accounting and other legal and financial matters and effects related to the Restructuring or any related restructuring or similar transaction have not, as of the date hereof, been fully evaluated, and such evaluation may affect the terms and structure of the Restructuring.  Any such evaluation may affect the terms and structure of the Restructuring and/or certain related transactions.

THIS TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY PLAN, IT BEING UNDERSTOOD THAT SUCH AN OFFER OR SOLICITATION, IF ANY, WILL ONLY BE MADE IN COMPLIANCE WITH APPLICABLE LAW.

| **GENERAL FRAMEWORK** |
|---|

| | |
|---|---|
| **Overview** | The Restructuring will be consummated through the  filing of voluntary proceedings (the "Chapter 11 Cases") by GGH, GGC and GAP (collectively, the "Debtors" and following the Effective Date, the "Reorganized Debtors") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") that contemplate the following dual path "toggle structure": |
| | 1) **Sales Transaction**: The Debtors will engage in a marketing and sale process to monetize the Company's assets or otherwise raise capital, with the proceeds of one or more such transactions being used to pay the Debtors' creditors on a pro rata basis in accordance with the allocated value of the transactions; and/or |
| | 2) **Equitization**:  In the event that the Sales Transaction (defined below) does not result in the sale of all or substantially all of the Company's assets, the Debtors' creditors will receive, among other things, a pro rata share of equity interests in Reorganized GGH based on the allocated value of the Debtors (the "Equitization"). |
| **Use of Cash** | No debtor-in-possession financing will be needed to fund operational expenses or other administrative costs, including professional fee expenses. The Debtors will rely on existing cash and cash equivalents to fund such costs.  To the extent that the Debtors desire to convert coin or other Digital Assets to cash, they will seek Bankruptcy Court approval. |
| **Timeline** | The Debtors will seek to consummate the Restructuring in accordance with the following timeline (subject to court availability and extensions at the Debtors' discretion): |
| | a)  No later than January 19, 2023 (the "Petition Date"), the Debtors shall file chapter 11 petitions with the Bankruptcy Court. |
| | b)  On the Petition Date, the Debtors will file all necessary first day motions and related evidentiary support. |
| | c)  No later than the earlier of (i) the second day hearing and (ii) fifteen (15) days after the Petition Date, the Debtors will file a motion to approve the procedures (the "Bidding Procedures") governing the sale and marketing process for the sale of the Company's assets (the "Sales Transaction"). |
| | d)  No later than forty-five (45) days after the Petition Date, Cleary Gottlieb Steen & Hamilton LLP shall publish a report summarizing the results of the investigation (the "Investigation") of prepetition transactions with the DCG |

|  | Parties and other matters, including the Debtors' and DCG's communications with respect to the $1.1 billion DCG Note. The published version of this report may be redacted; unredacted versions may be shared on an advisors' eyes only basis with creditor advisors who have signed non-disclosure agreements with the Company. |
|  | e) No later than sixty (60) days after the Petition Date, the Debtors will file the disclosure statement (the "<u>Disclosure Statement</u>") in connection with a proposed chapter 11 plan consistent with the terms and conditions described herein (the "<u>Plan</u>"). |
|  | f) No later than seventy-five (75) calendar days after the Petition Date, the Court shall have held a hearing (the "<u>DS Hearing</u>") and entered an order approving the Disclosure Statement. |
|  | g) No later than seventy-five (75) calendar days after the Petition Date, the Debtors shall have selected a stalking horse bidder, if any, for the Sales Transaction, in whole or in part. |
|  | h) The bid deadline for qualified bids in respect of the Sales Transaction shall be no later than eighty-five (85) calendar days after the Petition Date (the "<u>Bid Deadline</u>"). |
|  | i) If the Debtors receive more than one qualified bid on or prior to the Bid Deadline, no later than ninety (90) calendar days after the Petition Date, the Debtors shall hold an auction in respect of the Sales Transaction and select one or more successful bids. |
|  | j) If the Debtors have selected one or more successful bids in respect of the Sales Transaction, no later than one hundred (100) calendar days after the Petition Date, the Debtors will seek to schedule a Bankruptcy Court hearing to consider approval of the Sales Transaction (the "<u>Sale Hearing</u>") and entry of an order approving the sale of the Debtors' assets to the successful bidder(s) (the "<u>Sale Order</u>"). |
|  | k) No later than one hundred and five (105) calendar days after the Petition Date, the Bankruptcy Court shall have held a hearing (the "<u>Confirmation Hearing</u>") and entered an order confirming the Plan (the "<u>Confirmation Order</u>"). |
|  | l) No later than one-hundred-twenty (120) calendar days after the Petition Date, the Plan shall become effective (the "<u>Effective Date</u>"). |

| Releases | The Plan shall <u>not</u> include any releases of any causes of action or other claims that the Debtors may have against (i) the DCG Parties, (ii) the Gemini Parties or (iii) the Debtors' former officers, directors, employees, agents or representatives. Depending on the results of the Investigation, the Plan may include customary releases and exculpations for the Debtors' current officers, directors, employees, agents and representatives (solely in their capacity as such). |
|---|---|

## PLAN TREATMENT

### CLAIMS AGAINST GGH

| Administrative Claims | Each holder of an allowed administrative claim against GGH will be paid in cash on the latest of: (i) on or as soon as reasonably practicable after the Effective Date if such administrative expense claim is allowed as of the Effective Date; (ii) on or as soon as reasonably practicable after the date such administrative expense claim is allowed; and (iii) the date such administrative expense claim becomes due and payable, or as soon thereafter as is reasonably practicable. |
|---|---|
| Secured Claims | Any claims against GGH that are subject to valid and enforceable perfected security interests will be paid in full, in the relevant currency underlying the claim, based on the value of the collateral on the Petition Date. |
| General Unsecured Claims | **No Equitization**:  Each holder of allowed general unsecured claims shall receive its pro rata share of (i) Available Assets (including proceeds of the Sales Transaction), subject to the priority scheme under the Bankruptcy Code, and (ii) GUC Trust Units giving such holder a right to its pro rata share of the proceeds from any DCG Recoveries and GGH Avoidance Recoveries.

**Equitization**:  Each holder of allowed general unsecured claims against GGH shall receive its pro rata share of (i) Available Assets (including proceeds of the Sales Transaction), subject to the priority scheme under the Bankruptcy Code, (ii) equity in Reorganized GGH, subject to dilution on account of the MIP (defined below), and (iii) GUC Trust Units giving such holder a right to its pro rata share of the proceeds from any DCG Recoveries and GGH Avoidance Recoveries.

In addition, each holder of an allowed general unsecured claim against GGH shall have the option to receive a pro rata share of the DCG Contribution in exchange for its agreement to release DCG Parties. |

| Intercompany Claims | All allowed Intercompany Claims against GGH will be adjusted, reinstated, compromised or discharged on the Effective Date in the Debtors' or the Reorganized Debtors' discretion. |
|---|---|
| Equity | Holders of equity in GGH shall receive no recovery unless all claims are paid in full out of the proceeds of the Sales Transaction. |
| **CLAIMS AGAINST GGC** | |
| Administrative Claims | Each holder of an allowed administrative claim against GGC shall be paid in cash on the latest of: (i) on or as soon as reasonably practicable after the Effective Date if such administrative expense claim is allowed as of the Effective Date; (ii) on or as soon as reasonably practicable after the date such administrative expense claim is allowed; and (iii) the date such administrative expense claim becomes due and payable, or as soon thereafter as is reasonably practicable. |
| Secured Claims | Any claims against GGC that are subject to valid and enforceable perfected security interests shall be paid in full, in the relevant currency underlying the claim, based on the value of the collateral on the Petition Date. |
| General Unsecured Claims<br><br>*(Institutional and Gemini Lenders to Be Separately Classified)* | **No Equitization**:  Each holder of allowed general unsecured claims shall receive its pro rata share of Available Assets (including proceeds of the Sales Transaction), subject to the priority scheme under the Bankruptcy Code.<br><br>**Equitization**:  Each holder of allowed general unsecured claims against GGC shall receive its pro rata share of (i) Available Assets (including proceeds of the Sales Transaction), subject to the priority scheme under the Bankruptcy Code, and (ii) equity in Reorganized GGH, subject to dilution on account of the MIP.<br><br>In addition, regardless of whether an Equitization occurs, each holder of an allowed general unsecured claim against GGC shall receive the following:<br><br>   a)  **Institutional General Unsecured Claims**: Pro rata share of GUC Trust Units giving such holders a right to its pro rata share of the proceeds from any DCG Recoveries and GGC Avoidance Recoveries. |

|  | b) **Gemini Lender Unsecured Claims**: Pro rata share of GUC Trust Units giving such holders a right to their pro rata share of proceeds from any DCG Recoveries, GGC Avoidance Recoveries and Gemini Recoveries; <u>provided</u> that each holder of an allowed Gemini Customer Claim shall also have the option to receive a pro rata share of the Gemini Contribution (as defined below) in exchange for its agreement to release the Gemini Parties.<br><br>In addition, regardless of whether an Equitization occurs, each holder of an allowed general unsecured claim against GGC shall have the option to receive a pro rata share of the DCG Contribution in exchange for its agreement to release the DCG Parties. |
|---|---|
| **Intercompany Claims** | All allowed Intercompany Claims against GGC to be adjusted, reinstated, compromised or discharged on the Effective Date in the Debtors' or the Reorganized Debtors' discretion, subject to Bankruptcy Court approval. |
| **Equity** | All allowed Intercompany Interests in GGC to be adjusted, reinstated, compromised or discharged on the Effective Date in the Debtors' or the Reorganized Debtors' discretion, subject to Bankruptcy Court approval. |
| **CLAIMS AGAINST GAP** | |
| **Administrative Claims** | Each holder of an allowed administrative claim against GAP shall be paid in cash on the latest of: (i) on or as soon as reasonably practicable after the Effective Date if such administrative expense claim is allowed as of the Effective Date; (ii) on or as soon as reasonably practicable after the date such administrative expense claim is allowed; and (iii) the date such administrative expense claim becomes due and payable, or as soon thereafter as is reasonably practicable. |
| **General Unsecured Claims** | **No Equitization**: Each holder of allowed general unsecured claims to receive its pro rata share of (i) Available Assets (including proceeds of the Sales Transaction), subject to the priority scheme under the Bankruptcy Code, and (ii) GUC Trust Units giving such holder a right to its pro rata share of the proceeds from any DCG Recoveries and GAP Avoidance Recoveries.<br><br>**Equitization**: Each holder of allowed general unsecured claims to receive its pro rata share of (i) Available Assets (including proceeds of the Sales Transaction), subject to the priority scheme under the Bankruptcy Code, (ii) equity in Reorganized GGH, subject to dilution on account of the MIP, and (iii) GUC Trust Units giving such holder a right to its pro rata share of the proceeds from |

| | any DCG Recoveries and GAP Avoidance Recoveries. |
| | In addition, regardless of whether an Equitization occurs, each holder of an allowed general unsecured claim against GAP shall have the option to receive a pro rata share of the DCG Contribution in exchange for its agreement to release the DCG Parties. |
| **Intercompany Claims** | All allowed Intercompany Claims against GAP to be adjusted, reinstated, compromised or discharged on the Effective Date in the Debtors' or the Reorganized Debtors' discretion, subject to Bankruptcy Court approval. |
| **Equity** | All allowed Intercompany Interests in GAP to be adjusted, reinstated, compromised or discharged on the Effective Date in the Debtors' or the Reorganized Debtors' discretion, subject to Bankruptcy Court approval. |
| **OTHER TERMS** | |
| **Board of Directors of Reorganized Debtors** | To be determined if there is an Equitization. |
| **GUC Trust** | GUC Trust Trustee(s) to be nominated by the Debtors, in consultation with the Committee, and approved by the Bankruptcy Court. GUC Trust to have right to object to any proofs of claim filed by the DCG Parties, the Gemini Parties or others. |
| **Management Incentive Plan** | Reorganized GGH to adopt a management incentive plan (the "MIP") providing for the issuance of interests in Reorganized GGH to key management employees and the Board of Directors on or after the Effective Date. |
| **DEFINED TERMS** | |
| **Available Assets** | Cash and cash equivalents and, to the extent the Debtors so determine after considering legal, financial, tax, and other factors in good faith, Digital Assets held by the Debtors after paying for, or reserving for payment of, (i) estimated administrative, priority and secured claims and U.S. Trustee Fees, (ii) estimated professional fee claims, (iii) the GUC Trust Funding, (iv) if an Equitization occurs, the Capital Reserves, and (v) if an Equitization does not occur, the Liquidation Trust Funding. |
| **Avoidance Recoveries** | Recoveries from causes of action or other claims to avoid and recover transfers or obligations pursuant to sections 547 or 548 of the Bankruptcy Code and other avoidance actions under Chapter 5 of the Bankruptcy Code, including, without limitation, the proceeds from any settlements thereof. |

| Capital Reserves | In the event that an Equitization occurs, cash, cash equivalents or Digital Assets with an aggregate value of $150 million as of the Effective Date, which shall be used to restart the business of the Debtors following the Effective Date; provided that, in the event the total amount of cash, cash equivalents and Digital Assets available to the Reorganized Debtors on the Effective Date is less than $150 million, Capital Reserves shall include proceeds from DCG Recoveries and Avoidance Recoveries, but solely to the extent that the sum of such proceeds plus available cash, cash equivalents and Digital Assets is no more than $150 million. |
| --- | --- |
| Committee | The official committee of unsecured creditors of the Debtors to be appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code. |
| DCG | Digital Currency Group, Inc. |
| DCG Contribution | Consideration, if any, to be contributed by DCG or its affiliates or control persons in exchange for a release of claims against the DCG Parties pursuant to an election to be made under the Plan. |
| DCG Loans | Those certain loans in the principal amount of approximately $575 million, consisting of (i) the loans between GGC (as lender) and DCG (as borrower) (a) in the principal amount of approximately $200 million due on May 9, 2023 and (b) in the principal amount of approximately $300 million due on May 11, 2023, and (ii) the loan between GGC (as lender) and DCGI (as borrower) in the principal amount of 4,550.45 Bitcoin (~$75mm) due on May 11, 2023. |
| DCG Note | That certain $1.1 billion promissory note, dated as of June 30, 2022 and due on June 30, 2032, issued by DCG to GGC with an interest rate of 1% per annum, which may, at DCG's option, be paid in kind. |
| DCG Parties | DCG, its affiliates or their respective former or current officers, directors, employees, agents or representatives (other than in their capacities as current directors or officers of any the Debtors). |
| DCG Recoveries | Recoveries from the DCG Note, the DCG Loans and any and all causes of action or other claims against the DCG Parties, including, without limitation, the proceeds from any settlements thereof. |
| Digital Asset | A digital currency or crypto asset in which transactions are verified and records are maintained by a decentralized system using cryptography, rather than by a centralized authority, including stablecoins, digital coins and tokens, such as security tokens, utility tokens and governance tokens. |
| GAP Avoidance | Avoidance Recoveries in respect of causes of action or other claims |

| Recoveries | of GAP. |
|---|---|
| **Gemini Contribution** | Consideration, if any, to be contributed by Gemini Trust Company or its affiliates or control persons in exchange for a release of claims against the Gemini Parties pursuant to an election to be made under the Plan. |
| **Gemini Parties** | Gemini Trust Company, its affiliates or their respective former or current officers, directors, employees, agents or representatives. |
| **Gemini Recoveries** | Recoveries from causes of action or other claims against Gemini Parties, including, without limitation, the proceeds from any settlements thereof. |
| **GGC Avoidance Recoveries** | Avoidance Recoveries in respect of causes of action or other claims of GGC. |
| **GGH Avoidance Recoveries** | Avoidance Recoveries in respect of causes of action or other claims of GGH. |
| **GUC Trust** | A trust to be formed on the Effective Date and overseen by the GUC Trust Trustee(s) into which all of the GUC Trust Assets will vest pursuant to the Plan, which trust shall be responsible for making distributions to general unsecured creditors of the Debtors in accordance with the GUC Trust Agreement. |
| **GUC Trust Agreement** | The trust agreement, to be dated prior to the Effective Date, between the Debtors and the GUC Trust Trustee(s), governing the GUC Trust. |
| **GUC Trust Assets** | All rights arising out of or relating to the Avoidance Recoveries, the DCG Loans, the DCG Note, the DCG Recoveries, the Gemini Recoveries and the GUC Trust Funding, which shall be transferred to, and vested in, the GUC Trust on the Effective Date. |
| **GUC Trust Funding** | An amount equal to $15.0 million to be funded by the Debtors out of available cash, cash equivalents or Digital Assets, which amount shall be repaid by the GUC Trust following receipt of Avoidance Recoveries, DCG Recoveries and Gemini Recoveries in the aggregate amount of $20.0 million. |
| **GUC Trust Units** | Beneficial interests in the GUC Trust entitling each holder thereof to receive its pro rata share of the Avoidance Recoveries, the DCG Contribution, the DCG Recoveries, the Gemini Contribution and the Gemini Recoveries, as applicable. |

| **Liquidation Trust** | If the Equitization does not occur, the trust established pursuant to the Plan to, among other things, hold the Debtors' assets that were not sold in the Sales Transaction and make distributions pursuant to the Plan. |
|---|---|
| **Liquidation Trust Funding** | If the Equitization does not occur, cash in the amount the Debtors determine is necessary to fund expenses of the Liquidation Trust until all distributions required to be made under the Plan are made. |
| **Reorganized GGH** | If there is an Equitization, GGH as reorganized on the Effective Date. |
| **U.S. Trustee Fees** | Fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717. |

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Joint Administration Pending |

**DECLARATION OF MICHAEL LETO**
**IN SUPPORT OF FIRST DAY MOTIONS AND**
**APPLICATIONS IN COMPLIANCE WITH LOCAL RULE 1007-2**

      I, Michael Leto, hereby declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, as follows:

      1.      I am a Managing Director with Alvarez & Marsal North America, LLC ("A&M"), a restructuring advisory services firm specializing in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services and financial and operational restructuring, and a restructuring advisor to the above-captioned debtors and debtors-in-possession: Genesis Global Holdco, LLC ("Holdco"), Genesis Global Capital, LLC

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

("GGC"), and Genesis Asia Pacific Pte. Ltd. ("GAP," and together with Holdco, GGC, and Holdco's subsidiaries the "Company").

2.      Since the Debtors engaged A&M in November of 2022, I have worked closely with the Company and other advisors.  I have over 15 years of distressed company advisory experience. Through roles in both senior management and as a restructuring advisor, I have substantial experience helping financially distressed companies stabilize their financial condition, analyze their operations, and develop business plans to accomplish the necessary restructuring of their operations and finances.  I have advised clients in numerous major bankruptcy cases, including Lehman Brothers Holdings Inc, a large financial bankruptcy (for 7 years, of which I served 3 years as Interim Chief Financial Officer), Bristow Group, aviation transportation company, Gibson Brands, a large international consumer products company, and have served as the interim Chief Financial Officer of other private companies.  I received my bachelor's degree in Accounting and Business Administration from Hofstra University and an MBA from Fordham University in Management Systems and International Business.  This declaration sets forth the relevant facts in support of each of the Debtors' chapter 11 petitions and first day motions.

3.      I am generally familiar with the operations and affairs of the Debtors that have filed voluntary petitions for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). Concurrently herewith, the Debtors have filed a motion seeking joint administration of their chapter 11 cases (the "Chapter 11 Cases") pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

4.      To minimize the adverse effects on their businesses, creditors and employees of filing for bankruptcy protection, the Debtors have filed motions requesting various types of "first

day" relief (collectively, the "First Day Motions").[2]  The First Day Motions seek relief intended to allow the Debtors to perform and meet the obligations necessary to continue ordinary course activities and fulfill their duties as debtors-in-possession.  I am familiar with the contents of each First Day Motion (including the exhibits thereto) and, based on my knowledge and experience, believe that each First Day Motion (i) is necessary to enable the Debtors to operate in chapter 11 with minimum disruption or loss of productivity or value; (ii) constitutes a critical element of the Debtors' restructuring efforts; and (iii) best serves the interests of the Debtors' estates and creditors.

5.      I submit this declaration (this "First Day Declaration") in support of the First Day Motions and pursuant to 28 U.S.C. § 1746, as well as Rule 1007 of the Bankruptcy Rules and Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"). Except as otherwise indicated herein, all facts set forth in this First Day Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, information supplied to me by members of the Debtors' management, other personnel and professional advisors or my opinion based on my experience, knowledge and information concerning the Debtors' operations and financial condition and the digital asset industry as a whole.  To the extent that the Debtors learn that any information provided herein is materially inaccurate, the Debtors will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my knowledge, information and belief.  I am authorized to submit this First Day Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

---

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in each of the First Day Motions.

6.      Section I provides an overview of the Debtors' prepetition capital structure and indebtedness.  Section II summarizes the relief requested in each First Day Motion and the facts supporting those requests.  Section III includes certain additional information required by Local Rule 1007-2 related to the Debtors.

## I.      THE DEBTORS' PREPETITION CAPITAL STRUCTURE

### A.      Debtors' Cash, Digital Assets and Shares Held in Brokerage Accounts

7.      As of the Petition Date, the Debtors have more than $150 million in cash, approximately $500 million in digital assets, and approximately $385 million in shares in brokerage accounts respectively.  As of November 30, 2022, the Debtors had approximately $505 million in outstanding loans to Third Parties.  In connection with the outstanding loans, the Debtors have received approximately $553 million in collateral against those loans in both U.S. dollars and/or digital assets.

### B.      Institutional Creditors

8.      According to information made available by the Company's management, as of November 30, 2022, GGC and GAP had outstanding borrowings in U.S. dollars and digital assets totaling approximately $2.6 billion with approximately 595 non-affiliated institutional lenders.[3] These borrowings are generally documented under master digital asset loan agreements ("MLAs") individually negotiated with each lender as well as associated term sheets.  In connection with such borrowings, GGC and GAP have posted approximately $351 million in collateral denominated in U.S. dollars and/or digital assets.

---

[3]      According to the same information, GGH did not have any outstanding borrowings with third parties as of November 30, 2022.

### i.    Gemini Lenders

9.    GGC also has outstanding borrowings of digital assets with customers of Gemini Trust Company, LLC ("Gemini") (such borrowings, the "Gemini Borrowings").  As with the Debtors' other borrowings, these transactions are documented under MLAs. However, GGC did not interact with Gemini's customers ("Gemini Lenders") directly.  Rather, the Gemini Lenders appointed Gemini to act as their agent in connection with the Gemini Borrowings.

10.    In addition, the Gemini Borrowings with Gemini Lenders are not documented under term sheets.  Rather, pursuant to the MLAs, GGC provided Gemini with the terms of the loans it was willing to enter into.  Gemini then was required to provide such terms to the Gemini Lenders who chose to enter into loans subject to those terms.  GGC does not have information about the number or identity of the Gemini Lenders, and understands that Gemini is privy to that information.

11.    On August 15, 2022, GGC entered into a security agreement with Gemini as agent for the Gemini Lenders pursuant to which GGC pledged 30,905,782 shares of the Grayscale Bitcoin Trust ("GBTC") to Gemini for the benefit of the Gemini Lenders to secure GGC's obligations under the Gemini Borrowings.  On November 7, 2022, GGC and Gemini entered into an amendment to the security agreement, which extended its term until GGC paid what it owed under the Gemini Borrowings in full.  On November 10, 2022, GGC, Gemini and DCG entered into a second amendment to the security agreement pursuant to which DCG agreed to deliver an additional 31,180,804 shares of GBTC to GGC.  GGC, in turn, agreed to transfer such shares to Gemini for the benefit of the Gemini Lenders and, upon such transfer, pledge those shares to Gemini to secure GGC's obligations under the Gemini Borrowings.  However, no shares were transferred (or therefore pledged) pursuant to this second amendment.

12.     On November 16, 2022 Gemini informed GGC that it had foreclosed on 30,905,782 of shares pledged under the security agreement through a private sale at the market price as of 4:00 p.m. EST of $9.20 per share.  On that date, Gemini further informed GGC that the proceeds of such sale, $284,333,194.40, less costs and expenses of foreclosure, were applied to GGC's outstanding obligations under the Gemini Borrowings.  I understand that GGC disputes whether Gemini's foreclosure satisfied applicable law, including whether such sale was completed in a commercially reasonable manner and in accordance with the notice requirements set forth in the Uniform Commercial Code.

## II.     TRANSACTIONS WITH DCG AND DCG INTERNATIONAL INVESTMENTS LTD.

### A.     DCG Loans

13.     According to information made available by the Company's management, as of November 30, 2022, GGC has outstanding loans to DCG amounting to approximately $500,000,000.  The loans consist of:

- A $100,000,000 loan, which was executed on January 24, 2022 with an original maturity date of July 24, 2022, which was later extended to May 11, 2023 (the "January Loan");

- A $100,000,000 loan, which was executed on February 23, 2022 with an original maturity date of August 23, 2022, which was later extended to May 11, 2023 (the "February Loan");

- A $200,000,000 loan, which was executed on May 9, 2022 with a maturity date of May 9, 2023 (the "May 9 Loan");

- A $100,000,000 loan, which was executed on May 10, 2022 with a maturity date of May 10, 2023 (the "May 10 Loan" and together with the May 9 Loan, the "May Loans" and collectively with the January Loan and February Loan, the "GGC-DCG Loans").

6

14.     On November 10, 2022, in connection with various transactions, including an equity injection from DCG into GGC International Ltd. ("GGCI"), a non-debtor affiliate, of a total value of approximately $140 million, including contributions of $50 million in cash, various digital currency and GBTC shares, GGC and DCG entered into an amended and restated Master Digital Asset Loan Agreement (the "A&R DCG Loan Agreement") to memorialize the terms governing the GGC-DCG Loans.  On the same date, the parties also extended the maturity of the January Loan and February Loan to May 11, 2023.  On the same date, GGC also repaid $50,000,000 it had borrowed from DCG on June 15, 2022.

**B.      DCG Note**

15.     On June 30, 2022, DCG assumed a $1.1 billion payable GAP owed to GGC and evidenced the assumed payable with a $1.1 billion promissory note in favor of GGC that had a 10 year maturity and fixed interest rate of 1% that may, at DCG's option, be paid in kind.

**C.      Luno Set Off**

16.     On August 30, 2022, GGC entered into a master loan agreement with Luno Pte. Ltd. ("Luno"), a subsidiary of DCG (the "Luno MLA").  On November 11, 2022, DCG purportedly issued to Luno a guarantee, to which GGC was not a party, of GGC's obligations to Luno under the Luno MLA.  As of November 17, 2022, GGC had owed Luno digital assets which were valued at approximately $52.5 million under loans governed by the Luno MLA.  On that date, Luno purportedly demanded the transfer of such digital assets from DCG under the guarantee and DCG purportedly transferred such digital assets promptly after receiving the demand.

17.     DCG purportedly set off GGC's obligation to reimburse DCG for the $52.5 million transfer to Luno against DCG's obligations under the January Loan.  If this setoff is valid, the $500,000,000 owed to GGC by DCG would be reduced by the $52.5 million setoff amount.

However, I understand that the Special Committee of the Board of Holdco is continuing to investigate this matter.

**D.      DCGI Loans**

18.      Based on information made available by the Company's management as of November 30, 2022, GGC has outstanding loans to DCG International Investments Ltd. ("DCGI"), a subsidiary of DCG, of 14,048 BCH (approximately $1.7 million USD as of the Petition Date) and 4,550.45 BTC (approximately $94 million USD as of the Petition Date). The outstanding 4,550.45 BTC is owed under a loan from GGC to DCGI of 18,297 BTC that the parties entered into on June 18, 2022 pursuant to a term sheet and MLA. The original maturity date is not specified in the loan term sheet. On November 10, 2022, DCGI partially paid off the BTC Loan by delivering 25,999,457 GBTC shares to GGC (approximately $250 million USD as of the date of payment), which resulted in the remaining obligation of 4,550.45 BTC. On the same date, the maturity date for DCGI's obligation to return the remaining 4,550.45 BTC was specified as May 11, 2023.

19.      GGC also owes DCGI 78,539.01 ETHW (approximately $296,000 USD as of the Petition Date) under a loan between the parties dated November 15, 2022.

**III.      FIRST DAY PLEADINGS**

20.      To minimize the adverse effects on their business during the Chapter 11 Cases, and to ensure continued ordinary course operations post-petition, the Debtors have requested various types of customary relief in the following First Day Motions, all of which are being filed concurrently with this declaration. For the reasons discussed below, I believe that the relief requested in each of the First Day Motions is necessary and appropriate and is in the best interest of the Debtors' estates, creditors and other parties-in-interest.

### A.    Procedural Motions

*Debtors' Motion for Entry of an Order Directing Joint Administration of Their Chapter 11 Cases* (the "Joint Administration Motion")

21.    The Debtors have sought entry of an order directing the joint administration of the Chapter 11 Cases for Genesis Global Holdco, LLC, Genesis Global Capital, LLC and Genesis Asia Pacific Pte. Ltd.

22.    Joint administration will eliminate the need for duplicative notices, applications, motions, hearings and orders, which will permit the Debtors to avoid the time and expense that would otherwise be necessary to administer individual cases separately.   Because the Joint Administration Motion requests only administrative, and not substantive, consolidation of the Debtors' cases, creditors' rights will not be adversely affected.   In fact, all creditors will benefit from the reduced burdens and expenses that will result from the joint administration of these cases. Finally, joint administration will simplify the supervision of the administrative aspects of these Chapter 11 Cases by this Court and the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee").

*Debtors' Motion for Entry of an Order Extending The Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs* (the "Schedules Extension Motion")

23.    By the Schedules Extension Motion, the Debtors seeks entry of an order extending the time within which the Debtors must file their schedules and statements required by Bankruptcy Rule 1007(a)(3) through and including thirty-five (35) days after the date required under Bankruptcy Rule 1007(c).   The Debtors are also seeking an order extending the time by which the Debtors must file the 2015.3 Financial Reports or otherwise file a motion with this Court seeking a modification of such reporting requirements for cause by sixty (60) days from the Petition Date.

24.     I believe that "cause" exists to extend the Debtors' time to file their Schedules and Statements and 2015.3 Financial Reports.  The Debtors operate a large, complex business and there is a significant amount of information that must be collected, reviewed and analyzed to prepare the Schedules and Statements and ensure their accuracy.  There also are three separate Debtor entities and the Debtors must prepare and review the detailed information for each of them.

25.     After the commencement of these Chapter 11 Cases, the Debtors will spend a significant amount of time and resources making administrative and business decisions related to employees, creditors and vendors that are essential to stabilizing their operations and affairs in the wake of their bankruptcy petition to assure the continued vitality of the Debtors' business operations.  The Debtors have made progress in identifying and assembling the data necessary for the Schedules and Statements; however, I am concerned that the Debtors will not be able to complete this undertaking prior to the original deadline, which renders this extension, , without prejudice to the Debtors' right to seek further extensions, necessary.

> *Debtors' Motion for an Order (I) Waiving the Requirement That Debtors File a List of Creditors and Authorizing Preparation of a Consolidated List of Creditors in Lieu of Submitting a Formatted Mailing Matrix, (II) Authorizing the Debtors to File a Consolidated List of the Debtors' Fifty (50) Largest Unsecured Creditors, and (III) Authorizing the Debtors to Redact Certain Personally Identifiable Information and (IV) Granting Related Relief* (the "Consolidated Creditors List Motion")

26.     By the Consolidated Creditors List Motion, the Debtors seek entry of an order (i) waiving the requirement that the Debtors file a list of creditors and authorizing the Debtors to file a consolidated list of creditors in lieu of submitting a formatted matrix, (ii) authorizing the Debtors to file a single, consolidated list of the Debtors' fifty (50) largest unsecured creditors, and (iii) authorizing the debtors to redact certain personally identifiable information.

27.     The Debtors presently maintain various computerized lists of the names and addresses of their creditors.  I believe that such information will be utilized more efficiently if it is taken as maintained in the various computer files and then consolidated.  In addition, filing the lists in the format or formats currently maintained in the ordinary course of business will be sufficient to permit the claims and noticing agent to notice promptly all applicable parties.

28.     Furthermore, I believe that filing a consolidated list of the fifty (50) largest unsecured creditors will be both efficient for the Debtors and sufficient to reflect the body of unsecured creditors that have the greatest stake in these cases.  Indeed, the consolidated list of the top fifty (50) creditors captures creditors with outstanding amounts as low as approximately $10.2 million.

29.     The Creditor Matrix and Schedules and Statements may contain the names and home addresses of individuals; such information should be redacted because it can be used to perpetrate identity theft or locate survivors of domestic violence, harassment, or stalking.  The Debtors also wish to comply with data privacy laws in various jurisdictions where their creditors reside that require redaction of the creditors' names.  The Debtors therefore, propose to provide an unredacted version of the Creditor Matrix, Schedules and Statements, and any other applicable filings redacted to the proposed order to (a) the Court, the U.S. Trustee, counsel to the official committee of unsecured creditors appointed in these Chapter 11 Cases (if any), and (b) any party-in-interest upon a request to the Debtors or to the Court that is reasonably related to these Chapter 11 Cases.

30.     Finally, I believe that allowing the Debtors or their claims and noticing agent to complete the mailings to creditors in lieu of effecting service through the Office of the Clerk of

this Court will save both the Debtors and this Court's staff and personnel significant time, cost and expense.

> *Debtors' Application for Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent (the "*Kroll Claims and Noticing Agent Application*")*

31.    I have been informed that the numerous creditors and other parties in interest involved in these Chapter 11 Cases may impose heavy administrative and other burdens on the Court and the Clerk's Office.    Therefore, the Debtors seek to appoint Kroll Restructuring Administration LLC ("Kroll") as their notice, claims and balloting agent.    Among other things, Kroll will (i) prepare and serve required notices in these Chapter 11 Cases; (ii) maintain the Debtors Schedules, creditors' list, and other information relating to or concerning these cases, (iii) maintain the Debtors' Claims Register and provide procedures for the filing and of proofs of claims in these Chapter 11 Cases; and (iv) act as a balloting agent.    The Debtors selected Kroll because it is one of the nation's leading bankruptcy administrators and has extensive experience performing these tasks before this Court in cases of this size.    I believe that Kroll is well-qualified to perform the services contemplated in its retention application.

> *Debtors' Motion for Entry of an Order Implementing Certain Notice and Case Management Procedures (the "*Case Management Motion*")*

32.    Pursuant to the Case Management Motion, the Debtors seek entry of an order approving and implementing certain notice, case management and administrative procedures set forth therein (collectively, the "Case Management Procedures").

33.    Given the size and scope of these cases, the Case Management Procedures will facilitate service of notices, motions, applications, declarations, objections, responses, memoranda, briefs, supporting documents and other papers filed in these Chapter 11 Cases that will be less burdensome and costly than serving such documents on every potentially interested

party.  This will maximize the efficiency and orderly administration of these Chapter 11 Cases, while also ensuring that appropriate notice is provided.

     **B.**     **Motions Related to the Debtors' Operations in Chapter 11**

> *Debtors' Motion for an Order Authorizing the Debtors to Operate their Business in the Ordinary Course and Ordering Implementation of the Automatic Stay* (the "Automatic Stay Motion")

34.     By the Automatic Stay Motion, the Debtors seek a clarifying order from this Court enforcing the automatic stay existent pursuant to section 362 of the Bankruptcy Code and the *ipso facto* and anti-discrimination provisions of the Bankruptcy Code (the "Automatic Stay") and confirming the Debtors' authority to continue to operate their business post-petition, pursuant to sections 363, 1107 and 1108 of the Bankruptcy Code.

35.     This order is necessary to inform affected parties of the existence of the Automatic Stay, especially as to the protections that it provides to the Debtors, particularly with respect to foreign creditors who may be unfamiliar with the impact of the Automatic Stay.  It is also necessary to inform affected parties of the Debtors' right to continue business operations under the Bankruptcy Code as well as the authority of Non-Debtor Subsidiaries to continue business operations outside of the jurisdiction of this Court.

36.     The very nature of the Debtors' operations means that the Debtors and their valuable property are subject to dealings with multiple counterparties, including foreign ones, on a daily basis.  To continue to serve their customers, it is critical that vendors, customers and other counterparties understand the nature of the Debtors' reorganization proceedings, their scope and the protections that are afforded to the Debtors under the Bankruptcy Code.  If the Debtors' operations are disrupted, or creditors fail to understand the Debtors' authority to continue their operations, the Debtors' business operations will experience significant negative impacts.  In turn,

customers will be dissatisfied with the Debtors' performance, which may have an effect on the prospects of a successful reorganization.

37.    If a creditor takes action against the Debtors' assets in violation of the Automatic Stay, or refuses to perform its existing contractual obligations, the negative impact on the Debtors will be significant and the risk of damage to their overall business enormous.

38.    Accordingly, the Debtors request that this Court enter an order that will, in simple terms and without the need for extensive explanation, apprise all parties in interest of the rights and obligations of section 362 of the Bankruptcy Code and, particularly, the Debtors' rights under the Automatic Stay.  Without such relief, the Debtors will be exposed to the possibility of significant hardship in the form of (i) unintentional violations of the Automatic Stay that could hamper their ability to successfully reorganize, or (ii) at minimum, numerous and burdensome discussions to educate creditors on the relevant Bankruptcy Code provisions under which the petitions themselves constitute an order for relief.

39.    I am also concerned that the Debtors' creditors and counterparties may be unaware that the Bankruptcy Code allows the Debtors to continue operating their business operations under current management in the ordinary course after the commencement of these Chapter 11 Cases.

40.    Accordingly, the Debtors request an order memorializing the relevant provisions of the Bankruptcy Code to, *inter alia*, inform the Debtors' creditors and counterparties that the Debtors now qualify as debtors-in-possession and are allowed to operate their business in the ordinary course, including, but not limited to, negotiating and entering into ordinary course business transactions, performing obligations, incurring liabilities and paying amounts in respect of such transactions on and after the Petition Date as they become due and payable.

*Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing, But Not Directing, the Debtors to Pay Certain Prepetition Claims of Critical Vendors and Foreign Vendors, (II) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Claims and (III) Granting Related Relief* (the "Critical Vendor Motion")

41.     By the Critical Vendors Motion, the Debtors seek the entry of interim and final orders authorizing, but not directing, the Debtors to pay, in the ordinary course of business, certain prepetition claims of critical and foreign vendors and service providers (the "Critical Vendors" whose claims shall be collectively identified as the "Critical Vendor Claims").

42.     The Debtors have determined, in an exercise of their business judgment, that the continued receipt of certain goods and services is necessary to ensure that there are no unexpected or inopportune interruptions in the Debtors' business operations, and to preserve and maximize the value of the Debtors' estates.  Accordingly, without the relief requested in the Critical Vendor Motion, many of the Critical Vendors may cease providing goods and services to the Debtors, which could be detrimental to the success of the Chapter 11 Cases.

43.     The Critical Vendors supply the Debtors with essential, hyperspecialized goods and services, including information technology platforms, cybersecurity infrastructure, custodial storage, and resources for the Debtors' lending and borrowing operations.  These goods and services support the successful operation of the Debtors' businesses, and if access to these goods and services were cut off or disrupted, even for a limited amount of time, the Debtors and all parties in interest would suffer irreparable harm.  Some of the Debtors' Critical Vendors are foreign vendors.  These vendors may lack minimum contacts with the United States and, thus, may assert that they are not subject to the jurisdiction of the Court or the provisions of the Bankruptcy Code that otherwise protect the Debtors' assets and business operations—particularly the Automatic Stay.  Given the importance the Critical Vendors play in the Debtors' day-to-day operations, even

a temporary disruption in the goods and services provided would have a devastating effect on the operation of the Debtors' businesses. Accordingly, the Debtors need the ability to pay the Critical Vendor Claims on an uninterrupted basis.

> *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Payment of Certain Taxes and Fees* (the "Taxes Motion")

44. By the Taxes Motion, the Debtors seek the entry of interim and final orders authorizing, but not directing, the Debtors to remit and pay certain prepetition taxes and fees that will become payable during the pendency of these Chapter 11 Cases in the ordinary course of business.

45. In the ordinary course of business, the Debtors collect, withhold, or incur a variety of taxes, including, without limitation, sales, use, income, foreign, and various other similar taxes, fees, charges and assessments (collectively, the "Taxes and Fees"). The Debtors remit the Taxes and Fees to various federal, state and local governments, including taxing and licensing authorities (collectively, the "Authorities") in accordance with applicable law. Taxes and Fees are remitted and paid by the Debtors through checks and electronic funds transfers that are processed through their banks and other financial institutions. The Debtors pay the Taxes and Fees to the Authorities on a periodic basis, remitting them monthly, quarterly, semiannually and annually, depending on the nature and incurrence of the particular Tax or Fee. Out of an abundance of caution, the Debtors seek authority pursuant to the Taxes Motion to make such payments where: (a) Taxes and Fees accrue or are incurred post-petition; (b) Taxes and Fees accrued or were incurred prepetition but were not paid prepetition, or were paid in an amount less than actually owed; or (c) Taxes and Fees paid prepetition by the Debtors were lost or otherwise not received in full by any of the Authorities.

46.     Failing to pay the Taxes and Fees would materially disrupt the Debtors' business operations in several ways. First, the Authorities could initiate investigations or audits, suspend operations, file liens, or seek to lift the automatic stay, which would unnecessarily divert the Debtors' attention from their reorganization process. Second, failing to pay the Taxes and Fees could subject certain of the Debtors' directors and officers to claims of personal liability, which likely would distract those key employees from their duties related to the Debtors' restructuring. Third, failing to pay certain of the Taxes and Fees may cause the Debtors to lose their ability to conduct business in certain jurisdictions. Fourth, unpaid Taxes and Fees may result in penalties, the accrual of interest, or both, which could negatively impact the Debtors' businesses. Accordingly, the Debtors' ability to pay the Taxes and Fees is critical to their continued and uninterrupted operations.

> *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Continue to Operate the Existing Cash Management System, Including Existing Bank Accounts, Honor Certain Prepetition Obligations Related Thereto, and Maintain Existing Business Forms; (II) Permitting Continued Intercompany Transactions and Granting Certain Administrative Claims; (III) Extending the Time to Comply with the Requirements of Section 345 of the Bankruptcy Code; and (IV) Granting Related Relief* (the "<u>Cash Management Motion</u>")

47.     In the ordinary course of business, the Debtors utilize an integrated, centralized cash and cryptocurrency management system (the "<u>Cash Management System</u>"), which includes all activities necessary and pertinent to the collection, disbursing and investing of the Debtors' cash and cryptocurrency assets. The Cash Management System allows the Debtors to efficiently identify the Debtors' cash and digital asset requirements and transfer cash and digital assets as needed to respond to these requirements in a cost-effective, efficient manner. The Cash Management System involves approximately 19 bank accounts and five brokerage accounts at ten banking institutions (the "<u>Bank Accounts</u>") in the United States, Singapore and Denmark. The

complexity of the Debtors' Cash Management System is similar to that of other enterprises in the same industry. Through their Cash Management System, the Debtors are able to efficiently identify and report the Debtors cash and digital asset requirements and transfer assets as needed to respond to these requirements in a cost-effective, efficient manner. Their Cash Management System also allows the Debtors to meet the Debtors' operating needs, enabling them to centrally facilitate, monitor and control the collection and disbursement of funds and digital assets, enable efficient forecasting and reporting on a daily basis, ensure asset availability and liquidity, invest excess assets, and reduce administrative expenses by facilitating the movement of assets and enhancing the development of accurate account balances. Any disruption of the Cash Management System would be extremely detrimental to the Debtors' operations, as their business requires prompt access to cash and digital assets to operate.

48.     So as to minimize disruption to the Cash Management System, which would be costly to the Debtors' operations and divert precious time and resources from the Debtors' focus on their restructuring efforts, the Debtors have sought entry of an order authorizing them to continue the use of the Cash Management System, including the continued maintenance, servicing and administration of their Bank Accounts (as defined in the Cash Management Motion) and Wallets (as defined in the Cash Management Motion). Absent such an order, the Debtors' ability to pay taxes to government entities, pay vendors and employees and successfully administer the Chapter 11 Cases will be severely compromised. The delays that would result from the Debtors being required to establish a new system of accounts and cash and digital asset management would place an undue burden and put unnecessary pressure on the Debtors and their employees while they work to stabilize the business and meet the obligations imposed by chapter 11 of the Bankruptcy Code, among other expected significant and detrimental effects.

49.     Relatedly, the Debtors also seek through the Cash Management Motion the entry of an order authorizing the Debtors to continue certain intercompany transactions, grant administrative priority status to post-petition intercompany claims, extend the time for the Debtors to comply with the investment and deposit restrictions imposed by section 345 of the Bankruptcy Code for forty-five (45) days, authorize the Debtors' to continue using prepetition bank accounts, to continue to maintain and service their cryptocurrency wallets, continue using ordinary course payment methods and existing Business Forms (as defined in the Cash Management Motion) and to schedule a final hearing on the Cash Management Motion.  These requests are intended and necessary to ensure that the Debtors can best serve the interests of not only their businesses but also of all parties in interest during the Chapter 11 Cases.

> *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Certain Employee Wages and Other Compensation and Related Obligations and (B) Maintain and Continue Employee Benefits and Programs in the Ordinary Course, and (II) Authorizing and Directing Applicable Banks to Honor Transfers Related to Such Obligations* (the "Employee Wages Motion")

50.     Pursuant to the Employee Wages Motion, the Debtors request the entry of an order pursuant to sections 105(a), 363, 507 and 541 of the Bankruptcy Code authorizing, but not directing, the Debtors to pay and honor certain prepetition employment-related claims, including (i) wages and salaries, (ii) reimbursable expenses, (iii) health, pension and insurance benefits, (iv) severance benefits, (v) paid time-off and other leave, and (vi) all other benefits that the Debtors have historically provided to Employees in the ordinary course of business (collectively, and together with attendant costs and expenses, the "Wages and Benefits").  In addition, the Debtors intend to continue to exercise their rights to modify or discontinue any of the Wages and Benefits, or to implement new Wages and Benefits in the ordinary course of business, during the Chapter 11 Cases without the need for further Court approval.

51.     The Employees perform a variety of critical functions for the Debtors' business as the Employees' skills, their specialized knowledge of the Debtors' business model, industry and operations, as well as their relationships with vendors, customers and other third parties, are essential to the value of the Debtors' assets and business.  Without the support and dedication of the Employees to ensure the continued operation of the business, the Debtors would be unable to effectively reorganize.

52.     The Employees provide the Debtors with services necessary to conduct the Debtors' business, and absent the payment of the compensation and benefits owed to the Employees, the Debtors may experience workforce turnover and instability at this critical time in these Chapter 11 Cases.  Without these payments, the Debtors' workforce may become demoralized and unproductive because of the potential significant financial strain and other hardships the Employees may face.

53.     Payment of the prepetition obligations with respect to the Employee Compensation and Benefits is a necessary and critical element of the Debtors' efforts to preserve value and will give the Debtors the greatest likelihood of retention of their workforce as the Debtors seek to operate their business in these Chapter 11 Cases.  Accordingly, the relief requested in the Employee Wages Motion should be approved by the Bankruptcy Court.

*Debtors' Motion Pursuant to Section 1505 of the Bankruptcy Code for Authorization of Genesis Asia Pacific Pte. Ltd. to Act as the Foreign Representative of the Debtors* (the "Foreign Representative Appointment Motion")

54.     By this motion, the Debtors seek to appoint GAP as the Debtors' foreign representative pursuant to section 1505 of the Bankruptcy Code so that GAP may seek recognition of the Chapter 11 proceedings and other orders of this Court in the relevant Singaporean courts.

55.     It is my understanding that in order for the Debtors to receive certain benefits of the Chapter 11 process, including enforcing the Automatic Stay in foreign countries, it is necessary for a duly appointed foreign representative to seek recognition in certain foreign courts. The relief sought in the Foreign Representative Appointment Motion will facilitate the Debtors' efforts to have the Chapter 11 Cases recognized in Singapore, where local creditors otherwise may attempt to foreclose on assets or take other measures contrary to the Automatic Stay and to the detriment of the Debtors' estates and their stakeholders generally.

## IV.    INFORMATION REQUIRED BY LOCAL RULE 1007-2

56.     Attached as **Schedule 1** is a chart summarizing the Company's corporate structure and the Debtors' places in that structure.

57.     Local Rule 1007-2 requires certain additional information related to the Debtors, which is set forth below and in the schedules attached hereto.

58.     Pursuant to Local Rule 1007-2(a)(3), **Schedule 2** provides information about committees formed to participate in the Debtors' ongoing restructuring efforts prior to the Petition Date, to the best of the Debtors' knowledge.

59.     Pursuant to Local Rule 1007-2(a)(4), **Schedule 3** lists, for each of the holders of the fifty (50) largest unsecured claims on a consolidated basis, the name, the address, the telephone number, e-mail address, the name(s) of person(s) familiar with the Debtors' account, the amount of the claim and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

60.     Pursuant to Local Rule 1007-2(a)(5), **Schedule 4** lists, for each of the holders of the five largest secured claims on a consolidated basis, the name, the address, the telephone number, e-mail address, the name(s) of person(s) familiar with the Debtors' account, the amount

of the claim, a brief description and an estimate of the value of the collateral securing the claim and whether the claim or lien is disputed.

61.     Pursuant to Local Rule 1007-2(a)(6), **Schedule 5** provides a summary of the consolidated assets and liabilities for the Debtors and their Non-Debtor Subsidiaries.

62.     Pursuant to Local Rule 1007-2(a)(5), **Schedule 6** provides the following information:  the number and classes of shares of stock, debentures and other securities of the Debtors that is publicly held and the number of record holders thereof; and the number and classes of shares of stock, debentures and other securities of the Debtors that is held by the Debtors' directors and officers, and the amounts so held.

63.     Pursuant to Local Rule 1007-2(a)(8), **Schedule 7** lists all of the Debtors' property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity, giving the name, address and telephone number of each such entity and the court in which any proceeding relating thereto is pending.

64.     Pursuant to Local Rule 1007-2(a)(9), **Schedule 8** lists all of the premises owned, leased or held under other arrangements from which the Debtors' operate their business.

65.     Pursuant to Local Rule 1007-2(a)(10), **Schedule 9** provides the location of the Debtors' substantial assets, the location of their books and records and the nature, location and value of any assets held by the Debtors outside the territorial limits of the United States.

66.     Pursuant to Local Rule 1007-2(a)(11), **Schedule 10** provides the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their property where a judgment against the Debtors or a seizure of their property may be imminent.

67.     Pursuant to Local Rule 1007-2(a)(12), **Schedule 11** provides the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors and a brief summary of their relevant responsibilities and experience.

68.     Pursuant to Local Rule 1007-2(b)(1)-(2)(A), **Schedule 12** provides (i) the estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the filing of the Chapter 11 Cases; (ii) the amount paid and proposed to be paid for services for the thirty (30) day period following the filing of the Chapter 11 Cases (A) to officers, stockholders and directors; and (B) to the Debtors' financial or business consultants.

69.     Pursuant to Local Rule 1007-2(b)(3), **Schedule 13** provides, for the thirty (30) day period following the filing of the Chapter 11 Cases, estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 20, 2023
        New York, New York

                                          /s/ Michael Leto
                                          Michael Leto
                                          Managing Director
                                          Alvarez & Marsal North America, LLC

197

**<u>SCHEDULES</u>**

**Schedule 1**

**Organizational Chart**

© 2023 Genesis | CONFIDENTIAL DO NOT DISTRIBUTE OR COPY

<u>**Schedule 2**</u>

**Committees Organized Prepetition**

Pursuant to Local Bankruptcy Rule 1007-2(a)(3), to the best of the Debtors' knowledge, prior to the Petition Date, the following committees have been formed to participate in the Debtors' ongoing restructuring efforts.

| Committee Members | Counsel for Committee |
|---|---|
| Ad Hoc Group of GGC Lenders | Proskauer Rose LLP, Houlihan Lokey, Inc. |
| Ad Hoc Group of GGC Lenders | Kirkland & Ellis LLP, Houlihan Lokey, Inc. |

# Schedule 3

**Fifty Largest Unsecured Creditors**

Fill in this information to identify the case:

Debtor name  Genesis Global Holdco, LLC, et al.

United States Bankruptcy Court for the: Southern District of New York

Case number (If known): 23-10063

☑ Check if this is an
amended filing

Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 50 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 50 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Various Lenders as defined in certain Master Digital Asset Loan Agreements entered into with Gemini Trust Company, LLC, as agent for the Lenders | On File | Loan Payable | Unliquidated Disputed* | | | $ 765,900,135 |
| 2 | On File | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 462,209,125 |
| 3 | On File | On File | Loan Payable | Unliquidated | $ 446,863,828 | Undetermined | Undetermined |
| 4 | On File | On File | Collateral Payable | Unliquidated | | | $ 230,023,000 |
| 5 | Mirana Corp. | On File | Loan Payable | Unliquidated | | | $ 151,568,100 |
| 6 | Moonalpha Financial Services Limited | On File | Loan Payable | Unliquidated | | | $ 150,015,000 |
| 7 | On File | On File | Loan Payable | Unliquidated | | | $ 114,507,650 |
| 8 | Coincident Capital International, Ltd. C/O Forbes Hare Trust Company | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 112,272,921 |
| 9 | On File | On File | Loan Payable | Unliquidated | | | $ 90,000,000 |
| 10 | Donut, Inc. | On File | Loan Payable | Unliquidated | | | $ 78,037,054 |
| 11 | On File | On File | Loan Payable | Unliquidated | | | $ 75,451,600 |
| 12 | On File | On File | Loan Payable | Unliquidated | | | $ 64,912,001 |
| 13 | Altcoinomy SA | On File | Loan Payable | Unliquidated | | | $ 61,801,095 |
| 14 | Streami Inc. | On File | Loan Payable | Unliquidated | | | $ 56,766,174 |
| 15 | Heliva International Corp | On File | Loan Payable | Unliquidated | | | $ 55,005,190 |
| 16 | VanEck New Finance Income Fund, LP | On File | Loan Payable | Unliquidated | | | $ 53,101,676 |
| 17 | On File | On File | Loan Payable | Unliquidated | | | $ 51,785,259 |
| 18 | On File | On File | Loan Payable | Unliquidated | | | $ 47,202,205 |
| 19 | Claure Group LLC | On File | Loan Payable | Unliquidated | | | $ 45,857,828 |
| 20 | On File | On File | Loan Payable | Unliquidated | | | $ 40,822,287 |
| 21 | On File | On File | Loan Payable/Collateral Payable | Unliquidated | | | $ 40,266,984 |
| 22 | On File | On File | Collateral Payable | Unliquidated | | | $ 39,787,136 |
| 23 | On File | On File | Loan Payable | Unliquidated | | | $ 38,532,747 |
| 24 | Digital Finance Group | On File | Loan Payable | Unliquidated | | | $ 37,907,447 |
| 25 | On File | On File | Loan Payable | Unliquidated | | | $ 35,214,334 |
| 26 | On File | On File | Loan Payable | Unliquidated | | | $ 32,557,600 |
| 27 | Plutus Lending LLC | On File | Loan Payable | Unliquidated | | | $ 30,003,000 |
| 28 | Ripio International | On File | Loan Payable | Unliquidated | | | $ 27,552,174 |
| 29 | Winah Securities S.A. | On File | Loan Payable | Unliquidated | | | $ 26,896,243 |
| 30 | On File | On File | Loan Payable | Unliquidated | | | $ 26,176,466 |
| 31 | Levity & Love, LLC | On File | Loan Payable | Unliquidated | | | $ 25,534,533 |
| 32 | On File | On File | Loan Payable | Unliquidated | | | $ 21,622,568 |
| 33 | Caramila Capital Management LLC | On File | Loan Payable | Unliquidated | | | $ 21,561,663 |
| 34 | On File | On File | Loan Payable | Unliquidated | | | $ 20,645,334 |
| 35 | On File | On File | Loan Payable | Unliquidated | | | $ 20,152,817 |
| 36 | Big Time Studios Ltd. | On File | Loan Payable | Unliquidated | | | $ 20,000,000 |
| 37 | Cumberland DRW LLC | On File | Collateral Payable | Unliquidated | | | $ 18,720,061 |
| 38 | On File | On File | Loan Payable | Unliquidated | | | $ 17,463,057 |

*Claim amount is estimated and is net of proceeds from foreclosure on certain collateral. GGC disputes whether the foreclosure satisfied applicable law.

Debtor Genesis Global Holdco, LLC, et al.                                                                                                      Case number (if known) 23-10063

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim  If the claim is fully unsecured, fill in only unsecured claim amount.  If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 39 | On File | On File | Loan Payable | Unliquidated | | | $ 17,246,080 |
| 40 | On File | On File | Loan Payable | Unliquidated | | | $ 15,445,729 |
| 41 | Coinhouse | On File | Loan Payable | Unliquidated | | | $ 14,857,000 |
| 42 | Stellar Development Foundation | On File | Loan Payable | Unliquidated | | | $ 13,187,008 |
| 43 | On File | On File | Loan Payable | Unliquidated | | | $ 13,127,878 |
| 44 | Bayhawk Fund LLC | On File | Loan Payable | Unliquidated | | | $ 12,562,500 |
| 45 | On File | On File | Loan Payable | Unliquidated | | | $ 11,292,345 |
| 46 | On File | On File | Loan Payable | Unliquidated | | | $ 10,905,742 |
| 47 | On File | On File | Loan Payable | Unliquidated | | | $ 10,369,828 |
| 48 | The Badger Technology Company Holdings, Ltd. | On File | Loan Payable | Unliquidated | | | $ 10,245,821 |
| 49 | Valour, Inc. | On File | Collateral Payable | Unliquidated | | | $ 10,239,290 |
| 50 | Schnutz Investments LP | On File | Loan Payable | Unliquidated | | | $ 10,148,492 |

U.S. Dollar balances based off of market prices as of 01/18/2023

** This revised list is being filed to remove certain sensitive, non-public information contained herein.

**Schedule 4**

**Five Largest Secured Claims**

Consistent with Local Rule 1007-2(a)(5), the following is a list of creditors holding the five largest secured claims against the Debtors, on a consolidated basis, excluding claims of insiders as defined in 11 U.S.C. § 101(31).

The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. Any amounts listed herein are estimated, on a preliminary basis, and subject to verification. The Debtors reserve any and all rights to assert that any debt or claim included herein is a disputed claim or debt, and to challenge the priority, nature, amount or status of any such claim or debt. The descriptions of the collateral securing the underlying obligations are intended only as brief summaries. In the event of any inconsistencies between the summaries set forth below and the respective corporate and legal documents relating to such obligations, the descriptions in the corporate and legal documents shall control.

| | Name of Creditor and Complete Mailing Address | Claim Amount | Collateral Description | Estimated Value of Collateral |
|---|---|---|---|---|
| 1 | Parafi Digital Credit Fund LP 500 West Putnam Ave., Suite 400 Greenwich, CT, 06830 | $ 5,625,000.00 | USD Receivable | $5,625,000.00 |
| 2 | On file | Undetermined | Digital Asset Receivable | Undetermined |

## Schedule 5

**Summary of Assets and Liabilities of the Debtors as of November 30, 2022**

Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following are estimates of the Debtors' total assets and liabilities.  The following financial data is the latest available information and reflects the Debtors' financial condition, as combined among the Debtors as of the Petition Date.

The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. The Debtors reserve all rights to assert that any debt or claim included herein is a disputed claim or debt, and to challenge the priority, nature, amount or status of any such claim or debt.

As of November 30, 2022, the total value of the Debtors' assets was approximately $5.3 billion, and liabilities were approximately $5.1 billion on a combined basis, including intercompany balances.

206

**Schedule 6**

**Publicly Held Securities**

Pursuant to Local Rule 1007-2(a)(7), the Debtors do not hold any publicly held classes of shares of stock, debentures or other securities.

## Schedule 7

**Debtors' Property Not in the Debtors' Possession**

Pursuant to Local Bankruptcy Rule 1007-2(a)(8), the following lists the Debtors' property, as of the Petition Date, that is in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, secured creditor or agent for any such entity.

Certain property of the Debtors may be in the possession of various other persons, including third-party cryptocurrency custodians and self-custody custodians, exchanges and collateral held by various lenders. Through these arrangements, the Debtors' ownership interest is not affected. In light of the movement of this property, providing a comprehensive list of the persons or entities in possession of the property, their addresses and telephone numbers, and the location of any court proceeding affecting such property would be impractical.

## Schedule 8

### Premises from Which Debtors Operate Their Business

Pursuant to Local Bankruptcy Rule 1007-2(a)(9), the following lists the location of real property owned or leased from which the Debtors operate their businesses as of the Petition Date.

| Property Address | State | Country | Owned or Leased |
|---|---|---|---|
| 250 Park Avenue S 3rd and 5th Floor, New York, NY 10003 | New York | USA | Leased |
| 111 Town Square Place 12th Floor, Jersey City, New Jersey 07310 | New Jersey | USA | Leased |
| 1 Raffles Quay #45-03, Singapore 048583 | - | Singapore | Leased |

**Schedule 9**

**Location of the Debtors' Substantial Assets, Books, Records and Nature and Location of Debtors' Assets, Books, Records and Nature and Local of Debtors' Assets Outside the United States**

Pursuant to Local Bankruptcy Rule 1007-2(a)(10), the following provides the location of the Debtors' substantial assets, books and records, and the nature, location and value of any assets held by the Debtors outside the territorial limits of the United States as of the Petition Date.

**Location of Debtors' Substantial Assets**

A substantial portion of the Debtors' assets as of November 30, 2022 (valued at approximately $5.0 billion) were in the form of loan receivables, including intercompany balances, assets held digitally and securely by cloud computing service providers, cryptocurrency investments that are either held with custodians, exchanges, crypto wallets securely held in cold storage, self custody, collateral pledged to external parties, cash in banks, and brokerage accounts located in the United States. Within the United States, the Debtors had digital assets as of the Petition Date valued at approximately $500 million primarily located on a in a cloud-based self-custody storage.

**Books and Records**

The Debtors' books and records are primarily maintained as electronic records on cloud-based storage.

**Debtors' Assets Outside the United States**

The Debtors have significant assets in Singapore of more than approximately $235 million chiefly in the form of collateral receivable from third party customers, and receivables from affiliates.

### Schedule 10[1]

**Nature and Status of Actions or Proceedings Against the Debtors Where a Judgment or Seizure of Their Property May Be Imminent**

Pursuant to Local Rule 1007-2(a)(11), there are no actions or proceedings, pending or threatened, in which a judgment against the Debtors or a seizure of their property is imminent. Any creditor that asserts a claim against any Debtor in respect of a pending action will be included in the Debtors' list of creditors.

---

[1]    The Debtors reserve the right to supplement this exhibit if additional property is identified.

**Schedule 11**

**Debtors' Senior Management**

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following provides the names of the individuals who constitute the Debtors' existing senior management, their tenure with the Debtors and a brief summary of their responsibilities and relevant experience as of the Petition Date.

| Name | Position | Responsibilities' and Experience |
|------|----------|----------------------------------|
| A. Derar Islim | Interim Chief Executive Officer and Chief Operating Officer | A. Derar Islim, PhD. is the Interim Chief Executive Officer and Chief Operating Officer of Genesis Global Holdco, LLC, as of August 17, 2022. As the Interim CEO and COO, he is responsible for managing strategic initiatives, integrating new services, coordinating daily business operations, and executing on Genesis's global vision to build the world's preeminent prime brokerage in the digital currency ecosystem.

Prior to joining Genesis, Dr. Islim served as Head of Risk at Hard Yaka, a San Francisco based venture capital firm, and previously served as Vice President at Bank of America Merrill Lynch where he co-managed the company's funding valuation adjustment trading desk.

Dr. Islim earned his PhD. in Financial Mathematics with a focus on the pricing and hedging of financial derivatives from Florida State University and is a Fulbright Scholar. |
| Alice Chan | Chief Financial Officer | Alice Chan is the Chief Financial Officer of Genesis, responsible for all Finance functions at the firm. Prior to joining Genesis, Ms. Chan was the Chief Financial Officer of Cantor Fitzgerald SPACs Franchise and served as a member of the board of directors. Ms. Chan also served as the Global Controller at Cantor Fitzgerald, where she was responsible for managing a range of financial functions, most notably financial reporting, consolidations, new accounting standard implementation, corporate accounting, and process enhancements.

Prior to these appointments, Ms. Chan served as Vice President at Goldman Sachs, focusing on broker dealers financial and regulatory reporting, and bank financial reporting. Ms. Chan earned her bachelor's degree in |

| | | |
|---|---|---|
| | | Finance from Pace University and master's degree in Accounting from St. John's University. |
| Arianna Pretto-Sakmann | Chief Legal Officer | Arianna Pretto-Sakmann is the Chief Legal Officer of Genesis. Before joining Genesis, she worked as a lawyer at Freshfields Bruckhaus Deringer LLP in New York and London from 2011-2019 and with Sullivan & Cromwell LLP from 2007-2011. She was previously an academic and taught law at the University of Oxford and Columbia Law School. She holds an MSt and a DPhil from Oxford University and an LLM from Columbia Law School. |
| Andrew Sullivan | General Counsel, Lending | Andrew Sullivan is the General Counsel for Genesis, responsible for advising Genesis's executive team on legal matters. |

## Schedule 12

**Estimated Payroll for the 30-Day Period Following the Petition Date**

       Pursuant to Local Bankruptcy Rules 1007-2(b)(1)-(2)(A) and (C), the following provides, for the 30-day period following the Petition Date, the estimated amount of weekly payroll to the Debtors' employees (exclusive of officers, directors and stockholders), the estimated amount paid and proposed to be paid to officers, stockholders and directors, and the estimated amount paid or proposed to be paid to financial and business consultants retained by Debtors.

| | |
|---|---|
| Estimated amount of payroll for employees (exclusive of officers, directors and equity holders) | $0 |
| Estimated payments to officers, directors and equity Holders (Non-Employees) | $115,000 |
| Estimated payments to financial and business consultants | $0 |

## Schedule 13

**Cash Receipts and Disbursements, Net Cash Gain or Loss, Unpaid Obligations and Receivables**

        Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following schedule provides an estimate of, for the 30-day period following the Petition Date, cash receipts and disbursements, net gain or loss and obligations and receivables expected to accrue but remain unpaid, other than professional fees:

| | |
|---|---|
| Cash Receipts | $4,200,000 |
| Cash Disbursements | $750,000 |
| Net Cash (Gain or Loss) | $3,250,000 |
| Unpaid Obligations | $815,000 |
| Uncollected Receivables | $3,000,000 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (___) |
| Debtors. | Joint Administration Pending |

---

## DEBTORS' JOINT CHAPTER 11 PLAN

---

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

Dated: January 20, 2023

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

# TABLE OF CONTENTS

## ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.   *Defined Terms* ................................................................................ 1
B.   *Rules of Interpretation* ................................................................ 17
C.   *Computation of Time* ................................................................... 18
D.   *Governing Law* ............................................................................. 18
E.   *Reference to Monetary Figures* ................................................. 18
F.   *Reference to the Debtors or the Reorganized Debtors* ............. 19
G.   *Controlling Document* ................................................................. 19

## ARTICLE II.
### ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS

A.   *Administrative Expense Claims* ................................................. 19
B.   *Professional Compensation* ....................................................... 20
C.   *Priority Tax Claims* .................................................................... 21
D.   *Statutory Fees* ............................................................................. 21

## ARTICLE III.
### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.   *Classification of Claims* ............................................................ 22
B.   *Treatment of Claims Against and Interests in GGH* ............... 23
C.   *Treatment of Claims Against and Interests in GGC* ............... 26
D.   *Treatment of Claims Against and Interests in GAP* ............... 28
E.   *Special Provision Governing Unimpaired or Reinstated Claims* ... 30
F.   *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code* ................................................................................................. 31
G.   *Elimination of Vacant Classes* ................................................. 31
H.   *Voting Classes; Presumed Acceptance by Non-Voting Classes* ... 31
I.   *Controversy Concerning Impairment* ....................................... 31
J.   *Subordinated Claims* .................................................................. 31

## ARTICLE IV.
### MEANS FOR IMPLEMENTATION OF THE PLAN

A.   *Liquidation Trust* ....................................................................... 32
B.   *GUC Trust* ................................................................................... 36
C.   *Means for Implementation if an Equitization Does Not Occur* ... 38
D.   *Means for Implementation if an Equitization Occurs* ............. 42
E.   *The DCG Settlement* .................................................................... 50
F.   *The Gemini Settlement* ............................................................... 51

## ARTICLE V.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.  Assumption and Rejection of Executory Contracts and Unexpired Leases ..................... 52
B.  Claims Based on Rejection of Executory Contracts or Unexpired Leases ..................... 53
C.  Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ................... 53
D.  Indemnification Obligations ......................................................................................... 54
E.  Insurance Policies ......................................................................................................... 54
F.  Modifications, Amendments, Supplements, Restatements, or Other Agreements ............. 55
G.  Reservation of Rights .................................................................................................... 55
H.  Nonoccurrence of Effective Date ................................................................................... 55

## ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

A.  Timing and Calculation of Amounts to Be Distributed .................................................. 56
B.  Disbursing Agent. ......................................................................................................... 56
C.  Delivery of Distributions and Undeliverable or Unclaimed Property ............................ 57
D.  Compliance with Tax Requirements ............................................................................... 58
E.  Foreign Currency Exchange Rate .................................................................................. 59
F.  Digital Asset Exchange Rate .......................................................................................... 59
G.  Surrender of Cancelled Instruments or Securities ......................................................... 59
H.  Allocations .................................................................................................................... 59
I.  No Postpetition Interest on Claims ................................................................................ 59
J.  Setoffs and Recoupment ................................................................................................ 59
K.  Claims Paid or Payable by Third Parties ...................................................................... 60

## ARTICLE VII.
### PROCEDURES FOR RESOLVING CONTINGENT,
### UNLIQUIDATED, AND DISPUTED CLAIMS

A.  Allowance of Claims ...................................................................................................... 61
B.  Claims and Interests Administration Responsibilities .................................................... 61
C.  Estimation of Claims ..................................................................................................... 62
D.  Adjustment to Claims or Interests Without Objection .................................................... 62
E.  Time to File Objections to Claims .................................................................................. 62
F.  Disallowance of Claims ................................................................................................. 62
G.  Amendments to Claims ................................................................................................... 63
H.  No Distributions Pending Allowance .............................................................................. 63
I.  Single Satisfaction of Claims ........................................................................................ 63

## ARTICLE VIII.
### SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.  Compromise and Settlement of Claims, Interests, and Controversies .............................. 63
B.  Discharge of Claims and Termination of Interests ......................................................... 64
C.  Term of Injunctions or Stays ......................................................................................... 64
D.  Release of Liens ............................................................................................................ 65
E.  Releases by the Debtors ................................................................................................. 65

| | | |
|---|---|---|
| F. | *Releases by Releasing Parties* .................................................. | 67 |
| G. | *Exculpation* .......................................................................... | 68 |
| H. | *Injunction* ............................................................................ | 69 |
| I. | *Protection Against Discriminatory Treatment* ........................... | 69 |
| J. | *Recoupment* .......................................................................... | 70 |
| K. | *Subordination Rights* ............................................................. | 70 |
| L. | *Reimbursement or Contribution* ............................................... | 70 |
| M. | *Document Retention.* ............................................................... | 70 |

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

| | | |
|---|---|---|
| A. | *Conditions Precedent to the Effective Date* ............................... | 70 |
| B. | *Waiver of Conditions* ............................................................. | 71 |
| C. | *Substantial Consummation* ...................................................... | 71 |
| D. | *Effect of Non-Occurrence of Conditions to the Confirmation Date or the Effective Date* ................................................................................... | 72 |

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

| | | |
|---|---|---|
| A. | *Modification and Amendments* ................................................. | 72 |
| B. | *Effect of Confirmation on Modifications* ................................... | 72 |
| C. | *Revocation or Withdrawal of the Plan* ...................................... | 72 |

## ARTICLE XI.
## RETENTION OF JURISDICTION

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

| | | |
|---|---|---|
| A. | *Immediate Binding Effect* ........................................................ | 75 |
| B. | *Additional Documents* ............................................................. | 75 |
| C. | *Reservation of Rights* ............................................................. | 75 |
| D. | *Successors and Assigns* ........................................................... | 75 |
| E. | *Service of Documents* ............................................................. | 76 |
| F. | *Term of Injunctions or Stays* ................................................... | 76 |
| G. | *Entire Agreement* ................................................................... | 76 |
| H. | *Exhibits* ................................................................................ | 76 |
| I. | *Nonseverability of Plan Provisions* .......................................... | 77 |
| J. | *Votes Solicited in Good Faith* .................................................. | 77 |
| K. | *Request for Expedited Determination of Taxes* .......................... | 77 |
| L. | *Closing of Chapter 11 Cases* ................................................... | 77 |
| M. | *No Stay of Confirmation Order* ................................................ | 78 |
| N. | *Waiver or Estoppel* ................................................................. | 78 |
| O. | *Dissolution of the Committee* ................................................... | 78 |

# INTRODUCTION

Genesis Global Holdco, LLC and its affiliated debtors, as Debtors and debtors-in-possession in the above-captioned chapter 11 cases, jointly propose this chapter 11 plan for the resolution of outstanding Claims against, and Interests in, the Debtors.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against, and Interests in, such Debtor.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Article I.A of the Plan or the Bankruptcy Code or Bankruptcy Rules.  Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, Assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

> **ALL HOLDERS OF CLAIMS WHO ARE ELIGIBLE TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below.

1.    "***Administrative Expense Claim***" means any Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Debtors' Estates and operating the Debtors' businesses; (ii) Allowed Professional Fee Claims; and (iii) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

2.    "***Administrative Expense Claims Bar Date***" means the deadline for Filing requests for payment of Administrative Expense Claims, which: (i) with respect to Administrative Expense Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (ii) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

3.    "***Affiliate***" shall have the meaning set forth in section 101(2) of the Bankruptcy Code when used in reference to a Debtor, and when used in reference to an Entity other than a Debtor, means any other Entity that controls such Entity other than a Debtor.

4.    "***Allowed***" means, with reference to any Claim or Interest, (i) any Claim or Interest arising on or before the Effective Date (a) as to which no objection to allowance has been interposed within the time period set forth in the Plan and such Claim or Interest is not Disputed or (b) as to which any objection has been determined by a Final Order of the Bankruptcy Court to

the extent such objection is determined in favor of the respective Holder, (ii) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (iii) any Claim or Interest expressly allowed under the Plan; *provided*, *however*, that notwithstanding the foregoing, the Reorganized Debtors (to the extent applicable) will retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

5.      "*Assets*" means all of the Debtors' property, rights, and interests that are property of the Estates pursuant to section 541 of the Bankruptcy Code.

6.      "*Asset Sale*" means the sale of any of the Debtors' Assets pursuant to one or more transactions conducted in accordance with the Bidding Procedures.

7.      "*Available Assets*" means cash and cash equivalents and, to the extent the Debtors so determine after considering legal, financial, tax, and other factors in good faith, Digital Assets held by the Debtors after paying for, or reserving for payment of, (i) the Claims Reserve Amount, (ii) the Professional Fee Reserve Amount, (iii) the GUC Trust Funding, (iv) if an Equitization occurs, the Capital Reserves, and (v) if an Equitization does not occur, the Liquidation Trust Funding.

8.      "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, actions or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553 and 724(a) of the Bankruptcy Code or under similar or related local, state, federal or foreign statutes and common law, including fraudulent transfer laws.

9.      "*Avoidance Recoveries*" means any proceeds arising from Avoidance Actions, including, without limitation, the proceeds from any settlements thereof.

10.     "*Ballots*" means the ballots distributed to certain Holders of Impaired Claims entitled to vote on the Plan upon which such Holders shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

11.     "*Bankruptcy Code*" means title 11 of the United States Code, as amended and in effect during the pendency of the Chapter 11 Cases.

12.     "*Bankruptcy Court*" means the United States Bankruptcy Court in which the Chapter 11 Cases are commenced or another United States Bankruptcy Court with jurisdiction over the Chapter 11 Cases.

13.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, in each case, as amended from time to time.

14.      "*Bar Date Order*" means the order entered by the Bankruptcy Court setting the Claims Bar Date and the Governmental Bar Date.

15. "**_Bidding Procedures_**" means the procedures approved by the Bankruptcy Court governing the marketing process for the sale of the Debtors' Assets.

16. "**_Business Day_**" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

17. "**_Capital Reserves_**" means, if an Equitization occurs, Cash or Digital Assets with an aggregate value of $150 million as of the Effective Date, which shall be used to restart the business of the Debtors following the Effective Date; _provided_ that, if the Capital Reserves Shortfall as of the Effective Date is greater than zero, the GUC Trust shall pay the Capital Reserves Funding to the Reorganized Debtors prior to making any distributions to the GUC Trust Beneficiaries on account of their Class A GUC Trust Units or Class B2 GUC Trust Units.

18. "**_Capital Reserves Funding_**" means, if an Equitization occurs and the Capital Reserves Shortfall is greater than zero, proceeds of Avoidance Recoveries and Class B2 GUC Trust Recoveries in an amount equal to the Capital Reserves Shortfall in the aggregate.

19. "**_Capital Reserves Shortfall_**" means, if an Equitization occurs, an amount equal to (i) $150 million _minus_ (ii) the total amount of Cash and Digital Assets available to the Reorganized Debtors on the Effective Date.

20. "**_Cash_**" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

21. "**_Cause of Action_**" means any action, claim, cause of action, controversy, third-party claim, dispute, demand, right, action, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, account, defense, remedy, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract, in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, a "Cause of Action" includes: (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to Claims or Interests; (iii) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code (including Avoidance Actions); (iv) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any state or foreign law fraudulent transfer or similar claim.

22. "**_Chapter 11 Cases_**" means each individual case or the jointly administered cases pending under chapter 11 of the Bankruptcy Code for each individual Debtor or the Debtors, as applicable, in the Bankruptcy Court.

23. "**_Claim_**" shall have the meaning set forth in section 101(5) of the Bankruptcy Code, against any Debtor.

24.    "***Claims Bar Date***" means such time and date established pursuant to the Bar Date Order by which Proofs of Claim (other than for Administrative Expense Claims and Claims held by Governmental Units) must be Filed.

25.    "***Claims Objection Deadline***" means the deadline for objecting to a Claim against a Debtor, which shall be on the date that is the later of (i) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court, (ii) 90 days after the Filing of a Proof of Claim, or (iii) such other period of limitation as may be fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order for objecting to a Claim.

26.    "***Claims Register***" means the official register of Claims against and Interests in the Debtors maintained by the Noticing and Claims Agent.

27.    "***Claims Reserve***" means a reserve to be established by the Debtors on or before the Effective Date and comprised of Cash (or, at the option of the Debtors in the case of Secured Claims that are secured by Digital Assets, Digital Assets) in the amount of the Claims Reserve Amount, less any portion of such amount that is distributed on the Effective Date pursuant to the Plan, which reserve shall vest in the Reorganized Debtors or the Liquidation Trust (as applicable) as of the Effective Date.

28.    "***Claims Reserve Amount***" means the sum of (i) the Other Priority Claims Reserve Amount, (ii) the Secured Claims Reserve Amount, (iii) the estimated aggregate face amount of accrued but unpaid Administrative Expense Claims (excluding Professional Fee Claims) against the Debtors as of the Effective Date, and (iv) the U.S. Trustee Fees.

29.    "***Class***" means a category of Claims against or Interests in the Debtors as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

30.    "***Class 3 Election Notice***" means the notice, substantially in the form included in the Plan Supplement, to be sent to the Holders of Class 3 General Unsecured Claims.

31.    "***Class 4 Election Notice***" means the notice, substantially in the form included in the Plan Supplement, to be sent by Gemini to the Holders of Class 4 Gemini Lender Claims.

32.    "***Class A GUC Trust Units***" means Class A1 GUC Trust Units, Class A2 GUC Trust Units and Class A3 GUC Trust Units.

33.    "***Class A1 GUC Trust Units***" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of GGH Avoidance Recoveries, subject to the prior payment of the Capital Reserves Funding, if applicable.

34.    "***Class A2 GUC Trust Units***" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of GGC Avoidance Recoveries, subject to the prior payment of the Capital Reserves Funding, if applicable.

35.    "***Class A3 GUC Trust Units***" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of GAP Avoidance Recoveries, subject to the prior payment of the Capital Reserves Funding, if applicable.

36.    "**_Class B GUC Trust Recoveries_**" means the Class B1 GUC Trust Recoveries and Class B2 GUC Trust Recoveries.

37.    "**_Class B GUC Trust Units_**" means Class B1 GUC Trust Units and Class B2 GUC Trust Units.

38.    "**_Class B1 GUC Trust Recoveries_**" means the DCG Contribution.

39.    "**_Class B1 GUC Trust Units_**" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of Class B1 GUC Trust Recoveries.

40.    "**_Class B2 GUC Trust Recoveries_**" means any proceeds from the DCG Loans, the DCG Note, and any and all Causes of Action or other claims against the DCG Parties, including, without limitation, the proceeds from any settlements thereof; _provided_ that, for the avoidance of doubt, the Class B2 GUC Trust Recoveries shall not include the DCG Contribution.

41.    "**_Class B2 GUC Trust Units_**" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of Class B2 GUC Trust Recoveries, subject to the prior payment of the Capital Reserves Funding, if applicable.

42.    "**_Class C GUC Trust Recoveries_**" means the Class C1 GUC Trust Recoveries and Class C2 GUC Trust Recoveries.

43.    "**_Class C GUC Trust Units_**" means Class C1 GUC Trust Units and Class C2 GUC Trust Units.

44.    "**_Class C1 GUC Trust Recoveries_**" means the Gemini Contribution.

45.    "**_Class C1 GUC Trust Units_**" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of Class C1 GUC Trust Recoveries.

46.    "**_Class C2 GUC Trust Recoveries_**" means any proceeds from Causes of Action or other claims against the Gemini Parties, including, without limitation, the proceeds from any settlements thereof; _provided_ that, for the avoidance of doubt, the Class C2 GUC Trust Recoveries shall not include the Gemini Contribution.

47.    "**_Class C2 GUC Trust Units_**" means beneficial interests in the GUC Trust entitling each Holder thereof to receive its Pro Rata share of distributions of Class C2 GUC Trust Recoveries.

48.    "**_Committee_**" means the official committee of unsecured creditors of the Debtors to be appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

49.    "**_Confirmation_**" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

50.  "**_Confirmation Date_**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

51.  "**_Confirmation Hearing_**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

52.  "**_Confirmation Order_**" means the Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

53.  "**_Consummation_**" means the occurrence of the Effective Date.

54.  "**_Cure Claim_**" means a monetary Claim based upon a Debtor's defaults under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code.

55.  "**_Cure Notice_**" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include (i) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases, (ii) Cure Claims to be paid in connection therewith and (iii) procedures for resolution by the Bankruptcy Court of any related disputes.

56.  "**_D&O Liability Insurance Policies_**" means all unexpired directors', managers', and officers' liability insurance policies (including any "tail policy") maintained by any of the Debtors with respect to directors, managers, officers, and employees of the Debtors.

57.  "**_DCG_**" means Digital Currency Group, Inc.

58.  "**_DCG Contribution_**" means $[●] to be contributed to the GUC Trust by DCG or its affiliates or control persons.

59.  "**_DCG Loans_**" means those certain loans in the principal amount of approximately $575 million, consisting of (i) the loans between GGC (as lender) and DCG (as borrower) (a) in the principal amount of approximately $200 million due on May 9, 2023 and (b) in the principal amount of approximately $300 million due on May 11, 2023, and (ii) the loan between GGC (as lender) and DCGI (as borrower) in the principal amount of 4,550.45 Bitcoin (~$75mm) due on May 11, 2023.

60.  "**_DCG Note_**" that certain $1.1 billion promissory note, dated as of June 30, 2022 and due on June 30, 2032, issued by DCG to GGC with an interest rate of 1% per annum, which may, at DCG's option, be paid in kind.

61.  "**_DCG Parties_**" means DCG, its affiliates or their respective former or current officers, directors, employees, agents or representatives (other than in their capacities as current directors or officers of any the Debtors).

62. "*DCG Settlement*" means any compromises, settlements, and resolutions of all Claims, Causes of Action, controversies, and disputes, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, between the Debtors and the DCG Parties.

63. "*DCG Settlement Procedures*" means the procedures set forth in the Class 3 Election Notice and the Class 4 Election Notice pursuant to which Holders of General Unsecured Claims can elect to receive the DCG Contribution and opt into the releases set forth in the Class 3 Election Notice or the Class 4 Election Notice (as applicable) and Article IV.E of the Plan.

64. "*Debtors*" means, collectively, GGH, GGC, and GAP. Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors shall mean the Reorganized Debtors to the extent context requires.

65. "*Definitive Documents*" means (i) the Plan (and any and all exhibits, annexes, and schedules thereto); (ii) the Confirmation Order; (iii) the Disclosure Statement and all other solicitation materials with respect to the Plan; (iv) the order approving the Disclosure Statement; (v) all pleadings filed by the Debtors in connection with the Chapter 11 Cases (or related orders), including the "first day" motions, applications, and other documents that any Debtor intends to file with the Bankruptcy Court and seeks to have heard on an expedited basis at the "first-day hearing" in the Chapter 11 Cases and any proposed orders related thereto; (vi) the Plan Supplement; (vii) the New Governance Documents, if applicable; (viii) all documentation with respect to any post-emergence management incentive plan, including the MIP; (ix) any other disclosure documents related to the issuance of the Reorganized GGH Interests; (x) any new material employment, consulting, or similar agreements; and (xi) any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments, or other documents reasonably desired or necessary to consummate and document the transactions contemplated by the Restructuring (including any exhibits, amendments, modifications, or supplements made from time to time thereto).

66. "*Digital Asset*" means a digital currency or crypto asset in which transactions are verified and records are maintained by a decentralized system using cryptography, rather than by a centralized authority, including stablecoins, digital coins, and tokens, such as security tokens, utility tokens, and governance tokens.

67. "*Disallowed*" means, with respect to any Claim, or any portion thereof, that such Claim, or such portion thereof, is not Allowed; *provided, however*, that a Disputed Claim shall not be considered Disallowed until so determined by entry of a Final Order.

68. "*Disbursing Agent*" means, (i) if an Equitization does not occur, the Debtors, the Liquidation Trustee, the GUC Trust Trustee, or the Entity or Entities selected by the Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) to make or facilitate distributions pursuant to the Plan, or (ii) if an Equitization occurs, the Reorganized Debtors, the GUC Trust Trustee, or the Entity or Entities selected by the Reorganized Debtors or the GUC Trust Trustee (as applicable) to make or facilitate distributions pursuant to the Plan. For the avoidance of doubt, the GUC Trust Trustee will only be the Disbursing Agent as it relates to making or facilitating distributions to Holders of Allowed General Unsecured Claims pursuant to the Plan.

69.    "***Disclosure Statement***" means the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan*, dated as of [●], 2023, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

70.    "***Disputed***" means, with respect to any Claim or Interest, that such Claim or Interest (i) is not yet Allowed, (ii) is not Disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable, (iii) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law, or (iv) is or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim is or has been timely Filed in accordance with the Bar Date Order.

71.    "***Dissolution Transactions***" means, if an Equitization does not occur, the transactions that the Debtors or Liquidation Trustee determine to be necessary or appropriate to implement the terms of the Plan, and ultimately result in the dissolution or other termination of the corporate entities that comprise the Debtors.

72.    "***Distribution Date***" means, except as otherwise set forth herein, the date or dates determined by the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) on or after the Effective Date upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

73.    "***Distribution Record Date***" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date as designated in an order of the Bankruptcy Court.

74.    "***Effective Date***" means the date selected by the Debtors on which: (i) no stay of the Confirmation Order is in effect; (ii) all conditions precedent specified in Article IX have been satisfied or waived (in accordance with Article IX.C); and (iii) the Plan becomes effective; *provided, however*, that if such date does not occur on a Business Day, the Effective Date shall be deemed to occur on the first Business Day after such date.

75.    "***Entity***" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

76.    "***Equitization***" means, if the Asset Sale does not result in the sale of all or substantially all of the Debtors' assets, the Restructuring under this Plan pursuant to which the Holders of Allowed General Unsecured Claims will receive, among other things, one hundred percent (100%) of the Reorganized GGH Interests, subject to dilution on account of the MIP.

77.    "***Equity Security***" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

78.    "***Estate***" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

79. "***Exculpated Party***" means each of the following solely in its capacity as such: (i) the Debtors, (ii) the Reorganized Debtors (as applicable), (i) the Debtors' Professionals, and (iv) each Related Party of each Person described in the foregoing clauses (i), (ii), and (iii) (in each case, solely in such Person's capacity as such); *provided* that, notwithstanding anything to the contrary in the Plan, the DCG Parties, the Gemini Parties, and each of their respective Related Parties (in each such Person's capacity as such) and the former officers and directors of the Debtors as of the Effective Date (in each such Person's capacity as such) shall not be Exculpated Parties under the Plan; *provided further* that any of the current officers and directors of the Debtors shall be an Exculpated Party only with the written consent of the Special Committee following the conclusion of the Investigation.

80. "***Executory Contract***" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

81. "***Federal Judgment Rate***" means the federal judgment rate in effect as of the Petition Date, compounded annually.

82. "***File***," "***Filed***," or "***Filing***" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Noticing and Claims Agent or the Bankruptcy Court through the PACER or CM/ECF website.

83. "***Final Decree***" means the decree contemplated under Bankruptcy Rule 3022.

84. "***Final Order***" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

85. "***GAP***" means Genesis Asia Pacific Pte. Ltd.

86. "***GAP Avoidance Recoveries***" means Avoidance Recoveries in respect of Causes of Action or other claims of GAP.

87. "***Gemini***" means Gemini Trust Company, LLC.

88. "***Gemini Contribution***" means $[●] to be contributed to the GUC Trust by Gemini or its affiliates or control persons.

89.     "*Gemini Lender Unsecured Claim*" means a General Unsecured Claim held by a customer of Gemini in connection with loans made to GGC under the Gemini Earn Program.

90.     "*Gemini Earn Program*" means the arrangement set forth in those certain tri-party master loan agreements between GGC, Genesis and certain customers of Gemini pursuant to which such customers agreed to lend Digital Assets to GGC, with Gemini acting as custodian and agent for such customers in certain respects.

91.     "*Gemini Parties*" means Gemini, its affiliates or their respective former or current officers, directors, employees, agents or representatives.

92.     "*Gemini Settlement*" means any compromises, settlements, and resolutions of all Claims, Causes of Action, controversies, and disputes, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, between the Debtors and the Gemini Parties.

93.     "*Gemini Settlement Procedures*" means the procedures set forth in the Class 4 Election Notice pursuant to which Holders of such Class can elect to receive the Gemini Contribution and opt into the releases set forth in the Class 4 Election Notice and Article IV.F of the Plan.

94.     "*General Unsecured Claim*" means any Claim that is not secured, subordinated, or entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court (other than an Intercompany Claim or a Subordinated Claim). Any Intercompany Claims or Subordinated Claims shall not constitute General Unsecured Claims.

95.     "*GGC*" means Genesis Global Capital, LLC.

96.     "*GGC Avoidance Recoveries*" means Avoidance Recoveries in respect of Causes of Action or other claims of GGC.

97.     "*GGH*" means Genesis Global Holdco, LLC.

98.     "*GGH Avoidance Recoveries*" means Avoidance Recoveries in respect of Causes of Action or other claims of GGH.

99.     "*Governmental Bar Date*" means such time and date established pursuant to the Bar Date Order by which Proofs of Claim of Governmental Units must be Filed.

100.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

101.     "*GUC Trust*" means the trust established pursuant to Article IV.B of the Plan to, among other things, hold the GUC Trust Assets and make distributions pursuant to the Plan.

102.     "*GUC Trust Accounts*" means the bank accounts to be held in the name of the GUC Trust Trustee that are created pursuant to Article IV.B of the Plan.

103. "**_GUC Trust Agreement_**" means the trust agreement, to be dated prior to the Effective Date, between the Debtors and the GUC Trust Trustee, governing the GUC Trust.

104. "**_GUC Trust Assets_**" means, subject to the prior payment of the Capital Reserves Funding, the DCG Loans, the DCG Note, and all rights arising out of or related to the Avoidance Recoveries, the Class B GUC Trust Recoveries, the Class C GUC Trust Recoveries, and the GUC Trust Funding, which shall be transferred to, and vested in, the GUC Trust on the Effective Date.

105. "**_GUC Trust Beneficiaries_**" means the holders of GUC Trust Units.

106. "**_GUC Trust Expenses_**" means any and all reasonable and documented fees, costs, and expenses incurred by the GUC Trust or the GUC Trust Trustee (or any Disbursing Agent, Person, entity, or professional engaged by the GUC Trust Trustee to effect distributions or otherwise assist the GUC Trust Trustee with its duties under the GUC Trust Agreement) in connection with any of their duties under the Plan and the GUC Trust Agreement, including, without limitation, any reasonable and documented administrative fees, attorneys' or other professionals' fees and expenses, insurance fees, taxes, escrow expenses and fees payable under 28 U.S.C. § 1930, or costs to maintain certain assets while they are held.

107. "**_GUC Trust Funding_**" means an amount equal to $15.0 million to be funded by the Debtors out of available cash, cash equivalents or Digital Assets; _provided_ that, if an Equitization occurs, the GUC Trust Funding shall be repaid to the Reorganized Debtors by the GUC Trust following the GUC Trust's receipt of Avoidance Recoveries and Class B2 GUC Trust Recoveries, and Class C2 GUC Trust Recoveries in the aggregate amount of $20.0 million.

108. "**_GUC Trust Trustee_**" means the trustee appointed pursuant to Article IV.B of the Plan (or any successor trustee), in their or its capacity as the trustee of the GUC Trust.

109. "**_GUC Trust Units_**" means the Class A GUC Trust Units, the Class B GUC Trust Units, and the Class C GUC Trust Units.

110. "**_Holder_**" means a Person or Entity holding a Claim against or Interest in a Debtor, as applicable.

111. "**_Impaired_**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

112. "**_Indemnification Obligations_**" means each of the Debtors' indemnification obligations, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment contracts, for the current and former directors and the officers of the Debtors.

113. "**_Insider_**" has the meaning set forth in section 101(31) of the Bankruptcy Code.

114. "**_Institutional Unsecured Claim_**" means a General Unsecured Claim against GGC that is not a Gemini Lender Unsecured Claim.

115.     "***Intercompany Claim***" means any Claim against a Debtor held by another Debtor.

116.     "***Investigation***" means the Special Committee's investigation into certain matters, including various prepetition transactions involving certain DCG Parties and other Persons, as described in that certain *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, dated as of the Petition Date (Docket No. 19).

117.     "***Intercompany Interest***" means any Interest in a Debtor held by another Debtor.

118.     "***Interest***" means any equity interest (as defined in section 101(16) of the Bankruptcy Code) in any Debtor, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instrument, evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest, that existed immediately before the Effective Date.

119.     "***Internal Revenue Code***" means the Internal Revenue Code of 1986, as amended.

120.     "***IRS***" means the Internal Revenue Service.

121.     "***Judicial Code***" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

122.     "***Lien***" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

123.     "***Liquidation Trust***" means the trust established pursuant to Article IV.A to, among other things, hold the Liquidation Trust Assets and make distributions pursuant to the Plan.

124.     "***Liquidation Trust Accounts***" means the bank accounts to be held in the name of the Liquidation Trustee that are created pursuant to Article IV.A of the Plan.

125.     "***Liquidation Trust Agreement***" means the trust agreement, to be dated prior to the Effective Date, between the Debtors and the Liquidation Trustee, governing the Liquidation Trust.

126.     "***Liquidation Trust Assets***" means, if an Equitization does not occur, (i) any Assets of the Debtors' Estates (other than the GUC Trust Assets) not sold in the Asset Sale, including, but not limited to, any Retained Causes of Action and (ii) the Liquidation Trust Funding. For the avoidance of doubt, no GUC Trust Assets shall be Liquidation Trust Assets.

127.     "***Liquidation Trust Beneficiaries***" means the "Beneficiaries" as defined in the Liquidation Trust Agreement.

128.     "***Liquidation Trust Expenses***" means any and all reasonable and documented fees, costs, and expenses incurred by the Liquidation Trust or the Liquidation Trustee (or any Disbursing Agent, Person, entity, or professional engaged by the Debtors or the Liquidation Trustee to effect distributions or otherwise assist the Liquidation Trustee with its duties under the Liquidation Trust Agreement) in connection with any of their duties under the Plan and the Liquidation Trust Agreement, including, without limitation, any reasonable and documented administrative fees,

attorneys' or other professionals' fees and expenses, insurance fees, taxes, escrow expenses and fees payable under 28 U.S.C. § 1930, costs associated with any maintenance of any going concern as part of the wind down of such going concern's business operations, or costs to maintain certain assets while they are held.

129. "*Liquidation Trust Funding*" means, if the Equitization does not occur, Cash in the amount the Debtors determine is necessary to fund the Liquidation Trust Expenses until all distributions required to be made under the Plan are made.

130. "*Liquidation Trustee*" means the trustee appointed pursuant to Article IV.A (or any successor trustee), in their or its capacity as the trustee of the Liquidation Trust.

131. "*Local Rules*" means the Local Bankruptcy Rules for the Southern District of New York.

132. "*MIP*" means, if an Equitization occurs, a post-Effective Date management incentive plan, pursuant to which Reorganized GGH Interests shall be reserved for the New Board to grant Reorganized GGH Interests to directors, officers, and employees of Reorganized GGH subject to terms and conditions to be determined by the New Board.

133. "*Money Transmitter Licenses*" means any license or similar authorization of a Governmental Unit that an Entity is required to obtain to operate as a broker of Digital Assets.

134. "*New Board*" means, if an Equitization occurs, (i) with respect to Reorganized GGH, the initial board of directors of Reorganized GGH and (ii) with respect to each other Reorganized Debtor, the initial board of directors, board of managers, or other governing body of such Reorganized Debtor, in each case as determined pursuant to Article IV.C of the Plan and the Plan Supplement.

135. "*New Governance Documents*" means, if an Equitization occurs, the organizational and corporate governance documents of Reorganized GGH and its subsidiaries, including, without limitation, certificates of incorporation, certificates of formation, certificates of limited partnership (or equivalent organizational documents), bylaws, and limited liability company agreements (or equivalent governing documents).

136. "*Noticing and Claims Agent*" means Kroll Restructuring Administration LLC, the noticing, claims, and solicitation agent proposed to be retained by the Debtors in the Chapter 11 Cases.

137. "*Other Priority Claim*" means any Claim that is entitled to priority of payment under section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

138. "*Other Priority Claims Reserve Amount*" means the aggregate face amount, or estimated amount under section 502(c) of the Bankruptcy Code, if applicable, of all Claims, including Other Priority Claims and Priority Tax Claims, but excluding Administrative Expense Claims, against the Debtors that are either (i) identified in the Schedules as entitled to priority in right of payment under section 507(a) of the Bankruptcy Code or (ii) asserted to be entitled to such

priority in a Proof of Claim validly submitted on or before the Claims Bar Date, less the face amount, or estimated amount under section 502(c) of the Bankruptcy Code, if applicable, of any such Claims identified by the Debtors in their reasonable discretion as duplicative of other such Claims.

139. "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

140. "*Petition Date*" means the date on which each Debtor Filed its voluntary petition for relief commencing the Chapter 11 Cases.

141. "*Plan*" means this chapter 11 plan, as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms of the Plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules to the Plan, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

142. "*Plan Supplement*" means, to the extent applicable, the Class 3 Election Notice, the Class 4 Election Notice, the Liquidation Trust Agreement, the GUC Trust Agreement, a list of Retained Causes of Action (if any), an exhibit disclosing the identity and affiliations of any Person proposed to serve on any of the New Boards or proposed to serve as an officer of any of the Reorganized Debtors, the New Governance Documents, the Secured Claims Schedule, the Schedule of Assumed Executory Contracts and Leases, and the Schedule of Rejected Executory Contracts and Leases, all of which shall be incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced, and/or supplemented from time to time, which shall be filed with the Bankruptcy Court on or before three business days prior to the Confirmation Hearing.

143. "*Priority Tax Claim*" means a Claim held by a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

144. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest bears to the aggregate amount of Allowed Claims, Allowed Interests, or other matter so referenced, as the context requires.

145. "*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

146. "*Professional Fee Claims*" means a Claim for the compensation of the Professionals and other professionals and the reimbursement of expenses incurred by such professionals through and including the Effective Date to the extent such fees and expenses have not been previously paid, including, for the avoidance of doubt, any costs, fees, expenses, or commissions (including with respect to any investment banking transaction fees or commissions) incurred in connection with the Restructuring.

147. "**Professional Fee Escrow Account**" means an interest-bearing account funded by the Debtors on the Effective Date in an amount equal to the Professional Fee Reserve Amount, pursuant to Article II.B.

148. "**Professional Fee Reserve Amount**" means the total amount of Professional Fee Claims estimated in accordance with Article II.B.

149. "**Proof of Claim**" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

150. "**Reinstated**" or "**Reinstatement**" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

151. "**Related Party**" means, with respect to any Entity, such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' current directors, managers, officers, employees, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current equity Holders, officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such

152. "**Released Party**" means each of the following solely in its capacity as such: (i) the Debtors, (ii) the Reorganized Debtors (as applicable), (iii) the Debtors' Professionals, and (iv) each Related Party of each Person described in the foregoing clauses (i), (ii), and (iii) (in each case, solely in such Person's capacity as such); *provided* that, notwithstanding anything to the contrary in the Plan, the DCG Parties, the Gemini Parties, and each of their respective Related Parties (in each such Person's capacity as such) and the former officers and directors of the Debtors as of the Effective Date (in each such Person's capacity as such) shall not be Released Parties under the Plan; *provided further* that any of the current officers and directors of the Debtors shall be a Released Party only with the written consent of the Special Committee following the conclusion of the Investigation.

153. "**Releasing Party**" means each of the following solely in its capacity as such: (i) all Released Parties and (ii) all Holders of Claims who affirmatively cast a timely ballot to accept the Plan.

154. "**Reorganized**" means, in relation to a Debtor, such Debtor (or any successor thereto, by merger, consolidation, or otherwise) as reorganized on or after the Effective Date.

155. "**Reorganized GGH**" means, if an Equitization occurs, GGH as reorganized on the Effective Date.

156. "**Reorganized GGH Interest**" means, if an Equitization occurs, an Interest in Reorganized GGH that will be issued on the Effective Date (or such other date as set forth in the Confirmation Order) or upon implementation of the MIP.

157.    "**Restructuring**" means all actions that may be necessary or appropriate to effectuate the transactions described in, approved by, contemplated by, or necessary to effectuate, the Plan.

158.    "**Retained Causes of Action**" means those Causes of Action, if any, identified in the Plan Supplement that are not released, waived, or transferred pursuant to the Plan or any Asset Sale.   For the avoidance of doubt, the Retained Causes of Action shall not include any GUC Trust Assets.

159.    "**Sales Process**" means the marketing and sales process for the Debtors' Assets conducted pursuant to the Bidding Procedures.

160.    "**Schedule of Assumed Executory Contracts and Unexpired Leases**" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Reorganized Debtors pursuant to the Plan, as set forth in the Plan Supplement, as may be amended from time to time prior to the Effective Date.

161.    "**Schedule of Rejected Executory Contracts and Unexpired Leases**" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as may be amended from time to time prior to the Effective Date.

162.    "**Schedules**" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the official bankruptcy forms, as the same may have been amended, modified, or supplemented from time to time.

163.    "**SEC**" means the United States Securities and Exchange Commission.

164.    "**Secured Claim**" means a Claim (i) secured by a lien on collateral to the extent of the value of such collateral as (a) set forth in the Plan, (b) agreed to by the Holder of such Claim and the Debtors, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any right of setoff of the Holder thereof in accordance with section 553 of the Bankruptcy Code.

165.    "**Secured Claims Reserve Amount**" means the aggregate amount of Claims that are (i) included on the Secured Claims Schedule or (ii) deemed by Final Order of the Bankruptcy Court to be a Secured Claim.

166.    "**Secured Claims Schedule**" means the schedule of Claims that the Debtors identify as Secured Claims.

167.    "**Securities Act**" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state, or local law.

168.    "**Security**" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

169.    "**Special Committee**" means that certain Special Committee of the Board of Directors of GGH, established on November 18, 2022, comprised of Paul Aronzon and Thomas Conheeney.

170.    "**Subordinated Claim**" means any Claim against a Debtor arising from (i) rescission of a purchase or sale of a Security in any Debtor or an Affiliate of any Debtor, (ii) purchase or sale of such a Security, or (iii) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

171.    "**Successful Bid**" means a qualified bid submitted in accordance with the Bidding Procedures that is determined to be a highest or otherwise best bid in accordance with the Bidding Procedures.

172.    "**Successful Bidder**" means a bidder determined to have a Successful Bid pursuant to the Bidding Procedures.

173.    "**Transfer of Control**" means the transfer of control of the Money Transmitter Licenses held by the Debtors or any of their subsidiaries as a result of the issuance of the Reorganized GGH Interests to Holders of Allowed General Unsecured Claims.

174.    "**Unclaimed Property**" means any distribution under the Plan on account of an Allowed Claim whose Holder has not: (i) accepted such distribution or, in the case of distributions made by check, negotiated such check; (ii) given notice to the Reorganized Debtors of an intent to accept such distribution; (iii) responded to the Debtors', Reorganized Debtors', Liquidation Trustee's or GUC Trust Trustee's (as applicable) requests for information necessary to facilitate such distribution; or (iv) taken any other action necessary to facilitate such distribution.

175.    "**Unexpired Lease**" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

176.    "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Class consisting of Claims or Interests that are not "impaired" within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash or Reinstatement.

177.    "**Unsecured**" means, with respect to a Claim, not a Secured Claim.

178.    "**U.S. Trustee**" means the Office of the United States Trustee for the Southern District of New York.

179.    "**U.S. Trustee Fees**" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

B.    *Rules of Interpretation*

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

(2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified, or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan; (4) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (5) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (8) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (10) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction, action, or event shall or may occur pursuant to the Plan is a day that is not a Business Day, then such transaction, action, or event shall instead occur on the next succeeding Business Day.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided that* the corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or Reorganized Debtor.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.    *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.    *Controlling Document*

In the event of an inconsistency between the Plan, the Disclosure Statement, or any other Final Order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing, other than the Plan Supplement), the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

A.    *Administrative Expense Claims*

Except with respect to Administrative Expense Claims that are Professional Fee Claims, and except to the extent that an Administrative Expense Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Expense Claim and the applicable Debtor(s), Reorganized Debtor(s), or Liquidation Trustee (as applicable) agrees to less favorable treatment, each Holder of an Allowed Administrative Expense Claim shall be paid in full in Cash on the latest of: (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Expense Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Expense Claim is Allowed; and (c) the date such Allowed Administrative Expense Claim becomes due and payable, or as soon thereafter as is reasonably practicable; *provided* that, **if an Equitization occurs**, Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' businesses may be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

Except as otherwise provided in this Article II.A of the Plan and except with respect to Administrative Expense Claims that are Professional Fee Claims, requests for allowance and payment of Administrative Expense Claims must be Filed and served on the Debtors, the Reorganized Debtors, or the Liquidation Trustee (as applicable), pursuant to the procedures specified in the Bar Date Order, the Confirmation Order, and the notice of entry of the Confirmation Order no later than the Administrative Expense Claims Bar Date.  Holders of Administrative Expense Claims that are required to, but do not, File and serve on the Debtors, the Reorganized Debtors, or the Liquidation Trustee (as applicable) a request for allowance and

payment of such Administrative Expense Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, the Liquidation Trust, or their respective assets or property and such Administrative Expense Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Debtors, the Reorganized Debtors, or the Liquidation Trustee (as applicable) and the requesting party no later than ninety (90) days after the Effective Date or such other date fixed by the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be Filed with respect to an Administrative Expense Claim previously Allowed.

B.    *Professional Compensation*

1.    <u>Final Fee Applications</u>

All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through and including the Effective Date, shall be Filed and served on the Reorganized Debtors or the Liquidation Trustee, as applicable, no later than sixty (60) days after the Effective Date. Each such final request will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, and once approved by the Bankruptcy Court, such Allowed Professional Fee Claims shall be promptly paid in Cash from the Professional Fee Escrow Account up to their full Allowed amount.

If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims shall be promptly paid by the Reorganized Debtors or the Liquidation Trustee, as applicable, without any further action or order of the Bankruptcy Court. Obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.

Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtors or the Liquidation Trustee, as applicable, and the requesting party no later than twenty (20) days after such Professional Fee Claim is Filed with the Bankruptcy Court.

2.    <u>Professional Fee Escrow Account</u>

On the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the "Professional Fee Reserve Amount" described in Article II.B.3 of the Plan. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or of the Reorganized Debtors or the Liquidation Trust. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors or the Liquidation Trust (as applicable) from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. After all such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be distributed to the Reorganized Debtors or the Liquidation Trust (as applicable) without any further action or order of the Bankruptcy Court.

3.    Professional Fee Reserve Amount

No later than five (5) Business Days prior to the Effective Date, the Debtors shall solicit Professionals for estimates of their unpaid Professional Fee Claims before and as of the Effective Date, and such Professionals shall deliver such estimate to the Debtors in writing via email two (2) Business Days prior to the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not timely provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4.    Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors or the Liquidation Trustee (as applicable) shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred on or after the Effective Date by the Professionals (including any fees related to the preparation of Professional fee applications). Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors or the Liquidation Trustee (as applicable) may employ and pay any Professional for fees and expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on the Effective Date or as soon as practicable thereafter or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

D.    *Statutory Fees*

On or before the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtors in Cash.

After the Effective Date, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) will pay any and all such fees for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first. The Liquidation Trust will pay any and all fees due and payable pursuant to 28 U.S.C. § 1930, if any, on account of disbursements from the Liquidation Trust only. The GUC Trust will pay any and all fees due and payable pursuant to 28 U.S.C. § 1930, if any, on account of disbursements from the GUC Trust only.

The Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) shall continue to file quarterly, post-confirmation operating reports in accordance with the U.S. Trustee's guidelines.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims*

The Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest fits within the description of that Class and is classified in other Class(es) to the extent that any portion of the Claim or Interest fits within the description of such other Class(es).  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

1.    Classification of Claims Against and Interests in GGH

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Secured Claims | Unimpaired | Presumed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Subordinated Claims | Impaired | Deemed to Reject |
| 5 | Intercompany Claims | Impaired or Unimpaired | Presumed to Accept or Deemed to Reject |
| 6 | Interests | Impaired | Deemed to Reject |

2.    Classification of Claims Against and Interests in GGC

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Institutional Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Gemini Lender Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Subordinated Claims | Impaired | Deemed to Reject |
| 6 | Intercompany Claims | Impaired or Unimpaired | Presumed to Accept or Deemed to Reject |
| 7 | Intercompany Interests | Impaired or Unimpaired | Presumed to Accept or Deemed to Reject |

3.    Classification of Claims Against and Interests in GAP

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Secured Claims | Unimpaired | Presumed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Subordinated Claims | Impaired | Deemed to Reject |
| 5 | Intercompany Claims | Impaired or Unimpaired | Presumed to Accept or Deemed to Reject |
| 6 | Intercompany Interests | Impaired or Unimpaired | Presumed to Accept or Deemed to Reject |

B.    *Treatment of Claims Against and Interests in GGH*

1.    Class 1 — Other Priority Claims

a.    *Classification*: Class 1 consists of all Other Priority Claims against GGH.

b.    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim against GGH agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim against GGH will, at the option of the Debtors or the Reorganized Debtors, as applicable, (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such

Other Priority Claim becomes an Allowed Other Priority Claim against GGH, in each case, or as soon as reasonably practicable thereafter.

c.   *Voting*: Class 1 is Unimpaired under the Plan. Holders of Class 1 Other Priority Claims against GGH are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.   <u>Class 2 — Secured Claims</u>

a.   *Classification*: Class 2 consists of all Secured Claims against GGH.

b.   *Treatment*: Except to the extent that a Holder of an Allowed Secured Claim against GGH agrees to less favorable treatment, in full and final satisfaction of such Allowed Secured Claim, at the option of Debtors or the Reorganized Debtors, as applicable, such Holder will receive (i) payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Secured Claim becomes an Allowed Secured Claim against GGH, in each case, or as soon as reasonably practicable thereafter, (ii) the return of the collateral securing such Allowed Secured Claim, or (iii) such other treatment so as to render such Holder's Allowed Secured Claim against GGH Unimpaired pursuant to section 1124 of the Bankruptcy Code.

c.   *Voting*: Class 2 is Unimpaired under the Plan. Holders of Class 2 Secured Claims against GGH are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.   <u>Class 3 — General Unsecured Claims</u>

a.   *Classification*: Class 3 consists of all General Unsecured Claims against GGH.

b.   *Treatment*: In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim against GGH, each Holder of an Allowed General Unsecured Claim against GGH shall receive its Pro Rata share of (i) the Available Assets (including proceeds of the Asset Sale that are allocated, in the Debtors' discretion, to GGH), (ii) to the extent an Equitization occurs, one hundred percent (100%) of the Interests in Reorganized GGH, subject to dilution on account of the MIP, (iii) the Class A1 GUC Trust Units, (iv) the Class B2 GUC Trust Units, and (v) if such Holder has elected to opt into the releases set forth in the DCG Settlement Procedures and Article IV.E of the Plan, the Class B1 GUC Trust Units.

c.   *Voting*: Class 3 is Impaired under the Plan. Holders of Class 3 General Unsecured Claims against GGH will be entitled to vote to accept or reject the Plan.

4.   <u>Class 4 — Subordinated Claims</u>

a.   *Classification*: Class 4 consists of all Subordinated Claims against GGH.

b.   *Treatment*: Holders of Subordinated Claims against GGH shall not receive any distribution on account of such Subordinated Claims. On the Effective Date, all such Subordinated Claims shall be discharged, cancelled, released, and extinguished.

c.   *Voting*: Class 4 is Impaired under the Plan. Holders of Class 4 Subordinated Claims against GGH will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders will not be entitled to vote to accept or reject the Plan.

5.   <u>Class 5 — Intercompany Claims</u>

a.   *Classification*: Class 5 consists of all Intercompany Claims against GGH.

b.   *Treatment*: All Intercompany Claims against GGH will be adjusted, Reinstated, compromised, or discharged on the Effective Date in the Debtors' discretion.

c.   *Voting*: Class 5 is Unimpaired/Impaired under the Plan.  Holders of Class 5 Intercompany Claims against GGH are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

6.   <u>Class 6 — Interests</u>

a.   *Classification*: Class 6 consists of all Interests in GGH.

b.   *Treatment*: Holders of Interests in GGH shall not receive any distribution on account of such Interests unless all senior Claims are paid in full or otherwise treated as Unimpaired.  On the Effective Date, all Interests in GGH shall be discharged, cancelled, released, and extinguished.

c.   *Voting*: Class 6 is Impaired under the Plan. For purposes of solicitation, it is presumed that Holders of Class 6 Interests in GGH shall not receive any distribution on account of such Interests and will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders will not be entitled to vote to accept or reject the Plan.

C. *Treatment of Claims Against and Interests in GGC*

1. Class 1 — Other Priority Claims

    a. *Classification*: Class 1 consists of all Other Priority Claims against GGC.

    b. *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim against GGC agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim against GGC will, at the option of the Debtors or the Reorganized Debtors, as applicable, (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Priority Claim becomes an Allowed Other Priority Claim against GGC, in each case, or as soon as reasonably practicable thereafter.

    c. *Voting*: Class 1 is Unimpaired under the Plan. Holders of Class 1 Other Priority Claims against GGC are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2. Class 2 — Secured Claims

    a. *Classification*: Class 2 consists of all Secured Claims against GGC.

    b. *Treatment*: Except to the extent that a Holder of an Allowed Secured Claim against GGC agrees to less favorable treatment, in full and final satisfaction of such Allowed Secured Claim, at the option of Debtors or the Reorganized Debtors, as applicable, such Holder will receive (i) payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Secured Claim becomes an Allowed Secured Claim against GGC, in each case, or as soon as reasonably practicable thereafter, (ii) the return of the collateral securing such Allowed Secured Claim, or (iii) such other treatment so as to render such Holder's Allowed Secured Claim against GGC Unimpaired pursuant to section 1124 of the Bankruptcy Code.

    c. *Voting*: Class 2 is Unimpaired under the Plan. Holders of Class 2 Secured Claims against GGC are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3. Class 3 — Institutional Unsecured Claims

    a. *Classification*: Class 3 consists of all Institutional Unsecured Claims against GGC.

b.  *Treatment*: In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Institutional Unsecured Claim against GGC, each Holder of an Allowed General Unsecured Claim against GGC shall receive its Pro Rata share of (i) the Available Assets (including proceeds of the Asset Sale that are allocated, in the Debtors' discretion, to GGC), (ii) to the extent an Equitization occurs, its Pro Rata Share of one hundred percent (100%) of the Interests in Reorganized GGH, subject to dilution on account of the MIP, (iii) the Class A2 GUC Trust Units, (iv) the Class B2 GUC Trust Units, and (v) if such Holder has elected to opt into the releases set forth in the DCG Settlement Procedures and Article IV.E of the Plan, the Class B1 GUC Trust Units.

c.  *Voting*: Class 3 is Impaired under the Plan. Holders of Class 3 General Unsecured Claims against GGC will be entitled to vote to accept or reject the Plan.

4.  <u>Class 4 — Gemini Lender Unsecured Claims</u>

a.  *Classification*: Class 4 consists of all Gemini Lender Unsecured Claims against GGC.

b.  *Treatment*: In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Gemini Lender Unsecured Claim against GGC, each Holder of an Allowed Gemini Lender Unsecured Claim against GGC shall receive its Pro Rata share of (i) the Available Assets (including proceeds of the Asset Sale that are allocated, in the Debtors' discretion, to GGC), (ii) to the extent an Equitization occurs, one hundred percent (100%) of the Interests in Reorganized GGH, subject to dilution on account of the MIP, (iii) the Class A2 GUC Trust Units, (iv) the Class B2 GUC Trust Units, (v) the Class C2 GUC Trust Units, (vi) if such Holder has elected to opt into the releases set forth in the DCG Settlement Procedures and Article IV.E of the Plan, the Class B1 GUC Trust Units, and (vii) if such Holder has elected to opt into the releases set forth in the Gemini Settlement Procedures and Article IV.F of the Plan, the Class C1 GUC Trust Units,.

c.  *Voting*: Class 4 is Impaired under the Plan. Holders of Class 4 General Unsecured Claims against GGC will be entitled to vote to accept or reject the Plan.

5.  <u>Class 5 — Subordinated Claims</u>

a.  *Classification*: Class 5 consists of all Subordinated Claims against GGC.

b.  *Treatment*: Holders of Subordinated Claims against GGC shall not receive any distribution on account of such Subordinated Claims. On the Effective Date, all Subordinated Claims against GGC shall be discharged, cancelled, released, and extinguished.

    c.    *Voting*: Class 5 is Impaired under the Plan. Holders of Class 5 Subordinated Claims against GGC will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders will not be entitled to vote to accept or reject the Plan.

6.    <u>Class 6 — Intercompany Claims</u>

    a.    *Classification*: Class 6 consists of all Intercompany Claims against GGC.

    b.    *Treatment*: All Intercompany Claims against GGC will be adjusted, Reinstated, compromised, or discharged on the Effective Date in the Debtors' discretion.

    c.    *Voting*: Class 6 is Unimpaired/Impaired under the Plan. Holders of Class 6 Intercompany Claims against GGC are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

7.    <u>Class 7 — Intercompany Interests</u>

    a.    *Classification*: Class 7 consists of all Intercompany Interests in GGC.

    b.    *Treatment*: All Intercompany Interests in GGC will be adjusted, Reinstated, compromised, or discharged on the Effective Date in the Debtors' discretion.

    c.    *Voting*: Class 7 is Unimpaired/Impaired under the Plan. Holders of Class 7 Intercompany Interests in GGC are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

D.    *Treatment of Claims Against and Interests in GAP*

1.    <u>Class 1 — Other Priority Claims</u>

    a.    *Classification*: Class 1 consists of all Other Priority Claims against GAP.

    b.    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim against GAP agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim against GAP will, at the option of the Debtors or the Reorganized Debtors, as applicable, (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Priority Claim becomes an Allowed Other Priority Claim against GAP, in each case, or as soon as reasonably practicable thereafter

      c.     *Voting*: Class 1 is Unimpaired under the Plan. Holders of Class 1 Other Priority Claims against GAP are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.     <u>Class 2 — Secured Claims</u>

      a.     *Classification*: Class 2 consists of all Secured Claims against GAP.

      b.     *Treatment*: Except to the extent that a Holder of an Allowed Secured Claim against GAP agrees to less favorable treatment, in full and final satisfaction of such Allowed Secured Claim, at the option of the Debtors or the Reorganized Debtors, as applicable, such Holder will receive (i) payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Secured Claim becomes an Allowed Secured Claim against GAP, in each case, or as soon as reasonably practicable thereafter, (ii) the return of the collateral securing such Allowed Secured Claim, or (iii) such other treatment so as to render such Holder's Allowed Secured Claim against GAP Unimpaired pursuant to section 1124 of the Bankruptcy Code.

      c.     *Voting*: Class 2 is Unimpaired under the Plan. Holders of Class 2 Secured Claims against GAP are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.     <u>Class 3 — General Unsecured Claims</u>

      a.     *Classification*: Class 3 consists of all General Unsecured Claims against GAP.

      b.     *Treatment*: In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim against GAP, each Holder of an Allowed General Unsecured Claim against GAP shall receive its Pro Rata share of (i) the Available Assets (including proceeds of the Asset Sale that are allocated, in the Debtors' discretion, to GAP), (ii) to the extent an Equitization occurs, one hundred percent (100%) of the Interests in Reorganized GGH, subject to dilution on account of the MIP, (iii) the Class A3 GUC Trust Units, (iv) the Class B2 GUC Trust Units, and (v) if such Holder has elected to opt into the releases set forth in the DCG Settlement Procedures and Article IV.E of the Plan, the Class B1 GUC Trust Units.

      c.     *Voting*: Class 3 is Impaired under the Plan. Holders of Class 3 General Unsecured Claims against GAP will be entitled to vote to accept or reject the Plan.

4. Class 4 — Subordinated Claims

    a. *Classification*: Class 4 consists of all Subordinated Claims against GAP.

    b. *Treatment*: Holders of Subordinated Claims against GAP shall not receive any distribution on account of such Subordinated Claims. On the Effective Date, all Subordinated Claims against GAP shall be discharged, cancelled, released, and extinguished.

    c. *Voting*: Class 4 is Impaired under the Plan. Holders of Class 4 Subordinated Claims against GAP will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders will not be entitled to vote to accept or reject the Plan.

5. Class 5 — Intercompany Claims

    a. *Classification*: Class 5 consists of all Intercompany Claims against GAP.

    b. *Treatment*: All Intercompany Claims against GAP will be adjusted, Reinstated, compromised, or discharged on the Effective Date in the Debtors' discretion.

    c. *Voting*: Class 5 is Unimpaired/Impaired under the Plan. Holders of Class 5 Intercompany Claims are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

6. Class 6 — Intercompany Interests

    a. *Classification*: Class 6 consists of all Intercompany Interests in GAP.

    b. *Treatment*: All Intercompany Interests in GAP will be adjusted, Reinstated, compromised, or discharged on the Effective Date in the Debtors' or Reorganized Debtors' discretion.

    c. *Voting*: Class 6 is Unimpaired/Impaired under the Plan. Holders of a Class 6 Intercompany Interests in GAP are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Therefore, the vote of such Holders to accept or reject the Plan will not be solicited.

E. *Special Provision Governing Unimpaired or Reinstated Claims*

Nothing under the Plan shall affect the Debtors', the Reorganized Debtors', the Liquidation Trustee's, or the GUC Trust Trustee's (as applicable) claims, Causes of Action, rights, or defenses in respect of any Unimpaired Claims or Reinstated Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims or Reinstated Claims.

F.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B–D of the Plan.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

G.     *Elimination of Vacant Classes*

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court for voting purposes as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

H.     *Voting Classes*; *Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

I.     *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date

J.     *Subordinated Claims*

Except as may be the result of the settlement described in Article VIII.A of the Plan, the allowance, classification, and treatment of all Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) reserve(s) the right to reclassify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

# ARTICLE IV.
# MEANS FOR IMPLEMENTATION OF THE PLAN

A.   *Liquidation Trust*

**If an Equitization does not occur, the following provisions in this Article IV.A of the Plan shall apply to the implementation of the Plan.  For the avoidance of doubt, all provisions in this Article IV.A of the Plan shall apply only if an Equitization does not occur.**

1.   Liquidation Trust Generally

On or prior to the Effective Date, the Liquidation Trust shall be established in accordance with the Liquidation Trust Agreement for the purpose of liquidating the Liquidation Trust Assets, resolving all Disputed Claims (other than General Unsecured Claims) to the extent related to the Liquidation Trust Assets, making all distributions of the proceeds of the Liquidation Trust Assets to Holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan.  Subject to and to the extent set forth in the Plan, the Confirmation Order, the Liquidation Trust Agreement, or any other order of the Bankruptcy Court entered in connection therewith, the Liquidation Trust shall be empowered to: (a) perform all actions and execute all agreements, instruments, and other documents necessary to implement the Plan; (b) establish, maintain, and administer the Liquidation Trust Accounts, which shall be segregated to the extent appropriate in accordance with the Plan; (c) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, prosecute, settle, and protect, as applicable, the Liquidation Trust Assets (directly or through its professionals or a Disbursing Agent), in accordance with the Plan and the Liquidation Trust Agreement; (d) to the extent Claims relate to the Liquidation Trust Assets, review, reconcile, settle, or object to all such Claims (other than General Unsecured Claims) that are Disputed Claims as of the Effective Date pursuant to the procedures for allowing Claims prescribed in the Plan; (e) calculate and make distributions of the proceeds of the Liquidation Trust Assets to Holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan; (f) subject to Article VIII of the Plan, pursue Retained Causes of Actions that are transferred to the Liquidation Trust to the extent that their pursuit would likely result in a material economic benefit to the Liquidation Trust Beneficiaries and raise any defenses in any adverse actions or counterclaims; (g) retain, compensate, and employ professionals to represent the Liquidation Trust; (h) file appropriate tax returns and other reports on behalf of the Liquidation Trust and pay or seek refunds in respect of taxes or other obligations owed by the Liquidation Trust; (i) file, to the extent reasonably feasible and subject to the Liquidation Trust Agreement, appropriate tax returns on behalf of the Debtors and pay taxes or other obligations arising in connection therewith; (j) exercise such other powers as may be vested in the Liquidation Trust under the Liquidation Trust Agreement and the Plan, or as are deemed by the Liquidation Trustee to be necessary and proper to implement the provisions of the Plan and the Liquidation Trust Agreement; (k) take such actions as are necessary or appropriate to close the Debtors' Chapter 11 Cases; and (l) dissolve and terminate the Liquidation Trust in accordance with the terms of the Liquidation Trust Agreement and the Plan.  For the avoidance of doubt, the Liquidation Trust shall not be empowered with performing any actions designated to the GUC Trust or the GUC Trust Trustee.

Notwithstanding anything to the contrary in this Article IV.A, the Liquidation Trust's primary purpose is liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidation Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidation Trust Assets and provide for the orderly liquidation thereof. Accordingly, the Liquidation Trustee shall, in an orderly manner, liquidate the Liquidation Trust Assets and make timely distributions pursuant to the Plan, and not unduly prolong the duration of the Liquidation Trust.

2.    Funding of and Transfer of Assets into the Liquidation Trust

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtor shall transfer the Liquidation Trust Assets to the Liquidation Trust, and all such assets shall vest in the Liquidation Trust on such date, to be administered by the Liquidation Trustee in accordance with the Plan and the Liquidation Trust Agreement. Except as set forth in the Plan, the Liquidation Trust Assets shall be transferred to the Liquidation Trust free and clear of all Claims, Liens, and encumbrances to the fullest extent provided by section 363 or 1123 of the Bankruptcy Code.

The act of transferring the Liquidation Trust Assets, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidation Trust as if the asset or right was still held by the Debtors.

The Liquidation Trustee shall have the authority to create additional sub-accounts in the Liquidation Trust Accounts and sub-trusts within the Liquidation Trust, which may have a separate legal existence, but which shall be considered sub-accounts or sub-trusts of the Liquidation Trust. This shall include the creation of sub-accounts and/or sub-trusts to accomplish the purposes of the Liquidation Trust.

3.    Liquidation Trustee

The Liquidation Trustee shall be selected by the Debtors. The Liquidation Trustee shall be the successor to and representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include the authority and responsibility to fulfill the items identified in the Plan. Other rights and duties of the Liquidation Trustee and the Liquidation Trust Beneficiaries shall be as set forth in the Liquidation Trust Agreement.

4.    Liquidation Trust Agreement

The Liquidation Trust Agreement generally will provide for, among other things: (i) the payment of reasonable and documented compensation to the Liquidation Trustee; (ii) the payment of other expenses of the Liquidation Trust, including the cost of pursuing the Retained Causes of Action assigned to the Liquidation Trust; (iii) the retention of counsel, accountants, financial advisors, or other professionals and the payment of their compensation; (iv) the investment of Cash by the Liquidation Trustee within certain limitations; (v) the preparation and filing of appropriate

tax returns and other reports on behalf of the Liquidation Trust and the Debtors and the payment of taxes or other obligations owed by the Liquidation Trust and the Debtors; (vi) the maintenance (if appropriate) of any going concern vested in the Liquidation Trust (subject to the limitations described herein and therein); (vii) the orderly liquidation of the Liquidation Trust Assets; and (viii) the litigation, settlement, abandonment, or dismissal of the Retained Causes of Action or any other claims, rights, or causes of action assigned to the Liquidation Trust.

5.      Reports to Be Filed by the Liquidation Trustee

The Liquidation Trustee, on behalf of the Liquidation Trust, shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the Liquidation Trust Agreement), no later than thirty-one (31) days after June 30 and December 31 of each calendar year, a semi-annual report regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it, and other matters relating to the implementation of the Plan.

6.      Fees and Expenses of the Liquidation Trust

The fees and expenses of the Liquidation Trustee (including those incurred prior to the Effective Date in connection with the preparation of the Liquidation Trust Agreement) shall be paid after the Effective Date pursuant to the terms and conditions of the Liquidation Trust Agreement. The Liquidation Trustee, on behalf of the Liquidation Trust, may employ, without further order of the Bankruptcy Court, professionals (including professionals previously employed by the Debtors) to assist in carrying out its duties under the Liquidation Trust Agreement and may compensate and reimburse the expenses of these professionals based upon the nature of the work performed by such professional, without further order of the Bankruptcy Court, subject to any limitations and procedures established by the Liquidation Trust Agreement.

7.      Indemnification

The Liquidation Trust Agreement may include reasonable and customary indemnification provisions for the benefit of the Liquidation Trustee and/or other parties. Any such indemnification shall be the sole responsibility of the Liquidation Trust and payable solely from the Liquidation Trust Assets.

8.      Tax Treatment

The Liquidation Trust is intended to be treated for U.S. federal income tax purposes in part as a liquidating trust described in Treasury Regulation § 301.7701-4(d) and in part as one or more Disputed Claims reserves treated as disputed ownership funds described in Treasury Regulation § 1.468B-9 (each of which will be taxable as a "qualified settlement fund" if all assets of the Disputed Claims reserve are passive assets for U.S. federal income tax purposes). For U.S. federal income tax purposes, the transfer of assets by the Debtors to the Liquidation Trust will be treated in part as the transfer of assets by the Debtors to the Holders of Allowed General Unsecured Claims , subject to any liabilities of the Debtors or the Liquidation Trust payable from the proceeds of such assets, followed by the deemed transfer of such assets (subject to such liabilities) by such Holders to the Liquidation Trust in exchange for interests in the trust, and in part as the transfer of assets by the Debtors to one more Disputed Claims reserves. The Holders of Allowed General

Unsecured Claims will be treated for U.S. federal income tax purposes as the grantors and deemed owners of their respective shares of the assets in the Liquidation Trust (subject to such liabilities), depending on their rights to distributions under the Plan.  As grantors and deemed owners of such assets, the Holders of Allowed General Unsecured Claims will be required to include in income their respective shares of the income, deductions, gains, losses, and credits attributable to such assets.  The value of such assets will be determined by the Liquidation Trustee as the trustee of the Liquidation Trust, and such values will be used consistently by all parties for all U.S. federal (and applicable state and local) income tax purposes.  Among other things, the Holders of Allowed General Unsecured Claims will be required to use the values assigned to such assets by the Liquidation Trustee for all U.S. federal (and applicable state and local) income tax purposes, including the recognition of income, deduction, gain or loss with respect to their Allowed Claims and any gain or loss recognized on the subsequent disposition of an asset in which the Holder holds an interest.  The Liquidation Trust Agreement will contain certain provisions intended to comply with IRS guidance for trusts treated as liquidating trusts.  The Liquidation Trust Agreement will (i) require that the Liquidation Trust terminate no later than three years after the Effective Date; *provided, however*, if the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the Liquidation Trust to complete its liquidating purpose, the term of the Liquidation Trust may be extended one or more times for a finite period not to exceed six months (and such extensions shall not exceed a total of four extensions unless the Liquidation Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the liquidating trust as a grantor trust for U.S. federal income tax purposes, (ii) limit the Liquidation Trustee's investment powers, (iii) limit the business operations carried on by the Liquidation Trust to activities reasonably necessary to and consistent with the Liquidation Trust's purpose, (iv) prohibit the Liquidation Trust from receiving or retaining Cash or Digital Assets in excess of an amount reasonably necessary to meet Claims and contingent liabilities or to maintain the value of the trust assets during liquidation and (v) distribute at least annually to the Holders of Allowed General Unsecured Claims the Liquidation Trust's net income and the net proceeds from the sale of Liquidation Trust Assets in excess of an amount reasonably necessary to meet Claims and contingent liabilities (including Disputed Claims) and to maintain the value of the Liquidation Trust Assets. Liquidation Trust Assets reserved for Holders of Disputed Claims will be treated as one or more Disputed Claims reserves for U.S. federal income tax purposes, which will be subject to an entity-level tax on some or all of their net income or gain.  No Holder of a Claim will be treated as the grantor or deemed owner of an asset reserved for Disputed Claims until such Holder receives or is allocated an interest in such asset.  The Liquidation Trustee will file all tax returns on a basis consistent with the treatment of the Liquidation Trust in part as a liquidating trust (and grantor trust pursuant to Treasury Regulation § 1.671-1(a)) and in part as one or more Disputed Claims reserves taxed as disputed ownership funds governed by Treasury Regulation § 1.468B-9 (each of which will be taxable as "qualified settlement fund" if all assets of the Disputed Claims reserve are passive assets for U.S. federal income tax purposes), and will pay all taxes owed from Liquidation Trust Assets.

9.      Settlement of Claims

Except as otherwise provided in the Plan or the Liquidation Trust Agreement, on and after the Effective Date, the Liquidation Trustee may compromise or settle any Claims (other than any General Unsecured Claims) related to the Liquidation Trust Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules

and may pay the charges that it incurs on or after the Effective Date for Liquidation Trust Expenses, professionals' fees, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

### 10. Sales of Assets by the Liquidation Trust

The Liquidation Trustee may conduct any sales or liquidations of non-Cash Liquidation Trust Assets on any terms it deems reasonable, without further order of the Bankruptcy Court. Upon the sale, liquidation, transfer, or other disposition of the Liquidation Trust Assets by the Liquidation Trustee, the Liquidation Trustee shall deposit the proceeds of all such sales, liquidations, transfers, or dispositions into one or more of the Liquidation Trust Accounts.

### 11. Abandonment of Assets by Liquidation Trust

The Liquidation Trustee may abandon any Liquidation Trust Assets which the Liquidation Trustee determines in his, her, or its reasonable discretion to be of de minimis value or burdensome to the Liquidation Trust, including any pending adversary proceeding or other legal action commenced or commenceable by the Debtor prior to the Effective Date.

## B.   *GUC Trust*

### 1.  GUC Trust Generally

On or prior to the Effective Date, the GUC Trust shall be established in accordance with the GUC Trust Agreement for the purpose of distributing the GUC Trust Assets, resolving all Disputed Claims to the extent related to the GUC Trust Assets, making all distributions of the proceeds of the GUC Trust Assets to Holders of Allowed General Unsecured Claims in accordance with the terms of the Plan and otherwise implementing the Plan.  Subject to and to the extent set forth in the Plan, the Confirmation Order, the GUC Trust Agreement, or any other order of the Bankruptcy Court entered in connection therewith, the GUC Trust shall be empowered to: (a) perform all actions and execute all agreements, instruments, and other documents necessary to implement the Plan; (b) establish, maintain, and administer the GUC Trust Accounts, which shall be segregated to the extent appropriate in accordance with the Plan as it relates to General Unsecured Claims; (c) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, and protect, as applicable, the GUC Trust Assets (directly or through its professionals or a Disbursing Agent), in accordance with the Plan; (d) subject to the GUC Trust Agreement and the Plan, review, reconcile, settle, or object to all General Unsecured Claims that are Disputed Claims as of the Effective Date pursuant to the procedures for allowing Claims prescribed in the Plan; (e) calculate and make distributions of the proceeds of the GUC Trust Assets to Holders of Allowed General Unsecured Claims in accordance with the terms of the Plan and otherwise implementing the Plan; (f) retain, compensate, and employ professionals to represent the GUC Trust; (g) file, to the extent reasonably feasible and subject to the GUC Trust Agreement, appropriate tax returns on behalf of the GUC Trust and pay taxes or other obligations arising in connection therewith; (h) exercise such other powers as may be vested in the GUC Trust under the GUC Trust Agreement and the Plan, or as are deemed by the GUC Trust Trustee to be necessary and proper to implement the provisions of the Plan and the GUC Trust Agreement; and (i) terminate the GUC Trust in accordance with the terms of the GUC Trust Agreement. For the

avoidance of doubt, the GUC Trust shall have no authority to pursue any Claims or Causes of Action against Released Parties or Exculpated Parties pursuant to Article VIII of the Plan.

Notwithstanding anything to the contrary in this Article IV.B, the GUC Trust's primary purpose is to reconcile General Unsecured Claims and distribute the GUC Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the GUC Trust's purpose and reasonably necessary to conserve and protect the GUC Trust Assets and provide for the orderly liquidation and distribution thereof. Accordingly, the GUC Trust Trustee shall, in an orderly manner, liquidate the GUC Trust Assets and make timely distributions pursuant to the Plan, and not unduly prolong the duration of the GUC Trust.

2.   Funding of and Transfer of Assets into the GUC Trust

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors shall transfer the GUC Trust Assets to the GUC Trust, and all such assets shall vest in the GUC Trust on such date, to be administered by the GUC Trust Trustee in accordance with the Plan and the GUC Trust Agreement. Except as set forth in the Plan, the GUC Trust Assets shall be transferred to the GUC Trust free and clear of all Claims, Liens, and encumbrances to the fullest extent provided by section 363 or 1123 of the Bankruptcy Code.

The act of transferring the GUC Trust Assets, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the GUC Trust as if the asset or right was still held by the Debtors.

The GUC Trust Trustee shall have the authority to create additional sub-accounts in the GUC Trust Accounts, which may have a separate legal existence, but which shall be considered sub-accounts of the GUC Trust. This shall include the creation of sub-accounts to accomplish the purposes of the GUC Trust.

3.   GUC Trust Trustee

Solely with respect to the GUC Trust Assets and the administration of General Unsecured Claims, the GUC Trust Trustee shall be the successor to and representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The powers, rights, and responsibilities of the GUC Trust Trustee shall be specified in the GUC Trust Agreement and shall include the authority and responsibility to fulfill the items identified in the Plan. Other rights and duties of the GUC Trust Trustee and the GUC Trust Beneficiaries shall be as set forth in the GUC Trust Agreement.

The GUC Trust Trustee shall be selected by the Debtors following consultation with the Committee.

4.   GUC Trust Agreement

The GUC Trust Agreement generally will provide for, among other things: (i) the payment of reasonable and documented compensation to the GUC Trust Trustee; (ii) the payment of other expenses of the GUC Trust; (iii) the retention of counsel, accountants, financial advisors, or other

professionals and the payment of their compensation; (iv) the investment of Cash by the GUC Trust Trustee within certain limitations; (v) the preparation and filing of appropriate tax returns and other reports on behalf of the GUC Trust and the payment of taxes or other obligations owed by the GUC Trust, if any; (vi) the orderly liquidation of the GUC Trust Assets; and (vii) any reconciliation, administration, objection, resolution, and distribution on account of General Unsecured Claims.

Additional terms of the GUC Trust and obligations of the GUC Trust Trustee, if any, will be addressed in the Plan Supplement or the GUC Trust Agreement, as applicable.

### 5. Reports to Be Filed by the GUC Trust Trustee

The GUC Trust Trustee, on behalf of the GUC Trust, shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the GUC Trust Agreement), no later than thirty-one (31) days after June 30 and December 31 of each calendar year, a semi-annual report regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it, and other matters relating to the implementation of the Plan.

### 6. Settlement of Claims

Except as otherwise provided in the Plan or the GUC Trust Agreement, on and after the Effective Date, the GUC Trust Trustee may compromise or settle any Claims related to the GUC Trust Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and may pay the charges that it incurs on or after the Effective Date for GUC Trust Expenses, professionals' fees, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

C. *Means for Implementation if an Equitization Does Not Occur*

**If an Equitization does not occur, the following provisions in this Article IV.C of the Plan shall govern the implementation of the Plan.  For the avoidance of doubt, all provisions in this Article IV.C of the Plan shall apply only <u>if an Equitization does not occur.</u>**

### 1. Asset Sale and Abandonment of Certain Assets

Unless otherwise specified in the Plan, all Assets, other than the GUC Trust Assets, that are not sold pursuant to the Debtors' Sales Process will be contributed to the Liquidation Trust as part of the Liquidation Trust Assets pursuant to the Plan.  The Plan shall constitute a motion to abandon such Assets to the Liquidation Trust pursuant to section 554 of the Bankruptcy Code and relinquish such abandoned Assets.  Entry of the Confirmation Order shall constitute (i) approval, pursuant to section 554 of the Bankruptcy Code, of the abandonment of such abandoned Assets and (ii) authorization to relinquish any interest the Debtors hold in such abandoned Assets.

2.    Segregated Accounts for Plan Distributions

a.    Claims Reserve

The Claims Reserve shall be held in trust in a segregated account by the Liquidation Trustee for distributions and/or payment in accordance with the terms of Articles II and III of the Plan.  Any Cash or Digital Assets held in the Claims Reserve after all applicable distributions are made and any surplus Cash or Digital Assets in the Claims Reserve, such surplus determined by the Liquidation Trustee based on the potential amount of Administrative Expense Claims, Other Priority Claims, and Secured Claims that remain unpaid as of such date of determination, shall constitute Available Assets and be distributed pursuant to Article VI of the Plan.

b.    Professional Fee Claims Escrow Account

The Professional Fee Reserve Amount shall be held in trust in a segregated Professional Fee Claims Escrow Account by the Liquidation Trustee for distributions or payment in accordance with the terms of Article II of the Plan.  Any Cash held in the Professional Fee Claims Escrow Account after all applicable distributions and/or payments are made shall constitute Available Assets and be distributed pursuant to Article VI of the Plan.

3.    Corporate Existence

Each of the Debtors will be subject to a Dissolution Transaction on the Effective Date, or as promptly thereafter as possible, and each Debtor will be deemed to cease to exist as of the Effective Date after the abandonment of any remaining Assets of their Estates.

4.    Dissolution Transactions

On or after the entry of the Confirmation Order, the Debtors or the Liquidation Trustee will enter into such Dissolution Transactions and will take such actions as may be necessary or appropriate to merge, dissolve, or otherwise terminate the corporate existence of the Debtors as of the Effective Date or as promptly as possible thereafter.  The actions to effect the Dissolution Transactions may include: (i) the execution and delivery of appropriate agreements or other documents of transfer, merger, consolidation, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law, as well as other terms to which these entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and having such other terms as these entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, continuance, or dissolution or similar instruments with the applicable governmental authorities; and (iv) the taking of all other actions that these entities determine to be necessary or appropriate, including making other filings or recordings that may be required by applicable law in connection with the Dissolution Transactions.

Notwithstanding the foregoing and regardless of whether the actions described above have yet been taken with respect to a particular Debtor, as of the Effective Date and upon the transfer of the assets to the Liquidation Trust under the Plan, the Debtors shall be deemed dissolved and their business operations withdrawn for all purposes without any necessity of filing any document,

taking any further action, or making any payment to any governmental authority in connection therewith.

5.      Recourse Solely to Liquidation Trust Assets

All Claims against the Debtors are deemed satisfied, waived, and released as to the Debtors in exchange for the treatment of such Claims under the Plan, and Holders of Allowed Claims (other than Holders of Allowed General Unsecured Claims) against any Debtor will have recourse solely to the assets of the Liquidation Trust for the payment of their Allowed Claims (other than Allowed General Unsecured Claims) in accordance with the terms of the Plan and the Liquidation Trust Agreement.

6.      Cancellation of Existing Securities and Agreements.

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests, and any Interests that are not represented by certificates or other instruments, shall be canceled and surrendered and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, canceled, and of no force or effect against the Debtors or the Liquidation Trust, without any further action on the part of the Debtors, the Liquidation Trust, or any other Person.  Holders of or parties to such canceled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.

Notwithstanding anything to the contrary in this Article IV.C.6, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, a Debtor or its Interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Article IV.C.6 shall be deemed null and void and shall be of no force and effect.

7.      Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date concurrently and consistent with the treatment provided for Claims and Interests in Article III, all mortgages, deeds of trust, Liens against, security interests in, or other encumbrances or interests in property of any Estate shall be deemed fully released and discharged.

8.      Corporate Governance, Directors and Officers.

a.      Certificates of Incorporation and Bylaws

Consistent with the Plan, each of the Debtors will cease to exist, and all existing certificates of incorporation and by-laws will be canceled, effective as of the Effective Date; accordingly, no new certificates of incorporation and by-laws will be necessary for any Debtors.

b.      Directors and Officers

As of the Effective Date, the term of the current members of the board of directors of each Debtor shall expire automatically and each person serving as a director of a Debtor shall be removed and shall be deemed to have resigned and cease to serve automatically. Consistent with the Plan, each of the Debtors will cease to exist effective as of the Effective Date and, thus, no individuals will serve as directors, officers, or voting trustees after the Effective Date for any Debtors.

c.      Dissolution Transactions

The Dissolution Transactions will occur and be effective as of the date specified in the documents effectuating the applicable Dissolution Transactions or the Effective Date if no such other date is specified in such other documents, and will be authorized and approved in all respects and for all purposes without any requirement of further action by the Debtors or any other Person.

9.      Indemnification and Insurance

Prior to the Effective Date, the Debtors and the Successful Bidder(s) shall determine at such time whether the Indemnification Obligations shall be assumed, assumed and assigned, or rejected by the Debtors under the Plan.

10.     Preservation of Causes of Action

Except as provided in the Plan, or in any contract, instrument, release, or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trustee will retain and may enforce any claims, demands, rights, and causes of action that any Estate may hold against any Person to the extent not satisfied, settled, and released under the Plan or otherwise, including the Retained Causes of Action; *provided* that, for the avoidance of doubt, the Liquidation Trustee will not retain any Avoidance Actions or other GUC Trust Assets, or any Causes of Action that are assigned to a buyer in connection with the Asset Sale. The Liquidation Trustee may pursue any such retained claims, demands, rights, or causes of action, as appropriate, in accordance with the best interests of the Liquidation Trust Beneficiaries. Except to the extent any such claim is specifically satisfied, settled, and released herein, in accordance with and subject to any applicable law, the Debtor's inclusion or failure to specifically identify any Retained Causes of Action in the Plan Supplement shall not be deemed an admission, denial, or waiver of any claims, demands, rights, or causes of action that the Debtor or Estate may hold against any Person. Except to the extent any such claim is specifically satisfied, settled, and released herein, the Debtors intend to preserve those claims, demands, rights, or causes of action designated as Retained Causes of Action. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.C.10 include any claim or Cause of Action with respect to, or against, an Exculpated Party that is exculpated under the Plan or a Released Party that is released under the Plan.

11.     Substitution in Pending Legal Actions

On the Effective Date, the Liquidation Trust or the Liquidation Trustee, as applicable, shall be deemed to be substituted as the party to any litigation in which the Debtors are a party, including

41

(but not limited to) (i) pending contested matters or adversary proceedings in the Bankruptcy Court, (ii) any appeals of orders of the Bankruptcy Court, and (iii) any state court or federal or state administrative proceedings pending as of the Petition Date. The Liquidation Trustee and its professionals are not required to, but may, take such steps as are appropriate to provide notice of such substitution.

12. Effectuating Documents; Further Transactions

The Debtors (prior to the Effective Date) and the Liquidation Trustee (on or after the Effective Date) are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and evidence the terms and conditions of the Plan and the Dissolution Transactions, in each case, in the name of and on behalf of any Debtor or the Liquidation Trust, as applicable, without the need for any approvals, authorizations, or consents except those expressly required pursuant to the Plan.

Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment: (a) any transfer made by the Debtors to the Liquidation Trust; (b) any sales made by the Liquidation Trust to liquidate such assets in the trust and convert such assets into Cash; (c) any sales of Assets made by the Debtors under section 363 of the Bankruptcy Code, to the extent that title to the assets being sold transfers after the Confirmation Date; (d) the making or assignment of any lease or sublease; (e) any Dissolution Transaction; (f) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to the Plan.

D. *Means for Implementation if an Equitization Occurs*

**If an Equitization occurs, the following provisions in this Article IV.D of the Plan shall govern the implementation of the Plan. For the avoidance of doubt, all provisions in this Article IV.D of the Plan shall apply only if an Equitization occurs.**

1. Restructuring

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall undertake the Restructuring, including: (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, sale transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the rejection, assumption, or assumption and assignment, as

applicable, of Executory Contracts and Unexpired Leases; (4) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (5) the issuance of securities, including the Reorganized GGH Interests, which shall be authorized and approved in all respects in each case without further action being required under applicable law, regulation, order, or rule; (6) the execution and delivery of Definitive Documents not otherwise included in the foregoing, if any; (7) the creation and funding of the GUC Trust; and (8) all other actions that the Debtors or the Reorganized Debtors determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.  The Confirmation Order shall and shall be deemed, pursuant to sections 363, 365 1123, and 1145(a) of the Bankruptcy Code, to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring.

2.  Segregated Accounts for Plan Distributions

a.  Claims Reserve

The Claims Reserve shall be held in trust in a segregated account by the Reorganized Debtors for distributions and/or payment in accordance with the terms of Articles II and III of the Plan.  The Reorganized Debtors shall be entitled to retain any Cash or Digital Assets held in the Claims Reserve after all applicable distributions are made and any surplus Cash or Digital Assets in the Claims Reserve, such surplus determined by the Reorganized Debtors based on the potential amount of Administrative Expense Claims, Other Priority Claims, and Secured Claims that remain unpaid as of such date of determination.

b.  Professional Fee Claims Escrow Account

The Professional Fee Reserve Amount shall be held in trust in a segregated Professional Fee Claims Escrow Account by the Reorganized Debtors for distributions or payment in accordance with the terms of Article II of the Plan.  The Reorganized Debtors shall be entitled to any Cash held in the Professional Fee Claims Escrow Account after all applicable distributions and/or payments are made.

3.  Sources of Consideration for Plan Distributions

On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall make all distributions required to be made under the Plan, including funding the GUC Trust, the Claims Reserve, and the Professional Fee Escrow Account, using Cash and Digital Assets on hand as of the Effective Date, including Cash from operations.  All remaining Cash and Digital Assets on hand as of the Effective Date, after payment of all distributions required to be made on the Effective Date, but excluding the Cash and Digital Assets (as applicable) funded into the Claims Reserve and the Professional Fee Escrow Account, shall be retained by or transferred to, as applicable, the Reorganized Debtors.  Cash or Digital Asset payments to be made pursuant to the Plan will be made by the Debtors or the Reorganized Debtors, as applicable.  The Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from

such transfers may be accounted for and/or settled in accordance with the Debtors' historical intercompany account settlement practices and any such action will not violate the terms of the Plan.

4.      Issuance and Distribution of Reorganized GGH Interests

On the Effective Date, Reorganized GGH shall be authorized to and shall issue the Reorganized GGH Interests and any other Securities, if any, offered, issued, or distributed in accordance with the terms of the Plan without the need for any further corporate action and without the need for any further action by Holders of any Claims. All of the Reorganized GGH Interests or Securities, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of the Reorganized GGH Interests or Securities under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

5.      Management Incentive Plan

On the Effective Date, a portion of the Reorganized GGH Interests shall be reserved for the issuance by the New Board of stock, warrants, options, or other Equity Securities in connection with the MIP, and issuances of the Reorganized GGH Interests in respect thereof will dilute the Reorganized GGH Interests issued on the Effective Date. The remaining terms of the MIP shall be determined by the New Board.

6.      Corporate Existence

Except as otherwise provided in the Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, including, with respect to Reorganized GGH, pursuant to the New Governance Documents.

7.      Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date: all Assets in each Estate, including all Causes of Action, and any Assets acquired by any of the Debtors, shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances; *provided* that the foregoing vesting of Assets shall not apply to (a) any Assets sold pursuant to the Sales Process prior to the Effective Date, which Assets will vest in the applicable Successful Bidder(s) and (b) any GUC Trust Assets, which Assets will vest in the GUC Trust on the Effective Date or as soon as reasonably practicable thereafter. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Except as otherwise provided for in the Plan, to the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary to cancel and/or extinguish such Liens and/or security interests.

After the Effective Date, the Reorganized Debtors may present Bankruptcy Court order(s) or assignment(s) suitable for filing in the records of every county or governmental agency where the property vested in accordance with the foregoing paragraph is or was located, which provide that such property is conveyed to and vested in the Reorganized Debtors. The Bankruptcy Court order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred, assigned, and/or vested free and clear of. The Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished and no notice, other than by the Plan, shall be given prior to the presentation of such Bankruptcy Court order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any of the property vested in accordance with the foregoing paragraph shall be conclusively deemed to have consented to the transfer, assignment, and vesting of such property to or in the Reorganized Debtors free and clear of all Liens, Claims, charges, or other encumbrances by failing to object to confirmation of the Plan, except as otherwise provided in the Plan. Notwithstanding any of the foregoing in this Article IV.D.6 of the Plan, no GUC Trust Assets shall vest in the Reorganized Debtors.

8.        Cancellation of Existing Securities and Agreements

On the Effective Date, all Interests shall be cancelled, released, discharged, and extinguished, and the Reorganized GGH Interests shall be issued pursuant to the Plan.  Except as otherwise provided in the Plan, on the Effective Date: (a) all Interests, and each certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest shall be cancelled or extinguished and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of, or Claims against or Interests in, the Debtors shall be released and discharged; *provided* that, notwithstanding the releases set forth in Article VIII of the Plan, Confirmation, or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of enabling Holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided herein; *provided*, *further*, absent the consent of the Debtors, nothing in this section shall effectuate a cancellation of any Reorganized GGH Interests, Intercompany Interests, or Intercompany Claims.

Notwithstanding anything to the contrary in this Article IV.D.7, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, a Debtor or its Interests, as

a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Article IV.D.7 shall be deemed null and void and shall be of no force and effect. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of a Debtor or any of its counterparties under any Executory Contract or Unexpired Lease to the extent such executory contract or unexpired lease has been assumed by such Debtor or Reorganized Debtor, as applicable, pursuant to the Plan or a Final Order of the Bankruptcy Court.

9. <u>Corporate Action</u>

Upon the Effective Date, all actions (whether to occur before, on, or after the Effective Date) contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (1) the issuance of the Reorganized GGH Interests; (2) appointment of the New Board and other directors and officers for Reorganized GGH and the other Reorganized Debtors; (3) implementation of the Restructuring, including the creation and funding of the GUC Trust; and (4) all other actions contemplated by the Plan. Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of Reorganized GGH and the other Reorganized Debtors, and any corporate action required by the Debtors, Reorganized GGH, or the other Reorganized Debtors in connection with the Plan (including any items listed in the first sentence of this paragraph) shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security Holders, directors, managers, or officers of the Debtors, Reorganized GGH, or the other Reorganized Debtors, as applicable. On or (as applicable) before the Effective Date, the appropriate directors, managers, officers, or other authorized persons of the Debtors, Reorganized GGH, or the other Reorganized Debtors shall be authorized and empowered to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the transactions contemplated by the Plan) in the name of and on behalf of Reorganized GGH and the other Reorganized Debtors to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.D.8 of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

10. <u>New Governance Documents</u>

To the extent required under the Plan or applicable non-bankruptcy law, Reorganized GGH and the other Reorganized Debtors, as applicable, will, on or as soon as practicable after the Effective Date, file their respective New Governance Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation. To the extent required by section 1123(a)(6) of the Bankruptcy Code, the New Governance Documents of the Reorganized Debtors will prohibit the issuance of non-voting equity securities. After the Effective Date, Reorganized GGH and the other Reorganized Debtors, as applicable, may amend and restate their respective New Governance Documents and other constituent documents, as permitted by the laws of their respective states, provinces, or countries of organization and their respective New Governance Documents.

On the Effective Date, the New Governance Documents, substantially in the forms set forth in the Plan Supplement, shall be deemed to be valid, binding, and enforceable in accordance with their terms and provisions.

11.   Directors and Officers of the Reorganized Debtors

As of the Effective Date, the term of the current members of the board of directors, board of managers, or other governing body of the Debtors shall expire automatically and each person serving as a director or manager of a Debtor shall be removed and shall be deemed to have resigned and cease to serve automatically, and the New Board and the officers of each of the Reorganized Debtors shall be appointed in accordance with the Plan, New Governance Documents, and other constituent documents of each Reorganized Debtor.   Additionally, each Person serving as an officer of a Debtor shall be removed and cease to serve automatically as of the Effective Date, and the initial officers of each Reorganized Debtor will be appointed pursuant to the Plan and the New Governance Documents.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will, to the extent known, disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial New Boards, as well as those Persons that will serve as an officer of Reorganized GGH or any of the other Reorganized Debtors. If any such director or officer is an "insider" as defined in section 101(31) of the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed to the extent required under the Bankruptcy Code. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Governance Documents and other constituent documents of Reorganized GGH and each of the other Reorganized Debtors.

12.   Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtors, the Reorganized Debtors' officers, and the members of the New Boards are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the Reorganized GGH Interests, in the name of and on behalf of Reorganized GGH or the other Reorganized Debtors, without the need for any approvals, authorization, or consents except those expressly required pursuant to the Plan.

13.   Exemption from Certain Taxes and Fees

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, (a) any issuance, transfer, or exchange of a Security (including of the Reorganized GGH Interests), (b) any creation of any Lien, mortgage, deed of trust, or other security interest, or (c) any transfer of property, in each case, pursuant to, in contemplation of, or in connection with, the Plan, including the transfer of any Assets to the GUC Trust, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any instruments of transfer or other relevant documents without the payment of any such tax, recordation fee, or governmental assessment.

14.    <u>Exemption from Registration Requirements</u>

The offering, issuance, and distribution of the Reorganized GGH Interests and any other Securities pursuant to Article III of the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without any further act or action by any Entity, from registration under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities.

The Reorganized GGH Interests and other Securities, if any, offered, issued, or distributed pursuant to section 1145 of the Bankruptcy Code (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any Holder thereof that (i) is not an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, (iii) has not acquired the Reorganized GGH Interests or Securities from an "affiliate" within one year of such transfer, and (iv) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code; *provided* that the foregoing clause (b) is subject to (x) compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (y) the restrictions, if any, on the transferability of such securities or instruments, including any restrictions on the transferability under the terms of the New Governance Documents; and (z) any other applicable regulatory approval. Under Rule 144(a)(1), an "affiliate" of Reorganized GGH is a person that directly or indirectly controls, or is controlled by, or is under common control with Reorganized GGH. If any recipients of Reorganized GGH Interests are Affiliates of Reorganized GGH, such recipients will receive restricted Reorganized GGH Interests or Securities that are subject to the non-holding period requirements of Rule 144, including volume limitations, current public information requirement, manner of sale requirements, and filing requirements.

The offer and sale of Equity Securities to directors, officers, and employees of the Reorganized Debtors pursuant to the MIP shall be effected without registration under section 5 of the Securities Act, and without registration under any applicable state securities or "blue sky" law, in reliance upon available exemptions from such registration requirements afforded by section 4(a)(2) of the Securities Act and Rule 506 of Regulation D and/or Rule 701 promulgated thereunder.

Notwithstanding anything to the contrary in the Plan, no Person shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including whether the Reorganized GGH Interests are exempt from registration and/or eligible for book-entry delivery, settlement, and depository services.

15.    <u>Preservation of Causes of Action</u>

In accordance with section 1123(b)(3) of the Bankruptcy Code, but subject in all respects to Article VIII, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. Notwithstanding the foregoing or anything to the contrary herein, all rights in any Avoidance Actions shall vest in the GUC Trust as of the Effective Date. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, including pursuant to Article VIII of the Plan, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.D.14 include any claim or Cause of Action with respect to, or against, a Released Party.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

16.    Director and Officer Liability Insurance

Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all D&O Liability Insurance Policies (including tail coverage liability insurance) pursuant to section 365(a) of the Bankruptcy Code, to the extent they are Executory Contracts. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of each of the D&O Liability Insurance Policies, to the extent they are Executory Contracts. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be Filed, and shall survive the Effective Date.

17.    Transfer of Control of Money Transmitter Licenses and Other Related Approvals

The Plan and the Confirmation Order shall provide the Debtors or the Reorganized Debtors, as applicable, with the requisite authority to proceed with any Transfer of Control

required under the Money Transmitter Licenses and any other requirements for similarly situated state and/or federal regulatory approvals.

E.      *The DCG Settlement*

        The treatment of the General Unsecured Claims under the Plan, together with the other terms and conditions set forth in the Plan and the Confirmation Order (including the releases set forth herein and in the Confirmation Order), reflects the proposed compromise and settlement pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code of all claims, causes of action, controversies, and disputes against any of the DCG Parties that relate to these Chapter 11 Cases.  The DCG Settlement includes the following material terms, conditions, and transactions:

        1.      Notice of the DCG Settlement Procedures

        The DCG Settlement Procedures are set forth in the Class 3 Election Notice and the Class 4 Election Notice.  DCG shall send the Class 3 Election Notice to the Holders of Institutional Unsecured Claims and Gemini shall send the Class 4 Election Notice to the Holders of Gemini Lender Unsecured Claims.

        2.      The DCG Contribution; Releases; Binding Effect

        The DCG Election Procedures provide, among other things, that all Holders of Allowed General Unsecured Claims are eligible to receive their Pro Rata share of the DCG Contribution provided that they elect to opt into the release and injunction provisions set forth in the Class 3 Election Notice or Class 4 Election Notice (as applicable) and below in this Article IV.E.  The DCG Settlement Procedures provide that any payment obligation of the DCG Parties to Holders on account of their General Unsecured Claims shall be governed solely by the Plan, and that DCG's payment of the DCG Contribution constitutes the full and final satisfaction of the amount each Holder is owed by the DCG Parties on account of such Holder's General Unsecured Claims.

        **Except as otherwise set forth in the Confirmation Order or the DCG Settlement Procedures, effective immediately upon the occurrence of the Effective Date, each Holder of General Unsecured Claims who elects to receive the DCG Consideration, and opts into the releases set forth in the DCG Election Notice, shall be deemed to release, remise, and forever discharge the DCG Parties of and from any and all debts, losses, demands, actions, Claims, Causes of Action, suits, accounts, covenants, contracts, agreements, claims, counterclaims, controversies, disputes, obligations, judgments, rights, damages, costs, losses, expenses, liens, or liabilities of any and every nature or description whatsoever, both at law or in equity, whether asserted or unasserted, express or implied, known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, that arose at any time before the Effective Date and arise out of or directly relate to the General Unsecured Claims of such Holder, or the transactions underlying or that otherwise gave rise to such General Unsecured Claims.**

        **Upon the occurrence of the Effective Date, except as otherwise set forth in the DCG Settlement Procedures, or to the extent that the Bankruptcy Court orders otherwise, the Holders of General Unsecured Claims and their respective affiliates and representatives**

shall be forever barred and enjoined from interfering with the implementation of this Plan or the DCG Settlement or taking any action against the DCG Parties or their property solely with respect to the DCG Settlement, any Claim or Cause of Action in any way related to the General Unsecured Claims, or the specific transactions underlying, or that otherwise gave rise to, the General Unsecured Claims or any portion thereof; *provided, however*, that nothing herein releases or waives the Debtors', the Reorganized Debtors', or the DCG Parties' obligations under the DCG Settlement.

F.      *The Gemini Settlement*

The treatment of the Gemini Lender Unsecured Claims under the Plan, together with the other terms and conditions set forth in the Plan and the Confirmation Order (including the releases set forth herein and in the Confirmation Order), reflects the proposed compromise and settlement pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code of all claims, causes of action, controversies, and disputes against any of the Gemini Parties that relate to these Chapter 11 Cases.  The Gemini Settlement includes the following material terms, conditions, and transactions:

1.      Notice of the Gemini Settlement Procedures

The Gemini Settlement Procedures are set forth in the Class 4 Election Notice.  Gemini shall send the Class 4 Election Notice to the Holders of Gemini Lender Unsecured Claims.

2.      The Gemini Contribution; Releases; Binding Effect

The Gemini Settlement Procedures provide, among other things, that all Holders of Gemini Lender Unsecured Claims are eligible to receive their Pro Rata share of the Gemini Contribution provided that they elect to opt into the release and injunction provisions set forth in the Class 4 Election Notice and below in this Article IV.F.  The Gemini Settlement Procedures provide that any payment obligation of the Gemini Parties to Holders on account of their Gemini Lender Unsecured Claims shall be governed solely by the Plan, and that Gemini's payment of the Gemini Contribution constitutes the full and final satisfaction of the amount each Holder is owed by the Gemini Parties on account of such Holder's Gemini Lender Unsecured Claims.

Except as otherwise set forth in the Confirmation Order or the Gemini Settlement Procedures, effective immediately upon the occurrence of the Effective Date, each Holder of Gemini Lender Unsecured Claims who elects to receive the Gemini Consideration, and opts into the releases set forth in the Gemini Settlement Procedures, shall be deemed to release, remise, and forever discharge the Gemini Parties of and from any and all debts, losses, demands, actions, Claims, Causes of Action, suits, accounts, covenants, contracts, agreements, claims, counterclaims, controversies, disputes, obligations, judgments, rights, damages, costs, losses, expenses, liens, or liabilities of any and every nature or description whatsoever, both at law or in equity, whether asserted or unasserted, express or implied, known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, that arose at any time before the Effective Date and arise out of or directly related to the Gemini Lender Unsecured Claims or the Gemini Earn Program.

**Upon the occurrence of the Effective Date, except as otherwise set forth in the Gemini Settlement Procedures, or to the extent that the Bankruptcy Court orders otherwise, the Holders of Gemini Lender Unsecured Claims and their respective affiliates and representatives shall be forever barred and enjoined from interfering with the implementation of this Plan or the Gemini Settlement or taking any action against the Gemini Parties or their property solely with respect to the Gemini Settlement, any Claim or Cause of Action in any way related to the Gemini Lender Unsecured Claims, or the specific transactions underlying, or that otherwise gave rise to, the Gemini Lender Unsecured Claims or any portion thereof; *provided, however*, that nothing herein releases or waives the Debtors', the Reorganized Debtors', or the Gemini Parties' obligations under the Gemini Settlement.**

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.  *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, whether or not an Equitization has occurred, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to assume, assume and assign, or reject Executory Contracts and Unexpired Leases, and all Executory Contracts or Unexpired Leases shall be rejected as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (i) is designated on a schedule of assumed contracts by a Successful Bidder; (ii) is designated on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement; (iii) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court; (iv) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (v) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date; or (vi) is subject to a motion to reject pursuant to which the requested effective date of such rejection is after the Effective Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's order approving the assumptions, assumptions and assignments, or rejections, as applicable, of Executory Contracts or Unexpired Leases as set forth in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court.  Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases at any time prior to the Effective Date on no less than seven days' notice to the applicable non-Debtor counterparties.

Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective

Date. Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court in accordance with the Bar Date Order. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Liquidation Trust, the GUC Trust, the Estates, or their property (as applicable), without the need for any objection by the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable), or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B–D of the Plan.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

***If an Equitization occurs***, any monetary defaults under an Executory Contract or Unexpired Lease, as reflected on the applicable Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the proposed cure amount (if any) in Cash by the Debtors or the Reorganized Debtors, as applicable, on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. At least fourteen (14) days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption and proposed cure amounts to the applicable third parties. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount paid or proposed to be paid by the Debtors or the Reorganized Debtors to such counterparty must be filed with the Bankruptcy Court and served on and actually received by the Debtors at least seven (7) days before the Confirmation Hearing. **Any counterparty that fails to timely object to the proposed assumption or proposed cure amount shall be deemed to have assented to such assumption and cure amount, and any such objection shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**

Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the amount set forth in the applicable Cure Notice or, if the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is determined by a Final Order to be greater than the applicable amount set forth in the Cure Notice,

the amount of such Allowed Cure Claim; *provided*, *however*, that following entry of a Final Order resolving any such dispute, the applicable Debtor or Reorganized Debtor shall have the right to reject any Executory Contract or Unexpired Lease within thirty (30) days of such resolution; *provided further, however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure Claim despite the failure of the relevant counterparty to file such request for payment of such Cure Claim. The Reorganized Debtors also may settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.

If there is any dispute regarding any Cure Claim, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the Cure Claim shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. Notwithstanding the foregoing, to the extent the dispute relates solely to any Cure Claims, the applicable Debtor may assume the Executory Contract or Unexpired Lease prior to the resolution of any such dispute; *provided*, *however*, that the Debtor reserves Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure Claim by the contract counterparty; *provided further, however*, that following entry of a Final Order resolving any such dispute, the applicable Debtor or Reorganized Debtor shall have the right to reject any Executory Contract or Unexpired Lease within thirty (30) days of such resolution.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy or insolvency-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Indemnification Obligations*

The Indemnification Obligations shall not be discharged or Impaired by Confirmation of the Plan, and the Indemnification Obligations shall be deemed and treated as Executory Contracts assumed by the Debtors under the Plan, and shall continue as obligations of the Reorganized Debtors; *provided*, *however*, that the Reorganized Debtors shall not indemnify directors or officers of the Debtors for any Claims or Causes of Action arising out of or relating to any act or omission that constitutes knowing and intentional fraud, gross negligence, or willful misconduct.

E.      *Insurance Policies*

1.      If an Equitization Does Not Occur

***If an Equitization does not occur***, then to the extent that any of the Debtors' insurance policies constitute Executory Contracts, such insurance policies (including all D&O Liability

Insurance Policies) and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan and shall be assumed by the Liquidation Trust on the Effective Date, and all other insurance policies shall vest in the Liquidation Trust.

2.    If an Equitization Occurs

*If an Equitization occurs*, then to the extent any of the Debtors' insurance policies constitute Executory Contracts, such insurance policies (including all D&O Liability Insurance Policies) and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan and shall be assumed by the respective Reorganized Debtors on the Effective Date. All other insurance policies shall vest in the Reorganized Debtors.

F.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed or assumed and assigned shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.    *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor or the Liquidation Trustee or the GUC Trust Trustee (as applicable) has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, or, after the Effective Date, the Reorganized Debtors or the Liquidation Trustee (as applicable) shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.    *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim, including any portion of a Claim that is an Allowed Claim notwithstanding that other portions of such Claim are a Disputed Claim, shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.    *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors or the Liquidation Trust (as applicable).  For the avoidance of doubt, *if an Equitization does not occur*, then notwithstanding anything to the contrary in the Plan, all distributions shall be made by the Liquidation Trustee or the GUC Trust Trustee (as applicable) pursuant to the terms of the Plan, the Confirmation Order, the Liquidation Trust Agreement, and the GUC Trust Agreement

a.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

b.    Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date, and any reasonable and documented compensation and expense reimbursement claims (including reasonable and documented attorney fees and expenses) made by the Disbursing Agent, shall be

paid in Cash by the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable).

      c.      No Liability

Except on account of gross negligence, fraud, or willful misconduct, the Disbursing Agent shall have no (a) liability to any party for actions taken in accordance with the Plan or in reliance upon information provided to it in accordance with the Plan or (b) obligation or liability to any party who does not hold a Claim against the Debtors as of the Distribution Record Date or any other date on which a distribution is made or who does not otherwise comply with the terms of the Plan.

C.     *Delivery of Distributions and Undeliverable or Unclaimed Property*

    1.    <u>Delivery of Distributions</u>

      a.      Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims and Interests maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims and Interests. The Disbursing Agent shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

      b.      Delivery of Distributions in General

Except as otherwise provided in the Plan (including in the next paragraph), the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable).

      c.      Delivery of Distributions on Gemini Lender Unsecured Claims.

Gemini shall be deemed to be the Holder of all Gemini Lender Claims for purposes of distributions to be made hereunder, and all distributions on account of such Allowed Claims shall be made to Gemini and held in trust in a segregated account for the benefit of the Holders of Allowed Gemini Lender Unsecured Claims. As soon as practicable following compliance with the requirements set forth in Article VI of the Plan, Gemini shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of Allowed Gemini Lender Unsecured Claims, subject to any modifications to such distributions in accordance with the terms of the Plan.

      d.      Minimum Distributions

No Distribution shall be made by the Disbursing Agent on account of an Allowed Claim if the amount to be distributed to the Holder of such Claim on the applicable Distribution Date has an economic value of less than $250.

No fractional shares of Reorganized GGH Interests shall be distributed, no Cash shall be distributed in lieu of such fractional amounts, and such fractional amounts shall be deemed to be zero. When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of Reorganized GGH Interests that is not a whole number, the actual distribution of Reorganized GGH Interests shall be rounded as follows: (a) fractions of greater than one-half shall be rounded to the next higher whole number and (b) fractions of one-half or less shall be rounded to the next lower whole number with no further payment thereto. The total number of authorized Reorganized GGH Interests to be distributed to Holders may (at the Debtors' discretion) be adjusted as necessary to account for the foregoing rounding.

2.  <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee, as applicable, shall have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided that* such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall be redistributed Pro Rata (it being understood that, for purposes of this Article VI.C, "Pro Rata" shall be determined as if the Claim underlying such unclaimed distribution had been Disallowed) without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

D.  *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors, the Reorganized Debtors, the Liquidation Trustee, the Disbursing Agent, the GUC Trust Trustee, and any applicable withholding agent shall comply with all applicable tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions until receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. All Persons holding Claims against any Debtor shall be required to provide any additional information reasonably necessary for the Debtors, the Reorganized Debtors, the Liquidation Trustee, the Disbursing Agent, the GUC Trust Trustee, and any applicable withholding agent to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, including an IRS Form W-8 or W-9, as applicable, and any other applicable tax forms. The Debtors, the Reorganized Debtors, the Liquidation Trustee, the Disbursing Agent, and the GUC Trust Trustee (as applicable) reserve the right to allocate all distributions made under the Plan in a manner that complies with all other legal requirements, such as applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received

by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

E.      *Foreign Currency Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in government issued currency (for the avoidance of doubt, not including any Digital Assets) other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

F.      *Digital Asset Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in a Digital Asset shall be automatically deemed converted to the equivalent U.S. dollar value using the price of such Digital Asset as of [●] (prevailing Eastern time) on the Petition Date.

G.      *Surrender of Cancelled Instruments or Securities*

As a condition precedent to receiving any distribution on account of its Allowed Claim, each Holder of a Claim shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentation shall be deemed to be cancelled pursuant to Article IV of the Plan, except to the extent otherwise provided in the Plan.

H.      *Allocations*

The aggregate consideration to be distributed to each Holder of an Allowed Claim will be allocated first to the principal amount of such Allowed Claim, with any excess allocated to unpaid interest that accrued on such Allowed Claims, if any.

I.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.

J.      *Setoffs and Recoupment*

The Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) may, but shall not be required to, set off against, or recoup from, any Allowed Claim against a Debtor of any nature whatsoever that the applicable Debtor, Reorganized Debtor, Liquidation Trustee, or GUC Trust Trustee (as applicable) may have against the Holder of such

Claim, but neither the failure to do so nor the allowance of any Claim against a Debtor hereunder shall constitute a waiver or release by the applicable Debtor, Reorganized Debtor, Liquidation Trustee, or GUC Trust Trustee (as applicable) of any such Claim it may have against the Holder of such Allowed Claim.

K.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

The Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable), shall reduce in full an Allowed Claim, and such Claim shall be Disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, a Reorganized Debtor, the Liquidation Trustee, or the GUC Trust Trustee (as applicable); *provided that* the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) shall provide 21 days' notice to the Holder prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a party that is not a Debtor, a Reorganized Debtor, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the Petition Date. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.    Claims Payable by Insurers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged to the extent of any agreed upon satisfaction without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any insurers under any policies of insurance, nor shall anything contained herein

constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.     *Allowance of Claims*

On or after the Effective Date, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim immediately prior to the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim. All settlements of Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019, or otherwise shall be binding on all parties.

Unless relating to a Claim that is expressly Allowed pursuant to the Plan, all Proofs of Claim filed in these Chapter 11 Cases shall be considered objected to and Disputed without further action by the Debtors. Upon the Effective Date, all Proofs of Claim filed against the Debtors, regardless of the time of filing, and including Proofs of Claim filed after the Effective Date, shall be deemed withdrawn and expunged, other than as provided below. Notwithstanding anything in this Plan to the contrary, (1) Claims against the Debtors that result from the Debtors' rejection of an Executory Contract or Unexpired Lease, (2) Claims filed to dispute the amount of any proposed Cure pursuant to section 365 of the Bankruptcy Code, and (3) Claims that the Debtors seek to have determined by the Bankruptcy Court shall in all cases be determined by the Bankruptcy Court, if not otherwise resolved through settlement with the applicable claimant.

B.     *Claims and Interests Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable), by order of the Bankruptcy Court, shall together have the sole authority to: (1) File, withdraw, or litigate to judgment objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  In any action or proceeding to determine the existence, validity, or amount of any Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such Claim are preserved as if the Chapter 11 Cases had not been commenced.

C.    *Estimation of Claims*

Before or after the Effective Date, the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.    *Adjustment to Claims or Interests Without Objection*

Any duplicate Claim or Interest, any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded may be adjusted or expunged on the Claims Register without the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Time to File Objections to Claims*

Any objections to Claims, which, prior to the Effective Date, may be Filed by any party, shall be Filed on or before the Claims Objection Deadline.

F.    *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the GUC Trust Trustee (as applicable).

**ANY CLAIM THAT HAS BEEN LISTED IN THE SCHEDULES AS DISPUTED, CONTINGENT, OR UNLIQUIDATED, AND FOR WHICH NO PROOF OF CLAIM HAS**

**BEEN TIMELY FILED, SHALL BE DEEMED DISALLOWED AND SHALL BE EXPUNGED WITHOUT FURTHER ACTION AND WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE BANKRUPTCY COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

G.      *Amendments to Claims*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

H.      *No Distributions Pending Allowance*

Notwithstanding any other provision of this Plan to the contrary, no payment or distribution of any kind or nature provided under the Plan shall be made to the extent that all or any portion of any Claim is a Disputed Claim, including if an objection to a Claim or portion thereof is Filed as set forth in Article VII, unless and until such Disputed Claim becomes an Allowed Claim; *provided* that any portion of a Claim that is an Allowed Claim shall receive the payment or distribution provided under the Plan thereon notwithstanding that any other portion of such Claim is a Disputed Claim.

I.      *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100% of such Allowed Claim.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, which distributions, releases, and other benefits shall be irrevocable and not subject to challenge

upon the Effective Date, the provisions of the Plan, and the distributions, releases, and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

## B.    *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and the Plan Supplement, or in any contract, instrument, or other agreement or document created pursuant to the Plan and the Plan Supplement, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors or the Liquidation Trustee, as applicable), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

## C.    *Term of Injunctions or Stays*

Unless otherwise provided herein, the Confirmation Order, or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full

force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

D.    *Release of Liens*

**Except as otherwise specifically provided in the Plan, the Plan Supplement, or in any other contract, instrument, agreement, or document created pursuant to the Plan or Plan Supplement, on the Effective Date and concurrently with the applicable distributions or other treatment made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Liquidation Trust, the GUC Trust, or the Reorganized Debtors (as applicable), and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable).**

From and after the Effective Date, any Holder of a Secured Claim (and the applicable agents for such Holder) secured by Liens or security interests which are to be released under this Plan shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested to give effect to the Plan by the Reorganized Debtors or the Liquidation Trustee (as applicable) and to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.  To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Reorganized Debtors or the Liquidation Trustee (as applicable) that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests in accordance with the Plan, and the Reorganized Debtors or the Liquidation Trustee (as applicable) shall be entitled to make any such filings or recordings on such Holder's behalf.

E.    *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is hereby released and discharged by the Debtors, their Estates, and the Reorganized Debtors (as applicable) from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter**

arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors (as applicable), that such Person or its estate, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Reorganized Debtors, their Estates, the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the MIP, any Asset Sale, the related agreements, instruments, and other documents (including the Definitive Documents), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Sales Process, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan and the Sales Process, including the issuance or distribution of any property pursuant to the Plan and the Sales Process, the Definitive Documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.E do not release any post-Effective Date obligations of any party or Entity under the Plan, including any such obligations created in connection with the Restructuring; (ii) nothing in this Article VIII.E shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct; and (iii) nothing in this Article VIII.E shall, nor shall it be deemed to, release any Retained Causes of Action or any claims or Causes of Action against the DCG Parties or the Gemini Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to such releases.

F.  *Releases by Releasing Parties*

As of the Effective Date, each Releasing Party hereby releases and discharges each Debtor, Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, that such Releasing Party or its estate, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Reorganized Debtors, their Estates, the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the MIP, any Asset Sale, the related agreements, instruments, and other documents (including the Definitive Documents), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Sales Process, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan and the Sales Process, including the issuance or distribution of any property pursuant to the Plan and the Sales Process, the Definitive Documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that except as expressly provided under the Plan, the foregoing releases shall not release obligations of the Debtors on account of any Allowed Claims that are treated under the Plan or obligations otherwise arising under any contract, agreement, or other business arrangement between any non-Debtor Releasing Party and any non-Debtor Released Party. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.F do not release any post-Effective Date obligations of any party or Entity under the Plan, including any such obligations created in connection with the Restructuring; and (ii) nothing in this Article VIII.F shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.  For the avoidance of doubt, nothing in this Article VIII.F shall, nor shall it be deemed to, release any Retained Causes of Action or any claims or Causes of Action against the DCG Parties or the Gemini Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such releases.

G.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan, the Plan Supplement, the MIP, any Asset Sale, or the related agreements, instruments, and other documents (including the Definitive Documents), the solicitation of votes with respect to the Plan, or the Restructuring, or any related contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the MIP, the related agreements, instruments, and other documents (including the Definitive Documents), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Sales Process, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan and the Sales Process, including the issuance of or distribution of any property pursuant to the Plan and the Sales Process, the related agreements, instruments, and other documents (including the Definitive Documents), or upon any other act or omission, the transaction, agreement, event, or other occurrence taking place on or before the Effective Date related to the foregoing, except for claims related to any act or omission that is determined in a Final Order to have constituted fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Confirmation Order shall provide that the Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  For the avoidance of doubt, nothing in this Article VIII.G shall, nor shall it be deemed to,

exculpate any Exculpated Party from any Retained Causes of Action or any claims or Causes of Action against the DCG Parties or the Gemini Parties.

H.    *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.

I.    *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or the Liquidation Trustee (as applicable) or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors or the Liquidation Trustee (as applicable), or another Entity with whom the Reorganized Debtors or the Liquidation Trustee (as applicable) have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.     *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable), unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.     *Subordination Rights*

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

L.     *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

M.     *Document Retention.*

On and after the Effective Date, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee (as applicable) may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors, the Liquidation Trustee ,or the GUC Trust Trustee (as applicable).

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.     *Conditions Precedent to the Effective Date*

It shall be a condition to the occurrence of the Effective Date that the following conditions, as determined by the Debtors, shall have been satisfied (or waived pursuant to the provisions of Article IX.B of the Plan):

1.     the Confirmation Order shall have been entered and the Confirmation Order shall not have been stayed, modified, or vacated on appeal;

2.      the Asset Sale (if any) shall have closed and the transactions contemplated thereby shall have been consummated in accordance with the terms of the applicable asset purchase agreements;

3.      *if an Equitization occurs*, the New Governance Documents, the effectiveness of which requires filing with the Secretary of State of any jurisdiction, shall have been duly filed with the applicable authorities in the relevant jurisdictions;

4.      all other Definitive Documents shall have been effected or be executed and delivered in accordance with the terms of the Plan;

5.      *if an Equitization occurs*, all conditions precedent to the issuance of the Reorganized GGH Interests, other than any conditions related to the occurrence of the Effective Date, shall have occurred;

6.      all required governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions provided for in the Plan shall have been obtained, shall not be subject to unfulfilled conditions, and shall be in full force and effect, and all applicable waiting periods shall have expired without any action having been taken by any competent authority that would restrain or prevent such transactions;

7.      all documents and agreements necessary to implement the Plan and the Restructuring shall have been (a) tendered for delivery and (b) effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements (other than any conditions related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements;

8.      the GUC Trust shall have been created and funded in accordance with the Plan;

9.      the Claims Reserve shall have been funded in an amount equal to the Claims Reserve Amount; and

10.     the Professional Fee Escrow Account shall have been funded with Cash in an amount equal to the Professional Fee Reserve Amount.

B.      *Waiver of Conditions*

The Debtors may waive any of the conditions precedent to the Effective Date of the Plan set forth in Article IX.A at any time, without any notice to any other parties in interest, any further notice, leave, or order of the Bankruptcy Court, or any formal action other than proceedings to confirm or consummate the Plan.

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.    *Effect of Non-Occurrence of Conditions to the Confirmation Date or the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors or any other Entity; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect; or (4) be used by the Debtors or any Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments, or claims.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

Subject to the limitations contained herein, the Debtors reserve the right to alter, amend, or modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and the restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

B.    *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan with respect to any or all Debtors prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation do not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity; or (iv) be used by the Debtors or any

other Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments, or claims.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1. Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured, unsecured, or subordinated status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections relating to any of the foregoing;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to Holders of Allowed Claims or Interests are accomplished pursuant to the provisions of the Plan;

5. consider any modifications of the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in each case, to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into, delivered, or created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

6. adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

7. adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor;

8. adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code;

9.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

10.     enter and enforce any order for the sale of property pursuant to sections 363 or 1123 of the Bankruptcy Code;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

12.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII of the Plan;

15.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

17.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

18.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine matters concerning state, local, and U.S. federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     hear and determine matters concerning section 1145 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute or matter involving the GUC Trust or relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

22.     enforce all orders previously entered by the Bankruptcy Court;

23. enter an order concluding or closing the Chapter 11 Cases;

24. enforce the injunction, release, and exculpation provisions set forth in Article VIII of the Plan; and

25. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect*

Subject to Article IX.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Reorganized Debtors, as applicable, and any and all Holders of Claims or Interests (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B. *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Reorganized Debtors, the Liquidation Trustee, or GUC Trust Trustee, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C. *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect unless the Effective Date occurs. Prior to the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests.

D. *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor,

administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.  *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors, the Reorganized Debtors, the Liquidation Trustee, or the GUC Trust Trustee, as applicable, shall be served on:

| Debtors or the Reorganized Debtors | **Genesis Global Holdco, LLC**<br>250 Park Avenue South, 5th Floor<br>New York, NY 10003<br>Attn:  A. Derar Islim |
|---|---|
| Attorneys to the Debtors | **Cleary Gottlieb Steen & Hamilton LLP**<br>One Liberty Plaza<br>New York, NY 10006<br>Attn:  Sean A. O'Neal<br>Jane VanLare |
| Liquidation Trustee | [●] |
| GUC Trust Trustee | [●] |

F.  *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.  *Entire Agreement*

Except as otherwise indicated, on the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.  *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors'

counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://restructuring.ra.kroll.com/genesis/ or the Bankruptcy Court's website at https://www.nysb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted. Notwithstanding any such alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

J.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities (if any) offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals nor the Reorganized Debtors or Liquidation Trustee (as applicable) will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities (if any) offered and sold under the Plan and any previous plan.

K.      *Request for Expedited Determination of Taxes*

The Debtors, the Reorganized Debtors, or the Liquidation Trustee, as the case may be, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

L.      *Closing of Chapter 11 Cases*

The Reorganized Debtors or the Liquidation Trustee (as applicable) shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

M.    *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

N.    *Waiver or Estoppel*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement or the Debtors,' Reorganized Debtors', the Liquidation Trustee's, or the GUC Trust Trustee's (as applicable) right to enter into settlements was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court or the Noticing and Claims Agent prior to the Confirmation Date.

O.    *Dissolution of the Committee*

On the Effective Date, the Committee and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof (solely in their capacities as such) shall be released and discharged from all rights, duties, and responsibilities arising from, or related to, the Chapter 11 Cases; *provided*, *however*, that the Committee shall continue to exist and its Professionals shall continue to be retained without further order of the Court with respect to (1) the preparation and prosecution of any final fee applications of the Committee's Professionals and (2) all final fee applications Filed with the Bankruptcy Court.

\* \* \* \*

Respectfully submitted, as of the date first set forth below,

Dated:     January 20, 2023
            Park City, Utah

                            GENESIS GLOBAL HOLDCO, LLC
                            on behalf of itself and all other Debtors


                            */s/ Paul Aronzon*
                            Paul Aronzon
                            Member of the Special Committee

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------------------------- X - | : | |
| *In re* | : | Chapter 11 |
| | : | |
| Genesis Global Holdco, LLC, | : | Case No. 23-10063 |
| | : | |
| Debtor. | : | |
| | : | |
| Tax I.D. No. 38-4058219 | : | |
| ------------------------------------------------------------- X - | : | |
| *In re* | : | Chapter 11 |
| | : | |
| Genesis Global Capital, LLC, | : | Case No. 23-10064 |
| | : | |
| Debtor. | : | |
| | : | |
| Tax I.D. No. 37-1878564 | : | |
| ------------------------------------------------------------- X | : | |
| *In re* | : | Chapter 11 |
| | : | |
| Genesis Asia Pacific Pte. Ltd. | : | Case No. 23-10065 |
| | : | |
| Debtor. | : | |
| | : | |
| Tax I.D. 202002164R (Singapore UEN) | : | |
| ------------------------------------------------------------- X | | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**DIRECTING JOINT ADMINISTRATION OF THEIR CHAPTER 11 CASES**
**("JOINT ADMINISTRATION MOTION")**

Genesis Global Holdco, LLC ("Holdco") and its above-captioned debtors and debtors-in-possession (collectively, the "Debtors" and these cases, the "Chapter 11 Cases") hereby file this motion (the "Motion"), seeking entry of an order substantially in the form attached hereto as Exhibit A, directing joint administration and procedural consolidation of their related Chapter 11 Cases and granting the Debtors such other and further relief as the Court deems just and proper. A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' Chapter 11 Cases (as defined herein), is set forth in the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations") [1], filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C.

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the First Day Declarations.

§§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105(a) and 342 of the Bankruptcy Code, rule 105(b) of the Federal Rules of Bankruptcy Procedure and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## BACKGROUND

2.      Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency. The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

3.      Over the past few months, the digital asset industry has experienced tremendous dislocation. The collapse of LUNA and TerraUSD and subsequent liquidation of 3AC signalled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies. As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022. Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed for Chapter 11 bankruptcy proceedings.

4.      These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business. This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's available liquidity. As a result of the unprecedented number and size of the loan calls, on

November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders.

5.     Over the past two months, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups to explore strategic solutions. In addition, the Debtors have undertaken cost-saving and liquidity-preserving measures. As a result of those efforts, the Debtors have determined that an in-court process is the best path to continue their efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

6.     On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date"). The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' Chapter 11 Cases.

7.     Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

8.     While the Company's discussions with advisors to various creditor groups and DCG have been very productive in narrowing issues, they have not yet achieved a global resolution. Accordingly, the Debtors commenced the Chapter 11 Cases to continue their efforts towards a consensual resolution through a transparent, court supervised process. To that end, the Debtors are concurrently filing a proposed plan of reorganization, which will be amended as necessary to reflect the results of our continued negotiations.

**RELIEF REQUESTED**

9.     By this Motion, the Debtors seek entry of an order directing joint administration of the Chapter 11 Cases for procedural purposes only. Specifically, the Debtors request that the Court

maintain one file, one docket and one service list for all of the Chapter 11 Cases under the case of Genesis Global Holdco, LLC, and that the Chapter 11 Cases be administered under the following caption:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 |
| Debtors. | Jointly Administered |

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

10.     The Debtors further request that the Court order that the foregoing caption satisfies the requirements set forth in section 342(c)(1) of the Bankruptcy Code.

**BASIS FOR RELIEF**

11.     Bankruptcy Rule 1015(b) provides, in pertinent part, that "[i]f . . . two or more petitions are pending in the same court by . . . a debtor and an affiliate, the court may order a joint administration of the estates." Fed. R. Bankr. P. 1015(b).

12.     Joint administration is generally non-controversial, and courts in this district routinely order joint administration in multiple related cases.  *See*, *e.g.*, Order, *In re LATAM Airlines Grp. S.A.*, Case No. 20-11254 (JLG) (Bankr. S.D.N.Y. May 27, 2020), ECF No. 34; Order, *In re Centric Brands Inc.*, Case No. 20-22637 (SHL) (Bankr. S.D.N.Y. May 20, 2020), ECF No.

54; Order, *In re Sears Holding Corp.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Oct. 16, 2018), ECF No. 118.[2]

13.      The relief requested herein is warranted.  First, the Debtors are "affiliates," as that term is defined under section 101(2) of the Bankruptcy Code, and each Debtor's chapter 11 case is pending in this Court.  Thus, the conditions set forth in Bankruptcy Rule 1015(b) for joint administration of the Chapter 11 Cases are satisfied.  Second, the First Day Declarations support this Motion and establish that the joint administration of the Chapter 11 Cases is warranted and will ease the administrative burden for the Court and the parties in interest.  As set forth in the First Day Declarations, the Debtors are affiliates, and their operations are largely interrelated or shared.

14.      Moreover, many of the motions, hearings and orders that will arise in the Chapter 11 Cases will affect each and every Debtor.  Joint administration of the Chapter 11 Cases will reduce parties' fees and costs by avoiding duplicative filings and objections and will make the most efficient use of the Court's valuable resources.  Joint administration also will allow the Office of the United States Trustee for Region 2 (the "U.S. Trustee") and all parties in interest to monitor the Chapter 11 Cases with greater ease and efficiency.  Finally, joint administration will not adversely affect the Debtors' respective constituencies because the relief requested herein is for procedural purposes only.  No party in interest will be prejudiced by the joint administration of the Chapter 11 Cases.  Rather, parties in interest will benefit from the cost reductions associated with the joint administration of the Chapter 11 Cases.  Accordingly, the Debtors submit that the joint administration of the Chapter 11 Cases is in the best interests of their estates, their creditors and all other parties in interest.

---

[2]      Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion.  Copies of these orders are available upon request of the Debtors' proposed counsel.

## NOTICE

15.     Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iii) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; and (vi) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

16.     No prior motion for the relief requested herein has been made to this or any other court.

*[The remainder of this page is left intentionally blank]*

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, and (b) grant such other and further relief as is just and proper.

Dated:    January 20, 2023
          New York, New York

*/s/ Sean A. O'Neal*      
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors and
Debtors-in-Possession*

# EXHIBIT A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------- X
-                                                           :
In re                                                       :      Chapter 11
                                                            :
Genesis Global Holdco, LLC,                                 :      Case No. 23-10063
                                                            :
                              Debtor.                       :
                                                            :
Tax I.D. No. 38-4058219                                     :
----------------------------------------------------------- X
-                                                           :
In re                                                       :      Chapter 11
                                                            :
Genesis Global Capital, LLC,                                :      Case No. 23-10064
                                                            :
                              Debtor.                       :
                                                            :
Tax I.D. No. 37-1878564                                     :
----------------------------------------------------------- X
                                                            :
In re                                                       :      Chapter 11
                                                            :
Genesis Asia Pacific Pte. Ltd.                              :      Case No. 23-10065
                                                            :
                              Debtor.                       :
                                                            :
Tax I.D. 202002164R (Singapore UEN)                         :
----------------------------------------------------------- X
```

## ORDER DIRECTING JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES

## ("JOINT ADMINISTRATION ORDER")

Upon the motion (the "Motion")[1] of Genesis Global Holdco, LLC ("Holdco") and

its affiliates, as debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"), for entry of an order directing the joint administration of the Debtors' related chapter

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

11 cases, as more fully described in the Motion; and upon the First Day Declarations, filed concurrently with the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      The above-captioned Chapter 11 Cases are consolidated for procedural purposes only and shall be jointly administered by the Court under Case No. 23-10063.

3.      The caption of the jointly administered cases shall read as follows:

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 |
| Debtors. | Jointly Administered |

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

4.     The foregoing caption satisfies the requirements set forth in section 342(c)(1) of the Bankruptcy Code.

5.     A docket entry shall be made in each of the above-captioned cases substantially as follows: "An order has been entered in this case directing the procedural consolidation and joint administration of the Chapter 11 Cases commenced by Genesis Global Holdco, LLC. The docket in Case No. 23-10063 should be consulted for all matters affecting the above listed cases.

6.     The Debtors shall maintain, and the Clerk of the United States Bankruptcy Court for the Southern District of New York shall keep, one consolidated docket, one file and one consolidated service list.

7.     The Debtors shall file their monthly operating reports required by the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees*, issued by the U.S. Trustee, in accordance with the applicable Instructions for UST Form 11-MOR: Monthly Operating Report and Supporting Documentation.

8.     Nothing contained in the Motion or this Order shall be deemed or construed as directing or otherwise effecting a substantive consolidation of the Chapter 11 Cases.

3

9. To the extent that any affiliates of the Debtors subsequently commence Chapter 11 cases, the relief granted pursuant to this Order shall apply to such debtors and their respective estates, provided, however, that the Debtors shall file notice with the Court identifying the cases of such affiliates and stating that this Order shall apply to such cases.

10. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

11. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____          _____
       New York, New York             United States Bankruptcy Judge

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (____) |
| Debtors. | Joint Administration Pending |

**DEBTORS' MOTION PURSUANT TO SECTION 1505**
**OF THE BANKRUPTCY CODE FOR AUTHORIZATION OF GENESIS ASIA PACIFIC**
**PTE LTD. TO ACT AS THE FOREIGN REPRESENTATIVE OF THE DEBTORS**

Genesis Asia Pacific Pte. Ltd. ("GAP") and certain of its affiliated debtors and

debtors-in-possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for

entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"),

authorizing GAP to take the following actions: (i) act as the foreign representatives of the Debtors

in Singapore; (ii) seek recognition by (A) the Singapore High Court, and (B) any other court where

recognition is deemed appropriate (the "Additional Courts" and, together with the Singapore High

Court, the "Foreign Courts") of the Chapter 11 Cases (as defined below) and of certain orders of

the Court made from time to time in the Chapter 11 Cases; (iii) request that the Foreign Courts

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are:  Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

lend assistance to this Court; and (iv) seek any other appropriate relief from the Foreign Courts that the Debtors deem just and proper. In support of this Motion, the Debtors rely on the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration"). In further support of this Motion, the Debtors respectfully represent as follows:

## BACKGROUND

1. Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency. The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

2. Over the past few months, the digital asset industry has experienced tremendous dislocation. The collapse of LUNA and TerraUSD and subsequent liquidation of 3AC signalled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies. As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022. Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed for Chapter 11 proceedings.

3. These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business. This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's available liquidity. As a result of the unprecedented number and size of the loan calls, on

November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders.

4. Over the past two months, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups to explore strategic solutions. In addition, the Debtors have undertaken cost-saving and liquidity-preserving measures. As a result of those efforts, the Debtors have determined that an in-court process is the best path to continue their efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

5. On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date"). The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' Chapter 11 Cases

6. Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration") and the Leto Declaration (along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations")[2] filed pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure and Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York.

---

[2] Capitalized terms not defined herein have the meaning ascribed to them in the First Day Declarations.

7.     While the Company's discussions with advisors to various creditor groups and DCG have been very productive in narrowing issues, they have not yet achieved a global resolution.  Accordingly, the Debtors commenced the Chapter 11 Cases to continue their efforts towards a consensual resolution through a transparent, court supervised process.  To that end, the Debtors are concurrently filing a proposed plan of reorganization, which will be amended as necessary to reflect the results of our continued negotiations.

## JURISDICTION

8.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

## RELIEF REQUESTED

9.     By this Motion, GAP seeks authorization, pursuant to section 1505 of Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), to take the following actions: (i) act as the foreign representative of the Debtors, including within the meaning of Article 2(i) of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 of the Republic of Singapore or any other applicable laws of Singapore; (ii) seek recognition by the Foreign Courts of the Chapter 11 Cases and of certain of the orders made by the Court in the Chapter 11 Cases from time to time; (iii) request that the Foreign Courts lend assistance to this Court, including but not limited to relief under Articles 19 to 21 of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 of the Republic of Singapore or any other applicable laws of Singapore; and (iv) seek any other appropriate relief from the Foreign Court that is just and proper.

## BASIS FOR RELIEF REQUESTED

10.     Section 1505 of the Bankruptcy Code allows a debtor-in-possession to obtain a court order recognizing the debtor-in-possession as the foreign representative of the debtor's estate, in order to submit a petition to a foreign court requesting recognition of the debtor's chapter 11 case.  Specifically, section 1505 of the Bankruptcy Code provides:

> A trustee or another entity (including an examiner) may be authorized by the court to act in a foreign country on behalf of an estate created under section 541. An entity authorized to act under this section may act in any way permitted by the applicable foreign law.

11 U.S.C. § 1505.  Section 1505 only applies to cases filed under chapters other than chapter 15 of the Bankruptcy Code because a chapter 15 case does not create an estate under section 541.  For chapter 11 cases, authority to act as a foreign representative may be granted to the debtor-in-possession because a "trustee," as defined by section 1502(6) of the Bankruptcy Code, "includes. . . a debtor-in-possession in a case under any chapter of this title."  11 U.S.C. § 1502(6); *see also* Order, *In re Voyager Digital Holdings Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 8, 2022), ECF No. 52 (appointing Voyager Digital Ltd. as foreign representative); Order, *In re LATAM Airlines Group S.A.*, No. 20-11254 (JLG) (Bankr. S.D.N.Y. May 28, 2020), ECF No. 52 (appointing LATAM Airlines Group S.A. as foreign representative); Order, *In re U.S. Steel Canada*, No. 17-11519 (MG) (Bankr. S.D.N.Y. June 29, 2017), ECF No. 12 (appointing U.S. Steel Canada Inc. as foreign representative); Order, *In re Alto Maipo Delaware LLC*, No. 21-11507 (KBO) (Bankr. D. Del. November 17, 2021), ECF No. 55 (appointing Alto Maipo SpA as foreign representative); Order, *In re Modular Space Holdings, Inc.*, No. 16-12825 (KJC) (Bankr. D. Del. Dec. 22, 2016), ECF No. 68 (appointing Modular Space Corporation as foreign representative).

11.     The purpose of section 1505 is to allow a debtor to petition a foreign court for recognition of its chapter 11 case, and to request that the foreign court cooperate with and lend

assistance to the debtor and the United States Bankruptcy Court in meeting the objectives of both chapter 15 of the Bankruptcy Code and the Model Law on Cross-Border Insolvency (the "Model Law"), adopted by the United Nations Commission on International Trade Law ("UNCITRAL") in 1997, on which chapter 15 is based. These objectives are stated in section 1501 of the Bankruptcy Code:

> (a)    The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
>
> (1)    cooperation between—
>
> (A)    courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>
> (B)    the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> (2)    greater legal certainty for trade and investment;
>
> (3)    fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4)    protection and maximization of the value of the debtor's assets; and
>
> (5)    facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501.[3] Thus, the authority sought by a debtor under section 1505 is specific to seeking recognition of the debtor's chapter 11 case and fostering cooperation between the bankruptcy court and foreign courts.

---

[3]    The preamble of the Model Law on Cross-Border Insolvency is virtually identical.

The purpose of this Law is to provide effective mechanisms for dealing with cases of cross-border insolvency so as to promote the objectives of:

> (a) Cooperation between the courts and other competent authorities of this State and foreign States involved in cases of cross-border insolvency;
>
> (b) Greater legal certainty for trade and investment;

12.     An explicit grant of authority to act as the foreign representative is meant to facilitate the process of petitioning for recognition in a foreign court.  For this reason, Article 5 of the Model Law provides that the person or body administering a reorganization or liquidation in a country that has enacted the Model Law (an "<u>Enacting State</u>") "is authorized to act in a foreign State on behalf of a proceeding under . . . as permitted by the applicable foreign law."  Model Law, Art. 5.  The Guide to Enactment and Interpretation of the UNCITRAL Model Law explains that:

> The lack of such authorization in some States has proved to be an obstacle to effective international cooperation in cross-border cases.  An enacting State in which administrators are already equipped to act as foreign representatives may decide to forgo inclusion of article 5, although even such a State might want to keep article 5 in order to provide clear statutory evidence of that authority.

Guide to Enactment ¶ 84.  Clear evidence of a chapter 11 debtor's authority to act in a foreign country is particularly necessary because a chapter 11 case commences immediately upon the filing of a petition, with no order signed by the court that explicitly appoints the debtor as the fiduciary or trustee of the debtor's estate.  The fact that a chapter 11 debtor has this authority by virtue of being a debtor-in-possession may not be persuasive to a foreign court.

13.     Moreover, absent a court order, a chapter 11 debtor may find it difficult to satisfy the requirements of a petition for recognition.  These requirements are substantially similar in most countries that have adopted the Model Law, including Singapore.

14.     Specifically, pursuant to Article 15, Chapter 3, Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 of the Republic of Singapore, the foreign representative

---

(c) Fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested persons, including the debtor;

(d) Protection and maximization of the value of the debtor's assets; and

(e) Facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

of the bankruptcy proceeding may file the following documents in order to obtain the recognition

of the foreign bankruptcy proceeding:

> 2.  An application for recognition must be accompanied by —
>
> (a)      a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative;
>
> (b)      a certificate from the foreign court affirming the existence of the foreign proceeding and of the appointment of the foreign representative; or
>
> (c)      in the absence of evidence mentioned in sub paragraphs (a) and (b), any other evidence acceptable to the Court of the existence of the foreign proceeding and of the appointment of the foreign representative.
>
> 3.  An application for recognition must also be accompanied by a statement identifying all foreign proceedings and proceedings under Singapore insolvency law in respect of the debtor that are known to the foreign representative.

15.      Because of the differences between chapter 11 of the Bankruptcy Code and most

other national insolvency laws, a chapter 11 debtor generally does not have the type of evidence

specified above.   Congress therefore modified the text of Article 5 of the Model Law when

incorporating it into section 1505 of the Bankruptcy Code.   The legislative history to section 1505

explains the reason for this variance in the text as codified by chapter 15:

> While the Model Law automatically authorizes an administrator to act abroad, this section requires all trustees and debtors to obtain court approval before acting abroad. That requirement is a change from the language of the Model Law, but one that is purely internal to United States law.   Its main purpose is to ensure that the court has knowledge and control of possibly expensive activities, but it will have the collateral benefit of providing further assurance to foreign courts that the United States debtor or representative is under judicial authority and supervision.

*See* H.R. Rep. No. 109-31, pt. 1, at 108 (2005), as reprinted in 2005 U.S.C.C.A.N. 88, 171.

16.      The relief sought by this Motion is, therefore, the first in a two-step process.   If

granted, GAP expects in due course to submit an application to the Singapore High Court that

seeks recognition of the Chapter 11 Cases as foreign main proceedings.

17.     Consistent with one of the key objectives of the Model Law—to provide "[c]ooperation between the courts and other competent authorities . . . involved in cases of cross-border insolvency" (Model Law, preamble)—the application for recognition that GAP will file, if this Motion is granted, will seek to obtain the assistance of the Singapore High Court.[4] If the Singapore High Court recognizes the Chapter 11 Cases as foreign main proceedings, the Debtors will benefit from the protection of an automatic stay against commencement or continuation of actions or proceedings concerning the Debtors' assets, rights, obligations and liabilities in Singapore.

18.     Based on the foregoing, the Debtors submit that there is sufficient statutory basis and ample justification for this Court to grant the relief requested.[5]

## NOTICE

19.     Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iii) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; and (vi) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

---

[4]     Granting this motion is also consistent with the memorandum of understanding between the Court and the Supreme Court of Singapore, which encourages cooperation between the courts for the efficient and timely recognition of insolvency proceedings. *Memorandum of Understanding Between the Supreme Court of Singapore and the United States Bankruptcy Court for the Southern District of New York* (Sept. 24, 2018). https://www.nysb.uscourts.gov/sites/default/files/MOU_SDNYBK_Sing.pdf

[5]     At this time, the Debtors do not intend to seek recognition of the Chapter 11 Cases in any other jurisdictions.

## <u>NO PRIOR REQUEST</u>

20.     No prior motion for the relief requested herein has been made to this or any other

court.

[*The remainder of this page is left blank intentionally*]

## **CONCLUSION**

WHEREFORE, for the reason set forth herein the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as Exhibit A and (b) grant such other and further relief as is just and proper.

Dated: January 20, 2023
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ *Sean A. O'Neal*
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel for the Debtors*
*and Debtors-in-Possession*

11

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (___) |
| Debtors. | Joint Administration Pending |

## ORDER AUTHORIZING DEBTOR GENESIS ASIA PACIFIC PTE LTD.
## TO ACT AS FOREIGN REPRESENATIVE OF THE DEBTORS

Upon the Motion (the "Motion")[2] of Genesis Asia Pacific Pte. Ltd. ("GAP"), and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order (this "Order") pursuant to section 1505 of title 11 of the United States Code (the "Bankruptcy Code"), for authorization for GAP to act as the foreign representative of the Debtors in Singapore in order to seek recognition of the Chapter 11 Cases on behalf of the Debtors, and to request that the Singapore High Court in Singapore lend assistance to this Court in protecting the Debtors' property, and to seek any other appropriate relief from the Singapore High Court that the Singapore High Court deems just and proper, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S. C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable) are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Debtors' filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"), constitute "foreign proceedings" as that term is used in Article II(a) of the Model Law on Cross-Border Insolvency adopted by the United Nations Commission on International Trade Law.  The Chapter 11 Cases have been commenced by the filing of the Debtors' petitions for relief with this Court.

3.      GAP is authorized and empowered (i) to act as the "foreign representative" of the Debtors in Singapore, including within the meaning of Article 2(i) of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 of the Republic of Singapore or any other applicable laws of Singapore, (ii) to seek recognition by the Singapore High Court of the Chapter 11 Cases and of certain orders made by the Court in the Chapter 11 Cases from time to time, (iii) to request that the Singapore High Court lend assistance to this Court, including but not limited to granting relief under Articles 19 to 21 of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 of the Republic of Singapore or any other applicable laws of Singapore,  and (iv) to seek any other appropriate relief from the Singapore High Court or any other court, tribunal, regulatory body or administrative body having its jurisdiction in Singapore as the Debtors deem just and proper.

4.      The Singapore High Court and any other court, tribunal, regulatory body or administrative body having its jurisdiction in Singapore are hereby respectfully requested (i) to

2

grant foreign representative status to GAP in any foreign proceeding, (ii) to make such orders and to provide such assistance to GAP as the foreign representative and an officer of this Court, as may be necessary or desirable to give effect to this Order and all applicable provisions of the Bankruptcy Code and (iii) to assist the Debtors, GAP, in its capacity as the foreign representative, and their respective agents in carrying out the terms of (x) this Order, including but not limited to granting relief under Articles 19 to 21 of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 of the Republic of Singapore or any other applicable laws of Singapore, (y) any other order of this Court and (z) the provisions of the Bankruptcy Code, including, for the avoidance of doubt, the automatic stay pursuant to Section 362 of the Bankruptcy Code.

5.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the interpretation, implementation or enforcement of this Order.

Dated: _____, 2023                 _____
      New York, New York                          United States Bankruptcy Judge

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (__) |
| Debtors. | Joint Administration Pending |

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING
DEBTORS TO OPERATE THEIR BUSINESSES IN THE ORDINARY
COURSE AND ORDERING IMPLEMENTATION OF THE AUTOMATIC STAY**

Genesis Global Holdco, LLC ("Holdco") and its above-captioned debtors and debtors-in-

possession (collectively, the "Debtors" and these cases, the "Chapter 11 Cases") hereby submit

this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit

A (the "Proposed Order"), authorizing the Debtors to continue to operate their businesses in the

ordinary course and enforcing and restating the automatic stay, *ipso facto* and anti-discrimination

provisions under sections 362, 365(e)(1) and 525 of title 11 of the United States Code, 11 U.S.C.

§ 101 *et seq.* (the "Bankruptcy Code").  A detailed description of the Debtors and their businesses,

and the facts and circumstances supporting this Motion and the Debtors' Chapter 11 Cases (as

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

defined herein), is set forth in *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations") [2] , filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 362, 365(e)(1) and 525 of title 11 of the United States Code, 11 U.S.C. § 101 of the Bankruptcy Code.

## BACKGROUND

2. Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency. The Debtors engage in lending, borrowing and certain trading services, while the Non-

---

[2]     Capitalized terms not defined herein have the meaning ascribed to them in the First Day Declarations.

Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

3.        Over the past few months, the digital asset industry has experienced tremendous dislocation.  The collapse of LUNA and TerraUSD and subsequent liquidation of 3AC signalled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.   As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022.  Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed for Chapter 11 proceedings.

4.        These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business.  This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's available liquidity.   As a result of the unprecedented number and size of the loan calls, on November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders.

5.        Over the past two months, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups to explore strategic solutions.  In addition, the Debtors have undertaken cost-saving and liquidity-preserving measures.  As a result of those efforts, the Debtors have determined that an in-court process is the best path to continue their efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

6.        On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are

operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' Chapter 11 Cases.

7.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

8.      While the Company's discussions with advisors to various creditor groups and DCG have been very productive in narrowing issues, they have not yet achieved a global resolution.  Accordingly, the Debtors commenced the Chapter 11 Cases to continue their efforts towards a consensual resolution through a transparent, court supervised process.  To that end, the Debtors are concurrently filing a proposed plan of reorganization, which will be amended as necessary to reflect the results of our continued negotiations.

## RELIEF REQUESTED

9.      By this Motion, the Debtors request the entry of the Proposed Order confirming (i) the Debtors' authority to continue to operate their businesses post-petition pursuant to Sections 363, 1107 and 1108 of the Bankruptcy Code and (ii) the enforcement and applicability of Section 362 of the Bankruptcy Code, as well as the *ipso facto* and anti-discrimination provisions of the Bankruptcy Code.

## BASIS FOR RELIEF

10.     The Company's business is global with offices in New York, London, and Singapore, and creditors throughout these and various other jurisdictions.  Many of the Debtors' foreign creditors do not transact business on a regular basis with companies that have filed for chapter 11 or are otherwise unfamiliar with the scope of a debtor-in-possession's authority to conduct its business.  These creditors may also be unfamiliar with the operation of the automatic

stay and other provisions of the Bankruptcy Code. For this reason, the Debtors request this Court's assistance in confirming the Debtors' rights and authority under the Bankruptcy Code.

11. <u>First</u>, Section 1108 of the Bankruptcy Code automatically authorizes a trustee to operate the business and manage the properties of the estate in the ordinary course of business. *See* 11 U.S.C. § 1108. Section 1107(a) provides that, with certain exceptions not relevant here, a debtor-in-possession has all of the rights, powers, and duties of a trustee in a case under chapter 11. *See* 11 U.S.C. § 1107(a). Accordingly, the Debtors are authorized under the Bankruptcy Code to operate their businesses and manage their properties in the ordinary course of business without court approval. The Debtors may nevertheless find that certain parties with whom they do business, particularly those located abroad, are reluctant to continue their business relationships with the Debtors without evidence that the Debtors are indeed so authorized.

12. <u>Second</u>, the filing of these Chapter 11 Cases triggered provisions of the Bankruptcy Code that provide the Debtors with essential protections through the duration of this proceeding and which further allow the Debtors to operate in the ordinary course.

13. Specifically, the Debtors' filings triggered the automatic stay under section 362 of the Bankruptcy Code, which enjoins all persons and all governmental units from, among other things: (i) commencing or continuing a judicial, administrative or other proceeding against any of the Debtors that was or could have been commenced before these Chapter 11 Cases were filed or recovering upon a claim against any of the Debtors that arose before the commencement of these Chapter 11 Cases and (ii) taking any action to collect, assess or recover a claim against any of the Debtors that arose before the commencement of these Chapter 11 Cases. *See* 11 U.S.C. § 362.

14. In addition, section 365(e)(1) of the Bankruptcy Code prohibits all parties to executory contracts or unexpired leases, including charters, with the Debtors from, among other

things, terminating or modifying such contract, lease or any right or obligation under such contract or lease at any time after the commencement of these Chapter 11 Cases solely because of a provision in such contract or lease that is conditioned on: (a) the insolvency or financial condition of the Debtors at any time before the closing of these Chapter 11 Cases, (b) the commencement of these Chapter 11 Cases or (c) the appointment of a trustee.  *See* 11 U.S.C. § 365(e)(1).

15.     Furthermore, section 525 of the Bankruptcy Code prohibits and enjoins governmental units, with certain limited exceptions not applicable to these Chapter 11 Cases, from, among other things, denying, revoking, suspending or refusing to renew any license, permit, charter, franchise or other similar grant to, condition such a grant on or discriminate with respect to such a grant against, the Debtors solely because the Debtors (a) are debtors under the Bankruptcy Code, (b) may have been insolvent before the commencement of these Chapter 11 Cases or (c) may be insolvent during the pendency of these Chapter 11 Cases.  *See* 11 U.S.C. § 525.

16.     Notably, the injunctions contained in sections 362, 365(e)(1) and 525 of the Bankruptcy Code are self-executing.  They constitute fundamental debtor protections which, in combination with other provisions of the Bankruptcy Code, provide the Debtors with the essential "breathing spell" necessary to enable the Debtors' smooth and orderly transition into chapter 11. *See*, *e.g.*, H.R. Rep. No. 95-595 (1977); *Shugrue v. Air Line Pilots Ass'n, Int'l* (*In re Ionosphere Clubs, Inc.*), 922 F.2d 984, 989 (2d Cir. 1990); *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 606 (S.D.N.Y. 1996) ("[Section] 362 is meant to give 'the debtor a breathing spell from his creditors [and] . . . permit [ ] the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.'")(internal citations omitted).

17.    The protections in these provisions extend to protect a debtor's property and contracts wherever they are located and by whomever held. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Secs. LLC),* 474 B.R. 76, 84 (S.D.N.Y. 2012) (upholding extraterritorial enforcement of the automatic stay and injunction barring foreign creditor's lawsuit); *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996) ("[B]ased upon the applicable Code sections [and] other indicia of congressional intent . . . the automatic stay applies extraterritorially."); *In re McLean Indus.*, 74 B.R. 589, 601 (Bankr. S.D.N.Y. 1987) ("The automatic stay applies extraterritorially.")(internal citations omitted). Accordingly, any actions by third parties to modify or terminate contracts or enforce their terms against the Debtors are prohibited absent Court approval, and third parties must therefore continue to perform under executory contracts until they are assumed or rejected. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 532 (1984) (holding that while the debtor may enforce the terms of the contract against the creditor, the creditor is "precluded from . . . enforcing the contract terms" of an executory contract prior to the assumption by the debtor); *see also U.S. Postal Serv. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 624 (8th Cir. 1994) ("After a debtor commences a Chapter 11 proceeding, but before executory contracts are assumed or rejected under § 365(a), those contracts remain in existence, *enforceable by the debtor but not against the debtor*.") (emphasis in original).

18.    Notwithstanding the fundamental, self-executing and global nature of these statutory authorizations and protections, it is likely that not all parties affected or potentially affected by the commencement of these Chapter 11 Cases may be aware of their existence. Many of the Debtors' creditors, vendors and other contractual counterparties are not located in the United States and may be unfamiliar with the operation of the Bankruptcy Code. Similarly, the Debtors and their property are subject to the rules and regulations of numerous governmental authorities,

including those in foreign jurisdictions, that may not be familiar with United States bankruptcy law.  Any of these entities, absent an unambiguous order of this Court, may take precipitous action against the Debtors or their property.

19.    The Proposed Order, by restating the provisions and protections of sections 362, 365(e)(1), 525, 1107 and 1108 of the Bankruptcy Code, would help protect the Debtors from such unwitting violations of these crucial provisions.  The granting of the relief requested will help ensure that (i) the non-debtor parties to unexpired leases and executory contracts with the Debtors will continue to perform and will not unilaterally terminate their contracts, (ii) creditors do not seize the Debtors' assets, impose liens or take any other action in violation of the automatic stay and (iii) foreign governmental authorities do not deny, revoke or suspend any licenses or permits solely because the Debtors are in chapter 11.  It also would spare the Debtors from the burden of commencing adversary proceedings to enforce the protections automatically provided by the Bankruptcy Code.  Consequently, such order will assist the Debtors in effecting a prompt and orderly reorganization.

20.    The Court has the authority to grant the requested relief pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, especially in cases having international implications.  Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  The purpose of section 105(a) is "to assure the bankruptcy courts' power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  2 Collier on Bankruptcy ¶ 105.01 at 105-06 (15th ed. Rev. 2008).  Such power conforms to the Court's inherent equitable authority.  *See, e.g.*, *United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990).  The relief requested herein is both necessary and appropriate to allow

the Debtors to successfully administer these Chapter 11 Cases, to optimize their post-petition business performance and to maximize the value of their estates.

21.     Relief similar to that requested herein has previously been granted by Courts in this District in large chapter 11 cases.  *See, e.g.*, Order, *In re Automotores Gildemeister SpA*, Case No. 21-10685 (LGB) (Bankr. S.D.N.Y. Apr. 16, 2021) ECF No. 45; Order, *In re LATAM Airlines Grp.*, Case No. 20-11254 (JLG) (Bankr. S.D.N.Y. May 28, 2020) ECF No. 50; Order, *In re Repub. Airways Holdings Inc.*, Case No. 16-10429 (SHL) (Bankr. S.D.N.Y. Feb. 29, 2016) ECF No. 51; Order, *In re Glob. Mar. Invs. Cyprus Ltd.*, Case No. 15-12552 (SMB) (Bankr. S.D.N.Y. Sept. 21, 2015) ECF No. 41; Order, *In re Nautilus Holdings Ltd.*, Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. June 25, 2014) ECF No. 30; Order, *In re Excel Mar. Carriers Ltd.*, Case No. 13-23060 (RDD) (Bankr. S.D.N.Y. July 3, 2013), ECF No. 34.[3]

## NOTICE

22.     Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iii) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; and (vi) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

---

[3]     Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

## <u>NO PRIOR REQUEST</u>

23.    No prior motion for the relief requested herein has been made to this or any other

Court.

[*The remainder of this page is left intentionally blank*]

## <u>CONCLUSION</u>

WHEREFORE, for the reason set forth herein the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as <u>Exhibit A</u> and (b) grant such other and further relief as is just and proper.

Dated:  January 20, 2023
New York, New York

/s/ Sean A. O'Neal
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors and Debtors-in-Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (__) |
| Debtors. | Joint Administration Pending |

## ORDER AUTHORIZING DEBTORS TO
## OPERATE THEIR BUSINESSES IN THE ORDINARY
## COURSE AND ORDERING IMPLEMENTATION OF THE AUTOMATIC STAY

Upon the Motion (the "Motion")[2] of Genesis Global Holdco, LLC ("Holdco") and its

affiliate, as debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"), for entry of an order (this "Order") authorizing the Debtors to continue to operate their

businesses in the ordinary course and enforcing and restating the automatic stay, *ipso facto* and

anti-discrimination provisions under sections 362, 365(e)(1) and 525 of title 11 of the United States

Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"); it appearing that this Court has jurisdiction

to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these

Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court

having found that proper and adequate notice of the Motion and the relief requested therein has

been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as

otherwise ordered herein, no other or further notice is necessary; and any objections (if any) to the

Motion having been withdrawn or overruled on the merits; and a hearing having been held to

---

[1]        The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]        Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      Pursuant to section 362 of the Bankruptcy Code, all persons (including individuals, partnerships, corporations and all those acting for or on their behalf) and all foreign or domestic governmental or quasi-governmental units, including any state, locality or territory thereof (and all those acting for or on their behalf), regardless of whether or not they have received a copy of the order, are stayed, restrained and enjoined from:

(a)      commencing or continuing any judicial, administrative or other action or proceeding against the Debtors, including the issuance or employment of process that was or could have been initiated before the Debtors' Chapter 11 Cases commenced;

(b)      enforcing, against the Debtors or their estates, a judgment obtained before the commencement of these Chapter 11 Cases;

(c)      collecting, assessing or recovering a claim against the Debtors that arose before the commencement of these Chapter 11 Cases;

(d)      taking any action to obtain possession of property of the estates or of property from the estates or to exercise control over property of the Debtors' estates;

(e)      taking any action to create, perfect or enforce any lien against property of the Debtors' estates;

(f)     taking any action to create, perfect or enforce any lien against property of the Debtors, to the extent that such lien secures a claim that arose before the commencement of these Chapter 11 Cases;

(g)     offsetting any debt owing to the Debtors that arose before the commencement of these Chapter 11 Cases against any claim against the Debtors; and

(h)     commencing or continuing a proceeding before the United States Tax Court concerning the Debtors' tax liability for a taxable period the Court may determine.

3.      All persons and all foreign and domestic governmental units, and all those acting on their behalf, including sheriffs, marshals, constables and other or similar law enforcement officers and officials, regardless of whether they have received this order, are stayed, restrained and enjoined from in any way seizing, attaching, foreclosing upon, levying against or in any other way interfering with any and all property of the Debtors or the Debtors' estates, wherever located.

4.      Pursuant to section 365(e)(1) of the Bankruptcy Code, all persons (including individuals, partnerships, corporations and all those acting for or on their behalf) and all foreign or domestic governmental or quasi-governmental units including any state, locality or territory thereof (and all those acting for or on their behalf) are prohibited from modifying or terminating any executory contract or unexpired lease, or any right or obligation under such contract or lease, at any time after the commencement of these Chapter 11 Cases solely because of a provision in such contract or lease that is conditioned on:

(a)     the insolvency or financial condition of the debtor at any time before the closing of these Chapter 11 Cases;

(b)     the commencement of these Chapter 11 Cases; or

(c)     the appointment of a trustee in these Chapter 11 Cases.

5.      This order shall not affect (i) the substantive rights of any party or the availability of any of the exceptions contained in sections 362(b) and 365(e)(1) of the Bankruptcy Code or (ii) the right of any party-in-interest to seek relief from the automatic stay in accordance with section 362(d) of the Bankruptcy Code or with respect to an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

6.      Pursuant to section 525 of the Bankruptcy Code, all foreign or domestic governmental or quasi-governmental units including any state, locality or territory thereof (and all those acting for or on their behalf) are prohibited and enjoined from (i) denying, revoking, suspending or refusing to renew any license, permit, charter, franchise or other similar grant to, (ii) placing conditions upon such a grant to or (iii) discriminating against any of the Debtors (or another person with whom the Debtors have been associated) solely because any of the Debtors is a debtor under the Bankruptcy Code, or may have been insolvent before or during these Chapter 11 Cases.

7.      The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this order.

8.      Nothing contained herein shall constitute an assumption or adoption by either Debtor of any executory contract or lease.

9.      The requirements set forth in Local Rule 9013-1(b) are satisfied.

10.     This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6003(b) or otherwise.

11.     On request of a party in interest, and after notice and a hearing, this Court may grant relief from the restraints imposed herein in the event that it is necessary, appropriate and warranted so to terminate, annul, modify or condition the relief granted herein.

12.     Notwithstanding anything to the contrary contained herein, this Order shall not be construed as enjoining or staying any act that is not stayed, or that is subject to an exception from the automatic stay, pursuant to the terms of section 362 of the Bankruptcy Code.

13.     This Court shall retain jurisdiction with respect to all matters, claims, rights or disputes arising from or related to the Motion or the implementation, interpretation or enforcement of this Order.

Dated:     _____          _____
                New York, New York                            United States Bankruptcy Judge

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (__) |
| Debtors. | Joint Administration Pending |

**MOTION OF GENESIS ASIA PACIFIC PTE. LTD. FOR
ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING GENESIS ASIA
PACIFIC PTE. LTD. TO (A) PAY CERTAIN EMPLOYEE WAGES AND OTHER
COMPENSATION AND RELATED OBLIGATIONS AND (B) MAINTAIN AND
CONTINUE EMPLOYEE BENEFITS AND PROGRAMS IN THE ORDINARY
COURSE, AND (II) AUTHORIZING AND DIRECTING APPLICABLE BANKS TO
HONOR ALL TRANSFERS RELATED TO SUCH OBLIGATIONS**

Debtor Genesis Asia Pacific Pte. Ltd. ("GAP")[2] hereby submits this motion (this "Motion")

for entry of interim and final orders, substantially in the form attached hereto as Exhibit A (the

"Proposed Interim Order") and Exhibit B (the "Proposed Final Order" and, together with the

Proposed Interim Order, the "Proposed Orders"), pursuant to sections 105(a), 363(b), 507(a),

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    GAP, together with the above-captioned debtors and debtors-in-possession are referred to as the "Debtors," and these cases, as the "Chapter 11 Cases."

541(b) and 1129(a)(9)(B) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing GAP to (a) pay certain employee wages and other compensation and related obligations and (b) maintain and continue employee benefits and programs in the ordinary course, (ii) authorizing and directing applicable banks to honor all transfers related to such obligations, and (iii) granting GAP such other and further relief as the Court deems just and proper.  In support of this Motion, GAP relies on the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations"), filed contemporaneously herewith.[3]  In further support of this Motion, GAP respectfully presents as follows:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a), 541(b) and 1129(a)(9)(B) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

---

[3]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the First Day Declarations.

"Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

4.      Over the past few months, the digital asset industry has experienced tremendous dislocation.  The collapse of LUNA and TerraUSD and subsequent liquidation of 3AC signalled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.  As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022.  Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed for Chapter 11 proceedings.

5.      These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business.  This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's available liquidity.  As a result of the unprecedented number and size of the loan calls, on November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors' estates, ensure fair distribution and begin discussions with our stakeholders

3

6.      Over the past two months, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups to explore strategic solutions.  In addition, the Debtors have undertaken cost-saving and liquidity-preserving measures.  As a result of those efforts, the Debtors have determined that an in-court process is the best path to continue their efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

7.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' Chapter 11 Cases.

8.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

9.      While the Company's discussions with advisors to various creditor groups and DCG have been very productive in narrowing issues, they have not yet achieved a global resolution.  Accordingly, the Debtors commenced the Chapter 11 Cases to continue  their efforts towards  a consensual resolution through a transparent, court supervised process.  To that end, the Debtors are concurrently filing a proposed plan of reorganization, which will be amended as necessary to reflect the results of our continued negotiations.

## **RELIEF REQUESTED**

10.     By this Motion, GAP requests the entry of an order pursuant to sections 105(a), 363, 507 and 541 of the Bankruptcy Code authorizing, but not directing, GAP to pay and honor certain prepetition employment-related claims, including (i) wages, salaries and other variable

compensation, (ii) reimbursable expenses, (iii) health, pension, and insurance benefits, (iv) severance benefits, (v) paid time-off and other leave, and (vi) all other benefits that GAP has historically provided to Employees in the ordinary course of business (collectively, as more fully described below and together with attendant costs and expenses, the "Wages and Benefits"). In addition, GAP intends to continue to exercise its rights to modify or discontinue any of the Wages and Benefits, or to implement new Wages and Benefits in the ordinary course of business and consistent with its past practices, during the Chapter 11 Cases without the need for further Court approval.

11.     Given that GAP's employees are integral to the Debtors' ability to operate their businesses during the Chapter 11 Cases, GAP's failure to satisfy certain Wages and Benefits in the ordinary course would jeopardize employee loyalty and morale, potentially causing employees to seek alternative employment and significantly harming the Debtors' operations. Accordingly, GAP seeks authority, but not direction, in its sole discretion, to continue to honor, pay, satisfy, or remit all claims and prepetition obligations related to Wages and Benefits in the ordinary course and consistent with its past practices, subject to the limitations discussed herein.

12.     The relief requested herein will avoid unnecessary harm to the Employees or the Debtors' businesses.

### THE WORKFORCE[4]

13.     GAP's workforce consists of approximately 15 wage earners as of the Petition Date (the "Employees"),[5] including executives, managers, professionals, and other personnel working

---

[4]     All amounts contained herein are listed in U.S. dollars unless otherwise indicated.

[5]     Additional employees providing services for Holdco and GGC are employed by Genesis Global Trading ("GGT"), an affiliate of the Debtors that has not sought relief under chapter 11. Additional details about the payroll and payroll expenses for these employees relating to GGT is further described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Continue to Operate the Existing Cash Management System, Including Existing Bank Accounts, Honor Certain Prepetition Obligations Related Thereto, and Maintain Existing Business Forms; (II) Permitting Continued Intercompany Transactions and Granting Certain Administrative Claims;*

in finance, trading, operations, technology, compliance, and other key functions. All of the Employees are based in Singapore, which is the principal place of business of GAP.

14.     The Employees perform a variety of critical functions for GAP's business as the Employees' skills, their specialized knowledge of GAP's business model, industry and operations, as well as their relationships with customers and other third parties, are essential to the value of the Debtors' assets and businesses. Without the support and dedication of the Employees to ensure the continued operation of their businesses, the Debtors would be unable to preserve their business.

15.     Each Employee signs an individual employment contract with GAP. The employment contracts stipulate each Employee's relationship with GAP, describing, for example, the Employee's base salary, variable compensation components, and the rights and obligations of each Employee (such as adherence to GAP's internal policies).

16.     The Employees perform a variety of critical functions on behalf of GAP. Accordingly, with the commencement of the Chapter 11 Cases, it is critical for their morale and the continued operation of the businesses to ensure that there is no interruption to the payment of the Employees' Wages and Benefits.

## **WAGES AND BENEFITS**

17.     On average, GAP's average monthly gross payroll is approximately $245,000 in base wages and salaries ("Wages"). GAP also pays certain forms of variable compensation (such compensation, "Variable Compensation" and together with Wages, the "Employee Compensation"), which amount varies annually. Variable Compensation includes, but is not limited to, performance bonuses, commissions, and retention bonuses.

---

*(III) Extending the Time to Comply with the Requirements of Section 345 of the Bankruptcy Code; and (IV) Granting Related Relief*, filed contemporaneously herewith.

### A.    Employee Compensation

18.    GAP pays Employee Compensation once a month, generally on the last day of every month.  Variable Compensation is paid under different payment schedules depending on the type of Variable Compensation: Bonuses are paid at GAP's discretion annually.  GAP does not believe that there are any outstanding amounts in prepetition Wages as of the Petition Date (the "Unpaid Compensation").[6]

19.    As of the Petition Date, GAP believes that all Employees would have a priority claim of less than $15,150 pursuant to section 507(a)(4) of the Bankruptcy Code with respect to their earned Unpaid Compensation.  GAP seeks authority, but not direction, in its sole discretion, to pay any Unpaid Compensation as it comes due in the ordinary course of business and consistent with past practices.  GAP further requests authority, but not direction, to continue to pay Employee Compensation on a post-petition basis in the ordinary course of business.

### B.    Deductions and Withholdings

20.    During each applicable pay period, GAP directly, or through its payroll processors, routinely deducts certain amounts from the Employees' paychecks, including CPF Contributions, SGH Contributions, SDL Contributions and other miscellaneous deductions (each as defined below and collectively, the "Employee Deductions").  These amounts are then generally remitted to the appropriate private third-party or non-U.S. government authority.  As detailed below, on average, GAP has historically deducted a total of approximately $18,010 from Employee paychecks per month, comprised of the following:

| Employee Deductions | Average Monthly Amount |
| --- | --- |
| CPF Contributions | $17,900.00 |
| CDAC Contributions | $20.00 |
| SINDA Contributions | $90.00 |

---

[6]    GAP last processed payroll to Employees on January 19, 2023.  GAP is not asking the Court for authority to pay any outstanding pre-petition Variable Compensation at this time.

| Miscellaneous | N/A |
|---|---|
| **Total** | **$18,010** |

21.    ***CPF Contributions.***  The Central Provident Fund ("<u>CPF</u>") is a mandatory social security savings scheme funded by contributions from employers and employees.  The CPF is essentially a legally mandated pension fund for employees.  GAP pays approximately $17,900 per month in CPF Contributions.

22.    ***CDAC Contributions.***  Employees can also elect to contribute funds to the Chinese Development Assistance Council ("<u>CDAC</u>"), which is a non-profit organization and self-help group for the Chinese community in Singapore.  GAP pays approximately $20 per month in CDAC Contributions.

23.    ***SINDA Contributions.***  Similar to CDAC Contributions, Employees can also elect to contribute funds to the Singapore Indian Development Association ("<u>SINDA</u>"), which is a non-profit organization and self-help group for the Indian community in Singapore.  GAP pays approximately $90 per month in SINDA Contributions.

24.    Due to the commencement of the Chapter 11 Cases or other miscellaneous omissions, there may be Employee Deductions that were not forwarded to the appropriate third-party recipients prior to the Petition Date.  Accordingly, GAP seeks entry of a final order authorizing, but not directing, GAP to continue to forward these prepetition Employee Deductions, through payroll processors or directly to the applicable third-party recipients on a post-petition basis, as routinely done prior to the Petition Date.  As discussed more fully herein, GAP believes that, under section 541(d) of the Bankruptcy Code, the Employee Deductions are held in trust and are not the property of GAP's estates and, therefore, such funds are not available for general distribution to a debtor's creditors.

8

## C.   Payment of Reimbursable Expenses

25.     Prior to the Petition Date, and in the ordinary course of business, GAP reimburses certain Employees for certain reasonable and customary expenses incurred on behalf of GAP in the scope of their employment in accordance with applicable laws and regulations (the "Reimbursable Expenses").

26.     A Reimbursable Expense is an expense incurred by an Employee in the performance of their duties that is deemed to be necessary to the performance of his/her job and is reasonable.  Reimbursable Expenses include paid-for expenses such as travel, meals, accommodations, and other business-related expenses that are paid out of pocket by the Employees.

27.     The Employees are required to submit the receipts for Reimbursable Expenses to GAP within thirty (30) days of incurrence, which are then approved within seven (7) days of submission.   After the approval of the receipts, GAP generally reimburses the travel and entertainment expenses to Employees each month as part of the next payroll.  In addition, certain Employees use company credit cards for business-related expenses.  GAP estimates that the total amount of unpaid prepetition Reimbursable Expenses is approximately $1,500.

28.     The Reimbursable Expenses were all incurred on GAP's behalf and with the understanding that they would be reimbursed.  Accordingly, to avoid harming individuals who incurred the Reimbursable Expenses while performing their duties, GAP seeks authority, but not direction, in its sole discretion, to (i) pay any outstanding prepetition Reimbursable Expenses and (ii) continue, during the course of these Chapter 11 Cases, to pay the Reimbursable Expenses in accordance with prepetition practices.

## D.  Payroll Processing

29.     GAP relies on the services of CSCGFM Corporate Services (Singapore) Pte. Ltd. ("CSC"), a payroll vendor (the "Payroll Vendor") for payroll processing and other payroll-related services to facilitate the administration of the Wages and Benefits. The Payroll Vendor provides services that help with keeping and consolidating accounting information and processing payroll for Employees according to the applicable payroll cycle.  Failure to pay the Payroll Vendor could cause delays in payroll processing, which in turn could delay disbursements of the Employee Compensation and Benefits and the Deductions to the detriment of the Employees and GAP's operations.

30.     GAP does not believe there are any outstanding unpaid prepetition amounts to be paid to the Payroll Vendor (the "Payroll Processing Fees") as of the Petition Date.  Out of an abundance of caution, however, GAP seeks authority, but not direction, in their sole discretion, to pay the Payroll Processing Fees to the Payroll Vendors  in the ordinary course and any prepetition expenses or other amounts related thereto, and to continue administering payroll on a post-petition basis in the ordinary course of business and consistent with past practices.

## EMPLOYEE BENEFITS

31.     In the ordinary course of business, GAP provides Employees with a number of benefits, including: (i) health insurance; (ii) pension plans; (iii) paid time-off and leave; (iv) severance benefits; and (v) other Employee benefits (collectively, the "Employee Benefits"). These Employee Benefits are provided through employer and third-party sponsored contributory and non-contributory benefit plans and voluntary insurance coverage.

## A.  Health Insurance

32.     GAP has various plans and policies pursuant to which Employees are provided with health care and life insurance benefits (collectively the "Health Insurance Plans").  GAP

makes contributions annually except certain programs for which contributions are made on an ad-hoc basis, and estimates the average amount of contributions made by GAP annually to the Health Insurance Plans is approximately $204,000.

33.     GAP does not believe there are any outstanding unpaid prepetition contributions to the Health Insurance Plans as of the Petition Date.  Out of an abundance of caution, however, GAP seeks authority, but not direction, in their sole discretion, to continue the Health Insurance Plans in the ordinary course of business and pay any prepetition expenses or other amounts related thereto, including any claims incurred before the Petition Date but reported after the Petition Date.

**B.     Pension Plan**

34.     GAP makes monthly contributions to the CPF along with the employees' contributions to the CPF (the "Pension Plan") for all Employees.  GAP estimates that the outstanding unpaid prepetition contributions to the Pension Plan is approximately $8,250 as of the Petition Date.  GAP seeks authority, but not direction, in its sole discretion, to continue making contributions to the Pension Plan and any other related payments mandated by local law, including any that accrued prepetition in the ordinary course of business.

**C.     Workers' Compensation**

35.     GAP contributes to workers' compensation plans for all Employees (the "Workers' Compensation Contributions").  These benefits are administered by a private vendors to provide Employees with workers' compensation coverage for claims arising from or related to accidents that occur during their employment with GAP.  GAP remits the Workers' Compensation Contributions annually, and estimates that the average annual sum made by GAP to the Workers' Compensation Plan is approximately $2,650.  GAP does not believe there are any outstanding unpaid prepetition contributions to the Workers' Compensation Contributions as of the Petition Date.  Out of an abundance of caution, however, GAP seeks authority, but not direction, in their

sole discretion, to continue to pay the Workers' Compensation Contributions and any other related payments, including any that accrued prepetition in the ordinary course of business.

**D.    SDL Contributions**

36.    GAP also makes monthly contributions to the Skills Development Fund ("<u>SDL Contributions</u>") in a fixed amount for each Employee.  Employers are required to make regular contributions to the SDL, which is used to support training programs for employees.  GAP estimates that the outstanding unpaid prepetition SDL Contributions are approximately $169 as of the Petition Date.  GAP seeks authority, but not direction, in its sole discretion, to continue the SDL Contributions and any other related payments mandated by local law, including any that accrued prepetition in the ordinary course of business.

**E.    Paid Time-Off and Leave**

37.    All Employees are entitled to paid time off (the "<u>Vacation Obligations</u>") that accrue based on the period of service.  GAP does not believe it has any outstanding accrued Vacation Obligations prepetition.  The Vacation Obligations will continue to accrue for use by Employees in the ordinary course of business.

38.    Out of an abundance of caution, however, GAP seeks authority, but not direction, in its sole discretion, to continue the Vacation Obligations and make any payments attributable to the Vacation Obligations, including obligations that accrued prepetition in the ordinary course of business.

39.    GAP also offers paid sick leave for their Employees ("<u>Paid Sick Leave</u>") on a case by case basis.  Employees must contact their managers to be granted Paid Sick Leave, which is separately recorded from Vacation Obligations.

40.     By this Motion, GAP seeks authority, but not direction, in its sole discretion, to continue Paid Sick Leave and make any payments attributable to Paid Sick Leave, including any that accrued prepetition in the ordinary course of business.

**F.     Severance**

41.     GAP has certain obligations under its severance programs for certain employees (the "Severance Obligations").  Under Employees' contracts, GAP is obligated to give at least one month notice for the termination of employment but reserves the right to terminate the employment of an Employee with immediate effect or with less notice than required if GAP makes a payment of an amount equal to one month of base salary.  Upon termination of an Employee, GAP typically pays an amount equal to two months of base salary as severance.

42.     GAP seeks authority, but not direction, to continue the Severance Obligations and make any payments attributable to the Severance Obligations, including any that accrued prepetition in the ordinary course of business.[7]

**G.     Benefits Providers**

43.     GAP also utilizes the services of various benefit providers to administer benefits for its Employees, including for the Health Insurance Plans and Workers' Compensation Contributions.  In connection with these services, GAP pays such benefit providers certain fees, which GAP considers de minimis ("Benefits Administration Fees"), which are included in the amounts for the Health Insurance Plans and Workers' Compensation Contributions.

44.     GAP does not believe that there are any outstanding unpaid prepetition Benefits Administration Fees as of the Petition Date.  Out of an abundance of caution, however, the Debtors

---

[7]     GAP seeks authority only to make payments for Severance Obligations for Employees who are not "insiders" under section 101(31) of the Bankruptcy Code.  Accordingly, the restrictions of section 503(c) of the Bankruptcy Code are not implicated in the Debtors' requested relief.

seek authority, but not direction, in their sole discretion, to pay the Benefits Administration Fees in the ordinary course and any prepetition expenses or other amounts related thereto.

## BASIS FOR RELIEF

### A.     Cause Exists to Authorize Payment of GAP's Wages and Benefits

#### i.     The Court May Authorize Payment of Wages and Benefits Pursuant to Section 363 of the Bankruptcy Code

45.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b), courts require only that the debtor articulate a sound business justification for its actions.  *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted).

46.     Courts have authorized payment of prepetition employee compensation and related obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists to do so.  *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that relief regarding payment of prepetition wage claims was appropriate to "preserve and protect [the debtor's] business and ultimately reorganize, retain its currently working employees and maintain positive employee morale").  In addition, to the extent a debtor-in-possession enters into transactions involving property of the estate in the ordinary course of business, section 363(c) of the Bankruptcy Code authorizes such transactions without an order of the court.  *See, e.g.,*

*Armstrong World Indus., Inc., v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 395 n.2 (Bankr. S.D.N.Y. 1983) ("Insofar as transactions are actually in the ordinary course, they are authorized automatically by § 363(c)(1) and § 1107(a), and do not require Bankruptcy Court approval.").

47.     GAP has satisfied the business judgment standard.  The Debtors' ability to engage in a successful restructuring will be put at risk if GAP does not pay the Wages and Benefits.  If GAP does not pay the Wages and Benefits, its workforce will face significant financial hardship and other risks, such as the lack of receipt of healthcare coverage and insurance, and likely will seek alternative employment opportunities or will be demoralized and less productive. Additionally, the deterioration of GAP's workforce may detract from GAP's focus on restructuring-related activities and require resource and cost-intensive recruitment efforts to continue GAP's operations.  Paying the Wages and Benefits also is necessary for GAP to avoid unnecessary recruitment, severance, and related costs, to avoid certain operating risks to completing GAP's reorganization.

48.     In addition, because GAP pays the Wages and Benefits in the ordinary course of business, GAP submits that Court approval to continue its existing policies, programs, and related payments post-petition is not necessary because of the authority granted under section 363(c) of the Bankruptcy Code.  Nonetheless, for the avoidance of doubt and in an abundance of caution, GAP requests that the Court grant the relief requested herein, enter interim and final orders permitting them to pay the Wages and Benefits and to authorize, but not require, GAP, in its discretion, to continue and maintain its employee benefit contributions, programs, policies and practices as those plans, programs, policies and practices were in effect as of the Petition Date, as they may be modified, terminated, amended, or supplemented from time to time.

ii.   **Payment of Wages and Benefits Is Warranted Under Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity**

49.    GAP's proposed payment of the Wages and Benefits also should be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity." Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Specifically, this Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "doctrine of necessity" (also referred to as the "necessity of payment" doctrine). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. "Under [section] 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. at 177); *see also In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D.N.Y. 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

50.    Courts have consistently permitted post-petition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport C. & S.W.R. Co.*, 106 U.S. 286, 311-12 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of [the]

16

corpus"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279 (Bankr. S.D.N.Y. 1987), *appeal dismissed*, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

51.     This approach is particularly critical where a prepetition creditor provides vital goods or services to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations.  In *In re Structurlite Plastics Corp.*, the bankruptcy court stated that it "may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'"  86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *In re Chateaugay Corp.*, 80 B.R. at 287).  The court explained that "a per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."  *Id*. at 932 (emphasis omitted).  The rationale for the doctrine of necessity is consistent with the paramount goal of Chapter 11 – "facilitating the continued operation and rehabilitation of the debtor . . ."  *In re Ionosphere Clubs*, 98 B.R. at 176.  Indeed, as noted above, this Court and others have routinely authorized debtors to pay the prepetition claims of employees for wages, salaries, expenses, and benefits on the grounds that the payment of such claims was necessary to effectuate a successful reorganization of a debtor's business.

52.     Payment of the Wages and Benefits is warranted under the doctrine of necessity. The Employees provide GAP with essential services necessary to conduct its business.  Payment of the prepetition claims of the Employees is essential to avoid attrition, service disruption, and associated costs.

53.     Courts in this district have approved relief similar to that requested here.  *See, e.g.*, Final Order, *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. August 17, 2022), ECF No. 518 (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a post-petition basis); Final Order, *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. August 4, 2022), ECF No. 233 (same); Final Order, *In re Jason Industries, Ind.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. July 27, 2020), ECF No. 135 (same); Final Order, *In re LATAM Airlines Group S.A., et al.*, No. 20-11254 (JLG) (Bankr. S.D.N.Y. June 28, 2020), ECF No. 392 (same); Final Order, *In re Frontier Commc'ns. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020), ECF No. 365 (same); Final Order, *In re Deluxe Entm't Servs. Grp. Inc.*, No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 25, 2019), ECF No. 94 (same); Final Order, *In re Barneys N.Y., Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y. Sept. 4, 2019), ECF No. 208 (same); Final Order, *In re Hollander Sleep Prods., LLC*, No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 2, 2019), ECF No. 166 (same).[8]

## H.     The Court Should Authorize and Direct Applicable Banks to Honor and Make Other Transfers to Pay the Wages and Benefits

54.     GAP has sufficient funds to pay or remit the Wages and Benefits in the ordinary course of business using expected cash flows from ongoing business operations.  GAP believes there is minimal risk that wire transfer requests that this Court has not authorized will be inadvertently made.  Thus, GAP requests that this Court authorize all applicable financial institutions to receive, process, honor, and pay any and all wire transfer requests in respect of the Wages and Benefits.

---

[8]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.  Copies of these orders are available upon request of the Debtors' proposed counsel.

## I.     The Requirements of Bankruptcy Rule 6003 Are Satisfied

55.     Under Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty-one (21) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)).

56.     Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to the estate alone.  Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally.  *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate") (emphasis added).  Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary injunctions.  *See* 9 Collier on Bankruptcy ¶ 4001.07[3] (16th ed. 2014) (discussing source of "irreparable harm" standard under Rule 4001(c)(2)).  And courts will routinely consider third-party interests when granting such relief.  *See, e.g., Cap. Ventures Int'l v. Repub. of Arg.*, 443 F.3d 214, 223 n.7 (2d Cir. 2006) (stating that potential effect on the public interest is a factor in considering whether to grant preliminary injunction).

57.     This Court and others have recognized that the potential loss of critical employees, the lapse in benefit coverage and the financial hardship imposed on employees that would certainly result if relief requested by this Motion were not granted poses a threat of immediate and irreparable harm to a debtor's business.  *See, e.g., Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 410 (Bankr. S.D.N.Y. 2007) (holding that potential distractions to employees constitute "imminent irreparable harm" if they would impact the restructuring process); *Lomas Fin. Corp. v. The N. Trust Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 67 (Bankr. S.D.N.Y.

1990) (imminent and irreparable harm found where "key personnel would be distracted from participating in the reorganization process").

58.     The relief requested in this Motion is necessary to avoid immediate and irreparable harm to GAP, its estates, and all parties in interest.  The Employees are vital to the GAP's operations and the success of the Plan.  Failure to satisfy the Wages and Benefits in the ordinary course of business will likely cause Employees to terminate employment or will reduce productivity on account of lowered employee morale and detract from GAP's focus on the restructuring process.  Additionally, the Employees rely on their compensation, benefits, and reimbursement of expenses to pay their living expenses and the effect could be financially ruinous if GAP cannot pay the Wages and Benefits in the ordinary course of business.  Accordingly, the requirements of Bankruptcy Rule 6003 are satisfied.

## J.     Waiver of Bankruptcy Rules 6004(a) and 6004(h)

59.     To implement the foregoing successfully, GAP requests that the Court enter the Proposed Orders providing that the notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that GAP has established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## K.     GAP's' Reservation of Rights

60.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against GAP, a waiver of GAP's rights to dispute any claim, applicability of any law, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  GAP expressly reserves its rights to contest any claim, applicability of any law, or an approval or assumption of any agreement or contract under section 365 of the Bankruptcy Code.  GAP expressly reserves its rights to contest any invoice or claim with respect to any obligation described herein in accordance with applicable bankruptcy and non-bankruptcy

law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the GAP's rights to subsequently dispute such claim.

## NOTICE

61.     Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iii) those creditors holding the five (5) largest secured claims against the Debtors' estates (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; and (vi) all others that are required to be noticed in accordance with Bankruptcy Rule 2002 and Local Rule 2002-1. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

62.     No prior motion for the relief requested herein has been made to this or any other court.


*[The remainder of this page is left intentionally blank]*

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, GAP respectfully requests that this Court

(a) enter the orders, substantially in the form attached hereto as <u>Exhibits A</u> and <u>B</u> and (b) grant

such other and further relief as is just and proper.

Dated:    January 20, 2023
        New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*

**EXHIBIT A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (__) |
| Debtors. | Joint Administration Pending |

### INTERIM ORDER (I) AUTHORIZING GENESIS ASIA PACIFIC PTE. LTD TO (A) PAY CERTAIN EMPLOYEE WAGES AND OTHER COMPENSATION AND RELATED OBLIGATIONS AND (B) MAINTAIN AND CONTINUE EMPLOYEE BENEFITS AND PROGRAMS IN THE ORDINARY COURSE, AND (II) AUTHORIZING AND DIRECTING APPLICABLE BANKS TO HONOR ALL TRANSFERS RELATED TO SUCH OBLIGATIONS

### ("INTERIM WAGES AND BENEFITS ORDER")

Upon the motion (the "Motion")[2] of Genesis Asia Pacific Pte. Ltd. ("GAP") and the above captioned affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of interim and final orders, as more fully described in the Motion, authorizing GAP to pay certain Wages and Benefits, and for certain related relief; and upon the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations"); and the Court having jurisdiction over this matter pursuant to 28

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

U.S.C. § 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court of New York dated January 31, 2012*; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution, and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of GAP, its estates, its creditors and the other parties in interest; and the Court having found that GAP's notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis to the extent set forth herein.

2.      Objections to entry of the Final Order must be filed by _____, at 4:00 pm. (ET) and served on: (i) counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn: Sean A. O'Neal, Esq. and Jane VanLare, Esq.; (ii) the United States Trustee, 201 Varick Street, Room 1006, New York, New York, 10014; and (iii) counsel to any statutory committee appointed in the Chapter 11 Cases.  A final hearing, if required, on the Motion will be held on _____ at _____ (ET) (the "Final Hearing").  If no objections are filed to the Final Order, the Court may enter the Final Order without further notice or hearing.

3.  GAP is authorized to pay pre-petition Wages and Benefits, as payments come due in the ordinary course and/or honor its wage and benefit obligations in accordance with its stated policies and in the ordinary course of its business and consistent with its past practices, including amounts owing as of, or accrued prior to, the Petition Date on account of (i) Employee Compensation, (ii) Unpaid Compensation, (iii) Employee Deductions, (iv) Reimbursable Expenses, (v) Payroll Processing Fees (vi) Employee Benefits, and (vii) Benefits Administration Fees.

4.  GAP is authorized, but not directed, to continue to honor the Wages and Benefits, make necessary contributions, pay any unpaid premium, claim, or amount owed in connection therewith as of, or accrued prior to, the Petition Date, in accordance with GAP's ordinary course of business, stated policies, and consistent with its past practices, as set forth in the Motion.

5.  GAP is authorized to modify, change, or discontinue any of its Wages and Benefits and to implement new programs, policies, and benefits in the ordinary course of business during these Chapter 11 Cases in GAP's discretion and without the need for further approval by this Court, subject to applicable law.

6.  GAP is authorized, but not directed, to continue the Severance Obligations and make any payments attributable to the Severance Obligations, including any that accrued prepetition in the ordinary course of business.

7.  Nothing in this order should be construed as approving any transfer pursuant to 11 U.S.C. § 503(c), and a separate motion will be filed for any request that could fall within Section 503(c). No payment to any employee may be made to the extent that it is a transfer in derogation of section 503(c) of the Bankruptcy Code.

8.      GAP is  authorized to make payments to applicable third parties from the Employee

Deductions and Employee Benefits, in accordance with GAP's ordinary course of business and

stated policies, as set forth in the Motion.

9.      The banks and financial institutions on which electronic payment requests were

made in payment of the prepetition obligations approved herein are authorized to receive, process,

honor, and pay all such electronic payment requests when presented for payment and all such

banks and financial institutions are authorized to rely on the Debtors' designation of any electronic

payment request as approved by this Order.

10.     GAP is authorized to reissue any electronic payment that was originally given in

payment of any prepetition amount authorized to be paid under this Order that is not cleared by

the applicable bank or financial institution.

11.     Notwithstanding anything to the contrary in this Interim Order, payments made

pursuant to this Interim Order shall only be made as they become due, and no payments shall be

accelerated prior to the Final Hearing.

12.     Notwithstanding the relief granted in this Order and any actions taken pursuant to

such relief, nothing in this Order shall be deemed: (i) an admission as to the validity, priority, or

amount of any claim against a Debtor entity; (ii) a waiver of GAP's or any party-in-interest's right

to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an

implication or admission that any particular claim is of a type specified or defined in this Order or

the Motion; (v) a requirement or authorization to assume any agreement, contract or lease pursuant

to section 365 of the Bankruptcy Code or (vi) a waiver of GAP's or any party-in-interest's rights

under the Bankruptcy Code or any other applicable law.

13.     GAP is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

14.     The requirements of Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.  Notwithstanding Bankruptcy Rule 6004, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____             _____
       New York, New York                 United States Bankruptcy Judge

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*, [1] | Case No.: 23-10063 (__) |
| Debtors. | Joint Administration Pending |

**FINAL ORDER (I) AUTHORIZING GENESIS ASIA PACIFIC PTE. LTD  TO (A) PAY
CERTAIN EMPLOYEE WAGES AND OTHER COMPENSATION AND RELATED
OBLIGATIONS AND (B) MAINTAIN AND CONTINUE EMPLOYEE
BENEFITS AND PROGRAMS IN THE ORDINARY COURSE, AND
(II) AUTHORIZING AND DIRECTING APPLICABLE BANKS TO
HONOR ALL TRANSFERS RELATED TO SUCH OBLIGATIONS**

**("FINAL WAGES AND BENEFITS ORDER")**

Upon the motion (the "Motion")[2] of Genesis Asia Pacific Pte. Ltd. ("GAP")  and the above

captioned affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of

interim and final orders, as more fully described in the Motion, authorizing GAP to pay certain

Wages and Benefits, and for certain related relief; and upon the *Declaration of A. Derar Islim in*

*Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim

Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications*

*in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of*

*Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule*

*1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration,

the "First Day Declarations"); and the Court having jurisdiction over this matter pursuant to 28

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification
number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia
Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park
Avenue South, 5th Floor, New York, NY 10003.

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

U.S.C. § 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court of New York dated January 31, 2012*; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution, and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of GAP, its estates, their creditors and the other parties in interest; and the Court having found that GAP's notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.       GAP is authorized to pay the Wages and Benefits and/or honor its wage and benefit obligations, as payments come due in the ordinary course, in accordance with its  stated policies, in the ordinary course of its business, and consistent with its past practices, including amounts owing as of, or accrued prior to, the Petition Date on account of (i) Employee Compensation, (ii) Unpaid Compensation, (iii) Employee Deductions, (iv) Reimbursable Expenses, (v) Payroll Processing Fees (vi) Employee Benefits, and (vii) Benefits Administration Fees.

3.      GAP is authorized, but not directed, to continue to honor the Wages and Benefits, make necessary contributions, pay any unpaid premium, claim, or amount owed in connection

therewith as of, or accrued prior to, the Petition Date, in accordance with GAP's ordinary course of business and stated policies, as set forth in the Motion.

4.      GAP is authorized to modify, change or discontinue any of the Wages and Benefits and to implement new programs, policies, and benefits in the ordinary course of business during these Chapter 11 Cases in GAP's discretion and without the need for further approval by this Court, subject to applicable law.

5.      GAP is authorized, but not directed, to continue the Severance Obligations and make any payments attributable to the Severance Obligations, including any that accrued prepetition in the ordinary course of business.

6.      Nothing in this order should be construed as approving any transfer pursuant to 11 U.S.C. § 503(c), and a separate motion will be filed for any request that could fall within Section 503(c).   No payment to any employee may be made to the extent that it is a transfer in derogation of section 503(c) of the Bankruptcy Code.

7.      GAP is authorized to make payments to applicable third parties from the Employee Deductions and Employee Benefits, in accordance with GAP's ordinary course of business and stated policies, as set forth in the Motion.

8.      The banks and financial institutions on which electronic payment requests were made in payment of the prepetition obligations approved herein are authorized to receive, process, honor all electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular electronic payment request as approved by this Order.

9.      GAP is authorized to reissue any electronic payment that was originally given in payment of any prepetition amount authorized to be paid under this Order that is not cleared by the applicable bank or financial institution.

10.     Nothing in the Motion or this Order, nor GAP's payment of any claims pursuant to this Order, shall be deemed or construed as an admission as to the validity or priority of any claim against GAP or an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

11.     GAP is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

12.     The requirements of Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived. Notwithstanding Bankruptcy Rule 6004, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____          _____
        New York, New York                  United States Bankruptcy Judge

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (__) |
| Debtors. | Joint Administration Pending |

**DEBTORS' MOTION FOR ENTRY**
**OF INTERIM AND FINAL ORDERS**
**WAIVING THE REQUIREMENT THAT EACH**
**DEBTOR FILE A LIST OF CREDITORS AND AUTHORIZING**
**PREPARATION OF A CONSOLIDATED LIST OF CREDITORS,**
**IN LIEU OF SUBMITTING A FORMATTED MAILING MATRIX,**
**(II) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED LIST**
**OF THE DEBTORS' FIFTY (50) LARGEST UNSECURED CREDITORS,**
**(III) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY**
**IDENTIFIABLE INFORMATION, AND (IV) GRANTING RELATED RELIEF**

Genesis Global Holdco, LLC ("Holdco") and its above-captioned debtors and debtors-in-

possession (collectively, the "Debtors" and these cases, the "Chapter 11 Cases"), hereby submit

this motion (this "Motion") for entry of interim and final orders, substantially in the form attached

hereto as Exhibit A (the "Proposed Interim Order") and Exhibit B (the "Proposed Final Order" and

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

together with the Proposed Interim Order, the "Proposed Orders"), pursuant to Sections 105(a) and 521(a)(1) of title 11 of the United States Code (the "Bankruptcy Code"), (i) waiving the requirement that each of the Debtors file a list of creditors and authorizing the Debtors to prepare a consolidated list of creditors in lieu of submitting a formatted matrix; (ii) authorizing the Debtors to file a single, consolidated list of the Debtors' fifty (50) largest unsecured creditors; (iii) authorizing the debtors to redact certain personally identifiable information; and (iv) granting the Debtors such other and further relief as the Court deems just and proper. A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' Chapter 11 Cases, is set forth in the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations") [2], filed contemporaneously herewith and incorporated herein by reference. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory

---

[2]      Capitalized terms not defined herein have the meaning ascribed to them in the First Day Declarations.

bases for the relief requested herein are Sections 105(a), 107(c), and 521(a)(1) of the Bankruptcy Code, Rules 1007, 2002, and 9013-1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 1007-1, 5075-1, and 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") and the Electronic Means for Filing, Signing and Verification of Documents, General Order M-399 (Gonzalez, C.J.).

## BACKGROUND

2.      Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors engage in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. ("DCG").

3.      Over the past few months, the digital asset industry has experienced tremendous dislocation.  The collapse of LUNA and TerraUSD and subsequent liquidation of 3AC signalled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.  As market conditions worsened, other companies faced financial difficulties, including Celsius Network LLC and certain affiliates and Voyager Digital Holdings, Inc. and certain affiliates, which filed for Chapter 11 in July 2022.  Most recently, FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda") and certain affiliates (together with FTX and Alameda, the "FTX Entities") filed for Chapter 11 proceedings.

4.      These drastic market shifts have decreased investor confidence in the digital asset markets and severely and adversely impacted the Company's business.  This "run on the bank" following the FTX Entities' collapse in early November severely impacted the Company's available liquidity.  As a result of the unprecedented number and size of the loan calls, on

3

November 16, 2022, GGC and GAP paused all lending and borrowing to preserve the Debtors'

estates, ensure fair distribution and begin discussions with our stakeholders.

5.      Over the past two months, the Debtors and their advisors have engaged in extensive

negotiations with various advisors to creditor groups to explore strategic solutions.  In addition,

the Debtors have undertaken cost-saving and liquidity-preserving measures.  As a result of those

efforts, the Debtors have determined that an in-court process is the best path to continue their

efforts to reach a consensual resolution and maximize value for the Debtors' stakeholders.

6.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are

operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the

Bankruptcy Code.  No trustee, examiner or official committee of unsecured creditors has been

appointed in the Debtors' Chapter 11 Cases.

7.      Additional information regarding the Debtors' business, capital structure and the

circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day

Declarations.

8.      While the Company's discussions with advisors to various creditor groups and

DCG have been very productive in narrowing issues, they have not yet achieved a global

resolution.  Accordingly, the Debtors commenced the Chapter 11 Cases to continue their efforts

towards a consensual resolution through a transparent, court supervised process.  To that end, the

Debtors are concurrently filing a proposed plan of reorganization, which will be amended as

necessary to reflect the results of our continued negotiations.

**RELIEF REQUESTED**

9.      By this Motion, the Debtors seek entry of the Proposed Orders (i) waiving the

requirement that each of the Debtors file a list of creditors and authorizing the Debtors to prepare

4

a consolidated list of creditors in lieu of submitting a formatted matrix; (ii) authorizing the Debtors to file a single, consolidated list of the Debtors' fifty (50) largest unsecured creditors; (iii) authorizing the debtors to redact certain personally identifiable information; (iv) and granting the Debtors such other and further relief as the Court deems just and proper.

### **BASIS FOR RELIEF**

**A.    Cause Exists to Waive the Requirement for Each Debtor to File a List of Creditors, and to Authorize the Debtors to File a Consolidated List of Creditors in Lieu of Submitting a Formatted Mailing Matrix**

10.    Section 521(a)(1) of the Bankruptcy Code states that "[t]he debtor shall[] file[] a list of creditors . . . ," and is implemented by Bankruptcy Rule 1007(a)(1), which requires a debtor in a voluntary case to "file with the petition a list containing the name and address of each entity included or to be included on Schedules D, E/F, G, and H as prescribed by the Official Forms." 11 U.S.C. § 521(a)(1); Fed. R. Bankr. P. 1007(a)(1). General Order M-399 provides that a debtor filing a case electronically must upload the creditors' matrix on the Court's electronic filing system and file the list of creditors on the case docket, each containing the information regarding creditors required by Bankruptcy Rule 1007(a)(1).

11.    The Debtors submit that waiving the requirement that each of the Debtors file a list of creditors, and permitting them to file and maintain a consolidated list of their creditors in electronic format, in lieu of filing individual creditor matrices, is warranted under the circumstances of these Chapter 11 Cases. Concurrently herewith, the Debtors have sought joint administration of their cases for procedural purposes.  Accordingly, the Debtors believe that filing a consolidated list of creditors rather than preparing and filing separate matrices will maximize administrative efficiency, increase accuracy, and reduce costs to the benefit of the Debtors' estates.

12.    In light of the foregoing, the Debtors submit that the maintenance of a consolidated list of creditors by their proposed claims and noticing agent, Kroll Restructuring Administration

LLC ("Kroll") is warranted under the facts and circumstances present here, and is similar to relief

routinely granted by this Court in other Chapter 11 Cases.[3] *See, e.g.*, Order, *In re Automotores*

*Gildemeister SpA, et al.*, Case No. 21-10685 (LGB) (Bankr. S.D.N.Y. Apr. 16, 2021), ECF No.

54; Order, *In re LATAM Airlines Grp. S.A.*, Case No. 20-11254 (JLG) (Bankr. S.D.N.Y. May 29,

2020), ECF No. 58; Order, *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr.

S.D.N.Y. Mar. 5, 2019), ECF No. 90; Order, *In re Sears Holdings Corp.*, Case No. 18-23538

(RDD) (Bankr. S.D.N.Y. Oct. 16, 2018), ECF No. 112; Order, *In re Repub. Airways Holdings Inc.*,

Case No. 16-10429 (SHL) (Bankr. S.D.N.Y. Feb. 29, 2016), ECF No. 49; Order, *In re NII*

*Holdings, Inc.*, Case No. 14-12611 (SCC) (Bankr. S.D.N.Y. Sept. 16, 2014), ECF No. 27; Order,

*In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Nov. 30, 2011), ECF No. 77.[4]

**B.      Filing a Single Consolidated List of the Debtors' Fifty (50) Largest Unsecured Creditors Is Warranted**

13.     Section 521(a) of the Bankruptcy Code requires the Debtors to file a list of creditors

and Bankruptcy Rule 1007(d) further requires the Debtors to file "a list containing the name,

address and claim of the creditors that hold the 20 largest unsecured claims, excluding insiders . .

." Fed. R. Bankr. P. 1007(d).  As many creditors are shared amongst the Debtors and the Debtors

largely operate as a coordinated enterprise, the Debtors request authority to file a single,

consolidated list of their fifty (50) largest general unsecured creditors.[5]

14.     The exercise of compiling separate top fifty (50) creditor lists for each individual

Debtor would consume the Debtors' time and resources otherwise needed to prepare for the filing

---

[3]      In accordance with Local Rule 5075-1, the Debtors have filed an application contemporaneously herewith seeking to retain Kroll as their claims and noticing agent in the Chapter 11 Cases.  If that application is granted, Kroll will, among other things, (i) assist with the consolidation of the Debtors' computer records into a creditor database and (ii) complete the mailing of notices to the parties in such database.

[4]      Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are publicly available, but will be provided upon request of the Debtors' proposed counsel.

[5]      The consolidated list of the Debtors' fifty (50) largest unsecured creditors described herein is attached as an exhibit to each of the Debtors' petitions.

of these Chapter 11 Cases and continue the Debtors' operations. Further, the Debtors believe that a single, consolidated list of the Debtors' fifty (50) largest unsecured, non-insider creditors will aid the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") in any potential efforts to communicate with these creditors concerning potential service on an official committee of unsecured creditors. As such, the Debtors believe that filing a single, consolidated list of the fifty (50) largest unsecured creditors in these Chapter 11 Cases is appropriate and in the best interests of the estates.

15.     Finally, relief similar to that requested in this Motion has been granted by this Court in other Chapter 11 Cases. *See, e.g.*, Order, *In re Automotores Gildemeister SpA, et al.*, Case No. 21-10685 (LGB) (Bankr. S.D.N.Y. Apr. 16, 2021) ECF No. 54; Order, *In re LATAM Airlines Grp. S.A.*, Case No. 20-11254 (JLG) (Bankr. S.D.N.Y. May 29, 2020), ECF No. 58; Order, *In re Windstream Holdings, Inc.*, Case No. 19- 22312 (RDD) (Bankr. S.D.N.Y. Mar. 5, 2019), ECF No. 90; Order, *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. Apr. 9, 2018), ECF No. 70; Order, *In re Tops Holding II Corp.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018), ECF No. 71; Order, *In re Cenveo, Inc.*, Case No. 18-22178 (RDD) (Bankr. S.D.N.Y. Feb. 6, 2018), ECF No. 70.[6]

### C.     Cause Exists to Redact Certain Personal Identification Information for Creditors

16.     Section 107 of the Bankruptcy Code provides that the Court may:

> (b) (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> . . .
>
> (c) . . . for cause, may protect an individual, with respect to the following types of information to the extent the court finds that

---

[6]     Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are publicly available, but will be provided upon request of the Debtors' proposed counsel.

disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual[:]

(A)     Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.

(B)     Other information contained in a paper described in subparagraph

11 U.S.C. § 107(emphases added). Furthermore, Bankruptcy Rule 9037(a) authorizes the Court to redact personally identifiable information of minors. *See* Fed. R. Bankr. P. 9037(a).

17.     The Debtors seek authority to redact from any paper filed or to be filed with the Court in these Chapter 11 Cases, including the consolidated creditors list, the names, home addresses and email addresses of all individual creditors—including the Debtors' employees, former employees, and customers.  The Debtors believe this relief is appropriate in these Chapter 11 Cases because of the risks involved with public disclosure of such information, which can be used to perpetrate identity theft or allow bad actors to locate survivors of domestic violence, or engage in other harassment or stalking. This risk is not merely speculative. In at least one recent chapter 11 case, the abusive former partner of a debtor's employee used the publicly accessible creditor and employee information filed in the chapter 11 case to track the employee at her new address that had not been publicly available until then, forcing the employee to change addresses again.[7]

18.     Courts in this jurisdiction have granted the relief requested herein in comparable Chapter 11 Cases. See, e.g., *In re Celsius Network LLC.,* No. 22-10964 (MG) (Bankr. S.D.N.Y. July 19, 2022) (granting the redaction of home addresses of individual creditors); *In re*

---

[7]     The incident, which took place during the first Charming Charlie chapter 11 proceedings in 2017, is described in the creditor matrix motion filed in *Charming Charlie Holdings Inc.*, Case No. 19-11534 (CSS) (Bankr. D. Del. Jul. 11, 2019), ECF No. 4.

*Automotores Gildemeister SpA*, et al., No. 21-10685 (LGB) (Bankr. S.D.N.Y. Apr. 15, 2021) (permitting the debtors to redact creditors' home addresses in publicly-accessible court filings); *In re Frontier Commc'ns. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020) (authorizing the debtors to redact personal information from public versions of the statements and schedules); In re The McClatchy Co., No. 20-10418 (MEW) (Bankr. S.D.N.Y. Feb. 14, 2020) (authorizing the debtors to use corporate addresses for, or redact address information of, individual creditors on the creditor matrix); *In re Fairway Grp. Holdings Corp*., No. 20-10161 (JLG) (Bankr. S.D.N.Y. Feb. 3, 2020) (authorizing the debtors to redact address information of individual creditors and interest holders listed on the creditor matrix and lists of equity holders); *In re Aegean Marine Petrol. Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 22, 2020) (authorizing the debtors to redact personal information not limited to mailing addresses from public versions of the statements and schedules); *In re Barneys New York, Inc*., No. 19-36300 (CGM) (Bankr. S.D.N.Y. Nov. 4, 2019) (authorizing the debtors to redact personally identifiable information, including but not limited to home address information, of their employees on the creditor matrix, schedules and statements, or similar documents filed with the court); *In re Deluxe Entm't. Servs., Inc*., No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 9, 2019) (authorizing the debtors to redact personally identifiable information, including but not limited to home address information, of their employees and former employees on the creditor matrix).[8]

19.     Courts in other districts have also expounded on the importance of authorizing debtors to redact employees' and other individual creditors' personally identifiable information. Notably, in his bench ruling in Forever 21, Judge Gross stated that "[w]e live in a new age in which the theft of personal identification is a real risk, as is injury to persons who, for personal reasons,

---

[8]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

seek to have their addresses withheld." Hr'g Tr. at 60:22–25, *In re Forever 21, Inc.*, No. 19-12122 (MFW) (Bankr. D. Del. Dec. 19, 2019).

20.     Judge Gross further found that individuals' home addresses are a means of identification that may be protected under section 107(c), stating "[w]hat is critical is [that] the residential address that appears on the driver's license, and that is why driver's licenses are protected, because of the driver's address. And further on in Section 1028, a means of identification, which is the term used in Section 107, specifically includes a driver's license, which, again, is material for containing a home address."[9] *Id.* at 61:22, 62:3.  Accordingly, the Debtors submit that the redaction of home addresses and email addresses of its individual creditors is appropriate in these circumstances.

21.     The Debtors also seek to redact the names of individual creditors.  Certain of the Debtors' creditors may be identifiable on the basis of their name alone, leaving individuals subject to the same dangers discussed above.  This relief is also necessary in order to enable the Debtors' compliance with certain data privacy laws to which they are subject. The digital asset community is international, and the Debtors have creditors in numerous jurisdictions.  If a creditor resides in or has processed their data through a jurisdiction with specific privacy regimes, and said privacy regime requires the redaction of individual names, the Debtors wish to abide by these laws. Compliance with these data privacy laws will ensure that the value of the estate is maximized and Debtors do not become subject to fines imposed for violating the various data privacy laws.

---

[9]     This ruling is consistent with Judge Gross' previous rulings on this issue. *See, e.g.*, Hr'g Tr. at 47:24–48:1, *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. June 24, 2019) ("So, here, the home address, plus the fact of employment by debtors in this day and age exposes employees to identity theft.); Hr'g Tr. at 21:13–15, *In re Dex Media, Inc.*, No. 16-11200 (KG) (Bankr. D. Del. May 18, 2016) ("I think, that in the present day, with the abuse of private information, that these addresses ought to be redacted[.]").

22.     Data privacy laws have been enacted in key jurisdictions related to this matter. Namely the United Kingdom Data Protection Act of 2018 and the United Kingdom General Data Protection Regulation (together, the "UK GDPR"), the European General Data Protection Regulation (the "EU GDPR"), and the Singaporean Personal Data Protection Act 2012 (the "Singapore PDPA"). As described above, these laws impose substantial limitations on the disclosure of information relating to identified or identifiable individuals, including names and home addresses.

23.     Violators of the UK GDPR, EU GDPR, and Singapore PDPA risk civil and monetary penalties. In Singapore, if personal data is mishandled, the offending party may be subject to a fine of up to $1 million. *See* Singapore Personal Data Protection Act 2012, Part 9C(48J). If an organization is found to have processed information in breach of the UK GDPR, the organization may be fined up to the higher of £17,500,000 or 4% of worldwide annual turnover (i.e., total annual revenues) of the preceding financial year. *See* United Kingdom Data Protection Act 2018, section 157(5)(a). A breach of the EU GDPR may potentially subject an organization to a fine of up to the higher of €20,000,000 or 4% of worldwide annual turnover (i.e., total annual revenues) of the preceding financial year. *See* General Data Protection Regulation (EU) 2016/679, art. 83(5). The Debtors seek to maximize the value of the estate for the benefit of all its stakeholders and seeks to avoid the imposition of monetary policies that may result from the breach of these local data privacy laws.

24.     Courts in this jurisdiction have granted the relief requested above in similar Chapter 11 Cases. *See In re Voyager Holdings, Inc.,* No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 28, 2022) (granting debtors permission to redact any customer names connected to the EU and UK); *In re Vewd Software USA*, LLC, No. 21-12065 (MEW) (Bankr. S.D.N.Y. Dec. 17, 2021) (allowing

the debtors to redact names and addresses of individuals protected by the GDPR); *In re GTT Commc'ns. Inc.,* No. 21-11880 (MEW) (Bankr. S.D.N.Y. Nov. 4, 2021) (allowing the debtors to redact names and addresses of individuals protected by the GDPR).

25.     The Debtors propose to provide an unredacted version of the consolidated creditors list and any other applicable filings redacted pursuant to the Proposed Orders to (a) the Court, the U.S. Trustee, counsel to any official committee appointed in these Chapter 11 Cases, and (b) any party in interest, upon a request reasonably related to these Chapter 11 Cases directed to the Debtors (email is sufficient) or to the Court.  In addition, the Debtors will distribute, as applicable, any notices that are received at the Debtors' corporate headquarters and are intended for a current employee.

26.     For these reasons, the Debtors respectfully submit that cause exists to authorize the Debtors to redact, pursuant to 11 U.S.C. § 107(c)(1), the names, home addresses and email addresses of individuals listed on the consolidated creditors list or any other document filed with the Court. Absent such relief, the Debtors would unnecessarily render such individuals more susceptible to identity theft, and could jeopardize the safety of employees, and other individual creditors who are survivors of domestic violence, or at risk of harassment or stalking, by publishing their names, home addresses or email addresses without any advance notice or the opportunity to engage with the Debtors regarding the appropriate scope and nature of any disclosure of their name and identifying information.

**NOTICE**

27.     Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for Region 2; (ii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (iii) those creditors holding the five (5) largest secured claims against the

12

Debtors' estates (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and

Exchange Commission; and (vi) all others that are required to be noticed in accordance with

Bankruptcy Rule 2002 and Local Rule 2002-1. The Debtors submit that, in light of the nature of

the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

28.     No prior motion for the relief requested herein has been made to this or any other

Court.

*[The remainder of this page is left intentionally blank]*

13

## <u>CONCLUSION</u>

WHEREFORE, for the reason set forth herein the Debtors respectfully request that this Court (a) enter the Proposed Orders, substantially in the form attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u> and (b) grant such other and further relief as is just and proper.

Dated:   January 20, 2023
        New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

**Proposed Interim Order**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (__) |
| Debtors. | Joint Administration Pending |

### INTERIM ORDER WAIVING THE REQUIREMENT THAT EACH DEBTOR FILE A LIST OF CREDITORS AND AUTHORIZING PREPARATION OF A CONSOLIDATED LIST OF CREDITORS, IN LIEU OF SUBMITTING A FORMATTED MAILING MATRIX (II) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED LIST OF THE DEBTORS' FIFTY (50) LARGEST UNSECURED CREDITORS, (III) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION, AND (IV) GRANTING RELATED RELIEF

Upon the Motion (the "Motion")[2] of Genesis Global Holdco, LLC ("Holdco") and its affiliate, as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an interim order (this "Interim Order"), as more fully described in the Motion, (i) waiving the requirement that each of the Debtors file a list of creditors and authorizing the Debtors to prepare a consolidated list of creditors in lieu of submitting a formatted matrix; (ii) authorizing the Debtors to file a single, consolidated list of the Debtors' fifty (50) largest unsecured creditors; (iii) authorizing the debtors to redact certain personally identifiable information; and (iv) granting the Debtors such other and further relief as the Court deems just and proper and upon the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

*First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "<u>Aronzon Declaration</u>"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "<u>Leto Declaration</u>," and along with the Islim Declaration and the Aronzon Declaration, the "<u>First Day Declarations</u>") filed concurrently with the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "<u>Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the Motion and on the record of the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on an interim basis to the extent set forth herein.

2. The final hearing on the Motion shall be held on _____, 2023, at __:__ __.m. Eastern Time. Any objections or responses to entry of the Proposed Final Order shall be filed by

_____, 2023, at 4:00 p.m. Eastern Time and served on the following parties: (i) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014; and (ii) Counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn: Sean A. O'Neal, Esq. and Jane VanLare, Esq.

3.      The requirement under Bankruptcy Rule 1007(a)(1) that each of the Debtors file a list of creditors, counterparties to executory contracts and unexpired leases and co-debtors on the Petition Date is hereby waived.

4.      The Debtors, or their appointed agent, are authorized to prepare and maintain a consolidated list of creditors in electronic format that is acceptable to the Clerk of the Court, in lieu of any required matrix, and to make such list available to other parties in interest upon request. The Debtors shall file this consolidated list on the docket within (7) days of the Petition Date.

5.      Notwithstanding Bankruptcy Rule 1007(d) and Local Rule 1007-1, the Debtors are authorized to file a consolidated list of their fifty (50) largest unsecured creditors in the Chapter 11 Cases, in lieu of filing separate lists of the twenty largest unsecured creditors in each of the Debtors' respective Chapter 11 Cases.

6.      The Debtors are authorized, pursuant to sections 107(c) and 105(a) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1, to redact the names, home addresses and email addresses of individuals listed on the consolidated creditors list or other documents filed with this Court.

7.      The Debtors shall provide an unredacted version of the consolidated creditors list, and any other filings redacted pursuant to this Interim Order to (x) the Court, the U.S. Trustee and counsel to any official committee appointed in these Chapter 11 Cases, and (y) any party in interest, upon a request to the Debtors (email is sufficient) or to the Court that is reasonably related to these

Chapter 11 Cases; provided that any receiving party shall not transfer or otherwise provide such unredacted document to any person or entity not party to the request. The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document pursuant to this Interim Order.

8.      Nothing herein precludes a party in interest's, or the U.S. Trustee's, right to file a motion requesting that this Court unseal the information redacted by this Interim Order.

9.      The Debtors shall submit an unredacted copy of the consolidated creditors list to the Clerk of the Court under seal in an envelope, clearly indicating that the same has been filed under seal by order of this Court and may not be unsealed until and unless permitted by further order of this Court.

10.     Counsel for the Debtors shall contact the Clerk's Office regarding the return or disposition of the sealed documents at the conclusion of the contested matter.

11.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Interim Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in implementation, enforcement or realization of the relief granted in this Interim Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Interim Order.

12.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

Dated: _____, 2023          _____
         New York, New York                         United States Bankruptcy Judge

## EXHIBIT B

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-(____) |
| Debtors. | Joint Administration Pending |

**ORDER WAIVING THE REQUIREMENT**
**THAT EACH DEBTOR FILE A LIST OF CREDITORS AND**
**AUTHORIZING PREPARATION OF A CONSOLIDATED LIST OF CREDITORS,**
**IN LIEU OF SUBMITTING A FORMATTED MAILING MATRIX**
**(II) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED LIST**
**OF THE DEBTORS' FIFTY (50) LARGEST UNSECURED CREDITORS, (III)**
**AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY**
**IDENTIFIABLE INFORMATION, AND (IV) GRANTING RELATED RELIEF**

Upon the Motion (the "Motion")[2] of Genesis Global Holdco, LLC ("Holdco") and its affiliate, as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order, as more fully described in the Motion, (i) waiving the requirement that each of the Debtors file a list of creditors and authorizing the Debtors to prepare a consolidated list of creditors in lieu of submitting a formatted matrix; (ii) authorizing the Debtors to file a single, consolidated list of the Debtors' fifty (50) largest unsecured creditors; (iii) authorizing the debtors to redact certain personally identifiable information; and (iv) granting the Debtors such other and further relief as the Court deems just and proper and upon the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions*

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]      Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

*and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations") filed concurrently with the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and on the record of the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The requirement under Bankruptcy Rule 1007(a)(1) that each of the Debtors file a list of creditors, counterparties to executory contracts and unexpired leases and co-debtors on the Petition Date is hereby waived.

3.       The Debtors, or their appointed agent, are authorized to prepare and maintain a consolidated list of creditors in electronic format that is acceptable to the Clerk of the Court, in lieu of any required matrix, and to make such list available to other parties in interest upon request. The Debtors shall file this consolidated list on the docket within (7) days of the Petition Date.

4.       Notwithstanding Bankruptcy Rule 1007(d) and Local Rule 1007-1, the Debtors are authorized to file a consolidated list of their fifty (50) largest unsecured creditors in the Chapter 11 Cases, in lieu of filing separate lists of the twenty largest unsecured creditors in each of the Debtors' respective Chapter 11 Cases.

5.       The Debtors are authorized, pursuant to sections 107(c) and 105(a) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1, to redact the names, and home or email addresses of individuals listed on the consolidated creditors list or other documents filed with this Court.

6.       The Debtors shall provide an unredacted version of the consolidated creditors list, and any other filings redacted pursuant to this Final Order to (x) the Court, the U.S. Trustee and counsel to any official committee appointed in these Chapter 11 Cases, and (y) any party in interest, upon a request to the Debtors (email is sufficient) or to the Court that is reasonably related to these Chapter 11 Cases; provided that any receiving party shall not transfer or otherwise provide such unredacted document to any person or entity not party to the request. The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document pursuant to this Final Order.

7.       Nothing herein precludes a party in interest's, or the U.S. Trustee's, right to file a motion requesting that this Court unseal the information redacted by this Final Order.

8.     The Debtors shall submit an unredacted copy of the consolidated creditors list to the Clerk of the Court under seal in an envelope, clearly indicating that the same has been filed under seal by order of this Court and may not be unsealed until and unless permitted by further order of this Court.

9.     Counsel for the Debtors shall contact the Clerk's Office regarding the return or disposition of the sealed documents at the conclusion of the contested matter.

10.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Final Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Final Order.

11.     This Final Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6003(b) or otherwise.

12.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Dated: _____, 2023
New York, New York

_____
United States Bankruptcy Judge

# TAB 7

Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

<u>**NOTICE OF FILING OF THE RESTRUCTURING TERM SHEET**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On January 19, 2023 (the "<u>Petition Date</u>"), Genesis Global Holdco, LLC

("<u>Holdco</u>") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned

chapter 11 cases (collectively, the "<u>Debtors</u>"), each filed a voluntary petition for relief under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>")

with the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy</u>

<u>Court</u>").

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

2.      Since November 2022, the Debtors have engaged in substantive discussions with their creditors, including with two ad hoc groups of GGC lenders (the "Ad Hoc Groups") that represent more than $2 billion in outstanding loans, and DCG, Holdco's corporate parent and its largest borrower, in an effort reach a consensual resolution that maximizes value and treats creditors fairly and equitably.  The Debtors and their advisors have actively facilitated and led these discussions, providing feedback and pushing the parties toward a resolution.

3.      As announced on the record at the status conference on February 6, 2023, the Debtors, DCG and the Ad Hoc Groups have reached an agreement in principle as described in the Restructuring Term Sheet (the "Term Sheet") attached hereto as Exhibit A, which Term Sheet remains subject to the negotiation and execution of definitive documentation, including a plan support agreement.  Copies of the Term Sheet can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

Dated:      February 10, 2023
            New York, New York

*Sean A. O'Neal*
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors and
Debtors-in-Possession*

**Exhibit A**

**Restructuring Term Sheet**

# GENESIS GLOBAL HOLDCO, LLC
## TERM SHEET
### FEBRUARY 10, 2023

This term sheet (including the annexes, exhibits, and schedules attached hereto, collectively, this "Term Sheet")[1] sets forth the general terms and conditions of certain related transactions (the "Transactions") which have been agreed to by an ad hoc group of creditors of Genesis Global Capital, LLC ("GGC," each creditor of GGC party hereto, a "Consenting GGC Creditor" and the Consenting GGC Creditors, collectively, the "Consenting GGC Creditors"), which in the aggregate hold or otherwise represent in excess of $2.4 billion in asserted claims against GGC (collectively, the "Ad Hoc Group") and are represented by Houlihan Lokey, Inc., Kirkland & Ellis LLP, and Proskauer Rose LLP (such advisors, the "Ad Hoc Group Advisors"), Genesis Global Holdco, LLC ("GGH," together with GGC, Genesis Asia Pacific, Pte. Ltd. ("GAP"), and the other subsidiaries of GGH, "Genesis"), Gemini Trust Company, LLC ("Gemini"), and Digital Currency Group, Inc. ("DCG").[2] The Consenting GGC Creditors, Genesis, Gemini, and DCG shall collectively be referred to as the "Parties" herein.

The Transactions will be consummated pursuant to an amended chapter 11 plan (the "Amended Plan") containing terms set forth herein to be confirmed in the cases commenced by GGH, GGC, and GAP (collectively, the "Genesis Debtors") on January 19, 2023 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), *In re Genesis Global Holdco, LLC, et al.*, Case No. 23-10063 (the "Chapter 11 Cases").

This Term Sheet does not address all material terms, conditions, covenants, and other provisions that would be required in connection with any potential transaction, including such changes to the structure as are necessary or appropriate to achieve a tax-efficient outcome, and any agreement is subject to access to certain financial information and the execution of definitive documentation consistent with this Term Sheet and otherwise acceptable to the Required Consenting GGC Creditors,[3] DCG, Genesis, and Gemini (to the extent the rights of Gemini Lenders are implicated) in the manner set forth herein and in the Plan Support Agreement, as defined below. As contemplated herein, subject to applicable securities laws, DCG is prepared to commit to have its preferred equity and related common shares included in the Transactions be freely tradeable, allowing GGC and/or its creditors (the "GGC Creditors") to monetize the shares for their preferred currency or participate in the potential appreciation of DCG equity over time, in accordance with the terms set forth herein and in the Plan Support Agreement.

**THIS TERM SHEET IS NOT LEGALLY BINDING AND DOES NOT CONSTITUTE AN OFFER, ACCEPTANCE, OR SOLICITATION WITH RESPECT TO ANY SECURITIES, LOANS, OR OTHER INSTRUMENTS OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER, ACCEPTANCE, OR SOLICITATION SHALL BE MADE ONLY IN COMPLIANCE WITH SECTION 4(a)(2) OF THE SECURITIES ACT AND/OR SECTIONS 1125 AND 1145 OF THE BANKRUPTCY CODE AND APPLICABLE PROVISIONS OF SECURITIES, BANKRUPTCY, AND/OR OTHER APPLICABLE STATUTES, RULES, AND LAWS. NOTHING CONTAINED IN THIS TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY OR,**

---

[1] Capitalized terms used but not otherwise or immediately defined herein shall have the meaning ascribed to such terms elsewhere herein or in the Plan Support Agreement, as applicable.

[2] The Plan Support Agreement and the Amended Plan shall include provisions for distributions to be made to GAP creditors.

[3] "Required Consenting GGC Creditors" shall mean, as of the relevant date, Consenting GGC Creditors holding, collectively, in excess of fifty percent (50%) of the aggregate principal amount of asserted claims against GGC held or controlled by the Consenting GGC Creditors that are members of the Ad Hoc Group. Gemini, in its individual capacity, shall be considered a "Consenting GGC Creditor" under this Term Sheet and the Plan Support Agreement only with respect to the amount of claims that it actually controls for purposes of voting to accept or reject the Amended Plan, if any.

**UNTIL CONFIRMATION OF THE AMENDED PLAN CONTEMPLATED HEREBY (AND THEN ONLY AS PROVIDED THEREIN), DEEMED BINDING ON ANY OF THE PARTIES HERETO.**

**THIS TERM SHEET IS A SETTLEMENT PROPOSAL IN FURTHERANCE OF SETTLEMENT DISCUSSIONS. ACCORDINGLY, THIS TERM SHEET IS PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROTECTING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS. FOR THE AVOIDANCE OF DOUBT, ANY PARTY MAY PUBLICLY DISCLOSE THE EXISTENCE OF SETTLEMENT NEGOTIATIONS, THIS TERM SHEET AND THE TERMS SET FORTH HEREIN.**

**THE REGULATORY, TAX, ACCOUNTING, AND OTHER LEGAL AND FINANCIAL MATTERS AND EFFECTS RELATED TO THE TRANSACTIONS OR ANY RELATED TRANSACTION OR SIMILAR TRANSACTION HAVE NOT BEEN FULLY EVALUATED, AND ANY SUCH EVALUATION MAY AFFECT THE TERMS AND STRUCTURE OF ANY TRANSACTIONS OR RELATED TRANSACTIONS. NOTHING HEREIN SHALL CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, AND EACH STATEMENT CONTAINED HEREIN IS MADE WITHOUT PREJUDICE, SOLELY FOR SETTLEMENT PURPOSES.**

| OVERVIEW AND PARTIES | |
|---|---|
| **Plan Support Agreement** | The Parties shall agree to execute and deliver a Plan Support Agreement (the "Plan Support Agreement") evidencing their support for the Transactions contemplated herein, which Plan Support Agreement shall be consistent with the terms set forth herein. This Term Sheet shall be attached as an exhibit to the Plan Support Agreement, and shall become effective upon the PSA Effective Date. |
| **Global Settlement** | The Transactions are structured as a global settlement and compromise among the Parties. |
| **Implementation** | Subject to the terms and conditions of the Plan Support Agreement (which shall include additional milestones, consent rights, and conditions not set forth in this Term Sheet, solely to the extent mutually agreed by the parties thereto), the Transaction will be structured, implemented, and accomplished through the Amended Plan to be filed by the Genesis Debtors and confirmed by the Bankruptcy Court in accordance with section 1129 of the Bankruptcy Code, which Amended Plan shall be materially consistent with this Term Sheet and otherwise reasonably acceptable in form and substance to the Genesis Debtors, Gemini, DCG, and the Required Consenting GGC Creditors. |
| **GGC Creditor Recoveries In-Kind** | The Genesis Debtors and DCG will use commercially reasonable efforts, in consultation with the Ad Hoc Group Advisors and the Required Consenting GGC Creditors, to provide recoveries to GGC Creditors under the Amended Plan in kind in the form of crypto or fiat currency in which their claim is denominated; provided that nothing in this Term Sheet, the Plan Support Agreement, or the Amended Plan shall require the Genesis Debtors or DCG to acquire fiat currency or digital assets or otherwise exchange any type of fiat currency or digital asset into any other form of fiat currency or digital asset for purposes of making distributions to the GGC Creditors. |
| CURRENT DCG CAPITAL STRUCTURE | |
| **Existing Eldridge Facility** | DCG's obligations arising under or in connection with that certain senior secured Existing Eldridge Facility due November 2026 (the "Existing Eldridge Facility") consisting of $350 million in original principal amount, plus interest, fees, and other expenses arising and payable under that certain Credit Agreement, dated as of November 12, 2021, among DCG, as borrower, SB Corporate Funding, LLC (the "Agent"), as administrative agent and collateral agent, and the lenders party thereto (the "Existing Eldridge Lenders") (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time). Pursuant to that certain Pledge and Security Agreement, dated as of November 12, 2021, by and among DCG, as borrower, the Grantors (as defined therein) from time to time party thereto, and the Agent, as security for the prompt and complete performance in full of the Secured Obligations (as defined therein), each Grantor pledged, collaterally assigned, mortgaged, hypothecated, and granted to the Agent, its successors, and permitted assigns, on behalf of and for the benefit of the Secured Parties (as defined therein) a continuing security interest in all of such Grantor's right, title, and interest in, to and under all of the personal property and other assets specified therein, whether then owned by or owing to, or thereafter acquired by or arising in favor of such Grantor (including under any trade name or derivations thereof), and whether then owned or consigned by or to, or leased from or to, such Grantor, and regardless of where located (all of the foregoing, the "Eldridge Collateral" and any such liens in favor of the Agent or any other Secured Party relating to the Eldridge Collateral, the "Eldridge Liens"). |
| **Existing DCG 2023 Loans** | DCG's obligations arising under or in connection with the Existing DCG 2023 Loans due May 2023 ("Existing DCG 2023 Loans") consisting of approximately $604 million USD |

| | in principal amount plus interest, fees, and other expenses arising and payable under (a) that certain Amended and Restated Master Loan Agreement, dated November 10, 2022, by and between DCG and GGC (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "A&R MLA") and (b) that certain Master Loan Agreement by and between GGC and DCG International Investments Ltd., dated as of June 21, 2019. |
|---|---|
| | The Existing DCG 2023 Loans are comprised of approximately (a) 4,550 BTC payable, with a value of approximately $102 million as of January 20, 2023, (b) 14,048 BCH payable, with a value of approximately $1.8 million as of January 20, 2023, and (c) $500 million payable in USD.  The Parties acknowledge that the balance is subject to an asserted $52 million setoff of DCG's obligation to GGC against DCG's asserted subrogation right following satisfaction by DCG of certain Luno Australia Pty Ltd. obligations pursuant to DCG's guarantee of such obligations, which all the Parties acknowledge is subject to dispute. |
| **Existing DCG 2032 Note** | DCG's obligations arising under or in connection with the Existing DCG 2032 Note due June 2032 ("Existing DCG 2032 Note") consists of approximately $1.1 billion in principal amount, plus interest, fees, and other expenses arising and payable under that certain Promissory Note, dated June 30, 2022, by and between DCG, as obligor, and GGC as holder (the "Promissory Note"). |
| **DCG Existing Shares** | All issued and outstanding common shares of DCG as of the PSA Effective Date, including all options or warrants to purchase such shares (the "DCG Existing Shares").  Currently, there are:  (a) 4,058,146 Class A common stock shares, (b) 62,067,301 Class B common stock shares and (c) 3,639,405 issued but unexercised options. |
| **MONETIZATION OF THE GENESIS PLATFORM** | |
| **The Sale Process[4]** | On or as soon as reasonably practicable following the effective date of the Amended Plan (the "Plan Effective Date"), DCG shall contribute all of the equity interests it currently holds in Genesis Global Trading, LLC ("GGT") to GGH (the "GGT Contribution").[5] |
| | Following the PSA Effective Date, and subject to finalization of Genesis entities' and GGT's business plans, GGH, in consultation with the Required Consenting GGC Creditors, the Ad Hoc Group Advisors, DCG, and the official committee of unsecured creditors, if any, appointed by the U.S. Trustee in the Chapter 11 Cases (the "Committee"), shall conduct one or more marketing and sales processes in an effort to maximize the value of any disposition of GGT, Genesis Global Markets Limited ("GGML"), and/or other entities comprising the Genesis Platform according to the principles set forth herein (the "Sale Process"): |
| | &bull; Joint Purpose:  The Parties shall endeavor to maximize the value of the Genesis Platform through the Sale Process; |

---

[4]   Parties to discuss the simultaneous timing of the GGT Contribution, sale, and credit to 2023 Loans.

[5]   As a condition precedent to the PSA Effective Date, DCG must obtain, and provide written confirmation to the other Parties of, the Existing Eldridge Lenders' or Replacement Facility Lenders' (as defined below) consent to entry into the Plan Support Agreement.

- <u>Coordination</u>: The Parties, in consultation with the Committee, shall use commercially reasonable efforts to agree to a marketing schedule for, and potential transaction parties to solicit over the course of, the Sale Process;

- <u>Consultation</u>: GGH shall determine, in consultation with the Required Consenting GGC Creditors, the Ad Hoc Group Advisors, DCG, and the Committee, whether a Sale Transaction, a Wind-Down, an Equitization, or another course of action represents the most value maximizing disposition of the Genesis Platform; and

- <u>Use of Proceeds</u>: The proceeds of any Monetization Transaction shall vest (i) *first*, in the Genesis Debtors or a liquidation trust (the "<u>Liquidation Trust</u>") to be established on the Plan Effective Date, as applicable, in the amount of estimated administrative claims, priority claims, professional fee claims, and secured claims, (ii) *second*, if an Equitization does not occur, in the Liquidation Trust in an amount necessary (as determined by GGH, with the consent of the Ad Hoc Group Advisors and the Required Consenting GGC Creditors or with Bankruptcy Court approval, upon notice and hearing) to fund the Liquidation Trust's expenses until all Amended Plan distributions are made, (iii) *third*, if an Equitization occurs, in GGH in the amount necessary (as determined by GGH, with the consent of the Ad Hoc Group Advisors and the Required Consenting GGC Creditors or with Bankruptcy Court approval, upon notice and hearing), together with cash or digital assets on hand, to continue any Genesis businesses that were not otherwise sold in the Sale Process, and (iv) *fourth*, in a trust (the "<u>GGC Creditors Trust</u>") to be formed on the Plan Effective Date, which trust shall be responsible for making distributions to the GGC Creditors; *provided* that, notwithstanding the foregoing, any proceeds of any Monetization Transaction that are in the form of equity shall vest in the GGC Creditors Trust.[6]  The GGC Creditors Trust shall use commercially reasonable efforts to provide any public reporting necessary to allow units of the GGC Creditors Trust to be tradeable.  Notwithstanding the foregoing, under all circumstances, no proceeds of any Monetization Transaction shall be used by Genesis without entry of an order of the Bankruptcy Court, upon notice and hearing.

***Sale Process Milestones***.  To be mutually agreed by Genesis, the Required Consenting GGC Creditors, the Ad Hoc Group Advisors, and DCG.

"<u>Equitization</u>" means, if the Sale Process does not result in the sale of all or substantially all of the assets of Genesis, a restructuring under the Amended Plan pursuant to which the GGC Creditors will receive, among other things, one hundred percent (100%) of the equity in reorganized GGH, subject to dilution by a management incentive program that may be implemented with the approval of the Bankruptcy Court, upon notice and hearing.

"<u>Genesis Platform</u>" means, in consultation with the Required Consenting GGC Creditors, the Ad Hoc Group Advisors, DCG, and the Committee, one or more of the following:  (a)

---

[6]   Treatment of administrative claims, priority claims, professional fee claims, secured claims, and wind-down costs in connection with an equity bid to be discussed.

| | the cryptocurrency savings and trading platform, or any successor platform thereto, operated by GGT, (b) GGML, and (c) any other subsidiaries of GGH. |
|---|---|
| | "<u>Monetization Transaction</u>" means a Sale Transaction, a Wind-Down, or any other monetization transaction or transactions. |
| | "<u>Sale Transaction</u>" means a transaction or transactions in which the Genesis Platform is sold, in whole or in part, to a third party. |
| | "<u>Wind-Down</u>" means the liquidation and formal dissolution of the Genesis Platform in whole or in part. |

| **TREATMENT OF EXISTING DCG CLAIMS AND INTERESTS** | |
|---|---|
| **Existing DCG-Eldridge Facility** | DCG shall be solely responsible for the refinancing and/or repayment of the Existing Eldridge Facility. |
| **Existing DCG 2023 Loans**[7] | On the Plan Effective Date, in exchange for, and in full and final satisfaction of the obligations arising under, the Existing DCG 2023 Loans (including any accrued and unpaid interest thereunder), DCG shall issue a new, junior secured term loan in two tranches in the aggregate total of approximately $500 million and 4,631.5275436429 BTC, respectively ("<u>New Second Lien Facility</u>"), made payable to the GGC Creditors Trustee, as agent for and on behalf of the GGC Creditors.[8]   The terms of the New Second Lien Facility shall include:<br><br>• <u>Principal Amount</u>:<br><br>   o <u>Tranche 1</u>: $473.7 million[9] minus the Mandatory Prepayment<br><br>   o <u>Tranche 2</u>: 4,631.5275436429 BTC<br><br>• <u>Maturity</u>: June 30, 2024.<br><br>• <u>Interest Rate</u>:<br><br>   o <u>Tranche 1</u>:  11.5% to be paid in U.S. dollars monthly in arrears.<br><br>   o <u>Tranche 2</u>:  5.0% to be paid in BTC monthly in arrears. |

---

[7]   As a condition precedent to the PSA Effective Date, DCG must obtain, and provide written confirmation to the other Parties of, the Existing Eldridge Lenders' or Replacement Facility Lenders' consent to entry into the Plan Support Agreement.

[8]   Notwithstanding the foregoing, the Parties shall meet and confer regarding the possibility of exchanging the loans denominated in USD to BTC, ETH, or other digital assets prior to closing.

[9]   The principal balance of Tranche 1 of the New Second Lien Facility reflects the reduction in an amount equal to fifty percent (50%) of the amount paid by DCG to Luno Australia Pty Ltd pursuant to the Luno Guarantee; *provided*, that the principal balance shall not be reduced by an amount greater than $26.3 million.  In exchange, DCG and Luno Australia Pty Ltd. shall agree to waive any and all claims against GGC relating to the Luno Guarantee and the loan(s) underlying such guarantee.

- **Payment at Maturity**:  Principal repayment of all outstanding amounts, together with all accrued interest and fees with respect thereto.

- **Prepayment and Default Fees**:  The New Second Lien Facility shall be prepayable at DCG's discretion, subject to the following prepayment schedule.  Any prepayments of the New Second Lien Facility must be paid, on a *pro rata* basis, in kind to each of Tranche 1 or Tranche 2, which shall only be prepayable in their respective currencies.

  o  If a prepayment is made within the first six (6) months following the close of the Transaction, there shall be no prepayment fee;

  o  If a prepayment is made between six to twelve (6–12) months following the close of the Transaction, the prepayment fee shall be equal to one percent (1%) of the principal amount prepaid;

  o  If a prepayment is made between twelve (12) months following the close of the Transaction and the Maturity Date, the prepayment/default fee shall be equal to two percent (2%) of the principal amount repaid; and

  o  Following the Maturity Date, the Interest Rate shall be increased by two percent (2%) for all amounts, if any, then outstanding and DCG shall be deemed in default.

- **Reduction in New Second Lien Facility as a Result of Prepayments**:  Any prepayment will accordingly result in a reduction of the New Second Lien Facility by such prepayment amount.

- **Collateral**:  Same as Eldridge Collateral or Replacement Facility Collateral, as applicable.

- **Priority**:  The liens securing the New Second Lien Facility shall be subordinate only to, as applicable, (i) the Eldridge Liens, (ii) the liens securing any rollover of the Eldridge Facility, or (iii) any liens granted in connection with a replacement of the Eldridge Facility (a "Replacement Facility"; the lenders thereunder, the "Replacement Facility Lenders"; and the collateral securing such Replacement Facility, the "Replacement Facility Collateral"), which, in any case, shall in no event be larger than $350 million in principal amount.  The GGC Creditor Trustee shall be required to enter into an intercreditor agreement implementing the foregoing with the Agent or the agent or other representative for the Replacement Facility Lenders on terms and conditions reasonably satisfactory to the GGC Creditor Trustee and the Agent or agent or other representative for the Replacement Facility Lenders, as applicable.

- **Mandatory Prepayment**:  The principal amount of the New Second Lien Facility shall be reduced by an amount equal to the Mandatory Prepayment Amount, subject to the terms hereof.  For the avoidance of doubt, any cash and/or digital assets not sold in connection with a Sale Transaction for a Genesis Platform entity shall mandatorily be used to prepay Tranche 1 and Tranche 2 of the New Second Lien Facility; *provided*, *however*, that under all circumstances, Tranche 2 shall be

repaid in kind.[10]  Additionally, subject to any mandatory prepayments under the Eldridge Facility, any proceeds from the sale or monetization of DCG affiliates or subsidiaries other than the Genesis Platform shall be used to prepay Tranche 1 and Tranche 2 of the New Second Lien Facility; *provided*, *however*, that under all circumstances, Tranche 2 shall be repaid in kind.[11]  Furthermore, for the avoidance of doubt, a Mandatory Prepayment shall not trigger any prepayment or default fees associated with DCG's discretionary prepayment of the New Second Lien Facility as contemplated by this Term Sheet.

- **Trust**:  The New Second Lien Facility and proceeds of the New Second Lien Facility shall be placed in the GGC Creditors Trust, and shall be distributed pursuant to the Amended Plan for the benefit of the GGC Creditors.

- **Other Terms**:  The Parties shall include in the Definitive Documents customary affirmative and negative covenants to be discussed (including limitations on Permitted Indebtedness, which shall not exceed the Debt Limit).  Holders will have the right to transfer or otherwise assign their interests in the New Second Lien Facility.  The Parties shall agree to treat the New Second Lien Facility, including Tranche 2, as debt for all applicable federal income tax purposes, unless otherwise required by a "determination."

"Book Value" shall mean the book value, according to generally accepted accounting principles, of each of the respective Subject Entities, as determined by the Independent Accounting Firm prior to commencement of the Sale Process, which shall reflect the recovery of the intercompany loan obligations owed by GGC International Ltd. ("GGCI") to GGML at par.[12]

"Debt Limit" shall mean $350 million (plus obligations outstanding under the New Second Lien Facility) and any indebtedness incurred pursuant to the immediately following sentence.  For the avoidance of doubt, DCG shall be entitled to incur additional debt in the amount necessary for (and actually used in connection with) the effectuation of any redemption of the Preferred Stock (as defined below).

"GGC Creditors Trustee" means the entity designated by the Required Consenting GGC Creditors, in consultation with the Genesis Debtors, Gemini, DCG, and the Committee, on or prior to the Plan Effective Date to serve as trustee/agent of the GGC Creditors Trust and with respect to the New Second Lien Facility.

"Independent Accounting Firm" shall mean an independent accounting firm mutually acceptable to the Parties to be agreed upon prior to commencement of the Sale Process.

---

[10]  There shall be no obligation on Genesis or DCG to convert any proceeds or consideration into BTC to accomplish such reduction in kind.  Tranche 2 shall be reduced by the value received in BTC.  The remainder of any value received shall be applied to reduce Tranche 1.

[11]  There shall be no obligation on Genesis or DCG to convert any proceeds or consideration into BTC to accomplish such reduction in kind.  Tranche 2 shall be reduced by the value received in BTC.  The remainder of any value received shall be applied to reduce Tranche 1.

[12]  It is expected that the Book Value will be consistent with preliminary December balance sheets reviewed by DCG on January 19, 2023 that included Book Values of $85 million and $111 million for GGML and GGT, respectively.

| | "Mandatory Prepayment Amount" shall mean an amount equal to: |
|---|---|
| | (i) in the event of a Sale Transaction, the greater of (x) the resulting proceeds (as determined by the Parties or an Independent Accounting Firm) and (y) the Book Value of each relevant Subject Entity; |
| | (ii) in the event of a Wind-Down, an amount equal to the collective Book Values of all relevant Subject Entities *less* $3.0 million and $12.0 million as the Book Value reductions in a Wind-Down for GGML and GGT, respectively; |
| | (iii) in the event there is neither a Sale Transaction nor a Wind-Down, the Book Value for the relevant Subject Entity. |
| | "Sale Process Consummation Date" means either (i) the effective date of a Monetization Transaction; or (ii) the date on which GGH, in consultation with the Required Consenting GGC Creditors, the Ad Hoc Group Advisors, DCG, and the Committee, notifies the GGC Creditors that it has elected not to enter into a Monetization Transaction. |
| | "Subject Entities" means (i) GGT and (ii) GGML. |
| **Existing DCG 2032 Note** | In exchange for, and in full and final satisfaction of the obligations arising under, the Existing DCG 2032 Note (including any accrued and unpaid interest thereunder), DCG shall establish and issue, or cause a Permitted Subsidiary[13] or successor-in-interest to DCG to establish and issue (such successor or each Permitted Subsidiary, an "Alternative DCG Issuer"), a class of convertible Preferred Stock (the "Preferred Stock") upon the Plan Effective Date, which Preferred Stock shall be distributed as set forth below. |
| | • Deemed Issuance Date: September 30, 2023. |
| | • PIK Rate: The paid-in-kind rate ("PIK Rate") for the Preferred Stock shall be ten percent (10%) until December 31, 2027. |
| | • Preferred Value: Shall be $575 million as of the Deemed Issuance Date and, with respect to any calendar quarter starting after the Deemed Issuance Date, accrete on a quarterly basis on the last day of each calendar quarter (the "Quarterly Accretion") in an amount determined based on the following formula, as reflected in Table 1 below: |
| | Quarterly Accretion = (Applicable Preferred Value * (1 + PIK Rate) ^ Interest Period) – Applicable Preferred Value |
| | For the avoidance of doubt, the accretion shall continue even during periods when the Cash Rate is applicable. |
| | • Cash Rate: The cash pay rate (the "Cash Rate") for the Preferred Stock shall be ten and one half percent (10.5%). Effective as of December 31, 2027, but solely to the extent DCG or any Alternative DCG Issuer has not satisfied the DCG Listing Commitment (as defined below), the Cash Rate shall increase by an additional one percent (1%) every six (6) months thereafter until either (i) the DCG Listing |

---

[13] "Permitted Subsidiary" means a wholly-owned or controlled subsidiary of DCG agreed to by DCG, GGH, the Consenting GGC Creditors, and the Ad Hoc Group Advisors.

Commitment has been satisfied or (ii) the Preferred Stock has been repurchased or redeemed in full by DCG, or if applicable, the Alternative DCG Issuer.

- <u>Cash Rate Applicability</u>: If, by June 30, 2025, DCG or any Alternative DCG Issuer has not fulfilled all necessary requirements of a Listing (as described under the header "Listing" below) to list freely tradeable Exchanged Common Equity (the "<u>DCG Listing Commitment</u>") on an Approved Exchange (as defined below), then the Cash Rate shall be applicable and remain applicable until such time as DCG or any Alternative DCG Issuer fulfills the DCG Listing Commitment.

- <u>Cash Pay Interest</u>: For the period during which the Cash Rate is applicable (as described above), with respect to any calendar quarter, cash interest shall be paid on a quarterly basis on the first business day of the following quarter ("<u>Quarterly Cash Pay Interest</u>") in an amount equal to the product of:

Applicable Preferred Value * Cash Rate * Interest Period

For the convenience of the Parties, an illustrative example of the calculation of the Quarterly Cash Pay Interest is attached hereto as Exhibit 1

| Table 1: Preferred Schedule ($mm) | | | | |
|---|---|---|---|---|
| Date | Preferred Value | PIK Rate | Cash Rate | Quarterly Cash Interest[1] |
| Effective Date | $575.0 | - | - | - |
| 9/30/2023 | 575.0 | 10.00% | - | - |
| 12/31/2023 | 589.0 | 10.00% | - | - |
| 3/31/2024 | 603.1 | 10.00% | - | - |
| 6/30/2024 | 617.6 | 10.00% | - | - |
| 9/30/2024 | 632.7 | 10.00% | - | - |
| 12/31/2024 | 648.0 | 10.00% | - | - |
| 3/31/2025 | 663.5 | 10.00% | - | - |
| 6/30/2025 | 679.4 | 10.00% | 10.50% | 18.0 |
| 9/30/2025 | 695.9 | 10.00% | 10.50% | 18.4 |
| 12/31/2025 | 712.9 | 10.00% | 10.50% | 18.5 |
| 3/31/2026 | 729.8 | 10.00% | 10.50% | 19.1 |
| 6/30/2026 | 747.4 | 10.00% | 10.50% | 19.8 |
| 9/30/2026 | 765.5 | 10.00% | 10.50% | 20.3 |
| 12/31/2026 | 784.1 | 10.00% | 10.50% | 20.3 |
| 3/31/2027 | 802.8 | 10.00% | 10.50% | 21.0 |
| 6/30/2027 | 822.1 | 10.00% | 10.50% | 21.8 |
| 9/30/2027 | 842.1 | 10.00% | 10.50% | 22.3 |
| 12/31/2027 | 862.6 | - | 10.50% | 22.6 |
| 3/31/2028 | 862.6 | - | 10.50% | 22.6 |
| 6/30/2028 | 862.6 | - | 11.50% | 25.0 |
| 9/30/2028 | 862.6 | - | 11.50% | 25.0 |
| 12/31/2028 | 862.6 | - | 12.50% | 26.6 |
| Thereafter[2] | 862.6 | - | | |

*1. Cash interest paid quarterly on the first business day of the following quarter*

*2. If outstanding, cash interest rate increases by 1% every 6 months in perpetuity*

- Initial Preferred Stock Shares:  Upon the Plan Effective Date, DCG shall issue, or shall cause an Alternative DCG Issuer to issue,  the shares of Preferred Stock to (x) the GGC Creditors Trust, (y) Genesis for distribution to the GGC Creditors, or (z) to the GGC Creditors directly (as agreed upon by DCG and Genesis) in a number of shares to be determined by DCG (and reasonably agreed to by the Required Consenting GGC Creditors) prior to the PSA Effective Date (the "Initial Preferred Stock Shares").

- Conversion:  Prior to satisfaction of the DCG Listing Commitment,

  o  Holders of Preferred Stock may provide a notice of conversion ("Conversion Notice") at any time.

  o  Preferred Stock that is subject of a Conversion Notice provided during the period beginning twenty (20) calendar days prior to the Applicable Quarterly Valuation Deadline and ending on the twentieth (20th) day following an Applicable Valuation Date (an "Exclusive Conversion Period") shall convert at the end of such Exclusive Conversion Period.

  o  Preferred Stock that is subject of a Conversion Notice provided not during an Exclusive Conversion Period shall convert at the earlier of (i) the end of the next Exclusive Conversion Period and (ii) the first business day of the calendar quarter following satisfaction of the DCG Listing Commitment.

  o  Following satisfaction of the DCG Listing Commitment, the Preferred Stock shall, on the first business day of each calendar quarter after the issuance of the Preferred Stock, be voluntarily convertible at the election of the holder of such Preferred Stock and mandatorily converted by DCG on December 31, 2027 (any such conversion of Preferred Stock, a "Conversion" and the date of each such Conversion, a "Conversion Date").

- Conversion Amount:  The Preferred Stock shall convert into the number of shares of Exchanged Common Equity (the "Exchanged Common Equity Shares") such that the number of Exchanged Common Equity Shares received by the converting holders of the Preferred Stock *divided by* the number of DCG Outstanding Shares (after giving effect to the issuance of Exchanged Common Equity Shares and True-Up Shares) as of the Conversion Date is equal to Ratio B (as outlined in the equation below).

- Exchanged Common Equity Shares = Ratio B * the number of DCG Outstanding Shares (after giving effect to the issuance of Exchanged Common Equity Shares and True-Up Shares)

For the convenience of the Parties, an illustrative hypothetical example of the determination of the Conversion Amount at various hypothetical Conversion Dates is attached hereto as Exhibit 2.

- "Ratio A" shall mean, with respect to each Conversion Date, the quotient of (a) the number of shares of Preferred Stock being converted on such Conversion Date *divided by* (b) Initial Preferred Stock Shares.

- "Ratio B" shall mean the quotient of (a) the Preferred Value on the Conversion Date (as shown in Table 1) *multiplied by* Ratio A *divided by* (b) DCG Equity Value as of such Conversion Date. Notwithstanding the foregoing, upon any Conversion of shares of Preferred Stock, Ratio B shall at all times be subject to the Collar (as defined below). For the avoidance of doubt, for purposes of calculating Ratio B, the Preferred Value on the Conversion Date will be as shown in Table 1 and will not be affected by any prior Conversions or Redemptions.

- Voting Rights: All Preferred Stock shall be non-voting. DCG Exchanged Common Equity Shares shall be voting shares with substantially the same voting rights as the Class [•] of common stock of DCG have as of the date hereof.

- DCG Redemption Right: The Preferred Stock (or the equivalent thereof of any applicable Alternative DCG Issuer), in whole or in part, shall be redeemable by DCG (or the Alternative DCG Issuer, if applicable), at its election upon delivery by DCG (or the Alternative DCG Issuer, if applicable) to the applicable holders of a notice of such redemption (a "Redemption Notice"), for cash at a per share price equal to: (x) the Applicable Preferred Value (as shown in Table 1), as of the effective date of such redemption (and not the date of such Redemption Notice), divided by (y) the total number of Initial Preferred Stock Shares (a "Redemption," and the cost thereof, the "Redemption Price"); provided, however, that the DCG Redemption Right shall be suspended during (i) any Exclusive Conversion Period and (ii) any period during which a Quarterly Valuation is due but not delivered. The foregoing notwithstanding, once the DCG Listing Commitment has been satisfied, there shall be no further Exclusive Conversion Periods and the DCG Redemption Right shall be exercisable at any time. For the avoidance of doubt, no Preferred Stock (or the equivalent thereof of any applicable Alternative DCG Issuer) subject to a Redemption Notice may be converted following the delivery of a Redemption Notice. Furthermore, any Redemption Notice by DCG shall be deemed automatically terminated at the start of the next Exclusive Conversion Period if no Redemption has occurred.

- Collar: Upon the Conversion of any shares of Preferred Stock, the calculation of Ratio B for purposes of calculating the number of Exchanged Common Equity Shares to be issued in connection with such Conversion shall be subject in all cases to a minimum equity ownership threshold in DCG of twenty percent (20%) *multiplied by* Ratio A and an equity ownership cap of forty percent (40%) *multiplied by* Ratio A;[14] provided, however, that the Collar shall be adjusted as necessary to be considered economically neutral to the holders of Preferred Stock if such Preferred Stock is issued by the Alternative DCG Issuer.

---

[14] Subject to applicable law, in the event that this proposal is not accepted by creditors holding at least $2.4 billion of asserted claims against GGC on or before the date that is seven days following the PSA Effective Date, the equity ownership floor shall be 10% *multiplied by* Ratio A and the equity ownership cap shall be 30% *multiplied by* Ratio A.

- **Quarterly True-Up**: Upon each Conversion Date, if any holder of Exchanged Common Equity Shares that elected to convert in a prior quarter (an "<u>Existing Holder</u>") is subject to dilution from a holder of Preferred Stock shares electing to convert on such Conversion Date (a "<u>New Holder</u>") such that the ratio of Exchanged Common Equity Shares held by the Existing Holder divided by the number of DCG Outstanding Shares (after giving effect to such Conversion) is less than the Existing Holder's Initial Conversion Ratio, such Existing Holder will receive additional shares of DCG common equity ("<u>True-Up Shares</u>") such that the aggregate number of shares of DCG common equity (inclusive of Exchanged Common Equity Shares and True-Up Shares) held by such Existing Holder divided by DCG Outstanding Shares (after giving effect to the issuance of Exchanged Common Equity Shares and True-Up Shares) is equal to such Existing Holder's Initial Conversion Ratio, subject to dilution for issuances of DCG common equity other than the Exchanged Common Equity.[15]

- **Priority**: Prior to Conversion in full, the Preferred Stock shall be (a) subordinated only to debt and (b) senior to any other equity interests in DCG or the Alternative DCG Issuer, as applicable, in any insolvency. DCG shall not be permitted to issue another class of shares senior to DCG Existing Equity or incur any funded indebtedness in excess of the Debt Limit, in each case, so long as any Preferred Stock remains outstanding.

- **Listing**: DCG shall use commercially reasonable efforts to register and list the Exchanged Common Equity Shares on any Approved Exchange by February 15, 2025 (the "<u>Listing Deadline</u>"), and the Exchanged Common Equity Shares shall be freely tradeable (whether by registration or otherwise) by holders thereafter (other than as the result of (x) transfer restrictions arising as a result of such holders' status, such as an "affiliate" of the relevant issuer, or (y) any lock-up period applicable to any holder of Exchanged Common Equity Shares, the terms of which lock-up period shall be the same as or better for such holders of Exchanged Common Equity Shares than the terms of any lock-up to which any other holder of DCG Existing Equity will be subject in connection with the same offering. DCG shall provide to the GGC Creditors and their advisors all information reasonably necessary for the GGC Creditors and their advisors to facilitate a transaction to liquidate the Preferred Stock or Exchanged Common Equity Shares (to the extent permitted hereunder).

- **Registration Information**: GGC Creditors and, to the extent applicable, their advisors will provide DCG with all information reasonably necessary for Listing, and, subject to the terms hereof, shall (x) accept the terms of the offering as agreed upon by DCG and (y) complete and execute all such reasonably customary agreements, lock-up letters, and other documents required by the underwriter or reasonably requested by DCG; <u>provided</u> that the terms of any lock-up period shall be the same as or better for such holders of Exchanged Common Equity than the terms of any lock-up to which any other holder of DCG Existing Equity will be subject in connection with the same offering.

---

[15] The Plan Support Agreement will address issues related to dilution for issuances of DCG common equity other than the Exchanged Common Equity.

- Dividends to Equity: DCG or the Alternative DCG Issuer, as applicable, shall be prohibited from paying any dividend on account of the DCG Existing Shares so long as any Preferred Stock remains outstanding.

- Participation on Liquidation: In the event of a liquidation of DCG or the Alternative DCG Issuer, as applicable, the outstanding Preferred Stock shall be entitled to receive proceeds equal to the outstanding liquidation preference based on the Preferred Value of such outstanding Preferred Stock at the time of liquidation.

- Tax Treatment: The Parties agree that the Preferred Stock does not constitute "preferred stock" for purposes of Section 305 of the Internal Revenue Code, and the Parties shall report consistent with such treatment in the absence of a "determination."[16]

- Alienability: Prior to Registration, if the Preferred Stock is issued or distributed to the GGC Creditors, the Preferred Stock and the Exchanged Common Equity may be freely sold or transferred by GGC Creditors for cash or other consideration in one or more transactions, subject in all respects to compliance with applicable securities laws.

- Other Terms: Customary minority shareholder provisions (to be mutually agreed by DCG and the Required Consenting GGC Creditors prior to the Plan Effective Date) shall be automatically implemented upon conversion of any Preferred Stock.

- Reporting: For so long as the Preferred Stock remains outstanding, and is not registered pursuant to Section 12(g) of the Exchange Act, DCG shall distribute to all stockholders (including holders of the Preferred Stock or Exchanged Common Equity), on a "public basis", annual and quarterly financial statements, in each case, within customary time periods to be agreed.

- Other Distributions prior to Conversion. The following shall be contributed by DCG to the GGC Creditors Trust:

  o The first $25 million in value of any proceeds or consideration, which may be in-kind, that DCG recovers from TAC pursuant to the TAC Liquidation Proceeding, without any reduction in value in the Preferred Stock;

  o All cryptocurrency or digital assets identified in Schedule A of that certain Pledge Agreement dated January 27, 2022, by and between GAP and Three Arrows Capital Ltd. ("Pledged Tokens"), recovered from TAC pursuant to the TAC Liquidation Proceeding, without any reduction in value in the Preferred Stock; and

  o Any value that DCG recovers from TAC pursuant to the TAC liquidation proceeding in excess of $25 million (and without regard to the value of any Pledged Tokens that are recovered), which shall reduce the amount of the Preferred Value (at the time of such distribution) so long any Preferred Stock

---

[16] Subject to ongoing tax review.

remains outstanding by an amount equal to the value of any distribution pursuant to this sub-bullet.

- <u>Certain Definitions Applicable to this Section</u>:  Capitalized terms used above shall have the following meanings:

"<u>Applicable Quarterly Valuation Deadline</u>" means, with respect to each fiscal quarter, the date on which a Quarterly Valuation for such fiscal quarter is to be made available to all holders of the Preferred Stock, which date for each fiscal quarter will be mutually agreed by Genesis, DCG and the Required Consenting GGC Creditors in the Plan Support Agreement.

"<u>Applicable Preferred Value</u>" means, with respect to any calendar quarter for which the Quarterly Accretion is to be calculated and/or the Quarterly Cash Pay Interest is due, as applicable, the Preferred Value on the first day of such calendar quarter.

"<u>Approved Exchange</u>" means any exchange set forth on the Exchange List or any other exchange selected by DCG not included thereon that is otherwise consented to by the Required Consenting GGC Creditors (which consent shall not be unreasonably withheld, conditioned, or delayed).

"<u>Interest Period</u>" means the ratio equal to (i) the number of days elapsed during the calendar quarter for which the Quarterly Accretion is to be calculated and/or the Quarterly Cash Pay Interest is due, as applicable, divided by (ii) 365 days.

"<u>DCG Equity Value</u>" means the fair market value of DCG Outstanding Shares (after giving effect to the contemplated issuance of shares of Exchanged Common Equity and True-Up Shares on a given Conversion Date) as determined by the Independent Valuator. Any such determination of DCG Equity Value (each, a "<u>Quarterly Valuation</u>") shall be delivered to DCG by the Independent Valuator quarterly and shall be made available to all holders of the Preferred Stock and Exchanged Common Equity thereafter (the most recent date on which any such Quarterly Valuation was made available to all holders of the Preferred Stock, the "<u>Applicable Valuation Date</u>").

"<u>DCG Outstanding Shares</u>" means the number of shares of DCG common stock (or the equivalent thereof of any applicable Alternative DCG Issuer) equal to (a) DCG Existing Shares plus (b) any shares of Exchanged Common Equity previously issued in connection with any Conversion of the Preferred Stock.

"<u>Exchange List</u>" means the list of exchanges upon which DCG may list the Exchanged Common Equity for it to be considered freely tradeable in satisfaction of the DCG Listing Commitment.  The Exchange List shall be mutually agreed upon by DCG, Genesis, and the Required Consenting GGC Creditors in good faith and attached as an exhibit to the Plan Support Agreement.[17]  Notwithstanding the foregoing, DCG can satisfy the DCG

---

[17]  It is the Parties' intent that the exchanges on the Exchange List shall: (i) provide, to the extent reasonably practicable, for the Exchanged Common Equity to trade in the most liquid, accessible market for the Exchanged Common Equity; and (ii) include, without limitation, OTC markets (other than Pink Sheets) and the junior markets of the major exchanges, including, without limitation, TSX Venture Exchange and AIM (London Stock Exchange).

| | |
|---|---|
| | Listing Commitment by listing on a U.S. exchange not included on the Exchange List with the consent of the Required Consenting GGC Creditors.

"Exchanged Common Equity" shall mean any shares of Class [•] common stock of DCG (or the equivalent thereof of any Alternative DCG Issuer) ("DCG Exchanged Common Equity") exchanged and distributed to the GGC Creditors Trustee, as agent for and on behalf of the GGC Creditors, or the GGC Creditors directly, as applicable, pursuant to the exercise of the Preferred Stock in accordance with the terms set forth herein.

"Independent Valuator" means a nationally recognized corporate valuation firm, to be selected prior to the Plan Effective Date by mutual agreement among DCG, Genesis, and the Ad Hoc Group Advisors in good faith.

"TAC" shall mean Three Arrows Capital, Ltd and any of its affiliates or subsidiaries.

"TAC Liquidation Proceeding" shall mean that certain liquidation proceeding captioned *In the Matter of Three Arrows Capital Ltd. and in the Matter of Sections 159(1) and 162(1)(a) and (b) of the Insolvency Act 2003*, Claim No. BVIHC(COM)2022/0119 before the Eastern Caribbean Supreme Court in the High Court of Justice in the British Virgin Islands and the chapter 15 foreign recognition proceeding captioned *In re Three Arrows Capital, Ltd.*, No. 22-10920 (Bankr. S.D.N.Y. Jul. 1, 2022).

"TAC Recovery" shall have the meaning set forth in the Existing DCG 2032 Note. |
| **Dilution of Existing Equity** | The DCG Existing Shares shall be diluted by the issuance of the Exchanged Common Equity. |
| | **OTHER MATERIAL TRANSACTION TERMS** |
| **Plan of Reorganization** | The Genesis Debtors shall file an Amended Plan, revised to reflect the terms and conditions set forth in this Term Sheet, no later than ten (10) days after the PSA Effective Date.  Under the Amended Plan, the claims of the Gemini Lenders (as defined below) against GGC (the "Gemini Lender Claims") will be classified in their own class(es), separate from the claims of the other GGC Creditors, and will receive substantially similar recoveries as the claims of the other GGC Creditors, except for the Gemini-specific release provision and Convenience Class provision set forth below.  Treatment of GGC Creditor Claims shall be consistent with the terms set forth herein and subject to the consent of the Required Consenting GGC Creditors, which consent shall not be unreasonably withheld, conditioned, or delayed.  Treatment of the Gemini Lender Claims shall be consistent with the terms set forth herein and subject to the consent of Gemini, which consent shall not be unreasonably withheld, conditioned, or delayed.  Notwithstanding the foregoing and anything to the contrary in this Term Sheet, to the extent the treatment of GGC Creditor Claims and Gemini Lender Claims under the Amended Plan is consistent with this Term Sheet and the Plan Support Agreement, and does not include any other materially disproportionate or otherwise adverse treatment, the Parties will be deemed to consent to such treatment.  In the event that either this Term Sheet or the Plan Support Agreement is terminated as to any Party, such Party and the Genesis Debtors reserve all rights and defenses with respect to the classification of claims under the Amended Plan or any other chapter 11 plan pertaining to the Genesis Debtors.[18] |

---

[18]   For the avoidance of doubt, notwithstanding anything to the contrary herein or in the Plan Support Agreement, nothing in this Term Sheet or in the Plan Support Agreement is intended to be, shall be, or shall be construed to

| | The Amended Plan may include, with the consent of Gemini (such consent not to be unreasonably withheld, conditioned, or delayed), a convenience class (the "<u>Convenience Class</u>") in which any Gemini Lender that (i) holds Gemini Lender Claims in the aggregate under a threshold amount (to be determined by the Genesis Debtors with the consent of DCG, Gemini, the Required Consenting GGC Creditors, and the Committee, such consent not to be unreasonably withheld, conditioned, or delayed) or (ii) agrees to reduce the amount of its claims to such threshold amount, may elect to participate.[19]<br><br>In lieu of distributions of the New Second Lien Facility and the Preferred Stock, members of the Convenience Class may receive in cash a recovery percentage to be agreed upon by the Genesis Debtors, Gemini, DCG, and the Required GGC Consenting Creditors (the "<u>CC Recovery Rate</u>"); <u>provided</u> that the CC Recovery Rate shall not exceed the net present value of the recovery rate of other GGC Creditors under the Amended Plan.<br><br>If a Gemini Lender consents to a third-party release of its direct claims against the Gemini Parties, such Gemini Lender shall be entitled to receive, in addition to the treatment provided to all holders of allowed GGC Creditor Claims and to the extent not paid in full pursuant to the Amended Plan, its *pro rata* share (among all consenting Gemini Lenders) of the Cash Contribution. Gemini Lenders that elect not to provide the third-party release of their claims against the Gemini Parties shall retain their direct claims against the Gemini Parties and shall not be entitled to any recovery from the Cash Contribution.<br><br>For the avoidance of doubt, no Gemini Lender will be paid more than in full pursuant to the Amended Plan.<br><br>For purposes of distributions to be made under the Amended Plan, Gemini shall be deemed to be the holder of all Gemini Lender Claims, and all distributions on account of such allowed Gemini Lender Claims shall be made to Gemini and held in trust in a segregated account for the benefit of the holders of allowed Gemini Lender Claims.  As soon as practicable following the Plan Effective Date, Gemini shall arrange to deliver or direct the delivery of such distributions to or on behalf of the holders of allowed Gemini Lender Claims, subject to any modifications, with the consent of Gemini (such consent not to be unreasonably withheld, conditioned, or delayed), to such distributions in accordance with the terms of the Amended Plan.<br><br>"<u>Gemini Parties</u>" means Gemini, its predecessors, successors and assigns, parents, subsidiaries, affiliates, and all of their respective current and former officers and directors, principals, shareholders, members, partners, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, and such persons' respective heirs, executors, estates, servants and nominees. |
| **Gemini Support** | Gemini is executing this Term Sheet on its own behalf and in its capacity as agent for its retail users participating in the Earn program (the "<u>Gemini Lenders</u>") pursuant to that certain Master Digital Asset Loan Agreement entered into among each Gemini Lender, Gemini, and GGC (the "<u>Gemini MDLA</u>") and other agreements between each Gemini |

---

be an admission by any Consenting GGC Creditor as to the propriety of, or legal justification for, the classification of claims in the Amended Plan or any other chapter 11 plan pertaining to the Genesis Debtors.

[19] Parties to discuss the addition of a separate convenience class for non-Gemini claimants.

| | |
|---|---|
| | Lender and Gemini (together with the Gemini MDLA, the "Earn Agreements"). Gemini, when acting as agent, will do so only pursuant to the authority granted to Gemini to act on behalf of such Gemini Lenders in the Earn Agreements. Gemini shall use commercially reasonable efforts to encourage the Gemini Lenders to support the Transactions through voting to accept the Amended Plan. Gemini, in its individual capacity, shall be considered a "Consenting GGC Creditor" under this Term Sheet and the Plan Support Agreement only with respect to the amount of claims that it actually controls for purposes of voting to accept or reject the Amended Plan, if any. |
| **Disposition of Gemini Earn Collateral** | On November 16, 2022, Gemini purportedly foreclosed upon collateral maintained by Gemini with respect to the Gemini Lenders (the "Gemini Collateral"). As of the Petition Date, the Parties agree that the value of the Gemini Collateral was $354,180,262 (the "Petition Date Collateral Value"). To the extent that the value of the Gemini Foreclosed Collateral as of the Plan Effective Date is greater than the Petition Date Collateral Value, the amount of any such increase in value shall be referred to as the "Postpetition Appreciation". In no event shall the Genesis Debtors be obligated to provide any adequate protection to the Gemini Lenders as a result of any diminution in value of the Gemini Collateral. |
| | Disposition of Gemini Foreclosed Collateral: The Petition Date Collateral Value shall be applied *pro rata* to the amounts owed to the Gemini Lenders by GGC to reduce the amount of such liability as of the Petition Date. On or as soon as reasonably practicable after the Plan Effective Date, Gemini shall distribute to each holder of an allowed Gemini Lender Claim its *pro rata* share of the Petition Date Collateral Value and the Postpetition Appreciation; *provided* that the Postpetition Appreciation shall (i) be deemed a distribution under the Amended Plan and (ii) not reduce such Gemini Lender Claims for purposes of calculating *pro rata* distributions with other GGC Creditors. For the avoidance of doubt, on the Plan Effective Date, the Genesis Debtors waive all rights, claims, and interests in or to the Gemini Collateral. |
| **Fiduciary Out** | Notwithstanding anything to the contrary in this Term Sheet or the Definitive Documentation, to the extent that (a) any of the Genesis boards of directors (or comparable governing member or body) or (b) any Consenting GGC Creditors appointed to an official committee under chapter 11 of the Bankruptcy Code, determine in good faith, based on the advice of counsel, that fiduciary obligations of the respective Party under applicable law require such Party to take or refrain from taking any action contemplated under this Term Sheet or the Plan Support Agreement, Genesis or any such Consenting GGC Creditor may, upon ten (10) business days' advance written notice to the other Parties, terminate this Term Sheet or the Plan Support Agreement, in the case of such Consenting GGC Creditor, as to itself, and in the case of Genesis, as to all Parties, without incurring any liability to any one or more of the Parties. |
| | Notwithstanding anything to the contrary herein, nothing in this Term Sheet, the Plan Support Agreement, or the Definitive Documents shall create any additional fiduciary obligations on the part of any Party or any members, managers, or officers thereof, in such respective capacities, that did not exist prior to entry into this Term Sheet. |
| **PSA Effective Date** | The date (the "PSA Effective Date") upon which the Plan Support Agreement becomes effective pursuant to its terms, including the condition that the Plan Support Agreement has been executed by the following Parties: (i) holders or representatives of at least $2.4 billion |

| | in aggregate outstanding claims currently held, controlled, or represented by the Ad Hoc Group against GGC; (ii) DCG; (iii) Genesis; and (iv) Gemini. |
|---|---|
| **Governance** | In consideration for the Exchanged Common Equity to be provided in accordance with the terms herein, upon Conversion, the Required Consenting GGC Creditors shall have the option to elect up to two (2) independent members of the DCG board of directors with the reasonable consent of DCG (such consent not to be unreasonably withheld, conditioned, or delayed), depending on the percentage of GGC Creditors' equity ownership of DCG. |
| **Gemini Contribution** | In consideration for being included as a Released Party, on or as soon as reasonably practicable following the Plan Effective Date, as a contribution, Gemini will:<br><br>    i.   contribute cash in the amount of $100 million for the pro-rata benefit of Gemini Lender Claims that provide releases as provided for herein (the "Cash Contribution");<br>   ii.  distribute the Petition Date Collateral Value and the Postpetition Appreciation, if any, as set forth herein;<br>  iii.  release any and all claims, including, without limitation, contribution and or indemnity claims against all of the Released Parties; and<br>  iv.  distribute Gemini Lender recoveries to Gemini Lenders as set forth above.<br><br>The Cash Contribution shall be reduced *pro rata* by the percentage of Gemini Lenders that do not consent to grant the Gemini Parties third-party releases, as set forth above. |
| **Contribution of Avoidance Actions** | On or as soon as reasonably practicable following the Plan Effective Date, the Genesis Debtors will contribute to the GGC Creditors Trust any avoidance actions or similar actions that are not released under the Amended Plan. The GGC Creditors, including the Gemini Lenders, will be entitled to any proceeds therefrom, including, without limitation, the proceeds from any settlements thereof. |
| **Releases[20]** | Subject to the occurrence of the Plan Effective Date and the completion of the Special Committee's investigation of various potential causes of action against DCG and other persons, the Definitive Documents will contain customary mutual releases (the "Releases"), including a release of all claims by the Releasing Parties against the Released Parties relating in any way to the Genesis Debtors; *provided*, *however*, that the Amended Plan shall not release any avoidance actions, causes of action, or similar actions, which actions shall be contributed to the GGC Creditors Trust for the benefit of the GGC Creditors, except the Amended Plan shall release any avoidance actions, causes of action, or similar actions (x) with respect to DCG Parties, (y) in the event that each class of claims held by the GGC Creditors has voted to accepted the Amended Plan pursuant to section 1126(c) of the Bankruptcy Code (or is not impaired under the Amended Plan pursuant to section 1126(f) of the Bankruptcy Code), with respect to any entity or individual that is not entitled to vote on the Amended Plan because it received payment in full on its claims against GGC prior to the Petition Date, and (z) that could |

---

[20] The Special Committee has commenced an investigation with respect to certain prepetition transactions and communications. Genesis expects to be in a position to make a final recommendation as to whether the releases contemplated by this Term Sheet, the Plan Support Agreement and, as applicable, the Amended Plan are appropriate in advance of consummation of the transactions contemplated herein or the Genesis Debtors' proposed confirmation hearing, as applicable. For the avoidance of doubt, in the event that Genesis exercises its fiduciary out, the Plan Support Agreement will terminate as to all Parties.

| | be brought against any GGC Creditor (other than any GGC Creditor covered by the foregoing clause (y)) if (i) such GGC Creditor has elected to opt into a consensual third party release of its direct claims against the Released Parties and (ii) each class of claims held by the GGC Creditors has voted to accept the Amended Plan pursuant to section 1126(c) of the Bankruptcy Code (or is not impaired under the Amended Plan pursuant to section 1126(f) of the Bankruptcy Code).<br><br>If at any time the Genesis Debtors determine not to pursue the releases by the Genesis Debtors in favor of the DCG Parties or the Gemini Parties as contemplated herein, DCG and/or Gemini (as applicable) shall have the right to terminate the Plan Support Agreement.<br><br>"DCG Parties" means DCG, its predecessors, successors and assigns, parents, subsidiaries, affiliates, and all of their respective current and former officers and directors (other than in their capacities as current directors or officers of any the Genesis Debtors), principals, shareholders (and any fiduciaries or other agents of shareholders with any involvement related to the Genesis Debtors), members, partners, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, and such persons' respective heirs, executors, estates, servants and nominees.<br><br>"Other Genesis Entities" shall mean, collectively, the subsidiaries of GGH other than GGC and GAP.<br><br>"Released Parties" shall mean (i) the DCG Parties (including GGT), (ii) the Genesis Debtors, (iii) the Other Genesis Entities, (iv) the Consenting GGC Creditors, (v) the Gemini Parties, and (vi) the respective current and former affiliates, subsidiaries, members, managers, equity owners, employees, professionals, directors and officers (in each case in their respective capacities as such) of each of (i)–(v).<br><br>"Releasing Parties" means (i) the DCG Parties (including GGT), (ii) the Genesis Debtors, (iii) the Other Genesis Entities, (iv) Gemini, and (v) the Consenting GGC Creditors.<br><br>Nothing in this Term Sheet or the Plan Support Agreement will require any non-consensual third-party releases of parties other than the Genesis Debtors. |
|---|---|
| **Reimbursement of Fees and Expenses** | Upon the Plan Effective Date, subject to the terms and conditions of the existing fee reimbursement letters executed by Genesis, GGC shall (a) pay all accrued, but unpaid, documented fees and expenses of the Ad Hoc Group Advisors in connection with the Transactions and (b) reimburse the Ad Hoc Group Advisors on an ongoing and current basis for all the reasonable and documented fees and expenses incurred in connection with the Transaction. The Amended Plan shall provide that any fees and expenses of the foregoing advisors that are unpaid and invoiced as of the Plan Effective Date shall be paid no later than one (1) business day after the Plan Effective Date. |
| **Representations Regarding Holdings of the Consenting GGC Creditors** | Each Consenting GGC Creditor (i) either (A) is the sole legal and beneficial owner of the claims set forth below its name on the signature page hereof, free and clear of all claims, liens, and encumbrances, or (B) has sole investment and voting discretion with respect to the claims set forth below its name on the signature page hereof in respect of all matters, including those relating to the Transactions contemplated by this Term Sheet and the Definitive Documents and has the power and authority to bind the beneficial owner(s) of such claims to the Definitive Documents; and (ii) has full power and authority to act on |

| | behalf of, vote, and consent to matters concerning such claims with respect to matters relating to the Transactions contemplated by this Term Sheet, including, without limitation, the power and authority to vote on the Amended Plan, and dispose of, exchange, assign, and transfer such claims. Further, each Consenting GGC Creditor has made no prior assignment, sale, or other transfer of, and has not entered into any other agreement to assign, sell, or otherwise transfer, in whole or in part, any portion of its right, title, or interests in such claims against the Genesis Debtors. |
|---|---|
| **Tax Structure** | The Parties will use good faith efforts to implement and structure the Transactions and all other transactions contemplated by this Term Sheet, including, without limitation, any distributions to be made pursuant to the Amended Plan, in a tax efficient manner, as mutually agreed to by Genesis, DCG, and the Required Consenting GGC Creditors. |
| **Regulatory Matters** | Genesis shall not enter into any binding settlement agreement in respect of (a) the litigation styled as *SEC v. Genesis Global Capital, LLC and Gemini Trust Company, LLC*, Case No. 1:23-cv-00271 (S.D.N.Y. Jan. 12, 2022) or (b) any other action or proceeding initiated by the Securities and Exchange Commission or other governmental or regulatory agency against Genesis prior to the Plan Effective Date, unless it has obtained approval of the Bankruptcy Court, upon notice and hearing. |
| **Forbearance / Standstill** | In connection with the execution of the Plan Support Agreement, until the earlier to occur of (a) ten (10) business days after the termination of the Plan Support Agreement and (b) the Plan Effective Date, (i) the Parties shall agree to a covenant not to commence or support any litigation or adversary proceedings against another Party or the DCG Parties (including GGT), and (ii) reasonably cooperate with respect to the defense of any pending or threatened litigations against any other Party solely to the extent that such litigation or adversary proceeding relates to the Genesis Debtors or any of the Transactions contemplated herein and; (ii) GGC shall waive any event of default, and forbear from exercising all remedies under the Existing DCG 2023 Loans; provided that, notwithstanding anything to the contrary in this Term Sheet, nothing in this Term Sheet or the Plan Support Agreement shall limit any Party from enforcing any rights under the Plan Support Agreement or the Definitive Documents, nor shall it limit the Special Committee's ability to conduct its investigation, including, without limitation, through Rule 2004 discovery. |
| **Extension of the Automatic Stay** | The Genesis Debtors may file a motion seeking, pursuant to section 105 of the Bankruptcy Code, to extend the automatic stay arising under section 362 of the Bankruptcy Code to the DCG Parties and/or the Gemini Parties until the earlier to occur of (x) ten (10) business days after the termination of the Plan Support Agreement, and (y) the Plan Effective Date. Each Party agrees not to, directly or indirectly, object to, delay, impede, or take any action that is reasonably likely to interfere with any such motion. |
| **Transfers and Acquisitions of Claims Against Genesis** | Each Consenting GGC Creditor agrees that, while this Term Sheet and the Plan Support Agreement remain effective according to their terms, it shall not sell, transfer, assign, or otherwise dispose of (collectively, "Transfer") any of its claims against Genesis Debtors, or any option thereon or any right or interest (voting or otherwise) in any of such claims (including, any participation therein), except to a person or entity that (i) is a Consenting GGC Creditor, it being understood and agreed that any such claims shall automatically be deemed to be subject to the terms of this Term Sheet and the Plan Support Agreement, or (ii) executes and delivers a joinder to Genesis on or prior to the date of the relevant |

| | Transfer, in which case such transferee shall be deemed to be a Consenting GGC Creditor for purposes of this Term Sheet and the Plan Support Agreement. Any Transfer of claims against Genesis Debtors by a Consenting GGC Creditor that does not comply with the procedures set forth in this Term Sheet and the Plan Support Agreement shall be deemed void *ab initio* without the need for further action. Each Consenting GGC Creditor agrees to provide to counsel for Genesis Debtors a notice in writing of any Transfer of a claim against Genesis Debtors within three (3) business days of the consummation of such Transfer. |
|---|---|
| | Each Consenting GGC Creditor agrees to provide to counsel for Genesis Debtors a notice in writing of the acquisition of any additional claims within two (2) business days of the consummation of the acquisition transaction. Any additional claims against Genesis Debtors that are acquired by a Consenting GGC Creditor shall automatically be deemed to be subject to the terms of this Term Sheet and the Plan Support Agreement. |
| **Definitive Documents** | This Term Sheet is indicative, and any final agreement shall be subject to the execution of one or more definitive agreements and transaction related documents, which documents shall be consistent in all material respects with the terms of this Term Sheet and shall contain terms, conditions, representations, warranties, and covenants, in each case, customary for the transactions described herein (collectively, the "<u>Definitive Documents</u>"). The Parties shall, in good faith, negotiate and finalize the Plan Support Agreement and Definitive Documents as promptly as reasonably possible, with the understanding that time is of the essence, and take such other steps as are reasonably necessary to document the agreements and transactions contemplated herein. |
| **Amendments** | For the avoidance of doubt, except as otherwise provided herein, this Term Sheet (and the corresponding provisions of the Plan Support Agreement) may not be modified, amended, or supplemented without the prior written consent of the Required Consenting GGC Creditors, Genesis, and DCG; *provided*, *however*, that any modification, amendment, supplement, or change to (a) the definition of Required Consenting GGC Creditors shall also require the consent of each Consenting GGC Creditor, (b) the "Releases" section shall also require the consent of each Consenting GGC Creditor that is, or may be, affected by such modification, amendment, supplement, or change, (c) the treatment of any creditor that results in the disproportionate treatment between GGC Creditors shall also require the consent of each affected Consenting GGC Creditor, (d) the Amendment Section of the Term Sheet and the Plan Support Agreement shall require the consent of each Consenting GGC Creditor, (e) the treatment of Gemini Lender Claims shall also require the consent of Gemini, and (f) the consent or consultation rights of the Required Consenting GGC Creditors, the Ad Hoc Group Advisors, or Gemini shall require the consent of the Required Consenting GGC Creditors, the Ad Hoc Group Advisors, and Gemini. |

IN WITNESS WHEREOF, the Parties have executed and delivered this Term Sheet effective as of the date first above written.

**DIGITAL CURRENCY GROUP, INC.**

By: _____

Name: _____

Title: _____

**GENESIS GLOBAL HOLDCO, LLC, on behalf of itself and its subsidiaries**


By:     _____

Name:   _____

Title:  _____

**GEMINI TRUST COMPANY, LLC, on behalf of
itself and as agent provided for herein**

By:     _____
Name:   _____
Title:  _____

Principal Amount of Claims Against GGC (in Its
Individual Capacity):

**[CONSENTING GGC CREDITOR]**

By: _____

Name: _____

Title: _____

Principal Amount of Claims Against GGC:

**Exhibit 1 – Quarterly Cash Pay Interest Example**

For example, interest accrued in the quarter ended September 30, 2025 is calculated using the accrued Preferred Value as of June 30, 2025 (~$679 million) and would be payable on the first business day of October 2025 as follows:

$$\textbf{\textit{Quarterly Cash Pay Interest}} = \$\textbf{679,412,284.12} \times \textbf{10.5}\% \times \left(\frac{\textbf{92}}{\textbf{365}}\right) = \$\textbf{17,981,157.99}$$

## Exhibit 2 - Hypothetical Preferred Conversion Example

All assumptions contained within the hypothetical preferred conversion example detailed herein are illustrative in nature and do not reflect views on the anticipated number of Preferred Stock shares to be converted in a given quarter nor the DCG Equity Value at any point in time.

<u>12/31/2023 (First Conversion)</u>
Illustrative DCG Equity Value: $3.5 billion
Illustrative Number of Preferred Stock shares Converted: 100,000
Illustrative Initial Preferred Stock Shares: 1,000,000

$$Ratio\ A = \frac{100,000}{1,000,000} = 10.0\%$$

$$Ratio\ B = \frac{\$589.0\ million * 10.0\%}{\$3.5\ billion} = 1.68\%\ (Subject\ to\ Collar) = 2.00\%$$

$$Initial\ Conversion\ Ratio = 2.00\%$$

$$DCG\ Outstanding\ Shares^{21} = \frac{66,647,903}{1 - 2.00\%} = 68,008,064$$

$$Exchanged\ Common\ Equity\ Shares = 2.00\% \times 68,008,064 = 1,360,161$$

<u>3/31/2024 (New Holder Subsequent Conversion & Existing Holder True-Up)</u>
Illustrative DCG Equity Value: $4.5 billion
Illustrative Number of Preferred Stock shares Converted: 250,000
Illustrative Initial Preferred Stock Shares: 1,000,000

$$Ratio\ A = \frac{250,000}{1,000,000} = 25.0\%$$

$$Ratio\ B = \frac{\$603.1\ million * 25.0\%}{\$4.5\ billion} = 3.35\%\ (Subject\ to\ Collar) = 5.00\%$$

$$New\ Holder\ Initial\ Conversion\ Ratio = 5.00\%$$

$$Existing\ Holder\ Initial\ Conversion\ Ratio = 2.00\%$$

$$DCG\ Outstanding\ Shares^{23} = \frac{66,688,892}{1 - (5.00\% + 2.00\%)} = 71,708,486$$

---

[21]  Illustratively includes the dilutive impact of existing options based on treasury stock method at assumed DCG Equity Value prior to conversion of Preferred Stock on a given Conversion Date; DCG Existing Shares, DCG Outstanding Shares, True-Up Shares, and Exchanged Common Equity might change based on additional shares issued

432

*New Holder Exchanged Common Equity Shares* $= 5.00\% \times 71{,}708{,}486 = 3{,}585{,}424$

*Existing Holder True-Up Shares* $= 2.00\% \times 71{,}708{,}486 - 1{,}360{,}161 = 74{,}008$

433

# TAB 8

434



# *In re Genesis Global Holdco, LLC, et al.*, No. 23-10063

**United States Bankruptcy Court for the Southern District of New York**

**Honorable Judge Sean H. Lane**

**First Day Presentation**
January 23, 2023

© 2022 Genesis |

# Table of Contents

**1**    **Corporate Structure and Business Operations**

**2**    **Events Leading to Chapter 11 Filing**

**3**    **Genesis's Constructive Approach**

**4**    **Prepetition Capital Structure**

**5**    **Restructuring Process and Timeline**

436



# Corporate Structure and Business Operations

© 2022 Genesis

# The Genesis Group Corporate Structure and the Debtors

**Legend**
— 100% owned
▭ Debtor entities

Digital Currency Group, Inc.

Genesis Global Holdco, LLC (US-DE)

Genesis Global Trading, Inc. (US-DE)

Genesis UK Holdco Limited (UK)

Genesis Global Capital, LLC (US-DE)

Genesis Global Assets, LLC (US-DE)

Genesis Bermuda Holdco Limited (Bermuda)

Genesis Global Labs, LLC (US-DE)

Genesis Asia (Hong Kong) Limited

Genesis Asia Pacific Pte. Ltd. (Singapore)

Genesis Custody Limited (UK)

GSB 2022 II LLC *SPE for Financing Transaction*

GSB 2022 III LLC *SPE for Financing Transaction*

GSB 2022 I LLC *SPE for Financing Transaction*

GGA International Limited (BVI)

Genesis Global Markets Limited (Bermuda)

GGC International Limited (BVI)

© 2022 Genesis |

# Genesis Overview

## TRADING

- Spot trading services for institutional investors

- Through 9/30/22, spot trading volume was approximately $38.2 billion

- Mostly GGT (non-debtor), but there is limited trading activity by GAP (debtor)

## YIELD & BORROWING

- Lending and borrowing services for digital assets

- Through 9/30/22, GGC and GAP had originated loans totaling approximately $93.1 billion

- Part of GGC and GAP (debtors) businesses

## DERIVATIVES

- Derivatives services

- Through 9/30/22, the notional value of derivatives traded through the service was approximately $73.1 billion

- Debtors are not part of this business

## CUSTODY

- Institutional-grade custody service to manage, move and store digital assets

- As of 12/31/2022, GCL had approximately 90 customers

- Debtors do not have a custody business

© 2022 Genesis |

G

439

6

# Events Leading to Chapter 11 Filing



© 2022 Genesis

# Crypto Winter

- Terra/Luna Collapse in May 2022
- 3AC Liquidation beginning June 2022
- Voyager and Celsius Bankruptcies filed in July 2022
- FTX Bankruptcy on November 11 and 14, 2022

# Impact on Lender Confidence

- FTX **collapse** severely damaged investor confidence

- Market had not yet recovered from the Terra-Luna collapse and 3AC liquidation

- Genesis received a high number and volume of calls on loans and faces a "run on the bank"

# Genesis's Constructive Approach



# Institute a Pause

- On November 16, 2022, Genesis paused all withdrawals to preserve and maximize value of the estates, ensure fair distribution and stop the run on the bank

- All lending and borrowing business of the Debtors (GGC and GAP) remains paused

© 2022 Genesis |

G

# Governance Initiatives

- Recognizing the conflicts between DCG (as GGC's largest borrower) and Genesis,  the Board of Directors of Genesis Global Holdco, LLC ("GGH") formed a special committee (the "Special Committee") on November 18, 2022, comprised of two independent directors:
    - Paul Aronzon and Thomas Conheeney
- GGH's Board fully delegated all matters involving the restructuring, including the decision to commence chapter 11 cases, to the Special Committee
- Company's advisors, including Cleary Gottlieb, Moelis & Company and Alvarez & Marsal, report directly to the Special Committee
- Special Committee has met frequently to discuss and evaluate matters within its purview
- In accordance with its fiduciary duties, the Special Committee has commenced an investigation into certain prepetition transactions involving Genesis, DCG and others

© 2022 Genesis  |

# Stakeholder Engagement

- Under the direction of the Special Committee, Genesis has been engaged in around-the-clock discussions with various creditor groups, representing creditors with more than $2 billion in outstanding loans
  - Provided access to information to allow advisors to creditors to conduct diligence
  - Facilitated multiple discussions and in-person meetings among the various advisors to creditors
  - Exchanged more than 12 iterations of term sheets and proposals
- Genesis also engaged in substantive discussions with DCG and affiliates
- Genesis will continue trying to broker a global resolution among DCG and our various stakeholders and is hopeful that a deal can be reached
- Genesis's goal is to reduce the cost and uncertainty of a typical Chapter 11 case in order to preserve value and maximize recoveries in a fair and equitable manner

446

# Prepetition Capital Structure



© 2022 Genesis

# Overview of the Assets

- As of the Petition Date, Genesis has:
  – More than $150 million in cash
  – Approximately $500 million in digital assets
  – Approximately $385 million in shares in brokerage accounts

- As of November 30, 2022, Genesis has approximately $505 million, as lender, in outstanding loans to Third Parties
  – In connection with the outstanding loans, Genesis received approximately $553 million in collateral

- GGC has substantial claims against DCG entities, including
  – Approximately $575 million in loans maturing in May 2023
  – A $1.1 billion promissory note maturing in 2032

© 2022 Genesis |

# Outstanding Obligations

## Institutional and High Net Worth Lenders

- As of November 30, 2022, GGC and GAP had outstanding borrowings of approximately $2.6 billion with approximately 595 non-affiliated lenders

- In connection with the borrowings, GGC and GAP posted approximately $351 million in collateral

## Gemini Lenders

- Gemini Trust Company, LLC ("Gemini") acts as agent in connection with GGC's borrowing of digital assets from Gemini's customers

- Genesis does not deal directly with Gemini customers and does not know their identity or their loan amounts or repayment schedules; all of Genesis's interactions are with Gemini as agent

- On November 16, 2022, Gemini foreclosed on the collateral and the proceeds from the sale of the collateral, which amounted to $284,333,194.40.

- GGC disputes that the foreclosure was done in accordance with applicable law.

© 2022 Genesis |

449

16

# Restructuring Process and Timeline



© 2022 Genesis |

# Genesis's Restructuring Advisors



**Proposed Counsel to the Debtors**

**Proposed Investment Banker to the Debtors**





**Proposed Notice & Claims Agent**

**Proposed Financial Advisor to the Debtors**

© 2022 Genesis |

# The Plan

- Genesis intends to conduct a competitive marketing and sales process to sell its assets and/or raise capital during these cases

- If the process does not result in a sale of the business, the equity interests in GGH will be distributed to the Debtors' creditors

- Under the proposed plan, of general unsecured claims will receive a combination of:
    - Available cash and other assets;
    - Equity interests in the reorganized GGH; and
    - GUC Trust units entitling holders to receive their pro rata shares of the proceeds from
        - Avoidance Actions
        - DCG Loans, DCG Note and causes of action against DCG
        - Causes of action against Gemini

© 2022 Genesis  |

G

# Next Steps

- Genesis will continue engaging in discussions with creditors and make revisions to the plan if agreements are reached

- If agreements are not reached imminently, Genesis will request the appointment of a mediator

© 2022 Genesis |

# TAB 9

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

## ORDER DIRECTING JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES

## ("JOINT ADMINISTRATION ORDER")

Upon the motion (the "Motion")[2] of Genesis Global Holdco, LLC ("Holdco") and
its affiliates, as debtors and debtors-in-possession in the above-captioned cases (collectively, the
"Debtors"), for entry of an order directing the joint administration of the Debtors' related chapter
11 cases, as more fully described in the Motion; and upon the First Day Declarations, filed
concurrently with the Motion; and the Court having jurisdiction over this matter pursuant to 28
U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States
District Court for the Southern District of New York dated January 31, 2012; and the Court having
found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter
a final order consistent with Article III of the United States Constitution; and the Court having
found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.
§§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best
interests of the Debtors, their estates, their creditors and other parties in interest; and the Court

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification
number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia
Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park
Avenue South, 5th Floor, New York, NY 10003.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion

was appropriate and no other notice need be provided; and the Court having reviewed the Motion

and having heard the statements in support of the relief requested therein at a hearing before the

Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of

the proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      The above-captioned Chapter 11 Cases are consolidated for procedural purposes

only and shall be jointly administered by the Court under Case No. 23-10063.

3.      The caption of the jointly administered cases shall read as follows:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

4.      The foregoing caption satisfies the requirements set forth in section 342(c)(1) of

the Bankruptcy Code.

5.      A docket entry shall be made in each of the above-captioned cases substantially as follows: "An order has been entered in this case directing the procedural consolidation and joint administration of the Chapter 11 Cases commenced by Genesis Global Holdco, LLC.  The docket in Case No. 23-10063 should be consulted for all matters affecting the above listed cases.

6.      The Debtors shall maintain, and the Clerk of the United States Bankruptcy Court for the Southern District of New York shall keep, one consolidated docket, one file and one consolidated service list.

7.      The Debtors shall file their monthly operating reports required by the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees*, issued by the U.S. Trustee, in accordance with the applicable Instructions for UST Form 11-MOR: Monthly Operating Report and Supporting Documentation.

8.      Nothing contained in the Motion or this Order shall be deemed or construed as directing or otherwise effecting a substantive consolidation of the Chapter 11 Cases.

9.      To the extent that any affiliates of the Debtors subsequently commence Chapter 11 cases, the relief granted pursuant to this Order shall apply to such debtors and their respective estates, provided, however, that the Debtors shall file notice with the Court identifying the cases of such affiliates and stating that this Order shall apply to such cases.

10.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

11.    The Court shall retain jurisdiction with respect to all matters arising from or related

to the implementation, interpretation, or enforcement of this Order.


Dated:    January 26, 2023                    ***/s/ Sean H. Lane***
          White Plains, New York             United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

### ORDER AUTHORIZING DEBTOR GENESIS ASIA PACIFIC PTE LTD. TO ACT AS FOREIGN REPRESENATIVE OF THE DEBTORS

Upon the Motion (the "Motion")[2] of Genesis Asia Pacific Pte. Ltd. ("GAP"), and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order (this "Order") pursuant to section 1505 of title 11 of the United States Code (the "Bankruptcy Code"), for authorization for GAP to act as the foreign representative of the Debtors in Singapore in order to seek recognition of the Chapter 11 Cases on behalf of the Debtors, and to request that the Singapore High Court in Singapore lend assistance to this Court in protecting the Debtors' property, and to seek any other appropriate relief from the Singapore High Court that the Singapore High Court deems just and proper, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S. C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable) are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Debtors' filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"), constitute "foreign proceedings" as that term is used in Article II(a) of the Model Law on Cross-Border Insolvency adopted by the United Nations Commission on International Trade Law.  The Chapter 11 Cases have been commenced by the filing of the Debtors' petitions for relief with this Court.

3.      GAP is authorized and empowered (i) to act as the "foreign representative" of the Debtors in Singapore, including within the meaning of Article 2(i) of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 of the Republic of Singapore or any other applicable laws of Singapore, (ii) to seek recognition by the Singapore High Court of the Chapter 11 Cases and of certain orders made by the Court in the Chapter 11 Cases from time to time, (iii) to request that the Singapore High Court lend assistance to this Court, including but not limited to granting relief under Articles 19 to 21 of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 of the Republic of Singapore or any other applicable laws of Singapore,  and (iv) to seek any other appropriate relief from the Singapore High Court or any other court, tribunal, regulatory body or administrative body having its jurisdiction in Singapore as the Debtors deem just and proper.

4.      The Singapore High Court and any other court, tribunal, regulatory body or administrative body having its jurisdiction in Singapore are hereby respectfully requested (i) to

2

grant foreign representative status to GAP in any foreign proceeding, (ii) to make such orders and to provide such assistance to GAP as the foreign representative and an officer of this Court, as may be necessary or desirable to give effect to this Order and all applicable provisions of the Bankruptcy Code and (iii) to assist the Debtors, GAP, in its capacity as the foreign representative, and their respective agents in carrying out the terms of (x) this Order, including but not limited to granting relief under Articles 19 to 21 of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 of the Republic of Singapore or any other applicable laws of Singapore, (y) any other order of this Court and (z) the provisions of the Bankruptcy Code, including, for the avoidance of doubt, the automatic stay pursuant to Section 362 of the Bankruptcy Code.

5.    As soon as practical following court action taken by GAP as the foreign representative of the Debtors in Singapore, the Debtors will file notice of the same on the docket of these Chapter 11 Cases.

6.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.    This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the interpretation, implementation or enforcement of this Order.

Dated: January 26, 2023                    */s/ Sean H. Lane*
      White Plains, New York            United States Bankruptcy Judge

3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

## ORDER RESTATING AND ENFORCING THE EXISTENCE AND IMPLEMENTATION OF THE WORLDWIDE AUTOMATIC STAY

Upon the Motion (the "Motion")[2] of Genesis Global Holdco, LLC ("Holdco") and its affiliate, as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order (this "Order") enforcing and restating the worldwide automatic stay, *ipso facto* and anti-discrimination provisions under sections 362, 365(e)(1) and 525 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"); it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and any objections (if any) to the Motion having been withdrawn or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion and upon the

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]     Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

record of the hearing and all of the proceedings had before the Court; and the Court having found

and determined that the relief sought in the Motion is in the best interests of the Debtors, their

estates, their creditors and all other parties-in-interest; and that the legal and factual bases set forth

in the Motion establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      Pursuant to section 362 of the Bankruptcy Code, all persons (including individuals,

partnerships, corporations and all those acting for or on their behalf) and all foreign or domestic

governmental or quasi-governmental units, including any state, locality or territory thereof (and

all those acting for or on their behalf), regardless of whether or not they have received a copy of

the order, are stayed, restrained and enjoined from:

(a)      commencing or continuing any judicial, administrative or other action or

proceeding against the Debtors, including the issuance or employment of process that was or could

have been initiated before the Debtors' Chapter 11 Cases commenced;

(b)      enforcing, against the Debtors or their estates, a judgment obtained before

the commencement of these Chapter 11 Cases;

(c)      collecting, assessing or recovering a claim against the Debtors that arose

before the commencement of these Chapter 11 Cases;

(d)      taking any action to obtain possession of property of the estates or of

property from the estates or to exercise control over property of the Debtors' estates;

(e)      taking any action to create, perfect or enforce any lien against property of

the Debtors' estates;

(f)     taking any action to create, perfect or enforce any lien against property of the Debtors, to the extent that such lien secures a claim that arose before the commencement of these Chapter 11 Cases;

(g)     offsetting any debt owing to the Debtors that arose before the commencement of these Chapter 11 Cases against any claim against the Debtors; and

(h)     commencing or continuing a proceeding before the United States Tax Court concerning the Debtors' tax liability for a taxable period the Court may determine.

3.      All persons and all foreign and domestic governmental units, and all those acting on their behalf, including sheriffs, marshals, constables and other or similar law enforcement officers and officials, regardless of whether they have received this order, are stayed, restrained and enjoined from in any way seizing, attaching, foreclosing upon, levying against or in any other way interfering with any and all property of the Debtors or the Debtors' estates, wherever located.

4.      Pursuant to section 365(e)(1) of the Bankruptcy Code, all persons (including individuals, partnerships, corporations and all those acting for or on their behalf) and all foreign or domestic governmental or quasi-governmental units including any state, locality or territory thereof (and all those acting for or on their behalf) are prohibited from modifying or terminating any executory contract or unexpired lease, or any right or obligation under such contract or lease, at any time after the commencement of these Chapter 11 Cases solely because of a provision in such contract or lease that is conditioned on:

(a)     the insolvency or financial condition of the debtor at any time before the closing of these Chapter 11 Cases;

(b)     the commencement of these Chapter 11 Cases; or

(c)     the appointment of a trustee in these Chapter 11 Cases.

5.      This order shall not affect (i) the substantive rights of any party or the availability of any of the exceptions contained in sections 362(b) and 365(e)(1) of the Bankruptcy Code or (ii) the right of any party-in-interest to seek relief from the automatic stay in accordance with section 362(d) of the Bankruptcy Code or with respect to an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

6.      Pursuant to section 525 of the Bankruptcy Code, all foreign or domestic governmental or quasi-governmental units including any state, locality or territory thereof (and all those acting for or on their behalf) are prohibited and enjoined from (i) denying, revoking, suspending or refusing to renew any license, permit, charter, franchise or other similar grant to, (ii) placing conditions upon such a grant to or (iii) discriminating against any of the Debtors (or another person with whom the Debtors have been associated) solely because any of the Debtors is a debtor under the Bankruptcy Code, or may have been insolvent before or during these Chapter 11 Cases.

7.      The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this order.

8.      Nothing contained herein shall constitute an assumption or adoption by either Debtor of any executory contract or lease.

9.      The requirements set forth in Local Rule 9013-1(b) are satisfied.

10.     This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6003(b) or otherwise.

11.     On request of a party in interest, and after notice and a hearing, this Court may grant relief from the restraints imposed herein in the event that it is necessary, appropriate and warranted so to terminate, annul, modify or condition the relief granted herein.

12.     Notwithstanding anything to the contrary contained herein, this Order shall not be construed as enjoining or staying any act that is not stayed, or that is subject to an exception from the automatic stay, pursuant to the terms of section 362 of the Bankruptcy Code.

13.     This Court shall retain jurisdiction with respect to all matters, claims, rights or disputes arising from or related to the Motion or the implementation, interpretation or enforcement of this Order.


Dated:     January 26, 2023                    */s/ Sean H. Lane*
           White Plains, New York              United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**INTERIM ORDER WAIVING THE REQUIREMENT
THAT EACH DEBTOR FILE A LIST OF CREDITORS
AND AUTHORIZING PREPARATION OF A CONSOLIDATED LIST OF
CREDITORS, IN LIEU OF SUBMITTING A FORMATTED MAILING MATRIX
(II) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED LIST
OF THE DEBTORS' FIFTY (50) LARGEST UNSECURED CREDITORS, (III)
AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY
IDENTIFIABLE INFORMATION, AND (IV) GRANTING RELATED RELIEF**

Upon the Motion (the "Motion")[2] of Genesis Global Holdco, LLC ("Holdco") and its affiliate, as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an interim order (this "Interim Order"), as more fully described in the Motion, (i) waiving the requirement that each of the Debtors file a list of creditors and authorizing the Debtors to prepare a consolidated list of creditors in lieu of submitting a formatted matrix; (ii) authorizing the Debtors to file a single, consolidated list of the Debtors' fifty (50) largest unsecured creditors; (iii) authorizing the debtors to redact certain personally identifiable information; and (iv) granting the Debtors such other and further relief as the Court deems just and proper and upon the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of*

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]  Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

*First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations") filed concurrently with the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and on the record of the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      A status conference on the Motion shall be held via zoom on February 1, 2023, at 2:00 p.m. Eastern Time (the "Status Conference").

3.      The final hearing on the Motion shall be held via zoom on February 22, 2023, at 11:00 a.m. Eastern Time (the "Final Hearing"). Any objections or responses to entry of the Proposed Final Order shall be filed by February 15, 2023, at 4:00 p.m. Eastern Time and served on the following parties: (i) the Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Suite 515, New York, New York 10004, Attn: Greg Zipes, Esq.; (ii) proposed counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn: Sean A. O'Neal, Esq. and Jane VanLare, Esq.; and (iii) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Greg Zipes, Esq.; and (iv) counsel to any statutory committee appointed in these chapter 11 cases.

4.      The requirement under Bankruptcy Rule 1007(a)(1) that each of the Debtors file a list of creditors, counterparties to executory contracts and unexpired leases and co-debtors on the Petition Date is hereby waived.

5.      The Debtors, or their appointed agent, are authorized to prepare and maintain a consolidated list of creditors in electronic format that is acceptable to the Clerk of the Court, in lieu of any required matrix, and to make such list available to other parties in interest upon request. The Debtors shall file this consolidated list on the docket within (7) days of the Petition Date.

6.      Notwithstanding Bankruptcy Rule 1007(d) and Local Rule 1007-1, the Debtors are authorized to file a consolidated list of their fifty (50) largest unsecured creditors in the Chapter 11 Cases, in lieu of filing separate lists of the twenty largest unsecured creditors in each of the Debtors' respective Chapter 11 Cases.

7.      The Debtors are authorized on an interim basis, pursuant to sections 107(c) and 105(a) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1, to redact the names,

home addresses and email addresses of individuals listed on the consolidated creditors list and the addresses and email addresses of other creditors listed on the consolidated creditors list or other documents filed with this Court, until the later of (i) Status Conference or (ii) the entry of an order approving the Motion on a final basis after the Final Hearing.

8.    The Debtors shall provide an unredacted version of the consolidated creditors list, and any other filings redacted pursuant to this Interim Order to (x) the Court, the U.S. Trustee and counsel to any official committee appointed in these Chapter 11 Cases, and (y) any party in interest, upon a request to the Debtors (email is sufficient) or to the Court that is reasonably related to these Chapter 11 Cases; provided that any receiving party shall not transfer or otherwise provide such unredacted document to any person or entity not party to the request. The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document pursuant to this Interim Order.

9.    Nothing herein precludes a party in interest's, or the U.S. Trustee's, right to file a motion requesting that this Court unseal the information redacted by this Interim Order, it being understood that if the parties cannot reach an agreement on redactions, they will negotiate an appropriate briefing schedule*, **subject to approval by the Court,** *to expeditiously put any remaining issues before the Court.

10.    The Debtors shall submit an unredacted copy of the consolidated creditors list to the Clerk of the Court under seal in an envelope, clearly indicating that the same has been filed under seal by order of this Court and may not be unsealed until and unless permitted by further order of this Court.

11.    Counsel for the Debtors shall contact the Clerk's Office regarding the return or disposition of the sealed documents at the conclusion of the contested matter.

12.    Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Interim Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in implementation, enforcement or realization of the relief granted in this Interim Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Interim Order.

13.    This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

Dated:    January 27, 2023        */s/ Sean H. Lane*
         White Plains, New York    The Honorable Sean H. Lane
                                   United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

### INTERIM ORDER (I) AUTHORIZING GENESIS ASIA PACIFIC PTE. LTD TO (A) PAY CERTAIN EMPLOYEE WAGES AND OTHER COMPENSATION AND RELATED OBLIGATIONS AND (B) MAINTAIN AND CONTINUE EMPLOYEE BENEFITS AND PROGRAMS IN THE ORDINARY COURSE, AND (II) AUTHORIZING AND DIRECTING APPLICABLE BANKS TO HONOR ALL TRANSFERS RELATED TO SUCH OBLIGATIONS

### ("INTERIM WAGES AND BENEFITS ORDER")

Upon the motion (the "Motion")[2] of Genesis Asia Pacific Pte. Ltd. ("GAP") and the above captioned affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of interim and final orders, as more fully described in the Motion, authorizing GAP to pay certain Wages and Benefits, and for certain related relief; and upon the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations"); and the Court having jurisdiction over this matter pursuant to 28

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

U.S.C. § 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court of New York dated January 31, 2012*; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution, and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of GAP, its estates, its creditors and the other parties in interest; and the Court having found that GAP's notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis to the extent set forth herein.

2.      Objections to entry of the Final Order must be filed by February 15, 2023, at 4:00 pm. (ET) and served on: (i) proposed counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn: Sean A. O'Neal, Esq. and Jane VanLare, Esq.; (ii) the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Suite 515, New York, New York 10004, Attn: Greg Zipes, Esq.; and (iii) counsel to any statutory committee appointed in the Chapter 11 Cases.  A final hearing on the Motion will be held on February 22, 2023 at 11:00 a.m. (ET) (the "Final Hearing").

3.      GAP is authorized to pay pre-petition Wages and Benefits, as payments come due in the ordinary course and/or honor its wage and benefit obligations in accordance with its stated policies and in the ordinary course of its business and consistent with its past practices, including amounts owing as of, or accrued prior to, the Petition Date on account of (i) Employee Compensation, (ii) Unpaid Compensation, (iii) Employee Deductions, (iv) Reimbursable Expenses, (v) Payroll Processing Fees (vi) Employee Benefits, and (vii) Benefits Administration Fees.

4.      GAP is authorized, but not directed, to continue to honor the Wages and Benefits, make necessary contributions, pay any unpaid premium, claim, or amount owed in connection therewith as of, or accrued prior to, the Petition Date, in accordance with GAP's ordinary course of business, stated policies, and consistent with its past practices, as set forth in the Motion; *provided* that no payments shall be made above the statutory cap pursuant to 11 U.S.C. 507(a)(4) and 507(a)(5) prior to the entry of the Final Order.

5.      GAP is authorized to modify, change, or discontinue any of its Wages and Benefits and to implement new programs, policies, and benefits in the ordinary course of business during these Chapter 11 Cases in GAP's discretion and without the need for further approval by this Court, subject to applicable law; *provided* that GAP will provide notice to the United States Trustee for the Southern District of New York and any statutory committee appointed in these Chapter 11 Cases of any material changes to the Wages and Benefits.

6.      GAP shall not make any non-ordinary course bonus payments to their Employees or any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court. For the avoidance of doubt, no bonus, or severance payments shall be made to any Insider without further order of this Court.

7.      GAP is authorized, but not directed, to continue the Severance Obligations and make any payments attributable to the Severance Obligations, including any that accrued prepetition in the ordinary course of business.

8.      Nothing in this order should be construed as approving any transfer pursuant to 11 U.S.C. § 503(c), and a separate motion will be filed for any request that could fall within Section 503(c).   No payment to any employee may be made to the extent that it is a transfer in derogation of section 503(c) of the Bankruptcy Code.

9.      GAP is authorized to make payments to applicable third parties from the Employee Deductions and Employee Benefits, in accordance with GAP's ordinary course of business and stated policies, as set forth in the Motion.

10.     The banks and financial institutions on which electronic payment requests were made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such electronic payment requests when presented for payment and all such banks and financial institutions are authorized to rely on the Debtors' designation of any electronic payment request as approved by this Order.

11.     GAP is authorized to reissue any electronic payment that was originally given in payment of any prepetition amount authorized to be paid under this Order that is not cleared by the applicable bank or financial institution.

12.     Notwithstanding anything to the contrary in this Interim Order, payments made pursuant to this Interim Order shall only be made as they become due, and no payments shall be accelerated prior to the Final Hearing.

13.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (i) an admission as to the validity, priority, or

amount of any claim against a Debtor entity; (ii) a waiver of GAP's or any party-in-interest's right to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (v) a requirement or authorization to assume any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code or (vi) a waiver of GAP's or any party-in-interest's rights under the Bankruptcy Code or any other applicable law.

14.     GAP is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

15.     The requirements of Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.  Notwithstanding Bankruptcy Rule 6004, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: January 27, 2023                     */s/ Sean H. Lane*
      White Plains, New York          The Honorable Sean H. Lane
                                    United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**FINAL ORDER (I) AUTHORIZING GENESIS ASIA PACIFIC PTE. LTD TO (A) PAY
CERTAIN EMPLOYEE WAGES AND OTHER COMPENSATION AND RELATED
OBLIGATIONS AND (B) MAINTAIN AND CONTINUE EMPLOYEE
BENEFITS AND PROGRAMS IN THE ORDINARY COURSE, AND
(II) AUTHORIZING AND DIRECTING APPLICABLE BANKS TO
HONOR ALL TRANSFERS RELATED TO SUCH OBLIGATIONS**

**("FINAL WAGES AND BENEFITS ORDER")**

Upon the motion (the "Motion")[2] of Genesis Asia Pacific Pte. Ltd. ("GAP") and the above

captioned affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of a

final order (this "Final Order"), as more fully described in the Motion, authorizing GAP to pay

certain Wages and Benefits, and for certain related relief; and upon the *Declaration of A. Derar

Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*

(the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and

Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the

*Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with

Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon

Declaration, the "First Day Declarations"); and the Court having jurisdiction over this matter

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification
number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia
Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park
Avenue South, 5th Floor, New York, NY 10003.
[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

pursuant to 28 U.S.C. § 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court of New York dated January 31, 2012*; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution, and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of GAP, its estates, its creditors and the other parties in interest; and the Court having found that GAP's notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.        The Motion is GRANTED to the extent set forth herein.

2.        GAP is authorized to pay prepetition Wages and Benefits, as payments come due in the ordinary course and to honor its wage and benefit obligations in accordance with its stated policies and in the ordinary course of its business and consistent with its past practices, including amounts owing as of, or accrued prior to, the Petition Date on account of (i) Employee Compensation, (ii) Unpaid Compensation, (iii) Employee Deductions, (iv) Reimbursable Expenses, (v) Payroll Processing Fees (vi) Employee Benefits, and (vii) Benefits Administration Fees; provided that the Debtors shall obtain approval from this Court prior to paying or honoring

any prepetition Wages and Benefits that exceed the statutory cap set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

3.      GAP is authorized, but not directed, to continue to honor the Wages and Benefits, make necessary contributions, pay any unpaid premium, claim, or amount owed in connection therewith as of, or accrued prior to, the Petition Date, in accordance with GAP's ordinary course of business, stated policies, and consistent with its past practices, as set forth in the Motion.

4.      GAP is authorized to modify, change, or discontinue any of its Wages and Benefits and to implement new programs, policies, and benefits in the ordinary course of business during these Chapter 11 Cases in GAP's discretion and without the need for further approval by this Court, subject to applicable law; provided that GAP will provide advance written notice (email shall suffice) to the United States Trustee for the Southern District of New York and the Committee of any material changes to the Wages and Benefits.

5.      GAP shall not make any non-ordinary course bonus payments to their Employees or any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without the prior written consent (email shall suffice) of the Committee or further order of this Court. For the avoidance of doubt, no bonus, or severance payments shall be made to any Insider without the prior written consent (email shall suffice) of the Committee or further order of this Court.

6.      GAP is authorized, but not directed, to continue the Severance Obligations and make any payments attributable to the Severance Obligations, including any that accrued prepetition in the ordinary course of business.

7.      Nothing in this Final Order should be construed as approving any transfer pursuant to 11 U.S.C. § 503(c), and a separate motion will be filed for any request that could fall within

Section 503(c). No payment to any employee may be made to the extent that it is a transfer in derogation of section 503(c) of the Bankruptcy Code.

8.      GAP is authorized to make payments to applicable third parties from the Employee Deductions and Employee Benefits, in accordance with GAP's ordinary course of business and stated policies, as set forth in the Motion.

9.      The banks and financial institutions on which electronic payment requests were made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any electronic payment request as approved by this Final Order.

10.     GAP is authorized to reissue any electronic payment that was originally given in payment of any prepetition amount authorized to be paid under this Final Order that is not cleared by the applicable bank or financial institution.

11.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (i) an admission by any party in interest as to the validity, priority, or amount of any claim against a Debtor entity; (ii) a waiver of GAP's, the Committee's, or any other party-in-interest's respective rights to dispute any claim on any grounds; (iii) a promise or requirement by the Debtors or any third party (including any member of the Committee) to pay any claim; (iv) an implication or admission by any party in interest that any particular claim is of a type specified or defined in this Final Order or the Motion; (v) a requirement or authorization to assume any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code or (vi) a waiver of GAP's, the Committee's, or any other party-in-interest's respective rights under the Bankruptcy Code or any other applicable law.

4

12.     Notwithstanding anything to the contrary in the Motion, this Final Order, or any findings announced at the hearing, nothing in the Motion, this Final Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the rights of the United States Securities and Exchange Commission, the Committee, and all other parties-in-interest to challenge transactions involving crypto tokens on any basis are expressly reserved.

13.     GAP is authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

14.     The requirements of Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.  Notwithstanding Bankruptcy Rule 6004, the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

15.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.


Dated: February 24, 2023            */s/ Sean H. Lane*
         White Plains, New York       THE HONORABLE SEAN H. LANE
                                       UNITED STATES BANKRUPTCY JUDGE

# TAB 10

*STATE OF NEW JERSEY*
*DEPARTMENT OF THE TREASURY*
*DIVISION OF REVENUE AND ENTERPRISE SERVICES*
*ANNUAL REPORT CERTIFICATE*

### *GENESIS GLOBAL CAPITAL, LLC*
*0450792002*

The Division of Revenue and Enterprise Services hereby affirms that the following annual report for GENESIS GLOBAL CAPITAL, LLC was submitted on 01/19/2023 for the year:  2023

**Registered Agent and Office**

UNITED CORPORATE SERVICES, INC.
80 MAIN STREET
SUITE 415
WEST ORANGE, NJ 07052

**Main Business Address**

111 TOWN SQUARE PLACE
SUITE 1203
JERSEY CITY, NJ 07310

**Officers and Directors**

CHIEF EXEC. OFFICER (CEO)
Ahmed D Islim
250 Park Avenue South
5th Fl.
New York, NY 10003



*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal, this 19th day of January, 2023*

*Certificate Number : 2689515848*
*Verify this certificate online at*
*https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp*

*Elizabeth Maher Muoio*
*State Treasurer*

**Financial Crimes Enforcement Network
Department of the Treasury**

MSB Registration Status Information

Date:  03/22/2023

The inclusion of a business on the MSB Registrant Search Web page is not a recommendation, certification of legitimacy, or endorsement of the business by any government agency.

The MSB Registrant Search Web page, which is updated on a weekly basis, contains entities that have registered as Money Services Businesses (MSBs) pursuant to the Bank Secrecy Act (BSA) regulations at 31 CFR 1022.380(a)-(f), administered by the Financial Crimes Enforcement Network (FinCEN).

Information contained on this site has been provided by the MSB registrant.  FinCEN does not verify information submitted by the MSB. Information provided on this site reflects only what was provided directly to FinCEN.  If an error or incomplete information is detected on this site, the registrant should follow the appropriate instructions for correcting a Registration of Money Services Business (RMSB) form.

MSB Registration Number: 31000221506465

Registration Type: Renewal

Legal Name: Genesis Global Capital, LLC

DBA Name:

Street Address: 111 Town Square Place, Suite 1203

City: Jersey City

State: NEW JERSEY

Zip: 07310

MSB Activities:

Money transmitter, Other

States of MSB Activities:

Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District Of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming

All States & Territories & Foreign Flag:  All States

Number of Branches:  1

Authorized Signature Date: 07/21/2022

Received Date:  07/21/2022

# TAB 11

███████████████████████████████████

November 28, 2022

**BY EMAIL**

Genesis Global Capital, LLC
111 Town Square Place, Suite 1203
Jersey City, NJ 07310
Attn: ██████████████████████████████████
███████████████████████████████████████████
███████████████

Re: _Genesis Loan Default – Legal Demand_

Dear all:

I represent ████████████████, or "Lender") in relation to ██ efforts to recover ████████████ in principal amount (the "Outstanding Loan Balance") owed to ██ by Genesis Global Capital, LLC ("Genesis Capital") and Genesis Asia Pacific Pte. Ltd. ("Genesis Asia", and together with Genesis Capital, "Genesis" or "Borrower") pursuant to their Loan Term Sheet ("Term Sheet") ███████████████ and Master Loan Agreement ("Master Loan Agreement") ██████████████.

As you know, according to the Term Sheet, Genesis borrowed from ████ ██████ ████ at an annual interest rate of ██████ (the "Borrow Fee"). This Outstanding Loan Balance of █████████████████ was due and payable to ██████ by the close of business today, November 28, 2022. Genesis has now defaulted on its obligations and is in material breach of the parties' agreement.

██████████ hereby demands that Genesis immediately repay the entire Outstanding Loan Balance of ████████████████, together with the Borrow Fee that continues to accrue. The wallet address for ██████ to receive the ██████ repayment has already been provided to Genesis, and it is included again here:

███████████████████████████████████

Given the number of recent media reports regarding Genesis's liquidity position, ████████ believes that time is of the essence. If the Outstanding Loan Balance is not immediately repaid, ██████ will have no choice but to pursue additional measures to protect ██ legal and financial interests.

Genesis Global Capital, LLC
November 28, 2022
Page 2



As a further matter, if the Outstanding Loan Balance is not immediately repaid and ███ is required to enforce ███ rights, the Master Loan Agreement provides that ██ would be entitled to, among other things: ███████████████████████████████████████████ . ██████ also has serious concerns about the accuracy of certain of Genesis's representations and warranties in the Master Loan Agreement, including in particular ████████████████████████████████████████ In the event that Genesis does not immediately repay the Outstanding Loan Balance, litigation is reasonably foreseeable, and Genesis is reminded of its obligation to preserve all documents and communications related to this matter.

This letter is without prejudice to ███████ rights and remedies, all of which are expressly reserved and not waived.  Under the circumstances, I ask that you please inform me by tomorrow morning whether Genesis intends to pay the Outstanding Loan Balance by the end of business on November 29, 2022.

Sincerely,

| | |
|---|---|
| **From:** | ███████████████████████ |
| **Sent:** | Thursday, December 1, 2022 9:37 AM |
| **To:** | ████████████████████████████████ |
| **Subject:** | RE: Genesis Loan Default - Demand |

Dear ████████

We can confirm receipt of your e-mail notification and are working diligently to respond to your request. We apologize if this process may be frustrating, but we can assure you that we are doing the utmost to look into every request received individually.

Genesis Global Capital, in consultation with our professional financial advisors and counsel, has taken the difficult decision to temporarily suspend redemptions in the lending business. We are working diligently to shore up the necessary liquidity to meet our lending client obligations in a fair and responsible manner. At this time there are no outflows of any kind from the Genesis lending business.

Our number one priority is to serve you, our clients, and preserve your assets. We are working tirelessly to identify the best solutions for our lending business, including among other things, sourcing new liquidity. We are pushing for a solution to present as soon as possible which will result in the best possible outcome for each client.

Sincerely,

████

████████

Genesis Global Trading, Inc.
250 Park Avenue South, 5th Floor
New York, NY 10003

████████████

| | |
|---|---|
| **From:** | ████████████████████████ |
| **Sent:** | Monday, November 28, 2022 6:16 PM |
| **To:** | ████████████████████████████████████████ |
| **Subject:** | Genesis Loan Default - Demand |

[EXTERNAL]

Please see the attached correspondence on behalf of ██████████

Best regards,

This message is intended only for the addressee. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited.

Genesis and Genesis Trading are marketing names for certain businesses of Genesis Global Holdco, LLC and its global affiliates. Genesis does not produce research, make recommendations to purchase or sell specific securities, provide investment advisory services, or conduct a general retail business. Products and services may not be available to all counterparties or in all jurisdictions. Digital assets are not deposits or other obligations of any commercial bank, are not guaranteed, and are not insured by the Federal Deposit Insurance Corporation.

Genesis Global Trading, Inc. ("GGT"), is a Delaware corporation, non-custodial, over the counter market-maker in digital assets and brokerage. It holds a Virtual Currency License with the New York State Department of Financial Services and is registered with FINRA and the U.S. Securities and Exchange Commission as a broker-dealer. GGC International Limited ("GGCI") is incorporated in the British Virgin Islands. It carries out spot trading activity and enters into OTC derivatives. Genesis Asia Pacific Pte. Ltd. ("GAP") is a private limited company organized under the laws of Singapore and a digital payment token service provider that carries out digital asset trading and lending activities. GAP has received In-Principle Approval from the Monetary Authority of Singapore for a Major Payment Institution license under the Payment Services Act 2019. Genesis Global Capital, LLC ("GGC") is a limited liability company organized under the laws of Delaware and provider of lending and borrowing services in digital assets and fiat currency to and from institutional and high net worth clients. GGC is registered as a Money Services Business with the Financial Crimes Enforcement Network ("FinCEN"). Genesis Custody Limited ("Genesis Custody") is a UK-based provider of non-fiduciary, digital asset storage services to institutional clients and high net worth individuals in permitted jurisdictions. Genesis Custody is registered as a cryptoasset business with the Financial Conduct Authority under the Money Laundering, Terrorist Financing and Transfer of Funds (Information on the Payer) Regulations 2017 ("MLRs"). Registration under the MLRs does not mean that customers will benefit from the protections of the Financial Ombudsman Service or the Financial Services Compensation Scheme. Genesis Custody is also registered as a Money Services Business with FinCEN.

The trading of digital currency is an inherently risky activity and does not benefit from the protections afforded by the Securities Investor Protection Corporation. A counterparty's ability to enter into derivatives with Genesis depends on satisfying a number of regulatory requirements imposed on derivatives under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 and applicable law including, but not limited to, characterization as an eligible contract participant under the U.S. Commodity Exchange Act. The permissibility of borrowing from, and lending to, counterparties may depend on a counterparty's circumstances and the applicability of local lending and borrowing laws. The custody of digital currency is not subject to protections or insurance provided by the Federal Deposit Insurance Corporation or other US governmental programs. Important risk disclosures and terms of service can be found at https://genesistrading.com/legal

# TAB 12

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

## GLOBAL NOTES AND STATEMENT OF
## LIMITATIONS, METHODOLOGY AND DISCLAIMERS
## REGARDING THE DEBTORS' SCHEDULES OF ASSETS
## AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Genesis Global Holdco, LLC and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors," and the cases, the "Chapter 11 Cases")), have filed these respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") in the United States Bankruptcy Court for the Southern District of New York (the "Court").  The Debtors, with the assistance of their legal and financial advisors, prepared the Schedules and Statements in accordance with section 521 of title 11 of the United States Code (the "Bankruptcy Code"), rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 1007–1 of the Bankruptcy Local Rules for the Southern District of New York (the "Local Rules").

These *Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of, each Debtor's respective Schedules and Statements.  The Global Notes should be referred to and considered in connection with any review of the Schedules and Statements.[2]  In the event that the Schedules and/or Statements differ from these Global Notes, the Global Notes control.

Mr. A. Derar Islim, Interim Chief Executive Officer of Genesis Global Holdco, LLC, has signed each set of the Schedules and Statements.  Mr. Islim is an authorized signatory for each of the Debtors.  In reviewing and signing the Schedules and Statements, Mr. Islim has necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]     These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements.  The fact that the Debtors have prepared a Global Note with respect to any of individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.

Debtors' legal and financial advisors.  Mr. Islim has not (and could not have) personally verified the accuracy of each such statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors, classification of such amounts, and respective creditor contact information.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation.  Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements.  As a result, inadvertent errors or omissions may exist.  For the avoidance of doubt, the Debtors hereby reserve all of their rights, including to amend and/or supplement the Schedules and Statements, as may be necessary or appropriate.

The Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein and will not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein.  While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist.  The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law.  In no event will the Debtors or their agents, attorneys, and/or financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

**The Schedules and Statements and these Global Notes should not be relied upon by any person or information relating to current or future financial conditions, events, or performance of any of the Debtors.**

## Global Notes and Overview of Methodology

1.  **Description of Cases.**  On January 19, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[3]  The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only under lead case *In re Genesis Global Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y.).

---

[3]    Copies  of  publicly  filed  documents  in  these  chapter 11  cases  are  available  at https://restructuring.ra.kroll.com/genesis/  (free  of  charge)  or  the  Court's  website  at https://www.nysb.uscourts.gov/ecf-and-pacer-information (for a fee).

The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 3, 2023, the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 55] (the "Committee"). The information provided herein, except as otherwise noted, is reported as of the close of business on the Petition Date.

2.  **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to: (i) amend and/or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to amend the Schedules and Statements with respect to the description, designation, or Debtor against which any claim ("Claim")[4] is asserted; (ii) dispute or otherwise assert offsets, setoffs, or other defenses to any Claim reflected or not reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated"; or (iv) object to the extent, validity, enforceability, priority, or avoidability of any Claim (regardless of whether of such Claim is designated in the Schedules and Statements as "disputed," "contingent," or "unliquidated"). Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated" or a waiver of any right to later object to any claim on any grounds. Listing a Claim does not constitute an admission of (a) liability or (b) amounts due or owed, if any, in each case, by the Debtor against which the Claim is listed or against any of the Debtors. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' Chapter 11 Cases, including, without limitation, issues involving or defenses against Claims, substantive consolidation, defenses, statutory, equitable subordination, characterization or recharacterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation or rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements.

    (a)    **No Admission.** Nothing contained in the Schedules and Statements, or the omission of any information in the Schedules or Statements, is intended as, or should be construed as, an admission or stipulation as to any matter addressed in the Schedules or Statements, including as to the validity or priority of any Claim against any Debtor, the status of any Person identified or not identified in the Schedules or Statements (including whether or not a Person is or is not an insider as that term is defined in the Bankruptcy Code) or any assertion made therein or

---

[4]    For the purposes of these Global Notes, the term Claim shall have the meaning as defined under section 101(5) of the Bankruptcy Code.

herein, or a waiver of any Debtor's rights to dispute any Claim or assert any cause of action or defense against any Person.

**(b)**      **Recharacterization.**   The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the Claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements. Nevertheless, due to the complexity of the Debtors' businesses, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items. Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, redesignate, add, or delete items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition. Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

**(c)**      **Classifications.**   Listing (i) a Claim on Schedule D as "secured," (ii) a Claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to dispute the characterization or classification of such Claims or contracts or to setoff such Claims, as appropriate, or that such Claim is not subject to objection. Failure to designate a claim on a given Debtor's Schedules as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated" or that such claim is not subject to objection.

**(d)**      **Estimates and Assumptions.**   The preparation of the Schedules and Statements required the Debtors to make commercially reasonable estimates and assumptions with respect to the reported amounts of certain assets and liabilities, the disclosure of certain contingent assets and liabilities, and the reported amounts of revenues and expenses during the applicable reporting periods. Actual results could differ from such estimates. The Debtors reserve their rights to amend the reported amount of assets, liabilities, revenues, and expenses to reflect changes in those estimates or assumptions.

**(e)**      **Causes of Action.**   Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets or avoid transfers. The Debtors reserve all rights with respect to any causes of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit,

obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law they may have (collectively, "Causes of Action"), and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such Claims, Causes of Action, or avoidance actions or in any way prejudice or impair the assertion of such Claims or Causes of Action.

(f)     **Property Rights.**  Exclusion of certain property, including, but not limited to, intellectual property, from the Schedules and Statements shall not be construed to be an admission that such property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain property, including, but not limited to, intellectual property, shall not be construed to be an admission that such property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all property rights, including but not limited to, intellectual property rights.

(g)     **Cryptocurrency.**  Certain of the Debtors' assets are cryptocurrencies, or digital tokens, based on a publicly accessible blockchain.  Cryptocurrencies are unique assets.  Certain laws and regulations that may be applicable to cryptocurrencies do not contemplate or address unique issues associated with the cryptocurrency economy, are subject to significant uncertainty, and vary widely across U.S. federal, state, and local and international jurisdictions.  The Debtors make no representations or admissions concerning the status of cryptocurrency as a "security" under any state, federal, or local domestic or international statute, including United States federal securities laws, and reserve all rights to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

(h)     **Insiders.**  In instances where the Schedules and Statements require information regarding "insiders," the Debtors have included information with respect to the individuals and entities who the Debtors believe may be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods.

The listing or omission of a party as an insider for purposes of the Schedules and Statements is for informational purposes and is not intended to be, nor should it be, construed as an admission that those parties are insiders for purpose of section 101(31) of the Bankruptcy Code.  Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for:

5

(a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity could successfully argue that it is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose. Furthermore, the listing or omission of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved.

3.    **Methodology.**

(a)    **Basis of Presentation.** Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements. The Schedules and Statements have not, however, been subject to procedures that would typically be applied to financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP") or International Financial Reporting Standards ("IFRS") and are not intended to reconcile fully with any financial statements of each Debtor prepared under GAAP or IFRS. Therefore, combining the assets and liabilities set forth in the Schedules and Statements would result in amounts that are substantially different from financial information that would be prepared on a consolidated basis under GAAP or IFRS. For financial reporting purposes, prior to the Petition Date, the Debtors prepared financial statements on a consolidated basis. Unlike the consolidated financial statements, the Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor. Moreover, given, among other things, the uncertainty surrounding the valuation, collection, and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, it is not an admission that the Debtor was solvent as of the Petition Date or at any time before the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, it is not an admission that the Debtor was insolvent at the Petition Date or any time before the Petition Date. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

(b)    **Confidential or Sensitive Information.** There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information (e.g. names, physical addresses and other information), or concerns for the privacy of an individual. The alterations will be limited to only what is necessary to protect the Debtor or applicable third party and in accordance with any order of the Court determining the appropriate scope of redactions in the Schedules and Statements. All such

6

redacted information shall be made available as directed by orders of the Court or to the individual customer or creditor scheduled, as applicable.

(c)    **Duplication.**  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Schedules and Statements.  Except as otherwise discussed below, to the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

(d)    **Net Book Value.**  In certain instances, current market valuations for certain assets are neither maintained by, nor readily available to, the Debtors.  Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values.  Market values may vary, sometimes materially, from net book values.  The Debtors believe that it would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain the current market values of their property.  Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined or unknown.  For this reason, amounts ultimately realized will vary, potentially materially, from net book values.

Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may differ materially from fair market values.  Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material.  Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein.  In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

In addition, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.  The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.  Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date.

(e)    **Property.**  The Debtors' office property leases are set forth on Schedule G.  Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

(f)    **Allocation of Liabilities.**  The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtors reserve the right to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

The liabilities listed on the Schedules and Statements do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code.  Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statement as is necessary or appropriate.  Further, the Debtors reserve all rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structures of any such transaction or any document or instrument related to any creditor's claim.

(g)    **Undetermined Amounts.**  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

(h)    **Unliquidated Claim Amounts.**  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

(i)    **Totals.**  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements.  To the extent there are unknown or undetermined amounts, the actual totals may be different than the listed totals.

(j)    **Valuation of Cryptocurrency.**  Cryptocurrency amounts are generally listed by coin amount rather than a conversion to price in U.S. dollars.  To the extent cryptocurrency values are presented in U.S. dollars, they reflect the valuation as set forth in the Debtors' books and records as of the Petition Date or the time of the relevant transaction, as applicable.  Actual net realizable value may vary significantly.  The Debtors reserve all rights in this respect with such values presented in the Schedules and Statements.

Should the Debtors' plan of reorganization require Claims based in cryptocurrency to be paid out in U.S. dollars, the following conversion chart produced by the Debtors listing the types of cryptocurrency held and the valuation as of 11:11pm EST on January 19, 2023 shall be used to determine the U.S. dollar equivalent amount.

| Cryptocurrency | | Conversion Rate to USD as of January 19, 2023 at 11:11pm ET |
|---|---|---|
| 1INCH | 1inch Network | $0.45 |
| AAVE | AAVE | $81.34 |
| ADA | Cardano | $0.3394 |

| ALCX | Alchemix | $16.34 |
| ALGO | Algorand | $0.2199 |
| AMP | Amp | $0.00474 |
| ANKR | Ankr | $0.02344 |
| APE | ApeCoin | $4.987 |
| ATOM | Cosmos | $12.168 |
| AVAX | Avalanche | $16.18 |
| AXS | Axie Infinity | $8.37 |
| BAL | Balancer | $6.558 |
| BAT | Basic Attention Token | $0.24002 |
| BCH | Bitcoin Cash | $121.55 |
| BNB | Binance Coin | $294 |
| BNBW_BSC | Wrapped Binance Coin | $0 |
| BNT | Bancor | $0.39 |
| BSV | Bitcoin SV | $43.06 |
| BTC | Bitcoin | $21091.98 |
| BUSD | Binance USD | $1 |
| BUSD_BSC | Binance USD_Binance Smart Chain | $0 |
| CHZ | Chiliz | $0.1278 |
| COMP | Compound | $48.4 |
| CRV | Curve DAO Token | $0.9263 |
| DAI | Multi Collateral Dai | $0.9998 |
| DASH | Dash | $49.06 |
| DOGE | DogeCoin | $0.08148 |
| DOT | Polkadot | $5.864 |
| DPX | Dopex | $0 |
| EOS | EOS | $0.9796 |
| ETC | Ethereum Classic | $20.73 |
| ETH | Ethereum | $1554.65 |
| ETHE | Grayscale Ethereum Trust | $7.85 |
| ETHW | EthereumPoW | $3.84 |
| FET | Fetch.ai | $0.2741 |
| FIL | Filecoin | $4.399 |
| FLOW | Flow | $1.025 |
| FTM | Fantom | $0.30393 |
| FTT | FTX Token | $2.27 |
| GALA | Gala | $0.04558 |
| GBTC | Grayscale Bitcoin Trust | $11.46 |
| GLMR | Moonbeam | $0.3929 |
| GRT | The Graph | $0.0787 |
| GUSD | Gemini Dollar | $1 |
| HBAR | Hedera | $0.0612 |
| HNT | Helium | $2.9796 |
| INJ | Injective | $1.537 |
| KNC | Kyber Network Crystal v2 | $0.804 |
| KNC | Kyber Network Crystal | $0.804 |

| KSM | Kusama | $33.59 |
|---|---|---|
| LINK | Chainlink | $6.496 |
| LPT | Livepeer | $5.501 |
| LRC | Loopring | $0.2589 |
| LTC | Litecoin | $84.11 |
| LUNA | Terra | $0.00017375 |
| LUNC | Terra Classic | $0 |
| MANA | Decentraland | $0.6451 |
| MATIC | Polygon | $0.9531 |
| MKR | Maker | $661.19 |
| NEAR | Near | $2.098 |
| NEO | Neo | $7.45 |
| NU | NuCypher | $0.1335 |
| OMG | OMG Network | $1.2462 |
| OXT | Orchid | $0.0757 |
| PAXG | PAX Gold | $1907 |
| POLY | Polymath | $0.1738 |
| RBN | Ribbon Finance | $0.199 |
| REN | Ren | $0.072 |
| RLY | Rally | $0.0098 |
| SAND | The Sandbox | $0.7014 |
| SGB | Songbird | $0 |
| SHIB | Shiba Inu | $0.0000115 |
| SKL | Skale | $0.02727 |
| SNX | Synthetix | $2.24772 |
| SOL | Solana | $21.28 |
| SRM | Serum | $0.424 |
| STORJ | Storj | $0.33317 |
| SUSHI | SushiSwap | $1.1973 |
| TOKE | Tokemak | $0.99 |
| TRX | Tron | $0.06 |
| UMA | UMA | $1.81 |
| UNI | Uniswap | $6.189 |
| USDC | USD Coin | $1.00151 |
| USDP | Pax Dollar | $1 |
| USDT | Tether | $0.99998 |
| USTC | TerraClassicUSD | $0.0219 |
| WBTC | Wrapped Bitcoin | $21079.18 |
| WLUNA | Wrapped Terra | $0 |
| XEC | eCash | $0 |
| XLM | Stellar | $0.084244 |
| XRP | XRP | $0.39088 |
| XTZ | Tezos | $0.999 |
| YFI | Yearn.Finance | $6736.54 |
| ZEC | Zcash | $45.07 |
| ZEN | Horizen | $9.88 |

| ZRX | 0x | $0.20248 |
|---|---|---|

**(k)**     **Paid Claims.** Pursuant to certain orders of the Court entered in the Debtors' chapter 11 cases entered shortly after the Petition Date (each, a "First Day Order" and collectively, the "First Day Orders") as well as other orders of the Court, the Debtors have authority to pay certain outstanding prepetition payables; as such, outstanding liabilities may have been reduced by any court-approved postpetition payments made on prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated. Regardless of whether such claims are listed in the Schedules and Statements, to the extent the Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities. Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Court where such order preserves the right to contest such payment.

**(l)**     **Intercompany Receivables and Payables.** Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' books and records. Intercompany loan amounts scheduled may include accrued and unpaid interest. The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion of the Debtors' regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including with respect to the characterization of intercompany claims, loans, and notes.

As described more fully in the Debtors' *Motion For Entry Of Interim And Final Orders (I) Authorizing Debtors To Continue To Operate The Existing Cash Management System, Including Existing Bank Accounts, Honor Certain Prepetition Obligations Related Thereto, And Maintain Existing Business Forms; (II) Permitting Continued Intercompany Transactions And Granting Certain Administrative Claims; (III) Extending The Time To Comply With The Requirements Of Section 345 Of The Bankruptcy Code; And (IV) Granting Related Relief* [Docket No. 15] (the "Cash Management Motion"), the Debtors engage in a range of intercompany transactions in the ordinary course of business. Pursuant to the second interim order granting certain of the relief requested in the Cash Management Motion on an interim basis [Docket No. 99] (the "Cash Management Order"), the Bankruptcy Court has granted the Debtors authority to continue these intercompany transactions in the ordinary course of business on an interim basis.

Thus, intercompany balances as of the Petition Date, as set forth in Schedule E/F or Schedule A/B 77, may not accurately reflect current positions.

**(m)** **Guarantees and Other Secondary Liability Claims.** The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, and other such agreements. The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify additional guarantees as they continue their review of their books and records and contractual agreements. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional guarantees are identified.

**(n)** **Excluded Assets and Liabilities.** The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation, accrued salaries and employee benefit accruals. In addition, and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other order that may be entered by the Court. Additionally, certain immaterial or *de minimis* assets and liabilities may have been excluded.

**(o)** **Currency.** Unless otherwise indicated, all amounts are reflected in U.S. dollars or amount of cryptocurrency coins.

**(p)** **Setoffs.** The Debtors may incur certain setoffs and other similar rights during the ordinary course of business. Setoffs in the ordinary course can result from various items, including, without limitation, margin call or other lending-related transactions, intercompany transactions, and other disputes between the Debtors and their customers and/or suppliers. These setoffs and other similar rights are consistent with the ordinary course of business in the Debtors' industry and may not be tracked separately. Therefore, although such setoffs and other similar rights may have been included in the Schedules, other setoffs are not independently accounted for, or may not have occurred by the Petition Date and as such, may be excluded from the Schedules. The Gemini Collateral as defined in the Restructuring Term Sheet, filed with the court on 2/10/23 Doc 80, is reflected as an offset to the overall Gemini claim in the amount of $354,180,262. The Debtors reserve all rights related to any purported exercise of remedies by Gemini.

**(q)** **Claims and Causes of Action.** The Debtors, despite reasonable efforts, may not have identified and/or set forth all of their Causes of Action or potential Causes of Action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets or avoid transfers. The Debtors reserve all of their rights with respect to any Claims, Causes of Action, or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

(r)   **Executory Contracts.**  Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so.  Certain information, such as the contact information of the counterparty, may not be included where such information could not be obtained using the Debtor's reasonable efforts.  Listing a contract or agreement on Schedule G does not constitute an admission that such contract is an executory contract or that such contract or agreement was in effect on the Petition Date or is valid or enforceable.  The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G.

The contracts and agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, supplements, letters, memoranda and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents.  Certain of the contracts and agreements listed on Schedule G may also consist of several parts, including purchase orders, letters and other documents that may not be listed on Schedule G or that may be listed as a single entry.  Unless otherwise specified on Schedule G, each executory contract listed thereon shall include all exhibits, schedules, riders, modifications, memorandums, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract, without respect to whether such agreement, instrument, or other document is listed thereon.  The Debtors expressly reserve their rights to challenge whether such related materials constitute an executory contract, a single contract or agreement, or multiple, severable or separate contracts.

The Debtors reserve all of their rights with respect to the executory contracts, including the right to amend Schedule G.

(s)   **Umbrella or Master Agreements.**   Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors.  Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement.   The master service agreements have been listed in Schedule G, but do not reflect any decision by the Debtor as to whether or not such agreements are executory in nature.

(t)   **Credits and Adjustments.**  The Claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and vendor payments, if applicable. The Debtors reserve all of their rights with regard to such credits, allowances, or

13

other adjustments, including, but not limited to, the right to modify the Schedules, assert claims objections and/or setoffs with respect to the same, or apply such allowances in the ordinary course of business on a post-petition basis.

(u)     **Payments.**  The financial affairs and businesses of the Debtors are complex.  Prior to the Petition Date, the Debtors and their non-Debtor affiliates maintained a cash management and disbursement system in the ordinary course of their businesses, as described in the Cash Management Motion (as defined herein).  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, if appropriate.

(v)     **Litigation.**  Certain litigation actions reflected as claims against a particular Debtor may related to one or more of the other Debtors.  The Debtors made reasonable efforts to accurately record those certain litigation actions (the "Litigation Actions") in the Schedules and Statements of the Debtor(s) that is the party to the Litigation Action.  The inclusion of any Litigation Action in these Schedules and Statements does not constitute an admission by the Debtors of liability, the validity of any Litigation Action or the amount of any potential claim that may result from any claims with respect to any Litigation Action, or the amount, priority and/or treatment of any potential claim resulting from any Litigation Action currently pending or that may arise in the future.

4.     **Specific Schedules Disclosures.**

(a)     **Schedule A/B, Question 3 – Checking, Savings, Money Market, or Financial Brokerage Accounts.**  Amounts listed are as of the Petition Date for the corresponding Debtor and reflect the actual bank balance, not the net book value.

(b)     **Schedule A/B, Question 15 – Non-Publicly Traded Stock.**  Equity interests in subsidiaries and affiliates primarily arise from common stock ownership or member or partnership interests.  For purposes of these Schedules, the Debtors have listed an undetermined value for the equity interests of all subsidiaries and affiliates.  Nothing in these Schedules is an admission or conclusion of the Debtors regarding the value of such subsidiary and affiliate equity interests, which, under certain fair market or enterprise valuation analyses, may have value.

Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets or the impact of the industry environment and may differ materially from the actual value and/or performance of the underlying assets.  As such, the value listed in these Schedules and Statements cannot be, and was not, used to determine the Debtors' enterprise valuation.

(c)     **Schedule A/B, Question 55 – Real Property.**  The Debtors do not own any real property.  The Debtors' office and other property leases are set forth on Schedule G.

14

(d)     **Schedule A/B, Question 72 – Tax Refunds and Unused Net Operating Losses (NOLs).**  The Debtors' response to the schedule question is indicative of certain gross non-tax effected net operating loss ("NOL") values as compared to the GAAP net deferred tax assets associated with such NOLs. The actual tax savings from these NOLs is dependent upon, among other things, the timing, character, and amount of any future or previous years' (provided NOLs are allowed to be carried back) income to which they can be applied. Amounts also do not reflect the consideration of any valuation allowances recorded pursuant to GAAP, which have the effect of reducing associated deferred tax assets.

(e)     **Schedule A/B, Question 73 – Interests in insurance policies or annuities.**  The Debtors have included a listing of their insurance policies in response to Question 73, however, a determination as to the surrender or refund value of each of the insurance policies has not been made and, therefore, the balance is listed as undetermined.

(f)     **Schedule A/B, Question 77 – Other property of any kind not already listed.**  Schedule A/B, Question 77 lists, among other things, the Debtors' cryptocurrency, or digital tokens, assets based on a publicly accessible blockchain in Rider 2.  The amounts listed in Rider 3 include collateral posted by the Debtors related to certain borrowings from counterparties.  All figures set forth in Schedule A/B, Question 77 are preliminary, unreviewed, and unaudited and are subject to final adjustments following, *inter alia*, completion of quarterly and year-end close procedures.

The listing by the Debtors of any account between a Debtor and another Debtor or between a Debtor and a non-Debtor affiliate is a statement of what appears in a particular Debtor's books and records and does not reflect any admission or conclusion of the Debtors regarding the allowance, classification, characterization, validity, or priority of such account.  The Debtors take no position in these Schedules and Statements as to whether such accounts would be allowed as a Claim, an Interest, or not allowed at all.  The Debtors and all parties in interest reserve all rights with respect to such accounts.

(g)     **Schedule D – Creditors Who Have Claims Secured by Property.**  Except as otherwise agreed pursuant to a stipulation, or agreed order, or general order entered by the Court that is or becomes final, the Debtors and their estates reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to any creditor of any Debtor.  The Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's Claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's Claim.

The Debtors have not included on Schedule D parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights.

(h)     **Schedule E/F – Creditors Who Have Unsecured Claims.**  The listing of any Claim on Schedule E/F does not constitute an admission by the Debtors that such

Claim or any portion thereof is entitled to priority treatment under section 507 of the Bankruptcy Code. The Debtors reserve all of their rights to dispute the amount and/or the priority status of any Claim on any basis at any time.

***Part 1 - Creditors with Priority Unsecured Claims.*** Pursuant to the *Final Order Authorizing the Payment of Certain Taxes and Fees* [Docket No. 97] (the "Taxes Order"), the Court granted the Debtors authority to pay, in their sole discretion, certain tax liabilities and regulatory fees, including certain business licensing fees, that accrued prepetition. Accordingly, any unsecured priority claims based upon prepetition tax accruals that have been or will be paid pursuant to the Taxes Order are not listed in Schedule E.

Furthermore, pursuant to the *Final Order (I) Authorizing Genesis Asia Pacific Pte. Ltd To (A) Pay Certain Employee Wages And Other Compensation And Related Obligations And (B) Maintain And Continue Employee Benefits And Programs In The Ordinary Course, And (II) Authorizing And Directing Applicable Banks To Honor All Transfers Related To Such Obligations* [Docket No. 100] (the "Wages Order"), the Court granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, and other compensation, reimbursable employee expenses, and employee medical and similar benefits, in the ordinary course of business. The Debtors believe that all such Claims have been, or will be, satisfied in the ordinary course during their Chapter 11 Cases pursuant to the authority granted in the Wages Order, and such satisfied amounts are not set forth on Schedule E.

The listing of a claim on Schedule E/F, Part 1 does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

***Part 2 - Creditors with Nonpriority Unsecured Claims.*** The liabilities identified in Schedule E/F, Part 2 are derived from the Debtors' books and records. The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of Claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed Claims or the correct amount of all unsecured Claims. Certain creditors listed on Schedule E/F may owe amounts to the Debtors and, as such, the Debtors may have valid setoff or recoupment rights with respect to such amounts, including on account of outstanding cryptocurrency or other loans. The amounts listed on Schedule E/F may not reflect any such right of setoff or recoupment and the Debtors reserve all rights to assert any such setoff or recoupment rights.

Schedule E/F, Part 2 contains information regarding threatened or pending litigation involving the Debtors. The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements. In certain instances, the date on which a litigation claim arose is an open issue of fact. Determining the date upon which each claim in Schedule E/F, Part 2 was incurred or arose would be unduly burdensome and

prohibitively costly and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F, Part 2.

Schedule E/F, Part 2 may also reflect prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2 does not include rejection damage claims, to the extent such damage claims exist, of the counterparties to the executory contracts and unexpired leases that have been or may be rejected.

Schedule E/F, Part 2 does not include certain deferred credits, deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, such amounts are reflected on the Debtors' books and records as required in accordance with GAAP.

The claims of individual creditors for, among other things, goods, services, or taxes listed on the Debtors' books and records may not reflect credits or allowances due from such creditors. The Debtors reserve all of their rights in respect of such credits or allowances. The dollar amounts listed may be exclusive of contingent or unliquidated amounts.

**(i)**    **Schedule G – Executory Contracts and Unexpired Leases.** While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred. The Debtors reserve all rights to supplement or amend Schedule G as necessary.

Certain relationships between the Debtors and their vendors and account holders may be governed by a master services agreement, under which counterparties may place purchase orders or other ancillary agreements which may be considered executory contracts.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as supplemental agreements and letter agreement, which documents may not be set forth in Schedule G.

17

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same counterparty may appear multiple times in Schedule G. Multiple listings, if any, reflect distinct agreements between the applicable Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

5.    **Specific Statements Disclosures.**

   (a)    **Statement Question 3 – Payments to Creditors.** All accounts payable disbursements listed in Statement Question 3 are made through the Debtors' cash management system, more fully described in the Cash Management Motion. Dates listed in Statement Questions 3 reflect the dates upon which the Debtor transferred funds to the relevant payee or disbursing agent. Certain disbursements may be excluded from Statement 3, such as disbursements to retained professionals (reported elsewhere). Certain payroll-related pass-through payments have been excluded from Statement 3.

   Statement Question 3 also includes details regarding certain cryptocurrency transactions, including loans, borrows, repays, collateral returns, transfers, interest payments and other transactions, in order to provide a transparent transaction history. These transactions are also presented in USD value using the asset market price at the time of the transaction. The Debtors recognize that not all listed transactions are directly responsive to Statement Question 3, however they believe that presenting the transaction history provides the most accurate view.

   For the avoidance of doubt, any payments made in connection with the Debtors' bankruptcy within the 12-month period prior to the Petition Date are disclosed in response to Statement Question 11 and therefore are not listed in response to Statement Question 3. Further, any payments made to an insider within the 12-month period prior to the Petition Date are disclosed in response to Statement Question 4 and therefore are not listed in response to Statement Question 3.

   (b)    **Statement Question 4 – Payments to Insiders.** The Debtors have responded to Statement Questions 4 and 30 in the attachment for Statement Question 4.

   Statement Question 4 includes payments or other transfers of property made within one year before filing this case that benefited any insider. As described in the Cash

Management Motion, the Wages Motion, and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* [Docket No. 28], the Debtors and their affiliates are parties to certain Shared Services Agreements where certain non-Debtor affiliates provide the Debtors with certain services, such as customer onboarding, shared management, employees, payroll and administrative support. Certain employees are employed by a non-Debtor affiliate and only devote a portion of their time supporting certain aspects of the Debtors' operations. Therefore, while a non-Debtor affiliate has made payments to certain employees who may be deemed insiders under the Bankruptcy Code, and those and other associated costs have been reimbursed by the Debtors pursuant to the Shared Services Agreement, such reimbursements would not be listed in response to Statement Question 4 as they were not direct payments by a Debtor to an employee who may be deemed an insider under the Bankruptcy Code.

Statement Question 4 also includes details regarding certain cryptocurrency transactions, including loans made to insiders and related repayments in order to provide a transparent transaction history. The Debtors recognize that not all listed transactions are directly responsive to Statement Question 4, however they believe that presenting the transaction history provides the most accurate view.

Individual payments among Debtors and to non-Debtor affiliates are not reflected in Statement 4 due to their complexity and volume. The Debtors have reported monthly intercompany positions in Statement Question 4. In addition, intercompany payables and receivables as of the Petition Date can be found on Schedule E/F and Schedule AB.

To the extent: (i) a person qualified as an insider in the year prior to the Petition Date but later resigned their insider status or (ii) did not begin the year as an insider but later became an insider, the Debtors have listed in response to Statement Question 4 all payments or transfers made during the applicable 12-month period, irrespective of when such person was defined as an "insider."

As discussed above, the inclusion of a party as an insider is not intended to be, nor should be, construed as a legal characterization of such party as an insider and does not act as an admission of any fact, Claim, right, or defense, and any such rights, Claims, and defenses are hereby expressly reserved.

(c)     **Statement Question 11 – Payments Made Related to Bankruptcy.** Although the Debtors have made reasonable efforts to distinguish between payments made for professional services related and unrelated to their restructuring efforts, some amounts listed in response to Statement Question 11 may include payments for professional services unrelated to bankruptcy.

<div align="center">*       *       *       *       *</div>

**Fill in this information to identify the case:**

Debtor name    Genesis Global Capital, LLC

United States Bankruptcy Court for the:    Southern District of New York

Case number (If known)   23-10064

☐ Check if this is an amended filing

## Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

---

### Part 1:    Income

**1.  Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From 1/1/2023 to 1/19/2023<br>MM/DD/YYYY    MM/DD/YYYY | ☑ Operating a business<br>☐ Other | $ (542,656.70) |
| **For prior year:** | From 1/1/2022 to 12/31/2022<br>MM/DD/YYYY    MM/DD/YYYY | ☑ Operating a business<br>☐ Other | $ 321,707,200.89 |
| **For the year before that:** | From 1/1/2021 to 12/31/2021<br>MM/DD/YYYY    MM/DD/YYYY | ☑ Operating a business<br>☐ Other | $ 748,852,969.24 |

**2.  Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From _____ to _____<br>MM/DD/YYYY | | $ |
| **For prior year:** | From _____ to _____<br>MM/DD/YYYY    MM/DD/YYYY | | $ |
| **For the year before that:** | From _____ to _____<br>MM/DD/YYYY    MM/DD/YYYY | | $ |

| Debtor | Genesis Global Capital, LLC | | Case number (If known) | 23-10064 |
|---|---|---|---|---|
| | Name | | | |

---

## Part 2:  List Certain Transfers Made Before Filing for Bankruptcy

**3.  Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers including expense reimbursements to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7, 575. (This amount may be adjusted on 4/01/2025 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None    **See Attached Rider**

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer Check all that apply |
|---|---|---|---|
| 3.1 _____ <br> Street _____ <br> City    State    Zip Code | _____ | $ _____ | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ☐ Services <br> ☐ Other _____ |
| 3.2 _____ <br> Street _____ <br> City    State    Zip Code | _____ | $ _____ | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ☐ Services <br> ☐ Other _____ |

**4.  Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7, 575. (This amount may be adjusted on 4/01/2025 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None    **See Attached Rider**

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1 _____ <br> Street _____ <br> City    State    Zip Code | _____ | $ _____ | _____ <br> _____ |
| **Relationship to debtor** <br> _____ | | | |
| 4.2 _____ <br> Street _____ <br> City    State    Zip Code | _____ | $ _____ | _____ <br> _____ |
| **Relationship to debtor** <br> _____ | | | |

---

| Debtor | Genesis Global Capital, LLC | | Case number (if known) | 23-10064 |
|--------|------------------------------|--|------------------------|----------|
| | Name | | | |

---

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| Creditor's name and address | Description of the property | Date | Value of property |
|------------------------------|------------------------------|------|--------------------|
| 5.1 _____ <br> Street _____ <br> City    State    Zip Code | _____ <br> _____ | _____ | $ _____ |
| 5.2 _____ <br> Street _____ <br> City    State    Zip Code | _____ <br> _____ | _____ | $ _____ |

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☐ None    **See Attached Rider**

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|------------------------------|------------------------------------------|------------------------|--------|
| _____ <br> Street _____ <br> City    State    Zip Code | _____ <br> _____ | _____ | $ _____ |

Last 4 digits of account number: XXXX - _____

---

| **Part 3:** | **Legal Actions or Assignments** |
|-------------|-----------------------------------|

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity within 1 year before filing this case.

☐ None    **See Attached Rider**

| Case title | Nature of case | Court or agency's name and address | Status of case |
|------------|-----------------|-------------------------------------|-----------------|
| 7.1 _____ <br><br> **Case number** <br> _____ | _____ | _____ <br> Street _____ <br> City    State    Zip Code | ☐ Pending <br> ☐ On appeal <br> ☐ Concluded |
| 7.2 _____ <br><br> **Case number** <br> _____ | _____ | _____ <br> Street _____ <br> City    State    Zip Code | ☐ Pending <br> ☐ On appeal <br> ☐ Concluded |

---

Debtor  Genesis Global Capital, LLC
Name

Case number (If known)   23-10064

## 8. Assignments and receivership

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| | | $ _____ |
| Street | | |
| | Case title | Court name and address |
| | | |
| City        State        Zip Code | Case number | |
| | | |
| | Date of order or assignment | |

---

## Part 4:   Certain Gifts and Charitable Contributions

### 9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000

☑ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| 9.1 _____ | _____ | _____ | $ _____ |
| Street | | | |
| City        State        Zip Code | | | |
| Recipient's relationship to debtor | | | |
| 9.2 _____ | _____ | _____ | $ _____ |
| Street | | | |
| City        State        Zip Code | | | |
| Recipient's relationship to debtor | | | |

---

## Part 5:   Certain Losses

### 10.  All losses from fire, theft, or other casualty within 1 year before filing this case.

☐ None   See Attached Rider

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br>List unpaid claims on Official Form 106A/B<br>(Schedule A/B: Assets - Real and Personal Property). | Date of loss | Value of property lost |
|---|---|---|---|
| _____ | | _____ | $ _____ |

---

Debtor  Genesis Global Capital, LLC                                    Case number (if known)   23-10064
         Name

| Part 6: | Certain Payments or Transfers |
| --- | --- |

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None   <u>See Attached Rider</u>

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
| --- | --- | --- | --- |
| 11.1 | | | $ |
| **Address** | | | |
| Street | | | |
| City          State          Zip Code | | | |
| **Email or website address** | | | |
| **Who made the payment, if not debtor?** | | | |

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
| --- | --- | --- | --- |
| 11.2 | | | $ |
| **Address** | | | |
| Street | | | |
| City          State          Zip Code | | | |
| **Email or website address** | | | |
| **Who made the payment, if not debtor?** | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
| --- | --- | --- | --- |
| | | | $ |
| **Trustee** | | | |

**13. Transfers not already listed on this statement**

List any transfers of money or other property-by sale, trade, or any other means-made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|
| 13.1 | | | $ |

**Address**

_____
Street

_____
City          State          Zip Code

**Relationship to debtor**

_____

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|
| 13.2 | | | $ |

**Address**

_____
Street

_____
City          State          Zip Code

**Relationship to debtor**

_____

**Part 7:**    **Previous Locations**

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| Address | | | Dates of Occupancy | |
|---|---|---|---|---|
| 14.1 | | | From | To |
| Street | | | | |
| City | State | Zip Code | | |
| 14.2 | | | From | To |
| Street | | | | |
| City | State | Zip Code | | |

Debtor   Genesis Global Capital, LLC                                    Case number (if known)   23-10064
         Name

---

**Part 8:   Health Care Bankruptcies**

15. **Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| | Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|---|
| 15.1 | | | |
| | Street | | |
| | City          State          Zip Code | Location where patient records are maintained (if different from facility address). If electronic, identify any service provider. | How are records kept? |

*Check all that apply:*

☐ Electronically
☐ Paper

| | Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|---|
| 15.2 | | | |
| | Street | | |
| | City          State          Zip Code | Location where patient records are maintained (if different from facility address). If electronic, identify any service provider. | How are records kept? |

*Check all that apply:*

☐ Electronically
☐ Paper

---

**Part 9:   Personally Identifiable Information**

16. **Does the debtor collect and retain personally identifiable information of customers?**

☐ No.
☑ Yes. State the nature of the information collected and retained.    See Attached Rider

Does the debtor have a privacy policy about that information?
☐ No
☑ Yes

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.
Yes. Does the debtor serve as plan administrator?
   ☐ No. Go to Part 10.
   ☐ Yes. Fill in below

| Name of plan | Employer identification number of the plan |
|---|---|
| | EIN: |

Has the plan been terminated?
☐ No
☐ Yes

---

Debtor    Genesis Global Capital, LLC                                    Case number (If known)    23-10064
         Name

---

**Part 10:    Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

18. **Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, old, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☐ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| 18.1 METROPOLITAN COMMERCIAL BANK<br>99 PARK AVENUE 12TH FLOOR<br>NEW YORK, NY 10016 | XXXX- 0134 | ☑ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other _____ | 1/9/2023 | $        20,812.15 |
| 18.2 | XXXX- | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other _____ | | $ |

19. **Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____<br>Street<br>_____<br>City      State     Zip Code | _____ | _____ | ☐ No<br>☐ Yes |
| | Address | | |
| | _____<br>_____ | | |

20. **Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____<br>Street<br>_____<br>City      State     Zip Code | _____ | _____ | ☐ No<br>☐ Yes |
| | Address | | |
| | _____<br>_____ | | |

---

| Debtor | Genesis Global Capital, LLC | Case number (if known) | 23-10064 |
| | Name | | |

---

**Part 11:** **Property the Debtor Holds or Controls That the Debtor Does Not Own**

21. **Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| | | | $ |
| Street | | | |
| City          State          Zip Code | | | |

---

**Part 12:** **Details About Environmental Information**

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No
☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| | | | ☐ Pending |
| Case Number | Street | | ☐ On appeal |
| | City          State          Zip Code | | ☐ Concluded |

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |
| Street | Street | | |
| City          State          Zip Code | City          State          Zip Code | | |

---

Debtor    Genesis Global Capital, LLC                                    Case number (If known)    23-10064
          Name

---

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Street | Street | | |
| _____ | _____ | | |
| City    State    Zip Code | City    State    Zip Code | | |

---

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None    **See Attached Rider**

| Business name and address | Describe the nature of the business | Employer Identification number
Do not include Social Security number or ITIN. |
|---|---|---|
| 25.1 _____ | _____ | EIN: _____ |
| Street _____ | _____ | **Dates business existed** |
| City    State    Zip Code | | From _____  To _____ |

| Business name and address | Describe the nature of the business | Employer Identification number
Do not include Social Security number or ITIN. |
|---|---|---|
| 25.2 _____ | _____ | EIN: _____ |
| Street _____ | _____ | **Dates business existed** |
| City    State    Zip Code | | From _____  To _____ |

| Business name and address | Describe the nature of the business | Employer Identification number
Do not include Social Security number or ITIN. |
|---|---|---|
| 25.3 _____ | _____ | EIN: _____ |
| Street _____ | _____ | **Dates business existed** |
| City    State    Zip Code | | From _____  To _____ |

---

| Debtor | Genesis Global Capital, LLC | Case number (If known) 23-10064 |
|---|---|---|
| | Name | |

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None    **See Attached Rider**

| Name and address | Dates of service |
|---|---|
| 26a.1 _____ | From _____ To _____ |
| Street _____ | |
| City            State            Zip Code | |

| Name and address | Dates of service |
|---|---|
| 26a.2 _____ | From _____ To _____ |
| Street _____ | |
| City            State            Zip Code | |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None    **See Attached Rider**

| Name and address | Dates of service |
|---|---|
| 26b.1 _____ | From _____ To _____ |
| Street _____ | |
| City            State            Zip Code | |

| Name and address | Dates of service |
|---|---|
| 26b.2 _____ | From _____ To _____ |
| Street _____ | |
| City            State            Zip Code | |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None    **See Attached Rider**

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|
| 26c.1 _____ | _____ |
| Street _____ | _____ |
| City            State            Zip Code | |

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|
| 26c.2 | |
| Street | |
| City                State                Zip Code | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None    **See Attached Rider**

| Name and address |
|---|
| 26d.1 |
| Street |
| City                State                Zip Code |

| Name and address |
|---|
| 26c.2 |
| Street |
| City                State                Zip Code |

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | $ |

| Name and address of the person who has possession of inventory records | | |
|---|---|---|
| 27.1 | | |
| Street | | |
| City                State                Zip Code | | |

| Name of the person who supervised the taking of the inventory | | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|---|
| | | | $ |

| Name and address of the person who has possession of inventory records | |
|---|---|
| 27.2 | |
| Street | |
| City     State     Zip Code | |

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| See Attached Rider | | | |
| | | | |
| | | | |
| | | | |
| | | | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No

☒ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| See Attached Rider | | | From     To |
| | | | From     To |
| | | | From     To |
| | | | From     To |

30. **Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No

☒ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1 **Please Refer to SOFA Question 4.** | | | |
| Street | | | |
| City     State     Zip Code | | | |
| **Relationship to debtor** | | | |

Debtor   Genesis Global Capital, LLC                                        Case number (If known)   23-10064
         Name

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.2 | | | |
| Street | | | |
| City        State        Zip Code | | | |
| **Relationship to debtor** | | | |

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No

☑ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| DIGITAL CURRENCY GROUP, INC. | EIN: 46-2307141 |

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| | EIN: |

---

**Part 14:    Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    03/20/2023
               MM / DD / YYYY

X  /s/ A. Derar Islim                              Printed name   A. Derar Islim
   Signature of individual signing on behalf of the debtor

   Position or relationship to debtor    Interim CEO

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☐ No

☑ Yes

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

SOFA Question 3: Certain payments or transfers to creditors within 90 days before filing this case

**Cash Disbursements - Operational**

| Creditor Name & Address | Check or Wire Number | Payment Date | Reason for payment | Amount Paid |
|---|---|---|---|---|
| AGON LITIGATION<br>RITTER HOUSE, 2/F, ROAD TOWN<br>TORTOLA, VG 1110<br>VIRGIN ISLANDS | ACH/Wire | 1/11/2023 | Services | $ 25,000.00 |
| | | | **SUBTOTAL** | $ 25,000.00 |
| AMAZON WEB SERVICES, INC.<br>410 TERRY AVENUE<br>NORTH SEATTLE, WA 98109 | ACH/Wire | 11/9/2022 | Suppliers or Vendors | $ 259,066.47 |
| | ACH/Wire | 12/7/2022 | Suppliers or Vendors | $ 262,331.14 |
| | ACH/Wire | 1/4/2023 | Suppliers or Vendors | $ 256,571.60 |
| | | | **SUBTOTAL** | $ 777,969.21 |
| ANCHORAGE DIGITAL BANK NA<br>101 S. REID ST<br>SUITE 329<br>SIOUX FALLS, SD 57103 | ACH/Wire | 12/7/2022 | Suppliers or Vendors | $ 1,250.00 |
| | ACH/Wire | 12/22/2022 | Suppliers or Vendors | $ 1,250.00 |
| | | | **SUBTOTAL** | $ 2,500.00 |
| BITGO, INC.<br>2443 ASH STREET<br>PALO ALTO, CA 94306 | ACH/Wire | 12/7/2022 | Suppliers or Vendors | $ 1,000.00 |
| | ACH/Wire | 12/22/2022 | Suppliers or Vendors | $ 1,000.00 |
| | ACH/Wire | 1/11/2023 | Suppliers or Vendors | $ 1,000.00 |
| | | | **SUBTOTAL** | $ 3,000.00 |
| CHICAGO MERCANTILE EXCHANGE INC.<br>20 SOUTH WACKER DRIVE<br>CHICAGO, IL 60606 | ACH/Wire | 12/14/2022 | Suppliers or Vendors | $ 4,744.20 |
| | ACH/Wire | 1/19/2023 | Suppliers or Vendors | $ 1,560.36 |
| | | | **SUBTOTAL** | $ 6,304.56 |
| CJD TECHNOLOGIES<br>32 COMMERCE DR<br>CRANFORD, NJ 07016 | ACH/Wire | 11/23/2022 | Suppliers or Vendors | $ 7,032.50 |
| | ACH/Wire | 12/30/2022 | Suppliers or Vendors | $ 7,573.88 |
| | | | **SUBTOTAL** | $ 14,606.38 |
| CLOUDFLARE INC<br>101 TOWNSEND STREET<br>SAN FRANCISCO, CA 94107 | ACH/Wire | 11/23/2022 | Suppliers or Vendors | $ 12,558.86 |
| | | | **SUBTOTAL** | $ 12,558.86 |
| COMPLETE DISCOVERY SOURCE INC<br>250 PARK AVE, FLOOR 18<br>NEW YORK, NY 10177 | ACH/Wire | 1/12/2023 | Services | $ 1,739.46 |
| | | | **SUBTOTAL** | $ 1,739.46 |
| CT CORPORATION<br>PO BOX 4349<br>CAROL STREAM, IL 60197 | ACH/Wire | 1/19/2023 | Services | $ 15.00 |
| | | | **SUBTOTAL** | $ 15.00 |
| DAVIS POLK WARDWELL LLP<br>450 LEXINGTON AVE<br>NEW YORK, NY 10017 | ACH/Wire | 10/27/2022 | Services | $ 7,926.40 |
| | ACH/Wire | 12/14/2022 | Services | $ 2,086.80 |
| | ACH/Wire | 12/22/2022 | Services | $ 29,170.40 |
| | | | **SUBTOTAL** | $ 39,183.60 |
| DONNELLEY FINANCIAL LLC<br>PO BOX 842282<br>BOSTON, MA 02284-2282 | ACH/Wire | 1/11/2023 | Suppliers or Vendors | $ 7,011.00 |
| | | | **SUBTOTAL** | $ 7,011.00 |
| DRIVEN<br>1040 AVENUE OF THE AMERICAS<br>11TH FLOOR<br>NEW YORK, NY 10018 | ACH/Wire | 10/27/2022 | Services | $ 1,560.00 |
| | ACH/Wire | 11/2/2022 | Services | $ 1,960.00 |
| | ACH/Wire | 11/23/2022 | Services | $ 2,350.00 |
| | ACH/Wire | 11/30/2022 | Services | $ 2,800.00 |
| | ACH/Wire | 12/23/2022 | Services | $ 1,040.00 |
| | ACH/Wire | 12/29/2022 | Services | $ 1,600.00 |
| | | | **SUBTOTAL** | $ 11,310.00 |
| FGS GLOBAL (US) LLC<br>909 THIRD AVENUE, 32ND FL<br>NEW YORK, NY 10022 | ACH/Wire | 11/30/2022 | Services | $ 200,000.00 |
| | ACH/Wire | 12/23/2022 | Services | $ 200,000.00 |
| | ACH/Wire | 1/11/2023 | Services | $ 200,000.00 |
| | ACH/Wire | 1/13/2023 | Services | $ 300,000.00 |
| | | | **SUBTOTAL** | $ 900,000.00 |
| GLOBALIZATION PARTNERS<br>175 FEDERAL STREET, 17TH FLOOR<br>BOSTON, MA 02110 | ACH/Wire | 11/28/2022 | Suppliers or Vendors | $ 2,500.00 |
| | ACH/Wire | 11/29/2022 | Suppliers or Vendors | $ 2,500.00 |
| | ACH/Wire | 11/30/2022 | Suppliers or Vendors | $ 92,584.70 |
| | | | **SUBTOTAL** | $ 97,584.70 |
| GUNDERSON DETTMER<br>1250 BROADWAY, 23RD FLOOR<br>NEW YORK, NY 10001 | ACH/Wire | 1/12/2023 | Services | $ 36,358.50 |
| | ACH/Wire | 1/13/2023 | Services | $ 33,753.60 |
| | | | **SUBTOTAL** | $ 70,112.10 |
| HOULIHAN LOKEY CAPITAL, INC.<br>245 PARK AVENUE, 20TH FL.<br>NEW YORK, NY 10167 | ACH/Wire | 1/11/2023 | Services | $ 300,000.00 |
| | | | **SUBTOTAL** | $ 300,000.00 |
| JAMS, INC.<br>18881 VON KARMAN AVE., SUITE 350<br>IRVINE, CA 92612 | ACH/Wire | 1/11/2023 | Services | $ 1,375.00 |
| | | | **SUBTOTAL** | $ 1,375.00 |
| KIRKLAND ELLIS LLP<br>601 LEXINGTON AVENUE<br>NEW YORK, NY 10022 | ACH/Wire | 1/11/2023 | Services | $ 607,470.21 |
| | | | **SUBTOTAL** | $ 607,470.21 |
| KLEINBERG, KAPLAN, WOLFF COHEN, P<br>500 FIFTH AVENUE<br>NEW YORK, NY 10110 | ACH/Wire | 12/7/2022 | Services | $ 6,015.00 |
| | | | **SUBTOTAL** | $ 6,015.00 |
| MARCUM LLP<br>10 MELVILLE PARK RD<br>MELVILE, NY 11747 | ACH/Wire | 1/11/2023 | Services | $ 48,300.00 |
| | | | **SUBTOTAL** | $ 48,300.00 |
| MEITAR LAW OFFICES<br>16 ABBA HILLEL SILVER ROAD<br>RAMAT GAN, 5250608<br>ISRAEL | ACH/Wire | 12/23/2022 | Services | $ 11,220.30 |
| | | | **SUBTOTAL** | $ 11,220.30 |
| OKTA, INC.<br>100 FIRST STREET<br>14TH FLOOR<br>SAN FRANCISCO, CA 94105 | ACH/Wire | 12/22/2022 | Suppliers or Vendors | $ 68,233.00 |
| | | | **SUBTOTAL** | $ 68,233.00 |
| ONSTREAM LLC<br>348 FAIRVIEW AVENUE<br>CEDAR GROVE, NJ 07009 | ACH/Wire | 11/9/2022 | Services | $ 67,077.90 |
| | ACH/Wire | 1/4/2023 | Services | $ 93,158.42 |
| | | | **SUBTOTAL** | $ 160,236.32 |
| PERKINS COIE LLP<br>1201 THIRD AVE<br>SUITE 4900<br>SEATTLE, WA 98101 | ACH/Wire | 1/12/2023 | Services | $ 121,285.03 |
| | | | **SUBTOTAL** | $ 121,285.03 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case

**Cash Disbursements - Operational**

| Creditor Name & Address | Check or Wire Number | Payment Date | Reason for payment | Amount Paid |
|---|---|---|---|---|
| PICO QUANTITATIVE TRADING LLC<br>32 OLD SLIP<br>SUITE 1601<br>NEW YORK, NY 10005 | ACH/Wire | 11/2/2022 | Suppliers or Vendors | $ 4,172.63 |
| | ACH/Wire | 12/7/2022 | Suppliers or Vendors | $ 4,172.63 |
| | | | **SUBTOTAL** | **$ 8,345.26** |
| PROSKAUER ROSE LLP<br>ELEVEN TIMES SQUARE<br>(EIGHTH AVENUE & 41ST STREET)<br>NEW YORK, NY 10036-8299 | ACH/Wire | 1/11/2023 | Services | $ 839,498.00 |
| | | | **SUBTOTAL** | **$ 839,498.00** |
| PYTHIAN<br>241N 5TH AVE 8TH FLOOR<br>MINNEAPOLIS, MN 55401 | ACH/Wire | 11/2/2022 | Suppliers or Vendors | $ 21,240.00 |
| | ACH/Wire | 11/30/2022 | Suppliers or Vendors | $ 10,800.00 |
| | ACH/Wire | 12/7/2022 | Suppliers or Vendors | $ 21,240.00 |
| | | | **SUBTOTAL** | **$ 53,280.00** |
| SILVERGATE<br>ATTN: JAMES LECLAIR<br>4250 EXEUCTIVE SQUARE, SUITE 100<br>LA JOLLA, CA 92037 | ACH/Wire | 12/13/2022 | Suppliers or Vendors | $ 1,355.40 |
| | ACH/Wire | 1/11/2023 | Suppliers or Vendors | $ 75.00 |
| | | | **SUBTOTAL** | **$ 1,430.40** |
| SILVERGATE BANK<br>ATTN: ZINE MAJID<br>4250 EXEUCTIVE SQUARE, SUITE 100<br>LA JOLLA, CA 92037 | ACH/Wire | 11/3/2022 | Suppliers or Vendors | $ 48,437.50 |
| | | | **SUBTOTAL** | **$ 48,437.50** |
| STONETURN GROUP LLP<br>17 STATE STREET<br>2ND FLOOR<br>NEW YORK, NY 10004 | ACH/Wire | 12/7/2022 | Services | $ 132,856.06 |
| | | | **SUBTOTAL** | **$ 132,856.06** |
| VESTED LLC<br>PO BOX 20239<br>NEW YORK, NY 10023 | ACH/Wire | 12/8/2022 | Suppliers or Vendors | $ 61,000.00 |
| | | | **SUBTOTAL** | **$ 61,000.00** |
| WORK SOCIAL<br>111 TOWN SQUARE PLACE<br>SUITE 1203<br>JERSEY CITY, NJ 07310 | ACH/Wire | 10/27/2022 | Suppliers or Vendors | $ 7,620.00 |
| | ACH/Wire | 11/28/2022 | Suppliers or Vendors | $ 7,860.00 |
| | ACH/Wire | 12/27/2022 | Suppliers or Vendors | $ 7,500.00 |
| | ACH/Wire | 1/19/2023 | Suppliers or Vendors | $ 7,500.00 |
| | | | **SUBTOTAL** | **$ 30,480.00** |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case

**Cash Disbursements - Non-Operational**

| Creditor Name & Address | Check or Wire Number | Payment Date | Reason for payment | Amount Paid |
|---|---|---|---|---|
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/3/2022 | Other - Loan Book Activity | $ 356,845.87 |
| | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 471,535.00 |
| | | | **SUBTOTAL** | **$ 828,380.87** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/2/2022 | Other - Loan Book Activity | $ 3,631.60 |
| | | | **SUBTOTAL** | **$ 3,631.60** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 144,283.00 |
| | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | $ 138,758.49 |
| | | | **SUBTOTAL** | **$ 283,041.49** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 10,958.90 |
| | | | **SUBTOTAL** | **$ 10,958.90** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/2/2022 | Other - Loan Book Activity | $ 10,881.30 |
| | | | **SUBTOTAL** | **$ 10,881.30** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 14,172.71 |
| | | | **SUBTOTAL** | **$ 14,172.71** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 250,322.31 |
| | | | **SUBTOTAL** | **$ 250,322.31** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 8,633.25 |
| | | | **SUBTOTAL** | **$ 8,633.25** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 5,064.59 |
| | | | **SUBTOTAL** | **$ 5,064.59** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 15,502,943.38 |
| | | | **SUBTOTAL** | **$ 15,502,943.38** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 8,350.92 |
| | | | **SUBTOTAL** | **$ 8,350.92** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 8,450,143.22 |
| | | | **SUBTOTAL** | **$ 8,450,143.22** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | $ 40,458.23 |
| | | | **SUBTOTAL** | **$ 40,458.23** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 26,759.24 |
| | | | **SUBTOTAL** | **$ 26,759.24** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 10/25/2022 | Other - Loan Book Activity | $ 180,000,000.00 |
| | ACH/Wire | 11/7/2022 | Other - Loan Book Activity | $ 55,000,000.00 |
| | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 25,000,000.00 |
| | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 16,750,000.00 |
| | ACH/Wire | 11/15/2022 | Other - Loan Book Activity | $ 101,293,013.49 |
| | | | **SUBTOTAL** | **$ 378,043,013.49** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 1,000,000.00 |
| | | | **SUBTOTAL** | **$ 1,000,000.00** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 7,463,759.86 |
| | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 35,020.00 |
| | | | **SUBTOTAL** | **$ 7,498,779.86** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 209,269.27 |
| | | | **SUBTOTAL** | **$ 209,269.27** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 15,323.94 |
| | | | **SUBTOTAL** | **$ 15,323.94** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 10/31/2022 | Other - Loan Book Activity | $ 10,000.00 |
| | | | **SUBTOTAL** | **$ 10,000.00** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/2/2022 | Other - Loan Book Activity | $ 3,000,000.00 |
| | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 2,500,000.00 |
| | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 2,400,000.00 |
| | | | **SUBTOTAL** | **$ 7,900,000.00** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 726.19 |
| | | | **SUBTOTAL** | **$ 726.19** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 3,549.21 |
| | | | **SUBTOTAL** | **$ 3,549.21** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 802.22 |
| | | | **SUBTOTAL** | **$ 802.22** |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case

**Cash Disbursements - Non-Operational**

| Creditor Name & Address | Check or Wire Number | Payment Date | Reason for payment | Amount Paid |
|---|---|---|---|---|
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 44,267.58 |
| | | | SUBTOTAL | $ 44,267.58 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 54,432.18 |
| | | | SUBTOTAL | $ 54,432.18 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 234.40 |
| | | | SUBTOTAL | $ 234.40 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/14/2022 | Other - Loan Book Activity | $ 55,900.00 |
| | | | SUBTOTAL | $ 55,900.00 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 2,569,986.39 |
| | | | SUBTOTAL | $ 2,569,986.39 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 5,155.00 |
| | | | SUBTOTAL | $ 5,155.00 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 600,000.00 |
| | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | $ 400,000.00 |
| | ACH/Wire | 11/15/2022 | Other - Loan Book Activity | $ 241,028.00 |
| | ACH/Wire | 11/16/2022 | Other - Loan Book Activity | $ 1,600,000.00 |
| | | | SUBTOTAL | $ 2,841,028.00 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 41,107.60 |
| | | | SUBTOTAL | $ 41,107.60 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/2/2022 | Other - Loan Book Activity | $ 56,593.24 |
| | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 3,000,000.00 |
| | | | SUBTOTAL | $ 3,056,593.24 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | $ 3,083,436.17 |
| | | | SUBTOTAL | $ 3,083,436.17 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 10/23/2022 | Other - Loan Book Activity | $ 19,940,000.00 |
| | ACH/Wire | 10/24/2022 | Other - Loan Book Activity | $ 4,200,000.00 |
| | ACH/Wire | 10/25/2022 | Other - Loan Book Activity | $ 29,100,000.00 |
| | ACH/Wire | 10/26/2022 | Other - Loan Book Activity | $ 9,425,000.00 |
| | ACH/Wire | 10/27/2022 | Other - Loan Book Activity | $ 17,160,000.00 |
| | ACH/Wire | 10/29/2022 | Other - Loan Book Activity | $ 2,091,617.57 |
| | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | $ 1,750,000.00 |
| | ACH/Wire | 11/15/2022 | Other - Loan Book Activity | $ 150,000.00 |
| | | | SUBTOTAL | $ 83,816,617.57 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 932,756.37 |
| | | | SUBTOTAL | $ 932,756.37 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 10/25/2022 | Other - Loan Book Activity | $ 2,880,058.47 |
| | ACH/Wire | 10/26/2022 | Other - Loan Book Activity | $ 3,503,617.49 |
| | ACH/Wire | 11/2/2022 | Other - Loan Book Activity | $ 9,114,147.64 |
| | ACH/Wire | 11/3/2022 | Other - Loan Book Activity | $ 3,376,027.95 |
| | ACH/Wire | 11/7/2022 | Other - Loan Book Activity | $ 18,009,263.52 |
| | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 43,961,989.12 |
| | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 68,201,743.26 |
| | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | $ 38,761,005.65 |
| | ACH/Wire | 11/14/2022 | Other - Loan Book Activity | $ 26,449,492.62 |
| | | | SUBTOTAL | $ 214,257,345.72 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 5,463.53 |
| | | | SUBTOTAL | $ 5,463.53 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 880.52 |
| | | | SUBTOTAL | $ 880.52 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 276,403.60 |
| | | | SUBTOTAL | $ 276,403.60 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/7/2022 | Other - Loan Book Activity | $ 210,000.00 |
| | | | SUBTOTAL | $ 210,000.00 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 7,515.90 |
| | | | SUBTOTAL | $ 7,515.90 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 6,730.84 |
| | | | SUBTOTAL | $ 6,730.84 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/3/2022 | Other - Loan Book Activity | $ 1,819.52 |
| | | | SUBTOTAL | $ 1,819.52 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 4,000,000.00 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case

**Cash Disbursements - Non-Operational**

| Creditor Name & Address | Check or Wire Number | Payment Date | Reason for payment | Amount Paid |
|---|---|---|---|---|
| | | | SUBTOTAL | $ 4,000,000.00 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | 220,225.46 |
| | | | SUBTOTAL | $ 220,225.46 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/7/2022 | Other - Loan Book Activity | 508,633.87 |
| | | | SUBTOTAL | $ 508,633.87 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/7/2022 | Other - Loan Book Activity | 0.94 |
| | | | SUBTOTAL | $ 0.94 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | 48,311.67 |
| | | | SUBTOTAL | $ 48,311.67 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | 17,727.71 |
| | | | SUBTOTAL | $ 17,727.71 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 10/31/2022 | Other - Loan Book Activity | 116,791.50 |
| | ACH/Wire | 11/30/2023 | Other - Loan Book Activity | 53,163.77 |
| | | | SUBTOTAL | $ 169,955.27 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | 5,351.15 |
| | | | SUBTOTAL | $ 5,351.15 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | 167,416.52 |
| | | | SUBTOTAL | $ 167,416.52 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 10/24/2022 | Other - Loan Book Activity | 100,000.00 |
| | | | SUBTOTAL | $ 100,000.00 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 1/4/2023 | Other - Loan Book Activity | 375.00 |
| | | | SUBTOTAL | $ 375.00 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | 72,965.42 |
| | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | 7,868,344.67 |
| | | | SUBTOTAL | $ 7,941,310.09 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 10/31/2022 | Other - Loan Book Activity | 2,006,904.11 |
| | | | SUBTOTAL | $ 2,006,904.11 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | 1,486.30 |
| | ACH/Wire | 11/7/2022 | Other - Loan Book Activity | 250,287.67 |
| | | | SUBTOTAL | $ 251,773.97 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | 10.00 |
| | | | SUBTOTAL | $ 10.00 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | 1,108.83 |
| | | | SUBTOTAL | $ 1,108.83 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | 38,583.77 |
| | | | SUBTOTAL | $ 38,583.77 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | 249,949.40 |
| | | | SUBTOTAL | $ 249,949.40 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | 412,992.71 |
| | | | SUBTOTAL | $ 412,992.71 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | 1,528.58 |
| | | | SUBTOTAL | $ 1,528.58 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | 4,322.49 |
| | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | 366,779.53 |
| | | | SUBTOTAL | $ 371,102.02 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | 2,010,134.77 |
| | | | SUBTOTAL | $ 2,010,134.77 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | 159,574.77 |
| | | | SUBTOTAL | $ 159,574.77 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | 2,138,222.95 |
| | | | SUBTOTAL | $ 2,138,222.95 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | 26,095.72 |
| | | | SUBTOTAL | $ 26,095.72 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | 43.68 |
| | | | SUBTOTAL | $ 43.68 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | 250,000.00 |
| | | | SUBTOTAL | $ 250,000.00 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | 5,382.53 |
| | | | SUBTOTAL | $ 5,382.53 |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 10/26/2022 | Other - Loan Book Activity | 4,000,000.00 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case

**Cash Disbursements - Non-Operational**

| Creditor Name & Address | Check or Wire Number | Payment Date | Reason for payment | Amount Paid |
|---|---|---|---|---|
| | ACH/Wire | 10/31/2022 | Other - Loan Book Activity | $ 1,729,360.03 |
| | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 3,404,794.81 |
| | | | **SUBTOTAL** | **$ 9,134,154.84** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 10/25/2022 | Other - Loan Book Activity | $ 750,849.59 |
| | | | **SUBTOTAL** | **$ 750,849.59** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 1,929.52 |
| | | | **SUBTOTAL** | **$ 1,929.52** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 10/31/2022 | Other - Loan Book Activity | $ 5,706.26 |
| | | | **SUBTOTAL** | **$ 5,706.26** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 17,396.54 |
| | | | **SUBTOTAL** | **$ 17,396.54** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 70,986.22 |
| | | | **SUBTOTAL** | **$ 70,986.22** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | $ 2,582,321.89 |
| | | | **SUBTOTAL** | **$ 2,582,321.89** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 2,020,616.83 |
| | | | **SUBTOTAL** | **$ 2,020,616.83** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 10,923.24 |
| | | | **SUBTOTAL** | **$ 10,923.24** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 90,928.65 |
| | | | **SUBTOTAL** | **$ 90,928.65** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 3,549.14 |
| | | | **SUBTOTAL** | **$ 3,549.14** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 34,413.38 |
| | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 6,552,964.76 |
| | | | **SUBTOTAL** | **$ 6,587,378.14** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 5,356,862.00 |
| | | | **SUBTOTAL** | **$ 5,356,862.00** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 14,560,000.00 |
| | | | **SUBTOTAL** | **$ 14,560,000.00** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 10/26/2022 | Other - Loan Book Activity | $ 1,504,109.59 |
| | | | **SUBTOTAL** | **$ 1,504,109.59** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 10/24/2022 | Other - Loan Book Activity | $ 400,000.00 |
| | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 20,187,497.65 |
| | | | **SUBTOTAL** | **$ 20,587,497.65** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 49,339.56 |
| | | | **SUBTOTAL** | **$ 49,339.56** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 10/21/2022 | Other - Loan Book Activity | $ 1,000,000.00 |
| | ACH/Wire | 11/1/2022 | Other - Loan Book Activity | $ 100,602.86 |
| | | | **SUBTOTAL** | **$ 1,100,602.86** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | $ 3,247,667.57 |
| | | | **SUBTOTAL** | **$ 3,247,667.57** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/7/2022 | Other - Loan Book Activity | $ 35,000.00 |
| | ACH/Wire | 10/24/2022 | Other - Loan Book Activity | $ 25,000.00 |
| | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 632,884.96 |
| | | | **SUBTOTAL** | **$ 692,884.96** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/2/2022 | Other - Loan Book Activity | $ 23,230.77 |
| | | | **SUBTOTAL** | **$ 23,230.77** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 2,296,530.98 |
| | | | **SUBTOTAL** | **$ 2,296,530.98** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/4/2022 | Other - Loan Book Activity | $ 5,256,061.20 |
| | ACH/Wire | 11/9/2022 | Other - Loan Book Activity | $ 10,000,000.00 |
| | | | **SUBTOTAL** | **$ 15,256,061.20** |
| NAME ON FILE ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $ 253,397.27 |
| | | | **SUBTOTAL** | **$ 253,397.27** |

Debtor Name: Genesis Global Capital, LLC

Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case

**Cash Disbursements - Non-Operational**

| Creditor Name & Address | Check or Wire Number | Payment Date | Reason for payment | Amount Paid |
|---|---|---|---|---|
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/8/2022 | Other - Loan Book Activity | $          2,377,332.25 |
| | | | SUBTOTAL | $          2,377,332.25 |
| NAME ON FILE<br>ADDRESS ON FILE | ACH/Wire | 11/10/2022 | Other - Loan Book Activity | $          4,280,850.97 |
| | | | SUBTOTAL | $          4,280,850.97 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
SOFA Question 3: Certain payments or transfers to creditors within 90 days before filing this case
Coin Transactions

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|---|---|---|---|---|---|---|
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Loan Executed | SOL | 300,000.00 | $ 8,433,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | USDC | 100,000.00 | $ 100,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Loan Executed | ETH | 1,000.00 | $ 1,299,950.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | FIL | 29,350.00 | $ 145,576.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Loan Executed | ETH | 5,323.00 | $ 6,919,633.85 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Loan Executed | DOT | 500,000.00 | $ 2,917,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | RLY | 171,509.934643905 | $ 2,641.25 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | XTZ | 1,042.260097 | $ 1,399.76 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | ANKR | 63,456.6327825528 | $ 1,798.36 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | SUSHI | 3,194.9427307082 | $ 4,307.10 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BAT | 7,943.36878198237 | $ 2,202.93 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | REN | 1,041.25329847227 | $ 119.74 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | UNI | 17.3062056067294 | $ 104.46 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | ZEC | 14.4657625 | $ 754.97 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | DOGE | 813,136.89808209 | $ 48,243.41 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | ETH | 72.9753824031426 | $ 94,864.35 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | AAVE | 20.8348648445065 | $ 1,710.96 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | CRV | 3,211.85273951618 | $ 2,873.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | LPT | 102.978997821944 | $ 903.13 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | LRC | 5,660.31853472816 | $ 1,421.31 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | LINK | 5,069.01662228445 | $ 34,509.87 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | FET | 6,247.4317895809 | $ 501.67 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | INJ | 401.673296718411 | $ 745.18 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | OXT | 469.090467756953 | $ 42.97 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | USDC | 1,720,200.532718 | $ 1,720,200.53 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | GUSD | 873,472.11 | $ 873,472.11 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.0057633 | $ 11.04 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00051936 | $ 9.95 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00074949 | $ 14.36 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00054903 | $ 10.52 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00026414 | $ 5.06 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00072239 | $ 13.84 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00097047 | $ 18.60 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00047114 | $ 9.03 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00094154 | $ 18.04 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00037017 | $ 7.09 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00049119 | $ 9.41 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00056838 | $ 10.89 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00038154 | $ 7.31 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00009896 | $ 1.90 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00050881 | $ 9.75 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00070085 | $ 13.43 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.00005586 | $ 1.07 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.02492108513134 | $ 477.58 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.03997791 | $ 766.12 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.048230662 | $ 924.28 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.09519159 | $ 1,824.22 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.0561795 | $ 1,076.60 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.10925669 | $ 2,093.76 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 0.000102 | $ 1.95 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Interest Payment | BTC | 0.00062926 | $ 12.06 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Collateral Returned | BTC | 0.58792788 | $ 11,266.84 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | ETH | 207.69707152 | $ 269,995.81 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | SOL | 30.1734063 | $ 848.17 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | BTC | 306.31423284 | $ 5,870,098.75 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Loan Executed | CRV | 500,000.00 | $ 447,250.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/21/2022 | Borrow Returned | USDT | 50,000,000.00 | $ 50,005,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/23/2022 | Loan Executed | ETH | 1,000.00 | $ 1,363,960.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | OXT | 734.838548759702 | $ 67.31 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | BTC | 15.95867288 | $ 308,499.34 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | LTC | 718.69599309 | $ 37,767.47 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | MANA | 40,061.8070233203 | $ 24,157.27 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | RBN | 705.040778994168 | $ 238.86 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | DAI | 108.671090414957 | $ 108.69 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | MKR | 22.005367752858 | $ 20,421.20 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | XTZ | 20.29474 | $ 27.46 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | ZEC | 47.50796202 | $ 2,469.94 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | AXS | 428.02032002076 | $ 3,595.37 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | 1INCH | 2,029.26136581647 | $ 1,148.56 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | APE | 1,871.38747893481 | $ 8,434.34 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | LPT | 324.331109332972 | $ 2,818.44 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | ANKR | 7,222.97884649254 | $ 201.95 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | FTM | 2,232.17847529232 | $ 453.69 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | RLY | 392,139.577294001 | $ 6,078.16 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | CHZ | 41,018.29455629 | $ 7,904.23 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 176,391.250564 | $ 176,391.25 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 699.269007 | $ 699.27 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 946.099941 | $ 946.10 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 924.657539 | $ 924.66 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 962.649478 | $ 962.65 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 970.114099 | $ 970.11 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 697.562675 | $ 697.56 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 150.159565 | $ 150.16 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 948.127441 | $ 948.13 |

Debtor Name: Genesis Global Capital, LLC

Case Number:   23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3: Certain payments or transfers to creditors within 90 days before filing this case**
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|------|---------|------|--------------------|------|---------------|----------|
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 626.985264 | $ 626.99 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 642.950672 | $ 642.95 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 34,992.00 | $ 34,992.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 153.878519 | $ 153.88 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 84.006353 | $ 84.01 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 21,684.881205 | $ 21,684.88 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 18,036.658242 | $ 18,036.66 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 17,480.00 | $ 17,480.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | ETH | 45.58008214 | $ 61,247.32 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | LINK | 24.17399444 | $ 167.04 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | XLM | 269,260.4548923 | $ 29,707.78 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | BTC | 19.17887413 | $ 370,749.50 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 12,400.935765 | $ 12,400.94 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Borrow Returned | USDC | 25,000,000.00 | $ 25,000,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/24/2022 | Interest Payment | USDC | 39,041.09568899999 | $ 39,041.10 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | ETHW | 50,000.00 | $ - |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Loan Executed | HNT | 25,000.00 | $ 102,922.50 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Loan Executed | USDT | 3,000,000.00 | $ 3,000,600.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | BTC | 0.001 | $ 20.08 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | AAVE | 15.2576749897359 | $ 1,249.60 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | FTM | 2,937.5251749217373 | $ 620.70 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | ETH | 4,406.19671858703 | $ 6,434,148.76 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | CRV | 6,488.11035814115 | $ 5,880.17 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | APE | 12,540.0758867595 | $ 59,364.72 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | SUSHI | 421.204304113582 | $ 657.04 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | YFI | 0.0282205328914474 | $ 226.61 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | MATIC | 23,501.3321838351 | $ 21,564.82 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | BCH | 570.0011631 | $ 64,244.83 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | ZRX | 1,074.33494130181 | $ 271.57 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | KNC | 325.567387340876 | $ 284.81 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | CHZ | 17,870.7283957362 | $ 3,543.77 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | FET | 9,116.9043255702B | $ 744.85 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | COMP | 56.319380068O324 | $ 2,861.02 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | BAL | 15.4741463768793 | $ 101.97 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | TOKE | 2,854.05223136161 | $ 3,196.54 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | PAXG | 7.37991722190707 | $ 12,148.82 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | UNI | 129.925404117232 | $ 854.78 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | MKR | 27.9993459476424 | $ 26,464.70 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | BAT | 2,276.96140623716 | $ 651.87 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | GRT | 64,288.1896644511 | $ 5,200.91 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | ALCX | 127.815534509662 | $ 2,622.77 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | DAI | 215.527306818563 | $ 215.51 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | DOGE | 41,654.62976562 | $ 2,626.32 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | BNT | 787.321778205016 | $ 344.06 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | 1INCH | 25,754.0048218192 | $ 15,014.58 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | MANA | 9,884.80932128532 | $ 6,179.98 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | ANKR | 12,982.706463169 | $ 369.49 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | GUSD | 2,880,058.47 | $ 2,880,058.47 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | ETH | 657.08923355 | $ 959,514.55 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | SOL | 4.0386068 | $ 124.67 |
| NAME ON FILE | ADDRESS ON FILE | 10/25/2022 | Borrow Returned | XLM | 497,095.0434548 | $ 55,556.34 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | BTC | 59.10576276 | $ 1,228,034.52 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | BTC | 90.89423724 | $ 1,888,500.48 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | REN | 522.399964758592 | $ 64.73 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | BAL | 60.9958860422688 | $ 412.33 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | OXT | 296.798175213829 | $ 28.37 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | INJ | 125.85057973697 | $ 259.56 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | DOGE | 127,644.90602526 | $ 9,291.27 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | LTC | 310.62534066 | $ 17,525.48 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | KNC | 167.290619837209 | $ 154.46 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | MANA | 76,549.0400164843 | $ 48,822.98 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | YFI | 0.11888418414163B | $ 969.39 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | XTZ | 135.836738 | $ 195.20 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | LPT | 4.52896397888464 | $ 42.21 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | CRV | 2,775.344805559405 | $ 2,593.56 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | AXS | 37.1436886609492 | $ 339.49 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | FTM | 270,272.58397084 | $ 59,365.37 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | UNI | 17,289.5777871154 | $ 115,753.72 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | MKR | 2.13100376109405 | $ 1,997.01 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | GUSD | 3,503,617.49 | $ 3,503,617.49 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | BTC | 0.62202068 | $ 12,923.66 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | BCH | 53.8220513 | $ 6,159.93 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | ETH | 941.59941595 | $ 1,475,533.36 |
| NAME ON FILE | ADDRESS ON FILE | 10/26/2022 | Borrow Returned | USDC | 3,324.732672 | $ 3,324.73 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | ETHW | 50,000.00 | $ - |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | PAXG | 0.0166645973946091 | $ 27.53 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | SUSHI | 988.016950472717 | $ 1,593.57 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | LRC | 887,164.64356085 | $ 237,405.26 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | DAI | 26,326.6435692658 | $ 26,321.38 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | GRT | 1,784.48379764531 | $ 142.58 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | OXT | 282.313485416554 | $ 26.14 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | TOKE | 22.7703307639293 | $ 25.50 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | CRV | 5,355.41613877025 | $ 4,864.86 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | LINK | 417.339677517274 | $ 2,876.31 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|---|---|---|---|---|---|---|
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | DOGE | 46,033.27824268 | $ 3,539.96 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BAT | 2,767.69751615612 | $ 788.85 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | ZRX | 1,928.18613916348 | $ 490.66 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | TOKE | 22.7703307639293 | $ 25.50 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | MKR | 16.3334614548431 | $ 14,763.98 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | LRC | 502,755.49523702 | $ 134,537.37 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | AMP | 425,607.477824995 | $ 2,047.17 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | APE | 20,890.6231327587 | $ 96,263.99 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | ZEC | 1.41447294 | $ 74.68 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | UMA | 11.2115685632149 | $ 24.49 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | STORJ | 213.11314851 | $ 90.19 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | 1INCH | 35,070.9759058522 | $ 20,867.23 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | FIL | 236.975157719817 | $ 1,240.33 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 3.6317386 | $ 73,706.46 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 0.00618115 | $ 125.45 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 0.00603141 | $ 122.41 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 0.00617067 | $ 125.23 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 0.00622189 | $ 126.27 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 0.00606186 | $ 123.03 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 0.00620115 | $ 125.85 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 0.000995 | $ 20.19 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 0.00625331 | $ 126.91 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 0.0060113 | $ 122.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 0.00624271 | $ 126.70 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 0.00559246 | $ 113.50 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Interest Payment | BTC | 0.00526225 | $ 106.80 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BCH | 93.17649244 | $ 10,470.24 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | SOL | 43.13337236 | $ 1,319.45 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 7.22242834 | $ 146,579.83 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | ETH | 2,683.84073597 | $ 4,063,817.97 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | USDC | 1,435.719437 | $ 1,435.72 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 31.00 | $ 629,147.79 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Borrow Returned | BTC | 63.00 | $ 1,278,590.67 |
| NAME ON FILE | ADDRESS ON FILE | 10/27/2022 | Collateral Returned | BTC | 159.00 | $ 3,226,919.31 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Loan Executed | POLY | 400,000.00 | $ 72,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 7,749.681473 | $ 7,749.68 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 12,374.60297 | $ 12,374.60 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 12,991.615886 | $ 12,991.62 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 12,508.276657 | $ 12,508.28 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 10,134.387651 | $ 10,134.39 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 15,916.945983 | $ 15,916.95 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 13,060.578231 | $ 13,060.58 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 11,395.884487 | $ 11,395.88 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 13,267.345048 | $ 13,267.35 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 17,144.142966 | $ 17,144.14 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 16,532.001486 | $ 16,532.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 14,429.526191 | $ 14,429.53 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 7,589.381863 | $ 7,589.38 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 10,233.437743 | $ 10,233.44 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 301,665.501365 | $ 301,665.50 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 23,006.69 | $ 23,006.69 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | ETH | 105.818027076151 | $ 164,555.50 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | MATIC | 163.288629041933 | $ 154.28 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | ANKR | 112,737.612065217 | $ 3,287.43 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | FTM | 17,824.3282224611 | $ 4,012.26 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | BTC | 124.65251528 | $ 2,567,855.53 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | PAXG | 0.835444729965306 | $ 1,368.79 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | UMA | 78.1464273015668 | $ 173.72 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | APE | 8,437.6342711931 | $ 41,943.48 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | SUSHI | 1,376.58259137875 | $ 2,350.24 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | DAI | 25,263.442993257 | $ 25,253.34 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | OXT | 164.423228088034 | $ 15.52 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | LPT | 25.1558577537602 | $ 233.95 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | DOGE | 546,845.41951954 | $ 45,858.46 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | KNC | 6.4216568377436 | $ 5.80 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDC | 1,342,104.836268 | $ 1,342,104.84 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | ETH | 876.45841693 | $ 1,362,962.95 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Borrow Returned | USDT | 25,000,000.00 | $ 25,005,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/28/2022 | Collateral Returned | BTC | 981.00 | $ 20,208,707.91 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ETHW | 50,000.00 | |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Loan Executed | AAVE | 3,000.00 | $ 256,320.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Collateral Returned | BTC | 43.90 | $ 914,102.92 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 3,088.81522545 | $ 810.39 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 5,870.48247669 | $ 1,540.20 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 3,080.96509521 | $ 808.33 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 2,797.00612926 | $ 733.83 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 6,050.74825092 | $ 1,587.50 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 2,974.24536869 | $ 780.33 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 3,389.45731228 | $ 889.27 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 5,914.98494345 | $ 1,551.88 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 2,959.1392006 | $ 776.37 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 3,163.96351887 | $ 830.11 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 98.63013699 | $ 25.88 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 3,103.81197575 | $ 814.33 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|------|---------|------|---------------------|------|---------------|----------|
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 6,081.1228936 | $ 1,595.47 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 6,096.61726152 | $ 1,599.53 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 1,150,100.00 | $ 301,744.84 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Borrow Returned | ZRX | 1,200,000.00 | $ 314,836.80 |
| NAME ON FILE | ADDRESS ON FILE | 10/29/2022 | Interest Payment | ZRX | 5,534.26518196999 | $ 1,451.90 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Collateral Posted | BTC | 12.00 | $ 245,898.36 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Collateral Returned | BTC | 225.00 | $ 4,610,594.25 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Collateral Returned | BTC | 243.00 | $ 4,979,441.79 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Collateral Returned | USDC | 3,147,538.88 | $ 3,147,538.88 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Collateral Returned | USDC | 646,794.62 | $ 646,794.62 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | SOL | 354.368336224 | $ 11,538.23 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | ZRX | 1,206.56841745551 | $ 307.48 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | YFI | 0.0364665192221779 | $ 296.14 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | ETH | 300.87352706208 | $ 473,156.72 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | UNI | 52.851248594343 | $ 367.74 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | ANKR | 12,855.4323511301 | $ 377.82 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | BNT | 5,665.67440388993 | $ 2,691.20 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | AAVE | 16.1237441880819 | $ 1,351.98 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | OXT | 47,299.4182813444 | $ 4,441.42 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | UMA | 111.693143966836 | $ 249.52 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | COMP | 45.878643843969 | $ 2,302.19 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | LPT | 113.189131791344 | $ 1,060.58 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | XTZ | 777.402231 | $ 1,107.80 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | MKR | 3.94794690090902 | $ 3,549.99 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | DOGE | 2,023,464.47090153 | $ 256,636.00 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | ZEC | 2,345.39847135 | $ 123,297.60 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | MANA | 3,026.68714021835 | $ 2,035.75 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | STORJ | 885.9259406 | $ 389.28 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | GUSD | 3,073,186.94 | $ 3,073,186.94 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Borrow Returned | USDC | 155,448.962315 | $ 155,448.96 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Collateral Returned | HNT | 3,723,919.0522 | $ 14,885,249.24 |
| NAME ON FILE | ADDRESS ON FILE | 10/31/2022 | Collateral Returned | BTC | 12.00 | $ 245,898.36 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | USDT | 305,753.424658 | $ 305,692.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.33972603 | $ 6,957.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | LTC | 34.07876712 | $ 1,878.08 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | USDC | 10,696.510631 | $ 10,696.51 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.11506878 | $ 2,356.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.1195895 | $ 2,449.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.1153998 | $ 2,363.33 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Collateral Returned | BTC | 130.00 | $ 2,662,333.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Collateral Returned | BTC | 175.00 | $ 3,583,910.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | GUSD | 3,693,437.53 | $ 3,693,437.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | USDC | 461,934.350003 | $ 461,934.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | ETH | 108.060047492249 | $ 170,555.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | FET | 9,575.78524112336 | $ 791.92 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | LINK | 948.041438711518 | $ 7,282.85 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | APE | 222.667368182312 | $ 1,002.89 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | DOGE | 173,119.81200647 | $ 24,603.79 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | MATIC | 19,126.4911041031 | $ 16,716.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | RLY | 969,139.096269048 | $ 13,955.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | REN | 2,146.42519181518 | $ 269.16 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | CRV | 379.32215531554 | $ 338.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | UMA | 0.41671245920984 | $ 0.92 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | MANA | 1,453.22708979615 | $ 944.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | INJ | 80,778.9299000593 | $ 202,310.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | SKL | 27,623.0149501162 | $ 1,011.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | OXT | 38.1942523818546 | $ 3.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | RBN | 10.8972121735701 | $ 3.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | BAT | 314.600439114498 | $ 93.04 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | KNC | 411.043652750931 | $ 369.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.714900099999999 | $ 14,640.79 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 2.09863014 | $ 42,978.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.09391096 | $ 1,923.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.09023973 | $ 1,848.06 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.06582323 | $ 1,348.03 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | ETH | 1.37167993 | $ 2,164.98 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | USDC | 43.68 | $ 43.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | USDC | 146,876.598441 | $ 146,876.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | ETH | 20.54794521 | $ 32,431.64 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.05732877 | $ 1,174.06 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | USDC | 5,382.53 | $ 5,382.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | SHIB | 40,342,465.7534246 | $ 518.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BCH | 29.89589041 | $ 3,437.73 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 2.9751506799999 | $ 60,929.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.11660682 | $ 2,388.05 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | ETH | 10.06337907 | $ 15,883.43 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | USDC | 17,835.616438 | $ 17,835.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.04246575 | $ 869.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | SOL | 2,131.01739188 | $ 68,618.76 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | LINK | 75.88764237 | $ 582.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | XLM | 82,395.4217027 | $ 9,056.41 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | SOL | 1,196.35572219 | $ 38,522.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Borrow Returned | ETH | 513.55105997 | $ 810,558.18 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | AAVE | 0.45611521 | $ 38.40 |

Debtor Name: Genesis Global Capital, LLC

Case Number:   23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|------|---------|------|---------------------|------|---------------|----------|
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 2.02327719 | $ 41,435.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | ETH | 9.15419808 | $ 14,448.44 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | USDC | 15,755.88359 | $ 15,755.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BCH | 74.78667972 | $ 8,599.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | COMP | 0.03470915999999999 | $ 1.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | LINK | 35.5390916 | $ 273.01 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | UNI | 8.00720802 | $ 56.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | SOL | 38.21491617 | $ 1,230.52 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | XLM | 140,440.233351 | $ 15,436.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.61150685 | $ 12,523.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | ETH | 4.75616438 | $ 7,506.84 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | USDT | 804,777.780822 | $ 804,616.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/1/2022 | Interest Payment | BTC | 0.18345205 | $ 3,757.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | LUNC | 250,000.00 | $ 41.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | LUNC | 50,000.00 | $ 8.29 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Collateral Returned | USDC | 7,000,000.00 | $ 7,000,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Collateral Returned | BTC | 20.80 | $ 419,129.98 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Collateral Returned | BTC | 16.10 | $ 324,422.73 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Collateral Returned | FIL | 2,400.00 | $ 12,547.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | GUSD | 5,420,710.11 | $ 5,420,710.11 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | USDC | 313,354.027971 | $ 313,354.03 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | AAVE | 101.2205044B1085 | $ 8,135.09 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | KNC | 613.969827091185 | $ 529.36 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | SOL | 1,169.212761848 | $ 36,035.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | CRV | 525.391286238802 | $ 455.04 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | OXT | 2,129.95304522315 | $ 202.77 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | COMP | 7.30977884439934 | $ 340.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | RBN | 234.489277606395 | $ 80.43 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | AMP | 812,856.837426885 | $ 3,885.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | AXS | 14.8293438737406 | $ 128.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | ANKR | 25,795.817179739 | $ 736.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | LTC | 1,203.56968529 | $ 73,345.54 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | BCH | 105.3802774 | $ 11,975.41 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | CHZ | 12,458.6852899577 | $ 2,992.58 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | STORJ | 2,437.66476755 | $ 1,082.32 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | LPT | 4.12223451228625 | $ 37.76 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | PAXG | 0.96192348063299S | $ 1,565.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Collateral Returned | BTC | 0.50 | $ 10,075.24 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | XLM | 43,417.6669156 | $ 4,671.52 |
| NAME ON FILE | ADDRESS ON FILE | 11/2/2022 | Borrow Returned | BCH | 43.93399954 | $ 4,992.66 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | BTC | 0.15659397 | $ 3,164.67 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | BTC | 0.94633854 | $ 19,124.94 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | GUSD | 3,376,027.95 | $ 3,376,027.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | BCH | 5,583.40822335 | $ 645,553.66 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | BTC | 102.56992155 | $ 2,072,877.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | APE | 16,238.6183959762 | $ 70,735.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | DAI | 306,492.485282441 | $ 306,461.84 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | FIL | 23,374.1237443503 | $ 135,242.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | LRC | 3,947.51799252822 | $ 1,087.15 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | LINK | 3,191.84206488529 | $ 24,637.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | CRV | 887.131964491583 | $ 799.39 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | BAL | 17.4761842977416 | $ 116.04 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | ZEC | 5.30952178 | $ 267.23 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | MANA | 8,900.12736948415 | $ 5,671.16 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | 1INCH | 6,933.16354216362 | $ 4,215.36 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | UNI | 56.7871614833791 | $ 392.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | ETH | 10,919.3346065194 | $ 16,715,208.22 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | KNC | 102.745153995574 | $ 89.86 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | DOGE | 370,568.43683365 | $ 45,450.22 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | GRT | 6,945.78576634924 | $ 602.89 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | XTZ | 513.365326 | $ 703.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | BAT | 13,708.770969018 | $ 4,439.59 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Loan Executed | BTC | 75.00 | $ 1,515,705.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | UNI | 11.04917623 | $ 76.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | BCH | 0.01750068 | $ 2.03 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | SOL | 113.87081457 | $ 3,514.05 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | ETH | 53.09965125 | $ 81,284.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | LINK | 190.22712231 | $ 1,468.36 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Borrow Returned | BTC | 3.49756285 | $ 70,683.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Interest Payment | USDC | 2,585.721267 | $ 2,585.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/3/2022 | Interest Payment | USDC | 360.798316 | $ 360.80 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00286631 | $ 60.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00144041 | $ 30.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00887793 | $ 187.78 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00539563 | $ 114.12 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00871664 | $ 184.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00264378 | $ 55.92 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00371366 | $ 78.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00206157 | $ 43.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00212494 | $ 44.94 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.0055613 | $ 117.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00048035 | $ 10.16 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00370554 | $ 78.38 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00276703 | $ 58.53 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|---|---|---|---|---|---|---|
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00333925 | $ 70.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00337302 | $ 71.34 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00589042 | $ 124.59 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00845695 | $ 178.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00027115 | $ 5.74 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.3197973328394 | $ 6,764.04 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.19406003 | $ 4,104.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 1.4299577 | $ 30,245.05 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.72091783 | $ 15,248.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.281325069 | $ 5,950.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.63728434 | $ 13,479.21 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00049512 | $ 10.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 1.2215366 | $ 25,836.73 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Interest Payment | GLMR | 13,589.04109589 | $ 7,215.78 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Interest Payment | GLMR | 14,947.94520548 | $ 7,937.36 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Interest Payment | FLOW | 3,160.91809878 | $ 5,850.86 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.02194746 | $ 464.21 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.01218199 | $ 257.66 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00401321 | $ 84.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.02145345 | $ 453.76 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00507186 | $ 107.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.02081431 | $ 440.24 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.01113605 | $ 235.54 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00236562 | $ 50.04 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.01080428 | $ 228.52 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.0045705 | $ 96.67 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00531028 | $ 112.32 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00144407 | $ 30.54 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00228368 | $ 48.30 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 1.05117137083989 | $ 22,233.34 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 2.36965136 | $ 50,120.52 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 4.70025937 | $ 99,415.23 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.924713337 | $ 19,558.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 4.0151814 | $ 84,925.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Interest Payment | BTC | 0.00325093 | $ 68.76 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | GUSD | 1,931,353.56 | $ 1,931,353.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | SOL | 1,836.219680782 | $ 61,954.05 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | LTC | 0.55842582 | $ 37.76 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | MKR | 2.06129433394601 | $ 1,885.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | REN | 294.34689329138 | $ 40.91 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | LINK | 2,910.24386096688 | $ 25,371.51 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | MANA | 2,831.31899345691 | $ 1,970.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | UNI | 107.800021744829 | $ 814.54 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | DAI | 8,159.54709684504 | $ 8,159.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BAT | 5,182.79452059678 | $ 1,756.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | KNC | 7.85258642181723 | $ 7.48 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | LPT | 33.1928418144009 | $ 353.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | CHZ | 5,978.27041563101 | $ 1,532.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | PAXG | 1.4385204005831 | $ 2,406.64 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | ANKR | 10,915.3894428148 | $ 349.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | COMP | 26.3791779944152 | $ 1,363.54 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | CRV | 23,398.9882600724 | $ 23,962.90 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | MATIC | 30,450.5105948224 | $ 35,611.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | INJ | 438.605257 | $ 1,189.06 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | TOKE | 389.101063247251 | $ 435.79 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 260.00 | $ 5,499,262.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | FLOW | 509,561.68182191 | $ 943,198.67 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Interest Payment | FLOW | 418.47386955 | $ 774.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Collateral Returned | BTC | 1.74081238 | $ 36,819.94 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.01903606 | $ 402.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.01137305 | $ 240.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00529256 | $ 111.94 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00747537 | $ 158.11 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00548246 | $ 115.96 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.01846892 | $ 390.64 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00493449 | $ 104.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00377375 | $ 79.82 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00742144 | $ 156.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00668785 | $ 141.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.01172229 | $ 247.94 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.01940438 | $ 410.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.01248015 | $ 263.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00366119 | $ 77.44 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00665543 | $ 140.77 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 1.47897802 | $ 31,281.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.652885324 | $ 13,809.18 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 2.8348818 | $ 59,960.61 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 3.31857472 | $ 70,191.21 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.74216985207939 | $ 15,697.64 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 1.67307049 | $ 35,387.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.00218808 | $ 46.28 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Interest Payment | BTC | 0.0026745 | $ 56.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 37.29512324 | $ 788,829.52 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 100.00 | $ 2,115,101.00 |

Debtor Name: Genesis Global Capital, LLC

Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|---|---|---|---|---|---|---|
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | ETH | 1,000.00 | $ 1,645,060.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | ETH | 165.00 | $ 271,434.90 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | SOL | 49.32373666 | $ 1,664.18 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | BTC | 0.11414365 | $ 2,414.21 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | SOL | 21.76137157 | $ 734.23 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | USDC | 3.267688 | $ 3.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | USDT | 20,000,000.00 | $ 20,000,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/4/2022 | Borrow Returned | USDC | 2,000,000.00 | $ 2,000,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/5/2022 | Borrow Returned | ETH | 2,000.00 | $ 3,254,500.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/6/2022 | Borrow Returned | BTC | 200.00 | $ 4,260,272.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/6/2022 | Borrow Returned | BTC | 60.00 | $ 1,254,429.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/6/2022 | Collateral Returned | BTC | 79.10 | $ 1,653,756.36 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Collateral Returned | BTC | 1,901.00 | $ 39,140,696.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | GUSD | 18,009,263.52 | $ 18,009,263.52 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | USDC | 1,187,045.220859 | $ 1,187,045.22 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | BTC | 117.393168 | $ 2,417,070.15 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | SKL | 159,901.264826585 | $ 6,348.08 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | FTM | 325,002.383957425 | $ 85,264.38 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | STORJ | 5,762.27022405 | $ 2,667.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | MKR | 5.75565426286355 | $ 4,772.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | ANKR | 269,812.765354088 | $ 7,832.66 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | ZRX | 4,939.23043138789 | $ 1,274.49 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | LPT | 95.4025346997556 | $ 1,046.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | LINK | 2,837.70382149461 | $ 25,400.29 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | APE | 18,739.0204812466 | $ 86,255.71 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | MANA | 10,386.8559288954 | $ 6,898.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | REN | 264,502.161374714 | $ 32,745.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | SOL | 4,336.85199675 | $ 128,500.92 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | USDC | 250,000.000152 | $ 250,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Collateral Returned | BTC | 77.08019549 | $ 1,587,045.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Loan Executed | SOL | 16,000.00 | $ 476,746.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Loan Executed | AAVE | 7,875.00 | $ 687,408.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Collateral Returned | WBTC | 94.70 | $ 1,949,828.49 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | UNI | 4.93495 | $ 34.58 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | SOL | 9.47687976 | $ 280.80 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | XLM | 164,508.4552698 | $ 18,017.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | LINK | 31.96978164 | $ 286.16 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | USDC | 1,100,301.458368 | $ 1,100,301.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | ETH | 1.74827397 | $ 2,741.17 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | BTC | 1.43221918 | $ 29,488.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Collateral Returned | DOT | 302,118.67722432 | $ 2,150,782.86 |
| NAME ON FILE | ADDRESS ON FILE | 11/7/2022 | Borrow Returned | BTC | 1,044.00 | $ 21,495,469.32 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 3,246.252081 | $ 3,246.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 2,853.107049 | $ 2,853.11 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 391,965.9198 | $ 391,965.92 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | USDC | 648.900933999999 | $ 648.90 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | FIL | 811.72172254 | $ 3,894.64 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | FIL | 276.08358902 | $ 1,324.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | FIL | 809.32339321 | $ 3,883.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | FIL | 269.21992897 | $ 1,291.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | FIL | 280.25179947 | $ 1,344.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | FIL | 273.98926015 | $ 1,314.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | FIL | 34,223.42798684 | $ 164,204.01 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | FIL | 63.76638667 | $ 305.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | SOL | 1,956,181.53364632 | $ 47,554,773.08 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | FTT | 2,797,985.45047566 | $ 15,226,636.82 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 3,000,000.00 | $ 3,000,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 32,829,255.148544 | $ 32,829,255.15 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 4,033.91443427 | $ 74,825,764.61 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 30,833.28447531 | $ 41,157,809.78 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | BTC | 0.77362743 | $ 14,350.15 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | USDC | 37,776.129212 | $ 37,776.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | ETH | 5.91323264 | $ 7,893.28 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 300,445.497134 | $ 300,445.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 167,907.214386 | $ 167,907.21 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Loan Executed | USDC | 10,000,000.00 | $ 10,000,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Loan Executed | USDT | 10,000,000.00 | $ 9,999,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 7,486.191132 | $ 7,486.19 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 698,334.498635 | $ 698,334.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | USDC | 1,082.90297599999 | $ 1,082.90 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 85,325.157736 | $ 85,325.16 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 23,013.675616 | $ 23,013.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 9,999,990.00 | $ 9,999,990.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | USDC | 7,688.879531 | $ 7,688.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Posted | BTC | 51.49 | $ 955,096.76 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 200.00 | $ 3,709,834.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 2,000.00 | $ 2,669,700.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | USDC | 780,000.00 | $ 780,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Loan Executed | BTC | 1,000.00 | $ 18,549,170.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 724.00 | $ 966,431.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 30.23860204 | $ 735.10 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 10.05254551 | $ 244.38 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 17.53818443 | $ 426.35 |

Debtor Name: Genesis Global Capital, LLC

Case Number:   23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|------|---------|------|--------------------|------|--------------|----------|
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 4.2633305 | $ 103.64 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 2,362.95 | $ 57,443.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 2,362.95 | $ 57,443.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 2,362.949 | $ 57,443.29 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | SOL | 6.85706736999999 | $ 166.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 10,032,712.254269 | $ 10,032,712.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | GUSD | 43,961,989.12 | $ 43,961,989.12 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 534.32765799 | $ 9,911,334.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | LTC | 172.72239365 | $ 9,981.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BCH | 605.45549638 | $ 62,440.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ZEC | 112.22695486 | $ 4,724.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 6,261.144459475 | $ 152,208.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ZRX | 54.2235706540167 | $ 11.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | 1INCH | 13,144.4830399316 | $ 7,295.19 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BNT | 30,653.2053941632 | $ 13,183.94 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | MATIC | 306,980.341355844 | $ 320,548.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BAT | 141,744.766229452 | $ 39,412.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | OXT | 2,490.72849662239 | $ 227.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | PAXG | 0.93645589311037 | $ 1,588.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 5,164.81775171694 | $ 6,894,256.98 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SNX | 11,232.8724374736 | $ 23,802.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | YFI | 3.2361828989611 | $ 21,718.28 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ANKR | 231,861.716151798 | $ 5,724.67 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | FIL | 75,136.993132189 | $ 360,507.29 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | INJ | 715.758059696838 | $ 1,421.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | MANA | 60,199.239646818 | $ 34,090.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | AAVE | 1,105.2949801368 | $ 79,868.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | LINK | 14,452.4121416965 | $ 111,428.10 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | LPT | 73.5129990293433 | $ 632.21 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | REN | 27,761.6071593283 | $ 2,884.43 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | UMA | 1,263.17525347888 | $ 2,494.77 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | XTZ | 4,055.836256 | $ 4,757.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | APE | 31,674.31041198 | $ 124,289.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BAL | 233.120196630576 | $ 1,333.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | CHZ | 3,583.1060106607 | $ 764.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | CRV | 81,202.5428841915 | $ 62,501.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 4,200.00 | $ 5,606,370.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 32.312251 | $ 32.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 34.403985 | $ 34.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 38.460994 | $ 38.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 33.108133 | $ 33.11 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 3,859.754627 | $ 3,859.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 3,859.754627 | $ 3,859.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | USDC | 12.839297 | $ 12.84 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.3258008 | $ 6,043.33 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.34004938 | $ 6,307.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.32743631 | $ 6,073.67 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.3341827 | $ 6,198.81 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.33580522 | $ 6,228.91 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.33918515 | $ 6,291.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.34232618 | $ 6,349.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.33749095 | $ 6,260.18 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.32991852 | $ 6,119.71 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.34175642 | $ 6,339.30 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.16027397 | $ 2,972.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.3026115 | $ 5,613.19 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.33333338 | $ 6,183.06 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 0.32178724 | $ 5,968.89 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 130.00 | $ 2,411,392.10 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | BTC | 0.07736743 | $ 1,435.10 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 2,202,181.72 | $ 2,202,181.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDT | 10,718.391629 | $ 10,717.32 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | BTC | 0.01643836 | $ 304.92 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | BTC | 16.3220106 | $ 302,759.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 225.00 | $ 300,341.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 2.95857988 | $ 54,879.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 2.00 | $ 37,098.34 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 317.09791984 | $ 7,708.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 1,885.72506129 | $ 45,841.98 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 25.00 | $ 33,371.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 1.00 | $ 18,549.17 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 41.16920543 | $ 54,954.71 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 197.69257549 | $ 4,805.91 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 2.00 | $ 37,098.34 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 599.48444338 | $ 14,573.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | WBTC | 80.50 | $ 1,493,208.19 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | BTC | 47.17 | $ 874,964.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | WBTC | 97.25 | $ 1,803,906.78 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | WBTC | 48.25 | $ 894,997.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 2,014,399.88 | $ 2,014,399.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 1,007,200.00 | $ 1,007,200.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 2,761,404.561828 | $ 2,761,404.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.55290171 | $ 2,072.89 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.47807156 | $ 1,973.00 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|------|---------|------|--------------------|------|--------------|----------|
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.45881427 | $ 1,947.30 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.4865073 | $ 1,984.26 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.45313765 | $ 1,939.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.51867314 | $ 2,027.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.49549091 | $ 1,996.26 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.53017769 | $ 2,042.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.51314038 | $ 2,019.82 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.36933075 | $ 1,827.85 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 3.82983075 | $ 5,112.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.53311479 | $ 2,046.48 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.49870219 | $ 2,000.54 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.53891081 | $ 2,054.22 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.47250468 | $ 1,965.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.52441456 | $ 2,034.86 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.51024154 | $ 2,015.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 775.7835423 | $ 1,035,554.66 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | ETH | 0.348163 | $ 464.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 2,000.00 | $ 2,669,700.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | LTC | 29,462.4898602 | $ 1,702,637.29 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | BCH | 4,543.1549895 | $ 468,535.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | SOL | 0.45666178 | $ 11.10 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 103,926.563835 | $ 103,926.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Collateral Returned | BTC | 383.00 | $ 7,104,332.11 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 248,168.71 | $ 248,168.71 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 1,495.587525 | $ 1,495.59 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 475.939992 | $ 475.94 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 1,478.243536 | $ 1,478.24 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 1,439.063223 | $ 1,439.06 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | USDC | 339.721085999999 | $ 339.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDT | 367,588.754 | $ 367,552.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDT | 1,895,341.918237 | $ 1,895,152.38 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 5,152.46 | $ 6,877,761.23 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 1.11872523 | $ 20,751.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDT | 290,234.678837 | $ 290,205.66 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 14.20517477 | $ 263,494.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 1.73614412 | $ 2,317.49 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 314.25584261 | $ 5,829,185.05 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | BTC | 10.00 | $ 185,491.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | USDC | 8,301,980.395824 | $ 8,301,980.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.57350955 | $ 765.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 140.03404898323 | $ 186,924.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.44396383 | $ 592.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.42465273 | $ 566.85 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.66333661 | $ 885.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.66919457 | $ 893.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.42841001 | $ 571.86 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.68741289 | $ 917.59 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.52715912 | $ 703.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.6732451 | $ 898.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.69768791 | $ 931.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.39181451 | $ 523.01 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.7158673 | $ 955.58 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.44007015 | $ 587.43 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.43750729 | $ 584.01 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.68945399 | $ 920.32 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.42217966 | $ 563.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.4413783 | $ 589.17 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Borrow Returned | ETH | 0.43495936 | $ 580.61 |
| NAME ON FILE | ADDRESS ON FILE | 11/8/2022 | Interest Payment | ETH | 0.10054789 | $ 134.22 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.49332308 | $ 7,834.24 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 3.29554236 | $ 52,334.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 26.76236161 | $ 29,416.12 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 3,692.46938707 | $ 4,058,614.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 105.00 | $ 1,667,456.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 19,895.03003202 | $ 21,867,821.21 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 23,000.00 | $ 25,280,680.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 62.91089561 | $ 999,058.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Loan Executed | BTC | 1,000.00 | $ 15,880,540.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Loan Executed | BTC | 1,000.00 | $ 15,880,540.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | USDC | 187,000.00 | $ 187,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 0.32369178 | $ 4.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.03581979 | $ 139.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 2,362.95 | $ 32,868.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.43393391 | $ 6,891.10 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.2169863 | $ 3,445.86 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.42145185 | $ 6,692.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.4370215 | $ 6,940.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 3.560608 | $ 49.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 12.962299 | $ 180.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 30.497178 | $ 424.22 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 64.79108 | $ 901.24 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 52.14808 | $ 725.38 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1.00 | $ 13.91 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 77.23605674 | $ 1,074.35 |

Debtor Name: Genesis Global Capital, LLC

Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|------|---------|------|---------------------|------|---------------|----------|
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 73.04158044 | $ 1,016.01 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 46.163886 | $ 642.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 60.823807 | $ 846.06 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 59.111713 | $ 822.24 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 79.26995489 | $ 1,102.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 62.627889 | $ 871.15 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.47 | $ 16,434.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.47 | $ 16,434.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 2,362.949 | $ 32,868.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 2,362.949 | $ 32,868.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 86.93507405 | $ 1,209.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 2,362.949 | $ 32,868.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 5,000,000.00 | $ 5,000,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 300,000.00 | $ 300,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 350,000.00 | $ 350,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 200.00 | $ 3,176,108.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ADA | 29,000,000.00 | $ 9,207,500.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ADA | 50,000,000.00 | $ 15,875,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.672091 | $ 148.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.81313 | $ 150.41 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.92251558 | $ 151.93 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.430029 | $ 145.08 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.60608602 | $ 147.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.99565384 | $ 152.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.904239 | $ 151.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 9.672054 | $ 134.54 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.741205 | $ 149.41 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 5.439771 | $ 75.67 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.88553459 | $ 151.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.259133 | $ 142.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.49987 | $ 146.05 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 10.635958 | $ 147.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,566.2561 | $ 21,786.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,537.8862 | $ 21,392.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Posted | BTC | 57.00 | $ 905,190.78 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Posted | BTC | 51.90 | $ 824,200.03 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 0.22985805 | $ 252.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 0.42620779 | $ 468.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.38831586 | $ 6,166.67 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.21368873 | $ 3,393.49 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 30.89423724 | $ 490,617.17 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 120.00 | $ 1,905,664.80 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 60.00 | $ 65,949.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 120.00 | $ 131,899.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | ETH | 0.05939377 | $ 65.28 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | BTC | 0.04980698 | $ 790.96 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | USDC | 17,460,000.00 | $ 17,460,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 600.00 | $ 659,496.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 581.00 | $ 638,611.96 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 2.73501759 | $ 43,433.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 2.78418891 | $ 44,214.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 1.06061159 | $ 1,165.78 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 3.18133144 | $ 50,521.26 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 30.00 | $ 476,416.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 180.00 | $ 2,858,497.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 600.00 | $ 659,496.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 348.26189122 | $ 382,795.54 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 131.38930962 | $ 2,086,533.19 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 150.00 | $ 2,382,081.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | BTC | 0.70696748 | $ 11,227.03 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | ETH | 0.31210602 | $ 343.05 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 33,442.98074 | $ 33,442.98 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 24,579.044473 | $ 24,579.04 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 426.461113 | $ 426.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 428.272112 | $ 428.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 416.216906 | $ 416.22 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 411.0152 | $ 411.02 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 431.858298 | $ 431.86 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 13.69863 | $ 13.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 100,000.00 | $ 100,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | GUSD | 68,201,743.26 | $ 68,201,743.26 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 9,756,027.977577 | $ 9,756,027.98 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BCH | 534.39131166 | $ 47,587.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | LTC | 1,820.74819135 | $ 91,965.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | DOGE | 188,586.07855502 | $ 14,011.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | STORJ | 39,851.05534457 | $ 11,238.00 |

Debtor Name: Genesis Global Capital, LLC

Case Number:   23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|------|---------|------|---------------------|------|---------------|----------|
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | XTZ | 66,201.511881 | $ 67,922.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ZEC | 283.31515511 | $ 9,887.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 9,590.906424262 | $ 133,409.51 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 2,097.06583307 | $ 33,302,537.84 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ANKR | 185,378.64472772 | $ 3,629.71 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ZRX | 61,339.61652556007 | $ 10,054.79 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | FIL | 23,459.348064892 | $ 97,145.16 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | APE | 205,084.517122676 | $ 591,053.58 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | MKR | 2.1040773607233 | $ 1,408.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | MATIC | 497,264.874961516 | $ 404,823.33 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ALCX | 3,452.83278520215 | $ 57,006.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | OXT | 14,840.7374906396 | $ 1,173.90 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 18,696.1213329889 | $ 20,550,028.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SNX | 11,609.4934956052 | $ 19,852.23 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | MANA | 270,643.75052758 | $ 123,765.39 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | COMP | 33.8475037643304 | $ 1,165.03 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | REN | 122,215.356409754 | $ 9,691.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | LRC | 28,207.3810072073 | $ 6,036.38 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | YFI | 5.70482763027226 | $ 31,284.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | UMA | 431.8162816358 | $ 658.09 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | PAXG | 31.3436707002978 | $ 50,836.30 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | CRV | 19,952.3064538713 | $ 11,021.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | LINK | 15,172.994222081 | $ 94,315.33 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BAT | 533.886128729651 | $ 122.91 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | GRT | 455,242.731063937 | $ 26,404.08 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | CHZ | 9,491.54783918423 | $ 1,461.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | DAI | 277,161.08154002 | $ 277,133.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BAL | 242.574935587306 | $ 1,149.81 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | INJ | 304.648551234727 | $ 444.12 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | 1INCH | 916,475.31846298 | $ 483,898.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | UNI | 4,859.83782251448 | $ 23,696.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | AAVE | 223.421497844906 | $ 12,922.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | AMP | 2,290,567.14757989 | $ 8,154.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | KNC | 211.875550468858 | $ 107.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ADA | 1,849.315068 | $ 587.16 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ADA | 11,531.767248 | $ 3,661.34 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ADA | 7,623.632238 | $ 2,420.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ADA | 11,590.53187 | $ 3,679.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ADA | 9,958.734038 | $ 3,161.90 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ADA | 11,105.010321 | $ 3,525.84 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ADA | 1,450,000.00 | $ 460,375.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | ADA | 1,977.414563 | $ 627.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | USDC | 955,340.39 | $ 955,340.39 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | USDC | 30,525.88 | $ 30,525.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | USDC | 291,223.73 | $ 291,223.73 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 5,824.156884 | $ 5,824.16 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 4,854.132615 | $ 4,854.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | USDC | 1,423,013.26591 | $ 1,423,013.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | USDC | 1,256.935062 | $ 1,256.94 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDT | 675,904.886633 | $ 674,891.03 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 5,000.00 | $ 69,550.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 5,000.00 | $ 69,550.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 8,420.358958 | $ 8,420.36 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BCH | 390.00 | $ 34,729.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BCH | 25.70924001 | $ 2,289.41 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SUSHI | 29,609.27643424 | $ 30,085.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ZEC | 243.08806066 | $ 8,483.77 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ZEC | 1,995.00 | $ 69,625.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | BTC | 375.71627584 | $ 5,966,577.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | BTC | 1,117.28332416 | $ 17,743,062.52 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,103.15095616 | $ 15,344.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,246.48823573 | $ 17,338.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 886.909069 | $ 12,336.91 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 912.597291 | $ 12,694.23 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,354.80969762 | $ 18,845.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 972.101514 | $ 13,521.93 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 782.437298 | $ 10,883.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,444.98721295 | $ 20,099.77 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 692.696542 | $ 9,635.41 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 481.869141 | $ 6,702.80 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 0.15753499 | $ 173.16 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 939.660528 | $ 13,070.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 261.36387732 | $ 287,280.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 17,722.1172 | $ 246,514.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 5,675.3053359 | $ 78,943.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 12,046.8146641 | $ 167,571.19 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,491.4872 | $ 20,746.59 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 17,722.1172 | $ 246,514.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 17,722.12 | $ 246,514.69 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 16,230.63 | $ 225,768.06 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 11,200.86782279 | $ 155,804.07 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 35,444.2344 | $ 493,029.30 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 17,722.1172 | $ 246,514.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 35,444.2344 | $ 493,029.30 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
SOFA Question 3: Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|---|---|---|---|---|---|---|
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | ETH | 779.92 | $ 857,256.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | WBTC | 127.90 | $ 2,031,121.07 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 30.00 | $ 476,416.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | BTC | 0.01479452 | $ 234.94 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | ETH | 5,000.00 | $ 5,495,800.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | BTC | 0.01128453 | $ 179.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | LINK | 8,822.0830703 | $ 54,838.07 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 80.64656299 | $ 1,280,710.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | UNI | 23.64789986 | $ 115.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | XLM | 410,408.7379909 | $ 34,720.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BCH | 114.37497772 | $ 10,185.09 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | ETH | 925.56819206 | $ 1,017,347.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 2,090,497.577983 | $ 2,090,497.58 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | USDC | 3,491,790.373931 | $ 3,491,790.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | BTC | 3.47 | $ 55,105.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 2,362.949 | $ 32,868.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.47 | $ 16,434.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1.00 | $ 13.91 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 60.840518 | $ 846.29 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 46.180462 | $ 642.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 79.28586402 | $ 1,102.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 87.95158105 | $ 1,223.41 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 5.826449 | $ 81.05 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 73.05788113 | $ 1,016.24 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 64.80679 | $ 901.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 77.25242666 | $ 1,074.58 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 62.482894 | $ 869.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 12.97161 | $ 180.44 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 52.163116 | $ 725.59 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 59.127952 | $ 822.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 32.125299 | $ 446.86 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 2,362.949 | $ 32,868.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.4745 | $ 16,434.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 1,181.47 | $ 16,434.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 2,362.949 | $ 32,868.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 2,361.949 | $ 32,854.71 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 350.00 | $ 5,558,189.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | BTC | 4,249.9996 | $ 67,492,288.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Collateral Returned | BTC | 240.00 | $ 3,811,329.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.33458075 | $ 5,313.32 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 4,725.8979 | $ 65,737.24 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 4,725.8979 | $ 65,737.24 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 24,320.926227 | $ 338,304.08 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.28581466 | $ 4,538.89 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 18.64690902 | $ 296,122.98 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 101.345375 | $ 1,409.71 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.00678191 | $ 107.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 145.70629998 | $ 2,026.77 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 24.721629 | $ 343.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.01592635 | $ 252.92 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 127.76917978 | $ 1,777.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 140.42899132 | $ 1,953.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | SOL | 144.49634308 | $ 2,009.94 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.01659805 | $ 263.59 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.01665413 | $ 264.48 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.01607668 | $ 255.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.0153318 | $ 243.48 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | BTC | 0.00451462 | $ 71.69 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 17.94847848 | $ 285,031.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.02557044 | $ 406.07 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03029662 | $ 481.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03135796 | $ 497.98 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03125341 | $ 496.32 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03099271 | $ 492.18 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.0296939 | $ 471.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.02795055 | $ 443.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03084036 | $ 489.76 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03063172 | $ 486.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03120041 | $ 495.48 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.02954498 | $ 469.19 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03057983 | $ 485.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.02979653 | $ 473.18 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03172571 | $ 503.82 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03109639 | $ 493.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03004389 | $ 477.11 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.03089275 | $ 490.59 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Borrow Returned | BTC | 0.0301444 | $ 478.71 |
| NAME ON FILE | ADDRESS ON FILE | 11/9/2022 | Interest Payment | BTC | 0.00810613 | $ 128.73 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|------|---------|------|---------------------|------|---------------|----------|
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 20.00 | $ 350,946.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 7.50 | $ 131,604.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 2.50 | $ 43,868.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 25.00 | $ 438,682.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDC | 10,000,000.00 | $ 10,000,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 46,447.848857 | $ 46,336.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 41,392.91251 | $ 41,293.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 47,051.39139 | $ 46,938.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 38,757.446049 | $ 38,664.43 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 45,245.397585 | $ 45,136.81 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 17,835.616438 | $ 17,792.81 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 47,361.092672 | $ 47,247.43 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 45,922.670393 | $ 45,812.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 2,000,000.00 | $ 1,995,200.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 1,000,000.00 | $ 997,600.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 3,000,000.00 | $ 2,992,800.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Collateral Posted | ETH | 38,000.00 | $ 49,230,520.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Collateral Posted | LINK | 1,500,000.00 | $ 10,785,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Collateral Posted | DOT | 2,000,000.00 | $ 11,900,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Interest Payment | USDC | 17,044.474663 | $ 17,044.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Interest Payment | SOL | 2.84722812 | $ 50.17 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDC | 100,972.67 | $ 100,972.67 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Collateral Returned | ETH | 850.00 | $ 1,101,209.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Collateral Returned | DOT | 1,000,000.00 | $ 5,950,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Collateral Returned | BTC | 136.09981874 | $ 2,388,184.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Collateral Returned | SOL | 250,351.53012521 | $ 4,411,193.96 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDC | 7,244,492.596916 | $ 7,244,492.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | GUSD | 38,761,005.65 | $ 38,761,005.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | DOGE | 2,119,452.91253917 | $ 189,733.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BCH | 465.36623587 | $ 47,639.54 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | XTZ | 2,095.764202 | $ 2,387.08 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | LTC | 251.59975295 | $ 15,173.98 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ZEC | 253.83960634 | $ 9,955.59 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 719.71524963 | $ 12,629,059.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | YFI | 0.573585276417663 | $ 3,822.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | REN | 88,238.9178427515 | $ 8,267.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | MANA | 27,625.4183977851 | $ 14,627.66 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | FTM | 158,238.613331935 | $ 32,929.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | AXS | 1,009.39462923358 | $ 7,408.96 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | CHZ | 11,275.3776081383 | $ 2,416.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | GRT | 178,663.731635483 | $ 12,363.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | SUSHI | 1,470.48470395281 | $ 1,818.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 4,150.590797 0274 | $ 5,377,256.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | MKR | 81.6119668753467 | $ 71,831.59 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | MATIC | 388,937.679321014 | $ 436,115.82 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | SNX | 1,290.95278374314 | $ 2,509.61 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | AAVE | 376.916906308044 | $ 25,573.81 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ANKR | 128,028.632045704 | $ 2,943.38 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BAT | 129,105.663724247 | $ 34,640.34 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | FIL | 78,959.6057832258 | $ 364,635.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | LINK | 46,360.0034768662 | $ 333,328.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | OXT | 28,120.9025489752 | $ 2,449.33 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | APE | 20,290.6169067623 | $ 71,341.81 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | DAI | 409,110.834472701 | $ 409,029.01 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | UNI | 13,652.5799840519 | $ 78,570.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BNT | 28,298.2652252463 | $ 11,214.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | SOL | 5,360.696375787 | $ 94,455.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | FET | 1,148,707.78173528 | $ 79,260.84 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ZRX | 47,717.0414617488 | $ 9,256.15 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | PAXG | 23.0747790005469 | $ 40,214.89 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | LPT | 261.122117245855 | $ 2,096.81 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | 1INCH | 3,813.35875036057 | $ 2,162.17 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BAL | 53.3873064928393 | $ 295.23 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | CRV | 3,241.28533522704 | $ 2,222.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDC | 46,110.115957 | $ 46,110.12 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDC | 46,812.347629 | $ 46,812.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 266,258.740866 | $ 265,619.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDT | 267,207.43902 | $ 266,566.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 5,000.00 | $ 6,477,700.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | MATIC | 1,000,000.00 | $ 1,121,300.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Interest Payment | MATIC | 109.5890411 | $ 122.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 0.40909544 | $ 530.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.01625379 | $ 285.21 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 0.37853761 | $ 490.41 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 0.39707591 | $ 514.43 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.016377 | $ 287.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 0.01569079 | $ 275.33 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 0.38332185 | $ 496.61 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.01576956 | $ 276.71 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 0.39016141 | $ 505.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 0.39408844 | $ 510.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.0158891 | $ 278.81 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 0.39212001 | $ 508.01 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.01645921 | $ 288.81 |

Debtor Name: Genesis Global Capital, LLC

Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|---|---|---|---|---|---|---|
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 0.35159471 | $ 455.51 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.0161726 | $ 283.79 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 0.38043786 | $ 492.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.01457397 | $ 255.73 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.01633538 | $ 286.64 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.01643969 | $ 288.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 0.39509256 | $ 511.86 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 152.3671793 | $ 197,397.78 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 6.31629751 | $ 110,833.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Interest Payment | ETH | 0.11557383 | $ 149.73 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Interest Payment | BTC | 0.0047906499999999 | $ 84.06 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.03715401 | $ 651.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.06428204 | $ 1,127.98 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.06230658 | $ 1,093.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.01663118 | $ 291.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 0.0171997 | $ 301.81 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 20.07086884 | $ 352,189.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | SOL | 500,000.00 | $ 8,810,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 100.00 | $ 1,754,730.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDC | 31,522.27 | $ 31,522.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | USDC | 200,749.718356 | $ 200,749.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | BTC | 1.54641913 | $ 27,135.48 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | SOL | 153.54116039 | $ 2,705.40 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | ETH | 26.70301435 | $ 34,594.82 |
| NAME ON FILE | ADDRESS ON FILE | 11/10/2022 | Borrow Returned | SOL | 561.36734695 | $ 9,891.29 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Collateral Returned | ETH | 13,264.71167216 | $ 17,046,480.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Collateral Returned | SOL | 1,000,000.00 | $ 16,320,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Collateral Returned | Punk4844 | 1.00 | $ 77,106.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 3.838803 | $ 62.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 3.870948 | $ 63.17 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 1.507852 | $ 24.61 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 3.983065 | $ 65.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 4.03347335 | $ 65.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 3.901688 | $ 63.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 3.5541 | $ 58.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 3.918257 | $ 63.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 4.06724811 | $ 66.38 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 3.91993722 | $ 63.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 3.949989 | $ 64.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.28244124 | $ 362.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 4.01641733 | $ 65.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 917.27679832 | $ 14,969.96 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 449,402.00 | $ 449,402.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 1,922,784.633608 | $ 1,922,784.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 1,505,170.00 | $ 1,505,170.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 1,097,600.00 | $ 1,097,600.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 84,324.86099331 | $ 1,376,181.73 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | APE | 4,256.75954031 | $ 13,638.66 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | APE | 390.4109589 | $ 1,250.88 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | COMP | 60.34570013 | $ 2,403.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | UNI | 870.97488129 | $ 5,297.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CRV | 8,971.34902271 | $ 5,990.17 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CRV | 8,963.21540341 | $ 5,984.74 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | YFI | 0.46233877 | $ 2,968.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | UNI | 489.04109589 | $ 2,974.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CRV | 4,684.93150685 | $ 3,128.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CRV | 9,187.85708819 | $ 6,134.73 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | COMP | 59.64588478 | $ 2,375.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | YFI | 0.53497476 | $ 3,434.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | APE | 4,439.83013391 | $ 14,225.22 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | COMP | 58.06499209 | $ 2,312.73 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CRV | 9,334.30889227 | $ 6,232.52 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | APE | 4,482.77971259 | $ 14,362.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | YFI | 0.54174527 | $ 3,477.99 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | YFI | 0.5221239 | $ 3,352.02 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CRV | 8,751.97070127 | $ 5,843.69 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CRV | 9,114.31827363 | $ 6,085.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | UNI | 905.18550198 | $ 5,505.34 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | UNI | 894.68821172 | $ 5,441.49 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | COMP | 32.60273973 | $ 1,298.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | YFI | 0.53724657 | $ 3,449.11 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | YFI | 0.51559861 | $ 3,310.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | APE | 4,568.51692786 | $ 14,637.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | APE | 4,380.14010248 | $ 14,033.97 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CRV | 7,220.14261587 | $ 4,820.89 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | APE | 4,356.51096453 | $ 13,958.26 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | UNI | 150,000.00 | $ 912,300.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | APE | 99,999.00 | $ 320,396.80 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | YFI | 125.00 | $ 802,497.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | COMP | 10,000.00 | $ 398,300.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CRV | 899,990.00 | $ 600,923.32 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CRV | 200,000.00 | $ 133,540.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | APE | 100,000.00 | $ 320,400.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | APE | 250,000.00 | $ 801,000.00 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|---|---|---|---|---|---|---|
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Collateral Returned | USDT | 5,000,000.00 | $ 4,990,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Loan Executed | BTC | 175.00 | $ 2,975,913.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,291.14451642 | $ 109.63 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 18.02821746 | $ 1,105.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 25.73081599 | $ 552.96 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 19.57121994 | $ 1,199.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,278.32289436 | $ 108.54 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,157.5579949 | $ 98.29 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 863.01369864 | $ 73.28 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 20.29008249 | $ 1,243.78 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 25.39021791 | $ 545.64 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,246.36827825 | $ 105.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 26.60533083 | $ 571.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 19.44104078 | $ 1,191.74 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 24.89588834 | $ 535.01 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 19.49163358 | $ 1,194.84 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 22.79321838 | $ 489.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,286.27520814 | $ 109.22 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 25.0699786 | $ 538.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,243.24968591 | $ 105.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 20.35901318 | $ 1,248.01 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 20.49533918 | $ 1,256.36 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 19.12250195 | $ 1,172.21 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 25.06504396 | $ 538.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,279.9514427 | $ 108.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 26.07598303 | $ 560.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 20.15512177 | $ 1,235.51 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 22.11259828 | $ 475.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 20.32398106 | $ 1,245.86 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 24.73812801 | $ 531.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 19.8922331 | $ 1,219.39 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,283.05676294 | $ 108.94 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 20.02105874 | $ 1,227.29 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,294.3832491 | $ 109.91 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,251.08651534 | $ 106.23 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 18.80236316 | $ 1,152.58 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,316.16794897 | $ 111.76 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,289.50172655 | $ 109.49 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,235.56337464 | $ 104.91 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 18.99110356 | $ 1,164.15 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 19.76920454 | $ 1,211.85 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 25.57890431 | $ 549.69 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 26.25315683 | $ 564.18 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 19.55777619 | $ 1,198.89 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 19.82488281 | $ 1,215.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 1,087.27033988 | $ 23,365.44 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETC | 2,554.72966012 | $ 54,901.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 6.26082192 | $ 383.79 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 5,713.00 | $ 350,206.90 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 1,000,000.00001024 | $ 84,910.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 23,550,507.377239 | $ 23,550,507.38 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | GUSD | 26,449,492.62 | $ 26,449,492.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ZEC | 656.38478728 | $ 25,841.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BCH | 4,596.59734274 | $ 472,668.10 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | DOGE | 7,316,219.72638084 | $ 621,220.22 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LTC | 5,702.69830928 | $ 349,575.41 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 1,000.00 | $ 17,005,220.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | STORJ | 68,641.8564002 | $ 21,924.21 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | XTZ | 14,812.14423 | $ 15,774.93 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 20,056.778144865 | $ 327,326.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | UNI | 45,246.8989126678 | $ 275,191.64 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | TOKE | 313.55419258 | $ 351.18 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | AMP | 10,497,454.5169313 | $ 40,835.10 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | YFI | 17.61187024349 | $ 113,067.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | COMP | 883.589673234615 | $ 35,193.38 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SUSHI | 22,812.645117337 | $ 28,623.03 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SKL | 83,012.7258638268 | $ 2,357.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | RBN | 6,386.494023 | $ 1,264.01 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | UMA | 3,439.58805415961 | $ 5,964.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ANKR | 410,356.879955312 | $ 8,912.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | RBN | 2,163.8065464288 | $ 428.26 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LRC | 6,886.82433964445 | $ 1,807.79 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | KNC | 7,760.52099075126 | $ 4,839.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ZRX | 61,198.4610559815 | $ 11,382.24 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | AAVE | 1,363.69346703566 | $ 87,030.92 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | AXS | 5,585.73738114376 | $ 38,876.73 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LRC | 158,020.400447304 | $ 41,480.36 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | REN | 331,436.98755289 | $ 26,713.82 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BNT | 31,473.0154669254 | $ 12,151.73 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | TOKE | 6,861.74872960767 | $ 7,685.16 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SNX | 14,420.1148914259 | $ 26,864.67 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | TOKE | 1,560.86719941854 | $ 1,748.17 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | RLY | 235,946.278276583 | $ 2,713.38 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CRV | 281,577.73329909 | $ 188,009.45 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|---|---|---|---|---|---|---|
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | RBN | 6,543.448464 | $ 1,295.08 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | FTM | 530,182.467740486 | $ 104,713.26 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | RBN | 21,198.2152297004 | $ 4,195.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BAL | 3,092.38654806323 | $ 17,162.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 30,000.00 | $ 38,553,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | 1INCH | 51,716.6202053805 | $ 28,857.87 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | RBN | 9,216.840982 | $ 1,824.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | GRT | 478,651.424047162 | $ 31,686.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BAT | 366,604.448289361 | $ 93,539.12 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ALCX | 250.05108390917 | $ 4,518.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | INJ | 14,823.8337152566 | $ 25,949.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | OXT | 177,929.538385556 | $ 15,266.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LRC | 0.00000000025115103 | $ 0.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | PAXG | 67.523118542813 | $ 119,950.77 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | FET | 231,883.020801624 | $ 14,956.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SKL | 298,664.127563202 | $ 8,482.06 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | MANA | 212,613.278445064 | $ 105,371.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | CHZ | 24,845.6518381579 | $ 5,630.02 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LINK | 134,136.654949239 | $ 941,639.32 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | LPT | 865.215641209843 | $ 6,627.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | MKR | 77.7096939486284 | $ 60,551.39 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 2,274.312496 | $ 2,274.31 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 491,197.669234 | $ 491,197.67 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 14.22121284 | $ 18,275.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 8,000.00 | $ 10,280,800.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 3.65017101 | $ 4,690.83 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 2,467.1607088 | $ 3,170,548.23 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.48655116 | $ 625.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 328.87254 | $ 422,634.10 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 1.45965347 | $ 1,875.80 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 986.61762 | $ 1,267,902.30 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 33.97600699 | $ 43,662.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 1.01448888 | $ 17,251.61 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 100.00 | $ 1,700,522.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 100.00 | $ 1,700,522.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 537.14739882 | $ 9,134,309.69 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 100.00 | $ 1,700,522.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 15,197.46342913 | $ 19,530,260.25 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 4,200.00 | $ 5,397,420.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 568.56 | $ 730,656.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.28213224 | $ 4,797.72 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 171.63044181 | $ 2,918,613.42 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.02985609 | $ 38.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.00224574 | $ 38.19 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.02686841 | $ 34.53 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.02892982 | $ 37.18 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.57344314 | $ 9.36 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.02978139 | $ 38.27 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.59328847 | $ 9.68 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.56985 | $ 9.30 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.586674 | $ 9.57 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.00223186 | $ 37.95 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.00224012 | $ 38.09 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.02993099 | $ 38.46 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.00225424 | $ 38.33 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.00217062 | $ 36.91 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.151157 | $ 2.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.00225137 | $ 38.29 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.00218431 | $ 37.14 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.00765465 | $ 9.84 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.02967151 | $ 38.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.57128 | $ 9.32 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.591051 | $ 9.65 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.02970931 | $ 38.18 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.02903934 | $ 37.32 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.00225989 | $ 38.43 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.59180398 | $ 9.66 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.00057577 | $ 9.79 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.0022347 | $ 38.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.589572 | $ 9.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.02885743 | $ 37.08 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.585928 | $ 9.56 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.00202101 | $ 34.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.00217607 | $ 37.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.0300443 | $ 38.61 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.530574 | $ 8.66 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.02996912 | $ 38.51 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 0.588097 | $ 9.60 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 459.77011494 | $ 7,503.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 23.28288708 | $ 29,920.84 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 1.75131349 | $ 29,781.47 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.02499789 | $ 425.09 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.02589466 | $ 440.35 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.01150685 | $ 195.68 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
SOFA Question 3: Certain payments or transfers to creditors within 90 days before filing this case
**Coin Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|------|---------|------|--------------------|------|---------------|----------|
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.02480982 | $ 421.90 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.0246859 | $ 419.79 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.02557167 | $ 434.85 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.02570004 | $ 437.03 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 0.02576552 | $ 438.15 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 10.00 | $ 170,052.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Interest Payment | BTC | 0.0083744699999999 | $ 142.41 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 108.777513 | $ 108.78 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 67.546846 | $ 67.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 111.549812 | $ 111.55 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 47.124172 | $ 47.12 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 55.026154 | $ 55.03 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 48.366351 | $ 48.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 114.638394 | $ 114.64 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 7,313.372112 | $ 7,313.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 7,313.372112 | $ 7,313.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 7,050.888 | $ 7,050.89 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Interest Payment | USDC | 50.815274 | $ 50.82 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 2,072,396.919787 | $ 2,072,396.92 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 0.42191781 | $ 542.21 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 385.00 | $ 494,763.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | USDC | 1,032.367447 | $ 1,032.37 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Interest Payment | ETH | 0.11915669 | $ 153.13 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | AAVE | 30.43227086 | $ 1,942.19 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BCH | 65.22848915 | $ 6,707.45 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | ETH | 338.74772575 | $ 435,324.70 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | BTC | 165.23230065 | $ 2,809,811.62 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | SOL | 124.749136 | $ 2,035.91 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Borrow Returned | UNI | 519.77705764 | $ 3,161.28 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Collateral Returned | BTC | 95.48316136 | $ 1,623,712.17 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Collateral Returned | BTC | 450.00 | $ 7,652,349.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Collateral Returned | BTC | 400.00 | $ 6,802,088.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/11/2022 | Collateral Returned | BTC | 400.00 | $ 6,802,088.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/12/2022 | Borrow Returned | ETH | 383.40684094 | $ 481,052.90 |
| NAME ON FILE | ADDRESS ON FILE | 11/12/2022 | Borrow Returned | ETH | 1,810.07839126 | $ 2,271,069.16 |
| NAME ON FILE | ADDRESS ON FILE | 11/12/2022 | Collateral Returned | ETH | 7,331.00 | $ 9,198,059.08 |
| NAME ON FILE | ADDRESS ON FILE | 11/12/2022 | Loan Executed | BTC | 150.00 | $ 2,516,647.50 |
| NAME ON FILE | ADDRESS ON FILE | 11/12/2022 | Loan Executed | ETH | 800.00 | $ 1,003,744.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/13/2022 | Loan Executed | BTC | 95.00 | $ 1,593,876.75 |
| NAME ON FILE | ADDRESS ON FILE | 11/13/2022 | Borrow Returned | BTC | 0.59988936 | $ 9,780.79 |
| NAME ON FILE | ADDRESS ON FILE | 11/13/2022 | Borrow Returned | BTC | 0.37231157 | $ 6,070.29 |
| NAME ON FILE | ADDRESS ON FILE | 11/13/2022 | Borrow Returned | ETH | 4.57091167 | $ 5,575.23 |
| NAME ON FILE | ADDRESS ON FILE | 11/13/2022 | Borrow Returned | ETH | 6.37597365 | $ 7,776.90 |
| NAME ON FILE | ADDRESS ON FILE | 11/14/2022 | Borrow Returned | BTC | 1,000.00 | $ 16,590,350.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/14/2022 | Borrow Returned | USDC | 100,000.00 | $ 100,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/14/2022 | Collateral Posted | BTC | 57.84 | $ 959,585.84 |
| NAME ON FILE | ADDRESS ON FILE | 11/14/2022 | Borrow Returned | USDC | 180,000.00 | $ 180,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/14/2022 | Borrow Returned | USDC | 950,000.00 | $ 950,000.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/15/2022 | Loan Executed | ETHW | 20,000.00 | $ 77,600.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/15/2022 | Loan Executed | ETHW | 198.00 | $ 768.24 |
| NAME ON FILE | ADDRESS ON FILE | 11/15/2022 | Borrow Returned | ETHW | 90.00 | $ 349.20 |
| NAME ON FILE | ADDRESS ON FILE | 11/15/2022 | Loan Executed | ETHW | 425.00 | $ 1,649.00 |
| NAME ON FILE | ADDRESS ON FILE | 11/15/2022 | Loan Executed | ETHW | 151,000.00 | $ 585,880.00 |

Debtor Name: Genesis Global Capital, LLC                                           Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

### SOFA 4 - Rider 1: Intercompany / Affiliate Transfers

| Debtor | Trading Partner | Month | Beginning Balance | Ending Balance | Net Monthly Activity Receivable/(Payable) |
|---|---|---|---|---|---|
| Genesis Global Capital, LLC | Digital Currency Group International | Dec-21 | | $ 561,006,142.72 | |
| Genesis Global Capital, LLC | Digital Currency Group International | Jan-22 | $ 561,006,142.72 | $ 528,703,748.06 | $ (32,302,394.66) |
| Genesis Global Capital, LLC | Digital Currency Group International | Feb-22 | $ 528,703,748.06 | $ 639,925,193.20 | $ 111,221,445.14 |
| Genesis Global Capital, LLC | Digital Currency Group International | Mar-22 | $ 639,925,193.20 | $ 708,175,787.09 | $ 68,250,593.90 |
| Genesis Global Capital, LLC | Digital Currency Group International | Apr-22 | $ 708,175,787.09 | $ 566,468,707.28 | $ (141,707,079.82) |
| Genesis Global Capital, LLC | Digital Currency Group International | May-22 | $ 566,468,707.28 | $ 574,870,280.75 | $ 8,401,573.47 |
| Genesis Global Capital, LLC | Digital Currency Group International | Jun-22 | $ 574,870,280.75 | $ 233,116,670.97 | $ (341,753,609.78) |
| Genesis Global Capital, LLC | Digital Currency Group International | Jul-22 | $ 233,116,670.97 | $ 243,279,643.09 | $ 10,162,972.12 |
| Genesis Global Capital, LLC | Digital Currency Group International | Aug-22 | $ 243,279,643.09 | $ 199,209,720.12 | $ (44,069,922.97) |
| Genesis Global Capital, LLC | Digital Currency Group International | Sep-22 | $ 199,209,720.12 | $ 307,211,864.51 | $ 108,002,144.39 |
| Genesis Global Capital, LLC | Digital Currency Group International | Oct-22 | $ 307,211,864.51 | $ 325,484,871.48 | $ 18,273,006.97 |
| Genesis Global Capital, LLC | Digital Currency Group International | Nov-22 | $ 325,484,871.48 | $ 77,430,198.17 | $ (248,054,673.31) |
| Genesis Global Capital, LLC | Digital Currency Group International | Dec-22 | $ 77,430,198.17 | $ 76,050,100.94 | $ (1,380,097.23) |
| Genesis Global Capital, LLC | Digital Currency Group International | 1/19/23 | $ 76,050,100.94 | $ 94,571,767.74 | $ 18,521,666.80 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Dec-21 | | $ (277,403,233.01) | |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Jan-22 | $ (277,403,233.01) | $ (58,216,352.96) | $ 219,186,880.05 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Feb-22 | $ (58,216,352.96) | $ (9,880,427.38) | $ 48,335,925.58 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Mar-22 | $ (9,880,427.38) | $ (5,557,097.30) | $ 4,323,330.08 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Apr-22 | $ (5,557,097.30) | $ 140,193,530.73 | $ 145,750,628.03 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | May-22 | $ 140,193,530.73 | $ 473,980,992.14 | $ 333,787,461.41 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Jun-22 | $ 473,980,992.14 | $ 1,524,600,186.59 | $ 1,050,619,194.45 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Jul-22 | $ 1,524,600,186.59 | $ 1,525,476,844.13 | $ 876,657.54 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Aug-22 | $ 1,525,476,844.13 | $ 1,544,062,097.52 | $ 18,585,253.39 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Sep-22 | $ 1,544,062,097.52 | $ 1,544,832,015.33 | $ 769,917.81 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Oct-22 | $ 1,544,832,015.33 | $ 1,545,893,632.82 | $ 1,061,617.49 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Nov-22 | $ 1,545,893,632.82 | $ 1,596,885,007.56 | $ 50,991,374.74 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | Dec-22 | $ 1,596,885,007.56 | $ 1,627,404,061.91 | $ 30,519,054.35 |
| Genesis Global Capital, LLC | Digital Currency Group, Inc. | 1/19/23 | $ 1,627,404,061.91 | $ 1,625,980,059.03 | $ (1,424,002.88) |
| Genesis Global Capital, LLC | Foundry Digital LLC | Dec-21 | | $ (10,002,311.08) | |
| Genesis Global Capital, LLC | Foundry Digital LLC | Jan-22 | $ (10,002,311.08) | $ (4,593,359.86) | $ 5,408,951.22 |
| Genesis Global Capital, LLC | Foundry Digital LLC | Feb-22 | $ (4,593,359.86) | $ (12,401,850.43) | $ (7,808,490.57) |
| Genesis Global Capital, LLC | Foundry Digital LLC | Mar-22 | $ (12,401,850.43) | $ (20,970,003.93) | $ (8,568,153.50) |
| Genesis Global Capital, LLC | Foundry Digital LLC | Apr-22 | $ (20,970,003.93) | $ 2,478,762.79 | $ 23,448,766.72 |
| Genesis Global Capital, LLC | Foundry Digital LLC | May-22 | $ 2,478,762.79 | $ 4,066,519.28 | $ 1,587,756.49 |
| Genesis Global Capital, LLC | Foundry Digital LLC | Jun-22 | $ 4,066,519.28 | $ (914,963.07) | $ (4,981,482.35) |
| Genesis Global Capital, LLC | Foundry Digital LLC | Jul-22 | $ (914,963.07) | $ (1,091,662.27) | $ (176,699.20) |
| Genesis Global Capital, LLC | Foundry Digital LLC | Aug-22 | $ (1,091,662.27) | $ (1,359,001.44) | $ (267,339.17) |
| Genesis Global Capital, LLC | Foundry Digital LLC | Sep-22 | $ (1,359,001.44) | $ (1,215,696.72) | $ 143,304.72 |
| Genesis Global Capital, LLC | Foundry Digital LLC | Oct-22 | $ (1,215,696.72) | $ (560,475.83) | $ 655,220.89 |
| Genesis Global Capital, LLC | Foundry Digital LLC | Nov-22 | $ (560,475.83) | $ (5,606,035.87) | $ (5,045,560.04) |
| Genesis Global Capital, LLC | Foundry Digital LLC | Dec-22 | $ (5,606,035.87) | $ (4,951,638.81) | $ 654,397.06 |
| Genesis Global Capital, LLC | Foundry Digital LLC | 1/19/23 | $ (4,951,638.81) | $ (5,755,388.81) | $ (803,750.00) |

Debtor Name: Genesis Global Capital, LLC

Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

<u>SOFA 4 - Rider 1: Intercompany / Affiliate Transfers</u>

| Debtor | Trading Partner | Month | Beginning Balance | Ending Balance | Net Monthly Activity Receivable/(Payable) |
|---|---|---|---|---|---|
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Dec-21 | | $324,681,963.80 | |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Jan-22 | $ 324,681,963.80 | $ 784,331,316.50 | $ 459,649,352.70 |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Feb-22 | $ 784,331,316.50 | $ 928,478,057.59 | $ 144,146,741.09 |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Mar-22 | $ 928,478,057.59 | $ 1,081,988,714.86 | $ 153,510,657.27 |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Apr-22 | $ 1,081,988,714.86 | $ 1,166,422,136.72 | $ 84,433,421.86 |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | May-22 | $ 1,166,422,136.72 | $ 972,577,971.00 | $ (193,844,165.72) |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Jun-22 | $ 972,577,971.00 | $ (177,500,880.09) | $ (1,150,078,851.09) |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Jul-22 | $ (177,500,880.09) | $ (475,869,503.69) | $ (298,368,623.60) |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Aug-22 | $ (475,869,503.69) | $ (249,977,174.38) | $ 225,892,329.31 |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Sep-22 | $ (249,977,174.38) | $ (182,084,397.32) | $ 67,892,777.06 |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Oct-22 | $ (182,084,397.32) | $ (115,960,551.16) | $ 66,123,846.16 |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Nov-22 | $ (115,960,551.16) | $ 46,999,412.77 | $ 162,959,963.93 |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | Dec-22 | $ 46,999,412.77 | $ 25,276,786.08 | $ (21,722,626.69) |
| Genesis Global Capital, LLC | Genesis Asia Pacific Pte. Ltd. (Singapore) | 1/19/23 | $ 25,276,786.08 | $ 144,404,999.03 | $ 119,128,212.95 |
| Genesis Global Capital, LLC | Genesis Custody Limited | Dec-21 | | $ 23,487,955.95 | |
| Genesis Global Capital, LLC | Genesis Custody Limited | Jan-22 | $ 23,487,955.95 | $ 24,266,243.40 | $ 778,287.45 |
| Genesis Global Capital, LLC | Genesis Custody Limited | Feb-22 | $ 24,266,243.40 | $ 32,029,019.29 | $ 7,762,775.89 |
| Genesis Global Capital, LLC | Genesis Custody Limited | Mar-22 | $ 32,029,019.29 | $ 30,846,569.25 | $ (1,182,450.04) |
| Genesis Global Capital, LLC | Genesis Custody Limited | Apr-22 | $ 30,846,569.25 | $ 31,017,651.77 | $ 171,082.52 |
| Genesis Global Capital, LLC | Genesis Custody Limited | May-22 | $ 31,017,651.77 | $ 29,575,925.24 | $ (1,441,726.53) |
| Genesis Global Capital, LLC | Genesis Custody Limited | Jun-22 | $ 29,575,925.24 | $ 27,441,327.82 | $ (2,134,597.42) |
| Genesis Global Capital, LLC | Genesis Custody Limited | Jul-22 | $ 27,441,327.82 | $ 30,557,793.28 | $ 3,116,465.46 |
| Genesis Global Capital, LLC | Genesis Custody Limited | Aug-22 | $ 30,557,793.28 | $ 29,644,307.52 | $ (913,485.76) |
| Genesis Global Capital, LLC | Genesis Custody Limited | Sep-22 | $ 29,644,307.52 | $ 30,728,333.90 | $ 1,084,026.38 |
| Genesis Global Capital, LLC | Genesis Custody Limited | Oct-22 | $ 30,728,333.90 | $ 31,933,902.98 | $ 1,205,569.08 |
| Genesis Global Capital, LLC | Genesis Custody Limited | Nov-22 | $ 31,933,902.98 | $ 32,482,393.56 | $ 548,490.58 |
| Genesis Global Capital, LLC | Genesis Custody Limited | Dec-22 | $ 32,482,393.56 | $ 32,351,740.93 | $ (130,652.63) |
| Genesis Global Capital, LLC | Genesis Custody Limited | 1/19/23 | $ 32,351,740.93 | $ 33,398,912.25 | $ 1,047,171.32 |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Dec-21 | | $ 6,721.00 | |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Jan-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Feb-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Mar-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Apr-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | May-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Jun-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Jul-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Aug-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Sep-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Oct-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Nov-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | Dec-22 | $ 6,721.00 | $ 6,721.00 | $ - |
| Genesis Global Capital, LLC | Genesis Global Assets, LLC | 1/19/23 | $ 6,721.00 | $ 6,721.00 | $ - |

Debtor Name: Genesis Global Capital, LLC

Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

<u>**SOFA 4 - Rider 1: Intercompany / Affiliate Transfers**</u>

| Debtor | Trading Partner | Month | Beginning Balance | Ending Balance | Net Monthly Activity Receivable/(Payable) |
|---|---|---|---|---|---|
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Dec-21 | | $ 1,155,247.34 | |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Jan-22 | $ 1,155,247.34 | $ 1,316,990.15 | $ 161,742.81 |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Feb-22 | $ 1,316,990.15 | $ 1,316,990.15 | $ - |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Mar-22 | $ 1,316,990.15 | $ 1,316,990.15 | $ - |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Apr-22 | $ 1,316,990.15 | $ 1,316,990.15 | $ - |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | May-22 | $ 1,316,990.15 | $ 1,316,990.15 | $ - |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Jun-22 | $ 1,316,990.15 | $ 1,316,990.15 | $ - |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Jul-22 | $ 1,316,990.15 | $ 1,316,990.15 | $ - |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Aug-22 | $ 1,316,990.15 | $ 2,789,444.76 | $ 1,472,454.61 |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Sep-22 | $ 2,789,444.76 | $ 2,789,444.76 | $ - |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Oct-22 | $ 2,789,444.76 | $ 108,586,640.76 | $ 105,797,196.00 |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Nov-22 | $ 108,586,640.76 | $ 116,086,640.76 | $ 7,500,000.00 |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | Dec-22 | $ 116,086,640.76 | $ 116,086,640.76 | $ - |
| Genesis Global Capital, LLC | Genesis Global Holdco, LLC | 1/19/23 | $ 116,086,640.76 | $ 116,126,640.76 | $ 40,000.00 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Dec-21 | | $ 11,820,535.60 | $ 11,820,535.60 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Jan-22 | $ 11,820,535.60 | $ 12,319,238.14 | $ 498,702.54 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Feb-22 | $ 12,319,238.14 | $ 12,553,765.50 | $ 234,527.36 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Mar-22 | $ 12,553,765.50 | $ 15,024,167.79 | $ 2,470,402.29 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Apr-22 | $ 15,024,167.79 | $ 15,513,358.99 | $ 489,191.20 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | May-22 | $ 15,513,358.99 | $ 17,111,242.31 | $ 1,597,883.32 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Jun-22 | $ 17,111,242.31 | $ 17,471,723.89 | $ 360,481.58 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Jul-22 | $ 17,471,723.89 | $ 18,582,458.95 | $ 1,110,735.06 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Aug-22 | $ 18,582,458.95 | $ 18,733,780.90 | $ 151,321.95 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Sep-22 | $ 18,733,780.90 | $ 19,847,496.67 | $ 1,113,715.77 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Oct-22 | $ 19,847,496.67 | $ 20,779,026.29 | $ 931,529.62 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Nov-22 | $ 20,779,026.29 | $ 21,773,089.43 | $ 994,063.14 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | Dec-22 | $ 21,773,089.43 | $ 22,720,441.36 | $ 947,351.93 |
| Genesis Global Capital, LLC | Genesis Global Labs, LLC | 1/19/23 | $ 22,720,441.36 | $ 22,971,753.29 | $ 251,311.93 |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Dec-21 | | $ (9,335,213.69) | |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Jan-22 | $ (9,335,213.69) | $ 8,570,585.15 | $ 17,905,798.84 |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Feb-22 | $ 8,570,585.15 | $ 35,078,504.42 | $ 26,507,919.27 |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Mar-22 | $ 35,078,504.42 | $ 7,467,524.26 | $ (27,610,980.16) |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Apr-22 | $ 7,467,524.26 | $ 6,120,643.46 | $ (1,346,880.80) |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | May-22 | $ 6,120,643.46 | $ 5,696,682.77 | $ (423,960.69) |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Jun-22 | $ 5,696,682.77 | $ (1,840,476.08) | $ (7,537,158.85) |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Jul-22 | $ (1,840,476.08) | $ 5,499,997.62 | $ 7,340,473.70 |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Aug-22 | $ 5,499,997.62 | $ (2,448,071.29) | $ (7,948,068.91) |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Sep-22 | $ (2,448,071.29) | $ 2,896,334.84 | $ 5,344,406.13 |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Oct-22 | $ 2,896,334.84 | $ (3,592,989.02) | $ (6,489,323.86) |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Nov-22 | $ (3,592,989.02) | $ (4,747,768.15) | $ (1,154,779.13) |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | Dec-22 | $ (4,747,768.15) | $ (6,105,560.61) | $ (1,357,792.46) |
| Genesis Global Capital, LLC | Genesis Global Trading, Inc. | 1/19/23 | $ (6,105,560.61) | $ (2,301,176.80) | $ 3,804,383.81 |

Debtor Name: Genesis Global Capital, LLC

Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

<u>**SOFA 4 - Rider 1: Intercompany / Affiliate Transfers**</u>

| Debtor | Trading Partner | Month | Beginning Balance | Ending Balance | Net Monthly Activity Receivable/(Payable) |
|---|---|---|---|---|---|
| Genesis Global Capital, LLC | Genesis Trust | Dec-21 | | $ 1,903,741.73 | |
| Genesis Global Capital, LLC | Genesis Trust | Jan-22 | $ 1,903,741.73 | $ 1,903,741.73 | $ - |
| Genesis Global Capital, LLC | Genesis Trust | Feb-22 | $ 1,903,741.73 | $ 2,013,269.43 | 109,527.70 |
| Genesis Global Capital, LLC | Genesis Trust | Mar-22 | $ 2,013,269.43 | $ 2,121,788.63 | 108,519.20 |
| Genesis Global Capital, LLC | Genesis Trust | Apr-22 | $ 2,121,788.63 | $ 2,121,788.63 | $ - |
| Genesis Global Capital, LLC | Genesis Trust | May-22 | $ 2,121,788.63 | $ 2,121,788.63 | $ - |
| Genesis Global Capital, LLC | Genesis Trust | Jun-22 | $ 2,121,788.63 | $ 2,121,788.63 | $ - |
| Genesis Global Capital, LLC | Genesis Trust | Jul-22 | $ 2,121,788.63 | $ 2,121,788.63 | $ - |
| Genesis Global Capital, LLC | Genesis Trust | Aug-22 | $ 2,121,788.63 | $ 2,121,788.63 | $ - |
| Genesis Global Capital, LLC | Genesis Trust | Sep-22 | $ 2,121,788.63 | $ 2,121,788.63 | $ - |
| Genesis Global Capital, LLC | Genesis Trust | Oct-22 | $ 2,121,788.63 | $ 2,121,788.63 | $ - |
| Genesis Global Capital, LLC | Genesis Trust | Nov-22 | $ 2,121,788.63 | $ 2,121,788.63 | $ - |
| Genesis Global Capital, LLC | Genesis Trust | Dec-22 | $ 2,121,788.63 | $ 2,121,788.63 | $ - |
| Genesis Global Capital, LLC | Genesis Trust | 1/19/23 | $ 2,121,788.63 | $ 2,121,788.63 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Dec-21 | | $ 1,092,436.83 | |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Jan-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Feb-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Mar-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Apr-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | May-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Jun-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Jul-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Aug-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Sep-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Oct-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Nov-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | Dec-22 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | Genesis UK Holdco Limited | 1/19/23 | $ 1,092,436.83 | $ 1,092,436.83 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | Dec-21 | | $ 22,304.00 | |
| Genesis Global Capital, LLC | GGA International Limited | Jan-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | Feb-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | Mar-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | Apr-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | May-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | Jun-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | Jul-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | Aug-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | Sep-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | Oct-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | Nov-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | Dec-22 | $ 22,304.00 | $ 22,304.00 | $ - |
| Genesis Global Capital, LLC | GGA International Limited | 1/19/23 | $ 22,304.00 | $ 22,304.00 | $ - |

Debtor Name: Genesis Global Capital, LLC                                                                                          Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

### SOFA 4 - Rider 1: Intercompany / Affiliate Transfers

| Debtor | Trading Partner | Month | Beginning Balance | Ending Balance | Net Monthly Activity Receivable/(Payable) |
|--------|-----------------|-------|-------------------|----------------|-------------------------------------------|
| Genesis Global Capital, LLC | GGC International Limited | Dec-21 | | $  2,527,924,688.90 | |
| Genesis Global Capital, LLC | GGC International Limited | Jan-22 | $  2,527,924,688.90 | $  2,925,323,832.54 | $  397,399,143.64 |
| Genesis Global Capital, LLC | GGC International Limited | Feb-22 | $  2,925,323,832.54 | $  3,024,658,213.35 | $  99,334,380.81 |
| Genesis Global Capital, LLC | GGC International Limited | Mar-22 | $  3,024,658,213.35 | $  3,319,673,925.24 | $  295,015,711.89 |
| Genesis Global Capital, LLC | GGC International Limited | Apr-22 | $  3,319,673,925.24 | $  2,951,386,756.09 | $  (368,287,169.15) |
| Genesis Global Capital, LLC | GGC International Limited | May-22 | $  2,951,386,756.09 | $  1,934,547,218.56 | $  (1,016,839,537.53) |
| Genesis Global Capital, LLC | GGC International Limited | Jun-22 | $  1,934,547,218.56 | $  1,150,604,619.25 | $  (783,942,599.31) |
| Genesis Global Capital, LLC | GGC International Limited | Jul-22 | $  1,150,604,619.25 | $  1,450,782,660.40 | $  300,178,041.15 |
| Genesis Global Capital, LLC | GGC International Limited | Aug-22 | $  1,450,782,660.40 | $  629,951,273.34 | $  (820,831,387.06) |
| Genesis Global Capital, LLC | GGC International Limited | Sep-22 | $  629,951,273.34 | $  589,861,755.99 | $  (40,089,517.35) |
| Genesis Global Capital, LLC | GGC International Limited | Oct-22 | $  589,861,755.99 | $  483,763,396.09 | $  (106,098,359.90) |
| Genesis Global Capital, LLC | GGC International Limited | Nov-22 | $  483,763,396.09 | $  265,426,850.18 | $  (218,336,545.91) |
| Genesis Global Capital, LLC | GGC International Limited | Dec-22 | $  265,426,850.18 | $  278,131,753.78 | $  12,704,903.60 |
| Genesis Global Capital, LLC | GGC International Limited | 1/19/23 | $  278,131,753.78 | $  290,886,462.56 | $  12,754,708.78 |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Dec-21 | | $  (2,044,828.89) | |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Jan-22 | $  (2,044,828.89) | $  (1,514,717.24) | $  530,111.65 |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Feb-22 | $  (1,514,717.24) | $  (1,747,087.04) | $  (232,369.80) |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Mar-22 | $  (1,747,087.04) | $  (656,314.22) | $  1,090,772.82 |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Apr-22 | $  (656,314.22) | $  (517,912.25) | $  138,401.97 |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | May-22 | $  (517,912.25) | $  (358,577.81) | $  159,334.44 |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Jun-22 | $  (358,577.81) | $  (237,159.23) | $  121,418.58 |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Jul-22 | $  (237,159.23) | $  (289,450.38) | $  (52,291.15) |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Aug-22 | $  (289,450.38) | $  (244,896.58) | $  44,553.80 |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Sep-22 | $  (244,896.58) | $  (246,709.45) | $  (1,812.87) |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Oct-22 | $  (246,709.45) | $  (2,516,041.78) | $  (2,269,332.33) |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Nov-22 | $  (2,516,041.78) | $  (420,270.64) | $  2,095,771.14 |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | Dec-22 | $  (420,270.64) | $  (371,943.92) | $  48,326.72 |
| Genesis Global Capital, LLC | Grayscale Investments, LLC | 1/19/23 | $  (371,943.92) | $  (466,592.95) | $  (94,649.03) |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Dec-21 | | $  - | $  - |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Jan-22 | $  - | $  (1,000,000,000.00) | $  (1,000,000,000.00) |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Feb-22 | $  (1,000,000,000.00) | $  (1,004,554,790.00) | $  (4,554,790.00) |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Mar-22 | $  (1,004,554,790.00) | $  (1,011,297,690.00) | $  (6,742,900.00) |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Apr-22 | $  (1,011,297,690.00) | $  (1,018,813,160.00) | $  (7,515,470.00) |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | May-22 | $  (1,018,813,160.00) | $  (100,526,140,240.00) | $  (99,507,327,080.00) |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Jun-22 | $  (100,526,140,240.00) | $  (1,197,327,650.00) | $  99,328,812,590.00 |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Jul-22 | $  (1,197,327,650.00) | $  - | $  1,197,327,650.00 |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Aug-22 | $  - | $  - | $  - |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Sep-22 | $  - | $  - | $  - |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Oct-22 | $  - | $  - | $  - |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Nov-22 | $  - | $  - | $  - |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | Dec-22 | $  - | $  - | $  - |
| Genesis Global Capital, LLC | HQ Cash Management Fund LP | 1/19/23 | $  - | $  - | $  - |
| Genesis Global Capital, LLC | Luno Australia Pty Ltd. | Oct-22 | | $  (65,677,418.57) | $  (65,677,418.57) |
| Genesis Global Capital, LLC | Luno Australia Pty Ltd. | Nov-22 | $  (65,677,418.57) | $  (53,728,193.48) | $  11,949,225.09 |
| Genesis Global Capital, LLC | Luno Australia Pty Ltd. | Dec-22 | $  (53,728,193.48) | $  (51,335,483.57) | $  2,392,709.91 |
| Genesis Global Capital, LLC | Luno Australia Pty Ltd. | 1/19/23 | $  (51,335,483.57) | $  (63,654,789.50) | $  (12,319,305.93) |

Debtor Name: Genesis Global Capital, LLC                                           Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

**SOFA 4 - Rider 2: Wages, Benefits, Loans and Other Beneficial Transfers**

| NAME | DATE | DESCRIPTION | VALUE |
|---|---|---|---|
| **CONHEENEY, THOMAS**<br>Director | 1/19/2023 | Director Fees* | $ 250,000.00 |
| **KRAINES, MICHAEL**<br>Director | 2/1/2022 | Interest Paid | $ 2,123.28 |
| | 3/1/2022 | Interest Paid | $ 1,917.81 |
| | 4/1/2022 | Interest Paid | $ 2,123.28 |
| | 5/2/2022 | Interest Paid | $ 2,054.79 |
| | 6/1/2022 | Interest Paid | $ 2,123.28 |
| | 7/1/2022 | Interest Paid | $ 2,054.79 |
| | 8/1/2022 | Interest Paid | $ 2,123.28 |
| | 9/1/2022 | Interest Paid | $ 2,123.28 |
| | 10/3/2022 | Interest Paid | $ 2,054.79 |
| | 11/1/2022 | Interest Paid | $ 2,123.28 |
| **PALEOKRASSAS, MICHAEL**<br>Former Co-Head of Trading and Lending | 2/7/2022 | Borrow Returned | $ 60,000.00 |
| | 2/24/2022 | Borrow Returned | $ 40,000.00 |
| | 4/6/2022 | Borrow Returned | $ 20,000.00 |
| | 4/12/2022 | Borrow Returned | $ 70,000.00 |
| | 5/3/2022 | Borrow Returned | $ 75,000.00 |
| | 6/15/2022 | Borrow Returned | $ 1,295,890.81 |
| | 6/15/2022 | Interest Paid | $ 37.35 |
| | 6/15/2022 | Interest Paid | $ 4,970.53 |
| | 11/10/2022 | Borrow Returned | $ 37,801.39 |
| **PRETTO-SAKMANN, ARIANNA**<br>Chief Legal Officer | 6/13/2022 | Loan Book Activity | $ 758,919.97 |
| **SILBERT, BARRY**<br>Chief Executive Officer<br>(Digital Currency Group) | 2/1/2022 | Interest Paid | $ 23,671.23 |
| | 3/1/2022 | Interest Paid | $ 24,547.95 |
| | 4/1/2022 | Interest Paid | $ 27,178.08 |
| | 4/14/2022 | Interest Paid | $ 11,397.26 |
| | 4/14/2022 | Borrow Returned | $ 4,000,000.00 |

*Payment made in error and has subsequently been reimbursed

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

**SOFA 4 - Rider 3: Coin Transactions**

| NAME | DATE | TYPE | DESCRIPTION | COIN | COIN QUANTITY | COIN VALUE (USD) |
|---|---|---|---|---|---|---|
| **BALLENSWEIG, MATT**<br>Former Co-Head of Trading and Lending | 10/12/2022 | Outflow | Collateral Returned | BTC | 4.25 | $    81,408.75 |
| **PALEOKRASSAS, MICHAEL**<br>Former Co-Head of Trading and Lending | 6/15/2022 | Outflow | Borrow Returned | BTC | 415.58718963 | $    9,374,566.47 |
| | 6/15/2022 | Outflow | Borrow Returned | USDC | 12,173.504 | $    12,173.50 |
| | 11/8/2022 | Outflow | Borrow Returned | ETH | 225.00 | $    300,341.25 |
| | 11/9/2022 | Outflow | Borrow Returned | BCH | 415.70924001 | $    37,018.91 |
| | 11/9/2022 | Outflow | Borrow Returned | USDC | 8,420.358958 | $    8,420.36 |
| | 11/9/2022 | Outflow | Borrow Returned | SUSHI | 29,609.27643424 | $    30,085.99 |
| | 11/9/2022 | Outflow | Borrow Returned | ZEC | 2,238.08806066 | $    78,109.27 |
| **PRETTO-SAKMANN, ARIANNA**<br>Chief Legal Officer | 6/18/2022 | Outflow | Borrow Returned | ETH | 29.35833993 | $    29,183.07 |
| | 6/18/2022 | Outflow | Interest Paid | ETH | 1.19938374 | $    1,192.22 |
| | 6/20/2022 | Outflow | Borrow Returned | FIL | 120.0573083 | $    658.27 |
| | 6/20/2022 | Outflow | Interest Paid | ETH | 0.05692946 | $    64.16 |
| | 6/20/2022 | Outflow | Interest Paid | FIL | 9.17193948 | $    50.29 |

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider
**SOFA 4 - Rider 4: Affiliate Coin and USD Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|---|---|---|---|---|---|---|
| DCG International | ADDRESS ON FILE | 1/19/2022 | Loan Execute | BTC | 139.60 | $ 5,915,415.98 |
| DCG International | ADDRESS ON FILE | 1/20/2022 | Loan Execute | BTC | 158.16 | $ 6,602,235.78 |
| DCG International | ADDRESS ON FILE | 1/21/2022 | Loan Execute | BTC | 176.76 | $ 7,194,063.06 |
| DCG International | ADDRESS ON FILE | 1/21/2022 | Loan Execute | BTC | 24.70 | $ 1,005,280.37 |
| DCG International | ADDRESS ON FILE | 1/21/2022 | Loan Execute | ETH | 96.21 | $ 288,914.78 |
| DCG International | ADDRESS ON FILE | 1/24/2022 | Loan Execute | BTC | 200.00 | $ 7,342,646.00 |
| Digital Currency Group | ADDRESS ON FILE | 1/24/2022 | Borrow Return | USD | 59,500,000.00 | $ 59,500,000.00 |
| Digital Currency Group | ADDRESS ON FILE | 1/24/2022 | Borrow Return | USD | 59,500,000.00 | $ 59,500,000.00 |
| DCG International | ADDRESS ON FILE | 1/25/2022 | Loan Execute | BTC | 179.07 | $ 6,620,088.97 |
| DCG International | ADDRESS ON FILE | 1/25/2022 | Loan Execute | BTC | 3.88 | $ 143,440.81 |
| DCG International | ADDRESS ON FILE | 1/25/2022 | Loan Execute | ETH | 21.85 | $ 53,715.17 |
| Digital Currency Group | ADDRESS ON FILE | 1/25/2022 | Loan Execute | USD | 100,000,000.00 | $ 100,000,000.00 |
| DCG International | ADDRESS ON FILE | 1/26/2022 | Loan Execute | BTC | 174.38 | $ 6,420,784.95 |
| DCG International | ADDRESS ON FILE | 1/27/2022 | Loan Execute | BTC | 181.40 | $ 6,747,165.74 |
| DCG International | ADDRESS ON FILE | 1/28/2022 | Loan Execute | BTC | 186.05 | $ 7,021,874.91 |
| DCG International | ADDRESS ON FILE | 1/31/2022 | Loan Execute | BTC | 181.33 | $ 6,979,357.25 |
| DCG International | ADDRESS ON FILE | 1/31/2022 | Collateral Returned | USD | 372,157.49 | $ 372,157.49 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Loan Execute | BTC | 174.82 | $ 6,768,512.93 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Collateral Returned | USD | 505,074.22 | $ 505,074.22 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Interest Payment | USD | 6,433.68 | $ 6,433.68 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Interest Payment | USD | 27,884.73 | $ 27,884.73 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Interest Payment | USD | 6,203.84 | $ 6,203.84 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Interest Payment | USD | 2,994.71 | $ 2,994.71 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Interest Payment | USD | 30,273.97 | $ 30,273.97 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Interest Payment | USD | 3,175.84 | $ 3,175.84 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Interest Payment | USD | 11,409.94 | $ 11,409.94 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Interest Payment | USD | 17,550.53 | $ 17,550.53 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Interest Payment | USD | 8,495.23 | $ 8,495.23 |
| DCG International | ADDRESS ON FILE | 2/1/2022 | Interest Payment | USD | 293,013.70 | $ 293,013.70 |
| Foundry Digital LLC | ADDRESS ON FILE | 2/1/2022 | Interest Payment | ZEC | 265.4109589 | $ 26,294.26 |
| DCG International | ADDRESS ON FILE | 2/2/2022 | Loan Execute | BTC | 176.64 | $ 6,523,060.84 |
| DCG International | ADDRESS ON FILE | 2/2/2022 | Loan Execute | ETH | 15.00 | $ 40,246.50 |
| DCG International | ADDRESS ON FILE | 2/2/2022 | Collateral Returned | USD | 13,472.49 | $ 13,472.49 |
| DCG International | ADDRESS ON FILE | 2/3/2022 | Loan Execute | BTC | 185.94 | $ 6,934,024.28 |
| DCG International | ADDRESS ON FILE | 2/3/2022 | Loan Execute | ETH | 18.34 | $ 49,404.11 |
| DCG International | ADDRESS ON FILE | 2/3/2022 | Collateral Returned | USD | 497,084.42 | $ 497,084.42 |
| Grayscale | ADDRESS ON FILE | 2/3/2022 | Interest Payment | BCH | 2.64507898 | $ 743.51 |
| Grayscale | ADDRESS ON FILE | 2/3/2022 | Interest Payment | ETC | 223.8195004 | $ 6,233.37 |
| Grayscale | ADDRESS ON FILE | 2/3/2022 | Interest Payment | LTC | 10.86262115 | $ 1,204.99 |
| DCG International | ADDRESS ON FILE | 2/4/2022 | Loan Execute | BTC | 178.50 | $ 7,425,089.49 |
| DCG International | ADDRESS ON FILE | 2/4/2022 | Collateral Returned | USD | 923,043.17 | $ 923,043.17 |
| DCG International | ADDRESS ON FILE | 2/7/2022 | Loan Execute | BTC | 158.00 | $ 6,929,056.82 |
| DCG International | ADDRESS ON FILE | 2/7/2022 | Collateral Returned | USD | 801,595.48 | $ 801,595.48 |
| DCG International | ADDRESS ON FILE | 2/8/2022 | Loan Execute | BTC | 148.72 | $ 6,555,085.34 |
| DCG International | ADDRESS ON FILE | 2/8/2022 | Loan Execute | ETH | 4.55 | $ 200,548.94 |
| DCG International | ADDRESS ON FILE | 2/8/2022 | Collateral Returned | ETH | 50.90 | $ 158,749.97 |
| DCG International | ADDRESS ON FILE | 2/9/2022 | Collateral Returned | USD | 193,519.99 | $ 193,519.99 |
| Digital Currency Group | ADDRESS ON FILE | 2/9/2022 | Interest Payment | ZEC | 86.40082192 | $ 10,888.23 |
| DCG International | ADDRESS ON FILE | 2/14/2022 | Loan Execute | BTC | 14.46 | $ 615,133.17 |
| DCG International | ADDRESS ON FILE | 2/14/2022 | Collateral Returned | ETH | 89.07 | $ 261,024.98 |
| DCG International | ADDRESS ON FILE | 2/15/2022 | Collateral Returned | USD | 462,668.18 | $ 462,668.18 |
| DCG International | ADDRESS ON FILE | 2/17/2022 | Collateral Returned | USD | 61,985.67 | $ 61,985.67 |
| DCG International | ADDRESS ON FILE | 2/17/2022 | Collateral Returned | USD | 214,536.35 | $ 214,536.35 |
| DCG International | ADDRESS ON FILE | 2/18/2022 | Loan Execute | BTC | 3.96 | $ 158,398.97 |
| DCG International | ADDRESS ON FILE | 2/18/2022 | Collateral Returned | ETH | 97.11 | $ 269,981.34 |
| DCG International | ADDRESS ON FILE | 2/18/2022 | Loan Execute | ETH | 20.50 | $ 56,993.28 |
| DCG International | ADDRESS ON FILE | 2/18/2022 | Loan Execute | ETH | 68.79 | $ 191,247.21 |
| DCG International | ADDRESS ON FILE | 2/22/2022 | Collateral Returned | USD | 723,265.43 | $ 723,265.43 |
| DCG International | ADDRESS ON FILE | 2/22/2022 | Collateral Returned | USD | 12,239.49 | $ 12,239.49 |
| DCG International | ADDRESS ON FILE | 2/23/2022 | Loan Execute | USD | 5,871,832.24 | $ 5,871,832.24 |
| DCG International | ADDRESS ON FILE | 2/24/2022 | Collateral Returned | BTC | 10.33 | $ 396,127.61 |
| DCG International | ADDRESS ON FILE | 2/24/2022 | Collateral Returned | ETH | 34.67 | $ 90,050.82 |
| DCG International | ADDRESS ON FILE | 2/24/2022 | Collateral Returned | USD | 7,207,226.51 | $ 7,207,226.51 |
| Digital Currency Group | ADDRESS ON FILE | 2/24/2022 | Loan Execute | USD | 50,000,000.00 | $ 50,000,000.00 |
| DCG International | ADDRESS ON FILE | 2/25/2022 | Loan Execute | USD | 4,898,093.53 | $ 4,898,093.53 |
| DCG International | ADDRESS ON FILE | 2/26/2022 | Collateral Returned | BTC | 10.64 | $ 416,424.28 |
| DCG International | ADDRESS ON FILE | 2/27/2022 | Collateral Returned | BTC | 5.06 | $ 190,802.94 |
| DCG International | ADDRESS ON FILE | 2/27/2022 | Collateral Returned | ETH | 32.14 | $ 84,134.81 |
| DCG International | ADDRESS ON FILE | 2/28/2022 | Collateral Returned | ETH | 23.62 | $ 69,054.72 |
| DCG International | ADDRESS ON FILE | 2/28/2022 | Loan Execute | USD | 399,523.75 | $ 399,523.75 |
| DCG International | ADDRESS ON FILE | 3/1/2022 | Loan Execute | USD | 16,491,367.24 | $ 16,491,367.24 |
| Foundry Digital LLC | ADDRESS ON FILE | 3/1/2022 | Interest Payment | BTC | 0.06027397 | $ 2,678.08 |
| Foundry Digital LLC | ADDRESS ON FILE | 3/1/2022 | Interest Payment | ZEC | 239.7260274 | $ 28,544.18 |
| DCG International | ADDRESS ON FILE | 3/2/2022 | Borrow Return | DOT | 1,507.26821033 | $ 28,061.48 |
| DCG International | ADDRESS ON FILE | 3/2/2022 | Borrow Return | DOT | 1,643.53931507 | $ 30,598.50 |
| DCG International | ADDRESS ON FILE | 3/2/2022 | Borrow Return | DOT | 1,656.10225942 | $ 30,832.39 |
| DCG International | ADDRESS ON FILE | 3/2/2022 | Borrow Return | DOT | 215,015.00 | $ 4,003,029.72 |
| DCG International | ADDRESS ON FILE | 3/2/2022 | Borrow Return | LUNC | 37,023.759535 | $ 6.14 |
| DCG International | ADDRESS ON FILE | 3/2/2022 | Collateral Returned | LUNC | 22,229.926993 | $ 3.69 |
| DCG International | ADDRESS ON FILE | 3/2/2022 | Loan Execute | USD | 5,082,430.40 | $ 5,082,430.40 |
| Grayscale | ADDRESS ON FILE | 3/2/2022 | Interest Payment | BCH | 2.3891036 | $ 765.54 |
| Grayscale | ADDRESS ON FILE | 3/2/2022 | Interest Payment | ETC | 202.15954875 | $ 5,967.75 |
| Grayscale | ADDRESS ON FILE | 3/2/2022 | Interest Payment | LTC | 9.81139975 | $ 1,082.79 |
| DCG International | ADDRESS ON FILE | 3/3/2022 | Collateral Returned | BTC | 1.79 | $ 76,008.70 |
| DCG International | ADDRESS ON FILE | 3/3/2022 | Collateral Returned | ETH | 30.84 | $ 87,382.06 |

Debtor Name: Genesis Global Capital, LLC

Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider
**SOFA 4 - Rider 4: Affiliate Coin and USD Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|---|---|---|---|---|---|---|
| DCG International | ADDRESS ON FILE | 3/4/2022 | Loan Execute | BTC | 165.20 | $ 6,470,307.45 |
| DCG International | ADDRESS ON FILE | 3/4/2022 | Loan Execute | USD | 2,135,710.00 | $ 2,135,710.00 |
| DCG International | ADDRESS ON FILE | 3/7/2022 | Loan Execute | BTC | 178.20 | $ 6,773,800.77 |
| DCG International | ADDRESS ON FILE | 3/8/2022 | Loan Execute | BTC | 181.00 | $ 7,012,508.34 |
| DCG International | ADDRESS ON FILE | 3/8/2022 | Loan Execute | USD | 5,704,049.25 | $ 5,704,049.25 |
| DCG International | ADDRESS ON FILE | 3/9/2022 | Loan Execute | BTC | 162.43 | $ 6,815,142.11 |
| DCG International | ADDRESS ON FILE | 3/9/2022 | Interest Payment | USD | 8,107.18 | $ 8,107.18 |
| DCG International | ADDRESS ON FILE | 3/9/2022 | Interest Payment | USD | 264,657.54 | $ 264,657.54 |
| DCG International | ADDRESS ON FILE | 3/9/2022 | Interest Payment | USD | 5,754.29 | $ 5,754.29 |
| DCG International | ADDRESS ON FILE | 3/9/2022 | Interest Payment | USD | 10,090.83 | $ 10,090.83 |
| DCG International | ADDRESS ON FILE | 3/9/2022 | Interest Payment | USD | 2,564.08 | $ 2,564.08 |
| DCG International | ADDRESS ON FILE | 3/9/2022 | Interest Payment | USD | 19,249.05 | $ 19,249.05 |
| DCG International | ADDRESS ON FILE | 3/9/2022 | Interest Payment | USD | 4,011.51 | $ 4,011.51 |
| DCG International | ADDRESS ON FILE | 3/9/2022 | Interest Payment | USD | 14,840.09 | $ 14,840.09 |
| DCG International | ADDRESS ON FILE | 3/9/2022 | Interest Payment | USD | 11,083.19 | $ 11,083.19 |
| Digital Currency Group | ADDRESS ON FILE | 3/9/2022 | Interest Payment | ZEC | 78.03945205 | $ 11,043.36 |
| DCG International | ADDRESS ON FILE | 3/10/2022 | Collateral Returned | BTC | 18.80 | $ 741,411.46 |
| DCG International | ADDRESS ON FILE | 3/10/2022 | Loan Execute | BTC | 171.71 | $ 6,771,689.49 |
| DCG International | ADDRESS ON FILE | 3/10/2022 | Loan Execute | USD | 6,150,148.82 | $ 6,150,148.82 |
| DCG International | ADDRESS ON FILE | 3/11/2022 | Loan Execute | BTC | 167.07 | $ 6,472,540.73 |
| DCG International | ADDRESS ON FILE | 3/14/2022 | Loan Execute | BTC | 176.20 | $ 6,991,760.48 |
| DCG International | ADDRESS ON FILE | 3/15/2022 | Loan Execute | BTC | 180.90 | $ 7,109,889.18 |
| DCG International | ADDRESS ON FILE | 3/15/2022 | Loan Execute | USD | 5,113,567.00 | $ 5,113,567.00 |
| DCG International | ADDRESS ON FILE | 3/15/2022 | Loan Execute | USD | 2,000,000.00 | $ 2,000,000.00 |
| DCG International | ADDRESS ON FILE | 3/16/2022 | Loan Execute | BTC | 171.60 | $ 7,057,578.53 |
| DCG International | ADDRESS ON FILE | 3/17/2022 | Loan Execute | BTC | 167.00 | $ 6,838,068.84 |
| DCG International | ADDRESS ON FILE | 3/17/2022 | Collateral Returned | USD | 1,306,760.00 | $ 1,306,760.00 |
| DCG International | ADDRESS ON FILE | 3/18/2022 | Loan Execute | BTC | 83.50 | $ 3,489,967.67 |
| DCG International | ADDRESS ON FILE | 3/21/2022 | Collateral Returned | USD | 4,567,424.88 | $ 4,567,424.88 |
| DCG International | ADDRESS ON FILE | 3/22/2022 | Collateral Returned | USD | 1,704,730.83 | $ 1,704,730.83 |
| DCG International | ADDRESS ON FILE | 3/22/2022 | Loan Execute | USD | 24,199,050.73 | $ 24,199,050.73 |
| Digital Currency Group | ADDRESS ON FILE | 3/23/2022 | Borrow Return | ZEC | 50,865.00 | $ 9,229,962.90 |
| DCG International | ADDRESS ON FILE | 3/24/2022 | Loan Execute | USD | 4,186,904.01 | $ 4,186,904.01 |
| DCG International | ADDRESS ON FILE | 3/25/2022 | Loan Execute | USD | 1,000,000.00 | $ 1,000,000.00 |
| Grayscale | ADDRESS ON FILE | 3/30/2022 | Borrow Return | ETC | 6,862.31566305 | $ 340,782.60 |
| Grayscale | ADDRESS ON FILE | 3/30/2022 | Borrow Return | ETC | 8,929.42670181 | $ 443,435.33 |
| Grayscale | ADDRESS ON FILE | 3/30/2022 | Borrow Return | ETC | 21,855.31645866 | $ 1,085,335.02 |
| Foundry Digital LLC | ADDRESS ON FILE | 4/1/2022 | Interest Payment | BTC | 0.16986301 | $ 7,864.01 |
| Foundry Digital LLC | ADDRESS ON FILE | 4/1/2022 | Interest Payment | ZEC | 265.4109589 | $ 49,406.25 |
| Grayscale | ADDRESS ON FILE | 4/1/2022 | Interest Payment | BCH | 2.64507898 | $ 997.78 |
| Grayscale | ADDRESS ON FILE | 4/1/2022 | Interest Payment | ETC | 209.37953263 | $ 9,880.62 |
| Grayscale | ADDRESS ON FILE | 4/1/2022 | Interest Payment | LTC | 10.86262115 | $ 1,356.63 |
| Foundry Digital LLC | ADDRESS ON FILE | 4/2/2022 | Borrow Return | BTC | 100.00 | $ 4,581,605.00 |
| Digital Currency Group | ADDRESS ON FILE | 4/5/2022 | Non-Loanbook Cash Transfer | USD | 1,620.29 | $ 1,620.29 |
| Digital Currency Group | ADDRESS ON FILE | 4/5/2022 | Interest Payment | ZEC | 61.31671233 | $ 10,156.50 |
| Foundry Digital LLC | ADDRESS ON FILE | 4/5/2022 | Loan Execute | BTC | 30.00 | $ 1,364,994.90 |
| Digital Currency Group | ADDRESS ON FILE | 4/7/2022 | Loan Execute | USD | 25,000,000.00 | $ 25,000,000.00 |
| Digital Currency Group | ADDRESS ON FILE | 4/8/2022 | Borrow Return | USD | 25,000,000.00 | $ 25,000,000.00 |
| Foundry Digital LLC | ADDRESS ON FILE | 4/13/2022 | Loan Execute | BTC | 300.00 | $ 12,343,647.00 |
| DCG International | ADDRESS ON FILE | 4/14/2022 | Borrow Return | SUSHI | 299,222.02274087 | $ 963,292.01 |
| Digital Currency Group | ADDRESS ON FILE | 4/14/2022 | Borrow Return | USD | 75,000,000.00 | $ 75,000,000.00 |
| DCG International | ADDRESS ON FILE | 4/18/2022 | Borrow Return | SUSHI | 743.97725913 | $ 2,449.42 |
| DCG International | ADDRESS ON FILE | 4/18/2022 | Borrow Return | SUSHI | 152,473.743118859 | $ 501,993.76 |
| DCG International | ADDRESS ON FILE | 4/18/2022 | Borrow Return | SUSHI | 269,010.00 | $ 885,669.48 |
| DCG International | ADDRESS ON FILE | 4/18/2022 | Borrow Return | SUSHI | 847,526.256881141 | $ 2,790,335.44 |
| Digital Currency Group | ADDRESS ON FILE | 4/18/2022 | Non-Loanbook Cash Transfer | USD | 23,902,602.00 | $ 23,902,602.00 |
| DCG International | ADDRESS ON FILE | 4/19/2022 | Interest Payment | DOT | 54.20266269 | $ 1,023.55 |
| DCG International | ADDRESS ON FILE | 4/19/2022 | Interest Payment | USD | 83,812.3299999999 | $ 83,812.33 |
| DCG International | ADDRESS ON FILE | 4/19/2022 | Interest Payment | USD | 16,483.60 | $ 16,483.60 |
| DCG International | ADDRESS ON FILE | 4/19/2022 | Interest Payment | USD | 10,629.16 | $ 10,629.16 |
| DCG International | ADDRESS ON FILE | 4/19/2022 | Interest Payment | USD | 2,706.62 | $ 2,706.62 |
| DCG International | ADDRESS ON FILE | 4/19/2022 | Interest Payment | USD | 466.23 | $ 466.23 |
| DCG International | ADDRESS ON FILE | 4/19/2022 | Interest Payment | USD | 4,076.85 | $ 4,076.85 |
| DCG International | ADDRESS ON FILE | 4/19/2022 | Interest Payment | USD | 293,013.70 | $ 293,013.70 |
| DCG International | ADDRESS ON FILE | 4/19/2022 | Interest Payment | USD | 33,039.21 | $ 33,039.21 |
| DCG International | ADDRESS ON FILE | 4/19/2022 | Interest Payment | USD | 17,825.3399999999 | $ 17,825.34 |
| DCG International | ADDRESS ON FILE | 4/20/2022 | Borrow Return | USDC | 5,614,045.26 | $ 5,614,045.26 |
| DCG International | ADDRESS ON FILE | 4/20/2022 | Borrow Return | USDC | 15,000,000.00 | $ 15,000,000.00 |
| Foundry Digital LLC | ADDRESS ON FILE | 5/1/2022 | Interest Payment | BTC | 0.00547945 | $ 210.86 |
| Foundry Digital LLC | ADDRESS ON FILE | 5/1/2022 | Interest Payment | ZEC | 256.84931507 | $ 31,887.84 |
| DCG International | ADDRESS ON FILE | 5/3/2022 | Interest Payment | USD | 85,706.75 | $ 85,706.75 |
| DCG International | ADDRESS ON FILE | 5/3/2022 | Interest Payment | USD | 17,215.54 | $ 17,215.54 |
| DCG International | ADDRESS ON FILE | 5/3/2022 | Interest Payment | USD | 19,084.14 | $ 19,084.14 |
| DCG International | ADDRESS ON FILE | 5/3/2022 | Interest Payment | USD | 2,559.64 | $ 2,559.64 |
| DCG International | ADDRESS ON FILE | 5/3/2022 | Interest Payment | USD | 10,317.10 | $ 10,317.10 |
| DCG International | ADDRESS ON FILE | 5/3/2022 | Interest Payment | USD | 3,925.62 | $ 3,925.62 |
| DCG International | ADDRESS ON FILE | 5/3/2022 | Interest Payment | USD | 179,589.039999999 | $ 179,589.04 |
| DCG International | ADDRESS ON FILE | 5/3/2022 | Interest Payment | USD | 10,031.43 | $ 10,031.43 |
| Grayscale | ADDRESS ON FILE | 5/3/2022 | Interest Payment | BCH | 2.55975386 | $ 715.02 |
| Grayscale | ADDRESS ON FILE | 5/3/2022 | Interest Payment | LTC | 10.51221401 | $ 1,044.39 |
| Digital Currency Group | ADDRESS ON FILE | 5/9/2022 | Loan Execute | USD | 200,000,000.00 | $ 200,000,000.00 |
| Digital Currency Group | ADDRESS ON FILE | 5/11/2022 | Loan Execute | USD | 100,000,000.00 | $ 100,000,000.00 |
| DCG International | ADDRESS ON FILE | 5/12/2022 | Loan Execute | BTC | 208.00 | $ 6,017,315.20 |
| DCG International | ADDRESS ON FILE | 5/17/2022 | Loan Execute | BTC | 231.10 | $ 7,028,541.36 |
| Digital Currency Group | ADDRESS ON FILE | 5/17/2022 | Borrow Return | USD | 54,005,534.28 | $ 54,005,534.28 |

Debtor Name: Genesis Global Capital, LLC                                                                                                                    Case Number:   23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
SOFA Question 4: Payments or other transfers of property made within 1 year before filing this case that benefited any insider
**SOFA 4 - Rider 4: Affiliate Coin and USD Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|---|---|---|---|---|---|---|
| DCG International | ADDRESS ON FILE | 5/18/2022 | Loan Execute | BTC | 249.70 | $ 7,159,555.71 |
| DCG International | ADDRESS ON FILE | 5/19/2022 | Loan Execute | BTC | 148.00 | $ 4,480,365.52 |
| DCG International | ADDRESS ON FILE | 5/24/2022 | Loan Execute | BTC | 231.00 | $ 6,844,160.40 |
| DCG International | ADDRESS ON FILE | 5/31/2022 | Collateral Returned | BTC | 267.29476363 | $ 8,493,050.55 |
| DCG International | ADDRESS ON FILE | 5/31/2022 | Collateral Returned | BTC | 967.26523637 | $ 30,733,982.35 |
| DCG International | ADDRESS ON FILE | 5/31/2022 | Collateral Returned | ETH | 12,635.47 | $ 24,506,999.48 |
| DCG International | ADDRESS ON FILE | 6/1/2022 | Interest Payment | USD | 1,824.66 | $ 1,824.66 |
| DCG International | ADDRESS ON FILE | 6/1/2022 | Interest Payment | USD | 7,875.97 | $ 7,875.97 |
| DCG International | ADDRESS ON FILE | 6/1/2022 | Interest Payment | USD | 12,516.40 | $ 12,516.40 |
| DCG International | ADDRESS ON FILE | 6/1/2022 | Interest Payment | USD | 2,441.64 | $ 2,441.64 |
| DCG International | ADDRESS ON FILE | 6/1/2022 | Interest Payment | USD | 67,470.86 | $ 67,470.86 |
| DCG International | ADDRESS ON FILE | 6/1/2022 | Interest Payment | USD | 6,711.05 | $ 6,711.05 |
| DCG International | ADDRESS ON FILE | 6/1/2022 | Collateral Returned | ZEC | 72,867.06987658 | $ 6,531,804.14 |
| Foundry Digital LLC | ADDRESS ON FILE | 6/1/2022 | Interest Payment | ZEC | 265.4109589 | $ 23,791.44 |
| Digital Currency Group | ADDRESS ON FILE | 6/2/2022 | Interest Payment | USD | 814,591.629999999 | $ 814,591.63 |
| Grayscale | ADDRESS ON FILE | 6/6/2022 | Interest Payment | BCH | 2.64507898 | $ 490.45 |
| Grayscale | ADDRESS ON FILE | 6/6/2022 | Interest Payment | LTC | 10.86262115 | $ 699.23 |
| Digital Currency Group | ADDRESS ON FILE | 6/15/2022 | Non-loanbook Cash Transfer | USD | 384,298.14 | $ 384,298.14 |
| Digital Currency Group | ADDRESS ON FILE | 6/15/2022 | Non-Loanbook Cash Transfer | USD | 10,000,000.00 | $ 10,000,000.00 |
| HQ Cash Management Fund LP | ADDRESS ON FILE | 6/24/2022 | Borrow Return | USD | 99,500,000.00 | $ 99,500,000.00 |
| Digital Currency Group | ADDRESS ON FILE | 7/1/2022 | Interest Payment | USD | 219,178.08 | $ 219,178.08 |
| Foundry Digital LLC | ADDRESS ON FILE | 7/1/2022 | Interest Payment | ZEC | 256.84931507 | $ 13,705.48 |
| Grayscale | ADDRESS ON FILE | 7/5/2022 | Interest Payment | BCH | 2.55975386 | $ 266.09 |
| Grayscale | ADDRESS ON FILE | 7/5/2022 | Interest Payment | LTC | 10.51221401 | $ 522.14 |
| HQ Cash Management Fund LP | ADDRESS ON FILE | 7/14/2022 | Borrow Return | USD | 4,554.79 | $ 4,554.79 |
| HQ Cash Management Fund LP | ADDRESS ON FILE | 7/14/2022 | Borrow Return | USD | 6,742.90 | $ 6,742.90 |
| HQ Cash Management Fund LP | ADDRESS ON FILE | 7/14/2022 | Borrow Return | USD | 7,327.08 | $ 7,327.08 |
| HQ Cash Management Fund LP | ADDRESS ON FILE | 7/14/2022 | Borrow Return | USD | 7,515.47 | $ 7,515.47 |
| HQ Cash Management Fund LP | ADDRESS ON FILE | 7/14/2022 | Borrow Return | USD | 1,000,000.00 | $ 1,000,000.00 |
| HQ Cash Management Fund LP | ADDRESS ON FILE | 7/14/2022 | Borrow Return | USD | 171,187.41 | $ 171,187.41 |
| HQ Cash Management Fund LP | ADDRESS ON FILE | 7/14/2022 | Borrow Return | USD | 478,676.17 | $ 478,676.17 |
| HQ Cash Management Fund LP | ADDRESS ON FILE | 7/14/2022 | Borrow Return | USD | 5,116.86 | $ 5,116.86 |
| Foundry Digital LLC | ADDRESS ON FILE | 7/23/2022 | Loan Execute | BTC | 100.00 | $ 2,245,790.00 |
| DCG International | ADDRESS ON FILE | 7/27/2022 | Interest Payment | USD | 376,408.94 | $ 376,408.94 |
| Digital Currency Group | ADDRESS ON FILE | 8/1/2022 | Interest Payment | USD | 424,657.53 | $ 424,657.53 |
| Foundry Digital LLC | ADDRESS ON FILE | 8/1/2022 | Interest Payment | ZEC | 265.4109589 | $ 16,625.34 |
| DCG International | ADDRESS ON FILE | 8/2/2022 | Interest Payment | USD | 817,550.97 | $ 817,550.97 |
| Grayscale | ADDRESS ON FILE | 8/2/2022 | Interest Payment | BCH | 2.64507898 | $ 354.10 |
| Grayscale | ADDRESS ON FILE | 8/2/2022 | Interest Payment | LTC | 10.86262115 | $ 631.12 |
| Foundry Digital LLC | ADDRESS ON FILE | 8/29/2022 | Non-loanbook Cash Transfer | USD | 588,814.52 | $ 588,814.52 |
| Foundry Digital LLC | ADDRESS ON FILE | 8/30/2022 | Non-loanbook Cash Transfer | USD | 8,800.00 | $ 8,800.00 |
| Digital Currency Group | ADDRESS ON FILE | 8/31/2022 | Non-Loanbook Cash Transfer | USD | 3,721.81 | $ 3,721.81 |
| DCG International | ADDRESS ON FILE | 9/1/2022 | Interest Payment | USD | 182,768.06 | $ 182,768.06 |
| DCG International | ADDRESS ON FILE | 9/1/2022 | Interest Payment | USD | 789,556.72 | $ 789,556.72 |
| DCG International | ADDRESS ON FILE | 9/1/2022 | Interest Payment | USD | 5,560.49 | $ 5,560.49 |
| DCG International | ADDRESS ON FILE | 9/1/2022 | Interest Payment | USD | 4,567.79999999999 | $ 4,567.80 |
| DCG International | ADDRESS ON FILE | 9/1/2022 | Interest Payment | USD | 1,400.64 | $ 1,400.64 |
| DCG International | ADDRESS ON FILE | 9/1/2022 | Interest Payment | USD | 3,318.78 | $ 3,318.78 |
| Foundry Digital LLC | ADDRESS ON FILE | 9/1/2022 | Interest Payment | ZEC | 265.4109589 | $ 15,653.94 |
| Grayscale | ADDRESS ON FILE | 9/2/2022 | Interest Payment | BCH | 2.64507898 | $ 307.89 |
| Grayscale | ADDRESS ON FILE | 9/2/2022 | Interest Payment | LTC | 10.86262115 | $ 662.73 |
| Digital Currency Group | ADDRESS ON FILE | 9/20/2022 | Interest Payment | USD | 424,657.53 | $ 424,657.53 |
| DCG International | ADDRESS ON FILE | 9/29/2022 | Borrow Return | ETH | 75,300.00 | $ 100,581,975.00 |
| Foundry Digital LLC | ADDRESS ON FILE | 10/3/2022 | Interest Payment | ZEC | 256.84931507 | $ 14,347.60 |
| Grayscale | ADDRESS ON FILE | 10/3/2022 | Interest Payment | BCH | 2.55975386 | $ 297.52 |
| Grayscale | ADDRESS ON FILE | 10/3/2022 | Interest Payment | LTC | 10.51221401 | $ 569.66 |
| DCG International | ADDRESS ON FILE | 10/4/2022 | Interest Payment | USD | 795,111.889999999 | $ 795,111.89 |
| Digital Currency Group | ADDRESS ON FILE | 10/4/2022 | Interest Payment | USD | 410,958.90 | $ 410,958.90 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 10/5/2022 | Borrow Return | BTC | 7.00 | $ 141,130.43 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 10/10/2022 | Borrow Return | BTC | 3.00 | $ 57,399.60 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 10/14/2022 | Borrow Return | BTC | 15.00 | $ 287,732.10 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 10/27/2022 | Borrow Return | BTC | 20.00 | $ 405,901.80 |
| DCG International | ADDRESS ON FILE | 11/1/2022 | Interest Payment | USD | 193,898.13 | $ 193,898.13 |
| Foundry Digital LLC | ADDRESS ON FILE | 11/1/2022 | Interest Payment | ZEC | 265.4109589 | $ 13,331.59 |
| Digital Currency Group | ADDRESS ON FILE | 11/3/2022 | Interest Payment | USD | 424,657.53 | $ 424,657.53 |
| Grayscale | ADDRESS ON FILE | 11/4/2022 | Interest Payment | BCH | 2.64507898 | $ 329.26 |
| Grayscale | ADDRESS ON FILE | 11/4/2022 | Interest Payment | BTC | 0.22693817 | $ 4,799.97 |
| Grayscale | ADDRESS ON FILE | 11/4/2022 | Interest Payment | LTC | 10.86262115 | $ 734.42 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 11/4/2022 | Borrow Return | ETH | 70.00 | $ 115,154.20 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 11/8/2022 | Borrow Return | BTC | 8.00 | $ 148,393.36 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 11/8/2022 | Borrow Return | ETH | 70.00 | $ 93,439.50 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 11/9/2022 | Borrow Return | BTC | 70.00 | $ 1,111,637.80 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 11/9/2022 | Borrow Return | ETH | 550.00 | $ 604,538.00 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 11/9/2022 | Borrow Return | USDC | 150,000.00 | $ 150,000.00 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 11/10/2022 | Borrow Return | BTC | 10.00 | $ 175,473.00 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 11/10/2022 | Borrow Return | USDC | 500,000.00 | $ 500,000.00 |
| DCG International | ADDRESS ON FILE | 11/11/2022 | Borrow Return | BTC | 92.00001781 | $ 1,564,480.54 |
| DCG International | ADDRESS ON FILE | 11/11/2022 | Borrow Return | BTC | 776.00 | $ 13,196,050.72 |
| DCG International | ADDRESS ON FILE | 11/11/2022 | Borrow Return | BTC | 1,014.26208316 | $ 17,247,749.86 |
| DCG International | ADDRESS ON FILE | 11/11/2022 | Borrow Return | ETH | 1,500.00028892 | $ 1,927,650.37 |
| DCG International | ADDRESS ON FILE | 11/11/2022 | Borrow Return | ETH | 1,739.01260841 | $ 2,234,805.10 |
| DCG International | ADDRESS ON FILE | 11/11/2022 | Borrow Return | FTM | 7,770,000.00 | $ 1,534,607.63 |
| DCG International | ADDRESS ON FILE | 11/11/2022 | Borrow Return | LPT | 58,000.00 | $ 444,280.00 |
| DCG International | ADDRESS ON FILE | 11/11/2022 | Borrow Return | LPT | 64,000.00 | $ 490,240.00 |
| DCG International | ADDRESS ON FILE | 11/11/2022 | Borrow Return | LTC | 232.00 | $ 14,221.60 |

Debtor Name: Genesis Global Capital, LLC

Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**
**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

**SOFA 4 - Rider 4: Affiliate Coin and USD Transactions**

| Name | Address | Date | Descriptive Purpose | Coin | Coin Quantity | Coin USD |
|------|---------|------|---------------------|------|---------------|----------|
| DCG International | ADDRESS ON FILE | 11/11/2022 | Borrow Return | LTC | 6,808.00289923 | $ 417,330.58 |
| DCG International | ADDRESS ON FILE | 11/11/2022 | Borrow Return | UNI | 125,000.02522457 | $ 760,250.15 |
| Grayscale | ADDRESS ON FILE | 11/11/2022 | Borrow Return | BTC | 34.74897038 | $ 590,913.89 |
| Grayscale | ADDRESS ON FILE | 11/11/2022 | Borrow Return | BTC | 70.25102962 | $ 1,194,634.21 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 11/11/2022 | Borrow Return | BTC | 38.00 | $ 646,198.36 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 11/11/2022 | Borrow Return | ETH | 640.00 | $ 822,464.00 |
| Luno Australia Pty Ltd | ADDRESS ON FILE | 11/11/2022 | Borrow Return | USDC | 400,000.00 | $ 400,000.00 |
| Digital Currency Group | ADDRESS ON FILE | 11/15/2022 | Borrow Return | USD | 50,000,000.00 | $ 50,000,000.00 |

In the year prior to the petition date, the Debtors entered into numerous transactions with Digital Currency Group (DCG) and certain of its subsidiaries including but not limited to lending, borrowing, spot trading, equity contributions from DCG and other related activity.  In aggregate, the outgoing payments and transfers by the Debtors totaled $844.3M for Digital Currency Group, $559.1M for DCG International, $130.9M for Luno Pte Ltd, $5.7M for Luno Australia Pty Ltd, $101.2M for HQ Cash Management Fund LP, $21.4M for Foundry Digital LLC,  and $3.7M for Grayscale and the total incoming payments and transfers totaled $201.7M for DCG, $626.8M for DCG International, $88.7M for Luno Pte Ltd, $3.8M for Luno Australia Pty Ltd, $99.5M for HQ Cash Management Fund LP, $20.8M for Foundry Digital LLC, and $2.2M for Grayscale.

Debtor Name: Genesis Global Capital, LLC

Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 6:** Setoffs

| Creditor Name & Address | Description of Action | Date | Amount |
|---|---|---|---|
| NAME ON FILE<br>ADDRESS ON FILE | BTC Collateral Setoff | 11/16/2022 | 517.9405 BTC |
| NAME ON FILE<br>ADDRESS ON FILE | Digital Coin Loan Setoff | 11/16/2022 | 360,000 ALGO<br>90,000 CRV<br>4,300,000 DOGE<br>28,000 EOS<br>25,000 FIL<br>6,700 FIL<br>6,000 LTC<br>200,000 MANA<br>4,600 UNI<br>17,500,000 USDT |
| NAME ON FILE<br>ADDRESS ON FILE | GBTC Collateral Setoff | 11/16/2022 | 30,905,782 GBTC |
| NAME ON FILE<br>ADDRESS ON FILE | USD Collateral Setoff | 12/1/2022 | 5,625,000 USD |

Debtor Name:  Genesis Global Capital, LLC                                                                    Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| Name(s) redacted v. Genesis Global Capital, LLC | Case Number Redacted | Arbitration | NAME ON FILE ADDRESS ON FILE | Pending |
| Name(s) redacted v. Genesis Global Capital, LLC | Case Number Redacted | Arbitration | NAME ON FILE ADDRESS ON FILE | Pending |
| Name(s) redacted v. Genesis Global Capital, LLC | Case Number Redacted | Arbitration | NAME ON FILE ADDRESS ON FILE | Pending |
| Name(s) redacted v. Genesis Global Capital, LLC | Case Number Redacted | Arbitration | NAME ON FILE ADDRESS ON FILE | Pending |
| Name(s) redacted v. Genesis Global Capital, LLC and Genesis Global Trading Inc. | Case Number Redacted | Arbitration | NAME ON FILE ADDRESS ON FILE | Pending |
| SEC vs. Genesis Global Capital LLC and Gemini Trust Company, LLC | 23-cv-287 | Lawsuit | UNITED STATES DISTRICT COURT - SOUTHERN DISTRICT OF NEW YORK THURGOOD MARSHALL COURTHOUSE 40 FOLEY SQUARE NEW YORK, NY 10007 | Pending |
| Woodrow Levin v. Genesis Global Capital, LLC and Genesis Global Trading, Inc. | 22 CV 7249 | Lawsuit | UNITED STATES DISTRICT COURT 327 S CHURCH ST ROCKFORD, IL 61101 | Pending |

Debtor Name: Genesis Global Capital, LLC

Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**Part 5, Question 10: All losses from fire, theft, or other casualty within 1 year before filing this case**

| Debtor | Description of Property Loss and How the Loss Occurred | Amount of Payments Received For Loss | Date of Loss | Value of Property Lost |
|---|---|---|---|---|
| Genesis Global Capital, LLC | Approximately 1,100 BTC was removed from a Genesis Global Capital, LLC wallet held in Genesis Custody. Insurance claims are being pursued to recover lost amounts. | | 8/20/2022 | 1,100 BTC |

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 11:** Payments related to bankruptcy

| Who was paid or who received the transfer? | Email or website | Who made payment, if not the debtor? | If not money, describe any property transferred | Date | Amount |
|---|---|---|---|---|---|
| ALVAREZ & MARSAL NORTH AMERICA, LLC<br>600 MADISON AVENUE, 8TH FLOOR<br>NEW YORK, NY 10022 | https://www.alvarez andmarsal.com/ | | | 11/16/2022 | $300,000.00 |
| ALVAREZ & MARSAL NORTH AMERICA, LLC<br>600 MADISON AVENUE, 8TH FLOOR<br>NEW YORK, NY 10022 | https://www.alvarez andmarsal.com/ | | | 11/29/2022 | $199,455.00 |
| ALVAREZ & MARSAL NORTH AMERICA, LLC<br>600 MADISON AVENUE, 8TH FLOOR<br>NEW YORK, NY 10022 | https://www.alvarez andmarsal.com/ | | | 12/14/2022 | $493,262.50 |
| ALVAREZ & MARSAL NORTH AMERICA, LLC<br>600 MADISON AVENUE, 8TH FLOOR<br>NEW YORK, NY 10022 | https://www.alvarez andmarsal.com/ | | | 12/22/2022 | $302,713.13 |
| ALVAREZ & MARSAL NORTH AMERICA, LLC<br>600 MADISON AVENUE, 8TH FLOOR<br>NEW YORK, NY 10022 | https://www.alvarez andmarsal.com/ | | | 12/23/2022 | $218,406.35 |
| ALVAREZ & MARSAL NORTH AMERICA, LLC<br>600 MADISON AVENUE, 8TH FLOOR<br>NEW YORK, NY 10022 | https://www.alvarez andmarsal.com/ | | | 01/04/2023 | $229,445.38 |
| ALVAREZ & MARSAL NORTH AMERICA, LLC<br>600 MADISON AVENUE, 8TH FLOOR<br>NEW YORK, NY 10022 | https://www.alvarez andmarsal.com/ | | | 01/11/2023 | $375,782.63 |
| ALVAREZ & MARSAL NORTH AMERICA, LLC<br>600 MADISON AVENUE, 8TH FLOOR<br>NEW YORK, NY 10022 | https://www.alvarez andmarsal.com/ | | | 01/13/2023 | $450,000.00 |
| ALVAREZ & MARSAL NORTH AMERICA, LLC<br>600 MADISON AVENUE, 8TH FLOOR<br>NEW YORK, NY 10022 | https://www.alvarez andmarsal.com/ | | | 01/19/2023 | $244,560.33 |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>ONE LIBERTY PLAZA<br>NEW YORK, NY 10006 | https://www.clearyg ottlieb.com/ | | | 11/16/2022 | $500,000.00 |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>ONE LIBERTY PLAZA<br>NEW YORK, NY 10006 | https://www.clearyg ottlieb.com/ | | | 12/07/2022 | $470,317.76 |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>ONE LIBERTY PLAZA<br>NEW YORK, NY 10006 | https://www.clearyg ottlieb.com/ | | | 12/27/2022 | $468,307.27 |

Debtor Name:  Genesis Global Capital, LLC                                                    Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 11:** Payments related to bankruptcy

| Who was paid or who received the transfer? | Email or website | Who made payment, if not the debtor? | If not money, describe any property transferred | Date | Amount |
|---|---|---|---|---|---|
| CLEARY GOTTLIEB STEEN & HAMILTON LLP ONE LIBERTY PLAZA NEW YORK, NY 10006 | https://www.clearygottlieb.com/ | | | 01/12/2023 | $487,625.09 |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP ONE LIBERTY PLAZA NEW YORK, NY 10006 | https://www.clearygottlieb.com/ | | | 01/12/2023 | $361,392.25 |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP ONE LIBERTY PLAZA NEW YORK, NY 10006 | https://www.clearygottlieb.com/ | | | 01/12/2023 | $652,631.43 |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP ONE LIBERTY PLAZA NEW YORK, NY 10006 | https://www.clearygottlieb.com/ | | | 01/12/2023 | $398,816.50 |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP ONE LIBERTY PLAZA NEW YORK, NY 10006 | https://www.clearygottlieb.com/ | | | 01/19/2023 | $676,574.94 |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP ONE LIBERTY PLAZA NEW YORK, NY 10006 | https://www.clearygottlieb.com/ | | | 01/19/2023 | $255,799.44 |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP ONE LIBERTY PLAZA NEW YORK, NY 10006 | https://www.clearygottlieb.com/ | | | 01/19/2023 | $57,340.50 |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP ONE LIBERTY PLAZA NEW YORK, NY 10006 | https://www.clearygottlieb.com/ | | | 01/19/2023 | $250,000.00 |
| KROLL RESTRUCTURING ADMINISTRATION LLC 55 EAST 52ND STREET, 17 FL NEW YORK, NY 10055 | https://www.kroll.com/en | | | 01/11/2023 | $150,000.00 |
| MOELIS & COMPANY LLC 399 PARK AVENUE, 4TH FLOOR NEW YORK, NY 10022 | https://www.moelis.com/ | | | 11/29/2022 | $700,000.00 |
| MOELIS & COMPANY LLC 399 PARK AVENUE, 4TH FLOOR NEW YORK, NY 10022 | https://www.moelis.com/ | | | 12/22/2022 | $201,837.62 |
| MOELIS & COMPANY LLC 399 PARK AVENUE, 4TH FLOOR NEW YORK, NY 10022 | https://www.moelis.com/ | | | 01/11/2023 | $109,918.85 |
| MOELIS & COMPANY LLC 399 PARK AVENUE, 4TH FLOOR NEW YORK, NY 10022 | https://www.moelis.com/ | | | 01/18/2023 | $200,220.19 |
| MORRISON COHEN LLP 909 THIRD AVENUE NEW YORK, NY 10022-4784 | https://www.morrisoncohen.com/ | | | 02/22/2022 | $16,894.00 |
| MORRISON COHEN LLP 909 THIRD AVENUE NEW YORK, NY 10022-4784 | https://www.morrisoncohen.com/ | | | 04/25/2022 | $68,167.15 |
| MORRISON COHEN LLP 909 THIRD AVENUE NEW YORK, NY 10022-4784 | https://www.morrisoncohen.com/ | | | 07/06/2022 | $93,525.11 |

Debtor Name:  Genesis Global Capital, LLC                                    Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 11:** Payments related to bankruptcy

| Who was paid or who received the transfer? | Email or website | Who made payment, if not the debtor? | If not money, describe any property transferred | Date | Amount |
|---|---|---|---|---|---|
| MORRISON COHEN LLP<br>909 THIRD AVENUE<br>NEW YORK, NY 10022-4784 | https://www.morrisoncohen.com/ | | | 08/01/2022 | $159,618.98 |
| MORRISON COHEN LLP<br>909 THIRD AVENUE<br>NEW YORK, NY 10022-4784 | https://www.morrisoncohen.com/ | | | 09/20/2022 | $88,980.90 |
| MORRISON COHEN LLP<br>909 THIRD AVENUE<br>NEW YORK, NY 10022-4784 | https://www.morrisoncohen.com/ | | | 11/01/2022 | $14,931.85 |
| MORRISON COHEN LLP<br>909 THIRD AVENUE<br>NEW YORK, NY 10022-4784 | https://www.morrisoncohen.com/ | | | 12/14/2022 | $81,882.45 |
| MORRISON COHEN LLP<br>909 THIRD AVENUE<br>NEW YORK, NY 10022-4784 | https://www.morrisoncohen.com/ | | | 01/11/2023 | $155,936.40 |
| MORRISON COHEN LLP<br>909 THIRD AVENUE<br>NEW YORK, NY 10022-4784 | https://www.morrisoncohen.com/ | | | 01/19/2023 | $52,166.25 |

Debtor Name: Genesis Global Capital, LLC                                                      Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**Part 8, Question 16: Does the debtor collect and retain personally identifiable information of customers?**

| Debtor | Nature of the Information Collected and Retained | Does the Debtor have a Privacy Policy? |
|---|---|---|
| Genesis Global Capital, LLC | Address, Asset Types, Bank, Browser, Contact Information, Cookies, Correspondence, Criminal Convictions, Date of Birth, Device Hard Drive, Device Hardware, Device Location Services, Device Operating System, Device Type, Device-Specific Information, Domain Name, Driver's License, Flash Cookies, Government-Issued ID, Health Information, Internal and External Information related to Genesis Pages, IP Address, Location Information, Message Authentication Code, Name, Passport, Pixel Tags, Proof of Net Worth, Quoted Prices of Trades, Relationship Status, Social Security Number, Statements, System Activity, Tax Documents, Transaction Amounts, Wallet Addresses | Yes |

Note: The Debtors may not have every type of information listed above for each user.

Debtor Name:  Genesis Global Capital, LLC                                    Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 25:** Other businesses in which the debtor has or has had an interest

| Business Name and Address | Nature of Business Operation | EIN | Existed From | Existed To |
|---|---|---|---|---|
| GGC INTERNATIONAL LIMITED WOODBOURNE HALL, ROMASCO PLACE WICKHAMS CAY I, PO BOX 3162 ROAD TOWN, TORTOLA, VIRGIN ISLANDS | Genesis Entity | 1992477 | 9/14/2018 | 11/11/2022 |
| GSB 2022 I LLC 920 N. KING STREET 2ND FLOOR WILMINGTON, DE 19801 | Genesis Entity | N/A | 3/3/2022 | Present |
| GSB 2022 II LLC 920 N. KING STREET 2ND FLOOR WILMINGTON, DE 19801 | Genesis Entity | N/A | 3/3/2022 | Present |
| GSB 2022 III LLC 920 N. KING STREET 2ND FLOOR WILMINGTON, DE 19801 | Genesis Entity | N/A | 3/3/2022 | Present |

Debtor Name:  Genesis Global Capital, LLC                          Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26a:** List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

| Name and Address | From | To |
|---|---|---|
| CERTAIN EMPLOYEES AT PARENT CORPORATION | 01/19/2021 | Present |
| BEVAUN, MARLON<br>ADDRESS ON FILE | 01/19/2021 | 03/31/2022 |
| CHAN, ALICE<br>ADDRESS ON FILE | 07/06/2021 | Present |
| MCMAHON, RYAN<br>ADDRESS ON FILE | 01/19/2021 | Present |

Debtor Name:  Genesis Global Capital, LLC                                                                      Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26b:** List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

| Name and Address | From | To |
|---|---|---|
| BEVAUN, MARLON<br>ADDRESS ON FILE | 01/19/2021 | 03/31/2022 |
| CHAN, ALICE<br>ADDRESS ON FILE | 07/06/2021 | Present |
| FRIEDMAN LLP<br>ONE LIBERTY PLAZA<br>FLOOR 21<br>NEW YORK, NY 10006 | 01/01/2020 | 12/31/2021 |
| MCMAHON, RYAN<br>ADDRESS ON FILE | 01/19/2021 | Present |

Debtor Name: Genesis Global Capital, LLC                                                                    Case Number: 23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26c:** Firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

| Name and Address | If unavailable, why? |
|---|---|
| CERTAIN EMPLOYEES AT PARENT CORPORATION | |
| CHAN, ALICE<br>ADDRESS ON FILE | |
| MCMAHON, RYAN<br>ADDRESS ON FILE | |

Debtor Name:  Genesis Global Capital, LLC                                                        Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26d:** List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issues a financial statement within 2 years before filing this case.

| Name and Address |
|---|
| |

In the ordinary course of business, the Debtors provide financial statements to certain parties, such as financial institutions, investment banks, auditors, potential investors, vendors and financial advisors. The Debtors do not maintain complete lists to track such disclosures and, as such, the Debtors have not provided a listing of these parties in response to this question.

Debtor Name:  Genesis Global Capital, LLC                                                          Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 28:** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position | % Interest |
|------|---------|----------|-----------|
| A. DERAR ISLIM | ADDRESS ON FILE | CHIEF OPERATING OFFICER, INTERIM CHIEF EXECUTIVE OFFICER | N/A |
| ALICE CHAN | ADDRESS ON FILE | CHIEF FINANCIAL OFFICER | N/A |
| ANDREW SULLIVAN | ADDRESS ON FILE | GENERAL COUNSEL, LENDING | N/A |
| ARIANNA PRETTO-SAKMANN | ADDRESS ON FILE | CHIEF LEGAL OFFICER | N/A |
| BARRY SILBERT | ADDRESS ON FILE | CEO OF DIGITAL CURRENCY GROUP | N/A |
| GENESIS GLOBAL HOLDCO, LLC | 250 PARK AVE S 5TH FLOOR NEW YORK, NY 10003 | SOLE MEMBER | 100 |

Page 1 of 1

Debtor Name:  Genesis Global Capital, LLC                                                          Case Number:  23-10064

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 29:** Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

| Name | Address | Position | Start | End |
|------|---------|----------|-------|-----|
| KRISTOPHER JOHNSON | ADDRESS ON FILE | FORMER SENIOR RISK MANAGER | 01/19/2022 | 01/20/2022 |
| MATTHEW BALLENSWEIG | ADDRESS ON FILE | FORMER CO-HEAD OF TRADING AND LENDING | 01/19/2022 | 09/2022 |
| MICHAEL PALEOKRASSAS | ADDRESS ON FILE | FORMER CO-HEAD OF TRADING AND LENDING | 01/19/2022 | 09/2022 |
| MICHAEL PATCHEN | ADDRESS ON FILE | FORMER CHIEF RISK OFFICER | 01/19/2022 | 10/2022 |
| SOICHIRO MICHAEL MORO | ADDRESS ON FILE | FORMER CHIEF EXECUTIVE OFFICER | 01/19/2022 | 08/15/2022 |

**<u>Exhibit D</u>**

**IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

Case No.: HC/OA 400/2023

Filed: 20-April-2023 04:13 PM
Hearing Date/Time: For
determination by Judge /
Registrar. Solicitor(s)/ parties
need not attend unless
specifically directed to do so.

In the matter of Part 11 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Section 252 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency

And

In the matter of the Appointment of Foreign Representative in the United States Bankruptcy Court in the Southern District of New York in Case No. 23-10063 (Genesis Global Holdco, LLC, a New York Corporation (EIN 38-4058219)), jointly administered with Case No. 23-10064 (Genesis Global Capital, LLC, a New York Corporation (EIN 37-1878564)) and Case No. 23-10065 (Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R)) on 26 January 2023

And

In the matter of GENESIS ASIA PACIFIC PTE. LTD. (Singapore UEN No. 202002164R)

1.  GENESIS ASIA PACIFIC PTE. LTD.
    (Singapore UEN No. 202002164R)
    (in its capacity as foreign representative of Genesis Asia Pacific Pte. Ltd.)

2.  GENESIS ASIA PACIFIC PTE. LTD.
    (Singapore UEN No. 202002164R)

...Applicant(s)

**ORIGINATING APPLICATION (WITHOUT NOTICE)**

1. The Applicants are applying to Court for the following orders:

   a. That the proceedings of Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R) ("**GAP**") in Case No. 23-10065, consolidated for procedural purposes only by the Order Directing Joint Administration of Related Chapter 11 Cases (ECF No. 37) dated 26 January 2023 under Case No. 23-10063 in relation to Genesis Global Holdco, LLC (EIN 38-4058219), Genesis Global Capital, LLC (EIN 37-1878564) and GAP filed under Chapter 11, Title 11 of the United States Bankruptcy Code with the Bankruptcy Court for the Southern District of New York (these cases collectively, the "**Chapter 11 Proceedings**") be recognised by the Singapore Courts and in Singapore as a foreign main proceeding within the meaning of Article 2(f) of the UNCITRAL Model Law on Cross Border Insolvency as adopted in Singapore by way of Section 252 and the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**Model Law**"), and that GAP be immediately entitled to relief pursuant to Article 20 of the Model Law.

   b. Alternatively to prayer 1(a) above, that the Chapter 11 Proceedings with respect to GAP be recognised by the Singapore High Court and in Singapore as a foreign non-main proceeding within the meaning of Article 2(g) of the Model Law.

   c. That GAP's appointment as the foreign representative of GAP pursuant to the order in the Chapter 11 Proceedings granted by the United States Bankruptcy Court for the Southern District of New York on 26 January 2023 is recognised by the Singapore Courts and in Singapore as a foreign representative within the meaning of Article 2(i) of the Model Law.

   d. That so long as the Chapter 11 Proceedings with respect to GAP, including any extensions thereto are in force, except with leave of the Court:

      (i) The commencement or continuation of individual actions or individual proceedings concerning GAP's property, rights, obligations or liabilities, and all orders made thereunder, be stayed in accordance with Article 21(1)(a) of the Model Law;

      (ii) Execution, distress or other legal process against GAP's property be stayed in accordance with Article 21(1)(b) of the Model Law and section 96(4)(d) / section 64(8)(d) of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**IRDA**"); and

      (iii) The right to transfer, encumber or otherwise dispose of any property of GAP (save for any such right by GAP to so transfer, encumber or otherwise dispose its own property) be suspended in accordance with Article 21(1)(c) of the Model Law;

      (iv) No order may be made, and no resolution may be passed, for the winding up of GAP in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(a) / section 64(8)(a) of the IRDA;

(v)  No receiver or manager may be appointed over any property or undertaking of GAP in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(b) / section 64(8)(b) of the IRDA;

(vi)  No other proceedings may be commenced or continued against GAP in accordance with Article 21(1)(g) of the Model Law and section 96(4)(c) / section 64(8)(c) of the IRDA;

(vii)  No step may be taken to enforce any security over any property of GAP in Singapore, or to repossess any goods held by GAP in Singapore under any chattels leasing agreement, hire-purchase agreement or retention of title agreement in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(e) / section 64(8)(e) of the IRDA;

(viii)  Despite sections 18 and 18A of the Conveyancing and Law of Property Act 1886, no right of re-entry or forfeiture under any lease in respect of any premises occupied by GAP may be enforced in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(f) / section 64(8)(f) of the IRDA;

(ix)  No person may, in relation to any agreement, claim or asset located in Singapore or governed by the laws of Singapore without the prior written consent of GAP or permission of this Court:

    i.  t erminate or amend, or claim an accelerated payment or forfeiture of the term under, any agreement (including a security agreement) with GAP, or

    ii.  terminate or modify any right or obligation under any agreement (including a security agreement) with GAP,

by reason only that the proceedings herein and in the Chapter 11 Proceedings with respect to GAP are commenced or that GAP is insolvent, save that nothing in this paragraph 1(d)(ix) is to be construed as:

    (1) prohibiting a person from requiring payments to be made in cash for goods, services, use of leased property or other valuable consideration provided after the commencement of the proceedings; or

    (2) requiring the further advance of money or credit.

(x)  That GAP is authorised to transfer, encumber or otherwise dispose of any property of GAP, and any suspension of such rights under Article 20(1)(c) of the Model Law be disapplied.

(xi)  that GAP as foreign representative is entrusted with the administration, realisation, and distribution of all or any part of the property and assets (and any proceeds thereof) of GAP located in Singapore, in accordance with Articles 21(1)(e) and 21(2) of the Model Law, including without limitation, any electronic or other assets from the premises in Singapore where GAP or its agents or affiliates engaged in any business or activities, including the premises at 1 Raffles Quay, #45-03, Singapore 048583.

e.    Liberty for the Applicants to apply.

f.     Costs of and incidental to this Originating Application to be paid out of GAP's assets.

g.    Such further and/or other relief as this Honourable Court deems fit.

2.    The evidence supporting this originating application is stated in the accompanying affidavit of Ahmed Derar Islim.

We certify that this is an application (without notice).
Certified by:
Solicitors for the Applicants
ALLEN & GLEDHILL LLP

Issued by :

Solicitors for the 1st and 2nd Applicants

Allen & Gledhill LLP
ONE MARINA BOULEVARD #28-00 SINGAPORE 018989
Tel No.: 68907188
Fax No.: 63273800
Email: enquiries@allenandgledhill.com
File Ref No.: 1022011034/JOTAY/AYEOHT/YEOHTN
Solicitor in charge: 1. TAY YU XI (ZHENG YUXI),

2. YEO ALEXANDER LAWRENCE, HAN TIONG,
3. YEOH TZE NING

TAN BOON HENG
REGISTRAR
SUPREME COURT
SINGAPORE

**Exhibit E**

**IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

Case No.: HC/OA 400/2023

Filed: 25-May-2023 10:04 AM

In the matter of Part 11 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Section 252 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency

And

In the matter of the Appointment of Foreign Representative in the United States Bankruptcy Court in the Southern District of New York in Case No. 23-10063 (Genesis Global Holdco, LLC (EIN 38-4058219)), jointly administered with Case No. 23-10064 (Genesis Global Capital, LLC (EIN 37-1878564)) and Case No. 23-10065 (Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R)) on 26 January 2023

And

In the matter of GENESIS ASIA PACIFIC PTE. LTD. (Singapore UEN No. 202002164R)

1.   GENESIS ASIA PACIFIC PTE. LTD.
     (Singapore UEN No. 202002164R)
     (in its capacity as foreign representative of Genesis Asia Pacific Pte. Ltd.)

2.   GENESIS ASIA PACIFIC PTE. LTD.
     (Singapore UEN No. 202002164R)

...Applicant(s)

**ORIGINATING APPLICATION (WITHOUT NOTICE)**

(Amendment No. 1, By Order of Court made on 19 May 2023)

1.   The Applicant is applying to the Court for the following orders:

a.   That the proceedings of Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R) ("**GAP**") in Case No. 2310065, consolidated for procedural purposes only by the Order Directing Joint Administration of Related Chapter 11 Cases (ECF No. 37) dated 26 January 2023 under Case No. 2310063 in relation to Genesis Global Holdco, LLC (EIN 38-4058219), Genesis Global Capital, LLC (EIN 37-1878564) and GAP filed under Chapter 11, Title 11 of the United States Bankruptcy Code with the Bankruptcy Court for the Southern District of New York (these cases collectively, the "**Chapter 11 Proceedings**") be recognised by the Singapore Courts and in Singapore as a foreign main proceeding within the meaning of Article 2(f) of the UNCITRAL Model Law on Cross Border Insolvency as adopted in Singapore by way of Section 252 and the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**Model Law**"), and that GAP be immediately entitled to relief pursuant to Article 20 of the Model Law.

b.   Alternatively to prayer 1(a) above, that the Chapter 11 Proceedings with respect to GAP be recognised by the Singapore High Court and in Singapore as a foreign non-main proceeding within the meaning of Article 2(g) of the Model Law.

c.   That GAP's appointment as the foreign representative of GAP pursuant to the order in the Chapter 11 Proceedings granted by the United States Bankruptcy Court for the Southern District of New York on 26 January 2023 is recognised by the Singapore Courts and in Singapore as a foreign representative within the meaning of Article 2(i) of the Model Law.

d.   That so long as the Chapter 11 Proceedings with respect to GAP, including any extensions thereto are in force, except with leave of the Court

(i)   The commencement or continuation of individual actions or individual proceedings concerning GAP's property, rights, obligations or liabilities, and all orders made thereunder, be stayed in accordance with Article 21(1)(a) of the Model Law;

(ii)   Execution, distress or other legal process against GAP's property be stayed in accordance with Article 21(1)(b) of the Model Law and section 96(4)(d) / section 64(8) (d) of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**IRDA**");

(iii)   The right to transfer, encumber or otherwise dispose of any property of GAP (save for any such right by GAP to so transfer, encumber or otherwise dispose its own property) be suspended in accordance with Article 21(1)(c) of the Model Law;

(iv)   No order may be made, and no resolution may be passed, for the winding up of GAP in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96 (4)(a) / section 64(8)(a) of the IRDA;

(v)   No receiver or manager may be appointed over any property or undertaking of GAP in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96 (4)(b) / section 64(8)(b) of the IRDA;

(vi)    No other proceedings may be commenced or continued against GAP in accordance with Article 21(1)(g) of the Model Law and section 96(4)(c) / section 64(8)(c) of the IRDA;

(vii)    No step may be taken to enforce any security over any property of GAP in Singapore, or to repossess any goods held by GAP in Singapore under any chattels leasing agreement, hire-purchase agreement or retention of title agreement in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(e) / section 64(8)(e) of the IRDA;

(viii)    Despite sections 18 and 18A of the Conveyancing and Law of Property Act 1886, no right of re-entry or forfeiture under any lease in respect of any premises occupied by GAP may be enforced in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(f) / section 64(8)(f) of the IRDA;

(ix)    No person may, in relation to any agreement, claim or asset located in Singapore or governed by the laws of Singapore without the prior written consent of GAP or permission of this Court:

i.  terminate or amend, or claim an accelerated payment or forfeiture of the term under, any agreement (including a security agreement) with GAP, or

ii.  terminate or modify any right or obligation under any agreement (including a security agreement) with GAP,

by reason only that the proceedings herein and in the Chapter 11 Proceedings with respect to GAP are commenced or that GAP is insolvent, save that nothing in this paragraph 1(d)(ix) is to be construed as:

(1) prohibiting a person from requiring payments to be made in cash for goods, services, use of leased property or other valuable consideration provided after the commencement of the proceedings; or

(2) requiring the further advance of money or credit.

(x)    That GAP is authorised to transfer, encumber or otherwise dispose of any property of GAP, and any suspension of such rights under Article 20(1)(c) of the Model Law be disapplied.

(xi)    that GAP as foreign representative is entrusted with the administration, realisation, and distribution of all or any part of the property and assets (and any proceeds thereof) of GAP located in Singapore, in accordance with Articles 21(1)(e) and 21(2) of the Model Law, including without limitation, any electronic or other assets from the premises in Singapore where GAP or its agents or affiliates engaged in any business or activities, including the premises at 1 Raffles Quay, #45-03, Singapore 048583.

    e.    Liberty for the Applicants to apply.

    f.    Costs of and incidental to this Originating Application to be paid out of GAP's assets.

    g.    Such further and/or other relief as this Honourable Court deems fit.

2.    The evidence supporting this originating application is stated in the accompanying affidavit of Ahmed Derar Islim.

We certify that this is an application (without notice).
Certified by:
Solicitors for the Applicants
ALLEN & GLEDHILL LLP

Issued by :

Solicitors for the 1st and 2nd Applicants

Allen & Gledhill LLP
ONE MARINA BOULEVARD #28-00 SINGAPORE 018989
Tel No.: 68907188
Fax No.: 63273800
Email: enquiries@allenandgledhill.com
File Ref No.: 1022011034/JOTAY/AYEOHT/YEOHTN
Solicitor in charge: 1. TAY YU XI (ZHENG YUXI),
2. YEO ALEXANDER LAWRENCE, HAN TIONG,
3. YEOH TZE NING

TAN BOON HENG
REGISTRAR
SUPREME COURT
SINGAPORE

**Exhibit F**

**IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

**Case No.: HC/OA 400/2023**

Date: 22-May-2023

In the matter of Part 11 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Section 252 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency

And

In the matter of the Appointment of Foreign Representative in the United States Bankruptcy Court in the Southern District of New York in Case No. 23-10063 (Genesis Global Holdco, LLC, a New York Corporation (EIN 38-4058219)), jointly administered with Case No. 23-10064 (Genesis Global Capital, LLC, a New York Corporation (EIN 37-1878564)) and Case No. 23-10065 (Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R)) on 26 January 2023

And

In the matter of GENESIS ASIA PACIFIC PTE. LTD. (Singapore UEN No. 202002164R)

1. GENESIS ASIA PACIFIC PTE. LTD. (Singapore UEN No. 202002164R)

   (in its capacity as foreign representative of Genesis Asia Pacific Pte. Ltd.)

2. GENESIS ASIA PACIFIC PTE. LTD. (Singapore UEN No. 202002164R)

...Applicant(s)

To:

Allen & Gledhill LLP
ONE MARINA BOULEVARD #28-00 SINGAPORE 018989
Tel No: 68907188
Fax No: 63273800
File Ref No: 1022011034/JOTAY/AYEOHT/YEOHTN
Solicitor in charge: 1. TAY YU XI (ZHENG YUXI)

2. YEO ALEXANDER LAWRENCE, HAN TIONG
3. YEOH TZE NING

## REGISTRAR'S NOTICE - HEARING DATE FIXED

The following hearing has been fixed:
Case No: HC/OA 400/2023
Type of hearing: OA & Summons
Date/Time of hearing: 06-July-2023 at 10:00 AM (before Judge)
Venue of Hearing: CHAMBER 3C

**By 30 June 4pm :**

     1. **Submissions and Bundle Of Authorities – exchanged, e-filed and tendered to Court.**
     2. **Attendance list**
     3. **Time bank**

**FRCC for all the 3 OAs on 28 June 9.30 am. Attendance list by 26 June 4pm. If there are no reply filed, then please also write in by 26 June to update and the RCC may be vacated.**

CHAN YAN NEE
FOR REGISTRAR
SUPREME COURT
SINGAPORE

Tel No: 63321279
Email: SUPCT_Registry@judiciary.gov.sg

A subscriber of eLitigation will receive notices and communications from the Court by eLitigation, and may also receive the same notices and communications from the Court by other means. A person who is not a subscriber of eLitigation will receive notices and communications from the Court by email and/or post. For any response or query relating to any matter arising from the contents of any such notice or communication, please comply with the requirement in the applicable practice directions that all correspondence to the Court must be copied to all other parties or to their solicitors unless there are good reasons for not so doing.

This is computer-generated and requires no signature.

**Exhibit G**

# IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

Case No.: HC/OA 402/2023

Filed: 20-April-2023 04:32 PM
Hearing Date/Time: For
determination by Judge /
Registrar. Solicitor(s)/ parties
need not attend unless
specifically directed to do so.



In the matter of Part 11 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Section 252 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency

And

In the matter of the Appointment of Foreign Representative in the United States Bankruptcy Court in the Southern District of New York in Case No. 23-10063 (Genesis Global Holdco, LLC, a New York Corporation (EIN 38-4054219)), jointly administered with Case No. 23-10064 (Genesis Global Capital, LLC, a New York Corporation (EIN 37-1878564)) and Case No. 23-10065 (Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R)) on 26 January 2023

And

In the matter of GENESIS GLOBAL HOLDCO, LLC (United States Registration No. 38-4058219)

1.  GENESIS ASIA PACIFIC PTE. LTD.
    (Singapore UEN No. 202002164R)
    (in its capacity as foreign representative of Genesis Global Holdco, LLC)

2.  GENESIS GLOBAL HOLDCO, LLC
    (United States Registration No. 38-4058219)

                                              ...Applicant(s)

## ORIGINATING APPLICATION (WITHOUT NOTICE)

1. The Applicants are applying to Court for the following orders:

   a. That the proceedings of Genesis Global Holdco, LLC (EIN 38-4058219) ("**Holdco**") in Case No. 23-10063, consolidated for procedural purposes only by the Order Directing Joint Administration of Related Chapter 11 Cases (ECF No. 37) dated 26 January 2023 under Case No. 23-10063 in relation to Holdco, Genesis Global Capital, LLC (EIN 37-1878564) and Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R) filed under Chapter 11, Title 11 of the United States Bankruptcy Code with the Bankruptcy Court for the Southern District of New York (these cases collectively, the (the "**Chapter 11 Proceedings**") be recognised by the Singapore Courts and in Singapore as a foreign main proceeding within the meaning of Article 2(f) of the UNCITRAL Model Law on Cross Border Insolvency as adopted in Singapore by way of Section 252 and the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**Model Law**"), and that Holdco be immediately entitled to relief pursuant to Article 20 of the Model Law.

   b. Alternatively to prayer 1(a) above, that the Chapter 11 Proceedings with respect to Holdco be recognised by the Singapore High Court and in Singapore as a foreign non-main proceeding within the meaning of Article 2(g) of the Model Law.

   c. That GAP's appointment as the foreign representative of Holdco pursuant to the order in the Chapter 11 Proceedings granted by the United States Bankruptcy Court for the Southern District of New York on 26 January 2023 is recognised by the Singapore Courts and in Singapore as a foreign representative within the meaning of Article 2(i) of the Model Law.

   d. That so long as the Chapter 11 Proceedings with respect to Holdco, including any extensions thereto are in force, except with leave of the Court:

      (i) The commencement or continuation of individual actions or individual proceedings concerning Holdco's property, rights, obligations or liabilities, and all orders made thereunder, be stayed in accordance with Article 21(1)(a) of the Model Law;

      (ii) Execution, distress or other legal process against Holdco's property be stayed in accordance with Article 21(1)(b) of the Model Law and section 96(4)(d) / section 64(8)(d) of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**IRDA**");

      (iii) The right to transfer, encumber or otherwise dispose of any property of Holdco (save for any such right by Holdco to so transfer, encumber or otherwise dispose its own property) be suspended in accordance with Article 21(1)(c) of the Model Law;

      (iv) No order may be made, and no resolution may be passed, for the winding up of Holdco in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(a) / section 64(8)(a) of the IRDA;

(v)  No receiver or manager may be appointed over any property or undertaking of Holdco in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(b) / section 64(8)(b) of the IRDA;

(vi)  No other proceedings may be commenced or continued against Holdco in accordance with Article 21(1)(g) of the Model Law and section 96(4)(c) / section 64(8)(c) of the IRDA;

(vii)  No step may be taken to enforce any security over any property of Holdco in Singapore, or to repossess any goods under any chattels leasing agreement, hire-purchase agreement or retention of title agreement in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(e) / section 64(8)(e) of the IRDA;

(viii)  Despite sections 18 and 18A of the Conveyancing and Law of Property Act 1886, no right of re-entry or forfeiture under any lease in respect of any premises occupied by Holdco may be enforced in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(f) / section 64(8)(f) of the IRDA;

(ix)  No person may, in relation to any agreement, claim or asset located in Singapore or governed by the laws of Singapore without the prior written consent of Holdco or permission of this Court:

    i.  terminate or amend, or claim an accelerated payment or forfeiture of the term under, any agreement (including a security agreement) with Holdco, or

    ii.  terminate or modify any right or obligation under any agreement (including a security agreement) with Holdco,

by reason only that the proceedings herein and in the Chapter 11 Proceedings with respect to Holdco are commenced or that Holdco is insolvent, save that nothing in this paragraph 1(d)(ix) is to be construed as:

    (1) prohibiting a person from requiring payments to be made in cash for goods, services, use of leased property or other valuable consideration provided after the commencement of the proceedings; or

    (2) requiring the further advance of money or credit.

(x)  That Holdco is authorised to transfer, encumber or otherwise dispose of any

property of Holdco, and any suspension of such rights under Article 20(1)(c) of the Model Law be disapplied.

(xi)  that GAP as foreign representative is entrusted with the administration, realisation, and distribution of all or any part of the property and assets (and any proceeds thereof) of Holdco located in Singapore, in accordance with Articles 21(1)(e) and 21(2) of the Model Law.

e.    Liberty for the Applicants to apply.

f.    Costs of and incidental to this Originating Application to be paid out of Holdco's assets.

g.    Such further and/or other relief as this Honourable Court deems fit.

2.    The evidence supporting this originating application is stated in the accompanying affidavit of Ahmed Derar Islim.

We certify that this is an application (without notice).
Certified by:
Solicitors for the Applicants
ALLEN & GLEDHILL LLP

Issued by :

Solicitors for the 1st and 2nd Applicants

Allen & Gledhill LLP
ONE MARINA BOULEVARD #28-00 SINGAPORE 018989
Tel No.: 68907188
Fax No.: 63273800
Email: enquiries@allenandgledhill.com
File Ref No.: 1022011034/JOTAY/AYEOHT/YEOHTN
Solicitor in charge: 1. TAY YU XI (ZHENG YUXI),
2. YEO ALEXANDER LAWRENCE, HAN TIONG,
3. YEOH TZE NING

HC/OA402/2023:HC/OA402/2023:HC/OA402/2023:HC/OA402/2023:HC/OA402/2023:HC/OA402/2023:HC/OA402/2023

TAN BOON HENG
REGISTRAR
SUPREME COURT
SINGAPORE

**Exhibit H**

**IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

Case No.: HC/OA 402/2023

Filed: 25-May-2023 09:47 AM

In the matter of Part 11 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Section 252 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency

And

In the matter of the Appointment of Foreign Representative in the United States Bankruptcy Court in the Southern District of New York in Case No. 23-10063 (Genesis Global Holdco, LLC (EIN 38-4058219)), jointly administered with Case No. 23-10064 (Genesis Global Capital, LLC (EIN 37-1878564)) and Case No. 23-10065 (Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R)) on 26 January 2023

And

In the matter of GENESIS GLOBAL HOLDCO, LLC (United States Registration No. 38-4058219)

1.  GENESIS ASIA PACIFIC PTE. LTD.
    (Singapore UEN No. 202002164R)
    (in its capacity as foreign representative of Genesis Global Holdco, LLC)

2.  GENESIS GLOBAL HOLDCO, LLC
    (United States Registration No. 38-4058219)

...Applicant(s)

**ORIGINATING APPLICATION (WITHOUT NOTICE)**

(Amendment No. 1, By Order of Court made on 19 May 2023)

1.    The Applicant is applying to the Court for the following orders:

a.   That the proceedings of Genesis Global Holdco, LLC (EIN 38-4058219) ("**Holdco**") in Case No. 23-10063, consolidated for procedural purposes only by the Order Directing Joint Administration of Related Chapter 11 Cases (ECF No. 37) dated 26 January 2023 under Case No. 23-10063 in relation to Holdco, Genesis Global Capital, LLC (EIN 37-1878564) and Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R) filed under Chapter 11, Title 11 of the United States Bankruptcy Code with the Bankruptcy Court for the Southern District of New York  (these cases collectively, the "**Chapter 11 Proceedings**") be recognised by the Singapore Courts and in Singapore as a foreign main proceeding within the meaning of Article 2(f) of the UNCITRAL Model Law on Cross Border Insolvency as adopted in Singapore by way of Section 252 and the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**Model Law**"), and that Holdco be immediately entitled to relief pursuant to Article 20 of the Model Law.

b.   Alternatively to prayer 1(a) above, that the Chapter 11 Proceedings with respect to Holdco be recognised by the Singapore High Court and in Singapore as a foreign non-main proceeding within the meaning of Article 2(g) of the Model Law.

c.   That GAP's appointment as the foreign representative of Holdco pursuant to the order in the Chapter 11 Proceedings granted by the United States Bankruptcy Court for the Southern District of New York on 26 January 2023 is recognised by the Singapore Courts and in Singapore as a foreign representative within the meaning of Article 2(i) of the Model Law.

d.   That so long as the Chapter 11 Proceedings with respect to Holdco, including any extensions thereto are in force, except with leave of the Court:

(i)   The commencement or continuation of individual actions or individual proceedings concerning Holdco's property, rights, obligations or liabilities, and all orders made thereunder, be stayed in accordance with Article 21(1)(a) of the Model Law;

(ii)   Execution, distress or other legal process against Holdco's property be stayed in accordance with Article 21(1)(b) of the Model Law and section 96(4)(d) / section 64(8)(d) of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**IRDA**");

(iii)   The right to transfer, encumber or otherwise dispose of any property of Holdco (save for any such right by Holdco to so transfer, encumber or otherwise dispose its own property) be suspended in accordance with Article 21(1)(c) of the Model Law;

(iv)   No order may be made, and no resolution may be passed, for the winding up of Holdco in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(a) / section 64(8)(a) of the IRDA;

(v)   No receiver or manager may be appointed over any property or undertaking of Holdco in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(b) / section 64(8)(b) of the IRDA;

(vi)    No other proceedings may be commenced or continued against Holdco in accordance with Article 21(1)(g) of the Model Law and section 96(4)(c) / section 64(8)(c) of the IRDA;

(vii)    No step may be taken to enforce any security over any property of Holdco in Singapore, or to repossess any goods under any chattels leasing agreement, hire-purchase agreement or retention of title agreement in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(e) / section 64(8)(e) of the IRDA;

(viii)  Despite sections 18 and 18A of the Conveyancing and Law of Property Act 1886, no right of re-entry or forfeiture under any lease in respect of any premises occupied by Holdco may be enforced in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(f) / section 64(8)(f) of the IRDA;

(ix)    No person may, in relation to any agreement, claim or asset located in Singapore or governed by the laws of Singapore without the prior written consent of Holdco or permission of this Court:

> (i)  terminate or amend, or claim an accelerated payment or forfeiture of the term under, any agreement (including a security agreement) with Holdco, or

> (ii) terminate or modify any right or obligation under any agreement (including a security agreement) with Holdco,

> by reason only that the proceedings herein and in the Chapter 11 Proceedings with respect to Holdco are commenced or that Holdco is insolvent, save that nothing in this paragraph 1(d)(ix) is to be construed as:

>> (1) prohibiting a person from requiring payments to be made in cash for goods, services, use of leased property or other valuable consideration provided after the commencement of the proceedings; or

>> (2) requiring the further advance of money or credit.

(x)    That Holdco is authorised to transfer, encumber or otherwise dispose of any property of Holdco, and any suspension of such rights under Article 20(1)(c) of the Model Law be disapplied.

(xi)    that GAP as foreign representative is entrusted with the administration, realisation,

and distribution of all or any part of the property and assets (and any proceeds thereof) of Holdco located in Singapore, in accordance with Articles 21(1)(e) and 21(2) of the Model Law.

e.  Liberty for the Applicants to apply.

f.  Costs of and incidental to this Originating Application to be paid out of Holdco's assets.

g.  Such further and/or other relief as this Honourable Court deems fit.

2. The evidence supporting this originating application is stated in the accompanying affidavit of Ahmed Derar Islim.

We certify that this is an application (without notice).

Certified by:

Solicitors for the Applicants

ALLEN & GLEDHILL LLP

Issued by :

Solicitors for the 1st and 2nd Applicants

Allen & Gledhill LLP
ONE MARINA BOULEVARD #28-00 SINGAPORE 018989
Tel No.: 68907188
Fax No.: 63273800
Email: enquiries@allenandgledhill.com
File Ref No.: 1022011034/JOTAY/AYEOHT/YEOHTN
Solicitor in charge: 1. TAY YU XI (ZHENG YUXI),
2. YEO ALEXANDER LAWRENCE, HAN TIONG,
3. YEOH TZE NING

HC/OA402/2023-HC/OA402/2023-HC/OA402/2023-HC/OA402/2023-HC/OA402/2023-HC/OA402/2023

TAN BOON HENG
REGISTRAR
SUPREME COURT

SINGAPORE

**Exhibit I**

# IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

**Case No.: HC/OA 402/2023**

Date: 22-May-2023

In the matter of Part 11 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Section 252 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency

And

In the matter of the Appointment of Foreign Representative in the United States Bankruptcy Court in the Southern District of New York in Case No. 23-10063 (Genesis Global Holdco, LLC, a New York Corporation (EIN 38-4058219)), jointly administered with Case No. 23-10064 (Genesis Global Capital, LLC, a New York Corporation (EIN 37-1878564)) and Case No. 23-10065 (Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R)) on 26 January 2023

And

In the matter of GENESIS GLOBAL HOLDCO, LLC (United States Registration No. 38-4058219)

1.   GENESIS ASIA PACIFIC PTE. LTD.
     (Singapore UEN No. 202002164R)

     (in its capacity as foreign representative of Genesis Global Holdco, LLC)

2.   GENESIS GLOBAL HOLDCO, LLC
     (United States Registration No. 38-4058219)

...Applicant(s)

To:

Allen & Gledhill LLP
ONE MARINA BOULEVARD #28-00 SINGAPORE 018989
Tel No: 68907188
Fax No: 63273800
File Ref No: 1022011034/JOTAY/AYEOHT/YEOHTN
Solicitor in charge: 1. TAY YU XI (ZHENG YUXI)

2. YEO ALEXANDER LAWRENCE, HAN TIONG
3. YEOH TZE NING

### REGISTRAR'S NOTICE - HEARING DATE FIXED

The following hearing has been fixed:
Case No: HC/OA 402/2023
Type of hearing: OA & Summons
Date/Time of hearing: 06-July-2023 at 10:00 AM (before Judge)
Venue of Hearing: CHAMBER 3C

**By 30 June 4pm :**

1. **Submissions and Bundle Of Authorities – exchanged, e-filed and tendered to Court.**
2. **Attendance list**
3. **Time bank**

**FRCC for all the 3 OAs on 28 June 9.30 am. Attendance list by 26 June 4pm. If there are no reply filed, then please also write in by 26 June to update and the RCC may be vacated.**

CHAN YAN NEE
FOR REGISTRAR
SUPREME COURT
SINGAPORE

Tel No: 63321279
Email: SUPCT_Registry@judiciary.gov.sg

A subscriber of eLitigation will receive notices and communications from the Court by eLitigation, and may also receive the same notices and communications from the Court by other means. A person who is not a subscriber of eLitigation will receive notices and communications from the Court by email and/or post. For any response or query relating to any matter arising from the contents of any such notice or communication, please comply with the requirement in the applicable practice directions that all correspondence to the Court must be copied to all other parties or to their solicitors unless there are good reasons for not so doing.

This is computer-generated and requires no signature.

**<u>Exhibit J</u>**

**IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

Case No.: HC/OA 403/2023

Filed: 20-April-2023 04:43 PM
Hearing Date/Time: For
determination by Judge /
Registrar. Solicitor(s)/ parties
need not attend unless
specifically directed to do so.



In the matter of Part 11 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Section 252 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of of Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency

And

In the matter of the Appointment of Foreign Representative in the United States Bankruptcy Court in the Southern District of New York in Case No. 23-10063 (Genesis Global Holdco, LLC, a New York Corporation (EIN 38-4058219)), jointly administered with Case No. 23-10064 (Genesis Global Capital, LLC, a New York Corporation (EIN 37-1878564)) and Case No. 23-10065 (Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R)) on 26 January 2023

And

In the matter of GENESIS GLOBAL CAPITAL, LLC (United States Registration No. 37-1878564)

1.  GENESIS ASIA PACIFIC PTE. LTD.
    (Singapore UEN No. 202002164R)
    (in its capacity as foreign representative of Genesis Global Capital, LLC)

2.  GENESIS GLOBAL CAPITAL, LLC
    (United States Registration No. 37-1878564)

...Applicant(s)

**ORIGINATING APPLICATION (WITHOUT NOTICE)**

1.   The Applicant is applying to the Court for the following orders:

    a.   That the proceedings of Genesis Global Capital, LLC (EIN 37-1878564) ("**GGC**") in Case No. 23-10064, consolidated for procedural purposes only by the Order Directing Joint Administration of Related Chapter 11 Cases (ECF No. 37) dated 26 January 2023 under Case No. 23-10063 in relation to GGC, Genesis Global Holdco, LLC (EIN 38-4058219) and Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R) filed under Chapter 11, Title 11 of the United States Bankruptcy Code with the Bankruptcy Court for the Southern District of New York  (these cases collectively, the "**Chapter 11 Proceedings**") be recognised by the Singapore Courts and in Singapore as a foreign main proceeding within the meaning of Article 2(f) of the UNCITRAL Model Law on Cross Border Insolvency as adopted in Singapore by way of Section 252 and the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**Model Law**"), and that GGC be immediately entitled to relief pursuant to Article 20 of the Model Law.

    b.   Alternatively to prayer 1(a) above, that the Chapter 11 Proceedings with respect to GGC be recognised by the Singapore High Court and in Singapore as a foreign non-main proceeding within the meaning of Article 2(g) of the Model Law.

    c.   That GAP's appointment as the foreign representative of GGC pursuant to the order in the Chapter 11 Proceedings granted by the United States Bankruptcy Court for the Southern District of New York on 26 January 2023 is recognised by the Singapore Courts and in Singapore as a foreign representative within the meaning of Article 2(i) of the Model Law.

    d.   That so long as the Chapter 11 Proceedings with respect to GGC, including any extensions thereto are in force, except with leave of the Court:

        (i)   The commencement or continuation of individual actions or individual proceedings concerning GGC's property, rights, obligations or liabilities, and all orders made thereunder, be stayed in accordance with Article 21(1)(a) of the Model Law;

        (ii)   Execution, distress or other legal process against GGC's property be stayed in accordance with Article 21(1)(b) of the Model Law and section 96(4)(d) / section 64(8)(d) of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**IRDA**");

        (iii)   The right to transfer, encumber or otherwise dispose of any property of GGC (save for any such right by GGC to so transfer, encumber or otherwise dispose its own property) be suspended in accordance with Article 21(1)(c) of the Model Law;

        (iv)   No order may be made, and no resolution may be passed, for the winding up of GGC in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(a) / section 64(8)(a) of the IRDA;

        (v)   No receiver or manager may be appointed over any property or undertaking of

GGC in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96 (4)(b) / section 64(8)(b) of the IRDA;

(vi)   No other proceedings may be commenced or continued against GGC in accordance with Article 21(1)(g) of the Model Law and section 96(4)(c) / section 64(8) (c) of the IRDA;

(vii)   No step may be taken to enforce any security over any property of GGC in Singapore, or to repossess any goods under any chattels leasing agreement, hire-purchase agreement or retention of title agreement in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(e) / section 64(8)(e) of the IRDA;

(viii)  Despite sections 18 and 18A of the Conveyancing and Law of Property Act 1886, no right of re-entry or forfeiture under any lease in respect of any premises occupied by GGC may be enforced in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(f) / section 64(8)(f) of the IRDA;

(ix)   No person may, in relation to any agreement, claim or asset located in Singapore or governed by the laws of Singapore without the prior written consent of GGC or permission of this Court:

    i.  terminate or amend , or claim an accelerated payment or forfeiture of the term under, any agreement (including a security agreement) with GGC, or

    ii.  terminate or modify any right or obligation under any agreement (including a security agreement) with GGC,

by reason only that the proceedings herein and in the Chapter 11 Proceedings with respect to GGC are commenced or that GGC is insolvent, save that nothing in this paragraph 1(d)(ix) is to be construed as:

    (1)  prohibiting a person from requiring payments to be made in cash for goods, services, use of leased property or other valuable consideration provided after the commencement of the proceedings; or

    (2)  requiring the further advance of money or credit.

(x)    That GGC is authorised to transfer, encumber or otherwise dispose of any property of GGC, and any suspension of such rights under Article 20(1)(c) of the Model Law be disapplied.

(xi)   that GAP as foreign representative is entrusted with the administration, realisation, and distribution of all or any part of the property and assets (and any proceeds thereof) of GGC located in Singapore, in accordance with Articles 21(1)(e) and 21(2) of the Model Law.

    e.    Liberty for the Applicants to apply.

    f.    Costs of and incidental to this Originating Application to be paid out of GGC's assets.

    g.    Such further and/or other relief as this Honourable Court deems fit.

2.    The evidence supporting this originating application is stated in the accompanying affidavit of Ahmed Derar Islim.

We certify that this is an application (without notice).
Certified by:
Solicitors for the Applicants
ALLEN & GLEDHILL LLP

Issued by:

Solicitors for the 1st and 2nd Applicants

Allen & Gledhill LLP
ONE MARINA BOULEVARD #28-00 SINGAPORE 018989
Tel No.: 68907188
Fax No.: 63273800
Email: enquiries@allenandgledhill.com
File Ref No.: 1022011034/JOTAY/AYEOHT/YEOHTN
Solicitor in charge: 1. TAY YU XI (ZHENG YUXI),
2. YEO ALEXANDER LAWRENCE, HAN TIONG,
3. YEOH TZE NING

HC/OA403/2023 HC/OA403/2023 HC/OA403/2023 HC/OA403/2023 HC/OA403/2023 HC/OA403/2023

TAN BOON HENG
REGISTRAR
SUPREME COURT
SINGAPORE

**Exhibit K**

**IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

Case No.: HC/OA 403/2023

Filed: 25-May-2023 09:52 AM

In the matter of Part 11 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Section 252 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of of Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency

And

In the matter of the Appointment of Foreign Representative in the United States Bankruptcy Court in the Southern District of New York in Case No. 23-10063 (Genesis Global Holdco, LLC (EIN 38-4058219)), jointly administered with Case No. 23-10064 (Genesis Global Capital, LLC (EIN 37-1878564)) and Case No. 23-10065 (Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R)) on 26 January 2023

And

In the matter of GENESIS GLOBAL CAPITAL, LLC (United States Registration No. 37-1878564)

1. GENESIS ASIA PACIFIC PTE. LTD.
   (Singapore UEN No. 202002164R)
   (in its capacity as foreign representative of Genesis Global Capital, LLC)

2. GENESIS GLOBAL CAPITAL, LLC
   (United States Registration No. 37-1878564)

...Applicant(s)

**ORIGINATING APPLICATION (WITHOUT NOTICE)**

(Amendment No. 1, By Order of Court made on 19 May 2023)

1.    The Applicants are applying to Court for the following orders:

a.   That the proceedings of Genesis Global Capital, LLC (EIN 37-1878564) ("**GGC**") in Case No. 23-10064, consolidated for procedural purposes only by the Order Directing Joint Administration of Related Chapter 11 Cases (ECF No. 37) dated 26 January 2023 under Case No. 23-10063 in relation to GGC, Genesis Global Holdco, LLC (EIN 38-4058219) and Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R) filed under Chapter 11, Title 11 of the United States Bankruptcy Code with the Bankruptcy Court for the Southern District of New York  (these cases collectively, the "**Chapter 11 Proceedings**") be recognised by the Singapore Courts and in Singapore as a foreign main proceeding within the meaning of Article 2(f) of the UNCITRAL Model Law on Cross Border Insolvency as adopted in Singapore by way of Section 252 and the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**Model Law**"), and that GGC be immediately entitled to relief pursuant to Article 20 of the Model Law.

b.   Alternatively to prayer 1(a) above, that the Chapter 11 Proceedings with respect to GGC be recognised by the Singapore High Court and in Singapore as a foreign non-main proceeding within the meaning of Article 2(g) of the Model Law.

c.   That GAP's appointment as the foreign representative of GGC pursuant to the order in the Chapter 11 Proceedings granted by the United States Bankruptcy Court for the Southern District of New York on 26 January 2023 is recognised by the Singapore Courts and in Singapore as a foreign representative within the meaning of Article 2(i) of the Model Law.

d.   That so long as the Chapter 11 Proceedings with respect to GGC, including any extensions thereto are in force, except with leave of the Court:

   (i)   The commencement or continuation of individual actions or individual proceedings concerning GGC's property, rights, obligations or liabilities, and all orders made thereunder, be stayed in accordance with Article 21(1)(a) of the Model Law;

   (ii)   Execution, distress or other legal process against GGC's property be stayed in accordance with Article 21(1)(b) of the Model Law and section 96(4)(d) / section 64(8)(d) of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018) (the "**IRDA**");

   (iii)   The right to transfer, encumber or otherwise dispose of any property of GGC (save for any such right by GGC to so transfer, encumber or otherwise dispose its own property) be suspended in accordance with Article 21(1)(c) of the Model Law;

   (iv)   No order may be made, and no resolution may be passed, for the winding up of GGC in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96 (4)(a) / section 64(8)(a) of the IRDA;

   (v)   No receiver or manager may be appointed over any property or undertaking of GGC in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96 (4)(b) / section 64(8)(b) of the IRDA;

(vi)   No other proceedings may be commenced or continued against GGC in accordance with Article 21(1)(g) of the Model Law and section 96(4)(c) / section 64(8)(c) of the IRDA;

(vii)   No step may be taken to enforce any security over any property of GGC in Singapore, or to repossess any goods under any chattels leasing agreement, hire-purchase agreement or retention of title agreement in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(e) / section 64(8)(e) of the IRDA;

(viii)   Despite sections 18 and 18A of the Conveyancing and Law of Property Act 1886, no right of re-entry or forfeiture under any lease in respect of any premises occupied by GGC may be enforced in Singapore in accordance with Article 21(1)(g) of the Model Law and section 96(4)(f) / section 64(8)(f) of the IRDA;

(ix)   No person may, in relation to any agreement, claim or asset located in Singapore or governed by the laws of Singapore without the prior written consent of GGC or permission of this Court:

   i.  terminate or amend, or claim an accelerated payment or forfeiture of the term under, any agreement (including a security agreement) with GGC, or

   ii.  terminate or modify any right or obligation under any agreement (including a security agreement) with GGC,

by reason only that the proceedings herein and in the Chapter 11 Proceedings with respect to GGC are commenced or that GGC is insolvent, save that nothing in this paragraph 1(d)(ix) is to be construed as:

   (1) prohibiting a person from requiring payments to be made in cash for goods, services, use of leased property or other valuable consideration provided after the commencement of the proceedings; or

   (2) requiring the further advance of money or credit.

(x)   That GGC is authorised to transfer, encumber or otherwise dispose of any property of GGC, and any suspension of such rights under Article 20(1)(c) of the Model Law be disapplied.

(xi)   that GAP as foreign representative is entrusted with the administration, realisation, and distribution of all or any part of the property and assets (and any proceeds thereof) of GGC located in Singapore, in accordance with Articles 21(1)(e) and 21(2) of the Model Law.

e.   Liberty for the Applicants to apply.

      f.    Costs of and incidental to this Originating Application to be paid out of GGC's assets.

      g.    Such further and/or other relief as this Honourable Court deems fit.

2.    The evidence supporting this originating application is stated in the accompanying affidavit of Ahmed Derar Islim.

We certify that this is an application (without notice).
Certified by:
Solicitors for the Applicants
ALLEN & GLEDHILL LLP

Issued by:

Solicitors for the 1st and 2nd Applicants

Allen & Gledhill LLP
ONE MARINA BOULEVARD #28-00 SINGAPORE 018989
Tel No.: 68907188
Fax No.: 63273800
Email: enquiries@allenandgledhill.com
File Ref No.: 1022011034/JOTAY/AYEOHT/YEOHTN
Solicitor in charge: 1. TAY YU XI (ZHENG YUXI),
2. YEO ALEXANDER LAWRENCE, HAN TIONG,
3. YEOH TZE NING

HC/OA403/2023-HC/OA403/2023-HC/OA403/2023-HC/OA403/2023-HC/OA403/2023-HC/OA403/2023

TAN BOON HENG
REGISTRAR
SUPREME COURT
SINGAPORE

**Exhibit** L

# IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

**Case No.: HC/OA 403/2023**

Date: 22-May-2023

In the matter of Part 11 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of Section 252 of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of the Third Schedule of the Insolvency, Restructuring and Dissolution Act 2018 (Act 40 of 2018)

And

In the matter of of Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency

And

In the matter of the Appointment of Foreign Representative in the United States Bankruptcy Court in the Southern District of New York in Case No. 23-10063 (Genesis Global Holdco, LLC, a New York Corporation (EIN 38-4058219)), jointly administered with Case No. 23-10064 (Genesis Global Capital, LLC, a New York Corporation (EIN 37-1878564)) and Case No. 23-10065 (Genesis Asia Pacific Pte. Ltd. (Singapore UEN No. 202002164R)) on 26 January 2023

And

In the matter of GENESIS GLOBAL CAPITAL, LLC (United States Registration No. 37-1878564)


1.   GENESIS ASIA PACIFIC PTE. LTD.
     (Singapore UEN No. 202002164R)

     (in its capacity as foreign representative of Genesis Global Capital, LLC)

2.   GENESIS GLOBAL CAPITAL, LLC
     (United States Registration No. 37-1878564)

...Applicant(s)


To:

Allen & Gledhill LLP
ONE MARINA BOULEVARD #28-00 SINGAPORE 018989
Tel No: 68907188
Fax No: 63273800
File Ref No: 1022011034/JOTAY/AYEOHT/YEOHTN
Solicitor in charge: 1. TAY YU XI (ZHENG YUXI)

2. YEO ALEXANDER LAWRENCE, HAN TIONG
3. YEOH TZE NING

### REGISTRAR'S NOTICE - HEARING DATE FIXED

The following hearing has been fixed:
Case No: HC/OA 403/2023
Type of hearing: OA & Summons
Date/Time of hearing: 06-July-2023 at 10:00 AM (before Judge)
Venue of Hearing: CHAMBER 3C

**By 30 June 4pm :**

1. **Submissions and Bundle Of Authorities – exchanged, e-filed and tendered to Court.**
2. **Attendance list**
3. **Time bank**

**FRCC for all the 3 OAs on 28 June 9.30 am. Attendance list by 26 June 4pm. If there are no reply filed, then please also write in by 26 June to update and the RCC may be vacated.**

CHAN YAN NEE
FOR REGISTRAR
SUPREME COURT
SINGAPORE

Tel No: 63321279
Email: SUPCT_Registry@judiciary.gov.sg

A subscriber of eLitigation will receive notices and communications from the Court by eLitigation, and may also receive the same notices and communications from the Court by other means. A person who is not a subscriber of eLitigation will receive notices and communications from the Court by email and/or post. For any response or query relating to any matter arising from the contents of any such notice or communication, please comply with the requirement in the applicable practice directions that all correspondence to the Court must be copied to all other parties or to their solicitors unless there are good reasons for not so doing.

This is computer-generated and requires no signature.