# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

July 5, 2023

Via ECF

The Honorable Sean H. Lane,
U.S. Bankruptcy Court for the Southern District of New York,
300 Quarropas Street,
White Plains, NY 10601.

Re:    *In re Genesis Global Holdco, LLC, et al.*, Case No 23-10063 (SHL)

Dear Judge Lane:

We write on behalf of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (the "FTX Debtors") in the jointly administered Chapter 11 proceedings (the "FTX Chapter 11 Cases") pending in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"), Case No. 22-11068, with respect to (i) the *Motion of FTX Trading Ltd. and its Affiliated Debtors for an Order Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001*, ECF No. 289 (the "Lift Stay Motion") and (ii) the Genesis Debtors' *Motion To Establish Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the Debtors Under Bankruptcy Code Section 105(a) and 502(c) and Bankruptcy Rule 3018*, ECF No. 373 (the "Estimation Motion" and, together with the Lift Stay Motion, the "Motions").[1]  We submit this letter to provide the Court with a status update since the June 15 Hearing.

As Your Honor will recall, two months ago the FTX Debtors filed the Lift Stay Motion on May 3, 2023 seeking leave to liquidate preference claims against Genesis Global Capital, LLC ("GGC") arising in the FTX Chapter 11 Cases (the "FTX Preference Claims"). The hearing on the Lift Stay Motion was delayed from its original hearing date at the request of the Genesis Debtors until June 15, 2023 (the "June 15 Hearing").

The Genesis Debtors filed the Estimation Motion on June 1, 2023 to be heard together with the Lift Stay Motion at the June 15 Hearing.  At the end of the June 15 Hearing, the Court continued the hearing on both motions to July 6, 2023, and directed the parties to exchange

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Lift Stay Motion.

The Hon. Sean H. Lane                                                                                          -2-

information and identify specific issues to be litigated in connection with the FTX Preference Claims.[2]

Since the June 15 Hearing, the parties have met and conferred and have exchanged information in accordance with the Court's directive. The parties have made progress in identifying the issues relevant for liquidation of the FTX Preference Claims and the evidentiary record applicable to the Motions at this time. Specifically:

1.    The FTX Debtors now have received certain information requested previously from GGC and non-debtor affiliate GGC International Limited ("GGCI") concerning transfers received from the FTX.com exchange and the financial relationship between GGC and GGCI. If that information is stipulated to by the parties, the FTX Debtors have informed GGC and GGCI that the aggregate FTX Preference Claims against GGC will not exceed $2.0 billion.

2.    With respect to the ranking of the FTX Preference Claims in the Genesis Chapter 11 Cases, the FTX Debtors have confirmed to GGC that the FTX Preference Claims are entirely prepetition general unsecured non-priority claims. Accordingly, if the stay is lifted, the FTX Debtors have agreed that a reasonable reserve to be established for the FTX Preference Claims will not be a *priority* reserve. GGC will be able to make all distributions on secured claims, priority claims and other general unsecured claims without limitation, so long as a *proportional* share of the general unsecured pool is reserved to the extent the FTX Preference Claims remain unliquidated and the parties have not otherwise agreed on a fixed reserve amount.

3.    The FTX Debtors have informed GGC that this proportional reserve will be a minority of the GGC claims pool, and have proposed to stipulate the reserve at no more than 30% of the general unsecured claims pool.

4.    The FTX Debtors have confirmed to GGC and GGCI that the FTX Debtors will be promptly commencing an adversary proceeding against GGCI in the FTX Chapter 11 Cases to liquidate the FTX

---

[2]    Transcript of June 15 Hearing at 77:3-8, *In re Genesis Global Holdco LLC, et al.*, No. 23-10063 (SHL), attached hereto as Exhibit A ("Well, my intent was not to make a ruling today on the motion other than to direct the parties to meet and confer and to work on information exchange as well as identification of issues that might be dealt with specific issues and some issues in a more nuanced way...").

The Hon. Sean H. Lane                                                                          -3-

Preference Actions against GGCI.  If the Lift Stay Motion is granted (or GGC consents to lift the stay), the FTX Debtors have informed GGC of their agreement to litigate the FTX Preference Claims on an expedited schedule alongside the claims against GGCI to efficiently resolve all of the FTX Preference Actions, which the FTX Debtors believe can reasonably be achieved by setting trial approximately six months from the date the stay is lifted.[3]

5.      As to the issues in dispute with respect to the FTX Preference Claims, GGC has provided to the FTX Debtors a list of defenses GGC intends to assert to the FTX Claims, attached hereto as Exhibit B.  The list includes all the critical issues to the FTX Debtors and their creditors that counsel to the FTX Debtors identified to the Court at the June 15 Hearing, including the nature of ordinary course transfers by FTX to similarly-situated creditors during the preference period and the value of the native token FTT. In addition, GGC intends to dispute other issues that are central to the FTX Chapter 11 Cases, including the solvency of the FTX Debtors and whether the FTX Debtors do or do not own digital assets in their custody.  GGC has confirmed to the FTX Debtors that they seek to resolve these issues by estimation on the merits, not merely to establish a distributional reserve.

6.      The same list of defenses is relevant to the FTX Preference Claims against GGCI and will be litigated on the merits in the FTX Chapter 11 Case even if separately litigated on the merits in this Court.  The Genesis Debtors' list of defenses underscores the complexity of any litigation of these issues and the importance of considerations of judicial economy as well as comity.[4]

---

[3]     The FTX Debtors believe the following illustrative litigation schedule is achievable and balances the parties' respective interests (assuming the Court grants the Lift Stay Motion and denies the Estimation Motion on "Day 0"): (i) complaint filed by Day 10, (ii) deadline to file motion to dismiss (if any): Day 35; (iii) deadline to respond to motion to dismiss: Day 65; (iii) deadline to file reply in support of motion to dismiss: Day 75; (iv) fact discovery completed by: Day 90; (v) initial expert reports due by: Day 115, (vi) rebuttal expert reports due by: Day 140; (vii) summary judgment motions due by Day 165, and (vi) trial (if necessary) to commence by Day 190.

[4]     As contemplated by the Genesis Debtors, the claims estimation proceeding will require no fewer than **four different** experts and extensive evidence with respect to issues like corporate separateness of the FTX Debtors and intercompany claims between the FTX Debtors.  *In re Anderson*, 20123 WL 240748 (Bankr. S.D. Cal. 2013) (declining to estimate claims before a plan was confirmed because estimation would

The Hon. Sean H. Lane                                                                    -4-

7.    The FTX Debtors requested that GGC provide all information and
documents available to support GGC's contention that estimation
(and denial of the Lift Stay Motion to permit estimation) is
necessary to avoid an "undue delay" in making distributions.[5]  In
response, GGC conceded that these requests were "premature"
given the status of the GGC case.  Specifically, GCC has informed
the FTX Debtors that the amount of assets available for
distribution, whether GGC intends to establish reserves, the
estimated amount of reserves and the timing and nature of
distributions on general unsecured claims have "not yet been
calculated or determined at this time."[6]  Accordingly, although
GGC has the burden of proof under section 502(c), no information
has been provided by GGC to suggest the liquidation of the FTX
Preference Claims on the schedule proposed by the FTX Debtors
would cause any delay, whether or not "undue" in the
circumstances.[7]

---

require "pretty much complete resolution" of the claim due to its complexity and would require "a full-blown trial.").

[5]    Among other things, at the June 15 Hearing, Your Honor recognized that the Genesis Debtors bear the burden of proof in connection with the Estimation Motion to "show undue burden" under section 502(c) of the Bankruptcy Code, including in connection with the asserted delay in plan distributions absent estimation of the FTX Claims.  Transcript of June 15 Hearing at 46:23-47:13.

[6]    *Letter from counsel to Genesis Debtors to FTX Debtors*, dated June 23, 2023 (the "June 23 Letter").

[7]    Courts generally find undue delay and estimate claims when the debtor's plan has been confirmed, all conditions to distributions have been satisfied and estimation will allow immediate distributions to creditors to flow.  *Compare In re Club Ventures Inv. LLC*, 2012 WL 6139082 (Bankr. S.D.N.Y. 2012) (partly estimating and partly subordinating claims when money was ready to be distributed to creditors but for these claims requiring a reserve of 80% of the money in Debtor's escrow); *In re Enron Corp.*, 2006 WL 544463 (Bankr. S.D.N.Y. 2006) (estimating claim at $0 so that periodic distributions required by confirmed plan could continue and when it was clear that claim had no merit because it was already dismissed in district court and had a low probability of success on appeal); *In re AMR Corp.*, 2021 WL 2954824 (Bankr. S.D.N.Y. 2021) (granting estimation when Court had already disallowed the claims multiple times, the bankruptcy case had been ongoing for ten years, the plan had been confirmed almost eight years before, and the unliquidated claim caused an interruption in distributions), *with In re Apex Oil Co.*, 107 B.R. 189 (Bankr. E.D. Miss. 1989) (denying estimation when there was no showing of undue delay and debtor's plan was not yet confirmed); *In re RNI Wind Down Corp.*, 369 B.R. 174 (Bankr. D. Del. 2007) (denying estimation because debtor did not show undue delay and stating that absent a finding of undue delay, the Court is not obligated to estimate a claim).

The Hon. Sean H. Lane                                                                    -5-

8.      GGC has not identified any example of a foreign bankruptcy court
adjudicating the merits of a preference claim in another bankruptcy
court's case.[8]

On this record, the FTX Debtors respectfully submit that the Court grant the Lift
Stay Motion and deny the Estimation Motion.  However, in the event the Court disagrees, the
FTX Debtors request the opportunity to submit additional briefing on the important legal issues
raised by the Motions in light of these developments, following the parties' appearance before
the Court on July 6, 2023, as appropriate.

Sincerely,

/s/ *Brian D. Glueckstein*
Brian D. Glueckstein

cc:     Sean A. O'Neal
Luke Barefoot
Jane VanLare
(Cleary Gottlieb Steen & Hamilton LLP)

Andrew G. Dietderich
James L. Bromley
Benjamin S. Beller
(Sullivan & Cromwell LLP)

Ken Pasquale
(Paul Hastings LLP)

---

[8]     *See* Lift Stay Motion ¶ 24 (quoting Judge Wiles' comments in the Voyager Digital Chapter 11 cases, in
connection with debtor Celsius Network LLC's motion for leave to file a late proof of claim and lift the
automatic stay to commence a preference action against Voyager Digital, that there is "no way" that a
foreign bankruptcy court should be making determinations about customer property in another debtor's
case.) (citations omitted).

# Exhibit A

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 23-10063-shl

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   GENESIS GLOBAL HOLDCO, LLC,

8

9        Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  300 Quarropas Street, Room 248

14                  White Plains, NY 10601

15

16                  June 15, 2023

17                  12:26 PM

18

19

20

21  B E F O R E :

22  HON SEAN H. LANE

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO: ALIANNA PERSAUD

1   HEARING re Doc. #432 Notice of Agenda

2

3   HEARING re Doc. #289 Motion for Relief from the Automatic

4   Stay Re:  FTX Trading

5

6   HEARING re Doc. #373 Motion to Authorize / Motion to

7   Establish Procedures and a Schedule for Estimating the

8   Amount of the FTX Debtors Claims Against the Debtors under

9   Bankruptcy Code Sections 105(a) and 502(c) and Bankruptcy

10  Rule 3018

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1    A P P E A R A N C E S :

 2

 3    CLEARY GOTTLIEB STEEN & HAMILTON LLP

 4         Attorneys for the Debtors

 5         One Liberty Plaza

 6         New York, NY 10006

 7

 8    BY:  SEAN A. O'NEAL

 9         JANE VANLARE

10

11    WEIL, GOTSHAL & MANGES LLP

12         Attorneys for Digital Currency Group, Inc.

13         767 Fifth Avenue

14         New York, NY 10153

15

16    BY:  JEFFREY D. SAFERSTEIN

17

18    HUGHES HUBBARD & REED LLP

19         Attorneys for Gemini Trust Company, LLC, as Agent

20         One Battery Park Plaza

21         New York, NY 10004

22

23    BY:  ERIN DIERS

24

25
```

Page 4

1    LATHAM WATKINS

2         Attorneys for Interested Party

3         1271 Avenue of the Americas

4         New York, NY 10020

5

6    BY:  ADAM J. GOLDBERG

7         NACIF TAOUSSE

8

9    PAUL HASTINGS LLP

10        Attorneys for the Official Committee of Unsecured

11        Creditors of FTX

12        200 Park Avenue

13        New York, NY 10166

14

15   BY:  KENNETH PASQUALE

16

17   UNITED STATES DEPARTMENT OF JUSTICE

18        Attorneys for the U.S. Trustee

19        201 Varick Street, Suite 1006

20        New York, NY 10014

21

22   BY:  GREG ZIPES

23

24

25

**Page 5**

1   UNITED STATES SECURITIES AND EXCHANGE COMMISSION

2       Attorneys for the U.S. Securities and Exchange

3       Commission

4       950 East Paces Ferry Road NE, Suite 900

5       Atlanta, GA 30326

6

7   BY:  WILLIAM MATTHEW UPTEGROVE

8

9   PROSKAUER ROSE LLP

10      Attorneys for Ad Hoc Group of Genesis Lenders

11      Eleven Times Square

12      New York, NY 10036

13

14  BY:  BRIAN S. ROSEN

15

16  WHITE & CASE LLP

17      Attorneys for the Official Committee of Unsecured

18      Creditors

19      1221 Avenue of the Americas

20      New York, NY 10020

21

22  BY:  PHILIP ABELSON

23      MICHELE MEISES

24

25

Page 6

