Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF FILING OF EXHIBITS TO DISCLOSURE STATEMENT**

**PLEASE TAKE NOTICE** that, on June 13, 2023, the debtors and debtors-in-possession (collectively, the "Debtors") filed the *Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code*, (the "Disclosure Statement"), ECF No. 429.

**PLEASE TAKE FURTHER NOTICE** that in connection with the hearing scheduled for July 20, 2023 at 2:00 p.m. on the adequacy of the Disclosure Statement attached hereto are the following exhibits to the Disclosure Statement:

- Exhibit C – Liquidation Analysis; and
- Exhibit D – Financial Projections.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that copies of the Disclosure Statement Exhibits can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis.

Dated:  July 10, 2023
        New York, New York

/s/ Jane VanLare
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and Debtors-in-Possession*

**Exhibit C**

**Liquidation Analysis**

# LIQUIDATION ANALYSIS

## I. Introduction

Section 1129(a)(7) of title 11 of the United States Code (the "Bankruptcy Code") requires that each holder of a claim or interest in a certain class either (i) accept the Plan or (ii) receive or retain under the Plan, property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. This is referred to as the "best interests of creditors" test. Accordingly, to demonstrate that the Debtors' proposed Plan[1] satisfies the "best interests of creditors" test, the Debtors, with the assistance of their restructuring advisors, have prepared this hypothetical liquidation analysis (this "Liquidation Analysis"), which estimates the realizable liquidation value of the Debtors' assets and estimates the distribution to creditors resulting from such liquidation.

**The Liquidation Analysis is a hypothetical exercise that has been prepared for the sole purpose of presenting a reasonable, good-faith estimate of the proceeds that would be realized if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan. The Liquidation Analysis does not purport to be a valuation of the Debtors' assets in the context of a holistic reorganization.**

**There may be a difference between the Liquidation Analysis and the values that may be realized or Claims generated in an actual liquidation. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants. Limited independent appraisals were available in preparing the Liquidation Analysis. In addition, the financial information has not been subject to procedures that would typically be applied to financial information prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), International Financial Reporting Standards ("IFRS"), or Singapore Financial Reporting Standards ("SFRS"). The Liquidation Analysis should be read in conjunction with (1) the Disclosure Statement, including any of the key exhibits thereto or incorporated references therein, as well as the risk factors set forth therein, and (2) the significant assumptions and notes set forth below.**

**Nothing contained in the Liquidation Analysis is intended to be, or constitutes, a concession, admission, or allowance of any claim by the Debtors. The actual amount or priority of Allowed Claims in the Chapter 11 Cases could materially differ from the estimated amounts set forth and used in the Liquidation Analysis. The Debtors reserve all rights to supplement, modify, or amend the analysis set forth herein.**

---

[1] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Debtors' Amended Joint Chapter 11 Plan (the "Plan") and the Disclosure Statement with Respect to the Amended Joint Chapter 11 Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code.

THE DEBTORS MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE ESTIMATES AND ASSUMPTIONS CONTAINED HEREIN, OR A CHAPTER 7 TRUSTEE'S ABILITY TO ACHIEVE FORECASTED RESULTS IN THE EVENT THAT THE CHAPTER 11 CASES ARE CONVERTED TO CHAPTER 7. ACTUAL RESULTS COULD VARY MATERIALLY FROM THE ESTIMATES AND PROJECTIONS SET FORTH IN THIS LIQUIDATION ANALYSIS.

The Liquidation Analysis has been prepared assuming that the Debtors' Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code on or about August 31, 2023. Hypothetical recoveries under chapter 7 set forth in this Liquidation Analysis were determined through multiple steps, as set forth below.

## II. Significant Assumptions

1. **Reliance on the Financial Projections**

    The Liquidation Analysis has been developed as a series of chapter 7 adjustments to the Financial Projections included as Exhibit D to the Disclosure Statement. As such, the Liquidation Analysis should be read in conjunction with the Financial Projections, including the significant assumptions and notes included therein.

2. **The Debtors Are Best Positioned to Maximize the Value of the Assets Under the Plan**

    In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets and to make distributions to creditors in accordance with the priorities established in the Bankruptcy Code. The Plan (solely to the extent a Standalone Reorganization does not occur) allows for the Wind-Down of the Debtors. Although a chapter 7 liquidation would achieve the same goal (i.e., a sale of the entirety of the Debtors' assets), the Debtors believe that the Plan will provide greater proceeds and recoveries to Holders of Allowed Claims, than would be realized in a chapter 7 liquidation. A chapter 7 trustee would be unlikely to have the technical expertise and knowledge of the Debtors' businesses and assets that is required to maximize the proceeds from the sale of the Debtors' assets. This is particularly true in light of the highly complex nature of the Debtors' business and these Chapter 11 Cases. In particular, the Debtors' institutional knowledge of the business would be fundamental in maximizing the value of the Causes of Action and Retained Causes of Action that would be difficult for a chapter 7 trustee to replace and could have a significant impact on the recovery of these assets.

