**Hearing Date: August 24, 2023**, at 11:00 a.m. ET
**Objection Deadline:  August 9, 2023**, at 4:00 p.m. ET

Sean A. O'Neal
Luke A. Barefoot
Rishi N. Zutshi
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF HEARING ON**
**DEBTORS' FIRST OMNIBUS OBJECTION**
**(SUBSTANTIVE) TO CLAIM NOS. 523, 526 AND 527 PURSUANT**
**TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)**

**PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors")[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on July 19, the Debtors filed the *Debtors'* *First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. §*

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]      Holdco, and its Debtor and non-Debtor subsidiaries are collectively referred to as the "Company".

502 and Fed. R. Bankr. P. 3007 (No Liability) (the "Objection").  A sufficiency hearing (the "Sufficiency Hearing") on the Objection will be held before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 pursuant to the *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 44] (the "Case Management Order") and the *Revised Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related Relief* [ECF No. 498] (the "Claims Procedures Order").  The Sufficiency Hearing will commence on **August 24, 2023 at 11:00 (Eastern Time)** (the "Hearing Date"), and will be conducted through zoom for government.  Pursuant to the Claims Procedures Order, the Debtors reserve the right to adjourn the Hearing in their sole discretion on further notice.  Claims Procedures Order at 3.[3]

**PLEASE TAKE FURTHER NOTICE** that parties wishing to register for the Zoom hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances.  After the deadline to make appearances passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances.  Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so by calling the following muted, listen-only number: 1-929-205-6099, Access Code: 92353761344#.

**PLEASE TAKE FURTHER NOTICE** that any objections or responses ("Responses"), if any, to the Objection or the relief requested therein shall be made in writing, filed with the Court no later than **August 9, 2023, at 4:00 P.M (Prevailing Eastern Time)** (the "Response Deadline") and served as required by the Case Management Order and Claims Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that if no Responses are timely filed and served with respect to the Objection, the Debtors may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit R to the Objection, which order the Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Objection can be viewed and/or obtained by:  (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, located at One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165, at https://restructuring.ra.kroll.com/genesis or by calling +1 212-257-5450.

**PLEASE TAKE FURTHER NOTICE** that the Sufficiency Hearing may affect your rights.  Please read the Objection carefully and if you have one available, discuss it with your attorney.  (If you do not have an attorney, you should consider consulting with one.)

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Objection, or if you want the Court to hear your position on the Objection, then you or your

---

[3]     To the extent that the Court determines it cannot resolve the Objection, in part or in full, at the Sufficiency Hearing, the Debtors will file a Notice of Merits Hearing where, among other things, the Debtors will seek admission of the Declaration attached herein as Exhibit E.

attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Objection and may enter orders granting the relief requested by the Debtors.

Dated:  July 19, 2023
        New York, New York

*/s/ Luke A. Barefoot*
Sean A. O'Neal
Luke A. Barefoot
Rishi N. Zutshi
Jane VanLare
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**Hearing Date: August 24, 2023**, at 11:00 a.m. ET
**Objection Deadline:  August 9, 2023**, at 4:00 p.m. ET

Sean A. O'Neal
Luke A. Barefoot
Rishi N. Zutshi
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219) ("Holdco"); Genesis Global Capital, LLC (8564) ("GGC"); and Genesis Asia Pacific Pte. Ltd. (2164R) ("GAP").  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

# TABLE OF CONTENTS

**Page**

Procedural Background.................................................................................................... 1

   A. Procedural History ................................................................................................ 1

   B. Debtors' Corporate Structure and Business........................................................ 4

   C. Bar Date, Schedules and Notice.......................................................................... 5

   D. The Claims Resolution Process ........................................................................... 5

   E. The Automatic Stay ............................................................................................. 6

   F. 3AC Commences BVI Liquidation and Chapter 15 Proceedings........................ 7

   G. The Claims ........................................................................................................... 8

Jurisdiction...................................................................................................................... 9

Relief Requested ............................................................................................................. 9

Objection To Sufficiency of Disputed Claims................................................................ 9

3AC's Claims Lack Any Evidentiary Basis And Fail On The Merits ........................... 18

Factual Background ...................................................................................................... 19

   A. The Lending Relationship Among 3AC, GAP And GGC. ................................. 19

   B. 3AC Defaults And Genesis Exercises Remedies............................................... 20

   C. DCG Assumes GAP's 3AC-Related Liability. ................................................... 21

   D. Relevant Master Loan Agreement Provisions. .................................................. 22

   E. The Underlying Transactions.............................................................................. 24

Argument ...................................................................................................................... 29

    i. The MLAs constitute authenticated security agreements and granted Genesis a
     valid security interest in the assets at issue............................................... 31

    ii. The parties' written communications constitute "Loan Term Sheets" under the
     MLAs. ......................................................................................................... 35

    iii. The parties' written communications constitute authenticated security agreements
     that granted Genesis a valid security interest in the assets. ...................... 38

Responses to the Objection........................................................................................... 48

Replies to Responses..................................................................................................... 50

Adjournment of Hearing ............................................................................................... 50

Reservation of Rights.................................................................................................... 50

Notice............................................................................................................................ 51

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Bus. Sols., Inc.*,
    341 B.R. 415 (Bankr. S.D.N.Y. 2003) ...................................................................48

*Am. Smelting & Ref. Co. v. United States*,
    259 U.S. 75 (1922) ..................................................................................................37

*AMF Inc. v. Algo Distribs., Ltd.*,
    369 N.Y.S.2d 460 (2d Dep't 1975) .........................................................................15

*In re Ampal-Am. Israel Corp.*,
    562 B.R. 601 ...........................................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................11, 13, 19

*In re Avaya, Inc.*,
    608 B.R. 366 (Bankr. S.D.N.Y. 2019) ...................................................................10

*In re Bernard L. Madoff Inv. Secs. LLC*,
    474 B.R. 76 (Bankr. S.D.N.Y. 2012) .......................................................................7

*Bocre Leasing Corp. v. Gen. Motors Corp.*,
    84 N.Y.2d 685 (1995) .............................................................................................42

*Broadway Warehouse Co. v. Buffalo Barn Bd., LLC*,
    39 N.Y.S.3d 555 (4th Dep't 2016) ..........................................................................41

*Caring Pro., Inc. v. Catholic Health Care Sys. d/b/a Archcare*,
    No. 656248/2016, 2017 WL 5725516 (N.Y. Sup. Ct. Nov. 22, 2017) ...................42

*Certainteed Corp. v. Celotex Corp.*,
    2005 WL 217032 (Del. Ch. Jan. 24, 2005) .............................................................47

*In re CIL Ltd.*,
    582 B.R. 46 (Bankr. S.D.N.Y. 2018) .......................................................................17

*Colavito v. New York Organ Donor Network, Inc.*,
    8 N.Y.3d 43 (2006) .................................................................................................14

*Deutsche Bank Tr. Co. v. Am. Gen. Life Ins. Co.*,
    2016 WL 5719783 (S.D.N.Y. Sept. 30, 2016) ........................................................39

*In re DJK Residential LLC*,
    416 B.R. 100 (Bankr. S.D.N.Y. 2009) ...................................................................................10

*In re Enron Creditors Recovery Corp.*,
    376 B.R. 442 (Bankr. S.D.N.Y. 2007) ...................................................................................48

*Kiobel v. Royal Dutch Petrol. Co.*,
    621 F.3d 111 (2d Cir.2010) ....................................................................................................11

*Komolov v. Segal*,
    144 A.D.3d 487 (2016) ...........................................................................................................14

*Kuroda v. SPJS Holdings, LLC*,
    971 A.2d 872 (Del. Ch. 2009) ................................................................................................42

*Lebanon Cnty. Employees' Ret. Fund v. Collis*,
    287 A.3d 1160 (Del. Ch. 2022) ..............................................................................................47

*In re Lyondell Chem. Co.*,
    542 F. App'x 41 (2d Cir. 2013) .............................................................................................12

*Morse v. Rescap Borrower Claims Tr.*,
    No. 1:14-cv-5800-GHW, 2015 WL 353931 (S.D.N.Y. Jan. 26, 2015), *aff'd
    sub nom. In re Residential Cap.*, LLC, 628 F. App'x 63 (2d Cir. 2016) ................................10

*In re Nuttall Equip. Co., Inc.*,
    188 B.R. 732 (Bankr. W.D.N.Y. 1995) ..................................................................................48

*LB on behalf of PB v. Hines*,
    2019 WL 3066427 (S.D.N.Y. July 12, 2019) .........................................................................47

*Off. Comm. of Unsecured Creditors v. Mfrs. & Traders Tr. Co. (In re The Bennett
    Funding Grp., Inc.)*,
    212 B.R. 206 (2d Cir. B.A.P. 1997), *aff'd* 146 F.3d 136 (2d Cir. 1998) ...............................46

*Prospect Funding Holdings, LLC v. Paiz*,
    183 A.D.3d 486, 124 N.Y.S.3d 685 (1st Dep't 2020) ............................................................42

*In re Quantum Foods, LLC*,
    554 B.R. 729 (Bankr. D. Del. 2016) .......................................................................................48

*In re RCS Cap. Dev.*,
    2013 WL 3618550 (9th Cir. B.A.P. 2013) ..............................................................................46

*In re Residential Cap., LLC*,
    518 B.R. 720 (Bankr. S.D.N.Y. 2014) ...................................................................................10

*In re Residential Cap., LLC*,
    No. 12-12020 (MG), 2015 WL 2229234 (Bankr. S.D.N.Y. May 8, 2015)
    .......................................................................................................................12, 14, 15, 17

*In re Roman Cath. Diocese of Rockville Ctr.*,
    No. 20-12345, 2023 WL 3158940 (Bankr. S.D.N.Y. May 1, 2023) ......................................10

*In re Sharp Int'l Corp.*,
    403 F.3d 43 (2d Cir. 2005)...................................................................................................18

*Smith v. Onyx Oil & Chem. Co.*,
    218 F.2d 104 (3d Cir. 1955)..................................................................................................37

*Stone & Paper Invs., LLC v. Blanch*,
    No. CV 2018-0394-PAF, 2020 WL 3496694 (Del. Ch. June 29, 2020) ................................14

*Vaughn v. Air Line Pilots Ass'n, Int'l*,
    604 F.3d 703 (2d Cir.2010)........................................................................................11, 13, 19

*In re Westchester Structures, Inc.*,
    181 B.R. 730 (Bankr. S.D.N.Y. 1995)..............................................................................46, 47

*In re Women First Healthcare, Inc.*,
    345 B.R. 131 (Bankr. D. Del. 2006) ......................................................................................47

**Statutes**

6 Del. C. 1305 ...................................................................................................................18

11 U.S.C. § 502(b)(1) ...................................................................................................1, 2, 9

11 U.S.C. § 558 ...........................................................................................................46, 47

11 U.S.C. § 1521(a)(7) ......................................................................................................17

28 U.S.C. § 157 ............................................................................................................1, 9

28 U.S.C. § 157(b)(2) ....................................................................................................1, 9

28 U.S.C. § 1334 ..........................................................................................................1, 9

28 U.S.C. § 1408 ..........................................................................................................2, 9

28 U.S.C. § 1409 ..........................................................................................................2, 9

N.Y. Debt. & Cred. Law § 274(b) .....................................................................................18

N.Y. UCC § 9-102(74).......................................................................................................39

UCC § 1-204 ........................................................................................................................31

UCC § 9-102(a)(7) ..........................................................................................................33, 40

UCC § 9-102(a)(70) ............................................................................................................40

UCC § 9-102(a)(74) ............................................................................................................33

UCC § 9-108(a) ...................................................................................................................40

UCC § 9-108(b) ...................................................................................................................40

UCC § 9-109(a)(1) ..............................................................................................................31

UCC § 9-203(b) ...................................................................................................................31

**Other Authorities**

Bankruptcy Code Section 105 ...............................................................................................9

Bankruptcy Code Section 502 ...............................................................................................9

Bankruptcy Rule 1015(b) .......................................................................................................1

Bankruptcy Rule 3007 .......................................................................................................9, 1

Bankruptcy Rule 7012(b) .......................................................................................................6

**DEBTORS' FIRST OMNIBUS OBJECTION
(SUBSTANTIVE) TO CLAIM NOS. 523, 526 AND 527 PURSUANT TO
11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)**

The above-captioned debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors" or the "Company") hereby submit this objection (the "Objection") to Claim Nos. 523, 526, and 527 (as defined herein), pursuant to section 502(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and seek entry of an order, substantially in the form attached hereto as Exhibit R (the "Proposed Order"), disallowing and expunging Claim Nos. 523, 526, and 527 (as defined herein). In support of this Objection, the Debtors respectfully state as follows:

**Procedural Background**

**A.      Procedural History**

1.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date"). The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [ECF No. 37]. No trustee or examiner has been appointed in the Chapter 11 Cases. On February 3, 2023, an official committee of unsecured creditors (the "Committee") was appointed in these cases [ECF No. 55].

2.      On January 20, 2023, the Debtors filed the *Debtors' Joint Chapter 11 Plan* [ECF No. 20] (the "Plan"). In the months following the Petition Date and filing the Plan, the Debtors and their advisors have engaged in extensive negotiations with various advisors to creditor groups and Digital Currency Group, Inc. ("DCG") to explore strategic solutions. On February 10, 2023, the Debtors filed the *Restructuring Term Sheet* [ECF No. 80], which reflected a non-binding agreement in principle among the Debtors, DCG, Gemini Trust Company LLC ("Gemini"), and

1

certain members of an ad hoc group of creditors of GGC holding over $1.5 billion in claims (the "Ad Hoc Group").

3.      On March 31, 2023, the Debtors launched their marketing and sales process, led by the Debtors' investment banker, Moelis & Company LLC ("Moelis"), to garner competitive bids from qualified bidders on an efficient timeline.  On March 31, 2023, the Court entered the *Order Authorizing the Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, and (III) Granting Related Relief* [ECF No. 192].  The deadline for submitting bids is July 26, 2023.  *Notice of Fifth Amended Sale Schedule* [ECF No. 515].

4.      After unsuccessful attempts at reaching a resolution of certain issues involving potential claims against DCG that had the support of the Committee, on May 5, 2023, the Court granted the Debtors' request for mediation of certain Plan-related issues with DCG, the Committee, the Ad Hoc Group and Gemini Trust Company LLC (collectively, the "Mediation Parties"), with an initial period running until May 31, 2023.  *See Order Appointing Mediator* [ECF No. 279] (the "Mediation Order").  While further Court approval was unnecessary to extend the mediation period pursuant to paragraph 2 of the Mediation Order, the Debtors submitted a proposed order extending the initial mediation period until June 16, which was granted by the Court on the record over objections by certain parties-in-interest, including Three Arrows Capital Ltd ("3AC"), at a hearing held on June 5, 2023.  On June 16, 2023, the Mediation Parties further extended the mediation period to June 23, 2023.  *See Notice of Extension of Mediation Period* [ECF No. 436].  On June 23, 2023, the Mediation Parties further extended the mediation period to June 30, 2023.  *See Notice of Further Extension of Mediation Period* [ECF No. 453].  On June 30, 2023, the Mediation Parties further extended the mediation period to July 5, 2023.  *See Notice of*

*Further Extension of Mediation Period* [ECF No. 473]. On July 5, 2023, the Mediation Parties further extended the mediation period to July 10, 2023. *See Notice of Further Extension of Mediation Period* [ECF No. 480]. On July 13, 2023, at the Debtors' request, the Bankruptcy Court extended the mediation period over the objection of Gemini, to July 27, 2023. *See Order Further Extending Mediation Period* [ECF No. 517]. The parties are continuing their settlement discussions.

5.       On June 13, 2023, the Debtors filed the *Debtors' Amended Joint Chapter 11 Plan* (the "Amended Plan") [ECF No. 427]. The Amended Plan is the product of extensive and ongoing negotiation with the Committee and the Ad Hoc Group, incorporates a structure that is supported by the Committee and the Ad Hoc Group and provides a path towards resolution of these Chapter 11 Cases. While the Mediation Parties are continuing to work towards a global settlement, the Debtors are proceeding in parallel to expeditiously seek confirmation of their Amended Plan, which they believe will be in the best interest of the Debtors, their estates and all stakeholders.

6.       Accordingly, on June 7, 2023, the Debtors filed the Notice of Hearings on (I) the Adequacy of the Information in the Debtors' Disclosure Statement and (II) Confirmation of the Debtors' Chapter 11 Plan [ECF No. 401] to give all parties-in-interest notice of the deadline to object to the adequacy of the Debtors' Disclosure Statement and the Debtor's proposed date for a hearing to confirm the Plan. The hearing on the Debtors' Disclosure Statement is scheduled for Thursday, July 27, 2023 [ECF No. 501].

7.       3AC has represented that it holds claims against the Debtors greater than $1 billion, *see Objection of the Foreign Representatives of Three Arrows Capital, Ltd. (In Liquidation) to the Proposed Mediation Extension Order* [ECF No. 391]. Given the size of 3AC's claims, it is imperative to have a prompt hearing on the Debtors' Objection in light of the Debtors'

3

confirmation schedule.  Creditors need to understand their recoveries under the Amended Plan and ensure appropriate distributions are made promptly pursuant to the Amended Plan without the need for potential claims requesting extensive reserves on account of 3AC's specious and barebones claims.  Moreover, this Objection rests in large part on applying settled law, as the Debtors do not believe there to be significant, if any, factual disputes between the parties, making final resolution of the claim on the merits through this Objection the most appropriate path forward.

## B.  Debtors' Corporate Structure and Business

8.  Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors engaged in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engage in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and directly and wholly owned by DCG, the Debtors' ultimate parent.  *See Decl. of A. Derar Islim in Support of First Day Mot. and Appl. in Compliance with Local Rule 1007-2 at ¶ 7 [ECF No. 17]*.  Holdco exists only as a holding company with no business operations or assets aside from its ownership in the Debtors and the Non-Debtor Subsidiaries.  *See Disclosure Statement with Respect to the Am. Joint Plan of Genesis Global Holdco, LLC et al. Under Chapter 11 of the Bankruptcy Code* at Section IV.B [ECF No. 429].  Accordingly, Holdco did not maintain any contractual or business relationships with third-party counterparties, including 3AC.  *Decl. of A. Derar Islim in Support of Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007(No Liability)* ("Islim Decl.") at ¶ 8.  Nor does 3AC's proof of claim against Holdco allege any facts, circumstances or basis to independently support any claim against Holdco.

4

9.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Disclosure Statement with Respect to the Am. Joint Plan of Genesis Global Holdco, LLC et al. Under Chapter 11 of the Bankruptcy Code* [ECF No. 429].

## C.      Bar Date, Schedules and Notice

10.      On March 21, 2023, the Debtors filed their Schedules of Assets and Liabilities [ECF Nos. 145, 146, and 147] and Statements of Financial Affairs [ECF Nos. 142, 143, and 144] (the "Statements"), along with the schedule and statements of the remaining Debtors (collectively, the "Schedules" and "Statements," respectively).

11.      On April 4, 2023, the Court entered the *Order (I) Establishing Bar Dates for Submitting Proofs of Claim, (II) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (III) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (IV) Providing Certain Suppl. Relief* (the "Bar Date Order") [ECF No. 200].  Pursuant to the Bar Date Order, the Court set May 22, 2023 at 4:00 pm, Eastern Time (the "General Bar Date") as the deadline for each person or entity, not including governmental units as defined in section 101(27) of the Bankruptcy Code, to file its proofs of claim in the Chapter 11 Cases.

## D.      The Claims Resolution Process

12.      In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

13.      The Debtors' claims agent, Kroll Restructuring Administration LLC (the "Claims Agent"), has prepared and maintains a register (the "Claims Register") of proofs of claim (collectively, the "Proofs of Claim") that were filed in these Chapter 11 Cases asserting claims against the Debtors.  As of July 19, 2023, the Claims Register consisted of 900 separate Proofs of

Claim and 667 Scheduled Claims.  The Debtors and their advisors are comprehensively reviewing and reconciling all claims, including both the claims listed on the Schedules (the "Scheduled Claims") and the claims asserted in the Proofs of Claim (including any supporting documentation) filed in these cases.  The Debtors also are comparing the claims asserted in the Proofs of Claims with their Books and Records to determine the validity of the asserted claims.  Validating and resolving claims that are unsupported by the Debtors' Books and Records is a high priority for the Debtors at this stage in the proceedings.   In light of the confirmation process, Debtors are focused on right-sizing the claims pool both in anticipation of solicitation of votes on the Amended Plan and the Debtors' ability to timely and appropriately make distributions at the earliest possible date to all deserving holders of allowed claims.

14.    This reconciliation process includes identifying particular claims that may be targeted for disallowance.  To reduce the number of claims and to avoid possible double recovery or otherwise improper recovery by the claimant subject to this Objection (the "Claimant"), the Debtors will continue to file objections to claims that should not be allowed.

15.    In aid of the claims resolution process, the Court has entered the Claims Procedures Order.  Among other things, the Claims Procedures Order authorizes the filing and prosecution of claims on an omnibus basis and contemplates that, absent specific notice from the Debtors to the contrary, the initial hearing on a claims objection will be a Sufficiency Hearing at which the Court will determine whether the relevant Claim should be dismissed pursuant to Bankruptcy Rule 7012(b).  Claims Procedures Order ¶¶ 2(a), 2(b).

E.    **The Automatic Stay**

16.    Immediately upon the filing of the Debtors' bankruptcy petitions, Section 362 of the Bankruptcy Code imposed an automatic stay (the "Automatic Stay").  The Automatic Stay precludes the commencement or continuation of any judicial, administrative or other action or

proceeding against the Debtors that could have been commenced before the commencement of the

case under this title, as well as efforts to recover a claim against the Debtors that arose before the

commencement of the Chapter 11 Cases.  The Automatic Stay applies to any action affecting the

Debtors' estates anywhere in the world.  *See In re Bernard L. Madoff Inv. Secs. LLC*, 474 B.R. 76

(Bankr. S.D.N.Y. 2012).

17.     On January 26, 2023, the same day the Debtors filed for bankruptcy, the Debtors

filed the *Debtors' Mot. for an Order Authorizing Debtors to Operate Their Businesses in the

Ordinary Course and Ordering Implementation of the Automatic Stay* [ECF No. 13], restating the

Automatic Stay.  The Court entered the order on January 26, 2023 [ECF No. 40].

**F.     3AC Commences BVI Liquidation and Chapter 15 Proceedings.**

18.     On June 27, 2022, 3AC commenced a liquidation proceeding (the "<u>BVI</u>

<u>Proceeding</u>") before the Eastern Caribbean Supreme Court in the High Court of Justice,

Commercial Division, Virgin Islands (the "<u>BVI Court</u>").  *Verified Pet. Under Chapter 15 For

Recognition of a Foreign Main Proceeding and Related Relief* at ¶ 1, *In re Three Arrows Capital,

Ltd*, Case No. 22-10920, Dkt. No. 2.  On June 29, 2022, Messrs. Russell Crumpler and Christopher

Farmer were appointed as joint liquidators of 3AC (the "<u>Joint Liquidators</u>").  *Id.*

19.     On July 1, 2022, 3AC commenced a chapter 15 proceeding ("<u>3AC's Chapter 15</u>

<u>Proceeding</u>") in the U.S. Bankruptcy Court for the Southern District of New York, captioned *In re

Three Arrows Capital, Ltd*, Case No. 22-10920 (MAG).  *Id.*[1]

---

[1]     Genesis understands that 3AC is currently seeking sanction from the BVI Court to commence a chapter 11
proceeding in the U.S. Bankruptcy Court for the Southern District of New York.  As discussed *infra*, even if the Joint
Liquidators were given sanction to commence such a proceeding, the Debtors do not believe that this proceeding will
give rise to any colorable claims, including, without limitation, under Section 547 of the Bankruptcy Code.  However,
the Debtors reserve all rights, including, without limitation, to amend or supplement this objection, including without
limitation should 3AC purport to commence chapter 11 proceedings.

G.    **The Claims**[2]

20.    On or about May 22, 2023, 3AC filed substantively identical proofs of claim numbered 523, 526 and 527 against Holdco, GGC and GAP, respectively ("3AC PoCs"). *See* Exs. A, B, C. Without any significant factual detail concerning the relevant transactions or the required factual elements of any of their purported claims, the 3AC PoCs assert claims (the "Claims"), "under BVI, New York, Delaware, and other [unspecified] applicable law, including without limitation claims in the nature of preference, conversion, and other avoidance actions, arising from the following":

a)    Interest payments by 3AC to GAP totaling $18 million between June 2 and June 3, 2022 (the "Interest Payment");

b)    A loan repayment by 3AC to GAP on May 6, 2022 in the amount of 115,000,000 USDC (the "Loan Repayment");

c)    GAP's foreclosure on: (i) 13,172,000 GBTC; (ii) approximately 17,500 ETH; and (iii) approximately 33,350 BTC (collectively, the "Foreclosure Assets");

d)    Liens granted to GAP on the Foreclosure Assets, as well as on certain AVAX and NEAR tokens (the "Liens," and, together with the Interest Payment, Loan Repayment and Foreclosure Assets, the "PoC Assets"); and

---

2    This Objection focuses on Genesis's understanding of the claims referenced in the 3AC PoCs. As set forth herein, the 3AC PoCs' allegations are so threadbare that they do not meet the pleading standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure. Simultaneously herewith, the Debtors have served requests for admission on 3AC in an effort to confirm their understanding that there are no genuine factual disputes with respect to the relevant transactions between the parties. However, Genesis reserves all rights with respect to any other arguments or defenses to the claims addressed herein (including, without limitation, equitable subordination or disallowance, *in pari delicto* and other doctrines relating to 3AC's role in the circumstances that led to the commencement of these Chapter 11 cases), as well as with respect to any other potential claims arising from the 3AC PoCs. Genesis intends to raise further arguments as necessary should 3AC properly plead sufficient facts that so require supplemental submissions.

e)    3AC's investments and relationship with the Grayscale Bitcoin Trust and the Grayscale Ethereum Trust (and/or other Grayscale trusts) (the "Grayscale Assets"). *Id* at ¶ 6.

## Jurisdiction

21.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are Bankruptcy Code sections 105 and 502 and Bankruptcy Rule 3007.

## Relief Requested

22.    For the reasons set forth below, the Debtors object to the Claims.  By this Objection, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit R, disallowing and expunging the Claims.

## Objection To Sufficiency of Disputed Claims

23.    Section 502(b)(1) of the Bankruptcy Code provides that a claim shall not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).  When asserting a proof of claim against a bankruptcy estate, a claimant must allege facts that, if true, would support a finding that a debtor is legally liable to a claimant.  *See In re Avaya, Inc.*, 608 B.R. 366, 369-70 (Bankr. S.D.N.Y. 2019).  Where a claimant alleges sufficient facts to support a claim, that claim is afforded *prima facie* validity.  *See id.*  A party wishing to dispute such claim must produce evidence in sufficient force to negate that claim's *prima facie* validity.  *Id.*  Once an objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence.  *Id.*  The burden of persuasion is always on the claimant.  *Id.*

24.     As a preliminary matter, the 3AC PoCs do not allege sufficient facts to support a finding that the Debtors are legally liable under any cognizable law. *See In re Avaya*, 608 B.R. at 369-70.  Under established caselaw of this Circuit, as memorialized in the Claims Procedures Order, federal pleading standards equivalent to the standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim apply when assessing the validity of a proof of claim. *See, e.g., In re Residential Cap., LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure.") (citations omitted); *Morse v. Rescap Borrower Claims Tr.*, No. 1:14-cv-5800-GHW, 2015 WL 353931, at *4 (S.D.N.Y. Jan. 26, 2015), *aff'd sub nom. In re Residential Cap.*, LLC, 628 F. App'x 63 (2d Cir. 2016) (upholding the bankruptcy court's application of the federal pleading standards to a proof of claim); *In re Roman Cath. Diocese of Rockville Ctr.*, No. 20-12345, 2023 WL 3158940, at *5 (Bankr. S.D.N.Y. May 1, 2023) (holding that applying the 12(b)(6) motion to dismiss standard "is consistent with authorities in this Circuit stating that where a party objects to a claim as facially defective, the analysis of the claim is guided by the familiar standards applicable to a motion to dismiss.") (internal citations and quotations marks omitted).

25.     Thus, to have pleaded valid claims, 3AC must have alleged "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir.2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted).  Plausibility requires "more than a sheer possibility

that a defendant has acted unlawfully." *Id.* (internal citation and quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g., id.* at 677-78; *Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111, 124 (2d Cir.2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

26.     As described herein, the 3AC PoCs do not come close to meeting the Rule 12(b)(6) standard. 3AC has pled almost no particularized facts, let alone any facts that would give rise to an "inference that the [Debtors are] liable for" anything. Indeed, all 3AC asserts is that it is owed amounts "under BVI, New York, Delaware, and other applicable law" for all amounts arising from alleged transactions and relationships that in many cases are devoid of any factual detail such as the governing transactional agreements between the parties, the terms of those agreements, or required factual elements of their purported (and unidentified) causes of action. *See* Exs. A, B, and C at ¶ 6. These bald assertions are precisely the type of conclusory allegations devoid of any factual basis that fail the plausibility standard under Rule 12(b)(6).[3] *See In re Residential Cap.,*

---

[3]     Like the other assertions in the 3AC PoCs, 3AC's contention that its claims are entitled to priority status under section 507(a)(2) lacks any support. Ex. A, B, C at 4. "Section 507(a)(2) of the Bankruptcy Code gives first priority to administrative expenses, which include "the actual, necessary costs and expenses of preserving the estate including . . . commissions for services rendered after the commencement of the case." *In re Lyondell Chem. Co.*, 542 F. App'x 41, 43 (2d Cir. 2013). The 3AC PoCs describe alleged prepetition claims and therefore are not administrative expenses. Moreover, the claims as asserted are not within the bounds of any conceivable priority with which the Debtors are familiar.

*LLC*, No. 12-12020 (MG), 2015 WL 2229234, at *9 (Bankr. S.D.N.Y. May 8, 2015) (sustaining objection to claim that did "not make any factual allegations regarding" key elements of the asserted claim). The Debtors therefore request that the Court disallow and expunge the Claims for failure to meet even the most minimal pleading standards.

### A.      No Claims Lie Against Holdco.

27.      Here, the Debtors are not substantively consolidated, and none of 3AC's claims lie against Holdco. Holdco did not maintain contractual or business relationships with third parties, including 3AC.[4] Indeed, the fact that 3AC's Proof of Claim against Holdco is substantively identical to its Proofs of Claim against the other Debtors speaks volumes: 3AC makes no allegations concerning specific transactions with Holdco (nor could it) because there are none. The 3AC PoCs do not allege otherwise, and 3AC's claims against Holdco should be disallowed and expunged.

### B.      3AC Fails To Allege Any Claim With Respect To The Grayscale Assets.

28.      The 3AC PoCs do not articulate claims with respect to any Grayscale Assets.[5] The 3AC PoCs purport to assert claims arising from "3AC's investments and relationship with the Grayscale Bitcoin Trust and the Grayscale Ethereum Trust (and/or other Grayscale trusts)," but they contain no indication whatsoever as to how this may relate to Debtors. *See* Exs. A, B, and C at ¶ 6(e). The PoCs on this front are so threadbare that they fail to articulate what relationship 3AC had with non-Debtors the Grayscale Bitcoin Trust or the Grayscale Ethereum Trust, much less what role, if any, any of the Debtors had with respect to 3AC's purported relationship to the non-Debtors. The 3AC PoCs further fail to plead any conduct of the Debtors with respect to these

---

[4]      For the reasons stated herein, no claims lie against any Genesis entity. To the extent the Court is inclined to deny this Objection, however, Genesis reserves the right to make further arguments as to whether these claims lie against GAP, GCC, neither or both. *See infra* at ¶ 110.

[5]      Genesis reserves the right to respond to any further claims should they be properly articulated.

trusts, when such conduct may have occurred, or what conceivable causes of action 3AC would

allege as a result of such conduct.  The Debtors are left to speculate about the basic nature of any

claims relating to the Grayscale trusts or the factual allegations that 3AC would assert in support

thereof.  Accordingly, 3AC's alleged claims with respect to the Grayscale Assets should be

disallowed and expunged.  *See Vaughn*, 604 F.3d at 709 ("To survive a motion to dismiss, a

complaint must set out only enough facts to state a claim for relief that is plausible on its face.");

*Iqbal*, 556 U.S. at 679 ("A pleading that offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do.").

## C.    3AC's Purported Conversion Claims Under BVI And State Law Should Be Disallowed For Failure To State A Claim.

29.    3AC purports to bring claims under "BVI, New York, Delaware, and other

applicable law . . . in the nature of . . . conversion."  *See* Exs. A, B, and C at ¶ 6.  3AC alleges no

facts to support any conversion claims, and any such claims should be disallowed.

30.    Assuming that a conversion claim with respect to the assets at issue here could be

brought under BVI law,[6] 3AC would have to plead and prove that: (1) GAP's or GGC's "conduct

was inconsistent with the rights of the owner (or other person entitled to possession);" (2) "the

conduct was deliberate, not accidental;" and (3) "the conduct was so extensive an encroachment

on the rights of the owner as to exclude him from use and possession of the goods."  Parker Decl.

(as defined below) at ¶ 31.

31.    A claim for conversion under New York law has similar requirements.  Under New

York law, a conversion occurs where "someone, intentionally and without authority, assumes or

exercises control over personal property belonging to someone else, interfering with that person's

---

[6]    A conversion action under BVI law "only protects property rights in respect of chattels."  Parker Decl. (as defined below) at ¶ 32.  BVI law is currently unsettled as to whether a plaintiff can bring a claim of conversion with respect to digital assets.  Parker Decl. (as defined below) at ¶ 33.

right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50,

(2006). Under New York law, courts typically consider two "key elements" of conversion: "(1)

plaintiff's possessory right or interest in the property and (2) defendant's dominion over the

property or interference with it, in derogation of plaintiff's rights." *Komolov v. Segal*, 144 A.D.3d

487, 488 (2016). The elements of a conversion claim under Delaware law are substantially

similar.[7]

32.     The 3AC PoCs do not allege any facts that would support the elements for a claim

for conversion under BVI law, New York law, or Delaware law. The Joint Liquidators simply

assert that they have conversion claims arising from the PoC Assets, making no effort to allege

facts that would explain how Genesis improperly converted the PoC Assets, let alone the nature

of 3AC's supposed possessory right or interest in such assets. Nor do the 3AC PoCs allege any

actions the Debtors took in derogation of 3AC's rights with respect to such assets. The only

relevant factual allegations the 3AC PoCs include are that the Debtors have a possessory interest

in the large majority of the PoC Assets. *See* Exs. A, B, and C at ¶ 6(c) (stating the Foreclosure

Assets (as defined in the 3AC PoCs) "were purportedly pledged to GAP in connection with the

GAP Loan Arrangements"); *see also* Parker Decl. at ¶ 4. But those factual allegations that the

PoC makes in respect of the alleged Assets negate—rather than support—a potential conversion

claim. *See AMF Inc. v. Algo Distribs., Ltd.*, 369 N.Y.S.2d 460, 464 (2d Dep't 1975) ("The crucial

---

[7]     The Joint Liquidators generally assert claims under "BVI, New York, Delaware, and other applicable law,"
without indicating under what law they believe any conversion claim may arise. For this Objection, the Debtors have
submitted the Declaration of Christopher Parker (the "Parker Decl.") with respect to the requirements of BVI law, and
have otherwise used New York law for illustrative purposes, but in the event the Liquidators subsequently attempt to
argue for the application of Delaware law, the elements of a Delaware law conversion claim are substantially similar.
*See, e.g.*, *Stone & Paper Invs., LLC v. Blanch*, No. CV 2018-0394-PAF, 2020 WL 3496694, at *10 (Del. Ch. June 29,
2020) ("Generally, the necessary elements for a conversion under Delaware law are that a plaintiff had a property
interest in the converted goods; that the plaintiff had a right to possession of the goods; and that the plaintiff sustained
damages."). To the extent 3AC purports to bring conversion claims under "other applicable law," 3AC does not state
what this law may be, and any purported conversion claims under "other applicable law" should therefore be
disallowed. *See In re Residential Cap.*, 2015 WL 2229234, at *9.

issue here is whether the plaintiff had an immediate right to possession of specific moneys.  We believe that the express terms of the security agreement created such a right.").  The Liquidators have thus not pled any of the elements of a conversion claim and these claims should be disallowed under Rule 12(b)(6).  *See In re Residential Cap.*, 2015 WL 2229234, at *9.

### D.    3AC's Purported Preference Claims Under BVI Law Should Be Disallowed For Failure To State A Claim.

33.    3AC also purports to bring claims under BVI law "in the nature of preference." Exs. A, B, and C at ¶ 6.  3AC alleges no facts to support any BVI law preference claims, and any such claims should be disallowed.

34.    "Unfair preference" claims under BVI law are governed by s245 of the BVI Insolvency Act 2003.  Parker Decl. at ¶ 8.  In order to plead and prove an unfair preference under BVI law, 3AC must show that the transaction (1) is an "insolvency transaction,"[8] (2) is entered into "within the vulnerability period,"[9] and (3) "has the effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he would have been in if the transaction had not been entered into."  Parker Decl. at ¶ 8.  BVI law further provides that a transaction is not an unfair preference if it took place in the ordinary course of business.  Parker Decl. at ¶ 11.

35.    Under BVI law, absent a showing that Genesis is a "connected person" under BVI law with respect to 3AC, the burden is on 3AC to plead and show both that the transaction was an insolvency transaction and that the transaction did not take place in the ordinary course of business.

---

[8]    "A transaction is an insolvency transaction if (a) it is entered into at a time when the company is insolvent; or (b) it causes the company to become insolvent."  Parker Decl. at ¶ 9.

[9]    The vulnerability period "means, (a) (i) in the case of a transaction entered into with, or a preference given to, a connected person, the period commencing 2 years prior to the onset of insolvency and ending on the appointment of … the liquidator; and (ii) in the case of a transaction entered into with, or a preference to, any other person, the period commencing six months to the onset of insolvency and ending on the appointment of the liquidator."  Parker Decl. at ¶ 10.

Parker Decl. at ¶ 14.  In this way, unlike relevant law under Section 547, it is an affirmative element of the Joint Liquidators' case to plead and prove facts to show that the transactions were not in the ordinary course of business.  The 3AC PoCs do not allege that Genesis was a "connected person," nor could they.  *See* Parker Decl. at ¶ 26 (detailing definition of a "connected person"). Accordingly, unlike under US law, under BVI preference law it is <u>3AC's</u> burden to plead and show facts to support the position that any given transaction (1) is an insolvency transaction, and (2) did not take place in the ordinary course of business.  *See* Parker Decl. at ¶ 26.

36.    The 3AC PoCs do not allege a single fact concerning when 3AC became insolvent under BVI law.  They do not allege any facts concerning 3AC's balance sheet, capital position, liabilities, ability to pay debts as they came due, or any other relevant facts concerning their alleged insolvency at any time during the parties' relationship.  Indeed, they do not even assert the bare legal conclusion that 3AC was insolvent at any of the relevant times, as is plainly required under BVI law.  Nor do the 3AC PoCs allege a single fact regarding whether any of the transactions at issue were or were not in the ordinary course of business under BVI law.  They do nothing to allege facts as to why any of the challenged transactions diverged from the parties' course of dealing, how they allegedly diverged from the parties' course of dealing, or why Genesis should have known as much.  3AC has thus clearly not pled the relevant facts or legal conclusions under BVI law, much less met any burden of proof, and its preference claims under BVI law should therefore be disallowed for these reasons alone.  *See In re Residential Cap.*, 2015 WL 2229234, at *9.

**E.    The Joint Liquidators Cannot Bring Any Preference Actions Under US Law.**

37.    The Joint Liquidators have no preference claims under section 547 of the Bankruptcy Code.  The Joint Liquidators are foreign debtors, who have sought and received recognition under chapter 15 of the Bankruptcy Code.  *Order Granting Recognition of Foreign*

*Main Proceeding and Related Relief, In re Three Arrows Capital, Ltd*, Case No. 22-10920, ECF

No. 47.  Accordingly, pursuant to section 1521(a)(7) of the Bankruptcy Code, the Joint Liquidators

are affirmatively barred by the plain text of the Bankruptcy Code from seeking or obtaining any

relief under section 547.[10]  11 U.S.C. § 1521(a)(7) ("Upon recognition of a foreign proceeding,

whether main or nonmain . . . the court may, at the request of the foreign representative, grant any

appropriate relief, including granting any additional relief that may be available to a trustee, **except**

**for relief available under sections** 522, 544, 545, **547**, 548, 550, and 724(a)." (emphasis added)).

38.     To the extent the Joint Liquidators attempt to bring a preference claim under New

York or Delaware law, no such claims exist as a matter of law.[11]  For example, New York law

provides only a limited circumstance for asserting a preference claim, including that the transfer

was made to an insider.  *See* N.Y. Debt. & Cred. Law § 274(b) ("A transfer made by a debtor is

voidable as to a creditor whose claim arose before the transfer was made if the transfer was made

to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had

reasonable cause to believe that the debtor was insolvent.").  The Joint Liquidators do not and

cannot argue that the Debtors are insiders of 3AC.  *See also In re Sharp Int'l Corp.*, 403 F.3d 43,

---

[10]     The Debtors understand that the Joint Liquidators are considering filing a chapter 11 petition to pursue preference claims under US law.  This, however, does not affect the Joint Liquidators' inability to bring a preference claim under Section 547 of the Bankruptcy Code.  Even if the Joint Liquidators were to file a chapter 11 petition, their claims would fail for at least three independent reasons.  First, neither Section 547 nor Section 544 applies extraterritorially.  *See, e.g., In re Ampal-Am. Israel Corp.*, 562 B.R. 601, 612 (Bankr. S.D.N.Y. 2017; *In re CIL Ltd.*, 582 B.R. 46, 97 (Bankr. S.D.N.Y. 2018), *am. on reconsideration*, No. 13-11272-JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018).  Second, none of the transfers at issue will have taken place within 90 days of any potential future chapter 11 filing, meaning there can be no basis for a preference action with respect to transactions with the Debtors.  Section 547(b)(4)(A).  Third, all of the transfers here are protected by safe harbors under Sections 546(e) and 546(g) of the Bankruptcy Code.  The Debtors reserve all of their rights and defenses, including without limitation to amend or supplement this Objection to the extent the Joint Liquidators attempt or purport to take further actions in furtherance of commencing a chapter 11 case.

[11]     The Joint Liquidators state they are asserting "claims under BVI, New York, Delaware, and other applicable law."  *See* Exs. A, B, and C at ¶ 6.  To the extent this purports to force the Debtors to speculate as to the basis for their claim, such a broad category cannot satisfy even a notice pleading standard, as the Debtors are not aware of any other source of law under which the Joint Liquidators can purportedly assert a claim.  In any event, the Debtors believe that other potentially applicable state law does not materially differ from that of New York or Delaware as to the limited availability of preference actions for non-chapter 11 debtors.

54 (2d Cir. 2005) (explaining that mere preference between creditors does not give rise to a cause of action, except "where the transferee is an officer, director, or major shareholder of the transferor").  Other jurisdictions—including Delaware—follow a similar rule.  *See, e.g.,* 6 Del. C. 1305 ("A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent").

39.     As such, any purported preference actions fail against the Debtors as there is no statutory (or other) basis for the Joint Liquidators to assert such claims.  Even if the Joint Liquidators are successful in obtaining sanction in the BVI Court to commence chapter 11 proceedings and amended the 3AC PoCs to sufficiently plead their US law preference claims, for the reasons noted elsewhere in this Objection, any such purported preference actions would still fail.

**F.     3AC's Remaining Claims Fail.**

40.     Even construing 3AC's PoCs in the most favorable light possible, 3AC's remaining claims fail.  In addition to claims addressed herein, the 3AC PoCs also purport to state claims under "other applicable law," as well as claims for "other avoidance actions," but, to the extent that these differ from the claims addressed above in this Objection, the 3AC PoCs do not state what they are.  In any event, none of these claims are sufficiently pled so as to make out a *prima facie* case.  *See Vaughn*, 604 F.3d at 709; *Iqbal*, 556 U.S. at 679.

**<u>3AC's Claims Lack Any Evidentiary Basis And Fail On The Merits</u>**

41.     To the extent the Court is unwilling or unable to fully dispose of 3AC's purported claims solely based on the legal insufficiency of the 3AC PoCs, the facts underlying the parties' lending relationship and the origin of the PoC Assets are detailed below.  These facts show that,

even if 3AC could adequately plead conversion or BVI law preference claims, those claims are unsupported by the facts and/or give rise to obvious legal defenses. Moreover, even if those claims somehow succeeded, 3AC could not obtain affirmative recovery because any recovery would be set off under New York law and applied against the larger remaining outstanding amounts that 3AC owes the Debtors following its default.[12]

## **Factual Background**

### A.     **The Lending Relationship Among 3AC, GAP And GGC.**

42.     Beginning in 2019, GGC, GAP (together with GGC, "<u>Genesis</u>") and 3AC entered into various agreements that set out the terms of their lending relationship. Islim Decl. at ¶ 4. In January 2019, GGC entered into a Master Loan Agreement and related pledge agreements with 3AC. *See* Ex. G (Master Loan Agreement between GGC and 3AC dated Jan. 10, 2019). In January 2020, GAP entered into a Master Loan Agreement and a related pledge agreement with 3AC (together with the 2019 agreements, the "<u>MLAs</u>"). *See* Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020).

43.     In July 2020, GGC assigned all of its rights and obligations under the 2019 MLA and related pledge agreements to GAP. *See* Ex. I (Assignment and Assumption Agreement dated July 20, 2020).

44.     Pursuant to these agreements, GAP provided loans of USD and digital assets to 3AC. Islim Decl. at ¶ 5. At the time of 3AC's default, 3AC had outstanding obligations to GAP of approximately $2,363,105,165. Islim Decl. at ¶ 5. In return for the extension of loans, 3AC substantially simultaneously transferred (in the form of pledges and/or delivery) USD, digital

---

[12]     As noted above, to the extent that the Court need reach and consider factual matters concerning the transactions between 3AC and certain of the Debtors, the Debtors will notice a Merits Hearing pursuant to paragraph 2(b) of the Claims Procedures Order.

assets, or shares to GAP as collateral.  Islim Decl. at ¶ 5.  Pursuant to these agreements, GAP was

entitled to and did reuse this collateral in the ordinary course of its lending activities, including to

extend new loans or to pledge to another counterparty as collateral.  Islim Decl. at ¶ 5.  The parties

entered into hundreds of loans during the course of their relationship, and 3AC paid interest on

outstanding loans on a monthly basis.  Islim Decl. at ¶ 5.  While only described in cursory terms,

if at all, in the 3AC PoCs, to the extent the Court requires further factual detail concerning their

terms to expunge the PoC, the terms of the relevant transactions are described below.  *See infra* at

25-30.  3AC was one of Genesis's largest borrowers from 2020 to 2022, up until the time of its

collapse.  Islim Decl. at ¶ 5.

**B.    3AC Defaults And Genesis Exercises Remedies.**

45.    Under the terms of the MLAs, 3AC was required to post additional collateral if the

value of its posted collateral fell below certain agreed-upon thresholds.  Islim Decl. at ¶ 9.  On

June 12, 2022, GAP and GGC issued a margin call to 3AC for approximately $189 million, and

further updated margin call notices followed.  Ex. M.  After 3AC failed to meet the margin call,

Genesis issued a notice of default to 3AC on June 13, 2022, at 6:29 pm.  Ex. N.

46.    As set forth above, at the time of 3AC's default, 3AC owed GAP approximately

$2,363,105,165 (in USD and digital assets) under the MLAs and related agreements.  Islim Decl.

at ¶ 10.  As collateral for its outstanding loans, 3AC had transferred (in the form of pledges and/or

delivery) to GAP the following assets:  (1) 35,585,040 Grayscale Bitcoin Trust Shares ("GBTC");

(2) 33,348.03 Bitcoin ("BTC"); (3) 17,455.73 Ether ("ETH"); (4) 2,739,043.83 AVAX tokens;

and (5) 13,583,265 NEAR tokens.  Islim Decl. at ¶ 10.  The facts and circumstances around the

posting of this collateral are detailed further below.  *See infra* at 25-30.  As of June 23, 2022, the

total value of the GBTC, BTC and ETH collateral was approximately $1,164,807,844.92, and the

total value of the AVAX and NEAR collateral was approximately $93,105,701.40, in each case, based on the spot price of the relevant asset at that time. Islim Decl. at ¶ 10.

47.    By late June 2022, Genesis had exercised remedies against the GBTC, BTC and ETH collateral, which exercise reduced GAP's claim against 3AC to approximately $1,198,297,320. Islim Decl. at ¶ 11.

48.    As to the AVAX and NEAR collateral, Genesis lacks visibility and definitive information concerning the current status and disposition of such collateral. Islim Decl. at ¶ 12.

## C.    DCG Assumes GAP's 3AC-Related Liability.

49.    On June 30, 2022, GAP and DCG executed an Assignment & Assumption Agreement pursuant to which GAP assigned DCG all rights and obligations in relation to $1,100,000,000 of intercompany payables owed from GAP to GGC in connection with GGC's provision of working capital to GAP to finance the extension of loans to 3AC. *See* Ex. J (Assignment and Assumption Agreement between GAP and DCG, dated June 30, 2022).

50.    On July 14, 2022, GAP and DCG executed an Assignment and Assumption of Master Loan Agreement pursuant to which GAP assigned to DCG various interests, including relating to: (1) the Master Loan Agreement between GAP and 3AC dated January 10, 2019 (which had been assigned to GAP by GGC), and the Master Loan Agreement between GAP and 3AC dated January 24, 2020, both as amended, restated, supplemented or otherwise modified and in effect from time to time; (2) the Pledge Agreement between GAP and 3AC dated May 28, 2020, the Pledge Agreement between GAP and 3AC dated November 16, 2021, and the Pledge Agreement between GAP and 3AC January 27, 2022, all as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time (the "Pledge Agreements"); (3) related Collateral under the MLAs and Pledge Agreements; and (4) all of GAP's

outstanding loans with 3AC. [13]   *See* Ex. K (Assignment and Assumption of Master Loan Agreement between GAP and DCG dated July 14, 2022).   Pursuant to the same July 14, 2022 Assignment and Assumption Agreement, DCG assumed all obligations in connection with the foregoing interests. [14]   *See id.*

### D.   Relevant Master Loan Agreement Provisions.

51.   The MLAs between Genesis and 3AC,[15] which are substantially similar in their terms, including the terms relevant to this Objection, grant Genesis a security interest in all collateral transferred from 3AC to Genesis, by providing as follows:

> The Collateral transferred by Borrower to Lender, as adjusted herein, shall be security for Borrower's obligations in respect of such Loan and for any other obligations of Borrower to Lender hereunder. Borrower hereby pledges with, assigns to, and grants Lender a continuing first priority security interest in, and a lien upon, the Collateral, which shall attach upon the transfer of the Loaned Assets by Lender to Borrower and which shall cease upon the return of the Loaned Assets by Borrower to Lender.   In addition to the rights and remedies given to Lender hereunder, Lender shall have all the rights and remedies of a secured party under the UCC.

Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § IV(a)).

52.   The MLAs define "Collateral" as follows:

> Unless otherwise agreed by the parties, or modified in the Loan Term Sheet or as set forth [in the MLA] below, Borrower shall provide as collateral an amount of U.S. Dollars or Digital Currency (such choice at the sole discretion of the Lender) to be determined and agreed upon by the Borrower and Lender ("Collateral") and memorialized using the Loan Term Sheet.

---

[13]      The MLAs provide that "Lender may assign this Agreement or any rights or duties hereunder upon notice to Borrower." Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § XIX)

[14]      While Genesis is not presently seeking to implead DGC, pursuant to these terms, liability for 3AC's claims (if any) lies with DGC.  The Debtors reserve all rights and claims against DGC in connection therewith.  The Debtors understand that DCG may seek to dispute the Debtors' position that DCG is obligated to indemnify Genesis for any 3AC liabilities arising out of the 3AC PoCs as a result of the July 14, 2022 Assignment and Assumption Agreement.

[15]      Notably, no MLA existed between Holdco and 3AC.

Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § IV(a)).

53.     The MLAs provide that Collateral may change over the life of the loans.   For

example, the MLAs contemplate that 3AC could substitute certain assets for existing Collateral.

> Collateral shall always be valued in U.S. Dollars, but Borrower may,
> if mutually agreed by both parties, provide the Collateral (in whole
> or in part) to Lender in Digital Currency in an amount equal to the
> value of the Collateral in U.S. Dollars at a spot rate determined by
> Lender. . . . The Collateral transferred by Borrower to Lender, as
> adjusted herein, shall be security for Borrower's obligations in
> respect of such Loan and for any other obligations of Borrower to
> Lender hereunder.

Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § IV(a))

(emphasis added).

54.     In addition, the MLAs provide that Collateral could change as a result of margin

calls.

> Lender shall have the right to require Borrower to contribute
> additional Collateral so that the Collateral is at least the same
> percentage indicated in Section IV(a) relative to the value of the
> Loaned Assets (the "Additional Collateral").

Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § IV(a)).

55.     The MLAs also provide that 3AC could prepay loans in full or in part:

> For loans in which Borrower has a Prepayment Option (e.g. Open
> Loans, Term Loans with Prepayment Option, etc.), Borrower may
> notify Lender during Business Hours of Borrower's intent to return
> the Loan prior maturity or Lender's exercising of its Call Option
> without being subject to Early Termination Fees as set forth in
> Section III(d).   Borrower shall provide said notice at least two
> Business Days prior to the date on which the Borrower will repay
> all or a portion of the Loan Balance (said later date, the "Redelivery
> Day").   Borrower's exercising of its Prepayment Option shall
> not relieve it of any of its obligations herein, including without
> limitation its payment of owed Loan Fees and Late Fees.

> In the event of a Prepayment Option where the Borrower repays only
> a portion of the Loan Balance, Borrower shall repay said portion of

the Loan Balance on the Redelivery Day and the remaining portion of the Loan Balance on the earlier of the Maturity Date, Recall Delivery Day, or subsequent Redelivery Day.

Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § II(c)(iii)).

56.     The MLAs also provide for monthly interest payments from 3AC relating to outstanding loans, which could be payable pursuant to the relevant terms either in USD or in Digital Assets depending on the character of the assets loaned:

> Unless otherwise agreed, Borrower agrees to pay Lender a financing fee on each Loan (the "Loan Fee"). When a Loan is executed, the Borrower will be responsible to pay the Loan Fee as agreed to herein and annualized in the relevant Loan Term Sheet and subject to change if thereafter agreed by Borrower and Lender. Except as Borrower and Lender may otherwise agree, Loan Fees shall accrue from and include the date on which the Loaned Digital Currencies are transferred to Borrower to the date on which such Loaned Digital Currencies are repaid in their entirety to Lender. For any Loan, the minimum Loan Fee shall be the Loan Fee that would accrue for one day.
>
> Lender shall calculate any Loan Fees owed on a daily basis and provide Borrower with the calculation upon request. The Loan Fee will be calculated off all outstanding portions of the Loaned Digital Currencies. The Loan Fee is payable monthly by Borrower in arrears.

Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § III(a)).[16]

**E.    The Underlying Transactions.**

57.     3AC transferred the Interest Payment, Loan Repayment, and Foreclosure Assets to GAP, and granted the Liens to GAP, pursuant to the MLAs. Islim Decl. at ¶ 15.

58.     The Interest Payment was comprised of several payments from 3AC to GAP for interest accrued during the month of May 2022 on outstanding loans, Islim Decl. at ¶ 16:

---

[16]     While there are some minor differences between the provisions on interest payments between the two MLAs, they are materially the same for purposes of the arguments herein.

a) On June 2, 2022, 3AC paid GAP approximately 478,767.12 Tether ("USDT"), 4,149.54 Ethereum Classic ("ETC"), and 4,881.44 FTX Token ("FTT") as interest.

b) On June 3, 2022, 3AC paid GAP $15,358,034.15 and approximately 1,899,706.52 USDC as interest.

c) The approximate USD value of the USDT, ETC, FTT and USDC on the dates they were transferred to GAP, together with the $15,358,034.15, is slightly less than $18 million.

59.    The Loan Repayment was a payment from 3AC to GAP for the purpose of repaying several outstanding open term loans from GAP to 3AC in full or in part, Islim Decl. at ¶ 18:

a) The Loan Repayment fully repaid a loan for $38,804,954.17 provided by GAP to 3AC on January 11, 2022;

b) The Loan Repayment fully repaid a loan for $200,000,000 (of which $190,000,000 had previously been repaid) provided by GAP to 3AC on January 10, 2022; and

c) The Loan Repayment partially repaid 66,195,045.83 USDC of a loan for 225,000,000 USDC provided by GAP to 3AC on January 28, 2022.

60.    The Foreclosure Assets, which are approximately 33,348.03 BTC, 17,455.73 ETH and 13,172,000 GBTC, consist of Collateral that 3AC transferred to GAP in the course of the parties' lending relationship (and that GAP foreclosed upon following 3AC's default) as a result of the following three types of transfers:

a) **Contemporaneous exchange of value.**  As detailed below, 23,256.97 BTC was Collateral (as defined under the MLAs) transferred from January 10,

2022 to June 7, 2022 in connection with purchase price loans of USD of equal or greater value (*i.e.,* loans of USD that Genesis made to 3AC for the purpose of allowing 3AC to buy such BTC). Accordingly, this 23,256.97 BTC was transferred in connection with a contemporaneous exchange of value for loans extended by GAP to 3AC.

i.      Between January 10, 2022 and January 12, 2022, 3AC transferred 8,206.97 BTC to GAP as collateral in connection with three purchase price loans of USD of equal value extended by GAP to 3AC. These transactions and transfers are memorialized in contemporaneous electronic communications between the parties,[17] and some are also memorialized in executed Loan Term Sheets. Islim Decl. at ¶ 20(a); Ex. L (Telegrams).

ii.     On May 14, 2022, 3AC transferred 3,000 BTC to GAP as collateral in connection with a purchase price loan of USD of equal value extended by GAP to 3AC. This transaction and transfer is memorialized in contemporaneous electronic communications between the parties and an executed Loan Term Sheet. Islim Decl. at ¶ 20(a); Ex. L (Telegrams).

iii.    On May 17, 2022, 3AC transferred 5,000 BTC to GAP as collateral in connection with a purchase price loan of USD of equal value extended by GAP to 3AC. This transaction and transfer is

---

[17]    The main course of dealing between Genesis and 3AC for the lending relationship was via Telegram chat, and all of the transactions discussed herein are memorialized therein, in addition to in other sources. Islim Decl. at ¶ 14.

memorialized in contemporaneous electronic communications between the parties. Islim Decl. at ¶ 20(a); Ex. L (Telegrams).

iv.    On May 30, 2022, 3AC transferred 3,450 BTC to GAP as collateral in connection with a purchase price loan of USD of equal value extended by GAP to 3AC. This transaction and transfer is memorialized in electronic communications between the parties. Islim Decl. at ¶ 20(a); Ex. L (Telegrams).

v.    Between June 6, 2022 and June 7, 2022, 3AC transferred 3,600 BTC to GAP as collateral for purchase price loans of USD of equal value extended by GAP to 3AC. These transactions and transfers are memorialized in electronic communications between the parties. Islim Decl. at ¶ 20(a); Ex. L (Telegrams).

b)    **Collateral substitutions.**    9,131.06 BTC and 17,455.73 ETH were Collateral (as defined in the MLAs) transferred through collateral substitutions requested by 3AC:

i.    Between May 23, 2022 and June 7, 2022, at 3AC's request, 3AC transferred to GAP 9,131.06 BTC to substitute for other Collateral that 3AC had transferred to GAP. These transfers are memorialized in contemporaneous electronic communications between the parties. Islim Decl. at ¶ 20(b); Ex. L (Telegrams). Each transfer involved an

exchange of one digital asset for another of equal value.  *See* Ex. O
(Collateral Substitutions Summary Chart).

ii.  Similarly, on June 12, 2022, at 3AC's request, 3AC transferred to
GAP 17,455.73 ETH to substitute for other Collateral that 3AC had
transferred to GAP.  This transfer is memorialized in
contemporaneous electronic communications between the parties.
Islim Decl. at ¶ 20(b); Ex. L (Telegrams).  This transfer also
involved an exchange of one digital asset for another of equal value.
*See* Ex. O (Collateral Substitutions Summary Chart).

iii.  As further background, the original Collateral that was substituted
through these transfers was comprised of: (1) 71,375 ETH that 3AC
transferred to GAP on December 6, 2021 as collateral for a purchase
price loan of USD, which was therefore a transfer in connection with
a contemporaneous exchange of value for loans extended by GAP
to 3AC; and (2) 96,200,000 ALGO, 699,000 SOL, 300,000 AVAX
and 50,000 ETH, all of which 3AC transferred to GAP as Additional
Collateral in response to a May 9, 2022 margin call that GAP issued
to 3AC.  Islim Decl. at ¶ 20(b).

c)  **Margin calls.**  960 BTC and 13,172,000 GBTC was transferred as
Additional Collateral (as defined in the MLAs) pursuant to margin calls:

i.  On February 21, 2022 and February 23, 2022, 3AC transferred 610
BTC and 350 BTC, respectively, to GAP as Additional Collateral in
response to a margin call that GAP issued 3AC on February 20, 2022.

These transfers are memorialized in contemporaneous electronic communications between the parties. Islim Decl. at ¶ 20(c); Ex. L (Telegrams).

ii.  On May 11, 2022 and May 12, 2022, 3AC transferred 7,720,000 GBTC and 5,400,000 GBTC, respectively, to GAP as Additional Collateral in response to a margin call that GAP issued 3AC on May 9, 2022. These transfers are memorialized in contemporaneous electronic communications between the parties. Islim Decl. at ¶ 20(c); Ex. L (Telegrams).

61.    The AVAX and NEAR tokens also consist of collateral that 3AC pledged to GAP in the course of the parties' lending relationship. 3AC pledged 2,739,043.83 AVAX tokens and 13,583,265 NEAR tokens to GAP pursuant to a Pledge Agreement between the parties dated January 27, 2022. Decl. at ¶ 21. These tokens were pledged as collateral for a loan of 225,000,000 USDC from GAP to 3AC on January 28, 2022. Islim Decl. at ¶ 21.

<u>Argument</u>

**A.    Genesis Has A Valid Security Interest In All Of The PoC Assets.**

62.    3AC transferred all of the PoC Assets pursuant to the MLAs, which specify that they are "governed by, and shall be construed and enforced under, the laws of the State of New York without regard to any choice or conflict of law rules." *See* Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § XIII). Genesis understands that 3AC does not dispute (nor could it) that New York law governs the validity of security interests in the PoC Assets. This is true not only for claims asserted under US law, but also for purposes of a BVI law analysis. Parker Decl. at 28.

63.     The New York Uniform Commercial Code ("UCC") applies generally to security interests in personal property, which includes the PoC Assets.  *See* UCC § 9-109(a)(1).  A security interest in personal property becomes enforceable against the person creating the security interest under UCC Section 9-203(b) if: "(1) value has been given;[18] (2) the [pledgor] has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) . . . the [pledgor] has authenticated a security agreement that provides a description of the collateral . . . ."  UCC § 9-203(b).

64.     The first two requirements under UCC Section 9-203(b) are satisfied here, since there is no dispute that 3AC received value in the form of loans, and that it had rights in the PoC Assets as well as the power to transfer the PoC Assets as Collateral for loans from GAP.[19]  The only remaining question is whether there existed authenticated security agreements providing a description of the collateral.  The answer is yes.[20]

65.     *First*, Genesis had a valid security interest under New York law in the AVAX and NEAR tokens, as such assets were pledged pursuant to executed pledge agreements.  *See supra* at ¶ 61.

---

[18]     In this context, a person gives "value" under the UCC for rights that are acquired "in return for a binding commitment to extend credit or for the extension of immediately available credit whether or not drawn upon and whether or not a charge-back is provided for in the event of difficulties in collection[,] . . . as security for or in total or partial satisfaction of a preexisting claim[,] . . . by accepting delivery under a pre-existing contract for purchase [or] in return for any consideration sufficient to support a simple contract."  UCC § 1-204.

[19]     The MLAs also provide that "Borrower represents and warrants that it has, or will have at the time of transfer of any Collateral, the right to grant a first priority security interest in said Collateral subject to the terms and conditions hereof."  Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § VI(j)).

[20]     As an aside, as to the Interest Payment and Loan Repayment, as described above, the Interest Payment was due and owing as a result of 3AC's outstanding loans from GAP, as 3AC made monthly interest payments on its outstanding loans.  *See supra* at 26.  Similarly, the Loan Repayment was simply repayment of several outstanding loan obligations from 3AC in the course of the parties' lending relationship.  *See supra* at 26.

66.     *Second*, 3AC's pledge of 6,000 BTC of the Foreclosure Assets to GAP was memorialized in executed Loan Term Sheets (which, as discussed below, is sufficient to confer a valid security interest). *See supra* at ¶ 60.

67.     *Third*, Genesis had a valid security interest under New York law in the remainder of the Foreclosure Assets—specifically, 27,348.03 BTC, 17,455.73 ETH and 13,172,000 GBTC—for at least three independent reasons:[21] (1) the MLAs themselves constitute authenticated security agreements and granted Genesis a valid security interest in all Collateral provided by 3AC to Genesis pursuant to the MLAs; (2) the parties' written communications memorializing their lending activity and collateralization arrangements constitute "Loan Term Sheets" under the MLAs, and the MLAs make clear that assets described as collateral in Loan Term Sheets constitute Collateral for purposes of the MLAs; and (3) even if the parties' written communications do not constitute "Loan Term Sheets," those communications memorialize the parties' lending activity and collateralization arrangements and therefore constitute authenticated security agreements under New York law, thereby granting Genesis a valid security interest in all collateral provided by 3AC to Genesis pursuant to those agreements.

    i.   <u>The MLAs constitute authenticated security agreements and granted Genesis a valid security interest in the assets at issue.</u>

68.     The MLAs are authenticated security agreements under New York law, which granted Genesis a valid security interest in all Collateral that 3AC transferred to Genesis, including the Foreclosure Assets.

---

[21]     There are other ways to create a valid security interest under New York law and other arguments to support that Genesis had such an interest in these assets and the ability to apply such assets to 3AC's obligations, but the arguments detailed herein are dispositive.  However, should the Court be inclined not to grant the Objection, Genesis reserves all rights with respect to these other arguments.

69.     The UCC provides that a "security agreement" is "an agreement that creates or provides for a security interest." UCC § 9-102(a)(74).  It further provides that such an agreement is "authenticated" when it is signed, or when the parties, "with present intent to adopt or accept a record, [] attach to or logically associate with the record an electronic sound, symbol, or process." UCC § 9-102(a)(7).

70.     The MLAs, which were signed by the parties, explicitly granted Genesis a valid security interest in all Collateral transferred from 3AC to Genesis.  *See supra* at ¶ 51 (Citing Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § IV(a)].[22]   The MLAs broadly define "Collateral" to cover "an amount of U.S. Dollars or Digital Currency" transferred by 3AC to Genesis and agreed upon by the parties.  *See supra* at ¶ 52 (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 §IV(a)].  Since the assets at issue here are all "Digital Currency" as defined in the MLAs, they constitute Collateral.  *See* Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § I  ("'Digital Currency' means Bitcoin (BTC), Bitcoin Cash (BCH), Ether (ETH), Ether Classic (ETC), or Litecoin (LTC), or any digital currency that the Borrower and Lender agree upon.").

71.     Assets that were transferred through each of the three types of transactions outlined above constitute Collateral under the MLAs:

---

[22]     The MLAs also include an additional granting clause:

In the event that the purchase price of any replacement Digital Currency pursuant to [Lender's exercise of remedies] exceeds the amount of the Collateral, Borrower shall be liable to Lender for the amount of such excess together with interest thereon in the amount of 10% or as modified in the Term Sheet. As security for Borrower's obligation to pay such excess, Lender shall have, and Borrower hereby grants, a security interest in any property of Borrower then held by or for Lender and a right of setoff with respect to such property and any other amount payable by Lender to Borrower.

Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § IX(c))].

a)      Collateral transferred in connection with purchase price loans constitutes "Collateral" under the MLAs because it was transferred to GAP in connection with the parties' agreement that it secure the loan extended by Genesis to 3AC substantially simultaneously with the pledge of the Collateral.

b)      Collateral transferred pursuant to margin calls constitutes "Additional Collateral" under the MLAs, which provide that Collateral could change as a result of margin calls.

c)      Collateral transferred through collateral substitutions also constitutes "Collateral" under the MLAs, since the definition of "Collateral" contemplates that Collateral may be "as adjusted herein" (*see supra* at ¶ 51), including that the parties could agree to substitute one form of collateral for another at any time.[23]

72.      In addition, while the definition of "Collateral" contemplates that the parties *could* memorialize Collateral in Loan Term Sheets, the MLAs do not *require* the parties to do so. This is true for several reasons:

a)      *First,* the definition of Collateral appears before, not after, the memorialization language in the MLAs, meaning that whether assets are "Collateral" does not depend on whether they are memorialized in a Loan Term Sheet. *See supra* ¶ 52.

---

[23]      Substitution of collateral is a widespread market practice. *See, e.g.*, https://www.sifma.org/wp-content/uploads/2017/06/MSLA_Master-Securities-Loan-Agreement-2017-Version.pdf (SIFMA form MSLA Section 4.5, providing for substitution of collateral). Collateral substitutions are also common in the market for loans collateralized with digital currency assets. Islim Decl. at ¶ 20 n.4.

b)  *Second*, the MLAs contemplate that Collateral would change over the life of the loans without requiring a Loan Term Sheet. *See* Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § IV(a)). The definition of Collateral contemplates that the parties could agree to substitute one form of collateral for another at any time without a Loan Term Sheet. Since it is not contemplated in the MLAs that the parties would memorialize such a substitution in a Loan Term Sheet, a Loan Term Sheet is not a requirement for Collateral as a general matter.

c)  *Third,* the MLAs further provide that Genesis had the ability to make margin calls and to require 3AC to pledge "Additional Collateral" to satisfy those calls. *See* Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § IV(a)). "Additional Collateral," as defined in the MLAs, does not contemplate memorialization in a Loan Term Sheet. *See* Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § IV(c)). To the contrary, the MLAs contemplate that Genesis could require "Additional Collateral" in response to margin calls without creating new Loan Term Sheets. *See id.* Since "Additional Collateral" is defined by reference to "Collateral" and does not reference memorialization in Loan Term Sheets, "Collateral" cannot be reasonably understood to require memorialization in Loan Term Sheets.

d)  *Fourth*, this interpretation is consistent with market practice and the parties' course of dealing. The parties regularly agreed for assets to serve as collateral in connection with new loans, in response to margin calls, or in

connection with substitutions of collateral, often without executing Loan

Term Sheets. *See* Islim Decl. at ¶ 20 (description of the transactions).

73.     The record is therefore clear that the remainder of the Foreclosure Assets fall within

the broad definition of "Collateral" (and in some cases "Additional Collateral") under the MLAs

and that Genesis therefore had a valid security interest in these assets.

74.     Moreover, there is no logical explanation for why these assets were provided by

3AC to Genesis other than that they were to serve as collateral securing the loans to 3AC.  The

only contractual relationship that Genesis and 3AC had was a lending relationship whereby 3AC

would transfer collateral to Genesis in exchange for the extension of loans, as well as ancillary

collateral management services. *See* Islim Decl. at ¶ 6.  3AC did not have any custodial, gifting

or other type of relationship with Genesis that would explain why Genesis was in possession of

these assets.  Islim Decl. at ¶ 7.  Moreover, the parties' communications demonstrate that the

parties' sole intent was that these assets were transferred as Collateral by 3AC to Genesis pursuant

to the lending relationship. *See infra* at ¶ 78.

> ii.  The parties' written communications constitute "Loan Term Sheets" under
>      the MLAs.

75.     Even if a Loan Term Sheet were required under the MLAs, the parties' written

communications constitute "Loan Term Sheets" as defined in the MLAs.

76.     The MLAs define Loan Term Sheet to mean "the agreement between Lender and

Borrower on the particular terms of an individual Loan, which shall be memorialized in an

agreement as set forth in Exhibit B **or in a form approved by Lender comparable therewith**."

*See* Ex. H (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020 § I) (emphasis

added).

77.     3AC and GAP's ordinary course of dealing was to memorialize much of their lending activity and collateralization arrangements in written communications, rather than in the example form of Loan Term Sheet attached as exhibits to the MLAs.  *See supra* at ¶ 44.  The written communications between the parties contain the same substantive information included in the example form of Loan Term Sheet attached to the MLAs, including the names of the lender (Genesis) and borrower (3AC), borrowed asset type, amount of borrowed asset, borrow fee, and collateral.  *See generally* Ex. L.  The written communications are therefore agreements "comparable" in form to the example form of Loan Term Sheet and constitute Loan Term Sheets under the MLAs.  *See Am. Smelting & Ref. Co. v. United States*, 259 U.S. 75, 78 (1922) ("Of course the expressed contemplation of a more formal document did not prevent the letters from having the effect that otherwise they would have had."); *Smith v. Onyx Oil & Chem. Co.*, 218 F.2d 104, 108 (3d Cir. 1955) ("'The courts are quite agreed upon general principles.  The parties have power to contract as they please. They can bind themselves orally or by informal letters or telegrams if they like. . . . The matter is merely one of expressed intention.  If their expressions convince the court that they intended to be bound without a formal document, their contract is consummated, and the expected formal document will be nothing more than a memorial of that contract.'" (citing Corbin on Contracts, § 30 (1950))).

78.     Examples of these written communications are illustrative (emphasis added):

a)     For Collateral transferred in connection with purchase price loans:  On January 11, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "could u pls do **another $200mio btcusd buy** twap [time-weighted average price] over 72 hours?"  A Genesis employee responded, "**Confirming this will be adding to loan balance as well at same terms as yesterday?**"

Zhang responded, "**Yes confirmed.**"  After execution, Zhang messaged "**ok, will book to loan/collateral**." *See* Ex. Q ¶ 3(c).  This demonstrates an explicit agreement between the parties that the BTC that was purchased in connection with this loan would be transferred to Genesis as Collateral for that same loan extended by Genesis to 3AC substantially simultaneously with the pledge of the Collateral.

b)  For collateral substitutions:  On May 26, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "**hi team, just checking if we can swap out some ETH collateral with BTC?**" Zhang then requested to substitute "**20k ETH**" for "**1200 BTC back.**" *See* Ex. Q ¶ 5(f).  This demonstrates a substitution of collateral in the form of one digital asset for another of equal value. *See* Ex. O (Collateral Substitutions Summary Chart).

c)  For Collateral transferred pursuant to margin calls:  On February 20, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "hi team, sent you 1mio FTT for return & **610 BTC for margin top up via FBN [Fireblocks Network] . . . more will follow to cover the margin call** . . . most probably in BTC or GBTC, will let you know."  On February 23, 2022, Zhang messaged a Genesis employee, "**happy to top up the rest in BTC, does 350 BTC work?**" A Genesis employee responded, "**that works.**" *See* Ex. Q ¶ 4(a).

79.    The remaining transactions are memorialized in similar types of communications, which are all referenced in Exhibit Q.  Such written communications constitute Loan Term Sheets

pursuant to the MLAs, thereby evidencing Genesis's valid security interest in all Collateral provided by 3AC to GAP, including in the remainder of the Foreclosure Assets.

### iii. The parties' written communications constitute authenticated security agreements that granted Genesis a valid security interest in the assets.

80.    Finally, and independent of the arguments detailed above, the parties' written communications constitute authenticated security agreements under New York law, granting Genesis a valid security interest in the remainder of the Foreclosure Assets.[24]

81.    Under New York law, agreements are interpreted in accordance with standard contract principles, specifically, in accordance with the manifestation of the parties' intent. *See Deutsche Bank Tr. Co. v. Am. Gen. Life Ins. Co.*, 2016 WL 5719783, at *8 (S.D.N.Y. Sept. 30, 2016). Here, the types of written communications described above are written agreements that identify the parties to the transaction, the specified collateral and the parties' intent to use that collateral to secure obligations under the loans.

   a)    With respect to collateral for purchase price loans, the types of written communications discussed above indicate the parties' intent for 3AC to borrow assets (in these cases, USD), use those assets to purchase another asset and transfer the purchased asset to Genesis as collateral for the loan.

   b)    With respect to collateral transferred pursuant to margin calls, the communications discussed above make clear that 3AC specifically identified when it was sending assets to satisfy margin calls and thereby for such assets to constitute collateral for 3AC's obligations.

---

[24]    *See* N.Y. UCC § 9-102(74) (defining "security agreement" as "an agreement that creates or provides for a security interest.").

c) With respect to collateral substitutions, consistent with the parties' ordinary course of dealing, the context and the specific references to 3AC's collateral throughout the communications evidence the parties' intent that 3AC was to transfer the BTC and ETH to Genesis to continue to secure 3AC's obligations under the preexisting loans.

82.    The parties' written communications, *see supra* at ¶¶ 78-79, constitute "authenticated security agreements" under the UCC.  An authenticated security agreement under the UCC need not be reduced to a tangible written form; Article 9 only requires a "record" of a security agreement, which is defined as both paper documents and information "stored in an electronic or other medium" that is "retrievable in perceivable form."  *See* UCC § 9-102(a)(70). And, as noted above, authentication does not require a written signature, and is satisfied when the parties, "with present intent to adopt or accept a record, [] attach to or logically associate with the record an electronic sound, symbol, or process."  UCC § 9-102(a)(7).  The parties' written communications, which included unique usernames specifically attributable to individual employees of the parties, satisfy this standard.

83.    Finally, the written communications include a sufficient description of the collateral for purposes of the UCC.  UCC Article 9 provides that a "description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described." UCC § 9-108(a).  As discussed above, the written communications between the parties describe both the category and quantity of collateral that is being transferred by 3AC to Genesis, *supra* at ¶ 78, which are examples of reasonable identification under UCC § 9-108(b).  Moreover, the parties' written communications repeatedly make clear that these assets are collateral, which is the only

plausible reason 3AC would have provided Genesis with these assets. *Supra* at ¶ 74; Islim Decl. at 6.

84. Accordingly, Genesis had a valid security interest in all of the PoC Assets.

**B.     3AC's Purported Conversion Claims Under BVI And State Law Lack Any Evidentiary Basis And Fail On The Merits.**

85. Even if the conversion claims under BVI and state law were sufficiently pled (which they are not, as described above),[25] they would fail on the merits. As an initial matter, the Interest Payment and Loan Repayment are not subject to a claim of conversion under either BVI or state law because these assets were not provided as collateral and 3AC retained no rights in these assets. To the contrary, 3AC's own limited allegations indicate that 3AC freely provided them to GAP. *See* Exs. A, B, and C at ¶ 6. Neither the Liens, nor the underlying pledged assets, could plausibly be the subject of a conversion claim. In respect of the Foreclosure Assets, as discussed above, (i) Genesis had a valid security interest in all of these assets under New York law,[26] (ii) 3AC had transferred these assets (with the exception of the AVAX and NEAR tokens, which it had pledged) to GAP pursuant to the MLAs, and (iii) Genesis had no obligation to return this collateral to 3AC. *See Broadway Warehouse Co. v. Buffalo Barn Bd., LLC*, 39 N.Y.S.3d 555, 559 (4th Dep't 2016) (finding that "'plaintiff's rights would be superior to those of a buyer . . . who purchased [the secured assets] with actual knowledge of plaintiff's security interest'") (*citing Reisdorf Bros. v. Clinton Corn Processing Co.*, 130 A.D.2d 951, 951 (4th Dep't 1987)); Parker Decl. at 30 ("if the pledges or Liens were enforceable against Three Arrows under New York law

---

[25]     The legal standards for conversion claims under BVI and state law are detailed above. *See supra* ¶¶ 30-31.

[26]     As discussed above, BVI law dictates that the validity of Genesis's security interest in the PoC Assets is governed by the choice-of-law provision in the agreements covering them, which is New York law under the MLAs. *See* Parker Decl. at ¶ 28.

and were lawfully enforced against Three Arrows under that law, there can be no claim for conversion [under BVI law]").[27]

86.     Moreover, and independent of the above, 3AC cannot bring a conversion claim under New York (or Delaware) law in respect of the Foreclosure Assets or Liens because these claims arise out of the MLAs.  *See Bocre Leasing Corp. v. Gen. Motors Corp.*, 84 N.Y.2d 685, 687 (1995) ("Plaintiff thus has no cause of action in tort . . . for contractually based economic losses . . ."); *Prospect Funding Holdings, LLC v. Paiz*, 183 A.D.3d 486, 124 N.Y.S.3d 685 (1st Dep't 2020) (finding attorneys and law firm were not liable for conversion against holdings company where claim was predicated on breach of purchase agreement and alleged no independent facts sufficient to give rise to tort liability); *Caring Pro., Inc. v. Catholic Health Care Sys. d/b/a Archcare*, No. 656248/2016, 2017 WL 5725516, at *8 (N.Y. Sup. Ct. Nov. 22, 2017) ("[a] cause of action for conversion cannot be predicated on a mere breach of contract and the conversion claim here relies upon no facts other than those underlying the contract claim." (internal quotations omitted)).[28]

## C.     3AC's Purported Preference Claims Under BVI Law Lack Any Evidentiary Basis And Fail On The Merits.

87.     Even had 3AC sufficiently pled the required elements of their BVI law preference claim (which is not the case, as described above),[29] the claim would fail on the merits.

---

[27]     Similar to New York law, BVI law does not require that an asset be "registered with the BVI Registrar of Corporate Affairs" (similar to the US law concept of perfection) for a creditor's interest to be enforceable against a debtor.  *See* Parker Decl. at ¶ 29.

[28]     To the extent the Joint Liquidators allege conversion claims under Delaware law, Delaware law holds the same.  *See Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 889 (Del. Ch. 2009) ("Where, however, the plaintiff's claim arises solely from a breach of contract, the plaintiff generally must sue in contract, and not in tort.  Thus, in order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract.") (internal quotations omitted).

[29]     The legal standard for preference claims under BVI law is detailed above.  *See supra* ¶¶ 34-35.

88.     As to the Foreclosure Assets and Liens, any preference claims under BVI law fail for several reasons.

89.     *First*, under BVI law, a creditor is not required to perfect its security interest in collateral prior to exercising remedies.  Parker Decl. at ¶ 29.  All that is required is that a creditor have a valid security interest in the relevant assets.  Parker Decl. at ¶ 29.  3AC therefore has no preference claim under BVI law with respect to <u>any</u> of the Foreclosure Assets or Liens because, as discussed above, GAP had a valid security interest in all of these assets.

90.     *Second*, a substantial portion of the Foreclosure Assets and Liens were transferred (in the form of pledges and/or delivery) in connection with the contemporaneous exchange of value, specifically related to the extension of new loans to 3AC.  Under BVI law, the grant of security for contemporaneous exchange of value, including the extension of new loans, does not constitute a preference.  Parker Decl. at ¶ 20.  This applies to the AVAX and NEAR collateral, as well as to a substantial majority of the Foreclosure Assets.  *See* Ex. P (Defenses to Conversion and Preference Claims by Category of 3AC PoC Assets).

91.     *Third*, the collateral substitutions in particular do not independently constitute preferences under BVI law, because each one involved an exchange of one digital asset for another of equal value.   Parker Decl. at ¶ 20; *See* Ex. O (Collateral Substitutions Summary Chart).  Moreover, because the value of the collateral substituted in each case was exactly the same, the collateral substitutions cannot be preferences because Genesis remained in the exact same position as a creditor of 3AC in a hypothetical liquidation that it would have been absent the collateral substitutions.

42

92.    *Fourth*, all of the Foreclosure Assets, as well as the Interest Payment and Loan Repayment, were ordinary course transactions.  *See* Ex. P (Defenses to Conversion and Preference Claims by Category of 3AC PoC Assets).

93.    While there is limited caselaw under BVI law on the meaning of "ordinary course," the purpose of the doctrine is to "enable a company to continue to make payments to ordinary trade creditors so that they can continue to trade as a going concern."  Parker Decl. at ¶ 15.  A BVI court would also look to relevant caselaw in other Commonwealth jurisdictions that have examined the ordinary course defense.  Parker Decl. at ¶ 16.  The High Court of Australia has made reference to the statement that "[g]enuine payments made by the company to reduce a general debit as it stands from day to day and in order to maintain a genuine business relationship that promises advantages to both the company and its creditor are not preferences."  Parker Decl. at ¶ 19.  UK law holds that good faith on the part of the creditor should be considered.  *See* Parker Decl. at ¶ 18 ("Where the creditor receives a payment in good faith, it will almost invariably be the case that the company makes the payment as a normal part of its business or to protect its own interests [], not to favour the creditor to whom payment is made.").  GAP received the transfers (in the form of pledges and/or delivery) of <u>all</u> of the Foreclosure Assets and Liens in good faith and in connection with the parties' ongoing lending relationship.  Accordingly, all of the transactions underlying the Foreclosure Assets and Liens were ordinary course transactions, and 3AC has not met its burden to plead or prove otherwise.

94.    Similarly, the Interest Payment and Loan Repayment were provided by 3AC to Genesis in the ordinary course of business and are therefore not preferences under BVI law.  *See* Parker Decl. at ¶ 11.  As to the Interest Payment, 3AC paid interest on its outstanding loans on a monthly basis throughout the parties' lending relationship, and the Interest Payment was no

different.  Islim Decl. at ¶ 5.  Genesis received the Interest Payment in good faith, and nothing in the relevant communications between the parties indicates anything to the contrary.  As to the Loan Repayment, 3AC repaid open term loans provided by Genesis on a regular basis over the course of the parties' lending relationship, either of its own accord or to raise margin levels so Genesis would continue to extend new loans.  Islim Decl. at ¶ 19.  The Loan Repayment was an example of the latter.  Islim Decl. at ¶ 19.  Genesis received the Loan Repayment in good faith, and nothing in the relevant communications between the parties indicates anything to the contrary.

95.    *Fifth*, transfers of a substantial portion of the Foreclosure Assets, the granting of the Liens, and the Loan Repayment, have not even been pled, much less proven, to be insolvency transactions.  The stablecoins Terra LUNA and Terra USD collapsed in mid-May 2022, leading to the commencement of the BVI Proceedings.[30]  Any transaction that predated this collapse was likely not an insolvency transaction, and 3AC has not met its burden to plead or prove otherwise. *See* Ex. P (Defenses to Conversion and Preference Claims by Category of 3AC PoC Assets).[31]

**D.    3AC's Claims Are Subject To Setoff.**

96.    Finally, even assuming that 3AC could somehow recover on conversion or BVI law preference claims, any successful recovery under New York law would be subject to setoff under New York law and applied against the outstanding amounts that 3AC owes Genesis following its

---

[30]    *See* Jiageng Liu, Igor Makarov & Antoinette Schoar, Anatomy of a Run: The Terra Luna Crash 5 (Nat'l Bureau of Econ. Rsch., Working Paper No. 31160, 2023) ("In the period from May 7 to May 13, users swapped UST worth $4.65 billion. As users swapped UST for LUNA, the price of LUNA precipitously fell leading to increasing dilution which further depressed the price of LUNA, and led to a dramatic 'death spiral.'"); Scott Chipolina & Katie Martin, The week that shook crypto, Financial Times (May 13, 2022), https://www.ft.com/content/3e0a65bb-a953-433a-819e-ff29de847336 ("But this week, luna lost it all. Its value slid to zero after terraUSD, a sister token, collapsed in value, despite being designed to track the value of the US dollar.")

[31]    To the extent the Court is unwilling or unable to dismiss the portion of the claims concerning transfers that took place when 3AC was arguably solvent, the Debtors reserve all rights to file supplemental objections addressing this portion of the claims.

default.  Accordingly, even if the Claims were allowable (and they are not), the Debtors should not be required to establish a plan reserve for 3AC's asserted claims.[32]

97.     Section 558 of the Bankruptcy Code preserves for a debtor's estate "the benefit of any defense available to the debtor as against any entity other than the estate."  11 U.S.C. § 558. Courts have interpreted Section 558 to include setoff rights.  *See, e.g.*, *In re Westchester Structures, Inc.*, 181 B.R. 730, 739–40 (Bankr. S.D.N.Y. 1995) ("Section 558 of the Bankruptcy Code also preserves for the benefit of the estate any right to setoff the debtor may have.").  These setoff rights are determined under applicable state law.  *See Westchester Structures, Inc.*, 181 B.R. at 739; *In re RCS Cap. Dev.*, 2013 WL 3618550 at *8 (9th Cir. B.A.P. 2013) ("The Code preserves a debtor's right to effectuate a setoff under § 558, as it exists under state law.").  Here, the right to setoff arises from the MLAs, which provide that New York law governs the parties' relationships.  The Second Circuit has held that the right of setoff "occupies a favored position in our history of jurisprudence" and should be interfered with "only under the most compelling circumstances." *Off. Comm. of Unsecured Creditors v. Mfrs. & Traders Tr. Co. (In re The Bennett Funding Grp., Inc.)*, 212 B.R. 206, 212 (2d Cir. B.A.P. 1997), *aff'd* 146 F.3d 136 (2d Cir. 1998).

98.     "Under New York law, to offset debts, they must be mutual."  *In re Westchester Structures, Inc.*, 181 B.R. at 740 (citing *Beecher v. Petier A. Vogt Mfg.*, 227 N.Y. 468 (1920)). Here, all parties agree that, taking into account the Debtors' exercise of remedies against collateral, $1,198,297,320 is the approximate remaining prepetition amount owed by 3AC, the same entity that is seeking to recover under the Claims asserted in the Proofs of Claims.  *See supra* ¶¶ 47, 50.

---

[32]     Indeed, 3AC alleges in the 3AC PoCs that its claims are secured and subject to setoff.  Exs. A, B, C at 3-4. While the Debtors do not understand any conceivable basis for a valid secured claim other than potential setoff rights, at minimum, 3AC has conceded through the 3AC PoCs that the prerequisites to setoff are met in this case.

Thus, because the debts are mutual, any recovery on the Claims by 3AC would be subject to a setoff of up to $1,198,297,320.

99.     Because Genesis asserts setoff rights under Section 558 of the Bankruptcy Code, Genesis "does not have to establish that the debts between the parties are both prepetition as the bankruptcy creditor is required to do under 11 U.S.C. § 553." *In re Westchester Structures, Inc.*, 181 B.R. at 740 (citing *In re Papercraft Corp.*, 127 B.R. 346, 349–50 (Bankr. W.D. Pa. 1991)); *see also In re Women First Healthcare, Inc.*, 345 B.R. 131, 135 (Bankr. D. Del. 2006) ("Section 553 restricts setoff rights by permitting a creditor to set off only debts that both arose pre-petition. There is no such restrictive language in section 558 and, consequently, Courts have concluded that a debtor may set off pre-petition claims against post-petition obligations it owes.").

100.    However, even if Genesis were required to show that both claims arose prepetition (and it is not), that showing is easily made here. Any conversion claim alleged by 3AC arose upon the foreclosure by the Debtors on the Foreclosed Assets. *See LB on behalf of PB v. Hines*, 2019 WL 3066427, at *5 (S.D.N.Y. July 12, 2019) ("Under New York's broad definition of 'creditor,' one who has a right to maintain a tort action but has not recovered judgment at the time of the transfer is a creditor and 'it is now accepted that the relationship of debtor and creditor [in tort cases] arises the moment the cause of action accrues.") (citing *In re Bayou Grp., LLC*, 439 B.R. 284, 335 (S.D.N.Y. 2010)).[33] Because the foreclosures at issue occurred prior to the Debtors' Petition Date, any purported conversion claims are, by definition, prepetition claims.

101.    Similarly, to the extent 3AC has any valid preference claims that arose upon its commencement of its BVI Proceeding, those, too, arose pre-petition and are thus subject to the

---

[33]     In the event the Joint Liquidators argue Delaware law should apply, the same principle is true under Delaware law. *See Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005) ("For tort claims, the wrongful act is a tortious act causing injury, and the cause of action accrues at the time of injury."); *see also Lebanon Cnty. Employees' Ret. Fund v. Collis*, 287 A.3d 1160, 1196 (Del. Ch. 2022) (same).

Debtors' setoff rights.  Generally, a preference claim arises when an entity files for bankruptcy or liquidation proceedings.  *See e.g. In re Quantum Foods, LLC*, 554 B.R. 729, 735 (Bankr. D. Del. 2016) (explaining that "[a] preference action can only be initiated in the context of a bankruptcy case after the filing of a bankruptcy case[,]" and finding a preference claim to be a postpetition claim); *see also In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 466 (Bankr. S.D.N.Y. 2007) (finding that a preference claim "arises upon the filing of the bankruptcy case"); *In re Nuttall Equip. Co., Inc.*, 188 B.R. 732 (Bankr. W.D.N.Y. 1995) (finding that in the context of competing bankruptcy cases, preference cause of action accrued at time of filing of preference claimant's bankruptcy petition).  3AC's BVI law preference claims, therefore, arose the moment 3AC commenced its BVI Proceeding on June 27, 2022, or at latest when 3AC commenced its Chapter 15 proceeding on July 1, 2022.  *See supra* at ¶¶ 18-19; *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 429 (Bankr. S.D.N.Y. 2003) (finding, in context of setoff analysis, that preference claims asserted by one debtor against another were prepetition as to the debtor against whom they were asserted).  The Debtors filed these Chapter 11 Cases on January 19, 2023.  Therefore, as to the Debtors, and in these Chapter 11 Cases where 3AC has asserted its claims, the BVI law preference claims are by definition prepetition claims.

102.    Thus, because governing law provides that these prepetition claims may be set off against the prepetition amounts owed from 3AC to Genesis following 3AC's default, 3AC would not be entitled to any affirmative recovery under any confirmed plan even were it successful in pursuing its claims.[34]  Accordingly, the Debtors should not be required to establish a plan reserve to cover the asserted amounts of the claims.

---

[34]    Further, were there to be a judgment in favor of 3AC against the Debtors, the Debtors reserve all rights and defenses to seek contribution from DGC, which is an independent reason not to require a plan reserve for 3AC's claims.

**Responses to the Objection**

103.    To contest this Objection, the claimant must file and serve a written response to this

Objection (a "Response") so that it is received no later than **4:00 p.m. (prevailing Eastern Time)**

**on August 9** (the "Response Deadline").  Every Response must be filed electronically with the

Court on the docket of *In re Genesis Global Capital, LLC*, Case No. 23-100063 (the "Docket")

with two single-sided hard copies provided to:

> Chambers of Honorable Sean H. Lane
> United States Bankruptcy Court for the Southern District of New York
> 300 Quarropas Street
> White Plains, NY 10601

and served upon the following entities so that the Response is received no later than the Response

Deadline, at the following addresses:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York 10006
> Attn:  Sean A. O'Neal, Esq., Luke A. Barefoot, Esq., Jane VanLare, Esq.
> soneal@cgsh.com, lbarefoot@cgsh.com, jvanlare@cgsh.com
>
> -and-
>
> Genesis Global Capital, LLC
> 250 Park Avenue South, 5th Floor
> New York, NY 10003
> Attn: Arianna Pretto-Sakmann, Esq.
> arianna@genesistrading.com
>
> -and-
>
> White & Case LLP
> 1221 Avenue of the Americas
> New York, NY 10020
> Attn: Gregory Pesce, Esq. and Phil Abelson, Esq.
> gregory.pesce@whitecase.com, philip.abelson@whitecase.com
>
> -and-

> U.S. Dept. of Justice
> Office of the U.S. Trustee
> Alexander Hamilton U.S. Custom House
> One Bowling Green, Suite 515
> New York, NY 10004
> Attn: Greg Zipes, Esq.
> greg.zipes@usdoj.gov

104.    Every Response to this Objection must contain, at a minimum, the following information:

a)    A caption setting forth the name of the Court, the name of the Debtors, the case number and the title of this Objection;

b)    The name of the claimant, the claim number and a description of the basis for the amount of the claim;

c)    The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

d)    Any supporting documentation, to the extent that it was not included in the proof of claim previously filed with the clerk or claims agent, upon which the claimant intends to rely to support the basis for and amounts asserted in the proof of claim; and

e)    The name, address, email, telephone number and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the Claim or this Objection and who possesses authority to reconcile, settle or otherwise resolve the objection to the disputed claim on behalf of the claimant.

105.    If 3AC fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order disallowing the Claims, without further notice to 3AC or a hearing.

## Replies to Responses

106.    The Debtors may, at their option, file and serve a reply to any response so that it is received by the claimant (or claimant's counsel, if represented) no later than three days prior to the Hearing.

## Adjournment of Hearing

107.    The Debtors reserve the right to seek an adjournment of the Hearing on any Responses to this Objection.  In the event that the Debtors seek such an adjournment, it will be noted on the notice of agenda for the Hearing and such agenda will be served in accordance with the *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 44] ("Case Management Procedures").

## Reservation of Rights

108.    The Debtors expressly reserve the right to amend, modify or supplement this Objection.  Should the grounds of objection stated in this Objection be dismissed or overruled, the Debtors reserve the right to object to the Claims on any other grounds that the Debtors discover or elect to pursue, including, without limitation, equitable subordination or disallowance, *in pari delicto* and other doctrines relating to 3AC's role in the circumstances that led to the commencement of these Chapter 11 cases.  This Objection sets out certain substantive objections to the Claims.  The Debtors reserve their right to assert other substantive objections and/or one or more non-substantive objections to the Claims at a later time.

109.    Notwithstanding anything contained in this Objection or the attached exhibits, nothing herein shall be construed as a waiver of any rights that the Debtors may have to

(a) commence avoidance actions under the applicable sections of the Bankruptcy Code, including, but not limited to, sections 547 and 548 of the Bankruptcy Code, against the claimant subject to this Objection, (b) enforce the Debtors' rights of setoff against the claimant relating to such avoidance actions or (c) seek disallowance pursuant to Bankruptcy Code Section 502(d) of each of the claims of the claimant that are subject to such avoidance actions.

**Notice**

110.    Notice of this Objection has been given in accordance with the Case Management Procedures, including to 3AC.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached hereto as Exhibit R disallowing and expunging Claim Nos. 523, 526, and 527, and (ii) grant such other and further relief as is just and proper.

Dated:  July 19, 2023
      New York, New York

*/s/ Luke A. Barefoot*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**<u>EXHIBIT A</u>**

**<u>Proof of Claim No. 523</u>**

**<u>Redacted in Entirety</u>**

**<u>EXHIBIT B</u>**

**<u>Proof of Claim No. 526</u>**

**<u>Redacted in Entirety</u>**

## **<u>EXHIBIT C</u>**

**<u>Proof of Claim No. 527</u>**

**<u>Redacted in Entirety</u>**

**EXHIBIT D**

**BVI Law Declaration**

**Hearing Date: August 24, 2023**, at 11:00 a.m. ET
**Objection Deadline:  August 9, 2023**, at 4:00 p.m. ET

Sean A. O'Neal
Luke A. Barefoot
Rishi N. Zutshi
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DECLARATION OF CHRISTOPHER PARKER**
**PURSUANT TO FED. R. BANKR. P. 9017 IN SUPPORT OF DEBTORS'**
**FIRST OMNIBUS OBJECTION (SUBSTANTIVE) TO CLAIM NOS. 523, 526 AND 527**
**PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)**

I, Christopher Parker KC, make this declaration pursuant to 28 U.S.C. § 1746 and state as

follows:

---

[1]        The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219) ("Holdco"); Genesis Global Capital, LLC (8564) ("GGC"); and Genesis Asia Pacific Pte. Ltd. (2164R) ("GAP").  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

1

## Background

1. I am a barrister practising from Maitland Chambers, 7 Stone Buildings, Lincoln's Inn, London WC2A 3SZ. I am a King's Counsel ("KC"). I was called to the Bar of England and Wales in 1984 and the Bar of the British Virgin Islands ("BVI") in 2006. I became a Queen's Counsel ("QC") in 2008.

2. I have over 35 years' experience as a practitioner before the Courts of England and Wales. The principles of English common law and equity apply in the BVI (subject to modification by BVI statutes) pursuant to the Common Law (Declaration of Application) Act (Cap 13) and the West Indies Associated States Supreme Court (Virgin Islands) Act (Cap 80), respectively. The procedural rules applicable in the BVI, the Eastern Caribbean Supreme Court Civil Procedure Rules 2000 (as amended), are modelled on the current English Civil Procedure Rules.[2] I also have been instructed on many cases in the BVI of an international nature. I consider myself appropriately qualified to provide this Declaration.

3. I am authorized to submit this Declaration in support of the *Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Objection").

4. I understand that Three Arrows Capital Ltd. ("3AC") has filed three substantively identical proofs of claim (together, the "Proofs of Claim") against Holdco, GGC and GAP (collectively referred to as "Genesis" hereafter) asserting claims under paragraph 6 "*under BVI, New York, Delaware, and other applicable law, including without limitation claims in the nature of preference, conversion, and other avoidance actions, arising from the following*":

---

[2]     I am aware that the Eastern Caribbean Supreme Court Civil Procedure Rules, Revised Edition 2023 will come into effect in each of the Member States and Territories of the Eastern Caribbean Supreme Court on 31 July 2023. Nothing I say in this declaration will be affected by the introduction of the new rules.

a)  "*interest payments by Three Arrows to Genesis Asia Pacific Pte Ltd ('GAP') in the amount of $18 million between June 2 and June 3, 2022, in connection with certain loan arrangements entered into between GAP and Three Arrows prior to the initiation of the BVI Proceeding (the 'GAP Loan Arrangements')*" (the "Interest Payment");

b)  "*a loan repayment by Three Arrows to GAP on May 6 2022 in the amount of 115,000,000 USD Coin (USDC) in connection with the GAP Loan Arrangements*" (the "Loan Repayment");

c)  "*GAP's foreclosure[3] on various digital assets of Three Arrows, including without limitation (i) 13,172,000 Grayscale Bitcoin Trust shares (GBTC) and (ii) approximately 17,500 Ether tokens, and (iii) approximately 33,350 Bitcoin (collectively the 'Foreclosure Assets'), which Foreclosure Assets were purportedly pledged to GAP in connection with the GAP Loan Arrangements*" (the "Foreclosure Assets");

d)  "*liens purportedly granted to GAP on the Foreclosure Assets, as well as approximately 2,739,044 AVAX Tokens and approximately 13,583,265 NEAR Tokens, in connection with the GAP Loan Arrangements*" (the "Liens"); and

e)  "*Three Arrows's investments and relationship with the Grayscale Bitcoin Trust and the Grayscale Ethereum Trust (and/or other Grayscale trusts).*"

Objection, Exs. A, B, C (3AC Proofs of Claim).

---

[3]    I do not comment on the use of the word "foreclosure" in respect of assets said to be subject to "pledges" or "liens."

5.    I have also reviewed various Master Loan Agreements and related pledge agreements, as amended (collectively, the "<u>MLAs</u>") entered into between 3AC, GGC and GAP that set out the terms of their lending relationship.  <u>See</u> Objection, Exs. G, H.  I understand that 3AC provided the Interest Payment, Loan Repayment, Foreclosure Assets and Liens to GAP pursuant to these MLAs.

6.    The claims asserted in the Proofs of Claim are made in a vague and cursory manner, simply referring generally to claims "*in the nature of preference, conversion, and other avoidance actions*" (whilst at the same time asserting that the claims are secured by a lien on property, which assertion I simply do not understand).  Objection, Exs. A, B, C at para. 6.

7.    In endeavouring to understand the nature of the claims under BVI law that might be being referred to, I note that there is no allegation of dishonesty or bad faith being made against Genesis.  I also consider that there is little point in speculating as to what claims are being referred to by the wholly open-ended 6(e) (*i.e.,* claims related to Grayscale trusts), as there does not appear to be any BVI law claim articulated with respect to 6(e), much less any factual allegations concerning what conduct or involvement (if any) on the part of Genesis forms the basis for any such claim.  Objection, Exs. A, B, C at para. 6(e).

**<u>Unfair Preference</u>**

8.    A claim "in the nature of preference" is presumably a reference to a claim under s245 of the BVI Insolvency Act 2003.[4]  That section is in the following terms:

---

[4]    Fraudulent or wrongful preference was a judge-made principle: <u>see</u> <u>Lewis v Hyde</u> [1998] 1 WLR 94, 99 (PC). It is doubtful that in light of the statutory remedy it would be open to 3AC to bring a common law claim: <u>see</u> Bennion, Bailey and Norbury on Statutory Interpretation, 8th ed., para. 25.11.  Certainly, as a practical matter, the statutory remedy has replaced claims at common law: <u>see</u> <u>Skandinaviska Enskilda Banken AB v Conway</u> [2019] UKPC 36; [2020] AC 1111 at 61 and 64; <u>Re Stanford International Bank Ltd (in liquidation)</u> [2019] UKPC 45; [2020] 1 BCLC 446 at 22-23.  My observations below as to the limits of any preference claim, <u>see</u> <u>infra</u> para. 20, 24, with respect to the pledges and Liens would apply equally to any attempt to mount a common law preference claim.

*245.(1) Subject to subsection (2), a transaction entered into by a company is an unfair preference given by the company to a creditor if the transaction (a) is an insolvency transaction; (b) is entered into within the vulnerability period; and (c) has the effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he would have been in if the transaction had not been entered into.*

9.      An insolvency transaction is

 "*A transaction is an insolvency transaction if (a) it is entered into at a time when the company is insolvent; or (b) it causes the company to become insolvent*.": s244(2).

10.      The vulnerability period

*means, (a) (i) in the case of a transaction entered into with, or a preference given to, a connected person, the period commencing 2 years prior to the onset of insolvency and ending on the appointment of ... the liquidator; and (ii) in the case of a transaction entered into with, or a preference to, any other person, the period commencing six months prior to the onset of insolvency and ending on the appointment of the liquidator*: s244 (1).

11.      The wording of s245(1)(c) accords with s239(4)(b) of the UK Insolvency Act 1986. However, whilst s239(5) of the UK Insolvency Act 1986 stipulates that no order under s239 shall be made "*unless the company which gave the preference was influenced in deciding to give it by a desire to produce....the effect mentioned in subsection (4)(b)*," s245(2) of the BVI legislation provides that, "*(2) A transaction is not an unfair preference if the transaction took place in the ordinary course of business*."

12.      The BVI legislation thus mirrors s243(2)(a) of the UK legislation dealing with "*Unfair preferences (Scotland)*" by which "*a transaction in the ordinary course of trade or business*" cannot be challenged as an unfair preference.

13.    In the UK, the Cork Committee[5] examined the ordinary course defense in its 1982 Report,[6] and debated the merits of departing from the subjective test of an intention or desire to prefer and "*adopting a test similar to that adopted in Australia*,"[7] noting,

> *s122(2) of the [Australian Bankruptcy Act 1963] excludes any payment to a creditor who can prove that the payment was made in good faith and in the ordinary course of business; and section 122(4) of the Act provides that the payment should not be regarded as being made in good faith if the creditor who received the payment knew or had reason to suspect that the debtor was unable to pay his debts as they became due from his own money, and that the effect of the payment would be to give him a preference, priority or advantage over other creditors.*

14.    The UK legislation for preferences in England and Wales by said s239(5) is expressed as providing for an additional requirement to be met before a transaction can be challenged as a preference. In comparison, for unfair preferences in the BVI, s245(2) is expressed as an exception from what is otherwise an unfair preference. Under the Australian legislation, the burden of showing that the transaction was in the ordinary course of business was expressly placed upon the payee. The NZ legislation placed the burden on the payee to show that the transaction was not at a time when the company was unable to pay its debts or was in the ordinary course of business,[8] but only if it fell within "*the restricted period*," *i.e.*, a period of 6 months before the liquidation. It obviously followed that if the claim was based on the transaction having occurred within "*the specified period*" (*i.e.*, a period of 2 years before the liquidation) but outside "*the restricted period*," then the burden of showing that the transaction occurred at a time when the company was unable to pay its debts and otherwise than in the ordinary course of business was on the applicant. Similarly, it is clear from the language of s245(4), below—which, where the alleged

---

[5]    Appointed on 27 January 1977 "*to carry out a fundamental and exhaustive reappraisal of all aspects of the insolvency laws of England and Wales*" as stated in the introduction to their Report.

[6]    Insolvency Law and Practice, Report of the Review Committee, Cmnd. 8558.

[7]    Para. 1252.

[8]    New Zealand Companies Act 1955 s266(3).

6

preference concerns a connected person, places the burden on the creditor to prove the contrary—

that otherwise the burden of proof is on the liquidator to plead and ultimately to show not only that

the transaction was an insolvency transaction but also that the transaction did not take place in the

ordinary course of business:

> "*245(4) Where a transaction entered into by a company within the vulnerability period has the effect specified in subsection (1)(c) in respect of a creditor who is a connected person, unless the contrary is proved, it is presumed that the transaction was an insolvency transaction and that it did not take place in the ordinary course of business*" (emphasis added): s245(4).

15.    There is limited case law in the BVI courts interpreting the meaning of "ordinary

course" under s245(4).  In <u>Byers, McDonald and Pioneer Freight Futures Company Limited v</u>

<u>Chen Ningning</u> BVIHCVAP 2015/0011, 12 June, 2018 the Eastern Caribbean Court of Appeal

held that "*the repayment of a loan during a contractually obligated time does not necessarily

engage the conclusion that the repayment was in the ordinary course of business*": at 105.  That

was because "*the ordinary course of business defence is intended to enable a company to continue

to make payments to ordinary trade creditors so that they can continue to trade as a going concern.

However, once an insolvency process is inevitable, payments to ordinary creditors can no longer

be justified on the basis of continuity of trade*": at 103.  In that case there was no suggestion that

the inevitability of the insolvency process was not known by those causing the payment to be

made.

16.    Given the limited BVI caselaw interpreting the meaning of "ordinary course" under

s245(4), the  BVI Court would  derive persuasive guidance from relevant judgments in  other

Commonwealth jurisdictions that use "an ordinary course of business" test.

17.    Indeed, a BVI court would be bound[9] to follow the view of the Privy Council in
Countrywide Banking Corporation Ltd v Dean [1998] BCC 105,[10] a case on appeal from the Court
of Appeal of New Zealand, where the Privy Council highlighted the significance of a consideration
of past practice between the parties, general practices in the industry and an expectation of
continuing in business:

> *Their Lordships do not accept…that the test is general in the sense that it would be satisfied so long as it can be said that the transaction is one which might reasonably take place in some business setting…*

> *Plainly the transaction must be examined in the actual setting in which it took place. That defines the circumstances in which it is to be determined whether it was in the ordinary course of business. The determination then is to be made objectively by reference to the standard of what amounts to the ordinary course of business. As was said by Fisher J in the Modern Terrazzo Ltd case, the transaction must be such that it would be viewed by an objective observer as having taken place in the ordinary course of business. While there is to be reference to business practices in the commercial world in general, the focus must still be the ordinary operational activities of business as going concerns, not responses to abnormal financial difficulties. Their Lordships respectfully agree with the judge's conclusion by reference to the policy of the section ((1997) 8 NZCLC 261,478 at p.261,490):*

>> *Whether a payment should be regarded as commercially routine at a day to day trading and operating level will turn at least in part upon a comparison with the practices of the commercial community in general. But equally, the way in which the particular company has acted in the past, and its dealings with the particular creditor, would seem pertinent. That the payment was simply a repetition of past patterns of behaviour would make it more difficult to argue that it represented special assistance to an insider or the result of special enforcement measures or a situation in which the subject creditor ought to have investigated before extending credit. So at a policy level there is something to be said for the view that relevant consideration should extend to the prior practices of the particular company.*

---

[9]    The binding nature of Privy Council decisions was recently discussed by Jack J in Commercial Bank of Dubai v 18 Elvaston Place Ltd BVIHC(COM) 2020/0070 16 June 2020 and Briefline Assets Ltd v Nikolay Anatolyevich Falin BVIHC(COM) 2020/0223 15 February 2022.

[10]    *"The approach for ascertaining what constitutes the ordinary course of business is set out by the Privy Council in Countrywide Banking Corporation Ltd v Dean"*: Emmerson International Corporation v Vekselberg and others BVIHCM 2013/0160 29 October 2018 per Wallbank J at 71.

*The section therefore requires examination of the actual transaction in its factual setting (excluding the intent or purpose of the company save as required by subsection 4)[11]. Because the examination is undertaken objectively by reference to the standard of the ordinary course of business, there may be circumstances where a transaction, exceptional to a particular trader, will nonetheless be in the ordinary course of business – as for example its first transaction of a particular type. It may be that transactions undertaken in the past will, because of changed circumstances, no longer be considered as in the ordinary course of business. The payment of some accrued indebtedness may be within the ordinary course of business ……The particular circumstances will require assessment in each case*: at 113H-114E.

18.     Whilst the test is objective, good faith on the part of the creditor would surely be relevant to a consideration of whether the transaction has taken place in the ordinary course of business, even though, unlike the Australian legislation,[12] it is not mentioned as a requirement of the defence under BVI law separate from that of the transaction being in the ordinary course of business. As noted in Goode on Principles of Corporate Insolvency Law, 5th ed., para. 13-84:

*Where the creditor receives a payment in good faith, it will almost invariably be the case that the company makes the payment as a normal part of its business or to protect its own interests (for example, for the purpose of ensuring the continuance of supplies), not to favour the creditor to whom payment is made.*

19.     The importance of whether the alleged preference was directed to a continuation of trade has been considered in the Australian authorities, as recently discussed by the High Court of Australia in Bryant v Badenoch Integrated Logging Pty Ltd [2023] HCA 2. Reference was there made (at 51) to the statement in MacPherson, The Law of Company Liquidation, 3rd ed., at 319:

*Genuine payments made by the company to reduce a general debit as it stands from day to day and in order to maintain a genuine business relationship that promises advantages to*

---

[11]     The same case states, "*That intention did not cease to be relevant in all circumstances is apparent from subsection(4) which reintroduces it as a factor for consideration of the ordinary course of business exception where the person preferred knew of any intent or purpose of the debtor to prefer*": Countrywide Banking Corporation Ltd v Dean [1998] BCC 105, at 111C. It might be said that the NZ Act assumed that intention would be relevant to the determination of the question. Thus the NZ Companies Act 1955 considered it necessary to provide that "*in determining whether a transaction took place in the ordinary course of business, no account is to be taken of any intent or purpose on the part of a company (a) To enable another person to receive more towards the satisfaction of a debt than the person would otherwise receive or be likely to receive in the liquidation…..unless that person knew that that was the intent or purpose of the company*": s266(4).

[12]     See Countrywide Banking Corporation Ltd v Dean [1998] BCC 105 at 112A-E.

*both the company and its creditor are not preferences. This is because there is a mutual assumption by the parties that the business relationship of buyer and seller will continue with the result that the relationship of debtor and creditor will continue in the running account between the parties. There is no attempt to terminate this relationship but rather to ensure its continuance to the mutual benefit of the parties. In these circumstances payments made by the company to its supplier should not be viewed in isolation and attacked as preferences.*

20.     The grant of a security interest, such as a pledge, to a creditor in respect of existing indebtedness within the vulnerability period, can potentially be an unfair preference. However, Goode on Principles of Corporate Insolvency Law, 5th ed., identifies the following as not involving the giving of a preference, at para. 13-90:

"*(3) the exchange of an asset of the company for one of at least equal value*": that would apply equally to exchanges of collateral. In the event that one form of collateral is substituted for another of equivalent value, there could be no underlying preference claim because the creditor would not by that act alone be in a better position than he would have in the event of a liquidation by virtue of the substitution of collateral of equal value. Any consequential improvement of the position of the creditor on the liquidation will have been accidental and consequent upon market changes in the value of the collateral subsequent to the transaction;

"*(4) the grant of security for a contemporaneous or subsequent advance or other new value*": in that event, even if the recipient happens to be a creditor already, "*he does not receive the [security] in his capacity as such but derives it from the independent, new transaction concluded for value.*" Accordingly, the grant of security for contemporaneous exchange of value, including the extension of new loans, does not constitute a preference.[13]

---

[13]     Goode on Principles of Corporate Insolvency Law, 5th ed., para. 13-79.

21.     I also note that a transaction which is an unfair preference under s245 is a "voidable" transaction, *i.e.,* it is valid until avoided by order of the court (although the avoiding of the transaction is not the only relief that the court may grant): see <u>Skandinaviska Enskilda Banken AB v Conway</u> [2019] UKPC 36; [2020] AC 1111 at 62.  There could be no suggestion of an asset being only "*purportedly pledged*" by a pledge that was to be the subject of a claim under s245.  The reference in paragraph 6(c) to the Foreclosure Assets having been "*purportedly pledged*", <u>see</u> Objection, Exs. A, B, C at para. 6(c), is therefore inconsistent with its intimating a claim that the pledge was an unfair preference under s245.  As there has been no order of the Court under s249 setting aside the pledge, the pledge, if validly made, remains a pledge: there is nothing "purported" about it.

22.     The same applies also to the reference to liens under paragraph 6(d) having been "*purportedly granted*." <u>See</u> Objection, Exs. A, B, C at para. 6(d).

23.     This view of the claims in sub-paragraphs 6(c) and (d) is supported by the fact that there is no reference to the dates of the pledges or Liens that were "*purportedly granted*," or to the period in which they were granted, (in contrast to the position under 6(a) and (b)) which suggests that the dates of the pledges, Liens or foreclosures are not thought to be of importance (as they would be if the claim were a claim under s245).  <u>See</u> Objection, Exs. A, B, C at para. 6.

24.     It may also be noted that the action of foreclosing on a valid security (the grant of which was not an unfair preference) could not be a preference under s245.  As a matter of BVI law, if a creditor enforces his security interest, following a default, against assets that had already been validly pledged by the counterparty and applies the proceeds from those assets against amounts owed by the counterparty, no complaint can be made by the debtor company.

25.    Therefore, certain of 3AC's claims might be unfair preferences under s245 (as they may fall within the vulnerability period and may conceivably have been at a time when the Company was insolvent) if they had the "*effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he would have been in if the transaction had not been entered into.*": s245(1).  That would be the case if the debt obligations of 3AC exceeded the value of the security held.[14]

26.    However, there are additional requirements that 3AC must show in order to reach this conclusion.  As noted above, s245(4) provides that where the creditor is "a connected person,"[15] then it will be presumed ("*unless the contrary is shown*") that the transaction was an insolvency transaction and that it did not take place in the ordinary course of business.  <u>See</u> s245(4). I am not aware of any reason that Genesis should be deemed "a connected person" with respect to 3AC, and 3AC's Proofs of Claim does not allege as much.  Accordingly, it will be 3AC's burden

---

[14]    See Armour & Bennett, Vulnerable Transactions in Corporate Insolvency, para. 4.44

[15]    Each of the following is a connected person under s5(1):

    (a)    any promoter of the company;

    (b)    each director or member of the company or a "related company";

    (c)    any beneficiary under a trust of which the company is or has been a trustee;

    (d)    any related company;

    (e)    another company one of whose directors is also a director of the company;

    (f)    any nominee, relative, spouse or relative of a spouse of a person referred to in paragraphs (a) to (c);

    (g)    any person in partnership with a person referred to in paragraphs (a) to (c) above; or

    (h)    a trustee of a trust having as a beneficiary a person who is, apart from this paragraph, a connected person.

A company is a related company under s(5)(2) if:

    (a)    it is a subsidiary or holding company of that other company;

    (b)    the same person has control of both companies; or

    (c)    the company and that other company are both subsidiaries of the same holding company.

12

to plead and ultimately to show that any transaction was an insolvency transaction and that it did not take place in the ordinary course of business.

## Conversion

27.     Apart from BVI law preference claims, to the extent 3AC argues that the pledges or Liens were never validly granted, then the BVI law claim that 3AC articulates in its Proofs of Claim would appear to be a claim in conversion (and the Proofs of Claim explicitly purport to bring conversion claims pursuant to the laws of certain jurisdictions, see Objection, Exs. A, B, C at para. 6).  The validity of the pledges and the Liens as a matter of BVI law would be governed by the choice of law clause in the agreements governing them: see Dicey, Morris & Collins, The Conflict of Laws, 16th ed., 33-005.  S161(2) of the BVI Business Companies Act provides that the company may create a mortgage, charge or other encumbrance over any of its assets situated in any part or the world in accordance with the law of any jurisdiction of the company's choice, and the mortgage, charge or other encumbrance shall be binding on the company to the extent, and in accordance with, the requirements of the chosen law.

28.     The agreements by which the pledges and Liens were granted provided that they were to be "*construed and enforced under the laws of the State of New York*."  See Objection, Ex. H (2020 MLA § XIII).  Accordingly, the question of the validity of the pledges and the Liens as a matter of BVI law would be governed by New York law.

29.     As for the question of perfection[16] of the security as a matter of BVI law, it is not a requirement of BVI law that to be enforceable against a company in liquidation the security must

---

[16]     "*Perfection refers to steps required by statute in various contexts to give publicity to security interests in assets owned by another person to ensure their effectiveness against competing third party claims.*":  Law Commission's Digital Assets: Consultation Paper para. 18.14 ftnte 1614.  As the Paper notes, the position under the UK legislation (Companies Act 2006, s859H) is that "*Failure to comply with these steps results in the interests being*

be registered with the BVI Registrar of Corporate Affairs,[17] though if in fact registered with the Registrar, the charge[18] has priority over any subsequently registered charge and any unregistered charge.[19]   Therefore, any failure by Genesis to register its security with the BVI Registrar would not affect its validity and enforceability as against 3AC.

30.     Thus, if the pledges or Liens were enforceable against 3AC under New York law and were lawfully enforced against 3AC under that law, there can be no claim for conversion under BVI law.

31.     The BVI Court will follow English law.  As stated in Halsbury's Laws of England, 5th ed., Vol. 97A,

> *202. The tort of conversion is broadly concerned with cases where one person has misappropriated goods belonging to another.  Conversion of goods can occur in so many different circumstances that framing a precise definition is virtually impossible.  However, its basic features are as follows:*
>
> *(1) the defendant's conduct was inconsistent with the rights of the owner (or other person entitled to possession);*
>
> *(2) the conduct was deliberate, not accidental; and*
>
> *(3) the conduct was so extensive an encroachment on the rights of the owner as to exclude him from use and possession of the goods.*
>
> *Another notable feature of conversion is that liability in the tort is strict.  Although the defendant's interference with the claimant's chattel, in the sense of his dealing and physical contact with it, must be deliberate, his infringement of the claimant's right need*

---

*void in the event of the collateral provider becoming subject to insolvency proceedings …."*  The BVI legislation makes no such provision.

[17]   S175(2) of the BVI Insolvency Act 2003 expressly states that the commencement of the liquidation does not affect the right of a secured creditor to take possession of or otherwise deal with assets of the company over which that creditor has a security interest.

[18]   "Charge" means any form of security interest over property, wherever situated, other than an interest arising by operation of law": s160(1) of the Business Companies Act.

[19]   S166(1) Business Companies Act.  There is no equivalent to the UK Companies Act 2006 s859H by which a failure to register a charge (though not a possessory security such as a pledge or a lien) renders it void as against the liquidator or any creditor of the company.

*not be.  Indeed, there is no need to prove that the defendant was at fault at all, so complete
ignorance of the existence of the claimant's right affords no general defence.*

*208.    A defendant may commit a conversion by transferring the claimant's chattel to
another person without the claimant's consent....It is important to note that an attempt to
transfer title by sale, without anything more, cannot amount to a conversion.  A sale, as a
purely abstract act which need not involve physical delivery of the chattel, cannot normally
amount to a conversion in itself.  The sale must be accompanied by some form of physical
delivery to amount to a conversion.*

32.    However,

*229. The tort of conversion only protects property rights in respect of chattels.  To date the
courts have been reluctant to extend the boundaries of the tort so as to protect intangible
rights.  The House of Lords has held that it is not possible to convert a contractual right,
and that the tort of conversion only extends to rights relating to physical things.*

33.    Given that digital assets are intangible property rights, this would seem to be a
likely limitation on any claim in conversion.  (This limitation on any claim for conversion was
fully discussed in the Law Commission's Digital Assets: Consultation Paper at para. 19.89 to
19.124 and Final report para. 9.61 to 9.83.)

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct to the best of my knowledge, information and belief.

Executed on July 19, 2023.

*/s/ Christopher Parker KC*
_____

Christopher Parker KC

Maitland Chambers

# **EXHIBIT E**

## **Fact Declaration**

Hearing Date: **August 24, 2023**, at 11:00 a.m. ET
Objection Deadline: **August 9, 2023**, at 4:00 p.m. ET

Sean A. O'Neal
Luke A. Barefoot
Rishi N. Zutshi
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Capital, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

## DECLARATION OF A. DERAR ISLIM IN SUPPORT OF DEBTORS' FIRST OMNIBUS OBJECTION (SUBSTANTIVE) TO CLAIM NOS. 523, 526 AND 527 PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)

I, A. Derar Islim, hereby declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, as follows:

1.     I am the Interim Chief Executive Officer for the Debtors.  I am generally familiar with the day-to-day operations and affairs of the Debtors.

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific PTE. LTD. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

2.      I submit this declaration (the "Declaration") in support of the Objection[2] which is being filed simultaneously herewith.

3.      Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my experience, personal knowledge and information concerning the Debtors' relationship with Three Arrows Capital Ltd ("3AC"), my review of relevant communications and documents, and/or information supplied to me by members of the Debtors' management, other personnel and professional advisors regarding that relationship. To the extent that the Debtors learn that any information provided herein is materially inaccurate, the Debtors will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my current knowledge, information and belief. I am authorized to submit this Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

A.      **The Lending Relationship Among 3AC, GAP And GGC**

4.      Beginning in 2019, Genesis Global Capital, LLC ("GGC"), Genesis Asia Pacific Pte. Ltd. ("GAP") (and, together with GGC, "Genesis") and Three Arrows Capital Ltd ("3AC") entered into various agreements that set out the terms of their lending relationship.

5.      Pursuant to these agreements, GAP provided loans of USD and digital assets to 3AC. At the time of 3AC's default, 3AC had outstanding obligations to GAP of approximately $2,363,105,165. In return for the extension of loans, 3AC substantially simultaneously transferred (in the form of pledges and/or delivery) USD, digital assets, or shares to GAP as collateral. Pursuant to these agreements, GAP was entitled to and did reuse this collateral in the ordinary course of its lending activities, including to extend new loans or to pledge to another counterparty

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Objection.

2

as collateral.  The parties entered into hundreds of loans during the course of their relationship, and 3AC paid interest on outstanding loans on a monthly basis.  3AC was one of Genesis's largest borrowers from 2020 to 2022, up until the time of its collapse.

6.      The only contractual relationship that Genesis and 3AC had was a lending relationship whereby 3AC would transfer collateral to Genesis in exchange for the extension of loans, as well as ancillary collateral management services, whose terms generally required periodic interest payments or margin payments in the event of a change in collateral value.

7.      3AC did not have any custodial, gifting or other type of relationship with Genesis.

8.      HoldCo did not maintain any lending, contractual or other business relationship with 3AC.

**B.      3AC Defaults And Genesis Exercises Remedies**

9.      Under the terms of the MLAs, 3AC was required to post additional collateral if the value of its posted collateral fell below certain agreed-upon thresholds.  After 3AC failed to meet a margin call, Genesis issued 3AC a notice of default on June 13, 2022.

10.     At the time of 3AC's default, 3AC owed GAP approximately $2,363,105,165 (in USD and digital assets) under the MLAs and related agreements.  As collateral for its outstanding loans, 3AC had transferred (in the form of pledges and/or delivery) to GAP the following assets: (1) 35,585,040 Grayscale Bitcoin Trust Shares ("GBTC"); (2) 33,348.03 Bitcoin ("BTC"); (3) 17,455.73 Ether ("ETH"); (4) 2,739,043.83 AVAX tokens; and (5) 13,583,265 NEAR tokens.  As of June 23, 2022, the total value of the GBTC, BTC and ETH collateral was approximately $1,164,807,844.92, and the total value of the AVAX and NEAR collateral was approximately $93,105,701.40, in each case, based on the relevant spot price of the relevant asset at that time.

11.     By late June 2022, Genesis had exercised remedies against the GBTC, BTC and ETH collateral, which exercise reduced GAP's claim against 3AC to approximately $1,198,297,320.

12.     As to the AVAX and NEAR collateral, Genesis lacks visibility and definitive information concerning the current status and disposition of such collateral.

## C.     The Underlying Transactions

13.     3AC and GAP regularly agreed for assets to serve as collateral in connection with new loans, in response to margin calls, or in connection with substitutions of collateral, often without executing Loan Term Sheets.

14.     The main course of dealing between Genesis and 3AC for the lending relationship was via Telegram chat, and all of the relevant transactions are memorialized therein, in addition to in some cases in other sources.

15.     3AC transferred the Interest Payment, Loan Repayment, and Foreclosure Assets to GAP, and granted the Liens to GAP, pursuant to the MLAs.

16.     The Interest Payment was comprised of several payments from 3AC to GAP for interest accrued during the month of May 2022 on outstanding loans:

   a)   On June 2, 2022, 3AC paid GAP approximately 478,767.12 Tether ("USDT"), 4,149.54 Ethereum Classic ("ETC"), and 4,881.44 FTX Token ("FTT") as interest.

   b)   On June 3, 2022, 3AC paid GAP $15,358,034.15 and approximately 1,899,706.52 USDC as interest.

c)   The approximate USD value of the USDT, ETC, FTT, and USDC on the dates they were transferred to GAP, together with the $15,358,034.15, is slightly less than $18 million.[3]

17.    3AC paid interest on its outstanding loans on a monthly basis throughout the parties' lending relationship.

18.    The Loan Repayment was a payment from 3AC to GAP for the purpose of repaying several outstanding open term loans from GAP to 3AC in full or in part:

a)   The Loan Repayment fully repaid a loan for $38,804,954.17 provided by GAP to 3AC on January 11, 2022;

b)   The Loan Repayment fully repaid a loan for $200,000,000 (of which $190,000,000 had previously been repaid) provided by GAP to 3AC on January 10, 2022; and

c)   The Loan Repayment partially repaid 66,195,045.83 USDC of a loan for 225,000,000 USDC provided by GAP to 3AC on January 28, 2022.

19.    3AC repaid loans provided by Genesis on a regular basis over the course of the parties' lending relationship, either of its own accord or to raise margin levels so Genesis would continue to extend new loans.  The Loan Repayment was an example of the latter.

20.    The Foreclosure Assets, which are approximately 33,348.03 BTC, 17,455.73 ETH and 13,172,000 GBTC, consist of Collateral that 3AC transferred to GAP in the course of the parties' lending relationship (and that GAP foreclosed upon following 3AC's default) as a result of the following three types of transfers:

---

[3]    On June 2, 2022, the closing prices of USDT, ETC, and FTT were $1.00, $22.42, $27.16, respectively, according to Crypto.com.  The closing price of USDC on June 3, 2022 was $1.00, according to Crypto.com. Multiplying these prices by the quantities of the different assets transferred to Genesis as interest, and adding those totals together, yields an approximate total of $2,604,086.21.  This, combined with the $15,358,034.15 transferred as interest, totals approximately $17,962,120.36.

a) **Purchase price loans.** 23,256.97 BTC was Collateral (as defined under the MLAs) transferred in connection with purchase price loans of USD (*i.e.,* loans of USD that Genesis made to 3AC for the purpose of allowing 3AC to buy a portion of such BTC):

    i.   Between January 10, 2022 and January 12, 2022, 3AC transferred 8,206.97 BTC to GAP as collateral in connection with three purchase price loans of USD of equal value extended by GAP to 3AC.  Some of these transactions and transfers are memorialized in executed Loan Term Sheets.

    ii.  On May 14, 2022, 3AC transferred 3,000 BTC to GAP as collateral in connection with a purchase price loan of USD of equal value extended by GAP to 3AC.  This transaction and transfer is memorialized in an executed Loan Term Sheet.

    iii. On May 17, 2022, 3AC transferred 5,000 BTC to GAP as collateral in connection with a purchase price loan of USD of equal value extended by GAP to 3AC.

    iv.  On May 30, 2022, 3AC transferred 3,450 BTC to GAP as collateral in connection with a purchase price loan of USD of equal value extended by GAP to 3AC.

    v.   Between June 6, 2022 and June 7, 2022, 3AC transferred 3,600 BTC to GAP as collateral for purchase price loans of USD of equal value extended by GAP to 3AC.

b) **Collateral substitutions.** 9,131.06 BTC and 17,455.73 ETH were Collateral (as defined in the MLAs) transferred through collateral substitutions requested by 3AC[4]:

    i.    Between May 23, 2022 and June 7, 2022, at 3AC's request, 3AC transferred to GAP 9,131.06 BTC to substitute for other Collateral that 3AC had pledged and transferred to GAP.

    ii.    Similarly, on June 12, 2022, at 3AC's request, 3AC transferred to GAP 17,455.73 ETH to substitute for other Collateral that 3AC had transferred to GAP.

    iii.    The original collateral that was substituted through these transfers was comprised of: (1) 96,200,000 ALGO, 699,000 SOL, 300,000 AVAX and 50,000 ETH, all of which 3AC transferred to GAP as Additional Collateral in response to a May 9, 2022 margin call that GAP issued to 3AC; and (2) 71,375 ETH that 3AC transferred to GAP on December 6, 2021 as collateral for a purchase price loan of USD.

c) **Margin calls.** 960 BTC and 13,172,000 GBTC was transferred as Additional Collateral (as defined in the MLAs) pursuant to margin calls:

    i.    On February 21, 2022 and February 23, 2022, 3AC transferred 610 BTC and 350 BTC, respectively, to GAP as Additional Collateral in response to a margin call that GAP issued 3AC on February 20, 2022.

---

[4]    Based on my knowledge and experience, collateral substitutions such as these are common practice in the market for loans collateralized with digital currency assets.

    ii.    On May 11, 2022 and May 12, 2022, 3AC transferred 7,720,000 GBTC and 5,400,000 GBTC, respectively, to GAP as Additional Collateral in response to a margin call that GAP issued 3AC on May 9, 2022.

21.    The AVAX and NEAR tokens also consist of collateral that 3AC pledged to GAP in the course of the parties' lending relationship.  3AC pledged 2,739,043.83 AVAX tokens and 13,583,265 NEAR tokens to GAP pursuant to a Pledge Agreement between the parties dated January 27, 2022.  These tokens were pledged as collateral for a loan of 225,000,000 USDC from GAP to 3AC on January 28, 2022.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  July 19, 2023
      New York, New York

*/s/ A. Derar Islim*
A. Derar Islim
Interim Chief Executive Officer, Genesis

**<u>EXHIBIT F</u>**

**<u>Attorney Declaration</u>**

Sean A. O'Neal
Luke A. Barefoot
Rishi N. Zutshi
Jane Van Lare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DECLARATION OF DEANDRA FIKE IN SUPPORT OF**
**DEBTORS' FIRST OMNIBUS OBJECTION (SUBSTANTIVE)**
**TO CLAIM NOS. 523, 526 AND 527 PURSUANT TO**
**11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)**

I,   Deandra Fike, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am an associate at the law firm Cleary Gottlieb Steen & Hamilton LLP,

counsel to the Debtors in the above-captioned chapter 11 case.  I am duly admitted to this Court.

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global HoldCo, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

2.      I respectfully submit this declaration in support of the *Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Objection").

3.      True and correct copies of the following documents are attached to the Objection as exhibits G-N.

(a) Exhibit G:  Master Loan Agreement between Genesis Global Capital, LLC and Three Arrows Capital Ltd dated January 10, 2019.

(b) Exhibit H:  Master Loan Agreement between Genesis Asia Pacific Pte. Ltd. and Three Arrows Capital Ltd dated January 24, 2020.

(c) Exhibit I:   Assignment and Assumption of Master Loan Agreement between Genesis Global Capital, LLC, Genesis Asia Pacific Pte. Ltd., and Three Arrows Capital Ltd dated July 20, 2020.

(d) Exhibit J:   Assignment and Assumption Agreement between Genesis Asia Pacific Pte. Ltd. and Digital Currency Group, Inc., dated June 30, 2022.

(e) Exhibit K:   Assignment and Assumption of Master Loan Agreement between Genesis Asia Pacific Pte. Ltd. and Digital Currency Group, Inc., dated July 14, 2022.

(f) Exhibit L:  A series of Telegram communications involving Debtors and Three Arrows Capital Ltd relating to the transactions at issue.

(g) Exhibit M:  Margin call notices issued by Debtors to Three Arrows Capital Ltd on June 12, 2022 and June 13, 2022.

(h) Exhibit N:   Notice of Default issued by Genesis Global Capital, LLC and Genesis Asia Pacific Pte. Ltd. to Three Arrows Capital Ltd on June 13, 2022.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  July 19, 2023 at New York, NY

*/s/ Deandra Fike*

_____

Deandra Fike

## EXHIBIT G

## Master Loan Agreement between Genesis Global Capital, LLC and Three Arrows Capital Ltd dated January 10, 2019

# MASTER LOAN AGREEMENT

This Master Loan Agreement ("Agreement") is made on this 10th day of January 2019 ("Effective Date") by and between Genesis Global Capital, LLC ("Genesis" or "Lender"), a corporation organized and existing under the laws of Delaware with its principal place of business at 111 Town Square Place, Suite 1203, Jersey City, NJ 07310 and Three Arrows Capital Ltd ("Three Arrows Capital" or "Borrower") a corporation organized and existing under the laws of British Virgin Islands, with its registered office at 7 Temasek Boulevard #21-04 Singapore, Singapore 038987

## RECITALS

**WHEREAS**, subject to the terms and conditions of this Agreement, Borrower may, from time to time, seek to initiate a transaction pursuant to which Lender will lend U.S. Dollars or Digital Currency to Borrower, and Borrower will return such U.S. Dollars or Digital Currency to Lender upon the termination of the Loan; and

Now, therefore, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, the Borrower and the Lender hereby agree as follows:

## I.   Definitions

"*Airdrop*" means a distribution of a new token or tokens resulting from the ownership of a preexisting token. For the purposes of Section V, an "*Applicable Airdrop*" is an Airdrop for which the distribution of new tokens can be definitively calculated according to its distribution method, such as a pro rata distribution based on the amount of the relevant Digital Currency held at a specified time. A "*Non-Applicable Airdrop*" is an Airdrop for which the distribution of new tokens cannot be definitively calculated, such as a random distribution, a distribution to every wallet of the relevant Digital Currency, or a distribution that depends on a wallet of the relevant Digital Currency meeting a threshold requirement.

"*Authorized Agent*" has the meaning set forth in Exhibit A.

"*Borrower*" means Three Arrows Capital Ltd

"*Borrowed Amount*" refers to the value of the Loaned Assets in U.S. dollars on the Loan Effective Date.

"*Borrower Email*" means kyle@threearrowscap.com

"*Business Day*" means a day on which Genesis is open for business, following the New York Stock Exchange calendar of holidays.

"*Business Hours*" means between the hours of 9:00 am to 5:00 pm New York time on a Business Day.

1

"***Call Option***" means Lender has the option to demand immediate payment of a portion or the entirety of the Loan Balance at any time, subject to this Agreement.

"***Close of Business***" means 5:00 pm New York time.

"***Collateral***" is defined as set forth in Section IV(a)

"***Demand Loan***" means a Loan without a Maturity Date where the Lender has a Call Option.

"***Digital Currency***" means Bitcoin (BTC), Bitcoin Cash (BCH), Ether (ETH), Ether Classic (ETC), or Litecoin (LTC), or any digital currency that the Borrower and Lender agree upon.

"***Digital Currency Address***" means an identifier of 26-34 alphanumeric characters that represents a digital identity or destination for a transfer of Digital Currency.

"***Fixed Term Loan***" means a Loan with a pre-determined Maturity Date, where Borrower does not have a Prepayment Option and Lender does not have a Call Option.

"***Hard Fork***" means a permanent divergence in the block chain (e.g. when non-upgraded nodes cannot validate blocks created by upgraded nodes that follow newer consensus rules, or an airdrop or any other event which results in the creation of a new token).

"***Lender***" means Genesis.

"***Loan***" means a request for a loan or an actual loan of Digital Currency or U.S. Dollars made pursuant to and in accordance with this Agreement and a Loan Term Sheet.

"***Loan Balance*** " means the sum of all outstanding amounts of Loaned Asset , Loan Fees, Late Fees, and any Earlier Termination Fee for a particular Loan.

"***Loan Documents***" means this Master Loan Agreement and any and all Loan Term Sheets entered into between Lender and Borrower.

"***Loan Effective Date***" means the date upon which a Loan begins.

"***Loan Fee***" means the fee paid by Borrower to the Lender for the Loan.

"***Loan Term Sheet***" means the agreement between Lender and Borrower on the particular terms of an individual Loan, which shall be memorialized in an agreement as set forth in Exhibit B or in a form approved by Lender comparable therewith.

"***Loaned Assets***" means any Digital Currency or U.S. Dollar amount transferred in a Loan hereunder until such Digital Currency (or identical Digital Currency) or U.S. Dollar amount is transferred back to Lender hereunder.  For purposes of return of Loaned Digital Currency by

2

Borrower or purchase or sale of Digital Currencies pursuant to Section IX, such term shall include Digital Currency of the same quantity and type as the Digital Currency.

"***Maturity Date***" means the pre-determined future date upon which a Loan becomes due in full.

"***Open Loan***" means a Loan without a Maturity Date where Borrower has a Prepayment Option and Lender has a Call Option.

"***Prepayment Option***" means the Borrower has the option to repay or return the Loaned Assets prior to the Maturity Date, subject to this Agreement.

"***Term***" means the period from the Loan Effective Date through Termination Date.

"***Term Loan with Call Option***" means a Loan with a pre-determined Maturity Date where Lender has a Call Option.

"***Term Loan with Prepayment Option***" means a Loan with a pre-determined Maturity Date where Borrower has a Prepayment Option.

"***Term Loan with Call and Prepayment Options***" means a Loan with a pre-determined Maturity Date where Borrower has a Prepayment Option and Lender has a Call Option.

"***Termination Date***" means the date upon which a Loan is terminated.

## II.   General Loan Terms.

(a) Loans of Digital Currency or U.S. Dollars

Subject to the terms and conditions hereof, Borrower may, in its sole and absolute discretion, request from the Lender a Loan to Borrower of a specified amount of Digital Currency or U.S. Dollars, and Lender may, in its sole and absolute discretion, extend such Loan or decline to extend such Loan on terms acceptable to Lender and as set forth in a corresponding Loan Term Sheet.

(b) Loan Procedure

From time to time during the Term of this Agreement, during the hours of 9:00 am New York time to 4:00 pm New York time on a Business Day (the "Request Day"), by email directed to lend@genesiscap.co (or such other address as Lender may specify in writing), an Authorized Agent of Borrower may request from Lender a Loan of a specific amount of Digital Currency or U.S. Dollars (a "Lending Request"). Provided Lender receives such Lending Request prior to 3:00 pm New York time, Lender shall by email directed to Borrower Email (or such other address as Lender may specify in writing) to inform Borrower whether Lender agrees to make such a Loan. If Lender fails to provide Borrower with an acceptance as to a particular Lending Request prior to Close of Business on the Request Day, such Lending Request shall be deemed to have be denied by Lender.

3

As part of its Lending Request, Borrower shall provide the following proposed terms:

    (i)     Whether U.S. Dollars or Digital Currency, and if Digital Currency, the type of Digital Currency;

    (ii)    the amount of Digital Currency or U.S. Dollars;

    (iii)   whether the Loan is to be a Fixed Term Loan, a Term Loan with Prepayment Option, or an Open Loan;

    (iv)   the Loan Effective Date;

    (v)    the Maturity Date (if a Fixed Term Loan or a Term Loan with Prepayment Option).

If Lender agrees to make a Loan, Lender shall commence transmission to either (x) the Borrower's Digital Currency Address the amount of Digital Currency; or (y) Borrower's bank account by bank wire the amount of U.S. Dollars, as applicable, as such Digital Currency Address or bank wire instruction is set forth in the Lending Request on or before Close of Business on the Request Day.

The specific and final terms of a Loan shall be memorialized using the Loan Term Sheet. In the event of a conflict of terms between this Master Loan Agreement and a Loan Term Sheet, the terms in the Loan Term Sheet shall govern.

    (c) <u>Loan Repayment Procedure</u>

      (i) <u>Loan Repayment</u>

Unless otherwise specified in subsections (ii) and (iii) below, upon the earlier of the Maturity Date, the Recall Delivery Day, or the Redelivery Day (as defined below) for a Loan, Borrower shall repay the entirety of the Loan Balance to Lender by Close of Business.

      (ii) <u>Call Option</u>

For Loans in which the Lender has a Call Option (e.g. Open Loans, etc.), Lender may during Business Hours (the "<u>Recall Request Day</u>") demand repayment of a portion or the entirety of the Loan Balance (the "<u>Recall Amount</u>"). Lender will notify Borrower of Lender's exercising of this right by email to Borrower's Email. Borrower will then have until Close of Business on the second Business Day after the Recall Request Day (the "<u>Recall Delivery Day</u>") to deliver the Recall Amount.

In the event of a Call Option where Lender demands only a portion of the Loan Balance, Borrower shall repay said portion of the Loan Balance on the Recall Day and the remaining portion of the Loan Balance on the earlier of the Maturity Date or the subsequent Recall Delivery Day.

      (iii) <u>Prepayment Option</u>

4

For Loans in which Borrower has a Prepayment Option (e.g. Open Loans, Term Loans with Prepayment Option, etc.), Borrower may notify Lender during Business Hours of Borrower's intent to return the Loan prior maturity or Lender's exercising of its Call Option without being subject to Early Termination Fees as set forth in Section III(d). Borrower shall provide said notice at least two Business Days prior to the date on which the Borrower will repay all or a portion of the Loan Balance (said later date, the "Redelivery Date"). Borrower's exercising of its Prepayment Option shall not relieve it of any of its obligations herein, including without limitation its payment of owed Loan Fees and Late Fees.

In the event of a Prepayment Option where the Borrower repays only a portion of the Loan Balance, Borrower shall repay said portion of the Loan Balance on the Redelivery Day and the remaining portion of the Loan Balance on the earlier of the Maturity Date, Recall Day, or subsequent Redelivery Day.

(d) Termination of Loan

Loans will terminate upon the earlier of:

(i)     the Maturity Date;

(ii)    the repayment of the Loan Balance by Borrower prior to the Maturity Date;

(iii)   Upon an Event of Default as defined in Section VII; however, Lender shall have the right in its sole discretion to suspend the termination of a Loan under this subsection (iii) and reinstitute the Loan. In the event of reinstitution of the Loan pursuant to the preceding sentence, Lender does not waive its right to terminate the Loan hereunder.

Nothing in the forgoing shall cause, limit, or otherwise affect the Term and termination of this Agreement except as specified in Section XXIV.

### III.    **Loan Fees and Transaction Fees.**

(a) Loan Fee

Unless otherwise agreed, Borrower agrees to pay Lender a Loan Fee on each Loan.
When a Loan is executed, the Borrower will be responsible to pay the Loan Fee as agreed to herein and in the relevant Loan Term Sheet, annualized and subject to change if thereafter agreed by Borrower and Lender. Except as Borrower and Lender may otherwise agree, Loan Fees shall accrue from and include the date on which the Loaned Assets are transferred to Borrower to the date on which such Loaned Assets are repaid in their entirety to Lender.

Lender shall calculate any Loan Fees owed on a daily basis and provide Borrower with the calculation upon request. The Loan Fee will be calculated off all outstanding portions of the Loaned Assets.

(b) Late Fee

For each Calendar Day in excess of the Maturity Date or the Recall Delivery Day (whichever is applicable) in which Borrower has not returned the entirety of the Loaned Assets or failed to timely pay any outstanding Loan Fee in accordance with section III(c), Borrower shall incur an additional fee (the "Late Fee") of a 10% (annualized, calculated daily) increase on top of the Loan Fee.

(c) Payment of Loan Fees and Late Fees

Unless otherwise agreed, any Loan Fee or Late Fees payable hereunder shall be paid by Borrower upon the earlier of (i) five (5) Business Days after receipt of an invoice from Lender or (ii) the termination of all Loans hereunder (the "Payment Due Date"). An invoice for Loan Fees and any Late Fees (the "Invoice Amount") shall be sent out on the first Business Day of the month and shall include any Loan Fees, Late Fees, and Early Termination Fees incurred during the previous month. Borrower shall have up to five Business Days from sending of said Invoice to pay the Invoice Amount . Failure of Lender to timely send an invoice in accordance with the preceding sentence shall not relieve Borrower of its obligation to pay any Loan Fees, Late Fees, and Early Termination Fees owed herein nor negate any Event of Default resulting from Borrower's failure to timely pay such fees. The Loan Fee, Late Fees, and Early Termination Fees shall be payable, unless otherwise agreed by the Borrower and Lender, in the same asset that was Borrowed, whether U.S. Dollars or Digital Currency on the same blockchain and of the same type that was loaned by the Lender during the Loan.

Notwithstanding the foregoing, in all cases, all Loan Fees, Late Fees, and Early Termination Fees shall be payable by Borrower immediately upon the occurrence of an Event of Default hereunder by Borrower.

(d) Early Termination Fees

For Fixed Term Loans and Term Loans with Call Options, if Borrower returns the Loaned Assets prior to the Maturity Date, Borrower shall pay to Lender an "Early Termination Fee" equal to thirty percent (30%) of the Loan Fee that would have accrued from the date of the repayment until the Maturity Date of the Loan. The Early Termination Fee is due with the repayment of the Loaned Assets. The Early Termination Fee shall not apply if Borrower returns the Loaned Assets to Lender in the event of a Hard Fork (as defined in Section IV) for the purposes of allowing Lender to split the tokens in accordance with Section IV (h).

(e) Taxes and Fees

All transfer or other taxes or third party fees payable with respect to the transfer, repayment, and/or return of any Loaned Assets or Collateral hereunder shall be paid by Borrower.

## IV.    **Collateral Requirements**

(a) Collateral

Unless otherwise agreed by the parties, or modified as set forth below, Borrower shall provide as collateral an amount of U.S. Dollars, Bitcoin or Ether (such choice at the sole discretion of Lender), to be determined and agreed upon by the Borrower and Lender ("Collateral") and memorialized using the Loan Term Sheet. The Collateral will be calculated as a percentage of the value of the Loaned Assets, such value determined by a spot rate agreed upon in the Loan Term Sheet. Borrower shall, prior to or concurrently with the transfer of the Loaned Assets to Borrower, but in no case later than the Close of Business on the day of such transfer, transfer to Lender the agreed upon Collateral.

Collateral shall always be valued in U.S. Dollars, but Borrower may, if mutually agreed by both parties, provide the Collateral (in whole or in part) to Lender in Bitcoin or Ether in an amount equal to the value of the Collateral in U.S. Dollars at a spot rate determined by Lender. For the avoidance of doubt, upon the repayment of the Loaned Assets at the termination of a Loan, Lender shall return to Borrower the same amount and type of Collateral that was deposited, net of any Additional Collateral or Margin Call adjustments (as defined below in paragraph (b)). If a Hard Fork in the Bitcoin or Ether blockchain meeting the criteria in Section V occurs while Lender is holding Bitcoin or Ether as Collateral, Lender shall return the New Tokens (as defined in Section V) to Borrower in addition to the Collateral and Additional Collateral. If a Hard Fork occurs that does not meet the criteria in Section V, Lender shall have no obligation to return any New Tokens to Borrower.

The Collateral transferred by Borrower to Lender, as adjusted herein, shall be security for Borrower's obligations in respect of such Loan and for any other obligations of Borrower to Lender hereunder. Borrower hereby pledges with, assigns to, and grants Lender a continuing first priority security interest in, and a lien upon, the Collateral, which shall attach upon the transfer of the Loaned Assets by Lender to Borrower and which shall cease upon the transfer of the return of the Loaned Assets by Borrower to Lender. In addition to the rights and remedies given to Lender hereunder, Lender shall have all the rights and remedies of a secured party under the UCC. Lender shall be entitled to use the Collateral to conduct its digital currency lending and borrowing business, including transferring the Collateral to other non-Genesis bank accounts.

(b) Loan and Collateral Transfer

If Lender transfers Loaned Assets to Borrower and Borrower does not transfer Collateral to Lender as provided in Section IV(a), Lender shall have the absolute right to the return of the Loaned Assets; and if Borrower transfers Collateral to Lender, as provided in Section IV(a), and Lender does not transfer the Loaned Assets to Borrower, Borrower shall have the absolute right to the return of the Collateral.

(c) Margin Calls

If during the Term of a Loan the value of the value of the Collateral, using the current spot rate as indicated on GDAX, as a percentage of the "Amount of Asset" specified on the Loan Term Sheet falls below the "Margin Call Level" on the Loan Term Sheet, Lender shall have the right to require

Borrower to contribute additional Collateral so that the Collateral value as a percentage of the "Amount of Asset" is equal to the "Collateral Level" as indicated on the Loan Term Sheet (the "Additional Collateral"). In the event the Loaned Assets decreases below the original Borrowed Amount, Lender may, at its sole discretion, return a portion of the Collateral in an amount determined by Lender; however, in such an event, Lender reserves its rights under this Section IV to request Borrower to contribute collateral up to the original amount of Collateral and also Additional Collateral if required.

If Lender requires Borrower to contribute Additional Collateral, it shall send an email notification (the "First Notification") to the Borrower at the email address indicated in Section XIV (or such other address as the parties shall agree to in writing) that sets forth: (i) the Margin Call Spot Rate and (ii) the amount of Additional Collateral required based on the Margin Call Spot Rate. Borrower shall have twelve (12) hours from the time Lender sends such First Notification to (x) respond and send payment to Lender in accordance with subsection (c) below, or (y) respond that the spot rate as indicated on GDAX has changed sufficiently such that it is no longer at or above the Margin Call Spot Rate. If Lender agrees by email that Borrower's response according to (y) above is correct, then no other action is required by Borrower. If Lender fails to agree by email with Borrower's response in accordance with (y) by Close of Business that same day, such shall be deemed as Lender's rejection of Borrower's response and a re-statement of Lender's demand for Borrower to contribute Additional Collateral.

If Borrower fails to respond to the First Notification within twelve hours, or Lender rejects Borrower's response pursuant to (y) above, whether affirmatively by email or by non-reply as set forth above, and the spot rate of the Loaned Assets is still at least at the Margin Call Spot Rate, Lender shall send a second email notification (the "Second Notification") repeating the information in (i) and (ii) in the paragraph above. Borrower shall have six (6) hours from the time Lender sends the Second Notification to respond according to (x) or (y) above, and Lender has the right to accept or reject Borrower's response as stated above. Failure by Borrower to respond to either the First Notification or the Second Notification, shall give Lender the option to declare an Event of Default under Section VII below.

(d) Payment of Additional Collateral

Payment of the Additional Collateral shall be made by bank wire to the account specified in the Loan Term Sheet, or to the Digital Currency Address specified in the Loan Term Sheet, as applicable; or by a return of the amount of Loaned Assets necessary to make the USD Collateral percentage indicated in the Loan Term Sheet correct based on the Margin Call Spot Rate. For any return of Loaned Assets made in accordance with this Section, Borrower is still responsible for payment of any Early Termination Fees that apply to the particular Loan.

(e) Return of Collateral

Upon Borrower's repayment of the Loan and acceptance by Lender of the Loaned Assets into Lender's Digital Currency Address or bank account, with such delivery being confirmed on the relevant Digital Currency blockchain ten times (if applicable), Lender shall initiate the return of

Collateral within five Business Days to a bank account designated by Borrower or, where Digital Currency is Collateral, into an applicable Digital Currency account on the behalf of Borrower.

## V.    Hard Fork

### (a) Notification

In the event of a public announcement of a future Hard Fork or an Airdrop in the blockchain for any Loaned Digital Currency, Lender shall provide email notification to Borrower.

### (b) No Immediate Termination of Loans Due to Hard Fork

In the event of a Hard Fork in the blockchain for any Loaned Assets or an Airdrop, any outstanding Loans will not be immediately terminated. Borrower and Lender may agree, regardless of Loan type, for Lender to manage the Hard Fork on the behalf of Borrower through Borrower returning the Loaned Assets to Lender two business days prior to the scheduled Hard Fork or Airdrop. Lender shall not be obligated to return any Collateral to the Borrower during the period in which Lender manages the Loaned Assets on the behalf of Borrower. Lender shall fork the Loaned Assets, and following the Hard Fork shall return to Borrower the Loaned Assets but not the New Tokens (as defined below). For any whole days in which Lender manages the Loan Digital Currency pursuant to this section, the Loan Fee for those days shall not accrue. Nothing herein shall relieve, waive, or otherwise satisfy Borrower's obligations hereunder, including without limitation, the return of the Loaned Assets at the termination of the Loan and payment of accrued Loan Fees, which includes the per diem amounts for days on which Borrower transfers Digital Currency to Lender and Lender transfers said Digital Currency back to Borrower pursuant to this section.

### (c) Lender's Right to New Tokens

Genesis will receive the benefit and ownership of any incremental tokens generated as a result of a Hard Fork in the Digital Currency protocol or an Applicable Airdrop (the "New Tokens") if any two of the following four conditions are met:

- *Hash Power*: the average hash power mining the New Token on the 30th day following the occurrence of the Hard Fork or Applicable Airdrop (calculated as a 30-day average on such date) is at least 5% of the hash power mining the Loaned Assets on the day preceding the Hard Fork or Applicable Airdrop (calculated as a 3-day average of the 3 days preceding the Hard Fork).
- *Market Capitalization*: the average market capitalization of the New Token (defined as the total value of all New Tokens) on the 30th day following the occurrence the Hard Fork or Applicable Airdrop (calculated as a 30-day average on such date) is at least 5% of the average market capitalization of the Loaned Assets (defined as the total value of the Loaned Assets) (calculated as a 30-day average on such date).
- *24-Hour Trading Volume*: the average 24-hour trading volume of the New Token on the 30th day following the occurrence the Hard Fork or Applicable Airdrop (calculated as a 30-day average on such date) is at least 1% of the average 24-hour trading volume of the Loaned Assets (calculated as a 30-day average on such date).

9

- *Wallet Compatibility*: the New Token is supported by either BitGo wallets or Ledger wallets within 30 days of the Hard Fork or Applicable Airdrop.

For the above calculations, the source for the relevant data on the Digital Currency hash power, market capitalization, and 24-Hour trading volume will be blockchain.info (or, if blockchain.info does not provide the required information, bitinfocharts.com, and if neither provides the required information, the parties shall discuss in good faith to mutually agree upon another data source) and the source for the hash power of the New Token will be bitinfocharts.com (or, if bitinfocharts.com does not provide the required information, the parties shall discuss in good faith to mutually agree upon another data source prior to the 30-day mark of the creation of the New Token).

If the Hard Fork or Applicable Airdrop meets the criteria above, Borrower will have up to 60 days from the Hard Fork or Applicable Airdrop to transfer the New Tokens to Genesis.   If sending the New Tokens to Genesis is prohibitively burdensome, upon Lender's agreement with Borrower, Borrower can reimburse Genesis for the value of the New Tokens with any combination of a one-time payment in the same Loan Digital Currency transferred as a part of the Loan reflecting the amount of the New Tokens owed using the agreed upon spot rate at the time of said repayment or returning the borrowed Digital Currency so that Genesis can manage the split of the underlying digital tokens as described in subsection (b) above.. Alternatively, subject to Lender's written agreement, the parties may agree to other methods of making Lender whole for Borrower's failure to transfer New Tokens to Lender.  In all cases, Borrower will be solely responsible for payment of additional costs incurred by such transfer methods, including but not limited to technical costs, third party fees, and tax obligations for the transaction, including but not limited to a tax gross-up payment.  For the avoidance of doubt, if Borrower returns a Loan to Lender prior to the 30th day following a Hard Fork, Borrower's obligations under this Section V shall continue for any New Tokens that meet the criteria in this subsection (c) for such Loan on the 30th day following the Hard Fork. Lender's rights to New Tokens as set forth in this Section shall survive the termination of the relevant Loan, return of the Loaned Assets, and termination of this Agreement.

## VI.    Representations and Warranties.

The parties to this Agreement hereby make the following representations and warranties, which shall continue during the term of this Agreement and any Loan hereunder:

(a) Each party hereto represents and warrants that (a) it has the power to execute and deliver this Agreement, to enter into the Loans contemplated hereby and to perform its obligations hereunder, (b) it has taken all necessary action to authorize such execution, delivery and performance, and (c) this Agreement constitutes a legal, valid, and binding obligation enforceable against it in accordance with its terms.

(b) Each party hereto represents and warrants that it has not relied on the other for any tax or accounting advice concerning this Agreement and that it has made its own determination as to the tax and accounting treatment of any Loan , any Digital Currency, Collateral, or funds received or provided hereunder.

(c) Each party hereto represents and warrants that it is acting for its own account.

(d) Each party hereto represents and warrants that it is a sophisticated party and fully familiar with the inherent risks involved in the transaction contemplated in this Agreement, including, without limitation, risk of new financial regulatory requirements, potential loss of money and risks due to volatility of the price of the Loaned Assets, and voluntarily takes full responsibility for any risk to that effect.

(e) Each party represents and warrants that it is not insolvent and is not subject to any bankruptcy or insolvency proceedings under any applicable laws

(f) Each party represents and warrants there is no proceedings pending or, to its knowledge, threatened, which could reasonably be anticipated to have any adverse effect on the transactions contemplated by this Agreement or the accuracy of the representations and warranties hereunder or thereunder.

(g) Each party represents and warrants that to its knowledge the transactions contemplated in this Agreement are not prohibited by law or other authority in the jurisdiction of its place of incorporation, place of principal office, or residence and that it has necessary licenses and registrations to operate in the manner contemplated in this Agreement.

(h) Lender represents and warrants that it has, or will have at the time of transfer of any Assets, the right to transfer such Loaned Assets subject to the terms and conditions hereof, and that it owns the Loaned Assets, free and clear of all liens.

(i) Borrower represents and warrants that it has, or will have at the time of transfer of any Loaned Assets, the right to transfer such Loaned Assets subject to the terms and conditions hereof, and, free and clear of all liens and encumbrances other than those arising under this Agreement.

(j) Borrower represents and warrants that it has, or will have at the time of transfer of any Collateral, the right to grant a first priority security interest in said Collateral subject to the terms and conditions hereof.

## VII.    <u>Covenants</u>

Promptly upon (and in any event within seven (7) Business Days after) the execution of this Agreement, Borrower shall furnish Lender with Borrower's most recent audited annual and (if applicable) quarterly financial statements and any other financial statements mutually agreed upon by Borrower and Lender. For each successive year, Borrower shall also furnish Lender with Borrower's future audited annual financial statements by Borrower's fiscal year end or within seven (7) Business Days thereof.

## VIII.   <u>Default</u>

11

It is further understood that any of the following events shall constitute an event of default hereunder, and shall be herein referred to as an "Event of Default" or "Events of Default":

(a) the failure of the Borrower to return any and all Loaned Assets upon termination of the Loan;

(b) the failure of Borrower to pay any and all Loan Fees, Late Fees, or Early Termination Fees when due hereunder; however, Borrower shall have ten days to cure such default;

(c) the failure of either party to transfer Collateral or Additional Collateral as required by Section IV;

(d) a material default in the performance of any of the other agreements, conditions, covenants, provisions or stipulations contained in this Agreement, including without limitation a failure by Borrower to abide by its obligations in Section IV or V of this Agreement and Borrower's failure to cure said material default within ten days;

(e) any Event of Default (as such term is defined each applicable Loan Term Sheets) shall occur and shall be continuing beyond any applicable grace periods under such Loan Term Sheets;

(f) any bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for the relief of debtors or dissolution proceedings shall be instituted by or against the Borrower and shall not be dismissed within thirty (30) days of their initiation;

(g) any event or circumstance occurs or exists that is a material adverse effect on the business, operations, prospects, property, assets, liabilities or financial condition of, such party, taken as a whole, or a material adverse effect on the ability of Borrower to perform its obligations under the Loan Documents, including but not limited to the ability to return, transfer, repay, or pay any and all Loaned Assets, Loan Fees, and Late Fees.

(h) Borrower causes or permits any partner, member or other equity interest holder in Borrower to, directly or indirectly, transfer, convey, assign, mortgage, pledge, hypothecate, alienate or lease the partnership interest, membership interest or other equity interest of such partner, member, other equity interest holder in Borrower without Lender's prior written consent. Notwithstanding the foregoing, the Lender shall not unreasonably withhold such consent for transfers of membership interests for purposes of estate planning which do not result in a change of control of the Borrower.

(i) any representation or warranty made in any of the Loan Documents proves to be incorrect or untrue in any material respect as of the date of making or deemed making thereof;

(j) either party notifies the other of its inability to or its intention not to perform its obligations hereunder or otherwise disaffirms, rejects, or repudiates any of its obligations hereunder; or

12

## IX.    <u>Remedies</u>

(a) Upon the occurrence and during the continuation of any Event of Default, the Lender may, at its option: (1) declare the entire Loan Balance outstanding for any Loan hereunder immediately due and payable; (2) terminate this Agreement and any Loan upon notice to Borrower; (3) transfer any Collateral from the collateral account to Lender's operating account necessary for the payment of any liability or obligation or indebtedness created by this Agreement, including but not limited to using the Collateral to purchase the relevant Digital Currency to replenish Lender's supply of the relevant Digital Currency or selling any Collateral in a relevant market for such Digital Currency; (4) purchase on Lender's own account a like amount of Loaned Assets in a relevant market for such Digital Currency; (5) exercise its rights under Section XVI herein; and (6) exercise all other rights and remedies available to the Lender hereunder, under applicable law, or in equity; provided, that upon any Event of Default pursuant to Section VIII the Borrowed Amount and the amount of any Borrowing Fee then outstanding hereunder shall automatically become and be immediately due and payable.

(b) On the occurrence of any Event of Default under Sections VIII(e) or (f), this Agreement and all Loans made pursuant to this Agreement shall be terminated immediately and become due and payable.

(c) In the event that the purchase price of any replacement Digital Currency pursuant to subsections (a)(3) & (a)(4) above exceeds the amount of the Collateral, Borrower shall be liable to Lender for the amount of such excess together with interest thereon as specific in the Term Sheet. As security for Borrower's obligation to pay such excess, Lender shall have, and Borrower hereby grants, a security interest in any property of Borrower then held by or for Lender and a right of setoff with respect to such property and any other amount payable by Lender to Borrower. The purchase price of replacement Digital Currency purchased under this Section shall include, and the proceeds of any sale of Collateral shall be determined after deduction of, broker's fees and commissions and all other reasonable costs, fees and expense related to such purchase or sale (as the case may be). In the event Lender exercises its rights under this Section, Lender may elect in its sole discretion, in lieu of purchasing all or a portion of the replacement Digital Currencies or selling all or a portion of the Collateral, to be deemed to have made, respectively, such purchase of replacement Digital Currencies or sale of Collateral for an amount equal to the price therefor on the date of such exercise obtained from a generally recognized source.

(d) To the extent that the Loans are now or hereafter secured by property other than the Collateral, or by the guarantee, endorsement or property of any other person, then Lender shall have the right in its sole discretion to determine which rights, security, liens, security interests or remedies Lender shall at any time pursue, relinquish, subordinate, modify or take any other action with respect thereto, without in any way modifying or affecting any of them or any of Lender's rights hereunder.

13

(e) In connection with the exercise of its remedies pursuant to this Section IX, Lender may (i) exchange, enforce, waive or release any portion of the Collateral or Loans in favor of the Lender or relating to any other security for the Loans; (ii) apply such Collateral or security and direct the order or manner of sale thereof as the Lender may, from time to time, determine; and (iii) settle, compromise, collect or otherwise liquidate any such Collateral or security in any manner following the occurrence of an Event of Default, without affecting or impairing the Lender's right to take any other further action with respect to any Collateral or security or any part thereof.

(f) In addition to its rights hereunder, the non-defaulting party shall have any rights otherwise available to it under any other agreement or applicable law.

## X.    Rights and Remedies Cumulative.

No delay or omission by the Lender in exercising any right or remedy hereunder shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies hereunder.  All rights of the Lender stated herein are cumulative and in addition to all other rights provided by law, in equity.

## XI.    Survival of Rights and Remedies

All remedies hereunder and all obligations with respect to any Loan shall survive the termination of the relevant Loan, return of Loaned Assets or Collateral, and termination of this Agreement.

## XII.    Collection Costs.

In the event Borrower fails to pay any amounts due or to return any Digital Currency or upon the occurrence of any Event of Default in Section VIII hereunder,  Borrower shall, upon demand, pay to Lender all reasonable costs and expenses, including without limitation, reasonable attorneys' fees and court costs, broker fees, and technology costs incurred by the Lender in connection with the enforcement of its rights hereunder.

## XIII.    Governing Law; Dispute Resolution.

This Agreement is governed by, and shall be construed and enforced under, the laws of the State of New York without regard to any choice or conflict of laws rules.  If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through negotiation it shall be finally resolved by arbitration administered in the County of New York, State of New York by the American Arbitration Association under its Commercial Arbitration Rules, or such other applicable arbitration body as required by law or regulation, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  The parties agree to waive their rights to a jury trial.  If any proceeding is brought for the enforcement of this Agreement, then the successful or prevailing party shall be entitled to recover attorneys' fees and other costs incurred in such proceeding in addition to any other relief to which it may be entitled.

14

## XIV.    Notices.

Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by Express or certified mail (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a party may designate in accordance herewith), or to the respective address set forth below:

Borrower:
Three Arrows Capital Ltd
7 Temasek Boulevard #21-04
Singapore, Singapore 038987
Attn: Kyle Davis
Email: kyle@threearrowscap.com

Lender:
Genesis Global Capital, LLC
111 Town Square Place, Suite 1203
Jersey City, NJ 07310
Attn: Kristopher Johnson, Senior Risk Officer
Email: kristopher@genesiscap.co

Either party may change its address by giving the other party written notice of its new address as herein provided.

## XV.    Modifications.

All modifications or amendments to this Agreement shall be effective only when reduced to writing and signed by both parties hereto.

## XVI.    Single Agreement

Borrower and Lender acknowledge that, and have entered into this Agreement in reliance on the fact that, all Loans hereunder constitute a single business and contractual relationship and have been entered into in consideration of each other.  Accordingly, Borrower and Lender hereby agree that payments, deliveries, and other transfers made by either of them in respect of any Loan shall be deemed to have been made in consideration of payments, deliveries, and other transfers in respect of any other Loan hereunder, and the obligations to make any such payments, deliveries and other transfers may be applied against each other and netted.  In addition, Borrower and Lender acknowledge that, and have entered into this Agreement in reliance on the fact that, all Loans hereunder have been entered into in consideration of each other. Accordingly, Borrower and Lender hereby agree that (a) each shall perform all of its obligations in respect of each Loan hereunder, and that a default in the performance of any such obligation by Borrower or by Lender (the "Defaulting Party") in any Loan hereunder shall constitute a default by the Defaulting Party under all such Loans hereunder, and (b) the non-defaulting party shall be entitled to set off claims and apply property held by it in respect of any Loan hereunder against obligations owing to it in respect of any other Loan with the Defaulting Party.

## XVII. <u>Entire Agreement.</u>

This Agreement, each exhibit referenced herein, and all Loan Term Sheets constitute the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements. Nothing in this Section XVII shall be construed to conflict with or negate Section XVI above.

## XVIII. <u>Successors and Assigns.</u>

This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, that Borrower may not assign this Agreement or any rights or duties hereunder without the prior written consent of the other party (such consent to not be unreasonably withheld). Lender may assign this Agreement or any rights or duties hereunder upon notice to Borrower. Notwithstanding the foregoing, in the event of a change of control of Lender or Borrower, prior written consent shall not be required so such party provides the other party with written notice prior to the consummation of such change of control. For purposes of the foregoing, a "change of control" shall mean a transaction or series of related transactions in which a person or entity, or a group of affiliated (or otherwise related) persons or entities acquires from stockholders of the party shares representing more than fifty percent (50%) of the outstanding voting stock of such party.

## XIX. <u>Severability of Provisions.</u>

Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

## XX. <u>Counterpart Execution.</u>

This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by email or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by email or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

## XXI. <u>Relationship of Parties.</u>

Nothing contained in this Agreement shall be deemed or construed by the parties, or by any third party, to create the relationship of partnership or joint venture between the parties hereto, it being understood and agreed that no provision contained herein shall be deemed to create any relationship between the parties hereto other than the relationship of Borrower and Lender.

### XXII.  No Waiver.

The failure of or delay by Genesis to enforce an obligation or exercise a right or remedy under any provision of this Agreement or to exercise any election in this Agreement shall not be construed as a waiver of such provision, and the waiver of a particular obligation in one circumstance will not prevent Genesis from subsequently requiring compliance with the obligation or exercising the right or remedy in the future. No waiver or modification by either party of any provision of this Agreement shall be deemed to have been made unless expressed in writing and signed by both parties.

### XXIII. Indemnification.

Borrower shall indemnify and hold harmless Genesis from and against any and all claims, demands, losses, expenses and liabilities of any and every nature (including attorneys' fees of an attorney of Genesis' choosing to defend against any such claims, demands, losses, expenses and liabilities) that Genesis may sustain or incur or that may be asserted against Genesis arising out of Genesis' lending of Digital Currency to Borrower under this Agreement, except for any and all claims, demands, losses, expenses and liabilities arising out of or relating to Genesis's bad faith, gross negligence or willful misconduct in the performance of its duties under this Agreement.  This indemnity shall be a continuing obligation of Borrower, its successors and assigns, notwithstanding the termination of this Agreement.

### XXIV. Term and Termination.

The Term of this Agreement shall commence on the date hereof for a period of one year, and shall automatically renew for successive one-year terms annually, unless either party provides notice of a desire to terminate the contract no less than ten (10) days prior to the end of such one-year period.   The foregoing notwithstanding, this Agreement may be terminated as set forth in Section VIII or upon 30 days' notice by either party to the other.

In the event of a termination of this Agreement, any Loaned Assets shall be redelivered immediately and any fees owed shall be payable immediately.

### XXV.  Miscellaneous.

Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders where necessary and appropriate.  This Agreement is solely for the benefit of the parties hereto and their respective successors and assigns, and no other Person shall have any right, benefit, priority or interest under, or because of the existence of, this Agreement.  The section headings are for convenience only and shall not affect the interpretation or construction of this Agreement.  The Parties acknowledge that the Agreement and any Lending Request are the result of negotiation between the Parties which are represented by sophisticated counsel and therefore none of the Agreement's provisions will be construed against the drafter.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered as of the date first above written.

BORROWER:

Three Arrows Capital Ltd

By: *Su Zhu*
Su Zhu [Jan 10, 2019]

Name:  Su Zhu
Title:  CEO

LENDER:

GENESIS GLOBAL CAPITAL, LLC

By: *Kristopher Johnson*
Kristopher Johnson (Jan 10, 2019)

Name: Kristopher Johnson
Title: Senior Risk Officer

**EXHIBIT A**

Authorized Agents.  The following are authorized to deliver Lending Requests on behalf of Borrower in accordance with Section II hereof:

Name:
Email:

Name:
Email:

Borrower may change its Authorized Agents by notice given to Lender as provided herein.

**EXHIBIT B**

**LOAN TERM SHEET**

This loan agreement dated January 10th, 2019 between Genesis Global Capital, LLC ("Genesis") and Three Arrows Capital Ltd ("Borrower") incorporates all of the terms of the Master Digital Currency Loan Agreement between Genesis and Borrower on January 10th, 2019 and the following specific terms:

| | |
|---|---|
| Lender: | Genesis Global Capital, LLC |
| Borrower: | Three Arrows Capital Ltd |
| Borrowed Asset Type: | TRX |
| Amount of Borrowed Asset: | 5,500,000 TRX |
| Borrow Fee: | 22% |
| Loan Type: | Open Term |
| Loan Term: | Open |
| Collateral: | 80% of Loan Value |
| Margin Call Level: | 70% of Loan Value |
| Genesis BTC Address: | 3HjoAj61BnCsCsrvrkznJ4NCryHwNNjqmb |
| BTC Collateral: | 32 BTC |

GENESIS GLOBAL CAPITAL, LLC          Three Arrows Capital Ltd

By: *Kristopher Johnson*
    Kristopher Johnson (Jan 10, 2019)

By: *Su Zhu*
    Su Zhu (Jan 10, 2019)

Name: Kristopher Johnson
Title: Senior Risk Officer

Name: Su Zhu
Title: CEO

# Master Loan Agreement Three Arrows Capital

**Final Audit Report**                                              2019-01-10

| | |
|---|---|
| Created: | 2019-01-10 |
| By: | Matthew Ballensweig (matt@genesiscap.co) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA_q7UokOC9nje1cd-fNJB27UacITBGOMR |

## "Master Loan Agreement Three Arrows Capital" History

📄 Document created by Matthew Ballensweig (matt@genesiscap.co)
2019-01-10 - 2:32:28 PM GMT- IP address: 69.12.27.194

📤 Document emailed to Su Zhu (su.zhu@threearrowscap.com) for signature
2019-01-10 - 2:34:50 PM GMT

📄 Document viewed by Su Zhu (su.zhu@threearrowscap.com)
2019-01-10 - 2:47:56 PM GMT- IP address: 220.255.220.85

✍️ Document e-signed by Su Zhu (su.zhu@threearrowscap.com)
Signature Date: 2019-01-10 - 2:50:13 PM GMT - Time Source: server- IP address: 220.255.220.85

📤 Document emailed to Kristopher Johnson (kristopher@genesiscap.co) for signature
2019-01-10 - 2:50:15 PM GMT

📄 Document viewed by Kristopher Johnson (kristopher@genesiscap.co)
2019-01-10 - 2:54:47 PM GMT- IP address: 69.12.27.194

✍️ Document e-signed by Kristopher Johnson (kristopher@genesiscap.co)
Signature Date: 2019-01-10 - 2:55:48 PM GMT - Time Source: server- IP address: 69.12.27.194

✅ Signed document emailed to roshun@genesiscap.co, Kristopher Johnson (kristopher@genesiscap.co), Matthew Ballensweig (matt@genesiscap.co), and Su Zhu (su.zhu@threearrowscap.com)
2019-01-10 - 2:55:48 PM GMT

Adobe Sign

## **EXHIBIT H**

**Master Loan Agreement between Genesis Asia Pacific Pte. Ltd. and Three Arrows Capital Ltd dated January 24, 2020**

# MASTER LOAN AGREEMENT

This Master Loan Agreement ("Agreement") is made on this 24th day of January, 2020 ("Effective Date") by and between Genesis Asia Pacific PTE. LTD. ("Genesis" or "Lender"), a private limited company organized and existing under the laws of Singapore with its principal place of business at 3 Fraser Street #05-25 Duo Tower, Singapore 189352 and Arrows Capital Ltd ("Three Arrows Capital" or "Borrower") a limited liability company organized and existing under the laws of British Virgin Islands, with its registered office at 7 Temasek Boulevard #21-04 Singapore, Singapore 038987.

## RECITALS

**WHEREAS**, subject to the terms and conditions of this Agreement, Borrower may, from time to time, seek to initiate a transaction pursuant to which Lender will lend Digital Currency or U.S. Dollars to Borrower, and Borrower will pay a Loan Fee and return such Digital Currency or U.S. Dollars to Lender upon the termination of the Loan; and

Now, therefore, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, the Borrower and the Lender hereby agree as follows:

## I.    Definitions

"*Airdrop*" means a distribution of a new token or tokens resulting from the ownership of a preexisting token. For the purposes of Section V, an "*Applicable Airdrop*" is an Airdrop for which the distribution of new tokens can be definitively calculated according to its distribution method, such as a pro rata distribution based on the amount of the relevant Digital Currency held at a specified time.  A "*Non-Applicable Airdrop*" is an Airdrop for which the distribution of new tokens cannot be definitively calculated, such as a random distribution, a distribution to every wallet of the relevant Digital Currency, or a distribution that depends on a wallet of the relevant Digital Currency meeting a threshold requirement.

"*Authorized Agent*" has the meaning set forth in Exhibit A.

"*Borrower*" means Three Arrows Capital.

"*Borrowed Amount*" refers to the value of the Loaned Assets in U.S. dollars on the Loan Effective Date.

"*Borrower Email*" means kyle@threearrowscap.com

"*Business Day*" means a day on which Genesis is open for business, following the New York Stock Exchange calendar of holidays.

"*Business Hours*" means between the hours of 9:00 am to 5:00 pm New York time on a Business Day.

1

"***Call Option***" means Lender has the option to demand immediate payment of a portion or the entirety of the Loan Balance at any time, subject to this Agreement.

"***Close of Business***" means 5:00 pm New York time.

"***Collateral***" is defined as set forth in Section IV(a).

"***Digital Currency***" means Bitcoin (BTC), Bitcoin Cash (BCH), Ether (ETH), Ether Classic (ETC), or Litecoin (LTC), or any digital currency that the Borrower and Lender agree upon.

"***Digital Currency Address***" means an identifier of alphanumeric characters that represents a digital identity or destination for a transfer of Digital Currency.

"***Fixed Term Loan***" means a Loan with a pre-determined Maturity Date, where Borrower does not have a Prepayment Option and Lender does not have a Call Option.

"***Hard Fork***" means a permanent divergence in the blockchain (e.g., when non-upgraded nodes cannot validate blocks created by upgraded nodes that follow newer consensus rules, or an airdrop or any other event which results in the creation of a new token).

"***Lender***" means Genesis.

"***Loan***" means a request for a loan or an actual loan of Digital Currency or U.S. Dollars made pursuant to and in accordance with this Agreement and a Loan Term Sheet.

"***Loan Balance***" means the sum of all outstanding amounts of Loaned Assets, including New Tokens, Loan Fees, Late Fees, and any Earlier Termination Fee or New Token Fee for a particular Loan, as defined in Sections III and V.

"***Loan Documents***" means this Master Loan Agreement and any and all Loan Term Sheets entered into between Lender and Borrower.

"***Loan Effective Date***" means the date upon which a Loan begins.

"***Loan Fee***" means the fee paid by Borrower to the Lender for the Loan.

"***Loan Term Sheet***" means the agreement between Lender and Borrower on the particular terms of an individual Loan, which shall be memorialized in an agreement as set forth in Exhibit B or in a form approved by Lender comparable therewith.

"***Loaned Assets***" means any Digital Currency or U.S. Dollar amount transferred in a Loan hereunder until such Digital Currency (or identical Digital Currency) or U.S. Dollar amount is transferred back to Lender hereunder, except that, if any new or different Digital Currency is created or split by a Hard Fork or other alteration in the underlying blockchain and meets the requirements set forth in Section V of this Agreement, such new or different Digital Currency shall be deemed to become Loaned Assets in addition to the former Digital Currency for which

2

such exchange is made.  For purposes of return of Loaned Assets by Borrower or purchase or sale of Digital Currencies pursuant to Section IX, such term shall include Digital Currency of the same quantity and type as the Digital Currency, as adjusted pursuant to the preceding sentence.

"*Maturity Date*" means the pre-determined future date upon which a Loan becomes due in full.

"*Open Loan*" means a Loan without a Maturity Date where Borrower has a Prepayment Option and Lender has a Call Option.

"*Prepayment Option*" means the Borrower has the option to repay or return the Loaned Assets prior to the Maturity Date, subject to this Agreement.

"*Term*" means the period from the Loan Effective Date through Termination Date.

"*Term Loan with Call Option*" means a Loan with a pre-determined Maturity Date where Lender has a Call Option.

"*Term Loan with Prepayment Option*" means a Loan with a pre-determined Maturity Date where Borrower has a Prepayment Option.

"*Termination Date*" means the date upon which a Loan is terminated.

## II.    General Loan Terms.

(a) Loans of Digital Currency or U.S. Dollars

Subject to the terms and conditions hereof, Borrower may, in its sole and absolute discretion, request from the Lender a Loan to Borrower of a specified amount of Digital Currency or U.S. Dollars, and Lender may, in its sole and absolute discretion, extend such Loan or decline to extend such Loan on terms acceptable to Lender and as set forth in a corresponding Loan Term Sheet.

(b) Loan Procedure

From time to time during the Term of this Agreement, during the hours of 9:00 am New York time to 4:00 pm New York time on a Business Day (the "Request Day"), by email directed to lend@genesiscap.co (or such other address as Lender may specify in writing), an Authorized Agent of Borrower may request from Lender a Loan of a specific amount of Digital Currency or U.S. Dollars (a "Lending Request").  Provided Lender receives such Lending Request prior to 3:00 pm New York time, Lender shall by email directed to Borrower Email (or such other address as Lender may specify in writing) to inform Borrower whether Lender agrees to make such a Loan.  If Lender fails to provide Borrower with an acceptance as to a particular Lending Request prior to Close of Business on the Request Day, such Lending Request shall be deemed to have be denied by Lender.

As part of its Lending Request, Borrower shall provide the following proposed terms:

3

(i)     Whether U.S. Dollars or Digital Currency, and if Digital Currency, the type of Digital Currency;

(ii)    the amount of Digital Currency or U.S. Dollars;

(iii)   whether the Loan is to be a Fixed Term Loan, a Term Loan with Prepayment Option, or an Open Loan;

(iv)   the Loan Effective Date; and

(v)    the Maturity Date (if a Fixed Term Loan or a Term Loan with Prepayment Option).

If Lender agrees to make a Loan, Lender shall commence transmission to either (x) the Borrower's Digital Currency Address the amount of Digital Currency, or (y) Borrower's bank account by bank wire the amount of U.S. Dollars, as applicable, as such Digital Currency Address or bank wire instruction is set forth in the Lending Request on or before Close of Business on the Request Day.

The specific and final terms of a Loan shall be memorialized using the Loan Term Sheet. In the event of a conflict of terms between this Master Loan Agreement and a Loan Term Sheet, the terms in the Loan Term Sheet shall govern.

(c) <u>Loan Repayment Procedure</u>

(i) <u>Loan Repayment</u>

Unless otherwise specified in subsections (ii) and (iii) below, upon the earlier of the Maturity Date, the Recall Delivery Day, or the Redelivery Day (as defined below) for a Loan, Borrower shall repay the entirety of the Loan Balance to Lender by Close of Business.

(ii) <u>Call Option</u>

For Loans in which the Lender has a Call Option (e.g. Open Loans, etc.), Lender may during Business Hours (the "<u>Recall Request Day</u>") demand repayment of a portion or the entirety of the Loan Balance (the "<u>Recall Amount</u>"). Lender will notify Borrower of Lender's exercising of this right by email to Borrower's Email. Borrower will then have until Close of Business on the second Business Day after the Recall Request Day (the "<u>Recall Delivery Day</u>") to deliver the Recall Amount.

In the event of a Call Option where Lender demands only a portion of the Loan Balance, Borrower shall repay said portion of the Loan Balance on the Recall Delivery Day and the remaining portion of the Loan Balance on the earlier of the Maturity Date or the subsequent Recall Delivery Day.

(iii) <u>Prepayment Option</u>

For Loans in which Borrower has a Prepayment Option (e.g. Open Loans, Term Loans with Prepayment Option, etc.), Borrower may notify Lender during Business Hours of Borrower's

4

intent to return the Loan prior maturity or Lender's exercising of its Call Option without being subject to Early Termination Fees as set forth in Section III(d). Borrower shall provide said notice at least two Business Days prior to the date on which the Borrower will repay all or a portion of the Loan Balance (said later date, the "Redelivery Day"). Borrower's exercising of its Prepayment Option shall not relieve it of any of its obligations herein, including without limitation its payment of owed Loan Fees and Late Fees.

In the event of a Prepayment Option where the Borrower repays only a portion of the Loan Balance, Borrower shall repay said portion of the Loan Balance on the Redelivery Day and the remaining portion of the Loan Balance on the earlier of the Maturity Date, Recall Delivery Day, or subsequent Redelivery Day.

(d) Termination of Loan

A Loan will terminate upon the earlier of:

    (i)    the Maturity Date;

    (ii)    the repayment of the Loan Balance by Borrower prior to the Maturity Date;

    (iii)    the occurrence of an Event of Default as defined in Section VII; however, Lender shall have the right in its sole discretion to suspend the termination of a Loan under this subsection (iii) and reinstitute the Loan. In the event of reinstitution of the Loan pursuant to the preceding sentence, Lender does not waive its right to terminate the Loan hereunder; or

    (iv)    in the event any or all of the Loaned Assets becomes in Lender's sole discretion a risk of being: (1) considered a security, swap, derivative, or other similarly-regulated financial instrument or asset by any regulatory authority, whether governmental, industrial, or otherwise, or by any court of law or dispute resolution organization. arbitrator, or mediator; or (2) subject to future regulation materially impacting this Agreement, the Loan, or Lender's business.

Nothing in the forgoing shall cause, limit, or otherwise affect the Term and termination of this Agreement except as specified in Section XXIV.

**III.    Loan Fees and Transaction Fees.**

(a) Loan Fee

Unless otherwise agreed, Borrower agrees to pay Lender a financing fee on each Loan (the "Loan Fee"). When a Loan is executed, the Borrower will be responsible to pay the Loan Fee as agreed to herein and annualized in the relevant Loan Term Sheet and subject to change if thereafter agreed by Borrower and Lender. Except as Borrower and Lender may otherwise agree, Loan Fees shall accrue from and include the date on which the Loaned Digital Currencies are transferred to Borrower to the date on which such Loaned Digital Currencies are repaid in their

entirety to Lender.  For any Loan, the minimum Loan Fee shall be the Loan Fee that would accrue for one day.

Lender shall calculate any Loan Fees owed on a daily basis and provide Borrower with the calculation upon request.  The Loan Fee will be calculated off all outstanding portions of the Loaned Digital Currencies.  The Loan Fee is payable monthly by Borrower in arrears.

 (b) Origination Fee

For certain Loans, Lender may charge Borrower a fee (the "Origination Fee") to be paid at the time the Collateral is delivered to Lender.  If an Origination Fee applies to a Loan, the Loan Term Sheet shall set forth the amount of the Origination Fee and whether the Origination Fee is to be paid in U.S. Dollars or in a Digital Currency.

 (c) Late Fee

For each Calendar Day in excess of the Maturity Date or the Recall Delivery Day (whichever is applicable) in which Borrower has not returned the entirety of the Loaned Assets or failed to timely pay any outstanding Loan Fee in accordance with section III(c), Borrower shall incur an additional nominal fee (the "Late Fee") of a 10% (annualized, calculated daily) on all outstanding portions of the Loaded Digital Currencies and Loan Fees.  If a Late Fee is imposed under this Section III(b) due to an event that would constitute an Event of Default under Section VIII, the imposition of a Late Fee by the Lender does not constitute a waiver of its right to declare an Event of Default for the same event.

 (d) Payment of Loan Fees and Late Fees

Unless otherwise agreed, any Loan Fee or Late Fees payable hereunder shall be paid by Borrower upon the earlier of (i) five (5) Business Days after receipt of an invoice from Lender or (ii) the termination of all Loans hereunder (the "Payment Due Date").  An invoice for Loan Fees and any Late Fees (the "Invoice Amount") shall be sent out on the first Business Day of the month and shall include any Loan Fees, Late Fees, and Early Termination Fees incurred during the previous month.  Borrower shall have up to five Business Days from the date of said Invoice to pay the Invoice Amount.  Failure of Lender to timely send an invoice in accordance with the preceding sentence shall not be considered a material default under Section VIII(d) nor shall it relieve Borrower of its obligation to pay any Loan Fees, Late Fees, and Early Termination Fees owed herein nor negate any Event of Default resulting from Borrower's failure to timely pay such fees.  The Loan Fee, Late Fees, and Early Termination Fees shall be payable, unless otherwise agreed by the Borrower and Lender in the Loan Term Sheet, whether U.S. Dollars or Digital Currency on the same blockchain and of the same type that was loaned by the Lender during the Loan.

Notwithstanding the foregoing, in all cases, all Loan Fees, Late Fees, and Early Termination Fees shall be payable by Borrower immediately upon the occurrence of an Event of Default hereunder by Borrower.

(e) Early Termination Fees

For Fixed Term Loans and Term Loans with Call Options, if Borrower returns the Loaned Assets prior to the Maturity Date, Borrower shall pay to Lender a fee equal to thirty percent (30%) of the Loan Fee that would have accrued from the date of the repayment until the Maturity Date of the Loan (the "Early Termination Fee"). The Early Termination Fee is due with the repayment of the Loaned Assets. The Early Termination Fee shall not apply if Borrower returns the Loaned Assets to Lender in the event of a Hard Fork (as defined in Section IV) for the purposes of allowing Lender to split the tokens in accordance with Section IV (e).

(f) Taxes and Fees

All transfer or other taxes or third party fees payable with respect to the transfer, repayment, and/or return of any Loaned Assets or Collateral hereunder shall be paid by Borrower.

## IV.    Collateral Requirements

(a) Collateral

Unless otherwise agreed by the parties, or modified in the Loan Term Sheet or as set forth below, Borrower shall provide as collateral an amount of U.S. Dollars or Digital Currency (such choice at the sole discretion of the Lender) to be determined and agreed upon by the Borrower and Lender ("Collateral") and memorialized using the Loan Term Sheet. Unless otherwise agreed by the parties in the Loan Term Sheet, the Collateral shall initially be 120% of the value of the Loaned Assets, such value determined by a spot rate agreed upon in the Loan Term Sheet. Borrower shall, prior to or concurrently with the transfer of the Loaned Assets to Borrower, but in no case later than the Close of Business on the day of such transfer, transfer to Lender the agreed upon Collateral.

Collateral shall always be valued in U.S. Dollars, but Borrower may, if mutually agreed by both parties, provide the Collateral (in whole or in part) to Lender in Digital Currency in an amount equal to the value of the Collateral in U.S. Dollars at a spot rate determined by Lender. For the avoidance of doubt, upon the repayment of the Loaned Assets at the termination of a Loan, Lender shall return to Borrower the same amount and type of Collateral that was deposited, net of any Additional Collateral or Margin Call adjustments (as defined below in Section IV(c)). If a Hard Fork in the blockchain of the Digital Currency serving as Collateral meeting the criteria in Section V occurs while Lender is holding Digital Currency as Collateral, Lender shall return the New Tokens (as defined in Section V) to Borrower in addition to the Collateral and Additional Collateral. If such a Hard Fork occurs that does not meet the criteria in Section V, Lender shall have no obligation to return any New Tokens to Borrower.

The Collateral transferred by Borrower to Lender, as adjusted herein, shall be security for Borrower's obligations in respect of such Loan and for any other obligations of Borrower to Lender hereunder. Borrower hereby pledges with, assigns to, and grants Lender a continuing first priority security interest in, and a lien upon, the Collateral, which shall attach upon the transfer of the Loaned Assets by Lender to Borrower and which shall cease upon the return of

the Loaned Assets by Borrower to Lender. In addition to the rights and remedies given to Lender hereunder, Lender shall have all the rights and remedies of a secured party under the UCC.

During the term of the Loan, Borrower agrees and affirms Lender's entitlement to and use of the Collateral, including but not limited use in lending, investing, transferring to bank and other accounts upon which Lender, or a third party, is the account holder or the beneficiary, or re-pledging as collateral in other transactions involved with Lender's digital currency lending and borrowing business. Such entitlement and use shall not relieve Borrower or Lender of any of its obligations hereunder.

(b) Loan and Collateral Transfer

If Lender transfers Loaned Assets to Borrower and Borrower does not transfer Collateral to Lender as provided in Section IV(a), Lender shall have the absolute right to the return of the Loaned Assets; and if Borrower transfers Collateral to Lender, as provided in Section IV(a), and Lender does not transfer the Loaned Assets to Borrower, Borrower shall have the absolute right to the return of the Collateral.

(c) Margin Calls

If during the Term of a Loan the value of the Loaned Assets increases, or the value of the Collateral decreases, so that the value of the Loaned Assets becomes equal to or greater than the value of the Collateral (the "Margin Call Limit"), Lender shall have the right to require Borrower to contribute additional Collateral so that the Collateral is at least the same percentage indicated in Section IV(a) relative to the value of the Loaned Assets (the "Additional Collateral"). The parties may modify this standard in the Loan Term Sheet by (i) setting a different ratio of the value of the Loaned Assets and Collateral or (ii) the creation of a Margin Call rate to be indicated on the Loan Term Sheet, as measured by the spot rate published on GDAX (such rate, the "Margin Call Spot Rate") over the spot rate indicated in the Loan Term Sheet, or the prior Margin Call Spot Rate, as applicable. In the event of the creation of a Margin Call Spot Rate, Lender shall have the right to require Borrower to contribute Additional Collateral so that the Collateral is at least the same percentage in the applicable Loan Term Sheet, relative to the value of the Loaned Assets at the Margin Call Spot Rate.

In the event the value of the Loaned Assets decreases below the value of the Collateral, Lender may, at its sole discretion, return a portion of the Collateral in an amount determined by Lender; however, in such an event, Lender reserves its rights under this Section IV to request Borrower to contribute collateral up to the original amount of Collateral and also Additional Collateral if required.

If Lender requires Borrower to contribute Additional Collateral, it shall send an email notification (the "First Notification") to the Borrower at the email address indicated in Section XV (or such other address as the parties shall agree to in writing) that sets forth: (i) the value of the Loaned Assets, (ii) the value of the Collateral, (iii) the Margin Call Spot Rate, if applicable, and (iv) the amount of Additional Collateral required based on the Margin Call Limit or, if

8

applicable, the Margin Call Spot Rate. Borrower shall have six (6) hours from the time Lender sends such First Notification to (x) respond and send payment to Lender in accordance with subsection (d) below, or (y) respond that the value of the Loaned Assets, value of the Collateral, or spot rate as indicated on GDAX, as applicable, has decreased sufficiently such that it is no longer at or above the Margin Call Limit or, if applicable, the Margin Call Spot Rate. If Lender agrees by email that Borrower's response according to (y) above is correct, then no other action is required by Borrower. If Lender fails to agree by email with Borrower's response in accordance with (y) by Close of Business that same day, such shall be deemed as Lender's rejection of Borrower's response and a re-statement of Lender's original demand for Borrower to contribute Additional Collateral.

If Borrower fails to respond to the First Notification within six hours, or Lender rejects Borrower's response pursuant to (y) above, whether affirmatively by email or by non-reply as set forth above, Lender shall send a second email notification (the "Second Notification") repeating the information in provisions (i) – (iv) in the preceding paragraph. Borrower shall have three (3) hours from the time Lender sends the Second Notification to respond according to (x) or (y) in the preceding, and Lender has the right to accept or reject Borrower's response as stated above. Upon Lender's rejection of Borrower's response to the Second Notification, whether affirmatively by email or by non-reply by the Close of Business that same day, Borrower shall make immediate payment of Additional Collateral as set forth in Section IV(d) below. Failure to provide Additional Collateral, or failure by Borrower to respond to either the First Notification or the Second Notification, shall give Lender the option to declare an Event of Default under Section VII below.

Borrower acknowledges that its obligations hereunder, including those in this Section IV, continue regardless of Lender's request for Additional Collateral and Borrower's acceptance or rejection of the same.

(d) Payment of Additional Collateral

Payment of the Additional Collateral shall be made by bank wire to the account specified in the Loan Term Sheet or by a return of the amount of Loaned Assets necessary to make the Collateral percentage indicated in the Loan Term Sheet correct based on the Margin Call Limit or, if applicable, the Margin Call Spot Rate. For any return of Loaned Assets made in accordance with this Section, Borrower is still responsible for payment of any Early Termination Fees that apply to the particular Loan.

(e) Return of Collateral

Upon Borrower's repayment of the Loan and acceptance by Lender of the Loaned Assets into Lender's Digital Currency Address, with such delivery being confirmed on the relevant Digital Currency blockchain ten times, Lender shall initiate the return of Collateral within five Business Days to a bank account designated by Borrower or, where Digital Currency is Collateral, into an applicable Digital Currency Address on the behalf of Borrower.

V.    **Hard Fork**

(a) Notification

In the event of a public announcement of a future Hard Fork or an Airdrop in the blockchain for any Loaned Assets or Collateral, Lender shall provide email notification to Borrower.

(b) No Immediate Termination of Loans Due to Hard Fork

In the event of a Hard Fork in the blockchain for any Loaned Assets or an Airdrop, any outstanding Loans will not be automatically terminated. Borrower and Lender may agree, regardless of Loan type, either (i) to terminate the Loan without any penalties on an agreed upon date or (ii) for Lender to manage the Hard Fork on the behalf of Borrower. If the Lender manages the Hard Fork on behalf of Borrower, Borrower shall return the Loaned Assets to Lender two business days prior to the scheduled Hard Fork or Airdrop. Lender shall not be obligated to return any Collateral to the Borrower during the period in which Lender manages the Loaned Assets on the behalf of Borrower. Lender shall fork the Loaned Assets, and following the Hard Fork shall return to Borrower the Loaned Assets but not any New Tokens (as defined below). For any whole days in which Lender manages the Loan Digital Currency pursuant to this section, the Loan Fee for those days shall not accrue. Nothing herein shall relieve, waive, or otherwise satisfy Borrower's obligations hereunder, including without limitation, the return of the Loaned Assets at the termination of the Loan and payment of accrued Loan Fees, which includes the per diem amounts for days on which Borrower transfers Digital Currency to Lender and Lender transfers said Digital Currency back to Borrower pursuant to this section.

(c) Lender's Right to New Tokens

Genesis will receive the benefit and ownership of any incremental tokens generated as a result of a Hard Fork in the Digital Currency protocol or an Applicable Airdrop (the "New Tokens") if any two of the following four conditions are met:

- *Hash Power*: the average hash power mining the New Token on the 30th day following the occurrence of the Hard Fork or Applicable Airdrop (calculated as a 30-day average on such date) is at least 5% of the hash power mining the Loaned Assets on the day preceding the Hard Fork or Applicable Airdrop (calculated as a 3-day average of the 3 days preceding the Hard Fork).
- *Market Capitalization*: the average market capitalization of the New Token (defined as the total value of all New Tokens) on the 30th day following the occurrence the Hard Fork or Applicable Airdrop (calculated as a 30-day average on such date) is at least 5% of the average market capitalization of the Loaned Assets (defined as the total value of the Loaned Assets) (calculated as a 30-day average on such date).
- *24-Hour Trading Volume*: the average 24-hour trading volume of the New Token on the 30th day following the occurrence the Hard Fork or Applicable Airdrop (calculated as a 30-day average on such date) is at least 1% of the average 24-hour trading volume of the Loaned Assets (calculated as a 30-day average on such date).
- *Wallet Compatibility*: the New Token is supported by either BitGo wallets or Ledger wallets within 30 days of the Hard Fork or Applicable Airdrop.

10

For the above calculations, the source for the relevant data on the Digital Currency hash power, market capitalization, and 24-Hour trading volume will be blockchain.info (or, if blockchain.info does not provide the required information, bitinfocharts.com, and if neither provides the required information, the parties shall discuss in good faith to mutually agree upon another data source) and the source for the hash power of the New Token will be bitinfocharts.com (or, if bitinfocharts.com does not provide the required information, the parties shall discuss in good faith to mutually agree upon another data source prior to the 30-day mark of the creation of the New Token).

If the Hard Fork or Applicable Airdrop meets the criteria above, Borrower will have up to 60 days from the Hard Fork or Applicable Airdrop to transfer the New Tokens to Genesis. If sending the New Tokens to Genesis is burdensome, upon Lender's written agreement with Borrower, Borrower can reimburse Genesis for the value of the New Tokens by either (i) a one-time payment in the same Loaned Assets transferred as a part of the Loan reflecting the amount of the New Tokens owed using the spot rate determined by Lender in its reasonable discretion at the time of said repayment, or (ii) returning the borrowed Digital Currency so that Genesis can manage the split of the underlying digital tokens as described in Section IV(b) above. Alternatively, subject to Lender's written agreement, the parties may agree to other methods of making Lender whole for Borrower's failure to transfer New Tokens to Lender. In all cases, Borrower will be solely responsible for payment of additional costs incurred by any transfer method other than returning the New Tokens to Lender, including but not limited to technical costs, third party fees, and tax obligations for the transaction, including but not limited to a tax gross-up payment. For the avoidance of doubt, if Borrower returns a Loan to Lender prior to the 30th day following a Hard Fork, Borrower's obligations under this Section V shall continue for any New Tokens that meet the criteria in this subsection (c) for such Loan on the 30th day following the Hard Fork. Lender's rights to New Tokens as set forth in this Section shall survive the termination of the relevant Loan, return of the Loaned Assets, and termination of this Agreement. If Borrower fails to transfer the New Tokens to Lender, or provide alternative compensation to Genesis as agreed to in accordance with this subsection, within 60 days from the Hard Fork or Applicable Airdrop, such failure will be considered an Event of Default in accordance with Section VIII(b), and Borrower shall incur an additional fee (the "Hard Fork Fee") equal to 10% (annualized, calculated daily) of all outstanding portions of the Loaded Digital Currencies and Loan Fees. Lender's charging of the Hard Fork Fee does not constitute a waiver of its right to declare an Event of Default for the same event.

### VI.    Representations and Warranties.

The parties to this Agreement hereby make the following representations and warranties, which shall continue during the term of this Agreement and any Loan hereunder:

(a) Each party hereto (individually, a "Party", collectively the "Parties") represents and warrants that (i) it has the power to execute and deliver this Agreement, to enter into the Loans contemplated hereby and to perform its obligations hereunder, (ii) it has taken all necessary action to authorize such execution, delivery and performance, and (iii) this Agreement constitutes a legal, valid, and binding obligation enforceable against it in accordance with its terms.

11

(b) Each Party hereto represents and warrants that it has not relied on the other for any tax or accounting advice concerning this Agreement and that it has made its own determination as to the tax and accounting treatment of any Loan, any Digital Currency, Collateral, or funds received or provided hereunder.

(c) Each Party hereto represents and warrants that it is acting for its own account.

(d) Each Party hereto represents and warrants that it is a sophisticated party and fully familiar with the inherent risks involved in the transaction contemplated in this Agreement, including, without limitation, risk of new financial regulatory requirements, potential loss of money and risks due to volatility of the price of the Loaned Assets, and voluntarily takes full responsibility for any risk to that effect.

(e) Each Party represents and warrants that it is not insolvent and is not subject to any bankruptcy or insolvency proceedings under any applicable laws

(f) Each Party represents and warrants there are no proceedings pending or, to its knowledge, threatened, which could reasonably be anticipated to have any adverse effect on the transactions contemplated by this Agreement or the accuracy of the representations and warranties hereunder or thereunder.

(g) Each Party represents and warrants that to its knowledge the transactions contemplated in this Agreement are not prohibited by law or other authority in the jurisdiction of its place of incorporation, place of principal office, or residence and that it has necessary licenses and registrations to operate in the manner contemplated in this Agreement.

(h) Lender represents and warrants that it has, or will have at the time of the loan of any Digital Currency, the right to lend such Loaned Assets subject to the terms and conditions hereof.

(i) Borrower represents and warrants that it has, or will have at the time of return of any Loaned Assets, the right to lend such Loaned Assets subject to the terms and conditions hereof, and, free and clear of all liens and encumbrances other than those arising under this Agreement.

(j) Borrower represents and warrants that it has, or will have at the time of transfer of any Collateral, the right to grant a first priority security interest in said Collateral subject to the terms and conditions hereof.

## VII.    Covenants

Promptly upon (and in any event within seven (7) Business Days after) the execution of this Agreement, Borrower shall furnish Lender with Borrower's most recent audited annual and (if applicable) quarterly financial statements and any other financial statements mutually agreed upon by Borrower and Lender.  For each successive year, Borrower shall also furnish Lender

with Borrower's future audited annual financial statements by Borrower's fiscal year end or within seven (7) Business Days thereof.

## VIII.  Default

It is further understood that any of the following events shall constitute an event of default hereunder, and shall be herein referred to as an "Event of Default" or "Events of Default":

(a) the failure of the Borrower to return any and all Loaned Assets and any New Tokens as defined by Section V upon termination of any Loan;

(b) the failure of Borrower to pay any and all Loan Fees, Late Fees, or Early Termination Fees when due hereunder, or to remit any New Tokens or pay any New Token Fee in accordance with Section V; however, Borrower shall have ten days to cure such default;

(c) the failure of either Party to transfer Collateral or Additional Collateral, or a failure by Borrower to respond to Lender's First or Second Notifications, as required by Section IV;

(d) a material default by either Party in the performance of any of the other agreements, conditions, covenants, provisions or stipulations contained in this Agreement, including without limitation a failure by Borrower to abide by its obligations in Section IV or V of this Agreement and Borrower's failure to cure said material default within ten days;

(e) any Event of Default (as such term is defined each applicable Loan Term Sheets) caused by Borrower shall occur and shall be continuing beyond any applicable grace periods under such Loan Term Sheets, including but not limited to failure to make any payment due thereunder;

(f) Borrower's default in any other agreement or failure to perform any obligation with Genesis or any of its affiliates;

(g) any bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for the relief of debtors or dissolution proceedings that are instituted by or against the Borrower and are not be dismissed within thirty (30) days of the initiation of said proceedings;

(h) any event or circumstance occurs or exists that is a material adverse effect on the business, operations, prospects, property, assets, liabilities or financial condition of, such Party, taken as a whole, or a material adverse effect on the ability of Borrower to perform its obligations under the Loan Documents, including but not limited to the ability to return, transfer, repay, or pay any and all Loaned Assets, Loan Fees, and Late Fees;

(i) Borrower causes or permits any partner, member or other equity interest holder in Borrower to, directly or indirectly, transfer, convey, assign, mortgage, pledge, hypothecate, alienate or lease the partnership interest, membership interest or other equity interest of such partner, member, other equity interest holder in Borrower without Lender's prior written consent.  Notwithstanding the foregoing, the Lender shall not

13

unreasonably withhold such consent for transfers of membership interests for purposes of estate planning which do not result in a change of control of the Borrower;

(j) any representation or warranty made by either Party in any of the Loan Documents that proves to be incorrect or untrue in any material respect as of the date of making or deemed making thereof; or

(k) either Party notifies the other of its inability to or its intention not to perform its obligations hereunder, or otherwise disaffirms, rejects, or repudiates any of its obligations hereunder.

## IX.    Remedies

(a) Upon the occurrence and during the continuation of any Event of Default by Borrower, the Lender may, at its option:  (1) declare the entire Loan Balance outstanding for any Loan hereunder immediately due and payable; (2) terminate this Agreement and any Loan upon notice to Borrower; (3) transfer any Collateral from the collateral account to Lender's operating account necessary for the payment of any nonpayment, liability, obligation, or indebtedness created by this Agreement or by Genesis in furtherance of its performance hereunder and/or its lending business, including but not limited to using the Collateral to purchase the relevant Digital Currency to replenish Lender's supply of the relevant Digital Currency or selling any Collateral in a relevant market for such Digital Currency; (4) purchase on Lender's own account a like amount of Loaned Assets in a relevant market for such Digital Currency and then collect from Borrower amounts expended by Lender for such purchase ; (5) exercise its rights under Section XII herein; and (6) exercise all other rights and remedies available to the Lender hereunder, under applicable law, or in equity; provided, that upon any Event of Default pursuant to Section VIII as to a particular Loan, the entire Loan Balance then outstanding hereunder shall automatically become and be immediately due and payable.

(b) On the occurrence of any Event of Default under Sections VIII(g) or (h), this Agreement and any and all Loans made pursuant to this Agreement shall be terminated immediately and become due and payable, and Lender shall have immediate right to the Collateral to the fullest extent permitted herein and by law.

(c) In the event that the purchase price of any replacement Digital Currency pursuant to Section IX (a)(3) & (a)(4) above exceeds the amount of the Collateral, Borrower shall be liable to Lender for the amount of such excess together with interest thereon in the amount of 10% or as modified in the Term Sheet.  As security for Borrower's obligation to pay such excess, Lender shall have, and Borrower hereby grants, a security interest in any property of Borrower then held by or for Lender and a right of setoff with respect to such property and any other amount payable by Lender to Borrower.  The purchase price of replacement Digital Currency purchased under this Section shall include, and the proceeds of any sale of Collateral shall be determined after deduction of, broker's fees and commissions and all other reasonable costs, fees and expense related to such purchase or sale (as the case may be).  In the event Lender exercises its rights under this

14

Section, Lender may elect in its sole discretion, in lieu of purchasing all or a portion of the replacement Digital Currencies or selling all or a portion of the Collateral, to be deemed to have made, respectively, such purchase of replacement Digital Currencies or sale of Collateral for an amount equal to the price therefor on the date of such exercise obtained from a generally recognized source.

(d) To the extent that the Loans are now or hereafter secured by property other than the Collateral, or by the guarantee, endorsement or property of any other person, then upon an Event of Default by Borrower, Lender shall have the right in its sole discretion to determine which rights, security, liens, security interests or remedies Lender shall at any time pursue, relinquish, subordinate, modify or take any other action with respect thereto, without in any way modifying or affecting any of them or any of Lender's rights hereunder.

(e) In connection with the exercise of its remedies pursuant to this Section IX, Lender may (1) exchange, enforce, waive or release any portion of the Collateral or Loans in favor of the Lender or relating to any other security for the Loans; (2) apply such Collateral or security and direct the order or manner of sale thereof as the Lender may, from time to time, determine; and (3) settle, compromise, collect or otherwise liquidate any such Collateral or security in any manner following the occurrence of an Event of Default, without affecting or impairing the Lender's right to take any other further action with respect to any Collateral or security or any part thereof.

(f) In addition to its rights hereunder, the non-defaulting Party shall have any rights otherwise available to it under any other agreement or applicable law.

## X.  Rights and Remedies Cumulative.

No delay or omission by the Lender in exercising any right or remedy hereunder shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies hereunder.  All rights of the Lender stated herein are cumulative and in addition to all other rights provided by law, in equity.

## XI.  Survival of Rights and Remedies

All remedies hereunder and all obligations with respect to any Loan shall survive the termination of the relevant Loan, return of Loaned Assets or Collateral, and termination of this Agreement.

## XII.  Collection Costs.

In the event Borrower fails to pay any amounts due or to return any Digital Currency or upon the occurrence of any Event of Default in Section VIII hereunder,  Borrower shall, upon demand, pay to Lender all reasonable costs and expenses, including without limitation, reasonable attorneys' fees and court costs, broker fees, and technology costs incurred by the Lender in connection with the enforcement of its rights hereunder.

### XIII.   Governing Law; Dispute Resolution.

This Agreement is governed by, and shall be construed and enforced under, the laws of the State of New York without regard to any choice or conflict of laws rules. If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through negotiation it shall be finally resolved by arbitration administered in the County of New York, State of New York by the American Arbitration Association under its Commercial Arbitration Rules, or such other applicable arbitration body as required by law or regulation, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. The parties agree to waive their rights to a jury trial. If any preceding is brought for the enforcement of this Agreement, then the successful or prevailing party shall be entitled to recover attorneys' fees and other costs incurred in such proceeding in addition to any other relief to which it may be entitled.

### XIV.   Confidentiality.

(a) Each Party to this Agreement shall hold in confidence all information obtained from the other Party in connection with this Agreement and the transactions contemplated hereby, including without limitation any discussions preceding the execution of this Agreement (collectively, "Confidential Information"). Confidential Information shall not include information that the receiving Party demonstrates with competent evidence was, or becomes, (i) available to the public through no violation of this Section XIV, (ii) in the possession of the receiving Party on a non-confidential basis prior to disclosure, (iii) available to the receiving Party on a non-confidential basis from a source other than the other Party or its affiliates, subsidiaries, officers, directors, employees, contractors, attorneys, accountants, bankers or consultants (the "Representatives"), or (iv) independently developed by the receiving Party without reference to or use of such Confidential Information.

(b) Each Party shall (i) keep such Confidential Information confidential and shall not, without the prior written consent of the other Party, disclose or allow the disclosure of such Confidential Information to any third party, except as otherwise herein provided, and (ii) restrict internal access to and reproduction of the Confidential Information to a Party's Representatives only on a need to know basis; provided, however, that such Representatives shall be under an obligation of confidentiality at least as strict as set forth in this Section XIV.

(c) Each Party also agrees not to use Confidential Information for any purpose other than in connection with transactions contemplated by this Agreement.

(d) The provisions of this Section XIV will not restrict a Party from disclosing the other Party's Confidential Information to the extent required by any law, regulation, or direction by a court of competent jurisdiction or government agency or regulatory authority with jurisdiction over said Party; *provided* that the Party required to make such a disclosure uses reasonable efforts to give the other Party reasonable advance notice of such required disclosure in order to enable the other Party to prevent or limit such

16

disclosure. Notwithstanding the foregoing, Lender may disclose the other Party's Confidential Information without notice pursuant to a written request by a governmental agency or regulatory authority.

(e) The obligations with respect to Confidential Information shall survive for a period of three (3) years from the date of this Agreement. Notwithstanding anything in this agreement to the contrary, a Party may retain copies of Confidential Information (the "Retained Confidential Information") to the extent necessary (i) to comply with its recordkeeping obligations, (ii) in the routine backup of data storage systems, and (iii) in order to determine the scope of, and compliance with, its obligations under this Section XIV; provided, however, that such Party agrees that any Retained Confidential Information shall be accessible only by legal or compliance personnel of such Party and the confidentiality obligations of this Section XIV shall survive with respect to the Retained Confidential Information for so long as such information is retained.

## XV.    Notices.

Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by Express or certified (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a Party may designate in accordance herewith), or to the respective address set forth below:

Borrower:
Three Arrows Capital Ltd
7 Temasek Boulevard #21-04
Singapore, Singapore 038987
Attn: Kyle Davis
Email: kyle@threearrowscap.com

Lender:
Genesis Asia Pacific PTE. LTD.
3 Fraser Street #05-25
Duo Tower, Singapore 189352
Attn: Soichiro Moro, CEO
Email: michael@genesiscap.co

Either Party may change its address by giving the other Party written notice of its new address as herein provided.

## XVI.    Modifications.

All modifications or amendments to this Agreement shall be effective only when reduced to writing and signed by both parties hereto.

## XVII.    Single Agreement

17

Borrower and Lender acknowledge that, and have entered into this Agreement in reliance on the fact that, all Loans hereunder constitute a single business and contractual relationship and have been entered into in consideration of each other. Accordingly, Borrower and Lender hereby agree that payments, deliveries, and other transfers made by either of them in respect of any Loan shall be deemed to have been made in consideration of payments, deliveries, and other transfers in respect of any other Loan hereunder, and the obligations to make any such payments, deliveries and other transfers may be applied against each other and netted. In addition, Borrower and Lender acknowledge that, and have entered into this Agreement in reliance on the fact that, all Loans hereunder have been entered into in consideration of each other. Accordingly, Borrower and Lender hereby agree that (a) each shall perform all of its obligations in respect of each Loan hereunder, and that a default in the performance of any such obligation by Borrower or by Lender (the "Defaulting Party") in any Loan hereunder shall constitute a default by the Defaulting Party under all such Loans hereunder, and (b) the non-defaulting Party shall be entitled to set off claims and apply property held by it in respect of any Loan hereunder against obligations owing to it in respect of any other Loan with the Defaulting Party.

**XVIII. Entire Agreement.**

This Agreement, each exhibit referenced herein, and all Loan Term Sheets constitute the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements. Nothing in this Section XVIII shall be construed to conflict with or negate Section XVII above.

**XIX.    Successors and Assigns.**

This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, that Borrower may not assign this Agreement or any rights or duties hereunder without the prior written consent of the other Party (such consent to not be unreasonably withheld). Lender may assign this Agreement or any rights or duties hereunder upon notice to Borrower. Notwithstanding the foregoing, in the event of a change of control of Lender or Borrower, prior written consent shall not be required so such Party provides the other Party with written notice prior to the consummation of such change of control. For purposes of the foregoing, a "change of control" shall mean a transaction or series of related transactions in which a person or entity, or a group of affiliated (or otherwise related) persons or entities acquires from stockholders of the Party shares representing more than fifty percent (50%) of the outstanding voting stock of such Party. Neither this Agreement nor any provision hereof, nor any Exhibit hereto or document executed or delivered herewith, or Loan Term Sheet hereunder, shall create any rights in favor of or impose any obligation upon any person or entity other than the parties hereto and their respective successors and permitted assigns. For the avoidance of doubt, any and all claims and liabilities against Genesis arising in any way out of this Agreement are only the obligation of Genesis, and not any of its parents or affiliates, including but not limited to Digital Currency Group, Inc. and Genesis Global Trading, Inc. The Parties agree that none of Genesis' parents or affiliates shall have any liability under this Agreement nor do such related entities guarantee any of Genesis' obligations under this Agreement.

**XX.    Severability of Provisions.**

18

Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

### XXI. Counterpart Execution.

This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by email or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any Party delivering an executed counterpart of this Agreement by email or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

### XXII. Relationship of Parties.

Nothing contained in this Agreement shall be deemed or construed by the Parties, or by any third party, to create the relationship of partnership or joint venture between the parties hereto, it being understood and agreed that no provision contained herein shall be deemed to create any relationship between the parties hereto other than the relationship of Borrower and Lender.

### XXIII. No Waiver.

The failure of or delay by Genesis to enforce an obligation or exercise a right or remedy under any provision of this Agreement or to exercise any election in this Agreement shall not be construed as a waiver of such provision, and the waiver of a particular obligation in one circumstance will not prevent Genesis from subsequently requiring compliance with the obligation or exercising the right or remedy in the future. No waiver or modification by either Party of any provision of this Agreement shall be deemed to have been made unless expressed in writing and signed by both parties.

### XXIV. Indemnification.

A Party shall indemnify and hold harmless the other Party, or any of its parents or affiliates, from and against any and all third party claims, demands, losses, expenses and liabilities of any and every nature (including attorneys' fees of an attorney of Genesis' choosing to defend against any such claims, demands, losses, expenses and liabilities) that it may sustain or incur or that may be asserted against it arising out of Genesis' lending of Digital Currency to Borrower under this Agreement, except for any and all claims, demands, losses, expenses and liabilities arising out of or relating to that Party's bad faith, gross negligence or willful misconduct in the performance of its duties under this Agreement. This indemnity shall be a continuing obligation of Borrower, its successors and assigns, notwithstanding the termination of this Agreement.

### XXV. Term and Termination.

19

The Term of this Agreement shall commence on the date hereof for a period of one year, and shall automatically renew for successive one-year terms annually, unless either Party provides notice of a desire to terminate the contract no less than ten (10) days prior to the end of such one-year period.   The foregoing notwithstanding, this Agreement may be terminated as set forth in Section VIII or upon 30 days' notice by either Party to the other.

In the event of a termination of this Agreement, any Loaned Assets shall be redelivered immediately and any fees owed shall be payable immediately.

### XXVI. <u>Miscellaneous.</u>

Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders where necessary and appropriate.  This Agreement is solely for the benefit of the parties hereto and their respective successors and assigns, and no other Person shall have any right, benefit, priority or interest under, or because of the existence of, this Agreement.  The section headings are for convenience only and shall not affect the interpretation or construction of this Agreement.  The Parties acknowledge that the Agreement and any Lending Request are the result of negotiation between the Parties which are represented by sophisticated counsel and therefore none of the Agreement's provisions will be construed against the drafter.

DocuSign Envelope ID: C2108E14-08F4-453B-8DC4-432869F9FFD8

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered as of the date first above written.

BORROWER:

Three Arrows Capital Ltd

By: _____
040BC485CE864EB...

Name: Kyle Davies

Title:   Kyle Davies, Chairman

LENDER:

GENESIS ASIA PACIFIC PTE. LTD.

By: _____
F5D87DD05A1C4B3...

Name: Kristopher Johnson

Title:   Senior Risk Officer

21

## EXHIBIT A

Authorized Agents.  The following are authorized to deliver Lending Requests on behalf of Borrower in accordance with Section II hereof:

Name:
Email:

Name:
Email:

Borrower may change its Authorized Agents by notice given to Lender as provided herein.

## **EXHIBIT I**

**Assignment and Assumption of Master Loan Agreement between Genesis Global Capital, LLC, Genesis Asia Pacific Pte. Ltd., and Three Arrows Capital Ltd dated July 20, 2020**

## ASSIGNMENT AND ASSUMPTION OF
## MASTER LOAN AGREEMENT

This Assignment and Assumption of Master Loan Agreement (this "Assignment Agreement") is made and entered into as of July 20, 2020 by and among Genesis Global Capital, LLC, a Delaware limited liability company ("Assignor"), Genesis Asia Pacific Pte. Ltd., a corporation organized and existing under the laws of Singapore ("Assignee"), and Three Arrows Capital Ltd., a corporation organized and existing under the laws of Singapore ("Counterparty").

WHEREAS, Assignor and Counterparty are parties to that certain Master Loan Agreement dated the 10th of January, 2019 (the "Agreement"), pursuant to which Assignor makes loans to Counterparty;

WHEREAS, Assignor wishes to assign to Assignee all of its lending activities, including any outstanding loans and related Collateral under the Agreement (such loans, the "Outstanding Loans");

WHEREAS, Assignor and Counterparty are parties to that certain Pledge Agreement, dated as of May 28, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "Pledge Agreement"); and

WHEREAS, Assignor wishes to assign to Assignee all of its rights and obligations under the Pledge Agreement.

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

**1. Capitalized Terms.** Capitalized terms used but not defined herein shall have the same meanings that are set forth for such terms in the Agreement.

**2. Assignment and Assumption.** Effective as of the date hereof, Assignor hereby assigns, contributes, transfers and sets over (collectively, the "Assignment") to Assignee all of Assignor's right, title, benefit, privileges and interest in and to, and all of Assignor's burdens, obligations and liabilities in connection with, the Agreement, including any Outstanding Loans and related Collateral, and the Pledge Agreement. Assignee hereby accepts the Assignment and assumes and agrees to observe and perform all of the duties, obligations, terms, provisions and covenants, and to pay and discharge all of the liabilities of Assignor to be observed, performed, paid or discharged from and after the date hereof, in connection with the Agreement, including all obligations and Collateral relating to the Outstanding Loans, and the Pledge Agreement. As of the date hereof, Assignor shall have no obligation to and shall receive no benefit from Counterparty with regard to any Outstanding Loans or related Collateral.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Assignment as of the date first set forth above.

**ASSIGNOR**
**GENESIS GLOBAL CAPITAL, LLC**

By: *Kristopher Johnson*
_____
E5D870D05A1C4B3...
Name: Kristopher Johnson
Title:
Senior Risk Officer

**ASSIGNEE**
**GENESIS ASIA PACIFIC PTE. LTD.**

By: *Reed Werbitt*
_____
E4525138479E4D9...
Name: Reed Werbitt
Title: Director

**Acknowledged by:**
**THREE ARROWS CAPITAL LTD.**

By _____
15665D323744445...
Name: Kyle Davies
Title:
Chairman

## **EXHIBIT J**

**Assignment and Assumption Agreement between Genesis Asia Pacific Pte. Ltd. and Digital Currency Group, Inc., dated June 30, 2022**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (this "**Agreement**"), effective as of June 30, 2022 (the "**Effective Date**"), is entered into by and between GENESIS ASIA PACIFIC PTE. LTD., a company organized and existing under the laws of Singapore ("**Assignor**"), and DIGITAL CURRENCY GROUP, INC., a Delaware corporation ("**Assignee**").

W I T N E S S E T H:

**WHEREAS**, Assignor is an affiliate of Genesis Global Capital LLC, a Delaware limited liability company ("**GGC**");

**WHEREAS**, before the date of this Agreement, Assignor has made or assumed loans and other financial accommodations (collectively, the "**TAC Loans**") from time to time to Three Arrows Capital Ltd., a company organized and existing under the laws of the British Virgin Islands ("**TAC**");

**WHEREAS**, the TAC Loans were funded with working capital provided from time to time by GGC, evidenced by book-entry intercompany transfers from GGC to Assignor and resulting in non-interest bearing accounts payable from Assignor to GGC (the "**Intercompany Payables**");

**WHEREAS**, as of June 30, 2022, the parties agree that the aggregate principal amount of the Intercompany Payables, after giving effect to all repayments and recoveries in respect of the TAC Loans (and taking into account the value of any potential realization on any TAC Collateral (defined below)) as of such date, is $1,100,000,000.00 (the "**Assumed Liability**");

**WHEREAS**, TAC has defaulted on the TAC Loans and, except for expected recoveries from the realization by Assignor of collateral provided by TAC to secure certain of the TAC Loans (the "**TAC Collateral**"), Assignor has substantial doubts that it will be able to recover any additional amounts from TAC in respect of the TAC Loans;

**WHEREAS**, notwithstanding the foregoing, the Assumed Liability shall be reduced in accordance with the terms of the Note (defined below) to reflect any repayment or other recoveries (including any further realization on the TAC Collateral) in respect of the TAC Loans after the date of this Agreement; and

**WHEREAS**, contemporaneously with the entry into of this Agreement, Assignee is issuing a promissory note to GGC to evidence Assignee's obligations in respect of the Assumed Liability and to memorialize the terms of the repayment thereof (the "**Note**").

**NOW, THEREFORE**, for and in consideration of the premises and the mutual covenants and agreements set forth herein, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement (each, a "**Party**" and together, the "**Parties**") hereby agree as follows:

1.    Effective as of the Effective Date, Assignor hereby assigns to Assignee all of Assignor's rights and obligations in relation to the Assumed Liability (the "**Assignment**").  GGC hereby consents to the Assignment.

2.    Effective as of the Effective Date, Assignee accepts the Assignment and assumes the performance of all of the obligations imposed on Assignee under the Assumed Liability and agrees to comply with, abide by and perform all of the terms of the Assumed Liability (the "**Assumption**").

3.    The Assignment and the Assumption contained herein shall bind and inure to the benefit of the Parties and their respective successors and assigns.

4.    This Agreement may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement in writing signed by an authorized representative of the Parties or their respective successors or assigns.

5.    No amendment or waiver of any provision of this Agreement and no consent to any departure therefrom shall in any event be effective unless the same shall be in writing and signed by the Parties.  Any such amendment, waiver, or consent shall be effective only in the specific instance and for the specific purpose for which given.

6.    The provisions of this Agreement are intended to be severable.  If any provision of this Agreement shall be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability thereof in any other jurisdiction or the remaining provisions hereof in any jurisdiction.

7.    THIS AGREEMENT AND ANY CLAIM, CONTROVERSY OR DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT, WHETHER IN TORT, CONTRACT (AT LAW OR IN EQUITY) OR OTHERWISE, SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES THAT WOULD RESULT IN THE APPLICATION OF ANY LAW OTHER THAN THE LAW OF THE STATE OF NEW YORK.

8.    This Agreement may be executed in any number of counterparts, and by different parties in separate counterparts, each of which when so executed and delivered shall be deemed an original but all of which when taken together shall constitute but one and the same instrument.  Any signature delivered by a Party by electronic mail or pdf format shall be deemed to be an original signature hereto.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed and delivered as of the Effective Date.

GENESIS ASIA PACIFIC PTE. LTD.,
as Assignor

By: _____
Print:  S. Michael Moro
Title:  Director

DIGITAL CURRENCY GROUP, INC.,
as Assignee

By: _____
Print:
Title:

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed and delivered as of the Effective Date.

**GENESIS ASIA PACIFIC PTE. LTD.,**
as Assignor

By: _____
Print:
Title:


**DIGITAL CURRENCY GROUP, INC.,**
as Assignee

By: _____
Print:  Barry E. Silbert
Title:   Chief Executive Officer

**Solely for purposes of consenting to the Assignment pursuant to Section 1 of this Agreement:**

GENESIS GLOBAL CAPITAL, LLC

By: Genesis Global Holdco, LLC, its sole member

By: _____

Name:    C. Michael Moro

Title:    CEO

## **EXHIBIT K**

**Assignment and Assumption of Master Loan Agreement between Genesis Asia Pacific Pte.
Ltd. and Digital Currency Group, Inc., dated July 14, 2022**

DocuSign Envelope ID: 2642EDE9-377E-4688-968C-E1923BF95939

# ASSIGNMENT AND ASSUMPTION OF
# MASTER LOAN AGREEMENT

This Assignment and Assumption of Master Loan Agreement (this "Assignment Agreement") is made and entered into as of July 14, 2022, by and among Genesis Asia Pacific Pte. Ltd., a corporation organized and existing under the laws of Singapore ("Assignor") and Digital Currency Group, Inc., a Delaware corporation ("Assignee").

WHEREAS, Assignor and Three Arrows Capital Ltd., a corporation organized and existing under the laws of the British Virgin Islands ("Counterparty") are, among others, parties to (i) that certain Master Loan Agreement, dated as of January 10, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "2019 Agreement") and (ii) that certain Master Loan Agreement, dated as of January 24, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "2020 Agreement", and together with the 2019 Agreement, collectively, the "Agreements"), in each case, pursuant to which Assignor has extended loans to Counterparty;

WHEREAS, Assignor and Counterparty are parties to (i) that certain Pledge Agreement, dated as of January 27, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "2022 Pledge Agreement"), (ii) that certain Pledge Agreement, dated as of May 28, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "2020 Pledge Agreement") and (iii) that certain Pledge Agreement, dated as of November 16, 2021 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "2021 Pledge Agreement", and together with the 2022 Pledge Agreement and the 2020 Pledge Agreement, collectively, the "Pledge Agreements");

WHEREAS, Assignor wishes to assign to Assignee all of its lending activities with Counterparty, including any outstanding loans (such loans, the "Outstanding Loans");

WHEREAS, Assignor wishes to assign to Assignee all of its rights and obligations under the Pledge Agreements and related Collateral under the Agreements and the Pledge Agreements (collectively with the Outstanding Loans, the "Assigned Interests");

WHEREAS, Assignor is an affiliate of Assignee and Assignor and Assignee previously entered into that certain Assignment and Assumption Agreement, dated as of June 30, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time), and that certain Promissory Note, dated as of June 30, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time), which were, in each case, entered into solely for purposes of internal accounting as an accommodation among affiliates without giving effect to any change in beneficial ownership of the loans or other interests purported to be transferred therein; and

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

1. **Capitalized Terms.** Capitalized terms used but not defined herein shall have the same meanings that are set forth for such terms in the Agreements.

2. **Assignment and Assumption.** Effective as of the date hereof, Assignor hereby assigns, contributes, transfers and sets over (collectively, the "Assignment") to Assignee all of Assignor's right, title, benefit, privileges and interest in and to, and all of Assignor's burdens, obligations and liabilities in connection with, the Assigned Interests. Assignee hereby accepts the Assignment and assumes and agrees to observe and perform all of the duties, obligations, terms, provisions and covenants, and to pay and discharge all of the liabilities of Assignor to be observed, performed, paid or discharged from and after the date hereof, in connection with the Assigned Interests. As of the date hereof, Assignor shall have no obligation to, and shall receive no benefit from Counterparty with respect to, the Assigned Interests

3. **Miscellaneous**.

    a. This Assignment Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

    b. The provisions of this Assignment Agreement are intended to be severable. If any provision of this Assignment Agreement shall be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability thereof in any other jurisdiction or the remaining provisions hereof in any jurisdiction.

    c. THIS ASSIGNMENT AGREEMENT AND ANY CLAIM, CONTROVERSY OR DISPUTE ARISING UNDER OR RELATED TO THIS ASSIGNMENT AGREEMENT, WHETHER IN TORT, CONTRACT (AT LAW OR IN EQUITY) OR OTHERWISE, SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES THAT WOULD RESULT IN THE APPLICATION OF ANY LAW OTHER THAN THE LAW OF THE STATE OF NEW YORK.

    d. This Assignment Agreement may be executed in any number of counterparts, and by different parties in separate counterparts, each of which when so executed and delivered shall be deemed an original but all of which when taken together shall constitute but one and the same instrument. Any signature delivered by a Party by electronic mail or pdf format shall be deemed to be an original signature hereto.

WEIL:\98719122\6\41531.0003

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Assignment as of the date first set forth above.

**ASSIGNOR:**                              **ASSIGNEE:**

**Genesis Asia Pacific Pte. Ltd.**        **Digital Currency Group, Inc.**

By: *Arianna Pretto-Sakmann*              By: *Michael Katz*
    Name: Arianna Pretto-Sakmann             Name: Michael Katz
    Title: Director                          Title: Director of Legal and Regulatory

[Signature Page to Master Loan Agreement Assignment and Assumption]

## **EXHIBIT L**

## **Telegram communications involving Debtors and Three Arrows Capital Ltd**

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| **S** | **s** | 1/9/2022, 5:46 AM |
| | Hi anyone around? | |
| **MC** | **Marc Chan** | 1/9/2022, 5:47 AM |
| | Hi | |
| **MC** | **Marc Chan** | 1/9/2022, 5:47 AM |
| | How can I help? | |
| **S** | **s** | 1/9/2022, 5:47 AM |
| | pls buy 5k btc 24hrs | |
| **MC** | **Marc Chan** | 1/9/2022, 5:47 AM |
| | Are you looking to borrow the funds? | |
| **S** | **s** | 1/9/2022, 5:47 AM |
| | Could you pls quote a rate? | |
| **S** | **s** | 1/9/2022, 5:47 AM |
| | Will decide after quote | |
| **MC** | **Marc Chan** | 1/9/2022, 5:48 AM |
| | give me a sec | |
| **S** | **s** | 1/9/2022, 5:54 AM |
| | Sure | |
| **MC** | **Marc Chan** | 1/9/2022, 5:55 AM |
| | thanks just trying to move some funds about and checking with lending | |
| **L** | **Leroy-exgenesis** | 1/9/2022, 6:01 AM |
| | Hi Su, we can lend you half the size... 2.5k BTC equivalent in cash at 10%... let us know if that works for you | |
| **S** | **s** | 1/9/2022, 6:01 AM |
| | Ok sure, let's do 2.5k btc 24hrs | |
| > **WK** | **Wee Kuo** | 1/10/2022, 6:12 AM |
| | This order is done. | |

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Quantity: 2,500
Price: $41,997.64
Value: $104,994,100

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| **L** | **Leroy-exgenesis** | 1/10/2022, 12:00 AM |

Hi Su, we can do the full size of 200mio, if we can meet in the middle of 11%, 1:1 versus BTC/ETH. It might be a mix of USDT/USD. We can settle later when NY gets in...

| | | |
|---|---|---|
| **S** | **s** | 1/10/2022, 1:06 AM |

ok. pls buy $200m of BTC v USD for 48hrs starting at 8pm SGT today (in 6hrs)

| | | |
|---|---|---|
| **> RW** | **Reed Werbitt** | 1/10/2022, 11:28 AM |

Hey @btcmaximalist, i think there was some confusion here.  Originally the order was for 48 hrs as instructed.  In error we confirmed 24 hr twap this am.  Happy to adjust and do whatever you like.

| | | |
|---|---|---|
| **WK** | **Wee Kuo** | 1/10/2022, 1:07 AM |

Hey Su

| | | |
|---|---|---|
| **WK** | **Wee Kuo** | 1/10/2022, 1:14 AM |

We will get this going

| | | |
|---|---|---|
| **WK** | **Wee Kuo** | 1/10/2022, 1:14 AM |

above.

| | | |
|---|---|---|
| **WK** | **Wee Kuo** | 1/10/2022, 1:15 AM |

And will confirm here once live at 8pm SGT

| | | |
|---|---|---|
| **S** | **s** | 1/10/2022, 1:17 AM |

Ty

| | | |
|---|---|---|
| **WK** | **Wee Kuo** | 1/10/2022, 6:12 AM |

We will be starting the new twap in just over 45 mins

| | | |
|---|---|---|
| **> S** | **s** | 1/10/2022, 6:13 AM |

Acknowledged ty

| | | |
|---|---|---|
| **IG** | **Ivan Lim | Genesis** | 1/10/2022, 6:49 AM |

25 March Fwd TWAP Done.

TAC buys 1,000x 25Mar22 BTC at 42,731.27
- Full unwind of fwd position
Above will be booked as a synthetic fwd (put/call combo, same strike zero cost)

| | | |
|---|---|---|
| **> N** | **Ningxin**  EDITED | 1/10/2022, 7:04 AM |

btw there is a 200 btc IM posted for the original forward, now that the forward is closed, the btc is no longer needed for this right?

| | | |
|---|---|---|
| **GG** | **Greg Guttas Genesis** | 1/10/2022, 7:00 AM |

24 hour TWAP has begun for $200m USD

> **GG**     **Greg Guttas Genesis**                                                          1/10/2022, 11:22 AM
>         hey just want to confirm typo here - twap is in fact working over 48 hours

**N**      **Ningxin**                                                                      1/10/2022, 7:00 AM
        ty

**N**      **Ningxin**                                                                      1/10/2022, 7:05 AM
        great ty

**GG**     **Greg Guttas Genesis**                                                          1/10/2022, 11:24 AM
        ty

**S**      **s**                                                                            1/10/2022, 11:26 AM
        because you guys said 24hr

**S**      **s**                                                                            1/10/2022, 11:26 AM
        so we still need it as such

**GG**     **Greg Guttas Genesis**                                                          1/10/2022, 11:26 AM
        gotcha ok can speed it up

**S**      **s**                                                                            1/10/2022, 11:26 AM
        no its fine

**S**      **s**                                                                            1/10/2022, 11:26 AM
        just next time pls be careful

**GG**     **Greg Guttas Genesis**                                                          1/10/2022, 11:26 AM
        ok understood

**GG**     **Greg Guttas Genesis**                                                          1/10/2022, 11:26 AM
        apologies for that

**S**      **s**                                                                            1/10/2022, 11:30 AM
        we'd like the fills for what uve done as 24hrs, as we've hedged it on this side as 24hrs

**S**      **s**                                                                            1/10/2022, 11:30 AM
        nx didnt notice that i had asked for 48hrs earlier, and when she saw the reply of 24hrs she did it accordingly

**S**      **s**                                                                            1/10/2022, 11:31 AM
        anyway, fortunately a small order and we caught this in time

**RW**     **Reed Werbitt**                                                                 1/10/2022, 11:31 AM
        we'll adjust accordingly

**S**      **s**                                                                            1/10/2022, 11:32 AM
        how will it be adjusted?

**RW**     **Reed Werbitt**                                                                 1/10/2022, 11:35 AM
        the order was working over 48 hours.  Now you'd like it be 24 hours, and because we mistakenly confirmed 24 hours this
        am, we are filling in the delta at that average price that would have received over 24 hours.

**S**      **s**                                                                            1/10/2022, 11:35 AM
        ok noted ty. and we can continue it as 24hrs in that case

**RW**     **Reed Werbitt**                                                                 1/10/2022, 11:35 AM
        ok

**S**  s                                                                    1/10/2022, 11:35 AM
appreciate it Reed

**RW**  Reed Werbitt                                                        1/10/2022, 11:35 AM
no problem

**MB**  Matt Ballensweig                                                    1/10/2022, 3:25 PM
hey @btcmaximalist - was able to snag a bit more USD this AM let us know if you need a bit more

> **S**  s                                                                  1/10/2022, 6:03 PM
How much usd?

**HG**  Hamill @ Genesis                                                    1/10/2022, 3:58 PM
*Joined the conversation*

**MB**  Matt Ballensweig                                                    1/10/2022, 6:03 PM
Can do another 100-200mm same terms if needed

**S**  s                                                                    1/10/2022, 6:31 PM
Ok cool, will let u know in NY am if anything, ty

**MB**  Matt Ballensweig                                                    1/10/2022, 6:35 PM
Thx Su sg!

**DU**  Deleted Account (user974550997)                                     1/10/2022, 6:55 PM
hey @Ningxin_TAC sry for the delay working with the team now on this

**N**  Ningxin                                                              1/10/2022, 7:52 PM
no problem, see it now

**IG**  Ivan Lim | Genesis                                                  1/10/2022, 7:53 PM
Great. Tks.

**Short Message Report**

| | |
|---|---|
| Conversations: 1 | Participants: 31 |
| Total Messages: 19 | Date Range: 1/11/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** • 19 messages on 1/11/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

**GG**  **Greg Guttas Genesis**                                                1/11/2022, 7:01 AM
Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Quantity: 4,793.33534653
Price: $41,724.6
Value: $200,000,000

**N**  **Ningxin**                                                             1/11/2022, 7:01 AM
thank you

**GG**  **Greg Guttas Genesis**                                                1/11/2022, 7:01 AM
no problem!

**N**  **Ningxin**                                                             1/11/2022, 7:01 AM
could u pls do another $200mio btcusd buy twap over 72 hours?

**L**  **Leroy-exgenesis**                                                     1/11/2022, 7:01 AM
Hi Ningxin

**L**  **Leroy-exgenesis**                                                     1/11/2022, 7:01 AM
moment

**L**  **Leroy-exgenesis**                                                     1/11/2022, 7:07 AM
good to go Ningxin, spot desk will set it up for you

**GG**  **Greg Guttas Genesis**                                                1/11/2022, 7:07 AM
thanks Leroy

**N**  **Ningxin**                                                             1/11/2022, 7:07 AM
great, pls lmk when up

**GG**  **Greg Guttas Genesis**                                                1/11/2022, 7:08 AM
order is live

**MB**  **Matt Ballensweig**                                                   1/11/2022, 7:32 AM
Confirming this will be adding to loan balance as well at same terms as yesterday?

**N**  **Ningxin**                                                             1/11/2022, 7:45 AM
Yes confirmed

**MB**  **Matt Ballensweig**                                                   1/11/2022, 7:45 AM
Cool thanks!

**N**  **Ningxin**                                                             1/11/2022, 8:51 PM
hi team, could u pls stop the twap

**MC**  **Marc Chan**                                                          1/11/2022, 8:51 PM

hi Ningxin

**Marc Chan**                                                    1/11/2022, 8:51 PM
sure stopping the twap right now

**Ningxin**                                                      1/11/2022, 8:52 PM
thank you

**Marc Chan**                                                    1/11/2022, 8:56 PM
Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Quantity: 913.63
Price: $42,473.38
Value: $38,804,954.17

**Ningxin**                                                      1/11/2022, 8:56 PM
ok, will book to loan/collateral

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| N | **Ningxin** | 2/20/2022, 7:58 PM |
| | hi team, sent you 1mio FTT for return & 610 BTC for margin top up via FBN | |

| | | |
|---|---|---|
| L | **Leroy-exgenesis** | 2/20/2022, 7:58 PM |
| | Hi Ningxin | |

| | | |
|---|---|---|
| N | **Ningxin** | 2/20/2022, 7:58 PM |
| | more will follow to cover the margin call | |

| | | |
|---|---|---|
| N | **Ningxin** | 2/20/2022, 7:58 PM |
| | most probably in BTC or GBTC, will let you know | |

| | | |
|---|---|---|
| L | **Leroy-exgenesis** | 2/20/2022, 8:25 PM |
| | just to confirm that FTT and BTC are well rcv | |

| | | |
|---|---|---|
| L | **Leroy-exgenesis** | 2/20/2022, 8:25 PM |
| | thanks | |

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 15 | Date Range: 2/23/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** • 15 messages on 2/23/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| N | **Ningxin** | 2/23/2022, 3:05 AM |
| | hi team, may i check the current rate to borrow ATOM? | |

| | | |
|---|---|---|
| WK | **Wee Kuo** | 2/23/2022, 3:08 AM |
| | Hi Ningxin, see you here | |

| | | |
|---|---|---|
| WK | **Wee Kuo** | 2/23/2022, 3:08 AM |
| | get back to you shortly | |

| | | |
|---|---|---|
| L | **Leroy-exgenesis** | 2/23/2022, 3:09 AM |
| | How much are you looking for Ningxin | |

| | | |
|---|---|---|
| N | **Ningxin** | 2/23/2022, 3:10 AM |
| | say 100k units? | |

| | | |
|---|---|---|
| L | **Leroy-exgenesis** | 2/23/2022, 3:12 AM |
| | Can lend at 15% 1:1 OT | |

| | | |
|---|---|---|
| N | **Ningxin** | 2/23/2022, 3:13 AM |
| | got it, thank you | |

| | | |
|---|---|---|
| L | **Leroy-exgenesis** | 2/23/2022, 3:14 AM |
| | Let us know when you have a firm interest. | |

| | | |
|---|---|---|
| N | **Ningxin** | 2/23/2022, 3:14 AM |
| | will do | |

| | | |
|---|---|---|
| N | **Ningxin** | 2/23/2022, 8:54 AM |
| | hi @mballen4791 , believe the ETHE shares should arrive soon, happy to top up the rest in BTC, does 350 BTC work? | |

| | | |
|---|---|---|
| HG | **Hamill @ Genesis** | 2/23/2022, 8:57 AM |
| | checking numbers @Ningxin_TAC | |

| | | |
|---|---|---|
| HG | **Hamill @ Genesis** | 2/23/2022, 9:04 AM |
| | that works @Ningxin_TAC expecting the 5,399,944 ETHE + 350 BTC additional | |

| | | |
|---|---|---|
| F | **Fung** | 2/23/2022, 9:15 AM |
| | BTC sent:                    Redacted for PII | |

| | | |
|---|---|---|
| HG | **Hamill @ Genesis** | 2/23/2022, 9:16 AM |
| | ETHE has been received | |

| | | |
|---|---|---|
| N | **Ningxin** | 2/23/2022, 9:16 AM |
| | Great! | |

**Short Message Report**

| Conver ation    1 | Participant    31 |
|---|---|
| Total Messages: 9 | Date Range: 5/10/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** • 9 messages on 5/10/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

MB    **Matt Ballensweig**                                                              5/10/2022, 10:58 AM

hey guy    I know ri  k i    ued another margin call for $170mm    we can take $125mm at current price    here    let u    know best means of top up.

MB    **Matt Ballensweig**                                                              5/10/2022, 1:45 PM

if you can give us an update on means of filling and ETA that would be great!

> F    **Fung**                                                                         5/10/2022, 1:52 PM

@Ningxin_TAC  will get back here first thing SGT morning

MB    **Matt Ballensweig**                                                              5/10/2022, 1:52 PM

thank you!

MB    **Matt Ballensweig**                                                              5/10/2022, 6:57 PM

Hey guys- keep us posted here- as you can imagine we're trying to tighten things up given the fallout. How are you guys doing?

N    **Ningxin**                                                                        5/10/2022, 7:24 PM

Hi Matt, we can top up in GBTC, could u pls confirm the amount, and we will transfer over tonight

L    **Leroy-exgenesis**                                                                5/10/2022, 7:24 PM

Hi Ningxin, sure will be with you in a moment

L    **Leroy-exgenesis**                                                                5/10/2022, 7:58 PM

Hi Ningxin, can take 7.772mio units of GBTC as collateral

N    **Ningxin**                                                                        5/10/2022, 7:59 PM

sure, will do

**Short Message Report**

| Conver ation   1 | Participant   31 |
|---|---|
| Total Messages: 38 | Date Range: 5/12/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** • 38 messages on 5/12/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

**MB**  **Matt Ballensweig**                                                                 5/12/2022, 8:53 AM

Hey guy    given general contraction in leverage in market we're going to need to pull back  ome un ecured USD that' OT or top up with majors 1:1. We'd be looking to call $200mm here or just have that amount worth of ETH or BTC posted on it. Once dust settles we can revisit just kicking that back to you. More of a temporary shrinkage of credit and not based on risk to you guys, just managing market liquidity.

**N**  **Ningxin**                                                                           5/12/2022, 9:16 AM

hi, we got 9 5mio GBTC and al o  ome ETHE  hare  to po t, would you accept tho e?

**DU**  **Deleted Account (user1895178719)**                                                  5/12/2022, 9:32 AM

Hi Ningxin, checking here

**HG**  **Hamill @ Genesis**                                                                  5/12/2022, 9:33 AM

hey @Ningxin_TAC any chance to post any other collateral a bit more liquid?

**N**  **Ningxin**                                                                           5/12/2022, 9:36 AM

we have some STETH as well, can do half STETH and half GBTC

**MB**  **Matt Ballen weig** EDITED                                                           5/12/2022, 9 51 AM

can we do a partial USD return say $100mm and then the GBTC shares?

**MB**  **Matt Ballensweig** EDITED                                                           5/12/2022, 10:05 AM

happy to also take ETH or BTC

**N**  **Ningxin**                                                                           5/12/2022, 10:12 AM

how about 1/4 ETH, 1/4 STETH & half GBTC?

**MB**  **Matt Ballensweig**                                                                  5/12/2022, 10:13 AM

we dont want to take more stETH here - could do 1/2 ETH and 1/2 GBTC

**MB**  **Matt Ballensweig**                                                                  5/12/2022, 10:14 AM

I know its not ideal, but given the conditions out there it is important for us to bring in some liquid capital - are you guys in a position to be able to do that?

**N**  **Ningxin**                                                                           5/12/2022, 10:19 AM

ok, how much ETH then?

**MB**  **Matt Ballensweig**                                                                  5/12/2022, 10:23 AM

$100mm ETH and $100mm GBTC works!

**N**  **Ningxin**                                                                           5/12/2022, 10 23 AM

yeah may i have the number in ETH and GBTC?

**MB**  **Matt Ballensweig**                                                                  5/12/2022, 10:23 AM

50k ETH, 9mm GBTC works

**N**  **Ningxin**                                                                           5/12/2022, 10:23 AM

k

**MB**  **Matt Ballensweig**                                                 5/12/2022, 10:24 AM
thank you @Ningxin_TAC

**N**  **Ningxin**                                                           5/12/2022, 10:47 AM
actually @mballen4791 9mio GBTC is much more than $100mio

**MB**  **Matt Ballensweig**                                                 5/12/2022, 10:49 AM
I yes my b

**MB**  **Matt Ballensweig**                                                 5/12/2022, 10:49 AM
5.4mm work?

**N**  **Ningxin**                                                           5/12/2022, 10:50 AM
ok can

**MB**  **Matt Ballensweig**                                                 5/12/2022, 10:50 AM
thanks!

**N**  **Ningxin**                                                           5/12/2022, 10:54 AM
ETH out

**DU**  **Deleted Account (user974550997)**                                  5/12/2022, 10:54 AM
rcvd

**MB**  **Matt Ballensweig**                                                 5/12/2022, 11:29 AM
let us know once the GBTC shares have been transferred as well, thanks all

> **F**  **Fung**                                                           5/12/2022, 11:33 AM
Have already initiated the transfer

**N**  **Ningxin**                                                           5/12/2022, 7:09 PM
hi, regarding another $100mio call back, shall we put 96.2mio ALGO, 1mio AVAX & remaining in SOL?

**DU**  **Deleted Account (user974550997)**                                  5/12/2022, 7:09 PM
hi @Ningxin  TAC

**DU**  **Deleted Account (user974550997)**                                  5/12/2022, 7:09 PM
sec

**MB**  **Matt Ballensweig**                                                 5/12/2022, 7:17 PM
That works

**MB**  **Matt Ballensweig**                                                 5/12/2022, 7:17 PM
Thanks @Ningxin_TAC

**DU**  **Deleted Account (u  er974550997)**                                 5/12/2022, 7 18 PM
FBN is good

**N**  **Ningxin**                                                           5/12/2022, 7:25 PM
Great!

**N**  **Ningxin**                                                           5/12/2022, 7:25 PM
Will do today

**DU**  **Deleted Account (user974550997)**                                  5/12/2022, 7:25 PM

Ty

N    **Ningxin**                                                            5/12/2022, 10:22 PM
ALGO out

L    **Leroy-exgenesis**                                                    5/12/2022, 10:23 PM
96,200,000 ALGO well rcv

N    **Ningxin**                                                            5/12/2022, 11 49 PM
699k SOL out

L    **Leroy-exgenesis**                                                    5/12/2022, 11:51 PM
rcv

**Short Message Report**

| Conver ation 1 | Participant 31 |
|---|---|
| Total Messages: 18 | Date Range: 5/14/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** 18 messages on 5/14/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬   **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

S       **s**                                                                      5/14/2022, 8:16 AM
        Hi, anyone around atm?

MC      **Marc Chan**                                                              5/14/2022, 8:17 AM
        Hi sir am here how can we help

S       **s**                                                                      5/14/2022, 8:17 AM
        Pls buy 3k btc twap 24hrs

MC      **Marc Chan**                                                              5/14/2022, 8:18 AM
        sure give me a sec to check cash situation

MC      **Marc Chan**                                                              5/14/2022, 8 21 AM
        Hey Su are you looking to fund this with a cash borrow or will this be settled

S       **s**                                                                      5/14/2022, 8:25 AM
        What rate can u show on cash?

JK      **Jake Kaufman**                                                           5/14/2022, 8:25 AM
        *Joined the conversation*

MC      **Marc Chan**                                                              5/14/2022, 8:26 AM
        10 5%

MP      **Mike Paleokrassas**                                                      5/14/2022, 8:26 AM
        +Jake who runs the weekend desk

> S     **s**                                                                      5/14/2022, 8:27 AM
        10% ok?

MC      **Marc Chan**  EDITED                                                      5/14/2022, 8:28 AM
        sure that works

S                                                                                  5/14/2022, 8 28 AM
        K cool lets do that

MC      **Marc Chan**                                                             5/14/2022, 8:29 AM
        perfect will go ahead and get that going

MC      **Marc Chan**                                                             5/14/2022, 8:32 AM
        will move cash around and set this up at 8.40am

MC      **Marc Chan**                                                             5/14/2022, 8:32 AM
        ET

S       **s**                                                                      5/14/2022, 8:36 AM

18

Noted ty

MC  **Marc Chan**                                                                              5/14/2022, 8:41 AM
    trade is live sir

S   **s**                                                                                     5/14/2022, 8:42 AM
    Ty

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 30 | Date Range: 5/15/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** • 30 messages on 5/15/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

💬 | **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| S | **s**<br>Hi team, whats your curr USD cash rate and avail? | 5/15/2022, 7:12 AM |
| S | **s**<br>Might do another twap soon | 5/15/2022, 7:12 AM |
| MC | **Marc Chan**<br>Hi Su just a moment | 5/15/2022, 7:12 AM |
| MC | **Marc Chan**<br>we can facilitate 1.5k BTC worth at 11% | 5/15/2022, 7:16 AM |
| MC | **Marc Chan**<br>right at this moment | 5/15/2022, 7:16 AM |
| MC | **Marc Chan**<br>we should be able to upsize that tomorrow | 5/15/2022, 7:16 AM |
| S | **s**<br>Cool. So if i asked you to run 5k btc 24hrs after the curr one ends, you can do that? | 5/15/2022, 7:18 AM |
| MC | **Marc Chan**<br>the remaining 3.5k btc best to let lending assess | 5/15/2022, 7:19 AM |
| MC | **Marc Chan**<br>but able to work the first 1.5k btc over 7hours or so | 5/15/2022, 7:19 AM |
| MC | **Marc Chan** EDITED<br>let me know if that works for you | 5/15/2022, 7:19 AM |
| S | **s**<br>Sure lets do 1.5k btc 24hrs, we will do the rest away, and can keep me posted after that | 5/15/2022, 7:23 AM |
| MC | **Marc Chan**<br>alternatively we can work the 5k over 48 hours | 5/15/2022, 7:23 AM |
| > MC | **Marc Chan**<br>just for clarity here, TAC will be borrowing the USD needed to fund the 5k BTC buy at 11% | 5/15/2022, 8:11 AM |
| S | **s**<br>Ok cool, yeah thats fine | 5/15/2022, 7:23 AM |
| MC | **Marc Chan**<br>perfect will go ahead and set that up once the current order ends at 8.40pm our time | 5/15/2022, 7:24 AM |

**S**  s
Agreed, in 1 and a half hours from now
5/15/2022, 7:24 AM

**MC**  Marc Chan
thanks Su will post here once live
5/15/2022, 7:24 AM

**S**  s
Confirmed
5/15/2022, 8:12 AM

**MC**  Marc Chan
thank you
5/15/2022, 8:12 AM

**MC**  Marc Chan
Hi order to buy 3k BTC is done
5/15/2022, 8:40 AM

**> S**  s  EDITED
Going fwd could you pls summarize w: start time, end time, size, coin, raw price, net price, comm, net value
5/15/2022, 8:42 AM

**MC**  Marc Chan
order to buy 5k BTC over 48 hours is now live
5/15/2022, 8:41 AM

**MC**  Marc Chan
Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Quantity: 3,000
Price: $29,596.6
Value: $88,789,800
5/15/2022, 8:42 AM

**MC**  Marc Chan
sure thing
5/15/2022, 8:42 AM

**S**  s
Ty
5/15/2022, 8:42 AM

**S**  s
Net proceeds
5/15/2022, 8:48 AM

**MC**  Marc Chan
noted thanks
5/15/2022, 8:48 AM

**MC**  Marc Chan
TWAP: 14th May 8:40am - 15th May 8:40am
BTC bought: 3,000
Cost Price: 29584.76
Net Price: 29596.6
Comms: 11.84
Net Value: $88,789,800
5/15/2022, 8:58 AM

**S**  s
Perfect ty
5/15/2022, 9:03 AM

**MC**  Marc Chan
you're welcome
5/15/2022, 9:04 AM

# INTENTIONALLY LEFT BLANK

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 4 | Date Range: 5/17/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** · 4 messages on 5/17/2022 · Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

GG **Greg Guttas Genesis**                                                              5/17/2022, 8:49 AM

TWAP: 15th May 8:40am EST - 17th May 8:40am EST
BTC bought: 5,000
Cost Price: 30,166.43
Net Price: 30,178.50
Comms: 12.07
Net Value: $150,892,500.00

GG **Greg Guttas Genesis**                                                              5/17/2022, 8:49 AM

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Quantity: 5,000
Price: $30,178.5
Value: $150,892,500

S **s**                                                                                  5/17/2022, 8:50 AM

noted with thanks

GG **Greg Guttas Genesis**                                                              5/17/2022, 8:50 AM

always

**Short Message Report**

| Conversations: 1 | Participants: 31 |
| --- | --- |
| Total Messages: 9 | Date Range: 5/18/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** • 9 messages on 5/18/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬    **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

S    **s**                                                                5/18/2022, 4:37 AM

Hi team anyone around?

MC    **Marc Chan**                                                       5/18/2022, 4:37 AM

Hi Su

S    **s**                                                                5/18/2022, 4:38 AM

Looking to do a 2k btcusd twap buy from 5pm dubai time for 24hrs, could you pls quote a cash OT rate? Ty

MC    **Marc Chan**                                                       5/18/2022, 4:39 AM

Checking with the lending team on availability. moment please

L    **Leroy-exgenesis**                                                  5/18/2022, 4:49 AM

Hi Su, the Indic on this is 11% OT, can you give us till New York open to confirm the availability... around 7am-8am EST, which is around 4pm Dubai time... will get back to you asap. Don't see an issue but need to get a confirmation from ny.

S    **s**                                                                5/18/2022, 4:49 AM

Sure ty

MB    **Matt Ballensweig**                                                5/18/2022, 7:02 AM

Hey @btcmaximalist at the moment, we are at max exposure on the 1:1 swap. If you guys were able to post 33% excess margin on this tranche we could do 1k BTC worth but would need a bit of an infusion of addl collat. We are still in a more conservative mind until we have risk clearance to extend credit/limits.

> S    **s**                                                              5/18/2022, 7:03 AM

Ty Matt, will check and let u know if anything

MB    **Matt Ballensweig**                                                5/18/2022, 7:44 AM

Okay cool, thanks Su!

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 15 | Date Range: 5/20/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** • 15 messages on 5/20/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| N | **Ningxin**<br>hi team, just checking if you could help us twap sell some ALGO collateral for BTC | 5/20/2022, 11:10 PM |
| L | **Leroy-exgenesis**<br>Hi Ningxin sure | 5/20/2022, 11:11 PM |
| N | **Ningxin**<br>it will be at the same comm 4 bps? | 5/20/2022, 11:11 PM |
| WK | **Wee Kuo**<br>Hi @Ningxin_TAC | 5/20/2022, 11:12 PM |
| WK | **Wee Kuo**<br>10bps all in on the package for you | 5/20/2022, 11:13 PM |
| N | **Ningxin**<br>can do 8 bps? 4 bps for algo & 4 bps for btc? | 5/20/2022, 11:14 PM |
| WK | **Wee Kuo**<br>Our usual charge on ALGO is 20bps. Doing 6bps for you on this is the lowest we can get to now. | 5/20/2022, 11:17 PM |
| N | **Ningxin**<br>ok got it, thats fine | 5/20/2022, 11:17 PM |
| N | **Ningxin**<br>could u pls help twap sell 10mio ALGO into BTC for the next 24 hours? | 5/20/2022, 11:17 PM |
| > WK | **Wee Kuo**<br>Just to confirm, this is 10M units, not 10M USD worth, right? | 5/20/2022, 11:44 PM |
| WK | **Wee Kuo**<br>Ok sure, let us get some coins moving and let you know once live | 5/20/2022, 11:18 PM |
| N | **Ningxin**<br>ty | 5/20/2022, 11:18 PM |
| WK | **Wee Kuo**<br>@Ningxin_TAC, just waiting on our ops team to get online. Should be within the next hour. | 5/20/2022, 11:39 PM |
| N | **Ningxin**<br>Yep 10m units | 5/20/2022, 11:45 PM |
| WK | **Wee Kuo**<br>ok setting up shortly | 5/20/2022, 11:45 PM |

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 5 | Date Range: 5/21/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** · 5 messages on 5/21/2022 · Arianna Pretto-Sakmann · Clarissa - Genesis · Deleted Account (user1718862517) · Deleted Account (user1895178719) · Deleted Account (user2101677378) · Deleted Account (user888071622) · Deleted Account (user974550997) · Fung · Gordon Grant · Greg Guttas Genesis · Hamill @ Genesis · Ivan Lim | Genesis · Jake Kaufman · Jenny Jung - Genesis · Josh Lim · Kyle · Leroy-exgenesis · Marc Chan · Matt Ballensweig · Matthew Lepow · Mike Paleokrassas · Ningxin · Ravi Doshi · Reed Werbitt · Roshun Patel · Sean L · Sebastian Cohen · Wee Kuo · Wilson P · Yuan Qing L · s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| **WK** | **Wee Kuo** | 5/21/2022, 12:01 AM |
| | ok order is live | |
| **N** | **Ningxin** | 5/21/2022, 12:13 AM |
| | Ty | |
| **YL** | **Yuan Qing L** | 5/21/2022, 11:54 PM |
| | *Joined the conversation* | |
| **WK** | **Wee Kuo** | 5/21/2022, 11:55 PM |
| | Hi team, order finishing up shortly. Adding @yqlimm who is covering the desk today | |
| **YL** | **Yuan Qing L** | 5/21/2022, 11:56 PM |
| | hi all will update once order is done | |

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 9 | Date Range: 5/22/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** · 9 messages on 5/22/2022 · Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬  **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

**S**    s                                                                                    5/22/2022, 12:04 AM

Ty, after order is done pls do another 10mill ALGO units vs BTC

> **YL**    **Yuan Qing L**                                                                   5/22/2022, 12:14 AM

hi SZ, will need some time to move the coins...update in abit when order is live

**S**    s                                                                                    5/22/2022, 12:05 AM

Sell algo vs btc 24hrs

**YL**    **Yuan Qing L**                                                                     5/22/2022, 12:05 AM

sure one moment

**YL**    **Yuan Qing L**                                                                     5/22/2022, 12:09 AM

TWAP: 21st May 12:00am EST - 22nd May 12:00am EST
BTC bought: 146.453812108582
Cost Price: 29,365.44
Net Price: 29,377.18
Comms: 11.74
Net Value: $4,302,400.00

TWAP: 21st May 12:00am EST - 22nd May 12:00am EST
ALGO sold: 10,000,000
Cost Price: 0.43050
Net Price: 0.43024
Comms: 0.00026
Net Value: $4,302,400.00

**S**    s                                                                                    5/22/2022, 12:14 AM

Sure ty

**YL**    **Yuan Qing L**                                                                     5/22/2022, 12:14 AM

ty

**YL**    **Yuan Qing L**                                                                     5/22/2022, 12:28 AM

hi Sz, order is live - TWAP from 22May22 00:25hrs EST to 23May22 00:25hrs EST

**YL**    **Yuan Qing L**                                                                     5/22/2022, 12:28 AM

will update when order's done...ty!

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 6 | Date Range: 5/23/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** 6 messages on 5/23/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬   **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| WK | **Wee Kuo** | 5/23/2022, 12:31 AM |

Order complete

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 145.95804007
Price: $29,931.89
Value: $4,368,800

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 10,000,000
Price: $0.4369
Value: $4,368,800

> WK   **Wee Kuo**     5/23/2022, 12:37 AM

TWAP from 22May22 00:25hrs EST to 23May22 00:25hrs EST

BTC bought: 145.95804007
Cost Price: 29,919.92
Net Price: 29,931.89
Comms: 11.97
Net Value: $4,368,800

TWAP from 22May22 00:25hrs EST to 23May22 00:25hrs EST

ALGO sold: 10,000,000
Cost Price: 0.43714
Net Price: 0.43688
Comms: 0.00026
Net Value: $4,368,800

N   **Ningxin**     5/23/2022, 12:32 AM

Ty, could u pls continue with another 10mio algobtc twap?

> WK   **Wee Kuo**     5/23/2022, 12:57 AM

Order is live

WK   **Wee Kuo**     5/23/2022, 12:33 AM

Sure, let me get some coins moving and let you know when done. Same 24 hours?

N   **Ningxin**     5/23/2022, 12:33 AM

Yes pls

**Short Message Report**

| | |
|---|---|
| Conversations: 1 | Participants: 31 |
| Total Messages: 7 | Date Range: 5/24/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** • 7 messages on 5/24/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

💬    **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| **WK** | **Wee Kuo** | 5/24/2022, 12:59 AM |
| | Order complete. Fills coming up | |

| | | |
|---|---|---|
| **N** | **Ningxin** | 5/24/2022, 1:00 AM |
| | ty, would like to sell another 10mio ALGOBTC for next 24 hours | |

| | | |
|---|---|---|
| **> WK** | **Wee Kuo** | 5/24/2022, 1:26 AM |
| | Twap is live | |

| | | |
|---|---|---|
| **WK** | **Wee Kuo** | 5/24/2022, 1:00 AM |
| | Sure, will get that set up shortly | |

**WK**    **Wee Kuo** EDITED      5/24/2022, 1:03 AM

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 145.24858258
Price: $29,897.71
Value: $4,342,600

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 10,000,000
Price: $0.43426
Value: $4,342,600

**> WK**    **Wee Kuo**      5/24/2022, 1:07 AM

TWAP from 23May22 00:55hrs EST to 24May22 00:55hrs EST

BTC bought: 145.24858258
Cost Price: 29,885.76
Net Price: 29,897.71
Comms: 11.95
Net Value: $4,342,600

TWAP from 23May23 00:55hrs EST to 24May22 00:55hrs EST

ALGO sold: 10,000,000
Cost Price: 0.43452
Net Price: 0.43426
Comms: 0.00026
Net Value: $4,342,600

| | | |
|---|---|---|
| **N** | **Ningxin** | 5/24/2022, 1:26 AM |
| | ty | |

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 19 | Date Range: 5/25/2022 - 5/26/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** 19 messages between 5/25/2022 - 5/26/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

**TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

**WK**    **Wee Kuo**                                                                                     5/25/2022, 1:29 AM

Order complete

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 139.10316122
Price: $29,447.21
Value: $4,096,200

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 10,000,000
Price: $0.40962
Value: $4,096,200

> **WK**    **Wee Kuo**  EDITED                                                               5/25/2022, 1:31 AM

TWAP from 24May22 01:25hrs EST to 25May22 01:25hrs EST

BTC bought: 139.10316122
Cost Price: 29,435.44
Net Price: 29,447.21
Comms: 11.77
Net Value:  $4,096,200

TWAP from 24May22 01:25hrs EST to 25May22 01:25hrs EST

ALGO sold: 10,000,000
Cost Price: 0.40987
Net Price: 0.40962
Comms: 0.00025
Net Value: $4,096,200

> **N**    **Ningxin**                                                                                    5/25/2022, 1:35 AM

sorry 139 BTC yeah, or 145 BTC

**N**    **Ningxin**                                                                                      5/25/2022, 1:32 AM

ty, can we do another same order?

> **WK**    **Wee Kuo**                                                                                   5/25/2022, 1:50 AM

This is now live

**WK**    **Wee Kuo**                                                                                     5/25/2022, 1:33 AM

of course

**WK**    **Wee Kuo**                                                                                     5/25/2022, 1:33 AM

setting up shortly

N    **Ningxin**                                                                    5/25/2022, 1:33 AM

ty

WK    **Wee Kuo**                                                                   5/25/2022, 1:35 AM

Amended!

N    **Ningxin**                                                                    5/25/2022, 10:09 PM

hi team, could u pls help twap sell our SOL with you into BTC, similar as ALGO?

WK    **Wee Kuo**                                                                   5/25/2022, 10:10 PM

Sure

WK    **Wee Kuo**                                                                   5/25/2022, 10:10 PM

Let me check how much SOL you have with us

WK    **Wee Kuo**                                                                   5/25/2022, 10:13 PM

seeing 699000 SOL

WK    **Wee Kuo**                                                                   5/25/2022, 10:14 PM

how would you like to twap this?

N    **Ningxin**                                                                    5/25/2022, 10:14 PM

yes, lets sell 100k SOL for the next 24 hours

> WK    **Wee Kuo**                                                                 5/26/2022, 10:34 PM

Hi @Ningxin_TAC , order complete

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 152.70074513
Price: $29,386.89
Value: $4,487,400

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: SOL
Entity: GAP
Quantity: 100,000
Price: $44.874
Value: $4,487,400

WK    **Wee Kuo**                                                                   5/25/2022, 10:14 PM

ok sure, let me get set up. 10bps fee all in as per Algo/Btc. ok?

N    **Ningxin**                                                                    5/25/2022, 10:15 PM

yes can

WK    **Wee Kuo**                                                                   5/25/2022, 10:31 PM

This is now live

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 21 | Date Range: 5/26/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** • 21 messages on 5/26/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| WK | **Wee Kuo** | 5/26/2022, 2:20 AM |
| | hi team, Algo/Btc completed. Fills coming up | |

| | | |
|---|---|---|
| N | **Ningxin** | 5/26/2022, 2:24 AM |
| | Ty, could u pls start another algobtc twap? | |

| | | |
|---|---|---|
| > IG | **Ivan Lim | Genesis** | 5/26/2022, 2:45 AM |
| | This is Live now. Tks | |

| | | |
|---|---|---|
| WK | **Wee Kuo** | 5/26/2022, 2:24 AM |
| | Sure, setting this up shortly | |

IG **Ivan Lim | Genesis**                                        5/26/2022, 2:34 AM

Order Confirmed

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 10,000,000
Price: $0.40518
Value: $4,051,800

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 136.3298214
Price: $29,720.57
Value: $4,051,800

> IG **Ivan Lim | Genesis**                                      5/26/2022, 2:35 AM

TWAP from 25May22 01:50hrs EST to 26May22 01:50hrs EST

BTC bought: 136.3298214
Cost Price: 29708.69
Net Price: 29720.57
Comms: 11.88
Net Value:  $4,051,800

TWAP from 25May22 01:50hrs EST to 26May22 01:50hrs EST

ALGO sold: 10,000,000
Cost Price: 0.40542
Net Price: 0.40518
Comms: 0.00024
Net Value: $4,051,800

| | | |
|---|---|---|
| N | **Ningxin** | 5/26/2022, 10:35 PM |
| | ok ty, could u pls do another 100k SOL twap sell into BTC? | |

**WK**  **Wee Kuo**                                                                5/26/2022, 10:35 PM
sure, setting this up shortly

**N**  **Ningxin**                                                                5/26/2022, 11:01 PM
@Weekuo may i check if we can set up another twap to sell150k AVAX into BTC over the next 24 hours?

**> WK**  **Wee Kuo**                                                                5/26/2022, 11:02 PM
Yes, sure. Is this from your collateral?

**WK**  **Wee Kuo**                                                                5/26/2022, 11:02 PM
Sol>BTC is live btw

**N**  **Ningxin**                                                                5/26/2022, 11:03 PM
yes

**WK**  **Wee Kuo**                                                                5/26/2022, 11:04 PM
See 300k as collateral. Setting this up shortly

**WK**  **Wee Kuo**                                                                5/26/2022, 11:04 PM
150k AVAX into BTC over 24 hours

**N**  **Ningxin**                                                                5/26/2022, 11:04 PM
ty

**WK**  **Wee Kuo**                                                                5/26/2022, 11:23 PM
Avax into BTC is now live

**N**  **Ningxin**                                                                5/26/2022, 11:30 PM
hi team, just checking if we can swap out some ETH collateral with BTC?

**WK**  **Wee Kuo**                                                                5/26/2022, 11:30 PM
@leroygenesis_OutofOffice will come back here

**L**  **Leroy-exgenesis**                                                                5/26/2022, 11:31 PM
How much are you looking to swap here

**N**  **Ningxin**                                                                5/26/2022, 11:31 PM
20k ETH?

**L**  **Leroy-exgenesis**                                                                5/26/2022, 11:33 PM
Will come back on this

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 63 | Date Range: 5/27/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** · 63 messages on 5/27/2022 · Arianna Pretto-Sakmann · Clarissa - Genesis · Deleted Account (user1718862517) · Deleted Account (user1895178719) · Deleted Account (user2101677378) · Deleted Account (user888071622) · Deleted Account (user974550997) · Fung · Gordon Grant · Greg Guttas Genesis · Hamill @ Genesis · Ivan Lim | Genesis · Jake Kaufman · Jenny Jung - Genesis · Josh Lim · Kyle · Leroy-exgenesis · Marc Chan · Matt Ballensweig · Matthew Lepow · Mike Paleokrassas · Ningxin · Ravi Doshi · Reed Werbitt · Roshun Patel · Sean L · Sebastian Cohen · Wee Kuo · Wilson P · Yuan Qing L · s

**Messages in chronological order** (times are shown in GMT +00:00)

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| L | **Leroy-exgenesis** | 5/27/2022, 12:12 AM |
| | 1200 BTC back ? | |
| > N | **Ningxin** | 5/27/2022, 12:14 AM |
| | 1200 BTC works, and just to confirm we want to send in BTC to get ETH | |
| JG | **Jenny Jung - Genesis** | 5/27/2022, 12:12 AM |
| | *Joined the conversation* | |
| CG | **Clarissa - Genesis** | 5/27/2022, 12:12 AM |
| | *Joined the conversation* | |
| L | **Leroy-exgenesis** | 5/27/2022, 12:12 AM |
| | Just adding Jenny who is our new joiner on the lending side and Clarissa who heads ops in Asia | |
| L | **Leroy-exgenesis** | 5/27/2022, 12:15 AM |
| | Sure that's fine | |
| L | **Leroy-exgenesis** | 5/27/2022, 12:15 AM |
| | Fbn is good | |
| N | **Ningxin** | 5/27/2022, 12:15 AM |
| | ok great, are you able to settle shortly? | |
| L | **Leroy-exgenesis** | 5/27/2022, 12:19 AM |
| | Yeap we can | |
| N | **Ningxin** | 5/27/2022, 12:20 AM |
| | ok give us a moment,will let you know once out | |
| N | **Ningxin** | 5/27/2022, 12:26 AM |
| | sorry just checking if we can settle in 2 tranches? 600 btc each | |
| N | **Ningxin** | 5/27/2022, 12:27 AM |
| | got issue with custodian rn, got 600 btc ready now | |
| CG | **Clarissa - Genesis** | 5/27/2022, 12:27 AM |
| | sure, we can do that | |
| F | **Fung** | 5/27/2022, 12:29 AM |
| | 600 BTC: | |

Redacted for PII

47

**CG**  **Clarissa - Genesis**                                              5/27/2022, 12:34 AM

see it coming in! pending confirmation

**CG**  **Clarissa - Genesis**                                              5/27/2022, 12:34 AM

we will send out the 1st tranche of ETH once confirmed

**CG**  **Clarissa - Genesis**                                              5/27/2022, 1:05 AM

BTC has landed, ETH is coming your way now, tx id:
0x50adde5d35ca9641f76d7e2433438c7a50b703903e1b447240802393a566df8b

**F**  **Fung**                                                            5/27/2022, 1:06 AM

Received 10k ETH ty

**CG**  **Clarissa - Genesis**                                              5/27/2022, 1:07 AM

no prob!

**WK**  **Wee Kuo**                                                        5/27/2022, 2:48 AM

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 129.96146972
Price: $29,247.13
Value: $3,801,000

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 10,000,000
Price: $0.3801
Value: $3,801,000

**> WK**  **Wee Kuo** EDITED                                               5/27/2022, 2:51 AM

TWAP from 26May22 02:40hrs EST to 27May22 02:40hrs EST

BTC bought: 129.96146972
Cost Price: 29,247.13
Net Price: 29,235.44
Comms: 11.69
Net Value:  $3,801,000

TWAP from 26May22 02:40hrs EST to 27May22 02:40hrs EST

ALGO sold: 10,000,000
Cost Price: 0.3801
Net Price: 0.38033
Comms: 0.00023
Net Value: $3,801,000

**N**  **Ningxin**                                                         5/27/2022, 2:51 AM

Ty, let's do another one pls?

**WK**  **Wee Kuo**                                                        5/27/2022, 2:52 AM

sure

**WK**  **Wee Kuo**                                                        5/27/2022, 2:52 AM

Will update once live

**WK**  **Wee Kuo**                                                        5/27/2022, 3:09 AM

Next batch of Algo/btc now live

S    **s**    5/27/2022, 1:33 PM

Hi team, could we pls buy 3k btcusd, only if under 28.5k, over 24hrs?

GG    **Greg Guttas Genesis**    5/27/2022, 1:34 PM

hey

GG    **Greg Guttas Genesis**    5/27/2022, 1:34 PM

we can do that - borrowing cash or settling?

S    **s**    5/27/2022, 1:35 PM

borrowing usd

GG    **Greg Guttas Genesis**    5/27/2022, 1:35 PM

@HamillGenesis

S    **s**    5/27/2022, 1:37 PM

110% collat, in gbtc/ethe ideally

HG    **Hamill @ Genesis**    5/27/2022, 1:38 PM

hey @btcmaximalist see you here. taking a look at what we can do

S    **s**    5/27/2022, 1:38 PM

Sure ty

HG    **Hamill @ Genesis**    5/27/2022, 1:50 PM

we can lend the USD at 10%, 1.2x secured but we'd be looking for liquid collateral (BTC/ETH). Not much appetite for additional gbtc/ethe unfortunately.

MB    **Matt Ballensweig**    5/27/2022, 1:50 PM

the purchased BTC we'd hold and then would just need an additional 20% capital

S    **s**    5/27/2022, 1:51 PM

Gotcha. Would 115% work for liquid collat?

> MB    **Matt Ballensweig**    5/27/2022, 1:52 PM

yeah lets do it

MB    **Matt Ballensweig**    5/27/2022, 1:52 PM

15% excess in the form of BTC?

MB    **Matt Ballensweig**    5/27/2022, 1:52 PM

or ETH?

S    **s**    5/27/2022, 1:52 PM

Prob btc

MB    **Matt Ballensweig**    5/27/2022, 1:52 PM

cool that would work

S    **s**    5/27/2022, 1:53 PM

Ok cool, could we do 5k btc over 48hrs actually, only if below 28.5k

MB    **Matt Ballensweig**    5/27/2022, 1:55 PM

can finance 3k here - cant do full 5k - that would need to be funded

**S**    s                                         5/27/2022, 1:55 PM

Ok sure, lets do 3k over 48hrs only if below 28.5k

**GG**    **Greg Guttas Genesis**                       5/27/2022, 1:55 PM

cool will get that started thanks

**S**    s                                         5/27/2022, 1:55 PM

Ty

**MB**    **Matt Ballensweig**                          5/27/2022, 1:56 PM

thanks!

**S**    s                                         5/27/2022, 4:50 PM

Pls adjust limit price to 28.8k

**SC**    **Sebastian Cohen**                        5/27/2022, 4:51 PM

Sure thing

**S**    s                                         5/27/2022, 4:51 PM

Ty

**YL**    **Yuan Qing L**                          5/27/2022, 11:05 PM

gm

**YL**    **Yuan Qing L**   EDITED             5/27/2022, 11:05 PM

TWAP: 26th May 10:58pm EST - 27th May 10:58pm EST
BTC bought: 144.07460639
Cost Price: 28,835.32
Net Price: 28,846.86
Comms: 11.54
Net Value: $4,156,100.00

TWAP: 26th May 10:58pm EST - 27th May 10:58pm EST
SOL sold: 100,000
Cost Price: 41.586
Net Price: 41.561
Comms: 0.025
Net Value: $4,156,100.00


Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: SOL
Entity: GAP
Quantity: 100,000
Price: $41.561
Value: $4,156,100

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 144.07460639
Price: $28,846.86
Value: $4,156,100

**YL**    **Yuan Qing L**                          5/27/2022, 11:05 PM

TWAP completed for SOL

**N**    **Ningxin**                                 5/27/2022, 11:06 PM

ty

**YL**  **Yuan Qing L**                                                                      5/27/2022, 11:06 PM

thanks for trade!

**N**  **Ningxin**                                                                              5/27/2022, 11:06 PM

could u pls help twap sell another 150k SOL into BTC over next 24 hours?

**YL**  **Yuan Qing L**                                                                      5/27/2022, 11:07 PM

sure one mom..setting up

**N**  **Ningxin**                                                                              5/27/2022, 11:08 PM

another 150k AVAXBTC sell after current one is done, ty

**YL**  **Yuan Qing L**                                                                      5/27/2022, 11:09 PM

sure let me update when order is live

**YL**  **Yuan Qing L**                                                                      5/27/2022, 11:15 PM

SOL order live - twap to end on 28May22 at 2315 hrs (24hrs)

**YL**  **Yuan Qing L**                                                                      5/27/2022, 11:25 PM

TWAP: 26th May 11:20pm EST - 27th May 11:20pm EST
BTC bought: 117.09327833
Cost Price: 28,830.85
Net Price: 28,842.39
Comms: 11.54
Net Value: $3,377,250.00

TWAP: 26th May 11:20pm EST - 27th May 11:20pm EST
AVAX sold: 150,000
Cost Price: 22.529
Net Price: 22.515
Comms: 0.014
Net Value: $3,377,250.00


Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: AVAX
Entity: GAP
Quantity: 150,000
Price: $22.515
Value: $3,377,250

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 117.09327833
Price: $28,842.39
Value: $3,377,250

**YL**  **Yuan Qing L**                                                                      5/27/2022, 11:25 PM

AVAX twap completed

**YL**  **Yuan Qing L**                                                                      5/27/2022, 11:25 PM

will update when new order is live

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 39 | Date Range: 5/28/2022 - 5/29/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** 39 messages between 5/28/2022 - 5/29/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

YL  **Yuan Qing L**                                                                          5/28/2022, 12:15 AM

hihi apologies system issue on my end..AVAX twap live - to end on 29May22 at 0015 EST

YL  **Yuan Qing L**                                                                          5/28/2022, 3:15 AM

TWAP: 27th May 03:00am EST - 28th May 03:00am EST
BTC bought: 126.92316098
Cost Price: 28,815.36
Net Price: 28,826.89
Comms: 11.53
Net Value: $3,658,800.00

TWAP: 27th May 03:00am EST - 28th May 03:00am EST
ALGO sold: 10,000,000
Cost Price: 0.36610
Net Price: 0.36588
Comms: 0.00022
Net Value: $3,658,800.00

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 10,000,000
Price: $0.36588
Value: $3,658,800

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 126.92316098
Price: $28,826.89
Value: $3,658,800

YL  **Yuan Qing L**                                                                          5/28/2022, 3:15 AM

hi ALGO twap completed

YL  **Yuan Qing L**                                                                          5/28/2022, 3:15 AM

ty

N   **Ningxin**                                                                               5/28/2022, 3:32 AM

Ty, let's do one more Algobtc twap pls

YL  **Yuan Qing L**                                                                          5/28/2022, 3:32 AM

sure

YL  **Yuan Qing L**                                                                          5/28/2022, 3:32 AM

one mom

YL  **Yuan Qing L**                                                                          5/28/2022, 3:48 AM

ALGO twap live - to end on 29May22 at 0350 EST

**YL** **Yuan Qing L**                                                    5/28/2022, 3:48 AM
ty~

**S** **s** EDITED                                                        5/28/2022, 9:05 AM
Btc limit twap, pls summarize fill qty and avg price

**JK** **Jake Kaufman**                                                   5/28/2022, 9:06 AM
Hi Su, sure one moment

**S** **s**                                                               5/28/2022, 9:09 AM
Ty also pls raise limit from 28.8k to 28.9k and extend time in force by 24hrs

**JK** **Jake Kaufman**                                                   5/28/2022, 9:10 AM
So far 825.82 BTC filled at average price of 28705.68. And sure will do, twap now to complete by May 30 at 2pm ET

**S** **s**                                                               5/28/2022, 9:11 AM
Tyty

**S** **s**                                                               5/28/2022, 9:24 AM
Chg to 29.1 pls

> **S** **s**                                                             5/29/2022, 7:41 AM
Chg to 29.4 pls

**JK** **Jake Kaufman**                                                   5/28/2022, 9:24 AM
Ok updating

**S** **s**                                                               5/28/2022, 10:05 AM
Do u guys have any axes on 1w btc calls?

**JK** **Jake Kaufman**                                                   5/28/2022, 10:06 AM
@sc_genesis is our weekend derivs trader, she will get back to you shortly on that

**S** **s**                                                               5/28/2022, 10:06 AM
Ty

**DU** **Deleted Account (user2101677378)**                               5/28/2022, 10:20 AM
hi

**DU** **Deleted Account (user2101677378)**                               5/28/2022, 10:21 AM
would be a slightly better seller but can always show a price either way

**DU** **Deleted Account (user2101677378)**                               5/28/2022, 10:23 AM
is there a specific strike / size i can quote for you?

**S** **s**                                                               5/28/2022, 10:26 AM
Jun3, 31 32 and 33k pls

**S** **s**                                                               5/28/2022, 11:08 AM
Bump

**DU** **Deleted Account (user2101677378)**                               5/28/2022, 11:09 AM
checking

**S**    **s**                                                                    5/28/2022, 11:09 AM
Ty

**DU**    **Deleted Account (user2101677378)**                                    5/28/2022, 11:09 AM
rough size?

**S**    **s**  EDITED                                                           5/28/2022, 11:11 AM
Say 1k btc

**DU**    **Deleted Account (user2101677378)**                                    5/28/2022, 11:18 AM
ref 28920: offers $303 in the 31k, $157 in the 32k, $99 in the 33k

**DU**    **Deleted Account (user2101677378)**                                    5/28/2022, 11:19 AM
OCO

**S**    **s**                                                                    5/28/2022, 11:21 AM
Thx, will ref if anything

**DU**    **Deleted Account (user2101677378)**                                    5/28/2022, 11:21 AM
sure, if you have a target lmk

**IG**    **Ivan Lim | Genesis**                                                  5/28/2022, 11:26 PM
150k SOL > BTC TWAP Done.

TWAP: 27th May 11:15pm EST - 28th May 11:15pm EST
BTC bought: 220.49390219
Cost Price: 28,914.40
Net Price: 28,925.97
Comms: 11.57
Net Value:  $6,378,000

TWAP: 27th May 11:15pm EST - 28th May 11:15pm EST
SOL sold: 150,000
Cost Price: 42.546
Net Price: 42.520
Comms: 0.026
Net Value: $6,378,000


Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: SOL
Entity: GAP
Quantity: 150,000
Price: $42.52
Value: $6,378,000

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 220.49390219
Price: $28,925.97
Value: $6,378,000

**N**    **Ningxin**                                                              5/28/2022, 11:39 PM
Ty

**N**    **Ningxin**                                                              5/28/2022, 11:40 PM
Pls continue with another one

**> WK**    **Wee Kuo**                                                           5/29/2022, 11:58 PM

This is done

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: SOL
Entity: GAP
Quantity: 150,000
Price: $44.051
Value: $6,607,650

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 225.58889913
Price: $29,290.67
Value: $6,607,650

IG    **Ivan Lim | Genesis**                                        5/28/2022, 11:40 PM
Noted, sec on this.

IG    **Ivan Lim | Genesis**                                        5/28/2022, 11:55 PM
Another Tranche to Sell 150K Sol to Btc, 24hrs TWAP working.
Start time: 28th May 11:55pm EST
End time: 29th May 11:55pm EST

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 31 | Date Range: 5/29/2022 - 5/31/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** · 31 messages between 5/29/2022 - 5/31/2022 · Arianna Pretto-Sakmann · Clarissa - Genesis · Deleted Account (user1718862517) · Deleted Account (user1895178719) · Deleted Account (user2101677378) · Deleted Account (user888071622) · Deleted Account (user974550997) · Fung · Gordon Grant · Greg Guttas Genesis · Hamill @ Genesis · Ivan Lim | Genesis · Jake Kaufman · Jenny Jung - Genesis · Josh Lim · Kyle · Leroy-exgenesis · Marc Chan · Matt Ballensweig · Matthew Lepow · Mike Paleokrassas · Ningxin · Ravi Doshi · Reed Werbitt · Roshun Patel · Sean L · Sebastian Cohen · Wee Kuo · Wilson P · Yuan Qing L · s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

IG  **Ivan Lim | Genesis**                                                      5/29/2022, 12:24 AM

150k AVAX > BTC Done.

TWAP: 28th May 12:15am EST - 29th May 12:15pm EST
BTC bought: 123.46489697
Cost Price: 28,922.97
Net Price: 28,934.54
Comms: 11.57
Net Value: $3,572,400.00

TWAP: 28th May 12:15am EST - 29th May 12:15pm EST
AVAX sold: 150,000
Cost Price: 23.831
Net Price: 23.816
Comms: 0.015
Net Value: $3,572,400.00


Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: AVAX
Entity: GAP
Quantity: 150,000
Price: $23.816
Value: $3,572,400

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 123.46489697
Price: $28,934.54
Value: $3,572,400

IG  **Ivan Lim | Genesis**                                                      5/29/2022, 3:59 AM

10M ALGO > BTC Done.

TWAP: 28th May 03:50am EST - 29th May 03:50am EST
BTC bought: 125.03777276
Cost Price: 28,944.47
Net Price: 28,956.05
Comms: 11.58
Net Value: $3,620,600

TWAP: 28th May 03:50am EST - 29th May 03:50am EST
ALGO sold: 10,000,000
Cost Price: 0.36228
Net Price: 0.36206
Comms: 0.00022
Net Value: $3,620,600

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 10,000,000

Price: $0.36206
Value: $3,620,600

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 125.03777276
Price: $28,956.05
Value: $3,620,600

> **N**   **Ningxin**   5/31/2022, 7:17 AM

i see this confo as the last one

**s**   **s**   5/29/2022, 4:07 AM

Hi team, pls sell 20k ethbtc 24hrs

> **WK**   **Wee Kuo**   5/30/2022, 5:02 AM

This order is done

**IG**   **Ivan Lim | Genesis**   5/29/2022, 4:08 AM

Hi, sec please.

**IG**   **Ivan Lim | Genesis**   5/29/2022, 4:14 AM

we are working to shift coin to exchange and set it up. moment pls. tks.

**s**   **s**   5/29/2022, 4:16 AM

Sure ty

**IG**   **Ivan Lim | Genesis**   5/29/2022, 4:45 AM

Above order is Live.

**IG**   **Ivan Lim | Genesis**   5/29/2022, 4:46 AM

To confirm. We are selling 20k Eth from your collateral into Btc. Thanks.

**s**   **s**   5/29/2022, 4:47 AM

Confirmed ty

**IG**   **Ivan Lim | Genesis**   5/29/2022, 4:47 AM

Thank you!

**JK**   **Jake Kaufman**   5/29/2022, 7:41 AM

Sure thing

**JK**   **Jake Kaufman**   5/29/2022, 8:13 AM

Ok

**WK**   **Wee Kuo**   5/29/2022, 10:02 PM

perfect will get that changed

**WK**   **Wee Kuo**   5/29/2022, 10:04 PM

ok

**s**   **s**   5/29/2022, 10:04 PM

Summary of curr fills?

**WK**  **Wee Kuo**                                                           5/29/2022, 10:04 PM
coming up give me a few to grab that

**WK**  **Wee Kuo**                                                           5/29/2022, 10:10 PM
So far, ~2303 BTC bought at average of 28973.77

**S**  **s**                                                                  5/29/2022, 10:17 PM
How much time in force remaining on balance?

**WK**  **Wee Kuo**                                                           5/29/2022, 10:17 PM
just under 16 hours.

**WK**  **Wee Kuo**                                                           5/29/2022, 10:18 PM
Schedule to finish up 30th 2pm EST

**S**  **s**                                                                  5/29/2022, 10:18 PM
K ty

**WK**  **Wee Kuo**                                                           5/29/2022, 10:18 PM
urw

**S**  **s**                                                                  5/29/2022, 10:19 PM
Shorten remainder to 4hrs pls

**WK**  **Wee Kuo**                                                           5/29/2022, 10:20 PM
got it.

**WK**  **Wee Kuo**                                                           5/29/2022, 10:24 PM
order scheduled to complete ~2.20pm SGT

**S**  **s**                                                                  5/29/2022, 11:29 PM
Just for my guide, do u guys have any additional capacity on usd OT v btc?

> **MB**  **Matt Ballensweig**                                               5/30/2022, 12:53 AM
hey @btcmaximalist - we can do more at 1.2x in liquids at 10.75% per ann OT

**L**  **Leroy-exgenesis**  EDITED                                            5/29/2022, 11:29 PM
Hi Su, will need to wait for NY to get back to you on this

**S**  **s**                                                                  5/29/2022, 11:31 PM
Sure nws

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 58 | Date Range: 5/30/2022 - 5/31/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** · 58 messages between 5/30/2022 - 5/31/2022 · Arianna Pretto-Sakmann · Clarissa - Genesis · Deleted Account (user1718862517) · Deleted Account (user1895178719) · Deleted Account (user2101677378) · Deleted Account (user888071622) · Deleted Account (user974550997) · Fung · Gordon Grant · Greg Guttas Genesis · Hamill @ Genesis · Ivan Lim | Genesis · Jake Kaufman · Jenny Jung - Genesis · Josh Lim · Kyle · Leroy-exgenesis · Marc Chan · Matt Ballensweig · Matthew Lepow · Mike Paleokrassas · Ningxin · Ravi Doshi · Reed Werbitt · Roshun Patel · Sean L · Sebastian Cohen · Wee Kuo · Wilson P · Yuan Qing L · s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| N | **Ningxin** | 5/30/2022, 12:10 AM |

Ty, would like one more same twap to run over next 24 hours

> WK    **Wee Kuo**                                    5/30/2022, 12:25 AM

This is live.

> WK    **Wee Kuo**                                    5/31/2022, 12:50 AM

Order complete

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 224.85291423
Price: $30,946.23
Value: $6,958,350

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: SOL
Entity: GAP
Quantity: 150,000
Price: $46.389
Value: $6,958,350

WK    **Wee Kuo**                                    5/30/2022, 12:10 AM

ok sure

MB    **Matt Ballensweig**                            5/30/2022, 12:53 AM

up to $100mm

S    **s**                                            5/30/2022, 12:55 AM

Does 1.15x work?

> L    **Leroy-exgenesis**                            5/30/2022, 1:11 AM

will be back on this

S    **s**                                            5/30/2022, 1:12 AM

Ty

WK    **Wee Kuo**                                    5/30/2022, 2:32 AM

Hey guys, BTC twap wrapped up. Fills coming up shortly

S    **s**                                            5/30/2022, 2:34 AM

Kk

WK    **Wee Kuo**                                    5/30/2022, 2:39 AM

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC

Entity: GAP
Quantity: 3,000
Price: $29,287.8
Value: $87,863,400

> WK **Wee Kuo**                                                                    5/30/2022, 2:45 AM

TWAP: 27th May 1:56pm EST - 30th May 1:20am EST
BTC bought: 3000
Cost Price: 29276.09
Net Price: 29287.80
Comms: 11.71
Net Value: $87,863,400

L **Leroy-exgenesis**                                                              5/30/2022, 3:14 AM

t/s with Ningxin now... let us know when you can post the additional 450 BTC of collateral... @mballen4791 will confirm on
the 115% when he gets in.

N **Ningxin**                                                                      5/30/2022, 3:15 AM

signed, and will post 450 btc shortly

N **Ningxin**                                                                      5/30/2022, 3:17 AM

btw, may i send in more BTC to swap back ETH collateral?

L **Leroy-exgenesis**                                                              5/30/2022, 3:17 AM

sure we can do that... how much are you looking for ?

N **Ningxin**                                                                      5/30/2022, 3:18 AM

can we do 1k BTC for now?

L **Leroy-exgenesis**                                                              5/30/2022, 3:20 AM

16k ETH back if that's ok? for 1k BTC

N **Ningxin**                                                                      5/30/2022, 3:21 AM

ok can

N **Ningxin**                                                                      5/30/2022, 3:22 AM

are you able to settle shortly?

L **Leroy-exgenesis**                                                              5/30/2022, 3:22 AM

yea ops is around

L **Leroy-exgenesis**                                                              5/30/2022, 3:22 AM

we can settle shortly

L **Leroy-exgenesis**                                                              5/30/2022, 3:22 AM

so you will send in 1450 BTC and we will send over 16k ETH

N **Ningxin**                                                                      5/30/2022, 3:22 AM

yep

N **Ningxin**                                                                      5/30/2022, 3:27 AM

BTC sent

CG **Clarissa - Genesis**                                                          5/30/2022, 3:29 AM

we are seeing it come through, pending confirmation

L   **Leroy-exgenesis**                                              5/30/2022, 3:29 AM
do see the ticket, will confirm when it lands

CG   **Clarissa - Genesis**                                         5/30/2022, 3:57 AM
BTC has landed, we will send out the ETH shortly

CG   **Clarissa - Genesis**                                         5/30/2022, 4:04 AM
ETH is paid out now, tx id: 0x0dd4d4c17361d882b1a97ac28203a26cc0b94678cd64ef4be2641c57171cda4f

N   **Ningxin**                                                     5/30/2022, 4:04 AM
see it ty

N   **Ningxin**                                                     5/30/2022, 4:12 AM
just checking if you are good to do one more BTC to ETH swap for 1k BTC?

L   **Leroy-exgenesis**                                             5/30/2022, 4:12 AM
hi Ningxin

L   **Leroy-exgenesis**                                             5/30/2022, 4:12 AM
sure

L   **Leroy-exgenesis**                                             5/30/2022, 4:13 AM
same ratio is ok

L   **Leroy-exgenesis**                                             5/30/2022, 4:13 AM
1k for 16k

N   **Ningxin**                                                     5/30/2022, 4:14 AM
great, sending coins shortly

N   **Ningxin**                                                     5/30/2022, 4:20 AM
sent

CG   **Clarissa - Genesis**                                         5/30/2022, 4:20 AM
see 1k BTC coming through, pending confirmation

WK   **Wee Kuo**                                                    5/30/2022, 5:03 AM
Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 1,231.88207472
Price: $29,595.69
Value: $36,458,400

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ETH
Entity: GAP
Quantity: 20,000
Price: $1,822.92
Value: $36,458,400

S   **s**                                                           5/30/2022, 5:04 AM
Over 24hrs

> WK   **Wee Kuo**                                                  5/30/2022, 5:27 AM
@btcmaximalist this is now live. Selling 20k ETH into BTC over 24 hours

**WK**  **Wee Kuo**                                                                    5/30/2022, 5:06 AM
Got it, give me a few to set this up

**CG**  **Clarissa - Genesis**                                                         5/30/2022, 5:10 AM
1k BTC has landed, we will process the ETH shortly

**CG**  **Clarissa - Genesis**                                                         5/30/2022, 5:14 AM
16k ETH send out, tx id: 0x55d6f463b7e6a4048ba72b92a12497aca7dcdaba9ac06765fec785c46fa1d2d7

**F**   **Fung**                                                                       5/30/2022, 5:15 AM
Ty rcvd

**S**   **s**                                                                          5/30/2022, 5:27 AM
Ty

**MB**  **Matt Ballensweig**                                                           5/30/2022, 7:34 AM
Hey @btcmaximalist - unfortunately risk tightening screws on us and have to be at 1.2x on next tranche.

> **S**  **s**                                                                        5/30/2022, 9:44 AM
Ok sure. Pls buy 3k btc 48hrs, limit 30.1k

**JK**  **Jake Kaufman**                                                               5/30/2022, 9:45 AM
Hi Su, sure we'll get that going now

**JK**  **Jake Kaufman**                                                               5/30/2022, 9:46 AM
That's live, to be completed June 1 9:45am ET

**S**   **s**                                                                          5/30/2022, 9:47 AM
Ty

**MB**  **Matt Ballensweig**                                                           5/30/2022, 10:04 AM
if so, mind sending over the BTC excess as this works? (or ETH excess)

> **S**  **s**                                                                        5/30/2022, 10:10 AM
Wed prefer sending after if thats ok. As we may not end up getting filled, etc

**MB**  **Matt Ballensweig**                                                           5/30/2022, 10:10 AM
thats fine - we'll mark the loan at 1.2x and follow up post execution for the collat

**MB**  **Matt Ballensweig**                                                           5/30/2022, 10:10 AM
thanks Su!

**S**   **s**                                                                          5/30/2022, 10:10 AM
Ty

**MC**  **Marc Chan**                                                                  5/30/2022, 11:38 PM
Hi Su sure amending that

**S**   **s**                                                                          5/30/2022, 11:39 PM
Ty

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 38 | Date Range: 5/31/2022 - 6/1/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** · 38 messages between 5/31/2022 - 6/1/2022 · Arianna Pretto-Sakmann · Clarissa - Genesis · Deleted Account (user1718862517) · Deleted Account (user1895178719) · Deleted Account (user2101677378) · Deleted Account (user888071622) · Deleted Account (user974550997) · Fung · Gordon Grant · Greg Guttas Genesis · Hamill @ Genesis · Ivan Lim | Genesis · Jake Kaufman · Jenny Jung - Genesis · Josh Lim · Kyle · Leroy-exgenesis · Marc Chan · Matt Ballensweig · Matthew Lepow · Mike Paleokrassas · Ningxin · Ravi Doshi · Reed Werbitt · Roshun Patel · Sean L · Sebastian Cohen · Wee Kuo · Wilson P · Yuan Qing L · s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

N   **Ningxin**                                                                                    5/31/2022, 12:51 AM
ok ty

N   **Ningxin**                                                                                    5/31/2022, 12:51 AM
could u pls help sell remaining 199k SOL into BTC over next 30 hours?

> WK   **Wee Kuo**                                                                                 5/31/2022, 12:54 AM
Hey, we only see 49k remaining

WK   **Wee Kuo**                                                                                   5/31/2022, 12:52 AM
Let me just confirm the amount

N   **Ningxin**                                                                                    5/31/2022, 12:54 AM
actually you are right

N   **Ningxin**                                                                                    5/31/2022, 12:54 AM
lets sell the remaining 49k over 12 hours

> JK   **Jake Kaufman**                                                                            5/31/2022, 1:18 PM
This order is complete, detailed breakdown coming shortly:

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 71.58082602
Price: $31,674.39
Value: $2,267,279

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: SOL
Entity: GAP
Quantity: 49,000
Price: $46.271
Value: $2,267,279

WK   **Wee Kuo**                                                                                   5/31/2022, 12:54 AM
perfect on it

MC   **Marc Chan**                                                                                 5/31/2022, 12:59 AM
for 12 hours

N   **Ningxin**                                                                                    5/31/2022, 12:59 AM
ty

YL   **Yuan Qing L**                                                                               5/31/2022, 3:17 AM
hi sz

YL   **Yuan Qing L**                                                                               5/31/2022, 3:17 AM

sure one mom plz

**S**    s               5/31/2022, 5:37 AM

Sell

**MC**    Marc Chan               5/31/2022, 5:38 AM

sure mp

**MC**    Marc Chan               5/31/2022, 5:40 AM

TWAP: 30th May 5:27pm SGT - 31st May 5:27pm SGT
ETH sold: 20,000
Cost Price: 1945.92
Net Price: 1945.14
Comms: 0.78
Net Value: $38,902,800

TWAP: 30th May 5:27pm SGT - 31st May 5:27pm SGT
BTC bought: 1,247.68281247
Cost Price: 31167.57
Net Price: 31180.04
Comms: 12.47
Net Value: $38,902,800

**S**    s               5/31/2022, 5:41 AM

Kk

**MC**    Marc Chan               5/31/2022, 5:47 AM

order to sell 20k ETHBTC over 24hrs is live and well

**> MC**    Marc Chan               6/1/2022, 5:47 AM

This just wrapped up. Compiling fills

**GG**    Greg Guttas Genesis            5/31/2022, 6:30 AM

hey @btcmaximalist wanted to check on your twap - given how much time its been out of limit, if we do trade within limit our twap algo will attempt to catch up for lost time, working more of an "inline" strategy until its back on schedule. do you want that or would you like us to start a fresh twap now so its more of a smooth execution if we go back into limit?

**> S**    s               5/31/2022, 6:31 AM

Start another 48hr, same limit

**GG**    Greg Guttas Genesis            5/31/2022, 6:31 AM

we can start either another 48 hr twap or we can restart it to complete  at the original end time

**GG**    Greg Guttas Genesis            5/31/2022, 6:31 AM

will do thanks

**N**    Ningxin               5/31/2022, 6:45 AM

hi team, just checking the remaining ALGO balance with you?

**GG**    Greg Guttas Genesis            5/31/2022, 6:46 AM

@leroygenesis

**L**    Leroy-exgenesis            5/31/2022, 6:46 AM

Moment

**L**    Leroy-exgenesis            5/31/2022, 6:48 AM

6.2mio ALGO left

**> N**    Ningxin               5/31/2022, 7:16 AM

did we set up another one yesterday?

**GG**    **Greg Guttas Genesis**                                          5/31/2022, 7:17 AM
agre, nothing live in ALGO

**N**    **Ningxin**                                              5/31/2022, 7:17 AM
then i see 8*10mio ALGO executed, is that right?

**GG**    **Greg Guttas Genesis**                                          5/31/2022, 7:17 AM
i agree

**N**    **Ningxin**                                              5/31/2022, 7:18 AM
then we shud have 16.2mio ALGO left i think

**> L**    **Leroy-exgenesis**                                          5/31/2022, 7:22 AM
agree here.

**L**    **Leroy-exgenesis**                                          5/31/2022, 7:18 AM
let me check in with ops

**N**    **Ningxin**                                              5/31/2022, 7:22 AM
ok cool, could u pls help set up to sell all balance into BTC over next 36 hours?

**GG**    **Greg Guttas Genesis**                                          5/31/2022, 7:23 AM
we sure can!

**GG**    **Greg Guttas Genesis**                                          5/31/2022, 7:28 AM
set to finish 7:25 PM EST on June 1

**N**    **Ningxin**                                              5/31/2022, 7:28 AM
ty

**JK**    **Jake Kaufman**  EDITED                                     5/31/2022, 1:25 PM
TWAP: 31 May 12:58am ET - 31 May 12:58pm ET
SOL sold: 49,000
Cost Price: 46.299
Net Price: 46.271
Comms: 0.028
Net Value: $2,267,279

TWAP: 31 May 12:58am ET - 31 May 12:58pm ET
BTC bought: 71.58082602
Cost Price: 31661.72
Net Price: 31674.39
Comms: 12.67
Net Value: $2,267,279

**Short Message Report**

| | |
|---|---|
| Conversations: 1 | Participants: 31 |
| Total Messages: 31 | Date Range: 6/1/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** • 31 messages on 6/1/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬    **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| MC | **Marc Chan** | 6/1/2022, 3:23 AM |
| | Hi Su | |
| MC | **Marc Chan** | 6/1/2022, 3:24 AM |
| | sure will ref it for another 48 hours | |
| MC | **Marc Chan** | 6/1/2022, 3:26 AM |
| | ref'd with same limit of 31.1 | |
| >S | **s** | 6/1/2022, 12:22 PM |
| | Chg lower to 30.7 | |
| S | **s** | 6/1/2022, 3:26 AM |
| | Ty | |
| MC | **Marc Chan** | 6/1/2022, 3:27 AM |
| | you're welcome | |
| MC | **Marc Chan** | 6/1/2022, 5:49 AM |
| | sure thing will set up momentarily | |
| N | **Ningxin** | 6/1/2022, 5:50 AM |
| | actually, i think we only have 19375 ETH left with you, could u pls help check? | |
| >L | **Leroy-exgenesis** | 6/1/2022, 5:50 AM |
| | agree here | |
| S | **s** | 6/1/2022, 5:50 AM |
| | Kk chg to 19375 eth for btc 24hrs | |
| >MC | **Marc Chan** | 6/1/2022, 5:53 AM |
| | This is live | |
| S | **s** | 6/1/2022, 6:30 AM |
| | Pls stop ethbtc twap | |
| MC | **Marc Chan** | 6/1/2022, 6:30 AM |
| | ok cancelling right now | |
| S | **s** | 6/1/2022, 6:30 AM |
| | Ty | |
| MC | **Marc Chan** | 6/1/2022, 6:32 AM |
| | fills coming up momentarily | |
| MC | **Marc Chan** | 6/1/2022, 6:45 AM |
| | TWAP: 31st May 5:53pm SGT - 1st Jun 6:30pm SGT | |

ETH sold: 526.44
Cost Price: 1938.37
Net Price: 1937.59
Comms: 0.78
Net Value: $1,020,024.88

TWAP: 31st May 5:53pm SGT - 1st Jun 6:30pm SGT
BTC bought:  32.231034
Cost Price: 31634.64
Net Price: 31647.29
Comms: 12.65
Net Value: $1,020,024.88

**> S**    **s**      6/1/2022, 7:25 AM

Pls continue this twap now

**GG**    **Greg Guttas Genesis**      6/1/2022, 7:25 AM

sure will do

**JK**    **Jake Kaufman**      6/1/2022, 12:22 PM

Ok will do

**GG**    **Greg Guttas Genesis**      6/1/2022, 12:22 PM

sure

**GG**    **Greg Guttas Genesis**      6/1/2022, 12:22 PM

we bought 564 btc so far

**GG**    **Greg Guttas Genesis**      6/1/2022, 2:33 PM

hey @btcmaximalist we have a large order to sell btc twap from 3-4 EST would you want to buy ~650 BTC during that window? can reduce your live TWAP by that amount. you leave ~2300 BTC to buy

**JK**    **Jake Kaufman**      6/1/2022, 7:57 PM

Hey team, your ALGO/BTC order is complete:

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 16,200,000
Price: $0.4049
Value: $6,559,380

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 209.19879176
Price: $31,354.77
Value: $6,559,380

**N**    **Ningxin**      6/1/2022, 8:02 PM

ok

**JK**    **Jake Kaufman**      6/1/2022, 8:02 PM

TWAP: 31st May 7:25am ET - 1st Jun 7:25pm ET
ALGO sold: 16200000.00
Cost Price: 0.4051
Net Price: 0.4049
Comms: 0.0002
Net Value: $6,559,380

TWAP: 31st May 7:25am ET - 1st Jun 7:25pm ET

BTC bought:  209.19879176
Cost Price: 31342.23
Net Price: 31354.77
Comms: 12.54
Net Value: $6,559,380

MC  **Marc Chan**                                                    6/1/2022, 11:56 PM
Hi sure

MC  **Marc Chan**                                                    6/1/2022, 11:57 PM
would you like to start the remainder proportionally over the next 24 hours?

MC  **Marc Chan**                                                    6/1/2022, 11:57 PM
or just stretch out the existing timing by 24 hours

> S  **s**                                                          6/1/2022, 11:58 PM
Stretch existing timing 24hrs

MC  **Marc Chan**                                                    6/1/2022, 11:58 PM
sounds good

MC  **Marc Chan**                                                    6/1/2022, 11:58 PM
that's amended

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 19 | Date Range: 6/2/2022 - 6/3/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** · 19 messages between 6/2/2022 - 6/3/2022 · Arianna Pretto-Sakmann · Clarissa - Genesis · Deleted Account (user1718862517) · Deleted Account (user1895178719) · Deleted Account (user2101677378) · Deleted Account (user888071622) · Deleted Account (user974550997) · Fung · Gordon Grant · Greg Guttas Genesis · Hamill @ Genesis · Ivan Lim | Genesis · Jake Kaufman · Jenny Jung - Genesis · Josh Lim · Kyle · Leroy-exgenesis · Marc Chan · Matt Ballensweig · Matthew Lepow · Mike Paleokrassas · Ningxin · Ravi Doshi · Reed Werbitt · Roshun Patel · Sean L · Sebastian Cohen · Wee Kuo · Wilson P · Yuan Qing L · s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| S | **s** | 6/2/2022, 12:13 AM |
| | Ty | |

| | | |
|---|---|---|
| MC | **Marc Chan** | 6/2/2022, 6:02 AM |
| | Trade just done | |

| | | |
|---|---|---|
| MC | **Marc Chan** | 6/2/2022, 6:17 AM |
| | Amended the above to reflect correct qty | |

| | | |
|---|---|---|
| N | **Ningxin** | 6/2/2022, 10:30 AM |
| | as i thought we usually treat usd & usdc interchangably, so just checking if you could help amend it? | |

| | | |
|---|---|---|
| DU | **Deleted Account (user1718862517)** | 6/2/2022, 10:30 AM |
| | checking | |

| | | |
|---|---|---|
| DU | **Deleted Account (user1718862517)** | 6/2/2022, 10:33 AM |
| | Exact amount is 48,804,954.17 USD on 11% agreed? | |

| | | |
|---|---|---|
| N | **Ningxin** | 6/2/2022, 10:34 AM |
| | yes correct | |

| | | |
|---|---|---|
| DU | **Deleted Account (user1718862517)** | 6/2/2022, 10:35 AM |
| | Will come back once fixed. Thank you | |

| | | |
|---|---|---|
| N | **Ningxin** | 6/2/2022, 10:35 AM |
| | sounds good, thank you | |

| | | |
|---|---|---|
| DU | **Deleted Account (user1718862517)** | 6/2/2022, 11:08 AM |
| | This is done. Updated invoice here | |

*Attachment: file_-Invoice_Three_Arrows_May2022_All.pdf (146 KB)*



*Image: thumbnail_-Invoice_Three Arrows_May2022_All.pdf_thumb.jpg (8 KB)*

> N    **Ningxin**                                                                      6/2/2022, 9:19 PM

agreed, have sent all USD&UDSC interest via fbn in USDC

SC    **Sebastian Cohen**                                                          6/2/2022, 6:37 PM

hey @btcmaximalist, heads up we have been trading above your BTC limit, let us know if you would like to adjust

> S    **s**                                                                              6/2/2022, 10:18 PM

Could u pls summarize how much done so far and what price

WK    **Wee Kuo**                                                                    6/2/2022, 10:19 PM

Sure

WK    **Wee Kuo**                                                                    6/2/2022, 10:21 PM

1288.82 BTC bot at 30405.13 on average

S    **s**                                                                               6/2/2022, 10:23 PM

OK, chg limit to 29.9, add 24hrs

> S    **s**                                                                              6/3/2022, 8:40 AM

Chg 29.2

WK    **Wee Kuo**                                                                    6/2/2022, 10:24 PM

ok on it

WK    **Wee Kuo**  EDITED                                                      6/2/2022, 10:26 PM

This is updated. Order now scheduled to complete at 3.25pm SGT on 5th June

**Genesis**

Genesis Asia Pacific Pte. Ltd
1 Raffles Quay, #45-03 North Tower, Singapore 048583
genesistrading.com

**Date: 05/31/2022**

**Three Arrows - Invoice Summary May 2022 (as of: 05/31/2022)**

Three Arrows Capital Ltd
7 Temasek Boulevard #21-04, Singapore, Singapore 038987

**Accrued Interest**

| Currency | Accrued Interest | Accrued Interest ($) |
|----------|------------------|----------------------|
| ETC | 4,149.54109590 | |
| FTT | 4,881.43835617 | |
| USD | | $15,358,034.16 |
| USDC | 1,899,706.522855 | |
| USDT | 478,767.123288 | |

**Outstanding Loan Balance**

| Currency | Loan Balance |
|----------|--------------|
| ETC | 331,100.00000000 |
| FTT | 690,000.00000000 |
| USD | 1,980,970,711.74 |
| USDC | 218,804,954.170000 |
| USDT | 50,000,000.000000 |

**Collateral Balance**

| Currency | Collateral Balance |
|----------|--------------------|
| BTC | 28,071.39689568 |
| ETH | 19,375.00000000 |
| GBTC | 35,533,048.00 |
| PledgeAVAX | 2,739,043.83000000 |
| PledgeNEAR | 13,583,265.00000000 |

# Genesis

**Genesis Asia Pacific Pte. Ltd**
1 Raffles Quay, #45-03 North Tower, Singapore 048583

genesistrading.com

**Date: 05/31/2022**
**Due By: 06/07/2022**

### Three Arrows - ETC May 2022 Invoice (as of: 05/31/2022)

Three Arrows Capital Ltd
7 Temasek Boulevard #21-04, Singapore, Singapore 038987

| Desc. | Qty | Orig. | Return | Rate | Days | Accrued |
|---|---|---|---|---|---|---|
| May 2022 Interest - Loan #129335 | 61,500 | 2021-09-30 | | 14.500% | 31 | 757.37671233 |
| May 2022 Interest - Loan #131808 | 100,000 | 2021-10-25 | | 14.500% | 31 | 1,231.50684932 |
| May 2022 Interest - Loan #136689 | 50,000 | 2021-12-09 | | 15.000% | 31 | 636.98630137 |
| May 2022 Interest - Loan #146096 | 119,600 | 2022-03-16 | | 15.000% | 31 | 1,523.67123288 |
| | | | | | | |
| **Total Due** | | | | | | **4,149.54109590 ETC** |
| **Equivalent USD (@ 23.53000000)** | | | | | | **$97,638.70** |
| **Outstanding Loan Balance** | | | | | | **331,100 ETC** |

### Genesis ETC address:

GAP Fireblocks Network

# Genesis

**Genesis Asia Pacific Pte. Ltd**
1 Raffles Quay, #45-03 North Tower, Singapore 048583

genesistrading.com

**Date: 05/31/2022**
**Due By: 06/07/2022**

### Three Arrows - FTT May 2022 Invoice (as of: 05/31/2022)

Three Arrows Capital Ltd
7 Temasek Boulevard #21-04, Singapore, Singapore 038987

| Desc. | Qty | Orig. | Return | Rate | Days | Accrued |
|---|---|---|---|---|---|---|
| May 2022 Interest - Loan #125592 | 290,000 | 2021-08-10 | | 7.750% | 31 | 1,908.83561644 |
| May 2022 Interest - Loan #147127 | 400,000 | 2022-03-31 | | 8.750% | 31 | 2,972.60273973 |
| | | | | | | |
| **Total Due** | | | | | | **4,881.43835617 FTT** |
| **Equivalent USD (@ 28.78000000)** | | | | | | **$140,487.80** |
| **Outstanding Loan Balance** | | | | | | **690,000 FTT** |

### Genesis FTT address:

GAP Fireblocks Network

# Genesis

**Genesis Asia Pacific Pte. Ltd**
1 Raffles Quay, #45-03 North Tower, Singapore 048583

genesistrading.com

**Date: 05/31/2022**
**Due By: 06/07/2022**

### Three Arrows - USD May 2022 Invoice (as of: 05/31/2022)

Three Arrows Capital Ltd
7 Temasek Boulevard #21-04, Singapore, Singapore 038987

| Desc. | Qty | Orig. | Return | Rate | Days | Accrued ($) |
|---|---|---|---|---|---|---|
| May 2022 Interest - Loan #136362 | 678,430,911.74 | 2021-12-06 | | 10.000% | 31 | 5,762,015.96 |
| May 2022 Interest - Loan #137738 | 200,000,000 | 2021-12-23 | 2022-05-16 | 10.500% | 15 | 863,013.70 |
| May 2022 Interest - Loan #139632 | 104,994,100 | 2022-01-09 | 2022-05-06 | 10.000% | 5 | 143,827.53 |
| May 2022 Interest - Loan #139877 | 38,804,954.17 | 2022-01-11 | 2022-05-06 | 11.000% | 5 | 58,473.22 |
| May 2022 Interest - Loan #142827 | 120,000,000 | 2022-02-09 | | 10.000% | 31 | 1,019,178.08 |
| May 2022 Interest - Loan #143415 | 200,000,000 | 2022-02-17 | | 10.000% | 31 | 1,698,630.14 |
| May 2022 Interest - Loan #146675 | 150,000,000 | 2022-03-24 | 2022-05-16 | 8.000% | 15 | 493,150.68 |
| May 2022 Interest - Loan #149046 | 10,000,000 | 2022-04-19 | 2022-05-06 | 11.000% | 5 | 15,068.49 |
| May 2022 Interest - Loan #149236 | 200,000,000 | 2022-04-21 | 2022-05-06 | 9.500% | 5 | 260,273.97 |
| May 2022 Interest - Loan #151761 | 304,994,100 | 2022-05-06 | 2022-05-16 | 9.670% | 10 | 808,025.46 |
| May 2022 Interest - Loan #152531 | 88,789,800 | 2022-05-15 | | 10.000% | 17 | 413,541.53 |
| May 2022 Interest - Loan #152525 | 150,000,000 | 2022-05-16 | | 10.000% | 16 | 657,534.25 |
| May 2022 Interest - Loan #152526 | 504,994,100 | 2022-05-16 | | 11.000% | 16 | 2,435,040.04 |
| May 2022 Interest - Loan #152723 | 150,892,500 | 2022-05-17 | | 11.000% | 15 | 682,116.78 |
| May 2022 Interest - Loan #153735 | 87,863,400 | 2022-05-30 | | 10.000% | 2 | 48,144.33 |

| | |
|---|---|
| **Total Due** | **$15,358,034.16** |
| **Outstanding Loan Balance** | **1,980,970,711.74 USD** |

### Genesis USD Interest Account:

| | |
|---|---|
| Receiving Bank Routing Number: | Redacted for PII |
| SWIFT: | Redacted for PII |
| Receiving Bank Name: | Signature Bank |
| Receiving Bank Address: | 565 Fifth Avenue |
| | New York, NY 10017 |
| Beneficiary Name: | Genesis Global Capital LLC |
| Beneficiary Address: | 111 Town Square Pl, Ste 1203 |
| | Jersey City, NJ 07310 |
| Beneficiary Account Number: | Redacted for PII |

# Genesis

**Genesis Asia Pacific Pte. Ltd**
1 Raffles Quay, #45-03 North Tower, Singapore 048583

genesistrading.com

**Date: 05/31/2022**
**Due By: 06/07/2022**

## Three Arrows - USDC May 2022 Invoice (as of: 05/31/2022)

Three Arrows Capital Ltd
7 Temasek Boulevard #21-04, Singapore, Singapore 038987

| Desc. | Qty | Orig. | Return | Rate | Days | Accrued |
|-------|-----|-------|--------|------|------|---------|
| May 2022 Interest - Loan #141046 | 60,000,000 | 2022-01-25 | 2022-05-16 | 8.000% | 15 | 197,260.273973 |
| May 2022 Interest - Loan #141338 | 225,000,000 | 2022-01-28 | 2022-05-06 | 10.000% | 5 | 308,219.178082 |
| May 2022 Interest - Loan #151771 | 158,804,954.17 | 2022-05-06 | | 10.000% | 26 | 1,131,213.372170 |
| May 2022 Interest - Loan #152524 | 60,000,000 | 2022-05-16 | | 10.000% | 16 | 263,013.698630 |
| | | | | | | |
| **Total Due** | | | | | | **1,899,706.522855 USDC** |
| **Equivalent USD (@ 1.000000)** | | | | | | **$1,899,706.52** |
| **Outstanding Loan Balance** | | | | | | **218,804,954.17 USDC** |

## Genesis USDC address:

GAP Fireblocks Network

# Genesis

**Genesis Asia Pacific Pte. Ltd**
1 Raffles Quay, #45-03 North Tower, Singapore 048583

genesistrading.com

**Date: 05/31/2022**
**Due By: 06/07/2022**

## Three Arrows - USDT May 2022 Invoice (as of: 05/31/2022)

Three Arrows Capital Ltd
7 Temasek Boulevard #21-04, Singapore, Singapore 038987

| Desc. | Qty | Orig. | Return | Rate | Days | Accrued |
|-------|----:|-------|--------|------|------|--------:|
| May 2022 Interest - Loan #149324 | 50,000,000 | 2022-04-22 | 2022-05-16 | 10.500% | 15 | 215,753.424658 |
| May 2022 Interest - Loan #152527 | 50,000,000 | 2022-05-16 | | 12.000% | 16 | 263,013.698630 |
| | | | | | | |
| **Total Due** | | | | | | **478,767.123288 USDT** |
| **Equivalent USD (@ 1.000000)** | | | | | | **$478,767.12** |
| **Outstanding Loan Balance** | | | | | | **50,000,000 USDT** |

## Genesis USDT address:

GAP Fireblocks Network



**Short Message Report**

| Conversations: 1 | Participants: 31 |
| --- | --- |
| Total Messages: 21 | Date Range: 6/3/2022 - 6/4/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** 21 messages between 6/3/2022 - 6/4/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| GG | **Greg Guttas Genesis** | 6/3/2022, 8:41 AM |
| | sure | |
| GG | **Greg Guttas Genesis** | 6/3/2022, 8:41 AM |
| | updated | |
| > S | **s** | 6/4/2022, 7:36 AM |
| | Pls append another 24hrs on this | |
| S | **s** | 6/3/2022, 8:50 AM |
| | Whats your OT rate on ETH? May have an ethbtc twap to run | |
| GG | **Greg Guttas Genesis** | 6/3/2022, 8:50 AM |
| | sec here | |
| DU | **Deleted Account (user1895178719)** | 6/3/2022, 8:50 AM |
| | Hey Su, what size? | |
| S | **s** | 6/3/2022, 8:50 AM |
| | Say 40k eth | |
| DU | **Deleted Account (user1895178719)** | 6/3/2022, 8:51 AM |
| | one moment here | |
| S | **s** | 6/3/2022, 8:51 AM |
| | K | |
| DU | **Deleted Account (user1895178719)** | 6/3/2022, 8:52 AM |
| | 3% OT 1.2x secured | |
| > DU | **Deleted Account (user1895178719)** | 6/3/2022, 3:31 PM |
| | Hey @btcmaximalist we discussed internally and could do this at 1.15x secured with 10% margin bands at 3.15% OT. Let us know if any interest | |
| S | **s** | 6/3/2022, 8:52 AM |
| | Noted ty | |
| S | **s** | 6/3/2022, 8:52 AM |
| | Nothing for now | |
| DU | **Deleted Account (user1895178719)** | 6/3/2022, 8:52 AM |
| | got it, thanks | |
| S | **s** | 6/3/2022, 8:53 AM |
| | Would you be able to do at 1:1? Given itd be a crypto/crypto order (ethbtc sell) | |
| DU | **Deleted Account (user1895178719)** | 6/3/2022, 8:53 AM |

Let me check here

**DU**  **Deleted Account (user1895178719)**                                    6/3/2022, 8:55 AM

Credit still tight at the moment, unfortunately would need 1.2x here even though crypto : crypto

**S**  **s**                                                                              6/3/2022, 8:55 AM

K noted

**DU**  **Deleted Account (user2101677378)**                                    6/3/2022, 1:28 PM

hi @btcmaximalist, can show a decent offer if you're still interested in 1wk upside

**> S**  **s**                                                                           6/3/2022, 1:35 PM

Ntg for now, ty

**DU**  **Deleted Account (user2101677378)**                                    6/3/2022, 1:36 PM

np

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 4 | Date Range: 6/4/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** · 4 messages on 6/4/2022 · Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 | **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

MC | **Marc Chan** | 6/4/2022, 7:36 AM
| Hi Su sure |

MC | **Marc Chan** | 6/4/2022, 7:38 AM
| that's amended to end at 3.25pm SGT on the 6th of June |

MC | **Marc Chan** | 6/4/2022, 7:39 AM
| roughly 44 hours from now |

S | **s** | 6/4/2022, 7:41 AM
| Ty |

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 3 | Date Range: 6/5/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** 3 messages on 6/5/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

WK    **Wee Kuo**                                       6/5/2022, 8:41 PM
         hi @btcmaximalist , order update

         Bot 1621 BTC so far at an average of 30296.08. Just under 7 hours to go to cover the remaining. Let us know if you like to extend.

> S    **s**                                             6/5/2022, 9:57 PM
         Extend 24hrs, chg 30.1k

WK    **Wee Kuo**                                        6/5/2022, 9:58 PM
         got it

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 21 | Date Range: 6/6/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** 21 messages on 6/6/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

S · **s**　　　　　　　　　　　　　　　　　　　　　　6/6/2022, 1:05 AM
Btw when we had dinner w leon the other day you guys mentioned being able to price ethbtc options now? Would it be possible to see a vol run

WK · **Wee Kuo**　　　　　　　　　　　　　　　　　　6/6/2022, 1:06 AM
Sure, getting vol trading team for you

WK · **Wee Kuo**　　　　　　　　　　　　　　　　　　6/6/2022, 1:06 AM
@yqlimm @Ivan_genesis

YL · **Yuan Qing L**　　　　　　　　　　　　　　　　6/6/2022, 1:06 AM
hi see you here

YL · **Yuan Qing L**　　　　　　　　　　　　　　　　6/6/2022, 1:43 AM
hey SZ seeing 1-2M ATM vols around 40-50 range.....may i check if there's any particular tenor/strike that you would be interested in?

S · **s**　　　　　　　　　　　　　　　　　　　　　　6/6/2022, 1:47 AM
Yeah could i pls see 25d put and call vol for 1m, 2m, 3m

YL · **Yuan Qing L**　　　　　　　　　　　　　　　　6/6/2022, 1:48 AM
one mom plz

YL · **Yuan Qing L**  EDITED　　　　　　　　　　　　6/6/2022, 2:27 AM
hey SZ apols for the delay - seeing around -13ish for 1M to around -11ish for 3M but let us provide a refreshing during NY hours as well

S · **s**　　　　　　　　　　　　　　　　　　　　　　6/6/2022, 2:28 AM
What does 13, 11, and then 40-50atm mean exactly? I might be misunderstanding it

YL · **Yuan Qing L**　　　　　　　　　　　　　　　　6/6/2022, 2:28 AM
apologies added the negative sign

YL · **Yuan Qing L**　　　　　　　　　　　　　　　　6/6/2022, 2:30 AM
seeing a 25delta call - 25delta put skew to be around -13 to -11range ... and ATM vols for ETH/BTC options to be around 40-50iv

S · **s**　　　　　　　　　　　　　　　　　　　　　　6/6/2022, 2:31 AM
Ok. Puts more expensive than calls, yes?

YL · **Yuan Qing L**　　　　　　　　　　　　　　　　6/6/2022, 2:32 AM
yes that's right

DU · **Deleted Account (user2101677378)**　　　　6/6/2022, 11:07 AM
hi @btcmaximalist anything specific we can take a look at for you on the ethbtc?

> S · **s**　　　　　　　　　　　　　　　　　　　　6/6/2022, 11:08 AM
Ntg for now, ty

**HG**  **Hamill @ Genesis**                                                      6/6/2022, 2:11 PM

Hi @btcmaximalist

on the TWAP order, order is still working. Showing details below for what has been executed thus far.

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 1,621.3
Price: $30,296.08
Value: $49,119,034.5

> **HG**  **Hamill @ Genesis**                                                   6/6/2022, 2:13 PM

can you please send the collateral top up for what has been executed thus far?

**GG**  **Greg Guttas Genesis**                                                  6/6/2022, 2:18 PM

TWAP: 1 June 3:44am ET - 6 June 2:05pm ET
BTC bought:  1,621.3
Cost Price: 30,283.97
Net Price: 30,296.08
Comms: 12.11
Net Value: $49,119,034.50

**WK**  **Wee Kuo**                                                              6/6/2022, 8:27 PM

@btcmaximalist , bumping the above.

Also, the remaining twap is scheduled to complete in 7 hours. Total of 1378.7 BTC to buy at 30100 limit. Let me know if you want to adjust

> **S**  **s**                                                                   6/6/2022, 8:46 PM

Chg 30.5

**WK**  **Wee Kuo**                                                              6/6/2022, 8:46 PM

Ok upping limit to 30500, no change in timing

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 8 | Date Range: 6/7/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** 8 messages on 6/7/2022 · Arianna Pretto-Sakmann · Clarissa - Genesis · Deleted Account (user1718862517) · Deleted Account (user1895178719) · Deleted Account (user2101677378) · Deleted Account (user888071622) · Deleted Account (user974550997) · Fung · Gordon Grant · Greg Guttas Genesis · Hamill @ Genesis · Ivan Lim | Genesis · Jake Kaufman · Jenny Jung - Genesis · Josh Lim · Kyle · Leroy-exgenesis · Marc Chan · Matt Ballensweig · Matthew Lepow · Mike Paleokrassas · Ningxin · Ravi Doshi · Reed Werbitt · Roshun Patel · Sean L · Sebastian Cohen · Wee Kuo · Wilson P · Yuan Qing L · s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| S | **s** | 6/7/2022, 3:28 AM |
| | Ty | |
| WK | **Wee Kuo** | 6/7/2022, 3:28 AM |
| | sure thing. let me combine | |
| S | **s** | 6/7/2022, 3:31 AM |
| | Ty | |
| L | **Leroy-exgenesis** | 6/7/2022, 3:33 AM |
| | @Ningxin_TAC , FBN for the additional 600 BTC of collat if that's ok ? | |
| > N | **Ningxin** | 6/7/2022, 3:48 AM |
| | sent | |
| N | **Ningxin** | 6/7/2022, 3:33 AM |
| | ok sure | |

WK **Wee Kuo**                                    6/7/2022, 3:43 AM

TWAP: 1 June 3:44am ET - 7 June 3:25am ET
BTC bought:  3000
Cost Price: 29960.53
Net Price: 29972.50
Comms: 11.97
Net Value: $89,917,500

L **Leroy-exgenesis** EDITED                      6/7/2022, 3:54 AM

600 BTC well rcv, thanks Ningxin

**Short Message Report**

| Conversations: 1 | Participants: 31 |
|---|---|
| Total Messages: 12 | Date Range: 6/12/2022 |

**Outline of Conversations**

 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]** 12 messages on 6/12/2022 • Arianna Pretto-Sakmann • Clarissa - Genesis • Deleted Account (user1718862517) • Deleted Account (user1895178719) • Deleted Account (user2101677378) • Deleted Account (user888071622) • Deleted Account (user974550997) • Fung • Gordon Grant • Greg Guttas Genesis • Hamill @ Genesis • Ivan Lim | Genesis • Jake Kaufman • Jenny Jung - Genesis • Josh Lim • Kyle • Leroy-exgenesis • Marc Chan • Matt Ballensweig • Matthew Lepow • Mike Paleokrassas • Ningxin • Ravi Doshi • Reed Werbitt • Roshun Patel • Sean L • Sebastian Cohen • Wee Kuo • Wilson P • Yuan Qing L • s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **TAC / Mini Genesis Private Group , chat between [s,Wee Kuo,Mike Paleokrassas,Sebastian Cohen,Ningxin,Roshun Patel,Marc Chan,Matt Ballensweig,Reed Werbitt,Wilson P,Leroy-exgenesis,Greg Guttas Genesis,Deleted Account (user974550997),Deleted Account (user1718862517),Kyle,Hamill @ Genesis,Fung,Ivan Lim | Genesis,Gordon Grant,Josh Lim,Deleted Account (user888071622),Deleted Account (user1895178719),Yuan Qing L,Clarissa - Genesis,Jake Kaufman,Deleted Account (user2101677378),Ravi Doshi,Arianna Pretto-Sakmann,Sean L,Matthew Lepow,Jenny Jung - Genesis]**

| | | |
|---|---|---|
| **S** | **s** | 6/12/2022, 2:44 AM |
| | Hi team, anyone around? | |
| **MC** | **Marc Chan** | 6/12/2022, 2:44 AM |
| | Hi Su yes how can we help? | |
| **S** | **s** | 6/12/2022, 2:44 AM |
| | Pls buy 25k ethbtc 24hrs, ty | |
| **MC** | **Marc Chan** | 6/12/2022, 2:45 AM |
| | sure just a moment to get that set up | |
| **MC** | **Marc Chan** | 6/12/2022, 2:49 AM |
| | that's live | |
| **S** | **s** | 6/12/2022, 7:34 PM |
| | Pls stop ethbtc buy | |
| **JK** | **Jake Kaufman** | 6/12/2022, 7:34 PM |
| | Sure | |
| **JK** | **Jake Kaufman** | 6/12/2022, 7:34 PM |
| | That's cancelled | |
| **JK** | **Jake Kaufman** | 6/12/2022, 7:35 PM |
| | Will have fill for you shortly | |

**JK** — **Jake Kaufman** — 6/12/2022, 7:44 PM

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: ETH
Entity: GAP
Quantity: 17,455.7298
Price: $1,481.39
Value: $25,858,743.57

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: BTC
Entity: GAP
Quantity: 939.29258206
Price: $27,530.02
Value: $25,858,743.57

**JK** — **Jake Kaufman** — 6/12/2022, 7:44 PM

Breakdown with raw fills in a moment

**JK** — **Jake Kaufman** — 6/12/2022, 7:50 PM

TWAP: 12 June 2:49am ET - 12 June 7:35pm ET
ETH bought:  17,455.7298

97

Cost Price: 1480.80
Net Price: 1481.39
Comms: 0.59
Net Value: $25,858,743.57

TWAP: 12 June 2:49am ET - 12 June 7:35pm ET
BTC sold:  939.29258206
Cost Price: 27541.03
Net Price: 27530.02
Comms: 11.01
Net Value: $25,858,743.57

TAC / Mini Genesis

Previous messages

26 May 2022

WK

22 34
Wee Kuo
In reply to this message
Hi @Ningxin_TAC , order complete

Client: Three Arrows Capital Ltd
Client Side  BUY
Asset: BTC
Entity  GAP
Quantity: 152.70074513
Price  $29,386 89
Value: $4,487,400

Client: Three Arrows Capital Ltd
Client Side  SELL
Asset: SOL
Entity  GAP
Quantity: 100,000
Price  $44 874
Value: $4,487,400

N

22:35
Ningxin
ok ty, could u pls do another 100k SOL twap sell into BTC?

WK

22:35
Wee Kuo
sure, setting this up shortly

N

23:01
Ningxin
@Weekuo may i check if we can set up another twap to sell150k AVAX into BTC over the next 24 hours?

WK

23:02
Wee Kuo
Sol>BTC is live btw
23 02
In reply to this message
Yes, sure  Is this from your collateral?

N

23 03
Ningxin

yes

WK

23 04
Wee Kuo
See 300k as collateral  Setting this up shortly
23:04
150k AVAX into BTC over 24 hours

N

23 04
Ningxin
ty

WK

23 08
Wee Kuo
In reply to this message
TWAP from 26May22 22:30hrs EST to 27May22 22:30hrs EST

BTC bought: 152.70074513
Cost Price  29,386 89
Net Price: 29375.14
Comms  11 75
Net Value: $4,487,400


TWAP from 26May22 22 30hrs EST to 27May22 22 30hrs EST

SOL sold  100,000
Cost Price: 44.874
Net Price  44 901
Comms: 0.027
Net Value  $4,487,400
23:23
Avax into BTC is now live

N

23 30
Ningxin
hi team, just checking if we can swap out some ETH collateral with BTC?

WK

23 30
Wee Kuo
@leroygenesis_OutofOffice will come back here

L

23 31
Leroy Lin - Genesis
How much are you looking to swap here

N

23:31
Ningxin
20k ETH?

L

23:33
Leroy Lin   Genesis
Will come back on this
27 May 2022

L

00 12
Leroy Lin - Genesis
1200 BTC back ?
Leroy Lin - Genesis invited Jenny Jung - Genesis
Leroy Lin   Genesis invited Clarissa   Genesis

L

00 12
Leroy Lin - Genesis
Just adding Jenny who is our new joiner on the lending side and Clarissa who heads ops in Asia

N

00 14
Ningxin
In reply to [this message](#)
1200 BTC works, and just to confirm we want to send in BTC to get ETH

L

00:15
Leroy Lin   Genesis
Sure that's fine
00 15
Fbn is good

N

00:15
Ningxin
ok great, are you able to settle shortly?

L

00:19
Leroy Lin   Genesis
Yeap we can

N

00:20
Ningxin
ok give us a moment,will let you know once out

00:26
sorry just checking if we can settle in 2 tranches? 600 btc each
00:27
got issue with custodian rn, got 600 btc ready now

C

00:27
Clarissa - Genesis
sure, we can do that

F

00:29
Fung
600 BTC:

# REDACTED FOR PII

C

00:34
Clarissa - Genesis
see it coming in! pending confirmation
00:34
we will send out the 1st tranche of ETH once confirmed

C

01:05
Clarissa - Genesis
BTC has landed, ETH is coming your way now, tx id:
0x50adde5d35ca9641f76d7e2433438c7a50b703903e1b447240802393a566df8b

F

01:06
Fung
Received 10k ETH ty

C

01:07
Clarissa - Genesis
no prob!

WK

02:47
Wee Kuo
In reply to this message
Order complete
02:48
Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 129.96146972
Price: $29,247.13
Value: $3,801,000

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 10,000,000
Price: $0.3801
Value: $3,801,000
02:51
In reply to this message
TWAP from 26May22 02:40hrs EST to 27May22 02:40hrs EST

BTC bought: 129.96146972
Cost Price: 29,247.13
Net Price: 29,235.44
Comms: 11.69
Net Value: $3,801,000


TWAP from 26May22 02:40hrs EST to 27May22 02:40hrs EST


ALGO sold: 10,000,000
Cost Price: 0.3801
Net Price: 0.38033
Comms: 0.00023
Net Value: $3,801,000

N

02:51
Ningxin
Ty, let's do another one pls?

WK

02:52
Wee Kuo
sure
02:52
Will update once live

WK

03:09
Wee Kuo
Next batch of Algo/btc now live

SZ

13:33
S Z
Hi team, could we pls buy 3k btcusd, only if under 28.5k, over 24hrs?

GG

13:34

Greg Guttas
hey
13:34
we can do that - borrowing cash or settling?

SZ

13:35
S Z
borrowing usd

GG

13:35
Greg Guttas
@HamillGenesis

SZ

13:37
S Z
110% collat, in gbtc/ethe ideally

HS

13:38
Hamill Serrant work
hey @btcmaximalist see you here. taking a look at what we can do

SZ

13:38
S Z
Sure ty

HS

13:50
Hamill Serrant work
we can lend the USD at 10%, 1.2x secured but we'd be looking for liquid collateral (BTC/ETH). Not much
appetite for additional gbtc/ethe unfortunately.

MB

13:50
Matt Ballensweig
the purchased BTC we'd hold and then would just need an additional 20% capital

SZ

13:51
S Z
Gotcha. Would 115% work for liquid collat?

MB

13:52
Matt Ballensweig
In reply to this message
yeah lets do it

13 52
15% excess in the form of BTC?
13 52
or ETH?

SZ

13:52
S Z
Prob btc

MB

13:52
Matt Ballensweig
cool that would work

SZ

13:53
S Z
Ok cool, could we do 5k btc over 48hrs actually, only if below 28.5k

MB

13:55
Matt Ballensweig
can finance 3k here - cant do full 5k - that would need to be funded

SZ

13:55
S Z
Ok sure, lets do 3k over 48hrs only if below 28.5k

GG

13:55
Greg Guttas
cool will get that started thanks

SZ

13:55
S Z
Ty

MB

13:56
Matt Ballensweig
thanks!

SZ

16:50
S Z
Pls adjust limit price to 28.8k

SC

16 51
Sebastian Cohen
Sure thing

SZ

16 51
S Z
Ty

YL

23 05
Yuan Qing L
gm
23:05
TWAP  26th May 10 58pm EST    27th May 10 58pm EST
BTC bought: 144.07460639
Cost Price  28,835 32
Net Price: 28,846.86
Comms  11 54
Net Value: $4,156,100.00

TWAP: 26th May 10:58pm EST - 27th May 10:58pm EST
SOL sold  100,000
Cost Price: 41.586
Net Price  41 561
Comms: 0.025
Net Value  $4,156,100 00


Client: Three Arrows Capital Ltd
Client Side  SELL
Asset: SOL
Entity  GAP
Quantity: 100,000
Price  $41 561
Value: $4,156,100

Client: Three Arrows Capital Ltd
Client Side  BUY
Asset: BTC
Entity  GAP
Quantity: 144.07460639
Price  $28,846 86
Value: $4,156,100
23 05
TWAP completed for SOL

N

23:06
Ningxin
ty

YL

23:06
Yuan Qing L
thanks for trade!

N

23:06
Ningxin
could u pls help twap sell another 150k SOL into BTC over next 24 hours?

YL

23:07
Yuan Qing L
sure one mom..setting up

N

23:08
Ningxin
another 150k AVAXBTC sell after current one is done, ty

YL

23:09
Yuan Qing L
sure let me update when order is live
23:15
SOL order live - twap to end on 28May22 at 2315 hrs (24hrs)
23:25
TWAP: 26th May 11:20pm EST - 27th May 11:20pm EST
BTC bought: 117.09327833
Cost Price: 28,830.85
Net Price: 28,842.39
Comms: 11.54
Net Value: $3,377,250.00

TWAP: 26th May 11:20pm EST - 27th May 11:20pm EST
AVAX sold: 150,000
Cost Price: 22.529
Net Price: 22.515
Comms: 0.014
Net Value: $3,377,250.00


Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: AVAX
Entity: GAP
Quantity: 150,000
Price: $22.515
Value: $3,377,250

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP

107

Quantity: 117.09327833
Price: $28,842.39
Value: $3,377,250
23:25
AVAX twap completed
23:25
will update when new order is live
28 May 2022

YL

00:15
Yuan Qing L
hihi apologies system issue on my end..AVAX twap live - to end on 29May22 at 0015 EST

YL

03:15
Yuan Qing L
TWAP: 27th May 03:00am EST - 28th May 03:00am EST
BTC bought: 126.92316098
Cost Price: 28,815.36
Net Price: 28,826.89
Comms: 11.53
Net Value: $3,658,800.00

TWAP: 27th May 03:00am EST - 28th May 03:00am EST
ALGO sold: 10,000,000
Cost Price: 0.36610
Net Price: 0.36588
Comms: 0.00022
Net Value: $3,658,800.00

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 10,000,000
Price: $0.36588
Value: $3,658,800

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 126.92316098
Price: $28,826.89
Value: $3,658,800
03:15
hi ALGO twap completed
03:15
ty

N

03:32

Ningxin
Ty, let's do one more Algobtc twap pls

YL

03:32
Yuan Qing L
sure
03:32
one mom

YL

03:48
Yuan Qing L
ALGO twap live - to end on 29May22 at 0350 EST
03:48
ty~

SZ

09:05
S Z
Btc limit twap, pls summarize fill qty and avg price

JK

09:06
Jake Kaufman
Hi Su, sure one moment

SZ

09:09
S Z
Ty also pls raise limit from 28.8k to 28.9k and extend time in force by 24hrs

JK

09:10
Jake Kaufman
So far 825.82 BTC filled at average price of 28705.68. And sure will do, twap now to complete by May 30 at
2pm ET

SZ

09:11
S Z
Tyty
09:24
Chg to 29.1 pls

JK

09:24
Jake Kaufman
Ok updating

SZ

10:05
S Z
Do u guys have any axes on 1w btc calls?
Jake Kaufman invited Sana Cherukuri

JK

10:06
Jake Kaufman
@sc_genesis is our weekend derivs trader, she will get back to you shortly on that

SZ

10:06
S Z
Ty

SC

10:20
Sana Cherukuri
hi
10:21
would be a slightly better seller but can always show a price either way
10:23
is there a specific strike / size i can quote for you?

SZ

10:26
S Z
Jun3, 31 32 and 33k pls

SZ

11:08
S Z
Bump

SC

11:09
Sana Cherukuri
checking

SZ

11:09
S Z
Ty

SC

11:09
Sana Cherukuri
rough size?

SZ

11:11

S Z
Say 1k btc

SC

11:18
Sana Cherukuri
ref 28920: offers $303 in the 31k, $157 in the 32k, $99 in the 33k
11:19
OCO

SZ

11:21
S Z
Thx, will ref if anything

SC

11:21
Sana Cherukuri
sure, if you have a target lmk

IL

23:26
Ivan Lim Genesis
150k SOL > BTC TWAP Done.

TWAP: 27th May 11:15pm EST - 28th May 11:15pm EST
BTC bought: 220.49390219
Cost Price: 28,914.40
Net Price: 28,925.97
Comms: 11.57
Net Value: $6,378,000

TWAP: 27th May 11:15pm EST - 28th May 11:15pm EST
SOL sold: 150,000
Cost Price: 42.546
Net Price: 42.520
Comms: 0.026
Net Value: $6,378,000


Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: SOL
Entity: GAP
Quantity: 150,000
Price: $42.52
Value: $6,378,000

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 220.49390219

111

Price: $28,925.97
Value: $6,378,000

N

23:39
Ningxin
Ty
23:40
Pls continue with another one

IL

23:40
Ivan Lim Genesis
Noted, sec on this.

IL

23:55
Ivan Lim Genesis
Another Tranche to Sell 150K Sol to Btc, 24hrs TWAP working.
Start time: 28th May 11:55pm EST
End time: 29th May 11:55pm EST
29 May 2022

IL

00:24
Ivan Lim Genesis
150k AVAX > BTC Done.

TWAP: 28th May 12:15am EST - 29th May 12:15pm EST
BTC bought: 123.46489697
Cost Price: 28,922.97
Net Price: 28,934.54
Comms: 11.57
Net Value: $3,572,400.00

TWAP: 28th May 12:15am EST - 29th May 12:15pm EST
AVAX sold: 150,000
Cost Price: 23.831
Net Price: 23.816
Comms: 0.015
Net Value: $3,572,400.00


Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: AVAX
Entity: GAP
Quantity: 150,000
Price: $23.816
Value: $3,572,400

Client: Three Arrows Capital Ltd
Client Side: BUY

Asset: BTC
Entity: GAP
Quantity: 123.46489697
Price: $28,934.54
Value: $3,572,400

IL

03:59
Ivan Lim Genesis
10M ALGO > BTC Done.

TWAP: 28th May 03:50am EST - 29th May 03:50am EST
BTC bought: 125.03777276
Cost Price: 28,944.47
Net Price: 28,956.05
Comms: 11.58
Net Value: $3,620,600

TWAP: 28th May 03:50am EST - 29th May 03:50am EST
ALGO sold: 10,000,000
Cost Price: 0.36228
Net Price: 0.36206
Comms: 0.00022
Net Value: $3,620,600

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 10,000,000
Price: $0.36206
Value: $3,620,600

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 125.03777276
Price: $28,956.05
Value: $3,620,600

SZ

04:07
S Z
Hi team, pls sell 20k ethbtc 24hrs

IL

04:08
Ivan Lim Genesis
Hi, sec please.
04:14
we are working to shift coin to exchange and set it up. moment pls. tks.

SZ

04:16
S Z
Sure ty

IL

04:45
Ivan Lim Genesis
Above order is Live.
04:46
To confirm. We are selling 20k Eth from your collateral into Btc. Thanks.

SZ

04:47
S Z
Confirmed ty

IL

04:47
Ivan Lim Genesis
Thank you!

SZ

07:41
S Z
In reply to this message
Chg to 29.4 pls

JK

07:41
Jake Kaufman
Sure thing

SZ

08:13
S Z
In reply to this message
Chg to 29.7 pls

JK

08:13
Jake Kaufman
Ok

SZ

22:02
S Z
In reply to this message
Chg to 30 pls

WK

22:02
Wee Kuo
In reply to this message
Hey @btcmaximalist gm. Trading above your limit now. Let me know if you want to increase or stay
22:02
perfect will get that changed

SZ

22:04
S Z
In reply to this message
Chg 32

WK

22:04
Wee Kuo
ok

SZ

22:04
S Z
Summary of curr fills?

WK

22:04
Wee Kuo
coming up give me a few to grab that
22:10
So far, ~2303 BTC bought at average of 28973.77

SZ

22:17
S Z
How much time in force remaining on balance?

WK

22:17
Wee Kuo
just under 16 hours.
22:18
Schedule to finish up 30th 2pm EST

SZ

22:18
S Z
K ty

WK

22:18

Wee Kuo
urw

SZ

22:19
S Z
Shorten remainder to 4hrs pls

WK

22:20
Wee Kuo
got it.
22:24
order scheduled to complete ~2.20pm SGT

SZ

23:29
S Z
Just for my guide, do u guys have any additional capacity on usd OT v btc?

L

23:29
Leroy Lin - Genesis
Hi Su, will need to wait for NY to get back to you on this

SZ

23:31
S Z
Sure nws

WK

23:58
Wee Kuo
In reply to [this message](#)
This is done

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: SOL
Entity: GAP
Quantity: 150,000
Price: $44.051
Value: $6,607,650

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 225.58889913
Price: $29,290.67
Value: $6,607,650
30 May 2022

WK

00:04
Wee Kuo
In reply to this message
TWAP: 28th May 11:55pm EST - 29th May 11:55pm EST
BTC bought: 225.58889913
Cost Price: 29278.96
Net Price: 29,290.67
Comms: 11.71
Net Value: $6,607,650

TWAP: 28th May 11:55pm EST - 29th May 11:55pm EST
SOL sold: 150,000
Cost Price: 44.077
Net Price: 44.051
Comms: 0.026
Net Value: $6,607,650

N

00:10
Ningxin
Ty, would like one more same twap to run over next 24 hours

WK

00:10
Wee Kuo
ok sure

WK

00:25
Wee Kuo
In reply to this message
This is live.

MB

00:53
Matt Ballensweig
In reply to this message
hey @btcmaximalist - we can do more at 1.2x in liquids at 10.75% per ann OT
00:53
up to $100mm

SZ

00:55
S Z
Does 1.15x work?

L

01:11
Leroy Lin - Genesis
In reply to this message

will be back on this

SZ

01:12
S Z
Ty

WK

02:32
Wee Kuo
Hey guys, BTC twap wrapped up. Fills coming up shortly

SZ

02:34
S Z
Kk

WK

02:39
Wee Kuo
Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 3,000
Price: $29,287.8
Value: $87,863,400
02:45
In reply to [this message](#)
TWAP: 27th May 1:56pm EST - 30th May 1:20am EST
BTC bought: 3000
Cost Price: 29276.09
Net Price: 29287.80
Comms: 11.71
Net Value: $87,863,400

L

03:14
Leroy Lin - Genesis
t/s with Ningxin now... let us know when you can post the additional 450 BTC of collateral... [@mballen4791](#)
will confirm on the 115% when he gets in.

N

03:15
Ningxin
signed, and will post 450 btc shortly
03:17
btw, may i send in more BTC to swap back ETH collateral?

L

03:17
Leroy Lin - Genesis

sure we can do that... how much are you looking for?

N

03:18
Ningxin
can we do 1k BTC for now?

L

03:20
Leroy Lin - Genesis
16k ETH back if that's ok? for 1k BTC

N

03:21
Ningxin
ok can
03:22
are you able to settle shortly?

L

03:22
Leroy Lin - Genesis
yea ops is around
03:22
we can settle shortly
03:22
so you will send in 1450 BTC and we will send over 16k ETH

N

03:22
Ningxin
yep
03:27
BTC sent

C

03:29
Clarissa - Genesis
we are seeing it come through, pending confirmation

L

03:29
Leroy Lin - Genesis
do see the ticket, will confirm when it lands

C

03:57
Clarissa - Genesis
BTC has landed, we will send out the ETH shortly
04:04
ETH is paid out now, tx id: 0x0dd4d4c17361d882b1a97ac28203a26cc0b94678cd64ef4be2641c57171cda4f

N

04:04
Ningxin
see it ty
04:12
just checking if you are good to do one more BTC to ETH swap for 1k BTC?

L

04:12
Leroy Lin - Genesis
hi Ningxin
04:12
sure
04:13
same ratio is ok
04:13
1k for 16k

N

04:14
Ningxin
great, sending coins shortly
04:20
sent

C

04:20
Clarissa - Genesis
see 1k BTC coming through, pending confirmation

WK

05:02
Wee Kuo
In reply to this message
This order is done
05:03
Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 1,231.88207472
Price: $29,595.69
Value: $36,458,400

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ETH
Entity: GAP
Quantity: 20,000
Price: $1,822.92
Value: $36,458,400

SZ

05:04
S Z
In reply to this message
Ty. Pls initiate another 20k ethbtc sell
05:04
Over 24hrs

WK

05:06
Wee Kuo
Got it, give me a few to set this up

C

05:10
Clarissa - Genesis
1k BTC has landed, we will process the ETH shortly
05:14
16k ETH send out, tx id: 0x55d6f463b7e6a4048ba72b92a12497aca7dcdaba9ac06765fec785c46fa1d2d7

F

05:15
Fung
Ty rcvd

WK

05:27
Wee Kuo
In reply to this message
@btcmaximalist this is now live. Selling 20k ETH into BTC over 24 hours

SZ

05:27
S Z
Ty

MB

07:34
Matt Ballensweig
Hey @btcmaximalist - unfortunately risk tightening screws on us and have to be at 1.2x on next tranche.

SZ

09:44
S Z
In reply to this message
Ok sure. Pls buy 3k btc 48hrs, limit 30.1k

JK

09:45
Jake Kaufman

Hi Su, sure we'll get that going now
09:46
That's live, to be completed June 1 9:45am ET

SZ

09:47
S Z
Ty

MB

10:04
Matt Ballensweig
In reply to this message
just confirming this is on borrow?
10:04
if so, mind sending over the BTC excess as this works? (or ETH excess)

SZ

10:10
S Z
In reply to this message
Wed prefer sending after if thats ok. As we may not end up getting filled, etc

MB

10:10
Matt Ballensweig
thats fine - we'll mark the loan at 1.2x and follow up post execution for the collat
10:10
thanks Su!

SZ

10:10
S Z
Ty

SZ

23:38
S Z
In reply to this message
Chg 30.9

MC

23:38
Marc Chan Work
Hi Su sure amending that

SZ

23:39
S Z
Ty
31 May 2022

WK

00:50
Wee Kuo
In reply to [this message](#)
Order complete

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 224.85291423
Price: $30,946.23
Value: $6,958,350

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: SOL
Entity: GAP
Quantity: 150,000
Price: $46.389
Value: $6,958,350

N

00:51
Ningxin
ok ty
00:51
could u pls help sell remaining 199k SOL into BTC over next 30 hours?

WK

00:52
Wee Kuo
Let me just confirm the amount
00:52
In reply to [this message](#)
TWAP: 30th May 12:25pm SGT - 31st May 12:25pm SGT
BTC bought: 224.85291423
Cost Price: 30933.86
Net Price: 30946.23
Comms: 12.37
Net Value: $6,958,350

TWAP: 30th May 12:25pm SGT - 31st May 12:25pm SGT
SOL sold: 150,000
Cost Price: 46.417
Net Price: 46.389
Comms: 0.028
Net Value: $6,958,350
00:54
In reply to [this message](#)
Hey, we only see 49k remaining

N

00:54
Ningxin
actually you are right
00:54
lets sell the remaining 49k over 12 hours

WK

00:54
Wee Kuo
perfect on it

MC

00:59
Marc Chan Work
In reply to this message
Hey @Ningxin_TAC order is live
00:59
for 12 hours

N

00:59
Ningxin
ty

SZ

03:16
S Z
In reply to this message
Chg 31.1

YL

03:17
Yuan Qing L
hi sz
03:17
sure one mom plz
03:18
In reply to this message
amended..ty!

MC

05:32
Marc Chan Work
In reply to this message
order is done. moment to compile the fills

SZ

05:37
S Z

In reply to [this message]
Ty. Pls do another 20k ethbtc 24hrs
05:37
Sell

MC

05:38
Marc Chan Work
sure mp
05:40
TWAP: 30th May 5:27pm SGT - 31st May 5:27pm SGT
ETH sold: 20,000
Cost Price: 1945.92
Net Price: 1945.14
Comms: 0.78
Net Value: $38,902,800

TWAP: 30th May 5:27pm SGT - 31st May 5:27pm SGT
BTC bought: 1,247.68281247
Cost Price: 31167.57
Net Price: 31180.04
Comms: 12.47
Net Value: $38,902,800
05:41
In reply to [this message]
still working on moving some coins about

SZ

05:41
S Z
Kk

MC

05:47
Marc Chan Work
order to sell 20k ETHBTC over 24hrs is live and well

GG

06:30
Greg Guttas
hey @btcmaximalist wanted to check on your twap   given how much time its been out of limit, if we do trade
within limit our twap algo will attempt to catch up for lost time, working more of an "inline" strategy until its
back on schedule  do you want that or would you like us to start a fresh twap now so its more of a smooth
execution if we go back into limit?
06 31
we can start either another 48 hr twap or we can restart it to complete at the original end time

SZ

06:31
S Z
In reply to [this message]
Start another 48hr, same limit

GG

06:31
Greg Guttas
will do thanks

N

06:45
Ningxin
hi team, just checking the remaining ALGO balance with you?

GG

06:46
Greg Guttas
@leroygenesis

L

06:46
Leroy Lin   Genesis
Moment
06 48
6.2mio ALGO left

N

07:16
Ningxin
In reply to this message
did we set up another one yesterday?
07:17
In reply to this message
i see this confo as the last one

GG

07:17
Greg Guttas
agre, nothing live in ALGO

N

07:17
Ningxin
then i see 8*10mio ALGO executed, is that right?

GG

07:17
Greg Guttas
i agree

N

07:18
Ningxin
then we shud have 16.2mio ALGO left i think

L

07:18
Leroy Lin   Genesis
let me check in with ops
07 22
In reply to [this message](#)
agree here

N

07 22
Ningxin
ok cool, could u pls help set up to sell all balance into BTC over next 36 hours?

GG

07 23
Greg Guttas
we sure can!
07:28
set to finish 7 25 PM EST on June 1

N

07 28
Ningxin
ty

JK

13 18
Jake Kaufman
In reply to [this message](#)
This order is complete, detailed breakdown coming shortly:

Client: Three Arrows Capital Ltd
Client Side  BUY
Asset: BTC
Entity  GAP
Quantity: 71.58082602
Price  $31,674 39
Value: $2,267,279

Client: Three Arrows Capital Ltd
Client Side  SELL
Asset: SOL
Entity  GAP
Quantity: 49,000
Price  $46 271
Value: $2,267,279
13 25
TWAP: 31 May 12:58am ET - 31 May 12:58pm ET
SOL sold  49,000
Cost Price: 46.299
Net Price  46 271

Comms: 0.028
Net Value: $2,267,279

TWAP: 31 May 12:58am ET - 31 May 12:58pm ET
BTC bought: 71.58082602
Cost Price: 31661.72
Net Price: 31674.39
Comms: 12.67
Net Value: $2,267,279
1 June 2022

SZ

03:23
S Z
In reply to [this message](#)
Lets refresh this again, ty

MC

03:23
Marc Chan Work
Hi Su
03:24
sure will ref it for another 48 hours
03:26
ref'd with same limit of 31.1

SZ

03:26
S Z
Ty

MC

03:27
Marc Chan Work
you're welcome

MC

05:47
Marc Chan Work
In reply to [this message](#)
This just wrapped up. Compiling fills

SZ

05:49
S Z
In reply to [this message](#)
Ty lets do another 20k ethbtc 24hrs sell pls

MC

05:49
Marc Chan Work
sure thing will set up momentarily

N

05:50
Ningxin
actually, i think we only have 19375 ETH left with you, could u pls help check?

L

05:50
Leroy Lin - Genesis
In reply to [this message](#)
agree here

SZ

05:50
S Z
Kk chg to 19375 eth for btc 24hrs

MC

05:53
Marc Chan Work
In reply to [this message](#)
This is live
06:02
In reply to [this message](#)
TWAP: 31st May 5:47pm SGT - 1st Jun 5:47pm SGT
ETH sold: 20,000
Cost Price: 1946.96
Net Price: 1946.18
Comms: 0.78
Net Value: $38,923,600

TWAP: 31st May 5:47pm SGT - 1st Jun 5:47pm SGT
BTC bought: 1,226.1247520
Cost Price: 31732.53
Net Price: 31745.22
Comms: 12.69
Net Value: $38,923,600

SZ

06:30
S Z
Pls stop ethbtc twap

MC

06:30
Marc Chan Work
ok cancelling right now

SZ

06:30
S Z
Ty

MC

06:32
Marc Chan Work
fills coming up momentarily
06:45
TWAP: 31st May 5:53pm SGT - 1st Jun 6:30pm SGT
ETH sold: 526.44
Cost Price: 1938.37
Net Price: 1937.59
Comms: 0.78
Net Value: $1,020,024.88

TWAP: 31st May 5:53pm SGT - 1st Jun 6:30pm SGT
BTC bought: 32.231034
Cost Price: 31634.64
Net Price: 31647.29
Comms: 12.65
Net Value: $1,020,024.88

SZ

07:25
S Z
In reply to this message
Pls continue this twap now

GG

07:25
Greg Guttas
sure will do

SZ

12:22
S Z
In reply to this message
Chg lower to 30.7

JK

12:22
Jake Kaufman
Ok will do

GG

12:22
Greg Guttas
sure
12:22
we bought 564 btc so far

GG

14:33
Greg Guttas

hey @btcmaximalist we have a large order to sell btc twap from 3-4 EST would you want to buy ~650 BTC during that window? can reduce your live TWAP by that amount. you leave ~2300 BTC to buy

JK

19:57
Jake Kaufman
Hey team, your ALGO/BTC order is complete:

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: ALGO
Entity: GAP
Quantity: 16,200,000
Price: $0.4049
Value: $6,559,380

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 209.19879176
Price: $31,354.77
Value: $6,559,380

N

20:02
Ningxin
ok

JK

20:02
Jake Kaufman
TWAP: 31st May 7:25am ET - 1st Jun 7:25pm ET
ALGO sold: 16200000.00
Cost Price: 0.4051
Net Price: 0.4049
Comms: 0.0002
Net Value: $6,559,380

TWAP: 31st May 7:25am ET - 1st Jun 7:25pm ET
BTC bought: 209.19879176
Cost Price: 31342.23
Net Price: 31354.77
Comms: 12.54
Net Value: $6,559,380

SZ

23:56
S Z
In reply to this message
Chg lower to 29.4 and extend another 24hrs

131

MC

23:56
Marc Chan Work
Hi sure
23:57
would you like to start the remainder proportionally over the next 24 hours?
23:57
or just stretch out the existing timing by 24 hours

SZ

23:58
S Z
In reply to this message
Stretch existing timing 24hrs

MC

23:58
Marc Chan Work
sounds good
23:58
that's amended
2 June 2022

MC

00:09
Marc Chan Work
In reply to this message
To confirm order slated to end on Saturday 3.25pm SGT

SZ

00:13
S Z
Ty

MC

06:01
Marc Chan Work
In reply to this message
TWAP: 1st Jun 7:30pm SGT - 2nd Jun 5:53pm SGT
ETH sold: 18,848.56
Cost Price: 1842.9
Net Price: 1842.16
Comms: 0.74
Net Value: $34,722,063.29

TWAP: 1st Jun 7:30pm SGT - 2nd Jun 5:53pm SGT
BTC bought: 1148.37397624
Cost Price: 30223.76
Net Price: 30235.85
Comms: 12.09
Net Value: $34,722,063.29

06:02
Trade just done
06:17
Amended the above to reflect correct qty

N

10:29
Ningxin
In reply to this message
hi team, looking at May invoice, and i found the return of 115mio usdc on 6 May was booked to return 10%
loan, while we booked return of 48.8+mio usd at 11% and then balance to the 10% one, as i mentioned earlier
10:30
as i thought we usually treat usd & usdc interchangably, so just checking if you could help amend it?

DG

10:30
Dan Gleim
checking
10:33
Exact amount is 48,804,954.17 USD on 11% agreed?

N

10:34
Ningxin
yes correct

DG

10:35
Dan Gleim
Will come back once fixed. Thank you

N

10:35
Ningxin
sounds good, thank you

DG

11:08
Dan Gleim
Invoice_Three Arrows_May2022_All.pdf
146.0 KB
This is done. Updated invoice here

SC

18:37
Sebastian Cohen
hey @btcmaximalist, heads up we have been trading above your BTC limit, let us know if you would like to
adjust

N

21:19

Ningxin
In reply to this message
agreed, have sent all USD&UDSC interest via fbn in USDC

SZ

22:18
S Z
In reply to this message
Could u pls summarize how much done so far and what price

WK

22:19
Wee Kuo
Sure
22:21
1288.82 BTC bot at 30405.13 on average

SZ

22:23
S Z
OK, chg limit to 29.9, add 24hrs

WK

22:24
Wee Kuo
ok on it
22:26
This is updated. Order now scheduled to complete at 3.25pm SGT on 5th June
3 June 2022

SZ

08:40
S Z
In reply to this message
Chg 29.2

GG

08:41
Greg Guttas
sure
08:41
updated

SZ

08:50
S Z
Whats your OT rate on ETH? May have an ethbtc twap to run

GG

08:50
Greg Guttas

sec here

GT

08:50
Griffin Tiedy - Genesis
Hey Su, what size?

SZ

08:50
S Z
Say 40k eth

GT

08:51
Griffin Tiedy - Genesis
one moment here

SZ

08:51
S Z
K

GT

08:52
Griffin Tiedy - Genesis
3% OT 1.2x secured

SZ

08:52
S Z
Noted ty
08:52
Nothing for now

GT

08:52
Griffin Tiedy - Genesis
got it, thanks

SZ

08:53
S Z
Would you be able to do at 1:1? Given itd be a crypto/crypto order (ethbtc sell)

GT

08:53
Griffin Tiedy - Genesis
Let me check here
08:55
Credit still tight at the moment, unfortunately would need 1.2x here even though crypto : crypto

SZ

08:55
S Z
K noted

SC

13:28
Sana Cherukuri
hi @btcmaximalist, can show a decent offer if you're still interested in 1wk upside

SZ

13:35
S Z
In reply to this message
Ntg for now, ty

SC

13:36
Sana Cherukuri
np

GT

15:31
Griffin Tiedy - Genesis
In reply to this message
Hey @btcmaximalist we discussed internally and could do this at 1.15x secured with 10% margin bands at 3.15% OT. Let us know if any interest

SZ

23:02
S Z
In reply to this message
Ty, will let u know
4 June 2022

SZ

07:36
S Z
In reply to this message
Pls append another 24hrs on this

MC

07:36
Marc Chan Work
Hi Su sure
07:38
that's amended to end at 3.25pm SGT on the 6th of June
07:39
roughly 44 hours from now

SZ

07:41
S Z
Ty
5 June 2022

WK

20:41
Wee Kuo
hi @btcmaximalist , order update

Bot 1621 BTC so far at an average of 30296.08. Just under 7 hours to go to cover the remaining. Let us know if you like to extend.

SZ

21:57
S Z
In reply to this message
Extend 24hrs, chg 30.1k

WK

21:58
Wee Kuo
got it
6 June 2022

SZ

01:05
S Z
Btw when we had dinner w leon the other day you guys mentioned being able to price ethbtc options now? Would it be possible to see a vol run

WK

01:06
Wee Kuo
Sure, getting vol trading team for you
01:06
@yqlimm @Ivan_genesis

YL

01:06
Yuan Qing L
hi see you here

YL

01:43
Yuan Qing L
hey SZ seeing 1-2M ATM vols around 40-50 range.....may i check if there's any particular tenor/strike that you would be interested in?

SZ

01:47
S Z
Yeah could i pls see 25d put and call vol for 1m, 2m, 3m

YL

01:48
Yuan Qing L
one mom plz

YL

02:27
Yuan Qing L
hey SZ apols for the delay - seeing around -13ish for 1M to around -11ish for 3M but let us provide a refreshing during NY hours as well

SZ

02:28
S Z
What does 13, 11, and then 40-50atm mean exactly? I might be misunderstanding it

YL

02:28
Yuan Qing L
apologies added the negative sign
02:30
seeing a 25delta call - 25delta put skew to be around -13 to -11range ... and ATM vols for ETH/BTC options to be around 40-50iv

SZ

02:31
S Z
Ok. Puts more expensive than calls, yes?

YL

02:32
Yuan Qing L
yes that's right

SC

11:07
Sana Cherukuri
hi @btcmaximalist anything specific we can take a look at for you on the ethbtc?

SZ

11:08
S Z
In reply to this message
Ntg for now, ty

HS

14:11
Hamill Serrant work
Hi @btcmaximalist

on the TWAP order, order is still working. Showing details below for what has been executed thus far.

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 1,621.3
Price: $30,296.08
Value: $49,119,034.5
14:13
In reply to this message
can you please send the collateral top up for what has been executed thus far?

GG

14:18
Greg Guttas
TWAP: 1 June 3:44am ET - 6 June 2:05pm ET
BTC bought: 1,621.3
Cost Price: 30,283.97
Net Price: 30,296.08
Comms: 12.11
Net Value: $49,119,034.50

WK

20:27
Wee Kuo
@btcmaximalist , bumping the above.

Also, the remaining twap is scheduled to complete in 7 hours. Total of 1378.7 BTC to buy at 30100 limit. Let me know if you want to adjust

SZ

20:46
S Z
In reply to this message
Chg 30.5

WK

20:46
Wee Kuo
Ok upping limit to 30500, no change in timing
7 June 2022

WK

03:27
Wee Kuo

In reply to this message
hi Su, order complete

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 1,378.7
Price: $29,592
Value: $40,798,490.4

SZ

03:28
S Z
In reply to this message
Ty could you pls combine w the other one? Just for simplicity
03:28
Ty

WK

03:28
Wee Kuo
sure thing. let me combine
03:30
In reply to this message
Combined fill for the above split

Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: BTC
Entity: GAP
Quantity: 3,000
Price: $29,972.5
Value: $89,917,500

SZ

03:31
S Z
Ty

L

03:33
Leroy Lin - Genesis
@Ningxin_TAC , FBN for the additional 600 BTC of collat if that's ok ?

N

03:33
Ningxin
ok sure

WK

03:37

Wee Kuo
In reply to this message
Made a correction here and the fills are now correct.
03:43
TWAP: 1 June 3:44am ET - 7 June 3:25am ET
BTC bought: 3000
Cost Price: 29960.53
Net Price: 29972.50
Comms: 11.97
Net Value: $89,917,500

N

03:48
Ningxin
In reply to this message
sent

L

03:54
Leroy Lin - Genesis
600 BTC well rcv, thanks Ningxin
8 June 2022

SZ

05:04
S Z
Are you guys able to quote options on gbtc?

YL

05:04
Yuan Qing L
hi
05:04
mom checking on this
05:12
Hi Sz, we have not traded options on GBTC and will have to check with legal on this as there could be certain
limitations for us to trade the trust directly to hedge...let us get back to you on this
12 June 2022

SZ

02:44
S Z
Hi team, anyone around?

MC

02:44
Marc Chan Work
Hi Su yes how can we help?

SZ

02:44
S Z

Pls buy 25k ethbtc 24hrs, ty

MC

02:45
Marc Chan Work
sure just a moment to get that set up
02:49
that's live

SZ

19:34
S Z
Pls stop ethbtc buy

JK

19:34
Jake Kaufman
Sure
19:34
That's cancelled
19:35
Will have fill for you shortly
19:44
Client: Three Arrows Capital Ltd
Client Side: BUY
Asset: ETH
Entity: GAP
Quantity: 17,455.7298
Price: $1,481.39
Value: $25,858,743.57

Client: Three Arrows Capital Ltd
Client Side: SELL
Asset: BTC
Entity: GAP
Quantity: 939.29258206
Price: $27,530.02
Value: $25,858,743.57
19:44
Breakdown with raw fills in a moment
19:50
TWAP: 12 June 2:49am ET - 12 June 7:35pm ET
ETH bought: 17,455.7298
Cost Price: 1480.80
Net Price: 1481.39
Comms: 0.59
Net Value: $25,858,743.57

TWAP: 12 June 2:49am ET - 12 June 7:35pm ET
BTC sold: 939.29258206
Cost Price: 27541.03
Net Price: 27530.02

Comms: 11.01
Net Value: $25,858,743.57
14 June 2022

N

19:54
Ningxin
hi, there are a few interested parties on a bailout. For their information, we would like you to inform us of the loan + collat that you see from your side vs 3ac

MB

19:54
Matt Ballensweig
hi there
19:55
we will revert here shortly
20:07
do you guys wanna hop on a call shortly?

K

20:50
Kyle
Would like to setup a call
20:50
Are you free now?

MB

20:51
Matt Ballensweig
let me wrangle some people, give me one min
20:59
9:15PM ET work in 15 min?
20:59
I can send over invites

K

20:59
Kyle
Ok

MB

20:59
Matt Ballensweig
to you and @Ningxin_TAC or @btcmaximalist too?

K

20:59
Kyle
Me

MB

21:15
Matt Ballensweig
invite out and on call now
15 June 2022

MB

09:51
Matt Ballensweig
hey @kyled1 @btcmaximalist you guys want to check in anywhere from 12PM - 2PM ET?

MB

11:07
Matt Ballensweig
otherwise this evening similar time to last night works as well too
16 June 2022

MB

00:37
Matt Ballensweig
Checking in here again @kyled1 and @btcmaximalist

**EXHIBIT M**

**Margin call notices issued by Debtors to Three Arrows Capital Ltd**

**To:**      Kyle Davies[kyle@threearrowscap.com]; Ningxin Zhang[nxzhang@threearrowscap.com]; TAC Operations[operations@threearrowscap.com]
**Cc:**      GGC Operations[Operations@genesiscap.co]; Risk[risk@genesiscap.co]; Matthew Ballensweig | Genesis Cap[Matt@genesiscap.co]
**From:**    Adim Offurum[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=F5CADA7A8755441BA4D5A7EF78BA6C75-ADIM]
**Sent:**    Mon 6/13/2022 9:54:48 AM (UTC)
**Subject:**  RE: Genesis Capital Margin Call => 6/12/2022 (Three Arrows Capital) - 2nd Notice

Thank you, Kyle.

As indicated earlier, Genesis loans remain below the margin refill threshold. The updated margin call amount is $290,443,060. Please advise and/or acknowledge when you have a moment.

Regards



**Adim Offurum**
Vice President, Credit Risk
Genesis Trading | Genesis Capital
+1 929.284.0983
Telegram: @Adim_Genesis

---

**From:** Kyle Davies <kyle@threearrowscap.com>
**Sent:** Monday, June 13, 2022 12:13 AM
**To:** Risk <risk@genesiscap.co>; Ningxin Zhang <nxzhang@threearrowscap.com>; TAC Operations <operations@threearrowscap.com>
**Cc:** GGC Operations <Operations@genesiscap.co>; Risk <risk@genesiscap.co>; Matthew Ballensweig | Genesis Cap <Matt@genesiscap.co>
**Subject:** Re: Genesis Capital Margin Call => 6/12/2022 (Three Arrows Capital)

[EXTERNAL]
Acknowledged

_____

Kyle DAVIES

Three Arrows Capital
kyle@threearrowscap.com

---

**From:** Sujal Gandhi <sujal@genesiscap.co> on behalf of Risk <risk@genesiscap.co>
**Sent:** Monday, June 13, 2022 11:47:27 AM
**To:** Ningxin Zhang <nxzhang@threearrowscap.com>; TAC Operations <operations@threearrowscap.com>; Kyle Davies <kyle@threearrowscap.com>
**Cc:** GGC Operations <Operations@genesiscap.co>; Risk <risk@genesiscap.co>; Matthew Ballensweig | Genesis Cap <Matt@genesiscap.co>
**Subject:** Genesis Capital Margin Call => 6/12/2022 (Three Arrows Capital)

Hi Team,

Genesis loans have reached margin refill threshold – seeing a margin call for $189,259,615. Can you please let us know how you would like to satisfy the call?

Thanks,

**Sujal Gandhi**
Credit Risk Associate
Genesis Trading / Genesis Capital
917.434.2657
Telegram:  @Sujal_Genesis

_____

This e-mail may contain information that is confidential or protected from disclosure. If you are not an intended recipient of this e-mail, please delete and do not duplicate or redistribute it. Unless specifically indicated, this e-mail is not an offer nor a solicitation to buy or sell any securities, investment products or other financial product or service, an official confirmation of any transaction, nor an official statement of Three Arrows Capital Pte. Ltd. Please note that we reserve the right to review content of emails and instant messages passing through our IT systems. Calls may be recorded for quality and monitoring purposes. Please refer to our website at www.threearrowscap.com for any further Terms and Conditions

_____

This e-mail may contain information that is confidential or protected from disclosure. If you are not an intended recipient of this e-mail, please delete and do not duplicate or redistribute it. Unless specifically indicated, this e-mail is not an offer nor a solicitation to buy or sell any securities, investment products or other financial product or service, an official confirmation of any transaction, nor an official statement of Three Arrows Capital Pte. Ltd. Please note that we reserve the right to review content of emails and instant messages passing through our IT systems. Calls may be recorded for quality and monitoring purposes. Please refer to our website at www.threearrowscap.com for any further Terms and Conditions

_____

## EXHIBIT N

**Notice of Default issued by Genesis Global Capital, LLC and Genesis Asia Pacific Pte. Ltd. to Three Arrows Capital Ltd on June 13, 2022**

June 13, 2022

**VIA EMAIL**

Three Arrows Capital Ltd
7 Temasek Boulevard #21-04
Singapore, Singapore 038987
Attn: Kyle Davis, Su Zhu
Kyle@threearrowscap.com
su.zhu@threearrowscap.com

RE:    **NOTICE OF DEFAULT**

Mr. Davies, Mr. Zhu

Reference is made to the Master Loan Agreement dated January 10, 2019 (the "2019 MLA") between Genesis Global Capital, LLC ("Genesis Capital") and Three Arrows Capital Ltd ("Three Arrows"), subsequently assigned to Genesis Asia Pacific PTE. LTD. ("Genesis Asia Pacific") and the Master Loan Agreement dated January 24, 2020 (the "2020 MLA") between Genesis Asia Pacific and Three Arrows (the "2020 MLA", and with 2019 MLA, together considered, the "MLAs". All defined terms used herein shall have the meanings ascribed to them in the MLAs.

By this letter, Genesis Capital and Genesis Asia Pacific (together considered, "Genesis") notify you that Three Arrows is in breach of its obligations under Section IV(c) of both MLAs to contribute US$334,295,523 in Additional Collateral to Genesis. Such breach constitutes an Event of Default under both MLAs.

You are further notified that in light of Three Arrows' breach, Genesis shall be entitled to exercise its rights under the MLAs, including but not limited to the remedies listed in Section IX(a) of the MLAs. You are further advised that the entire Loan Balance outstanding for any Loan under the MLAs is now immediately due and payable.

Genesis reserves all rights in law and equity, including but not limited to the right under Section IX(d) of the MLAs to seek the difference between the amount of any replacement Digital Currency obtained pursuant to Sections IX(a)(3) and IX(a)(4) of the MLAs and the amount of the Collateral, plus interest thereon.

Sincerely,

Arianna Pretto-Sakmann
Chief Legal Officer
Genesis Global Capital, LLC
Director
Genesis Asia Pacific PTE. LTD.

111 Town Square Place, Suite 1203
Jersey City, NJ 07310
Email: lend@genesiscap.co
Call: 917.536.6804

genesiscapital.co
twitter.com/gen_capital
linkedin.com/company/genesis-global-capital

## **EXHIBIT O**

## **Collateral Substitution Chart**

### Collateral Substitutions Summary Chart

| Fill Date & Time[1] | Substituted Assets (Quantity) | Provided Assets (Quantity) |
|---|---|---|
| | USD Conversion Rate[2] | USD Conversion Rate |
| | USD Value of Substituted Assets[3] | USD Value of Provided Assets |
| May 22, 2023 12:05am GMT | 10,000,000 ALGO | 146.453812108582 BTC |
| | 0.43024 | 29,377.18 |
| | **$4,302,400.00** | **$4,302,400.00** |
| May 22, 2022 12:37am GMT | 10,000,000 ALGO | 145.95804007 BTC |
| | 0.4369 | 29,931.89 |
| | **$4,368,800** | **$4,368,800** |
| May 24, 2022 12:07am GMT | 10,000,000 ALGO | 145.24858258 BTC |
| | 0.43426 | 29,897.71 |
| | **$4,342,600** | **$4,342,600** |
| May 24, 2022 1:31am GMT | 10,000,000 ALGO | 139.10316122 BTC |
| | 0.40962 | 29,447.21 |
| | **$4,096,200** | **$4,096,200** |
| May 26, 2022 2:35am GMT | 10,000,000 ALGO | 136.3298214 BTC |
| | 0.40518 | 29,720.57 |
| | **$4,051,800** | **$4,051,800** |
| May 26, 2022 | 100,000 SOL | 152.70074513 BTC |

---

[1]     The date and time of each substitution is based on the time that Genesis sent the transaction receipt, colloquially termed the transaction "fills," via Telegram. In the few instances where transaction fills were not provided because the parties agreed on prices between themselves rather than going into the market (more on this below), the date and time of the substitution is based on the time the parties confirmed receipt of the relevant assets.

[2]     For most of the collateral substitutions, Genesis priced the relevant digital assets based on the USD conversion rates in the market over the period of time that 3AC requested the substitution be made. However, for three of the substitutions, Genesis and 3AC agreed on a price for the relevant digital assets between themselves rather than going into the market. For these substitutions, which are flagged below, the USD conversion rates provided herein are based on the price of each digital asset at approximately the date and time of the trade as provided by Crypto.com.

[3]     For the collateral substitutions where Genesis priced the relevant digital assets based on the USD conversion rates in the market, the USD value of the substituted assets is exactly equivalent to the USD value of the provided assets. For the three substitutions where Genesis and 3AC agreed on a price for the relevant digital assets between themselves rather than going into the market, there are slight mismatches between the USD value of the substituted assets and that of the provided assets because the market spot price may have differed slightly from the agreed-upon price, but it is clear that the parties intended those substitutions to be for equivalent value.

| 11:08pm GMT | 44.874 | 29,386.89 |
|---|---|---|
| | **$4,487,400** | **$4,487,400** |
| May 27, 2022 | 10,000,000 ALGO | 129.96146972 BTC |
| 2:51am GMT | 0.3801 | 29,247.13 |
| | **$3,801,000** | **$3,801,000** |
| May 27, 2022 | 10,000 ETH | 600 BTC |
| 1:06am GMT[4] | 1,773.89 | 29,074.50 |
| | **$17,738,900** | **$17,444,700** |
| May 27, 2022 | 100,000 SOL | 144.07460639 BTC |
| 11:05am GMT | 41.561 | 28,846.86 |
| | **$4,156,100** | **$4,156,100** |
| May 27, 2022 | 150,000 AVAX | 117.09327833 BTC |
| 11:25pm GMT | 22.515 | 28,842.39 |
| | **$3,377,250** | **$3,377,250** |
| May 28, 2022 | 10,000,000 ALGO | 126.92316098 BTC |
| 3:15am GMT | 0.36588 | 28,826.89 |
| | **$3,658,800** | **$3,658,800** |
| May 28, 2022 | 150,000 SOL | 220.49390219 BTC |
| 11:26pm GMT | 42.52 | 28,925.97 |
| | **$6,378,000** | **$6,378,000** |
| May 29, 2022 | 150,000 AVAX | 123.46489697 BTC |
| 12:24am GMT | 23.816 | 28,934.54 |
| | **$3,572,400** | **$3,572,400** |
| May 29, 2022 | 10,000,000 ALGO | 125.03777276 BTC |
| 3:59am GMT | 0.36206 | 28,956.05 |
| | **$3,620,600** | **$3,620,600** |
| May 30, 2022 | 150,000 SOL | 225.58889913 BTC |
| 12:04am GMT | 44.051 | 29,290.67 |

---

[4]     For this collateral substitution, Genesis and 3AC agreed on a price for the relevant digital assets between themselves rather than going into the market. The ETH to USD and BTC to USD conversions provided here are based on the respective spot prices of these assets on May 27, 2022 at 1:00am GMT, as provided by Crypto.com.

| | | |
|---|---|---|
| | **$6,607,650** | **$6,607,650** |
| May 30, 2022 | 16,000 ETH | 1,000 BTC |
| 4:04am GMT[5] | 1,880.07 | 30,353.07 |
| | **$30,081,120** | **$30,353,070** |
| May 30, 2022 | 20,000 ETH | 1,231.88207472 BTC |
| 5:03am GMT | 1,822.92 | 29,595.69 |
| | **$36,458,400** | **$36,458,400** |
| May 30, 2022 | 16,000 ETH | 1,000 BTC |
| 5:15am GMT[6] | 1,874.51 | 30,332.83 |
| | **$29,992,160** | **$30,332,830** |
| May 31, 2022 | 150,000 SOL | 224.85291423 BTC |
| 12:52am GMT | 46.389 | 30,946.23 |
| | **$6,958,350** | **$6,958,350** |
| May 31, 2022 | 20,000 ETH | 1,247.68281247 BTC |
| 5:40am GMT | 1,945.14 | 31,180.04 |
| | **$38,902,800** | **$38,902,800** |
| May 31, 2022 | 20,000 ETH | 1,226.1247520 BTC |
| 6:02am GMT | 1,946.18 | 31,745.22 |
| | **$38,923,600** | **$38,923,600** |
| May 31, 2022 | 49,000 SOL | 71.58082602 BTC |
| 1:18pm GMT | 46.271 | 31,674.39 |
| | **$2,267,279** | **$2,267,279** |
| June 1, 2022 | 526.44 ETH | 32.231034 BTC |
| 6:45am GMT | 1,937.59 | 31,647.29 |
| | **$1,020,024.88** | **$1,020,024.88** |
| June 1, 2022 | 16,200,000 ALGO | 209.19879176 BTC |

---

[5]     For this collateral substitution, Genesis and 3AC agreed on a price for the relevant digital assets between themselves rather than going into the market. The ETH to USD and BTC to USD conversions provided here are based on the respective spot prices of these assets on May 30, 2022 at 4:00am GMT, as provided by Crypto.com.

[6]     For this collateral substitution, Genesis and 3AC agreed on a price for the relevant digital assets between themselves rather than going into the market. The ETH to USD and BTC to USD conversions provided here are based on the respective spot prices of these assets on May 30, 2022 at 5:00am GMT, as provided by Crytpo.com.

| | | |
|---|---|---|
| 8:02am EST | 0.4049 | 31,354.77 |
| | **$6,559,380** | **$6,559,380** |
| June 2, 2022 | 18,848.56 ETH | 1148.37397624 BTC |
| 6:01am GMT | 1,842.16 | 30,235.85 |
| | **$34,722,063.29** | **$34,722,063.29** |
| June 12, 2022 | 939.29258206 BTC | 17,455.7298 ETH |
| 7:44pm GMT | 27,530.02 | 1,481.39 |
| | **$25,858,743.57** | **$25,858,743.57** |

## EXHIBIT P

## Defenses To Conversion And Preference Claims By Category Of 3AC PoC Assets

**Defenses To Conversion And Preference Claims By Category Of 3AC PoC Assets**

| | PoC Asset | Quantity | Origin | Defenses to Purported Conversion Claim Under BVI and State Law | Defenses to Purported Preference Claim Under BVI Law |
|---|---|---|---|---|---|
| 1 | Interest Payment | Approximately $18 million | The Interest Payment was comprised of several payments on June 2-3, 2022 from 3AC to GAP for interest accrued during the month of May 2022 on outstanding loans.  *See* Objection at ¶ 58. | 1.  N/A (a conversion claim cannot be brought with respect to these assets). | 1.  Insufficient pleading. 2.  These assets were transferred in the ordinary course of business. 3.  3AC has not pled and proven its insolvency. |
| 2 | Loan Repayment | 115,000,000 USDC | The Loan Repayment was a payment from 3AC to GAP for the purpose of repaying several outstanding open term loans from GAP to 3AC in full or in part.  *See* Objection at ¶ 59. | 1.  N/A (a conversion claim cannot be brought with respect to these assets). | 1.  Insufficient pleading. 2.  These assets were transferred in the ordinary course of business. 3.  3AC has not pled and proven its insolvency. |
| 3 | Foreclosure Assets | 23,256.97 BTC | Collateral (as defined under the MLAs) transferred in connection with purchase price loans of USD of equal or greater value (*i.e.*, loans of USD that Genesis made to 3AC for the purpose of allowing 3AC to buy such BTC) from January 10, 2022 to June 7, 2022.  *See* Objection at ¶ 60(a). | 1.  Insufficient pleading. 2.  Genesis has a valid security interest in all of these assets. 3.  No claim in conversion where claim arises out of contract. | 1.  Insufficient pleading. 2.  Exercising remedies pursuant to a valid security interest is not a preference under BVI law. 3.  These assets were pledged and/or transferred in connection with the contemporaneous exchange of value, |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | specifically related to the extension of new loans to 3AC.<br>4. These assets were transferred in the ordinary course of business.<br>5. 3AC has not pled and proven its insolvency. |
| 4 | Foreclosure Assets | 9,131.06 BTC and 17,455.73 ETH | Collateral (as defined in the MLAs) transferred through collateral substitutions requested by 3AC between May 23, 2022 and June 12, 2022.<br><br>The original Collateral that was substituted through these transfers was comprised of: (1) 71,375 ETH that 3AC transferred to GAP on December 6, 2021 as collateral for a purchase price loan of USD; and (2) 96,200,000 ALGO, 699,000 SOL, 300,000 AVAX, and 50,000 ETH, all of which 3AC transferred to GAP as Additional Collateral in response to a May 9, 2022 margin call that GAP issued | 1. Insufficient pleading.<br>2. Genesis has a valid security interest in these assets.<br>3. No claim in conversion where claim arises out of contract. | 1. Insufficient pleading.<br>2. Exercising remedies pursuant to a valid security interest is not a preference under BVI law.<br>3. Some of these assets (*i.e.,* 71,375 ETH that was later substituted) were transferred in connection with the contemporaneous exchange of value, specifically related to the extension of new loans to 3AC.<br>4. The collateral substitutions are not preferences under BVI law because they were exchanges of one digital asset for another of equal value. |

2

| | | | | | |
|---|---|---|---|---|---|
| | | | to 3AC. *See* Objection at ¶ 60(b). | | 5. These assets were transferred in the ordinary course of business.<br>6. 3AC has not pled and proven its insolvency. |
| 5 | Foreclosure Assets | 960 BTC and 13,172,000 GBTC | Transferred as Additional Collateral (as defined in the MLAs) pursuant to margin calls on February 20, 2022 (960 BTC) and May 9, 2022 (13,172,000 GBTC). *See* Objection at ¶ 60(c). | 1. Insufficient pleading.<br>2. Genesis has a valid security interest in these assets.<br>3. No claim in conversion where claim arises out of contract. | 1. Insufficient pleading.<br>2. Exercising remedies pursuant to a valid security interest is not a preference under BVI law.<br>3. These assets were transferred in the ordinary course of business.<br>4. 3AC has not pled and proven its insolvency. |
| 6 | Liens | 2,739,043.83 AVAX and 13,583,265 NEAR | Collateral that 3AC pledged to GAP pursuant to a January 27, 2022 Pledge Agreement. These tokens were pledged as collateral for a loan of 225,000,000 USDC from GAP to 3AC on January 28, 2022. *See* Objection at ¶ 61. | 1. Insufficient pleading.<br>2. Genesis has a valid security interest in these assets.<br>3. No claim in conversion where claim arises out of contract. | 1. Insufficient pleading.<br>2. Exercising remedies pursuant to a valid security interest is not a preference under BVI law.<br>3. These assets were pledged and/or transferred in connection with the contemporaneous exchange of value, specifically related to |

3

| | | | | |
|---|---|---|---|---|
| | | | | the extension of new loans to 3AC. <br> 4.  These assets were pledged in the ordinary course of business. <br> 5.  3AC has not pled and proven its insolvency. |

[AM_ACTIVE 405049180_7]

**<u>EXHIBIT Q</u>**

**<u>Excerpts Of Telegram Communications Relating To Underlying Transactions At Issue</u>**

**Excerpts Of Telegram Communications Relating To Underlying Transactions At Issue[1]**

1.    The collateralization arrangements with respect to the 13,172,000 GBTC transferred as Additional Collateral in response to a May 9, 2022 margin call that Genesis issued to 3AC are memorialized in the Telegram communications attached to the Objection as Exhibit L:

(a) On May 10, 2022, the Genesis team messaged the 3AC team saying, "hey guys - I know risk issued another margin call for $170mm - we can take $125mm at current prices here - let us know best means of top up." Ningxin Zhang (3AC) responds, "Hi Matt, **we can top up in GBTC, could u pls confirm the amount, and we will transfer over tonight**" and Leroy Lin (Genesis) messages, "Hi Ningxin, **can take 7.772mio units of GBTC as collateral.**" Zhang responds, "**sure, will do.**"

(b) On May 12, 2022, the Genesis team messaged the 3AC team saying, "Hey guys - given general contraction in leverage in market we're going to need to pull back some unsecured USD that's OT or top up with majors 1:1. We'd be looking to **call $200mm here** or just have that amount worth of ETH or BTC posted on it." After discussion of which assets 3AC would send to satisfy the $200 million margin call, the Genesis team messages. "**5.4mm [GBTC shares] work?**" Ningxin Zhang (3AC) responds, "**ok can.**" Fung Wong (3AC) then confirmed the GBTC was being transferred.

(c) The 7,772,000 GBTC transferred on May 10 and the 5,400,000 GBTC transferred on May 12 together is equal to the 13,172,000 referenced by the Joint Liquidators.

2.    The collateralization arrangement with respect to the approximately 17,455.73 ETH transferred through collateral substitutions requested by 3AC is memorialized in the Telegram communications attached to the Objection as Exhibit L:

(a) On June 12, 2022, Su Zhu (3AC) messaged the Genesis team, "**Pls buy 25k ethbtc 24hrs, ty.**" A Genesis employee responded, "**sure just a moment to get that set up . . . that's live.**" Zhu then says, "**Pls stop ethbtc buy.**" The Genesis employee replied, "**Sure . . . That's cancelled** . . . Will have fill for you shortly." The employee then confirmed "**17,455.73 ETH**" was booked and "**939.29**" "**BTC**" was sold.

---

[1]    Because the Telegram communications can be difficult to parse in their native form, the Debtors have prepared these transaction-by-transaction excerpts, which are verbatim quotations from the relevant documents, solely for ease of reference and convenience of the Court.

3.     The collateralization arrangements with respect to the approximately

23,256.97 BTC transferred as Collateral for purchase price loans of USD are memorialized in the

Telegram communications attached to the Objection as Exhibit L:

(a) On January 9, 2022, after 3AC requested a purchase price loan of USD worth 5,000 BTC, a Genesis employee sends a message to Su Zhu (3AC) stating, "**Hi Su, we can lend you half the size… 2.5k BTC equivalent in cash at 10%… let us know if that works for you**" and Su Zhu responds, "**Ok sure, let's do 2.5k btc 24hrs.**" A Genesis employee then confirmed, "that's live," and the next day confirms "**2,500**" "**BTC**" was booked.

(b) On January 10, after 3AC had requested a loan of $200 million to buy BTC the night prior, a Genesis employee sent a message to Su Zhu (3AC), stating, "Hi Su, we can do the full size of 200mio, if we can meet in the middle of 11%, 1:1 versus BTC/ETH. It might be a mix of USDT/USD." Su Zhu responds, "**ok. pls buy $200m of BTC v USD for 48hrs starting at 8pm SGT today (in 6hrs).**" The Genesis employee responds, "**Hey Su… we will get this going.**" The next day, the Genesis employee confirms "**4,793.33534653**" "**BTC**" was booked.

(c) On January 11, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "could u pls do **another $200mio btcusd buy** twap [time-weighted average price] over 72 hours?" A Genesis employee responded, "**Confirming this will be adding to loan balance as well at same terms as yesterday?**" Zhang responded, "**Yes confirmed.**" After execution, Zhang messaged "**ok, will book to loan/collateral.**" Later that day, the Genesis team confirmed "**913.63**" "**BTC**" was booked.

(d) On May 14, 2022, Su Zhu (3AC) messaged the Genesis team, "**Pls buy 3k btc twap 24hrs.**" A Genesis employee responds, "Hey Su are you looking to fund this with a cash borrow or will this be settled." Zhu responds, "What rate can u show on cash?" The Genesis employee responds, "10.5%." Zhu responds, "**10% ok?**" The Genesis employee says, "**sure that works**" and Zhu says, "**K cool lets do that.**" The next day, the Genesis team confirmed "**3,000**" "**BTC**" was booked.

(e) On May 17, 2022, an Genesis employee messaged the 3AC team, "**just for clarity here, TAC will be borrowing the USD needed to fund the 5k BTC buy at 11%.**" Su Zhu (3AC) responds, "**confirmed.**" A Genesis employee then responds, "order to buy **5k BTC over 48 hours is now live.**" On May 15, 2022, the Genesis team confirmed "**5,000**" "**BTC**" was booked.

(f) On May 27, 2022, Su Zhu (3AC) messaged the Genesis team, "Hi team, could we pls **buy 3k btcusd, only if under 28.5k, over 24hrs?**" Zhu then confirmed 3AC was "borrowing usd." A Genesis employee responded, "**the purchased**

BTC we'd hold and then would just need an additional 20% capital." Zhu responded, "Gotcha. Would 115% work for liquid collat?" A Genesis employee responds stating, "yea lets do it." The next day, a Genesis employee messaged Zhang Zhang (3AC), "t/s with Zhang now... let us know when you can post the additional 450 BTC of collateral." Zhang responded, "signed," referring to a loan term sheet in the Genesis employee's message, "and will post 450 btc shortly." Thus, in total, 3AC transferred 3,450 BTC with this transaction.

(g) On May 30, 2022, a Genesis employee messaged Su Zhu (3AC), "Hey @btcmaximalist - unfortunately risk tightening screws on us and have to be at 1.2x on next tranche. Zhu responds, "Ok sure. Pls buy 3k btc 48hrs, limit 30.1k." A Genesis employee responded, "Hi Su, sure we'll get that going now," and later says, "That's live, to be completed June 1 9:45am ET." A different Genesis employee then sent the message, "just confirming this is on borrow? if so, mind sending over the BTC excess as this works? (or ETH excess)." Zhu responds, "Wed prefer sending after if thats ok. As we may not end up getting filled, etc." The Genesis employee responded, "thats fine – we'll mark the loan at 1.2x and follow up post execution for the collat." The trades take a few days to complete. Later, on June 7, 2022, a Genesis employee messaged Ningxin Zhang (3AC), "@Ningxin_TAC , FBN [Fireblocks Network] for the additional 600 BTC of collat if that's ok ?" Ningxin Zhang (3AC) responded, "ok sure" and then says, "sent." Lin then writes, "600 BTC well rcv, thanks Ningxin." Thus, in total, 3,600 BTC was provided to Genesis with this transaction.

(h) Adding all of the collateral transferred in connection with these transactions together (2,500 BTC, 4,793.33534653 BTC, 913.63 BTC, 3,000 BTC, 5,000 BTC, 3,450 BTC, and 600 BTC) totals 23,256.97 BTC.

4.       The collateralization arrangements with respect to the approximately 960

BTC transferred as Additional Collateral in response to a margin call are memorialized in the

Telegram communications attached to the Objection as Exhibit L:

(a) On February 20, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "hi team, sent you 1mio FTT for return & 610 BTC for margin top up via FBN . . . more will follow to cover the margin call . . . most probably in BTC or GBTC, will let you know."

(b) On February 23, 2022, Zhang messaged a Genesis employee, "happy to top up the rest in BTC, does 350 BTC work?" A Genesis employee responded, "that works." Fung Wong (3AC) then confirmed the BTC was transferred.

(c) Adding all of the collateral transferred in connection with these transactions together (610 BTC and 350 BTC) totals 960 BTC.

5.     The collateralization arrangements with respect to the approximately 9,131.06 BTC transferred through collateral substitutions requested by 3AC are memorialized in the Telegram communications attached to the Objection as Exhibit L:

(a) On May 20, 2033, Ningxin Zhang (3AC) messaged the Genesis team, "could u pls help twap sell **10mio ALGO into BTC for the next 24 hours?**" A Genesis employee responded, "**Ok sure, let us get some coins moving and let you know once live.**" The Genesis employee then followed up, "Just to confirm, this is 10M units, not 10M USD worth, right?" and Zhang confirms, "**Yep 10m units.**" On May 22, 2022, the Genesis team confirms "**146.453812108582**" "**BTC**" was booked.

(b) On May 22, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "Ty, after order is done **pls do another 10mill ALGO units vs BTC . . . [s]ell algo vs btc 24hrs.**" A Genesis employee responded, "**sure one moment**." On May 23, 2022, A Genesis employee confirms "**145.95804007**" "**BTC**" was booked, to which Zhang replied, "**Ty. . .**"

(c) On May 22, 2022, Ningxin Zhang (3AC) asked the Genesis team, "could u pls continue with **another 10mio algobtc twap?**" A Genesis employee responded, "**Sure, let me get some coins moving and let you know when done. Same 24 hours?**" Zhang says, "**Yes pls.**" On May 24, 2022, the Genesis team confirms "**145.24858258**" "**BTC**" was booked.

(d) On May 24, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "would like to **sell another 10mio ALGOBTC for next 24 hours.**" A Genesis employee responded, "**[s]ure, will get that set up shortly.**" On May 25, 2022, a Genesis employee confirms "**139.10316122**" "**BTC**" was booked.

(e) On May 25 2022, following the above transaction, Ningxin Zhang (3AC) messaged the Genesis team, "**ty, can we do another same order?**" A Genesis employee responded, "**of course . . . setting up shortly.**" The Genesis team then confirms "**136.3298214**" "**BTC**" was booked.

(f) On May 26, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "**hi team, just checking if we can swap out some ETH collateral with BTC?**" Zhang then requested to substitute "**20k ETH**" for "**1200 BTC back.**" A Genesis employee confirms, "**Sure that's fine.**" The next day, Zhang messages, "sorry just **checking if we can settle in 2 tranches? 600 btc each** . . . got issue with custodian rn, got 600 btc ready now." A Genesis employee responds, "**sure, we can do that.**" Fung Wong (3AC) then confirmed the BTC was transferred.

(g) On May 25, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "**[L]ets sell 100k SOL for the next 24 hours.**" A Genesis employee responded, "**ok sure, let me get set up. 10bps fee all in as per Algo/Btc. ok?**" Zhang responds,

"**yes can.**"   The next day the Genesis team confirms "**152.70074513**" "**BTC**" was booked.

(h) On May 26, 2022, following the above transaction, Ningxin Zhang (3AC) says, "Ty, **could u pls start another algobtc twap.**" The same Genesis employee responds, "**Sure, setting this up shortly.**" The next day, the Genesis team confirms "**129.96146972**" "**BTC**" was booked.

(i) On May 26, 2022, Ningxin Zhang (3AC) messaged, "[M]ay i check if we can **set up another twap to sell 150k AVAX into BTC over the next 24 hours?**" A genesis employee responded, "**Yes, sure. Is this from your collateral?**" Zhang responds "**yes.**" The Genesis employee then wrote, "**See 300k as collateral. Setting this up shortly . . . 150k AVAX into BTC** over 24 hours" and Zhang says, "ty." On May 27, 2022, a Genesis employee confirms "**117.09327833**" "**BTC**" was booked.

(j) On May 26, 2022 after the above transaction, Ningxin Zhang (3AC) messaged, "ok ty, **could u pls do another 100k SOL twap sell into BTC?**" A Genesis employee responded, "**sure, setting this up shortly.**" A Genesis employee then confirms "**144.07460639**" "**BTC**" was booked.

(k) On May 27, 2022, Ningxin Zhang (3AC) messaged the genesis team, "could u pls help **twap sell another 150k SOL into BTC over next 24 hours?**" A Genesis employee responded, "**sure one mom..setting up.**" A different Genesis employee then confirmed "150k SOL > BTC TWAP Done" and confirmed "**220.49390219**" "**BTC**" was booked.

(l) On May 27, 2022, after the above transaction, Ningxin Zhang (3AC) messaged the Genesis team, "Ty, **let's do another one pls?**" A Genesis employee responded, "**sure . . . Will update once live,**" and then confirmed, "Next batch of Algo/btc now live." A different Genesis employee then confirmed "**126.92316098**" "**BTC**" was booked.

(m) On May 27, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "**another 150k AVAXBTC sell** after current one is done, ty." A Genesis employee responded, "**sure let me update when order is live.**" On May 28, 2022, the Genesis employee stated, "**AVAX twap live** - to end on 29May22." On May 29, 2022, a different Genesis employee messaged, "150k AVAX > BTC Done" and confirmed "**123.46489697**" "**BTC**" was booked.

(n) On May 28, 2022, after the above transaction, Ningxin Zhang (3AC) messaged the Genesis team, "Ty, let's do **one more Algobtc twap pls.**" A Genesis employee responded, "**sure . . . one mom . . . ALGO twap live** - to end on 29May22 at 0350 EST." On May 29, 2022, a different Genesis employee messages, "10M ALGO > BTC Done" and then confirmed "**125.03777276**" "**BTC**" was booked.

(o) On May 28, 2022, after the above transaction, Ningxin Zhang (3AC) messaged, "Pls **continue with another one.**" A Genesis employee responded, "**Another Tranche to Sell 150K Sol to Btc**, 24hrs TWAP working." On May 29, 2022, a different Genesis employee messaged, "This is done" and confirmed "**225.58889913**" "**BTC**" was booked.

(p) On May 29, 2022, Su Zhu (3AC) messaged the Genesis team, "Hi team, **pls sell 20k ethbtc 24hrs.**" A Genesis employee responds, "**Above order is Live. . . . To confirm. We are selling 20k Eth from your collateral into Btc. Thanks.**" Zhu responded, "**Confirmed, ty.**" The employee then confirmed "**1,231.88207472**" "**BTC**" was booked.

(q) On May 29, 2022, Ningxin Zhang (3AC) wrote to the Genesis team, "**btw, may i send in more BTC to swap back ETH collateral?**" A Genesis employee responded, "sure we can do that... how much are you looking for ?" Zhang replied, "**can we do 1k BTC for now?**" The Genesis employee responded, "16k ETH back if that's ok? for **1k BTC** . . . we can settle shortly . . . **so you will send in 1450 BTC and we will send over 16k ETH.**" Zhang responds, "**yep . . . sent.**"[2]

(r) On May 29, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "just checking if you are good to do **one more BTC to ETH swap for 1k BTC?**" A Genesis employee responded, "sure . . . same ratio is ok . . . **1k for 16k.**" Zhang replied, "**great, sending coins shortly.**" A different Genesis employee then wrote, "**see 1k BTC coming through**, pending confirmation . . . **1k BTC has landed**, we will process the ETH shortly . . . 16k ETH send out."

(s) On May 30, 2022, following the above transaction, Ningxin Zhang (3AC) messaged the Genesis team, "Ty, **would like one more same twap** to run over next 24 hours." A Genesis employee responded, "**ok sure . . . This is live.**" On May 31, 2022, the Genesis employee wrote, "Order complete" and confirmed "**224.85291423**" "**BTC**" was booked.

(t) On May 30, 2022, Su Zhu (3AC) again messaged the Genesis team, "Ty. **Pls initiate another 20k ethbtc sell.** Over 24hrs." A Genesis employee responded, "**Got it, give me a few to set this up.**" A different Genesis employee then confirms "**1,247.68281247**" "**BTC**" was booked.

(u) On May 31, 2022, Ningxin Zhang (3AC) messaged the Genesis team, "could u pls help sell remaining 199k SOL into BTC over next 30 hours?" A Genesis employee replied, "Hey, we only see 49k remaining" to which Zhang responded, "**actually you are right . . . lets sell the remaining 49k over 12 hours.**" The Genesis employee responded, "**perfect on it.**" A different Genesis employee then then confirmed "**71.58082602**" "**BTC**" was booked.

---

[2]    The figure discussed is 1,450 BTC because 1,000 BTC was for this substitution, and 450 was sent as Additional Collateral for the May 30, 2022 loan of USD worth 3,000 BTC, discussed above (¶ 3(g)).

(v) On May 31, 2022, after the above transaction, Su Zhu (3AC) wrote, "Ty. **Pls do another 20k ethbtc 24hrs … Sell**." A Genesis employee responded, "**sure mp . . . order to sell 20k ETHBTC over 24hrs is live and well**." The Genesis employee then confirms "**1,226.1247520**" "**BTC**" was booked.

(w) May 31, 2022, Ningxin Zhang (3AC) messaged, "then we shud have 16.2mio ALGO left i think." A Genesis employee responded, "agree here." Zhang replied, "ok cool, **could u pls help set up to sell all balance into BTC** over next 36 hours?" A Genesis employee responded, "**we sure can!**" On June 1, 2022, a Genesis employee then messaged, "Hey team, your ALGO/BTC order is complete," and confirmed "**209.19879176**" "**BTC**" was booked.

(x) On June 1, 2022, Su Zhu (3AC) messaged the Genesis team, "Ty lets do another **20k ethbtc 24hrs sell pls**." A Genesis employee responded, "**sure thing will set up momentarily**." Ningxin Zhang (3AC) then wrote, "actually, i think we only have 19375 ETH left with you, could u pls help check?" A Genesis employee responded, "agree here." Zhu then messaged, "**Kk chg to 19375 eth for btc 24hrs**." The Genesis employee responded, "**This is live**." Later, Zhu messaged, "**Pls stop ethbtc twap**." The Genesis employee then wrote, "**ok cancelling right now**." The Genesis employee then confirmed "**32.231034**" "**BTC**" was booked.

(y) On June 1, 2022, Su Zhu (3AC) messaged the Genesis team, "**Pls continue this twap now**." A Genesis employee replied, "**sure will do**." Later, Zhu wrote, "**Chg lower to 30.7**." The Genesis employee responded, "**sure … we bought 564 btc so far**." A different Genesis employee then confirmed "**1148.37397624**" "**BTC**" was booked.

(z) Finally, 939.29 BTC was swapped for 17,455.73 ETH in connection with the transaction described above (¶ 2).

(aa)    Adding all of the collateral transferred in connection with these transactions together (146.4538121 BTC, 145.9580401 BTC, 145.2485826 BTC, 139.1031612 BTC, 136.3298214 BTC, 600 BTC, 152.7007451 BTC, 129.9614697 BTC, 117.0932783 BTC, 144.0746064 BTC, 220.4939022 BTC, 126.923161 BTC, 123.464897 BTC, 125.0377728 BTC, 225.5888991 BTC, 1,231.88 BTC, 1,000 BTC, 1,000 BTC, 224.8529142 BTC, 1,247.68 BTC, 71.58082602 BTC, 1,226.12 BTC, 209.1987918 BTC, 32.23 BTC, and 1,148.373976 BTC), and subtracting for the 939.29 BTC described above (¶ 2), totals 9,131.06 BTC.

**<u>EXHIBIT R</u>**

**<u>Proposed Order</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

## ORDER GRANTING DEBTORS'
## FIRST OMNIBUS OBJECTION
## (SUBSTANTIVE) TO CLAIM NOS. 523, 526 AND 527 PURSUANT
## TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)

Upon the *Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007(No Liability)* (the "Objection")[2] filed by the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), requesting an order pursuant to sections 502(b) and 502(e)(1)(B) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging Claim Nos. 523, 526, and 527, attached hereto; and upon the *Declaration of Christopher Parker Pursuant to Fed. R. Bankr. P. 9017 in Support of Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*, attached to the Objection as Exhibit D; and upon the *Declaration of A. Derar Islim in Support of Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*, attached to the Objection as Exhibit E; and upon the *Declaration of Deandra Fike in Support of Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No*

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]     Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Objection.

*Liability)*, attached to the Objection as Exhibit F; and upon all other documentation filed in connection with the Objection and the Claims; and adequate notice of the Objection having been given as set forth in the Objection; and it appearing that no further notice is required; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Objection is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and the Court having found that the Debtors' notice of the Objection and opportunity for a hearing on the Objection was appropriate and no other notice need be provided; and the Court having reviewed the Objection and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Objection and on the record of the Hearing establish just cause for the relief granted herein; and all responses to the Objections (if any) having been withdrawn or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.       The Objection is GRANTED.

2.       For the reasons set forth in the Objection, Claim Nos. 523, 526, and 527 assert claims for which the Debtors are not liable and are thus unenforceable against the debtor and property of the debtor within the meaning of section 502(b)(1) of the Bankruptcy Code and are each hereby disallowed and expunged in full.

3.      This Order shall be deemed a separate Order with respect to Claim Nos. 523, 526, and 527.  Any appeal and/or stay of this Order pending appeal by any Claimants whose Claims are subject to this Order shall only apply to the contested matter which involves such Claimant and shall not act to stay the applicability and/or finality of this Order with respect to the other contested matters listed in the Objection or this Order.

4.      The Debtors, the Debtors' claims agent, Kroll Restructuring Administration LLC and the Clerk of this Court are authorized to take all actions necessary and appropriate to give effect to this Order.

5.      This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.


Dated: _____, 2023
        New York, New York

                                        _____
                                        HONORABLE SEAN H. LANE
                                        UNITED STATES BANKRUPTCY JUDGE