Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 23-10063-shl

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   GENESIS GLOBAL HOLDCO, LLC,

8

9           Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                   United States Bankruptcy Court

12                   300 Quarropas Street, Room 248

13                   White Plains, NY 10601

14

15                   July 13, 2023

16                   2:32 PM

17

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  ALIANNA PERSAUD

1    HEARING re Status Conference Regarding Mediation

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    WHITE CASE

4         Attorneys for the Official Committee of Unsecured

5    Creditors

6         1221 Avenue of the Americas

7         New York, NY 10020

8

9    BY:  J. CHRISTOPHER SHORE

10

11   HUGHES HUBBARD REED

12        Attorneys for Gemini Trust Company, as Agent

13        1 Battery Park Plaza

14        New York, NY 10004

15

16   BY:  ANSON B. FRELINGHUYSEN

17

18   CLEARY GOTTLIEB STEEN & HAMILTON LLP

19        Attorneys for the Debtors

20        One Liberty Plaza

21        New York, NY 10006

22

23   BY:  SEAN A. O'NEAL

24

25

1    WEIL, GOTSHAL & MANGES LLP

2         Attorneys for Digital Currency Group, Inc.

3         767 Fifth Avenue

4         New York, NY 10153

5

6    BY:  JEFFREY D. SAFERSTEIN

7

8    PROSKAUER ROSE LLP

9         Attorneys for Ad Hoc Group of Genesis Lenders

10        Eleven Times Square

11    New York, NY 10036

12

13    BY:  BRIAN S. ROSEN

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1                 P R O C E E D I N G S

2             THE COURT:  All right, that's an appropriate segue

3     to the next matter, which is the Genesis case which is on

4     for a status conference that was requested.  I don't have an

5     appearance sheet, since this -- I think was a "late add" and

6     that's fine.  So let me go through and find out who's here

7     on behalf of the Debtors.

8             MR. O'NEAL:  Good afternoon, Your Honor.  It's

9     Sean O'Neal, Clearly Gottlieb, on behalf of the Debtors and

10    I'm here with my colleagues Jane VanLare and Luke Barefoot.

11            THE COURT:  All right, and on behalf of the

12    Official Committee?

13            MR. SHORE:  Good afternoon, Your Honor.  Chris

14    Shore from White & Case on behalf of the Official Committee

15    and I see Phil Abelson is on as well.

16            THE COURT:  All right.  And on behalf of the Ad

17    Hoc Group?

18            MR. ROSEN:  Good afternoon, Your Honor.  Brian

19    Rosen, Proskauer Rose, on behalf of the Ad Hoc Group.

20            THE COURT:  And on behalf of Digital Currency

21    Group?

22            MR. SAFERSTEIN:  Good afternoon, Your Honor.

23    Jeffrey Saferstein from Weil Gotshal & Manges on behalf of

24    Digital Currency Group.

25            THE COURT:  All right.  I know I've left some

Page 6

1  folks out, but at this point, I'll ask other people to jump

2  in and identify themselves.  That is, those folks who expect

3  to speak at today's hearing.

4           MR. FRELINGHUYSEN:  Good afternoon, Your Honor.

5  Anson Frelinghuysen, from Hughes Hubbard & Reed for Gemini

6  Trust Company, Inc. as agent for 232,000 Earn users.

7           THE COURT:  All right.  Thank you very much.

8  Anyone else?

9           All right.  So hearing no one else chiming in, I

10  will -- I believe, Mr. O'Neal, you're the -- you reached out

11  to chambers about setting this up and --

12           MR. O'NEAL:  Correct.

13           THE COURT:  I'm happy to do so, so I will turn it

14  over to you to start us off on what we should chat about.

15           MR. O'NEAL:  Sure.  Thank you very much and first

16  let me thank Your Honor for scheduling this hearing on an

17  expedited basis.  We greatly appreciate it.

18           Today's hearing should be brief.  We just really

19  have a discrete request for Your Honor.  In sum, we are

20  asking the Court to either extend the mediation period or to

21  extend the publication date for the last term sheets and

22  I'll get more into what that means.

23           Your Honor might recall that under the mediation

24  order on termination of the mediation, if there's no

25  settlement, the parties are to publish the last term sheets

Page 7

1   submitted by the parties, unless the parties agree not to

2   publish them.  That provision was included at the request of

3   the Ad Hoc Committee because, you know, it's relatively

4   ordinary course for there to be what we call cleansing

5   provisions or blowout provisions, when you are dealing with

6   large groups of creditors.  And so we did that and the

7   parties agreed.

8         In terms of the current status, and I can tell you

9   only that we are very close to a deal in principle among

10  some of the parties.  We have been working around the clock,

11  including through holidays and weekends.  We have started on

12  documentation and as I noted, we are very close to a deal in

13  principle among some of the parties.  Discussions are

14  ongoing, late nights, early mornings, all the time.  There

15  is no rest.

16        At present, all of the parties have agreed to

17  extend the publication date until the disclosure statement

18  hearing, which is currently scheduled to for July 27th.  The

19  parties have agreed and -- I would say all but one.  All but

20  one have agreed to do that.  They've agreed because the

21  discussions are ongoing.  We feel that they've been

22  productive and we believe that publication of the term

23  sheets at this time would disrupt the process and would make

24  it more difficult for us to finalize the deal in principle.

25        I should note that the party that had required the

Page 8

1    publication date provision in the mediation order, that is

2    the Ad Hoc Group, has consented to the extension.  It's just

3    one other party.  We understand that that one party hasn't

4    consented to the extension because they would like to

5    publish the terms of the various proposals perhaps through a

6    tweet or otherwise.

7            But at this point, we think it would just be

8    premature and not good for the settlement process. We do

9    agree.  All of us agree, and you can probably see the tired

10   look in our eyes, that this process has taken too long.

11   There -- we will all stipulate to that.  But it's not for a

12   lack of trying.

13           Keep in mind, Your Honor, that we are only

14   requesting an extension.  There will be a publication.  The

15   information, either the actual deal or the last term sheets

16   will be published at some point through the disclosure

17   statement, at the disclosure statement hearing.

18           Now, of course, I should note that, you know,

19   we're asking for an extension of the mediation publication

20   date, that is the term sheet publication date.  But another

21   way to do this would be to extend the mediation period.

22   That mediation period technically expired 11:59 on Monday,

23   July 10th.  I understand that all of the parties except for

24   the one party would be fine with extending the mediation

25   period as well.

1          We just suggested an extension of the mediation

2      publication date merely because that seems to be the more

3      narrow request.  The fact is, is that the parties will

4      continue to have discussions.  We all are bound by our

5      duties of confidentiality, whether it's under

6      confidentiality agreements or our own ethical obligations or

7      both.  That said, if Your Honor prefers simply to extend the

8      mediation period, that's, that is fine by us.

9          I will say that to the extent that other parties,

10     other stakeholders would like to say anything about what

11     I've just said, I would just caution them not to reveal

12     anything about the terms of any potential deal in principle,

13     about the status of discussions, about the participants in

14     discussions, or the content of those discussions.  All of

15     those things are obviously confidential.  We are at a

16     fragile moment, even though we are very close to --

17          THE COURT:  And they're also protected by Federal

18     Rule of Evidence 408.  So there's a rule for that.  So, all

19     right.  Anything else, Mr. O'Neal?

20          MR. O'NEAL:  Your Honor, that's all I have to day

21     and thank you very much.

22          THE COURT:  All right.  I'm not sure it was stated

23     very artfully and delicately that there is one party -- I

24     don't know who that party is -- but certainly it makes sense

25     to hear from that one party, now, if that one party wishes

Page 10

1    to weigh it.

2          MR. FRELINGHUYSEN:   Good afternoon, Your Honor.

3    Anson Frelinghuysen, Hughes Hubbard & Reed for Gemini Trust

4    Company on -- as agent for 232,000 Earn users.  We are the

5    one party that is not aligned with the rest of the parties

6    in terms of the disclosure of the final term -- the final

7    proposals that went between the parties when the mediation

8    period expired on July 10th.

9          So the simple point is that the mediation order

10   provided for the blowout of information or the disclosure to

11   use a cleaner term, and -- or not, if the parties agreed.

