Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shl

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GENESIS GLOBAL HOLDCO, LLC,

8

9         Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  300 Quarropas Street, Room 248

14                  White Plains, NY 10601

15

16                  July 20, 2023

17                  2:12 PM

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  ALIANNA AND ART

Page 2

1    HEARING re Omnibus Hearing.

2

3    HEARING re Doc. #514 Notice Of Agenda.

4

5    HEARING re Scheduling Conference Re: Fee Application; Claim

6    Objections; Disclosure Statement.

7

8    HEARING re Doc. #483 Motion To Amend The Order Authorizing

9    The Debtors To Retain And Compensate Certain Professionals

10   Utilized In The Ordinary Course Of Business.

11

12   HEARING re Doc. #289 Motion For Relief From The Automatic

13   Stay Re: FTX Trading.

14

15   HEARING re Doc. #373 Motion To Authorize / Motion To

16   Establish Procedures And A Schedule For Estimating The

17   Amount Of The FTX Debtors Claims Against The Debtors Under

18   Bankruptcy Code Sections 105(a) And 502(c) And Bankruptcy

19   Rule 3018.

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    CLEARY GOTTLIEB STEEN HAMILTON LLP

4         Attorneys for Debtors

5         One Liberty Plaza

6         New York, NY 10006

7

8    BY:  JANE VANLARE (TELEPHONICALLY)

9         LUKE BAREFOOT (TELEPHONICALLY)

10        DEANDRA FIKE (TELEPHONICALLY)

11

12   WHITE CASE LLP

13        Attorneys for Committee of Unsecured Creditors

14        1221 Avenue of The Americas

15        New York, NY 10020

16

17   BY:  J. CHRISTOPHER SHORE (TELEPHONICALLY)

18

19   PROSKAUER ROSE LLP

20        Attorneys for Ad Hoc Committee

21        Eleven Times Square

22        New York, NY 10036

23

24   BY:  MEGAN VOLIN (TELEPHONICALLY)

25

Page 4

1    SULLIVAN CROMWELL

2        Attorneys for FTX Debtors

3        125 Broad Street

4        New York, NY 10004

5

6    BY:  ANDREW DIETDERICH (TELEPHONICALLY)

7        BRIAN GLUECKSTEIN (TELEPHONICALLY)

8        BEN BELLER (TELEPHONICALLY)

9

10   PAUL HASTINGS

11       Attorneys for FTX Unofficial Committee of Unsecured

12       Creditors

13       200 Park Avenue

14       New York, NY 10016

15

16   BY:  KENNETH PASQUALE (TELEPHONICALLY)

17

18   WEIL GOTSHAL MANGES LLP

19       Attorneys for Digital Currency Group

20       767 Fifth Avenue

21       New York, NY 10153

22

23   BY:  FURQAAN SIDDIQUI (TELEPHONICALLY)

24

25

1   HUGHES HUBBARD & REED, LLP

2        Attorneys for Gemini Trust Company

3        1 Battery Park Plaza

4        New York, NY 10004

5

6   BY:   JEFFREY MARGOLIN (TELEPHONICALLY)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                P R O C E E D I N G S

2            THE COURT:  Good afternoon.  This is Judge Sean

3    Lane in the United States Bankruptcy Court for the Southern

4    District of New York and we're here for a two o'clock

5    hearing in Genesis Global Holdco, a Chapter 11 case.  And

6    so, we'll start this hearing as we always do with

7    appearances.  So let me find out who's here on behalf of the

8    Debtor.

9            MS. VANLARE:  Good afternoon, Your Honor.  Jane

10   VanLare, Cleary Gottlieb Steen & Hamilton on behalf of the

11   Debtors.

12           THE COURT:  Right.  On behalf of the Official

13   Committee of Unsecured Creditors?

14           MR. SHORE:  Good afternoon, Your Honor.  Chris

15   Shore from White & Case on behalf of the UCC.

16           THE COURT:  All right, good afternoon, and on

17   behalf of the Ad Hoc Committee?

