**Adam J. Goldberg**
Direct Dial: +1.212.906.1828
adam.goldberg@lw.com

1271 Avenue of the Americas
New York, New York  10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

# LATHAM&WATKINS LLP

August 1, 2023

**Via Electronic Filing**

The Honorable Sean Lane
U.S. Bankruptcy Court for the
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4140

Re:    *In re: Genesis Global Holdco, LLC, et al.*, Case No. 23-10063 (SHL)

Dear Judge Lane:

We write on behalf of Russel Crumpler and Christopher Farmer, as foreign representatives (the "Foreign Representatives") of the estate of Three Arrows Capital, Ltd. ("3AC"), which is subject to a liquidation proceeding in the British Virgin Islands (the "BVI").

3AC was an investment firm incorporated in the BVI, with a focus on trading cryptocurrency and other digital assets with billions of dollars in assets under management as of April 2022. 3AC collapsed around that time in the wake of extreme fluctuations in the cryptocurrency markets.  On June 27, 2022, 3AC commenced a liquidation proceeding before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division), and that court issued an order appointing the Foreign Representatives as joint liquidators of Three Arrows.  On July 1, 2022, the Foreign Representatives commenced a chapter 15 case in this district (Case No. 22-10920 (MG), the "3AC Ch. 15"), and on July 28, 2022, The Honorable Martin Glenn granted recognition as a foreign main proceeding.

The Foreign Representatives timely filed proofs of claims against the Debtors (collectively, the "Debtors") at Claim Numbers 523, 526, and 527 (collectively, the "POCs").  The Debtors filed an omnibus objection to the POCs (Dkt. No. 530, the "Claims Objection").  The Foreign Representatives and Debtors have agreed to adjourn the Claims Objection subject to the filing of amended POCs.

The Foreign Representatives and the Debtors seek this Court's direction on whether (1) the Foreign Representatives should be required to file amended POCs before receiving discovery from the Debtors and (2) if so, whether the filing of such amended POCs may weigh against the Foreign Representatives' ability to amend the POCs after the opportunity to take discovery.

The Foreign Representatives should be entitled to take discovery of the Debtors prior to a requirement to amend the POCs in accordance with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and in the interests of fairness, equity, and efficiency.

LATHAM&WATKINS LLP

If the Court orders the Foreign Representatives to amend the POCs before receiving discovery, they are prepared to submit an initial amendment by August 14, 2023. The parties have agreed that this amendment would moot the pending Claims Objection based on the current POC. However, the Foreign Representatives oppose filing an amended proof of claim at this stage, not only because it would be inefficient and fail to progress disputes to a resolution, but also because the Debtors seek to use this step to prejudice the Foreign Representatives' ability to assert claims of 3AC after taking discovery. The Debtors seek to reserve the right to argue that filing of amended POCs at this stage would preclude further amendments after the Foreign Representatives obtain discovery. Because this assertion is inconsistent with black-letter law freely permitting creditors to amend their claims, and would be unfair and inequitable in the context of this case, the Court should make clear that the fact of filing initial amended POCs by any deadline established by the Court will not be weighed against further amendments following discovery.

**I.    3AC'S CLAIMS ARISE FROM OVER $1.3 BILLION IN TRANSFERS TO THE DEBTORS DURING 3AC'S COLLAPSE AND OTHER COMPLEX TRANSACTIONS.**

The Debtors were 3AC's largest purported lenders prior to 3AC's collapse and appear to have maintained a close relationship with 3AC's founders (the "Founders"). The Founders caused 3AC to enter into purported loans with Debtor Genesis Asia Pacific PTE LTD ("Genesis Asia") and to purportedly pledge substantial amounts of 3AC's assets as collateral. In the run up to 3AC's collapse and liquidation, the Debtors received transfers over $1.3 billion through a combination of purported foreclosures, purported lien grants and perfections, and other transfers by 3AC. The Debtors have stated that these transactions reduced Genesis Asia's claim against 3AC to approximately $1.2 billion. Claims Objection ¶ 47. On June 30, 2022, Genesis Asia purported to assign its claims against 3AC to Debtors' parent, Digital Currency Group ("DCG").

