# **EXHIBIT B**

Sean A. O'Neal
Luke A. Barefoot
Rishi N. Zutshi
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Capital, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**THE DEBTORS' REQUESTS FOR ADMISSION PURSUANT
TO BANKRUPTCY RULE 9014 IN CONNECTION WITH
THE DEBTORS' FIRST OMNIBUS OBJECTION
(SUBSTANTIVE) TO CLAIM NOS. 523, 526 AND 527 PURSUANT TO
11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, made applicable to this proceeding through Rules 9014(c), Rules 7036 and 7026 of the Federal Rules of Bankruptcy Procedure, and Rules 7026-1 and 7036-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), the Debtors hereby request that Three Arrows Capital, Ltd. ("3AC") admit or deny the requests herein (each a "Request") on or before

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific PTE. LTD. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

**August 7, 2023 at 5:00 p.m. Eastern Time,** or such other date to which the Debtors and 3AC

agree. The Debtors reserve the right to serve supplemental and additional discovery requests.

### DEFINITIONS

1.      The Debtors incorporate by reference herein the Uniform Definitions in Discovery

Requests set out in Rule 26.3 of the Local Rules of the United States District Court for the Southern

District of New York made applicable to this proceeding by Rule 7026-1 of the Local Rules.

2.      "2019 MLA" means the Master Loan Agreement and related pledge agreements

between 3AC and GGC entered into in January 2019.

3.      "2020 MLA" means the Master Loan Agreement and related pledge agreements

between 3AC and GAP entered into in January 2020.

4.      "3AC" means Three Arrows Capital, Ltd.

5.      "3AC PoCs" mean the proofs of claim numbered 523, 526 and 527 filed against

Holdco, GGC, and GAP respectively, attached as Exhibits A, B, and C to the *Debtors' First*

*Omnibus Objection (Substantive) to Claim Nos. 523, 526, and 527 Pursuant to 11 U.S.C. § 502*

*and Fed. R. Bankr. P. 3007 (No Liability)*, In Re Genesis Global Capital, LLC, et al., Case No. 23-

10063 (SHL) (Jointly Administered) (ECF No. 530).

6.      "Additional Collateral" means Additional Collateral as defined in the 2019 and

2020 MLAs.

7.      An "Affiliate" of any specific Person means any other Person that directly,

indirectly, or through one or more intermediaries controls, is controlled by, or is under common

control with, the Person specified, and such Person's agents.

8.      "All," "any," and "each" shall each be construed, pursuant to Local Rule 7026-1,

as encompassing any and all.

9.      "And" and "or" shall be construed, pursuant to Local Rule 7026-1, either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.      "Bankruptcy Court" means the U.S. Bankruptcy Court for the Southern District of New York.

11.      "Chapter 11 Cases" means the above-captioned jointly administered chapter 11 cases of the Debtors.

12.      "Collateral" means Collateral as defined in the MLAs.

13.      "Date" means the exact day, month and year if ascertainable, or if not, the best approximation (including relationship to other events).

14.      "Debtor" means any Person that is a debtor and debtor in possession in the Chapter 11 Cases, including any of its Representatives.

15.      "Foreclosure Assets" means the assets referenced as such in the 3AC PoCs. [2]

16.      "GAP" means Genesis Asia Pacific Pte. Ltd.

17.      "GGC" means Genesis Global Capital, LLC.

18.      "Genesis" means GAP and GGC together.

19.      "Holdco" means Genesis Global Holdco, LLC.

20.      "Interest Payment" means, as referenced in the 3AC PoCs, the interest payments by 3AC to GAP in the amount of $18 million between June 2 and June 3, 2022, in connection with certain loan arrangements entered into between GAP and 3AC prior to the initiation of the BVI Proceeding (as defined in the 3AC PoCs).

21.      "Joint Liquidators" means Messrs. Russell Crumpler and Christopher Farmer.

