Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shl

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GENESIS GLOBAL HOLDCO, LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                   United States Bankruptcy Court

12                   300 Quarropas Street, Room 248

13                   White Plains, NY 10601

14

15                   August 2, 2023

16                   10:11 AM

17

18

19

20

21   B E F O R E :

22   HON SEAN LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  ALIANNA PERSAUD

1    Doc. #565 Notice of Agenda

2

3    HEARING re Status Conference Re: Doc. #279 Order Appointing

4    Mediator

5

6    HEARING re Discovery Conference Re: Doc. #530 Debtor's First

7    Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527

8    Pursuant to 11 U.S.C. 502 and Fed. R. Bankr. P. 3007 (no

9    Liability)(REDACTED)

10

11    Doc. #562 Letter to Judge Lane Re: Discovery Conference on

12    3AC Claim Objection Filed on Behalf of Genesis Global

13    Holdco, LLC

14

15    Doc. #563 Letter to Judge Lane Re: Disciplinary Conference

16    on 3AC Claim Objection Filed on Behalf of Foreign

17    Representatives of Three Arrows Capital, Ltd. (in

18    liquidation)

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1    A P P E A R A N C E S :

 2

 3    CLEARY GOTTLIEB STEEN HAMILTON LLP

 4         Attorneys for Genesis Global Holdco, LLC

 5         One Liberty Plaza

 6         New York, NY 10006

 7

 8    BY:  SEAN A. O'NEAL

 9         LUKE A. BAREFOOT

10         JANE VANLARE

11

12    WHITE CASE

13         Attorneys for the Official Committee of Unsecured

14         Creditors

15         1221 Avenue of the Americas

16         New York, NY 10020

17

18    BY:  PHIL ABELSON

19         J. CHRISTOPHER SHORE

20         COLIN WEST

21

22

23

24

25
```

```
 1   PROSKAUER ROSE LLP

 2        Attorneys for the Ad Hoc Group of Genesis Customers

 3        11 Times Square

 4        New York, NY 10036

 5

 6   BY:  BRIAN ROSEN

 7        JORDAN SAZANT

 8

 9   HUGHES HUBBARD REED LLP

10        Attorneys for Gemini Trust Company, LLC

11        One Battery Park Plaza

12        New York, NY 10004

13

14   BY:  ANSON B. FRELINGHUYSEN

15

16   SULLIVAN CROMWELL LLP

17        Attorneys for FTX Trading Ltd. and its Affiliated

18        Debtors

19        125 Broad Street

20        New York, NY 10004

21

22   BY:  BRIAN GLUCKSTEIN

23

24

25
```

Page 5

1    UNITED STATES DEPARTMENT OF JUSTICE

2         Attorneys for the U.S. Trustee

3         Alexander Hamilton Custom House

4         One Bowling Green, Room 534

5         New York, NY 10004

6

7    BY:  GREG ZIPES

8

9    WEIL GOTSHAL MANGES LLP

10        Attorneys for Digital Currency Group, Inc.

11        767 Fifth Avenue

12        New York, NY 10153

13

14   BY:  JEFFREY SAFERSTEIN

15

16   LATHAM WATKINS LP

17        Attorneys for Foreign Representatives of Three Arrows

18        885 Third Avenue

19        New York, NY 10022

20

21   BY:  ADAM GOLDBERG

22        NIMA MOHEBBI

23

24

25

1   ALSO PRESENT:

2   ERIC IAN ASQUITH

3   ANDREW BEHLMANN

4   BENJAMIN S. BELLER

5   ERIC C. DAUCHER

6   MICHAEL S. ETKIN

7   KRIS HANSEN

8   CHRISTOPHER HARRIS

9   LEONIE C. KOCH

10   KEN LUKAZEWSKI

11   ANDREW MATOTT

12   AKIKO MATSUDA

13   MARCY J. MCLAUGHLIN SMITH

14   MICHELE MEISES

15   BRETT MATTHEW NEVE

16   MICHAEL PAPANDREA

17   AMANDA PARRA CRISLE

18   KENNETH PASQUALE

19   GREGORY F. PESCE

20   PHILIP RIES

21   ISAAC SASSON

22   MATTHEW W. SILVERMAN

23   NACIF TAOUSSE

24   DANEIL THORNBURGH

25   WILLIAM MATTHEW UPTEGROVE

1   FRANCISCO VAZQUEZ

2   COLIN WEST

3   PAUL ARONZON

4   NEGISA BALLUKU

5   BRENDON BARNWELL

6   CAROLINE BARTOLOTTA

7   SABRINA BREMER

8   BRIAN BULTHUIS

9   MICHAEL CINNAMON

10   TOM CONHEENEY

11   COURTENAY CULLEN

12   JARED DERMONT

13   MICHAEL DIYANNI

14   UDAY GORREPATI

15   JASON GOTTLIEB

16   BRANDON HAMMER

17   TAYLOR HARRISON

18   MIRANDA HATCH

19   DERAR ISLIM

20   ZUL JAMAL

21   HOO RI KIM

22   PAUL KINEALY

23   BARAK KLEIN

24   MICHAEL KOWIAK

25   OXANA KOZLOV

Page 8

1    KONRAD LAESSER

2    BRADLEY LENOX

3    MICHAEL LETO

4    SAMUEL LEVANDER

5    DAVID LOPEZ

6    ALEXANDRA LOTTY

7    NICK MAISEL

8    JACK MASSEY

9    KYLE MCKUHEN

10   RICHARD CHESTER MINOTT

11   ANAIS MITRA

12   JOHN NGUYEN

13   TYLER OKADA

14   MASON PALISSERY

15   AMELIA POLLARD

16   REBEKAH PRESLEY

17   ARIANNA PRETTO-SAKMANN

18   MOHIT RATHI

19   CHRISTIAN RIBEIRO

20   KATIE ROSS

21   ANDREW SABA

22   ANDRES SAENZ

23   DAVID Z. SCHWARTZ

24   JOE SCIAMETTA

25   BENJAMIN STEELE

Page 9

1    ANDREW SULLIVAN

2    GABE SUTHERLAND

3    ANDREW SWIFT

4    BRIAN TICHENOR

5    ANDREW TSANG

6    MICHAEL WEINBERG

7    JACK WESTNER

8    PAUL WIRTZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 10

1                    P R O C E E D I N G S

2              THE COURT:  Good morning, this is Judge Sean Lane

3       in the United States Bankruptcy Court for the Southern

4       District of New York.  Good morning to you all, and we're

5       here for a 10:00 calendar, although a shortened calendar, in

6       Genesis Global Holdco, a Chapter 11 case.  And we'll start

7       today, as we always do with appearances.  So, let me get

8       appearances from the Debtors.

9              MR. O'NEAL:  Good morning, Your Honor, Sean O'Neal

10      and Luke Barefoot, and Jane Vanlare of Cleary Gottlieb Steen

11      and Hamilton on behalf of the Debtors.

12             THE COURT:  All right, good morning.

13             MR. O'NEAL:  Good morning.

14             THE COURT:  And on behalf of the Official

15      Committee.

16             Oh, you're on mute.  Sorry to --

17             MR. ABELSON:  Your Honor?

18             THE COURT:  Yep, I got you.

19             MR. ABELSON:  (Indiscernible) what do you want --

20      well -- yeah, we'll Mr. Shore is trying to work out the

21      technical -- technological issues.  Phil Abelston, White

22      Case on behalf of the Committee, joined today by my

23      colleagues Christopher Shore, and Colin West.

24             THE COURT:  All right.  I'm confident he will get

25      there, and I can see him on the screen, so I know he's here.

Page 11

 1    And on behalf of the Ad Hoc Group?

 2              MR. ROSEN:  Thank you very much, Your Honor, Brian

 3    Rosen, and Jordan Sazant, Proskauer Rose, on behalf of the

 4    Ad Hoc Group.

 5              THE COURT:  All right, good morning.  On behalf of

 6    Gemini Trust Company?

 7              MR. FRELINGHUYSEN:  Good morning, Your Honor,

 8    thank you very much.  Anson Frelinghuysen, Hughes Hubbard,

 9    and Reed, for Gemini Trust Company.

10              THE COURT:  All right, good morning.  On behalf of

11    the FTX debtors?

12              MR. ABELSON:  I don't think they're on, Your

13    Honor.

14              THE COURT:  All right.  Thank you very much.

15              MR. GLUCKSTEIN:  I am on -- I am on, Your Honor, I

16    don't anticipate in participating actively today, but Brian

17    Gluckstein, for FTX Debtors, Your Honor.

18              THE COURT:  All right, thank you.  Always a hazard

19    to know exactly what names to go through on this multipage

20    list that we always get before hearings of this type.

21              All right, on behalf of the United States

22    Trustee's Office?

23              MR. ZIPES:  Good morning, Your Honor, Greg Zipes

24    with the US Trustee's Office.

25              THE COURT:  Good morning.  On behalf of the

Page 12

1    Digital Currency Group.

2              MR. SAFERSTEIN:  Good morning Jeffrey Saferstein

3    from Weil, Gotshal and Manges, on behalf of Digital Currency

4    Group.

5              THE COURT:  All right, good morning.  And on

6    behalf of the Foreign Representatives of Three Arrows.  Oh,

7    you also are on mute.

8              MR. GOLDBERG:  Hi, can you hear us?

9              THE COURT:  I can hear you now, yes.

10             MR. GOLDBERG:  Good morning, Your Honor, Adam

11   Goldberg of Latham Watkins on behalf of the Foreign

12   Representatives of Three Arrows.

