**Hearing Date: September 6, 2023 at 2:00 p.m.(Prevailing Eastern Time)**
**Objection Deadline: August 30, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO CONSENT TO PRIMING OF THE DEBTORS' LIENS ON CERTAIN PROPERTY AND (II) AUTHORIZING AND APPROVING PROCEDURES FOR THE DEBTORS TO CONSENT TO THE PRIMING OR RELEASE OF LIENS ON OTHER DE MINIMIS ASSETS**

    **PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

    **PLEASE TAKE FURTHER NOTICE** that on August 16, 2023 the Debtors, filed the annexed *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Consent to the*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Holdco, and its Debtor and non-Debtor subsidiaries are collectively referred to as the "Company".

*Priming of the Debtors' Liens on Certain Property and (II) Authorizing and Approving Procedures for the Debtors to Consent to the Priming or Release of Liens on Other De Minimis Assets* (the "Motion").  A hearing (the "Hearing") on the Motion will be held via Zoom before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 on **September 6, 2023 at 2:00 p.m. (Eastern Time) (the "Hearing Date")**.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections, if any, to the Motion or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **August 30, 2023 at 4:00 p.m. (Eastern Time) (the "Objection Deadline")** and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order").

**PLEASE TAKE FURTHER NOTICE** that if no written objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit A to the Motion, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may affect your rights. Please read the Motion carefully and, if you have one available, discuss it with your attorney.  (If you do not have an attorney, you should consider consulting with one.

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter order granting the relief requested by the Debtors.

[*The remainder of this page is left blank intentionally.*]

Dated:   August 16, 2023
      New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[3] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
DEBTORS TO CONSENT TO PRIMING OF THE DEBTORS' LIENS ON CERTAIN
PROPERTY AND (II) AUTHORIZING AND APPROVING PROCEDURES FOR THE
DEBTORS TO CONSENT TO THE PRIMING OR RELEASE OF LIENS
ON OTHER DE MINIMIS ASSETS**

Genesis Global Capital, LLC ("GGC") and its affiliated debtors and debtors-in-

possession in the above-captioned cases (collectively, the "Debtors" and these cases, collectively,

the "Chapter 11 Cases") hereby submit this motion (the "Motion") for entry of an order,

substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") (i) authorizing GGC

to consent to the priming of that certain lien (the "Lien") granted by File Storage Partners, LLC

("FSP") in favor of GGC in respect of borrowings under that certain Master Loan Agreement

---

[3]        The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification
number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia
Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park
Avenue South, 5th Floor, New York, NY 10003.

between GGC and FSP dated August 9, 2021 and related loan term sheets thereto by that certain debtor-in-possession facility (the "FSP DIP Facility" and the governing documents, the "FSP DIP Facility Documents"), proposed by FSP in connection with the bankruptcy proceedings commenced by FSP and its affiliated debtors (together, the "FSP Debtors") under title 11 of the United States Code (the "Bankruptcy Code" and such proceedings, the "FSP Chapter 11 Cases"); (ii) modifying the automatic stay to the extent necessary to permit GGC to consent to the priming of its Lien by KB Silver Funding, LLC (the "FSP DIP Lender"); and (iii) authorizing procedures for the Debtors to consent to the priming or release of their liens in property with a value of no more than $2,000,000 per counterparty in which the Debtors have an interest in without seeking further relief from this Court; provided that the aggregate value of assets with liens held by the Debtors that are primed or released in accordance with the Procedures shall not exceed $7,500,000 absent further order of the Court; provided further that the Debtors provide advance notice to counsel to the Official Committee of Unsecured Creditors (the "Committee") appointed in these Chapter 11 Cases and follow the other proposed procedures as set forth herein.  In support of this Motion, the Debtors rely upon, and incorporate by reference, the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, ECF No. 17 (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, ECF No. 19 (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, ECF No. 28 (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations").[4]  In

---

[4]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declarations.

further support of this Motion, the Debtors also rely upon the *Declaration of Joseph J. Sciametta in Support of Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Consent to the Priming of the Debtors' Liens on Certain Property and (II) Authorizing and Approving Procedures for the Debtors to Consent to the Priming or Release of Liens on Other De Minimis Assets*, (the "Sciametta Declaration") and the *Declaration of Hoo Ri Kim in Support of Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Consent to the Priming of the Debtors' Liens on Certain Property and (II) Authorizing and Approving Procedures for the Debtors to Consent to the Priming or Release of Liens on Other De Minimis Assets* (the "Kim Declaration"), filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution.

