UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| | Jointly Administered |

**DECLARATION OF JOSEPH J. SCIAMETTA IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO CONSENT TO PRIMING OF THE DEBTORS' LIENS ON CERTAIN PROPERTY AND (II) AUTHORIZING AND APPROVING PROCEDURES FOR THE DEBTORS TO CONSENT TO THE PRIMING OR RELEASE OF LIENS ON OTHER DE MINIMIS ASSETS[2]**

I, Joseph J. Sciametta, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.    I am a Managing Director with Alvarez & Marsal North America, LLC ("A&M"), a restructuring advisory services firm specializing in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services and financial and operational restructuring, and a financial advisor to the Debtors.

2.    Since the Debtors engaged A&M in November of 2022, I have worked closely with the Debtors and other advisors. I have over twenty years of distressed company advisory experience. Through roles in both senior management and as a restructuring advisor, I have substantial experience helping financially distressed companies stabilize their financial condition, analyze their operations, and develop business plans to accomplish the necessary restructuring of

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

their operations and finances. I have advised clients in numerous major bankruptcy cases, including Lehman Brothers Holdings, Inc., Centric Brands, Inc., Nielsen & Bainbridge, LLC., Bristow Group, Inc., PES Holdings, LLC, Lucky's Market Parent Company, LLC, USA Discounters, LTD, Aleris International Inc., and Interstate Bakeries Corp. I received my bachelor's degree and Master of Business Administration from Fairfield University.

3. I am generally familiar with the operations and affairs of the Debtors. I submit this declaration (the "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Consent to the Priming of the Debtors' Liens on Certain Property and (II) Authorizing and Approving Procedures for the Debtors to Consent to the Priming or Release of Liens on Other De Minimis Assets* (the "Motion").

4. Except as otherwise noted herein, the facts set forth in this Declaration are based upon my personal knowledge, information provided to me by the Debtors' representatives or advisors, my discussions with employees of A&M working directly with me or under my supervision or direction, or my review of relevant documents, including the Debtors' books and records maintained in the ordinary course of their business. In making this Declaration, I have relied in part on information and material that the Debtors' representatives and advisors have gathered, prepared, verified and provided to me, for my benefit, in preparing this Declaration. I am not being compensated for this testimony other than through payments received by A&M in its capacity as financial advisor to the Debtors. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

5. I am aware that on the FSP Petition Date, the FSP Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. In my experience, in the event a borrower entity such as FSP faces a change in financial circumstances, it is common practice to approach its

existing secured lenders to request their consent to enter into debtor-in-possession financing. This is particularly true where the borrower entity is seeking to reorganize or sell itself as a going concern. In such a scenario, it is common practice for a creditor entity to consent to the priming of its lien by the DIP facility.

6. The FSP Debtors are owing to GGC under the Genesis MLA in an aggregate principal amount of approximately 176,415 FIL, plus accrued but unpaid interest, fees, costs, and expenses incurred by GGC under the Genesis Loan Documents (all amounts owing or outstanding under the Genesis Loan Documents, whether or not contingent, the "Outstanding Secured Obligations"). The Debtors estimated the outstanding obligations under the Genesis MLA as of the Debtors' Petition Date to be approximately 183,525.0601066 FIL, as included in GGC's schedules and statements. I understand that pursuant to the Genesis MLA, FSP granted GGC a first priority security interest in, and a lien upon, the Genesis Collateral.

7. I understand the terms of the FSP DIP Facility include a superpriority lien on the Genesis Collateral, which would have the effect of priming GGC's lien on the Genesis Collateral and therefore require the consent of GGC. Based on my experience, such terms are typical in the context of debtor-in-possession financing.

8. I understand that on the FSP Petition Date, FSP filed a motion to sell its assets via a credit bid of the obligations under the FSP DIP Facility. I further understand that the proposed sale contemplates the assumption of all liabilities of FSP to GGC under the Genesis MLA.

9. In my capacity as financial advisor to the Debtors, I believe that the proposed FSP DIP Facility, and contemplated sale, could facilitate an efficient process by the FSP Debtors, which could in turn enhance GGC's recovery of the Outstanding Secured Obligations. I believe that GGC's consent to the priming of its lien by the superpriority lien granted by the FSP DIP Facility

represents a necessary step to a potential recovery under the Outstanding Secured Obligations under the circumstances.

10. Furthermore, I believe that the proposed Adequate Protection, as described in the Motion, provides reasonable compensation to GGC for any diminution in the value of its asset that might result from the priming of the Lien. The proposed Adequate Protection package has been negotiated between the parties at an arms-length basis and represents reasonable terms for a secured creditor whose existing lien is proposed to be primed by a superpriority debtor-in-possession facility under these circumstances.

11. I understand the Debtors have obtained the approval of the Special Committee of the Board of Directors of Holdco regarding the relief requested in the Motion as well, including the Adequate Protection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 16, 2023
New York, NY

/s/ *Joseph J. Sciametta*
Name:  Joseph J. Sciametta
Title:  Managing Director
Alvarez & Marsal
*Financial Advisor to the Debtors*