**Hearing Date: September 6, 2023 at 2:00 p.m.(Prevailing Eastern Time)**
**Objection Deadline: August 28, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Genesis Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF GENESIS DEBTORS' MOTION PURSUANT TO FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE 9019(A) FOR ENTRY**
**OF AN ORDER APPROVING SETTLEMENT AGREEMENT**

**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors-in-possession ("Genesis Debtors"), by and through their undersigned counsel, filed a motion (the "Motion") for entry of an order, substantially in the form attached thereto as **Exhibit A** (the "Proposed Order"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of a settlement and compromise among (i) the Genesis Debtors and their non-debtor affiliates and subsidiaries, and (ii) FTX Trading Ltd., its affiliated debtors and debtors-in-possession in the jointly administered Chapter 11 proceedings pending in the United States Bankruptcy Court for the District of Delaware, Case No. 22-11068 (the "FTX Debtors"), and the FTX Debtors' non-debtor affiliates and subsidiaries.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing on the Motion will be held via Zoom before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street,

---

[1]     The Genesis Debtors in the above-captioned cases, along with the last four digits of each Genesis Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of the above-captioned cases, the service address for the Genesis Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

White Plains, NY 10601 on **September 6, 2023 at 2:00 p.m. (Eastern Time)** (the "Hearing Date").

      **PLEASE TAKE FURTHER NOTICE** that any responses or objections, if any, to the Motion or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **August 28, 2023 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline") and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order"). The Debtors shall have until September 1, 2023 at 11:59 p.m. (prevailing Eastern Time) (the "Reply Deadline") to file their reply, if any.

      **PLEASE TAKE FURTHER NOTICE** that if no written objections are timely filed and served with respect to the Motion, the Genesis Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit A to the Motion, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Genesis Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

      **PLEASE TAKE FURTHER NOTICE** that the Hearing may affect your rights. Please read the Motion carefully and, if you have one available, discuss it with your attorney.  (If you do not have an attorney, you should consider consulting with one.)

      **PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Genesis Debtors.

Dated:    August 16, 2023
          New York, New York

/s/ Jane VanLare
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for the Genesis Debtors
and Debtors-in-Possession*

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Genesis Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al*.,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### GENESIS DEBTORS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(A) FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT WITH FTX DEBTORS

---

[1]     The Genesis Debtors in the Genesis Bankruptcy Proceedings along with the last four digits of each Genesis Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of the Genesis Bankruptcy Proceedings, the service address for the Genesis Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Genesis Debtors") and the above-captioned cases, the "Genesis Bankruptcy Proceedings"), by and through their undersigned counsel, hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of a settlement and compromise by and among (i) the Genesis Debtors and certain direct and indirect subsidiaries of Holdco that are not debtors in these Genesis Bankruptcy Proceedings, including GGC International Limited ("GGCI"), Genesis Bermuda Holdco Limited, Genesis Global Markets Limited, Genesis UK Holdco Limited, Genesis Custody Limited, Genesis Global Assets, LLC, GGA International Limited, Genesis Global Trading, Inc., Genesis Global Labs, LLC, Genesis Asia (Hong Kong) Limited, and all other wholly-owned or controlled subsidiaries (collectively, with the Genesis Debtors, the "Genesis Entities") and (ii) FTX Trading Ltd. ("FTX"), its affiliated debtors and debtors-in-possession in the chapter 11 cases being jointly administered under the caption *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.), including but not limited to Alameda Research LLC, Alameda Research Ltd. (together with Alameda Research LLC, "Alameda"), West Realm Shires Inc., West Realm Shires Services Inc., and LedgerPrime LLC (the "FTX Debtors"), and the FTX Debtors' non-debtor subsidiaries solely to the extent of the FTX Debtors' authority to bind such entities as of the date hereof, if any (together with the FTX Debtors, the "FTX Entities" and the FTX Entities, together with the Genesis Entities, each a "Party" and collectively the "Parties"). In support of this Motion, the Genesis Debtors submit the *Declaration of A. Derar Islim in Support of the Genesis Debtors' Motion Pursuant to Federal Rule*

*of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement with FTX Debtors* (the "Islim Declaration"), filed contemporaneously herewith.[1]

## I.   PRELIMINARY STATEMENT

1.   The Genesis Debtors seek the Court's approval to effectuate a settlement agreement with the FTX Debtors, substantially in the form attached hereto as **Exhibit B** (the "Settlement Agreement"), to resolve, on a global basis, all claims asserted or held by the FTX Entities against the Genesis Entities (the "FTX Claims"), and all claims asserted or held by the Genesis Entities against the FTX Entities (the "Genesis Claims").  The settlement will, among other things, significantly smooth the path to confirmation of the Genesis Debtors' chapter 11 plan of reorganization (the "Genesis Plan"), as well as eliminating the risks, expenses, and uncertainty associated with protracted litigation among the FTX Debtors, the Genesis Debtors, and GGCI.

2.   In summary, the Settlement Agreement provides that (a) Alameda Research Ltd. shall receive an allowed general unsecured claim against GGC in the amount of $175,000,000 (the "Allowed Alameda Claim"); (b) the Allowed Alameda Claim shall be entitled to receive pro rata distributions with all other allowed general unsecured claims pursuant to the Genesis Plan and shall be entitled to all treatment afforded to allowed general unsecured claims in its respective class under the Genesis Plan, subject to the terms of the Settlement Agreement; (c) the FTX Entities and the Genesis Entities shall not object to any chapter 11 plan in the other Parties' chapter 11 cases that is not inconsistent with the terms and conditions of the Settlement Agreement; (d) the FTX Debtors and the Genesis Debtors shall withdraw with prejudice (i) the Lift Stay Motion and the Estimation Motion, respectively (both as defined herein), and (ii) the FTX Proofs of Claim

---

[1]   All terms not defined herein shall have the meaning ascribed to them in the Settlement Agreement.

(as defined herein) and the Genesis Proofs of Claim, respectively; and (e) each of the FTX Entities and each of the Genesis Entities shall fully, unconditionally, and irrevocably release each other from any Claim (as defined herein) that such Party may have against the other Party.[2]

3.     The Settlement Agreement is the product of extensive negotiations among the Genesis Debtors and the FTX Debtors and their respective advisors.  Entry into the Settlement Agreement is an exercise of the sound business judgment of the Genesis Debtors and has been approved by the Special Committee of the Board of Directors of Genesis Global Holdco, LLC (the "Special Committee").  The Special Committee, following consultation with the Debtors' legal and financial advisors, has considered the risks associated with litigation of the FTX Claims and the Genesis Claims and has concluded that the Settlement Agreement is in the best interests of the Genesis Debtors' estates and their creditors.

4.     Accordingly, and for all of the reasons set forth below, the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Genesis Debtors' estates.  The Genesis Debtors respectfully request that the Court grant the relief requested in this Motion and approve the Settlement Agreement.

## II.     JURISDICTION AND VENUE

5.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]     Any summary of the Settlement Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Settlement Agreement.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

3

## III.    BACKGROUND

### A.    The Chapter 11 Cases

6.    On January 19, 2023, each of the Genesis Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date"). The Genesis Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  The Genesis Bankruptcy Proceedings have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).  *See Joint Administration Order* (ECF No. 37).  No trustee or examiner has been appointed in the Genesis Bankruptcy Proceedings.  The Official Committee of Unsecured Creditors for the Genesis Bankruptcy Proceedings (the "Genesis Committee") was appointed by the United States Trustee for Region 2 on February 3, 2023, pursuant to Section 1102(a) of the Bankruptcy Code. *See Notice of Appointment of Official Committee of Unsecured Creditors* (ECF No. 55).

### B.    History of Dealings Between the Parties

7.    The Genesis Debtors' operations include lending and borrowing services for digital assets.  GGCI, and other non-Genesis Debtor affiliates, offer trading services.  As part of these operations, prior to the Petition Date, the Genesis Debtors and GGCI engaged in various transactions with the FTX Debtors, which managed a collection of cryptocurrency exchanges, trading platforms and investment funds, including one of the world's largest cryptocurrency exchanges in FTX.com, as well as Alameda, one of the largest cryptocurrency investment funds at the time.  As relevant to the Motion, GGCI maintained a customer account on the FTX.com exchange, in which it regularly deposited and withdrew digital assets, and Debtor Genesis Global Capital LLC ("GGC") engaged in a large number of loan transactions with Alameda.

4

8.      GGC's dealings with Alameda were governed by various contractual agreements, including master lending agreements ("MLAs"),[3] which defined general loan terms, collateral requirements, and loan repayment procedures pursuant to which GGC and Alameda engaged in a large number of complex transactions involving fiat currency and digital assets between February 6, 2019 and November 11, 2022.

