Anson B. Frelinghuysen
Dustin P. Smith
Erin E. Diers
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000

*Counsel to Gemini Trust Company, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
: 
In re: : Chapter 11
: 
GENESIS GLOBAL HOLDCO, LLC, et al., : Case No. 23-10063 (SHL)
: 
Debtors[1]. : (Jointly Administered)
: 
------------------------------------------------------------------ X

# OBJECTION OF GEMINI TRUST COMPANY, LLC
# TO DEBTORS' SECOND MOTION TO EXTEND EXCLUSIVITY

Gemini Trust Company, LLC ("Gemini"), by and through its undersigned counsel, hereby submits this objection to the *Debtors' Second Motion for Entry of an Order Extending the Debtors' Exclusive Periods in which to File a Chapter 11 Plan and Solicit Acceptances Thereof and Granting Related Relief* (ECF No. 574, the "Second Exclusivity Motion"). In support of the Objection, Gemini respectfully states as follows:

---

1. The Genesis Debtors in the Genesis Bankruptcy Proceedings along with the last four digits of each Genesis Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of the Genesis Bankruptcy Proceedings, the service address for the Genesis Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

## PRELIMINARY STATEMENT[2]

1.   These cases must proceed towards a resolution. It has been more than nine months since the Debtors halted redemptions and denied Gemini Lenders access to their digital assets. The Debtors' preferred approach to reaching a consensual plan—focusing almost exclusively on negotiating a deal that would resolve claims against its non-debtor parent, DCG—has failed. It is not for lack of time or effort: *nine months* have elapsed since the Debtors first halted redemptions in November 2022, *seven months* have elapsed since these chapter 11 cases were commenced in January 2023, and *four months* have elapsed since this Court ordered mediation in May 2023. The stakeholders in this case have worked tirelessly in pursuit of a consensual plan that resolved claims against DCG, to no avail.

2.   During that time, the Debtors have repeatedly promised that a plan that resolves claims against DCG is right around the corner, as they seek extension after extension of mediation periods, hearing dates, and bid deadlines. And during that same time, more than 232,000 Gemini Lenders have had to shoulder the stress and anxiety of waiting for the Debtors to return the more than $1 billion owed to Gemini Lenders. Despite the Debtors' repeated promises that a deal is very close, the Debtors are no closer to a confirmable plan that has creditor support today than they were when these cases were filed in January. The harm to Gemini Lenders is compounded by the fact that has DCG not paid *any* of the approximately $630 million in loans that came due to the Debtors in May 2023.

---

2. Capitalized terms not defined in the Preliminary Statement shall have the meanings ascribed to them elsewhere in this Objection. Capitalized terms not defined in this Objection shall have the meanings ascribed to them in the *Debtors' Amended Joint Chapter 11 Plan*, ECF No. 427 (the "Plan").

2

3.      On August 29, 2023, the Debtors revealed an "agreement in principle" among the Debtors, the Committee, and DCG[3] that is woefully light on specifics and remains subject to definitive documentation. The limited information provided by the Debtors makes clear that the proposed deal is also woefully light in economic consideration.[4] It requires DCG to contribute to the Debtors' estates significantly *less* than what DCG currently owes, while providing DCG with releases of valuable estate claims against DCG. The purported recoveries of "~70-90%" for unsecured creditors touted by the Debtors[5] in connection with the "agreement in principle" are completely unsubstantiated and cannot be explained through the threadbare terms provided by the Debtors. Believing that the Debtors' so-called "agreement in principle" will quickly materialize into a plan denies history: the plan that has been "close" for weeks remains weeks—if not months—away. And that assumes that the Debtors can actually reach accord with DCG, whose proven track record is subversion and delay.

4.      Any plan incorporating the "agreement in principle" would merely be a dead end. The agreement in principle is **not** supported by the two most significant economic stakeholders in the Chapter 11 Cases: (i) Gemini, which acts as agent on behalf of more than 232,000 lenders owed more than $1 billion, or *more than 99% of the Debtors' creditors*, and (ii) the Ad Hoc Group of Lenders, which includes lenders owed more than $2.4 billion.[6]

---

3. *Notice of Mediation Termination*, ECF No. 625 ("Mediation Termination Notice").

4. Since early July, Gemini has been urging the Debtors to terminate mediation and present proposed terms of a deal for creditors to consider. The Debtors have demurred, and the Court has extended the mediation over Gemini's objection. Finally, after weeks of delay, the vague contours of a deal have been presented, and Gemini's concerns are substantiated: the Debtors are going easy on their parent to the direct detriment of the Debtors' creditors.

5. *See* Mediation Termination Notice at 6.

6. *See Statement of Ad Hoc Group of Genesis Lenders in Respect of Public Update on Plan Discussions*, ECF No. 632.

