PROSKAUER ROSE LLP
Brian S. Rosen
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000

-and-

Jordan E. Sazant
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550

*Counsel to the Ad Hoc Group of Genesis Lenders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*, | Case No. 23-10063 (SHL) |
| Debtors.[1] | Jointly Administered |
| | **Re: Docket No. 574** |

**OBJECTION OF AD HOC GROUP OF GENESIS LENDERS TO DEBTORS'
SECOND MOTION FOR ENTRY OF AN ORDER EXTENDING THE
DEBTORS' EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN
AND SOLICIT ACCEPTANCES THEREOF AND GRANTING RELATED RELIEF**

The Ad Hoc Group of Genesis Lenders (the "Ad Hoc Group") hereby submits this objection to the *Debtors' Second Motion for Entry of an Order Extending the Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Acceptances Thereof and Granting Related Relief* [Docket No. 574] (the "Motion")[2] filed by the debtors and debtors-in-possession

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable) are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (9564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

(collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") to extend (a) the Exclusive Filing Period through and including October 2, 2023, and (b) the Exclusive Solicitation Period through and including November 30, 2023.

## BACKGROUND

1. As the Court is aware, the Ad Hoc Group represents creditors holding approximately $2.4 billion in claims against Genesis Global Capital, LLC ("GGC"), including majorities in amount of asserted USD, Bitcoin, and Ehtereum claims against GGC. Consequently, the Ad Hoc Group is a vital, and probably the most critical, constituency in the Chapter 11 Cases.

2. Since shortly after the freeze of withdrawals/loan repayments by GGC in November 2022, the Ad Hoc Group has been intimately involved in negotiations with the Debtors and their parent company, Digital Currency Group ("DCG"), and Gemini Trust N.A. ("Gemini"), negotiating a potentially consensual holistic restructuring of both the claims asserted against the Debtors, as well as the claims and causes of action held by the Debtors' estates against DCG and Gemini (the "Estate Claims"). At first, the Ad Hoc Group participated in an effort to avoid bankruptcy and establish a repayment schedule for creditors' loans. Following the filing of these Chapter 11 Cases, the Ad Hoc Group has pursued maximization of creditor recoveries and the return of creditors' valuable digital assets.

3. These efforts, while unsuccessful at staving off the Debtors' decision to commence the Chapter 11 Cases (and there was no urgency to do so), resulted in a non-binding term sheet providing for a proposed compromise and settlement of such Estate Claims (the "Term Sheet"). Unfortunately, shortly thereafter, and following the appointment of the official committee of unsecured creditors (the "UCC") on February 3, 2023, the Ad Hoc Group, the Debtors, Gemini, and the UCC acknowledged that circumstances had changed and additional information had been

2

acquired that made proceeding with the proposed Term Sheet transaction inconsistent with the interests of the Debtors' creditors.

4.      Thereafter, the parties returned to the negotiating table and the Ad Hoc Group continued to pursue a value-maximizing transaction that would provide (a) significant in-kind recoveries through an initial distribution, including the proceeds of the approximately $630 million in loans payable by DCG to GGC by no later than May 11, 2023 (the "DCG Loans"), (b) recognizable value in exchange for the release of any Estate Claims against DCG and its directors and officers on account of preference claims potentially valued in the hundreds of millions of dollars, fraud, alter ego liability for the creditors' claims, and more, and (c) additional long-dated recoveries denominated in line with creditor claims such that creditors can expect to continue to receive the benefit of their independent investment decisions with respect to the various cryptocurrency assets they lent to GGC.

5.      While the parties returned to the negotiating table under the auspices of a Court-ordered mediation process, during such period, DCG defaulted on its obligations to pay the GGC Loans, further altering the DCG/creditor dynamics and elevating uncertainty about the viability of any long-term solution and any near-term recovery. Worsening the situation, since such time, the Debtors have failed to enter into a forbearance agreement with DCG with respect to such default or, despite repeated requests to do so, to require payment of the amounts due and owing, again heightening the concerns of creditors about the prompt collectability of undisputed amounts. June, July and now August have passed and the Debtors remain paralyzed, much to the delight of the Debtors' owner, DCG, and its principal, Barry Silbert, and to the chagrin of the Ad Hoc Group and other creditor parties.

6. Notwithstanding, the Ad Hoc Group continued to participate in formal mediation and informal discussions, and its goals have been clear throughout—develop a chapter 11 plan that either (a) provides for fair value from DCG in resolution of the Estate Claims asserted against it, or (b) turns over control of the estate and the Estate Claims to creditors to pursue appropriate recoveries.

7. In that regard, the Ad Hoc Group, through its Steering Committee, met, and, until the Debtors' abrupt cessation of mediation, continued to meet, with all parties in interest to seek a reasonable, confirmable chapter 11 plan structured around a potential resolution of the Estate Claims, including the payment of the defaulted DCG Loans, as well as the $1.1 billion promissory note from DCG payable to the Debtors in 2032, and the multitude of viable and valuable claims and causes of action. And, the Ad Hoc Group believed the parties were continuing to make progress towards a supportable agreement, but, in the event not reached, that ultimately a chapter 11 plan that left these issues to the creditors would be pursued.

