PROSKAUER ROSE LLP
Brian S. Rosen
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000

-and-

Jordan E. Sazant
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550

*Counsel to the Ad Hoc Group of Genesis Lenders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*, | Case No. 23-10063 (SHL) |
| Debtors.[1] | Jointly Administered |
| | **Re: Docket No. 603** |

**OBJECTION OF AD HOC GROUP OF GENESIS LENDERS**
**TO GENESIS DEBTORS' MOTION PURSUANT TO FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE 9019(A) FOR ENTRY OF AN**
**ORDER APPROVING SETTLEMENT AGREEMENT WITH FTX DEBTORS**

The Ad Hoc Group of Genesis Lenders (the "Ad Hoc Group") hereby submits this

objection to the *Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure for*

*Entry of an Order Approving Settlement Agreement with FTX Debtors* [Docket No. 603] (the

"Motion")[2] filed by the debtors and debtors-in-possession (collectively, the "Debtors") in the

---

[1]       The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable) are:  Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (9564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]       Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

above-captioned chapter 11 cases (the "Chapter 11 Cases") to approve the Debtors' determination

to grant Alameda Research Ltd. ("Alameda") an allowed general unsecured claim against Genesis

Global Capital, LLC ("GGC") in the amount of $175,000,000 and release Alameda and its jointly-

administered debtors in the chapter 11 cases captioned *In re FTX Trading Ltd.*, Case No. 22-11068

(JTD) (Bankr. D. Del.) (the "FTX Bankruptcy Cases," and the debtors therein, the "FTX Debtors")

from any and all claims and causes of action held by the Debtors (the "Proposed Settlement").

## PRELIMINARY STATEMENT

1.      In November 2022, the vast fraudulent enterprise conducted by the FTX Debtors and

their principals began to unravel, and dominos began to fall all across the cryptocurrency industry.

The Debtors were among the first to fall, as the panic generated by FTX's collapse led to a

groundswell of withdrawal and loan repayment requests by lenders, ultimately precipitating the

freeze of withdrawals and loan repayments by GGC and the eventual filing of these Chapter 11

Cases.

2.      The Debtors' creditors were defrauded into lending billions of fiat and

cryptocurrency assets which are no longer accessible to repay their claims.  Some of these amounts

were usurped by the Debtors' parent, DCG.  But hundreds of millions of dollars more were lost to

FTX's criminal enterprise after the Debtors were fraudulently induced to lend billions of dollars and

digital assets to Alameda.  It is unconscionable for the FTX Debtors—the very same parties whose

misdeeds led directly to the filing of these Chapter 11 Cases—to interpose themselves into these

Chapter 11 Cases to claw back from creditors the fraudulent loans they did manage to repay.  The

FTX Debtors cannot be permitted to unjustly enrich their estates at the expense of GGC's creditors

who have already suffered greatly as a result of their criminal acts.

3.      On May 22, 2023, the FTX Debtors asserted readily-apparent inflated claims (the

"FTX Claims") against the Debtors in the unsupportable aggregate amount of approximately $3.87

2

billion, comprising approximately (a) $1.8 billion in loan repayments allegedly made by Alameda to GGC, (b) $273 million of collateral allegedly pledged by Alameda to GGC in connection with outstanding loans during the FTX Preference Period, (c) $143 million of collateral allegedly pledged by Alameda to GGC prior to the FTX Preference Period, and (d) $1.6 billion of assets allegedly withdrawn by the Debtors from the FTX.com exchange during the FTX Preference Period.

4.      In reality, however, the asserted FTX Claims were no more than throwing spaghetti against the wall to see what sticks, an approach the FTX Debtors have taken in other cryptocurrency bankruptcies as well.[3]  Indeed, by July 5, the FTX Debtors had already agreed to waive the entirety of the $1.6 billion withdrawal claim on account of its invalidity.  Docket No. 476 at 2.  The remaining FTX Claims fare no better under scrutiny.

5.      At the same time, the Debtors and their affiliates have filed approximately $355 million in claims against the FTX Debtors (the "Genesis Claims") on account of (a) approximately $176 million asserted by GGC International Limited ("GGCI," and together with the Debtors, the "Genesis Entities") relating to assets frozen on the FTX trading platform, (b) approximately $140 million asserted against Alameda on account of avoidance actions during the 90 days prior to the Petition Date, and (c) an approximately $39 million claim against Alameda for loans outstanding, in addition to any claims under section 502(h) of the Bankruptcy Code relating to the FTX Claims.

6.      The Proposed Settlement fails to adequately account for the value of the Genesis Claims and should be rejected as falling well outside the range of potentially reasonable outcomes.

