# EXHIBIT X
# Pledge Agreements

## PLEDGE SUPPLEMENT

**THIS PLEDGE SUPPLEMENT** (as amended, amended and restated, supplemented or otherwise modified from time to time, this "***Supplement***"), dated as of June 16, 2020, is made by **THREE ARROWS CAPITAL LTD** (the "***Pledgor***"), in favor of **GENESIS GLOBAL CAPITAL, LLC** (the "***Secured Party***"). All capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Pledge Agreement (as defined below).

**WHEREAS**, the Pledgor is required under the terms of that certain Pledge Agreement dated as of May 28, 2020, executed by the Pledgor, in favor of the Secured Party (as from time to time amended, restated, supplemented or otherwise modified from time to time, the "***Pledge Agreement***"), to cause certain Equity Interests held by it and listed on <u>Supplemental Schedule A</u> attached to this Supplement (the "***Additional Interests***") to be specifically identified as subject to the Pledge Agreement; and

**WHEREAS**, the Pledgor has acquired rights in the Additional Interests and desires to evidence its prior pledge to the Secured Party of the Additional Interests in accordance with the terms of the Master Agreement and the Pledge Agreement;

**NOW, THEREFORE**, in order to induce the Agent and Lenders to maintain the loans advanced pursuant to the Master Agreement, the Pledgor hereby agrees as follows with the Agent:

1.    <u>**Affirmations**</u>.

(a)    The Pledgor hereby reaffirms and acknowledges the pledge and collateral assignment to, and the grant of security interest in, the Additional Interests contained in the Pledge Agreement and pledges and collaterally assigns to the Secured Party a first priority lien and security interest, to secure the performance of all Secured Obligations in (a) the Additional Interests and (b) all proceeds of any of the foregoing.

(b)    The Pledgor hereby acknowledges, agrees and confirms by its execution of this Supplement that the Additional Interests constitute "Equity Interests" under and are subject to the Pledge Agreement, and the items of property referred to in clauses (a) and (b) above (the "***Additional Collateral***") shall collectively constitute "Collateral" under and are subject to the Pledge Agreement. Each of the representations and warranties with respect to Equity Interests and Collateral contained in the Pledge Agreement is hereby made by the Pledgor with respect to the Additional Interests and the Additional Collateral, respectively. Attached to this Supplement is a duly completed <u>Supplemental Schedule A</u> (the "***Supplemental Schedule***") supplementing as indicated thereon <u>Schedule A</u> to the Pledge Agreement. The Pledgor represents and warrants that the information contained on the Supplemental Schedule with respect to such Additional Interests is true, complete and accurate as of the date of its execution of this Supplement.

2.    <u>**Miscellaneous**</u>.    <u>Section 9(i)</u> of the Pledge Agreement is hereby incorporated *mutatis mutandi* in this Agreement as if fully set forth herein.

*[Signature Pages Follow]*

**IN WITNESS WHEREOF**, the Pledgor has caused this Supplement to be duly executed by its authorized officer as of the day and year first above written.

**PLEDGOR:**

**THREE ARROWS CAPITAL LTD**

By: _____

Name: Kyle Davies

Title:   Chairman

*[Signature Page to Pledge Agreement Supplement]*

Accepted:

**GENESIS GLOBAL CAPITAL, LLC**

By: _Kristopher Johnson_ _____
Name:  Kristopher Johnson
Title:   Senior Risk Officer

*[Signature Page to Pledge Agreement Supplement]*

DocuSign Envelope ID: 82718AD5-07D1-4A9E-9268-417BCAC8FED6

## SUPPLEMENTAL SCHEDULE A

ADDITIONAL PLEDGED EQUITY

| Trust | Pledged Shares | Transaction Advice Number |
|---|---|---|
| Grayscale Bitcoin Trust (BTC) | 2,076,238 | 425243 |

# PLEDGE AGREEMENT

This **PLEDGE AGREEMENT** ("*Agreement*") is entered into as of May 28, 2020, by and between **GENESIS GLOBAL CAPITAL, LLC** ("*Secured Party*") and **THREE ARROWS CAPITAL LTD** ("*Pledgor*").

    **WHEREAS**, Pledgor and Secured Party are entering into that certain Master Loan Agreement dated as of January 10, 2019 (together with any Loan Term Sheet thereunder, and as amended, modified, supplemented, or restated from time to time, the "*Master Agreement*"; unless specified otherwise, capitalized terms used but not defined herein shall have the meanings assigned in the Master Agreement); and

    **WHEREAS**, in connection with the Master Agreement, Pledgor has agreed to grant a security interest in, and pledge and assign as applicable, the Collateral (hereinafter defined) to Secured Party, as herein provided.

    **NOW, THEREFORE**, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto agree as follows:

1.    **Security Interest**.  To secure the payment and the performance of the Secured Obligations (hereinafter defined), Pledgor hereby pledges, assigns and grants to Secured Party a first priority security interest and lien in all of the following (collectively, the "*Collateral*"): (a) Pledgor's Equity Interests (hereinafter defined) in the trusts listed on Schedule A (as the same may be updated from time to time) (each, a "*Trust*", and collectively, the "*Trusts*")), and the certificates, if any, representing Pledgor's Equity Interests in the Trusts, as such interests may be increased or otherwise adjusted from time to time, including, without limitation, Pledgor's capital accounts, Pledgor's interests in the net cash flow, net profit and net loss, and items of income, gain, loss, deduction and credit of the Trusts, and Pledgor's interests in all distributions made or to be made by the Trusts to Pledgor; (b) all of Pledgor's rights, titles, and interests in the Organizational Documents (hereinafter defined) of the Trusts, Pledgor's rights to vote upon, approve, or consent to (or withhold consent or approval to) any matter pursuant to the Organizational Documents of the Trusts, or otherwise to control, manage, or direct the affairs of the Trusts, Pledgor's rights to terminate, amend, supplement, modify or waive performance under, the Organizational Documents of the Trusts, or perform thereunder, and to compel performance and otherwise to exercise all remedies thereunder, and all of the other economic and non-economic rights, titles and interests of Pledgor as a member of the Trusts and under the Organizational Documents of the Trusts, in each case, whether set forth in the Organizational Documents of the Trusts, by separate agreement or otherwise; and (c) the proceeds of all of the foregoing.

2.    **Secured Obligations**.  "*Secured Obligations*" means, in each case, whether now in existence or hereafter arising: (a) all payment obligations and any applicable interest thereon (including interest accruing after the filing of any bankruptcy or similar petition) and (b) all other fees and commissions (including attorneys' fees in connection with Secured Party's enforcement or protection of its rights under the Master Agreement or any Loan Document), charges, indebtedness, loans, liabilities, financial accommodations, obligations, covenants and duties, in each case owing by Pledgor to Secured Party under the Master Agreement and any Loan Document, and whether or not evidenced by any note and including interest and fees that accrue after the commencement by or against Pledgor of any proceeding under any bankruptcy or insolvency law or other similar law affecting creditors' rights, naming Pledgor as the debtor in such proceeding, including fees, indemnification obligations, expenses or otherwise, and all costs and expenses of administering or maintaining the Collateral and of enforcing the rights of Secured Party hereunder and under the Master Agreement and the other Loan Documents.

3.    **Consent**.  Grayscale Investments, LLC, as sponsor of each Trust, hereby irrevocably (a) consents to the grant of the security interests by Pledgor described in *Section 1* of this Pledge Agreement, (b) consents to the transfer or conveyance of the Collateral pursuant to Secured Party's exercise of its rights

DocuSign Envelope ID: 09E698818-206A-450C-9212-3731187EF5EF

and remedies under this Agreement or any of the other Loan Documents, at law or in equity, (c) consents to the admission of Secured Party, its nominees, or any other transferee of any Collateral as a shareholder of such Trust, and (d) agrees that all terms and conditions in its Organizational Documents applicable to the pledge of any Collateral, the enforcement thereof, the transfer of any Collateral or the admission of Secured Party or its nominees, or any other transferee of any Collateral as a shareholder of such Trust have been satisfied or waived. Pledgor hereby irrevocably agrees not to vote to amend the Organizational Documents of such Trust to (a) modify any of the provisions thereof which could be adverse to the interests of the Secured Party or any of its successors, assigns or designees or (b) provide that its equity interests are securities governed by Article 8 of the UCC, or otherwise certificate its equity interests, and hereby agrees and acknowledges that any such vote shall be invalid and any such amendment shall be void ab initio.

