Hearing Date and Time:  September 6, 2023 at 2:00 p.m. (Prevailing Eastern Time)

**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
Michele J. Meises
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

– and –

Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606-4302
Telephone: (312) 881-5400
Facsimile: (305) 881-5450

– and –

Amanda Parra Criste (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

*Counsel to Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 603** |

**STATEMENT AND RESERVATION OF RIGHTS
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
WITH RESPECT TO GENESIS DEBTORS' MOTION PURSUANT TO
FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(A) FOR ENTRY
OF AN ORDER APPROVING SETTLEMENT AGREEMENT WITH FTX DEBTORS**

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's tax identification number (as applicable) are as follows:  Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these chapter 11 cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**" or the "**Genesis Debtors**") respectfully states as follows with respect to the *Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement with FTX Debtors* [Docket No. 603] (the "**Motion**"):[2]

1.  By the Motion, the Debtors seek approval of a settlement (the "**FTX Settlement**") with the FTX Debtors, whose chapter 11 cases are pending in the United States Bankruptcy Court for the District of Delaware (the "**Delaware Bankruptcy Court**") under the caption *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.) (the "**FTX Bankruptcy Cases**"). Under the FTX Settlement, Alameda Research Ltd. will receive an allowed general unsecured claim against Genesis Global Capital LLC ("**GGC**") in the amount of $175 million (the "**Allowed FTX Claim**").[3] In exchange, the FTX and Genesis entities agree to waive all other claims and expunge the already-filed proofs of claim in the respective bankruptcy cases.

2.  For several months, the Committee has been keenly aware of the preference and related actions that the FTX Debtors intended to initiate against the Genesis Debtors. When the FTX Debtors attempted to lift the automatic stay in these chapter 11 cases to assert over $3.8 billion in alleged claims, primarily related to preference liability, the Committee supported the Debtors' efforts to keep the automatic stay in place and estimate the FTX Debtors' claims at zero. The Committee supported these efforts[4] because litigation of the FTX Debtors' claims may have

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

[3] Under the FTX Settlement, the Allowed FTX Claim will be entitled to receive pro rata distributions in the form of fiat with all other allowed general unsecured claims, but the parties may agree that the distributions on account of the Allowed FTX Claim may be in a form other than cash. *See* Motion, Ex. B (Settlement Agreement and Release), § 1(c).

[4] *See Joinder and Reservation of Rights of the Official Committee of Unsecured Creditors to Debtors Objection to the Motion of FTX Trading and Its Affiliated Debtors for an Order Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)1) and Bankruptcy Rule 4001* [Docket No. 407].

2

posed an existential risk to these chapter 11 cases, given the quantum of the asserted claims and the risk that certain issues related to these claims would be litigated in the Delaware Bankruptcy Court under a prolonged timeline out of sync with these chapter 11 cases.

3. The Committee and its professionals conducted an extensive analysis of the lending relationship between the Genesis and FTX entities to develop its own view of the FTX Claims and the Genesis Claims (defined below). The result is that, while it is a close call, the Committee ultimately believes the proposed FTX Settlement likely falls within the range of reasonableness for approval under Bankruptcy Rule 9019.

4. With respect to the claims of the Genesis Debtors and non-Debtor GGC International Ltd. ("**GGCI**") against the FTX Debtors (the "**Genesis Claims**"), the Committee believes that the proposed FTX Settlement could have the effect of releasing a small net benefit to the Genesis estates. The Committee has a different view, however, than the Ad Hoc Group of Genesis Lenders (the "**Ad Hoc Group**") regarding the quantum of recoverable claims. For example, the $140 million in avoidance actions that the Genesis entities can assert against Alameda Research Ltd. may be an entirely illusory source of recoverable value due to the $47 million net outflow from Alameda Research Ltd. to GGC during the 90 days prior to the filing of these chapter 11 cases. Additionally, the quantum and timing of recoveries for creditors in the FTX Bankruptcy Cases is very uncertain, and the Genesis Debtors would likely recover significantly less on account of the Genesis Claims than the FTX Debtors would recover on the FTX Claims.

5. With respect to the FTX Claims against the Genesis Debtors, there are also strong potential defenses, including potential safe harbor defenses under section 546(e) of the Bankruptcy Code and the "ordinary course of business" defense under section 547(c)(2) of the Bankruptcy Code. These defenses reduce the Genesis Debtors' exposure, but do not eliminate it. Moreover, there is great risk that, without the FTX Settlement, protracted litigation, with its concomitant drain

3

on the assets of the estates, would significantly delay the Genesis Debtors' emergence from chapter 11 and much needed distributions to the Genesis Debtors' creditors. If the FTX Claims and the Genesis Claims were litigated, the threshold issue of venue would first need to be decided. This decision alone – which is only a *threshold* issue to potentially more contentious issues, such as the value of the collateral supporting the lending transactions between the entities – would be hotly contested and cost the Genesis estates significant amounts in professional fees.

