Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Genesis Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**GENESIS DEBTORS' OMNIBUS REPLY IN SUPPORT OF MOTION PURSUANT
TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a) FOR ENTRY
OF AN ORDER APPROVING SETTLEMENT AGREEMENT WITH FTX DEBTORS**

---

[1] The Genesis Debtors in the Genesis Bankruptcy Proceedings along with the last four digits of each Genesis Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of the Genesis Bankruptcy Proceedings, the service address for the Genesis Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Genesis Debtors" and the above-captioned cases, the "Genesis Bankruptcy Proceedings"), by and through their undersigned counsel, hereby submit this omnibus reply (the "Reply") in further support of the *Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure for Entry of an Order Approving Settlement Agreement with FTX Debtors* (ECF No. 603) (the "Motion")[1], and in response to (i) the objection filed by the Ad Hoc Group of Genesis Lenders (the "Ad Hoc Group" and such objection, the "AHG Objection") (ECF No. 648), (ii) the joinder to the AHG Objection filed by an ad hoc group of unsecured claimants represented by Brown Rudnick (the "Brown Rudnick Group" and such joinder, the "BRG Joinder") (ECF No. 650), and (iii) the joinder to the AHG Objection filed by Gemini Trust Company, LLC ("Gemini," collectively with the Ad Hoc Group and the Brown Rudnick Group, the "Objectors," Gemini's joinder, the "Gemini Joinder," and together with the BRG Joinder, the "Joinders", and the Joinders collectively with the AHG Objection, the "Objections") (ECF No. 651).

## REPLY

1. The proposed settlement agreement (the "Settlement Agreement") embodies a fair and reasonable resolution of the FTX Entities' claims against the Genesis Entities (the "FTX Claims") and the Genesis Entities' claims against the FTX Entities (the "Genesis Claims" and together with the FTX Claims, the "Claims") for at least five reasons: (1) the Settlement Agreement will resolve the FTX Claims at less than 5% of their face value and insulate the Genesis Entities from any other claims held by the FTX Entities;[2] (2) the Settlement Agreement

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2]   The Genesis Debtors agree with the Objectors that the value of the FTX Claims, as asserted in the FTX Proofs of Claim, is inflated, *see* AHG Objection at ¶ 9, but maintain that the risks and costs associated with litigating the FTX

will help the Genesis Debtors confirm a chapter 11 plan expeditiously because it eliminates the risk of having to litigate claims in prolonged FTX Bankruptcy Proceedings, as to which the Genesis Debtors have little control; (3) the Settlement Agreement will increase initial distributions because the Genesis Debtors will not have to reserve amounts for payment of disputed FTX Claims; (4) the Settlement Agreement will save the Genesis Debtors' estates substantial litigation costs; and (5) the Settlement Agreement is the product of extensive arms-length negotiation between the Genesis Debtors and the FTX Debtors, and each party's sophisticated counsel and advisors, all of whom have also spent several months analyzing, discussing, and preparing for litigation of the issues relating to the FTX Claims, and who determined, on this basis, that the Settlement Agreement represented a fair and reasonable resolution of each party's respective claims.

        2.        Courts in this Circuit emphasize that settlements should be approved, particularly "in light of the general public policy favoring settlements," *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998), in cases in which the settlement falls within the "range of reasonableness," *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), which can be based on a general review of the issues rather than a "'mini-trial' on the merits." *In re Purofied Down Prod. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993). "All that [the proponent of the settlement] must do is establish [that] it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly [the settlement] might be considerably less (or more) than were the

---

Claims are substantial. Even assuming that the value of the FTX Claims were significantly discounted from the amounts asserted in the FTX Proofs of Claim, the terms of the of the Settlement Agreement are reasonable when considering such risks and costs. *See In re Copperfield Invs., LLC,* 401 B.R. 87, 93-4 (Bankr. E.D.N.Y. 2009) (affirming approval of settlement which fixed disputed claims at amounts far below their asserted value as reasonable, and rejecting objectors' arguments that the debtor should have pursued litigation in light of the "overwhelming evidence in support of" the claims, given that the claims were disputed, success in litigation related to the claims was uncertain, and the "cost of litigating the claims and counterclaims" would be substantial.).

case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (citation omitted).

