Christopher Harris
Adam J. Goldberg
Brett M. Neve
Nacif Taousse
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: christopher.harris@lw.com
     adam.goldberg@lw.com
     brett.neve@lw.com
     nacif.taousse@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice* )
Emily R. Orman (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: nima.mohebbi@lw.com
     tiffany.ikeda@lw.com
     emily.orman@lw.com

*Counsel to the Foreign Representatives
of Three Arrows Capital, Ltd.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GENESIS GLOBAL HOLDCO, LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10063 (SHL)<br><br>(Jointly Administered) |

**OBJECTION TO THE DEBTORS' MOTION FOR AN ENTRY OF A SCHEDULING ORDER CONCERNING THEIR SECOND OMNIBUS OBJECTION TO CLAIMS BY THE FOREIGN REPRESENTATIVES OF THREE ARROWS CAPITAL, LTD**

Russell Crumpler and Christopher Farmer, in their capacities as the duly authorized foreign representatives (the "**Foreign Representatives**") of Three Arrows Capital, Ltd. ("**3AC**"), by and through the undersigned counsel, hereby submit this objection to the *Motion For Entry Of A Scheduling Order Concerning The Debtors' Second Omnibus Objection (Substantive) To Claim Nos. 523, 526, 527, 981, 982 And 990 Pursuant To 11 U.S.C. § 502 And Fed. R. Bankr. P. 3007*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

*(No Liability)*, ECF No. 659 (the "**Motion**") by Debtors Genesis Global Holdco, LLC ("**GGH**"), Genesis Global Capital, LLC ("**GGC**"), and Genesis Asia Pacific, Pte. Ltd. ("**GAP**") (the "**Debtors**"). In support of this Objection, the Foreign Representatives respectfully represent as follows:

1. The schedule proposed by the Debtors would require (1) production of expert reports by September 25, 2023, i.e. less than three weeks after the hearing on their Motion; (2) completion of discovery by October 9, 2023, i.e. just over a month after the hearing; and (3) a hearing on the merits of the Debtors' Objection a month later, on November 6, 2023. That the Foreign Representatives' claims are complex is evident from the Debtors' *863-page* Objection. The Debtors do not even assert that this is a reasonable schedule based on the substantive issues required to be decided in these claims.

2. Yet the Debtors insist on rushing litigation of these claims on a schedule that deviates from those in other similar proceedings and for which their only justification—the supposed need for prompt distributions—is a mirage. This expedited schedule is not necessary for prompt distributions because the Debtors have not yet even completed their to-be-proposed plan. And in any event, the Debtors can follow the normal course of reserving for the Foreign Representatives' claims—a reality that undercuts their entire argument that complex claims need to be litigated on their cramped timeline.

3. Nor does the Debtors' schedule account for the Foreign Representatives' motion seeking relief from the automatic stay in these Chapter 11 Cases (the "**Stay Relief Motion**"), which the Foreign Representatives previously informed the Debtors of and will file shortly after filing this Objection. If granted, the Stay Relief Motion would permit the Foreign Representatives' claims to be litigated in either 3AC's Chapter 15 case, or in 3AC's liquidation proceeding in the

British Virgin Islands ("**BVI**"). The Foreign Representatives should not be required to complete expert discovery when it remains uncertain whether their claims will require a U.S. court to hear expert testimony on BVI law, or a BVI court to instead hear expert testimony on U.S. law.

4. On the flip side, rushing this litigation is hugely prejudicial to the 3AC estate. The Foreign Representatives' claims against the Debtors represent some of the largest assets of 3AC's liquidating estate. 3AC's creditors currently face steeply impaired recoveries, and deserve a full and fair adjudication of these claims. And worse, the Debtors' schedule denies the Foreign Representatives time to obtain the discovery required for their claims, which involve hundreds of millions of dollars in cryptocurrency and raise complex issues related to security interests, foreign law, and bankruptcy safe harbors. The Debtors have not completed their document production, and their parent company, Digital Currency Group ("**DCG**"), has yet to produce a single document. Needless to say, factual depositions have not even been scheduled, much less conducted, and expert discovery (which is clearly needed, as the Debtors concede) is nowhere near beginning.

