**Objection Deadline: TBD**
**Hearing Date: TBD**

Christopher Harris
Adam J. Goldberg
Brett M. Neve
Nacif Taousse
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  chris.harris@lw.com
       adam.goldberg@lw.com
       brett.neve@lw.com
       nacif.taousse@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
Emily R. Orman (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
       tiffany.ikeda @lw.com
       emily.orman@lw.com

*Counsel to the Foreign Representatives of Three Arrows Capital, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
            :
In re:           :     Chapter 11
            :
Genesis Global Holdco, LLC, *et al.*,[1]    :     Case No. 23-10063 (SHL)
            :
            :     Jointly Administered
         Debtors.    :
            :
-----------------------------------------------------------------X

**MOTION OF THE FOREIGN REPRESENTATIVES OF**
**THREE ARROWS CAPITAL, LTD. FOR ENTRY OF AN ORDER (I)**
**MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1) AND**
**BANKRUPTCY RULE 4001 AND (II) GRANTING RELATED RELIEF**

---

[1]   The Debtors in these Chapter 11 Cases (the "**Debtors**"), along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219) ("**GGH**"); Genesis Global Capital, LLC (8564) ("**GGC**"); Genesis Asia Pacific Pte. Ltd. (2164R) ("**GAP**").  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

Russell Crumpler and Christopher Farmer, in their capacities as joint liquidators appointed by the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "**BVI Court**") in the liquidation proceeding of Three Arrows Capital, Ltd. ("**3AC**") in the British Virgin Islands (the "**BVI Proceeding**") and duly authorized foreign representatives (the "**Foreign Representatives**"), by and through the undersigned counsel, hereby submit this motion (the "**Motion**") pursuant to section 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order substantially in the form of the order attached hereto as **Exhibit A** (the "**Order**"): (i) granting relief from the automatic stay to permit the commencement and adjudication of the causes of action set forth in the proofs of claim filed with this Court under Claim Nos. 981, 982 and 990 (the "**3AC POCs**", and the claims set forth therein, the "**3AC Claims**") before the BVI Court (as defined below), or in the alternative, before the U.S. Bankruptcy Court for the Southern District of New York in an adversary proceeding related to 3AC's pending Chapter 15 case before Chief Judge Martin Glenn (the "**3AC Court**") and (ii) granting related relief.  In support of this Motion, the Foreign Representatives respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Debtors participated in a series of transactions with 3AC in the months preceding 3AC's collapse and liquidation.  In just the two months prior to the commencement of the BVI Proceeding on June 27, 2022, the Debtors received transfers worth over $500 million from 3AC.  Then, before initiating these Chapter 11 cases, the Debtors purported to foreclose upon over $1 billion in 3AC assets, much of which was not subject to valid and enforceable security interests.

2.      Through the 3AC POCs, the Foreign Representatives have asserted claims (1) to avoid, pursuant to BVI law, preferential transfers to the Debtors by 3AC while it was insolvent,

and (2) to recover assets the Debtors purported to foreclose upon in the absence of a valid and enforceable security interest under New York law, BVI law, and section 542 of the Bankruptcy Code.  A critical issue in these claims is likely to be when 3AC became insolvent—an issue core to 3AC's global liquidation proceedings and claims against a multitude of parties.

3.        3AC has asserted similar claims against other counterparties who are also debtors in their own Chapter 11 proceedings.  Namely, 3AC has filed proofs of claim asserting claims analogous to the 3AC Claims against BlockFi Inc. and its debtor affiliates (collectively, "**BlockFi**") (in whose Chapter 11 cases the Foreign Representatives also intend, in short order, to seek relief from the automatic stay for substantially the same reasons set forth here), against FTX Trading Ltd. and its debtor affiliates (collectively, "**FTX**"), and against Celsius Network LLC and its debtor affiliates ("**Celsius**").[2]  A critical issue in these claims is *when* 3AC became insolvent.

4.        ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[2]   As stated in the 3AC POCs, the information available to the Foreign Representatives regarding 3AC's assets, business, affairs—including 3AC's relationships with the Debtors and other third parties—has been severely limited by the lack of cooperation from 3AC's founders and its meager books and records.  Accordingly, the Foreign Representatives may uncover additional claims, including claims of a similar nature to the 3AC Claims, against additional parties.

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉

5.      In essence, if the Foreign Representatives are not able to adjudicate the 3AC Claims, along with all other analogous claims 3AC has against other counterparties involving common questions of fact and law, in centralized fashion before the BVI Court, or in the alternative before the 3AC Court, the 3AC estate would be undertaking litigation on multiple fronts on the same issues and thereby risk inconsistent outcomes and judicial decisions across similar claims and issues of fact and law.  At a minimum, limited relief should be granted to allow the BVI Court (or, in the alternative, the 3AC court) to determine the date upon which 3AC became insolvent because of the commonality of this issue to 3AC's claims against multiple parties.  For this and other reasons, as discussed below, significant good cause exists to grant relief from the automatic stay in this matter.

## JURISDICTION

6.      This Court has jurisdiction over the Debtors' Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.      The statutory predicates for the relief sought herein include section 362(d)(1) of the Bankruptcy Code, Bankruptcy Rule 4001, and rule 4001-1 of the Local Bankruptcy Rules for the Southern District of New York.

## BACKGROUND

**I.      The Relationship Between 3AC and the Debtors**

8.      3AC was an investment firm incorporated in the BVI with a focus on trading cryptocurrency and other digital assets.  3AC was founded in 2013 and initially focused on foreign-exchange arbitrage before shifting to cryptocurrency trading in 2018.

9.      The Debtors describe themselves as "[t]he premier institutional digital asset financial services firm" and have originated over $244 billion in loans of cryptocurrency or U.S. dollars since launching their institutional cryptocurrency lending business in 2018.[3]  The Debtors are wholly-owned subsidiaries of Digital Currency Group Inc. ("**DCG**").  The Debtors were 3AC's largest purported lenders and provided it with billions of dollars' worth of loans.

