CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |
| Genesis Global Capital, LLC, | Adv. Pro. No. 23- \_\_\_\_ (SHL) |
| Plaintiff, | |
| v. | |
| DCG International Investments Ltd. | |
| Defendant. | |

# COMPLAINT

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

Genesis Global Capital, LLC ("Plaintiff" or "GGC") hereby files this complaint (the "Complaint") against DCG International Investments Ltd. ("DCGI") for turnover of certain property of the GGC estate pursuant to 11 U.S.C. § 542(b).

In further support of this Complaint, GGC, by and through its undersigned counsel, respectfully states:

## NATURE OF THE ACTION

1. GGC commenced this adversary proceeding pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure to recover undisputed amounts of digital assets owed to GGC by DCGI in connection with a loan that matured on May 11, 2023 (as described in detail below herein, the "Loan" or the "DCGI Loan").

2. GGC asserts herein a request for turnover of the undisputed overdue and presently owing amounts under the Loan, including the principal amount of the Loan, accrued interest on the Loan, and applicable Late Fees (as defined in the MLA and set forth herein), each as pursuant to the MLA (as defined below) governing the relationship between GGC as lender and DCGI as borrower.

## THE PARTIES

3. Plaintiff GGC is a limited liability company organized under the laws of Delaware that provides lending and borrowing services for digital assets and fiat currency. GGC is 100% owned by Genesis Global Holdco, LLC ("Holdco"), which is 100% owned by Digital Currency Group, Inc. ("DCG").

4. Defendant DCGI is a company organized under the laws of Bermuda that engages in venture capital investing in the digital currency market. DCGI is 100% owned by DCG.

**JURISDICTION AND VENUE**

5.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).

6.     This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 7008 of the Bankruptcy Rules, Plaintiff consents to the entry of final orders or a final judgment by this Court in this adversary proceeding if it is later determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**FACTUAL BACKGROUND**[2]

**I.     The Master Loan Agreements and the Loan**[3]

8.     On June 21, 2019, GGC and DCGI entered into a Master Loan Agreement (the "DCGI MLA," or the "MLA," attached hereto as **Exhibit 1**).

9.     Pursuant to the MLA, GGC and DCGI agreed to the terms of the DCGI Loan: an open-term loan to DCGI dated June 18, 2022, for a principal amount of 18,697.74308758 Bitcoin

---

[2] Pursuant to mediation ordered by the Court and consistent with the Debtors' Notice of Mediation Termination dated August 28, 2023 (ECF No. 625), Plaintiff, Defendant, and other interested parties in these Chapter 11 Cases continue to discuss a potential settlement of various claims among the parties that, if consummated, would encompass Plaintiff's claims asserted herein. In connection with those settlement discussions, the Plaintiff and Defendant are discussing the terms of a potential Partial Repayment Agreement that would require Defendant to make certain specified payments on account of amounts currently owed to Plaintiff in exchange for an agreement of Plaintiff to forbear from exercising certain enforcement rights with respect to such amounts, subject to specified terms and conditions. If the parties reach agreement on the terms of a Partial Repayment Agreement, Plaintiff intends to forbear forbearing from its pursuit of this action subject to the terms of such agreement.

[3] For the avoidance of doubt, by this pleading Plaintiff does not adopt any of the characterizations or descriptions contained herein or admit or waive any applicable defenses and otherwise specifically reserves all claims, causes of action, rights, remedies, powers, and defenses.

3

("BTC") (pursuant to the Loan Term Sheet attached hereto as **Exhibit 2**). On or about November 10, 2022, the remaining BTC outstanding under the DCGI Loan was converted to a fixed-term loan with a maturity date of May 11, 2023 pursuant to the Loan Term Sheet dated November 11, 2022 attached hereto as **Exhibit 3**, as such term sheet was amended and superseded by the Loan Term Sheet with the correct date of November 10, 2022 attached hereto as **Exhibit 4**.

10. On May 11, 2023, the remaining BTC due under the DCGI Loan matured (such date, the "Maturity Date"). Pursuant to Section II(c)(i) of the MLA, the occurrence of the Maturity Date triggered an obligation by DCGI to return the Loan Balance[4] to GGC, including the principal amount outstanding under the DCGI Loan.

