# EXHIBIT 7

**NOTICE OF DEFAULT**
**RESERVATION OF RIGHTS**

May 12, 2023

VIA EMAIL
Digital Currency Group, Inc.
290 Harbor Drive, 5th Floor
Stamford, CT 06902
Attn: Michael Katz, Esq.
Email: mike@dcg.co

DCG International Investments Ltd.
3 Mill Creek Road
Pembroke Parish HM05 Bermuda
Attn: Michael Katz, Esq.
Email: mike@dcg.co

Re: Certain term loans provided by Genesis Global Capital, LLC, as lender, to Digital Currency Group, Inc. and DCG International Investments Ltd., each as borrower

To Whom it May Concern:

As you know, we represent Genesis Global Capital, LLC ("GGC") in connection with the chapter 11 cases bearing the jointly administered caption *In re Genesis Global Holdco, LLC, et al.*, No. 23-10063 (Bankr. S.D.N.Y) (the "Chapter 11 Cases"). We write on behalf of GGC regarding the following maturing loans provided by GGC, as lender, to Digital Currency Group, Inc. ("DCG") or DCG International Investments Ltd. ("DCGI"), as borrower, under that certain Master Loan Agreement between GGC and DCGI, dated June 21, 2019 (the "DCGI MLA") and that certain Amended and Restated Master Loan Agreement between GGC and DCG, dated November 10, 2022 (the "DCG MLA," and together with the DCGI MLA, the "MLAs"):[1]

i. that certain term loan between GGC and DCG dated January 24, 2022, as amended by the Term Loan Sheet dated November 11, 2022, with a principal amount of $100,000,000 (the "January 24 Loan");

ii. that certain term loan between GGC and DCG dated February 23, 2022, amended by the Loan Term Sheet dated November 11, 2022, with a principal amount equal to $100,000,000 (the "February 23 Loan");

iii. that certain term loan between GGC and DCG dated May 9, 2022, with a principal amount equal to $200,000,000 (the "May 9 Loan");

---

[1] Capitalized terms used herein but not defined shall have the meaning ascribed to them in the MLAs.

Digital Currency Group, Inc. p. 2

    iv.    that certain term loan between GGC and DCG dated May 10, 2022, with a principal amount equal to $100,000,000 (the "May 10 Loan"); and

    v.    that certain term loan between GGC and DCGI dated June 18, 2022, as amended by the Term Loan Sheet dated November 10, 2022, with a principal amount equal to 18,697.74308758 BTC (the "June 18 Loan", and together with the MLAs, the January 24 Loan, the February 23 Loan, the May 9 Loan and the May 10 Loan, the "Loans").[2]

As you know, the May 9 Loan matured on May 9, 2023, the May 10 Loan matured on May 10, 2023, and the January 24 Loan, February 23 Loan and remaining BTC due under the June 18 Loan matured on May 11, 2023. Pursuant to sections II(d)(i) and VIII(a) of both the DCG MLA and the DCGI MLA, DCG's and DCGI's failure to return the Loaned Assets outstanding under the Loans as of their Maturity Dates resulted in a termination of the Loans and constituted automatic Events of Default. Further, pursuant to section III(c) of the MLAs, Late Fees are accruing for each day in excess of the Maturity Dates.

In the request for wire instructions sent to GGC on May 9, 2023, DCG and DCGI suggested that their request for wire instructions for the repayment of certain Loans caused such Loans to automatically convert to Open Loans consistent with the parties' prior course of dealing. Section II(c)(i) of the DCG MLA, however, provides that these Loans convert to Open Loans only if (i) DCG makes a timely request for wire instructions for repayment of the Loans and (ii) GGC fails to provide such wire instructions. Neither of these events occurred. DCG's request for wire instructions for repayment of these Loans at 10:37 p.m. (ET) on May 9, 2023 did not constitute "timely notice." Moreover, GGC provided wiring instructions in response to DCG's request on May 9, 2023 and on May 10, 2023. Accordingly, the January 24, February 23, May 9, and May 10 Loans did not convert to Open Term loans pursuant to section II(c)(i) of the DCG MLA.

In addition, please note that GGC has not agreed to suspend termination of the June 18 Loan or otherwise reinstitute the June 18 Loan as an Open Loan pursuant to section II(d)(iii) of the DCGI MLA. As you know, the right to suspend the termination of, or reinstitute, a Loan under section II(d)(iii) of the DCGI MLA, is in the sole discretion of GGC, as lender.[3] Because GGC has not agreed to suspend termination of, or reinstitute, the June 18 Loan, and the June 18 Loan was not repaid, it matured on May 11, 2023 and is now in default.

GGC reserves the right, at any time and without notice, to exercise any rights, powers or privileges and/or remedies it has and/or to which it is entitled under the Loans, including without limitation all rights and remedies under sections IX and XII of the MLAs. As of the time of this letter, GGC has not exercised all of its rights and remedies; however, neither such non-exercise nor anything in this letter shall be considered or constitute a waiver of any kind by GGC of any rights or remedies under the MLAs or applicable law. No acceptance by GGC of performance from DCG or DCGI, or performance by GGC to DCG or DCGI, under the MLAs (including

---

[2]    For the avoidance of doubt, nothing herein represents a concession or waiver of any rights. For the avoidance of doubt, GGC reserves all of its claims, rights and defenses, including, without limitation, with respect to any partial repayment of the June 18 Loan as asserted by DCGI.

[3]    Section II(d)(iii) of the DCGI MLA provides, in relevant part, that: "Lender shall have the right *in its sole discretion* to suspend the termination of a Loan under this subsection (iii) and reinstitute the Loan." (emphasis added).

Digital Currency Group, Inc. p. 3

without limitation the entry into any transactions under, or amendments, supplements or modifications to, any agreement or otherwise), shall constitute a waiver by GGC of any of its rights or remedies. Furthermore, any accommodation made by GGC with respect to any contractual obligations of DCG or DCGI under the MLAs or otherwise shall neither constitute a waiver by GGC of any of its rights or remedies nor constitute a commitment to continue such accommodation or provide any other accommodation to DCG or DCGI.

      Nothing herein or in any correspondence with DCG or DCGI shall prejudice GGC's right to exercise any rights, remedies or powers or to assert any claims, causes of action, or defenses now or hereafter available under the MLAs, any instruments or agreements referred to therein and/or applicable law, all of which rights, remedies, powers, claims and causes of action are cumulative and all of which are hereby specifically reserved. Further, GGC reserves the right to identify other Events of Default that have already occurred or shall occur.

                                                     GENESIS GLOBAL CAPITAL, LLC