Objection Deadline: TBD

Hearing Date: TBD

Adam J. Goldberg

Christopher Harris

Brett M. Neve

Nacif Taousse

**LATHAM & WATKINS LLP**

1271 Avenue of the Americas

New York, NY 10020

Telephone: (212) 906-1200

Facsimile: (212) 751-4864

Email:  adam.goldberg@lw.com

  christopher.harris@lw.com

  brett.neve@lw.com

  nacif.taousse@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)

Tiffany M. Ikeda (admitted *pro hac vice*)

Emily R. Orman (admitted *pro hac vice*)

**LATHAM & WATKINS LLP**

355 South Grand Avenue, Suite 100

Los Angeles, CA 90071

Telephone: (213) 485-1234

Facsimile: (213) 891-8763

Email:  nima.mohebbi@lw.com

  tiffany.ikeda@lw.com

  emily.orman@lw.com

*Counsel to the Foreign Representatives of Three Arrows
Capital, Ltd. (in liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Genesis Global Holdco, LLC, *et al.*,[1] | ) | Case No. 23-10063 (SHL) |
| | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING THE ISSUANCE OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS BY THE DEBTORS

Russell Crumpler and Christopher Farmer, in their capacities as the duly authorized joint

liquidators and foreign representatives (the "**Foreign Representatives**") of Three Arrows Capital,

Ltd. ("**3AC**"), file this motion (the "**Motion**") pursuant to Rule 2004 of the Federal Rules of

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order substantially in the form attached hereto as **Exhibit A** authorizing the Foreign Representatives to issue subpoenas for the production of documents on Debtors Genesis Global Holdco, LLC ("**GGH**"), Genesis Global Capital, LLC ("**GGC**"), and Genesis Asia Pacific, Pte. Ltd. ("**GAP**") (collectively, the "**Debtors**"), and directing the Debtors to produce all documents within their custody, possession, or control regarding the issues and matters designated in the attached **Exhibit B**.  In support of this Motion, the Foreign Representatives respectfully represent as follows:

## PRELIMINARY STATEMENT

1.     This Motion is about the Foreign Representatives—in their role as fiduciaries of the 3AC estate, charged with the obligation to conduct a fair liquidation of 3AC and evaluate all claims—obtaining discovery critical to their investigation of potential claims against the Debtors. The Foreign Representatives seek to issue document requests to the Debtors regarding their "acts, conduct, [] property[,] liabilities and financial condition" (Fed. R. Bankr. P. 2004(b)) in order to pursue claims they may have against the Debtors—*i.e.*, requests within the precise scope and purpose of the wide-ranging, investigatory discovery Rule 2004 allows.

2.     The Foreign Representatives have already filed, and served discovery related to, their Proofs of Claim and Amended Proofs of Claim against the Debtors in this Court (Claims Nos. 523, 526-27, 981-82, 990), which set forth claims to avoid preferential transfers to the Debtors by 3AC, and to recover assets the Debtors purported to foreclose upon in the absence of a valid and enforceable security interest.  The Foreign Representatives also expressly reserved their rights to bring additional claims against the Debtors related to their relationships with their parent company, Digital Currency Group ("**DCG**"), and 3AC's substantial investments in trusts managed by DCG's subsidiary Grayscale Investments, LLC ("**Grayscale**"), as well as any other claims against the Debtors that they may uncover based on ongoing discovery (*see* Attach. to Am. Proofs of Claim

2

(Claims Nos. 981-82, 990) at ¶¶ 4, 66–67) (the "**3AC Potential Claims**").  For example, Grayscale and DCG have been involved in at least two recent lawsuits alleging breach of contractual and fiduciary duties in connection with cryptocurrency trusts, and the Debtors may be subject to related claims by 3AC.

3.      While the Foreign Representatives have reason to suspect such claims exist, their ability to gather the necessary information has been hamstrung by their unique position as court-appointed liquidators of a now-defunct operation, without any involvement in its affairs pre-liquidation, with drastically inadequate books and records.  Greatly exacerbating the situation, 3AC's founders have refused to cooperate with requests for information, failed to deliver information and assets upon the Foreign Representatives' appointment, and even removed 3AC's records and hard drives before the Foreign Representatives could access them.  Due to severe informational deficiencies, the Foreign Representatives have quite literally needed discovery to investigate claims.

