CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999
*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' RESPONSE TO AD HOC GROUP OF GENESIS LENDERS'**
**MEMORANDUM CONCERNING DEBTORS' WITHHELD DOCUMENTS**

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors," and these cases, collectively, the "Chapter 11 Cases") hereby submit this response (the "Response") to the *Ad Hoc Group of Genesis Lenders' Memorandum Concerning Debtors' Improperly Withheld Documents* (ECF No. 709) ("AHG Memorandum"), and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.  The single and relatively straightforward issue before this Court is whether work-product protection was waived for documents shared between respective counsel for the Debtors

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

and the Official Committee of Unsecured Creditors (the "Committee") regarding negotiations that led to a settlement with the FTX Debtors (defined below). And despite the Ad Hoc Group of Genesis Creditors' (the "Ad Hoc Group") best efforts, the answer is likewise straightforward. No waiver occurred here for two independent reasons: (1) the sharing of work product among counsel for the Debtors and Committee did not increase the risk that the work product would be disclosed to the FTX Debtors, and (2) the Debtors and Committee shared an undeniable common interest with regards to the claims asserted by the FTX Debtors and settlement thereof.

2. As a threshold matter, the documents at issue—which contain the impressions, opinions, and legal assessments of counsel regarding the FTX Debtors' claims and negotiation of the settlement agreement—are clearly protected work product. Disclosing protected work product to a third party can constitute a waiver of that protection, but only where that disclosure increases the likelihood of the documents being shared with an adversary, which circumstances are not present here. At the time of the relevant communications, the Debtors and the Committee, both fiduciaries in these cases, had a common legal interest in protecting and maximizing the value of the estate and limiting the extent of allowed claims asserted by the FTX Debtors. To that end, in reaching a value-maximizing resolution to the claims asserted by the FTX Debtors, the Debtors shared the documents at issue with the Committee in furtherance of their shared common interest. The Committee had confidentiality obligations adopted in its bylaws and fiduciary duties that prevented it from sharing the documents with their adversaries, the FTX Debtors, and accordingly, the Debtors appropriately withheld the documents pursuant to the work-product and common-interest doctrines.

**BACKGROUND**

3.  On August 17, 2023, the Debtors filed the *Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving the Settlement Agreement with FTX Debtors* (ECF No. 603) (the "Settlement Motion"), seeking this Court's approval of and authorization to enter into a settlement agreement (the "Settlement Agreement") that the Debtors reached with FTX Trading Ltd. and its affiliated debtors and debtors in possession (collectively, the "FTX Debtors"). The Committee had previously joined and supported the Debtors' efforts to estimate the FTX Debtors' claims against the Debtors' estates at zero dollars. *See* Hr'g Tr., *In re Genesis Global Holdco LLC, LLC*, 23-10063 (SHL) (Bankr. S.D.N.Y. Jun. 15, 2023) at 80:7.

4.  On August 31, 2023, the Ad Hoc Group filed the *Objection of the Ad Hoc Group of Genesis Lenders to Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement With FTX Debtors* (ECF No. 648) (the "AHG Objection"), objecting to the relief requested in the FTX Settlement Motion.

5.  Shortly thereafter, on September 1, 2023, the Ad Hoc Group filed the *Ad Hoc Group of Genesis Lenders' First Set of Document Requests* (ECF No. 664) (the "AHG Document Requests") and *Notice of Deposition of A. Derar Islim* (ECF No. 665), seeking discovery from the Debtors in connection with the Settlement Motion and AHG Objection.

6.  As part of discovery in this matter, the Debtors withheld a total of 77 documents (the "Withheld Documents"), including communications between counsel to the Debtors and counsel to the Committee regarding negotiations leading to the Settlement Agreement and Settlement Motion, on the basis that such documents are privileged under the work-product

3

doctrine. The Debtors produced a privilege log identifying the Withheld Documents and the basis for withholding them on September 8, 2023.

7. On September 15, 2023, this Court held a discovery conference regarding the Ad Hoc Group's objection to the Debtors' privilege designations with respect to the Withheld Documents, and the Ad Hoc Group filed the AHG Memorandum.

