CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |
| | Related Docket No. 678 |

## DEBTORS' OBJECTION TO THE MOTION
## OF THE FOREIGN REPRESENTATIVES OF THREE ARROWS
## CAPITAL, LTD. FOR AN ORDER MODIFYING THE AUTOMATIC
## STAY PURSUANT TO 11 U.S.C. 362(d)(1) AND BANKRUPTCY RULE 4001

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219) ("Holdco"); Genesis Global Capital, LLC (8564) ("GGC"); Genesis Asia Pacific Pte. Ltd. (2164R) ("GAP").  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 6

A.    3AC Commences BVI Liquidation and Chapter 15 Proceedings ..................... 6

B.    Procedural History Relating to 3AC................................................................. 7

ARGUMENT ...................................................................................................... 10

A.    The Policies Underlying the Bankruptcy Code Weigh Against
      Lifting the Automatic Stay........................................................................ 11

B.    The *Sonnax* Factors Weigh Against Lifting the Automatic Stay....................... 14

   i.      The Relief Requested by 3AC Would not Result in a
     Complete Resolution of the Issues (*Sonnax* Factor 1)........................... 14

   ii.     The 3AC Claims are Connected to the Debtors' Chapter 11
     Cases, and Lifting the Stay Will Interfere with the Debtors'
     Reorganization (*Sonnax* Factor 2)...................................................... 16

   iii.    The BVI and Ch. 15 Proceedings Do Not Involve the
     Debtor as a Fiduciary (*Sonnax* Factor 3)............................................ 21

   iv.     The BVI Court and Ch. 15 Court Are Not Specialized
     Tribunals (*Sonnax* Factor 4)............................................................. 21

   v.      No Insurer Has Assumed Responsibility for Defending the
     Debtors Against the 3AC Claims (*Sonnax* Factor 5)............................ 22

   vi.     The 3AC Claims Primarily Involve the Debtors, not Third
     Parties (*Sonnax* Factor 6) ................................................................. 23

   vii.    Litigating the 3AC Claims in the BVI or Ch. 15
     Proceedings Would Prejudice the Interests of Creditors
     (*Sonnax* Factor 7).............................................................................. 24

   viii.   Whether 3AC's Success in the Other Proceeding Would
     Result in a Judicial Lien Avoidable By the Debtors is
     Irrelevant (*Sonnax* Factor 9)............................................................. 25

   ix.     The Interests of Judicial Economy and Economical
     Resolution of the Actions Are Best Served by Enforcing
     the Automatic Stay (*Sonnax* Factor 10)............................................. 26

*x.*      The 3AC Claims Are Not Yet Ready for Trial in Either the
         BVI Court Nor the Ch. 15 Court (*Sonnax* Factor 11) ............................    29

*xi.*     The Balance of Harms Weighs Against Lifting the
         Automatic Stay (*Sonnax* Factor 12)........................................................    29

CONCLUSION............................................................................................................    31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BDA Design Grp., Inc.* v. *Off. Unsecured Creditors' Comm.*,
No. 3:13-cv-0568, 2013 WL 12100467 (N.D. Tex. Sept. 2, 2013), *aff'd*, 576 F. App'x
369 (5th Cir. 2014) ................................................................................................. 24

*E. Refractories Co. v. Forty Eight Insulations Inc.*,
157 F.3d 169 (2d Cir. 1998) .................................................................................. 18

*In re AMR Corp.*,
485 B.R. 279 (Bankr. S.D.N.Y.) (SHL), *aff'd*, 730 F.3d 88 (2d Cir. 2013) .................. 26

*In re Bally Total Fitness of Greater N.Y., Inc.*,
402 B.R. 616 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ....................... 20, 32

*In re BlockFi Inc.*,
Case No. 22-19361, ECF No. 1346 .............................................................. 8, 21, 33

*In re CBI Holding Co.*, Inc.,
529 F.3d 432, 466 (2d Cir. 2008) .......................................................................... 28

*In re Celsius Network LLC*,
642 B.R. 497 (Bankr. S.D.N.Y. 2022) .............................................................. 18, 23, 30

*In re Curtis*,
40 B.R. 795 (D. Utah 1984) ................................................................................. 24, 32

*In re Ditech Holding Corp.*,
No. 19-10412 (JLG), 2022 WL 16952443 (Bankr. S.D.N.Y. Nov. 14, 2022) ............... *passim*

*In re HBL SNF, LLC*,
635 B.R. 725 (Bankr. S.D.N.Y. 2022) (SHL) ........................................................ 16

*In re I. Burack, Inc.*,
132 B.R. 814 (Bankr. S.D.N.Y. 1991) .................................................................. 18

*In re Ionosphere Clubs, Inc.*,
922 F.2d 984 (2d Cir. 1990) ................................................................................. 18

*In re Leibowitz*,
    147 B.R. 341 (Bankr. S.D.N.Y. 1992)......................................................... 18

*In re Manville Forest Prods. Corp.*,
    896 F.2d 1384 (2d Cir. 1990)..................................................... 34, 35

*In re Motors Liquidation Co.*,
    No. 09-50026 REG 10 Civ. 36 RJH, 2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010)....... 22, 36

*In re N.Y. Classic Motors, LLC*,
    No. 21-10670 (MG), 2021 WL 2285440 (Bankr. S.D.N.Y. June 4, 2021).................. 23, 32

*In re Penn-Dixie Indus., Inc.*,
    6 B.R. 832 (Bankr. S.D.N.Y. 1980)........................................................... 24

*In re Pioneer Com. Funding Corp.*,
    114 B.R. 45 (Bankr. S.D.N.Y. 1990)......................................................... 16, 18

*In re Project Orange Assocs., LLC*,
    432 B.R. 89 (Bankr. S.D.N.Y. 2010)......................................................... 18

*In re Residential Cap., LLC*,
    2012 WL 3249641................................................................................ 31

*In re Residential Cap., LLC*,
    501 B.R. 624 (Bankr. S.D.N.Y. 2013)......................................................... 19

*In re Residential Cap., LLC*,
    No. 12-12020 (MG), 2012 WL 3555584 (Bankr. S.D.N.Y. Aug. 16, 2012)................. *passim*

*In re Residential Cap., LLC*,
    No.12-12020 (MG), 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012)................... *passim*

*In re Rochester Drug Coop., Inc.*,
    620 B.R. 699 (Bankr. W.D.N.Y. 2020)....................................................... 25

*In re S.G. Phillips Constructors., Inc.*,
    45 F.3d 702 (2d Cir. 1995)..................................................................... 35

*In re Sonnax Indus.*,
    907 F.2d 1280 (2d Cir.1990)................................................................. 17, 22

*In re SunEdison, Inc.*,
    557 B.R. 303 (Bankr. S.D.N.Y. 2016)....................................................... 31

*In re Three Arrows Capital, Ltd.*,
　　Case No. 22-10920, ECF No. 109 ................................................................ 11, 12, 15

*In re Tristar Auto. Grp., Inc.*,
　　141 B.R. 41 (Bankr. S.D.N.Y. 1992) ............................................................ 18

*Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*,
　　474 U.S. 494 (1986) ....................................................................................... 17

*SEC v. Brennan*,
　　230 F.3d 65 (2d Cir. 2000) ............................................................................ 18

## Rules and Statutes

11 U.S.C. 105(a) ..................................................................................................... 13

11 U.S.C. 362(d)(1) ................................................................................................ 7

11 U.S.C. 502 ......................................................................................................... 17

Fed. R. Bankr. P. 3007 .......................................................................................... 17

Genesis Global Holdco, LLC and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors," and the above-captioned cases, the "Chapter 11 Cases") hereby submit this objection (the "Objection") to the *Motion of the Foreign Representatives of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* (the "Lift Stay Motion") (ECF No. 678) filed by the Foreign Representatives of Three Arrows Capital, Ltd. ("3AC" and together with the Debtors, the "Parties"), and respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1.      At bottom, the Lift Stay Motion is a transparent attempt by 3AC to open yet another front in its belated campaign to stymie the Debtors' efforts to timely adjudicate the 3AC Claims. Even though the claims on which the Lift Stay Motion is based include certain claims previously asserted in a lawsuit in the BVI that commenced prior to the Petition Date (and was voluntarily stayed at the request of 3AC), 3AC waited until eight months after the Petition Date, four months after the Bar Date, and after considerable motion practice had occurred in the interim, before filing the Lift Stay Motion. Coincidentally (or not), the purported basis for the relief that 3AC now seeks became material for 3AC only hours prior to a hearing to establish a litigation and discovery schedule with respect to the Debtors' most recent objection to the 3AC Claims (a motive that 3AC readily admits).[3] Even if 3AC had consistently and timely pursued the goals it says its Lift Stay Motion is designed to accomplish, this timing reveals the Lift Stay Motion for what it is – another delay tactic.

---

[2]      All capitalized terms used in this Preliminary Statement shall have the meaning ascribed to them elsewhere in this Objection or in the Lift Stay Motion, as applicable.

[3]      While 3AC has taken an inconsistent, scattershot and languid approach to seeking stay relief in the other proceedings it asserts involve at least some parallel issues, it has recently sought similar relief in only one of those cases. In the Lift Stay Motion, 3AC previewed that it intended to seek similar stay relief from the BlockFi court in order to avoid "substantial timing pressures" in those cases, as the BlockFi debtors' motion to estimate 3AC's claims

2.      Setting aside the timing, 3AC fails to meet its high burden to demonstrate that relief

from the automatic stay is justified.   Both the policies underlying the Bankruptcy Code and the

*Sonnax* Factors heavily weigh against lifting the stay, which exists for the sole purpose of protecting

the Debtors and their creditors, and is expressly designed to frustrate attempts like these to litigate

claims against a debtor in one or more fora other than a debtor's bankruptcy court.   Indeed, the Lift

Stay Motion fails to identify any decision in which a court in this Circuit has granted the relief

requested in the Lift Stay Motion based on similar facts.

3.      As a threshold matter, 3AC asserts that the relief they seek in the Lift Stay Motion is

needed in order to establish a "centralized" forum to resolve "common" questions of law and fact at

issue in its claims filed against the Debtors, as well as unspecified "other parties,"[4] which discovery

confirms are in fact limited to claims in the BlockFi, FTX and Celsius proceedings.   Other than the

issue of 3AC's insolvency, which is only one of the issues alleged in the 3AC Claims and disputed

by the Debtors in the Renewed Objection, 3AC makes only conclusory allegations regarding such

"commonalities" between its claims against the Debtors and "other parties."   Even giving 3AC the

benefit of the doubt, 3AC elides that its claims against the Debtors are, at bottom, challenges to

discrete transfers between two distinct counterparties pursuant to the very form of the Debtors'

master lending agreements, subject to the specific defenses already asserted by the Debtors.   As such,

those disputes can and should be resolved in these Chapter 11 Cases, where 3AC filed its unique

proofs of claim and submitted itself to the jurisdiction of this Court.

