Hearing Date and Time:  September 26, 2023 at 4:00 a.m. (Prevailing Eastern Time)
Objection Deadline:  September 19, 2023 at 4:00 p.m. (Prevailing Eastern Time)

**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
Colin T. West
Michele J. Meises
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113

– and –

Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606-4302
Telephone: (312) 881-5400
Facsimile: (305) 881-5450

– and –

Amanda Parra Criste (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

*Counsel to Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> Genesis Global Holdco, LLC, *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No.:  23-10063 (SHL) <br><br> Jointly Administered <br><br> **Re: Docket No. 678, 720** |

**JOINDER AND RESERVATION OF RIGHTS OF
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO DEBTORS' OBJECTION TO THE MOTION OF THE FOREIGN
REPRESENTATIVES OF THREE ARROWS CAPITAL, LTD. FOR
ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY
PURSUANT TO 11 U.S.C. 362(d)(1) AND BANKRUPTCY RULE 4001**

---

[1]    The Debtors in these chapter 11 cases along with the last four digits of each Debtor's tax identification number (as applicable) are as follows:  Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these chapter 11 cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") respectfully submits this Joinder and Reservation of Rights to the *Debtors' Objection* (the "**Objection**") *to the Motion* (the "**Motion**") *of the Foreign Representatives of Three Arrows Capital, Ltd.* ("**3AC**") *for an Order Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001* [Docket No. 720]. In support of this Joinder and Reservation of Rights, the Committee respectfully states as follows:

1. 3AC has closely observed these cases since their inception.[2] Thus, it is well aware that moving as quickly as possible toward actual distributions is critical to Genesis's creditors. It is also well aware that the creditors' fiduciaries in these cases have accordingly been guided by that objective in their decision-making. Yet, while the case has unfolded over the last eight months, 3AC has been watching and, apparently, waiting until the last possible moment to reveal its plan to seek to lift the automatic stay and prevent a prompt resolution of its claims before this Court.

2. On May 22, 2023, 3AC filed its first series of proofs of claim. On July 19, 2023, the Debtors objected to the proofs of claim, in part on the basis that they were insufficiently pleaded. On August 1, 2023, 3AC submitted a nine-page letter requesting relief from *this Court* – namely, that it be permitted to conduct extensive discovery (to be supervised by *this Court*) prior to amending its proofs of claim, and that any such amendment would be a "free amendment," exempt from the relation back rules embodied in Rule 15. On August 18, 2023, 3AC filed its amended proofs of claims in these cases. Consistent with the overall goal of speed with respect to

---

[2] For example, on June 4, 2023, 3AC filed its Objection to the Proposed Mediation Extension Order. [Docket No. 391]

2

these cases generally and the 3AC claims specifically, just twelve days later, on September 1, 2023, the Debtors filed their detailed, 88-page amended objection. The amended objection was supported by four separate expert declarations. Around this time, the Debtors and 3AC were also negotiating over a schedule for discovery and trial in *this Court*, which led to a September 6, 2023 hearing in this Court to resolve the competing proposed schedules. Yet, while all of this was taking place, 3AC never informed the Court of its intention to move to lift the stay to have its claims litigated in another forum.

3. It was only **hours** before the September 6 hearing to address the discovery and trial schedule that 3AC filed its Motion and finally revealed to the Court its intention to switch fora. If successful, 3AC's Motion would bring the litigation over its claims to a grinding halt and impede timely and sizeable distributions to Genesis's creditors. That will undoubtedly be the case if these claims are sent to the BVI, where the 3AC liquidation proceeding has lagged for fifteen months with no end in sight and where the timeline for the resolution of these claims is a complete unknown. It will also be the case if the claims are sent to be litigated in 3AC's chapter 15 proceedings before Judge Glenn, who understandably lacks the familiarity with the claims at issue that this Court has gained and who has to manage his own calendar, which will not necessarily be aligned with the needs of these cases.

4. Because 3AC knows all this, it is difficult to see 3AC's Motion as anything more than a belated forum-shopping tactic designed to leverage the Genesis creditors' needs to receive distributions without further delay.

