# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

| AMERICAS | ASIA | EUROPE & MIDDLE EAST | |
|---|---|---|---|
| NEW YORK | BEIJING | ABU DHABI | LONDON |
| SAN FRANCISCO | HONG KONG | BRUSSELS | MILAN |
| SÃO PAULO | SEOUL | COLOGNE | PARIS |
| SILICON VALLEY | | FRANKFURT | ROME |
| WASHINGTON, D.C. | | | |

CRAIG B. BROD
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
DAVID H. BOTTER
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
ALAN M. LEVINE
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
DEBORAH NORTH
MATTHEW P. SALERNO
MICHAEL J. ALBANO

VICTOR L. HOU
ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
AUDRY X. CASUSOL
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOHN A. KUPIEC
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS

LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
JULIA L. PETTY
HELENA K. GRANNIS
SUSANNA E. PARKER
THOMAS S. KESSLER
    RESIDENT PARTNERS

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
HEIDE H. ILGENFRITZ
ANDREW WEAVER
JOHN V. HARRISON
MATTHEW BRIGHAM
EMILIO MINVIELLE
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
BRIAN J. MORRIS
CARINA S. WALLANCE
ALEXANDER JANGHORBANI
    RESIDENT COUNSEL

D: +1 212-225-2829
lbarefoot@cgsh.com

September 21, 2023

**VIA ECF**

Hon. Sean H. Lane
United States Bankruptcy Court for the Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re:    *In re Genesis Global Holdco, LLC, et al.*, Case No. 23-10063 (SHL)
       (Jointly Administered)

Dear Judge Lane,

We write on behalf of the Debtors in the above-captioned proceedings (the "Chapter 11 Cases") in response to the Court's request at the September 18, 2023 evidentiary hearing (the "Hearing") regarding the *Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement with FTX Debtors* (ECF No. 603) (the "9019 Motion")[1] that the Debtors consider whether to submit additional record evidence that has been redacted for privilege in support of the 9019 Motion to the Court for *in camera* review.

The Debtors have considered the Court's inquiry and determined that it would not be prudent for the Debtors to provide unredacted, privileged documents for the Court's review at this time. Although sharing such documents with the Court for *in camera* review would not risk a waiver of privilege, as the Court acknowledged,[2] the Debtors have concerns about the admissibility of documents shared only *in camera* and not with the objecting party. In addition, all documents in the Debtors' possession that might be relevant to the Court's consideration of the proposed settlement implicate issues that overlap substantially with parallel issues relevant to other disputes

---

[1]    Capitalized terms used herein but not defined shall have the meaning ascribed to them in the 9019 Motion.

[2]    *See* Hr'g Tr., *In re Genesis Global Holdco, LLC, et al.*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. Sept. 18, 2023) at 128:3-4 (the Court noting that it "would have to be the case" that the Debtors' submission of any additional documents for *in camera* review would not constitute a waiver of privilege).

Hon. Sean H. Lane, p. 2

in the Chapter 11 Cases that have yet to come before the Court. *See, e.g., Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (ECF No. 658) (containing the Debtors' objections to the claims asserted by Three Arrows Capital, Ltd., on grounds of, *inter alia*, the safe harbor defenses under 11 U.S.C. §546(e), transactions within the scope of the ordinary course of the parties business, and claims for return of collateral pledged under the terms of the Debtors' standard form of master loan agreement, all of which were central issues in the FTX estimation proceedings).[3] Because of this overlap, even disclosure to the Court of the Debtors' internal assessment of the strengths and weaknesses of the legal claims, or defenses relevant to the claims by and against the FTX Debtors, could be viewed as improper *ex parte* communications by other litigants who may be litigating similar issues. Moreover, sharing candid risk assessments intended for the Special Committee could be prejudicial to the Debtors' legal positions in various matters that may come before the Court.[4]

In addition, the Debtors remain confident that they have met their burden of establishing that their Settlement Agreement with the FTX Debtors is not below the lowest point in the range of reasonableness through the following record evidence:

- The *Declaration of A. Derar Islim in Support of the Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement with FTX Debtors* (ECF No. 603-1) explains the settlement process and the benefits of the Settlement Agreement, including that (i) under the Settlement Agreement, the Allowed FTX Claims amount to less than 5% of the asserted amount of the FTX Debtors' claims, and (ii) the Settlement Agreement allows the Debtors to avoid the uncertainty, expense, and likely protracted timeline of the litigation process that would delay distributions to the Debtors' creditors.

