| | |
|---|---|
| Christopher Harris | Nima H. Mohebbi (admitted *pro hac vice*) |
| Adam J. Goldberg | Tiffany M. Ikeda (admitted *pro hac vice*) |
| Brett M. Neve | Emily R. Orman (admitted *pro hac vice*) |
| Nacif Taousse | |
| **LATHAM & WATKINS LLP** | **LATHAM & WATKINS LLP** |
| 1271 Avenue of the Americas | 355 South Grand Avenue, Suite 100 |
| New York, NY 10020 | Los Angeles, CA 90071 |
| Telephone: (212) 906-1200 | Telephone: (213) 485-1234 |
| Facsimile: (212) 751-4864 | Facsimile: (213) 891-8763 |
| Email:  chris.harris@lw.com | Email:  nima.mohebbi@lw.com |
|   adam.goldberg@lw.com |   tiffany.ikeda @lw.com |
|   brett.neve@lw.com |   emily.orman@lw.com |
|   nacif.taousse@lw.com | |

*Counsel to the Joint Liquidators of Three Arrows Capital, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X
:
In re:                                           :      Chapter 11
:
Genesis Global Holdco, LLC, *et al.*,           :      Case No. 23-10063 (SHL)
:
:      Jointly Administered
Debtors.[1]                                      :
:      Related ECF No. 720
:
----------------------------------------------------------------X

# REPLY OF THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD. TO THE DEBTORS' OBJECTION TO THE MOTION TO MODIFY THE AUTOMATIC STAY

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

The Joint Liquidators[2] of Three Arrows Capital, Ltd. (the "**3AC Debtor**") hereby submit this reply (the "**Reply**") in support of the Motion and in response to the objections thereto filed by the Genesis Debtors (Dkt. No. 720) (the "**Objection**") and the Committee (Dkt. No. 721). In support of the Reply, the 3AC Debtor respectfully submit as follows:

## **REPLY**

1. The 3AC Debtor's fundamental goal in filing the Motion is the centralized resolution of claims which collectively represent one of the largest assets of the 3AC Debtor's estate. The Genesis Debtors readily acknowledge that centralizing "all disputes concerning property of the debtor's estate" advances the Bankruptcy Code's "bedrock principles." Obj., ¶ 26 (citing *SEC v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000)). The Genesis Debtors only consider this principle through the prism of their own Chapter 11 cases and disregard the co-equal interests of the 3AC Debtor and the tensions that necessarily arise in disputes among competing insolvency estates. In their effort to paint the 3AC Debtor as a mere unsecured creditor, the Genesis Debtors argue that the 3AC Debtor must establish "extraordinary circumstances" to lift the stay and that even a "slight interference" with these Chapter 11 cases is sufficient to deny the 3AC Debtor relief. Obj. ¶¶ 23-24, 27-31, 42-43.

2. The Genesis Debtors, however, willfully ignore that the 3AC Debtor is a debtor in its own liquidation proceeding, which has been recognized as a foreign main proceeding by Chief Judge Martin Glenn in a Chapter 15 case pending in this district, with its own estate and its own creditors that have submitted claims in excess of $3 billion. Courts have recognized that special consideration is warranted when faced with the "unique" challenges presented by a collusion

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Motion of the Foreign Representatives of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* [Docket No. 678] (the "**Motion**").

2

between competing interests of co-equal "insolvent bankruptcy estates." *In re Shared Technologies Cellular, Inc.*, 293 B.R. 89 (D. Conn. 2003); *see In re BI-Lo, LLC*, Case No. 09-02140 (HB), 2010 Bankr. LEXI 2462, at *15 (Bankr. D.S.C. Aug. 13, 2010) (recognizing "the competing and equal interests of the two pending bankruptcy cases").

