Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 23-10063-shl

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   GENESIS GLOBAL HOLDCO, LLC,

8

9        Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    300 Quarropas Street, Room 248

14                    White Plains, NY 10601

15

16                    September 25, 2023

17                    11:06 AM

18

19

20

21  B E F O R E :

22  HON SEAN H. LANE

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  ALIANNA PERSAUD

1   HEARING re Case Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:   Sonya Ledanski Hyde

```
1    A P P E A R A N C E S :

2

3    CLEARY GOTTLIEB STEEN & HAMILTON LLP

4         Attorneys for the Debtor

5         One Liberty Plaza

6         New York, NY 10006

7

8    BY:  LUKE A. BAREFOOT

9

10   WHITE & CASE LLP

11        Attorneys for Official Committee of Unsecured Creditors

12        1221 Avenue of the Americas

13        New York, NY 10020

14

15   BY:  COLIN WEST

16

17   LATHAM & WATKINS LLP

18        Attorneys for Three Arrows

19        1271 Avenue of the Americas

20        New York, NY 10020

21

22   BY:  ADAM J. GOLDBERG

23

24

25
```

1    HUGHES HUBBARD & REED LLP

2          Attorneys for Gemini Trust Company

3          One Battery Park Plaza

4          New York, NY 10004

5

6    BY:  ANSON B. FRENLINGHUYSEN

7

8    ALSO PRESENT TELEPHONICALLY:

9

10   PHILIP ABELSON

11   ERIC C. DAUCHER

12   CHRISTOPHER HARRIS

13   JEFFREY S. MARGOLIN

14   MARCY J. MCLAUGHLIN SMITH

15   MICHELE MEISES

16   ANAIS MITRA

17   BRETT MATTHEW NEVE

18   AMANDA PARRA GRISTE

19   GREGORY F. PESCE

20   BRIAN ROSEN

21   JORDAN SAZANT

22   J. CHRISTOPHER SHORE

23   DUSTIN P. SMITH

24   GABE SUTHERLAND

25   NACIF TAOUSSE

1    TARA TIANTIAN

2    FRANCISCO VAZQUEZ

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                    P R O C E E D I N G S

2              THE COURT:  Good morning.  We are here this

3    morning for a status conference in Genesis Global Holdco,

4    LLC, a conference that was spurred by -- well, scheduled on

5    my part based on an email that was submitted Friday,

6    September 22nd sometime afternoon.

7              So let me find out who is here on behalf of the

8    Debtors.

9              MR. BAREFOOT:  Good morning, Your Honor.  Luke

10   Barefoot from Cleary Gottlieb for the Debtors.

11             THE COURT:  All right.  And on behalf of the

12   Official Committee?

13             MR. WEST:  Good morning, Your Honor.  Colin West

14   of White & Case on behalf of the Official Committee of

15   Unsecured Creditors.

16             THE COURT:  All right.  And on behalf of Three

17   Arrows?

18             MR. GOLDBERG:  Good morning, Your Honor.  Adam

19   Goldberg of Latham & Watkins on behalf of Three Arrows,

20   together with my partner, (indiscernible).

21             THE COURT:  All right.  And let me find out who

22   else might be here this morning who has not yet made an

23   appearance.

24             All right.  It seems --

25             MR. FRENLINGHUYSEN:  Good morning.

Page 7

1          THE COURT:  I'm sorry, go ahead, please.

2          MR. FRENLINGHUYSEN:  Good morning, Your Honor.

3     It's Anson Frenlinghuysen from Hughes Hubbard & Reed for

4     Gemini Trust Company.

5          THE COURT:  All right.  So I apologize for

6     scheduling this given the religious holiday, but I thought

7     that it was preferable to having some confusion entering the

8     hearing on Tuesday.  And confusion is not helpful when

9     parties are trying to get ready, figuring out what to do.

10    It's also not helpful in terms of keeping expenses down.

11         So I appreciate you all making the time to be

12    here.  And again, I apologize to the extent it threw a curve

13    ball into thing.  I will say the timing of the letter in

14    that regard was particularly poor and seemed to be

15    avoidable.  So I would urge people to avoid such things

16    under such circumstances.  It's just not the way to go about

17    doing things.

18         So I thought I would start off by sharing my

19    initial views of things.  And then I'm happy to hear from

20    folks.  And if anybody has a thought -- and again, my

21    initial thought is my initial thought.  But you've got to

22    start somewhere.

