**Hearing Date: October 24, 2023 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Date: October 17, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

Christopher Harris
Adam J. Goldberg
Brett M. Neve
Nacif Taousse
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  chris.harris@lw.com
        adam.goldberg@lw.com
        brett.neve@lw.com
        nacif.taousse@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
Emily R. Orman (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
        tiffany.ikeda @lw.com
        emily.orman@lw.com

Warren E. Gluck
**HOLLAND & KNIGHT LLP**
31 West 52nd Street, 12th Floor
New York, NY 10019
Telephone: (212) 513-3200
Email:  warren.gluck@hklaw.com

John J. Monaghan (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: (617) 573-5834
Email:  john.monaghan@hklaw.com

*Counsel to the Joint Liquidators of Three Arrows Capital, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                            :
In re:                                                      :        Chapter 11
                                                            :
Genesis Global Holdco, LLC, *et al.*,[1]                    :        Case No. 23-10063 (SHL)
                                                            :
                                                            :        Jointly Administered
                Debtors.                                    :
                                                            :
------------------------------------------------------------X

---

[1]    The debtors in these chapter 11 cases , along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these chapter 11 cases, the service address for the debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

## AMENDED MOTION OF THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD. FOR COORDINATION AMONG COURTS

Russell Crumpler and Christopher Farmer, in their capacities as joint liquidators appointed by the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "**BVI Court**") in the liquidation proceeding of Three Arrows Capital, Ltd. ("**3AC**" or the "**3AC Debtor**") in the British Virgin Islands (the "**BVI Proceeding**") and duly authorized foreign representatives (the "**Joint Liquidators**"), by and through the undersigned counsel, hereby submit this amended[2] motion (the "**Motion**"), for the entry of an order substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Order**") requesting consultation among and between this Court, the BVI Court, the BlockFi Court, the FTX Court, the Celsius Court, and the Chapter 15 Court (each as defined herein) to establish procedures to adjudicate the common issues of fact and law raised by the 3AC Claims (as defined herein) in a centralized forum.  In support of this Motion, the Joint Liquidators respectfully represent as follows:

### PRELIMINARY STATEMENT

1.    The 3AC Debtor faces the extraordinary situation of having preference claims under the Insolvency Act of 2003 of the British Virgin Islands (the "**3AC Claims**"), in the approximate aggregate amount of over $1.3 billion, against four separate groups of chapter 11 debtors with bankruptcy cases pending in three different districts: (a) the Genesis Debtors (over $563.2 million), (b) the BlockFi Debtors (over $273 million), (c) the FTX Debtors (over $120 million), and (d) the Celsius Debtors (over $65 million) (each as defined herein, and collectively, the "**Debtor Defendants**").  Adjudication of these claims among the 3AC Debtor and the Debtor Defendants will require resolution of certain common issues of law and fact, including, critically,

---

[2]    This Motion Amends paragraphs 1 and 19 of the *Motion of The Joint Liquidators of Three Arrows Capital, Ltd. for Coordination Among Courts* (ECF No. 749) and paragraphs 1 and 2 of the Proposed Order thereto.

when the 3AC Debtor became insolvent.  The 3AC Debtor's preference claims (together with certain other claims that implicate the timing of the 3AC Debtor's insolvency) collectively represent the largest known assets of the 3AC Debtor estate.

2.      The Genesis Debtors and BlockFi Debtors each seek to force litigation of the 3AC Claims in the courts overseeing their respective chapter 11 cases, and oppose relief from the automatic stay to permit a centralized and efficient litigation, even of issues that are common across all 3AC Claims.  Courts addressing "dueling debtor" scenarios have recognized the need for coordination to avoid redundant parallel litigation and the serious potential for inconsistent judgments.  That dynamic exists—four times over—here.  If litigation is permitted to proceed in full in four separate courts, it would result in egregiously duplicative administrative expenses for the 3AC Debtor's liquidating estate and risk inconsistent outcomes that may harm the 3AC Debtor and its creditors, and interfere with the administration of its liquidation.  Moreover, the litigation of common issues in multiple courts simultaneously, as the Genesis Debtors and BlockFi Debtors demand, would be a wasteful expenditure of both judicial resources and the administrative expenses of the Debtor Defendants.[3]

3.      Accordingly, the 3AC Debtor respectfully seeks resolution of the common issues raised in the 3AC Claims in a centralized forum.  The 3AC Debtor has filed or will soon be filing motions for relief from the stay in the chapter 11 cases of each of the Debtor Defendants.  A judicial conference or joint hearing prior to a ruling on these motions for relief from stay would allow this Court and the other relevant courts to address this extraordinary situation in a coordinated fashion and craft procedures that would benefit all parties involved (as well as their stakeholders) by

---

[3]    As a creditor of each of the Debtor Defendants, the 3AC Debtor has a bona fide interest in avoiding wasteful expenditure of administrative expenses by the Debtor Defendants.

avoiding inconsistent outcomes, minimizing costs, maximizing potential recoveries, and promoting judicial efficiency.

4.      The 3AC Debtor proposes, upon relief from the automatic stay in the chapter 11 cases of each of the Debtor Defendants, that: (a) the 3AC Debtor would file claims against the Debtor Defendants in the BVI Court, or in the alternative, separate adversary proceedings in the Chapter 15 Case with respect to the 3AC Debtor's BVI preference claims against the Debtor Defendants, which, in each case, would be consolidated to the extent necessary; (b) the common issues of law and fact would be determined together in consolidated proceedings before the BVI Court or the Chapter 15 Court; and (c) any issues that are not common but rather are specific to any one Debtor Defendant could be adjudicated by the bankruptcy court presiding over the chapter 11 case of the Debtor Defendant.  Such a procedure would entrust the common issues to one court, while allowing (if the relevant courts determine appropriate) an adjudication of issues specific to that Debtor Defendant in its own chapter 11 case.

5.      The 3AC Debtor seeks input from this Court and other courts, and engagement with the parties and their respective stakeholders, with the goal of developing the procedural approach to consolidate common issues for adjudication in a manner that enhances efficiency for all of the courts and parties and promotes consistent outcomes.

## **JURISDICTION**

6.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).  The statutory predicates for the relief sought herein are sections 105(a), 1509, 1517, and 1525 of the Bankruptcy Code, and Rules 7042 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

### I.     3AC and the BVI Proceeding.

7.     3AC was an investment firm founded in 2013 and incorporated in the British Virgin Islands (*i.e.,* "BVI").  3AC engaged in the trading of cryptocurrency and other digital assets. 3AC's investment strategy involved making large, leveraged cryptocurrency trades using funding from the Debtors and other investors.

8.     Between 2018 and 2021, as the cryptocurrency market grew, 3AC's strategy was successful.  Beginning in early 2022, however, the global cryptocurrency market experienced a historic and significant decline.  As a result of this crisis, 3AC failed—ultimately loosing approximately $2.7 billion in value between February and May 2022.

9.     On June 27, 2022, the 3AC Debtor commenced the BVI Proceeding before the BVI Court.  Under BVI law, the Joint Liquidators are fiduciaries of the 3AC estate, with an obligation to conduct an orderly, fair liquidation of the 3AC Debtor estate, and to maximize the value of its assets for 3AC's creditors.

10.     On July 1, 2022, the Joint Liquidators commenced a proceeding under chapter 15 of the Bankruptcy Code (the "**Chapter 15 Case**") before Chief Judge Martin Glenn of the U.S. Bankruptcy Court for the Southern District of New York (the "**Chapter 15 Court**").  The Chapter 15 Court entered an order (the "**Recognition Order**") recognizing the BVI Proceeding as a "foreign main proceeding" on July 28, 2022.  In accordance with section 1509(c) of the Bankruptcy Code, a certified copy of the Recognition Order is attached hereto as Exhibit B.

### II.     The 3AC Debtor Is Pursuing Analogous Claims Against Debtors in Several Proceedings.

11.     The 3AC Debtor filed proofs of claims in the chapter 11 cases of the above-captioned Debtors (the "**Genesis Debtors**") in the U.S. Bankruptcy Court for the Southern District

of New York before Judge Sean H. Lane (the "**Genesis Chapter 11 Cases**") (collectively, the "**Genesis POCs**", and the claims set forth therein, the "**Genesis Claims**").[4]  Via the Genesis Claims, 3AC seeks to (a) avoid, under BVI law, preferential transfers to the Genesis Debtors by 3AC while it was insolvent in the aggregate amount of approximately $563.2 million, and (b) recover approximately $614 million of assets that the Genesis Debtors purported to foreclose on in the absence of a valid and enforceable security interest pursuant to New York law, BVI law, and section 542 the Bankruptcy Code.  The 3AC Debtor has filed a motion for relief from the stay in the Genesis Chapter 11 Cases.[5]

12.     The 3AC Debtor filed proofs of claims in the chapter 11 cases of BlockFi Inc. and its debtor affiliates (collectively, the "**BlockFi Debtors**")[6] in the U.S. Bankruptcy Court for the District of New Jersey before Chief Judge Michael B. Kaplan, (collectively, the "**BlockFi POCs**", and the claims set forth therein, the "**BlockFi Claims**").[7]  In the BlockFi Claims, the 3AC Debtor asserts claims (a) to avoid, pursuant to BVI law, preferential transfers to the BlockFi Debtors by 3AC while it was insolvent in the aggregate amount of approximately $273 million, and (b) for repayment of a loan in the amount of approximately $10 million.  The 3AC Debtor has filed a motion for relief from the stay in the BlockFi Chapter 11 Cases.[8]

---

[4]   The Genesis POCs include Claim Nos. 981, 982, 990, which amend and incorporate by reference for all purposes all previously filed claims including Claim Nos. 523, 526, and 527.

