CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |
| | Related Docket No.: 711 |

**DEBTORS' OBJECTION TO THE MOTION OF THE FOREIGN
REPRESENTATIVES OF THREE ARROWS CAPITAL, LTD. FOR ENTRY OF AN
ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING THE ISSUANCE
OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS BY THE DEBTORS**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC ("GGC") (8564); Genesis Asia Pacific Pte. Ltd. ("GAP") (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

A.    Relevant Procedural History ................................................................. 3

ARGUMENT ........................................................................................... 8

A.    The Motion Seeks Discovery Relevant to a Contested Matter And
      Therefore Discovery Pursuant to Rule 2004 Examination is
      Improper....................................................................................... 8

B.    3AC Has Failed to Demonstrate that the Narrow Exception to the
      Pending Proceeding Rule Applies Here.................................................. 10

C.    The Motion Is Inconsistent With The Claims Procedures Order and
      The Interest of Economy.................................................................... 14

D.    The 3AC Potential Claims Relating to the GAP-DCG Assignment
      and Assumption Agreement or Other Claims Not Timely Filed Are
      Time Barred .................................................................................. 15

E.    If the Motion is Granted, the Court Should Permit the Parties to
      Meet and Confer Regarding 3AC's Requests Rather Than Entering
      the Order as Proposed Wholesale ........................................................ 19

CONCLUSION........................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

11 U.S.C. 105(a) ................................................................................................................ 7

28 U.S.C. § 1746 .............................................................................................................. 26

Bankruptcy Rule 2004 ................................................................................................ *passim*

Fed. R. Bankr. P. 3007 ...................................................................................................... 7

**Cases**

*In re AMR Corp.*,
    No. 11-15463 (SHL), 2016 WL 1068955 (Bankr. S.D.N.Y. Mar. 17, 2016) .................. 22

*In re Asia Glob. Crossing, Ltd.*,
    324 B.R. 503 (Bankr. S.D.N.Y. 2005) .............................................................. 20, 21

*In re Bennett Funding Group, Inc.*,
    203 B.R. 24 (Bankr. N.D.N.Y. 1996) ................................................................. 14

*In re Boulder Operations Holdings LLC*,
    2023 Bankr LEXIS 1401 (Bankr D Del May 30, 2023, No. 22-10664) ........................ 14

*In re Buick*,
    174 B.R. 299 (Bankr. D. Colo. 1994) ................................................................ 15, 17

*In re Drexel Burnham Lambert Grp.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1992) ............................................................... 17

*In re Ecam Publ'ns, Inc.*,
    131 B.R. 556 (Bankr. S.D.N.Y. 1991). .............................................................. 13

*In re Enron Corp.*,
    298 B.R. 513 (Bankr. S.D.N.Y. 2003) .............................................................. 20

*In re Enron Corp.*,
    281 B.R. 836 (Bankr. S.D.N.Y. 2002) .............................................................. 13

*In re Enron Corp.*,
419 F.3d 115 (2d Cir. 2005) ........................................................................................ 20, 21, 22

*In re M. Fabrikant & Sons, Inc.*,
447 B.R. 170 (Bankr. S.D.N.Y. 2011) *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541
F. App'x 55 (2d Cir. 2013) ......................................................................................... 20

*In re Residential Cap., LLC*,
507 B.R. 477 (S.D.N.Y. Bankr. 2014) ....................................................................... 21

*In re SunEdison, Inc.*,
572 B.R. 482 (Bankr. S.D.N.Y. 2017) ....................................................................... 13

*In re Tender Loving Care Health Servs., Inc.*,
562 F.3d 158 (2d Cir. 2009) ....................................................................................... 13

*In re Uvino*,
2012 WL 892501 (Bankr. S.D.N.Y. Mar. 14, 2012) ................................................. 22

*In re Wash. Mut., Inc.*,
408 B.R. 45 (Bankr. D. Del. 2009) ................................................................... 12, 15, 16, 17

Genesis Global Holdco, LLC and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors," and the above-captioned cases, the "Chapter 11 Cases") hereby submit this objection (the "Objection") to the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Issuance of Subpoenas for the Production of Documents by the Debtors* (ECF No. 711) (the "Motion") filed by Russel Crumpler and Christopher Farmer, in their capacities as the duly authorized joint liquidators and foreign representatives of Three Arrows Capital, Ltd. ("3AC" and collectively with the Debtors, the "Parties").

## PRELIMINARY STATEMENT[2]

1.     The Motion, filed hours before the deadline for serving discovery requests in connection with 3AC's contested claims and just as it appeared the discovery disputes between the parties were narrowing, would open an entirely new front and unnecessarily prolong the litigation over 3AC's claims, at the expense of creditors.  Rule 2004 is designed to allow examination *before* any contested matter has begun in earnest.  When a contested matter is pending, Rule 2004 relief is improper unless the requests are wholly unrelated to the proceeding.  That is plainly not the case here.  3AC has filed, and subsequently amended, proofs of claim against the Debtors, which purport to broadly reserve the 3AC's rights to assert certain causes of action, including the Grayscale-related information sought by the Requests and explained in the Motion.  The Debtors have now filed two objections to the 3AC Claims, and an expansive discovery and briefing schedule has been the subject of multiple discussions between the Parties and ultimately memorialized (in modified form) in an order of this Court.  Yet 3AC tries to circumvent the existing discovery parameters by asserting that its Grayscale-related Requests seek discovery of purported "potential" claims against the Debtors

---

[2]     All capitalized terms used in this Preliminary Statement are defined elsewhere in the Objection.

that somehow should be treated as distinct and unrelated to its filed claims and the Debtors' pending objections thereto. For this reason alone, the Motion should be denied.

