**Hearing Date: October 24, 2023 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: October 17, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF DEBTORS' THIRD MOTION FOR ENTRY OF ORDER EXTENDING
THE DEBTORS' EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN
AND SOLICIT ACCEPTANCES THEREOF AND GRANTING RELATED RELIEF**

      **PLEASE TAKE NOTICE** that, on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC and its affiliates Genesis Global Capital, LLC and Genesis Asia Pacific Pte. Ltd., as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and the cases, the "Chapter 11 Cases"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

      **PLEASE TAKE FURTHER NOTICE** that an omnibus hearing (the "Hearing") has been scheduled for **October 24, 2023, at 11:00 a.m. (Prevailing Eastern Time)** before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge, United

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

States Bankruptcy Court for the Southern District of New York pursuant to the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 44, the "Case Management Order"), at which Hearing the *Debtors' Third Motion for Entry of an Order Extending the Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Acceptances Thereof and Granting Related Relief* (the "Motion") will be heard. The Hearing will be conducted only through Zoom for government.

PLEASE TAKE FURTHER NOTICE that parties wishing to register for the Zoom hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances. Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so by calling the following muted, listen-only number: 1-929-205- 6099, Access Code: 92353761344#.

PLEASE TAKE FURTHER NOTICE that copies of the Motion can be viewed and/or obtained: (i) by accessing the Court's website at www.nysb.uscourts.gov or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, at https://restructuring.ra.kroll.com/genesis/ or by calling +1 888-524-2017. Note that a PACER password is needed to access documents on the Court's website.

PLEASE TAKE FURTHER NOTICE that the relief requested in the Motion may affect your rights. Please read the below pleadings to be heard at the Hearing carefully and, if you have one available, discuss them with your attorney. (If you do not have an attorney, you should consider consulting with one.)

PLEASE TAKE FURTHER NOTICE that any responses or objections ("Objections"), if any, to the Motion or the relief requested therein shall be made in writing and (a) filed with the Court no later than **October 17, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline") and (b) served as required by the Case Management Order.

PLEASE TAKE FURTHER NOTICE that, if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must timely file an Objection and attend the Hearing. If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Debtors.

Dated:    October 6, 2023
           New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for the Debtors*
*and Debtors-in-Possession*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' THIRD MOTION FOR ENTRY OF AN ORDER EXTENDING THE
DEBTORS' EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN
AND SOLICIT ACCEPTANCES THEREOF AND GRANTING RELATED RELIEF**

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors," and these cases,

collectively, the "Chapter 11 Cases") hereby submit this motion (the "Motion") for entry of an

order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to

section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), extending the

periods during which the Debtors have the exclusive right to (i) file a plan or plans (the "Exclusive

Filing Period") through and including November 22, 2023, which is twenty-nine (29) days after

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

the current expiration, and (ii) solicit acceptances thereof (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods") through and including December 22, 2023, which is thirty (30) days after the proposed expiration of the Exclusive Filing Period, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Since this Court's last extension of the Exclusive Periods, the Debtors have continued to make significant progress toward a successful conclusion to these Chapter 11 Cases. As described below, the Debtors have pursued a path toward a plan that can be confirmed as expeditiously as possible.  The Debtors' work following the last extension includes:

(a)    working with the Official Committee of Unsecured Creditors (the "Committee") in negotiating the definitive documentation for the agreement in principle that the Debtors reached with Digital Currency Group, Inc. ("DCG") and the Committee (the "Agreement in Principle") (ECF No. 625);

(b)    updating the original disclosure statement, filed by the Debtors in June 2023 (ECF No. 429) (the "Original Disclosure Statement"), to incorporate additional and updated disclosures regarding, among other things, (i) various regulatory updates, (ii) a summary of potential causes of action against DCG, (iii) an update on all major events in the cases since the Debtors filed the Original Disclosure Statement and (iv) securities and tax disclosures;

