Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 23-10063-shl

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   GENESIS GLOBAL HOLDCO, LLC,

8

9          Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                    United States Bankruptcy Court

12                    One Bowling Green

13                    New York, NY  10004

14

15                    October 6, 2023

16                    10:09 AM

17

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: ALIANNA PERSAUD

1    HEARING re Doc. #779 Notice of Agenda

2

3    HEARING re Doc. #711 Motion for Entry of an Order Pursuant

4    to Bankruptcy Rule 2004 Authorizing the Issuance of

5    Subpoenas for the Production of Documents by the Debtors

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    CLEARY GOTTLIEB STEEN HAMILTON LLP

4         Attorneys for the Debtor

5         One Liberty Plaza

6         New York, NY 10006

7

8    BY:  LUKE A. BAREFOOT

9

10   WHITE CASE

11        Attorneys for the Official Committee of Unsecured

12        Creditors

13        1221 Avenue of the Americas

14        New York, NY 11020

15

16   BY:  COLIN WEST

17

18   LATHAM WATKINS

19        Attorneys for Foreign Representatives of Three Arrows

20        Capital

21        355 S Grand Avenue, Suite 100

22        Los Angeles, CA 90071

23

24   BY:  NIMA MOHEBBI

25

```
 1   LATHAM WATKINS

 2        Attorneys for Foreign Representatives of Three Arrows

 3        Capital

 4        1271 Avenue of the Americas

 5        New York, NY 10020

 6

 7   BY:  ADAM GOLDBERG

 8

 9   ALSO PRESENT:

10   LIZ ABDELMASIEH

11   PHILIP ABELSON

12   PAUL ARONZON

13   ANDREW BEHLMANN

14   BARNWELL BRENDON

15   BRIAN BULTHUIS

16   SAM CASCANTE

17   TOM CONHEENEY

18   ERIC C. DAUCHER

19   MICHAEL DIYANNI

20   MICHAEL S. ETKIN

21   DEANDRA FIKE

22   ADRIAN GARIBALDI

23   TALIA HELFRICK

24   DERAR ISLIM

25   ZUL JAMAL
```

Page 5

1    BARRY JONES

2    BARAK KLEIN

3    TUKISHA KNOX

4    OXANA KOZLOV

5    GLEN KRATOCHVIL

6    KONRAD LAESSER

7    BRADLEY LENOX

8    MICHAEL LETO

9    JESSICA LIOU

10   MARCY J. MCLAUGHLIN SMITH

11   MICHELE MEISES

12   ANAIS MITRA

13   SAMUEL NADEL

14   JOHN NGUYEN

15   SEAN A. O'NEAL

16   MICHAEL PAPANDREA

17   AMANDA PARRA CRISTE

18   GREGORY F. PESCE

19   ARIANNA PRETTO-SAKMANN

20   PHILIP RIES

21   BRIAN ROSEN

22   JEFFREY D. SAFERSTEIN

23   REBECCA SALK

24   DAVID Z. SCHWARTZ

25   JOE SCHIAMETTA

```
 1   J. CHRISTOPHER SHORE

 2   JASON SOTO

 3   GABE SUTHERLAND

 4   ANDREW SWIFT

 5   TARA TIANTIAN

 6   BRIAN TICHENORE

 7   ANDREW TSANG

 8   JANE VANLARE

 9   FRANCISCO VAZQUEZ

10   MEGHANA VUNNAMADALA

11   GREG M. ZIPES

12   ALEX VAN VOORHEES

13   NEGISA BALLUKU

14   SABRINA BREMER

15   JADE DYER KENNEDY

16   ASHLYN GALLAGHER

17   UDAY GORREPATI

18   TAYLOR HARRISON

19   MIRANDA HATCH

20   HOO RI KIM

21   MIKE KOWIAK

22   KEVIN LIANG

23   KEN LUKASZEWSKI

24   NICK MAISEL

25   JACK MASSEY
```

Page 7

1    AKIKO MATSUDA

2    KYLE MCKUHEN

3    RICHARD CHESTER MINOTT

4    TYLER OKADA

5    CHRISTIAN RIBEIRO

6    KATIE ROSS

7    SAMIRA SARAN

8    JORDAN SAZANT

9    GEMMA TUNG

10   MICHAEL WEINBERG

11   LILY YARBOROUGH

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   P R O C E E D I N G S

2            THE COURT:  Good morning.  This is Judge Sean Lane

3      in the United States Bankruptcy Court for the Southern

4      District of New York, and we're here for a 10:00 in Genesis

5      Global Hold Co., LLC., a Chapter 11 case.  So we'll start

6      with appearances.  Let me find out who's here for the

7      Debtors.  Oh, I'm not on.  All right.  Good morning.  This

8      is Judge Sean Lane in the United States Bankruptcy Court for

9      the Southern District of New York, and we're here for a

10     10:00 hearing in Genesis Global Hold Co., LLC.  So let me

11     find out who is here from various parties starting with the

12     Debtors.

13            MR. BAREFOOT:  Good morning, Your Honor.  Luke

14     Barefoot from Cleary Gottlieb for Genesis the Debtors.

15            THE COURT:  Good morning.  And on behalf of the

16     Official Committee?

17            MR. WEST:  Good morning, Your Honor.  Colin West

18     of White and Case on behalf of the Official Committee of

19     Unsecured Creditors.

20            THE COURT:  All right.  And on behalf of Three

21     Arrows Capital?

22            MR. MOHEBBI:  Good morning, Your Honor.  You have

23     Nima Mohebbi from Latham and Watkins along with my partner

24     Adam Goldberg.

25            THE COURT:  Good morning.  And I -- this is always

Page 9

1   the case in matters like this.  We have many pages of

2   appearances, but I'm not quite sure who actually intends to

3   appear beyond the folks identified thus far.  So rather than

4   go through that lengthy list, I'll just throw it open, find

5   out if there's anyone else who wishes to make an appearance

6   here this morning.  All right.  In light of the fact that no

7   one else has stepped forward, we can proceed.  I do have the

8   agenda for today's hearing.  That's filed at Docket 779.

9          And I did receive communication from my courtroom

10  deputy that the discovery conference that was requested is

11  no longer necessary because the parties have worked out

12  their issues.  I appreciate that fact that the parties

13  obviously spent some time to work through issues.  Thank you

14  very much.  And so I think the only thing that is left is

15  the Rule 2004 Motion, which also, based on the reply,

16  appears to have sort of been reduced to a single issue.

17         I will say I have one issue to add to the list,

18  and it's sort of a scheduling procedure issue.  And so let

19  me get that out of the way.  We had talked about -- and I

20  think perhaps it was at my behest or not, but about how to

21  deal with the Three Arrows consolidation motion and when to

22  hear it and how to work out all the schedules associated

23  with that.  And after seeing that motion filed in many other

24  cases, I ran into Judge Glenn and we started talking about

25  whether for purposes of here in the Southern District for

1   convenience and for efficiency's sake, but without it being

2   any comment on the merits or demerits of the consolidation

3   motion itself, whether it made sense for Judge Glenn and I

4   to have a joint hearing just to discuss the matters.

5   Because I certainly suspect all parties would be attending

6   all these different hearings.

7          And he had some time, and I have some time on the

8   23rd at 3:00 if we wanted to break out that one motion from

9   the calendar that's on the next day here.  I didn't want to

10  do that without talking to folks because it's not intended

11  to send any profound message about my view about the merits

12  of the motion or anything of that sort.  And I know that

13  without communicating with the parties, sometimes doing

14  things like that people will try to read the tea leaves.

15  And here, there are no tea leaves really to read other than

16  at the administrative convenience of the court.

17          So let me ask.  I'll start with Three Arrows

18  Capital since it's its motion whether it has a view or not

19  on that as a -- just as a procedural matter.

20          MR. GOLDBERG:  Good morning, Your Honor.  Adam

21  Goldberg of Latham and Watkins for Three Arrows Capital for

22  the record.  We would be happy to reschedule the hearing for

23  the 23rd at 3 p.m.  I think that just for the sake of

24  completeness would entail what we've referred to as the

25  coordination motion together with our motion for relief from

Page 11

1    stay and the related motion to seal.

2           THE COURT:  I don't know.  That's -- that is a

3    question of whether it would include the relief from stay

4    motion really because relief from stay is dealing with the

5    merits of each case and while there's overlap.  So we might

6    think about whether that -- is there a motion for relief

7    from the automatic stay in the other cases?

8           MR. GOLDBERG:  Well, Your Honor, Judge Glenn had

9    our Chapter 15 case.  He also has the Celsius case.

10          THE COURT:  Yeah.  No, I guess I'd be referring to

11   the Celsius case, whether there's a motion for stay relief

12   in that case.

