CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 23-10063 (SHL)<br><br>Jointly Administered<br><br>Related Docket Nos. 749, 750, 754 |

**DEBTORS' OBJECTION TO THE AMENDED**
**MOTION OF THE JOINT LIQUIDATORS OF THREE**
**ARROWS CAPITAL, LTD. FOR COORDINATION AMONG COURTS**

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219) ("Holdco"); Genesis Global Capital, LLC (8564) ("GGC"); Genesis Asia Pacific Pte. Ltd. (2164R) ("GAP").  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND............................................................................................. 4

    A.    3AC's BVI Liquidation and Chapter 15 Cases........................................... 4

    B.    Relevant Procedural History in these Chapter 11 Cases............................ 5

ARGUMENT .................................................................................................................. 10

    A.    The Coordination Motion identifies no statutory basis or precedent for the relief it seeks. .................................................................. 10

    B.    The relief sought by the Coordination Motion is too vague to be actionable. ................................................................................................ 16

    C.    The Coordination Motion ignores the substantive differences between 3AC's claims against the different Debtors. ..................................................................................... 17

CONCLUSION............................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Czyzewski v. Jevic Holding Corp.*,
    580 U.S. 451 (2017)................................................................................ 15

*In re Dairy Mart Convenience Stores, Inc.*,
    351 F.3d 86 (2d Cir. 2003) ..................................................................... 11

*In re Fairfield Sentry Ltd.*,
    714 F.3d 127 (2d Cir. 2013) ................................................................... 12

*In re Tribune Co. Fraudulent Conv. Litig.*,
    No. 11md2296 (DLC), 2019 U.S. Dist. LEXIS 69081 (S.D.N.Y. Apr. 23, 2019).......... 18

*In re Samson Res. Corp.*,
    Nos. 15-11934 (BLS), 17-51524 (BLS), 2020 Bankr. LEXIS 3575 (Bankr. D. Del.
    Dec. 23, 2020)........................................................................................ 18

*Law v. Siegel*,
    571 U.S. 415 (2014)................................................................................ 11

## Rules and Statutes

11 U.S.C. 105(a)........................................................................................ 5, 11

11 U.S.C. § 1525(a)................................................................................... 12

11 U.S.C. § 1526(a)................................................................................... 15

11 U.S.C. § 1526(b)................................................................................... 15

28 U.S.C. § 1407 ....................................................................................... 15

Fed. R. Bankr. P. 3007 (I).......................................................................... 5

Fed. R. Civ. P. 42(a)................................................................................. 12, 13

## **Other Authorities**

Bankruptcy Code Section 546(e) ......................................................................... 6, 17, 18

Bankruptcy Code Section 547 ................................................................................. 6

Bankruptcy Code Section 1509 ............................................................................. 11

Bankruptcy Code Section 7042 ............................................................................. 13

Genesis Global Holdco, LLC and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors," and the above-captioned cases, the "Chapter 11 Cases") hereby submit this objection (the "Objection") to the *Amended Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Coordination Among Courts* (the "Coordination Motion" or "Mot.") (ECF No. 754) filed by the Foreign Representatives of Three Arrows Capital, Ltd. ("3AC," the appointed joint liquidators thereof, the "Joint Liquidators," and together with the Debtors, the "Parties"), and respectfully state as follows:

## **PRELIMINARY STATEMENT**[2]

1.      The relief sought by the Coordination Motion is both extraordinary and extraordinarily vague:  3AC purports to request an unspecified coordination process between three separate courts overseeing five or six separate cases (one of which is outside of the United States), without specifying what that process might look like, which legal or factual issues may be reserved for it, or the timeline on which any of this hypothetical coordination would happen.  Moreover, the stated goal of the Coordination Motion – centralization of multiple claims brought by 3AC – is now admittedly not going to occur, as the court overseeing the BlockFi Cases denied such relief, and the parallel coordination motion filed in the chapter 11 cases of the FTX Debtors has been withdrawn.

2.      The Debtors and 3AC have been in discussions regarding 3AC's alleged claims against the Debtors since before the Bar Date.[3]  3AC then filed claims against the Debtors more than four months ago, *see* Claim Nos. 523, 526 and 527, to which the Debtors objected three months ago, *see* Original Claim Objection.  3AC filed revised claims more than two months ago, *see* Claim Nos.

---

[2]      All capitalized terms not defined in this Preliminary Statement shall have the meanings given to them subsequently herein.

[3]      *See In re Genesis Global Capital, LLC*, No. 23-100063, Oct. 6, 2023 Hr'g. Tr. at 38:12-14 (counsel for Genesis stating "there were even prior to the bar date a number of discussions between representatives of three Arrows and representatives of the Debtors.").

981, 982 and 990, to which the Debtors also objected, *see* Renewed Objection. All the while, the Parties have been engaged in fact discovery on 3AC's claims, which will conclude on November 6, 2023, *see* Scheduling Order, and the Debtors expect that they will expeditiously conclude expert discovery, and that an evidentiary or sufficiency hearing on the claims, as applicable, will take place by year end. In the midst of litigation and discovery on 3AC's claims, 3AC filed a motion seeking to lift the automatic stay to have their claims adjudicated elsewhere, *see* Lift Stay Motion. After the Lift Stay Motion was fully briefed, 3AC obtained an adjournment of the impending hearing and filed their amorphous "coordination" motion in this and other courts[4]—adding unnecessary confusion, expense, and delay to the well-advanced process of adjudicating 3AC's pending claims before this Court.

3.    Of particular concern is the fact that the Coordination Motion seeks relief that is statutorily and structurally impossible, and unworkable in any event. Putting aside that there is no basis in law for the relief requested, in order for any coordination to even be possible (in whatever yet-unspecified form such coordination may ultimately take), three other courts, including a foreign court, would have had to grant identical or parallel relief to that requested by the Coordination Motion filed in this case. In any event, that relief has now been denied by the court overseeing the BlockFi Cases, and the Coordination Motion has been withdrawn as to FTX, eliminating any purported benefits of efficiency or avoidance of inconsistent judgments. Even if this were not dispositive, the proposed order filed with the Coordination Motion purports to *order* other courts to

---

[4]    *See In re BlockFi, Inc.*, Case No. 22-19361, ECF No. 1623; *In re FTX Trading Ltd.*, Case No. 22-11068, ECF No. 2754; *In re Three Arrows Capital, Ltd.*, Case No. 22-10920, ECF No. 116. The motion filed in the FTX cases was subsequently withdrawn, *see Notice Withdrawing the Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Coordination Among Courts, In re FTX Trading Ltd.*, Case No. 22-11068, ECF No. 3068. 3AC stated on the record before the BlockFi Court that it would not seek parallel relief with respect to the Celsius cases, as indicated in the Coordination Motion filed in these cases. *See* BlockFi Oct. 10 Hearing Tr. at 47:8-10 (counsel to 3AC stating that they "are not seeking coordination or consolidation as it relates to FTX or Celsius at this time, which was initially described in [their] motion.").

coordinate with this Court, which is an affront to the independence and jurisdiction of each court. None of the courts have authority to bind other U.S. bankruptcy courts, to say nothing of a foreign court, nor do any such courts have the authority to bind this Court. Even this preliminary undertaking is, ironically, likely to be exactly the source of "wasteful expenditure of both judicial resources and the administrative expenses of the Debtor Defendants" that 3AC claims it wishes to avoid. Mot. ¶ 2. Indeed, in denying the Coordination Motion, the BlockFi Court remarked that rather than promote efficiency, the relief sought by the Coordination Motion would in fact increase costs, and compound delays and complexities associated with litigating the 3AC claims. *See In re BlockFi, Inc.,* Case No. 23-10063, Oct. 10, 2023 Hr'g Tr. (the "BlockFi Oct. 10 Hearing Tr.," an excerpted version of which is attached hereto as **Exhibit 1**) at 95-96:25-16 (Judge Kaplan stating "a process in which we're layering additional issues…can only slow this process down for this bankruptcy estate and increase the costs to be incurred…. The Court cannot see a pathway to where that is expedient or serves the purposes sought, which would be to reduce the time and costs. In fact, I think it would increase the burden on this estate.").

