## **EXHIBIT C**

**October 12, 2023 Letter From Cleary Gottlieb**

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

| AMERICAS | ASIA | EUROPE & MIDDLE EAST | |
|---|---|---|---|
| NEW YORK | BEIJING | ABU DHABI | LONDON |
| SAN FRANCISCO | HONG KONG | BRUSSELS | MILAN |
| SÃO PAULO | SEOUL | COLOGNE | PARIS |
| SILICON VALLEY | | FRANKFURT | ROME |
| WASHINGTON, D.C. | | | |

CRAIG B. BROD
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
DAVID H. BOTTER
JORGE U. JUANTORENA
DAVID LEINWAND
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
ALAN M. LEVINE
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
DEBORAH NORTH
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
AUDRY X. CASUSOL
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOHN A. KUPIEC
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
JULIA L. PETTY
HELENA K. GRANNIS
SUSANNA E. PARKER
THOMAS S. KESSLER
RESIDENT PARTNERS

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
HEIDE H. ILGENFRITZ
ANDREW WEAVER
CATHERINE S. GRIMM
JOHN V. HARRISON
MATTHEW BRIGHAM
EMILIO MINVIELLE
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
BRIAN J. MORRIS
CARINA S. WALLANCE
ALEXANDER JANGHORBANI
RESIDENT COUNSEL

D: +1 212-225-2416
soneal@cgsh.com

October 12, 2023

Ad Hoc Group of Genesis Lenders
c/o Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Attn: Brian Rosen, Esq.

To the Ad Hoc Committee:

I am writing at the request of the Special Committee in response to your email, dated October 6, 2023, attaching the *Ad Hoc Group Member Statement with Respect to Chapter 11 Plan and DCG Litigation* (the "AHG Statement").

The Special Committee continues to believe that the DCG Deal Plan is better for creditors than a No Deal Plan. We understand that the Official Committee of Unsecured Creditors (the "Creditors Committee") and its advisors share this view. The Special Committee is concerned that in a No Deal Plan scenario, DCG would immediately pay the $630 million that was due in May 2023, using existing cash and obtaining financing, and hunker down for a multi-year litigation that may not result in any recoveries for the Genesis estates. At a minimum, any such refinancing would give DCG's new lenders value that would otherwise go to the Genesis creditors and impose significant limitations that would negatively impact DCG's ability to repay Genesis the $1.1 billion unsecured promissory note due in 2032. Moreover, a No Deal Plan would delay distributions to Genesis creditors and expose the Genesis estates to credit risk because, in contrast to the DCG Deal Plan scenario, Genesis would not have the benefit of a security interest or contractual covenants limiting DCG's activities pending resolution of the litigation (which would be especially problematic in the event that DCG were to seek bankruptcy protection). Similarly, in a No Deal Plan scenario, the Genesis estates would not receive the benefit of any guarantees, or any contractual covenants limiting activities, by DCG subsidiaries that are not obligors under the promissory note. All of this leads the Special Committee to believe, after consultation with its advisors, that the DCG Deal Plan is a fair settlement.

Ad Hoc Group Letter, p. 2

That said, the Special Committee realizes that creditors may have different views and may instead prefer the No Deal Plan. For that reason, we have been pursuing a plan that would allow creditors to express a preference between a DCG Deal Plan and a No Deal Plan (the "Creditor Choice Plan"). During our zoom meeting on September 26, 2023, as well as my follow-up correspondence on September 27, 2023, the Special Committee made it clear to the Ad Hoc Group that it intended to move forward with the Creditor Choice Plan unless the Ad Hoc Group (i) delivered binding commitments from a broad coalition of creditors agreeing to vote to accept the Revised DCG Deal Plan (assuming that DCG agrees to its terms) and the No Deal Plan (assuming the parties reach agreement on the terms of the first- and second-lien debt contemplated by the Agreement in Principle) and (ii) had the support from the Creditors Committee to move away from the Creditor Choice Plan. We asked for such binding commitments and support to be delivered no later than 5:00 p.m. on October 2, 2023.

To date, you have not satisfied this request. Unfortunately, the AHG Statement merely said that the Ad Hoc Group members who signed[1] the AHG Statement "support … the filing of a chapter 11 plan which would distribute all estate assets (in kind, as applicable) to creditors and establish a litigation trust to pursue" claims against DCG and its related parties, if DCG does not support the Revised DCG Deal Plan or another plan that the Ad Hoc Group Steering Committee may negotiate. The statement falls far short of the Debtors' request because, among other things, it (i) is not an agreement to vote to accept the No Deal Plan and (ii) offers only to support the "filing" of a No Deal Plan. The promise to "support" the "filing" of a No Deal Plan offers very little because (i) the Debtors have already filed such a plan (many months ago!), and (ii) supporting the "filing" of a plan is a far cry from voting to accept a plan. We are looking to have a confirmed plan, approved by creditors, not a plan that is merely "filed" and sits on the docket. We also need to discuss the concept of a litigation trust, because we had understood creditors had been concerned about the tax implications of transferring claims to a trust. This is an important consideration, given that late-breaking "tax concerns" were one of the main reasons the Ad Hoc Group abandoned the February 10 Term Sheet.

