Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shl

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GENESIS GLOBAL HOLDCO, LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                    United States Bankruptcy Court

12                    One Bowling Green

13                    New York, NY  10004

14

15                    October 24, 2023

16                    11:24 AM

17

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: ALIANNA PERSAUD

Page 2

1    HEARING re OMNIBUS HEARING

2

3    HEARING re Doc. #831 Second Amended Notice Of Agenda

4

5    HEARING re Doc. #775 Motion To Authorize Debtors To Enter

6    Into New Lease Of Real Property And For Related Relief

7

8    HEARING re Doc. #770 Application For Final Professional

9    Compensation For Randall J. Newsome, Mediator, Period:

10   5/1/2023 To 8/29/2023, Fee: $57,000.00, Expenses: $9,593.09

11

12   HEARING re Doc. #684 Application For Interim Professional

13   Compensation / First Interim Application Of Seward & Kissel

14   LLP, Special Litigation Counsel To The Official Committee of

15   Unsecured Creditors Period: 3/30/2023 To 5/31/2023, Fee:

16   $111,247.50, Expenses: $1,854.36

17

18   HEARING re Doc. #785 Third Motion To Extend Exclusivity

19   Period For Filing A Chapter 11 Plan And Disclosure Statement

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 3

1   A P P E A R A N C E S :

2

3   CLEARY GOTTLIEB STEEN HAMILTON LLP

4        Attorneys for the Debtors

5        One Liberty Plaza

6        New York, NY 10006

7

8   BY:  SEAN A. O'NEAL

9        SABRINA ASHA BREMER

10       CHRISTIAN RIBEIRO

11

12   WHITE CASE

13       Attorneys for the Official Committee of Unsecured

14       Creditors

15       1221 Avenue of the Americas

16       New York, NY 11020

17

18   BY:  J. CHRISTOPHER SHORE

19       PHILIP ABELSON

20

21

22

23

24

25

Page 4

1  HUGHES HUBBARD REED LLP

2      Attorneys for Gemini Trust Company, LLC, as Agent

3      One Battery Park Plaza

4      New York, NY 10004

5

6  BY:  ANSON B. FRELINGHUYSEN

7

8  PROSCAR ROSE LLP

9      Attorneys for Ad Hoc Group of Genesis Lenders

10      11 Times Square

11      New York, NY 10036

12

13  BY:  BRIAN ROSEN

14

15  BROWN RUDNICK LLP

16      Attorneys for Fair Deal Group

17      Seven Times Square

18      New York, NY 10036

19

20  BY:  KENNETH AULET

21

22

23

24

25

Page 5

1    UNITED STATES DEPARTMENT OF JUSTICE

2         Attorneys for the U.S. Trustee

3         201 Varick Street, Suite 1006

4         New York, NY 10014

5

6    BY:  GREG M. ZIPES

7

8    WEIL, GOTSHAL MANGES LLP

9         Attorneys for Digital Currency Group, Inc.

10        767 Fifth Avenue

11        New York, NY 10153

12

13   BY:  JESSICA LIOU

14

15   SEWARD KISSEL LLP

16        Attorneys for Official Committee of Unsecured Creditors

17        One Battery Park Plaza

18        New York, NY 10006

19

20   BY:  JOHN R. ASHMEAD

21

22

23

24

25

1    LATHAM WATKINS

2        Attorneys for Foreign Representatives of Three Arrows

3        Capital

4        1271 Avenue of the Americas

5        New York, NY 10020

6

7    BY:  ADAM GOLDBERG

8

9

10   ALSO PRESENT:

11   DEANDRA FIKE

12   BRADLEY LENOX

13   GREGORY LANDEGGER

14   JEFFREY D. SAFERSTEIN

15   DAVID SCHWARTZ

16   MIKE LEGGE

17   NEGISA BALLUKU

18   JADE DYER-KENNEDY

19   ASHLYN GALLAGHER

20   UDAY GORREPATI

21   TAYLOR HARRISON

22   MIRANDA HATCH

23   DIETRICH KNAUTH

24   KEN LUKASZEWSKI

25   JACK MASSEY

1   AKIKO MATSUDA

2   KYLE MCKUHEN

3   RICHARD CHESTER MINOTT

4   TYLER OKADA

5   KATIE ROSS

6   SAMIRA SARAN

7   JORDAN SAZANT

8   RODNIKA CARTER

9   PETER J. SPROFERA

10  CATHY TA

11  GEMMA TUNG

12  MICHAEL WEINBERG

13  LILY YARBOROUGH

14  JOHN ZAKY

15

16

17

18

19

20

21

22

23

24

25

1                P R O C E E D I N G S

2            THE COURT:  All right.  So with that, we're

3      returning to the 11 o'clock calendar.  Thank you, everyone,

4      for your patience as you sat through the end of the 10

5      o'clock calendar and learned more about state court

6      proceedings and how to get a judgment.

7            And so, we're here for Genesis Global Holdco LLC,

8      a Chapter 11 case.  It's jointly administered.  We'll start

9      this morning's hearing, as we always do, by getting

10     appearances.  I recognize there are people in the courtroom

11     and there are no doubt people on the phone as well.  And so

12     let's start by getting appearances from debtor's counsel.

13            MR. O'NEAL:  Your Honor, Sean O'Neal, Cleary

14     Gottlieb on behalf of the debtors.

15            THE COURT:  All right.  Good morning.  And from

16     the official committee?

17            MR. SHORE:  Good morning, Your Honor.  Chris Shore

18     from White and Case here with my partner, Phil Abelson.

19            THE COURT:  All right.  Good morning.  And from

20     Gemini?

21            MR. FRELINGHUYSEN:  Good morning, Your Honor.

22     Anson Frelinghuysen, Hughs Hubbard Reed, Gemini Trust

23     Company LLC.

24            THE COURT:  All right, good morning.  And from the

25     ad hoc group?

Page 9

1               MR. ROSEN:  Good morning, Your Honor, Brian Rosen,

2       Proscar Rose, on behalf of the ad hoc group.

3               THE COURT:  On behalf of the fair deal group?

4               MR. AULET:  Good morning, Your Honor, Kenneth

5       Aulet of Brown Rudnick for the fair deal group.

6               THE COURT:  All right.  On behalf of the United

7       States Trustee's Office?

8               MR. ZIPES:  Greg Zipes with the US Trustee's

9       Office.  Good morning.

10              THE COURT:  Good morning.  On behalf of the joint

11      liquidators of Three Arrows Capital?

12              MR. GOLDBERG:  Good morning, Your Honor, Adam

13      Goldberg of Latham Watkins on behalf of the joint

14      liquidators.

15              THE COURT:  Good morning.  There are obviously, as

16      there always are, quite a few other appearances.  There's

17      been an evolving situation on a number of the matters that

18      were on the calendar for today.  So you all are better in

19      touch with who may want to speak or need to speak at today's

20      hearing.  So with that, I'll throw it open to any other

21      appearances and I'll start with the folks in the courtroom.

22      So let's anyone else in the courtroom wishes to enter an

23      appearance?

24              MS. LIOU:  Yes.  Good morning, Your Honor, Jessica

25      Liou from Weil Gotshal Manges on behalf of digital currency

Page 10

1    group.

2            THE COURT:  All right, good morning.  Any other

3    party who's here in the courtroom who needs to make an

4    appearance?  All right.  Any other party who's on Zoom who

5    needs to make an appearance?

6            MR. RIBEIRO:  Good morning, Your Honor.  Christian

7    Ribeiro, Cleary Gotlieb, counsel for the debtors along with

8    my colleague, Sabrina Bremer, Cleary Gotlieb, as well.

9            THE COURT:  All right, good morning.  Anyone else?

10           MR. ASHMEAD:  Good morning, Your Honor, John

11   Ashmead of Seward Kissel.  I'm here behalf of my firm, which

12   is special counsel to the official committee.

13           THE COURT:  All right, good morning.  Anyone else?

14   All right.  So I have a copy of, I guess it's the second

15   amended agenda.  And the change from the first amended

16   agenda is to turn this into a hybrid hearing so that folks

17   could come here this morning.  And as I understand it, some

18   things on the agenda have changed over time.  So I thought

19   maybe we could level set by having debtor's counsel explain

20   what's on what's not on.  And we can start with, with that.

21           And let me, before Mr. O'Neal chimes in, let me

22   make sure everybody on Zoom can hear us all in the

23   courtroom.

24           MR. RIBEIRO:  Yes, Your Honor, sounds good here.

25           THE COURT:  All right.  Thank you very much.  To

Page 11

```
 1    bore you with more information than you want to know, the

 2    microphones here in the courtroom are for amplification in

 3    the courtroom.  They are not Zoom microphones.  So we have

 4    separate micros for that.  And occasionally that has led to

 5    people who have less knowledge of technical things to, to

 6    not quite realize when we have an issue.  So -- but --

 7            MR. O'NEAL Yes.  Your Honor, it's a good

 8    introduction to me having been the one that turned the

 9    microphone off.  Apologies.

10            THE COURT:  All good.  It's perfectly fine.  There

11    but with the grace of God go I.  So, Mr. O'Neal, why don't

12    you level set for purposes of today's hearing?

13            MR. O'NEAL:  Certainly.  I believe we have a few

14    matters on the agenda.  We obviously have the exclusivity

15    motion.  And we also have a few additional matters that some

16    of the Cleary team members who are on Zoom will be

17    presenting two motions as well.

18            We are not going forward with the Three Arrows

19    Capital matters today as described in the agenda letter.  We

20    have reached an agreement in principle to resolve the Three

21    Arrows Capital claims objections and related matters.  We're

22    currently documenting that settlement.  Not prepared or able

23    at this point in time to describe the terms of that

24    settlement, but we will be doing that as soon as we, as we

25    can.
```

Page 12

1          THE COURT:  And I assume that means -- I took it

2     when I saw the agenda -- that you did need a ruling on the

3     one matter where we had arguments and where I made comments,

4     but I didn't make a formal ruling?

5          MR. O'NEAL:  Correct, Your Honor.  I believe

6     you're referring to the Rule 2004 motion.

7          THE COURT:  Correct.

8          MR. O'NEAL:  And that is correct.  It's our

9     understanding that that is not going forward at this time

10    and that there's no need for you to decide that.  Of course,

11    we are still documenting the settlement.

12         THE COURT:  I'll put a pin in it for now.  And if,

13    if it needs to be ruled on, I'll rule on it, but I will put

14    -- I'm close to being able to get an answer to you on that,

15    but I'll hold off.

16         MR. O'NEAL:  Certainly.  We have learned in this

17    case that agreement in principles do not always come to

18    fruition.  So we are hopeful that that will occur, but we

19    will find out.

20         THE COURT:  All right.  Thank you very much.  And

21    so anything else on just sort of level setting and what

22    we're here to do today?

23         MR. O'NEAL:  No, Your Honor.  I think that is, I

24    believe that -- oh, and I believe Mr. Ashmead also has his

25    fee application up for hearing as well.

1              THE COURT:  All right.  All right.  And so let me,

2      it's a good segue in terms of level setting, explain why

3      we're here for a hybrid hearing.  We've been doing largely

4      remote hearings except for when we had someone sitting in

5      the witness chair.  It was something that I thought might be

6      useful to the extent that there are times occasionally in

7      cases where it's helpful to have a chambers conference.  And

8      by chambers conference, I mean a discussion off the record.

9      Obviously, I'm not a mediator in the case, somebody else

10     would have to mediate the case and somebody else has

11     mediated part of the case because I'm the one who has to

12     decide the issues.  A chamber's conference is different.  It

13     allows the parties to talk, I think, candidly about issues

14     in a way that sometimes it's helpful.  I've used them on

15     occasion.  I don't use them a lot.  I'm always sensitive to

16     the issues about transparency and process in the sense that

17     we don't want to ever exclude somebody, a party who's a

18     party-in-interest from having a discussion about the case.

19     And so we, we don't do it that way.  But that said, I have

20     found in my experience that there are times you can have

21     much more frank conversations, outside the glare of

22     potential publicity, in a chambers conference than you can

23     have an open court hearing.  So sometimes I just -- but I'm

24     guided by the parties.  The parties know the case better

25     than, than I do.  They know the dynamics of what's going on

1   and what's not going on better than I do.  And I've

2   certainly learned that when I was a lawyer that sometimes

3   judges had bright ideas that were not necessarily in tune

4   with where the case was.  So I just make it as an

5   opportunity if people think it's helpful.  And I don't

6   require it, but sometimes, again, it does -- you might think

7   why if it's the same folks and you're not mediating and

8   you're just discussing, what's the difference?  But as a

9   practical matter, it does lead to sometimes more candid

10  conversations that can be helpful.  So I'll start off with

11  that.  I'm happy to do that here today if parties think that

12  would be useful, I'm happy to do it.  If we're going to do

13  it, I'm happy to do it at any point in the hearing: at the

14  end, at the beginning, the middle, whatever works, but I'll

15  be guided by what you all think.  And with that, Mr. O'Neal,

16  any thoughts?

17          MR. O'NEAL:  Certainly.  Your Honor, thank you for

18  the suggestion.  While it was not our suggestion, we think

19  it's an excellent idea to have a chambers conference with

20  respect to the exclusivity motion.  And we have conferred

21  with the people who are assembled in the courtroom, with

22  their representatives and I don't believe there is any

23  objection to proceeding on that basis.  What I might suggest

24  is, as a matter of efficiency, is that perhaps we can clear

25  out the calendar of the kind of contested noncontroversial

1   matters, get those completed and then perhaps we could move

2   forward with the chambers conference.  And then after that,

3   have the exclusivity motion here.

4            THE COURT:  All right.  That sounds eminently

5   sensible.  And you mentioned an important point that I did -

6   - I neglected to mention is exclusivity hearings can be a

7   particularly thorny issue in cases.  We all have had cases

8   where that becomes the flashpoint and sort of the host

9   organism, so to speak, for fights about where the case is

10  going and issues.  And it -- they are expensive and they

11  can, they're also capable of sort of repeating on a regular

12  calendar basis and so they can be very inefficient.  That's

13  it.  Everybody has their rights.  But, but the fact that

14  there are fights about exclusivity is, is one of those

15  instances that does suggest sometimes that a chambers

16  conference could potentially be useful.  So that's one of

17  the triggers.  Again, this was, was something I wanted, was

18  done at my initiative.  Not any party, nobody reached out to

19  me.  We don't talk to people about substance ex parte.  And

20  so chambers reached out and then asked that all the parties-

21  in-interest be looped in and told that that was the, the

22  thought.

23            So with that, I think, unless anyone has any other

24  ideas, let's go through the uncontested matters and get the

25  calendar cleaned up.  And then we can see where we are.  So

Page 16

1    Mr. Zipes.

2              MR. ZIPES:  Yeah.  Your Honor, my office doesn't

3    object to the chambers conference.  Just to make clear, my

4    office didn't consent one way or the other to it.  And we

5    would just recommend that the parties agree to maybe one or

6    two sentence summary of what, what happened at this.

7              THE COURT:  Yeah, we -- that's exactly right.

8    There's no, there's no desire to have what I call the Aaron

9    Burr problem -- if you've seen Hamilton -- where someone

10   feels they're outside the room where it happens and they

11   have, they're a stakeholder and those issues are important.

12   So that's exactly right.  And so I think that's a good

13   suggestion.  So with that, we can turn to the uncontested

14   part of the calendar.  And I'm not sure who I should cede

15   the podium to.

16             MS. BREMER:  Good morning, Your Honor.  Sabrina

17   Bremer from Cleary Gottlieb Steen and Hamilton for the

18   debtors.  I will be presenting the first uncontested matter

19   on the agenda, the debtor's motion for an order authorizing

20   the debtors to enter into a lease of new -- of real property

21   which was filed at ECF Number 775.

22             THE COURT:  All right.  Counsel, proceed.

23             MS. BREMER:  Thank you.  We filed one declaration

24   with this motion, the declaration from the debtor's CEO,

25   Derar Islim.  We had asked that this declaration be admitted

Page 17

1    to the record, Your Honor.

2            THE COURT:  All right.  Anyone have any objection

3    to me admitting the declaration of -- could you say the

4    first name again?

5            MS. BREMER:  Derar.

6            THE COURT:  Okay, Islim in support of this motion?

7    All right.  Hearing no response, I'm happy to receive it in

8    support of this motion.  Counsel.

9            (Islim declaration admitted)

10            MS. BREMER:  Thank you.  Thank you, Your Honor.

11    Just to briefly go over the facts, the debtors currently use

12    a commercial office space pursuant to a lease between the

13    landlord and DCG.  This lease will expire on November 30th,

14    2023, and the debtors are seeking authority to enter into a

15    new six-month lease of commercial office space.  Under this

16    new lease, Holdco will be obligated to pay $27,000 per month

17    and a security deposit also of $27,000.  The debtors

18    anticipate that under this new lease, it will result in

19    savings of approximately $18,000 for Holdco and its

20    subsidiaries.

21            The debtors believe that this is an ordinary

22    course transaction but seek authority from the Court

23    regardless.  The debtors have decided in their sound

24    business judgment that entering into the new lease is

25    necessary for the continued administration of the debtor's

Page 18

1    estate as many of the debtors employees continue to work on

2    site and the new lease will result in savings as the debtors

3    require less office space than they currently have.  We have

4    consulted with the committee on this motion and the motion

5    and the order -- proposed order reflect comments from the

6    committee and we received no formal objections.  Unless you

7    have any questions, Your Honor, we would ask that the Court

8    enter the proposed order filed with the motion.

9            THE COURT:  All right.  Thank you very much for

10   that recitation.  Any party wish to be heard on this motion?

11   All right, hearing no party either in court in person or on

12   Zoom, I'm happy to grant this motion as the request of

13   relief is an exercise of the debtor's sound business

14   judgment.  And just make sure we get an electronic version

15   of the proposed order.  And  very nice to see you, counsel,

16   pretending here today.  Thanks so much.  Next matter?

17           MS. BREMER:  Thank you.

18           MR. RIBEIRO:  Good morning, Christian Ribeiro --

19   excuse me -- Cleary Gottlieb Steen and Hamilton, counsel for

20   debtors.  The second matter on the agenda, uncontested, is

21   the first and final application of Judge Randall Newsom who

22   was the court-appointed mediator in these cases for the

23   period between May 1st and August 29th, 2023 as the Court is

24   very well aware of the debtor's filed a motion for the

25   appointment in April 2024 -- 2023.  It's (indiscernible) at

Page 19

1    ECF Number 279.  Pursuing the mediation order, Judge Newsom

2    got to work in preparing, reviewing pleadings, traveling to

3    New York City to attend two mediation sessions which were

4    scheduled, May 25th.  After numerous extensions of the

5    mediation period, Judge Newsom also presided over a two-day

6    live media mediation session on August 16th and 17th in New

7    York.  The (indiscernible) Judge Newsom seeks this relief

8    pursuant to Section 330 of the Bankruptcy Code, Order

9    (indiscernible) 52.  The application also includes certain

10   write-offs including for research, copying expenses that he

11   did not purchase through the estate.  Judge Newsom,

12   unfortunately, is not available today.  He happens to be at

13   another mediation session.  But if you have any questions on

14   the application, I'm happy to answer them for you or we can,

15   we can ask the Judge Newsom to supplement the request but

16   otherwise, we respectfully request entry of the order

17   attached as Exhibit B to the application.

