**Hearing Date: November 7, 2023, at 2:00 p.m. (ET)**
**Objection Deadline: October 31, 2023, at 4:00 p.m. (ET)**

David M. Fournier (admitted *pro hac vice*)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware 19801
Telephone: (302) 777.6500
Fax:         (866) 422.3027
Email: david.fournier@troutman.com
*Counsel for Valour Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10063 (SHL)<br><br>**Re: ECF No. 839** |

**LIMITED OBJECTION OF VALOUR INC. TO**
**AMENDED DISCLOSURE STATEMENT WITH RESPECT TO**
**THE AMENDED JOINT PLAN OF GENESIS GLOBAL HOLDCO, LLC *ET AL.*,**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Valour Inc. ("Valour"), by and through its undersigned counsel, hereby files this limited objection (the "Limited Objection") to the *Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* (ECF No. 839) (the "Disclosure Statement") filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"). In support of this Limited Objection, Valour respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

1

159144051v8

## PRELIMINARY STATEMENT[2]

The Debtors' Disclosure Statement does not contain adequate information with respect to how the Debtors propose to treat claims held by creditors, such as Valour, that are parties to executory contracts under which they borrowed money from one of the Debtors and, in exchange, posted collateral to secure the outstanding loan balance. There is no indication in the Disclosure Statement as to (i) how the Debtors are classifying such claims, (ii) whether the Debtors intend to assume or reject the underlying master loan agreements, and (iii) if such contracts are to be rejected, whether the Plan is intended to bar setoff or recoupment of the resulting breach claim. Such information must be provided in the Disclosure Statement in order to allow Valour and similarly situated creditors to accurately assess the Plan and its effect on their claims, collateral and agreements with the Debtors.

## RELEVANT BACKGROUND

**Pre-Petition Agreements and Loan Term Sheet between Debtor GGC and Valour**

1.  On January 12, 2022, Valour and Debtor Genesis Global Capital LLC ("GGC") entered into that certain Master Loan Agreement (the "MLA"). Pursuant to the MLA and the Loan Term Sheet dated September 9, 2022 (the "Term Sheet"), GGC loaned 6,000,000.00 USDC to Valour as an open term loan (the "Loan") pursuant to the terms and conditions of the MLA and Term Sheet. As collateral for the Loan, Valour initially posted 362 BTC with GGC, which was later increased to 475 BTC (the "Collateral").

---

[2] Capitalized terms used but not defined in the Preliminary Statement are ascribed the definitions given to them in this Limited Objection.

**The Bankruptcy Cases**

2. On January 19, 2023 (the "Petition Date"), the Debtors, including GGC, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States District court for the Southern District of New York.

3. On May 22, 2023, prior to the general bar date in these cases, Valour filed a proof of claim, asserting a claim against GGC in the amount of 475 BTC (valued at $10,067,150.00 as of the Petition Date), secured by Valour's right of setoff up to the total amount owed by Valour to GGC related to the Loan, including any accrued interest, fees or other obligations owed by Valour to GGC with respect to the Loan. Valour's proof of claim also expressly reserves its right of recoupment related to the Loan and Collateral.

4. On October 24, 2023, the Debtors filed the *Debtors' Amended Joint Chapter 11 Plan* (D.I. 838) (the "Plan") and, on October 25, 2023 the Debtors filed the accompanying Disclosure Statement (D.I. 839).

5. The Plan as currently proposed includes 11 classes of Claims and Interests against GGC, including Secured Claims and BTC-Denominated Unsecured Claims. *See* Plan at 30. Several provisions of the Plan authorize, but do not require, the Debtors to effectuate a setoff between amounts owed by and between a Debtor and creditor, including an express provision regarding the offset of any Loan Collateral and / or value of any debt owed by a Holder of a Claim to a Debtor. *See* Plan, Article IV.B.16 at 59 ("Offsetting of Collateral"); Article VI.J at 68-69 ("Setoffs and Recoupment").

6. The Disclosure Statement briefly discusses the Debtors' lending service, through which Valour entered into the MLA and Loan Term Sheet with GGC. *See* Disclosure Statement at 18. The Disclosure Statement also discloses the volume of its lending business to third parties,

3

noting that as of the Petition Date, "the Debtors had approximately $539 million in outstanding loans to third parties. In connection with the outstanding loans, the Debtors note that they have received approximately $584 million in collateral against those loans in both U.S. dollars and/or digital assets." *See* Disclosure Statement at 19.

