PROSKAUER ROSE LLP
Brian S. Rosen
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000

-and-

Jordan E. Sazant
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550

*Counsel to the Ad Hoc Group of Genesis Lenders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>Genesis Global Holdco, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-10063 (SHL)<br><br>Jointly Administered<br><br>**Re: Docket Nos. 461 and 839** |

**OBJECTION OF THE AD HOC GROUP OF GENESIS LENDERS TO
(A) DEBTORS' MOTION TO APPROVE (I) THE ADEQUACY OF
INFORMATION IN THE DISCLOSURE STATEMENT, (II) SOLICITATION
AND VOTING PROCEDURES, (III) FORMS OF BALLOTS, NOTICES, AND NOTICE
PROCEDURES IN CONNECTION THEREWITH, AND (IV) CERTAIN DATES
WITH RESPECT THERETO, AND (B) AMENDED DISCLOSURE STATEMENT
WITH RESPECT TO THE AMENDED JOINT PLAN OF GENESIS GLOBAL
HOLDCO, LLC *ET AL.*, UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The Ad Hoc Group of Genesis Lenders (the "Ad Hoc Group") hereby submits this objection (this "Objection") to (A) the *Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable) are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (9564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

*Ballots, Notices, and Notice Procedures in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 461] (the "Motion")[2] and (B) the *Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* [Docket No. 839] (the "Disclosure Statement") filed by the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). In support of this Objection, the Ad Hoc Group respectfully states as follows:

## PRELIMINARY STATEMENT

1. As the Ad Hoc Group approaches the first anniversary of its formation and the commencement of its efforts to reach a consensual negotiated resolution of creditors' claims against the Debtors, as well as claims and causes of action against DCG and Gemini, it has become clear that, at this stage, the path forward requires litigation to clarify the parties' rights and obligations, as a consensual path has proved unreachable.

2. As the Court is well aware, without timely resolution of the claims and causes of action, the Ad Hoc Group supports the filing and confirmation of a "No Deal" Plan. Indeed, it is time to exit Chapter 11, recommence the Turnover Actions, and commence litigation of the Retained Causes of Action to maximize creditor recoveries. However, as recoveries on the Ad Hoc Group's $2.5 billion in aggregate claims depend largely upon future litigation outcomes, (a) the Plan must retain any and all valuable potential Claims and Causes of Action, and (b) the Disclosure Statement must adequately apprise creditors of the contingencies inherent in their recoveries, including an assessment of the viability of Retained Causes of Action against Gemini as well as the potential impact(s) on the timing, quantum, and denominations of recoveries

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

resulting from the NYAG Complaint against the Debtors, DCG, Gemini, Barry Silbert, and Soichiro Michael Moro.

3.     At this time, the Disclosure Statement is devoid of such adequate information as to inform creditors of these issues and contingencies. And, just because the concept of the Plan is appropriate, does not mean that creditors can decide its fate. The Debtors must be held to the standards set forth in the Bankruptcy Code and applicable law. Until such time, the Disclosure Statement cannot and should not be approved.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York.

## OBJECTION

I.     **Legal Standard**

5.     Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125. The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable a such a hypothetical reasonable investor . . . to make an informed judgment about the plan.

3

11 U.S.C. § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

6. To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of the disclosure statement is determined on a case-by-case basis, the disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). What constitutes "adequate information" varies on a case-by-case basis and courts may "take a practical approach as to what is necessary under the circumstances of each case." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 409 (1977); *Mtr. Of Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) (noting the "determination is largely within the discretion of the bankruptcy court"). In considering what constitutes "adequate information," a court is to "consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information." 11 U.S.C. § 1125(a)(1).

7. Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). It is impossible to "overemphasize the debtor's obligation to provide sufficient data to satisfy the [Bankruptcy] Code standard of 'adequate information.'" *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) (quoting *Oneida Motor Freight, Inc.*, 848 F.2d 414, 417 (3d Cir. 1988)).

The "adequate information" requirement merely establishes a floor, and not a ceiling, for disclosure to voting creditors. *Adelphia*, 352 B.R. at 596 (citing *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988)). The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice as to whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999). The disclosure statement must inform the average creditor what it will receive and when and what contingencies might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

## II.     Inadequate Disclosure Regarding Identity of Released Parties

8.     The Plan and Disclosure Statement do not adequately identify the Released Parties. Instead, per the Plan, the Special Committee has the ability, in its sole discretion, to designate any current and former officers and directors of the Debtors as Released Parties. *See* Disclosure Statement §§ I.A, III.R. There are no limitations on the Special Committee's ability to grant such releases, it may do so at any time and for any reason. Further, the Plan provides that all holders of claims who vote to accept the Plan grant releases to the Releasing Parties. *See* Plan Art. I.A.157.

