Anson B. Frelinghuysen
Dustin P. Smith
Erin E. Diers
Elizabeth A. Beitler
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000

*Counsel to Gemini Trust Company, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**OBJECTION OF GEMINI TRUST COMPANY, LLC TO THE DEBTORS' MOTION TO APPROVE (I) THE ADEQUACY OF INFORMATION IN THE DISCLOSURE STATEMENT, (II) SOLICITATION AND VOTING PROCEDURES, (III) FORMS OF BALLOTS, NOTICES AND NOTICE PROCEDURES IN CONNECTION THEREWITH, AND (IV) CERTAIN DATES WITH RESPECT THERETO**

Gemini Trust Company, LLC ("Gemini"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the *Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with*

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R) (collectively, the "Debtors" or "Genesis"). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

*Respect Thereto* (ECF No. 461, the "Motion").[2]  In opposition to the Motion, Gemini states as follows:

## PRELIMINARY STATEMENT

1.     Genesis's proposed Amended Plan funnels hundreds of millions of dollars of value away from disenfranchised Gemini Lenders for the benefit of Genesis's institutional creditors.  And Genesis proposes to solicit the Amended Plan without properly disclosing the plan's downsides to those whose pockets it seeks to pick.   It minimizes, through obfuscation, the Amended Plan's grave impacts on the treatment of Gemini Lenders' claims, and does not explain the impacts on distributions to Genesis's other creditors should the money grab orchestrated through the Amended Plan fail.  Gemini has asked the Court to adjudicate the Gemini Lenders' rights to collateral valued at more than $1.6 billion.  That adjudication must be completed before any plan can be confirmed.

2.     Genesis's Motion should be denied for at least three reasons:

- First, the Amended Plan is patently unconfirmable as it is predicated on siphoning the value of more than $1.6 billion of collateral pledged to Gemini Lenders away from the Gemini Lenders and into the pockets of Genesis's unsecured, institutional creditors, while simultaneously eliminating the ability of the Gemini Lenders to meaningfully vote against this unjust treatment;

- Second, the Amended Disclosure Statement lacks adequate information with respect to several material aspects of the Amended Plan and materially misstates projected recoveries under the Amended Plan, such that no creditor can be expected to make an informed voting decision with respect to the Amended Plan; and

---

2.   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the *Debtors' Amended Joint Chapter 11 Plan* (ECF No. 838, the "Amended Plan"), or the *Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* (ECF No. 839, the "Amended Disclosure Statement"), as applicable.

- Third, Genesis's proposed solicitation procedures foist on Gemini the job of soliciting votes from more than 99% of Genesis's creditors—the Gemini Lenders—without affording Gemini procedural safeguards or an opportunity to recommend that the Gemini Lenders vote against the unjust Amended Plan.

3.      No amount of disclosure can remedy Genesis's flagrant abuse of the plan process with respect to the Gemini Lenders' rights.  Through the Amended Plan, Genesis seeks the extraordinary result of determining the Gemini Lenders' rights with respect to over $1.6 billion of collateral without employing any of the due process or procedural fairness requirements that underpin the bankruptcy system.

4.      Genesis owes Digital Assets now worth more than $1.2 billion to more than 232,000 Gemini Lenders.  In May 2023, Gemini filed a claim on behalf of the Gemini Lenders, asserting, among other things, that the Gemini Lenders are entitled to secured status and setoff rights with respect to 62,086,586 shares of Grayscale Bitcoin Trust ("GBTC") that Genesis pledged to Gemini beginning in August 2022 (the "Collateral").  Genesis acknowledges the dispute between Genesis and Gemini regarding the extent to which the Gemini Lenders' claims are secured or subject to set off rights,[3] but both fails to disclose the colossal import of those disputes and proposes to resolves all of those disputes in Genesis's favor without affording Gemini or the Gemini Lenders any due process.

5.      The Gemini Lenders' claims were filed more than five months ago, and an objection to (and resolution of) those claims should not be hidden in the Amended Plan.  Instead, those disputes should have their own process for resolution in advance of confirmation of any plan of reorganization.  This is especially true given the magnitude of the disputes, which could result

---

3.    (*See, e.g.*, Am. Disclosure Statement at 38-39.)

in significantly higher distributions to Gemini Lenders and conversely significantly lower distributions to Genesis's unsecured creditors.

6.      To allow these disputes to be promptly and properly resolved by this Court, Gemini commenced an adversary proceeding, *Gemini Trust Company, LLC v. Genesis Global Capital, LLC, et al.*, Adv. Pro. No. 23-01192 (SHL) (the "Collateral Determination Proceeding"). The Amended Plan, the Amended Disclosure Statement, and the confirmation timeline must reflect the reality that no plan can be confirmed while the significant issues at stake in the Collateral Determination Proceeding remain unresolved.   The Amended Plan's projected recoveries described in the Amended Disclosure Statement—which are likely among the most significant disclosures for all of Genesis's creditors—are calculated based on the false premise that a significant portion of the Collateral will be available for distribution to Genesis's unsecured creditors that are not Gemini Lenders.   It would be a waste of resources and time to allow solicitation of a plan that cannot meaningfully set forth the actual distributions that creditors will receive and that cannot survive confirmation.

7.      The Amended Plan also disenfranchises more than 99% of Genesis's creditor base—the Gemini Lenders—by classifying them in a separate class, without providing any justification for such separate classification.  As a result, even if every single Gemini Lender votes to reject the Amended Plan—as they should—the Gemini Lenders can be crammed down by the other classes of creditors that benefit from Genesis's allocation of the Collateral to their claims. This separate classification robs the Gemini Lenders of their ability to meaningfully vote on the Amended Plan and should not be countenanced.

