WILLIAM K. HARRINGTON
United States Trustee
U.S. Department of Justice                          <u>**Hearing Date:**</u> November 7, 2023
Office of the United States Trustee                 <u>**Hearing Time:**</u> 2:00 p.m.
One Bowling Green
Suite 534
New York, New York 10004
Attention: Greg M. Zipes

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- x
In re                                           :  Chapter 11
                                                :
GENESIS GLOBAL HOLDCO, LLC, et. al.,¹           :  Case No. 23-10063 (SHL)
                                                :
                       Debtors.                 :  (Jointly Administered)
------------------------------------------------------- x
```

## OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE
## TO AMENDED DISCLOSURE STATEMENT AND RELATED DOCUMENTS

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"),

through his counsel, files this Objection (the "Objection") to the Amended Disclosure Statement

(the "Amended Disclosure Statement") with Respect to the Amended Joint Plan of Genesis

Global Holdco, LLC, *et al*., Under Chapter 11 of the Bankruptcy Code, dated October 24, 2023

(the "Liquidating Plan") [ECF No. 839] (including all exhibits attached thereto, and as may be

amended, altered, modified, revised, or supplemented from time to time)[2] as containing

"adequate information" pursuant to section 1125 of the Bankruptcy Code.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Capitalized terms not defined herein are defined in the Amended Disclosure Statement.

## PRELIMINARY STATEMENT

The United States Trustee objects to the filing with inadequate notice to interested parties and the Court of the Amended Disclosure Statement and Liquidating Plan (defined below) that materially changes the terms of the plan previously filed by the Debtors. The prior plan provided for the sale of assets of the Debtors and a non-debtor affiliate, a discharge of the Debtors, and the reorganization of any unsold assets for the benefit of the claim holders. The Liquidating Plan provides for the liquidation of all three Debtors. There could not be a starker example of a material change of a plan. Yet, the Debtors have provided parties and the Court with little or no time – and certainly, insufficient time as set forth under the Bankruptcy Rules – to review the materially changed terms of the plan. Further, the Amended Disclosure Statement contains significant blanks, requiring the creditors and parties to guess at crucial terms. The noticing and disclosure requirements of Section 1125 of the Bankruptcy Code do not change because this is a crypto case or because the parties are still negotiating key terms. For the reasons set forth below, the Court should adjourn the hearing on the Amended Disclosure Statement, direct the Debtors to include the crucial but missing information in the documents, and to comply with the Bankruptcy Rule's noticing provisions.

In the event the Court declines to adjourn the hearing and hears the Amended Disclosure Statement on the shortened notice that the Debtors seek, the Court should not approve the Amended Disclosure Statement absent significant changes. For example, the Debtors have provided for "Distribution Principles." However, those principles are not described. In fact, it appears that the relevant exhibit describing the distribution allocations to various creditors is not only blank, but it is not attached to the Amended Disclosure Statement.

Further, the Amended Disclosure Statement describes a Liquidating Plan that contains overly broad releases without sufficient justification. Although the Amended Disclosure Statement asserts that Released Parties are providing consideration for the releases, no details are provided. Moreover, Released Parties include future entities such as the Wind Down Debtors and Plan Administrator that have not yet come into existence. How can a party that does not yet exist provide consideration to the creditors of the estate? The Amended Disclosure Statement also does not explain what claims could possibly be asserted against these entities that need to be released, or why such prospective releases are necessary to the Liquidating Plan.

Similarly, the Amended Disclosure Statement describes a Liquidating Plan that contains an overly broad exculpation provision. There appears to be no justification or legal basis for the inclusion of such a provision.

For these reasons, as detailed more fully below, the United States Trustee respectfully requests that the Court deny the approval of the Amended Disclosure Statement, unless modified to address these issues.

## FACTS

### A. <u>General Facts</u>

1.      On January 19, 2023 (the "Petition Date"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code by filing petitions in each of the cases, SDNY Case Nos. 23-10063 (Genesis Holdco); 23-10064 (Genesis Global Capital LLC); and 23-10065 (Genesis Asia Pacific PTE Ltd.).

2.      The Debtors continue to operate their business and manage their properties as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

3.    On January 26, 2023, the Court entered an Order directing that these cases be jointly administered under the above captioned case. ECF Doc. No. 37.

