CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' OMNIBUS BRIEF IN FURTHER SUPPORT
OF THEIR MOTION TO APPROVE (I) THE ADEQUACY
OF INFORMATION IN THE DISCLOSURE STATEMENT,
(II) SOLICITATION AND VOTING PROCEDURES, (III) FORM OF
BALLOTS, NOTICES AND NOTICE PROCEDURES IN CONNECTION
THEREWITH AND (IV) CERTAIN DATES WITH RESPECT THERETO**

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 3

RELEVANT BACKGROUND ............................................................................. 4

ARGUMENT ....................................................................................................... 7

A.    The Court Should Approve the Amended Disclosure Statement
Because It Provides Adequate Information. ................................................ 7

    a.    The Amended Disclosure Statement Provides Sufficient
Information About the Treatment of Creditors' Property .......................... 8

    b.    The Debtors Have Provided Sufficient Information
Regarding the Rights of States and Governmental Units .......................... 9

    c.    The Debtors Have Provided Sufficient Securities
Law Disclosures ....................................................................................... 10

    d.    The Debtors Have Provided Sufficient Information
Regarding the Potential Causes of Action Against DCG .......................... 10

    e.    The Debtors Have Provided Sufficient Information
Regarding Litigation Against Gemini ....................................................... 11

    f.    The Debtors Have Provided Sufficient Information
Regarding the Potential 3AC Claims Reserve .......................................... 14

    g.    The Debtors Have Provided Sufficient Information
Regarding the Agreement in Principle ...................................................... 14

    h.    The Debtors Have Provided Sufficient Information
Regarding the SEC Action and NYAG Action.......................................... 15

    i.    The Debtors Have Provided Sufficient Information
Regarding Distributions ............................................................................ 15

    j.    The Debtors Have Provided Sufficient Information
Regarding the Releases .............................................................................. 17

    k.    The Debtors Have Provided Sufficient Post-Effectiveness
Governance Information ............................................................................ 19

**Page**

l.      The Debtors Have Provided Sufficient Information
        Regarding the Document Retention Obligations ...................................... 19

m.      Additional Information Provided in the Amended
        Disclosure Statement Moots Other Objections........................................... 20

B.   The Objections Fail to Meet the High Burden of Establishing
     Patent Unconfirmability.......................................................................... 20

a.      The Amended Plan was Proposed in Good Faith. ..................................... 21

b.      The Plan Provides Adequate Information With Respect to
        the Class Structure and Treatment of Different Claims............................ 22

C.   The Debtors' Revisions to the Solicitation Procedures Moot Other
     Objections Raised by Gemini. .................................................................. 24

D.   The Remaining Objections are Plan Objections and are Not Ripe
     for Discussion and Otherwise Should be Overruled................................ 25

a.      Objections to the Plan are Not Ripe for Discussion and are
        Confirmation Issues ................................................................................ 25

b.      No Further Notice is Required for the Amended
        Disclosure Statement ............................................................................... 27

CONCLUSION.............................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re PC Liquidation Corp.*,
    383 B.R. 856 (E.D.N.Y. 2008) ................................................................... 7

*In re Adelphia Commc'ns Corp.*,
    368 B.R. 140 (Bankr. S.D.N.Y.), *appeal dismissed*, 371 B.R. 660 (S.D.N.Y. 2007),
    *aff'd*, 544 F.3d 420 (2d Cir. 2008) ................................................. 21, 27

*In re Am. Cap. Equip., LLC*,
    688 F.3d 145 (3d Cir. 2012)...................................................................... 24

*In re Best Prod. Co., Inc.*,
    168 B.R. 35 (Bankr. S.D.N.Y. 1994)......................................................... 25

*In re Charter Commc'ns*,
    419 B.R. 221 (Bankr. S.D.N.Y. 2009)........................................................ 28

*In re Chassix Holdings, Inc.*,
    533 B.R. 64 (Bankr. S.D.N.Y. 2015).......................................................... 21

*In re Chateaugay Corp.*,
    89 F.3d 942 (2d Cir. 1996)......................................................................... 27

*In re Drexel Burnham Lambert Grp., Inc.*,
    138 B.R. 723 (Bankr. S.D.N.Y. 1992)........................................................ 26

*In re Koelbl*,
    751 F.2d 137 (2d Cir.1984)........................................................................ 25

*In re Metro Affiliates, Inc.*,
    No. 02-42560 (PCB), 2008 Bankr. LEXIS 752 (Bankr. S.D.N.Y. Mar. 6, 2008)........ 9

*In Re Purdue Pharma L.P.*,
    69 F.4th 45 (2d Cir. 2023) ......................................................................... 19

*In re Quigley Co.*,
    377 B.R. 110 (Bankr. S.D.N.Y. 2007)................................................ 23, 24, 27

**Page(s)**

*In re Spansion, Inc.*,
   426 B.R. 114 (Bankr. D. Del. 2010), *appeal dismissed*, Civil Nos. 10-369, 10-385
   (RBK), 2011 WL 3420441 (D. Del. Aug. 4, 2011) ...................................................... 21

*In re Specialty Equip. Cos., Inc.*,
   3 F.3d 1043 (7th Cir. 1993) ........................................................................................ 21

*In re SunEdison, Inc.*,
   576 B.R. 453 (Bankr. S.D.N.Y. 2017) .................................................................. 19, 21

*In re Zenith Elecs. Corp.*,
   241 B.R. 92 (Bankr. D. Del. 1999) .............................................................................. 21

*Kirk v. Texaco, Inc.*,
   82 B.R. 678 (S.D.N.Y. 1988)......................................................................................... 7

**Rules and Statutes**

11 U.S.C. § 704(a)(1) ....................................................................................................... 17

11 U.S.C. § 1129(a)(3) ..................................................................................................... 25

11 U.S.C. § 365 ............................................................................................................. 9, 29

11 U.S.C. § 1123(a)(4)................................................................................................. 26, 27

11 U.S.C. § 1125 ........................................................................................................... 1, 4, 7

11 U.S.C. § 1145 ............................................................................................................... 10

**Other Authorities**

Fed. R. Bankr. P. 9019 ..................................................................................................... 31

Fed. R. Bankr. P. 3017 ................................................................................................. 1, 31

Fed. R. Bankr. P. 701 ....................................................................................................... 10

Fed. R. Bankr. P. 2002 ................................................................................................. 1, 31

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors," and these cases, collectively, the "Chapter 11 Cases") hereby submit this reply (the "Reply") in further support of the *Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* (ECF No. 461) (the "Motion"),[2] pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"); Rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rule 3017-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and in reply to the following objections (collectively, the "Objections"):

- *Objection of David Morton to Debtors' Disclosure Statement for Amended Joint Plan Under Chapter 11 of the Bankruptcy Code* (ECF No. 475) (the "Morton Objection");

- *Securities Litigation Lead Plaintiffs' Reservation of Rights Regarding the Disclosure Statement With Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* (ECF No. 496) (the "Initial Securities Litigation Plaintiffs' Objection");

- *Objection of the U.S. Securities and Exchange Commission to Debtors' Motion for Entry of an Order Approving the Adequacy of the Disclosure Statement* (ECF No. 510) (the "SEC Objection");

- *The New Jersey Bureau of Securities' Joinder to the Objection of the U.S. Securities and Exchange Commission to Debtors' Motion for Entry of an Order Approving the Adequacy of the Disclosure Statement [Docket No. 510]* (ECF No. 553) (the "NJBOS Joinder");

- *Decentralized Wireless Foundation, Inc.'s Limited Objection to Disclosure Statement With Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* (ECF No. 582) (the "Helium Objection");

- *The New York State Office of the Attorney General's Limited Objection to Debtors' Motion to Approve the Adequacy of Information in the Disclosure Statement [Docket No. 461] and Joinder to the Objection of the U.S. Securities and Exchange*

---

[2] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Amended Plan or the Amended Disclosure Statement as applicable.

