Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 23-10063-shl

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   GENESIS GLOBAL HOLDCO, LLC,

8

9           Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                  United States Bankruptcy Court

12                  300 Quarropas Street

13                  White Plains, NY 10601-4140

14

15                  Thursday, October 12, 2023

16                  2:07 PM

17

18

19

20

21  B E F O R E :

22  HON SEAN H. LANE

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO: ARIANNA PERSAUD

1    HEARING re Doc. #791 Notice of Agenda

2

3    HEARING re Discovery Conference

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   CLEARY GOTTLIEB STEEN HAMILTON LLP

 4        Attorneys for Debtors

 5        One Liberty Plaza

 6        New York, NY 10006

 7

 8   BY:  ANDREW WEAVER

 9        LUKE A. BAREFOOT

10

11   LATHAM WATKINS

12        Attorney for Three Arrows Capital Ltd.

13        355 South Grand Avenue, Suite 100

14        Los Angeles, CA 90071-1560

15

16   BY:  NIMA MOHEBBI

17

18   WHITE & CASE

19        Attorney for Official Committee of Unsecured Creditors

20        1221 Avenue of the Americas

21        New York, NY 10020

22

23   BY:  COLIN WEST

24

25
```

Page 4

1                       P R O C E E D I N G S

2              THE COURT:  Good afternoon.  This is Judge Sean

3     Lane in the United States Bankruptcy Court for the Southern

4     District of New York, and we are here for a conference this

5     afternoon in the Genesis Global Holdco, LLC case.  There's

6     an agenda for that at Docket Number 791.  So let's start

7     with getting appearances, first from the debtors.

8              MR. WEAVER:  Good afternoon, Your Honor.  Andrew

9     Weaver, Cleary Gottlieb Steen & Hamilton LLP, on behalf of

10    the debtors, along with my colleague, Luke Barefoot.

11             THE COURT:  All right.  Good afternoon to you

12    both.  And on behalf of the Official Committee of Unsecured

13    Creditors?

14             MR. WEST:  Good afternoon, Your Honor.  Colin

15    West, of White & Case, on behalf of the official committee.

16             THE COURT:  All right, and on behalf of Three

17    Arrows Capital?

18             MR. MOHEBBI:  Good afternoon, Your Honor.  Nima

19    Mohebbi, Latham & Watkins, on behalf of the joint

20    liquidators, Three Arrows Capital.

21             THE COURT:  All right.  Good afternoon.  And I

22    realize, as always, we have a lengthy list of folks who are

23    here, but certainly a lot of those folks won't participate.

24    So let me, at this point then, throw it open to anybody else

25    who wishes to make an appearance at this time.  And if you

Page 5

1    don't because you don't expect to speak and then later, that

2    changes, that's fine.  But anybody else who wants to make an

3    appearance now?

4         All right.  So with that, I will turn it over to

5    the debtors, who are the folks who requested this informal

6    conference.  Take it away.

7         MR. WEAVER:  Thank you, Your Honor.  Again, for

8    the record, Andrew Weaver, Cleary Gottlieb Steen & Hamilton,

9    on behalf of the debtors.  We appreciate Your Honor making

10   himself available so quickly for us.  And I apologize that

11   we are here on a discovery issue, but we will try to be

12   brief in our description of issue for Your Honor and know

13   that although we appreciate Your Honor's practice of not

14   requesting letter briefs before we appear before you, the

15   debtors, of course, to the extent you would find it helpful,

16   we're more than happy to submit additional briefing after

17   our discussion today.

18        But the focus today is on the 3AC's, the foreign

19   representatives of the liquidators desire to depose the

20   general counsel of the debtors, Ms. Arianna Pretto-Sakmann.

21   Your Honor, we acknowledge at the very beginning that,

22   obviously, discovery in these matters is more of a liberal

23   standard.  In the Second Circuit, there is no automatic

24   block of taking a deposition of a lawyer.  The standard is

25   pretty well defined in the Second Circuit, known as the

Page 6

1    Friedman factors, on whether or not there's an undue

2    hardship or burden when seeking depose counsel.

3          The factors that are relevant here, Your Honor,

4    that we think clearly show undue hardship, include whether

5    or not there's a need to depose the lawyer, the lawyer's

6    role in connection with the matter on which discovery is

7    sought and in relation to the pending litigation, the risk

8    of encountering privilege and work product and the extent of

9    discovery already conducted.

10         Taking a step back, Your Honor, just to provide

11   some context to how we got here, I'm sure you remember that

12   we began actually litigating the schedule in this matter

13   before you at the beginning of September.  At that time, we

14   had submitted a proposed schedule.  The board

15   representatives filed an objection to our schedule on

