Pg 1 of 5

**Hearing Date and Time:  November 7, 2023 at 2:00 p.m. (Prevailing Eastern Time)**

**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
Colin T. West
Michele J. Meises
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113

– and –

Amanda Parra Criste (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

*Counsel to Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al*.,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 461, 838, 839, 866** |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
STATEMENT IN RESPECT OF THE DEBTORS' MOTION TO APPROVE
(I) THE ADEQUACY OF INFORMATION IN THE DISCLOSURE STATEMENT,
(II) SOLICITATION AND VOTING PROCEDURES, (III) FORMS OF BALLOTS,
NOTICES AND NOTICE PROCEDURES IN CONNECTION THEREWITH,
AND (IV) CERTAIN DATES WITH RESPECT THERETO**

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's tax identification number (as applicable) are as follows:  Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these chapter 11 cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

The Official Committee of Unsecured Creditors (the "**Official Committee**") appointed in the cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") files this statement (the "**Statement**") in respect of the *Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 461] (the "**Motion**") and respectfully states as follows:[2]

1. On October 31, 2023, the Official Committee filed a reservation of rights (the "**Reservation of Rights**") [Docket No. 866] to notify this Court that discussions with respect to certain key issues with the Amended Disclosure Statement remained ongoing. These discussions between the Debtors, the Official Committee, and certain other creditor groups are continuing today. The Official Committee will continue to work to resolve these matters consensually. Of the various disclosure issues that the Official Committee has raised with the Debtors, the following three should be addressed in a further modified Amended Disclosure Statement before the solicitation process can begin.

2. *First*, the Amended Disclosure Statement should inform creditors of projected in-kind recovery rates. A significant portion of the unsecured claims in these cases are denominated in Digital Assets. Maximizing in-kind recoveries has been a primary, and oft-repeated, goal of the Official Committee since the outset of these Chapter 11 Cases, as it is the most important metric for many holders of Digital Asset claims. Thus, to allow Digital Asset creditors to properly analyze the Amended Plan, the Amended Disclosure Statement should include projected in-kind recovery rates.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Motion, the Reservation of Rights, or the Amended Plan, as appropriate.

3. *Second*, the Amended Disclosure Statement lacks sufficient disclosure regarding the releases the Special Committee may decide to grant to directors and officers that are currently serving or that served during the chapter 11 cases. At a minimum, the Amended Disclosure Statement should make clear that the Debtors will provide additional disclosure in the Plan Supplement on the nature of the claims to be released, the Special Committee's investigation into such claims, as well as the factors informing the Special Committee's decision to release such claims. Relevant considerations include the strength of the claims to be released based on the investigation, the projected amount of any judgment, the collectability of any such judgment, and whether the Wind-Down Debtors would be required to indemnify any of the Released Parties if a judgment is levied against them.

4. *Lastly*, the Amended Disclosure Statement should disclose the Official Committee's position – which has been communicated to the Debtors – that the Debtors should immediately exercise their right to terminate the Partial Repayment Agreement (the "**PRA**") between the Debtors, DCG, and DCGI.[3] Specifically, the Official Committee believes that the PRA should be terminated to restart the litigation of the Turnover Actions rather than obtaining relatively small, additional payments in exchange for continued forbearance.[4] The Official Committee understands the Debtors are in discussions with DCG regarding a potential continuation of the forbearance in exchange for additional payments. The Official Committee has made clear that any forbearance that is comprised of a slow collection of modest amounts of cash

---

[3] Pursuant to section 7(c) of the PRA, any party to the PRA was permitted to immediately terminate the PRA forty-seven (47) days after execution (October 29, 2023) in the event that either "(i) the Global Restructuring Agreement has not been executed; or (ii) the Genesis Debtors have not filed an amended chapter 11 plan and disclosure statement, consistent with the Agreement in Principle and as otherwise reasonably acceptable to DCG." Neither of those events have occurred.

[4] "Turnover Actions" means, collectively, the adversary proceedings seeking turnover of certain property from DCG and DCGI pursuant to Section 542(b) of the Bankruptcy Code by filing the Complaint, ECF No. 1, Adv. Pro. 23-01168 (SHL) against DCG and the Complaint, ECF No. 1, Adv. Pro. 23-01169 (SHL) against DCGI.

3

instead of the outstanding amount of the DCG Loans and DCGI Loans on an accelerated timeline accomplishes very little and is unacceptable given the delay in collection of amounts that have been due and owing for *six months* (since May 2023). Moreover, unless any proposed forbearance payment schedule results in full repayment of the DCG Loans and DCGI Loans on a near-term basis, the Turnover Actions would still need to be recommenced for full collection of payment. For these reasons, the Official Committee believes that, while discussions regarding additional forbearance may continue, the PRA should be terminated immediately.

5.  The Official Committee reserves the right to further amend, modify, or supplement this Statement to raise additional issues with the Motion at the hearing.

*[Remainder of page intentionally left blank.]*

| | |
|---|---|
| Dated: November 7, 2023<br>New York, New York | Respectfully submitted,<br><br>By: */s/ Philip Abelson*<br><br>**WHITE & CASE LLP**<br>J. Christopher Shore<br>Philip Abelson<br>Colin T. West<br>Michele J. Meises<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 819-8200<br>Facsimile:  (212) 354-8113<br>E-mail: cshore@whitecase.com<br>　　　　philip.abelson@whitecase.com<br>　　　　colin.west@whitecase.com<br>　　　　michele.meises@whitecase.com<br><br>– and –<br><br>Amanda Parra Criste (admitted *pro hac vice*)<br>200 South Biscayne Boulevard, Suite 4900<br>Miami, FL 33131<br>Telephone: (305) 371-2700<br>Facsimile: (305) 358-5744<br>E-mail: aparracriste@whitecase.com<br><br>*Counsel to Official Committee of Unsecured Creditors* |