**Hearing Date: November 30, 2023 at 11:00 a.m.(Prevailing Eastern Time)**
**Objection Deadline: November 24, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Genesis Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF GENESIS DEBTORS'**
**MOTION PURSUANT TO FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE 9019(A) FOR**
**ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT**
**WITH THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD.**

        **PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors-in-possession ("Genesis Debtors"), by and through their undersigned counsel, filed a motion (the "Motion") for entry of an order, substantially in the form attached thereto as **Exhibit A** (the "Proposed Order"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of a settlement and compromise among (i) the Genesis Debtors, (ii) Digital Currency Group, Inc. ("DCG"), (iii) Three Arrows Capital, Ltd. (in liquidation) (the

---

[1]        The Genesis Debtors in the above-captioned cases, along with the last four digits of each Genesis Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of the above-captioned cases, the service address for the Genesis Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

"3AC Debtor"), and (iv) Christopher Farmer and Russell Crumpler of Teneo (BVI) Limited, in their respective capacities as the duly authorized joint liquidators of the 3AC Debtor (the "Joint Liquidators" and together with the 3AC Debtor, the Genesis Debtors, and DCG, each a "Party" and collectively the "Parties") appointed in the British Virgin Islands ("BVI") liquidation of the 3AC Debtor (the "BVI Proceeding").

      **PLEASE TAKE FURTHER NOTICE THAT** a hearing on the Motion will be held via Zoom before the Honorable Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 on **November 30, 2023 at 11:00 a.m. (Eastern Time)** (the "Hearing Date").

      **PLEASE TAKE FURTHER NOTICE** that any responses or objections, if any, to the Motion or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **November 24, 2023 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline") and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order"). The Debtors shall have until **November 28, 2023 at 12:00 p.m. (Eastern Time)** (the "Reply Deadline") to file their reply, if any.

      **PLEASE TAKE FURTHER NOTICE** that parties wishing to register for the Zoom hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances. Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so by calling the following muted, listen-only number: 1-929-205-6099, Access Code: 92353761344#.

      **PLEASE TAKE FURTHER NOTICE** that if no written objections are timely filed and served with respect to the Motion, the Genesis Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as **Exhibit A** to the Motion, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Genesis Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

      **PLEASE TAKE FURTHER NOTICE** that the Hearing may affect your rights. Please read the Motion carefully and, if you have one available, discuss it with your attorney. (If you do not have an attorney, you should consider consulting with one.)

      **PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing. If you or your attorney do not follow the foregoing steps, the Court may

decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Genesis Debtors.

Dated:      November 9, 2023                    */s/ Luke A. Barefoot*
            New York, New York                 Sean A. O'Neal
                                               Luke A. Barefoot
                                               Jane VanLare
                                               Andrew Weaver
                                               CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                               One Liberty Plaza
                                               New York, New York 10006
                                               Telephone: (212) 225-2000
                                               Facsimile: (212) 225-3999

                                               *Counsel for the Genesis Debtors*
                                               *and Debtors-in-Possession*

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Genesis Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al*.,[2] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### GENESIS DEBTORS' MOTION
### PURSUANT TO FEDERAL RULE OF
### BANKRUPTCY PROCEDURE 9019(A) FOR
### ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT
### WITH THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD.

---

[2]    The Genesis Debtors in the Chapter 11 Cases along with the last four digits of each Genesis Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564) ("GGC"); Genesis Asia Pacific Pte. Ltd. (2164R) ("GAP").  For the purpose of the Chapter 11 Cases, the service address for the Genesis Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................ 2

JURISDICTION AND VENUE ...................................................................... 3

BACKGROUND ............................................................................................ 4

A.    The Chapter 11 Cases .......................................................................... 4

B.    Prepetition Dealings Between the Parties ............................................ 4

C.    The 3AC Claims Against the Genesis Debtors and the Claims
      Objection Proceedings ......................................................................... 7

RELIEF REQUESTED................................................................................... 11

BASIS FOR RELIEF..................................................................................... 17

A.    Basis for Relief ................................................................................... 17

B.    The Settlement Agreement Falls Well Within the Range
      of Reasonableness............................................................................... 20

NOTICE......................................................................................................... 27

NO PRIOR REQUEST ................................................................................. 27

CONCLUSION .............................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. of Chicago (In re Ionosphere Clubs, Inc.)*,
  156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ...............................  17

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
  699 F.2d 599 (2d Cir. 1983)..........................................................................  18

*Fla. Trailer & Equip. Co. v. Deal*,
  284 F.2d 567 (5th Cir. 1960) .........................................................................  18

*In re Ben-Artzi*,
  2021 WL 5871718 (Bankr. S.D.N.Y. Dec. 10, 2021)..................................................  19

*In re Chemtura Corp.*,
  439 B.R. 561 (Bankr. S.D.N.Y. 2010)................................................................  20

*In re Dewey & LeBoeuf LLP*,
  478 B.R. 169 (Bankr. S.D.N.Y. 2013)................................................................  20

*In re Hibbard Brown & Co.*,
  217 B.R. 41 (Bankr. S.D.N.Y. 1998)..................................................................  18

*In re Purofied Down Prods. Corp.*,
  150 B.R. 519 (S.D.N.Y. 1993).........................................................................  18

*In re WorldCom, Inc.*,
  347 B.R. 123 (Bankr. S.D.N.Y. 2006).................................................................  20

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
  478 F.3d 452 (2d Cir. 2007)...........................................................................  19

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*,
  390 U.S. 414 (1968)....................................................................................  17

**Page(s)**

*Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*,
    134 B.R. 499 (Bankr. S.D.N.Y. 1991) .......................................................................... 17

**Rules and Statutes**

11 U.S.C. § 502 ............................................................................................................................ 4

28 U.S.C. § 157 ............................................................................................................................ 3

28 U.S.C. § 1334 .......................................................................................................................... 3

28 U.S.C. § 1408 .......................................................................................................................... 3

**Other Authorities**

Fed. R. Bankr. P. 9019 ........................................................................................................ *passim*

Fed. R. Bankr. P. 3007 ................................................................................................................ 4

Fed. R. Bankr. P. 2004 .............................................................................................................. 14

Fed. R. Bankr. P. 1015 ................................................................................................................ 4

Fed. R. Bankr. P. 546 .................................................................................................................. 8

Fed. R. Bankr. P.1102 ................................................................................................................. 4

Genesis Global Holdco, LLC ("Holdco")[1] and its affiliated debtors and debtors-in-possession (collectively, the "Genesis Debtors") in the above-captioned cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of a settlement and compromise by and among (i) the Genesis Debtors, (ii) Digital Currency Group, Inc. ("DCG"), (iii) Three Arrows Capital, Ltd. (in liquidation) (the "3AC Debtor"), and (iv) Christopher Farmer and Russell Crumpler of Teneo (BVI) Limited, in their respective capacities as the duly authorized joint liquidators of the 3AC Debtor (the "Joint Liquidators" and together with the 3AC Debtor, "3AC", and 3AC collectively with the Genesis Debtors, and DCG, each a "Party" and collectively the "Parties") appointed in the British Virgin Islands ("BVI") liquidation of the 3AC Debtor (the "BVI Proceeding").[2]   In support of this Motion, the Genesis Debtors submit the *Declaration of Tom Conheeney in Support of the Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement with 3AC* (the "Conheeney Declaration"), attached hereto as **Exhibit C**, and respectfully state as follows:

---

[1]    All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement (as defined herein).

[2]    Although DCG is a party to the Settlement Agreement, the Settlement Agreement does not involve any settlement, compromise or release of any claims between DCG and the Genesis Debtors whatsoever.  Accordingly, the only relief sought in this Motion relates to those portions of the Settlement Agreement that relate to the Genesis Debtors, on the one hand, and 3AC on the other.

1

## PRELIMINARY STATEMENT[3]

1.      As this Court is aware, the Genesis Debtors have been engaged in extensive motion practice and discovery for nearly 5 months regarding proofs of claims filed by the Joint Liquidators on behalf of the 3AC Debtor.[4]  After extensive negotiations between the Parties, the Genesis Debtors now seek this Court's approval of a Settlement Agreement, provided in substantially final form (the "Settlement Agreement") and attached hereto as **Exhibit B**, to resolve as between 3AC and the Genesis Debtors, the claims set forth in the proofs of claim filed by 3AC in these Chapter 11 Cases and the BVI Application.

2.      In summary,[5] and as relevant to the Genesis Debtors, the Settlement Agreement provides that (a) the 3AC Debtor shall receive an allowed general unsecured claim against GGC in the amount of $33,000,000 in full and complete satisfaction of the more than $1 billion dollars in claims asserted against each of the Genesis Debtors; (b) the Genesis Debtors and 3AC mutually release each other from liability as set forth in more detail in the Settlement Agreement; and (c) the Genesis Debtors expressly retain, and do not otherwise release, any and all claims that they may have against DCG.

---

[3]      All capitalized terms used in this Preliminary Statement shall have the meaning ascribed to them elsewhere in the Motion.

[4].      *See infra* ¶¶ 7-26.

[5].      Any summary of the Settlement Agreement contained herein is solely for illustrative purposes and is qualified in its entirety by the actual terms and conditions of the Settlement Agreement.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

3.      The proposed settlement will, among other benefits to the Genesis Debtors' estates, significantly smooth the path to confirmation of the Genesis Debtors' chapter 11 plan of reorganization, prompt distributions thereunder, and eliminate the risks, expenses, and uncertainty associated with protracted litigation among the Parties.  Entry into the Settlement Agreement is an exercise of the sound business judgment of the Genesis Debtors and has been approved by the Special Committee of the Board of Directors of Holdco, which, following consultation with the Debtors' legal and financial advisors, has considered the risks associated with litigation of the 3AC Claims and has concluded that the Settlement Agreement is in the best interests of the Genesis Debtors' estates and their creditors.

4.      Accordingly, and for all of the reasons set forth herein, the Genesis Debtors submit that entry into the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Genesis Debtors' estates.  The Genesis Debtors respectfully request that the Court grant the relief requested in this Motion, approve the Settlement Agreement, and enter the Proposed Order.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3

## **BACKGROUND**

### A.      **The Chapter 11 Cases**

6.      On January 19, 2023, each of the Genesis Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date"). The Genesis Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).  *See Joint Administration Order* (ECF No. 37).  No trustee or examiner has been appointed in the Chapter 11 Cases.  The Official Committee of Unsecured Creditors for the Chapter 11 Cases (the "Genesis Committee") was appointed by the United States Trustee for Region 2 on February 3, 2023, pursuant to Section 1102(a) of the Bankruptcy Code. *See Notice of Appointment of Official Committee of Unsecured Creditors* (ECF No. 55).

### B.      **Prepetition Dealings Between the Parties**

7.      The Genesis Debtors' operations include lending and borrowing services for digital assets.  Holdco is a sister company of non-Debtor affiliate Genesis Global Trading, Inc. and directly and wholly owned by DCG, the Genesis Debtors' ultimate parent.  *See* Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability) (the "Renewed Objection") (ECF No. 658) at ¶ 15.  Holdco exists only as a holding company with no business operations or assets aside from its ownership in the Genesis Debtors and certain non-Debtor subsidiaries.  *Id*.

4

8.      Beginning in 2019, Genesis Global Capital, LLC ("GGC"), Genesis Asia Pacific Pte. Ltd. ("GAP") and the 3AC Debtor entered into various agreements that set out the terms of their lending relationship.  *See* Renewed Objection at ¶ 54.

9.      In January 2019, GGC entered into a Master Loan Agreement and related pledge agreements with the 3AC Debtor.  *See* Renewed Objection, Ex. O (Master Loan Agreement between GGC and 3AC dated Jan. 10, 2019).  In January 2020, GAP entered into a Master Loan Agreement and a related pledge agreement with the 3AC Debtor (together with the 2019 agreements, the "MLAs").  *See* Renewed Objection, Ex. P (Master Loan Agreement between GAP and 3AC dated Jan. 24, 2020).

