CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Plaintiff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |
| GENESIS GLOBAL CAPITAL, LLC, | Adv. Pro. No. 23-_____(SHL) |
| Plaintiff, | |
| v. | |
| GEMINI TRUST COMPANY, LLC, individually and as agent on behalf of the Earn Users, and EARN USERS 1-232,824 | |
| Defendants. | |

**ADVERSARY COMPLAINT**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, 38th Floor, New York, NY 10007.

Genesis Global Capital, LLC ("Plaintiff" or "GGC"), through its undersigned counsel, hereby submits this complaint (the "Complaint") to avoid and recover transfers made by Plaintiff to or for the benefit of the above-captioned defendants (the "Defendants"), and alleges the following facts and claims based upon personal knowledge as to itself and its own acts, and upon information and belief based on reasonable due diligence in the circumstances of Plaintiff's bankruptcy case, Plaintiff's ongoing investigation, and the documents and information presently available to Plaintiff as to all other matters:

## PRELIMINARY STATEMENT

1.      Through this Complaint, Plaintiff seeks to avoid and recover over half a billion dollars in preferential transfers that flowed to Defendants, at their demand, in the months immediately preceding Plaintiff's commencement of Chapter 11 Proceedings and at the nadir of the significant cryptocurrency market turmoil that began in the spring and summer of 2022. In particular, during the ninety (90) day period prior to the commencement of Plaintiff's Chapter 11 Case, Defendants withdrew an aggregate gross amount of no less than approximately $689,302,000 from Plaintiff. As a result of these withdrawals, Defendants benefitted at the expense of Plaintiff's other creditors, and continue to benefit to this day through their retention of the property Plaintiff seeks to avoid and recover here. Thus, Plaintiff hereby seeks to make use of the remedies provided by the Bankruptcy Code in order to correct this unfairness and return Defendants to the same position as Plaintiff's other similarly-situated creditors.

## NATURE OF THE ACTION

2.      Plaintiff brings this adversary proceeding (the "Adversary Proceeding") pursuant to Sections 547, 550 and 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), seeking to avoid and recover from Defendants, or from any other person or

2

entity for whose benefit the transfers were made, transfers of property of Plaintiff during the ninety (90) day period (the "Preference Period") prior to the commencement of the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases" and each a "Chapter 11 Case").

3.      Plaintiff seeks entry of a judgment against Defendants: (i) avoiding, pursuant to Bankruptcy Code Section 547(b), preferential transfers to and/or for the benefit of Defendants; (ii) directing, pursuant to Bankruptcy Code Section 550(a), Defendants to relinquish to Plaintiff the property transferred in the Avoidable Transfers (as such term is defined below), or pay to Plaintiff the value of such transferred property, plus interest and costs; and (iii) pending such payment, disallowing, pursuant to Bankruptcy Code Section 502, any claim of Defendants against Plaintiff.

4.      Through its ongoing investigation, Plaintiff has determined, based on currently available information, that the transfers set forth on **Exhibit A** (the "Avoidable Transfers") in the aggregate gross amount of no less than approximately $689,302,000 were made by Plaintiff during the Preference Period to or for the benefit of one or more Defendants and are avoidable under Section 547 of the Bankruptcy Code.

5.      During the course of this Adversary Proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendants during the Preference Period that are avoidable under Section 547 of the Bankruptcy Code.  Plaintiff intends to avoid and recover all such transfers made to or for the benefit of Defendants or any other transferee during the Preference Period.  Plaintiff reserves the right to amend this Complaint to include, without limitation: (i) further information regarding the Avoidable Transfers; (ii) additional transfers made during the Preference Period; (iii) additional plaintiffs; (iv) modifications of and/or revisions to Defendants' names; (v) additional defendants; and (vi) additional causes of action, if

applicable (collectively, the "Amendments"), that may become known at any time during this Adversary Proceeding, through formal discovery or otherwise, and intend for any such Amendments to relate back to this Complaint.

6. To the extent that any Defendant has filed a proof of claim in Plaintiff's Chapter 11 Case or has otherwise requested payment from Plaintiff's estate (collectively, the "Claims"), this Complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to such Claims for any reason including, but not limited to, Section 502 of the Bankruptcy Code, and such rights are expressly reserved.

## THE PARTIES

7. Plaintiff GGC is a private limited liability company organized under the laws of Delaware that provides lending and borrowing services for digital assets and fiat currency primarily to and from institutional and high net worth individual customers.

8. Defendant Gemini Trust Company, LLC ("Gemini") is a trust company organized under the laws of the state of New York with its principal place of business in New York, New York. Gemini operates a cryptocurrency platform that enables its users to buy, sell, and store cryptocurrencies. With respect to the transactions at issue here, Gemini acts as custodian and authorized agent on behalf of the Earn Users (as such term is defined below).

