**Hearing Date: November 30, 2023, at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 24, 2023, at 4:00 p.m. (Prevailing Eastern Time)**

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Genesis Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |
| | **Related Docket Nos. 905, 906, 966** |

**NOTICE OF DEBTORS'**
**EXECUTED SETTLEMENT**
**AGREEMENT BETWEEN THE GENESIS DEBTORS AND**
**THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD.**

    **PLEASE TAKE NOTICE** that, on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Genesis Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

---

[1]     The Genesis Debtors in the above captioned cases, along with the last four digits of each Genesis Debtor's tax identification number as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of the above captioned cases, the service address for the Genesis Debtors is 175 Greenwich St, 38th Floor, New York, NY 10007.

**PLEASE TAKE FURTHER NOTICE** that, on November 9, 2023, the Genesis Debtors filed the *Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement with the Joint Liquidators of Three Arrows Capital, Ltd.* (the "Motion") (ECF No. 906), which attached a proposed order as Exhibit A thereto (the "Proposed Order").

**PLEASE TAKE FURTHER NOTICE** that, attached to the Motion as Exhibit B was a substantially-final settlement agreement (the "Settlement Agreement") between the Genesis Debtors, Digital Currency Group, Inc. ("DCG"), Three Arrows Capital, Ltd. (the "3AC Debtor"), and Christopher Farmer and Russell Crumpler of Teneo (BVI) Limited, in their respective capacities as the duly authorized joint liquidators of the 3AC Debtor (the "Joint Liquidators").

**PLEASE TAKE FURTHER NOTICE** that, on November 21, 2023, the Genesis Debtors filed a revised Proposed Order resolving certain informal comments from the U.S. Trustee (the "Notice") (ECF No. 966).

**PLEASE TAKE FURTHER NOTICE** that, on November 22, 2023, the Genesis Debtors, DCG, the 3AC Debtor and the Joint Liquidators finalized and executed the Settlement Agreement (the "Executed Settlement Agreement"), which is attached hereto as **Exhibit A**.[2] A blackline of the Executed Settlement Agreement against the Settlement Agreement originally submitted with the Motion is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "Hearing") on the Motion is scheduled before the Honorable Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10610 pursuant to the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 44) (the "Case Management Order"). The Hearing will commence on **November 30, 2023, at 11:00 a.m. (Prevailing Eastern Time)**, and will be conducted through Zoom for government.

**PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the Motion or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **November 24, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline") and (b) served as required by the Order Implementing Certain Notice and Case Management Procedures, ECF No. 44 (the "Case Management Order"). The Genesis Debtors shall have until **November 28, 2023 at 12:00 p.m. (Prevailing Eastern Time)** (the "Reply Deadline") to file their reply, if any.

**PLEASE TAKE FURTHER NOTICE** that parties wishing to register for the Zoom hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances

---

[2]    The Executed Settlement Agreement is redacted for the same reasons provided in the *Genesis Debtors' Motion for Authority to Redact and File Certain Information Under Seal in Connection with the Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement with the Joint Liquidators of Three Arrows Capital, Ltd* (ECF No. 905), which motion remains pending before the Court.

passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances. Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so by calling the following muted, listen-only number: 1-929-205-6099, Access Code: 92353761344#.

        **PLEASE TAKE FURTHER NOTICE** that if no written objections are timely filed and served with respect to the Motion, the Genesis Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as **Exhibit A** to the Notice, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

        **PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov, or (ii) from the Genesis Debtors' notice and claims agent, Kroll Restructuring Administration LLC located at One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165, at https://restructuring.ra.kroll.com/genesis or by calling +1 212 257 5450.  Note that a PACER password is needed to access documents on the Court's website.

        **PLEASE TAKE FURTHER NOTICE** that the Hearing may affect your rights. Please read the Motion carefully and, if you have one available, discuss it with your attorney.  (If you do not have an attorney, you should consider consulting with one.)

        **PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Genesis Debtors.

Dated:    November 22, 2023
       New York, New York

                       */s/ Luke A. Barefoot*
                       Sean A. O'Neal
                       Luke A. Barefoot
                       Jane VanLare
                       Andrew Weaver
                       CLEARY GOTTLIEB STEEN &
                       HAMILTON LLP
                       One Liberty Plaza
                       New York, New York 10006
                       Telephone: (212) 225-2000
                       Facsimile: (212) 225-3999

                       *Counsel for the Genesis Debtors*
                       *and Debtors-in-Possession*

## **EXHIBIT A**
### **Executed Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "**Settlement Agreement**") is made and entered into by and among: (i) Genesis Global Holdco, LLC ("**Holdco**") and its affiliated debtors and debtors-in-possession (collectively, the "**Genesis Debtors**") in the jointly-administered chapter 11 cases proceeding under the caption *In re Genesis Global Holdco, LLC, et al.* Case No. 23-10063 (SHL) (the "**Genesis Bankruptcy Proceeding**"); (ii) Digital Currency Group, Inc. ("**DCG**"); (iii) Three Arrows Capital, Ltd. (in liquidation) (the "**3AC Debtor**"); and (iv) Christopher Farmer and Russell Crumpler of Teneo (BVI) Limited, in their respective capacities as the duly authorized joint liquidators of the 3AC Debtor (the "**Joint Liquidators**" and together with the 3AC Debtor, the Genesis Debtors, and DCG, each a "**Party**" and collectively the "**Parties**") appointed in the British Virgin Islands ("**BVI**") liquidation of the 3AC Debtor (the "**BVI Proceeding**"), which has been recognized as a foreign main proceeding pursuant to chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") in the case captioned *In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y. 2022);[1]

**WHEREAS**, on June 27, 2022, the 3AC Debtor commenced the BVI Proceeding before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "**BVI Court**"), and the BVI Court appointed Russell Crumpler and Christopher Farmer as the 3AC Debtor's Joint Liquidators;

**WHEREAS,** Genesis Asia Pacific Pte. Ltd. ("**GAP**") and DCG are party to that certain Assignment & Assumption Agreement, dated June 30, 2022 (the "**June A&A Agreement**"), pursuant to which, among other things, GAP assigned to DCG, and DCG assumed, all of GAP's rights and obligations in relation to the Assumed Liability (as defined in the June A&A Agreement);

**WHEREAS**, GAP and DCG are party to that certain Assignment & Assumption Agreement dated as of July 14, 2022 (the "**A&A Agreement**"), pursuant to which, among other things, GAP assigned to DCG, and DCG assumed, all of GAP's right, title, benefit, privileges and interests in and to, and all of GAP's burdens, obligations and liabilities in connection with the Pledge Agreements and related Collateral under the Agreements and the Pledge Agreements (all as defined in the A&A Agreement);

**WHEREAS**, DCG disputes that it assumed GAP's obligations regarding the foreclosure of related Collateral under the Agreements and the Pledge Agreements (all as defined in the A&A Agreement) in connection with DCG's entry into the A&A Agreement;



---

[1]    Capitalized terms used herein shall have the meanings ascribed to such terms in this Settlement Agreement except as expressly provided otherwise.

**WHEREAS**, on January 19, 2023, the Genesis Debtors filed their respective petitions for voluntary relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, initiating the Genesis Bankruptcy Proceeding before the Honorable Sean H. Lane (the "**Bankruptcy Court**");

**WHEREAS**, on March 6, 2023, Alameda Research Ltd. filed a Complaint in the Court of Chancery of the State of Delaware against Grayscale Investments, LLC ("**Grayscale**"), DCG, Michael Sonnenshein, and Barry Silbert, asserting, among other things, breach of contract, breach of implied covenant, breach of fiduciary duty, and other claims in connection with allegations that Grayscale overcharged management fees and failed to operate a redemption program (such claims together with any other claims that could have been or could in the future be asserted relating to Grayscale, the "**Grayscale Claims**");

**WHEREAS**, on or about May 22, 2023, the Joint Liquidators filed proofs of claim on behalf of the 3AC Debtor against the Genesis Debtors in the Genesis Bankruptcy Proceeding as set forth in **Exhibit A-1** attached hereto (collectively, the "**Original Proofs of Claim**") in an amount exceeding $1.0 billion in aggregate;

**WHEREAS**, on May 25, 2023, the Joint Liquidators filed an application in the BVI Court seeking the BVI Court's sanction to commence proceedings in respect of the 3AC Debtor under Chapter 11 of the Bankruptcy Code (the "**BVI Sanction Application**");

**WHEREAS**, on July 19, 2023, the Genesis Debtors filed the *Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "**First 3AC Claims Objection**") (ECF No. 530), which sought to expunge the Original Proofs of Claim and was subsequently withdrawn by the Genesis Debtors as moot following the filing of the Second 3AC Claims Objection (ECF No. 661);

**WHEREAS**, on July 26, 2023, following a hearing before the BVI Court on July 21, 2023 and July 24, 2023, the BVI Sanction Application was dismissed by the BVI Court and permission to commence Chapter 11 proceedings was thereby refused (the "**BVI Sanction Decision**");

**WHEREAS**, on August 17, 2023, the Joint Liquidators filed an appeal in relation to the BVI Sanction Decision before the Eastern Caribbean Court of Appeal ("**EC Court of Appeal**") (case number BVIHCMAP2023/0018 - the "**BVI Sanction Appeal**"), and that appeal remains extant and is opposed by DCG;

**WHEREAS**, on or about August 18, 2023, the Joint Liquidators filed amended proofs of claim on behalf of the 3AC Debtor against the Genesis Debtors in the Genesis Bankruptcy Proceeding as set forth in **Exhibit A-2** attached hereto (collectively, the "**Amended**

2

**Proofs of Claim**" and, together with the Original Proofs of Claim, the "**3AC Proofs of Claim**"), asserting claims in the aggregate amount of at least $994,000,000, plus unliquidated amounts;

WHEREAS, on September 1, 2023, the Genesis Debtors filed the *Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "**Second 3AC Claims Objection**") (ECF No. 658), which sought to expunge the 3AC Proofs of Claim;

