**Hearing Date: December 13, 2023 at 2:00 p.m. (Prevailing Eastern Time)**
**Objection Deadline: December 6, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### NOTICE OF DEBTORS' MOTION FOR AN ORDER APPROVING RESTRICTIONS ON CERTAIN ACTIONS OF DCG

   **PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

   **PLEASE TAKE FURTHER NOTICE** that on November 29, 2023, the Debtors filed the annexed *Debtors' Motion for an Order Approving Restrictions on Certain Actions of DCG* (the "Motion").  A hearing (the "Hearing") on the Motion will be held via Zoom before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175Greenwich Street, Floor 38, New York, NY 10007.

Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 on **December 13, 2023 at 2:00 p.m. (Eastern Time) (the "Hearing Date")**.

          **PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the Motion or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **December 6, 2023 at 4:00 p.m. (Eastern Time) (the "Objection Deadline")** and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order").

          **PLEASE TAKE FURTHER NOTICE** that, if no written objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit A to the Motion, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

          **PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

          **PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Debtors.

Dated:  November 29, 2023  
       New York, New York

                           */s/ Sean A. O'Neal*  
                           Sean A. O'Neal  
                           Luke A. Barefoot  
                           Jane VanLare  
                           CLEARY GOTTLIEB STEEN & HAMILTON LLP  
                           One Liberty Plaza  
                           New York, New York 10006  
                           Telephone: (212) 225-2000  
                           Facsimile: (212) 225-3999  

                           *Counsel to the Debtors and Debtors-in-Possession*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[2] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION FOR AN ORDER**
**APPROVING RESTRICTIONS ON CERTAIN ACTIONS OF DCG**

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), hereby submit this motion (the "Motion") and, in further support of this Motion, rely upon, and incorporate by reference, the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and

---

[2]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

along with the Islim Declaration and the Aronzon Declaration, the "<u>First Day Declarations</u>"), and respectfully state as follows:

## **Relief Requested**

1.      Pursuant to sections 105(a) and 362 of the Bankruptcy Code, the Debtors request entry of an order to establish procedures to protect the potential value of Holdco's interest in the federal net operating loss carryforwards of the DCG Group (as defined below) generated by Holdco (such carryforwards, the "<u>NOLs</u>"), substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>"), by generally barring Digital Currency Group, Inc. ("<u>DCG</u>") from (a) taking any actions that would reasonably be expected to cause Holdco to no longer be part of the U.S. federal income tax consolidated group of which DCG is the common parent, or any continuation of such group (the "<u>DCG Group</u>")  as provided under Section 1502 of the Title 26 of the United States Code (the "<u>Tax Code</u>") and regulations promulgated thereunder (a "<u>Deconsolidation</u>"), (b) taking any actions that would reasonably be expected to cause Holdco to undergo an "ownership change," within the meaning of  section 382 of the Tax Code, (c) claiming a worthless stock deduction with respect to its common units in Holdco ("<u>Common Units</u>") within the meaning of Sections 165(g) and 382(g)(4)(D) of the Tax Code (the restrictions described in clauses (a), (b) and (c) hereof, together the "<u>Restrictions</u>"), and (d) granting related relief.

## **JURISDICTION AND VENUE**

2.      The United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).  If the Court determines that it cannot, absent consent of the parties, enter final orders or judgments in connection herewith consistent with

Article III of the United States Constitution, the Debtors hereby consent to the Court entering a final order in connection with this Motion.

3.     Venue of these Chapter 11 Cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.     The statutory bases for the relief requested herein are sections 105, 362 and 541 of title 11 of the United States Code ("Bankruptcy Code"), Rules 3002 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## BACKGROUND

5.     Holdco is wholly owned by DCG and is part of a group of affiliated entities engaged in lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  DCG is the parent of the DCG Group, an affiliated group of corporations that have elected to join in the filing of a single, consolidated U.S. federal income tax return, and Holdco, as a direct subsidiary of DCG, is a member of that group.  Some of the other Debtors are also members of the DCG Group.  DCG is not a Debtor.

