

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063 (SHL)

4    Adv. Case No. 23-01190 (SHL)

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    GENESIS GLOBAL HOLDCO, LLC, et al.,

9             Debtors.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   GENESIS GLOBAL CAPITAL, LLC,

12                  Plaintiffs,

13            v.

14   ASQUITH,

15                  Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17

18

19                  United States Bankruptcy Court

20                  300 Quarropas Street, Room 248

21                  White Plains, NY 10601

22

23                  November 30, 2023

24                  11:10 AM

25

Page 2

1   B E F O R E :

2   HON SEAN H. LANE

3   U.S. BANKRUPTCY JUDGE

4

5   ECRO:   UNKNOWN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    HEARING re Omnibus Hearing

2

3    HEARING re Amended Notice of Agenda for Hearing to be Held

4    November 30, 2023 at 11:00 a.m. (Prevailing Eastern Time)

5    (related document(s) 906, 987)

6

7    HEARING re Doc. #906 Motion to Approve Compromise / Genesis

8    Debtors Motion Pursuant to Federal Rule of Bankruptcy

9    Procedure 9019(a) for Entry of an Order Approving Settlement

10   Agreement with the Joint Liquidators of Three Arrows

11   Capital, Ltd. [REDACTED} (related document(s) 905)

12

13   Adversary proceeding: 23-01190-shl Genesis Global Capital,

14   LLC v. Asquith

15   HEARING re Doc. #2 Motion for Preliminary Injunction or

16   Order Extending Automatic Stay to Non-Debtor Filed on Behalf

17   of Genesis Global Capital, LLC

18

19   HEARING re Doc. #3 (Seal) Motion to File Under Seal Certain

20   Portions of (A) Motion for (I) Preliminary Injunction or

21   (II) Order Extending Automatic Stay to Non-Debtors, (B) The

22   Accompanying Memorandum of Law, (C) The Accompanying

23   Declaration, and (D) The Accompanying Adversary Complaint

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    CLEARY GOTTLIEB STEEN HAMILTON, LLP

