**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: Genesis Global Holdco, LLC, *et al*., Debtors.

Case No.: 23-10063 (SHL)
Jointly Administered

Chapter 11

OBJECTION DEADLINE: December 21, 2023, at 4:00 P.M. (ET)
HEARING DATE AND TIME: January 3, 2024, at 10 A.M. (ET)

**RESPONSE TO SEVENTH OMNIBUS OBJECTION (Claim #55)**

Ivan Wong, as the Managing Partner of Cypress LLC, authorized to address Claim #55, submits this response against the Seventh Omnibus Objection. We reassert our claim for 351,937.50 Terra (LUNA) as detailed in Proof of Claim 3315-61-DDZER-636344847. The claim mistakenly recorded as 351,937.50 LUNC misrepresents our position.

The claim for 351,937.50 Terra (LUNA) should not be disallowed as it is firmly grounded in the terms of the Master Borrow Agreement, specifically Part V, Clause (c), which clearly delineates the Lender's Right to New Tokens in the event of airdrops. Cypress LLC's substantial evidence, including transaction records and official communications, corroborates the claim's validity in accordance with the agreed terms. Disallowing this claim would overlook these contractual obligations and the substantial evidence presented, which collectively affirm Cypress LLC's rightful claim to these assets.

Enclosed are documents substantiating our claim and addressing the objection's concerns. We highlight key agreements, transaction records, and industry precedents, underscoring the legitimacy of our claim.

We respectfully urge the Court to recognize our claim's validity and overrule the objection. We are available for any further clarification or discussion.

Pg 2 of 28

Dated:  December 19, 2023                    Respectfully,

_____

Ivan Wong
Managing Partner
Cypress LLC
30 N Gould St, Suite R
Sheridan, WY 82801
Email: ivan@cypress.org
Telephone: (408)-444-2678

# Exhibit Index

**Exhibit A: Electronic Proof of Claim - 3315-61-DDZER-636344847 (Page 4)**
- Official claim filed by Cypress LLC for 351,937.50 Terra (LUNA), outlining the nature and specifics of the claim.

**Exhibit B: Telegram Confirmation by Hamill Serrant, Director of Lending (Page 6)**
- Confirmation from the Director of Lending at GCC, LLC regarding the LUNA airdrop obligations to Cypress LLC.

**Exhibit C: Email Confirmation and Vesting Schedule (Page 7)**
- Official email detailing the vesting terms for the LUNA v2 airdrop entitlements.

**Exhibit D: Luna v2 Airdrop Vesting Schedule (Page 11)**
- Document specifying the release timeline for the airdrop tokens owed to Cypress LLC.

**Exhibit E: Loan Term Sheet (Page 15)**
- The initial agreement illustrates the terms of the LUNA loan from Cypress LLC to GCC, LLC.

**Exhibit F: Master Borrow Agreement (Page 16)**
- The comprehensive contractual agreement, including part V clause (c) Lender's Right to New Tokens in the event of airdrops, governing the cryptocurrency loan.

**Exhibit G: Evidence of LUNA Transfer to Genesis's Wallet (Page 21)**
- Transaction records showing the transfer of 300,000 LUNA to Genesis's custody.

**Exhibit H: Terraform Labs Confirmation (Page 23)**
- Telegram message from Terraform Labs corroborating the receipt of airdropped LUNA by Genesis.

**Exhibit I: Genesis Coin Holdings (Page 24)**
- Ledger details evidence for Genesis's possession of 586,789 LUNA tokens.

**Exhibit J: Relevant Pages from Flare-Airdrop-Motion-Docket-No.-1819 (Page 25)**
- Legal precedent regarding the authorization of airdropped digital assets in bankruptcy proceedings, specifically an order authorizing debtors to credit Flare Tokens to eligible account holders.

## Exhibit A

## Electronic Proof of Claim - 3315-61-DDZER-636344847

- The official claim was filed by Cypress LLC for 351,937.50 Terra (LUNA), meticulously detailing the nature and specifics of the claim. Notably, this claim is distinct from and should not be conflated with Claim #55, which was erroneously recorded as involving LUNC. The discrepancy between the two underscores the need for careful examination and rectification to ensure the accurate representation of Cypress LLC's claim in the bankruptcy proceedings. This exhibit serves to clarify the true nature of the claim and rectify any confusion arising from the misrecording, thus affirming the legitimacy and precision of Cypress LLC's filing.

Genesis Proof of Claim Form

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Helium (HNT) | | USD Coin (USDC) | |
| Horizen (ZEN) | | Wrapped Bitcoin (WBTC) | |
| Injective (INJ) | | Wrapped Luna (WLUNA) | |
| Kusama (KSM) | | XRP (XRP) | |
| Kyber Network Crystal v2 (KNC) | | Yearn.Finance (YFI) | |
| Litecoin (LTC) | | Zcash (ZEC) | |
| BIT (BitDAO) | | | |

Do you hold additional coins in your account not listed above?
○ No
◉ Yes

| Coin List | Count |
|---|---|
| Terra (LUNA) | 351937.5 |

Genesis Proof of Claim Form

---

### Part 2: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

Airdrop received from lent Terra LUNA tokens

Are you a current or former Gemini Trust Company, LLC user?

