

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shl

4    Adv. Case No. 23-01192-shl

5    - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    GENESIS GLOBAL HOLDCO, LLC,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   GEMINI TRUST COMPANY, LLC,

13               Plaintiff,

14          v.

15   GENESIS GLOBAL CAPITAL, LLC et al.,

16               Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18               United States Bankruptcy Court

19               300 Quarropas Street, Room 248

20               White Plains, NY 10601

21

22               December 13, 2023

23               2:09 PM

24

25

1    B E F O R E :

2    HON SEAN H. LANE

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:   ALIANNA PERSAUD

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1    HEARING re OMNIBUS

2

3    HEARING re Doc. #1036 Notice of Agenda

4

5    HEARING re Doc. #971 Motion To Authorize The Debtors To (I)

6    Further Extend The Coverage Period Of Certain Insurance

7    Policies And (II) Granting Related Relief

8

9    HEARING re Doc. # 1009 Motion To Approve Restrictions On

10   Certain Actions Of DCG

11

12   HEARING re Doc. #935 Second Application For Interim

13   Professional Compensation For Cleary Gottlieb Steen &

14   Hamilton LLP, Debtor's Attorney, Period: 6/1/2023 To

15   8/31/2023, Fee: $12,832,865.00, Expenses: $456,974.23

16

17   HEARING re Doc. #939 Second Application For Interim

18   Professional Compensation for Alvarez & Marsal North

19   America, LLC, Other Professional, period: 6/1/2023 to

20   8/31/2023, Fee: $3,132,687.50, Expenses: $5,118.83

21

22   HEARING re Doc. #920 First Application For Interim

23   Professional Compensation For Grant Thornton

24   LLP, Other Professional, Period: 4/4/2023 To 9/30/2023, Fee:

25   $74,635.50, Expenses: $938.00

Page 4

1   Doc. #922 Second Application For Interim Professional

2   Compensation For M3 Advisory Partners, LP, Other

3   Professional, Period: 6/1/2023 To 9/30/2023, Fee:

4   $843,764.50, Expenses: $890.71

5

6   HEARING re Doc. #923 Second Application For Interim

7   Professional Compensation Of Morrison Cohen LLP, Special

8   Litigation and Enforcement Counsel To The Debtors Period:

9   6/1/2023 To 9/30/2023, Fee: $230, 866.50, Expenses:

10  $5,448.69

11

12  HEARING re Doc. #936 First Interim Fee Application Of Kroll

13  Restructuring Administration LLC, As Administrative Advisor

14  To The Debtors

15

16  HEARING re Doc. #925 Second Application For Interim

17  Professional Compensation For Moelis & Company LLC, Other

18  Professional, Period: 6/1/2023 To 9/30/2023, Fee: $800,000,

19  Expenses: $43,961.04

20

21  HEARING re Doc. #917 Second Application For Interim

22  Professional Compensation Of White & Case LLP, Counsel To

23  The Official Committee Of Unsecured Creditors Period:

24  6/1/2023 To 9/30/2023, Fee: $5,517,240.00,

25  Expenses: $8,949.00

Page 5

1    HEARING re Doc. #929 Second Application For Interim

2    Professional Compensation Of Seward & Kissel LLP, For John

3    R. Ashmead, Creditor Committee Attorney, Period: 6/1/2023 To

4    9/30/2023, Fee: $43,152.50, Expenses: $1,277.10

5

6    HEARING re Doc. #931 Second Application For Interim

7    Professional Compensation Of Houlihan Lokey Capital, Inc.,

8    Investment Banker For The Official Committee Of Unsecured

9    Creditors Period: 6/1/2023 to 9/30/2023, Fee: $600,000.00,

10   Expenses: $22,292.39

11

12   HEARING re Doc. #934 Second Application For Interim

13   Professional Compensation For Berkeley Research Group, LLC,

14   Other Professional, Period: 6/1/2023 To 9/30/2023, Fee:

15   $4,667,850.00, Expenses: $14,642.49

16

17   HEARING re Adversary proceeding: 23-01192-shl Gemini Trust

18   Company, LLC v. Genesis Global Capital, LLC et al

19   Pre-Trial Conference

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 6

1    A P P E A R A N C E S :

2

3    CLEARY GOTTLIEB STEEN & HAMILTON LLP

4        Attorneys for the Debtors

5        One Liberty Plaza

6        New York, NY 10006

7

8    BY:   LUKE A. BAREFOOT

9        SEAN A. O'NEALL

10        JANE VANLARE

11

12    WHITE & CASE LLP

13        Attorneys for the Official Committee

14        of Unsecured Creditors

15        1221 Avenue of the Americas

16        New York, NY 10020

17

18    BY:   PHILIP ABELSON

19        J. CHRISTOHPER SHORE

20        COLIN WEST

21

22

23

24

25

1  WILLKIE FARR & GALLAGHER LLP

2       Attorneys for Gemini Trust Company, LLC

3       1875 K Street, N.W.

4       Washington, DC 20006

5

6  BY:  DONALD BURKE

7       MARK T. STANCIL

8

9  HUGHES HUBBARD & REED LLP

10       Attorneys for Gemini Trust Company, LLC

11       One Battery Park Plaza

12       New York, NY 10004

13

14  BY:  ANSON B. FRENLINGHUYSEN

15

16  PROSKAUER ROSE LLP

17       Attorneys for Ad Hoc Group of Genesis Lenders

18       Eleven Times Square

19       New York, NY 10036

20

21  BY:  BRIAN ROSEN

22

23

24

25

Page 8

```
 1   WEIL, GOTSHAL & MANGES LLP

 2        Attorneys for Digital Currency Group

 3        767 Fifth Avenue

 4        New York, NY 10153

 5

 6   BY:  JEFFREY D. SAFERSTEIN

 7

 8   ALSO PRESENT TELEPHONICALLY:

 9   ERIN E. DIERS

10   KEN LUKASZEWSKI

11   WALT NEUSCHAEFER

12   PHILIP RIES

13   MEI AO

14   PAUL ARONSON

15   ERIC IAN ASQUITH

16   OLIVER BAKES

17   BRENDON BARNWELL

18   ANDREW BEHLMANN

19   BENJAMIN S. BELLER

20   GABRIEL BRUNSWICK

21   GABRIEL BRUNSWICK

22   BRIAN BULTHUIS

23   DAVID CHAN

24   SAM CASCANTE

25   TOM CONHEENEY
```