```
 1   SEWARD KISSEL LLP

 2        Attorneys for the Official Committee of Unsecured

 3        Creditors

 4        One Battery Park Plaza

 5        New York, NY 10006

 6

 7   BY:  JOHN R. ASHMEAD

 8

 9   LOWENSTEIN SANDLER LLP

10        Attorneys for Securities Class Action Plaintiffs

11        One Lowenstein Drive

12        Roseland, NY 07068

13

14   BY:  ANDREW BEHLMANN

15

16   SULLIVAN CROMWELL LLP

17        Attorneys for FTX Trading Ltd., et al.

18        125 Broad Street

19        New York, NY 10004

20

21   BY:  BENJAMIN S. BELLER

22        CHRISTIAN T. HODGES

23

24

25
```

1   NORTON ROSE FULBRIGHT US LLP

2        Attorneys for Mirana Corp.

3        1301 Avenue of the Americas

4        New York, NY 10019

5

6   BY:  ERIC C. DAUCHER

7

8   TEXAS OFFICE OF THE ATTORNEY GENERAL

9        Attorneys for the Texas State Securities Board

10       12221 Merit Dr., Suite 650

11       Dallas, TX 75251

12

13  BY:  AUTUMN D. HIGHSMITH

14

15  TROUTMAN PEPPER

16       Attorneys for Interested Creditor

17       Hercules Plaza

18       1313 Market Street

19       Wilmington, DE 19899

20

21  BY:  MARCY J. MCLAUGHLIN SMITH

22

23  GLEN KRATOCHVIL, Pro Se Creditor

24  CLINTON MUELLER, Pro Se Creditor

25  ERIC IAN ASQUITH, Pro Se Creditor

Page 8

1   KEN LUKASZEWSKI, Pro Se Creditor

2   KYLE MCKUHEN, Pro Se Creditor

3

4   ALSO PRESENT TELEPHONICALLY:

5   ANDREW G. DEITERICH

6   MICHAEL S. ETKIN

7   KRIS HANSEN

8   OXANA KOZLOV

9   ZIA LIU

10  JEFFREY S. MARGOLIN

11  RICHARD CHESTER MINOTT

12  AMANDA PARRA CRISTE

13  GREGORY F. PESCE

14  ARIANNA PRETTO-SAKMANN

15  CHRISTIAN RIBEIRO

16  ISAAC SASSON

17  J. CHRISTOPHER SHORE

18  JAMES M. SULLIVAN

19  GORDON SUN

20  WILLIAM MATTHEW UPTEGROVE

21  FRANCISCO VAZQUEZ

22  COLIN WEST

23  PAUL ARONZON

24  BRENDON BARNWELL

25  SABRINA BREMER

Page 9

1    JESSICA BROOKS

2    BRIAN BULTHUIS

3    DONALD BURKE

4    JASON CHA

5    TOM CONHEENEY

6    COURTENAY CULLEN

7    JARED DERMONT

8    MICHAEL DIYANNI

9    JOSHUA IAN DIVACK

10   LEIA DORAN

11   MELISSA DZENIS-GARCIA

12   DAN FORMAN

13   UDAY GORREPATI

14   JASON GOTTLIEB

15   BRANDON HAMMER

16   SANDALL HANDAGAMA

17   MIRA HAQQANI

18   TAYLOR HARRISON

19   MIRANDA HATCH

20   JEREMY HILL

21   DERAR ISLIM

22   ZUL JAMAL

23   BARRY JONES

24   PAUL KINEALY

25   BARAK KLEIN

Page 10

1   LEONIE KOCH

2   BENJAMIN KROLL

3   KONRAD LAESSAR

4   CHRISTINE LEE

5   MICHAEL LETO

6   DAVID LOPEZ

7   MICHAEL MAGZAMEN

8   JACK MASSEY

9   AKIKO MATSUDA

10   DAVID MAYO

11   KAYLA MILLIGAN

12   ANAIS MITRA

13   SAMUEL NADEL

14   ELIZABETH K. NAPOLITANO

15   REBEKAH PRESLEY

16   CRAIG V. RASSILE

17   PHILIP RIES

18   KATIE ROSS

19   THERESE SCHEUER

20   JACK SCHICKLER

21   SAMUEL A. SCHWARZ

22   JOE SCIAMETTA

23   PETER J. SPROFERA

24   MARK STANCIL

25   ANDREW SULLIVAN

Page 11

1   VINCE SULLIVAN

2   ANDREW SWIFT

3   NACIF TAOUSSE

4   BRIAN TICHENOR

5   ANDREW TSANG

6   MEGHANA VUNNAMADELA

7   LAUREN WALKER

8   MICHAEL WEINBERG

9   JACK WESTNER

10   PAUL WIRTZ

11   LILY YARBOROUGH

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 12

1                       P R O C E E D I N G S

2            THE COURT:  Good morning.  This is Judge Sean Lane

3    in the United States Bankruptcy Court for the Southern

4    District of New York and we're here with the Chapter 11 case

5    of Genesis Global Holdco LLC, a jointly administered case

6    that is on for an omnibus hearing this morning at 11.  We'll

7    start this hearing as we always do by getting appearances

8    starting with the Debtors' counsel.

9            MS. VANLARE:  Good morning, Your Honor, Jane

10   Vanlare, Cleary Gottlieb Steen & Hamilton on behalf of the

11   Debtors.

12           THE COURT:  All right, good morning.  Obviously,

13   there are a lot of folks who entered an appearance on Zoom.

14   I know a lot of those folks are here to listen and observe.

15   So I'm not going to go through that long list, but I'm going

16   to ask for appearances from folks who have been frequent

17   participants in these hearings and then I'll open it up for

18   anyone that I may have missed.  So, but -- there's no slight

19   intended, but nobody wants to sit through 20 minutes of a

20   roll call.

21           So -- but I do know the Official Committee is

22   here, so let me get that appearance.

23           MR. SHORE:  Good morning, Your Honor.  Chris Shore

24   from White & Case on behalf of the Official Committee.

25           THE COURT:  All right, good morning.  On behalf of

Page 13

1      the Ad Hoc Group?

2              MR. ROSEN:  Good morning, Your Honor.  Brian Rosen

3      on behalf of Proskauer Rose for the Ad Hoc Committee.

4              THE COURT:  All right.  Good morning.  On behalf

5      of the Digital Currency Group.

6              MR. SAFERSTEIN:  Good morning, Your Honor, Jeffrey

7      Saferstein from Weil Gotshal & Manges on behalf of DCG.

8              THE COURT:  On behalf of Gemini Trust Company>

9              MS. DIERS:  Good morning, Your Honor.  Erin Diers

10     from Hughes Hubbard & Reed on behalf Gemini Trust Company as

11     agent for Gemini Lenders.

12             THE COURT:  All right.  On behalf of the United

13     States Trustee's Office.  All right, we'll see if someone

14     makes an appearance later.  And then on behalf of some other

15     folks who filed pleadings in this case, and so starting with

16     folks representing FTX who are debtors in a Delaware

17     bankruptcy case.

18             MR. DIETDERICH:  Hello and good morning, Your

19     Honor.  Representing the FTX debtors. This is Andy

20     Dietderich and Brian Glueckstein at Sullivan & Cromwell.

21             THE COURT:  All right, good morning.  And I

22     believe the FTX Official Committee filed something connected

23     with today's proceedings, so let me ask if there's someone

24     here for those folks.

25             MR. PASQUALE:  Yes, Your Honor.  This is Ken

Page 14

1    Pasquale from Paul Hastings for the Official Committee of

2    Unsecured Creditors in the FTX cases.  Thank you.

3           THE COURT:  All right, good morning.  And so

4    again, no sleight intended.  That was -- so let me throw up

5    -- open this for any other appearances, and other folks who

6    expect to participate in this morning's hearings as opposed

7    to being here for listening only purposes.

8           All right, hearing no further responses, I do have

9    a copy of the agenda which is at -- was filed on the docket

10   at Docket 432 and I understand we have two different motions

11   that are on for today, one a lift stay motion filed by FTX

12   trading and the other an estimation motion filed by the

13   Debtors.

14          So my thought would be to just take sort of first

15   in time first and deal with the lift stay motion first, but

16   you all may have chatted and come up with some other better

17   plan, and I'm always happy to hear that.  So, let me hear

18   from Ms. Vanlare if there's anything -- if you have any

19   other suggestions about ways to proceed.

20          MS. VANLARE:  Good morning again, Your Honor.

21   That order makes sense to us.  That was the order that we

22   filed in the agenda as well.

23          THE COURT:  All right.  Thank you very much.  So

24   with that, I will tell parties, I have read all your papers

25   so nobody needs to feel like they have to cover everything

Page 15

1    that's in your papers.  That's why you file papers.  The

2    papers were very spirited and very comprehensive, and so

3    what I hope to do is have a dialogue about the issues and

4    have you highlight the things that you think are most

5    relevant for purposes of today.  So I'll turn it over to

6    FTX's counsel.

7              MR. DIETDERICH:  Thank you, Your Honor.  Good

8    morning.  For the record again, Andy Dietderich at Sullivan

9    and Cromwell for the FTX Debtors.  I'll start, Your Honor,

10   with what I think is the most important proposition, which

11   is that both of these Chapter 11 cases are equally

12   important.  The creditors of each are equally important.

13   They're proceeding in two different courts, but each of

14   these proceedings should respect the other proceeding to the

15   extent it can, consistent with its own demands and needs.

16             This particular claim that we have is not a claim

17   about whether there's a loan agreement.  That's not

18   disputed.  It's not a claim about whether money was advanced

19   under the loan agreement.  That's not disputed.  It's not a

20   claim about whether money was repaid under the loan

21   agreement.  That's not disputed.

22             This is a preference claim and its nature as a

23   preference claim is what requires, in our view with respect,

24   the stay to be lifted to allow it to proceed.  Because a

25   preference claim, of course, is a special federal bankruptcy

1    power that's intended to create parity among creditors and

2    intended to create parity among creditors in the FTX cases.

3    So whichever Court decides the merits of this preference

4    action is going to have to decide a number of questions that

5    are central to FTX.  For example, the value of FTT.  This,

6    the fact here, are that this loan was either fully or

7    partially collateralized with FTT, which is the native token

8    to FTX.

9              Resolution of the preference requires the

10   valuation of FTT which at one point had a market

11   capitalization of about $4 billion and at our petition time

12   at hundreds of thousands of holders.  There's going to be

13   two relevant valuations, valuation at the FTX petition date

14   and at the distribution date.  The price of FTT is not

15   simple to calculate because there have been allegations the

16   price was subject to manipulation by Sam Bankman-Fried and

17   the other founders of FTX.

18             So the spot price may not be indicative of value.

19   Expert evidence will be required.  This question of the

20   value of FTT is generally applicable to all holders of the

21   FTT token and all other stakeholders of FTX that might not

22   hold the token but object to the valuation.

23             Next, it's not just the value of FTT that's

24   interesting, when FTT is held as collateral, but it's the

25   ranking of FTT because there's allegations in our case that

Page 17

1   FTT should not be treated as a claim but should instead be

2   treated as equity because it has equity like components and

3   equity like trading characteristics.  So there will need to

4   be expert evidence not only as to the amount of or the value

5   of FTT, but also as to its ranking in the FTX capital

6   structure.  That has to be decided for the preference to be

7   resolved.

8           Now, of course, when we talk about collateral as a

9   defense to a preference, we're talking about a question of

10  what a holder of the collateralized position would receive

11  in a hypothetical Chapter 7 liquidation of FTX.  So

12  whichever judge decides the preference is going to have to

13  decide what the holder of the claim would receive in a

14  hypothetical Chapter 7 liquidation of FTX, which as Your

15  Honor may know, has about 100 debtors, 30 non-debtors,

16  liquid assets, illiquid assets, operating businesses, and up

17  to nine million creditors.

18          Now, the other thing that has to be decided for

19  the preference is the subsequent new value to this.

20  Subsequent new value will be relevant to all of our

21  preferences.  We will be applying or Judge Dorsey will be

22  applying if Judge Dorsey decides our preferences, Third

23  Circuit law.  It's a little unclear, but Your Honor may be

24  applying a different law, Second Circuit law to the same

25  questions if Your Honor were to hear it.

                                                          Page 18

1              We also have the question of ordinary course.

2      This is the question of what constitutes ordinary course

3      transfers for the purposes of the FTX.com exchange and the

4      Alameda lending book, because the preferences here, Your

5      Honor, are actually of two different flavors.  There's an

6      exchange flavor off the exchange and there's a loan flavor.

7      Alameda as Your Honor may know, was a hedge fund.  It

8      borrowed money from various lending parties.  Genesis was

9      one of the largest, by no means the only.

10             And so there's an ordinary course question that is

11     equally relevant to all of the preference defendants in FTX

12     about how to calculate that.  Our ordinary course defense

13     though, Your Honor, or question is not an ordinary, ordinary

14     course question because our case also implicates the

15     possible fraud or Ponzi scheme exception to ordinary course.

16             We don't know where we're coming out on that yet,

17     but it's very much on the table.  So whatever judge decides

18     our preferences, will have to decide ordinary course and

19     will also have to ask whether or not the Ponzi scheme

20     exception or the fraud exception to ordinary course plays a

21     role, which will require the judge not only to, you know, to

22     ask questions about whether or not FTX was inherently a

23     Ponzi scheme.

24             And to do that, not just ahead of Judge Dorsey

25     potentially in Delaware, but also ahead of Judge Kaplan and

Page 19

1    the criminal trial of Sam Bankman-Fried coming up in

2    October, which involves a lot of the same facts and

3    circumstances.

4            So our proposition is that the essential nature of

5    this is very, very deeply connected to the FTX case.  It

6    isn't a question, of like most of the Sonnax factor's

7    traditional stay relief to allow a litigation to continue

8    kind of cases.  It's not a question of whether something is

9    decided by Your Honor or by Judge Dorsey, because we know

10   Judge Dorsey will actually be deciding every single one of

11   these issues.  He'll have to decide it for the hundreds of

12   thousands of other defendants in the FTX cases, and so they

13   will be decided by him.

14           In addition, even the bilateral relationship

15   between FTX and the Genesis Debtors will also have to be

16   resolved by Judge Dorsey because the preference is relevant

17   for the 502(d) defense against any claim Genesis puts into

18   our bankruptcy.  Our bar date is June 30th and also relevant

19   to the outbound preference claim the FTX Debtors have

20   against GGCI International.

21           So even if all other FTX creditors and all of

22   their interests were ignored, we still have a bilateral

23   dispute that will need to be decided in front of Judge

24   Dorsey, even if Your Honor decides not to lift the stay and

25   to litigate the matters here as well.

Page 20

1           THE COURT:  So let me ask you two questions that

2      that raises.  One is, as we know, lifting the stay is not

3      only about what's to be decided, but about the timing of

4      what's to be decided and the impact on other proceedings.

5      And it's fairly clear and I think the one thing everyone can

6      agree upon is that the FTX bankruptcy is a complicated

7      matter.  It implicates an ongoing criminal case among other

8      things, and so one of the concerns obviously that that

9      raises is the fact that if something is -- the stay is

10     lifted to be decided elsewhere, these Debtors in this Court

11     really lack essentially then any ability to control the

12     docket if that that issue has to addressed as a gating, to

13     the other things in this bankruptcy.

14           And so, while the preference issues are obviously

15     important, you've just raised a number of other things that

16     may be further up the dance card in the FTX panoply of

17     issues, and so we have no idea at this point when those

18     things are going to happen in what order and with all due

19     respect to the Delaware Bankruptcy Court and Judge Dorsey,

20     all of whom I respect greatly, they probably -- Judge Dorsey

21     probably doesn't know yet either.  It may be unknowable at

22     this moment.

23           So what is it that you want me to think about when

24     thinking about that concern, about essentially saying, well,

25     if this issue, important or not to this bankruptcy, is

Page 21

1    handed over to another Court to decide in whatever order

2    things are going to happen in that case; what's your

3    thinking about that issue?

4              MR. DIETDERICH:  Sure.  Well, I think Your Honor

5    is going to the question of prejudice, but I also don't want

6    to dodge the question about timing.  So we do --

7              THE COURT:  -- are interrelated, right?

8              MR. DIETDERICH:  We do intend to litigate

9    preferences as quickly as we can, right, and we have

10   prioritized the liquidation of preferences against the other

11   Debtors.  The first preference actions we filed were against

12   Voyager.  We also have expedited the resolution of our

13   preferences into the Genesis bankruptcy and into the BlockFi

14   bankruptcy.  We have three competing Debtor preference

15   bankruptcies.

16             And this question very much came up in Voyager.

17   We have a stipulated process agreement in Voyager where they

18   asked to mediate first to see if we could mediate this, but

19   we're agreeing an expedited litigation schedule in the

20   Voyager case for the resolution of the preferences that has

21   been so ordered by both Judge Wiles and by Judge Dorsey.

22   And we are happy to commit to litigate these preferences on

23   the same accelerated schedule.  So that answers the question

24   -- I can't promise --

25             THE COURT:  Well, it does, but it doesn't, right?

Page 22

1    The best laid plans, as the saying goes.  You have a

2    criminal case to also address and what can and can't happen

3    in terms of getting information and something as simple as

4    taking somebody's deposition, for example, with the pending

5    criminal case.  There are all sorts of -- there's a lot of

6    things to consider.  And so notwithstanding the desire to

7    litigate everything expedited basis all at once, we all know

8    there's always a question of what order things are going to

9    go in.

10          And so, much like the idea of labeling certain

11    things that's going to happen on certain schedules and

12    putting the label of expedited on it, it doesn't really

13    fully answer the question.  So is there any wisdom about

14    what the criminal case means for purposes of the FTX

15    bankruptcy going forward in terms of scheduling?  I mean,

16    that's sort of the --

17          MR. DIETDERICH:  So we do not intend to wait on

18    the criminal proceeding before resolving these preference

19    issues.  I do not think the criminal proceeding is a gating

20    item to the resolution of preferences.  I do think it's a

21    question of needing to be sensitive to the relationship

22    between the factual record for the criminal proceeding and

23    the factual record we're creating in front of Judge Dorsey

24    in preference and other fraud related issues.

25          So we have some sensitivities in the FTX case

Page 23

1    about not getting ahead of the government, but so far, those

2    sensitivities do not rise to the level where we need to

3    delay our case and wait for the criminal hearing, and I

4    don't think we're going to get to that point.

5              THE COURT:  All right.

6              MR. DIETDERICH:  (indiscernible).

7              THE COURT:  Yeah, the other question that your

8    comments raised or issues discussed is you talked about --

9    let me see if I can get the language correct to you -- about

10   the bilateral relationship between Genesis and FTX and

11   you've obviously raised a concern about deciding certain

12   issues outside the confines of the FTX bankruptcy because it

13   is greatly important to the function of the FTX bankruptcy.

14             And so, when you talk about resolution of certain

15   issues about the relationship between Genesis, the Debtor

16   here, and FTX, what are the chances of that same kind of

17   concern happening in the reverse; that is, that the Delaware

18   judge is asked to, by virtue of deciding issues that you

19   want that judge to decide, making findings and rulings that

20   then are about the nature of Genesis' business, or other

21   things that will -- would otherwise naturally occur in this

22   bankruptcy.

23             MR. DIETDERICH:  You know, I think the nature if

24   you walk -- if we walk through what needs to be decided on

25   the preference action, and I -- you know, I'm not, I don't -

Page 24

1    - we have to resolve some factual issues about, you know,

2    loan agreement and whatnot.  I think all of those should be

3    resolved by information sharing among the parties.  But if

4    you assume that we know if there was a loan and what

5    payments were made, virtually all of the issues are issues

6    that relate to those things I mentioned at FTX.

7            Ordinary course is probably also, you know, is one

8    that you could see both sides of a little bit, but I think

9    ordinary course off the exchange is also going to be

10   resolved based upon, you know, the course of business of the

11   exchange and of course, the horizontal element of that test

12   about ordinary course for other crypto exchanges which is a

13   generic question.  So I don't see --

14           THE COURT:  Well, if I'm understanding it right,

15   you just sort of characterized it as a generic question when

16   dealing with other crypto exchanges.  Well, I don't -- I

17   guess that really sort of puts a label over an issue that I

18   think I'm asking about, which is, (indiscernible) things

19   necessarily decided about what this Genesis, these Genesis

20   Debtors do and things that would ordinarily be decided here

21   that would by necessity have to be decided there.  And

22   that's what I'm trying to get at.

23           I don't know exactly how that will come up, but

24   you mentioned the bilateral relationship and so, in deciding

25   that, there are questions about the business model and what

Page 25

1    it all means and the legal significance of various things

2    for purposes of characterizing claims and legal rights that

3    folks have.  That's what I'm -- that's what I'm trying to

4    get at, the spillover effect that that would, might

5    necessarily have on proceedings in this case, just as you're

6    worried about the reverse of the spillover effect of any

7    decisions here that might have on the FTX case.

8          MR. DIETDERICH:  Yeah.  And I think that's

9    something to be sensitive to, but off the top of my head,

10   Your Honor, just to think it through, I think once you

11   decide the admittedly difficult questions of what FTT is

12   worth and where it ranks and what an FTT holder gets in a

13   liquidation, then -- and you have a preference policy on

14   subsequent new value which applies irrespective of the

15   characteristics of the particular preference recipient and

16   have an approach to ordinary course of business, the rest of

17   this becomes very easy.  The rest of it is just about, you

18   know, when was money received and how much was received.

19         I'm not sure that it -- it clearly calls into

20   question FTX's general behavior, but I'm not, I don't -- I

21   can't think of why a simple preference action, once you

22   resolve those issues, calls into question the behavior of

23   the recipient of the preference.  And if it does, perhaps we

24   can have some, you know, some -- I think it's something we

25   have to, you know, stay sensitive to.

1          I think in some ways Your Honor's question goes to

2     the opposite end of the spectrum, the opposite end of the

3     side of the scale, which is prejudice, right?  So where's

4     the prejudice to the Genesis Debtors from lifting the stay?

5     And I think Your Honor is rightly focused on what I think is

6     cognizable prejudice.  I think there's a lot of allegations

7     from the Debtor I would call not cognizable prejudice, such

8     as the fact that there's a condition in the plan that they

9     put in the plan.

10         I think that one of the things that's confusing,

11     and I want to make sure that our position at least is clear

12     on, is prejudice isn't -- the FTX case was first filed and

13     the Genesis bankruptcy, like any bankruptcy, takes the world

14     as it finds it on its petition.  So the fact the claim

15     exists isn't prejudiced.

16         The fact it is a preference claim isn't prejudice.

17     The fact it's related to other claims and has a relationship

18     to the FTX venue is a pre-existing fact.  It's not

19     prejudice.  The fact it's large isn't prejudice.  The fact

20     that it might have merit or we believe has merit isn't

21     prejudice.

22         All of those things are just part of the facts and

23     circumstances of the Genesis bankruptcy and the job of any