    Moreover, a chapter 7 trustee could sell all of the Debtors' assets immediately and at depressed prices in a fire sale liquidation. This fire sale of the Debtors' assets could flood the market with various types of Digital Assets, which could result in lower values than an orderly sale under the Plan.

Furthermore, the Plan allows for a Standalone Reorganization which could maximize potential recoveries to Holders of Allowed Claims at GGH, GGC, and GAP. The Equitization allowed under the Plan may not be possible in a chapter 7 liquidation.

3. **The Sale of the Debtors' Digital Assets Could Result in Adverse Tax Consequences for Creditors**

Creditors with claims denominated in Digital Assets could suffer material adverse tax consequences in a chapter 7 scenario. The chapter 7 trustee may sell the Debtors' Digital Assets and distribute the proceeds in Cash. As a result, Creditors with claims denominated in Digital Assets, the tax basis of which (as determined for U.S. federal income tax purposes) is less than the ultimate recovery, generally would recognize taxable gain for U.S. federal income tax purposes equal to the excess of such recovery over such tax basis in the claim (very generally, equal to the initial purchase price of the Digital Asset such Creditor had previously loaned to the Debtors). In addition, if a Creditor receives a distribution of Digital Assets that is of a different type from the Digital Assets the Creditor had previously loaned to the Debtors, the Creditor would generally be expected to be subject to similar treatment, recognizing taxable gain equal to the difference between the fair market value of the Digital Assets received and the Creditor's tax basis in the claim. If a Creditor receives a distribution of Digital Assets that are of the same type as those previously loaned to the Debtors, it is possible that such receipt can be reported as not giving rise to taxable gain for U.S. federal income tax purposes, although such tax treatment is subject to significant uncertainty, and Creditors are urged to consult with their tax advisors. With respect to Creditors that are U.S. taxpayers, any gain recognized as a result of a distribution of Digital Assets would generally be subject to U.S. tax. Creditors in non-U.S. jurisdictions may be subject to non-U.S. income tax consequences pursuant to applicable foreign tax law.

4. **The Incremental Costs of a Chapter 7 Trustee Would Increase the Costs of a Wind-Down in the Event of a Conversion to Chapter 7 as Compared to Those to Be Incurred Under the Plan**

Pursuant to section 326 of the Bankruptcy Code, the Bankruptcy Court may allow reasonable compensation for a trustee's services, not to exceed 25% on the first $5,000 or less, 10% on any amount in excess of $5,000 but not in excess of $50,000, 5% on any amount in excess of $50,000 but not in excess of $1.0 million, and reasonable compensation not to exceed 3% of such moneys in excess of $1,000,000 upon all moneys disbursed or turned over in the case by the trustee to parties in interests. This fee structure would represent a significant and incremental cost as compared to the Plan.

In particular, as of April 30, 2023, the Debtors currently hold approximately $1.2 billion of Investments in Digital Assets at fair value. The Plan allows for distributions in respect of Claims denominated in Digital Assets in kind in the form of Digital Asset in which such Claims are denominated. As such, under the Plan, the Debtors may not need to sell Digital Assets. In addition, to the extent that the Debtors were to monetize Digital Assets to make distributions in Cash under the Plan, given the Debtors' expertise in trading Digital Assets,

the Debtors would be able to do so at little to no additional cost as compared to the Financial Projections and estimated recoveries under the Plan. In comparison, if a chapter 7 trustee were to sell Digital Assets to disburse money to Holders of Allowed Claims, this could result in up to $36 million of incremental costs that would not be incurred under the Plan.

In addition to Digital Assets, the Debtors also hold other large assets, including the DCG Loans and DCG Note, for which a 3% fee would represent a significant cost as compared to the Plan and related Financial Projections.

In addition, the chapter 7 Trustee would incur many of the same costs assumed under the Plan and related Financial Projections, including the Debtors' operating personnel and vendor costs. As such, a chapter 7 conversion would result in an increase in chapter 7 trustee fees, with little or no reduction in the operating costs assumed in the Plan and related Financial Projections.