12   The parties do not agree.  The order provides that the

13   information should be disclosed.  That's what was agreed

14   back in May, 73 days ago, when the 30 day mediation started.

15   We were not the party that was looking for the disclosure,

16   but we did -- we agreed to it in the end when it came

17   through and it's part of the order and it's now part of what

18   we all are bound to do.

19         Mr. O'Neal has made reference to the deal being

20   close as a justification for the current request that the

21   mediation period be extended or for -- or is that of the

22   pretext for avoiding disclosure of the last round of deals?

23   But that has been the case with the last five extensions as

24   well, that the deal is just around the corner and we extend

25   for a week and then no deal materializes.

Page 11

1             Parties are all well aware that Gemini believes

2      the current proposals are inadequate.  They do not provide

3      enough value to creditors or they do not provide -- they do

4      not have sufficient creditor support.  As you know, the

5      Court -- as the Court knows, there -- the other parties are

6      aware, this case is very closely monitored by many

7      interested parties, especially Earn users.

8             And while the parties here today may be

9      comfortable keeping those parties outside of the tent and

10     not telling them what's happening, that is not the position

11     that Gemini takes with respect to the status of the

12     transaction.  At a minimum, Gemini is very concerned that

13     the very close proposal may result in creditors being

14     railroaded by a deal that is announced on the eve of the

15     hearing on the proposed disclosure statement.  Gemini and

16     the mediation party has not been read into that proposal.

17     (indiscernible).

18             Creditors and the confirmability of whatever plan

19     might come out would all be best served by immediate

20     understanding of the current proposals.  This is especially

21     true in light of Gemini's deep reservations regarding the

22     current proposals, that the current proposals do not result

23     in maxim potential recovery for the Earn users.  Those are

24     the people to whom we answer.  Gemini will continue to push

25     against the deal that is not in the best interest or is not

Page 12

```
1   as good as it can be for the Earn users and one that does

2   not have a substantial contribution from DCG to the

3   creditors and the Earn users.

4          THE COURT:  One quick question.  I'm a little

5   confused.  I thought on the one hand, I think you said --

6   and again, we're not going to talk about specific proposals,

7   but you said something about it's not good enough and you

8   want to essentially be able to publicize the deal.  But then

9   I also heard that you weren't read into the deal.  So I'm

10  not quite sure, I follow the -- I'm sure there's more nuance

11  to that, so in terms of what information you have, what

12  information you don't have.

13         MR. FRELINGHUYSEN:  We are looking -- we do not

14  have -- we understand that there have been other -- I don't

15  want to --

16         THE COURT:  No, no, yeah, don't get into that.

17  But I'm just -- I guess I'm trying to figure out as a very

18  general matter which it is, that you don't know the status

19  of what the actual current negotiations are or you do and

20  you find them unacceptable?

21         MR. FRELINGHUYSEN:  We don't know the exact

22  status.  What we understand to be the current status is --

23         THE COURT:  Those are two different things.  And

24  so I get it.  You're doing the best you can to figure things

25  out sort of in the -- I guess it's the Aristotle metaphor of
```

1    the cave.  You're looking at the shadows and trying to

2    figure out the substance.

3             MR. FRELINGHUYSEN:  Sometimes refer to them as tea

4    leaves, yes.

5             THE COURT:  All right.  But I cut you off there

6    with my question.  Anything else you wanted to add?

7             MR. FRELINGHUYSEN:  That is all we had, Your

8    Honor.  Thank you.

9             THE COURT:  All right.  So I wasn't sure which

10   party was the party who had a different view.  I certainly

11   want to give a chance for other stakeholders to be heard and

12   so I'll start with the Official Committee.

13            MR. SHORE:  Thank you, Your Honor.  Again, Chris

14   Shore from White & Case on behalf of the Official Committee.

15   If you can believe it, I think that Mr. O'Neal understated

16   the amount of work that has been devoted to trying to get

17   this case resolved, and the Committee for its part has been

18   in 'round-the-clock meetings, it seems like for weeks now

19   trying to come to a deal.

20            I would disagree with Mr. Frelinghuysen that there

21   have been promises of a deal around the corner since the

22   beginning of this case.  As the Court recalls, there was a

23   term sheet at the beginning --

24            THE COURT:  Yeah, I think we started with a deal

25   and then took several steps back and the question is whether

Page 14

1    you all can put Humpty Dumpty back together again in a way

2    that's acceptable to folks and value -- creates appropriate

3    value in the case.

4           MR. SHORE:  Yes.  The Committee was never

5    supportive of that term sheet and this is the first time in

6    the case the Committee is supportive of a deal.  It is, as

7    you can imagine in a case this complex and of this size,

8    documentation of the deal will take some time.  But I think

9    people want to focus on being able to document without the

10   distraction of blowing out proposals, having a mediation

11   terminated, and trying to do all this in the context of

12   hundreds of thousands of people weighing in on what's going

13   on.

14           From our perspective, you know, everybody was

15   given a fair opportunity to participate in the mediation and

16   everybody has been active over time in mediation.  There is

17   one party today who is not satisfied with what's going on.

18   I will note for the Court that that party, Gemini Trust

19   Company, has started an action in the state court in New

20   York against DCG and Mr. Silbert and is seeking findings

21   among other things that the Debtors engaged in fraud.

22           We're all reserving our rights right now about

23   that, but that's not -- also not conducive to getting a

24   settlement done.  We need breathing space right now and

25   we're asking for the Court to give us some breathing space.

Page 15

1    Under the terms of the order, the Court is expressly

2    permitted to extend the mediation if the parties don't

3    agree.

4              This is exactly the situation contemplated by the

5    order in which all of the parties to the mediation, save

6    one, have consented and we'd ask Your Honor either to just

7    extend the mediation -- I don't think we're in a situation

8    where if the mediation was terminated, it can't be started -

9    - but if that seems to be a problem for people, we can just

10   hold out the blowout date to the filing of the disclosure

11   statement.

12             With respect to the timing of the statement, the

13   filing of the disclosure statement and the terms of the deal

14   to the extent that Mr. Frelinghuysen and his client feel

15   like there's not enough time, either for them as agent or

16   for their members to object, I'm sure Your Honor will listen

17   to their concerns in that regard and we can schedule

18   accordingly.

19             But right now, we need the breathing space just to

20   be able to get this document on or this deal on paper, make

21   sure when we write it all down in our lawyer words, we're

22   all on the same page about exactly what the economics are

23   and what the mechanics are.  And then if we can get that

24   done, we'll be back to Your Honor.

25             THE COURT:  All right.  Let me hear from the Ad

Page 16

1    Hoc Group.

2         MR. ROSEN:  Thank you very much, Your Honor.

3    Brian Rosen, Proskauer Rose.  As Mr. O'Neal said at the

4    outset, the original request with respect to a blowout was

5    one that was requested by the Ad Hoc Group, but as Mr.

6    O'Neal also knows, the Ad Hoc Group believes that the

7    mediation should not be stopped at this point and there

8    certainly should not be any blowout of any information at

9    this point.

10        The process is continuing, Your Honor.  Not

11   everybody is on board and there are issues that remain to be

12   worked out including with respect to some of the -- what

13   were the preliminary things that were agreed to, were passed

14   back and forth between some of the parties.  We think that

15   disclosing the process or the proposals at this point will

16   be extremely disruptive, will not inure to the benefit of

17   the overall estate and certainly to all the creditors.

18        While we understand Mr. Frelinghuysen's concerns

19   about his Earn users, there are many other creditors here in

20   this case with much more at stake dollar-wise than what Mr.

21   Frelinghuysen's clients are and we believe that it's in the

22   best interest of everyone involved here that we continue

23   this process, that it remain subject to the terms of the

24   mediation order itself, that the level of confidentiality

25   remains, and that the parties be allowed to see if we can

1   reach a global understanding among everybody that's involved

2   in the case, not just those that have preliminarily agreed,

3   Your Honor.

4          So with that, we would ask the court to extend the

5   mediation order for a time being.  Thank you, Your Honor.

6          THE COURT:  All right, thank you.  Any other party

7   wish to weigh in on this issue?