18           MS. VOLIN:  Good afternoon, Your Honor.  Megan

19   Volin, Proskauer Rose, on behalf of the Ad Hoc Group.

20           THE COURT:  All right, good afternoon.  On behalf

21   of the Debtors in the FTX case?

22           MR. DIETDERICH:  Good afternoon.  Andy Dietderich,

23   Brian Glueckstein, and Ben Beller, Sullivan and Cromwell.

24           THE COURT:  All right, good afternoon.  And I

25   believe there's an Unofficial Committee of Unsecured

1    Creditors for FTX, there a counsel here for that group.

2              MR. PASQUALE:  Yes, Your Honor, good afternoon.

3    For the Official Committee of Unsecured Creditors in the FTX

4    case, Ken Pasquale from Paul Hastings.

5              THE COURT:  All right, good afternoon.  And as is

6    usual, or maybe -- oh, Digital Currency Group.  Let me see

7    if there's anyone here for Digital Currency Group.

8              MR. SIDDIQUI:  Good afternoon, Your Honor.

9    Furqaan Siddiqui at Weil Gotshal & Manges on behalf of

10   Digital Currency Group.

11             THE COURT:  All right, good afternoon.  So let me

12   find out if there's anyone else here who wishes to make an

13   appearance as they anticipate speaking at today's hearing.

14             MR. MARGOLIN:  Good afternoon, Your Honor.

15   Jeffrey Margolin, Hughes Hubbard & Reed on behalf of Gemini

16   Trust Company.

17             THE COURT:  All right.  Good afternoon.  Anyone

18   else?  All right, good afternoon to you all.  So I have a

19   copy of the agenda which is at Docket 514 that sets forth a

20   number of different things and a couple of which are

21   conversations that are continuations of conversations that

22   we've had in the past in other hearings, and as I think we

23   discussed at those hearings, my intention wasn't to reargue

24   those today but rather to talk about any subsequent

25   developments and see where we are.

Page 8

1          But the motions were very ably argued previously

2     and that's, particularly the lift stay motion that's at Item

3     No. 2 on the docket and the estimation motion.  And so --

4     but I know we have an ordinary course motion which is at

5     docket -- listed at No. 1 on the agenda.  So with all that

6     as prologue, let me turn it over to Debtors' counsel to walk

7     us through what we need to address here today.

8          MS. VANLARE:  Thank you, Your Honor.  Jane

9     VanLare, Cleary Gottlieb.  And also, on behalf of the

10    Debtors in the courtroom we have Mr. Luke Barefoot and our

11    colleague, Ms. Deandra Fike.

12         THE COURT:  All right, and I would just say,

13    Counsel, I'm having a little trouble hearing you.  I can

14    make it out, but it's sort of at the very fringes of what I

15    can make out, so we'll just monitor it and hope that that's

16    -- doesn't become an issue.

17         MS. VANLARE:  Thank you, Your Honor.  Just let me

18    know.  It may be an issue --

19         THE COURT:  Yep.  You just -- in fact, it's almost

20    as if on cue, you just dropped off and perhaps it's a me

21    problem.  I don't know if folks elsewhere are having trouble

22    hearing.

23         MR. DIETDERICH:  We have the same difficulty, Your

24    Honor.

25         THE COURT:  All right.  That's one of the joys of

Page 9

1    this era of practicing law is you never quite know.  I know

2    the Court went blank the other day, I went blank for about

3    15 seconds and it was clearly on us, so I never quite know.

4    So, Ms. VanLare, it might be advisable, if you have an

5    alternative way to be heard, I'm happy to take a brief

6    moment for you to do that.

7             MS. VANLARE:  Your Honor, if you can hear me, why

8    don't I pass the microphone over to Ms. Fike to present the

9    ordinary course motion and in the meantime, I will dial up.

10            THE COURT:  Perfect.  Sounds eminently sensible.

11   All right.  So turning to the ordinary course motion,

12   Counsel?

13            MS. FIKE:  Yes, Your Honor.  Good afternoon.  This

14   is Deandra Fike speaking, of Cleary Gottlieb, on behalf of

15   the Debtor.  Let me know if you can hear me okay.