3AC holds claims against the Debtors and DCG arising from these transfers and other matters. In addition, 3AC has claims against the Debtors, DCG and their affiliates arising from 3AC's investments in the Grayscale Bitcoin Trust and Grayscale Ethereum Trust, which are trusts sponsored by an affiliate of DCG. There is litigation pending brought by the FTX estates and other parties related to the Grayscale Bitcoin Trust and Grayscale Ethereum Trust.[1]

The Foreign Representatives have diligently pursued claims against the Debtors with the information available to them. In November 2022, prior to the filing of these chapter 11 cases and amidst reports on the deteriorating financial condition of the Debtors and DCG, the Foreign Representatives filed an action against the Debtors and DCG in the BVI, which has been stayed by agreement of the parties in recognition of the Debtors pending chapter 11 cases. On February 22, 2023, the Foreign Representatives and the Debtors entered in a stipulation regarding adequate protection subject to adjudication of 3AC's interests in property. (Dkt. No. 153.)

---

[1]    *See Alameda Research Ltd. v. Grayscale Investments, LLC et al.*, No. 2023-0276-PAF (Del. Ch.).

LATHAM&WATKINS LLP

The Foreign Representatives have attempted to negotiate a settlement with the Debtors and DCG, including meetings in April 2023. These negotiations were unsuccessful, and the Foreign Representatives timely filed their POCs against the Debtors on May 22, 2023.

## II.  DISCOVERY IS NECESSARY TO ADJUDICATE 3AC'S CLAIMS.

Obtaining discovery is critical to 3AC's claims because the Foreign Representatives' investigation has been limited by 3AC's incomplete books and records and the failure of 3AC's founders (the "Founders") and employees to cooperate with the Foreign Representatives. For example, when the Foreign Representatives gained access to 3AC's offices in Singapore, they found that "most physical documents, servers, and hard drives had been removed." (Dec. 2, 2022 Hearing Presentation, 3AC Ch. 15 Dkt. No. 68 at 13.) The Foreign Representatives have been recreating the books and records of 3AC virtually from whole cloth and are currently pursuing compulsory discovery, contempt proceedings for failure to provide court-ordered discovery, and monetary claims against the Founders in multiple jurisdictions. The Founders have evaded service and ignored subpoenas and court orders, leading the Foreign Representatives to file a pending motion to hold Founder Kyle Livingstone Davies in civil contempt on June 14, 2023 (3AC Ch. 15 Dkt. No. 98) and a similar application against co-Founder, Su Zhu, in Singapore.

Because neither the Debtors nor the Founders have provided discovery, the Foreign Representatives have limited information about 3AC's claims. In contrast, the Debtors have extensive information. The Debtors allege that any liability for 3AC's claims "lies with DCG," the Debtors' parent. (Claims Objection at 22 n.14.) The Debtors' Special Committee is conducting an ongoing investigation into the Debtors' "relationships and transactions" with DCG, and has reviewed almost 300,000 documents. (Dkt. No. 429, Disclosure Statement at 11, 15-16.) Thus far, the Debtors have provided to the Foreign Representatives only selected documents that support the claims of the Debtors and DCG against 3AC. Even in civil cases, courts have been reluctant to dismiss claims without discovery where the "facts are peculiarly within the possession and control of the defendant." *See, e.g.*, *New York v. Town of Clarkstown*, 95 F. Supp. 3d 660, 681 (S.D.N.Y. 2015) (rejecting dismissal of complaint for "paucity of facts").