22.     "Liens" means, as referenced in the 3AC PoCs, liens granted to GAP on the Foreclosure Assets, as well as on approximately 2,739,044 AVAX Tokens and approximately 13,583,265 NEAR Tokens, in connection with the GAP Loan Arrangements (as defined in the 3AC PoCs).

23.     "Loan Repayment" means, as referenced in the 3AC PoCs, a loan repayment by 3AC to GAP on May 6, 2022 in the amount of 115,000,000 USDC, in connection with the GAP Loan Arrangements (as defined in the 3AC PoCs).

24.     "MLAs" means the 2019 MLA and the 2020 MLA together.

25.     "Objection" means the *Debtors' First Omnibus Objection (Substantive) to to Claim Nos. 523, 526, and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*, In Re Genesis Global Capital, LLC, et al., Case No. 23-10063 (SHL) (Jointly Administered) (ECF No. 530).

26.     "Person" means any natural person, association, business, group, organization, legal entity, government entity, or other entity.

27.     "Representative" means any agent, assign, director, employee, officer, representatives or any other Person acting or purporting to act on its behalf, and any predecessor or successor of the foregoing.

28.     "You" or "your" as used herein means 3AC and includes all of its predecessors, successors, subsidiaries, departments, divisions, including without limitation any organization or entity that 3AC controls, together with all present and former directors, officers, employees, or agents.

29.     The use of the singular form of any word includes the plural and vice versa, and the use of the term "including" means including without limitation.

## INSTRUCTIONS

1.      Each Request shall be responded to completely, separately, and fully.

2.      If an objection is made to any part of a Request, the response shall state there is an objection to the Request and the legal and factual basis for such objection.  No part of a Request shall be left unanswered merely because an objection is made to another part of the Request.

3.      If You assert a claim of privilege in response to any Request, You shall indicate with specificity and particularity the basis of said claim.

4.      If You deny a Request, identify and explain with particularity the reason or reasons for denial.

5.      The Requests are continuing in nature.  In accordance with Rule 26(e) of the Federal Rules of Civil Procedure, You are required promptly to serve supplemental responses if You obtain further or different information.

## REQUESTS FOR ADMISSION

1.      Admit that in January 2019, GGC entered into a Master Loan Agreement and related pledge agreements with 3AC.

2.      Admit that in January 2020, GAP entered into a Master Loan Agreement and a related pledge agreement with 3AC.

3.      Admit that in July 2020, GGC assigned all of its rights and obligations under the 2019 MLA and related pledge agreements to GAP.

4.      Admit that GAP provided loans of USD and digital assets to 3AC, which loans were governed by the MLAs.

5.      Admit that in return for the extension of loans, 3AC transferred (in the form of pledges and/or delivery) USD, digital assets, or shares to GAP as Collateral.

6.      Admit that pursuant to the terms of the MLAs, GAP was entitled to reuse the Collateral pledged by 3AC in the ordinary course of its lending activities, including to extend new loans or to pledge to another counterparty as Collateral.

7.      Admit that GAP and 3AC entered into hundreds of loans during the course of their relationship.

8.      Admit that 3AC paid interest on its outstanding loans to GAP on a monthly basis.

9.      Admit that under the terms of the MLAs, 3AC was required to post Additional Collateral if the value of its posted Collateral fell below certain agreed-upon thresholds.

10.     Admit that on June 12, 2022, Genesis issued a margin call to 3AC for approximately $189 million.

11.     Admit that after 3AC failed to meet the margin call, Genesis issued a notice of default to 3AC on June 13, 2022, on or around 6:29 pm Eastern Daylight Time.

12.     Admit that at the time of 3AC's default, 3AC owed obligations to GAP of approximately $2,363,105,165 under the MLAs and related agreements.

13.     Admit that at the time of 3AC's default, 3AC had transferred (in the form of pledges and/or delivery) to GAP the following assets as Collateral for 3AC's outstanding loans:  (1) 35,585,040 GBTC; (2) 33,348.03 BTC; (3) 17,455.73 ETH; (4) 2,739,043.83 AVAX tokens; and (5) 13,583,265 NEAR tokens.