13             THE COURT:  All right, good morning.  All right.

14             MR. GOLDBERG:  Your Honor, we also have Nima

15   Mohebbi on behalf of Three Arrows Capital, as well.

16             THE COURT:  All right.  Good morning.  All right,

17   with that, I think -- I'm certainly not trying to exclude

18   anyone, but I don't want to go through the entire list.  I

19   already have at least one person who didn't intend on making

20   an appearance, because they didn't intend to speak.  So, is

21   there anyone else who does intend to speak at this morning's

22   hearing who would like to make an appearance at this time?

23             All right.  So, good morning to you all.  I know

24   the calendar has been shifting a bit and that reflects all

25   the activity going on in the case, and we're happy to do

Page 13

1    that as the needs of the case arise.

2           At some point, before we're finished, we should

3    talk about scheduling, going forward just to make sure we're

4    all on the same page and we get you what you need.

5           But with that, I thought I would turn it over to

6    the Debtors to walk us through the agenda, which I believe

7    it's at Docket 565.

8           MR. O'NEAL:  Sure, Your Honor, Sean O'Neal, Cleary

9    Gotlieb, on behalf of the Debtors.  I think we really only

10   have two matters on the agenda today.  One is a status

11   conference with respect to the mediation, and the second is

12   a discovery related conference, relating to the Three Arrows

13   Capital claims objection.

14          We'd like to start with the mediation status

15   conference, if we could.

16          THE COURT:  Please.

17          MR. O'NEAL:  Certainly.  Well, as has become a

18   tradition in this case, perhaps not a welcome tradition, but

19   a tradition nonetheless, it's another status conference on

20   the mediation.  At our last status conference of July 13th,

21   we reported that we are very close to a deal in principle

22   among certain parties.

23          That remains true today.  We have made some

24   progress on a variety of fronts over the past two weeks, but

25   frankly, not the progress that we were hoping for.  I will

Page 14

1    say that the key point of progress that we have made, as has

2    been disclosed in a letter that was filed with the Court, is

3    that we have reached an agreement, in principle, with the

4    FTX Debtors, concerning alleged preference claims, the Lift

5    Stay Motion, and the Estimation Motion.

6           We're still papering that deal and we hope to get

7    a 9019 Motion on file in relatively short order in the

8    coming days.

9           That said, while we have made progress, we have

10   not concluded the mediation.  Technically that medication

11   expired on July 27th and it's the -- and as July 27th turned

12   into July 28th.  Once again, all of the parties, but one,

13   have agreed to extend the mediation period, specifically,

14   the Debtors, the UCC, the Ad Hoc Group, and DCG, have agreed

15   to extend the mediation period.  But Gemini has not unless

16   we agree to certain conditions.

17          Also, I should note that the Ad Hoc Group has

18   agreed to extend the cleansing date provision that they had

19   actually requested in the mediation order.  They have agreed

20   to extend that cleansing date.

21          Your honor will recall that at the last hearing,

22   on the mediation, the Court extended the mediation period on

23   its own, noting that the Court has inherent authority to

24   order mediation.  Gemini has consented to an extension of

25   the mediation, but has attached certain conditions to that

Page 15

1    extension, for which frankly, we did not believe that we had

2    the authority to agree to because we view that a mediation

3    order is your order.  An order that you have entered and

4    that you have directed us to -- to continue the mediation.

5    We did not feel it was our prerogative to attach conditions

6    to Your Honor's order.

7          Therefore, we do request that Your Honor extend

8    the medication period for another two weeks, to August 16th.

9    In making this request, I want to make something clear.  We

10   are at an important point in the case.  And I believe that

11   if we do not make substantial progress with respect to a

12   deal in principle in the next two weeks, we do not believe

13   that we will be seeking to extend the mediation further.

14         We need to make substantial progress.  We are very

15   close, but at a certain point, we have to move forward.  We

16   have to move forward with the plan that we have on file, as

17   it will be unimpeded.  One of the things I should note, Your

18   Honor, that has become apparent in this situation is that

19   aside from the disputes involving DCG and Gemini, there are

20   disputes among creditors; and we may be amending the plan to

21   address those disputes, and like I said, if we don't seek --

22   if we don't make progress, we may just go forward with the

23   plan as we've amended it to address those issues and other

24   issues.

25         In addition, we may ask, Your Honor, for a

Page 16

1    chambers conference, as we have discussed in the past, in

2    order to set up a process and a timeline for resolving those

3    intercreditor disputes.

4              I do believe that we are very close to a deal.  I

5    -- I've said that before and I still believe that.  And we

6    just need to use the next two weeks to try to get to a deal,

7    in principle, that can actually be documented.  And if we --

8    if we achieve that, that's fantastic, that's what we've been

9    trying to achieve.  If we do not, we will just go down the

10   road of the existing plan with the amendments that we will

11   propose.

12             So, with that, Your Honor, we appreciate your

13   guidance and your patience throughout this process.  You've

14   always made time for us, and we greatly appreciate that.

15   And we respectfully request a two week extension of the

16   mediation period.  Thank you.

17             THE COURT:  All right.  Thank you for that

18   information, and I think it makes sense to hear from Gemini,

19   at this point, and then I can hear from any other party that

20   wishes to be heard.

21             MR. FRELINGHUYSEN:  Thank you, Your Honor, Anson

22   Frelinghuysen, Hughes, Hubbard, and Reed for Gemini Trust

23   Company on behalf of 232,000 earn users.  We can certainly

24   accept the need to be mindful of the mediation privilege and

25   not wanting to upset that apple cart, and certainly aware

Page 17

1   that part of the reason we're here today, (indiscernible)

2   over time is because Gemini continues to oppose the

3   extension of the mediation period.

4          We were close to it today, we're now very close,

5   maybe we're very close two weeks ago, we're very close now.

6   I'm glad to hear Mr. O'Neal does not intend to extend the

7   mediation period further out.  We think that it's not

8   necessary. If the deal is close, then let's all see the deal

9   and let's have the plan benefit from the input of many

10  others.  I think it'll do better to have sunshine on that

11  and if the deal is to be documented, let's have it

12  documented once people are aware of what it is, and can give

13  their inputs of the documentation process, as -- as much

14  input as possible from everybody.

15         I think that if the deal is already close

16  (indiscernible) with DCG, which was the purpose of the

17  mediation, other matters within the deal, in the written

18  plan and not the purpose of mediation, and to the extent

19  that other matters of the plan are being address, they

20  should not be protected by the mediation privilege.  And

21  there could be problems down the road if people are looking

22  for discovery regarding whether negotiations that do not

23  pertain to DCG, as contribution which was the purpose of the

24  mediation.

25         So, we would just preview that mediation privilege

Page 18

1   should not be extended to those -- or it would not be