2.      Venue of these Chapter 11 Cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are §§ 105(a), 362(a), 363(b) and 363(c) of the Bankruptcy Code, Rules 4001, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Rules 4001-1, 9013-1 and 9014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## BACKGROUND

4.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are operating their businesses as debtors-in-possession under §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.  These Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b), ECF No. 37.  The Committee was appointed on February 3, 2023, ECF No. 55.

5.      The Debtors' operations included lending and borrowing services for digital assets. GGC International Limited, and other non-Genesis Debtor affiliates, offer trading services. Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

## THE FSP MLA AND DIP FACILITY

6.      The FSP Debtors' business primarily relies on its operations related to the borrowing and staking of Filecoin tokens ("FIL").  On August 9, 2021, GGC and FSP entered into that certain Master Loan Agreement dated as of August 9, 2021 (the "Genesis MLA").  On April 10, 2021, GGC and FSP entered into that certain loan term sheet (the "Genesis Term Sheet"), and the first amendment to the Genesis Term Sheet dated December 10, 2021 (the "Genesis Term Sheet Amendment" and together with the Genesis MLA and the Genesis Term Sheet, the "Genesis Loan Documents"), pursuant  to which, among other things, Genesis lent FIL in an amount not to exceed 500,000 FIL.  Pursuant to the Genesis MLA, FSP granted GGC a first priority security interest in, and a lien upon, digital currency pledged as collateral by FSP to GGC in an amount of Digital Currency (as defined in the Genesis MLA) equal to 100% of the Loaned Assets (as defined in the Genesis MLA) under the Genesis MLA (the "Genesis Collateral").  Under the Genesis Loan

Documents, the FSP Debtors were, absolutely and unconditionally, indebted and obligated to GGC in an aggregate principal amount of approximately 176,415 FIL, plus accrued but unpaid interest, fees, costs and expenses incurred by GGC under the Genesis Loan Documents (all amounts owing or outstanding under the Genesis Loan Documents, whether or not contingent, the "Outstanding Secured Obligations").  Kim Declaration, Exhibit F at ¶ E(c); Sciametta Declaration at ¶ 6.  The Debtors estimated the amount of Outstanding Secured Obligations as of the Debtors' Petition Date to be approximately 183,525.0601066 FIL, as included in GGC's schedules and statements. Sciametta Declaration ¶ 6.

7.      On June 30, 2023, the FSP Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "FSP Petition Date") in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court").  Kim Declaration, Exhibit A.  On July 5, 2023, the U.S. Trustee appointed a Subchapter V trustee in the FSP Chapter 11 Cases.  Kim Declaration, Exhibit E.

8.      On the FSP Petition Date, the FSP Debtors filed a motion in the Delaware Bankruptcy Court requesting authority to enter into the FSP DIP Facility Documents with the FSP DIP Lender, pursuant to which the FSP DIP Lender would receive, among other things, a priming, superpriority lien on the Genesis Collateral.  Kim Declaration, Exhibit B at 2-3.  On the same day, the FSP Debtors filed a motion in the Delaware Bankruptcy Court for the sale of its assets in a private sale to the FSP DIP Lender, under which the FSP DIP Lender would be able to credit bid the outstanding obligations under the FSP DIP Facility as part of the purchase price. Kim Declaration, Exhibit C at ¶ 16.  The FSP DIP Lender also proposed to assume all obligations of FSP under the Genesis MLA as part of such a sale.  Kim Declaration, Exhibit C at ¶ 16.  On August

15, 2023, the FSP Debtors filed a notice cancelling the scheduled auction and confirming that the FSP DIP Lender submitted the only qualified bid.  Kim Declaration, Exhibit G.