9.      Under the MLAs, when GGC loaned funds or digital currency to Alameda, Alameda was required to maintain a certain level of collateral with GGC (also generally in the form of fiat currency or digital assets) and to pay a financing fee (as specified in the relevant loan term sheet) which would accrue on a daily basis and become payable in-kind on a monthly basis (upon the delivery of a monthly invoice) until the loan was repaid.  The collateral provided pursuant to the MLAs and relevant term sheets served as security for Alameda's obligations under the MLAs.  In the event that the value of the total amount of collateral maintained with GGC fell below a specified percentage of the total value of the loaned assets outstanding under the MLAs, Alameda was required, at GGC's request, to provide additional collateral to GGC.  When Alameda repaid a loan to GGC, GGC was required to return certain collateral that had been provided by

---

[3]      Specifically, on February 6, 2019, GGC, as lender, and Alameda Research LLC, as borrower, entered into a master loan agreement (the "February 2019 MLA"), which set forth the terms and conditions for GGC's and Alameda's lending and borrowing relationship.  On May 9, 2019, GGC and Alameda Research LLC entered into another master loan agreement specifying the terms of the lending and borrowing relationship, but where GGC was defined as the borrower and Alameda Research LLC was defined as the lender (the "May 2019 MLA").  On December 22, 2020, Alameda Research LLC, Alameda Research Ltd., and GGC entered into an Assignment and Assumption of Master Digital Currency Loan Agreement (the "First A&A Agreement").  Under the First A&A Agreement, Alameda Research LLC assigned its rights and obligations under the February 2019 MLA to Alameda Research Ltd. On December 22, 2020, GGC as lender, and Alameda Research Ltd., as borrower, entered into an amended and restated version of the February 2019 MLA (the "A&R MLA").  On June 23, 2022, Alameda Research LLC, Alameda Research Ltd., and GGC entered an Assignment and Assumption of Master Loan Agreement (the "Second A&A Agreement").  Under the Second A&A Agreement, Alameda Research LLC assigned its rights and obligations under the May 2019 MLA to Alameda Research Ltd.

Alameda in connection with that loan.  Because GGC could also borrow funds from Alameda pursuant to the MLAs, the same process also occurred in reverse.

10.     Between August 13 and November 11, 2022 (the "FTX Preference Period"), GGC provided cryptocurrency and fiat loans to Alameda, and Alameda provided cryptocurrency and fiat loans to GGC; in connection with those loans, assets held as collateral also transferred between GGC and Alameda.  During that same time period, GGCI deposited and withdrew digital assets from its customer wallet on FTX.com.

11.     On November 11, 2022 (the "FTX Petition Date"), the FTX Debtors commenced their chapter 11 proceedings in the United States Bankruptcy Court for the District of Delaware.  GGCI was appointed as a member of the Official Committee of Unsecured Creditors in the FTX Debtors' chapter 11 cases (the "FTX Bankruptcy Proceedings").

### C.    The FTX Claims Against the Genesis Debtors and the Lift Stay Motion

12.     On May 3, 2023, the FTX Debtors filed the *Motion of FTX Trading Ltd. and its Affiliated Debtors for an Order Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001*, ECF No. 289 (the "Lift Stay Motion") seeking to lift the automatic stay in the Genesis Bankruptcy Proceedings, and to permit the FTX Debtors to bring preference actions in the FTX Bankruptcy Proceedings in connection with (as alleged in the Lift Stay Motion) approximately $3.673 billion in alleged transfers made to the Genesis Debtors during the FTX Preference Period.[4]

---

[4]     Specifically, the FTX Debtors alleged that during the FTX Preference Period, the Genesis Debtors received the following avoidable transfers from the FTX Debtors: (i) repayments of loans by Alameda in the aggregate amount of approximately $1.8 billion; (ii) collateral pledges by Alameda in the aggregate amount of approximately $273 million; and (iii) assets withdrawn from the FTX.com exchange in the aggregate amount of approximately $1.6 billion. *See* Lift Stay Motion ¶ 1.

13.     On May 22, 2023, FTX Trading Ltd. filed Claim No. 415 against Holdco, Claim No. 419 against Genesis Asia Pacific, Ltd. ("GAP"), and Claim No. 426 against GGC; Alameda Research LLC filed Claim No. 422 against Holdco, Claim No. 420 against GAP, and Claim No. 513 against GGC; Alameda Research Ltd. filed Claim No. 512 against Holdco, Claim No. 457 against GAP, and Claim No. 508 against GGC; West Realm Shires Inc. filed Claim No. 516 against Holdco, Claim No. 463 against GAP, and Claim No. 438 against GGC; West Realm Shires Services Inc. filed Claim No. 465 against Holdco, Claim No. 432 against GAP, and Claim No. 515 against GGC (the proofs of claim collectively, the "FTX Proofs of Claim").

14.     The FTX Proofs of Claim collectively assert claims totaling $3,876,473,714, comprising (i) $1,819,183,169 in loan repayments allegedly made by Alameda to GGC pursuant to the MLAs during the FTX Preference Period; (ii) $272,690,086 of collateral allegedly pledged by Alameda to GGC pursuant to the MLAs during the FTX Preference Period; (iii) $143,615,599 of collateral allegedly pledged by Alameda to GGC pursuant to the MLAs prior to the FTX Preference Period; and (iv) $1,640,984,160 of assets allegedly withdrawn by the Genesis Debtors from the FTX.com exchange during the FTX Preference Period.

15.     On June 8, 2023, the Genesis Debtors filed the *Debtors' Objection to Motion of FTX Trading Ltd. and its Affiliated Debtors for an Order Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001* (ECF No. 405) (the "Lift Stay Objection") which was joined by the Genesis Committee and the Genesis Ad Hoc Group.  *See Joinder and Reservation of Rights of the Official Committee of Unsecured Creditors to Debtors' Objection to Motion of FTX Trading Ltd. and its Affiliated Debtors for an Order Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001* (ECF No. 417); *Joinder and Reservation of Rights of the Ad Hoc Group to Debtors' Objection to Motion of FTX*

*Trading Ltd. and its Affiliated Debtors for an Order Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001* (ECF No. 412). The Lift Stay Objection argued that lifting the automatic stay in the Genesis Bankruptcy Proceedings was inappropriate under the circumstances.

16.     On June 13, 2023, the FTX Debtors filed the *Reply of FTX Trading Ltd. and its Affiliated Debtors for an Order Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001* (ECF No. 428), in support of their request that the Court lift the automatic stay to allow the FTX Debtors to bring the preference actions underlying the FTX Proofs of Claim against the Genesis Debtors in the FTX Bankruptcy Proceedings.

### D.     The Estimation Motion

17.     On June 1, 2023, the Genesis Debtors filed the *Motion to Establish Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the Debtors Under Bankruptcy Code Sections 105(a) and 502(c) and Bankruptcy Rule 3018* (ECF No. 373) (the "Estimation Motion"). By the Estimation Motion, the Genesis Debtors proposed to establish procedures to estimate the FTX Claims in order to avoid undue delay to the Genesis Debtors' reorganization, and sought to estimate the FTX Claims at $0.

18.     On June 8, 2023, the FTX Debtors filed the *FTX Debtors' Objection to Genesis Debtors' Motion to Establish Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the Genesis Debtors Under Bankruptcy Code Sections 105(a) and 502(c) and Bankruptcy Rule 3018* (ECF No. 404) (the "Estimation Objection"), which was joined by the FTX Committee. *See Objection of the FTX Committee and Joinder to the FTX Debtors' Objection to Motion to Establish Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the Genesis Debtors Under Bankruptcy Code Sections 105(a)*

8

and *502(c) and Bankruptcy Rule 3018* (ECF No. 406). The Estimation Objection argued that estimating the FTX Claims was inappropriate under the circumstances.

19.     On June 13, 2023, the Genesis Debtors filed the *Debtors' Reply in Support of Motion to Establish Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the Genesis Debtors Under Bankruptcy Code Sections 105(a) and 502(c) and Bankruptcy Rule 3018* (ECF No. 430), reiterating their request that the Court estimate the FTX Claims.

20.     On June 14, 2023, the Genesis Debtors filed the *Notice of Debtors' Revised Proposed Order Establishing Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the Debtors Under Bankruptcy Code Sections 105(a) and 502(c) and Bankruptcy Rule 3018* (ECF No. 435). On July 5, 2023, the Genesis Debtors filed a further *Notice of Genesis Debtors' Revised Proposed Order Establishing Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the Debtors Under Bankruptcy Code Sections 105(a) and 502(c) and Bankruptcy Rule 3018* (ECF No. 479).