3

5.  The Debtors' announcement of this "agreement in principle" makes the need to terminate the Debtors' exclusivity even more clear.  If granted an extension, the Debtors would likely continue their blinkered focus on pursuing the "agreement in principle" with DCG and the Committee, at the expense of a broader consensus-building approach that would net sufficient creditor support to confirm a plan.  As a result, granting an extension now would hinder, rather than promote, progress towards a confirmable plan.  Moreover, the announcement of the "agreement in principle" on the eve of the deadline to object to the Second Exclusivity Motion should be viewed for what it is: a transparent attempt to demonstrate cause for another extension of the exclusivity period.  Given the inadequate terms, lack of specificity, and lack of creditor support, the "agreement in principle" falls far short of meeting the standard the Court must apply in evaluating whether cause exists to warrant the Debtors' request for another extension.

6.  Accordingly, the Debtors' exclusivity period should be allowed to expire so that other parties have an opportunity to propose a plan that can actually be confirmed.  If the Debtors believe that their plan is truly in the best interests of their creditors, then they should not be afraid of any competing plans.  Gemini Earn Lenders should not be forced to shoulder the risk of the Debtors continuing to languish in chapter 11 while the Debtors continue to advance a losing strategy.  Put simply: the extensions need to stop.

7.  Gemini requests that the Second Exclusivity Motion be denied.

**OBJECTION**

A.  **The Standard for Extending the Exclusivity Periods**

8.  Plan exclusivity is not an unfettered right.  Section 1121 of the Bankruptcy Code limits the period during which a debtor has the exclusive right to file a plan of reorganization and

4

solicit votes on that plan. There is no presumption in favor of receiving an extension; rather, exclusivity may only be extended "for cause." See 11 U.S.C. § 1121(d)(1).

9. A debtor seeking an extension bears the burden of proof and must make "a clear showing" that the requisite cause exists. *See In re Curry Corp.*, 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992); *see also In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 601-02 (Bankr. S.D.N.Y. 2014) (finding debtors had not met burden of establishing cause to extend the exclusivity period). To carry this burden, the debtor must produce "affirmative evidence to support a finding of cause." *In re Borders Group, Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011). Notably, extending a debtor's exclusive period is *not* a routine exercise. *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (explaining that extensions to exclusivity should be "granted neither routinely nor cavalierly").

10. Courts in this circuit consider the nine "*Adelphia*" factors in order to determine whether cause exists to extend the exclusive periods. These factors include: (1) the size and complexity of the case; (2) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) the fact that the debtor is paying its bills as they become due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiations with its creditors; (7) the amount of time that has elapsed in the case; (8) whether the debtor is using exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (9) whether an unresolved contingency exists. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 586-87 (Bankr. S.D.N.Y. 2006) (citing *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997)).

5

11.	The mere existence of one or more of these factors is not sufficient to justify an extension. *See In re Mid-State Raceway, Inc.*, 323 B.R. 63, 67-68 (Bankr. N.D.N.Y. 2005). The primary consideration should be whether such termination "will move the case forward" materially. *See Adelphia*, 352 B.R. at 590. This amounts to "a practical call that can override a mere toting up of the factors." *Adelphia*, 352 B.R. at 590; *Borders*, 460 B.R. at 827 (citing practical considerations as determinative in considering whether to extend or terminate exclusivity). In other words, "the test is [best] expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case." *Adelphia*, 352 B.R. at 590. Of course, "practical considerations, or other considerations in the interest of justice, could override, in certain cases, the result after analysis of the nine factors" that courts typically consider in determining whether to extend or terminate exclusivity. *Id. See also In re Excel Mar. Carriers Ltd.*, 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013) ("The ultimate test is left to considerable discretion by the Court, and it is very fact driven.").

**B.	The *Adelphia* Factors Do Not Support Further Extension of the Exclusivity Periods.**

12.	The Debtors' largely *pro forma* Second Exclusivity Motion fails to show that these factors favor granting an additional 60-day extension, which would result in the Debtors having a total of 255 days of exclusivity.[7] Indeed, application of these factors to the facts and circumstances of these chapter 11 case militates in favor of allowing the Debtors' exclusivity to lapse. In particular, the factors described below weigh in favor of denial of the Second Exclusivity Motion.

---

7.   The Debtors' exclusivity has already been extended by 35 of the requested 60 days (from August 2 to September 6) by virtue of the automatic extension afforded by Rule 9006-2 of the Local Bankruptcy Rules for the Southern District of New York.

6

### 1. *The Debtors Have Had Sufficient Time and Have Not Made Good Faith Progress Toward Reorganization*

13. In support of their request for a further extension of the Exclusivity Periods, the Debtors allege that they have made good faith progress toward exiting chapter 11 in the nearly three months since the Court approved the Debtors' first request for extension of their exclusivity periods.[8] Gemini questions whether any actual progress towards exiting chapter 11 has been made during that time.