8. Despite the clear representations of the Ad Hoc Group—representing majorities in amount of USD, BTC, and ETH creditors—that the proposed contribution by DCG and plan distribution mechanics were unsupportable and would not receive the approval of any class of creditors, the Debtors, with the agreement of the UCC, terminated all mediation efforts under the guise of "needing to move forward" and, on August 29, 2023, published the *Public Update on Plan Discussions* [Docket No. 625], disclosing the terms of an agreement in principle tentatively reached among the Debtors, DCG, and the UCC.

9. For reasons described in the *Statement of Ad Hoc Group of Genesis Lenders in Respect of Public Update on Plan Discussions* [Docket No. 632] (the "AHG Statement"), the Ad Hoc Group does not believe the current proposed plan is confirmable either (a) as a factual matter,

4

because without the support of the Ad Hoc Group, and upon information and belief, Gemini,[3] and members of the recently-formed "Fair Deal Group," the conceptual plan will not receive an impaired accepting class, and (b) as a legal matter, because the DCG contribution is indefensible under the law.

10.  Because the Debtors' proposed plan is a bridge to nowhere, and cannot be confirmed, it would be futile to grant a further extension of the Exclusivity Periods only to delay these Chapter 11 Cases another few months while the estate continues to incur millions of dollars in unnecessary professional fees and expenses. More importantly, following such frolic would only further delay the distributions to which creditors are entitled. Instead, the Court should terminate exclusivity and permit the creditor parties—the same parties who were fraudulently induced to lend billions of fiat and cryptocurrency assets usurped by the Debtors' parent, DCG, and the only parties with a financial stake in the outcome of these Chapter 11 Cases—to propose their own chapter 11 plans for consideration. The Motion and the relief requested therein should thus be denied.

## OBJECTION

11.  Pursuant to section 1121(d) of the Bankruptcy Code, "the court may for cause reduce or increase the 120-day [Exclusive Filing Period] or the 180-day [Exclusive Solicitation Period] referred to in this section." 11 U.S.C. 1121(d). The Debtors, as the party seeking to extend the Exclusive Periods have the burden of proving the existence of "cause" for such extension. *In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 601 (Bankr. S.D.N.Y. 2014).

---

[3] The Ad Hoc Group understands that Gemini, representing approximately $1.030 in asserted claims against GGC, similarly opposes the proposed plan and settlement with DCG, *see* Docket No. 625 at 1, and that it also intends to object to extension of the Debtors' Exclusivity Periods.

12. Although the Bankruptcy Code does not define "cause," courts in this District have considered nine factors when determining whether cause exists to grant an extension of the Exclusive Periods at a party's request. Specifically, courts have considered:

> (1) the size and complexity of the case; (2) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) the fact that the debtor is paying its bills as they become due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiations with its creditors; (7) the amount of time which has elapsed in the case; (8) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (9) whether an unresolved contingency exists.

*Id.* at 601-02 (Bankr. S.D.N.Y. 2014).

13. Because not all factors are pertinent to every chapter 11 case, courts may consider the relevant factors in determining whether cause to extend the plan exclusivity periods exists. *See In re Adelphia Commc'ns Corp.*, 352 B.R. at 586 ("A decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court, and is fact-specific.").

14. The Ad Hoc Group submits that the weight of the relevant factors implicated leans against extending the Exclusive Periods and that, specifically, factors 1, 2, 5, 7, 8, and 9 weigh in favor of denying the requested extensions.

15. ***The Size and Complexity of the Case***. The Debtors point to the "billions of dollars of assets and liabilities that will need to be restructured in these Chapter 11 Cases" as the primary reason supporting the extension of the Exclusive Periods. However, the sheer amount of assets and liabilities is but one measure of the size and complexity of a chapter 11 case. Despite the large figures in question, the Debtors' estates are relatively straightforward. The Debtors no longer operate as ongoing businesses, and aside from the fiat and cryptocurrency assets already sitting on their balance sheets and the Estate Claims (including the overdue $630 million in DCG Loans and $1.1

6

billion promissory note), the Debtors have no other assets that it must distribute. The Debtors have no employees of their own that they must decide to retain or discharge, have no real property leases that they must decide to assume or reject, and have no operating business to restructure. ***Stated simply, the Debtors are but caretakers for the interests of creditors and should only be following the lead of those parties, not jamming the process forward because of its own concern of expediency***. This factor weighs against extending the Exclusive Periods. *Id.* at 601 (Bankr. S.D.N.Y. 2014).