---

[3]      *See, e.g., In re BlockFi, Inc.*, Case No. 22-19361 (Bankr. D. N.J.) (Docket No. 1376), *Notice of BlockFi's Ninth Omnibus Objection to the FTX Claims* (objecting to the FTX Debtors' assertion of upwards of $5 billion in claims and seeking disallowance in the entirety).

## RELEVANT BACKGROUND

7.    The Debtors and the FTX Debtors have engaged in a large number of complex transactions involving billions of dollars in fiat currency and digital assets since 2019, governed by the terms of certain MLAs, which included general loan terms, collateral requirements, and loan repayment procedures.

8.    Pursuant to the MLAs, when Alameda took out a loan from GGC, Alameda was required to maintain certain levels of collateral with GGC (calculated as a percentage of the aggregate outstanding loan balance) and to pay a monthly financing fee on outstanding amounts until the loan was repaid upon its maturity date.  When collateral for the outstanding loans fell below the required collateral levels, Alameda was required, at GGC's request, to provide additional collateral. Similarly, when a loan was repaid by Alameda, GGC was required to return certain amounts of collateral.

### I.   FTX Claims

9.    The FTX Claims against the Debtors are vastly over-inflated and are facially implausible.

10.    Indeed, following analysis of the FTX Claims asserted against the Debtors, the Debtors filed the *Motion to Establish Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the Debtors Under Bankruptcy Code Sections 105(a) and 502(c) and Bankruptcy Rule 3018* [Docket No. 373] (the "Estimation Motion"), whereby the Debtors sought to establish procedures and a scheduled to estimate the FTC Claims at $0.

11.    Although the Estimation Motion makes the strong assertion that the FTX Claims are subject to strong defenses and are unsupportable, the Motion seeking approval of the Proposed Settlement provides no analysis of these defenses and the value attributable to them in determining

4

the appropriate amount of an allowed unsecured claim against GGC. However, any in-depth analysis of the FTX Claims demonstrates the highly questionable value attributable to them.

12.     ***Alameda Loan Repayments Claim***.  The first claim asserted by the FTX Debtors is approximately $1.8 billion on account of alleged loan balances repaid by Alameda to GGC. Undisclosed in the Motion, the declaration filed in support thereof, and any analysis of the propriety of the Proposed Settlement, is that the vast majority of this amount relates to a loan in the approximate amount of $1.6 billion that came due in August 2022 and was paid in the ordinary course of business on its maturity date, and likewise ignores that these loan repayments were fully collateralized under the terms of the MLAs, and that such collateral was returned to Alameda in connection with such repayment.  In addition, this portion of the claim is subject to potential defenses under § 546(e), which protect margin and settlement payments made by or to financial institutions or financial participants in connection with securities, commodities, and forward contracts.

13.     ***Collateral Claims***.  The second and third claims asserted by the FTX Debtors relate to collateral pledged by Alameda to the Debtors pursuant to the collateral requirements of the MLAs. As an initial matter, approximately $143 million of this amount was collateral pledged and transferred to the Debtors prior to the preference period and are not recoverable.  The remaining amount of this claim relating to the collateral pledged to GGC during the preference period was provided in the ordinary course of business pursuant to the requirements of the MLAs and may also be subject to defense under § 547(c) on account of the contemporaneous new value provided by not immediately calling the outstanding loan balance which would have come due and owing in accordance with the terms of the MLAs had such collateral not been posted by Alameda.

14.     ***Withdrawal Claims***.  The remainder of the FTX Claims relate to alleged withdrawals from the FTX.com trading platform.  Not only are these amounts subject to valid defense, but more

importantly they are not claims assertable against the Debtors because the counterparty that withdrew such amounts was non-debtor GGCI. Tellingly, by July 5, the FTX Debtors had already conceded these claims were not cognizable and had agreed that "the aggregate FTX Preference Claims against GGC will not exceed $2.0 billion." Docket No. 476 at 2.

## II. Genesis Claims

15.    In stark contrast to the FTX Claims, the Genesis Claims relate to real value that has been lost and remains unrecoverable as a result of FTX's collapse and the filing of the FTX Bankruptcy Cases.