4.      **Pledgor's Warranties**.  Pledgor represents and warrants to Secured Party as follows:

(a)      Pledgor owns Equity Interests of the Trusts, all of which have been duly and validly issued, are fully paid and non-assessable. None of the Collateral is certificated. Pledgor owns all Collateral free and clear from any set-off, claim, restriction, lien, security interest or encumbrance, except the security interest hereunder and the vesting provisions to which the Collateral is subject, and has full power and authority to grant to Secured Party the security interest in such Collateral pursuant hereto. The execution, delivery and performance by Pledgor of this Agreement have been duly and validly authorized by all necessary company action, and this Agreement constitutes a legal, valid, and binding obligation of Pledgor and creates a security interest which is enforceable against Pledgor in all now owned and hereafter acquired Collateral, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity.

(b)      Neither the execution and delivery by Pledgor of this Agreement, the creation and perfection of the security interest in the Collateral granted hereunder, nor compliance with the terms and provisions hereof will violate any law, rule, regulation, order, writ, judgment, injunction, decree or award binding on Pledgor or any contracts or agreements to which Pledgor is a party or is subject, or by which Pledgor, or its property, is bound, or conflict with or constitute a default thereunder, or result in the creation or imposition of any lien pursuant to the terms of any such contract or agreement (other than any lien of Secured Party). There is no litigation, investigation or governmental proceeding threatened against Pledgor or any of its properties which if adversely determined would result in a material adverse effect on the Collateral or Pledgor.

(c)      The Equity Interests that are included in the Collateral have not been financed by the Secured Party or its affiliates.

5.      **Pledgor's Covenants.**  Until full payment and performance of all of the Secured Obligations:

(a)      <u>Secured Obligations and this Agreement</u>. Pledgor shall perform all of its agreements herein, in the Master Agreement and in the other Loan Documents.

(b)      <u>Pledgor Remains Liable</u>.  Notwithstanding anything to the contrary contained herein, (i) Pledgor shall remain liable under the contracts and agreements included in the Collateral, if any, to the extent set forth therein to perform all duties and obligations thereunder to the same extent as if this Agreement had not been executed; (ii) the exercise by Secured Party of any of its rights hereunder shall not release Pledgor from any of its duties or obligations under the contracts and agreements included in the Collateral, if any; and (iii) Secured Party shall not have any obligation or liability under the contracts and agreements included in the Collateral by reason of this Agreement, nor shall Secured Party be obligated to perform any of the obligations or duties of

Pledgor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

(c)     <u>Collateral</u>.    The security interest in the Collateral granted pursuant to this Agreement is a valid and binding first priority security interest in the Collateral subject to no other liens or security interests, and Pledgor shall keep the Collateral free from all liens and security interests, except those for taxes not yet due and payable and the security interest hereby created. Pledgor shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein adverse to Secured Party.   Secured Party acknowledges that the Collateral is subject to vesting provisions and agrees that any restrictions related to such vesting provisions are not a breach by Pledgor of any obligation under this Agreement or any Loan Document.

(d)     <u>Secured Party's Costs</u>.  Pledgor shall pay all costs necessary to obtain, preserve, perfect, defend and enforce the security interest created by this Agreement (including the preparation of this Agreement), collect the Secured Obligations, and preserve, defend, enforce and collect the Collateral, including but not limited to payment of taxes, assessments, reasonable attorney's fees, legal expenses and expenses of sales.  Whether the Collateral is or is not in Secured Party's possession, and without any obligation to do so and without waiving Pledgor's default for failure to make any such payment, Secured Party, at its option, may pay any such costs and expenses and discharge encumbrances on the Collateral, and such payments shall be a part of the Secured Obligations and bear interest at the rate set for the Secured Obligations. Pledgor agrees to reimburse Secured Party on demand for any costs so incurred.

(e)     <u>Financing Statements</u>.  No financing statement, register of mortgages, charges and other encumbrances or similar document covering the Collateral or any part thereof is or shall be maintained at the registered office of Pledgor or on file in any public office (except in favor of Secured Party), and Pledgor will, at the request of Secured Party, join the Secured Party in (i) filing one or more financing statements pursuant to the UCC (as defined below) naming Secured Party as secured party, and/or (ii) executing and/or filing such other documents required under the laws of all jurisdictions necessary or appropriate in the judgment of Secured Party to obtain, maintain and perfect its first priority security interest in, and lien on, the Collateral.

(f)     <u>Information</u>.  Pledgor shall promptly furnish Secured Party any information with respect to the Collateral requested by Secured Party.

(g)     <u>Notice of Changes</u>.  Pledgor is Three Arrows Capital Ltd with its principal place of business and chief executive office located at 7 Temasek Boulevard #21-04, Singapore 038987. Pledgor shall promptly (and in any event at least fifteen (15) Business Days prior) notify Secured Party in writing of (i) any change in his legal name, address, or jurisdiction of formation or (ii) a change in any matter warranted or represented by Pledgor in this Agreement.

(h)     <u>Possession of Collateral</u>.  Pledgor shall deliver all investment securities and other instruments and documents which are a part of the Collateral to Secured Party promptly, or if hereafter acquired, promptly following acquisition, in a form suitable for transfer by delivery or accompanied by duly executed instruments of transfer or assignment in blank with signatures appropriately guaranteed in form and substance suitable to Secured Party.

(i)     <u>Voting Rights</u>.  After the occurrence of an Event of Default, Secured Party is entitled to exercise all voting rights pertaining to any Collateral. Prior to the occurrence of an Event of Default, Pledgor may vote the Collateral, *provided, however*, that no vote shall be cast or consent, waiver, or ratification given or action taken without the prior written consent of Secured Party

which would (i) be inconsistent with or violate any provision of this Agreement or any other Loan Document or (ii) amend, modify, or waive any term, provision or condition of any charter document, or other agreement relating to, evidencing, providing for the issuance of, or securing any Collateral, except to the extent any such amendment, modification or waiver would not be reasonably likely to have an adverse effect on Secured Party. If an Event of Default occurs and if Secured Party elects to exercise such right, the right to vote any pledged securities shall be vested exclusively in Secured Party. To this end, Pledgor hereby irrevocably constitutes and appoints Secured Party the proxy and attorney-in-fact of Pledgor, with full power of substitution, to vote, and to act with respect to, any and all Collateral standing in the name of Pledgor or with respect to which Pledgor is entitled to vote and act, subject to the understanding that such proxy may not be exercised unless an Event of Default has occurred. The proxy herein granted is coupled with an interest, is irrevocable, and shall continue until the Secured Obligations have been paid and performed in full or the Event of Default has been cured or waived, whichever comes first.

(j)    Other Parties and Other Collateral.  No renewal or extensions of or any other indulgence with respect to the Secured Obligations or any part thereof, no modification of the document(s) evidencing the Secured Obligations, no release of any security, no release of any person (including any maker, indorser, guarantor or surety) liable on the Secured Obligations, no delay in enforcement of payment, and no delay or omission or lack of diligence or care in exercising any right or power with respect to the Secured Obligations or any security therefor or guaranty thereof or under this Agreement shall in any manner impair or affect the rights of Secured Party under any law, hereunder, or under any other agreement pertaining to the Collateral. Secured Party need not file suit or assert a claim for personal judgment against any person for any part of the Secured Obligations or seek to realize upon any other security for the Secured Obligations, before foreclosing or otherwise realizing upon the Collateral.

(k)    Waivers by Pledgor.  Pledgor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Secured Obligations; waives notice of any change in financial condition of any person liable for the Secured Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Secured Obligations; and agrees that maturity of the Secured Obligations and any part thereof may, be accelerated, extended or renewed only in accordance with the Master Agreement. Pledgor waives any right to require that any action be brought against any other person or to require that resort be had to any other security or to any balance of any deposit account. Pledgor further waives any right of subrogation or to enforce any right of action against any other pledgor until the Secured Obligations are paid in full.