6. As discussed at the hearings before this Court on the Lift Stay Motion and the Estimation Motion, the length of the complex litigation of the FTX Claims would have required the Genesis Debtors to reserve significant liquid funds to satisfy any future judgment after plan confirmation. Given the headline quantum of the FTX Claims, the Committee has a real concern that the Debtors would be required to establish a reserve at an amount well north of the Allowed FTX Claim.[5] Instead, although the FTX Debtors will now participate in distributions if the Motion is approved, there will not be a need to reserve liquid funds on account of the FTX Claims. In this regard, the FTX Settlement is a positive development for the Genesis estates.

7. To be clear, although the Committee can understand how settling the FTX Claims may be a proper exercise of the Debtors' business judgment, the proposed Allowed FTX Claim is higher than the Committee believes FTX should receive. But the Committee's view on litigation does not control the reality of what may happen in litigation, and while the Committee agrees with the Ad Hoc Group's contention that FTX seems to be merely "throwing spaghetti against the wall," given the quantum of the claims asserted against the Genesis Entities, the swing in the size of the

---

[5] For example, in *Voyager*, the FTX Debtors asserted $445 million in claims related to preference liability, and the Voyager debtors stipulated to reserving the full $445 million of the alleged claims in US Dollars. *See* Motion for Entry of an Order Approving the Joint Stipulation by and Among the Debtors, the FTX Debtors, and Their Respective Creditor Committees, *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. Feb. 23, 2023) [ECF No. 1106]; *See* Order Approving the Joint Stipulation, *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. Apr. 6, 2023) [ECF No. 1266].

4

claims pool could be massive and highly dilutive. The Committee has always viewed the FTX risk as potentially existential from a claims pool perspective and as a possible poison pill to any chapter 11 plan if left unresolved due to the prospect of an undoubtedly inflated ask from FTX as to the size of any reserve needed in connection with the Debtors' effort to exit bankruptcy. Finally, the Committee disagrees with the accusation made by several objecting parties that the proposed FTX Settlement is an attempt by the Debtors to buy votes for the plan implementing the current deal in principle with Digital Currency Group, Inc. Nowhere in the proposed FTX Settlement are any of the FTX Debtors required to *vote* in favor of any Genesis chapter 11 plan. The provision simply requires that the parties *not object* to the chapter 11 plans that are proposed in their respective chapter 11 cases to the extent such plans are consistent with the FTX Settlement.[6] The failure to include such a provision would leave open the possibility of a subsequent attack and litigation with the FTX Debtors, which would be irresponsible and inconsistent with the concept of a global settlement.

8. Given all the above, the Committee does not oppose the FTX Settlement.

*[Remainder of page intentionally left blank]*

---

[6] *See* Exhibit B to the Motion, Section 1(e) (Covenant Not to Object to Genesis Plan), which states:

As of the Settlement Effective Date, none of the FTX Entities shall object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the Genesis Debtors, solely to the extent that such plan is consistent with the terms and conditions of this Settlement Agreement; provided that nothing in this Settlement Agreement (and neither a vote to accept any such chapter 11 plan nor the acceptance of such plan) shall be construed to limit the FTX Entities' rights to appear as parties-in-interest in any matter to be adjudicated in the Genesis Bankruptcy Proceeding, so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Settlement Agreement and are not for the purposes of hindering, delaying, or preventing the consummation of this Settlement Agreement.

## **RESERVATION OF RIGHTS**

9. The Committee reserves the right to further amend, modify, or supplement this Statement and Reservation of Rights to raise additional issues with the Motion at the hearing.

Dated: September 5, 2023  
New York, New York

Respectfully submitted,

By:  /s/ *Philip Abelson*

**WHITE & CASE LLP**  
J. Christopher Shore  
Philip Abelson  
Michele J. Meises  
1221 Avenue of the Americas  
New York, NY 10020  
Telephone: (212) 819-8200  
Facsimile: (212) 354-8113  
E-mail: cshore@whitecase.com  
　　　　philip.abelson@whitecase.com  
　　　　david.turetsky@whitecase.com  
　　　　michele.meises@whitecase.com

– and –

Gregory F. Pesce (admitted *pro hac vice*)  
111 South Wacker Drive, Suite 5100  
Chicago, IL 60606-4302  
Telephone: (312) 881-5400  
Facsimile: (305) 881-5450  
E-mail: gregory.pesce@whitecase.com

– and –

Amanda Parra Criste (admitted *pro hac vice*)  
200 South Biscayne Boulevard, Suite 4900  
Miami, FL 33131  
Telephone: (305) 371-2700  
Facsimile: (305) 358-5744  
E-mail: aparracriste@whitecase.com

*Counsel to Official Committee of Unsecured Creditors*