3. The Genesis Debtors have more than satisfied this burden under applicable law because, as explained in more detail below, the Settlement Agreement properly accounts for various categories of litigation risks, and was the product of good faith, arms' length negotiations conducted by experienced advisors and counsel.

4. Courts routinely approve settlements where debtors demonstrate that there are material risks to litigation, as here. *See In re W.T. Grant Co.*, 699 F.2d at 608; *see also In re Liu,* 166 F.3d 1200 (2d Cir. 1998) (affirming bankruptcy judge's settlement approval on the grounds that there were "risks inherent in continuing to litigate the disputed claims and [ ] the settlement was preferable under the circumstances."); *In re Cousins*, No. 09 CIV 1190 RJS, 2010 WL 5298172, at *4 (S.D.N.Y. Dec. 22, 2010) (affirming settlement in which debtors declined to pursue litigation related to claims because the benefits of pursuing such litigation were "speculative at best" and would "risk of further loss to the estate"); *In re Purofied Down Prod. Corp.,* 150 B.R. at 523 (affirming approval of settlement premised on "consideration of the issues involved in the litigation [which the debtors chose not to pursue], the costs attendant to the defense of the action, and the uncertainty of success"). Because of the risk avoided by the settlement, and for the other reasons articulated fully in the Motion and below, this Court should approve the Settlement Agreement.

A. **The Settlement Agreement Reasonably Accounts for Risks and Costs Associated with Litigating the Claims**

5. The Settlement Agreement should be approved because it avoids risks and expenses that would result from litigating the Claims. For one, there are inherent risks "in

3

continuing to litigate the [FTX] claims," including that a judgment on such claims might far exceed the amount provided in the Allowed Alameda Claim. *See In re Liu,* 166 F.3d at 1200 (affirming bankruptcy judge's settlement approval based on "risks inherent in continuing to litigate the disputed claims" which made "settlement preferable under the circumstances"). Although the Genesis Debtors believe they have strong defenses to the FTX Claims, litigation is inherently uncertain. For instance, the FTX Debtors have indicated that they would vigorously contest the applicability of the ordinary course defense, given the fraudulent manner in which the former management of FTX and Alameda operated their businesses.[3] Similarly, there is uncertainty as to the remaining defenses described in the AHG Objection, such as defenses relating to the Section 546(e) safe harbor, collateralization, and contemporaneous or subsequent value. In other words, while the Objectors seem to take the position that such defenses would leave the Genesis Debtors with little or no risk of exposure in litigating the FTX Claims, the success on the merits of such defenses is by no means assured. *See In re Nordlicht,* No. 21-CV-5990 (KMK), 2022 WL 1591788, at *10 (S.D.N.Y. May 19, 2022) (rejecting objectors' arguments that because the debtors would almost certainly prevail in litigation related to disputed claims, the settlement should be rejected and cautioning that "success on the merits is not yet assured"). Furthermore, litigating the FTX Claims would require extensive discovery, the results of which could yield facts that undermine the Genesis Debtors' defenses. For that reason, the settlement of these claims for less than 5% of their face value is not only reasonable, but is a positive outcome for the Genesis

---

[3] *See In re. Genesis Glob. Holdco, LLC.*, Case No. 23-10063-SHL, Hearing Tr. (June 13, 2023) at 18:10-23 ("Our ordinary course defense, though, Your Honor, or question is not an ordinary, ordinary course question because our case also implicates the possible fraud or Ponzi scheme exception to ordinary course. We don't know where we're coming out on that yet, but it's very much on the table. So whatever judge decides our preferences, will have to decide ordinary course and will also have to decide to ask whether or not the Ponzi scheme exception or the fraud exception to ordinary course plays a role[.]") (B. Glueckstein, counsel for the FTX Debtors).