5. Because the required factual and expert discovery cannot be reasonably completed in the time allowed by the Debtors' schedule, the Court should deny the Debtors' Motion and enter the schedule set out in the attached Proposed Order, which instead allows until October 27, 2022 for the production of expert reports, requires completion of discovery by December 22, 2023, and sets the hearing on the Debtors' Objection for January 24 to 26, 2024.

**I.    THE DEBTORS' SCHEDULE IS NOT NECESSARY FOR DISTRIBUTION**

6. The Debtors' only explanation as to why they need to cram their facially-extreme schedule on 3AC is an assertion that the Foreign Representatives' alternative, which contemplates an evidentiary hearing on January 24 to 26, 2023, would "materially compromise initial distributions." ECF No. 659 at 6. The Debtors offer absolutely no basis for this assertion.

3

7.      A hearing on the Disclosure Statement for Debtors' Amended Plan has been scheduled for September 26, 2023. ECF Nos. 427, 429, 621. But the Debtors are no longer pursuing confirmation of that plan, so it cannot justify this extreme schedule.

8.      Instead, the Debtors' *Notice of Mediation Termination*, ECF No. 625, indicates that they will pursue confirmation of a *different* amended plan. But no plan or disclosure statement have been filed, and Gemini Trust N.A. and the Ad Hoc Group of GGC Lenders describe the proposed new plan as "unconfirmable," "a dead end" and "a bridge to nowhere." *See* ECF No. 634 at 3, 8; 635 at 4–5. The Official Committee of Unsecured Creditors has made clear that its support is subject to documentation and appears to have set a deadline for completion of that documentation of October 2, 2023. ECF No. 645 ¶ 6. Until the Debtors file their amended plan and disclosure statement, the September 26, 2023 hearing date is tentative at best.

9.      Even if that plan is confirmed (highly unlikely), the Debtors have not said when they will make distributions. In fact, their settlement term sheet reveals that payments on DCG's settlement obligations, and presumably distributions to creditors, will not be complete for years. *See* ECF No. 625 at 2 (describing first lien facility with two year maturity and second lien facility with *seven year maturity*).

10.     Furthermore, even if there were an imminent date for distributions—which there is not—the Debtors could make an interim distribution while reserving for 3AC's claims. This is of course the typical method to deal with outstanding claims. It is highly unusual for all claims to be resolved pre-confirmation (or even pre-distribution); instead, for large claims it is normal to reserve for them. Indeed, in the only cryptocurrency-related Chapter 11 case counsel is aware of in which a plan has been confirmed, over 50% of the assets available for distribution were reserved, and 33% of the assets available, or $445 million, were reserved for preference claims by a single

4

creditor. *See In re Voyager Digital Holdings, Inc.*, Case No 22-10943, ECF No. 1374 (Bankr. S.D.N.Y. May 5, 2023), at 4. The Debtors have not explained why a reserve is not feasible here.

## II. THE DEBTORS' SCHEDULE DOES NOT ACCOUNT FOR THE IMPACT OF 3AC'S MOTION TO LIFT THE STAY ON SUCH SCHEDULE.

11.   During their discussions with the Debtors regarding their proposed litigation schedule, counsel to the Foreign Representatives informed Debtors' counsel of their intent to file the Stay Relief Motion seeking relief from the automatic stay in these Chapter 11 Cases. As previewed with the Debtors, the Foreign Representatives will be filing the Stay Relief Motion shortly after filing this Objection. The Stay Relief Motion seeks an order from this Court lifting the automatic stay to permit litigation of 3AC's claims in the court overseeing 3AC's insolvency proceedings in the BVI (the "**BVI Court**"), or in the alternative, before the Honorable Judge Glenn of the U.S. Bankruptcy Court for the Southern District of New York (the "**3AC Court**") as an adversary proceeding related to 3AC's pending Chapter 15 case.

12.   3AC's success on the Stay Relief Motion would require setting a schedule for trial before either the BVI Court or the 3AC Court. Additionally, the kind and scope of the discovery necessary in connection with the litigation depends on the outcome of the Stay Relief Motion. For example, if the Stay Relief Motion is granted to allow litigation before the BVI Court, expert testimony would not be needed on the critical issues of BVI law, such as how insolvency should be determined and the nature of the "ordinary course" defense. Instead, expert testimony on U.S. law would be necessary to assist the BVI Court in adjudicating 3AC's claims on issues such as whether a security interest has been properly created under New York law.