10.      In early 2022, the global cryptocurrency market experienced a historic and momentous decline, and 3AC collapsed as a result.  Ultimately, 3AC lost around $2.7 billion in value between February and May 2022.

11.      The Debtors were obviously aware of the decline in the cryptocurrency markets from 2021 through 3AC's collapse in 2022.  Nevertheless, they provided billions of dollars of funding to 3AC during this time period and had a close working relationship with 3AC's founders.  And, on information and belief, the Debtors were aware of 3AC's significant exposure to certain cryptocurrency and digital assets whose value severely deteriorated (and in some cases, completely collapsed) during the cryptocurrency market decline.

---

[3]   Genesis, *About Genesis*, https://genesistrading.com/company/about (last accessed Aug. 16, 2023); Genesis, *Genesis Q1 2022 Market Observations*, https://info.genesistrading.com/hubfs/quarterly-reports/2022/Genesis-Q1-Report-2022.pdf  (last accessed Aug. 16, 2023) ("As of March 31, cumulative originations had reached $195 Billion.");    Genesis,    *Genesis    Q2    2022    Market    Observations*,    *available    at* https://info.genesistrading.com/hubfs/quarterly-reports/2022/Genesis-Q2-Report-2022.pdf  (last accessed  Aug. 16, 2023) ("The Genesis lending desk originated approximately $40.4 billion in loans" in one quarter alone).

12.     Subsequent to 3AC's collapse, the Debtors' purported to foreclose upon certain assets in which they asserted a security interest.  The value of the assets the Debtors purportedly foreclosed upon exceeded $1 billion at the time of foreclosure.

13.     On July 14, 2022, pursuant to that certain Assignment and Assumption of Master Loan Agreement, by and between Debtor GAP and its parent company DCG (the "**DCG Assignment Agreement**"), GAP purported to assign its rights under the loan agreements between GAP and 3AC, and any related pledges, to DCG.

14.     On June 27, 2022, 3AC commenced the BVI Proceeding, and the BVI Court appointed Foreign Representatives Russell Crumpler and Christopher Farmer as 3AC's joint liquidators.   On July 28, 2022, the Foreign Representatives obtained recognition of the BVI Proceeding as a "foreign main proceeding" under Chapter 15 of the Bankruptcy Code before the Honorable Martin Glenn of the U.S. Bankruptcy Court for the Southern District of New York.  *In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG), Docket No. 47 (Bankr. S.D.N.Y. July 28, 2022).

15.     As discussed in the 3AC POCs, the Foreign Representatives dispute that the Debtors had a valid and enforceable security interest in many of the assets the Debtors purported to foreclose upon.  In order to preserve these claims, the Foreign Representatives filed the 3AC POCs.

16.     Now, the Foreign Representatives seek relief from the automatic stay in these Chapter 11 cases to commence and adjudicate the 3AC Claims before the BVI Court, or in the alternative before the 3AC Court, to enable the centralized resolution of such claims before the same court along with 3AC's analogous claims against other counterparties, without running the

risk of multifront litigation resulting in inconsistent outcomes and judicial determinations of similar questions of law and fact.

## II.    Timeliness of this Motion in Light of Developments in these and other Pending Chapter 11 Proceedings

17.    On September 1, 2023, the Debtors filed the *Debtors' Second Omnibus Objection (Substantive) To Claim Nos. 523, 526, 527, 981, 982 and 990 pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* at Docket No. 658 (the "**Genesis Objection**").  The Debtors seek to prosecute the Genesis Objection and litigation against the 3AC Claims on an extremely accelerated schedule that they propose would culminate in a hearing on the 3AC Claims in the first week of November 2023.  *See Motion for Entry of a Scheduling Order Concerning the Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability),* Docket No. 659.  The Foreign Representatives oppose the Debtors' proposed schedule as patently unreasonable in light of the complexity of the issues involved in the 3AC Claims and as a transparent attempt to exploit the information asymmetries that 3AC faces with respect to the 3AC Claims relative to the Debtors.

18.    In addition to the unreasonably accelerated litigation timeline that the Debtors are attempting to impose on the Foreign Representatives, the Foreign Representatives face substantial timing pressures in the BlockFi Chapter 11 cases.  There, BlockFi filed an objection to 3AC's claims against BlockFi and a motion seeking estimation of such claims at $0, with both matters set for at least initial hearings on September 20, 2023.  BlockFi is similarly seeking to neutralize 3AC's claims on an expedited timetable in parallel with the BlockFi plan process, which includes a confirmation hearing currently scheduled for September 26, 2023.  The Foreign Representatives will likewise be opposing these attempts and will seek relief from the stay in the BlockFi Chapter 11 cases.

19.     In light of these developments, the filing of this Motion, and a substantially similar motion in the BlockFi Chapter 11 cases, is an essential and timely step in the Foreign Representatives' efforts to preserve and ensure centralized resolution of their claims against their various litigation counterparties.

## BASIS FOR RELIEF

**I.     The Automatic Stay Should Be Lifted to Permit the Commencement and Adjudication of the 3AC Claims before the BVI Court, or in the Alternative, before the 3AC Court.**

20.     Under the Bankruptcy Code, the filing of a bankruptcy petition automatically stays "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy]." 11 U.S.C. § 362(a)(1).  However, stays are not unmovable, as the Code also provides for lifting them under certain circumstances.  Specifically, section 362(d)(1) states that "[o]n request of a party in interest . . . the court shall grant relief from the automatic stay . . . by terminating, annulling, modifying, or conditioning such stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. § 362(d)(1).