11. Accordingly, the principal amount under the DCGI Loan is matured and currently payable by DCGI to GGC.

## II. Communications Between the Parties Regarding the DCGI Loan

12. On November 10, 2022, DCGI transmitted a letter notifying GGC of its "intent to partially repay the Loan," subsequent to which the remaining loan balance would be 4,550.45173345 BTC. *See* Partial Loan Payoff Letter, attached hereto as **Exhibit 5**. Thereafter, the Loan was partially repaid such that 4,550.45173345 BTC remained outstanding.

13. On May 9, 2023, DCGI sent to GGC a request that it "suspend the termination" of the DCGI Loan, which was due to mature on May 11, 2023, and to reinstitute the DCGI Loan "as an Open Loan (as defined in the MLA) consistent with [GGC and DCGI's] prior course of

---

[4] The MLA defines the Loan Balance as "the sum of all outstanding amounts of Loaned Assets, including New Tokens, Loan Fees, Late Fees, and any Earlier Termination Fee or New Token Fee for a particular Loan, as defined in Sections III and V."

4

dealing" (such request, the "May 9 DCGI Request," attached hereto as **Exhibit 6**).[5] The May 9 DCGI Request noted that DCGI "will continue to pay the Loan Fees on the Loan as specified in the Loan Term Sheet."

14. Under Section II(d)(iii) of the MLA, the right to suspend the termination of, and reinstitute, a Loan is in the sole discretion of GGC as lender.[6] GGC has not agreed to suspend termination of the DCGI Loan or reinstitute the DCGI Loan as an Open Loan under Section II(d)(iii) of the DCGI MLA. Therefore, because the outstanding balance under the DCGI Loan was not repaid, it matured on May 11, 2023 and is currently payable. Furthermore, on May 12, 2023, GGC sent to DCGI a letter, attached hereto as **Exhibit 7**, expressly reserving all rights under the MLA and relating to the DCGI Loan, such that GGC cannot be understood to have waived any of its rights under the MLA or relating to the DCGI Loan.

**IV.  Accrued Interest Incurred under the Loan**

15. Pursuant to Section III(a) of the MLA, the DCGI Loan accrued interest—referred to as the "Loan Fee"—on the principal amount at an annual rate, calculated daily, as specified in the applicable term sheet.

16. The annual interest rate applicable to the DCGI Loan was 7.00% annual pursuant to the Loan Term Sheet attached hereto as Exhibit 4.

17. Pursuant to Section III(a) of the MLA, the Loan Fees are payable monthly by DCGI in arrears. Since the origination of the DCGI Loan, DCGI has paid the Loan Fees,

---

[5] The MLA defines an Open Loan as "a Loan without a Maturity Date where Borrower has a Prepayment Option and Lender has a Call Option."

[6] Section II(d)(iii) of the DCGI MLA provides, in relevant part, that: "Lender shall have the right *in its sole discretion* to suspend the termination of a Loan under this subsection (iii) and reinstitute the Loan." (emphasis added).

5

calculated off the full principal amount outstanding under the DCGI Loan, to GGC in accordance with the terms of the MLA and the Loan Term Sheet attached hereto as Exhibit 4.

18.  Pursuant to Section II(c)(i) of the MLA, the occurrence of the Maturity Date triggered an obligation by DCGI to return the Loan Balance (as defined in the MLA) to GGC. The Loan Balance includes, in part, the Loan Fees outstanding under the DCGI Loan.

19.  Accordingly, the Loan Fees became due on the Maturity Date, and are currently payable by DCGI to GGC. The Loan Fees continue to accrue under the MLA as of the date of this filing.

## V. Late Fees Incurred in Connection with Termination of the Loan

20.  Pursuant to Section II(d)(i) of the MLA, the occurrence of the Maturity Date and DCGI's failure to return the Loaned Assets outstanding under the Loan as of the Maturity Date resulted in the termination of the DCGI Loan.

21.  Pursuant to Section III(c) of the MLA, DCGI incurred "Late Fees" in connection with its failure to return the Loaned Assets (as defined in the MLA) and its failure to pay outstanding Loan Fees. Late Fees are calculated as 5% (annualized, calculated daily) on all outstanding and overdue portions of the Loaned Assets and Loan Fees.