4.      Accordingly, on July 14, 2023, the Foreign Representatives served document requests on Genesis concerning both their claims asserted in the Amended Proofs of Claim and the 3AC Potential Claims.  The Debtors completely refused to produce documents in response to the latter category of requests, claiming irrelevance to the filed claims.  The Foreign Representatives thus seek, through this Motion, to serve substantially similar document requests on the Debtors related to the 3AC Potential Claims.  The discovery sought will allow the Foreign Representatives to assess the Debtors' potential liability to 3AC on any such 3AC Potential Claims.

## JURISDICTION & VENUE

5.      The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested herein are 11 U.S.C. § 105(a) and Bankruptcy Rules 2004, 9013 and 9016.

## RELEVANT BACKGROUND

8.      3AC was an investment firm incorporated in the British Virgin Islands (the "**BVI**"), with a focus on trading cryptocurrency and other digital assets.  The Debtors were 3AC's largest lenders, purportedly providing over $2.36 billion in loans to 3AC between 2019 and 2022, including loans of which the proceeds funded purchases of shares in certain cryptocurrency trusts—the Grayscale Bitcoin Trust and the Grayscale Ethereum Trust—managed by DCG's subsidiary Grayscale, resulting in 3AC obtaining shares in the Grayscale trusts.  The Debtors are wholly-owned subsidiaries of DCG.

9.      The Debtors maintain that 3AC granted the Debtors security interests in certain of 3AC's assets in connection with loans provided by the Debtors.  This purported collateral included cryptocurrency and other types of assets, such as shares in Grayscale trusts.

10.     3AC's investment strategy involved making large, leveraged cryptocurrency trades using funding from the Debtors and other investors.  Between 2018 and 2021, as the cryptocurrency market grew, 3AC's strategy was successful.  However, by May 2022, the market crashed and 3AC failed.  This failure was due in part to 3AC's significant investments in the Grayscale trusts, among other cryptocurrency investments.  For example, between November 12, 2021 and May 3, 2022, the value of 3AC's shares in the Grayscale Bitcoin Trust decreased by over a billion dollars, from approximately $2.9 billion to less than $1.9 billion.  This fall in value occurred despite 3AC increasing its overall holdings of Grayscale Bitcoin Trust shares during this period.

11.     As stated in the Amended Proofs of Claim, on information and belief, the Debtors were aware of the decline in the cryptocurrency markets and the Grayscale trusts (which were

managed by a subsidiary of the Debtors' parent) from 2021 through 3AC's collapse in 2022. The Debtors provided billions of dollars of funding to 3AC during this time period and had a close working relationship with 3AC's founders, and, on information and belief, the Debtors were aware of 3AC's exposure to cryptocurrency and the Grayscale trusts.

12.    Subsequent to 3AC's collapse, the Debtors purported to foreclose upon certain of 3AC's assets in which they asserted a security interest, including shares in the Grayscale Bitcoin Trust. On information and belief, the value of 3AC's assets the Debtors purportedly foreclosed upon exceeded $1 billion at the time of such purported foreclosure. As explained in the Amended Proofs of Claim, the Foreign Representatives dispute that the Debtors had a valid and enforceable security interest in many of 3AC's assets the Debtors purported to foreclose upon.

13.    In addition to the asserted claims regarding assets the Debtors profess to have foreclosed upon and purported loan payments 3AC made to the Debtors, the Foreign Representatives are investigating claims regarding the Debtors' involvement in the Grayscale trusts. As mentioned, 3AC obtained shares in Grayscale trusts using loans from the Debtors, and then pledged those shares back to Genesis as collateral. The Foreign Representatives seek documents regarding whether the Debtors made these loans with the intent of increasing exposure to Grayscale and/or inflating the value of fees received by the Debtors' affiliates. This is particularly important given allegations in recent third-party lawsuits claiming that Grayscale and DCG breached their fiduciary and contractual duties by preventing investors from redeeming their Grayscale shares for cryptocurrency and charging exorbitant sponsor fees.[2]

---

[2] *See* Verified Compl., *Fir Tree Value Master Fund, L.P., et al., v. Grayscale Invs., LLC, et al.*, Case No. 2022-1126-PAF (Del. Ch. Dec. 6, 2022); Verified Compl., *Alameda Rsch. Ltd. v. Grayscale Invs., LLC, et al.*, No. 2023-0276-PAF (Del. Ch. Mar. 6, 2023).