## RESPONSE

### A. The Withheld Documents are Protected Under the Work Product Doctrine

8. As a threshold matter, the Withheld Documents are protected from discovery under the work-product doctrine. Documents "created because of anticipated litigation, which tend[] to reveal mental impressions, conclusions, opinions or theories concerning the litigation" are privileged under the work-product doctrine and are not discoverable. *United States v. Adelman*, 134 F.3d 1194, 1195 (2d Cir. 1998); *see also* Fed. R. Civ. P. 26(b)(3)(a) ("Ordinarily, a party may not discover documents . . . that are prepared in anticipation of litigation"). The work-product doctrine "preserve[s] a zone of privacy in which a lawyer can . . . develop legal theories and strategy . . . free from unnecessary intrusion by [their] adversaries," which is critical to attorneys' abilities to best serve the interests of their clients. *Adelman*, 134 F.3d at 1196-97.

9. While the Ad Hoc Group remarks that the descriptions of the Withheld Documents provided in the privilege log are not "sufficient to establish a claim of privilege," *see* AHG Memorandum, ¶ 6, it does not and cannot seriously contend that the documents at issue are not covered under the work-product doctrine. The Withheld Documents are classic examples of the materials that the work-product doctrine aims to protect: they are documents containing the mental impressions, opinions, and legal assessments of counsel for the Debtors and the Committee

4

regarding the merits of, and risks associated with, the claims asserted by the FTX Debtors, the terms of the Settlement Agreement, and the Debtors' strategy related to the Settlement Motion.[2]

### B. The Debtors Did Not Waive Work-Product Protection by Sharing the Withheld Documents with the Committee

10. In support of its contention that the Debtors improperly withheld the Withheld Documents, the Ad Hoc Group advances only one argument: that the Debtors "have waived any protection of those documents by exchanging them with [the Committee's] counsel." AHG Memorandum, ¶ 14. But the Ad Hoc Group's argument misunderstands both the standard for waiver of work-product protection and the contours of the common-interest doctrine.

11. "The holder of the work product privilege waives it **only** by voluntarily disclosing it in such a manner that it is likely to be revealed to its adversary." *S.N. Phelps & Co. v. Circle K Corp. (In re Circle K. Corp.)*, 199 B.R. 92, 100 (Bankr. S.D.N.Y. 1996) (emphasis added). Full stop. Nowhere does the Ad Hoc Group even suggest, because it cannot, that disclosure among the Debtors and Committee made it likely that the work product would be disclosed to their adversaries, the FTX Debtors. The Committee's bylaws, as well as its fiduciary duties to all creditors, would have prevented disclosure of their respective impressions and reactions to the FTX Debtors' claims and any settlement thereon to the FTX Debtors. For this reason alone, there can be no waiver of the work-product protection.

12. This result is only further underscored by the existence of a common interest among the Debtors and Committee regarding the settlement with the FTX Debtors. The common-interest doctrine protects from waiver privileged attorney-client communications and work product where

---

[2] The Ad Hoc Group's attempt to differentiate categories of the Withheld Documents as either authored by counsel for the Debtors versus authored by counsel for the Committee is of no matter. The Debtors understand that counsel for the Committee has reviewed the Withheld Documents and informed the Ad Hoc Group that the documents authored by counsel for the Committee reflect attorney work product and were therefore properly withheld by the Debtor

5

the following requirements are met: "(1) the party who asserts the rule . . . share[s] a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought [were] designed to further that interest." *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 71 (S.D.N.Y. 2009) (internal quotations omitted); *see also Velo Holdings Inc. v. Paymentech, LLC (In re Velo Holdings Inc.)*, 473 B.R. 509, 514 (Bankr. S.D.N.Y. 2012) (noting that it "applies to both attorney-client communications and work product materials"). Both criteria are satisfied here.