---

is set for an initial hearing on September 20, 2023, and the BlockFi confirmation hearing is currently scheduled for
September 26, 2023.  3AC filed such motion September 13, 2023, and the motion is set for hearing after the BlockFi
debtors' estimation motion.  *In re BlockFi Inc.*, Case No. 22-19361, ECF No. 1346 (Bankr. Ct. D. N.J.) (MBK).
[4]      *See* Lift Stay Motion ¶¶ 5, 16, 37 (claiming commonalities of "core legal and factual issues involved in the
3AC Claims and similar claims against other parties . . .  (e.g., BlockFi, FTX, and *potentially among others*)"
(emphasis added).

4.    Due to the open-endedness of the Lift Stay Motion with regard to such "common" questions of law and fact at issue with "other parties," the Debtors served 3AC with interrogatories to clarify these allegedly common questions and parties (the "Interrogatories"). The Joint Liquidators' verified responses to the Interrogatories (the "Interrogatory Responses") are attached hereto as Exhibit A. The Interrogatory Responses confirm that the Joint Liquidators are unable to identify any "other parties" beyond those three debtor parties expressly identified in the Lift Stay Motion (BlockFi, FTX and Celsius), and cannot identify consistently common questions between their claims in those proceedings and the ones at issue here. Moreover, the Interrogatory Responses show that the Joint Liquidators have only filed one other motion seeking relief from the relevant automatic stay in the BlockFi proceedings—although the Joint Liquidators vaguely assert they may file a similar motion in the Celsius cases at some unspecified date, they do not even assert that they intend to seek such relief with regard to the FTX proceedings full stop. Therefore, it is clear that 3AC has not, and does not even intend to actually seek "centralization" of 3AC's claims across these proceedings, as by their own admission, at least the claims against FTX will not be litigated in either the BVI or the Ch. 15 Court. Nor is there any certainty, particularly given the Joint Liquidators' delays in seeking stay relief, that such relief will be granted in the BlockFi or Celsius cases, or that the outcome of such stay relief will result in centralization in the same forum (assuming 3AC even ultimately seeks such relief in the Celsius case).

5.    Additionally, given that the Lift Stay Motion, and the similar motion in BlockFi, presents each court with the choice of two alternative fora, in the unlikely event the stay is lifted, there is a chance that, even if both courts granted the requested relief, the two matters could still proceed separately in one or more of 3AC's alternative fora. Moreover, given its decision not to

seek such relief in other cases, 3AC appears to intend for its claims to simultaneously proceed in the chapter 11 cases of FTX and Celsius as well.

6.      Further, by 3AC's own admission, the BVI Court cannot fully resolve all issues, as it cannot hear or rule on the Debtors' safe harbor defenses, which the Debtors submit apply to substantially all of the 3AC Claims.  Where the safe harbor issues present near complete defenses to the bulk of 3AC's claims, it is inimical to the interests of efficiency and judicial economy to propose, as the Lift Stay Motion does, that the parties fully litigate other matters in the BVI to conclusion, only to later litigate a defense that would have precluded much of that litigation in the first instance.

7.      Even setting aside the Debtors' safe harbor defenses, 3AC's conversion and turnover claims were asserted under U.S. law, and even central aspects of its BVI law-governed claims turn on questions of U.S. law, mainly, as 3AC admits, whether the Debtors obtained a valid security interest in the collateral at issue.[5]  If the stay were lifted and 3AC litigated the 3AC Claims in the BVI, the Parties would be required to submit expert testimony on New York and U.S. law on these issues.  Without question, U.S. law analysis would dominate the BVI proceedings if 3AC's claims were to proceed before the BVI Court, and would present far more issues than the more limited BVI law-governed questions that would require expert testimony in this Court (which the Debtors, given 3AC's delay in bringing the Lift Stay Motion, have already briefed).[6]  Given that the balance of the 3AC Claims turn on the resolution of substantive U.S. law issues, the 3AC Claims should proceed before this Court where 3AC has already squarely placed them, the Debtors have twice briefed them, and this Court has heard and decided numerous related disputes.

---

[5]      *See* Interrogatory Responses at 7 ("Admitted that New York Law governs the validity of security interests purportedly pledged by 3AC for claims asserted under both U.S. and BVI Law in 3AC's amended proofs of claims…").

[6]      *See generally* Renewed Objection, Ex. G.

8.      As 3AC admits, the BVI Court cannot fully resolve the 3AC Claims given Debtors'

safe harbor defenses, and therefore litigating the portions of the claims that the BVI Court could

adjudicate would require the Parties to incur significant additional costs before ultimately returning

to this Court for final resolution.  3AC's discovery responses also reveal that these threshold and

near-determinative safe harbor defenses are <u>not</u> currently at issue in any of the other proceedings

that form the basis for its arguments about the need for centralization.

9.      Alternatively, lifting the stay in favor of litigating in the Ch. 15 Proceeding before

Judge Glenn would not result in any swifter resolution of the 3AC Claims, as 3AC admits that the

3AC Claims are not yet trial ready in the Ch. 15 Court. Mot. ¶ 43.  Indeed, other than the submission

of a brief statement referencing the existence of the 3AC Claims filed on August 1, 2023, the Ch. 15

Court has had little-to-no-exposure to the facts or law underlying the 3AC Claims.  *See In re Three*

*Arrows Capital, Ltd.*, Case No. 22-10920, ECF No. 109.  It makes little sense, as 3AC suggests, to

have this Court continue to oversee the Parties' exchange of discovery requests and production of

documents, and to establish a schedule for adjudicating the 3AC Claims in this Court, only to transfer

the 3AC Claims to the Ch. 15 Court without the benefit of that background.  Indeed, where this Court

is well-poised to adjudicate these claims, it is likely that lifting the stay and transferring the 3AC

Claims to the Ch. 15 Court would only serve to add further delay and needlessly drain resources

from the Debtors' estates by necessitating duplication of steps already taken in this Court.  This

situation presents an even weaker case for lifting the stay than was made in the similar but timely

motion filed by FTX (ECF No. 476), which raised many of the same factual and legal issues (i.e.

claims for repayments of loans based on the same MLA, safe harbor defenses, ordinary course claims

and collateral matters).

10.     Granting the Lift Stay Motion would also prejudice the Debtors' other creditors, given that defending the 3AC Claims in another forum would be an unnecessary drain on the Debtors' estates, including costs associated with re-briefing one of two potential courts on the 3AC Claims and the Debtors' objections to such claims, re-establishing a discovery schedule, re-establishing claims objections procedures, and procuring local representation for the Debtors in the BVI.  It would also likely interfere with the Debtors' ability to make timely creditor distributions due to the size of the 3AC Claims.

11.     For these reasons and those that follow, the Lift Stay Motion should be denied with prejudice.

## FACTUAL BACKGROUND

### A.     3AC Commences BVI Liquidation and Chapter 15 Proceedings[7]

12.     On June 27, 2022, 3AC commenced a liquidation proceeding (the "BVI Proceeding") before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "BVI Court").  *Verified Pet. Under Chapter 15 For Recognition of a Foreign Main Proceeding and Related Relief* at ¶ 1, *In re Three Arrows Capital, Ltd.*, Case No. 22-10920, ECF No. 2.  On June 29, 2022, Messrs. Russell Crumpler and Christopher Farmer were appointed as joint liquidators of 3AC (the "Joint Liquidators").  *Id.* ¶ 8.

13.     On July 1, 2022, 3AC commenced a proceeding under chapter 15 of title 11 of the United States Code (the "Ch. 15 Proceeding") in the U.S. Bankruptcy Court for the Southern District of New York (the "Ch. 15 Court"), captioned *In re Three Arrows Capital, Ltd.*, No. 22-10920.  *Id.*  The Ch. 15 Proceeding is before the Hon. Martin Glenn.  *Id.*  On July 28, 2022, the Ch. 15 Court

---

[7]     Additional details regarding procedural background of the BVI Proceeding and the Ch. 15 Proceeding can be found in the Renewed Objection (as defined below) at pages 9-10.

entered the *Order Granting Recognition of Foreign Main Proceeding and Relate Relief, In re Three Arrows Capital, Ltd*, Case No. 22-10920, ECF No. 47.

14.     In late November 2022, 3AC filed an action in the BVI Court against GGC, GAP and Digital Currency Group, Inc. ("DCG") under Sections 186 and 274A of the BVI Insolvency Act asserting claims based on many of the transactions underlying the 3AC Claims that are the subject of this Court's Scheduling Order. Such action was then voluntarily stayed, and as discussed below, 3AC proceeded to file and then amend and re-file their claims in this Court.[8]

**B.     Procedural History Relating to 3AC**

15.     On January 19, 2023, the Debtors filed voluntary petitions for relief and initiated the Chapter 11 Cases (the "Petition Date"). On April 4, 2023, this Court entered an order establishing May 22, 2023 at 4:00 p.m., Eastern Time, as the bar date for filing proofs of claim (the "Bar Date"), ECF No. 200.

16.     On May 22, 2023, 3AC filed proofs of claim numbered 523, 526 and 527 (together, the "Original Claims") against Holdco, GGC and GAP, respectively. In the Original Claims, the Joint Liquidators represented that these claims, including avoidance actions, arise from transfers to the Debtors with a value in excess of $1 billion.

17.     On July 22, 2023, the Debtors filed a *Motion for an Order Pursuant to 11 U.S.C. 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related Relief* (ECF No. 449). After receiving and incorporating informal comments from 3AC, the Debtors filed a *Revised Proposed Order Pursuant to 11 U.S.C. 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related*

---

[8]     The Lift Stay Motion fails to even disclose the existence of this pre-existing action or explain what role if any such proceeding would play should their Lift Stay Motion be granted in favor of litigation in the BVI.

*Relief* (ECF No. 465) (the "Revised Order"). The Court entered the Revised Order on July 12, 2023 (ECF No. 498) (the "Claims Procedures Order").

18.     On July 19, 2023, the Debtors filed an omnibus objection to the Original Claims, seeking an order disallowing and expunging the Original Claims because of, *inter alia*, 3AC's failure to allege sufficient facts to support a finding that the Debtors are legally liable under any cognizable law. *See* ECF No. 530 (the "3AC Objection"). The 3AC Objection also preemptively defended the validity of 3AC's pledge of assets as collateral on which the Debtors foreclosed, and set forth the bases on which 3AC could not state valid preference claims. 3AC subsequently requested permission from the Court to, in the Court's words, file a "free amendment." *In re Genesis Global Capital, LLC*, No. 23-100063, Aug. 2, 2023 Hr'g. Tr. at 33:15-23; 38:22-39:3. The Court made clear there was no such thing. *Id*. ("[Y]ou're asking me to change the rules to say that [3AC] get[s] a free amendment…. I don't want to be snarky about this, but tell me where in the rules it says you get a free amendment. You don't."). The Joint Liquidators indicated that they would likely proceed to amend 3AC's claims. In order to guard against the Joint Liquidators' refrain that nearly fifteen months after their appointment by the BVI Court they lack sufficient information to adequately plead and prosecute their claims, the Debtors voluntarily produced to the Joint Liquidators a total of 6,099 pages of documents on August 8 and August 9, 2023, and produced an additional 710 pages on September 8, 2023 (after having produced an additional several hundred pages of documents in April 2023).[9]

---

[9]     While 3AC served a scattershot discovery request on the Debtors propounding more than 50 additional requests late on Friday September 16, 2023, the last possible day for service of document requests, and while Debtors will meet and confer with 3AC on those requests, having produced a significant volume of documents over the past five months covering, among other things, the parties' relationship, the Debtors believe that their non-expert document productions are substantially complete.