5. The content of the Motion itself does not dispel the Committee's suppositions. The cornerstone of the Motion is that litigation in multiple fora may lead to inconsistent outcomes across 3AC's various claims against Genesis and certain other debtors in bankruptcy, especially

3

on the issue of when 3AC became insolvent.  But 3AC's insolvency date has always been known to be a key issue given the nature of its claims.  If this were truly an important concern, 3AC should have sought to lift the stay on that basis immediately after these cases were filed, and in any event far earlier than September 6.  Similarly, 3AC could have timely sought to lift the stay in the other cases which it cites in support of the need for centralization, but has yet to even do so in two of those cases, and in discovery responses, suggests it has no intention of doing so in one of them.  In its Motion, 3AC does not even attempt to explain why it waited so long to file the Motion based on issues that have been known to 3AC for months or longer, during which time 3AC actively participated in these proceedings and sought various forms of relief from this Court.

6. Nor does 3AC deny that its Motion, if successful, would materially delay meaningful distributions to creditors in these cases.  To the contrary, 3AC acknowledges that, if the Motion were successful, the Debtors would be forced to hold back a reserve while the dispute over 3AC's claims is pending.  Almost tauntingly, 3AC cites as its model the *Voyager* case, where $445 million in assets was reserved for a single creditor.  *See* Motion at 18-19.  3AC knows that such an outcome is unacceptable to Genesis creditors and could destroy the fragile negotiations toward a confirmable plan.  Significantly, given the in-kind distribution feature of the Plan on file, reserving consideration to pay the 3AC claim, which is denominated in U.S. Dollars, would disproportionately prejudice holders of U.S. Dollar-denominated claims and thereby threaten to upset the fragile peace that has been forged.

7. Indeed, one of the guiding principles for the Committee from the outset of this case has been velocity of distributions.  *See* Feb. 22, 2023, Hr'g. Tr. at 41, 47.  For example, as the Committee has noted, one of the key benefits of the FTX settlement was avoiding "the risk that certain issues related to these claims would be litigated in the Delaware Bankruptcy Court under a

4

prolonged timeline out of sync with these chapter 11 cases" and the potential need to "reserve significant liquid funds to satisfy any future judgment after plan confirmation." *See Statement and Reservation of Rights of the Official Committee of Unsecured Creditors with Respect to Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement with FTX Debtors* [Docket No. 671] at ¶¶ 2, 6. Similarly, when the deal in principle with DCG was announced, the Committee noted that the timing of distributions was a key consideration. *See* Sept. 6, 2023 Hr'g. Tr. at 77. Were 3AC's Motion to be granted, and a significant reserve held back from creditors for a lengthy, indeterminate period, the rationale underpinning those achievements would be substantially undermined.

8. Moreover, significant estate resources have already been expended toward resolving 3AC's claims in this Court. This includes two lengthy objections filed by the Debtors, one of which was necessitated by 3AC's deficient proofs of claim. It also includes the Debtors' four expert declarations, the continued applicability of which would be unclear if the Motion were granted. Document discovery has commenced. The Court has already set a discovery schedule, consistent with its stated goal of promptly resolving the claims in this Court. That is exactly what should happen. And, as set forth in the Debtors' Objection, 3AC's Motion provides no basis to find otherwise.

9. For all of these reasons, and for the reasons stated in the Objection, the Committee joins in the Debtors' arguments in support of the Objection. The Committee further expressly reserves all rights related to the Motion and Objection. The Committee further reserves the right to supplement or amend this Joinder and Reservation of Rights and to present evidence at the hearing to consider the Motion, whether as a result of ongoing discovery or otherwise.

WHEREFORE, the Committee respectfully requests that the Court (i) deny the Motion, (ii)

sustain the Objection, and (iii) grant the Committee such other and further relief as is just, proper, and equitable.

| | |
|---|---|
| Dated: September 19, 2023<br>New York, New York | Respectfully submitted,<br><br>By: *J. Christopher Shore*<br>**WHITE & CASE LLP**<br>J. Christopher Shore<br>Philip Abelson<br>Colin T. West<br>Michele J. Meises<br>Sequoia Kaul<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>E-mail: cshore@whitecase.com<br>philip.abelson@whitecase.com<br>cwest@whitecase.com<br>michele.meises@whitecase.com<br>sequoia.kaul@whitecase.com<br><br>– and –<br><br>Gregory F. Pesce (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, IL 60606-4302<br>Telephone: (312) 881-5400<br>Facsimile: (305) 881-5450<br>E-mail: gregory.pesce@whitecase.com<br><br>– and –<br><br>Amanda Parra Criste (admitted *pro hac vice*)<br>200 South Biscayne Boulevard, Suite 4900<br>Miami, FL 33131<br>Telephone: (305) 371-2700<br>Facsimile: (305) 358-5744<br>E-mail: aparracriste@whitecase.com<br><br>*Counsel to Official Committee of Unsecured Creditors* |