- The oral testimony of A. Derar Islim provided during the Hearing established, among other things, that the Debtors' management and the Special Committee considered, with the benefit of advice from seasoned restructuring professionals, the probability of success of the FTX Claims and the Genesis Debtors' claims against the FTX Debtors, each in light of the available defenses thereto, and the risks to the Debtors if the FTX.com withdrawal claims were in fact asserted against non-Debtor GGC International Ltd. ("GGCI") rather than GGC, in deciding whether to enter into the Settlement Agreement. *See* Hr'g Tr. at 77:11-14 (testifying that the Debtors considered the likelihood of success of the FTX Claims); 31:7-16 (testifying that the Debtors considered the strength of the Debtors' defenses against the FTX Claims); 71:15-25 (testifying that the Debtors considered the likelihood of success of GGC's $140 million claim against Alameda); 72:6-12 (testifying that the Debtors considered the likelihood of success of GGC's $40 million claim against Alameda); 78:13-22 (testifying that GGCI lacks sufficient funds to pay potential FTX.com withdrawal claims, and that

---

[3] *See* Letter from Brian D. Glueckstein to Hon. Sean H. Lane, re: In re Genesis Global Holdco, LLC, et al., Case No. 23-10063 (SHL) (ECF No. 475), Exhibit B (listing the Debtors' potential defenses to the FTX Claims).

[4] Moreover, the Ad Hoc Group of Genesis Creditors (the "Ad Hoc Group") stated that submission of privileged evidence for *in camera* review would not resolve their objection. *See* Hr'g Tr. 116:20-117:5.

- requiring GGCI to pay such claims to FTX.com would negatively impact GGCI's ability to repay its largest creditor, GGC).

- E-mail correspondence between counsel for the Debtors and counsel for the FTX Debtors, submitted to the Court as Exhibits 1-5 of the *Joint Exhibit List in Connection with the September 18, 2023 Hearing* (the "Joint Exhibits"),[5] demonstrates that the Settlement Agreement was reached through thoughtful, thorough, arms'-length negotiations that took place over a period of weeks between sophisticated counsel. Moreover, such correspondence also shows that the FTX Debtors' initial settlement offer would have required a reserve of more than $2 billion for an FTX claim against the Debtors, whereas the Debtors' initial offer was for a $100 million reserve; the negotiated resolution, for a $175 million unsecured claim against GGC, was an order of magnitude closer to the Debtors' initial offer than to the FTX Debtors' initial offer.

- The compiled meeting minutes of the Special Committee, submitted as Exhibit 6 of the Joint Exhibits, demonstrates that that (i) the Debtors have been discussing and considering the FTX Claims since December 2022 and (ii) the Special Committee met to consider and discuss the FTX claims no less than seven times.

- The Debtors' presentation to the Official Committee of Unsecured Creditors in the FTX Debtors' chapter 11 cases regarding the Debtors' defenses and counterclaims to the FTX Debtors' preference claims, submitted as Exhibit 8 of the Joint Exhibits, demonstrates the depth of the Debtors' analysis of the FTX Claims, the Debtors' defenses thereto, the Genesis Debtors' claims, the FTX Debtors' defenses thereto, and the strengths and weaknesses of each.

In addition to this evidence, the Ad Hoc Group itself conceded during the Hearing two key points that underscore the reasonableness of the Settlement Agreement. *First*, although they provided no evidence to support their assertions, the Ad Hoc Group took the position that they believe the value of the FTX Claims is "somewhere in the range of $150 to $200 million." *See* Hr'g Tr. At 119:3-6. *Second*, while the Ad Hoc Group argues – again without any record evidence to support their contentions – that the claims that the Debtors hold against the FTX Debtors' estates are valuable, it (i) did nothing to acknowledge the possibility and risks that ordinary-course defenses would be unavailable on the basis of a finding that the FTX Debtors were a Ponzi scheme or other fraudulent enterprise and (ii) conceded that it would be impossible at this stage to predict what the likely recoveries on the Genesis Debtors' claims in the FTX Debtors' chapter 11 proceedings will be, much less the timing and thus present value of such distributions. *See* Hr'g Tr. At 114:2-17 (counsel to the Ad Hoc Group acknowledging that "it's too early to tell" regarding, in the words of the Court, "what recovery will be available in [the] FTX [case]," about which "[w]e know nothing"). These concessions do not square with the Ad Hoc Group's contention that a full resolution of the parties' disputes for a $175 million allowed claim is below the lowest point in the range of reasonableness. If anything, the Ad Hoc Group's concessions demonstrate that the Settlement Agreement meets the standards for approval of a settlement under prevailing caselaw.

---

[5] The Joint Exhibits were submitted to the Court via e-mail on September 14, 2023, in accordance with the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 44). *See* Hr'g Tr. at 20:9-21:14.

Hon. Sean H. Lane, p. 4

      For these reasons, the Debtors respectfully submit that the evidence before the Court in support of the 9019 Motion sufficiently establishes the reasonableness of the Settlement Agreement and that submitting further privileged evidence *in camera* in support of the 9019 Motion is not prudent or necessary in these circumstances.

                                                    Respectfully submitted,

                                                    Luke A. Barefoot