3. In accordance with the 3AC Debtor's duty to maximize the value of its estate for the benefit of creditors, the 3AC Debtor is pursuing BVI law preference claims against the Genesis Debtors, the BlockFi Debtors, the FTX Debtors, and the Celsius Debtors. The preference claims present common questions of law and fact that are central to the 3AC liquidation. Foremost among those is the question: *when* did 3AC become insolvent? The solvency question is perhaps the single most important question in the 3AC liquidation, with the answer—down to the precise day of insolvency—having repercussions for billions of dollars of claims of the 3AC Debtor's estate. The Genesis Debtors' attempt to brush aside the solvency issue in a single sentence, Obj. ¶ 3, willfully disregards the challenges presented by the dueling-debtor dynamic and this Court's admonition that it should not be "lead dog" on issues that are central to another insolvency proceeding, such as the solvency of another debtor. Hr'g Tr. at 54:2-54:6 (July 6, 2023) ("[F]rankly, I have trouble imagining this Court should ever be the lead dog on those particular issues [i.e., solvency of the FTX debtors], given the centrality to the FTX bankruptcy case.").

4. Solvency is not the only common issue. Both the Genesis Debtors and the BlockFi Debtors have asserted potential defenses under the Bankruptcy Code's safe harbors. The Genesis Debtors incorrectly assert that the safe-harbor issue is unique to them—selectively citing to the BlockFi Debtors' *estimation motion* for the proposition that the BlockFi Debtors did not assert a safe-harbor defense. Obj. ¶ 55. The Genesis Debtors' notably omit that the BlockFi Debtors did assert the safe harbor under section 546(e) as a potential defense in their objection to the 3AC

3

Debtor's claims.[3]  And there is nothing preventing the other debtor-counterparties facing BVI preference claims from also following the Genesis Debtors' blueprint.  Application of the Bankruptcy Code's safe harbor provisions thus presents common questions of law and fact across the various preference claims.

5. Considering the common issues of law and fact that run through each of the preference claims, the 3AC Debtor has a compelling interest in having claims against each debtor-counterparty and especially the core issues for such claims decided in a centralized forum.  Absent a centralized forum, adjudication before multiple courts would be an inefficient strain on the 3AC estate's resources and may result in inconsistent outcomes with respect to common questions of law and fact.  The risk of inconsistent outcomes presents the potential for severe prejudice to the 3AC Debtor.  Any unfavorable outcome in any one court could be weaponized against the 3AC Debtor in other courts (via arguments for equitable estoppel) notwithstanding active litigation on the same issue.  For example, with respect to the solvency issue, if one court were to rule that the 3AC Debtor was insolvent as of a certain date, each counterparty would then have the option of either (or potentially both) (a) asserting equitable estoppel with respect to that finding by the first court or (b) litigating the issue anew itself and attempting to shorten the vulnerability period by securing a finding that the 3AC Debtor was insolvent at a later date.  This asymmetry would grant an undue litigation advantage to 3AC's adversaries.  The Debtors' Objection fundamentally disregards this harm to a co-equal bankruptcy estate, despite it being the key motivation underlying the Motion.

---

[3] *In re BlockFi, Inc.*, Case No. 22-19361-MBK (Bankr. D.N.J. Aug. 21, 2023), Dkt. No. 1375, ¶ 30 ("BlockFi has multiple substantive defenses under both the Bankruptcy Code and state and common law to successfully defend against the 3AC Claims" and that "[t]hese defenses include . . . the safe-harbor defense under Section 546(e).") ("**BlockFi Claim Obj.**")

6.     Instead of directly addressing the 3AC Debtor's legitimate concerns, the Genesis Debtors have focused on attempting to undermine the premise underlying the Motion—that the 3AC Debtor's preference claims against multiple counterparties do in fact involve common issues of law and fact. In doing so, the Genesis Debtors' rely on "gotcha" arguments based on what can only be described as blatant mischaracterizations of the 3AC Debtor's interrogatory responses, which are attached as <u>Exhibit A</u> to the Objection (the "**Interrogatory Responses**"). *First*, the Genesis Debtors contend that Interrogatory Responses "confirm" that the 3AC Debtor cannot "identify consistently common questions" between their various claims. Obj. ¶ 4. Yet, the Interrogatory Responses clearly identify both the date of insolvency and the applicability of the safe harbors as common issues. Interrogatory Responses at 11 ("One common issue of law and fact between all of the foregoing claims is the critical question of when 3AC became insolvent."), 9 ("[T]he applicability of the Bankruptcy Code's safe harbor provisions to 3AC's various claims against the aforementioned (and potentially other) counterparties is also an issue of law and fact that is likely to be common across the claims at issue.").