23         So motions to lift stay are brought by a party.

24    My general view is if somebody doesn't want to go ahead with

25    a motion to lift the automatic stay, that since it's their

1    motion, it's their call.

2          On the other hand, a motion to lift stay that is

3    scheduled, particularly in a large case like this that has

4    some collateral consequences, if somebody doesn't want to go

5    ahead with it, they can't reap any benefit strategically by

6    virtue of the delay.  In other words, you can't later argue,

7    gee, since we didn't go ahead with the motion to lift the

8    stay on this date, we now have this problem, or we think we

9    shouldn't go ahead with this thing, or whatever it is.  You

10   can't weaponize it because that then makes it everybody

11   else's problem.

12          So if you don't want to go ahead with it because

13   you don't want to go ahead with it for whatever reasons,

14   that's fine.  But it just can't be -- that adjournment can't

15   be used as a sword against other folks, to continue with the

16   sword and shield analogy.

17          And I guess the second observation I had is in

18   laying out these rules, it says nothing to me -- nothing

19   from me -- there's no message about what was contemplated by

20   the email, which is this notion of saying that Three Arrows

21   wants to file a motion to have a joint hearing among some

22   one, two, three, four, five, six cases, whether that's

23   simultaneous or whatever.  It's not a reflection of any

24   enthusiasm for that proposal, it's just a reflection of if

25   it's a motion to lift stay, people -- the general rules of

Page 9

1    the road that people get to decide whether they want to go

2    ahead.

3          So I have some thoughts about the logistics of

4    such a six-judge court conference or hearing, but that's not

5    for today because I don't even have a motion in front of me.

6    But not surprisingly, there are great logistical concerns

7    that just immediately popped to mind.

8          So those are my thoughts, for what they're worth.

9    I would love to hear everybody else's thoughts.  And

10   certainly to the extent that folks have a different view and

11   can convince me that my -- that I should change my views,

12   that's fine.  Again, I just wanted to start somewhere.

13         And so with that, let me hear from Three Arrows.

14         MR. GOLDBERG:  Thank you, Your Honor.  For the

15   record, Adam Goldberg of Latham & Watkins on behalf of Three

16   Arrows Capital.  If I may, I'll just explain our reasoning

17   in a few minutes and welcome any questions that Your Honor

18   may have.

19         THE COURT:  I don't know that I need to hear your

20   reasoning.  Right?  Again, the idea is that it's your motion

21   to lift the stay.  If you don't want to prosecute your

22   motion to lift stay for whatever reason, it's your motion.

23   And so the idea behind it really is this other path that you

24   want to go down.  And I don't want to talk about that

25   because today is not the day really to talk about it.  I

Page 10

1    don't have the motion in front of me.  But I just wanted to

2    make clear that the -- it can't have other collateral

3    consequences.  It can't be used as a sword in terms of

4    saying, well, Judge, because of that, we don't think

5    discovery is appropriate here that was otherwise scheduled

6    because of that.  We have reviewed the change about this,

7    that, and the other thing.

8         So that's my view.  If you don't want to go ahead

9    with your motion, that's fine.  But it's the collateral

10   consequences of which I really just wanted to call out as a

11   potential issue.

12        MR. GOLDBERG:  Thank you, Your Honor.  I

13   completely understand that and we understand your

14   perspectives and take them on board well.

15        We are not seeking to delay.  This is not a delay

16   tactic.  I can explain the timing of it if Your Honor would

17   like, but it's somewhat beside the point.

18        We take your instruction.  We intend to fully

19   proceed with discovery and all progress pursuant to our

20   court-ordered schedule that we have in place, and we're not

21   seeking to disrupt any of that by raising it, simply that

22   this situation calls out for coordination.  We would like to

23   put a motion before the Court.  We think that's a more

24   efficient way to have our stay motion heard together with

25   the request for coordination.  But if Your Honor would like

Page 11

1    to proceed, we're happy to do so tomorrow.  We would just

2    ask --

3            THE COURT:  Again, it's your motion.  So again,

4    subject to -- and again, I'll hear from everybody.  But my

5    initial reaction is subject to sort of the general rules of

6    the road, if you don't want to proceed with it, then that's

7    your call.

8            Again, it's unusual to have a party ask to have a

9    multi-court, multi-case hearing when it's not your case.