[5]   *See Motion of the Foreign Representatives of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* (ECF No. 678).

[6]   *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. filed Nov. 28, 2022) (the "**BlockFi Chapter 11 Cases**" and the "**BlockFi Court**").

[7]   The BlockFi POCs include Claim Nos. 33518, 33519, 33520, 33521, 33522, 33523, 33524, 33525, 33525, which amend and incorporate by reference for all purposes all previously filed claims including Claim Nos. 25958, 25964, 25953, 25985, 26292, 25923, 25984, 25961, and 15592.

[8]   *See Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief.* (BlockFi Chapter 11 Cases, ECF No. 1492).

13.     The 3AC Debtor filed proofs of claims in the chapter 11 cases of FTX Trading Ltd. and its debtor affiliates (collectively, the "**FTX Debtors**")[9] in the U.S. Bankruptcy Court for the District of Delaware before Judge John T. Dorsey (collectively, the "**FTX POCs**", and the claims set forth therein, the "**FTX Claims**").[10]  In the FTX Claims, 3AC asserts under BVI, New York, Delaware, and other applicable law, claims for preference, conversion, and other avoidance actions, arising from, a purported foreclosure by the FTX Debtors on alleged collateral securing a loan for approximately $120 million.  The 3AC Debtor will be filing a motion seeking relief from the automatic stay in the FTX Chapter 11 Cases in short order.

14.     The 3AC Debtor has sought authority in the chapter 11 cases of Celsius Network LLC and its debtor affiliates (collectively, the "**Celsius Debtors**")[11] in the U.S. Bankruptcy Court for the Southern District of New York before Chief Judge Martin Glenn to assert a setoff right in defense of a claim asserted by Celsius Network in the BVI Proceedings based on Celsius Network's prepetition receipt of an "unfair preference" as that term is defined under BVI law. (collectively, the "**Celsius Setoff Motion**", and the claims set forth therein, the "**Celsius Claims**").[12]  By the Celsius Setoff Motion, the 3AC Debtor seeks to reduce or eliminate the claim of Celsius Network in the BVI Proceedings, pursuant to BVI law which authorizes the reduction

---

[9]   *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. filed Nov. 11, 2022)  (the "**FTX Chapter 11 Cases**" and the "**FTX Court**").

[10]  The FTX POCs include Claim Nos. 5120, 5121, 5125, 5145, 5147, 5148, 5151, 5152, 5154, 5155, 5156, 5158, 5159, 5160, 5167, 5168, 5169, 5170, 5171, 5172, 5173, 5175, 5176, 5177, 5178, 5179, 5180, 5181, 5182, 5183, 5184, 5185, 5186, 5187, 5188, 5189, 5190, 5191, 5192, 5194, 5195, 5196, 5197, 5198, 5199, 5200, 5201, 5203, 5204, 5238, 5239, 5253, 5262, 5269, 5306, 5308, 5319, 5323, 5324, 5327, 5331, 5333, 5336, 5339, 5345, 5348, 5351, 5355, 5360, 5362, 5368, 5373, 5419, 5444, 5445, 5446, 5448, 5449, 5450, 5451, 5452, 5454, 5455, 5456, 5457, 5459, 5460, 5461, 5462, 5464, 5466, 5470, 5473, 5474, 5476, 5477, 5478, 5580, 5581.

[11]  *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. filed on July 13, 2022) (the "**Celsius Chapter 11 Cases**" and the "**Celsius Court**") (ECF No. 3569).

[12]  The 3AC Debtor is not represented by Latham & Watkins LLP in connection with the Celsius Claims or the Celsius Setoff Motion.  The 3AC Debtor is exclusively represented by Holland & Knight LLP in the Celsius Chapter 11 Cases and in connection with the Celsius Claims, including the filing of this Motion with respect thereto.

of an asserted claim equal to the amount of unfair preferences received by a claimant from 3AC while it was insolvent.  The 3AC Debtor claims that the unfair preference recovery received by Celsius Network is in the amount of approximately $65 million.

15.    On August 21, 2023, the BlockFi Debtors filed (a) an objection to the BlockFi POCs (the "**BlockFi Objection**"),[13] and (b) a motion to estimate the 3AC Debtor's claims at $0.[14] A scheduling conference on these matters is currently set for October 10, 2023.

16.    On September 1, 2023, the Genesis Debtors filed an objection to the Genesis POCs (the "**Genesis Objection**").[15]    The Genesis Debtors seek to prosecute the Genesis Objection swiftly under the timeline set forth in the Genesis Scheduling Order[16], attached hereto as Exhibit C, and without regard to ongoing proceedings on common issues for the 3AC Claims in other the courts.  The 3AC Debtor is and has been actively engaged in discovery with the Genesis Debtors with respect to the Genesis POCs.

17.    Because the 3AC Claims assert preference claims under BVI law, adjudication of the Genesis Objection and the BlockFi Objection will raise similar issues of fact and law.  As a key issue that is core to the 3AC Debtor, both the Genesis Objection and the BlockFi Objection dispute whether the 3AC Debtor demonstrated that it was insolvent at the time of the relevant transactions.  *See* Genesis Objection ¶ 4, BlockFi Objection ¶ 27.  To succeed on a preference claim under BVI law, the plaintiff must demonstrate that it was insolvent at the time of the relevant

---

[13]    *See Debtors' Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd.* (BlockFi Chapter 11 Cases, ECF No. 1375).

[14]    *See Notice of Debtors' Motion to Estimate the Amount of the 3AC Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code* (BlockFi Chapter 11 Cases, ECF No. 1346).

[15]    *See* the *Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (ECF No. 658).

[16]    The "**Genesis Scheduling Order**" is the *Order Granting the Debtors' Motion for Entry of a Scheduling Order Concerning the Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (ECF No. 695).

transactions.[17]    BVI Insolvency Act 2003 (as amended), S.I. 47/2004, § 245(1).    Thus, the

determination of the 3AC Debtor's solvency—down to the precise day—will be necessary for

adjudication of the 3AC Debtor's preference claims against the Genesis Debtors and the BlockFi

Debtors, and other parties.    And this determination will be both fact intensive and critical.    As an

example, some of the transactions whose avoidability may turn on the exact date of the 3AC

Debtor's insolvency include:

- on May 5, 2022, the 3AC Debtor transferred $71 million to the BlockFi Debtors, which is subject to a preference claim in the BlockFi Chapter 11 Cases;

- on May 6, 2022, the 3AC Debtor made a payment to the Genesis Debtors of $115 million, which is subject to a preference claim in the Genesis Chapter 11 Cases;

- on May 9, 2022, the 3AC Debtor made a payment of $71 million to the BlockFi Debtors, which is subject to a preference claim in the BlockFi Chapter 11 Cases;

- on May 11 and 12, 2022, the 3AC Debtor transferred over 13 million shares of the Grayscale Bitcoin Trust and other digital assets to the Genesis Debtors with an aggregate value over $250 million, which is subject to a preference claim in the Genesis Chapter 11 Cases; and

- on May 12 and 18, 2022, the 3AC Debtor transferred 21,025 and 13,200 Ether, respectively, to the BlockFi Debtors, with a value as of the date of the transfers of approximately $41.1 million and $25.2 million, respectively, which are subject to preference claims in the BlockFi Chapter 11 Cases.

And the 3AC Claims challenge other transactions that took place during the preference period,

totaling approximately $1.3 billion in the aggregate against just the four Debtor Defendants,

putting aside preference claims against other parties.

---

[17]    Pursuant to section 245 of the BVI Insolvency Act, a transaction is subject to avoidance as an "unfair preference" if the transaction: (a) "is an insolvency transaction;" (b) is "entered into within the vulnerability period;" and (c) "has the effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he or she would have been in if the transaction had not been entered into." Insolvency Act 2003 (as amended), S.I. 47/2004, § 245(1).    And under section 244(2) of the BVI Insolvency Act, an "insolvency transaction" is a transaction "entered into at a time when [a] company is insolvent" or that "causes a company to become insolvent."    BVI Insolvency Act 2003 (as amended), S.I. 47/2004, § 244(2).

18.     Likewise, the Genesis Objection and the BlockFi Objection raise common defenses in response to the 3AC Claims.  These include (a) the affirmative defense, under BVI law, that the transfer is protected from avoidance because it was entered "in the ordinary course of business," and (b) that the transfer is protected from avoidance under the safe harbor provision in section 546(e) of the Bankruptcy Code.  *See* Genesis Objection ¶¶ 133-81; BlockFi Objection ¶ 30. Importantly, the 3AC Debtor expects that the applicability of section 546(e) safe harbor to cryptocurrency lending transactions to be a critical issue in each of the Debtor Defendants' chapter 11 cases, as well as the BVI Proceeding and the Chapter 15 Case, which the Debtor Defendants may argue bars any preference claims by the 3AC Debtor.