2. Further, granting Rule 2004 relief at this stage would waste the Debtors' assets and unnecessarily diminish creditor recoveries. 3AC has already served the Debtors with discovery requests substantially similar to its Grayscale-related Requests under the aegis of the contested claims objections, to which the Debtors have responded. And through their objections, the Debtors have challenged the facial validity of the 3AC Claims, consistent with the Claims Procedures Order entered by the Court (the application of which 3AC has previously contested). Indeed, 3AC implicitly acknowledges the deficiencies of the claims purportedly served by its Grayscale-related Requests by categorizing such threadbare allegations "potential claims." The Motion effectively seeks to burden the Debtors, and ultimately their creditors, with the costs of 3AC's attempts to belatedly find evidence to support its own insufficiently pled claims.

3. Finally, 3AC suggests that its Motion can be justified based on the prospects of newly identified fraudulent conveyance claims or "any other claims against the Debtors that [3AC] may uncover." Motion at ¶ 2. But, in doing so, 3AC ignores that the Bar Date has already passed, such that these speculative, as-yet unasserted claims cannot relate back to the Original Claims or Amended Claims, regardless of the 3AC's attempts to "reserve their rights" to bring them at a later date. Such discovery, in service of time-barred claims would only waste estate resources.

4. For the reasons set forth herein, the Court should deny the Motion with prejudice and sustain the Objection. Alternatively, if the Court finds that cause for discovery under Rule 2004 has been shown, the Court should not wholesale adopt the discovery requests proposed by 3AC, but instead permit the parties to meet and confer following the service of responses and objections by

the Debtors to ensure the efficiency of any Rule 2004 discovery, with all rights reserved in the event there are subsequent disputes.

## FACTUAL BACKGROUND[3]

### A.    Relevant Procedural History

5.      On January 19, 2023, the Debtors filed voluntary petitions for relief and initiated the Chapter 11 Cases.  On April 4, 2023, this Court entered an order establishing May 22, 2023 at 4:00 p.m., Eastern Time, as the bar date for filing proofs of claim (the "Bar Date") (ECF No. 200).

15.      On May 22, 2023, 3AC filed proofs of claim numbered 523, 526 and 527 (together, the "Original Claims") against Holdco, GGC and GAP, respectively.  In the Original Claims, 3AC represented that these claims, including avoidance actions, arise from transfers to the Debtors with a value in excess of $1 billion.  While the Original Claims made passing reference to potential causes of action concerning Grayscale, nowhere did the Original Claims assert potential fraudulent conveyance claims or any claims at all concerning the GAP-DCG Assignment and Assumption Agreement (as defined in the Renewed Objection).[4]

16.      On June 22, 2023, the Debtors filed a *Motion for an Order Pursuant to 11 U.S.C. 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related Relief* (ECF No. 449).  After receiving and incorporating informal comments from 3AC, the Debtors filed a revised form of order with respect to the foregoing (ECF No. 465), which order was entered by the Court on July 12, 2023 (ECF No. 498) (the "Claims Procedures Order").

---

[3]      Additional background regarding the Parties and the 3AC Claims (as defined below) can be found in the Renewed Objection (as defined below) at pages 1-13, 23-33.

[4]      *See* Renewed Objection at ¶ 62 for additional background regarding the GAP-DCG Assignment and Assumption Agreement.

17.     On July 14, 2023, 3AC served their *First Set of Requests for the Production of Documents* (the "First RFPs"), which included requests almost identical to those listed in Exhibit B to the Motion (the "Requests"). *See* First RFPs Nos. 16-19, 21, 34 and 37.

18.     On July 19, 2023, the Debtors filed an omnibus objection to the Original Claims, seeking an order disallowing and expunging the Original Claims because of, *inter alia*, 3AC's failure to allege sufficient facts to support a finding that the Debtors are legally liable under any cognizable law. *See* ECF No. 530 (the "3AC Objection"). This included the Grayscale-related claims asserted in the Original Claims. The 3AC Objection also preemptively defended the validity of 3AC's pledge of assets as collateral on which the Debtors foreclosed and set forth the reasons why 3AC could not state valid preference claims.

19.     On August 1, 2023, 3AC filed a letter (the "Letter", ECF No. 563) to the Court, asserting that 3AC should be "entitled to take discovery of the Debtors prior to a requirement to amend the POCs" and that "the Court should make clear that the fact of filing initial amended POCs by any deadline established by the Court will not be weighed against further amendments following discovery." Letter at 1-2. The Letter also challenged the application of a sufficiency hearing, as set forth in the Claims Procedures Order, to the Original Claims and the 3AC Objection. Letter at 4-8. The Debtors filed a letter opposing 3AC on these threshold issues. ECF No. 564.