(c)    developing an amended chapter 11 plan with a "toggle" structure (the "Toggle Plan"), which would allow creditors to express a preference between (i) a plan that liquidates the Debtors, distributes existing assets and provides for future distributions as contemplated in the Agreement in Principle (the "DCG Deal Plan") and (ii) a plan that liquidates the Debtors, distributes existing assets, preserves all claims against DCG for post-effective date prosecution and distributes the proceeds of such litigation to creditors (a "No Deal Plan");

(d)   updating the existing plan, filed on June 13, 2023 (ECF No. 427), which already contemplates the continuation of litigation against DCG, to incorporate the terms of the No Deal Plan so that it can be filed promptly in the event that the Debtors determine, in consultation with the Committee and other parties in interest, not to pursue the Toggle Plan;

(e)   engaging in discussions with the Ad Hoc Group of Genesis Lenders (the "Ad Hoc Group") regarding their concerns about the Agreement in Principle and the Toggle Plan, as reflected in the letter attached hereto as **Exhibit B** (the "Ad Hoc Group Letter");

(f)   establishing a data room and engaging in diligence sessions with counsel to the ad hoc group of claimholders represented by Brown Rudnick LLP (the "Brown Rudnick Group"), as well as individual counsel to a member of the Brown Rudnick Group, that had expressed an interest in potentially acquiring litigation claims against DCG entities;

(g)   negotiating and finalizing a partial repayment agreement (the "Partial Repayment Agreement") with DCG and DCG International Investments Ltd. ("DCGI") for amounts owed under certain loan agreements, subject to certain turnover actions before this Court (Adv. Pro. No. 23-01169 (SHL) and Adv. Pro. No. 23-01168 (SHL));

(h)   receiving from DCG and DCGI certain payments and transfers totaling more than $150 million pursuant to the Partial Repayment Agreement (ECF Nos. 7 and 8 in Adv. Pro. No. 23-01169 (SHL) and ECF Nos. 5 and 6 in Adv. Pro. No. 23-01168 (SHL));

(i)   litigating the *Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement* (the "FTX Settlement Motion"), including engaging in discovery with the Ad Hoc Group in connection with their objection to the FTX Settlement Motion (ECF Nos. 648, 664, 665, 690), briefing issues related to the attorney work-product

3

privilege and common-interest doctrine (ECF Nos. 709, 712), and conducting an evidentiary hearing before this Court regarding the FTX Settlement Motion, which has led to this Court granting the FTX Settlement Motion in the *Memorandum of Decision* (ECF No. 781);

(j)    responding to the Foreign Representatives of Three Arrows Capital, Ltd.'s ("3AC") motion to lift the automatic stay (the "3AC Lift Stay Motion") and motion for entry of an order authorizing 3AC to issue subpoenas under Bankruptcy Rule 2004 (the "3AC Rule 2004 Motion") (ECF Nos. 720, 763) with the support of the Committee (ECF Nos. 721, 765), all while engaging in ongoing extensive fact discovery concerning the *Debtors' Second Amended Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (ECF No. 658) (the "Second Omnibus 3AC Claims Objection");

(k)    obtaining this Court's approval for Holdco to enter into certain payroll contracts and transfer employees from Genesis Global Trading, Inc. ("GGT") to Holdco to prepare for the possible sale or wind down of GGT (ECF No. 706);

(l)    moving for this Court's approval to enter into a new lease of commercial office space for a six-month period from November 1, 2023 to April 30, 2023, after the Debtors' current lease on office space expires (ECF No. 775); and

(m)    moving for this Court's approval of the Debtors' rejection of certain executory contracts and establishing omnibus procedures for the rejection of certain executory contracts (ECF No. 679).

2.    To continue building on the significant progress described above, the Debtors require additional time beyond the current Exclusive Periods. Among other things, in the weeks ahead, the Debtors intend to continue to work towards finalizing one or more of the following, informed by their continued discussions with the Debtors' key stakeholders: (i) the Toggle Plan, which would allow creditors to express a preference between the DCG Deal Plan and

the No Deal Plan, (ii) a standalone No Deal Plan, which, like the chapter 11 plan the Debtors have already filed, contemplates no settlement with DCG and instead provides that the estates would pursue claims against various DCG parties, and/or (iii) an amended plan that incorporates any agreed-upon revisions to the Agreement in Principle.  In addition, the Debtors intend to continue finalizing associated solicitation materials, including an amended disclosure statement (the "Amended Disclosure Statement").