13          MR. GOLDBERG:  Yes, Your Honor.  So we will be --

14   I think we're amending the request to the Court as it

15   relates to Celsius.  I'd like to be clear that Latham and

16   Watkins does not represent Three Arrows Capital on any

17   matter related to Celsius.  Our co-counsel at Holland and

18   Knight is advising the (indiscernible) and Three Arrows

19   Capital on those issues.  We have not -- the -- I should --

20   just for the sake of facts, I would say that a companion

21   coordination motion has not been filed in the Celsius case.

22          There has been a motion for relief from stay filed

23   in the Celsius case, which is on a somewhat different basis

24   than the one presented --

25          THE COURT:  Yeah.  So --

Page 12

 1                MR. GOLDBERG:  -- in this court.

 2                THE COURT:  So yeah.  I guess I had assumed there

 3     was a motion -- a coordination motion filed in Celsius.  So

 4     you're saying the only coordination motion that Judge Glenn

 5     has is in the Chapter 15 case?

 6                MR. GOLDBERG:  That's right.

 7                THE COURT:  And the only stay relief motion he has

 8     is in the Celsius case, but it's done by different counsel

 9     on different grounds.

10                MR. GOLDBERG:  That's right, Your Honor.

11                THE COURT:  All right.  That does raise the

12     question of whether it is appropriate to have a joint

13     hearing because I don't know that I -- the question of

14     overlap, the Chapter 15 -- I assumed there was a Chapter 11

15     -- a similar Chapter 11 motion for coordination that Judge

16     Glenn had.  Well, anyhow, I can't sort of figure out those

17     puzzle pieces at the moment, but I appreciate the factual

18     clarification.

19                MR. GOLDBERG:  Thank you, Your Honor.  And I think

20     you're not off base.  We I think had originally anticipated

21     seeking to coordinate Celsius as well, and I think as we've

22     refined and evaluated those issues it will be clear that in

23     our proposed order related to the coordination motion, we

24     would not be seeking to include the Celsius case in that

25     coordination.

1        THE COURT:  All right.  All right.  So let me hear

2    from the Debtors.

3        MR. BAREFOOT:  Good morning, Your Honor.  Luke

4    Barefoot from Cleary Gottlieb for the Debtors.  I think you

5    covered much of what I wanted to say in terms of, look, if

6    you wanted to have a joint hearing just with Judge Glenn in

7    respect of his oversight of the Chapter 15 proceedings, I

8    think that we would certainly understand the reasons for

9    that.  I think for many of the reasons Mr. Goldberg just

10   laid out, I think Celsius really is a different animal both

11   in terms of, you know, the -- that they're not in

12   coordination (indiscernible).

13       THE COURT:  Yeah.  I think -- I think when I heard

14   the preview, I had assumed that there was going to be one

15   and that they were sort of going to -- obviously, each case

16   has -- would have its own wrinkles.  But it sounds like

17   there's not that level of parallel action here.  And so it

18   really would just be if there was a joint hearing then on --

19   it doesn't make any sense to talk about the stay relief

20   motions at that hearing.  It would just really be to talk

21   about coordination, the motion that's been filed in the 15

22   case and here, although they are different by virtue of the

23   fact that one's a 15 and one's a 1011.

24       MR. MOHEBBI:  Your Honor, just so (indiscernible),

25   and I think you covered this largely whenever we originally

Page 14

1    talked about moving the date for the hearing on the listing

2    motion, there is very much part and parcel and a lot of

3    overlap between the grounds for the list day motion and the

4    coordination motion not for the reason that it was adjourned

5    so that they could file their coordination motion and have

6    those put together.  I'm not sure it makes a lot of sense to

7    segregate those two at this point given that the overlapping

8    issue.

9              THE COURT:  All right.  All right.  Yes.  And I

10   apologize for -- the minute we sort of set this up and had a

11   conversation about it, and so to clear the air on it, and

12   then this wrinkle came up about this possibility, which is

13   -- which makes sense to discuss.  So -- but it also

14   represents a level of uncertainty.  So I'm going to talk to

15   Judge Glenn about it.

16             Again, I think I had thought that there was going

17   to be a coordination motion in Celsius, and I think those

18   would then be by definition similarly -- that would be

19   similarly situated to this motion.  And there might be

20   sufficient overlap to make it sensible.  I'm not -- given

21   what you just said about the stay relief motion, which

22   doesn't come as a surprise, I'm not quite sure it is

23   efficient or sensible.  I don't know that Judge Glenn wants

24   to have to sit through all that.

25             So here's what I'll do.  We'll leave everything

Page 15

```
 1    status quo until I talk to Judge Glenn.  If we decide that

 2    for purposes of venting issues, essentially, and having a

 3    discussion, then it would be helpful to have the hearing as

 4    a joint hearing.  Then we'll let you know.  But again,

 5    there's no messaging here in terms of my views on the

 6    ultimate merits of any of the requests.  It's just a matter

 7    of what the discussion looks like really.  So Mr. Barefoot,

 8    anything else you wanted to share on that subject?

 9              MR. BAREFOOT:  No, Your Honor.

10              THE COURT:  All right.

11              MR. BAREFOOT:  We'll wait for (indiscernible) on

12    that.

13              THE COURT:  All right.  Thank you so much.  And I

14    don't know if the Committee wants to be heard on that.  They

15    don't have to be, but I didn't want to preclude them from

16    chiming in.

17              MR. WEST:  Colin West, Your Honor, from White and

18    Case for the Committee.  No, Your Honor.  I think you now

19    have all of the relevant background procedural facts, and I

20    don't think we have anything to add.

21              THE COURT:  All right.  Thank you very much.  All

22    right.  I appreciate your indulgence in chatting about this,

23    and with that, we can turn to the matters that are on the

24    agenda, which is the Rule 2004 motion.  And since it's Three

25    Arrow Capital motion, I thought I would start with them.
```

Page 16

1      And I have read all the papers.  I have my stickies, I have

2      my Rules of Civil Procedure that are incorporated in the

3      Rules of Bankruptcy Procedure for thinking about how to sort

4      these things out.

5             And I will start with this question.  So there's a

6      discussion in the reply talking about the -- essentially as

7      frankly the one issue that's left, which is the request for

8      all documents and communications from the June 14, 2022

9      through July 31, 2022 concerning the assignment of certain

10     claims from Genesis to DCG as set forth in the assignment

11     assumption of master loan agreement executed July 14, 2022.

12     That seems to be the only issue left.

13            I guess I was trying to figure out in light of the

14     fact that there has been some production of information and

15     some coordination, no pun intended, among the parties to try

16     to remove issues, I'm trying to figure out, and I'll ask

17     Three Arrows Capital this, am I looking at this still from

18     the point of view at 2004, or am I really looking at it from

19     the point of view of discovery in a contested matter, right?

20            So the motion said 2004.  The response said no,

21     it's not 2004, it's -- we've already moved onto a contested

22     matter under the rules, and that's the way we look at it.

23     And in fact, there is a discussion in the reply then about

24     relation back and all those kinds of questions.  And so I

25     ask because there's a different standard in Rule 2004 than

Page 17

1    there is in a contested matter.

2         I don't know that that -- differing standards

3    would be dispositive here, but I at least, as a judge, want

4    to know what the rules of the road are.  When I open my rule

5    book, what page should I be opening to when I consider the

6    last item that's on the agenda here?  And I guess it also

7    was a question that occurred to me given that there was some

8    production, additional production, and what the parties

9    thought they were doing or not doing.

10        Now, I don't want to overthink it.  Parties may be

11   saying, Judge, however you think about it, we just didn't

12   want to fight about certain issues, so we just produced

13   documents.  If that's the answer, that's fine.  But from

14   Three Arrows Capital -- from the view of Three Arrows

15   Capital having seen the objection and having gotten

16   additional documents, is this a 2004 question still, or is

17   this really a contested matter and we're looking at the rule

18   incorporated, you know, Rule 26?

19        MR. MOHEBBI:  It's a 2004 matter, Your Honor.  And

20   it is absolutely true that the parties worked through

21   several issues in response, and we appreciate the Debtors'

22   work in that respect.  But we do think this is a 2004 issue

23   because it relates to a claim that has not been asserted

24   yet.  And --

25        THE COURT:  Well, but here -- so -- all right.  So

Page 18

1    -- but then it raises the following question.  You're saying

2    it's unrelated for purposes of analyzing it as a 2004 versus

3    a contested matter, but then you say it will relate back,

4    which seems to say it has to be related to a pending claim.

5    So I'm not -- how are you threading that particular

6    intellectual needle?

7            MR. MOHEBBI:  Well, there's two points here, Your

8    Honor.  The first is the question of whether -- the only

9    reason we discussed relating back is because the Debtors in

10   response don't disagree that we meet the standard of 2004.