4.    None of the statutes, rules, and cases cited and discussed in the Coordination Motion form a basis for, or support, the requested relief. The relief itself, moreover, is simply too vague to further any of the goals espoused by the Coordination Motion. Even if the requested relief were granted in exactly the form sought, it is far from clear what the next step would be, meaning that additional motion practice would be required to even initiate the "coordination" process, all before any substantive consideration of supposedly common factual or legal questions could begin. Indeed, 3AC ignores the uniqueness of the questions of law and fact that are before this Court, as compared to those that will arise in the other courts, and in any event 3AC has not clearly articulated *which* questions of law and fact they believe would be better litigated on a coordinated basis. And,

critically, 3AC has admitted the BVI Court – 3AC's preferred court for hearing the consolidated disputes – lacks the power to resolve certain defenses that Genesis has raised, and therefore the BVI Court could not resolve all of the disputed issues in any event.

5.      For these reasons and those that follow, the Coordination Motion should be denied with prejudice.

## FACTUAL BACKGROUND

### A.    3AC's BVI Liquidation and Chapter 15 Cases[5]

6.      On June 27, 2022, 3AC commenced a liquidation proceeding (the "BVI Liquidation") before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "BVI Court"). *Verified Pet. Under Chapter 15 For Recognition of a Foreign Main Proceeding and Related Relief* at ¶ 1, *In re Three Arrows Capital, Ltd.*, Case No. 22-10920, ECF No. 2. On June 29, 2022, Messrs. Russell Crumpler and Christopher Farmer were appointed as joint liquidators of 3AC. *Id.* ¶ 8.

7.      On July 1, 2022, 3AC commenced proceedings under chapter 15 of title 11 of the United States Code (the "Chapter 15 Cases") in the U.S. Bankruptcy Court for the Southern District of New York (the "Chapter 15 Court"), captioned *In re Three Arrows Capital, Ltd.*, No. 22-10920, before the Chief Judge Martin Glenn. *Id.* On July 28, 2022, the Chapter 15 Court entered the *Order Granting Recognition of Foreign Main Proceeding and Related Relief, In re Three Arrows Capital, Ltd*, Case No. 22-10920, ECF No. 47.

8.      In late November 2022, 3AC filed an action in the BVI Court against GGC, GAP and Digital Currency Group, Inc. under Sections 186 and 274A of the BVI Insolvency Act, asserting claims based on certain of the same transactions underlying the claims asserted by 3AC in these

---

[5]      Additional details regarding procedural background of the BVI Liquidation and the Chapter 15 Cases can be found in the Renewed Objection at pages 9-10.

Chapter 11 Cases. Such action was voluntarily stayed, and as discussed below, 3AC proceeded to file and then amend and re-file their claims in this Court.[6]

**B.       Relevant Procedural History in these Chapter 11 Cases**

9.        On January 19, 2023, the Debtors filed voluntary petitions for relief and initiated the Chapter 11 Cases (the "Petition Date"). On April 4, 2023, this Court entered an order establishing May 22, 2023 at 4:00 p.m., Eastern Time, as the bar date for filing proofs of claim (the "Bar Date"), ECF No. 200.

10.       After unsuccessful attempts to negotiate a settlement between the Parties over various meetings in April 2023, *see* 3AC letter to Judge Lane dated August 1, 2023, ECF No. 563 at 3 (explaining "[t]he Foreign Representatives have attempted to negotiate a settlement with the Debtors and DCG, including meetings in April 2023"), 3AC filed proofs of claim numbered 523, 526 and 527 (together, the "Original Claims") against Holdco, GGC and GAP, respectively on May 22, 2023. In the Original Claims, the Joint Liquidators represented that their claims, including avoidance actions, arise from transfers to the Debtors with a value in excess of $1 billion.

11.       On July 22, 2023, the Debtors filed a *Motion for an Order Pursuant to 11 U.S.C. 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related Relief* (ECF No. 449). After receiving and incorporating informal comments from 3AC, the Debtors filed a *Revised Proposed Order Pursuant to 11 U.S.C. 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related*

---

[6]        The Lift Stay Motion fails to even disclose the existence of this pre-existing action or explain what role, if any, such proceeding would play should their Lift Stay Motion be granted in favor of litigation in the BVI.

*Relief* (ECF No. 465) (the "Revised Order"). The Court entered the Revised Order on July 12, 2023 (ECF No. 498) (the "Claims Procedures Order").

12.     On July 19, 2023, the Debtors filed an omnibus objection to the Original Claims, seeking an order disallowing and expunging the Original Claims on the grounds of, *inter alia*, 3AC's failure to allege sufficient facts to support a finding that the Debtors are legally liable under any cognizable law. *See* ECF No. 530 (the "Original Claim Objection").

13.     3AC later filed revised proofs of claim numbered 981, 982 and 990 (the "Amended Claims" and together with the Original Claims, the "3AC Genesis Claims") on August 18, 2023.[7] Notably, in the interim, on July 26, 2023, the BVI Court denied the Joint Liquidators sanction to commence a chapter 11 proceeding, thereby foreclosing the Joint Liquidators' efforts to obtain standing to pursue claims under Section 547 of the Bankruptcy Code. *See In re Three Arrows Capital, Ltd.*, No. 22-10920, ECF No. 109.[8] In response to the Amended Claims, the Debtors requested adjournment *sine die* of the hearing on the Original Claim Objection, originally scheduled for August 24, 2023, to allow time for the Debtors to review and respond to the Amended Claims.

14.     On September 1, 2023, the Debtors filed a renewed omnibus objection to the 3AC Genesis Claims (the "Renewed Objection," ECF No. 658), and withdrew the Original Claim Objection (*see* ECF No. 661). The Renewed Objection raises defenses to substantially all of the Amended Claims under Section 546(e) of the Bankruptcy Code, and objects to the entirety of the Amended Claims on substantive and/or procedural bases. On the same date, the Debtors further

---

[7]     On the record before this Court, 3AC agreed to file such amended claims by August 14, 2023. *In re Genesis Global Capital, LLC*, No. 23-100063, Aug. 2, 2023 Hr'g. Tr. at 42:9. This date was subsequently extended by agreement of the Debtors.

[8]     While the Joint Liquidators are pursuing an appeal of this BVI decision, such appeal has been set down for hearing in February 2024 and the applicable standard of review is such that the appeal's chances of success are remote at best. *See* Renewed Objection, Ex. G ¶¶ 6-8.

filed a scheduling motion to establish a timeline for resolution of the 3AC Genesis Claims (the "Scheduling Motion," ECF No. 659).

15.    On September 5, 2023, 3AC filed an objection to the Scheduling Motion (ECF No. 673).   On September 6, 2023, the Court held a hearing where it preliminarily approved the Scheduling Motion with certain adjustments (the "Sept. 6 Hearing").   On September 12, 2023, the Court entered an order incorporating the guidance from the Court given during the Sept. 6 Hearing, under which all document productions would be complete by October 9, 2023 and all fact discovery would close no later than November 6, 2023 (the "Scheduling Order", ECF No. 695).