We were also extremely disappointed that the AHG Statement again suggested, without basis, that the Creditor Choice Plan would "risk a minority of creditors accepting a sub-optimal chapter 11 plan that would bind all other creditors." This is obviously wrong, as we have told you on multiple occasions. Under a No Deal Plan, a majority of voting claims would completely control the choice between a DCG Deal Plan and a No Deal Plan. You have said, unequivocally, that the Ad Hoc Group controls a majority of claims. If the Ad Hoc Group checks the "No Deal Plan" box, it would control the choice. As professionals, we have a duty to our clients to explain the actual facts and law, and not to allow rumor or inuendo to derail the discussions.

As you and I discussed, to the extent that there are genuine concerns, we can discuss how to give the Ad Hoc Group additional comfort, including having the Debtors enter into a binding agreement to consummate the preference expressed by creditors holding the majority of claims. Even absent a binding agreement, we would expect that Judge Lane would not allow the Debtors to do a "bait and switch" by ignoring creditor preferences. We assume that even if you do not trust the Debtors, you trust Judge Lane to make the right decision. We can also discuss giving

---

[1] You have told us that you have received signatures from the creditors referenced in your October 6 e-mail but we have not received such signatures or a response to our email requesting written confirmation of your receipt.

Ad Hoc Group Letter, p. 3

the Ad Hoc Group Steering Committee consent and consultation rights with respect to the Creditor Choice Plan, in the event that it executes a plan support agreement or otherwise votes to accept the plan.

Frankly, we are puzzled by the Ad Hoc Group's stated opposition to the Creditor Choice Plan. As noted above, if you control a majority of the voting claims, you control the choice. We believe a court would have the same view. We would have thought that you would embrace the Creditor Choice Plan. Strategically, it puts you in a good position. If the Ad Hoc Group were to inform DCG that it will be choosing the No Deal Plan, as we have suggested, it would force DCG to make a decision whether to improve the Agreement in Principle or brace itself for years of litigation and regulatory scrutiny. To be sure, as I have told you on a number of occasions, DCG views your opposition to the Creditor Choice Plan as weakness, suggesting that you do not actually control the vote because, if asked, creditors (including those in the Ad Hoc Group) would express a preference for the DCG Deal Plan because they view it as better for them than a No Deal Plan.

You have said that you intend to object to the Debtors' exclusivity motion unless the Debtors agree to abandon the Creditor Choice Plan. You have threatened other litigation, including seeking to reconstitute the Creditors Committee. These threats do not worry us; we are trying to do the right thing as fiduciaries and we expect that we would succeed in litigation over exclusivity, as we succeeded in the FTX settlement litigation.[2] We are simply allowing creditors to make a choice: To the extent that they prefer the No Deal Plan, they can make that choice, and to the extent that they prefer the DCG Deal Plan, they can make that choice. There is no need for another party to propose a No Deal Plan, as you have suggested, because the No Deal Plan is already part of the Creditor Choice Plan and creditors will have the opportunity to express their preference for the No Deal Plan. We seriously doubt that a court would terminate exclusivity in these circumstances, where there is no point to allowing competing plans because the Debtors (with the support of the estates' only other fiduciary) are pursuing a plan that gives creditors a choice to vote in favor of the same plan (*i.e.*, the No Deal Plan) that you would be seeking to propose. Of course, this all assumes that we reach a deal on the debt terms underlying the DCG Deal Plan; if we do not achieve agreement on those terms, there is no DCG Deal Plan.

In our last conversation, you suggested that the Ad Hoc Group (i) will be sending a plan support agreement to be signed by the Ad Hoc Group and the Debtors committing to accept the Revised DCG Deal Plan and the No Deal Plan, and (ii) would like to meet with the Special Committee to discuss the possibility of splitting from the Creditors Committee and proposing an alternative plan to DCG together. The Special Committee has several concerns about your

---

[2] At the close of the hearing on the FTX Settlement Objection, Judge Lane expressed concern at the arguments made by the Ad Hoc Group, suggesting that the Ad Hoc Group's objections did not seem to be driven by legal standards. *See* Sept. 18, 2023 Hr'g Tr. at 114:2-4 ("But so I don't mean to be pejorative, but this sounds . . . frankly, very client-driven."); 116:20-22 ("But given what the numbers are here, again, I'm just sort of frustrated trying to understand what the Ad Hoc Group is trying to accomplish here . . ."); 123:11-16 ("I am not particularly persuaded by what I'm hearing from the Ad Hoc Group, which strikes me as a desire to want to litigate these issues to the death, but without a whole lot more or even the same level of analysis that's existed going into the settlement."). The opinion supporting Judge Lane's decision to approve the FTX Settlement includes similar language. *See Memo. of Decision*, ECF No. 781 at 19 ("Indeed, the objectors are advocating for a standard of review that is higher than that set forth in existing case law under Rule 9019.")

Ad Hoc Group Letter, p. 4

suggestion.  First, the Special Committee has made it clear that the Debtors will continue to go forward with the Creditor Choice Plan unless it loses the support of the Creditors Committee (or does not reach agreement on the debt terms).  Second, the Special Committee has no interest in participating in a meeting where, after having failed to deliver the commitments the Special Committee requested, the Ad Hoc Group just repeats what they have already said to the Special Committee and seeks to drive a wedge between the Debtors and the Creditors Committee.

We also encourage you to convey to DCG the terms of your proposed Revised DCG Deal Plan as soon as possible.  You do not need to meet with the Special Committee before conveying the request to DCG.  We are trying to move this case as fast as possible, and you have had nearly nine months to convey your requests to DCG.

Rest assured, while we may disagree about strategy, we continue to share the goal of maximizing creditor recoveries and allowing creditors to vote their preferences.

Sincerely,

*Sean A. O'Neal*

Sean A. O'Neal