18            THE COURT:  All right.  Thank you very much.  Any

19   party that wishes to be heard on this application?  All

20   right.  Hearing no response, including from the United

21   States Trustee's Office, I'm happy to grant the application.

22   The mediation has been the subject of, of some discussion

23   here in court.  Obviously, we all know it was going on with

24   the hope of moving the case forward.  And I find the

25   application is entirely appropriate under the facts and

Page 20

1  circumstances of the case and applicable law.  Thank you

2  very much, counsel.

3          MR. RIBEIRO:  Thank you, Your Honor.

4          THE COURT:  Next up?

5          MR. ASHMEAD:  Your Honor, it's John Ashmead of

6  Seward and Kissel, special litigation counsel to the

7  committee.  Our first interim fee application is the next

8  item on the agenda.  We were retained in April to provide

9  discrete services to the committee as and when directed by

10 lead counsel, White and Case.  On September 6th, Seward

11 Kissel filed its first interim application for the period of

12 March 30 to May 31 as reflected in the affidavit of service

13 at Docket Number 740.  S and K timely filed or served the

14 fee notice parties with the application notice of hearing.

15 The objection deadline was October 17th at 4 p.m.  We

16 received no formal or informal objections or comments

17 regarding the application.  Through the application --

18          MAN 1:  (indiscernible)

19          THE COURT:  Someone's got a live line.  Please,

20 people are entitled to appear on Zoom, but those privileges

21 can be revoked if it's appropriate.  Mr. Ashmead, please

22 proceed.

23          MR. ASHMEAD:  Sure.  Thank you, Your Honor.

24 Through our application, we seek reimbursement of actual and

25 necessary expenses incurred on behalf of the committee

Page 21

1    including our fees in the aggregate amount of $113,101.86.

2    We were already paid $88,998 in fees and $1854.36 in

3    expenses through the compensation period.  We understand

4    that Your Honor previously determined that at prior fee

5    application hearing that we weren't involved in to continue

6    the professional holdbacks until the final fee applications

7    are filed.  Just so, you know, our hold back amount of 20

8    percent is $24,076.86.  We filed a CNO on October 19th at

9    Docket Number 816, which contained a proposed order that we

10   shared with your chambers in Word version.  That proposed

11   order, Your Honor, is consistent with the Court's prior

12   determination on holdbacks.  So unless Your Honor has any

13   questions, we would respectfully request that you enter the

14   proposed order, which finds are 80 percent of fees and 100

15   percent of expenses are necessary and reasonable under the

16   circumstances.

17              THE COURT:  All right.  Thank you very much.  I

18   did see the certificate of no objection filed at Docket 816.

19   And so with that, let me ask if there's any party that

20   wishes to be heard on this application?

21              MR. ZIPES:  No, Your Honor.

22              THE COURT:  All right.  The US Trustee's Office in

23   court just chimed in that they did not wish to be heard.

24   Thank you for that.  Any other party?  All right.  I guess I

25   just did have one question, Mr. Ashmead, just for

Page 22

1    understanding how your firm is, is working with White and

2    Case and this is probably just a good sort of illustrative

3    way to talk about it, is there, for the categories, there's

4    a discussion about relief from stay.  It's not a significant

5    amount.  It's, it's some 8.5 hours, but I'm just trying to

6    understand the coordination of services among the two firms.

7              MR. ASHMEAD:  Of course, Your Honor.  We were

8    brought in to be available with respect to, matters with

9    respect to certain parties that could end up in litigation

10   that, unfortunately for my firm, but good for good for the

11   estate, has not ended up in litigation involving FTX and

12   certain other parties where there could ultimately depend on

13   what litigation happened in conflicts that might disable

14   White and Case, although that did not come to pass.  And

15   just so Your Honor understands, for the last four months

16   since the compensation period, I believe our total fees and

17   expenses are less than $50,000, although not submitted yet.

18             THE COURT:  All right.  Thank you.  That, that's

19   helpful.  All right.  I'm happy to grant the first interim

20   fee application of your firm at the requested amount for the

21   services for this period, finding it to be appropriate as a

22   matter of the facts and circumstances of the case and

23   applicable law.  And thank you for the information.  And we

24   can move on to the next matter.

25             MR. O'NEAL:  Your Honor --

Page 23

```
 1                  MR. ASHMEAD:  And, Your Honor, may I be excused?
 2                  THE COURT:  Absolutely.  Anybody who is here for
 3       those, the first couple of matters should definitely feel
 4       more than free to move on with the other things in their
 5       life.  Thank you.
 6                  MR. ASHMEAD:  Thank you, Your Honor.  Have a nice
 7       day.
 8                  THE COURT:  You too.
 9                  MR. O'NEAL:  Your Honor, I believe that concludes
10       the uncontested matters for today.
11                  THE COURT:  All right.
12                  MR. O'NEAL:  And so I, I believe that now we could
13       move on into the chambers conference if you wish.
14                  THE COURT:  All right.  So we have folks, I think,
15       here from all the parties who have filed papers in
16       connection with the exclusivity motion.  And I think we also
17       have other parties-in-interest who had an interest in being,
18       participating in chambers conference.  So I think we'll take
19       a break.  And so here's what I would suggest for folks on
20       the line.  The nice thing about Zoom is you can do other
21       things with your, with your life.  I will say that it's a
22       quarter to 12.  We'll, we'll start talking and one way or
23       the other if we're not done before this, I'll make sure to
24       give sort of an update at 12:15 so that people aren't sort
25       of hanging in space not knowing where we are.  So with that,
```

Page 24

1    I'm going to mute my line but keep it open so people don't

2    have to log off and log back on and thank you for

3    everybody's patience and cooperation.  All right, I think we

4    can use that room right back there.

5            (Conference in chambers)

6            THE COURT:  Hi, good afternoon.  This is Judge

7    Lane again.  I just wanted to give a brief update.  The

8    parties are still chatting about various issues.  I

9    appreciate everybody's patience who's on the phone and are

10   waiting.  Thank you very much.  I would expect we'd be about

11   another 10, 15 minutes.  So I will check back in at 12:30.

12   Again, I appreciate everybody's patience and good humor

13   about this.  Thank you very much and talk to you soon.

14           (Conference in chambers continued)

15           THE COURT:  Good afternoon.  Once again, this is

16   Judge Sean Lane in the United States Bankruptcy Court for

17   the Southern District of New York.  And we're here once

18   again in the Genesis Global Holdco LLC case.  We took a

19   break to have a chambers conference and I thought it was

20   appropriate and hopefully will be helpful to share a few

21   observations about what was discussed.

22           So first, let me share the observation that it,

23   it's very clear to me that all the professionals are

24   operating in good faith.  They're, they're trying to find a

25   path for this case to go forward for everybody.  They may

Page 25

 1   have differences of opinion about what that path is.  But I

 2   just think in a case like this where there's, there's been

 3   some rhetoric that has been occasionally  rather, a little,

 4   a bit elevated that it's important to understand that fact.

 5   I don't have any reason, I haven't seen anything in this

 6   case and I didn't see anything in our discussions now that's

 7   anything other than operating in good faith to try to figure

 8   out how to make a very challenging case work.

 9            A couple of other observations.  One is everyone

10   agrees we had some discussion about the, the filing of the

11   complaint by the New York Attorney General is a significant

12   event in this case.  It makes the degree of difficulty -- to

13   use the Olympic gymnastics term -- higher for a resolution.

14   But everything that is a challenge is also an opportunity

15   and I think the professionals in the room on behalf of all

16   clients are, are trying to view it that way.  I think

17   there's also, based on the papers that have been filed and

18   the discussions in the room, sort of an emerging consensus

19   that if, if parties can reach an agreement that works for

20   everybody, great.  That's the preferred path.  But if they

21   can't, that the No Deal Plan or some kind of a No Deal Plan

22   with the details to be determined, is an appropriate backup.

23   And people may agree, disagree, or agree about some of the

24   details of it, but I think we all have the general idea of

25   what that means.

1           And the last is sort of an observation I shared

2    with the professionals of the room when we were talking, is

3    again, I only see the part of the iceberg that's above the

4    water line.  And so I don't know the ins and outs, nor am I

5    supposed to know the ins and outs.  But it seems clear to me

6    that there had been on a couple of occasions or run up to a

7    settlement of various issues between various parties,

8    various settlements that for whatever reason that I don't

9    know, just didn't materialize.  And it's hard for me to

10   understand and it's not really my job to understand why that

11   is in terms of deal terms.  That's not what I'm talking

12   about.  But what I'm talking about is the ability for people

13   to make commitments and for the lawyers to, to come to court

14   and explain where things are.  So let me just explain it

15   from my perspective.

16           Lawyers who represent clients make representations

17   on behalf of clients.  I take those representations as the

18   position of those clients based on that lawyer's statements.

19   And so I just want to be very clear going forward, that's

20   how the system works.  If it doesn't work that way, nobody

21   can get anything done.  And it works that way for a reason,

22   so people can rely on statements made by counsel.  And so

23   for purposes of the case going forward, and frankly for this

24   case and any other case, if lawyers come up and they tell

25   me, Judge, here's where we are; this is what we're willing

Page 27

1    to do.  We agree to this; we don't agree to that.  That's

2    how I take it.  And that's how it's considered for purposes

3    of going ahead in court.  So it means that the, the tough

4    work is done before you get here in that sense and that I

5    rely on the professionals to tell me where things are.  So I

6    just want people to be very clear because there's obviously

7    lots of steps often after things are said to court, said in

8    court about papering deals and various things.  But when

9    lawyers come in and say they have deals or they have

10   agreements that's, that's significant.  And I take it on

11   that, I take it at face value.  And, otherwise we, we pretty

12   much have anarchy, not only in large cases and small cases,

13   in any case if people can't rely on the representations of

14   counsel.  So those are some of the things we talked about.

15   And, again, I think everybody's operating in good faith

16   trying to, to move a challenging case forward.  And I do

17   appreciate the hard work of, of all the attorneys who are

18   here, who are working.  Everybody is working zealously to

19   represent their client.

20          And I guess there's one last observation is the

21   folks who are here in, in this room, are lawyers that I've

22   had the pleasure of seeing in other cases.  And some, even

23   if I haven't seen, it's pretty clear that they're all very

24   good at what they do.  And that's important.  I say this in

25   Chapter 13, individual bankruptcy cases.  A lot of

Page 28

1    bankruptcy is not intuitive.  You can't necessarily figure

2    out the challenges by, by sort of saying using your common

3    sense.  I know it sounds a bit awkward to say from a

4    bankruptcy judge's point of view, but there are a lot of

5    significant things that, that are there, whether it's the

6    fact that, you know, the cost of the case comes out of

7    recoveries because they are administrative expenses.  There

8    are a lot of things.  And it's important to rely on

9    bankruptcy professionals to get a sense of what those things

10   are and how they impact your ability to move forward.

11           So I just encourage people because I know for some

12   people they are now involved in the bankruptcy.  They hoped

13   never to be involved in the bankruptcy and this is not

14   intuitive for them.  They don't want to be here.  I totally

15   understand that.  This is a problem, a challenge that we

16   face in all cases.  But I, I will say when I say in smaller

17   individual cases under Chapter 13, Chapter 7, that's why you

18   hire a lawyer.  And so I would encourage you to get, to be

19   attentive to the kinds of concerns that your lawyer

20   identifies that, that may not strike you as something that

21   you would have thought of before, before experiencing this

22   case.

23           So with that, that's where -- that's sort of some

24   of the comments that were passed along at the, at the

25   conversation we had.  Again, I thank everybody for their

Page 29

1   patience and waiting on the, on the line and Zoom here for

2   the hearing to resume.  We have one matter left which is the

3   exclusivity motion.  But before we do that, I'm happy to

4   hear from any other party who wishes to share any comment

5   from our discussions.

6           All right.  With that, I will turn the podium back

7   over to debtor's counsel.

8           MR. O'NEAL:  Thank you, Your Honor.  Sean O'Neal,

9   Cleary Gottlieb on behalf of the debtors.  We're here today

10  to request an extension of the exclusive periods for filing

11  and soliciting a plan.  We had asked for a 30-day extension

12  from today until November 22nd, 2023.

13          We believe that an extension is warranted for a

14  number of reasons.  Courts typically apply nine factors.

15  I'm not going to go through all of those nine factors, but I

16  would like to focus on three of those factors with your,

17  your court's permission: good faith progress on the plan,

18  reasonable prospects for filing a viable plan, and the

19  existence of unresolved contingencies.

20          So starting with good faith progress on the plan,

21  we have been working, and I would say tirelessly, on several

22  different work streams and several different versions of the

23  plan.  We have or had perhaps the Creditor Choice Plan,

24  which was a modified version of the Toggle Plan which was

25  intended to give creditors greater rights and protections,

Page 30

1    but ultimately to give creditors the chance to express a

2    preference between the what we call the No Deal Plan.  That

3    is a plan that does not provide for a settlement with DCG

4    and just provides that we distribute our, our assets that we

5    have available and then that would cause a litigation to be

6    made in order to recover from DCG on account of a variety of

7    different claims.  That's the No Deal Plan.  And then we

8    also had the DCG Deal Plan, which was based on the agreement

9    in principle.

10             So we have been working on that and we had tried

11   to pull together protections including, you know, exploding

12   ballots in the event that we didn't follow the creditor

13   preferences, but we've now had to put that to the side.  We

14   put the Creditor Choice Plan to the side.  And now, as we

15   said in our reply, we are focusing solely on the No Deal

16   Plan.  That No Deal Plan, as I said, would basically

17   distribute the assets that we currently have, set up a

18   process by which claims against DCG and other parties could

19   be pursued.  Importantly under this No Deal Plan is we have

20   proposed this would all be driven by a plan administrator

21   who would be appointed and selected by the creditors and

22   overseen by a new board, and an oversight committee

23   comprised of a broad range of creditors, digital asset

24   creditors, as well as dollar creditors.  And basically, the

25   plan administrator would pursue those claims.

1           Now, why did we, why did we switch from the kind

2    of the Creditor Choice Plan to the No Deal Plan?  And

3    that's, it's relatively obvious, not an easy decision, but

4    an obvious decision.  That was forced upon us by the New

5    York Attorney General's complaint.  That complaint seeks a

6    number of things, but one of the things that it seeks is to

7    prevent DCG and Gemini from doing business in New York.  And

8    what that means is sitting here today, it was difficult for

9    us to pursue a path, a plan where creditors were being asked

10   to take a seven-year credit risk.  That is the form of a

11   loan from DCG to pay over $830 million over seven years.  It

12   was difficult sitting here today for us to pursue a plan

13   that, that relied on that with this New York Attorney

14   General overhead.

15          In addition, we were not able to reach conclusion

16   with the DCG team and with the creditors committee on the

17   terms of the debt.  Now part of that's related because of

18   the, the New York Attorney General complaint.  But we were

19   unable to reach those, those terms, agreement on those

20   terms.  So that's why we have now, we have decided, we have

21   determined to pursue the No Deal Plan.

22          We've been updating that No Deal Plan over many

23   months.  Your Honor may recall that a No Deal Plan term

24   sheet was filed on Day 1 in this case.  And then in June, we

25   actually filed another, an actual No Deal Plan.  So this is

1    not a new thing for us.  It's just, it is updating it and we

2    have been soliciting comments from the creditors.  And we

3    have an intent to file that No Deal Plan as early as, as

4    tonight.

5         Now that said, I don't want folks to be confused

6    about this.  We believe that a reasonable settlement that is

7    approved by the parties is the best way to go.  We believe

8    that that will provide for greater recoveries.  And so we

9    are, we are asking the parties-in-interest, particularly DCG

10   and Gemini to work quickly because we have a closing

11   opportunity to work quickly to try to reach a conclusion on

12   a consensual deal that would be approved by the ad hoc

13   group, by the creditors committee, and by the debtors.  We

14   don't have much time to do this.  And we've been trying to

15   do it, but we cannot stop the No Deal Plan to allow these

16   discussions to end -- or to continue endlessly.  So we want

17   to put some discipline in the process and continue

18   prosecuting the No Deal Plan, including at the November 7th

19   disclosure statement hearing.

20        Aside from the plan, I think we've made other

21   progress.  We've been working tirelessly on a, on a

22   distribution model.  As Your Honor has heard before, there

23   have been intercreditor issues about a distribution model.

24   We want to be sure that we have a distribution model that

25   works and is consistent with the bankruptcy code for the No

Page 33

1    Deal Plan.

2         We want to try to maximize in-kind distributions

3    while also recognizing the parameters of the bankruptcy

4    code.

5         In addition, we've been engaged in pretty intense

6    litigation with Three Arrows Capital liquidators.  The goal

7    there was to try to move as quickly as possible.  In the

8    event that we weren't able to settle the issue, we wanted to

9    be able to have a judgment in time for us to, to obtain our

10   confirmation timeline.

11        And, you know, we are also very happy to announce,

12   as we announced yesterday in our agenda letter, that we've

13   reached an agreement in principle with Three Arrows Capital

14   and I mentioned that earlier today.

15        So we have made a fair amount of progress even

16   outside of, of the plan.  And I think even if you just look

17   at reaching an agreement in principle on Three Arrows

18   Capital alone, some would say that that would justify an

19   extension of exclusivity.

20        In terms of whether or not we have a viable plan,

21   at this point, the plan that we are pursuing is the No Deal

22   Plan.  And as I said, we're trying to file that as early as

23   tonight.  I've already described the content of that plan at

24   a high level.  It's exactly the kind of plan in terms of

25   purpose, you know, that I think the ad hoc group and others

Page 34

1    are seeking.  There are going to be disagreements around

2    certain aspects of that plan, but the basic gist of it, as

3    I've described, distributing assets that we have, pursuing

4    litigation against DCG and other parties, all under the

5    supervision of a plan administrator, a new board, and an

6    oversight committee, all appointed and comprised of creditor

7    representatives.  We're not even looking for control over

8    that process.

9            We do believe that terminating exclusivity at this

10   point in time would be bad.  We're pursuing exactly the kind

11   of plan that the objectors would pursue.  That is the, the

12   No Deal Plan.  We do believe that giving that to a

13   nonfiduciary at this point in time would be destabilizing

14   and expensive and confusing for creditors and really

15   ultimately serve no purpose because we are pursuing a No

16   Deal Plan.

17           And again, I just want to be clear that we want to

18   continue to encourage the parties to settle.  We think it's

19   incumbent upon DCG and Gemini to clear out the New York

20   Attorney General complaint issues and any other regulatory

21   issues that may arise.  Even in a litigation process, even

22   under the No Deal Plan, that needs to be resolved because

23   otherwise, the estates will just be in a race against the

24   regulators.  We will have a wasting asset potentially.  So

25   regardless of whether we do No Deal Plan or settlement,

Page 35

1    those issues need to be resolved.