## OBJECTION

7. Section 1125 of the Bankruptcy Code requires that a disclosure statement contain "adequate information" describing a confirmable plan, and defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable a such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information;

11 U.S.C. § 1125(a)(1). To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus., Inc.,* 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of the disclosure statement is determined on a case-by-case basis, the disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives . . . ." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

8. Section 1125 is biased towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate

information" requirement merely establishes a floor, and not a ceiling, for disclosure to voting creditors. *See In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (citation omitted). The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999). The disclosure statement must inform the average creditor what it will receive and when and what contingencies might intervene. *See In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

9.  Here, the Disclosure Statement fails to inform creditors, such as Valour, of how the Debtors propose to treat their claims. As noted in paragraph 6 above, this is far from a small category of claims. The Plan sets forth proposed treatment for Secured Claims and unsecured claims against GGC, but nowhere does the Disclosure Statement or Plan describe how the Debtors intend to classify or treat creditors where GGC (or another Debtor) has a claim against a creditor under an executory contract for an outstanding loan balance owed to GGC and the creditor / borrower has a claim against GGC (or the relevant Debtor for its loan agreement) for the return of posted collateral.

10. While the Plan authorizes the Debtors to set-off Claims between the Debtors and creditors, including a Plan provision specifically authorizing, but not requiring, the Debtors to offset any Allowed Claim against the Debtors "with (i) the value of any Loan Collateral that the applicable Debtor delivered to the Holder of such Claim or (ii) the value of any debt owed by the Holder of such Claim to the applicable Debtor, including as provided in the Distribution Principles [,]"[3] the Disclosure Statement provides no indication of whether the Debtors intend to utilize these setoff provisions, critically as to claims asserted by Valour and similar creditors, or whether such

---

[3] Plan, Article IV.B.16 at 59; *see also* Plan, Article VI.J at 68-69.

creditors will be permitted to effectuate setoffs themselves if their underlying loan agreements are rejected.

11. Case law is clear that a disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims . . . [,]" *In re Copy Crafters*, 92 B.R. at 981 (Bankr. N.D.N.Y. 1988), and that a disclosure statement must inform the average creditor what it will receive, when, and what contingencies might intervene. *See In re Ferretti*, 128 B.R. at 19. The Debtors' proposed Disclosure Statement, however, does not meet this standard with respect to informing Valour in "simple and clear language" as to the effect of the proposed Plan on its claims and "what it will receive and when" should the Plan be confirmed and go effective. *Id*. Furthermore, Valour is not the only creditor affected by this lack of disclosure. Based on the Debtors' description of the volume of the Debtors' lending business, there is a significant group of creditors asserting similar claims. *See* Disclosure Statement at 19.

12. Some of the information to be filed by the Debtors in the Plan Supplement—namely, the Schedule of Assumed Executory Contracts and Unexpired Leases—may clarify the Plan's proposed treatment of these types of claims. As currently drafted, however, the Plan would allow the Debtors a period of 45 days after the Plan's effective date to remove executory contracts from its Schedule of Assumed Executory Contracts and Unexpired Leases.[4] Not only would this keep creditors in limbo as to how their claims and agreements will be treated under the Plan until after any related objection deadline or confirmation hearing has passed, but it violates section 365(d)(2) of the Bankruptcy Code to allow the Debtors to wait until after confirmation to decide

---

[4] *See* Plan, Article V.A. at 60 ("Notwithstanding anything to the contrary in the Plan, the Debtors or the Wind-Down Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases **at any time on or prior to the date that is forty-five (45) days after the Effective Date** on no less than seven (7) days' notice to the applicable non-Debtor counterparties.") (emphasis added).

159144051v8

whether to assume or reject executory contracts and unexpired leases (which Valour recognizes is a confirmation objection, and will assert as such at the appropriate time). *See* 11 U.S.C. § 365(d)(2).

13. Ultimately, the Disclosure Statement lacks transparency with respect to the Debtors' proposed treatment of the claims of Valour and similarly situated creditors. In order to satisfy the adequate information standard required by the Bankruptcy Code, the Debtors should be required to revise the Disclosure Statement to clearly describe how the Debtors, through the Plan, intend to treat the claims of Valour and similarly situated creditors that collectively posted collateral of almost $600 million as of the Petition Date.

## **RESERVATION OF RIGHTS**

14. Valour expressly reserves its right to assert any and all objections it may have to the Plan, including but not limited to renewing any objections in this Limited Objection that are deemed to be Plan objections and not Disclosure Statement objections.

*[Remainder of page intentionally left blank]*

159144051v8

## **CONCLUSION**

WHEREFORE, Valour respectfully requests that the Court sustain this Limited Objection, require the Debtors to revise the Disclosure Statemen as requested herein, and grant such other relief as is just.

Dated:  October 31, 2023
       New York, NY

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/  David M. Fournier*
David M. Fournier (admitted *pro hac vice*)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware 19801
Telephone: (302) 777.6500
Fax:           (866) 422.3027
Email: david.fournier@troutman.com

*Counsel for Valour Inc.*

159144051v8