9.     Creditors must be apprised of the specific individuals as to whom the Debtors propose they grant releases. Consent to a release can only be established by a vote in support of a plan if the release is appropriately disclosed. *In re Adelphia Communications Corp.*, 368 B.R. 140, 268 (Bankr. S.D.N.Y. 2007). Further, Federal Rule of Bankruptcy Procedure 3016 provides that "[i]f a plan provides for an injunction . . . the plan and disclosure statement shall describe in specific and conspicuous language . . . all acts to be enjoined *and identify the entities that would be subject to the injunction*." Fed. R. Bankr. P. 3016(c) (emphasis added). A release is "for practical purposes, an injunction." *In re Lower Bucks Hosp.*, 571 Fed.Appx. 139, 143 (3d Cir. 2014). By failing to identify the scope of the Released Parties and allowing the Special Committee to grant releases to additional parties at any time in its sole discretion, with no limitations, the

5

Debtors have failed to comply with Rule 3016 and have not provided adequate information regarding the proposed releases. The Ad Hoc Group will not agree to write a blank check for the Special Committee to independently determine who should receive releases from creditors. Without knowledge of who they are releasing, what value such recipients are providing in exchange for the release, or whether potential value-maximizing litigation against a director or officer may be cut off by the Special Committee at some time in the future, creditors cannot make an informed decision regarding whether to vote to accept or reject the Plan.

10.     Moreover, the Plan contemplates retaining certain Retained Causes of Action against, among others, DCG Parties and Gemini Parties, the prosecution of which may require the cooperation and participation of current and former officers and directors of the Debtors. The undisclosed and premature release of claims that may exist against such current and former officers and directors of the Debtors thus risks (i) releasing valuable claims and causes of action without any knowledge or analysis as to their value, and (ii) jeopardizing and devaluing even the explicitly Retained Causes of Action.

### III. Inadequate Disclosure Regarding, Among Others, Gemini Claims and Causes of Action and Impact on Recoveries

11.     The Disclosure Statement lacks information regarding potential litigation against Gemini and the impact of that litigation on creditor recoveries. Pursuant to the Plan, as described in the Disclosure Statement, Holders of Allowed General Unsecured Claims will receive, among other things, "Avoidance Recoveries (including proceeds from any and all Causes of Action or other claims against any of the DCG Parties or Gemini)." *See* Disclosure Statement §§ I.A, III.L, VII.A. Despite containing several pages of disclosure regarding potential claims and causes of action against DCG (*see* Disclosure Statement § VI.F), the Disclosure Statement provides no information on potential causes of action against Gemini, although proceeds of claims against

Gemini fund creditor recoveries under the Plan in the same manner as proceeds of claims against DCG. As set forth above, creditors are entitled to sufficient information regarding the financial and other consequences of a proposed chapter 11 plan. Here, no information has been provided regarding one of the two primary components of the Distributable Assets to be distributed to creditors on account of their claims. Without such information, creditors cannot make an informed decision regarding whether to vote to accept or reject the Plan.

12. In addition, by failing to disclose any claims and causes of action against Gemini and other potential litigation counterparties, the Debtors may lose their ability to bring such claims, to the detriment of their estates and all creditors. Courts require "a sufficient level of specificity in order to retain a claim. *In re Soulita, Inc.*, 653 B.R. 99, 124 (Bankr. S.D.N.Y. 2023). "General retention clauses are not convenient hiding places for debtors. . . . The creditors have a right to know what the debtor's assets are even though the potential may be contingent, dependent, or conditional." *Id*. (quoting *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 56 (S.D.N.Y. 1999). Any preservation of claims in a chapter 11 plan "must be specific and unequivocal." *Estate of Shaw v. Marcus*, 2015 WL 5610959 at *17 (S.D.N.Y. Sept. 22, 2015) (quoting *In re Futter Lumber Corp.*, 473 B.R. 20, 30 (E.D.N.Y. 2012). With no disclosure whatsoever of the claims that may be asserted against Gemini, or other avoidance actions that may be brought, the Debtors run the risk that a court may hold such claims were not properly preserved and cannot be brought by the Debtors or the Wind-Down Debtors, resulting in the estates' inability to recover and distribute to creditors any proceeds of such claims.

**IV. Inadequate Disclosure Regarding Potential Consequences of the NYAG Action And Impact on Recoveries**

13. The Disclosure Statement contains no information on the NYAG Action and its potential impact on creditor recoveries. The Disclosure Statement's description of the NYAG

7

Action is limited to a single, short paragraph identifying the parties to the action and the claims the NYAG asserts.  *See* Disclosure Statement § VI.T(iv).  It contains no information regarding the relief requested by the NYAG, which could have a significant impact on creditor recoveries and must be disclosed in order for creditors to make an informed decision regarding whether to vote to accept or reject the Plan.