8.      Even if Genesis were to appropriately amend the Amended Plan to remedy these fatal defects, several other infirmities in the Amended Disclosure Statement leave creditors

without adequate information to decide whether to support the Amended Plan. The Amended Disclosure Statement provides cursory descriptions of important issues, glosses over vital information with respect to the contingencies associated with potential recoveries, and otherwise fails to address central and required issues. It should not be approved.

9.    Finally, through the proposed solicitation procedures, Genesis shifts the task of soliciting more than 99% of its creditors—232,824 Gemini Lenders—to Gemini. Gemini is willing to undertake this important role for the benefit of Gemini Lenders, but Gemini cannot do so without the procedural safeguards it requires. Gemini should also be permitted to make a recommendation regarding voting on the Amended Plan to the Gemini Lenders, many of whom look to Gemini for delivery of vital information pertaining to these Chapter 11 Cases. The appropriateness and need for Gemini to be permitted to make such a recommendation is further supported by the fact that most of the Gemini Lenders are individuals who have limited or no experience with bankruptcy proceedings, and have looked to Gemini to advocate for their interests throughout these proceedings.

10.    For all of these reasons the Motion should be denied. While Gemini remains hopeful that a consensual chapter 11 plan can be negotiated among Gemini, Genesis, and other stakeholders in the near term, the Amended Plan in its current form should not be permitted to go out to creditors for a vote.[4]

---

4. Some of the issues set forth in this Objection may have been susceptible to resolution without the need for litigation if additional time was provided to parties to analyze the Amended Plan and Amended Disclosure Statement, as was contemplated by the Debtors and the Committee months ago. *See, e.g.*, Hr'g Tr. 36:22-24, Jul. 13, 2023 (in response to Gemini counsel's concern that a disclosure statement would be filed without adequate time for creditors to pursue any objections, counsel for the Committee stated that any disclosure statement "will be filed in advance of a hearing and hopefully in an amount of time before the hearing that [Gemini] won't feel like anybody's being jammed").

## **BACKGROUND**

11.     Since the Petition Date, Gemini has worked tirelessly and in good faith to reach a consensual, confirmable chapter 11 plan that will result in full recoveries of Digital Assets for more than 232,000 Gemini Lenders.  In furtherance of this objective, Gemini has undertaken substantial efforts to relieve the Debtors' estates of significant administrative burdens, including: (a) filing consolidated proofs of claims (Claim Nos. 356, 369, and 400) (collectively, the "Gemini Master Claim") on behalf of more than 232,000 Gemini Lenders and working closely with the Debtors' professionals over the last several months to attempt to reconcile the Gemini Master Claim; and (b) serving as a liaison between the Debtors and Gemini Lenders with respect to issues that have arisen over the course of these Chapter 11 Cases, including (i) negotiation of the Restructuring Term Sheet, dated February 10, 2023 (ECF No. 80), that provided a path to a consensual, confirmable chapter 11 plan within weeks of the Petition Date, (ii) participation in the lengthy mediation process (ECF No. 279), and (iii) fielding numerous calls and emails from Gemini Lenders.

12.     Gemini is also willing to assist the Debtors with the solicitation process and, in connection with a confirmed chapter 11 plan, help the Debtors promptly and effectively distribute Digital Assets to more than 232,000 Gemini Lenders, including serving as the Gemini Distribution Agent (which the Debtors have touted as one of the five "key components" of the Amended Plan).  (*See* Am. Disclosure Statement at 3.)

13.     However, Gemini cannot support the Amended Plan in its current form because it improperly funnels ***more than $1.6 billion*** in value, which rightfully belongs to Gemini Lenders, away from them.  For the entirety of these Chapter 11 Cases, Gemini has sought to reach a consensual resolution regarding the treatment of the Collateral.  Despite substantial effort, Gemini and Genesis have been unable to resolve these issues.

14.    As a result, Gemini commenced the Collateral Determination Proceeding to ensure that the following issues regarding the Collateral are adequately addressed in accordance with principles of procedural fairness and due process:

a.    Whether Gemini's November 16, 2022 foreclosure of 30,905,782 shares of GBTC (the "Initial Collateral") in Gemini's possession was proper, such that Gemini should be permitted to set off the proceeds of such foreclosure ($284,333,194.40) against the Gemini Master Claim; and

b.    Whether the Gemini Master Claim is secured by 31,180,804 shares of GBTC pledged to Gemini on November 10, 2022 for the benefit of the Gemini Lenders and Gemini (the "Additional Collateral"), such that the Debtors should not be permitted to distribute the Additional Collateral to creditors other than the Gemini Lenders.

15.    Through the Amended Plan, Genesis seeks to resolve both of these significant issues in favor of Genesis's institutional lenders that are not Gemini Lenders. *First*, Genesis seeks to ignore the effect of Gemini's foreclosure of the Initial Collateral, and instead set off the *Effective Date* value of the Initial Collateral against the Gemini Master Claim. (*See* Am. Plan art. I.98, art. III(C)(7).)  This has the effect of, based on the current value of GBTC, impermissibly reducing the Gemini Lenders' claims against Genesis by more than $530 million, which would drastically reduce the Gemini Lenders' *pro rata* share of the Debtors' assets. *Second*, Genesis seeks to ignore entirely the effect of its pledge of the Additional Collateral to Gemini for the benefit of Gemini Lenders and instead seeks to distribute the value of such Additional Collateral to all of Genesis's unsecured creditors *pro rata*. (*See, e.g.*, Am. Plan art. IV(A)(11); Am. Disclosure Statement Ex. D (Financial Projections).)  Genesis's unilateral attempt to resolve these significant issues without any due process afforded to Gemini or the Gemini Lenders should

be rejected.[5]  Genesis does not even articulate the legal or factual bases by which they seek to challenge Gemini's foreclosure of the Initial Collateral or entitlement to the Additional Collateral. Neither the Amended Disclosure Statement nor the Amended Plan can be approved while these complex issues regarding the Collateral—and their significant impact on creditor recoveries—remain unresolved.