4.    On February 3, 2023, the United States Trustee filed a notice appointing a seven-member committee of unsecured creditors (the "UCC"). ECF Doc. No. 53.

**B.  <u>Sale Plan and Disclosure Statement</u>**

5.    On June 13, 2023, after filing an initial plan and disclosure statement, the Debtors filed a plan (the "Sale Plan") that outlined a sale and reorganization.  ECF Doc. No. 427.   Along with the Sale Plan, the Debtors filed a disclosure statement (the "Sale Disclosure Statement"). ECF Doc. No. 429.

6.    According to the Sale Disclosure Statement, the Debtors and the Debtors' creditors and stakeholders, including the UCC, an ad hoc group of lenders of Genesis Global Capital, LLC (the "Ad Hoc Group"), Gemini Trust Company, LLC ("Gemini"), and DCG, Holdco's corporate parent and the Debtors' largest borrower, were seeking a consensual resolution to the case. *See id.* Sale Disclosure Statement at Section VI.C.

7.    The Sale Plan provided for the Debtors to continue the ongoing marketing and sale process to sell any or all of the assets of the Debtors, the Genesis Platform, or the Genesis Platform along with GGT. The Sale Plan also provided for the option to have any unsold portion of the Genesis Platform be reorganized as a going concern for the benefit of the Holders of Allowed Claims." In that scenario, Reorganized GGH will retain, for the benefit of the Holders of Allowed Claims, one hundred percent (100%) of the Equity Securities in Genesis Bermuda Holdco Limited.  ECF Doc. No. 429.  Sale Disclosure Statement 1-2.

8.    The Debtors separately filed Exhibit C (Liquidation Analysis) and Exhibit D (Financial Projections) to the Sale Disclosure Statement. ECF Doc. No. 488:  The Liquidation

Analysis was pro forma and lacked detail, including why the Debtors believed a chapter 7 trustee could not distribute the coins as efficiently as the Debtors:

> The Debtors have estimated the impact of a chapter 7 conversion compared to Estimated Net Assets Available for Distribution under the Plan and related Financial Projections. Based on the analysis below, the Debtors believe that a chapter 7 conversion could add $73 - $81 million of costs across all Debtors, with no additional increase in asset values or reductions in claims:

| ($ in millions) | Notes | GGC | | GAP | | GGH | |
|---|---|---|---|---|---|---|---|
| | | Low | High | Low | High | Low | High |
| **Incremental Costs** | | | | | | | |
| Reduced Asset Recoveries | Note A | - | - | - | - | - | - |
| Chapter 7 Trustee Fees | Note B | (64.1) | (73.5) | (0.1) | (0.9) | (2.3) | (2.9) |
| Incremental Professional Fees | Note C | (5.8) | (3.2) | (0.9) | (0.5) | (0.2) | (0.1) |
| **Total Incremental Costs** | | $ (69.9) $ | (76.6) | $ (1.0) $ | (1.4) | $ (2.5) $ | (3.0) |

> Note A– Reduced Asset Recoveries
>
> While the Debtors believe the Plan will provide greater proceeds and recoveries to Holders of Allowed Claims relative to those realized in a chapter 7 liquidation, the Debtors have not estimated such impact in the table above. The Debtors believe that such impact, were it to be estimated, would further prove the Plan to be in the best interest of creditors as compared to a chapter 7 conversion.

*See* ECF No. 488, Ex. C (Liquidation Analysis).

**C.  The Filing of the Amended Disclosure Statement and the Liquidating Plan**

9.      With filing of the Liquidating Plan, the Debtors have substantially and materially modified the Sale Plan. Most obviously, the discharge language has been removed and the Debtors have announced that they are no longer seeking a sale of their assets. As the Debtors state, there are significant open issues with DCG and Gemini, and no agreement is currently possible. *See* ECF No. 839 Amended Disclosure Statement, 1.A.

10.     Despite its great length, the Amended Disclosure Statement omits important relevant information about creditor recoveries. For example, with respect to the Debtor Genesis Global Holdco LLC, the recovery for Class 3 (Fiat/Stablecoin Unsecured Claims), Class 4 (BTC Unsecured Claims), Class 5 (ETH Unsecured Claims), Class 6 (Alt-coin unsecured claims) are

all subject to the "Distribution Principles." *See* ECF No. 839 at 66-67. However, no such

"Distribution Principles" were provided in the Amended Disclosure Statement.