*Commission to Debtors' Motion for Entry of an Order Approving the Adequacy of the Disclosure Statement [Docket No. 510]* (ECF No. 591) (the "NYAG Objection");

- *Limited Objection of Valour Inc. to Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC, et al., Under Chapter 11 of the Bankruptcy Code* (ECF No. 858) (the "Valour Objection");

- *Objection of the Ad Hoc Group of Genesis Lenders to (A) Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices, and Notice procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto, and (B) Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* (ECF No. 859) (the "AHG Objection");

- *Securities Litigation Lead Plaintiffs Limited Objection and Reservation of Rights Regarding The Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* (ECF No. 860) (the "Securities Litigation Plaintiffs Objection");

- *Objection to Disclosure Statement Limited Objection of Foundry Digital LLC to Debtors Disclosure Statement for Amended Joint Plan Under Chapter 11 of the Bankruptcy Code* (ECF No. 863) (the "Foundry Objection");

- *Objection of Gemini Trust Company, LLC to the Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* (ECF No. 864) (the "Gemini Objection");

- *Limited Objection and Reservation of Rights of The Foreign Representatives of Three Arrows Capital, Ltd.'s (In Liquidation) to Genesis Debtors' Motion to Approve (I) the Adequacy of Information in The Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Form of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* (ECF No. 865) (the "3AC Objection");

- *The Official Committee of Unsecured Creditors' Reservation of Rights with Respect to the Debtors Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* (ECF No. 866) (the "UCC Reservation of Rights");

- *Digital Currency Group, Inc.'s Limited Objection and Reservation of Rights to the Debtors' Amended Disclosure Statement* (ECF No. 867) (the "DCG Objection");

- *Objection Of SOF International, LLC To Debtors' Proposed Disclosure Statement*

(ECF No. 874) (the "SOF Objection"); and

- *Omnibus Objection of the United States Trustee to Amended Disclosure Statement and Related Documents* (ECF No. 875) (the "UST Objection")

and state as follows:

## PRELIMINARY STATEMENT

1.     The Debtors have worked diligently since the beginning of these cases to craft a value-maximizing resolution to the Chapter 11 Cases.  At this juncture in these Chapter 11 Cases, the Debtors believe that the Amended Plan presents the best path forward.  The Amended Plan provides for the liquidation of each of the Debtors, the retention of various Retained Causes of Action, including Causes of Action against the DCG Parties and Gemini, and the distribution of proceeds of the liquidation of the Debtors' assets and litigation relating to the Retained Causes of Action.  The Debtors are eager to consummate the transactions contemplated therein and emerge from these Chapter 11 Cases.

2.     As set out in the Motion, the Debtors' Disclosure Statement provides a comprehensive recounting of the course of the Chapter 11 Cases, a detailed overview of the Plan and the transactions and settlements it contemplates, and robust disclosure of the risks associated with Plan consummation.  As such, it contains "adequate information" as required by the Bankruptcy Code and provides voting creditors with ample information to consider in determining how to vote on the Plan.  Similarly, the Solicitation and Voting Procedures (the "Solicitation Procedures") set out a process for the solicitation of votes on the Plan and align with procedures routinely approved in this District.

3.     The Debtors have been working diligently to address the Objections to the Motion.  To the extent the Objections concern additional disclosures, the Debtors have attempted to address them fully through supplemental disclosures in the Amended Disclosure Statement,

filed substantially contemporaneously herewith.  Any remaining allegations of deficiencies in the

Plan are premature objections to plan confirmation, and are not properly before this Court at this

time.  The Debtors have also been working, and will continue to work, with each party who has

filed an Objection to attempt to resolve their objections consensually ahead of the hearing.

4.      In sum, the Amended Disclosure Statement satisfies the relevant standards

for adequate disclosure under section 1125 of the Bankruptcy Code.  For these and all the

reasons discussed below, the Court should grant the Motion and overrule the Objections,

allowing the Debtors to advance toward plan confirmation.

## **RELEVANT BACKGROUND**

5.      As described in the Motion, on June 13, 2023, the Debtors filed the

*Debtors' Amended Joint Chapter 11 Plan* (ECF No. 427) (including all exhibits thereto and as

may be supplemented or amended from time to time, the "June Plan") and the *Disclosure*

*Statement With Respect to the Amended Joint Plan of Genesis Global Holdco, LLC, et al., Under*

*Chapter 11 of the Bankruptcy Code* (ECF No. 429) (including all exhibits thereto and as may be

supplemented or amended from time to time, the "June Disclosure Statement").  The June Plan

provided for the winddown of the Debtors, as well as a potential sale and reorganization of

certain of the Debtors' non-Debtor subsidiaries.  The June Plan and June Disclosure Statement

also set forth the Debtors' proposal to pursue litigation against DCG, as well as other Causes of

Action (as defined in the June Plan).  On June 29, 2023, the Debtors filed the Motion seeking,

*inter alia*, approval of the adequacy of the Disclosure Statement and the Solicitation Procedures.

6.      After the filing of the June Plan, the Debtors and the Official Committee

of Unsecured Creditors (the "Committee") continued negotiations with Digital Currency Group,

Inc. ("DCG"), Holdco's corporate parent and the Debtors' largest borrower, the Ad Hoc Group

of Lenders of Genesis Global Capital, LLC (the "Ad Hoc Group"), and an additional ad hoc

group of creditors represented by Brown Rudnick LLP (the "Brown Rudnick Group") including

bringing the parties together for further mediation sessions in August 2023.  In the weeks since

the mediation, the Debtors made extensive progress negotiating with the parties in interest.  On

August 23, 2023, the mediation was terminated and, on August 28, 2023, the Debtors filed a

notice of the termination along with details of an agreement in principle among the Debtors, the

Committee and DCG, (the "Agreement in Principle").  As part of the Agreement in Principle,

DCG had agreed to enter into the New First Lien Facility, the New Second Lien Facility and the

Partial Repayment Agreement in satisfaction of its existing liabilities to the Debtors.  The Ad

Hoc Group did not support the Agreement in Principle.

       7.     Following the termination of the mediation, the Debtors and the

Committee began working towards negotiating a global restructuring agreement with DCG and

developing an amended plan that incorporated the key terms of the Agreement in Principle,

while continuing discussions with the Ad Hoc Group and the Brown Rudnick Group.  Due to

disagreements among creditors regarding the best path forward to resolve these cases, the

Debtors and the Committee worked towards finalizing a plan that would allow creditors to

express their preference between consummating a plan that incorporated a deal with DCG and a

plan that would preserve any and all of the Debtors' claims and causes of action against DCG

and distribute the proceeds of any litigation against DCG to creditors (the "Creditor Choice

Plan").

       8.     Ultimately, however, the Debtors were unable to reach an agreement with

DCG on final debt terms.  Further complicating matters, on October 19, 2023, the Office of the

New York Attorney General (the "NYAG") filed a lawsuit in the Supreme Court of the State of

New York against certain of the Debtors, DCG, Gemini and other related parties (the "NYAG Action") alleging that named defendants defrauded investors in connection with the Gemini Earn Program and the DCG Note.  Given the relief sought in the NYAG Action, the Debtors and the Committee determined that pursuing the Agreement in Principle with DCG while the NYAG Action is pending is not a viable route at this time.

9.      Accordingly, on October 24, 2023, the Debtors filed the *Debtors' Amended Joint Chapter 11 Plan* (ECF No. 838) (including all exhibits thereto and as may be supplemented or amended from time to time, the "October Plan") and the *Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC, et al., Under Chapter 11 of the Bankruptcy Code* (ECF No. 839) (including all exhibits thereto and as may be supplemented or amended from time to time, the "October Disclosure Statement").  The Debtors are pursuing the October Plan, which incorporates the key concepts of the June Plan, including winddown of the Debtors and vesting of the Causes of Action against the DCG Parties and others, while making clear that the Debtors are no longer pursuing a sale or standalone reorganization.  The Debtors have remained steadfastly committed to providing a transparent process that would produce a value-maximizing restructuring for their creditors on an expedited timeline.  The Debtors, in consultation with their legal and financial advisors, and particularly in light of recent developments, have concluded that the Amended Plan achieves that objective.

10.      The Debtors have proposed additional changes to the October Plan and October Disclosure Statement to address various points raised by the Objectors and are filing revised versions of each of these documents substantially contemporaneously herewith (respectively, the "Amended Plan" and the "Amended Disclosure Statement").  A summary of the Debtors' response to the Objections can also be found in a chart attached hereto as Exhibit A,

including where the Debtors have included additional information in the Amended Disclosure

Statement.  The remaining issues are addressed below.

## **ARGUMENT**

### A.  **The Court Should Approve the Amended Disclosure Statement Because It Provides Adequate Information.**

11.    Section 1125 of the Bankruptcy Code requires that a chapter 11 plan

proponent provide "adequate information" regarding the plan.  *See* 11 U.S.C. § 1125(a), (b).

Bankruptcy courts have wide discretion when determining what information is necessary based

on the facts and circumstances of each case.  *See Kirk v. Texaco, Inc.*, 82 B.R. 678, 682

(S.D.N.Y. 1988) (observing that the "legislative history could hardly be more clear in granting

broad discretion to bankruptcy judges under § 1125(a)" (citing H.R. REP. NO. 95-595, at 408−09

(1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6365)); *see also In re PC Liquidation Corp.*,

383 B.R. 856, 865 (E.D.N.Y. 2008) (noting that the court has wide discretion to determine, on a

case-by-case basis, what constitutes adequate information).  Courts should apply a "practical

approach," *see Kirk*, 82 B.R. at 682 (quoting H.R. REP. NO. 95-595, at 408−09), and relevant

factors include "the complexity of the case, the benefit of additional information to creditors and

other parties in interest, and the cost of providing additional information," 11 U.S.C. §

1125(a)(1), as well as "the need for relative speed in solicitation and confirmation [and] the need

for investor protection."  H.R. REP. NO. 95-595 at 408−09.

12.    The Amended Disclosure Statement contains information on a number of

topics, including, but not limited to, the Debtors' business, the description of the events leading

up to and of the Chapter 11 Cases, a summary of the Amended Plan, description of assets

available for distribution, estimated recoveries, risk factors to consider, projected financial

information, solicitation and voting procedures, and federal income tax considerations.