16   September 5th.  At Paragraph 24 of ECF 673, they noted at

17   that point they intended to depose three fact witnesses, a

18   30(b)(6) and some non-party witnesses.  Thereafter, on

19   September 7th, they did notice three fact witnesses, former

20   and current employees of the debtors, and a 30(b)(6).

21         On September 12th, they noticed yet another fact

22   witness, a former employee of the debtors as well.  And then

23   on September 27th, they sent us a list of 17 current and

24   former employees to see who we represented and who we might

25   be able to make available for a deposition.  Thereafter,

1    they identified five more fact witnesses that they wanted to

2    take a deposition of, so that's in total, nine fact

3    depositions, along with the 30(b)(6) of the debtors, along

4    with third-party discovery.

5         It was only after that, Your Honor, on October

6    3rd, for the first time, that counsel for the foreign

7    representatives indicated they wished to depose the general

8    counsel of the debtors.  And Your Honor, when we pushed back

9    on this request, arguing that any testimony, non-privileged

10   testimony, would be duplicative, there would be obviously a

11   great risk of dealing with privilege issues beyond the fact

12   that Genesis is in the middle of this bankruptcy proceeding

13   with limited resources available to it, the distraction that

14   it would cause to the estate to be able to prepare a witness

15   who most likely would have to claim privilege throughout the

16   course of the deposition.

17        In response to our pushback, counsel essentially

18   pointed to two reasons why testimony of the general counsel

19   was appropriate here, one of which related to meetings that

20   took place early in the case, settlement negotiations and

21   discussions where the general counsel participated which are

22   not at all relevant to the actual claims filed by the

23   liquidators for 3AC in this court before you.  And more

24   specifically, they pointed to a witness statement that the

25   general counsel had submitted in an unrelated matter in

Page 8

1    2022.

2          In particular, Your Honor, just for context, in

3    June of 2022, Your Honor will become familiar with all these

4    facts as this case proceeds, this matter proceeds.  But when

5    Three Arrows defaulted on their loans to Genesis, Genesis

6    went in to file an arbitration at that time to seek to

7    recover certain rights they had under the lending

8    agreements.  As part of that arbitration, Genesis filed a

9    motion for emergency relief under Rule 38 of the AAA's

10   Commercial Arbitration Rules and Procedures.  This is in

11   June of 2022.

12          As part of that motion for emergency relief, the

13   general counsel did submit a witness statement specifically

14   responding to comments that had been made at a hearing

15   earlier that month that the general counsel was present at,

16   and the declaration at issue, the witness statement that was

17   put forth covered a number of issues.

18          And I'll summarize here, and again, we're happy to

19   spell this out in greater detail, but really focused on,

20   one, attaching documents that were relevant to the emergency

21   motion.  There was a discussion about the correct amount of

22   the loans between 3AC and Genesis, and within the witness

23   statement there was a chart prepared, a two-page chart

24   showing the loan amounts.  Not surprising, Your Honor, there

25   are much more sophisticated spreadsheets and charts that

1    have been produced here in this matter covering the loans

2    that are at issue and not based upon the declaration

3    submitted over a year and a half ago.

4           The witness statement also covers the propriety of

5    the authority of the individuals who served the default

6    notice on 3AC and again, attaching resolutions that showed

7    the authority of the individuals to act.  Then there was a

8    description of news accounts describing what the press is

9    reporting on whether or not 3AC would be able to repay its

10   debts and whether Genesis would be at risk of its rights not

11   being satisfied through the course of the arbitration, thus

12   necessitating the emergency motion that had been filed.

13          So that obviously, Your Honor, was a part of an

14   arbitration that was taking place prior to the bankruptcy

15   that brings us before Your Honor here today.  The dispute

16   before Your Honor is obviously the claims objection that had

17   been filed by the debtors against the claims that 3AC has

18   filed in this bankruptcy, and there's been extensive amount

19   of discovery already produced.

20          The claims objection itself includes a sworn

21   declaration statement by the interim CEO of Genesis who's

22   already been before you in the FTF settlement litigation,

23   Your Honor, as well as detailed nine fact witnesses and a

24   30(b)(6) that will be taking place.  Here, Your Honor, if

25   we're looking at just that declaration as a basis to depose

Page 10