10.     On July 14, 2022, GAP and DCG entered into that certain Assignment & Assumption Agreement (the "GAP-DCG Assignment and Assumption Agreement") pursuant to which, among other things, GAP assigned to DCG, and DCG assumed, all of GAP's right, title, benefit, privileges and interests in and to, and all of GAP's burdens, obligations and liabilities in connection with the Pledge Agreements and related Collateral under the Agreements and the Pledge Agreements (all as defined in the GAP-DCG Assignment and Assumption Agreement). *See* Renewed Objection, Ex. S.[6]

---

[6]      DCG disputes and expressly reserves all defenses and objections to any claim that is assumed Genesis's obligations regarding the $1.2 billion of the 3AC Debtor's collateral upon which Genesis foreclosed prior to DCG's entry into the GAP-DCG Assignment and Assumption Agreement.

11.     Pursuant to these agreements, GAP provided loans of USD and digital assets to the 3AC Debtor and, in return for the extension of these loans, the 3ac Debtor pledged certain collateral to secure its obligations thereunder.  *See* Renewed Objection at ¶ 56.

12.     The 3AC Debtor was one of Genesis's largest borrowers from 2020 to 2022, up until the time of its collapse.  *Id.*  Indeed, following the resolution of the claims filed by FTX Trading Ltd. and certain of its affiliates as debtors and debtors-in-possession against the Genesis Debtors' estates, *see* Memorandum of Decision, ECF No. 781 (granting the Debtors' motion to approve a settlement agreement between FTX and the Debtors), the 3AC Debtor claims are the largest asserted claims in these Chapter 11 Cases.

13.     On June 12, 2022, GAP and GGC issued a margin call to the 3AC Debtor for approximately $189 million, and further updated margin call notices followed.  *See* Renewed Objection, Ex. U.  After the 3AC Debtor failed to meet the margin call, Genesis issued a notice of default to the 3AC Debtor on June 13, 2022, at 6:29 pm.  *See id.*, Ex. V.

14.     At the time of the 3AC Debtor's default, the 3AC Debtor owed GAP approximately $2,363,105,165 (in USD and digital assets) under the MLAs and related agreements.  *See id.*at ¶ 58.[7]  Following GAP's exercise of remedies and foreclosure on collateral, GAP maintained an unsecured deficiency claim against the 3AC Debtor of approximately $1,198,297,320.  *See id.* at ¶ 59.

---

[7]     Further information detailing the assets transferred from the 3AC Debtor to GAP as collateral for its outstanding loans can be found in the Renewed Objection at ¶¶ 73–74.

C.      **The 3AC Claims Against the Genesis Debtors and the Claims Objection Proceedings**

15.      On June 27, 2022, the 3AC Debtor commenced liquidation proceedings before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "BVI Court").

16.      On November 29, 2022, 3AC commenced an action in the BVI Proceeding against the Genesis Debtors and DCG seeking recovery of certain assets with a value exceeding $578 million in the aggregate (the "BVI Application").

17.      On May 22, 2023, the Joint Liquidators filed substantively identical proofs of claim numbered 523, 526 and 527 against Holdco, GGC and GAP, respectively (collectively, the "Original Claims"). *See* Renewed Objection, Exs. D, E, F. In the Original Claims, the Joint Liquidators represented that these claims, including avoidance actions, arise from transfers to the Genesis Debtors with a value in excess of $1 billion.

18.      On July 19, 2023, the Genesis Debtors filed an omnibus objection to the Original Claims, asserting that the Original Claims should be expunged due, *inter alia*, to 3AC's failure to allege sufficient facts to support a finding that the Genesis Debtors are legally liable under any cognizable law. *See* ECF No. 530 (the "3AC Objection"). The 3AC Objection also sought to preemptively defend the validity of 3AC's pledge of assets as collateral on which the Debtors foreclosed, and asserted certain bases on which 3AC had not sufficiently pleaded and/or could not state valid preference claims.

7

19.     On August 18, 2023, the Joint Liquidators filed revised proofs of claim numbered 981, 982 and 990 (the "Amended Claims", and together with the Original Claims, the "3AC Claims").

20.     On September 1, 2023, the Genesis Debtors filed a renewed omnibus objection to the 3AC Claims (the "Renewed Objection", ECF No. 658), and withdrew the 3AC Objection.  The Renewed Objection raises defenses to substantially all of the Amended Claims under Section 546(e) of the Bankruptcy Code.  On the same date, the Genesis Debtors further filed a scheduling motion to establish a timeline for discovery related to, and resolution of, the 3AC Claims (the "Scheduling Motion", ECF No. 659).

21.     On September 5, 2023, the Joint Liquidators filed an objection to the Scheduling Motion (the "Scheduling Motion Objection", ECF No. 673).  On September 6, 2023, the Court held a hearing where it preliminarily approved the Scheduling Motion with certain adjustments (the "Sept. 6 Hearing").   On September 12, 2023, the Court entered an order incorporating the guidance from the Court given during the Sept. 6 Hearing (the "Scheduling Order", ECF No. 695).

22.     On September 6, 2023, the Joint Liquidators filed a motion seeking to lift the automatic stay (the "Lift Stay Motion", ECF No. 678) to have their claims adjudicated before either the BVI Court or the U.S. Bankruptcy Court for the Southern District of New York where 3AC filed chapter 15 proceedings before Judge Glenn on July 1, 2022 (the "Ch. 15 Proceedings").[8]

---

[8]     *See In re Three Arrows Capital, Ltd.*, No. 22-10920 (MAG).

8

On September 19, 2023, the Genesis Debtors filed their objection to the Lift Stay Motion.  The hearing on the Lift Stay Motion was originally scheduled for September 26, 2023, but on September 22, 2023, the Joint Liquidators requested to adjourn the hearing so that they could file a motion seeking coordination between this Court and the other chapter 11 debtors against which 3AC has filed claims.

23.     On September 25, 2023, this Court granted the Joint Liquidators' request to adjourn the Lift Stay Motion.  *In re Genesis Global Holdco, LLC*, Case No. 23-10063, Sept. 25, 2023 Hr'g Tr. at 21:19-22.  On September 26, 2023, the Court scheduled the Lift Stay Motion and the Coordination Motion for a hearing on October 24, 2023.  *In re Genesis Global Holdco, LLC*, Case No. 23-10063, Sept. 26, 2023 Hr'g Tr. at 21:6-16 (confirming the Lift Stay Motion and Coordination Motion would be heard on October 24, 2023).

24.     On September 27, 2023, the Joint Liquidators filed the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. For Coordination Among Courts*, ECF No. 749, which was subsequently amended on September 28, 2023 (the "Coordination Motion", ECF No. 754).  On October 16, 2023, the Genesis Debtors filed their objection to the Coordination Motion.  ECF No. 805.  The Committee filed its own objection to the Coordination Motion on October 17, 2023.  ECF No. 808.  Shortly thereafter, 3AC withdrew the Coordination Motion.  ECF No. 809.[9]

25.     Pursuant to the discovery schedule as laid out in the Scheduling Order, the Genesis Debtors and 3AC exchanged extensive document discovery, including over 6,800

---

[9]     On October 10, 2022, Judge Kaplan denied a similar motion filed by the Joint Liquidators in the BlockFi proceedings.  *See In re BlockFi, Inc.,* Case No. 23-10063, Oct. 10, 2023 Hr'g Tr. at 95:18 - 97:5.

documents consisting of over 17,000 pages produced by the Genesis Debtors.  In addition, between October 11, 2023 and October 21, 2023, the Genesis Debtors and 3AC had completed three fact depositions, with approximately eleven fact depositions scheduled between October 23, 2023 and early to mid-November 2023.[10]

26.    On October 22, 2023, following a meeting of the Special Committee, the Parties reached an agreement with the approval of the Special Committee to settle, in principle, among other claims, the 3AC Claims.  *See* **Exhibit B**.[11]

27.    On October 22, 2023, the Genesis Debtors and 3AC agreed to pause all litigation proceedings in connection with the 3AC Claims and as set forth in the Scheduling Order, and to adjourn the Lift Stay Motion and status conference concerning a schedule for expert discovery, further motion practice and ultimately trial for adjudication of the 3AC Claims pending documentation of the agreement in principle.  *See Third Amended Agenda for Hearing to be Held October 24, 2023, at 11:00 A.M. (Prevailing Eastern Time)*, ECF No. 832 at 4-5.

---

[10]    At least one of these depositions, for Ms. Arianna Pretto-Sakmann, the Chief Legal Officer for the Debtors, was contemplated to be the subject of a motion for a protective order.  Oct. 12, 2023 Hr'g Tr. 5:7-6:9

[11]    In advance of the Objection Deadline, the Genesis Debtors will file the final and executed Settlement Agreement as a revised Exhibit B.

## **RELIEF REQUESTED**

28.    By this Motion, the Genesis Debtors respectfully request that the Court enter the Proposed Order, approving the Settlement Agreement.

29.    The terms of the form of Settlement Agreement remain subject to ongoing negotiation between the 3AC Debtor, the Joint Liquidators, and DCG, including without limitation the provisions that have been sealed or redacted.  The parties' consent to file this version of the form of Settlement Agreement with the Motion is not an indication, and shall not be deemed or imputed to be, any agreement or intent on the part of any of the 3AC Debtor, the Debtors, the Joint Liquidators, or DCG as a waiver of any rights and defenses, including to negotiate different language in the agreement, nor a waiver of any rights under Rule 408 of the Federal Rules of Evidence and other rules of similar import.  The Debtors, 3AC and the Joint Liquidators, and DCG agree that the terms contained in the form of Settlement Agreement shall not be used against or otherwise prejudice the Debtors, the 3AC Debtor, the Joint Liquidators, or DCG in any way, shape, form, or manner.

30.    The Settlement Agreement terms, as they relate to the Genesis Debtors and 3AC, are as follows:

a.    **Allowed 3AC Claim**:  On the Settlement Effective Date (as defined in the Settlement Agreement), the 3AC Debtor shall have an allowed general unsecured claim in the Genesis Bankruptcy Proceeding against GGC in the amount of $33,000,000 (the "Allowed 3AC Claim"), which claim shall be freely transferable, subject to the terms of the Settlement Agreement.  The Allowed 3AC Claim shall not be subject to subordination, recharacterization or disallowance based on any acts or occurrences prior to the execution of the Settlement Agreement, and the Genesis Debtors shall not seek or support, directly or indirectly, treatment of the Allowed 3AC Claim other than as provided in the Settlement Agreement.