9. Defendants "Earn Users 1-232,824" (the "Earn Users") are participants in the Gemini Earn Program (as defined below).[2]

---

[2] Plaintiff does not currently have visibility as to the total number of Earn Users. The above-referenced number of 232,824 Earn Users is drawn from Gemini's prior filings in the Chapter 11 Cases. *See* Objection of Gemini Trust Company, LLC to the Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices, and Notice Procedures in connection therewith, and (IV) Certain Dates with respect thereto, (ECF No. 864), ¶ 9. Plaintiff also does not currently have visibility as to which Earn Users the Avoidable Transfers were conducted on behalf of. Plaintiff will amend this Complaint as needed upon discovery of additional information.

**JURISDICTION AND VENUE**

10. The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court" or the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).

11. This adversary proceeding is commenced pursuant to Sections 502, 547 and 550 of the Bankruptcy Code, and Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

12. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157, and this Court has jurisdiction to hear and to determine this proceeding and to enter a final order and judgment. In the event that this Court or any other court finds any part of this adversary proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334 because the relief sought herein relates to Plaintiff's Chapter 11 Case and will have a material impact on the administration of Plaintiff's estate (the "Estate").

13. Plaintiff consents to entry of final orders and judgments by this Court in this adversary proceeding pursuant to Bankruptcy Rule 7008. Plaintiff also consents to entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

14. This Court has jurisdiction over Defendant Gemini because it is incorporated in and has its principal place of business in New York. This Court also has jurisdiction over Defendants Gemini and the Earn Users pursuant to Rules 7004 (d) and (f) of the Federal Rules of

5

Bankruptcy Procedure and New York Civil Practice Law & Rules § 302 (McKinney 2008) because Gemini and the Earn Users purposefully availed themselves of the laws of the United States and the State of New York by, among other things, transacting business in the State of New York which gives rise and/or relates to the claims at issue in this Adversary Proceeding. Further, this Court also has jurisdiction over Defendants Gemini and the Earn Users by virtue of their (i) having entered into agreements with Plaintiff which selected New York law as the governing law and New York as the forum for dispute resolution with respect to the transactions at issue in this Adversary Proceeding and/or (ii) having filed Claims in the Chapter 11 Cases.[3]

15. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this Adversary Proceeding arises in and is related to Plaintiff's bankruptcy case pending in this Court.

## FACTUAL BACKGROUND

**I.    The Gemini Earn Program**

16. Gemini Earn was an investment program offered to Gemini Users who custodied their assets on Gemini's cryptocurrency platform (the "Gemini Earn Program"). Under the Gemini Earn Program, participants ("Earn Users") could choose to loan the digital assets they placed with Gemini to GGC in return for a fee, with Gemini acting as custodian and agent for the Earn Users in certain respects.

17. Earn Users' lending to Plaintiff was governed in part by the terms of certain triparty Master Loan Agreements (the "MLAs"), a representative example of which is attached hereto as **Exhibit B**. Each MLA was executed by three parties: (i) an individual Earn User, as lender; (ii) Plaintiff, as borrower; and (iii) Gemini, as custodian and authorized agent on behalf of an Earn User. Under the Gemini Earn Program and a side letter between GGC and Gemini

---

[3] The relevant choice-of-law and forum selection clauses can be found at Section XI of **Exhibit B**, attached hereto.

(the "Side Letter"), GGC periodically provided Gemini with the terms of the loans it was willing to enter into as well as a maximum amount of digital assets it was willing to borrow pursuant to those terms and had an obligation to accept loans up to that maximum amount. Gemini would then provide such terms to Earn Users, who could make decisions about whether to enter into loans subject to those terms.

18. Consistent with industry practice and pursuant to the MLAs, many of these loans were open term loans, meaning that GGC could repay a loan in full or in part and the Earn Users could "call"—i.e. demand repayment—under the loans in whole or in part at any point in time. Upon an Earn User call under a loan, GGC would have three business days during which to repay the loan.

## II.    The Chapter 11 Cases

19. Beginning in the spring of 2022, the digital asset industry experienced tremendous upheaval. In particular, in May 2022, LUNA and TerraUSD collapsed, causing widespread market turmoil. In June 2022, the digital asset hedge fund Three Arrows Capital Ltd. ("Three Arrows") commenced liquidation proceedings in the British Virgin Islands. The collapse of LUNA and TerraUSD, and subsequent liquidation filing of Three Arrows, signaled the onset of a new "crypto winter" and a growing industry-wide reluctance to do business with digital asset companies.

20. Upon information and belief, Plaintiff was insolvent during the entire period in which the Avoidable Transfers were made.

21. Plaintiff paused all lending and borrowing on November 16, 2022, in order to preserve its estate as a Debtor, ensure fair distribution and begin discussions with its stakeholders.