WHEREAS, on September 6, 2023, the Joint Liquidators, on behalf of the 3AC Debtors, filed the *Motion of the Foreign Representatives of Three Arrows Capital, Ltd. For Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* (the "**Lift Stay Motion**") (ECF No. 678), which motion the Genesis Debtors opposed (ECF No. 720);

WHEREAS, on September 15, 2023, the Joint Liquidators, on behalf of the 3AC Debtors, filed the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Issuance of Subpoenas for the Production of Documents By the Debtors* (the "**Rule 2004 Motion**") (ECF No. 711), which motion the Genesis Debtors opposed (ECF No. 763);

WHEREAS, the 3AC Debtor has asserted claims against the Genesis Debtors and DCG in the ▉▉▉▉▉▉ and has reserved the right to pursue other claims against the Genesis Debtors and DCG in the BVI Court and under certain United States bankruptcy laws (if applicable) in courts of competent jurisdiction;

WHEREAS, in relation to the BVI Sanction Appeal ▉▉▉▉▉▉▉▉



WHEREAS, each Party has an interest in avoiding the cost and expense that would be associated with litigation of the novel and complex issues raised by the litigation between the Parties;

WHEREAS, without any admission by any Party, and subject to the terms of this Settlement Agreement, the 3AC Debtor and the Genesis Debtors desire to fully and finally resolve all disputes relating to loan activities in connection with (i) the Master Loan Agreement, dated January 1, 2019, by and between Genesis Global Capital LLC ("**GGC**") as Lender, and the 3AC Debtor, as Borrower (the "**2019 MLA**"); (ii) the Master Loan Agreement, dated January 24, 2020, by and between GAP, as Lender, and the 3AC Debtor, as Borrower (the "**2020 MLA**"); (iii) the

A&A Agreement, (iv) the Amendment to 2019 MLA, dated January 27, 2022, by and between GAP, as Lender, and the 3AC Debtor, as Borrower (the "**2019 Amendment**"); and (v) all loan term sheets and pledge agreements entered into in connection with the 2019 MLA and 2020 MLA (the foregoing, collectively, the "**Loan Documents**"), which disputes include, for the avoidance of doubt, as between the 3AC Debtor and the Genesis Debtors, the claims set forth in the 3AC Proofs of Claim and the ████████████ (the "**Claims Against Genesis**");

**WHEREAS**, without any admission by any Party, and subject to the terms of this Settlement Agreement, the 3AC Debtor and the Joint Liquidators, on one hand, and DCG, on the other hand, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**NOW, THEREFORE**, in consideration of the above and the respective promises, conditions, terms, and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

1.    **AGREEMENT OF THE PARTIES**[2]

(a)    Allowed 3AC Claim. On the Settlement Effective Date, the 3AC Debtor shall have an allowed general unsecured claim in the Genesis Bankruptcy Proceeding against GGC in the amount of $33,000,000 (the "**Allowed 3AC Claim**"), which claim shall be freely transferable, subject to section 1(l) below. The Allowed 3AC Claim shall not be subject to subordination, recharacterization, or disallowance based on any acts or occurrences prior to the Settlement Execution Date, and the Genesis Debtors and DCG shall not seek or support, directly or indirectly, treatment of the Allowed 3AC Claim other than as provided in this Settlement Agreement.

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[2]    The terms of the form of Settlement Agreement remain subject to ongoing negotiation between the 3AC Debtor, the Joint Liquidators, and DCG, including without limitation the provisions that have been sealed or redacted. The parties' consent to file this version of the form of Settlement Agreement with the Motion is not an indication, and shall not be deemed or imputed to be, any agreement or intent on the part of any of the 3AC Debtor, the Debtors, the Joint Liquidators, or DCG as a waiver of any rights and defenses, including to negotiate different language in the agreement, nor a waiver of any rights under Rule 408 of the Federal Rules of Evidence and other rules of similar import. The Debtors, 3AC and the Joint Liquidators, and DCG agree that the terms contained in the form of Settlement Agreement shall not be used against or otherwise prejudice the Debtors, the 3AC Debtor, the Joint Liquidators, or DCG in any way, shape, form, or manner.



(d)     <u>AVAX and NEAR Tokens</u>.  On the Settlement Effective Date, each of ███ and the Genesis Debtors shall forever and irrevocably relinquish and release, in favor of the 3AC Debtor, any claim, lien, security interest, encumbrance, entitlement, or other right of any kind whatsoever that ███ or any of the Genesis Debtors may have or assert to the AVAX tokens (the "**AVAX Tokens**") and the NEAR tokens subject to that certain Pledge Agreement by and between GAP, as secured party, and the 3AC Debtor, as pledgor, dated as of January 27, 2022, which are described on <u>Schedule 1(d)</u> hereto.





     (g)    <u>Genesis Debtors Cooperation</u>.   The Genesis Debtors shall use commercially reasonable efforts to cooperate in good faith with the Joint Liquidators by, subject to applicable confidentiality obligations and with at least five (5) business days' prior written notice, consenting to the Joint Liquidators' use, for purposes of pursuing claims against third parties, of non-privileged documents and information disclosed to the Joint Liquidators, whether such disclosure occurred in connection with the Parties' litigation of the Released 3AC Claims or otherwise.   Upon the Genesis Debtors' request, the Joint Liquidators shall seek to have such documents treated confidentially and filed under seal in any applicable litigation or proceeding.   The Genesis Debtors shall not cooperate with or support, directly or indirectly, any party in litigation adverse to the 3AC Debtor with respect to matters relating to the DCG Claim and the Released 3AC Claims, except as may be required by applicable law.   Notwithstanding anything to the contrary in this Settlement Agreement, any rights of the Joint Liquidator to call as a third party witness or seek third party evidence from the Genesis Debtors or any of their current or former affiliates, officers, directors, principals, equity holders, employees, agents, advisors, consultants, representatives, or other professionals (collectively, the "**Genesis Third Party Targets**") in any litigation relating to the BVI Proceeding, whether in the BVI Court or another court of competent jurisdiction, are expressly reserved, as are all of the defenses and objections of the Genesis Third Party Targets thereto.   The Genesis Debtors shall not oppose or interfere with, directly or indirectly, the Joint Liquidators efforts to conduct informal interviews (each, a "**Genesis Interview**") with solely those current employees who are separately represented by counsel or former Genesis employees (each of the foregoing, a "**Genesis Interviewee**"); *provided*, *that*, the Joint Liquidators shall provide reasonable advance written notice to the Genesis Debtors (email is sufficient) of any Genesis Interviews they would like to conduct with a Genesis Interviewee; *provided*, *further*, that notwithstanding anything to the contrary herein, this provision shall not and shall not be deemed to limit, prevent, or constrain the Genesis Debtors from (a) reaching out to, or discussing with, the Joint Liquidators or the 3AC Debtor any Genesis Interview or Genesis Interviewee, (b) in the event

a Genesis Interviewee reaches out to the Genesis Debtors, discussing with such Genesis Interviewee his or her Genesis Interview, (c) attending or otherwise participating in connection with any Genesis Interview of a current Genesis employee, or (d) taking any steps necessary to protect the Genesis Debtors' attorney client privilege, work product, confidentiality policies or assert any other applicable privilege or protection; *provided*, *further* that the Joint Liquidators' rights are fully reserved with respect to any action set forth in the preceding proviso.

(h)    3AC Debtors and Joint Liquidators Cooperation.  The 3AC Debtors and Joint Liquidators (in their capacity as such) shall use commercially reasonable efforts to cooperate in good faith with the Genesis Debtors and DCG by, subject to applicable confidentiality obligations and with at least five (5) business days' prior written notice, consenting to the Genesis Debtors' or DCG's use, for purposes of pursuing or defending against claims, of non-privileged documents and information disclosed to the Genesis Debtors or DCG, whether such disclosure occurred in connection with the Parties' litigation of the Claims Against Genesis or otherwise.  Upon the Joint Liquidators' request, the Genesis Debtors or DCG, as applicable, shall seek to have such documents treated confidentially and filed under seal in any applicable litigation or proceeding. The Joint Liquidators, in their capacity as such, shall not cooperate with or support, directly or indirectly, any party in litigation adverse to the Genesis Debtors or DCG with respect to matters relating to the Claims Against Genesis, except as may be required by applicable law. Notwithstanding anything to the contrary in this Settlement Agreement, any rights of the Genesis Debtors or DCG to call as a third party witness or seek third party evidence from the Joint Liquidators and the 3AC Debtor or DCG or any of their current or former affiliates, officers, directors, principals, equity holders, employees, agents, advisors, consultants, representatives, or other professionals (collectively, the "**3AC Third Party Targets**") in any litigation relating to the Genesis Bankruptcy Proceeding or other litigation to which the Genesis Debtors or DCG are a party, whether in the Bankruptcy Court or another court of competent jurisdiction, are expressly reserved, as are all of the defenses and objections of the 3AC Third Party Targets thereto





(j)      Pro Rata Distributions. The Allowed 3AC Claim shall (i) be entitled to receive pro rata distributions (in the form of cash) with all other allowed general unsecured claims against GGC (other than Gemini Lender Claims (as defined in the Debtors' Amended Joint Chapter 11 Plan, filed on June 13, 2023 in Genesis Bankruptcy Proceeding (ECF No. 427)) to the extent Gemini Lenders are separately classified pursuant to any chapter 11 plan that becomes effective in the Genesis Bankruptcy Proceeding (the "**Genesis Plan**") and (ii) shall be entitled to all treatment afforded to allowed general unsecured claims in its respective class and shall not be separately classified from other general unsecured claims owed fiat against GGC (other than Claims of Gemini Lenders, which may be separately classified, and Claims separately classified solely for purposes of administrative convenience, if any) or otherwise treated in any disparate or discriminatory way as compared to other general unsecured claims against GGC under the Genesis Plan, *provided* that (x) the Parties may mutually agree in writing that the consideration comprising the distributions on account of the Allowed 3AC Claim may be in a form other than cash, and (y) in the event that the Genesis Plan includes an early payout option at a discount (the "**Early Payout Option**"), the Early Payout Option shall not be available with respect to the Allowed 3AC Claim unless the Early Payout Option is otherwise generally available to all similarly situated holders of allowed general unsecured claims in an amount equal to or greater than the Allowed 3AC Claim. Notwithstanding the foregoing, in the event the Genesis Plan includes the Early Payout Option and it is not available to the Allowed 3AC Claim, the 3AC Debtor (and the Joint Liquidators on its behalf) reserves its rights and shall be entitled to object to the Early Payout Option on the grounds that it constitutes unfair discrimination and the Genesis Debtors reserve their rights and shall be entitled to argue that the Early Payout Option does not constitute unfair discrimination.