6.     On January 19, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  On February 3, 2023, the Office of the United States Trustee appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "Unsecured Creditors' Committee"), ECF No. 53.  These Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b), ECF No. 37.

3

7.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

## HOLDCO'S INTEREST IN THE NOLS

8.      As of the Petition Date, Holdco is estimated to have generated in excess of $700 million of NOLs in the course of Holdco's business.  Substantially all of the NOLs are directly attributable to the failure by the digital asset hedge fund Three Arrows Capital Ltd. to repay various loans extended to it by Genesis Asia Pacific Pte. Ltd. (an entity whose profits and losses are attributed to Holdco because it is disregarded as an entity separate from Holdco for U.S. federal income tax purposes).  *See* Section II(A)(i)(31) of the Islim Declaration.  Such NOLs are part of the NOLs of the DCG Group.  Holdco's interest in the NOLs is a valuable asset of Holdco's estate.

9.      The NOLs are valuable to the Debtors because Holdco may be able to use them to decrease its federal income tax liability in current and future years.  The Tax Code generally permits a corporation to utilize NOLs to reduce its tax liability in future periods, subject to certain limitations.  The NOLs, therefore, could translate into future tax savings that would enhance the Debtors' cash position for the benefit of all parties in interest and contribute to a successful reorganization.

10.     However, Holdco is not the only entity able to utilize the NOLs under federal tax law.  Under generally applicable U.S. tax law, a tax consolidated group is considered to have a single consolidated NOL that offsets income of all members of that consolidated group.[3]

---

[3]    For the 2022 tax year, DCG was able to utilize approximately $100 million of the NOLs to offset income unrelated to Holdco.

4

11.     For U.S. tax purposes, DCG and Holdco generally will continue to be part of the DCG Group so long as DCG owns at least 80% of the stock of Holdco (measured by both vote and value) either directly (as it currently does) or indirectly through a chain of 80%-owned U.S. corporate subsidiaries (which themselves would be members of the DCG Group).  *See* section 1504(a) of the Tax Code.  Therefore, if DCG were to transfer more that 20% of the Common Units of Holdco to a third party, that would give rise to a Deconsolidation.  DCG could also create a Deconsolidation, however, through measures that would prevent DCG from owning 80% of Holdco Common Units directly or through a chain of corporate subsidiaries, but that would be much less economically significant.  For example, DCG could Deconsolidate Holdco by transferring more than 20% of the Common Units of Holdco to an offshore corporate subsidiary, or to a partnership, even if that partnership itself were wholly-owned by members of the DCG Group.

12.     If a Deconsolidation were to occur during these Chapter 11 Cases, this could be to Holdco's detriment in at least two ways: first, the DCG Group could benefit from the NOLs, generated by Holdco during the periods in which Holdco is part of the DCG Group, without being responsible for any of Holdco's standalone tax liability for the taxable periods of Holdco following the Deconsolidation.  Second, if Holdco were to leave the DCG Group before the end of the DCG Group's taxable year, the DGC Group nonetheless would have access under applicable tax regulations to the NOLs for the remainder of that taxable year (as well as any additional net operating losses allocable to Holdco and attributable to a period ending on or before the Deconsolidation) without any corresponding responsibility for Holdco's tax liabilities following Deconsolidation — *e.g.*, if Holdco were deconsolidated from DCG's group on January 31, 2024, the DCG Group could use the NOLs (and potentially other net operating losses generated by

Holdco pre-Deconsolidation) to offset all the DCG Group's income arising in all of 2024, even though Holdco may be a separate taxpayer for 11 months of that taxable year. *See* section 1.1502-21(b)(2)(ii)(A) of the United States Treasury Regulations.

13.     Holdco has a property interest in the NOLs, which constitutes a valuable asset of the Debtors' estates. *See, e.g.*, *In re Prudential Lines, Inc.*, 928 F.2d 565, 571 (2d Cir. 1991) (corporations in an affiliated tax group "retain their separate identities and the property interests of the subsidiaries are not absorbed by the common parent" ; and "a corporation does not lose any interest it had in the right to use its NOLs to offset income because of its status in a group of affiliated corporations that file a consolidated tax return").