4         Attorneys for Debtors

5         One Liberty Plaza

6         New York, NY 10006

7

8    BY:  LUKE BAREFOOT

9

10   WHITE & CASE LLP

11        Attorneys for Official Committee

12        1221 Avenue of the Americas

13        New York, NY 10020

14

15   BY:  COLIN WEST

16        PHILLIP ABELSON

17

18   PROSKAUER ROSE LLP

19        Attorneys for Ad Hoc Group of Genesis Lenders

20        Eleven Times Square

21        New York, NY 10036

22

23   BY:  JORDAN SAZANT

24

25

Page 5

```
1    HUGHES HUBBARD REED LLP

2           Attorneys for Gemini Trust Company, LLC

3           One Battery Park Plaza

4           New York, NY 10004

5

6    BY:  ERIN DIERS

7

8    UNITED STATES DEPARTMENT OF JUSTICE

9           Attorneys for the U.S. Trustee

10          201 Varick Street, Suite 1006

11          New York, NY 10014

12

13   BY:  GREGORY ZIPES

14

15   WEIL GOTSHAL MANGES LLP

16          Attorneys for Digital Currency Group, Inc.

17          767 Fifth Avenue

18          New York, NY 10153

19

20   BY:  JESSICA LIOU

21

22

23

24

25
```

```
 1   CHARTWELL LAW

 2       Attorney for Eric Asquith

 3       170 Worcester Street, Suite 200

 4       Wellesley, MA 02418

 5

 6   BY:  DAVID RICH

 7

 8   LATHAM WATKINS

 9       Attorney for Joint Liquidators of Three Arrows Capital

10       1271 Avenue of the Americas

11       New York, NY 10020

12

13   BY:  ADAM J. GOLDBERG

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 7

1                  P R O C E E D I N G S

2              THE COURT:  Good morning.  This is Judge Sean Lane

3    in the United States Bankruptcy Court for the Southern

4    District of New York.  And we are here this morning for the

5    Genesis Global Holdco case as well as for an adversary

6    proceeding, Genesis Global -- well, an adversary proceeding

7    that is contained within a motion that's on for today.  So

8    let me start by getting appearances, first from debtor's

9    counsel.

10             MR. BAREFOOT:  Good morning, Your Honor, Luke

11   Barefoot from Cleary Gottlieb Steen and Hamilton for the

12   debtors.

13             THE COURT:  Good morning.  And on behalf of the

14   official committee of unsecured creditors?

15             MR. WEST:  Good morning, Your Honor, Colin West of

16   White and Case on behalf of the official committee.  And I'm

17   joined today by my partner, Phil Abelson.

18             THE COURT:  All right, good morning.  And let me

19   find out who's here on behalf of the ad hoc group of

20   claimants.

21             MR. SAZANT:  Good morning, Your Honor, Jordan

22   Sazant of Proskauer Rose on behalf of the ad hoc group of

23   Genesis lenders.

24             THE COURT:  All right.  And given the matters that

25   are on for today, let me find out who might be here for the

Page 8

1    liquidators of Three Arrows Capital.

2              MR. GOLDBERG:  Good morning, Your Honor, Adam

3    Goldberg of Latham Watkins on behalf of the joint

4    liquidators of Three Arrows Capital.

5              THE COURT:  All right.  And in connection with the

6    Adversary Proceeding 23-1190, who might be here for

7    defendant, Eric Asquith?

8              MR. RICH:  Yes, Your Honor.  Sorry, let me get my

9    video started up here.  Yes, Your Honor, David Rich on

10   behalf of Eric Asquith.  Thank you.

11             THE COURT:  All right, good morning.  And on

12   behalf of the Gemini Trust Company.

13             MS. DIERS:  Good morning, Erin Diers, Hughes

14   Hubbard Reed on behalf of Gemini Trust Company.

15             THE COURT:  All right, good morning.  So I know

16   that, as I always say, there's many, many pages of

17   appearances here and I know lots of folks are here to listen

18   in for today.  So at this point, I'll throw it open to any

19   other appearances for folks who have not yet done so who

20   expect that they may speak at today's hearing.  And

21   obviously, to the extent that someone doesn't make an

22   appearance because they don't expect to speak and that

23   changes, you can enter your appearance at that time.  But

24   anyone else that needs to make an appearance?

25             MS. LIOU:  Good morning, Your Honor, Jessica Liou

Page 9

1    from Weil Gotshal Manges on behalf of Digital Currency

2    Group.

3             THE COURT:  All right, good morning.  Anyone else?

4    All right.  With that, I will turn it over  to the debtors

5    and I note that we have an agenda that was filed on the

6    docket.  So, counsel, it's to you.

7             MR. BAREFOOT:  Thank you, Your Honor, Luke

8    Barefoot from Cleary Gottlieb for the debtors.  Your Honor,

9    as we noted -- as you noted, we did file an amended agenda

10   at Docket Item 1001.  There are two items on the agenda for

11   today's proceedings.  The first is the 9019 motion for

12   approval of the settlement with Three Arrows Capital.  That

13   is proceeding on an uncontested basis.  And the second

14   matter is the motion for a preliminary injunction in the

15   Asquith adversary proceeding, which is proceeding on a

16   contested basis.

17            Subject to Your Honor's preferences, I propose to

18   take those matters in that order.

19            THE COURT:  That would be just fine.  Thank you.

20            MR. BAREFOOT:  Turning then, Your Honor, first to

21   the Three Arrows Rule 1919 motion which was filed at Docket

22   Item 906, by this motion, Your Honor, the debtors seek

23   authorization for entry into and performance under a

24   settlement agreement with the joint liquidators of Three

25   Arrows Capital.

Page 10

1           At the outset, Your Honor, we would like to, as an

2    evidentiary matter, move into evidence the declaration of

3    Mr. Tom Conheeny, who is a member of the special committee

4    of the Board of Directors of Genesis Global Holdco LLC.  And

5    that declaration was attached to the Three Arrows'

6    settlement motion at Exhibit C.

7           THE COURT:  All right.  Any objection by any party

8    to the admission of that declaration as evidence in support

9    of this matter?  All right, hearing no response.  I'm happy

10   to receive that declaration as evidence.  Thank you,

11   counsel.

12           (Exhibit C entered into evidence)

13           MR. BAREFOOT:  Very good, Your Honor.  Turning

14   then to the merits of the settlement, as the Court is aware,

15   the debtors have been engaged in extensive litigation and

16   motion practice with Three Arrows for more than five months

17   in efforts to resolve the proofs of claim that were filed

18   against the debtors' estates, which asserted in excess of $1

19   billion in damages.

20           The proposed settlement resolves those claims in

21   exchange for a single allowed claim against Genesis Global

22   Capital in the amount of 33 million.

23           Very briefly, Your Honor, the special committee

24   has determined and the debtors submit that the settlement is

25   in the best interest of the debtors' estates and their

Page 11

1    creditors and is well within the range of reasonableness.

2    And I'll just briefly go through a summary of some of the

3    reasons that our motion sets out establishing that.

4              First, Your Honor, the settlement avoids

5    significant risks and uncertainties, particularly where many

6    of the claims and defenses were somewhat untested in the

7    unique circumstances of the cryptocurrency industry.  And

8    that's particularly the case, Your Honor, where it resolves

9    all of the motion practice between the parties including

10   Three Arrows' lift stay motion that's about to have these

11   claims finally adjudicated in alternative fora.

12             Second, Your Honor, the dollar amount of the

13   settlement speaks for itself.  Of the more than $1 billion

14   asserted, the $33 million allowed claim amount represents

15   approximately 3.3 percent of the asserted amount.  And those

16   figures are particularly important given the size of the

17   asserted claim and the impact that it would have on

18   potential distributions under a plan of reorganization if it

19   were not resolved prior to effectiveness.

20             Third, Your Honor, resolving the claims on the

21   terms of the proposed settlement avoids significant fees and

22   expenses of counsel and expert witnesses that would be

23   required given the fact-intensive nature of certain of the

24   objections and the work that would be required to litigate

25   those claims to a final judgment on the merits.

Page 12

1          Fourth, and perhaps most importantly, Your Honor,

2     while the settlement provides for a global resolution of the

3     claims as between the Genesis debtors and Three Arrows

4     Capital, it expressly preserves any and all claims that the

5     Genesis debtors have against their parent, DGC.  So the

6     debtors' claims that any liability associated with the Three

7     Arrows Capital loans were assumed by DCG pursuant to the

8     terms of the assumption and assignment agreement, are in no

9     way compromised by the terms of the proposed settlement.

10          For these reasons and following extensive arm's

11     length negotiations, the special committee has, in its

12     business judgment, approved the settlement.

13          Before asking Your Honor to enter the order, I did

14     want to briefly address three related matters.  The first is

15     the form of the revised proposed order.  The second is the

16     related sealing motion that was noted on the agenda and the

17     third is the final form of the settlement agreement.