⦿ No
○ Yes

If yes, is your claim related to any loans you made through the Gemini Earn Program?

○ No
○ Yes

**9. Is all or part of the claim secured?**

⦿ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

☐ Motor vehicle

☐ Other

Pg 6 of 28

## Exhibit B

**Telegram Confirmation by Hamill Serrant, Director of Lending at GCC, LLC**

- Confirmation from Hamill Serrant, Director of Lending at GCC, LLC regarding the LUNA airdrop obligations to Cypress LLC.



Pg 7 of 28

## Exhibit C

**Email Confirmation and Vesting Schedule**

- Official email from Hamill Serrant, Director of Lending at GCC, LLC detailing the vesting terms for the LUNA v2 airdrop entitlements.

Cypress <> LUNA v2 Airdrop





## Cypress <> LUNA v2 Airdrop

**Hamill Serrant** <hamill@genesiscap.co>                                  Wed, Aug 17, 2022 at 12:57 PM
To: Ivan Wong <ivan@cypress.org>
Cc: "assets@cypress.org" <assets@cypress.org>, Genesis Capital | Rates <rates@genesiscap.co>, Genesis Global Capital
Legal <Legal@genesiscap.co>

Good morning Ivan –

Thank you for the patience. Please see attached vesting schedule

Best,

Hamill

---

**From:** Ivan Wong <ivan@cypress.org>
**Sent:** Wednesday, August 17, 2022 6:15 AM
**To:** Hamill Serrant <hamill@genesiscap.co>
**Cc:** assets@cypress.org; Genesis Capital | Rates <rates@genesiscap.co>; Genesis Global Capital Legal
<Legal@Genesiscap.co>
**Subject:** Re: Cypress <> LUNA v2 Airdrop

[EXTERNAL]

Hi Hamill,

Just following up on the LUNA vesting schedule.

Thank you,

Ivan

On Fri, Jul 8, 2022 at 12:49 PM Ivan Wong <ivan@cypress.org> wrote:

Hi Hamill,

Hope you are doing well.

4/12/23, 9:38 AM                                   ✗✗✗✗✗✗✗ Cypress <> LUNA v2 Airdrop

Are there any updates on what the LUNA staking rate will be set at?

Thank you,

Ivan

On Tue, Jun 28, 2022 at 5:13 PM Hamill Serrant <hamill@genesiscap.co> wrote:

Thanks for the note.

Will revert back here with comments

**From:** Ivan Wong <ivan@cypress.org>
**Sent:** Tuesday, June 28, 2022 12:10 PM
**To:** Hamill Serrant <hamill@genesiscap.co>
**Cc:** assets@cypress.org; Genesis Capital | Rates <rates@genesiscap.co>; Genesis Global Capital Legal <Legal@Genesiscap.co>
**Subject:** Re: Cypress <> LUNA v2 Airdrop

[EXTERNAL]

Hi Hamill,

Thanks for preparing this.

Following up on yesterday's discussion on the staking rate:

The 7% fixed inflation rate should be considered the lower bound for the vesting staking rate. The 7% is calculated based on the total supply being staked. This 7% is then distributed amongst stakers so generally the apy will be higher than 7% because not everyone is staking.

As reference per Terra Station, the current staking ratio is 54% with a staking yield of 14% apy.

Hope that helps.

Kind regards,

Ivan

On Mon, Jun 27, 2022 at 6:11 PM Hamill Serrant <hamill@genesiscap.co> wrote:

Hey Ivan –

Attached, please find the proposed LUNA vesting schedule.

Any questions do not hesitate to let us know.



**Hamill Serrant**

Genesis Global Capital

Director - Lending

hamill@genesiscap.co

t: (212) 668-0279



**cypress_LUNA_vesting_staking_08172022.xlsx**
203K

**Exhibit D**

**Luna v2 Airdrop Vesting Schedule**

- Document specifying the release timeline for the airdrop tokens owed to Cypress LLC provided by Hamill Serrant, Director of Lending at GCC, LLC

Note: This main page provides an overview of the spreadsheet (cypress_LUNA_vesting_staking_08172022.xlsx) in a condensed format. For a more detailed view and easier readability, please refer to the subsequent pages, where the information is broken down into a print-friendly and larger display version.



| Pre-attack Airdrop | |
|---|---|
| # LUNA owed to Cypress | 310,420.5213 |
| # LUNA vested per day over 2 year period | 424.651876 |
| | |
| **Post-attack Airdrop** | |
| # LUNA owed to Cypress | 4.5923781 |
| | |
| **Staking rewards** | |
| Minimum annual staking APR | 7.00% |
| Median validator commission fee | 5.00% |
| Minimum annual staking APR minus commission fee | 6.65% |
| | |
| **Final Tally** | |
| Total LUNA owed excluding staking reward | 310,425.11 |
| Staking rewards accrued during year 1 | 20,643.27 |
| Staking rewards accrued during year 2 and 3 | 20,869.19 |
| **Total LUNA owed including staking rewards** | **351,937.57** |

| | |
|---|---|
| # LUNC borrowed from Cypress | 300,000.00 |
| pre-attack LUNA ratio | 1.034735071 |
| post-attack LUNA ratio | 0.000015307927 |