1   ERIC C. DAUCHER

2   MICHAEL DIYANNI

3   MICHAEL S. ETKIN

4   KELLY FRAZIER

5   ADAM J. GOLDBERG

6   SARAH HARNETT

7   DERAR ISLIM

8   ALI A. ISMAIL

9   ZUL JAMAL

10   KEEF JOHNSON

11   BARAK KLEIN

12   TUKISHA KNOX

13   GLEN KRATOCHVIL

14   IAN LANDSBERG

15   MICHAEL LETO

16   JESSICA LIOU

17   KEN LUKASZEWSKI

18   MEI MA

19   ERIC S. MEDINA

20   MICHELE MEISES

21   EVELYN J. MELTZER

22   ANAIS MITRA

23   NIMA MOHEBBI

24   WALT NEISCHAEFER

25   BRETT MATTHEW NEVE

1    JOHN NGUYEN

2    MICHAEL PAPANDREA

3    AMANDA PARRA CRISTE

4    GREGORY F. PESCE

5    REBEKAH PRESLEY

6    ARIANNA PRETTO-SAKMANN

7    PHILIP RIES

8    CHRISTIAN RIBEIRO

9    RYAN ROMAN

10   HEATH DOUGLAS ROSENBLAT

11   JORDAN SAZANT

12   JOE SCIAMETTA

13   SALLY SICONOLFI

14   FUQAAN SIDDIQUI

15   DUSTIN P. SMITH

16   JASON SOTO

17   ANDREW SULLIVAN

18   GABE SUTHERLAND

19   ANDREW SWIFT

20   NACIF TAOUSSE

21   BRIAN TICHENOR

22   REBECCA TRICKEY

23   FRANCISCO VAZQUEZ

24   MEGHANA VUNNAMADALA

25   JEREMY WALDRIP

1   ANDREW W. WEAVER

2   GREG M. ZIPES

3   IAN BERKMAN

4   ALEX VAN VOORHEES

5   ERIC IAN ASQUITH

6   CLIFFORD KOUTSKY

7   KYLE MCKUHEN

8   NINA BAMBYSHEVA

9   MARI BICKNELL

10   SABRINA ASHA BREMER

11   RODNIKA CARTER

12   PATRICK CHARLES

13   JADE DYER-KENNEDY

14   DEANDRA FIKE

15   ASHLYN GALLAGHER

16   UDAY GORREPATI

17   DAVID C. HARTMAN

18   MIRANDA HATCH

19   MADDIE HUNDLEY

20   ANA LUCIA HURTADO

21   HOO RI KIM

22   DIETRICH KNAUTH

23   CLIFFORD KOUTSKY

24   MIKE LEGGE

25   BRADLEY LENOX

1    SAMUEL LEVANDER

2    THOMAS Q. LYNCH

3    JACK MASSEY

4    AKIKO MATSUDA

5    KYLE MCKUHEN

6    RICHARD CHESTER MINOTT

7    TYLER OKADA

8    DEEP PATEL

9    KATTIE ROSS

10   ANDRES FELIPE SAENZ

11   SAMIRA SARAN

12   DAVID Z. SCHWARTZ

13   ANDY SEBE

14   DAVID SHREVE

15   PETER J. SPROFERA

16   PO J. SPOFERA

17   VINCE SULLIVAN

18   GORDON SUN

19   CATHY TA

20   KATE THOMAS

21   GEMMA TUNG

22   MICHAEL WEINBERG

23   TIM WOLFE

24

25

Page 13

1                    P R O C E E D I N G S

2            THE COURT:  Good afternoon.  We are here this

3    afternoon for an omnibus hearing in Genesis Global Holdco,

4    LLC, and a few adversary proceedings.  We'll start, as we

5    always do, with appearances.  So, starting with Debtor's

6    Counsel.

7            MR. BAREFOOT:  Good morning, Your Honor, Luke

8    Barefoot, from Cleary Gottlieb Steen & Hamilton.  And I'm

9    joined by my partners, Sean O'Neal and Jane VanLare.

10           THE COURT:  All right, good afternoon.  And on

11   behalf of the Official Committee of Unsecured Creditors?

12           MR. ABELSON:  Good afternoon, Your Honor.  Phil

13   Abelson, White & Case, on behalf of the Committee.  I'm

14   joined today by Chris Shore and Colin West.

15           THE COURT:  All right, good afternoon.  On behalf

16   of Gemini Trust Company?

17           MR. BURKE:  Good afternoon, Your Honor.  Donald

18   Burke of Willkie Farr & Gallagher, for Gemini Trust Company.

19   Joined by my -- Mark Stanfil, and also our co-counsel, Anson

20   Frenlinghuysen, at Hughes Hubbard & Reed.

21           THE COURT:  All right, good afternoon.  On behalf

22   of the Ad Hoc Group?

23           MR. ROSEN:  Good afternoon, Your Honor.  Brian

24   Rosen, Proskauer Rose, on behalf of the Ad Hoc Group.

25           THE COURT:  All right.  On behalf of Digital

Page 14

1    Currency Group?

2            MR. SAFERSTEIN:  Jeffrey Saferstein from Weil

3    Gotshal & Manges on behalf of Digital Currency Group.

4            THE COURT:  All right.  Good afternoon.  And as is

5    often, or always the case for this particular matter, there

6    are pages and pages of folks who are going to participate in

7    today's hearing.  But that's different than needing than

8    needing everybody's appearance for the folks who anticipate

9    speaking at the hearing.  So, with that, I'll throw it over,

10   throw it open to anybody else who needs to make an

11   appearance at this time, who has … hold on a second … all

12   right, sorry, I don't know what that was, but it's gone now.

13           So, I'll throw it open to anybody else who needs

14   to make an appearance, with the understanding that if

15   someone doesn't chime in now but needs to speak later, they

16   can always enter their appearance later.  But with that

17   said, anybody else?

18           All right.  So, I do have a copy of the amended

19   agenda that was filed on the docket for today.  And so, I'll

20   turn it over to Debtor's counsel in the first instance, to

21   give sort of an overview of how we expect to go through the

22   agenda.

23           Oh, and I guess one last thing I would say, I know

24   for one of the adversary proceedings, I know there were a

25   series of letters on the 12th, Docket 11 and 12 on … for

1    Adversary Proceeding 23-1192, about scheduling.  I just

2    wanted to make sure that people know I have them, I've read

3    them.  So, just check that box.

4            So, with that, I'll turn it over to Debtor's

5    counsel.

6            MR. BAREFOOT:  Thank you, Your Honor, Luke

7    Barefoot from Cleary Gottlieb again, for the Debtors.

8    Subject to Your Honor's views, we would propose to proceed

9    in the order of matters listed on the amended agenda that

10   was filed at Docket Item 1041 and begin with the Insurance

11   Motion.

12           THE COURT:  All right, please.

13           MR. BAREFOOT:  Thank you, Your Honor.  So, then

14   the first item on the agenda is the Debtor's Motion for

15   Authorization, and to the extent required, to extend the

16   coverage period on certain of their directors' and officers'

17   liability policies.  At the outset, as an evidentiary

18   matter, I'd like to introduce into the record, as hear

19   direct testimony, the declaration of Arianna Pretto-Sakmann,

20   which was filed as Exhibit B to the motion.

21           THE COURT:  All right, anybody wish to be heard on

22   the request to admit that as evidence for today's

23   proceeding?  Hearing no response and noting that, in fact,

24   there has been no objections to the motion as well, I'm

25   happy to receive it.