24     bankruptcy, as Your Honor knows, is to respect as best we

25     can the relative value of people's prepetition entirely, so

Page 27

1    their starting positions.  And part of the starting position

2    of this case is the preexisting FTX case and the existence

3    of all the preferences that arose by operation of law when

4    FTX filed on November 11th.

5           So there's, that's not prejudice.  The question

6    of, should the stay be lifted and what's the prejudice from

7    the Genesis Debtors of lifting the stay, I think you're

8    pointing on the one cognizable prejudice that we have found.

9    How do the issues that have to be decided, the actual issues

10   that have to be decided for the preference, are they more

11   closely related to the Delaware bankruptcy case and the

12   interests of the other Delaware creditors or are they -- are

13   these issues more closely related to Genesis and Genesis

14   creditors?

15          Now, of course, Genesis creditors have an interest

16   in how this is resolved and so they have an interest, but

17   what's interesting, I think, about the Genesis creditors'

18   interest versus the FTX creditors' interest -- and let's

19   contrast.  The FTX creditor has an interest in how this is

20   resolved because it affects the FTX creditors' own claim

21   against FTX.  You value FTT one way, it affects that

22   person's actual claim against FTX, not their relative

23   recovery, their actual claim.

24          The Genesis stakeholders have a very important

25   stake in this because it depends on how much money either

1    FTX gets from Genesis or Genesis gets from FTX.  But as I

2    think they're joiners illustrate, it's a me too.  It's a

3    yeah, we want the Debtor to win but whether the Debtor wins

4    or loses here, we have not been able to identify and I'd ask

5    the Debtors to think about it and the other people on the

6    Debtors' side to speak about it here.

7            We've not been able to identify any of the issues

8    that rise to that kind of level, something that would be

9    decided by Judge Dorsey that would affect not the recoveries

10   in the case, but would actually affect in some way the

11   rights of stakeholders in the case, such that the Debtor

12   wasn't a good proxy for them, right, in simply trying to

13   prosecute the recovery.

14           And to me that's an important element of where

15   this goes.  So we would submit that if you do the classic

16   lift stay analysis, we believe we have very compelling

17   evidence of prejudice to FTX if the stay is not litigated

18   and -- lifted and these matters are litigated in front of

19   Your Honor because of the sheer number of stakeholders that

20   have an interest in these matters in FTX and would not be

21   fully heard in this case.

22           We do not see much of anything on the other side

23   of the scale.  We dismiss entirely the fact that this claim

24   is big or, you know, reserves or whatnot.  I would note

25   respect to that, that the plan condition kind of can't be

1    prejudiced.  A plan can't make its own prejudice.  In

2    particular, this plan condition, if you read the plan

3    condition, it demonstrates there is no prejudice for lifting

4    the day by the very nature of the condition because the

5    condition only applies at effectiveness and it's not -- if

6    it's a condition that the claim be estimated by you, but

7    it's not a condition there be any particular result of the

8    estimation.

9            If it's zero, the plan works.  If it's 3.2

10   billion, the plan works.  It works regardless, their plan.

11   Of course, because it's a liquidating plan.  This isn't a

12   case where there's a reorganization that requires something

13   to be decided.  This is a liquidating plan.  Voyager is a

14   liquidating plan.  Celsius is a liquidating plan.  FTX is a

15   liquidating plan.

16           And so there -- that plan condition itself can't

17   be prejudiced, but what can really be prejudice is what Your

18   Honor put your fingers on.  We just don't see it on the

19   other side of the case, on the particular issues to be

20   decided in the preference.

21           THE COURT:  So I take your point about the way you

22   view statements made by the Debtors about the prejudice, the

23   plan, the time delay.  My concern is that there are

24   certainly some statements in the papers that make it sound

25   like there's a -- that implies sort of the FTX Debtors sort

Page 30

1    of cross the line in having a little more to say about what

2    the plan looks like and doesn't look like.  So I understand

3    the notion about simply saying something doesn't make it so,

4    but there's a -- there are some statements that say, well,

5    you could do lots of ways.

6            You could do a plan, you know, lots of different

7    ways here that don't accomplish -- that avoid these issues.

8    And of course, FTX is in charge of its case and -- as a

9    Debtor in Possession and having a plan and the Genesis

10   Debtors are here.

11           So I wasn't quite sure how to take some of those

12   comments in the sense I understand the analysis about, well,

13   what does it mean to have a large unsecured claim, what does

14   it mean under the Bankruptcy Code, what -- where in the

15   critical path does it fall in terms of determining what does

16   it prevent things from happening or what things doesn't it

17   prevent?

18           But there are a lot of statements about the plan

19   and, well, Judge, we have these views.  The plan isn't

20   problem.  You could do these things lots of different ways.

21   And I wasn't quite sure what you wanted me to take from

22   those because they -- that seems to sort of cross the line a

23   little bit in terms of telling -- saying like, well, in your

24   view, if it was your case, you'd run it this way, but that's

25   obviously not how it works.

1          So what did you want me to take from those

2     comments?

3          MR. DIETDERICH:  Well, Your Honor, we wrote that

4     before we had any idea what was in the plan.  So we had not

5     seen a plan or been invited to the mediation or knew what

6     was in it.  And what we feared was a plan that was going to

7     set up like they tried in LightSquared, which is a very

8     interesting precedent, Your Honor, by the way, where there

9     was a condition built into a plan that was trying to use the

10    engine of organization to say we're reorganizing so

11    therefore, we need the estimation power in order to

12    reorganize.

13         Not knowing what was in the plan, we wrote those

14    words in the pleading saying that the plan is really their

15    choice and their choice of plan can't be prejudice.  What's

16    happened since is they filed their plan and their actual

17    plan as filed is a liquidating plan that is completely

18    consistent with simply resolving the merits of this claim,

19    just like the merits of the $1.2 billion claim they have for

20    the Gemini in -- you know, for the Gemini creditors.

21         So we wrote that before we saw the plan.  Now

22    we've seen the plan.  It confirms that even on their own

23    plan, the particular plan they picked out from all possible

24    plans, is one that also does not require resolution of this

25    claim on the merits in any particular amount, not for plan

Page 32

1   formation, not for voting, not for confirmation.  It's

2   simply a question of distributions and how quickly they can

3   make distributions to who and how we establish an

4   appropriate reserve.

5           I also, Your Honor, would -- I don't know if,

6   partly the two matters here are so closely related,

7   estimation.  You know, I'm happy to talk to, you know, some

8   of the developments in the way this relates to their plan

9   formation, but perhaps we should --

10          THE COURT:  So here's --

11          MR. DIETDERICH:  -- estimation to do that.

12          THE COURT:  They are related.  I think what I'm

13  going to do is hear from Ms. Vanlare in connection with the

14  opposition to the stay relief and then she'll segue the

15  estimation and I'll come back to you.  So it gives everybody

16  whose motion it is the chance to be heard first.  But you're

17  right, they are interrelated.

18          So anything else that you wanted to address before

19  I hear from the Debtors?

20          MR. DIETDERICH:  No, Your Honor.  We would just

21  rest, as I said, on this motion on the balance of harms, as

22  I mentioned, the difference between, you know, the

23  relationship of the issues with FTX versus not all issues,

24  but these particular issues we think are more appropriately

25  heard in front of Judge Dorsey.  So thank you very much for

Page 33

1      listening to us today.

2             THE COURT:  Thank you.  So let me hear from

3      Debtors.

4             MS. VANLARE:  Yes, thank you, Your Honor.  Jane

5      Vanlare, Clear Gottlieb Steen and Hamilton on behalf of the

6      Debtors.  Your Honor, as the Debtors, we strongly oppose the

7      relief that's sought by FTX in this motion.  I'd like to

8      note that in the papers and even, you know, just now in Mr.

9      Dietderich's presentation, the entire focus has been on the

10     prejudice and on the effect that lifting the stay would have

11     on FTX and its creditors.

12            Your Honor, this is exactly the opposite of what

13     is required under the relevant standard in the Second

14     Circuit in this district and that's the Sonnax factors.  Mr.

15     Dietderich sort of brushed them aside, but in fact, that is

16     the relevant standard before this Court in evaluating this

17     relief.  Your Honor, I'd like to go through the Sonnax

18     factors and we believe that most, if not all, in fact, weigh

19     against lifting the stay.  The only one that FTX is really

20     focused on, and I think we heard it just now, is the balance

21     of the harms.  That's one of the factors and I'll certainly

22     address that one as well.

23            THE COURT:  So let me just interject for a second.

24     I do have and I think I have it tab on it -- in fact I do --

25     of your application, the Sonnax factors in -- starting at

Page 34

1    Page 7 of your opposition.  So I certainly have that and I

2    did find that to be quite persuasive in going through the

3    factors.  I guess my question here is in -- to pick up the

4    thread of the question I asked Mr. Dietderich, right.

5    There's always that issue about the substance of what's

6    going on, but there's also an issue about the timing.  So

7    I'm trying to figure out the motivations and the Debtors'

8    view.

9            If you look at the issue sort of in those two

10   broad categories, because I certainly understand, the

11   concern about timing in the sense of, again, as I said to

12   Mr. Dietderich, I don't know how quickly, when things are

13   going to get decided, absent cloning technology by Judge

14   Dorsey, have a lot on his plate to get through, but I guess

15   my question is, how do you think about your objection in

16   terms of timing versus substance and trying to thread that

17   needle because certainly I understand the impact on this

18   case, but there also are certain things in terms of talking

19   about certain aspects of the FTX case that are going to be

20   more widely applied in that case and how do you thread the

21   needle.

22           Is it -- is the timing component the thing that's

23   crucial here in the sense of, Judge, they're going to get to

24   these issues, but they shouldn't get to them now, you should

25   lift the stay and we have some things that we need to do?

Page 35

1   How do you try to work through those two sort of motivating

2   factors here?

3                 MS. VANLARE:  Yes.  Your Honor, I think both are

4   important, both are motivating factors.  I think you're

5   absolutely right.  Timing is a huge component of this and I

6   think that it's very important for the reasons that we've

7   argued in these papers and the estimation papers, right?  We

8   have a confirmation timeline that we're moving along in

9   parallel to the plan and confirming the plan we filed.  We

10  have been in discussions with our stakeholders.  We've -- as

11  Your Honor knows, we've been in a mediation.  We're trying

12  to resolve certain very important issues to our cases,

13  trying to reach consensual plan.

14                Estimating these claims on that timeline is a

15  necessary component to any kind of consensual settlement of

16  those claims, so the timing is really crucial.  In addition

17  to the fact that, as you pointed out and as we've said, I

18  think nobody disputes, right, the sheer magnitude of these

19  claims which we obviously dispute is extraordinary here

20  compared to our total claims pool to our liquid assets.

21                And so obviously, there's enormous impact on

22  distributions and the timing of those distributions.  So

23  that's the timing piece, but I'd like to address the

24  substantive point as well.  Mr. Dietderich identified

25  certain issues that he thinks will be important in these

1    preference claims and ˆactually think that there are many

2    other issues, factual and legal, that may be relevant and

3    that'd be more significant than the ones he identified.

4         And you know, FTX, obviously a cryptocurrency

5    case, we're a cryptocurrency case.  We have avoidance

6    actions against our creditors.  There are many issues here

7    that are important to these cases and to other parts of

8    these cases that we think Your Honor should decide.  And

9    this is one of the things we've pointed out in terms of the

10   impact that resolution of some of these issues will have on

11   our estate and our creditors, which again, I would posit, is

12   by far the more relevant inquiry under the law.

13        The -- so I think that's the timing and the

14   substance.  I mean, there are other things like obviously

15   litigating these claims in the Delaware Bankruptcy Court

16   would impose additional costs.

17        THE COURT:  Let me back up for a second.  You

18   talked about the litigation taking place here that will have

19   an impact on the resolution of the case more broadly.  So

20   what are those specific issues?  You mentioned you had some

21   in addition to what Mr. Dietderich identified and sort of as

22   a counterpoint.  So what would some of those be?

23        MS. VANLARE:  Well, for example, he focused on FTT

24   and the valuation of FTT as collateral.  There were other

25   digital assets that served as collateral, not simply FTT.

Page 37

1   There was several loans that were extended and repaid on the

2   Alameda GGC side.  So I think there are -- I don't think the

3   issues as characterized really reflects the, I think, what

4   will be the key issues in in the preference litigation.

5            THE COURT:  So let me drill down now a little bit.

6   What are some of the other things that were used as

7   collateral that you would expect would -- the nature of

8   which would come up in the context of litigation, whether it

9   be here or elsewhere, but particularly focusing on here?

10           MS. VANLARE:  The -- so the Genesis Debtors had a

11  number of digital assets.  The Bitcoin, ETH, Solana.  There

12  were stable coins, just off the top of my head, Your Honor.

13  It's not simply FTT.

14           THE COURT:  All right.  And am I understanding

15  your position correctly in saying that when Mr. Dietderich

16  calls out the nature of and the value of FTT and sort of the

17  ranking of it, of FTT in the capital structure and any other

18  some impacts that some commenting on the nature of FTT might

19  have in terms of ripples in litigation, from your point of

20  view these other collateral -- are they similarly postured

21  that way in the sense of I'd have to make similar

22  determinations that would have similar consequences?

23           MS. VANLARE:  Your Honor, if that's the nature of

24  the defense, yes.  The same reasoning would apply to other

25  types of digital assets, right, it's not just FTT.

1          THE COURT:  All right.  And can you give me a

2     little more background as to the two you mentioned and the

3     other ones that you wanted to mention in terms of

4     understanding their significance in the Debtors' business

5     model?  Again, because what I think I'm hearing is that,

6     Judge, if -- we need you to lift the stay because Judge

7     Dorsey needs to weigh in on these significant issues.

8          Those issues will have ripple effects, not only

9     there but in the entire case because you're talking about

10    the nature -- you know, for example, Judge Glenn just

11    recently issued a decision about who owns what property in

12    his cryptocurrency case.

13         That sort of plays forward in the case and has

14    ripple effects not only on that for the folks involved in

15    that decision, but in the case generally, and so I'm

16    understanding his view that Judge Dorsey is going to need to

17    weigh in on these things, and in fact, he is going to weigh

18    in on these things, even if he doesn't do it in connection

19    with a relationship with Genesis.  He's going to have to do

20    it elsewhere, and so that's the inconsistent ruling issue.

21         So I'm just trying to sort of see if I -- as a

22    thought exercise, if I'm understanding this correctly.  If

23    this is an analog sort of -- there's an analog for the

24    Genesis Debtors in terms of the kinds of collateral that

25    you've just mentioned and how that all works -- which is,

Page 39

1  sort of means dipping a toe in the business model for me, at

2  least for purposes of today.  So be helpful to get some sort

3  of factual context.

4            MS. VANLARE:  Sure, Your Honor.  I mean, one other

5  thing to mention, the loans, the loan agreements between

6  Alameda and GGC are very similar to the loan agreements that

7  existed between GGC and a number of its other creditors.  So

8  again, I think it's not fair or accurate to focus on certain

9  isolated issues which again may or may not be important in

10 these -- in the resolution of these claims.

11            There's a host of issues that are important as a

12 factual and legal matter to our creditors and our estate,

13 and I think that when you consider that plus the timing,

14 which again is, I would posit, only relevant to one or maybe

15 two of the factors out of 12 and all the others clearly

16 weigh in favor of, or I guess, against lifting the stay in

17 favor of keeping it here.

18            THE COURT:  So let me understand.  If you're --

19 again, just to sort of push the contours of your argument,

20 is your argument to say, Judge, we should never lift the

21 stay because these things need to be decided here and that's

22 the way it is.  We have our case, they have their case, and

23 there's going to be some inevitable overlap, and that's just

24 the way it is.  Or is your argument well, Judge, we're not

25 saying never, but we're saying certainly not now and we need

Page 40

1    to see or maybe there will come a time when it's

2    appropriate.  But it's not now, so I'm just trying to

3    understand sort of the contours of where you are.

4              MS. VANLARE:  I think it's the former, Your Honor.

5    I think it's certainly not now and we don't think that it's

6    ever going to be appropriate, but it's certainly not now and

7    we think that the effect that lifting the stay will have on

8    these estates and our creditors is extremely negative and we

9    think that that's the key consideration for Your Honor.

10   It's not sort of, you know, equal, you know, everybody's

11   important.  That's not the relevant inquiry under the Sonnax

12   factors.

13             THE COURT:  All right.  So I know that Mr.

14   Dietderich cited some protocols in Voyager, but they're

15   stipulations and stipulations are things where parties

16   decide that in the grand horse trading that goes back and

17   forth that they've reached something that makes sense for

18   them.  Certainly there is, if your view is closer to the

19   former than the latter, my earlier question, then I'm just

20   trying to understand the sort, of the world view on a

21   broader scale.

22             Does that mean when we have these kinds of

23   circumstances where there are issues inevitably that the

24   judge in their -- in the case pending in front of them will

25   decide things that will have -- could be at odds, could have

1    implications in other -- another case such as FTX and vice

2    versa, is the -- is your sort of worldview that while the

3    chips fall where they may, that people litigate the claims

4    in their cases and that's what they do?

5              I mean, how do you decide what goes where?  If the

6    idea is well, Judge, what relates to your case should be

7    decided by you, what relates to that case should be decided

8    by them; certainly, we've seen there are procedures you can

9    use in the bankruptcy process that might say, well, what's

10   in my case versus what's in your case is somewhat malleable.

11             And so what -- if the idea is that each case

12   should decide the issues that need to be decided in their

13   case, come what may, how do I decide that in terms of what

14   are the rules of the road, then, for people to stay in their

15   own lane?  If you say, well, we have to be primarily

16   concerned about the prejudice to folks in each of the

17   individual cases our motion to lift stay is pending?

18             MS. VANLARE:  So Your Honor, I think -- first, I

19   think we all acknowledge that -- and Your Honor has said

20   this earlier as well, that the FTX cases are not as far

21   along as these cases.  They're extremely complex.  There are

22   many, many issues involved.  So I don't know when these

23   issues may be litigated and these other preference claims in

24   the FTX cases.  I don't know.

25             We have asked, and I know we're sort of taking

Page 42

1   these issues separately, which makes sense, but in the

2   estimation motion, I think we've proposed a timeline.  We've

3   made arguments as to why we believe we're entitled to

4   estimation on a particular timeline by this Court, which by

5   the way is another argument for efficiency and so we're

6   concentrating the decision making here.

7          But should there be a decision that comes out in

8   another case that Your Honor thinks is relevant in your

9   determination, you know, I think that you, I'm sure that's

10  not a unique situation, right?  That happens all the time

11  and there may be similar issues decided by other Courts and

12  Your Honor may or may not be persuaded.  So I don't think

13  that that really should weigh in on the decision as to

14  whether to lift the stay.

15         THE COURT:  All right, so I don't know if you have

16  anything else, particularly on the lift stay that you wanted

17  to address or if you wanted to segue to the obviously

18  related estimation motion.  I think Mr. Dietderich earlier

19  recognized the obviously interrelated nature of them.  So

20  I'll leave that to you, Counsel, so where do you want to go

21  next?

22         MS. VANLARE:  I would just note, Your Honor, again

23  that the -- that under the caselaw, the burden is on the

24  movant.  FTX has an extraordinary -- has to make a showing

25  of extraordinary circumstances to overcome that burden as an

Page 43

1    unsecured creditor and they have not made -- they've not met

2    that burden.  They've not even tried to show extraordinary

3    circumstances.  And again, under the case law, I think that

4    the stay should not be lifted in these cases.

5           THE COURT:  So since you mentioned the factors,

6    let me ask you.  I think I know the answer based on sort of

7    the consequences of what you've already said, but there's

8    obviously factors that we all look at, again laid out very

9    well in your motion.  But one of them is whether lifting

10   stay will interfere with the Debtors' reorganization, right?

11   And that's, I think the one you're sort of leading with

12   here.

13          And I think Mr. Dietderich is sort of invoking the

14   balance of the harms, I think, is where his concerns in

15   terms of the FTX Debtors and stakeholders, where their

16   equities lie.  And one is, I want to know if you agree with,

17   if that's where some of these things sort of fall in the

18   test, and then second is, how do I understand that?

19          I think your argument really is that the --

20   because it's a separate factor, that the interference of the

21   organization is something that's specifically called out

22   therefore, while he certainly has some legitimate concerns

23   about his case, the lift stay motion was filed in this case

24   and that's why this case is the focus.  But I want to make

25   sure I understand your argument.

Page 44