5. **The Incremental Cost of Professional Fees Would Increase the Costs of a Wind-Down in the Event of a Conversion to Chapter 7 as Compared to Those to Be Incurred Under the Plan**

Following the appointment of a chapter 7 trustee, the chapter 7 Trustee would hire new professionals who would be unfamiliar with the complexities of the Debtors' assets, operations, and asserted claims. As such, it is likely that these new professionals would require significant time to obtain the knowledge commensurate with that of the Debtors' existing professionals and could increase the timeline to monetize the Debtors' assets and resolve asserted claims.

### III. Conclusion

As summarized in the Liquidation Analysis below, the Debtors have determined that upon the anticipated Effective Date, the Plan will provide all Holders of Allowed Claims with a recovery that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code. Therefore, the Debtors believe that the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(7).

# LIQUIDATION ANALYSIS SUMMARY

The Debtors have estimated the impact of a chapter 7 conversion compared to Estimated Net Assets Available for Distribution under the Plan and related Financial Projections. Based on the analysis below, the Debtors believe that a chapter 7 conversion could add $73 - $81 million of costs across all Debtors, with no additional increase in asset values or reductions in claims:

| ($ in millions) | Notes | GGC Low | GGC High | GAP Low | GAP High | GGH Low | GGH High |
|---|---|---|---|---|---|---|---|
| **Incremental Costs** | | | | | | | |
| Reduced Asset Recoveries | Note A | - | - | - | - | - | - |
| Chapter 7 Trustee Fees | Note B | (64.1) | (73.5) | (0.1) | (0.9) | (2.3) | (2.9) |
| Incremental Professional Fees | Note C | (5.8) | (3.2) | (0.9) | (0.5) | (0.2) | (0.1) |
| **Total Incremental Costs** | | $ (69.9) | $ (76.6) | $ (1.0) | $ (1.4) | $ (2.5) | $ (3.0) |

Note A – Reduced Asset Recoveries

While the Debtors believe the Plan will provide greater proceeds and recoveries to Holders of Allowed Claims relative to those realized in a chapter 7 liquidation, the Debtors have not estimated such impact in the table above. The Debtors believe that such impact, were it to be estimated, would further prove the Plan to be in the best interest of creditors as compared to a chapter 7 conversion.

Note B – Chapter 7 Trustee Fees

Assumed to be approximately 3% of Net Assets Available for Distribution Under the Plan less Debtor Affiliate Recoveries included in Exhibit D.

Note C - Incremental Professional Fees

Assumed to include an additional 3-4 months of professional fees for new professional firms assuming the roles of Debtor counsel and financial advisor, partially offset by certain transaction fees that may not be incurred.

## Exhibit D

**Financial Projections**

# FINANCIAL PROJECTIONS

In connection with developing the *Debtors' Amended Joint Chapter 11 Plan* (as may be amended, modified, or supplemented from time to time and including all exhibits thereto, the "Plan"),[1] the Debtors prepared the following projections for each of the Wind-Down Debtors and/or Reorganized GGH (as applicable) (collectively, the "Financial Projections"). The Financial Projections reflect the Debtors' good faith estimate of the expected cash and assets, including Digital Assets, available for distribution from the Wind-Down Debtors or Reorganized GGH (as applicable) after the transactions contemplated by the Plan. For purposes of the Financial Projections, the Effective Date is assumed to be August 31, 2023 (the "Assumed Effective Date").

The Financial Projections are being provided solely to enable Holders of Claims entitled to vote on the Plan to make an informed judgment of how to vote on the Plan. The Debtors' advisors expressly disclaim any liability to any Holder of Claims in connection with such information or its decision with respect to how to vote on the Plan. The Financial Projections reflect the Debtors' judgment of expected future operating and business conditions, which are subject to change. Although the Debtors and their advisors have prepared the Financial Projections in good faith and believe the assumptions to be reasonable, it is important to note that the Debtors and their advisors can provide no assurance that such assumptions will be realized. As described in detail in the Disclosure Statement, a variety of risk factors could affect the Debtors' financial results and must be considered. Accordingly, the Financial Projections should be reviewed in conjunction with a review of the risk factors set forth in the Disclosure Statement and the assumptions described herein, including all relevant qualifications and footnotes. The Debtors' financial advisors have relied upon the accuracy and completeness of financial and other information furnished by the Debtors and did not attempt to independently audit or verify such information. All estimates and assumptions shown within the Financial Projections were developed by the Debtors and their advisors. The Financial Projections have not been audited or reviewed by independent accountants. The assumptions disclosed herein are those that the Debtors believe to be significant to the Financial Projections. Although the Debtors are of the opinion that these assumptions are reasonable under the circumstances, such assumptions are subject to significant uncertainties, and as such, despite efforts to foresee and plan for the effects of changes in these circumstances, financial results cannot be predicted with certainty. Consequently, actual financial results could vary significantly from projected results.