8          All right.  So I'm going to extend the mediation,

9   and let me explain and address a number of the comments that

10  have been made.  So it's pretty clear I have authority to do

11  so under the order itself as well as under well-established

12  case law.  The case law actually, and academics will tell

13  you there's no actual meaningful difference in success rates

14  when academics have studied mediation where everyone agrees

15  to do it and everyone doesn't.  Most judges find that to be

16  quite a startling statistic, frankly, but it's a fair point.

17         So -- and so judges do have authority to order

18  mediation under appropriate circumstances.  I have ordered

19  here.  The order contemplates extending it and I'm hearing

20  the vast majority of the constituencies wanting to extend it

21  and I think that is exceedingly persuasive.

22         As for delay, I'll say out loud what's sort of a

23  secret that we all know.  Mediations always take longer than

24  we estimate in cases from the outset.  I have done planned

25  mediations.  I think I was asked to do one once that, this

Page 18

1    was the beginning of the summer and it was essential to be

2    completed promptly.  We -- I can't tell you how many late

3    night calls I had during the pandemic from my daughter's

4    swelteringly hot bedroom that summer to get things done.

5    And nonetheless, the mediation continued into the fall.  It

6    happens and the question is whether people are operating in

7    good faith and are making progress, and here, everything I'm

8    hearing is that that's the case.

9             And while I know there are provisions in there and

10   I understand why the provision's in there so as to share

11   information if parties aren't able, they've reached an

12   impasse, then you share the information.  But what I'm

13   hearing is, you haven't reached an impasse.  So this kind of

14   information is clearly covered by 408 and is covered by 408

15   for a good reason, because it will disrupt the ability of

16   parties to negotiate effectively.

17            So 408 exists for a very good policy reason and

18   extending the mediation here and protecting that information

19   is consistent with that rule.

20            So I did hear something about maybe there is

21   insufficient creditor support.  I do know that the Official

22   Committee of Unsecured -- the Official Committee is here in

23   support of this.  The Ad Hoc Group is in support of this.  I

24   certainly -- Mr. Frelinghuysen's constituencies are very

25   important but they are not the only constituencies and

Page 19

1    certainly I'm hearing significant creditor support for

2    continuing the mediation, protecting this information.

3         The -- turning back to the timing, this in a way

4    harkens back to some of the conversations we've had in

5    various motions that have been in this case.  And that we've

6    been talking about time frames and what's going to happen.

7    And certainly I can and will take judicial notice that I

8    haven't seen a cryptocurrency case that has sailed smoothly

9    from filing to confirmation and I wouldn't be surprised if

10   that's not the lifespan of these cases.

11        And so these are hard cases.  They're challenging

12   cases.  People need time.  I don't find the time here to be

13   offensive in any way or inappropriate, and frankly, cases

14   don't work unless dedicated professionals including Mr.

15   Frelinghuysen, participate in these kinds of mediations and

16   negotiations because the failure to do so means that

17   everyone litigates everything and value is destroyed.

18        So I would be foolish as a judge not to take

19   advantage of parties who want to continue to negotiate some

20   of the central issues in this case.  And certainly Mr.

21   Frelinghuysen's and his clients' interests are important and

22   as to that, so there was a comment about the Earn users in

23   the dark.  That's always a frustrating circumstance for --

24   to not be able to share with clients certain information.

25   That is sometimes appropriate and necessary.  It doesn't

Page 20

1    mean clients have to like it.  I don't expect them to like

2    it and I sympathize with their frustrations and we will try

3    to deal with those as quickly as possible.

4           It will be obviously very important in this case

5    to have sufficient time to disclose the -- any deals that

6    are struck, any deals that are proposed, how the case moves

7    forward.  That's what a disclosure statement is for.  The

8    disclosure statement was moved off until the 27th, I

9    believe.  And we'll see if that's the appropriate date.

10   That may all depend on how things go.  So obviously, I

11   expect professionals will have conversations about making

12   sure that the word gets out on the substance of any deal

13   that is part of the case going to confirmation, but that's

14   not a today issue.

15           That's a disclosure statement issue and we will

16   get there and I think we all share the same experience that

17   disclosure statement issues, while very important, are often

18   some of the easiest issues to fix in the sense that people

19   know that drill very well.

20           So I think we can address that in the fullness of

21   time and we will address that to make sure that the Earn

22   users get the information they need in a disclosure

23   statement and in a plan so that they can figure out what

24   they want to do when it comes to the big picture.  So for

25   all those reasons, I am happy to extend the mediation.  I

Page 21

1    think it's appropriate and so my question is, how long do

2    you want to extend it?

3            MR. O'NEAL:  Your Honor, Sean O'Neal, Cleary

4    Gottlieb, on behalf of the Genesis Debtors.  I would suggest

5    that we do that until July 27th, which is the date of the

6    disclosure statement hearing, though I'm also happy to hear

7    from the -- my colleagues and we could also have a sidebar

8    if Your Honor so prefers.

9            THE COURT:  What I can do, if you want to talk

10   about the time issue in a candid way, I can remove myself

11   from the Zoom and then log back in in a minute and let you

12   have a candid conversation so you don't have to very

13   carefully couch your thoughts and hope that other people can

14   read your poker faces.  I'm happy to do that if you want.

15   If it's not worth the effort, I'll leave it to Mr. Shore and

16   Mr. Rosen in the first instance.

17           So Mr. Shore, what's your preference?

18           MR. SHORE:  The 27th is fine.  If we get the deal

19   done, it'll come out.  Yeah.

20           THE COURT:  All right.  Mr. Rosen.

21           MR. ROSEN:  Yeah.  Yes, Your Honor.  Sorry.  I

22   needed to unmute.  The 27th is fine with us as well.  Thank

23   you.

24           THE COURT:  All right.  And obviously I recognize

25   that's the same day as the disclosure statement.  I would

Page 22

 1   imagine Mr. Frelinghuysen will have some views about getting

 2   information out to his constituencies in terms of how those

 3   dates line up with those dates, and I trust you'll have

 4   those conversations and as you know, we here in the

 5   courthouse have -- we have been moving dates and we will

 6   continue to be -- to do so as the needs of the case dictate.

 7   And so you'll have conversations and then reach out to

 8   chambers as is appropriate and I'm happy to do that so that

 9   we can try to solve all the considerable issues that you all

10   are dealing with.

11          MR. FRELINGHUYSEN:  Your Honor, if the -- this is

12   Anson Frelinghuysen, Hughes Hubbard & Reed for Gemini Trust

13   Company.  If that is the goal of the parties here, it does

14   seem that our fears regarding a railroaded deal are well

15   founded.  So perhaps we could have some commitment from the

16   parties to do something better than that in terms of how

17   this information is conveyed and the duration of time

18   between the termination of the mediation and the disclosure

19   statement hearing.

20          THE COURT:  So this is where I do think this is a

21   hard thing to solve in real time with me sitting here,

22   because you can't be as candid as you need to be.  So Mr.

23   Frelinghuysen, I'm happy to make myself available to have a

24   conversation, but only after you all have a conversation.

25          So I think that that's a conversation that's best

Page 23

```
1    had, in the first instance, between the parties who are on
2    the phone and perhaps others.  I certainly, disclosure
3    statements exist for the reasons set forth in the code so
4    that people have adequate information.  And so, that's our
5    guiding principle for those and so -- but there are other
6    mechanics here and interests here that you all are more in
7    tune with than I am.
8              So I'll let you have that conversation and you --
9    we can do a couple of things.  One is I'm going to so-order
10   the record today so that the mediation is extended and you
11   have the cloak of 408 and the protections of the mediation
12   order.  But in -- no doubt there will be an order, a written
13   order to follow if you want to put something in a written
14   order, something that you agree upon, some mechanics or some
15   agreement on dates or a minimum time between dates, whatever
16   it is, that's one place and one way to do it.
17             If you don't get there and we need another call,
18   you'll let me know that as well.
19             MR. SHORE:  If I may just address, because of the
20   colorful language, what the Committee views as an
21   appropriate sequence here, which will be a documentation of
22   a deal if we can get to it, to the extent that we can get
23   signatures on that deal, it will be folded into a disclosure
24   statement and the disclosure statement will be posted to the
25   docket.
```

1          There will be some period of time between the

2     posting of the disclosure statement and the disclosure

3     statement hearing and that will certainly give Mr.