16            THE COURT:  I can hear you just fine.  Thank you.

17            MS. FIKE:  Great.  I will be presenting Item 1 on

18   the agenda, the Debtors' motion to amend the author order --

19   the order authorizing the Debtors to retain and compensate

20   certain professionals utilized in the ordinary course of

21   business, which should be tab one of Your Honor's binder and

22   is located at the Docket No. 483.  As Your Honor will

23   recall, the Debtors previously filed the application to

24   employ professionals used in the ordinary course of business

25   at Docket No. 65 on February 8th of this year, which was

Page 10

1    subsequently entered by this Court at Docket No. 102 on

2    February 24th also of this year.

3            The Debtors are now moving to amend such order to

4    first increase the OCP monthly cap set forth in the OCP

5    order from $100,000 per month to $150,000 per month on a

6    three-month rolling average, and secondly, to increase the

7    overall OCP case cap from $300,000 to $500,000.

8            The Debtors believe such increases to be in the

9    best interests of the Debtors' estates, their creditors, and

10   other parties in interest, as it will allow the

11   professionals to continue efficiently providing their

12   critical services without having to continually expend

13   additional time and incur additional cost related to the

14   preparation of full retention and fee applications and

15   statements.

16           Further, such increases are in line with more

17   realistic amounts routinely approved for professionals in

18   cases of similar duration and complexity, as further

19   outlined in the motion to amend.  The Debtors consulted with

20   the Office of the U.S. Trustee, counsel for the Committee,

21   and counsel for Gemini prior to filing the motion to amend,

22   none of which had any objection to the motion.

23           The motion is now before Your Honor uncontested.

24   And with that, unless Your Honor has any questions, the

25   Debtors respectfully request that Your Honor approve the

1   motion and enter an order substantiating the form of the

2   proposed order filed as Exhibit A to the motion to amend.

3           THE COURT:  All right.  Thank you very much.  Is

4   there any party that wishes to be heard in connection with

5   the motion?  All right, hearing no responses and noting as

6   was just represented that the U.S. Trustee's Office, the

7   Committee, and counsel for Gemini Trust Company, in fact,

8   had no objection to the relief requested, I'm happy to grant

9   the relief.  I do know that it is consistent with the cap

10  set in other cases.

11          We obviously do that on a going forward basis and

12  it's perfectly fine, appropriate, and indeed understandable

13  to start out with a lower number and then seek leave to make

14  -- to change those numbers on the fly as you go, but these

15  numbers are consistent with the cases you identify in

16  Paragraph 11 of your motion and I'm happy to approve it as

17  being a good idea for these cases and appropriate under all

18  the facts and circumstances.  So, that motion is approved.

19  Thank you very much, Counsel.

20          MS. FIKE:  Thank you, Your Honor.  I'll pass the

21  virtual podium.

22          THE COURT:  All right.

23          MS. VANLARE:  Your Honor, hello again.  Is this

24  better?

25          THE COURT:  That is much better.  Thank you very

Page 12

1    much.

2              MS. VANLARE:  Excellent.  Thank you for your

3    patience.  Appreciate it.  So next on the agenda, Your

4    Honor, are the two FTX related motions, the motion of the

5    FTX debtors to lift the stay and our motion for estimation.

6    As Your Honor noted, I think this was intended as a status

7    conference.  We have been continuing to exchange

8    information.  We have had some meet and confers on --

9    relating to discovery and the issues.

10             Your Honor, what I would propose in terms of next

11   steps, we have had some discussions on the issues that we

12   would propose to be -- that would be the basis for the

13   estimation motion.  I think the FTX debtors have different

14   views, and -- as I'm sure won't be surprising.  So, what I

15   would propose on our side, what I think would be helpful is

16   if we had an opportunity to submit a letter brief on the

17   issues that we think are the ones that should go forward and

18   a proposed schedule and we would invite, counsel to the FTX

19   debtors to do the same.