The discovery that the Foreign Representatives have requested is not only in the Debtors' possession, but goes directly to key factual issues. For example, due to the destruction of 3AC's records and the lack of cooperation by the Founders, the Foreign Representatives believe they may not have complete records of all of 3AC's transactions, and the reasons for them. Obtaining discovery from the counterparties is thus critical. As another example, the Debtors state that 3AC's preference claims under BVI law raise the issue of "when 3AC became insolvent," which requires the Court to consider "facts concerning 3AC's balance sheet, capital position, liabilities, [and] ability to pay debts as they came due." Claims Objection at 16. As another bankruptcy court in this district observed, "insolvency [under BVI law] is a question of fact." *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 306 (Bankr. S.D.N.Y. 2018), *aff'd*, 630 F. Supp. 3d 463 (S.D.N.Y. 2022). The Foreign Representatives have requested documents and communications specifically related to 3AC's solvency when it made transfers to the Debtors. (Ex. A. at 11, Request No. 27.) And because the BVI insolvency standard is a cash flow test that depends in part on the actions of creditors, discovery from 3AC's largest purported lender (the Debtors) is particularly important to this issue.

LATHAM&WATKINS LLP

Both 3AC and the Debtors have sought discovery related to the POCs. The Foreign Representatives requested discovery related to their claims from the Debtors and DCG on July 14, 2023, prior to filing of the Claims Objection, to which Debtors must respond by August 14, 2023. (Ex. A.) Upon receipt of these requests, the Debtors served their own discovery requests on the Foreign Representatives, including four document requests and fifty-five requests for admission, to which the Foreign Representatives must respond by August 7, 2023. (Ex. B.) DCG has responded to the Foreign Representatives' request by completely refusing to produce documents.

The Foreign Representatives should be afforded a fair opportunity to obtain the discovery they have requested. *See In re Polaroid Corp.*, 527 B.R. 335, 346 (D. Minn. 2015) ("[b]ankruptcy [c]ourt abused its discretion when it declined to allow [creditor] any discovery prior to ruling on the merits of . . . claim objections").

### III. THE COURT SHOULD NOT HOLD A HEARING OR REQUIRE AMENDMENT OF 3AC'S POCS UNTIL DISCOVERY IS COMPLETE.

The Debtors' Claims Objection seeks disallowance of the Foreign Representatives claims without discovery or a hearing on the merits on the notion that the Proofs of Claim do not plead sufficient "factual detail." (Claims Objection at 17, 51.) The Debtors now seek a Court order requiring the Foreign Representatives to amend their Proofs of Claim before the Debtors provide discovery on the same grounds. But the pleading arguments that the Debtors have raised in their Claims Objection would not be an appropriate basis to disallow the claims at this stage. For this reason, it would not advance the disputes between the parties to require the Foreign Representatives to file amended POCs before discovery and instead would only create an inefficient and expensive delay in resolution of the POCs before the parties can get to the facts that will define the dispute.

The only reason why the Debtors would insist on the filing of amended POCs prior to discovery would be so that they can revive the Claims Objection and seek to disallow the claims as a matter of law at a "Sufficiency Hearing." (Claims Objection at 10.) But that order contains specific language—which the Foreign Representatives negotiated for and the Court required—that preserves the Foreign Representatives' right to request that the Court "order discovery" or establish new "rules and procedures." (Dkt. No. 498 ¶ 1(f).) There is no basis for the Debtors to obtain a Sufficiency Hearing and therefore no proper purpose for the Foreign Representatives to be required to amend the POCs prior to taking discovery.

The requirements for a creditor's proof of claim are set out in Rule 3001, which simply requires "a written statement setting forth a creditor's claim." FED. R. BANKR. PROC. 3001(a). The Bankruptcy Rules not only set out specific requirements for proofs of claim, but also set out the effects of following—or failing to follow—the textual requirements for proofs of claim. When a creditor "execute[s] and file[s]" of a proof of claim "in accordance with these rules [i.e., Rule 3001]," the proof of claim "*shall* constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. PROC. 3001(f) (emphasis added). That is, unless the objector "introduce[s] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer *no further proof* of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019) (emphasis added).