14.     Admit that as of June 23, 2022, the total value of the GBTC, BTC and ETH Collateral was approximately $1,164,807,844.92, and the total value of the AVAX and NEAR Collateral was approximately $93,105,701.40, in each case, based on the spot price of the relevant asset at that time.

15.    Admit that by late June 2022, Genesis had exercised remedies against the GBTC, BTC and ETH Collateral.

16.    Admit that Genesis's exercise of remedies against the Collateral that had been pledged by 3AC reduced GAP's claim against 3AC to approximately $1,198,297,320.

17.    Admit that 3AC transferred the Interest Payment to GAP pursuant to the MLAs.

18.    Admit that 3AC transferred the Loan Repayment to GAP pursuant to the MLAs.

19.    Admit that 3AC transferred the Foreclosure Assets to GAP pursuant to the MLAs.

20.    Admit that 3AC granted the Liens to GAP pursuant to the MLAs.

21.    Admit that the Interest Payment was comprised of several payments from 3AC to GAP for interest accrued during the month of May 2022 on outstanding loans.

22.    Admit that on or about June 2, 2022, 3AC paid GAP approximately 478,767.12 USDT, 4,149.54 ETC, and 4,881.44 FTT as interest.

23.    Admit that on or about June 3, 2022, 3AC paid GAP $15,358,034.15 and approximately 1,899,706.52 USDC as interest.

24.    Admit that the approximate USD value of the USDT, ETC, FTT and USDC referenced in Request Nos. 22 and 23 on the dates they were transferred to GAP, together with the $15,358,034.15 interest payment referenced in Request No. 23, is approximately $17,974,634.30.

25.    Admit that the Loan Repayment was a payment from 3AC to GAP for the purpose of repaying several outstanding open term loans from GAP to 3AC in full or in part.

26.    Admit that the Loan Repayment fully repaid a loan for $38,804,954.17 provided by GAP to 3AC on or about January 11, 2022.

27.    Admit that the Loan Repayment fully repaid a loan for $200,000,000 (of which $190,000,000 had previously been repaid) provided by GAP to 3AC on or about January 10, 2022.

28.    Admit that the Loan Repayment partially repaid 66,195,045.83 USDC of a loan for 225,000,000 USDC provided by GAP to 3AC on or about January 28, 2022.

29.    Admit that 23,256.97 BTC of the Foreclosure Assets was Collateral transferred from approximately January 10, 2022 to June 7, 2022 in connection with purchase price loans of USD of equal or greater value (*i.e.*, loans of USD that Genesis made to 3AC for the purpose of allowing 3AC to buy such BTC).

30.    Admit that between approximately January 10, 2022 and January 12, 2022, 3AC transferred 8,206.97 BTC to GAP as Collateral in connection with three purchase price loans of USD of equal value extended by GAP to 3AC on or about January 9, 10, and 11, 2022.

31.    Admit that on or about May 14, 2022, 3AC transferred 3,000 BTC to GAP as Collateral in connection with a purchase price loan of USD of equal value extended by GAP to 3AC on or about May 15, 2022.

32.    Admit that on or about May 17, 2022, 3AC transferred 5,000 BTC to GAP as Collateral in connection with a purchase price loan of USD of equal value extended by GAP to 3AC on or about May 17, 2022.

33.    Admit that on or about May 30, 2022, 3AC transferred 3,450 BTC to GAP as Collateral in connection with a purchase price loan of USD of equal value by GAP to 3AC on or about May 30, 2022.

34.    Admit that between approximately June 6, 2022 and June 7, 2022, 3AC transferred 3,600 BTC to GAP as Collateral for purchase price loans of USD of equal value extended by GAP to 3AC on or about June 6 and 7, 2022.