2   necessarily extendable to those, given that they're outside

3   the scope of the mediation.  We'd like to hopefully not be

4   back here in two week looking for another extension, and I

5   think that's all I have for, Your Honor.

6           THE COURT:  All right.  Thank you very much.

7   Anything from the Official Committee?

8           MR. SHORE:  All right, hopefully this is working

9   now, Your Honor.  Chris Shore from White and Case.  Nothing

10  to add, just support the Debtor's request.

11          THE COURT:  All right.  And Mr. Rosen, anything

12  from the Ad Hoc Committee?

13          MR. ROSEN:  Yes, Your Honor, very briefly.  We do

14  support the Debtor's request.  There are, just for the

15  record, there are many conversations going on, on a daily

16  basis between the members of our group, our steering

17  committee, and the UCC.  There are very, very delicate

18  issues involved in these negotiations regarding

19  distributions pursuant to a plan, and how they interact --

20  or with all of the other issues associated with DCG, with

21  Gemini, and some of the other settlements that the Debtor is

22  looking to enter into.

23          We believe that this time is necessary to continue

24  that process, and we believe that it should be done under

25  the guise -- under the rubric of the mediation order, Your

 1    Honor.  Thank you.

 2             THE COURT:  Thank you.  Any other party that

 3    wishes to be heard? All right.  Hearing nothing further, I -

 4    - I -- I'm not, surprisingly, am going to extend the

 5    mediation for another two weeks.  I understand Mr.

 6    Frelinghuysen's anxious and -- and concerns and wanting to

 7    know what's going on.  I'm not -- but I'm going to extend it

 8    for the same reasons I set forth at the last hearing, I'm

 9    not going to repeat those, you all know what those are.

10             But to briefly touch on one or two points, the

11    minute things are out in the public, they take on a life of

12    their own.  We all know that from cases that we've been

13    involved in where the very harsh light of -- well, and

14    again, transparency is very important in bankruptcy, but in

15    terms of trying to have settlement discussions, there's a

16    reason that Rule 408 exists, and mediation is part and

17    parcel of that and it's very difficult to have 408 kinds of

18    discussions with the world in the room.  It's just a

19    practical matter.

20             Obviously, anything that's done in the case that

21    needs Court approval will end up here.  And I appreciate Mr.

22    Frelinghuysen's advocacy for his clients, and all their

23    concerns.  We -- we will get there.  Again, I think this is

24    a very challenging case and there are a lot of moving

25    pieces.  And so, I'm not going to say anything extensive

Page 20

1    about there was notion about mediation privilege and what it

2    covers and what it doesn't cover.  That's not in front of me

3    today, but obviously, this mediation sounds like what's

4    happening is what happens in all mediations.  It's -- you're

5    trying to solve an equation that has multiple variables, and

6    you'll end up having discussions that are very specific, as

7    well as discussions that are -- that are sort of quite broad

8    in scope when trying to figure out the riddle that is the

9    case.  That's -- that's how it goes.  So, that's the only

10   comment I'd have on that.

11           So, again, with -- certainly an appreciation for

12   the concerns of all the people that Mr. Frelinghuysen

13   represents, I'm nonetheless going to extend the mediation

14   out another couple of weeks.

15           What I would say, just to let you know, and I

16   think we can talk about it in schedule, at some point, I

17   believe that gets us to the 16th.  I -- I plan on -- well,

18   let me put it this way, there was some mention of a Chambers

19   conference, and I'm not sure what is meant by that.

20   Probably you all are not sure what's meant by that at this

21   point.  But what I will say is, I believe we have time on

22   the 18th and to the extent that somebody believes it would

23   be helpful to have a Chambers conference, maybe that's a day

24   to pencil in.  And if people, you know, it's all designed to

25   suit the needs of the case, and so it could be remote, it

Page 21

1    can be in person, it can be whatever is most helpful for the

2    folks who are trying to solve the issues that you have in

3    front of you.

4           The only thing I would say, obviously, is the

5    importance of having everybody who is an interested party in

6    the room, so that nobody feels excluded.  And but I just

7    wanted to make -- throw that out there as -- as -- I'm open

8    to other suggestions, but I'll throw that out as a

9    possibility because it would seem to dovetail with the

10   timeline you're talking about for the purposes of today.

11          So, with that, I'll turn it back over to you, Mr.

12   O'Neal.

13          MR. O'NEAL:  Thank you very much, Your Honor.  The

14   18th sounds like a great idea, so we greatly appreciate your

15   indulgence on that point, in the event that we need it.

16          I think we will, obviously, submit a proposed

17   order changing the date to the 16th for the mediation

18   extension.  I think with that we're ready for our next

19   agenda item, and Luke Barefoot's going to lead that one.

20          THE COURT:  All right.  Mr. Barefoot.

21          MR. BAREFOOT:  Good morning, Your Honor.  Luke

22   Barefoot from Cleary Gottlieb, for the Debtors.  Can you

23   hear me all right?

24          THE COURT:  I can hear you just fine.

25          MR. BAREFOOT:  Thank you, Your Honor.  Your Honor,

Page 22

1   turning to Item Number 2 on today's short agenda, it's the

2   discovery conference with respect to the Debtor's First

3   Omnibus Objection to the three proofs of claim filed by the

4   liquidators of Three Arrows Capital, and that was filed at

5   Docket Item 530.

6          Your Honor, in that objection, which was filed on

7   July 19th, the Debtor's seek, in part, disallowance of the

8   proofs of claim based on pleading deficiencies; and the

9   absence of sufficient detail as to the nature of the claim

10  and the facts that would support it.

11         Other than respond to that claims objection, the

12  liquidators have indicated to us that they intend, instead,

13  to amend their proofs of claim in an effort to address

14  certain of the objections.

15         THE COURT:  So, Mr. Barefoot, if I could -- I did

16  read all -- all the letters I have, I guess what's at Docket

17  563 and 564.  So, I just figured I'd mention that so you can

18  -- you can dispense with the preliminaries.

19         I understand that this is a fight about sort of

20  the chicken and egg kind of a problem, whether it's

21  discovery or amending, and so -- so I get it, and I do have

22  your response, which is -- which is two and a half pages,

23  and pretty to the point, which I -- which I appreciate.  So,

24  I think you can probably pick up on that -- on that thread.

25         MR. BAREFOOT:  Thank you, Your Honor.  I'll cut

1    right to the chase then.  Your Honor, we have -- we have no

2    control over whether the liquidators intend to amend their

3    claim or proceed to respond to our objection.  That's their

4    prerogative.  So, we're not requiring them to amend.  We're

5    not asking the Court to require them to amend.  What they're

6    trying to do, though, is say why we want to amend, we want

7    to compel the Debtors to first engage in all merits of

8    discovery before we file our amendment.

9         As we set forth in our papers, that simply makes

10   little sense where it would effectively give the liquidators

11   extensive, pre-complaint discovery, without so much as a

12   motion to engage in what would be a fishing expedition.  And

13   Your Honor, without knowing the definitive nature and extent

14   of the claims that are at issue, it's impossible for us to