9.      On August 3, 2023, the final order approving the FSP DIP Facility was entered in the FSP Chapter 11 Cases (the "Final DIP Order").  Kim Declaration, Exhibit F.  Under the Final DIP Order, GGC's consent to the priming of its Lien will be of no force and effect if this Court denies any motion seeking approval of such priming.  Kim Declaration, Exhibit F ¶ 12(h).

10.     As described in paragraphs 12(d)-(g) of the Final DIP Order, FSP would provide GGC adequate protection for any diminution in the value of the Genesis Collateral (the "Adequate Protection").  Kim Declaration, Exhibit F ¶ 12(d)-(g).  The Adequate Protection includes: (i) replacement liens on the Genesis Collateral to the extent there is any diminution in the value of Genesis's interests in the Genesis Collateral during the pendency of the FSP Chapter 11 Cases; (ii) an allowed administrative claim in an amount equal to the diminution in the value of Genesis' interests in the Genesis Collateral from and after the FSP Petition Date; (iii) reasonable and documented outstanding fees and out-of-pocket expenses, including those of legal counsel, up to $20,000.00; (iv) cash payments on the last day of each month, which payment shall each be in the amount calculated as (A) the amount of the Outstanding Secured Obligations as of the FSP Petition Date multiplied by (B) a rate of 13% per annum (computed on the basis of a 360-day year of twelve 30-day months); (v) an allowed administrative expense claim accruing at a rate of 13% of the outstanding amount of Outstanding Secured Obligations; (vi) a covenant that the Debtors shall maintain insurance policies applicable to the Genesis Collateral; (vii) a covenant that the FSP DIP Lender shall first satisfy the DIP Obligations following the occurrence of an Event of Default from DIP Collateral other than the Genesis Collateral; (viii) customary stipulations to the validity of the loans and GGC's liens, subject to a customary challenge period; (ix) access to information,

6

including periodic budget reporting; and (x) consent over amendments to milestones that have the effect of removing it completely or extending it for more than five (5) days (as described in paragraph 12(d)-(g) of the Final DIP Order, the "Adequate Protection"). *Id.*

11.     The Debtors have negotiated at an arms-length basis the Adequate Protection, consulted with their advisors, and obtained the approval of the Special Committee of the Board of Directors of Holdco, and believe that agreeing to priming of the Lien, as granted by the Genesis Loan Documents, will maximize the value of GGC's claims against FSP and are, therefore, in the best interest of GGC and its creditors. *See* Sciametta Declaration at ¶ 9, 11.

12.     Further, for the orderly administration of similar issues during their Chapter 11 Cases, the Debtors also wish to establish procedures for the priming or release of their liens in property with a de minimis value without seeking further relief from the Court, provided that the Debtors provide advance notice to counsel to the Committee.

## RELIEF REQUESTED

13.     By this Motion, pursuant to sections 105(a), 362(a), 363(b) and 363(c) of the Bankruptcy Code, the Debtors request entry of the Proposed Order (i) authorizing GGC to consent to the priming of their Lien on certain property; (ii) modifying the automatic stay to the extent necessary to permit GGC to consent to the priming of its Lien by the FSP DIP Facility and (iii) authorizing procedures for the Debtors to consent to the priming or release of their liens in de minimis property in which the Debtors have an interest in without seeking further relief from the Court, provided that the Debtors follow the other proposed procedures as set forth herein.

## BASIS FOR RELIEF

A.   **The Requested Relief Should Be Granted Under Sections 105 and 363 of the Bankruptcy Code.**

14.   Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy Code authorizes a debtor to "use, sell, or lease" property of the estate outside the ordinary course of business only after notice and a hearing, 11 U.S.C. § 363(b)(1), and section 363(c) of the Bankruptcy Code authorizes a debtor to "enter into transactions . . . in the ordinary course of business, without notice or a hearing," and provides that a debtor may use property of the estate in the ordinary course of business without notice or a hearing, 11 U.S.C. § 363(c)(1).