21.     On June 15, 2023, July 6, 2023, and July 20, 2023, the Lift Stay Motion and the Estimation Motion (together, the "Motions") came before the Court; at each successive hearing, the Court ordered that the Motions be continued to a later hearing. In addition, the Court encouraged the Parties to begin exchanging discovery materials, which they have done in the intervening weeks.

### E.     The Genesis Claims Against FTX and Alameda

22.     The Genesis Entities have asserted certain claims against the FTX Debtors, including (as described further below) but not limited to, an approximately $176 million customer claim against FTX Trading Ltd., an approximately $140 million avoidance claim against Alameda,

an approximately $40 million outstanding loan claim against Alameda, and, to the extent of any allowed FTX Claim, claims under section 502(h) of the Bankruptcy Code. Such claims are reflected in the proofs of claim filed by Genesis Entities in the FTX Bankruptcy Proceedings on June 30, 2023.

23. The claims filed in the FTX Bankruptcy Proceedings by Holdco and GAP are asserted in the amount of $3,876,473,714.00 and are in the nature of protective claims in an amount equal to the amount that Holdco and GAP, respectively, may be determined to have received as avoidable transfers.

24. The claims filed in the FTX Bankruptcy Proceedings by GGC arise under the MLAs, and amount to $191,308,082.31, comprising: (a) $38,922,127.31[5] in respect of outstanding principal loan amounts owing to GGC after GGC's November 8, 2023 foreclosure on the collateral securing the balance of loans that became due and payable as of that date (which collateral was valued at approximately $111,875,363.64 compared to an aggregate principal amount due and owing of $150,797,490.95, leading to a $38,922,127.31 deficiency claim); (b) certain Loan Fees and Late Fees (as defined in the A&R MLA)[6]; and (c) claims for preferential transfers to Alameda in the aggregate amount of no less than $139,600,000.

25. GGC has also filed protective claims in an amount equal to the amount of its costs and expenses related to enforcing its rights under the A&R MLA (which is currently in an undetermined amount), has reserved the right to assert a claim against Alameda in an undetermined amount under Section XXV of the A&R MLA (which provides that Alameda is

---

[5]    To the extent in-kind distributions are available to creditors of the FTX Debtors, GGC reserves the right to participate in such in-kind distributions.

[6]    Specifically, (i) 136.26 BTC, (ii) 286,289.8 USDP, (iii) 6,643.59 ZEC, (iv) 882,160.1 MATIC, (v) 64,145.3 LINK, (vi) 10,646.34 LTC and (vii) $12,785,955 USD (all figures as of June 30, 2023).

required to hold GGC harmless and indemnify GGC for any claims, demands, losses, expenses or liabilities that it may sustain or incur or that may be asserted against GGC by a third party arising out of Lender's lending of Digital Currency to Alameda), has reserved the right to assert a claim under Section IX, the guarantee provision of the A&R MLA, in an amount equal to Alameda's obligations under the A&R MLA, and has reserved the right to assert a claim in an undetermined amount for its costs and expenses (including reasonable legal fees and expenses) incurred by GGC in the enforcement of Alameda Research LLC's guarantee obligations, pursuant to Section IX(g) of the A&R MLA.

26.     The Genesis Entities have also asserted various common law claims against the FTX Debtors, which include fraudulent misrepresentation, fraudulent inducement, breach of contract and any other applicable causes of action as a result of the actions of Alameda and certain other FTX Debtors.

27.     In addition, GGCI has asserted a claim against FTX Trading Ltd. with respect to cash and cryptocurrencies in the approximate amount of at least $176 million, related to deposits of digital assets that GGCI made in its customer account on the FTX.com exchange (the "GGCI Claim"), which GGCI asserts corresponds to a contingent claim listed on the FTX Debtors' amended schedules of assets and liabilities in the amount of approximately -$22 million.

## IV.    THE SETTLEMENT AGREEMENT

### A.    The Settlement Negotiations

28.     Subsequent to the filing of the Lift Stay Motion and the Estimation Motion, the Parties commenced negotiations to explore the possibility of a settlement agreement.  Islim Decl. at ¶ 5.  In the succeeding weeks, in parallel with continued efforts to narrow the issues to be considered by this Court in the proposed estimation proceeding, the Parties undertook to discuss a

potential global resolution of all claims by and among the FTX Entities and the Genesis Entities.

*Id.*

29.    After numerous exchanges of settlement offers between the Parties and telephone conversations between the Parties' respective counsel, the Parties reached a deal in principle on or around Thursday, July 20, 2023.  Islim Decl. at ¶ 7.

### B.    The Principal Terms of the Settlement Agreement

30.    The Settlement Agreement provides as follows:

a.    **Allowed Alameda Claim**:  On the Settlement Effective Date, Alameda Research Ltd. shall have an allowed general unsecured claim against GGC in the amount of $175,000,000 (the Allowed Alameda Claim, defined *supra*), which claim shall be freely transferable, subject to section 1(d) of the Settlement Agreement.  The Genesis Entities shall not seek to subordinate, recharacterize, or otherwise seek any alternative treatment of the Allowed Alameda Claim other than as provided in the Settlement Agreement.

b.    **Waiver of All Other Claims**: As of the Settlement Effective Date, (i) none of the FTX Entities shall have or be entitled to assert any Claim (as defined in 11 U.S.C. § 101(5), a "Claim") against the Genesis Entities other than the Allowed Alameda Claim, and (ii) none of the Genesis Entities shall have or be entitled to assert any Claim against the FTX Entities, in each case of (i) and (ii) including any Claim pursuant to 11 U.S.C. § 502(h).  As of the Settlement Effective Date, except for the Allowed Alameda Claim, all of the FTX Proofs of Claim shall be deemed expunged in the Genesis Bankruptcy Proceeding and the Genesis Proofs of Claim shall be deemed expunged in the FTX Bankruptcy Proceeding.

c.    **Pro Rata Distributions**:  The Allowed Alameda Claim shall be entitled to receive pro rata distributions (in the form of fiat) with all other allowed general unsecured claims pursuant to any chapter 11 plan that becomes effective in the Genesis Bankruptcy Proceedings and shall be entitled to all treatment afforded to allowed general unsecured claims in its respective class and shall not be separately classified from other general unsecured claims owed fiat against GGC (other than Claims of Gemini lenders, which may be separately classified, and Claims separately classified solely for the purposes of administrative convenience, if any) or otherwise treated in any disparate or discriminatory way as compared to other general unsecured claims against GGC under the Genesis Plan, provided that (i) the Parties may mutually agree in writing that the consideration comprising the distributions on account of the Allowed Alameda Claim may be in a form other than cash, and (ii) in the event that the Genesis Plan includes an early payout option at a discount (the "Early Payout Option"), the Early Payout Option shall not be available with respect to the Allowed Alameda Claim unless the Early Payout Option is otherwise generally available to all similarly situated holders of allowed general unsecured claims in amount equal to or greater than the Allowed Alameda Claim.  Notwithstanding the foregoing, in the event the Genesis Plan includes the Early Payout Option and it is not available to the Allowed Alameda

12

Claim, Alameda Research Ltd. reserves its rights and shall be entitled to object to the Early Payout Option on the grounds that it constitutes unfair discrimination and the Genesis Entities reserve their rights and shall be entitled to argue that the Early Payout Option does not constitute unfair discrimination.

d.    **Transfers**:  Effective as of the date of the Settlement Agreement, the Allowed Alameda Claim shall be freely transferable (in whole or in part), provided that any transferee of any portion of, or interest in, the Allowed Alameda Claim (each, a "Transferee") shall, as a condition to such transfer (each, a "Transfer"), agree to be bound by the terms of the Settlement Agreement with respect to the acquired portion of the Allowed Alameda Claim, mutatis mutandis, by executing and delivering to the Genesis Entities a joinder agreement substantially in the form of Exhibit B to the Settlement Agreement (each, a "Joinder").  Upon compliance with the foregoing, Alameda Research Ltd. shall be deemed to relinquish its rights (and be released from its obligations, except for any claim for breach of the Settlement Agreement that occurs prior to such transfer) under the Settlement Agreement with respect to the acquired portion of the Allowed Alameda Claim and to the extent of such transferred rights and obligations.  Notwithstanding anything to the contrary herein, entry into a Joinder shall not require or otherwise cause a Transferee to release any Claims against any Party other than any Claims related to or arising out of the FTX Proofs of Claim or the Genesis Proofs of Claim.

e.    **Covenant Not to Object to Genesis Plan**:  As of the Settlement Effective Date, none of the FTX Entities shall object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the Genesis Debtors, solely to the extent that such Genesis Plan is consistent with the terms and conditions of the Settlement Agreement; *provided that* nothing in the Settlement Agreement (and neither a vote to accept a Genesis Plan nor the acceptance of a Genesis Plan) shall be construed to limit the FTX Entities' rights to appear as parties-in-interest in any matter to be adjudicated in the Genesis Bankruptcy Proceedings, so long as such appearance and the positions advocated in connection therewith are not inconsistent with the Settlement Agreement and are not for the purposes of hindering, delaying, or preventing the consummation of the Settlement Agreement.