14. The Debtors cite to a number of "meaningful steps" toward a successful restructuring, such as motion practice in connection with stay relief, negotiating bid procedures, and filing claims objections.[9] The majority of these "meaningful steps" are simply the routine tasks that every debtor performs during a chapter 11 case; they are not "cause" for extending exclusivity.

### 2. *The Debtors Have Not Demonstrated Reasonable Prospects for Confirming a Plan*

15. The Second Exclusivity Motion alleges that the Debtors have demonstrated reasonable prospects for confirming a viable plan, and point to the filing of the Amended Plan and Disclosure Statement to support such progress.[10] However, the Plan and Disclosure Statement currently on file invite more questions than answers, and are simply "placeholders" that the Debtors have acknowledged will need to be substantially revised.[11] The Plan and Disclosure

---

8. Second Exclusivity Motion ¶¶ 1, 14.

9. *Id.* ¶ 1.

10. *Id.* ¶¶ 1, 14

11. *See Notice of Filing of Revisions to Certain Sections of Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code*, ECF No. 560 ("[T]he Debtors, Digital Currency Group, Inc., the Official Committee of Unsecured Creditors, and other major stakeholders are currently engaged in discussions regarding a global resolution of issues arising in the Debtors'

Statement were filed *eleven weeks* ago, but the Debtors have adjourned the hearing to consider the adequacy of the Disclosure Statement *seven* times in that period. The Debtors disclosed in their August 29 filing that "[t]he Debtors, [the Committee] and DCG are working collaboratively on definitive documentation, including an Amended Plan incorporating the terms of the deal in principle."[12] The Debtors do not provide any timeline for such definitive documentation, and in any case, note that the "agreement in principle" does not have the support of the Debtors' creditors. Accordingly, even if the "agreement in principle" was promptly incorporated into an amended plan, that plan would be incapable of being confirmed. Despite the Second Exclusivity Motion's platitudes regarding progress being made in these cases, the reality is that these cases are currently on a road to nowhere.

### 3. *An Extension of Exclusivity Will Prejudice Creditors*

16. Allowing the Debtors to extend the Exclusivity Periods will prejudice creditors by limiting creditors to consideration of only the Debtors' unconfirmable plan. In such circumstances, all stakeholders will be forced to sit by and watch as months continue to pass and tens of millions of dollars continue to get spent by the Debtors unsuccessfully prosecuting such plan. *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("An extension should not be employed as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory"). However, denial of a further extension of the Exclusivity Periods would allow all stakeholders to be free to negotiate, propose, and have all creditors consider an alternative plan that is fair and equitable and actually capable of being confirmed. Permitting alternative plans to

---

Chapter 11 Cases, which resolution, if reached, would result in substantial modifications of the Disclosure Statement and the Plan, and the filing of a further amended Disclosure Statement and Plan.").

12. Notice of Mediation Termination, ECF No. 625 at 5.

8

be filed may also produce a competitive process that could lead to improved proposals from existing stakeholders.

17. On the other hand, terminating exclusivity will not prejudice the Debtors. The Debtors can still attempt to progress their amended plan incorporating the "agreement in principle" while competing plans progress simultaneously. *See In re Grossinger's Assoc.*, 116 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) ("[L]oss of plan exclusivity does not mean that the debtor is foreclosed from promulgating a meaningful plan of reorganization; only that the right to propose a chapter 11 plan will not be exclusively with the debtor.").

### *4. The Other Adelphia Factors Do Not Justify an Extension of the Exclusivity Periods*

18. Only two insignificant factors can arguably weigh in favor of an extension of the Exclusivity Periods, which include (i) the size and complexity of the Debtors' cases and (ii) the Debtors are paying their bills as they come due. These two factors alone do not warrant an extension of the Exclusivity Periods. *See In re Mid-State Raceway, Inc.*, 323 B.R. at 67-68 ("[T]he court is mindful that whether or not to grant an extension of exclusivity pursuant to Code § 1121(d) is a matter of discretion based on all the facts and circumstances").

19. The limited exclusivity periods set forth in the Bankruptcy Code are intended to pressure Debtors to move expeditiously. Terminating exclusivity here would allow the Debtors' creditors to move forward expeditiously with a plan that will be feasible and confirmable, and will best move these cases to a conclusion. The Gemini Lenders deserve to have their assets back as soon as possible.

**CONCLUSION**

For the foregoing reasons, Gemini respectfully requests that the Court deny the Second Exclusivity Motion and grant such other and further relief as the Court deems necessary and appropriate.

Dated: August 30, 2023
       New York, New York

/s/ Anson B. Frelinghuysen
Anson B. Frelinghuysen
Dustin P. Smith
Erin E. Diers
Hughes Hubbard & Reed LLP
New York, New York 100004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: anson.frelinghuysen@hugheshubbard.com
       dustin.smith@hugheshubbard.com
       erin.diers@hugheshubbard.com

*Counsel to Gemini Trust Company, LLC*