16.     ***The Necessity for Sufficient Time to Permit the Debtor to Negotiate a Plan of Reorganization and Prepare Adequate Information***. The Debtors have already publicized the terms of the proposed amended plan of reorganization that they have negotiated and intend to pursue, so no further negotiation time is necessary. While it will certainly take time to finalize documentation relating thereto, if that is indeed possible, there is no need to extend the Exclusive Periods to do so. **It is already clear that the proposed plan will fail to receive sufficient creditor support to achieve confirmation.** Moreover, the denial of extension of the Exclusive Periods "only affords creditors their right to file a plan; there is no negative affect upon the debtor's coexisting right to file its plan." *In re Parker St. Florist & Garden Ctr., Inc.*, 31 B.R. 206, 207 (Bankr. D. Mass. 1983). Accordingly, this factor weighs against extending the Exclusive Periods. *See also Matter of All Seasons Indus., Inc.*, 121 B.R. 1002, 1005 (Bankr. N.D. Ind. 1990) ("The risk is, of course, that while it is developing its plan, another party in interest will file a plan. However, that is as Congress intended. Even if, as appears likely in this case, another party would file a plan, that plan will be subject to the same procedures and standards governing confirmation that would apply to any plan debtor might wish to propose. The debtors and other creditors can object to confirmation on any

7

number of grounds. Filing such a plan does not guarantee confirmation.") (internal quotations omitted).

17. ***Reasonable Prospects for Filing a Viable Plan***. The Debtors have not established reasonable prospects of developing and proposing a viable chapter 11 plan that the Ad Hoc Group, Gemini or the "Fair Deal Group" will support, which together comprise majorities (in most cases, substantial majorities) in amount of each potential class of impaired creditors entitled to vote on a plan. Because the Debtors have failed to demonstrate any reasonably viable path towards achieving a confirmed plan, extending the Exclusive Periods would be futile and contrary to creditors' best interests. *See In re GMG Capital Partners III, L.P.*, 503 B.R. 596 (Bankr. S.D.N.Y. 2014) (denying extension of the exclusive plan filing period where, among other factors, creditors holding a supermajority of the debtors' unsecured debt opposed the proposed plan).

18. ***The Amount of Time Elapsed in the Case***. These chapter 11 cases have been pending for only seven months. While such timeframe is relatively short in the context of a typical chapter 11 case, these proceedings involve assets and liabilities which are in constant flux and which can dramatically increase or decrease at a moment's notice. It is for that reason that time is of the essence in putting forth a confirmable chapter 11 plan, not one flawed at the outset and unable to pass the muster of creditors or satisfy the requirements of section 1129 of the Bankruptcy Code, which the Debtors have not demonstrated an ability to do. For example, the value of each Bitcoin increased by almost $1,400 alone yesterday, an increase in value which many members of the Ad Hoc Group were deprived as a result of these Chapter 11 Cases. As described above, the assets held by the Debtors' estates are relatively straightforward, and the bar date has passed establishing a ceiling for the claims that may be asserted against the Debtors. Sufficient time has elapsed that the

Debtors' Exclusive Periods should not be extended further if they cannot put forth a confirmable chapter 11 plan.

19. ***The Debtors are Seeking an Extension of Exclusivity in Order to Pressure Creditors***. The Debtors, of course, are intimately familiar with the time pressures facing many of its creditors. Many members of the Ad Hoc Group invested millions of dollars worth of fiat and cryptocurrency assets with the Debtors and have been forced to, among other things, sell other assets prematurely to fund living expenses and other obligations. Moreover, the cryptocurrency creditors in particular are acutely aware that every day cryptocurrency prices increase is another day that they are losing out on the benefit of the investment they have held for, in some cases, over a decade. Instead of working to achieve a confirmable chapter 11 plan, the Debtors have announced an intent to proceed with confirmation of a plan that provides its parent company, DCG, a "sweetheart" deal where it can pay less than it currently owes in full satisfaction of its debts *and* full releases from the Debtors' estates and non-consensual third-party releases from creditors. These pressure tactics are unavailing and should not be countenanced.

20. ***Whether any Unresolved Contingencies Exist***. There are no unresolved contingencies that exist for the Debtors to determine their course of action in these Chapter 11 Cases. The Debtors are no longer operating businesses and there are no factors external to the bankruptcy process or the Chapter 11 Cases that would materially impact the Debtors' ability to prosecute a chapter 11 plan. A confirmable chapter 11 plan can be proposed now, but the Debtors have instead determined to proceed down an alternate path.

21. The current proposed plan published by the Debtors is not factually or legally confirmable, and the Court should not waste valuable estate time and resources extending the

9

Debtors' Exclusive Periods. Instead, the Court should deny the Motion to permit creditors to propose competing plans of adjustment and to permit the voting parties to speak with their claims.

## CONCLUSION

22. For the foregoing reasons, the Ad Hoc Group respectfully requests that the Court enter an order (a) denying the Motion and terminating the Debtors' Exclusive Periods and (b) granting the Ad Hoc Group such other and further relief as is just.

Dated: August 30, 2023
      New York, New York

**PROSKAUER ROSE LLP**

*/s/ Brian S. Rosen*
Brian S. Rosen
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
Email: brosen@proskauer.com


-and-

Jordan E. Sazant
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
Email: jsazant@proskauer.com

*Counsel to the Ad Hoc Group of Genesis Lenders*