16.    ***Customer Claims***. FTX.com was the largest cryptocurrency trading platform prior to the world becoming aware of the fraudulent nature of its business operations. The Genesis Entities were among the many users of FTX.com's trading platform and, at the time of FTX's collapse and the filing of the FTX Bankruptcy Cases, GGCI held approximately $176 million "in locked funds in its FTX trading account."[4] Indeed, these locked amounts were initially advertised by the Debtors as a driving factor behind their own freeze of withdrawals and loan redemptions on November 16, 2022. More importantly, however, these amounts are not in dispute. Indeed, the FTX Debtors' *Revised DotCom List of Top 50 Creditors* [FTX Bankruptcy Cases, Docket No. 540] lists GGCI as its top creditor owed approximately $227 million, almost $50 million greater than the amount claimed by GGCI in its proof of claim.[5]

---

[4]    *See Genesis' Crypto-Lending Unit is Halting Customer Withdrawals in Wake of FTX Collapse*, Nelson Wang, CoinDesk (Nov. 16, 2022) (*available at https://www.coindesk.com/business/2022/11/16/genesis-crypto-lending-unit-is-halting-customer-withdrawals-in-wake-of-ftx-collapse/#:~:text=Last%20week%2C%20Genesis%20disclosed%20that,equity%20infusion%20of%20%24140%20million.*).

[5]    The Ad Hoc Group understands that the FTX Debtors' amended schedules of assets and liabilities have instead listed this claim in the amount of approximately $22 million.

17.     ***Avoidance Actions***.  The Debtors have also asserted approximately $140 million in avoidance actions claims against Alameda relating to amounts that were paid by GGC to Alameda. It is the Ad Hoc Group's understanding that these avoidance actions claims may be subject to similar defenses as those assertable by GGC against the FTX Claims.

18.     ***Outstanding Loan Balance***.   Finally, the Debtors maintain a claim in the approximate amount of $39 million in respect of outstanding principal loan amounts owing to GGC after GGC's November 8, 2023 foreclosure on the collateral securing such loans.  As of November 8, 2023, Alameda had defaulted on a loan of approximately $150 million.  Pursuant to the MLAs, Genesis validly foreclosed upon collateral worth approximately $111 million, leaving a remaining loan balance of approximately $39 million.

**III. Settlement Motion**

19.     In the months following the filing of the Estimation Motion, the Debtors and the FTX Debtors have negotiated the terms of a global settlement, memorialized in the Proposed Settlement described in the Settlement Motion, which would, among other things, provide Alameda with an allowed general unsecured claim against GGC in the amount of $175 million while waiving any claims and causes of action held by the Genesis Entities against FTX.

20.     The Debtors purport to defend this Proposed Settlement exclusively by referencing (a) the large discrepancy between the asserted amounts of the FTX Claims and the Proposed Settlement amount, and (b) the avoidance of litigation costs.  The Debtors put forth no additional analysis regarding the potential risk-adjusted values of the FTX Claims accounting for the strong defenses of the Debtors, or the potential recoveries on the Genesis Claims that are being waived in connection therewith.

**OBJECTION**

21.     The Ad Hoc Group does not dispute that $175 million is a reasonable estimate of the value of the FTX Claims, accounting for the asserted amounts and the strong defenses thereto. However, the Proposed Settlement implies a true valuation of the FTX Claims near $400 million when accounting for the release of the Genesis Claims against the FTX Debtors.  Given the strong defenses to both the Alameda Loan Repayments Claim and the Collateral Claims, the Proposed Settlement does not represent a reasonable compromise between the parties, but rather truly values the FTX Claims at their greatest allowable amount.

22.     While compromises and settlements are generally favored under the Bankruptcy Code, "the settlement proponent bears the burden to persuade the court that the settlement is in the best interests of the estate." *In re NII Holdings, Inc.*, 536 B.R. 61, 99 (Bankr. S.D.N.Y. 2015).

23.     "In assessing whether a settlement is in the best interests of the estate, it is not necessary for the court to conduct a mini-trial of the facts or the merits underlying each dispute. Rather, the court must be 'apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment.' . .  However, while the court may 'give weight to the debtor's opinion that the settlement is fair and equitable, it may not simply adopt the debtor's position without making its own independent inquiry.'" *Id.* (*quoting In re Dewey & Lebeouf LLP*, 478 B.R. 627, 640-41 (Bankr. S.D.N.Y. 2012)).

24.     For this Court to make its own independent judgment as to the reasonableness of the Proposed Settlement, it must be apprised of *all of the facts*—both the assertions *and* the defenses to such claims—before it can make any determination.  The Debtors have failed to apprise the Court of both sides of the coin in the Motion, which fails to provide any detail or analysis of the Debtors' available defenses to the FTX Claims.

25.     Courts in this Circuit apply an eight-factor test to determine whether a proposed settlement is within the 'range of reasonableness' sufficient for its approval:

> (1) the probability of success in litigation, with due consideration for the uncertainty of fact and law; (2) the difficulties in collecting any litigated judgment; (3) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; (4) the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement; (5) the competence and experience of counsel who support the settlement; (6) the relative benefits to be received by members of any affected class; (7) the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion; and (8) the debtor's informed judgment that the settlement is fair and reasonable.