(l)    Further Assurances.  Pledgor agrees that, from time to time upon the written request of Secured Party, Pledgor will execute and deliver such further documents (including, without limitation, the delivery of a Pledge Supplement in the form of Exhibit A with respect to any additional Trusts and a control agreement with respect to the Collateral) and diligently perform such other acts and things in any jurisdiction (including, without limitation, Singapore) as Secured Party may reasonably request to fully effect the purposes of this Agreement, to further assure the first priority status of the Lien granted pursuant hereto or to enable Secured Party to exercise or enforce its rights under this Agreement or under the Master Agreement with respect to the Collateral or the collateral posted under the Master Agreement.

6.    **Power of Attorney**.  Pledgor hereby irrevocably constitutes and appoints Secured Party and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the name of Pledgor or in its own name, to take after the occurrence of an Event of Default and from time to time thereafter, any and all action and to execute any and all documents and instruments which Secured Party at any time and from time to time deems necessary or desirable to

4

accomplish the purposes of this Agreement, including, without limitation, selling, in the manner set forth herein, any of the Collateral on behalf of Pledgor as agent or attorney in fact for Pledgor and applying the proceeds received therefrom in Secured Party's discretion; *provided, however*, nothing in this paragraph shall be construed to obligate Secured Party to take any action hereunder nor shall Secured Party be liable to Pledgor for failure to take any action hereunder and, upon request, Secured Party shall promptly furnish Pledgor with a written summary of all sales hereunder. This appointment shall be deemed a power coupled with an interest, is irrevocable, and shall continue until the Secured Obligations have been paid and performed in full or the Event of Default has been cured or waived, whichever comes first.

7.    **Rights and Powers of Secured Party**.  Upon the occurrence of an Event of Default, Secured Party, without liability to Pledgor, may: vote the Collateral; take control of proceeds, including stock received as dividends or by reason of stock splits; take control of funds generated by the Collateral, such as cash dividends, interest and proceeds, and use same to reduce any part of the Secured Obligations and exercise all other rights which an owner of such Collateral may exercise; and, at any time, transfer any of the Collateral or evidence thereof into its own name or that of its nominee. Secured Party shall not be liable for failure to collect any account or instruments, or for any act or omission on the part of Secured Party, its officers, agents or employees, except for any act or omission arising out of their own willful misconduct or fraud. The foregoing rights and powers of Secured Party will be in addition to, and not a limitation upon, any rights and powers of Secured Party given by law, elsewhere in this Agreement, or otherwise.

8.    **Default.**

(a)    <u>Event of Default</u>.  As used herein, "***Event of Default***" means any "Event of Default" under the Master Agreement with respect to which Pledgor is the Defaulting Party.

(b)    <u>Rights and Remedies</u>.  If any Event of Default occurs, in each and every such case, Secured Party may, without (i) presentment, demand, or protest, (ii) notice of default, dishonor, demand, non-payment, or protest, (iii) notice of intent to accelerate all or any part of the Secured Obligations, (iv) notice of acceleration of all or any part of the Secured Obligations, or (v) notice of any other kind, all of which Pledgor hereby expressly waives (except for any notice required under this Agreement, any other Loan Document, or which may not be waived under applicable law), at any time thereafter exercise and/or enforce any of the following rights and remedies, at Secured Party's option:

(i)    *Acceleration*.  The Secured Obligations under the Master Agreement and the other Loan Documents shall, at Secured Party's option, become immediately due and payable, and the obligation, if any, of Secured Party to permit further borrowings under the Master Agreement shall, at Secured Party's option, immediately cease and terminate.

(ii)    *Liquidation of Collateral*.  Sell, or instruct any agent or broker to sell, all or any part of the Collateral in a public or private sale, direct any agent or broker to liquidate all or any part of any account and deliver all proceeds thereof to Secured Party, and apply all proceeds to the payment of any or all of the Secured Obligations in such order and manner as Secured Party shall, in its discretion, choose.

(iii)    *Uniform Commercial Code*.  All of the rights, powers and remedies of a secured creditor under the Uniform Commercial Code ("***UCC***") as the same may, from time to time, be in effect in the State of New York, *provided, however*, in any event that, by reason of mandatory provisions of Law, any or all of the attachment, perfection or priority (or terms of similar import in any applicable jurisdiction) of Secured Party's security interest in any Collateral is governed by the Uniform Commercial Code (or other similar Law) as in effect in a jurisdiction (whether within or outside the United States)

other than the State of New York, the term "UCC" shall mean the Uniform Commercial Code (or other similar Law) as in effect in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority (or terms of similar import in such jurisdiction) and for purposes of definitions related to such provisions, and any and all rights and remedies available to it as a result of this Agreement or any other Loan Document, including, without limitation, the right, to the maximum extent permitted by law, to exercise all voting, consensual and other powers of ownership pertaining to the Collateral (including, without limitation, the right to sell, transfer, pledge or redeem any and all of the Collateral, which right shall be exercised in a commercially reasonable manner) as if Secured Party was the sole and absolute owner thereof (and Pledgor agrees to take all such action as may be appropriate to give effect to such right).

Pledgor specifically understands and agrees that any sale by Secured Party of all or any part of the Collateral pursuant to the terms of this Agreement may be effected by Secured Party at times and in manners which could result in the proceeds of such sale being significantly and materially less than what might have been received if such sale had occurred at different times or in different manners, and Pledgor hereby releases Secured Party and its officers and representatives from any and all obligations and liabilities arising out of or related to the timing or manner of any such sale; provided, however, that any such sale shall be conducted in a commercially reasonable manner. If, in the opinion of Secured Party, there is any question that a public sale or distribution of any Collateral will violate any state or federal securities law, Secured Party may offer and sell such Collateral in a transaction exempt from registration under federal securities law, and any such sale made in good faith by Secured Party shall be deemed "commercially reasonable." Furthermore, Pledgor acknowledges that any such restricted or private sales may be at prices and on terms less favorable to Pledgor than those obtainable through a public sale without such restrictions, but agrees that such sales are commercially reasonable. Pledgor further acknowledges that any specific disclaimer of any warranty of title or the like by Secured Party will not be considered to adversely affect the commercial reasonableness of any sale of Collateral. Any notice made shall be deemed reasonable if sent to Pledgor at the address set forth in *Article XIV* of the Master Agreement at least ten (10) days prior to (i) the date of any public sale or (ii) the time after which any private sale or other disposition may be made.

Secured Party's duty of care with respect to Collateral in its possession (as imposed by law) shall be deemed fulfilled if it exercises reasonable care in physically safekeeping such Collateral or, in the case of Collateral in the custody or possession of a bailee or other third party, exercises reasonable care in the selection of the bailee or other third party, and the Secured Party need not otherwise preserve, protect, insure or care for any Collateral. Secured Party shall not be obligated to preserve any rights Pledgor may have against prior parties, to realize on the Collateral at all or in any particular manner or order, or to apply any cash proceeds of Collateral in any particular order of application.

(iv)     *Deficiencies*.  If any Secured Obligations remain after the application of the proceeds of the Collateral, Secured Party may continue to enforce its remedies under this Agreement or the other Loan Documents to collect the deficiency.

(v)     *Excess*.  Not in limitation of any of Secured Party's rights hereunder, under the Loan Documents or under applicable law, if the proceeds of the Collateral exceed the amount of the Secured Obligations (any such exceeds, the "***Excess Proceeds***"), the Excess Proceeds will be delivered to Pledgor in accordance with the terms of the Master Agreement.

9.     **General.**

(a)     Parties Bound.  Secured Party's rights hereunder shall inure to the benefit of its successors and assigns, and in the event of any assignment or transfer of any of the Secured Obligations or the Collateral, Secured Party thereafter shall be fully discharged from any

responsibility with respect to the Collateral so assigned or transferred, but Secured Party shall retain all rights and powers hereby given with respect to any of the Secured Obligations or the Collateral not so assigned or transferred. Secured Party may assign all or a portion of its rights and obligations under this Agreement only in connection with the assignment of its rights and obligations under the Master Agreement in circumstances permitted by the Master Agreement. Pledgor may not assign any of its rights and obligations under this Agreement to any person or entity without the prior written consent of Secured Party. All representations, warranties and agreements of Pledgor shall be binding upon the personal representatives, heirs, successors and assigns of Pledgor.