Debtors. By resolving the FTX Claims, the Genesis Debtors also avoid the potential need to establish reserves for disputed FTX Claims in the event that the estimation proceeding was not completed expeditiously or otherwise proceeded in the FTX Bankruptcy Proceeding.

6. In addition, while the $1.6 billion in withdrawal claims (the "Withdrawal Claims") that FTX asserted against GGC were in fact based on withdrawals made by GGC's non-Debtor affiliate GGC International Ltd. ("GGCI"), *see* Objection at ¶ 14, the FTX Debtors have indicated that they would pursue the Withdrawal Claims against GGC on a subsequent-transferee theory. Moreover, should the FTX Debtors bring the Withdrawal Claims against GGCI as part of the FTX Bankruptcy Proceedings, GGCI might need to file for chapter 11 protection, requiring a tremendous additional investment of time and effort by the Genesis Debtors and their advisors at this critical stage in the restructuring, and delaying or preventing GGCI from paying promptly any of the intercompany loans it owes to GGC, thereby significantly reducing creditor recoveries at GGC. *See* Motion at ¶ 38. To the extent the FTX Debtors pursue the Withdrawal Claims (or any other potential claims) against GGCI in Delaware, which (in the absence of a settlement) they could do at any time, the Genesis Debtors could be forced to litigate such claims against GGCI on a protracted and unknown timeline. Additionally, FTX's release of claims against GGCI is instrumental to the Genesis Debtors' sale process, which, if successful, could result in additional recoveries for the Genesis Debtors' creditors.

7. Full-blown litigation related to the Claims would entail substantial costs and delays, and invite other risks that could negatively impact the Genesis Debtors' reorganization. *See In re Purofied Down Prod. Corp.,* 150 B.R. at 523 (affirming approval of settlement premised on "consideration of the issues involved in the litigation [which the debtors chose not to pursue], the costs attendant to the defense of the action, and the uncertainty of success."). In particular,

litigation of the FTX claims would likely hamper the Genesis Debtors' ability to confirm a plan expeditiously, and/or to confirm a plan that provides for distributions to creditors on an acceptable timeline. As explained in the Motion, the FTX Debtors have sought to fully litigate the FTX Claims in the FTX Bankruptcy Proceedings, or at least to reserve certain "core" issues for decision by the judge overseeing those cases. These issues include the value of FTT, insolvency of FTX and Alameda, and whether FTX and Alameda were fraudulent enterprises or Ponzi schemes, each of which is complex, highly factual, and requires extensive litigation. Any fulsome litigation concerning the FTX Claims – especially a protracted dispute in Delaware – would necessarily delay distributions under any plan in these cases.[4] To the extent this Court did not grant the Genesis Debtors' estimation motion or estimated the FTX Claims at some amount greater than $0, the Genesis Debtors would need to reserve that amount, substantially delaying distributions to creditors.

8.  Similarly, the direct cost of litigating the FTX Claims and the Genesis Claims to conclusion would also be substantial, as the Objectors themselves appear to recognize. *See* AHG Objection at ¶ 30. Given the complexity of the issues that would be implicated, such costs are likely exceed ten million dollars over the course of the litigation—particularly if this Court were to grant the Lift Stay Motion, *see* Motion at ¶ 37, and/or if the Genesis Debtors were forced to litigate the FTX Claims against the Genesis Debtors in this Court while simultaneously defending the Withdrawal Claims against GGCI in the FTX Bankruptcy Proceedings in Delaware (and particularly if such claims forced GGCI to file its own chapter 11 petition and commence its

---

[4] These risks are precisely why the Ad Hoc Group previously professed their desire to "reach some sort of closure" with respect to the FTX Claims and to resolve them "on a collaborative basis." *See In re. Genesis Glob. Holdco, LLC.*, Case No. 23-10063-SHL, Hearing Tr. (June 13, 20213) at 81:17-24 (B. Rosen, counsel for the Ad Hoc Group).

own proceedings in this Court). The cost of this litigation would directly diminish creditor recoveries, separate and aside from the indirect diminution that would be caused by the risk, uncertainty, and delay of fully litigating the claims.