13.   Accordingly, the parties should proceed with ongoing fact discovery, but should not be required to deliver expert reports pending resolution of the Stay Relief Motion, as contemplated by the Foreign Representatives' schedule.

5

### III. THE DEBTORS' SCHEDULE EFFECTIVELY DENIES 3AC DISCOVERY ON THE COMPLEX ISSUES IN DISPUTE BETWEEN 3AC AND THE DEBTORS

In contrast to the limited benefit to the Debtors of rushing this litigation, the 3AC estate would suffer serious prejudice from the Debtors' truncated schedule: The Debtors' schedule is patently inadequate to complete the extensive discovery which is required to resolve the complex and novel issues in dispute, and which is far from being completed.

#### A. 3AC's Claims Raise Complex Issues That Require Significant Discovery.

14. As set out in the Foreign Representatives' amended proofs of claim filed on August 18, 2023 (the "**Amended POCs**"), the Debtors were one of 3AC's largest lenders and purported to foreclose upon over a billion dollars of its assets after its collapse. The Foreign Representatives allege the Debtors lacked a security interest in approximately $614 million of 3AC's assets that the Debtors seized, including cryptocurrency and shares of the Grayscale Bitcoin Trust (the "**Unpledged Assets**"), and assert claims for turnover and conversion under U.S. and BVI law.

15. 3AC also made approximately $562 million in transfers to the Debtors leading up to its collapse, including purported loan and principal payments and transfers of cryptocurrency and approximately in the Grayscale Bitcoin Trust (the "**Preferential Transfers**"). The Foreign Representatives seek to avoid the Preferential Transfers under BVI law.[2]

16. The Debtors filed their Objection to the Amended POCs on September 1, 2023, which is 863 pages long—including 763 pages of apparently essential exhibits. ECF No. 658. The Objection will require the Court to resolve multiple complex and novel factual and legal issues related to the Debtors' security interests, 3AC's insolvency and the Debtors' knowledge thereof, and the application of bankruptcy "safe harbors."

---

[2] The Foreign Representatives reserve all rights of the 3AC estate with respect to potential claims under the Bankruptcy Code in the event a bankruptcy case is commenced in respect of 3AC.

17. *Security Interests.* The Debtors and 3AC agreed that "Collateral" was to be "memorialized using Loan Term Sheets." ECF No. 658 at 38–39. But the Unpledged Assets are not identified in Loan Term Sheets; instead, any security interest could only be based on the Debtors' "course of dealing" with 3AC and well over 100 pages of instant messages. *Id.* at 30–32, 43; ECF No. 658-20. Many of these messages are not remotely clear on their face and require context (*i.e.*, other documents and testimony) to understand. Clearly, whether a course of conduct creates a lien is an inherently complex factual issue.

18. *Insolvency.* The Debtors also dispute that 3AC was "insolvent" under BVI law when some of the Preferential Transfers were made. Resolving this dispute will require consideration of evidence concerning 3AC's financial situation, including the value of a wide variety of assets and assessment of 3AC's other obligations. This will require expert testimony both from solvency experts as well as BVI law experts (as the Debtors themselves concede), in addition to extensive factual development. *See, e.g.*, ECF No. 658-7 (declaration of BVI law).

19. *Debtors' Knowledge of 3AC's Insolvency.* The Debtors likewise raise a defense for transfers made "in the ordinary course of business" under BVI law. Evaluating this defense requires evidence concerning the Debtors' knowledge of 3AC's insolvency. *See* ECF No. 658 at 50–53. This again is an inherently factual issue requiring both written discovery (of emails and texts, which have not been fully produced) and depositions to determine the meaning of those written exchanges. This issue also requires expert testimony concerning BVI law.

20. *Safe Harbors.* The Debtors raise the safe harbors in Sections 546(e) and 546(g) of the Bankruptcy Code as a defense. *Id.* at 58–83. Whether these safe harbors apply depends on, *inter alia*, whether (and which) cryptocurrency is a security, currency, or commodity. This again

requires factual discovery regarding the Debtors' internal treatment of these assets, in their books and records and otherwise (which is not complete), and possibly expert testimony as well.

### B.     The Debtors' Schedule Leaves No Time For The Discovery Required.

21.     Because 3AC's books and records are incomplete, the Foreign Representatives must also rely on discovery from the Debtors and their parent company, DCG, to obtain information about their claims.[3]  More than six weeks ago, on July 14, 2023, the Foreign Representatives served requests for the production of documents (the "**RFPs**") on the Debtors.