21.     While the Bankruptcy Code does not define the phrase "for cause," courts recognize it as "a broad and flexible concept that must be determined on a case-by-case basis."  *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (quoting *In re Brown*, 311 B.R. 409, 412–13 (E.D. Pa. 2004)); *see also E. Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169, 172 (2d Cir. 1998) ("[B]ankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief."); *In re Pittsford Polo Club, Inc.*, 188 B.R. 339, 344 (Bankr. W.D.N.Y. 1995) (bankruptcy courts are empowered with "broad discretion to fashion relief from the automatic stay").  The movant must make an initial showing of cause, and then the burden of proof shifts to the debtor to rebut that cause exists.  11 U.S.C. § 362(g); *see*

*also In re Sonnax Indus.*, 907 F.2d 1280, 1285 (2d Cir. 1990).  Ultimately, whether to lift the stay

is in the Court's discretion.  *Id.* at 1286.

22.     In determining whether to modify or lift the automatic stay to allow litigation against

a debtor to proceed in another forum, courts in this Circuit typically consider the twelve factors set

forth by the Second Circuit in the *Sonnax* case.  Those factors are:

> (1) whether relief would result in a partial or complete resolution of the
> issues; (2) lack of any connection with or interference with the bankruptcy
> case; (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been
> established to hear the cause of action; (5) whether the debtor's insurer has
> assumed full responsibility for defending it; (6) whether the action primarily
> involves third parties; (7) whether litigation in another forum would
> prejudice the interests of other creditors; (8) whether the judgment claim
> arising from the other action is subject to equitable subordination; (9)
> whether movant's success in the other proceeding would result in a judicial
> lien avoidable by the debtor; (10) the interests of judicial economy and the
> expeditious and economical resolution of litigation; (11) whether the parties
> are ready for trial in the other proceeding; and (12) impact of the stay on the
> parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.  A court need only apply the factors relevant to the particular case and

does not need to give each factor equal weight.  *In re Project Orange Assocs., LLC*, 432 B.R. at

104.  Here, the balance of the *Sonnax* factors supports lifting the automatic stay.

**A.     The *Sonnax* Factors for Granting a Motion to Lift the Automatic Stay Support the Relief Requested Herein**

> (i)     *Sonnax Factor 1: whether relief would result in a partial or complete resolution of the issues*

23.     The BVI Court is capable of reaching a complete resolution of 3AC's Claims,

including issues based on U.S. law, as described in the *Declaration of Grant Carroll in Support of*

*Motion of the Foreign Representatives of  Three Arrows Capital, Ltd. for Entry of an Order (I)*

*Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(D)(1) and Bankruptcy Rule 4001 And*

*(II) Granting Related Relief*, which is attached hereto as **<u>Exhibit B</u>**.  The BVI Court likely would

not determine the safe harbor defenses raised by the Debtors under the Bankruptcy Code. *Id.* To the extent the Debtors have a legal basis to assert any of the Bankruptcy Code's safe harbor defenses (a point that the Foreign Representatives dispute as a legal and factual matter), the Debtors would maintain the ability to do so before this Court. The safe harbors would become relevant only after the BVI Court has fully adjudicated the 3AC Claims.

24.    In the alternative, the 3AC Court would afford a complete resolution of the 3AC Claims and would be capable of adjudicating safe harbor defenses.

25.    It is possible the Debtors may later seek equitable subordination of the 3AC Claims after they are adjudicated, but there is no such request for subordination pending that makes this issue relevant to this Motion. Even if the Debtors do seek subordination, the legal issues and facts involved will be different than those necessary to decide the 3AC Claims.

26.    Furthermore, a complete resolution of the issues arising from the 3AC Claims will not be available outside of the BVI Court. DCG is implicated in the 3AC Claims by virtue of the DCG Assignment Agreement. DCG asserts claims of roughly $1.1 billion against 3AC in the BVI Proceeding, which are not before this Court, and any resolution of the 3AC Claims will impact DCG's ability to assert and recover on its claims against 3AC.

27.    Accordingly, the first *Sonnax* factor weighs in favor of the relief requested herein. *See In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017, at *4 (Bankr. S.D.N.Y. Feb. 28, 2018) (In finding that Sonnax factor 1 supports relief from the stay in that case, the court stated that "[r]elief from the stay would result in the District Court determining whether the Debtor is liable and the amount of the claim would be liquidated, thus resolving the Movants' FLSA claims completely.").

(ii)    *Sonnax Factor 2: whether there is a connection with or interference with the Debtors' bankruptcy case*

28.    Lifting the stay would not interfere with the Debtors' bankruptcy case. The Debtors may proceed with their Chapter 11 cases in this Court, unobstructed by 3AC or its claims, and a reserve may be created for the 3AC Claims pending adjudication. Discovery in connection with the 3AC Claims has been ongoing for weeks, and the parties are advancing towards a trial of those issues. Lifting the stay would simply result in another court holding that trial, and particularly if that court is the 3AC Court, such court would not only be in the same jurisdiction as this court, but within the same building. *See In re Cicale*, No. 05-14462 AJG, 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. June 29, 2007) ( "[A]lthough the Third–Party Action will delay the prosecution of the discharge action, any delay will not unnecessarily interfere with the bankruptcy case. That is because if [movant] does not commence the Third–Party Action, similar litigation would go forward in the discharge action, and thus, [Sonnax factor 2] weighs in favor of [movant].").

29.    Accordingly, lifting the stay in this case could not credibly be characterized as resulting in any meaningful interference with the Debtors' restructuring efforts. The third *Sonnax* factor therefore weighs in favor of the relief requested herein.

(iii)    *Sonnax Factor 3: whether the other proceeding involves the debtor as a fiduciary*

30.    The 3AC Claims, as asserted in the 3AC POCs, are not asserted against the Debtors by virtue of any status they may have as fiduciaries. Accordingly, this factor is not applicable. *See In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (stating that "*Sonnax* [factor] 3 . . . [is] not relevant to this matter as the [underlying litigation] does not involve the Debtor as a fiduciary. . . .").