22.  Because the DCGI Loan was not repaid on the Maturity Date or converted to an Open Loan, nor was the termination of the Loan suspended, the amounts due to GGC pursuant to the MLA include applicable Late Fees. On or about June 16, 2023, GGC sent DCGI an invoice, attached hereto as **Exhibit 8**, for Late Fees due as of May 31, 2023, which amount remains outstanding as of the filing hereof.[7] On or about July 10, 2023, GGC sent DCGI an invoice,

---

[7] The principal amount outstanding under the DCGI Loan is 4,550.45173345 BTC, as indicated in the invoice under the heading "Outstanding Loan Balance." The invoices also indicate a "Loan Balance" of "BCH 14,048.00000000," which refers to a separate loan and appears in the invoice solely as a consequence of GGC's invoicing operations.

attached hereto as **Exhibit 9**,[8] for Late Fees due as of June 30, 2023, which amount remains outstanding as of the filing hereof. On or about August 2, 2023, GGC sent DCGI an invoice, attached hereto as **Exhibit 10**, for Late Fees due as of July 31, 2023, which amount remains outstanding as of the filing hereof.

23. Accordingly, the Late Fees are matured and currently payable by DCGI to GGC. The Late Fees continue to accrue under the MLA as of the date of this filing.

## CLAIM FOR RELIEF

### COUNT ONE: Turnover of Principal Amount
### (Turnover of Assets – 11 U.S.C. §§ 541, 542 and 550)

24. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 23 of this Complaint as though fully set forth herein.

25. The MLA is a valid, enforceable, and legally binding contract between GGC and DCGI. The MLA and the Loan Term Sheet are specific in their terms as to both the maturity date of the DCGI Loan and the principal amount owed to GGC thereunder.

26. The DCGI Loan matured on May 11, 2023, and was not repaid.

27. DCGI is wrongfully in possession of property of the GGC estate in the amount of 4,550.45173345 BTC, reflecting the full outstanding principal amount owed under the DCGI Loan (the "Principal Amount"), which is matured and payable immediately.

28. The Principal Amount is property that the Debtor could use under Section 363 of the Bankruptcy Code and is of significant benefit to the GGC estate.

---

[8] On July 7, 2023 GGC sent a version of this invoice to DCGI that contained a calculation error. The version dated July 10, 2023 replaced and superseded the invoice dated July 7, 2023.

29. Pursuant to Section 542 of the Bankruptcy Code, DCGI should be directed to turn over the Principal Amount to the GGC estate.

### COUNT TWO:  Turnover of Accrued Interest Amount
### (Turnover of Assets – 11 U.S.C. §§ 541, 542 and 550)

30. Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs 1 through 23 of this Complaint as though fully set forth herein.

31. The MLA is a valid, enforceable, and legally binding contract between GGC and DCGI.  The MLA and the Loan Term Sheet are specific in their terms as to both the maturity date of the DCGI Loan and the Loan Fees owed to GGC thereunder.

32. The DCGI Loan matured on May 11, 2023, and was not repaid.

33. DCGI is wrongfully in possession of property of the GGC estate equal to the amount of Loan Fees calculated as set forth in the MLA and not previously paid to GGC (the "Accrued Interest Amount"), which is matured.

34. The Accrued Interest Amount is property that the Debtor could use under Section 363 of the Bankruptcy Code and is of significant benefit to the GGC estate.

35. Pursuant to Section 542 of the Bankruptcy Code, DCGI should be directed to turn over the Accrued Interest Amount to the GGC estate.

### COUNT THREE:  Turnover of Late Fee Amount
### (Turnover of Assets – 11 U.S.C. §§ 541, 542 and 550)

36. Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs 1 through 23 of this Complaint as though fully set forth herein.

37. The MLA is a valid, enforceable, and legally binding contract between GGC and DCGI.  The MLA and the Loan Term Sheet are specific in their terms as to both the maturity date of the DCGI Loan and the Late Fees owed to GGC thereunder.

38. The DCGI Loan matured on May 11, 2023, and was not repaid.

39. By virtue of the MLA, DCGI is wrongfully in possession of property of the GGC estate equal to the amount of Late Fees calculated as set forth in the MLA and not previously paid to GGC (the "Late Fee Amount"), which is matured.

40. The Late Fee Amount is property that the Debtor could use under Section 363 of the Bankruptcy Code and is of significant benefit to the GGC estate.

41. Pursuant to Section 542 of the Bankruptcy Code, DCGI should be directed to turn over the Late Fee Amount to the GGC estate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court award the following relief:

a) turnover to the GGC estate of the Principal Amount;

b) turnover to the GGC estate of the Accrued Interest Amount as calculated through the date of such turnover;

c) turnover to the GGC estate of the Late Fee Amount as calculated through the date of such turnover; and

d) such other and further relief as the Court deems just and equitable.

*[Remainder of page intentionally left blank.]*

Dated: September 6, 2023  
New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and Debtors-in-Possession*