14.     The extent to which Grayscale (and DCG and the Debtors, by extension) allegedly charged unreasonably substantial fees to manage the trusts, and then prevented redemption of shares in order to keep raking in fees, raises serious concerns.  3AC is entitled to probe whether the Debtors were aiding Grayscale's alleged scheme to breach fiduciary and contractual duties. Indeed, as a massive shareholder in the Grayscale trusts (at one point, around 10%), 3AC uniquely suffered from Grayscale's decline.

15.     Additionally, on July 14, 2022, Debtor GAP executed an Assignment and Assumption of Master Loan Agreement with DCG (the "**DCG Assignment Agreement**," attached to the Amended Proofs of Claim (Claims Nos. 981, 982, 990) at Exhibit D), in which GAP purported to assign its rights and related pledges under GAP's Master Loan Agreement with 3AC—essentially all lending activity between 3AC and the Debtors—to DCG.  Notably, such assignment occurred *after* 3AC's collapse and commencement of BVI liquidation proceedings on June 27, 2022.  To the extent entry into the DCG Assignment Agreement was designed to frustrate any setoff rights 3AC may have in the BVI against the Debtors by eliminating mutuality, GAP's entry into the DCG Assignment Agreement could be characterized as an actual fraudulent transfer.

16.     Thus, the Foreign Representatives believe that further discovery from the Debtors—including discovery obtained pursuant to this Motion—and others may reveal that the Debtors were aware of, involved in, and complicit in DCG and Grayscale's misconduct with respect to the Grayscale trusts, and may also reveal that entry into the DCG Assignment Agreement constituted an actual fraudulent transfer.  Of note, the Debtors may be subject to related claims by 3AC, which may include, but are not limited to, claims for misrepresentation, aiding and abetting breaches of fiduciary duty, fraudulent transfers, breaches of contract, breaches of the duty of good

faith and fair dealing, or tortious interference.  In the Amended Proofs of Claim (¶¶ 4, 66–67), the

Foreign Representatives expressly reserved the rights to bring such claims against the Debtors.

## RELIEF REQUESTED

17.     Pursuant to Rule 2004, the Foreign Representatives request entry of an Order,

substantially in the form attached hereto as **Exhibit A**, authorizing them to issue document

subpoenas to the Debtors substantially in the form attached hereto as **Exhibit B**.

18.     Specifically, the Foreign Representatives seek permission to issue document

subpoenas to the Debtors seeking documents concerning, among other things:

a.      whether the Debtors made loans to 3AC for the intended purpose of enabling 3AC to acquire shares in the Grayscale trusts;

b.      any agreement or plan between 3AC (including its founders) and the Debtors to use the purported collateral in connection with 3AC's loans to increase the value of the Grayscale trusts;

c.      any agreement or plan between the Debtors, DCG, and/or Grayscale to use the purported collateral in connection with 3AC's loans to increase the value of the Grayscale trusts;

d.      accusations by third parties that the Debtors, DCG, and/or Grayscale engaged in such behavior;

e.      any material benefit the Debtors, DCG, and/or Grayscale received from 3AC's acquisitions of Grayscale trust shares or as a result of the Debtors' loans to 3AC and the purported pledging of collateral in connection therewith;

f.      documents the Debtors possess showing 3AC's holdings of Grayscale trust shares; and

g.      documents and communications related to the DCG Assignment Agreement.

## BASIS FOR RELIEF REQUESTED

## I.     Legal Standard

19.     Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order

the examination of any entity."  Pursuant to Rule 2004(b)–(c), a party in interest may seek both

documents and oral discovery related "to the acts, conduct, or property or to the liabilities and

financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."