13.    *First,* the Debtors and the Committee share a common legal interest—both generally, in preserving and maximizing the value of the estates, and specifically, in evaluating the potential settlement with the FTX Debtors in order to reach a value-maximizing resolution of the FTX Debtors' significant claims in furtherance of those more general goals. A shared interest in preserving and maximizing the value of the estates, as well as in gaining court approval of a settlement agreement, are among those that courts have found warrant application of the common-interest doctrine. *See, e.g., In re Quigley Co., Inc.*, No. 04-15739 SMB, 2009 WL 9034027, at *4 (Bankr. S.D.N.Y. Apr. 24, 2009) (common-interest doctrine protected communications based on shared interest in confirming plan of reorganization); *see also In re Leslie Controls, Inc.*, 437 B.R. 493, 502 (Bankr. D. Del. 2010) (common-interest doctrine protected communications between debtor and an ad hoc group of creditors based their "common interest in maximizing the asset pool" available to creditors); *In re Trib. Co.*, No. 08-13141 KJC, 2011 WL 386827, at *3 (Bankr. D. Del. Feb. 3, 2011) (common-interest doctrine protected communications between debtors and noteholders based on shared interest in "gaining court approval of the plan and settlement"); *In re Maxus Energy Corp.*, 617 B.R. 806, 824 (Bankr. D. Del. 2020) (common-interest doctrine

6

protected communications between debtors and creditors' committee where the parties shared an interest in achieving a "consensual plan of reorganization between the Debtors and the [U]CC").

14. *Second*, the Debtors and Committee shared the Withheld Documents—which ultimately go towards the size of the claims pool and the amount of assets available for satisfaction of creditor claims—in furtherance of that common interest in preserving and maximizing the estates' assets for the benefit of creditors. *See Leslie Controls*, 437 B.R. at 502 (holding that documents that went "to the size of the asset pool" were shared in furtherance of a debtor and ad hoc group of creditors' "common interest in maximizing the asset pool").

15. Therefore, the Debtors and Committee did not waive work-product protection because, given their common interest with respect to the FTX Debtors' claims, sharing the Withheld Documents did not increase the likelihood that such documents would be shared with an adversary. *C.f. Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 47 F.D.R. 334, 338 (S.D.N.Y. 1969) (third-party did not waive work-product protection by sharing document with plaintiffs' counsel where its interest was "substantially identical with plaintiffs'" and doing so was not "inconsistent with maintaining secrecy from possible adversaries").

16. The Ad Hoc Group, for its part, insists that the Debtors and the Committee "do not share an identical legal interest with respect to the" Settlement Agreement because the "[Committee] has a duty to represent the interests of the creditor body as a whole and thus represents FTX as an adversary in the settlement." AHG Memorandum, ¶ 5. While no common interest is required to prevent waiver of the work-product protection, the Ad Hoc Group misconstrues the relevant standard for establishing common interest. "The common interest privilege does not require a complete unity of interests among the participants," but rather "[t]he common interest of the parties must be at least a substantially similar legal interest." *In re Trib.*,

7

2011 WL 386827 at *4 (internal quotations omitted); *see also Velo*, 473 B.R. at 515 ("the interests of the parties asserting common interest need not be universally congruent."). While the Debtors' and Committees' interest could diverge on certain issues, they share a common legal interest with respect to the preservation and maximization of the estates' assets and discussions on the risks and merits associated with the claims addressed in the Settlement Agreement warrant protection.

17. Further, the Committee does not represent the FTX Debtors individually or their individualized interests; it owes a fiduciary duty to and represents the interests of *all* of the unsecured creditors. *See In re Refco, Inc.*, 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006) ("It is well recognized that . . . the members of an official committee owe a fiduciary duty to their constituents—in the case of an official creditors' committee, to all of the debtor's unsecured creditors"). The Debtors likewise owe a fiduciary duty to all of their creditors and other parties in interest and have an obligation to maximize the value of the estates. *See, e.g., Hirsch v. Pa. Textile Corp., Inc. (In re Centennial Textiles, Inc.)*, 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998) ("As fiduciaries, the debtor in possession and its managers are obligated to treat all parties to the case fairly, [and] maximize the value of the estate"). The Debtors and Committee not only share an interest in maximizing the value of the estates, they share a fiduciary obligation to do so. *See In re Megan-Racine Assoc., Inc.*, 189 B.R. 562, 573 (Bankr. N.D.N.Y. 1995) (debtor and unsecured creditors committee's "shared . . . *duty* to maximize the debtor's estate" is a legal interest that supports application of common interest) (emphasis in original).