19.     Rather than attempt to defend their threadbare factual allegations underpinning their Original Claims by opposing the 3AC Objection, 3AC ultimately filed revised proofs of claim numbered 981, 982 and 990 (the "Amended Claims", and together with the Original Claims, the "3AC Claims") on August 18, 2023.[10]  Notably, in the interim, on July 26, 2023, the BVI Court denied the Joint Liquidators sanction to commence a chapter 11 proceeding, thereby foreclosing the Joint Liquidators efforts to obtain standing to pursue claims under Section 547 of the Bankruptcy Code.  *See In re Three Arrows Capital, Ltd.*, No. 22-10920, ECF No. 109.[11]  In response to the Amended Claims, the Debtors requested adjournment *sine die* of the hearing on the 3AC Objection, originally scheduled for August 24, 2023, to allow time for the Debtors to review and respond to the Amended Claims.[12]

20.     On September 1, 2023, the Debtors filed a renewed omnibus objection to the 3AC Claims (the "Renewed Objection", ECF No. 658), and withdrew the 3AC Objection (the "3AC Objection Withdrawal", ECF No. 661).  The Renewed Objection raises defenses to substantially all of the Amended Claims under Section 546(e) of the Bankruptcy Code.[13]  On the same date, the

---

[10]     At the hearing, 3AC agreed to file such amended claims by August 14, 2023.  *In re Genesis Global Capital, LLC*, No. 23-100063, Aug. 2, 2023 Hr'g. Tr. at 42:9.  This date was subsequently extended by agreement of the Debtors.

[11]     While the Joint Liquidators are pursuing an appeal of this BVI decision, such appeal has been set down for hearing in February 2024 and the applicable standard of review makes the chances of success remote at best.  *See* Renewed Objection, Ex. G ¶¶ 6-8.

[12]     This Court has also already entered the Claims Procedures Order, which order has become final and non-appealable.  The Claims Procedures Order contemplates a non-evidentiary sufficiency hearing on precisely the kind of threadbare claims that 3AC has attempted to assert regarding, *inter alia*, their ill-articulated "Grayscale" related claims.  Claims Procedures Order ¶ 2(a).  3AC has already challenged the applicability of a sufficiency hearing with regard to the 3AC Claims, which this Court did not entertain.  *See* Letter to Judge Lane re: Discovery Conference on 3AC Claim Objection (ECF No. 563); *see also In re Genesis Global Capital, LLC*, No. 23-100063, Aug. 2, 2023 Hr'g. Tr. at 34:19-24 (the Court stating it can't instruct the Debtors not to make an argument about the insufficiency of 3AC's Claims.).  It would be inimical to the interests of judicial economy and finality if 3AC were given another bite at the apple to relitigate claims procedures matters in one or more new fora.

[13]     Such argument is supported by an expert declaration from Dr. Sharon Brown-Hruska, the former chair of the Commodity Futures Trading Commission.  *See* Renewed Objection at 62-72 (supported by citations to Ex. G, the *Declaration of Sharon Brown-Hruska in Support of Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*).

Debtors further filed a scheduling Lift Stay Motion to establish a timeline for resolution of the 3AC Claims (the "<u>Scheduling Motion</u>", ECF No. 659).

21.     On September 5, 2023, 3AC filed an objection to the Scheduling Motion (the "<u>Scheduling Motion Objection</u>", ECF No. 673).   On September 6, 2023, the Court held a hearing where it preliminarily approved the Scheduling Motion with certain adjustments (the "<u>Sept. 6 Hearing</u>").   On September 12, 2023, the Court entered an order incorporating the guidance from the Court given during the Sept. 6 Hearing (the "<u>Scheduling Order</u>", ECF No. 695).

22.     On September 6, 2023, 3AC filed the Lift Stay Motion, nearly a year after first commencing litigation in the BVI that they voluntarily stayed, almost eight months after the Petition Date, almost four months after the filing of the Original Claims, after the Debtors had filed two objections to the 3AC Claims, and the parties are now progressing in discovery towards one or more hearings before this Court to determine the merits of the 3AC Claims.

<strong><u>ARGUMENT</u></strong>

23.     3AC has failed to meet its burden to demonstrate that cause exists to lift the automatic stay.  *In re Residential Cap., LLC*, No. 12-12020 (MG), 2012 WL 3555584, at *2 (Bankr. S.D.N.Y. Aug. 16, 2012) ("The moving party bears the initial burden to demonstrate that cause exists to lift the stay.") (internal quotations omitted); *In re Pioneer Com. Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990) ("The issue of cause for relief from the stay is peculiarly within the responsibility of the creditor to present a *prima facie* case of cause for relief."); *In re HBL SNF, LLC*, 635 B.R. 725, 733 (Bankr. S.D.N.Y. 2022) (SHL) ("If the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.") (quoting *In re Sonnax Indus.*, 907 F.2d 1280, 1285 (2d Cir. 1990)).   Indeed, because 3AC is at most an unsecured creditor, the relief it requests should not be granted absent a showing of "extraordinary circumstances."  *In re Pioneer*, 114 B.R. at 48; *see also In re Residential Cap.,*

10

*LLC,* No. 12-12020 (MG), 2012 WL 3860586, at *5 (Bankr. S.D.N.Y. Aug. 8, 2012) ("[T]he general

rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted

relief from the stay unless extraordinary circumstances are established to justify such relief")

(internal quotations omitted). [14]

24.     In determining whether 3AC has shown cause to lift the automatic stay, courts in this

District look to the policies reflected in the Bankruptcy Code, *In re Residential Cap., LLC,* 2012 WL

3555584, at *5, as well as the twelve factors set out by the Second Circuit in *In re Sonnax Indus.,*

*Inc.,* 907 F.2d 1280 (2d Cir. 1990) (the "*Sonnax* Factors"). [15]  As set forth in further detail below, the

Lift Stay Motion fails to establish that cause exists under the applicable legal standards, let alone

"extraordinary circumstances," and should be denied.

### A.     The Policies Underlying the Bankruptcy Code Weigh Against Lifting the Automatic Stay

25.     The automatic stay is "one of the fundamental debtor protections provided by the

bankruptcy laws," *Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986),

because without it, "the debtor's assets might well be dismembered, and its business destroyed,

---

[14]     *See, e.g.,* the 3AC Objection at n. 32.

[15]     The *Sonnax* Factors are:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

907 F.2d at 1286.

before the debtor has an opportunity to put forward a plan for future operations." *In re Project Orange Assocs.*, *LLC*, 432 B.R. 89, 101 (Bankr. S.D.N.Y. 2010) (internal citations omitted).

26.    By allowing "the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently," *SEC v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000) (internal quotation omitted), the automatic stay advances two bedrock principles underlying the Bankruptcy Code: it "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell" in which to reorganize. *In re Pioneer*, 114 B.R. at 48; *E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (noting that the automatic stay is designed to shield the debtor from creditor litigations in other fora when the debtor should focus on its restructuring efforts); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) (same).

27.    An unsecured creditor is "not entitled to relief from the automatic stay unless it can establish extraordinary circumstances." *In re Tristar Auto. Grp., Inc.*, 141 B.R. 41, 44 (Bankr. S.D.N.Y. 1992); *see also In re Pioneer*, 114 B.R. at 44, 48 (similar); *In re Residential Cap.*, 2012 WL 3860586, at *5 (similar); *In re I. Burack, Inc.*, 132 B.R. 814, 817 (Bankr. S.D.N.Y. 1991) ("[A]n unsecured, unliquidated claimholder should not be permitted to [lift the automatic stay to] pursue litigation against the debtor in another court unless extraordinary circumstances are shown."); *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992) (similar).

28.    The automatic stay was imposed at the commencement of these proceedings in order to "assist the Debtors in effecting a prompt and orderly reorganization." ECF No. 13 ¶ 19. Lifting the stay at this late stage to resolve the 3AC Claims through a litigation that could "delay and interfere with the Chapter 11 cases," rather than doing so "through the centralized bankruptcy process" available *in this Court* would directly contravene the rationale behind the stay in this, or any, chapter 11 case. *See In re Celsius Network LLC*, 642 B.R. 497, 503 (Bankr. S.D.N.Y. 2022).

29.     Moreover, 3AC – whose claims are unsecured – has failed to allege the type of "extraordinary circumstances" which would warrant lifting the stay or treating the 3AC Claims differently than those of other creditors who are similarly situated in these Chapter 11 Cases. *See In re Residential Cap., LLC*, 501 B.R. 624, 643 (Bankr. S.D.N.Y. 2013). Indeed, 3AC seeks to upend this centralized process and pursue proceedings in multiple alternative fora, including the BVI Court, the Ch. 15 Court, and given their discovery concession that they do not intend to lift the stay in the FTX proceedings, the U.S. Bankruptcy Court for the District of Delaware.[16]

30.     Granting the Lift Stay Motion would hinder this Court's ability to control and manage the timeline for addressing the 3AC Claims and would leave the Debtors and their other creditors at the mercy of the pacing of protracted adversarial proceedings in the BVI or in relation to the Ch. 15 Proceeding, leaving the Debtors to face demands from 3AC for the creation of over a billion dollar reserve in these Chapter 11 Cases that would severely impact their ability to provide reasonably precise estimates to their creditors of the timing of when a material portion of the distributions could conceivably occur.

31.     As explained in further detail below, 3AC has failed to present any convincing arguments for why these bedrock principles and policies should be cast aside in favor of adjudication of the 3AC Claims before either the BVI Court or the Ch. 15 Court, let alone that "extraordinary circumstances" exist to meet its high burden, and so the Lift Stay Motion should be denied.

---

[16]     It is particularly perplexing that the Lift Stay Motion cited the pendency of preference claims in the FTX proceeding as supporting their cited need for centralization, but in sworn interrogatory responses, concede that they have not, and do not intend to seek such centralization with respect to their FTX claims. *See* Interrogatory Responses at 10; cf. Lift Stay Motion ¶¶ 2-3.