7.     *Second*, the Genesis Debtors posit that the Interrogatory Responses demonstrate that 3AC does not truly have an interest in resolving its claims in a centralized fashion because it does not intend to lift the stay in the FTX Chapter 11 case. Obj. ¶ 55. Nowhere in the Interrogatory Responses do the Joint Liquidators state that they do not intend on bringing motions to lift the stay in the FTX cases. Rather, the Genesis Debtors' interrogatory simply asked for identification of "the status of all Analogous Claims." Interrogatory Responses at 7.[4] The 3AC Debtor provided a response that accurately conveyed the current status of the FTX proceedings—there have been no

---

[4] Specifically, the Genesis Debtors asked for identification of "the status of all Analogous Claims, including (i) the forum in which the Analogous Claims have been or will be filed, (ii) the procedural posture of any litigation related to the Analogous Claims, and (iii) the date on which any statute of limitations will run for each of the Analogous Claims." Interrogatory Responses at 7.

5

material developments since the 3AC Debtor filed its proof of claim in the FTX cases. Interrogatory Responses at 7-8. Both the Genesis Debtors and the BlockFi Debtors objected to 3AC's proofs of claim, commencing claim litigation, which necessitated a motion for relief to preserve 3AC's interests in having common issues decided in a centralized forum. In the FTX cases, by contrast, 3AC has filed a timely claim that is presumptively allowed until objected to, and there is no claim objection pending. The 3AC Debtor fully intends, however, on filing a motion for relief from the stay in the FTX cases.

8. *Third*, the Genesis Debtors allege that the 3AC Debtor is unable to identify any "other parties" beyond those three debtor parties expressly identified in the Motion (*i.e.*, BlockFi, FTX, and Celsius, as well as other parties that the Motion identified under seal). Obj. ¶ 3. As an initial matter, the Genesis Debtors' argument is irrelevant—the prospect of litigating preference claims that present common issues of fact and law against four Chapter 11 debtors in as many different venues clearly creates the risk of multi-front litigation and inconsistent outcomes that supports lifting the stay. Moreover, the Interrogatory Responses are clear that "the Foreign Representatives' investigation is ongoing, and as such, claims against other parties may be identified to the foregoing counterparties." Interrogatory Responses at 9. The Genesis Debtors' observation that the 3AC Debtor has not yet identified additional parties beyond those named in the Motion is yet another attempt to use the 3AC Debtor's information disadvantage against it. And it does not undermine the importance of the date of the 3AC Debtor's insolvency to the 3AC Debtor's estate and creditors.

9. *Fourth*, the Genesis Debtors assert that "[w]ithout question, U.S. law analysis would dominate the BVI proceedings if 3AC claims were to proceed before the BVI Court." Obj. ¶ 7. This is plainly false, as the majority of 3AC's claims are preference claims arising under BVI

6

law. A *prima facie* preference claim under BVI law requires a showing that the transaction (i) "is an insolvency transaction"—*i.e.*, a transaction "entered into at a time when [a] company is insolvent" or that "causes a company to become insolvent"; (ii) is "entered into within the vulnerability period;" and (iii) "has the effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he or she would have been in if the transaction had not been entered into." Insolvency Act 2003 (as amended), S.I. 47/2004, §§ 244(2), 245(1). *See* Motion, Ex. B at ¶ 15. Each of these elements—the solvency of 3AC, the application of the vulnerability period, and the preferential effect of the transaction—involves the application of BVI law. Moreover, BVI preference law provides an affirmative defense for transactions entered "in the ordinary course of business." Insolvency Act 2003 (as amended), S.I. 47/2004, § 245(2). *See* Motion, Ex. B at ¶ 17. The Genesis Debtors have asserted an ordinary course defense,[5] the BlockFi Debtors have suggested they will do the same,[6] and there is no reason to believe the other debtor-defendants will not follow suit.

10. In contrast to the prejudice to the 3AC Debtor from maintaining the stay, the Genesis Debtors will not be prejudiced by lifting the stay. The Genesis Debtors have not asserted (and could not) that lifting the stay would affect their ability to confirm or consummate a plan. Likewise, the Genesis Debtors make no assertion that they *cannot* reserve for the 3AC Debtor's claim; rather, they assert in imprecise terms that such a reserve could affect the timing of some distributions. Obj. ¶ 46. Moreover, there is no confirmation hearing scheduled in these cases, and the date of any distributions remains unknown. The Genesis Debtors' claims of prejudice ultimately amount to an assertion that litigating the 3AC claims before any court but this Court

---

[5]   *See* Dkt No. 658, ¶¶ 4, 48, 114-28.