10   Right?  I've certainly seen it when a debtor says, well, we

11   are the debtor, the petitioner in multiple proceedings and

12   we're asking for approval here of something we're also

13   asking for approval of somewhere else.  And the standards

14   are similar or identical, the evidence is similar, we need

15   approval of both courts.

16           So I'm a little at sea in terms of understanding

17   what it is you're trying to accomplish here.  But again, I

18   don't have a motion in front of me.  So it's my job not to

19   prejudge because the bard says there are more things in

20   heaven and earth than are dreamt of in my philosophy.  So,

21   you know, you can do what you think you need to do.  But

22   again, for purposes of the motion to lift stay, my initial

23   reaction is as long as it's subject to the usual rules of

24   the road in terms of collateral consequences here, then

25   that's the thing I just wanted to get out there.

Page 12

1           MR. GOLDBERG:  Thank you, Your Honor.  Our

2   perspective is we are a debtor in the BVI as well as in a

3   Chapter 15 case and that this situation raises exactly the

4   kind of similar issues that you described.  We will put that

5   before you.  We are requesting an incremental adjournment,

6   and we will live by the rules of the road for this court.

7           THE COURT:  All right.  And if you want -- again,

8   I don't want to cut you off.  This is one of these things

9   where what we do all collectively is an art and not a

10  science.  So how much to get into what you're thinking is

11  behind all of this.  That's not really the point of today.

12  But if you want to give a brief, you know, one-minute

13  summary that may be helpful for all the parties on the line.

14          MR. GOLDBERG:  Sure.  Thank you.  And we expect to

15  have a motion on these issues on file if not today,

16  tomorrow.

17          Really the situation we have, Your Honor, is that,

18  as everyone knows, Three Arrows is a debtor in its own

19  liquidation proceeding in the BVI.  We have a Chapter 15

20  main case recognition in this district before Chief Judge

21  Glenn.  We have asserted claims that are essentially

22  identical against four Chapter 11 debtors.  These debtors

23  here, BlockFi, FTX, and Celsius.  We have motions for relief

24  from the stay pending here as well as in BlockFi.  The

25  status of BlockFi, Your Honor, is that on October 10th, we

Page 13

1   have a hearing on our motion for relief from the stay as

2   well as a scheduling hearing on BlockFi's efforts to object

3   to the claim estimated.  And we expect to have motions for

4   relief from the stay on file shortly in Celsius and FTX as

5   well.

6           The common issue here is the date of insolvency of

7   Three Arrows.  When did it become insolvent?  And simply

8   put, Your Honor, from our perspective, litigating this issue

9   in four separate Chapter 11 cases to get with a fifth case

10  in the BVI would be extremely wasteful with the limited

11  resources of the Three Arrows liquidation as well as,

12  frankly, the judicial resources involved and the

13  administrative expenses of the four Chapter 11 debtors.  So

14  we think there's plenty of support in the Bankruptcy Code in

15  Chapter 15 and the inherent powers of the court to manage

16  dockets to consolidate these matters.  And we've seen it

17  done in other cases, particularly Enron in this district.

18  So we're happy to put that on the docket, Your Honor, to tee

19  up a ruling.

20          And the type of adjournment that we're looking for

21  here to permit Your Honor to consider, what type and whether

22  to hold any joint judicial communication about how to manage

23  this process, we think we could have that hearing in a few

24  weeks subject to the notice periods and agreement of the

25  parties on when to hold that hearing.

1         THE COURT:  All right.  When you say -- so I

2    apologize to the extent I'm violating my rule of not jumping

3    too deep into what your intentions are.  But when you say

4    consolidate these proceedings, I'm not sure what that means.

5    Have you thought through the technical aspects of what

6    you're asking for?

7         So certainly I had understood the lift stay to be

8    a lift stay to allow an issue to go ahead in another

9    proceeding, right?  And so we had certainly had discussions

10   of that type in the context of FTX's motion to lift the stay

11   and the centrality as FTX argued it of certain issues to its

12   case, the impact on its case and what was appropriate to

13   litigate in its view in another forum in Delaware where it

14   was the debtor versus here.

15        Of course I understand you're talking about --

16   you've got a Chapter 15, right, in front of Judge Glenn?

17        MR. GOLDBERG:  Yes, Your Honor.

18        THE COURT:  so it's not the main proceeding, it's

19   -- it's seeking recognition of a foreign main proceeding.

20   So the court that is doing the adjudication I assume of

21   issues in the administration of the Three Arrows as a debtor

22   is the foreign court.  Am I understanding that right?