19.     Because each 3AC Claim asserts preference claims under BVI law, the 3AC Debtor expects that the other Debtor Defendants will also raise substantially similar arguments and defenses at the appropriate time in connection with the future adjudication of the 3AC Claims. Accordingly, resolution of the 3AC Claims will require rulings on substantially similar core issues of fact and law, including, but not limited to, (a) when exactly 3AC became insolvent, (b) whether the relevant transactions among the parties and the 3AC Debtor took place in the ordinary course of business, and (c) whether the transfers the 3AC Debtor seeks to avoid are subject to the safe harbor provisions of the Bankruptcy Code.

20.     ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

### BASIS FOR RELIEF

**I.    The Court Maintains Authority to Control Its Docket in Order to Adjudicate Matters in a Just and Efficient Manner.**

21.    The Bankruptcy Rules and bankruptcy policy provide adequate authority to resolve the common issues of fact and law posited in the 3AC Claims in a centralized forum.

22.    Section 105(a) grants broad authority to a court to issue orders that are necessary or appropriate to carry out the provisions of the Bankruptcy Code.  Specifically, section 105(a) provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[18]  Courts have also described section 105(a) as codifying bankruptcy courts' "general powers of equity."  *See In re SubMicron Sys. Corp.*, 432 F.3d 448, 455 (3d Cir. 2006).  And it is well established that bankruptcy courts have significant discretion in their ability to manage their own dockets pursuant to the powers vested under section 105(a) of the Bankruptcy Code.  *See In re Racing Servs., Inc.*, 635 B.R. 498, 507–08 (B.A.P. 8th Cir. 2022) ("[The court's authority to control its own docket] is also granted in Section 105(a) of the Bankruptcy Code.  That section gives courts the equitable powers

---

[18]    11 U.S.C. § 105(a).

necessary to carry out the provisions of the Code, including orders enabling bankruptcy judges to maintain control of the courtroom and administration of dockets in cases before them."); *see also In re Fletcher Int'l, Ltd.*, 536 B.R. 551, 557 (S.D.N.Y. 2015), *aff'd sub nom. In the Matter of: Fletcher Int'l, Ltd.*, 661 F. App'x 124 (2d Cir. 2016) ("Decisions made by bankruptcy courts concerning docket management are reviewed for abuse of discretion.").

23.    Public policy supports granting a court flexibility to resolve its cases fairly and effectively. *See In re Racing Servs., Inc.*, 635 B.R. at 507 ("The court's authority to control its own docket reflects the public policy underlying Federal Rule of Civil Procedure 1: the just, speedy, and inexpensive determination of every action.") (internal citations and quotations omitted); *see also In re Padilla*, 389 B.R. 409, 429 (Bankr. E.D. Pa. 2008) ("The bankruptcy courts' equitable powers provide broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates, *see In re Kaiser Aluminum Corp.,* 456 F.3d 328, 340 (3d Cir.2006), and include the power to 'craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the Code was designed to obtain.' *Id.* (quoting *In re Official Comm. Of Unsecured Creditors of Cybergenics Corp.,* 330 F.3d 548, 568 (3d Cir. 2003)).").

24.    Chapter 15 of the Bankruptcy Code, which governs the 3AC Debtor's pending U.S. proceeding, provides additional support for the requested relief.  Section 1509 of the Bankruptcy Code states, "If the court grants recognition under section 1517, and subject to any limitations that the court may impose consistent with the policy of this chapter . . . (3) *a court in the United States shall grant comity or cooperation to the foreign representative.*" 11 U.S.C. § 1509(b)(3) (emphasis added); *see In re OAS S.A.*, 533 B.R. 83, 99 (Bankr. S.D.N.Y. 2015) (quoting *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1047 (5th Cir. 2012) ("Although use of the word 'comity' connotes recognition

of another judicial proceeding, ***the word 'cooperation' suggests a much broader meaning***." )
(emphasis added); *see also In re Iida*, 377 B.R. 243, 257 n.20 (B.A.P. 9th Cir. 2007) (quoting
H.R.Rep. No. 109–31, at 110–11 (2005), *reprinted* in 2005 U.S.C.C.A.N. 88, 173 (citations
omitted)) ("The goal [under section 1509] is to concentrate control of these questions in one court.
That goal is important in a Federal system like that of the United States with many different courts,
state and federal, that may have pending actions involving the debtor or the debtor's property.").
The Chapter 15 Court has granted recognition of the BVI Proceeding as a "foreign main
proceeding" under chapter 15.  *See* Recognition Order, ⁋ 2.  And the Joint Liquidators are the
"foreign representatives" of the 3AC Debtor in the Chapter 15 Case.  *Id.* ⁋ I.  Accordingly, the
relevant courts have statutory authority cooperate with the Joint Liquidators in the Chapter 15 Case
and establish a centralized forum to adjudicate common issues of fact and law raised by the 3AC
Claims, which will benefit all parties involved.[19]

25.     Section 1525 of the Bankruptcy Code further provides, "Consistent with section
1501, the court ***shall cooperate to the maximum extent possible*** with a foreign court or a foreign
representative, either directly or through the trustee."  11 U.S.C. § 1525(a) (emphasis added).  And
the bankruptcy court is "entitled to communicate directly with, or to request information or assistance
from, a foreign court or a foreign representative, subject to the rights of a party in interest to notice
and participation."  11 U.S.C. § 1525(b).

26.     Furthermore, the express statutory objectives behind chapter 15 support coordination
among courts in these circumstances.  Specifically, section 1501 of the Bankruptcy Code provides
(in relevant part):

---

[19]   This Motion will be filed in the Chapter 15 Proceeding in short order.

13

> The purpose of this Chapter is to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of [. . .]
>
> > (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
> >
> > (4) protection and maximization of the value of the debtor's assets[.]

11 U.S.C. § 1501(a); *see also In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 161 (Bankr.C.D.Cal.2005)) ("Deference to foreign insolvency proceedings will often facilitate the distribution of the debtor's assets in an equitable, orderly, efficient, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion.").

27. In addition, other Bankruptcy Rules and federal statutes likewise demonstrate why cross-court coordination with respect to the 3AC Claims would be consistent with federal policy. Rule 42 of the Federal Rules of Civil Procedure provides (in relevant part):

> "Consolidation. If actions before the court involve a common question of law or fact, the court may:
>
> > (1) join for hearing or trial any or all matters at issue in the actions;
> >
> > (2) consolidate the actions; or
> >
> > (3) issue any other orders to avoid unnecessary cost or delay."

Fed. R. Civ. P. 42.[20] In exercising their discretion under Rule 42, courts are guided by principles of judicial economy. *See Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985) ("[The court must determine] [w]hether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal

[20] Rule 42 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Bankruptcy Rule 7042 and to contested matters, such as this Motion, by Bankruptcy Rule 9014(c). *See* Fed. R. Bankr. P. 7042 and 9014(c).

issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) (same); *In re Total Containment, Inc.*, No. 04–13144, 2008 WL 817104, at *3 (Bankr. E.D. Pa. Mar. 25, 2008) (same); *In Matter of High-Top Holdings, Inc.*, No. 16-10022-WHD, 2016 WL 3135790, at *1 (Bankr. N.D. Ga. May 16, 2016) (same). Thus, courts will weigh the potential benefits of consolidation against the possibility of "delays, expense, benefits, confusion or prejudice" when determining whether to consolidate matters under Rule 42 (citation omitted). *See In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998).

28.    Indeed, bankruptcy courts have invoked their authority to consolidate separate avoidance actions pursuant to Bankruptcy Rule 7042 for the purpose of litigating the common issue of the debtor's solvency. *See, e.g.*, *In re Enron Corp.*, 351 B.R. 305, 307 (Bankr. S.D.N.Y. 2006) (consolidating thirty-two (32) separate avoidance actions filed by a debtor for purposes of litigating insolvency-related issues); *In re Am. Classic Voyages Co.*, 367 B.R. 500, 502 (Bankr. D. Del. 2007), *aff'd sub nom. In re Am. Classic Voyages*, Co., 384 B.R. 62 (D. Del. 2008) (holding a consolidated trial regarding the common issue of whether some or all of the Debtors were solvent on the dates of preferential transfers alleged in three separate adversary proceedings); *In re S. Indus. Banking Corp.*, 189 B.R. 697, 702 (E.D. Tenn. 1992) (stating the bankruptcy court had authority to consolidate several adversary proceedings for the adjudication of certain common issues of fact, including whether the debtor was insolvent throughout the 90 days preceding its bankruptcy).

29.    In addition, the principles and public policy underlying the consolidation of otherwise disparate litigation in multi district litigations ("**MDLs**") are consistent with the relief that the 3AC Debtor seeks in this Motion.  MDLs allow actions that are pending in different districts and share one or more common questions of fact to be transferred to any district for consolidated or coordinated proceedings upon the court's determination that "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 USC § 1407.  Although the 3AC Debtor is not asking for the creation of a MDL, the statute expressly recognizes the benefits of judicial economy.  *Id.*; *see also Leo as Tr. of Est. of Grigsby v. Koch Farms of Gadsden, LLC*, No. 4:20-CV-01997-ACA, 2023 WL 3956161, at *3 (N.D. Ala. June 12, 2023) ("The purpose of MDLs is to consolidate proceedings for the convenience of parties and to "promote the just and efficient conduct of such actions."); *In re Prepared Food Photos, Inc., Copyright Litig.*, No. MDL 3075, 2023 WL 3829245, at *1 (JPML June 5, 2023) ("Centralization places all actions before a single judge and offers an efficient means of resolving all claims brought by plaintiff [] against the common defendant [] and its customers.").