20.     At the subsequent August 2, 2023 hearing, the Court characterized 3AC's request as seeking to file a "free amendment." *In re Genesis Glob. Cap., LLC*, No. 23-10063, Aug. 2, 2023 Hr'g. Tr. at 33:15-23; 38:22-39:3. The Court made clear there was no such thing. *Id.* ("[Y]ou're asking me to change the rules to say that [3AC] get[s] a free amendment . . . . You don't."). The Court also implicitly denied 3AC's assertions regarding the applicability of a sufficiency hearing to the Original Claims. *Id.* at 34:19-24 (the Court stating it cannot instruct the Debtors not to make an

argument about the insufficiency of 3AC's Claims.).  Nor did the Court grant 3AC the ability to take

further discovery, as it had requested, before amending its claims.  *Id.*

21.    On August 8, 2023, the Debtors served responses and objections to the First RFPs

(the "R&Os to 3AC's First RFPs").  The Debtors objected to, among other requests, First RFPs Nos.

16-19, 21, 34, and 37 on a number of grounds, including but not limited to vagueness, burden,

relevance, and privilege.  These requests sought Grayscale-related information or information about

the GAP-DCG Assignment and Assumption Agreement.  On August 8 and 9, 2023, the Debtors also

voluntarily produced to 3AC a total of 6,099 pages of documents, and produced an additional 710

pages on September 8, 2023 (after having produced several hundred pages of documents in April

2023).  3AC subsequently served the Debtors with an additional 55 separate discovery requests on

September 15, 2023, the last possible date for service of document requests under the Scheduling

Order (as defined below), and the Debtors are currently collecting documents that are responsive to

those requests.

22.    3AC ultimately filed revised proofs of claim numbered 981, 982 and 990 (the

"Amended Claims", and together with the Original Claims, the "3AC Claims") on August 18, 2023.[5]

The Amended Claims purport to "reserve [3AC's] rights to bring any other claims against the

Debtors that they may uncover based on ongoing discovery," specifically providing the Debtors

"may be subject to related claims" to those brought against Grayscale and DCG alleging breach of

fiduciary and contractual duties.  Amended Claims at ¶ 4; *see* Amended Claims at ¶¶ 66-67.  3AC

noted they "may further amend their claims based on any new facts uncovered after the completion

of [discovery with the Debtors and DCG.]"  Amended Claims at ¶ 4.  In response to the Amended

---

[5]    At the hearing, 3AC agreed to file such amended claims by August 14, 2023.  *In re Genesis Glob. Cap., LLC*,
No. 23-100063, Aug. 2, 2023 Hr'g. Tr. at 42:9.  This date was subsequently extended by agreement of the Debtors.

Claims, the Debtors requested adjournment *sine die* of the hearing on the 3AC Objection, originally scheduled for August 24, 2023, to allow time for the Debtors to review and respond to the Amended Claims.  Like the Original Claims, the Amended Claims did not assert or make any fraudulent conveyance or other claims against the Debtors based on or arising from the GAP-DCG Assignment and Assumption Agreement.

23.     On September 1, 2023, the Debtors filed a renewed omnibus objection to the 3AC Claims (the "Renewed Objection", ECF No. 658).  The Renewed Objection responds to 3AC's reservation of rights regarding the "potential claims that 3AC may bring against the Debtors arising from 3AC's investments in the Grayscale Trusts and the relationships among 3AC's founders, the Debtors, the Debtors' parent DCG, DCG's CEO Barry Silbert, and DCG's subsidiary Grayscale, among other related parties," stating that, because 3AC still pled "no facts and no cause of action under which they believe the Debtors can be shown to have any liability" on account of these "potential" claims even after a second round of briefing, "3AC effectively concedes that such claims cannot meet the standard for prima facie validity."  Renewed Objection at ¶ 132 (internal citations omitted).  On the same date, the Debtors further filed a scheduling motion to establish a timeline for resolution of the 3AC Claims (the "Scheduling Motion", ECF No. 659).

24.     On September 5, 2023, 3AC filed an objection to the Scheduling Motion (the "Scheduling Motion Objection", ECF No. 673).  On September 6, 2023, the Court held a hearing where it preliminarily approved the Scheduling Motion with certain adjustments (the "Sept. 6 Hearing").  On September 12, 2023, the Court entered an order incorporating the guidance from the Court given during the Sept. 6 Hearing (the "Scheduling Order", ECF No. 695).

25.     On September 14, 2023, counsel for 3AC indicated in correspondence with counsel for the Debtors that if the Debtors did not intend to revise their responses in relation to RFP Nos. 34

and 37, relating to the GAP-DCG Assignment and Assumption Agreement, they would seek relief via the filing of a "motion to compel" and asked for the Debtors' availability for the requisite conference before the Court. *See Declaration of Deandra Fike in Support of Debtors' Objection To The Motion Of The Foreign Representatives Of Three Arrows Capital, Ltd. For Entry Of An Order Pursuant To Bankruptcy Rule 2004 Authorizing The Issuance Of Subpoenas For The Production Of Documents By The Debtors* (the "Fike Decl.") ¶ 3, attached hereto as Exhibit A. The Debtors responded, offering to jointly call the Court to determine their availability for an informal discovery conference. *See* Fike Decl. ¶ 3.

26.     On September 15, 2023, Ms. Deandra Fike, on behalf of the Debtors, and Ms. Tiffany Ikeda, on behalf of 3AC, jointly called the Court but were unable to connect with chambers. *See* Fike Decl. ¶ 4. Upon chambers' return of the missed call, Ms. Fike relayed 3AC's request for an informal discovery conference in anticipation of filing a motion to compel and was told counsel for 3AC should reach out to chambers via email for the Court's availability. *See* Fike Decl. ¶ 4. This information was then relayed via phone by Ms. Fike to Ms. Ikeda. *See* Fike Decl. ¶ 4.