3.      To date, various parties in interest, particularly the Ad Hoc Group, have expressed opposition to the Agreement in Principle among the Debtors, the Committee and DCG. The Debtors continue to believe that the Agreement in Principle provides more value to creditors than a non-consensual path rooted in litigation against DCG parties that may or may not be successful and would almost certainly take years to resolve, delay distributions and increase collection risk.  The Debtors have therefore requested that the Ad Hoc Group (i) reach an agreement with a broad coalition of creditors, including fiat and digital currency creditors, on terms that amend the Agreement in Principle (the "Revised DCG Deal Plan") that could be presented to DCG for consideration in lieu of the Agreement in Principle, and (ii) enter into binding commitments, subject to the receipt of an Amended Disclosure Statement that has been approved by this Court, to vote to accept the Revised DCG Deal Plan and the No Deal Plan in the event that the Revised DCG Deal Plan is not agreed upon, so that the estates have confidence that if a consensual resolution is not achieved, a path to a confirmed plan on a reasonable timeline exists.

4.      Although the Debtors requested that the Ad Hoc Group deliver such binding commitments by October 2, 2023, it was not until today that the Ad Hoc Group provided any materials in response to the Debtors' request.  The Debtors are not criticizing the Ad Hoc Group for this delay – there is no doubt that pulling together a broad group of creditors with varying

interests is not an easy task. As the only fiduciaries in these Chapter 11 Cases, however, the Debtors and the Committee will need time to review the materials provided to them this morning and to discuss next steps as they contemplate the best ways to maximize recoveries for creditors.

5.    While the Debtors hope that that their ongoing discussions with the Committee, DCG and the Ad Hoc Group will result in a consensual resolution of these Chapter 11 Cases, the Debtors are prepared to move forward whether or not a resolution with the Ad Hoc Group comes to fruition. This may involve the filing of the Toggle Plan, which would allow creditors to choose whether to accept the DCG Deal Plan or the No Deal Plan, a standalone No-Deal Plan, or another chapter 11 plan. In any event, any plan proposed by the Debtors will allow the creditors to choose their own destiny, consistent with the Bankruptcy Code. In order to facilitate the Debtors' ongoing efforts to achieve consensus on a value-maximizing restructuring without the disruption of competing plans, and in recognition that the Debtors have been working tirelessly to achieve a consensual resolution supported by creditors, including by delaying the filing of the Toggle Plan as requested by the Ad Hoc Group, the Debtors hereby seek to extend the Exclusive Filing Period through November 22, 2023 and the Exclusive Solicitation Period through December 22, 2023.

**BACKGROUND**

6.    Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate GGT provide lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency. Historically, the Debtors engaged in lending, borrowing and certain trading services, while the Non-Debtor Subsidiaries engaged in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by DCG, the Debtors' ultimate parent company. Additional information regarding the Debtors' business, capital structure and the circumstances

leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of A. Derar Islim in Support of First Day Motions and in Compliance with Local Rule 1007-2* (ECF No. 17), the *Declaration of Paul Aronzon in Support of Chapter 11 Petition and First Day Motions and Applications in Compliance with Local Rule 1007*-2 (ECF No. 19) and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (ECF No. 28) (collectively, the "First Day Declarations").

7.      On January 19, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of the Related Chapter 11 Cases* (ECF No. 37). No trustee or examiner has been appointed in the Chapter 11 Cases. On February 3, 2023, the Committee was appointed in these cases pursuant to the *Notice of Appointment of Official Committee of Unsecured Creditors* (ECF No. 55).

## JURISDICTION AND VENUE

8.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and rule 9006-1 of the Local Rules of the United States Bankruptcy Court for the Southern

District of New York (the "Local Rules").

## RELIEF REQUESTED

9.      The Debtors hereby request entry of an order pursuant to section 1121(d) of

the Bankruptcy Code extending (a) the Exclusive Filing Period through and including November

22, 2023 and (b) the Exclusive Solicitation Period through and including December 22, 2023.