11   We say -- they say the claims are time-barred.  Now, if you

12   look at the standard, what we're saying is that even if --

13   first of all, Your Honor doesn't have to address that

14   question right now.

15           There's a lot of cases, including the In re

16   Millenium Labs case, that talks about the court not having

17   to "speculate" over the merits of the causes of action, or

18   whether or not there's even subject matter jurisdiction or

19   anything.  The question is only whether or not in the

20   context of the specific motion the Court has the power to

21   evaluate.

22           Now, on the relation back question, it's not that

23   the claims are not -- in order to relate back, they have to

24   rise from the common -- or the same common core facts.

25           THE COURT:  Well, they have the standard.

1               MR. MOHEBBI:  Now --

2               THE COURT:  We all understand the standard, but I

3    guess my thought is they're saying there's no point here

4    because these claims can't be asserted, and you're saying

5    they can be asserted because they would relate back.  But if

6    they relate back to what's in the current operative claim,

7    then they're part of the contested matter, aren't they?  I

8    mean, if they're that close, how is it that they're entirely

9    unrelated?

10              I don't know how you can make those two -- I

11   understand how you got there in terms of the different

12   issues and challenges, but I'm just trying to figure out how

13   to reconcile that, that they're both simultaneously entirely

14   unrelated so 2004 is still okay notwithstanding the pending

15   claims in the contested matter.  But then once we get past

16   that, if there's an issue about whether they can be

17   asserted, you've told me and the rest of the world that,

18   well, then they will be related.  And so how can they be

19   entirely unrelated now?

20              MR. MOHEBBI:  Well, because we're talking about

21   two different standards.  It's not the -- again, we're

22   talking about --

23              THE COURT:  But they both use the word related.

24   They use related, and then they put an "un" in front of it

25   --

1          MR. MOHEBBI:  Understand.  Well, relate --

2          THE COURT:  -- and say unrelated.

3          MR. MOHEBBI:  Relate back.  Relate back.  In other

4    words, same commonality of facts, not necessarily the same

5    claim.  We're talking about a potential fraud claim

6    (indiscernible).

7          THE COURT:  No, it doesn't have to be the same

8    claim.  But the idea is, right, we've all seen cases, folks

9    who are litigators say, well, you know, there's discovery

10   and I'm going to amend my complaint because what I've

11   learned in discovery is just some additional facts in the

12   scope of what I'm arguing is tweaked, whether I've got

13   something -- the same facts and some additional facts that

14   open up some additional legal avenues, or maybe greater

15   damages, or whatever it is.

16         But they're sort of rooted together, and I'm just

17   -- so that's sort of how you look at that because I'm

18   dumbing it down.  But it -- for Rule 2004, it has -- to --

19   and the Debtors have argued this.  It can't be Rule 2004.

20   Now, again, I don't want to get hung up on it because maybe

21   your argument is it is potentially related.  Maybe we should

22   do it under Rule 26, and then we should have that

23   discussion.  But I am -- I'll stop talking now and I'll let

24   you talk.  I am struggling with that.  It does seem to be

25   sort of two sides of the same coin.  It's not exactly the

Page 21

1   same legal test, but they'll sort of run into each other at

2   some point intellectually.  And that seems to be a collision

3   course that they're on at the moment.

4           MR. MOHEBBI:  Sure, Your Honor.  I mean, look, I

5   think stepping back for a second, I wanted to take these two

6   points in order.  We are Debtor too.  This relates to a

7   massive claim we have.  I think it would help me to explain

8   a little bit exactly what the fraudulent transfer theory

9   means here and where you can see that sort of Venn diagram

10  that you're alluding to.  What we're talking about here is

11  in -- out of all of the claims that we've asserted against

12  Genesis in this matter are of the way of preference and turn

13  over.

14           Instances where Genesis in the lead-up to the

15  Three Arrows, our Debtor's liquidation, foreclosed on

16  certain assets that we claimed, hundreds of millions of

17  assets that we claim that they shouldn't have foreclosed on.

18  Now, between that small period, that two-week period or

19  three-week period, whatever it is, that we're asking for

20  documents, we filed for liquidation.  And you know, two

21  weeks after we filed for liquidation, Genesis assigns all of

22  its linear relationship to DCG, and now they don't want to

23  provide documents about these issues.

24           Now what our suspicion is here is that Genesis

25  first foreclosed on those assets only then to assign to DCG

Page 22

1  in order to eliminate mutuality and prevent us from setoff

2  rights in the BBI.  Basically, assigned away turn over --

3  this is a -- we couldn't essentially set off against them in

4  the BBI.  Now, the claims are related only in the sense that

5  we're talking about the same linear relationship that was

6  transferred.  However, the theory here is that DCG and

7  Genesis did this precisely to get a significant advantage

8  vis-a-vis other Creditors.

9          And otherwise there would be -- I mean, the fact

10  that they're refusing to provide communication surrounding

11  that window, they're essentially frustrating hundreds of

12  millions of dollars in recovery, not even letting us see the

13  intent.

14          THE COURT:  Well, I -- again --

15          MR. MOHEBBI:  So...

16          THE COURT:  You know, whenever you have questions

17  about whether you can assert certain claims, you know, it is

18  what it is.  So I still have to run the drill.  So --

19          MR. MOHEBBI:  Sure.

20          THE COURT:  -- in your view under those factual

21  circumstances, it can both be unrelated so as to allow you

22  to do this by 2004 but potentially related for purposes of

23  relation back?

24          MR. MOHEBBI:  That's exactly correct, Your Honor.

25  And I think that the cases that we've cited state that --

1    I'll also note one more thing.

2           THE COURT:  So what would be your best case on

3    that?  Because again, I understand the concepts are

4    different, but it is -- they do use the same word, related

5    and then unrelated.  And so I'd be curious if there's -- I

6    haven't gotten a chance to look.  I've read your papers

7    several times, but I haven't gotten a chance to look at

8    specific cases.  So I'd be interested if there is a case

9    that talks about the, pun intended, relationship between the

10   being unrelated and being related.  Because it's not -- it's

11   a bit of a slippery concept.

12           MR. MOHEBBI:  Correct.

13           THE COURT:  And so any particular case that you

14   would have me read?

15           MR. MOHEBBI:  Sure.  I actually think it would be

16   helpful to read both Debtors' cases and the standard case,

17   but we're happy to submit additional briefing.  I would just

18   point you to the --

19           THE COURT:  No, no, I don't want additional

20   briefing.  I guess we all know everybody cites cases.  We

21   often cite a lot of cases, but we also know that often there

22   is a case or two that is particularly salient to a

23   particular issue.  So that's really what I'm asking you is

24   --

25           MR. MOHEBBI:  Sure.

1          THE COURT:  -- of the cases cited in your briefs,

2     the motion or the reply, is there a particular one that you

3     think addresses the intersection between relation back for

4     purposes of amendment and something being unrelated for

5     purposes of Rule 2004?

6          MR. MOHEBBI:  The short answer is, Your Honor,

7     nothing directly on point as to that particular issue.  In

8     fact -- but there is the In re Frontier Communications case,

9     which is 641 B.R. 64, does say that -- it lays out that this

10    -- what I think the standard that delineates this issue,

11    which is to determine whether an amendment relates back, a

12    court must decide whether there is a sufficient commonality

13    of facts.

14         And the point being focused on the facts as

15    opposed to the -- and I would also note that Genesis in

16    their cases, they don't cite a single case that deals with

17    Rule 2004.  All of their cases dealt with solely this

18    question of amendment.  So we're looking into that right

19    now, and we're going to try to get back to you by the end of

20    the hearing if there's a specific case that deals with the

21    intersection.

22         THE COURT:  Well, the -- what they cited was the

23    pending proceeding rules, and I have decisions, written

24    decisions on both I think the relation back certainly.  And

25    I know I do, and I've certainly issued decisions, I can't

1    remember if they're bench rulings or not, on the pending

2    proceeding rule.  And so -- and that the question is, again,

3    they're related.  So -- all right.

4            MR. MOHEBBI:  And they made that argument only

5    with respect to the Grayscale claims.  They did not make the

6    pending proceeding argument with respect to the assignment

7    claims that we have right now.

8            THE COURT:  So while they -- so let me ask you a

9    separate question that I don't want to forget.  Is --

10   there's a discussion in the Debtor's objection talking about

11   -- and also in your papers talking about the reservation of

12   rights language.  And I'm trying to figure out how much

13   water you're seeking to have that particular reservation of

14   rights language carry in this particular context, whether it

15   actually is going to be the thing you cite to for purposes

16   of relation back, or it's just a fact and it's, you know, in

17   your view, a good fact so you want me to know it.  So I --

18   and the -- so any view that you have on that would be

19   helpful.