16.    On September 6, 2023, 3AC filed a motion seeking to lift the automatic stay to have their claims adjudicated elsewhere (the "Lift Stay Motion", ECF No. 678), nearly a year after first commencing litigation in the BVI (which they subsequently chose to voluntarily stay), almost eight months after the Petition Date, almost four months after the filing of the Original Claims, shortly after the Debtors had filed a second objection to the 3AC Genesis Claims, and the parties had begun progressing in discovery towards adjudication of the merits of the 3AC Genesis Claims.   On September 19, 2023, the Debtors filed their objection to the Lift Stay Motion.   The hearing on the Lift Stay Motion was originally scheduled for September 26, 2023, but on September 22, 2023, 3AC requested to adjourn the hearing so that they could file a motion seeking coordination between this Court and the other chapter 11 debtors against which 3AC has filed claims (all such claims, the "Claims"), namely BlockFi Inc. and its debtor affiliates (the "BlockFi Debtors" their chapter 11 cases, the "BlockFi Cases," and the court overseeing the BlockFi Cases, the "BlockFi Court"); FTX Trading Ltd. and its debtor affiliates (the "FTX Debtors" and their chapter 11 cases, the "FTX Cases," and the court overseeing the FTX Cases, the "FTX Court"); and Celsius Network LLC and

7

its debtor affiliates (the "Celsius Debtors" and together with the Debtors, the BlockFi Debtors and the FTX Debtors, the "Chapter 11 Debtors").

17.    On September 25, 2023, this Court granted 3AC's request to adjourn the Lift Stay Motion, with the admonition that such adjournment could not be weaponized to obtain adjournments of other dates going forward. *In re Genesis Global Holdco, LLC*, Case No. 23-10063, Sept. 25, 2023 Hr'g Tr. at 21:19-22 (this Court instructing 3AC they are free to adjourn "so long as the decision to adjourn at this point is not used in a way offensively to affect other things going on in the case…the debtors have claims objections and they are what they are and they'll continue a pace [sic]."). On September 26, 2023, the Court scheduled the Lift Stay Motion and the Coordination Motion for a hearing on October 24, 2023. *In re Genesis Global Holdco, LLC*, Case No. 23-10063, Sept. 26, 2023 Hr'g Tr. at 21:6-16 (confirming the Lift Stay Motion and Coordination Motion would be heard on October 24, 2023). The Scheduling Order contemplates that this Court will also hear from the parties on October 24, 2023 to establish dates and procedures for expert submissions and discovery, and set deadlines for pre-trial briefing as well as merits hearing dates. Scheduling Order ¶ 1(f).

18.    On September 28, 2023, 3AC filed the Coordination Motion, which amended the prior-filed *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. For Coordination Among Courts*, ECF No. 749.

19.    On September 28, 2023, 3AC filed a substantially similar motion in the BlockFi chapter 11 proceedings. *In re BlockFi Inc.*, Case No. 22-19361, ECF No. 1623. Also on September 28, 2023, 3AC filed a substantially similar motion in the Chapter 15 Cases. *In re Three Arrows Capital, Ltd.*, Case No. 22-10920, ECF No. 116. However, to this date, no hearing date has yet been assigned or noticed as to the coordination motion in the 3AC Chapter 15 Cases.

20.    On September 29, 2023, 3AC also filed a substantially similar motion in the FTX chapter 11 proceedings. *In re FTX Trading Ltd.*, Case No. 22-11068, ECF No. 2754 (the "FTX Coordination Motion"). A hearing on the FTX Coordination Motion was scheduled for October 19, 2023, but 3AC has since withdrawn the motion. *In re FTX Trading Ltd.*, Case No. 22-11068, ECF No. 3068 (the "FTX Withdrawal").

21.    As of the date hereof, 3AC has not filed motions seeking relief similar to that sought in the Coordination Motion in the Celsius chapter 11 cases, and indeed 3AC has now indicated they no longer intend to file such motion in the Celsius cases.[9] Nor, to the knowledge of the Genesis Debtors, has 3AC filed or noticed for hearing any relief with respect to the Coordination Motion before the BVI Court.

22.    On October 10, 2022, the BlockFi Court denied the coordination motion filed in those cases. In explaining the basis for such denial, Chief Judge Kaplan found:

    i.    "At this juncture and at the outset the authority and jurisdiction of the Court to grant the relief requested in the consolidation is suspect." BlockFi Oct. 10 Hearing Tr. at 95:18-20.

    ii.    "I am leery of a process which will cause the bankruptcy estate additional delays as legal interests and facts are pursued involving other defendants, such as Genesis." *Id*. at 95:20-23.

    iii.    "[A] process in which we're layering additional issues…can only slow this process down for this bankruptcy estate and increase the costs to be incurred…. The Court cannot see a pathway to where that is expedient or serves the purposes sought, which would be to reduce the time and costs. In fact, I think it would increase the burden on this estate." *Id*. at 95-96:25-16.

    iv.    "The [c]ourt is not inclined to handcuff the creditors of this bankruptcy estate with respect to the opportunity to receive distributions while litigation is being pursued against multiple defendants in [a] foreign forum, whether it be

---

[9]    *See In re BlockFi, Inc.,* Case No. 23-10063, ECF No. 1693 (revising the proposed order to the BlockFi Coordination Motion to remove reference of coordination with Celsius or FTX); *see also* BlockFi Oct. 10 Hearing Tr. at 47:8-10 (3AC stating they "are not seeking coordination or consolidation as it relates to FTX or Celsius at this time, which was initially described in our motion.").

the Chapter 15 court, whether it be in front of Judge Lane in the Genesis bankruptcy, whether it be in the BVI court." *Id*. at 96:7-12.

v.  "I don't find that the legal issues are so complex and so dependent upon foreign law.  Yes, the insolvency of 3AC is critical in establishing a preference, but there are other issues…of law and facts which are important as well which will have to be decided, including the subordination…including safe harbor or fact-specific defenses relative to each transaction at issue." *Id*. at 96:17-24.

vi.  "The Court is concerned with any coordination which will have the effect of stripping or retarding the ability of the BlockFi debtor to assert defenses or pursue procedures that are available in the ordinary course, and especially simply the fact that even a coordination won't resolve all issues.  Even a coordination [with the court in the] BVI, for instance, will not resolve all issues." *Id*. at 96-97:25-5.

vii.  "These are not situations where creditors are getting paid…100 cents on the dollar, or anywhere near that.  It's incumbent upon…this court to try to lead the parties to a pathway which will reduce the time and expense in reaching the fair resolution of the claims.  I don't see it happening through granting stay relief to pursue claims in the BVI that have not yet even been brought, that cannot be pursued until possibly 2025, nor layering additional proceedings in an existing Chapter 15." *Id*. at 97:14-23.

## **ARGUMENT**

**A.  The Coordination Motion identifies no statutory basis or precedent for the relief it seeks.**

23.   In support of their requested relief, the Joint Liquidators point to a laundry list of Bankruptcy Code sections, Federal Rules of Bankruptcy Procedure, general principles underlying chapter 15 of the Bankruptcy Code, public policy rationales, and various unrelated legal concepts and procedural mechanisms.  But none of the cited Bankruptcy Code sections (namely sections 105(a), 1509, 1517 and 1525) or other statutory provisions empower this Court to grant a coordination process like the one 3AC seeks, a fundamental deficiency that none of the other proffered support can overcome—even if such support were robust, which it is not.  Indeed, in denying the coordination motion in the BlockFi cases, Chief Judge Kaplan noted that the statutory authority for the relief 3AC sought was "suspect."  BlockFi Oct. 10 Hearing Tr. at 95:18-20.

i.       *3AC identifies no statutory predicate for the relief sought.*

24.     Section 105(a) of the Bankruptcy Code grants broad equitable authority to bankruptcy courts, but that authority is not boundless.  The Supreme Court has "long held that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421 (2014).  In that same vein, the Second Circuit "has long recognized that Section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code" and certainly does not "authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 91–92 (2d Cir. 2003) (internal citations omitted).  Instead, the grant of equitable power under Section 105(a) is confined to actions in equity that "carry out the provisions of the Bankruptcy Code," such that an "exercise of section 105 power [must] be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective." *Id.* (citing 2 Collier on Bankruptcy ¶ 105.01[1]).  Therefore, standing alone, section 105(a) cannot provide the statutory basis for the requested belief, and as described below, none of the other cited sections of the Bankruptcy Code provide the statutory "hook" that the section 105(a) equitable power requires.