2             I think the last point I would like to talk about

3    is just unresolved contingencies.  We have made progress on

4    some of the big unresolved contingencies, right?  We had the

5    FTX issue and the settlement that we reached.  We moved a

6    claim or set of claims from 3.6 billion down to 1.75.  And

7    now we have the agreement in principle with Three Arrows

8    Capital.  But there remains unresolved contingencies.  And

9    one of the big ones, Your Honor, is potential disputes with

10   Gemini and obviously potential disputes with DCG.

11            We've spent so much time in this court about the

12   disputes with DCG but we haven't spent a lot of time about

13   disputes with Gemini.  And here the, the main unresolved

14   contingency there is that back in August of 2022, Genesis

15   delivered approximately 31 million shares of GBTC shares.

16   That's Gray Scale Trust BTC shares.  It's kind of a proxy

17   for BTC, but not exactly.  It's a trust that holds BTC.  We

18   delivered those shares and at the time that we delivered

19   those shares, they were delivered to Gemini as agent for all

20   of the earn users.

21            When we put the gates up, that is when we paused

22   withdrawals and redemptions on November 16th, that is

23   exactly the moment that Gemini purported to foreclose on

24   those GBTC shares.  At that time, I think approximate value

25   of the shares was 284 million.  Fast forward a few months

Page 36

1    later, we had tried during -- right after November 16th, to

2    reach a conclusion with our creditors and see if we could

3    actually avoid this bankruptcy process through some kind of

4    consensual deal.  We weren't able to do that.  And so we

5    filed on January 19th.

6           At the time that we filed the cases on January

7    19th, those GBTC shares were worth, valued -- and it's just

8    a market value -- were valued at 354 million.  So they moved

9    from 284 million to 3 54 million.  Today, those shares which

10   continue to be held by Gemini, if you use Friday's prices,

11   are valued at $731 million.  So as you can see, that is

12   about a $450 million increase from the foreclosure date.

13          And as we've always said, from Day 1, if you look

14   at the first day declarations and some of the materials we

15   filed, we've always disputed that foreclosure.  We think

16   that that was not a proper foreclosure, that a foreclosure

17   did not occur, and that Gemini continues to hold those

18   shares.  They have not distributed those shares to the

19   earned users.  They are holding on to those shares.  So we

20   don't think there has actually been a foreclosure and this

21   is in contrast to, to what others in the case have done.

22          So we say this, Your Honor, because this is an

23   unresolved contingency that we're going to have to deal with

24   probably in conjunction with or prior to confirmation.  And

25   you'll be hearing more about that I'm sure, not only from

1      us, but from Gemini's counsel as well.

2              So I would, I just want to, you know, I don't

3      think we've spent a lot of time on that and I don't think

4      that people understand all of the facts underlying what I

5      just said.  But we need to resolve that as well.  It's not

6      something that's going to happen overnight.  We've been at

7      this since really January trying to resolve those issues.

8      And Your Honor may recall that in the February term sheet as

9      part of that, what we did is we agreed, now this a non-

10     binding agreement, but the agreement in principle that was

11     followed with the Court said that we would use the petition

12     date value, not the foreclosure date value.  Roughly what?

13     70 million, I think, change between the petition date and

14     the alleged foreclosure date.  So we agreed that we would

15     use the petition date and then at that point in time, Gemini

16     was going to put $100 million into the into the deal.  But

17     only for earn users, just to be clear.

18              And so we have had lots of discussions and we've

19     been, this was part of the mediation process.  We were not

20     able to reach a conclusion and we'll continue working on

21     this, but we do need time, Your Honor, to do that.

22              So, with that, I think that that really concludes

23     our presentation.  We believe those three factors and all of

24     the other factors suggests that really an extension of the

25     exclusive period at least for 30 days -- I mean, honestly,

Page 38

1    I'd like more, but we're not going to ask for more at this

2    point in time -- for 30 days from, from today is

3    appropriate.

4              THE COURT:  All right, thank you very much.  Let

5    me hear from the committee, the official committee, and then

6    I'll hear from the parties who filed objections.

7              MR. SHORE:  Thank you, Your Honor.  Chris Shore

8    from White and Case on behalf of the official committee.  As

9    noted in our papers last night, we support a very limited

10   extension of exclusivity, essentially a two-week extension

11   to bridge us to the November 7th disclosure statement

12   hearing.  I'd like to make two points and be very brief and

13   then discuss what we see as the proposed path.

14             First, building on comments Your Honor started

15   with, the import of the AG action.  Like it or not -- and

16   people generally don't like it, and some people do -- the

17   bankruptcy court is a court of limited jurisdiction as the

18   Supreme Court keeps saying and it is really adept at dealing

19   with dollars and cents issues.  It gets harder when a party

20   appears in a case, like the AG who has filed a proof of

21   claim, but also starts actions in other courts, when they

22   don't have dollars and cents at issues.  And the bankruptcy

23   court and bankruptcy processes tend to become more difficult

24   by orders of magnitude when having to deal with parties who

25   don't have dollars and cents at issue.  And it rises in

Page 39

1    other cases as well.  It makes it even harder when the

2    party, who doesn't have an economic stake in the outcome,

3    purports to speak on behalf of those who do have an economic

4    stake in the outcome.  And as I'll explain in my second

5    point, there's no doubt that if the AG prevailed on the AG

6    action, every creditor will do worse in the context of

7    distributions out of Genesis.

8           Let me explain that.  My second point, there are

9    only two paths out of this case and they need to be resolved

10   immediately.  One is a consensual path and as Mr. O'Neal

11   just explained, a consensual path without the AG on board is

12   exceedingly difficult because people are going to have to

13   take tail risk on DCG and Gemini's continued operations in

14   order to have an effectuated settlement.  Neither of them

15   have a sufficient liquidity right now to make any of these

16   payments or make all of the payments necessary on the

17   effective date of the plan.

18          I've said it before and I'll say it again, the

19   deal that's on the table right now does not have creditor

20   support.  DCG and Gemini together in conjunction would have

21   to come up with hundreds of millions of more dollars and

22   we're going to have to get the AG on board with that

23   resolution.  There should be no reason why a party who's

24   purporting to speak on behalf of victims would reject the

25   victim's own consensual agreements to resolve their claims

Page 40

1    in a difficult situation.

2           The other path out is the litigation plan, but to

3    be clear -- and the reason we're talking about a short

4    extension -- a litigation plan would mean or a No Deal Plan

5    would mean a distribution of cash and crypto on hand to the

6    extent permissible because the AG has taken, requested that

7    certain actions not be permitted like the distribution of

8    all coin and other crypto they believe to be a security.  So

9    it is unclear what an initial distribution would be.

10          Then there would be a literal race to judgment

11   between the debtors here in their suit against DCG and the

12   AG in their suit against DCG with that judgment needing to

13   be obtained and executed on before the AG prevails on its

14   claims.  And by the way, everybody is speaking the same

15   language about the wrongs committed by DCG and Gemini.  So

16   it's not like one party has a monopoly on the result.  But

17   that, that's what the litigation plan is.  But if we're

18   going to a litigation plan, we might as well get started

19   because that action is filed.  And we have an index number.

20   No RJI has been filed, so we don't know the judge is, but

21   that, that process is going to move forward.  So creditors,

22   to protect themselves, need to move forward.

23          That's why here's the four-part proposed plan that

24   we, we kind of see being occasioned by this exclusivity

25   hearing.  I think debtors have to get on file immediately

Page 41

1    the No Deal Plan.  That is a plan that's currently supported

2    by creditors.  That is up for a disclosure statement hearing

3    on November 7th.  And in the absence of any change in the

4    status quo, we need to get that up and out as quickly as

5    possible.

6            The word came up and it comes up always in

7    exclusivity hearings, I don't know why, but tirelessly,

8    nobody ever uses that word in any other context, but it

9    always gets applied to efforts.  But truly here, the main

10   parties-in-interest: the debtors, the committee, the ad hoc

11   groups of creditors, DCG, and Gemini need to work tirelessly

12   to get to a deal if one can get done.

13           Third, we show up on November 7th.  One of two

14   things happens.  One, everybody or some large group of

15   people get up and read into the record the deal in principle

16   with DCG and/or Gemini, the state of the art at that point

17   as to what they are willing to do outside of a No Deal Plan.

18   As Your Honor expressed, that will bind people to some

19   extent.  People are going to have to be very clear about

20   what the material terms are, what the conditions precedent

21   are.  Obviously resolution of the AG action may be a

22   condition.  So it doesn't have to be fully baked, but Your

23   Honor needs to be able to have at that point a record as to

24   whether or not a plan is -- a settlement plan is viable or

25   not viable and whether the creditors wishes are not being

Page 42

1    satisfied and whether the debtors are or not using

2    exclusivity as a sword.  All of those factors.

3           If on November 7th, parties don't show up with the

4    settlement that they're willing to read into the record with

5    sufficient support to cause the status quo to change, then

6    we just go forward on the disclosure statement hearing on

7    the No Deal Plan.  The debtors will have, in the interim,

8    made additional modifications to the disclosure statement,

9    but we'll hear or Your Honor can hear any objections that

10   exist to  the disclosure statement with respect to the No

11   Deal Plan.  At that point, I think the exclusivity hearing

12   becomes a nonissue because you'll have a deal on file that

13   the debtors are prosecuting with the support of the

14   creditors.  And if there is a deal in principle, subject to

15   documentation, we may have to do one additional adjournment

16   of the disclosure statement with sufficient time to allow a

17   plan to be amended, documentation to be done, with plan

18   supplements to follow.  And again, I think exclusivity

19   becomes less of an issue because in that deal we posited,

20   there is the support of the debtors, the UCC, the ad hoc

21   creditor groups, DCG and/or Gemini with a path to move

22   forward.

23           But terminating exclusivity today in the context

24   of what has happened and the consequences to these debtors'

25   estates with the additional layer of complexity with

Page 43

1    multiple plans being on file, it should wait two weeks.  And

2    if we can get a deal done, great.  And if not, as I said,

3    we've got a plan that seems to be supported by everybody

4    other than DCG and Gemini.  And they'll have whatever

5    objections they have at the disclosure statement hearing to

6    the No Deal Plan.

7              THE COURT:  Thank you very much.

8              MR. SHORE:  You're welcome.

9              THE COURT:  All right.  Let me hear from the

10   objectors.  So I'll start with the ad hoc group.

11             MR. ROSEN:  Good afternoon, Your Honor, Brian

12   Rosen, Proskauer Rose, on behalf of the ad hoc group.  Your

13   Honor, as we make very clear in our papers, the ad hoc group

14   represents approximately $2.4 billion worth of claims

15   against the debtors.  These are a combination of USD and

16   crypto or digital-asset-based claims as I think were the

17   words that were used by Mr. O'Neal.

18             Your Honor, it's been that group that has been

19   really working very, very hard the last few months to try

20   and address the ongoing demands of both the debtors and the

21   UCC to put forth a viable plan that is acceptable to the

22   creditor constituencies.  In that regard, Your Honor, one of

23   the most telling points was to try and reach closure on

24   something called the distribution model, which was

25   referenced by Mr. O'Neal.  And many, many hours were

Page 44

1  undertaken to bring closure because of the difference of

2  perspectives of USD and crypto-based creditors as to what

3  they would be entitled to in either a deal or a no deal

4  situation.

5         And, as we included in our papers, we believe that

6  -- we know that there has been an agreement by the USD and

7  crypto-based creditors on both a deal and no deal basis.  I

8  know that the debtors made comment in their papers that

9  there was no understanding on a no deal scenario, but that's

10  incorrect, Your Honor.  As far as we know, and we represent

11  the creditors who have said that we have reached an

12  agreement, the dispute, unfortunately, has been raised by

13  questions that have been brought to the forefront by the

14  debtors and potentially the UCC, though we're not even sure

15  about that.  But clearly the debtors professionals are

16  suggesting that it's not something that they would agree to.

17  But I just want to be clear that the creditors have agreed

18  on what the distribution should be between dollar-based and

19  crypto-based claims.

20         It's because of the fact that this is a

21  liquidation.  It's a liquidating plan, Your Honor, and the

22  debtors are but caretakers in this situation.  They really

23  need to listen to what the creditors have been seeking

24  throughout the entire process.  The creditors, led by the ad

25  hoc group, have been making it very, very clear that -- and

Page 45

1    certainly we filed something with the court, Your Honor --

2    that the agreement in principle with DCG reached by the

3    debtors and the UCC was not something that the creditors, as

4    a whole, was supported.  And it was based upon that, Your

5    Honor, that we undertook to try and come up with something

6    that would be acceptable to creditors.

7            We labored long and hard to try and come up with

8    what we referred to as the revised proposal and that we've

9    included in our documentation that we filed in the

10   objection, Your Honor.  And it was that revised proposal

11   that we have already submitted to DCG.  There's been

12   comments made in the debtor's papers about nonbinding

13   agreements.  And what we've tried to do there, Your Honor,

14   is tell the debtors and tell the UCC that based upon

15   statements of support that we got from all of our

16   constituency, they would not support the Toggle Plan or now

17   rebranded as the Creditor Choice Plan and that they wanted

18   to go forward in the event that there was no deal with DCG

19   on a litigation only plan.

20           I don't know whether or not it's been our

21   pleadings, our statements, our efforts to try and reach

22   closure or it's the New York AG complaint that they cite to,

23   that caused the debtor to morph over to the no-deal

24   scenario.  But we're happy that they have.  At the same

25   time, though, Your Honor, we have been advocating for an

Page 46

1    agreement with DCG to the extent that one can be reached.

2    And we, of course, have left to the debtors at this point in

3    time whether or not we could ultimately reach closure with

4    Gemini although the creditor group as a whole, and I'm sure

5    the UCC, has its perspective as to whether or not something

6    could be reached with Gemini.

7            But, Your Honor, our greatest concern with respect

8    to the motion which is currently before you today, is, are

9    we going to go forward or is there going to be another lapse

10   or is there going to be -- and I'll use the word that we've

11   talked about before -- a backtracking here?  We want to make

12   sure that there isn't.  We want to terminate exclusivity

13   today.  The debtor has told us that they're prepared to file

14   a No Deal Plan today or this evening and we support that.

15   And we've, in fact, given comments to that proposal and most

16   of our comments, Your Honor, have been to illuminate the

17   fact that the debtors are mere caretakers and that

18   everything here is really creditor-dependent.

19           And in that regard, Your Honor, we've even

20   suggested that the ad hoc group be co-proponents of that

21   plan because we wanted to make sure that the debtors

22   understood that the creditors are supportive of a No Deal

23   Plan if one can be reached.  And we believe, Your Honor,

24   that addresses the exclusivity issue.  There is no reason to

25   continue the process if the debtor is prepared to file a

Page 47

1    plan that has creditor support right now.  That is the way

2    we should be going, Your Honor.  We should not be extending

3    for 30 days more.  We should not even be extending, as Mr.

4    Shore suggests, two weeks more.

5            I understand that there's a very, very small

6    window here to try and reach closure with DCG and Gemini.

7    We support that.  We've tried that process.  We know we're

8    waiting to hear back from DCG with respect to our proposal

9    that we gave them, Your Honor.  But if, in fact, we move

10   forward on a joint proponent plan, that takes care of the

11   exclusivity issue.  We're moving forward on the No Deal

12   Plan.  If, in fact, something is done that promotes a

13   settlement of all parties, of course we will support that

14   because that is what we've already given to the debtors.

15   That's already what we've given to the UCC.  That's already

16   what we've given to DCG.

17           So Your Honor on that basis, we would say, please

18   do not extend further, whether it's two weeks or 30 days, or

19   30 days or two weeks.  Don't do it.  The creditors' voices

20   have been heard.  They say they want to be involved in this

21   process.  Let's terminate exclusivity on the filing today

22   and let the debtors file that plan or, more importantly, let

23   us be co-proponents of that plan which deals with the

24   exclusivity issue.  Thank you, Your Honor.

25           THE COURT:  All right.  Thank you very much.  Let

Page 48

1    me hear from the other objecting party.

2            MR. AULET:  Good afternoon, Your Honor, Kenneth

3    Aulet of Brown Rudnick for the fair deal group.  Your Honor,

4    we are pretty happy with where things are today.  We are

5    very gratified to learn that the debtors are prepared to

6    file a No Deal Plan that everybody can support.

7    Unfortunately, it wasn't filed today.

8            There are details that matter in a No Deal Plan

9    and we want to see what it is in that plan and make sure

10   that there's nothing hidden that we can't support.  But for

11   one of those issues, I was very gratified to hear that the

12   debtors are not seeking control of the post-litigation

13   trust.  I just like to reiterate Mr. Rosen's comments that

14   we could have had a No Deal Plan on file that everybody

15   could support.  And I wish we had that today to avoid this

16   hearing.

17           That said, to avoid repeating anything Mr. Rosen

18   said, to the extent that the Court is inclined to extend

19   exclusivity, we would also urge that it be for a very short

20   time.  A plan should be on file this week.  Tonight would be

21   great as long as it's a plan that all creditors are going to

22   support.  We don't want to be here on November 7th arguing

23   about details about who should control the liquidating trust

24   or anything else like that.

25           If we have such a plan, great.  Let's go forward

Page 49

1     on November 7th.  And when it comes to a DCG deal -- and we

2     signed on to the proposal made by the ad hoc group on what a

3     deal with DCG could look like that would, we would support -

4     - we would not urge the Court to allow a further extension

5     on November 7th to get to a deal, however.  We think that

6     this needs to be put on a really tight clock.  DCG can hit

7     the bid by November 7th, get a deal that everybody can

8     support, and get something that can be put on file with

9     broad support with -- for a deal with DCG.

10            And if there's no deal with DCG, we are prepared,

11    as Mr. Rosen's group is, to go to litigation.  Obviously,

12    the New York Attorney General's action complicates things,

13    but we do not believe that it makes litigation a worse

14    outcome here.  We are prepared if DCG does not hit the bid,

15    to go forward with litigation and believe that that would be

16    the value maximizing solution here.

17            So in that respect, we urge the Court, if the

18    Court is inclined to grant an extension of exclusivity, that

19    it be conditioned on the filing of a No Deal Plan no later

20    than the end of this month and it be extended only to

21    November 7th when, if the plan is not broadly acceptable to

22    the creditor body, we can have one final, hopefully,

23    exclusivity hearing.  Thank you, Your Honor.

24            THE COURT:  Thank you very much.  Any other party

25    that wishes to be heard that has not yet been heard?

1          MR. FRELINGHUYSEN:  Yes.  Thank you, Your Honor.

2     Anson Frelinghuysen, Hughes Hubbard and Reed, for Gemini

3     Trust Company.  We've covered already the exclusivity.  I

4     want to address some of the comments made by other counsel

5     regarding what we see is an enormous gating issue to any

6     plan moving forward, which is the determination of the size

7     of Gemini's deficiency claim.