14. Specifically, the NYAG Complaint seeks to (i) permanently enjoin Genesis, Gemini, and DCG from engaging in any business related to the issuance, distribution, exchange, promotion, advertisement, negotiation, purchase, investment advice, or sale of securities or commodities within or from the state of New York; and (ii) require Genesis, Gemini, and DCG to pay damages, restitution, and disgorgement of all funds and cryptocurrencies obtained in connection with the conduct described in the NYAG Complaint.  If the NYAG is successful in obtaining some or all of these remedies, the Ad Hoc Group believes the Debtors' ability to make distributions pursuant to the Plan will be severely limited to creditors' detriment.  Likewise, if the Debtors were required to pay damages and restitution, and/or to disgorge funds and cryptocurrency, the pool of cash and cryptocurrency available for distribution to creditors would be reduced as a result, diminishing creditor recoveries.  Similarly, if a court were to enjoin the Debtors from engaging in business related to cryptocurrency, the Debtors may be unable to fulfill their obligations pursuant to the Plan, including, most notably for cryptocurrency creditors, a restriction on the Debtors' ability to distribute recoveries in-kind, which would risk significant adverse tax consequences and greatly reduce such creditors' recoveries.  And, if the NYAG were successful in prohibiting DCG or Gemini from continuing to operate, there is a risk that either (a) the Retained Causes of Action against each such party become unrecoverable, or (b) Gemini

becomes incapable of making distributions under the Plan to its Gemini Earn users, in which case alternative measures will become necessary.

15. The Disclosure Statement provides no information on the relief requested by the NYAG, these potential consequences, or the potential impact thereof on creditor recoveries—it simply discloses the existence of the NYAG Complaint, leaving creditors without the ability to evaluate its impact and make an informed decision regarding whether to vote to accept or reject the Plan. As is explained above, sufficient information on creditor recoveries and other financial consequences is required.

*    *    *

16. For the foregoing reasons, the Disclosure Statement does not provide creditors with sufficient information to which they are entitled and which is critical to making an informed decision about whether to vote to accept or reject the Plan. Accordingly, the Ad Hoc Group respectfully submits that either (a) the Debtors should amend the Disclosure Statement to include certain additional information requested, as described further in **Exhibit A**, or (b) the Court should not approve the Disclosure Statement or the Motion.

## RESERVATION OF RIGHTS

17. The Ad Hoc Group reserves all rights to supplement this Objection based upon further amendments that may be made to the Disclosure Statement, and further reserves all rights to object to confirmation of the Plan and the provisions therein on any grounds.

## CONCLUSION

18. For the foregoing reasons, the Ad Hoc Group respectfully requests that the Court deny approval of the Disclosure Statement and Motion, and grant such other and further relief as is just.

Dated: October 31, 2023
New York, New York

**PROSKAUER ROSE LLP**

*/s/ Brian S. Rosen*
Brian S. Rosen
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
Email: brosen@proskauer.com


-and-

Jordan E. Sazant
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
Email:  jsazant@proskauer.com

*Counsel to the Ad Hoc Group of Genesis Lenders*

**Exhibit A**

| Section | Content | Required Additional Information |
|---|---|---|
| I.A | "The Amended Plan proposed to provide, among other things, (a) the distribution of the Debtors' cash and digital assets on hand to creditors and (b) the subsequent pursuit of causes of action, including preference claims and litigation claims against DCG after the plan effective date." | "The Amended Plan proposed to provide, among other things, (a) the distribution of the Debtors' cash and digital assets on hand to creditors and (b) the subsequent pursuit of causes of action, including preference claims and litigation claims against DCG <u>Parties and Gemini Parties</u> after the plan effective date." |
| III.R | Describes the releases being granted to the Released Parties | Must be amended either to provide that the Special Committee can only grant releases to the Debtors' current or former officers and directors with the consent of the Committee and the Ad Hoc Group, or to otherwise provide information as to (a) the identity of such recipients, (b) the claims and causes of action being released against such parties, and (c) the value being provided by such parties in exchange for the release. |
| VI.F | Describes in detail the investigation conducted by the Special Committee into the various claims and causes of action against DCG | Must be updated to add a section describing the Retained Causes of Action against the Gemini Parties and other defendants of potential avoidance actions. |
| VI.T.iv | Describes the filing of the NYAG Complaint | Must be updated to include information relevant to voting creditors, including (a) the relief sought by the NYAG Complaint, and (b) the potential impact on the quantity, timing, valuation, recoverability, and denomination of creditor recoveries if the NYAG Complaint is successful against some or all defendants. |
| VII.D | Describes the treatment to each class of creditors | Must be updated to include a commitment to provide cryptocurrency-denominated claims with their recoveries in-kind in the form of such Digital Asset initially lent. |