16.    This fatal flaw in Genesis's proposed plan can be remedied.  In fact, on October 23, 2023, less than 36 hours after Genesis first circulated a draft plan with the offending provisions to Gemini, Gemini proposed a solution that would allow Genesis to move forward with the plan confirmation process while concurrently resolving the disputed issues with respect to the Collateral.  Gemini proposed that the Amended Plan provide that, until such time as the Gemini Master Claim is adjudicated by a final order of this Court, the Claims Reserve set aside by Genesis should include (and, conversely, the definition of "Distributable Assets" should exclude) (i) the Additional Collateral and (ii) an amount equal to *(a)* the value of the Initial Collateral on the Effective Date *less (b)* the value of the Initial Collateral on the date of foreclosure, November 16, 2022 (i.e., $284,333,194.40) (the "Foreclosure Date Value").  Gemini further proposed that adjudication of the Gemini Master Claim be a condition precedent to confirmation of the Plan. Genesis refused to implement Gemini's proposed revisions.

---

5.    Before filing the Amended Plan, Genesis's counsel acknowledged that the dispute regarding the treatment of Collateral "is an unresolved contingency that we're going to have to deal with probably in conjunction with or prior to confirmation."  *See, e.g.,* Hr'g Tr. 36:22-24, Oct. 24, 2023.  On October 30, 2023, less than 24 hours before the deadline to object to the Motion, Gemini's counsel received a revised proposed Disclosure Statement Order, which included a compressed timeline for conducting confirmation-related discovery.  Gemini reserves its rights to object to this shortened "discovery schedule" to the extent it is intended to apply to the Collateral Determination Proceeding.

**OBJECTION**

I.     **The Amended Disclosure Statement Cannot Be Approved Because the Amended Plan Is Patently Unconfirmable.**

17.    Courts have routinely held that, if a plan is not confirmable as a matter of law, the related disclosure statement should not be approved.  *See, e.g.*, *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) ("Courts have recognized that 'if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing.'") (citation omitted); *In re Quigley Co., Inc.*, 377 B.R. 110, 115-16 (Bankr. S.D.N.Y. 2007) (stating that if a plan is "patently unconfirmable on its face," then solicitation of votes on the plan would be futile); *In re CRIIMI MAE, Inc.*, 251 B.R. 796, 799 (Bankr. D. Md. 2000) ("It is now well accepted that a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed.") (quoting *In re Main St. AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999)).

18.    Here, the Debtors' Amended Plan is patently unconfirmable because (a) it has not been proposed in good faith and (b) it improperly classifies Gemini Lenders in one class without any justification, allowing Genesis's institutional lenders to control the outcome of the voting process.

A.  **The Amended Plan Has Not Been Proposed in Good Faith.**

19.    Section 1129(a)(3) of the Bankruptcy Code provides that, for a court to confirm a plan of reorganization, the plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Although the Bankruptcy Code does not define "good faith," this requirement has been equated to a "fundamental fairness" in dealing with creditors.

*See, e.g.*, *In re Leslie Fay Cos., Inc.,* 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Jorgensen,* 66 B.R. 104, 109 (B.A.P. 9th Cir. 1986)). Moreover, the Second Circuit has explained that "good faith" means that a plan has been proposed with "honesty and good intentions." *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 843 F.2d 636, 649 (2d Cir. 1988) (quoting *Koelbl v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984)). These elements are absent from the Amended Plan.

20.     As drafted, the Amended Plan evinces a failure to act with fairness towards the Gemini Lenders. Instead, the Amended Plan proposes to distribute Gemini's Collateral—which is now subject to pending litigation in the Collateral Determination Proceeding—to creditors without Gemini's or the Gemini Lenders' consent. Doing so impermissibly deprives Gemini and the Gemini Lenders of their property rights. By purporting to determine the Gemini Lenders' rights to the Collateral through the plan process without providing for any claims reserve to address these significant issues, the Debtors appear to be attempting to leverage Gemini to settle the disputes set forth in the Collateral Determination Proceeding before the initial distribution date or else risk that only limited value, if any, will be available upon determination of the Gemini Master Claim. The Amended Plan must be modified to afford Gemini and the Gemini Lenders their right to litigate their position with respect to the Collateral before it is redistributed to other creditors without any respect for due process.

**B. The Amended Plan Improperly Classifies the Gemini Lenders in One Class to Disenfranchise Them.**

21.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]" to be confirmed. The Amended Plan does not comply with all applicable provisions of the Bankruptcy Code because it

does not comply with the requirements of section 1122(a) regarding classification of claims.  *See* 11 U.S.C. § 1122(a).

22.    For a classification structure to satisfy section 1122 of the Bankruptcy Code, not all substantially similar claims or interests need to be grouped in the same class.  However, discretion to classify separately is not unfettered.  "[I]f the treatment [of similar claims separately] is for the purpose of 'gerrymandering' an impaired accepting class or if the resulting treatment of the objecting class is not 'fair and equitable' (section 1129(b)(2)(B)) or 'unfairly discriminates' against one of the two equal priority classes, the split would not be justified or allowable."  *In re Platinum Corral, LLC*, No. 21-00833-5-JNC, 2022 WL 127431, at *8 (Bankr. E.D.N.C. Jan. 13, 2022); *see also Phoenix Mutual Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991) ("We conclude that if § 1122(a) permits classification of 'substantially similar' claims in different classes, such classification may only be undertaken for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims.").