11.    Further, the Amended Disclosure Statement proposes a payment to the Ad Hoc

Group's professionals as deemed administrative expense, which undoubtedly will be substantial,

without identifying any legal basis for such payment[3] or providing estimates of what these

payments might be (other than lumping these payments under a general administrative budget).

*See* ECF No. 839 at 64 (v).

12.    Without explaining the consideration, monetary or otherwise, for the releases, the

Debtors propose the following as "Released Parties: (i) the Debtors, (ii) the Wind-Down

Debtors, (iii) the Other Genesis Entities, (iv) the Committee and its members (solely in their

capacities as such), (v) the members of the Ad Hoc Group SteerCo (solely in their capacities as

such) if the Ad Hoc Group Acceptance Event occurs, (vi) the PA Officer (solely in its capacity as

such), and (vii) each Related Party of each Entity described in the foregoing clauses (i)–(vi) (in

each case, solely in its capacity as such). *See* Amended Disclosure Statement at 15.

### OBJECTION

### I.  The Debtors are Proposing a New Plan and Should Comply with the Noticing Rules

The Debtors filed an Amended Disclosure Statement that essentially reveals a new plan

of reorganization. As a result, the content of the Amended Disclosure Statement substantially

deviates from the prior version. Among other things, the Debtors are now liquidating and do not

have an agreement with the DCG entities. Because the filed document is now essentially a new

disclosure statement, the Debtors need to comply with Bankruptcy Rules 3017 and 2002 and

provide 28-day notice, plus three days for mailing. There is simply no reason to shorten the

---

[3] As set forth below, the United States Trustee objects to the Debtors' proposed payment of the Ad Hoc
Group's professionals absent a showing under Section 503(c) of the Bankruptcy Code.

time, particularly in a complex Chapter 11 case like this with many creditor constituencies. The

Court should not countenance this practice, when the Debtors did not even request permission to

shorten notice from the Court, particularly at the expense of, and with prejudice to, parties in

interest, who will have not been afforded sufficient time to review the voluminous documents or

form a meaningful response.

## II.     The Amended Disclosure Statement Should Not Be Approved Because It Fails to Meet the Standard Under Section 1125(a)

### A.  <u>General Standards for Disclosure Statements</u>

Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain

"adequate information" describing a confirmable plan.  11 U.S.C. § 1125.  The Bankruptcy Code

defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in
> light of the nature and history of the debtor and the condition of the debtor's
> books and records . . . that would enable a such a hypothetical reasonable investor
> . . . to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re*

*Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Adelphia Commc'ns Corp.*,

352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54

(S.D.N.Y. 1999).

To be approved, a disclosure statement must include sufficient information to apprise

creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus.,*

*Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to

the ramifications of any proposed plan will have to be provided to, and digested by, the creditors

and other parties in interest in order to arrive at an informed decision concerning the acceptance

or rejection of a proposed plan").  Although the adequacy of the disclosure statement is

determined on a case-by-case basis, the disclosure statement must "contain simple and clear

language delineating the consequences of the proposed plan on [creditors'] claims and the

possible [Bankruptcy Code] alternatives . . .." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973,

981 (Bankr. N.D.N.Y. 1988).

**B.      The Disclosure Statement Does Not Provide Adequate Information**

> **1. The Disclosure Statement Fails to Provide Important Information to
> Creditors About Potential Distributions and the Timing of Such
> Distributions.**

Despite its length, the Amended Disclosure Statement does not contain the information

that is most germane to creditors: *what distributions can creditors expect under the Plan and*

*when will creditors likely receive those distributions.* As stated before, the recovery for the

unsecured creditor classes is governed and subject to the "Distribution Principles." However, the

description or definition of the Distribution Principles is missing in the Amended Disclosure

Statement. On the Liquidating Plan attached to Amended Disclosure Statement, "Distribution

Principles" is defined as follows:

*"Distribution Principles"* means the distribution mechanics described in [Exhibit
[ ] attached to the Disclosure Statement, which shall be subject to the Committee's Consent and
the Ad Hoc Group's Consent (if the Ad Hoc Group Acceptance Event has occurred) in all
respects.