13.     The Debtors have reviewed the Objections and have made a good faith effort to address the issues raised.  For example, the Amended Disclosure Statement now includes enhanced disclosures regarding the events of the chapter 11 cases including the sale process, the Gemini Adversary Proceeding and its potential effects on recoveries, and the NYAG Action.  To the extent the Debtors have not otherwise incorporated revisions in response to any arguments raised in the Objections  in the Amended Disclosure Statement, such arguments should be overruled.

a.    <u>The Amended Disclosure Statement Provides Sufficient Information About the Treatment of Creditors' Property</u>

14.     **Classification and Treatment**: The Morton Objection,[3] the Valour Objection, the Helium Objection and the Foundry Objection allege that the Amended Disclosure Statement does not include sufficient disclosures regarding the treatment of property provided by certain creditors to the Debtors under various loan agreements with the Debtors.  Broadly speaking, these objecting parties have provided collateral to certain of the Debtors under certain master lending agreements.

15.     The Amended Disclosure Statement includes sufficient information about the treatment of such claims.  The October Disclosure Statement already discussed the treatment of claims arising from obligations to return collateral in connection with master lending agreements entered into between the Debtors and their counterparties, which the Debtors treat as unsecured claims under the Amended Plan. *See* Amended Disclosure Statement at § III.D. Moreover, the Amended Disclosure Statement includes further enhanced disclosures regarding such claims.  *See id.*

---

[3]     The Debtors understand that with some additional revisions as reflected in the Amended Plan and Amended Disclosure Statement filed substantially contemporaneously herewith, the Helium Objection is now resolved.

16.    **Executory contracts**: The Valour Objection further argues that the

Amended Disclosure Statement lacks disclosure regarding the treatment of executory contracts

for an outstanding loan balance. *See* Valour Obj. ¶ 9. However, the Bankruptcy Code is clear

that the Debtors cannot assume executory contracts if "such contract is a contract to make a loan,

or extend other debt financing or financial accomodations." *See* 11 U.S.C. § 365(c)(2); *In re*

*Metro Affiliates, Inc.*, No. 02-42560 (PCB), 2008 Bankr. LEXIS 752 (Bankr. S.D.N.Y. Mar. 6,

2008). Therefore, any outstanding loan agreements such as the Master Loan Agreement with

Valour cannot be assumed by a debtor and the Debtors have provided adequate information

regarding the treatment of claims related to any outstanding loan agreements, through the

aforementioned langauge and also in the sections discussing the classification of claims. *See*

Amended Disclosure Statement at §§ III.D, VII.D. Separately, for the avoidance of doubt, the

Debtors have provided adequate disclosures about the proposed treatment of executory contracts

and unexpired leases. *See* Amended Disclosure Statement at § VII.F.

17.    **Setoff rights**: The Amended Disclosure Statement provides adequate

information regarding the Debtors' setoff rights, contrary to the allegations in the Valour

Objection. *See* Amended Disclosure Statement at §§ VII.G, VII.H. As described in the

Amended Disclosure Statement and the Amended Plan, any exercise of the Debtors' setoff rights

will be dealt with in the claims administration process.

    b.    <u>The Debtors Have Provided Sufficient Information Regarding the Rights of
States and Governmental Units</u>

18.    The SEC Objection, the NJBOS Joinder and the NYAG Objection seek

additional disclosures regarding the rights of states and governmental units' police and

regulatory powers and that the Amended Disclosure Statement will not limit such rights. In

addition, the aforementioned objections also seek additional disclosures that nothing in the

Amended Disclosure Statement contain or shall constitute findings under either federal or state

securities laws that crypto assets or transactions involving crypto assets are securities.

19.     The Debtors intend to include additional disclosures in the Amended

Disclosure Statement.  *See* Amended Disclosure Statement at Preamble, §§ VII.I.

### c.   The Debtors Have Provided Sufficient Securities Law Disclosures

20.     The SEC Objection argued that the Amended Disclosure Statement is

lacking in disclosures regarding the exemptions the Debtors intend to rely on with respect to

securities transactions or disclosures related to securities law compliance for the Digital Asset

Rebalancing.  *See* SEC Obj. ¶ 14.

21.     The Debtors have included additional disclosures in the Amended

Disclosure Statement regarding the securities law exemptions that they intend to rely on in the

Asset Digital Rebalancing.  *See* Amended Disclosure Statement at Preamble, II, § VII.E.(ii)(m).

More specifically, any offers, issuances, distributions or sales under the Amended Plan will be

made in reliance on exemptions from registration specified in section 1145 of the Bankruptcy

Code or other exemptions from registration specified in the Securities Act, including section

4(a)(2) of the Securities Act, Rule 506 of Regulation D and/or Rule 701 promulgated thereunder

or other exemptions from registration under the Securities Act or applicable foreign securities

laws, subject to certain limitations described herein and in the Plan.  *See id.*

### d.   The Debtors Have Provided Sufficient Information Regarding the Potential Causes of Action Against DCG

22.     The DCG Objection asserts that the Amended Disclosure Statement needs

additional disclosures regarding the risks of litigation against DCG as a source of substantial

recovery.  *See* DCG Obj. at ¶ 20.  The Objection should be overruled as the Amended Disclosure

Statement already contains extensive disclosures about the Causes of Action against the DCG

Parties and furthermore includes an excerpt written by the DCG Parties regarding such Causes of Action as Exhibit E. *See* Amended Disclosure Statement at §§ VI.F−G, IX, Exhibit E.

23.    More specifically, the Amended Disclosure Statement includes (i) an extensive description of the potential causes of actions against DCG, (ii) a lengthy risk factor that discusses DCG as a significant source of recovery, the potential causes of action against DCG, DCG's potential counterclaims, and the risks associated therewith, and (iii) a separate Exhibit including DCG's own addition that describes its potential counterclaims and responses to certain causes of action. *See* Amended Disclosure Statement at § IX. The risk factor in particular discusses that "any litigation against the DCG Parties would involve significant time and expense for an uncertain outcome, which may result in additional costs to the Debtors' estates and may not result in additional recoveries for Holders of Claims" and "[d]istributions to creditors could be significantly delayed pending the results of litigation, and would not be available to the extent that the Wind-Down Debtors were not successful in litigation." *See* Amended Disclosure Statement at § IX.

e.    The Debtors Have Provided Sufficient Information Regarding Litigation Against Gemini

24.    The AHG Objection contends that although the Amended Plan provides for distributions of the proceeds of litigation relating to claims against Gemini, the October Disclosure Statement provides inadequate disclosure regarding litigation against Gemini, information on potential causes of action against Gemini and the impact of that litigation on creditor recoveries. *See* AHG Obj. ¶ 11.The Gemini Objection raises similar arguments, contending that the October Disclosure Statement fails to sufficiently inform creditors regarding the allocation of $1.6 billion in value relating to collateral allegedly securing the Gemini Master Claim (i.e., the Initial Collateral and the Additional Collateral) and the resulting impact of

various potential outcomes relating to the resolution of contested issues concerning such collateral.  *See* Gemini Obj. ¶¶ 29−36.

25.    The SOF Objection echoes these complaints, arguing that the Plan purports to value the Initial Collateral as of the Effective Date and, accordingly, further disclosure with respect to the impact of this assumption and other Gemini-related assumptions on potential recoveries is necessary in the Disclosure Statement.  *See* SOF Obj. ¶¶ 14, 19−20.  In addition, the SOF Objection seeks further description in the Disclosure Statement regarding the Gemini Adversary Proceeding (including any timeline for resolution of issues) and other Gemini-related issues, including any potential objections to the gross amount of the Gemini Master Claim, any contemplated avoidance actions against Gemini or holders of Gemini Lender Claims, any proposed "order of operations" rules governing calculation of distributions or application of collateral and how the Amended Plan proposes to monitor Gemini's compliance with its obligations as Gemini Distribution Agent.  *See id.* ¶¶ 16−18.

26.    The October Disclosure Statement was filed before commencement of the Gemini Adversary Proceeding.  In light of that development, the Amended Disclosure Statement now includes a description of that proceeding, as well as more fulsome descriptions about the various matters at issue in connection therewith.  *See* Amended Disclosure Statement § VI.F, VI.U, Exhibit G.  The Amended Disclosure Statement now discusses the Special Committee's investigation of Gemini and includes detailed descriptions of potential causes of action against Gemini, including potential preference and fraudulent transfer claims and other causes of action relating to Gemini's purported foreclosure on the Initial Collateral and Gemini's asserted interests in the Additional GBTC Shares.  Moreover, in addition to discussing the Debtors' estimates concerning the gross amount of the potential claims against Gemini, the Amended

Disclosure Statement also discusses potential defenses Gemini may have to these claims.  Putting

to rest any potential concerns regarding the issues at play in the Gemini Adversary Proceeding,

the Debtors have included as Exhibit F to the Amended Disclosure Statement a response

prepared by Gemini to the Debtors' assertions in the Disclosure Statement regarding Gemini's

asserted interest in the Additional GBTC Shares.  *See* Amended Disclosure Statement, Ex. F.