```
 1    general counsel, we think this does not get anywhere close

 2    to satisfying the elements of the Friedman factors, in part

 3    because, one, to the extent there are any facts within the

 4    declaration that are relevant to the dispute before the

 5    court, it is more than covered by the witness statements

 6    that have already been submitted, plus the discovery that

 7    will be taken through additional depositions and the

 8    documents.

 9            Moreover, Your Honor, the idea that the general

10    counsel's role as it relates to the litigation at issue,

11    which is, in fact, their claims and our objection, the

12    counsel for the liquidators have not put into any facts

13    specific to that dispute, simply to the fact that there was

14    a declaration submitted in an arbitration between the

15    parties prior to bankruptcy.

16            So we're trying to be brief as we can.  As I said,

17    we're happy to outline the declaration and where the other

18    evidence that is relevant is found within the record already

19    or where we expect it to be found.  We think that this

20    request from the liquidators is simply not only duplicative,

21    but frankly extremely wasteful, disruptive to the debtors.

22    And really, I've heard of no reason why fact evidence from

23    the general counsel would be relevant to disputes that are

24    at issue here.

25            THE COURT:  All right.  Thank you very much for
```

Page 11

```
 1    that overview.  I appreciate it.  So with that, let me hear

 2    from Three Arrows Capital.

 3             MR. MOHEBBI:  Thank you, Your Honor.  So just to

 4    respond I think pretty directly, the Friedman factors are

 5    more than satisfied here and the articulation of Mr. Weaver

 6    in terms of why Ms. Pretto-Sakmann's testimony is relevant,

 7    it certainly goes to the declaration.  And I just want to be

 8    clear for the record that the arbitration initiated by

 9    Genesis after the Three Arrows default does, in a very much

10    direct way, cover the very assets and issues that are at

11    play in connection with this case.  Ms. Pretto-Sakmann's

12    declaration was not submitted at a time when Cleary was

13    counsel for Genesis.

14             So I certainly believe it's probably the case that

15    they would have not done that had they been counsel.  But

16    it's not just a declaration.  It's a 15-page declaration

17    that makes very fundamental pronouncements on issues of

18    fact, including whether or not the very margin calls that we

19    dispute were proper and made in the ordinary course of the

20    party's relations.  These are primary core issues in our

21    litigation here.  But despite just the declaration --

22             THE COURT:  Well, let me -- so let me ask sort of

23    what I think may be the theme for this.  There are lots of

24    times people -- and this is almost sort of a 30(b)(6)