11

b.    **AVAX and NEAR Tokens**:  On the Settlement Effective Date (as defined in the Settlement Agreement), each of the Genesis Debtors shall forever and irrevocably relinquish and release, in favor of the 3AC Debtor, any claim, lien, security interest, encumbrance, entitlement, or other right of any kind whatsoever that any of the Genesis Debtors may have or assert to the AVAX tokens and the NEAR tokens identified in the Settlement Agreement.[12]

c.    **Genesis Debtors Cooperation**:    The Genesis Debtors shall use commercially reasonable efforts to cooperate in good faith with the Joint Liquidators by, subject to applicable confidentiality obligations and with at least five (5) business days' prior written notice, consenting to the Joint Liquidators' use, for purposes of pursuing claims against third parties, of non-privileged documents and information disclosed to the Joint Liquidators, whether such disclosure occurred in connection with the Parties' litigation of the Released 3AC Claims or otherwise.  Upon the Genesis Debtors' request, the Joint Liquidators shall seek to have such documents treated confidentially and filed under seal in any applicable litigation or proceeding.  The Genesis Debtors shall not cooperate with or support, directly or indirectly, any party in litigation adverse to the 3AC Debtor with respect to matters relating to the DCG Claim and the Released 3AC Claims, except as may be required by applicable law.  Notwithstanding anything to the contrary in the Settlement Agreement, any rights of the Joint Liquidator to call as a third party witness or seek third party evidence from the Genesis Debtors or any of their current or former affiliates, officers, directors, principals, equity holders, employees, agents, advisors, consultants, representatives, or other professionals (collectively, the "Genesis Third Party Targets") in any litigation relating to the BVI Proceeding, whether in the BVI Court or another court of competent jurisdiction, are expressly reserved, as are all of the defenses and objections of the Genesis Third Party Targets thereto.  The Genesis Debtors shall not oppose or interfere with, directly or indirectly, the Joint Liquidators efforts to conduct informal interviews with current employees (who are separately represented by counsel) or former employees.

d.    **3AC Debtor and Joint Liquidators Cooperation**:  The 3AC Debtor and Joint Liquidators (in their capacity as such) shall use commercially reasonable efforts to cooperate in good faith with the Genesis Debtors by, subject to applicable confidentiality obligations and with at least five (5) business days' prior written

---

[12]    Further, all claims to the AVAX and NEAR tokens were transferred from GAP to DCG pursuant to the GAP-DCG Assignment and Assumption Agreement.

notice, consenting to the Genesis Debtors' use, for purposes of pursuing claims against third parties, of non-privileged documents and information disclosed to the Genesis Debtors, whether such disclosure occurred in connection with the Parties' litigation of the Claims Against Genesis or otherwise.  Upon the Joint Liquidators' request, the Genesis Debtors shall seek to have such documents treated confidentially and filed under seal in any applicable litigation or proceeding.  The Joint Liquidators, in their capacity as such, shall not cooperate with or support, directly or indirectly, any party in litigation adverse to the Genesis Debtors with respect to matters relating to the Claims Against Genesis, except as may be required by applicable law.  Notwithstanding anything to the contrary in the Settlement Agreement, any rights of the Genesis Debtors to call as a third party witness or seek third party evidence from the Joint Liquidators and 3AC Debtor or any of their current or former affiliates, officers, directors, principals, equity holders, employees, agents, advisors, consultants, representatives, or other professionals (collectively, the "3AC Third Party Targets") in any litigation relating to the Genesis Bankruptcy Proceeding or other litigation to which the Genesis Debtors are a party, whether in the Bankruptcy Court or another court of competent jurisdiction, are expressly reserved, as are all of the defenses and objections of the 3AC Third Party Targets thereto.

e.      **Pro Rata Distributions**:  The Allowed 3AC Claim shall be entitled to receive pro rata distributions (in the form of cash) with all other allowed general unsecured claims against GGC (other than Gemini Lender Claims (as defined in the Debtors' Amended joint Chapter 11 Plan, filed on June 13, 2023 in the Genesis Bankruptcy Proceeding (ECF No. 427)) to the extent Gemini Lenders are separately classified pursuant to any chapter 11 plan that becomes effective in the Genesis Bankruptcy Proceeding (the "Genesis Plan") and shall be entitled to all treatment afforded to allowed general unsecured claims in its respective class and shall not be separately classified from other general unsecured claims owed fiat against GGC (other than Claims of Gemini Lenders, which may be separately classified, and Claims separately classified solely for purposes of administrative convenience, if any) or otherwise treated in any disparate or discriminatory way as compared to other general unsecured claims against GGC under the Genesis Plan, *provided* that (i) the Parties may mutually agree in writing that the consideration comprising the distributions on account of the Allowed 3AC Claim may be in a form other than cash, and (ii) in the event that the Genesis Plan includes an early payout option at a discount (the "Early Payout Option"), the Early Payout Option shall not be available with respect to the Allowed 3AC Claim unless the Early Payout Option is otherwise generally available to all similarly situated holders of allowed general unsecured claims in an amount equal to or greater than the Allowed 3AC Claim. Notwithstanding the foregoing, in the event the Genesis Plan includes the Early

13

Payout Option and it is not available to the Allowed 3AC Claim, the 3AC Debtor (and the Joint Liquidators on its behalf) reserves its rights and shall be entitled to object to the Early Payout Option on the grounds that it constitutes unfair discrimination and the Genesis Debtors reserve their rights and shall be entitled to argue that the Early Payout Option does not constitute unfair discrimination.

f.      **Transfers**:  Effective as of the Settlement Effective Date, the rights to the Allowed 3AC Claim shall be freely transferable (in whole or in part), *provided* that any transferee of any portion of, or interest in, the Allowed 3AC Claim (each, a "Transferee") shall, as a condition to such transfer (each, a "Transfer"), agree to be bound by the terms of the Settlement Agreement with respect to the acquired portion of the Allowed 3AC Claim, *mutatis mutandis*, by executing and delivering to the Genesis Debtors a joinder agreement (each, a "Joinder").  Upon compliance with the foregoing, the 3AC Debtor and the Joint Liquidators shall be deemed to relinquish their rights under the Settlement Agreement with respect to the acquired portion of the Allowed 3AC Claim and to the extent of such transferred rights. Notwithstanding anything to the contrary herein, entry into a Joinder shall not require or otherwise cause a Transferee to release any Claims against any Party other than the Released 3AC Claims.

g.      **Covenant Not to Object to Genesis Plan**:  As of the Settlement Effective Date, the 3AC Debtor and the Joint Liquidators shall not object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the Genesis Debtors that is consistent with the Settlement Agreement in all respects; *provided* that nothing in the Settlement Agreement (and neither a vote to accept any such chapter 11 plan nor the acceptance of such plan) shall be construed to limit the 3AC Debtor's rights to appear as a party-in-interest in any matter to be adjudicated in the Genesis Bankruptcy Proceeding, so long as such appearance and the positions advocated in connection therewith are not inconsistent with the Settlement Agreement and are not for the purpose of hindering, delaying, or preventing the consummation of the Settlement Agreement.

h.      **Settlement Motions**:  Effective as of the date of execution of the Settlement Agreement by each Party, (i) the Genesis Debtors agree to seek prompt approval of the Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019, through this Motion in the Chapter 11 Cases in form and substance reasonably acceptable to DCG and the Joint Liquidators, which shall include a request to seal all material terms as between DCG and the 3AC Debtor contained in the Settlement Agreement, and (ii) the Joint Liquidators agree to seek prompt sanction of the

14

Settlement Agreement by the BVI Court in the BVI Proceeding through an application in form and substance reasonably acceptable to DCG and the Genesis Debtors. The Parties otherwise agree to cooperate and take such actions as are reasonably necessary (including in the event that an objection or other opposition is filed to this Motion and/or any application seeking the BVI Court's sanction of the Settlement Agreement) to obtain court approval of, and authority to enter into, the Settlement Agreement, and entry of the Approval Orders.

i.      **Withdrawal of Motions and Claims**:  No later than three (3) business days after the Settlement Effective Date, the Joint Liquidators and the Genesis Debtors, as applicable, shall withdraw or dismiss, as applicable, with prejudice (i) the Original Claims, (ii) the Amended Claims, (iii) the ███████████, (iv) the Renewed Objection, (v) the arbitration proceeding commenced by GAP under the caption *Genesis Asia Pacific PTE. Ltd. v. Three Arrows Capital, Ltd.*, AAA/ICDR Case No. 01-22-0002-5568, (vi) the Lift Stay Motion, and (vii) the Rule 2004 Motion.

j.      **Releases**:

i.      **Mutual Release of the Genesis Debtors, the 3AC Debtor and the Joint Liquidators (in their capacity as such):**  On the Settlement Effective Date, each of the 3AC Releasing Parties,[13] and each of the Genesis Releasing Parties[14] (all such releasing persons and entities collectively, the "Releasing

---

[13]     "3AC Releasing Parties" means, collectively, and in each case in its capacity as such: (a) the 3AC Debtor, (b) the Joint Liquidators (in their respective capacities as such), and (c) (x) with respect to each of the foregoing persons or entities in clauses (a)-(b), each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and (z) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x)-(y), such person or entity's respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.

[14]     "Genesis Releasing Parties" means, collectively, and in each case in its capacity as such: (a) the Genesis Debtors and (b)(x) with respect to each of the foregoing persons or entities, each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a) and (b)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management

15

Parties"), does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge each other and their respective past, present, and future agents, heirs, executors, administrators, conservators, successors and assigns (all such released persons and entities collectively, the "Released Parties") from, against, and in respect of any and all past, present, and future claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, including any derivative claims asserted or assertable on behalf of the Released Parties that the Released Parties would have been legally entitled to assert in their own right and any claims based on alter ego, vicarious liability, or doctrine of similar import, that the Releasing Parties have or may have against the Released Parties since the beginning of time, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with any of the foregoing, in all cases other than as otherwise provided in the Settlement Agreement.

k.    **Exceptions to Mutual Release**:

    i.   Notwithstanding any other provision of the Settlement Agreement, the Parties' respective releases do not affect their respective obligations under the Settlement Agreement or the Parties' respective rights to bring any Claims or other causes of action arising out of or in connection with a breach of the Settlement Agreement.

    ii.  Notwithstanding any other provision of the Settlement Agreement, the Parties' respective releases do not affect any Claims that any Genesis Debtor may have  against any other Genesis Debtor, which claims are hereby expressly and fully preserved to the same extent as if the Settlement Agreement had not been executed.

    iii. Notwithstanding any other provision of the Settlement Agreement, for the avoidance of doubt, the 3AC Debtor, the Joint Liquidators,

---

companies, fund advisors and other professionals, and (z) with respect to each of the foregoing persons or entities in clauses (a), (b)(x)-(y), such person or entity's respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.

and their subsidiaries and affiliates do not release and expressly
preserve fully and to the same extent as if the Settlement
Agreement had not been executed, any claims or causes of action
against the 3AC Debtor or any of the 3AC Debtor's past, present
and future agents, heirs, affiliates, employees, founders,
executives, officers, directors, equity holders, executors,
administrators, liquidators, conservators, attorneys, advisors,
successors and assigns.

iv.   Notwithstanding any other provision of the Settlement Agreement,
for the avoidance of doubt, the Genesis Debtors, their subsidiaries
and affiliates do not release, and expressly preserve fully and to the
same extent as if the Settlement Agreement had not been executed,
any claims or causes of action that any Genesis Debtor and any of
their subsidiaries and affiliates has against any of DCG, the DCG
Entities, or DCG's and the DCG Entities' past, present and future
agents, heirs, affiliates, employees, founders, executives, officers,
directors, equity holders, executors, administrators, liquidators,
conservators, attorneys, advisors, successors and assigns.

## BASIS FOR RELIEF

31.     The Genesis Debtors have determined, in consultation with their advisors,
that the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the
Genesis Debtors' estates.  By this Motion, the Genesis Debtors request approval of the Settlement
Agreement pursuant to Rule 9019(a).

### A.     Basis for Relief

32.     Bankruptcy Rule 9019(a) provides, in the relevant part, that "[o]n motion
by the [debtor in possession] and after notice and a hearing, the court may approve a compromise
or settlement."   Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve
compromises and settlements if they are in the best interests of the [E]state[s]." *Vaughn v. Drexel*

17

*Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

33.    In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), a court must find that the proposed settlement is fair and equitable, reasonable, and in the best interests of the debtor's estates and creditors. *See Protective Comm. For Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968) ("*TMT Trailer Ferry*"); *Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). A decision to approve a particular compromise or settlement is within the sound discretion of the bankruptcy court. *See Drexel Burnham*, 134 B.R. at 505. In addition, a bankruptcy court should exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see also Shugrue*, 165 B.R. at 123 ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above.").

34.    In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvas the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (in making the determination of reasonableness, the court need not conduct a "mini-trial" on the merits). "All that [the proponent of the settlement]

18

must do is establish [that] it is prudent to eliminate the risks of litigation to achieve specific

certainty though admittedly [the settlement] might be considerably less (or more) than were the

case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960)

(citation omitted).    In the Second Circuit, bankruptcy courts apply the following factors in

determining whether a settlement is fair and equitable:

> (a)    the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (b)    the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
>
> (c)    the "paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";
>
> (d)    whether other parties in interest support the settlement;
>
> (e)    the "competency and experience of counsel" who support the settlement;
>
> (f)    the "nature and breadth of releases to be obtained by officers and directors"; and
>
> (g)    the "extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478

F.3d 452, 462 (2d Cir. 2007).