22. On January 19, 2023 (the "Petition Date"), Plaintiff and certain of its associated entities (together, the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"), in this Court.

23. The Debtors, including Plaintiff, continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and the *Order Directing Joint Administration of Related Chapter 11 Cases* (ECF No. 37) entered by the Court in the Chapter 11 Cases.

## V.    The Avoidable Transfers

24. The market turmoil discussed in ¶ 19, *supra*, led to unprecedented withdrawals from Plaintiff prior to the commencement of its Chapter 11 Case, amounting to a classic "run on the bank." Defendants contributed to this "run on the bank" by making significant withdrawals during this time.

25. During the ninety (90) day period prior to the Petition Date (the "Preference Period"), Defendants, by virtue of demanding repayment of prior loans made to Plaintiff through the Gemini Earn Program, withdrew an aggregate gross amount totaling no less than approximately $689,302,000. The dates and amounts of each such Avoidable Transfer are set forth on **Exhibit A**.

26. As discussed in ¶ 20, *supra*, upon information and belief each such withdrawal during the Preference Period was made while Plaintiff was insolvent.

27. Further, Defendant Gemini has waived any argument that Plaintiff was not insolvent during the Preference Period by affirmatively alleging that Plaintiff was insolvent beginning in the spring of 2022, well before the beginning of the Preference Period. Adversary

Complaint, *Gemini Tr. Co., LLC v. Genesis Glob. Cap., LLC*, Adv. Pro. No. 23-01192 (SHL) (Bankr. S.D.N.Y.), ECF No. 1, (the "Gemini Complaint"), at ¶ 24.

28.     Notwithstanding the foregoing, Plaintiff is also entitled to the presumption of insolvency for each Avoidable Transfer made during the Preference Period pursuant to Section 547(f) of the Bankruptcy Code.

29.     Upon information and belief, each such Avoidable Transfer was made on account of an antecedent debt owed by Plaintiff before such transfer was made.

30.     Upon information and belief, the withdrawals which give rise to the Avoidable Transfers were made either by Gemini or by Earn Users 1-232,824.

31.     Upon information and belief, Gemini was the initial transferee who received each such Avoidable Transfers, and Earn Users 1-232,824 were the subsequent transferees who ultimately received such transfers.

32.     In the alternative, and upon information and belief, to the extent that Gemini was a "mere conduit" for the Avoidable Transfers, Earn Users 1-232,824 were the initial transferees from whom each such Avoidable Transfer is avoidable and recoverable.

33.     Plaintiff seeks to avoid all of the transfers of an interest of Plaintiff in any property made by Plaintiff to Defendants during the Preference Period.

## CAUSES OF ACTION

**COUNT ONE**
**PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(b)**
**(AGAINST GEMINI)**

34.     Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

35. During the Preference Period, Plaintiff made the Avoidable Transfers to, and/or for the benefit of, Defendant Gemini in the amounts set forth on **Exhibit A**, which is incorporated by reference herein.

36. During the Preference Period, Defendant Gemini was a creditor of Plaintiff within the meaning of Section 547(b)(1) of the Bankruptcy Code at the time of each Avoidable Transfer by virtue of supplying goods, services and/or loans for which Plaintiff was obligated to pay.

37. The Avoidable Transfers were transfers of an interest of Plaintiff in property.

38. According to the books and records of Plaintiff, the Avoidable Transfers were made to, and/or for the benefit of, Defendant Gemini because each Avoidable Transfer either reduced or fully satisfied a debt or debts then owed by Plaintiff to Defendant Gemini.

39. The Avoidable Transfers were made for or on account of antecedent debts owed by Plaintiff to Defendant Gemini with respect to which each such Avoidable Transfer relates.

40. The Avoidable Transfers were made while Plaintiff was insolvent.

41. Plaintiff estimates the general unsecured creditors of Plaintiff will receive less than full value on account of their allowed claims against the Estate.

42. The Avoidable Transfers were made on or within ninety (90) days prior to the Petition Date.

43. The Avoidable Transfers enabled Defendant Gemini to receive more than it would receive if (a) Plaintiff's Chapter 11 Case was a case under Chapter 7 of the Bankruptcy Code, (b) the Avoidable Transfers had not been made, and (c) Gemini received payment of such debt(s) to the extent provided by the provisions of the Bankruptcy Code.

44.    Defendant Gemini was either the initial transferee of the Avoidable Transfers, the entity for whose benefit the Avoidable Transfers were made, or was the immediate or mediate transferee of the initial transferee receiving the Avoidable Transfers.

45.    By reason of the foregoing, each Avoidable Transfer should be avoided and set aside as a preferential transfer pursuant to Section 547(b) of the Bankruptcy Code.