(k)      Transfers. Effective as of the Settlement Effective Date, the rights to the Allowed 3AC Claim shall be freely transferable (in whole or in part), *provided* that any transferee of any portion of, or interest in, the Allowed 3AC Claim (each, a "**Transferee**") shall, as a condition to such transfer (each, a "**Transfer**"), agree to be bound by the terms of this Settlement Agreement with respect to the acquired portion of the Allowed 3AC Claim, *mutatis mutandis*, by executing and delivering to the Genesis Debtors a joinder agreement substantially in the form attached hereto as **Exhibit B** (each, a "**Joinder**").  Upon compliance with the foregoing, the 3AC Debtor and the Joint Liquidators shall be deemed to relinquish their rights under this Settlement Agreement with respect to the acquired portion of the Allowed 3AC Claim and to the extent of such transferred rights. Notwithstanding anything to the contrary herein, entry into a Joinder shall not require or otherwise cause a Transferee to release any Claims against any Party other than the Released 3AC Claims.

(l)      Covenant Not to Object to Genesis Plan.  As of the Settlement Effective Date, the 3AC Debtor and the Joint Liquidators shall not object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the Genesis Debtors that is consistent with this Settlement Agreement in all respects; *provided* that nothing in this Settlement Agreement (and neither a vote to accept any such chapter 11 plan nor the acceptance of such plan) shall be construed to limit the 3AC Debtor's rights to appear as a party-in-interest in any matter to be adjudicated in the Genesis Bankruptcy Proceeding, so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Settlement Agreement and are not for the purpose of hindering, delaying, or preventing the consummation of the Settlement Agreement.

(m)    Settlement Motions. Effective as of the date of execution of this Settlement Agreement by each Party, (i) the Genesis Debtors agree to seek prompt approval of this Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019, through a motion in the Genesis Bankruptcy Proceeding in form and substance reasonably acceptable to DCG and the Joint Liquidators, which shall include a request to seal all material terms as between DCG and the 3AC Debtor contained in this Settlement Agreement (the "**Rule 9019 Motion**"), and (ii) the Joint Liquidators agree to seek prompt sanction of this Settlement Agreement by the BVI Court in the BVI Proceeding through an application in form and substance reasonably acceptable to DCG and the Genesis Debtors, which shall include a request to seal all material terms as between DCG and the 3AC Debtor contained in this Settlement Agreement. The Parties otherwise agree to cooperate and take such actions as are reasonably necessary (including in the event that an objection or other opposition is filed to the Rule 9019 Motion and/or any application seeking the BVI Court's sanction of the Settlement Agreement) to obtain court approval of, and authority to enter into, this Settlement Agreement, and entry of the Approval Orders.  The Joint Liquidators also agree to inform DCG and the Genesis Debtors of, and object to, any direct or indirect, formal or informal, objections or challenges to the Settlement Agreement and/or the Joint Liquidators' decision to enter into the Settlement Agreement and/or the Joint Liquidator's decision to admit the DCG Claim in the amount and on the terms set out in this Settlement Agreement and/or the Allowed 3AC Claim.

(n)    Withdrawal of Motions and Claims. No later than three (3) business days after the Settlement Effective Date, the Joint Liquidators and the Genesis Debtors, as applicable, shall withdraw or dismiss, as applicable, with prejudice (i) the Original Proofs of Claim, (ii) the Amended Proofs of Claim, (iii) the ████████████ (iv) the Second 3AC Claims Objection, (v) the arbitration proceeding commenced by GAP under the caption *Genesis Asia Pacific PTE. Ltd. v. Three Arrows Capital, Ltd.*, AAA/ICDR Case No. 01-22-0002-5568, (vi) the Lift Stay Motion, and (vii) the Rule 2004 Motion.

## 2.    RELEASES

(a)    3AC Release of the Genesis Debtors.  Subject to section 2(e) herein, on the Settlement Effective Date, each of the 3AC Releasing Parties,[4] does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge the

---

[3] ████████████████████████████████████
████████████████████████

[4]    "**3AC Releasing Parties**" means, collectively, and in each case in its capacity as such: (a) the 3AC Debtor, (b) the Joint Liquidators (in their respective capacities as such), and (c) (x) with respect to each of the foregoing persons or entities in clauses (a)-(b), each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and (z) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x)-(y), such person or entity's respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.

Genesis Releasing Parties (as defined herein) from, against, and in respect of any and all past and present Claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, including any derivative claims asserted or assertable on behalf of the 3AC Debtor and/or the Joint Liquidators that the 3AC Debtor and/or the Joint Liquidators would have been legally entitled to assert in their own right and any claims based on alter ego, vicarious liability, or doctrine of similar import, that the 3AC Releasing Parties have or may have against the Genesis Releasing Parties since the beginning of time, under, arising out of, relating to, or in connection with the 3AC Proofs of Claim or any other Claim that could be asserted, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in or in connection with any of the foregoing, in all cases other than the Allowed 3AC Claim and as otherwise provided in this Settlement Agreement.





(d)    <u>Genesis Release.</u>  Subject to section 2(e) herein, on the Settlement Effective Date, each of the Genesis Releasing Parties,[6] does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge the 3AC Releasing Parties (all such released persons and entities collectively, the "**<u>Genesis Released Parties</u>**") from, against, and in respect of any and all past and present Claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, including any derivative claims asserted or assertable on behalf of the Genesis Debtors that the Genesis Debtors would have been legally entitled to assert in its own right and any claims based on alter ego, vicarious liability, or doctrine of similar import, that the Genesis Releasing Parties have or may have against the Genesis Released Parties since the beginning of time, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with any of the foregoing, in all cases other than as otherwise provided in this Settlement Agreement.

---

[6]    "**<u>Genesis Releasing Parties</u>**" means, collectively, and in each case in its capacity as such:  (a) the Genesis Debtors and (b)(x) with respect to each of the foregoing persons or entities, each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a) and (b)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and (z) with respect to each of the foregoing persons or entities in clauses (a), (b)(x)-(y), such person or entity's respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.

(e)    Exceptions to Mutual Release.

(i)    Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect their respective obligations under this Settlement Agreement or the Parties' respective rights to bring any Claims or other causes of action arising out of or in connection with a breach of this Settlement Agreement.



(iii)    Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect any Claims that any Genesis Debtor may have against any other Genesis Debtor, which claims are hereby expressly and fully preserved to the same extent as if this Settlement Agreement had not been executed.

(iv)    Notwithstanding any other provision of this Settlement Agreement, for the avoidance of doubt, the 3AC Debtor, the Joint Liquidators, and their subsidiaries and affiliates do not release and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or causes of action against the 3AC Debtor or any of the 3AC Debtor's past, present and future agents, heirs, affiliates, employees, founders, executives, officers, directors, equity holders, executors, administrators, liquidators, conservators, attorneys, advisors, successors and assigns.

(v)    Notwithstanding any other provision of this Settlement Agreement, for the avoidance of doubt, the Genesis Debtors, their subsidiaries and affiliates do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or causes of action that any Genesis Debtor and any of their subsidiaries and affiliates has against any of DCG or DCG's past, present and future agents, heirs, affiliates, employees, founders, executives, officers, directors, equity holders, executors, administrators, liquidators, conservators, attorneys, advisors, successors and assigns.

(vi)    Notwithstanding any other provision of this Settlement Agreement, for the avoidance of doubt, DCG, their subsidiaries and affiliates do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or causes of action that DCG and any of their subsidiaries and affiliates has against any of the Genesis Debtors or any of the Genesis Debtors' past, present and future agents, heirs, affiliates, employees, founders, executives, officers, directors, equity holders, executors, administrators, liquidators, conservators, attorneys, advisors, successors and assigns.

## 3.    REPRESENTATIONS & WARRANTIES

(a)    <u>Mutual Representations and Warranties of All Parties</u>. Each Party represents and warrants to each other Party that as of the Settlement Execution Date:

(i)    subject to the Approval Orders, it has the requisite organizational power and authority to enter into this Settlement Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Settlement Agreement;

(ii)    subject to the Approval Orders, this Settlement Agreement constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms;

(iii)    the execution and delivery of this Settlement Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate or other organizational action on its part;

(iv)    the execution, delivery, and performance by it of this Settlement Agreement does not violate any provision of law, rule or regulation applicable to it or any of its affiliates or its certificate of incorporation, bylaws or other organizational documents or those of any of its affiliates; and

(v)    before executing this Settlement Agreement, it has been fully informed of its terms, contents, conditions and effects, it has had a full and complete opportunity to discuss this settlement with its attorney or attorneys, it is not relying in any respect on any statement or representation made by any other Party and no promise or representation of any kind has been made to such Party separate and apart from what is expressly contained in this Settlement Agreement.

## 4.    MISCELLANEOUS PROVISIONS

(a)    <u>No Admission of Liability</u>. The undersigned Parties each acknowledge and agree that the matters set forth in this Settlement Agreement constitute the settlement and compromise of potentially disputed claims and defenses, that this Settlement Agreement is not an admission or evidence of liability or infirmity by any Party regarding any claim or defense, and that the Settlement Agreement shall not be offered or received in evidence by or against any Party for any purpose except as reasonably necessary to enforce its terms.

(b)    <u>Specific Performance</u>. It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Settlement Agreement by any

Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach of this Settlement Agreement, including an order of the Bankruptcy Court or another court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder. Each Party also agrees that it will not (i) seek, and will waive any requirement for, the securing or posting of a bond in connection with any Party seeking or obtaining such relief or (ii) raise as a defense thereto the necessity of proving the inadequacy of money damages as a remedy. For the avoidance of doubt, in the event of a breach of this Settlement Agreement by any Party (as determined by a Final Order), all costs, including legal fees, relating to enforcement of the Settlement Agreement shall be borne solely by such breaching Party.