14.     For the reasons discussed above, the Debtors wish to prevent a Deconsolidation until the earlier of (a) the occurrence of the effective date of a chapter 11 plan in these Chapter 11 Cases; (b) dismissal of these Chapter 11 Cases; and (c) conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

15.     In addition to issues arising from a potential Deconsolidation, the value of Holdco's interest in the NOLs would be significantly limited if Holdco were to undergo an "ownership change" under section 382 of the Tax Code (an "Ownership Change").  Section 382 of the Tax Code limits the amount of a corporation's income that may be offset by the corporation's "pre-change losses" each year after a corporation undergoes an Ownership Change.  The limitation is determined by multiplying the value of the corporation by the long-term tax exempt rate that applies in the month of the ownership change. *See* section 382(b) of the Tax Code.  If Holdco were to undergo an Ownership Change, the section 382 limitation would reduce dramatically the value of Holdco's interest in the NOLs by restricting severely the amount of NOLs available each year to offset Holdco's post-change taxable income.

16.     An Ownership Change can occur for a number of reasons. One is that the percentage of a corporation's equity held by one or more of its "5% shareholders" (as defined in section 382 of the Tax Code) increases by more than 50% above the lowest percentage of the corporation's equity owned by those 5% shareholder at any time during a rolling three-year look-back period. *See* section 382(g) of the Tax Code. Another way an Ownership Change can occur is if a "50% shareholder" claims a worthless stock deduction under section 165(g) of the Code, since the party claiming the deduction is treated for tax purposes as having transferred the worthless stock to a new shareholder. *See* section 382(g)(4)(D) of the Tax Code. DCG is a "5% shareholder," as well as a "50% shareholder," with respect to Holdco. Accordingly, an Ownership Change could occur if (a) DCG transfers a sufficient portion of its Common Units or (b) DCG claims a worthless stock deduction with respect to its Common Units.

17.     Ownership Changes that occur *pursuant* to a confirmed chapter 11 plan (or any applicable bankruptcy court order), are subject to less restrictive rules under section 382 of the Tax Code, but Ownership Changes that occur *during* the pendency of a chapter 11 case are not eligible for the less restrictive rules. *See* sections 382(l)(5) and (6) of the Tax Code. As a result, to preserve the value of Holdco's interest in the NOLs, the Debtors seek entry of the Proposed Order, which generally would prohibit DCG from (i) taking any actions that would reasonably be expected to cause Holdco to undergo an Ownership Change, and, in furtherance of the foregoing, (ii) claiming a worthless stock deduction with respect to its Common Units pursuant to Sections 165(g) and 382(g)(4)(D) of the Tax Code.

18.     It is in the best interests of the Debtors and the creditors to prevent an Ownership Change at this time by implementing the Restrictions. The Restrictions would protect Holdco's ability to use the NOLs during the pendency of these Chapter 11 Cases and possibly thereafter.

The relief requested is narrowly tailored to preserve the value of the Debtors' estate without unduly burdening shareholders of the Debtors and DCG.

## BASIS FOR RELIEF

**A.      The Automatic Stay Bars Any Equity Transfer that Would Diminish or Limit the Debtors' Interest in the NOLs**

19.      Pursuant to the automatic stay provisions of section 362 of the Bankruptcy Code and pursuant to section 105 of the Bankruptcy Code, the Debtors seek authority to implement the Restrictions in order to protect against the occurrence of a Deconsolidation or an Ownership Change during the pendency of these Chapter 11 Cases, and thereby to preserve the value of the NOLs.

20.      Section 362 of the Bankruptcy Code enjoins all entities from, among other things, taking any action to obtain possession of property of or from the estate or to exercise control over property of the estate.  Section 541 of the Bankruptcy Code defines "property of the estate" to include all legal or equitable interests in property a debtor has as of the commencement date of a chapter 11 case, including tax net operating losses.