18          On first, Your Honor, the revised proposed order,

19     you may have seen that the settlement agreement effectively

20     contains two related but separate sets of settlement terms

21     in a single document, one as between the debtors and Three

22     Arrows Capital and one as between DCG and Three Arrows

23     Capital.  Following a series of conversations with the

24     Office of the United States Trustee, the debtors agreed to

25     clarify the language in the proposed order to make express

1    that the Court's approval of the settlement agreement apply

2    only to the terms of the settlement agreement that concern

3    the Genesis debtors and that the Court is in no way passing

4    on or making any findings with respect to the terms as they

5    pertain to DCG.  That revised proposed order, together with

6    the black line, was filed last week at Docket Item 966.

7                There is one additional change that we have

8    discussed with counsel for Three Arrows Capital and that we

9    would propose to make to the revised proposed order.  Very

10   briefly, Your Honor, in Paragraph 4, it sets forth the --

11               THE COURT:  Hold on a second.  There's somebody

12   who's on the phone or doing something else and you need to

13   mute your line because I can hear you, we can hear you, open

14   mic moments are always a bad idea but never more so than

15   when you're in court.  So with that Mr. Barefoot, please

16   resume.

17               MR. BAREFOOT:  I apologize, Your Honor.  Do you

18   have the revised proposed order in front of you?

19               THE COURT:  I haven't it.  I've seen it.  Where

20   would it be in the -- I'm trying to think of where was it?

21   Was in the binder or is it a separate stack?  I think it's

22   in the separate stack.

23               MR. BAREFOOT:  It should, I'm being told it should

24   be Tab 3.

25               THE COURT:  Tab 3.  Okay.  I know I've seen it.

Page 14

1    So thank you for the reminder as to where I've seen it.

2              MR. BAREFOOT:  Okay, very good, Your Honor.  In

3    addition to the changes that we made at the request of the

4    Office of the United States Trustee, in Paragraph 4, which

5    the first sentence of now reads "As set forth in the

6    settlement agreement, the allowed 3AC claim against DGC is

7    hereby allowed in the amount of $33 million."

8              THE COURT:  Right.

9              MR. BAREFOOT:  We just revised that to include a

10   clause that says "subject to occurrence of the settlement

11   effective date."  The reason for that, Your Honor, is that

12   the settlement agreement only becomes effective not only

13   upon Your Honor's approval but approval by the BBI court

14   overseeing the Three Arrows liquidation.  That approval is

15   being sought but has not yet been obtained.  So this change

16   is just designed to make clear that the allowance of the

17   claim will only occur once those conditions precedent to

18   effectiveness of the settlement occur.

19             THE COURT:  All right.  That makes perfect sense.

20   Thank you for pointing that out.

21             MR. BAREFOOT:  Okay, Your Honor, then I did want

22   to briefly address and request entry of the order approving

23   the debtor's sealing motion which was filed at Docket Item

24   905.  Just very briefly, Your Honor, effectively, because as

25   I mentioned, the terms of the settlement agreement do in

Page 15

1       part relate to matters solely as between Three Arrows and

2       DCG that are not relevant to this Court's approval, but that

3       could be prejudicial to Three Arrows if they were fully

4       disclosed given its ongoing litigations and negotiations

5       with other creditors.  The debtors have sought to seal those

6       portions of the settlement agreement that do not relate to

7       the Genesis debtors.  So, subject to any questions Your

8       Honor has, we would request entry of the order approving

9       that sealing motion.

10              THE COURT:  All right.  Thank you very much.  So

11      let me ask first if any party wishes to be heard on the 9019

12      motion itself, that is the settlement motion?  And so let me

13      just explicitly call out the committee given the committee's

14      statutory role under the code.  Anything from the committee?

15              MR. WEST:  Yes, Your Honor, just very briefly.  I

16      just wanted to emphasize one aspect of the settlement

17      agreement that was critical to the committee, critical to

18      the committee's non-objection and belief that the settlement

19      does fall within the range of reasonableness, that is the

20      fact as Mr. Barefoot said that that there is no release

21      whatsoever by the debtors or their related parties of DCG or

22      any of its related parties of any claims.  All such claims

23      are expressly preserved.  And of course, in the no deal

24      posture that we are currently in, that is critical.  So with

25      that term in the settlement agreement, it was acceptable to

1    the committee.  And that's all I had, Your Honor.

2          THE COURT:  All right.  Thank you very much.  Any

3    other party that wishes to be heard as to the settlement

4    motion?  And let me make sure to explicitly call out the

5    Joint Liquidators of Three Arrows Capital if they have

6    anything they wanted to add.

7          MR. GOLDBERG:  Thank you, Your Honor, Adam

8    Goldberg of Latham Watkins on behalf of the Joint

9    Liquidators of Three Arrows Capital.  We're pleased to be

10   here before the Court today on the result of this dispute

11   and appreciate everyone's time and effort with us.  It was

12   certainly a hard fought matter as you know, which I think

13   goes to the support for the settlement as Mr. Barefoot

14   explained to the Court.  I rise virtually only to emphasize

15   one additional reason in support of the motion to seal the

16   settlement agreement, which is that in the BBI court, these

17   matters would be sealed in that court as not accessible to

18   the public in the same manner as in the United States.  And

19   so in the interest of comedy to the BBI proceeding, we would

20   also suggest that the interests of comity support the

21   sealing of the settlement agreement as it pertains to the

22   Three Arrows - DCG matters and those interests of comity are

23   relevant based on the recognition of the BBI proceeding in

24   in our Chapter 11 case.

25          THE COURT:  All right.  Thank you very much.  With

Page 17

1    that, any other party that wishes to be heard on the 9019

2    motion?  All right, hearing no further responses, I am happy

3    to grant the motion seeking to approve the settlement. And I

4    find that it is reasonable and satisfies all the

5    requirements of Rule 9019 and applicable law.  That includes

6    the factors in the Second Circuit that should be applied

7    when determining whether the settlement is fair and

8    equitable as set forth in the Iridium case and laid out in

9    the papers filed by the debtors here.  And as the case law

10   says, where most of all the factors are satisfied, the

11   settlement should be approved and that the business judgment

12   of the debtor in recommending the settlement should be

13   factored into the Court's analysis.  And this is also true

14   of the advice and counsel and thoughts of the parties to the

15   settlement and the professionals.

16          In short, this is a very reasonable settlement.

17   When you apply the factors here to the settlement, there

18   definitely was the prospect of the claims here as well as

19   the claims, similar claims involving FTX to really eclipse

20   the debtor's ability to actually move the case forward.

21   Obviously, it's in the interest -- if there's one thing that

22   parties can agree upon, it's their interest and desire to

23   move the case forward expeditiously for the benefit of all

24   stakeholders.  And in addition, given the actual value of

25   the settlement and all the other considerations identified

Page 18

1    by counsel, I'm happy to approve it.

2            As for the sealing motion, let me ask if any other

3    party wishes to be heard as to the motion to seal?  I did

4    hear counsel for the joint liquidators on that point.

5    Anyone else who wanted to weigh in on the sealing motion?

6            MR. ZIPES:  Your Honor, Greg Zipes with the US

7    Trustee's Office.  My office would just ask that the order

8    stands on its merits.  But the statement about comity, my

9    office doesn't necessarily agree with that statement.  So we

10   would ask that there not be that additional language in

11   order to extent the parties are contemplating it.

12           THE COURT:  Well I don't think anyone would

13   disagree with the fact that the proceedings, those

14   proceedings that are foreign proceedings don't have the same

15   transparency requirements as these proceedings.  And to the

16   extent that there's a settlement involving parties that

17   aren't the Genesis debtors, I think the idea is that this

18   case shouldn't serve as a vehicle to publicize information

19   about settlement not involving the debtors where those

20   details about the settlement wouldn't be public in that

21   foreign court.  And I don't hear any or I didn't see

22   anything that gave me any reason to believe anyone disputes

23   that as sort of factual circumstance and context for making

24   the sealing motion.  Am I right about that?  In other words,

25   I don't necessarily -- I'm not interested in writing a

Page 19