| Pools | LUNA Airdropped on Terra 2.0 |
|---|---|
| Pre-Attack aUST Holders | 0.01827712143 |
| Pre-Attack LUNA (LUNC) Holders | 1.034735071 |
| Post-Attack UST (USTC) Holders | 0.02354800084 |
| Post-Attack LUNA (LUNC) Holders | 0.000015307927 |

| Pools | Alloc. % | LUNA Alloc. | Vesting Period |
|---|---|---|---|
| 1) Community Pool<br><br>(10% earmarked for developers) | 30% | 300 million | N.A |
| 2) Pre-Attack LUNA (LUNC) holders<br><br>(Including bonded, unbonding, and staking derivatives) | 35% | 350 million | < 10k LUNA: 30% unlocked at genesis; 70% vested over 2 years with 6 month cliff<br><br>< 1M LUNA: 1 year cliff, 2 year vesting thereafter<br><br>> 1M LUNA: 1 year cliff, 4 year vesting thereafter |
| 3) Pre-Attack aUST holders<br><br>(500K whale cap) | 10% | 100 million | 30% unlocked at genesis; 70% vested over 2 years thereafter with 6 month cliff |
| 4) Post-Attack LUNA (LUNC) holders<br><br>(Including bonded, unbonding, and staking derivatives) | 10% | 100 million | 30% unlocked at genesis; 70% vested over 2 years thereafter with 6 month cliff |
| 5) Post-Attack UST (USTC) holders | 15% | 150 million | 30% unlocked at genesis; 70% vested over 2 years thereafter with 6 month cliff |