Page 16

1          MR. BAREFOOT:  Thank you, Your Honor.  Your Honor,

2     as the motion explains, and as the Court may recall, the

3     Debtors previously extended the coverage period on these

4     policies through December 28 of this year, thinking,

5     hopefully, at the time, that that would get us through the

6     emergency.  In light of the current confirmation schedule,

7     we are seeking, through this motion, an additional three-

8     month extension, through March 28, 2024, of the coverage

9     period.  And at the same time, are seeking to put into place

10    six years of tail coverage that would begin on the effective

11    date.  The total cost for both of those pieces is

12    approximately 2.1 million.  However, the Debtors will

13    receive a pro rata refund, to the extent that they emerge

14    prior to the March 28, 2024 date.

15          There was, as Your Honor noted, no opposition

16    filed to the motion.  The Debtors did agree to certain

17    revisions, through informal discussions, with counsel for

18    the Official Committee, and we filed a revised proposed

19    order at Docket Item 1035, reflecting those revisions, which

20    give the Committee consultation rights and a reservation of

21    rights, concerning the allocation of cost for these extended

22    policies, between the Debtors and their non-debtor

23    affiliates, who are also covered under the terms of the

24    policies.

25          So, unless Your Honor has any questions, we would

Page 17

1    respectfully request entry of the proposed order.

2            THE COURT:  All right, thank you very much.

3    Anything from the Official Committee?

4            MR. ABELSON:  No, Your Honor.

5            THE COURT:  All right, thank you very much.

6    Anything from any other party?  All right, hearing no

7    response, I am happy to grant the motion for all the reasons

8    that you set forth and summarize here this afternoon, and

9    then are set forth in more detail in the motion, I find it

10   appropriate under the facts and circumstances of the case,

11   and consistent with applicable law.  And thank you for the

12   revised proposed order.  And we can move onto the next

13   matter.

14           MR. BAREFOOT:  Very good, Your Honor.  I'll turn

15   it over to my partner, Mr. O'Neal.

16           MR. O'NEAL:  Good afternoon, Your Honor.  Sean

17   O'Neal, Cleary Gottlieb, on behalf of the Debtors.  We are

18   here today on the, what we call the NOL Motion.  On October

19   -- November 29, we filed a motion at Docket Number 1009,

20   seeking an order approving restrictions on certain actions

21   by DCG, our corporate parent, that could impair our interest

22   in net operating losses, NOLs, that are generated by the

23   Debtors.

24           The motion is not opposed, and DCG has consented

25   to its entry.  Before we even filed the motion, we

1    circulated a draft motion order to the main parties in

2    interest; the Creditors Committee, the Ad Hoc Group, and

3    the, and DCG.  And their comments on the motion and order

4    are reflected in what you have before you, Your Honor.  It

5    is a customary motion, similar to motions that Your Honor

6    has probably seen in very many cases.

7             As stated in the motion, DGH, the Debtors, have

8    generated more than 700 million in federal net operating

9    losses.  That can be carried forward to reduce taxable

10   income in future periods.  The bulk of these losses, if not

11   all of them, were generated by the Three Arrows Capital

12   situation.  And as Your Honor is aware, it's well settled

13   through Prudential and other precedent, that a debtor's

14   interest in net operating losses are property of the estate.

15   And here, we're simply trying to protect that property.

16            Currently, the Debtors are part of a consolidated

17   group, for tax purposes, with DCG.  That means that DCG can

18   utilize NOLs, but it also means that DCG must include the

19   Debtor's taxable income in the group consolidated return.

20   And we filed the motion because, you know, without the

21   motion, DGH's ability to use NOLs could be impaired.  For

22   example, if DGH were removed from the DCG consolidated tax

23   group, or if DCG -- or I should say, the Debtors, were to

24   undergo an ownership change by means of a worthless stock

25   deduction or otherwise.

Page 19

1          Accordingly, the motion seeks to restrict DCG from

2    deconsolidating with DGH, from claiming worthless stock

3    deduction with respect to DGH stock, or otherwise causing an

4    ownership change.  There is a process that is described in

5    the motion and order that if DCG desires to take such

6    action, they will have to give us and the notice party 10

7    days' notice.  And then, if there is no objection, it could

8    go forward on the basis as described in the notice.  And if

9    there is an objection, there'd have to be a court hearing.

10          And as I said, Your Honor, these are relatively

11    standard procedures, and there are no objections.

12          Unless Your Honor has any questions or comments,

13    we respectfully request that the Court enter the order.

14          THE COURT:  All right, thank you very much.

15    Anything from the Committee?

16          MR. ABELSON:  No, Your Honor.

17          THE COURT:  All right, thank you.  Anything from

18    any other party?

19          MR. SAFERSTEIN:  Your Honor, very quickly, Jeffrey

20    Saferstein from Weil Gotshal & Manges on behalf of Digital

21    Currency Group.  As Mr. O'Neal set out, we worked with the

22    Debtors to come up with an acceptable form of order, and

23    which we were able to do.  So, on that basis, DCG has no

24    objection.

25          THE COURT:  All right, thank you very much.  Any

Page 20

1   other party?  All right, hearing nothing further, seeing no

2   objection on the docket to this motion, I'm happy to grant

3   it for the reasons summarized this afternoon by Mr. O'Neal

4   and set forth in more detail in the motion, as appropriate

5   under the facts and circumstances, and consistent with

6   applicable law.  It's obviously crucial, crucial importance

7   to preserve the substantial asset of the estate, and this

8   motion does that.  So, motion is granted.  So, Mr. O'Neal,

9   back to you or another member of your team.

10          MR. O'NEAL:  Thank you, Your Honor.  We're going

11  to turn it over to Ms. VanLare, who is going to address the

12  fee applications.

13          THE COURT:  All right, thank you.

14          MS. VANLARE:  Good afternoon, Your Honor.  Jane

15  Vanlare, Cleary Gottlieb Steen & Hamilton on behalf of the

16  Debtors.  I would like to present the Debtors, the Debtor

17  professionals' fee applications that were filed on the

18  docket.  And then I'll turn it over to the Committee to

19  present the Committee professionals' fee applications.

20          I will start with the fee application filed by our

21  firm, Cleary Gottlieb Steen & Hamilton, at ECF number 935.

22  We have, subsequent to the filing of the fee application, we

23  did receive some comments from the US Trustee, following

24  discussions with Mr. Zipes, we agreed to reduce our fee

25  request by $33,975.  We believe that the US Trustee's issues

1    are resolved and they don't have additional objections to

2    the fee application.  We do think that Your Honor be, we ask

3    that you approve the application in light of the work that's

4    been done by our firm and all the progress that we have

5    made.