1          MS. VANLARE:  No, I think that's exactly right,

2     Your Honor.  There are 12 factors.  There are some cases

3     that do say that certain factors are perhaps more important

4     than others.  I think we've, for that reason, focused on

5     some of them, but I don't think that means we ignore the

6     others.  I think, you know, we haven't ignored them.  We've

7     gone through them.  You're right, we focused on the

8     interference in our case which we think clearly weighs

9     against lifting the stay.

10          Balance of harms, I think as Your Honor said, we

11     understand that there are certain issues that the FTX

12     claimants have mentioned.  But again, even that factor, I

13     would say, weighs against lifting of the stay or is at bed

14     neutral, because we too have harms that would ensue if the

15     stay is lifted.  So if you look at that factor, I don't

16     think it weighs in favor of lifting the stay.

17          I think another point that I think we noted in our

18     papers and I just want to mention here as well is, you know,

19     FTX has filed proofs of claim, claims against our estates.

20     And so, in doing so, they've submitted to this Court's

21     jurisdiction.  We think it's entirely appropriate that

22     claims be adjudicated by Your Honor in these cases.

23          THE COURT:  All right.  So with that, let me ask

24     you about the estimation motion.  So certainly a focal point

25     of FTX's comments are that sort of a challenge to the

Page 45

1   statements made in the plan as a basis for of a finding of

2   undue delay, that simply saying hey, we put this in as a

3   condition.  Doesn't necessarily make it a condition.  It

4   makes it a statement in a plan.

5           And so, and that kind of implicates down the road,

6   the question of estimation for what purpose and certainly

7   there's some discussion in FTX's papers about estimation for

8   voting as opposed to estimation for claim.  And it being an

9   unsecured creditor and also not knowing sort of what the

10  other, the numerator or denominator, that is what money is

11  available and the calculation.

12          And frankly, as a bankruptcy judge, I'm interested

13  in that just because at a certain point, people have a sense

14  of what they're actually fighting over in terms of actual

15  dollars.  because the amount of money spent in a bankruptcy,

16  ideally should be somewhat proportional to the amount of

17  money at stake, and we all have seen plenty of cases and

18  plenty of issues that get resolved once people know what the

19  actual dollar figure is that they're actually fighting over.

20          So I think I've asked you several questions at

21  once.  So I'll let you answer them in any order you'd like.

22          MS. VANLARE:  I will do my best, Your Honor, and

23  if I -- if there's one I haven't addressed, please let me

24  know.  So I think in terms of now moving into our grounds

25  for estimation, I think in terms of undue delay, there are

Page 46

1    at least two ways in which estimation is necessary here

2    because not doing so will result in undue delay.  One is the

3    timing of distributions, which under the, you know, the

4    relevant standard is that's one of the reasons.

5          And that's sort of irrespective of the plan

6    structure and just looking at, you know, pure math here,

7    right, which we've identified in our papers, the asserted

8    value of these claims, which again, we disagree with

9    wholeheartedly frankly, but the asserted value is so large

10   in relation to our other claimants, our liquid assets, that

11   clearly the timing of distributions here would be

12   substantially delayed and I think what makes this case

13   perhaps somewhat different than other cases where you might

14   hear the same argument is that here, we actually, we are

15   proceeding speedily to confirmation to emergence.

16         We have a schedule and so, we have sort of a point

17   in time that's very near where we're hope to emerge, where

18   we're hoping to commence distributions, and having these

19   enormous asserted claims out there essentially would prevent

20   that from happening, which is highly prejudicial to our

21   other creditors and which, again, is one of the reasons why

22   the code allows us to estimate.

23         THE COURT:  So but let me -- at the risk of never

24   getting to the other questions, sort of dig into that

25   because thinking about this as a litigation matter and

Page 47

1    trying to put sort of details together, part of me says, I -

2    - so the code says you're allowed to estimate if you can

3    show undue delay.  Certainly, that clearly would be an issue

4    for purposes of distribution.  That's sort of a low hanging

5    fruit.

6         Of course, if you push it to its logical

7    conclusion, that means that you could estimate any claim at

8    any time because liquidation of a claim will always take

9    more time than estimation.  So I think the case law is a bit

10   more nuanced than perhaps the language of the code is.  So

11   part of me wonders that -- whether sort of a step-by-step

12   process here is something that makes sense, right?  Because,

13   you're entitled to estimate if you can show undue burden.

14        Clearly, the distribution aspect, I don't know

15   that anybody disputes that.  So we're talking about a plan

16   and that's nice, but I don't know that we necessarily -- if

17   you have it for distribution, whether you really need to get

18   into it for purposes of a plan.

19        But doesn't it -- does it make sense to try to

20   figure out what we're talking about first a little bit, in

21   the sense of there are lots of discussions about discovery

22   on the claim and then figuring out what a claim objection

23   might look like, therefore, setting the stage for what an

24   actual liquidation of the claim would look like and then you

25   compare that to an estimation because then you say, well,

1      here's what the claim objection is.

2              Here's what the issues are in dispute, here's what

3      we need experts on and now, Judge, we can make a better

4      sense of what an estimation process should look like and we

5      can also -- you, Judge, can make a better estimation of what

6      a delay would look like because we can tell you what liquid

7      -- full blown liquidation of the claim is.  And by the way,

8      maybe we're able to go ahead with the plan in the meantime

9      because the delay really comes in the context of the

10     distribution aspect for what is an unsecured claim.  So I'm

11     just trying to -- so I'm going away from the theoretical to

12     the very brass tacks aspect of it.

13             MS. VANLARE:  So --

14             THE COURT:  So what's your thoughts about sort of

15     taking this in a much more incremental step-by-step basis?

16             MS. VANLARE:  So here's the other issue we face,

17     Your Honor, and this is our other reason for estimation.  So

18     as I mentioned, we -- and again, we've said all along, we're

19     trying to get to a deal.  We're trying to get to a global

20     deal.  We think that will be incredibly value maximizing

21     because again, unlike in a lot of other cases here, there's

22     substantial litigation overhang, substantial claims.  We

23     think that a settlement here would be value maximizing.  A

24     necessary component to that settlement for, you know, among

25     other things, the reason you articulated, right, people need

1   to know what they're agreeing to, they need to know how much

2   money is at stake, how much money is there.  This is such a

3   enormous asserted amount relative to the rest of the claims

4   pool that any kind of global settlement requires that these

5   claims be estimated, right?

6           So that's the other piece of this and you'd

7   mentioned, now, why not take sort of a more graduated

8   approach, right, you know, in terms of the types of issues.

9   So to that, my response would be, first of all, I don't

10  think it's disputed that sort of a standard litigation claim

11  objection in these cases would take substantially longer

12  than estimation.  I think that was in the papers of FTX, of

13  the FTX Committee.  I think that everyone sort of assumes

14  that to be true.

15          Now, in terms of -- you know, we tried to propose

16  a timeline that we thought was sort of as long as our cases

17  can afford and that we think will provide for a fair

18  process.  We think it's clearly expedited, but we also think

19  that it's possible to do it on that timeline if the parties

20  are efficient and we think we can be.

21          If -- now the challenge to sort of doing multiple

22  phases or adding more sort of interim timelines in there is

23  we're concerned about the confirmation as kind of our

24  goalposts, the ending date.

25          THE COURT:  Well, I understand that.  I guess my

Page 50

1    thought is these things sort of have to happen anyway,

2    right?  For there to be an estimation, I think we have to go

3    through discovery because you have to know what the fight is

4    and in order to estimate, any case that I've ever seen where

5    there's estimation, people say, well, here's the issue you

6    have to decide, Judge.  Right?

7           So, and sometimes people say it's a pure legal

8    issue which means estimation is really basically legal

9    briefing, or Judge, it's a combination of fact and law, or

10   there's some key factual question.  And I can't make an

11   intelligent decision about what estimation looks like

12   without sort of having the comparator.

13          And so I guess my thought would be that that's

14   against the backdrop of understanding that if we're talking

15   about distribution, yeah, you -- there's no way you can

16   distribute until you deal with this claim.  There's just no

17   way.

18          But it may free up the -- we have to do this

19   anyway and then we can come up with a -- if we leave today

20   or sometime shortly after today with a schedule that

21   essentially is sort of the first part of what you were

22   hoping to get anyway and then we revisit what estimation

23   looks like, and then maybe the next time we get together, we

24   have a better sense of how it would fit or not fit within

25   the plan and what's actually needed to do for purposes of a

Page 51

1    plan, because we all know obviously distributions, it's the

2    whole point, but a plan is a huge milestone to get to.

3            So if you get to a plan -- we had a lot of this in

4    American Airlines trying to figure out who got what and

5    putting reserves in and allowing distributions and it all

6    happened after confirmation because the clear message was,

7    Judge, right now, we have everybody holding hands together

8    to get this plan done, and so it needs to get done while

9    people are still holding hands, and that sort of by

10   definition has a certain expiration date.

11           And so I think we can be respectful of that while

12   still being mindful of the undue delay in distribution and

13   sort of -- but it allows me to not have to think about these

14   things with too many variables that are currently unknown or

15   aren't on the record in terms of making appropriate

16   findings.  So that's where I'm coming from it.

17           MS. VANLARE:  So, Your Honor, I think we are, you

18   know, we've got a confirmation timeline.  Obviously, we all

19   know that sometimes timelines shift and we would certainly

20   be open to conferring in good faith with the FTX claimants

21   about extending the timeline should that occur, of course,

22   with Your Honor's permission.

23           However, I think that the general sense of the

24   timing is that we need these claims to be estimated on a

25   relatively quick basis.  And my concern with what I think

Page 52

1    Your Honor is suggesting is that I think that in order to

2    make sure there is time for factual discovery, for expert

3    discovery, and for briefing, we really need to have the

4    parties committed to proceeding on the schedule that we

5    outlined or something close to that schedule.

6            THE COURT:  Well, again, my thought is I'm

7    wondering whether half a loaf does it without prejudicing

8    anybody's rights to seek the second half of the loaf;

9    meaning that we need to set a discovery schedule, right, and

10   we need to figure out the -- essentially the terms of

11   engagement, what is actually in dispute, because I don't

12   know what we're estimating.  Nobody shows up and says, well,

13   here's the claim, what do you think.  I mean, right?

14           There's an issue.  We have to know what the issue

15   is that's in dispute and so we've got a -- we've got --

16   that's the threshold things that have to happen and then we

17   can figure out everything else.  So I'm not trying to -- in

18   a way, it's -- the two motions echo each other, in the sense

19   that 13 years in this job has not allowed me any better

20   ability to predict the future, and so we -- I find myself

21   thinking that, jeez, but we'll know more in a month, whether

22   it's about the nature of the claim or it's about the nature

23   of what's going on in the FTX bankruptcy or what's going on

24   in this bankruptcy for purposes of both of these motions.

25           And so I guess that's -- I think I beat that dead

Page 53

1    horse enough.  So other -- so, but it does sort of tie into

2    the undue delay.  I think the issue about distribution,

3    there's clearly -- I don't even know there is a dispute

4    about that for purposes of undue delay.  I think there's a

5    dispute about undue delay for purposes of a plan, but my

6    question is how much from your point of view, do I need to

7    get into that, if I have the undue delay issue for purposes

8    of distribution, assuming that in the next month or so, you

9    expect to be able to take that next step with a plan.

10          MS. VANLARE:  Well, Your Honor, I think, of

11   course, if you find that the undue distributions is

12   deficient then, you know, we think that's all you need.  The

13   second piece is also important.  Obviously, we've been in

14   discussions.  You know, we can't guarantee that we'll get

15   there.  We can tell you they've been -- we've been trying

16   very hard and, you know, we're very much in that process and

17   we're hoping to get there.

18          I think --  again, I think, my chief concern is

19   how to keep the estimation process on a timeline.  I think

20   what you're suggesting is another interim check-in, so to

21   speak.  I think, you know --

22          THE COURT:  Well, I think where I'm headed is

23   essentially a partial grant to say that for purposes of

24   distributions or you can call it a partial grant or you

25   could call it that for purposes of the case, we need to do

Page 54

1    the following, which is that there needs to be a discovery

2    schedule and then there needs to be some sort of way by

3    which folks can identify what are the issues that have to be

4    decided in estimation.  They obviously are, estimation is

5    comparative.

6           What does the liquidation process look like versus

7    what is the estimation process look like?  Is the

8    liquidation process three days, three weeks, three months

9    versus -- it all informs each other, so my thought is that

10   we have to do that all anyway, in order to make -- so to the

11   extent your motion is saying, Judge, estimation is in the

12   code, we think we think it's appropriate in this case, it's

13   in the code.  It's not a value judgment that I make.  It's,

14   the question is whether I can make the finding of undue

15   delay to -- that is necessary to allow estimation and then

16   the devil's in the details as to the procedures.

17          So my thought is that it sounds like no matter

18   what else you do in the case, there needs to be discovery

19   that needs to be -- essentially you can call it plan

20   discovery.  Call it estimation discovery.  You can call a

21   lot of different labels.  but it's discovery on what is an

22   incredibly large claim that clearly has a significant impact

23   on the case.

24          And so I don't want to get caught up on labels,

25   but I think it's essentially what you all are seeking and I

Page 55

1    don't know that I've heard from Mr. Dietderich other -- sort

2    of a difference of opinion on the notion of having discovery

3    because much of his papers focus on, Judge, we don't know

4    what we're fighting about and we need to sort of figure some

5    things out with the understanding that he thinks some of

6    these things need to happen in another forum.  But even if

7    you assume for a second his argument that certain things

8    need to be finally decided in another forum, that doesn't

9    necessarily preclude an estimation in this forum for

10   purposes of the case moving forward, whether it be for plan

11   voting or for some other purposes.

12          So, but again, I'm not asking questions at this

13   point.  I'm just trying to give you a sense of where I am

14   and what the thinking is, but I do want to make sure to hear

15   from you any other points you wanted to make on estimation.

16          MR. DIETDERICH:  Sorry, was that addressed to me,

17   Your Honor?

18          THE COURT:  No --

19          MR. DIETDERICH:  -- Ms. Vanlare?

20          THE COURT:  -- Ms. Vanlare and then yes, I

21   definitely --

22          MR. DIETDERICH:  Thought so (audio drops)

23   response, so I want to make sure I wasn't --

24          THE COURT:  No worries.

25          MS. VANLARE:  Thank you, Your Honor.  I'm just --

Page 56

1    if you give me one minute, I just want to look over my

2    notes.  I know we --

3              THE COURT:  That's --

4              MS. VANLARE:  I think we've covered --

5              THE COURT:  -- entirely appropriate.  I had more

6    than a few judges in my prior life lay waste to my carefully

7    crafted presentation and (audio drops) check my notes.  It's

8    fine.  I apologize for doing violence to your presentation.

9              MS. VANLARE:  I think, Your Honor, I'd like to --

10   I think I've hit on the main points.  If there's any -- you

11   know, I'd like to be able to respond, of course, to any

12   points made by Mr. Dietderich, but I think I've made the key

13   ones so far.

14             THE COURT:  All right, thank you very much.  So

15   Mr. Dietderich, that's to you to respond, sort of, I guess,

16   in reply and the stay motion if there's anything else there,

17   and to hear your views on the estimation.

18             MR. DIETDERICH:  I think we've consolidated our

19   two motions.

20             THE COURT:  Yeah.  At this point, that's probably

21   fair.

22             MR. DIETDERICH:  All right.  Let me just very

23   briefly mention the lift stay.  The Debtor now has had an

24   opportunity to identify what's on the other side of the

25   scale in terms of prejudice.  I would submit, Your Honor,

1   that even without mentioning discovery, which I do want to

2   speak to, there is indeed extreme prejudice to the FTX

3   estate if, you know, all of these issues that are so central

4   to it are decided in another forum before they can be

5   decided in FTX.

6          What's on the other side of the scale?  Two things

7   were mentioned and only two things.  There were lots of

8   words about a host of issues, unnecessary, et cetera.  But

9   there were only two points that were made.  The first was

10  that there's other collateral, Bitcoin, ETH, Solana, and

11  stablecoin that would need to be valued.  With all due

12  respect, I can calculate the value of those by looking at a

13  spot price.  We're not talking about those securities.  They

14  have nothing special to do with FTX and they have absolutely

15  nothing to do with the Genesis Debtors.  Stable coin is

16  stable and Bitcoin, ETH, and Solana are three of the most

17  liquid traded currencies.

18         The only other thing that was mentioned is that

19  the loan agreements are similar to other loan agreements.

20  We're not disputing there's loan agreements.  We're not

21  disputing what they say.  We can read them.  Those are not

22  in dispute.  So on one side of the scale, we have those two

23  issues.  On the other side --

24             THE COURT:  Well, but I --

25             MR. DIETDERICH:  -- everything else.

Page 58

1          THE COURT:  -- back up for a second.  I understood

2     the argument to be that if another judge is construing the

3     meaning of those loan agreements and in fact, those loan

4     agreements echo loan agreements that are also an issue in

5     this case and are central to sort of the Debtors'

6     understanding of its legal rights in this case.

7          MR. DIETDERICH:  I'm aware of no dispute about

8     those loan agreements.  I'm not.  So if there's a dispute

9     about the loan agreements, Your Honor, we're happy to say,

10    let's have you decide the dispute about the contractual loan

11    agreement.  This doesn't necessarily need to be, by the way,

12    Your Honor, an all or nothing question, with respect to

13    issues.  But, right, balance of harms, lifting the stay.  We

14    think it is crystal clear on the record now in front of Your

15    Honor that we have demonstrated extreme prejudice and the

16    Debtor has demonstrated really nothing but a question

17    hypothetically that there might be similar questions under a

18    loan agreement which again, I'm not aware that we dispute.

19    And so on that basis --

20         THE COURT:  Well, I think that's -- I think it's a

21    bit of an overstatement, right, so I -- it's not beyond

22    imagining that the litigation in FTX among the other many

23    litigations in FTX that may occur, that this might take

24    years and that it might hold up distributions in this case

25    for years.  So I think it's a bit glib to say they've

Page 59

1    identified nothing.  I mean, it's just -- it's clear that

2    there are serious issues that everybody's concerned about.

3    So I just don't want to be glib about minimizing the

4    concerns, so delay for years as the judge has received many

5    letters from many interested creditors in many cases about

6    delays, that's a serious concern for people.

7             MR. DIETDERICH:  Your Honor, I didn't want to -- I

8    wanted to speak only to the balance of harms with respect to

9    the nature of the litigation.  I agree with you that the

10   thing that is on the table now is very precise, delay in

11   distributions.  That is the central allegation of prejudice

12   by the Genesis Debtors, both in terms of undue delay and in

13   terms of lifting the stay.  And we know by their plan that

14   we've eliminated the other issues.  We don't need to lift

15   the stay or to estimate for plan formation because they have

16   a plan.  We don't need to do it for voting because the

17   estimation condition isn't satisfied until effectiveness,

18   Your Honor, until effectiveness.

19            We don't need to do it for confirmation.  It's all

20   about distributions.  It's all about undue delay in making

21   distributions.  Well, Your Honor, there is no case cited

22   that delay in making distributions is itself undue delay.

23   Nothing.  I've not seen --

24            THE COURT:  But why wouldn't it be?

25            MR. DIETDERICH:  Well, let me go to this, because

Page 60

1    it goes to the nature of undue.  So here's an example.

2    There are kinds of claims that are very complicated to

3    liquidate and created a delay by the nature of the claim,

4    right.  So for example, in a mass tort context where you

5    need estimation because of the complexity of the factual

6    situation.  There's something inherent about that claim,

7    right, that's different than a contract claim or a

8    preference claim or anything else that can actually be

9    liquidated in an ordinary proceeding.

10            FTX is complicated.  It's not that complicated.

11   Once you resolve those basic preference issues, which we'll

12   have to do, everything else falls like rain.  This is not

13   something that by its nature needs to be estimated.  Now, of

14   course, it'd be nice to know what everybody gets.  But

15   here's the problem with the Debtors' approach.

16            We are a creditor, too.  We are entitled to the

17   same rights as any other creditor.  We didn't --

18            THE COURT:  But that -- nobody's disputing that,

19   but any creditor can have their claim estimated for a

20   variety of purposes and so I just don't understand why a

21   delay in distribution -- right, so you can see delays for

22   lots of reasons, lots of permutations.  But the -- this one

23   is not complicated.  It's to say that the size of this

24   claim, which is -- it is what it is, but because of its size

25   vis-à-vis the rest of the claim pool, you can't distribute a