THE FINANCIAL PROJECTIONS, INCLUDING THE UNDERLYING ASSUMPTIONS, SHOULD BE CAREFULLY REVIEWED IN EVALUATING THE PLAN. ALTHOUGH THE DEBTORS BELIEVE THE ASSUMPTIONS UNDERLYING THE FINANCIAL PROJECTIONS, WHEN CONSIDERED ON AN OVERALL BASIS, ARE REASONABLE IN LIGHT OF CURRENT CIRCUMSTANCES AND EXPECTATIONS, NO ASSURANCE CAN BE GIVEN THAT THE FINANCIAL PROJECTIONS WILL BE REALIZED.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

THE FINANCIAL PROJECTIONS SHOULD NOT BE REGARDED AS A REPRESENTATION OR WARRANTY BY THE DEBTORS, THE WIND-DOWN DEBTORS, REORGANIZED GGH (AS APPLICABLE), OR ANY OTHER PERSON AS TO THE ACCURACY OF THE FINANCIAL PROJECTIONS OR THAT THE FINANCIAL PROJECTIONS WILL BE REALIZED. WHILE THE DEBTORS HAVE ASSUMED FOR THE PURPOSES OF THESE FINANCIAL PROJECTIONS THAT THERE WILL BE CERTAIN SETOFFS OF AMOUNTS OWED AND AS AGAINST COLLATERAL HELD BETWEEN THE DEBTORS AND THEIR COUNTERPARTIES, NO SUCH COUNTERPARTIES HAVE SOUGHT LEAVE FROM THE BANKRUPTCY COURT TO EXERCISE SUCH SETOFF RIGHTS AS OF THE DATE HEREOF WHICH LEAVE WOULD BE REQUIRED TO EFFECTUATE ANY SUCH SETOFF ON OR AFTER THE PETITION DATE. FURTHER, ALL OF THE ASSUMPTIONS HEREIN WERE MADE FOR THE SOLE PURPOSE OF CONSTRUCTING THESE FINANCIAL PROJECTIONS AND SHOULD NOT BE TAKEN AS ANY INDICATION OF HOW THE DEBTORS MAY CHOOSE TO PROCEED IN THE FUTURE OR BE DEEMED AS AN ADMISSION BY OR BINDING ON THE DEBTORS FOR ANY OTHER PURPOSE. NOTHING CONTAINED IN THE FINANCIAL PROJECTIONS SHALL CONSTITUTE A WAIVER OR ADMISSION BY THE DEBTORS IN ANY RESPECT, INCLUDING WITHOUT LIMITATION, WITH RESPECT TO MATTERS INVOLVING OBJECTIONS TO CLAIMS, SUBSTANTIVE CONSOLIDATION, EQUITABLE SUBORDINATION, DEFENSES, ANY ASSERTED RIGHTS OF OR PURPORTED EXERCISE OF FORECLOSURE, SETOFF OR RECOUPMENT, OR ANY OTHER RELEVANT APPLICABLE LAWS, AND THE DEBTORS RESERVE ALL RIGHTS AND DEFENSES RELATING TO ANY OF THE ASSUMPTIONS MADE HEREIN. THE SIGNIFICANT ASSUMPTIONS USED IN THE PREPARATION OF THE FINANCIAL PROJECTIONS ARE STATED BELOW. THE FINANCIAL PROJECTIONS ASSUME THAT THE DEBTORS WILL EMERGE FROM CHAPTER 11 ON THE ASSUMED EFFECTIVE DATE. THE FINANCIAL PROJECTIONS SHOULD BE READ IN CONJUNCTION WITH (1) THE DISCLOSURE STATEMENT, INCLUDING ANY OF THE EXHIBITS THERETO OR INCORPORATED REFERENCES THEREIN, AS WELL AS THE RISK FACTORS SET FORTH THEREIN, AND (2) THE SIGNIFICANT ASSUMPTIONS, QUALIFICATIONS, AND NOTES SET FORTH BELOW.