4     Frelinghuysen and his client sufficient time to read the

5     deal, they're not in the dark about the deal, and it will

6     give individual creditors, unsecured creditors throughout

7     the case an opportunity to read and understand the deal and

8     hopefully, if we've done our job right in the context of the

9     disclosure statement, it will be written in a way that will

10    be easily understood as to what's going on.

11          To the extent that it is unclear or unanswered

12    questions, the disclosure statement will be a time for

13    people to come forward and ask for more disclosure, not

14    attack the deal, but -- if there is one, but say there needs

15    to be more disclosure around this and more disclosure around

16    that and more risk factors about this and that and we will

17    address it in due time.

18          It doesn't seem to be anybody's interest and it is

19    decidedly not to UCC's interest to railroad anybody or give

20    people not enough time to resolve it.  There is a balancing

21    that will need to be done between the needs of the case --

22    to move the case out and due process afforded to those

23    people who don't believe that their interests are being well

24    represented.

25          We will work through it all and at the end of the

1    day, there'll be a confirmation hearing in which people can

2    raise their concerns before Your Honor.  But from the

3    perspective of disclosing the deal, it will come out in the

4    context of a disclosure statement that will be filed in

5    advance of a hearing and hopefully in an amount of time

6    before the hearing that Mr. Frelinghuysen won't feel like

7    anybody's being jammed.

8              THE COURT:  All right.  And I certainly would

9    encourage parties to talk about, if there's a minimum amount

10   of time.  If you can agree upon that, then that removes a

11   potential objection and source of concern and further

12   litigation.  And then you can get to the merits of things,

13   but, I'll leave you to do that and if you can work that out,

14   one way or the other, that's probably for the best.

15             Mr. O'Neal?

16             MR. O'NEAL:  Yes, Your Honor.  Sean O'Neal, Cleary

17   Gottlieb, on behalf of the Genesis Debtors.  I do just want

18   to respond to one point, because we are dealing with people

19   who may be listening that are not used to this process and I

20   do object to the concept that there's any railroading going

21   on here.  We have been patient.  We have been working with

22   everybody tirelessly.  And I think Mr. Frelinghuysen knows

23   that.  We've had numerous --

24             THE COURT:  Well, I will also inject, any

25   agreements that are reached, any settlements that are

Page 26

1    reached, have to come before the Court as part of a plan or

2    a motion to approve a settlement under Bankruptcy Rule 9019.

3    That's been thrown around, that number 9019.  That's what

4    that means for folks who may be new to the bankruptcy world.

5              So, again, it's frustrating for folks who may not

6    be in the room where it happens.  Just ask Aaron Burr.  But

7    there are times when it's -- when it is appropriate and

8    necessary for folks to have conversations and to try to work

9    through issues.  That's one of the challenges of a

10   bankruptcy as opposed to a classic plaintiff versus

11   defendant lawsuit.

12             You have many, many parties and having mediated

13   cases that were trying to come up with a plan that everyone

14   could sign onto sometimes as a mediator who is a third-party

15   neutral, not doing the bidding of any party, it was very

16   challenging to figure out where to start and you had to

17   start somewhere.  And so sometimes that meant conversations

18   among a subset of interested parties with everybody, again,

19   reserving their rights in Court to say and make whatever

20   arguments they want.

21             So there's nothing inherently inappropriate about

22   that process.  It all has to come back to Court to be heard.

23   And so there will be transparency as to what any deals are,

24   what any settlements are, and they'll be evaluated under

25   applicable law including the Bankruptcy Code and all the

Page 27

1   cases under it.

2           So I do appreciate your sensitivity to that, Mr.

3   O'Neal.  It is a good idea to try to give a little more

4   color and information around this so that people have some

5   sense about how the process works.

6           MR. O'NEAL:  Yes.  Your Honor, I just wanted to

7   make sure that the those who are listening in understand

8   that we are committed to working with all of the creditor

9   constituencies as we have been.  And we continue to do and,

10  you know, keep in mind also that the Creditors Committee,

11  the Official Creditors Committee, is a fiduciary.  It's the

12  only other fiduciary in this estate.  There is a Gemini Earn

13  user on the Creditors Committee, so there is representation

14  at a variety of different levels, but we will continue to

15  work with Gemini and its counsel and try to reach a

16  consensual deal, that's for sure.

17          THE COURT:  All right, thank you.  And again, I'll

18  use your comments as an opportunity to say one other thing

19  which is yes, that's why they're called the Official

20  Committee.  It's in the Bankruptcy Code and I'll reach for

21  my prop that I always use, the Bankruptcy Code has a lot of

22  provisions, a lot of rules, a lot of protections both as a

23  matter of due process and subset of law.

24          And one of the things it has is an Official

25  Committee to represent the interests of all unsecured

Page 28

1    creditors.  That is their job and they are fiduciary for all

2    unsecured creditors.  And so there is an Unsecured Creditors

3    Committee in this case.  Mr. Shore is counsel and sitting on

4    that Committee are a variety of different unsecured

5    creditors of different shapes and sizes to give a broad

6    swath of the folks who are interested parties in this case.

7           So, again, Mr. O'Neal, thank you for pointing that

8    out.  It's a worthwhile conversation piece to throw into

9    today's proceeding.  But anything else from any other party?

10          All right.  So I will so-order the record, the

11   mediation is extended.  I think it's cleaner than just

12   dealing with the deadline for blowing out the information

13   because in fact, you are still negotiating.  So it seems

14   entirely appropriate to do it that way and what whatever

15   flows from that.  And I will wait for a proposed order on

16   that and if you need anything else, you will reach out to

17   chambers and let us know and obviously, as to dates, please

18   just keep us in the loop.

19          I will say that the very end of August is -- I try

20   to escape to the Adirondacks, not that I haven't done first

21   day hearings and other things from a room in the

22   Adirondacks, much like all of you, but anything in

23   particular in sort of the second half of August, if you can

24   give me a heads up as to what your needs are, and if we can

25   steer around some of those time periods as best we can, that

Page 29

1    would be appreciated, but we'll see how it goes.  We're

2    still in the first half of July.  Thank you very much.

3              MR. O'NEAL:  Thank you, Your honor.

4              MR. FRELINGHUYSEN:  Thank you, Your Honor.

5              (Whereupon these proceedings were concluded at

6    3:08 PM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2

3                          RULINGS

4                                              Page      Line

5    **Mediation Extension, GRANTED**            17         8

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 31

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  July 18, 2023

| & | | | |
|---|---|---|---|
| **&**   3:18 4:1 5:14,23 6:5 10:3 13:14 22:12 | **3:08**   29:6 | **adequate**   23:4 | **anybody**   24:19 |
| | **4** | **adirondacks** 28:20,22 | **anybody's** 24:18 25:7 |
| **1** | **408**   9:18 18:14 18:14,17 23:11 | **advance**   25:5 | **appearance** 5:5 |
| **1**   3:13 | **7** | **advantage** 19:19 | **applicable** 26:25 |
| **10004**   3:14 | **73**   10:14 | **afforded**   24:22 | **appreciate** 6:17 27:2 |
| **10006**   3:21 | **767**   4:3 | **afternoon**   5:8 5:13,18,22 6:4 10:2 | **appreciated** 29:1 |
| **10020**   3:7 | **8** | **agent**   3:12 6:6 10:4 15:15 | **appropriate** 5:2 14:2 17:18 19:25 20:9 21:1 22:8 23:21 26:7 28:14 |
| **10036**   4:11 | **8**   30:5 | **ago**   10:14 | |
| **10153**   4:4 | **9** | **agree**   7:1 8:9,9 10:12 15:3 23:14 25:10 | |
| **10601**   1:13 | **9019**   26:2,3 | **agreed**   7:7,16 7:19,20,20 10:11,13,16 16:13 17:2 | **approve**   26:2 |
| **10th**   8:23 10:8 | **a** | | **arguments** 26:20 |
| **11501**   31:23 | **aaron**   26:6 | | **aristotle**   12:25 |
| **11:59**   8:22 | **abelson**   5:15 | **agreement** 23:15 | **artfully**   9:23 |
| **12151**   31:7 | **ability**   18:15 | **agreements**   9:6 25:25 | **asked**   17:25 |
| **1221**   3:6 | **able**   12:8 14:9 15:20 18:11 19:24 | **agrees**   17:14 | **asking**   6:20 8:19 14:25 |
| **13**   1:15 | **academics** 17:12,14 | **alianna**   1:25 | **attack**   24:14 |
| **17**   30:5 | **acceptable** 14:2 | **aligned**   10:5 | **attorneys**   3:4 3:12,19 4:2,9 |
| **18**   31:25 | **accurate**   31:4 | **allowed**   16:25 | **august**   28:19 28:23 |
| **2** | **action**   14:19 | **americas**   3:6 | **authority** 17:10,17 |
| **2023**   1:15 31:25 | **active**   14:16 | **amount**   13:16 25:5,9 | **available**   22:23 |
| **23-10063**   1:3 | **actual**   8:15 12:19 17:13 | **announced** 11:14 | **avenue**   3:6 4:3 |
| **232,000**   6:6 10:4 | **actually**   17:12 | **anson**   3:16 6:5 10:3 22:12 | **avoiding**   10:22 |
| **248**   1:12 | **ad**   4:9 5:16,19 7:3 8:2 15:25 16:5,6 18:23 | **answer**   11:24 | **aware**   11:1,6 |
| **27th**   7:18 20:8 21:5,18,22 | **add**   5:5 13:6 | | |
| **2:32**   1:16 | **address**   17:9 20:20,21 23:19 24:17 | | |
| **3** | | | |
| **30**   10:14 | | | |
| **300**   1:12 31:22 | | | |
| **330**   31:21 | | | |