20             And then we would ask Your Honor to hold another

21   status conference, in which you could sort of take a look at

22   the issues and the schedule and then we could have a more

23   concrete discussion.  And we would ask that we proceed with

24   that next week, obviously subject to Your Honor's

25   availability, but we think it would be helpful to have the

Page 13

1   letter briefs that I just described with the issues on file

2   on Tuesday and then a conference with Your Honor perhaps

3   later that week.  I know we previously had time on Thursday.

4   I don't know if that time is available, but it would be

5   subject to Your Honor's availability.

6            THE COURT:  All right.  So I'll hear from FTX in

7   one minute, obviously, but I was thinking about these issues

8   the other day and realized that when I was checking my notes

9   that you had made a comment and I think it was in connection

10  with the -- that Exhibit B which had the potential defenses

11  to preference claims.  And when you were describing things

12  you mentioned at one point that there were some things that

13  you -- if I remember it correctly, that you thought were

14  some purely legal issues, right?  There's -- there wasn't a

15  whole lot of factual dispute, but rather there were

16  particular legal issues.

17           The reason -- and when I thought about that a

18  little bit further, it occurred to me that there -- what

19  estimation really is designed to do particularly or what

20  it's particularly good at is getting a handle on a very

21  unwieldy factual record, saying Judge, it's going to take a

22  long time to figure that out and we want to essentially

23  provide you with a smaller version of that where you can get

24  a sense of what the facts are and then make an estimate of

25  what you think is appropriate.

1          It occurs to me that for the things that maybe

2    fall either exclusively or much closer to the solely legal

3    issue, depending on the schedule in the case, you know, lots

4    of people ask for things expedited and they're not

5    estimations, but they're gating issues for something, either

6    confirmation, distribution, whatever it is; that it may be

7    that there are some issues that are simply amenable being

8    put on an expedited track to decide on the merits.

9          And the reason why I mentioned that is because

10   estimation, while it can be beneficial, it can also be a bit

11   of an albatross, meaning that as you go forward everybody

12   has this this other uncertainty that whatever the outcome,

13   the other side will say estimation was done improperly and

14   you raise a whole other set of collateral issues.

15         And regardless of who wins or loses, what we all

16   want to do is to do this in the most efficient way so that

17   you don't have a lot of collateral issues.  We -- you

18   present me the issues that need to be decided that are

19   central and when I decide them, unless you resolve them.

20         So, I don't have a -- when I'm going through the

21   list and my notes of prior conversations, I didn't have any

22   magic application of this thought to the list you had, but I

23   wanted to throw it out for the consideration of the Debtors

24   and FTX that there may be some ones that you just say, well,

25   jeez, we were going to get so close anyway, we might as well

1   just tee this up on the merits and maybe there's some

2   particular merit things that we just -- Judge, we just need

3   quick answers on these.

4           That's fine.  That happens.  And that for ones

5   that might have -- then you could really think about

6   estimation more as ones that have more unwieldy and

7   extensive factual -- potential factual records that, where

8   an estimation does give you and is sort of in the classic

9   estimation wheelhouse of shortening procedures and

10   shortening time and getting you decisions.

11           And so, I throw that out there for your

12   consideration as you have your discussions and you think

13   about what makes sense.

14           MS. VANLARE:  Appreciate that very much, Your

15   Honor.  We'll certainly take that into account as we

16   consider what our revised proposed schedule should look like

17   and see if we want to modify our proposal based on that

18   guidance.

19           THE COURT:  All right.  And with that, I'll turn

20   it over to Mr. Dietderich and other folks in the room where

21   he sits, whoever wants to jump in on your thoughts about

22   next steps.

23           MR. DIETDERICH:  Thank you, Your Honor.  For the

24   record, Andy Dietderich, Sullivan & Cromwell.  Your Honor,

25   we were not consulted with this proposal to submit letter

1   briefs to Your Honor.  It would have been easy to have that

2   discussion with us before the hearing today, but it strikes

3   us as news today.  We would be happy to talk about that kind

4   of a process.  We probably need more time than Tuesday to

5   submit that, just because of the work streams that we're

6   managing here.