LATHAM&WATKINS LLP

When a proof of claim fails to meet the explicit, textual requirements of Rule 3001, as where it "fail[s] to attach the required documentation," that failure "does not automatically render the claim invalid." *See See In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010) (collecting cases); *In re Linzenberg*, No. 11 CV 1804 VB, 2011 WL 7095423, at *2 (S.D.N.Y. Dec. 14, 2011) (bankruptcy court properly allowed claim despite objection to "absence of documentation" where "the claimant remedied the flaw before the hearing"); *In re Irons*, 343 B.R. 32, 41 (Bankr. N.D.N.Y. 2006) ("The Court will not disallow [creditor's] claims solely based on procedural deficiencies."). Instead, the consequence for not meeting the requirements of Rule 3001 is simply an evidentiary one—the "loss of *prima facie* validity of the claim." *Minbatiwalla*, 424 B.R. 104, 112. Disallowance may result, if at all, only after the creditor has an opportunity to come forward with evidence supporting its claim, but fails to do so. *See id.* at 120 (allowing creditor to file amended proof of claim within twenty-one days); *Linzenberg*, 2011 WL 7095423, at *2 (allowing creditor to remedy defective proof of claim before hearing). This result is required because "[n]oncompliance with Rule 3001(c) is not one of the statutory grounds for disallowance," and bankruptcy courts cannot "enlarge or reduce" the "limited grounds for disallowance" provided by statute. *In re Heath*, 331 B.R. 424, 435 (B.A.P. 9th Cir. 2005) (bankruptcy court properly allowed creditors' claims where debtors' objection "relied solely on the alleged lack of prima facie validity" of their proofs of claim).

Rather than disallowing a creditor's claims, bankruptcy courts simply allow the creditor to amend their proof of claim to cure any procedural defects. "[A]mendment to a [proof of] claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim." *In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993). Underlying the strong policy in favor of amendments, under the informal proof of claim doctrine, bankruptcy courts routinely permit filing of a formal proof of claim that satisfies Rule 3001 *after* the bar date, provided that the creditor filed *some* document in the bankruptcy case setting out the "existence, nature, and amount of [their] claim" and "intent . . . to hold the debtor liable." *See, e.g., In re Southold Dev. Corp.*, 173 B.R. 63, 73 (E.D.N.Y. 1994) (affirming recognition of affidavit as "informal proof of claim"). The "intent" of this doctrine is to "alleviate problems with form over substance" and "equitably prevent[] the potentially devasting effect" of disallowing a claim on procedural grounds when a creditor's pleading "puts all parties on sufficient notice that a claim is asserted by [that] creditor." *See In re Republic Airways Holdings Inc.*, 573 B.R. 84, 89 (Bankr. S.D.N.Y. 2017) (*quoting In re WPRV-TV, Inc.*, 102 B.R. 234, 238 (Bankr. E.D. Okla. 1989)).

The Debtors do not dispute that the POCs comply with Rule 3001. Nor do the Debtors seek an evidentiary hearing to determine the extent to which the Court "shall allow" the POCs, as the Bankruptcy Code requires where no statutory ground for disallowance applies. *See* 11 U.S.C. § 502(b). Instead, the Debtors seek a hearing in which allowance is not a possibility, but rather only disallowance of the claims—and on a ground found nowhere in the Bankruptcy Code or Bankruptcy Rules, namely, that the Foreign Representatives do not allege sufficient "factual detail" to meet the plausibility pleading standards for a civil complaint under Federal Rule of Civil Procedure 12(b)(6). ("Rule 12(b)(6)") (Claims Objection at 9-10.) The Debtors seek a "Sufficiency Hearing" solely for the purpose of litigating this procedural issue, at which the Court would neither consider the evidence supporting the POCs nor the extent to which it is required to

allow the POCs. And of course it would be premature to conduct any evidentiary hearing, as the Debtors have not even begun to respond to the formal discovery requests served upon them.[2]