35.    Admit that 9,131.06 BTC and 17,455.73 ETH of the Foreclosure Assets were Collateral transferred through collateral substitutions requested by 3AC.

36.    Admit that between approximately May 23, 2022 and June 7, 2022, at 3AC's request, 3AC transferred to GAP 9,131.06 BTC to substitute for other Collateral that 3AC had transferred to GAP.

37.    Admit that on or about June 12, 2022, at 3AC's request, 3AC transferred to GAP 17,455.73 ETH to substitute for other Collateral that 3AC had transferred to GAP.

38.    Admit that each of the Collateral substitutions referenced in Request Nos. 36 and 37 involved an exchange of one digital asset for another of substantially equal value.

39.    Admit that the original Collateral that was substituted through the transfers referenced in Request Nos. 36 and 37 was comprised of: (1) 71,375 ETH that 3AC transferred to GAP on December 6, 2021 as Collateral for a purchase price loan of USD of equal value extended by GAP to 3AC; and (2) 96,200,000 ALGO, 699,000 SOL, 300,000 AVAX and 50,000 ETH, all of which 3AC transferred to GAP as Additional Collateral in response to a May 9, 2022 margin call that GAP issued to 3AC.

40.    Admit that 960 BTC and 13,172,000 GBTC was transferred as Additional Collateral by 3AC to GAP pursuant to margin calls.

41.    Admit that on or about February 21, 2022 and February 23, 2022, 3AC transferred 610 BTC and 350 BTC, respectively, to GAP as Additional Collateral in response to a margin call that GAP issued 3AC on or about February 20, 2022.

42.    Admit that on or about May 11, 2022 and May 12, 2022, 3AC transferred 7,772,000 GBTC and 5,400,000 GBTC, respectively, to GAP as Additional Collateral in response to a margin call that GAP issued 3AC on May 9, 2022.

43.    Admit that 3AC pledged 2,739,043.83 AVAX tokens and 13,583,265 NEAR tokens to GAP pursuant to a Pledge Agreement between the parties dated January 27, 2022.

44.    Admit that the tokens referenced in Request No. 43 were pledged as Collateral for a loan of 225,000,000 USDC from GAP to 3AC on or about January 28, 2022.

45.    Admit that collateral substitutions are common practice and routinely used by 3AC and other counterparties active in the market for loans secured by digital currency assets.

46.    Admit that 3AC and Genesis regularly agreed for assets to serve as Collateral in connection with new loans, in response to margin calls, or in connection with substitutions of Collateral without executing Loan Term Sheets.

47.    Admit that the only contractual relationship that 3AC had with Genesis was the relationship governed by the MLAs.

48.    Admit that 3AC did not have any custodial relationship with Genesis.

49.    Admit that HoldCo did not maintain any lending, contractual or other business relationship with 3AC.

50.    Admit that You have no other contractual agreements with Genesis other than the MLAs and related agreements.

51.    Admit that 3AC and GAP's ordinary course of dealing included memorializing their lending activity and collateralization arrangements in written communications, rather than in the form of Loan Term Sheet attached as exhibits to the MLAs.

52.    Admit that the written communications documenting the terms of the loans between 3AC and Genesis included as Exhibit L to the Objection contain the same substantive information included in the form of Loan Term Sheet attached to the MLAs, including the names of the lender (Genesis) and borrower (3AC), borrowed asset type, amount of borrowed asset, borrow fee, and collateral.

53.    Admit that the written communications documenting the terms of the loans between 3AC and Genesis included as Exhibit L to the Objection relating to the Foreclosure Assets describe both the category and quantity of Collateral that is being transferred by 3AC to Genesis.

54.    Admit that 3AC repaid open term loans provided by Genesis on a regular basis over the course of the parties' lending relationship.

55.    Admit that the Loan Repayment was made by 3AC partly in order for 3AC to raise margin levels so that Genesis would continue to extend 3AC new loans.