15   have meaningful exchanges, or ask, Your Honor, to decide any

16   disputes with respect to relevance or proportionality.

17        I also just want to note, Your Honor, that while

18   you've -- you've heard voluminous ink spilled by the -- by

19   the liquidators in their submission over the insufficiency

20   of their own records, and the lack of information that they

21   have.  One thing that that does ignore, Your Honor is the

22   information that was in the claims objection itself.  That

23   includes all of the definitive documentation that governed

24   the parties loan agreements, as well as all of the

25   communications between the parties where the terms for the

Page 24

1    relevant transactions were agreed.

2            Your Honor, we also mention that as an

3    accommodation, and really in order to avoid further delay in

4    adjudicating the claims objection, we do intend to produce,

5    in short order, the basic information that we think would be

6    relevant, regardless of the -- the exact nature and scope of

7    the amendment.  And I'll just conclude on this first issue

8    by saying none of the cases that the liquidators cite in

9    their -- in their letter brief involve or support any

10   entitlement to discovery as conditioned to amending a claim.

11           THE COURT:  So, let me just ask for a

12   clarification.  In approving what are referred to here as

13   the sufficiency process.  My -- my understanding is, we're

14   not changing any of the regular rules of the road.  We're

15   slapping it -- a name on it, but folks have a right to file

16   claims.  Folks have a right to file objections to claims.

17   And if a claim isn't prima facia valid, or even if it is,

18   somebody comes forward with evidence to shift the burden,

19   and -- and what -- what I understood the sufficiency

20   proceedings, that pleading and that explanation, that

21   discussion to do was to essentially put me on notice, to say

22   Judge we may have some that are going to look a bit like a

23   12(b)6 motion, because we think we have some claims that

24   fall into that category, but my understanding is -- is none

25   of that changed the rules of the road as to what everybody's

1    obligations are under the law, and what the burdens are, and

2    how to process claims objections.

3            MR. BAREFOOT:  That's correct, Your Honor, and we

4    -- we discussed that in some fashion at the hearing on the

5    claims objections procedures order.  I don't think, Your

6    Honor, needs to reach today, whether a sufficiency hearing

7    is the right vehicle for this objection, particularly given

8    that we now know that we don't even have the definitive

9    claim in front of us.  I think everyone's rights on that are

10   reserved, and as, Your Honor, said, and as we discussed at

11   the claims objections procedures order, in some ways the

12   sufficiency hearing is -- is consistent in any event with

13   the local rules where the first hearing on a matter is in

14   any event, unless ordered otherwise, a non-evidentiary

15   hearing.

16           THE COURT:  Yeah, which is designed to allow the

17   parties to take stock and then I can provide you with my

18   thoughts about the best ways to proceed, and you can give me

19   your views as to whether that makes sense, or you have some

20   other ideas, and everybody reserves all their rights under

21   applicable law.

22           All right.  Thank you.  I appreciate it.  I just -

23   - I remember we had a discussion and I think the reason we

24   had a discussion was to sort of flesh this out in the first

25   instance, and I just wanted to confirm I came away with the

Page 26

1     right understanding.

2          Anything else, Mr. Barefoot?

3          MR. BAREFOOT:  Just a -- very briefly, Your Honor,

4     on the second issue which is whether and to what extent the

5     Court would now preclude the Debtors from citing to or

6     relying on the fact that there will be one amendment in the

7     event that there are theoretically three or four or five

8     amendments?

9          THE COURT:  Sure, go ahead, please.

10         MR. BAREFOOT:  Okay.  So, Your Honor, very

11    briefly, we believe it would be inappropriate and at this

12    point, amount to some sort of an advisory opinion to rule

13    that if and when the liquidators subsequently amend, that

14    the Debtor's cannot point to, or rely on that in future

15    disputes.

16         Subsequent amendments, if and when they happen,

17    should be decided if and when there are disputes, with the

18    benefit of the facts and circumstances at that time,

19    particularly where they may raise relation back issues.  The

20    Debtors are not, at this point, seeking any determination on

21    a theoretical third or fourth iteration of these claims, if

22    we get there, and it should suffice that all parties rights

23    and defenses are reserved to argue what may be relevant in

24    the event of such subsequent amendments.

25         THE COURT:  All right.  Thank you very much.  I

Page 27

1    think I understand your point on that.  So, let me hear from

2    the Foreign Representatives for the Estate of Three Arrows

3    Capital.

4              Oh, you are on mute.  You are no longer on mute.

5              MR. GOLDBERG:  Good morning, Your Honor, can you

6    hear me now?

7              THE COURT:  (Indiscernible) great.

8              MR. GOLDBERG:  Okay.  Thank you very much, Your

9    Honor, and for the record, again, Adam Goldberg of Latham

10   Watkins, on behalf of the Foreign Representatives of the

11   Three Arrows Estate.  Thank you, again, for hearing us on

12   short notice and accommodating the letter raised.  We're

13   here with -- on a joint request to be heard so quickly with

14   the Debtors because we do agree with them that these matters

15   should be moving forward swiftly.

16             And I'd like to acknowledge at the outset that our

17   letter was a bit longer than we typically file for a hearing

18   of this type, but it --

19             THE COURT:  (Indiscernible) --

20             MR. FRELINGHUYSEN:  -- yes, Your Honor.  We did

21   feel it necessary though to express the legal argument we

22   have as it relates to -- particularly to the availability of

23   a sufficiency hearing here, because it's so important to our

24   bankruptcy case.  These claims that we have against the

25   Genesis Estate are among the largest assets available to the

Page 28

1    Three Arrows Estate and the Debtors are seeking to shut

2    those claims down entirely.

3           THE COURT:  Well, the -- but that's the merits.

4    They may be right, they may be wrong, we'll get to that in

5    the fullness of time.  But as to process, as I think I

6    signaled with my question to Mr. Barefoot, my -- I'm not

7    changing any of the rules of how things apply and how --

8    what the rules are for pleadings, for claims objections, for

9    the burdens of proof, any of that. And so, my -- my -- so if

10   you apply those general rules here, you filed the claim, as

11   is your right.  They filed an objection, as is theirs.

12          You can decide whether to amend or not to amend

13   and -- and that's your choice.  I -- the signal I get from

14   the letter is that you think, hey, we probably will amend

15   because we want to provide additional information.  I think

16   that's sensible, at least in the abstract.  Again, you all

17   know this better than I do, but that that's sensible,

18   because it's always better to fight about specific things,

19   than -- than kind of general what could you be arguing.  And

20   why not put your best foot forward.

21          And then I would think everything after that

22   follows whatever the rules tell us in terms of T'ing issues

23   up.  So, you'll have discovery, discovery will then, as a

24   result of an amended claim, be more focused, and that's

25   good.  And obviously, the party's relationships here are

1    complicated, even if -- even if focused, I'm sure discovery