15.   As described above, the Debtors entered into the Genesis Loan Documents before the Petition Date.  GGC now seeks to protect its interests in connection with its lending arrangements with FSP by consenting to the FSP DIP Facility Documents.  The Debtors understand that the terms of the FSP DIP Documents represent the best available financing option for the FSP Debtors under the present circumstances.  *See* Kim Declaration, Exhibit D at ¶ 47. The negotiated terms, as one would expect in light of all of the exigent circumstances, include the granting of a superpriority lien on the Genesis Collateral, which would have the effect of priming the Lien, and therefore require the consent of GGC.  Kim Declaration, Exhibit F at ¶ 9, 12(h); Sciametta Declaration at ¶ 7.  The Debtors respectfully submit that providing such consent constitutes an ordinary-course action under section 363(c).  Nevertheless, and out of an abundance of caution, the Debtors request this Court's approval under section 363(b).

   *i.*   *Granting Consent to the FSP DIP Facility Documents Constitutes an Act in the Ordinary Course Under § 363(c) of the Bankruptcy Code.*

16.     Section 363 of the Bankruptcy Code is designed to permit a debtor to continue its

operations without undue court or creditor oversight while protecting creditors from dissipation of

the assets of the estate.  *See In re Lavigne*, 114 F.3d 379, 384 (2d Cir. 1997).  Therefore, a debtor-

in-possession is permitted to enter into transactions without the need for prior court approval where

such transactions are in the ordinary course.  *See id*.  Courts in the Second Circuit apply a two-part

test to determine whether a transaction is in the ordinary course, consisting of the objective

"horizontal" test and the subjective "vertical" test.  *See In re Celsius Network LLC*, No. 22-10964

(MG), 2023 WL 439707, at *2 (Bankr. S.D.N.Y. Jan. 26, 2023) (citing *Lavigne*, 114 F.3d at 384–

85 (citation omitted)).   "The horizontal test is a factual analysis that requires a determination

whether the transaction in question is of the sort commonly undertaken by companies in the

relevant industry . . . [and the] vertical test is an analysis conducted from the perspective of a

hypothetical creditor to determine whether the transaction subjects such creditor to a level of

economic risk of a nature different from what it accepted when it entered into a contract with the

debtors. . . . In making this determination, courts look to the debtor's prepetition business practices

and conduct and compare them to the debtor's postpetition conduct."  *Celsius* at *2 (internal

citation omitted).  GGC's consent to the priming of its Lien by the FSP DIP Facility satisfies both

parts of the test.

17.     In the event a borrower entity such as FSP faces a change in financial circumstances,

it is common practice to approach its existing secured lenders to request consent to enter into

debtor-in-possession financing. Sciametta Declaration at ¶ 5.  This is particularly true where the

borrower entity is seeking to reorganize or sell itself as a going concern.  Sciametta Declaration at

¶ 5.  Faced with the alternative of liquidation of its borrower, it is common practice for a secured

lender to consent to have its existing liens primed by a much-needed debtor-in-possession

financing facility.  For example, as previously approved by this Court, Holdco has consented to the priming of its liens by the debtor-in-possession facility in Cash Cloud Inc.'s chapter 11 proceeding (the "Cash Cloud DIP Facility").  See *Order Granting Debtors' Emergency Motion for Entry of an Order Authorizing Debtor Genesis Holdco, LLC to Consent to Priming of Lien*, ECF No. 77.  As such, the consent satisfies the horizontal test under section 363(c) of the Bankruptcy Code.

18.     The Debtors' contemplated consent to the priming satisfies the vertical test as well. The purpose of adequate protection under section 364(d)(1)(b) of the Bankruptcy Code is to give the benefit of the bargain to the prepetition secured lender and protect it against any diminution in value based on the continued use or sale of collateral, as well as the imposition of the automatic stay.  *In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2023 Bankr. LEXIS 645, at *16 (Bankr. S.D.N.Y. Mar. 13, 2023).  As such, when viewed "from the perspective of a hypothetical creditor," there should be little or no change in the risk profile.  *Celsius* at *2 (internal citation omitted).  GGC's proposed consent to the FSP DIP Facility therefore satisfies both prongs of the test used to determine whether a debtor's act constitutes an act in the ordinary course for purposes of section 363.