f.    **Covenant Not to Object to FTX Plan**:  As of the Settlement Effective Date, none of the Genesis Entities shall object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the FTX Debtors, solely to the extent that such plan is consistent with the terms and conditions of the Settlement Agreement (such plan, an "FTX Plan"); *provided that* nothing in the Settlement Agreement (and neither a vote to accept an FTX Plan nor the acceptance of an FTX Plan) shall be construed to limit any Genesis Entity's right to appear as a party-in-interest in any matter to be adjudicated in the FTX Bankruptcy Proceedings, so long as such appearance and the positions advocated in connection therewith are not inconsistent with the Settlement Agreement and are not for the purposes of hindering, delaying, or preventing the consummation of the Settlement Agreement.

g.    **Rule 9019 Motions**:  Effective as of the date of execution of the Settlement Agreement by each Party, each Party agrees to seek prompt approval of the Settlement Agreement

13

under Federal Rule of Bankruptcy Procedure 9019, through a motion in form and substance reasonably acceptable to the other Party, in each of the Genesis Bankruptcy Proceeding and FTX Bankruptcy Proceedings, as applicable (together, the "Rule 9019 Motions") and otherwise agrees to cooperate and take such actions as are reasonably necessary (including in the event that an objection or other opposition to its respective Rule 9019 Motion is filed) to obtain court approval of, and authority to enter into, the Settlement Agreement, and entry of an order approving the foregoing, and to effect their terms; and

h. **Withdrawal of Motions and Claims**:   No later than three (3) business days after the Settlement Effective Date, the FTX Debtors and the Genesis Debtors, as applicable, shall withdraw with prejudice (i) the Lift Stay Motion and the Estimation Motion, respectively, and (ii) the FTX Proofs of Claim and the Genesis Proofs of Claim, respectively.

i. **Mutual Release**:   On the Settlement Effective Date, each of the FTX Entities, on the one hand, and each of the Genesis Entities, on the other hand, on behalf of itself, and each and all of its and its respective past, present and future agents, heirs, executors, administrators, conservators, predecessors, successors and assigns, (all such releasing persons and entities collectively, the "Releasing Parties"), does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge each other and their respective past, present and future agents, heirs, executors, administrators, conservators, successors and assigns (all such released persons and entities collectively, the "Released Parties") from, against, and in respect of any and all past, present and future Claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, that such Party may have or may have against any other Party since the beginning of time, under, arising out of or in connection with the FTX Proofs of Claim, the Genesis Proofs of Claim or any other Claims that could be asserted, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with any of the foregoing, in all cases other than the Allowed Alameda Claim and as otherwise provided in the Settlement Agreement.

j. **Exceptions to Mutual Release**:

i.   Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect their respective obligations under this Settlement Agreement or the Parties' respective rights to bring any Claims or other causes of action arising out of or in connection with a breach of this Settlement Agreement. Each of the Genesis Entities and the FTX Entities submits to the exclusive jurisdiction of the Delaware Bankruptcy Court and the New York Bankruptcy Court (as defined in this Settlement Agreement), in each case, solely for any dispute arising out of, or based upon such Party's breach of this Settlement Agreement;

ii.   Notwithstanding any other provision of this Settlement

14

Agreement, any affiliates or subsidiaries of the Digital Currency Group other than the Genesis Entities (the "DCG Entities") are not Released Parties or Releasing Parties, and the Parties do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, all Claims or other causes of action against any DCG Entity including any and all Claims and causes of action alleged in or related to that certain action styled *Alameda Research Ltd. v. Grayscale Investments, LLC, Digital Currency Group, Inc., Michael Sonnenshein, and Barry Silbert* filed in the Court of Chancery of the State of Delaware, Case No. 2023-0276;

iii.   Notwithstanding any other provision of this Settlement Agreement, the Parties do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any Claims or other causes of action against any person or entity that is not one of the Released Parties; and

iv.   Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect any Claims that any FTX Entity has against any other FTX Entity or that any Genesis Entity has against any other Genesis Entity.

## V.   THE REQUESTED RELIEF SHOULD BE GRANTED

31.   The Genesis Debtors have determined, in consultation with their advisors, that the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Genesis Debtors' estates.  By this Motion, the Genesis Debtors request approval of the Settlement Agreement pursuant to Rule 9019(a).

### A.   Basis for Relief

32.   Bankruptcy Rule 9019(a) provides, in the relevant part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."   Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the Estates."  *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  Accordingly, the Court is authorized to approve the proposed settlement between the Parties on the terms set forth in the Settlement Agreement.

15

33.     In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), a court must find that the proposed settlement is fair and equitable, reasonable, and in the best interests of the debtor's estates and creditors. *See Protective Comm. For Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968) ("*TMT Trailer Ferry*"); *Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  A decision to approve a particular compromise or settlement is within the sound discretion of the bankruptcy court. *See Drexel Burnham*, 134 B.R. at 505.  It is appropriate for the court to consider the opinions of the debtor in possession that a settlement is fair and equitable.  *See Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994).  In addition, the bankruptcy court should exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see also Shugrue*, 165 B.R. at 123 ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above.").  In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvas the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (in making the determination of reasonableness, the court need not conduct a "mini-trial" on the merits).  "All that [the proponent of the settlement] must do is establish [that] it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly [the settlement] might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (citation omitted).

16

Relying on the guiding language of *TMT Trailer Ferry*, courts in this Circuit have set forth the following factors to be considered in evaluating the reasonableness of settlement:

    (a)    the probability of success in litigation, with due consideration for the uncertainty in fact and law;

    (b)    the difficulties of collecting any litigated judgment;

    (c)    the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay;

    (d)    the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

    (e)    the competence and experience of counsel who support the settlement;

    (f)    the relative benefits to be received by members of any affected class;

    (g)    the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion; and

    (h)    the debtor's informed judgment that the settlement is fair and reasonable.

*See Purofied Down Prods.*, 150 B.R. at 522; *Drexel Burnham*, 134 B.R. at 506.

**B.      The Settlement Agreement Falls Well Within the Range of Reasonableness**

34.      In this case, weighing the reasonableness factors for purposes of Bankruptcy Rule 9019, the Genesis Debtors, acting through their independent Special Committee and following extensive consultation with the Genesis Debtors' advisors, have concluded that the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Genesis Debtors' estates and, thus, should be approved.  Islim Decl. ¶ 7.

35.      ***First***, the Settlement Agreement will resolve all claims asserted by the FTX Debtors against the Genesis Debtors at a fraction of their face value.  Indeed, the Allowed Alameda

17

Claim amounts to less than 5% of the FTX Claims, which, as asserted, constitute more than 250% of the value of the Genesis Debtors' liquid assets and equal approximately 90% of all scheduled claims against GGC combined.  Compare *supra*, ¶ 14 (noting that the FTX Debtors have filed proofs of claim alleging claims worth $3,876,473,714) with ECF No. 471 (Genesis Debtors' Cash and Coin Report as of June 30, 2023) (reporting approximately $1.3 billion in cash, digital assets, and shares held in brokerage accounts); ECF No. 187 (Summary of Genesis Debtors' Schedules and Statements) (reporting $4.079 billion in GGC liabilities).  As such, the Settlement Agreement avoids the possibility of a litigated judgment which could value the FTX Claims at an amount significantly above the Allowed Alameda Claim.  Although the Genesis Debtors believe that such an outcome is unlikely, any litigation regarding the FTX Claims is inherently uncertain given that many of the defenses available to the Genesis Debtors are untested in the context of the cryptocurrency industry and raise novel legal issues.

36.    ***Second***, the Settlement Agreement will allow for the Genesis Debtors to confirm a chapter 11 plan in a manner consistent with their confirmation timeline, by eliminating the possibility that litigation regarding the FTX Claims might take place in the FTX Bankruptcy Proceedings.  Islim Decl. ¶ 11.  As noted, *see* ¶¶ 12, 16 *supra*, the FTX Debtors have sought to fully litigate the FTX Claims in the FTX Bankruptcy Proceedings, and have also argued that specific issues implicated by the FTX Claims – including the value of FTT and the solvency of the FTX Debtors – should be decided in that forum.  Islim Decl. ¶ 11; *see Letter to Judge Lane re Estimation and Lift Stay* (ECF No. 476).  Litigating the FTX Claims (in whole or in part) in the FTX Bankruptcy Proceedings would subject the Genesis Debtors to potentially protracted adversarial proceedings.  Islim Decl. ¶ 11.  Such adversarial proceedings would further deplete the Genesis Debtors' estates, delay distributions to creditors, and undermine the viability of the

18

Genesis Plan, including by requiring the Genesis Debtors to set higher than expected reserves. *See* Islim Decl. ¶¶ 11, 12, 14. Indeed, the Genesis Plan confirmation process, which is well underway, requires certainty regarding the status and quantum of the FTX Claims. *See* Islim Decl. ¶ 11. The Settlement Agreement grants the Genesis Debtors such certainty and ensures the viability of a Genesis Plan.