*In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

26.     The Ad Hoc Group respectfully submits that, taking into account the defenses to the FTX Claims that were not analyzed or even described by the Debtors, factors 1, 2, 4, 6, and 8 weigh in favor of rejecting the Motion and disapproving the Proposed Settlement.

27.     ***Probability of Success in Litigation***.  While any litigation is inherently uncertain and subject to many different outcomes, an analysis of the competing estates' claims against one another shows very clearly that (1) the FTX Claims are wildly over-estimated and are subject to strong factual defenses, and (2) the Genesis Claims largely do not suffer from the same defects. Accordingly, while it is likely that any litigation would provide the FTX Debtors with a claim against the Debtors' estates, such claim is likely to be valued at or around the $175 million amount of the Proposed Settlement.  Meanwhile, the Genesis Entities would likely have (a) assertable claims against the FTX Debtors in the amount of approximately $215 million, and (b) 502(h) claims corresponding to any allowed FTX Claims on account of avoidance actions.  Accordingly, litigation would almost certainly result in a greater outcome for the Debtors' estates than the Proposed Settlement.

28.     ***Difficulties in Collecting on Judgment***.   Both the FTX Claims and the Genesis

Claims are asserted against debtors in Court-supervised bankruptcy proceedings.   While the amount

of recovery on any such litigated judgments is unknown at this time, there is no difficulty in

collecting, as the claims would be deemed allowed against the respective debtors and would be

administered under an eventual chapter 11 plan or in connection with any chapter 7 conversion.

29.     ***Proportion of Objecting Creditors***.   The Ad Hoc Group alone represents

approximately $2.4 billion in claims asserted against GGC, including majorities in amount of each

of the USD, BTC, and ETH creditor classes.   Accordingly, a majority of creditors (and potentially

substantial majority depending on other objectors) oppose the Proposed Settlement and do not

believe that it is in their best interests.

30.     ***Relative Benefits Received by Class Members***.   There are no relative benefits to

GGC creditors from the Proposed Settlement aside from the avoidance of litigation costs.   But

members of the USD class of GGC creditors will have their *pro rata* shares of such class' recoveries

diluted by almost 10% on account of the $175 million allowed claim.   In addition, they will also lose

any potential benefits from the Genesis Claims that could provide additional distributable value for

all creditors.

31.     ***Debtor's Informed Judgment that Settlement is Fair***.   The Debtors support the

Proposed Settlement and their reasonable business judgment with the *Declaration of A. Derar Islim*

*in Support of the Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure for*

*Entry of an Order Approving Settlement Agreement with FTX Debtors* (the "Islim Declaration"), a

copy of which is attached to the Motion.   The Islim Declaration provides a description of the

settlement process and states that conversations were conducted on the Debtors' behalf by their

counsel, and that "[a]fter numerous exchanges of settlement offers between the Parties via email

10

correspondence and telephone conversations between the Parties' respective counsel, the Parties reached a deal in principle on or around July 20, 2023." Islim Declaration, ¶ 7. The Islim Declaration then follows with the conclusory statement that "weighing the reasonableness factors for purposes of Bankruptcy Rule 9019, the Genesis Debtors, acting through their independent Special Committee and their advisors have concluded that the Settlement Agreement is fair and equitable …." *Id*.

32.    Similar to the Motion, the Islim Declaration is mere boilerplate and contains no analysis of the costs and benefits attendant to the Proposed Settlement, instead comparing the ultimate Proposed Settlement amount against the overstated amount of the asserted FTX Claims. It simply cannot be the case that it is "reasonable" to settle solely on this basis, otherwise any claimant could file grossly overstated claims in the hopes of extracting significant settlement value to avoid the nuisance of litigation. These tactics should not be rewarded and are not reasonable.

33.    Moreover, the Islim Declaration does not contain a single mention of the defenses to the FTX Claims or any analysis of their potential value nor any analysis of the strength and recoverable value associated with the Genesis Claims that are being waived. The Islim Declaration is insufficient support for the Debtors to meet their evidentiary burden of proof to the Court that the Proposed Settlement is in the best interests of the estate.

## CONCLUSION

34.    For the foregoing reasons, the Ad Hoc Group respectfully requests that the Court enter an order (a) denying the Motion and disallowing the Proposed Settlement, and (b) granting the Ad Hoc Group such other and further relief as is just.

Dated: August 31, 2023
      New York, New York

**PROSKAUER ROSE LLP**

*/s/ Brian S. Rosen*
Brian S. Rosen
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
Email: brosen@proskauer.com


-and-

Jordan E. Sazant
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
Email:  jsazant@proskauer.com

*Counsel to the Ad Hoc Group of Genesis Lenders*