(b)    <u>Discretion by Secured Party</u>.  Any determinations made by Secured Party shall be made, in each case, in its sole discretion exercised in good faith unless otherwise stated herein.

(c)    <u>Termination</u>.  This Agreement shall remain in full force and effect until all of the Secured Obligations and any other amounts payable hereunder are indefeasibly paid and performed in full and the Loan Documents are terminated.

(d)    <u>Waiver</u>.  No delay of Secured Party in exercising any power or right shall operate as a waiver thereof, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right. No waiver by Secured Party of any right hereunder or of any default by Pledgor shall be binding upon Secured Party unless in writing, and no failure by Secured Party to exercise any power or right hereunder or waiver of any default by Pledgor shall operate as a waiver of any other or further exercise of such right or power or of any further default. Each right, power and remedy of Secured Party as provided for herein related to the Secured Obligations, or which shall now or hereafter exist at law or in equity or by statute or otherwise, shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy. The exercise or beginning of the exercise by Secured Party of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by Secured Party of any or all other such rights, powers or remedies.

(e)    <u>Definitions</u>.  Unless the context indicates otherwise, definitions in the UCC apply to words and phrases in this Agreement; if UCC definitions conflict, Article 8 and/or 9 definitions apply.  The following terms, when used in this Agreement, shall have the meanings assigned to them below:

(i)    "***Equity Interests***" means, with respect to any corporation, limited liability company, trust, joint venture, association, company, partnership or other entity, all of the shares of capital stock thereof (or other ownership or profit interests therein), all of the warrants, options or other rights for the purchase or acquisition from such corporation, limited liability company, trust, joint venture, association, company, partnership or other entity of shares of capital stock thereof (or other ownership or profit interests therein), all of the securities convertible into or exchangeable for shares of capital stock thereof (or other ownership or profit interests therein) or warrants, rights or options for the purchase or acquisition from such corporation, limited liability company, trust, joint venture, association, company, partnership or other entity of such shares (or such other interests), and all of the other ownership or profit interests in such corporation, limited liability company, trust, joint venture, association, company, partnership or other entity (including partnership, member or trust interests therein), whether voting or nonvoting, whether economic or non-economic, and whether or not such shares, warrants, options, rights or other interests are outstanding on any date of determination.

(ii)    "***Organizational Documents***" means, (a) with respect to any corporation, the certificate or articles of incorporation and the bylaws (or equivalent or comparable

constitutive documents with respect to any non-U.S. jurisdiction); (b) with respect to any limited liability company, the certificate or articles of formation or organization, and the limited liability company agreement or operating agreement; and (c) with respect to any partnership, joint venture, trust or other form of business entity, the partnership, joint venture or other applicable agreement of formation or organization and any agreement, instrument, filing or notice with respect thereto filed in connection with its formation or organization with the applicable governmental authority in the jurisdiction of its formation or organization and, if applicable, any certificate or articles of formation or organization of such entity.

(f)    Notice.  All notices and other communications to Pledgor under this Agreement shall be in writing and shall be delivered in accordance with *Article XIV* of the Master Agreement to Pledgor at its address set forth in *Article XIV* of the Master Agreement or at such other address in the United States as may be specified by Pledgor in a written notice delivered to Lender at such office as Lender may designate for such purpose from time to time in a written notice to Pledgor.

(g)    Modifications.  No provision hereof shall be modified or limited except by a written agreement expressly referring hereto and to the provisions so modified or limited and signed by Pledgor and Secured Party.  The provisions of this Agreement shall not be modified or limited by course of conduct or usage of trade.

(h)    Severability.  In case any provision in this Agreement shall be held to be invalid, illegal or unenforceable, such provision shall be severable from the rest of this Agreement, as the case may be, and the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(i)    Applicable Law.  This Agreement is a "Loan Document" with respect to Pledgor for purposes of, and is entered into in connection with, the Master Agreement, and shall be governed by, construed and interpreted in accordance with the governing law set forth in *Article XIII* of the Master Agreement.

(j)    Financing Statement.  Pledgor hereby irrevocably authorizes Secured Party (or its designee) at any time and from time to time to file in any jurisdiction any financing or continuation statement and amendment thereto or any registration of charge, mortgage or otherwise, containing any information required under the UCC or the Law of any other applicable jurisdiction, necessary or appropriate in the judgment of Secured Party to perfect or evidence its first priority security interest in and lien on the Collateral.  Pledgor hereby irrevocably ratifies and approves any such filing, registration or recordation in any jurisdiction by Secured Party (or its designee) that has occurred prior to the date hereof, of any financing statement, registration of charge, mortgage or otherwise.  Pledgor agrees to provide to the Secured Party (or its designees) any and all information required under the UCC or the law of any other applicable jurisdiction for the effective filing of a financing statement and/or any amendment thereto or any registration of charge, mortgage or otherwise.

(k)    Release of Security Interest Upon Satisfaction of Master Agreement Obligations.  Upon the termination of all Loans (as defined under the Master Agreement) pursuant to the terms of the Master Agreement and full and final satisfaction of all obligations under the Master Agreement (except for those obligation that expressly survive termination of the Loans), the parties irrevocably agree that (i) the security interest, lien, pledge, and assignment of the Collateral hereunder, together with all rights and powers of the Secured Party hereunder, shall immediately be deemed to be void and (ii) the Secured Party shall immediately return to the Pledgor all Collateral in its possession or control.

8

**NOTICE OF FINAL AGREEMENT**.    THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO RELATING TO THE SUBJECT MATTER HEREOF AND SUPERSEDES ANY AND ALL PREVIOUS AGREEMENTS AND UNDERSTANDINGS, ORAL OR WRITTEN, BETWEEN THE PARTIES HERETO RELATING TO THE SUBJECT MATTER HEREOF.

[Signature Pages Follow]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their duly authorized representatives as of the date first above written.

**PLEDGOR:**

 

 

                                                      **THREE ARROWS CAPITAL LTD**

By: _____
Name: 45665D33A144445...
Title:

**Consented to with respect Section 3 of the Pledge Agreement:**

**GRAYSCALE INVESTMENTS, LLC, as Sponsor to the Trusts**

By: Michael Sonnenshein _____
Name: 809B8310A92546F...
Title:

**SECURED PARTY:**

**GENESIS GLOBAL CAPITAL, LLC**

By: Arianna Pretto-Sakmann _____
Name: 77A200507D6D40F...
Title:

[Signature Page to Pledge Agreement]

**Schedule A**

| Trust | Pledged Shares | Transaction Advice Number |
|---|---|---|
| Grayscale Bitcoin Trust (BTC) | 1,190,275 | 435858 |
| Grayscale Bitcoin Trust (BTC) | 519,657 | 434382 |
| Grayscale Bitcoin Trust (BTC) | 415,862 | 437197 |
| **Total** | **2,125,794** | |

**<u>Exhibit A</u>**

Pledge Supplement

# PLEDGE SUPPLEMENT

**THIS PLEDGE SUPPLEMENT** (as amended, amended and restated, supplemented or otherwise modified from time to time, this "***Supplement***"), dated as of June 4, 2020, is made by **THREE ARROWS CAPITAL LTD** (the "***Pledgor***"), in favor of **GENESIS GLOBAL CAPITAL, LLC** (the "***Secured Party***").  All capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Pledge Agreement (as defined below).

**WHEREAS**, the Pledgor is required under the terms of that certain Pledge Agreement dated as of May 28, 2020, executed by the Pledgor, in favor of the Secured Party (as from time to time amended, restated, supplemented or otherwise modified from time to time, the "***Pledge Agreement***"), to cause certain Equity Interests held by it and listed on Supplemental Schedule A attached to this Supplement (the "***Additional Interests***") to be specifically identified as subject to the Pledge Agreement; and

**WHEREAS**, the Pledgor has acquired rights in the Additional Interests and desires to evidence its prior pledge to the Secured Party of the Additional Interests in accordance with the terms of the Master Agreement and the Pledge Agreement;

**NOW, THEREFORE**, in order to induce the Agent and Lenders to maintain the loans advanced pursuant to the Master Agreement, the Pledgor hereby agrees as follows with the Agent:

1.     **Affirmations**.