9. Even if the Genesis Claims against the FTX Debtors were successfully litigated to a judgment at 100% of their face value, the Genesis Debtors would be unlikely to collect on a timely basis or in the full judgment at anything close to that amount. Although the Genesis Debtors believe that the Genesis Claims are strong, the FTX Debtors have scheduled some of the Genesis Claims as contingent, and others as contingent, unliquidated, and disputed. Moreover, some of the Genesis Claims are subject to many of the same defenses as the FTX Claims, such that success in raising such defenses in the context of the FTX Claims would necessarily negatively impact the likelihood of recovering under the Genesis Claims. Finally, the value of the Genesis Claims must be discounted by the time-value of money and the likely percentage recoveries that will be paid to creditors in the FTX Debtors' cases. The FTX Bankruptcy Proceedings remain in their early stages, and their progression will be slowed by uncommonly complex factual and legal issues, as well as the sheer size of their claims pool and the number of affirmative claims they intend to bring. Put simply, the FTX Debtors are unlikely to confirm a plan in the near future, and it is unclear when distributions will be made in the FTX Bankruptcy Proceedings and what percentage recoveries the Genesis Claims would be entitled to – if successful – under any such plan.

**B. The Settlement was the Product of Comprehensive, Good Faith Negotiations, and Achieves a Favorable Result for the Genesis Debtors and their Creditors**

10. The Settlement Agreement was reached after extensive negotiations between the Genesis Debtors and the FTX Debtors. The Genesis Debtors were represented by

sophisticated legal counsel and financial advisors, who had spent multiple months extensively analyzing the FTX Debtors' claims before the beginning of the negotiations. At all points during the negotiation, the Genesis Debtors shared information with the Official Committee of Unsecured Creditors and the Ad Hoc Group regarding the parties' respective positions, and the strategic considerations underlying the Genesis Debtors' actions and positions.

11. The Objectors' desire for a more favorable settlement amount, or a different settlement structure, does not undermine the objective reasonableness of the Settlement Agreement. And their specious assertions that the Genesis Debtors have provided insufficient information to this Court to assess the reasonableness of the settlement are baseless.

12. Finally, the Settlement Agreement is a holistic settlement of all claims between the Genesis Entities (including the Debtor and GGCI) and the FTX Debtors and was negotiated as such—it does not permit for a settlement of certain claims but not others.

C. **The Settlement Agreement Contains No Provisions Relating to Voting**

13. The Joinders' suggestions that the Settlement Agreement represents an attempt to purchase the FTX Debtors' vote are baseless, wrong, and, frankly, outrageous. *See* Gemini Joinder at ¶ 3; BRG Joinder at ¶ 6.

14. The Settlement Agreement contains no provisions relating to voting. In fact, the Settlement Agreement expressly preserves the FTX Debtors' ability to object to any plan that is not consistent with the terms of the Settlement Agreement. Settlement Agreement at ¶ 1(e); Motion at ¶ 30. Moreover, the Settlement Agreement expressly preserves the FTX Debtors' ability to object to the Plan if they believe it unfairly discriminates against the Allowed Alameda Claim. Settlement Agreement at ¶ 1(c).

15. To the extent the Joinders suggest that the Genesis Debtors' *motive* for pursuing settlement was related to some illicit vote-buying scheme, such accusations are completely false and unsupported by any evidence whatsoever. The Genesis Debtors reserve their right to seek discovery, and potentially costs, in connection with these frivolous and baseless statements. *See* Fed. R. Bankr. P. 9011(b) (requiring that "factual contentions have evidentiary support").

## CONCLUSION

For the reasons articulated above, the Genesis Debtors respectfully request that this Court overrule the Objections and grant the relief requested in the Motion and any other and further relief as it deems proper.

| | | |
|---|---|---|
| Dated: | September 5, 2023<br>New York, New York | */s/ Jane VanLare*<br>Sean A. O'Neal<br>Luke A. Barefoot<br>Jane VanLare<br>Andrew Weaver<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>*Counsel to the Genesis Debtors<br>and Debtors-in-Possession* |