22.     The Debtors have refused to produce documents responsive to more than half of the Foreign Representatives' RFPs, including those related to possession or control over 3AC assets purportedly foreclosed upon, their value, and assignment of loans and security interests to DCG.  The Debtors have produced only 1,714 documents to date.  Notably, they produced only 120 communications between the Debtors and their parent company, DCG, over an almost two-year period.  The Debtors suggest that some communications with DCG may have been withheld as protected by the common interest privilege, but have not even produced a privilege log.

23.     On July 14, 2023, the Foreign Representatives also served a Subpoena requesting production of documents from DCG.  DCG initially refused to produce *any* documents.  DCG finally agreed to produce documents on August 27, 2023, but has not yet done so.  The Debtors' proposed schedule would require completion of document productions by September 20, 2023, but there is no indication that the Debtors and DCG can complete production by that date.

24.     The Foreign Representatives intend to depose DCG's CEO and three current and former employees of the Debtors, and to notice Rule 30(b)(6) depositions for both DCG and the

---

[3]    The Court in 3AC's Chapter 15 case found that they have shown that 3AC's Founders, Kyle Davies and Su Zhu, have "conceal[ed] their whereabouts and failed to cooperate with the Foreign Representatives in a sufficient manner."  See Memorandum and Opinion, *In re Three Arrows Capital, Ltd.*, Case No. 22-10920-MG, ECF No. 79 (Bankr. S.D.N.Y. Dec. 29, 2022).

Debtors. The Foreign Representatives anticipate that they will present testimony from expert witnesses on insolvency, BVI law, and potentially the application of the bankruptcy safe harbors.

25. The Debtors' schedule provides the Foreign Representatives with just over a month to review documents, conduct factual depositions, produce expert reports, and take and defend expert depositions. This truncated schedule is a transparent attempt to gain a strategic advantage by denying the Foreign Representatives time to obtain discovery on their claims.

26. For comparison, in another preference action the Foreign Representatives' counsel has appeared in, the parties agreed on a schedule that allowed *over a year* for fact discovery and almost six months for summary judgment motions. *See* Scheduling Order, *Alameda Research Ltd. v. Michael Kives et al.,* Adv. Pro. No. 23-50411 (JTD), ECF No. 28 (Bankr. D. Del. August 31, 2023). There is no valid distinction between the facts in *Alameda* and the facts here that could somehow support the Debtors' highly unusual two-month schedule for litigation of 3AC's claim.

## CONCLUSION

27. The Debtors identify no urgency justifying the extraordinarily expedited schedule they seek here, which would risk severe prejudice to the 3AC estate. The Foreign Representatives respectfully request that the Court deny the Motion and enter the alternative schedule set out in the Proposed Order, which is itself expeditious in comparison to typical practice and requires the completion of fact discovery by December 16, 2023 and a hearing on January 24 to 26, 2023.

28. The Foreign Representatives reserve the right to supplement this Objection in the event the Court orders a hearing on a date other than September 6, 2023.

| | |
|---|---|
| Dated: September 5, 2023<br>Los Angeles, California | Respectfully submitted,<br><br>/s/ Nima H. Mohebbi<br>Nima H. Mohebbi (admitted *pro hac vice*)<br>Tiffany M. Ikeda (admitted *pro hac vice*)<br>Emily R. Orman (*pro hac vice* pending)<br>**LATHAM & WATKINS LLP**<br>355 South Grand Avenue, Suite 100<br>Los Angeles, CA 90071<br>Telephone: (213) 485-1234<br>Facsimile: (213) 891-8763<br>Email: nima.mohebbi@lw.com<br>          tiffany.ikeda@lw.com<br>          emily.orman@lw.com<br><br>– and –<br><br>Adam J. Goldberg<br>Christopher Harris<br>Brett M. Neve<br>Nacif Taousse<br>Brian S. Rosen<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: adam.goldberg@lw.com<br>          christopher.harris@lw.com<br>          brett.neve@lw.com<br>          nacif.taousse@lw.com<br>          brian.rosen@lw.com<br><br>*Counsel to the Foreign Representatives*<br>*of Three Arrows Capital, Ltd.* |