(iv)    *Sonnax Factor 4: whether a specialized tribunal with the necessary expertise has been established to hear the cause of action*

31.    If the stay is lifted to permit litigation of the 3AC Claims before the BVI Court in particular, such litigation would be conducted before the specialized tribunal with the necessary expertise to adjudicate BVI law issues—the BVI Court—which represents the basis for a substantial portion (if not the majority) of the 3AC Claims. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Allowing the BVI Court to adjudicate the 3AC Claims (or only the issues of insolvency) would obviate the need for this Court to resolve BVI law issues, which would necessarily involve expending additional resources on BVI law expert testimony and evidence.  Therefore, the fourth *Sonnax* factor weighs in favor or the relief requested herein.  *See In re Cortuk*, No. CV 18-2626 (BRM), 2019 WL 2171481, at *5 (D.N.J. May 20, 2019) (affirming the bankruptcy court's finding that relief from the stay is warranted on the basis of the *Sonnax* factors, including that the underlying litigation "involved foreign law with which foreign courts would be more familiar.").

(v)    *Sonnax Factor 5: whether the debtor's insurer has assumed full responsibility for defending it*

32.    To the Foreign Representatives' knowledge, no insurer has assumed responsibility for defending the 3AC Claims.  Accordingly, this factor is not applicable.  *See Taub*, 413 B.R. at 62 (stating that "*Sonnax* [factor 5] [is] not relevant to this matter as the [underlying litigation] . . . does not involve insurance . . . .").

(vi)    *Sonnax Factor 6: whether the action primarily involves third parties*

33.    The 3AC Claims also involve third parties.  The DCG Assignment Agreement can serve as the basis for both the Debtors and 3AC to assert claims against DCG on account of GAP's liability on the 3AC Claims.  In addition, DCG has asserted claims against 3AC in the BVI

12

Proceeding, and for this reason, DCG will be intricately implicated because the BVI Court will ultimately be asked to determine the impact of the 3AC Claims on 3AC's liability to DCG. The U.S. Bankruptcy Court for the Southern District of New York has previously ruled that this factor supports granting relief from the stay where third parties are involved in the underlying litigation. *See In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017, at *4 (Bankr. S.D.N.Y. Feb. 28, 2018) (in stating that *Sonnax* factor 6 supports relief from the stay, the court stated as follows: "Although the Debtor alleges the FLSA Litigation does not primarily involve third parties, they admit that third parties are involved. If the Movants successfully argue the Defendants violated applicable labors laws, and that Non-Debtor Defendants are jointly and severally liable, the Movants may be able to collect from the Non-Debtor Defendants. Lifting the stay will allow the FLSA Litigation to proceed against all Defendants.") (internal citations omitted). Accordingly, this factor favors the relief requested herein.

> (vii)    *Sonnax Factor 7: whether litigation in another forum would prejudice the interests of other creditors*

34.    The interests of the Debtors' creditors would not be prejudiced by lifting the stay in this case. No other creditor is asserting, like 3AC, that it is entitled to recover the assets identified in the 3AC Claims on the basis of avoidance powers. That issue is unique to 3AC and is purely a dispute among 3AC (as represented by the Foreign Representatives), on the one hand, and the Debtors and DCG, on the other hand. *See In re Rochester Drug Cooperative, Inc.*, 620 B.R. 699, 705 (Bankr. W.D.N.Y. 2020) (finding that *Sonnax* factors 7, 10, and 12, weigh most heavily in favor of granting stay relief for a party to assert a counterclaim for setoff against the debtor because the alleged setoff claim was "not a claim available to all unsecured creditors."). Accordingly, this factor weighs in favor of the relief requested herein.

(viii)    *Sonnax Factor 8: whether the judgment claim arising from the other action is subject to equitable subordination*

35.    While equitable subordination is an affirmative defense to a motion for relief from the stay, *In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991), it is only relevant in a context where the movant seeks relief from the stay on the basis of its security interest in the property subject to litigation, *id*. at 293.  In that scenario, the creditor moving for relief on the basis of its security interest effectively loses its secured status if it is equitably subordinated, and therefore its basis for relief from the stay.  As discussed, that is not the case here, as 3AC's claims do not hinge on a preexisting security interest asserted by 3AC in the assets that are subject to such claims.  Rather, the 3AC Claims are in the nature of preference and turnover claims.  Accordingly, this factor weighs in favor of granting the relief requested herein.

(ix)    *Sonnax Factor 9: whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor*

36.    3AC's success on the 3AC Claims would not result in a judicial lien that is avoidable by the Debtors.  Accordingly, this factor weighs in favor of the relief requested herein. *See In re Artisanal 2015, LLC,* No. 17-12319 (JLG), 2017 WL 5125545, at *12 (Bankr. S.D.N.Y. Nov. 3, 2017) (finding that the ninth *Sonnax* factor weighs in favor of relief from the stay where judgment in the underlying litigation in favor of the movant seeking relief from the stay would not result in a judicial lien avoidable by the debtor).

(x)    *Sonnax Factor 10: whether lifting the stay serves the interests of judicial economy and the expeditious and economical resolution of litigation*

37.    Most importantly, litigation of the 3AC Claims before the BVI Court, or in the alternative, the 3AC Court, serves the interests of judicial economy and the expeditious and economical resolution of the disputes.  *In re Lyondell Chem. Co.*, 402 B.R. 596, 609–10 (Bankr.