20.    As courts have routinely recognized, the scope of discovery permitted under Rule 2004 "is very broad"—indeed, it "is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards.  It can be legitimately compared to a fishing expedition."  *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991); *accord, e.g.*, *In re Millennium Lab Holdings, II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute,' the scope of Rule 2004 is broad and unfettered, and has been likened to a 'fishing expedition' and 'an inquisition.").  "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred."  *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

21.    "[T]he granting of a Rule 2004 examination is dependent on the discretion of the court," and the party seeking Rule 2004 discovery "has the burden of showing good cause for the examination which it seeks."  *Millennium*, 562 B.R. at 626–27.  "Good cause may ordinarily be sustained by a claim that the requested documents are necessary to establishment of the moving party's claim or that denial of production would cause undue hardship or injustice."  *Drexel*, 123 B.R. at 712.

22.    Rule 2004 examinations may be conducted by "any party in interest," (Bankruptcy Rule 2004(a)), which includes parties holding claims or potential claims against a debtor.  *See, e.g.*, *In re China Fishery Grp. Ltd.*, Case No. 16-11895 (JLG), 2017 WL 3084397, at *5 (Bankr. S.D.N.Y. July 19, 2017) (trustee of debtor "has standing to seek Rule 2004 discovery in the chapter

11 cases of [other, related debtors] because [the debtor] is a creditor of each of those [other debtors] and the Trustee filed . . . Proofs of Claim against them"); *In re Lehman Bros. Inc.*, No. 08-01420 (JMP), 2008 WL 5423214, at *2–3 (Bankr. S.D.N.Y. Nov. 26, 2008) (individuals holding claims against debtor had standing to seek Rule 2004 discovery for the purpose of identifying other potential claimholders); *Drexel*, 123 B.R. at 712 (finding that creditors of debtors had standing to participate in Rule 2004 examination of debtors).[3]

## II.    **The Requested Examination Falls Within the Broad Scope of Rule 2004**

23.    Through this Motion, the Foreign Representatives seek to investigate "the acts, conduct, [] property[,] liabilities and financial condition of the" Debtors—as is expressly permitted under Rule 2004(b).

24.    More specifically, the Foreign Representatives seek to serve document subpoenas on the Debtors seeking documents related to the 3AC Potential Claims.  As stated above, the 3AC Potential Claims include (but are not limited to) claims akin to those brought against Grayscale and DCG in at least two recent lawsuits alleging breach of contractual and fiduciary duties, and claims for fraudulent transfer in connection with the DCG Assignment Agreement.  Most recently,

---

[3] Under the "pending proceeding" limitation on Rule 2004 discovery, courts hold that discovery should be sought through the Federal Rules of Civil Procedure, rather than Rule 2004, "once an adversary proceeding or contested matter has been commenced." *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009).  This limitation functions to prevent parties from circumventing the Federal Rules of Civil Procedure when seeking discovery *related to a pending proceeding.  Id.* at 50–51.  However, when a Rule 2004 request concerns matters beyond the pending proceeding, the limitation does not apply.  *See id.* at 51 (collecting cases); *see also Drexel*, 123 B.R. at 703–04 (permitting FDIC/RTC "to participate in future" Rule 2004 discovery as part of an ongoing "claims investigation process" *after* FDIC/RTC filed claims); *In re Buick*, 174 B.R. 299, 306 (Bankr. D. Colo. 1994) ("[Creditor] is entitled to conduct Rule 2004 examinations of Debtor . . . regarding issues in addition to or beyond the scope of the pending adversary proceeding").