18. The Ad Hoc Group also claims that, to the extent the Debtors and Committee did share a common interest at the time of the relevant communications, they shared, at most, only "some general commercial interest." *See* AHG Memorandum, ¶ 17. The Ad Hoc Group, however, cites no case law supporting the proposition that a shared interest in evaluating the merits and

8

terms of litigation settlements for the purpose of preserving and maximizing the assets of the estate is a commercial, rather than legal, interest.³ The Ad Hoc Group's assertion also ignores the weight of caselaw to the contrary. *See supra*, ¶ 13; *see also, e.g., Leslie Controls*, 437 B.R. at 500 (the interest of the debtor and ad hoc committee of creditors "in 'preserv[ing] and maximiz[ing] the insurance available to pay asbestos claims' . . . is an inherently legal question"); *Megan-Racine*, 189 B.R. at 573 (the shared duty to maximize the estates' assets is a common legal interest).

19.    Finally, the Ad Hoc Group makes much of the timing and substance of the *Statement and Reservation of Rights of the Official Committee of Unsecured Creditors With Respect to Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) For Entry of an Order Approving Settlement Agreement With FTX Debtors* (ECF No. 671) (the "Committee Statement"), which the Committee filed on September 5, 2023. The Ad Hoc Group argues that the Debtors and the Committee "cannot have shared an identical common legal interest" until the filing of the Committee Statement because "until that point, the [Committee] stood in the position of an adverse third party that could have objected to the" Settlement Motion and "there is no evidence suggesting [the] Debtors and the [Committee] were aligned in interest before that date (e.g., a common-interest agreement)." AHG Memorandum, ¶ 5; *see also* AHG Memorandum, ¶¶ 17-18.

---

³ In fact, the Ad Hoc Group itself actually seems to concede elsewhere in the Memorandum that an interest in maximizing the estates' assets is legal, rather than purely commercial, in nature. *See* AHG Memorandum, ¶ 5 ("the Proposed Settlement threatens to improperly diminish the Debtors' estates, which the [Committee] has a **legal interest** in maximizing") (emphasis added).

Further, the cases that the Ad Hoc Group does cite are silent on this issue and present entirely unanalogous circumstances. *See Citibank v. Bombshell Taxi LLC (In re Hypnotic Taxi LLC)*, 556 B.R. 305, 317 (Bankr. E.D.N.Y. 2017) (declining to apply the common-interest doctrine where a trust asserted that it shared a common legal interest in the protection of the trust's assets with an individual who appeared to retain no legal interest whatsoever in the trust's property); *see also Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 472 (S.D.N.Y. 2003) (declining to apply the common-interest doctrine where two parties' asserted shared interest was in ensuring that a third party, with whom they both had separately contracted, did not breach their respective agreements and could continue to pay the money owed thereunder).

9

20. Further, September 5, 2023 was the Committee's deadline to respond to the Settlement Motion, so it is hardly surprising that it would choose to file on that date. And "[c]ourts in this circuit have routinely held that a writing is unnecessary to establish a common legal interest." *Velo*, 473 B.R. at 516. In any case, it is clear from the Committee Statement itself that the Debtors and Committee shared a common legal interest long before September 5, 2023. *See* Committee Statement, ¶ 2 (noting that the Committee "supported the Debtors' efforts to keep the automatic stay in place and estimate the FTX Debtors' claims at zero" because "litigation of the FTX Debtors' claims may have posed an existential risk to these chapter 11 cases").

## CONCLUSION

WHEREFORE, for the reasons set forth in this Response, the Debtors respectfully request that the Court (i) enter an order, substantially in the form attached hereto as **Exhibit A**, affirming the application of the work-product and, if necessary, common-interest doctrine to the Withheld Documents, (ii) deny the Ad Hoc Group's request for an order overruling the Debtors' assertion of privilege and requiring the Debtors to produce the Withheld Documents, and (iii) grant any other and further relief as the Court deems appropriate.

Dated: September 17, 2023  
      New York, New York

/s/ Andrew Weaver  
Sean A. O'Neal  
Luke A. Barefoot  
Jane VanLare  
Andrew Weaver  
CLEARY GOTTLIEB STEEN & HAMILTON LLP  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999  

*Counsel to the Debtors and Debtors-in-Possession*

10