**B.    The *Sonnax* Factors Weigh Against Lifting the Automatic Stay**

32.    3AC's requested relief should be denied because, contrary to the arguments made in the Lift Stay Motion, the overwhelming majority of the *Sonnax* Factors clearly favor maintaining the stay.[17]

i.    The Relief Requested by 3AC Would not Result in a Complete Resolution of the Issues (*Sonnax* Factor 1)

33.    3AC has not demonstrated that a proceeding before either the BVI Court or the Ch. 15 Court would result in a complete, or even swift, resolution of the 3AC Claims. In fact, 3AC readily admits that the BVI Court cannot fully resolve the 3AC Claims because the BVI Court "likely would not" determine the safe harbor defenses raised in the Renewed Objection to substantially all of the liability asserted in the 3AC Claims. Mot. ¶ 23. For this reason alone, the first *Sonnax* Factor cannot support relief in favor of the BVI Court. *See In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 623–24 (Bankr. S.D.N.Y.) (finding the first *Sonnax* Factor "weigh[ed] heavily against" lifting the stay because the alternative proceeding would not result in a complete resolution of the issues where the debtors' appeal of an issue would "still need to be resolved" and there would be "extensive discovery, briefing and then a hearing on the issue of class certification."), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009).

34.    As in *In re Bally Total Fitness*, the issue of whether the Debtors' safe harbor defenses apply to the 3AC Claims requires certain limited discovery, additional briefing, and an evidentiary hearing (as evidenced by the different schedules proposed by the Parties in this Court).[18] Further, to

---

[17]    Although the Lift Stay Motion does not discuss the applicability of the fifth and sixth *Sonnax* Factors to the Ch. 15 Court, the Objection nonetheless demonstrates why these factors do not support lifting the stay in favor of a proceeding in that forum. *See In re Ditech Holding Corp*., No. 19-10412 (JLG), 2022 WL 16952443, at *13 (Bankr. S.D.N.Y. Nov. 14, 2022) (noting that "[a]ll twelve [*Sonnax*] factors may not be relevant in every case, . . . nor is each factor assigned equal weight in every case" and denying relief from stay where a majority of relevant factors weighed against the moving party).

[18]    3AC also inconsistently argues what it views as being a "full" resolution of the issues. On the one hand, 3AC argues that the BVI Court can "fully" resolve the 3AC Claims despite the BVI Court's inability to resolve the Debtors'

proceed as 3AC suggests—where the BVI Court would resolve questions of liability and the quantum of damages, in many cases applying New York law, on the 3AC Claims in the first instance without consideration of the Debtors' safe harbor defenses—would be a wasteful expenditure of estate resources and run completely contrary to principles of judicial economy, especially given that *this Court* is already capable of doing so comprehensively.  In other words, 3AC would have the Parties end up right where they started, but with a time and cost-intensive (and ultimately unnecessary) detour.  This makes particularly little sense where 3AC's Interrogatory Responses make clear that none of the other proceedings underlying their animating demand for "centralized" adjudication currently implicate Section 546(e) of the Bankruptcy Code. *See In re BlockFi Inc.*, No. 22-19361, ECF No. 1346 (including no reference to safe harbor as part of BlockFi's estimation motion); *see also* Interrogatory Responses at 10 (stating there is "[p]resently no active litigation related to 3AC's claim in Celsius.").

35.    Similarly, 3AC provides no explanation, and thus fails to make a *prima facie* case, for why a proceeding before Judge Glenn would result in a swifter resolution of the 3AC Claims. Aside from a single pleading informing the Ch. 15 Court of the pendency of certain claims, especially as compared to a proceeding before this Court which has already begun to familiarize itself with the claims and the required discovery.  For this reason, the first *Sonnax* Factor cannot support lifting the stay in favor of the Ch. 15 Court.  *See, e.g., In re Motors Liquidation Co.*, No. 09-50026 REG 10 Civ. 36 RJH, 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (holding that the first *Sonnax* Factor weighed against lifting the stay where debtor would be exposed to "protracted litigation rather than

---

substantial, and likely dispositive, defenses to the claims asserted against them. Mot. ¶ 23.  Yet 3AC also asserts that "a complete resolution of the issues arising from the 3AC Claims will not be available outside of the BVI Court" solely because of DCG's claims against 3AC in the BVI Proceeding. Mot. ¶ 26.  The pendency of DCG's claim in the BVI Proceeding has no bearing on whether the 3AC Claims *against the Debtors* can be fully resolved in the BVI Court, which 3AC admits they cannot.

a [resolution of the]… suit"); *In re Residential Cap., LLC*, 2012 WL 3555584, at *3 (finding that the first *Sonnax* Factor favored maintaining the stay because "[w]hile relief may eventually result in partial or complete resolution of the issue at hand, the resolution may not be immediate"). Moreover, resolution of the claims before either the Ch. 15 Court or the BVI Court ignores the important timing considerations and interplay between confirmation and effectiveness of a plan and the Debtors' interests in prompt and substantial distributions to their creditors—matters only this Court can address.

> ii.    The 3AC Claims are Connected to the Debtors' Chapter 11 Cases, and Lifting the Stay Will Interfere with the Debtors' Reorganization (*Sonnax* Factor 2)

36.    Contrary to 3AC's conclusory assertion that the "Debtors may proceed with their Chapter 11 cases in this Court, unobstructed by 3AC or its claims," the 3AC Claims are in fact "inextricably intertwined" with the Chapter 11 Cases such that their resolution outside of this Court would interfere with the Debtors' reorganization. *Sonnax*, 907 F.2d at 1286–87.

37.    *First*, the 3AC Claims arise out of pledge agreements with the Debtors that are based on the Debtors' same form of master loan agreement ("MLA") as the Debtors have with other counterparties with pending claims against the Debtors. Decisions regarding the interpretation and enforceability of the Debtors' lending arrangements and practices will, therefore, have case-wide impacts, including issues of first impression, such as whether certain crypto currencies should be classified as securities or commodities and whether electronically transmitted agreements concerning the pledge of collateral remain enforceable under New York law.[19] These issues should

---

[19]    Renewed Objection ¶¶ 140-142; ¶¶ 77-83.

be resolved in the Court tasked with overseeing the Chapter 11 Cases, as any ruling on such matters will have significant implications on other creditors' claims against the estates.

38.    *Second*, resolution of the 3AC Claims will require this Court to determine the legal classification and value of the digital assets exchanged between the Debtors and their creditors, as well as the application of the Debtors' safe harbor defenses.[20] Those findings are central to the resolution of the Chapter 11 Cases because they will necessarily impact the treatment of similar claims brought by other unsecured creditors as well as avoidance claims that the Debtors may assert.

39.    *Third*, the asserted value of the 3AC Claims is significant, and their resolution will have significant implications for the Debtors' creditors. Indeed, this is demonstrated only by comparing the Debtors' available liquid assets (approximately $2.5 billion) to the magnitude of 3AC's asserted claims ($1.1 billion).

40.    Based upon the foregoing, it is clear that the 3AC Claims turn on issues that are central to the Chapter 11 Cases and, therefore, the second *Sonnax* Factor weighs heavily in favor of denying the Lift Stay Motion. *See, e.g.*, *In re N.Y. Classic Motors, LLC*, No. 21-10670 (MG), 2021 WL 2285440, at *5 (Bankr. S.D.N.Y. June 4, 2021) (weighing the second *Sonnax* Factor against lifting the stay "given that the Concession Agreement, the remaining term and the amounts due by the Debtor thereunder are issues central to the chapter 11 case"); *In re Celsius Network LLC*, 642 B.R. 497 at 502–03 (holding that the second *Sonnax* Factor weighed against lifting the stay where movant's claims, like those of other creditors, related to transactions involving digital assets, and were therefore inextricably intertwined with the Chapter 11 cases) (citation omitted).

41.    Further, lifting the stay would interfere with the Debtors' ability to reorganize by allowing 3AC—rather than the Debtors—to control how and when the issues of fact and law

---

[20]    Renewed Objection at 62-74.

underlying the 3AC Claims are resolved.  Indeed, while the Debtors are working hard towards a timely confirmation of their plan, and ultimately resolution of the Chapter 11 Cases, 3AC's actions over the last several months demonstrate that 3AC has a countervailing interest in delaying adjudication of their claims, which in turn would delay the administration of the Chapter 11 Cases. *See In re Genesis Glob. Cap., LLC*, No. 23-10063, Sept. 6, 2023 Hr'g. Tr. at 50:1–4 (Judge Lane stating 3AC's Scheduling Motion Objection and the alternative schedule proposed therein seemed to be "a bit lengthy," and the Court was "not sure why we need that amount of time given what clearly has been going on in terms of information exchange over the course of the past however many months").

42.      The law is clear that even slight interference with the bankruptcy process is sufficient to deny lift stay motions.  *See BDA Design Grp., Inc.* v. *Off. Unsecured Creditors' Comm.*, No. 3:13-cv-0568, 2013 WL 12100467, at *5 (N.D. Tex. Sept. 2, 2013) ("'[E]ven slight interference with the administration may be enough to preclude relief.'"), *aff'd*, 576 F. App'x 369 (5th Cir. 2014) (citation omitted); *In re Curtis*, 40 B.R. 795, 806 (D. Utah 1984) ("The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate.  Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit."); *see also In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836–37 (Bankr. S.D.N.Y. 1980) (denying stay relief where plaintiff sought only to proceed with limited discovery of customer lists; finding such requests "cannot be shrugged off as de minimis" because "[i]nterference by creditors in the administration of the estate, no matter how small . . . is prohibited").

43.      3AC's suggestion that the second *Sonnax* Factor supports their requested relief because the Debtors can simply create a "reserve," *see* Mot. ¶ 28, for the 3AC Claims, which amount

to over a billion dollars, is unconvincing and ignores that the relevant legal inquiry is whether there is even "slight interference" in the Debtors' Chapter 11 Cases. Establishing a reserve pending adjudication of such large claims would not, as 3AC asserts, allow the Debtors to "proceed with their Chapter 11 cases in this Court, unobstructed by 3AC or its claims." *See* Mot. ¶ 28; *see also In re Genesis Glob. Cap., LLC*, No. 23-100063, Sept. 6, 2023 Hr'g. Tr. at 49:7–10 (describing that when faced with a similar motion to lift the automatic stay filed by FTX, where FTX similarly argued the Debtors could "go ahead with the case without worrying about this," the Court's response was "that's billion with a B. And the same applies to [3AC's] circumstance"). 3AC's purported $1.1 billion claim amounts to 44% of the approximately $2.5 billion in liquid assets available to satisfy claims in the Chapter 11 Cases and, if allowed in full (however unlikely), would be the single largest claim against the Debtors' estates. It cannot be disputed that the adjudication and resulting allowance (if any) of the 3AC Claims will have significant implications for the timing and quantum of distributions to the Debtors' legitimate creditors and resolution of the Chapter 11 Cases more broadly. *See In re Rochester Drug Coop., Inc.*, 620 B.R. 699, 705 (Bankr. W.D.N.Y. 2020) (finding this factor weighed against lifting the stay where the "ultimate value of the Debtor's claim" was "a necessary step in the plan confirmation process.").