[6]   *See* BlockFi Claim Obj. ¶ 30 (stating that BlockFi's potential defenses include "preference defenses under Section 547").

7

would be inefficient and increase costs because this Court is "well-poised to adjudicate these claims." Obj. ¶ 9. However, a trial in this Court is not scheduled, let alone imminent. To date, the activity before this Court with respect to the 3AC claims has been limited to scheduling and fact discovery, which will continue for another six weeks until November 6, 2023. Although the Genesis Debtors contend that "[i]t makes little sense" for this Court to oversee fact discovery only to have the claims proceed to trial elsewhere, Obj. ¶ 48, this Court has recognized "discovery is[] something [that's] going to have to happen" no matter which court ultimately adjudicates a claim, Hr'g Tr. at 60:25-61:2 (July 6, 2023), and "judges are [not] particularly concerned about invocations of territoriality for purposes of discovery," Hr'g. Tr. at 66:21-22 (June 15, 2023). Further, bankruptcy courts routinely handle issues up to trial only to ultimately see those issues decided by other courts. This is notably the case for litigation involving issues over which bankruptcy courts do not have core jurisdiction. *See*, *e.g.*, *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014) ("If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding *de novo* and enter final judgment.").

11.    The progress made on discovery in these cases could be leveraged in another forum, particularly if that forum is the Chapter 15 case pending in this District before Chief Judge Glenn, to ensure that the claims are adjudicated in a timely manner that would avoid undue delay to distributions by the Genesis Debtors. The 3AC Debtor respectfully submits that the Chapter 15 Court is more than capable of providing an efficient and final resolution of the 3AC claims, while this Court does not offer a centralized forum to adjudicate issues that are core to the 3AC liquidation.

12. The Genesis Debtors also argue that litigation of 3AC's claims outside of this Court would be inefficient because the Chapter 15 Court lacks familiarity with the claims at issue. Obj. ¶¶ 7, 9.[7] The merits of 3AC's claims have not been litigated at all before this Court. The only filings going to the merits of the claims are the amended proofs of claims themselves and the Genesis Debtors' objections thereto, neither of which has been presented for a ruling by this Court to date. Accordingly, any difference in familiarity with the claims at issue between this Court and the Chapter 15 Court, on the other hand, is at most limited and could be cured by reviewing the 3AC Debtor's proofs of claim and the Genesis Debtor's claim objection. Furthermore, the judicial resources that would be involved in multiple parallel litigations of common issues involved in the 3AC Debtor's claims would far outweigh any effort by the Chapter 15 Court to become familiar with the 3AC Debtor's claims. Accordingly, any difference in familiarity between the courts should not serve as the basis to deny the Motion. In addition, the BVI Court is already familiar with the claims of the 3AC Debtor against the Genesis Debtors based on extensive argument in connection with the 3AC Debtor's application to the BVI Court to commence a Chapter 11 case and prosecute avoidance actions under the Bankruptcy Code against the Genesis Debtors, among other parties. The Genesis Debtors do not challenge the BVI Court's familiarity with the 3AC Debtor's claims.

13. Moreover, and critically from the perspective of recoveries to the creditors of the 3AC Debtor, litigation in a centralized forum will reduce overall professional expense of the litigation, which will be substantial. The Genesis Debtors will be incurring the costs of litigation with the 3AC Debtor—whether in this Court or another forum—and the difference (if any) in the

---

[7] The Genesis Debtors also assert that litigation of the 3AC Debtor's claims outside of this Court would be inefficient because the BVI Court cannot fully resolve the 3AC Claims, as it cannot hear the safe-harbor defenses. Even if that were that case, the Chapter 15 Court has not such limitation.

cost to the Genesis Debtors' estates of litigating in this Court as compared to the Chapter 15 Court is incremental. In contrast, for the 3AC Debtor the difference between litigating the issues once in a centralized forum and engaging in litigation of the same claims in parallel in four different bankruptcy cases, together with litigation against non-debtor parties in the BVI Court, represents a substantial burden on its estate.