23        MR. GOLDBERG:  Yes.  The BVI court is the main

24   proceeding.

25        THE COURT:  Right.  So is it essentially a request

Page 15

1    to stay proceeding in American courts while the BVI court

2    makes a determination on issues central to Three Arrows'

3    reorganization proceeding?

4            MR. GOLDBERG:  Well, Your Honor, we have our

5    request.  And our request in preference would be that all of

6    these cases should go to the BVI.  That's our main case.

7            THE COURT:  But I don't know what you mean.  Are

8    you talking about shutting down the American cases and

9    compelling them to file in a foreign jurisdiction?

10           MR. GOLDBERG:  No, Your Honor.  No.

11           THE COURT:  Well, that's what I'm saying.  When

12   you say shut these cases down and make -- you've got to be

13   more precise about what you're asking for.  Because what

14   you're asking for sounds exceedingly extreme and I don't

15   think it's coming out the way you hear it in your head.  So

16   can you give me more details as to what you're asking for or

17   will be asking for?

18           MR. GOLDBERG:  Yes, Your Honor.  What our request

19   is I think on our preference is that we have the authority

20   to obtain relief from the automatic stay in the four Chapter

21   11 cases, to have our claims for BVI preference and other

22   turnover-type proceedings heard and determined by the BVI

23   court.  That would be our preference.  Now --

24           THE COURT:  So it's more a lift stay and abstain

25   kind of argument, right?  That this Court should not be the

1    court to go ahead and move forward with these -- with

2    certain issues that relate to Three Arrows Capital and that

3    those issues should be decided in a different forum.

4              MR. GOLDBERG:  Yes, Your Honor.  Exactly that.

5    And I would add in the alternative that there are multiple

6    courts available here.  And these are complex issues that do

7    in fact involve the laws of not only the BVI, but also the

8    United States and New York.  Those are issues that Genesis

9    has raised, BlockFi has raised them as well, and we expect

10   the other parties to raise them.

11             And so what we would like to tee up is the

12   opportunity for the relevant judges to coordinate and

13   decide, should the judges agree with our preference and have

14   these issues in the BVI?  And in the alternative, the

15   matters could be determined by Judge Glenn in our Chapter 15

16   case on a limited subset of common issues if that judge is

17   determined appropriate or otherwise.

18             THE COURT:  All right.  So I guess two

19   observations.  One is that each case has its own issues,

20   right?  The nature of each party's relationship is -- I'm

21   sure it has some similarities, but there are some

22   differences.  And that's why you have different cases.  And

23   I guess we'll see how that plays out in the wash.

24             And the second is I'm not quite sure when you talk

25   about having Judge Glenn decide the issues, what that means

Page 17

1    in the context of a Chapter 15.  I understood what it meant

2    in the context of FTX because it has a pending American

3    Chapter 11 in Delaware.  And so there's a judge presiding

4    over that reorganization here in the United States.  I'm not

5    quite sure what that means in the context of a Chapter 15

6    where there are two things -- three things that I see come

7    up in Chapter 15.  One is the initial request for some sort

8    of protection of U.S. assets, two is recognition of a

9    foreign main or a foreign non-main proceeding, and three is

10   to give effect to a plan.

11          Certainly there are other things that come up from

12   time to time, but that's sort of the general playbook.  So

13   I'm not sure how it fits in the playbook.  I'm not sure I

14   need to know that today, and that's something that's a

15   longer conversation.  I'm just trying to tease out what it

16   is that we all can expect to talk about.  Because what the

17   issues are I think affects the timing of how quickly things

18   can get done in cases.  So that's another reason behind

19   that.

20          So, Mr. Goldberg, anything else that you wanted to

21   briefly address in terms of giving sort of a general picture

22   of what your intent is on behalf of your client?

23          MR. GOLDBERG:  I think that Your Honor has a

24   picture of what we're intending.  And to briefly respond to

25   that last point, it could be in the context of an adversary

Page 18

1    proceeding as foreign representatives through a Chapter 15

2    case.  We have standing to bring lawsuits in the United

3    States.  And that could be procedural device to consolidate

4    certain issues before one court.

5            THE COURT:  All right.  Thank you very much.  All

6    right, with that, let me hear from the debtors.  There's a

7    lot of issues to chat potentially about.  And so you can let

8    me know your thoughts as to what we should talk about, what

9    we shouldn't talk about, and in what order.