30.    Furthermore, bankruptcy courts frequently employ innovative practices which seek to facilitate the orderly administration of complex issues and promote judicial efficiency.  Examples of bankruptcy courts doing so include, but are not limited to, the following:

   (a)    In 3AC's Chapter 15 Case, the Chapter 15 Court approved cross-border court-to-court communication protocols that promote the effective administration of cross-border issues that may arise among the BVI Court, the Chapter 15 Court, and the Court overseeing 3AC's proceedings in Singapore, pursuant to section 105(a) of the Bankruptcy Code.[21]

---

[21]    *In re Three Arrows Capital, Ltd.*, No. 22-10920 (MG) (Bankr. S.D.N.Y. Dec. 6, 2022) (order approving cross-border court-to-court communications protocol) (ECF No. 72).

(b)     Several other bankruptcy courts that have presided over multinational restructuring proceedings have authorized similar cross-border protocols to address common issues more effectively.[22]

(c)     Bankruptcy courts throughout the United States have held joint trials when they have deemed it necessary to the effective administration of contemporaneous complex cases.  For example, citing "notions of justice, efficiency and transparency"[23] the courts presiding over the *SunEdison, Inc.*[24], *Old ANR, LLC*[25], and *Westmoreland Coal Co.*[26] held a joint-evidentiary hearing with respect to the approval of a settlement agreement that would impact each respective case.

(d)     The courts presiding over the two bankruptcy cases of Chaparral Energy, Inc. and its debtor affiliates—which filed for chapter 11 protection in 2016 and again in 2020—held a joint hearing with respect to a settlement agreement that implicated both estates.[27]

(e)     The local rules of at least one relevant court—the FTX Court—expressly allow for communication among that court and others.  Specifically, Part X, to the Local Rules for the United States Bankruptcy Court of District of Delaware, attached hereto as <u>Exhibit D</u>, expressly states that "A court may receive communications from a foreign court and may respond directly to them.  Such communications may occur for the purpose of the orderly making of submissions ***and rendering of decisions by the courts***, and to coordinate and resolve any procedural, administrative or preliminary matters relating to any joint hearing[. . .]" (emphasis added).

31.     Rulings on the common issues of law and fact will be central to the resolution of

the 3AC Claims.  These common issues are also critically important to the outcome of 3AC's BVI

---

[22]   *See, e.g.*, *In re LATAM Airlines Grp. S.A.*, No. 20-11254 (Bankr. S.D.N.Y. Sept. 1, 2020) (order granting motion to approve cross-border court-to-court communications protocol) (ECF No. 978); *In re Aralez Pharms. U.S. Inc.*, No. 18-12425 (Bankr. S.D.N.Y. Nov. 1, 2018) (order implementing cross-border insolvency protocol) (ECF No. 237); *In re Ezra Holdings Ltd.*, No. 17-22405 (Bankr. S.D.N.Y. Mar. 27, 2018) (order implementing cross-border insolvency protocol) (ECF No. 343), *In re Toys "R" Us, Inc.*, No. 17-34665 (Bankr. E.D. Va. Oct. 25, 2017) (ECF No. 725); *In re Ocean Rig UDW Inc.*, No. 17-10736 (Bankr. S.D.N.Y. June 29, 2017) (order approving form of protocol) (ECF No. 85).

[23]   *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. Mar. 14, 2019) (scheduling order regarding joint evidentiary hearing) (ECF No. 5837).

[24]   *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. filed Apr. 21, 2016).

[25]   *In re Old ANR LLC*, No. 19-00302 (KRH) (Bankr. E.D. Va. filed Aug. 3, 2015, reopened Jan. 16, 2019).

[26]   *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. filed Oct. 9, 2018).

[27]   *In re Chaparral Energy, Inc.*, No. 20-11947 (MFW) (Bankr. D. Del. Aug. 19, 2020) (scheduling order regarding settlement agreement) (ECF No. 104).

Proceeding and Chapter 15 Case.  Cooperation and communication among the various courts

provides opportunity for these core issues to be more easily resolved in a central forum, while also

preserving the ability of each Debtor Defendant to reach a final adjudication of the 3AC Claims in

their respective chapter 11 case.

## II.    Requiring the 3AC Debtor to Litigate Common Questions in Separate Venues Undermines Judicial Efficiency.

32.    Maintaining the status quo—that is, redundant adjudication of the common issues

of law and fact raised by the 3AC Claims in separate venues—would place substantial strain on

the limited resources of the 3AC Debtor's estate.  The 3AC Debtor is currently engaging in

duplicative litigation with respect to common issues of fact and law in multiple venues.[28]  It is

burdensome for the 3AC Debtor's estate to continue to coordinate these complex litigation and

discovery efforts—including witness depositions and expert testimony—in these separate venues

regarding substantially identical issues with respect to 3AC's solvency.

33.    In contrast, if the requested relief is granted, then the common issues raised by the

3AC Claims can be litigated in an effective and streamlined manner that will not prejudice the

3AC Debtor, the Debtor Defendants, or their respective creditors and stakeholders.  Under the

proposed process outlined herein (or other agreed upon, coordinated approaches), the common

issues of fact and law raised by the 3AC Claims will be litigated in a centralized venue, such as

the BVI Court or the Chapter 15 Court, and the decisions with respect to the common issues can

be taken back to the Debtor Defendants' chapter 11 courts for the resolution of their respective

---

[28]    *See the Genesis Scheduling Order*; *see also Debtors' Motion to Estimate the Amount of the 3AC Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code* (BlockFi Chapter 11 Cases, ECF No. 1346); *Notice of Amended Agenda for Hearing* (BlockFi Chapter 11 Cases, ECF No. 1535).

claims. This would be an efficient use of precious estate resources and would help maximize recoveries for the 3AC Debtor's creditors.[29]

34.     Furthermore, a central forum would also provide benefits to the Debtor Defendants. A cost-effective adjudication of the 3AC Claims would generate savings for the Debtor Defendants' estates, which enhance recoveries for the creditors in those cases, or (at a minimum) limit loses on account of possibly duplicative litigation expenses.

## III.    Requiring the 3AC Debtor to Litigate Common Questions in Separate Venues is Highly Prejudicial.

35.     Determining when the 3AC Debtor became insolvent is the single most important question in the BVI Proceeding, and will impact the treatment of billions of dollars of claims held by and against the 3AC Debtor estate. As noted herein, the 3AC Claims challenge a large number of transactions that took place during the preference period and that total approximately $1.3 billion in the aggregate against just the four Debtor Defendants, and not considering transactions among the 3AC Debtor and other parties. Thus, any determination with respect to the 3AC Debtor's solvency will also require the expenditure of significant resources in the form of discovery, depositions, witness examination and preparation, among other things.

---

[29]  The process for initiating an adversary proceeding in a chapter 15 proceeding is substantially similar to the process in a chapter 11 case. Section 1521 of the Bankruptcy Code provides that, following recognition of a foreign proceeding, the chapter 15 court may "at the request of the foreign representative, grant any appropriate relief" that is "necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 USC § 1521. Because the Chapter 15 Court has granted the recognition to the BVI Proceeding, the Joint Liquidators may request, and the Chapter 15 Court may hear, adversary proceedings in the Chapter 15 Proceedings just as a chapter 11 court would oversee adversary proceedings. Examples of adversary proceedings in chapter 15 proceedings include: *In re IIG Global Trade Finance Fund Ltd. (in Official Liquidation)*, No. 23-01165 (MEW) (Bankr. S.D.N.Y. Aug. 31, 2023) (complaint initiating adversary proceeding in chapter 15 proceedings), (ECF No.1); *In re IIG Global Trade Finance Fund Ltd. (in Official Liquidation)*, No. 21-01215 (MEW) (Bankr. S.D.N.Y. Dec. 9, 2021) (same), (ECF No.1); *In re IIG Global Trade Finance Fund Ltd. (in Official Liquidation)*, No. 23-01170 (MEW) (Bankr. S.D.N.Y. Sept. 8, 2023) (same), (ECF No.1); *In re Cryptopia Limited. (in Liquidation)*, No. 20-01317 (DSJ) (Bankr. S.D.N.Y. Nov. 12, 2020) (same), (ECF No.1).

36.    Inconsistent decisions with respect to the 3AC Debtor's solvency could be weaponized against the 3AC Debtor by a party litigating 3AC Claims at a later date via arguments based on equitable estoppel, issue preclusion, or similar doctrines.    The disparate litigation schedules will enable Debtor Defendants to argue that a prior adverse decision with respect to the 3AC Debtor on a common issue implicated by the 3AC Claims has a preclusive effect against the 3AC Debtor in a subsequent litigation.

37.    Accordingly, there is ample reason and statutory authority for the presiding courts in these separate cases to avoid the unwanted outcomes created by potentially having four trials on substantially similar issues.    A centralized venue will ensure that these critical matters are decided in an efficient and effective manner, consistent with the overarching goals of bankruptcy policy, including "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor."    11 U.S.C. § 1501(a)(3).