24.     On September 15, 2023, the Debtors sent to 3AC the *Debtors' Amended Responses and Objections to the Foreign Representatives of Three Arrows Capital, Ltd.'s First Set of Requests for the Production of Documents* (the "Amended R&Os"), wherein the Debtors amended their R&Os to 3AC's First RFPs, including those substantially identical to the requests in the Motion, to state, in relevant part, that to the extent there are any responsive documents to 3AC's requests otherwise within the Debtors' existing search and collection parameters, the Debtors would conduct a reasonable search and produce non-privileged responsive documents (if any), but otherwise would not produce documents in response to the requests. Without any further communications, later that same day, 3AC filed not a motion to compel, but the instant Motion

pursuant to Rule 2004, seeking "to serve *substantially similar* document requests on the Debtors related to the 3AC Potential Claims" that 3AC had already served and that the Debtors otherwise addressed in their Amended R&Os.  *See* Motion ¶ 4 (emphasis added).

25.     On September 19, 2023, after receiving no further communications regarding the scheduling of an informal discovery conference or the motion to compel, Mr. Luke Barefoot, on behalf of the Debtors, reached out to counsel for the 3AC to confirm that 3AC still intended to schedule an informal discovery conference.  *See* Fike Decl. ¶ 5.  Counsel for 3AC confirmed on September 19, 2023 that they did not intend to schedule an informal discovery conference at this time.  *See* Fike Decl. ¶ 5.

## **ARGUMENT**

### A.     **The Motion Seeks Discovery Relevant to a Contested Matter And Therefore Discovery Pursuant to Rule 2004 Examination is Improper**

27.     A Rule 2004 examination is not permitted where it seeks information relevant to a pending proceeding, such as a contested matter like the one instituted when the Debtors filed their 3AC Objection to the Original Claims (and subsequently the Renewed Objection to the 3AC Claims).  Because 3AC has failed to demonstrate that its Motion falls within the narrow exception to this limitation, the Motion should be denied.

#### *i.*     The Motion is Procedurally Improper

28.     The use of Rule 2004 examinations is barred upon the commencement of a contested matter or adversary proceeding.  *See In re Wash. Mut., inc*., 408 B.R. 45, 50 (Bankr. D. Del. 2009) (The "pending proceeding" rule states "that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to Federal Rules of Bankruptcy Procedure 7026 et seq., rather than by a [Rule] 2004 examination.") (collecting cases).  The rationale underlying this "pending proceeding rule" is the "concern that a party to litigation could circumvent his adversary's

rights by using Rule 2004 rather than civil discovery to obtain documents or information relevant to the lawsuit." *In re SunEdison, Inc.*, 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017) (citing cases). That is because discovery under Rule 2004 is broad in scope, often likened to a "fishing expedition," in contrast to the more tailored nature and available protections of discovery under the Federal Rules of Civil Procedure or applicable state court rules*. See, e.g., In re Ecam Publ'ns, Inc.*, 131 B.R. 556 at 559 (noting that "[d]iscovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure") (citation omitted); *In re Enron Corp.*, 281 B.R. 836, 840-41 (Bankr. S.D.N.Y. 2002).

29.      It is black letter law that an objection to a filed proof of claim creates a "contested matter" governed by Rule 9014. *See, e.g., In re Tender Loving Care Health Servs., Inc.*, 562 F.3d 158, 162 (2d Cir. 2009); FED. R. BANKR. P. 9014, ADVISORY COMMITTEE NOTES ("For example, the filing of an objection to a proof of claim[] . . . creates a dispute which is a contested matter."). Indeed, 3AC readily admits that the filing of the 3AC Objection "create[d] a 'contested matter' governed by Rule 9014," and the Motion does not assert that the Renewed Objection is any different. *See* Letter at 6 (quoting *In re Tender Loving Care Health Servs., Inc.*, 562 F.3d at 162; *see also In re Genesis Glob. Cap., LLC*, No. 23-10063, Aug. 2, 2023 Hr'g. Tr. at 29:23-25 (Counsel for the 3AC stating "[their] perspective is that *the claim objection creates a contested matter* and not an adversary proceeding.") (emphasis added).

30.      3AC could have sought Rule 2004 relief in the nearly six months that elapsed between the Petition Date and the 3AC Objection, or the nearly thirteen months between the filing of their own Chapter 15 petition and the 3AC Objection, but it chose not to timely do so. Indeed, 3AC initiated an action in the BVI against GGC, GAP and DCG based on substantially similar facts, and 3AC makes no mention of any facts that purportedly arose post-Bar Date that necessitated its

filing of the Motion now.  Nor did 3AC seek Rule 2004 discovery before it expressed its intention

to file the Amended Claims, to which the Debtors have now objected and are engaged in discovery

on.  At this procedural juncture, 3AC must live with its decision and abide by the resulting limitations

on discovery.[6]  *See In re Boulder Operations Holdings LLC*, No. 22-10664, 2023 Bankr LEXIS

1401, at *5-6 (Bankr D Del May 30, 2023) ("[O]nce a complaint is filed, discovery related to those

claims is more properly taken in the action itself (or, where the action asserts a prepetition claim

against the debtor, through the claims allowance process).").