## BASIS FOR RELIEF

**A.      The Court Has Broad Discretion to Grant the Debtors' Motion to Extend the Exclusive Periods.**

10.      Recognizing that debtors would experience disruption to their businesses if

creditors were forced to consider multiple, simultaneous competing plans, Congress created

exclusive periods during which debtors have a complete opportunity to propose a chapter 11 plan

and solicit acceptances.  In enacting chapter 11 of the Bankruptcy Code, Congress sought to give

debtors the occasion to develop, solicit acceptances of and implement a consensual chapter 11 plan

free from the interference, disruption and confusion that would result from competing plans

proposed by non-debtor parties.  Thus, under section 1121(b) of the Bankruptcy Code, a debtor

has an initial exclusive 120-day period to file a chapter 11 plan.  Under section 1121(c)(3) of the

Bankruptcy Code, if a debtor files a plan within the 120-day period, it has an additional 60 days to

secure acceptances of its plan.  The Debtors' Exclusive Filing Period and Exclusive Solicitation

Period are currently are set to expire on October 6, 2023 and October 31, 2023, respectively, but

have been extended to at least October 24, 2023 as a result of the Court setting of the hearing on

this Motion on the same date.[2]

---

[2]      Pursuant to Rule 9006-2 of the Local Rules, the filing of this Motion automatically extended the Exclusive Periods until the Court rules on this Motion.

11.     The Court has wide latitude to extend the Exclusive Periods under section 1121(d) of the Bankruptcy Code.  *See* 11 U.S.C. § 1121(d) ("on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section").  The Court may extend the Exclusive Filing Period for a chapter 11 plan to 18 months and the Exclusive Solicitation Period to 20 months from the Petition Date.  *Id.* § 1121(d)(2).  So long as the Court finds cause and the Debtors provide "no reason to believe that they are abusing their exclusivity rights[,] . . . [ a] requested extension of exclusivity . . . should be granted."  *In re Global Crossing Ltd.*, 295 B.R. 726, 730 (Bankr. S.D.N.Y. 2003).

12.     The Bankruptcy Code does not define the cause standard articulated in section 1121 of the Bankruptcy Code, but the provision's legislative history evidences Congress's intent for it to be a pliable standard.  *See* H.R. Rep. No. 95-595, at 231–32 (1987), *reprinted in* 1978 U.S.C.C.A.N. 5963 (indicating that bankruptcy courts have wide discretion to allow a debtor full opportunity to negotiate a chapter 11 plan without other parties' interference).  Under section 1121's "for cause" standard, a debtor should be given a fair opportunity to negotiate a chapter 11 plan with creditors.  *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

13.     Courts in the Second Circuit consider the totality of the circumstances in exercising their discretion to grant section 1121(d) motions to extend a debtor's plan exclusivity periods.  *See, e.g.*, *In re Borders Group, Inc.*, 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013); *In re Dow Corning Corp.*,

208 B.R. 661, 664 (Bankr. E.D. Mich. 1997). Among the factors courts look to in determining

whether to grant an extension of the plan exclusivity periods are:

(a) the size and complexity of the debtor's case;

(b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information [for creditors regarding such plan];

(c) the existence of good faith progress toward reorganization;

(d) the fact that the debtor is paying its bills as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress in negotiations with its creditors;

(g) the amount of time which has elapsed in the case;

(h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(i) whether an unresolved contingency exists.

*Borders*, 460 B.R. at 822 (citing *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr.

S.D.N.Y. 2006)); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987)

(citing five of the above factors). Because not all factors are pertinent to every chapter 11 case,

courts may consider the relevant factors in determining whether cause to extend the plan

exclusivity periods exists. *See In re Adelphia Commc'ns Corp.*, 352 B.R. at 586 ("A decision to

extend or terminate exclusivity for cause is within the discretion of the bankruptcy court, and is

fact-specific."); *Borders*, 460 B.R. at 822 ("[T]he court has broad discretion in extending or

terminating exclusivity . . . ."); *see also In re Lehigh Valley Prof'l Sports Club, Inc.*, No. 00-11296,

2000 WL 290187, at *2 (Bankr. E.D. Pa. Mar. 14, 2000) (relief under section 1121(d) "is

committed to the sound discretion of the bankruptcy judge").