20           MR. MOHEBBI:  Sure, Your Honor.  Thank you.  You

21   know, I think the relation back -- or the reservation of

22   rights language I think was -- has to viewed in the context

23   of the situation that the liquidators are in.  I think

24   first, the liquidators began this liquidation with a

25   monumental task.  As in every sort of large Debtor case,

Page 26

1    Your Honor, the Debtors had -- or the JLs had numerous

2    issues that had to be dealt with, you know, with no

3    cooperation from the founders talking about (indiscernible)

4    --

5            THE COURT:  Now, I understand you're in a

6    challenging factual situation.  But I guess the question is

7    does the fact that that language exist change the calculus

8    at all for what I have to look at.

9            MR. MOHEBBI:  I think it does because we've

10   reserved rights and we, you know, mentioned the assignment.

11   This all goes to their -- the question of undue prejudice.

12   And so they knew we were actively investigating.  We

13   complied with their claims objection or the claims deadlines

14   that they set in their initial plans.

15           And they cited -- I mean, they attached the

16   amendment to their own objection.  So our view is that there

17   is really no prejudice for, you know, just allowing us to

18   investigate what could be a tremendous issue here that

19   relates to the financial condition of the estate.  That's

20   rule 2004(b).  The financial condition we're allowed as a

21   Debtor to investigate, including under -- in our Chapter 15.

22   We're allowed as a Debtor to investigate claims that go to

23   the financial condition of the estate.

24           And we're only talking about a very small period

25   here.  Talking about three weeks of communications, which

1    again, very surprising that --

2              THE COURT:  Well --

3              MR. MOHEBBI:  -- they've agreed to produce

4    (indiscernible).  Except for that (indiscernible) --

5              THE COURT:  But to back up for a second, you

6    mentioned as a Debtor, you're entitled to do this, that, and

7    the other thing.  You're not the Debtor here, so if you have

8    a request as a debtor, those are traditionally made in the

9    debtor's cases, right?  And so I understand you're here

10   making a request as a creditor.  And so I'm not sure it

11   matters one way or the other, but you're not the Debtor

12   here.  And you know, it is what it is.

13             The -- so I assume that your -- well, let me sort

14   of take a different tact here.  So you've resolved the other

15   issues dealing with Grayscale, so now there's just this

16   other matter dealing with the -- that particular assignment.

17   So the way you see it, you don't have anything in your

18   current claim that covers that.  But you think it's sort of

19   factually related that you previewed because it's sort of

20   about the parties' relationship.

21             MR. MOHEBBI:  Exactly.

22             THE COURT:  All right.  So to loop back to the

23   other issue, I guess my question is a matter of policy.  I'm

24   -- there's a bit of a challenge to allowing a reservation of

25   rights language to open a door wider than it would otherwise

1    in these circumstances because, frankly, if that's the case

2    laws, everybody will add a reservation of rights language,

3    and it doesn't -- it really won't mean anything.  So I don't

4    know for relation back that it's going to really make any --

5    I understand it may affect -- so the -- I'm having trouble

6    understanding how that can actually open the window broader

7    than it would be otherwise.

8              MR. MOHEBBI:  Sure.

9              THE COURT:  I think the equities are the equities

10   in the sense of the case you walked into and circumstances.

11   But I'm just -- the reservation of rights seems to be more

12   of a pro forma thing.  And if it has that kind of weight,

13   then everybody will use it, and then it'll really have no

14   meaning at all.  And so I'm just not sure.  But is there

15   anything else you want to cite to me or point out on that

16   issue?

17             MR. MOHEBBI:  Sure, Your Honor.  Just two more

18   things.  I think, you know, you mentioned that looking at

19   the reservation of rights language, I think a lot of these

20   questions are really not before you.  I mean, I think

21   fundamentally just to take things back, this is a question

22   about whether or not we should get Rule 2004 discovery.  I

23   think very fundamentally the standard is met.

24             The In re Millenium Lab Holdings case -- and I

25   will just make a quote from this case, "As many -- as

1    numerous courts have recognized when presented with a 2004

2    motion, there is no way to determine where the

3    investigations will lead, what claims may be revealed, and

4    what issues are core or non-core.  Thus, in order to grant a

5    Rule 2004 motion, a court need not speculate over causes of

6    action that may be pursued."  The reality is --

7              THE COURT:  No, I understand that, but the --

8              MR. MOHEBBI:  -- beyond (indiscernible) --

9              THE COURT:  If you just look at Rule 2004 in

10   isolation with -- say there's no claims, there's nothing,

11   it's a timely filed Rule 2004, we're wondering about claims

12   and liabilities and it's -- and it comes early on in the

13   case, nothing else has happened, I agree.  And that's sort

14   of what that language does.

15              The problem is it's been implicated -- more than

16   that has been implicated here because the idea is, well, so

17   if you look at Rule 26, which is incorporated to contested

18   matters, for example, you know, there's a discussion about

19   whether the burdens outweigh the likely benefit.

20              And the Debtors have said, well, there's no

21   benefit at all.  It's time barred.  And so -- and your

22   response to that is, well, it really wouldn't be because

23   it's -- it would be something we could relate back.

24              MR. MOHEBBI:  That's right.

25              THE COURT:  And then that sort of raises, you

Page 30

1    know, the question about is it -- is that really then 2004.

2    So it's a bit of an unusual factual circumstance here, and I

3    haven't seen a circumstance where I've had that tension.  So

4    I agree with you.  We all know what the standard is for Rule

5    2004.  And if this were a simple isolated one issue kind of

6    Rule 2004 request, I don't think we'd be here today.  But

7    it's not.

8            So you've answered a lot of questions, and I

9    really appreciate your nimbly jumping from one issue to

10   another.  And so I did want to give you a chance to address

11   anything else you wanted to address before I hear from the

12   other side.

13           MR. MOHEBBI:  Sure, Your Honor.  Just the one last

14   thing I would note here is just considering the equities

15   here, I think you mentioned that, and I think that that is,

16   stepping back, an important consideration here.  And I would

17   just ask that the Court do that.  And in particular, if the

18   Court were to determine our standing here as a Creditor, I

19   would ask that any sort of decision be without prejudice for

20   us to be able to seek this same discovery in our Chapter 15.

21           The reason we seek -- we're seeking it here is

22   because Mr. -- or the other Debtors have basically insisted

23   on us being at -- handling all these discovery disputes in

24   this case.  This relates to a tremendously potentially

25   valuable claim that we have against the Debtors.  It's a

1   minor burden on them.  We're talking two weeks of it -- of

2   communications.  This is not something that we think is

3   going to dramatically change things.

4            And they can make the same arguments as to whether

5   or not this is time barred if we find communications that

6   give us additional claims and assert them in an amended

7   proof of claim.  They're perfectly able to do that, you

8   know, move to dismiss, file a motion for summary judgment,

9   and defend those claims.  There's no prejudice.  And so we

10  just would ask that the Court consider those factors in

11  making a decision here.

12           THE COURT:  All right.  So let me just make sure I

13  understand the timeframe.  You keep saying two weeks.  I

14  think it's June 14th through July 31st.  So I think it's

15  about --

16           MR. MOHEBBI:  Oh, right.

17           THE COURT:  -- a month and a half.  So not to be

18  too persnickety, but I understand the agreement was executed

19  July 14th.  Why does it make sense to ask for things beyond

20  that date?  If the agreement has already been signed,

21  sealed, and delivered, wouldn't it be appropriate to have it

22  up through that date?  Because if people have views about

23  something that's already happened, I suppose -- but you

24  know, and that would make it a month as opposed to six

25  weeks.

1              MR. MOHEBBI:  That's -- I mean, I think that would

2     be a reasonable middle ground approach, Your Honor.  And I

3     think -- but you know, I -- we do think the communications

4     after would potentially be relevant because it would go to

5     the intent of the assignment.  But if Your Honor's inclined

6     to narrow it, we will take (indiscernible) on that front

7     because we do think it's important.

8              THE COURT:  All right.  All right, counsel.

9     Anything else to -- that we should discuss before I hear

10    from the other side?

11             MR. MOHEBBI:  No, Your Honor.

12             THE COURT:  All right.  Thank you very much.  All

13    right.  Let me hear from the Debtors.

14             MR. BAREFOOT:  Good morning, Your Honor.

15    (Indiscernible) Cleary Gottlieb for the Debtors.

16             THE COURT:  Oh, Mr. Barefoot, you're breaking up a

17    little bit.

18             MR. BAREFOOT:  Can you hear me now?

19             THE COURT:  Yeah, that's better.  So it might be a

20    microphone issue more than an internet connectivity.