25.     As separate statutory predicate for the relief sought, 3AC cites section 1509 of the Bankruptcy Code, which requires a chapter 15 court to "grant comity or coordination to the foreign representative."  Mot. ¶ 6.  Neither the plain statutory text, nor the caselaw cited by 3AC relating to it, suggests that "coordination" here means anything similar to the sprawling multi-court proceeding imagined by the Joint Liquidators.  The basic principle that chapter 15, like chapter 11, is designed to centralize disputes in a single forum is not the clever angle that the Joint Liquidators seem to think

it is.  The U.S. bankruptcy system is designed to centralize all claims *against a debtor* in a single forum.  Here, the Joint Liquidators seek to centralize 3AC's own claims as a creditor *against other unaffiliated debtors* in a forum of 3AC's choosing.[10]  They do not, nor can they, point to any authority in statute or caselaw for this concept.

26.     Although 3AC also cites section 1517 as a statutory predicate for the relief sought, Mot. ¶ 6, the Consolidation Motion contains no substantive discussion of this provision, which is unsurprising given that Section 1517 provides no basis for the multi-court coordination imagined by the Joint Liquidators.  Instead, Section 1517 merely describes the requirements for recognition of a foreign proceeding.  *See, e.g., In re Fairfield Sentry Ltd.*, 714 F.3d 127, 132-38 (2d Cir. 2013) (discussing Section 1517).

27.     Finally, 3AC points to section 1525, which requires that a U.S. court overseeing a chapter 15 case "cooperate to the maximum extent possible with a foreign court or a foreign representative."  11 U.S.C. § 1525(a).  This provision includes no basis for asking multiple other U.S. bankruptcy courts overseeing cases of unaffiliated entities pursuant to chapter 11 statutory authority to cooperate with and abdicate their jurisdiction in favor of the court overseeing the chapter 15 case and/or the foreign court.  3AC impliedly acknowledges this when, aside from quoting the statutory text, it does not put forth an argument as to how section 1525 provides a statutory basis for the relief sought.  Mot. ¶ 25.

      ii.     *3AC identifies no relevant non-statutory authority to support the relief sought.*

28.     Having failed to find authority for the requested relief in the Bankruptcy Code, the Coordination Motion goes on to analyze Rule 42 of the Federal Rules of Civil Procedure, which

---

[10]     While 3AC is fond of characterizing itself as a debtor – which in its own proceeding in the BVI it may be – in this proceeding, it is definitively a creditor.

provides for consolidation of proceedings regarding common questions of law or fact. By its very terms, Rule 42 does not apply to the requested relief, given that it exists to permit the consolidation of *multiple actions pending before the same court* that involve commons question of law or fact. Fed. R. Civ. P. 42(a); *see also* Wright & A. Miller, Federal Practice and Procedure, § 2381 (1971) (explaining that the purpose of Rule 42(a) "is to give the court broad discretion to decide how *cases on its docket* are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties.") (emphasis added). The Joint Liquidators seek to shoehorn their requested relief into Rule 42 by pointing to a handful of out-of-circuit cases to support the idea that courts should weigh the merits of "single-trial, multiple-trial alternatives" and principles of judicial economy where there exist common issues of fact and/or law in "multiple lawsuits." Mot. ¶ 27. But Rule 42 does not in fact support the relief sought for at least two reasons. *First*, the Joint Liquidators' requested relief does not articulate any *particular* common question of law or fact that would be consolidated in a joint proceeding. *See infra* at C. It is impossible to analyze whether a joint trial on a particular factual or legal issue could possibly be more efficient than the alternative without careful articulation of *the particular factual or legal issue* to which the analysis pertains. The general concept of coordinating five or six disparate cases in four different jurisdictions (the S.D.N.Y., D. Del., D. N.J., and the BVI) is not amenable to this kind of judicial balancing test – and in any event, the relief has not been requested, been denied or been withdrawn in the Celsius, FTX and BlockFi proceedings. *Second*, the Joint Liquidators have not clearly articulated which courts would be party to the hypothetical coordinated proceedings: 3AC has withdrawn the FTX Coordination Motion, *see* FTX Withdrawal, and has indicated it no longer intends to file a similar motion in the Celsius cases,[11] nor has 3AC indicated whether it would seek to have issues of U.S.

---

[11]    *See In re BlockFi, Inc.,* Case No. 23-10063, ECF No. 1693 (revising the proposed order to the BlockFi Coordination Motion to remove reference of coordination with Celsius or FTX); *see also* BlockFi Oct. 10 Hearing Tr.

bankruptcy law adjudicated in part or wholly by the BVI court (another procedural anomaly for which they have provided no basis in statute or precedent in caselaw).

29.     Although the Joint Liquidators' discuss bankruptcy courts' decisions to consolidate proceedings under Bankruptcy Rule 7042, such decisions are orthogonal at best to the relief sought here.  Mot. ¶ 28 (citing decisions in the *Enron* cases and others to consolidate separate avoidance actions brought by a single debtor in its cases against various defendants in whole or in part).  The proceedings at issue here are claims filed by 3AC in the chapter 11 cases of Genesis and *other unaffiliated debtors*.  A bankruptcy court's authority to manage its own docket by consolidating more than one proceeding before it is a pale shadow of the massive undertaking requested here, by which five or six separate cases, in three U.S. jurisdictions and one foreign jurisdiction, would hold one or more mega-trials to consider purportedly common issues.  And, even after common resolution, 3AC acknowledges that the claims in the individual cases would have to return to their original courts for further proceedings.  Mot. ¶ 4. (proposing that issues specific to any one of the Chapter 11 Debtors be adjudicated in that debtor's respective bankruptcy court); *see also* Lift Stay Motion at ¶ 23 (acknowledging that the BVI Court would not be able to adjudicate the Debtors' safe harbor defenses).

<em>iii.     3AC identifies no other basis for the requested relief.</em>

30.     3AC next turns to various policy considerations and purported examples of bankruptcy courts employing "innovative practices" as a basis for their unprecedented request.  What 3AC overlooks, however, is that Congress has enacted a comprehensive Bankruptcy Code, with specific provisions that apply in various contexts.  Indeed, the very existence of the various

---

at 47:8-10 (3AC stating they "are not seeking coordination or consolidation as it relates to FTX or Celsius at this time, which was initially described in our motion.").  Notably, 3AC has not filed a revised proposed order before this Court clarifying the narrowed scope of proceedings at issue, as they did in BlockFi.  *See In re BlockFi, Inc.,* Case No. 23-10063, ECF No. 1693.

approaches taken by courts in the interest of administrative efficiency, all of which find grounding

in the Code itself, is evidence that what 3AC requests here lacks such grounding.  3AC asks this

Court and others to observe "statutory objectives," and from these to craft a special but largely

unspecified set of provisions and rules.  But, as the Supreme Court has observed, "if, and when,

Congress were to intend a major departure" from matters of such importance, there would be "more

than simple statutory silence."  *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 466 (2017).