8          Mr. O'Neal talked about half of the collateral

9     which valued at 730-ish million dollars.  There's another

10    half of the collateral as well, another 32 million shares of

11    GBTC, another 730-ish million dollars altogether or close to

12    $1.5 billion of collateral that's at issue and needs to be

13    resolved for any distribution plan to move forward.

14         Mr. Rosen, Mr. O'Neal have both discussed the

15    existence of distribution plans and distribution agreements.

16    Those have not been addressed with Gemini or agreed to with

17    Gemini, even though Gemini represents somewhere between a

18    third and a quarter of the entire estate's claimant

19    population by value and 99 percent of its claimants by

20    number.

21         These, these parties that are advancing a plan

22    right now that are seeking either exclusivity or to be joint

23    proponents are advancing a plan that funnels value away from

24    retail lenders, the Gemini lenders, and directly towards

25    institutional lenders that they represent.  It is not an

Page 51

1   acceptable outcome for Gemini.  And it's one that we'll

2   fight very hard.  We've been working for months to -- with

3   the debtors primarily -- to reach a resolution with respect

4   to the collateral.  We've not reached a resolution and we

5   expect that it's likely going to require judicial

6   determination.

7           I was glad to hear Mr. O'Neal say that we would be

8   doing that on a schedule concurrent with plan confirmation.

9   That sounds like the right schedule.  We'll be engaging with

10  him on that and with the court on that as well.  I think

11  that covers everything, Your Honor.  Thank you.

12          THE COURT:  All right.  Thank you very much.  With

13  that, any other party that wishes to be heard?

14          MR. O'NEAL:  Your Honor, if I could just close it

15  out if you don't mind.  I would just say just in, in terms

16  of the statements of Gemini's counsel with respect to

17  another bucket of GBTC shares, this was the reference I had

18  spoken about, the shares that were delivered in August and

19  then allegedly foreclosed upon in November.  I think counsel

20  is referring to an additional bucket of GBTC shares that

21  were never delivered in November.  There was a, there was a

22  pledge agreement that was drafted, but the pledge agreement

23  provided that the pledge would only apply upon delivery of

24  those shares.  And those shares were never delivered.  And

25  if we had delivered those shares in November, you would also

Page 52

1    have before you, Your Honor, an avoidance action to seek to

2    avoid the delivery of those shares because that would have

3    been on an account of an antecedent debt.

4           So we have different views on that.  We don't

5    think that the -- I think if you look at their proof of

6    claim, I think they characterize that additional 31 million

7    shares is held within a constructive trust.  And I think we

8    all know when we go toward the constructive trust argument,

9    what that normally means in bankruptcy court.  So we'll,

10   we'll leave that one to the side.  That's an issue for

11   another day.

12          But I, I do want to also make it clear, because

13   it's important because people are listening, nobody's trying

14   to take value from anybody.  Nobody's trying to take value

15   from the earn users.  We're fiduciaries.  We have an

16   obligation, as does the committee, to maximize creditor

17   recoveries for all creditors.  And we have a bona fide

18   dispute about how you treat the value of the collateral.

19   And so, we'll deal with that later.  That's not an issue for

20   today, but I did just want to, to make those quick remarks.

21          I'm not going to respond to other things.  There's

22   always a lot of he said/she said.  So we'll just kind of

23   leave that to the side for now.  But I do want to say, Your

24   Honor, that we believe we really need 30 days.  We believe

25   that just extending it to November 7th isn't going to do

Page 53

1   much for us because then on November 7th, we'll just be

2   having the same exact argument we're having today.  People

3   can always terminate exclusivity, right?  People can file a

4   motion and they can seek to terminate exclusivity.  But,

5   Your Honor, I don't want to have to spend the estate

6   resources doing another set of motions, having another set

7   of objections for just a two-week extension.  It does not,

8   to us, seem to be a good use of, of the estate resources.

9   If folks want to try to terminate, they can try to terminate

10   and we can hear that on the, on the seventh.  I think that's

11   also a waste of time, but there's no reason to just give us

12   such a short time frame.  We are at this pivotal moment in

13   this case.  Either way, we have to resolve the New York

14   Attorney General issues.  Mr. Shore, as Mr. Shore said, it's

15   equally relevant in the litigation world as it is in the

16   settlement world.  We urge the parties to use the next two

17   weeks to try to get to a deal.  But in the meantime, let's

18   not argue over exclusivity.  Let's try to get to a plan

19   that's either -- we can continue the No Deal Plan.  We will

20   continue the No Deal Plan.  We'll file it tonight.  We can

21   do that.  But in the meantime, we urge everybody to continue

22   discussions on the settlement and to do that very quickly

23   because this train is moving and this train will be at the

24   station on November 7th and it's going to be a No Deal Plan.

25   So parties have only certain amount of time to try to reach

1    a settlement.  Thank you.

2              THE COURT:  Thank you.  All right.  I appreciate

3    all the papers that were filed and all the argument of

4    counsel and I'm prepared to make a ruling.  I won't spend

5    much time on the standard, which you all know, but I'll just

6    summarize briefly the determination for cause to extend

7    exclusivity under Section 1121(d) is a fact-specific inquiry

8    and the Court has broad discretion extending or terminating

9    exclusivity.  See, for example, the most cited case on this,

10   In Re Borders Group Inc, 460 B.R. 818, 821 through 22,

11   (Bankr. S.D.N.Y. 2011).  Among the factors that are looked

12   at in determining whether to grant an extension of

13   exclusivity are the three that were highlighted here:

14   existence of good faith progress towards reorganization,

15   whether debtor has demonstrated reasonable progress for

16   filing a viable plan, and the third is whether unresolved

17   contingency exists.  The other ones that I think are pretty

18   relevant here is the one on the size and complexity of the

19   case and whether the debtor is paying its bills and whether

20   it's made progress in negotiations with creditors and the

21   amount of time that's elapsed.  So those are also cited in

22   the Borders case, which is cited In Re Adelphia

23   Communications Corporation, 352 B.R. 578 at 587 (Bankr.

24   S.D.N.Y 2006).

25             So the filing of the pleadings here demonstrate

Page 55

1    progress towards reorganization and also relevant to the

2    prospects of filing a viable plan and coordinate and

3    cooperation among the estate and creditors.  That is the

4    debtors started out with a plan, small "p", in their initial

5    motion and by the time they filed their reply, had moved to

6    the No Deal Plan.  And they have abandoned their efforts for

7    whatever reason and people can take -- some people could

8    take credit and maybe it's the New Yorker Attorney General,

9    maybe it's the advocacy of various ad hoc groups, but it's

10   on -- it doesn't -- I don't need to decide that.  What I can

11   see though is that the debtors have decided to proceed on a

12   path as a backdrop that everybody can get behind.

13           And that's significant.  In fact, everybody who

14   just objected got up and said we support the No Deal Plan

15   and we're happy to see it here.  There may be some

16   differences on the details, but the objecting parties were

17   both happy to see it go forward.  There was a request to

18   say, well, let's get that filed before the of the month.  I

19   have the commitment stated on the record that it's going to

20   get filed this week.  So that's progress.

21           There's obviously also other progress.  We've

22   talked about the FTX settlement and the Three Arrows

23   settlement, so there's clearly been progress.  The No Deal

24   Plan demonstrates reasonable prospects for filing a viable

25   plan.  There are unresolved contingencies.  We've all been

1  talking about them.  We know what they are.  And I'm not

2  going to repeat the recitation of them from the parties.

3          It's clearly a complex and large case.  It's clear

4  that there's sufficient time needed, I think, to file the No

5  Deal Plan.  And so I think it really comes down to whether

6  the debtor is seeking an extension of exclusivity to

7  pressure creditors to submit to the debtor's reorganization

8  demands.  I think that the change to a focus on the No Deal

9  Plan, I think should resolve concerns about that.  It should

10  lower the blood pressure for people in the room when they're

11  negotiating.  Obviously, everybody agrees, we should leave

12  open the possibility of a more global resolution.  I would -

13  - I'm not going to waste my oxygen explaining why that's a

14  good idea because you all know it.  I think you've all said

15  it.

16          Now I will agree that this needs to happen

17  quickly.  And so at this point, we're sort of parsing time

18  frames that are all short.  My general approach in these

19  circumstances is to grant the amount that people are getting

20  behind here, November 7th, and then see where we are.  I'm

21  not anxious to wait -- waste estate resources.  So what I

22  will do is grant the debtors and the parties' ability to, if

23  there is a need for additional time at that point, to make

24  an oral application.  You all have the papers.  You've all

25  explained your reasoning.  You can supplement that orally at

Page 57

1    the hearing on November 7th depending on where we are.  No

2    need to, to spend any more time and money.  And that means

3    that there really isn't a whole lot of downside to going

4    ahead November 7th with the disclosure statement with the No

5    Deal Plan.

6            If there are substantive issues on the No Deal

7    Plan, there are substantive issues on the No Deal Plan.

8    we'll deal with them in the fullness of time.  But everybody

9    agrees that that's the right step to take.

10           So a couple of things that I wanted to address

11   that were comments that were made.  One is, again, to loop

12   back to the notion that I think everybody here is operating

13   in good faith.  I think the fact that the debtors have --

14   are here where they are today based on the comments that

15   have been made, I think, is evidence of that.  I know for a

16   lot of folks, there's significant financial hardship to be

17   creditors here.  This is a sad reality of a lot of

18   bankruptcies, but the fact that it happens in a lot of

19   bankruptcies doesn't make it easier or any less significant

20   or painful in this one.  And so we're all sensitive to that.

21           That said, it is my experience that litigation

22   that is far flung in multiple jurisdictions among multiple

23   parties in different lawsuits is, is not necessarily and

24   usually not the best result.  That doesn't mean you have to

25   settle.  Sometimes people settle; sometimes they don't.  And

1   there's lots of reasons for that.  I'm not here to judge

2   that.  I'm just here to urge the parties to continue to work

3   as hard as they can in good faith to try to reach a

4   resolution that can be presented at the November 7th

5   hearing.  I would suspect that that would be a, a good

6   result.  A settlement does mean everybody has to say ouch a

7   bit, but we are all mindful that the cost of continued

8   litigation in forums here and elsewhere will be borne by the

9   estate and it means it's borne by the creditors.  And these

10  are novel issues, which means it's interesting for me as a

11  judge to write opinions, but it means it's expensive for you

12  all to litigate.

13          So I certainly  urge people -- I think I'm

14  preaching to the choir based on the comments here today --

15  to continue to work as hard as possible in terms of trying

16  to reach a resolution.  And progress here in this case, I

17  don't know exactly how that will impact the New York

18  Attorney General case, but I, I can't imagine it will do

19  anything but improve the prospect of that litigation, either

20  being resolved or being handled in a more efficient and

21  streamlined manner.  It can only help.  And I think with the

22  New York Attorney General's office here, I think they would

23  say the same thing because after all, if we're talking about

24  getting resolution among creditors for the current

25  circumstance, it just has to help by definition.

1         So you all hold the pen, though, right?  You all

2    have control of, of the narrative right now.  The Attorney

3    General case is recently filed.  It's in its infancy.  And

4    like all litigation, it's uncertain.  This case has

5    progressed quite far.  You all have had a lot of

6    discussions.  And at this point, I'm hopeful that there's a

7    path forward that can make real meaningful progress for all

8    constituencies in the case.

9         So there was a mention about wanting to make sure

10   that going forward or backtracking here, I think everybody

11   shares that concern.  But again, I'm happy to make myself

12   available in any way I can to help in any way I can short of

13   I'm not here to mediate the case.  That's not my job.

14   Somebody else was doing that.  And but to the extent that

15   people think a conversation would be helpful, I'm happy to

16   make myself available.  And even if it's something as simple

17   as saying, we want to essentially alert the Court where,

18   where we are or what commitments we're willing to make so

19   that everybody's clear on the record where people stand.

20        So I do think that proceeding on November 7th

21   resolves concerns, I think, that still exist here.  Again, I

22   understand the estate not wanting to spend more time on

23   filing papers, and so I'm going to relieve you of that

24   burden.  We'll handle it at the hearing because essentially

25   I'll be getting that update anyway from folks and can make a

Page 60

1    call based on the standards.  So no need to, to kill any

2    more trees or waste any more ink on that.  You all are very

3    good at what you do and I have every confidence you can

4    update me in real time on that on the seventh.

5              And so with that, I think, those are, those are my

6    comments and that's my ruling to extend exclusivity up to

7    and including November 7th without prejudice for the debtors

8    seeking additional time as is appropriate.  And I will say

9    as a practical matter, the debtors do need to file the New

10   Deal Plan -- I'm sorry, the No Deal Plan.  And that needs to

11   happen.  So it's clear that some additional time is

12   necessary and I think the time up through the seventh is

13   entirely appropriate for all the reasons that have been

14   discussed here on the record today.  Give me a minute to

15   check my notes to see if there's anything else I wanted to

16   address.

17             Okay.  I think that covers it.  I'm happy to

18   address any more specific issues that anybody thinks would

19   be helpful to address, but I think for purposes of making a

20   ruling on exclusivity, that covers it.

21             MR. O'NEAL:  Your Honor, Sean O'Neal, Cleary

22   Gottlieb on behalf of the debtors.  In terms of the

23   exclusive period for the, for the solicitation, what is the

24   date for that?  I think November 7th is clearly the

25   exclusivity for plan filing.  Is there, what is the --

Page 61

1           THE COURT:  I don't have a calendar in front of

2    me.  I think it's two weeks.  Right?  Yeah.  So do you have

3    a suggestion?  It's probably good to be absolutely

4    positively clear on the record about this.

5           MR. O'NEAL:  December 7th.

6           THE COURT:  All right.  December 7th sounds

7    appropriate to me.  Is that -- Mr. Rosen?

8           MR. ROSEN:  Your Honor, that's fine.  They had

9    asked for 30 days after the November 22.  So --

10          THE COURT:  Yeah, I couldn't remember what was in

11   the papers.  Thank you for assist.

12          MR. ROSEN:  Pearl Harbor Day is fine with me, Your

13   Honor.

14          THE COURT:  That's probably not something I want

15   to invoke here today.  I'm very confident that we're moving

16   in the other direction.

17          MR. ROSEN:  Your Honor, I did have a process

18   point.

19          THE COURT:  Sure.

20          MR. ROSEN:  Our, our pleadings, Your Honor, were

21   not only an objection, but it was also a cross-motion to

22   terminate exclusivity.

23          THE COURT:  That will be carried as well.

24          MR. ROSEN:  That's fine.  I just wanted to be

25   clear.

Page 62

1          THE COURT:  Yeah.  No, that's fair.  Again, what

2   I'm trying to do is preserve everybody's rights without

3   anybody spending any additional time or money on this that

4   might be otherwise spent in a more productive way.

5          MR. ROSEN:  Thank you, Your Honor.

6          THE COURT:  All right.  Thank you.

7          MR. FRELINGHUYSEN:  It's just a scheduling --

8   Anson Frelinghuysen for Gemini Trust Company -- just a

9   scheduling matter on when we need to oppose the disclosure

10  statement if it's going to be published today for a hearing

11  on November 7th, what's the timing for objections?

12          MR. O'NEAL:  I believe that's already been set,

13  Your Honor.  It's one week before the hearing.

14          THE COURT:  So that's the usual time.

15          MR. FRELINGHUYSEN:  And usually we have more time

16  though, with the disclosure statement.  It usually is filed

17  three weeks ahead, not two weeks ahead.

18          MR. O'NEAL:  There has been a disclosure statement

19  on file.  We're updating, we're amending the existing --

20          THE COURT:  I would think given where we are that

21  a week should work because, again, I'm trying to free up

22  time for people to focus on other things, but I'd say a

23  week.  And then so is November 7th a Wednesday --

24          MR. FRELINGHUYSEN:  It's a Tuesday.

25          THE COURT:  Tuesday.

1          MR. O'NEAL:  October 31st is the existing date for

2     the objection deadline.

3          MR. FRELINGHUYSEN:  Also Tuesday.

4          THE COURT:  Also Tuesday.

5          MR. O'NEAL:  We're filing today.

6          THE COURT:  All right.  So the filing today and

7     then the reply would be --

8          MR. FRELINGHUYSEN:  I don't, I think we'd have to

9     -- we had correspondence with your chambers on this.  Let us

10    just a second.  I think we have that in here.

11         THE COURT:  Sure.  That's why I'm asking you.  I

12    know there's been some back and forth, but I confess, I

13    haven't, I'm not completely up to date on that.

14         MR. FRELINGHUYSEN:  I'm, I'm hoping that one of

15    the associates who may be listening to these proceedings

16    will be sending me an email.

17         THE COURT:  All right.  Well, also we can just

18    pick something that makes sense now.  So if it's Tuesday,

19    one thing to do is to close the business on Friday.  Monday

20    gets a little dicey just because I don't quite know what the

21    rest of the week looks like.  And I try not to infringe

22    anybody's weekend, although I recognize that's probably a

23    bit of an artificial concern in the sense that you all --

24         MR. O'NEAL:  So, Your Honor, the 3rd at 5 p.m.,

25    would that be --

Page 64

1              THE COURT:  Is that the Friday?

2              MR. O'NEAL:  Yes.

3              THE COURT:  Yeah, that's fine.  Absolutely fine.

4              MR. FRELINGHUYSEN:  Thank you, Your Honor.

5              THE COURT:  Nothing better to do with the weekend

6       than to read about exclusivity.  Oh, wait a minute.  Oh,

7       yeah.  Even better.  Even better.

8              MAN 2:  Your Honor, that's how we've spending our

9       weekends.

10             THE COURT:  All right.  Any other housekeeping

11      matter or frankly anything at all to address here today?

12      All right.  Again, I appreciate folks all the time and

13      effort and thought that's gone into this.  Again, I am

14      heartened by the very professional and candid good faith

15      discussions among all the parties.  I am cautiously

16      optimistic that you all can make good progress between now

17      and November 7th.  And I will leave you with one thought.

18      It is much better to create the results you want than to

19      leave it to other forces.  So with that, the Court is

20      adjourned.  Thank you very much.  Good to see you all in

21      person.