23.    Genesis offers no justification as to why the Gemini Lenders are classified separately from Genesis's institutional lenders, who also assert claims for stablecoin, BTC, ETH, and Alt-Coin loaned to Genesis.  The Holders of unsecured claims in the other Voting Classes (Classes 3-6) will undeniably benefit from the Debtors' improper re-allocation of the Collateral away from the Gemini Lenders.  They will presumably vote in favor of the Amended Plan and permit the Debtors to cram down the dissenting Gemini Lenders, despite the fact that the number of Gemini Lenders dwarfs the number of creditors in all of the other Voting Classes combined.

24.    No amount of disclosure can resolve the substantive deficiencies of the Amended Plan:  it purports to allocate property to which Gemini and the Gemini Lenders have a

superior right to all of Genesis's creditors. As discussed above, Genesis has rejected Gemini's attempt to address these substantive deficiencies.

## II.    The Amended Disclosure Statement Does Not Provide Adequate Information to Enable Creditors to Vote to Accept or Reject the Plan.

25.    Even if the fatal flaws that render the Amended Plan patently unconfirmable could be remedied, the Amended Disclosure Statement should not be approved because it fails to disclose information essential to a creditor's decision to vote for or against the Amended Plan. It is well-settled that a debtor may only solicit votes to accept or reject a chapter 11 plan after the Court has approved the disclosure statement for that plan as containing "adequate information." 11 U.S.C. § 1125(b). The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable [] a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); *see also In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("Of prime importance in the reorganization process is the principle of disclosure."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006).

26.    The Amended Disclosure Statement fails to include adequate information regarding numerous critical matters that have a significant impact on the proposal put forth in the Amended Plan, including, among other things:

a.    The impact of determinations with respect to the issues raised in the Collateral Determination Proceeding on creditor recoveries;

b.    Risks regarding the SEC and NYAG Actions and their potential impact on creditor recoveries; and

c.    The organizational structure for the Wind-Down Debtors' decision-making authority.

27.     The failure to disclose such information makes it impossible for creditors to make an informed decision regarding their acceptance or rejection of the Amended Plan.

## A. The Amended Disclosure Statement Does Not Contain Adequate Information Regarding the Risks Affecting Creditor Recoveries.

28.     In Section IX.B. of the Amended Disclosure Statement, the Debtors provide information regarding certain risk factors that—in the Debtors' view—may affect creditor recoveries under the Amended Plan.   However, the information provided falls short of the "adequate information" standard due to notable omissions concerning (1) the Gemini Master Claim and related Collateral Determination Proceeding and (2) the SEC and NYAG Actions.

### 1. Risks Regarding the Gemini Master Claim Are Inadequately Disclosed.

29.     As made evident by the filing of the Collateral Determination Proceeding, the Debtors and Gemini disagree as to whether (a) Gemini properly foreclosed on the Initial Collateral; and (b) the Gemini Master Claim is secured by the value of the Additional Collateral. As of October 30, 2023, the total value of the disputed Collateral is ***over $1.6 billion***.   Yet, the Amended Disclosure Statement does not sufficiently inform creditors that the allocation of $1.6 billion in value is disputed, nor adjust the projected recoveries to creditors to reflect the potential outcomes of these disputes.

### (a) Initial Collateral

30.     Under the Amended Plan, Gemini Lender Claims will be reduced by the *pro rata* share of the "Gemini Asset Value." (Am. Disclosure Statement at 58-59.)  The Amended Plan defines "Gemini Asset Value" as "the value of the Gemini GBTC Shares[6] and the Gemini Withheld Assets as of the [Effective Date]."   (Am. Plan art. I.98 (brackets in original).)   As the brackets

---

6.   The Amended Plan uses the term "Gemini GBTC Shares" to refer to the Initial Collateral.

indicate, the valuation date of the Gemini Asset Value is unresolved and is now pending in the Collateral Determination Proceeding.  As of the market close on October 30, 2023, the value of the Initial Collateral was approximately $818 million.

31.     Gemini properly foreclosed on the Initial Collateral on November 16, 2022 via a private sale.  As a result, the Gemini Lender Claims should only be reduced by the proceeds of the foreclosure, less the cost and expense of foreclosure (i.e., the Foreclosure Date Value).[7]

32.     As discussed in the Amended Disclosure Statement, the Debtors dispute whether the foreclosure was proper (Am. Disclosure Statement at 20) and argue that the Gemini Lender Claims should be offset against the value of the Initial Collateral as of the Effective Date.

33.     The impact of this dispute is two-fold:  if the Debtors prevail, Gemini Lenders' recoveries may be artificially reduced by the Effective Date valuation of the Initial Collateral, meaning that the Debtors will contribute significantly fewer assets than they should towards making Gemini Lenders whole; but if Gemini prevails, the assets available to satisfy the Debtors' creditors will be reduced by approximately $534 million, or 31% of the cash and Digital Assets available for creditors.[8]

34.     Because the Debtors have failed to disclose the significant impact of the dispute as to the valuation of the Initial Collateral, they have failed to provide adequate information to not only Gemini Lenders, but all creditors.

---

7.   Pursuant to the non-binding February 10, 2023 Restructuring Term Sheet, Gemini provisionally agreed, subject to certain conditions set forth in the Restructuring Term Sheet, to contribute the difference between the Foreclosure Date Value and the Petition Date value of the Initial Collateral—a value of approximately $70 million–to reduce the amounts owed to the Gemini Lenders by GGC.  However, the deal contemplated by the Restructuring Term Sheet never materialized.  Gemini is not bound by the prior proposal with respect to the valuation of the Initial Collateral.

8.   *See* Amended Disclosure Statement Ex. D (Financial Projections) (reporting cash and Digital Asset value of $1.709 billion).