*See* Amended Disclosure Statement Ex. A at 10 No. 72,

The Exhibit containing the Distribution Principles is not attached.  However, the Debtors

then refer to the Distribution Principles to propose funding of the Liquidating Plan.  For

example, "Each Holder of an Allowed BTC-Denominated Unsecured Claim against GGH shall

receive its Pro Rata share of the Distributable Assets allocated to such Class in accordance with

the Distribution Principles."  *See* Summary of Distributions BTC-Denominated Unsecured

Claims, Section 4.

Additionally, while the Debtors provide an extensive description of the litigations they are involved in, such as with DCG entities, the Amended Disclosure Statement fails to disclose: (1) Debtors' likelihood to prevail and (2) how those litigations could impact the potential recovery for various classes of creditors. *See* Amended Disclosure Statement, VI.F.

The Liquidation Analysis (Amended Disclosure Statement, Ex. C) provides little in the way of clarification. It asserts that the only difference between the Plan and a chapter 7 liquidation will be incremental costs increases. "While the Debtors believe the [Liquidating] Plan will provide greater proceeds and recoveries to Holders of Allowed Claims relative to those realized in a chapter 7 liquidation, the Debtors have not estimated such impact in the table above. The Debtors believe that such impact, were it to be estimated, would further prove the Plan to be in the best interest of creditors as compared to a chapter 7 conversion." *See* Liquidation Analysis. ECF Doc No. 839, Exhibit C, Note A.

The Amended Disclosure Statement doesn't provide any support for the assumptions in the Liquidation Analysis. For instance, the Amended Disclosure Statement doesn't estimate the potential cost savings of substituting a chapter 7 trustee for the current administrative expenses of this chapter 11 case. The ongoing administrative expense of the chapter 11 is completely absent from the current Amended Disclosure Statement liquidation analysis. The Amended Disclosure Statement also doesn't provide an estimate of how much faster creditors might receive a distribution under a chapter 7 liquidation. Creditors might reasonably prefer a speedier and more certain distribution under a chapter 7 liquidation, even if it is in a lesser amount than a more delayed, less certain projected distribution under the chapter 11 plan, even if the chapter 11 plan distribution is for a higher amount. Therefore, creditors need to be given information

9

regarding the timing of recoveries in a chapter 7 liquidation versus the Plan to have adequate information to vote on the Plan.

### 2. Disclosure of Material and Relevant Information Should Not Wait Until the Plan Supplement is Filed

The Debtors assert that a Plan Supplement will be filed only five days before the date of balloting.  It is unknown at this point if the Plan Supplement will provide clarity regarding the expected amount and timing of creditor recoveries, the structure of the post-confirmation operation of the Debtors, or the details relating to the Distribution Principles. Regardless, such information is essential to a disclosure statement and should not wait until the filing of a Plan Supplement that is scheduled to occur only five days before the creditors must vote on the Liquidating Plan. *See* Amended Disclosure Statement at Section I.A. (145-146). Five days is insufficient time for the average creditor to digest the information within the context of the Liquidating Plan. *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

The to-be-filed Plan Supplement will provide other material information that creditors will need to quickly evaluate, including: "(i) the New Governance Documents, (ii) the Plan Administration Agreement and Wind-Down Oversight Committee Bylaws, (iii) an exhibit disclosing the identity and affiliations of the PA Officer and any Person proposed to serve on the New Board or proposed to serve as an officer of any of the Wind-Down Debtors, (iv) the Schedule of Assumed Executory Contracts and Unexpired Leases, (v) an exhibit identifying the members of the Wind-Down Oversight Committee, (vi) an exhibit identifying the intercompany claims that shall constitute Excluded Claims, (vii) the Digital Assets Conversion Table, and (x) the Gemini Withheld Assets Schedule" Amended Disclosure Statement at Section III.O. Much of this information could have a material impact on creditor recoveries and thus affect the creditors' decision on whether to vote on any plan.  The Amended Disclosure Statement does not include

this material information, and without it, creditors do not have adequate information to vote on the Liquidating Plan.

The Amended Disclosure Statement should not be approved absent the disclosure of basic information about the Debtors' proposed distribution to creditors and information on the administration of the Wind-Down Debtors.