27.    In connection with the filing of the Amended Disclosure Statement, the

Debtors also intend to file revised Financial Projections and a new Exhibit E which, in addition

to providing further detail regarding the impact that changing digital asset prices might have on

creditor recoveries under the Amended Plan, will also disclose the impact that the Gemini

Adversary Proceeding might have on recoveries to creditors.  *See* Amended Disclosure

Statement, Ex. E, n. 1 (noting that if Gemini were to prevail in its arguments regarding the

Additional GBTC Shares, recoveries to creditors (other than Gemini Lender Claims) could

decrease by as much as 10%).

28.    As discussed in the Amended Disclosure Statement, the Debtors never

interacted directly with Gemini Lenders; rather, the Gemini Lenders appointed Gemini to act as

their agent in connection with the Gemini Borrowings.  As a result, the Debtors do not have

information about the number or the identity of the Gemini Lenders.  Accordingly, the Debtors

do not have the ability to include in the Amended Plan any information or instruction regarding

how distributions are to be made to specific Gemini Lenders.

29.    In light of the above and the revisions to the October Disclosure Statement

included in the Amended Disclosure Statement, the AHG Objection, the Gemini Objection and

the SOF Objection with respect to these particular issues should be overruled.

f.    <u>The Debtors Have Provided Sufficient Information Regarding the Potential
3AC Claims Reserve</u>

30.    The 3AC Objection contends that the Disclosure Statement is ambiguous

as to a reserve for the 3AC Claims. *See* 3AC Obj. ¶¶ 4−5. To the contrary, the Amended

Disclosure Statement describes the circumstances under which a reserve would be created.

Indeed, the creation of a reserve for the 3AC Claims is a condition precedent to the Amended

Plan "to the extent any 3AC Claims are not disallowed by an order of the Bankruptcy Court prior

to the Effective Date." *See* Amended Disclosure Statement at Exhibit A; Amended Plan at Art.

IX.A.6. Moreover, the Debtors and 3AC have reached an agreement in principle with respect to

the resolution of issues related to the 3AC Claims, pending final documentation. *See* 3AC

Objection ¶ 1. Given that the resolution of such issues are contemplated in due course, the

Debtors submit that no further information is needed in connection with a potential reserve for

the 3AC Claims.

31.    The Amended Disclosure Statement otherwise includes the remaining

additional comments from 3AC.

g.    <u>The Debtors Have Provided Sufficient Information Regarding the Agreement
in Principle</u>

32.    The DCG Objection alleges that the Amended Disclosure Statement

requires additional information regarding the Agreement in Principle. *See* DCG Obj. ¶¶ 17-19.

Firstly, the Debtors have disclosed the terms of the Agreement in Principle in the Amended

Disclosure Statement and the circumstances leading up to it. See Amended Disclosure Statement

at §§ I.A., VI.P.(i)., VI.U. In those disclosures, the Debtors also included information about the

circumstances that led to the Debtors' decision not to pursue the Agreement in Principle. *See id.*

Thus, the "alternative path" that DCG purports to inject into the Amended Plan no longer exists.

Therefore, further information regarding the Agreement in Principle will not be valuable. In

fact, it would only be confusing to creditors to receive additional information about the

Agreement in Principle in the Amended Disclosure Statement, which is a key component of the

solicitation package, when it is no longer part of the Amended Plan.

> h.   The Debtors Have Provided Sufficient Information Regarding the SEC Action
>      and NYAG Action

33.    The AHG Objection calls for additional disclosures regarding the claims

related to and the risks associated with the NYAG Action.  The Amended Disclosure Statement

includes a description of the NYAG Action and the related risks for the Amended Plan.  As

described in the Amended Disclosure Statement, it is difficult to estimate the specific impact of

any litigation or governmental investigations such as the SEC Action and NYAG action, as they

are inherently unpredictable.  Nevertheless, in response to the Objections, the Debtors have

provided enhanced disclosures including details about the NYAG Action and its risks to the

Amended Plan.  *See* Amended Disclosure Statement §§ VI.U.(iv), IX.A, IX.B.

34.    The Gemini Objection also calls for additional disclosures regarding the

SEC Action and NYAG Action, namely the risks of litigation regarding the classification of the

claims held by the SEC and NYAG.  The Amended Disclosure Statement already includes

information regarding such risks.  *See* Amended Disclosure Statement at § III.O.

> i.   The Debtors Have Provided Sufficient Information Regarding Distributions[4]

35.    The UST Objection also argues that the October Disclosure Statement

does not provide sufficient information regarding distributions because it does not information

regarding the Debtors' likelihood to prevail on the litigations they are involved in and how those

litigations could impact the potential recovery for various classes of creditors.  The Debtors

---

[4]    The UST Objection, the Gemini Objection and the SOF Objection also point out that the Distribution
Principles have not yet been filed.  The Debtors anticipate that the Distribution Principles will be filed prior to the
approval of the Motion.

believe that the Amended Disclosure Statement provides sufficient information with respect to

the various litigations involving the Debtors.  First of all, it is difficult to estimate the likelihood

of success on litigations or regulatory actions given their dynamic nature that can easily evolve

depending on many different factors.  Moreover, disclosing the Debtors' estimates of the

likelihood of prevailing in such litigation is privileged as it would provide insight into the

Debtors' litigation strategy, and could ultimately prejudice the Debtors in the litigation.  To that

end, the "extensive description" of the litigations in the Amended Disclosure Statement, as the

UST aptly put, provide sufficient information regarding the litigations.  To name a few, the

Debtors have included detailed descriptions of the causes of action and litigations involving

DCG, Gemini, the SEC and the NYAG.  Among other information, those disclosures describe

the nature of the claims, how challenging it is to prove or defend against such claims, and the

Debtors' plans to vigorously litigate them.  The Debtors have also included additional

disclosures related to the various litigations in response to the Objections as well.  *See* Amended

Disclosure Statement at VI.U.

   36. The UST Objection goes on to argue that the Liquidation Analysis does

not provide sufficient clarification regarding distributions under the Amended Plan in

comparison to a chapter 7 liquidation.  *See* UST Obj. at 9−10.  The Liquidation Analysis

includes sufficient information regarding the potential distributions in comparison to a chapter 7

liquidation.  The UST takes issue with the lack of discussion of the possibility of cryptocurrency-

denominated distributions by a chapter 7 trustee.  However, as a threshold matter, it is unclear

whether a Chapter 7 trustee is allowed to make distributions other than in cash under the

Bankruptcy Code.  *See* 11 U.S.C. § 704(a)(1) ("The trustee shall collect and **reduce to money**

the property of the estate") (emphasis added).  The Liquidation Analysis otherwise includes

-16-

reasonable assumptions in drawing the comparison to a potential chapter 7 liquidation.  In the
same vein, comparing a sale of assets by a chapter 7 trustee on day one of a chapter 7 case would
not be meaningful, since, as assumed in the Liquidation Analysis, the chapter 7 trustee will have
no experience with the Debtors and their assets.

          j.   <u>The Debtors Have Provided Sufficient Information Regarding the Releases</u>

37.     The AHG Objection argues that the Amended Disclosure Statement does
not provide sufficient information because it does not identify the specific individuals
comprising the Released Parties under the Amended Plan.  Particularly, the AHG Objection
takes issue with the Amended Plan providing that any of the current and former officers and
directors of the Debtors who served as of the Petition Date (who would otherwise be released
under the terms of the Amended Plan) shall only be released with the written consent of the
Special Committee prior to the Effective Date.  *See* AHG Obj. ¶¶ 8−9.

38.     The UST Objection argues that the Amended Disclosure Statement does
not provide sufficient information because it "fails to explain in a clear and succinct manner
what releases are being imposed on creditors and what support is found in the Bankruptcy Code
and Circuit precedent for those broad third-party releases."  UST Obj. at 11.  Relying on a
standard applicable to non-consensual third-party releases, rather than the consensual releases
provided for in the Amended Plan, the UST Objection asserts that the Amended Disclosure
Statement should explain why "rare and unique circumstances" exist that would merit the
proposed releases and why they are likely to be approved by the Court.  *See id.*

39.     The scope of the releases is not at issue at this stage.  Instead, the only
issue for the Court's consideration is whether the Amended Disclosure Statement provides
enough information about them to enable creditors to know how to vote on the Plan.  The

Amended Disclosure Statement clearly defines the "Released Parties" explains that such entities will be released only with the written consent of the Special Committee, which will disclosed seven days prior to the Voting Deadline.