25    problem as well, is there are times when folks are speaking
```

Page 12

1    on behalf of an organization and they are sort of the top

2    end of the informational pyramid and they gather the

3    information.  And their own personal extent, other than

4    essentially providing the declaration, is a lot more limited

5    than providing the declaration might suggest.  There are

6    other times when folks, they are actually the folks who were

7    involved.

8             And so my question is what kind of sense anyone

9    has here about this witness looking at it from that point of

10   view because obviously, if you are talking to the general

11   counsel, there would be a need to separate out what's done

12   as a matter of the business aspect, which is not privileged

13   versus what's done in terms of offering advice.

14            But when you think about what's happening as a

15   matter of the business, what I understand general counsels

16   do is their clients want to do things and they come to their

17   clients.  Those clients come to their lawyers saying, I want

18   to do this.  Tell me about the legal ramifications or

19   whether this is a problem.  And the lawyers aren't the ones

20   coming up with the business plan or the business decision.

21   They're the ones providing legal advice on it.  So what can

22   you tell me about your view about this witness from that

23   perspective?

24            MR. MOHEBBI:  Sure, Your Honor.  It's a great

25   question.  It's actually where I was going next, which is to

Page 13

1    say there's a reason that she provided a factual

2    declaration.  She was very much involved in the day-to-day

3    business.  There are several documents that we've uncovered

4    throughout the production, for instance, where she's

5    engaging in detailed discussions with our client about

6    pledge agreements, about certain assets that were supposed

7    to be pledged.  Very much involved in business strategy.

8    She is, in fact, the signatory on the key loan agreements at

9    issue here, or at least one of the signatories.  She's a

10   signatory on the assumption and assignment agreement to DCG.

11   She is the one who wrote and issued the notice of default.

12   She was involved in extensive discussions with the parties.

13   And so --

14        THE COURT:  Well, let me drill down on that a bit.

15   So is she involved in the way we were just discussing, which

16   is some clients said, here's what I want to do, and she gave

17   them legal advice, or is she somebody -- again, I'm trying

18   to understand her as making the call on margins and things

19   of that sort.  That seems a little at odds with what I

20   understand a general counsel does.

21        So I guess there's a couple of ways to view that

22   is, I don't know if you've deposed the other people who are

23   on this correspondence that you say is sort of the basis for

24   her involvement or your desire to depose her, because

25   there's often a way of saying, well, we'll do everything up

Page 14

1   to but not including the lawyer.  And then we'll see what's

2   left and what questions we might still have answered that

3   need to be answered.

4            MR. MOHEBBI:  That's a perfectly reasonable

5   perspective.  I think, to be clear, our view is that she was

6   playing the role of a business person and probably was doing

7   legal advice behind the scenes.  But I think that the

8   evidence shows that she was doing a lot of business and,

9   frankly, was key factually in these discussions, including

10  in interactions with our client or our former founders.  So

11  the answer is that certainly general counsels in a lot of

12  situations do play multiple roles and they wear multiple

13  hats.  I think Ms. Pretto-Sakmann in particular wore a very

14  obvious business hat here, such that it literally led to her

15  submitting a 15-page declaration on key elements and facts

16  in the case.  Now if the --

17           THE COURT:  Does she have a corporate -- does she

18  have another title other than general counsel?

19           MR. MOHEBBI:  I honestly don't know, but there

20  wasn't a lot of formality here in general, as is probably

21  unfortunately typical in these crypto cases, that folks

22  didn't really, and particularly from what we've seen from

23  the Genesis documents, did not follow typical formalities

24  that you might expect them to have followed.  This is not

25  JPMorgan essentially.  This is a very different operation.

Page 15

1    And I think the notion that we see here is that she's

2    wearing a number of hats, and I'm not saying that was a bad

3    thing.  I'm just saying that if she's competent enough

4    factually to give an extensive background statement and

5    basically claim that -- essentially assert that our factual

6    statements about the party's working loan relationship were

7    just fundamentally false, then she is somebody, frankly,

8    that we think is important to depose.  But I hear Your Honor

9    --

10            THE COURT:  Well, but yes and no.  So if she's not

11   a lawyer, then we're not having this discussion because even

12   in the debtors, she might be one of several people who know

13   a certain amount of things and you might argue about whether

14   they're the right 30(b)(6) witness.  So are you done?

15   What's the status of your discovery in terms of deposing

16   people and how many other people are there to be deposed and

17   on what subjects?

18            I'm trying to figure out whether it makes sense to

19   go forward with that, fill out the factual picture and also

20   communicate with the debtors in terms of saying, well, here

21   are the things that we think are the correspondence or other

22   documents that are the things.  Again, you don't have to

23   give away your entire deposition strategy, but I can't

24   imagine -- you're all well-prepared people, so you all know

25   what documents her name is on.  So I don't think you're

Page 16

```
1    giving away the case crackers, as my cousin Vinny would say.