19

35.    Where most or all of the factors are satisfied, a settlement should be approved.  *See In re Ben-Artzi*, 2021 Bankr. LEXIS 3377, 2021 WL 5871718 (Bankr. S.D.N.Y. Dec. 10, 2021) (approving a settlement where most but not all of the Iridium factors were satisfied). When evaluating the necessary facts, a court may rely on the opinion of the debtor, parties to the settlement, and professionals.  *In re Dewey & LeBoeuf LLP*, 478 B.R. at 641.  *See In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010); *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522-23 (Bankr. S.D.N.Y. 1993).   In particular, the business judgment of the debtor in recommending the settlement should be factored into the court's analysis.  *MF Global Inc.*, 2012 WL 3242533, at \*5 (citing *JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re Charter Commc'ns)*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009)).   "While the bankruptcy court may consider the objections lodged by parties in interest, such objections are not controlling. . . . [T]he bankruptcy court must still make informed and independent judgment."  *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006).

## B.    The Settlement Agreement Falls Well Within the Range of Reasonableness

36.    In this case, weighing the reasonableness factors for purposes of Bankruptcy Rule 9019, the Genesis Debtors, based on the direction and approval of the Special Committee and following extensive consultation with the Genesis Debtors' advisors, have concluded that the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Genesis Debtors' estates and, thus, should be approved.  Conheeney Decl. ¶ 7.[15]

---

[15]    The Genesis Debtors note that in its order approving the Genesis Debtors' *Motion Pursuant To Federal Rule Of Bankruptcy Procedure 9019(a) For Entry Of An Order Approving Settlement Agreement With FTX Debtors* (the "FTX Settlement Order", ECF No. 781), this Court found that "specific analysis and details of the resulting

20

37.    *First*, although the Genesis Debtors believe that the possibility of 3AC's success on the merits of the 3AC Claims is unlikely, any litigation is inherently uncertain given that many of the defenses available to the Genesis Debtors are untested in the context of the cryptocurrency industry and raise novel legal issues.  For example, the Genesis Debtors' argument that the Telegram chats used by the Parties to conduct their business fully memorialized the Parties' dealings, though strong, raises somewhat untested questions of law on what constitutes an authenticated pledge agreement.  Similarly, though the Genesis Debtors are confident in their arguments that the safe harbor defenses bar the 3AC Claims, such arguments involve questions of law that are not entirely settled, including (i) whether the defenses apply extraterritorially (though certain bankruptcy and district courts have weighed in on this point, it is yet untested at the circuit court level) and (ii) whether certain digital assets are considered commodities or securities, as applicable.

38.    Additionally, the Settlement Agreement also avoids the significant uncertainty of adverse and/or conflicting rulings in the Chapter 11 Cases (or, to the extent this Court may have ultimately granted the Lift Stay Motion, the Ch. 15 Proceedings or BVI Proceeding) that could negatively impact the Genesis Debtors' defenses to claims or claims which

---

conclusions of the Genesis Debtors in consultation with their counsel about the value of each claim" is not necessary, and that the Court is not required to "conduct a 'mini-trial' to determine the merits of the underlying litigation."  FTX Settlement Order at 19-20.  Instead, this Court held it had "an appropriate evidentiary basis to review and approve" the agreement at issue given the Genesis Debtors and their restructuring professionals had "conducted a thorough analysis of all the claims", and the settlement negotiations were "primarily handled on behalf of the Genesis Debtors by their counsel in consultation with the independent Special Committee and the Company's senior management." *Id*. at 20-21.  Those same circumstances are met here. *See infra* ¶¶ 37-47.

21

they might assert against third parties.  The Settlement Agreement removes such uncertainty and will resolve all claims asserted by 3AC against the Genesis Debtors at a fraction of their face value.

39.    Indeed, the Allowed 3AC Claim amounts to approximately 3.3% of the 3AC Claims, which, as asserted, amounted to over one billion dollars and would constitute more than 62% of the value of the Genesis Debtors' liquid assets and equal approximately 24.5% of all scheduled claims against GGC combined.  Compare *supra*, ¶ 17 (noting that 3AC filed proofs of claim alleging claims worth over one billion dollars) with ECF No. 850 (Genesis Debtors' Cash and Coin Report as of September 30, 2023) (reporting approximately $1.7 billion in cash, digital assets, and shares held in brokerage accounts); ECF No. 187 (Summary of Genesis Debtors' Schedules and Statements) (reporting $4.079 billion in GGC liabilities).  As such, the Settlement Agreement avoids the possibility of a litigated judgment which could value the 3AC Claims at an amount significantly above the Allowed 3AC Claim.

40.    ***Second***, as to the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay, the Genesis Debtors anticipate full litigation of the 3AC Claims would be both protracted and expensive.  The Settlement Agreement will allow for the Genesis Debtors to confirm a chapter 11 plan in a manner consistent with their confirmation timeline, without facing demands from 3AC for extensive reserves that would significantly impact initial distributions, by eliminating the possibility that litigation regarding the 3AC Claims might take place in the Ch. 15 Proceedings or BVI Proceeding.  Conheeney Decl. ¶ 10.  As noted, *see* ¶ 5 *supra*, the Joint Liquidators have sought to litigate the 3AC Claims in full or in part in the Ch. 15 Proceedings or BVI Proceeding, and have also argued that specific issues implicated by the

22

3AC Claims — including the date of insolvency of the 3AC Debtor — should be decided in a forum other than this Court. Conheeney Decl. ¶ 10; *see* Lift Stay Motion ¶ 5, . Litigating the 3AC Claims (in whole or in part) in the Ch. 15 Proceedings or BVI Proceeding would subject the Genesis Debtors to potentially protracted contested proceedings, especially if the Genesis Debtors were required to litigate in the BVI, which would require, *inter alia*, the additional expenses of obtaining local counsel and acquiring expert testimony on issues on U.S. law. Conheeney Decl. ¶ 10. This would subject the Genesis Debtors to protracted litigation on a timeline that the Genesis Debtors and this Court do not control, thus exposing the stakeholders in these Chapter 11 Cases to potential extensive delay. *See* Conheeney Decl. ¶ 10. This is particularly the case where the Genesis Debtors have sought a confirmation hearing date in early January 2024, but there has not even yet been a trial date established with respect to the 3AC Claims.

41.     Even if this Court denied the Lift Stay Motion, reaching final adjudication of the 3AC Claims in this Court would still be a costly and time intensive endeavor. Litigation of the 3AC Claims, which would involve complex issues of first impression, would be expensive. Over five months have passed since the Joint Liquidators filed the 3AC Claims on May 22, 2023, during such time the Genesis Debtors have expended extensive resources engaging in discovery and various motion practice, *see supra* ¶¶ 7-26, and the Parties still are facing up to eleven fact depositions, expert reports, expert discovery, briefing and a full trial on the merits before a final decision on the 3AC Claims could be entered. A trial would include intensive factual questions, including the question of when the 3AC Debtor became insolvent, a determination of central importance to the 3AC's preference claims and which would require evidence and argument on

23

the 3AC Debtor's solvency, including the valuation of digital assets, as to each and every disputed transfer relevant to the preference claims. Moreover, any litigation would entail significant professional fees, including but not limited to discovery, costs of retained experts, and motion practice. Given the amount of time that has already been dedicated to the adjudication of the 3AC Claims and the numerous steps still remaining, the Genesis Debtors anticipate that the costs associated with such discovery and litigation would constitute a significant drain on the estates of the Genesis Debtors. Conheeney Decl. ¶ 11. Thus, despite the fact that the Genesis Debtors are confident in their defenses against the 3AC Claims, the cost and complexity of litigating the 3AC Claims supports the reasonable nature of the Settlement Agreement. *See* FTX Settlement Order at 23 (overruling the Ad Hoc Group's objection to the proposed FTX settlement on the grounds that the Genesis Debtors had "numerous defenses" because they "fail[ed] to take into consideration the cost and complexity of litigating the claims.").

42.     Thus, litigation of the 3AC Claims, whether in this Court or elsewhere, would further deplete the Genesis Debtors' estates, delay distributions to creditors, and undermine the viability of the Genesis Plan, including by requiring the Genesis Debtors to set higher than expected reserves. *See* Conheeney Decl. ¶¶ 11. Indeed, the Genesis Plan confirmation process, which is well underway, requires certainty regarding the status 3AC Claims. *See* Conheeney Decl. ¶ 8. The Settlement Agreement grants the Genesis Debtors such certainty and ensures the viability of a Genesis Plan.

43.     ***Third***, the other general unsecured creditors of the Genesis Debtors benefit from the Settlement Agreement, as it settles the 3AC Claims for a fraction of the asserted amount,

24

avoids the drain of estate resources and associated delay in distributions that would accompany protracted litigation of the 3AC Claims, and allows the Genesis Debtors and their advisors to focus resources and attention on other claims and claimants and move toward confirming a Genesis Plan and beginning to make distributions to creditors without disputes over a potentially massive reserve for unresolved 3AC Claims.  Conheeney Decl. ¶ 14.

44.    ***Fourth***, the competency and experience of counsel who support the settlement also indicates the reasonableness of the settlement.  The Genesis Debtors and 3AC are represented by sophisticated and experienced professionals—highly regarded law firms and financial advisors with significant restructuring, litigation, and other relevant experience. Conheeney Decl. ¶ 16.  The Genesis Debtors' professionals, for their part, fully understand the difficulties of successfully concluding a litigation of this size and complexity and, indeed, have been analyzing, discussing, and preparing for litigation on the issues relating to the 3AC Claims for several months.  Conheeney Decl. ¶ 6.  The Settlement Agreement is the product of arm's length negotiations between the Genesis Debtors and the Joint Liquidators.  Conheeney Decl. ¶ 16.  Accordingly, the Genesis Debtors' professionals fully understand the potential consequences to creditors of the Genesis Debtors' estates if the Settlement Agreement is not consummated and have recommended that the Genesis Debtors enter into the Settlement Agreement.  *See* Conheeney Decl. ¶¶ 6.

45.    ***Fifth***, the Settlement Agreement preserves the Genesis Debtors' rights to assert liability against DCG specifically in relation to the GAP-DCG Assignment and Assumption Agreement.  *See* Conheeney Decl. ¶ 13.  This supports that the Settlement Agreement is fair and

25

reasonable and in the Genesis Debtors' best interests, rather than a result of any improper influence of DCG on the Genesis Debtors.

46.     **Sixth**, the Settlement Agreement is the product of arms-length negotiations and significant efforts to reconcile the 3AC's outstanding claims.  The Settlement Agreement was proposed, negotiated, and entered into by the Genesis Debtors and 3AC with the assistance of competent counsel, without collusion, in good faith, and from arm's-length bargaining positions. Conheeney Decl. ¶ 5.  The Genesis Debtors and 3AC and their counsel have invested the requisite time to research, analysis, discovery, and motion practice related to the 3AC Claims and concluded it would be beneficial to explore settlement and ultimately in their best interests to enter into the Settlement Agreement.   On the part of the Genesis Debtors, the Settlement Agreement was approved by the Special Committee of the Board of Directors of Genesis Global Holdco, LLC (the "Special Committee"), which carefully weighed and considered the settlement prior to providing their approval.  Conheeney Decl. ¶ 7.  In sum, the decision by the Parties to execute the Settlement Agreement was made after an assessment of the available facts, law, and risks of full litigation on the merits of the 3AC Claims, and thus the Settlement Agreement was the result of truly arm's length negotiations.