**COUNT TWO**
**PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(b)**
**(AGAINST EARN USERS 1-232,824)**

46.    Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

47.    During the Preference Period, Plaintiff made the Avoidable Transfers to, and/or for the benefit of, Defendants Earn Users 1-232,824 in the amounts set forth on **Exhibit A**, which is incorporated by reference herein.

48.    During the Preference Period, Defendants Earn Users 1-232,824 were creditors of Plaintiff within the meaning of Section 547(b)(1) of the Bankruptcy Code at the time of each Avoidable Transfer by virtue of supplying goods, services and/or loans for which Plaintiff was obligated to pay.

49.    The Avoidable Transfers were transfers of an interest of Plaintiff in property.

50.    Upon information and belief, the Avoidable Transfers were made to, and/or for the benefit of, Earn Users 1-232,824 because each Avoidable Transfer either reduced or fully satisfied a debt or debts then owed by Plaintiff to Defendants Earn Users 1-232,824.

51.    The Avoidable Transfers were made for or on account of antecedent debts owed by Plaintiff to Defendants Earn Users 1-232,824 with respect to which each such Avoidable Transfer relates.

11

52. The Avoidable Transfers were made while Plaintiff was insolvent.

53. Plaintiff estimates the general unsecured creditors of Plaintiff will receive less than full value on account of their allowed claims against the Estate.

54. The Avoidable Transfers were made on or within ninety (90) days prior to the Petition Date.

55. The Avoidable Transfers enabled Defendants Earn Users 1-232,824 to receive more than they would receive if (a) Plaintiff's Chapter 11 Case was a case under Chapter 7 of the Bankruptcy Code, (b) the Avoidable Transfers had not been made, and (c) Defendants Earn Users 1-232,824 received payment of such debt(s) to the extent provided by the provisions of the Bankruptcy Code.

56. Defendants Earn Users 1-232,824 were either the initial transferees of the Avoidable Transfers, the entities or persons for whose benefit the Avoidable Transfers were made, or were the immediate or mediate transferees of the initial transferee receiving the Avoidable Transfers.

57. By reason of the foregoing, each Avoidable Transfer should be avoided and set aside as a preferential transfer pursuant to Section 547(b) of the Bankruptcy Code.

**COUNT THREE**
**PROPERTY RECOVERY PURSUANT TO 11 U.S.C. § 550(a)**
**(AGAINST ALL DEFENDANTS)**

58. Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

59. Plaintiff is entitled to avoid the Avoidable Transfers pursuant to Section 547(b) of the Bankruptcy Code.

60.     Defendants were the initial transferee of the Avoidable Transfers, the immediate or mediate transferees of such initial transferee, or the person(s) for whose benefit the Avoidable Transfers were made.

61.     Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendants the property transferred in the Avoidable Transfers, or the value of such transferred property, plus interest thereon to the date of payment and the costs of this action.

## COUNT FOUR
## DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502(d)
## (AGAINST ALL DEFENDANTS)

62.     Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

63.     As alleged above, Defendants are the initial, immediate and/or mediate transferees of transfers avoidable under Section 547 of the Bankruptcy Code and the persons from whom property is recoverable under Section 550 of the Bankruptcy Code.

64.     By reason of the foregoing facts and pursuant to Section 502(d) of the Bankruptcy Code, any claims of Defendants that have been or may in the future be asserted in the Chapter 11 Cases should be disallowed unless and until Defendants relinquish to Plaintiff the property transferred or have paid to Plaintiff the value of such transferred property, for which and to the extent that the Court has determined Defendants are liable pursuant to 11 U.S.C. § 550.  This includes but is not limited to the Claims filed by Gemini and the Earn Users.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants:

i) Pursuant to Section 547(b) of the Bankruptcy Code, avoiding each of the Avoidable Transfers;

ii) pursuant to Section 550(a) of the Bankruptcy Code, directing Defendants to relinquish to Plaintiff the property transferred in the Avoidable Transfers, or pay to Plaintiff the value of such transferred property;

iii) pursuant to Section 502(d) of the Bankruptcy Code, disallowing any Claims of Defendants;

iv) awarding pre-judgment interest at the maximum legal rate running from the date of Plaintiff's first demand to Defendants to return all Avoidable Transfers to the date of judgment with respect to this Complaint (the "Judgment") herein;

v) awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full, plus costs;

vi) requiring Defendants to pay forthwith the amount of the Judgment; and

vii) granting Plaintiff such other and further relief as the Court deems just and proper.

*[Remainder of page intentionally left blank.]*

| | | |
|---|---|---|
| Dated: | November 21, 2023<br>New York, New York | <u>*/s/ Luke A. Barefoot*</u><br>Sean A. O'Neal<br>Luke A. Barefoot<br>Jane VanLare<br>Andrew Weaver<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>*Counsel to the Plaintiff* |