(c)     Damages. Notwithstanding anything to the contrary in this Settlement Agreement, none of the Parties or any of their respective successors or assigns shall make a claim against, or seek to recover from, any other Party or such Party's the successors, assigns, affiliates, directors, officers, employees, counsel, representatives, agents, or attorneys-in-fact of any of them for any special, indirect, consequential, exemplary, or punitive damages or damages for lost profits in respect of any claim for breach of contract or any other theory of liability arising out of or related to this Settlement Agreement.

(d)     Further Assurances. The Parties shall use their reasonable best efforts to take, or cause to be taken, all appropriate action to do or cause to be done all things necessary under applicable law, and to execute and deliver such documents and other papers, in each case, as may be required to carry out the provisions of this Settlement Agreement and consummate and make effective the transactions contemplated hereby.

(e)     Execution in Counterparts. This Settlement Agreement may be executed in counterparts by one or more of the Parties and all such counterparts when so executed shall together constitute the final Settlement Agreement, as if one document had been signed by all Parties; and each such counterpart, upon execution and delivery, shall be deemed a complete original, binding the Parties subscribed thereto upon the execution by all Parties to this Settlement Agreement. Delivery of this signed agreement by facsimile transmission or by.pdf,.jpeg,.TIFF or other form of electronic mail attachment will be deemed effective as delivery of a manually executed counterpart prior to and in the absence of manual delivery and will be binding upon the parties.

(f)     Governing Law. This Settlement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York).

(g)     Consent to Venue. Each Party irrevocably and unconditionally submits to and accepts the non-exclusive jurisdiction of the Bankruptcy Court solely for any action, suit or proceeding brought by the Genesis Debtors, the 3AC Debtor, or the Joint Liquidators arising out of or based upon such Party's breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding. Each Party irrevocably and unconditionally submits to and accepts the non-exclusive jurisdiction

of the BVI Court solely for any action, suit, or proceeding brought by the 3AC Debtor or the Joint Liquidators arising out of or based upon DCG's breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding.  Each Party irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the BVI Court solely for any action, suit or proceeding brought by DCG arising out of or based upon the 3AC Debtor's or the Joint Liquidators' breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding.

(h)    Trial by Jury Waived. EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF OR RELATING TO THIS SETTLEMENT AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER IN CONTRACT OR IN TORT, IN LAW OR IN EQUITY OR GRANTED BY STATUTE). EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND EACH OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS SETTLEMENT AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(i)    Notices. Any notices required hereunder shall be sent by overnight courier, return receipt requested, and by email, to the following:

(i)    If to any Genesis Debtor:

Arianna Pretto-Sakmann
Genesis Global Holdco, LLC
175 Greenwich St., 38th Floor
New York, NY 10007
arianna@genesistrading.com

with copies to:

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225 2416
(212) 225 2929
(212) 225 2872

(212) 225-2354
soneal@cgsh.com
lbarefoot@cgsh.com
jvanlare@cgsh.com
aweaver@cgsh.com

(ii)    If to DCG:

Digital Currency Group, Inc.
290 Harbor Drive
Stamford, CT 06902
Attn: Mike Katz, Ryan Jolly
Email: mike@dcg.co, ryan@dcg.co

with copies to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue,
New York, New York 10153
Attn: Jeffrey D. Saferstein, Ronit J. Berkovich, Jessica Liou
E-mail: jeffrey.saferstein@weil.com, ronit.berkovich@weil.com,
jessica.liou@weil.com

(iii)   If to the 3AC Debtor:

Russell Crumpler
Christopher Farmer
c/o Teneo (BVI) Limited
Banco Popular Building, 3rd Floor
Road Town, Tortola, British Virgin Islands, VG-1110
E-mail: russell.crumpler@teneo.com, Christopher.farmer@teneo.com

with copies to:

Latham & Watkins LLP
1271 Avenue of the Americas, 32nd Floor
New York, New York 10020
Attn: Adam J. Goldberg, Brett Neve, Nacif Taousse
E-mail: adam.goldberg@lw.com; brett.neve@lw.com;
nacif.taousse@lw.com

(j)    Entire Agreement and Amendments. This Settlement Agreement constitutes the entire agreement and understanding between and among the Parties concerning the matters set forth herein and supersedes any prior agreements or understandings. This Settlement Agreement may not be amended or modified, nor may any of its provisions be waived, except in writing signed by the Parties bound thereby, or by their respective authorized attorney(s), or other representative(s).

(k)    Severability. If any provision in this Settlement Agreement is determined to be invalid, inoperative or unenforceable, the remaining provisions of this Settlement Agreement shall remain in effect if both the economic and legal substance of this Settlement Agreement are not materially affected in any manner adverse to any Party. Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

(l)    Assignment. Neither this Settlement Agreement nor any of the rights and obligations of the Parties hereunder may be assigned by any Party without the prior written consent of all of the other Parties, which consent will not be unreasonably withheld, except that each Party shall have the right to assign any or all of its rights and delegate any or all of its obligations hereunder to any of its affiliates or any successor in interest (whether by merger, acquisition, asset purchase, or otherwise), *provided*, that no assignment to any affiliate or successor in interest shall relieve or discharge the assigning party from any of its obligations hereunder, *provided further*, that the Allowed 3AC Claim shall be freely transferable in accordance with Section 1(l) of this Settlement Agreement. Any Transfer in violation of this Settlement Agreement shall be void and of no force or effect.

(m)    Indemnification. In the event of the breach of this Settlement Agreement (as determined by a Final Order), the breaching Party will indemnify and hold harmless the non-breaching Party and any of its affiliates, officers, directors, employees, agents, and subsidiaries for any and all reasonable attorneys' fees and court costs arising out of or in connection with such breach.

(n)    Settlement Effective Date. The "**Settlement Effective Date**" shall occur on the date that both (i) signature pages executed by each of the Parties have been delivered to each of the other Parties,[7] and (ii) the Bankruptcy Court and the BVI Court have each entered an order (which order shall have become a final order not subject to any appeal, stay or vacatur) approving the Parties' entry into this Settlement Agreement, on terms and conditions consistent with this Settlement Agreement and otherwise reasonably acceptable to each Party (each, an "**Approval Order**" and together the "**Approval Orders**").

(o)    Confidentiality.  Following the Settlement Execution Date, the Genesis Debtors, DCG, the 3AC Debtor, and the Joint Liquidators, and each of its respective Representatives, shall keep confidential, and shall not, and shall cause their affiliates not to, disclose, directly or indirectly, to any third party (i) any information related to the amount of the Admitted DCG Claim and/or the Subordinated Amount and (ii) any information otherwise subject to confidentiality restrictions in the BVI Proceeding (collectively, the "**Confidential Information**"), in each case without the other Parties' prior written consent; *provided*, *however*, that each Party may disclose the Confidential Information to such Party's directors, officers, affiliates, partners, employees, agents, advisors, attorneys, accountants, consultants, bankers, financial advisors, and insurers (the foregoing, the "**Representatives**"); *provided, further*, that the Genesis Debtors may disclose the Confidential Information to the Ad Hoc Group of Genesis Lenders (solely on a professionals'-eyes-only basis), the United States Trustee (on a confidential basis), the Official Committee of

---

[7]    The date on which the signature pages executed by each of the Parties have been delivered to each of the other Parties shall be the "**Settlement Execution Date**".

Unsecured Creditors appointed in the Genesis Bankruptcy Proceeding (on a confidential basis), and the Bankruptcy Court on a confidential basis (and the Genesis Debtors shall not waive or release any such confidentiality obligations without the prior written consent of the Joint Liquidators) and pursuant to any order entered by the Bankruptcy Court concerning the sealing of any information contained in this Settlement Agreement.  In the event that any Party or any of its Representatives receives a request from a governmental or regulatory authority, or is required by applicable law, regulation or legal process to disclose any Confidential Information other than as provided above (the foregoing, a "**Legal Requirement**"), such Party shall, to the extent legally permitted, provide the other Parties with prompt notice of such Legal Requirement.  To the extent a Legal Requirement occurs and is continuing, any Party may seek a protective order or other appropriate remedy (the foregoing, a "**Protective Order or Remedy**"), the costs of which shall be borne exclusively by the Party proposing such Protective Order or Remedy.  If, in the absence of a Protective Order or Remedy any Party or any of its Representative is nonetheless, based on the advice of legal counsel, legally compelled to disclose such Confidential Information, such Party shall and shall use commercially reasonable efforts to cause its Representative, as applicable, to furnish only that portion of the Confidential Information which is legally required and shall give the other Parties written notice (unless prohibited by law) of the Confidential Information to be disclosed as far in advance as practicable.

*[The remainder of this page is intentionally left blank.]*

**IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

Date: November 22, 2023

**GENESIS GLOBAL HOLDCO, LLC**

BY: /s/ *Arianna Pretto-Sakmann*
 ─────77A200507D6D40F...

TITLE: Chief Legal Officer

PRINT NAME: Arianna Pretto-Sakmann

Date: November 22, 2023

**GENESIS GLOBAL CAPITAL, LLC**

BY: /s/ *Arianna Pretto-Sakmann*
 ─────77A200507D6D40F...

TITLE: Chief Legal Officer

PRINT NAME: Arianna Pretto-Sakmann

Date: November 22, 2023

**GENESIS ASIA PACIFIC PTE. LTD.**

BY: /s/ *Arianna Pretto-Sakmann*
 ─────77A200507D6D40F...