21.      Holdco's interest in the NOLs is valuable property of Holdco's estate and thus is protected, by operation of the automatic stay, from actions that would diminish or eliminate their value, including actions that would result in a Deconsolidation or an Ownership Change.  It is well established that a debtor's tax net operating losses are property of the debtor's estate protected by the automatic stay.  *See Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 574 (2d Cir. 1991) ("[W]here a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay."); *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424

8

(Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them."). The United States Court of Appeals for the Second Circuit, in its seminal decision, *In re Prudential Lines Inc.*, affirmed the application of the automatic stay to a debtor's tax benefits and upheld a permanent injunction prohibiting a parent corporation from taking a worthless stock deduction that would have adversely affected the ability of the parent corporation's subsidiary to utilize its tax net operating losses under the special relief provisions of section 382 of the Tax Code. *See* 928 F.2d at 573. As the Second Circuit stated:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention to "bring anything of value that the debtors have into the estate." Moreover, . . . [i]ncluding the right to a NOL carryforward as property of [a debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].

*Id.* (quoting H.R. Rep. No. 95-595, at 176 (1978)) (citations omitted); *see also In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'" (quoting *Prudential Lines*, 928 F.2d at 572) (alteration in original)); *Gibson v. United States (In re Russell)*, 927 F.2d 413, 417 (8th Cir. 1991) (concluding that the "right to carry forward the [debtor's] NOLs" was a "property interest" of the estate).

22.    In addition to finding that a debtor's tax net operating losses are protected by the automatic stay, the Second Circuit also held that, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, a bankruptcy court may issue a permanent injunction to protect such NOLs. *See Prudential Lines*, 928 F.2d at 574.

23.    In *In re Phar-Mor, Inc.*, 152 B.R. 924 (Bankr. N.D. Ohio 1993), the bankruptcy court applied similar reasoning and granted the debtors' motion to prohibit transfers of their stock

that could have had an adverse effect on their ability to utilize their tax net operating losses, even though the debtors' stockholders had not stated any intent to sell their stock and the debtors had not shown that a sale that would trigger an Ownership Change was pending. *See id.* at 927. Despite the "ethereal" nature of the situation, the court observed that "[w]hat is certain is that the NOL has a potential value, as yet undetermined, which will be of benefit to creditors and will assist debtors in their reorganization process. This asset is entitled to protection while Debtors move forward toward reorganization." *Id.* (emphasis added).

24. The bankruptcy court in *Phar-Mor* also concluded that, because the debtors were seeking to enforce the automatic stay, the more stringent requirements for preliminary injunctive relief did not apply:

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits. The key elements for a stay . . . are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

*Id.* at 926 (quoting *In re Golden Distribs., Inc.*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

25. Restrictions on actions with respect to a debtor's equity to protect a debtor against the possible loss of valuable tax attributes are regularly approved by this and other courts. *See, e.g.*, *In re RTI Holding Company, LLC*, Case No 20-12456 (JTD), ECF No. 657 (Bankr. D. Del. Nov. 5, 2020) (approving restrictions on transfers of and worthless stock deductions with respect to debtor equity by specified substantial shareholders of debtor); *In re Revlon, Inc.*, Case No. 22-10760 (DSJ), ECF No. 324 (Bankr. S.D.N.Y. Aug. 1, 2022) (approving restrictions on transfers of and worthless stock deductions with respect to debtor equity); *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (MEW), ECF No. 238 (Bankr. S.D.N.Y. Aug, 4, 2022) (same); *In re GTT Communications, Inc.*, Case No. 21-11880 (MEW), ECF No. 144 (Bankr. S.D.N.Y. Nov. 30, 2021)

(approving restrictions on transfers of and worthless stock deductions with respect to debtor equity); *In re Frontier Communications Corporation*, Case No. 20-22476 (RDD), ECF No. 372 (Bankr. S.D.N.Y. May 26, 2020) (same); *In re Centric Brands Inc.*, Case No. 20-22637 (SHL), ECF No. 175 (Bankr. S.D.N.Y. Jun. 10, 2020) (same); *In re Garrett Motion Inc.*, Case No. 20-12212 (MEW), ECF No. 259 (Bankr. S.D.N.Y. Oct. 21, 2020) (same); *In re Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW), ECF No. 287 (Bankr. D. Del. Mar. 6, 2018) (same).