```
 1    comity opinion under these circumstances.  So let me allay

 2    any concerns that way.  But it does seem that when we're

 3    talking about things that don't affect the debtor and that

 4    involve settlements between Three Arrows and other parties

 5    where those terms would not be public by virtue of the

 6    proceedings that Three Arrows has elsewhere, that they

 7    really shouldn't be made public by virtue of this

 8    proceeding.  And so I don't know that anybody has made an

 9    argument that they should be simply by virtue of this

10    proceeding.  So I don't have a quibble with that because

11    again, it doesn't affect these estates.  And so, but I may

12    be over overly complicating this Mr. Zipes.  I just want to

13    make sure I understand that I have the --

14             MR. ZIPES:  Your Honor, I may be overly

15    complicating it as well.  So I'm just making this simple

16    point that it's -- it doesn't need to be a part of the, I

17    don't think it needs to be a finding of the Court.

18             THE COURT:  All right.  So I'll say it this way.

19    I think it is, however -- so the, Rule 107(b) allows the

20    court to direct the documents filed in connection with a

21    motion be filed under seal.  And it provides that a court

22    may protect in any respect to a trade secret, confidential

23    research development, or commercial information in 107(b).

24    And so I think the factual circumstances here are relevant

25    to making a finding of that because the idea is that this
```

Page 20

1     information is confidential commercial information because

2     it would not be publicized anywhere else.  And I just want

3     to make sure I understand that factual circumstance and that

4     nobody disputes those factual circumstances.

5             All right.  Hearing nothing, it seems to be pretty

6     straightforward in the paper.  So I think I don't need to

7     parse exactly what flavor of legal theory I need to put to

8     that.  I'm understanding as to the factual circumstances

9     that underlie the request to seal and under those

10    circumstances, given those facts, I think it satisfies the

11    requirements for sealing under 107(b).

12            I note there is no objection.  I think there's no

13    objection because it doesn't affect these estates.  And I

14    think counsel for Three Arrows Capital is just concerned

15    about having collateral consequences that would somehow

16    impact his client and parties and the BBI proceedings by --

17    in sort of a collateral way where they were -- it's

18    something that can be avoided.  So I find it's appropriate

19    to seal the matters and I'll grant the motion to seal.

20            I do appreciate, given this conversation, the fact

21    that parties are sensitive about the scope of the sealing.

22    And so I think the papers are very clear that it doesn't --

23    it's nothing that affects the debtors, these estates and so

24    therefore, there's no concern about the transparency because

25    it's not affecting these estates.

Page 21

1          So with that, thank you very much for the obvious

2    work and care that went into identifying what the concern is

3    and crafting an appropriate motion and proposed order to

4    address that concern and no further.  So with that, I'm

5    happy to grant that motion.  And so let me ask Mr. Barefoot,

6    is there anything else to address on Roman numeral I of our

7    agenda or should we move on to the adversary proceeding?

8          MR. BAREFOOT:  Your Honor, I believe that resolves

9    everything under Roman numeral I and we will submit a

10   revised, a revised proposed order on the settlement and the

11   proposed order attached to the motion with regard to the

12   sealing.

13         THE COURT:  All right, thank you very much.  All

14   right.  Next up is the motion for entry of a preliminary

15   injunction or an order extending the automatic stay to a

16   non-debtor.  And so with that, it is the debtor's motion.

17   And so I'll hear from the debtor first.  But before I do

18   that, I just wanted to throw out a few thoughts that --

19   because these issues come up occasionally in cases and there

20   are sometimes things that people are worried about where we

21   can have a discussion and find an appropriate path forward.

22         My understanding, based on the veritable flurry of

23   activity that's been going on in the case, is there's a

24   desire to bring these cases to a conclusion promptly.  There

25   is a schedule actually that sets a confirmation hearing on

Page 22

1   February 14th through 16th and it is, in fact, a plan that

2   is seeking confirmation.  It's a liquidation plan and then

3   people are going to sue various people.  And that's what it

4   is.  It's designed to be as straightforward as it can be,

5   notwithstanding the fact that we may have to litigate

6   certain issues.

7            I mentioned that because the automatic stay timing

8   of it is important, right?  So sometimes there are

9   conversations about whether this stay should be extended

10  where a case has just been filed and there's no endpoint in

11  sight.  And sometimes motions are filed and concerns are

12  raised about preservation of evidence.  And so my thought is

13  here given the timing of the case and the fact that the

14  automatic stay would end after the case is confirmed and the

15  effective date, I didn't know if there was a discussion

16  worth having about sort of preservation of evidence or any

17  sort of representations that might allow the defendant to

18  sort of see its way clear to sort of work something out in

19  connection with the proposed relief.  And I mentioned that

20  because there are some things that are mentioned in the

21  motion that are the kinds of traditional things that are

22  mentioned in motions of this type, which are

23  indemnification, obligations and, and burdens.  And I have a

24  whole -- it comes up enough that I have a whole folder, hard

25  copy folder in my chambers that I take out from time to time

Page 23

1    when these issues come up.

2            So, so I'm happy to hear from the debtors first.

3    But I'll just -- to the extent that there's anything worth

4    talking about in terms of trying to move things along from

5    the defendant's point of view, I at least wanted to throw

6    that out there.  So before we hear from Mr. Barefoot, is --

7    again, I'm never in the room where people are discussing

8    resolutions of these things and I don't know if there were

9    any conversations or if so where of such conversations were

10   left before we came in here today.  So let me hear from

11   counsel for the defendant whether it's worth having a

12   discussion to try to head off a full blown argument on this

13   motion from soup to nuts, but I'll be guided by comments.

14   Counsel?

15           MR. RICH:  Thank you, Your Honor.  Thank you,

16   Judge Lane.  I appreciate it.  David Rich on behalf of Eric

17   Asquith.  Eric is a consumer, also a lawyer, a former law

18   partner of mine and a close friend.  So I'm here on his

19   behalf today.  We certainly, if there's any way through the

20   thicket, you know, we are certainly willing to explore that.

21   You know we, I think, my partner who's working on this case

22   with me, I think have spoken with counsel for the debtor,

23   you know, to see if we could give them, you know, some

24   certain time until January, you know, the end of January,

25   some indeterminate time to try --

Page 24

1          THE COURT:  Well, you know, I mean -- so this is

2     the way of handling it for I don't think January is going to

3     do it in the sense of there's a -- that's why I mentioned

4     the confirmation hearing.  But one way to do this is

5     sometimes people say, like Judge, we realize there's a

6     confirmation scheduled, but we don't know if things are

7     going to be delayed and we are not driving this bus.  And so

8     we want to reserve our rights, but if we have an opportunity

9     to come back and, you know, in February, if the confirmation

10    hearing is not going to happen at that point, and make our

11    arguments at that point.  Sometimes people do something like

12    that.  But again, I don't want to belabor this too much

13    because it, at a certain point, it'll take longer than the

14    argument will take.  But maybe the thing to do is this.

15    I'll ask you to think about it while I hear from Mr.

16    Barefoot.  And if there is a path forward, you can let me

17    know when you respond to Mr. Barefoot.

18          MR. RICH:  Sure.

19          THE COURT:  But again, the cases are littered with

20    some of these same things, talking about things like

21    indemnification and the burden as well as the timing.  You

22    know extending an automatic stay of granting or this kind of

23    injunction is not without limits.  But again, we're in a

24    better posture than a lot of other cases because we're not

25    at the very beginning.  And so there is some -- I think the

Page 25

1    idea is that there's an end in sight.  So with that, Mr.

2    Barefoot, let me turn it over to you to present your

3    argument and we'll see where we end up.

4            MR. BAREFOOT:  Thank you very much, Your Honor.

5    Barefoot from Cleary Gotlieb for the debtors.  I will be

6    brief in light of the extensive briefing and Your Honor's

7    remarks on the record just now.  But at base, Your Honor,

8    the arbitration seeks a judgment on numerous causes of

9    action including fraud concerning the operation of the

10   Gemini Earn program.  And while the arbitration has stayed

11   as to the Genesis debtors, if it's permitted to continue at

12   present, Gemini has made clear its intent to pursue

13   discovery against the debtors, effectively seeking to

14   establish its theories that to the extent there was any

15   wrongdoing, it was by the debtors, not by Gemini.  That is

16   not speculative.  Not only has Gemini served the debtors

17   with document requests, but they have filed a statement in

18   the adversary proceeding reiterating their intent to pursue

19   that discovery.

20           Gemini is also asserted its rights under the

21   indemnification provisions in the Gemini master loan

22   agreements, which would be implicated if the arbitration

23   were permitted to proceed to judgment.  Moreover, as Your

24   Honor outlined, this comes at a particularly critical time

25   for the debtors on their path towards emergence, which was

Page 26

1    set in motion in a very concrete way by Your Honor's ruling

2    on Tuesday to approve the disclosure statement.

3            The risks and downsides of the debtors and their

4    limited remaining personnel being distracted by discovery in

5    this arbitration to the detriment of all creditors, far

6    outweigh any prejudice from a brief stay through

7    effectiveness of a plan of reorganization.  And, Your Honor,

8    just finally this makes particularly sense where we're

9    following confirmation and having clarity on the terms of

10   distributions to Gemini Earn users, which as you've heard at

11   the disclosure statement hearing and otherwise, could in

12   some scenarios result in payment in full to those Gemini

13   Earn users.  That would, at minimum, narrow the scope of the

14   claims and damages at issue in the arbitration.

15           Your Honor, I just did want to address one

16   housekeeping matter.  We had originally moved to seal

17   certain references to the arbitration proceedings, given the

18   confidentiality provisions applicable to those proceedings.

19   Given that Mr. Asquith's opposition discloses in full and

20   redacted terms the arbitral complaint, we think that sealing

21   motion is moot and would intend to withdraw.

22           THE COURT:  All right.  One thing you could answer

23   for me, Mr. Barefoot, is there's a reference in the papers

24   at various points about various Gemini lenders have

25   commenced or threatened to commence actions, class actions,

Page 27

1    arbitration proceedings arising out of the Gemini Earn

2    program.  And I wanted to understand if those statements

3    mean, as is often the case involving a debtor with extensive

4    operations, that the proceeding in question is not

5    necessarily a one-off meaning that whether there are other

6    potential proceedings just like this that are likely.  I see

7    Mr. Asquith's counsel nodding yes, so I think I may have my

8    answer, but other potential proceedings of this type that

9    could be brought that would involve the debtors and raise

10   the same issues?

11           MR. BAREFOOT:  So, Your Honor, there certainly are

12   a broad range of arbitration and other proceedings brought