| Date | Units unlocked | Staking rewards | Total owed | Notes |
|---|---|---|---|---|
| 5/27/23 | Unlocking commences for pre-attack airdrop | 20,643.27 | | 20,643.27 Staking rewards accrued during year 1 |
| 6/3/23 | 2,972.56 | 395.90 | 3,368.46 | |
| 6/10/23 | 2,972.56 | 392.11 | 3,364.67 | |
| 6/17/23 | 2,972.56 | 388.32 | 3,360.88 | |
| 6/24/23 | 2,972.56 | 384.53 | 3,357.09 | |
| 7/1/23 | 2,972.56 | 380.73 | 3,353.30 | |
| 7/8/23 | 2,972.56 | 376.94 | 3,349.51 | |
| 7/15/23 | 2,972.56 | 373.15 | 3,345.72 | |
| 7/22/23 | 2,972.56 | 369.36 | 3,341.92 | |
| 7/29/23 | 2,972.56 | 365.57 | 3,338.13 | |
| 8/5/23 | 2,972.56 | 361.78 | 3,334.34 | |
| 8/12/23 | 2,972.56 | 357.99 | 3,330.55 | |
| 8/19/23 | 2,972.56 | 354.20 | 3,326.76 | |
| 8/26/23 | 2,972.56 | 350.41 | 3,322.97 | |
| 9/2/23 | 2,972.56 | 346.61 | 3,319.18 | |
| 9/9/23 | 2,972.56 | 342.82 | 3,315.39 | |
| 9/16/23 | 2,972.56 | 339.03 | 3,311.60 | |
| 9/23/23 | 2,972.56 | 335.24 | 3,307.80 | |
| 9/30/23 | 2,972.56 | 331.45 | 3,304.01 | |
| 10/7/23 | 2,972.56 | 327.66 | 3,300.22 | |
| 10/14/23 | 2,972.56 | 323.87 | 3,296.43 | |
| 10/21/23 | 2,972.56 | 320.08 | 3,292.64 | |
| 10/28/23 | 2,972.56 | 316.29 | 3,288.85 | |
| 11/4/23 | 2,972.56 | 312.50 | 3,285.06 | |
| 11/11/23 | 2,972.56 | 308.70 | 3,281.27 | |
| 11/18/23 | 2,972.56 | 304.91 | 3,277.48 | |
| 11/25/23 | 2,972.56 | 301.12 | 3,273.69 | |
| 12/2/23 | 2,972.56 | 297.33 | 3,269.89 | |
| 12/9/23 | 2,972.56 | 293.54 | 3,266.10 | |
| 12/16/23 | 2,972.56 | 289.75 | 3,262.31 | |
| 12/23/23 | 2,972.56 | 285.96 | 3,258.52 | |
| 12/30/23 | 2,972.56 | 282.17 | 3,254.73 | |
| 1/6/24 | 2,972.56 | 278.38 | 3,250.94 | |
| 1/13/24 | 2,972.56 | 274.59 | 3,247.15 | |
| 1/20/24 | 2,972.56 | 270.79 | 3,243.36 | |
| 1/27/24 | 2,972.56 | 267.00 | 3,239.57 | |
| 2/3/24 | 2,972.56 | 263.21 | 3,235.78 | |
| 2/10/24 | 2,972.56 | 259.42 | 3,231.98 | |
| 2/17/24 | 2,972.56 | 255.63 | 3,228.19 | |
| 2/24/24 | 2,972.56 | 251.84 | 3,224.40 | |
| 3/2/24 | 2,972.56 | 248.05 | 3,220.61 | |
| 3/9/24 | 2,972.56 | 244.26 | 3,216.82 | |
| 3/16/24 | 2,972.56 | 240.47 | 3,213.03 | |
| 3/23/24 | 2,972.56 | 236.67 | 3,209.24 | |
| 3/30/24 | 2,972.56 | 232.88 | 3,205.45 | |
| 4/6/24 | 2,972.56 | 229.09 | 3,201.66 | |
| 4/13/24 | 2,972.56 | 225.30 | 3,197.86 | |
| 4/20/24 | 2,972.56 | 221.51 | 3,194.07 | |
| 4/27/24 | 2,972.56 | 217.72 | 3,190.28 | |
| 5/4/24 | 2,972.56 | 213.93 | 3,186.49 | |
| 5/11/24 | 2,972.56 | 210.14 | 3,182.70 | |
| 5/18/24 | 2,972.56 | 206.35 | 3,178.91 | |
| 5/25/24 | 2,972.56 | 202.56 | 3,175.12 | |
| 6/1/24 | 2,972.56 | 198.76 | 3,171.33 | |
| 6/8/24 | 2,972.56 | 194.97 | 3,167.54 | |
| 6/15/24 | 2,972.56 | 191.18 | 3,163.75 | |
| 6/22/24 | 2,972.56 | 187.39 | 3,159.95 | |
| 6/29/24 | 2,972.56 | 183.60 | 3,156.16 | |
| 7/6/24 | 2,972.56 | 179.81 | 3,152.37 | |
| 7/13/24 | 2,972.56 | 176.02 | 3,148.58 | |
| 7/20/24 | 2,972.56 | 172.23 | 3,144.79 | |
| 7/27/24 | 2,972.56 | 168.44 | 3,141.00 | |
| 8/3/24 | 2,972.56 | 164.65 | 3,137.21 | |
| 8/10/24 | 2,972.56 | 160.85 | 3,133.42 | |
| 8/17/24 | 2,972.56 | 157.06 | 3,129.63 | |
| 8/24/24 | 2,972.56 | 153.27 | 3,125.84 | |
| 8/31/24 | 2,972.56 | 149.48 | 3,122.04 | |
| 9/7/24 | 2,972.56 | 145.69 | 3,118.25 | |
| 9/14/24 | 2,972.56 | 141.90 | 3,114.46 | |
| 9/21/24 | 2,972.56 | 138.11 | 3,110.67 | |
| 9/28/24 | 2,972.56 | 134.32 | 3,106.88 | |
| 10/5/24 | 2,972.56 | 130.53 | 3,103.09 | |
| 10/12/24 | 2,972.56 | 126.73 | 3,099.30 | |
| 10/19/24 | 2,972.56 | 122.94 | 3,095.51 | |
| 10/26/24 | 2,972.56 | 119.15 | 3,091.72 | |
| 11/2/24 | 2,972.56 | 115.36 | 3,087.92 | |
| 11/9/24 | 2,972.56 | 111.57 | 3,084.13 | |
| 11/16/24 | 2,972.56 | 107.78 | 3,080.34 | |
| 11/23/24 | 2,972.56 | 103.99 | 3,076.55 | |
| 11/30/24 | 2,977.16 | 100.20 | 3,077.35 Post-attack 4.59 LUNA fully vests on 11/27/24 and will be distributed on 11/30/24 | |
| 12/7/24 | 2,972.56 | 96.40 | 3,068.96 | |
| 12/14/24 | 2,972.56 | 92.61 | 3,065.17 | |
| 12/21/24 | 2,972.56 | 88.82 | 3,061.38 | |
| 12/28/24 | 2,972.56 | 85.03 | 3,057.59 | |
| 1/4/25 | 2,972.56 | 81.24 | 3,053.80 | |
| 1/11/25 | 2,972.56 | 77.45 | 3,050.01 | |
| 1/18/25 | 2,972.56 | 73.65 | 3,046.22 | |
| 1/25/25 | 2,972.56 | 69.86 | 3,042.43 | |
| 2/1/25 | 2,972.56 | 66.07 | 3,038.64 | |
| 2/8/25 | 2,972.56 | 62.28 | 3,034.84 | |
| 2/15/25 | 2,972.56 | 58.49 | 3,031.05 | |
| 2/22/25 | 2,972.56 | 54.70 | 3,027.26 | |
| 3/1/25 | 2,972.56 | 50.91 | 3,023.47 | |
| 3/8/25 | 2,972.56 | 47.12 | 3,019.68 | |
| 3/15/25 | 2,972.56 | 43.33 | 3,015.89 | |
| 3/22/25 | 2,972.56 | 39.54 | 3,012.10 | |
| 3/29/25 | 2,972.56 | 35.74 | 3,008.31 | |
| 4/5/25 | 2,972.56 | 31.95 | 3,004.52 | |
| 4/12/25 | 2,972.56 | 28.16 | 3,000.73 | |
| 4/19/25 | 2,972.56 | 24.37 | 2,996.93 | |
| 4/26/25 | 2,972.56 | 20.58 | 2,993.14 | |
| 5/3/25 | 2,972.56 | 16.79 | 2,989.35 | |
| 5/10/25 | 2,972.56 | 13.00 | 2,985.56 | |
| 5/17/25 | 2,972.56 | 9.21 | 2,981.77 | |
| 5/24/25 | 2,972.56 | 5.42 | 2,977.98 | |
| 5/27/25 | 1,273.96 | 0.70 | 1,274.65 | |
| Total | 310,425.11 | 41,512.46 | 351,937.57 | |

## Exhibit E

## Loan Term Sheet

- The initial agreement illustrates the terms of the LUNA loan from Cypress LLC to GCC, LLC.