6              In addition, we did discuss with the Office of the

7    US Trustee, and we did file a proposed, revised proposed

8    order, reflecting a reduction in the holdback.  So, as you

9    may recall, Your Honor, following the hearing on our first

10   interim fee application, in which Your Honor instructed us

11   to apply a 20 percent holdback, we did that, as did all of

12   the other estate professionals, Debtor and Committee

13   professionals.  Now, we are much later in the case.  As I

14   mentioned, we think there's been a lot of progress made in

15   the case.  And we did reach out to the Office of the US

16   Trustee, we spoke to them, and believe that they have no

17   objections to a 10 percent holdback going forward, of the --

18   excuse me, a 10 percent holdback as it relates to the first

19   interim and the second interim application.  I think they

20   reserve their rights on future interim fee applications.

21             We have discussed this with Committee

22   professionals, as well as other major constituencies in

23   these cases, including the Ad Hoc Group and Gemini, and

24   neither of those parties have objected.

25             We reached out to Chambers, and understand that

Page 22

1    Your Honor has views on that and, of course, would

2    appreciate hearing from you.  But the request is for you to

3    approve the application, subject to the release of the 10

4    percent in the holdback.

5            THE COURT:  Mr. Zipes, anything from the UST?

6            MR. ZIPES:  Your Honor, Greg Zipes with the US

7    Trustees Office.  We had that discussion and Your Honor, I

8    would just state that every case is, is its own unique

9    facts.  And we are, as Ms. VanLare stated, we are not

10   necessarily agreeing in any future fee application cycle, to

11   agree to the same holdback.  Your Honor, we also, obviously,

12   it's the Court's ultimate decision.

13           THE COURT:  Thank you very much.  Anybody else

14   wish to be heard on the application of Clearly Gottlieb.

15   All right, hearing nothing further …

16           I'm obviously happy to approve the application,

17   given all the work that's been done and the progress that's

18   been made, that is detailed in an extensive way, in the fee

19   application itself.  As for the holdback, some of you may

20   have heard this speech before, so if you have, I apologize,

21   I'll keep it short.

22           The idea of having a policy on holdbacks did not

23   have to negotiate it in every case, because then it feels

24   vaguely pejorative.  Your case is, is, is, you know, in one

25   situation, your case is in another.  And so, I have the

1    general policy, that's how all cases start out.  And as they

2    progress, as this one has, towards a conclusion, which we

3    see in the, down the road, in a February confirmation

4    hearing, then we assess as we go forward.

5            So, I agree that it is a case-by-case circumstance

6    here, given everything that I've seen and the recoveries

7    that have been discussed in considerable detail at the

8    disclosure statement hearing, and in other vehicles

9    throughout the course of the case.  It's pretty clear we

10   don't have any issue with administrative, being

11   administratively insolvent, or any such things, which is one

12   of the reasons for having a holdback in the first place.

13           So, under the facts and circumstances of the case,

14   I'm happy to go along with your suggestion here.  And so, I

15   appreciate the transparency about it, and the conversations

16   in advance of the court hearing.  But I agree with you.  And

17   again, it's not a reflection of any views, a change in any

18   of my views about this holdback in cases going forward.  And

19   again, they all start out in the same way, and then we sort

20   of see how it goes.  So, I think it's … we definitely

21   reached an appropriate time and place for, for this

22   approach.  So, I, I'm happy to agree.

23           MS. VANLARE:  Thank you very much, Your Honor.

24           THE COURT:  And as for the other applications, I

25   see we have another six, so I'm happy, maybe, if you want to

Page 24

```
 1    do them in two groups, perhaps, as you see fit.

 2            MS. VANLARE:  Sure, Your Honor.  Following Cleary

 3    Gottlieb, next on the agenda we have the fee application of

 4    Alvarez and Marsal North America, LLC, that was filed at

 5    Docket 939.  That request is also reflected in the proposed

 6    fee order.

 7            Following that, Your Honor … I'm sorry, I'll pause

 8    there, see if anybody has any, if you have any questions on

 9    the Alvarez --

10            THE COURT:  All right.  Well, I would suggest we

11    do them as a group and then I'll canvas the virtual room for

12    any comments on, on -- however many you want in the group,

13    I'll leave to your considered professional judgment.

14            MS. VANLARE:  Sounds good, Your Honor.  Thank you.

15            Then, next, we have the Grant Thornton LLP interim

16    application.  This is actually a first interim fee

17    application that is the Debtor's tax advisor.

18            Next we have the fee application of M3 Advisory

19    Partners LP.  This is the second interim fee application

20    filed at Docket number 922.  M3 Advisory Partners is a

21    financial advisor to the Debtors.

22            Next we have the fee application of Morrison Cohen

23    LLP, second interim fee application as well.  This fee

24    application was filed at Docket number 923.

25            Next we have the application of Kroll
```

Page 25

1    Restructuring Administration LLC.  That was filed at Docket

2    number 936.

3            Next we have the Moelis & Company LLC second

4    interim fee application, filed at Docket number 925.

5            I believe that concludes the fee application, fee

6    applications for the Debtors' professionals.  Again, all of

7    the amounts are reflected in the proposed order.  And with

8    that, Your Honor, I'll stop, because I believe the remainder

9    are Committee professionals.

10           THE COURT:  All right, so it's a good time to

11   canvas the room, see if there are any comments on the

12   remainder of the Debtors' professionals and their

13   application.  So, Mr. Zipes, anything from the US Trustee's

14   Office on this group of six?

15           MR. ZIPES:  Your Honor, Greg Zipes with the US

16   Trustee's Office.  I would just make the general statement

17   that we, we try to be in touch with the professionals about

18   specific issues.  And we, we aren't necessarily in touch

19   with them on every fee application.  But we, these are

20   interim and we reserve our rights for the final hearing,

21   obviously.

22           THE COURT:  All right.  Thank you very much.  Any

23   other party that wishes to be heard in connection with this

24   group of six interim fee applications?

25           All right.  Based on my review of the applications

Page 26

1    and the supporting documentation, and also the current

2    circumstances in the case, I'm happy to approve these

3    interim fee applications as appropriate under the facts and

4    circumstances here, given the work that's been done, and

5    find them to be appropriate.  And obviously, they're interim

6    and will get to the finals at an appropriate time.

7            So, with that, I think we can move onto Agenda

8    Item number 8, to address the Committee's fee applications,

9    which I believe are on the right 8, through number 11.  So,

10   Committee counsel.

11           MR. ABELSON:  Thank you, Your Honor.  Again, Phil

12   Abelson, White & Case, for the Committee.  Your Honor, would

13   you like me to take the four?  There are four on the agenda

14   for the Committee, and I can take them as a group.

15           THE COURT:  Yeah, I'll leave it to you, but I have

16   no problem with that approach, yes.

17           MR. ABELSON:  Okay.  I think that would be most

18   efficient.  So, Your Honor, I'll start with White & Case.  I

19   see Mr. Ashmead has appeared.  If Mr. Ashmead doesn't mind,

20   I'll just include the Seward & Kissel application in the

21   group.