Page 61

1    nickel, whatever -- in whatever currency you have and

2    whatever percentage you would distribute to anybody because

3    of the size of the claim.

4            MR. TOBIN:  That's -- Your Honor, let's go to

5    that, actually.  Because remember, the Debtors are proposing

6    to estimate in their plan only for the purposes of

7    establishing a cap on distributions, right?  In their plan,

8    it's an estimation for reserve purposes only.  In fact,

9    they're reserving the ability to litigate the merits and

10   Your Honor is exactly right.  That could happen here.  That

11   could happen there, but the only estimation they're asking

12   for is an estimation to create a cap that allows them to

13   start making distributions, assuming that there's a maximum

14   distributable -- a maximum amount they need to reserve for

15   FTX.

16           Well, it's a very large claim but they have other

17   unsecured claims.  So I believe that our initially asserted

18   claim is about 50 percent of the claims pool.  I may not

19   have the number exactly right, but it's right around there.

20   So that means 50 percent of the distributions could be made

21   immediately.  On top of that, Your Honor -- and this is

22   important -- we don't need to estimate because we are happy

23   at FTX, the Debtor has had virtually no contact with us.  We

24   -- they've known about that we've existed for months.

25   That's the other problem with undue delay because if they

Page 62

1    were really worried about undue delay, they would have

2    responded to us many months ago.

3            THE COURT:  The claim was filed in May.  Until you

4    get a claim, I'm not quite sure what you can actually do or

5    not do and whose obligation it is to act or not act.  So I

6    I'm not -- ultimately, I'm not persuaded one way or the

7    other.

8            MR. DIETDERICH:  Well, let's go to the numbers

9    because I think the numbers are relevant.  So we think we're

10   about half the claims pool on the maximum articulated

11   amount.  We are ready to stipulate -- stipulate -- the

12   maximum amount of our claim to allow distributions to go

13   forward at whatever amount makes sense based on our

14   fiduciary duties.

15           We don't even think it needs to be litigated, and

16   I'll give you an example and this is a very important

17   factor.  We are waiting on information from the Debtors, but

18   we're very close to being able to confirm that the claims

19   for preferences off the exchange are claims against the non-

20   debtor GGCR.

21           Now there's, I said, there's two flavors of

22   preferences, exchange preferences and loan preferences.  If

23   that's the case, we can reduce our claim amount against the

24   Debtors to a smaller number.  Now, it's still a very, very,

25   very large number.  It's $1.9 billion approximately, but the

Page 63

1    $1.9 billion is about 35 percent of the claims pool.

2            So now, we're talking about a case in which two-

3    thirds of the money can be immediately distributed to

4    creditors.  And let's compare this to Voyager.  And I know

5    it's only a stipulation, but Judge Wiles was very clear what

6    his view was and Judge Wiles, you know, is consistent with

7    our review of every case we've ever seen.  We have never

8    seen another bankruptcy judge resolve a preference out of

9    another judge's bankruptcy case, ever.

10           It hasn't come up often.  This is a new territory,

11   right, but there was one case where it happened.  The judge

12   said no, and Judge Wiles said no for Celsius and under the

13   guidance of what he said on the record at Celsius, we

14   negotiated a solution for Voyager.

15           Now that solution for Voyager also a liquidating

16   plan, the Voyager Debtor estimated just last month that

17   distributions if preferences are resolved in FTX's favor

18   will be 35 cents.  And if every issue is resolved not in

19   FTX's favor in the Voyager Debtor's favor, distributions

20   will be 64 cents.  That is an 82 percent increase, almost a

21   doubling of the amount of the claims pool that in the

22   Voyager case as confirmed and as running, and we're running,

23   as I said, at an accelerated proceeding to do it.

24           THE COURT:  But to beat a dead horse, as I already

25   did with Ms. Vanlare, doesn't that counsel the notion of

Page 64

1    taking this on a step-by-step basis?  Right, every week that

2    passes, people roll the boulder further up the hill, whether

3    that's in the sense of having an understanding of their

4    claims, exchanging information, learning more about what the

5    claim should be, or what the party's positions are, and also

6    of having an understanding of how a claim and how a case is

7    going to unfold.

8            And so it is, I think, every judge's experience

9    that when folks have to litigate their rights theoretically,

10   those fights are always much worse than when folks have to

11   litigate their rights actually as they develop in real time,

12   real dollars, and real procedures.

13           And so I'll sort of return to what I said to Ms.

14   Vanlare, that doesn't it make sense for the next thing to

15   happen and you can slap labels on it a lot of different

16   ways, but for some discovery to happen for folks to

17   understand the nature of your claim, what it actually is and

18   isn't, what objections may or may not exist, to understand

19   then what a liquidation process might actually be and

20   (indiscernible) understand what an estimation process might

21   be and we'd have to do that anyway, under any view of the

22   world for any case anywhere, right?

23           So, exchanging information and trying to go

24   through discovery, whether it's for claim process, this

25   case, your case, these are things that all have to happen.

Page 65

1    And that we revisit these issues at that time to figure out

2    where we are and what makes sense.

3              MR. DIETDERICH:  So Your Honor, the -- maybe I

4    make a reaction to that, because the discovery can mean many

5    things.  There are some questions that relate very closely

6    to Genesis such as the one I mentioned, which is did GGCI or

7    the Genesis Debtor receive the preferences off the exchange.

8    That's a factual question we should answer.  If we need

9    discovery to answer, we should answer.

10             There's other kinds of discovery that go to our

11   case such as the depositions of our founders, right?  The

12   expert valuation of FTT.  Those are things that in all due

13   respect we do think that our -- that discovery needs to

14   happen in front of Judge Dorsey and should probably only

15   happen in front of Judge Dorsey.

16             Now, our claim, though, the amount of our claim,

17   we can reduce the amount of our claim from whatever it was

18   3.2 to 1.9 with the resolution of this factual question

19   related to Genesis.  There may be other factual questions

20   related to Genesis that further reduce that claim and we're

21   more than happy to have discovery about those.

22             THE COURT:  Well, we always -- in bankruptcy, we

23   always talk about discovery for different kinds of process,

24   right?  There's plan discovery, there's claim discovery.

25   There can be estimation discovery and there -- they have

Page 66

1    overlaps.  Some of them are concentric circles that entirely

2    overlap, that have some overlap.

3         But to the extent that there's an issue of undue

4    delay here and argument, I don't know how I figure that out

5    unless I figure out what liquidation would look like

6    wherever it is versus therefore, what an estimation process

7    is proposed, what it looks like, because you can imagine a

8    world in which there are reserves set for purposes of

9    estimation based on an estimation process where claims are

10   actually litigated to their fullest somewhere else.  And you

11   can imagine many other permutations.  So I'm not suggesting

12   that's where I'm going.  But I'm trying to assess, I'm

13   trying to apply some practical ideas to a very interesting,

14   fascinating set of legal questions.

15        But I just have trouble understanding for purposes

16   of anything, why further factual development isn't

17   absolutely necessary for the interest of everybody and that

18   that's something that's mentioned in your papers.  It's

19   inherent in the nature of the comparison that's involved in

20   estimation and the assessment of undue delay.  And I don't

21   know that judges are particularly concerned about

22   invocations of territoriality for purposes of discovery.

23   They're just not.

24        Now, what information do you have?  What

25   information do you need?  So, it's different if we're

Page 67

1    talking about the criminal case, that's a whole other

2    different kettle of fish, but we're not talking about that,

3    right?  So -- and nobody said that any of that has any

4    impact here.  So that's kind of where I'm coming from to try

5    to figure out practical solutions to very interesting

6    problems that we could litigate up, down, and sideways

7    forever.

8              But I do have -- so I sort of gave Ms. Vanlare

9    some notion where it was.  I do have concerns about lifting

10   the stay so that this entire set of problems is sent to

11   another case for whenever it's resolved, because that really

12   does implicate one of the specific Sonnax factors in terms

13   of disruption and impact on this bankruptcy.

14             And if I ended up there, I don't think I would

15   necessarily end up there now because I just don't think I

16   have the record for that and I think the record right now

17   implicates the kinds of concerns about the disruption to

18   this case.  However, we've all learned that you never quite

19   can predict how cases work, what issues are resolved, what

20   issues aren't resolved.  And so it is a developing picture.

21             So the answers today may not necessarily be the

22   same answers a month from now, two months from now, three

23   months from now.  And so, rather than try to predict the

24   future, which judges frankly aren't any better at than the

25   parties, we try to do things incrementally in circumstances

Page 68

1    like this.

2          And so again, my thought is that exchange of

3    information and doing discovery to get a handle on what

4    people's claims are, that also informs what the factor for

5    estimation seems to be a sensible thing to do.  It also

6    helps to further the factual development that may become

7    relevant in considering stay issues in the future, but I do

8    currently have a real concern about lifting the stay so that

9    this issue is sort of entirely taken from this case to be

10   sent to Judge Dorsey.

11         Judge Dorsey and Delaware Court, wonderful.  I

12   have nothing but nice things to say, but I don't know how

13   and where that's going to fit in that case and when, and

14   probably Judge Dorsey doesn't either at this point.  And so

15   this case is on a track.  There's already a claims deadline.

16   There isn't in FTX.  It's further along.  It seems to be,

17   frankly, a more discrete set of problems, not that they

18   aren't significant and interesting, but all that factors

19   into my views about the stay relief at this junction.

20         And so that's sort of where I am.  I'm not making

21   any rulings.  I'm happy to do that.  But I want to just be

22   as candid with the parties as I can be in real time to just

23   show you where my thoughts are currently at the moment.

24         MR. DIETDERICH:  So Your Honor, I have a practical

25   suggestion, I think, if I can maybe sum up then what I'm

Page 69

1    hearing and put it into a process.  And Ms. Vanlare, if get

2    any of this wrong, I don't mean to get ahead of you on it.

3    I've just kind of been taking notes and trying to be

4    constructive.

5           First, the plan talks -- we're focused on

6    distributions.  We're focused on putting this estate in a

7    position where it can make as much distributions as it can

8    as quickly as it can, hopefully in a way that does minimal

9    prejudice to FTX's ability to resolve the merits of what it

10   needs to in its case.  So it's a big difference whether this

11   is 50 percent of -- you know, 50 percent of the

12   distributions are permitted immediately or two-thirds or

13   three-quarters.  Right?  Those are meaningful and important

14   numbers and we are committed to making sure that number is

15   as modest as our fiduciary duties commit.  We are not coming

16   into this case in order to make trouble.  We're just coming

17   into this case as a prepetition creditor to preserve our

18   rights in what we think is a liquidating plan.  The

19   estimation that's being proposed is to cap a claim.  It's

20   not to resolve the merits of the claim.  It's simply to cap

21   a claim to make distributions because again, distributions

22   have been the motivation for the prejudice the Debtor is

23   alleging.

24          The -- we can reduce that.  I believe that there

25   are going to be certain kinds of things that are going to be

Page 70

1    highly sensitive for FTX and other things that are not going

2    to be.  And so I'd like at least some understanding that as

3    we think about discovery and discussions and the resolution

4    of issues, we'll start with the things that relate to

5    Genesis and then move into the things that relate to FTX.

6    You know, obviously, we'll be totally transparent with the

7    Debtor, as I believe we have been, but I see this more as a

8    question of Your Honor has not yet decided that there is

9    undue, you know, undue delay, that merits estimation, not

10   yet decided whether there's prejudice to lift the stay, not

11   that we are launching into full born, you know, merits

12   discovery.

13             THE COURT:  Well, I'm not suggesting that.  I'm

14   suggesting that there's some -- that there, the parties are

15   the best guide to this, that there is discovery necessary

16   that would further the needs of the parties and the cases,

17   right?  And that's true for the Debtors here.  It's -- but

18   it's also true for you, right?  You want to know what it is,

19   if you were to have an estimation proceeding, what you're

20   actually fighting about.  That was a line in one of your

21   papers, to say I don't know what kind of expert to hire.

22             At the same time, there clearly are different

23   issues that have different sensitivities to different

24   parties.  I am mindful of that.  I think everybody in the

25   virtual room is mindful of that.  And so, I don't think we

1    need to necessarily tread on those concerns now, but

2    exchanging information is -- I can't see that that's a bad

3    thing, so I would think that what can come out of this is an

4    agreement about sharing information that each side thinks

5    would be helpful for its purposes.

6          I'm happy to sort of carry the stay motion if

7    folks are content to waive their 362(e) deadline or if we

8    can figure out some other procedural way to do it, and also

9    carry the estimation motion because I'm going to need more

10   specific information.  Everybody has an interest in more

11   specific information, each of the parties, but also the

12   Court so that I can make appropriate findings.  So again, my

13   thought is the more information I have and the parties have,

14   the better able we are to navigate the different series of -

15   - different issues and concerns that each of the parties

16   have.

17         It's -- it would be the best result to try to

18   minimize the impact that this case has on substantive issues

19   that are central to the FTX case, but it is also in the

20   interest of these Debtors to minimize the drag that FTX's

21   claim might have on the ability of this case to go forward.

22   I believe -- and bankruptcy professionals, you're all very

23   good at your jobs.  These are the kinds of things you're

24   quite accomplished at navigating, based on all the concerns

25   you have and all the information you have.

Page 72

1          And so I think exchanging information is one part

2     of it, but there also may be certain concessions that people

3     are able to work out to further the procedural posture.  And

4     so, that's -- what I would appreciate is that the parties do

5     have a meet and confer to try to figure out next steps.  I'm

6     not interested in pushing this off for any indefinite amount

7     of time, but my thought would be to have a check-in, you

8     know, and whenever the parties think it's appropriate.

9     There's -- each party has a motion, so each party each party

10    has a right to be heard.  And so, everybody has a right to

11    have access to the Court on that.

12         So, I'm happy to check in, in ten days, two weeks,

13    whatever it is, to figure out where we are and the best ways

14    to move forward, but I do think there's some tangible steps

15    heard about reductions, potential reductions to the claim

16    based on information.  And I'm sure that there are certain

17    issues that are of most importance that's been fleshed out,

18    I think during today's hearing in a way that I thought was

19    helpful.  So that's where I am and I do think a meet and

20    confer would be the next step and I'm happy to get back

21    together with the parties whenever the parties think that's

22    appropriate.

23         I'm not trying to give anybody a stiff arm in a

24    way where delay becomes its own complicating factor, but I

25    am trying to let you all do your jobs in a way that can help

Page 73

1    further the interest of this case, while not unduly

2    hampering the FTX case.

3              MR. DIETDERICH:  Thank you, Your Honor.  On our

4    side for the FTX Debtors, we're fine with a double carry and

5    we're happy, obviously, with a meet and confer and ready to

6    get started right away.

7              THE COURT:  All right.  Ms. Vanlare, your

8    thoughts?

9              MS. VANLARE:  No, thank you, Your Honor.  Just,

10   first because I can't help myself, I do think that Mr.

11   Dietderich somewhat mischaracterized our position on

12   estimation, which I know we're sort of preserving, but it's

13   not just a question of distributions, right?  It's also a

14   question of retaining our ability to reach a consensual

15   resolution to these cases, which is huge.

16             THE COURT:  And I did hear you on that.

17             MS. VANLARE:  Okay.

18             THE COURT:  And part of my interest in a meet and

19   confer is that also does, I think, hopefully further that

20   interest.

21             MS. VANLARE:  Yes.

22             THE COURT:  Right?  In the context of these

23   motions.

24             MS. VANLARE:  And we are seeking estimation for

25   all purposes just to be clear.  But Your Honor, I think your

Page 74

1    suggestion of letting the parties proceed to discovery meet,

2    I think, all of that makes eminent sense.  I think that, you

3    know, from our perspective, as long as we preserve, again,

4    the timeline, we're fine with this and so, we take your

5    instruction to do again what we were intending to do and

6    hoping to do anyway, which is to sort of jump right into

7    meet and confers and an expedited discovery schedule and

8    then come back to Your Honor to check in.

9             And if, you know, if we feel like we are not

10   progressing on the speed that we need to progress, we would

11   appreciate certainly an opportunity to come before you and

12   talk to you about that so that we can make sure that we are

13   remaining on pace.

14            THE COURT:  Yeah, I think part of the social

15   compact when judges do things like this is to be available,

16   for anything and everything that might come up as a result.

17   So I'm at the judicial conference next week, but I can make

18   myself available if that -- the need, if it can be helpful

19   and I'll be guided by you all.  So you'll reach out to

20   chambers and let us know if a call would be helpful in terms

21   of the status.

22            And so you can also let me know, I don't want to

23   leave here without having another sort of date for things.

24   I know that we have a number of dates already on the

25   calendar for this case.  Give me a second.  I have those

1    written down in various places and I'm sure you do as well.

2            So I certainly want to have, that sort of on the

3    record but I think the next day we have, I think is July --

4            MS. VANLARE:  That's correct, Your Honor.

5            THE COURT:  And so we could use that just as a

6    formal day, but that does not preclude parties if you want

7    to chat next week or you wanted to -- you know, whenever.

8    I'll make myself available.  So, but I would adjourn the two

9    motions until that date.  I would choose adjourning rather

10   than making some sort of interim ruling or ruling without

11   prejudice to reassertion just because I'm not interested in

12   people having to refile anything.  It's a waste of your

13   time.  So that would be fine.

14           So we'll use July 6th as sort of a holding date

15   for the two motions and again, I'll be guided by what you

16   might need between now and that date.  If you reach

17   agreements and you want us to get something, whether it's a

18   letter or stipulation,, whatever is most convenient and

19   efficient for me to so-order, I'm happy to do that.  Again,

20   I'll be guided by your collective wisdom on that.

21           MR. DIETDERICH:  Your Honor, may be heard on just

22   one point?

23           THE COURT:  Sure.

24           MR. DIETDERICH:  Because Ms. Vanlare -- I thought

25   we were done and then Ms. Vanlare just said something in her

Page 76

1    last remarks that I find highly, highly problematic.  She

2    says we were estimating for all purposes.  So I think, and

3    I'd like clarification on exactly what we're talking about,

4    the plan has estimation for reserve purposes to make

5    distributions only.  Their pleading is completely ambiguous,

6    what they're meaning to do.  The plan says estimation to set

7    a cap for distribution purposes.

8              Obviously, if the Debtor is reserving the rights

9    to estimate this claim for the purposes of allowance or

10   determination, that's a completely different proposition.

11   And so I don't know if Your Honor is in a position today,

12   but I would just submit that we've had a discussion that up

13   until that moment was all about estimation to allow

14   distributions to happen.  Merits estimation of these matters

15   is -- would be quite a different, you know, can of worms.

16   Now, I don't know if Your Honor is in a position to deny the

17   motion other than for estimation for distribution purposes.

18             That would certainly be our preference because we

19   think there's been no showing, nor could there be any

20   showing with their plan on file that there's any basis to

21   make, to estimate for anything other than distributed

22   purposes.  But I just wanted to make sure that was clear

23   because we strongly, strongly object both to the lack of

24   communication with us, the lack of clarity on what they want

25   or what they're asking for, and to the idea that as a threat

Page 77

1     to our estate at the last moment, they put in this idea of

2     merits, not distributional estimation.

3              THE COURT:  All right.  Well, my intent was not to

4     make a ruling today on the motion other than to direct the

5     parties to meet and confer and to work on information

6     exchange as well as identification of issues that might be

7     dealt with specific issues and some issues in a more nuanced

8     way, respecting that the issues that you've identified, Mr.

9     Dietderich, are, you know, particular concerns to FTX or not

10    necessarily the same issues that are on the top of Ms.

11    Vanlare's list.

12             So Ms. Vanlare, I'll ask you.  I'm -- what I took

13    your comment to be is that you filed your motion.  Whatever

14    you sought it in your motion, you reserve to seek all those

15    rights.  That's how I took it, but maybe there's something

16    more worth saying.

17             MS. VANLARE:  I just want to respond.  I mean, I

18    think our motion is clear.  Our papers were clear.  We are

19    seeking to estimate for all purposes.  I had conversations

20    with Mr. Dietderich's colleagues, so I just want to be very

21    clear that I think we've been clear and again, it's not for

22    today but, it's certainly not something that is new that's

23    coming up today.  So I just wanted to respond.

24             THE COURT:  Yeah.  So my intent is to not make a

25    ruling today.  The one thing I will say, which I thought

Page 78

1    where Mr. Dietderich was going, is when you said, well, as