THE FINANCIAL PROJECTIONS WERE NOT PREPARED WITH A VIEW TOWARD COMPLIANCE WITH THE GUIDELINES ESTABLISHED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (THE "AICPA"), THE FINANCIAL ACCOUNTING STANDARDS BOARD (THE "FASB"), OR THE RULES AND REGULATIONS OF THE SECURITIES AND EXCHANGE COMMISSION. FURTHERMORE, THE FINANCIAL PROJECTIONS HAVE NOT BEEN AUDITED, REVIEWED, OR SUBJECTED TO ANY PROCEDURES DESIGNED TO PROVIDE ANY LEVEL OF ASSURANCE BY THE DEBTORS' INDEPENDENT PUBLIC ACCOUNTANTS. THE FINANCIAL STATEMENTS HAVE NOT BEEN SUBJECT TO PROCEDURES THAT WOULD TYPICALLY BE APPLIED TO FINANCIAL STATEMENTS PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES IN THE UNITED STATES ("GAAP"), INTERNATIONAL FINANCIAL REPORTING STANDARDS

("IFRS"), OR SINGAPORE FINANCIAL REPORTING STANDARDS ("SFRS"). WHILE PRESENTED WITH NUMERICAL SPECIFICITY, THE FINANCIAL PROJECTIONS ARE BASED UPON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH, ALTHOUGH DEVELOPED AND CONSIDERED REASONABLE BY THE DEBTORS, MAY NOT BE REALIZED AND ARE SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE CONTROL OF MANAGEMENT. THESE UNCERTAINTIES INCLUDE, AMONG OTHER THINGS, THE ULTIMATE OUTCOME AND CONTENTS OF A CONFIRMED PLAN THE TIMING OF THE CONFIRMATION OF SUCH PLAN, AND ORDERS OF THE COURT CONCERNING OBJECTIONS TO AND/OR ALLOWANCE OF CLAIMS. CONSEQUENTLY, THE FINANCIAL PROJECTIONS SHOULD NOT BE REGARDED AS A REPRESENTATION OR WARRANTY BY THE DEBTORS, OR ANY OTHER PERSON, AS TO THE ACCURACY OF THE FINANCIAL PROJECTIONS OR THAT THE FINANCIAL PROJECTIONS WILL BE REALIZED. ACTUAL RESULTS MAY VARY MATERIALLY FROM THOSE PRESENTED IN THE FINANCIAL PROJECTIONS. HOLDERS OF CLAIMS OR EQUITY INTERESTS MUST MAKE THEIR OWN ASSESSMENT AS TO THE REASONABLENESS OF SUCH ASSUMPTIONS AND THE RELIABILITY OF THE PROJECTIONS IN MAKING THEIR DETERMINATION OF WHETHER TO ACCEPT OR REJECT THE PLAN.

## ASSUMPTIONS TO FINANCIAL PROJECTIONS

1. **Methodology**

   (a) The Financial Projections have been prepared on a Debtor-by-Debtor basis to estimate the amount of net assets that may be available for distribution at each individual Debtor entity;

   (b) The Financial Projections assume a period of up to twenty-four months following the Assumed Effective Date (the "Projection Period") to distribute all of the Debtors' assets and resolve all outstanding claims, with the exception of certain assets that Reorganized GGH will operate as a going concern if there is a Standalone Reorganization, and resolve claims;

   (c) While the Financial Projections project various costs by function, many of the costs, and related functions, included in the Financial Projections are provided by Genesis Global Trading, Inc. ("GGT") under a shared services and cost reimbursement agreement;

   (d) The Financial Projections assume that all assets of each Debtor entity, with the exception of certain assets and entities (i.e., GGCI, GGML) that Reorganized GGH will operate as a going concern in the event of a Standalone Reorganization, will be distributed during the Projection Period. While many of the Debtors' assets would be available for immediate distribution under the terms of the Plan, certain assets may take additional time to distribute. Unless otherwise noted, all amounts included in the Financial Projections have not been discounted to present values;

   (e) The asset values in the Financial Projections, in many cases, assume a range of estimates to reflect economic, business, regulatory and competitive uncertainties and contingencies;

(f) The Financial Projections do not include estimates for the value of certain assets that are currently subject to dispute or to which the recoveries are otherwise uncertain, including insurance claims and certain receivables from DCG. Any recovery on these assets would increase assets available for distribution relative to what has been included in the Financial Projections;

(g) The Financial Projections assume that the amount of distributable assets is not reduced by the Litigation Reserve under the assumption that any related litigation would result in an equal or greater amount of recovery (see Note 2: Causes of Action). If the Litigation Reserve, which is assumed to be $40 million, does not yield recoveries in excess of the Litigation Reserve, net assets available for distribution may be reduced.

2. **Causes of Actions**

(a) As described in the Plan, the Wind-Down Debtors and Reorganized GGH (as applicable) shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Financial Projections do not include an estimate of proceeds and/or associated costs in connection with any such Causes of Action.

3. **Digital Asset Values**

(a) In the high and low case, Digital Assets are valued using trading prices from Binance, Coinbase, and Kraken with a trailing 30-day historical average as of June 22, 2023 00:00 UTC. A schedule detailing these Digital Asset prices is below ("Historical Digital Asset Prices").