**b**

**b** 1:21 3:16
**back** 10:14
13:25 14:1
15:24 16:14
19:3,4 21:11
26:22
**balancing**
24:20
**bankruptcy**
1:1,11,23 26:2
26:4,10,25
27:20,21
**barefoot** 5:10
**basis** 6:17
**battery** 3:13
**bedroom** 18:4
**beginning**
13:22,23 18:1
**behalf** 5:7,9,11
5:14,16,19,20
5:23 13:14
21:4 25:17
**believe** 6:10
7:22 13:15
16:21 20:9
24:23
**believes** 11:1
16:6
**benefit** 16:16
**best** 11:19,25
12:24 16:22
22:25 25:14
28:25
**better** 22:16
**bidding** 26:15

**big** 20:24
**blowing** 14:10
28:12
**blowout** 7:5
10:10 15:10
16:4,8
**board** 16:11
**bound** 9:4
10:18
**breathing**
14:24,25 15:19
**brian** 4:13 5:18
16:3
**brief** 6:18
**broad** 28:5
**burr** 26:6

**c**

**c** 3:1 5:1 31:1,1
**call** 7:4 23:17
**called** 27:19
**calls** 18:3
**candid** 21:10
21:12 22:22
**carefully** 21:13
**case** 1:3 3:3 5:3
5:14 10:23
11:6 13:14,17
13:22 14:3,6,7
16:20 17:2,12
17:12 18:8
19:5,8,20 20:4
20:6,13 22:6
24:7,21,22
28:3,6
**cases** 17:24
19:10,11,12,13
26:13 27:1

**caution** 9:11
**cave** 13:1
**central** 19:20
**certain** 19:24
**certainly** 9:24
13:10 16:8,17
18:24 19:1,7
19:20 23:2
24:3 25:8
**certified** 31:3
**challenges**
26:9
**challenging**
19:11 26:16
**chambers** 6:11
22:8 28:17
**chance** 13:11
**chat** 6:14
**chiming** 6:9
**chris** 5:13
13:13
**christopher**
3:9
**circumstance**
19:23
**circumstances**
17:18
**classic** 26:10
**cleaner** 10:11
28:11
**cleansing** 7:4
**clear** 17:10
**clearly** 5:9
18:14
**cleary** 3:18
21:3 25:16

**client** 15:14
24:4
**clients** 16:21
19:21,24 20:1
**cloak** 23:11
**clock** 7:10
13:18
**close** 7:9,12
9:16 10:20
11:13
**closely** 11:6
**code** 23:3
26:25 27:20,21
**colleagues** 5:10
21:7
**color** 27:4
**colorful** 23:20
**come** 11:19
13:19 21:19
24:13 25:3
26:1,13,22
**comes** 20:24
**comfortable**
11:9
**comment**
19:22
**comments** 17:9
27:18
**commitment**
22:15
**committed**
27:8
**committee** 3:4
5:12,14 7:3
13:12,14,17
14:4,6 18:22
18:22 23:20

[committee - debtor]                                                      Page 3

27:10,11,13,20
27:25 28:3,4
**company**  3:12
6:6 10:4 14:19
22:13
**completed**  18:2
**complex**  14:7
**concept**  25:20
**concern**  25:11
**concerned**
11:12
**concerns**  15:17
16:18 25:2
**concluded**  29:5
**conducive**
14:23
**conference**  2:1
5:4
**confidential**
9:15
**confidentiality**
9:5,6 16:24
**confirmability**
11:18
**confirmation**
19:9 20:13
25:1
**confused**  12:5
**consensual**
27:16
**consented**  8:2
8:4 15:6
**considerable**
22:9
**consistent**
18:19

**constituencies**
17:20 18:24,25
22:2 27:9
**contemplated**
15:4
**contemplates**
17:19
**content**  9:14
**context**  14:11
24:8 25:4
**continue**  9:4
11:24 16:22
19:19 22:6
27:9,14
**continued**  18:5
**continuing**
16:10 19:2
**contribution**
12:2
**conversation**
21:12 22:24,24
22:25 23:8
28:8
**conversations**
19:4 20:11
22:4,7 26:8,17
**conveyed**
22:17
**corner**  10:24
13:21
**correct**  6:12
**couch**  21:13
**counsel**  27:15
28:3
**country**  31:21
**couple**  23:9

**course**  7:4 8:18
**court**  1:1,11
5:2,11,16,20
5:25 6:7,13,20
9:17,22 11:5,5
12:4,16,23
13:5,9,22,24
14:18,19,25
15:1,25 17:4,6
21:9,20,24
22:20 25:8,24
26:1,19,22
27:17
**courthouse**
22:5
**covered**  18:14
18:14
**creates**  14:2
**creditor**  11:4
18:21 19:1
27:8
**creditors**  3:5
7:6 11:3,13,18
12:3 16:17,19
24:6,6 27:10
27:11,13 28:1
28:2,2,5
**cryptocurrency**
19:8
**currency**  4:2
5:20,24
**current**  7:8
10:20 11:2,20
11:22,22 12:19
12:22
**currently**  7:18

**cut**  13:5

**d**

**d**  4:6 5:1 30:1
**dark**  19:23
24:5
**date**  6:21 7:17
8:1,20,20 9:2
15:10 20:9
21:5 31:25
**dates**  22:3,3,5
23:15,15 28:17
**daughter's**
18:3
**day**  9:20 10:14
21:25 25:1
28:21
**days**  10:14
**dcg**  12:2 14:20
**deadline**  28:12
**deal**  7:9,12,24
8:15 9:12
10:19,24,25
11:14,25 12:8
12:9 13:19,21
13:24 14:6,8
15:13,20 20:3
20:12 21:18
22:14 23:22,23
24:5,5,7,14
25:3 27:16
**dealing**  7:5
22:10 25:18
28:12
**deals**  10:22
20:5,6 26:23
**debtor**  1:9

**debtors** 3:19
5:7,9 14:21
21:4 25:17
**decidedly**
24:19
**dedicated**
19:14
**deep** 11:21
**defendant**
26:11
**delay** 17:22
**delicately** 9:23
**depend** 20:10
**destroyed**
19:17
**devoted** 13:16
**dictate** 22:6
**difference**
17:13
**different** 12:23
13:10 27:14
28:4,5
**difficult** 7:24
**digital** 4:2 5:20
5:24
**disagree** 13:20
**disclose** 20:5
**disclosed** 10:13
**disclosing**
16:15 25:3
**disclosure** 7:17
8:16,17 10:6
10:10,15,22
11:15 15:10,13
20:7,8,15,17
20:22 21:6,25
22:18 23:2,23