7           Again, it takes us by surprise.  But we're

8   perfectly fine with submitting to Your Honor something

9   organized and in writing about a path forward, what issues

10  should be potentially resolved by Your Honor, what issues

11  should be resolved by Judge Dorsey in Delaware, and to lay

12  that out, and if there's a distinction to make a sensible

13  distinction between legal issues and factual issues, you

14  know, we can do that in the same submission.

15          I do think, I do think, Your Honor, that under

16  your guidance a little bit, we have made real progress on a

17  number of fronts here.  We know a lot more about the Genesis

18  case than we did when we started.  It's still a little bit

19  of a black box to us, but we do know more.  We still

20  continue to believe that part of this process should be

21  finding a way to not impede it and to make sure that

22  whatever we're doing on the resolution of this issue can

23  kind of have our cake and eat it too in terms of being --

24  not touching it in issues that are central to FTX but also

25  not slowing down the Genesis case.

Page 17

1          So, we're very committed to that project and we

2     are -- have made some progress, as Ms. VanLare mentioned, in

3     identifying what is in dispute.  We did send a list of

4     issues, kind of the FTX specific issues, our sacred issues,

5     if you will, for the FTX case.  We did sent that across to

6     Ms. VanLare on Friday.  We don't have a detailed response

7     from her yet, but we will look at that again and make that

8     the heart of our submission to Your Honor next week.  So,

9     we're fine, but we would ask to maybe do that at the end of

10     next week rather than Tuesday if that's all right.

11          THE COURT:  Well, let me -- so I can help you on

12     the schedule.  I'm at a Federal Judicial Center conference

13     Monday, Tuesday, and Wednesday, so my thought would be let's

14     sort of split the baby, have submissions due on Thursday and

15     then commit to having a get-together the following week to

16     talk about things.  And what that will also do is allow you

17     to get a chance to look at each other's submissions and see

18     if you can further narrow the gap.  I'm always happy to have

19     updates that say, Judge, we submitted something that raises

20     a whole bunch of potential flashpoints and we've resolved

21     some of those, and even if we need your guidance on others.

22          So, I know that there was -- and this was no doubt

23     going to be on everybody's agenda anyway -- discussions

24     about further proceedings and I think the thought was in the

25     aftermath of various conversations the other day to move the

Page 18

1    disclosure statement hearing and I believe that chambers --

2    and there's conversations back and forth and I think you

3    landed on August 4th as a date, so I would say we could

4    potentially use that date as a time to chat.

5            I'm happy if we need to chat earlier and so I'm,

6    I'm happy if we want to stick in another date, if -- a

7    little earlier than that, if that would be helpful, but

8    certainly we wouldn't go past August 4th in terms of having

9    a date to talk.  So, what I might do is if you give me a

10   second, I can check.  Got several calendars here and I need

11   to check one I have that's not in front of me.

12           Maybe I'll give you -- we'll use August 4th as the

13   date, but I'll give you an earlier date as well.  And if

14   you're still talking and making progress, you'll just tell

15   me we're going to do it in August 4th, but I'll be available

16   to have a conversation if I can be of any use, and you all

17   are much closer to these issues.  I'm not part of the

18   negotiations.  So, you're in a much better position to let

19   me know if getting together is -- whether it's the right

20   time to do that.

21           If you're stuck, then the answer is yeah, fine;

22   but if you're still making progress, you can just release

23   the date.  You just give chambers a call and let us know

24   that.  So if you give me one second.

25           And so, what I could do is schedule something for,

1    perhaps for Wednesday morning, August 2nd, say Wednesday,

2    August 2nd at ten o'clock or eleven o'clock, whatever works

3    for folks, or the afternoon as well.  And if you're still

4    working, you just call me and release the date and if -- but

5    if it's helpful to chat then, we can chat then.