The Debtors have every incentive to seek "Sufficiency Hearings" because they impose significant litigation costs on creditors seeking to pursue claims, and offer a potential windfall to the Debtors if those claims are disallowed, without incurring any corresponding risk to the Debtors' estate that the claims will be allowed. However, neither Congress, nor the Supreme Court and the Advisory Committee on Bankruptcy Rules, have seen fit to make Rule 12(b)(6) applicable to proofs of claim in bankruptcy proceedings. Instead, under the plain text of Rule 7012, Rule 12(b)(6) is applicable only "in *adversary proceedings*" in which an adversary complaint has been "duly served" on a defendant. FED. R. BANKR. P. 7012(a).

The Debtors cannot, and do not, contend that the Claims Objection creates an adversary proceeding to which Rule 7012 applies. An objection to a claim creates a "contested matter" governed by Rule 9014, *not* an "adversary proceeding" governed by the Part VII of the Bankruptcy Rule. *In re Tender Loving Care Health Servs., Inc.*, 562 F.3d 158, 162 (2d Cir. 2009); FED. R. BANKR. P. 9014, ADVISORY COMMITTEE NOTES ("For example, the filing of an objection to a proof of claim[] . . . creates a dispute which is a contested matter."). Rule 9014 lists specific adversary rules that "shall" apply to contested matters by default, "unless the court directs otherwise." FED. R. BANKR. P. 9014(c). Rule 7012 is not one of the adversary rules that the Bankruptcy Rules make applicable to contested matters. *Id.* This omission is readily understandable, as objections to claims do not involve a formal "complaint" to which Rule 12(b)(6) can be applied.

The Debtors' authority cited in the Claims Objection does not support disallowing more than one billion dollars in claims without an evidentiary hearing, solely because a proof of claim failed to set out sufficient "factual detail" to comply with federal pleading standards. The Debtors cite five cases to justify their position. Claims Objection at 9-12. All are distinguishable. None of the cases cited by the Debtors involved an objection that a "Sufficiency Hearing" does not comply with the Bankruptcy Code and Bankruptcy Rules and so none are support for that proposition. Nor in any of them was a "Sufficiency Hearing" used to deny creditors an opportunity to obtain discovery or present evidence solely because they did not plead sufficient "factual detail" in their proof of claim.

At least two of the cases cited by the Debtors, *In re Avaya, Inc.*, 608 B.R. 366, 369-70 (Bankr. S.D.N.Y. 2019) ("*Avaya*") and *Morse v. Rescap Borrower Claims Trust.*, No. 1:14-CV-5800-GHW, 2015 WL 353931 (S.D.N.Y. Jan. 26, 2015) ("*Morse*"), did not involve a separate non-evidentiary "Sufficiency Hearing" addressing pleading issues, like the one the Debtors seek here. The bankruptcy court in *Avaya* granted a debtor's summary judgment motion on some claims of a *pro se* creditor because the creditor "had the information necessary to liquidate his claims" but had not submitted it to the bankruptcy court. *Id.* at 369-70. Similarly, in *Morse*, the bankruptcy court held a hearing on a *pro se* creditor's claim, but the claim was "decided on the papers" because the

---

[2] Indeed, the Debtors candidly admit that "to the extent that the Court will need to reach and consider [any] factual matters concerning the transactions between 3AC and certain of the Debtors, the Debtors will notice a Merits Hearing." Claims Objection at 19, n.12.

creditor, who had previously filed a state court action, failed to appear and present evidence. *Id.* at *1-2. On appeal, the creditor did not challenge this procedure, but instead chose to "concede[] that federal [civil] pleading standards apply to a proof of claim" and argue that he had satisfied them. *Id.* at *4; *In re Residential Cap., LLC*, 628 F. App'x 63, 64 (2d Cir. 2016).