****

Dated: July 21, 2023
New York, New York

*/s/ Luke A. Barefoot*
Sean A. O'Neal
Luke A. Barefoot
Rishi N. Zutshi
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

Sean A. O'Neal
Luke A. Barefoot
Rishi N. Zutshi
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Capital, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF THE DEBTORS' REQUEST FOR PRODUCTION OF DOCUMENTS**
**PURSUANT TO BANKRUPTCY RULE 9014 IN CONNECTION WITH THE**
**DEBTORS' FIRST OMNIBUS OBJECTION (SUBSTANTIVE)**
**TO CLAIM NOS. 523, 526 AND 527 PURSUANT TO**
**11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable to

this proceeding through Rules 9014(c), Rules 7034 and 7026 of the Federal Rules of Bankruptcy

Procedure, and Rules 7026-1 and 7034-1 of the Local Rules of the United States Bankruptcy Court

for the Southern District of New York (the "Local Rules"), the Debtors hereby request that Three

Arrows Capital, Ltd. ("3AC") produce the documents described in Schedule A attached hereto by

---

[1]     The Debtors ("Debtors") in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific PTE. LTD. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

1

delivering such documents to its counsel, Cleary Gottlieb Steen & Hamilton LLP, One Liberty

Plaza, New York, NY 10006 on or before **August 7, 2023 at 5:00 p.m. Eastern Time**.   Debtors

hereby reserve the right to serve additional requests for discovery.

Dated: July 21, 2023
      New York, New York

 

*/s/ Luke A. Barefoot*
Sean A. O'Neal
Luke A. Barefoot
Rishi N. Zutshi
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

## SCHEDULE A

The definitions and instructions set forth below apply to each of the requests for production of documents.

## I.    DEFINITIONS

In addition to any terms defined within the specific requests, the following terms shall mean the following for purposes of these requests for production of documents:

1.    The term "Bankruptcy Cases" means the above-captioned jointly administered chapter 11 cases of the Debtors.

2.    The term "Bankruptcy Code" means title 11 of the United States Code.

3.    The term "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

4.    The term "Claim" has the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.

5.    The term "Communication" means any transmittal and/or receipt of information (in the form of facts, ideas, inquiries or otherwise), whether oral or written and whether chance, prearranged, formal or informal, and specifically includes conversations in person, telephone conversations, e-mail (including instant messages and text messages), voicemail, letters, memoranda, statements, media releases, press conferences, magazines and newspaper articles, testimony before a governmental body, and video and audio transmissions. For the avoidance of doubt, the term "Communication" shall include any and all electronic messages and/or conversations using text messaging and mobile device chat services, including but not limited to Microsoft Teams, Telegram, Instant Bloomberg, Bloomberg messages, BlackBerry Messenger,

3

Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, Signal, Slack, WeChat and Snapchat.

6.      The term "Concerning" means concerning, reflecting, relating to, relate to, arising out of, describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, collaborating, demonstrating, identifying, referencing, discussing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising therefrom, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

7.      The term "Debtor" means any Person that is a debtor and debtor in possession in the Chapter 11 Cases, including any of its Representatives.

8.      The term "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure, *i.e.*, "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form."  A draft or non-identical copy is a separate document within the meaning of this term.  For the avoidance of doubt, the term "document" shall include any and all forms of recorded communications.

9.      The term "Person" means any natural person or any legal entity, including any business or governmental entity or association.

10.    The term "Representatives" means any agent, assign, director, employee, officer, representatives or any other Person acting or purporting to act on its behalf, and any predecessor or successor of the foregoing.

11.    The terms "Request" or "Requests" refers generally to the requests set forth herein.

12.    The terms "You" and "Your" refer to 3AC as well as its agents, employees, directors, officers, representatives, attorneys, advisors, auditors, consultants, financial advisors, investment bankers, retained professionals, or any other Person or Person acting, speaking, or purporting to act or speak on their behalf from time to time.