2    will be extensive.

3            And then if you decide to amend in the future, you

4    decide to amend, if they decide to oppose your amendment,

5    they decide to oppose and then I apply the rules, which are

6    the relation back rules, and I think I have an opinion or

7    two about that in prior cases.

8            So, I mean, my -- my thought is that that's the

9    rules of the road and I don't -- they're there -- they're

10   there for a good reason and my job is -- this job is hard

11   enough without trying to predict the future.  I don't have

12   any -- I don't have any better talent at that than any of

13   you all, so where we end up, we end up and everybody

14   reserves their rights.

15           So, that certainly -- I throw that out there now,

16   because that's certainly the default.  Right?  I'm not --

17   I'm not -- no one's asked me to weigh in on any of the

18   merits of any objection.  We'll get there.  So, what is it

19   that you're asking me to do that's different than some of

20   the default rules of the road and why?

21           MR. GOLDBERG:  Well, I think what we have here is

22   a difference of what the default rules are.  Difference of

23   views with the Debtor.  Because our perspective is that the

24   claim objection creates a contested matter and not an

25   adversary proceeding, and Mr. Barefoot referred to pre-

Page 30

1    complaint discovery, essentially as how they're

2    characterizing our efforts at discovery, but our view is

3    that the status quo should be preserved.  We're not asking,

4    Your Honor, to change anything today.  We're trying to keep

5    the -- the rights as they are today, and our view is that

6    the rules permit discovery.

7              THE COURT:  But -- but yes and no.  Right?  We all

8    know that the rules that when you evaluate a claim by.  And

9    if you are concerned enough about the sufficiency of your

10   allegations in the complaint that you're advocating and have

11   expressed freely with the other side that you're likely to

12   amend your claim, I mean that tells us something, right?

13   So, it -- this is -- this lack of specificity is going to

14   manifest itself, if not here, then in discovery.  So, you're

15   going to say well, the user rules apply, it's a contested

16   matter, we want discovery, and the Debtors are going to say

17   discovery is not -- how are we supposed to handle discovery

18   if we don't really know what the claim is.  And then we're

19   going to end up back here in discovery.

20              So, there's a reason that, you know, notice

21   pleading is a -- is a concept, right?  It's designed to say

22   well, we know what we're fighting about, so we know what

23   information to exchange. There's always fights and debates

24   on the margins.  But they're not supposed to be sort of a

25   fundamental, existential question as to exactly what it is

1    that you're seeking.

2          So, again, I don't have the merits of the claim in

3    front of me, but -- but I think that your -- I take your

4    point, but I think it might prove a bit too much in this

5    context.

6          MR. GOLDBERG:  Well, Your Honor, I think let me

7    just respond by exactly what we're looking to preserve the

8    status quo here on.  You know, Mr. Barefoot mentioned third

9    and fifth amendments.  We're not asking the Court to

10   prejudge anything.  What we're looking for here is

11   availability of discovery that we think is available under

12   the bankruptcy rules and actually there's multiple

13   alternative basis for the rules to provide for discovery

14   here.  There is a contested matter that provides the basis

15   for discovery.  There's also a Rule 2004 that applies --

16         THE COURT:  But then you can make a 2004 --

17         MR. GOLDBERG:  -- to this Chapter 11 case.

18         THE COURT:  -- application.  I don't have a Rule

19   2004 application.  I thought about that when I was reading

20   the letters.  And again, it's an adversary system and I have

21   a bunch of really smart lawyers in front of me, and you

22   know, there's -- when I was on the other side of the bench,

23   sometimes Judges would go around suggesting very clever

24   ideas, seemed like Judge we've thought about that, or we had

25   a discussion about that.  So, I try to avoid doing too much

Page 32

1    of that. But yeah, if you want to make that request, you

2    make that request and it gets evaluated, based on whatever I

3    have in front of me.

4            The problem is, I think your point proves too

5    much.  It seems to suggest, at the most extreme, that if

6    somebody filed a one sentence claim saying I have a claim

7    against the Debtors, period.  Then that would be a contested

8    matter and we'd have discovery.  And so again, I don't have

9    the merits of the claim in front of me, we're talking a bit

10   more abstractly about how much sufficiency is appropriate.

11   But -- but folks can file claims objections and say Judge,

12   this is a waste of time to have discovery.  There's no

13   there, there, and so I think it's -- I think your instincts

14   are right.  Let's get down to brass tacks and to what we're

15   really fighting about.  Amend your claim, and then have

16   discovery.

17           The rules, as I understand Rule 15 and relation

18   back, are -- it's a fairly liberal standard.  I mean, I'm

19   not -- I'm not seeing anything that's -- I'm just -- I'm not

20   changing the law, I'm just stating what I understand the law

21   to be, sitting here today, having written opinions on it in

22   the past.  And so, I don't think you're giving up anything,

23   you're just -- we're just, as you know, Bankruptcy Judges,

24   we're very practical people.  And so, we're trying to find a

25   way to move cases forward in the most efficient way.  So, --

Page 33

1    so that again, you may have amendments, as you learn things

2    and I understand that you're the foreign representatives,

3    and you're not -- you have significant challenges of your

4    own, and there's case law on -- that addresses that -- those

5    kinds of a concerns as well.

6            So -- so, again, I think the regular rules of the

7    road are -- are -- seem to be, you know, well suited to --

8    to protect your kinds of concerns.  And it's going to end up

9    in front of me, and you could say, Judge, remember we came

10   here, and this is why we came here before.  Now we're here

11   again, and -- and we've done our best to move things forward

12   and then we'll figure it out under those circumstances.

13           But what is it specifically you're asking me to

14   do?

15           MR. GOLDBERG:  Well, specifically well -- where we

16   are today, is that we've agreed with the Debtors that we

17   will file an amended complaint.  We've -- and we've -- but

18   we haven't agreed on exactly when that will be filed.  What

19   we're asking the Court today is to give us direction that we

20   should be entitled to take discovery before an amended claim

21   is filed.  Or in the alternative, what we're asking for is

22   that if we do file the amended claim now, that first one

23   amendment shouldn't be held against us later.

24           THE COURT:  I can't --

25           MR. GOLDBERG:  We're not trying --

Page 34

1          THE COURT:  -- no, no.  No, no.  That -- so number

2    two is out because it changes the rules of the game.  Right?

3    It changes the rules that exist for situations like that.

4    If you amend -- you've -- you amend your claim, and we

5    address it under the relation back and all the applicable

6    rules.

7          As for the first, it does also change the rules, I

8    think, but a bit more subtlety.  It basically says well,

9    we're going to file a claim, and to the extent that another

10   side might make an objection that they can come to you with

11   and say, you know, Judge it's -- it's -- we don't think it

12   actually states a claim for anything, then they can't do

13   that.

14         And so, I'm not saying that their -- their