*ii.     Granting Consent to the FSP DIP Facility Is an Exercise of the Debtors' Sound Business Judgment Under § 363(b) of the Bankruptcy Code.*

19.     While the Debtors believe that GGC's consent to the priming of its Lien constitutes use of estate property in the ordinary course of business, out of an abundance of caution, the Debtors seek authority to provide consent to the FSP DIP Facility pursuant to § 363(b), which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code, courts require only that the debtor show "a good business

reason" for such actions. *See In re Adelphia Commc'ns Corp.*, No. 02-41729, 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4, 2003). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). *See also In re Endo Int'l plc*, No. 22-22549 (JLG), 2022 WL 16935997, at *9 (Bankr. S.D.N.Y. Nov. 14, 2022) ("It is settled that a debtor can satisfy the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'") (internal citations omitted).

20.     The Debtors understand that the orderly administration of the FSP Chapter 11 Cases would not be possible in the absence of debtor-in-possession financing, which will facilitate an efficient restructuring and sale process by the FSP Debtors, which in turn may enhance both the amount and likelihood of GGC's recovery of the Outstanding Secured Obligations. Sciametta Declaration at ¶ 10; Kim Declaration, Exhibit D at ¶ 45. The proposed sale of the FSP Debtors' assets to the FSP DIP Lender contemplates the assumption of all liabilities of FSP to GGC under the Genesis MLA. Kim Declaration, Exhibit C at ¶ 16-17. Therefore, the Debtors believe that providing GGC's consent is in the best interest of the Debtors' estates under the circumstances, as it represents the best option for value-maximizing financing. Sciametta Declaration at ¶ 9; Kim Declaration, Exhibit D at ¶ 47.

21.     Second, the Debtors believe that the proposed Adequate Protection, described above, provides reasonable compensation to GGC for any diminution in the value of its asset that might result from the priming of the Lien. Sciametta Declaration at ¶ 10. The Adequate Protection

package has been negotiated between the parties and represents reasonable terms for a secured creditor whose existing lien is proposed to be primed by a superpriority DIP facility under these circumstances.  Sciametta Declaration at ¶ 10.

22.    To the extent this Court determines that approval under section 363(b) is required for GGC to provide its consent to the FSP DIP Facility, for the above reasons, the Debtors respectfully submit that the decision to provide such consent is an exercise of sound business judgment and, therefore, should be approved by this Court.

**B.      The Automatic Stay Should Be Modified to the Extent Needed to Grant the Requested Relief.**

23.    Section 362 of the Bankruptcy Code prevents third parties from taking actions affecting a debtor's property.  11 U.S.C. § 362(a).  In relevant part, section 362 prevents "any act to . . . exercise control over property of the estate," "any act to create, perfect, or enforce any lien against property against the estate", or "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures [a pre-petition claim]."  11 U.S.C. § 362(a)(3)-(5).

24.    The requested relief does not fall into any of the categories of actions prohibited by the automatic stay.  For one, the requested relief would involve the debtor exercising control over its own asset (i.e. the Lien).  In the context of the litigation proscribed by section 362(a)(1), courts have consistently held that actions brought by a debtor are not subject to the automatic stay.  *See Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994) ("This Court has recognized that the automatic stay is applicable only to proceedings 'against' the debtor." (internal citation omitted)); *Carley Cap. Grp. V. Fireman's Fund Ins. Co.*, 889 F.2d 1126, 1127 (D.C. Cir. 1989) (finding § 362(a) "does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate")(emphasis omitted); *Vitranschart, Inc. v. Levy*, No. 00-CV-3618, 2000 WL

1239081, at *5 (S.D.N.Y. Aug. 31, 2000) ("[T]he automatic stay provision applies only to claims 'against the debtor' and not to claims brought by the debtor against other parties.")(internal citations omitted); *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 499 (E.D.N.Y. 1998), aff'd, 205 F.3d 1327 (2d Cir. 2000) ("The § 362 stay provision 'does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate.'") (internal quotes omitted), *aff'd* 205 F.3d 1327 (2d Cir. 2000).