37. ***Third***, the Settlement Agreement will maximize recoveries available to creditors by avoiding extensive litigation costs. Given the complexity of the issues implicated, completion of the estimation proceedings for the FTX Claims, or full litigation of either or both of the FTX Claims and the Genesis Claims, would be expensive. Full litigation would also be protracted. Any recoveries which the Genesis Debtors might be owed pursuant to the Genesis Claims would likely occur in the distant future, if at all. Islim Decl. ¶ 10. Moreover, any litigation would entail significant professional fees, including but not limited to discovery, preparation of experts, and motion practice. The Genesis Debtors anticipate that such costs would amount to at least $5 million should the Court agree to estimate the FTX Claims, and to multiple times that figure should the FTX Claims be subject to protracted adversarial proceedings either in this forum or in the FTX Bankruptcy Proceedings. Islim Decl. ¶ 12.

38. ***Fourth***, the FTX Claims entail various litigation risks which the Settlement Agreement avoids. In particular, the Settlement Agreement avoids the possibility of rulings in either the Genesis Bankruptcy Proceedings or the FTX Bankruptcy Proceedings that could negatively impact the Genesis Debtors' defenses to Claims or Claims which they might assert against third parties. Further, the Settlement Agreement insulates the Genesis Debtors' non-Debtors affiliates, including GGCI, from claims which the FTX Debtors might assert against them.

19

Islim Decl. ¶ 12.  In particular, should the FTX Debtors assert substantial claims against GGCI, it could force GGCI into bankruptcy.

39.    **Fifth**, the Settlement Agreement is the product of significant effort to reconcile the Genesis Debtors' and the FTX Debtors' outstanding claims against one another. Islim Decl. ¶ 15; *see also supra*, ¶¶ 28–29.  If approved, the Settlement Agreement would fully and finally resolve these claims, permitting the Genesis Debtors and their advisors to focus resources and attention on other claims and claimants and move toward confirming a Genesis Plan and beginning to make distributions to creditors.  Islim Decl. ¶ 14.

40.    **Finally**, the Parties are represented by sophisticated and experienced professionals—highly regarded law firms and financial advisors with significant restructuring, litigation, and other relevant experience.  Islim Decl. ¶ 15.  The Genesis Debtors' professionals, for their part, fully understand the difficulties of successfully concluding a litigation of this size and complexity and, indeed, have been analyzing, discussing, and preparing for litigation on the issues relating to the FTX Debtors for several months.  Islim Decl. ¶ 13.  The Settlement Agreement is the product of arm's length negotiations between the Genesis Debtors and the FTX Debtors.  Islim Decl. ¶ 15.  Accordingly, the Genesis Debtors' professionals fully understand the potential consequences to creditors of the Genesis Debtors' estates if the Settlement Agreement is not consummated and have recommended that the Genesis Debtors enter into the Settlement Agreement.  *See* Islim Decl. ¶¶ 6–7, 15.

41.    Accordingly, the Genesis Debtors submit that the settlement and compromise embodied in the Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable, and should be approved.

## VI.     NOTICE

42.     The Genesis Debtors have provided notice of this Motion in accordance with the procedures set forth in the Case Management Order.  The Genesis Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## VII.    NO PRIOR REQUEST

43.     No prior request for the relief requested herein has been made to this or any other Court.

## VIII.   CONCLUSION

WHEREFORE, for the reasons set forth herein, the Genesis Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, approving the Settlement Agreement and (b) grant such other and further relief as is just and proper.

Dated:     August 16, 2023              */s/ Jane VanLare*
           New York, New York           Sean A. O'Neal
                                         Luke A. Barefoot
                                         Jane VanLare
                                         Andrew Weaver
                                         CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                         One Liberty Plaza
                                         New York, New York 10006
                                         Telephone: (212) 225-2000
                                         Facsimile: (212) 225-3999

                                         *Counsel to the Genesis Debtors*
                                         *and Debtors-in-Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

A-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| | Jointly Administered |
| Debtors. | |

## ORDER APPROVING SETTLEMENT AGREEMENT
## BETWEEN THE GENESIS ENTITIES AND THE FTX ENTITIES

Upon the Motion[2] of Genesis Global Holdco, LLC ("Holdco") and its debtor

affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases

(collectively, the "Genesis Debtors") for entry of an order (this "Order") pursuant to Rule 9019(a)

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the settlement

and compromise (the "Settlement Agreement") entered into by (i) the Genesis Debtors and certain

direct and indirect subsidiaries of Holdco that are not debtors in the above-captioned cases (the

"Genesis Bankruptcy Proceedings"), including GGC International Limited ("GGCI"), Genesis

Bermuda Holdco Limited, Genesis Global Markets Limited, Genesis UK Holdco Limited, Genesis

Custody Limited, Genesis Global Assets, LLC, GGA International Limited, Genesis Global

Trading, Inc., Genesis Global Labs, LLC, Genesis Asia (Hong Kong) Limited, and all other

wholly-owned or controlled subsidiaries (collectively, with the Genesis Debtors, the "Genesis

Entities") and (ii) FTX Trading Ltd., its affiliated debtors and debtors-in-possession in the jointly

---

1.        The Genesis Debtors in the Genesis Bankruptcy Proceedings, along with the last four digits of each Genesis Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of the Genesis Bankruptcy Proceedings, the service address for the Genesis Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

2        All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

administered Chapter 11 proceedings pending in the United States Bankruptcy Court for the District of Delaware, Case No. 22-11068 (the "FTX Debtors"), and the FTX Debtors' non-debtor subsidiaries solely to the extent of the FTX Debtors' authority to bind such entities as of the date hereof, if any (together with the FTX Debtors, the "FTX Entities"); and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and the opportunity for a hearing thereon having been provided in accordance with the Case Management Order; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on September 6, 2023 (the "Hearing"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Genesis Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      Pursuant to Bankruptcy Rule 9019(a), the Settlement Agreement is approved, and the Genesis Debtors are authorized to enter into the Settlement Agreement.

3.      As set forth in the Settlement Agreement, the Allowed Alameda Claim against GGC is hereby ALLOWED in the amount of $175 million.

4.     The following claims by the FTX Debtors are hereby deemed WITHDRAWN with prejudice and EXPUNGED:

     a.  Claim Nos. 415, 419, and 426 filed by FTX Trading Ltd.;

     b.  Claim Nos. 422, 420, and 513 filed by Alameda Research LLC;

     c.  Claim Nos. 508, 512, and 457 filed by Alameda Research Ltd.;

     d.  Claim Nos. 463, 438, and 516 filed by West Realm Shires Inc; and

     e.  Claim Nos. 432, 465, and 515 filed by West Realm Shires Services Inc.

5.     The Parties are authorized to take any action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement in accordance with this Order, including without limitation to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement in accordance with this Order.

6.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation, interpretation or enforcement of this Order.

*[The remainder of this page is intentionally left blank.]*

Dated: _____, 2023
　　　　New York, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Settlement Agreement**

*Execution Version*

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "<u>Settlement Agreement</u>") is made and entered into by and among: (i) Genesis Global Holdco, LLC ("<u>Holdco</u>") and its affiliated debtors and debtors-in-possession (collectively, the "<u>Genesis Debtors</u>") in the jointly-administered chapter 11 cases proceeding under the caption *In re Genesis Global Holdco, LLC, et al.* Case No. 23-10063 (SHL) (the "<u>Genesis Bankruptcy Proceeding</u>"); (ii) Holdco's non-debtor direct and indirect affiliates and subsidiaries GGC International Limited ("<u>GGCI</u>"), Genesis Bermuda Holdco Limited, Genesis Global Markets Limited, Genesis UK Holdco Limited, Genesis Custody Limited, Genesis Global Assets, LLC, GGA International Limited, Genesis Global Labs, LLC, Genesis Global Trading, Inc., Genesis Asia (Hong Kong) Limited, and all other wholly-owned or controlled subsidiaries (collectively with the Genesis Debtors, the "<u>Genesis Entities</u>"); (iii) FTX Trading Ltd. ("<u>FTX Trading</u>"), Alameda Research LLC ("<u>Alameda LLC</u>"), Alameda Research Ltd. ("<u>Alameda Ltd.</u>"), West Realm Shires Inc. ("<u>WRSI</u>"), West Realm Shires Services Inc. ("<u>WRSS</u>"), LedgerPrime LLC ("<u>LedgerPrime</u>") and their affiliated debtors and debtors-in-possession (collectively, and including FTX Trading, Alameda LLC, Alameda Ltd., WRSI, WRSS, and LedgerPrime, the "<u>FTX Debtors</u>"); and (iv) the FTX Debtors' non-debtor subsidiaries solely to the extent of the FTX Debtors' authority to bind such entities as of the date hereof, if any (together with the FTX Debtors, the "<u>FTX Entities</u>" and the FTX Entities, together with the Genesis Entities, each a "<u>Party</u>" and collectively the "<u>Parties</u>") in the jointly-administered chapter 11 cases proceeding under the caption *In re FTX Trading Ltd., et al.*, Case No. 22-11068 (JTD) (the "<u>FTX Bankruptcy Proceeding</u>");