    (a)    The Pledgor hereby reaffirms and acknowledges the pledge and collateral assignment to, and the grant of security interest in, the Additional Interests contained in the Pledge Agreement and pledges and collaterally assigns to the Secured Party a first priority lien and security interest, to secure the performance of all Secured Obligations in (a) the Additional Interests and (b) all proceeds of any of the foregoing.

    (b)    The Pledgor hereby acknowledges, agrees and confirms by its execution of this Supplement that the Additional Interests constitute "Equity Interests" under and are subject to the Pledge Agreement, and the items of property referred to in clauses (a) and (b) above (the "***Additional Collateral***") shall collectively constitute "Collateral" under and are subject to the Pledge Agreement.  Each of the representations and warranties with respect to Equity Interests and Collateral contained in the Pledge Agreement is hereby made by the Pledgor with respect to the Additional Interests and the Additional Collateral, respectively.  Attached to this Supplement is a duly completed Supplemental Schedule A (the "***Supplemental Schedule***") supplementing as indicated thereon Schedule A to the Pledge Agreement.  The Pledgor represents and warrants that the information contained on the Supplemental Schedule with respect to such Additional Interests is true, complete and accurate as of the date of its execution of this Supplement.

2.     **Miscellaneous**.  Section 9(i) of the Pledge Agreement is hereby incorporated *mutatis mutandi* in this Agreement as if fully set forth herein.

*[Signature Pages Follow]*

**IN WITNESS WHEREOF**, the Pledgor has caused this Supplement to be duly executed by its authorized officer as of the day and year first above written.

**PLEDGOR:**

**THREE ARROWS CAPITAL LTD**

By: _____

Name: Kyle Davies

Title:   Chairman

*[Signature Page to Pledge Agreement Supplement]*

DocuSign Envelope ID: 55A34B0E-7108-4C1A-8EBG-68C43F6E5AA2

Accepted:

**GENESIS GLOBAL CAPITAL, LLC**

By: _Kristopher Johnson_ _____
Name:   Kristopher Johnson
Title:   Senior Risk Officer

*[Signature Page to Pledge Agreement Supplement]*

DocuSign Envelope ID: 65A34B0E-7108-4C1A-8EBG-68C43F66EAA2

## SUPPLEMENTAL SCHEDULE A

### ADDITIONAL PLEDGED EQUITY

| Trust | Pledged Shares | Transaction Advice Number |
|---|---|---|
| Grayscale Ethereum Trust | 116,326 | 413615 |
| Grayscale Ethereum Trust | 104,133 | 338169 |
| Grayscale Ethereum Trust | 95,169 | 413169 |
| Grayscale Ethereum Trust | 56,259 | 340230 |
| Grayscale Ethereum Trust | 40,637 | 341025 |
| Grayscale Ethereum Trust | 34,404 | 342822 |
| **Total** | **446,928** | |

# PLEDGE AGREEMENT

This **PLEDGE AGREEMENT** ("*Agreement*") is entered into as of November 16, 2021 by and between **GENESIS ASIA PACIFIC PTE. LTD.** ("*Secured Party*") and **THREE ARROWS CAPITAL LTD** ("*Pledgor*").

      **WHEREAS**, Pledgor and Secured Party are entering into that certain Master Loan Agreement dated as of January 24, 2020 (together with any Loan Term Sheet thereunder, and as amended, modified, supplemented, or restated from time to time, the "*Master Agreement*"; unless specified otherwise, capitalized terms used but not defined herein shall have the meanings assigned in the Master Agreement); and

      **WHEREAS**, in connection with the Master Agreement, Pledgor has agreed to grant a security interest in, and pledge and assign as applicable, the Collateral (hereinafter defined) to Secured Party, as herein provided.

      **NOW, THEREFORE**, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto agree as follows:

1.    **Security Interest**.  To secure the payment and the performance of the Secured Obligations (hereinafter defined), Pledgor hereby pledges, assigns and grants to Secured Party a first priority security interest and lien in all of the following (collectively, the "*Collateral*"): (a) Pledgor's Equity Interests (hereinafter defined) in the trusts (each, a "*Trust*", and collectively, the "*Trusts*") listed on Schedule A (as the same may be updated from time to time) held in Account No. 11345090 with TradeStation (together with all renewals, extensions, and replacements of and substitutions for such account, including, but not limited to, any replacement account created as a result of the occurrence of an expiration date, the "*Account*"), and the certificates, if any, representing Pledgor's Equity Interests in the Trusts, as such interests may be increased or otherwise adjusted from time to time, including, without limitation, Pledgor's capital accounts, Pledgor's interests in the net cash flow, net profit and net loss, and items of income, gain, loss, deduction and credit of the Trusts, and Pledgor's interests in all distributions made or to be made by the Trusts to Pledgor; (b) all of Pledgor's rights, titles, and interests in the Organizational Documents (hereinafter defined) of the Trusts, Pledgor's rights to vote upon, approve, or consent to (or withhold consent or approval to) any matter pursuant to the Organizational Documents of the Trusts, or otherwise to control, manage, or direct the affairs of the Trusts, Pledgor's rights to terminate, amend, supplement, modify or waive performance under, the Organizational Documents of the Trusts, or perform thereunder, and to compel performance and otherwise to exercise all remedies thereunder, and all of the other economic and non-economic rights, titles and interests of Pledgor as a member of the Trusts and under the Organizational Documents of the Trusts, in each case, whether set forth in the Organizational Documents of the Trusts, by separate agreement or otherwise; (c) all cash, financial assets, investment property, securities entitlements, and securities maintained from time to time in the Account, and (d) the proceeds of all of the foregoing.

2.    **Secured Obligations**.  "*Secured Obligations*" means, in each case, whether now in existence or hereafter arising: (a) all payment obligations and any applicable interest thereon (including interest accruing after the filing of any bankruptcy or similar petition) and (b) all other fees and commissions (including attorneys' fees in connection with Secured Party's enforcement or protection of its rights under the Master Agreement or any Loan Document), charges, indebtedness, loans, liabilities, financial accommodations, obligations, covenants and duties, in each case owing by Pledgor to Secured Party under the Master Agreement and any Loan Document, and whether or not evidenced by any note and including interest and fees that accrue after the commencement by or against Pledgor of any proceeding under any bankruptcy or insolvency law or other similar law affecting creditors' rights, naming Pledgor as the debtor in such proceeding, including fees, indemnification obligations, expenses or otherwise, and all costs and expenses of administering or maintaining the Collateral and of enforcing the rights of Secured Party hereunder and under the Master Agreement and the other Loan Documents.

3.      **Pledgor's Warranties**.  Pledgor represents and warrants to Secured Party as follows:

(a)      Pledgor owns Equity Interests of the Trusts, all of which have been duly and validly issued, are fully paid and non-assessable. None of the Collateral is certificated. Pledgor owns all Collateral free and clear from any set-off, claim, restriction, lien, security interest or encumbrance, except the security interest hereunder and the vesting provisions to which the Collateral is subject, and has full power and authority to grant to Secured Party the security interest in such Collateral pursuant hereto. The execution, delivery and performance by Pledgor of this Agreement have been duly and validly authorized by all necessary company action, and this Agreement constitutes a legal, valid, and binding obligation of Pledgor and creates a security interest which is enforceable against Pledgor in all now owned and hereafter acquired Collateral, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity.

(b)      Neither the execution and delivery by Pledgor of this Agreement, the creation and perfection of the security interest in the Collateral granted hereunder, nor compliance with the terms and provisions hereof will violate any law, rule, regulation, order, writ, judgment, injunction, decree or award binding on Pledgor or any contracts or agreements to which Pledgor is a party or is subject, or by which Pledgor, or its property, is bound, or conflict with or constitute a default thereunder, or result in the creation or imposition of any lien pursuant to the terms of any such contract or agreement (other than any lien of Secured Party). There is no litigation, investigation or governmental proceeding threatened against Pledgor or any of its properties which if adversely determined would result in a material adverse effect on the Collateral or Pledgor.

(c)      The Equity Interests that are included in the Collateral have not been financed by the Secured Party or its affiliates.