S.D.N.Y. 2009) ("[T]he interests of judicial economy and expeditious resolution of the litigation normally are amongst the most important factors in any Sonnax analysis.").  The 3AC Claims are most appropriately and efficiently litigated before the BVI Court or the 3AC Court (in the alternative), where core legal and factual issues involved in the 3AC Claims and similar claims against other parties 3AC (*e.g.*, BlockFi, FTX, and potentially among others) can be adjudicated by one court.  Requiring the Foreign Representatives to litigate substantially similar claims before multiple courts will lead to a significant and unnecessary expenditure of estate and judicial resources, ultimately to the detriment of 3AC's creditors, and in contravention of all principals of judicial economy.  Further, litigating the 3AC Claims before the BVI Court will be most efficient because it will also allow for resolution of DCG's ability to assert and recover on its claims against 3AC, which will be before the BVI Court regardless of which court decides the 3AC Claims.

38.    Multifront litigation also carries the risk of inconsistent outcomes on various core issues that are common across 3AC's claims against the aforementioned counterparties.  An example of such a core issue is the date of 3AC's insolvency.  *When* 3AC became insolvent is determinative of which transfers may be avoided as preferences.  Were the stay not lifted, and the Foreign Representatives forced to litigate this issue in multiple courts, various courts adjudicating the issue may reach inconsistent outcomes, resulting in factually analogous transfers being recoverable against one party but not against another, simply as a result of the court where the particular claims were tried.  *See In re Davis*, 91 B.R. 470, 471 (Bankr. N.D. Ill. 1988) ("Cause for lifting the stay exists here, principally because of the risks, if the stay is not lifted, of inconsistent results in two forums, of a conflict in the interpretation of state law between this court and the state court, and of duplication of lawyer and judicial effort.")

39.     In the case of 3AC's claims against these Debtors alone, there will be disputes on insolvency down to the day that could have impacts into the hundreds of millions of dollars. The market movements that occurred in this time period will be a focal point of litigation over insolvency, which will be a decisive element of deciding which preference claims are valid. Indeed, between the period from November 2021 to May 2022, global crypto markets declined by over $1.7 trillion from a high of over $3 trillion in November 2021 to a low of $1.3 trillion on May 11, 2022.[4] And between May 3, 2022 and May 13, 2022, the price of the LUNA tokens fell to effectively $0.[5] During this market turmoil, 3AC made various transfers to the Debtors and other counterparties that the Foreign Representatives assert constitute preferential transfers. For example, on May 6, 2022, 3AC made a payment to the Debtors of $115 million, which is subject to a preference claim. On May 9, 2022, 3AC made a payment of $71 million to BlockFi, which is also subject to a preference claim unrelated to these Chapter 11 cases. And, on May 11 and 12, 2023, 3AC transferred to the Debtors over 13 million shares of the Grayscale Bitcoin Trust and other digital assets with an aggregate value over $250 million—again, transfers that are subject to preference claims. Precisely when 3AC became insolvent is determinative of whether the Foreign Representatives' preference claims can succeed with respect each of those transfers. In addition, rulings on the day that 3AC became insolvent or related issues in one case could impact the 3AC estate and its creditors as it relates to other cases, and in this context, one court should resolve these questions.

---

[4]   https://www.coingecko.com/en/global-charts

[5]   https://www.forbes.com/sites/lawrencewintermeyer/2022/05/25/from-hero-to-zero-how-terra-was-toppled-in-cryptos-darkest-hour/?sh=65244847389e

40.     Not only would multifront litigation require the 3AC estate to expend substantial resources litigating the same issues in multiple courts in parallel, and in doing so risk inconsistent outcomes with respect to similarly situated defendants, but any unfavorable outcome in any one court could be used against 3AC in other courts (via the doctrine of equitable estoppel) notwithstanding active litigation on the same issue. Such an outcome would grant an undue litigation advantage to 3AC's adversaries by providing them with a basis to cherry-pick the outcomes of multiple proceedings and argue that 3AC should be tied to every unfavorable outcome in any one court.

41.     Finally, the BVI Court and the 3AC Court both have a far greater interest in resolving the 3AC Claims. *See In re Aerovias Nacionales De Colombia S.A. Avianca*, 345 B.R. 120, 124 (Bankr. S.D.N.Y. 2006) (finding that the *Sonnax* factors favored litigation in the foreign court that had a greater interest in resolving the underlying claims). The 3AC Claims represent one of the largest assets of the 3AC estate, and the ability to recover the on the 3AC Claims would dramatically increase the recoveries available to 3AC's creditors. Furthermore, a decision on the timing of 3AC's insolvency will have broad impacts on 3AC's claims against other parties. Accordingly, while the issues presented in adjudicating the 3AC Claims are ancillary in these Chapter 11 cases, they are central and case-altering from the perspective of the BVI Proceeding and 3AC's Chapter 15 case.

42.     For the reasons set forth above, the tenth *Sonnax* factor weighs heavily in favor of the relief requested herein.

   (xi) *Sonnax Factor 11: whether the parties are ready for trial in the other proceeding*

43.     While the parties are not, as of the filing of this Motion, ready for trial on the 3AC Claims, they have been engaged in ongoing discovery efforts for weeks and are accordingly

advancing towards trial of the issues. Lifting the stay would only affect the court before which such trial is held. This factor therefore weighs in favor of relief from the stay or is neutral.

        (xii)    *Sonnax Factor 12: the impact of the stay on the parties and the balance of harms*

44.    The impact of the stay on the parties and the balance of harms weigh heavily in favor of the relief requested herein. Maintaining the automatic stay is prejudicial to 3AC and the Foreign Representatives, who would be forced to expend their estate's resources in the pursuit of analogous claims and litigation of many of similar issues before multiple courts, on different timelines and in decentralized, uncoordinated fashion. This incremental cost and the likely time delay resulting from uncoordinated multi-front litigation are exclusively borne by 3AC and its creditors.