Here, the Foreign Representatives seek discovery relevant to the 3AC Potential Claims (as opposed to 3AC's already filed claims), and thus the pending proceeding limitation poses no bar to discovery.  The Debtors have insisted that this discovery is not relevant to the filed claims—and therefore outside of the "pending proceeding" limitation—and so presumably the Debtors will not contradict themselves and now argue that this discovery is relevant to the filed claims.  Certainly the Debtors cannot have it both ways by refusing to produce documents based on claimed *irrelevance*, and then opposing Rule 2004 discovery based on claimed *relevance*.

on March 6, 2023, Alameda Research Ltd. filed a complaint against Grayscale, DCG, and others, alleging that Grayscale breached contractual and fiduciary duties by (1) charging commercially unreasonable sponsor's fees to shareholders of Grayscale trusts (*i.e.*, 2 to 2.5% of net asset value, when comparable trusts typically charge less than 1%), and (2) in the interest of maximizing its own fees, systematically preventing shareholders from redeeming their shares in the Grayscale trusts for the corresponding Bitcoin or Ether that back those shares, instead forcing shareholders to hold their shares or trade highly discounted shares on the secondary market. *See* Verified Compl. ¶¶ 1–10, 40–55, 61–93, *Alameda Rsch. Ltd. v. Grayscale Invs., LLC, et al.*, No. 2023-0276-PAF (Del. Ch. Mar. 6, 2023). The *Alameda* complaint alleges that, as a result of this scheme, Grayscale has pocketed over one billion dollars in fee income in the last two years alone, and is holding captive approximately nine billion dollars in value for shareholders. *Id.* ¶¶ 39, 106.

25.     Additionally, on December 6, 2022, Fir Tree Capital Management filed a complaint against Grayscale, alleging that Genesis and Grayscale grew the volume of Grayscale trust shares in the marketplace exponentially (and wrongfully), precipitating the steep price discount at which Grayscale shares currently trade relative to their underlying digital assets, and that Genesis issued the Grayscale trust shares through loans that funded the creation of new shares, including loans made to 3AC which were, in turn, collateralized by the Grayscale trust shares. *See* Verified Compl. ¶¶ 1–14, 61–65, *Fir Tree Value Master Fund, L.P., et al., v. Grayscale Invs., LLC, et al.*, Case No. 2022-1126-PAF (Del. Ch. Dec. 6, 2022).

26.     The Debtors may be subject to similar claims by 3AC to the extent the discovery sought via this Motion reveals that the Debtors acted in concert with DCG and/or Grayscale to use loans made to 3AC, and the cryptocurrency and Grayscale trust assets purportedly purchased and pledged to the Debtors in connection with such loans, for purposes of inflating the value of the

Grayscale trusts and the management fees associated therewith.  In addition, 3AC may have direct claims against the Debtors for both facilitating the Grayscale investments and then causing those investments to be sold (through purported foreclosure) at staggering losses.  The Foreign Representatives thus seek discovery to probe the Debtors' conduct *vis-à-vis* Grayscale and DCG, and in particular how they were using 3AC as a tool to wrongfully inflate the value of Grayscale trusts or otherwise affect their value.  Because the Debtors' actions involving loans made to 3AC allegedly contributed to Grayscale's collapse, and 3AC's collapse is attributable in part to its massive holdings in Grayscale trusts, 3AC is uniquely positioned to pursue related claims as a Grayscale shareholder.

27.     Moreover, the circumstances and motives surrounding Debtor GAP's assignment of all lending activities with 3AC to DCG on July 14, 2022—*after* 3AC's collapse and commencement of BVI liquidation proceedings—may be indicative of a fraudulent transfer to the extent such assignment was designed to frustrate any setoff rights 3AC may have against the Debtors, and the Foreign Representatives need discovery to investigate this potential claim.[4]

28.     Accordingly, the discovery sought in connection with this Motion certainly concerns, at a minimum, the Debtors' "conduct," "liabilities and financial condition."  Fed. R. Bankr. P. 2004(b).  Because "the requested documents are necessary to establishment of [the Foreign Representatives'] claim," good cause is plainly shown.  *See Drexel*, 123 B.R. at 712.