44. Moreover, the Debtors are seeking to confirm a Chapter 11 plan by the end of this year. As the Court noted during the Sept. 6 Hearing, "certain things have to get addressed and the larger they are, the bigger impact they have…if it's an impediment to distribution, then it's obviously sensitive." *See In re Genesis Glob. Cap., LLC*, No. 23-10063, Sept. 6, 2023 Hr'g. Tr. at 48:1–6. Granting the Lift Stay Motion could divest this Court of the ability to control and manage the timeline for addressing the 3AC Claims and would subject the Court and the Debtors' estates to protracted adversarial proceedings in the BVI or in relation to the Ch. 15 Proceeding, leaving the Debtors and

their creditors stuck in limbo with this Court presiding over confirmation, but another court controlling the schedule and timing for adjudication of the 3AC Claims. *See id.* at 50:12–18 (Judge Lane stating "[the 3AC Claims are] large claim[s]. And in order to understand the mechanics of what a case would look like, and recoveries might look like, it's not a frivolous position for [Debtors] to say, Judge, it's important for us to have a handle on what that looks like when we figure out what the case looks like and what we can tell Creditors their recoveries might look like.").

45.    Indeed, 3AC ignores how the timing of this Lift Stay Motion, which could have been brought at an earlier period given that 3AC first commenced litigation against the Debtors in the BVI nearly a year ago, interferes with the Debtors' Chapter 11 Cases. In *In re AMR Corp.*, this Court denied a lift stay motion, stating that it was "troubled" by similar circumstances where the movant was "attempting, [after a motion for authority to enter into a postpetition secured financing transaction and for authority to use cash on hand was submitted] and more than one year into these cases, to change the facts on the ground by seeking to lift the stay." *In re AMR Corp.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y.) (SHL), *aff'd*, 730 F.3d 88 (2d Cir. 2013).[21] Similarly, the lack of consistent evidentiary support for their new-found interests in "centralization"—points to a more troubling underlying motive of seeking to relitigate issues such as the Scheduling Motion and Claims Procedures Order and further delay adjudication of their claims.

46.    Therefore, the second *Sonnax* Factor weighs decisively against lifting the stay, as the 3AC Claims are clearly connected to these Chapter 11 Cases as, *inter alia* (1) the standard form of pledge agreements and MLAs employed by the Debtors govern the relationships between the Debtors and other creditors and their resulting asserted claims, (2) the classification of the various

---

[21]    This stands in marked contrast to the parallel motion by FTX to lift the stay, which was timely brought before FTX's claims against the estate were even filed in these Chapter 11 Cases.

digital assets either borrowed, lent or pledged as either securities or commodities, and (3) the impact of such large claims on the quantum and timing of distributions for other creditors.  More than the requisite "slight" interference, these issues would significantly impact the Chapter 11 Cases, and the Joint Liquidators' proposed "simple" solution of a billion dollar reserve would only further impede timely distributions to other creditors.

> iii.    The BVI and Ch. 15 Proceedings Do Not Involve the Debtor as a Fiduciary (*Sonnax* Factor 3)

47.    Contrary to 3AC's assertion, *see* Mot. ¶ 30, the fact that none of the claims involve conduct of the Debtors in their capacities as fiduciaries signifies that the third *Sonnax* Factor weighs against lifting the stay.  *See In re Residential Cap., LLC*, 2012 WL 3555584, at *3 ("The Motion did not include any evidentiary showing that [the debtor] was acting as a fiduciary.  Therefore, the third *Sonnax* Factor weighs against lifting the stay."); *accord In re Ditech Holding Corp*., No. 19-10412 (JLG), 2022 WL 16952443, at *14 (Bankr. S.D.N.Y. Nov. 14, 2022) ("Because no fiduciary relationship exists here, the third *Sonnax* Factor weighs against lifting the stay").

> iv.    The BVI Court and Ch. 15 Court Are Not Specialized Tribunals (*Sonnax* Factor 4)

48.    The fourth *Sonnax* Factor weighs against lifting the stay because the BVI Court is not a "specialized tribunal" with the necessary expertise to fully resolve the 3AC Claims.  Most glaringly, as discussed above (*see* Section B.(i)), the BVI Court cannot decide the Debtors' safe harbor defenses, whereas this Court can rule on *all* legal and factual issues to reach final adjudication of the 3AC Claims.  Further, the 3AC Claims involve turnover and conversion actions under U.S. federal and state law, and even their BVI law-governed claims would ultimately require determinations of U.S. law (*i.e.*, the relevant agreements underlying the 3AC Claims and the security interests granted thereunder under New York law, as well as the question of 3AC's insolvency).  *See*

Renewed Objection, Ex. G ¶¶ 27, 32.[22]  If the stay were lifted in favor of the BVI Court, the Parties

would be required to submit expert testimony on New York and U.S. law for these issues, likely

resulting in the need for *more* expert testimony than has already been or will be submitted before

this Court with respect to BVI law.  Lift Stay Motion, Grant Decl. ¶ 19 ("In terms of procedure,

foreign law issues must generally be pleaded and proven as a matter of fact by expert evidence.").

49.      Further, 3AC does not even attempt to apply this factor to the Ch. 15 Court, as, the

Ch. 15 Court has no specialized expertise that would not also be shared by this Court.  Indeed, the

Ch. 15 Court lacks the familiarity with the Parties and the 3AC Claims that this Court has developed

in ruling on the Joint Liquidators' requests concerning their amendment of their claims and in setting

the schedule for fact discovery.[23]  This factor therefore clearly weighs against lifting the stay.

### *v.*    No Insurer Has Assumed Responsibility for Defending the Debtors Against the 3AC Claims (*Sonnax* Factor 5)

50.      Contrary to 3AC's assertions, *see* Mot. ¶ 32, the fifth *Sonnax* Factor weighs against

granting the Lift Stay Motion because no insurer has assumed responsibility for defending the

Debtors against the 3AC Claims, or otherwise agreed to cover the costs associated with a litigation

in the Ch. 15 Proceeding or BVI Proceeding.  As such, requiring the Debtors to defend the 3AC

Claims in the BVI (which would require the Debtors and other parties in interest to utilize local

counsel and incur travel costs), in addition to the costs that have already been incurred by the Debtors

with respect to, among other things, the 3AC Objection, the 3AC Objection Withdrawal, the

Renewed Objection, and the Scheduling Motion, would result in an unnecessary diminution in the

---

[22]     Even granting the Lift Stay Motion to allow the BVI Court to address "only the issues of insolvency", Mot. ¶ 31, would run contrary to the principles of judicial economy and efficiency, particularly where the Joint Liquidators have taken the position that under BVI law, knowledge of solvency is also relevant to a determination of other elements of the BVI preference claims, such as the ordinary course element. *See* Scheduling Lift Stay Motion Objection ¶ 19.

[23]     The Joint Liquidators have also advised the Debtors that they shortly intend to seek to bring certain motions to compel before this Court and have sought dates from chambers for premotion conferences pursuant to this Court's practices.

value of the Debtors' estates.  *See, e.g.*, *In re Ditech Holding Corp.*, 2022 WL 16952443, at *15 (explaining that the fifth *Sonnax* Factor is "binary" and that where debtors would be "'forced to directly incur the costs of all legal fees and expenses to defend their interests'" in an ancillary proceeding, the factor weighs against lifting the stay) (citation omitted); *In re Residential Cap., LLC*, 2012 WL 3555584, at *4 ("No insurer has assumed responsibility for the action here, and the Debtors would therefore need to pay all expenses in litigating the action with out-of-pocket funds from the bankruptcy estate.  As a result, the fifth *Sonnax* Factor does not support relief from the stay."). Similarly, additional (and duplicative) costs would be required even in the Ch. 15 Court, as the Parties would once again have to incur the costs of motion practice to allow the Ch. 15 Court to reach the same level of familiarity with the 3AC Claims and the Debtors' objections thereto that this Court already possesses, as well as go through the process of establishing a discovery and adjudication schedule for a second time.

> *vi.*   The 3AC Claims Primarily Involve the Debtors, not Third Parties (*Sonnax* Factor 6)

51.   3AC does not argue that the 3AC Claims "primarily" involve third parties, which they could not credibly do given that the 3AC Claims were filed against the Debtors, and relate to contracts with the Debtors, as well as transfers made by 3AC to the Debtors pursuant to such contracts.  Plainly, the Debtors are the main party to the 3AC Claims.  However, 3AC attempts to sidestep this reality by arguing that non-debtor third-party DCG is "intricately implicated" because the "DCG Assignment Agreement can serve as the basis for both the Debtors and 3AC to assert claims against DCG on account of GAP's liability on the 3AC Claims" and "the BVI Court will ultimately be asked to determine the impact of the 3AC Claims on 3AC's liability to DCG."  *See* Mot. ¶ 33.   At best, 3AC has argued that DCG's involvement is incidental, not "intricate." Resolution of the dispute between 3AC and the Debtors can be achieved independent of DCG.

Therefore, the 3AC Claims primarily involve the Debtors, not third parties, and the sixth *Sonnax* Factor weighs against lifting the stay. *See, e.g., In re Ditech Holding Corp.*, 2022 WL 16952443, at *16 ("A bankruptcy court should not grant relief from the stay under the sixth *Sonnax* Factor if the debtor is the main party to the litigation.'"); *In re Residential Cap., LLC*, 2012 WL 3555584, at *4 (same).

*vii.*    Litigating the 3AC Claims in the BVI or Ch. 15 Proceedings Would Prejudice the Interests of Creditors (*Sonnax* Factor 7)

52.    Contrary to 3AC's representations, the seventh *Sonnax* Factor favors maintaining the stay because litigating the 3AC Claims in the BVI Court or Ch. 15 Court would prejudice the Debtors' other creditors in four principal ways. *First*, lifting the stay threatens the Debtors' distribution timeline and would subject the Debtors' remaining creditors to further delay while the Debtors are forced to re-litigate their objections and scheduling timelines, and, in the case of the BVI Court, return to this Court before achieving full resolution of the 3AC Claims. *See supra* Section B.(i) and B.(ii). *Second*, allowing 3AC to litigate the 3AC Claims in the BVI Court or Ch. 15 Court would give rise to assertions that substantial reserves are required, which would impact the Debtors' ability to make creditor distributions in an efficient and timely fashion. *See supra* Section B.(ii). *Third*, lifting the stay with respect to 3AC only would privilege 3AC at the expense of similarly situated creditors, because only 3AC stands "to benefit from a successful motion, while the automatic stay would continue to prohibit other constituents from pursuing their claims outside this Court." *In re Celsius Network LLC*, 642 B.R. at 503. *Fourth*, forcing the Debtors to litigate the 3AC Claims in the BVI Court would unnecessarily diminish the Debtors' estates by imposing additional costs associated with litigating in another forum, including but not limited to hiring local counsel as well as retaining expert witnesses to testify before the BVI Court on the predominant issues of New York

law that govern the claims.[24]  *See supra* Section B.(v).  3AC, which has already filed (original and amended) claims and multiple motions in these proceedings and is represented by New York counsel, face no such burden.  *See In re Residential Cap.*, *LLC*, 2012 WL 3249641, at *6 (holding that litigation of claims in other fora prejudices debtors' creditors because "such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization."); *In re Motors Liquidation Co.*, No. 09-50026-MG, ECF No. 4416, Tr. at 41:24-42:4 ("If the [debtors'] estate has to go through the burden of litigation elsewhere and the estate is paying full administrative expense . . . to defend a claim that may be satisfied in the range of ten cents on the dollar, that is something harmful to the estate and to the remainder of the creditor community.").