14. The Genesis Debtors' portrayal of the Motion as a "delay tactic" is refuted by the record. Far from being untimely, the 3AC Debtor's filing of the Motion was in line with the process that the Genesis Debtors themselves have established to adjudicate 3AC's claims. The Genesis Debtors established a bar date of May 22, 2023—over five months after the Petition Date—and the 3AC Debtor timely filed proofs of claim to preserve its claims. The Genesis Debtors subsequently objected to the 3AC Debtor's claims on July 19, 2023—approximately two months after the bar date—thereby initiating litigation with respect to such claims. Based on an agreement with the Genesis Debtors, the 3AC Debtor amended its proofs of claim on August 18, 2023. The Genesis Debtors renewed their objection on September 1, 2023. The 3AC Debtor then filed the Motion five days later on September 6, 2023. The Genesis Debtors cannot credibly complain that the 3AC Debtor waited to file the Motion until "approximately eight months after the Petition Date" when it was not until the seventh month that they commenced the claims litigation. Obj. ¶ 22.

15. On balance, the facts, law, and equities weigh strongly in favor of granting relief from the stay to allow the 3AC Debtor to liquidate the claims in the BVI Court or the Chapter 15 Court. At minimum, the 3AC Debtor submits that it should be granted limited relief to litigate the common issues of law and fact presented by the preference claims—*e.g.*, the solvency and safe-harbor issues—against the various debtor-counterparties in a centralized forum. This approach

10

fairly balances the competing interests presented in this extraordinary circumstance in which the 3AC Debtor faces *four* parallel "dueling debtor" litigations that collectively involve billions of dollars of claims that may be the largest assets of the 3AC Debtor's estate. It would allow the issues that are core to the 3AC Debtor's liquidation and common across multiple litigations to be resolved in a central forum while also preserving the ability of the debtor-defendants to reach a final adjudication of the claims in their "home" chapter 11 cases. The Genesis Debtors, however, dismiss this path forward out of hand. Obj. ¶ 48, n. 22.

16. Finally, the Genesis Debtors' assert that the 3AC Debtor's request for relief in the alternative—to pursue its claims before the BVI Court or, in the alternative, before the Chapter 15 Court—is somehow inconsistent with the goal of achieving a centralized forum for resolution of the claims because it leaves open the possibility of multi-front litigation. Obj. ¶ 55. The 3AC Debtor's request for stay relief will be heard by this Court first, which leaves the 3AC Debtor with the opportunity to tailor the relief it seeks before other courts based on the outcome of the Motion before this Court. Nevertheless, the 3AC Debtor recognizes that coordination among this Court, the BVI Court, the Chapter 15 Court, and the courts presiding over the BlockFi, FTX, and Celsius Chapter 11 cases will be necessary to ensure that the claims are in fact litigated in an efficient, centralized manner. Indeed, the 3AC Debtor welcomes that coordination and to that end, will be filing a motion in this case, as well as corresponding motions in the Chapter 15 Case and the Chapter 11 cases of BlockFi, FTX, and Celsius, seeking a judicial conference or joint hearing to consider how to progress these matters in a coordinated fashion. The 3AC Debtor respectfully requests that the Court defer any ruling on the Motion pending the outcome of that motion and any resulting judicial conference or joint hearing.

## **CONCLUSION**

17.　For the foregoing reasons, the 3AC Debtor respectfully requests that the Court grant the Motion and the relief from the automatic stay requested therein.

[*Remainder of Page Intentionally Left Blank*]

Dated: September 22, 2023  Respectfully submitted,
      New York, New York

/s/ Christopher Harris
Christopher Harris
Adam J. Goldberg
Brett M. Neve
Nacif Taousse
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  chris.harris@lw.com
       adam.goldberg@lw.com
       brett.neve@lw.com
       nacif.taousse@lw.com

– and –

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
Emily R. Orman (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
       tiffany.ikeda@lw.com
       emily.orman@lw.com

*Counsel to the Joint Liquidators
of Three Arrows Capital, Ltd.*

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 22nd day of September, 2023, a true and correct copy of the foregoing Reply was furnished to all ECF Participants via the Court's CM/ECF system.

*/s/ Christopher Harris*
Christopher Harris