10           MR. BAREFOOT:  Good morning, Your Honor.  Luke

11   Barefoot from Cleary Gottlieb for the debtors.

12           I think Your Honor's comments about the

13   consequences of an adjournment substantially address the

14   debtor's concerns about an adjournment.  We do have a

15   scheduling order.  We'll be back before Your Honor in less

16   than a month to set a pretrial briefing and trial schedule

17   on our objections to Three Arrows' claims.  And I know

18   you've heard and I won't belabor the debtor's concerns about

19   the consequences of not having those claims adjudicated for

20   timely distributions to creditors in our case.

21           But, you know, with Your Honor's comments, if

22   Three Arrows wants to adjourn its motion on the eve of the

23   hearing date that it requested, as long as that doesn't have

24   collateral (indiscernible) or our ability to continue to

25   move forward in a timely manner with discovery and the other

Page 19

1    processes that are contemplated by Your Honor's scheduling

2    order, so be it.

3              THE COURT:  All right.  Anything from the Official

4    Committee?

5              You're on mute, Counsel.

6              MR. WEST:  I'm sorry about that, Your Honor.

7              THE COURT:  Now you're good.

8              MR. WEST:  Just briefly just to echo -- sorry,

9    Colin West from White & Case on behalf of the Official

10   Committee of Unsecured Creditors.  Just to echo what Mr.

11   Barefoot said, I think our opposition to the adjournment was

12   pretty straightforward as we explained in our joinder to the

13   opposition to the substantive motion to lift the stay.  You

14   know, we oppose it on the merits, but we also oppose it on

15   the grounds that it had been unreasonably delayed.

16             Certainly it is the joint liquidator's motion.  If

17   they want to adjourn it, I certainly understand Your Honor's

18   comments.  But our point about unreasonable delay we think

19   will apply with greater force to the extent it is heard at a

20   later date.  And that is especially true if the parties

21   continue to proceed with discovery, as they should, while --

22   you know, in the interim period.  Right?  I mean, it's

23   certainly going to be more time, more money, more creditors'

24   recoveries spent on discovery.  And we think that that is

25   going to weigh in favor of, again, denying the motion to

Page 20

1    lift stay.

2          But if the joint liquidators want to adjourn the

3    motion, with all of that in mind, as Your Honor pointed out,

4    they are, generally speaking, free to do that.

5          THE COURT:  All right.  So before I hear back from

6    Three Arrows Capital to sort of wrap things up, just I'll

7    throw this out to the debtors and the committee.  Obviously

8    I thought about how to frame the issues before coming out

9    here.  And so that's why I started off that way.  But I

10   don't have a monopoly on wisdom.  So if there's anything

11   that you think I'm overlooking in terms of consequences to

12   the case or collateral consequences, I would certainly be

13   happy to hear about that.

14         So as you know, it's much easier to say sort of a

15   blanket statement like, well, it won't impact anything else.

16   But sometimes the devil is in the details.  So if you have

17   anything else that you want to throw out for discussion or

18   consideration, I would certainly welcome that.

19         MR. BAREFOOT:  Your Honor, Luke Barefoot from the

20   debtors, from Clearly Gottlieb for the debtors.  Very

21   briefly.

22         We are concerned about ongoing delay in

23   adjudication of a claims objection.  We do have a status

24   conference set before Your Honor for October 24th to set a

25   pretrial briefing schedule.  To the extent that the cloud of

Page 21

1    this belated lift-stay motion is still hanging over us at

2    that point, I think that would potentially be problematic.

3    Three Arrows has not yet filed lift stay motions in either

4    FTX or Celsius, nor have they filed this (indiscernible) or

5    whatever it's going to be motion that was the raison dêtre

6    of the adjournment request.

7            So I'm a little unclear on scheduling.  But I

8    think with Your Honor's comments, so long as that cannot

9    (indiscernible) as a sword, I think that addresses

10   (indiscernible).

11           THE COURT:  All right.  Thank you.  Mr. West,

12   anything else from you?

13           MR. WEST:  No, Your Honor.  We agree with Mr.

14   Barefoot.  And nothing further from the Committee.

15           THE COURT:  all right.  So let me hear from Three

16   Arrows Capital.  I think you've heard what everybody has

17   said.  And I think the understanding is it is your motion

18   and you are free to prosecute or not prosecute it so long as

19   that decision to adjourn at this point is not used in a way

20   offensively to affect other things going on in the case.  In

21   other words, the debtors have claims objections and they are

22   what they are and they'll continue a pace.  And that's where

23   we are.