## RESERVATION OF RIGHTS

38.    The Joint Liquidators do not yet have access to all documentation and records relating to possible claims or the 3AC Debtor's relationship with the Genesis Debtors, and thus far have been able to identify the claims raised in the 3AC Genesis POCs via the limited information available to them.    The Joint Liquidators reserve their rights to assert any additional claims they are subsequently able to uncover by amendment of the 3AC Genesis POCs or otherwise.

## NOTICE

39.    Notice of this Motion has been provided to: (a) the Chambers of the Honorable Sean Lane, (b) the Genesis Debtors, (c) Cleary Gottlieb Steen & Hamilton LLP, as counsel for the Genesis Debtors, (d) the Office of the U.S. Trustee for the Southern District of New York, and

(e) all other parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Joint Liquidators

submit that such notice is sufficient, and no other or further notice need be provided.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Joint Liquidators respectfully request entry of an order, substantially in the form attached hereto as Exhibit A , granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 28, 2023
    New York, New York

Respectfully submitted,

Warren E. Gluck
**HOLLAND & KNIGHT LLP**
31 West 52nd Street, 12th Floor
New York, NY 10019
Telephone: (212) 513-3200
Email:  warren.gluck@hklaw.com

and –

John J. Monaghan (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: (617) 573-5834
Email:   john.monaghan@hklaw.com

*/s/ Christopher Harris*
Christopher Harris
Adam J. Goldberg
Brett M. Neve
Nacif Taousse
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:   chris.harris@lw.com
    adam.goldberg@lw.com
    brett.neve@lw.com
    nacif.taousse@lw.com

– and –

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
Emily R. Orman (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:   nima.mohebbi@lw.com
    tiffany.ikeda@lw.com
    emily.orman@lw.com

*Counsel to the Joint Liquidators of Three Arrows Capital, Ltd.*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 28th day of September, 2023, a true and correct copy of the foregoing Amended Motion was furnished to all ECF Participants via the Court's CM/ECF system.

*/s/ Christopher Harris*
Christopher Harris

**<u>Exhibit A</u>**

Proposed Order

Christopher Harris

Adam J. Goldberg

Brett M. Neve

Nacif Taousse

**LATHAM & WATKINS LLP**

1271 Avenue of the Americas

New York, NY 10020

Telephone: (212) 906-1200

Facsimile: (212) 751-4864

Email:  chris.harris@lw.com

adam.goldberg@lw.com

brett.neve@lw.com

nacif.taousse@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)

Tiffany M. Ikeda (admitted *pro hac vice*)

Emily R. Orman (admitted *pro hac vice*)

**LATHAM & WATKINS LLP**

355 South Grand Avenue, Suite 100

Los Angeles, CA 90071

Telephone: (213) 485-1234

Facsimile: (213) 891-8763

Email:  nima.mohebbi@lw.com

tiffany.ikeda @lw.com

emily.orman@lw.com

Warren E. Gluck

**HOLLAND & KNIGHT LLP**

31 West 52nd Street, 12th Floor

New York, NY 10019

Telephone: (212) 513-3200

Email:  warren.gluck@hklaw.com

John J. Monaghan (*pro hac vice* pending)