31.     Further, the timing of the Motion is suspect given that, merely days prior to its filing,

counsel to 3AC stated that they intended to move to compel production with respect to request

numbers 34 and 37 from their First RFPs.  Puzzlingly, after the Debtors' counsel attempted to

consensually schedule a discovery conference before the Court—in compliance with the Court's

rules—3AC abandoned its efforts and shifted tack to Rule 2004.  *See Fike Decl.* ¶ 5.[7]

**B.     3AC Has Failed to Demonstrate that the Narrow Exception to the Pending
Proceeding Rule Applies Here.**

32.     Although there is a limited exception to the "pending proceeding rule" whereby only

discovery unrelated to the pending proceeding may be sought via Rule 2004, such exception does

not apply here.  *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 29 (Bankr. N.D.N.Y. 1996)

("Discovery of evidence related to the pending proceeding must be accomplished in accord with

---

[6]     This is especially true given 3AC has had plenty of notice of the subject of these "potential" claims.  As yet unproven allegations about potential misconduct by DCG and Grayscale over their management of the Grayscale trusts have been the subject of litigation by other parties for the better part of the last two years.  *See Fir Tree Value Master Fund LP v. Grayscale Investments LLC*, Case No. 2022-1126, Dkt. 1 (Del. Chan. Ct. Dec. 7, 2022); *Alameda Research Ltd. v. Grayscale Investments, LLC*, Case No. 2023-0276, (Complaint), Dkt. 20 (May 19, 2023 Opening Brief in Support of Defendants Digital Currency Group, Inc. and Barry Silbert's Motion to Dismiss Plaintiff's Verified Complaint) (Del. Chan. Ct. Mar. 6, 2023).  That is, there was sufficient public information for 3AC to bring the 3AC Potential Claims with respect to the Grayscale trusts.

[7]     Although the Debtors reserve all rights with respect to the substance of such motion, the Debtors submit that a motion to compel, and not a motion under Rule 2004, would be a more proper vehicle for 3AC to seek relief (if any dispute remains) with respect to Grayscale-related requests in light of the Debtors' Amended R&Os.

more restrictive provisions of [the Federal Rules of Bankruptcy Procedure], while unrelated discovery should not be subject to those rules simply because there is an adversary proceeding pending.") (emphasis in original); *In re Wash. Mut., Inc.*, 408 B.R. at 51 ("Where a party requests a Rule 2004 examination and an adversary proceeding or other litigation in another forum is pending between the parties, the relevant inquiry is whether the Rule 2004 examination will lead to discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding."); *In re Buick*, 174 B.R. 299, 305 (Bankr. D. Colo. 1994) (noting that "even after the trustee has commenced adversary proceeding(s), the trustee may conduct Rule 2004 examinations of entities which are not parties to or are not affected by the pending adversary proceeding(s)").

33.     3AC readily admits that its Motion seeks discovery related to the pending contested matter between the parties; indeed, 3AC highlights that the Amended Claims "expressly reserved their rights to bring such claims against the Debtors."  Motion ¶ 16.  The relevance of the Requests to this pending contested matter is further evident given that the Requests seek documents and communications between the Debtors and 3AC and/or third parties relating to loans made by the Debtors to 3AC or involving certain collateral to such loans specifically identified (albeit without requisite particularity) in the Amended Claims.

34.     Despite the obvious connection between the Requests and the 3AC Claims/Renewed Objection, 3AC clumsily attempts to shoehorn itself in the narrow exception to the pending proceeding rule by creating two purported categories of asserted claims, arguing that the 3AC Potential Claims should not be considered part of the Amended Claims, notwithstanding 3AC's reservation of rights.  Specifically, 3AC argues that the Debtors' relevance objections to certain document requests amount to a concession that the information sought in those requests is unrelated

to the pending contested matter and therefore properly sought through a Rule 2004 examination. Motion at n. 3.  But the fact that the Debtors contend that the discovery requests at issue are irrelevant to any timely asserted, sufficiently pleaded claims does not mean that such discovery is "unrelated to the pending proceeding."  To the contrary, the question of whether 3AC has sufficiently pleaded or preserved claims related to Grayscale and thus the extent to which discovery related to those issues is warranted, is very much at issue in the pending proceeding.  3AC itself has placed that question at issue by seeking such discovery in connection with the pending contested matter.

35.     Indeed, it is 3AC, not the Debtors, who seek to "have it both ways" by, on the one hand, arguing that its reservation of rights should allow 3AC to make additional amendments to its Amended Claims upon completion of additional discovery, yet, on the other hand, asserting that the claims captured in such reservation fall into an imaginary bucket of claims that are "outside" the 3AC Claims such that 3AC is not required to abide by the discovery rules governing claims objections.[8]  Motion n. 3.  There can be no doubt that the Original Claims and the Amended Claims raised issues concerning certain "potential" claims with respect to Grayscale to which the Requests relate.  *See* 3AC Objection ¶ 28; Renewed Objection ¶ 132.