**B.    The Court Should Grant the Debtors' Motion to Extend the Exclusive Periods Because the Debtors' Chapter 11 Cases Are Large and Complex**

14.    A debtor can successfully show cause based on the size and complexity of

its case alone. *See* H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* U.S.C.C.A.N. 5787, 6191

("[I]f an unusually large company were to seek reorganization under chapter 11, the court would

10

probably need to extend the time in order to allow the debtor to reach an agreement."); *see also Texaco*, 76 B.R. at 326–27 (recognizing that a court should grant a debtor's motion to extend the Exclusive Periods where the debtor is a large company); *In re Express One Int'l Inc.*, 194 B.R. 98, 100 (Bankr. S.D. Tex. 1996) ("The traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization.").

15.     The size and complexity of these Chapter 11 Cases justify granting the Debtors' Motion and extending the Exclusive Periods in light of all of the relevant factors. The Debtors' balance sheets reflect billions of dollars of assets and liabilities that need to be restructured in these Chapter 11 Cases. In addition to the size and breadth of the Debtors' assets and liabilities, however, that the Debtors' business operates in the digital asset industry has introduced significant and novel complexities into these cases, including, for example, the unprecedented upheaval that the digital asset industry has experienced and substantial intercreditor issues among creditor constituencies holding claims denominated in fiat and different digital assets. The nature of the Debtors' business, the current market conditions in the digital asset space, the sheer size and breadth of the Debtors' assets and liabilities, and the substantial intercreditor disputes that have been a fixture in these cases present a number of complexities that must be considered as part of the Debtors' negotiation and formulation of a chapter 11 plan. Accordingly, the Debtors' request to extend the Exclusive Periods is more than reasonable under present circumstances.

**C.     The Debtors Have Made Continuous and Substantial Good Faith Progress Toward Exiting Chapter 11**

16.     The Debtors have also made substantial, good faith progress toward exiting chapter 11. As described above, the Debtors have continued to work tirelessly following the second exclusivity hearing on September 6 to advance these Chapter 11 Cases, actively engage

11

with key stakeholders and position the Debtors to expeditiously achieve a value-maximizing restructuring. Among other things, these efforts have resulted in the development of a Toggle Plan, which will allow creditors to express a preference between the DCG Deal Plan and the No Deal Plan, as well as a standalone No Deal Plan that would not be part of a Toggle Plan. In addition, the Debtors continue to have discussions with the Ad Hoc Group about the Revised DCG Deal Plan. While the Debtors are hopeful that a consensual resolution among the Committee, Ad Hoc Group, DCG and other stakeholders will be achieved, the Debtors' efforts will also allow the Debtors to move toward confirmation regardless of whether the parties in interest are ultimately able to agree on a global resolution.

17.      The Debtors' progress, working closely with the Committee and all other creditor groups, collectively demonstrates the Debtors' good faith desire to successfully conclude these Chapter 11 Cases. *See Borders*, 460 B.R. at 823 (finding that a debtor's court filings, negotiations and general case activity are sufficient for demonstrating good faith progress toward exiting chapter 11). Accordingly, the Debtors' Motion is both justified and reasonable.

**D.    The Debtors Have Made Progress With Creditors, But Additional Time is Needed to Negotiate a Plan**

18.      The Debtors have endeavored to work collaboratively with all of their creditors—including the Committee, the Ad Hoc Group, and Gemini Trust Company, LLC ("Gemini")—at every stage in these Chapter 11 Cases to achieve a consensual and value-maximizing resolution. The Debtors have also given their creditors every opportunity to participate directly in negotiations with DCG and over the terms of the Plan.[3] These efforts

---

[3]      While the Brown Rudnick Group only recently appeared in these cases, the group of creditors it represents overlaps substantially with the Ad Hoc Group's membership and also includes Gemini, which has appeared before this Court separately; accordingly, despite the Brown Rudnick Group's late formation, most of its members have been involved since the beginning of these cases.