21             MR. BAREFOOT:  Okay.  I'll try to lean as close to

22    the computer as I can.  Your Honor, there are two points

23    that Mr. Mohebbi and I are in (indiscernible) agreement on,

24    and I think those two points are determinative.  One is that

25    these requests relate to a claim that has not yet been

Page 33

1    asserted, and that the only available mechanism for

2    discovery here is Rule 2004 for that reason.

3          These claims -- it makes very little sense from an

4    estate resources perspective to require the estate to

5    collect documents, produce documents, have (indiscernible)

6    all in service an assertion of a claim that was not timely

7    asserted and can't be asserted.  In terms of the

8    distinctions, it's very helpful and important to look at the

9    difference between -- in terms of the way the proof of claim

10   pled the allegations starting Grayscale that we've now

11   resolved through agreements to make an additional

12   production.

13          Specifically, they didn't understand completely

14   and frame them as potential claims relating to Grayscale.

15   But they put the estate on notice they had potential claims,

16   and were intending to potentially assert claims relating to

17   Grayscale.  They never did that whatsoever concerning

18   transactions between the Debtors and DCG.  The proof of

19   claim is replete with references to an explanation how it

20   challenges transaction between and transfers between Three

21   Arrows and the Debtors.

22          No where does it put the estate on notice or

23   indicate that it was intending to or reserving the right to

24   challenge transactions between the Debtors and DCG.  And

25   that's a very important distinction both because it's an

Page 34

1    entirely different party, and it's temporally distinct.  It

2    happened, you know, a month after Three Arrows defaulted and

3    the Debtors foreclosed.

4           Your Honor, I don't see that there is any room or

5    breathing space between saying these claims were not -- do

6    not relate to the existing contested matter, and they don't

7    because they weren't asserted. but yet, nonetheless,

8    asserting that these claims can somehow relate back.  And to

9    the extent that that is not -- it is hanging its hat on a

10   generic reservation of rights, that's obviously not

11   sufficient.

12          And the estate, the Three Arrows estate, knew how

13   the potential claims that it might not yet have all the

14   facts on.  Maybe the potential claims, to the extent that

15   they ever commenced a Chapter 11 case in order for this

16   exact reason, to put everyone on notice that they may intend

17   in the future to assert those claims.  They never did --

18          THE COURT:  So let me make sure I understand.  So

19   in terms of the different ways that you look at it, the

20   objection -- and people's positions have shifted.  And so

21   the objection says we have objections to their claims, and

22   you can't use 2004 because it's covered by a pending

23   proceeding.  And so -- but what I'm hearing now is,

24   essentially in your view, they've said it isn't under Rule

25   2004.  And okay, it's not.  And that -- and so there seems

Page 35

1   to be sort of a slight maturation or progression of views on

2   that.

3           So maybe you can give me wholistically what in

4   your objection you sort of still adhere to and what you

5   don't.  Because clearly, the objection says there is a

6   pending matter, you don't get 2004.  And then you get into

7   Rule 26 and whether the claim is, you know, timely or not.

8   But what's your thinking on that?

9           MR. BAREFOOT:  Your Honor, the distinction here

10  is, and I think Mr. Mohebbi alluded to this, when we filed

11  out objection, we were still fighting about both the

12  Grayscale claims, which are in their proof of claim, and

13  about this final claim relating to unasserted claims

14  concerning the assumption and assignment agreement between

15  the Debtors and DCG.  So we 100 percent would stand by the

16  position that the Grayscale claims are a contested matter.

17  They are the subject of our pending amended claims

18  objection, and therefore, you can't get Rule 2004 with

19  those.

20          THE COURT:  All right.

21          MR. BAREFOOT:  I think we're all in agreement that

22  that's not the case for the assumption (indiscernible)

23  because there were no claims made in the proof of claim in

24  determining the assumptions.

25          THE COURT:  All right.  Thank you.  That's helpful

1       to have on the record for purposes of making it clear what

2       we're doing and what we're not doing.  All right.  So it

3       does seem then everyone agrees this is appropriate for Rule

4       2004 because it's not related.  And where you part company

5       is that from their point of view, let's leave for another

6       day what to do with the potential claim.  And from your

7       point of view, there's no point in doing that because it's

8       something that is unrelated.  It is by definition

9       problematic from a relation back point of view.

10              MR. BAREFOOT:  And I think, Your Honor, that goes

11      to the cause (indiscernible).  You know, while, as Mr.

12      Mohebbi has said in many contexts courts might say, you

13      know, I don't need to specify at this point what the

14      contours of this claim (indiscernible), etcetera.  We are in

15      a different factual scenario here where the bar date has

16      passed and claims were even amended after that, and these

17      claims were simply never asserted.  So to state that there's

18      cause for what is effectively going to be an exercise in

19      futility would really only be a poor use of estate

20      resources.

21              THE COURT:  So two questions.  I just want to make

22      it clear from the record what you think Three Arrows Capital

23      should've done here under its circumstances, right?  Because

24      certainly there's an undercurrent of we're doing the best

25      with what we have under the circumstances, and therefore the

Page 37

1    equities lie with us.  I'm not sure where the equities get

2    siloed in my analysis here.  I suppose the -- it's a preview

3    into the relation back second prong.  But what is your view

4    in terms of considering those equities in sort of fairness

5    generally.  And just getting and understanding, what do you

6    think should've happened if you were in their shoes?

7              MR. BAREFOOT:  Your Honor, I understand that they

8    may not have all the facts that they would like to have.

9    They assert that -- to support a potential fraudulent

10   conveyance claim to challenge a transaction that occurred in

11   July between the Debtors and DCG.  There are many other

12   categories of claims, including their (indiscernible) claims

13   where they similarly don't have the facts to completely

14   plead any cause of action, but they put the estate on notice

15   that they intended to preserve the ability to assert that

16   claim later and to take discovery on it.

17             They never said boo about the assumption

18   assignment agreement, about any transactions between the

19   Debtors and DCG.  The entire other focus of their claims is

20   on transactions between Three Arrows the Debtors.  So, yes,

21   they are third parties, and they were appointed now that --

22   15 months ago.  But they were appointed a year before the

23   bargaining.  But they certainly knew as of that point how to

24   make clear when they intended to reserve their rights to

25   assert a claim on the setbacks in the future.  And they

Page 38

1    simply didn't do that with respect to the assumption and

2    assignment agreement or any other transaction to the

3    Debtors' interest.

4              THE COURT:  Well, is there an argument that they

5    wouldn't have known enough to do that?  When did the

6    assumption and assignment agreement become known to folks?

7    Again, I'm not -- I don't -- I could see it from this

8    vantage point, not from all of your vantage point in terms

9    of understanding those kind of facts and when things come to

10   light.

11             MR. BAREFOOT:  Your Honor, I think you've heard

12   the fact that there were even prior to the bar date a number

13   of discussions between representatives of Three Arrows and

14   representatives of the Debtors.  The assumption is

15   (indiscernible) out in the open at that point.  In any

16   event, it was in our disclosure statement.  It was in our

17   original claims objection.  They then amended their claims

18   in response to that, and we still see nothing about claims

19   relating to the assumption of assignment.

20             THE COURT:  All right.  So a couple of other

21   things to ask you about.  One is the timing of this relation

22   back issue.  So I understand that you're saying there's no

23   point to this.  You certainly -- I get your argument.  I

24   have gotten in some ways, I wouldn't even say half a loaf,

25   but three-quarters of a loaf of if I had a motion seeking to

1    amend a complaint or a claim to relate back.

2              I haven't gotten sort of the full -- what a full

3    motion would look like because that would normally say,

4    well, here's the language in our claim, and here's this.

5    And so I have a lot of it, but probably not quite all of it.

6    And that raises the question about timing in terms of my

7    ability to rely on it at this point in time for Rule 2004.

8              So what do I do with that conundrum if that's the

9    argument you want me to rely upon to say there's no point in

10   doing this?  It's not a fishing expedition.  It's going out

11   in a boat without a rod or a reel.  There's nothing that can

12   -- good that can happen from this.  So what's your take on

13   that?

14             MR. BAREFOOT:  Your Honor, I think you do have

15   what you need in front of you.  But to the extent that you

16   would like supplemental briefing, we would be happy to.

17             THE COURT:  All right.  And I guess the other

18   question I would have is about burden, right?  So we're all

19   practical people here, and so I think I've already pushed

20   back a little bit on the timeframe in question of six weeks

21   as opposed to, say, four weeks.  And oftentimes people say,

22   well, do your -- so if you think of it as a traditional

23   adversary, you would say, well, do your discovery and then

24   we'll -- people will file their motions and sort it all out.

25             Again, I sort of have kind of a three-quarters

Page 40

1    view of that at this point.  So I'm not sure, and perhaps

2    you can enlighten me as to what the burden is here and how

3    relevant or irrelevant that is to me figuring out what to do

4    going forward.