31.     3AC proclaims that the "express statutory objectives behind chapter 15 support

coordination among courts in these circumstances," Mot. ¶ 26, and cites bankruptcy-specific

"innovative practices" that "bankruptcy courts frequently employ."  Mot. ¶ 30.  But none of the

examples the Joint Liquidators marshal are actually instructive in this case.  For example, cross-

border court-to-court communication protocols are a standard mechanism for coordinating a chapter

15 proceeding with the corresponding foreign main proceeding, and are based in clear statutory

language.  *See* 11 U.S.C. § 1526(a)-(b) (authorizing trustee or other person to cooperate or

communicate "with a *foreign court or foreign representative*") (emphasis added).[12]  Similarly, court-

to-court protocols can facilitate communication between two main proceedings for affiliated Debtors

proceeding in different jurisdictions.  What is truly unprecedented, and what the Coordination

Motion seeks, is effective consolidation of claims against unaffiliated, independent debtors in their

own plenary insolvency proceedings before either a foreign court or the Chapter 15 Court.[13]

32.     As for "innovative practices", the Joint Liquidators describe examples of multiple

courts holding a joint hearing to consider a single settlement agreement between two debtors in

---

[12]     And the local rules for the United States Bankruptcy Court for the District of Delaware to which 3AC refers,
Mot. ¶ 30(e), which permit the court to receive communications from a foreign court—are similarly based in statute.

[13]     The Coordination Motion's gesture at the existence of multi-district litigations in the United States, while
notably *not* an argument that any component of the statutes enabling MDLs should be implemented here, is again a
self-defeating argument, as MDLs are based in rules.  *See* 28 U.S.C. § 1407.

separate chapter 11 cases. Mot. ¶ 30(c-d). This is an excellent example of judicial efficiency, given that such agreements would have required approval by multiple courts in any event, and necessarily concerned a single set of facts and common legal questions (*i.e.* those pertinent to the settlement agreement). The Joint Liquidators have not proposed anything nearly so specific and discrete here, where there are multiple unrelated debtors, that each had a unique and independent relationship with 3AC.

33.     Thus, despite a thorough canvass of all conceivable sources of authority, guidance, and precedent, and a game attempt at shoehorning its imagined protocol into many of them, 3AC fails to advance statutory authority, or any other type of grounding, for the relief sought.

**B.     The relief sought by the Coordination Motion is too vague to be actionable.**

34.     3AC has not requested any specific relief beyond "authorizing this Court to conference with the BVI Court, the BlockFi Court, the FTX Court, the Celsius Court, and the Chapter 15 Court,"[14] with the presumed aim of ultimately adjudicating some subset of the factual and legal issues underlying their claims against the various debtors in shared proceedings. Proposed Order at 2.[15] They have not specified what those procedures would be, what issues they would cover, or the timeline for any of the imagined coordination. The proposed order is an "agreement-to-agree" at best, and that is simply not the type of relief this Court – with its own imperatives of efficiency and fairness with respect to the claims being actively litigated before it – should countenance. It is not

---

[14]    As noted throughout this Objection, 3AC appears to be no longer seeking to include the FTX Court and Celsius Court in such relief, and such relief has been denied on the merits in BlockFi.

[15]    During the September 25, 2023 conference, this Court rightly expressed concern regarding the breadth of the relief requested and lack of specificity of 3AC's initial description of the to-be-filed Coordination Motion. *See In re Genesis Global Capital, LLC*, No. 23-100063, Sept. 25, 2023 Hr'g. Tr. ("Sept. 25 Hr'g Tr.") at 15:12-17 (this Court responding to counsel for 3AC's initial description of the Coordination Motion, stating, "[Y]ou've got to be more precise about what you're asking for. Because what you're asking for sounds exceedingly extreme…. So can you give me more details as to what you're asking for or will be asking for?"). Despite this guidance, no such details have been provided in the Coordination Motion or otherwise.

even clear what the next steps would be, if this Court and the remaining courts were to grant the precise relief requested by the Joint Liquidators, although it is clear that the time taken even by each court's consideration of the coordination motions themselves would hamstring the process of adjudicating 3AC's claims in this Court, with attendant delays in the Debtors' adjudication of the Amended Claims, and with knock-on effects for the Debtors' plan and distribution processes.

      **C.**     **The Coordination Motion ignores the substantive differences between 3AC's claims against the different Chapter 11 Debtors.**

     35.     Contrary to the Joint Liquidators' assertions in the Motion, resolution of 3AC's claims against the Debtors will require a number of particularized factual findings and legal holdings that will be unique to the those claims, and not shared by the Claims filed against other Chapter 11 Debtors.  Although obvious, it seems necessary to note: the Chapter 11 Debtors are wholly distinct entities with their own relationships with 3AC.[16]  Indeed, 3AC's conversion claims against the Debtors turn on the particular terms of the lending agreements between 3AC and the Debtors.  The one common thread identified is the fact that 3AC has brought preference claims against each of the Chapter 11 Debtors.  Of course, *some* facts and legal questions concerning only 3AC will be relevant to the adjudication of each of their claims, but the critical facts and legal questions will not be identical.

     36.     For one, the section 546(e) safe harbor defense asserted by the Debtors calls for a factual inquiry regarding (i) whether GAP and/or 3AC are parties that qualify for the safe harbor, (ii) whether the contracts between the Debtors and 3AC qualify for the safe harbor, and (iii) whether the challenged transfers were made in connection with those contracts.  Each of these inquiries will have

---

[16]     *See* Sept. 25 Hr'g. Tr. at 16:18-22 (Judge Lane responding to counsel for 3AC's description of the need for coordination, providing "two observations.  One is that each case has its own issues, right?  The nature of each party's relationship is – I'm sure it has some similarities, but there are some differences.  And that's why you have different cases.").

no overlap with the safe harbor inquiries to be conducted in the other cases (assuming such defense is raised by the other Chapter 11 Debtors).[17]  Inquiry (i) as to 3AC is not made in a vacuum but rather has a timing component:  the inquiry into whether 3AC was a financial participant, forward contract merchant, or other type of party such that qualifying contracts might be eligible for the safe harbor, will require determining whether 3AC met the relevant criteria *as of the dates of the relevant transactions or as of the relevant debtor's petition date*, which dates vary across cases.

37.    Second, the question of when 3AC became insolvent, an element of 3AC's BVI preference claims, is not a question that can be asked or resolved generically.  To the contrary, in support of its preference claims, 3AC will need to demonstrate that it was insolvent *as of the time of each challenged transaction*, or that any such transaction *caused* 3AC to become insolvent.  *See* Renewed Objection, Ex. G ¶ 12-13 (BVI law declarant stating that a transaction is an "unfair preference" if the transaction is "an insolvency transaction," among other requirements, with an insolvency transaction being defined as a transaction "entered into at a time when the company is insolvent [or] it causes the company to become insolvent.").  Courts making this solvency inquiry may well reach different conclusions for different time periods in connection with different challenged transactions, and it is therefore theoretical at best that any such decisions could be "weaponized" against 3AC in other cases considering the solvency inquiry in a different temporal context.  *See* Coordination Motion at ¶ 36.  The Debtors also have specific arguments that certain transfers in connection with collateral substitutions do not independently constitute preferences under BVI law, because each one involved an exchange of one digital asset for another, and because

---

[17]    The BlockFi Debtors have indicated they will be pursuing safe harbor defenses in their objection to and motion to estimate the Claims.  *See In re BlockFi Inc.*, Case No. 22-19361, ECF No. 1346 and 1375.  No such indication has been made by the FTX Debtors, who indicated their intent to oppose application of the safe harbors as to their claims against the Genesis Debtors.  *See* ECF No. 476, Exhibit B at 2 (identifying the safe harbor defenses as part of the "issues relevant for liquidation of the FTX Preference Claims."

the value of the collateral substituted was exactly the same, the collateral substitutions cannot be considered preferences because the Debtors remained in the same position as a creditor of 3AC. *See* Renewed Objection ¶ 117. Further, the Debtors argue that all relevant assets were transferred in the ordinary course, and therefore cannot be avoided, which is a similarly fact-intensive inquiry requiring analysis of each of the transactions as part of the ongoing relationship between specifically 3AC and the Debtors. *See* Renewed Objection ¶ 118. It is difficult to imagine how such inquiries could be more efficiently or fairly conducted by a single court considering claims against multiple Debtors (and possibly lacking familiarity with the facts of the particular GAP-3AC relationship). This is all the more the case where the BVI Court is a commercial court of plenary jurisdiction, rather than a specialized court whose stock and trade focuses on insolvency determinations.