22             (Whereupon these proceedings were concluded at

23      1:44 PM)

24

25

1                         I N D E X

2

3                         RULINGS

4                                              Page      Line

5    Leasing real estate                       18        12

6

7    Judge Newsom application                  19        21

8

9    Seward Kissel fee application             22        19

10

11   Exclusivity                               60        6

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 66

1                  C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  October 25, 2023

[& - 88,998]                                                    Page 1

| & | |
|---|---|
| **&** 2:13 | |

**1**

**1** 20:18 31:24 36:13
**1,854.36** 2:16
**1.5** 50:12
**1.75.** 35:6
**10** 8:4 24:11
**100** 21:14 37:16
**10004** 1:13 4:4
**10006** 3:6 5:18
**10014** 5:4
**10020** 6:5
**10036** 4:11,18
**1006** 5:3
**10153** 5:11
**11** 2:19 4:10 8:3,8
**11020** 3:16
**111,247.50** 2:16
**1121** 54:7
**113,101.86.** 21:1
**11501** 66:23
**11:24** 1:16
**12** 23:22 65:5
**12151** 66:7
**1221** 3:15
**1271** 6:4
**12:15** 23:24
**12:30** 24:11
**13** 27:25 28:17

**15** 24:11
**16th** 19:6 35:22 36:1
**17th** 19:6 20:15
**18** 65:5
**18,000** 17:19
**1854.36** 21:2
**19** 65:7,9
**19th** 21:8 36:5 36:7
**1:44** 64:23
**1st** 18:23

**2**

**2** 64:8
**2.4** 43:14
**20** 21:7
**2004** 12:6
**2006** 54:24
**201** 5:3
**2011** 54:11
**2022** 35:14
**2023** 1:15 17:14 18:23,25 29:12 66:25
**2024** 18:25
**21** 65:7
**22** 54:10 61:9 65:9
**22nd** 29:12
**23-10063** 1:3
**24** 1:15
**24,076.86.** 21:8
**25** 66:25
**25th** 19:4
**27,000** 17:16 17:17

**279** 19:1
**284** 35:25 36:9
**29th** 18:23

**3**

**3** 36:9
**3.6** 35:6
**3/30/2023** 2:15
**30** 20:12 29:11 37:25 38:2 47:3,18,19 52:24 61:9
**300** 66:22
**30th** 17:13
**31** 20:12 35:15 52:6
**31st** 63:1
**32** 50:10
**330** 19:8 66:21
**352** 54:23
**354** 36:8
**3rd** 63:24

**4**

**4** 20:15
**450** 36:12
**460** 54:10

**5**

**5** 63:24
**5/1/2023** 2:10
**5/31/2023** 2:15
**50,000** 22:17
**52** 19:9
**54** 36:9
**57,000.00** 2:10
**578** 54:23
**587** 54:23

**6**

**6** 65:11
**60** 65:11
**684** 2:12
**6th** 20:10

**7**

**7** 28:17
**70** 37:13
**730** 50:9,11
**731** 36:11
**740** 20:13
**767** 5:10
**770** 2:8
**775** 2:5 16:21
**785** 2:18
**7th** 32:18 38:11 41:3,13 42:3 48:22 49:1,5,7,21 52:25 53:1,24 56:20 57:1,4 58:4 59:20 60:7,24 61:5,6 62:11,23 64:17

**8**

**8.5** 22:5
**8/29/2023** 2:10
**80** 21:14
**816** 21:9,18
**818** 54:10
**821** 54:10
**830** 31:11
**831** 2:3
**88,998** 21:2

**9**

**9,593.09**   2:10

**99**   50:19

**a**

**aaron**   16:8
**abandoned**
  55:6
**abelson**   3:19
  8:18
**ability**   26:12
  28:10 56:22
**able**   11:22
  12:14 31:15
  33:8,9 36:4
  37:20 41:23
**above**   26:3
**absence**   41:3
**absolutely**   23:2
  61:3 64:3
**acceptable**
  43:21 45:6
  49:21 51:1
**account**   30:6
  52:3
**accurate**   66:4
**action**   38:15
  39:6 40:19
  41:21 49:12
  52:1
**actions**   38:21
  40:7
**actual**   20:24
  31:25
**actually**   31:25
  36:3,20

**ad**   4:9 8:25 9:2
  32:12 33:25
  41:10 42:20
  43:10,12,13
  44:24 46:20
  49:2 55:9
**adam**   6:7 9:12
**addition**   31:15
  33:5
**additional**
  11:15 42:8,15
  42:25 51:20
  52:6 56:23
  60:8,11 62:3
**address**   43:20
  50:4 57:10
  60:16,18,19
  64:11
**addressed**
  50:16
**addresses**
  46:24
**adelphia**   54:22
**adept**   38:18
**adjourned**
  64:20
**adjournment**
  42:15
**administered**
  8:8
**administration**
  17:25
**administrative**
  28:7
**administrator**
  30:20,25 34:5

**admitted**   16:25
  17:9
**admitting**   17:3
**advancing**
  50:21,23
**advocacy**   55:9
**advocating**
  45:25
**affidavit**   20:12
**afternoon**   24:6
  24:15 43:11
  48:2
**ag**   38:15,20
  39:5,5,11,22
  40:6,12,13
  41:21 45:22
**agenda**   2:3
  10:15,16,18
  11:14,19 12:2
  16:19 18:20
  20:8 33:12
**agent**   4:2 35:19
**aggregate**   21:1
**agree**   16:5
  25:23,23 27:1
  27:1 44:16
  56:16
**agreed**   37:9,14
  44:17 50:16
**agreement**
  11:20 12:17
  25:19 30:8
  31:19 33:13,17
  35:7 37:10,10
  44:6,12 45:2
  46:1 51:22,22

**agreements**
  27:10 39:25
  45:13 50:15
**agrees**   25:10
  56:11 57:9
**ahead**   27:3
  57:4 62:17,17
**akiko**   7:1
**alert**   59:17
**alianna**   1:25
**alleged**   37:14
**allegedly**   51:19
**allow**   32:15
  42:16 49:4
**allows**   13:13
**altogether**
  50:11
**amended**   2:3
  10:15,15 42:17
**amending**
  62:19
**americas**   3:15
  6:4
**amount**   21:1,7
  22:5,20 33:15
  53:25 54:21
  56:19
**amplification**
  11:2
**anarchy**   27:12
**announce**
  33:11
**announced**
  33:12
**anson**   4:6 8:22
  50:2 62:8

[answer - ballots]                                                          Page 3

**answer** 12:14
19:14
**antecedent**
52:3
**anticipate**
17:18
**anxious** 56:21
**anybody** 23:2
52:14 60:18
62:3
**anybody's**
63:22
**anyway** 59:25
**apologies** 11:9
**appear** 20:20
**appearance**
9:23 10:4,5
**appearances**
8:10,12 9:16
9:21
**appears** 38:20
**applicable**
20:1 22:23
**application** 2:8
2:12,13 12:25
18:21 19:9,14
19:17,19,21,25
20:7,11,14,17
20:17,24 21:5
21:20 22:20
56:24 65:7,9
**applications**
21:6
**applied** 41:9
**apply** 29:14
51:23

**appointed**
18:22 30:21
34:6
**appointment**
18:25
**appreciate**
24:9,12 27:17
54:2 64:12
**approach**
56:18
**appropriate**
19:25 20:21
22:21 24:20
25:22 38:3
60:8,13 61:7
**approved** 32:7
32:12
**approximate**
35:24
**approximately**
17:19 35:15
43:14
**april** 18:25
20:8
**argue** 53:18
**arguing** 48:22
**argument** 52:8
53:2 54:3
**arguments**
12:3
**arrows** 6:2
9:11 11:18,21
33:6,13,17
35:7 55:22
**art** 41:16
**artificial** 63:23

**asha** 3:9
**ashlyn** 6:19
**ashmead** 5:20
10:10,11 12:24
20:5,5,21,23
21:25 22:7
23:1,6
**aside** 32:20
**asked** 15:20
16:25 29:11
31:9 61:9
**asking** 32:9
63:11
**aspects** 34:2
**assembled**
14:21
**asset** 30:23
34:24 43:16
**assets** 30:4,17
34:3
**assist** 61:11
**associates**
63:15
**assume** 12:1
**attached** 19:17
**attend** 19:3
**attentive** 28:19
**attorney** 25:11
31:5,13,18
34:20 49:12
53:14 55:8
58:18,22 59:2
**attorneys** 3:4
3:13 4:2,9,16
5:2,9,16 6:2
27:17

**august** 18:23
19:6 35:14
51:18
**aulet** 4:20 9:4
9:5 48:2,3
**authority**
17:14,22
**authorize** 2:5
**authorizing**
16:19
**available** 19:12
22:8 30:5
59:12,16
**avenue** 3:15
5:10 6:4
**avoid** 36:3
48:15,17 52:2
**avoidance** 52:1
**aware** 18:24
**awkward** 28:3

**b**

**b** 1:21 4:6
19:17
**b.r.** 54:10,23
**back** 21:7 24:2
24:4,11 29:6
35:14 47:8
57:12 63:12
**backdrop**
55:12
**backtracking**
46:11 59:10
**backup** 25:22
**bad** 34:10
**baked** 41:22
**ballots** 30:12

**balluku** 6:17
**bankr** 54:11,23
**bankruptcies**
58:18,19
**bankruptcy**
1:1,11,23 19:8
24:16 27:25
28:1,4,9,12,13
32:25 33:3
36:3 38:17,22
38:23 52:9
**based** 25:17
26:18 30:8
43:16 44:2,7
44:18,19 45:4
45:14 57:14
58:14 60:1
**basic** 34:2
**basically** 30:16
30:24
**basis** 14:23
15:12 44:7
47:17
**battery** 4:3
5:17
**beginning**
14:14
**behalf** 8:14 9:2
9:3,6,10,13,25
10:11 20:25
25:15 26:17
29:9 38:8 39:3
39:24 43:12
60:22
**believe** 11:13
12:5,24,24
14:22 17:21

22:16 23:9,12
29:13 32:6,7
34:9,12 37:23
40:8 44:5
46:23 49:13,15
52:24,24 62:12
**best** 32:7 57:24
**better** 9:18
13:24 14:1
64:5,7,7,18
**bid** 49:7,14
**big** 35:4,9
**billion** 35:6
43:14 50:12
**bills** 54:19
**bind** 41:18
**binding** 37:10
**bit** 25:4 28:3
58:7 63:23
**blood** 56:10
**board** 30:22
34:5 39:11,22
**body** 49:22
**bona** 52:17
**borders** 54:10
54:22
**bore** 11:1
**borne** 58:8,9
**bowling** 1:12
**bradley** 6:12
**break** 23:19
24:19
**bremer** 3:9
10:8 16:16,17
16:23 17:5,10
18:17

**brian** 4:13 9:1
43:11
**bridge** 38:11
**brief** 24:7
38:12
**briefly** 17:11
54:6
**bright** 14:3
**bring** 44:1
**broad** 30:23
49:9 54:8
**broadly** 49:21
**brought** 22:8
44:13
**brown** 4:15 9:5
48:3
**btc** 35:16,17,17
**bucket** 51:17
51:20
**building** 38:14
**burden** 59:24
**burr** 16:9
**business** 17:24
18:13 31:7
63:19

**c**

**c** 3:1 8:1 66:1,1
**calendar** 8:3,5
9:18 14:25
15:12,25 16:14
61:1
**call** 16:8 30:2
60:1
**called** 43:24
**candid** 14:9
64:14

**candidly** 13:13
**capable** 15:11
**capital** 6:3
9:11 11:19,21
33:6,13,18
35:8
**care** 47:10
**caretakers**
44:22 46:17
**carried** 61:23
**carter** 7:8
**case** 1:3 3:12
8:8,18 12:17
13:9,10,11,18
13:24 14:4
15:9 19:24
20:1,10 22:2
22:14,22 24:18
24:25 25:2,6,8
25:12 26:23,24
26:24 27:13,16
28:6,22 31:24
36:21 38:8,20
39:9 53:13
54:9,19,22
56:3 58:16,18
59:3,4,8,13
**cases** 13:7 15:7
15:7 18:22
27:12,12,22,25
28:16,17 36:6
39:1
**cash** 40:5
**categories** 22:3
**cathy** 7:10
**cause** 30:5 42:5
54:6

caused  45:23
cautiously
  64:15
cede  16:14
cents  38:19,22
  38:25
ceo  16:24
certain  19:9
  22:9,12 34:2
  40:7 53:25
certainly  11:13
  12:16 14:2,17
  45:1 58:13
certificate
  21:18
certified  66:3
chair  13:5
challenge
  25:14 28:15
challenges
  28:2
challenging
  25:8 27:16
chamber's
  13:12
chambers  13:7
  13:8,22 14:19
  15:2,15,20
  16:3 21:10
  23:13,18 24:5
  24:14,19 63:9
chance  30:1
change  10:15
  37:13 41:3
  42:5 56:8
changed  10:18

chapter  2:19
  8:8 27:25
  28:17,17
characterize
  52:6
chatting  24:8
check  24:11
  60:15
chester  7:3
chimed  21:23
chimes  10:21
choice  29:23
  30:14 31:2
  45:17
choir  58:14
chris  8:17 38:7
christian  3:10
  10:6 18:18
christopher
  3:18
circumstance
  58:25
circumstances
  20:1 21:16
  22:22 56:19
cite  45:22
cited  54:9,21
  54:22
city  19:3
claim  35:6
  38:21 50:7
  52:6
claimant  50:18
claimants
  50:19
claims  11:21
  30:7,18,25

35:6 39:25
  40:14 43:14,16
  44:19
cleaned  15:25
clear  14:24
  16:3 24:23
  26:5,19 27:6
  27:23 34:17,19
  37:17 40:3
  41:19 43:13
  44:17,25 52:12
  56:3 59:19
  60:11 61:4,25
clearly  44:15
  55:23 56:3
  60:24
cleary  3:3 8:13
  10:7,8 11:16
  16:17 18:19
  29:9 60:21
client  27:19
clients  25:16
  26:16,17,18
clock  49:6
close  12:14
  50:11 51:14
  63:19
closing  32:10
closure  43:23
  44:1 45:22
  46:3 47:6
cno  21:8
code  19:8
  32:25 33:4
coin  40:8
collateral  50:8
  50:10,12 51:4

52:18
colleague  10:8
combination
  43:15
come  10:17
  12:17 22:14
  26:13,24 27:9
  39:21 45:5,7
comes  28:6
  41:6 49:1 56:5
comment  29:4
  44:8
comments  12:3
  18:5 20:16
  28:24 32:2
  38:14 45:12
  46:15,16 48:13
  50:4 57:11,14
  58:14 60:6
commercial
  17:12,15
commitment
  55:19
commitments
  26:13 59:18
committed
  40:15
committee
  2:14 3:13 5:16
  8:16 10:12
  18:4,6 20:7,9
  20:25 30:22
  31:16 32:13
  34:6 38:5,5,8
  41:10 52:16
common  28:2

communicati... 54:23
company 4:2 8:23 50:3 62:8
compensation 2:9,13 21:3 22:16
complaint 25:11 31:5,5 31:18 34:20 45:22
completed 15:1
completely 63:13
complex 56:3
complexity 42:25 54:18
complicates 49:12
comprised 30:23 34:6
concern 46:7 59:11 63:23
concerns 28:19 56:9 59:21
concluded 64:22
concludes 23:9 37:22
conclusion 31:15 32:11 36:2 37:20
concurrent 51:8
condition 41:22

conditioned 49:19
conditions 41:20
conference 13:7,8,12,22 14:19 15:2,16 16:3 23:13,18 24:5,14,19
conferred 14:20
confess 63:12
confidence 60:3
confident 61:15
confirmation 33:10 36:24 51:8
conflicts 22:13
confused 32:5
confusing 34:14
conjunction 36:24 39:20
connection 23:16
consensual 32:12 36:4 39:10,11,25
consensus 25:18
consent 16:4
consequences 42:24
considered 27:2

consistent 21:11 32:25
constituencies 43:22 59:8
constituency 45:16
constructive 52:7,8
consulted 18:4
contained 21:9
content 33:23
contested 14:25
context 39:6 41:8 42:23
contingencies 29:19 35:3,4,8 55:25
contingency 35:14 36:23 54:17
continue 18:1 21:5 32:16,17 34:18 36:10 37:20 46:25 53:19,20,21 58:2,15
continued 17:25 24:14 39:13 58:7
continues 36:17
contrast 36:21
control 34:7 48:12,23 59:2
conversation 28:25 59:15

conversations 13:21 14:10
cooperation 24:3 55:3
coordinate 55:2
coordination 22:6
copy 10:14
copying 19:10
corporation 54:23
correct 12:5,7 12:8
corresponde... 63:9
cost 28:6 58:7
counsel 2:14 8:12 10:7,12 10:19 16:22 17:8 18:15,19 20:2,6,10 26:22 27:14 29:7 37:1 50:4 51:16,19 54:4
country 66:21
couple 23:3 25:9 26:6 57:10
course 12:10 17:22 22:7 46:2 47:13
court 1:1,11 8:2,5,15,19,24 9:3,6,10,15 10:2,9,13,25 11:10 12:1,7

12:12,20 13:1
13:23 15:4
16:7,22 17:2,6
17:22 18:7,9
18:11,22,23
19:18,23 20:4
20:19 21:17,22
21:23 22:18
23:2,8,11,14
24:6,15,16
26:13 27:3,7,8
35:11 37:11
38:4,17,17,18
38:23 43:7,9
45:1 47:25
48:18 49:4,17
49:18,24 51:10
51:12 52:9
54:2,8 59:17
61:1,6,10,14
61:19,23 62:1
62:6,14,20,25
63:4,6,11,17
64:1,3,5,10,19
**court's** 21:11
29:17
**courtroom**
8:10 9:21,22
10:3,23 11:2,3
14:21
**courts** 29:14
38:21
**covered** 50:3
**covers** 51:11
60:17,20
**create** 64:18

**credit** 31:10
55:8
**creditor** 29:23
30:12,14 31:2
34:6 39:6,19
42:21 43:22
45:17 46:4,18
47:1 49:22
52:16
**creditors** 2:15
3:14 5:16
29:25 30:1,21
30:23,24,24
31:9,16 32:2
32:13 34:14
36:2 40:21
41:2,11,25
42:14 44:2,7
44:11,17,23,24
45:3,6 46:22
47:19 48:21
52:17 54:20
55:3 56:7
57:17 58:9,24
**cross** 61:21
**crypto** 40:5,8
43:16 44:2,7
44:19
**currency** 5:9
9:25
**current** 58:24
**currently**
11:22 17:11
18:3 30:17
41:1 46:8

**d**

**d** 6:14 8:1 54:7
65:1
**date** 36:12
37:12,12,13,14
37:15 39:17
60:24 63:1,13
66:25
**david** 6:15
**day** 19:5 23:7
29:11 31:24
36:13,14 52:11
61:12
**days** 37:25
38:2 47:3,18
47:19 52:24
61:9
**dcg** 17:13 30:3
30:6,8,18 31:7
31:11,16 32:9
34:4,19 35:10
35:12 39:13,20
40:11,12,15
41:11,16 42:21
43:4 45:2,11
45:18 46:1
47:6,8,16 49:1
49:3,6,9,10,14
**deadline** 20:15
63:2
**deal** 4:16 9:3,5
25:21,21 26:11
30:2,7,8,15,16
30:19 31:2,21
31:22,23,25
32:3,12,15,18
33:1,21 34:12

34:16,22,25
36:4,23 37:16
38:24 39:19
40:4 41:1,12
41:15,17 42:7
42:11,12,14,19
43:2,6 44:3,3,7
44:7,9 45:18
45:23 46:14,22
47:11 48:3,6,8
48:14 49:1,3,5
49:7,9,10,19
52:19 53:17,19
53:20,24 55:6
55:14,23 56:5
56:8 57:5,6,7,8
60:10,10
**dealing** 38:18
**deals** 27:8,9
47:23
**deandra** 6:11
**debt** 31:17
52:3
**debtor** 1:9
45:23 46:13,25
54:15,19 56:6
**debtor's** 8:12
10:19 16:19,24
17:25 18:13,24
29:7 45:12
56:7
**debtors** 2:5 3:4
8:14 10:7
16:18,20 17:11
17:14,17,21,23
18:1,2,20 29:9
32:13 40:11,25