### *(b) Additional Collateral*

35.    Gemini has asserted that the Gemini Master Claim is secured by the Additional Collateral.  (Gemini Master Claim at 14-15.)  As of the market close on October 30, 2023, the value of the Additional Collateral was approximately $826 million.

36.    While the Debtors acknowledge that Gemini asserts that the Gemini Master Claim is "secured to the extent of certain collateral" (Am. Disclosure Statement at 38), they do not disclose that a determination in Gemini's favor could reduce the pool of assets available for creditor recoveries by more than $800 million, which comprises ***almost half*** of the value of Debtors' available cash and Digital Assets.[9]  Regardless of the Debtors' position with respect to the Additional Collateral, the failure to disclose a dispute with such a material impact on creditor recoveries contravenes section 1125 of the Bankruptcy Code.

### 2.    Risks Regarding the SEC and NYAG Actions Are Inadequately Disclosed.

37.    Under the heading "The Debtors may be adversely affected by current and potential litigation, including litigation in connection with the Chapter 11 Cases, as well as ongoing governmental investigations" in Section IX.B of the Amended Disclosure Statement, the Debtors state:

> It is difficult to estimate the impact of [] litigation and governmental investigations [such as the SEC and NYAG Actions], as it is inherently costly and unpredictable.  Although the Debtors may establish reserves as they deem necessary, the amounts that the Debtors reserve could vary significantly from any amounts the Debtors ultimately pay due to the inherent uncertainties in the claims process.

---

9.    *See* note 8, *supra.*

(Am. Disclosure Statement at 100.)  However, this disclosure does not provide creditors with sufficient information to make an informed decision regarding the Amended Plan because the Debtors neglect to identify the risk that either the SEC or the NYAG (or both) may refuse to voluntarily subordinate their claims and instead be treated *pari passu* with other General Unsecured Claims against the Debtors.  Accordingly, these claims may have a significant dilutive effect on creditor recoveries.  While Gemini believes that this outcome would be an inequitable result, the risk is material information that creditors should have before voting on the Amended Plan.

### B.   The Amended Disclosure Statement Fails to Provide Adequate Information on Other Issues.

38.     In addition to the foregoing, the Amended Disclosure Statement fails to provide adequate information with respect to (1) the governance of the Wind-Down Debtors and which organizational body has decision-making authority, (2) Gemini's claims against the Debtors for, among other things, indemnification related to the Earn program; (3) the Distribution Principles, and (4) the Gemini Withheld Assets.

### 1.   Control Over the Wind-Down Debtors

39.     The Amended Disclosure Statement identifies three different constituencies with decision-making authority over the Wind-Down Debtors:  the PA Officer, the New Board, and the Wind-Down Oversight Committee.   Nevertheless, the Debtors fail to meaningfully distinguish as to which constituency maintains decision-making authority in a given situation.  For example, at various points, the Amended Disclosure Statement refers to both the Wind-Down Debtors and the PA Officer simultaneously having control over the prosecution of the Retained Causes of Action.  (*See, e.g.*, Am. Disclosure Statement at 100; *see also id.* at 83 (each of the Debtors, the Wind-Down Debtors, or the PA Officer, as applicable, having authority to adjust the

Claims Register), 89 (both the Wind-Down Debtors and the PA Officer having authority to maintain documents).)  It is unclear how the Wind-Down Debtors can act independently of the PA Officer post-Effective Date.

40.      Furthermore, it is unclear what role the New Board is intended to play. Most of the essential director functions appear to either be assigned to the Wind-Down Oversight Committee in the first instance, or the New Board must obtain approval or consent of the Wind-Down Oversight Committee.  This structure begs the question as to why there should be both a Wind-Down Oversight Committee and a New Board.

### 2.   The Gemini Proprietary Claim

41.      The Amended Disclosure Statement does not adequately inform creditors that, in addition to the Gemini Master Claim, Gemini has also asserted direct claims against the Debtors to, among other things, enforce GGC's obligation to indemnify Gemini for liabilities related to the Gemini Earn Program.  Various Gemini Lenders have commenced or threatened individual actions, putative class actions, or arbitration proceedings arising from the Gemini Earn Program, naming Gemini and GGC as defendants.  Gemini asserts, and the Debtors have acknowledged, that GGC is obligated to indemnify Gemini for any losses suffered by Gemini in connection with the Gemini Earn Program under contractual and non-contractual bases, including, without limitation, its costs and expenses related to these Chapter 11 Cases, settlement costs, investigation costs, indemnification costs, and the fees and expenses of counsel and related professionals.  Given the significant exposure such claims might entail, the Amended Disclosure Statement should disclose it.

### 3.   The Distribution Principles

42.      The Debtors have not yet filed the Distribution Principles, which will contain information that creditors need in order to calculate their in-kind and like-kind recoveries.

The Distribution Principles also contain information as to how Digital Assets will be rebalanced. Creditors are entitled to see the Distribution Principles in order to make an informed choice whether to support the Amended Plan.

### 4. The Gemini Withheld Assets

43.     The Debtors do not disclose the assets constituting the Gemini Withheld Assets, or even their approximate value.   Instead, the Debtors propose to include the Gemini Withheld Asset Schedule as part of the Plan Supplement.   There is no reason that the Debtors should delay in providing concrete information regarding such assets, the value of which, as currently contemplated in the Amended Plan, reduce Gemini Lender recoveries.

### III.    The Disclosure Statement Order, Including the Solicitation and Voting Procedures and Ballots, Should Not Be Approved in Its Current Form.

44.     While the Debtors recently amended the placeholder disclosure statement (and underlying plan) for which the Motion seeks approval, the Debtors have not—as of the Objection Deadline—provided creditors with an updated and conformed Disclosure Statement Order.  Accordingly, Gemini is forced, under compulsion of the Objection Deadline, to make an objection to several substantive provisions in the form of Disclosure Statement Order and to reserve all rights with respect thereto.