> **(i)     Broad Releases Are Provided Without Adequate Information About Why Such Broad Releases Are Warranted**

The Liquidating Plan, if confirmed, will provide a myriad of third parties with broad releases. The third-party releases in the Liquidating Plan are material terms and should be addressed fully in the Amended Disclosure Statement so that interested creditors can determine (i) exactly what releases will be imposed upon them and (ii) the likelihood of the Debtors' success in confirming a Liquidating Plan with such broad third-party releases. Unfortunately, other than vague assurances that the Debtors believe the releases contained in the Liquidating Plan are reasonable and fair, the Amended Disclosure Statement fails to explain in a clear and succinct manner what releases are being imposed on creditors and what support is found in the Bankruptcy Code and Circuit precedent for those broad third-party releases.

The Amended Disclosure Statement should explain why the third-party releases in the Liquidating Plan are rare and unique circumstances under the facts of this case and likely to be approved by the Court. Specifically, assuming the Debtors persuade the Court that it has subject matter jurisdiction to compel impaired creditors to provide non-consensual third-party releases, the imposition of third-party releases is proper only in rare and unique circumstances. *In re SunEdison*, 576 B.R. 453, 461-62 (S.D.N.Y. Bankr. 2017) (*citing Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 141 (2d

Cir. 2005) ("*Metromedia*")). In *Metromedia*, the Second Circuit articulated at least two reasons for its reluctance to approve these releases:

> First, the only explicit authorization in the Code for non-debtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims, [and] …Second, a non-debtor release is a device that lends itself to abuse. By it, a non-debtor can shield itself from liability to third parties. In form, it is a release; in effect it may operate as a bankruptcy discharge without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity.

*Id*. at 142. *See also In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (footnotes omitted); *In re Motors Liquidation Co.*, 477 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Although (since the Code is silent on the matter) third-party releases aren't 'inconsistent with the applicable provisions of this title,' the Second Circuit has ruled that they're permissible only in rare cases, with appropriate consent or under circumstances that can be regarded as unique, some of which the Circuit listed. But where those circumstances haven't been shown, third-party releases can't be found to be appropriate").

According to *Purdue Pharma,*[4] given the potential for abuse, third-party releases must be imposed against a backdrop of equity, and courts should exercise particular care when evaluating a non-debtor release. *Purdue Pharma.,* 2023 WL 3700458, at *79.  In evaluating releases, courts must consider the following seven factors to determine if a non-consensual non-debtor release is appropriate:

> First, is there an identity of interest between the debtor and the released third parties?
>
> Second, are the claims against the debtor and non-debtor factually and legally intertwined?

---

[4]     The Supreme Court granted the United States Trustee's Petition for Writ of Certiorari in the in the case of *William K. Harrington, United States Trustee, Region 2 v. Purdue Pharma L.P., et al.*, No. 23-124.  *See William K. Harrington, United States Trustee, Region 2 v. Purdue Pharma, L.P. et al.*, No. 23-124, Order Granting Certiorari (U.S. Aug. 10, 2023).

Third, is the scope of the release appropriate?

Fourth, is the release essential to the reorganization?

Fifth, has the non-debtor contributed substantial assets to the reorganization?

Sixth, did the impacted creditors overwhelmingly vote in support of the plan? And

Seventh, does the plan provide fair payment of enjoined claims?

*Id.* at **78- 79.

The Second Circuit requires "consideration of each factor" but also cautions that "there may even be cases in which all factors are present, but the inclusion of third-party releases in a plan of reorganization should not be approved." *Id*. at * 79. The Court also required the bankruptcy court to "support each of these factors with specific and detailed findings." *Id.*

The third-party release here fails to satisfy the seven-factor test. First, the Debtors have not shown that any of the numerous proposed released third parties have made essential contributions to the Liquidating Plan. As the Second Circuit held, "if the only reason for the inclusion of a release is the non-debtor's financial contribution to a restructuring plan, then the release is not essential to the bankruptcy." *Purdue Pharma* at *81. Second, there has been no proof that any of the proposed released parties have contributed or will contribute substantial assets to the reorganization.  In *Purdue Pharma*, the Second Circuit noted that the funds contributed to the plan were one of the largest contributions in bankruptcy anywhere.  *Id*. Here, the Amended Disclosure Statement fails to identify what each released party is contributing to even make such an assessment. The Amended Disclosure Statement should adequately explain the contributions and consideration the proposed released parties are making to the Liquidating Plan.