40.    While not before this Court at this time, the UST Objection's reliance on *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017)  and *In Re Purdue Pharma L.P.*, 69 F.4th 45 (2d Cir. 2023) is misplaced.  *SunEdison* involved releases where the debtors argued that failure to object to a proposed plan should be deemed as consent to releases included in a proposed plan, while *Purdue Pharma* involved nonconsensual releases.  Here, however, only creditors voting to accept the Amended Plan are granting releases.  The Debtors' proposed release structure deeming creditors voting to accept the Plan where they have notice that such a consenting vote constitutes consent to proposed releases has long been accepted in this District. *See In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally agree that an affirmative vote to accept a plan that contains a third-party release constitutes an express consent to the release."); *see also In re Specialty Equip. Cos., Inc.*, 3 F.3d 1043, 1047 (7th Cir. 1993); *In re Chassix Holdings, Inc.*, 533 B.R. 64, 80 (Bankr. S.D.N.Y. 2015); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 268 (Bankr. S.D.N.Y.), *appeal dismissed*, 371 B.R. 660 (S.D.N.Y. 2007), *aff'd*, 544 F.3d 420 (2d Cir. 2008); *In re Spansion, Inc.*, 426 B.R. 114, 144 (Bankr. D. Del. 2010), *appeal dismissed*, Civil Nos. 10-369, 10-385 (RBK), 2011 WL 3420441 (D. Del. Aug. 4, 2011); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999).

41.    In any event, the Debtors believe the Amended Disclosure Statement provides sufficient disclosure regarding both the nature and scope of the release provisions.  The AHG Objection and UST Objection in this respect should be overruled.

k.  The Debtors Have Provided Sufficient Post-Effectiveness Governance Information

42.    The Gemini Objection argues that the October Disclosure Statement fails to provide adequate information with respect to the governance of the Wind-Down Debtors.  The October Disclosure Statement includes sufficient information regarding the structure and duties of the various governance bodies for the Wind-Down Debtors, including the PA Officer, the Oversight Committee and the New Board.  *See* Amended Disclosure Statement § VII.E.(i).  While Gemini noted it is unclear how the Wind-Down Debtors can act independently of the PA Officer post-Effective Date, the October Disclosure Statement described that "in advising the PA Officer, the Wind-Down Oversight Committee shall maintain the same fiduciary responsibilities as the PA Officer."  *See id.*

43.    Nevertheless, the Amended Disclosure Statement includes additional information regarding structure and governance rights of PA Officer, Oversight Committee, New Board.  *See* Amended Disclosure Statement §§ III. L, VII.I.

l.  The Debtors Have Provided Sufficient Information Regarding the Document Retention Obligations

44.    The Securities Litigation Plaintiffs' Objection argues that the Plan does not provide adequate information because Article VIII.K of the October Plan (the "Document Retention Provision") does not clarify whether the Debtors or PA Officer will preserve evidence potentially relevant to the Securities Litigation (as defined in the Securities Litigation Plaintiffs' Objection).  *See* Sec. Litig. Plaintiffs' Obj. ¶ 2.

45.    In the Amended Plan the Debtors anticipate revising the Document Retention Provision to address the Securities Litigation Plaintiffs' Objection.  To the extent the Securities Litigation Plaintiffs continue to take issue with the Document Retention Provision and the scope of the Debtors' and the Wind-Down Debtors' document maintenance obligations, the

PA Officer's authority with respect to the Debtors' and the Wind-Down Debtors document

maintenance obligations, or seek the inclusion of an obligation of the PA Officer or Wind-Down

Debtors to notify them prior to the destruction or abandonment of any relevant books and

records, these issues relate to the Amended Plan, not the adequacy of the disclosures made by the

Debtors in the Amended Disclosure Statement and are resolvable in connection with

confirmation of the Amended Plan.

> m. <u>Additional Information Provided in the Amended Disclosure Statement Moots Other Objections</u>

46.     As described in further detail in Exhibit A, other remaining objections to

the adequacy of information are mooted by the Amended Disclosure Statement, which includes

additional information such as the Gemini Withheld Assets Schedule, and incorporates language

proposed by various objectors.  *See* Exhibit A.[5]

**B.  The Objections Fail to Meet the High Burden of Establishing Patent Unconfirmability.**

47.     Under the guise of arguing that the Plan is patently unconfirmable, certain

Objections seek prematurely to litigate issues that constitute objections to plan confirmation.

48.     A disclosure statement is subject to rejection only if a plan is patently

unconfirmable or cannot be confirmed as a matter of law.  *In re Quigley Co.*, 377 B.R. 110, 115–

16 (Bankr. S.D.N.Y. 2007).  "A plan is patently unconfirmable where (1) confirmation defects

[cannot] be overcome by creditor voting results and (2) those defects concern matters upon

---

[5]     Of note, the remaining adequate disclosure objections in the SEC Objection are mooted by the filing of the Amended Disclosure Statement and further developments in the Chapter 11 Cases since the filing of the SEC Objection, such as the financial data and the sources of distributions and estimated recoveries (which was included in the Financial Projections), the sale process (which has concluded) and information regarding reorganized GGH (the Amended Plan no longer contemplates a reorganized GGH).  *See* Exhibit A.

which all material facts are not in dispute or have been fully developed at the disclosure

statement hearing."  *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154–55 (3d Cir. 2012).

49.     The Objections fail to meet the high bar that, as a matter of law, the Plan

was not proposed in good faith or improperly classifies claims because the factual record is

disputed or undeveloped.  *See, e.g.*, *In re Quigley Co.*, 377 B.R. at 118–19 (overruling patent

unconfirmability objections because whether non-settling claimants were receiving unequal

treatment was a confirmation issue that required an evidentiary hearing); Memorandum at 13, *In*

*re Shippers' Choice of Va., Inc.*, No. 04-17933-SD (Bankr. D. Md. Aug. 17, 2005), ECF No. 97.

("Whether a plan was proposed in good faith is a question of fact to be addressed at

confirmation, and does not serve as grounds to deny approval of a disclosure statement on the

basis that the plan is patently unconfirmable.").

50.     While the Debtors assert that relevant arguments in certain Objections lack

any merit, even in the best light, the challenges to the Plan are, at most, confirmation issues that

require an evidentiary hearing and thus cannot support the Objections' claim that the Plan is

patently unconfirmable, to the extent these issues remain disputed, to aid the Court's analysis,

the Debtors briefly address certain confirmation issues raised in the Gemini Objection to

eliminate any doubt that such issues do not render the Plan patently unconfirmable.[6]

a.  <u>The Amended Plan was Proposed in Good Faith.</u>

51.     The Gemini Objection alleges that the October Plan is patently

unconfirmable because it was not proposed in good faith.  A plan must be proposed "in good

---

[6]     The 3AC Objection also alleges that the plan is "patently unconfirmable" because it does not include certain additional details regarding how the potential reserve would work.  See 3AC Obj. ¶ 5.  This argument, given without any legal support, lacks merit.  For the reasons explained herein, the Amended Disclosure Statement provides sufficient information regarding the potential reserve for the 3AC Claims.  *See supra* at A.f.  Even in the best light, this challenge to the plan is at most an issue for the confirmation hearing.

faith" under the Bankruptcy Code. 11 U.S.C. § 1129(a)(3). Although "good faith" is not defined in the Bankruptcy Code, a plan will be found in good faith if it "was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *In re Koelbl*, 751 F.2d 137, 139 (2d Cir.1984) (internal quotations omitted); *see also Kane*, 843 F.2d at 649 (affirming confirmation of a Chapter 11 plan where the company "honestly believed that it was in need of reorganization and that the Plan was negotiated and proposed with the intention of accomplishing a successful reorganization"). Courts also consider whether "there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code." *In re Best Prod. Co., Inc.*, 168 B.R. 35, 72 (Bankr. S.D.N.Y. 1994) (quoting *In re Texaco, Inc.*, 84 B.R. at 907).

52.     While this is, at best, an issue to be discussed at the confirmation hearing, the Amended Plan was proposed in good faith. The Debtors have worked diligently since the beginning of these cases to reach a value-maximizing resolution to the Chapter 11 Cases that provides a comprehensive path to emergence. Contrary to the allegations in the Gemini Objection, the Amended Plan was proposed in good faith including consideration of the interests of all creditors, including the Gemini Lenders.

      b.   <u>The Plan Provides Adequate Information With Respect to the Class Structure and Treatment of Different Claims.</u>

53.     The Debtors' Amended Disclosure Statement provides more than "adequate information" regarding the proposed class structure, estimated recoveries for each class, and the Debtors' rationale for the separate classes. While classification is an issue properly reserved for confirmation, the class structure proposed is reasonable and groups only substantially similar claims in the same class. However, even if the Court were to find that the

Amended Plan places substantially similar claims in separate classes, the Debtors have a reasonable basis for doing so.

54.    Three provisions of the Bankruptcy Code govern class considerations: Sections 1122(a), 1123(a)(4), and 1129(b)(1).  Section 1122(a) requires that a plan place a claim in a particular class only if it is "substantially similar" to the other claims of that class, *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992), and there is no "reasonable basis" for separate classification.  *In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996).  Section 1123(a)(4), addressing intra-class treatment, requires that a plan provide "the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  *See* 11 U.S.C. § 1123(a)(4); *In re Adelphia Commc'n Corp.*, 368 B.R. 140 (Bankr. S.D.N.Y. 2007); *In re Quigley Co.*, 377 B.R. 110 (Bankr. S.D.N.Y. 2007).