2           So if you can identify those documents and then

3    just have a candid conversation among counsel after you

4    finish your other discovery as to what's needed or not, I do

5    think it's probably in everybody's best interest that even

6    if you did have a deposition go forward, that it's well-

7    defined what the topics are and aren't because you don't

8    want to be forever mired in assertions of privilege during

9    the deposition, I would think.

10          MR. MOHEBBI:  Absolutely, Your Honor, and we would

11   very much not be seeking any privileged communications and I

12   think that's a reasonable approach.  The only thing I would

13   ask Your Honor is that we have sort of a tight schedule in

14   terms of when depositions are supposed to be completed.  And

15   so if Genesis, if the debtors will agree to have that

16   discussion perhaps after the deposition period has finished

17   and we wouldn't be sort of prejudiced from approaching the

18   topic at that point, I think that that's a very reasonable

19   solution and one that would be acceptable to us so that

20   we're not, as Mr. Weaver said, creating work.  That's

21   certainly not our intention.

22          And just to be clear, when he listed that long

23   list of fact witnesses, that list has been substantially

24   winnowed down.  We just started depositions yesterday and

25   they are going pretty aggressively in each of the following
```

Page 17

1    weeks.  And we appreciate the debtors and are working, I

2    think have worked well together on those issues.  So I'm

3    very happy to approach this in a way that makes sense that

4    we can complete the discovery, the fact discovery and if we

5    find that there are holes that we believe it's important for

6    Ms. Pretto-Sakmann to fill, we will have that discussion and

7    have a meet and confer, as you suggest.

8              THE COURT:  Yeah.  And I would think obviously,

9    during the course of building out your factual case, you'll

10   ask a lot of people who else was in the room?  Who else was

11   involved in these emails?  What was this person's role?

12   That person's role?  So you'll have a much better --

13   everyone will have a much better sense of what the contour

14   of the land is.  And I would think we'll then be able to

15   figure out much more easily the answer to this question.

16             And sometimes I think -- and this seems to be

17   where we are.  One party knows a lot more about things in

18   terms of what this person's role is, but it's sort of a

19   trust but verify situation, so you don't, and so you'll sort

20   of catch up and get a sense of that and then figure out

21   what's worth pursuing or not.  So let me hear back from the

22   debtors, obviously, in terms of thinking about a potential

23   approach, whether that kind of approach makes sense to you.

24             MR. WEAVER:  Thank you, Your Honor.  Again, for

25   the record, Andrew Weaver, Cleary Gottlieb, on behalf of the

Page 18

1    debtors.  Your Honor, we're happy to take guidance from you

2    on moving forward with discovery and revisiting as

3    necessary.  As I think we pointed out, we've not been

4    pointed to any particular facts other than this declaration.

5    And I think Your Honor very accurately, without even seeing

6    the declaration, understands the context of that

7    declaration, particularly in an emergency motion.  A year

8    and a half ago, I think if you were to see the declaration,

9    it would be very --

10             THE COURT:  In my former life, I was involved in

11   submitting declarations from the head of the CIA and the

12   chairman of the Joint Chiefs of Staff.  So I have some

13   familiarity with the knowledge pyramid.  Yes.

14             MR. WEAVER:  Yeah.  So of course, we're happy to

15   move forward with the significant number of depositions that

16   have been scheduled in this matter.  And of course, we're

17   happy to continue discussing that with counsel for the

18   liquidators.

19             I think, Your Honor, just by way of preview,

20   though, I think on some of the points that have been raised,

21   the issues that are at play in this litigation on the claims

22   objection really go to the business of Genesis and the

23   business of 3AC.  And I don't think we're going to find

24   anything that's unique to the role of the general counsel

25   beyond the types of things that you've already identified,

1    Your Honor.  And the fact that someone has signed a document

2    as the chief legal officer is common and I don't think

3    brings folks within the scope of fact witness to the level

4    necessary.

5              THE COURT:  I'm not disagreeing with you.  I guess

6    my thought is that this is one of these kinds of disputes

7    where arguing about the theoretical is much more difficult

8    and also expensive and inefficient than arguing about the

9    practical.  So if you can narrow things by talking to other

10   folks, filling out the picture that obviously, Mr. Weaver

11   and Mr. Barefoot, you have a much better sense of these

12   things than counsel for Three Arrows Capital does at this

13   point, and especially since Three Arrows Capital, as the

14   liquidators, they don't have the benefit of the kind of

15   input you're getting from your client.

16             So there's definitely an information deficit and

17   disparity.  And what I would suggest we do is you all work

18   out the details of this, but you get through everything

19   else, deal with this issue at the end.  But I would expect,

20   before anything else comes back to me, that you will have

21   talked about the specific documents that might be the basis

22   for the request and that Three Arrows counsel will have a

23   much better sense of the factual lay of the land, who's

24   doing what, what roles people played.

25             And my suggestion would be, as long as this didn't

Page 20

1    hamper anyone's ability to take steps needed in Chapter 11

2    case, is to come back for another conference and then we can

3    figure out what exactly needs to be briefed.  I don't want

4    you all to have to write a treatise on attorney depositions

5    that doesn't -- it's just not a useful way to spend your

6    time.

7          But obviously I want to make sure to hear very

8    specifically where this falls in the realm of the test you

9    mentioned and exactly what we'd be -- if there's going to be

10   a deposition, exactly what topics are fair game and what

11   topics aren't.  So I would anticipate if we do need to have

12   further discussions, there'll be some briefing.  But I would

13   imagine it should be fairly targeted.  And if you all talk

14   to each other as you go through, you all should probably

15   hopefully be pretty close on the same page as to what that

16   kind of briefing should address.

17         But we'll see how it goes.  And again, I'm happy

18   to have these kind of conferences when they can be efficient

19   and save you all time.  You have enough stuff to do in this

20   case, everyone agrees and discovery, spend enough time with

21   discovery.  So I'm happy to chat with you all whenever it's

22   helpful.

23         MR. WEAVER:  We appreciate that.  Thank you very

24   much.

25         THE COURT:  So what I'll do is I'll wait to hear