47.     **Seventh**, and finally, the Genesis Debtors have exercised their informed business judgment to determine the Settlement Agreement is fair and reasonable and in the best interest of the Genesis Debtors upon consideration of the above outlined factors.  Conheeney Decl. ¶ 15.

26

48.     Accordingly, the Genesis Debtors submit that the settlement and compromise embodied in the Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable, and should be approved.  The Debtors note that this Court  entered the FTX Settlement Order for substantially similar reasons as those articulated herein under the *Iridium* factors.  *See* FTX Settlement Order at 13-17.

## NOTICE

49.     The Genesis Debtors have provided notice of this Motion in accordance with the procedures set forth in the Case Management Order.  The Genesis Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## NO PRIOR REQUEST

50.     No prior request for the relief requested herein has been made to this or any other Court.

*[The remainder of this page is left blank intentionally.]*

27

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Genesis Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as Exhibit A, approving the Settlement Agreement and (b) grant such other and further relief as is just and proper.

Dated:    November 9, 2023
            New York, New York

*/s/ Luke A. Barefoot*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Genesis Debtors*
*and Debtors-in-Possession*

28

## EXHIBIT A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.:  23-10063 (SHL)<br><br>Jointly Administered |

## ORDER APPROVING SETTLEMENT
## AGREEMENT BETWEEN THE GENESIS DEBTORS AND
## THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD.

Upon the Motion[2] of Genesis Global Holdco, LLC ("Holdco") and its affiliated

debtors and debtors-in-possession (collectively, the "Genesis Debtors") in the above-captioned

cases (the "Chapter 11 Cases") for entry of an order (this "Order") pursuant to Rule 9019(a) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the settlement and

compromise (the "Settlement Agreement") entered into by (i) the Genesis Debtors, (ii) Digital

Currency Group, Inc. ("DCG"), (iii) Three Arrows Capital, Ltd. (in liquidation) (the "3AC

Debtor"), and (iv) Christopher Farmer and Russell Crumpler of Teneo (BVI) Limited, in their

respective capacities as the duly authorized joint liquidators of the 3AC Debtor (the "Joint

Liquidators" and together with the 3AC Debtor ("3AC"), and 3AC collectively with the Genesis

Debtors and DCG, each a "Party" and collectively the "Parties"); and the Court having jurisdiction

to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and

---

1.      The Genesis Debtors in the Chapter 11 Cases, along with the last four digits of each Genesis Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of the Chapter 11 Cases, the service address for the Genesis Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

2       All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and the opportunity for a hearing thereon having been provided in accordance with the Case Management Order; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Genesis Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Settlement Agreement is fair and reasonable, is a valid exercise of the Genesis Debtors' business judgment, and constitutes reasonably equivalent value among the parties thereto.

3.      Pursuant to Bankruptcy Rule 9019(a), the Settlement Agreement is approved, and the Genesis Debtors are authorized to enter into the Settlement Agreement.

4.      As set forth in the Settlement Agreement, the Allowed 3AC Claim against GGC is hereby ALLOWED in the amount of $33,000,000.  The Allowed 3AC Claim shall not be

2

subject to subordination, recharacterization, or disallowance based on any acts or occurrences prior to the Settlement Execution Date.

5.       Upon the Settlement Effective Date, pursuant to the terms of the Settlement Agreement, Claim Nos. 523, 526, 527, 981, 982 and 990 (the "3AC Claims") shall be deemed expunged, and the Joint Liquidators shall be deemed to withdraw the 3AC Claims with prejudice.

6.       The Parties are authorized to take any action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement in accordance with this Order, including without limitation to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement in accordance with this Order.

7.       This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation, interpretation or enforcement of this Order.

Dated: _____, 2023
        New York, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

**Settlement Agreement**

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

      This Settlement Agreement and Release (the "**<u>Settlement Agreement</u>**") is made and entered into by and among: (i) Genesis Global Holdco, LLC ("**<u>Holdco</u>**") and its affiliated debtors and debtors-in-possession (collectively, the "**<u>Genesis Debtors</u>**") in the jointly-administered chapter 11 cases proceeding under the caption *In re Genesis Global Holdco, LLC, et al.* Case No. 23-10063 (SHL) (the "**<u>Genesis Bankruptcy Proceeding</u>**"); (ii) Digital Currency Group, Inc. ("**<u>DCG</u>**"); (iii) Three Arrows Capital, Ltd. (in liquidation) (the "**<u>3AC Debtor</u>**"); and (iv) Christopher Farmer and Russell Crumpler of Teneo (BVI) Limited, in their respective capacities as the duly authorized joint liquidators of the 3AC Debtor (the "**<u>Joint Liquidators</u>**" and together with the 3AC Debtor, the Genesis Debtors, and DCG, each a "**<u>Party</u>**" and collectively the "**<u>Parties</u>**") appointed in the British Virgin Islands ("**<u>BVI</u>**") liquidation of the 3AC Debtor (the "**<u>BVI Proceeding</u>**"), which has been recognized as a foreign main proceeding pursuant to chapter 15 of title 11 of the United States Code (the "**<u>Bankruptcy Code</u>**") in the case captioned *In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y. 2022);[1]

      **WHEREAS**, on June 27, 2022, the 3AC Debtor commenced the BVI Proceeding before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "**<u>BVI Court</u>**"), and the BVI Court appointed Russell Crumpler and Christopher Farmer as the 3AC Debtor's Joint Liquidators;

      **WHEREAS**, Genesis Asia Pacific Pte. Ltd. ("**<u>GAP</u>**") and DCG are party to that certain Assignment & Assumption Agreement dated as of July 14, 2022 (the "**<u>A&A Agreement</u>**"), pursuant to which, among other things, GAP assigned to DCG, and DCG assumed, all of GAP's right, title, benefit, privileges and interests in and to, and all of GAP's burdens, obligations and liabilities in connection with the Pledge Agreements and related Collateral under the Agreements and the Pledge Agreements (all as defined in the A&A Agreement);

      **WHEREAS**, DCG disputes that it assumed GAP's obligations regarding the foreclosure of related Collateral under the Agreements and the Pledge Agreements (all as defined in the A&A Agreement) prior to DCG's entry into the A&A Agreement;



      **WHEREAS**, on January 19, 2023, the Genesis Debtors filed their respective petitions for voluntary relief under chapter 11 of the Bankruptcy Code in the United States

---

[1]     Capitalized terms used herein shall have the meanings ascribed to such terms in this Settlement Agreement except as expressly provided otherwise.

Bankruptcy Court for the Southern District of New York, initiating the Genesis Bankruptcy Proceeding before the Honorable Sean H. Lane (the "**Bankruptcy Court**");

WHEREAS, on March 6, 2023, Alameda Research Ltd. filed a Complaint in the Court of Chancery of the State of Delaware against Grayscale Investments, LLC ("**Grayscale**"), DCG, Michael Sonnenshein, and Barry Silbert, asserting, among other things, breach of contract, breach of implied covenant, breach of fiduciary duty, and other declaratory judgments in connection with allegations that Grayscale overcharged management fees (such claims together with any other claims that could have been or could in the future be asserted relating to Grayscale, the "**Grayscale Claims**");

████████████████████████████████████████

████████████████████████████████████

WHEREAS, on or about May 22, 2023, the Joint Liquidators filed proofs of claim on behalf of the 3AC Debtor against the Genesis Debtors in the Genesis Bankruptcy Proceeding as set forth in **Exhibit A-1** attached hereto (collectively, the "**Original Proofs of Claim**") in an amount exceeding $1.0 billion in aggregate;

WHEREAS, on May 25, 2023, the Joint Liquidators filed an application in the BVI Court seeking the BVI Court's sanction to commence proceedings in respect of the 3AC Debtor under Chapter 11 of the Bankruptcy Code (the "**BVI Sanction Application**");

WHEREAS, on July 19, 2023, the Genesis Debtors filed the *Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "**First 3AC Claims Objection**") (ECF No. 530), which sought to expunge the Original Proofs of Claim and was subsequently withdrawn by the Genesis Debtors as moot following the filing of the Second 3AC Claims Objection (ECF No. 661);

WHEREAS, on July 26, 2023, following a hearing before the BVI Court on July 21, 2023 and July 24, 2023, the BVI Sanction Application was dismissed by the BVI Court and permission to commence Chapter 11 proceedings was thereby refused (the "**BVI Sanction Decision**");

WHEREAS, on August 17, 2023, the Joint Liquidators filed an appeal in relation to the BVI Sanction Decision before the Eastern Caribbean Court of Appeal ("**EC Court of Appeal**") (case number BVIHCMAP2023/0018 - the "**BVI Sanction Appeal**"), and that appeal remains extant and is opposed by DCG;

WHEREAS, on or about August 18, 2023, the Joint Liquidators filed amended proofs of claim on behalf of the 3AC Debtor against the Genesis Debtors in the Genesis Bankruptcy Proceeding as set forth in **Exhibit A-2** attached hereto (collectively, the "**Amended Proofs of Claim**" and, together with the Original Proofs of Claim, the "**3AC Proofs of Claim**"), asserting claims in the aggregate amount of at least $994,000,000, plus unliquidated amounts;

WHEREAS, on September 1, 2023, the Genesis Debtors filed the *Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11*

*U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "**Second 3AC Claims Objection**") (ECF No. 658), which sought to expunge the 3AC Proofs of Claim;

      **WHEREAS**, on September 6, 2023, the Joint Liquidators, on behalf of the 3AC Debtors, filed the *Motion of the Foreign Representatives of Three Arrows Capital, Ltd. For Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* (the "**Lift Stay Motion**") (ECF No. 678), which motion the Genesis Debtors opposed (ECF No. 720);

      **WHEREAS**, on September 15, 2023, the Joint Liquidators, on behalf of the 3AC Debtors, filed the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Issuance of Subpoenas for the Production of Documents By the Debtors* (the "**Rule 2004 Motion**") (ECF No. 711), which motion the Genesis Debtors opposed (ECF No. 763);

      **WHEREAS**, the 3AC Debtor has asserted claims against the Genesis Debtors and DCG in the BVI Application and has reserved the right to pursue other claims against the Genesis Debtors and DCG in the BVI Court and under certain United States bankruptcy laws (if applicable) in courts of competent jurisdiction;

      **WHEREAS**, in relation to the BVI Sanction Appeal:



      **WHEREAS**, each Party has an interest in avoiding the cost and expense that would be associated with litigation of the novel and complex issues raised by the litigation between the Parties;

      **WHEREAS**, without any admission by any Party, and subject to the terms of this Settlement Agreement, the 3AC Debtor and the Genesis Debtors desire to fully and finally resolve all disputes relating to loan activities in connection with (i) the Master Loan Agreement, dated January 1, 2019, by and between Genesis Global Capital LLC ("**GGC**") as Lender, and the 3AC Debtor, as Borrower (the "**2019 MLA**"); (ii) the Master Loan Agreement, dated January 24, 2020, by and between GAP, as Lender, and the 3AC Debtor, as Borrower (the "**2020 MLA**"); (iii) the A&A Agreement, (iv) the Amendment to 2019 MLA, dated January 27, 2022, by and between GAP, as Lender, and the 3AC Debtor, as Borrower (the "**2019 Amendment**"); and (v) all loan term sheets and pledge agreements entered into in connection with the 2019 MLA and 2020 MLA (the foregoing, collectively, the "**Loan Documents**"), which disputes include, for the avoidance

of doubt, as between the 3AC Debtor and the Genesis Debtors, the claims set forth in the 3AC Proofs of Claim and the BVI Application (the "**Claims Against Genesis**");

**WHEREAS**, without any admission by any Party, and subject to the terms of this Settlement Agreement, the 3AC Debtor and the Joint Liquidators, on one hand, and DCG, on the other hand, ███████████████████████████████████████████████████████████



**NOW, THEREFORE**, in consideration of the above and the respective promises, conditions, terms, and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

1.    **AGREEMENT OF THE PARTIES**[2]

(a)    <u>Allowed 3AC Claim</u>. On the Settlement Effective Date, the 3AC Debtor shall have an allowed general unsecured claim in the Genesis Bankruptcy Proceeding against GGC in the amount of $33,000,000 (the "**Allowed 3AC Claim**"), which claim shall be freely transferable, subject to section 1(l) below. The Allowed 3AC Claim shall not be subject to subordination, recharacterization, or disallowance based on any acts or occurrences prior to the Settlement Execution Date, and the Genesis Debtors and DCG shall not seek or support, directly or indirectly, treatment of the Allowed 3AC Claim other than as provided in this Settlement Agreement.