TITLE: Director

PRINT NAME: Arianna Pretto-Sakmann

Date: November   , 2023

**DCG**

BY: /s/

TITLE:

PRINT NAME:

22

**3AC DEBTOR**

Date: November 21, 2023

BY: /s/

TITLE: Solely in his capacity as Joint Liquidator of the 3AC Debtor

PRINT NAME: Russell Crumpler

BY: /s/

TITLE: Solely in his capacity as Joint Liquidator of the 3AC Debtor

PRINT NAME: Christopher Farmer

**JOINT LIQUIDATORS**

Date: November 21, 2023

BY: /s/

PRINT NAME: Russell Crumpler

BY: /s/

PRINT NAME: Christopher Farmer

**IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

Date: November 21, 2023

**DCG**

BY: _____

TITLE: Vice President, Head of Legal

PRINT NAME: Mike Katz

*[Signature page to 3AC Settlement Agreement]*

**Exhibit A-1**

**Original Proofs of Claim**

| Claim No. | Genesis Debtor |
|-----------|----------------|
| 523 | Genesis Global Holdco |
| 526 | Genesis Global Capital LLC |
| 527 | Genesis Asia Pacific, Ltd. |

**Exhibit A-2**

**Amended Proofs of Claim**

| Claim No. | Genesis Debtor |
|-----------|----------------|
| 982 | Genesis Global Holdco LLC |
| 981 | Genesis Global Capital LLC |
| 990 | Genesis Asia Pacific, Ltd. |

**Exhibit B**

**Form of Joinder Agreement**

      This Joinder Agreement (the "Joinder Agreement") to the Settlement Agreement and Release, dated as of [____], 2023 (the "Settlement Agreement"), by and among the Genesis Debtors, DCG, and the 3AC Debtor (acting through the Joint Liquidators), is executed and delivered by [____] (the "Joining Party") to the Genesis Debtors as of [____]. Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Settlement Agreement.

1.    Agreement to be Bound. The Joining Party shall hereafter be deemed to be a "Party" for all purposes under the Settlement Agreement and hereby agrees to be bound by all of the terms and conditions of the Settlement Agreement in such capacity and any representations, warranties, and covenants therein. Notwithstanding anything to the contrary in the Settlement Agreement, entry into this Joinder Agreement shall not require or otherwise cause a Joining Party to release any Claims against any Party other than any Claims related to or arising out of the Released 3AC Claims.

2.    Governing Law. This Joinder Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to any conflicts of law provisions which would require the application of the law of any other jurisdiction.

*[Remainder of Page Intentionally Left Blank]*

Exhibit B

IN WITNESS WHEREOF, the Joining Party has caused this Joinder Agreement to be executed as of the date first written above.

Name of Joining Party:   _____

By:   _____

Name:   _____

Title:   _____


Notice Address:

_____

_____

_____

Fax:   _____

Attention:   _____


With a copy to:

_____

_____

Fax:   _____

Attention:   _____

## **EXHIBIT B**
**Blackline of the Executed Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "**Settlement Agreement**") is made and entered into by and among: (i) Genesis Global Holdco, LLC ("**Holdco**") and its affiliated debtors and debtors-in-possession (collectively, the "**Genesis Debtors**") in the jointly-administered chapter 11 cases proceeding under the caption *In re Genesis Global Holdco, LLC, et al.* Case No. 23-10063 (SHL) (the "**Genesis Bankruptcy Proceeding**"); (ii) Digital Currency Group, Inc. ("**DCG**"); (iii) Three Arrows Capital, Ltd. (in liquidation) (the "**3AC Debtor**"); and (iv) Christopher Farmer and Russell Crumpler of Teneo (BVI) Limited, in their respective capacities as the duly authorized joint liquidators of the 3AC Debtor (the "**Joint Liquidators**" and together with the 3AC Debtor, the Genesis Debtors, and DCG, each a "**Party**" and collectively the "**Parties**") appointed in the British Virgin Islands ("**BVI**") liquidation of the 3AC Debtor (the "**BVI Proceeding**"), which has been recognized as a foreign main proceeding pursuant to chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") in the case captioned *In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y. 2022);[1]

**WHEREAS**, on June 27, 2022, the 3AC Debtor commenced the BVI Proceeding before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "**BVI Court**"), and the BVI Court appointed Russell Crumpler and Christopher Farmer as the 3AC Debtor's Joint Liquidators;

**WHEREAS,** Genesis Asia Pacific Pte. Ltd. ("**GAP**") and DCG are party to that certain Assignment & Assumption Agreement, dated June 30, 2022 (the "**June A&A Agreement**"), pursuant to which, among other things, GAP assigned to DCG, and DCG assumed, all of GAP's rights and obligations in relation to the Assumed Liability (as defined in the June A&A Agreement);

**WHEREAS**, ~~Genesis Asia Pacific Pte. Ltd. ("GAP")~~ and DCG are party to that certain Assignment & Assumption Agreement dated as of July 14, 2022 (the "**A&A Agreement**"), pursuant to which, among other things, GAP assigned to DCG, and DCG assumed, all of GAP's right, title, benefit, privileges and interests in and to, and all of GAP's burdens, obligations and liabilities in connection with the Pledge Agreements and related Collateral under the Agreements and the Pledge Agreements (all as defined in the A&A Agreement);

**WHEREAS**, DCG disputes that it assumed GAP's obligations regarding the foreclosure of related Collateral under the Agreements and the Pledge Agreements (all as defined in the A&A Agreement) ~~prior to~~ in connection with DCG's entry into the A&A Agreement;

████████████████████████████████

---

[1]   Capitalized terms used herein shall have the meanings ascribed to such terms in this Settlement Agreement

WHEREAS, on January 19, 2023, the Genesis Debtors filed their respective petitions for voluntary relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, initiating the Genesis Bankruptcy Proceeding before the Honorable Sean H. Lane (the "**Bankruptcy Court**");

WHEREAS, on March 6, 2023, Alameda Research Ltd. filed a Complaint in the Court of Chancery of the State of Delaware against Grayscale Investments, LLC ("**Grayscale**"), DCG, Michael Sonnenshein, and Barry Silbert, asserting, among other things, breach of contract, breach of implied covenant, breach of fiduciary duty, and other ~~declaratory judgments~~claims in connection with allegations that Grayscale overcharged management fees and failed to operate a redemption program (such claims together with any other claims that could have been or could in the future be asserted relating to Grayscale, the "**Grayscale Claims**");

WHEREAS, on or about May 22, 2023, the Joint Liquidators filed proofs of claim on behalf of the 3AC Debtor against the Genesis Debtors in the Genesis Bankruptcy Proceeding as set forth in **Exhibit A-1** attached hereto (collectively, the "**Original Proofs of Claim**") in an amount exceeding $1.0 billion in aggregate;

WHEREAS, on May 25, 2023, the Joint Liquidators filed an application in the BVI Court seeking the BVI Court's sanction to commence proceedings in respect of the 3AC Debtor under Chapter 11 of the Bankruptcy Code (the "**BVI Sanction Application**");

WHEREAS, on July 19, 2023, the Genesis Debtors filed the *Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "**First 3AC Claims Objection**") (ECF No. 530), which sought to expunge the Original Proofs of Claim and was subsequently withdrawn by the Genesis Debtors as moot following the filing of the Second 3AC Claims Objection (ECF No. 661);

WHEREAS, on July 26, 2023, following a hearing before the BVI Court on July 21, 2023 and July 24, 2023, the BVI Sanction Application was dismissed by the BVI Court and permission to commence Chapter 11 proceedings was thereby refused (the "**BVI Sanction Decision**");

WHEREAS, on August 17, 2023, the Joint Liquidators filed an appeal in relation to the BVI Sanction Decision before the Eastern Caribbean Court of Appeal ("**EC Court of**

**Appeal**") (case number BVIHCMAP2023/0018 - the "**BVI Sanction Appeal**"), and that appeal remains extant and is opposed by DCG;

WHEREAS, on or about August 18, 2023, the Joint Liquidators filed amended proofs of claim on behalf of the 3AC Debtor against the Genesis Debtors in the Genesis Bankruptcy Proceeding as set forth in **Exhibit A-2** attached hereto (collectively, the "**Amended Proofs of Claim**" and, together with the Original Proofs of Claim, the "**3AC Proofs of Claim**"), asserting claims in the aggregate amount of at least $994,000,000, plus unliquidated amounts;

WHEREAS, on September 1, 2023, the Genesis Debtors filed the *Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "**Second 3AC Claims Objection**") (ECF No. 658), which sought to expunge the 3AC Proofs of Claim;

WHEREAS, on September 6, 2023, the Joint Liquidators, on behalf of the 3AC Debtors, filed the *Motion of the Foreign Representatives of Three Arrows Capital, Ltd. For Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* (the "**Lift Stay Motion**") (ECF No. 678), which motion the Genesis Debtors opposed (ECF No. 720);

WHEREAS, on September 15, 2023, the Joint Liquidators, on behalf of the 3AC Debtors, filed the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Issuance of Subpoenas for the Production of Documents By the Debtors* (the "**Rule 2004 Motion**") (ECF No. 711), which motion the Genesis Debtors opposed (ECF No. 763);

WHEREAS, the 3AC Debtor has asserted claims against the Genesis Debtors and DCG in the ▮▮▮▮▮▮ and has reserved the right to pursue other claims against the Genesis Debtors and DCG in the BVI Court and under certain United States bankruptcy laws (if applicable) in courts of competent jurisdiction;

WHEREAS, in relation to the BVI Sanction Appeal: ▮▮▮▮▮▮



WHEREAS, each Party has an interest in avoiding the cost and expense that would be associated with litigation of the novel and complex issues raised by the litigation between the Parties;

WHEREAS, without any admission by any Party, and subject to the terms of this Settlement Agreement, the 3AC Debtor and the Genesis Debtors desire to fully and finally resolve all disputes relating to loan activities in connection with (i) the Master Loan Agreement, dated January 1, 2019, by and between Genesis Global Capital LLC ("**GGC**") as Lender, and the 3AC Debtor, as Borrower (the "**2019 MLA**"); (ii) the Master Loan Agreement, dated January 24, 2020, by and between GAP, as Lender, and the 3AC Debtor, as Borrower (the "**2020 MLA**"); (iii) the A&A Agreement, (iv) the Amendment to 2019 MLA, dated January 27, 2022, by and between GAP, as Lender, and the 3AC Debtor, as Borrower (the "**2019 Amendment**"); and (v) all loan term sheets and pledge agreements entered into in connection with the 2019 MLA and 2020 MLA (the foregoing, collectively, the "**Loan Documents**"), which disputes include, for the avoidance of doubt, as between the 3AC Debtor and the Genesis Debtors, the claims set forth in the 3AC Proofs of Claim and the ███████████ (the "**Claims Against Genesis**");