26.     As these cases demonstrate, it is well settled that, pursuant to section 362(a)(3) of the Bankruptcy Code, the automatic stay enjoins actions that would adversely impact a Debtor's interest in the NOLs.

**B.     The Restrictions are Necessary and in the Best Interests of the Debtors, Their Estates, and Their Creditors**

27.     The Restrictions are necessary to preserve the value of Holdco's interest in the NOLs.  The value of Holdco's interest in the NOLs may be jeopardized unless the Restrictions are established immediately and *nunc pro tunc* to the date of filing the Motion.

28.     The NOLs could enhance the Debtors' prospects for a successful resolution of the Chapter 11 Cases if they are preserved during the pendency of the proceeding.  The relief requested herein is tailored to permit certain stock trading to continue, subject to applicable securities, corporate, and other laws.

29.     The Debtors respectfully submit that the Restrictions must be implemented as soon as practicable.  Even if an action (such as a transfer or worthless stock deduction with respect to DCG's Common Units) were to be null and void under section 362 of the Bankruptcy Code or as a result of a final order of the Court that prohibited such action retroactively to the Petition Date, under federal income tax law, such action nevertheless may be regarded as having occurred for tax purposes, in which event the Debtors' estates could suffer an irrevocable loss of value as a result

11

of the Debtors' inability to utilize the NOLs. Accordingly, if DCG undertakes an action that results in a Deconsolidation or an Ownership Change, Holdco's ability to realize value from the NOLs may be impaired permanently. The relief requested, therefore, is crucial to prevent an irrevocable diminution of the value of the Debtors' estates.

30.   It is in the best interests of the Debtors and the creditors to restrict actions by DCG that could result in a Deconsolidation or an Ownership Change before the effective date of a chapter 11 plan or any applicable bankruptcy court order. The Restrictions would preserve the value of the NOLs to Holdco. If a Deconsolidation or an Ownership Change were to occur, however, the annual amount of usable NOLs is expected to be adversely affected and, possibly, eliminated.

31.   Accordingly, the Debtors respectfully request that the Court enter an order, substantially in the form of the Proposed Order attached hereto, implementing the Restrictions until the earlier of (a) the occurrence of the effective date of a chapter 11 plan in these Chapter 11 Cases, (b) dismissal of these Chapter 11 Cases, or (c) conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

## **RESERVATION OF RIGHTS**

32.   Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a

12

concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserves their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

## NOTICE

33.     The Debtors have provided notice of this Motion in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 44].  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## NO PRIOR REQUEST

34.     No prior request for the relief requested herein has been made to this or any other Court.

*[The remainder of this page is intentionally left blank]*

## **CONCLUSION**

WHEREFORE, for the reason set forth herein the Debtors respectfully request that

this Court (a) enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, and

(b) grant such other and further relief as is just and proper.

Dated:    November 29, 2023          CLEARY GOTTLIEB STEEN & HAMILTON
              New York, New York

*Sean A. O'Neal*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and*
*Debtors-in-Possession*

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

## ORDER APPROVING RESTRICTIONS ON CERTAIN ACTIONS OF DCG

Upon consideration of the *Debtors' Motion for an Order Approving Restrictions on Certain Actions of DCG* (the "Motion")[2] filed by the above-captioned debtors (the "Debtors"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided, and upon the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Islim Declaration"), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Aronzon Declaration"), and the *Declaration of*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

*Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (the "Leto Declaration," and along with the Islim Declaration and the Aronzon Declaration, the "First Day Declarations"); and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      DCG is barred from (i) taking any actions that would reasonably be expected to cause DCG and Holdco to no longer be part of the tax consolidated group of which DCG is the common parent (or any continuation of such group) as provided under Section 1502 of the Tax Code and regulations promulgated thereunder, (ii) taking any actions that would reasonably be expected to cause Holdco to undergo an "ownership change" within the meaning of section 382 of the Tax Code or (iii) claiming a worthless stock deduction with respect to its Common Units within the meaning of Sections 165(g) and 382(g)(4)(D) of the Tax Code, in each case, until the earlier of (a) the occurrence of the effective date of a chapter 11 plan in these Chapter 11 Cases; (b) dismissal of these Chapter 11 Cases; and (c) conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; *provided that* any and all restrictions and procedures set forth in this Order (the "Restrictions") shall not apply to any action pursuant to any agreement of which DCG and any of the Debtors are a party that is entered into after the effective date of this Order;

2

*provided further*, *that* the Debtors may, in their sole discretion, waive in writing, any and all Restrictions.

3.      The procedures for approval of actions otherwise prohibited by the Restrictions, as set forth in **Exhibit 1A**, attached hereto, are hereby approved, *provided, however,* that any party in interest may file a motion with the Court and seek emergency relief from the Restrictions based upon a showing of sufficient cause; *provided further* that the rights of the Debtors and the other Notice Parties (as defined in **Exhibit 1A**) to oppose such relief are fully reserved and preserved.

4.      The provisions of this Order shall be effective *nunc pro tunc* to date of the filing of the Motion.

5.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion.

6.      The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

7.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated:      _____, 2023
            White Plains, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

3

**<u>Exhibit 1A</u>**

**Procedures for Actions Otherwise Prohibited under the Restrictions**

## **PROCEDURES FOR ACTIONS OTHERWISE PROHIBITED**
## **UNDER THE RESTRICTIONS**

The following procedures apply to actions that DCG[1] seeks to take that would otherwise be prohibited under the Restrictions:

a. Prior to undertaking any action prohibited by this Order, DCG must file with the Court, and serve upon the Notice Parties, an advance written declaration of DCG's intent to take such action, in form and substance reasonably satisfactory to the Debtors (a "Declaration of Intent").

b. The Debtors and the other Notice Parties shall have ten (10) calendar days after receipt of a Declaration of Intent to file with the Court and serve on DCG an objection to any proposed action by DCG on the grounds that such action might have a material adverse effect on the Debtors' ability to utilize the NOLs. If the Debtors or any of the other Notice Parties file an objection, such action will remain ineffective unless such objection is withdrawn or resolved, or such action is approved by an order of the Court not subject to a stay. If the Debtors and the other Notice Parties do not object within such ten-day period, such action can proceed solely as set forth in the Declaration of Intent. Further transactions within the scope of this paragraph must be the subject of additional notices in accordance with the procedures set forth herein, with an additional ten-day waiting period for each Declaration of Intent.

c. The "Notice Parties" shall be (i) the Debtors c/o Genesis Global Holdco, LLC, Attn: Arianna Pretto-Sakmann (email: arianna@genesistrading.com); (ii) counsel to the Debtors, Cleary Gottlieb Steen & Hamilton, One Liberty Plaza, New York, New York 10006, Attn: Sean A. O'Neal, Esq., Jane VanLare, Esq. (email: soneal@cgsh.com and jvanlare@cgsh.com); (iii)   the United States Trustee for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, Suite 515, New York, New York 10004, Attn: Greg Zipes, Esq. (email: greg.zipes @usdoj.gov); (iv) counsel to the official committee of unsecured creditors, White & Case LLP, 1221 Avenue of the Americas, 49th Floor, New York, New York 10020, Attn: Philip Abelson and Michele Meises (email: philip.abelson@whitecase.com and michele.meises@whitecase.com) and, 111 South Wacker Street, Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (email: gregory.pesce@whitecase.com); and (v) counsel to the Ad Hoc Group of Genesis Lenders, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: Brian Rosen (email: brosen@proskauer.com).

---

[1]   Capitalized terms used but not otherwise defined herein have the meaning given to them in the Motion.