13   by Gemini Earn users.  That said, none of those proceedings

14   have gotten to this stage where we are proceeding towards a

15   merits hearing that has necessitated Gemini pursuing the

16   debtors to establish its defenses as to the claims that are

17   being brought.

18           THE COURT:  But let me ask this another way.  A

19   ruling denying your motion, would it raise the essentially

20   come-one-come-all message to folks to say all these cases

21   can go forward, placing the debtor in a position where they

22   have to respond on multiple fronts if not now, someday soon?

23           MR. BAREFOOT:  Your Honor, I actually think it

24   very well might.  Conversely -- and I'd welcome Ms. Diers

25   Dear from Hughes Hubbard who is closer to some of these

Page 28

1    arbitrations given that they have been proceeding as to non-

2    debtor, Gemini.  But many of the arbitrations have been

3    stayed without the necessity of us obtaining an order from

4    Your Honor.  This particular arbitrator, when Gemini made

5    the stay request, requested an order clarifying whether the

6    automatic stay would be extended.  So I think if the

7    automatic stay extension motion were denied here, I think

8    that would potentially have significant collateral

9    consequences of having parties go back in the respective

10   arbitrations and ask for those to proceed and necessitate

11   Gemini pursuing discovery and other remedies against the

12   debtors.  I also think conversely, if this order were

13   entered, it would similarly send a message to other

14   arbitrators about how this would likely play out and allow

15   parties to conduct themselves accordingly without burdening

16   Your Honor's docket.

17              THE COURT:  All right.  Well, again, the concern,

18   well, obviously have some interest in not burning my docket.

19   The question is whether it's going to burden the estate.

20   And so -- but that's, I think I have my answer on that

21   front.  And so -- and I understand the indemnification

22   really arises out of that Section 22(b) that's attached to

23   that declaration of Jack Massey in support of the motion.

24   And so that seems to be fairly straightforward.  Anything of

25   nuance or further to discuss the scope of the

Page 29

1    indemnification?

2             MR. BAREFOOT:  I don't believe so, Your Honor.

3             THE COURT:  All right.  And I guess last, but not

4    least, I had made some comments at the outset about the

5    timing of the automatic stay issues and that, you know,

6    things aren't stayed forever.  And anything you wanted to

7    say on that on that front?  I did see your paper said, you

8    know, you're requesting this through the effective date.

9    And so which I think sort of -- is a pre pretty clear

10   statement about how you view the timing, but I just want to

11   make sure there's nothing else you want to add on that

12   topic.

13            MR. BAREFOOT:  Your Honor, the only thing I'll

14   add, I don't want to get into disclosing the settlement

15   discussions that we attempted to have with Mr. Asquith's

16   counsel before the opposition papers were filed.  But the

17   debtors would certainly be amenable if it will solve the

18   objection, to limiting the request to the end of February

19   for the time being without prejudice to our rights to seek

20   to extend that if the effective date had not occurred by

21   that point, or Mr. Asquith's rights to vacate that if other

22   circumstances developed.  We would make that offer now in

23   open court, if that would resolve the opposition.  But

24   otherwise, our request would be through the effective date.

25            THE COURT:  All right.  Thank you very much.  All

1    right.  So let me hear from counsel from Mr. Asquith.

2            MR. RICH:  Thank you, Judge Lane.  And, yeah, I'm

3    not sure I understand that.  I want to make sure I

4    understand the offer.  Are you, I guess, are we -- is that

5    an offer that the arbitration gets to go forward again if

6    there's not a resolution as of February?

7            THE COURT:  I think what it means is that people

8    are going to decide not to fight about it now and the

9    debtors are trying to move the case forward and hope to have

10   things wrapped up on a timetable at which point the motion

11   would be moot, but they recognize that nothing in life

12   succeeds as planned.  So if it doesn't work out that way,

13   then you reserve your rights to come back to the court and

14   we -- I'm happy to even set a date -- so that you get a --

15   without filing -- frankly, what I would do is carry the

16   motion so that nobody has to go to the expense of submitting

17   additional papers.  And  everybody reserves their rights.

18   So your cooperation would not be held against you.  And it

19   wouldn't be a comment on anything.  It would be, well, I'm

20   willing to work with you up to this point.  And at that

21   point, Judge, I may have to come back and take a different

22   view.

23           MR. RICH:  Yeah.  Well, certainly, Judge, I am

24   glad to be cooperative and want to, of course, make the

25   Court and chambers' life, you know, as easy as possible.

Page 31

1    Certainly, I did not want to be a fly in the ointment and

2    I'm not here today to create any chaos and certainly willing

3    to work with opposing counsel.  Quite frankly, I don't feel

4    like what we've been offered has been reasonable.  I will be

5    honest, this was a prebankruptcy arbitration that we filed

6    on behalf of Mr. Asquith, who's owed over a million dollars

7    and so it's not an insignificant case.  And, of course, the

8    minute that Genesis declared bankruptcy, the automatic stay

9    was in effect.  We have not done anything related to them

10   that would affect the estate or harm them or impact them in

11   any way.  And essentially, what's happened here is that

12   Gemini has entered into consumer contracts with thousands,

13   with tens of thousands of consumers, not just my client, but

14   other ones.  And they admit that these are valid contracts.

15        And so we filed the arbitration and they answered

16   the complaint, Your Honor, and then they engaged in

17   discovery.  They produced documents.  They agreed to make

18   the Winklevosses available to me for deposition.  And then

19   all of a sudden what we heard is, well, now we want to stay

20   because we're going to point the finger at the debtor.  And

21   we have a non-debtor pointing finger at a debtor trying to

22   stop consumer arbitration and a contract.  And there's

23   thousands of these contracts that are valid, Your Honor.

24   I'm not going to be the last lawyer in front of you on this.

25        THE COURT:  But doesn't that prove the point about

1    the resource issues as to the estate?  Listen, I'm not here,

2    nobody's asking me to decide this question about

3    indemnification, but there is clearly an indemnification

4    clause and Gemini is pointing the finger at the debtors.  So

5    the case law is pretty clear that when a lawsuit is -- it

6    can be construed as even if the debtor isn't the named party

7    as the party in interest, that that's a basis for granting

8    this kind of relief.  And I think that's why your efforts,

9    while laudable to say, well, we'll drop the debtor, weren't

10   seized upon by the debtors as an avenue to fix it because

11   they said, well, it doesn't matter because Gemini is going

12   to say, even if you are -- Mr. Asquith is not going after

13   us, Gemini will go after us not only for discovery but as a

14   matter of liability.  So if there are tens of thousands of

15   these suits, it does seem to raise the very floodgates

16   argument that courts have found persuasive in the past.

17            MR. RICH:  Yeah, I would agree with all of that,

18   Your Honor, except to the extent that all of these

19   consumers, including my client, have independent claims

20   against Gemini that have nothing to do with Genesis.  And so

21   --

22            THE COURT:  But that's what indemnification is.

23   You say they have nothing to do with the debtors.  But

24   Gemini, who you're suing, says it has everything to do with

25   the debtors and they cite to Paragraph 22(b) of the

1   agreement.  So again, I'm not here to decide whether they're

2   right or they're not right.  But looking at the

3   indemnification clause, it presents a nonfrivolous basis to

4   say that that there's an indemnification possibility.  And

5   so I'm not deciding that.   I can't -- obviously, it's not

6   my role to decide it, but it is my role to look at it and to

7   give it a little bit of a stress test.

8            MR. RICH:  Correct.

9            THE COURT:  And frankly, it seems to pass the

10  stress test.

11           MR. RICH:  So I would -- I agree with the language

12  of the indemnity provision, Your Honor.  I disagree that it

13  passes the stress test unless and until there is a judgment.

14  So, Your Honor, if Gemini wanted to assert a claim against

15  Genesis or Genesis wanted to assert a claim against

16  indemnity against Gemini, then they could have done that.

17           THE COURT:  But then they're letting somebody else

18  litigate a lawsuit that they may be on the hook for

19  ultimately because of the indemnification clause.

20           MR. RICH:  Correct.  But none of this has occurred

21  and there's not a judgment where a claim has accrued.

22           THE COURT:  Yeah.  But the problem is that when

23  there's a judgment, the debtors will say, well, it's too

24  late, right?  So it's essentially a lawsuit against us where

25  we're not going to participate.  And then Gemini has told us

Page 34

1    that they're going to assert indemnification.

2            MR. RICH:  And, Your Honor, I think that's the

3    point where Genesis would be able to come to this Court

4    jurisdictionally and ask the Court to help them.

5            THE COURT:  But is it?  Because if that's the

6    case, there's an adjudication on some issues, not on the

7    issue of indemnification necessarily, but an adjudication on

8    other issues that Gemini will rely upon to say the indemnity

9    clause is triggered.  And the question of what's

10   collaterally estopped, either a matter of claim preclusion

11   or issue preclusion, it can be a bit of a thicket at times

12   and the parties' papers don't address that in that kind of

13   detail.  And I can understand why, because it's very

14   difficult to predict how these things are going to work.

15           MR. RICH:  Yes, Your Honor.  I don't agree that

16   they would be collaterally estopped in any of those

17   situations.  That would be non-mutual, offensive collateral

18   estoppel.  I think the issues we establish in our

19   arbitration are limited to our arbitration.  And what I

20   would say is -- I'm not asking the Court today, Your Honor,

21   Judge Lane, I'm not asking you -- I'm not asking Your Honor

22   to rule against them.  What we're asking is that we think

23   these issues should be decided by the arbitrator.  There are

24   going to be thousands of these cases and each of them,

25   whether or not Gemini, a non-debtor, is entitled to a stay.

                                                        Page 35

1    And our arbitrator, I want to be clear because this is a

2    point of contention that has bothered me and I'm just being

3    honest with the Court.  Our arbitrator gave Gemini the

4    opportunity to come to court as a non-debtor and ask this

5    Court to give it some relief.  And Gemini didn't do that.

6    Genesis, the debtor --

7             THE COURT:  So let me read from a decision in 2014

8    from Judge Keenan in the district court.  And I'll give you

9    the cite.  It's 2014 US District Lexis 136152.  He's

10   confronted with an issue about discovery in the case.  And

11   he says the automatic stay does not prevent litigants from

12   obtaining discovery from a debtor as a third-party witness

13   where requests pertain to claims against non-debtor parties.

14   And he cites In Re Residential Capital.  But then he goes on

15   to say in situations where third-party discovery of a debtor

16   could burden the bankruptcy proceeding, courts have

17   generally placed the onus on the debtor to seek injunctive

18   relief rather than requiring the party requesting discovery

19   to obtain a lift of the automatic step.

20             And so he's trying to place the burden on the

21   right party to do the right thing.  And here, the debtors

22   have done exactly that.  They said it's going to impact us.

23   So to the extent it's going to impact us, we need to, we

24   have the burden, as Judge Keenan recognized to seek

25   injunctive relief and that's, that's what we've done.  And

Page 36