### EXHIBIT B

### LOAN TERM SHEET

The following loan agreement dated February 22nd, 2022 incorporates all of the terms of the Master Borrow Agreement entered into by Genesis Global Capital, LLC ("Genesis") and Cypress LLC ("Cypress LLC") on January 5th, 2021 and the following specific terms:

| | |
|---|---|
| Borrower: | Genesis |
| Lender: | Cypress LLC |
| Borrowed Asset: | LUNA |
| Amount of Borrowed Asset: | 300,000 LUNA |
| Borrow Fee: | 5.00% annual |
| Loan Type: | Fixed Term |
| Maturity Date: | August 22nd, 2022 |
| Collateral: | - |
| Margin Limit: | 0.00% of loan value (on a net loan basis) |
| Margin Refund: | 0.00% of loan value (on a net loan basis) |
| Initial Margin Requirement: | 0.00% of loan value (on a net loan basis) |
| Genesis LUNA Address: | terra1dpt9uk4gv28ggmy7j7w9huzn2dhca5fxgc5a7c MEMO: 4E10F0DF3E4A38D70937 |

Genesis Global Capital, LLC  Cypress LLC

DocuSigned by:
Adim Offurum

By: _____
51A74E1BFF2C494...
Name: Adim Offurum
Title: Vice President

DocuSigned by:
ivan wong

By: _____
238C6D81540849E...
Name: ivan wong
Title: Managing Partner

## __Exhibit F__

**Master Borrow Agreement**

- Relevant portions from the Master Borrow Agreement, including part I Definitions, "Airdrop",  and part V Hard Fork, clause (c) "Lender's Right to New Tokens" in the event of airdrops, governing the cryptocurrency loan.

### MASTER BORROW AGREEMENT

This Master Borrow Agreement ("Agreement") is made on this 5th day of January, 2021 ("Effective Date") by and between Genesis Global Capital, LLC ("Genesis" or "Borrower"), a limited liability company organized and existing under the laws of Delaware with its principal place of business at 111 Town Square Place, Suite 1203, Jersey City, NJ 07310 and Cypress LLC ("Cypress" or "Lender") a limited liability company residing and existing under the laws of Wyoming, with its registered office in at 30 N Gould St, Ste R, Sheridan, WY 82801.

### RECITALS

**WHEREAS**, subject to the terms and conditions of this Agreement, Borrower may, from time to time, seek to initiate a transaction pursuant to which Lender will lend U.S. Dollars or Digital Currency to Borrower, and Borrower will pay a Loan Fee and return such U.S Dollars or Digital Currency to Lender upon the termination of the Loan; and

**WHEREAS**, Borrower intends to use any Loaned Assets under this Agreement in its Digital Currency lending business;

Now, therefore, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, the Borrower and the Lender hereby agree as follows:

**I.    Definitions**

"***Airdrop***" means a distribution of a new token or tokens resulting from the ownership of a preexisting token. For the purposes of Section V, an "***Applicable Airdrop***" is an Airdrop for which the distribution of new tokens can be definitively calculated according to its distribution method, such as a pro rata distribution based on the amount of the relevant Digital Currency held at a specified time.  A "***Non-Applicable Airdrop***" is an Airdrop for which the distribution of new tokens cannot be definitively calculated, such as a random distribution, a distribution to every wallet of the relevant Digital Currency, or a distribution that depends on a wallet of the relevant Digital Currency meeting a threshold requirement.

"***Authorized Agent***" has the meaning set forth in Exhibit A.

"***Borrower***" means Genesis Global Capital, LLC.

"***Borrowed Amount***" refers to the value of the Loaned Assets in U.S. dollars on the Loan Effective Date.

"***Borrower Email***" means lend@genesiscap.co.

"***Business Day***" means a day on which Genesis is open for business, following the New York Stock Exchange calendar of holidays.

1

Pg 18 of 28

V.    **Hard Fork**

(a) <u>Notification</u>

In the event of a public announcement of a future Hard Fork or an Airdrop in the blockchain for any Loaned Assets, Lender shall provide email notification to Borrower.

(b) <u>No Immediate Termination of Loans Due to Hard Fork</u>

In the event of a Hard Fork in the blockchain for any Loaned Assets or an Airdrop, any outstanding Loans will not be automatically terminated.  Borrower and Lender may agree,

10

regardless of Loan type, either (i) to terminate a Loan without any penalties on an agreed upon date or (ii) for Lender to manage the Hard Fork on the behalf of Borrower. Nothing herein shall relieve, waive, or otherwise satisfy Borrower's obligations hereunder, including without limitation, the return of the Loaned Assets at the termination of the Loan and payment of accrued Loan Fees, which includes the per diem amounts for days on which Borrower transfers Digital Currency to Lender and Lender transfers said Digital Currency back to Borrower pursuant to this section.