22           Starting with White & Case, Agenda Item number 8,

23   the application was filed at Docket number 917.  There were

24   no comments, either formal or informal, received, or

25   objections.

Page 27

1            Moving onto Houlihan Lokey, which is the

2    Committee's investment banker, that was at Agenda number 10,

3    Docket number 931.  And again, Your Honor, no objections or

4    comments.

5            Next is Berkeley Research Group, which is at

6    Agenda number 11, docket number 934, and same for BRG.

7            And then last, you know, Seward & Kissel,

8    (indiscernible), which is Agenda Item number 9 and Docket

9    number 929.  And again, for -- we received no comments

10   either way to any of the Committee professional application.

11           THE COURT:  All right, thank you very much.  So, I

12   will circle the virtual room on, on these.  And so I'll

13   start with Debtor's counsel.  Anything from the Debtors on

14   these applications?  I'll take that as a no.  Anything from

15   the United States Trustee's Office as to these applications?

16   Am I muted?  All right?

17           MR. ABELSON:  Your Honor, I should say no.  I'll

18   say no, Your Honor.

19           THE COURT:  All right, thank you.  I just wanted

20   to make sure I'm not a tree falling in the forest with no

21   one there.  All right, anyone else who wishes to be heard in

22   connection with these interim applications of Committee

23   professionals?  All right, I didn't expect to hear anything

24   there, so the silence is entirely appropriate.  And I'm

25   happy to approve these interim applications of the

Page 28

1    Committee's professionals that are on the agenda for today,

2    as appropriate under the facts and circumstances in

3    applicable law, and obviously they'll be addressed in a

4    final fee application.  But with that, I think we can move

5    onto the next matters on the agenda.  Since we've concluded

6    the professional fee applications, I think we're onto

7    adversary proceedings.

8            MR. ABELSON:  Thank you, Your Honor.

9            THE COURT:  Thank you.

10           MR. BAREFOOT:  Your Honor, Luke Barefoot from

11   Cleary Gottlieb for the Debtors.  There are a number of

12   adversary proceedings that either had motions or pretrial

13   conferences that have been adjourned.  The only adversary

14   proceeding that's going forward in the nature of a pretrial

15   conference, that was the subject of the letter exchanged

16   that Your Honor referenced at the outset of the hearing, is

17   one of the two Gemini adversary proceedings; Gemini's

18   adversary proceeding against the Debtors, which is

19   proceeding under Adversary Docket 23-1192.

20           THE COURT:  All right.

21           MR. BAREFOOT:  So, Your Honor, happy to proceed

22   however you'd like, certainly prepared to give a brief

23   summary of the relatively narrow issue that's before Your

24   Honor on the difference between Gemini and the Debtors on

25   the, the proposed schedule for moving forward with the

Page 29

```
 1   adversary proceeding.

 2          THE COURT:  All right.  Well, I've read the

 3   letters, which were helpful, and I appreciate the thought

 4   that went into them.  I have the schedules and, as I see it,

 5   the Debtors have a bifurcated approach for the reasons they

 6   set forth.  And Gemini prefers one, sort of one larger,

 7   essentially, hearing and proceeding, with everything to

 8   track.

 9          So, I'm happy to, Mr. Barefoot, go give you an

10   opportunity if you wanted to comment on anything in

11   particular.  But don't feel the need to do so, in the sense

12   that I have your, I have your explanation and I, I got it.

13   So, anything you want to highlight, otherwise I'll, I'll

14   sort of ask the same set of questions to, to the Gemini

15   folks.

16          MR. BAREFOOT:  Got it.  Your Honor, in light of

17   that, I'll just be very brief.  We believe, as we set forth

18   in our letter, that the two issues in the Gemini proceeding

19   are factually, temporally, and legally distinct.  The one

20   concerning the, the original DBTC, what was pledged, and

21   whether that was validly foreclosed on.  The second, which

22   very importantly is a condition precedent to effectiveness

23   of our plan, which is whether they, Gemini has a security

24   interest, or a constructive trust in the second set of GBTC

25   shares that they allege were pledged in, in November of
```

Page 30

1   2023.

2          And it is a very material dispute.  As described

3   in our disclosure statement, if Gemini prevails in arguments

4   with respect to that second tranche of GPC collateral, that

5   has up to a 10 percent negative swing on creditor recoveries

6   overall.  So, for that very reason, under our schedule, we

7   prioritize the dispute that is a condition precedent, to

8   effectiveness of a plan, which is that second set of GBTC

9   shares.  And under our approach, we would have those heard

10  on January 18, which would give the Court a full month

11  before even confirmation to, you know, potentially render a

12  decision on that motion to dismiss.

13         By contrast, we think their decision, or their

14  proposed schedule really, potentially, squeezes the Court,

15  giving it less than two weeks between the consolidated and

16  much broader, hearing on a broader motion to dismiss, and

17  the proposed confirmation date.

18         Your Honor, effectively, their schedule seeks to

19  extend and delay the decision on the pending motions to

20  dismiss on this second tranche of collateral, and the

21  expense of timely distributions to creditors, I think, for

22  the benefit of perceived leverage.

23         THE COURT:  All right, thank you very much.

24         MR. BAREFOOT:  Sorry, Your Honor, just, there are

25  two other very minor issues that are between the parties,

1    that I don't think were highlighted in the letters.  The

2    first, you may see that we used Your Honor's form of

3    proposed pretrial order.  Gemini's proposed pretrial order

4    did not fully track that model order from Your Honor's local

5    rules.  We've since clarified with Gemini that there is no

6    dispute between the parties about the additional sort of

7    boilerplate provisions in Your Honor's form of order that

8    were included in our proposed order.

9           And the second, relatively minor, difference

10   between the parties is the date for the answer.  The

11   technical date for the answer, given that we filed our

12   counterclaims on … in November 21, actually passed

13   yesterday.  We proposed an additional three days so that

14   Gemini would have until Friday to files its answer and

15   motion to dismiss.  Gemini's schedule has that at December

16   21.  Particularly given that that would kind of really jam

17   the Debtors over the holidays, we think December 15 is, is a

18   reasonable compromise, and more than the rules would

19   require.

20           THE COURT:  All right, thank you very much.  So,

21   let me hear from Gemini.

22           MR. BURKE:  Good afternoon, Your Honor, Donald

23   Burke from Willkie Farr & Gallagher, for the Plaintiff,

24   Gemini Trust Company.  I think I'll, I'll address the

25   bifurcation issue.  There's a few points I wanted to clarify

Page 32

1      about the discovery schedule before I get there, to make so

2      they don't get lost.

3             One point is that although, as Mr. Barefoot noted,

4      we're largely agreed on the discovery schedule.  There is, I

5      think, a difference between the two proposed orders as to

6      the deadline by which parties would serve their initial

7      RFPs, that would then be subject to a substantial completion

8      deadline at the end of January.  The Debtor has proposed

9      January 17.  And pursuant to discussions, we had with the

10     Debtors previously, we have a deadline at the end of

11     December, which seems more reasonable to us, given that we

12     may not be able to substantially complete production, you

13     know, only two weeks after an RP is served.  That's one

14     minor point of departure with the proposed orders.