2    long as we're preserving on the schedule that we've

3    contemplated.  My thought is that I'm agreeing that

4    discovery and exchange of information needs to happen.  I'm

5    not making it -- I'm not throwing any cold water on

6    anybody's proposed schedule at this point, but nor am I

7    endorsing anybody's schedule at this point.  It's all part

8    of the bigger picture.

9             So it's -- realize that that's particularly

10   opaque.  I'm not trying to be clever, but again, consistent

11   with the, we're going to see how things develop over time,

12   that's really where I'm going.  So I'm not trying to make a

13   ruling on a schedule, but I also just want to make it clear,

14   I'm not endorsing any particular schedule other than sort of

15   next steps.  But I think the next steps are not inconsistent

16   with, Ms. Vanlare, what you suggest in your motion.  So

17   we'll take it from there.

18            So, with that, let me ask, Ms. Vanlare if there's

19   anything else that you think we need to address here this

20   morning -- this afternoon?

21            MS. VANLARE:  Not at this time, Your Honor, but I

22   would just reserve my -- it sounds like there may be others

23   who may want to speak.  So I would like to just reserve an

24   opportunity to respond if --

25            THE COURT:  All right.  Mr. Dietderich --

1              MS. VANLARE:  -- any other issues that may come

2    up.

3              THE COURT:  All right.  Mr. Dietderich, that same

4    question to you.

5              MR. DIETDERICH:  I'm done, Your Honor.  This is

6    clear.  We'll talk with the Debtor and we'll get to the

7    bottom of it.  We do appreciate your clarification on the

8    schedule.  I thought that was assumed, but we obviously

9    would have a completely different view on the schedule

10   depending on the scope of what's being estimated and whether

11   it's distribution or merits.

12             THE COURT:  Well, again, I think people have an

13   idea of what they -- you know, again, discovery is the

14   perfect example of fighting about the theoretical versus

15   fighting about the actual.  One is -- fighting about

16   theoretical discovery rights is almost uniformly a

17   nightmare.  So my thought is that everybody has things that

18   they -- at the top of their list, so let's deal with the

19   things at the top of the list that are the things that are

20   most essential to essentially unlock the next the next steps

21   in the case.

22             So, all right.  So with that, I realize I've heard

23   only from two parties.  I know there are plenty of other

24   parties here who have joined in papers and joined in

25   arguments and I've read all those.  I'm happy to give those

Page 80

1    folks an opportunity to be heard.  I also don't want to

2    snatch, sort of, defeat from the jaws of a victory in the

3    sense of having a sense of where we're going at this point.

4    But let me at least give folks a chance to be heard.  So

5    I'll start with the Official Committee in the Genesis case,

6    Mr. Shore.

7              MR. SHORE:  Thank you, Your Honor.  Again, Chris

8    Shore from White & Case on behalf of the Official Committee.

9    I understand, Your Honor, what Your Honor said and taking a

10   pause and see if we can't work something out.  We'll work

11   with the Debtors to do that and see if we can't come up to a

12   solution that solves everyone's needs.  If we can't, I don't

13   think you need to hear from me today.  I'm going to give

14   peace a chance here, but if we're not able to get there, I

15   do want to provide Your Honor with the Committee's views

16   that not all delays are equal.

17              There are specific issues in crypto cases that

18   anything that's going to affect this timeline needs to be

19   looked at very carefully and also our view that given what

20   the parties have laid out with their respective positions, I

21   actually think estimation and setting up an estimation

22   procedure has benefits beyond just distribution.

23              It can address what Your Honor called the ripple

24   effects of any ruling you might make.  It can give parties

25   insight and make it more likely to be able to settle with

Page 81

1   DCG.  There are a number of other factors that having an

2   estimation hearing on -- in front of Your Honor and not

3   waiting until after plan confirmation to address it, there

4   may be some real benefits which we'd like you to hear us on.

5           THE COURT:  All right, that's all fair points and

6   I trust you will share those with other interested parties

7   as part of ongoing discussions.

8           So, let me hear from Mr. Rosen on behalf of the Ad

9   Hoc Group.

10          MR. ROSEN:  Thank you, Your Honor, and I will not

11   belabor the point.  It's been a thorough and an exhaustive

12   conversation that's gone on for the last hour-plus.  We, as

13   you know, Your Honor, did finally joinder with respect to

14   the FT -- excuse me, the Debtors' position on the lift stay.

15   We joined in the Debtors' position with respect to

16   estimation.

17          Like Mr. Shore, we've been working collaboratively

18   with the UCC and with the Debtors on this project and we

19   will continue to do so.  But like what Mr. Shore said, in

20   the event that peace does not break out, we will actively be

21   involved in the litigation.  But for now, Your Honor, you

22   know, we agree with you.  Let's see what can be done on a

23   collaborative basis and see if we can reach some sort of

24   closure.  Thank you, Your Honor.

25          THE COURT:  All right.  Thank you very much.  And

Page 82

1    I know that there is an Official Committee on behalf of the

2    FTX Debtors.

3              MR. PASQUALE:  Thank you, Your Honor.  Ken

4    Pasquale from Paul Hastings with the FTX Committee.  All I

5    wanted to make sure, Your Honor, is that our Committee is

6    involved in what we've been discussing today.  There was a

7    footnote in the Debtors' papers about reserving the right to

8    object to our standing.  Obviously, our Committee has a

9    significant duty to fulfill to the creditors in our case and

10   we can argue about standing later if need be.  But for

11   present purposes, we just want to make sure our committee is

12   not excluded from the discussions that Your Honor has

13   directed today.

14             THE COURT:  All right.  Thank you very much.  I

15   appreciate that.  Anyone else who wishes to be heard?

16             All right.  So I certainly, several --

17             MR. UPTEGROVE:  Your Honor?

18             THE COURT:  Yes, go ahead, please.

19             MR. UPTEGROVE:  William Uptegrove.  Good morning,

20   Your Honor.  William Uptegrove on behalf of the United

21   States Securities and Exchange Commission.  May I be heard

22   on an unrelated issue?  I'll be brief.

23             THE COURT:  Sure.

24             MR. UPTEGROVE:  To just note at the outset that

25   the SEC is a creditor here, having filed an enforcement

Page 83

1    action against Debtor Genesis Global Capital for violation

2    of Section 5 of the Securities Act.

3            Regarding our concerns and the issue I wanted to

4    raise today, the Debtor filed its amended plan and

5    disclosure statement earlier this week and then last week,

6    the Debtor filed a notice in which they scheduled objections

7    to approve -- to the approval of the disclosure statement

8    for July 5th with a hearing on July 12th, the day after the

9    auction in this case is scheduled, if there's going to be

10   one.

11           Your Honor, we just have a couple of concerns here

12   about timing.  First, as we read it, Rule 2002(b) provides

13   that notice for filing objections to the approval of

14   disclosure statement shall be on not less than 28 days'

15   notice.  Twenty-eight days from the filing here is July

16   11th, not July 5th.  Second, there's just practical

17   realities.

18           THE COURT:  So I think I got your gist.  The one

19   thing I -- let me ask Ms. Vanlare.  I don't know if anybody

20   picked up the phone and called anybody because that's,

21   that's always a better option than speaking exclusively

22   through me.  So here's what I'm going to do.  I'm going to

23   give you a chance to chat.  Obviously, process is really

24   important and if people can't reach sort of an appropriate

25   way to address this, I'm happy to address it.  And so what I

Page 84

1    would say is, you know, I may be getting a call or an update

2    next week at some point about where things stand and I'd ask

3    if that -- people can let me know if there's still an

4    outstanding issue about any timing.

5           Obviously, people need time and obviously I

6    understand the desire of the Debtors to move forward, but I

7    at least want to give the parties a chance to have a chance

8    to talk first and I think that that's probably the

9    appropriate first step.  Not -- and if I need to make a

10   ruling or adjust dates, I'll do that, but it's -- again,

11   this is the downside of the virtual hearing.

12          What I would do in -- used to be together, is give

13   you a minute to actually cross the aisle and talk to one

14   another, which is really the preferred way to get a lot of

15   business done and that's why a bunch of my cases, anything

16   that's contested, I'm going to -- I'm starting to bring

17   people back because it's just easier to deal with things

18   like this.

19          MS. VANLARE:  Your Honor, thank you.  We're always

20   open to trying to resolve issues before they reach Your

21   Honor and certainly welcome Mr. Uptegrove contacting us.  We

22   speak regularly, in fact, so we're happy to hear his

23   concerns and if they're not resolved, bring them before Your

24   Honor.  But certainly happy to do that.

25          MR. UPTEGROVE:   Thank you, Your Honor.  Just one

Page 85

1    last point is that this was an issue that we raised so we'll

2    raise it again on a phone call and see if we come up with a

3    different --

4              THE COURT:  All right.  That's fair.  All right.

5    I -- that's fine.  I don't want to get into sort of who said

6    what to whom.  I -- judges are uniquely in a poor position

7    to decipher those things, having been in my former life,

8    seeing judges sort of misconstrue who had actually said what

9    to whom and I've learned it's -- I only see the tip of the

10   iceberg so I'll refrain from jumping into that, but I'm

11   never going to fault anybody for raising an issue so that we

12   can make sure that it does get addressed.  So perfectly

13   fine.  And again, if you can't get there, you'll let me know

14   and we'll figure that.

15             All right, anybody else who wishes to be heard?

16   All right.  So I'll just end with the comment that several

17   people said they hope peace breaks out.  I guess I would

18   agree with that but I also want people to understand I'm not

19   trying to punt this for peace necessarily.  Peace is fine.

20   My -- I guess I'd use a different P word, which is progress,

21   right?

22             So there are a number of issues that are raised in

23   the various pleadings that are -- that cry out for progress

24   on some specific fronts to allow us to make more intelligent

25   decisions among the parties and for a Court to make a more

Page 86

1    intelligent and well-grounded decision.  So I -- we all

2    aspire to peace but we hope for progress and enough progress

3    that it turns into peace.

4              So, but thank you very much for everybody's

5    carefully crafted and thoughtful arguments today on what are

6    very interesting issues.  I appreciate it.  And so if

7    anybody ever wants to torture a series of law students an

8    advanced Chapter 11 bankruptcy, you have a perfect fact

9    pattern that you can rip from the pages of the news.  So

10   with that, thank you all very much.  Look forward to

11   speaking with you all soon.  Be well.

12             MR. DIETDERICH:  Thank you, Your Honor.

13             MS. DIERS:  Thank you, Your Honor.

14             MS. VANLARE:  Thank you.

15             (Whereupon these proceedings were concluded at

16   12:58 PM)

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature: Sonya M. Ledanski Hyde]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  June 22, 2023

[& - addition]                                                      Page 1

**&**

**&**   3:3,11,18
5:16 12:10,24
13:7,10,20
80:8

**0**

**07068**   6:12

**1**

**1.2**   31:19
**1.9**   62:25 63:1
65:18
**100**   17:15
**10004**   3:21
6:19
**10006**   3:6 6:5
**10014**   4:20
**10019**   7:4
**10020**   4:4 5:20
**10036**   5:12
**1006**   4:19
**10153**   3:14
**10166**   4:13
**105**   2:9
**10601**   1:14
**11**   12:4,6 15:11
86:8
**11501**   87:23
**11th**   27:4
83:16
**12**   39:15 44:2
**12151**   87:6
**1221**   5:19
**12221**   7:10
**125**   6:18
**1271**   4:3

**12:26**   1:17
**12:58**   86:16
**12th**   83:8
**13**   52:19
**1301**   7:3
**1313**   7:18
**15**   1:16
**19899**   7:19

**2**

**20**   12:19
**200**   4:12
**2002**   83:12
**201**   4:19
**2023**   1:16
87:25
**22**   87:25
**23-10063**   1:3
**248**   1:13
**28**   83:14
**289**   2:3

**3**

**3.2**   29:9 65:18
**30**   17:15
**300**   1:13 87:22
**3018**   2:10
**30326**   5:5
**30th**   19:18
**330**   87:21
**35**   63:1,18
**362**   71:7
**373**   2:6

**4**

**4**   16:11
**432**   2:1 14:10

**5**

**5**   83:2
**50**   61:18,20
69:11,11
**502**   2:9 19:17
**5th**   83:8,16

**6**

**64**   63:20
**650**   7:10
**6th**   75:14

**7**

**7**   17:11,14 34:1
**75251**   7:11
**767**   3:13

**8**

**82**   63:20

**9**

**900**   5:4
**950**   5:4

**a**

**abelson**   5:22
**ability**   20:11
52:20 61:9
69:9 71:21
73:14
**able**   28:4,7
48:8 53:9
56:11 62:18
71:14 72:3
80:14,25
**absent**   34:13
**absolutely**   35:5
57:14 66:17
**accelerated**
21:23 63:23

**access**   72:11
**accomplish**
30:7
**accomplished**
71:24
**accurate**   39:8
87:4
**acknowledge**
41:19
**act**   62:5,5 83:2
**action**   6:10
16:4 23:25
25:21 83:1
**actions**   21:11
36:6
**actively**   81:20
**actual**   27:9,22
27:23 31:16
45:14,19 47:24
79:15
**actually**   18:5
19:10 28:10
36:1 45:14,19
46:14 50:25
52:11 60:8
61:5 62:4
64:11,17,19
66:10 70:20
80:21 84:13
85:8
**ad**   5:10 13:1,3
81:8
**adam**   4:6
**adding**   49:22
**addition**   19:14
35:16 36:21

| | | | |
|---|---|---|---|
| **additional** 36:16 | **agreeing** 21:19 49:1 78:3 | **amanda** 8:12 | **apologize** 56:8 |
| **address** 22:2 32:18 33:22 35:23 42:17 78:19 80:23 81:3 83:25,25 | **agreement** 15:17,19,21 21:17 24:2 58:11,18 71:4 | **ambiguous** 76:5 | **appearance** 12:13,22 13:14 |
| | | **amended** 83:4 | **appearances** 12:7,16 14:5 |
| | | **american** 51:4 | |
| | | **americas** 4:3 5:19 7:3 | **applicable** 16:20 |
| **addressed** 20:12 45:23 55:16 85:12 | **agreements** 39:5,6 57:19 57:19,20 58:3 58:4,4,8,9 75:17 | **amount** 2:8 17:4 31:25 45:15,16 49:3 61:14 62:11,12 62:13,23 63:21 65:16,17 72:6 | **application** 33:25 |
| | | | **applied** 34:20 |
| **adjourn** 75:8 | | | **applies** 25:14 29:5 |
| **adjourning** 75:9 | **ahead** 18:24,25 23:1 48:8 69:2 82:18 | | **apply** 37:24 66:13 |
| **adjudicated** 44:22 | **airlines** 51:4 | **anais** 10:12 | **applying** 17:21 17:22,24 |
| **adjust** 84:10 | **aisle** 84:13 | **analog** 38:23 38:23 | **appreciate** 72:4 74:11 79:7 82:15 86:6 |
| **administered** 12:5 | **akiko** 10:9 | **analysis** 28:16 30:12 | |
| | **al** 6:17 | **andrew** 6:14 8:5 10:25 11:2 11:5 | |
| **admittedly** 25:11 | **alameda** 18:4,7 37:2 39:6 | | **approach** 25:16 49:8 60:15 |
| **advanced** 15:18 86:8 | **alianna** 1:25 | **andy** 13:19 15:8 | |
| **affect** 28:9,10 80:18 | **allegation** 59:11 | | **appropriate** 32:4 40:2,6 44:21 51:15 54:12 56:5 71:12 72:8,22 83:24 84:9 |
| | **allegations** 16:15,25 26:6 | **answer** 22:13 43:6 45:21 65:8,9,9 | |
| **affects** 27:20 27:21 | | | |
| **afford** 49:17 | **alleging** 69:23 | **answers** 21:23 67:21,22 | |
| **afternoon** 78:20 | **allow** 15:24 19:7 54:15 62:12 76:13 85:24 | **anybody** 47:15 61:2 72:23 83:19,20 85:11 85:15 86:7 | **appropriately** 32:24 |
| **agenda** 2:1 14:9,22 | | | **approval** 83:7 83:13 |
| **agent** 3:19 13:11 | **allowance** 76:9 | **anybody's** 52:8 78:6,7 | **approve** 83:7 |
| | **allowed** 47:2 52:19 | | |
| **ago** 62:2 | | **anyway** 50:1 50:19,22 54:10 64:21 74:6 | **approximately** 62:25 |
| **agree** 20:6 43:16 59:9 81:22 85:18 | **allowing** 51:5 | | |
| | **allows** 46:22 51:13 61:12 | | |

**argue** 82:10
**argued** 35:7
**argument**
  39:19,20,24
  42:5 43:19,25
  46:14 55:7
  58:2 66:4
**arguments**
  42:3 79:25
  86:5
**arianna** 8:14
**arm** 72:23
**aronzon** 8:23
**arose** 27:3
**articulated**
  48:25 62:10
**ashmead** 6:7
**aside** 33:15
**asked** 21:18
  23:18 34:4
  41:25 45:20
**asking** 24:18
  55:12 61:11
  76:25
**aspect** 47:14
  48:10,12
**aspects** 34:19
**aspire** 86:2
**asquith** 7:25
**asserted** 46:7,9
  46:19 49:3
  61:17
**assess** 66:12
**assessment**
  66:20
**assets** 17:16,16
  35:20 36:25

  37:11,25 46:10
**assume** 24:4
  55:7
**assumed** 79:8
**assumes** 49:13
**assuming** 53:8
  61:13
**atlanta** 5:5
**attorney** 7:8
**attorneys** 3:4
  3:12,19 4:2,10
  4:18 5:2,10,17
  6:2,10,17 7:2,9
  7:16
**auction** 83:9
**audio** 55:22
  56:7
**authorize** 2:6
**automatic** 2:3
**autumn** 7:13
**available** 45:11
  74:15,18 75:8
**avenue** 3:13
  4:3,12 5:19 7:3
**avoid** 30:7
**avoidance** 36:5
**aware** 58:7,18

**b**

**b** 1:21 83:12
**back** 32:15
  36:17 40:16
  58:1 72:20
  74:8 84:17
**backdrop**
  50:14
**background**
  38:2

**bad** 71:2
**balance** 32:21
  33:20 43:14
  44:10 58:13
  59:8
**bankman**
  16:16 19:1
**bankruptcies**
  21:15
**bankruptcy**
  1:1,12,23 2:9,9
  12:3 13:17
  15:25 19:18
  20:6,13,19,25
  21:13,14 22:15
  23:12,13,22
  26:13,13,23,24
  27:11 30:14
  36:15 41:9
  45:12,15 52:23
  52:24 63:8,9
  65:22 67:13
  71:22 86:8
**bar** 19:18
**barak** 9:25
**barnwell** 8:24
**barry** 9:23
**based** 24:10
  43:6 62:13
  66:9 71:24
  72:16
**basic** 60:11
**basically** 50:8
**basis** 22:7 45:1
  48:15 51:25
  58:19 64:1
  76:20 81:23

**bad** 71:2
**battery** 3:20
  6:4
**beat** 52:25
  63:24
**bed** 44:13
**behalf** 12:10
  12:24,25 13:3
  13:4,7,8,10,12
  13:14 33:5
  80:8 81:8 82:1
  82:20
**behavior** 25:20
  25:22
**behlmann** 6:14
**belabor** 81:11
**believe** 13:22
  26:20 28:16
  33:18 42:3
  61:17 69:24
  70:7 71:22
**beller** 6:21
**benefits** 80:22
  81:4
**benjamin** 6:21
  10:2
**best** 22:1 26:24
  45:22 70:15
  71:17 72:13
**better** 14:16
  48:3,5 50:24
  52:19 67:24
  71:14 83:21
**beyond** 58:21
  80:22
**big** 28:24 69:10
**bigger** 78:8

bilateral   19:14
  19:22 23:10
  24:24
billion   16:11
  29:10 31:19
  62:25 63:1
bit   24:8 30:23
  37:5 47:9,20
  58:21,25
bitcoin   37:11
  57:10,16
blockfi   21:13
blown   48:7
board   7:9
book   18:4
born   70:11
borrowed   18:8
bottom   79:7
boulder   64:2
brandon   9:15
brass   48:12
break   81:20
breaks   85:17
bremer   8:25
brendon   8:24
brian   5:14 9:2
  11:4 13:2,20
brief   82:22
briefing   50:9
  52:3
briefly   56:23
bring   84:16,23
broad   6:18
  34:10
broader   40:21
broadly   36:19

brooks   9:1
brushed   33:15
built   31:9
bulthuis   9:2
bunch   84:15
burden   42:23
  42:25 43:2
  47:13
burke   9:3
business   23:20
  24:10,25 25:16
  38:4 39:1
  84:15
businesses
  17:16

**c**

c   2:9 3:1 7:6
  12:1 87:1,1
calculate   16:15
  18:12 57:12
calculation
  45:11
calendar   74:25
call   12:20 26:7
  53:24,25 54:19
  54:20,20 74:20
  84:1 85:2
called   43:21
  80:23 83:20
calls   25:19,22
  37:16
candid   68:22
cap   61:7,12
  69:19,20 76:7
capital   17:5
  37:17 83:1

capitalization
  16:11
card   20:16
carefully   56:6
  80:19 86:5
carry   71:6,9
  73:4
case   1:3 5:16
  12:4,5,24
  13:15,17 16:25
  18:14 19:5
  20:7 21:2,20
  22:2,5,14,25
  23:3 25:5,7
  26:12 27:2,2
  27:11 28:10,11
  28:21 29:12,19
  30:8,24 34:18
  34:19,20 36:5
  36:5,19 38:9
  38:12,13,15
  39:22,22 40:24
  41:1,6,7,10,10
  41:11,13 42:8
  43:3,23,23,24
  44:8 46:12
  47:9 50:4
  53:25 54:12,18
  54:23 55:10
  58:5,6,24
  59:21 62:23
  63:2,7,9,11,22
  64:6,22,25,25
  65:11 67:1,11
  67:18 68:9,13
  68:15 69:10,16
  69:17 71:18,19

  71:21 73:1,2
  74:25 79:21
  80:5,8 82:9
  83:9
caselaw   42:23
cases   14:2
  15:11 16:2
  19:8,12 35:12
  36:7,8 41:4,17
  41:20,21,24
  43:4 44:2,22
  45:17 46:13
  48:21 49:11,16
  59:5 67:19
  70:16 73:15
  80:17 84:15
categories
  34:10
caught   54:24
celsius   29:14
  63:12,13
central   16:5
  57:3 58:5
  59:11 71:19
cents   63:18,20
certain   22:10
  22:11 23:11,14
  34:18,19 35:12
  35:25 39:8
  44:3,11 45:13
  51:10 55:7
  69:25 72:2,16
certainly   29:24
  33:21 34:1,10
  34:17 39:25
  40:5,6,18 41:8
  43:22 44:24

[certainly - combination]

45:6 47:3
51:19 74:11
75:2 76:18
77:22 82:16
84:21,24
**certified** 87:3
**cetera** 57:8
**cha** 9:4
**challenge**
44:25 49:21
**chambers**
74:20
**chance** 32:16
80:4,14 83:23
84:7,7
**chances** 23:16
**chapter** 12:4
15:11 17:11,14
86:8
**characteristics**
17:3 25:15
**characterized**
24:15 37:3
**characterizing**
25:2
**charge** 30:8
**chat** 75:7 83:23
**chatted** 14:16
**check** 53:20
56:7 72:7,12
74:8
**chester** 8:11
**chief** 53:18
**chips** 41:3
**choice** 31:15
31:15

**choose** 75:9
**chris** 12:23
80:7
**christian** 6:22
8:15
**christine** 10:4
**christopher**
8:17
**circles** 66:1
**circuit** 17:23
17:24 33:14
**circumstances**
19:3 26:23
40:23 42:25
43:3 67:25
**cited** 40:14
59:21
**claim** 15:16,16
15:18,20,22,23
15:25 17:1,13
19:17,19 26:14
26:16 27:20,22
27:23 28:23
29:6 30:13
31:18,19,25
44:19 45:8
47:7,8,22,22
47:24 48:1,7
48:10 49:10
50:16 52:13,22
54:22 60:3,6,7
60:8,19,24,25
61:3,16,18
62:3,4,12,23
64:5,6,17,24
65:16,16,17,20
65:24 69:19,20

69:21 71:21
72:15 76:9
**claimants**
44:12 46:10
51:20
**claims** 2:8 25:2
26:17 35:14,16
35:19,20 36:1
36:15 39:10
41:3,23 44:19
44:22 46:8,19
48:22 49:3,5
51:24 60:2
61:17,18 62:10
62:18,19 63:1
63:21 64:4
66:9 68:4,15
**clarification**
76:3 79:7
**clarity** 76:24
**class** 6:10
**classic** 28:15
**clear** 20:5
26:11 33:5
51:6 58:14
59:1 63:5
73:25 76:22
77:18,18,21,21
78:13 79:6
**clearly** 25:19
39:15 44:8
46:11 47:3,14
49:18 53:3
54:22 70:22
**cleary** 3:3
12:10

**clever** 78:10
**clinton** 7:24
**cloning** 34:13
**close** 52:5
62:18
**closely** 27:11
27:13 32:6
65:5
**closer** 40:18
**closure** 81:24
**code** 2:9 30:14
46:22 47:2,10
54:12,13
**cognizable**
26:6,7 27:8
**coin** 57:15
**coins** 37:12
**cold** 78:5
**colin** 8:22
**collaborative**
81:23
**collaboratively**
81:17
**collateral**
16:24 17:8
36:24,25 37:7
37:20 38:24
57:10
**collateralized**
16:7 17:10
**colleagues**
77:20
**collective**
75:20
**combination**
50:9

[come - constructive]                                                                 Page 6

| | | | |
|---|---|---|---|
| **come**  14:16 | **communicati...** | **concentrating** | **confirm**  62:18 |
| 24:23 32:15 | 76:24 | 42:6 | **confirmation** |
| 37:8 40:1 | **compact**  74:15 | **concentric** | 32:1 35:8 |
| 41:13 50:19 | **company**  3:19 | 66:1 | 46:15 49:23 |
| 63:10 71:3 | 13:8,10 | **concern**  20:24 | 51:6,18 59:19 |
| 74:8,11,16 | **comparative** | 23:11,17 29:23 | 81:3 |
| 79:1 80:11 | 54:5 | 34:11 51:25 | **confirmed** |
| 85:2 | **comparator** | 53:18 59:6 | 63:22 |
| **comes**  42:7 | 50:12 | 68:8 | **confirming** |
| 48:9 | **compare**  47:25 | **concerned** | 35:9 |
| **coming**  18:16 | 63:4 | 41:16 49:23 | **confirms**  31:22 |
| 19:1 51:16 | **compared** | 59:2 66:21 | **confusing** |
| 67:4 69:15,16 | 35:20 | **concerns**  20:8 | 26:10 |
| 77:23 | **comparison** | 43:14,22 59:4 | **conheeney**  9:5 |
| **commence** | 66:19 | 67:9,17 71:1 | **connected** |
| 46:18 | **compelling** | 71:15,24 77:9 | 13:22 19:5 |
| **comment** | 28:16 | 83:3,11 84:23 | **connection** |
| 77:13 85:16 | **competing** | **concessions** | 32:13 38:18 |
| **commenting** | 21:14 | 72:2 | **consensual** |
| 37:18 | **completely** | **concluded** | 35:13,15 73:14 |
| **comments**  23:8 | 31:17 76:5,10 | 86:15 | **consequences** |
| 30:12 31:2 | 79:9 | **conclusion** | 37:22 43:7 |
| 44:25 | **complex**  41:21 | 47:7 | **consider**  22:6 |
| **commission** | **complexity** | **condition**  26:8 | 39:13 |
| 5:1,3 82:21 | 60:5 | 28:25 29:2,3,4 | **consideration** |
| **commit**  21:22 | **complicated** | 29:5,6,7,16 | 40:9 |
| 69:15 | 20:6 60:2,10 | 31:9 45:3,3 | **considering** |
| **committed** | 60:10,23 | 59:17 | 68:7 |
| 52:4 69:14 | **complicating** | **confer**  72:5,20 | **consistent** |
| **committee** | 72:24 | 73:5,19 77:5 | 15:15 31:18 |
| 4:10 5:17 6:2 | **component** | **conference** | 63:6 78:10 |
| 12:21,24 13:3 | 34:22 35:5,15 | 74:17 | **consolidated** |
| 13:22 14:1 | 48:24 | **conferring** | 56:18 |
| 49:13 80:5,8 | **components** | 51:20 | **constitutes** |
| 82:1,4,5,8,11 | 17:2 | **confers**  74:7 | 18:2 |
| **committee's** | **comprehensive** | **confines**  23:12 | **constructive** |
| 80:15 | 15:2 | | 69:4 |

**construing**
58:2
**contact**  61:23
**contacting**
84:21
**contemplated**
78:3
**content**  71:7
**contested**
84:16
**context**  37:8
39:3 48:9 60:4
73:22
**continue**  19:7
81:19
**contours**  39:19
40:3
**contract**  60:7
**contractual**
58:10
**contrast**  27:19
**control**  20:11
**convenient**
75:18
**conversation**
81:12
**conversations**
77:19