(b) In the high case, loans and collateral pledged are valued using the Historical Digital Asset Prices. In the low case, loans and collateral pledged are valued using the trading prices from Binance, Coinbase, Bitstamp, and Kraken as of 11:11 pm EST on the Petition Date of January 19, 2023. A schedule detailing Digital Asset values as of the Petition Date is included below ("Petition Date Digital Asset Prices").

(c) Note Digital Asset values are subject to material market volatility changes, and such changes may be significant and could have a material impact on the amount of assets available for distribution.

| Digital Asset | Historical Digital Asset Prices | Petition Date Digital Asset Prices | Digital Asset | Historical Digital Asset Prices | Petition Date Digital Asset Prices |
|---|---|---|---|---|---|
| 1INCH | 0.33 | 0.45 | KSM | 24.57 | 33.59 |
| AAVE | 58.75 | 81.34 | LINK | 5.88 | 6.50 |
| ADA | 0.32 | 0.34 | LPT | 4.53 | 5.50 |
| ALCX | 15.43 | 16.34 | LRC | 0.25 | 0.26 |
| ALGO | 0.13 | 0.22 | LTC | 85.17 | 84.11 |
| AMP | 0.00 | 0.00 | LUNA | 0.00 | 0.00 |
| ANKR | 0.02 | 0.02 | LUNC | 0.00 | 0.00 |
| APE | 2.71 | 4.99 | MANA | 0.41 | 0.65 |
| ATOM | 9.62 | 12.17 | MATIC | 0.76 | 0.95 |
| AVAX | 13.21 | 16.18 | MIR | 0.09 | 0.16 |
| AXS | 6.03 | 8.37 | MKR | 654.59 | 661.19 |
| BAL | 4.87 | 6.56 | NEAR | 1.42 | 2.10 |
| BAT | 0.19 | 0.24 | NEO | 9.07 | 7.45 |
| BCH | 111.84 | 121.55 | NFT | 0.00 | 0.00 |
| BIT | 0.47 | 0.48 | NU | 0.16 | 0.13 |
| BNB | 271.66 | 294.00 | OMG | 1.70 | 1.25 |
| BNT | 0.39 | 0.39 | OXT | 0.06 | 0.08 |
| BSV | 33.43 | 43.06 | PAXG | 1,937.45 | 1,907.00 |
| BTC | 26,875.35 | 21,091.98 | RBN | 0.16 | 0.20 |
| BUSD | 1.00 | 1.00 | REN | 0.07 | 0.07 |
| CHZ | 0.08 | 0.13 | RLY | 0.01 | 0.01 |
| COMP | 31.70 | 48.40 | SAND | 0.47 | 0.70 |
| CRV | 0.74 | 0.93 | SDIV | 21.93 | 25.55 |
| DAI | 1.00 | 1.00 | SGB | 0.01 | 0.01 |
| DASH | 36.74 | 49.55 | SHIB | 0.00 | 0.00 |
| DFE | 57.74 | 58.55 | SKL | 0.03 | 0.03 |
| DOGE | 0.07 | 0.08 | SNX | 2.10 | 2.25 |
| DOT | 4.96 | 5.86 | SOL | 18.19 | 21.28 |
| DVY | 111.89 | 121.29 | SPHD | 40.47 | 43.85 |
| EOS | 0.79 | 0.98 | SRM | 0.16 | 0.42 |
| ETC | 16.78 | 20.73 | STETH | 1,812.29 | 1,537.32 |
| ETH | 1,812.29 | 1,554.65 | STORJ | 0.27 | 0.33 |
| ETHE | 8.18 | 7.85 | SUSHI | 0.72 | 1.20 |
| ETHW | 1.80 | 3.84 | TOKE | 1.12 | 0.99 |
| FET | 0.23 | 0.27 | TRX | 0.07 | 0.06 |
| FIL | 4.15 | 4.40 | UMA | 1.75 | 1.81 |
| FLOW | 0.61 | 1.03 | UNI | 4.71 | 6.19 |
| FTM | 0.29 | 0.30 | USDC | 1.00 | 0.27 |
| FTT | 0.94 | 2.27 | USDT | 1.00 | 1.00 |
| GALA | 0.03 | 0.05 | USTC | 0.02 | 0.02 |
| GAS | 2.55 | 2.45 | VYM | 104.39 | 107.81 |
| GBTC | 14.35 | 11.46 | WBTC | 26,875.35 | 21,079.18 |
| GLMR | 0.26 | 0.39 | WLUNA | 0.00 | 0.00 |
| GRT | 0.11 | 0.08 | XEC | 0.00 | 0.00 |
| GUSD | 1.00 | 1.00 | XLM | 0.09 | 0.08 |
| HBAR | 0.05 | 0.06 | XRP | 0.40 | 0.39 |
| HNT | 1.29 | 2.98 | XTZ | 0.82 | 1.00 |
| HT | 2.87 | 4.92 | YFI | 6,084.60 | 6,736.54 |
| IDV | 26.64 | 28.97 | ZEC | 28.90 | 45.07 |
| INJ | 6.72 | 1.54 | ZEN | 7.26 | 9.88 |
| KNC | 0.55 | 0.80 | ZRX | 0.20 | 0.20 |