23:24 24:2,2,9
24:12,13,15,15
25:4
**discrete** 6:19
**discussions**
7:13,21 9:4,13
9:14,14
**disrupt** 7:23
18:15
**disruptive**
16:16
**distraction**
14:10
**district** 1:2
**docket** 23:25
**document** 14:9
15:20
**documentation**
7:12 14:8
23:21
**doing** 12:24
26:15
**dollar** 16:20
**doubt** 23:12
**drill** 20:19
**due** 24:17,22
27:23
**dumpty** 14:1
**duration** 22:17
**duties** 9:5

**e**

**e** 1:21,21 3:1,1
5:1,1 30:1 31:1
**early** 7:14
**earn** 6:6 10:4
11:7,23 12:1,3
16:19 19:22

20:21 27:12
**easiest** 20:18
**easily** 24:10
**economics**
15:22
**ecro** 1:25
**effectively**
18:16
**effort** 21:15
**either** 6:20
8:15 15:6,15
**eleven** 4:10
**encourage** 25:9
**engaged** 14:21
**entirely** 28:14
**escape** 28:20
**especially** 11:7
11:20
**essential** 18:1
**essentially**
12:8
**established**
17:11
**estate** 16:17
27:12
**estimate** 17:24
**ethical** 9:6
**evaluated**
26:24
**eve** 11:14
**everybody**
14:14,16 16:11
17:1 25:22
26:18
**evidence** 9:18
**exact** 12:21

**exactly** 15:4,22
**exceedingly**
17:21
**except** 8:23
**exist** 23:3
**exists** 18:17
**expect** 6:2 20:1
20:11
**expedited** 6:17
**experience**
20:16
**expired** 8:22
10:8
**explain** 17:9
**expressly** 15:1
**extend** 6:20,21
7:17 8:21 9:7
10:24 15:2,7
17:4,8,20
20:25 21:2
**extended** 10:21
23:10 28:11
**extending** 8:24
17:19 18:18
**extension** 8:2,4
8:14,19 9:1
30:5
**extensions**
10:23
**extent** 9:9
15:14 23:22
24:11
**extremely**
16:16
**eyes** 8:10

| f | | g | |
|---|---|---|---|
| **f** 1:21 31:1 | **focus** 14:9 | **g** 5:1 | **granted** 30:5 |
| **faces** 21:14 | **folded** 23:23 | **gemini** 3:12 | **greatly** 6:17 |
| **fact** 9:3 28:13 | **folks** 6:1,2 14:2 | 6:5 10:3 11:1 | **group** 4:2,9 |
| **factors** 24:16 | 26:4,5,8 28:6 | 11:11,12,15,24 | 5:17,19,21,24 |
| **failure** 19:16 | **follow** 12:10 | 14:18 22:12 | 8:2 16:1,5,6 |
| **fair** 14:15 | 23:13 | 27:12,15 | 18:23 |
| 17:16 | **foolish** 19:18 | **gemini's** 11:21 | **groups** 7:6 |
| **faith** 18:7 | **foregoing** 31:3 | **general** 12:18 | **guess** 12:17,25 |
| **fall** 18:5 | **forth** 16:14 | **genesis** 1:7 4:9 | **guiding** 23:5 |
| **fears** 22:14 | 23:3 | 5:3 21:4 25:17 | |
| **federal** 9:17 | **forward** 20:7 | **getting** 14:23 | h |
| **feel** 7:21 15:14 | 24:13 | 22:1 | **h** 1:22 |
| 25:6 | **founded** 22:15 | **give** 13:11 | **half** 28:23 29:2 |
| **fiduciary** | **fragile** 9:16 | 14:25 24:3,6 | **hamilton** 3:18 |
| 27:11,12 28:1 | **frames** 19:6 | 24:19 27:3 | **hand** 12:5 |
| **fifth** 4:3 | **frankly** 17:16 | 28:5,24 | **happen** 19:6 |
| **figure** 12:17,24 | 19:13 | **given** 14:15 | **happening** |
| 13:2 20:23 | **fraud** 14:21 | **global** 1:7 17:1 | 11:10 |
| 26:16 | **frelinghuysen** | **go** 5:6 20:10 | **happens** 18:6 |
| **filed** 25:4 | 3:16 6:4,5 10:2 | **goal** 22:13 | 26:6 |
| **filing** 15:10,13 | 10:3 12:13,21 | **goes** 29:1 | **happy** 6:13 |
| 19:9 | 13:3,7,20 | **going** 12:6 | 20:25 21:6,14 |
| **final** 10:6,6 | 15:14 19:15 | 14:12,17 17:8 | 22:8,23 |
| **finalize** 7:24 | 22:1,11,12,23 | 19:6 20:13 | **hard** 19:11 |
| **find** 5:6 12:20 | 24:4 25:6,22 | 23:9 24:10 | 22:21 |
| 17:15 19:12 | 29:4 | 25:20 | **harkens** 19:4 |
| **findings** 14:20 | **frelinghuyse...** | **good** 5:8,13,18 | **heads** 28:24 |
| **fine** 5:6 8:24 | 16:18,21 18:24 | 5:22 6:4 8:8 | **hear** 9:25 |
| 9:8 21:18,22 | 19:21 | 10:2 12:1,7 | 15:25 18:20 |
| **first** 6:15 14:5 | **frustrating** | 18:7,15,17 | 21:6 |
| 21:16 23:1 | 19:23 26:5 | 27:3 | **heard** 12:9 |
| 28:20 29:2 | **frustrations** | **gotshal** 4:1 | 13:11 26:22 |
| **five** 10:23 | 20:2 | 5:23 | **hearing** 2:1 6:3 |
| **fix** 20:18 | **fullness** 20:20 | **gottlieb** 3:18 | 6:9,16,18 7:18 |
| **flows** 28:15 | **further** 25:11 | 5:9 21:4 25:17 | 8:17 11:15 |
| | | | 17:19 18:8,13 |
| | | | 19:1 21:6 |
| | | | 22:19 24:3 |

25:1,5,6
**hearings** 28:21
**hoc** 4:9 5:17,19
  7:3 8:2 16:1,5
  16:6 18:23
**hold** 15:10
**holdco** 1:7
**holidays** 7:11
**hon** 1:22
**honor** 5:8,13
  5:18,22 6:4,16
  6:19,23 8:13
  9:7,20 10:2
  13:8,13 15:6
  15:16,24 16:2
  16:10 17:3,5
  21:3,8,21
  22:11 25:2,16
  27:6 29:3,4
**hope** 21:13
**hopefully** 24:8
  25:5
**hot** 18:4
**hubbard** 3:11
  6:5 10:3 22:12
**hughes** 3:11
  6:5 10:3 22:12
**humpty** 14:1
**hundreds**
  14:12
**hyde** 2:25 31:3
  31:8

**i**

**idea** 27:3
**identify** 6:2
**imagine** 14:7
  22:1

**immediate**
  11:19
**impasse** 18:12
  18:13
**important**
  18:25 19:21
  20:4,17
**inadequate**
  11:2
**inappropriate**
  19:13 26:21
**included** 7:2
**including** 7:11
  16:12 19:14
  26:25
**indiscernible**
  11:17
**individual** 24:6
**information**
  8:15 10:10,13
  12:11,12 16:8
  18:11,12,14,18
  19:2,24 20:22
  22:2,17 23:4
  27:4 28:12
**inherently**
  26:21
**inject** 25:24
**instance** 21:16
  23:1
**insufficient**
  18:21
**interest** 11:25
  16:22 24:18,19
**interested** 11:7
  26:18 28:6

**interests** 19:21
  23:6 24:23
  27:25
**inure** 16:16
**involved** 16:22
  17:1
**issue** 17:7
  20:14,15 21:10
**issues** 16:11
  19:20 20:17,18
  22:9 26:9
**it'll** 21:19

**j**

**j** 3:9
**jammed** 25:7
**jane** 5:10
**jeffrey** 4:6 5:23
**job** 24:8 28:1
**judge** 1:23
  19:18
**judges** 17:15
  17:17
**judicial** 19:7
**july** 1:15 7:18
  8:23 10:8 21:5
  29:2 31:25
**jump** 6:1
**justification**
  10:20