6           MS. VANLARE:  Thank you, Your Honor.  I think that

7    makes sense.  I would note also, I was not envisioning

8    something much more extensive than the chart that you had

9    looked at previously and that Mr. Dietderich just referenced

10   as far as what their views are.  So I -- that was why I

11   thought that we didn't really need that much more time but,

12   but happy to use extra time.  I'm just -- I just wanted to

13   specify it so that we don't have a differing understanding

14   of what Your Honor will receive next Thursday in terms of

15   length and --

16          THE COURT:  Yeah, I think anything that's

17   submitted would contain -- the issue would contain a sort of

18   summary of what you think resolution of that issues would

19   entail, whether it would include witness testimony or it's a

20   pure legal issue.  If it does include witness testimony, to

21   what extent is it the proposal to have two witnesses a side,

22   is it half a day, a full day, three days?

23          And whether to inject the last comment into this,

24   whether it's something that really would be the subject of

25   estimation or really just something that would be a

Page 20

1   decision.  Again, so we could not have the albatross,

2   potential albatross investigation onto things that maybe

3   don't benefit really from it.

4           And so, the only other thing I would think of is

5   if, in addressing a particular issue, you all know it's a

6   flash point for the other side, you might include in your

7   explanation a way to address the concerns of the other side.

8   Say, we know that Mr. Dietderich and his team have

9   identified certain issues and this is why we think -- how we

10  could handle them, or avoid them or not avoid them because

11  we think we can't avoid them, what whatever it is.  Just so

12  parties engage with each other in a meaningful way and so

13  these submissions are a step forward.  So Ms. VanLare, does

14  that make sense to you?

15          MS. VANLARE:  That's perfect and very, very

16  helpful.  Thank you, Your Honor.

17          THE COURT:  All right.  Mr. Dietderich, does that

18  make sense to you?

19          MR. DIETDERICH:  Absolutely.

20          THE COURT:  All right.  So with that, what I will

21  do is I will continue to adjourn the motions to the next

22  time we get together.  And I -- what I will do is I'm not --

23  my intent is to never surprise somebody by ruling.  When you

24  carry motions, sometimes you never quite know when is the

25  judge going to rule.  My intent will be that any time we're

Page 21

1    getting together for status and to have these kinds of

2    conversations, you're not going to get a ruling on the

3    motions.

4           There may come a time when it is appropriate and

5    necessary for me to do so, but I will always give people the

6    heads up because again, I don't know where you are in

7    negotiations and the last thing I want to do is have you all

8    make progress and then surprise somebody with a ruling that

9    undoes that progress.

10          So, that's my commitment to you.  Obviously,

11   you're all -- you both filed motions and there may come a

12   time when you just say, Judge, this is time for you to rule

13   and that's fine, but I promise not to surprise anybody with

14   that and thus potentially undo all the good work that you've

15   done.

16          So, my intent the next time we get together,

17   whether it's the 2nd or the 4th, is not to rule.  And again,

18   if I'm going to make a ruling, I will pick a time and it'll

19   be for that, specifically for that purpose.  So just wanted

20   to make sure everybody's on the same page.

21          And so, with that, Ms. VanLare, is there anything

22   else to discuss on these two remaining agenda items that you

23   think would be helpful?

24          MS. VANLARE:  I don't believe so, Your Honor.

25   Thank you.

Page 22

1             THE COURT:  All right.  Mr. Dietderich, anything

2      from you?

3             MR. DIETDERICH:  No, Your Honor.  That's all very

4      clear and thank you.

5             THE COURT:  All right.  Thank you all very much

6      for your continued discussions on what are very important

7      issues to this case and to the FTX case.  You all have

8      enough challenging things to do, so I hope that we'll end up

9      at a place that regardless of what has to be resolved, makes

10     some progress and take at least some things off the list of

11     topics to litigate over.  So, we'll see how it goes.  Thank

12     you very much.  Be well and see you soon.

13             MS. VANLARE:  Thank you, Your Honor.

14             MR. DIETDERICH:  Thank you, Your Honor.

15             (Whereupon these proceedings were concluded at

16     2:37 PM)

17

18

19

20

21

22

23

24

25

Page 23

1                          I N D E X

2

3                          RULINGS

4                                                Page      Line

5   Compensation of ordinary course

6   professionals, granted                       11        8

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 24

```
 1                  C E R T I F I C A T I O N

 2

 3       I, Sonya Ledanski Hyde, certified that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8   Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  July 26, 2023
```