In the remaining decisions, the creditors had already litigated related claims outside of the bankruptcy context. This line of precedent began with *In re DJK Residential LLC*, 416 B.R. 100, 108 (Bankr. S.D.N.Y. 2009) ("*DJK*"), which the bankruptcy court described as a "procedural anomaly." The creditor had previously filed an action in federal district court, but attempted to pursue "the same causes of action" in "fully administered" Chapter 11 bankruptcy cases *after* "confirmation and substantial consummation" of a plan. *Id.* at 101-03. The bankruptcy court believed that district court was the "most appropriate setting for resolving the claim," and allowed the creditor to continue litigating the district court action on the same allegations. *Id.* at 103, 108. Similarly, *In re Residential Capital, LLC*, 518 B.R. 720, 727 (Bankr. S.D.N.Y. 2014) ("*Res Cap*") involved a *pro se* creditor who had previously brought related claims in state court, only to have them dismissed at the pleading stage three times. *Id.* at 727. The creditor's claims remained unresolved more than two years after the debtors filed their petition, and after a plan had been confirmed and took effect. *Id.* at 726-27. In this context, the bankruptcy court determined that only one of the creditor's claims required an evidentiary hearing, because the remaining claims were time-barred. *Id.* at 726-27, 740.

Like *DJK* and *Res Cap*, the most recent decision cited by the Debtors involved claims in which many creditors had previously filed their claims in state court. *See In re Roman Catholic Diocese of Rockville Center, New York*, 651 B.R. 146, 154 (Bankr. S.D.N.Y. 2023) ("*Rockville Center*"). Even after finding that some of the creditors had failed to plead notice as required for their negligence claims, the bankruptcy court allowed them to amend their proofs of claim and scheduled a hearing to discuss production of documents related to notice "before [creditors] must file amended claims." *Id.* at 153, 176–77. As a result, the bankruptcy court's decision on the pleading issue did not result in automatic disallowance of the creditor's claims or prevent the creditor's from obtaining discovery.

Contrary to what the Debtors argue, none of these decisions justify ignoring the plain text of the Bankruptcy Code and Rules, which do not contemplate disallowance of claims without discovery or a hearing on the merits, merely because a proof of claim does not contain as much factual detail as a civil complaint. To be sure, the Court has authority under Rule 9014(c) to "direct that one or more of the other [adversary] rules in Part VII shall apply." FED. R. BANKR. P. 9014(c). But this authority must be exercised consistently with the Bankruptcy Rules that apply to the contested matter at issue. *See* FED. R. BANKR. P. 9014(a) (allowing for motions "[i]n a contested matter *not otherwise governed* by these rules"). Here, the process for claims objections is 'otherwise governed by these rules,' i.e. by Rules 3001 and 3002.

For these reasons, the Foreign Representatives respectfully submit that a separate "Sufficiency Hearing" on the POCs is neither necessary, nor permitted by the Bankruptcy Code and Bankruptcy Rules. Accordingly, there would be no benefit to requiring the Foreign Representatives to amend their POCs—it would not advance disputes to a stage that tees up adjudication of the POCs. The Debtors do not appear to dispute that the Foreign Representatives

are entitled to discovery on their POCs, and they are seeking discovery of the Foreign Representatives. The Court should allow the discovery process to proceed and permit the Foreign Representatives to amend their POCs before holding a hearing on allowance or disallowance of the POCs.