13.    Capitalized terms not defined herein have the meanings ascribed to them in the Plan.

## II.    INSTRUCTIONS

1.    Unless otherwise indicated, the documents hereby requested for production and inspection include all documents in Your possession, custody, or control. Without limitation of the terms "possession, custody or control" as used in the preceding sentence, a document is in Your possession, custody or control if You have actual possession or custody or the right to obtain the document or a copy thereof upon request or demand from one or more of Your independent contractors, consultants, accountants, auditors or any other Person or public or private entity that has actual physical possession thereof. This includes any documents contained in any computer, mobile device, server, mainframe or other storage device (including: (i) documents on or in computer memory; (ii) documents on or in computer or network backup files; and (iii) documents which have been "deleted" or "erased" but are recoverable) whether located on-site or at an off-site facility, within Your possession, custody or control. For the avoidance of doubt, this also includes any documents contained on any personal computer, mobile device, server, mainframe or other storage device within Your possession, regardless of whether the device is issued or owned by You.

2.      The terms "all," "any" and "each" shall be construed as encompassing all, any and each.

3.      The connectives "and," "or" and "and/or" shall be construed either disjunctively or conjunctively as necessary, in each case, to bring within the scope of these requests all responses that might otherwise be construed to be outside their scope.

4.      The terms "include," "includes," and "including" shall be deemed to be followed by the words "without limitation."  A list following any of these terms shall be interpreted to contain illustrative examples of the types of documents responsive to the request, but does not constitute an exclusive, all-encompassing or exhaustive listing of every type of document responsive to the request and shall not be deemed in any way to qualify, limit or restrict the scope of the request.

5.      The term "possession" relates to all documents, including e-mail, text messages, mobile device chats, other messaging services and any other electronically-stored information. The term "possession" also includes documents contained in Your electronic mail (e-mail), cloud-based and mobile device directories, including: (a) "deleted" documents that have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" documents, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" documents, including all subdirectories irrespective of the title of such subdirectories.

6.      The documents produced pursuant to this request are to be either: (a) segregated and identified by the number of the request below to which they are responsive; or (b) produced as they are maintained in the ordinary course of business.

7.      Documents shall be produced with sufficient information to identify the files or repositories in which such responsive documents are maintained in the normal course of business, including, for example, an index, key, code, or other means of ascertaining the source of the produced documents.

8.      All documents that are produced in electronic format should be provided with: (i) Group W "tiff" images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all metadata fields associated with each electronic document.   The Debtors also request that all spreadsheets created in Microsoft Excel or similar spreadsheet program be produced in their native format.  The Debtors reserve their rights to request that other documents be produced in their native format if necessary.  The following metadata fields are also to be produced with all documents produced in electronic format:

| Field Name | Description |
|---|---|
| BEGDOC | Auto-generated number assigned to first page of document |
| ENDDOC | Auto-generated number assigned to last page of document |
| BEGATTACH | Auto-generated number assigned to first page of the parent document in a family |
| ENDATTACH | Auto-generated number assigned to last page of an attachment in a document family |
| PARENT_ID | The beginning DOCID for a parent document |
| ATTACH_IDS | The beginning DOCID for all attachments |
| ATTCOUNT | The number of attachments to an email |
| DOC_TYPE | The type of file from the header (*e.g.*, Microsoft Outlook, Excel, Word, etc.) |
| PARENT_CHILD | Vendor populated field where "P" denotes a parent document and "A" denotes an attachment |