15   argument on the sufficiency of your existing claim is a

16   winner or not.  I don't have the in front of me today.  But

17   you're asking me to say that they can't make that argument,

18   right?  And so, as I said to Mr. Barefoot, the regular rules

19   apply.  So, if you have your current claim and they decide

20   to proceed with an objection, saying that current claim is -

21   - is not sufficient and here's what the case law says about

22   that.  And you argue it, they argue it.  They may win, they

23   may lose, but I can't in advance tell them that they can't

24   make that.  If they have the right to proceed with that

25   argument, they have the right to proceed with that argument,

Page 35

1    and in fact there's -- there's good reasons, and I think

2    which is what they argued when they got those procedures

3    approved, to say we want to be able to flesh out claims when

4    we don't really know what they're about.

5              And we made it clear, at the time, that discussion

6    doesn't change the rules of the road about how you evaluate

7    claims objections.  I have viewed it as essentially a heads

8    up, as to what their thinking was, and so that they didn't

9    think I was changing or that any order would be changing the

10   rules of the road.

11             So, I'm not going to -- that also then -- they can

12   proceed with their objection, and we'll have what we

13   normally have, a non-evidentiary hearing.  We'll get

14   together and then I'll evaluate it.  So, if you want to spin

15   that wheel, that's what we'll do.  It's up to you.

16             Based on what limited stuff I have in front of me

17   today, which is procedural, there's a suggestion that you

18   think geeze, we probably should amend this -- this claim.

19   And that that's probably what we're inclined to do.

20             I would say trust your instincts, because more

21   specificity is better than less specificity, and we're all

22   better fighting about specific identified things and getting

23   through the merits rather than fighting about these kinds of

24   issues.  It's just more efficient, and it saves money for

25   clients and moves the case along more smoothly.

1           But that said, you all know your case better than

2     I do, so you have to make your choice.  But I just -- I'm

3     not going to remove anybody's procedural options and tell

4     them that they can't -- they can't do that.  We'll deal with

5     it.  I don't have it in front of me today, and maybe you

6     would -- you would have an objection if they file a motion

7     to expunge, and saying it's not sufficient, and you would

8     oppose and maybe you'd win, and then you'd be off to

9     discovery.  But maybe you wouldn't win.  I don't know.

10    That's not on for today.  I have no -- I don't have any

11    wisdom that allows me to make that kind of determination

12    sitting here today.

13          But I -- again, the idea is I'm not changing the

14    rules of the road.  So, certainly we have our -- follow our

15    regular procedures to deal with the motion.

16          MR. GOLDBERG:  Well look -- I understand that Your

17    Honor and thank you for that direction.  Let me address,

18    briefly, what it is we think will move this case forward, as

19    quickly as possible.

20          And we do think that discovery is necessary at

21    this stage, and that is because there's a tremendous

22    information disparity between the parties here --

23          THE COURT:  I -- I understand that --

24          MR. GOLDBERG:  -- (indiscernible) --

25          THE COURT:  -- but you're -- you're -- but that's

1   fine.  That's all well and good.  You had me at hello.  The

2   question is whether in making that request and seeking that

3   discovery, you're asking for me to change the rules of the

4   road as to -- as to amendments, or as to objections.  And I

5   -- I'm not inclined to do that, because I don't see a reason

6   to do that.  It's your claim.  I understand that you -- I

7   think I understand the challenges you have, and I appreciate

8   those are challenges.  I have no doubt that some of what

9   you've put in your tone here will make its way into any --

10  any pleadings that might get filed in the near future, if we

11  have to go down that road.

12          But -- but I'm not sure exactly what you're giving

13  up if you amend the complaint -- if you amend the claim.

14  You're giving up the right to future amendments.  I don't

15  think you are.  I think you're -- you're -- those amendments

16  are just subject to whatever the rules are.  So, I don't see

17  you giving up anything.  I see it just being governed by the

18  rules.  But so, I -- I -- that's my take, but I'm not -- I

19  haven't seen anything in your nine page letter, and the

20  discovery requests back and forth that are attached, that

21  changes the calculous for me.  And again, the rules are --

22  are developed over an extensive period of time to deal with

23  situations like this and every other situation.  So, I -- I

24  -- again, we'll -- if we go ahead with the claim, the

25  objection, we'll have a hearing, we'll talk about it.  You

1    may win, you may lose, I don't know.  But -- but that's sort

2    of the regular way we'd handle it.

3              MR. GOLDBERG:  Well, I think just to play it out

4    how I expect it to unfold in that process, Your Honor, and

5    why we still think discovery should be taken now, before an

6    amended complaint, is that --

7              THE COURT:  But -- but it's your choice --

8              MR. GOLDBERG:  -- (indiscernible) -- once the --

9              THE COURT:  -- counsel.  It's your choice.  It's

10   your claim.  It's your choice.  It's not my choice and I'm

11   not changing the rules for you under these circumstances.  I

12   -- again, I'm not clear that I have the ability to change

13   the rules or why I would change the rules.  Again, I

14   understand you think discovery is appropriate, and that's

15   fine.  We'll get to discovery.  But under what claim, it's

16   up to you.

17             MR. GOLDBERG:  Very well, Your Honor.  I think

18   though that the Debtors have changed the rules, but they

19   agreed to get through the --

20             THE COURT:  I -- I don't agree.

21             MR. GOLDBERG:  -- claim procedures order --

22             THE COURT:  I understand that's your

23   characterization, but for the reasons I already discussed, I

24   think you're asking -- you're asking me to change the rules

25   to say that I get a free amendment.  I -- I mean, I don't

1    want to be too snarky about this, but tell me where in the

2    rules it says you get a free amendment.  You don't.  And so,

3    you're subject to the regular rules.

4            I understand you're dealing with it in information

5    deficit.  I get it.  I understand that and we cite -- people

6    cite those kinds of rules and the case law about trustees

7    walking into these situations and the information deficit

8    all the time.  And that -- that will play itself out based

9    on every -- whatever it is that we end up litigating in the

10   fullness of time.

11           But I'm not preemptively changing the rules about

12   claims objections.  And I don't think the sufficiency

13   hearing, which in a way, now I'm regretting giving you in

14   its own separate name, which sounds like it's different than

15   the rules.  It'll be a claim objection hearing. We'll --

16   we'll -- there -- that's the way it works in every case I

17   have, somebody files a claim, somebody files an objection.

18   We have a non-evidentiary hearing, and we get together, and

19   we see what's what.

20           And at that point, Mr. Barefoot will say we think

21   the claim should be -- should be expunged right now, Your

22   Honor, based on applicable law.  And you'll say, Judge, we

23   don't think that's the case and we think that there should

24   be discovery.

25           That's how it will play itself out.  That's how it

Page 40