25.     Similarly, acts by the debtor outside of the context of litigation are not proscribed by the analogous subsections of 362(a) that prevent actions by other parties with respect to property of the estate.  Furthermore, to the extent that the FSP DIP Lender seeks to exercise remedies pursuant to its rights under the FSP DIP Facility Documents, such exercise of remedies would be pursuant to an affirmative agreement by GGC (by way of its consent to the FSP DIP Facility, permits exercise of remedies under appropriate circumstances by the FSP DIP Lender), and therefore also would not constitute violations of the automatic stay applicable to GGC and its assets.

26.     However, to the extent there is any doubt concerning whether the automatic stay is implicated by the Debtors' proposal to consent to the FSP DIP Facility, the Debtors request that this Court modify the stay to the extent necessary to grant the relief requested.

**C.     The Debtors Should Be Authorized to Consent to the Priming or Release of Their Liens Pursuant to the Procedures.**

27.     The Debtors further request that the Court authorize the Debtors to consent to the priming or release of their liens in de minimis property without seeking further relief from the Court, provided that the Debtors provide advance notice to counsel to the Committee and file a notice on the Court's docket with respect to the agreement by the Debtors to prime or release any such lien, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Section 105(a) of the

Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Section § 363(b), provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor must only show "a good business reason" for the use, sale or lease of estate property outside the ordinary course of business. See *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him a good business reason to grant such application).

28.    The Debtors propose the following procedures (the "Procedures") for the Debtors to consent to the priming or release of liens in their de minimis property during these Chapter 11 Cases without further authorization from the Court:

(a)    The Debtors are authorized to consent to the priming or release of any lien against assets having a value of no more than $2,000,000 as of the Petition Date per counterparty without further order of the Court, subject to the procedures set forth herein, if the Debtors determine in a reasonable exercise of their business judgement that their consent to the priming or release of any such lien is in the best interest of the Debtors' estates; provided that the aggregate value of assets with liens held by the Debtors that are primed or released in accordance with the Procedures shall not exceed $7,500,000[5] absent further order of the Court.

(b)    At least five (5) days prior to the date on which the Debtors file a Notice (as defined herein), the Debtors shall provide written notice to counsel to the Committee (which can be provided by email) of the Debtors' intent to consent to the priming of release of any lien pursuant to the Procedures.

(c)    At least five (5) business days prior to the date on which the Debtors' proposed consent to the priming or release of the lien is to take place, the Debtors shall file on the Court's docket and serve a written notice (the "Notice") identifying the collateral that is the subject of the lien to be primed or released, the applicable borrower of property that is the subject of the lien, and a general description of any significant terms of the priming or release, and otherwise

---

[5]    For the avoidance of doubt, this amount shall not include the value of assets related to the relief granted pursuant to ECF No. 77 related to the Cash Cloud DIP Facility or the relief granted pursuant to this Motion related to the FSP DIP Facility.

23-10063-shl    Doc 602    Filed 08/16/23    Entered 08/16/23 23:46:15    Main Document
Pg 18 of 27

setting forth the Debtors' proposed consent to the priming or release of such lien in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

(d) Parties objecting to a Notice must file with the Court and serve a written objection so that such objection is actually received by counsel to the Debtors and counsel to the Committee no later than five (5) business days after the Debtors serve the relevant Notice.

(e) If no objection to a Notice is timely filed within five (5) business days of the filing and service of such Notice, the Debtors are authorized to immediately consent to the priming and release of the lien.