**WHEREAS**, on November 11 and 14, 2022, the FTX Debtors filed their respective petitions for voluntary relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Delaware Bankruptcy Court</u>"), initiating the FTX Bankruptcy Proceeding;

**WHEREAS**, on January 19, 2023, the Genesis Debtors filed their respective petitions for voluntary relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "<u>New York Bankruptcy Court</u>"), initiating the Genesis Bankruptcy Proceeding;

**WHEREAS**, on May 3, 2023, the FTX Debtors filed the *Motion of FTX Trading Ltd. and its Affiliated Debtors for an Order Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001* (ECF No. 289)[1] (the "<u>Lift Stay Motion</u>") in the Genesis Bankruptcy Proceeding;

**WHEREAS**, on or about May 22, 2023, certain of the FTX Debtors filed claims against certain of the Genesis Debtors in the Genesis Bankruptcy Proceeding as set forth in <u>Exhibit A-1</u> attached hereto (collectively, the "<u>FTX Proofs of Claim</u>") in the approximate amount of at least $3.8 billion in aggregate;

**WHEREAS**, on June 1, 2023, the Genesis Debtors filed the *Motion to Establish Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the*

---

[1]    Citations made herein to "ECF" refer to filings in the Genesis Bankruptcy Proceeding unless otherwise indicated.

*Execution Version*

*Debtors Under Bankruptcy Code Sections 105(a) and 502(c) and Bankruptcy Rule 3018* (ECF No. 373) (the "Estimation Motion"), which sought to estimate the FTX Proofs of Claim at $0;

WHEREAS, on or around June 30, 2023, certain of the Genesis Debtors filed claims against certain of the FTX Debtors in the FTX Bankruptcy Proceeding as set forth in Exhibit A-2 attached hereto (collectively, the "Genesis Proofs of Claim") in the approximate amount of at least $180 million in aggregate plus unliquidated amounts;

WHEREAS, GGCI has asserted a claim against FTX.com with respect to cash and cryptocurrencies in the approximate amount of at least $176 million (the "GGCI Claim"), which GGCI asserts corresponds to a contingent claim listed on the FTX Debtors' amended schedules of assets and liabilities in the amount of -$22 million;

WHEREAS, the FTX Debtors have asserted certain defenses with respect to the Genesis Proofs of Claim and the GGCI Claim, and the Genesis Debtors have asserted certain defenses with respect to the FTX Proofs of Claim;

WHEREAS, each Party has an interest in avoiding the cost and expense that would be associated with litigation of the novel and complex issues raised by litigation between chapter 11 estates;

WHEREAS, without any admission by any Party, and subject to the terms of this Settlement Agreement, the Parties desire to finally resolve and settle all disputes between them relating to the FTX Proofs of Claim, the Genesis Proofs of Claim, and certain related matters set forth herein;

NOW, THEREFORE, in consideration of the above and the respective promises, conditions, terms, and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

1.    **AGREEMENTS OF THE PARTIES**

(a)    Allowed Alameda Claim.  On the Settlement Effective Date (as defined below), Alameda Ltd. shall have an allowed general unsecured claim against GGC in the amount of $175,000,000 (the "Allowed Alameda Claim"), which claim shall be freely transferable, subject to section 1(d) below.  The Genesis Entities shall not seek to subordinate, recharacterize, or otherwise seek any alternative treatment of the Allowed Alameda Claim other than as provided in this Settlement Agreement.

(b)    Waiver of All Other Claims.  As of the Settlement Effective Date, (i) none of the FTX Entities shall have or be entitled to assert any Claim (as defined in 11 U.S.C. § 101(5), a "Claim") against the Genesis Entities other than the Allowed Alameda Claim, and (ii) none of the Genesis Entities shall have or be entitled to assert any Claim against the FTX Entities, in each case of (i) and (ii) including any Claim pursuant to 11 U.S.C. § 502(h).  As of the Settlement Effective Date, except for the Allowed Alameda Claim, all of the FTX Proofs of Claim shall be deemed expunged in the Genesis Bankruptcy Proceeding and the Genesis Proofs of Claim shall be deemed expunged in the FTX Bankruptcy Proceeding.

*Execution Version*

(c)     <u>Pro Rata Distributions</u>.  The Allowed Alameda Claim shall be entitled to receive pro rata distributions (in the form of fiat) with all other allowed general unsecured claims pursuant to any chapter 11 plan that becomes effective in the Genesis Bankruptcy Proceeding (the "<u>Genesis Plan</u>") and shall be entitled to all treatment afforded to allowed general unsecured claims in its respective class and shall not be separately classified from other general unsecured claims owed fiat against GGC (other than Claims of Gemini lenders, which may be separately classified, and Claims separately classified solely for purposes of administrative convenience, if any) or otherwise treated in any disparate or discriminatory way as compared to other general unsecured claims against GGC under the Genesis Plan, *provided* that (i) the Parties may mutually agree in writing that the consideration comprising the distributions on account of the Allowed Alameda Claim may be in a form other than cash, and (ii) in the event that the Genesis Plan includes an early payout option at a discount (the "<u>Early Payout Option</u>"), the Early Payout Option shall not be available with respect to the Allowed Alameda Claim unless the Early Payout Option is otherwise generally available to all similarly situated holders of allowed general unsecured claims in amount equal to or greater than the Allowed Alameda Claim. Notwithstanding the foregoing, in the event the Genesis Plan includes the Early Payout Option and it is not available to the Allowed Alameda Claim, Alameda Ltd. reserves its rights and shall be entitled to object to the Early Payout Option on the grounds that it constitutes unfair discrimination and the Genesis Entities reserve their rights and shall be entitled to argue that the Early Payout Option does not constitute unfair discrimination.

(d)     <u>Transfers</u>.  Effective as of the date of this Settlement Agreement, the Allowed Alameda Claim shall be freely transferable (in whole or in part), provided that any transferee of any portion of, or interest in, the Allowed Alameda Claim (each, a "<u>Transferee</u>") shall, as a condition to such transfer (each, a "<u>Transfer</u>"), agree to be bound by the terms of this Settlement Agreement with respect to the acquired portion of the Allowed Alameda Claim, mutatis mutandis, by executing and delivering to the Genesis Entities a joinder agreement substantially in the form attached hereto as <u>Exhibit B</u> (each, a "<u>Joinder</u>").  Upon compliance with the foregoing, Alameda Ltd. shall be deemed to relinquish its rights (and be released from its obligations, except for any claim for breach of this Settlement Agreement that occurs prior to such transfer) under this Settlement Agreement with respect to the acquired portion of the Allowed Alameda Claim and to the extent of such transferred rights and obligations. Notwithstanding anything to the contrary herein, entry into a Joinder shall not require or otherwise cause a Transferee to release any Claims against any Party other than any Claims related to or arising out of the FTX Proofs of Claim or the Genesis Proofs of Claim.

(e)     <u>Covenant Not to Object to Genesis Plan</u>.  As of the Settlement Effective Date, none of the FTX Entities shall object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the Genesis Debtors, *solely to the extent* that such plan is consistent with the terms and conditions of this Settlement Agreement; *provided* that nothing in this Settlement Agreement (and neither a vote to accept any such chapter 11 plan nor the acceptance of such plan) shall be construed to limit the FTX Entities' rights to appear as parties-in-interest in any matter to be adjudicated in the Genesis Bankruptcy Proceeding, so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Settlement Agreement and are not for the purposes of hindering, delaying, or preventing the consummation of this Settlement Agreement.