4.      **Pledgor's Covenants.**  Until full payment and performance of all of the Secured Obligations:

(a)      <u>Secured Obligations and this Agreement</u>. Pledgor shall perform all of its agreements herein, in the Master Agreement and in the other Loan Documents.

(b)      <u>Pledgor Remains Liable</u>.  Notwithstanding anything to the contrary contained herein, (i) Pledgor shall remain liable under the contracts and agreements included in the Collateral, if any, to the extent set forth therein to perform all duties and obligations thereunder to the same extent as if this Agreement had not been executed; (ii) the exercise by Secured Party of any of its rights hereunder shall not release Pledgor from any of its duties or obligations under the contracts and agreements included in the Collateral, if any; and (iii) Secured Party shall not have any obligation or liability under the contracts and agreements included in the Collateral by reason of this Agreement, nor shall Secured Party be obligated to perform any of the obligations or duties of Pledgor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

(c)      <u>Collateral</u>.  The security interest in the Collateral granted pursuant to this Agreement is a valid and binding first priority security interest in the Collateral subject to no other liens or security interests, and Pledgor shall keep the Collateral free from all liens and security interests, except those for taxes not yet due and payable and the security interest hereby created. Pledgor shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein adverse to Secured Party.  Secured Party acknowledges that the Collateral is subject to vesting provisions and agrees that any restrictions related to such vesting provisions are not a breach by Pledgor of any obligation under this Agreement or any Loan Document.

(d)    <u>Secured Party's Costs</u>.  Pledgor shall pay all costs necessary to obtain, preserve, perfect, defend and enforce the security interest created by this Agreement (including the preparation of this Agreement), collect the Secured Obligations, and preserve, defend, enforce and collect the Collateral, including but not limited to payment of taxes, assessments, reasonable attorney's fees, legal expenses and expenses of sales.  Whether the Collateral is or is not in Secured Party's possession, and without any obligation to do so and without waiving Pledgor's default for failure to make any such payment, Secured Party, at its option, may pay any such costs and expenses and discharge encumbrances on the Collateral, and such payments shall be a part of the Secured Obligations and bear interest at the rate set for the Secured Obligations. Pledgor agrees to reimburse Secured Party on demand for any costs so incurred.

(e)    <u>Financing Statements</u>.  No financing statement, register of mortgages, charges and other encumbrances or similar document covering the Collateral or any part thereof is or shall be maintained at the registered office of Pledgor or on file in any public office (except in favor of Secured Party), and Pledgor will, at the request of Secured Party, join the Secured Party in (i) filing one or more financing statements pursuant to the UCC (as defined below) naming Secured Party as secured party, and/or (ii) executing and/or filing such other documents required under the laws of all jurisdictions necessary or appropriate in the judgment of Secured Party to obtain, maintain and perfect its first priority security interest in, and lien on, the Collateral.

(f)    <u>Information</u>.  Pledgor shall promptly furnish Secured Party any information with respect to the Collateral requested by Secured Party.

(g)    <u>Notice of Changes</u>.  Pledgor is Three Arrows Capital Ltd with its principal place of business and chief executive office located at 7 Temasek Boulevard #21-04, Singapore 038987. Pledgor shall promptly (and in any event at least fifteen (15) Business Days prior) notify Secured Party in writing of (i) any change in his legal name, address, or jurisdiction of formation or (ii) a change in any matter warranted or represented by Pledgor in this Agreement.

(h)    <u>Possession of Collateral</u>.  Pledgor shall deliver all investment securities and other instruments and documents which are a part of the Collateral to Secured Party promptly, or if hereafter acquired, promptly following acquisition, in a form suitable for transfer by delivery or accompanied by duly executed instruments of transfer or assignment in blank with signatures appropriately guaranteed in form and substance suitable to Secured Party.

(i)    <u>Voting Rights</u>.  After the occurrence of an Event of Default, Secured Party is entitled to exercise all voting rights pertaining to any Collateral. Prior to the occurrence of an Event of Default, Pledgor may vote the Collateral, *provided, however*, that no vote shall be cast or consent, waiver, or ratification given or action taken without the prior written consent of Secured Party which would (i) be inconsistent with or violate any provision of this Agreement or any other Loan Document or (ii) amend, modify, or waive any term, provision or condition of any charter document, or other agreement relating to, evidencing, providing for the issuance of, or securing any Collateral, except to the extent any such amendment, modification or waiver would not be reasonably likely to have an adverse effect on Secured Party. If an Event of Default occurs and if Secured Party elects to exercise such right, the right to vote any pledged securities shall be vested exclusively in Secured Party. To this end, Pledgor hereby irrevocably constitutes and appoints Secured Party the proxy and attorney-in-fact of Pledgor, with full power of substitution, to vote, and to act with respect to, any and all Collateral standing in the name of Pledgor or with respect to which Pledgor is entitled to vote and act, subject to the understanding that such proxy may not be exercised unless an Event of Default has occurred. The proxy herein granted is coupled with an interest, is irrevocable, and shall continue until the Secured Obligations have been paid and performed in full or the Event of Default has been cured or waived, whichever comes first.

(j)    _Other Parties and Other Collateral_.  No renewal or extensions of or any other indulgence with respect to the Secured Obligations or any part thereof, no modification of the document(s) evidencing the Secured Obligations, no release of any security, no release of any person (including any maker, indorser, guarantor or surety) liable on the Secured Obligations, no delay in enforcement of payment, and no delay or omission or lack of diligence or care in exercising any right or power with respect to the Secured Obligations or any security therefor or guaranty thereof or under this Agreement shall in any manner impair or affect the rights of Secured Party under any law, hereunder, or under any other agreement pertaining to the Collateral. Secured Party need not file suit or assert a claim for personal judgment against any person for any part of the Secured Obligations or seek to realize upon any other security for the Secured Obligations, before foreclosing or otherwise realizing upon the Collateral.

(k)    _Waivers by Pledgor_.  Pledgor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Secured Obligations; waives notice of any change in financial condition of any person liable for the Secured Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Secured Obligations; and agrees that maturity of the Secured Obligations and any part thereof may, be accelerated, extended or renewed only in accordance with the Master Agreement. Pledgor waives any right to require that any action be brought against any other person or to require that resort be had to any other security or to any balance of any deposit account. Pledgor further waives any right of subrogation or to enforce any right of action against any other pledgor until the Secured Obligations are paid in full.

(l)    _Further Assurances_.  Pledgor agrees that, from time to time upon the written request of Secured Party, Pledgor will execute and deliver such further documents (including, without limitation, the delivery of a Pledge Supplement in the form of Exhibit A with respect to any additional Trusts and a control agreement with respect to the Collateral) and diligently perform such other acts and things in any jurisdiction (including, without limitation, Singapore) as Secured Party may reasonably request to fully effect the purposes of this Agreement, to further assure the first priority status of the Lien granted pursuant hereto or to enable Secured Party to exercise or enforce its rights under this Agreement or under the Master Agreement with respect to the Collateral or the collateral posted under the Master Agreement.

5.    **Power of Attorney**.  Pledgor hereby irrevocably constitutes and appoints Secured Party and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the name of Pledgor or in its own name, to take after the occurrence of an Event of Default and from time to time thereafter, any and all action and to execute any and all documents and instruments which Secured Party at any time and from time to time deems necessary or desirable to accomplish the purposes of this Agreement, including, without limitation, selling, in the manner set forth herein, any of the Collateral on behalf of Pledgor as agent or attorney in fact for Pledgor and applying the proceeds received therefrom in Secured Party's discretion; _provided, however_, nothing in this paragraph shall be construed to obligate Secured Party to take any action hereunder nor shall Secured Party be liable to Pledgor for failure to take any action hereunder and, upon request, Secured Party shall promptly furnish Pledgor with a written summary of all sales hereunder. This appointment shall be deemed a power coupled with an interest, is irrevocable, and shall continue until the Secured Obligations have been paid and performed in full or the Event of Default has been cured or waived, whichever comes first.