45.    Additionally, maintaining the stay and preventing the adjudication of the 3AC Claims before the BVI Court (or, in the alternative, the 3AC Court) significantly prejudices 3AC's creditors. 3AC's creditors are obviously the economic beneficiaries of the 3AC Claims. *See In re Sierra Concrete Design, Inc.*, 463 B.R. 302, 307 (Bankr. D. Del. 2012) ("[T]he underlying purpose of the preference law [is] . . . to level the pre-bankruptcy playing field for all creditors."). Yet, if the 3AC Claims were litigated before this Court, 3AC's creditors may lose the ability to be heard on such issues, despite the fact that they are the main economic stakeholder therein. Accordingly, the balance of harms on the parties favors lifting the stay.

46.    In contrast, lifting the stay from the stay will not prejudice the Debtors or their restructuring process. A reserve may be created for the 3AC Claims pending resolution, as is typical in Chapter 11 cases while disputed claims are resolved. Indeed, in the only cryptocurrency-related Chapter 11 case counsel is aware of in which a plan has been confirmed, over 50% of the assets available for distribution were reserved, and 33% of the assets available, or $445 million,

were reserved for preference claims by a single creditor.  *See, e.g.*, *In re Voyager Digital Holdings, Inc.*, Case No 22-10943, ECF No. 1374 (Bankr. S.D.N.Y. May 5, 2023), at 4.

47.     In summary, factors 1, 2, 4, 6, 7, 8, 9, 10 and 12 all weigh in favor of lifting the stay under the present facts, factor 11 weighs in favor of relief from the stay or is neutral, while factors 3 and 5 are not applicable.  Accordingly, the balance of the *Sonnax* factors weighs in favor of the relief requested herein.

48.     As further support of the analysis set forth above, at least one court in this Circuit has granted relief from the automatic stay to allow one debtor to pursue in its own bankruptcy case avoidance actions against another debtor.  *See In re Shared Techs. Cellular, Inc.*, 281 B.R. 804 (Bankr. D. Conn. 2002), *aff'd*, 293 B.R. 89 (D. Conn. 2003).  That court's decision was affirmed on appeal.  *In re Shared Techs. Cellular, Inc.*, 293 B.R. 89 (D. Conn. 2003) (bankruptcy court acted appropriately and within its jurisdiction in its modification of the automatic stay to permit the movant to litigate its preference claims before its own bankruptcy court).

## CONCLUSION

49.     For the foregoing reasons, the balance of the applicable *Sonnax* factors demonstrates that cause exists for the automatic stay to be lifted or modified to permit 3AC to liquidate the 3AC Claims before the BVI Court within the context of the BVI Proceeding (or, in the alternative, before the 3AC Court within the context of 3AC's Chapter 15 case).  Additionally, because the *Sonnax* factors also provide sufficient grounds to waive the requirements of Bankruptcy Rule 4001(a)(3), the Foreign Representatives respectfully request that the order modifying the stay be made effective upon issuance so that 3AC can proceed with its action without delay.

## NOTICE

50.     Notice of this Motion has been provided to (a) the Chambers of the Honorable Sean Lane, (b) the Debtors, (c) Cleary Gottlieb Steen & Hamilton LLP, as counsel for the Debtors, (d)

the Office of the U.S. Trustee for the Southern District of New York, and (e) all other parties entitled

to notice pursuant to Bankruptcy Rule 2002.  The Foreign Representatives submit that such notice

is sufficient, and no other or further notice need be provided.

## **NO PRIOR REQUEST**

51.    No prior request for the relief sought in this Motion has been made by the Foreign

Representatives to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Foreign Representatives respectfully request entry of an order, substantially in the form attached hereto as <u>Exhibit A,</u> granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 6, 2023
      New York, New York

Respectfully submitted,

*/s/ Christopher Harris*
Christopher Harris
Adam J. Goldberg
Brett M. Neve
Nacif Taousse
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  chris.harris@lw.com
      adam.goldberg@lw.com
      brett.neve@lw.com
      nacif.taousse@lw.com

– and –

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
Emily R. Orman (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
      tiffany.ikeda@lw.com
      emily.orman@lw.com

*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd.*

**Exhibit A**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                                                    :
In re:                                              :        Chapter 11
                                                    :
Genesis Global Holdco, LLC, *et al.*,[1]            :        Case No. 23-10063 (SHL)
                                                    :
                                                    :        Jointly Administered
                              Debtors.              :
                                                    :
---------------------------------------------------------------X

### ORDER (I) MODIFYING THE AUTOMATIC STAY PURSUANT
### TO 11 U.S.C. 362(d)(1) AND BANKRUPTCY RULE 4001
### AND (II) GRANTING RELATED RELIEF

This matter coming before the Court on the motion (the "Motion") filed by the Foreign

Representatives[2] for entry of an Order (a) lifting the automatic stay in the Chapter 11 Cases to

allow the commencement and adjudication of the 3AC Claims before the BVI Court, or, in the

alternative, before the 3AC Court, and (b) granting related relief; and, after due deliberation, the

Court having concluded that the Foreign Representatives have established sufficient cause for the

relief granted herein; and no additional notice being required, now, therefore, it is hereby

ORDERED that:

1.      The Motion is **GRANTED** as set forth herein.

2.      The automatic stay is lifted pursuant to Bankruptcy Code section 362(d) and

Bankruptcy Rule 4001 for the purpose of allowing the Foreign Representatives to commence and

adjudicate the 3AC Claims against the Debtors before the [BVI Court / 3AC Court].

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]     Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

3.      The rights of the Debtors and 3AC with respect to allowance and distribution of the 3AC Claims in the Debtors' Chapter 11 cases are expressly reserved.

4.      This Order is without prejudice to any and all other rights of 3AC with respect to the 3AC Claims, all of which are hereby reserved.

5.      The parties are authorized, but not directed, to take all actions necessary to effectuate the relief granted pursuant to this Order.