29.     The Foreign Representatives' request is akin to the motion granted by the *Drexel* court.  In *Drexel*, FDIC/RTC acted as receiver for thrift institutions holding claims against the

---

[4] The Debtors agreed to produce documents and communications relating to the DCG Assignment Agreement through June 13, 2022, but refused to produce documents and communications surrounding the July 14, 2022 execution of the agreement, claiming irrelevance to 3AC's currently filed claims.  Thus, through this Motion, the Foreign Representatives seek such documents and communications from June 14, 2022 to July 31, 2022, as they are relevant to the 3AC Potential Claims.

debtor that had been filed, but were "incomplete and still requir[ing] investigation" as part of "an enormous claims investigation process." *Id*. at 704. FDIC/RTC moved for Rule 2004 discovery and the debtor opposed, arguing that the information sought was irrelevant to the claims, and that FDIC/RTC should not be permitted to obtain Rule 2004 discovery for the purpose of bringing claims against the debtor. *Id*. at 704–05. The court soundly rejected these objections, holding that (1) even though the discovery sought appeared to be irrelevant to FDIC/RTC's filed claims, the discovery was permitted "so long as there exists some relationship or effect on the administration of the estate"; and (2) "it is no defense to the production of information that an applicant for [a Rule 2004] examination seeks information to prosecute an action against the witness." *Id.* at 709–10, 712. Indeed, the court noted that the debtors should not "prevent discovery of a claim, but rather one of their functions as fiduciaries is to see that substantial justice is provided to all estate claimants." *Id.* at 712; *see also In re Hughes*, 281 B.R. 224, 225–26 (Bankr. S.D.N.Y. 2002) (where joint liquidators appointed by the Supreme Court of Bermuda sought Rule 2004 discovery to investigate a debtor's potential claims against its auditor, the court held that investigation of the debtor's potential claims was a proper use of Rule 2004 discovery). So too here—the Debtors should not be permitted to block discovery on the 3AC Potential Claims when the discovery sought fits squarely within the scope and purpose of Rule 2004, and is necessary for 3AC to assert any such claims.

30.    In sum, the requested relief is well within the scope of Rule 2004 because it would authorize the Foreign Representatives to "determin[e] the nature and extent of the bankruptcy estate, reveal[] assets, examin[e] transactions and assess[] whether wrongdoing has occurred." *See In re Almatis B.V.*, No. 10-12308 (MG), 2010 WL 4877868, at *4 (Bankr. S.D.N.Y. Nov. 24, 2010) (explaining the "purpose of a Rule 2004 examination").

## NOTICE

31.     Notice of this Rule 2004 Motion will be provided to (i) counsel for the Debtors, Cleary Gottlieb Steen & Hamilton LLP, (ii) the United States Trustee, and (iii) any creditor that has filed a notice of appearance in these bankruptcy cases.  The Foreign Representatives submit that such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

32.     No prior request for the relief sought in this Motion has been made by the Foreign Representatives to this or any other Court.

## CONCLUSION

WHEREFORE, the Foreign Representatives respectfully request that the Court: (a) enter an order granting the relief sought herein in substantially the form attached hereto as **Exhibit A**, and (b) grant such other and further relief as the Court deems just and proper.

Dated: September 15, 2023
   Los Angeles, California

Respectfully submitted,

*/s/ Nima H. Mohebbi*

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
Emily R. Orman (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: nima.mohebbi@lw.com
   tiffany.ikeda@lw.com
   emily.orman@lw.com


– and –


Christopher Harris
Adam J. Goldberg
Brett M. Neve
Nacif Taousse
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: christopher.harris@lw.com
   adam.goldberg@lw.com
   brett.neve@lw.com
   nacif.taousse@lw.com


*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd.*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Genesis Global Holdco, LLC, *et al.*,[5] | ) | Case No. 23-10063 (SHL) |
| | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**[PROPOSED] ORDER AUTHORIZING FOREIGN REPRESENTATIVES TO ISSUE SUBPOENAS COMPELLING THE PRODUCTION OF DOCUMENTS BY THE DEBTORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

Upon consideration of the motion ("**Rule 2004 Motion**") of the Foreign Representatives of Three Arrows Capital, Ltd (the "**Foreign Representatives**"), for entry of an Order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") authorizing the Foreign Representatives to issue subpoenas compelling the production of documents by the above-captioned Debtors ("**Debtors**"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; the Rule 2004 Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); the relief requested in the Rule 2004 Motion being in the best interests of the Debtors' estates, creditors, and other parties-in-interest; proper notice having been given under the circumstances and no further notice is necessary; and after due deliberation thereon, and good and sufficient cause appearing therefor, it is hereby:

ORDERED that the Rule 2004 Motion is granted as set forth herein; and it is further

ORDERED that pursuant to Bankruptcy Rules 2004, 9013 and 9016, the Foreign Representatives are authorized to serve a subpoena compelling the production of documents on

---

[5] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

1

the Debtors in substantially the form attached as **Exhibit B** to the Rule 2004 Motion; and it is further

      ORDERED that the Debtors shall produce responsive, non-privileged documents in the manner instructed on **Exhibit B** to the Rule 2004 Motion.  Such document productions shall be completed and received by the Foreign Representatives no later than thirty (30) days after the Debtors' receipt of a Subpoena, unless otherwise agreed to by the Foreign Representatives or ordered by the Court; and it is further

      ORDERED that this Court shall retain jurisdiction to resolve any disputes arising from or related to this Order, and to interpret, implement, and enforce the provisions of this Order.

Dated: _____, 2023

White Plains, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Proposed Document Subpoena**

## **[PROPOSED] DOCUMENT SUBPOENA TO DEBTORS**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized foreign representatives of Three Arrows Capital, Ltd., hereby demand Genesis Global Capital, LLC, Genesis Asia Pacific Pte Ltd., and Genesis Global Holdco, LLC provide written responses and objections to the following requests for production (the "**Requests**"), and produce the documents at the offices of Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Christopher Harris), no later than thirty (30) days after service of the Requests.

## I.    **DEFINITIONS**

Notwithstanding any definition below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules.

1.    The term "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.    "Company" refers to Three Arrows Capital, Ltd., incorporated as a business company under the laws of the British Virgin Islands on May 3, 2012, and without limitation any affiliates, agents, representatives, employees, attorneys, accountants, investigators, consultants, and any other Person acting on its behalf, including Three Arrows Capital Pte. Ltd., incorporated as a business under the laws of Singapore in 2012, ThreeAC Ltd., Kyle Davies, and Su Zhu.

3.    "DCG" shall mean and refer to Digital Currency Group, Inc. and/or its affiliates, and shall include any agents, representatives, employees, attorneys, accountants, investigators, consultants, and any other Person or entity acting on its behalf.

1

4.      The term "<u>Document</u>" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

5.      "<u>Grayscale</u>" shall mean and refer to Grayscale Investments, LLC and/or its affiliates, and shall include any agents, representatives, employees, attorneys, accountants, investigators, consultants, and any other Person or entity acting on its behalf.

6.      The term "<u>Person</u>" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

7.      "<u>You</u>" and "<u>Your</u>" shall mean and refer to Genesis Global Capital, LLC, Genesis Asia Pacific Pte Ltd., Genesis Global Holdco, LLC, and/or their affiliates, and shall include any agents, representatives, employees, attorneys, accountants, investigators, consultants, and any other Person acting on Your behalf.

8.      Notwithstanding these definitions, each request should be evaluated on its own and be construed to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules.

## II.   <u>INSTRUCTIONS</u>

1.      In responding to the Requests, You are required to furnish all Documents available to You regardless of whether this information is possessed directly by You, Your agents, representatives, employees, or investigators; or by any other legal or non-legal entities controlled by or in any manner presently or previously affiliated with You.

2.      These Requests are continuing in nature.  If, at any time after service of the initial answers hereto and prior to the trial of this action, You obtain additional information responsive to these Requests, You are required to supplement or amend Your responses.

3.      These Requests incorporate by reference the Uniform Definitions in Discovery Requests contained in Local Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rules"), made applicable to this Chapter 11 case by Local Bankruptcy Rule 7026-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules" and together with the Local Civil Rules, the "Local Rules").

4.      Where a claim of privilege is asserted in objecting to any Request or part thereof, please follow the requirements set forth in Fed. R. Civ. P. 26 and the Local Rules.