53.     3AC's argument that there would be no prejudice to the other creditors – despite the purported value of the 3AC Claims – simply because no other creditor has sought to recover the specific assets subject to the 3AC Claims is almost purposely obtuse.  Again, as this Court has previously stated, the interest of all of the Debtors' creditors are impacted by claims of this size.  *See In re Genesis Global Capital, LLC*, No. 23-100063, Sept. 6, 2023 Hr'g. Tr. at 50:14-18.  Additionally, permitting one creditor to proceed in its preferred forum encourages others to seek the same relief, which could further prejudice the Debtors' other creditors.  *In re SunEdison, Inc.*, 557 B.R. 303, 308–09 (Bankr. S.D.N.Y. 2016) (recognizing the risk of "encourag[ing] other claimants to file their own stay relief motions" as a form of prejudice to the interests of other creditors.)

*viii.*   Whether 3AC's Success in the Other Proceeding Would Result in a Judicial Lien Avoidable By the Debtors is Irrelevant (*Sonnax* Factor 9)[25]

---

[24]     By contrast, given the Joint Liquidators' delay in even bringing the Lift Stay Motion, the Debtors have already incurred costs providing such testimony to this Court on matters of BVI law.  *See generally* Renewed Objection, Ex. G.

[25]     Given the defense of equitable subordination is similarly not at issue, the Debtors also assert that *Sonnax* Factor 8 is irrelevant.  3AC provides no case law to support their assertion that in such circumstances *Sonnax* Factor

54.    The weight of authority holds that, where there is no judicial lien at issue, the ninth *Sonnax* Factor is neutral or irrelevant to the Court's analysis. *See e.g. In re Residential Cap., LLC*, 2012 WL 3555584 (not considering *Sonnax* Factor 9 when denying relief from the automatic stay); *In re Residential Cap., LLC*, 2012 WL 3860586 (same); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 623–24 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) (same); *In re N. Y. Classic Motors, LLC*, No. 21-10670 (MG), 2021 WL 2285440 (Bankr. S.D.N.Y. June 4, 2021) (finding *Sonnax* factor 9 not relevant when denying relief from the automatic stay); *In re Motors Liquidation Co.*, No. 09-50026-MG, ECF No. 4416 (Bankr. S.D.N.Y. 2009) (same). This substantial body of authority is contrary to 3AC's citation to a single instance where a court found otherwise.

ix.    The Interests of Judicial Economy and Economical Resolution of the Actions Are Best Served by Enforcing the Automatic Stay (*Sonnax* Factor 10)

55.    As noted throughout this Objection, 3AC's wildly inconsistent approach of arguing for "centralized" resolution of the claims "before the BVI Court, or in the alternative before the [Ch. 15 Court]" alone renders its gestures towards judicial economy pretextual. 3AC's Interrogatory Responses confirm that they have only filed a similar motion for relief from the automatic stay in the BlockFi case, with vague intentions to file at a later date in the Celsius case and conceding that they do not intend to file such a motion at all in the FTX case. Interrogatory Responses at 9 (compare 3AC's statement under 2.i. for Celsius, providing "3AC intends to seek relief from the automatic stay in Celsius's Chapter 11 proceeding pending before the U.S. Bankruptcy Court for the Southern District of New York before Chief Judge Martin Glenn," with their description for FTX, stating only that "3AC's claims against FTX are pending in its Chapter 11 proceeding in the U.S. Bankruptcy Court for the District of Delaware before Judge Jennifer [sic] A. Dorsey."). Additionally, the Joint

_____

8 would weigh in favor of granting the relief requested. At best *Sonnax* Factor 8 should be neutral or irrelevant to the Court's analysis.

Liquidators assert that the safe harbor defenses will be common among the cases, Interrogatory Responses at 11-12, but this is clearly not the case. The issue of safe harbor is not raised in the BlockFi estimation motion, *In re BlockFi Inc.*, Case No. 22-19361, ECF No. 1346, and 3AC conceded in its Interrogatory Responses that there is no active litigation involving 3AC's claims in the FTX and Celsius cases. Interrogatory Responses at 10. Therefore, whether any of those parties has a factual basis to assert safe harbor defenses and, if so, whether they will make such arguments is purely speculative and should not be relied upon by this Court. Further, it is worth noting that the total value of the 3AC claims across the Celsius, FTX, and BlockFi proceedings is under $500 million – less than half the value of the asserted 3AC Claims in this case. *See* Interrogatory Responses at 12.

56.    Consequently, 3AC's purported goals cannot be accomplished merely by lifting the stay in these Chapter 11 Cases when claims that, 3AC asserts could be analogous to the 3AC Claims, will proceed in other chapter 11 cases absent lift stay relief being granted or even sought at some future date (or at least in the case of FTX where no motion for relief from the stay is even something that 3AC contemplates bringing). Interrogatory Responses at 9. 3AC's inconsistent approach hints at 3AC's true motivation for filing this Lift Stay Motion shockingly late in these Chapter 11 Cases — to avoid or delay adjudication of the 3AC Claims as long as possible. Indeed, 3AC admits that it filed the Lift Stay Motion in this Court to gain relief from the Debtors' proposed schedule (although the parties have since come to an agreement on scheduling, *see* ECF No. 659), and has filed a substantially similar motion in the BlockFi Chapter 11 cases because they are facing an unfavorable estimation motion that values 3AC's claims at $0. *See* Mot. ¶ 18. Further, because of 3AC's inconsistency in presenting two alternative fora for resolution of its claims in the two motions that it has filed, 3AC has created a situation where this Court and the BlockFi court could, if relief were

27

granted at all, decide that claims should nonetheless proceed in competing fora. Given this posture, lifting the stay in these cases at this time would not provide any assurance that the purported "core legal and factual issues" will actually be resolved in a single forum.

57.     In any event, prosecution of the 3AC Claims in the BVI Court would be contrary to the interest of judicial economy by requiring that the Debtors both pursue litigation in the BVI, and incur the associated additional costs, and then be forced to return to this Court before full resolution of the issues can achieved. *See supra* Sections B.(i), B.(ii) and B.(v). Nor has 3AC substantiated why either the BVI Court or the Ch. 15 Court has any greater interest than this Court in resolving the 3AC Claims. The 3AC Claims, as alleged, represent a large portion of the Debtors' estates and are not "ancillary" to these Chapter 11 Cases, but are equally, if not more, "central" and "case-altering" for the Debtors' creditors as they may be in the BVI Proceeding or the Ch. 15 Proceeding. *See* Mot. ¶ 41. Indeed, the Lift Stay Motion further ignores the fact that, by filing the 3AC Claims in this Court, it submitted itself to this Court's jurisdiction to resolve such claims, a process that is central to the Debtors' Chapter 11 Cases. *See In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389 (2d Cir. 1990); *see also In re CBI Holding Co.*, Inc., 529 F.3d 432, 466 (2d Cir. 2008) ("Filing a proof of claim against a bankruptcy estate triggers the process of 'allowance and disallowance of claims,' and, therefore, a creditor who files such a claim subjects itself to the bankruptcy court's equitable jurisdiction in proceedings affecting that claim.") (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989)). The filing of claims "invokes the special rules of bankruptcy concerning objections to the claim [and] estimation of the claim for allowance purposes." *In re Manville*, 896 F.2d at 1389–90 (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). "[N]othing is more directly at the core of bankruptcy administration . . . than the quantification of all liabilities of the debtor [making] the bankruptcy court's determination whether to allow or disallow a claim . .

. a core function." *In re S.G. Phillips Constructors., Inc.*, 45 F.3d 702, 705 (2d Cir. 1995) (internal quotations omitted).

> **x.** **The 3AC Claims Are Not Yet Ready for Trial in Either the BVI Court Nor the Ch. 15 Court (*Sonnax* Factor 11)**

58.    The eleventh *Sonnax* Factor weighs in favor of maintaining the stay because 3AC cannot credibly argue that the 3AC Claims are "ready for trial" in a forum other than this Court. This factor is aimed at addressing situations where a prepetition proceeding was on the verge of trial prior to the filing of a bankruptcy petition; not, as here, where a party would simply prefer to start anew in a different forum after pre-trial proceedings have begun in a bankruptcy court (or where a prepetition litigation has not proceeded beyond its initial stages, as is the case of the lawsuit 3AC commenced against the Debtors in the BVI in November 2022, which was voluntarily stayed at 3AC's request shortly thereafter). *See, e.g.*, *In re Residential Cap., LLC*, 2012 WL 3555584, at *3 (holding that the eleventh *Sonnax* Factor weighed against lifting the stay where "[t]he [litigation for which stay relief was sought] is in its early stages. Discovery, trial preparation and, absent a settlement, trial all remain to be done."); *In re Motors Liquidation Co.*, 2010 WL 4630327, at *4 (finding that the eleventh *Sonnax* Factor favored maintaining the stay where "the dispositive motions filed in the ERISA suit were pending for over a year before the automatic stay came into effect, hardly an indication that the case was ready for trial").[26]

> **xi.** **The Balance of Harms Weighs Against Lifting the Automatic Stay (*Sonnax* Factor 12)**

59.    The final *Sonnax* Factor, the balance of the harms, heavily favors maintaining the stay. As discussed, *see supra* Section B.(ii), lifting the stay will undermine the Debtors' restructuring

---

[26]    As noted above, while at least some of the 3AC Claims were initiated in the BVI – a fact that the Joint Liquidators chose not to share with this Court – 3AC itself voluntarily stayed that action and fails to explain whether they would intend to amend that Complaint (which has only partial overlap with the 3AC Claims) or simply begin anew.

process and will severely prejudice the Debtors and their creditors. *See In re Motors Liquidation Co.*, 2010 WL 4630327, at *4 (affirming decision denying motion to lift stay where lifting the stay "would force [debtor] to expend estate resources" and thereby harm the debtor and its creditors); *In re Residential Cap., LLC*, 2012 WL 3555584, at *5 (same). On the other hand, 3AC fails to establish that it would suffer a comparatively greater harm. 3AC purports that it will suffer prejudice unless the stay is lifted because it (1) would be "forced to expend their estate's resources in the pursuit of analogous claims and litigation of many of similar issues before multiple courts" and (2) its creditors "may lose the ability to be heard" on the 3AC Claims should they proceed in this Court. 3AC's arguments fail for a number of reasons: (1) the relief requested in this Lift Stay Motion would not assure avoidance of multidistrict litigation (*see supra* Section B.(x)); (2) 3AC waited eight months after the filing of Debtors' petition (not to mention nearly four months after the Bar Date and nearly two months after the filing of the 3AC Objection) to file this Lift Stay Motion after already expending significant costs, and forcing the Debtors to incur significant costs, in objections and Lift Stay Motion practice surrounding the 3AC Claims; (3) 3AC is obligated to advance the interests of its creditors regardless of the forum; (4) 3AC's estate and its creditors will benefit from swifter resolution of the 3AC Claims in this Court; and (5) 3AC has already submitted to the jurisdiction of this Court to address the 3AC Claims. *See supra* Section B.(x). In addition, 3AC does not explain why its creditors' right to be heard on 3AC's affirmative claims against the Debtors is an important consideration or why 3AC cannot seek its creditors' views of the 3AC Claims and how to progress them regardless of the forum where they are litigated.