24           And so, Mr. Goldberg, does that make sense from

25   your point of view?  Are we all on the same page?

Page 22

1          MR. GOLDBERG:  Yes, it does, Your Honor.  We will

2    be advancing our anticipated filings as quickly as possible

3    and we're happy to be in touch with chambers on alternative

4    hearing dates from tomorrow.

5          THE COURT:  All right.  So with that -- and again,

6    one of the reasons I wanted to do this today, so people know

7    what we're doing tomorrow.  Again, notwithstanding the

8    challenges of the religious holidays.

9          So with that, I will -- Mr. Goldberg, I am

10   considering this an official request to adjourn Three Arrows

11   Capital's motion that's on for tomorrow.  And I'm happy to

12   grant that request conditioned on the kinds of things we've

13   been talking about here this morning with the understanding

14   that it is your motion and therefore the general rules of

15   the road would allow you to adjourn it, but that adjourning

16   it doesn't have any impact on anything else.  In other

17   words, it doesn't affect the timing of claims objection,

18   those procedures, those processes, discovery, and anything

19   else that's sort of on track in these cases.  Because until

20   there is a stay lifted, there's -- you know, the case

21   continues a pace.

22         So with that, Mr. Goldberg, if you would file --

23   if that's acceptable if you would file on the docket a

24   notice of adjournment.  And if you don't have a date yet in

25   mind, you can put on there see sine die, or just say without

1    date for those of us -- for various folks who may not have

2    taken their Latin.  And we will see where we are as the case

3    unfolds.

4              And is that acceptable to you, Mr. Goldberg?

5              MR. GOLDBERG:  Yes.  Thank you, Your Honor.

6              THE COURT:  All right.  And with that, I have lost

7    track, Mr. Barefoot, of what's still on for tomorrow.  You

8    know, it sometimes can be a challenge in terms of what's on

9    the agenda.

10             So if I remember right, there was one other thing

11   on dealing with leases, but you can correct me if I'm

12   misremembering.

13             MR. BAREFOOT:  Your Honor, you are correct.  There

14   is one other uncontested matter for approval of rejection of

15   certain executory contracts and procedures related thereto

16   going forward.  It is uncontested.

17             I did want to get direction from chambers on

18   whether in addition of Mr. Goldberg's notice of adjournment,

19   he would like the debtors to file another updated agenda.

20             THE COURT:  Well, I think probably the notice of

21   adjournment does it.  But again, I'll be guided by you.  I

22   know that you all have a much better grasp on the needs of

23   your creditor body and constituents and the constituencies

24   of the committee.  So I would talk to the Committee and see

25   what you all think.  That way, as long as the word gets out,

Page 24

```
 1    I'll leave it to you.  But I would hope that the notice of

 2    adjournment, which Mr. Goldberg will get out in the next

 3    couple hours, should do the trick.

 4              MR. BAREFOOT:  One other point of clarification,

 5    Your Honor.  There was also the related Three Arrows motion

 6    for sealing certain aspects of their stay relief motion.  I

 7    assume that will be adjourned together with the stay relief

 8    motion.

 9              THE COURT:  Yes.  I think we carried that all at

10    the same time.

11              Mr. Goldberg, does that makes sense to you?

12              MR. GOLDBERG:  It does.  Thank you, Your Honor.

13              THE COURT:  All right.  That's why it's useful to

14    have these calls, so we all know what we're doing and what

15    we're not doing for the hearings.  So, all right.  Anything

16    from any other party that's worth discussing in the interest

17    of efficiency, or anything else for that matter?  All right.

18              Thank you all very much for taking the time this

19    morning on short notice.  My intent always is that status

20    conferences should be helpful in trying to manage the case

21    and do things efficiently.  So if there are ever things that

22    fall into that category, you know where to find me.  Just

23    make sure to talk to each other first.  But thank you all

24    for making the time here this morning.  Again, my apologies

25    to the extent that this interfered with or impacted
```

1    anybody's religious observance.  That's not my intent.

2              But anyhow, thank you very much.  And I will see

3    you all tomorrow for what promises to be a much more brief

4    hearing.  Thank you.  Have a good day.

5              (Whereupon these proceedings were concluded at

6    11:35 AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 26

1                              I N D E X

2

3                             RULINGS

4                                              Page        Line

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   *[signature]*

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  September 26, 2023