**HOLLAND & KNIGHT LLP**

10 St. James Avenue, 11th Floor

Boston, MA 02116

Telephone: (617) 573-5834

Email:  john.monaghan@hklaw.com

*Counsel to the Joint Liquidators of Three Arrows Capital, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------X
                                                           :
In re:                                                     :      Chapter 11
                                                           :
Genesis Global Holdco, LLC, et al.,¹                       :      Case No. 23-10063 (SHL)
                                                           :
                                                           :      Jointly Administered
                           Debtors.                        :
                                                           :
-----------------------------------------------------------X
```

**ORDER WITH RESPECT TO THE AMENDED MOTION OF THE**
**JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD.**
**FOR COORDINATION AMONG COURTS**

---

[1]    The debtors in these Chapter 11 Cases , along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003

Upon consideration of the motion (the "**Motion**")[2] of the Joint Liquidators of Thee Arrows Capital, Ltd., for entry of an order authorizing this Court to conference with the BVI Court, the BlockFi Court, the FTX Court, the Celsius Court, and the Chapter 15 Court to establish procedures to adjudicate the overlapping and identical issues of fact and law raised by the 3AC Claims in a centralized forum; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); the relief requested in the Motion being in the best interests of the Debtors' estates, creditors, and other parties-in-interest; proper notice having been given under the circumstances and no further notice is necessary; and after due deliberation thereon, and good and sufficient cause appearing therefor, it is hereby:

ORDERED that on or before [ ● ], 2023, this Court, the BVI Court, the BlockFi Court, the FTX Court, the Celsius Court, and the Chapter 15 Court shall coordinate in order to establish procedures to adjudicate the common issues of fact and law raised by the 3AC Claims in a centralized forum.

ORDERED that this Court shall retain jurisdiction to resolve any disputes arising from or related to this Order, and to interpret, implement, and enforce the provisions of this Order.

Dated: _____

White Plains, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATE BANKRUPTCY JUDGE

---

[2]    Capitalized terms not defined herein shall have the meanings ascribed in the Motion.

**<u>Exhibit B</u>**

Certified Copy of the 3AC Debtor's Recognition Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Three Arrows Capital, Ltd,[1] | Case No. 22-10920 (MG) |
| Debtor in a Foreign Proceeding. | |

## ORDER GRANTING RECOGNITION OF
## FOREIGN MAIN PROCEEDING AND RELATED RELIEF

Upon the *Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding and Related Relief* (ECF Doc. # 2) (the "Verified Petition")[2] of Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized foreign representatives (the "Foreign Representatives") of Three Arrows Capital, Ltd (the "Debtor"), which is the subject of an insolvency proceeding (the "BVI Proceeding") currently pending in the British Virgin Islands ("BVI") before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "BVI Court") and captioned as *In re Three Arrows Capital Limited*, Case No. BVIHCOM2022/0119 (June 27, 2022), in support of entry of an order:

    a.    finding that (i) the Debtor is eligible to be a "debtor" under chapter 15 of the Bankruptcy Code, (ii) the BVI Proceeding is a "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code, or, alternatively a "foreign nonmain proceeding" within the meaning of section 1502 of the Bankruptcy Code, (iii) the Foreign Representatives satisfy the requirements of a "foreign representative" under section 101(24) of the Bankruptcy Code, and (iv) the Petition was properly filed and meets the requirements of section 1515 of the Bankruptcy Code;

    b.    granting recognition of the BVI Proceeding as a "foreign main proceeding" under sections 1517 and 1520 of the Bankruptcy Code;

---

[1]    The last four digits of the Debtor's British Virgin Islands company registration number are 0531. The location of the Debtor's registered office is ABM Chambers, P.O. Box 2283, Road Town, Tortola, VG1110, British Virgin Islands.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Verified Petition.

c.      granting all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code;

d.      pursuant to section 1521(a), (i) staying the commencement or continuation of proceedings concerning the Debtor's assets, rights, obligations or liabilities, to the extent not stayed automatically under section 1520(a); (ii) staying all parties from executing against, interfering with or otherwise disposing of the Debtor's assets, to the extent not stayed automatically under section 1520; (iii) providing that the Liquidation Order issued by the BVI Court is recognized, granted comity, and entitled to full force and effect in accordance with its terms, and that such terms shall be binding and fully enforceable in the United States; and (iv) entrusting the Foreign Representatives with the administration or realization of all of the Debtor's assets that are located within the territorial jurisdiction of the United States, including prosecution of any causes of action belonging to the Debtor;

e.      waiving the 14-day stay of effectiveness of the Proposed Order;

f.      granting related relief;

and upon the record of this case and the hearing held on July 28, 2022 (the "Hearing") on the

Petition and this Court's review and consideration of the Petition, and the Declarations; and the

Court having found and determined that the relief sought by the Petition is consistent with the

purposes of chapter 15 of the Bankruptcy Code and is in the best interests of the Debtor and its

creditors; and after due deliberation and sufficient cause appearing therefor; and for the reasons

stated on the record at the Hearing;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.      This Court has jurisdiction to consider the Petition and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code, and the *Amended*

---

[3]      The findings and conclusions set forth herein and on the record of the Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

2

*Standing Order of Reference* M-431 dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).

B.     The consideration of the Petition and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and this Court may enter a final order consistent with Article III of the United States Constitution.

C.     Venue is proper before this Court pursuant to 28 U.S.C. § 1410(1).

D.     Good, sufficient, appropriate, and timely notice of the filing of the Petition and the Hearing has been given by the Foreign Representatives, pursuant to Bankruptcy Rules 1011(b) and 2002(q) and the *Order Scheduling Hearing on Chapter 15 Petition and Related Relief and Specifying Form and Manner of Service of Notice* (ECF Doc. # 18) to (i) the United States Trustee for the Southern District of New York; (ii) the Securities and Exchange Commission; (iii) all known creditors of the Debtor; (iv) all parties that have filed a notice of appearance in this Chapter 15 Case; and (v) all parties required to be given notice under Bankruptcy Rule 2002(q)(1) of which the Foreign Representatives are aware.  In light of the nature of the relief requested and prior orders of this Court, no other or further notice is required.

E.     No objections or responses were filed that have not been overruled, withdrawn, or otherwise resolved.

F.     The Debtor has property located in this District, and therefore, the Debtor is "eligible" to be a debtor in this Chapter 15 Case pursuant to sections 109 and 1501 of the Bankruptcy Code.

G.     The BVI Proceeding is a "foreign proceeding" as such term is defined in section 101(23) of the Bankruptcy Code.



3

H.      The BVI Proceeding is pending in the BVI, which is where the Debtor has its "center of main interests" as referred to in section 1517(b)(1) of the Bankruptcy Code.  As such, the BVI Proceeding is a "foreign main proceeding" pursuant to section 1502(4) of the Bankruptcy Code, is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code and is entitled to all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code.

I.      The Foreign Representatives are each a "person" as such term is defined in section 101(41) of the Bankruptcy Code and have been duly appointed and designated as the "foreign representatives" of the Debtor as such term is defined in section 101(24) of the Bankruptcy Code.

J.      This Chapter 15 Case was properly commenced pursuant to sections 1504 and 1509 of the Bankruptcy Code, and the Petition satisfies the requirements of section 1515 of the Bankruptcy Code.

K.      The relief granted herein is necessary and appropriate, in the interests of the public and of international comity, not inconsistent with the public policy of the United States, warranted pursuant to sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code and will not cause hardship to any party in interest.  To the extent that any hardship or inconvenience may result to such parties, it is outweighed by the benefits of the requested relief to the Foreign Representatives, the Debtor, its creditors, and other parties in interest.

L.      The relief granted herein is necessary to effectuate the purposes and objectives of chapter 15 of the Bankruptcy Code and to protect the Debtor and the interests of its creditors and all parties in interest.



M.      In accordance with section 1507(b) of the Bankruptcy Code, the relief granted

herein will reasonably assure: (i) the just treatment of all holders of claims against or interests in

the Debtor's property; (ii) the protection of claim holders in the United States against prejudice

and inconvenience in the processing of claims in the BVI Proceeding; (iii) the prevention of

preferential or fraudulent dispositions of property of the Debtor; and (iv) the distribution of

proceeds of the Debtor's property substantially in accordance with the order prescribed in the

Bankruptcy Code.

N.      The Foreign Representatives have demonstrated that the relief requested with

respect to entrustment of the debtors' assets under section 1521(a)(5) is necessary and appropriate,

in the interests of the public and international comity, consistent with the public policy of the

United States and warranted pursuant to section 1521(a)(5) of the Bankruptcy Code;

O.      All creditors and other parties in interest, including the Debtor, are sufficiently

protected in the grant of the relief ordered hereby in compliance with section 1522(a) of the

Bankruptcy Code.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE
DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFOR, IT IS HEREBY
ORDERED THAT:**

1.      The Petition and the relief requested therein are granted, and any objections or

responses thereto that have not been withdrawn or resolved are overruled with prejudice.

2.      The BVI Proceeding is recognized as a "foreign main proceeding" under

sections 1517(a) and 1517(b)(1) of the Bankruptcy Code.

3.      The Foreign Representatives is recognized as the "foreign representatives" as

defined in section 101(24) of the Bankruptcy Code in respect of the BVI Proceeding.

4.      All relief and protection afforded to a foreign main proceeding under section 1520

of the Bankruptcy Code is hereby granted to the BVI Proceeding, the Debtor, and the Debtor's

5

assets located in the United States, as applicable, including, without limitation, the application of the automatic stay under section 362 of the Bankruptcy Code to the Debtor and its property located in the territorial jurisdiction of the United States; *provided, however,* that the foregoing shall not be deemed to restrict any valid exercise of rights or remedies with respect to enforceable and perfected security interests by Digital Currency Group, Inc. and its affiliates (collectively, "DCG"); *provided, further* that DCG shall provide five (5) calendar days' notice to the Foreign Representatives, which notice may be effected via email, prior to exercising any such rights or remedies and all applicable parties' rights are reserved with respect to the validity, enforceability, perfection, and priority of any such security interests and any exercise of rights or remedies with respect thereto.  For the avoidance of doubt, section 362 of the Bankruptcy Code shall apply in its entirety to the Debtor and its property located in the territorial jurisdiction of the United States.

5.      Each Foreign Representative is entrusted with the administration or realization of all of the Debtor's assets within the territorial jurisdiction of the United States, as set forth in section 1521(a)(5) of the Bankruptcy Code.

6.      To the extent not already provided in 11 U.S.C. § 1520 and subject to paragraph 4, all creditors and other persons are hereby enjoined from (i) disposing or otherwise taking any action against the Debtor or any property of the Debtor located within the territorial jurisdiction of the United States; and (ii) taking or continuing any act to obtain possession of or exercise control over, such property.

7.      To the extent not already provided in 11 U.S.C. § 1520 and subject to paragraph 4, all persons are hereby enjoined from commencing any suit, action or proceeding in the territorial jurisdiction of the United States to resolve any dispute arising out of the BVI Proceeding or the BVI law.

8.      The Liquidation Order is recognized, granted comity, and entitled to full force and effect in accordance with its terms, and that such terms shall be binding and fully enforceable in the United States.

9.      The Foreign Representatives and the Debtor are authorized and empowered to, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order and the Liquidation Order.