36.     3AC's cited cases are inapposite.  In *In re Wash. Mut., inc.*, 408 B.R. at 50, for example, the only overlap between the pending proceeding and the Rule 2004 motion at issue was a "single alleged fact" and "simply because JPM chose to include background information regarding the relationship of the parties involved in the JPM Adversary Action in its complaint does not mean

---

[8]     To the extent 3AC argues that the Debtors have taken the position this information is "irrelevant" and "refused to produce documents and communications surrounding the July 14, 2022 execution of the [GAP-DCG Assignment and Assumption Agreement]," Motion at nn. 3, 4, such assertions are incorrect as the Debtors have agreed to provide such information to the extent responsive documents are within the Debtors' search and collection parameters in their Amended R&Os provided to 3AC prior to the filing of the Motion.  *See* Amended R&Os at 51-52.  Further, whether the Debtors objected to any of the First RFPs to the extent that they are irrelevant to the 3AC Claims is not the legal standard applicable to the "pending proceeding" rule, which requires the requested Rule 2004 relief to be wholly unrelated to the pending action.

that any rule 2004 examination request dealing with those background facts is 'related'…. Rather, the [c]ourt must determine whether the requested 2004 examination will result in the 'discovery of evidence related to the pending proceeding." *In re Wash. Mut., inc*., 408 B.R. at 50. Here, there is nearly complete overlap between information 3AC is seeking through their Motion and the information 3AC has sought in connection with their claims, which the Debtors have agreed to provide in the Amended R&Os to the extent located through the Debtors' existing search parameters. Even more distinct, in *In re Drexel Burnham Lambert Grp*., 123 B.R. 702 (Bankr. S.D.N.Y. 1992), the movant, a receiver for numerous failed thrift institutions that may have held claims against the debtors, sought the fruits of Rule 2004 examinations already taken by other creditors to the debtors to amass and develop support for its own claims against the debtors' estates, and the movant's claims against the debtor did not even appear to be subject to any pending proceedings. The court's ruling therefore did not delve into an analysis of a pending proceeding bar to a Rule 2004 motion. Finally, in *In re Buick*, 174 B.R. 299, 306 (Bankr. D. Colo. 1994), the court did not address the question of whether any specific Rule 2004 motion was outside the scope of the relevant adversary proceeding, but rather whether a creditor may conduct a Rule 2004 examination *at all* after the creditor or debtor had filed adversary proceeding(s) on issues in addition to or beyond the scope of the pending proceeding—a legal position that the Debtors do not dispute but nonetheless is not relevant here.

37.      In this case, 3AC waited until after the Debtors had filed the 3AC Objection and the Renewed Objection to their Original Claims and Amended Claims, respectfully, and a pending proceeding is now ongoing. Therefore, 3AC has delayed long past the point where appropriate to use a Rule 2004 examination. Given the information sought in the Motion would "result in the discovery of evidence related to the pending proceeding," *In re Wash. Mut.,* 408 B.R. at 50, as the included questions overlap substantially with the "potential" claims laid out in the Amended Claims

and addressed in the Renewed Objection, as well as the discovery requests that the Debtors consented

to respond to in their Amended R&Os, the Requests do not fall under the exception to the pending

proceeding rule.  3AC therefore must abide by the protections of Rule 7026 *et seq.* rather than embark

on a "fishing expedition" under Rule 2004.

C.      **The Motion Is Inconsistent With The Claims Procedures Order and The Interest of Economy**

38.     In addition to being inappropriate given the stage of these proceedings, the 3AC's

Motion attempts, once again, to evade the established procedures for addressing the facial validity

of claims laid out in the Claims Procedures Order, instead forcing the Debtors and this Court to

expend resources addressing this Motion.

39.     This Court has already entered the Claims Procedures Order, which has become final

and non-appealable.  The Claims Procedures Order contemplates a non-evidentiary sufficiency

hearing on precisely the kind of threadbare claims that 3AC has attempted to assert regarding, *inter*

*alia*, their "potential" Grayscale related claims that are the bulk of the subject of this Motion.  Claims

Procedures Order ¶ 2(a).  3AC has already challenged the applicability of a sufficiency hearing with

regard to the Original Claims, which this Court did not entertain.  *See* Letter at 4-8; *see also In re*

*Genesis Glob. Cap., LLC*, No. 23-10063, Aug. 2, 2023 Hr'g. Tr. at 34:19-24 (the Court stating it

cannot instruct the Debtors not to make an argument about the insufficiency of 3AC's Claims.).

3AC's second attempt to evade a sufficiency hearing over claims they essentially concede are

facially inadequate by labelling them as "potential" should be similarly dismissed.

40.     As the Debtors have represented to this Court previously, to order the Parties to

engage in discovery on claims that are insufficiently pled as a matter of law when the Claims

Procedures Order provides that such claims are dealt with through a sufficiency hearing would be

inimical to the interest of judicial economy and the interests of the Debtors' and their creditors.

-14-

**D.      The 3AC Potential Claims Relating to the GAP-DCG Assignment and
Assumption Agreement or Other Claims Not Timely Filed Are Time Barred**

41.      As covered above, 3AC attempts an end-run around the "pending procedure rule" by

concocting a fictitious category of "potential" claims regarding the GAP-DCG Assignment and

Assumption Agreement that are purportedly wholly distinct and unrelated to the Grayscale-related

claims and were simply never even mentioned in the Original Claims or the Amended Claims. Such

attempts fail, and taking discovery in aid of asserting such claims against the Debtors in the future

makes little sense because 3AC is time barred from bringing these claims against the Debtors at this

procedural stage. Granting 3AC permission to take discovery on such illusory claims would be an

expensive and ultimately wasteful exercise with no benefit to any party.