initially resulted in the agreement in principle with the Ad Hoc Group, reflected in the Restructuring Term Sheet filed with the Court on February 10, 2023 (ECF No. 80). While the Ad Hoc Group subsequently abandoned this agreement, the Debtors have nonetheless since consistently continued their effort to engage with and facilitate negotiations between the Ad Hoc Group, Gemini, the Committee and DCG, including by (i) proceeding with a mediation led by former Bankruptcy Judge Randall Newsome that included all of those constituents, (ii) facilitating multiple weeks of in-person meetings with key principals of the Ad Hoc Group, the Committee and DCG and (iii) engaging in numerous individual and multilateral discussions with the various constituencies.

19.    The Debtors have continued to make progress in their negotiations with creditors and in their development of a viable amended plan. *First*, the Debtors, with the support of the Committee, have been working diligently to negotiate the definitive documentation for the Agreement in Principle. Significant progress has been made with respect to a form of global settlement agreement and plan term sheet. That said, there are significant open issues with respect to the terms and conditions of the potential first-lien and second-lien debt documentation that must be resolved between the Debtors and the Committee, on the one hand, and DCG, on the other, in order for the Debtors to proceed with the Agreement in Principle. The Debtors understand that the Committee has the same view.

20.    *Second*, in response to feedback from the Ad Hoc Group and other constituencies, the Debtors developed the Toggle Plan, which would allow creditors to choose their own destiny by expressing a preference between the DCG Deal Plan and the No Deal Plan during the voting process. The Toggle Plan was initially received favorably by creditors. *See, e.g.,* Hr'g Tr., *In re Genesis Global Holdco, LLC*, 23-10063 (SHL) (Bankr. S.D.N.Y. Sept. 6, 2023)

at 86:11 and 90:19-20 (during which the Brown Rudnick Group, in expressing a desire for creditors to have a choice, stated that "there's a way to give creditors a choice on litigation . . . it's an important thing" and "what we need here is choice").  Under this toggle structure, the Debtors would implement either the DCG Deal Plan or the No Deal Plan in accordance with the preferences expressed by a majority of voting claims across all classes.  While key stakeholders initially expressed support for this toggle approach, some of them, including the Ad Hoc Group and Brown Rudnick Group, have backed away from this support, and have requested that the Debtors instead pursue only the No Deal Plan.  Even so, to date they have not made it clear to the Debtors whether they would vote to accept a No Deal Plan if presented with an approved Amended Disclosure Statement.

21.    *Third*, in response to the Ad Hoc Group's concerns about the Toggle Plan, the Debtors have asked the Ad Hoc Group to develop support among a broad group of creditors, including creditors holding fiat and digital asset claims, for a Revised DCG Deal Plan that would address their concerns and have encouraged the Ad Hoc Group to re-start negotiations with DCG about a Revised DCG Deal Plan.  *See* Ad Hoc Group Letter.  Importantly, to help create a path to confirmation and minimize the cost and disruption of a contested confirmation or unsuccessful vote on the Toggle Plan, the Debtors informed the Ad Hoc Group that they would not pursue the Toggle Plan if (i) the Committee agreed to support the No Deal Plan, and (ii) the Ad Hoc Group obtained binding commitments from a broad coalition of creditors to vote to accept both a Revised DCG Deal Plan and the No Deal Plan in the event that the Revised DCG Deal Plan is not agreed upon, subject to requisite court approval of the Amended Disclosure Statement. *See id*.

22.    The Debtors requested that the Ad Hoc Group deliver such binding commitments by Monday, October 2, 2023.  The Ad Hoc Group delivered documentation in

response to this request on October 6, 2023. The Debtors need additional time to review the documentation provided by the Ad Hoc Group and to discuss next steps with the Committee. Over the past few weeks, the Debtors have refrained from filing the Toggle Plan in order to give the Ad Hoc Group additional time to deliver binding commitments, to allow the Debtors to review such binding commitments and to re-start negotiations with DCG about the Revised DCG Deal Plan.