5                MR. BAREFOOT:  Your Honor, I don't have in front

6    of me, you know, statistics to say we've done hit counts,

7    and it's X thousands of documents.  Part of the reason for

8    that is that this is temporally distinct from all the other

9    discovery that we've been engaged in.  So we would have to

10   do a supplemental pull and collection and then run search

11   terms and hits in order to do this.  It is temporally

12   distinct, but we have to (indiscernible).

13               THE COURT:  All right.  So I guess you're not in a

14   position to say how helpful or not helpful it would be to

15   shrink the time period from six weeks to four weeks.

16               MR. BAREFOOT:  I can't give you a numerical

17   parameter around that, Your Honor, but obviously if you're

18   going to order discovery, we would certainly agree with Your

19   Honor to supposition then what could be the relevance of

20   post-execution communications.

21               THE COURT:  All right.  Mr. Barefoot, thank you

22   for hopping around from various different topics.  I

23   appreciate it, and I certainly want to give you a chance to

24   add any other points you would like to before I ask the

25   Committee to chime in.

1          MR. BAREFOOT:  Your Honor, the only final point I

2    wanted to make, which is something I should've added when

3    you asked, you know, how well-known was it out there that

4    the assignment agreement existed.  DCG is the largest

5    Claimant in the Three Arrows Capital case and sits on the

6    creditors committee by virtue of the assumption

7    (indiscernible).  So there really can be no question or

8    suggestion that this existence of this agreement and the

9    relationship between the Debtors DCG that led to it was

10   well-known to the -- to (indiscernible).

11         THE COURT:  All right.  So I'm assuming that from

12   your point of view there really should've been a 2004

13   request made before the claims bar date seeking this kind of

14   information, and maybe they filed the claim to just get a

15   handle on it, and that that was the way to go.

16         MR. BAREFOOT:  Or Your Honor, they could do what

17   they did with respect to the Grayscale claims.  At least put

18   a placeholder down so that we can take contested matters in

19   our agreement.  But you can't do (indiscernible).

20         THE COURT:  All right.  All right.  Thank you, Mr.

21   Barefoot.  Unless you have anything else, I'll hear from the

22   Committee.

23         MR. BAREFOOT:  Thank you.

24         MR. WEST:  Good morning, Your Honor.  Just for the

25   record, Colin West of White and Case for the Official

Page 42

1    Committee.  Given that our objection here is on the basis of

2    preservation of estate resources, I will be brief.  You've

3    covered quite a bit with Mr. Mohebbi and Mr. Barefoot.  But

4    this is, Your Honor, a waste of estate resources.

5    Fundamentally, there is a 2004 motion for the purpose of

6    collecting discovery relating to claims that Three Arrows

7    admits have not been timely asserted.  The -- I think the

8    briefing is before Your Honor about the sufficiency or the

9    extent to which the claims would or would not relate back.

10          We obviously would support the Debtor's arguments

11   that the claims would not relate back.  And the only thing I

12   want to add, Your Honor, is as to this discussion that's

13   been had about what do we do with the Rule 2004 standard in

14   isolation.  Whatever you might do in a different context,

15   Your Honor, in this case, the specific purpose, according to

16   Mr. Mohebbi, of taking the 2004 discovery is to amend -- is

17   potentially to amend the claims to assert a new claim based

18   on the assignment assumption agreement.

19          In that context, it cannot be the case that you

20   have to put blinders on as to whether the proof of claim

21   could be amended in the first place, right?  So it does come

22   down to whether these claims would or would not relate back.

23   It has to as a practical matter.  And for the reasons stated

24   in the objection, the claims don't relate back, which again,

25   makes this an exercise in futility from our perspective.

1           We also, Your Honor, can't help but observe that

2       this is another request for relief, another request for

3       discovery.  All the while at the same time Three Arrows --

4       not to get off track, but all the while Three Arrows is

5       seeking to have all of these claims heard in an another

6       forum.

7           So stepping back from a global perspective, we

8       think this 2004 motion is reflective of a rather scattershot

9       and wasteful approach to bringing claims and seeking

10      discovery in this court, and we oppose the 2004 motion for

11      the reasons stated in the Debtor's objection and in our

12      (indiscernible).

13          THE COURT:  All right.  Let me ask you two

14      questions.  One is same question I asked Mr. Barefoot about

15      the state of play in terms of the briefing.  Because

16      relation back sort of came out nested inside several other

17      frameworks, the 2004 framework, and discovery for a

18      contested matter, and all those discussions, and then we got

19      to that.  Is -- one of the things I don't think is good is

20      to make decisions on records that parties might later say,

21      well, we didn't have that motion and the judge didn't have

22      all of the facts.  Is there anything you think I'm missing

23      that might be beneficial to lay out?

24          Again, it didn't -- the papers I have, while they

25      address the issue, they don't quite look the way it would

1    look if somebody was filing a motion to amend, and that

2    isn't necessarily dispositive on this question whether

3    there's something missing.  But is -- do you have a view

4    about whether any additional briefing on that question would

5    be helpful if that's the issue that this all devolves down

6    to in your view?

7              MR. WEST:  So I think, Your Honor, if you look at

8    the Debtor's objection, I think they laid out with a fair

9    amount of specificity why the -- any claims relate -- I

10   think it's a -- theoretically a fraudulent transfer claim

11   arising from the assignment assumption agreement.  I think

12   the debtors did lay out why that is really fundamentally

13   distinct from the claims that have been asserted or that

14   were preserved in the proof of claim.  I think certainly

15   that could be fleshed out more in supplemental briefing if

16   that's -- you know, if the Court believes that it doesn't

17   have enough information.

18             THE COURT:  Well, I guess --

19             MR. WEST:  But the --

20             THE COURT:  -- since you know it -- since you know

21   the facts better than I do, I guess I'm wondering whether

22   there is more.  So there are times when a relation back

23   amendment question delves very much into exactly what a

24   claim or a complaint says, and you end up parsing very

25   finely often specific clauses or sentences.  What I'm

Page 45

1    getting the sense here is that that's not a -- an analysis

2    that's missing because it's not really the way this is laid

3    out.

4            Like from your point of view, there is nothing.

5    There is no specific language to parse other than the

6    reservation of rights on which somebody might hang

7    something.  And so again, I'm thinking about what briefing

8    might look like, but it also could very much be that, well,

9    that's not this case.  You're not going to get that kind of

10   analysis because that's not the way -- no one's -- and

11   again, you could maybe take the view that no one's presented

12   something to me that suggests that there is briefing to be

13   done on that issue.

14           So again, I'm just trying to throw out some ideas

15   about what, when looking at this, where I was just like,

16   hmm, this is a discussion I'm not seeing.  But maybe that

17   discussion is just not one we'd have in this particular set

18   of facts.

19           MR. WEST:  I think that's right, Your Honor.  I

20   think that the standard for relation back is whether the

21   Debtor was put on sufficient notice such that the amendment

22   would not be an unfair surprise.  And we think clearly here,

23   and you know, subject to Three AC's -- you know, any

24   argument Three AC wants to make about why they did put the

25   Debtor on notice of a fraudulent transfer claim in the

Page 46

```
 1    assignment and assumption agreement, we don't think there's

 2    anything there in the proof of claim that would've put

 3    anyone on notice that those facts around the assignment and

 4    assumption agreement would become an issue for a future

 5    claim, or that there would be legally anything like a

 6    fraudulent transfer claim.

 7            So we don't think there really is anything in the

 8    proof of claim that's going to generate a lot of interesting

 9    briefing on this issue.  But we are certainly happy to brief

10    it should the Court find it necessary.

11            THE COURT:  All right.

12            MR. WEST:  And I don't -- if the Debtors would

13    like to, I suspect they are as well.

14            THE COURT:  Yeah, no, I think --

15            MR. BAREFOOT:  Your Honor --

16            THE COURT:  -- Mr. Barefoot said that as well.  So

17    let me ask you one other question that I didn't ask Mr.

18    Barefoot, but I think I will before I return for sort of the

19    reply from Three Arrows.  There was a mention by Three

20    Arrows about, well, if we don't get this information here,

21    don't preclude us in the Chapter 15 from requesting it

22    there.  And obviously, the Chapter 15 is not in front of me,

23    and that's not my responsibility.

24            And so what is your reaction to that?  And I

25    mention it just in the context of we're having a discussion
```

1    of efficiency.  And so to the extent that you sometimes in

2    litigation have a whack-a-mole problem, if you address

3    something here, it pops up somewhere else.  So do you have a

4    view on Three Arrows' comments that way?