***

38.     Thus, while the litigation path ahead is challenging for all parties, given the size and complexity of the claims 3AC has filed in almost half a dozen active chapter 11 cases, the Coordination Motion is nothing more than a gesture toward the idea of judicial efficiency. This gesture, moreover, is now a completely empty one in light of developments since the Coordination Motion was filed. Although unworkable as originally proposed, the relief sought could not even theoretically achieve its stated goal now that one court has denied the Coordination Motion on its merits and 3AC will not seek to include two others. As tacitly recognized already by the BlockFi Court, the Coordination Motion fails to articulate with specificity any problem in need of a solution, and fails to propose anything more than the idea that a possible solution should be devised at some later date. The Debtors respectfully request that this Court permit the standard claim adjudication process that is already underway in these cases to proceed, and to deny the Coordination Motion and any further attempts at delay.

## CONCLUSION

39.     For the foregoing reasons, the Debtors respectfully request that the Court deny the

Coordination Motion with prejudice and grant the Objection.

Dated:  October 16, 2023          */s/ Luke A. Barefoot*
        New York, New York          CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                 Sean A. O'Neal
                                 Luke A. Barefoot
                                 Jane VanLare
                                 One Liberty Plaza
                                 New York, New York 1006
                                 Telephone: (212) 225-2000
                                 Facsimile: (212) 225-3999

                                 *Counsel to the Debtors and Debtors-in-Possession*

# EXHIBIT 1
## BlockFi Oct. 10 Hearing Transcript – Excerpts

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE:                          .     Case No. 22-19361-MBK
                                .     (Jointly Administered)
BLOCKFI INC., et al.,           .
                                .
          Debtors.             .
                                .     October 10, 2023
. . . . . . . . . . . . .       .     11:05 a.m.


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT CHIEF JUDGE


APPEARANCES:

For the Debtors and          Haynes and Boone, LLP
Debtors-in-Possession:       By:  RICHARD KANOWITZ, ESQ.
                                  LAUREN SISSON, ESQ.
                             30 Rockefeller Plaza, 26th Floor
                             New York, NY 10112

                             Kirkland & Ellis LLP
                             By: DAN LATONA, ESQ.
                             300 North LaSalle
                             Chicago, IL 60654

For the Official             Brown Rudnick, LLP
Committee of Unsecured       By:  KENNETH AULET, ESQ.
Creditors:                        MICHAEL WINOGRAD, ESQ.
                             Times Square
                             New York, NY 10036


Audio Operator:              Kiya Martin


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

2

APPEARANCES (CONT'D):

| | |
|---|---|
| For the Joint Liquidators of Three Arrows Capital: | Latham & Watkins LLP<br>By:   ADAM J. GOLDBERG, ESQ.<br>     BRETT M. NEVE, ESQ.<br>     MARISSA ALTER-NELSON, ESQ.<br>1271 Avenue of the Americas<br>New York, NY 10020 |
| | Pashman Stein Walder Hayden P.C.<br>By: JOHN WEISS, ESQ.<br>Court Plaza South, East Wing<br>21 Main Street, Suite 200<br>Hackensack, NJ 07601 |
| For Genesis Global Holdco LLC, Genesis GlobalCapital, LLC and Genesis Asia Pacific Pte. Ltd.: | Lite DePalma Greenberg & Afanador,LLC<br>By: ALLEN JOSEPH UNDERWOOD, II, ESQ.<br>570 Broad Street, Suite 1201<br>Newark, NJ 07102 |
| For Silvergate Bank: | Holland & Knight LLP<br>By: WARREN E. GLUCK, ESQ.<br>31 West 52nd Street<br>12th Floor<br>New York, NY 10019 |

APPEARANCES VIA ZOOM VIDEOCONFERENCE:

| | |
|---|---|
| For the Debtor and Debtors-In-Possession: | Haynes and Boone, LLP<br>By: AIMEE FURNESS, ESQ.<br>     JORDAN CHAVEZ, ESQ.<br>     MATT FERRIS, ESQ.<br>2801 N. Harwood Street<br>Suite 2300<br>Dallas, TX 75201 |
| For Genesis Global Holdco LLC, Genesis GlobalCapital, LLC and Genesis Asia Pacific Pte. Ltd.: | Cleary Gottlieb Steen & Hamilton LLP<br>By: LUKE A. BAREFOOT, ESQ.<br>One Liberty Plaza<br>New York, NY 10006 |
| For Deserve, Inc: | Goodwin Procter LLP<br>By: MEGHAN SPILLANE, ESQ.<br>New York Times Building<br>620 8th Avenue<br>New York, NY 10018 |

3

APPEARANCES VIA ZOOM VIDEOCONFERENCE (CONT'D):

For the U.S. Trustee:        Office of the U.S. Trustee
                             By:  JEFFREY M. SPONDER, ESQ.
                             One Newark Center, Suite 2100
                             Newark, NJ 07102

                        - - -

# BlockFi Oct. 10 Hearing Transcript Pgs. 45-52

1  the May 5th transfer of $29 million.

2         To be clear, Three Arrows has an array of other

3  claims against Genesis, as well, which I'm happy to outline for

4  Your Honor but, for the sake of expedience, I can move on

5  unless you'd like to hear that.

6         THE COURT:  No, it's fine.  Thank you.

7         MR. GOLDBERG:  Thank you.  So I think I would

8  highlight, though, that the common issues that arise between

9  the claims that we have in this case and the claims that exist

10  in Genesis are particularly when did Three Arrows become

11  insolvent under BVI law.

12         And as it relates to these debtors, May 5th is the

13  earliest relevant date.  As it relates to Genesis, May 6th.

14  Also other common issues that will arise are whether the

15  transactions occurred in the ordinary course of business and

16  whether the safe harbors of the U.S. Bankruptcy Code apply,

17  which are both issues that the Genesis debtors are also

18  raising.  But that is essentially a brief survey of the claims

19  that are currently relevant before Your Honor, today, for our

20  motion for relief from stay and the coordination motion.

21         So let me be more specific as well.  What are we

22  asking from Your Honor today?  I think this is an important

23  part of clarity for the purposes of this hearing.  First and

24  foremost, we are seeking relief from the automatic stay so that

25  we may prosecute claims against BlockFi in another form.  Our

1    preference, being debtors in a BVI liquidation proceeding, is

2    to bring that litigation in the BVI.  That is the home court

3    for our liquidation proceeding.  It's, in our view, the one

4    most naturally suited to decide the issues of insolvency under

5    BVI law, ordinary course under BVI law as well.  And indeed, it

6    will be deciding issues related to the date of insolvency of

7    Three Arrows as it relates to other parties that are not

8    debtors in their own Chapter 11 proceedings, and I believe we

9    put some of those facts before Your Honor under seal.