[debtors - doing]                                                                 Page 8

41:10 42:1,7
42:13,20,24
43:15,20 44:8
44:14,15,22
45:3,14 46:2
46:17,21 47:14
47:22 48:5,12
51:3 55:4,11
56:22 57:13
60:7,9,22
**december** 61:5
61:6
**decide** 12:10
13:12 55:10
**decided** 17:23
31:20 55:11
**decision** 31:3,4
**declaration**
16:23,24,25
17:3,9
**declarations**
36:14
**deficiency** 50:7
**definitely** 23:3
**definition**
58:25
**degree** 25:12
**delivered**
35:15,18,18,19
51:18,21,24,25
**delivery** 51:23
52:2
**demands** 43:20
56:8
**demonstrate**
54:25

**demonstrated**
54:15
**demonstrates**
55:24
**department**
5:1
**depend** 22:12
**dependent**
46:18
**depending**
57:1
**deposit** 17:17
**derar** 16:25
17:5
**describe** 11:23
**described**
11:19 33:23
34:3
**desire** 16:8
**destabilizing**
34:13
**details** 25:22
25:24 48:8,23
55:16
**determination**
21:12 50:6
51:6 54:6
**determined**
21:4 25:22
31:21
**determining**
54:12
**dicey** 63:20
**didn't** 12:4
**dietrich** 6:23
**difference** 14:8
44:1

**differences**
25:1 55:16
**different** 13:12
29:22,22 30:7
52:4 57:23
**difficult** 31:8
31:12 38:23
39:12 40:1
**difficulty**
25:12
**digital** 5:9 9:25
30:23 43:16
**directed** 20:9
**direction** 61:16
**directly** 50:24
**disable** 22:13
**disagree** 25:23
**disagreements**
34:1
**discipline**
32:17
**disclosure** 2:19
32:19 38:11
41:2 42:6,8,10
42:16 43:5
57:4 62:9,16
62:18
**discrete** 20:9
**discretion** 54:8
**discuss** 38:13
**discussed**
24:21 50:14
60:14
**discussing** 14:8
**discussion** 13:8
13:18 19:22
22:4 25:10

**discussions**
25:6,18 29:5
32:16 37:18
53:22 59:6
64:15
**dispute** 44:12
52:18
**disputed** 36:15
**disputes** 35:9
35:10,12,13
**distribute** 30:4
30:17
**distributed**
36:18
**distributing**
34:3
**distribution**
32:22,23,24
40:5,7,9 43:24
44:18 50:13,15
50:15
**distributions**
33:2 39:7
**district** 1:2
24:17
**doc** 2:3,5,8,12
2:18
**docket** 20:13
21:9,18
**documentation**
42:15,17 45:9
**documenting**
11:22 12:11
**doing** 11:24
13:3 31:7 51:8
53:6 59:14

[dollar - expensive]

Page 9

| | | | |
|---|---|---|---|
| **dollar** 30:24<br>44:18<br>**dollars** 38:19<br>38:22,25 39:21<br>50:9,11<br>**doubt** 8:11<br>39:5<br>**downside** 57:3<br>**drafted** 51:22<br>**driven** 30:20<br>**dyer** 6:18<br>**dynamics**<br>13:25<br><br>**e**<br><br>**e** 1:21,21 3:1,1<br>8:1,1 65:1 66:1<br>**earlier** 33:14<br>**early** 32:3<br>33:22<br>**earn** 35:20<br>37:17 52:15<br>**earned** 36:19<br>**easier** 57:19<br>**easy** 31:3<br>**ecf** 16:21 19:1<br>**economic** 39:2<br>39:3<br>**ecro** 1:25<br>**effective** 39:17<br>**effectuated**<br>39:14<br>**efficiency**<br>14:24<br>**efficient** 58:20<br>**effort** 64:13<br>**efforts** 41:9<br>45:21 55:6 | **either** 18:11<br>44:3 50:22<br>53:13,19 58:19<br>**elapsed** 54:21<br>**electronic**<br>18:14<br>**elevated** 25:4<br>**email** 63:16<br>**emerging**<br>25:18<br>**eminently** 15:4<br>**employees** 18:1<br>**encourage**<br>28:11,18 34:18<br>**ended** 22:11<br>**endlessly** 32:16<br>**engaged** 33:5<br>**engaging** 51:9<br>**enormous** 50:5<br>**enter** 2:5 9:22<br>16:20 17:14<br>18:8 21:13<br>**entering** 17:24<br>**entire** 44:24<br>50:18<br>**entirely** 19:25<br>60:13<br>**entitled** 20:20<br>44:3<br>**entry** 19:16<br>**equally** 53:15<br>**essentially**<br>38:10 59:17,24<br>**estate** 18:1<br>19:11 22:11<br>53:5,8 55:3<br>56:21 58:9 | 59:22 65:5<br>**estate's** 50:18<br>**estates** 34:23<br>42:25<br>**evening** 46:14<br>**event** 25:12<br>30:12 33:8<br>45:18<br>**everybody**<br>10:22 15:13<br>24:25 25:20<br>27:18 28:25<br>40:14 41:14<br>43:3 48:6,14<br>49:7 53:21<br>55:12,13 56:11<br>57:8,12 58:6<br>59:10<br>**everybody's**<br>24:3,9,12<br>27:15 59:19<br>62:2<br>**evidence** 57:15<br>**evolving** 9:17<br>**ex** 15:19<br>**exact** 53:2<br>**exactly** 16:7,12<br>33:24 34:10<br>35:17,23 58:17<br>**example** 54:9<br>**exceedingly**<br>39:12<br>**excellent** 14:19<br>**except** 13:4<br>**exclude** 13:17<br>**exclusive** 29:10<br>37:25 60:23 | **exclusivity**<br>2:18 11:14<br>14:20 15:3,6<br>15:14 23:16<br>29:3 33:19<br>34:9 38:10<br>40:24 41:7<br>42:2,11,18,23<br>46:12,24 47:11<br>47:21,24 48:19<br>49:18,23 50:3<br>50:22 53:3,4<br>53:18 54:7,9<br>54:13 56:6<br>60:6,20,25<br>61:22 64:6<br>65:11<br>**excuse** 18:19<br>**excused** 23:1<br>**executed** 40:13<br>**exercise** 18:13<br>**exhibit** 19:17<br>**exist** 42:10<br>59:21<br>**existence** 29:19<br>50:15 54:14<br>**existing** 62:19<br>63:1<br>**exists** 54:17<br>**expect** 24:10<br>51:5<br>**expenses** 2:10<br>2:16 19:10<br>20:25 21:3,15<br>22:17 28:7<br>**expensive**<br>15:10 34:14 |

58:11

**experience**
13:20 57:21

**experiencing**
28:21

**expire** 17:13

**explain** 10:19
13:2 26:14,14
39:4,8

**explained**
39:11 56:25

**explaining**
56:13

**exploding**
30:11

**express** 30:1

**expressed**
41:18

**extend** 2:18
47:18 48:18
54:6 60:6

**extended** 49:20

**extending** 47:2
47:3 52:25
54:8

**extension**
29:10,11,13
33:19 37:24
38:10,10 40:4
49:4,18 53:7
54:12 56:6

**extensions**
19:4

**extent** 13:6
40:6 41:19
46:1 48:18
59:14

**f**

**f** 1:21 66:1

**face** 27:11
28:16

**fact** 15:13 25:4
28:6 44:20
46:15,17 47:9
47:12 54:7
55:13 57:13,18

**factors** 29:14
29:15,16 37:23
37:24 42:2
54:11

**facts** 17:11
19:25 22:22
37:4

**fair** 4:16 9:3,5
33:15 48:3
62:1

**faith** 24:24
25:7 27:15
29:17,20 54:14
57:13 58:3
64:14

**far** 44:10 57:22
59:5

**fast** 35:25

**february** 37:8

**fee** 2:10,15
12:25 20:7,14
21:4,6 22:20
65:9

**feel** 23:3

**feels** 16:10

**fees** 21:1,2,14
22:16

**fide** 52:17

**fiduciaries**
52:15

**fifth** 5:10

**fight** 51:2

**fights** 15:9,14

**figure** 25:7
28:1

**fike** 6:11

**file** 32:3 33:22
40:25 42:12
43:1 46:13,25
47:22 48:6,14
48:20 49:8
53:3,20 56:4
60:9 62:19

**filed** 16:21,23
18:8,24 20:11
20:13 21:7,8
21:18 23:15
25:17 31:24,25
36:5,6,15 38:6
38:20 40:19,20
45:1,9 48:7
54:3 55:5,18
55:20 59:3
62:16

**filing** 2:19
25:10 29:10,18
47:21 49:19
54:16,25 55:2
55:24 59:23
60:25 63:5,6

**final** 2:8 18:21
21:6 49:22

**financial** 57:16

**find** 12:19
19:24 24:24

**finding** 22:21

**finds** 21:14

**fine** 11:10 61:8
61:12,24 64:3
64:3

**firm** 10:11
22:1,10,20

**firms** 22:6

**first** 2:13 10:15
16:18 17:4
18:21 20:7,11
22:19 23:3
24:22 36:14
38:14

**flashpoint** 15:8

**flung** 57:22

**focus** 29:16
56:8 62:22

**focusing** 30:15

**folks** 9:21
10:16 14:7
23:14,19 27:21
32:5 53:9
57:16 59:25
64:12

**follow** 30:12
42:18

**followed** 37:11

**forced** 31:4

**forces** 64:19

**foreclose** 35:23

**foreclosed**
51:19

**foreclosure**
36:12,15,16,16

36:20 37:12,14
**forefront**
44:13
**foregoing** 66:3
**foreign** 6:2
**form** 31:10
**formal** 12:4
18:6 20:16
**forth** 43:21
63:12
**forums** 58:8
**forward** 11:18
12:9 15:2
19:24 24:25
26:19,23 27:16
28:10 35:25
40:21,22 42:6
42:22 45:18
46:9 47:10,11
48:25 49:15
50:6,13 55:17
59:7,10
**found** 13:20
**four** 22:15
40:23
**frame** 53:12
**frames** 56:18
**frank** 13:21
**frankly** 26:23
64:11
**free** 23:4 62:21
**frelinghuysen**
4:6 8:21,22
50:1,2 62:7,8
62:15,24 63:3
63:8,14 64:4

**friday** 63:19
64:1
**friday's** 36:10
**front** 61:1
**fruition** 12:18
**ftx** 22:11 35:5
55:22
**fullness** 57:8
**fully** 41:22
**funnels** 50:23
**further** 47:18
49:4

**g**

**g** 8:1
**gallagher** 6:19
**gates** 35:21
**gating** 50:5
**gbtc** 35:15,24
36:7 50:11
51:17,20
**gemini** 4:2
8:20,22 31:7
32:10 34:19
35:10,13,19,23
36:10,17 37:15
39:20 40:15
41:11,16 42:21
43:4 46:4,6
47:6 50:2,16
50:17,17,24
51:1 62:8
**gemini's** 37:1
39:13 50:7
51:16
**gemma** 7:11
**general** 25:11
25:24 31:14,18

34:20 53:14
55:8 56:18
58:18 59:3
**general's** 31:5
49:12 58:22
**generally**
38:16
**genesis** 1:7 4:9
8:7 24:18
35:14 39:7
**getting** 8:9,12
56:19 58:24
59:25
**gist** 34:2
**give** 23:24 24:7
29:25 30:1
53:11 60:14
**given** 46:15
47:14,15,16
62:20
**giving** 34:12
**glad** 51:7
**glare** 13:21
**global** 1:7 8:7
24:18 56:12
**go** 11:11 15:24
17:11 24:25
29:15 32:7
42:6 45:18
46:9 48:25
49:11,15 52:8
55:17
**goal** 33:6
**god** 11:11
**going** 11:18
12:9 13:25
14:1,12 15:10

19:23 24:1
26:19,23 27:3
29:15 34:1
36:23 37:6,16
38:1 39:12,22
40:18,21 41:19
46:9,9,10 47:2
48:21 51:5
52:21,25 53:24
55:19 56:2,13
57:3 59:10,23
62:10
**goldberg** 6:7
9:12,13
**good** 8:15,17
8:19,21,24 9:1
9:4,9,10,12,15
9:24 10:2,6,9
10:10,13,24
11:7,10 13:2
16:12,16 18:18
22:2,10,10
24:6,12,15,24
25:7 27:15,24
29:17,20 43:11
48:2 53:8
54:14 56:14
57:13 58:3,5
60:3 61:3
64:14,16,20
**gorrepati** 6:20
**gotlieb** 10:7,8
**gotshal** 5:8
9:25
**gottlieb** 3:3
8:14 16:17
18:19 29:9

60:22

grace  11:11

grant  18:12
  19:21 22:19
  49:18 54:12
  56:19,22

gratified  48:5
  48:11

gray  35:16

great  25:20
  43:2 48:21,25

greater  29:25
  32:8

greatest  46:7

green  1:12

greg  5:6 9:8

gregory  6:13

group  4:9,16
  5:9 8:25 9:2,3
  9:5 10:1 32:13
  33:25 41:14
  43:10,12,13,18
  44:25 46:4,20
  48:3 49:2,11
  54:10

groups  41:11
  42:21 55:9

guess  10:14
  21:24 27:20

guided  13:24
  14:15

gymnastics
  25:13

**h**

h  1:22

half  50:8,10

hamilton  3:3
  16:9,17 18:19

hand  40:5

handle  59:24

handled  58:20

hanging  23:25

happen  37:6
  56:16 60:11

happened  16:6
  22:13 42:24

happens  16:10
  19:12 41:14
  57:18

happy  14:11
  14:12,13 17:7
  18:12 19:14,21
  22:19 29:3
  33:11 45:24
  48:4 55:15,17
  59:11,15 60:17

harbor  61:12

hard  26:9
  27:17 43:19
  45:7 51:2 58:3
  58:15

harder  38:19
  39:1

hardship  57:16

harrison  6:21

hatch  6:22

hear  10:22
  29:4 38:5,6
  42:9,9 43:9
  47:8 48:1,11
  51:7 53:10

heard  18:10
  19:19 21:20,23

32:22 47:20
  49:25,25 51:13

hearing  2:1,1,3
  2:5,8,12,18 8:9
  9:20 10:16
  11:12 12:25
  13:3,23 14:13
  17:7 18:11
  19:20 20:14
  21:5 29:2
  32:19 36:25
  38:12 40:25
  41:2 42:6,11
  43:5 48:16
  49:23 57:1
  58:5 59:24
  62:10,13

hearings  13:4
  15:6 41:7

heartened
  64:14

held  36:10 52:7

help  58:21,25
  59:12

helpful  13:7,14
  14:5,10 22:19
  24:20 59:15
  60:19

hi  24:6

hidden  48:10

high  33:24

higher  25:13

highlighted
  54:13

hire  28:18

hit  49:6,14

hoc  4:9 8:25
  9:2 32:12
  33:25 41:10
  42:20 43:10,12
  43:13 44:25
  46:20 49:2
  55:9

hold  12:15
  21:7 36:17
  59:1

holdbacks  21:6
  21:12

holdco  1:7 8:7
  17:16,19 24:18

holding  36:19

holds  35:17

hon  1:22

honestly  37:25

honor  8:13,17
  8:21 9:1,4,12
  9:24 10:6,10
  10:24 11:7
  12:5,23 14:17
  16:2,16 17:1
  17:10 18:7
  20:3,5,23 21:4
  21:11,12,21
  22:7,15,25
  23:1,6,9 29:8
  31:23 32:22
  35:9 36:22
  37:8,21 38:7
  38:14 41:18,23
  42:9 43:11,13
  43:18,22 44:10
  44:21 45:1,5
  45:10,13,25

46:7,16,19,23
47:2,9,17,24
48:2,3 49:23
50:1 51:11,14
52:1,24 53:5
60:21 61:8,13
61:17,20 62:5
62:13 63:24
64:4,8
**hope** 19:24
**hoped** 28:12
**hopeful** 12:18
59:6
**hopefully**
24:20 49:22
**hoping** 63:14
**host** 15:8
**hours** 22:5
43:25
**housekeeping**
64:10
**hubbard** 4:1
8:22 50:2
**hughes** 4:1
50:2
**hughs** 8:22
**humor** 24:12
**hundreds**
39:21
**hybrid** 10:16
13:3
**hyde** 2:25 66:3
66:8

**i**

**iceberg** 26:3
**idea** 14:19
25:24 56:14

**ideas** 14:3
15:24
**identifies**
28:20
**illuminate**
46:16
**illustrative**
22:2
**imagine** 58:18
**immediately**
39:10 40:25
**impact** 28:10
58:17
**import** 38:15
**important** 15:5
16:11 25:4
27:24 28:8
52:13
**importantly**
30:19 47:22
**improve** 58:19
**inclined** 48:18
49:18
**included** 44:5
45:9
**includes** 19:9
**including**
19:10,20 21:1
30:11 32:18
60:7
**incorrect** 44:10
**increase** 36:12
**incumbent**
34:19
**incurred** 20:25
**index** 40:19

**indiscernible**
18:25 19:7,9
20:18
**individual**
27:25 28:17
**inefficient**
15:12
**infancy** 59:3
**informal** 20:16
**information**
11:1 22:23
**infringe** 63:21
**initial** 40:9
55:4
**initiative** 15:18
**ink** 60:2
**inquiry** 54:7
**ins** 26:4,5
**instances**
15:15
**institutional**
50:25
**intended** 29:25
**intense** 33:5
**intent** 32:3
**intercreditor**
32:23
**interest** 13:18
15:21 23:17,17
32:9 41:10
**interesting**
58:10
**interim** 2:12
2:13 20:7,11
22:19 42:7
**introduction**
11:8

**intuitive** 28:1
28:14
**invoke** 61:15
**involved** 21:5
28:12,13 47:20
**involving**
22:11
**ish** 50:9,11
**islim** 16:25
17:6,9
**issue** 11:6 15:7
33:8 35:5
38:25 42:19
46:24 47:11,24
50:5,12 52:10
52:19
**issues** 13:12,13
13:16 15:10
16:11 24:8
26:7 32:23
34:20,21 35:1
37:7 38:19,22
48:11 53:14
57:6,7 58:10
60:18
**item** 20:8

**j**

**j** 2:9 3:18 7:9
**jack** 6:25
**jade** 6:18
**january** 36:5,6
37:7
**jeffrey** 6:14
**jessica** 5:13
9:24
**job** 26:10
59:13

**john** 5:20 7:14 10:10 20:5
**joint** 9:10,13 47:10 50:22
**jointly** 8:8
**jordan** 7:7
**judge** 1:23 18:21 19:1,5,7 19:11,15 24:6 24:16 26:25 40:20 58:1,11 65:7
**judge's** 28:4
**judges** 14:3
**judgment** 8:6 17:24 18:14 33:9 40:10,12
**judicial** 51:5
**june** 31:24
**jurisdiction** 38:17
**jurisdictions** 57:22
**justice** 5:1
**justify** 33:18