### A.    Several Issues with Respect to Gemini's Solicitation Role Remain Open.

45.     Although the Motion presents Gemini's role in connection with soliciting votes from Gemini Lenders as fully agreed, the Disclosure Statement Order brackets several terms with respect to Gemini's role that remain open:  (i) the timing for Gemini's delivery of the Gemini

Voting Statement; and (ii) the manner in which Gemini will deliver unique E-Ballot IDs to Gemini Lenders.[10]

### 1. The Confirmation Schedule Does Not Afford Gemini Adequate Time to Tabulate More Than 232,000 Votes.

46.     The Debtors have asked Gemini to assist with solicitation and tabulation of votes from more than 232,000 Gemini Lenders.  For context, fewer than 1,200 claims were asserted against all of the Debtors in these cases, so the Gemini Lenders represent *more than 99%* of Holders of Claims entitled to vote on the Amended Plan.  To facilitate prompt recoveries to the Gemini Lenders, Gemini is willing to take on this significant obligation, subject to certain conditions.

47.     However, the Solicitation and Voting Procedures set forth an unworkable calendar for solicitation that may unfairly disenfranchise many Gemini Lenders.  Pursuant to the proposed Solicitation and Voting Procedures filed with the Motion, Gemini Lenders will vote directly on the Debtors' Gemini Lender Voting Portal using a unique E-Ballot ID assigned to each Gemini Lender.  The Debtors' Solicitation Agent, Kroll, will provide Gemini with a voting report outlining all submissions it received "[b]y no less than eight (8) days prior to the Confirmation Hearing."  Gemini is then responsible for providing to Kroll *one calendar day later* ("no less than seven (7) days prior the Confirmation Hearing") a report outlining the amount and type of digital assets associated with each E-Ballot ID used to cast a vote.

48.     One calendar day is simply insufficient time to prepare a report that may include more than 232,000 line items.  Gemini needs at least seven (7) calendar days from the receipt of the Gemini Lender Voting Report in order to provide such information and make sure

---

10.  Conforming changes to the Amended Disclosure Statement may also be required with respect to the delivery of E-Ballot IDs.

that it is carefully checked.  Requiring a shorter window creates challenges to producing a complete and accurate Gemini Voting Statement.  Gemini is not aware of any prejudice that would result from providing additional time to perform this essential service.

> **2. Gemini Will Not Email Unique E-Ballot IDs Directly to Gemini Lenders, But Will Instead Provide Instruction Via Email as to How to Access E-Ballot IDs Through Their Accounts.**

49.     The recently-filed Amended Disclosure Statement indicates in Section XIII that Gemini will email Gemini Lenders' unique E-Ballot IDs directly to them.  However, as correctly reflected in paragraph 19 of the Disclosure Statement Order annexed to the Motion, the Debtors and Gemini never reached an agreement with respect to the precise method via which such E-Ballot IDs would be distributed to Gemini Lenders.  In fact, after reviewing, considering, and beta-testing the mechanics for distributing the E-Ballot IDs to Gemini Lenders, Gemini has concluded that it is prohibitively expensive, time-consuming, and unsafe to individually email the unique E-Ballot IDs to Gemini Lenders directly.  Instead, it has determined that it will post each Gemini Lender's unique E-Ballot ID to such Gemini Lender's account and send the Gemini Lenders a generalized email with instructions on how to access their unique E-Ballot IDs through their secure Gemini accounts.

50.     The Disclosure Statement Order and Solicitation and Voting Procedures (and, to the extent recited therein, the Amended Disclosure Statement) should reflect that unique E-Ballot IDs will be posted to Gemini Lenders' accounts.  Gemini will only move forward with soliciting votes from the Gemini Lenders on the Debtors' behalf with the express approval of this Court, including the manner of delivering the E-Ballots IDs to Gemini Lenders.

**B.**     **The Solicitation Packages to Gemini Lenders Should Include a Letter from Gemini.**

51.     As set forth herein, Gemini submits that the Amended Plan is patently unconfirmable because, among other things, it improperly deprives Gemini Lenders of the value of the collateral securing their claims and diverts that value away from Gemini Lenders for the benefit of the Debtors' institutional clients.

52.     However, to the extent that the Court determines that solicitation of the Amended Plan at this time is appropriate, Gemini requests that the Amended Disclosure Statement be amended to address the disclosure-related concerns raised in this Objection, and that Gemini be permitted to (i) include in the Solicitation Packages provided to Gemini Lenders a cover letter, not only describing the content of the Solicitation Package and providing instructions for accessing their E-Ballot IDs, but also recommending rejection of the Amended Plan, and (ii) post an update recommending rejection of the Amended Plan to the Earn program webpage at www.gemini.com/earn, the forms of both of which are attached hereto as **Exhibit A** (together, the "Gemini Communications").[11]  As discussed above, many Gemini Lenders (who are largely individuals who have limited or no experience with bankruptcy proceedings) look to Gemini to provide information regarding these Chapter 11 Cases.

53.     Accordingly, Gemini respectfully requests that the Court authorize and direct Gemini to include the Gemini Communications in the Solicitation Packages provided to Gemini Lenders.

---

11.  The Motion contemplated inclusion of a Gemini Communication Package solely to the extent that Gemini agrees to recommend the Amended Plan.  (Mot. ¶ 19(f).)  The issues raised in this Objection demonstrate why Gemini should be permitted to include the Gemini Communications in the Gemini Lender Solicitation Packages regardless of Gemini's recommendation with respect to approval of the Amended Plan.