Even if, however, the third-party release here could satisfy the *Purdue* factors, approval of the release is a non-core proceeding under *Stern v. Marshall*, 564, U.S. 462 (2011), *Perdue Pharma,* at *68 (2d Cir. May 30, 2023), and the bankruptcy court therefore lacks constitutional

authority to finally approve the release.[5] Accordingly, the bankruptcy court's decision, should it approve the third-party release, would only constitute findings of fact and conclusions of law for the district court's *de novo* review before the Liquidating Plan could be confirmed.

The Liquidating Plan provides releases by the Debtors to the Released Parties and by the non-debtor Releasing Parties to the Debtors and certain non-debtors. The releases by the Debtors to the Released Parties are allegedly for "good and valuable consideration," but the Amended Disclosure Statement fails to detail what consideration was provided by each Released Party. *See* Amended Disclosure Statement at Section VII.I.(iv). It is inexplicable why other Genesis Entities (defined as non-debtor subsidiaries of GGH) should be released.  There is no evidence as to their contribution, economic or otherwise, to facilitate the reorganization.  Likewise, it is unreasonable why the ad hoc group – who have opposed the Debtors at multiple critical junctures of the cases – should get a release. Additionally, there is no basis that the PA officer, whose identity is unknown and has not participated in the case, gets a release. If the Debtors hold claims against the Released Parties, then those claims are assets of the estate. A reasonable creditor voting on the Plan would want to know how the Debtors' assets were valued, including its claims against Released Parties. The Amended Disclosure Statement doesn't detail what the Debtors received in exchange for releasing the Released Parties and thus the Amended Disclosure Statement does not contain adequate information for a reasonable creditor to vote on the Liquidating Plan.

---

[5]     There is no information contained in the Amended Disclosure Statement setting forth a basis for the Debtors' apparent belief that this Court has subject matter jurisdiction to impose the third-party releases. Whether this Court has subject matter to bestow such broad releases is a material issue and an issue that should be addressed by the Debtors in the Amended Disclosure Statement so that interested creditors can determine (i) exactly what release are being imposed and on which creditors and (ii) the likelihood of Debtors' success of confirming a plan with such broad releases. *See In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008), vacated & remanded on other grounds, 557 U.S. 137 (2009), *aff'g in part & rev'g in part*, 600 F.3d 135 (2d Cir. 2010) and *Deutsche Bank AG v. Metromedia*, 416 F. 3d at 141; *accord In re Dreier LLP*, 429 B.R. 112, 132 (Bankr. S.D.N.Y. 2010); *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 695 (Bankr. S.D.N.Y. 2010).

Similarly, the Liquidating Plan provides the benefit of non-debtor releases to the Released Parties that are for "good and valuable consideration." *See* Amended Disclosure Statement at Section VII.I.(iv). Again, the consideration is not detailed in the Amended Disclosure Statement. Notwithstanding that this is a liquidating plan, the Released Parties are wide-ranging and include: (i) the Wind-Down Debtors, (ii) the PA Officer, (iii) the Ad Hoc Group SteerCo, and many others. *See* Amended Disclosure Statement at Section I.A. (156). And a reasonable creditor would want to know why entities that are not yet in existence are receiving a release from potential future losses of an entity that may be funding creditor recoveries in the future.

The Special Committee and the Ad Hoc Group SteerCo are receiving a release. *Id*. The Special Committee was established on November 18, 2022, by the Holdco Board of Directors to make "all decisions relating to the liquidity and restructuring of Holdco and its subsidiaries." Amended Disclosure Statement at Section VI.D. As part of its mandate, the Special Committee was charged with "investigating the Debtors' relationships and transactions with DCG Entities." *Id*. "One of the primary purposes of this investigation has been to assess whether the Debtors have potentially viable claims against the DCG Entities. . ." *Id*. Given the uncertainties, the Debtors should explain in the Amended Disclosure Statement why these parties should receive releases. Notably, the Special Committee was appointed by the DCG board. Regardless of the reputation of the members on the Special Committee, they should not receive any release until matters with DCG are resolved.

### 3. The Amended Disclosure Statement Describes an Overbroad Exculpation Provision and Fails to Provide Sufficient Explanation or Justification Therefor.