55.    Gemini objects to the classification of the Gemini Lender Claims under the Amended Plan.  *See* Gemini Obj. ¶¶ 21-24.  Under the Amended Plan, Gemini Lender Claims are classified as Class 7, separately from other classes of General Unsecured Claims. There are a myriad reasons that Gemini Lender Claims are not substantially similar to other General Unsecured Claims.  The Gemini Lenders are parties to the Gemini Earn Program, under which Gemini acted as custodian and agent for users.  All distributions on account of Allowed Gemini Lender Claims will be made to the Gemini Distribution Agent and held in trust in a segregated account for the benefit of the Holders of Allowed Gemini Lender Claims.  The Debtors do not have information about the number or identity of the Gemini Lenders.  Moreover, Gemini Lender Claims are disputed by virtue of the Gemini Adversary Proceeding.  These

factors all constitute a reasonable basis to distinguish the Gemini Lender Claims from other
General Unsecured Claims.

56.     Bankruptcy courts administering other large chapter 11 cases have
routinely accepted separate classification of claims with different legal entitlements and payment
expectations. *See, e.g.*, *In re Charter Commc'ns*, 419 B.R. 221, 264 (Bankr. S.D.N.Y. 2009)
(finding separate classification of general unsecured claims and noteholders was "appropriate
given the disparate legal rights and payment expectations" and relying upon alternate sources of
recovery as further grounds for separate classification).

### C. The Debtors' Revisions to the Solicitation Procedures Moot Other Objections Raised by Gemini.

57.     The Gemini Objection alleges that certain issues related to the Solicitation
Procedures remain unresolved.  Gemini Obj. 44-55¶.  These objections are moot as all
outstanding issues have been resolved.  As reflected in the revised Solicitation Procedures
exhibits, filed substantially contemporaneously herewith, the Debtors, their Solicitation Agent,
and Gemini have engaged in constant dialogue to resolve the remaining outstanding issues in
facilitating a cooperative measure to solicit the votes of the more than 232,000 Gemini Lenders
on the Amended Plan.  First, on the delivery of the Gemini Voting Statement, owing to Kroll's
willingness to collate voting data over a weekend, the confirmation timeline accounts for
Gemini's requested seven days to prepare their voting statement.  Second, Gemini confirmed it
will disseminate the E-Ballot IDs through posts on each Gemini Lender's account page, the
Disclosure Statement Order, the Solicitation Procedures, Ballots and all other relevant materials
have been updated to reflect that information.  The Debtors' discussion regarding inclusion of a
cover letter from Gemini in the Solicitation Package are ongoing.

58.     With these accommodations, Gemini's objections to the Solicitation and

Voting Procedures are moot.

### D. The Remaining Objections are Plan Objections and are Not Ripe for Discussion and Otherwise Should be Overruled.

a.  Objections to the Plan are Not Ripe for Discussion and are Confirmation Issues

59.     Various Objections have raised issues that are not suitable for resolution at

this time and are more appropriate resolved in connection with confirmation, and therefore,

should be overruled.

60.     For instance, the Valour Objection raises an issue with Article V.A of the

Amended Plan, which allows the Debtors or Wind-Down Debtors to alter, amend, modify or

supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the

Schedule of Rejected Executory Contracts and Unexpired Leases at any time on or prior to the

date that is 45 days after the Effective Date on no less than 7 days' notice of the applicable non-

debtor counterparties.  Valour argues that this provision violates section 365(d)(2) of the

Bankruptcy Code.  *See* Valour Obj. ¶ 12.  As set forth above, any outstanding loan agreements

such as the Master Loan Agreement with Valour cannot be assumed by a debtor, *see* 11 U.S.C. §

365(c)(2).  But in any event, the Debtors have provided adequate information regarding the

treatment of all classes of claims.  *See* Amended Disclosure Statement at § III.C.  The Amended

Disclosure Statement clearly indicates that claims for damages resulting from the rejection of an

executory contract will be treated as General Unsecured Claims in accordance with Article III.B-

D of the Amended Plan.  *See* Amended Disclosure Statement VII.F(ii).  To the extent Valour has

an issue with the notice to be provided to non-debtor counterparties to executory contracts to be

assumed or assigned in connection with the Amended Plan, such an objection constitutes an

objection to the Plan and need not be resolved in connection with the Motion at issue now.

61.     The SEC Objection takes issue with the subordination of the Government Penalty Claims and argues that the Amended Plan improperly provides for the subordination of such claims without providing any legal and factual support to show that such subordination is appropriate.  *See* SEC Obj. ¶ 15.  The Amended Disclosure Statement includes discussion about the proposed subordination of the Government Penalty Claims.  Any issue with the propriety of the subordination of such claims amounts to an issue with an element of the Plan and, therefore, is more properly addressed in connection with confirmation.  The Debtors have provided adequate disclosure regarding the basis for the subordination of these claims, *see* Amended Disclosure Statement § III.O.  Moreover, the SEC Objection contends that the exculpation provision is impermissible for various reasons.  The SEC Objection fails to identify any issue regarding the disclosure of the exculpation provision and instead focuses its attention on whether the provision "exceeds the bounds allowed by the Bankruptcy Code."  *See* SEC Obj. ¶ 16. Accordingly, the Debtors believe this, too, is a Plan-specific objection not germane to the Motion at issue at this stage. Finally, the SEC Objection argues that the Amended Plan violates Section 1141(d)(3) to the extent it provides a discharge of the Debtors or claims against the Debtors, as the Debtors appear to intend to liquidate.  *See* SEC Obj. ¶ 18.  This too is a plan confirmation objection that has been prematurely raised by the SEC.  Nevertheless, this objection is now moot since the Amended Plan does not provide for a discharge of the Wind-Down Debtors.

62.     The UST Objection also takes issue with the exculpation provision.  For similar reasons as set forth above with respect to the SEC Objection, this objection should be overruled and resolution of this disputed issue reserved for confirmation.  Additionally, the UST Objection seeks a legal explanation for the payment of the Ad Hoc Group's professional expenses.  This objection seeks to challenge the validity of this provision, rather than any

disclosure with respect to this provision, and, as a result should be overruled.  The UST

Objection also objects to the Wind-Down Debtors' ability to settle claims and take other actions

notwithstanding any requirements imposed by Bankruptcy Rule 9019 and the purported

limitation of liability of the agents under the Plan.  *See* UST Obj. at 20.  Because this objection

relates to a plan provision, rather than any disclosure relating to the provision, this objection

should be overruled and the issue reserved for confirmation.

63.    With respect to the US Trustee's objection to the deadline to file the Plan

Supplement, the Amended Disclosure Statement describes that the Plan Supplement be filed no

later than seven days before the Voting Deadline.  This provides sufficient time for creditors to

review the information in the Plan Supplement, which is a standard period across Chapter 11

Cases in this District. *See, e.g.*, *KB US Holdings, Inc*., et al., Case No. 20-22962 (SHL), ECF No.

581 (Bankr. S.D.N.Y. Feb. 22, 2021); *In re Sear Holdings Corp*., et al., Case No. 18-2358

(RDD), ECF No. 5370 (Bankr. S.D.N.Y. Oct. 15, 2019); *In re Fusion Connect, Inc*., et al., Case

No. 19-11811 (SMB), ECF No. 680 (Bankr. S.D.N.Y. Dec. 17, 2019); *In re BlockFi Inc*., et al.,

Case No. 22-19361 (MBK), ECF No. 1660 (Bankr. S.D.N.Y. Oct. 3, 2023).

b.    No Further Notice is Required for the Amended Disclosure Statement

64.    To begin its objection, the United States Trustee argues that the Debtors

did not comply with the noticing requirements of Bankruptcy Rules 3017 and 2002 as the

"Amended Disclosure Statement . . . essentially reveals a new plan of reorganization" and the

Debtors should be required to "provide 28-day notice, plus three days for mailing."  UST Obj. at

6.  This assertion is categorically untrue and fails on the facts.

65.    On June 7, 2023, the Debtors filed the *Notice of Hearings on (I) the*

*Adequacy of Information in the Debtors' Disclosure Statement and (II) Confirmation of the*

*Debtors' Chapter 11 Plan* (ECF No. 401), in connection with the June Disclosure Statement and the June Plan, both filed on June 13, 2023, in anticipation of a disclosure statement hearing on July 12, 2023. As discussed herein, following the filing of the June Disclosure Statement and June Plan, the Debtors continued negotiations with several key parties in interest in hopes of reaching a global resolution, and were working towards finalizing the Creditor Choice Plan, but ultimately were not able to reach one under the circumstances, and returned to the structure contemplated by the earlier filed June Disclosure Statement and June Plan. *See supra* ¶¶ 5−10.

66.    At bottom, the Amended Disclosure Statement and Amended Plan are substantially similar to the June Disclosure Statement and June Plan—i.e., the Debtors are retaining and pursuing causes of action against various parties, including DCG and Gemini, to fund distributions—and no additional notice should be required. By the time of the disclosure statement hearing, the June Plan would have been on file for 147 days. As the Court noted at the October 24, 2023 hearing, there is "no need to spend any more time and money. And that means that there really isn't a whole lot of downside to going ahead November 7th with the disclosure statement with the No Deal Plan." Hr'g Tr. pg. 57:1−5. The Debtors wholeheartedly agree. With the passage of time, the Debtors have been able to resolve or come close to resolving key disputes, such as claims asserted by FTX and 3AC, and have determined not to pursue a sale or standalone reorganization. The Amended Disclosure Statement and the Amended Plan were updated to reflect the present day. Therefore, there is no further notice required for the Amended Disclosure Statement.