```
 1    from you all.  Again, anything that you think you've reached
 2    a point where it would be efficient and in everybody's best
 3    interest to touch base on this, happy to do it.  Just as
 4    long as you're talking to each other and you understand
 5    that's happening  Don't want to surprise anyone.
 6              So if you wanted to add it to an agenda at a
 7    certain point on one of these hearings in the future just to
 8    touch base, again, as long as everybody knows that's
 9    happening, happy to do that, or also happy to just wait.  If
10    things are going productively and well and you don't want to
11    poke the bear, then that's fine too.  So I'll be guided by
12    your considered professional judgment and obviously if we
13    need a specific answer to this issue, I'll make sure to get
14    it to you in a prompt way.
15              MR. WEAVER:  Thank you very much, Your Honor.
16              THE COURT:  All right.
17              MR. MOHEBBI:  Thank you, Your Honor.
18              THE COURT:  Anything else from debtors?
19              MR. WEAVER:  Nothing further, Your Honor, today.
20    Thank you.
21              THE COURT:  All right.  Anything else from Three
22    Arrows Capital?
23              MR. MOHEBBI:  No, Your Honor.
24              THE COURT:  All right.  I didn't hear from the
25    committee.  But in an abundance of caution, I'll ask if
```

Page 22

1    there's anything from the committee.

2            MR. WEST:  No, Your Honor.  We appreciate the

3    court guiding us to an efficient solution here.  Thank you.

4            THE COURT:  All right.  Thank you.  Be well and

5    see you all soon.  Court is adjourned until the next hearing

6    at 3:00.

7        (Whereupon, these proceedings were concluded at 2:36

8    p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 23

1                C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *(signature)*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  November 2, 2023