---

[2]    The terms of the form of Settlement Agreement remain subject to ongoing negotiation between the 3AC Debtor, the Joint Liquidators, and DCG, including without limitation the provisions that have been sealed or redacted.  The parties' consent to file this version of the form of Settlement Agreement with the Motion is not an indication, and shall not be deemed or imputed to be, any agreement or intent on the part of any of the 3AC Debtor, the Debtors, the Joint Liquidators, or DCG as a waiver of any rights and defenses, including to negotiate different language in the agreement, nor a waiver of any rights under Rule 408 of the Federal Rules of Evidence and other rules of similar import.  The Debtors, 3AC and the Joint Liquidators, and DCG agree that the terms contained in the form of Settlement Agreement shall not be used against or otherwise prejudice the Debtors, the 3AC Debtor, the Joint Liquidators, or DCG in any way, shape, form, or manner.



(d)    AVAX and NEAR Tokens.  On the Settlement Effective Date, each of ███ and the Genesis Debtors shall forever and irrevocably relinquish and release, in favor of the 3AC Debtor, any claim, lien, security interest, encumbrance, entitlement, or other right of any kind whatsoever that ███ or any of the Genesis Debtors may have or assert to the AVAX tokens (the "**AVAX Tokens**") and the NEAR tokens subject to that certain Pledge Agreement by and between GAP, as secured party, and the 3AC Debtor, as pledgor, dated as of January 27, 2022, which are described on Schedule 1(d) hereto.





(g)    <u>Genesis Debtors Cooperation</u>.    The Genesis Debtors shall use commercially reasonable efforts to cooperate in good faith with the Joint Liquidators by, subject to applicable confidentiality obligations and with at least five (5) business days' prior written notice, consenting to the Joint Liquidators' use, for purposes of pursuing claims against third parties, of non-privileged documents and information disclosed to the Joint Liquidators, whether such disclosure occurred in connection with the Parties' litigation of the Released 3AC Claims or otherwise.    Upon the Genesis Debtors' request, the Joint Liquidators shall seek to have such documents treated confidentially and filed under seal in any applicable litigation or proceeding.    The Genesis Debtors shall not cooperate with or support, directly or indirectly, any party in litigation adverse to the 3AC Debtor with respect to matters relating to the DCG Claim and the Released 3AC Claims, except

as may be required by applicable law.  Notwithstanding anything to the contrary in this Settlement Agreement, any rights of the Joint Liquidator to call as a third party witness or seek third party evidence from the Genesis Debtors or any of their current or former affiliates, officers, directors, principals, equity holders, employees, agents, advisors, consultants, representatives, or other professionals (collectively, the "**Genesis Third Party Targets**") in any litigation relating to the BVI Proceeding, whether in the BVI Court or another court of competent jurisdiction, are expressly reserved, as are all of the defenses and objections of the Genesis Third Party Targets thereto.  The Genesis Debtors shall not oppose or interfere with, directly or indirectly, the Joint Liquidators efforts to conduct informal interviews with current employees (who are separately represented by counsel) or former employees.

(h)    <u>3AC Debtors and Joint Liquidators Cooperation</u>.  The 3AC Debtors and Joint Liquidators (in their capacity as such) shall use commercially reasonable efforts to cooperate in good faith with the Genesis Debtors and DCG by, subject to applicable confidentiality obligations and with at least five (5) business days' prior written notice, consenting to the Genesis Debtors' or DCG's use, for purposes of pursuing or defending against claims, of non-privileged documents and information disclosed to the Genesis Debtors or DCG, whether such disclosure occurred in connection with the Parties' litigation of the Claims Against Genesis or otherwise.  Upon the Joint Liquidators' request, the Genesis Debtors or DCG, as applicable, shall seek to have such documents treated confidentially and filed under seal in any applicable litigation or proceeding. The Joint Liquidators, in their capacity as such, shall not cooperate with or support, directly or indirectly, any party in litigation adverse to the Genesis Debtors or DCG with respect to matters relating to the Claims Against Genesis, except as may be required by applicable law. Notwithstanding anything to the contrary in this Settlement Agreement, any rights of the Genesis Debtors or DCG to call as a third party witness or seek third party evidence from the Joint Liquidators and the 3AC Debtor or DCG or any of their current or former affiliates, officers, directors, principals, equity holders, employees, agents, advisors, consultants, representatives, or other professionals (collectively, the "**3AC Third Party Targets**") in any litigation relating to the Genesis Bankruptcy Proceeding or other litigation to which the Genesis Debtors or DCG are a party, whether in the Bankruptcy Court or another court of competent jurisdiction, are expressly reserved, as are all of the defenses and objections of the 3AC Third Party Targets thereto.



(j)     Pro Rata Distributions. The Allowed 3AC Claim shall (i) be entitled to receive pro rata distributions (in the form of cash) with all other allowed general unsecured claims against GGC (other than Gemini Lender Claims (as defined in the Debtors' Amended Joint Chapter 11 Plan, filed on June 13, 2023 in Genesis Bankruptcy Proceeding (ECF No. 427)) to the extent Gemini Lenders are separately classified pursuant to any chapter 11 plan that becomes effective in the Genesis Bankruptcy Proceeding (the "**Genesis Plan**") and (ii) shall be entitled to all treatment afforded to allowed general unsecured claims in its respective class and shall not be separately classified from other general unsecured claims owed fiat against GGC (other than Claims of Gemini Lenders, which may be separately classified, and Claims separately classified solely for purposes of administrative convenience, if any) or otherwise treated in any disparate or discriminatory way as compared to other general unsecured claims against GGC under the Genesis Plan, *provided* that (x) the Parties may mutually agree in writing that the consideration comprising the distributions on account of the Allowed 3AC Claim may be in a form other than cash, and (y) in the event that the Genesis Plan includes an early payout option at a discount (the "**Early Payout Option**"), the Early Payout Option shall not be available with respect to the Allowed 3AC Claim unless the Early Payout Option is otherwise generally available to all similarly situated holders of allowed general unsecured claims in an amount equal to or greater than the Allowed 3AC Claim. Notwithstanding the foregoing, in the event the Genesis Plan includes the Early Payout Option and it is not available to the Allowed 3AC Claim, the 3AC Debtor (and the Joint Liquidators on its behalf) reserves its rights and shall be entitled to object to the Early Payout Option on the grounds that it constitutes unfair discrimination and the Genesis Debtors reserve their rights and shall be entitled to argue that the Early Payout Option does not constitute unfair discrimination.

(k)     Transfers. Effective as of the Settlement Effective Date, the rights to the Allowed 3AC Claim shall be freely transferable (in whole or in part), *provided* that any transferee of any portion of, or interest in, the Allowed 3AC Claim (each, a "**Transferee**") shall, as a condition to such transfer (each, a "**Transfer**"), agree to be bound by the terms of this Settlement Agreement with respect to the acquired portion of the Allowed 3AC Claim, *mutatis mutandis*, by executing and delivering to the Genesis Debtors a joinder agreement substantially in the form attached hereto as **Exhibit B** (each, a "**Joinder**").  Upon compliance with the foregoing, the 3AC Debtor and the Joint Liquidators shall be deemed to relinquish their rights under this Settlement Agreement with respect to the acquired portion of the Allowed 3AC Claim and to the extent of such transferred rights. Notwithstanding anything to the contrary herein, entry into a Joinder shall not require or otherwise cause a Transferee to release any Claims against any Party other than the Released 3AC Claims.

(l)     Covenant Not to Object to Genesis Plan.  As of the Settlement Effective Date, the 3AC Debtor and the Joint Liquidators shall not object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the Genesis Debtors that is consistent with this Settlement Agreement in all respects; *provided* that nothing in this Settlement Agreement (and neither a vote to accept any such chapter 11 plan nor the acceptance of such plan) shall be construed to limit the 3AC Debtor's rights to appear as a party-in-interest in any matter to be adjudicated in the Genesis Bankruptcy Proceeding, so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Settlement Agreement and are not for the purpose of hindering, delaying, or preventing the consummation of the Settlement Agreement.

(m)    Settlement Motions. Effective as of the date of execution of this Settlement Agreement by each Party, (i) the Genesis Debtors agree to seek prompt approval of this Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019, through a motion in the Genesis Bankruptcy Proceeding in form and substance reasonably acceptable to DCG and the Joint Liquidators, which shall include a request to seal all material terms as between DCG and the 3AC Debtor contained in this Settlement Agreement (the "**Rule 9019 Motion**"), and (ii) the Joint Liquidators agree to seek prompt sanction of this Settlement Agreement by the BVI Court in the BVI Proceeding through an application in form and substance reasonably acceptable to DCG and the Genesis Debtors, which shall include a request to seal all material terms as between DCG and the 3AC Debtor contained in this Settlement Agreement. The Parties otherwise agree to cooperate and take such actions as are reasonably necessary (including in the event that an objection or other opposition is filed to the Rule 9019 Motion and/or any application seeking the BVI Court's sanction of the Settlement Agreement) to obtain court approval of, and authority to enter into, this Settlement Agreement, and entry of the Approval Orders. The Joint Liquidators also agree to inform DCG and the Genesis Debtors of, and object to, any direct or indirect, formal or informal, objections or challenges to the Settlement Agreement and/or the Joint Liquidators' decision to enter into the Settlement Agreement and/or the Joint Liquidator's decision to admit the DCG Claim in the amount and on the terms set out in this Settlement Agreement and/or the Allowed 3AC Claim.

(n)    Withdrawal of Motions and Claims. No later than three (3) business days after the Settlement Effective Date, the Joint Liquidators and the Genesis Debtors, as applicable, shall withdraw or dismiss, as applicable, with prejudice (i) the Original Proofs of Claim, (ii) the Amended Proofs of Claim, (iii) the ▮▮▮▮▮▮▮▮▮ (iv) the Second 3AC Claims Objection, (v) the arbitration proceeding commenced by GAP under the caption *Genesis Asia Pacific PTE. Ltd. v. Three Arrows Capital, Ltd.*, AAA/ICDR Case No. 01-22-0002-5568, (vi) the Lift Stay Motion, and (vii) the Rule 2004 Motion.

## 2.    RELEASES

(a)    3AC Release of the Genesis Debtors.  Subject to section 2(d) herein, on the Settlement Effective Date, each of the 3AC Releasing Parties,[4] does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge the Genesis Releasing Parties (as defined herein) from, against, and in respect of any and all past and

---

[4]    "**3AC Releasing Parties**" means, collectively, and in each case in its capacity as such: (a) the 3AC Debtor, (b) the Joint Liquidators (in their respective capacities as such), and (c) (x) with respect to each of the foregoing persons or entities in clauses (a)-(b), each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and (z) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x)-(y), such person or entity's respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.

present claims (as defined in 11 U.S.C. § 101(5), a "**Claim**"), cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, including any derivative claims asserted or assertable on behalf of the 3AC Debtor and/or the Joint Liquidators that the 3AC Debtor and/or the Joint Liquidators would have been legally entitled to assert in their own right and any claims based on alter ego, vicarious liability, or doctrine of similar import, that the 3AC Releasing Parties have or may have against the Genesis Releasing Parties since the beginning of time, under, arising out of, relating to, or in connection with the 3AC Proofs of Claim or any other Claim that could be asserted, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in or in connection with any of the foregoing, in all cases other than the Allowed 3AC Claim and as otherwise provided in this Settlement Agreement.