WHEREAS, without any admission by any Party, and subject to the terms of this Settlement Agreement, the 3AC Debtor and the Joint Liquidators, on one hand, and DCG, on the other hand, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

NOW, THEREFORE, in consideration of the above and the respective promises, conditions, terms, and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

## 1.    AGREEMENT OF THE PARTIES[2]

---

[2] The terms of the form of Settlement Agreement remain subject to ongoing negotiation between the 3AC Debtor, the Joint Liquidators, and DCG, including without limitation the provisions that have been sealed or redacted. The parties' consent to file this version of the form of Settlement Agreement with the Motion is not an indication, and shall not be deemed or imputed to be, any agreement or intent on the part of any of the 3AC Debtor, the Debtors, the Joint Liquidators, or DCG as a waiver of any rights and defenses, including to negotiate different language in the agreement, nor a waiver of any rights under Rule 408 of the Federal Rules of Evidence and other rules of similar import. The Debtors, 3AC and the Joint Liquidators, and DCG agree that the terms contained in the form of Settlement Agreement shall not be used against or otherwise prejudice the Debtors, the 3AC Debtor, the Joint Liquidators, or DCG in any way, shape, form, or manner.

(a)    <u>Allowed 3AC Claim</u>. On the Settlement Effective Date, the 3AC Debtor shall have an allowed general unsecured claim in the Genesis Bankruptcy Proceeding against GGC in the amount of $33,000,000 (the "**<u>Allowed 3AC Claim</u>**"), which claim shall be freely transferable, subject to section 1(l) below. The Allowed 3AC Claim shall not be subject to subordination, recharacterization, or disallowance based on any acts or occurrences prior to the Settlement Execution Date, and the Genesis Debtors and DCG shall not seek or support, directly or indirectly, treatment of the Allowed 3AC Claim other than as provided in this Settlement Agreement.

(b)    <u>Admitted DCG Claim</u>.  On the Settlement Effective Date, the unsecured DCG Claim against





    (d)    <u>AVAX and NEAR Tokens</u>.  On the Settlement Effective Date, each of ▇ and the Genesis Debtors shall forever and irrevocably relinquish and release, in favor of the 3AC Debtor, any claim, lien, security interest, encumbrance, entitlement, or other right of any kind whatsoever that ▇ or any of the Genesis Debtors may have or assert to the AVAX tokens (the "**<u>AVAX Tokens</u>**") and the NEAR tokens subject to that certain Pledge Agreement by and between GAP, as secured party, and the 3AC Debtor, as pledgor, dated as of January 27, 2022, which are described on <u>Schedule 1(d)</u> hereto.

    (e)

Effective Date, it is conflicted with respect to, and shall not participate in any



(g)    <u>Genesis Debtors Cooperation</u>.    The Genesis Debtors shall use commercially reasonable efforts to cooperate in good faith with the Joint Liquidators by, subject to applicable confidentiality obligations and with at least five (5) business days' prior written notice, consenting to the Joint Liquidators' use, for purposes of pursuing claims against third parties, of non-privileged documents and information disclosed to the Joint Liquidators, whether such disclosure occurred in connection with the Parties' litigation of the Released 3AC Claims or otherwise.    Upon the Genesis Debtors' request, the Joint Liquidators shall seek to have such

documents treated confidentially and filed under seal in any applicable litigation or proceeding. The Genesis Debtors shall not cooperate with or support, directly or indirectly, any party in litigation adverse to the 3AC Debtor with respect to matters relating to the DCG Claim and the Released 3AC Claims, except as may be required by applicable law. Notwithstanding anything to the contrary in this Settlement Agreement, any rights of the Joint Liquidator to call as a third party witness or seek third party evidence from the Genesis Debtors or any of their current or former affiliates, officers, directors, principals, equity holders, employees, agents, advisors, consultants, representatives, or other professionals (collectively, the "**Genesis Third Party Targets**") in any litigation relating to the BVI Proceeding, whether in the BVI Court or another court of competent jurisdiction, are expressly reserved, as are all of the defenses and objections of the Genesis Debtors thereto. The Genesis Debtors shall not oppose or interfere with, directly or indirectly, the Joint Liquidators efforts to conduct informal interviews (each, a "**Genesis Interview**") with solely those current employees (who are separately represented by counsel) or former employees.Genesis employees (each of the foregoing, a "**Genesis Interviewee**"); *provided, that*, the Joint Liquidators shall provide reasonable advance written notice to the Genesis Debtors (email is sufficient) of any Genesis Interviews they would like to conduct with a Genesis Interviewee; *provided, further*, that notwithstanding anything to the contrary herein, this provision shall not and shall not be deemed to limit, prevent, or constrain the Genesis Debtors from (a) reaching out to, or discussing with, the Joint Liquidators or the 3AC Debtor any Genesis Interview or Genesis Interviewee, (b) in the event a Genesis Interviewee reaches out to the Genesis Debtors, discussing with such Genesis Interviewee his or her Genesis Interview, (c) attending or otherwise participating in connection with any Genesis Interview of a current Genesis employee, or (d) taking any steps necessary to protect the Genesis Debtors' attorney client privilege, work product, confidentiality policies or assert any other applicable privilege or protection; *provided, further* that the Joint Liquidators' rights are fully reserved with respect to any action set forth in the preceding proviso.

(h)     3AC Debtors and Joint Liquidators Cooperation. The 3AC Debtors and Joint Liquidators (in their capacity as such) shall use commercially reasonable efforts to cooperate in good faith with the Genesis Debtors and DCG by, subject to applicable confidentiality obligations and with at least five (5) business days' prior written notice, consenting to the Genesis Debtors' or DCG's use, for purposes of pursuing or defending against claims, of non-privileged documents and information disclosed to the Genesis Debtors or DCG, whether such disclosure occurred in connection with the Parties' litigation of the Claims Against Genesis or otherwise. Upon the Joint Liquidators' request, the Genesis Debtors or DCG, as applicable, shall seek to have such documents treated confidentially and filed under seal in any applicable litigation or proceeding. The Joint Liquidators, in their capacity as such, shall not cooperate with or support, directly or indirectly, any party in litigation adverse to the Genesis Debtors or DCG with respect to matters relating to the Claims Against Genesis, except as may be required by applicable law. Notwithstanding anything to the contrary in this Settlement Agreement, any rights of the Genesis Debtors or DCG to call as a third party witness or seek third party evidence from the Joint Liquidators and the 3AC Debtor or DCG or any of their current or former affiliates, officers, directors, principals, equity holders, employees, agents, advisors, consultants, representatives, or other professionals (collectively, the "**3AC Third Party Targets**") in any litigation relating to the Genesis Bankruptcy Proceeding or other litigation to which the Genesis Debtors or DCG are a party, whether in the Bankruptcy Court or another court of competent

jurisdiction, are expressly reserved, as are all of the defenses and objections of the 3AC Third Party Targets thereto.



(i)

(iii)    DCG shall use commercially reasonable efforts in good faith to assist the Joint





(j)    <u>Pro Rata Distributions</u>. The Allowed 3AC Claim shall (i) be entitled to receive pro rata distributions (in the form of cash) with all other allowed general unsecured claims against GGC (other than Gemini Lender Claims (as defined in the Debtors' Amended Joint Chapter 11 Plan, filed on June 13, 2023 in Genesis Bankruptcy Proceeding (ECF No. 427)) to the extent Gemini Lenders are separately classified pursuant to any chapter 11 plan that becomes effective in the Genesis Bankruptcy Proceeding (the "**Genesis Plan**") and (ii) shall be entitled to all treatment afforded to allowed general unsecured claims in its respective class and shall not be separately classified from other general unsecured claims owed fiat against GGC (other than Claims of Gemini Lenders, which may be separately classified, and Claims separately classified solely for purposes of administrative convenience, if any) or otherwise treated in any disparate or discriminatory way as compared to other general unsecured claims against GGC under the Genesis Plan, *provided* that (x) the Parties may mutually agree in writing that the consideration comprising the distributions on account of the Allowed 3AC Claim may be in a form other than cash, and (y) in the event that the Genesis Plan includes an early payout option at a discount (the "**Early Payout Option**"), the Early Payout Option shall not be available with respect to the Allowed 3AC Claim unless the Early Payout Option is otherwise generally available to all

similarly situated holders of allowed general unsecured claims in an amount equal to or greater than the Allowed 3AC Claim. Notwithstanding the foregoing, in the event the Genesis Plan includes the Early Payout Option and it is not available to the Allowed 3AC Claim, the 3AC Debtor (and the Joint Liquidators on its behalf) reserves its rights and shall be entitled to object to the Early Payout Option on the grounds that it constitutes unfair discrimination and the Genesis Debtors reserve their rights and shall be entitled to argue that the Early Payout Option does not constitute unfair discrimination.

(k)    *Transfers.* Effective as of the Settlement Effective Date, the rights to the Allowed 3AC Claim shall be freely transferable (in whole or in part), *provided* that any transferee of any portion of, or interest in, the Allowed 3AC Claim (each, a "**Transferee**") shall, as a condition to such transfer (each, a "**Transfer**"), agree to be bound by the terms of this Settlement Agreement with respect to the acquired portion of the Allowed 3AC Claim, *mutatis mutandis*, by executing and delivering to the Genesis Debtors a joinder agreement substantially in the form attached hereto as **Exhibit B** (each, a "**Joinder**"). Upon compliance with the foregoing, the 3AC Debtor and the Joint Liquidators shall be deemed to relinquish their rights under this Settlement Agreement with respect to the acquired portion of the Allowed 3AC Claim and to the extent of such transferred rights. Notwithstanding anything to the contrary herein, entry into a Joinder shall not require or otherwise cause a Transferee to release any Claims against any Party other than the Released 3AC Claims.