```
1    then Judge Keenan goes on to say, in fact, Section 105

2    provides bankruptcy court with discretion to extend the

3    automatic stay beyond the scopes of 362(a) where necessary

4    appropriate to prevent significant interference with the

5    bankruptcy proceeding.

6              And so based on that decision and other things

7    I've seen, I think the debtors have acted appropriately here

8    because it is their burden.  It's not your problem

9    representing Mr. Asquith to say, hey, I've got to seek to

10   lift the stay.  Sometimes people do that because they really

11   don't want to -- a bankruptcy stay makes folks nervous.  But

12   I agree with Judge Keenan.  This is the way it should work

13   that the debtors do have the burden of seeking injunctive

14   relief, but that's what they've done here by virtue of the

15   proceedings we have.  So I'm ok with that.  So the fact that

16   Gemini didn't do it doesn't really have any significance to

17   me.  They're not a debtor.  The debtors, they're worried

18   about interference with the bankruptcy case.  It's a debtor

19   issue.

20             MR. RICH:  Sure.  So I don't -- like procedurally,

21   I'm okay with them having done it.  I just wanted to point

22   out that Gemini has not state the position of the case.  I

23   guess my overarching point here, Your Honor, is that we, we

24   believe, and our position is, that we would like the

25   individual arbitrator under the Federal Arbitration Act,
```

Page 37

1    which is a federal statute, that requires the enforcement of

2    provisions that Gemini admits are valid in contracts, we

3    would like the arbitrator in each of those cases to

4    individually decide whether Gemini is entitled to a stay.

5    If they are, they are.

6            THE COURT:  But Gemini is not the debtor.  I don't

7    think you're listening to what Judge Keenan said.  If you

8    want a stay, it's a bankruptcy stay, right?  That's what

9    we're talking about.  People can do whatever they want in

10   the arbitration.  But a debtor has the right to seek, and

11   it's appropriate for a debtor to seek consistent with Judge

12   Keenan's guidance, a stay in this court to say under 105,

13   Judge, we think we're entitled to injunction/an extension of

14   the automatic because of the burden this case will place on

15   the estate for the reasons, the three reasons that they set

16   forth in their papers.  So I don't --

17           MR. RICH:  I don't --

18           THE COURT:  People could do whatever they want to

19   do in arbitration.  I'm not going to tell them what they can

20   do or what they can't do.  That's not my job.  And so -- but

21   I think the question for me is whether it's appropriate for

22   me to entertain this motion.  And what I'm telling you is I

23   think it's entirely appropriate for me to entertain this

24   motion.

25           MR. RICH:  I don't disagree that it's appropriate

Page 38

```
1    for the Court to entertain it.  I just don't believe that

2    they're entitled to the relief.  If I look at the standard

3    for the exceptions for a non-debtor to obtain some relief

4    from the automatic stay, the only potential argument that I

5    believe that they have here is that there's an identity of

6    interest between the parties.  And I don't see how they meet

7    the test.

8              THE COURT:  All right.

9              MR. RICH:  So it's not simply a matter of, Your

10   Honor, Judge Lane, I don't think it's simply a matter of,

11   you know, whether or not, you know, they properly brought

12   this.  Number one, I don't think they meet the standard.

13   Number two, I think under the FAA, under the Federal

14   Arbitration Act, this is an issue of arbitrability that

15   needs to be decided by the arbitrator in each case whether

16   or not they, in fact, need discovery.  Because in our case

17   against Gemini, we have independent claims.  And all of the

18   information that we need, Your Honor, is in the possession

19   of Gemini.  We don't need anything from Genesis.  Gemini

20   doesn't need anything from Genesis.  We would waive the

21   right -- right now, we would just say whatever you have,

22   we'll take.