(c) Lender's Right to New Tokens

Lender will receive the benefit and ownership of any incremental tokens generated as a result of a Hard Fork in the Digital Currency protocol or an Applicable Airdrop (the "New Tokens") if any two of the following four conditions are met:

- *Hash Power*: the average hash power mining the New Token on the 30th day following the occurrence of the Hard Fork or Applicable Airdrop (calculated as a 30-day average on such date) is at least 5% of the hash power mining the Loaned Assets on the day preceding the Hard Fork or Applicable Airdrop (calculated as a 3-day average of the 3 days preceding the Hard Fork).
- *Market Capitalization*: the average market capitalization of the New Token (defined as the total value of all New Tokens) on the 30th day following the occurrence the Hard Fork or Applicable Airdrop (calculated as a 30-day average on such date) is at least 5% of the average market capitalization of the Loaned Assets (defined as the total value of the Loaned Assets) (calculated as a 30-day average on such date).
- *24-Hour Trading Volume*: the average 24-hour trading volume of the New Token on the 30th day following the occurrence the Hard Fork or Applicable Airdrop (calculated as a 30-day average on such date) is at least 1% of the average 24-hour trading volume of the Loaned Assets (calculated as a 30-day average on such date).
- *Wallet Compatibility*: the New Token is supported by either BitGo wallets or Ledger wallets within 30 days of the Hard Fork or Applicable Airdrop.

For the above calculations, the source for the relevant data on the Digital Currency hash power, market capitalization, and 24-Hour trading volume will be blockchain.info (or, if blockchain.info does not provide the required information, bitinfocharts.com, and if neither provides the required information, the parties shall discuss in good faith to mutually agree upon another data source) and the source for the hash power of the New Token will be bitinfocharts.com (or, if bitinfocharts.com does not provide the required information, the parties shall discuss in good faith to mutually agree upon another data source prior to the 30-day mark of the creation of the New Token).

If the Hard Fork or Applicable Airdrop meets the criteria above, Borrower will have up to 60 days from the Hard Fork or Applicable Airdrop to transfer the New Tokens to Lender. If sending the New Tokens to Lender is burdensome, upon Lender's written agreement with Borrower, Borrower can reimburse Lender for the value of the New Tokens by either (i) a one-time payment in the same Loaned Assets transferred as a part of the Loan reflecting the amount of the New Tokens owed using the spot rate agreed upon by the Parties at the time of said repayment, or (ii) returning the borrowed Digital Currency so that Lender can manage the split of

11

the underlying digital tokens as described in Section IV(b) above.  Alternatively, subject to Lender's written agreement, the parties may agree to other methods of making Lender whole for Borrower's failure to transfer New Tokens to Lender.  In all cases, Borrower will be solely responsible for payment of additional costs incurred by any transfer method other than returning the New Tokens to Lender, including but not limited to technical costs, third party fees, and tax obligations for the transaction, including but not limited to a tax gross-up payment.  For the avoidance of doubt, if Borrower returns a Loan to Lender prior to the 30th day following a Hard Fork, Borrower's obligations under this Section V shall continue for any New Tokens that meet the criteria in this subsection (c) for such Loan on the 30th day following the Hard Fork. Lender's rights to New Tokens as set forth in this Section shall survive the termination of the relevant Loan, return of the Loaned Assets, and termination of this Agreement.

**VI.**   **Representations and Warranties.**

The parties to this Agreement (individually, a "Party," collectively the "Parties") hereby make the following representations and warranties, which shall continue during the term of this Agreement and any Loan hereunder:

(a) Each Party represents and warrants that (i) it has the power to execute and deliver this Agreement, to enter into the Loans contemplated hereby and to perform its obligations hereunder, (ii) it has taken all necessary action to authorize such execution,  delivery and performance, and (iii) this Agreement constitutes a legal, valid, and binding obligation enforceable against it in accordance with its terms.

(b) Each Party hereto represents and warrants that it has not relied on the other for any tax or accounting advice concerning this Agreement and that it has made its own determination as to the tax and accounting treatment of any Loan, any Digital Currency, Collateral, or funds received or provided hereunder.

(c) Each Party hereto represents and warrants that it is acting for its own account.

(d) Each Party hereto represents and warrants that it is a sophisticated party and fully familiar with the inherent risks involved in the transaction contemplated in this Agreement, including, without limitation, risk of new financial regulatory requirements, potential loss of money and risks due to volatility of the price of the Loaned Assets, and voluntarily takes full responsibility for any risk to that effect.

(e) Each Party represents and warrants that it is not insolvent and is not subject to any bankruptcy or insolvency proceedings under any applicable laws

(f) Each Party represents and warrants there are no proceedings pending or, to its knowledge, threatened, which could reasonably be anticipated to have any adverse effect on the transactions contemplated by this Agreement or the accuracy of the representations and warranties hereunder or thereunder.