15            I also want to emphasize that the discovery

16     schedule that's reflected in our proposed order, we do think

17     is appropriate and workable as the case stands today,

18     although we have been in discussions with both the Official

19     Committee and the Ad Hoc Group of Creditors as to potential

20     intervention in the case.  And depending on the terms in

21     which the Ad Hoc Group in particular seeks to intervene,

22     we're unsure whether that schedule will turn out to be

23     workable.  And in particular, this relates to assurances

24     that counsel for the Ad Hoc Group be able to accept service,

25     discovery, for the group members, so that we can proceed on

Page 33

```
 1    the fairly expedited timeframe that's contemplated in the

 2    proposed order.

 3         I don't think that is teed up for decision or, or

 4    argument for the Court today, other than for me to flag that

 5    the schedule that's in these proposed orders is sort of

 6    contingent on those ongoing discussions.  And if the Ad Hoc

 7    Group comes into the case without that kind of assurance, we

 8    may need a longer discovery period.

 9         Turning to the bifurcation question, our position

10    is that it's much more efficient and orderly to have both

11    the Motion to Dismiss, the complaint that the Debtors have

12    filed, and also our motion as to counterclaims, briefs and

13    teed up for a hearing by this Court, at the same time, in

14    one combined hearing.

15         We propose a schedule that would have everything

16    briefed and ready for a hearing on February 1.  That's still

17    two weeks before the scheduled confirmation hearing in this

18    case.  And given what we see as inefficiency of having the

19    parties prepare for in the corporate (indiscernible), hold

20    two different hearings on what are closely related issues in

21    terms of both the facts and, potentially, overlapping legal

22    issues.  It just makes a lot more sense to us to, to have,

23    you know, one synched up schedule that arrives at a hearing

24    February 1, which again, is well before the, the scheduled

25    confirmation date, and we think, you know, even farther
```

1    before any potential effectiveness of the plan here.

2            That's our, that's our position as to bifurcation.

3    We do think it would be unnecessary and inefficient here.

4    If the Court is inclined to hold the hearing on January 18,

5    as the Debtor has proposed, we do think bifurcation makes a

6    lot of sense, but disagree with the, the sequencing.  I

7    think, in that scenario, it would be much more efficient and

8    helpful to the Court to sort of split the bifurcation

9    between the Debtor's motion to dismiss the complaint, and

10   our motion as to the counterclaims, and simply hear the, the

11   Debtor's motion on January 18.  I think that would give the

12   parties a bit more time to brief the issues.  In particular,

13   it would avoid the need to, to drop the reply brief on Your

14   Honor just a couple of days before that January 18 hearing.

15   So, I think the, from our perspective, if you want to go

16   with January 18, and you think bifurcation makes sense, we

17   think it would make sense to start the briefing process on

18   December 21.  And then, sort of sequence the brief so that

19   Your Honor would have more time in advance of that January

20   18 hearing, rather than prejudicing our side by, by having

21   our reply come in, you know, just a couple of days before

22   that hearing.

23            THE COURT:  Well, let me ask you about the subject

24   matter of that briefing.  So, I'm looking at the Debtor's

25   letter and their proposed schedule, just because I need to

1    have one in front of me, and you're responding to their

2    proposal.  I guess it's in paragraph 3, to say that the

3    motion to dismiss on counterclaims 4, 5, 6 and 7, shall

4    proceed in the following way.  And that dovetails with the

5    schedule in paragraph 2 on the Motion to Dismiss counts 2, 3

6    and 4.  How does this subject matter overlap or, or not, in

7    your view, between the matters; that is, what's in counts 2,

8    3 and 4, and what's in the counterclaims 4, 5, 6 and 7.

9            MR. BURKE:  I think, in terms of the factual

10   background, there's a great deal of overlap.  Because, as

11   Your Honor is aware, this case pertains to two tranches of

12   collateral.  Both of them were pledged pursuant to the same

13   security agreement.  There are multiple agreements to that

14   security agreement, the first of which is relevant to that

15   initial tranche of collateral.  The second tranche is

16   relevant to the additional collateral that was pledged in

17   November of last year.

18           So, in broad strokes, there's factual overlap.  In

19   addition, the Debtors have pleaded avoidance actions as to

20   both tranches of collateral.  They're distinctly

21   (indiscernible), but they both seek avoidance of transfers

22   of property under the Bankruptcy Code.  And we anticipate

23   that our responses to both of those claims are likely to

24   raise overlap in legal defenses and arguments.  So, I think

25   there's legal interplay between, you know, all of the

Page 36

1    counterclaims that, that would be briefed together under,

2    under the sort of second proposal; not our primary proposal,

3    just everything on the same schedule, but different

4    bifurcation where the issues are divided up slightly

5    differently.

6              THE COURT:  All right.  Anything else, counsel?

7              MR. BURKE:  I think that's it from my perspective,

8    Your Honor, thank you.

9              THE COURT:  All right.  Let me hear from the

10   Committee, if the Committee has anything they wanted to

11   weigh in on?

12             MR. ABELSON:  We do, Your Honor, thank you.  So,

13   first of all, Your Honor, I think just an update on the

14   status, our status in the adversary proceeding.  We haven't

15   yet formally intervened, but that will be coming shortly.

16   My understanding is that we are in agreement with Gemini on

17   all material terms of the Committee's intervention.  And the

18   only thing left to resolve are the issues relating to the Ad

19   Hoc Group that counsel for Gemini mentioned.

20             And so, we have been part of the discussions

21   relating to the case, including those that led to the

22   scheduling issues that are before the Court today.  And we

23   have been a strong advocate for the schedule that the Debtor

24   is now proposing, or that the Debtors are now proposing.

25             Under ordinary circumstances, Your Honor, we, we

Page 37

1    perhaps wouldn't have fought so hard on issues relating to

2    the format of a hearing and, and what amounts to a few weeks

3    on the schedule.  And you know, I certainly hope that our

4    participation in the larger case to date reflects that we're

5    not picking fights for no reason.

6           So, this one is important to, to the Committee.

7    That's largely for the reasons that Mr. Barefoot described.

8    But I did want to respond just respond briefly to a couple

9    of points that, that counsel for Gemini mentioned.  We think

10   the issues are, are really distinct.  Factually, any overlap

11   is, is superficial.  Yes, it is the same parties and the,

12   you know, the same general time period.  But it's really two

13   entirely different transactions, with two sets of legal

14   issues that are going to govern the outcome.  And so, we

15   really strongly disagree with the idea that they need to be

16   heard together because of overlap, legal or factual or

17   otherwise, for efficiency reasons.