**copy**  14:9
**corp**  7:2
**correct**  23:9
75:4
**correctly**  37:15
38:22
**costs**  36:16
**counsel**  12:8
15:6 42:20

63:25
**counterpoint**
36:22
**country**  87:21
**couple**  83:11
**course**  15:25
17:8 18:1,2,10
18:12,14,15,18
18:20 24:7,9
24:10,11,12
25:16 27:15
29:11 30:8
47:6 51:21
53:11 56:11
60:14
**court**  1:1,12
12:2,3,12,25
13:4,8,12,21
14:3,23 16:3
20:1,10,19
21:1,7,25 23:5
23:7 24:14
29:21 32:10,12
33:2,16,23
36:15,17 37:5
37:14 38:1
39:18 40:13
42:4,15 43:5
44:23 46:23
48:14 49:25
52:6 53:22
55:18,20,24
56:3,5,14,20
57:24 58:1,20
59:24 60:18
62:3 63:24
65:22 68:11

70:13 71:12
72:11 73:7,16
73:18,22 74:14
75:5,23 77:3
77:24 78:25
79:3,12 81:5
81:25 82:14,18
82:23 83:18
85:4,25
**court's**  44:20
**courtenay**  9:6
**courts**  15:13
42:11
**cover**  14:25
**covered**  56:4
**crafted**  56:7
86:5
**craig**  10:16
**create**  16:1,2
61:12
**created**  60:3
**creating**  22:23
**creditor**  7:16
7:23,24,25 8:1
8:2 27:19 43:1
45:9 60:16,17
60:19 69:17
82:25
**creditors**  4:11
5:18 6:3 14:2
15:12 16:1,2
17:17 19:21
27:12,14,15,17
27:18,20 31:20
33:11 36:6,11
39:7,12 40:8
46:21 59:5

63:4 82:9
**criminal**  19:1
20:7 22:2,5,14
22:18,19,22
23:3 67:1
**criste**  8:12
**critical**  30:15
**cromwell**  6:16
13:20 15:9
**cross**  30:1,22
84:13
**crucial**  34:23
35:16
**cry**  85:23
**crypto**  24:12
24:16 80:17
**cryptocurrency**
36:4,5 38:12
**crystal**  58:14
**cullen**  9:6
**currencies**
57:17
**currency**  3:12
13:5 61:1
**currently**
51:14 68:8,23

**d**

**d**  3:16 7:13
12:1 19:17
**dallas**  7:11
**dan**  9:12
**dance**  20:16
**date**  16:13,14
19:18 49:24
51:10 74:23
75:9,14,16
87:25

| | | | |
|---|---|---|---|
| **dates** 74:24 | 30:10 32:19 | 42:13 50:11 | **demonstrates** |
| 84:10 | 33:3,6,6 34:7 | 86:1 | 29:3 |
| **daucher** 7:6 | 37:10 38:4,24 | **decisions** 25:7 | **denominator** |
| **david** 10:6,10 | 43:10,15 57:15 | 85:25 | 45:10 |
| **day** 29:4 75:3,6 | 58:5 59:12 | **deeply** 19:5 | **deny** 76:16 |
| 83:8 | 60:15 61:5 | **defeat** 80:2 | **department** |
| **days** 54:8 | 62:17,24 70:17 | **defendants** | 4:17 |
| 72:12 83:14,15 | 71:20 73:4 | 18:11 19:12 | **depending** |
| **dcg** 13:7 81:1 | 80:11 81:14,15 | **defense** 17:9 | 79:10 |
| **de** 7:19 | 81:18 82:2,7 | 18:12 19:17 | **depends** 27:25 |
| **dead** 52:25 | 84:6 | 37:24 | **deposition** 22:4 |
| 63:24 | **decide** 16:4 | **deficient** 53:12 | **depositions** |
| **deadline** 68:15 | 17:13 18:18 | **definitely** | 65:11 |
| 71:7 | 19:11 21:1 | 55:21 | **derar** 9:21 |
| **deal** 14:15 | 23:19 25:11 | **definition** | **dermont** 9:7 |
| 48:19,20 50:16 | 36:8 40:16,25 | 51:10 | **desire** 22:6 |
| 79:18 84:17 | 41:5,12,13 | **deiterich** 8:5 | 84:6 |
| **dealing** 24:16 | 50:6 58:10 | **delaware** 13:16 | **details** 47:1 |
| **dealt** 77:7 | **decided** 17:6 | 18:25 20:19 | 54:16 |
| **debtor** 1:9 | 17:18 19:9,13 | 23:17 27:11,12 | **determination** |
| 21:14 23:15 | 19:23 20:3,4 | 36:15 68:11 | 42:9 76:10 |
| 26:7 28:3,3,11 | 20:10 23:24 | **delay** 23:3 | **determinations** |
| 30:9 56:23 | 24:19,20,21 | 29:23 45:2,25 | 37:22 |
| 58:16 61:23 | 27:9,10 28:9 | 46:2 47:3 48:6 | **determining** |
| 62:20 63:16 | 29:13,20 34:13 | 48:9 51:12 | 30:15 |
| 65:7 69:22 | 39:21 41:7,7 | 53:2,4,5,7 | **develop** 64:11 |
| 70:7 76:8 79:6 | 41:12 42:11 | 54:15 59:4,10 | 78:11 |
| 83:1,4,6 | 54:4 55:8 57:4 | 59:12,20,22,22 | **developing** |
| **debtor's** 63:19 | 57:5 70:8,10 | 60:3,21 61:25 | 67:20 |
| **debtors** 2:8,8 | **decides** 16:3 | 62:1 66:4,20 | **development** |
| 3:4 12:8,11 | 17:12,22 18:17 | 70:9 72:24 | 66:16 68:6 |
| 13:16,19 14:13 | 19:24 | **delayed** 46:12 | **developments** |
| 15:9 17:15,15 | **deciding** 19:10 | **delays** 59:6 | 32:8 |
| 19:15,19 20:10 | 23:11,18 24:24 | 60:21 80:16 | **devil's** 54:16 |
| 21:11 24:20 | **decipher** 85:7 | **demands** 15:15 | **dialogue** 15:3 |
| 26:4 27:7 28:5 | **decision** 38:11 | **demonstrated** | **diers** 3:23 13:9 |
| 28:6 29:22,25 | 38:15 42:6,7 | 58:15,16 | 13:9 86:13 |

**dietderich**
13:18,20 15:7
15:8 21:4,8
22:17 23:6,23
25:8 31:3
32:11,20 33:15
34:4,12 35:24
36:21 37:15
40:14 42:18
43:13 55:1,16
55:19,22 56:12
56:15,18,22
57:25 58:7
59:7,25 62:8
65:3 68:24
73:3,11 75:21
75:24 77:9
78:1,25 79:3,5
86:12

**dietderich's**
33:9 77:20

**difference**
32:22 55:2
69:10

**different** 14:10
15:13 17:24
18:5 30:6,20
46:13 54:21
60:7 64:15
65:23 66:25
67:2 70:22,23
70:23 71:14,15
76:10,15 79:9
85:3,20

**difficult** 25:11

**dig** 46:24

**digital** 3:12
13:5 36:25
37:11,25

**dipping** 39:1

**direct** 77:4

**directed** 82:13

**disagree** 46:8

**disclosure** 83:5
83:7,14

**discovery**
47:21 50:3
52:2,3,9 54:1
54:18,20,20,21
55:2 57:1
64:16,24 65:4
65:9,10,13,21
65:23,24,24,25
66:22 68:3
70:3,12,15
74:1,7 78:4
79:13,16

**discrete** 68:17

**discussed** 23:8

**discussing** 82:6

**discussion** 45:7
76:12

**discussions**
35:10 47:21
53:14 70:3
81:7 82:12

**dismiss** 28:23

**dispute** 19:23
35:19 48:2
52:11,15 53:3
53:5 57:22
58:7,8,10,18

**disputed** 15:18
15:19,21 49:10

**disputes** 35:18
47:15

**disputing**
57:20,21 60:18

**disruption**
67:13,17

**distributable**
61:14

**distribute**
50:16 60:25
61:2

**distributed**
63:3 76:21

**distribution**
16:14 47:4,14
47:17 48:10
50:15 51:12
53:2,8 60:21
76:7,17 79:11
80:22

**distributional**
77:2

**distributions**
32:2,3 35:22
35:22 46:3,11
46:18 51:1,5
53:11,24 58:24
59:11,20,21,22
61:7,13,20
62:12 63:17,19
69:6,7,12,21
69:21 73:13
76:5,14

**district** 1:2
12:4 33:14

**divack** 9:9

**diyanni** 9:8

**doc** 2:1,3,6

**docket** 14:9,10
20:12

**dodge** 21:6

**doing** 44:20
46:2 49:21
56:8 68:3

**dollar** 45:19

**dollars** 45:15
64:12

**donald** 9:3

**doran** 9:10

**dorsey** 17:21
17:22 18:24
19:9,10,16,24
20:19,20 21:21
22:23 28:9
32:25 34:14
38:7,16 65:14
65:15 68:10,11
68:14

**double** 73:4

**doubling** 63:21

**downside**
84:11

**dr** 7:10

**drag** 71:20

**drill** 37:5

**drive** 6:11

**drops** 55:22
56:7

**due** 20:18
57:11 65:12

**duties** 62:14
69:15

**duty** 82:9
**dzenis** 9:11

**e**

**e** 1:21,21 3:1,1
12:1,1 71:7
87:1
**earlier** 40:19
41:20 42:18
83:5
**easier** 84:17
**east** 5:4
**easy** 25:17
**echo** 52:18
58:4
**ecro** 1:25
**effect** 25:4,6
33:10 40:7
**effectiveness**
29:5 59:17,18
**effects** 38:8,14
80:24
**efficiency** 42:5
**efficient** 49:20
75:19
**eight** 83:15
**either** 16:6
20:21 27:25
68:14
**element** 24:11
28:14
**eleven** 5:11
**eliminated**
59:14
**elizabeth** 10:14
**emerge** 46:17
**emergence**
46:15

**eminent** 74:2
**ended** 67:14
**endorsing** 78:7
78:14
**enforcement**
82:25
**engagement**
52:11
**engine** 31:10
**enormous**
35:21 46:19
49:3
**ensue** 44:14
**entered** 12:13
**entire** 33:9
38:9 67:10
**entirely** 26:25
28:23 44:21
56:5 66:1 68:9
**entitled** 42:3
47:13 60:16
**equal** 40:10
80:16
**equally** 15:11
15:12 18:11
**equities** 43:16
**equity** 17:2,2,3
**eric** 7:6,25
**erin** 3:23 13:9
**essential** 19:4
79:20
**essentially**
20:11,24 46:19
50:21 52:10
53:23 54:19,25
79:20

**establish** 2:7
32:3
**establishing**
61:7
**estate** 36:11
39:12 57:3
69:6 77:1
**estates** 40:8
44:19
**estimate** 46:22
47:2,7,13 50:4
59:15 61:6,22
76:9,21 77:19
**estimated** 29:6
49:5 51:24
60:13,19 63:16
79:10
**estimating** 2:7
35:14 52:12
76:2
**estimation**
14:12 29:8
31:11 32:7,11
32:15 35:7
42:2,4,18
44:24 45:6,7,8
45:25 46:1
47:9,25 48:4,5
48:17 49:12
50:2,5,8,11,22
53:19 54:4,4,7
54:11,15,20
55:9,15 56:17
59:17 60:5
61:8,11,12
64:20 65:25
66:6,9,9,20

68:5 69:19
70:9,19 71:9
73:12,24 76:4
76:6,13,14,17
77:2 80:21,21
81:2,16
**et** 6:17 57:8
**eth** 37:11 57:10
57:16
**etkin** 8:6
**evaluating**
33:16
**event** 81:20
**everybody**
32:15 51:7
60:14 66:17
70:24 71:10
72:10 79:17
**everybody's**
40:10 59:2
86:4
**everyone's**
80:12
**evidence** 16:19
17:4 28:17
**exactly** 24:23
33:12 44:1
61:10,19 76:3
**example** 16:5
22:4 36:23
38:10 60:1,4
62:16 79:14
**exception**
18:15,20,20
**exchange** 5:1,2
18:3,6,6 24:9
24:11 62:19,22

65:7 68:2 77:6
78:4 82:21
**exchanges**
24:12,16
**exchanging**
64:4,23 71:2
72:1
**excluded** 82:12
**exclusively**
83:21
**excuse** 81:14
**exercise** 38:22
**exhaustive**
81:11
**exist** 64:18
**existed** 39:7
61:24
**existence** 27:2
**existing** 26:18
**exists** 26:15
**expect** 14:6
37:7 53:9
**expedited**
21:12,19 22:7
22:12 49:18
74:7
**experience**
64:8
**expert** 16:19
17:4 52:2
65:12 70:21
**experts** 48:3
**expiration**
51:10
**extended** 37:1
**extending**
51:21

**extent** 15:15
54:11 66:3
**extraordinary**
35:19 42:24,25
43:2
**extreme** 57:2
58:15
**extremely** 40:8
41:21

### f

**f** 1:21 8:13 87:1
**face** 48:16
**fact** 16:6 20:9
26:8,14,16,17
26:18,19,19
28:23 33:15,18
33:24 35:17
38:17 50:9
58:3 61:8
84:22 86:8
**factor** 43:20
44:12,15 62:17
68:4 72:24
**factor's** 19:6
**factors** 33:14
33:18,21,25
34:3 35:2,4
39:15 40:12
43:5,8 44:2,3
67:12 68:18
81:1
**facts** 19:2
26:22
**factual** 22:22
22:23 24:1
36:2 39:3,12
50:10 52:2

60:5 65:8,18
65:19 66:16
68:6
**fair** 39:8 49:17
56:21 81:5
85:4
**fairly** 20:5
**faith** 51:20
**fall** 30:15 41:3
43:17
**falls** 60:12
**far** 23:1 36:12
41:20 56:13
**fascinating**
66:14
**fault** 85:11
**favor** 39:16,17
44:16 63:17,19
63:19
**feared** 31:6
**federal** 15:25
**feel** 14:25 74:9
**ferry** 5:4
**fiduciary** 62:14
69:15
**fifth** 3:13
**fight** 50:3
**fighting** 45:14
45:19 55:4
70:20 79:14,15
79:15
**fights** 64:10
**figure** 34:7
45:19 47:20
51:4 52:10,17
55:4 65:1 66:4
66:5 67:5 71:8

72:5,13 85:14
**figuring** 47:22
**file** 15:1 76:20
**filed** 13:15,22
14:9,11,12,22
21:11 26:12
27:4 31:16,17
35:9 43:23
44:19 62:3
77:13 82:25
83:4,6
**filing** 83:13,15
**finally** 55:8
81:13
**find** 34:2 52:20
53:11 76:1
**finding** 45:1
54:14
**findings** 23:19
51:16 71:12
**finds** 26:14
**fine** 56:8 73:4
74:4 75:13
85:5,13,19
**fingers** 29:18
**first** 14:14,15
14:15 21:11,18
26:12 32:16
41:18 47:20
49:9 50:21
57:9 69:5
73:10 83:12
84:8,9
**fish** 67:2
**fit** 50:24,24
68:13

| | | | |
|---|---|---|---|
| **flavor** 18:6,6 | **found** 27:8 | 22:25 23:10,12 | **future** 52:20 |
| **flavors** 18:5 | **founders** 16:17 | 23:13,16 24:6 | 67:24 68:7 |
| 62:21 | 65:11 | 25:7 26:12,18 | **g** |
| **fleshed** 72:17 | **francisco** 8:21 | 27:2,4,18,19 | |
| **focal** 44:24 | **frankly** 45:12 | 27:20,21,22 | **g** 8:5 12:1 |
| **focus** 33:9 39:8 | 46:9 67:24 | 28:1,1,17,20 | **ga** 5:5 |
| 43:24 55:3 | 68:17 | 29:14,25 30:8 | **garcia** 9:11 |
| **focused** 26:5 | **fraud** 18:15,20 | 32:23 33:7,11 | **gating** 20:12 |
| 33:20 36:23 | 22:24 | 33:19 34:19 | 22:19 |
| 44:4,7 69:5,6 | **free** 50:18 | 36:4 41:1,20 | **gemini** 3:19 |
| **focusing** 37:9 | **frequent** 12:16 | 41:24 42:24 | 13:8,10,11 |
| **folks** 12:13,14 | **fried** 16:16 | 43:15 44:11,19 | 31:20,20 |
| 12:16 13:15,16 | 19:1 | 49:12,13 51:20 | **general** 7:8 |
| 13:24 14:5 | **front** 19:23 | 52:23 57:2,5 | 25:20 51:23 |
| 25:3 38:14 | 22:23 28:18 | 57:14 58:22,23 | **generally** |
| 41:16 54:3 | 32:25 40:24 | 60:10 61:15,23 | 16:20 38:15 |
| 64:9,10,16 | 58:14 65:14,15 | 68:16 70:1,5 | **generic** 24:13 |
| 71:7 80:1,4 | 81:2 | 71:19 73:2,4 | 24:15 |
| **following** 54:1 | **fronts** 85:24 | 77:9 82:2,4 | **genesis** 1:7 |
| **footnote** 82:7 | **fruit** 47:5 | **ftx's** 15:6 25:20 | 5:10 12:5 18:8 |
| **foregoing** 87:3 | **ft** 81:14 | 44:25 45:7 | 19:15,17 21:13 |
| **forever** 67:7 | **ftt** 16:5,7,10,14 | 63:17,19 69:9 | 23:10,15,20 |
| **formal** 75:6 | 16:20,21,23,24 | 71:20 | 24:19,19 26:4 |
| **forman** 9:12 | 16:25 17:1,5 | **ftx.com** 18:3 | 26:13,23 27:7 |
| **formation** 32:1 | 25:11,12 27:21 | **fulbright** 7:1 | 27:13,13,15,17 |
| 32:9 59:15 | 36:23,24,25 | **fulfill** 82:9 | 27:24 28:1,1 |
| **former** 40:4,19 | 37:13,16,17,18 | **full** 48:7 70:11 | 30:9 37:10 |
| 85:7 | 37:25 65:12 | **fullest** 66:10 | 38:19,24 57:15 |
| **forth** 40:17 | **ftx** 2:4,8 4:11 | **fully** 16:6 | 59:12 65:6,7 |
| **forum** 55:6,8,9 | 6:17 13:16,19 | 22:13 28:21 | 65:19,20 70:5 |
| 57:4 | 13:22 14:2,11 | **function** 23:13 | 80:5 83:1 |
| **forward** 22:15 | 15:9 16:2,5,8 | **fund** 18:7 | **getting** 12:7 |
| 38:13 55:10 | 16:13,17,21 | **further** 14:8 | 22:3 23:1 |
| 62:13 71:21 | 17:5,11,14 | 20:16 64:2 | 46:24 84:1 |
| 72:14 84:6 | 18:11,22 19:5 | 65:20 66:16 | **ggc** 37:2 39:6,7 |
| 86:10 | 19:12,15,19,21 | 68:6,16 70:16 | **ggci** 19:20 65:6 |
| | 20:6,16 22:14 | 72:3 73:1,19 | **ggcr** 62:20 |

gist  83:18
give  38:1 55:13
  56:1 62:16
  72:23 74:25
  79:25 80:4,13
  80:24 83:23
  84:7,12
given  80:19
gives  32:15
glen  7:23
glenn  38:10
glib  58:25 59:3
global  1:7 12:5
  48:19 49:4
  83:1
glueckstein
  13:20
go  12:15 22:9
  33:17 42:20
  48:8 50:2
  59:25 61:4
  62:8,12 64:23
  65:10 71:21
  82:18
goalposts
  49:24
goes  22:1 26:1
  28:15 40:16
  41:5 60:1
going  12:15,15
  16:4,12 17:12
  20:18 21:2,5
  22:8,11,15
  23:4 24:9 31:6
  32:13 34:2,6
  34:13,19,23
  38:16,17,19

39:23 40:6
  48:11 52:23,23
  64:7 66:12
  68:13 69:25,25
  70:1 71:9 78:1
  78:11,12 80:3
  80:13,18 83:9
  83:22,22 84:16
  85:11
goldberg  4:6
good  12:2,9,12
  12:23,25 13:2
  13:4,6,9,18,21
  14:3,20 15:7
  28:12 51:20
  71:23 82:19
gordon  8:19
gorrepati  9:13
gotshal  3:11
  13:7
gottlieb  3:3
  9:14 12:10
  33:5
government
  23:1
graduated  49:7
grand  40:16
grant  53:23,24
greatly  20:20
  23:13
greg  4:22
gregory  8:13
grounded  86:1
grounds  45:24
group  3:12
  5:10 13:1,5
  81:9

guarantee
  53:14
guess  24:17
  34:3,14 39:16
  49:25 50:13
  52:25 56:15
  85:17,20
guidance  63:13
guide  70:15
guided  74:19
  75:15,20

**h**

h  1:22
half  52:7,8
  62:10
hamilton  3:3
  12:10 33:5
hammer  9:15
hampering
  73:2
handagama
  9:16
handed  21:1
handle  68:3
hands  51:7,9
hanging  47:4
hansen  8:7
happen  20:18
  21:2 22:2,11
  50:1 52:16
  55:6 61:10,11
  64:15,16,25
  65:14,15 76:14
  78:4
happened
  31:16 51:6
  63:11

happening
  23:17 30:16
  46:20
happens  42:10
happy  14:17
  21:22 32:7
  58:9 61:22
  65:21 68:21
  71:6 72:12,20
  73:5 75:19
  79:25 83:25
  84:22,24
haqqani  9:17
hard  53:16
harms  32:21
  33:21 43:14
  44:10,14 58:13
  59:8
harrison  9:18
hastings  4:9
  14:1 82:4
hatch  9:19
he'll  19:11
head  25:9
  37:12
headed  53:22
hear  14:17,17
  17:25 32:13,19
  33:2 46:14
  55:14 56:17
  73:16 80:13
  81:4,8 84:22
heard  28:21
  32:16,25 33:20
  55:1 72:10,15
  75:21 79:22
  80:1,4 82:15

[heard - importance]                                                  Page 14

82:21 85:15
**hearing** 2:1,3,6
  12:6,7 14:8
  23:3 38:5 69:1
  72:18 81:2
  83:8 84:11
**hearings** 12:17
  14:6
**hedge** 18:7
**held** 16:24
**hello** 13:18
**help** 72:25
  73:10
**helpful** 39:2
  71:5 72:19
  74:18,20
**helps** 68:6
**hercules** 7:17
**hey** 45:2
**highlight** 15:4
**highly** 46:20
  70:1 76:1,1
**highsmith** 7:13
**hill** 9:20 64:2
**hire** 70:21
**hit** 56:10
**hoc** 5:10 13:1,3
  81:9
**hodges** 6:22
**hold** 16:22
  58:24
**holdco** 1:7 12:5
**holder** 17:10
  17:13 25:12
**holders** 16:12
  16:20

**holding** 51:7,9
  75:14
**hon** 1:22
**honor** 12:9,23
  13:2,6,9,19,25
  14:20 15:7,9
  17:15,23,25
  18:5,7,13 19:9
  19:24 21:4
  25:10 26:5,24
  28:19 29:18
  31:3,8 32:5,20
  33:4,6,12,17
  35:3,11 36:8
  37:12,23 39:4
  40:4,9 41:18
  41:19 42:8,12
  42:22 44:2,10
  44:22 45:22
  48:17 51:17
  52:1 53:10
  55:17,25 56:9
  56:25 58:9,12
  58:15 59:7,18
  59:21 61:4,10
  61:21 65:3
  68:24 70:8
  73:3,9,25 74:8
  75:4,21 76:11
  76:16 78:21
  79:5 80:7,9,9
  80:15,23 81:2
  81:10,13,21,24
  82:3,5,12,17
  82:20 83:11
  84:19,21,24,25
  86:12,13

**honor's** 26:1
  51:22
**hope** 15:3
  46:17 85:17
  86:2
**hopefully** 69:8
  73:19
**hoping** 46:18
  50:22 53:17
  74:6
**horizontal**
  24:11
**horse** 40:16
  53:1 63:24
**host** 39:11 57:8
**hour** 81:12
**hubbard** 3:18
  13:10
**huge** 35:5 51:2
  73:15
**hughes** 3:18
  13:10
**hundreds**
  16:12 19:11
**hyde** 2:25 87:3
  87:8
**hypothetical**
  17:11,14
**hypothetically**
  58:17

**i**

**ian** 7:25 9:9
**iceberg** 85:10
**idea** 20:17
  22:10 31:4
  41:6,11 76:25
  77:1 79:13

**ideally** 45:16
**ideas** 66:13
**identification**
  77:6
**identified**
  35:24 36:3,21
  46:7 59:1 77:8
**identify** 28:4,7
  54:3 56:24
**ignore** 44:5
**ignored** 19:22
  44:6
**illiquid** 17:16
**illustrate** 28:2
**imagine** 66:7
  66:11
**imagining**
  58:22
**immediately**
  61:21 63:3
  69:12
**impact** 20:4
  34:17 35:21
  36:10,19 54:22
  67:4,13 71:18
**impacts** 37:18
**implicate**
  67:12
**implicates**
  18:14 20:7
  45:5 67:17
**implications**
  41:1
**implies** 29:25
**importance**
  72:17

**important**
15:10,12,12
20:15,25 23:13
27:24 28:14
35:4,6,12,25
36:7 39:9,11
40:11 44:3
53:13 61:22
62:16 69:13
83:24
**impose** 36:16
**inconsistent**
38:20 78:15
**increase** 63:20
**incredibly**
48:20 54:22
**incremental**
48:15
**incrementally**
67:25
**indefinite** 72:6
**indicative**
16:18
**indiscernible**
23:6 24:18
64:20
**individual**
41:17
**inevitable**
39:23
**inevitably**
40:23
**information**
22:3 24:3
62:17 64:4,23
66:24,25 68:3
71:2,4,10,11

71:13,25 72:1
72:16 77:5
78:4
**informs** 54:9
68:4
**inherent** 60:6
66:19
**inherently**
18:22
**initially** 61:17
**inquiry** 36:12
40:11
**insight** 80:25
**instruction**
74:5
**intelligent**
50:11 85:24
86:1
**intend** 21:8
22:17
**intended** 12:19
14:4 16:1,2
**intending** 74:5
**intent** 77:3,24
**interest** 27:15
27:16,18,18,19
28:20 66:17
71:10,20 73:1
73:18,20
**interested** 4:2
7:16 45:12
59:5 72:6
75:11 81:6
**interesting**
16:24 27:17
31:8 66:13
67:5 68:18

86:6
**interests** 19:22
27:12
**interfere** 43:10
**interference**
43:20 44:8
**interim** 49:22
53:20 75:10
**interject** 33:23
**international**
19:20
**interrelated**
21:7 32:17
42:19
**invited** 31:5
**invocations**
66:22
**invoking** 43:13
**involved** 38:14
41:22 66:19
81:21 82:6
**involves** 19:2
**irrespective**
25:14 46:5
**isaac** 8:16
**islim** 9:21
**isolated** 39:9
**issue** 20:12,25
21:3 24:17
34:5,6,9 38:20
47:3 48:16
50:5,8 52:14
52:14 53:2,7
58:4 63:18
66:3 68:9
82:22 83:3
84:4 85:1,11

**issued** 38:11
**issues** 15:3
19:11 20:14,17
22:19,24 23:8
23:12,15,18
24:1,5,5 25:22
27:9,9,13 28:7
29:19 30:7
32:23,23,24
34:24 35:12,25
36:2,6,10,20
37:3,4 38:7,8
39:9,11 40:23
41:12,22,23
42:1,11 44:11
45:18 48:2
49:8 54:3 57:3
57:8,23 58:13
59:2,14 60:11
65:1 67:19,20
68:7 70:4,23
71:15,18 72:17
77:6,7,7,8,10
79:1 80:17
84:20 85:22
86:6
**it'd** 60:14
**item** 22:20

**j**

**j** 4:6 7:21 8:17
10:23
**jack** 10:8,20
11:9
**jamal** 9:22
**james** 8:18
**jane** 3:9 12:9
33:4

jared 9:7
jason 9:4,14
jaws 80:2
jeez 52:21
jeffrey 3:16
 8:10 13:6
jeremy 9:20
jessica 9:1
job 26:23
 52:19
jobs 71:23
 72:25
joe 10:22
john 6:7
joinder 81:13
joined 79:24
 79:24 81:15
joiners 28:2
jointly 12:5
jones 9:23
joshua 9:9
judge 1:23
 12:2 17:12,21
 17:22 18:17,21
 18:24,25 19:9
 19:10,16,23
 20:19,20 21:21
 21:21 22:23
 23:18,19 28:9
 30:19 32:25
 34:13,23 38:6
 38:6,10,16
 39:20,24 40:24
 41:6 45:12
 48:3,5 50:6,9
 51:7 54:11
 55:3 58:2 59:4

63:5,6,8,11,12
65:14,15 68:10
68:11,14
judge's 63:9
 64:8
judges 56:6
 66:21 67:24
 74:15 85:6,8
judgment
 54:13
judicial 74:17
july 75:3,14
 83:8,8,15,16
jump 74:6
jumping 85:10
junction 68:19
june 1:16
 19:18 87:25
jurisdiction
 44:21
justice 4:17

**k**

k 10:14
kaplan 18:25
katie 10:18
kayla 10:11
keep 53:19
keeping 39:17
ken 8:1 13:25
 82:3
kenneth 4:15
kettle 67:2
key 37:4 40:9
 50:10 56:12
kind 19:8
 23:16 28:8,25
 35:15 45:5

49:4,23 67:4
69:3 70:21
kinds 38:24
40:22 60:2
65:10,23 67:17
69:25 71:23
kinealy 9:24
kissel 6:1
klein 9:25
knew 31:5
know 12:14,21
17:15 18:7,16
18:21 19:9
20:2,21 22:7
23:23,25 24:1
24:4,7,10,23
25:18,24,25
28:24 30:6
31:20 32:5,7,7
32:22 33:8
34:12 36:4
38:10 40:10,10
40:13 41:22,24
41:25 42:9,15
43:6,16 44:6
44:18 45:18,24
46:3,6 47:14
47:16 48:24
49:1,1,8,15
50:3 51:1,18
51:19 52:12,14
52:21 53:3,12
53:14,16,21
55:1,3 56:2,11
57:3 59:13
60:14 63:4,6
66:4,21 68:12

69:11 70:6,9
70:11,18,21
72:8 73:12
74:3,9,20,22
74:24 75:7
76:11,15,16
77:9 79:13,23
81:13,22 82:1
83:19 84:1,3
85:13
knowing 31:13
45:9
known 61:24
knows 26:24
35:11
koch 10:1
konrad 10:3
kozlov 8:8
kratochvil 7:23
kris 8:7
kroll 10:2
kyle 8:2

**l**

label 22:12
24:17
labeling 22:10
labels 54:21,24
64:15
lack 20:11
76:23,24
laessar 10:3
laid 22:1 43:8
80:20
lane 1:22 12:2
41:15
language 23:9
47:10

large  26:19
  30:13 46:9
  54:22 61:16
  62:25
largest  18:9
latham  4:1
launching
  70:11
lauren  11:7
law  17:23,24
  17:24 27:3
  36:12 43:3
  47:9 50:9 86:7
lay  56:6
leading  43:11
learned  67:18
  85:9
learning  64:4
leave  42:20
  50:19 74:23
ledanski  2:25
  87:3,8
lee  10:4
legal  25:1,2
  36:2 39:12
  50:7,8 58:6
  66:14 87:20
legitimate
  43:22
leia  9:10
lenders  5:10
  13:11
lending  18:4,8
leonie  10:1
leto  10:5
letter  75:18

letters  59:5
letting  74:1
level  23:2 28:8
liberty  3:5
lie  43:16
life  56:6 85:7
lift  14:11,15
  19:24 28:16
  34:25 38:6
  39:20 41:17
  42:14,16 43:23
  56:23 59:14
  70:10 81:14
lifted  15:24
  20:10 27:6
  28:18 43:4
  44:15
lifting  20:2
  26:4 27:7 29:3
  33:10,19 39:16
  40:7 43:9 44:9
  44:13,16 58:13
  59:13 67:9
  68:8
lightsquared
  31:7
likely  80:25
lily  11:11
line  30:1,22
  70:20
liquid  17:16
  35:20 46:10
  48:6 57:17
liquidate  60:3
liquidated  60:9
liquidating
  29:11,13,14,14

  29:15 31:17
  63:15 69:18
liquidation
  17:11,14 21:10
  25:13 47:8,24
  48:7 54:6,8
  64:19 66:5
list  12:15 77:11
  79:18,19
listen  12:14
listening  14:7
  33:1
litigate  19:25
  21:8,22 22:7
  41:3 61:9 64:9
  64:11 67:6
litigated  28:17
  28:18 41:23
  62:15 66:10
litigating  36:15
litigation  19:7
  21:19 36:18
  37:4,8,19
  46:25 48:22
  49:10 58:22
  59:9 81:21
litigations
  58:23
little  17:23
  24:8 30:1,23
  37:5 38:2
  47:20
liu  8:9
llc  1:7 3:19
  12:5
llp  3:3,11,18
  4:9 5:9,16 6:1

  6:9,16 7:1
loaf  52:7,8
loan  15:17,19
  15:20 16:6
  18:6 24:2,4
  39:5,6 57:19
  57:19,20 58:3
  58:3,4,8,9,10
  58:18 62:22
loans  37:1 39:5
logical  47:6
long  12:15
  49:16 74:3
  78:2
longer  49:11
look  30:2 34:9
  43:8 44:15
  47:23,24 48:4
  48:6 54:6,7
  56:1 66:5
  86:10
looked  80:19
looking  46:6
  57:12
looks  30:2
  50:11,23 66:7
lopez  10:6
loses  28:4
lot  12:13,14
  19:2 22:5 26:6
  30:18 34:14
  48:21 51:3
  54:21 64:15
  84:14
lots  30:5,6,20
  47:21 57:7
  60:22,22

**low** 47:4
**lowenstein** 6:9
  6:11
**lukaszewski**
  8:1

**m**

**m** 8:18
**made** 24:5
  29:22 42:3
  43:1 45:1
  56:12,12 57:9
  61:20
**magnitude**
  35:18
**magzamen**
  10:7
**main** 56:10
**make** 26:11
  29:1,24 30:3
  32:3 37:21
  42:24 43:24
  45:3 47:19
  48:3,5 50:10
  52:2 54:10,13
  54:14 55:14,15
  55:23 64:14
  65:4 69:7,16
  69:21 71:12
  74:12,17 75:8
  76:4,21,22
  77:4,24 78:12
  78:13 80:24,25
  82:5,11 84:9
  85:12,24,25
**makes** 13:14
  14:21 40:17
  42:1 45:4

46:12 47:12
62:13 65:2
74:2
**making** 23:19
  42:6 51:15
  59:20,22 61:13
  68:20 69:14
  75:10 78:5
**malleable**
  41:10
**manges** 3:11
  13:7
**manipulation**
  16:16
**marcy** 7:21
**margolin** 8:10
**mark** 10:24
**market** 7:18
  16:10
**mass** 60:4
**massey** 10:8
**math** 46:6
**matsuda** 10:9
**matter** 1:5
  20:7 39:12
  46:25 54:17
**matters** 19:25
  28:18,20 32:6
  76:14
**matthew** 5:7
  8:20
**maximizing**
  48:20,23
**maximum**
  61:13,14 62:10
  62:12

**mayo** 10:10
**mckuhen** 8:2
**mclaughlin**
  7:21
**mean** 22:15
  30:13,14 36:14
  39:4 40:22
  41:5 52:13
  59:1 65:4 69:2
  77:17
**meaning** 52:9
  58:3 76:6
**meaningful**
  69:13
**means** 18:9
  22:14 25:1
  39:1 44:5 47:7
  50:8 61:20
**mediate** 21:18
  21:18
**mediation** 31:5
  35:11
**meet** 72:5,19
  73:5,18 74:1,7
  77:5
**meghana** 11:6
**meises** 5:23
**melissa** 9:11
**mention** 38:3
  39:5 44:18
  56:23
**mentioned**
  24:6,24 32:22
  36:20 38:2,25
  43:5 44:12
  48:18 49:7
  57:7,18 65:6

66:18
**mentioning**
  57:1
**merit** 7:10
  26:20,20
**merits** 16:3
  31:18,19,25
  61:9 69:9,20
  70:9,11 76:14
  77:2 79:11
**message** 51:6
**met** 43:1
**michael** 8:6 9:8
  10:5,7 11:8
**michele** 5:23
**milestone** 51:2
**milligan** 10:11
**million** 17:17
**mindful** 51:12
  70:24,25
**mineola** 87:23
**minimal** 69:8
**minimize**
  71:18,20
**minimizing**
  59:3
**minott** 8:11
**minute** 56:1
  84:13
**minutes** 12:19
**mira** 9:17
**mirana** 7:2
**miranda** 9:19
**mischaracter...**
  73:11
**misconstrue**
  85:8

| | | | |
|---|---|---|---|
| **missed** 12:18 | 73:23 75:9,15 | 45:3 47:16 | 80:12,18 |
| **mitra** 10:12 | **motivating** | 55:9 58:11 | **negative** 40:8 |
| **model** 24:25 | 35:1,4 | 67:15,21 71:1 | **negotiated** |
| 38:5 39:1 | **motivation** | 77:10 85:19 | 63:14 |
| **modest** 69:15 | 69:22 | **necessary** | **neutral** 44:14 |
| **moment** 20:22 | **motivations** | 35:15 46:1 | **never** 39:20,25 |
| 68:23 76:13 | 34:7 | 48:24 54:15 | 46:23 63:7 |
| 77:1 | **movant** 42:24 | 66:17 70:15 | 67:18 85:11 |
| **money** 15:18 | **move** 70:5 | **necessity** 24:21 | **new** 1:2 3:6,14 |
| 15:20 18:8 | 72:14 84:6 | **need** 17:3 | 3:21 4:4,13,20 |
| 25:18 27:25 | **moving** 35:8 | 19:23 23:2 | 5:12,20 6:5,19 |
| 45:10,15,17 | 45:24 55:10 | 31:11 34:25 | 7:4 12:4 17:19 |
| 49:2,2 63:3 | **mueller** 7:24 | 38:6,16 39:21 | 17:20 25:14 |
| **month** 52:21 | **multiple** 49:21 | 39:25 41:12 | 63:10 77:22 |
| 53:8 63:16 | **n** | 47:17 48:3,25 | **news** 86:9 |
| 67:22 | | 49:1 51:24 | **nice** 47:16 |
| **months** 54:8 | **n** 3:1 12:1 87:1 | 52:3,9,10 53:6 | 60:14 68:12 |
| 61:24 62:2 | **nacif** 4:7 11:3 | 53:12,25 55:4 | **nickel** 61:1 |
| 67:22,23 | **nadel** 10:13 | 55:6,8 57:11 | **nightmare** |
| **morning** 12:2 | **napolitano** | 58:11 59:14,16 | 79:17 |
| 12:6,9,12,23 | 10:14 | 59:19 60:5 | **nine** 17:17 |
| 12:25 13:2,4,6 | **native** 16:7 | 61:14,22 65:8 | **nobody's** 60:18 |
| 13:9,18,21 | **naturally** | 66:25 71:1,9 | **non** 17:15 |
| 14:3,20 15:8 | 23:21 | 74:10,18 75:16 | 62:19 |
| 78:20 82:19 | **nature** 15:22 | 78:19 80:13 | **norton** 7:1 |