4. **Debtor and Non-Debtor Affiliates**

   (a) In certain cases the Debtors may have receivables from, or equity interests in, certain Debtor and non-Debtor affiliates.  The Financial Projections reflect a range of values related to these assets as the Debtors believe that certain of these affiliates may have going-concern value.

5. **Taxes**

   (a) The Debtors are assumed to utilize existing Net Operating Losses to offset taxable gains on mark-to-market fluctuations.

## ESTIMATED NET ASSETS AVAILABLE FOR DISTRIBUTION, BY DEBTOR

| ($ in millions) | Notes | GGC Low | GGC High | GAP Low | GAP High | GGH Low | GGH High |
|---|---|---|---|---|---|---|---|
| **Proceeds / Available Assets** | | | | | | | |
| Cash and Cash Equivalents | Note A | $ 262.0 | $ 262.0 | $ 0.0 | $ 0.0 | $ 0.0 | $ 0.0 |
| Digital Assets | Note B | 1,105.1 | 1,105.1 | 0.3 | 0.3 | - | - |
| Third Party Loans | Note C | 2.1 | 54.9 | - | - | - | - |
| Pledged Collateral to Third Parties | Note D | - | - | - | 28.3 | - | - |
| DCG Asset Recovery | Note E | 710.4 | 943.4 | - | - | - | - |
| Debtor Affiliate Recovery | Note F | 75.4 | 118.1 | - | - | - | - |
| Non-Debtor Affiliate Recovery | Note G | 119.0 | 136.0 | 6.3 | 6.3 | 72.8 | 89.7 |
| Other Asset Recovery | Note H | 6.1 | 15.4 | 0.0 | 0.0 | 3.0 | 5.0 |
| **Total Proceeds / Available Assets** | | **$ 2,280.2** | **$ 2,634.9** | **$ 6.6** | **$ 34.9** | **$ 75.9** | **$ 94.7** |
| **Wind Down Costs** | | | | | | | |
| Operating Disbursements | Note I | (37.0) | (37.0) | (0.3) | (0.3) | - | - |
| Professional Fees | Note J | (32.7) | (32.7) | (5.1) | (5.1) | (1.3) | (1.3) |
| **Total Wind Down Costs** | | **$ (69.6)** | **$ (69.6)** | **$ (5.4)** | **$ (5.4)** | **$ (1.3)** | **$ (1.3)** |
| **Estimated Net Assets Available For Distribution** | | **$ 2,210.5** | **$ 2,565.3** | **$ 1.2** | **$ 29.5** | **$ 74.6** | **$ 93.4** |

# NOTES TO FINANCIAL PROJECTIONS

Note A – Cash and Equivalents

Includes estimated cash and equivalents as of the Assumed Effective Date. Balances have been reduced to reflect amounts that will be used to fund, as of the Assumed Effective Date, the Professional Fee Escrow Account in respect of any assumed accrued and unpaid Professional Fee Claims (including, for the avoidance of doubt, any restructuring or sale success fees) and which amounts will not be available for distribution. Balances have not been reduced by the amount of the Litigation Reserve under the assumption that any related litigation would result in an equal or greater amount of recoveries. Additionally, balances have not been adjusted to reflect any Claims Reserve amounts.

Note B – Digital Assets

Includes Digital Assets held at each of the respective Debtors as well as 35.9 million shares of Grayscale Bitcoin Trust (the "GBTC Shares") and 3.8 million shares of Grayscale Ethereum Trust (the "ETHE Shares"). In both cases, estimated values are based on Historical Digital Asset Prices. While the majority of Digital Assets may be available for distribution on or about the Plan Effective Date, the GBTC Shares or ETHE Shares may take a longer period of time to distribute.

Note C – Third Party Loans

Includes digital currency loans, at fair value and USD loans receivable, net of allowance for loan losses from third party counterparties, which are assumed to be set off against digital currency collateral payable and USD collateral payable held by the Debtors.

Third party loans are valued using Historical Digital Asset Prices and Petition Date Digital Asset Prices in the high and low cases, respectively. The value of Digital Assets held as collateral for such loans are determined as of the Petition Date in both the high and low cases.