**k**

**keep** 8:13
  27:10 28:18
**keeping** 11:9
**kind** 18:13
**kinds** 19:15

**know** 5:25 7:3
  8:18 9:24 11:4
  12:18,21 14:14
  17:23 18:9,21
  20:19 22:4
  23:18 27:10
  28:17
**knows** 11:5
  16:6 25:22

**l**

**lack** 8:12
**lane** 1:22
**language** 23:20
**large** 7:6
**late** 5:5 7:14
  18:2
**law** 17:12,12
  26:25 27:23
**lawsuit** 26:11
**lawyer** 15:21
**leave** 21:15
  25:13
**leaves** 13:4
**ledanski** 2:25
  31:3,8
**left** 5:25
**legal** 31:20
**lenders** 4:9
**level** 16:24
**levels** 27:14
**liberty** 3:20
**lifespan** 19:10
**light** 11:21
**line** 22:3 30:4
**listen** 15:16
**listening** 25:19
  27:7

| | | | |
|---|---|---|---|
| litigates  19:17 | means  6:22 | minute  21:11 | night  18:3 |
| litigation  25:12 | 19:16 26:4 | moment  9:16 | nights  7:14 |
| little  12:4 27:3 | meant  26:17 | monday  8:22 | note  7:25 8:18 |
| llc  1:7 | mechanics | monitored | 14:18 |
| llp  3:18 4:1,8 | 15:23 23:6,14 | 11:6 | noted  7:12 |
| log  21:11 | mediated | mornings  7:14 | notice  19:7 |
| long  8:10 21:1 | 26:12 | motion  26:2 | nuance  12:10 |
| longer  17:23 | mediation  2:1 | motions  19:5 | number  17:9 |
| look  8:10 | 6:20,23,24 8:1 | move  24:22 | 26:3 |
| looking  10:15 | 8:19,21,22,24 | moved  20:8 | numerous |
| 12:13 13:1 | 9:1,8 10:7,9,14 | moves  20:6 | 25:23 |
| loop  28:18 | 10:21 11:16 | moving  22:5 | ny  1:13 3:7,14 |
| lot  27:21,22,22 | 14:10,15,16 | **n** | 3:21 4:4,11 |
| loud  17:22 | 15:2,5,7,8 16:7 | n  3:1 5:1 30:1 | 31:23 |
| luke  5:10 | 16:24 17:5,8 | 31:1 | **o** |
| **m** | 17:14,18 18:5 | narrow  9:3 | o  1:21 5:1 31:1 |
| made  10:19 | 18:18 19:2 | necessary | o'neal  3:23 5:8 |
| 17:10 | 20:25 22:18 | 19:25 26:8 | 5:9 6:10,12,15 |
| majority  17:20 | 23:10,11 28:11 | need  14:24 | 9:19,20 10:19 |
| make  7:23 | 30:5 | 15:19 19:12 | 13:15 16:3,6 |
| 15:20 20:21 | mediations | 20:22 22:22 | 21:3,3 25:15 |
| 22:23 26:19 | 17:23,25 19:15 | 23:17 24:21 | 25:16,16 27:3 |
| 27:7 | mediator  26:14 | 28:16 | 27:6 28:7 29:3 |
| makes  9:24 | meetings  13:18 | needed  21:22 | object  15:16 |
| making  18:7 | members | needs  22:6 | 25:20 |
| 20:11 | 15:16 | 24:14,21 28:24 | objection |
| manges  4:1 | merely  9:2 | negotiate | 25:11 |
| 5:23 | merits  25:12 | 18:16 19:19 | obligations  9:6 |
| materializes | metaphor | negotiating | obviously  9:15 |
| 10:25 | 12:25 | 28:13 | 20:4,10 21:24 |
| matter  1:5 5:3 | mind  8:13 | negotiations | 28:17 |
| 12:18 27:23 | 27:10 | 12:19 19:16 | offensive  19:13 |
| maxim  11:23 | mineola  31:23 | neutral  26:15 | official  3:4 |
| mean  20:1 | minimum | never  14:4 | 5:12,14 13:12 |
| meaningful | 11:12 23:15 | new  1:2 3:7,14 | 13:14 18:21,22 |
| 17:13 | 25:9 | 3:21 4:4,11 | 27:11,19,24 |
| | | 14:19 26:4 | |

old  31:21
once  17:25
ongoing  7:14
   7:21
operating  18:6
opportunity
   14:15 24:7
   27:18
opposed  26:10
order  6:24 8:1
   10:9,12,17
   15:1,5 16:24
   17:5,11,17,19
   23:9,12,12,13
   23:14 28:10,15
ordered  17:18
ordinary  7:4
original  16:4
outset  16:4
   17:24
outside  11:9
overall  16:17
own  9:6

**p**

p  3:1,1 5:1
page  15:22
   30:4
pandemic  18:3
paper  15:20
park  3:13
part  10:17,17
   13:17 20:13
   26:1
participants
   9:13
participate
   14:15 19:15

particular
   28:23
parties  6:25
   7:1,1,7,10,13
   7:16,19 8:23
   9:3,9 10:5,7,11
   10:12 11:1,5,7
   11:8,9 15:2,5
   16:14,25 18:11
   18:16 19:19
   22:13,16 23:1
   25:9 26:12,18
   28:6
party  7:25 8:3
   8:3,24 9:23,24
   9:25,25 10:5
   10:15 11:16
   13:10,10 14:17
   14:18 17:6
   26:14,15 28:9
passed  16:13
patient  25:21
people  6:1
   11:24 14:9,12
   15:9 18:6
   19:12 20:18
   21:13 23:4
   24:13,20,23
   25:1,18 27:4
period  6:20
   8:21,22,25 9:8
   10:8,21 24:1
periods  28:25
permitted  15:2
persaud  1:25
perspective
   14:14 25:3

persuasive
   17:21
phil  5:15
phone  23:2
picture  20:24
piece  28:8
place  23:16
plains  1:13
plaintiff  26:10
plan  11:18
   20:23 26:1,13
planned  17:24
plaza  3:13,20
please  28:17
pm  1:16 29:6
point  6:1 8:7
   8:16 10:9 16:7
   16:9,15 17:16
   25:18
pointing  28:7
poker  21:14
policy  18:17
position  11:10
possible  20:3
posted  23:24
posting  24:2
potential  9:12
   11:23 25:11
preference
   21:17
prefers  9:7
   21:8
preliminarily
   17:2
preliminary
   16:13

premature  8:8
present  7:16
pretext  10:22
pretty  17:10
principle  7:9
   7:13,24 9:12
   23:5
probably  8:9
   25:14
problem  15:9
proceeding
   28:9
proceedings
   29:5 31:4
process  7:23
   8:8,10 16:10
   16:15,23 24:22
   25:19 26:22
   27:5,23
productive
   7:22
professionals
   19:14 20:11
progress  18:7
promises  13:21
promptly  18:2
prop  27:21
proposal  11:13
   11:16
proposals  8:5
   10:7 11:2,20
   11:22,22 12:6
   14:10 16:15
proposed
   11:15 20:6
   28:15

[proskauer - scheduled] Page 9

**proskauer** 4:8
5:19 16:3
**protected** 9:17
**protecting**
18:18 19:2
**protections**
23:11 27:22
**provide** 11:2,3
**provided** 10:10
**provides** 10:12
**provision** 7:2
8:1
**provision's**
18:10
**provisions** 7:5
7:5 18:9 27:22
**publication**
6:21 7:17,22
8:1,14,19,20
9:2
**publicize** 12:8
**publish** 6:25
7:2 8:5
**published** 8:16
**push** 11:24
**put** 14:1 23:13

**q**

**quarropas**
1:12
**question** 12:4
13:6,25 18:6
21:1
**questions**
24:12
**quick** 12:4
**quickly** 20:3

**quite** 12:10
17:16

**r**

**r** 1:21 3:1 5:1
31:1
**railroad** 24:19
**railroaded**
11:14 22:14
**railroading**
25:20
**raise** 25:2
**rates** 17:13
**reach** 17:1
22:7 27:15,20
28:16
**reached** 6:10
18:11,13 25:25
26:1
**read** 11:16
12:9 21:14
24:4,7
**real** 22:21
**really** 6:18
**reason** 18:15
18:17
**reasons** 20:25
23:3
**recall** 6:23
**recalls** 13:22
**recognize**
21:24
**record** 23:10
28:10 31:4
**recovery** 11:23
**reed** 3:11 6:5
10:3 22:12