## IV. ANY AMENDMENT OF THE POCS AT THIS STAGE SHOULD NOT WEIGH AGAINST SUBSEQUENT AMENDMENTS AFTER DISCOVERY.

If the Court orders the Foreign Representatives to amend their Proofs of Claim, they are prepared to do so by August 14, 2023. However, such an amendment should not weigh against the Foreign Representatives' ability to amend their claim again to incorporate information obtained in discovery. "[A]mendment to a [proof of] claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim." *In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993). If the Debtors opposed an amendment, they would be required to show prejudice. *See In re Waterscape Resort LLC*, 520 B.R. 424, 435 (Bankr. S.D.N.Y. 2014).[3]

The Debtors have suggested that a different standard would apply if the Foreign Representatives seek multiple amendments. But multiple amendments to proofs of claim are commonplace and are governed by the same standards as other amendments.[4] Even in civil cases, leave for multiple amendments is "freely" granted unless the party opposing the amendments meets their burden to show "good reasons" for denial. *See, e.g., Blagman v. Apple, Inc.*, 307 F.R.D. 107, 111, 119 (S.D.N.Y. 2015) (granting leave to file third amended complaint), *citing* FED. R. CIV. P 15(a)(2).

The Debtors have not done so here, nor can they. Allowing the Debtors or other parties to argue that an amendment of the POCs now, prior to discovery, should prejudice the Foreign Representatives' ability to file further amendments after discovery would prejudice the Foreign Representatives' ability to pursue their claims and run counter to the Debtors' obligations to provide discovery regarding 3AC's claims. The equities of this issue favor 3AC all the more because of the challenges facing the 3AC estate in access to information and the substantial effort that has already been expended by the Debtors, at the cost to their estates and creditors including 3AC, to develop a factual record regarding transactions with 3AC. The Debtors should not be entitled to use their Claims Objection as both a sword to force a premature amendment of the POCs

---

[3] Bankruptcy courts routinely permit amendments even where no timely proof of claim was filed under the "informal proof of claim" doctrine. *See, e.g., In re Southold Dev. Corp.*, 173 B.R. 63, 73 (E.D.N.Y. 1994) (affirming recognition of affidavit as "informal proof of claim").

[4] *See, e.g. In re Kelly*, No. 18-60514, 2021 WL 5917979, at *1 (Bankr. N.D.N.Y. Dec. 14, 2021) (multiple amendments); *In re Agway, Inc.*, No. 02-65872, 2008 WL 2827439, at *2 (Bankr. N.D.N.Y. July 18, 2008) (sixth amended proof of claim); *In re USGen New England, Inc.*, 429 B.R. 437, 452 (Bankr. D. Md. 2010) (second amended proof of claim), *aff'd*, 458 B.R. 195 (D. Md. 2011).

**LATHAM&WATKINS**LLP

and a shield to defend against the POCs after the Foreign Representatives have taken the discovery they are entitled to obtain under the Bankruptcy Code and Bankruptcy Rules.

\* \* \*

For the reasons set forth above, the Foreign Representatives respectfully request that the Court deny the Debtors' request to require the Foreign Representatives to amend the POCs at this stage and instead permit amendment of their POCs after discovery is completed. In the alternative, the Foreign Representatives respectfully request that the Court order that any amendment of the POCs filed at this stage shall be without prejudice to subsequent amendments.

Sincerely,

/s/ Adam J. Goldberg

Adam J. Goldberg
LATHAM & WATKINS LLP

*Counsel to the Foreign Representatives
of Three Arrows Capital, Ltd.*

cc:     Sean A. O'Neil, Cleary Gottlieb Steen & Hamilton LLP
        Luke A. Barefoot, Cleary Gottlieb Steen & Hamilton LLP
        Rishi N. Zutshi, Cleary Gottlieb Steen & Hamilton LLP
        Jane VanLare, Cleary Gottlieb Steen & Hamilton LLP

        Christopher Harris, Latham & Watkins LLP
        Nima Mohebbi, Latham & Watkins LLP
        Brett Neve, Latham & Watkins LLP
        Nacif Taousse, Latham & Watkins LLP
        Tiffany M. Ikeda, Latham & Watkins LLP
        Emily R. Orman, Latham & Watkins LLP