| PAGECOUNT | The number of pages of each individual document |
| --- | --- |
| FROM | Name of the sender of an email from the "From" field in Outlook |
| TO | Recipients of an email from the "To" field in Outlook |
| CC | Name of persons to whom a copy of an email was sent |
| BCC | The name of any person blind copied on an email |
| SUBJECT | The text in the "Subject" line or "Re" line of an email or application file |
| CUSTODIAN | The name of the person from which a collection of email or application files originate |
| AUTHOR | The name of the author or the creator of an application file from the "Author" field |
| DATE_SENT | The date on which an email was sent |
| DATE_RCVD | The date on which an email was received |
| DATE_LASTMOD | The date on which an email or application file was last modified |
| DATE_CREATED | The date an email or application file was created |
| TIME_ CREATED | The time at which an email or application file was created |
| TIME_SENT | The time at which an email was sent |
| TIME_RCVD | The time at which an email was received |
| TITLE | The text in the "Title" field of an application file |
| LAST_AUTHOR | The name in the "last author" field for an application file |
| LAST_SAVED | The date in the "last saved" field for an application file |
| LAST_PRINTED | The date in the "last printed" field for an application file |
| APPLICATION | The name of the application that generated the native file |
| FILEEXT | The file name extension for each email, attachment or application file |
| FILENAME | The name of the application file, including extension |
| FILESIZE | The size of a document in bytes |

| SOURCEFOLDER | The full path information for email, attachments and application files beginning with the original source folder name |
|---|---|
| HASHVALUE | Output of algorithm-generated value for each individual file |
| SEARCH_HIT | The search term or terms that "hit" on a document |
| NATIVE_FILE | Hyperlink to the native file |

9.    Documents attached to each other shall not be separated.

10.    A document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

11.    Each requested document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules or other documents at any time affixed thereto. If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

12.    Whenever You are asked to produce a document that is deemed by You to be properly withheld from production for any reason, You shall provide a privilege log that will include listing such document by title or subject heading, date, author, person who signed the document, addressee and all recipients, and a statement of the ground(s) asserted for withholding the document, including attorney-client privilege or work product privilege.

13.    If You withhold any document on the claim of attorney-client privilege, work product doctrine or similar protection, identify the privilege or protection claimed as well as each document for which such privilege or protection is claimed, together with the following information with respect to each such document:

1.    Date;

9

2.    Sender;

3.    Addressee;

4.    Subject;

5.    The basis on which the privilege or protection is claimed; and

6.    The names of Persons to whom copies of any part of the document were furnished, together with an identification of their employer and their job titles.

14.    If You maintain that any document requested by the Debtors has been destroyed, set forth the contents of the document, the date of its destruction, and the name of the Person who authorized its destruction.

15.    If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, such document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of the Bankruptcy Cases otherwise permitted by the Bankruptcy Court.

16.    If You previously but no longer possess items responsive to a particular request, You must specify why You no longer possess such items and the name and address of any Person or entity known or believed by You to have possession, custody or control of such items.

17.    Where an objection is made to a request, You must clearly state all grounds upon which Your objection is based and indicate whether any responsive materials are being withheld on the basis of that objection.

18.    Terms not specifically defined herein shall be given their ordinary meanings as You understand them to be used in the trade or pursuant to ordinary usage.

19.    Wherever appropriate in this request, the singular form of any word includes the plural and vice versa, and the masculine form of a word shall be interpreted as feminine and vice versa.

10

20.     Any ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope.

## III.    **DOCUMENT REQUESTS**

1.     All Documents and Communications in Your possession that relate to or support the grounds for Your non-admission to the extent you do not admit any of Requests for Admission as set forth in *Debtors' Requests For Admission Pursuant to Bankruptcy Rule 9014 In Connection With The Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*, dated July 21, 2023.

2.     All Documents and Communications in Your possession that You intend to rely on in support of any opposition to the arguments set forth in the *Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*, In Re Genesis Global Capital, LLC, et al., Case No. 23-10063 (SHL) (ECF No. 530).

3.     Documents and Communications sufficient to reflect any liquidation and/or transfer of any AVAX and/or NEAR tokens that were pledged to Genesis Asia Pacific PTE. LTD. in January 2022.

4.     Documents and Communications sufficient to show the current status and any disposition of any AVAX and/or NEAR tokens that were pledged to Genesis Asia Pacific PTE. LTD. in January 2022, including Documents and Communications sufficient to show, the current custodian, holder and/or location of such assets.

11