```
1    plays itself out in many cases that are much smaller than

2    this one.

3              MR. GOLDBERG:  Thank you, Your Honor, we

4    appreciate your direction.

5              THE COURT:  All right.  Again, I -- I understand,

6    I think I understand the challenges that you have, and I

7    appreciate them, and so I do think your instincts to amend

8    the claim, based on what you have, information you have is -

9    - is -- is probably the right one.  Again, you have to make

10   that call.  You're closer to it than I am.  You have the

11   information, I don't.  But based on what I saw in your -- in

12   your letter, that seems to be where you'd like to go, but

13   you're nervous about it.  I understand that, but it -- it

14   sounds like that's probably the right way to go so we can

15   actually get the parties to join on -- on the merits of the

16   actual claim itself.

17             But with that, I'll leave that to your considered

18   professional judgement to assess -- I do appreciate the

19   briefings, I have -- it gave me very good window into your

20   thinking, and your challenges, and so I expect all that will

21   -- will -- I will keep this in my stack of Genisis

22   materials, because I expect it may be helpful in the future.

23             MR. GOLDBERG:  Thank you, Your Honor.  And just to

24   be clear, I mean I think the process as we envision it is,

25   there may -- there may have to be further amendments of the
```

1   claim after this round, if and when we learn more facts, and

2   we'll have to take into (indiscernible) --

3           THE COURT:  Well, I -- I understand that, and

4   we'll see, again, I -- I sometimes feel like I should have a

5   magic eight ball here on the bench, because sometimes people

6   are asking for those kinds of predictions, and frankly the

7   magic eight ball is probably as best as I could do, because

8   I have learned in this job, that my predictions aren't any

9   better than anyone else's.

10          So, I appreciate it -- we'll -- we'll get there.

11  We'll get there.  And this is complicated.  This case is

12  complicated.  And all the relationship between the Debtors

13  and counterparties, complicated particularly where those

14  entities have their own proceedings.  And we've already had

15  extended -- spent some extended time talking about the

16  Debtor's relationship with FTX, and now we're talking about

17  Three Arrows.  And we'll -- we'll get there.  So, but thank

18  you for your presentation today, and for the letter, and

19  we'll -- we'll see how it goes.

20          What I would say is we can talk about procedure.

21  At some point, I imagine that you all want to have a

22  discussion about what you want to do, and then you'll reach

23  out to the Debtors and figure out what you want to do and

24  then you can reach out to Chambers and let us know what

25  time, if any, that you need the -- in the near future, and

```
 1     we'll get you what you need.

 2               MR. GOLDBERG:  Thank you, Your Honor.

 3               THE COURT:  All right. Thank you.

 4               MR. BAREFOOT:  And, Your Honor, just -- just

 5     briefly, for the record, I think this is agreed between the

 6     joint liquidators and the Debtors, to the extent that the

 7     joint liquidators decide to amend their claim rather than

 8     proceed with litigation and discovery on the existing claim.

 9     They have agreed, and we've accepted that August 14th would

10     be the date for that.

11               THE COURT:  All right.  All right.  That -- that's

12     fine.  I'll -- otherwise I'll leave you to it in terms of

13     trying to figure out the best way forward because the

14     Court's -- it's very important for us to leverage the wisdom

15     and professionalism the good lawyers that appear in front of

16     us, so I'll get out of the way.