(f) If a timely objection to a Notice is filed and not withdrawn or resolved, the Debtors shall file a notice of hearing to consider the unresolved objection. The Debtors shall not provide their consent to the priming or release of a lien until (i) such objection is overruled or withdrawn, or (ii) the Debtors' request to consent to the priming or release of such lien is specifically approved by further order of the Court. The Debtors shall be authorized to immediately consent to the priming or release of such lien upon the occurrence of (i) or (ii) of this subparagraph.

29.     The Debtors submit that the Procedures reflect their sound business judgment. Since the inception of these Chapter 11 Cases, the Debtors have expended considerable resources while seeking authority to consent to priming liens in favor of the debtor-in-possession facilities in the Cash Cloud chapter 11 proceeding and with this motion, in the FSP Chapter 11 Cases. Rather than continually seek Court approval for the priming or release of liens held by the Debtors each time as needed, the Debtors believe that it will be more efficient and cost-effective for the Court to broadly authorize the Debtors to consent to the priming or release of liens in de minimis assets in accordance with the Procedures. In addition, the Debtors further submit that the Procedures will adequately protect the interests of creditors and other interested parties because the Procedures require the Debtors to provide advance notice to counsel to the Committee and further notice filed with the Court of any proposed consent to the priming or release of liens.

15

30.    Moreover, this Court has already granted the Debtors similar relief with respect to the Cash Cloud DIP Facility, and should grant the relief requested herein for substantially similar reasons as well.  *See Order Granting Debtors' Emergency Motion for Entry of an Order Authorizing Debtor Genesis Holdco, LLC to Consent to Priming of Lien*, ECF No. 77.  In other scenarios, the Debtors may decide in their sound business judgment to release liens as part of a settlement agreement.

31.    Finally, the relief requested is akin to that sought by debtors to establish procedures to sell, transfer or abandon de minimis assets or to settle and pay de minimis claims.  Such relief is routinely granted in this court as a sound exercise of a debtor's business judgment.  *See, e.g.* Order, *In re: LATAM Airlines Group S.A*., Case No. 20-11254 (JLG) (Bank. S.D.N.Y. Dec. 17, 2020), ECF No. 1517; Order, *In re Windstream Holdings, Inc*., Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019), ECF No. 390; Order, *In re Westinghouse Electric Co*., Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. Nov. 15, 2017) ECF. No. 1761; Order, *In re Cloudeeva, Inc*., Case No. 14-24874 (KCF) (Bankr. D.N.J. Mar. 13, 2013), ECF No. 513.  A similar rationale for approving procedures to sell, transfer or abandon de minimis assets or to settle and pay de minimis claims motivates this Motion, as the Procedures will minimize costs associated with the Debtors' decisions to consent to the priming or release of liens on de minimis assets, while still protecting the interests of other parties.

32.    The Debtors have consulted with the Committee, which has represented that it has no objection to the relief sought in this Motion.

## BANKRUPTCY RULE 6004 SHOULD BE WAIVED

33.    The urgency of the Debtors' need for the relief requested, in particular the need for the effectiveness of the relief granted in the Final DIP Order, justifies immediate relief.  To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the

notice requirements under Bankruptcy Rule 6004(a), if applicable, and the fourteen (14)-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h), if applicable.

## **RESERVATION OF RIGHTS**

34.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract or lease pursuant to § 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserves their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

## **NOTICE**

35.     The Debtors have provided notice of this Motion in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **NO PRIOR REQUEST**

36.     No prior request for the relief requested herein has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, and (b) grant such other and further relief as is just and proper.