*Execution Version*

(f)     <u>Covenant Not to Object to FTX Plan</u>. As of the Settlement Effective Date, none of the Genesis Entities shall object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the FTX Debtors, *solely to the extent* that such plan is consistent with the terms and conditions of this Settlement Agreement; *provided* that nothing in this Settlement Agreement (and neither a vote to accept any such chapter 11 plan nor the acceptance of such plan) shall be construed to limit any Genesis Entity's right to appear as a party-in-interest in any matter to be adjudicated in the FTX Bankruptcy Proceeding, so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Settlement Agreement and are not for the purposes of hindering, delaying, or preventing the consummation of this Settlement Agreement.

(g)     <u>Rule 9019 Motions</u>. Effective as of the date of execution of this Settlement Agreement by each Party, each Party agrees to seek prompt approval of this Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019, through a motion in form and substance reasonably acceptable to the other Party, in each of the Genesis Bankruptcy Proceeding and FTX Bankruptcy Proceeding, as applicable (together, the "<u>Rule 9019 Motions</u>") and otherwise agrees to cooperate and take such actions as are reasonably necessary (including in the event that an objection or other opposition to its respective Rule 9019 Motion is filed) to obtain court approval of, and authority to enter into, this Settlement Agreement, and entry of the Approval Order (as defined below).

(h)     <u>Withdrawal of Motions and Claims</u>. No later than three (3) business days after the Settlement Effective Date, the FTX Debtors and the Genesis Debtors, as applicable, shall withdraw with prejudice (i) the Lift Stay Motion and the Estimation Motion, respectively, and (ii) the FTX Proofs of Claim and the Genesis Proofs of Claim, respectively.

2.     **RELEASES**

(a)     <u>Mutual Release</u>. On the Settlement Effective Date (as defined below), each of the FTX Entities, on the one hand, and each of Genesis Entities, on the other hand, on behalf of itself, and each and all of its and its respective past, present and future agents, heirs, executors, administrators, conservators, predecessors, successors and assigns, (all such releasing persons and entities collectively, the "<u>Releasing Parties</u>"), does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge each other and their respective past, present and future agents, heirs, executors, administrators, conservators, successors and assigns (all such released persons and entities collectively, the "<u>Released Parties</u>") from, against, and in respect of any and all past, present and future Claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, that such Party may have or may have against any other Party since the beginning of time, under, arising out of or in connection with the FTX Proofs of Claim , the Genesis Proofs of Claim or any other Claims that could be asserted, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with any of

*Execution Version*

the foregoing, in all cases other than the Allowed Alameda Claim and as otherwise provided in this Settlement Agreement.

(b)    Exceptions to Mutual Release.

(i)    Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect their respective obligations under this Settlement Agreement or the Parties' respective rights to bring any Claims or other causes of action arising out of or in connection with a breach of this Settlement Agreement.

(ii)    Notwithstanding any other provision of this Settlement Agreement, any affiliates or subsidiaries of the Digital Currency Group other than the Genesis Entities (the "DCG Entities") are not Released Parties or Releasing Parties, and the Parties do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, all Claims or other causes of action against any DCG Entity, including any and all Claims and causes of action alleged in or related to that certain action styled *Alameda Research Ltd. v. Grayscale Investments, LLC, Digital Currency Group, Inc., Michael Sonnenshein, and Barry Silbert* filed in the Court of Chancery of the State of Delaware, Case No. 2023-0276.

(iii)    Notwithstanding any other provision of this Settlement Agreement, the Parties do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any Claims or other causes of action against any person or entity that is not one of the Released Parties.

(iv)    Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect any Claims that any FTX Entity has against any other FTX Entity or that any Genesis Entity has against any other Genesis Entity.

3.    **REPRESENTATIONS & WARRANTIES**

(a)    Mutual Representations and Warranties of All Parties.  Each Party represents and warrants to each other Party that as of the date of this Settlement Agreement:

(i)    subject to the Approval Orders, it has the requisite organizational power and authority to enter into this Settlement Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Settlement Agreement;

(ii)    subject to the Approval Orders, this Settlement Agreement constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms;

(iii)    the execution and delivery of this Settlement Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate or other organizational action on its part;

(iv)    the execution, delivery, and performance by it of this Settlement Agreement does not violate any provision of law, rule or regulation applicable to it or any of its

*Execution Version*

affiliates or its certificate of incorporation, bylaws or other organizational documents or those of any of its affiliates; and

(v)    before executing this Settlement Agreement, it has been fully informed of its terms, contents, conditions and effects, it has had a full and complete opportunity to discuss this settlement with its attorney or attorneys, it is not relying in any respect on any statement or representation made by any other Party and no promise or representation of any kind has been made to such Party separate and apart from what is expressly contained in this Settlement Agreement.

4.    **MISCELLANEOUS PROVISIONS**

(a)    <u>No Admission of Liability.</u>  The undersigned Parties each acknowledge and agree that the matters set forth in this Settlement Agreement constitute the settlement and compromise of potentially disputed claims and defenses, that this Settlement Agreement is not an admission or evidence of liability or infirmity by any of them regarding any claim or defense, and that the Settlement Agreement shall not be offered or received in evidence by or against any Party except to enforce its terms.

(b)    <u>Specific Performance.</u>  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Settlement Agreement by any Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach of this Settlement Agreement, including an order of the New York Bankruptcy Court or the Delaware Bankruptcy Court, as applicable, or another court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.  Each Party also agrees that it will not (i) seek, and will waive any requirement for, the securing or posting of a bond in connection with any Party seeking or obtaining such relief or (ii) raise as a defense thereto the necessity of proving the inadequacy of money damages as a remedy.

(c)    <u>Damages.</u>  Notwithstanding anything to the contrary in this Settlement Agreement, none of the Parties or any of their respective successors or assigns shall make a claim against, or seek to recover from, any other Party or the successors, assigns, affiliates, directors, officers, employees, counsel, representatives, agents, or attorneys-in-fact of any of them for any special, indirect, consequential, exemplary, or punitive damages or damages for lost profits in respect of any claim for breach of contract or any other theory of liability arising out of or related to this Settlement Agreement.

(d)    <u>Further Assurances</u>.  The Parties shall use their reasonable best efforts to take, or cause to be taken, all appropriate action to do or cause to be done all things necessary under applicable law, and to execute and deliver such documents and other papers, in each case, as may be required to carry out the provisions of this Settlement Agreement and consummate and make effective the transactions contemplated hereby.

*Execution Version*

(e)     <u>Execution in Counterparts.</u>  This Settlement Agreement may be executed in counterparts by one or more of the Parties and all such counterparts when so executed shall together constitute the final Settlement Agreement, as if one document had been signed by all Parties; and each such counterpart, upon execution and delivery, shall be deemed a complete original, binding the Parties subscribed thereto upon the execution by all Parties to this Settlement Agreement.  Delivery of this signed agreement by facsimile transmission or by .pdf, .jpeg, .TIFF or other form of electronic mail attachment will be deemed effective as delivery of a manually executed counterpart prior to and in the absence of manual delivery and will be binding upon the parties.

(f)     <u>Governing Law</u>.  This Settlement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York).

(g)     <u>Consent to Venue</u>.  Each of the Genesis Entities irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the Delaware Bankruptcy Court and each of the FTX Entities irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the New York Bankruptcy Court, in each case solely for any action, suit or proceeding arising out of or based upon such Party's breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding.

(h)     <u>Trial by Jury Waived</u>. EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF OR RELATING TO THIS SETTLEMENT AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER IN CONTRACT OR IN TORT, IN LAW OR IN EQUITY OR GRANTED BY STATUTE). EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND EACH OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS SETTLEMENT AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(i)     <u>Notices</u>.  Any notices required hereunder shall be sent by registered mail, first class, return receipt requested, and by email, to the following:

(i)     If to any Genesis Entity:

Arianna Pretto-Sakmann
Genesis Global Holdco, LLC
250 Park Avenue South, 5th Floor
New York, NY 10003
arianna@genesistrading.com

*Execution Version*

           with copies to:

           Sean A. O'Neal
           Luke A. Barefoot
           Jane VanLare
           Cleary Gottlieb Steen & Hamilton LLP
           One Liberty Plaza
           New York, NY 10006
           (212) 225 2416
           (212) 225 2929
           (212) 225 2872
           soneal@cgsh.com
           lbarefoot@cgsh.com
           jvanlare@cgsh.com

  (ii)    If to the FTX Debtors:

           John J. Ray III
           125 Broad Street
           FTX Mail Room, 32nd Floor
           New York, New York, 10004
           E-mail: jray@greylockpartnersllc.com

           with copies to:

           Sullivan & Cromwell LLP
           125 Broad Street
           New York, New York 10004
           Attn: Brian D. Glueckstein and Benjamin S. Beller
           E-mail: gluecksteinb@sullcrom.com; bellerb@sullcrom.com

    (j)    <u>Entire Agreement and Amendments</u>.  This Settlement Agreement constitutes the entire agreement and understanding between and among the Parties concerning the matters set forth herein and supersedes any prior agreements or understandings.  This Settlement Agreement may not be amended or modified, nor may any of its provisions be waived, except in writing signed by the Parties bound thereby, or by their respective authorized attorney(s), or other representative(s).