6.    **Rights and Powers of Secured Party**.  Upon the occurrence of an Event of Default, Secured Party, without liability to Pledgor, may: vote the Collateral; take control of proceeds, including stock received as dividends or by reason of stock splits; take control of funds generated by the Collateral, such as cash dividends, interest and proceeds, and use same to reduce any part of the Secured Obligations and exercise all other rights which an owner of such Collateral may exercise; and, at any time, transfer any of the

Collateral or evidence thereof into its own name or that of its nominee. Secured Party shall not be liable for failure to collect any account or instruments, or for any act or omission on the part of Secured Party, its officers, agents or employees, except for any act or omission arising out of their own willful misconduct or fraud. The foregoing rights and powers of Secured Party will be in addition to, and not a limitation upon, any rights and powers of Secured Party given by law, elsewhere in this Agreement, or otherwise.

7.  **Default.**

    (a)   <u>Event of Default</u>.  As used herein, "***Event of Default***" means any "Event of Default" under the Master Agreement with respect to which Pledgor is the Defaulting Party.

    (b)   <u>Rights and Remedies</u>.  If any Event of Default occurs, in each and every such case, Secured Party may, without (i) presentment, demand, or protest, (ii) notice of default, dishonor, demand, non-payment, or protest, (iii) notice of intent to accelerate all or any part of the Secured Obligations, (iv) notice of acceleration of all or any part of the Secured Obligations, or (v) notice of any other kind, all of which Pledgor hereby expressly waives (except for any notice required under this Agreement, any other Loan Document, or which may not be waived under applicable law), at any time thereafter exercise and/or enforce any of the following rights and remedies, at Secured Party's option:

    (i)   *Acceleration*.  The Secured Obligations under the Master Agreement and the other Loan Documents shall, at Secured Party's option, become immediately due and payable, and the obligation, if any, of Secured Party to permit further borrowings under the Master Agreement shall, at Secured Party's option, immediately cease and terminate.

    (ii)   *Liquidation of Collateral*.  Sell, or instruct any agent or broker to sell, all or any part of the Collateral in a public or private sale, direct any agent or broker to liquidate all or any part of any account and deliver all proceeds thereof to Secured Party, and apply all proceeds to the payment of any or all of the Secured Obligations in such order and manner as Secured Party shall, in its discretion, choose.

    (iii)   *Uniform Commercial Code*.  All of the rights, powers and remedies of a secured creditor under the Uniform Commercial Code ("***UCC***") as the same may, from time to time, be in effect in the State of New York, *provided, however*, in any event that, by reason of mandatory provisions of Law, any or all of the attachment, perfection or priority (or terms of similar import in any applicable jurisdiction) of Secured Party's security interest in any Collateral is governed by the Uniform Commercial Code (or other similar Law) as in effect in a jurisdiction (whether within or outside the United States) other than the State of New York, the term "UCC" shall mean the Uniform Commercial Code (or other similar Law) as in effect in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority (or terms of similar import in such jurisdiction) and for purposes of definitions related to such provisions, and any and all rights and remedies available to it as a result of this Agreement or any other Loan Document, including, without limitation, the right, to the maximum extent permitted by law, to exercise all voting, consensual and other powers of ownership pertaining to the Collateral (including, without limitation, the right to sell, transfer, pledge or redeem any and all of the Collateral, which right shall be exercised in a commercially reasonable manner) as if Secured Party was the sole and absolute owner thereof (and Pledgor agrees to take all such action as may be appropriate to give effect to such right).

    Pledgor specifically understands and agrees that any sale by Secured Party of all or any part of the Collateral pursuant to the terms of this Agreement may be effected by Secured Party at times and in manners

which could result in the proceeds of such sale being significantly and materially less than what might have been received if such sale had occurred at different times or in different manners, and Pledgor hereby releases Secured Party and its officers and representatives from any and all obligations and liabilities arising out of or related to the timing or manner of any such sale; provided, however, that any such sale shall be conducted in a commercially reasonable manner. If, in the opinion of Secured Party, there is any question that a public sale or distribution of any Collateral will violate any state or federal securities law, Secured Party may offer and sell such Collateral in a transaction exempt from registration under federal securities law, and any such sale made in good faith by Secured Party shall be deemed "commercially reasonable." Furthermore, Pledgor acknowledges that any such restricted or private sales may be at prices and on terms less favorable to Pledgor than those obtainable through a public sale without such restrictions, but agrees that such sales are commercially reasonable. Pledgor further acknowledges that any specific disclaimer of any warranty of title or the like by Secured Party will not be considered to adversely affect the commercial reasonableness of any sale of Collateral. Any notice made shall be deemed reasonable if sent to Pledgor at the address set forth in *ARTICLE XV* of the Master Agreement at least ten (10) days prior to (i) the date of any public sale or (ii) the time after which any private sale or other disposition may be made.

Secured Party's duty of care with respect to Collateral in its possession (as imposed by law) shall be deemed fulfilled if it exercises reasonable care in physically safekeeping such Collateral or, in the case of Collateral in the custody or possession of a bailee or other third party, exercises reasonable care in the selection of the bailee or other third party, and the Secured Party need not otherwise preserve, protect, insure or care for any Collateral. Secured Party shall not be obligated to preserve any rights Pledgor may have against prior parties, to realize on the Collateral at all or in any particular manner or order, or to apply any cash proceeds of Collateral in any particular order of application.

        (iv)    *Deficiencies*. If any Secured Obligations remain after the application of the proceeds of the Collateral, Secured Party may continue to enforce its remedies under this Agreement or the other Loan Documents to collect the deficiency.

        (v)    *Excess*. Not in limitation of any of Secured Party's rights hereunder, under the Loan Documents or under applicable law, if the proceeds of the Collateral exceed the amount of the Secured Obligations (any such exceeds, the "***Excess Proceeds***"), the Excess Proceeds will be delivered to Pledgor in accordance with the terms of the Master Agreement.

8.     **General.**

        (a)    Parties Bound. Secured Party's rights hereunder shall inure to the benefit of its successors and assigns, and in the event of any assignment or transfer of any of the Secured Obligations or the Collateral, Secured Party thereafter shall be fully discharged from any responsibility with respect to the Collateral so assigned or transferred, but Secured Party shall retain all rights and powers hereby given with respect to any of the Secured Obligations or the Collateral not so assigned or transferred. Secured Party may assign all or a portion of its rights and obligations under this Agreement only in connection with the assignment of its rights and obligations under the Master Agreement in circumstances permitted by the Master Agreement. Pledgor may not assign any of its rights and obligations under this Agreement to any person or entity without the prior written consent of Secured Party. All representations, warranties and agreements of Pledgor shall be binding upon the personal representatives, heirs, successors and assigns of Pledgor.

        (b)    Discretion by Secured Party. Any determinations made by Secured Party shall be made, in each case, in its sole discretion exercised in good faith unless otherwise stated herein.

(c)    <u>Termination</u>.  This Agreement shall remain in full force and effect until all of the Secured Obligations and any other amounts payable hereunder are indefeasibly paid and performed in full and the Loan Documents are terminated.

(d)    <u>Waiver</u>.  No delay of Secured Party in exercising any power or right shall operate as a waiver thereof, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right. No waiver by Secured Party of any right hereunder or of any default by Pledgor shall be binding upon Secured Party unless in writing, and no failure by Secured Party to exercise any power or right hereunder or waiver of any default by Pledgor shall operate as a waiver of any other or further exercise of such right or power or of any further default. Each right, power and remedy of Secured Party as provided for herein related to the Secured Obligations, or which shall now or hereafter exist at law or in equity or by statute or otherwise, shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy. The exercise or beginning of the exercise by Secured Party of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by Secured Party of any or all other such rights, powers or remedies.

(e)    <u>Definitions</u>.  Unless the context indicates otherwise, definitions in the UCC apply to words and phrases in this Agreement; if UCC definitions conflict, Article 8 and/or 9 definitions apply.  The following terms, when used in this Agreement, shall have the meanings assigned to them below:

(i)    "***Equity Interests***" means, with respect to any corporation, limited liability company, trust, joint venture, association, company, partnership or other entity, all of the shares of capital stock thereof (or other ownership or profit interests therein), all of the warrants, options or other rights for the purchase or acquisition from such corporation, limited liability company, trust, joint venture, association, company, partnership or other entity of shares of capital stock thereof (or other ownership or profit interests therein), all of the securities convertible into or exchangeable for shares of capital stock thereof (or other ownership or profit interests therein) or warrants, rights or options for the purchase or acquisition from such corporation, limited liability company, trust, joint venture, association, company, partnership or other entity of such shares (or such other interests), and all of the other ownership or profit interests in such corporation, limited liability company, trust, joint venture, association, company, partnership or other entity (including partnership, member or trust interests therein), whether voting or nonvoting, whether economic or non-economic, and whether or not such shares, warrants, options, rights or other interests are outstanding on any date of determination.