6.      Notice of the Motion as provided therein shall be deemed good and sufficient.

7.      The relief granted in this Order shall be effective immediately and shall not be subject to the 14-day stay of enforcement under Federal Rule of Bankruptcy Procedure 4001(a)(3).

8.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:          _____, 2023
                New York, New York


                                            _____
                                            The Honorable Sean H. Lane
                                            United States Bankruptcy Judge

**<u>Exhibit B</u>**

BVI Counsel Declaration

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X
                                                              :
In re:                                                        :          Chapter 11
                                                              :
Genesis Global Holdco, LLC, *et al.,*                         :          Case No. 23-10063 (SHL)
                                                              :
                                                              :          Jointly Administered
                             Debtors.                         :
                                                              :
----------------------------------------------------------------X

### DECLARATION OF GRANT CARROLL IN SUPPORT OF MOTION OF THE FOREIGN REPRESENTATIVES OF  THREE ARROWS CAPITAL, LTD. FOR ENTRY OF AN ORDER (I) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1) AND BANKRUPTCY RULE 4001 AND (II) GRANTING RELATED RELIEF

1.      I, Grant Carroll, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief.

### Introduction

2.      I am a partner of the law firm Ogier. Ogier is a law firm that advises clients worldwide on the laws of the British Virgin Islands ("**BVI**"), the Cayman Islands, Jersey, Guernsey, Ireland and Luxembourg. I have practiced law in the BVI since 2013 and I advise on the laws of the BVI.

3.      I practice in Ogier's BVI Dispute Resolution team as a partner. I have considerable experience advising court-appointed liquidators, banks, multinational corporations and financial services institutions in the restructuring, liquidation and winding-up of BVI companies and funds.

4.      Although I am not an attorney admitted to practice in the United States, I am familiar with various procedural aspects of United States law, and in particular the U.S. bankruptcy proceedings as a consequence of my practice in cross-border matters.

5.      I respectfully submit this declaration in support of the Motion of Russell Crumpler and Christopher Farmer, the duly appointed joint liquidators and foreign representatives (together, the "**Liquidators**") of Three Arrows Capital Ltd. ("**3AC**") by the Eastern Caribbean Supreme Court in the BVI High Court of Justice (Commercial Division) ("**BVI Court**"), Claim No. BVIHC (COM) 2022/0117 and BVIHC (COM) 2022/119, pursuant to sections 159(1) and 162(1)(a) and (b) of the BVI Insolvency Act, seeking an order (1) modifying the automatic stay pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (2) granting related relief (the "**Motion**").

6.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge or based upon my review of relevant documents.

7.      To the extent matters stated in this Declaration are statements of legal opinion, such statements represent my view of the law of the BVI, in my experience as a practicing BVI attorney.

## Background

8.      I have reviewed the Liquidators' Motion and I understand one of the key elements of relief sought in the Motion is an order granting relief from the automatic stay applicable in the Debtors' Chapter 11 cases to permit the commencement and adjudication before the BVI Court, or in the alternative, before the U.S. Bankruptcy Court for the Southern District of New York in an adversary proceeding related to 3AC's pending Chapter 15 case before Chief Judge Martin Glenn (the "**3AC Court**"), of the causes of action set forth in the proofs of claim filed by the Liquidators in this Court under Claim Nos. 981, 982 and 990 (the "**3AC Claims**").

9.      Most of the 3AC Claims arise as a matter of BVI law and will be determined by reference to BVI law.  The 3AC Claims which do not arise under BVI law concern claims for recovery of assets subject to purported foreclosure in circumstances where the Debtors had no valid and enforceable security interest over those assets. Equivalent claims arise pursuant to

section 274A of the BVI Insolvency Act and will be determined in the BVI in reliance upon that section.

10.     For the reasons discussed below, insofar as an issue of US law arises and is relevant for the purpose of determining the 3AC Claims, the BVI Court has jurisdiction, and will be able, to resolve such issues to completion. The BVI Court regularly applies foreign law when relevant to the determination of claims before it.  However, the BVI Court will apply its own procedure rather than US law when determining the claims, and will only determine US law issues insofar as they are considered relevant to the BVI claim.

11.     Accordingly, insofar as the defendant might seek to assert a procedural defence arising as a matter of US law, or assert a defence as a matter of substantive US law which is not otherwise available under BVI law, those would not be matters which are typically treated as relevant to the determination of the 3AC Claims in the BVI.  I understand that the only such potential defence identified to date arises from the US Bankruptcy Code's safe harbor provisions.

## Details about the 3AC Claims

12.     The 3AC Claims which arise under BVI law are to recover, and avoid certain transfers of, assets and of purported interests therein that are either the property of the 3AC estate, or subject to avoidance under BVI law.

13.     Specifically, the 3AC Claims are in two categories: (1) recovery of assets subject to purported foreclosure where the Debtors had no valid and enforceable security interest over such assets, which claims arise pursuant to section 274A of the BVI Insolvency Act, and (2) avoidance of preferential transfers under BVI law, which claims arise pursuant to section 245 of the BVI Insolvency Act.

14.    Section 274A of the BVI Insolvency Act provides, in relevant part, that "[w]here any person has in his or her possession or control any assets or documents to which the company appears to be entitled, the Court may, on the application of the office holder, require that person forthwith, or within such period as the Court may direct, to pay, deliver, convey, surrender or transfer the assets or documents to the office holder." Insolvency Act 2003 (as amended), S.I. 47/2004, § 274A.

15.    Section 245 of the BVI Insolvency Act provides for the avoidance of preferential transfers. A transaction is subject to avoidance as an "unfair preference" if the transaction: (a) "is an insolvency transaction;" (b) is "entered into within the vulnerability period;" and (c) "has the effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he or she would have been in if the transaction had not been entered into." Insolvency Act 2003 (as amended), S.I. 47/2004, § 245(1).