5.      If You elect to specify and produce business records in answer to any Request, the specification shall be sufficiently detailed to permit the requesting party to locate and identify, as readily as possible, the business records from which the answer may be ascertained.

6.      If, in responding to the Requests, You encounter any ambiguities when construing a question, instruction, or definition, Your response shall set forth the matter deemed ambiguous and the construction used in responding.

7.      Each Document is to be produced in its entirety even if only a portion of the Document is related to the identified subject matter.  Documents should be produced in their original format without abbreviation, editing, or expurgation.  Documents should include all exhibits, appendices, tables, or other attachments and be inclusive of all related metadata (including but not limited to: sent date, last modified date, and created date).  If an exhibit, appendix, table, or other attachment is not presented with the original but is attached to a copy thereof or is otherwise available it should be submitted and clearly marked to indicate the Document to which it corresponds.  With the exception of privileged material, no Document or portion thereof should be masked or deleted in any manner.

8.      If the Document was—but is no longer—in Your possession, custody or control, or in existence, state the date and nature of the Document and explain why the Document is unavailable.

9.      If any Request herein cannot be complied with in full, comply to the fullest extent of Your ability to do so and state why full compliance is not possible.

10.     If any Document responsive to any of the following Requests has been destroyed, discarded, or otherwise disposed of, please identify it by stating its date; authors, addressees and recipients shown as "cc" or copied on the Document; title; substance or subject matter; type (e.g. memorandum, letter, report, etc.); any attachments to the Document; all persons who have had access to or who have knowledge of the nature, subject matter, and contents of the Document; the date of the destruction or other disposition of the Document; the manner and reason for its destruction or other disposition; and the identities of persons authorizing such destruction or other disposition.

11.     Each of the Requests herein shall be limited in scope to the period from January 1, 2012 to the present—the period since the Company's inception.

12.     Questions or concerns may be directed to Adam J. Goldberg (adam.goldberg@lw.com) and Nima H. Mohebbi (nima.mohebbi@lw.com).

III.    **DOCUMENT REQUESTS**

1.      All Documents and Communications concerning loans made to the Company and/or its affiliates for the purported purpose of purchasing or otherwise acquiring shares in any Grayscale Trust, including without limitation the Grayscale Bitcoin Trust, the Grayscale Bitcoin Cash Trust, the Grayscale Litecoin Trust, and the Grayscale Ethereum Trust.

2.      All Documents and Communications concerning any plan, agreement, or action by You, DCG, and/or Grayscale to use the Company or its affiliates to increase or otherwise affect the value of Grayscale Bitcoin Trust Shares, Grayscale Bitcoin Cash Trust Shares, Grayscale Litecoin Trust Shares, Grayscale Ethereum Trust Shares, or the assets in any Grayscale Trust.

3.      All Documents and Communications concerning any contention made by any individual or entity that You, DCG, and/or Grayscale used the Company or its affiliates to increase the value of Grayscale Bitcoin Trust Shares, Grayscale Bitcoin Cash Trust Shares, Grayscale Litecoin Trust Shares, Grayscale Ethereum Trust Shares, Bitcoin, Ethereum, other digital assets, or the assets in any Grayscale Trust.

4.      All Documents and Communications concerning any material benefit You, DCG, and/or Grayscale received from any of the Company's acquisitions of or trades in Grayscale Bitcoin Trust Shares, Grayscale Bitcoin Cash Trust Shares, Grayscale Litecoin Trust Shares, Grayscale Ethereum Trust Shares, or contributions into any Grayscale Trust, or as a result of Your loans to the Company and the purported pledging of collateral in connection therewith.

5.      All Documents showing the Company's holdings of Grayscale Bitcoin Trust Shares, Grayscale Bitcoin Cash Trust Shares, Grayscale Litecoin Trust Shares, Grayscale Ethereum Trust Shares, or shares in any Grayscale Trust.

6.      All Documents and Communications, dated June 14, 2022 through July 31, 2022, concerning the assignment of certain claims from Genesis to DCG, as set for the in the Assignment and Assumption of Master Loan Agreement executed on July 14, 2022.