## **CONCLUSION**

60.     For the foregoing reasons, the Debtors respectfully request that the Court deny the

Lift Stay Motion with prejudice and grant the Objection.

Dated:  September 19, 2023              */s/ Luke A. Barefoot*
       New York, New York               CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                Sean A. O'Neal
                                Luke A. Barefoot
                                Jane VanLare
                                One Liberty Plaza
                                New York, New York 1006
                                Telephone: (212) 225-2000
                                Facsimile: (212) 225-3999

                                *Counsel to the Debtors and Debtors-in-Possession*

## **Exhibit A**

3AC Interrogatory Responses

Christopher Harris
Adam J. Goldberg
Brett M. Neve
Nacif Taousse
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:   christopher.harris@lw.com
         adam.goldberg@lw.com
         brett.neve@lw.com
         nacif.taousse@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
Emily R. Orman (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (424) 653-5500
Facsimile: (424) 653-5501
Email:   nima.mohebbi@lw.com
         tiffany.ikeda@lw.com
         emily.orman@lw.com

*Counsel to the Foreign Representatives
of Three Arrows Capital, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>*Genesis Global Capital LLC, et al.*,<br>Debtors. | Chapter 11<br>Case No.: 23-10063 (SHL)<br>Jointly Administered |

**FOREIGN REPRESENTATIVES OF THREE ARROWS CAPITAL, LTD.'S
RESPONSES AND OBJECTIONS TO DEBTORS' REQUESTS FOR ADMISSION AND
INTERROGATORIES REGARDING THE FOREIGN REPRESENTATIVES' MOTION
FOR ENTRY OF AN ORDER (I) MODIFYING THE AUTOMATIC STAY PURSUANT
TO 11 U.S.C. 362(D)(1) AND BANKRUPTCY RULE 4001 AND (II)  GRANTING
RELATED RELIEF**

Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized

foreign representative (the "Foreign Representative") of Three Arrows Capital, Ltd. ("Three

Arrows"), by and through their undersigned counsel, hereby submit the following responses and

objections (the "Responses and Objections") to *The Debtors' Requests For Admission and

Interrogatories Pursuant to Bankruptcy Rule 9014 In Connection with the Motion of the Foreign

Representatives of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic

Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief*,

submitted by the Debtors, dated September 7, 2023 (the "Requests").

## PRELIMINARY STATEMENT

The following Responses and Objections are made solely for purposes of these proceedings and are based upon the facts, documents, and information presently known and available to the Foreign Representatives.

Without obligating themselves to do so, the Foreign Representatives reserve the right to alter, supplement, amend, or otherwise modify these Responses and Objections as additional facts or documents are discovered, revealed, recalled, or otherwise ascertained, and as further analysis, research, investigation, and discovery disclose additional facts, documents, contentions, or legal theories which may apply. The Foreign Representatives specifically reserve the right to utilize any subsequently discovered documents or evidence in the Debtors' Chapter 11 cases.

## GENERAL OBJECTIONS

In addition to those grounds for objection that are set forth specifically in response to each Request, the Foreign Representatives object to the Requests[1] subject to the following general objections (including the objections to Definitions and Instructions set forth herein) (together the "General Objections"). The General Objections are incorporated into each specific response set forth below. Certain General Objections may be specifically repeated in individual responses for purposes of emphasis. Failure to reference a General Objection in a specific response, however, is not a waiver of any General Objections. The Foreign Representatives' specific responses and objections to the Requests incorporate, and are to be read in light of, these General Objections. Any undertaking to search for, or provide information or documents in response to, any Request remains subject to the General Objections.

---

[1] For the purposes of the General Objections, the term Requests refers to both the Requests for Admission and the Interrogatories.

2

1.      The Foreign Representatives generally object to each Request to the extent it seeks to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure and the Local Rules.  The Foreign Representatives will comply with their obligations under these Rules.

2.      The Foreign Representatives object to each Request to the extent it seeks information that is not relevant to the subject matter of this action or is not reasonably calculated to lead to the discovery of admissible evidence.  By responding to these Requests, the Foreign Representatives do not concede the relevance, materiality, or admissibility of any of the information sought for use as evidence in any proceeding.  The Foreign Representatives provide their responses subject to and without waiving any objections as to relevance, materiality, or admissibility.  The Foreign Representatives expressly reserve the right to object to further discovery on the subject matters of these Requests.

3.      The Foreign Representatives object to the Requests to the extent that they effectively constitute interrogatories seeking ultimate contentions and conclusions of fact and law, which are improper under Local Civil Rule 33.3 of the Local Rules.

4.      The Foreign Representatives object to each Request to the extent it is overly broad, unduly burdensome, vague, ambiguous, harassing and vexatious, and/or oppressive and irrelevant.

5.      The Foreign Representatives generally object to each Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product protection, common interest, joint defense, or any other applicable privileges, rules, doctrines, or immunities, whether created by statute or common law.  The Foreign Representatives further object to each Request to the extent that it seeks information prepared in anticipation of litigation or for trial in this or any matter and/or that is subject to protection under Federal Rule of Civil

Procedure 26(b)(4)(B).  The Foreign Representatives will provide responses that they believe are non-privileged and are otherwise properly discoverable.  By providing such information, the Foreign Representatives do not waive any privileges.

6.      The Foreign Representatives object to each Request to the extent that it improperly depends upon or seeks legal conclusions or opinions of law that the Foreign Representatives are not qualified to provide.

7.      The Foreign Representatives do not admit, adopt, or acquiesce to any factual or legal contention, assertion, assumption, characterization, or implication contained in the Requests. Any use of the Definitions contained in the Requests by the Foreign Representatives for the purposes of responding to a Request does not constitute a waiver of this or any other objection.

8.      The Foreign Representatives object to each Request to the extent that it assumes facts that do not exist or the occurrence of facts that did not take place.  In furnishing the responses herein, the Foreign Representatives do not concede the truth of any assertion or implication contained in any of the Requests.

9.      The Foreign Representatives object to each Request to the extent that it fails to specify any relevant time period for the information requested.

10.     The Foreign Representatives object to each Request to the extent that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

11.     The Foreign Representatives object to each Request to the extent it is vague, ambiguous, and contains terms that are not defined and/or are susceptible to multiple interpretations.

4

12.     The Foreign Representatives object to each Request to the extent it seeks information that is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.  *See* Fed. R. Civ. P. 26(b)(2)(ii) (made applicable to requests for admission by Fed. R. Civ. P. 36(a)(1)).   The Foreign Representatives object to each Request to the extent it seeks information that can more practically be obtained from requests for production.

13.     The Foreign Representatives provide the following objections and responses without waiving its right to produce evidence at trial, or in any other proceedings in this action, of any subsequently-ascertained facts.  The Foreign Representatives provide these objections and responses without admitting or waiving objections to the materiality, relevance, or admissibility in evidence of the matters set forth herein.

## OBJECTIONS AND RESPONSES TO DEFINITIONS AND INSTRUCTIONS

1.     The Foreign Representatives object to the definitions of "3AC" and "You" to the extent they seek to require the Foreign Representatives to answer on Three Arrows's behalf.  They were not parties to the agreements between Three Arrows and Genesis, as defined by the Requests, and do not have the first-hand knowledge required to respond to certain Requests.   Thus, the Foreign Representatives respond below only on the basis of information gathered through discovery to date.

2.     The Foreign Representatives object to the definition of "Amended Poc Assets" on the grounds that the definition is vague and ambiguous.  While the definition cites to the *Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*, that citation states that the "Amended PoC Assets" are the "assets subject to the Amended PoCs," it is unclear what "subject to" means in this context and which assets the Debtors have interpreted as being "subject to" the Amended

5

PoCs.   Thus, the Foreign Representatives object on the grounds that the definition is not sufficiently precise in the context of the Requests.

3.      Notwithstanding the foregoing, the Foreign Representatives additionally object to the Definition of any term that renders the term's meaning vague, ambiguous, and/or overly broad, including any terms where the Foreign Representatives have no reasonable basis to know the full scope of the Debtors' intended meaning.   The Foreign Representatives will make a reasonable interpretation of such terms in their discretion.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST NO. 1:**

Admit that, for claims asserted under both U.S. Law and under BVI Law, New York Law governs the validity of security interests pledged by 3AC in the Amended PoC Assets.

**RESPONSE TO REQUEST NO. 1:**

The applicable foregoing General Objections are incorporated into each of the specific objections and responses that follow.   Responding to a Request or Interrogatory shall not be construed as a waiver of the Foreign Representatives' General Objections.   The Foreign Representatives object to this Request on the grounds that it is vague and ambiguous, specifically with respect to the terms "security interests," "pledged" and "Amended PoC Assets."   The Foreign Representatives further object to this Request on the grounds that it improperly calls for a legal conclusion with respect to the phrase "governs the validity of security interests."   The Foreign Representatives also object to this Request on the grounds that it assumes legal and factual predicates.   The Foreign Representatives further object to this Request on the grounds that it is premature to the extent that it asks for information from anticipated testimony of expert witnesses, or information that is subject to expert analysis.   Subject to and without waiving the foregoing objections, the Foreign Representatives respond as follows:

6

Admitted that New York Law governs the validity of security interests purportedly pledged by 3AC for claims asserted under both U.S. and BVI Law in 3AC's amended proofs of claims, to the extent that such security interests are governed by the 2019 MLA[2] and 2020 MLA[3] and such agreements are enforceable.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify (1) all counterparties, other than the Debtors, to "analogous claims 3AC has against other counterparties involving common questions of fact and law" (the "Analogous Claims"), Lift Stay Motion ¶ 5; (2) the status of all Analogous Claims, including (i) the forum in which the Analogous Claims have been or will be filed, (ii) the procedural posture of any litigation related to the Analogous Claims, and (iii) the date on which any statute of limitations will run for each of the Analogous Claims; (3) what "common questions of fact and law" exist between each of the Analogous Claims and the 3AC Claims; and (4) the amount claimed or asserted in each of the Analogous Claims.