10.     No action taken by the Foreign Representatives, the Debtor or their respective agents, representatives, advisors, or counsel, in preparing, disseminating, applying for, implementing or otherwise acting in furtherance of the BVI Proceeding, the documents contemplated thereunder, this Order, the Chapter 15 Case, any further order for additional relief in the Chapter 15 Case, or any adversary proceedings in connection therewith, will be deemed to constitute a waiver of the immunity afforded such persons under sections 306 or 1510 of the Bankruptcy Code.

11.     No party shall incur any liability for following the terms of this Order (whether by acting or refraining from acting), except in the case of the party's own gross negligence or willful misconduct.

12.     Nothing herein shall modify the exclusive right of the courts of the BVI to hear and determine any suit, action, or proceeding and to settle any dispute which may arise out of the Liquidation Order, or out of any action to be taken or omitted to be taken under the Liquidation Order or in connection with the administration of the BVI Proceeding.

13.     Pursuant to sections 1521(a)(6) and 1521(a)(7) of the Bankruptcy Code, the provisional relief granted by this Court pursuant to section 1519 of the Bankruptcy Code and that



7

certain *Order Granting Provisional Relief* (ECF Doc. # 32) shall remain in full force and effect, notwithstanding anything to the contrary contained therein.

14.     The Foreign Representatives, the Debtor, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

15.     Notwithstanding any provision in the Bankruptcy Code or the Bankruptcy Rules to the contrary, including, but not limited to Bankruptcy Rules 1018, 3020(e), 6004(h), 7062 and 9014, (a) this Order shall be effective immediately and enforceable upon its entry, (b) the Foreign Representatives are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order and (c) this Order shall constitute a final order within the meaning of 28 U.S.C. § 158(a).

16.     This Court shall retain jurisdiction with respect to the implementation, enforcement, amendment, or modification of this Order.

**IT IS SO ORDERED.**

Dated:  July 28, 2022
        New York, New York

                              _____/s/ Martin Glenn_____
                                   MARTIN GLENN
                         Chief United States Bankruptcy Judge

# United States Bankruptcy Court for the

# Southern District of New York



This page certifies that document is a True Certified Copy



I HEREBY ATTEST AND CERTIFY ON  9/27/2023
THAT THIS DOCUMENT IS A FULL, TRUE AND CORRECT
COPY OF THE ORIGINAL FILED ON THE COURT'S
ELECTRONIC CASE FILING SYSTEM.

CLERK, US BANKRUPTCY COURT, SDNY

BY: /s/ Annya Acosta DEPUTY CLERK

**<u>Exhibit C</u>**

Certified Copy of the Genesis Scheduling Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |
| | **Related Docket No. 659** |

<div align="center">

**ORDER GRANTING**
**DEBTORS' MOTION FOR ENTRY OF A SCHEDULING**
**ORDER CONCERNING THE DEBTORS' SECOND OMNIBUS**
**OBJECTION (SUBSTANTIVE) TO CLAIM NOS. 523, 526, 527, 981, 982 AND**
**990 PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)**

</div>

Upon the *Debtors' Motion for Entry of a Scheduling Order Concerning the Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Motion")[2] (ECF No. 659) filed by the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), requesting an order pursuant to the Claims Procedures Order and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), (i) establishing a schedule regarding the *Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Renewed Objection") (ECF No. 658) and related discovery and motion practice, and (ii) increasing the page limits with respect to the Renewed Objection and related motion practice; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]     Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Motion.

*Order of Reference* from the United States District Court for the Southern District of New York

dated January 31, 2012; and upon the *Objection to the Debtors' Motion for an Entry of a*

*Scheduling Order Concerning Their Second Omnibus Objection to Claims By the Foreign*

*Representatives of Three Arrows Capital, Ltd.* (ECF No. 673), which proposed a competing

schedule regarding the Renewed Objection and related discovery and motion practice; and the

Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the

Court may enter a final order consistent with Article III of the United States Constitution; and the

Court having found that venue of this proceeding and the Motion in this district is proper pursuant

to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion,

as modified by this Order, is in the best interests of the Debtors, their estates, their creditors and

other parties in interest; and the Court having found that the Debtors' notice of the Motion and

opportunity for a hearing on the Motion was appropriate and no other notice need be provided;

and the Court having determined that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and all objections to the Motion (if any) having been

withdrawn or addressed on the record of the hearing; and upon all of the proceedings had before

the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1.    The Motion is GRANTED to the extent set forth herein, and a discovery schedule

regarding the Renewed Objection, as well as the page limit for the Renewed Objection, shall be

set as follows:

> a.    The Debtors are granted leave, *nunc pro tunc*, to expand the page limit for
> the Renewed Objection to 90 pages, exclusive of the table of contents, table of
> authorities and exhibits.

> b.    The deadline for the Parties to serve document requests shall be September
> 15, 2023 at 11:59 p.m. (prevailing Eastern Time).

c.      The deadline for document productions shall be October 9, 2023 at 11:59 p.m. (prevailing Eastern Time).  The Parties shall endeavor to produce relevant documents on a rolling basis on the earliest possible date, to the extent such documents have not already been produced.

d.      The Parties shall schedule any depositions of fact witnesses between October 4, 2023 and October 24, 2023.

e.      The deadline for the Parties to identify expert witnesses—including the name, title, and affiliation(s) of each of the proposed experts along with the topic(s) on which each will offer opinions—shall be October 23, 2023 at 11:59 p.m. (prevailing Eastern Time).

f.      The Parties shall appear before the Court for a status conference regarding the status of fact discovery and the establishment of a schedule and procedures for expert discovery, pretrial briefing and an evidentiary hearing on **October 24, 2023 at 11:00 a.m.** (prevailing Eastern Time).

g.      Absent order of the Court to the contrary, the discovery period as to factual evidence shall close on November 6, 2023 at 11:59 pm (prevailing Eastern Time) (the "Fact Discovery End Date").  The Fact Discovery End Date shall not apply to expert discovery.

2.      Each of the Parties expressly reserves its rights with respect to any schedule regarding expert discovery, the submission of opening or rebuttal expert declarations or reports, and any additional motion practice with respect to the Renewed Objection and the Claims.

3.      This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.

Dated: September 12, 2023
       White Plains, New York

                                    _/s/ Sean H. Lane_
                                    HONORABLE SEAN H. LANE
                                    UNITED STATES BANKRUPTCY JUDGE



# United States Bankruptcy Court for the

# Southern District of New York



This page certifies that document is a True Certified Copy



I HEREBY ATTEST AND CERTIFY ON  9/27/2023
THAT THIS DOCUMENT IS A FULL, TRUE AND CORRECT
COPY OF THE ORIGINAL FILED ON THE COURT'S
ELECTRONIC CASE FILING SYSTEM.

CLERK, US BANKRUPTCY COURT, SDNY

BY: /s/ Annya Acosta DEPUTY CLERK

**<u>Exhibit D</u>**

Part X, to the Local Rules for the United States Bankruptcy Court of District of Delaware

**PART X.**        <u>**MODALITIES OF COURT-TO-COURT COMMUNICATION**</u>

### Scope and Definitions

1.   These Modalities apply to direct communications (written or
     oral) between courts in specific cases of cross-border
     proceedings relating to insolvency or adjustment of debt
     opened in more than one jurisdiction ("Parallel
     Proceedings"). Nothing in this document precludes indirect
     means of communication between courts, such as through the
     parties or by exchange of transcripts, etc. This document
     is subject to any applicable law.

2.   These Modalities govern only the mechanics of communication
     between courts in Parallel Proceedings. For the principles
     of communication (<u>e.g.</u>, that court-to-court communications
     should not interfere with or derogate from the jurisdiction
     or the exercise of jurisdiction by a court in any
     proceedings, etc.), reference may be made to the Guidelines
     for Communication and Cooperation between Courts in Cross-
     Border Insolvency Matters (the "Guidelines") issued by the
     Judicial Insolvency Network in October 2016, adopted in the
     Local Rules in 2017 as APPENDIX A hereto.

3.   These Modalities contemplate contact being initiated by an
     "Initiating Judge" (defined below). The parties before such
     judge may request him or her to initiate such contact, or
     the Initiating Judge may seek it on his or her own
     initiative.

4.   In this document:

     a.   "Initiating Judge" refers to the judge initiating
          communication in the first instance;

     b.   "Receiving Judge" refers to the judge receiving
          communication in the first instance;

     c.   "Facilitator" refers to the person(s) designated by
          the court where the Initiating Judge sits or the court
          where the Receiving Judge sits (as the case may be) to
          initiate or receive communications on behalf of the
          Initiating Judge or the Receiving Judge in relation to
          Parallel Proceedings.

### Designation of Facilitator

5.    Each court may designate one or more judges or
      administrative officials as the Facilitator. It is
      recommended that, where the Facilitator is not a judge, a
      judge be designated to supervise the initial steps in the
      communication process. The Facilitator appointed by the
      Court is the Clerk.

6.    Courts should prominently publish the identities and
      contact details of their Facilitators, such as on their
      websites.

7.    Courts should prominently list the language(s) in which
      initial communications may be made and the technology
      available to facilitate communication between or among
      courts (e.g. telephonic and/or video conference
      capabilities, any secure channel email capacity, etc.).
      The Court identifies English as the language in which
      initial communications may be made.

### Initiating Communication

8.    To initiate communication in the first instance, the
      Initiating Judge may require the parties over whom he or
      she exercises jurisdiction to obtain the identity and
      contact details of the Facilitator of the other court in
      the Parallel Proceedings, unless the information is already
      known to the Initiating Judge.

9.    The first contact with the Receiving Judge should be in
      writing, including by email, from the Facilitator of the
      Initiating Judge's court to the Facilitator of the
      Receiving Judge's court, and contain the following:

      a.    the name and contact details of the Facilitator of the
            Initiating Judge's court;

      b.    the name and title of the Initiating Judge as well as
            contact details of the Initiating Judge in the event
            that the Receiving Judge wishes to contact the
            Initiating Judge directly and such contact is
            acceptable to the Initiating Judge;

      c.    the reference number and title of the case filed
            before the Initiating Judge and the reference number
            and title (if known; otherwise, some other identifier)

179

of the case filed before the Receiving Judge in the
Parallel Proceedings;

d.   the nature of the case (with due regard to
confidentiality concerns);

e.   whether the parties before the Initiating Judge have
consented to the communication taking place (if there
is any order of court, direction or protocol for
court-to-court communication for the case approved by
the Initiating Judge, this information should also be
provided);

f.   if appropriate, the proposed date and time for the
communication requested (with due regard to time
differences); and

g.   the specific issue(s) on which communication is sought
by the Initiating Judge.

**Arrangements for Communication**

10.  The Facilitator of the Initiating Judge's court and the
Facilitator of the Receiving Judge's court may communicate
fully with each other to establish appropriate arrangements
for the communication without the necessity for
participation of counsel or the parties unless otherwise
ordered by one of the courts.

11.  The time, method and language of communication should be to
the satisfaction of the Initiating Judge and the Receiving
Judge, with due regard given to the need for efficient
management of the Parallel Proceedings.

12.  Where translation or interpretation services are required,
appropriate arrangements shall be made, as agreed by the
courts. Where written communication is provided through
translation, the communication in its original form should
also be provided.

13.  Where it is necessary for confidential information to be
communicated, a secure means of communication should be
employed where possible.

**Communication Between Initiating Judge and Receiving Judge**

14.  After the arrangements for communication have been made,
discussion of the specific issue(s) on which communication

was sought by the Initiating Judge and subsequent
communications in relation thereto should, as far as
possible, be carried out between the Initiating Judge and