42.      The Bar Date, the deadline to file proofs of claim against the Debtors, was 4:00 PM,

Eastern Time on May 22, 2023. The Original Claims, filed on the Bar Date, alleged "claims [BVI,

New York, Delaware, and other applicable law] in the nature of preference, conversion, and other

avoidance actions" related to certain transfers of collateral from 3AC to GAP before 3AC's

collapse. Original Claims at ¶ 6. 3AC also reserved its right to "assert all other claims that Three

Arrows or its estate may possess against the Debtors, whether known or unknown, contingent or

non-contingent, or otherwise." *Id.* at ¶ 10. The Amended Claims then alleged turnover and

preference claims under BVI law, turnover claims under U.S. law, and "potential" avoidance claims

under U.S. law, all relating to a set of transfers of collateral partially, but not entirely, identified in

the original proofs of claim. Amended Claims at ¶¶ 33-65. The Amended Claims also contained a

similarly expansive reservation of rights. *Id.*

43.      The Motion in turn adds little in the way of specifics of these brand new "potential

claims," positing only that discovery "may also reveal that entry into the [GAP-DCG Assignment

and Assumption Agreement] constituted an actual fraudulent transfer." Motion at ¶ 16. To this end,

the proposed document subpoena seeks "[a]ll Documents and Communications, dated June 14, 2022

through July 31, 2022, concerning the assignment of certain claims from Genesis to DCG, as set for

in the Assignment and Assumption of Master Loan Agreement executed on July 14, 2022." Motion

at Ex. B ¶ 6.

44.     3AC did not assert any such claims in the Original Claims nor the Amended

Claims.  *See* Original Claims at ¶ 66.  Thus, 3AC still carries the burden of demonstrating that these

fraudulent transfer claims relate back to its original proofs of claim, notwithstanding their purported

reservation.  *See In re Enron*, 298 B.R. 513, 522 (Bankr. S.D.N.Y. 2003) ("[T]he party asserting the

relation back bears the burden of proof.").  3AC cannot meet this burden, and is accordingly time

barred from asserting them now.

45.     Bankruptcy courts apply a two-part test to determine whether to accept a late-filed

amendment to a timely-filed proof of claim.  First, courts examine whether the amendment relates

back to a timely filed proof of claim.  *In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005).  An

amendment to a timely filed proof of claim will relate back if it either corrects a defect of form in

the original claim; describes the original claim with greater particularity; or pleads a new theory of

recovery on the facts set forth in the original claim.  *Id.* (quoting *In re McLean Indus., Inc.*, 121 B.R.

704, 708 (Bankr. S.D.N.Y. 1990)).   The test in this context "is basically the same as the test under

[FRCP] 15(c) regarding the 'relation back' of a later pleading to an earlier one."  *In re Asia Glob.

Crossing, Ltd*., 324 B.R. 503, 508 (Bankr. S.D.N.Y. 2005).  Courts routinely find that claims based

on altogether new legal theories or based on entirely new facts do not relate back to original

claims.  *See, e.g.*, *In re M. Fabrikant & Sons, Inc.*, 447 B.R. 170, 182 (Bankr. S.D.N.Y. 2011) *aff'd*,

480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55 (2d Cir. 2013) (holding a new allegation of

preference claims in a second amended complaint did not relate back to original complaint on the

basis that the original complaint did not identify or discuss specific payments by the debtors to the defendants); *In re Asia Glob. Crossing, Ltd.*, 324 B.R. 503, 508-10 (Bankr. S.D.N.Y. 2005) (holding avoidance claims did not relate back to original claim where the original claim did "not allege the type of facts, such as the financial condition . . . at the time of transfers, that are key to an avoidance claim").

46.     Second, if an amendment does relate back to the timely filed claim, courts will then "'examine each fact within the case and determine whether it would be equitable to allow the amendment' . . . including whether the debtor, or other creditors, would be unduly prejudiced by the amendment, or whether, instead, other creditors would 'receive a windfall' from the disallowance of the amendment, and whether the late claimant acted in good faith and the delay was justified." *In re Enron Corp.*, 419 F.3d at 133 (quoting *In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993)).

47.     Here, newly articulated potential claims concerning the GAP-DCG Assignment and Assumption Agreement would be based on facts unrelated to 3AC's timely filed claims.  The 3AC Claims turn on whether GAP had a valid security interest in the assets 3AC transferred as collateral and on whether the transfers were unfair preferences—questions that are factually, temporally and legally distinct from potential claims concerning the GAP-DCG Assignment and Assumption Agreement. *See In re Residential Cap., LLC*, 507 B.R. 477, 494 (S.D.N.Y. Bankr. 2014) ("But to the extent [an amended claim] is not based on the same underlying nucleus of facts as the original claim, it must be disallowed as having been late-filed because it does not 'relate back' to [the original claim]."). Moreover, it is of no import that 3AC has alleged certain transfers of GBTC are subject to turnover claims or were preferential transfers.  3AC would still need to adduce entirely different evidence in order to show "that entry into the DCG Assignment Agreement constituted an actual fraudulent transfer." *See* Motion at ¶ 16.

48.     The legal basis underlying the fraudulent transfer claims is also novel. The GAP-DCG Assignment and Assumption Agreement is facially irrelevant to the 3AC Claims as it was executed over a month after the last alleged preferential transfer and 3AC's collapse. *See In re Uvino*, No. 09-15225 (BRL) 2012 WL 892501, at *4 (Bankr. S.D.N.Y. Mar. 14, 2012) (holding an amended proof of claim alleging a secured claim did not relate back where new claim was "of an entirely different nature" that original unsecured claim "notwithstanding that both types of claims may arise from the same transaction.").