23.    The Debtors believe that with additional time, they may be able to build from these ongoing discussions with creditors to reach a consensual resolution. But by progressing on multiple fronts over the past several weeks, the Debtors have positioned the estates to move towards confirmation, regardless of the outcome of these ongoing discussions: (i) if the Ad Hoc Group is able to provide the Debtors with the requisite binding commitments to vote for the Revised DCG Deal Plan and the No Deal Plan, the Debtors are prepared to set aside the Toggle Plan and instead pursue either the Revised DCG Deal Plan (if DCG agrees to such terms) or the No Deal Plan (if DCG does not agree to the Revised DCG Deal Plan); (ii) if the Ad Hoc Group is unable to provide the requested binding commitments with respect to a No Deal Plan and cannot obtain DCG's agreement to the Revised DCG Deal Plan and the Committee continues to support the Toggle Plan, the Debtors are prepared to move forward with the Toggle Plan (assuming the open terms in the definitive documentation related to the Agreement in Principle are mutually agreed upon), allowing creditors to express a preference between the DCG Deal Plan and the No Deal Plan, and (iii) if the Debtors, the Committee and DCG are unable to resolve fundamental outstanding issues and finalize the definitive documentation for the Agreement in Principle, particularly with respect to the proposed first-lien and second-lien debt terms, the Debtors are prepared to move forward with the No Deal Plan alone.

24.     Given the Debtors' transparency in this process, the existence of continued productive conversations among the Debtors and parties in interest and the need to continue negotiations and documentation depending on the results of ongoing discussions, the circumstances warrant an extension of the Exclusive Periods.

### E.     Granting the Debtors' Motion to Extend the Exclusive Periods Will Not Harm or Pressure Creditors

25.     An extension of the Exclusive Periods will neither prejudice nor pressure creditors or any interested parties.  Not only have the Debtors maintained ongoing and transparent communications with their key stakeholders throughout these Chapter 11 Cases and continued to engage in extensive negotiations with such stakeholders as they work towards confirmation, but the Debtors are working collaboratively with their various creditor constituencies to put forward a version of the plan that gives creditors a choice, as described above.  In addition, the Debtors have worked with all parties in interest in a constructive manner to minimize disputes and resolve contested matters whenever possible.  The Debtors remain committed to continuing these efforts going forward as they move toward achieving a successful conclusion.

26.     Continued exclusivity will permit the Debtors to avoid the disruptions that would result from the development of competing plans and will benefit the Debtors' estates, their creditors and all other parties-in-interest.  In addition, should a change in circumstances result in a creditor being pressured after the Exclusive Periods are extended, the creditor may move as a party in interest to terminate the Debtors' Exclusive Periods under 11 U.S.C. § 1121(d).  Accordingly, granting this Motion will not harm the creditors in these Chapter 11 Cases.

### F.     The Requested Extensions Are Reasonable and Within the Statutory Limits

27.     The Bankruptcy Code limits extensions of the Exclusive Filing Period to a date no more than 18 months after the Petition Date and of the Exclusive Solicitation Period to a

date no more than 20 months after the Petition Date. *See* 11 U.S.C. § 1121(d)(2). Accordingly, this Motion seeks relief that is consistent with section 1121(d)(2) of the Bankruptcy Code.

**G.    The Debtors Continue to Make Their Payments as They Become Due and Maintain the Continued Ability to Do So**

28.    A debtor's liquidity and solvency are an additional factor courts consider in granting an extension of exclusivity. *See Adelphia Commc'ns Corp.*, 352 B.R. at 587; *Texaco*, 76 B.R. at 322. The Debtors have continued to make payments pursuant to their postpetition obligations as they come due in the ordinary course and will continue to do so throughout these Chapter 11 Cases. As such, this factor weighs in favor of allowing the Debtors to extend the Exclusive Periods.