5              MR. WEST:  So Your Honor, I think -- and I'd want

6    it -- you know, I could in fact, Your Honor, I don't know

7    exactly what is before the Court with respect to that

8    specific issue.  In other words, I don't know whether this

9    is a theoretical issue or whether this is an issue that the

10   Court has to decide now as to whether --

11             THE COURT:  No, no.  I guess I'm not even --

12             MR. WEST:  Yeah.

13             THE COURT:  Let me be more precise.

14             MR. WEST:  I understand.

15             THE COURT:  I'm not asking about anything I would

16   do.  And I don't think I have it in front of me.  I -- it

17   was a comment made, and really, I took it in the following

18   way, which is if you rule in favor of the Debtors and the

19   Committee, the consequence might be that, Judge, we make

20   this application in a different, and that we just want you

21   to be aware of that.  And so again, it's not a decision for

22   me to make, but I took it as a comment that someone wanted

23   me to take into account in thinking about the efficiency

24   issues.

25             MR. WEST:  So I think my reaction to that, Your

Page 48

1    Honor, would be if the 2004 discovery is futile because it

2    relates to a claim that has not been timely asserted and

3    would not relate back to the existing proof of claim, I

4    think that's going to be the case regardless.  So whether

5    this -- there's going to be a formal ruling here or not, I

6    think as to whether they could seek the discovery in the

7    2004, I think the same rationale would sort of underpin the

8    decisions in both cases.

9            THE COURT:  All right.  Thank you very much for

10   that.  And I'll hear from Mr. Barefoot on that issue if he

11   has anything distinct to say.  He might not, and he may be

12   singing from the same sheet of music as Mr. West.

13           MR. BAREFOOT:  Your Honor, Luke Barefoot for the

14   Debtors.  I agree entirely with Mr. West that the assumption

15   that what we would do if we were faced with that scenario,

16   it does seem particularly inefficient and smells a bit like

17   forum shopping.  But I think what Mr. West said makes sense,

18   that if the -- there's no reason why the ruling or the

19   rationale would be different here as opposed to what

20   (indiscernible).

21           THE COURT:  All right.  Thank you very much.  So

22   with that, I'll turn back to Three Arrows Capital for any

23   comments to respond to the discussions we've just had.  And

24   maybe we can start with the last -- one of the last

25   questions, which was is there anything missing from your

Page 49

1    view in the briefing and presentation of the relation back

2    issue.  Everybody thinks it's important.  There's a lot of

3    briefing.  And I -- because this is not a motion to amend,

4    it comes in, in a certain way.  And I just want to make sure

5    that nobody feels like their rights have been -- that

6    there's something they would want to otherwise say based on

7    the fact that --

8            MR. MOHEBBI:  Well --

9            THE COURT:  -- it was raised in the objection in a

10   fulsome way and addressed in the reply in a fulsome way.  My

11   suspicion is the answer is no.  But again, I don't want

12   anyone to be surprised.  So what's your thought on that?

13           MR. MOHEBBI:  Your Honor, I mean, the answer is

14   that if -- the question before you as conceded by Mr.

15   Barefoot is this is a 2004 motion.  They have not cited a

16   single case where a court has basically decided the merits

17   of the ultimate claim, including that this case, whether

18   it's time barred on a Rule 2004 motion.  Not a single case

19   (indiscernible) --

20           THE COURT:  No, I understand your legal argument

21   on that, and I will have to think about that argument, and

22   make a decision on that argument.  I understand that that's

23   -- that there's case law on Rule 2004 on that front, and

24   that's certainly an argument I'll need to address and come

25   to a conclusion on.  What I have to do, of course, and since

Page 50

1    I have the benefit of you nice people here today, I have to

2    ask questions that could -- I could potentially run into in

3    -- you know, a decision tree looks like a lot of different

4    things.  So I try to ask all the questions, and then we'll

5    see where -- how I put the pieces together.

6            And so I understand you're not waiving that

7    argument, and I understand that that's your view.  But if

8    for some reason I do end up having to make a -- some kind of

9    a decision on that issue, is there anything more that you

10   think Three Arrows Capital would want to say?

11           MR. MOHEBBI:  Absolutely.  I think we would want

12   to lay out in meticulous detail, in fact, beyond just the

13   reservation of rights, the instances that show why this

14   would relate back based on both the objection to our proof

15   of claim and what was mentioned in our proof of claim.  For

16   example, in our proof of claim, we mentioned that the

17   assignment agreement should not relieve Genesis of

18   liability.  And so the notion that they had no notice or no

19   idea that this claim could -- or a claim like this could be

20   presented, it's just not factually accurate.

21           The other point that I would make is that we've

22   all been operating with this assumption that we're talking

23   about a fraudulent conveyance claim.  That's certainly one

24   of the potential claims we might assert based on this

25   discovery.  It's not the only claim.  And I keep coming back

1   to emphasize because of how strange the situation really

2   was.  If you look at the circumstances -- and to be fair, I

3   think this was before counsel at Cleary got involved in the

4   case.  What happened here was really shocking in some ways.

5   We're talking about, you know, in the wake of a liquidation

6   assigning hundreds of millions of dollars in claims --

7                THE COURT:  Well, but that's the -- that's --

8   you're asking me to have the merits or demerits of the

9   underlying claim affect this thing, and that's not the --

10  that's putting the cart before the horse.  So I have to get

11  through --

12               MR. MOHEBBI:  Exactly.

13               THE COURT:  -- these things first.  And so -- and

14  I'm sure the Debtors will have a different view on that.

15  But we'll get there.  So I guess my question -- I'm looking

16  at the -- let me get the reply in front of me, and I'm

17  trying to figure out -- because I am trying to do this

18  efficiently.  And again, I'm not -- I'm sort of walking a

19  fine line here.  I'm not suggesting the briefing I've gotten

20  is insufficient on the question of relation back.

21               What I was trying to suggest is it's not how the

22  discussion started.  It started with the sort of traditional

23  parameters of Rule 2004 and then spread from there.  And so

24  when I look at the papers, I do see lengthy discussions on

25  -- so in your reply on Page 5, 6, 7, I think all the way to

1    the end of it on Page 11.  So there is a lot of -- a lot

2    that's packed in there.  So I guess the question is what --

3    what's not there, and if so, what -- why wasn't it stuck in

4    a reply.

5              So again, I'm -- I don't want to look like I'm

6    arguing both sides of the issue about further briefing, but

7    I have learned from my own time as a lawyer that if a judge

8    says what about further briefing, the answer reflexively

9    usually is, yes, Judge, we'll get you additional briefing.

10   And sometimes --

11             MR. MOHEBBI:  Yes.

12             THE COURT:  -- judges can do damage to things in

13   that.  So I'm not suggesting additional briefing is

14   necessary.  I am, however, trying to make sure that there's

15   no procedural defect in the way things are teed up for me to

16   make a decision on any and all of the issues that have been

17   raised by the papers.  So with that, I would ask -- with

18   that prelude, with -- for your views on the question of what

19   else would you discuss, and is there a need to -- for

20   further briefing.

21             MR. MOHEBBI:  I'll be candidly honest.  If you're

22   going to rule in favor of us, we don't need any additional

23   briefing.  I was partly joking there, Your Honor, but the

24   reality is, you know, if we are going to delve into this

25   question of relation back in the sense that it's going to

Page 53

1    result in a merits based determination, we would like the

2    opportunity, if Your Honor's inclined to rule against us, to

3    explain and to lay out this entire discussion in the normal

4    way that one would do in the context of an amendment.

5              THE COURT:  Well --

6              MR. MOHEBBI:  And that's just --

7              THE COURT:  -- again, and now I look like I'm

8    going back on what I was discussing before, but there is --

9    if you take away the trappings and the bracketing of this in

10   Rule 2004, when you get to Page 5 and 6, it -- that does

11   look like it is, hey, a -- I mean, Roman Numeral II is that

12   these claims would be permitted as amendments to timely

13   filed claims, and then on the next Page 1 it says fraudulent

14   transfer of claim would relate back to the Three Arrows

15   claims.  And then it goes through specific parts of the

16   claim.

17             So Paragraph 6, for example, and so -- and also

18   makes references to Paragraph 5, 7, 9 through 10.  So I

19   guess what I'm asking is there something specific that you

20   would want to address that's not addressed here?

21             MR. MOHEBBI:  I think additional cases that

22   address some of these -- some of the issues that Mr.