10            But that is not the only option.  It is not

11   necessary, in our view, that these issues be litigated in the

12   BVI.  We acknowledge that there are competing interests here of

13   what we view as co-equal bankruptcy estates between these

14   debtors, ourselves as a debtor, the Genesis debtors, and that

15   may lead this Court and other relevant courts to determine

16   that, on balance, the BVI court may not be the best place to

17   adjudicate these issues.  So, in alternative to the BVI court,

18   we would also seek relief from the automatic stay to have these

19   issues litigated in our Chapter 15 case, which is before Chief

20   Judge Martin Glenn of the Southern District of New York.

21            In that scenario, upon relief from the automatic

22   stay, we would commence an adversary proceeding that would be

23   the basis for a complete resolution of all of the issues that

24   are raised as it relates to claims against BlockFi and the

25   defenses they have asserted.  That procedure of an adversary

1   proceeding would also permit consolidation, in whole or in

2   part, of an adversary proceeding against Genesis if relief from

3   the stay is also granted in the Genesis Chapter 11 case.  So

4   that is our motion for relief from stay.

5        As to coordination, today we're only seeking

6   coordination and communication.  Ultimately, if successful, we

7   would seek consolidation, in whole or in part, of our claims

8   against BlockFi and Genesis together.  We are not seeking

9   coordination or consolidation as it relates to FTX or Celsius

10  at this time, which was initially described in our motion.

11       As to FTX, we have reached an agreement with them to

12  adjourn our motion for relief from stay and the motion for

13  coordination that we filed in the FTX bankruptcy cases.  The

14  parties have agreed on an information sharing period and a

15  standstill in litigation of our claims until at least

16  February 1st of next year.  There is a prospect that

17  information development will provide the basis for a settlement

18  or narrowing of the issues that may lead to the possibility

19  that insolvency may not need to be litigated with those

20  debtors.

21       As to Celsius, we are not seeking judicial

22  cooperation or consolidation at this time but for different

23  reasons.  We have co-counsel at Holland and Knight, who I

24  believe are on the Zoom, and can address the issues related to

25  Celsius now or at the appropriate time in Your Honor's view.

1        So that limits our request for coordination and

2   communication to two other debtors, BlockFi and Genesis.  And

3   to be absolutely clear, we are not asking this Court to order

4   any other court to do anything whatsoever.  We filed a revised

5   proposed order just before the hearing last night in an effort

6   to make that clear in preparation for the hearing, and that's

7   at Docket Number 1693.

8        What we're asking in terms of coordination and

9   communication is that Your Honor would confer with the other

10  courts prior to a ruling on our motion for relief from stay.

11  If Your Honor determines that coordination is appropriate and

12  we would think that that would only actually occur with that

13  coordination, if the other courts agree.  We can't make them

14  talk to Your Honor, of course.  So at this stage, all we're

15  asking to decide today is whether Your Honor would like to have

16  coordination or communication in any form with the other

17  relevant courts, which would be Judge Sean Lane in the SCNY

18  overseeing the Genesis Chapter 11 cases, Chief Judge Martin

19  Glenn in the SCNY overseeing our Chapter 15 case, and Justice

20  Ingrid Mangatal of the BVI Court.

21       We've been intentionally open ended about exactly how

22  that coordination or communication could occur because we

23  wanted to give Your Honor the opportunity and the other courts

24  the opportunity to exercise your discretion as to the

25  appropriate format for any communication.  The options that

1  would be available could be a joint hearing involving all of

2  the relevant courts where issues are decided on the questions

3  of relief from the automatic stay in particular.

4         There could be a joint status conference in which

5  issues of scheduling and options of procedures could be

6  discussed before coming back here for a decision by Your Honor.

7  Or potentially, there could be a judicial conference in camera

8  without the parties.  So those are our requests, Your Honor.

9  Why should they be granted?

10         Cause exists for relief from the automatic stay.

11 This is an extraordinary situation involving not just one

12 dueling debtor, but multiple dueling debtors.  And on that

13 basis, relief from the stay should be granted using either the

14 three part test or the Sonnax factors.  So let me first address

15 the three-part test and then we can get into the Sonnax factors

16 if Your Honor would like to hear details on those.

17         The three part test is prejudice, hardship, and

18 probability of success.  In our view, Your Honor, prejudice

19 weighs strongly in favor of Three Arrows in granting relief

20 from the stay.  The BlockFi plan has been confirmed and it is

21 actively seeking to litigate these claims.  There can be no

22 prejudice to BlockFi from litigating these claims, and that's

23 actually the issue that is facing most courts on a question of

24 relief from the automatic stay to litigate claims and causes of

25 action.

1        The only question before this Court is what should be

2   the forum for that litigation.  Three Arrows will face far

3   greater prejudice from continuing the stay than BlockFi would

4   face in granting relief.  Three Arrows is a debtor in its own

5   liquidation.  Its claims against BlockFi and very similar

6   claims against Genesis comprise some of its largest assets with

7   a face value over one billion U.S. dollars.  These are

8   preference claims.  They are intended to create parity among

9   Three Arrows creditors.  Whichever court adjudicates these

10  claims will have to decide a number of issues that are central

11  and core to the Three Arrows estate.

12       For example, the date of insolvency is one of, if not

13  the, most important legal question for the Three Arrows

14  liquidation because it will be dispositive, not only to the

15  claims in this case and in the Genesis case, but in other

16  cases, which Your Honor is partially aware of.  A risk of

17  inconsistent outcomes would indeed be deeply prejudicial to the

18  Three Arrows estate.  We have not identified any case, and

19  neither has BlockFi pointed to any either, where a bankruptcy

20  court has decided preference claims arising from another

21  bankruptcy estate, much less preference claims of a foreign

22  insolvency estate arising under foreign law.

23       The key element of prejudice that BlockFi articulates

24  is that it would lose defenses.  But if the issues are

25  litigated in our Chapter 15 case, the Bankruptcy Court would be

1  fully capable of adjudicating all of the issues, just as this

2  Court would.  And if the issues are litigated in the BVI, and

3  the BVI court decides not to adjudicate a particular issue, the

4  matter could return to this Court for those issues, such as

5  rulings on allowance under the U.S. safe harbors or

6  subordination under the supposed equitable subordination

7  arguments that Blockfi seeks to bring.

8           Second, hardship, likewise weighs in favor of Three

9  Arrows.  BlockFi and Three Arrows will both incur the costs of

10  litigating this matter in any forum.  BlockFi has already

11  created a situation where they will be litigating preference

12  issues before another court through their settlement with FTX.

13  That settlement provides for FTX's preference claims against

14  BlockFi to be litigated in the FTX bankruptcy court.  BlockFi

15  should not now be entitled to claim that litigating preference

16  claims before another bankruptcy court is some undue hardship.

17           Granting relief from the stay would allow Three

18  Arrows to avoid the very meaningful hardship of having multiple

19  courts hold trials on very similar issues on a very parallel

20  timetable, which both strains resources of the professionals

21  involved, we only have so much time, and also imposes

22  duplicative expenses.  And that hardship would far outweigh any

23  incremental hardship to BlockFi from appearing in another

24  bankruptcy case, particularly now that its plan has been

25  confirmed.

1          Third, as to the probability of success, Three Arrows

2    has demonstrated a probability of success through the *prima*

3    *fascia* case established in its proof of claim filed on an

4    amended basis on September 13th.  BlockFi has not provided any

5    substantive response to that proof of claim whatsoever.  And

6    the detail, in our view, of that proof of claim satisfies this

7    element in accordance with the cases of <u>Continental</u>, <u>15375</u>

8    <u>Memorial</u>, and the other cases cited in our reply.

9          I'm happy to go through the detail on the Sonnax

10   factors if the Court would like, or we can move along.

11         THE COURT:  You briefed it.  I have no issue.  I

12   don't need a repetition of it.

13         I appreciate it.  Thank you.

14         MR. GOLDBERG:  Thank you, Your Honor.

15         So I would simply kind of conclude a presentation on

16   the stay with a brief summation and then move on to the

17   coordination issues.