**k**

**k** 20:13
**katie** 7:5
**keep** 24:1
**keeps** 38:18
**ken** 6:24
**kennedy** 6:18
**kenneth** 4:20 9:4 48:2
**kill** 60:1
**kind** 14:25 25:21 31:1

33:2,24 34:10 35:16 36:3 40:24 52:22
**kinds** 28:19
**kissel** 2:13 5:15 10:11 20:6,11 65:9
**knauth** 6:23
**know** 11:1 13:24,25 19:23 21:7 26:4,5,9 28:3,6,11 30:11 33:11,25 37:2 40:20 41:7 44:6,8,10 45:20 47:7 52:8 54:5 56:1 56:14 57:15 58:17 63:12,20
**knowing** 23:25
**knowledge** 11:5
**kyle** 7:2

**l**

**labored** 45:7
**landegger** 6:13
**landlord** 17:13
**lane** 1:22 24:7 24:16
**language** 40:15
**lapse** 46:9
**large** 27:12 41:14 56:3
**largely** 13:3
**latham** 6:1 9:13

**law** 20:1 22:23
**lawsuits** 57:23
**lawyer** 14:2 28:18,19
**lawyer's** 26:18
**lawyers** 26:13 26:16,24 27:9 27:21
**layer** 42:25
**lead** 14:9 20:10
**learn** 48:5
**learned** 8:5 12:16 14:2
**lease** 2:6 16:20 17:12,13,15,16 17:18,24 18:2
**leasing** 65:5
**leave** 52:10,23 56:11 64:17,19
**led** 11:4 44:24
**ledanski** 2:25 66:3,8
**left** 29:2 46:2
**legal** 66:20
**legge** 6:16
**lenders** 4:9 50:24,24,25
**lenox** 6:12
**letter** 11:19 33:12
**level** 10:19 11:12 12:21 13:2 33:24
**liberty** 3:5
**life** 23:5,21
**likely** 51:5

**lily** 7:13
**limited** 38:9,17
**line** 20:19 23:20 24:1 26:4 29:1 65:4
**liou** 5:13 9:24 9:25
**liquidating** 44:21 48:23
**liquidation** 44:21
**liquidators** 9:11,14 33:6
**liquidity** 39:15
**listen** 44:23
**listening** 52:13 63:15
**literal** 40:10
**litigate** 58:12
**litigation** 2:14 20:6 22:9,11 22:13 30:5 33:6 34:4,21 40:2,4,17,18 45:19 48:12 49:11,13,15 53:15 57:21 58:8,19 59:4
**little** 25:3 63:20
**live** 19:6 20:19
**llc** 1:7 4:2 8:7 8:23 24:18
**llp** 2:14 3:3 4:1 4:8,15 5:8,15
**loan** 31:11

| | | | |
|---|---|---|---|
| log 24:2,2 | 38:12 39:15,16 | maximize 33:2 | micros 11:4 |
| long 45:7 48:21 | 43:13 46:11,21 | 52:16 | middle 14:14 |
| look 33:16 | 48:9 52:12,20 | maximizing | mike 6:16 |
| 36:13 49:3 | 54:4 56:23 | 49:16 | million 31:11 |
| 52:5 | 57:19 59:7,9 | mckuhen 7:2 | 35:15,25 36:8 |
| looked 54:11 | 59:11,16,18,25 | mean 13:8 | 36:9,9,11,12 |
| looking 34:7 | 64:16 | 37:25 40:4,5 | 37:13,16 50:9 |
| looks 63:21 | makes 25:12 | 57:24 58:6 | 50:10,11 52:6 |
| loop 57:11 | 39:1 49:13 | meaningful | millions 39:21 |
| looped 15:21 | 63:18 | 59:7 | mind 51:15 |
| lot 13:15 27:25 | making 44:25 | means 12:1 | mindful 58:7 |
| 28:4,8 35:12 | 60:19 | 25:25 27:3 | mineola 66:23 |
| 37:3 52:22 | man 20:18 | 31:8 52:9 57:2 | minott 7:3 |
| 57:3,16,17,18 | 64:8 | 58:9,10,11 | minute 60:14 |
| 59:5 | manges 5:8 | media 19:6 | 64:6 |
| lots 27:7 37:18 | 9:25 | mediate 13:10 | minutes 24:11 |
| 58:1 | manner 58:21 | 59:13 | miranda 6:22 |
| lower 56:10 | march 20:12 | mediated | model 32:22,23 |
| lukaszewski | market 36:8 | 13:11 | 32:24 43:24 |
| 6:24 | massey 6:25 | mediating 14:7 | modifications |
| | material 41:20 | mediation 19:1 | 42:8 |
| m | materialize | 19:3,5,6,13,22 | modified 29:24 |
| | 26:9 | 37:19 | moment 35:23 |
| m 5:6 | materials | mediator 2:9 | 53:12 |
| made 12:3 | 36:14 | 13:9 18:22 | monday 63:19 |
| 26:22 30:6 | matsuda 7:1 | members | money 57:2 |
| 32:20 33:15 | matter 1:5 | 11:16 | 62:3 |
| 35:3 42:8 44:8 | 12:3 14:9,24 | mention 15:6 | monopoly |
| 45:12 49:2 | 16:18 18:16,20 | 59:9 | 40:16 |
| 50:4 54:20 | 22:22,24 29:2 | mentioned | month 17:15 |
| 57:11,15 | 48:8 60:9 62:9 | 15:5 33:14 | 17:16 49:20 |
| magnitude | 64:11 | mere 46:17 | 55:18 |
| 38:24 | matters 9:17 | michael 7:12 | months 22:15 |
| main 35:13 | 11:14,15,19,21 | microphone | 31:23 35:25 |
| 41:9 | 15:1,24 22:8 | 11:9 | 43:19 51:2 |
| make 10:3,5,22 | 23:3,10 | microphones | morning 8:15 |
| 12:4 14:4 16:3 | | 11:2,3 | 8:17,19,21,24 |
| 18:14 23:23 | | | |
| 25:8 26:13,16 | | | |

9:1,4,9,10,12
9:15,24 10:2,6
10:9,10,13,17
16:16 18:18
**morning's** 8:9
**morph** 45:23
**motion** 2:5,18
11:15 12:6
14:20 15:3
16:19,24 17:6
17:8 18:4,4,8
18:10,12,24
23:16 29:3
46:8 53:4 55:5
61:21
**motions** 11:17
53:6
**move** 15:1
22:24 23:4,13
27:16 28:10
33:7 40:21,22
42:21 47:9
50:13
**moved** 35:5
36:8 55:5
**moving** 19:24
47:11 50:6
53:23 61:15
**multiple** 43:1
57:22,22
**mute** 24:1

**n**

**n** 3:1 8:1 65:1
66:1
**name** 17:4
**narrative** 59:2

**necessarily**
14:3 28:1
57:23
**necessary**
17:25 20:25
21:15 39:16
60:12
**need** 9:19 12:2
12:10 35:1
37:5,21 39:9
40:22 41:4,11
44:23 52:24
55:10 56:23
57:2 60:1,9
62:9
**needed** 56:4
**needing** 40:12
**needs** 10:3,5
12:13 34:22
41:23 49:6
50:12 56:16
60:10
**negisa** 6:17
**neglected** 15:6
**negotiating**
56:11
**negotiations**
54:20
**neither** 39:14
**never** 28:13
51:21,24
**new** 1:2,13 2:6
3:6,16 4:4,11
4:18 5:4,11,18
6:5 16:20
17:15,16,18,24
18:2 19:3,6

24:17 25:11
30:22 31:4,7
31:13,18 32:1
34:5,19 45:22
49:12 53:13
55:8 58:17,22
60:9
**newsom** 18:21
19:1,5,7,11,15
65:7
**newsome** 2:9
**nice** 18:15 23:6
23:20
**night** 38:9
**nine** 29:14,15
**nobody's** 52:13
52:14
**non** 37:9
**nonbinding**
45:12
**noncontrove...**
14:25
**nonfiduciary**
34:13
**nonissue** 42:12
**normally** 52:9
**noted** 38:9
**notes** 60:15
**notice** 2:3
20:14,14
**notion** 57:12
**novel** 58:10
**november**
17:13 29:12
32:18 35:22
36:1 38:11
41:3,13 42:3

48:22 49:1,5,7
49:21 51:19,21
51:25 52:25
53:1,24 56:20
57:1,4 58:4
59:20 60:7,24
61:9 62:11,23
64:17
**number** 9:17
16:21 19:1
20:13 21:9
29:14 31:6
40:19 50:20
**numerous** 19:4
**ny** 1:13 3:6,16
4:4,11,18 5:4
5:11,18 6:5
66:23

**o**

**o** 1:21 8:1 66:1
**o'clock** 8:3,5
**o'neal** 3:8 8:13
8:13 10:21
11:7,11,13
12:5,8,16,23
14:15,17 22:25
23:9,12 29:8,8
39:10 43:17,25
50:8,14 51:7
51:14 60:21,21
61:5 62:12,18
63:1,5,24 64:2
**object** 16:3
**objected** 55:14
**objecting** 48:1
55:16

**objection**
  14:23 17:2
  20:15 21:18
  45:10 61:21
  63:2
**objections**
  11:21 18:6
  20:16 38:6
  42:9 43:5 53:7
  62:11
**objectors**
  34:11 43:10
**obligated**
  17:16
**obligation**
  52:16
**observation**
  24:22 26:1
  27:20
**observations**
  24:21 25:9
**obtain** 33:9
**obtained** 40:13
**obvious** 31:3,4
**obviously** 9:15
  11:14 13:9
  19:23 27:6
  35:10 41:21
  49:11 55:21
  56:11
**occasion** 13:15
**occasionally**
  11:4 13:6 25:3
**occasioned**
  40:24
**occasions** 26:6

**occur** 12:18
  36:17
**october** 1:15
  20:15 21:8
  63:1 66:25
**office** 9:7,9
  16:2,4 17:12
  17:15 18:3
  19:21 21:22
  58:22
**official** 2:14
  3:13 5:16 8:16
  10:12 38:5,8
**offs** 19:10
**oh** 12:24 64:6,6
**okada** 7:4
**okay** 17:6
  60:17
**old** 66:21
**olympic** 25:13
**omnibus** 2:1
**once** 24:15,17
**ones** 35:9
  54:17
**ongoing** 43:20
**open** 9:20
  13:23 24:1
  56:12
**operating**
  24:24 25:7
  27:15 57:12
**operations**
  39:13
**opinion** 25:1
**opinions** 58:11
**opportunity**
  14:5 25:14

  32:11
**oppose** 62:9
**optimistic**
  64:16
**oral** 56:24
**orally** 56:25
**order** 16:19
  18:5,5,8,15
  19:1,8,16 21:9
  21:11,14 30:6
  39:14
**orders** 38:24
**ordinary** 17:21
**organism** 15:9
**ouch** 58:6
**outcome** 39:2,4
  49:14 51:1
**outs** 26:4,5
**outside** 13:21
  16:10 33:16
  41:17
**overhead**
  31:14
**overnight** 37:6
**overseen** 30:22
**oversight**
  30:22 34:6
**own** 39:25
**oxygen** 56:13

**p**

**p** 3:1,1 8:1 55:4
**p.m.** 20:15
  63:24
**page** 65:4
**paid** 21:2
**painful** 57:20

**papering** 27:8
**papers** 23:15
  25:17 38:9
  43:13 44:5,8
  45:12 54:3
  56:24 59:23
  61:11
**parameters**
  33:3
**park** 4:3 5:17
**parsing** 56:17
**part** 13:11
  16:14 26:3
  31:17 37:9,19
  40:23
**parte** 15:19
**participating**
  23:18
**particularly**
  15:7 32:9
**parties** 13:13
  13:24,24 14:11
  15:20 16:5
  20:14 22:9,12
  23:15,17 24:8
  25:19 26:7
  30:18 32:7,9
  34:4,18 38:6
  38:24 41:10
  42:3 47:13
  50:21 53:16,25
  55:16 56:2,22
  57:23 58:2
  64:15
**partner** 8:18
**party** 10:3,4
  13:17,18 15:18

18:10,11 19:19
21:19,24 29:4
38:19 39:2,23
40:16 48:1
49:24 51:13
**pass** 22:14
**passed** 28:24
**path** 24:25
25:1,20 31:9
38:13 39:10,11
40:2 42:21
55:12 59:7
**paths** 39:9
**patience** 8:4
24:3,9,12 29:1
**paused** 35:21
**pay** 17:16
31:11
**paying** 54:19
**payments**
39:16,16
**pearl** 61:12
**pen** 59:1
**people** 8:10,11
11:5 14:5,21
15:19 20:20
23:24 24:1
25:23 26:12,22
27:6,13 28:11
28:12 37:4
38:16,16 39:12
41:15,18,19
52:13 53:2,3
55:7,7 56:10
56:19 57:25
58:13 59:15,19
62:22

**percent** 21:8
21:14,15 50:19
**perfectly** 11:10
**period** 2:9,15
2:19 18:23
19:5 20:11
21:3 22:16,21
37:25 60:23
**periods** 29:10
**permissible**
40:6
**permission**
29:17
**permitted** 40:7
**persaud** 1:25
**person** 18:11
64:21
**perspective**
26:15 46:5
**perspectives**
44:2
**peter** 7:9
**petition** 37:11
37:13,15
**phil** 8:18
**philip** 3:19
**phone** 8:11
24:9
**pick** 63:18
**pin** 12:12
**pivotal** 53:12
**plan** 2:19
25:21,21 29:11
29:17,18,20,23
29:23,24 30:2
30:3,7,8,14,16
30:16,19,20,25

31:2,2,9,12,21
31:22,23,25
32:3,15,18,20
33:1,16,20,21
33:22,23,24
34:2,5,11,12
34:16,22,25
39:17 40:2,4,4
40:17,18,23
41:1,1,17,24
41:24 42:7,11
42:17,17 43:3
43:6,21 44:21
45:16,17,19
46:14,21,23
47:1,10,12,22
47:23 48:6,8,9
48:14,20,21,25
49:19,21 50:6
50:13,21,23
51:8 53:18,19
53:20,24 54:16
55:2,4,6,14,24
55:25 56:5,9
57:5,7,7 60:10
60:10,25
**plans** 43:1
50:15
**plaza** 3:5 4:3
5:17
**pleadings** 19:2
45:21 54:25
61:20
**please** 20:19,21
47:17
**pleasure** 27:22

**pledge** 51:22
51:22,23
**pm** 64:23
**podium** 16:15
29:6
**point** 11:23
14:13 15:5
28:4 33:21
34:10,13 35:2
37:15 38:2
39:5,8 41:16
41:23 42:11
46:2 56:17,23
59:6 61:18
**points** 38:12
43:23
**population**
50:19
**posited** 42:19
**position** 26:18
**positively** 61:4
**possibility**
56:12
**possible** 33:7
41:5 58:15
**post** 48:12
**potential** 13:22
35:9,10
**potentially**
15:16 34:24
44:14
**practical** 14:9
60:9
**preaching**
58:14
**precedent**
41:20

preference
  30:2
preferences
  30:13
preferred
  25:20
prejudice  60:7
prepared
  11:22 46:13,25
  48:5 49:10,14
  54:4
preparing  19:2
present  6:10
presentation
  37:23
presented  58:4
presenting
  11:17 16:18
preserve  62:2
presided  19:5
pressure  56:7
  56:10
pretending
  18:16
pretty  27:11,23
  33:5 48:4
  54:17
prevailed  39:5
prevails  40:13
prevent  31:7
previously
  21:4
prices  36:10
primarily  51:3
principle  11:20
  30:9 33:13,17
  35:7 37:10

41:15 42:14
  45:2
principles
  12:17
prior  21:4,11
  36:24
privileges
  20:20
probably  22:2
  36:24 61:3,14
  63:22
problem  16:9
  28:15
proceed  16:22
  20:22 55:11
proceeding
  14:23 59:20
proceedings
  8:6 63:15
  64:22 66:4
process  13:16
  30:18 32:17
  34:8,21 36:3
  37:19 40:21
  44:24 46:25
  47:7,21 61:17
processes
  38:23
productive
  62:4
professional
  2:8,12 21:6
  64:14
professionals
  24:23 25:15
  26:2 27:5 28:9
  44:15

progress  29:17
  29:20 32:21
  33:15 35:3
  54:14,15,20
  55:1,20,21,23
  58:16 59:7
  64:16
progressed
  59:5
promotes
  47:12
proof  38:20
  52:5
proper  36:16
property  2:6
  16:20
proponent
  47:10
proponents
  46:20 47:23
  50:23
proposal  45:8
  45:10 46:15
  47:8 49:2
proposed  18:5
  18:8,15 21:9
  21:10,14 30:20
  38:13 40:23
proscar  4:8 9:2
prosecuting
  32:18 42:13
proskauer
  43:12
prospect  58:19
prospects
  29:18 55:2,24

protect  40:22
protections
  29:25 30:11
provide  20:8
  30:3 32:8
provided  51:23
provides  30:4
proxy  35:16
publicity  13:22
published
  62:10
pull  30:11
purchase
  19:11
purported
  35:23
purporting
  39:24
purports  39:3
purpose  33:25
  34:15
purposes  11:12
  26:23 27:2
  60:19
pursuant
  17:12 19:8
pursue  30:25
  31:9,12,21
  34:11
pursued  30:19
pursuing  19:1
  33:21 34:3,10
  34:15
put  12:12,13
  30:13,14 32:17
  35:21 37:16
  43:21 49:6,8

| q |
|---|

**quarter** 23:22
  50:18
**question** 21:25
**questions** 18:7
  19:13 21:13
  44:13
**quick** 52:20
**quickly** 32:10
  32:11 33:7
  41:4 53:22
  56:17
**quite** 9:16 11:6
  59:5 63:20
**quo** 41:4 42:5

| r |
|---|

**r** 1:21 3:1 5:20
  8:1 66:1
**race** 34:23
  40:10
**raised** 44:12
**randall** 2:9
  18:21
**range** 30:23
**rather** 25:3
**reach** 25:19
  31:15,19 32:11
  36:2 37:20
  43:23 45:21
  46:3 47:6 51:3
  53:25 58:3,16
**reached** 11:20
  15:18,20 33:13
  35:5 44:11
  45:2 46:1,6,23
  51:4

**reaching** 33:17
**read** 41:15
  42:4 64:6
**real** 2:6 16:20
  59:7 60:4 65:5
**reality** 57:17
**realize** 11:6
**really** 26:10
  34:14 37:7,22
  37:24 38:18
  43:19 44:22
  46:18 49:6
  52:24 56:5
  57:3
**reason** 25:5
  26:8,21 39:23
  40:3 46:24
  53:11 55:7
**reasonable**
  21:15 29:18
  32:6 54:15
  55:24
**reasoning**
  56:25
**reasons** 29:14
  58:1 60:13
**rebranded**
  45:17
**recall** 31:23
  37:8
**receive** 17:7
**received** 18:6
  20:16
**recently** 59:3
**recitation**
  18:10 56:2