C.    **The Solicitation and Voting Procedures Should Provide Clarity Regarding the Amount of Gemini Lender Claims for Voting Purposes.**

54.    For the avoidance of doubt, Section D of the Solicitation and Voting Procedures should provide that Gemini Lender Claims shall be temporarily allowed for voting purposes in the voting amount set forth in the Gemini Voting Statement based on the equivalent U.S. dollar value using the agreed conversion rate.  The Gemini Voting Statement shall list the amount and type of digital assets in the account of each voting Holder of a Gemini Lender Claim (as identified by such Holder's unique E-Ballot ID), as reflected in the documentation providing the individual holdings underlying the Gemini Master Claim.

55.    This concept is already implicit in Section G of the Solicitation and Voting Procedures, which provides that Kroll "will utilize the voting amounts provided by Gemini in the Gemini Voting Statement for tabulation purposes."  Gemini seeks additional clarity to preserve Gemini Lender rights.

## **RESERVATION OF RIGHTS**

56.    This Objection is submitted without prejudice to, and with a full reservation of, Gemini's rights to object to confirmation of the Amended Plan on any basis, or to supplement this Objection in writing or at the hearing on the Amended Disclosure Statement including, without limitation, in the event the Debtors further amend or otherwise modify the Amended Disclosure Statement, the Amended Plan, and/or the Disclosure Statement Order.  In particular, to the extent the Debtors' confirmation-related discovery schedule is intended to apply to the Collateral Determination Proceeding, Gemini reserves its rights to object on the grounds that the schedule is artificially compressed to deprive Gemini of its ability to conduct a meaningful examination of the materials related to the pending Collateral disputes.

## CONCLUSION

**WHEREFORE**, Gemini respectfully requests the Court enter an order: (i) denying

the Motion, or, in the alternative, requiring the Debtors to further amend the Amended Disclosure

Statement and the Disclosure Statement Order (including all exhibits thereto), so as to address the

issues and concerns raised in this Objection; and (ii) granting such other further relief as the Court

deems just and proper.

Dated:   New York, New York
         October 31, 2023

HUGHES HUBBARD & REED LLP

By: */s/ Anson B. Frelinghuysen*

    Anson B. Frelinghuysen
    Dustin P. Smith
    Erin E. Diers
    Elizabeth A. Beitler
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: anson.frelinghuysen@hugheshubbard.com
        dustin.smith@hugheshubbard.com
        erin.diers@hugheshubbard.com
        elizabeth.beitler@hugheshubbard.com

*Counsel to Gemini Trust Company, LLC*

## EXHIBIT A

**Gemini Communications**

## **Exhibit 1 to the Gemini Communications**

**Email to Gemini Lenders**

Subject: Action Requested - Important Earn Update

Hi there,

We are reaching out with an important update regarding the Genesis bankruptcy proceedings and the ongoing efforts to find a resolution for Earn users to recover their assets. **Please note that this notice requests that you take action.**

On November [__], 2023, the United States Bankruptcy Court for the Southern District of New York entered an Order authorizing and directing Gemini to distribute the following Genesis chapter 11 plan (the "Plan") voting materials. The purpose is for you to have a say in determining whether to accept or reject the Plan, which can be found here [link to solicitation package pdf].

**All Earn users are now able to vote to accept or reject the proposed plan of reorganization. Gemini recommends that you vote to REJECT (vote against) the Plan.**

Gemini, as agent on behalf of the Earn users, believes the Plan provides insufficient recovery for Earn users (referred to as "Gemini Lenders" in the Plan) and that Earn users are entitled to a higher and better recovery than is contemplated under the Plan in its current form.

As outlined in the October 27th Earn update (which can be found here [link to gemini.com/earn]), Gemini believes the Plan provides Earn users with an unfair recovery for two key reasons:

1. Earn users should receive the full benefit of the first tranche of collateral that Genesis pledged to Gemini to secure each Earn User's loan (the "Initial Collateral") and Gemini's protective foreclosure on the Initial Collateral in November 2022. The current Plan diminishes Earn users' recoveries from Genesis by allowing other creditors to capture the post-foreclosure appreciation on the Initial Collateral to which only the Earn users are entitled; and

2. The second tranche of collateral that DCG and Genesis pledged to Gemini to secure each Earn user's loan (the "Additional Collateral") should be delivered immediately to Gemini for the benefit of the Earn users, giving Earn users the benefit of the Additional Collateral, which DCG and Genesis pledged to Gemini one year ago but which Genesis has yet to deliver. The current Plan instead funnels the value of the Additional Collateral to Genesis's other creditors, providing Earn users with only a *pro rata* share of the Additional Collateral when Earn users are entitled to the Additional Collateral's full value.

**In light of the insufficient recovery provided to Earn users, Gemini believes that the Plan is NOT in the best interests of Earn users.**

> **GEMINI RECOMMENDS THAT YOU
> VOTE TO REJECT (VOTE AGAINST) THE PLAN.**
>
> **Your vote to REJECT the Plan is crucial regardless of the size of your claim.**
>
> **For your vote to count, your ballot must be received by Kroll by [DATE] at [TIME].**

As always, facilitating the return of your assets from Genesis remains our highest priority. We truly appreciate your continued patience and support as we work through the next stage of this process.

All Earn updates can be found at www.gemini.com/earn. For specific information or updates relating to Genesis bankruptcy proceedings, please refer to https://restructuring.ra.kroll.com/genesis/.

Below please find instructions on submitting your vote as well as a list of all voting materials. **YOU ARE URGED TO CAREFULLY READ THESE DOCUMENTS IN THEIR ENTIRETY.**

The Gemini Team

The voting materials include the following:

1.      a notice providing the date of the hearing to confirm the Plan and deadline for parties to object to the Plan;

2.      the Disclosure Statement Order (excluding all exhibits but including its Exhibit 1);

3.      the *Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement");

4.      the Plan, which is an exhibit to the Disclosure Statement;

5.      the form of ballot that Earn users must submit via the online balloting platform described below (which includes detailed voting instructions);

6.      a cover letter from Genesis further describing the contents of the voting material package; and

7.      cover letter(s) from the Official Committee of Unsecured Creditors or the Ad Hoc Group of Genesis Lenders stating their position with respect to the Plan.