The exculpation provision in the Liquidating Plan is beyond the scope of section 1125(e). Accordingly, the Debtors should revise their exculpation provision so that it is consistent with 11

U.S.C. § 1125; otherwise, the United States Trustee objects to the exculpation provision as set out below.

First, the Exculpation Provision not only covers specific transactions approved by the Court, but also appears to include virtually any action during these Chapter 11 cases. Section 1125(e) is the only section of the Bankruptcy Code that provides for exculpation. *See* 11 U.S.C. § 1125(e) (limiting liability in connection with certain good faith solicitation and plan participation efforts). There is no Bankruptcy Code provision that supports exculpating all these parties in a manner as broadly as in the Liquidating Plan. *See* Amended Disclosure Statement. There is no temporal limitation on exculpation provision, which expressly includes post-effective date conducts and the entities that do not even exist yet.  Exculpation should  only cover certain conducts from the Petition Date to the Effective Date.

Second, the Exculpation Provision is inappropriate because the list of exculpated parties is overly broad. The list of exculpated parties includes many persons who cannot be classified as fiduciaries to the estate. A proper exculpation is a protection of court-supervised fiduciaries. "The exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers." *In re Washington Mut., Inc*., 442 B.R. 314, 350–51 (Bankr. D. Del. 2011).

Here, the Exculpated Parties include not only the Debtor and the UCC and each of their members, but also various officers, directors, accountants, investment bankers, consultants, representatives, creditors, other professionals, and post-effective date entities, such as the PA Officer and members of Wind-down oversight committee. *See* ECF No. 838 (Liquidating Plan), Defined Terms No. 84.  "A conventional business relationship between parties dealing at arm's length does not give rise to fiduciary duties." *Roni LLC v. Arfa*, 74 A.D.3d 442, 444 (2010),

*aff'd,* 18 N.Y.3d 846 (2011) In fact, the range of Exculpated Parties is so broad that it likely includes parties who performed no duties essential, necessary, or at all, related to the Plan. Accordingly, the Amended Disclosure Statement fails to provide adequate information as to why the exculpation clauses are not limited to the fiduciaries in the case. *See Wash. Mut.*, 442 B.R. at 350-351 (limiting exculpation clause to estate fiduciaries).

What is particularly troubling is that the Exculpation provision even *requires the Court* to go beyond the scope of section 1125(e) and to explicitly exculpate, in the Confirmation Order, post-effective date activities that the Court has not even seen its occurrence–

> "The Confirmation Order shall provide that the Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan."

*Id.*

Exculpation clauses should not extend past the effective date of a plan, to avoid exculpating actions that have not yet occurred and are yet unknown. *See In re Mallinckrodt PLC*, 639 B.R. 837, 883 (Bank. D. Del. 2022) (exculpation "only extends to conduct that occurs between the Petition Date and the effective date"). In addition, post-effective date entities cannot receive prospective immunity by exculpation, just as they cannot receive prospective immunity through a release. *See Wash. Mut.,* 442 B.R. at 348 ("The Liquidating Trust and its Trustee have not done anything yet for which they need a release. They will not even come into existence until the Plan is confirmed."). The Plan should not grant prospective releases to entities that do not yet exist on account of future conduct and claim that have yet to arise.

Third, the exculpation provision also includes a "release" as well as an exculpation of various non-debtor parties. Because that release is binding on all holders of claims and equity interests, regardless of how they vote on the Liquidating Plan or whether they opt out of giving third-party release (if they are permitted to do so), such release constitutes an impermissible non-consensual third-party release.

Fourth, in addition to excepting fraud, willful misconduct and gross negligence, the exculpation provision should carve out claims for legal malpractice, release of which is prohibited under section of the New York Rules of Professional Conduct, i.e., N.Y. Comp. Codes R. & Res. Tit. 22 § 1200.8 Rule 1.8(h)(1).

Fifth, the Exculpation Provision should provide carve out for government's enforcement and regulatory actions, which is currently missing. The current Exculpation Provision is inconsistent with provisions of the Bankruptcy Code that affirmatively protect the Government's ability to enforce its police and regulatory powers. While most litigation against a debtor is stayed during a bankruptcy proceeding, the Code expressly exempts criminal prosecutions and governmental regulatory and police proceedings from the automatic stay. *See* 11 U.S.C. § 362(b)(1), (4).