## <u>CONCLUSION</u>

67.    The Amended Disclosure Statement provides more than adequate information to permit the Debtors to proceed with solicitation, the proposed solicitation

-28-

procedures are appropriate, and for the reasons set forth herein, the various Objections have been

adequately addressed and otherwise should be overruled.

68.    For the reasons stated herein, the Debtors' Motion should be granted.


Dated:    November 3, 2023
          New York, New York

*/s/ Jane VanLare*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for the Debtors*
*and Debtors-in-Possession*

**Exhibit A**

**Exhibit A**

**Summary of Responses to Objections**

| ECF No. | Objecting Party | Summary | Reply | Applicable Section in Amended Disclosure Statement | Applicable Section in This Reply |
|---|---|---|---|---|---|
| 475 | David Morton | October Disclosure Statement does not include adequate information about the treatment of his property which was provided as collateral (18 BTC) in connection with two loans GGC extended to him under a master loan agreement. | The October Disclosure Statement includes sufficient disclosures to address the treatment of such claims. The Amended Disclosure Statement also includes further revised language. | III.D., VII.D. | A.a. |
| 496 | Lead Securities Plaintiffs | Reservation of rights to object to any modification or subsequent iterations of the Disclosure Statement and do not oppose approval of the Disclosure Statement in its current form. | No response needed. | - | - |
| 510 | Securities and Exchange Commission | October Disclosure Statement does not include adequate information about financial data and sources of distributions and estimated recoveries | The Financial Projections includes this information. | Exhibit D | A.e. |
| 510 | Securities and Exchange Commission | October Disclosure Statement does not include adequate information about the sale process | The October Disclosure Statement, which was filed after the SEC Objection, includes sufficient disclosures regarding the sale process. | VI.O. | A.m. |
| 510 | Securities and Exchange Commission | October Disclosure Statement does not include adequate information about information about reorganized Genesis and any successor entity | This objection is moot because the Amended Plan no longer contemplates that the Debtors will reorganize and instead will wind down. | - | - |
| 510 | Securities and Exchange Commission | October Disclosure Statement does not include adequate information about contemplated securities transactions under | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | Preamble, II, VII.E.(ii)(m); | A.b. |

| | | | | | |
|---|---|---|---|---|---|
| | | the plan and compliance with securities laws | | | |
| 510 | Securities and Exchange Commission | Amended Disclosure Statement should include a statement that nothing in the Disclosure Statement, Plan, Confirmation Order shall constitute a finding or determination under securities law | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | Preamble | A.b. |
| 510 | Securities and Exchange Commission | October Disclosure Statement does not include adequate information about the basis for subordination of government claims | The Amended Disclosure Statement includes discussion about the proposed subordination of the Government Penalty Claims. Any issue with the propriety of the subordination of such claims is a plan confirmation objection that has been prematurely raised. | III.O. | D.a. |
| 510 | Securities and Exchange Commission | Amended Disclosure Statement should include a statement that the Disclosure Statement or Plan does not impair the SEC's police and regulatory power or from commencing or continuing any proceeding or investigation. | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | VII.I. | A.b. |
| 510 | Securities and Exchange Commission | The exculpation provision is impermissible. | This is a plan confirmation objection that has been prematurely raised. | - | D.a. |
| 510 | Securities and Exchange Commission | Amended Plan violates Section 1141(d)(3) to the extent it provides a discharge of the Debtors or claims against the Debtors, as the Debtors appear to intend to liquidate. | This is a plan confirmation objection that has been prematurely raised. Nevertheless, the Amended Plan does not provide for a discharge of the Wind-Down Debtors. | - | D.a. |
| 553 | New Jersey Bureau of Securities | Joinder to SEC Objection and requests an amendment to the Disclosure Statement, Amended Plan and Confirmation Order to expressly state that nothing therein impairs any State's police and regulatory powers or limits any State from commencing or continuing any proceeding or investigation. | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | VII.I. | D.b. |

| 582 | Helium | October Disclosure Statement does not provide sufficient information regarding the treatment of Helium's tokens in the plan, which were provided to GGC for staking with GGC's preferred validators. | The October Disclosure Statement includes sufficient disclosures to address the treatment of such claims. The Amended Disclosure Statement also includes further revised language. | III.D., VII.D. | A.a. |
| 582 | Helium | October Disclosure Statement does not provide an adequate liquidation analysis because while they indicate the estimated net assets available for distribution, that information does not permit creditors to understand potential recoveries. | The Amended Disclosure Statement includes information regarding potential recoveries for each class of creditors. | III.E.; Exs. D., E. | A.a. |
| 591 | New York State Office of the Attorney General | Requests the addition of statements in the Disclosure Statement, Amended Plan and confirmation order that nothing therein impairs "other governmental units' police and regulatory powers or limits other governmental units from commencing or continuing any proceeding or investigation and nothing therein contain or shall constitute findings under either federal or state securities laws (including New York state) that crypto assets or transactions involving crypto assets are securities. | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | Preamble; VII.I. | D.b. |
| 858 | Valour | October Disclosure Statement does not include adequate information with respect to how the Debtors propose to treat claims held by creditors that are parties to executory contracts (i.e., MLAs) under which creditors borrowed money from one of the Debtors and, in exchange, posted collateral to secure the outstanding loan balance, including the classification of such claims, whether the Debtors intend to assume/reject the underlying MLAs, if such contracts are to be rejected, whether the | The October Disclosure Statement includes sufficient disclosures to address the treatment of such claims. The Amended Disclosure Statement also includes further revised language.<br><br>Moreover, MLAs are contracts to make a loan or otherwise financial accommodation contracts, which cannot be assumed under the Bankruptcy Code.  See 11 U.S.C. 365(c)(2). | III.C, III.D., VII.F., VII.G., VII.H. | A.a. |

| | | Plan is intended to bar setoff or recoupment of the resulting breach claim. | For the avoidance of doubt, the Amended Disclosure Statement includes sufficient information regarding the treatment of executory contracts. | | |
|---|---|---|---|---|---|
| 859 | Ad Hoc Group | October Disclosure Statement does not include adequate information about the identity of Released Parties. | The Amended Plan and Amended Disclosure Statement are clear that Released Parties include current directors and officers as of the Petition Date, and does not include individuals related to DCG.  The Plan Supplement will also include information about the decision of the Special Committee regarding Released Parties. | VII.I. | A.j. |
| 859 | Ad Hoc Group | October Disclosure Statement does not include adequate information about the value of potential claims and causes of action against Gemini | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | VI.F. | A.e. |
| 859 | Ad Hoc Group | October Disclosure Statement does not include adequate information about the potential consequences of NYAG Action and the impact on recoveries | The October Disclosure Statement includes sufficient information regarding the risks related to the NYAG Action.

Nevertheless, the Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | VI.U.(iv), IX.A., IX.B. | A.h. |
| 859 | Ad Hoc Group | Requests inclusion and consideration of revisions to various sections of the October Disclosure Statement in Exhibit A of the objection. | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | I.A., VI.F., VI.U. | - |
| 860 | Securities Litigation Lead Plaintiffs | October Disclosure Statement does not include adequate information about whether the Plan will require the Debtors or PA Officer to preserve evidence potentially | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | III. L, VII.I., VII.E.(i) | A.l. |

| | | relevant to the Securities Litigation through the conclusion thereof. | | | |
|---|---|---|---|---|---|
| 863 | Foundry | October Disclosure Statement does not include adequate information about the classification and treatment of Foundry's claim for 125,00 ZEC which it pledged to secure its obligation to repay Genesis 300 BTC which it borrowed pursuant to a November 7, 2022 MLA. | The October Disclosure Statement includes sufficient disclosures to address the treatment of such claims. The Amended Disclosure Statement also includes further revised language. | III.D., VII.D. | A.a. |
| 864 | Gemini | The Amended Plan is patently unconfirmable because it was not proposed in good faith under section 1129(a)(3) and improperly classifies the Gemini Lenders in one class to disenfranchise them. | This is a plan confirmation objection that has been prematurely raised. However, as will be demonstrated at the confirmation hearing, there is a reasonable basis for separately classifying Gemini Earn users, because, among other things, they are subject to a separate financing arrangements and have appointed Gemini as their agent | - | B. |
| 864 | Gemini | October Disclosure Statement lacks adequate information with respect to the impact of determinations with respect to issues raised in the Gemini adversary proceeding and the collateral securing Gemini Lender Claims. | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | VI.F., VI.U.; Exhibit G. | A.e. |
| 864 | Gemini | October Disclosure Statement lacks adequate information with respect to the risks regarding the SEC and NYAG Actions and their potential impact on creditor recoveries. | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | III.O., VI.U.(iv), IX.A., IX.B. | A.h. |
| 864 | Gemini | October Disclosure Statement lacks adequate information with respect to the organizational structure for the Wind-Down Debtors' decision-making authority. | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | VII.E. | A.k. |
| 864 | Gemini | The Distribution Principles have not yet been filed. | The Debtors and creditor constituencies continue to negotiate the | [Exhibit H] | A.m. |