(d)    Genesis Release.  Subject to section 2(d) herein, on the Settlement Effective Date, each of the Genesis Releasing Parties,[6] does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge the 3AC Releasing Parties (all such released persons and entities collectively, the "**Genesis Released Parties**") from, against, and in respect of any and all past and present Claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, including any derivative claims asserted or assertable on behalf of the Genesis Debtors that the Genesis Debtors would have been legally entitled to assert in its own right and any claims based on alter ego, vicarious liability, or doctrine of similar import, that the Genesis Releasing Parties have or may have against the Genesis Released Parties since the beginning of time, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with any of the foregoing, in all cases other than as otherwise provided in this Settlement Agreement.

(e)    Exceptions to Mutual Release.

(i)    Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect their respective obligations under this Settlement

---

[6]    "**Genesis Releasing Parties**" means, collectively, and in each case in its capacity as such:  (a) the Genesis Debtors and (b)(x) with respect to each of the foregoing persons or entities, each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a) and (b)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and (z) with respect to each of the foregoing persons or entities in clauses (a), (b)(x)-(y), such person or entity's respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.

Agreement or the Parties' respective rights to bring any Claims or other causes of action arising out of or in connection with a breach of this Settlement Agreement.



(iii)    Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect any Claims that any Genesis Debtor may have against any other Genesis Debtor, which claims are hereby expressly and fully preserved to the same extent as if this Settlement Agreement had not been executed.

(iv)    Notwithstanding any other provision of this Settlement Agreement, for the avoidance of doubt, the 3AC Debtor, the Joint Liquidators, and their subsidiaries and affiliates do not release and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or causes of action against the 3AC Debtor or any of the 3AC Debtor's past, present and future agents, heirs, affiliates, employees, founders, executives, officers, directors, equity holders, executors, administrators, liquidators, conservators, attorneys, advisors, successors and assigns.

(v)    Notwithstanding any other provision of this Settlement Agreement, for the avoidance of doubt, the Genesis Debtors, their subsidiaries and affiliates do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or causes of action that any Genesis Debtor and any of their subsidiaries and affiliates has against any of DCG or DCG's past, present and future agents, heirs, affiliates, employees, founders, executives, officers, directors, equity holders, executors, administrators, liquidators, conservators, attorneys, advisors, successors and assigns.

(vi)    Notwithstanding any other provision of this Settlement Agreement, for the avoidance of doubt, DCG, their subsidiaries and affiliates do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or causes of action that DCG and any of their subsidiaries and affiliates has against any of the Genesis Debtors or any of the Genesis Debtors' past, present and future agents, heirs, affiliates, employees, founders, executives, officers, directors, equity holders, executors, administrators, liquidators, conservators, attorneys, advisors, successors and assigns.

██████████████████████████████████████

██████████████████████████████████████

████████████████

### 3.    REPRESENTATIONS & WARRANTIES

(a)    <u>Mutual Representations and Warranties of All Parties</u>. Each Party represents and warrants to each other Party that as of the Settlement Execution Date (as defined herein):

(i)    subject to the Approval Orders, it has the requisite organizational power and authority to enter into this Settlement Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Settlement Agreement;

(ii)    subject to the Approval Orders, this Settlement Agreement constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms;

(iii)    the execution and delivery of this Settlement Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate or other organizational action on its part;

(iv)    the execution, delivery, and performance by it of this Settlement Agreement does not violate any provision of law, rule or regulation applicable to it or any of its affiliates or its certificate of incorporation, bylaws or other organizational documents or those of any of its affiliates; and

(v)    before executing this Settlement Agreement, it has been fully informed of its terms, contents, conditions and effects, it has had a full and complete opportunity to discuss this settlement with its attorney or attorneys, it is not relying in any respect on any statement or representation made by any other Party and no promise or representation of any kind has been made to such Party separate and apart from what is expressly contained in this Settlement Agreement.

### 4.    MISCELLANEOUS PROVISIONS

(a)    <u>No Admission of Liability</u>. The undersigned Parties each acknowledge and agree that the matters set forth in this Settlement Agreement constitute the settlement and compromise of potentially disputed claims and defenses, that this Settlement Agreement is not an admission or evidence of liability or infirmity by any Party regarding any claim or defense, and that the Settlement Agreement shall not be offered or received in evidence by or against any Party for any purpose except as reasonably necessary to enforce its terms.

(b)    <u>Specific Performance</u>. It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Settlement Agreement by any Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach of this Settlement Agreement, including an order of the Bankruptcy Court or another court of competent jurisdiction requiring any Party to

comply promptly with any of its obligations hereunder. Each Party also agrees that it will not (i) seek, and will waive any requirement for, the securing or posting of a bond in connection with any Party seeking or obtaining such relief or (ii) raise as a defense thereto the necessity of proving the inadequacy of money damages as a remedy. For the avoidance of doubt, in the event of a breach of this Settlement Agreement by any Party (as determined by a Final Order as defined in the Debtors' Amended Joint Chapter 11 Plan, filed on June 13, 2023 in the Genesis Bankruptcy Proceeding (ECF No. 427) (a "**Final Order**")), all costs, including legal fees, relating to enforcement of the Settlement Agreement shall be borne solely by such breaching Party.

(c)    <u>Damages</u>. Notwithstanding anything to the contrary in this Settlement Agreement, none of the Parties or any of their respective successors or assigns shall make a claim against, or seek to recover from, any other Party or such Party's the successors, assigns, affiliates, directors, officers, employees, counsel, representatives, agents, or attorneys-in-fact of any of them for any special, indirect, consequential, exemplary, or punitive damages or damages for lost profits in respect of any claim for breach of contract or any other theory of liability arising out of or related to this Settlement Agreement.

(d)    <u>Further Assurances</u>. The Parties shall use their reasonable best efforts to take, or cause to be taken, all appropriate action to do or cause to be done all things necessary under applicable law, and to execute and deliver such documents and other papers, in each case, as may be required to carry out the provisions of this Settlement Agreement and consummate and make effective the transactions contemplated hereby.

(e)    <u>Execution in Counterparts</u>. This Settlement Agreement may be executed in counterparts by one or more of the Parties and all such counterparts when so executed shall together constitute the final Settlement Agreement, as if one document had been signed by all Parties; and each such counterpart, upon execution and delivery, shall be deemed a complete original, binding the Parties subscribed thereto upon the execution by all Parties to this Settlement Agreement. Delivery of this signed agreement by facsimile transmission or by.pdf,.jpeg,.TIFF or other form of electronic mail attachment will be deemed effective as delivery of a manually executed counterpart prior to and in the absence of manual delivery and will be binding upon the parties.

(f)    <u>Governing Law</u>. This Settlement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York).

(g)    <u>Consent to Venue</u>. Each Party irrevocably and unconditionally submits to and accepts the non-exclusive jurisdiction of the Bankruptcy Court solely for any action, suit or proceeding brought by the Genesis Debtors, the 3AC Debtor, or the Joint Liquidators arising out of or based upon such Party's breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding. Each Party irrevocably and unconditionally submits to and accepts the non-exclusive jurisdiction of the BVI Court solely for any action, suit, or proceeding brought by the 3AC Debtor or the Joint Liquidators arising out of or based upon DCG's breach of this Settlement Agreement, and waives

14

any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding.   Each Party irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the BVI Court solely for any action, suit or proceeding brought by DCG arising out of or based upon the 3AC Debtor's or the Joint Liquidators' breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding.

(h)    Trial by Jury Waived. EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF OR RELATING TO THIS SETTLEMENT AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER IN CONTRACT OR IN TORT, IN LAW OR IN EQUITY OR GRANTED BY STATUTE). EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND EACH OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS SETTLEMENT AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(i)    Notices. Any notices required hereunder shall be sent by overnight courier, return receipt requested, and by email, to the following:

(i)    If to any Genesis Debtor:

Arianna Pretto-Sakmann
Genesis Global Holdco, LLC
250 Park Avenue South, 5th Floor
New York, NY 10003
arianna@genesistrading.com

with copies to:

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225 2416
(212) 225 2929
(212) 225 2872
(212) 225-2354
soneal@cgsh.com

15

lbarefoot@cgsh.com
jvanlare@cgsh.com
aweaver@cgsh.com

(ii)    If to DCG:

[ADDRESS]
Attn: [____]
E-mail: [____]

with copies to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue,
New York, New York 10153
Attn: Jeffrey D. Saferstein, Ronit J. Berkovich, Jessica Liou
E-mail: jeffrey.saferstein@weil.com; ronit.berkovich@weil.com;
jessica.liou@weil.com

(iii)    If to the 3AC Debtor:

Russell Crumpler
Christopher Farmer
c/o Teneo (BVI) Limited
Banco Popular Building, 3rd Floor
Road Town, Tortola, British Virgin Islands, VG-1110
E-mail: russell.crumpler@teneo.com, Christopher.farmer@teneo.com

with copies to:

Latham & Watkins LLP
1271 Avenue of the Americas, 32nd Floor
New York, New York 10020
Attn: Adam J. Goldberg, Brett Neve, Nacif Taousse
E-mail: adam.goldberg@lw.com; brett.neve@lw.com;
nacif.taousse@lw.com

(j)    <u>Entire Agreement and Amendments</u>. This Settlement Agreement constitutes the entire agreement and understanding between and among the Parties concerning the matters set forth herein and supersedes any prior agreements or understandings. This Settlement Agreement may not be amended or modified, nor may any of its provisions be waived, except in writing signed by the Parties bound thereby, or by their respective authorized attorney(s), or other representative(s).

(k)    <u>Severability</u>. If any provision in this Settlement Agreement is determined to be invalid, inoperative or unenforceable, the remaining provisions of this Settlement Agreement shall remain in effect if both the economic and legal substance of this Settlement Agreement are not materially affected in any manner adverse to any Party. Otherwise, the Parties shall negotiate in

good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

(l)      Assignment. Neither this Settlement Agreement nor any of the rights and obligations of the Parties hereunder may be assigned by any Party without the prior written consent of all of the other Parties, which consent will not be unreasonably withheld, except that each Party shall have the right to assign any or all of its rights and delegate any or all of its obligations hereunder to any of its affiliates or any successor in interest (whether by merger, acquisition, asset purchase, or otherwise), *provided*, that no assignment to any affiliate or successor in interest shall relieve or discharge the assigning party from any of its obligations hereunder, *provided further*, that the Allowed 3AC Claim shall be freely transferable in accordance with Section 1(l) of this Settlement Agreement. Any Transfer in violation of this Settlement Agreement shall be void and of no force or effect.

(m)      Indemnification. In the event of the breach of this Settlement Agreement (as determined by a Final Order), the breaching Party will indemnify and hold harmless the non-breaching Party and any of its affiliates, officers, directors, employees, agents, and subsidiaries for any and all reasonable attorneys' fees and court costs arising out of or in connection with such breach.

(n)      Settlement Effective Date. The "**Settlement Effective Date**" shall occur on the date that both (i) signature pages executed by each of the Parties have been delivered to each of the other Parties,[7] and (ii) the Bankruptcy Court and the BVI Court have each entered an order (which order shall have become a final order not subject to any appeal, stay or vacatur) approving the Parties' entry into this Settlement Agreement, on terms and conditions consistent with this Settlement Agreement and otherwise reasonably acceptable to each Party (each, an "**Approval Order**" and together the "**Approval Orders**").