(l)    *Covenant Not to Object to Genesis Plan.* As of the Settlement Effective Date, the 3AC Debtor and the Joint Liquidators shall not object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the Genesis Debtors that is consistent with this Settlement Agreement in all respects; *provided* that nothing in this Settlement Agreement (and neither a vote to accept any such chapter 11 plan nor the acceptance of such plan) shall be construed to limit the 3AC Debtor's rights to appear as a party-in-interest in any matter to be adjudicated in the Genesis Bankruptcy Proceeding, so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Settlement Agreement and are not for the purpose of hindering, delaying, or preventing the consummation of the Settlement Agreement.

(m)    *Settlement Motions.* Effective as of the date of execution of this Settlement Agreement by each Party, (i) the Genesis Debtors agree to seek prompt approval of this Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019, through a motion in the Genesis Bankruptcy Proceeding in form and substance reasonably acceptable to DCG and the Joint Liquidators, which shall include a request to seal all material terms as between DCG and the 3AC Debtor contained in this Settlement Agreement (the "**Rule 9019 Motion**"), and (ii) the Joint Liquidators agree to seek prompt sanction of this Settlement Agreement by the BVI Court in the BVI Proceeding through an application in form and substance reasonably acceptable to DCG and the Genesis Debtors, which shall include a request to seal all material terms as between DCG and the 3AC Debtor contained in this Settlement Agreement. The Parties otherwise agree to cooperate and take such actions as are reasonably necessary (including in the event that an objection or other opposition is filed to the Rule 9019 Motion and/or any application seeking the BVI Court's sanction of the Settlement Agreement) to obtain court

12

approval of, and authority to enter into, this Settlement Agreement, and entry of the Approval Orders. The Joint Liquidators also agree to inform DCG and the Genesis Debtors of, and object to, any direct or indirect, formal or informal, objections or challenges to the Settlement Agreement and/or the Joint Liquidators' decision to enter into the Settlement Agreement and/or the Joint Liquidator's decision to admit the DCG Claim in the amount and on the terms set out in this Settlement Agreement and/or the Allowed 3AC Claim.

(n)    <u>Withdrawal of Motions and Claims</u>. No later than three (3) business days after the Settlement Effective Date, the Joint Liquidators and the Genesis Debtors, as applicable, shall withdraw or dismiss, as applicable, with prejudice (i) the Original Proofs of Claim, (ii) the Amended Proofs of Claim, (iii) the ▇▇▇▇,[3] (iv) the Second 3AC Claims Objection, (v) the arbitration proceeding commenced by GAP under the caption *Genesis Asia Pacific PTE. Ltd. v. Three Arrows Capital, Ltd.*, AAA/ICDR Case No. 01-22-0002-5568, (vi) the Lift Stay Motion, and (vii) the Rule 2004 Motion.

## 2.    RELEASES

(a)    <u>3AC Release of the Genesis Debtors</u>.  Subject to section 2(~~d~~e) herein, on the Settlement Effective Date, each of the 3AC Releasing Parties,[4] does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge the Genesis Releasing Parties (as defined herein) from, against, and in respect of any and all past and present ~~c~~Claims ~~(as defined in 11 U.S.C. § 101(5), a "**Claim**")~~, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, including any derivative claims asserted or assertable on behalf of the 3AC Debtor and/or the Joint Liquidators that the 3AC Debtor and/or the Joint Liquidators would have been legally entitled to assert in their own right and any claims based on alter ego, vicarious liability, or doctrine of similar import, that the 3AC Releasing Parties have or may have against the Genesis Releasing Parties since the beginning of time, under, arising out of, relating to, or in connection with the 3AC

---

[3]    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

[4]    "**3AC Releasing Parties**" means, collectively, and in each case in its capacity as such: (a) the 3AC Debtor, (b) the Joint Liquidators (in their respective capacities as such), and (c) (x) with respect to each of the foregoing persons or entities in clauses (a)-(b), each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and (z) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x)-(y), such person or entity's respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.

13

Proofs of Claim or any other Claim that could be asserted, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in or in connection with any of the foregoing, in all cases other than the Allowed 3AC Claim and as otherwise provided in this Settlement Agreement.

(b)





(d)    <u>Genesis Release.</u>  Subject to section 2(de) herein, on the Settlement Effective Date, each of the Genesis Releasing Parties,[6] does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge the 3AC Releasing Parties (all such released persons and entities collectively, the "**<u>Genesis Released Parties</u>**") from, against, and in respect of any and all past and present Claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, including any derivative claims asserted or assertable on behalf of the Genesis Debtors that the Genesis Debtors would have been legally entitled to assert in its own right and any claims based on alter ego, vicarious liability, or doctrine of similar import, that the Genesis Releasing Parties have or may have against the Genesis Released Parties since the beginning of time, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with any of the foregoing, in all cases other than as otherwise provided in this Settlement Agreement.

(e)    <u>Exceptions to Mutual Release</u>.

(i)    Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect their respective obligations under this Settlement Agreement or the Parties' respective rights to bring any Claims or other causes of action arising out of or in connection with a breach of this Settlement Agreement.

(ii)    

---

[6]    "**<u>Genesis Releasing Parties</u>**" means, collectively, and in each case in its capacity as such:  (a) the Genesis Debtors and (b)(x) with respect to each of the foregoing persons or entities, each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a) and (b)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and (z) with respect to each of the foregoing persons or entities in clauses (a), (b)(x)-(y), such person or entity's respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.



(iii)    Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect any Claims that any Genesis Debtor may have against any other Genesis Debtor, which claims are hereby expressly and fully preserved to the same extent as if this Settlement Agreement had not been executed.

(iv)    Notwithstanding any other provision of this Settlement Agreement, for the avoidance of doubt, the 3AC Debtor, the Joint Liquidators, and their subsidiaries and affiliates do not release and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or causes of action against the 3AC Debtor or any of the 3AC Debtor's past, present and future agents, heirs, affiliates, employees, founders, executives, officers, directors, equity holders, executors, administrators, liquidators, conservators, attorneys, advisors, successors and assigns.

(v)    Notwithstanding any other provision of this Settlement Agreement, for the avoidance of doubt, the Genesis Debtors, their subsidiaries and affiliates do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or causes of action that any Genesis Debtor and any of their subsidiaries and affiliates has against any of DCG or DCG's past, present and future agents, heirs, affiliates, employees, founders, executives, officers, directors, equity holders, executors, administrators, liquidators, conservators, attorneys, advisors, successors and assigns.

(vi)    Notwithstanding any other provision of this Settlement Agreement, for the avoidance of doubt, DCG, their subsidiaries and affiliates do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or causes of action that DCG and any of their subsidiaries and affiliates has against any of the Genesis Debtors or any of the Genesis Debtors' past, present and future agents, heirs, affiliates, employees, founders, executives, officers, directors, equity holders, executors, administrators, liquidators, conservators, attorneys, advisors, successors and assigns.

(f)    

## 3.      REPRESENTATIONS & WARRANTIES

(a)      <u>Mutual Representations and Warranties of All Parties</u>. Each Party represents and warrants to each other Party that as of the Settlement Execution Date (as defined herein):

(i)      subject to the Approval Orders, it has the requisite organizational power and authority to enter into this Settlement Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Settlement Agreement;

(ii)      subject to the Approval Orders, this Settlement Agreement constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms;

(iii)      the execution and delivery of this Settlement Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate or other organizational action on its part;

(iv)      the execution, delivery, and performance by it of this Settlement Agreement does not violate any provision of law, rule or regulation applicable to it or any of its affiliates or its certificate of incorporation, bylaws or other organizational documents or those of any of its affiliates; and

(v)      before executing this Settlement Agreement, it has been fully informed of its terms, contents, conditions and effects, it has had a full and complete opportunity to discuss this settlement with its attorney or attorneys, it is not relying in any respect on any statement or representation made by any other Party and no promise or representation of any kind has been made to such Party separate and apart from what is expressly contained in this Settlement Agreement.

## 4.      MISCELLANEOUS PROVISIONS

(a)      <u>No Admission of Liability</u>. The undersigned Parties each acknowledge and agree that the matters set forth in this Settlement Agreement constitute the settlement and compromise of potentially disputed claims and defenses, that this Settlement Agreement is not an admission or evidence of liability or infirmity by any Party regarding any claim or defense, and that the Settlement Agreement shall not be offered or received in evidence by or against any Party for any purpose except as reasonably necessary to enforce its terms.

(b)      <u>Specific Performance</u>. It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Settlement Agreement by any Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach of this Settlement Agreement, including an order of the Bankruptcy Court or another court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.  Each Party also agrees that it will not (i) seek, and will waive any requirement for, the securing or posting of a bond in connection with any Party seeking or obtaining such relief or (ii) raise as a defense thereto the necessity of

17

proving the inadequacy of money damages as a remedy. For the avoidance of doubt, in the event of a breach of this Settlement Agreement by any Party (as determined by a Final Order ~~as defined in the Debtors' Amended Joint Chapter 11 Plan, filed on June 13, 2023 in the Genesis Bankruptcy Proceeding (ECF No. 427) (a "**Final Order**")~~), all costs, including legal fees, relating to enforcement of the Settlement Agreement shall be borne solely by such breaching Party.

(c)    <u>Damages</u>. Notwithstanding anything to the contrary in this Settlement Agreement, none of the Parties or any of their respective successors or assigns shall make a claim against, or seek to recover from, any other Party or such Party's the successors, assigns, affiliates, directors, officers, employees, counsel, representatives, agents, or attorneys-in-fact of any of them for any special, indirect, consequential, exemplary, or punitive damages or damages for lost profits in respect of any claim for breach of contract or any other theory of liability arising out of or related to this Settlement Agreement.

(d)    <u>Further Assurances</u>. The Parties shall use their reasonable best efforts to take, or cause to be taken, all appropriate action to do or cause to be done all things necessary under applicable law, and to execute and deliver such documents and other papers, in each case, as may be required to carry out the provisions of this Settlement Agreement and consummate and make effective the transactions contemplated hereby.