23             THE COURT:  All right.  Anything else, counsel?

24             MR. RICH:  No, thank you, Your Honor.

25             THE COURT:  Thank you very much.  Mr. Barefoot,
```

Page 39

1    anything in reply briefly?

2         MR. BAREFOOT:  Very briefly, Your Honor.  I just

3    point out in terms of counsel's suggestion that it should be

4    decided by the arbitrator, Gemini did originally make the

5    request for the stay to the arbitrator.  And the arbitrator,

6    of course, could have just decided that.  Instead the

7    arbitrator directed seeking guidance from this Court.  And

8    said that in the absence of an order from this Court staying

9    arbitration, there would not be a stay, which is what

10   prompted our motion.

11        Otherwise, Your Honor, I would also note that in

12   terms of Gemini asserting an indemnification claim, Gemini's

13   proofs of claim against the debtors do assert rights under

14   the indemnification provisions of the master loan agreement

15   as contingent claims.  And if the arbitration were permitted

16   to go forward and resulted in a judgment, that claim would

17   likely no longer be contingent.  I think otherwise, Your

18   Honor, as you said, our papers make clear that we're well

19   within the sets of circumstances where these motions are

20   granted and would request entry of the order.

21        THE COURT:  All right.  So I think I failed to

22   give you all the name of the case that Judge Keenan's quote

23   was from.  So my apologies for that.  It's Le Metier Beauty

24   Investment Partners LLC versus Metier Tribeca LLC.  So it's

25   a case decided September 25, 2014.  So I just wanted to let

1      you know that.

2              So Judge Keenan lays out the standard and the

3      standard -- his decision, I think, is noteworthy and a

4      worthy place to start because it talks about who has the

5      burden to do what in circumstances like this.  And I'm not

6      going to tell an arbitrator what to do.  That's not my job.

7      And so I -- and I certainly understand an arbitrator saying

8      I am not a bankruptcy person and I will let the bankruptcy

9      court do what the bankruptcy court needs to do.  So I think

10     that mutual respect is appropriate.  And I can understand

11     why the arbitrator would send it here.  And frankly, the

12     issue -- while I appreciate everybody being concerned about

13     burdening the Court -- and certainly is a question about

14     what's appropriate for Gemini.  And that was the way it was

15     sort of phrased by defendant's counsel and Gemini, what it

16     can do or can't do.  Both of those missed the point.  The

17     point is the impact on the estate and the impact on the

18     reorganization.  That's what the cases recognized.

19             So Judge Keenan segues from the who has the burden

20     to do this.  And after deciding that the debtor does, he

21     talks about the ability to extend the scope of the automatic

22     stay.  And alternatively, you could frame it as getting

23     injunctive relief, which is, I think how it's framed in the

24     papers here, where necessary or appropriate to prevent

25     significant interference with the bankruptcy proceeding.

Page 41

1             And so -- and again, it's citing In Re Residential

2     Capital, 480 B.R. at 536.  So here, the debtors have cited

3     three main reasons.  They say that the debtor is obligated

4     to indemnify Gemini for its liabilities, losses, costs,

5     damages, and expenses or cause of action arising for any

6     breach by GGC under the Gemini master loan agreement.  And

7     it cites Section 22(b) of the agreement.  I've looked at

8     Section 22(b).  It's pretty straightforward.  It basically

9     says borrower hereby agrees to indemnify defend, and hold

10    harmless lender, et cetera, et cetera, et cetera from and

11    against all liabilities to the extent of rising out of or

12    relating to any claim by any third-party based on arising

13    out of or relating to borrowers' breach regarding its

14    representations, warranties, or obligations set forth in

15    this agreement.

16            And so there's caveat at the end that nobody

17    cited.  And so therefore, I don't know that it's relevant to

18    anything we're discussing.  So that's a pretty

19    straightforward indemnification clause.  And I don't see any

20    limiting principles in it that would allow me to navigate in

21    the way I think defendant's counsel is suggesting so that we

22    don't have the concerns of that burden to the estate.

23            And so with that, what does burden mean and what

24    do the cases say about it when looking at extending an

25    automatic stay or granting an injunction?  And so courts, in

Page 42

1    fact, have extended the automatic stay to a non-debtor where

2    an obligation of the debtor to indemnify the non-debtor on

3    the existence of a finite amount of insurance, for example,

4    available to cover such obligations exists.  And that's

5    cited to, much cited to, AH Robins Company versus Piccinin,

6    788 F.2d 994, 1007-08 (4th Circuit 1986) that extends the

7    stay to a non-debtor based on an indemnification clause.

8         In addition to that, there's a well-established

9    case law that says bankruptcy courts have extended the stay

10   to non-debtor parties if the claims in question threaten to

11   thwart or frustrate the debtors' reorganization efforts and

12   the injunction is important for effective reorganization.

13   See example In Re The 1031 Tax Group LLC, 397 B.R. 670, 684

14   (Bankruptcy Southern District of New York 200) as well as

15   Hawaii Structural Iron Workers Pension Trust Fund versus

16   Calpine Corporation, 2006 WL 3755175.  It's *4 Southern

17   District of New York, December 20th, 2006.

18        So what those cases look at is the potential to

19   impact the case.  So here, there is a serious concern from

20   indemnification we've already discussed, but also from

21   having to participate in the proceedings.  And since there

22   is an indemnification clause, the ability of the debtors to

23   "sit this one out" is exceedingly limited and, in fact,

24   maybe nonexistent.  Nobody has given me a precise parsing of

25   issue preclusion and claim preclusion, but to the extent

Page 43

1    that the arbitration may decide things that the debtor will

2    then be presented with and have to address for purposes of

3    dealing with a claim of indemnification, I don't think

4    anybody can speak with certainty as to exactly how that will

5    be parsed out.

6              And, frankly, you have a problem  for the debtor

7    in terms of burden even if you put aside the indemnification

8    clause, because you have to, the debtors will likely get

9    pulled in for discovery in terms of  documents, depositions.

10   And no matter what Mr. Asquith agrees to in this case,

11   everyone agrees that there -- and I believe the quote was

12   tens of thousands of consumers who have potential lawsuits,

13   claims, arbitrations.  Some of them have been stayed, it

14   sounds like.  But if this case goes forward, it will be very

15   hard to make an argument that those cases, which are

16   similarly situated, should not go forward as well.  And then

17   the debtor will have to participate in those cases or

18   certainly at the very minimum, evaluate each of those cases

19   on a case-by-case basis to determine what it needs to do or

20   not do.  And that's clearly a burden on the estate and with

21   the tens of thousands of consumers out there, it's a

22   potentially huge burden.

23             This is not uncommon in large mega Chapter 11

24   cases.  And that's why the automatic stay exists.  And

25   that's why motions to extend the automatic stay are

Page 44

1    sometimes filed in circumstances where the debtor will

2    indirectly be burdened.

3           The other thing that's noteworthy is Mr. Barefoot

4    mentioned that some of those claims for indemnification will

5    no longer be contingent.  They will be now  very much real

6    and ready to go.  And that will allow claimants to

7    essentially advance their claims beyond where they existed

8    as of the time of the filing.  And to the extent that

9    impacts other claimants, it means that those claimants whose

10   claims now go from being contingent to being noncontingent,

11   have improved their lot in life and their status, which is

12   always a concern in bankruptcy and that's what the automatic

13   stay is supposed to avoid.

14          So I agree that the three reasons that are