12

## Exhibit G

### Evidence of LUNA Transfer to Genesis's Wallet

- Transaction records showing the transfer of 300,000 LUNA to Genesis's wallet: **terra1dpt9uk4gv28ggmy7j7w9huzn2dhca5fxgc5a7c with Memo 4E10F0DF3E4A38D70937**

## Genesis Term Sheet with LUNA deposit address
terra1dpt9uk4gv28ggmy7j7w9huzn2dhca5fxgc5a7c with Memo
4E10F0DF3E4A38D70937

### EXHIBIT B

### LOAN TERM SHEET

The following loan agreement dated February 22nd, 2022 incorporates all of the terms of the Master Borrow Agreement entered into by Genesis Global Capital, LLC ("Genesis") and Cypress LLC ("Cypress LLC") on January 5th, 2021 and the following specific terms:

| | |
|---|---|
| Borrower: | Genesis |
| Lender: | Cypress LLC |
| Borrowed Asset: | LUNA |
| Amount of Borrowed Asset: | 300,000 LUNA |
| Borrow Fee: | 5.00% annual |
| Loan Type: | Fixed Term |
| Maturity Date: | August 22nd, 2022 |
| Collateral: | - |
| Margin Limit: | 0.00% of loan value (on a net loan basis) |
| Margin Refund: | 0.00% of loan value (on a net loan basis) |
| Initial Margin Requirement: | 0.00% of loan value (on a net loan basis) |
| Genesis LUNA Address: | terra1dpt9uk4gv28ggmy7j7w9huzn2dhca5fxgc5a7c MEMO: 4E10F0DF3E4A38D70937 |

**Blockchain proof that 300,000 LUNA sent to Genesis's wallet:
terra1dpt9uk4gv28ggmy7j7w9huzn2dhca5fxgc5a7c with Memo
4E10F0DF3E4A38D70937**

*Note: The former LUNA was forked and is now called LUNC. The links are to the LUNC (Luna Classic Chain).*

Dec 23, 2021, 4:00:11 AM (GMT)
https://finder.station.money/classic/tx/351EFB5966B074A8AC8EB0A896B98220312455
6C75E5C3049E4AD0067DEBF5AA

92,499.98 LUNA to
terra1dpt9uk4gv28ggmy7j7w9huzn2dhca5fxgc5a7c with Memo
4E10F0DF3E4A38D70937

Dec 23, 2021, 11:58:41 PM (GMT)
https://finder.station.money/classic/tx/AAC26068CA269CFBD9E7190CED9A9B01A17D
5B75950DF3DF1E34519A6D6DB450

85,000.02 LUNA to
terra1dpt9uk4gv28ggmy7j7w9huzn2dhca5fxgc5a7c with Memo
4E10F0DF3E4A38D70937

Dec 25, 2021, 12:04:08 AM (GMT)
https://finder.station.money/classic/tx/E21C72F227BE878A997B9C8A5BA5E73768D3A
61BD943E74E30B4AAF53D979B51

72,497.32 LUNA to
terra1dpt9uk4gv28ggmy7j7w9huzn2dhca5fxgc5a7c with Memo
4E10F0DF3E4A38D70937

Dec 27, 2021, 4:20:41 PM (GMT)
https://finder.station.money/classic/tx/4D8D3E8DFBFE374674D2D18837193238897F4
E61FE20B8582A80DFEAD4EFC2D5

50,000 LUNA to
terra1dpt9uk4gv28ggmy7j7w9huzn2dhca5fxgc5a7c with Memo
4E10F0DF3E4A38D70937

## Exhibit H

**Terraform Labs Confirmation**

- Telegram message from Terraform Labs employee, Terrence, corroborating the receipt of airdropped LUNA by Genesis.



## Exhibit I

## Genesis Coin Holdings

- Ledger details evidence for Genesis's possession of 586,789 LUNA tokens.