18          I think, more importantly, Your Honor, and it's

19   important to note that Debtors' motion was filed nearly

20   three weeks ago, on November 21.  We think it's entirely

21   reasonable, especially under the circumstances, to go

22   forward with the hearing on those issues, on January 18.  No

23   one is seeking to expedite the resolution of that motion.

24   The issue before the Court is whether we're going to delay

25   the hearing for the purposes of joining it with a set of

Page 38

1     other, more complex issues, relating to the Tranche 1

2     collateral, which don't need to be resolved for the plan to

3     go effective.

4             So, what, what is driving the Debtors' proposed

5     schedule is the desire to make sure this Court has time to

6     address and resolve the motions on the Tranche 2 issues,

7     with sufficient time to make sure that that dispute doesn't

8     delay the effectiveness of the plan, or distributions to the

9     creditors.  We think these issues, which are whether Gemini

10    had a security interest in Tranche 2, or alternatively, the

11    right to a constructive trust, can and should be resolved on

12    the pleadings, and the record associated with the pleading.

13    Obviously, we feel the Debtors have very strong legal

14    arguments on both of these issues.  But even in a

15    hypothetical, and we hope likely scenario, in which the

16    Court does not agree, that the claims can be dismissed at

17    the pleading stage.

18            We, of course, want to know that as soon as, as

19    soon as possible, so we can deal with it, and the associated

20    plan (indiscernible) issues that it would entail.  So,

21    that's what's driving our position, and thank the Court for

22    its consideration.

23            THE COURT:  All right, thank you very much.  Any

24    other party that wishes to be heard?

25            MR. ABELSON:  Can I just make one point of

1    clarification.  Mr. Burke did mention that there is a

2    difference in two proposed orders on the deadline for

3    service of requests for production.  I candidly think that

4    that was inadvertent on our part, and we are fine with

5    Gemini's proposal to cut off the deadline for request for

6    production in late December.

7              THE COURT:  All right, thank you for that.

8    Anything else from anyone else?

9              MR. ABELSON:  Your Honor, might I have just one

10   more moment?

11             THE COURT:  Briefly, yes.

12             MR. ABELSON:  Thank you, I appreciate it.  I

13   realize that I overlooked some (indiscernible) to a portion

14   in Mr. Barefoot's remarks.  I just wanted to --

15             THE COURT:  I've read your, I've read your

16   letters, so this is just hitting the high points so, that's

17   --

18             MR. ABELSON:  Yeah.  No, I understand, Your Honor,

19   and this is responsive to a point that I don't believe was

20   raised in the Debtor's letters.  I just wanted to make a

21   point briefly, which is to reject the suggestion that our

22   scheduling proposal is intended to extract (indiscernible).

23   I think the primary difference between the parties really

24   goes to the, the sort of timeframe by which the issues need

25   to be briefed and, and put before your Court, so that they

1   can be resolved, you know, sufficiently in advance of the

2   confirmation hearing.  If, if Your Honor, Your Honor's view

3   is that you would require more time, you know, after the

4   hearing, before the confirmation, before the hearing on this

5   adversary, before the confirmation hearing, then you know,

6   we understand and respect that.  And I think, and that's an

7   area that bifurcation would make sense, but we do think that

8   the sequencing should be slightly different for the reasons

9   I outlined previously.

10          THE COURT:  All right.  So, thank you for the

11   letters.  They were thoughtful.  I appreciate the comments,

12   including the … getting … resolving issues, low hanging

13   fruit that don't need to be the subject of, of a ruling.

14          So, I am inclined to think that bifurcation is, is

15   the way to go here, for a couple of reasons.  Courts have

16   always recognized the distinction between matters that

17   affect confirmation and are gating issues before

18   confirmation, and those that aren't.  And what I'm hearing

19   is that these are … well, they're part of, these issues are

20   part of the, these issues are part of the parties' ongoing

21   relationship.  They are distinct both factually and legally.

22   And as a practical matter, I never know how long it's going

23   to take to decide these things.  So, one of the things

24   that's sort of baked in here is how long it's going to take

25   the Court to figure it out.  And I can never answer that,

Page 41

1   because I don't know.  And I won't know until I get in the

2   weeds, and even then.

3          So, courts always hedge our bets to try to make it

4   as, as … so that we are in a position to rule on gating

5   confirmation issues promptly.  And so, the bifurcation

6   approach, I think, is more consistent with that.  And that's

7   putting aside any issues that other customers -- I do have

8   another MEGA case that has a confirmation early in 2024,

9   that is very much going from day to day in terms of trying

10  to figure out its path forward.

11         So, I think those are all things that counsel for

12  the bifurcated approach.  And so, I do think it's relevant

13  that the Committee favors the Debtors' view, and sort of,

14  given its fiduciary obligations.  And I, I do think it's

15  also relevant this, this isn't being … by agreeing to this

16  expedited schedule and putting certain things first, we're

17  putting them first, but we're not expediting them.  So, I

18  think for all those reasons it's, it's appropriate to go

19  with a bifurcated approach.  And if, if the parties and the

20  Court have the bandwidth to get everything resolved before

21  confirmation, great.  But we sort of all have to hedge our

22  bets to try to allow the case to, to move forward

23  expeditiously.  That's the one thing that all parties have

24  stated at various times in this case that -- about getting

25  this resolved quickly, and that's what their, their clients

1    want, it's what the customers want, its what the Debtor

2    wants, it's what everybody wants.  And I think this is

3    consistent with that and more consistent with that concern,

4    without sacrificing, in any way, anybody's procedural

5    rights.

6           So, there are a couple of sort of hanging chads

7    that I think we need to discuss, dealing with discovery.

8    And the issue about whether to unhinge, I guess it's

9    paragraphs 2 and paragraph 3.  So, if I, if I am

10   understanding correctly, paragraph 2, what's being

11   contemplated to be briefed in Debtor's proposed schedule

12   under paragraph 2, and paragraph 3, are things that relate

13   to the same set of transactions.  And so, as opposed to the

14   different tranche, that's sort of the subject of paragraph

15   4.

16           Assuming I have that correctly, I think I do, I

17   think it, I think it does make sense to keep those together,

18   because that's the kind of overlap that can be problematic

19   for res judicata, collateral, estoppel reasons, as well as

20   for efficiency.  So, I don't have a problem doing those

21   together.  But I do think that the other tranche -- I think

22   there's degrees of separateness, and I think there's, the

23   way the scheduling order is laid out is, is 2 and 3 are

24   different, but much closer cousins than 2 and 4.  And so, I

25   think that's why that was proposed to be handled that way.

1    That seems sensible to me.  And I always reserve the right,

2    to the extent that we get into arguments and say, "Well,

3    Judge, this is what you really should decide first, second,

4    and third.  And these are other legal issues, and we think

5    you should stagger them this way or that way or the other

6    way, we'll get into it.  But again, you recognize I'm

7    dealing with this from a, sort of a thousand-foot view.  I'm

8    not nearly as familiar with the issues as you are.  I have

9    looked at the motion to dismiss briefly.  But I'm, I'm

10   certainly not anywhere close to where you all are, in terms

11   of being in the weeds.  So, so that was one hanging chad.