| **morning's** 14:6 | 19:4 23:20,23 | 82:10 84:5,9 | **note** 28:24 33:8 |
| **motion** 2:3,6,6 | 29:4 37:7,16 | **needed** 50:25 | 42:22 82:24 |
| 14:11,12,15 | 37:18,23 38:10 | **needing** 22:21 | **noted** 44:17 |
| 32:16,21 33:7 | 42:19 52:22,22 | **needle** 34:17 | **notes** 56:2,7 |
| 41:17 42:2,18 | 59:9 60:1,3,13 | 34:21 | 69:3 |
| 43:9,23 44:24 | 64:17 66:19 | **needs** 14:25 | **notice** 2:1 83:6 |
| 54:11 56:16 | **navigate** 71:14 | 15:15 23:24 | 83:13,15 |
| 71:6,9 72:9 | **navigating** | 38:7 51:8 54:1 | **notion** 30:3 |
| 76:17 77:4,13 | 71:24 | 54:2,18,19 | 55:2 63:25 |
| 77:14,18 78:16 | **ne** 5:4 | 60:13 62:15 | 67:9 |
| **motions** 14:10 | **near** 46:17 | 65:13 69:10 | **notwithstand...** |
| 52:18,24 56:19 | **necessarily** | 70:16 78:4 | 22:6 |
| | 24:19 25:5 | | |

november 27:4
nuanced 47:10
   77:7
number 16:4
   20:15 28:19
   37:11 39:7
   61:19 62:24,25
   69:14 74:24
   81:1 85:22
numbers 62:8
   62:9 69:14
numerator
   45:10
ny 1:14 3:6,14
   3:21 4:4,13,20
   5:12,20 6:5,12
   6:19 7:4 87:23

**o**

o 1:21 12:1
   87:1
o'neal 3:8
object 16:22
   76:23 82:8
objection
   34:15 47:22
   48:1 49:11
objections
   64:18 83:6,13
obligation 62:5
observe 12:14
obviously
   12:12 20:8,14
   23:11 30:25
   35:19,21 36:4
   36:14 42:17,19
   43:8 51:1,18
   53:13 54:4

70:6 73:5 76:8
79:8 82:8
83:23 84:5,5
occur 23:21
   51:21 58:23
october 19:2
odds 40:25
office 7:8 13:13
official 4:10
   5:17 6:2 12:21
   12:24 13:22
   14:1 80:5,8
   82:1
okay 73:17
old 87:21
omnibus 12:6
once 22:7
   25:10,21 45:18
   45:21 60:11
ones 36:3 38:3
   56:13
ongoing 20:7
   81:7
opaque 78:10
open 12:17
   14:5 51:20
   84:20
operating
   17:16
operation 27:3
opinion 55:2
opportunity
   56:24 74:11
   78:24 80:1
oppose 33:6
opposed 14:6
   45:8

opposite 26:2,2
   33:12
opposition
   32:14 34:1
option 83:21
order 14:21,21
   20:18 21:1
   22:8 31:11
   45:21 50:4
   52:1 54:10
   69:16 75:19
ordered 21:21
ordinarily
   24:20
ordinary 18:1
   18:2,10,12,13
   18:13,15,18,20
   24:7,9,12
   25:16 60:9
organization
   31:10 43:21
outbound
   19:19
outlined 52:5
outset 82:24
outside 23:12
outstanding
   84:4
overcome
   42:25
overhang
   48:22
overlap 39:23
   66:2,2
overlaps 66:1
overstatement
   58:21

own 15:15
   27:20 29:1
   31:22 41:15
   72:24
owns 38:11
oxana 8:8

**p**

p 3:1,1 12:1
   85:20
pace 74:13
paces 5:4
page 34:1
pages 86:9
panoply 20:16
papers 14:24
   15:1,1,2 29:24
   33:8 35:7,7
   44:18 45:7
   46:7 49:12
   55:3 66:18
   70:21 77:18
   79:24 82:7
parallel 35:9
parity 16:1,2
park 3:20 4:12
   6:4
parra 8:12
part 26:22 27:1
   47:1,11 50:21
   72:1 73:18
   74:14 78:7
   81:7
partial 53:23
   53:24
partially 16:7
participants
   12:17

| | | | |
|---|---|---|---|
| **participate** 14:6 | **pause** 80:10 | **persuaded** 42:12 62:6 | 50:25 51:1,2,3 51:8 53:5,9 |
| **particular** 15:16 25:15 29:2,7,19 31:23,25 32:24 42:4 77:9 78:14 | **payments** 24:5 **peace** 80:14 81:20 85:17,19 85:19 86:2,3 **pending** 22:4 40:24 41:17 | **persuasive** 34:2 **pesce** 8:13 **peter** 10:23 **petition** 16:11 16:13 26:14 | 54:19 55:10 59:13,15,16 61:6,7 63:16 65:24 69:5,18 76:4,6,20 81:3 83:4 |
| **particularly** 37:9 42:16 66:21 78:9 | **people** 28:5 41:3,14 45:13 45:18 48:25 50:5,7 51:9 | **phases** 49:22 **philip** 5:22 10:17 | **plans** 22:1 31:24 **plate** 34:14 **plays** 18:20 |
| **parties** 14:24 18:8 24:3 40:15 49:19 52:4 67:25 68:22 70:14,16 70:24 71:11,13 71:15 72:4,8 72:21,21 74:1 75:6 77:5 79:23,24 80:20 80:24 81:6 84:7 85:25 | 59:6 64:2 72:2 75:12 79:12 83:24 84:3,5 84:17 85:17,18 **people's** 26:25 68:4 **pepper** 7:15 **percent** 61:18 61:20 63:1,20 69:11,11 **percentage** 61:2 | **phone** 83:20 85:2 **pick** 34:3 **picked** 31:23 83:20 **picture** 67:20 78:8 **piece** 35:23 49:6 53:13 **place** 36:18 **places** 75:1 **plains** 1:14 | 38:13 **plaza** 3:5,20 6:4 7:17 **pleading** 31:14 76:5 **pleadings** 13:15 85:23 **please** 45:23 82:18 **plenty** 45:17 45:18 79:23 |
| **partly** 32:6 **parts** 36:7 **party** 4:2 72:9 72:9,9 **party's** 64:5 **pasquale** 4:15 13:25 14:1 82:3,4 **passes** 64:2 **path** 30:15 **pattern** 86:9 **paul** 4:9 8:23 9:24 11:10 14:1 82:4 | **perfect** 79:14 86:8 **perfectly** 85:12 **permission** 51:22 **permitted** 69:12 **permutations** 60:22 66:11 **persaud** 1:25 **person's** 27:22 **perspective** 74:3 | **plaintiffs** 6:10 **plan** 14:17 26:8,9 28:25 29:1,2,2,9,10 29:10,11,13,14 29:14,15,16,23 30:2,6,9,18,19 31:4,5,6,9,13 31:14,15,16,17 31:17,21,22,23 31:23,25 32:8 35:9,9,13 45:1 45:4 46:5 47:15,18 48:8 | **plus** 39:13 81:12 **pm** 1:17 86:16 **point** 16:10 20:17 23:4 29:21 35:24 37:19 44:17,24 45:13 46:16 51:2 53:6 55:13 56:20 68:14 75:22 78:6,7 80:3 81:11 84:2 85:1 |

pointed  35:17
  36:9
pointing  27:8
points  55:15
  56:10,12 57:9
  81:5
policy  25:13
ponzi  18:15,19
  18:23
pool  35:20 49:4
  60:25 61:18
  62:10 63:1,21
poor  85:6
posit  36:11
  39:14
position  17:10
  26:11 27:1
  37:15 69:7
  73:11 76:11,16
  81:14,15 85:6
positions  27:1
  64:5 80:20
possession  30:9
possible  18:15
  31:23 49:19
posture  72:3
postured  37:20
potential  72:15
potentially
  18:25
power  16:1
  31:11
practical  66:13
  67:5 68:24
  83:16
pre  26:18

precedent  31:8
precise  59:10
preclude  55:9
  75:6
predict  52:20
  67:19,23
preexisting
  27:2
preference
  15:22,23,25
  16:3,9 17:6,9
  17:12,19 18:11
  19:16,19 20:14
  21:11,14 22:18
  22:24 23:25
  25:13,15,21,23
  26:16 27:10
  29:20 36:1
  37:4 41:23
  60:8,11 63:8
  76:18
preferences
  17:21,22 18:4
  18:18 21:9,10
  21:13,20,22
  22:20 27:3
  62:19,22,22,22
  63:17 65:7
preferred
  84:14
prejudice  21:5
  26:3,4,6,7,12
  26:16,19,19,21
  27:5,6,8 28:17
  29:1,3,17,22
  31:15 33:10
  41:16 56:25

57:2 58:15
  59:11 69:9,22
  70:10 75:11
prejudiced
  26:15 29:1,17
prejudicial
  46:20
prejudicing
  52:7
prepetition
  26:25 69:17
present  8:4
  82:11
presentation
  33:9 56:7,8
preserve  69:17
  74:3
preserving
  73:12 78:2
presley  10:15
pretto  8:14
prevent  30:16
  30:17 46:19
price  16:14,16
  16:18 57:13
primarily
  41:15
prior  56:6
prioritized
  21:10
pro  7:23,24,25
  8:1,2
probably  20:20
  20:21 24:7
  56:20 65:14
  68:14 84:8

problem  30:20
  60:15 61:25
problematic
  76:1
problems  67:6
  67:10 68:17
procedural
  71:8 72:3
procedure
  80:22
procedures  2:7
  41:8 54:16
  64:12
proceed  14:19
  15:24 74:1
proceeding
  15:13,14 22:18
  22:19,22 46:15
  52:4 60:9
  63:23 70:19
proceedings
  13:23 15:14
  20:4 25:5
  86:15 87:4
process  21:17
  41:9 47:12
  48:4 49:18
  53:16,19 54:6
  54:7,8 64:19
  64:20,24 65:23
  66:6,9 69:1
  83:23
professionals
  71:22
progress  74:10
  85:20,23 86:2
  86:2

progressing
74:10
project  81:18
promise  21:24
proofs  44:19
property  38:11
proportional
45:16
propose  49:15
proposed  42:2
66:7 69:19
78:6
proposing  61:5
proposition
15:10 19:4
76:10
prosecute
28:13
proskauer  5:9
13:3
protocols
40:14
provide  49:17
80:15
provides  83:12
proxy  28:12
punt  85:19
pure  46:6 50:7
purpose  45:6
purposes  14:7
15:5 18:3
22:14 25:2
39:2 47:4,18
50:25 52:24
53:4,5,7,23,25
55:10,11 60:20
61:6,8 66:8,15

66:22 71:5
73:25 76:2,4,7
76:9,17,22
77:19 82:11
push  39:19
47:6
pushing  72:6
put  26:9 29:18
45:2 47:1 69:1
77:1
puts  19:17
24:17
putting  22:12
51:5 69:6

**q**

quarropas
1:13
quarters  69:13
question  16:19
17:9 18:1,2,10
18:13,14 19:6
19:8 21:5,6,16
21:23 22:8,13
22:21 23:7
24:13,15 25:20
25:22 26:1
27:5 32:2 34:3
34:4,15 40:19
45:6 50:10
53:6 54:14
58:12,16 65:8
65:18 70:8
73:13,14 79:4
questions  16:4
17:25 18:22
20:1 24:25
25:11 45:20

46:24 55:12
58:17 65:5,19
66:14
quick  51:25
quickly  21:9
32:2 34:12
69:8
quite  30:11,21
34:2 62:4
67:18 71:24
76:15

**r**

r  1:21 3:1 6:7
12:1 87:1
rain  60:12
raise  83:4 85:2
raised  20:15
23:8,11 85:1
85:22
raises  20:2,9
raising  85:11
ranking  16:25
17:5 37:17
ranks  25:12
rassile  10:16
rather  67:23
75:9
reach  35:13
73:14 74:19
75:16 81:23
83:24 84:20
reached  40:17
reaction  65:4
read  14:24
29:2 57:21
79:25 83:12

ready  62:11
73:5
real  64:11,12
64:12 68:8,22
81:4
realities  83:17
realize  78:9
79:22
really  20:11
22:12 24:17
29:17 31:14
33:19 35:16
37:3 42:13
43:19 47:17
48:9 50:8 52:3
58:16 62:1
67:11 78:12
83:23 84:14
reason  44:4
48:17,25
reasoning
37:24
reasons  35:6
46:4,21 60:22
reassertion
75:11
rebekah  10:15
receive  17:10
17:13 65:7
received  25:18
25:18 59:4
recently  38:11
recipient  25:15
25:23
recognized
42:19

| | | | |
|---|---|---|---|
| **record** 15:8 | **relative** 26:25 | **reserve** 32:4 | 78:24 |
| 22:22,23 51:15 | 27:22 49:3 | 61:8,14 76:4 | **responded** |
| 58:14 63:13 | **relatively** | 77:14 78:22,23 | 62:2 |
| 67:16,16 75:3 | 51:25 | **reserves** 28:24 | **response** 49:9 |
| 87:4 | **relevant** 15:5 | 51:5 66:8 | 55:23 |
| **recoveries** 28:9 | 16:13 17:20 | **reserving** 61:9 | **responses** 14:8 |
| **recovery** 27:23 | 18:11 19:16,18 | 76:8 82:7 | **rest** 25:16,17 |
| 28:13 | 33:13,16 36:2 | **resolution** 16:9 | 32:21 49:3 |
| **reduce** 62:23 | 36:12 39:14 | 21:12,20 22:20 | 60:25 |
| 65:17,20 69:24 | 40:11 42:8 | 23:14 31:24 | **result** 29:7 |
| **reductions** | 46:4 62:9 68:7 | 36:10,19 39:10 | 46:2 71:17 |
| 72:15,15 | **relief** 2:3 19:7 | 65:18 70:3 | 74:16 |
| **reed** 3:18 | 32:14 33:7,17 | 73:15 | **retaining** 73:14 |
| 13:10 | 68:19 | **resolve** 24:1 | **return** 64:13 |
| **refile** 75:12 | **remaining** | 25:22 35:12 | **reverse** 23:17 |
| **reflects** 37:3 | 74:13 | 60:11 63:8 | 25:6 |
| **refrain** 85:10 | **remarks** 76:1 | 69:9,20 84:20 | **review** 63:7 |
| **regarding** 83:3 | **remember** | **resolved** 17:7 | **revisit** 50:22 |
| **regardless** | 61:5 | 19:16 24:3,10 | 65:1 |
| 29:10 | **reorganization** | 27:16,20 45:18 | **ribeiro** 8:15 |
| **regularly** | 29:12 43:10 | 63:17,18 67:11 | **richard** 8:11 |
| 84:22 | **reorganize** | 67:19,20 84:23 | **ries** 10:17 |
| **relate** 24:6 | 31:12 | **resolving** 22:18 | **right** 12:12,25 |
| 65:5 70:4,5 | **reorganizing** | 31:18 | 13:4,12,13,21 |
| **related** 22:24 | 31:10 | **respect** 15:14 | 14:3,8,23 21:7 |
| 26:17 27:11,13 | **repaid** 15:20 | 15:23 20:19,20 | 21:9,25 23:5 |
| 32:6,12 42:18 | 37:1 | 26:24 28:25 | 24:14 26:3 |
| 65:19,20 | **reply** 56:16 | 57:12 58:12 | 28:12 32:17 |
| **relates** 32:8 | **representing** | 59:8 65:13 | 34:4 35:5,7,18 |
| 41:6,7 | 13:16,19 | 81:13,15 | 37:14,25 38:1 |
| **relation** 46:10 | **require** 18:21 | **respectful** | 40:13 42:10,15 |
| **relationship** | 31:24 | 51:11 | 43:10 44:1,7 |
| 19:14 22:21 | **required** 16:19 | **respecting** 77:8 | 44:23 46:7 |
| 23:10,15 24:24 | 33:13 | **respective** | 47:12 48:25 |
| 26:17 32:23 | **requires** 15:23 | 80:20 | 49:5,8 50:2,6 |
| 38:19 | 16:9 29:12 | **respond** 56:11 | 51:7 52:9,13 |
| | 49:4 | 56:15 77:17,23 | 56:14,22 58:13 |

58:21 60:4,7
60:21 61:7,10
61:19,19 63:11
64:1,22 65:11
65:24 67:3,16
69:13 70:17,18
72:10,10 73:6
73:7,13,22
74:6 77:3
78:25 79:3,22
81:5,25 82:7
82:14,16 85:4
85:4,15,16,21
**rightly** 26:5
**rights** 25:2
28:11 52:8
58:6 60:17
64:9,11 69:18
76:8 77:15
79:16
**rip** 86:9
**ripple** 38:8,14
80:23
**ripples** 37:19
**rise** 23:2 28:8
**risk** 46:23
**road** 5:4 41:14
45:5 87:21
**role** 18:21
**roll** 12:20 64:2
**room** 1:13
70:25
**rose** 5:9 7:1
13:3
**roseland** 6:12
**rosen** 5:14 13:2
13:2 81:8,10

**ross** 10:18
**rule** 2:10 83:12
**rules** 41:14
**ruling** 38:20
75:10,10 77:4
77:25 78:13
80:24 84:10
**rulings** 23:19
68:21
**run** 30:24
**running** 63:22
63:22

**s**

**s** 3:1 5:14 6:21
8:6,10 12:1
**sabrina** 8:25
**saferstein** 3:16
13:6,7
**sakmann** 8:14
**sam** 16:16 19:1
**samuel** 10:13
10:21
**sandall** 9:16
**sandler** 6:9
**sasson** 8:16
**satisfied** 59:17
**saw** 31:21
**saying** 20:24
22:1 30:3,23
31:14 37:15
39:25,25 45:2
54:11 77:16
**says** 47:1,2
52:12 76:2,6
**scale** 26:3
28:23 40:21
56:25 57:6,22

**schedule** 2:7
21:19,23 46:16
50:20 52:4,5,9
54:2 74:7 78:2
78:6,7,13,14
79:8,9
**scheduled** 83:6
83:9
**schedules**
22:11
**scheduling**
22:15
**scheme** 18:15
18:19,23
**scheuer** 10:19
**schickler** 10:20
**schwarz** 10:21
**sciametta**
10:22
**scope** 79:10
**se** 7:23,24,25
8:1,2
**sean** 1:22 3:8
12:2
**sec** 82:25
**second** 17:24
33:13,23 36:17
43:18 52:8
53:13 55:7
58:1 74:25
83:16
**section** 83:2
**sections** 2:9
**securities** 5:1,2
6:10 7:9 57:13
82:21 83:2

**see** 13:13 21:18
23:9 24:8,13
28:22 29:18
38:21 40:1
60:21 70:7
71:2 78:11
80:10,11 81:22
81:23 85:2,9
**seeing** 85:8
**seek** 52:8 77:14
**seeking** 54:25
73:24 77:19
**seems** 30:22
68:5,16
**seen** 31:5,22
41:8 45:17
50:4 59:23
63:7,8
**segue** 32:14
42:17
**sense** 14:21
30:12 34:11,23
37:21 40:17
42:1 45:13
47:12,19,21
48:4 50:24
51:23 52:18
55:13 62:13
64:3,14 65:2
74:2 80:3,3
**sensible** 68:5
**sensitive** 22:21
25:9,25 70:1
**sensitivities**
22:25 23:2
70:23

sent 67:10
68:10
separate 43:20
separately 42:1
series 71:14
86:7
serious 59:2,6
served 36:25
set 31:7 52:9
66:8,14 67:10
68:17 76:6
setting 47:23
80:21
settle 80:25
settlement
35:15 48:23,24
49:4
several 37:1
45:20 82:16
85:16
seward 6:1
share 81:6
sharing 24:3
71:4
she'll 32:14
sheer 28:19
35:18
shift 51:19
shl 1:3
shore 8:17
12:23,23 80:6
80:7,8 81:17
81:19
shortly 50:20
show 43:2 47:3
47:13 68:23

showing 42:24
76:19,20
shows 52:12
side 26:3 28:6
28:22 29:19
37:2 56:24
57:6,22,23
71:4 73:4
sides 24:8
sideways 67:6
signature 87:6
significance
25:1 38:4
significant
36:3 38:7
54:22 68:18
82:9
similar 37:21
37:22 39:6
42:11 57:19
58:17
similarly 37:20
simple 16:15
22:3 25:21
simply 28:12
30:3 31:18
32:2 36:25
37:13 45:2
69:20
single 19:10
sit 12:19
situation 42:10
60:6
size 60:23,24
61:3
slap 64:15

sleight 14:4
slight 12:18
smaller 62:24
smith 7:21
snatch 80:2
social 74:14
solana 37:11
57:10,16
solution 63:14
63:15 80:12
solutions 67:5
87:20
solves 80:12
somebody's
22:4
somewhat
41:10 45:16
46:13 73:11
sonnax 19:6
33:14,17,25
40:11 67:12
sonya 2:25
87:3,8
soon 86:11
sorry 55:16
sort 14:14
22:16 24:15,17
29:25,25 30:22
33:15 34:9
35:1 36:21
37:16 38:13,21
38:23 39:1,2
39:19 40:3,10
40:20 41:2,25
43:6,11,13,17
44:25 45:9
46:5,16,24

47:1,4,11
48:14 49:7,10
49:13,16,21,22
50:1,12,21
51:9,13 53:1
54:2 55:1,4
56:15 58:5
64:13 67:8
68:9,20 71:6
73:12 74:6,23
75:2,10,14
78:14 80:2
81:23 83:24
85:5,8
sorts 22:5
sought 33:7
77:14
sound 29:24
sounds 54:17
78:22
southern 1:2
12:3
speak 28:6
53:21 57:2
59:8 78:23
84:22
speaking 83:21
86:11
special 15:25
57:14
specific 36:20
67:12 71:10,11
77:7 80:17
85:24
specifically
43:21

spectrum 26:2
speed 74:10
speedily 46:15
spent 45:15
spillover 25:4
  25:6
spirited 15:2
spot 16:18
  57:13
sprofera 10:23
square 5:11
stable 37:12
  57:15,16
stablecoin
  57:11
stage 47:23
stake 27:25
  45:17 49:2
stakeholders
  16:21 27:24
  28:11,19 35:10
  43:15
stancil 10:24
stand 84:2
standard 33:13
  33:16 46:4
  49:10
standing 82:8
  82:10
start 12:7 15:9
  61:13 70:4
  80:5
started 73:6
starting 12:8
  13:15 27:1,1
  33:25 84:16

state 7:9
statement 45:4
  83:5,7,14
statements
  29:22,24 30:4
  30:18 45:1
states 1:1,12
  4:17 5:1 12:3
  13:13 82:21
status 74:21
stay 2:4 14:11
  14:15 15:24
  19:7,24 20:2,9
  25:25 26:4
  27:6,7 28:16
  28:17 32:14
  33:10,19 34:25
  38:6 39:16,21
  40:7 41:14,17
  42:14,16 43:4
  43:10,23 44:9
  44:13,15,16
  56:16,23 58:13
  59:13,15 67:10
  68:7,8,19
  70:10 71:6
  81:14
steen 3:3 12:10
  33:5
step 47:11,11
  48:15,15 53:9
  64:1,1 72:20
  84:9
steps 72:5,14
  78:15,15 79:20
stiff 72:23

stipulate 62:11
  62:11
stipulated
  21:17
stipulation
  63:5 75:18
stipulations
  40:15,15
street 1:13
  4:19 6:18 7:18
strongly 33:6
  76:23,23
structure 17:6
  37:17 46:6
students 86:7
subject 16:16
submit 28:15
  56:25 76:12
submitted
  44:20
subsequent
  17:19,20 25:14
substance 34:5
  34:16 36:14
substantial
  48:22,22
substantially
  46:12 49:11
substantive
  35:24 71:18
suggest 78:16
suggesting
  52:1 53:20
  66:11 70:13,14
suggestion
  68:25 74:1

suggestions
  14:19
suite 4:19 5:4
  7:10 87:22
sullivan 6:16
  8:18 10:25
  11:1 13:20
  15:8
sum 68:25
sun 8:19
sure 21:4 25:19
  26:11 30:11,21
  39:4 42:9
  43:25 52:2
  55:14,23 62:4
  69:14 72:16
  74:12 75:1,23
  76:22 82:5,11
  82:23 85:12
swift 11:2

t

t 6:22 87:1,1
tab 33:24
table 18:17
  59:10
tacks 48:12
take 14:14
  29:21 30:11,21
  31:1 47:8 49:7
  49:11 53:9
  58:23 74:4
  78:17
taken 68:9
takes 26:13
talk 17:8 23:14
  32:7 65:23
  74:12 79:6

84:8,13
talked  23:8
  36:18
talking  17:9
  34:18 38:9
  47:15,20 50:14
  57:13 63:2
  67:1,2 76:3
talks  69:5
tangible  72:14
taousse  4:7
  11:3
taylor  9:18
technology
  34:13
telephonically
  8:4
tell  14:24 48:6
  53:15
telling  30:23
ten  72:12
terms  22:3,15
  30:15,23 34:16
  34:18 36:9
  37:19 38:3,24
  41:13 43:15
  45:14,24,25
  49:8,15 51:15
  52:10 56:25
  59:12,13 67:12
  74:20
territoriality
  66:22
territory  63:10
test  24:11
  43:18

texas  7:8,9
thank  14:2,23
  15:7 32:25
  33:2,4 55:25
  56:14 73:3,9
  80:7 81:10,24
  81:25 82:3,14
  84:19,25 86:4
  86:10,12,13,14
that'd  36:3
theoretical
  48:11 79:14,16
theoretically
  64:9
therese  10:19
thing  17:18
  20:5 34:22
  39:5 57:18
  59:10 64:14
  68:5 71:3
  77:25 83:19
things  15:4
  20:8,13,15,18
  21:2 22:6,8,11
  23:21 24:6,18
  24:20 25:1
  26:10,22 30:16
  30:16,20 34:12
  34:18,25 36:9
  36:14 37:6
  38:17,18 39:21
  40:15,25 43:17
  48:25 50:1
  51:14 52:16
  55:5,6,7 57:6,7
  64:25 65:5,12
  67:25 68:12

69:25 70:1,4,5
71:23 74:15,23
78:11 79:17,19
79:19 84:2,17
85:7
think  15:4,10
  20:5,23 21:4
  22:19,20 23:4
  23:23 24:2,8
  24:18 25:8,10
  25:10,21,24
  26:1,5,5,6,10
  27:7,17 28:2,5
  32:12,24 33:20
  33:24 34:15
  35:3,4,6,18
  36:1,8,13 37:2
  37:2,3 38:5
  39:8,13 40:4,5
  40:5,7,9 41:18
  41:19 42:2,9
  42:12,18 43:3
  43:6,11,13,14
  43:19 44:1,4,5
  44:6,8,10,16
  44:17,17,21
  45:20,24,25
  46:12 47:9
  48:20,23 49:10
  49:12,13,17,18
  49:18,20 50:2
  51:11,13,17,23
  51:25 52:1,13
  52:25 53:2,4
  53:10,12,18,18
  53:19,21,22
  54:12,12,25

56:4,9,10,12
56:18 58:14,20
58:20,25 62:2
62:9,15 64:8
65:13 67:14,15
67:16 68:25
69:18 70:3,24
70:25 71:3
72:1,8,14,18
72:19,21 73:10
73:19,25 74:2
74:2,14 75:3,3
76:2,19 77:18
77:21 78:15,19
79:12 80:13,21
83:18 84:8
thinking  20:24
  21:3 46:25
  52:21 55:14
thinks  35:25
  42:8 55:5 71:4
third  17:22
thirds  63:3
  69:12
thorough
  81:11
thought  14:14
  38:22 49:16
  50:1,13 52:6
  54:9,17 55:22
  68:2 71:13
  72:7,18 75:24
  77:25 78:3
  79:8,17
thoughtful
  86:5

thoughts 48:14
68:23 73:8
thousands
16:12 19:12
thread 34:4,16
34:20
threat 76:25
three 21:14
54:8,8,8 57:16
67:22 69:13
threshold
52:16
throw 14:4
throwing 78:5
tichenor 11:4
tie 53:1
time 14:15
16:11 29:23
40:1 42:10
46:17 47:8,9
50:23 52:2
64:11 65:1
68:22 70:22
72:7 75:13
78:11,21 84:5
timeline 35:8
35:14 42:2,4
49:16,19 51:18
51:21 53:19
74:4 80:18
timelines 49:22
51:19
times 5:11
timing 20:3
21:6 34:6,11
34:16,22 35:5
35:16,22,23

36:13 39:13
46:3,11 51:24
83:12 84:4
tip 85:9
tobin 61:4
today 14:11
15:5 33:1 39:2
50:19,20 67:21
76:11 77:4,22
77:23,25 80:13
82:6,13 83:4
86:5
today's 13:23
72:18
toe 39:1
together 47:1
50:23 51:7
72:21 84:12
token 16:7,21
16:22
tom 9:5
took 77:12,15
top 25:9 37:12
61:21 77:10
79:18,19
tort 60:4
torture 86:7
total 35:20
totally 70:6
track 68:15
traded 57:17
trading 2:4
6:17 14:12
17:3 40:16
traditional
19:7

transcribed
2:25
transcript 87:4
transfers 18:3
transparent
70:6
tread 71:1
treated 17:1,2
trial 19:1
tried 31:7 43:2
49:15
trouble 66:15
69:16
troutman 7:15
true 49:14
70:17,18 87:4
trust 3:19 13:8
13:10 81:6
trustee 4:18
trustee's 13:13
try 35:1 47:19
67:4,23,25
71:17 72:5
trying 24:22
25:3 28:12
31:9 34:7,16
35:11,13 38:21
40:2,20 47:1
48:11,19,19
51:4 52:17
53:15 55:13
64:23 66:12,13
69:3 72:23,25
78:10,12 84:20
85:19
tsang 11:5

turn 15:5
turns 86:3
twenty 83:15
two 14:10
15:13 16:13
18:5 20:1 32:6
34:9 35:1 38:2
39:15 46:1
52:18 56:19
57:6,7,9,22
62:21 63:2
67:22 69:12
72:12 75:8,15
79:23
tx 7:11
types 37:25
49:8

**u**

u.s. 1:23 4:18
5:2
ucc 81:18
uday 9:13
ultimately 62:6
unclear 17:23
under 2:8
15:19,20 30:14
33:13 36:12
40:11 42:23
43:3 46:3
58:17 63:12
64:21
understand
14:10 30:2,12
34:10,17 39:18
40:3,20 43:18
43:25 44:11
49:25 60:20

64:17,18,20
80:9 84:6
85:18
**understanding**
24:14 37:14
38:4,16,22
50:14 55:5
58:6 64:3,6
66:15 70:2
**understood**
58:1
**undue**  45:2,25
46:2 47:3,13
51:12 53:2,4,5
53:7,11 54:14
59:12,20,22
60:1 61:25
62:1 66:3,20
70:9,9
**unduly**  73:1
**unfold**  64:7
**uniformly**
79:16
**unique**  42:10
**uniquely**  85:6
**united**  1:1,12
4:17 5:1 12:3
13:12 82:20
**unknowable**
20:21
**unknown**
51:14
**unlock**  79:20
**unnecessary**
57:8
**unrelated**
82:22

**unsecured**  4:10
5:17 6:2 14:2
30:13 43:1
45:9 48:10
61:17
**update**  84:1
**uptegrove**  5:7
8:20 82:17,19
82:19,20,24
84:21,25
**use**  31:9 41:9
75:5,14 85:20
**used**  37:6
84:12

**v**

**v**  10:16
**valuation**
16:10,13,22
36:24 65:12
**valuations**
16:13
**value**  16:5,18
16:20,23 17:4
17:19,20 25:14
26:25 27:21
37:16 46:8,9
48:20,23 54:13
57:12
**valued**  57:11
**vanlare**  3:9
12:9,10 14:18
14:20 32:13
33:4,5 35:3
36:23 37:10,23
39:4 40:4
41:18 42:22
44:1 45:22

48:13,16 51:17
53:10 55:19,20
55:25 56:4,9
63:25 64:14
67:8 69:1 73:7
73:9,17,21,24
75:4,24,25
77:12,17 78:16
78:18,21 79:1
83:19 84:19
86:14
**vanlare's**  77:11
**variables**  51:14
**varick**  4:19
**variety**  60:20
**various**  18:8
25:1 75:1
85:23
**vazquez**  8:21
**venue**  26:18
**veritext**  87:20
**versa**  41:2
**versus**  27:18
32:23 34:16
41:10 54:6,9
66:6 79:14
**vice**  41:1
**victory**  80:2
**view**  15:23
29:22 30:24
34:8 37:20
38:16 40:18,20
53:6 63:6
64:21 79:9
80:19
**views**  30:19
56:17 68:19

80:15
**vince**  11:1
**violation**  83:1
**violence**  56:8
**virtual**  70:25
84:11
**virtually**  24:5
61:23
**virtue**  23:18
**vis**  60:25,25
**voting**  32:1
45:8 55:11
59:16
**voyager**  21:12
21:16,17,20
29:13 40:14
63:4,14,15,16
63:19,22
**vunnamadela**
11:6

**w**

**wait**  22:17 23:3
**waiting**  62:17
81:3
**waive**  71:7
**walk**  23:24,24
**walker**  11:7
**want**  20:23
21:5 23:19
26:11 28:3
31:1 42:20
43:16,24 44:18
54:24 55:14,23
56:1 57:1 59:3
59:7 68:21
70:18 74:22
75:2,6,17

76:24 77:17,20
78:13,23 80:1
80:15 82:11
84:7 85:5,18
**wanted**  30:21
32:18 38:3
42:16,17 55:15
59:8 75:7
76:22 77:23
82:5 83:3
**wants**  12:19
86:7
**waste**  56:6
75:12
**water**  78:5
**watkins**  4:1
**way**  27:21
28:10 29:21
30:24 31:8
32:8 37:21
39:22,24 42:5
48:7 50:15,17
52:18 54:2
58:11 62:6
69:8 71:8
72:18,24,25
77:8 83:25
84:14
**ways**  14:19
26:1 30:5,7,20
46:1 64:16
72:13
**we've**  28:7
31:22 35:6,10
35:11,17 36:9
41:8 42:2,2
44:4,6 46:7

48:18 51:18
52:15,15 53:13
53:15 56:4,18
59:14 61:24
63:7 67:18
76:12 77:21
78:2 81:17
82:6
**week**  64:1
74:17 75:7
83:5,5 84:2
**weeks**  54:8
72:12
**weigh**  33:18
38:7,17,17
39:16 42:13
**weighs**  44:8,13
44:16
**weil**  3:11 13:7
**weinberg**  11:8
**welcome**  84:21
**west**  8:22
**westner**  11:9
**whatnot**  24:2
28:24
**whichever**  16:3
17:12
**white**  1:14 5:16
12:24 80:8
**wholehearte...**
46:9
**widely**  34:20
**wiles**  21:21
63:5,6,12
**william**  5:7
8:20 82:19,20

**wilmington**
7:19
**win**  28:3
**wins**  28:3
**wirtz**  11:10
**wisdom**  22:13
75:20
**wishes**  82:15
85:15
**wonderful**
68:11
**wondering**
52:7
**wonders**  47:11
**word**  85:20
**words**  31:14
57:8
**work**  35:1
67:19 72:3
77:5 80:10,10
**working**  81:17
**works**  29:9,10
29:10 30:25
38:25
**world**  26:13
40:20 64:22
66:8
**worldview**
41:2
**worms**  76:15
**worried**  25:6
62:1
**worries**  55:24
**worse**  64:10
**worth**  25:12
77:16

**written**  75:1
**wrong**  69:2
**wrote**  31:3,13
31:21

| x |
| --- |

**x**  1:4,10

| y |
| --- |

**yarborough**
11:11
**yeah**  23:7 25:8
28:3 50:15
56:20 74:14
77:24
**years**  52:19
58:24,25 59:4
**york**  1:2 3:6,14
3:21 4:4,13,20
5:12,20 6:5,19
7:4 12:4

| z |
| --- |

**zero**  29:9
**zia**  8:9
**zipes**  4:22
**zoom**  12:13
**zul**  9:22

| à |
| --- |

**à**  60:25

# **Exhibit B**

*Confidential*
*Subject to Federal Rule of Evidence 408 & Rules of Similar Import*

**Genesis – Potential Defenses to Alameda and FTX Preference Claims**

| # | Potential Defense[1] | Evidence Required |
|---|---|---|
| 1 | **Solvency**<br><br>**§ 547(b)(3)** | Anticipate document and testimonial discovery on solvency of FTX and Alameda.<br><br>Anticipate valuation expert report. |
| 2 | **Collateralization**<br><br>**§ 547(b)(5)** | Anticipate factual evidence can be satisfied by stipulated facts. |
| 3 | **Contemporaneous New Value Defense**<br><br>**§ 547(c)(1)** | Anticipate factual evidence can be satisfied by stipulated facts. |
| 4 | **Ordinary Course Defense**<br><br>**§ 547(c)(2)** | Anticipate document and testimonial discovery on the parties' course of dealing.<br><br>Anticipate expert discovery on ordinary industry terms. |
| 5 | **Subsequent New Value Defense**<br><br>**§ 547(c)(4)** | Anticipate factual evidence can be satisfied by stipulated facts. |
| 6 | **Customer Property**<br><br>**§ 541(d)** | Anticipate factual evidence on governing terms and conditions can be satisfied by stipulated facts.<br><br>Anticipate foreign law expert declarations.<br><br>Anticipate document and testimonial discovery regarding ownership of transferred property. |

---

[1] Genesis expressly reserves its right to alter any of the defenses included herein or to assert any other of its available defenses.

*Confidential*
*Subject to Federal Rule of Evidence 408 & Rules of Similar Import*

| # | Potential Defense[1] | Evidence Required |
|---|---|---|
| 7 | **Safe Harbor Defense**<br><br>**§ 546(e)** | Need to understand whether there are any factual disputes on parties' status as entities subject to safe harbor protections.  If so, would anticipate limited factual stipulation and expert submissions. |
| 8 | **FTT Valuation Defense** | Anticipate document and testimonial discovery and expert report on value of FTT. |
| 9 | **Wrong Entity Defense** | Anticipate factual evidence can be satisfied by stipulated facts. |