Additionally, certain third party counterparties have borrow balances with the Debtors in excess of their net loan balance (after collateral set off). In these instances, the net loan balance has been set off against the corresponding third party borrow and is not reflected in the Debtors' proceeds. The value of third party borrows is valued using Petition Date Digital Asset Prices.

Third Party Loans are assumed to have an estimated recovery of $2 to $55 million, net of allowance for loan losses and collateral payable.

Note D – Pledged Collateral to Third Parties

In the high case, digital currency collateral receivable from certain third parties are valued using Historical Digital Asset Prices, which are set off against third party digital currency loans payable and USD loans payable as of the Petition Date. In the low case, pledged collateral is assumed set off against the digital currency loans payable and USD loans payable as of either the Petition Date or the date of purported set off.

Pledged collateral to third parties are assumed to have an estimated recovery of $0 to $28 million.

Note E – DCG Asset Recoveries

Includes estimated proceeds related to the following assets at GGC:
*DCG Loans* – Assumes the recovery of $500 million plus an additional 4,550.45 BTC and 14,048 BCH valued at a total of $120 million using Historical Digital Asset Prices from DCGI;

*DCG Note* – Assumes an estimated valuation range of $90 to $323 million reflecting the estimated net present value of the note based on a number of assumptions, including yields on selected publicly traded crypto company debt issuances, discount rates, and other factors.[2]

Note F – Debtor Affiliate Recoveries

Includes GGC's recovery of intercompany receivables from Debtor Affiliates GAP and GGH. GGC's receivable from GAP assumes a recovery range of approximately $1 to $25 million. Recoveries at GAP are highly contingent on GAP's recoveries related to collateral receivable for certain third party loans payable.

GGC's recovery on its receivable from GGH is estimated between $75 to $93 million based primarily on GGH's non-Debtor affiliate recoveries from GGML and GGCI.

Note G – Non-Debtor Affiliate Recoveries

Includes recovery of receivables from, or equity interests in, certain non-Debtor affiliates. Non-Debtor affiliate recoveries at GGC assume a recovery range of approximately $119 to $136 million from GGCI. The low case assumes that GGCI does not continue as a going concern with an orderly wind-down, including estimated wind-down costs and potential

---

[2] The estimated valuation is not a prediction or guarantee of the actual market value that may be realized through the sale of the DCG Note and is necessarily based on economic, monetary, market, and other conditions as in effect on the date of this analysis.

claims from third parties. The high case assumes GGCI continues as a going concern and GGC recovers par on its intercompany receivable.

Non-Debtor affiliate recoveries at GGH assume a recovery range of approximately $73 to $90 million from its equity interests in GGML and GGCI. The low case assumes a discount to book value, including wind-down costs, in the event that going concern value cannot be realized, whereas the high case assumes both GGML and GGCI continue as a going concern.

Note H – Other Asset Recovery

Primarily includes interest receivable from third party counterparties and proceeds received from investment interests. Interest receivable is valued using Historical Digital Asset Prices and Petition Date Digital Asset Prices in the high and low cases, respectively.

Note I – Operating Disbursements

Primarily includes the cost associated with operating personnel required to distribute the assets of the Wind-Down Debtors in accordance with the Plan as well as to assist in the resolution of Disputed Claims, with such costs expected to decrease throughout the Projection Period. Furthermore, payroll costs include incremental cost associated with operating personnel required by federal and state law, contractual obligations, and other Debtor policies.

Additionally, these figures include vendor costs related to Digital Asset custody, cloud web hosting and related services, insurance costs primarily pertaining to directors, officers and other employees, rent and occupancy, information technology services, trading software and other technological services, and costs relating to ordinary course operating professionals (legal, regulatory, other), registration fees and other costs viewed in connection with administration of the Plan.

Note J – Professional Fees

Includes an estimate of fees for professionals required to assist the Debtors in workstreams pertaining to the Plan. These include, but are not limited to, achieving the recoveries contemplated herein, mitigating and resolving Disputed Claims, distributing select assets, making distributions, and assisting the Debtors in other daily matters. The estimate shown in the table above for professional fees during the Projection Period represents an aggregate amount of the fees estimated for the individual matters associated with achieving the level of recoveries and claims contemplated by the Plan. The estimate also includes assumptions regarding the provision of day-to-day financial and other advisory services to the Wind-down Debtors and Reorganized GGH (as applicable). These services include, but are not limited to, fees associated with the Plan Administrator, claims agent, claims reconciliation process, cash management, tax-related services, bankruptcy court-related services, and other fees required to administer the Plan.