**refer** 13:3
**reference**
10:19
**regard** 15:17
**regarding** 2:1
11:21 22:14
**relatively** 7:3
**remain** 16:11
16:23
**remains** 16:25
**remove** 21:10
**removes** 25:10
**represent**
27:25
**representation**
27:13
**represented**
24:24
**request** 6:19
7:2 9:3 10:20
16:4
**requested** 5:4
16:5
**requesting**
8:14
**required** 7:25
**reservations**
11:21
**reserving**
14:22 26:19
**resolve** 24:20
**resolved** 13:17
**respect** 11:11
15:12 16:4,12
**respond** 25:18
**rest** 7:15 10:5

**result** 11:13,22
**reveal** 9:11
**right** 5:2,11,16
5:25 6:7,9 9:19
9:22 13:5,9
14:22,24 15:19
15:25 17:6,8
21:20,24 24:8
25:8 27:17
28:10
**rights** 14:22
26:19
**risk** 24:16
**road** 31:21
**room** 1:12 26:6
28:21
**rose** 4:8 5:19
16:3
**rosen** 4:13 5:18
5:19 16:2,3
21:16,20,21
**round** 10:22
13:18
**rule** 9:18,18
18:19 26:2
**rules** 27:22
**rulings** 30:3

**s**

**s** 3:1 4:13 5:1
**saferstein** 4:6
5:22,23
**sailed** 19:8
**satisfied** 14:17
**save** 15:5
**schedule** 15:17
**scheduled** 7:18

scheduling 6:16
sean 1:22 3:23 5:9 21:3 25:16
second 28:23
secret 17:23
see 5:15 8:9 16:25 20:9 29:1
seeking 14:20
seem 22:14 24:18
seems 9:2 13:18 15:9 28:13
seen 19:8
segue 5:2
sense 9:24 20:18 27:5
sensitivity 27:2
sequence 23:21
served 11:19
set 23:3
setting 6:11
settlement 6:25 8:8 14:24 26:2
settlements 25:25 26:24
several 13:25
shadows 13:1
shapes 28:5
share 18:10,12 19:24 20:16
sheet 5:5 8:20 13:23 14:5
sheets 6:21,25 7:23 8:15

shl 1:3
shore 3:9 5:13 5:14 13:13,14 14:4 21:15,17 21:18 23:19 28:3
sidebar 21:7
sign 26:14
signature 31:7
signatures 23:23
significant 19:1
silbert 14:20
simple 10:9
simply 9:7
sitting 22:21 28:3
situation 15:4 15:7
size 14:7
sizes 28:5
smoothly 19:8
solutions 31:20
solve 22:9,21
sonya 2:25 31:3,8
sorry 21:21
sort 12:25 17:22 28:23
source 25:11
southern 1:2
space 14:24,25 15:19
speak 6:3
specific 12:6

square 4:10
stake 16:20
stakeholders 9:10 13:11
start 6:14 13:12 26:16,17
started 7:11 10:14 13:24 14:19 15:8
startling 17:16
state 14:19
stated 9:22
statement 7:17 8:17,17 11:15 15:11,12,13 20:7,8,15,17 20:23 21:6,25 22:19 23:24,24 24:2,3,9,12 25:4
statements 23:3
states 1:1,11
statistic 17:16
status 2:1 5:4 7:8 9:13 11:11 12:18,22,22
steen 3:18
steer 28:25
steps 13:25
stipulate 8:11
stopped 16:7
street 1:12
struck 20:6
studied 17:14
subject 16:23

submitted 7:1
subset 26:18 27:23
substance 13:2 20:12
substantial 12:2
success 17:13
sufficient 11:4 20:5 24:4
suggest 21:4
suggested 9:1
suite 31:22
sum 6:19
summer 18:1,4
support 11:4 18:21,23,23 19:1
supportive 14:5,6
sure 6:15 9:22 12:10,10 13:23 15:16,21 20:12 20:21 27:7,16
surprised 19:9
swath 28:6
swelteringly 18:4
sympathize 20:2

t

t 31:1,1
take 14:8 17:23 19:7,18
taken 8:10
takes 11:11

talk  12:6 21:9
  25:9
talking  19:6
tea  13:3
technically
  8:22
tell  7:8 17:12
  18:2
telling  11:10
tent  11:9
term  6:21,25
  7:22 8:15,20
  10:6,11 13:23
  14:5
terminated
  14:11 15:8
termination
  6:24 22:18
terms  7:8 8:5
  9:12 10:6
  12:11 15:1,13
  16:23 22:2,16
thank  6:7,15
  6:16 9:21 13:8
  13:13 16:2
  17:5,6 21:22
  27:17 28:7
  29:2,3,4
thing  22:21
  27:18
things  9:15
  12:23,24 14:21
  16:13 18:4
  20:10 23:9
  25:12 27:24
  28:21

think  5:5 8:7
  12:5 13:15,24
  14:8 15:7
  16:14 17:21,25
  20:16,20 21:1
  22:20,25 25:22
  28:11
third  26:14
thought  12:5
thoughts  21:13
thousands
  14:12
throw  28:8
thrown  26:3
time  7:14,23
  14:5,8,16
  15:15 17:5
  19:6,12,12
  20:5,21 21:10
  22:17,21 23:15
  24:1,4,12,17
  24:20 25:5,10
  28:25
times  4:10 26:7
timing  15:12
  19:3
tired  8:9
tirelessly  25:22
today  11:8
  14:17 20:14
  23:10
today's  6:3,18
  28:9
together  14:1
took  13:25
transaction
  11:12

transcribed
  2:25
transcript  31:4
transparency
  26:23
true  11:21 31:4
trust  3:12 6:6
  10:3 14:18
  22:3,12
try  20:2 22:9
  26:8 27:3,15
  28:19
trying  8:12
  12:17 13:1,16
  13:19 14:11
  26:13
tune  23:7
turn  6:13
turning  19:3
tweet  8:6
two  12:23

**u**

u.s.  1:23
ucc's  24:19
unacceptable
  12:20
unanswered
  24:11
unclear  24:11
under  6:23 9:5
  15:1 17:11,11
  17:18 26:2,24
  27:1
understand
  8:3,23 12:14
  12:22 16:18
  18:10 24:7

  27:7
understanding
  11:20 17:1
understated
  13:15
understood
  24:10
united  1:1,11
unmute  21:22
unsecured  3:4
  18:22 24:6
  27:25 28:2,2,4
use  10:11
  27:18,21
used  25:19
user  27:13
users  6:6 10:4
  11:7,23 12:1,3
  16:19 19:22
  20:22

**v**

value  11:3 14:2
  14:3 19:17
vanlare  5:10
variety  27:14
  28:4
various  8:5
  19:5
vast  17:20
veritext  31:20
versus  26:10
view  13:10
views  22:1
  23:20

| **w** |
|---|

**wait**  28:15
**want**  12:8,15
   13:11 14:9
   19:19 20:24
   21:2,9,14
   23:13 25:17
   26:20
**wanted**  13:6
   27:6
**wanting**  17:20
**way**  8:21 14:1
   19:3,13 21:10
   23:16 24:9
   25:14 28:14
**we've**  19:4,5
   24:8 25:23
**week**  10:25
**weekends**  7:11
**weeks**  13:18
**weigh**  10:1
   17:7
**weighing**  14:12
**weil**  4:1 5:23
**went**  10:7
**white**  1:13 3:3
   5:14 13:14
**wise**  16:20
**wish**  17:7
**wishes**  9:25
**word**  20:12
**words**  15:21
**work**  13:16
   19:14 24:25
   25:13 26:8
   27:15

**worked**  16:12
**working**  7:10
   25:21 27:8
**works**  27:5
**world**  26:4
**worth**  21:15
**worthwhile**
   28:8
**write**  15:21
**written**  23:12
   23:13 24:9

| **x** |
|---|

**x**  1:4,10 30:1

| **y** |
|---|

**yeah**  12:16
   13:24 21:19,21
**york**  1:2 3:7,14
   3:21 4:4,11
   14:20

| **z** |
|---|

**zoom**  21:11