17               All right.  That's probably a good segway to

18     scheduling.  And so, Mr. Barefoot, I want to make sure that

19     we're all on the same page.  And if you wanted to start, or

20     I could start my -- well, maybe I'll start, just to say I

21     understand that we had a date on the 15th to deal with,

22     among other things, estimation that that's not -- not a --

23     well, I'm not sure maybe Mr. Barefoot or maybe Mr. O'Neal,

24     it might be both, and that's all fine.  That the 15th is --

25     is -- is not going forward at this time.  We have the 18th
```

Page 43

1   for a disclosure statement hearing and any potential

2   Chambers conference.  And we have September 6th for fee

3   applications. I think the 24th of August was originally held

4   for confirmation, and I will tell you, without confirmation

5   my -- my intent is to not have a calendar on the 24th.  I

6   will confess to trying to sneak off to the Adirondacks for

7   some period of time.

8           I will say that to the extent that it would be

9   helpful to have a status conference that would be beneficial

10  for anybody towards the end of August, even if I'm away, we

11  can figure that out, but my intent is to try to avoid

12  substantive hearings on issues during that time.  So, -- so

13  I have then basically the 18th and the 6th.  I would imagine

14  we'll have a -- sort of a status as we always do on the 18th

15  to talk about what's coming up next and that -- and at that

16  point, if someone says, geeze it would be helpful to have

17  some kind of a status conference between now and -- and

18  Labor Day, I'm open in that suggestion, and we can talk

19  about it then.

20          But that's my understanding of the schedule, and

21  so Mr. O'Neal or Mr. Barefoot, or both, any -- any thoughts?

22  I want to make sure I've got it right.

23          MR. O'NEAL:  Your Honor, it's Sean O'Neal.  I

24  would add to that chorus, Ms. Vanlare, I believe that you

25  have the dates.  I think it's the 18th for the disclosure

Page 44

1    statement and the potential Chambers conference.  I think we

2    actually had discussed it with Chambers yesterday, the 18th

3    and hadn't quite gotten it yet.  So, that's --

4               THE COURT:  Yes --

5               MR. O'NEAL:  -- that would well --

6               THE COURT:  -- you -- you were good to go on the

7    18th.

8               MR. O'NEAL:  Yeah, that will work well for us, and

9    then the 6th is the fee app, and I think we are also have an

10   exclusivity motion that we'll be filing, and we'll probably

11   schedule that for the 6th as well, Your Honor.

12              THE COURT:  All right.  All right, and you'll just

13   let me know as, you know, as things unfold, what -- what

14   else you might need, and again, sometimes the status

15   conference might be helpful.  We have already made reference

16   to the potential having -- the idea of having a Chambers

17   conference and I'll -- will approve that on the 18th.

18              All right.  Thank you for that.  I appreciate it,

19   because I want to make sure we're on the same page and you

20   have a lot of things going on, as I think our argument

21   discussion just now was a very good illustration of that.

22   So, all right.

23              So, Mr. O'Neal, anything else that we should

24   address here this morning?

25              MR. O'NEAL:  I think -- yeah, Your Honor, I think

Page 45

1     the only thing is the FTX settlement motion.  I think we're

2     targeting the 6th for that, but there's a fair amount of,

3     you know, there's a discussion with the FTX Debtors on that

4     point, but that is what we're targeting.

5              THE COURT:  Um-hum

6              MR. O'NEAL:  But if that -- if that date is -- you

7     know, if we have to go for a different date, I think we

8     would reach out to your Chambers, understanding that the --

9     the last part of August is not really available.

10             THE COURT:  All right.  Yeah, that's fine.  Thank

11    you for the heads up on that.  I certainly won't hold you to

12    it, it sounds like that's somewhat of a fluid situation, but

13    it's always helpful to get the heads up.  I put things in my

14    own calendar in pencil, and have several erasers scattered

15    all over Chambers.  So, -- so, that's fine.

16             All right, with that, is there anything else from

17    any other party that we should address here this morning?

18             MR. ZIPES:  Your Honor, it's Greg Zipes, with the

19    US Trustee's office.  I don't think I was aware that the

20    disclosure statement hearing has been moved.  That was

21    actually a point that I was going to raise.  I -- as far as

22    I knew the hearing was on August 11th, so I appreciate that

23    that's been adjourned a week.  That was -- that was one

24    point I was going to ask about.

25             Your honor, the disclosure statement that's been

Page 46

1    filed and as amended, probably is somewhat out of date,

2    especially given the FTX settlement or the hope for a

3    settlement.  And there are various issues that my office is

4    -- is focused on.  It is a bit of a moving target for us,

5    and we -- we just want to raise that that's an issue.

6              There's an objection deadline, which I assume is

7    not being extended out.  That's what my concerns is that our

8    deadline is coming up as of Thursday or Friday.  So, I

9    assume that's being extended out another week.  There's an

10   SEC and objection that's been filed that has some points

11   that my office would be concerned about, and it would be

12   helpful to know, what if anything has been resolved in that

13   regard.

14             And Your Honor, I just wanted to raise that as --

15   as a point that my office is focused on.

16             THE COURT:  All right.  That's fair enough.  So,

17   Mr. O'Neal, any -- any wisdom to offer?

18             MR. O'NEAL:  I think Mr. Zipes, everything that he

19   said sounds accurate to me.  We'll reach out to him, but

20   yes, the disclosure statement objection deadline will be

21   moved by the week, commensurate with the extension or the

22   adjournment of the -- of the hearing and we'll gladly

23   discuss with Mr. Zipes any concerns that he may have with

24   respect to the disclosure statement.

25             THE COURT:  All right.  And -- and I understand

Page 47

1      that this case is, as sometimes happens in large cases with

2      a lot going on, that there's a desire to -- to move things

3      out in incremental fashion to keep the pressure on and to

4      keep the case moving, and so that's one of the reasons we've

5      been using Friday, so that it doesn't do too much violence

6      to the other customers who appear on calendars, Tuesday,

7      Wednesday, and Thursday.  And we'll -- we'll figure out as

8      we go along and my only request in that is, as the Debtors

9      figure out the timing of things, just to let us know as soon

10     as possible so that everybody knows, and the moving from the

11     11th to the 18th, was very much breaking news.  So, we just

12     had that discussion.  So, that's, I believe it's state of

13     the art.

14             So, I appreciate keeping everybody in the loop,

15     and given today's date, we're talking about things the 11th

16     -- the 18th that's really consistent with keeping everybody

17     informed before they have to make decisions or take certain

18     actions.  So, I appreciate that, and with that, anything

19     else from any other party?

20             All right.  Thank you very much.  I appreciate all

21     of the information.  Good luck in your continued discussions

22     and I'll see you later this month.  Be well.

23             MR. O'NEAL:  Thank you, Your Honor.

24             (Whereupon these proceedings were concluded.)

25

```
1                  C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  August 15, 2023
```