Dated:   August 16, 2023
         New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and Debtors-in-Possession*

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO CONSENT TO PRIMING OF THE DEBTORS' LIENS ON CERTAIN PROPERTY AND (II) AUTHORIZING AND APPROVING PROCEDURES FOR THE DEBTORS TO CONSENT TO THE PRIMING OR RELEASE OF LIENS ON OTHER DE MINIMIS ASSETS**

Upon consideration of the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Consent to the Priming of the Debtors' Liens on Certain Property and (II) Authorizing and Approving Procedures for the Debtors to Consent to the Priming or Release of Liens on Other De Minimis Assets* (the "Motion")[2] filed by the above-captioned debtors (the "Debtors"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided, and upon the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, ECF No. 17 (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, ECF No. 19 (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, ECF No. 28 (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations"), as well as the *Declaration of Joseph J. Sciametta, in Support of Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Consent to the Priming of the Debtors' Liens on Certain Property and (II) Authorizing and Approving Procedures for the Debtors to Consent to the Priming or Release of Liens on Other De Minimis Assets* (the "Sciametta Declaration); and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.        The Motion is GRANTED on a final basis to the extent set forth herein.

2.        GGC is authorized to provide its consent to the FSP DIP Facility, including its superpriority priming lien and the reduction in priority of the Lien, in exchange for the provision

of adequate protection substantially in the form described in the Motion, in respect of such reduction in lien priority as required by the FSP DIP Facility Documents.

3.       The automatic stay is hereby modified to the extent necessary to permit GGC to provide its consent to the FSP DIP Facility, and to permit the FSP DIP Lender to exercise remedies with respect to collateral under the Lien pursuant to the FSP DIP Facility Documents.

4.       The automatic stay is hereby modified to the extent necessary to permit the Debtors to provide their consent to the priming or release of certain other liens in certain property; provided that such consent is provided in accordance with the following procedures (the "Procedures"):

(a) The Debtors are authorized to consent to the priming or release of any lien against assets having a value of no more than $2,000,000 as of the Petition Date per counterparty without further order of the Court, subject to the procedures set forth herein, if the Debtors determine in a reasonable exercise of their business judgement that their consent to the priming or release of any such lien is in the best interest of the Debtors' estates.

(b) At least five (5) days prior to the date on which the Debtors file a Notice (as defined herein), the Debtors shall provide written notice to counsel to the Committee (which can be provided by email) of the Debtors' intent to consent to the priming of release of any lien pursuant to the Procedures.

(c) At least five (5) business days prior to the date on which the Debtors' proposed consent to the priming or release of the lien is to take place, the Debtors shall file on the Court's docket and serve a written notice (the "Notice") identifying the collateral that is the subject of the lien to be primed or released, the applicable borrower of property that is the subject of the lien, and a general description of any significant terms of the priming or release, and otherwise setting forth the Debtors' proposed consent to the priming or release of such lien in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

(d) Parties objecting to a Notice must file with the Court and serve a written objection so that such objection is actually received by counsel to the Debtors and counsel to the Committee no later than five (5) business days after the Debtors serve the relevant Notice.

(e) If no objection to a Notice is timely filed within five (5) business days of the filing and service of such Notice, the Debtors are authorized to immediately consent to the priming and release of the lien.

(f) If a timely objection to a Notice is filed and not withdrawn or resolved, the Debtors shall file a notice of hearing to consider the unresolved objection. The Debtors shall not provide their consent to the priming or release of a lien until (i) such objection is overruled or withdrawn, or (ii) the Debtors' request to consent to the priming or release of such lien is specifically approved by further order of the Court. The Debtors shall be authorized to immediately consent to the priming or release of such lien upon the occurrence of (i) or (ii) of this subparagraph.

5.      Notwithstanding anything to the contrary in this Order, the aggregate value of assets with liens held by the Debtors that are primed or released in accordance with the Procedures shall not exceed $7,500,000 absent further order of the Court (the "Aggregate Cap"). For the avoidance of doubt, the Aggregate Cap shall not include the value of assets related to the relief granted pursuant to ECF No. 77 related to the Cash Cloud DIP Facility or the relief granted pursuant to this Order related to the FSP DIP Facility.

6.      Notwithstanding anything to the contrary in this Order, no lien on property of any entity that is an Insider (as that term is defined under 11 U.S.C. 101(31)) of the Debtors shall be primed or released without an order of this Court on separate motion.

7.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion.

8.      This Order shall be immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

10.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2023
White Plains, New York

_____
The Honorable Sean H. Lane
United States Bankruptcy Judge