    (k)    <u>Severability</u>.  If any provision in this Settlement Agreement is determined to be invalid, inoperative or unenforceable, the remaining provisions of this Settlement Agreement remain in effect if both the economic and legal substance of this Settlement Agreement are not materially affected in any manner adverse to any Party.  Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

*Execution Version*

(l)    <u>Assignment</u>.  Neither this Settlement Agreement nor any of the rights and obligations of the Parties hereunder may be assigned by either Party without the prior written consent of the other Party, which consent will not be unreasonably withheld, except that each Party shall have the right to assign any or all of its rights and delegate any or all of its obligations hereunder to any of its affiliates or any successor in interest (whether by merger, acquisition, asset purchase, or otherwise), *provided*, that no assignment to any affiliate or successor in interest shall relieve or discharge the assigning party from any of its obligations hereunder, *provided further*, that the Allowed Alameda Claim shall be freely transferrable in accordance with Section 1(d) of this Settlement Agreement.  Any Transfer in violation of this Settlement Agreement shall be void and of no force or effect.

(m)    <u>Indemnification</u>.  In the event of the breach of this Settlement Agreement, the breaching Party will indemnify and hold harmless the non-breaching Party and any of its affiliates, officers, directors, employees, agents, and subsidiaries for any and all reasonable attorneys' fees and court costs arising out of or in connection with such breach.

(n)    <u>Settlement Effective Date</u>.  The "<u>Settlement Effective Date</u>" shall occur on the date that (i) signature pages executed by each of the Parties have been delivered to each of the other Parties, and (ii) the New York Bankruptcy Court and the Delaware Bankruptcy Court have each entered an order (which order shall have become a final order not subject to any appeal, stay or vacatur) approving the Parties' entry into this Settlement Agreement, on terms and conditions consistent with this Settlement Agreement and otherwise reasonably acceptable to each Party (each, an "<u>Approval Order</u>" and together the "<u>Approval Orders</u>").

*[<u>The remainder of this page is intentionally left blank.</u>]*

*Execution Version*

      **IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

                        **GENESIS GLOBAL HOLDCO, LLC**

Date: August 16, 2023          BY: _/s/ Arianna Pretto-Sakmann_

                        TITLE: Chief Legal Officer

                        PRINT NAME: Arianna Pretto-Sakmann

                        **GENESIS GLOBAL CAPITAL, LLC**

Date: August 16, 2023          BY: _/s/ Arianna Pretto-Sakmann_

                        TITLE: Chief Legal Officer

                        PRINT NAME: Arianna Pretto-Sakmann

                        **GENESIS ASIA PACIFIC PTE. LTD.**

Date: August 16, 2023          BY: _/s/ Arianna Pretto-Sakmann_

                        TITLE: Director

                        PRINT NAME: Arianna Pretto-Sakmann

                        **GGC INTERNATIONAL LIMITED**

Date: August 16, 2023          BY: _/s/ Arianna Pretto-Sakmann_

                        TITLE: Director

                        PRINT NAME: Arianna Pretto-Sakmann

                        **GENESIS BERMUDA HOLDCO LIMITED**

Date: August 16, 2023          BY: _/s/ Arianna Pretto-Sakmann_

                        TITLE: Director

                        PRINT NAME: Arianna Pretto-Sakmann

                        **GENESIS GLOBAL MARKETS LIMITED**

Date: August 16, 2023          BY: _/s/ Arianna Pretto-Sakmann_

                        TITLE: Director

*Execution Version*

PRINT NAME: Arianna Pretto-Sakmann

**GENESIS UK HOLDCO LIMITED**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

TITLE: Director

PRINT NAME: Arianna Pretto-Sakmann

**GENESIS CUSTODY LIMITED**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

TITLE: Director

PRINT NAME: Arianna Pretto-Sakmann

**GENESIS GLOBAL ASSETS, LLC**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

TITLE: Chief Legal Officer of Genesis Global Holdco, LLC, as sole member of Genesis Global Assets, LLC

PRINT NAME: Arianna Pretto-Sakmann

**GGA INTERNATIONAL LIMITED**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

TITLE: Director

PRINT NAME: Arianna Pretto-Sakmann

**GENESIS GLOBAL LABS, LLC**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

TITLE: General Counsel

PRINT NAME: Arianna Pretto-Sakmann

**GENESIS GLOBAL TRADING, INC.**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

TITLE: Chief Legal Officer

PRINT NAME: Arianna Pretto-Sakmann

*Execution Version*

**GENESIS ASIA (HONG KONG) LIMITED**

Date: August 16, 2023          BY: _/s/ Arianna Pretto-Sakmann_____

TITLE: Director

PRINT NAME: Arianna Pretto-Sakmann

**FTX ENTITIES**

Date: August __, 2023          BY:_____

TITLE:  Solely in his capacity as Chief Executive Officer

of the FTX Debtors

PRINT NAME:  John J. Ray III

*Execution version*

**GENESIS ASIA (HONG KING) LIMITED**

Date: August __, 2023          BY:_____

TITLE:__

PRINT NAME:__

**FTX ENTITIES**

Date: August 16, 2023          BY:_____

TITLE:  Solely in his capacity as Chief Executive Officer
            of the FTX Debtors

PRINT NAME:  John J. Ray III

## Exhibit A-1

### FTX Proofs of Claim

| Claim No. | FTX Entity | Genesis Entity |
|---|---|---|
| 415 | FTX Trading | Holdco |
| 419 | FTX Trading | Genesis Asia Pacific, Ltd. ("GAP") |
| 420 | Alameda LLC | GAP |
| 422 | Alameda LLC | Holdco |
| 426 | FTX Trading | Genesis Global Capital LLC ("GGC") |
| 432 | WRSS | GAP |
| 438 | WRSI | GGC |
| 457 | Alameda Ltd. | GAP |
| 463 | WRSI | GAP |
| 465 | WRSS | Holdco |
| 508 | Alameda Ltd. | GGC |
| 512 | Alameda Ltd. | Holdco |
| 513 | Alameda LLC | GGC |
| 515 | WRSS | GGC |
| 516 | WRSI | Holdco |

*Execution Version*

## Exhibit A-2

### Genesis Proofs of Claim

| Claim No. | Genesis Entity | FTX Entity |
| --- | --- | --- |
| 4506 | GGC | Alameda LLC |
| 4508 | Holdco | Alameda LLC |
| 4509 | GGC | FTX Trading |
| 4510 | GGC | WRSS |
| 4512 | GGC | WRSI |
| 4514 | Holdco | Alameda Ltd. |
| 4515 | Holdco | FTX Trading |
| 4516 | Holdco | WRSS |
| 4517 | GGC | LedgerPrime |
| 4518 | GAP | WRSI |
| 4519 | GAP | FTX Trading |
| 4520 | GAP | Alameda Ltd. |
| 4521 | GAP | WRSS |
| 4523 | Holdco | WRSI |
| 4524 | GGC | Alameda Ltd. |
| 4525 | GAP | Alameda LLC |

## Exhibit B

### Form of Joinder Agreement

This Joinder Agreement (the "Joinder Agreement") to the Settlement Agreement and Release, dated as of August 16, 2023 (the "Settlement Agreement"), by and among the Genesis Entities and the FTX Entities, is executed and delivered by [●] (the "Joining Party") to the Genesis Debtors as of [●].  Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Settlement Agreement.

1.  Agreement to be Bound.  The Joining Party shall hereafter be deemed to be a "Party" for all purposes under the Settlement Agreement and hereby agrees to be bound by all of the terms and conditions of the Settlement Agreement in such capacity and any representations, warranties, and covenants therein.  Notwithstanding anything to the contrary in the Settlement Agreement, entry into this Joinder Agreement shall not require or otherwise cause a Joining Party to release any Claims against any Party other than any Claims related to or arising out of the FTX Proofs of Claim or the Genesis Proofs of Claim.

2.  Governing Law.  This Joinder Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to any conflicts of law provisions which would require the application of the law of any other jurisdiction.

*[Remainder of Page Intentionally Left Blank]*

*Execution Version*

IN WITNESS WHEREOF, the Joining Party has caused this Joinder Agreement to be executed as of the date first written above.

Name of Joining Party: _____

By: _____

Name: _____

Title: _____


<u>Notice Address</u>:

_____

_____

_____

Fax: _____

Attention: _____


With a copy to:

_____

_____

_____

Fax: _____

Attention: _____

_____