(ii)    "***Organizational Documents***" means, (a) with respect to any corporation, the certificate or articles of incorporation and the bylaws (or equivalent or comparable constitutive documents with respect to any non-U.S. jurisdiction); (b) with respect to any limited liability company, the certificate or articles of formation or organization, and the limited liability company agreement or operating agreement; and (c) with respect to any partnership, joint venture, trust or other form of business entity, the partnership, joint venture or other applicable agreement of formation or organization and any agreement, instrument, filing or notice with respect thereto filed in connection with its formation or organization with the applicable governmental authority in the jurisdiction of its formation or organization and, if applicable, any certificate or articles of formation or organization of such entity.

(f)    <u>Notice</u>.  All notices and other communications to Pledgor under this Agreement shall be in writing and shall be delivered in accordance with ***ARTICLE XV*** of the Master

Agreement to Pledgor at its address set forth in *ARTICLE XV* of the Master Agreement or at such other address in the United States as may be specified by Pledgor in a written notice delivered to Lender at such office as Lender may designate for such purpose from time to time in a written notice to Pledgor.

(g)    Modifications.  No provision hereof shall be modified or limited except by a written agreement expressly referring hereto and to the provisions so modified or limited and signed by Pledgor and Secured Party.  The provisions of this Agreement shall not be modified or limited by course of conduct or usage of trade.

(h)    Severability.  In case any provision in this Agreement shall be held to be invalid, illegal or unenforceable, such provision shall be severable from the rest of this Agreement, as the case may be, and the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(i)    Applicable Law.  This Agreement is a "Loan Document" with respect to Pledgor for purposes of, and is entered into in connection with, the Master Agreement, and shall be governed by, construed and interpreted in accordance with the governing law set forth in *ARTICLE XIII* of the Master Agreement.

(j)    Financing Statement.  Pledgor hereby irrevocably authorizes Secured Party (or its designee) at any time and from time to time to file in any jurisdiction any financing or continuation statement and amendment thereto or any registration of charge, mortgage or otherwise, containing any information required under the UCC or the Law of any other applicable jurisdiction, necessary or appropriate in the judgment of Secured Party to perfect or evidence its first priority security interest in and lien on the Collateral.  Pledgor hereby irrevocably ratifies and approves any such filing, registration or recordation in any jurisdiction by Secured Party (or its designee) that has occurred prior to the date hereof, of any financing statement, registration of charge, mortgage or otherwise.  Pledgor agrees to provide to the Secured Party (or its designees) any and all information required under the UCC or the law of any other applicable jurisdiction for the effective filing of a financing statement and/or any amendment thereto or any registration of charge, mortgage or otherwise.

(k)    Release of Security Interest Upon Satisfaction of Master Agreement Obligations. Upon the termination of all Loans (as defined under the Master Agreement) pursuant to the terms of the Master Agreement and full and final satisfaction of all obligations under the Master Agreement (except for those obligation that expressly survive termination of the Loans), the parties irrevocably agree that (i) the security interest, lien, pledge, and assignment of the Collateral hereunder, together with all rights and powers of the Secured Party hereunder, shall immediately be deemed to be void and (ii) the Secured Party shall immediately return to the Pledgor all Collateral in its possession or control.

**NOTICE OF FINAL AGREEMENT.  THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO RELATING TO THE SUBJECT MATTER HEREOF AND SUPERSEDES ANY AND ALL PREVIOUS AGREEMENTS AND UNDERSTANDINGS, ORAL OR WRITTEN, BETWEEN THE PARTIES HERETO RELATING TO THE SUBJECT MATTER HEREOF.**

[Signature Pages Follow]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their duly authorized representatives as of the date first above written.

**PLEDGOR:**

**THREE ARROWS CAPITAL LTD**

By: _Kyle Davies_

Name: Kyle Davies

Title: Director

**SECURED PARTY:**

**GENESIS ASIA PACIFIC PTE. LTD.**

By: _Kristopher Johnson_

Name: Kristopher Johnson

Title: Authorized Signatory

[Signature Page to Pledge Agreement]

DocuSign Envelope ID: 7A8B6647-D2BB-4CFE-8D98-GC9E5F2899F3

## Schedule A

| Trust | Pledged Shares | TradeStation Account Number |
|---|---|---|
| Grayscale Bitcoin Trust | 13,241,612 | 11345090 |

**Exhibit A**

Pledge Supplement

[See Attached.]

## PLEDGE SUPPLEMENT

**THIS PLEDGE SUPPLEMENT** (as amended, amended and restated, supplemented or otherwise modified from time to time, this "***Supplement***"), dated as of [_____], 20[__], is made by **THREE ARROWS CAPITAL LTD** (the "***Pledgor***"), in favor of **GENESIS ASIA PACIFIC PTE. LTD.** (the "***Secured Party***").  All capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Pledge Agreement (as defined below).

**WHEREAS**, the Pledgor is required under the terms of that certain Pledge Agreement dated as of [__], executed by the Pledgor, in favor of the Secured Party (as from time to time amended, restated, supplemented or otherwise modified from time to time, the "***Pledge Agreement***"), to cause certain Equity Interests held by it and listed on <u>Schedule A</u> attached to this Supplement (the "***Additional Interests***") to be specifically identified as subject to the Pledge Agreement; and

**WHEREAS**, the Pledgor has acquired rights in the Additional Interests and desires to evidence its pledge to the Secured Party of the Additional Interests in accordance with the terms of the Master Agreement and the Pledge Agreement;

**NOW, THEREFORE**, in order to induce the Agent and Lenders to maintain the loans advanced pursuant to the Master Agreement, the Pledgor hereby agrees as follows with the Agent:

1.    <u>**Additional Collateral**</u>.

(a)    The Pledgor hereby reaffirms and acknowledges the pledge and collateral assignment to, and the grant of security interest in, the Additional Interests contained in the Pledge Agreement and pledges and collaterally assigns to the Secured Party a first priority lien and security interest, to secure the performance of all Secured Obligations in (a) the Additional Interests and (b) all proceeds of any of the foregoing.

(b)    The Pledgor hereby acknowledges, agrees and confirms by its execution of this Supplement that the Additional Interests constitute "Equity Interests" under and are subject to the Pledge Agreement, and the items of property referred to in clauses (a) and (b) above (the "***Additional Collateral***") shall collectively constitute "Collateral" under and are subject to the Pledge Agreement.  Each of the representations and warranties with respect to Equity Interests and Collateral contained in the Pledge Agreement is hereby made by the Pledgor with respect to the Additional Interests and the Additional Collateral, respectively.  Attached to this Supplement is a duly completed <u>Schedule A</u> (the "***Replacement Schedule***") replacing in its entirety <u>Schedule A</u> to the Pledge Agreement.  The Pledgor represents and warrants that the information contained on the Replacement Schedule with respect to the Collateral is true, complete and accurate as of the date of its execution of this Supplement.

2.    <u>**Miscellaneous**</u>.  <u>Section 8(i)</u> of the Pledge Agreement is hereby incorporated *mutatis mutandi* in this Agreement as if fully set forth herein.

[*Signature Pages Follow*]

**IN WITNESS WHEREOF**, the Pledgor has caused this Supplement to be duly executed by its authorized officer as of the day and year first above written.

**PLEDGOR:**

**THREE ARROWS CAPITAL LTD**

By: _____
Name:
Title:

*[Signature Page to Pledge Agreement Supplement]*

Accepted:

**GENESIS ASIA PACIFIC PTE. LTD.**


By: _____
Name:
Title:

*[Signature Page to Pledge Agreement Supplement]*

## **REPLACEMENT SCHEDULE A**

## PLEDGED EQUITY

*[Signature Page to Pledge Agreement Supplement]*