16.    Section 245 of the BVI Insolvency Act applies to "insolvency transactions." Under section 244(2) of the BVI Insolvency Act, an "insolvency transaction" is a transaction "entered into at a time when [a] company is insolvent" or that "causes a company to become insolvent." Insolvency Act 2003 (as amended), S.I. 47/2004, § 244(2).

17.    Insofar as the 3AC Claims concern the avoidance of preferential transfers there are several potential statutory defences available to a defendant, including (but not limited to):

(i)    Demonstrating that transaction occurred in the ordinary course of business (Insolvency Act 2003 (as amended), S.I. 47/2004, § 245(2));

(ii)    Demonstrating that the transaction was not an 'insolvency transaction' as defined at Insolvency Act 2003 (as amended), S.I. 47/2004, § 244(2) (described above); and

(iii)    Demonstrating that the transaction was not given by the company to a 'creditor'. Insolvency Act 2003 (as amended), S.I. 47/2004, § 245.

## The BVI Court's Approach to Issues of Foreign Law

18.    Insofar as a relevant issue of foreign law arises for determination as part of the 3AC Claims, the BVI Court is one of unlimited jurisdiction,[1] and as such has standing to decide issues of foreign law, as matters of fact. The BVI Court applies well-established common law conflict of law principles and, in order for the BVI Court to make a determination on issues of foreign law, foreign law must be pleaded and proved as a fact to the satisfaction of the judge. In the absence of satisfactory evidence of foreign law, BVI law will apply.

19.    In terms of procedure, foreign law must generally be pleaded and proven as a fact by expert evidence. In other words, where a dispute gives rise to questions of foreign law, parties typically rely on expert evidence only. The BVI Court then considers such expert evidence in reaching a finding of fact as to foreign law, and it is only with the assistance of such evidence that the Court can then evaluate or interpret relevant foreign decisions or leading texts on foreign law.[2]

20.    In determining foreign law issues, the BVI Court is therefore generally reluctant to reject expert law evidence, if the evidence of the expert is uncontradicted.[3] If evidence of foreign law is contested, then the Court will determine the dispute as to the content of foreign law including, where appropriate, with the benefit of cross-examination of experts.

---

[1] Commercial Bank of Dubai v 18 Elvaston Place Ltd (Claim No. BVIHC (COM) 2020/0070), at [5].

[2] Dicey, Morris & Collins on the Conflict of Laws (16th Ed.) ("Dicey & Morris"), at [3-011]. Dicey & Morris is the leading text on the conflict of laws, and is regularly cited by the BVI Court in its decisions.

[3] Dicey & Morris at [3-015].

21.     More generally, and in brief summary of the above, the BVI Court determines relevant issues of foreign law as matters of fact, having regard to expert evidence filed by litigants and to additional factors and considerations such as:

(iv)     The credibility of the expert evidence before it;[4]

(v)      Consistency of the expert evidence with foreign law sources (eg foreign statutes);[5]

(vi)     Whether there is conflicting testimony as between different expert witnesses;[6] and

(vii)    Decisions of foreign courts as evidence of foreign law (where such decisions are referred to in expert evidence).[7]

22.     However, I note that (notwithstanding the above) there is no provision in the BVI Insolvency Act which enables a defence equivalent to the safe harbor defences available under the US Bankruptcy Code to be asserted in response to an action brought under section 274A or 245 of the BVI Insolvency Act.

23.     Based on the framework above, I believe that if issues of US law are relevant to the 3AC Claims, they can be resolved as a matter of fact in the BVI in order to achieve a full resolution of such claims.  Additionally, the BVI Court will also adjudicate to completion any statutory defences available as a matter of BVI law that are alleged to be applicable to the 3AC Claims (which defences the Liquidators maintain are not applicable to the 3AC Claims). However, notwithstanding the foregoing, substantive or procedural defences arising as a matter of US law

---

[4] *Ibid*.

[5] *Ibid*.

[6] Dicey & Morris at [3-016].

[7] Dicey & Morris at [3-019].

which might be applicable to a US law governed preference claim (such as safe harbor defences) would not be relevant to the determination of the 3AC Claims by the BVI Court in the BVI. This is because the 3AC Claims are statutory insolvency claims brought under the BVI Insolvency Act 2003 and governed by that Act.[8]  Consequently, a full resolution of the 3AC Claims by the BVI Court in the BVI will not require or involve any adjudication or determination of US law governed defences applicable to a US law governed preference claim[9].

## **Conclusion**

24.    I therefore consider that an order granting relief from the automatic stay would allow the BVI Court, from a BVI perspective, to fully and completely resolve the 3AC Claims. Such resolution would not include the determination  of any defences arising purely as a matter of US law.  I believe that the only such defence identified to date is potentially the safe harbor provisions of the US Bankruptcy Code (which the Liquidators view as entirely inapplicable to the 3AC Claims).  I understand from the Liquidators' US attorneys that such defences may only potentially become relevant in the context of this Court's determination, following entry of a judgment by the BVI Court on the 3AC Claims, as to whether such judgment may serve as the basis of an allowed claim against the Debtors in their Chapter 11 cases.

---

[8] See, for example, Dicey & Morris at 30-127 making the point that the BVI Court will apply BVI law to issues arising in the liquidation. A claim made under the provisions of the BVI Insolvency Act 2003 is necessarily determined as a matter of BVI law.

[9] As the BVI court will apply its own rules of procedure to the exclusion of a foreign rule which is in its view procedural: Dicey & Morris at 4-002; *Avonwick Holdings Ltd v Azitio Holdings Ltd* [2020] EWHC 1844 (Comm), at [547]

IN WITNESS WHEREOF, I have executed this Declaration under penalty or perjury under the laws of the United States of America this 6th day of September 2023.

Dated:          September 6, 2023

_____
Grant Carroll