### RESPONSE TO INTERROGATORY NO. 1:

The Foreign Representatives object to this Interrogatory on the grounds that it is improperly compound and assumes legal or factual predicates. The Foreign Representatives also object to the Interrogatory, insofar as it is vague, ambiguous, and unclear, particularly as to the term "Analogous

---

[2] "2019 MLA" means the Master Loan Agreement and related pledge agreements between 3AC and GGC entered into in January 2019, as defined in *The Debtors' Requests For Admission Pursuant to Bankruptcy Rule 9014 In Connection with The Debtors' First Omnibus Objection (Substantive) to Claims Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*.

[3] "2020 MLA" means the Master Loan Agreement and related pledge agreements between 3AC and GAP entered into in January 2020, as defined in *The Debtors' Requests For Admission Pursuant to Bankruptcy Rule 9014 In Connection with The Debtors' First Omnibus Objection (Substantive) to Claims Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*.

Claims." The Foreign Representatives will make a reasonable interpretation of the term and respond on that basis. The Foreign Representatives further object to this Interrogatory on the grounds that it improperly calls for a legal conclusion. The Foreign Representatives further object to this Interrogatory on the grounds that it is premature to the extent that it asks for information from anticipated testimony of expert witnesses, or information that is subject to expert analysis. Subject to and without waiving the foregoing objections, the Foreign Representatives respond to each part of this Interrogatory as follows:

1. **<u>Counterparties/Claims</u>**[4]

**<u>BlockFi.</u>** On September 14, 2023, 3AC filed amended proofs of claim against BlockFi Inc. and its debtor affiliates (collectively, "<u>BlockFi</u>") asserting claims based on Section 245 of the BVI Insolvency Act of 2003 (the "<u>BVI Insolvency Act</u>") and Section 547 of the U.S. Bankruptcy Code (the "<u>Bankruptcy Code</u>") to (i) to avoid preferential transfers to BlockFi made by 3AC while it was insolvent, and (ii) for repayment of loans made by 3AC to BlockFi.

**<u>Celsius.</u>** On December 30, 2022 3AC filed a proof of claim against Celsius Network LLC and its debtor affiliates (collectively, "<u>Celsius</u>"). 3AC intends to seek relief from the automatic stay in Celsius's Chapter 11 proceeding to exercise setoff rights preserved under Section 533 of the Bankruptcy Code and the Fourth Amended Plan of Reorganization filed by Celsius. Leave to setoff will be sought in an amount equal to the preferential transfer that Celsius received prior to the commencement of its Chapter 11 proceeding, with that setoff to be effected in the context of the claim resolution process that will occur before the BVI court.

**<u>FTX.</u>** One June 30, 2023, 3AC filed a proof of claim against FTX Trading Ltd. and its

---

[4] In addition to the claims described herein, the Foreign Representatives intend to assert additional claims in a future Chapter 11 proceeding and are pursuing sanction to do so in the BVI.

debtor affiliates (collectively, "FTX") asserting claims under BVI, New York, Delaware, and other applicable law, including claims in the nature of preference, conversion, turnover, and other avoidance actions, arising from a purported foreclosure by FTX on collateral securing an approximately $120 million purported loan that 3AC owed to FTX as of June 1, 2022.

The Foreign Representatives' investigation is ongoing, and as such, claims against other parties may be identified in addition to the foregoing counterparties.

### 2. Status of Claims

#### i. *Forum*

**BlockFi.**  3AC's claims against BlockFi are pending in its Chapter 11 proceeding in the U.S. Bankruptcy Court for the District of New Jersey before Judge Michael B. Kaplan.  On September 13, 2023, 3AC filed a motion for relief from the automatic stay in BlockFi's Chapter 11 proceeding to liquidate 3AC's preference claims in the pending liquidation proceeding of 3AC in the BVI or, in the alternative, in the Chapter 15 case pending before the U.S. Bankruptcy Court for the Southern District of New York before Chief Judge Martin Glenn.

**Celsius.**  3AC intends to seek relief from the automatic stay in Celsius's Chapter 11 proceeding pending before the U.S. Bankruptcy Court for the Southern District of New York before Chief Judge Martin Glenn.

**FTX.**  3AC's claims against FTX are pending in its Chapter 11 proceeding in the U.S. Bankruptcy Court for the District of Delaware before Judge Jennifer A. Dorsey.

#### ii. *Procedural Posture*

**BlockFi.**  BlockFi filed a motion to estimate the amount of 3AC's claims [Dkt. 1346 – 22-19361-MBK] on August 11, 2023, and an objection to 3AC's proof of claim [Dkt. 1375 – 22-19361-MBK] on August 21, 2023.   3AC filed an objection to BlockFi's  estimation motion and a

9

response to the claim objection [Dkt. 1484 – 22-19361-MBK] and a motion for relief from the automatic stay [Dkt. 1492 – 22-19361-MBK] on September 13, 2023.  On September 13, 2023, BlockFi filed a motion to quash 3AC's deposition notices and request for a protective order [Dkt. 1490 – 22-19361-MK], and the hearing on that motion has been continued to October 10, 2023. The parties have a status conference scheduled with the court on September 20, 2023 to discuss a schedule on BlockFi's estimation motion and claims objection.  3AC's motion for relief from the automatic stay has been scheduled for hearing on October 10, 2023.

**Celsius.**  There is presently no active litigation related to 3AC's claim.

**FTX.**  There is presently no active litigation related to 3AC's claim.

### iii.     *Statute of Limitations*

**BlockFi.**  For 3AC's U.S.-based preference claims against BlockFi, Section 546(a) of the Bankruptcy Code governs the applicable statute of limitations, which is inapplicable because 3AC asserted the claims well before the limitation period has even begun to run.  11 U.S.C. § 546(a). 3AC's BVI-based preference claims against BlockFi are governed by Section 245 of the BVI Insolvency Act.  Insolvency Act (as amended), S.I. 47/2004, § 245(1).  Section 4(3) of the BVI Limitation Act of 1961 (the "BVI Limitation Act") provides that an action upon a specialty must be brought within twelve years from the date on which the cause of action accrued.  Limitation Ordinance (as amended), S.I. 20/1961, S.I. 33/1961 § 4(3).  3AC has asserted its BVI-based claims against BlockFi within this time period.

**Celsius.**  Under BVI law, 3AC's claims against Celsius are governed by Section 245 of the BVI Insolvency Act.  Insolvency Act (as amended), S.I. 47/2004, § 245(1).  3AC filed its proof of claim within the limitation period, which has not yet expired.  Limitation Ordinance (as amended), S.I. 20/1961, S.I. 33/1961 § 4(3).

**FTX.** Section 546(a) of the Bankruptcy Code governs the statute of limitations applicable to the U.S. preference claims against FTX, and 3AC filed its proof of claim before the limitations period has begun to run. 11 U.S.C. § 546(a). 3AC's BVI-based preference and avoidance claims are governed by Section 245 of the BVI Insolvency Act. Insolvency Act (as amended), S.I. 47/2004, § 245(1). 3AC filed its proof of claims against FTX well within the twelve-year period dictated by Section 4(3) of the BVI Limitation Act. Limitation Ordinance (as amended), S.I. 20/1961, S.I. 33/1961 § 4(3).

3AC's U.S.-based conversion claims are subject to statutes of limitations requiring that claims must be filed within three years from the time of injury, and 3AC asserted the claims well within this range of time. N.Y. CPLR § 214(3); 10 Del. C. § 8106(a).

3AC's U.S.-based turnover claims are governed by Section 542 of the Bankruptcy Code, and not subject to any statute of limitations. 5 Collier on Bankruptcy P. 542.01 (16th 2019) ("Section 542 does not impose a statute of limitations on turnover claims.").

Under BVI law, 3AC's turnover claims are governed by Section 274(a) of the BVI Insolvency Act. Insolvency Act (as amended), S.I. 47/2004, § 274(a). 3AC filed its proof of claims against FTX well within the twelve-year limitation period. Limitation Ordinance (as amended), S.I. 20/1961, S.I. 33/1961 § 4(3).

### 3. Common Questions of Law and Fact

One common issue of law and fact between all of the foregoing claims is the critical question of when 3AC became insolvent. Further, while the claims are predicated on differing factual circumstances, the Foreign Representatives have asserted preference claims against each of the aforementioned counterparties. The applicability of the Bankruptcy Code's safe harbor provisions to 3AC's various claims against the aforementioned (and potentially other)

counterparties is also an issue of law and fact that is likely to be common across the claims at issue. The Foreign Representatives intend to file additional proofs of claim, which may include claims of a similar nature to the claims filed against Genesis, against other parties as further claims are discovered in the course of their investigation.

### 4. <u>Amount</u>

**<u>BlockFi.</u>**  3AC's claims asserted against BlockFi are valued at least approximately at $283 million, of which at least approximately $273 million are preference claims.

**<u>Celsius.</u>**  3AC's claims asserted against Celsius are valued at least approximately at $65 million.

**<u>FTX.</u>**  3AC's claims asserted against FTX are valued at least approximately at $120 million.

*[Remainder of Page Left Intentionally Blank]*

Dated: September 18, 2023
Los Angeles, California

Respectfully submitted,

/s/ Nima H. Mohebbi
Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
Emily R. Orman (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:   nima.mohebbi@lw.com
            tiffany.ikeda@lw.com
            emily.orman@lw.com

– and –
Adam J. Goldberg
Christopher Harris
Brett M. Neve
Nacif Taousse
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:   adam.goldberg@lw.com
            christopher.harris@lw.com
            brett.neve@lw.com
            nacif.taousse@lw.com

## **VERIFICATION**

I, Russell Crumpler, declare and state:

I am a Senior Managing Director of Teneo (BVI) Limited ("Teneo") in the British Virgin Islands ("BVI").  I, along with my colleague Christopher Farmer (also of Teneo) (collectively, the "Foreign Representatives"), have been appointed as joint liquidators of Three Arrows Capital, Ltd. ("Three Arrows" or "3AC").   I am authorized to make this verification for and on behalf of the Foreign Representatives, and I make this verification for that reason.

I have read the foregoing Foreign Representatives' Responses and Objections to the Debtors' Interrogatories Regarding the Foreign Representatives' Motion for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief  (the "Responses"), and know the contents thereof.  The Foreign Representatives' Responses were prepared with the assistance of counsel, and while I may not have personal knowledge of all of the information contained in the Responses, they are hereby verified on behalf of the Foreign Representatives.  The Responses are based upon and necessarily limited by information presently recollected and thus far discovered in the course of the preparation of the Responses.  Consequently, the Foreign Representatives reserve the right to change or supplement its Responses based on further investigation, and/or to seek relief to permit insertion of unintentionally omitted matter.  Subject to the limitations set forth herein, said Responses are true to the best of my knowledge, information, and belief.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct, and that this Verification was executed in Tortola, British Virgin Islands, this 15th day of September, 2023.

14

_/s/ Russell Crumpler_____
Russell Crumpler
Senior Managing Director of Teneo (BVI) Limited
Foreign Representative of Three Arrows Capital, Ltd.