the Receiving Judge in accordance with any protocol or
order for communication and cooperation in the Parallel
Proceedings.

15.   If the Receiving Judge wishes to by-pass the use of a
Facilitator, and the Initiating Judge has indicated that he
or she is amenable, the judges may communicate with each
other about the arrangements for the communication without
the necessity for the participation of counsel or the
parties.

16.   Nothing in this document should limit the discretion of the
Initiating Judge to contact the Receiving Judge directly in
exceptional circumstances.

## APPENDIX A

## GUIDELINES FOR COMMUNICATION AND COOPERATION
## BETWEEN COURTS IN CROSS-BORDER INSOLVENCY MATTERS

### INTRODUCTION

A.   The overarching objective of these Guidelines is to improve in the interests of all stakeholders the efficiency and effectiveness of cross-border proceedings relating to insolvency or adjustment of debt opened in more than one jurisdiction ("Parallel Proceedings") by enhancing coordination and cooperation among courts under whose supervision such proceedings are being conducted. These Guidelines represent best practice for dealing with Parallel Proceedings.

B.   In all Parallel Proceedings, these Guidelines should be considered at the earliest practicable opportunity.

C.   In particular, these Guidelines aim to promote:

   (i)     the efficient and timely coordination and administration of Parallel Proceedings;

   (ii)    the administration of Parallel Proceedings with a view to ensuring relevant stakeholders' interests are respected;

   (iii)   the identification, preservation, and maximization of the value of the debtor's assets, including the debtor's business;

   (iv)    the management of the debtor's estate in ways that are proportionate to the amount of money involved, the nature of the case, the complexity of the issues, the number of creditors and the number of jurisdictions involved in Parallel Proceedings;

   (v)     the sharing of information in order to reduce costs; and

182

(vi)    the avoidance or minimization of litigation,
        costs and inconvenience to the parties[1] in Parallel
        Proceedings.

D.    These Guidelines should be implemented in each jurisdiction
      in such manner as the jurisdiction deems fit.[2]

E.    These Guidelines are not intended to be exhaustive and in
      each case consideration ought to be given to the special
      requirements in that case.

F.    Courts should consider in all cases involving Parallel
      Proceedings whether and how to implement these Guidelines.
      Courts should encourage and where necessary direct, if they
      have the power to do so, the parties to make the necessary
      applications to the court to facilitate such implementation
      by a protocol or order derived from these Guidelines and
      encourage them to act so as to promote the objectives and
      aims of these Guidelines wherever possible.

**ADOPTION AND INTERPRETATION**

Guideline 1: In furtherance of paragraph F above, the courts
should encourage administrators in Parallel Proceedings to
cooperate in all aspects of the case, including the necessity of
notifying the courts at the earliest practicable opportunity of
issues present and potential that may (a) affect those
proceedings and (b) benefit from communication and coordination
between the courts. For the purpose of these Guidelines,
"administrator" includes a liquidator, trustee, judicial
manager, administrator in administration proceedings, debtor-in-
possession in a reorganization or scheme of arrangement, or any
fiduciary of the estate or person appointed by the court.

Guideline 2: Where a court intends to apply these Guidelines
(whether in whole or in part and with or without modification)
in particular Parallel Proceedings, it will need to do so by a
protocol or an order,[3] following an application by the parties or

---

[1]   The term "parties" when used in these Guidelines shall be interpreted
      broadly.

[2]   Possible modalities for the implementation of these Guidelines include
      practice directions and commercial guides.

[3]   In the normal case, the parties will agree on a protocol derived from
      these Guidelines and obtain the approval of each court in which the
      protocol is to apply.

pursuant to a direction of the court if the court has the power
to do so.

Guideline 3: Such protocol or order should promote the efficient
and timely administration of Parallel Proceedings. It should
address the coordination of requests for court approvals of
related decisions and actions when required and communication
with creditors and other parties. To the extent possible, it
should also provide for timesaving procedures to avoid
unnecessary and costly court hearings and other proceedings.

Guideline 4: These Guidelines when implemented are not intended
to:

     (i)    interfere with or derogate from the jurisdiction or
         the exercise of jurisdiction by a court in any
         proceedings including its authority or supervision
         over an administrator in those proceedings;

     (ii)   interfere with or derogate from the rules or ethical
         principles by which an administrator is bound
         according to any applicable law and professional
         rules;

     (iii)  prevent a court from refusing to take an action that
         would be manifestly contrary to the public policy of
         the jurisdiction; or

     (iv)   confer or change jurisdiction, alter substantive
         rights, interfere with any function or duty arising
         out of any applicable law, or encroach upon any
         applicable law.

Guideline 5: For the avoidance of doubt, a protocol or order
under these Guidelines is procedural in nature. It should not
constitute a limitation on or waiver by the court of any powers,
responsibilities, or authority or a substantive determination of
any matter in controversy before the court or before the other
court or a waiver by any of the parties of any of their
substantive rights and claims.

Guideline 6: In the interpretation of these Guidelines or any
protocol or order under these Guidelines, due regard shall be
given to their international origin and to the need to promote
good faith and uniformity in their application.

## COMMUNICATION BETWEEN COURTS

Guideline 7: A court may receive communications from a foreign court and may respond directly to them. Such communications may occur for the purpose of the orderly making of submissions and rendering of decisions by the courts, and to coordinate and resolve any procedural, administrative or preliminary matters relating to any joint hearing where Annex A is applicable. Such communications may take place through the following methods or such other method as may be agreed by the two courts in a specific case:

    (i)    Sending or transmitting copies of formal orders, judgments, opinions, reasons for decision, endorsements, transcripts of proceedings or other documents directly to the other court and providing advance notice to counsel for affected parties in such manner as the court considers appropriate.

    (ii)    Directing counsel to transmit or deliver copies of documents, pleadings, affidavits, briefs or other documents that are filed or to be filed with the court to the other court in such fashion as may be appropriate and providing advance notice to counsel for affected parties in such manner as the court considers appropriate.

    (iii)    Participating in two-way communications with the other court, in which case Guideline 8 should be considered.

Guideline 8: In the event of communications between courts, other than on procedural matters, unless otherwise directed by any court involved in the communications whether on an ex parte basis or otherwise, or permitted by a protocol, the following shall apply:

    (i)    In the normal case, parties may be present.

    (ii)    If the parties are entitled to be present, advance notice of the communications shall be given to all parties in accordance with the rules of procedure applicable in each of the courts to be involved in the communications and the communications between the courts shall be recorded and may be transcribed. A written transcript may be prepared from a recording of the communications that, with the approval of each court involved in the

communications, may be treated as the official transcript of the communications.

(iii)   Copies of any recording of the communications, of any transcript of the communications prepared pursuant to any direction of any court involved in the communications, and of any official transcript prepared from a recording may be filed as part of the record in the proceedings and made available to the parties and subject to such directions as to confidentiality as any court may consider appropriate.

(iv)   The time and place for communications between the courts shall be as directed by the courts. Personnel other than judges in each court may communicate with each other to establish appropriate arrangements for the communications without the presence of the parties.

Guideline 9: A court may direct that notice of its proceedings be given to parties in proceedings in another jurisdiction. All notices, applications, motions, and other materials served for purposes of the proceedings before the court may be ordered to be provided to such other parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the court in accordance with the procedures applicable in the court.

**APPEARANCE IN COURT**

Guideline 10: A court may authorize a party, or an appropriate person, to appear before and be heard by a foreign court, subject to approval of the foreign court to such appearance.

Guideline 11: If permitted by its law and otherwise appropriate, a court may authorize a party to a foreign proceeding, or an appropriate person, to appear and be heard on a specific matter by it without thereby becoming subject to its jurisdiction for any purpose other than the specific matter on which the party is appearing.

**CONSEQUENTIAL PROVISIONS**

Guideline 12: A court shall, except on proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or

186

administrative regulations, and rules of court of general application applicable to the proceedings in other jurisdictions without further proof.  For the avoidance of doubt, such recognition and acceptance does not constitute recognition or acceptance of their legal effect or implications.

Guideline 13: A court shall, except upon proper objection on valid grounds and then only to the extent of such objection, accept that orders made in the proceedings in other jurisdictions were duly and properly made or entered on their respective dates and accept that such orders require no further proof for purposes of the proceedings before it, subject to its law and all such proper reservations as in the opinion of the court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such orders. Notice of any amendments, modifications, extensions, or appellate decisions with respect to such orders shall be made to the other court(s) involved in Parallel Proceedings, as soon as it is practicable to do so.

Guideline 14: A protocol or order made by a court under these Guidelines is subject to such amendments, modifications, and extensions as may be considered appropriate by the court, and to reflect the changes and developments from time to time in any Parallel Proceedings. Notice of such amendments, modifications, or extensions shall be made to the other court(s) involved in Parallel Proceedings, as soon as it is practicable to do so.

### ANNEX A (JOINT HEARINGS)

Annex A to these Guidelines relates to guidelines on the conduct of joint hearings.  Annex A shall be applicable to, and shall form a part of these Guidelines, with respect to courts that may signify their assent to Annex A from time to time. Parties are encouraged to address the matters set out in Annex A in a protocol or order.

**ANNEX A:   JOINT HEARINGS**

A court may conduct a joint hearing with another court. In connection with any such joint hearing, the following shall apply, or where relevant, be considered for inclusion in a protocol or order:

(i)     The implementation of this Annex shall not divest nor diminish any court's respective independent jurisdiction over the subject matter of proceedings. By implementing this Annex, neither a court nor any party shall be deemed to have approved or engaged in any infringement on the sovereignty of the other jurisdiction.

(ii)    Each court shall have sole and exclusive jurisdiction and power over the conduct of its own proceedings and the hearing and determination of matters arising in its proceedings.

(iii)   Each court should be able simultaneously to hear the proceedings in the other court. Consideration should be given as to how to provide the best audio-visual access possible.

(iv)    Consideration should be given to coordination of the process and format for submissions and evidence filed or to be filed in each court.

(v)     A court may make an order permitting foreign counsel or any party in another jurisdiction to appear and be heard by it. If such an order is made, consideration needs to be given as to whether foreign counsel or any party would be submitting to the jurisdiction of the relevant court and/or its professional regulations.

(vi)    A court should be entitled to communicate with the other court in advance of a joint hearing, with or without counsel being present, to establish the procedures for the orderly making of submissions and rendering of decisions by the courts, and to coordinate and resolve any procedural, administrative or preliminary matters relating to the joint hearing.

(vii)   A court, subsequent to the joint hearing, should be entitled to communicate with the other court, with

188

or without counsel present, for the purpose of determining outstanding issues. Consideration should be given as to whether the issues include procedural and/or substantive matters. Consideration should also be given as to whether some or all of such communications should be recorded and preserved.