49.     Finally, even if the fraudulent conveyance claims did relate back, it would be inequitable to allow them to go forward. The Debtors shared information with 3AC about the GAP-DCG Assignment and Assumption Agreement months prior to Bar Date. *See In re Enron Corp.*, 419 F.3d at 133-34 ("While belated amendments will ordinarily be 'freely allowed' where other parties will not be prejudiced, belated new claims will ordinarily be denied, even absent prejudice, unless the reason for the delay is compelling."). With this information in hand, there is no excuse for 3AC's delayed pursuit of these claims some four months after the Bar Date has passed.[9]

50.     Put simply, even if the Motion were to be granted, 3AC would be prohibited from using the information gleaned to amend their claims. The Court should disallow this attempt to go on a fishing expedition at the Debtors' expense for claims that 3AC has no hope of being able to successfully prosecute.

---

[9]     Indeed, this Court has barred would-be creditors from bringing their claims even where they missed the bar date by mere days where there was no excusable reason for such delay or prompt action to rectify such delay. *In re AMR Corp.*, No. 11-15463 (SHL), 2016 WL 1068955, at *5 (Bankr. S.D.N.Y. Mar. 17, 2016) ("Ms. Hayes missed the Bar Date by only a few days, but she did not take prompt action to address the lateness of her claim. Ms. Hayes asserts the she was unaware of any issues with her Proof of Claim until July 2014 when the opposing attorney in the Texas Action informed her that he was considering moving for summary judgment due to the fact that she missed the Bar Date . . . .. But Ms. Hayes then waited more than a year to file her motion in this Court seeking to allow her late filed claim.").

**E.**     **If the Motion is Granted, the Court Should Permit the Parties to Meet and Confer Regarding 3AC's Requests Rather Than Entering the Order as Proposed Wholesale**

51.     For all of the reasons set forth above, the Motion should be denied with prejudice. But, if the Court intends to grant the requested relief, the Debtors respectfully submit that 3AC's proposed form of order should not be entered as filed.  Exhibit B to the proposed order includes specific formulations of 3AC's substantive requests, instructions, and definitions for any Rule 2004 examinations, without any opportunity for the Debtors to serve any responses or objections, as they would be typically afforded during the discovery process.  Thus, if 3AC is allowed to proceed with their 2004 examination, the proposed form of order and Exhibit B should be modified to (i) allow the Debtors to serve any responses or objections to the Requests and (ii) subsequently permit the Parties to meet and confer, with reservations of all rights and defenses should subsequent disputes arise.

*[The remainder of this page is left blank intentionally.]*

## **CONCLUSION**

52.    For the foregoing reasons, the Debtors respectfully request that the Court deny the

Motion with prejudice, sustain the Objection, and such further relief as is just and proper.


Dated:  September 29, 2023                   */s/ Luke A. Barefoot*
         New York, New York          CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                        Sean A. O'Neal
                                        Luke A. Barefoot
                                        Jane VanLare
                                        Andrew Weaver
                                        One Liberty Plaza
                                        New York, New York 1006
                                        Telephone: (212) 225-2000
                                        Facsimile: (212) 225-3999

                                        *Counsel to the Debtors and Debtors-in-Possession*

## **EXHIBIT A**

Fike Declaration

Sean A. O'Neal
Luke A. Barefoot
Jane Van Lare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[10] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DECLARATION OF DEANDRA FIKE IN SUPPORT OF
DEBTORS' OBJECTION TO THE MOTION OF THE FOREIGN
REPRESENTATIVES OF THREE ARROWS CAPITAL, LTD. FOR ENTRY OF AN
ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING THE ISSUANCE
OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS BY THE DEBTORS**

I, Deandra Fike, declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am an associate at the law firm Cleary Gottlieb Steen & Hamilton LLP,

counsel to the Debtors in the above-captioned chapter 11 case.  I am duly admitted to this Court.

2.    I respectfully submit this declaration in support of the *Debtors' Objection*

*to the Motion of the Foreign Representatives of Three Arrows Capital, LTD. For Entry of an Order*

---

[10]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global HoldCo, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

*Pursuant to Bankruptcy Rule 2004 Authorizing the Issuance of Subpoenas for the Production of*
*Documents by the Debtors* (the "Objection").

3.      On September 14, 2023, counsel for 3AC indicated in correspondence
with counsel for the Debtors that if the Debtors did not intend to revise their responses in relation
to RFP Nos. 34 and 37, relating to the GAP-DCG Assignment Agreement (as defined in the
Renewed Objection), they would seek relief via the filing of a motion to compel and asked for
the Debtors' availability for the requisite conference before the Court.  The Debtors responded
by offering to jointly call the Court to determine their availability for an informal discovery
conference.

4.      On September 15, 2023, I, on behalf of the Debtors, and Ms. Tiffany
Ikeda, on behalf of 3AC, jointly called the Court but were unable to connect with chambers.  On
the same date, the Court returned the missed call and I relayed 3AC's request for an informal
discovery conference in anticipation of filing a motion to compel.  I was told counsel for the
3AC should reach out to chambers via email for the Court's availability.  On the same date, I
relayed the conversation with the Court by phone to Ms. Ikeda.

5.      On September 19, 2023, Mr. Barefoot, on behalf of the Debtors, followed
up with counsel for 3AC after receiving no further communications regarding the scheduling of
an informal discovery conference or the motion to compel, asking counsel to confirm whether
3AC still intended to schedule an informal discovery conference.  Counsel for 3AC responded
via email on the same date that they did not intend to schedule an informal discovery conference
at this time.


I declare under penalty of perjury that the foregoing is true and correct.


-23-

Executed on September 29, 2023 at New York, NY

*/s/ Deandra Fike*
Deandra Fike