**H.    The Debtors Must Resolve Important Contingencies**

29.    A debtor having unresolved contingencies is an additional factor justifying extending the debtor's plan exclusivity periods. *See, e.g.*, *Borders*, 460 B.R. at 826; *Adelphia Commc'ns Corp.*, 352 B.R. at 587. Though the Debtors have made great progress since the Petition Date to resolve issues and pave the way for a consensual restructuring, and have made further significant progress since the second exclusivity hearing, certain contingencies remain unresolved.

30.    Among other things, while the claims bar dates have passed, the Debtors are still in the process of analyzing and reconciling the claims filed such that the Debtors and all parties in interest will have a full understanding of the claims pool, which will impact anticipated recoveries and may affect the contours of the chapter 11 plan, as they work towards confirmation of a chapter 11 plan. The Debtors are also continuing to evaluate various preference claims that they may pursue or that may be pursued against them, all of which will factor into the Plan. Finally, the Debtors are litigating the 3AC Lift Stay Motion, the 3AC Rule 2004 Motion, and the Second

Omnibus 3AC Claims Objection, which related to another significant (over $1 billion) asserted claim against the estates.

31.    Granting the requested extension of the Exclusive Periods will provide the Debtors with time to resolve such contingencies and build consensus among their stakeholders without the interruption of a competing plan.  Accordingly, this factor supports the relief requested in the Debtors' Motion.

## I.    The Totality of the Circumstances Justifies Granting the Debtors' Motion to Extend Their Exclusive Periods

32.    Together, the factors discussed above justify granting the Debtors' Motion to extend their Exclusive Periods.  The relief requested will prevent all parties-in-interest from having to negotiate across multiple chapter 11 plans, a situation that would produce substantial uncertainty in light of the complexity of these Chapter 11 Cases.  Extending the Exclusive Periods will benefit all stakeholders, including the Debtors, their creditors and other parties-in-interest, since it will allow all stakeholders to continue making progress toward a value-maximizing restructuring, regardless of whether there is a global settlement.  Such extensions are common in large chapter 11 cases.  *See, e.g.*, *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. Mar. 9, 2023) (ECF No. 2203) (extending the debtors' exclusive filing period and exclusive solicitation period for a second time by a total of 141 days and 172 days, respectively); *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. Jan. 24, 2023) (ECF No. 906) (extending the debtors' exclusive filing period and exclusive solicitation period for a second time by a total of 121 days and 119 days, respectively); *In re LATAM Airlines Group S.A.*, Case No. 20-11254 (JLG) (Bankr. S.D.N.Y. Jan. 28, 2021) (ECF No. 1760) (extending the debtors' exclusive filing and solicitation period for a second time by five months); *Avianca Holdings S.A.*, Case No. 20-11133 (MG) (Bankr. S.D.N.Y. Aug. 7, 2020) (ECF No. 678)

(extending the debtors' exclusive periods by 120 days); *In re Pacific Drilling S.A.*, Case No. 17-13193 (MEW) (Bankr. S.D.N.Y. Mar. 8, 2018) (ECF No. 248) (granting the debtors' motion to extend the exclusive periods by 120 days); *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. May 25, 2017) (ECF No. 970) (same); *In re Republic Airways Holdings Inc.*, Case No. 16-10429 (SHL) (Bankr. S.D.N.Y. May 27, 2016) (ECF No. 610) (granting the debtors' motion to extend the exclusive periods by 190 days); *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Sept. 11, 2012) (ECF No. 1413) (granting the debtors' motion to extend the exclusive periods by 270 days); *In re Eastman Kodak Co.*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. May 1, 2012) (ECF No. 1602) (granting the debtors' motion to extend the exclusive periods by 180 days).

33.     The Debtors are performing all necessary tasks as chapter 11 debtors to facilitate an optimal resolution of these Chapter 11 Cases.  Consequently, ample cause exists for granting the Debtors' Motion to extend the Exclusive Periods.

## NOTICE

34.     The Debtors have provided notice of this Motion in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 44).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## NO PRIOR REQUEST

35.     No prior request for the relief requested herein has been made to this or any other Court.

*[The remainder of this page is left blank intentionally]*

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, and (b) grant such other and further relief as is just and proper.


Dated:  October 6, 2023
      New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999


*Counsel to the Debtors and
Debtors-in-Possession*