23   Barefoot and Mr. West have raised, I think we want to

24   reemphasize the extent to which this was raised in the --

25             THE COURT:  Well --

```
 1              MR. MOHEBBI:  -- (indiscernible).

 2              THE COURT:  -- reemphasize...

 3              MR. MOHEBBI:  Well, sorry.  Not reemphasize.  I

 4    should say emphasize and --

 5              THE COURT:  By -- again, we're talking about --

 6              MR. MOHEBBI:  -- contextualize --

 7              THE COURT:  -- unrelated and related and now

 8    emphasizing and reemphasizing.

 9              MR. MOHEBBI:  Correct.

10              THE COURT:  I got the emphasis in the first

11    instance.  So that's what I'm trying to avoid is pleadings

12    that actually just cost people money and don't add anything

13    --

14              MR. MOHEBBI:  Yeah.

15              THE COURT:  -- but people feel duty bound to do

16    them because there's a suggestion the judge said, well,

17    there's -- we're not sure what we're briefing.  And again,

18    I've been on the other side of this.  We're not sure what

19    additional things we're briefing, but we're not going to let

20    the opportunity to go by.  And so that's a cruel and unusual

21    thing to do to lawyers having been on the other side of

22    that.  And so I'm trying to avoid that.

23              MR. MOHEBBI:  No, I understand, Your Honor.  And I

24    hope you understand kind of the box that I'm in here --

25              THE COURT:  Mm-hmm.
```

1          MR. MOHEBBI:  -- in the sense that --

2          THE COURT:  I do.

3          MR. MOHEBBI:  -- I want --

4          THE COURT:  So here's what I'd like to do.

5          MR. MOHEBBI:  -- to make sure --

6          THE COURT:  I haven't heard anything in the

7    argument today that suggests that there's additional factual

8    development beyond the explanation of the claims and sort of

9    how you connect the dots.  I -- so maybe one way to do this

10   is to say if people want to, in light of the discussion

11   today, submit, you know, up to three to five cases that if

12   you think there's additional cases that, given the way the

13   argument developed, that are worthwhile, I'm happy to take

14   that.  And then that way, people can do something that's

15   productive.

16          At the same time, you don't feel like you've got a

17   pen in your hand metaphorically speaking but you don't

18   really know what it is you want me to brief.  And I don't

19   want to do that and sort of send people out to -- again,

20   there are times when a motion to amend, they can look all

21   sorts of different ways, but they can sometimes be -- have a

22   particular parsing of very specific clauses.

23          I don't -- that doesn't appear to be the case

24   here.  There -- you've cited to the aspects of the claim

25   where, in your view, that you've put people on notice of

1    what you have.  And I have those, and so I think that that's

2    fine.  So unless somebody has a better idea, what I'll do is

3    I'll give parties a chance to submit -- and you can just

4    submit the actual cases -- three to five cases on -- that

5    follow up on any of the points that we discussed here today

6    that you think would be particularly helpful.

7            So for example, if somebody happens to stumble

8    upon a wonderful dissertation on how you consider sort of

9    unrelated, for purposes of Rule 2004, versus related for

10   purposes of relation back, that would be wonderful.  And if

11   you have any other cases, that would be fine.  So let's

12   split the baby that way.  And with that, anything else from

13   Three Arrows Capital here this morning?

14           MR. MOHEBBI:  No.  I guess just would want to

15   emphasize as a party note the -- you know, there was a lot

16   of discussion about, you know, DCG being on the Creditors

17   Committee and so forth.  But I just want to emphasize that

18   this is all -- we're talking about a very short period of

19   time.  I mean, the Debtors filed their claims, you know, I

20   guess early this year.  We -- the claim objection deadline

21   was within five months of that.

22           The reality is it's not just about knowing the

23   circumstances of a claim like this, which could potentially

24   be explosive.  And we're not in the business of making

25   explosive allegations against Hardees even as a --

Page 57

1                    THE COURT:  Well, let's steer clear of things like

2       explosive when you're asking for information to --

3                    MR. MOHEBBI:  All right.

4                    THE COURT:  -- figure out whether you have a

5       claim.  That seems --

6                    MR. MOHEBBI:  Well --

7                    THE COURT:  That seems --

8                    MR. MOHEBBI:  But that's exactly --

9                    THE COURT:  That seems to be not an appropriate

10      thing to throw out adjectives.  Claims are claims.  They are

11      what they are.  If you don't know whether you have a claim,

12      then your request is judgment.  We think it's appropriate

13      for us to get the information to figure out whether we have

14      a claim.  I get it.  So --

15                   MR. MOHEBBI:  I was just responding to Mr.

16      Barefoot's comment that, you know, we should've preserved --

17      we should've put in our amended proof of claim we may have a

18      claim that, you know, DCG defrauded us essentially, or with

19      which we did with Grayscale because there's -- there is an

20      actual lawsuit that has been filed by Grayscale

21      shareholders.  So we had a basis to basically say, look, we

22      may have claims like this because we were similarly situated

23      holders of the Grayscale trust.

24                   That was not the case with respect to this other

25      issue.  So mere -- you know, we're talking about a five- to

Page 58

1  seven-month period where we diligently -- our clients -- the

2  short liquidators diligently evaluated all of these things,

3  but that goes beyond just evaluating fact.  It goes to

4  evaluating legal theories as well.  And so we followed the

5  proper steps.  And there's absolutely -- again, there's no

6  prejudice here at all to the Debtors.  We're -- I mean, you

7  know, we're talking about a very short period of time for

8  documents.

9           There's probably been more effort expended in, you

10 know, the many people here on the call today than there

11 would be in actually searching and producing the documents.

12 So I just want to emphasize that because I do think that the

13 liquidators are in a very unique situation as a Debtor

14 themselves, representing the Debtor themselves, who don't

15 have any founders who have cooperated with them.  They don't

16 have any (indiscernible) --

17           THE COURT:  No.  I do think we all understand that

18 you've had some significant challenges, and I don't know

19 that anybody disputes any of that.  So my thought is I'll

20 get through this.  If there's anything I need, I do reserve

21 the right if there's anything I feel like when I analyze

22 things if there's additional questions or information I

23 need, I'll ask.  And you know, I can give people, you know

24 -- if you can get me those cases next week, say, you know, a

25 week from today, what three -- whatever you want to do.  I

1    don't want to wreck anybody's life to get it done sooner.

2    So just submit it to me when you get a chance, but no later

3    than a week, and that would be fine.

4              MR. MOHEBBI:  Thank you, Your Honor.

5              THE COURT:  All right.  Thank you very much.

6              MR. BAREFOOT:  Just one point of clarification on

7    the additional submissions.  I think (indiscernible), Your

8    Honor, that you just want any new cases, just the cases

9    themselves.  No supplemental (indiscernible).

10             THE COURT:  Exactly.  Because I understand putting

11   you in that -- and that's, again, I think I was fairly

12   inartful in doing this, but I'm trying not to put you in a

13   box that's unproductive for everybody.  Because if you're

14   doing additional briefing, you're doing it for me.  And so I

15   don't know that I was crystal clear on the issue.  But what

16   I'm saying is I just wanted to make sure that we're in the

17   right posture and I have everything I might need.  Based on

18   the argument, I think I do.

19             And but given the way this has evolved, I can see

20   that there may be -- and the questions that I had, I can see

21   that might be helpful for folks to identify particular cases

22   on issues that didn't make their way into the briefing, and

23   that's fine.  So all right.  With that, let me ask, Mr.

24   Barefoot, do you have anything else to discuss here today?

25             MR. BAREFOOT:  No, Your Honor.  And the deadline

Page 60

1    that you suggested of a week from today is fine for the

2    Debtors if it's acceptable to the Creditors.

3              THE COURT:  All right.  So that's a good segue to

4    Three Arrows Capital.  Anything else from Three Arrows?  And

5    does a week work for you?

6              MR. MOHEBBI:  Nothing else, and yes, it does, Your

7    Honor.

8              THE COURT:  All right.  Thank you.  And anything

9    else from the Committee?

10             MR. WEST:  Nothing else, Your Honor.  Thank you.

11             THE COURT:  All right.  So I'll leave you with one

12   parting thing.  I do anticipate getting a decision, a

13   written a decision out today or latest Tuesday that approves

14   the settlement that's pending under Rule 9019 with FTX.  I

15   think I had signaled as much on the bench, but I know it's

16   always helpful to know these things.  And so obviously,

17   it'll get -- you'll get notification of it when it gets

18   filed, but I just wanted to give you the heads up.

19             And with that, thank you all for your arguments

20   and again for your willingness to engage in a back and forth

21   of my questions, which often hop around a lot, and ruin what

22   I'm sure are otherwise beautiful and perfect presentations

23   that flow so wonderfully.  So I appreciate your patience and

24   good humor in letting me kind of jump around.  It is helpful

25   for me, so thank you very much.  And with that, all of you

Page 61

1    have a great day.

2              MR. BAREFOOT:  Thank you, Your Honor.

3              MR. MOHEBBI:  Thank you, Your Honor.

4              MR. WEST:  Thank you, Your Honor.

5              (Whereupon these proceedings were concluded at

6    11:28 AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 62

```
1                 C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  October 11, 2023
```