18         Essentially, this is a very challenging situation on

19   relief from the automatic stay.  There are multiple bankruptcy

20   cases involved, which in our view should be viewed as having

21   co-equal rights to decide the destiny of their own bankruptcy

22   cases.  In our view, however, the balance weighs decisively in

23   favor of Three Arrows.

24         If relief from the stay is denied, we will face at

25   least two trials on similar timetables, on similar issues, in

# BlockFi Oct. 10 Hearing
# Transcript Pgs. 95-100

1  recover even if after proper due process the claims are

2  determined to be allowed.

3        So I think -- but what we have heard here, other than

4  continuing to be no evidence about when distributions are

5  occurred and when actually things need to happen, we've heard a

6  lot of "sooner the better," we agree with that.  Let's get on

7  with it.

8        We're ready to go forward with the claim objection.

9  We don't think estimation is needed.  But if Your Honor does

10  think estimation should go forward, we should have a hearing

11  first on whether there is undue delay.

12        Thank you, Your Honor.

13        THE COURT:  All right.  Thank you.

14        Bear with me one second.

15        So let me address the motion to seek -- I'm not going

16  to say consolidation, but coordination and the stay relief

17  motion itself.

18        At this juncture and at the outset, the authority and

19  the jurisdiction of the Court to grant the relief requested in

20  the consolidation is suspect.  I am leery of a process which

21  will cause this bankruptcy estate additional delays as legal

22  interests and facts are pursued involving other defendants,

23  such as Genesis.

24        I don't believe Genesis regards that as appropriate

25  for its bankruptcy estate either.  In other words, a process in

1  which we're layering additional issues which, by necessity and

2  facts -- which by necessity arise from multiple transactions

3  among multiple debtors can only slow this process down for this

4  bankruptcy estate and increase the costs to be incurred by this

5  bankruptcy estate, and that has to be this court's primary

6  focus.

7          The Court is not inclined to handcuff the creditors

8  of this bankruptcy estate with respect to the opportunity to

9  receive distributions while litigation is being pursued against

10 multiple defendants in foreign forum, whether it be the Chapter

11 15 court, whether it be in front of Judge Lane in the Genesis

12 bankruptcy, whether it be in the BVI court.

13         The Court cannot see a pathway to where that is

14 expedient or serves the purposes sought, which would be to

15 reduce the time and costs.  In fact, I think it would increase

16 the burden on this estate.

17         I don't find that the legal issues are so complex and

18 so dependent upon foreign law.  Yes, the insolvency of 3AC is

19 critical in establishing a preference, but there are other

20 issues and other -- there are other issues of law and facts

21 which are important as well which will have to be decided,

22 including the subordination -- potential for subordination,

23 including safe harbor or fact-specific defenses relative to

24 each transaction at issue.

25         The Court is concerned with any coordination which

1   will have the effect of stripping or retarding the ability of

2   the BlockFi debtor to assert defenses or pursue procedures that

3   are available in the ordinary course, and especially simply the

4   fact that even a coordination won't resolve all issues.  Even a

5   coordination of BVI, for instance, will not resolve all issues.

6         At issue here are large sums, by all means.  We're

7   talking about hundreds of millions of dollars in potential

8   preference recoveries, claims by and among these debtors.

9         But what also is a stark reality is that payments

10   against these claims are going to be in fractions of dollars.

11   The money is just not there, whether it be the Genesis

12   bankruptcy, whether it be the Celsius bankruptcy, whether it be

13   BlockFi.

14         These are not situations where creditors are getting

15   paid, at least to this court's understanding, 100 cents on the

16   dollar, or anywhere near that.

17         It's incumbent upon, I think, this court to try to

18   lead the parties to a pathway which will reduce the time and

19   expense in reaching the fair resolution of the claims.

20         I don't see it happening through granting stay relief

21   to pursue claims in the BVI that have not yet even been

22   brought, that cannot be pursued until possibly 2025, nor

23   layering additional proceedings in an existing Chapter 15.

24         I am always open to discussing these issues with

25   Judge Glenn.  I know there are multiple stay relief motions

1    pending on these issues.  This court had the benefit of having

2    Judge Glen go first with respect to property of the estate

3    issues.  So I guess I go first with respect to stay relief.

4    It's only fair.  I don't believe stay relief is appropriate at

5    this juncture.

6         I am willing to carry the motion, because I have some

7    other thoughts in conjunction with where we should go.  In my

8    view, this matter should proceed towards mediation.  It is

9    essentially a dispute between 3AC and BlockFi on reconciling

10   potential claims.  It is fit for mediation.  It makes sense to

11   do so.  It can only happen after appropriate discovery.  So I

12   am looking forward to allowing discovery.

13        The question is how to then progress.  I was inclined

14   to simply have an estimation hearing on that December 18th

15   date, to allow discovery through December 1, allow parties to

16   exchange briefing, exchange exhibits.

17        And when I refer to estimation, I do look at it as --

18   I know it's nomenclature, but I view it as really a hearing to

19   fix the proper reserve, because the number one priority for

20   this court is to facilitate the debtor in its ability to

21   distribute funds to all claimants, which would include 3AC at

22   this point.

23        But there are customers, there are creditors out

24   there who are waiting desperately for every dollar, and

25   resolution of this claim stands in the way at this juncture.

1          So I hear the parties saying that they would like to

2   brief the issue of whether or not there should be estimation

3   first.  I can accommodate that.  I would think that it would be

4   -- and I want to hear from you all, which is why I'm going to

5   be asking.  I would think it would just be part and parcel of

6   the estimation hearing.  It will be one point in the brief.

7   Why make it more complicated?

8          What I intended to do is, once we have the estimation

9   hearing, send you off to mediation.  I would even reserve, if

10  the parties are so inclined on that, to see if there can be a

11  resolution.

12         So the schedule I had in my mind was to have on

13  December 19th the estimation proceeding to fix the reserve if

14  appropriate, to have discovery continue through December 1st,

15  to have exhibits exchanged on December 6th, to have

16  contemporaneous submissions of law and disputed facts on

17  December 11th, with the ability to respond on December 18th.

18         We would have the hearing.  We would probably

19  schedule a conference call in advance, just to have a pretrial,

20  to make sure everything is proceeding, and to have the parties

21  brief the appropriateness of the estimation hearing as part of

22  their briefing.

23         If the Court is persuaded that there is not a need

24  for estimation, we won't have an evidentiary hearing on the

25  19th.  It will be that simple.

1       But I assume it will be briefed and argued as part of

2   the December 19th trial.  That gives ample time to continue

3   discovery.  And then I would send you all to mediation.  So I'm

4   going to ask you all to meet and confer to see if you can agree

5   upon a mediator.

6       Now, I also believe that the joint liquidators are

7   seeking a more amplified objection to their claim in order to

8   guide discovery.  I'm going to direct the debtor to do that in

9   15 days.

10      If there is -- we're not going to schedule a merits

11  hearing at this point.  I'll wait to see how mediation fares.

12  I'm content to carry the stay relief motion to December 18th as

13  well and just to keep that in case -- rather than have to renew

14  it, just to keep it there, because at some point coordination

15  may make sense.  But at least let's get the parties started on

16  discovery and let's get you-all into an attempt at mediation.

17  I think both the states would be served by avoiding unnecessary

18  litigation.  At least we'll give it an opportunity.

19      So those are my thoughts.  And I took a little bit of

20  everybody's schedule.  Let me hear from you all.

21      Mr. Kanowitz?

22      MR. KANOWITZ:  Yes, Your Honor.  That's perfectly

23  acceptable to the debtors, Your Honor, I'm sure with the

24  Committee.  We're ready to move forward.

25      The only question I have for you is, you know, when