**recognize** 8:10
  63:22
**recognizing**
  33:3
**recommend**
  16:5
**record** 13:8
  17:1 41:15,23
  42:4 55:19
  59:19 60:14
  61:4 66:4
**recover** 30:6
**recoveries** 28:7
  32:8 52:17
**redemptions**
  35:22
**reed** 4:1 8:22
  50:2
**reference**
  51:17
**referenced**
  43:25
**referred** 45:8
**referring** 12:6
  51:20
**reflect** 18:5
**reflected** 20:12
**regard** 43:22
  46:19
**regarding**
  20:17 50:5
**regardless**
  17:23 34:25
**regular** 15:11
**regulators**
  34:24

**regulatory**
  34:20
**reimbursement**
  20:24
**reiterate** 48:13
**reject** 39:24
**related** 2:6
  11:21 31:17
**relatively** 31:3
**relevant** 53:15
  54:18 55:1
**relied** 31:13
**relief** 2:6 18:13
  19:7 22:4
**relieve** 59:23
**rely** 26:22 27:5
  27:13 28:8
**remains** 35:8
**remarks** 52:20
**remember**
  61:10
**remote** 13:4
**reorganization**
  54:14 55:1
  56:7
**repeat** 56:2
**repeating**
  15:11 48:17
**reply** 30:15
  55:5 63:7
**represent**
  26:16 27:19
  44:10 50:25
**representations**
  26:16,17 27:13
**representatives**
  6:2 14:22 34:7

**represents**
43:14 50:17
**request** 18:12
19:15,16 21:13
29:10 55:17
**requested**
22:20 40:6
**require** 14:6
18:3 51:5
**research** 19:10
**resolution**
25:13 39:23
41:21 51:3,4
56:12 58:4,16
58:24
**resolve** 11:20
37:5,7 39:25
53:13 56:9
**resolved** 34:22
35:1 39:9
50:13 58:20
**resolves** 59:21
**resources** 53:6
53:8 56:21
**respect** 14:20
22:8,9 42:10
46:7 47:8
49:17 51:3,16
**respectfully**
19:16 21:13
**respond** 52:21
**response** 17:7
19:20
**rest** 63:21
**result** 17:18
18:2 40:16
57:24 58:6

**results** 64:18
**resume** 29:2
**retail** 50:24
**retained** 20:8
**returning** 8:3
**reviewing** 19:2
**revised** 45:8,10
**revoked** 20:21
**rhetoric** 25:3
**ribeiro** 3:10
10:6,7,24
18:18,18 20:3
**richard** 7:3
**right** 8:2,15,19
8:24 9:6 10:2,4
10:9,13,14,25
12:20 13:1,1
15:4 16:7,12
16:22 17:2,7
18:9,11 19:18
19:20 21:17,22
21:24 22:18,19
23:11,14 24:3
24:4 29:6 35:4
36:1 38:4
39:15,19 43:9
47:1,25 50:22
51:9,12 53:3
54:2 57:9 59:1
59:2 61:2,6
62:6 63:6,17
64:10,12
**rights** 15:13
29:25 62:2
**rises** 38:25
**risk** 31:10
39:13

**rji** 40:20
**road** 66:21
**rodnika** 7:8
**room** 16:10
24:4 25:15,18
26:2 27:21
56:10
**rose** 4:8 9:2
43:12
**rosen** 4:13 9:1
9:1 43:11,12
48:17 50:14
61:7,8,12,17
61:20,24 62:5
**rosen's** 48:13
49:11
**ross** 7:5
**roughly** 37:12
**rudnick** 4:15
9:5 48:3
**rule** 12:6,13
**ruled** 12:13
**ruling** 12:2,4
54:4 60:6,20
**rulings** 65:3
**run** 26:6

**s**

**s** 3:1 8:1 20:13
**s.d.n.y** 54:24
**s.d.n.y.** 54:11
**sabrina** 3:9
10:8 16:16
**sad** 57:17
**saferstein** 6:14
**samira** 7:6
**saran** 7:6

**sat** 8:4
**satisfied** 42:1
**savings** 17:19
18:2
**saw** 12:2
**saying** 28:2
38:18 59:17
**sazant** 7:7
**scale** 35:16
**scenario** 44:9
45:24
**schedule** 51:8
51:9
**scheduled** 19:4
**scheduling**
62:7,9
**schwartz** 6:15
**sean** 1:22 3:8
8:13 24:16
29:8 60:21
**second** 2:3
10:14 18:20
39:4,8 63:10
**section** 19:8
54:7
**security** 17:17
40:8
**see** 15:25 18:15
21:18 25:6
26:3 36:2,11
38:13 40:24
48:9 50:5 54:9
55:11,15,17
56:20 60:15
64:20
**seeing** 27:22

seek 17:22 20:24 52:1 53:4
seeking 17:14 34:1 44:23 48:12 50:22 56:6 60:8
seeks 19:7 31:5 31:6
seem 53:8
seems 26:5 43:3
seen 16:9 25:5 27:23
segue 13:2
selected 30:21
sending 63:16
sense 13:16 27:4 28:3,9 63:18,23
sensible 15:5
sensitive 13:15 57:20
sentence 16:6
separate 11:4
september 20:10
serve 34:15
served 20:13
service 20:12
services 20:9 22:6,21
session 19:6,13
sessions 19:3
set 10:19 11:12 30:17 35:6 53:6,6 62:12

setting 12:21 13:2
settle 33:8 34:18 57:25,25
settlement 11:22,24 12:11 26:7 30:3 32:6 34:25 35:5 39:14 41:24 42:4 47:13 53:16,22 54:1 55:22,23 58:6
settlements 26:8
seven 4:17 31:10,11
seventh 53:10 60:4,12
several 29:21 29:22
seward 2:13 5:15 10:11 20:6,10 65:9
share 24:20,22 29:4
shared 21:10 26:1
shares 35:15 35:15,16,18,19 35:24,25 36:7 36:9,18,18,19 50:10 51:17,18 51:20,24,24,25 52:2,7 59:11
sheet 31:24 37:8

shl 1:3
shore 3:18 8:17 8:17 38:7,7 43:8 47:4 53:14,14
short 40:3 48:19 53:12 56:18 59:12
show 41:13 42:3
side 30:13,14 52:10,23
signature 66:7
signed 49:2
significant 22:4 25:11 27:10 28:5 55:13 57:16,19
simple 59:16
site 18:2
sitting 13:4 31:8,12
situation 9:17 40:1 44:4,22
six 17:15
size 50:6 54:18
small 27:12 47:5 55:4
smaller 28:16
solely 30:15
solicitation 60:23
soliciting 29:11 32:2
solution 49:16
solutions 66:20

somebody 13:9 13:10,17 59:14
someone's 20:19
sonya 2:25 66:3,8
soon 11:24 24:13
sorry 60:10
sort 12:21 15:8 15:11 22:2 23:24,24 25:18 26:1 28:2,23 56:17
sound 17:23 18:13
sounds 10:24 15:4 28:3 51:9 61:6
southern 1:2 24:17
space 17:12,15 18:3 23:25
speak 9:19,19 15:9 39:3,24
speaking 40:14
special 2:14 10:12 20:6
specific 54:7 60:18
spend 53:5 54:4 57:2 59:22
spending 62:3 64:8
spent 35:11,12 37:3 62:4

[spoken - terms]                                                Page 23

| | | | |
|---|---|---|---|
| spoken 51:18 | step 57:9 | summary 16:6 | tail 39:13 |
| sprofera 7:9 | steps 27:7 | supervision | take 23:18 |
| square 4:10,17 | stop 32:15 | 34:5 | 26:17 27:2,10 |
| stake 39:2,4 | streamlined | supplement | 27:11 31:10 |
| stakeholder | 58:21 | 19:15 56:25 | 39:13 52:14,14 |
| 16:11 | streams 29:22 | supplements | 55:7,8 57:9 |
| stand 59:19 | street 5:3 | 42:18 | taken 40:6 |
| standard 54:5 | strike 28:20 | support 17:6,8 | takes 47:10 |
| standards 60:1 | subject 19:22 | 38:9 39:20 | talk 13:13 |
| start 8:8,12 | 42:14 | 42:5,13,20 | 15:19 22:3 |
| 9:21 10:20 | submit 56:7 | 45:15,16 46:14 | 24:13 35:2 |
| 14:10 23:22 | submitted | 47:1,7,13 48:6 | talked 27:14 |
| 43:10 | 22:17 45:11 | 48:10,15,22 | 46:11 50:8 |
| started 38:14 | subsidiaries | 49:3,8,9 55:14 | 55:22 |
| 40:18 55:4 | 17:20 | supported 41:1 | talking 23:22 |
| starting 29:20 | substance | 43:3 45:4 | 26:2,11,12 |
| starts 38:21 | 15:19 | supportive | 40:3 56:1 |
| state 8:5 41:16 | substantive | 46:22 | 58:23 |
| stated 55:19 | 57:6,7 | supposed 26:5 | taylor 6:21 |
| statement 2:19 | sufficient | supreme 38:18 | team 11:16 |
| 32:19 38:11 | 39:15 42:5,16 | sure 10:22 | 31:16 |
| 41:2 42:6,8,10 | 56:4 | 16:14 18:14 | technical 11:5 |
| 42:16 43:5 | suggest 14:23 | 20:23 23:23 | tell 26:24 27:5 |
| 57:4 62:10,16 | 15:15 23:19 | 32:24 36:25 | 45:14,14 |
| 62:18 | suggested | 44:14 46:4,12 | telling 43:23 |
| statements | 46:20 | 46:21 48:9 | tend 38:23 |
| 26:18,22 45:15 | suggesting | 59:9 61:19 | term 25:13 |
| 45:21 51:16 | 44:16 | 63:11 | 31:23 37:8 |
| states 1:1,11 | suggestion | suspect 58:5 | terminate |
| 5:1 9:7 19:21 | 14:18,18 16:13 | switch 31:1 | 46:12 47:21 |
| 24:16 | 61:3 | sword 42:2 | 53:3,4,9,9 |
| station 53:24 | suggests 37:24 | system 26:20 | 61:22 |
| status 41:4 | 47:4 | | terminating |
| 42:5 | suit 40:11,12 | **t** | 34:9 42:23 |
| stay 22:4 | suite 5:3 66:22 | t 66:1,1 | 54:8 |
| steen 3:3 16:17 | summarize | ta 7:10 | terms 11:23 |
| 18:19 | 54:6 | table 39:19 | 13:2 26:11,11 |

31:17,19,20
33:20,24 41:20
51:15 58:15
60:22
**thank** 8:3
10:25 12:20
14:17 16:23
17:10,10 18:9
18:17 19:18
20:1,3,23
21:17,24 22:18
22:23 23:5,6
24:2,10,13
28:25 29:8
38:4,7 43:7
47:24,25 49:23
49:24 50:1
51:11,12 54:1
54:2 61:11
62:5,6 64:4,20
**thanks** 18:16
**thing** 23:20
32:1 58:23
63:19
**things** 10:18
11:5 23:4,21
26:14 27:5,7,8
27:14 28:5,8,9
31:6,6 41:14
48:4 49:12
52:21 57:10
62:22
**think** 12:23
13:13 14:5,6
14:11,15,18
15:23 16:12
23:14,16,18

24:3 25:2,15
25:16,24 27:15
32:20 33:16,25
34:18 35:2,24
36:15,20 37:3
37:3,13,22
40:25 42:11,18
43:16 49:5
51:10,19 52:5
52:5,6,7 53:10
54:17 56:4,5,8
56:9,14 57:12
57:13,15 58:13
58:21,22 59:10
59:15,20,21
60:5,12,17,19
60:24 61:2
62:20 63:8,10
**thinks** 60:18
**third** 2:18
41:13 50:18
54:16
**thorny** 15:7
**thought** 10:18
13:5 15:22
24:19 28:21
64:13,17
**thoughts** 14:16
**three** 6:2 9:11
11:18,20 29:16
33:6,13,17
35:7 37:23
54:13 55:22
62:17
**throw** 9:20
**tight** 49:6

**time** 10:18
11:23 12:9
32:14 33:9
34:10,13 35:11
35:12,18,24
36:6 37:3,15
37:21 38:2
42:16 45:25
46:3 48:20
53:11,12,25
54:5,21 55:5
56:4,17,23
57:2,8 59:22
60:4,8,11,12
62:3,14,15,22
64:12
**timeline** 33:10
**timely** 20:13
**times** 4:10,17
13:6,20
**timing** 62:11
**tirelessly** 29:21
32:21 41:7,11
**today** 9:18
11:19 12:22
14:11 18:16
19:12 23:10
29:9,12 31:8
31:12 33:14
36:9 38:2
42:23 46:8,13
46:14 47:21
48:4,7,15
52:20 53:2
57:14 58:14
60:14 61:15
62:10 63:5,6

64:11
**today's** 9:19
11:12
**together** 30:11
39:20
**toggle** 29:24
45:16
**told** 15:21
46:13
**tonight** 32:4
33:23 48:20
53:20
**took** 12:1
24:18
**total** 22:16
**totally** 28:14
**touch** 9:19
**tough** 27:3
**toward** 52:8
**towards** 50:24
54:14 55:1
**train** 53:23,23
**transaction**
17:22
**transcribed**
2:25
**transcript** 66:4
**transparency**
13:16
**traveling** 19:2
**treat** 52:18
**trees** 60:2
**tried** 30:10
36:1 45:13
47:7
**triggers** 15:17

true  66:4
truly  41:9
trust  4:2 8:22
    35:16,17 48:13
    48:23 50:3
    52:7,8 62:8
trustee  5:2
trustee's  9:7,8
    19:21 21:22
try  25:7 32:11
    33:2,7 43:19
    43:23 45:5,7
    45:21 47:6
    53:9,9,17,18
    53:25 58:3
    63:21
trying  22:5
    24:24 25:16
    27:16 32:14
    33:22 37:7
    52:13,14 58:15
    62:2,21
tuesday  62:24
    62:25 63:3,4
    63:18
tune  14:3
tung  7:11
turn  10:16
    16:13 29:6
turned  11:8
two  11:17 16:6
    19:3,5 22:6
    38:10,12 39:9
    41:13 43:1
    47:4,18,19
    53:7,16 61:2
    62:17

tyler  7:4
typically  29:14

u

u.s.  1:23 5:2
ucc  42:20
    43:21 44:14
    45:3,14 46:5
    47:15
uday  6:20
ultimately
    22:12 30:1
    34:15 46:3
unable  31:19
uncertain  59:4
unclear  40:9
uncontested
    15:24 16:13,18
    18:20 23:10
under  17:15,18
    19:25 21:15
    28:17 30:19
    34:4,22 54:7
underlying
    37:4
understand
    10:17 21:3
    22:6 25:4
    26:10,10 28:15
    37:4 47:5
    59:22
understanding
    12:9 22:1 44:9
understands
    22:15
understood
    46:22

undertaken
    44:1
undertook
    45:5
unfortunately
    19:12 22:10
    44:12 48:7
united  1:1,11
    5:1 9:6 19:20
    24:16
unresolved
    29:19 35:3,4,8
    35:13 36:23
    54:16 55:25
unsecured  2:15
    3:13 5:16
update  23:24
    24:7 59:25
    60:4
updating  31:22
    32:1 62:19
urge  48:19
    49:4,17 53:16
    53:21 58:2,13
usd  43:15 44:2
    44:6
use  13:15
    17:11 24:4
    25:13 36:10
    37:11,15 46:10
    53:8,16
used  13:14
    43:17
useful  13:6
    14:12 15:16
users  35:20
    36:19 37:17

52:15
uses  41:8
using  28:2 42:1
usual  62:14
usually  57:24
    62:15,16

v

value  27:11
    35:24 36:8
    37:12,12 49:16
    50:19,23 52:14
    52:14,18
valued  36:7,8
    36:11 50:9
varick  5:3
variety  30:6
various  24:8
    26:7,7,8 27:8
    55:9
veritext  66:20
version  18:14
    21:10 29:24
versions  29:22
viable  29:18
    33:20 41:24,25
    43:21 54:16
    55:2,24
victim's  39:25
victims  39:24
view  25:16
    28:4
views  52:4
voices  47:19

w

wait  43:1
    56:21 64:6

[waiting - zoom]                                                        Page 26

waiting   24:10
29:1 47:8
want   9:19 11:1
13:17 26:19
27:6 28:14
32:5,16,24
33:2 34:17,17
37:2 44:17
46:11,12 47:20
48:9,22 50:4
52:12,20,23
53:5,9 59:17
61:14 64:18
wanted   15:17
24:7 33:8
45:17 46:21
57:10 60:15
61:24
wanting   59:9
59:22
warranted
29:13
waste   53:11
56:13,21 60:2
wasting   34:24
water   26:4
watkins   6:1
9:13
way   13:14,19
16:4 22:3
23:22 25:16
26:20,21 32:7
40:14 47:1
53:13 59:12,12
62:4
we've   13:3
30:13 31:22

32:14,20,21
33:5,12 35:11
36:13,15 37:3
37:6,18 43:3
45:8,13 46:10
46:15,19 47:7
47:14,15,16
50:3 51:2,4
55:21,25 64:8
wednesday
62:23
week   38:10
48:20 53:7
55:20 62:13,21
62:23 63:21
weekend   63:22
64:5
weekends   64:9
weeks   43:1
47:4,18,19
53:17 61:2
62:17,17
weil   5:8 9:25
weinberg   7:12
welcome   43:8
white   3:12 8:18
20:10 22:1,14
38:8
willing   26:25
41:17 42:4
59:18
window   47:6
wish   18:10
21:23 23:13
48:15
wishes   9:22
19:19 21:20

29:4 41:25
49:25 51:13
withdrawals
35:22
witness   13:5
word   21:10
41:6,8 46:10
words   43:17
work   18:1 19:2
25:8 26:20
27:4,17 29:22
32:10,11 41:11
58:2,15 62:21
working   22:1
27:18,18 29:21
30:10 32:21
37:20 43:19
51:2
works   14:14
25:19 26:20,21
32:25
world   53:15,16
worse   39:6
49:13
worth   36:7
43:14
write   19:10
58:11
wrongs   40:15

| x |
| --- |
| x   1:4,10 65:1 |

| y |
| --- |
| yarborough |

yarborough
7:13
yeah   16:2,7
61:2,10 62:1

64:3,7
year   31:10
years   31:11
yesterday
33:12
york   1:2,13 3:6
3:16 4:4,11,18
5:4,11,18 6:5
19:3,7 24:17
25:11 31:5,7
31:13,18 34:19
45:22 49:12
53:13 58:17,22
yorker   55:8

| z |
| --- |

zaky   7:14
zealously
27:18
zipes   5:6 9:8,8
16:1,2 21:21
zoom   10:4,22
11:3,16 18:12
20:20 23:20
29:1