**How to Vote On The Plan:**

As part of the approved voting procedures, each Earn user has been assigned a unique ID code ("E-Ballot ID"). Voting on the Plan will be conducted through an electronic balloting process, and you will need your E-Ballot ID to cast your vote to accept or reject the Plan. You can find your assigned E-Ballot ID by logging into your Gemini account via web browser, navigating to your "Account Statements" page, and clicking on "Earn Voting Materials." To cast your vote, please visit Genesis's soliciting agent's (Kroll) online balloting platform, which can be found here [link to Kroll]. Please follow the voting instructions provided in the Solicitation Package and on the online balloting platform to properly cast your vote.

**For your vote to count, your ballot must be received by Kroll, by [DATE] at [TIME].**

**THE DESCRIPTION OF THE PLAN IN THIS EMAIL IS ONLY A SUMMARY THAT HAS BEEN PREPARED BY GEMINI AND APPROVED BY THE BANKRUPTCY COURT. YOU SHOULD READ THE PLAN AND DISCLOSURE STATEMENT FOR FULL INFORMATION ABOUT THE PLAN.**

**THE RECOMMENDATION TO REJECT (VOTE AGAINST) THE PLAN IS GEMINI'S OPPOSITION TO THE PLAN. IT DOES NOT PURPORT TO REFLECT THE VIEWS OF GENESIS OR ANY OTHER PARTY IN THE GENESIS BANKRUPTCY PROCEEDING. REJECTION OF THE PLAN COULD HELP BRING ABOUT WHAT GEMINI BELIEVES IS A MORE APPROPRIATE RESOLUTION OF THE GENESIS BANKRUPTCY PROCEEDING. HOWEVER, BEFORE YOU CAST YOUR BALLOT, YOU MAY WANT TO CONSULT YOUR OWN LEGAL AND FINANCIAL PROFESSIONALS.**

**THERE IS ALWAYS A RISK THAT FURTHER LITIGATION AND / OR A LATER SETTLEMENT COULD RESULT IN HIGHER OR LOWER RECOVERIES FOR EARN USERS THAN THE PLAN. GEMINI DOES NOT GUARANTEE ANY PARTICULAR RESULT IN THE GENESIS BANKRUPTCY PROCEEDING.**

## **Exhibit 2 to the Gemini Communications**

### **Gemini Earn Update**

On November [___], 2023, the United States Bankruptcy Court for the Southern District of New York entered an Order authorizing and directing Gemini to distribute the Genesis chapter 11 plan (the "Plan") voting materials.  The purpose is for Earn users to have a say in determining whether to accept or reject the Plan, which can be found here [link to solicitation package pdf].

**All Earn users are now able to vote to accept or reject the proposed plan of reorganization. Gemini recommends that you vote to REJECT (vote against) the Plan.**

Gemini, as agent on behalf of the Earn users, believes the Plan provides insufficient recovery for Earn users (referred to as "Gemini Lenders" in the Plan) and that Earn users are entitled to a higher and better recovery than is contemplated under the Plan in its current form.

Gemini believes the Plan provides Earn users with an unfair recovery for two key reasons:

1. Earn users should receive the full benefit of the first tranche of collateral that Genesis pledged to Gemini to secure each Earn User's loan (the "Initial Collateral") and Gemini's protective foreclosure on the Initial Collateral in November 2022. The current Plan diminishes Earn users' recoveries from Genesis by allowing other creditors to capture the post-foreclosure appreciation on the Initial Collateral to which only the Earn users are entitled; and

2. The second tranche of collateral that DCG and Genesis pledged to Gemini to secure each Earn user's loan (the "Additional Collateral") should be delivered immediately to Gemini for the benefit of the Earn users, giving Earn users the benefit of the Additional Collateral, which DCG and Genesis pledged to Gemini one year ago but which Genesis has yet to deliver. The current Plan instead funnels the value of the Additional Collateral to Genesis's other creditors, providing Earn users with only a *pro rata* share of the Additional Collateral when Earn users are entitled to the Additional Collateral's full value.

**In light of the insufficient recovery provided to Earn users, Gemini believes that the Plan is NOT in the best interests of Earn users.**

---

**GEMINI RECOMMENDS THAT EARN USERS
VOTE TO REJECT (VOTE AGAINST) THE PLAN.**

**Each Earn users' vote to REJECT the Plan is crucial regardless of the size of any individual claim.**

**For each Ear users vote to count, their ballot must be received by Kroll by [DATE] at [TIME].**

---

**How to Vote On The Plan:**

As part of the approved voting procedures, each Earn user has been assigned a unique ID code ("E-Ballot ID").  Voting on the Plan will be conducted through an electronic balloting process, and Earn users will need their E-Ballot ID to cast their vote to accept or reject the Plan.  Earn users can find their assigned E-Ballot ID by logging into their Gemini account via web browser, navigating to the "Account Statements" page, and clicking on "Earn Voting Materials."  To cast your vote, please visit Genesis's soliciting agent's (Kroll) online balloting platform, which can be found here [link to Kroll].  Please follow the voting instructions provided in the Solicitation Package and on the online balloting platform to properly cast your vote.

As always, facilitating the return of Earn users' assets from Genesis remains our highest priority.  We truly appreciate Earn users continued patience and support as we work through the next stage of this process.

For specific information or updates relating to Genesis bankruptcy proceedings, please refer to https://restructuring.ra.kroll.com/genesis/.