Congress did not intend debtors to be exempt from regulation and has "repeatedly expressed its legislative determination that the [bankruptcy] trustee is not to have carte blanche to ignore nonbankruptcy law." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 502 (1986). And even when a bankruptcy case ends, the status of "[h]aving been a debtor in bankruptcy" does not "authorize a firm to operate a nuisance . . . or otherwise excuse it from complying with laws of general application." *In re CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992); *see O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000) ("A

suit for illegal conduct occurring after discharge threatens neither the letter nor the spirit of the bankruptcy laws. A 'fresh start' means only that; it does not mean a continuing license to violate the law.").

Finally, United States Trustee also objects to the extent exculpation shields exculpated parties who rely upon the advice of counsel. Although reliance may be raised as an affirmative defense, it should not be an absolute bar against liability. The exculpated parties should have a claim against their legal advisors for improper or mistaken advice, and the exculpation should not protect such advice.

The Liquidating Plan provides exculpation of any "Exculpated Party"—to include non-fiduciaries and any Related Party—for various post-petition and post-Effective Date conduct. The exculpation provision also improperly includes a finding of "good faith" for future conduct relating to "distributions" and relieves any Exculpated Party from all liability "at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Liquidating Plan or such distributions made pursuant to the Plan." As such, this provision exceeds the bounds allowed by the Bankruptcy Code. *See, e.g., SEC v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 425 (S.D.N.Y. 2007) (Lynch, J.), *aff'd sub nom. SEC v. Altomare*, 300 F. App'x 70, 71 (2d Cir. 2008) ("The liability shield of § 1125(e) specifically applies to the disclosure and solicitation period prior to approval of a reorganization plan . . . ."); *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (exculpations are limited to actions by estate fiduciaries in the bankruptcy case).

The Liquidating Plan should not be approved with this overbroad exculpation provision and therefore, the Amended Disclosure Statement that includes this exculpation provision should

also not be approved. To the extent that this issue is solely an issue for plan confirmation, the United States Trustee reserves all his rights to object to this provision at plan confirmation.

### 4. The Amended Disclosure Statement Describes Payments to the Ad Hoc Group That Has not Agreed to the Liquidating Plan.

The Debtors provide for the payment of the Ad Hoc Group professionals if the Ad Hoc Group Acceptance Event has occurred. *See* Liquidating Plan at A.3-6. The Debtors must explain in the Amended Disclosure Statement why this procedure is appropriate. Most notably, the members of the Ad Hoc Group are receiving the payment of their professional fees. This is a benefit that other unsecured creditors do not get. Additionally, the Debtors propose to "deem" this expense as administrative expense without identifying any legal basis or authority for such "deeming." Additionally, any payment is not subject to Court review. The Debtors should explain the legal authority upon which this request is premised. Any payments should be approved under the appropriate legal standard. These payments can have a material impact on recoveries for creditors and must be sufficiently explained.

### 5.    Other Issues Relating to Disclosure

- The Amended Disclosure Statement states that "notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019" the Wind-Down Debtors shall have the ability to settle claims and take other actions. *See* Amended Disclosure Statement at 82. The Debtors must explain this request seemingly waiving Bankruptcy Rule 9019 requirements.

- In the section under "Disbursing Agent and Gemini Distribution Agent," the Debtors seemingly limit the liability of the agents. *See* Amended Disclosure Statement at 47. The Debtors must explain why or to the extent to which they are limiting the liability of these fiduciaries.

## RESERVATION OF RIGHTS

The United States Trustee reserves his rights to supplement this Objection and object at the

hearing on the Amended Disclosure Statement to other deficiencies and/or amendments, including

supplemental disclosures and documents. The United States Trustee further reserves his rights to

objection to confirmation of the Liquidating Plan or any amendments or supplements thereto.

## CONCLUSION

WHEREFORE, the United States Trustee requests that the Court sustain the Objection of

the United States Trustee and grant such other relief as it deems just and proper.

Dated: November 1, 2023

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:     */s/ Greg M. Zipes*
Greg Zipes, Esq.
Benjamin Teich, Esq.
Tara Tiantian, Esq.
Trial Attorneys
Office of the United States Trustee - NY
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408
Tel. No. (212) 510-0500
Fax No. (212) 668-2255