| | | | Distribution Principles. The Debtors anticipate filing the Distribution Principles prior to approval of the Motion. | | |
|---|---|---|---|---|---|
| 864 | Gemini | October Disclosure Statement lacks adequate information with respect to the Gemini Withheld Assets. | The Debtors intend to include the Gemini Withheld Assets Schedule with the Amended Disclosure Statement. | Exhibit I | A.m. |
| 864 | Gemini | The Solicitation and Voting Procedures should not be approved in their current form because certain issues related to Gemini remain unresolved, among others the inclusion of the proposed letter with the solicitation materials. | The Debtors believe that all outstanding issues with respect to Gemini have been resolved with respect to solicitation.  Discussions regarding inclusion of the letter proposed by Gemini with the Solicitation Package are ongoing, though the Debtors must ensure it is not misleading. | - | C. |
| 865 | 3AC | Requested the addition of language to the Amended Disclosure Statement becase any effort to seek the equitable subordination of the 3AC Claims against the Genesis Debtors pursuant to the Plan is improper and would violate the stay applicable in its own Chapter 15 Case. | The Debtors have included the requested language in the Amended Disclosure Statement in response to this objection. | VI.N(ii)(b), Exhibit A | A.f. |
| 865 | 3AC | The October Disclosure Statement does not include sufficient disclosures to address how a reserve for the 3AC Claims will be established. | The Amended Disclosure Statement and the Amended Plan include sufficient disclosures regarding the circumstances leading to a potential reserve for the 3AC Claims. | VI.N(ii)(b), Exhibit A | A.f. |
| 865 | 3AC | The Amended Plan is patently unconfirmable because it does not satisfy the Genesis Debtors' obligation to establish a reserve for disputed claims such as the 3AC Claims, nor provide 3AC with notice and an opportunity to be heard on the | This argument, given without any legal support, lacks merit.  The Amended Disclosure Statement provides sufficient information regarding the potential reserve for the 3AC Claims. Even in the best light, this challenge to | VI.N(ii)(b), Exhibit A | B. |

| | | amount reserved on account of the 3AC Claims. | the plan is at most an issue for the confirmation hearing. | | |
|---|---|---|---|---|---|
| 865 | 3AC | 3AC has also submitted comments to the Debtors regarding discrete disclosure issues and reserves the right to supplement the Limited Objection in the event those comments are not resolved. | The Debtors have included certain additional disclosures in the Amended Disclosure Statement in response. | VII.D. | A.f. |
| 866 | Unsecured Creditors' Committee | Reservation of rights to further amend, modify or supplement this ROR to raise additional issues as discussions remain ongoing. | No action necessary.  The Debtors have received informal comments to the Amended Disclosure Statement from the UCC that have been incorporated. | - | - |
| 867 | Digital Currency Group | October Disclosure Statement does not include adequate information about the Agreement in Principle. | The October Disclosure Statement includes sufficient disclosures regarding the Agreement in Principle, which is not part of the Amended Plan, and additional information would be confusing. | I.A., VI.P.(i)., VI.U. | A.g. |
| 867 | Digital Currency Group | October Disclosure Statement does not include adequate information about the risks of pursuing certain causes of action against DCG as a source of substantial recoveries under the Amended Plan. | The October Disclosure Statement includes extensive disclosures about the Causes of Action against the DCG Parties and furthermore includes an excerpt written by the DCG Parties regarding such Causes of Action as Exhibit E to the October Disclosure Statement. | VI.F-G, IX, Exhibit E | A.d. |
| 867 | Digital Currency Group | DCG also requested revisions to the Amended Disclosure Statement as Exhibit A to the objection. | The Debtors have included certain additional disclosures in the Amended Disclosure Statement in response to this request. | - | - |
| 874 | SOF International | The treatment of Gemini Lender Claims in the October Disclosure Statement is ambiguous and should be clarified that the claims will preserve rights against third parties. | The Debtors have included additional language in the Amended Disclosure Statement in response to this objection. | VI.U. | A.m. |

| 874 | SOF International | The Distribution Principles have not yet been filed. | The Debtors and creditor constituencies continue to negotiate the Distribution Principles. The Debtors anticipate filing the Distribution Principles prior to approval of the Motion. | [Exhibit H] | A.m. |
|---|---|---|---|---|---|
| 874 | SOF International | October Disclosure Statement lacks adequate information with respect to the Gemini Withheld Assets Schedule. | The Debtors intend to include the Gemini Withheld Assets Schedule with the Amended Disclosure Statement. | Exhibit I | |
| 874 | SOF International | October Disclosure Statement does not include adequate information about the application of Gemini Asset Value as of the Effective Date | The Debtors have included additional disclosures in the Amended Disclosure Statement regarding the Gemini adversary proceeding, which was filed after the deadline to object to the Amended Disclosure Statement, and various related information. | IV.C.;VI.U. | A.m. |
| 874 | SOF International | October Disclosure Statement lacks adequate information with respect to the Gemini adversary proceeding. | The Debtors have included additional disclosures in the Amended Disclosure Statement in response to this objection. | VI.U. | A.e. |
| 874 | SOF International | October Disclosure Statement does not include adequate information about the impact of certain other isues pertaining to recoveries on Allowed Gemini Lender Claims. | The Debtors have included additional disclosures in the Amended Disclosure Statement regarding the Gemini adversary proceeding, which was filed after the deadline to object to the Amended Disclosure Statement and its impact on the Amended Plan. | VI.F.; Exhibits D., E. | A.e. |
| 874 | SOF International | October Disclosure Statement should include a plain language summary showing the method in which the Allowed Gemini Lender Claims are proposed to be treated given the Debtors' assumptions under the Plan. | The Debtors have included additional disclosures in the Amended Disclosure Statement regarding the Gemini adversary proceeding, which was filed after the deadline to object to the Amended Disclosure Statement and its impact on the Amended Plan. | III.N. | A.e. |
| 875 | Office of the United States Trustee | October Disclosure Statement is essentially proposing a new plan and does not comply with the applicable noticing rules. | The October Plan and October Disclosure Statement are substantially similar to the corresponding plan and | - | D.b. |

| | | | disclosure statement filed in June, and no further notice is necessary. | | |
|---|---|---|---|---|---|
| 875 | Office of the United States Trustee | October Disclosure Statement does not include adequate information about potential distributions and the timing of the distributions, including:<br>(1) the Distribution Principles;<br>(2) the Debtors' likelihood to prevail and how the litigations could impact the potential recovery for creditors; and<br>(3) additional information regarding a potential chapter 7 liquidation in the Liquidation Analysis. | The Debtors and creditor constituencies continue to negotiate the Distribution Principles. The Debtors anticipate filing the Distribution Principles prior to approval of the Motion.<br><br>The Debtors believe that the Amended Disclosure Statement provides sufficient information with respect to the various litigations involving the Debtors.<br><br>The Debtors also believe that the Liquidation Analysis includes sufficient information regarding the potential distributions in comparison to a chapter 7 liquidation. | [Exhibit H]<br><br><br>VI.U.<br><br><br><br><br><br><br>Exhibit C | A.i. |
| 875 | Office of the United States Trustee | The deadline to file the Plan Supplement does not provide sufficient time for creditors to review material information. | This is a plan confirmation objection that has been prematurely raised. However, the Amended Disclosure Statement describes that the Plan Supplement be filed no later than seven days before the Voting Deadline. This provides sufficient time for creditors to review the information in the Plan Supplement, which is a standard period across Chapter 11 Cases in this District. | See cover | D.a. |
| 875 | Office of the United States Trustee | October Disclosure Statement does not include adequate justifications for the releases. | This is a plan confirmation objection that has been prematurely raised.<br><br>The Debtors believe that the Amended Disclosure Statement includes | See cover; III.T. | A.j. |

| | | | sufficient information regarding the scope of releases, including the Released Parties. In addition, the Debtors are not proposing non-consensual third-party releases under the Amended Plan. | | |
|---|---|---|---|---|---|
| 875 | Office of the United States Trustee | October Disclosure Statement does not include adequate justifications for the exculpation provision. | This is a plan confirmation objection that has been prematurely raised. | - | D.a. |
| 875 | Office of the United States Trustee | October Disclosure Statement does not include adequate justifications for the payments to the Ad Hoc Group. | This is a plan confirmation objection that has been prematurely raised. | - | D.a. |
| 875 | Office of the United States Trustee | October Disclosure Statement does not include an adequate explanation about a purported waiver of Bankruptcy Rule 9019. | This is a plan confirmation objection that has been prematurely raised. | - | D.a. |
| 875 | Office of the United States Trustee | October Disclosure Statement does not include an adequate explanation about a purported limitation of liability of the agents. | This is a plan confirmation objection that has been prematurely raised. | - | D.a. |