(o)      Confidentiality. Following the Settlement Execution Date, the Genesis Debtors, DCG, the 3AC Debtor, and the Joint Liquidators, and each of its respective Representatives, shall keep confidential, and shall not, and shall cause their affiliates not to, disclose, directly or indirectly, to any third party (i) any information related to the amount of the Admitted DCG Claim and/or the Subordinated Amount and (ii) any information otherwise subject to confidentiality restrictions in the BVI Proceeding (collectively, the "**Confidential Information**"), in each case without the other Parties' prior written consent; *provided*, *however*, that each Party may disclose the Confidential Information to such Party's directors, officers, affiliates, partners, employees, agents, advisors, attorneys, accountants, consultants, bankers, financial advisors, and insurers (the foregoing, the "**Representatives**"); *provided, further*, that the Genesis Debtors may disclose the Confidential Information to the Ad Hoc Group of Genesis Lenders (solely on a professionals'-eyes-only basis), the United States Trustee (on a confidential basis), the Official Committee of Unsecured Creditors appointed in the Genesis Bankruptcy Proceeding (on a confidential basis), and the Bankruptcy Court on a confidential basis (and the Genesis Debtors shall not waive or release any such confidentiality obligations without the prior written consent of the Joint Liquidators) and pursuant to any order entered by the Bankruptcy Court concerning the sealing of

---

[7]      The date on which the signature pages executed by each of the Parties have been delivered to each of the other Parties shall be the "**Settlement Execution Date**".

any information contained in this Settlement Agreement.  In the event that any Party or any of its Representatives receives a request from a governmental or regulatory authority, or is required by applicable law, regulation or legal process to disclose any Confidential Information other than as provided above (the foregoing, a "**Legal Requirement**"), such Party shall, to the extent legally permitted, provide the other Parties with prompt notice of such Legal Requirement.  To the extent a Legal Requirement occurs and is continuing, any Party may seek a protective order or other appropriate remedy (the foregoing, a "**Protective Order or Remedy**"), the costs of which shall be borne exclusively by the Party proposing such Protective Order or Remedy.  If, in the absence of a Protective Order or Remedy any Party or any of its Representative is nonetheless, based on the advice of legal counsel, legally compelled to disclose such Confidential Information, such Party shall and shall use commercially reasonable efforts to cause its Representative, as applicable, to furnish only that portion of the Confidential Information which is legally required and shall give the other Parties written notice (unless prohibited by law) of the Confidential Information to be disclosed as far in advance as practicable.

*[The remainder of this page is intentionally left blank.]*

**IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

Date: [___], 2023                    **GENESIS GLOBAL HOLDCO, LLC**

                                                   BY: */s/*_____

                                                   TITLE:

                                                   PRINT NAME:

Date: [___], 2023                    **GENESIS GLOBAL CAPITAL, LLC**

                                                   BY: */s/*_____

                                                   TITLE:

                                                   PRINT NAME:

Date: [___], 2023                    **GENESIS ASIA PACIFIC PTE. LTD.**

                                                   BY: */s/*_____

                                                   TITLE:

                                                   PRINT NAME:

Date: [___], 2023                    **DCG**

                                                   BY: */s/*_____

                                                   TITLE:

                                                   PRINT NAME:

**3AC DEBTOR**

Date: [___], 2023                    BY: _/s/_ _____

TITLE: Solely in his capacity as Joint Liquidator of the 3AC
           Debtor

PRINT NAME: Russell Crumpler


BY: _/s/_ _____

TITLE: Solely in his capacity as Joint Liquidator of the 3AC
           Debtor

PRINT NAME: Christopher Farmer


**JOINT LIQUIDATORS**

Date: [___], 2023                    BY: _/s/_ _____

PRINT NAME: Russell Crumpler


BY: _/s/_ _____

PRINT NAME: Christopher Farmer

**<u>Exhibit A-1</u>**

**Original Proofs of Claim**

| Claim No. | Genesis Debtor |
|-----------|----------------|
| 523 | Genesis Global Holdco |
| 526 | Genesis Global Capital LLC |
| 527 | Genesis Asia Pacific, Ltd. |

**Exhibit A-2**

**Amended Proofs of Claim**

| Claim No. | Genesis Debtor |
|-----------|----------------|
| 982 | Genesis Global Holdco LLC |
| 981 | Genesis Global Capital LLC |
| 990 | Genesis Asia Pacific, Ltd. |

## Exhibit B

### Form of Joinder Agreement

This Joinder Agreement (the "Joinder Agreement") to the Settlement Agreement and Release, dated as of [___], 2023 (the "Settlement Agreement"), by and among the Genesis Debtors, DCG, and the 3AC Debtor (acting through the Joint Liquidators), is executed and delivered by [___] (the "Joining Party") to the Genesis Debtors as of [___]. Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Settlement Agreement.

1.    <u>Agreement to be Bound</u>. The Joining Party shall hereafter be deemed to be a "Party" for all purposes under the Settlement Agreement and hereby agrees to be bound by all of the terms and conditions of the Settlement Agreement in such capacity and any representations, warranties, and covenants therein. Notwithstanding anything to the contrary in the Settlement Agreement, entry into this Joinder Agreement shall not require or otherwise cause a Joining Party to release any Claims against any Party other than any Claims related to or arising out of the Released 3AC Claims.

2.    <u>Governing Law</u>. This Joinder Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to any conflicts of law provisions which would require the application of the law of any other jurisdiction.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Joining Party has caused this Joinder Agreement to be executed as of the date first written above.

Name of Joining Party:    _____

By:    _____

Name:    _____

Title:    _____


<u>Notice Address</u>:

_____

_____

_____

Fax:    _____

Attention:    _____


With a copy to:

_____

_____

Fax:    _____

Attention:    _____


Exhibit B

## **EXHIBIT C**

**Conheeney Declaration**

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DECLARATION OF TOM CONHEENEY IN SUPPORT**
**OF THE GENESIS DEBTORS' MOTION PURSUANT TO**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(A) FOR**
**ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT**
**WITH THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD.**

I, Tom Conheeney, hereby declare under penalty of perjury, pursuant to section

1746 of title 28 of the United States Code, as follows:

1.      I submit this declaration (the "Declaration") in support of the *Genesis Debtors'*

*Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order*

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

*Approving Settlement Agreement with the Joint Liquidators of Three Arrows Capital, Ltd.* (the "Motion").[2]

## A.    Background

2.    I am a member of the Special Committee of the Board of Directors (the "Special Committee") of Genesis Global Holdco, LLC ("Holdco," and together with Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific PTE. Ltd., the "Genesis Debtors", and together with the Genesis Debtors and Holdco's non-Debtor subsidiaries, the "Company").  I have held my current title since August 2022.

3.    I am generally familiar with the day-to-day operations and affairs of the Genesis Debtors, and have been directly involved in overseeing the Genesis Debtors' operations since the initiation of the Chapter 11 Cases.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge attained while working with the Genesis Debtors; my discussions with the other member of the Special Committee; discussions with other members of the Genesis Debtors' team and the Genesis Debtors' other advisors; my review of relevant documents; and my views based upon my professional experience.

4.    To the extent that the Genesis Debtors learn that any information provided herein is materially inaccurate, the Genesis Debtors will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my knowledge, information and belief.  I am authorized to submit this Declaration on behalf of the Genesis Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

---

[2]    All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

B.      **The Settlement Agreement**

5.      Settlement negotiations between the Genesis Debtors and 3AC were primarily handled on behalf of the Debtors by the Debtors' counsel Cleary Gottlieb Steen & Hamilton LLP, who regularly consulted with the Special Committee, as well as the Company's senior management, and kept us updated about the process and progress of negotiations.

6.      The Genesis Debtors' professionals, for their part, fully understand the difficulties of successfully concluding a litigation of this size and complexity and, indeed, have been analyzing, discussing, and preparing for litigation on the issues relating to the 3AC Claims for several months.  Accordingly, the Genesis Debtors' professionals fully understand the potential consequences to creditors of the Genesis Debtors' estates if the Settlement Agreement is not consummated and have recommended that the Genesis Debtors enter into the Settlement Agreement.

7.      The Genesis Debtors and their senior management, based on the direction and approval of the Special Committee, and following extensive consultation with their advisors, have carefully concluded that the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Genesis Debtors' estates and, thus, should be approved.

8.      The terms of the Settlement Agreement provide significant and near-term benefits to the Genesis Debtors and their creditors, in contrast to the uncertainty and expense of fulsome litigation of the 3AC Claims.  The Genesis Debtors' Plan confirmation process, which is well underway, requires certainty regarding the status of the 3AC Claims.  The Settlement Agreement grants the Genesis Debtors such certainty and ensures the viability of a Genesis Plan.

9.      The Settlement Agreement will resolve all claims asserted by 3AC against the Genesis Debtors at a fraction of their face value, and will prevent the 3AC from asserting any other Claim released under the Settlement Agreement against the Genesis Debtors.  The Allowed 3AC

4

Claim amounts to approximately 3.3% of the 3AC Claims, which, as asserted, amounted to over one billon dollars and constitute more than 62% of the value of the Genesis Debtors' liquid assets and equal approximately 24.5% of all scheduled claims against GGC combined.  As such, the Settlement Agreement avoids the possibility of a litigated judgment which could result in the 3AC Claims being significantly higher than the Allowed 3AC Claim.

10.    The Settlement Agreement will allow for the Genesis Debtors to confirm a chapter 11 plan in a manner consistent with their confirmation timeline, without facing demands from 3AC for extensive reserves that would significantly impact initial distributions, by eliminating the possibility that litigation regarding the 3AC Claims might take place in the Ch. 15 or BVI Proceedings, on a protracted timeline and with an uncertain outcome.  3AC has sought to litigate the 3AC Claims in full or in part in the Ch. 15 Proceedings or BVI Proceeding, and have also argued that specific issues implicated by the 3AC Claims – including the date of insolvency of 3AC – should be decided in a forum other than this Court.  Litigating the 3AC Claims (in whole or in part) in the Ch. 15 Proceedings or BVI Proceeding would subject the Genesis Debtors to potentially protracted contested proceedings, especially if the Genesis Debtors were required to litigate in the BVI, which would require, *inter alia*, the additional expenses of obtaining local counsel and acquiring expert testimony on issues on U.S. law.  This would subject the Genesis Debtors to protracted litigation on a timeline that the Genesis Debtors and this Court do not control, thus exposing the stakeholders in these Chapter 11 Cases to potential extensive delay.

11.    Even if this Court were not to grant the Lift Stay Motion, reaching final adjudication of the 3AC Claims in this Court would still be a costly and time intensive endeavor.  Given the amount of time that has already been dedicated to the adjudication of the 3AC Claims and the numerous steps still remaining, the Genesis Debtors anticipate that the costs associated with such

discovery and litigation would constitute a significant drain on the estates of the Genesis Debtors. Thus, litigation of the 3AC Claims, whether in this Court or elsewhere, would further deplete the Genesis Debtors' estates, delay distributions to creditors, and undermine the viability of the Genesis Plan, including by requiring the Genesis Debtors to set higher than expected reserves.

12.    Further, the Settlement Agreement will also avoid the possibility of rulings that could negatively impact the Genesis Debtors' defenses to claims or claims which they might assert against third parties.

13.    Additionally, the Settlement Agreement preserves the rights of the Parties to bring Claims against DCG under the GAP-DCG Assignment and Assumption Agreement.

14.    If approved, the Settlement Agreement would fully and finally resolve disputes among the Parties, permitting the Genesis Debtors and their advisors to focus resources and attention on other claims and claimants and move toward confirming the Plan and beginning to make distributions to creditors without disputes over a potentially massive reserve for unresolved 3AC Claims.

15.    The Genesis Debtors have exercised their informed business judgment to determine the Settlement Agreement is fair and reasonable and in the best interest of the Genesis Debtors

16.    The Settlement Agreement is the product of significant efforts by both the Genesis Debtors and 3AC and is the product of extensive arm's length negotiations between the Genesis Debtors and 3AC.  The Parties are represented by sophisticated and experienced professionals—highly regarded law firms and financial advisors with significant restructuring, litigation, and other relevant experience.  The Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Genesis Debtors' estates.

Dated: November 9, 2023
New York, New York

/s/ Tom Conheeney
Tom Conheeney
Member of the Special Committee
Genesis Global Holdco, LLC