(e)    <u>Execution in Counterparts</u>. This Settlement Agreement may be executed in counterparts by one or more of the Parties and all such counterparts when so executed shall together constitute the final Settlement Agreement, as if one document had been signed by all Parties; and each such counterpart, upon execution and delivery, shall be deemed a complete original, binding the Parties subscribed thereto upon the execution by all Parties to this Settlement Agreement. Delivery of this signed agreement by facsimile transmission or by.pdf,.jpeg,.TIFF or other form of electronic mail attachment will be deemed effective as delivery of a manually executed counterpart prior to and in the absence of manual delivery and will be binding upon the parties.

(f)    <u>Governing Law</u>. This Settlement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York).

(g)    <u>Consent to Venue</u>. Each Party irrevocably and unconditionally submits to and accepts the non-exclusive jurisdiction of the Bankruptcy Court solely for any action, suit or proceeding brought by the Genesis Debtors, the 3AC Debtor, or the Joint Liquidators arising out of or based upon such Party's breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding. Each Party irrevocably and unconditionally submits to and accepts the non-exclusive jurisdiction of the BVI Court solely for any action, suit, or proceeding brought by the 3AC Debtor or the Joint Liquidators arising out of or based upon DCG's breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction

over it in connection with such an action, suit or proceeding.  Each Party irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the BVI Court solely for

Joint Liquidators' breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding.

(h)    Trial by Jury Waived. EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF OR RELATING TO THIS SETTLEMENT AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER IN CONTRACT OR IN TORT, IN LAW OR IN EQUITY OR GRANTED BY STATUTE). EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND EACH OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS SETTLEMENT AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(i)    Notices. Any notices required hereunder shall be sent by overnight courier, return receipt requested, and by email, to the following:

(i)    If to any Genesis Debtor:

Arianna Pretto-Sakmann
Genesis Global Holdco, LLC
~~Arianna Pretto-Sakmann~~
~~Genesis Global Holdco, LLC~~
~~250 Park Avenue South, 5th~~175 Greenwich St., 38th Floor
New York, NY ~~10003~~10007
arianna@genesistrading.com

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225 2416
(212) 225 2929
(212) 225 2872
(212) 225-2354
soneal@cgsh.com
lbarefoot@cgsh.com

jvanlare@cgsh.com
aweaver@cgsh.com

(ii)    If to DCG:

[ADDRESS]
Attn: [____]
E-mail: [____]

Digital Currency Group, Inc.
290 Harbor Drive
Stamford, CT 06902
Attn:  Mike Katz, Ryan Jolly
Email:  mike@dcg.co, ryan@dcg.co

with copies to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue,
New York, New York 10153
Attn: Jeffrey D. Saferstein, Ronit J. Berkovich, Jessica Liou
E-mail: jeffrey.saferstein@weil.com, ronit.berkovich@weil.com,
jessica.liou@weil.com

(iii)    If to the 3AC Debtor:

Russell Crumpler
Christopher Farmer
c/o Teneo (BVI) Limited
Banco Popular Building, 3rd Floor
Road Town, Tortola, British Virgin Islands, VG-1110
E-mail: russell.crumpler@teneo.com, Christopher.farmer@teneo.com

with copies to:

Latham & Watkins LLP
1271 Avenue of the Americas, 32nd Floor
New York, New York 10020
Attn: Adam J. Goldberg, Brett Neve, Nacif Taousse
E-mail: adam.goldberg@lw.com; brett.neve@lw.com;
nacif.taousse@lw.com

(j)    Entire Agreement and Amendments. This Settlement Agreement constitutes the entire agreement and understanding between and among the Parties concerning the matters set forth herein and supersedes any prior agreements or understandings. This Settlement Agreement may not be amended or modified, nor may any of its provisions be waived, except in writing

signed by the Parties bound thereby, or by their respective authorized attorney(s), or other representative(s).

(k)     Severability. If any provision in this Settlement Agreement is determined to be invalid, inoperative or unenforceable, the remaining provisions of this Settlement Agreement shall remain in effect if both the economic and legal substance of this Settlement Agreement are not materially affected in any manner adverse to any Party. Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

(l)     Assignment. Neither this Settlement Agreement nor any of the rights and obligations of the Parties hereunder may be assigned by any Party without the prior written consent of all of the other Parties, which consent will not be unreasonably withheld, except that each Party shall have the right to assign any or all of its rights and delegate any or all of its obligations hereunder to any of its affiliates or any successor in interest (whether by merger, acquisition, asset purchase, or otherwise), *provided*, that no assignment to any affiliate or successor in interest shall relieve or discharge the assigning party from any of its obligations hereunder, *provided further*, that the Allowed 3AC Claim shall be freely transferable in accordance with Section 1(l) of this Settlement Agreement. Any Transfer in violation of this Settlement Agreement shall be void and of no force or effect.

(m)     Indemnification. In the event of the breach of this Settlement Agreement (as determined by a Final Order), the breaching Party will indemnify and hold harmless the non-breaching Party and any of its affiliates, officers, directors, employees, agents, and subsidiaries for any and all reasonable attorneys' fees and court costs arising out of or in connection with such breach.

(n)     Settlement Effective Date. The "**Settlement Effective Date**" shall occur on the date that both (i) signature pages executed by each of the Parties have been delivered to each of the other Parties,[7] and (ii) the Bankruptcy Court and the BVI Court have each entered an order (which order shall have become a final order not subject to any appeal, stay or vacatur) approving the Parties' entry into this Settlement Agreement, on terms and conditions consistent with this Settlement Agreement and otherwise reasonably acceptable to each Party (each, an "**Approval Order**" and together the "**Approval Orders**").

(o)     Confidentiality. Following the Settlement Execution Date, the Genesis Debtors, DCG, the 3AC Debtor, and the Joint Liquidators, and each of its respective Representatives, shall keep confidential, and shall not, and shall cause their affiliates not to, disclose, directly or indirectly, to any third party (i) any information related to the amount of the Admitted DCG Claim and/or the Subordinated Amount and (ii) any information otherwise subject to confidentiality restrictions in the BVI Proceeding (collectively, the "**Confidential Information**"), in each case without the other Parties' prior written consent; *provided*, *however*, that each Party may disclose the Confidential Information to such Party's directors, officers, affiliates, partners, employees, agents, advisors, attorneys, accountants, consultants, bankers,

---

[7]     The date on which the signature pages executed by each of the Parties have been delivered to each of the other Parties shall be the "**Settlement Execution Date**".

financial advisors, and insurers (the foregoing, the "**Representatives**"); *provided, further*, that the Genesis Debtors may disclose the Confidential Information to the Ad Hoc Group of Genesis Lenders (solely on a professionals'-eyes-only basis), the United States Trustee (on a confidential basis), the Official Committee of Unsecured Creditors appointed in the Genesis Bankruptcy Proceeding (on a confidential basis), and the Bankruptcy Court on a confidential basis (and the Genesis Debtors shall not waive or release any such confidentiality obligations without the prior written consent of the Joint Liquidators) and pursuant to any order entered by the Bankruptcy Court concerning the sealing of any information contained in this Settlement Agreement.  In the event that any Party or any of its Representatives receives a request from a governmental or regulatory authority, or is required by applicable law, regulation or legal process to disclose any Confidential Information other than as provided above (the foregoing, a "**Legal Requirement**"), such Party shall, to the extent legally permitted, provide the other Parties with prompt notice of such Legal Requirement.  To the extent a Legal Requirement occurs and is continuing, any Party may seek a protective order or other appropriate remedy (the foregoing, a "**Protective Order or Remedy**"), the costs of which shall be borne exclusively by the Party proposing such Protective Order or Remedy.  If, in the absence of a Protective Order or Remedy any Party or any of its Representative is nonetheless, based on the advice of legal counsel, legally compelled to disclose such Confidential Information, such Party shall and shall use commercially reasonable efforts to cause its Representative, as applicable, to furnish only that portion of the Confidential Information which is legally required and shall give the other Parties written notice (unless prohibited by law) of the Confidential Information to be disclosed as far in advance as practicable.

[*The remainder of this page is intentionally left blank.*]

**Exhibit A-1**

**Original Proofs of Claim**

| Claim No. | Genesis Debtor |
|-----------|----------------|
| 523 | Genesis Global Holdco |
| 526 | Genesis Global Capital LLC |
| 527 | Genesis Asia Pacific, Ltd. |

**Exhibit A-2**

**Amended Proofs of Claim**

| Claim No. | Genesis Debtor |
|---|---|
| 982 | Genesis Global Holdco LLC |
| 981 | Genesis Global Capital LLC |
| 990 | Genesis Asia Pacific, Ltd. |

## Exhibit B

### Form of Joinder Agreement

This Joinder Agreement (the "Joinder Agreement") to the Settlement Agreement and Release, dated as of [____], 2023 (the "Settlement Agreement"), by and among the Genesis Debtors, DCG, and the 3AC Debtor (acting through the Joint Liquidators), is executed and delivered by [____] (the "Joining Party") to the Genesis Debtors as of [____]. Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Settlement Agreement.

1.    <u>Agreement to be Bound</u>. The Joining Party shall hereafter be deemed to be a "<u>Party</u>" for all purposes under the Settlement Agreement and hereby agrees to be bound by all of the terms and conditions of the Settlement Agreement in such capacity and any representations, warranties, and covenants therein. Notwithstanding anything to the contrary in the Settlement Agreement, entry into this Joinder Agreement shall not require or otherwise cause a Joining Party to release any Claims against any Party other than any Claims related to or arising out of the Released 3AC Claims.

2.    <u>Governing Law</u>. This Joinder Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to any conflicts of law provisions which would require the application of the law of any other jurisdiction.

*[Remainder of Page Intentionally Left Blank]*

Exhibit B

IN WITNESS WHEREOF, the Joining Party has caused this Joinder Agreement to be executed as of the date first written above.

Name of Joining Party: _____

By: _____

Name: _____

Title: _____


Notice Address:

_____

_____

_____

Fax: _____

Attention: _____


With a copy to:

_____

_____

Fax: _____

Attention: _____

Exhibit B