15   identified by the debtors are a concern: the indemnification

16   issue, the continuation of the arbitration in terms of

17   distraction and undue burdens, and three, the continuation

18   of the arbitration threatening the debtor's ability to

19   effectively defend themselves in connection with suits

20   brought by potentially tens of thousands of consumers.

21          And so -- and I'll end where we started, which is

22   the automatic stay is not (indiscernible).  It's not without

23   date.  It is significant for purposes of this case that we

24   have a confirmation date in February, February 14th through

25   16th.  No one has an ability to see into the future as to

Page 45

1    whether that will actually happen.  If I could predict such

2    things, I no doubt would be -- my whole life would be

3    better.

4             But we have made significant progress.  This case

5    has been pending for some time.  And my thought is that I'm

6    going to deny this motion.  If the confirmation hearing

7    doesn't go forward at that time, and the case is not

8    progressing and something else happens, it takes a

9    significant left turn, you know, Mr. Asquith can come back.

10   But given that I've made a ruling on the motion, the reasons

11   for my ruling still apply.  So I'm not -- since I've made a

12   ruling as opposed to parties reaching an agreement, I'm not

13   going to undo my ruling.  Now, hold on one minute.

14            All right.  So I'm sorry, I'm granting the motion.

15   So since I've made a ruling on the motion -- it was just

16   pointed out that I've used the exact wrong term -- I'm

17   granting the motion.  But since I've made a ruling, it's not

18   a matter of negotiation.  So if those factors still apply,

19   then my ruling will be the same.  So what I'm trying to do

20   though is be fair and clear to everybody.  So certainly I

21   encourage the debtors to keep Mr. Asquith, you know, answer

22   his call in February if he has a question about where things

23   stand.  But if those same factors apply, they still apply.

24   And I just don't want to see a floodgate of additional

25   motion papers that essentially say, well, the calendar has

1    turned to February, so it's a brand new ball game.  It's

2    not.  I made a ruling.  The ruling is the ruling.  But

3    again, I can't predict the future and see where we are.  So

4    if events significantly change, then we'll see where we are.

5              MR. RICH:  Thank you, Your Honor.  May I ask a

6    question for purposes of the record on appeal.  Is the Court

7    ruling that any arbitration by a consumer against Gemini --

8              THE COURT:  No, I have this -- I have you and I

9    have the debtors in front of me in this adversary

10   proceeding, this motion.  So I'm making a ruling on this

11   motion.  What I am considering is the fact that both you and

12   Mr. Barefoot cited that there are tens of thousands of

13   consumers out there who exist.  And you said you didn't

14   think this would be the first or last of these motions that

15   I would see or concerns that I would see.  And I think that

16   is relevant for purposes of determining the potential burden

17   on the estate.

18             MR. RICH:  Well so it seems to me do I need to

19   come back to this Court in each of the arbitrations that

20   exists?  I guess that's where I'm going.  Is this ruling --

21             THE COURT:  I'm not in a position to give you an

22   advisory ruling.  You have the ruling.  You understand what

23   the basis of it is and what law it's based on and what facts

24   it's based on.  And so I certainly would encourage you not

25   to waste anybody's time by presenting an application that

Page 47

1     raises the exact issues that I've ruled on because you're

2     likely then to get a ruling that says for the same reason

3     set forth in the Court's bench ruling of X date, I conclude

4     the following.  But again, I can't predict the future.  And

5     I don't know the circumstances that we'll find ourselves in

6     a month, two months, three months from now.  But I certainly

7     trust counsel, who is evaluating each of the cases that

8     they're involved in, will look at my ruling and determine

9     how they want to proceed in the future.

10          MR. RICH:  Well I understand that Your Honor.

11     That's why I was asking because it seems like the logic that

12     you've applied, applies to the arbitration agreement of

13     every consumer, not just Mr. Asquith.

14          THE COURT:  Counsel, I can't say anything more to

15     you than I already have.  So that's certainly why I started

16     to try to see if we could work something out.  But I've made

17     a ruling.  Once I make a ruling, I make a rule.  So it is

18     what it is at that point.

19          So what I'd ask is if the debtors would submit a

20     proposed order that states the motion is granted for the

21     recent set forth on the record here today.  And to the

22     extent there's going to be an appeal, which is obviously

23     your right, I'd ask that the parties submit a transcript so

24     I can at least look at it and make sure it's clean and

25     understandable and obviously because it's a bench ruling, I

Page 48

1    retain editorial control.  But certainly, I promise not to

2    spring a whole brand new issue or theory on you.  But again,

3    my purpose is to make sure it's clear.  And as we all know,

4    transcripts are usually quite good, but occasionally there's

5    an issue where they're a little hard to comprehend.  So

6    that's the point of my request just so that it's clear and

7    everybody knows what the ruling is and then you can all not

8    be burdened by any confusion on that score if you have

9    proceedings elsewhere.

10           All right.  So Mr. Barefoot, anything else from

11   you?

12           MR. BAREFOOT:  No, Your Honor, we will submit a

13   proposed order and we'll certainly submit the transcript as

14   well.

15           THE COURT:  All right.  Thank you very much.  And

16   let me ask defense counsel, anything else from you, counsel?

17           MR. RICH:  No, Your Honor.  Thank you, Judge Lane.

18           THE COURT:  All right.  Again, I appreciate your

19   concern and your zealous advocacy for your client.

20           MR. RICH:  Thank you.

21           THE COURT:  And I ow you, if you've spent any time

22   in this case listening to hearings, you know that there are

23   a lot of customers who have a lot of things they're

24   concerned about and issues they want addressed.  And we're

25   trying to do that here in the context of the case in a

Page 49

1    collective manner.  And hopefully, the progress that we've

2    been making will continue to make progress and I think

3    that's for the betterment of everybody.  So fingers crossed.

4           MR. RICH:  Thank you, Your Honor.  And thank you,

5    Mr. Barefoot.  And, Your Honor, it's not personal.  You know

6    this is my -- my job is to advocate, so I hope you know

7    that's why I'm here.

8           THE COURT:  No, no.  I totally get it.  I totally

9    get it.  I do remember being a lawyer and having clients and

10   I appreciate your zealous advocacy.

11          MR. RICH:  Thank you.  Thank you, Your Honor.

12          THE COURT:  All right.  Mr. Barefoot, anything

13   else that we have on for today?

14          MR. BAREFOOT:  No, Your Honor.  That concludes our

15   agenda.  All right.  Thank you very much.  Thank you to

16   everybody for being here.  And, Mr. Barefoot, I figured I

17   would just briefly ask you and I know if Ms. Eubanks were

18   here, she could straighten me out, but I'm just trying to

19   get a sense of what's coming up in the near term in the case

20   when we're next together.

21          MR. BAREFOOT:  We're together next, Your Honor, on

22   December 13th.

23          THE COURT:  All right.  Anything worth talking

24   about in terms of a preview as to the amount of time you

25   might need or anything in that score?  Or is it premature to

Page 50

1    speak on those matters?

2            MR. BAREFOOT:  I think it would be premature, Your

3    Honor.  The objection deadlines haven't really passed.  So

4    I'm not clear at this point on what the scope of contested

5    matters is going to be.

6            THE COURT:  All right, fair enough.  With that,

7    thank you very much.  Be well and see you in a couple of

8    weeks.

9            (Whereupon these proceedings were concluded at

10   12:16 PM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 4, 2023