## IV. APPENDIX
### A. GGC COIN HOLDINGS (SCHEDULE A/B)

**Table below represents the quantity of coins held at GGC**

| I. Coin | Quantity Held | I. Coin | Quantity Held | I. Coin | Quantity Held |
|---|---|---|---|---|---|
| 1.) 1INCH | 1,378,915 | 35.) FET | 1,965,621 | 69.) PAX | 2,654,411 |
| 2.) AAVE | 32,973 | 36.) FIL | 2,155,763 | 70.) PAXG | 987 |
| 3.) ADA | 1,377,128 | 37.) FLOW | 21,692 | 71.) RBN | 24,923 |
| 4.) ALCX | 8,556 | 38.) FTM | 7,524,658 | 72.) REN | 4,287,362 |
| 5.) ALGO | 7,799,569 | 39.) FTM_FANTOM | 4,296,503 | 73.) RLY | 5,555,188 |
| 6.) AMP | 419,755,662 | 40.) FTT | 19,500 | 74.) SAI | 550 |
| 7.) ANKR | 23,227,187 | 41.) GALA | 0 | 75.) SAND | 5,992,827 |
| 8.) APE | 1,107,078 | 42.) GBTC | 35,939,233 | 76.) SGB | 5,421,462 |
| 9.) ATOM | 1 | 43.) GLMR_GLMR | 187 | 77.) SHIB | 21,906,369,858 |
| 10.) ATOM_COS | 85,175 | 44.) GRT | 26,210,085 | 78.) SKL | 3,957,818 |
| 11.) AVAX | 29,731 | 45.) GUSD | 517,800 | 79.) SLP1 | 3 |
| 12.) AXS | 78,258 | 46.) HBAR | 0 | 80.) SNX | 470,084 |
| 13.) BAL | 31,212 | 47.) HNT | 2,314,986 | 81.) SOL | 11,258 |
| 14.) BAT | 9,197,370 | 48.) HT | 446 | 82.) SRM | 86,439 |
| 15.) BCH | 23,130 | 49.) INJ | 135,115 | 83.) STORJ | 919,984 |
| 16.) BNB_BSC | 1 | 50.) KNC | 386,666 | 84.) SUSHI | 645,658 |
| 17.) BNBW_BSC | 21,131,181 | 51.) KNC_OLD | 113 | 85.) TERRA_USD | 192,690 |
| 18.) BNT | 261,827 | 52.) KSM | 465 | 86.) TOKE | 24,340 |
| 19.) BSV | 3,788 | 53.) LEND | 68,751 | 87.) TRX | 14,067,844 |
| 20.) BTC | 9,982 | 54.) LINK | 43,567 | 88.) UMA | 64,233 |
| 21.) BUSD | 2,009,108 | 55.) LPT | 28,101 | 89.) UNI | 251,113 |
| 22.) BUSD_BSC | 1 | 56.) LRC | 2,652,349 | 90.) USDC | 2,972,253 |
| 23.) CHZ | 684,922 | 57.) LTC | 7,511 | 91.) USDT_OMNI | 1 |
| 24.) COMP | 129,085 | 58.) LUNA | 586,789 | 92.) UST | 43,608 |
| 25.) CRV | 2,894,212 | 59.) MANA | 6,632,948 | 93.) WBTC | 8 |
| 26.) DAI | 11,676 | 60.) MATIC | 1,216,877 | 94.) WLUNA | 8,953 |
| 27.) DASH | 237 | 61.) MATIC_POLYGON | 52,950 | 95.) XEC | 49,749,704,351 |
| 28.) DOGE | 4,606,065 | 62.) MIR | 90 | 96.) XLM | 41,394,907 |
| 29.) DOPEX | 8,670 | 63.) MKR | 386 | 97.) XRP | 55,769 |
| 30.) DOT | 1,124,612 | 64.) NEAR | 27,039 | 98.) XTZ | 852,445 |
| 31.) EOS | 173,452 | 65.) Neo | 25,874 | 99.) YFI | 135 |
| 32.) ETC | 112,660 | 66.) NU | 110,150 | 100.) ZEC | 11,286 |
| 33.) ETH | 118,756 | 67.) OMG | 1,091 | 101.) ZEN | 2,185 |
| 34.) ETHE | 3,849,260 | 68.) OXT | 3,701,372 | 102.) ZRX | 2,944,869 |

**Exhibit J**

**Relevant Pages from Flare-Airdrop-Motion-Docket-No.-1819**

- This exhibit encompasses critical pages from a legal proceeding involving Celsius Network LLC, as outlined in the "Flare-Airdrop-Motion-Docket-No.-1819". It presents a pivotal legal precedent regarding the treatment of airdropped digital assets within the scope of bankruptcy proceedings. The highlighted sections focus on a court order which authorized the debtors to credit Flare Tokens to eligible account holders. This decision is particularly pertinent as it provides a judicial framework and rationale for the distribution and recognition of airdropped digital assets in a bankruptcy context. The order addresses the complexities associated with new forms of digital assets in bankruptcy cases and sets a significant precedent for similar claims, including the LUNA airdrop claim of Cypress LLC. The inclusion of these pages aims to draw parallels with the current case, underlining the court's approach and reasoning in dealing with claims related to airdrops in bankruptcy proceedings, thereby supporting the legitimacy of Cypress LLC's claim.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*, [1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING THE DEBTORS TO**
**CREDIT FLARE TOKENS TO ELIGIBLE ACCOUNT HOLDERS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), authorizing the Debtors to credit

Flare Tokens to Eligible Customers' accounts that held XRP tokens on the Debtors' platform as

of the XRP Snapshot in of the ordinary course of business, all as more fully set forth in the Motion;

and this Court having jurisdiction over this matter pursuant to  28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the Southern

District of New York, entered February 1, 2012; and this Court having the power to enter a final

order consistent with Article III of the United States Constitution; and this Court having found that

venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this

Court having found that the relief requested in the Motion is in the best interests of the Debtors'

estates, their creditors, and other parties in interest; and this Court having found that the Debtors'

notice of the Motion and opportunity for a hearing thereon were appropriate under the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

circumstances and no other notice need be provided; and this Court having reviewed the Motion

and having heard the statements in support of the relief requested therein at a hearing before this

Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted as set forth herein.

2.    The Debtors are authorized to credit Eligible Customers' accounts in the Earn

program that held XRP tokens as of the XRP Snapshot with the Flare Tokens in accordance with

the Distribution Scheme as set forth in the Flare Agreement, *provided* that if the Debtors credit

such accounts in accordance with the Flare Agreement, Flare must comply with its obligations

under the Flare Agreement, including the distribution of 150 million Flare Tokens directly to

the Debtors.

3.    Notwithstanding anything to the contrary in the Motion, this Order, or any findings

announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing

constitutes a finding under the federal securities laws as to whether crypto tokens or transactions

involving crypto tokens are securities, and the right of the United States Securities and Exchange

Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

4.    Notwithstanding the relief granted in this Order and any actions taken pursuant to

such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any

particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular

claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication

or admission that any particular claim is of a type specified or defined in this Order or the Motion;

(e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365

2

of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

5.      Nothing in this Order authorizes the Debtors to accelerate any payments not otherwise due.

6.      Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023f

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

3