12           And the other is the question of, of discovery.

13   And so, let me ask, so what else is out there that, that I

14   haven't addressed yet, that we need to talk about?  I know

15   there were some things that you all hadn't quite hit a wall

16   on yet.  You had a difference of opinion.  I'm happy to let

17   you continue to talk in the, in the context of what guidance

18   I have given you.  Or I'm also happy to try to help rip the

19   band aid off in one fell swoop, because you have other

20   things to do in your life.  I'll -- somebody let me know

21   what you think.

22           MR. BAREFOOT:  Your Honor, I think we're actually

23   agreed on paragraph 5 in our proposed order, subject to

24   revising paragraph 5A to move it to the, the deadline for

25   request for production to be what Willkie has proposed as

Page 44

1    December 27, which is acceptable to the Debtors.  I think

2    those other dates for fact and expert discovery, are

3    identical between our two proposals.

4              THE COURT:  All right, so let me ask the Debtors

5    if there's anything else that we need to address in the

6    context of this adversary proceeding and schedule?

7              MR. BAREFOOT:  Your Honor, I don't believe so.

8    We'll, we'll make the, that revision to the proposed order,

9    run it by Mr. Burke and, presumably, submit it to chambers

10   shortly.  And otherwise, we will be off to the races on

11   briefing and discovery.

12             THE COURT:  All right.  And Mr. Burke, anything

13   else?

14             MR. BURKE:  Your Honor, could I interject, yeah,

15   thank you.  I think, I just want to make sure I understand

16   the concept, which is to follow the Debtors' proposal, where

17   both, I guess the response to … their Motion to Dismiss and

18   our Motion to Dismiss, the first tranche of counterclaims,

19   be briefed such that it can be heard on or about January 15.

20   Is that what I understood?

21             THE COURT:  Well, yeah.  Well, said another way, I

22   think the proposal that they've put forth in their order I

23   agree with, which is in terms of paragraphs 2, 3 and 4, so

24   it separates out.  It keeps together 2 and 3, and it

25   separates out 4.  And so, I, based on what I've heard, I

1    think that that's an appropriate approach.

2            MR. BURKE:  Okay.  So, with that understood, I'd

3    make the request that the deadline, the first deadline here,

4    which the Debtor included in a proposal, of December 15,

5    which is this Friday, we would ask that that be moved out at

6    least until after the weekend, just because the, the

7    December 21 date that we had proposed in our, our order,

8    goes back to prior discussions with the Debtors, and it's

9    something we've been sort of tracking towards.  And so, I

10   think that it would be particularly helpful from our

11   perspective to at least get, you know, moving from December

12   15 until after the weekend at least.

13           THE COURT:  So, you're talking --

14           MR. BAREFOOT:  Your Honor, that's fine.

15           THE COURT:  -- about 2, 2A and 3A going from

16   December 15 to December 18?

17           MR. BURKE:  That's correct, Your Honor.

18           THE COURT:  All right.  Mr. Barefoot?

19           MR. BAREFOOT:  That's fine with the Debtors, Your

20   Honor.

21           THE COURT:  All right.  So, we'll make that change

22   as well.  All right.  And I can't, somebody can remind me --

23           MR. BURKE:  We appreciate that, Your Honor, thank

24   you.

25           THE COURT:  Sure.  There was also a discussion

1   about an answer, and I can't remember if that was something

2   that we needed to address.  Obviously, this is a briefing

3   schedule on motions to dismiss, but I do remember someone

4   mentioning an answer.  So, remind me if there's anything we

5   need to address in connection with, with that.

6          MR. ABELSON:  Your Honor, I think you're right

7   that we do need to address that, and it's not addressed in

8   the proposed order.  But I think, you know, the answer in

9   the Motion to Dismiss, to the extent there are counts that

10  they don't anticipate moving against, and anticipate

11  answering instead, those should be on the same schedule.

12  But we would, I think, just make the deadline to answer the

13  same December 18.

14          THE COURT:  All right.  Since I am in the Charles

15  Brieant Courthouse, I do feel dutybound to pass along the

16  wisdom of the late Charlie Brieant who said the answer was

17  the most useless piece of paper in a litigation.  But I

18  don't want that to influence anyone's views on the briefing

19  schedule.  But Mr. Burke, your thoughts?

20          MR. BURKE:  Well, with that (indiscernible), I'm

21  not sure I'm supposed to be talking now … I suggest that

22  maybe it would make sense for us to discuss with Mr.

23  Barefoot -- I'm actually not sure which of the two motion to

24  dismiss deadlines actually correspond to a sensible answer

25  deadline, just because it may not, may not be entirely clear

Page 47

1   until January 5, which is the last of the motion to dismiss

2   deadlines, which is the --

3          THE COURT:  So, here's what I'll do.  I don't

4   think the --

5          MR. BURKE:  -- claims in the complaint we would be

6   moving to dismiss.

7          THE COURT:  I don't think the answer is, is the

8   thing driving the train here.  So, I'll let you all chat.

9   And if you … I expect you'll be able to come up with

10  something that works for all of you.  If for some reason you

11  don't, you know, pick up the phone and we'll have a

12  conversation.  But I think -- again, this … you're much

13  closer to it than I am.  So, I'm one instrument in the

14  context of this.  So, I'd much rather have the answer come

15  from your consultations than from me randomly picking

16  something.  So, so why don't we do that?  And I think the

17  most important thing is, is the briefing schedule and what's

18  being briefed when, and that I think we have well in hand.

19         MR. BAREFOOT:  Understood, Your Honor.  We'll

20  confirm with Mr. Burke concerning the answer date, and I'm

21  sure, as you said, we can come up with a reasonable

22  agreement.

23         THE COURT:  All right.  All right.

24         MR. BURKE:  Yeah, I share that expectation as

25  well.

Page 48

1          THE COURT:  Okay, great.  Thank you, and I

2    appreciate that.  So, with that, let me ask the Debtors if

3    there's anything else that we need to address here this

4    afternoon?

5          MR. BAREFOOT:  No, you know, that concludes

6    today's agenda, and we will see you next week.

7          THE COURT:  All right.  Let me ask if there's

8    anything from any other party.  All right, hearing nothing,

9    thank you all and I will see you all next week.  Be well.

10          MR. BAREFOOT:  Thank you, Your Honor.

11          (Whereupon these proceedings were concluded at

12    3:03 PM)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 49

1                          I N D E X

2

3                          RULINGS

4                                         Page      Line

5

6    Motion for Authorization Granted      21         2

7    Interim Fee Applications Approved     27         1

8    Committee's Professional Interim Fee

9         Application Approved             30        24

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 50

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   *Sonya M. Ledanski Hyde*

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  December 19, 2023