Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shl

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GENESIS GLOBAL HOLDCO, LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   Adv. Case No. 23-01168-shl

12   - - - - - - - - - - - - - - - - - - - - - - - - - - x

13   GENESIS GLOBAL CAPITAL, LLC,

14           Plaintiff,

15           v.

16   DIGITAL CURRENCY GROUP, INC.,

17           Defendant.

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19

20

21

22

23

24

25

Page 2

Adv. Case No. 23-01169-shl

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GENESIS GLOBAL CAPITAL, LLC,

             Plaintiff,

             v.

DCG INTERNATIONAL INVESTMENTS LTD.,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                     United States Bankruptcy Court

                     300 Quarropas Street

                     White Plains, NY 10601-4140

                     Thursday, December 21, 2023

                     2:12 PM

B E F O R E :

HON SEAN H. LANE

U.S. BANKRUPTCY JUDGE

ECRO:  ALIANNA PERSAUD

1    HEARING re Doc. #1057 Notice of Agenda

2

3    HEARING re Status Conference Regarding Pro se Objections

4

5    HEARING re Adversary Proceeding 23-01168-shl Genesis Global

6    Capital, LLC v. Digital Currency Group, Inc.

7            Doc. #9 Debtor's Motion for Entry of (I) Consent

8            Judgment Against the DCG Parties and (II) Order

9            Authorizing, to the extent necessary, GGC to Take

10           Actions in Furtherance of the Partial Repayment

11           Agreement Pursuant to Sections 105(a) and 363(b) of the

12           Bankruptcy Code, or, in the alternative, Bankruptcy

13           Rule 9019(a)

14

15   HEARING re Adversary Proceeding 23-01169-shl Genesis Global

16   Capital, LLC v. DCG International Investments Ltd.

17           Doc. #11 Debtor's Motion for Entry of (I) Consent

18           Judgment Against the DCG Parties and (II) Order

19           Authorizing, to the extent necessary, GGC to Take

20           Actions in Furtherance of the Partial Repayment

21           Agreement Pursuant to Sections 105(a) and 363(b) of the

22           Bankruptcy Code, or, in the alternative, Bankruptcy

23           Rule 9019(a)

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   CLEARY GOTTLIEB STEEN HAMILTON, LLP

 4        Attorney for the Debtor

 5        One Liberty Plaza

 6        New York, NY 10006

 7

 8   BY:  SEAN A. O'NEAL, ESQ.

 9

10   PROSKAUER ROSE LLP

11        Attorney for Ad Hoc Group of Genesis Lenders

12        Eleven Times Square

13        New York, NY 10036

14

15   BY:  JORDAN SAZANT, ESQ.

16

17   WEIL GOTSHAL MANGES LLP

18        Attorney for Digital Currency Group, Inc.

19        767 Fifth Avenue

20        New York, NY 10153

21

22   BY:  JEFFREY D. SAFERSTEIN, ESQ.

23

24

25
```

Page 5

1    WHITE & CASE

2         Attorneys for Official Committee of Unsecured Creditors

3         1221 Avenue of the Americas

4         New York, NY 10020

5

6    BY:  PHILLIP ABELSON, ESQ.

7         J. CHRISTOPHER SHORE, ESQ.

8

9    HUGHES HUBBARD REED LLP

10         Attorney for Gemini Trust Company, LLC

11         One Battery Park Plaza

12         New York, NY 10004

13

14    BY:  TALIA L. HELFRICK

15

16

17

18

19

20

21

22

23

24

25

Page 6

1               P R O C E E D I N G S

2          THE COURT:  Good afternoon.  This is Judge Sean

3    Lane, in the United States Bankruptcy Court for the Southern

4    District of New York.

5          We're here for a 2:00 hearing in Genesis Global

6    Holdco LLC, a Chapter 11 case.  So we'll start, as we always

7    do, with appearances.  And so, starting with the debtors.

8          MR. O'NEAL:  Good afternoon, Your Honor.  Sean

9    O'Neal, Cleary Gottlieb, on behalf of the debtors.

10         THE COURT:  All right.  Good afternoon.  And on

11   behalf of the Official Committee of Unsecured Creditors?

12         MR. ABELSON:  Good Afternoon, Your Honor.  Phil

13   Abelson, White & Case, on behalf of the official committee.

14   With me today is my partner, Chris Shore.

15         THE COURT:  All right.  Good afternoon.  On behalf

16   of the ad hoc group?

17         MR. SAZANT:  Good afternoon, Your Honor.  Jordan

18   Sazant, of Proskauer Rose, on behalf of the ad hoc group.

19         THE COURT:  Good afternoon.  On behalf of Digital

20   Currency Group?

21         MR. SAFERSTEIN:  Good Afternoon, Your Honor.

22   Jeffrey Saferstein, from Weil Gotschal & Manges, on behalf

23   of Digital Currency Group.

24         THE COURT:  Good afternoon.  And on behalf of

25   Gemini Trust Company?

Page 7

1           MS. HELFRICK:  Good Afternoon, Your Honor.  Talia

2     Helfrick, Hughes Hubbard & Reed, on behalf of Gemini Trust

3     Company.

4           THE COURT:  All right.  Good afternoon.  And as is

5     always the circumstance with this case, or these cases,

6     there are several pages worth of potential appearances, and

7     I know a lot of folks are here to listen in.  So at this

8     point, rather than guess, I will simply ask if there's

9     anyone else who needs to make an appearance for purposes of

10    today's hearing.

11          All right, hearing no responses, I will turn it

12    over to the debtors, noting that we have an agenda for

13    today's proceeding.  And I think we also have another matter

14    that I think was probably not on the agenda originally, at

15    least, in terms of something that was filed by an individual

16    creditor.  But we'll deal with that in the fullness of time.

17    So, counsel, take it away.

18          MR. O'NEAL:  Sure.  Your Honor, Sean O'Neal, on

19    behalf of the debtors, Cleary Gottlieb Steen & Hamilton.

20          I think really today we only have one item on the

21    agenda, and that is the motion concerning the partial

22    repayment agreement.  And I will walk you through that here

23    in just a moment.  We filed two motions in the adversary

24    proceedings, Docket Numbers 9 and 10.  Those motions seek

25    approval of entry of a consent judgment against the DCG

Page 8

1    parties and an order authorizing the debtors, to the extent

2    necessary, to take actions and furtherance of the partial

3    repayment agreement.  We have received no objections to the

4    motions.  And, Your Honor, I am hearing some background

5    noise.  I'm not sure if that's in the courtroom or outside

6    of the courtroom.  I hope it's not too distracting for you.

7              THE COURT:  I am not hearing any background noise,

8    so from my point of view, things are okay.  I'm not sure if

9    that situation is shared by others.  Anybody else want to

10   chime in?

11             MR. O'NEAL:  Okay.  I think we're fine, Your

12   Honor.

13             THE COURT:  All right.

14             MR. O'NEAL:  And so there were no objections

15   filed.  So I think this should just be a short presentation.

16             I'd like to begin by moving into evidence the

17   supporting declaration of Thomas Conheeney.  He is a member

18   of the special committee, and he was responsible for

19   participating and leading the negotiations with respect to

20   the partial repayment agreement.  Mr. Conheeney is in the

21   virtual courtroom today.  But with that, I would just move

22   for his admission or for the admission of his declaration

23   into evidence.

24             THE COURT:  All right.  Thank you very much.  Any

25   party wish to be heard on that request to move into evidence

Page 9

1    his declaration?  All right.  Hearing no response, I saw no

2    objection on the docket, I'm happy to receive that

3    declaration as evidence in these proceedings today.

4              MR. O'NEAL:  Thank you, Your Honor.  Because there

5    were no objections filed, I do not plan on spending a lot of

6    time on argument.  But I do want to use this opportunity to

7    explain the partial repayment agreement, to describe the key

8    terms, and to describe really the context of the partial

9    repayment agreement and particularly the payments that we

10   have received and the payments we expect to receive.  We

11   know that there's a lot of people and creditors who listen

12   to these hearings, and so this is a good opportunity for us

13   to share information with the creditor constituencies in a

14   transparent manner.  So, and of course, Your Honor, if you

15   have any questions, do feel free to interject.

16             But let me first just describe kind of at a very

17   high level the key terms of the partial repayment agreement.

18   And recall, too, that this is an amendment.  We originally

19   entered into the partial repayment agreement in September,

20   and now we have amended it because we had the right to

21   terminate it earlier a few weeks ago.  And rather than

22   terminate it, we continued to have negotiations and believe

23   we achieved a fair result.

24             Under the terms of the partial repayment

25   agreement, amended or amendment, we received $35 million in

1    cash, or in bitcoin, so 35 million in value.  And then we

2    also received $65 million in value, cash and coin from the

3    sale of CoinDesk.

4            In addition, the partial repayment agreement

5    provides for a monthly cash sweep.  That cash sweep is equal

6    to 50 percent of the dividends paid to DCG from Grayscale

7    above $10 million.  So just to give an example, if the

8    dividend is $40 million, the cash sweep, or the cash and

9    coin sweep, I should say, that we would get would be equal

10   to $15 million.  $40 million.  You take out the ten, that

11   leads you with 30 and then you have 50/50 split.  Last

12   month, in December, that payment was equal to approximately

13   --

14           THE COURT:  Hold on for one second, Counsel.  I

15   have been told by chambers that, in fact, there is noise

16   coming from the courtroom.  Now, I'm sitting in the

17   courtroom.  It's not audible to me.  So it is a classic

18   example of ghosts in the machine.  So what I think we may do

19   is we may disconnect and reconnect just to see if it's

20   coming from here.  I don't want people to have to sit

21   through that.  That's not a very good holiday present.  So

22   if people would indulge us for about 90 seconds.

23           MR. O'NEAL:  Certainly.

24           THE COURT:  We'll disconnect and reconnect.  I'm

25   very sorry to interrupt your presentation, Mr. O'Neal, but I

Page 11

1    figured, again, I couldn't hear it.  But you're spot on.  So

2    give me about 60 to 90 seconds to do that, and I'll be right

3    back.

4             MR. O'NEAL:  Certainly.  Thank you, Your Honor.

5             THE COURT:  All right.  Thank you.

6             MR. O'NEAL:  In addition, we received $65 million

7    in proceeds from the sale of CoinDesk.  In addition, there

8    is a monthly sweep.  That sweep is based on dividends that

9    DCG receives from Grayscale.  It's equal to 50 percent of

10    the dividends paid above $10 million.  So, hypothetical

11    example, if the dividend is $40 million, the cash sweep

12    would be $15 million.  You take the $40 million, take out

13    the $10 million, which leads you to $30 million, and you

14    divide it by two, and that's the amount that is paid to the

15    debtors pursuant to the cash and coin sweep.  Just by way of

16    example, last month, that was $17.5 million in value that

17    was paid.

18         In addition, as part of the amendment, we obtained

19    a pledge of certain ETH Trust shares and ETH Classic Trust

20    shares.  As of 12/12/23, those were valued at approximately

21    $114 million.  And importantly, under the amendment, all

22    amounts sought under the turnover actions must be paid by no

23    later than April 1st.

24         And then, lastly, I would just say a key term of

25    the amendment is the entry of a consent judgment, which

Page 12

1    provides that all amounts are due and owing unappealable

2    that were sought in the turnover action must be paid

3    immediately.  That consent order would be entered into

4    today, but then we would actually forbear from exercising

5    rights under that consent order or judgment unless there is

6    a default under the partial repayment agreement.  So it

7    gives us protection that in the event that DCG were to stop

8    making payments, then we would have an immediate judgment

9    that we could begin to execute on and we would not have to

10   delay.

11          Your Honor, this is built in large part on the

12   concept of a confession of judgment that is common in many

13   jurisdictions, though it's something that we have kind of

14   fashioned on our own and applied it for bankruptcy purposes.

15          So that is really the key terms of the partial

16   repayment agreement amendment.  And what I'd like to do,

17   Your Honor, is since we have many creditors on the line, in

18   the interest of transparency, I would like to describe what

19   payments have been received already and what we expect to be

20   received in the near term.

21          THE COURT:  Please.

22          MR. O'NEAL:  Yes.  Thank you.  And what's

23   interesting about this is actually we've been getting

24   payments under this without court order.  The creditors'

25   committee and the ad hoc group asked us to seek court

Page 13

1    approval.  We don't believe that court approval is

2    necessary, but nonetheless, we are seeking court approval to

3    the extent necessary.  But even before court approval has

4    been had, payments have been made.  You may recall that

5    originally about 630 million was due on May 9th, 10th and

6    11th of 2023.  That amount included about $500 million in

7    dollar loans and about what was then valued at around 130

8    million in BTC loans.  That is denominated in BTC, not

9    dollar.

10          As you can imagine, when you have BTC loans, which

11   is true of many situations where we're actually the

12   borrower, when you are dealing with BTC loans, the value

13   fluctuates with the value of BTC.  You will recall from

14   prior hearings that when we filed the case, the price of BTC

15   was approximately $19,000, and today it's just under

16   $44,000.  That gives you some idea of the market movement.

17          To date, we have received about 381.2 million in

18   payments under the partial repayment agreement.  That

19   includes about $296 million in cash and about 85.1 million

20   in BTC value.  Of this amount, about 33 million is in

21   regular interest on both loans.  And I think sometimes

22   people gloss over this.  We've actually -- yes, we forbeared

23   from exercising rights, but in exchange we were getting

24   interest.  So we've received about 33.2 million in regular

25   interest and about 3.3 million in default interest.  Now,

Page 14

1    that default interest, which we call late fees under our

2    documentation, is paid only on the BTC loans because the

3    dollar loans, there is a dispute about the payment of

4    default interest under the dollar loans.  I won't get into

5    that dispute.  All rights are reserved on that particular

6    point.  And as Your Honor knows, in a turnover action, you

7    can only seek undisputed amounts.

8              In addition to the 381 million in value that we've

9    received in payments, we received a pledge, and that pledge

10   has been fully perfected.  As we have noted on the court

11   docket in the adversary proceeding, that pledge has been

12   fully perfected.  As of 12/12/23, that value was about $114

13   million.  And that's the ETH Trust and ETH Classic Trust

14   shares that I mentioned previously.

15             In addition, Your Honor, based on current prices

16   and a fair amount of assumptions in terms of what the future

17   cash flows would be, just plugging in just a number, just to

18   plug in a number, say $15 million, we anticipate that 165

19   million would be due and owing as of April 1st in the event

20   that prices don't change.  Obviously, when prices change,

21   that will adjust the amount.  But just to give you an idea

22   of the quantum that we anticipate will be due between now

23   and April 1, it's about $164 million.  Of course, that'll be

24   reduced by any proceeds from sales and other items, but also

25   by the cash sweep, the monthly cash sweep, which you could

Page 15

1    probably estimate to be anywhere between 15 and 20 million,

2    or maybe more or less, over the next few months.

3              This all excludes late fees on the dollar loans.

4    That's because there is a dispute about that.  Just to give

5    people an idea of the quantum of that dispute, we would say

6    that about 25 million has accrued, and that through April

7    1st, about 32.5 million, including that 25 million accrual,

8    will have accrued.

9              So, Your Honor, that is basically the key terms. I

10   should note, too, that one of the things that we did is

11   there was a forbearance fee that was paid back when we

12   originally did the PRA.  That was initially going to be just

13   kind of a prepayment of debt that was matured or going to

14   mature, and we've now just made that a straight up

15   forbearance fee.  So it's not a credit to the amounts due.

16             So, Your Honor, I just wanted to really just walk

17   people through that, because I think it's not always clear

18   when you look at everything that we filed in the case, each

19   time we get a payment, we file a pleading so that people are

20   aware of it.  But then you have to convert it to, if it's

21   BTC payment, you have to convert it to the dollar amount.

22   So we thought it just would be helpful for people to

23   understand what's been paid and what we anticipate being

24   paid.  Bottom line is about 381.2 million has been paid, and

25   we would anticipate that 164 million will be paid between

Page 16

1   now and April 1.

2          And, Your Honor, I think the only other thing I

3   would say, there is a statement on the record that I would

4   like to make.  This is an agreed-upon statement by DCG and

5   the creditors' committee, and it concerns the tax-sharing

6   agreement.  So I'm just going to read this into the record

7   as an agreed-upon statement.

8          DCG has agreed to engage in good-faith discussions

9   with the debtors, the creditors' committee and the ad hoc

10  group advisors regarding entry into a mutually acceptable

11  tax-sharing agreement to become effective on the effective

12  date of what we call the no-deal plan.  This is subject to a

13  full reservation of DCG's rights with respect to the content

14  of any tax-sharing agreement and the right to not enter into

15  a tax-sharing agreement if the terms are not acceptable to

16  DCG.

17         We just wanted to put that on the record.  We are

18  going to be working on, and we currently are working on the

19  form of that tax-sharing agreement subject to a reservation

20  of rights by all parties.

21         With that, Your Honor, I have nothing further to

22  add.  And we would request that Your Honor enter both the

23  consent judgment and then the order authorizing the debtors

24  to take actions and furtherance of the partial repayment

25  agreement.  There's actually four different orders because

Page 17

1    there's two different adversary proceedings.

2            THE COURT:  All right.  Thank you very much.  So

3    let me circle the virtual room.  So, starting with DCG,

4    anything to put on the record in connection with this

5    motion?

6            MR. SAFERSTEIN:  Nothing to add, Your Honor.

7    Thank you.

8            THE COURT:  All right.  Thank you.  And as to the

9    Official Committee of Unsecured Creditors?

10           MR. ABELSON:  Nothing to add, Your Honor.  We did

11   file a statement and reservation of rights.  I think we made

12   our views clear and known.  From our perspective, the

13   consent judgment was incredibly important to our view that,

14   at the end of the day, this did not fall below the range of

15   reasonableness.  So we have nothing more to add, Your Honor.

16           THE COURT:  All right.  Thank you very much.  And

17   with that, I'll throw it open to any other party who might

18   wish to be heard in connection with this motion that is on

19   for today.

20           All right.  Hearing no party in the virtual

21   courtroom and seeing no objection on the docket, I'm happy

22   to grant the debtors' motion that provides for the entry of

23   the consent judgment, as well as an order authorizing

24   actions in furtherance of the partial repayment agreement,

25   as amended, and finding that it's appropriate under the

Page 18

1    facts and circumstances of the case and applicable law, and

2    helps to move the case forward on an issue that has been the

3    subject of much discussion since the beginning of the case.

4             And so there will be, as mentioned, more than one

5    order given the existence of the two adversary proceedings,

6    and we will get those orders entered promptly.

7             And so with that, let me turn the podium back to

8    Mr. O'Neal for anything else that might be on your agenda

9    before I raise the issue that is on my mind for purposes of

10   today.

11            MR. O'NEAL:  Certainly, Your Honor.  We have no

12   further items on the agenda.  So from our perspective,

13   there's nothing further on the agenda.

14            THE COURT:  All right.  Thank you very much.  So

15   let me dive into the issue that I wanted to discuss.  So we

16   received earlier this week an objection from what was

17   identified as a Gemini EARN BTC denominated and ETH

18   denominated creditor, and it was filed to the disclosure

19   statement and a motion to extend the voting period.

20            With that objection that was sent to chambers was

21   a form that looked very familiar, which was the consent form

22   that's been much discussed among the parties and I believe

23   is the subject of a presentment date of tomorrow.  And that

24   is the consent form that was proposed and worked, the

25   results of communications and consultation among interested

Page 19

1    parties in this case about what to do when an interested

2    party, an individual creditor, might want to file something

3    in the case.

4              And if you remember the backdrop to all this,

5    which is there was a sealing motion seeking to protect the

6    identifying information of individual creditors was the

7    subject of an opinion by this court where I essentially

8    granted that motion in large part.  And so for purposes of

9    the consent form, it was important to understand what that

10   decision did and what it didn't do.

11             What it did was keep out of the public record the

12   identity of individual creditors to the extent those folks

13   essentially were sitting in the sideline.  They may have

14   been represented by counsel as part of the Official

15   Committee of Unsecured Creditors or particular ad hoc group,

16   but they weren't individually participating, except to the

17   extent that their information would ordinarily get put out

18   into the world by virtue of various matrix and other things

19   that would be filed in connection with the case.

20             What the decision didn't do, and I think made a

21   point of noting, is that like the FTX case, that the

22   decision didn't affect people who essentially voluntarily

23   decided to throw their hat in the ring, meaning that if you

24   wanted to participate as a member of the Official Committee

25   of Unsecured Creditors, you are sort of voluntarily deciding

Page 20

1    to be involved.  And because we don't do litigation by sort

2    of ambush or in an anonymous way, that that meant being

3    identified.

4              And what the consent form did was sort of play

5    that concept forward to say that, just so everybody was

6    clear that there were two boxes on the consent form saying,

7    file this on the docket or don't file this on the docket.

8    And it made clear to say, hey, I want to file something on

9    the court docket, and I understand that my information will

10   be publicly available or there was a box that do not file

11   this on the docket and your information would not be

12   available on the docket.  And it was, again, to try to

13   memorialize and play forward this notion about protecting

14   folks' information to the fullest extent possible.  But that

15   also included the notion that if you want to voluntarily

16   participate in the case, that would mean making your

17   information available under the sort of the rules of

18   engagement, I guess, for lack of a better term.

19             So we received in chambers this objection,

20   together with this filled out consent form from this

21   individual that checked the file on the docket box.  And my

22   courtroom deputy then took the following step, which is to

23   put that all on the docket.  And while I don't think we'd

24   had a discussion about whether the consent form itself would

25   go on the docket, I think the notion would makes perfect

Page 21

1    sense to me because it makes a public record so that people

2    in the clerk's office in the court don't have to guess as to

3    whether something should be on the docket or not.  And it

4    memorializes that process.

5           Almost immediately, I think we got several

6    communications from folks saying, please remove that from

7    the docket.  It can't be on the docket.  There was no intent

8    to do this, that or the other thing, to put this information

9    on the public docket.  And so to the extent that someone

10   filled out this form and checked file this on the docket,

11   and my name and any contact information included in the

12   written communication will be publicly available, if you're

13   sending it to the court, as a way of saying, I'm not going

14   through the usual channels of publicly filing it myself,

15   that form is going on the docket because I think you need to

16   publicly identify yourself.  And so I see what my courtroom

17   deputy did as being entirely consistent with my

18   understanding of how this would work.

19          Nonetheless, there appears to have been some level

20   of confusion about what it meant or didn't mean, because I

21   think what the party, from what I can tell of emails to

22   chambers, and obviously emails to chambers are not always

23   the best way to communicate, as we're a transparent

24   proceeding here, just had the name of the individual and the

25   denomination pro se.  And so perhaps it was seeking to

1    essentially to create a third category that, well, I only

2    want some of my information out there, and so I'm going to

3    change the rules of engagement.

4           And so I think the idea is that it's not going to

5    work that way.  Either you have to do what is required to

6    publicly file something and get that out there, or you're

7    not willing to do that and therefore you won't have

8    something publicly filed on a docket.  There is no third

9    option.

10          So with that, we pulled it or we restrained access

11   to it, I think is probably the correct way to say that.  But

12   it's an opportunity to revisit so that we can be crystal

13   clear about the terms of engagement; that is, the regular

14   rules apply if you want to file something.

15          Now, I will say in connection with this particular

16   piece of paper, in somebody's decision about whether they

17   want to file something on the docket and make their

18   information that's required to file something on the docket

19   publicly available, it is an objection to the disclosure

20   statement, and it was filed after the disclosure statement

21   was the subject of two hearings, extensive conversation and

22   back and forth and has been approved.

23          So to put it in somewhat blunt fashion, the ship

24   has somewhat sailed on the disclosure statement in terms of

25   the adequacy of the information, and the request to extend

1    the voting period was tied to the request or the arguments

2    about the disclosure statement saying, please extend the

3    voting deadline until after there's additional information

4    provided.

5            So if -- I haven't ruled on this, I'm not ruling

6    on this now, but to the extent it helps for that individual

7    to have a sense of what to do here or not, the adequacy of

8    the information in the disclosure statement has already been

9    the subject of two hearings.  The very issues that were

10   discussed in the objection were discussed extensively in the

11   objections that were addressed in the colloquies back and

12   forth among the debtors, the committee, the ad hoc groups

13   and all the other interested parties that filed objections

14   to the disclosure statement, such that at the end of the

15   day, the court has already found that adequate information

16   did exist for purposes of the disclosure statement.

17           So I just mention that all in the interest of full

18   disclosure, to give people as much information as possible

19   to figure out whether they want to proceed publicly with

20   this.  But I did want to identify this as an issue and make

21   sure everybody understood the rules of engagement, meaning

22   that if you do want to individually participate and file

23   something, that means you will be subjecting your

24   information to the usual rules of disclosure.  And my sense

25   was to file the written form, just so it's very clear for

Page 24

1    purposes of the court's record, that given the decision that

2    this individual is allowing that information to be out

3    there.  But if you don't do it that way, what you could also

4    just do, simply is file it on the docket under the normal

5    rules, which does require you to disclose the appropriate

6    level of identifying information to be deemed essentially a

7    participant, but the usual rules would apply.

8             So my apologies for the length of that speech,

9    just trying to be as clear and give as clear and full an

10   explanation as possible so that folks who are listening in,

11   hopefully this is helpful.  Again, we're just trying to make

12   sure everybody's playing by the appropriate set of rules and

13   also that they know what those rules are.

14            So with that, Mr. O'Neal, I'm happy to hear from

15   any party who wants to be heard on this issue.  And again, I

16   don't have a monopoly on wisdom, and certainly to the extent

17   that I've misspoken or there's some additional information

18   people think would be helpful to put on the record today for

19   purposes of getting the message out, I'm all ears.  So, Mr.

20   O'Neal

21            MR. O'NEAL:  Certainly, Your Honor.  Thank you

22   very much for raising this.  I know there have been some

23   discussions among the various law firms involved, and I

24   think the key point that you're raising is that in addition

25   to filing the actual, what we call the written

Page 25

1    communication, which is the material that is submitted to

2    the court, the pleading that is, the court believes that it

3    is necessary in addition to file also the form that is the

4    form that says either A, file on the docket or B, do not

5    file on the docket.

6            THE COURT:  Well, let me back up for a second.  I

7    do see that the form that was checked had a thing for

8    purposes of service, your information will only, and again,

9    this isn't on for today, so we haven't had a chance to sort

10   of fully discuss it.

11           MR. O'NEAL:  Certainly.

12           THE COURT:  But it talks about information,

13   address, telephone number and email, public available.  If

14   such information is in the written communication --

15           MR. O'NEAL:  Correct.

16           THE COURT:  -- if not, don't include it in the

17   written communication.  I guess my thought is I don't want

18   to subject somebody to a higher standard of disclosure than

19   the rules provide.  But my thought is that they can't be

20   subjected to a lower one than ordinarily applies.  So I'm

21   happy to tweak the form to also say that there is no form.

22   You just need to, essentially, it'll be sent to, not to the

23   court, but to whoever it is, the committee, whoever wants to

24   keep track of this, and that people then need to publicly

25   file something.  But they can't send it to chambers without

1    the information that would be necessary to file it and then

2    say, just file what I want and not what I don't want.  So

3    the regular rules will apply.

4            MR. O'NEAL:  Correct, Your Honor.  I think we will

5    confer with the creditors' committee and other interested

6    parties on this.  It may be that a revision of the form is

7    necessary in light of Your Honor's comments just now.  I

8    think I'd note at the bottom of, and I think this is what

9    you're referring to, at the bottom of the form, there is

10   something suggesting that the information wouldn't be

11   publicly filed, that it's just for contact information

12   versus anything that's in the written communication.  So let

13   us confer with the creditors' committee and other interested

14   parties and your chambers, and we'll try to (indiscernible)

15   --

16            THE COURT:  All right.  Thank you very much.

17            MR. O'NEAL: (indiscernible) with a singular --

18   yeah.

19            THE COURT:  Yeah.  Again, I don't want to subject

20   people to a higher standard of disclosure, but I don't want

21   to excuse the disclosure that would otherwise be required to

22   file something.

23            MR. O'NEAL:  Correct.  We understand, Your Honor.

24            THE COURT:  So I welcome your thoughts, and I

25   know, if I'm remembering right, that is on -- that form is

Page 27

1    on for presentment.  The presentment of protocol for written

2    communications to the bankruptcy court by creditors is on

3    for tomorrow at 11:00.

4              MR. O'NEAL:  That is correct.

5              THE COURT:  Yeah.  So I'll wait to hear from you

6    all in terms of what you think makes sense in the context of

7    that.  Right now, the information of this individual has

8    been restricted.  It will remain restricted until we get an

9    unequivocal, one, we figure out what the order should say as

10   to the protocol that's on for presentment tomorrow, and two,

11   until consistent with whatever protocol is entered, that

12   that individual gives an unequivocal message that

13   appropriate information will be shared.  But it does mean

14   that his objection currently will not be docketed.  And I

15   assume you have a copy of it.

16             MR. O'NEAL:  Yes, we do.

17             THE COURT:  And so we'll just keep track of it

18   because I don't want it to be inadvertently pushed aside

19   just because it gets lost in the shuffle.  So we'll agree to

20   sort of keep it on the radar screen as we work through these

21   issues.

22             MR. O'NEAL:  Thank you, Your Honor.  We will

23   confer and refer to your chambers.

24             THE COURT:  All right.  Thank you very much.  And

25   so anybody else who wants to chime in on this, you don't

1   necessarily have to.  You can have these conversations

2   offline and then get back to me.  But I don't certainly want

3   to rob anyone of the opportunity to be heard if they'd like

4   to do so at this time.

5           MR. CRADAVILLE:  Your Honor, Glenn Cradaville, and

6   author of the motion that you've been talking about.  I

7   didn't expect to take up this much of anybody's time today,

8   but I do appreciate --

9           THE COURT:  No, no.  That's all right.  No need to

10  apologize.  Access to the court is your right as a citizen

11  and always happy to have participants involved.  And

12  bankruptcy and some of its rules can be -- there are some

13  things in life you can get through with good common sense

14  and intuition.  This is not one of them.  So it's perfectly

15  fine.  We'll make sure to get it as clear as possible so

16  that you know what you're signing up for, and then you can

17  make your decisions as appropriate.  So no need to

18  apologize.

19          MR. CRADAVILLE:  And if I may, yeah, I appreciate

20  you drawing attention to that clause at the bottom of the

21  form.  I certainly did not intend to stay in the shadows

22  when I filed this motion.  As one of the creditors invested

23  in Gemini EARN, with money in Genesis, we were very excited

24  these past several months since the court has put in motion

25  a process to get an avenue for us to get our words on the

Page 29

1    record.  And so when this form came out, we were thrilled.

2    Finally, there's an avenue for us to be heard and have our

3    voices heard.  I submitted the motion intending for my name,

4    along with the written communication, to be a part of the

5    court record.  I appreciate, and I acknowledge that, yes, it

6    came after the decision on the disclosure had already been

7    made.  So that part of it may be moot.  But that doesn't

8    change the fact that there are a lot of Gemini EARN users

9    who don't have any idea what specifically we will receive in

10   the distributions if this plan is approved.  So I would hope

11   that the motion for an extension of the voting period until

12   better clarity can be provided, would still be considered.

13           THE COURT:  Well, so let me just comment on that

14   briefly in terms of the procedure.  So along the path in the

15   bankruptcy case, there are certain very prominent and

16   critical steps.  They're all important, mind you, but

17   certain ones stand out as particularly important milestones.

18   And one of those is a disclosure statement.  And what a

19   disclosure statement does has been much discussed over these

20   past months, is, say, for somebody who wants to vote, you

21   are entitled to adequate information about the plan and

22   about its consequences to you and all creditors.  And that

23   needs to be teed up by motion.  That is the plan proponent

24   here, the debtors, say, Judge, we have a disclosure

25   statement, we have a plan.  We want to go forward with the

Page 30

1    plan of confirmation hearing, and we want to seek approval

2    of the disclosure statement as containing, as they say in

3    the Bankruptcy Code, "adequate information" that satisfies

4    the requirements of applicable law.

5              And so in this case, the debtors actually teed up

6    a disclosure statement, and it was the subject of not one,

7    but two separate hearings that went on, I think, the length

8    of the afternoon in both instances.  And so we probably

9    spent a full day of hearings on those issues because they're

10   important.  And there was a lot of issues that were raised

11   by a whole host of parties.  In fact, at one point, there

12   was a chart by the debtors when they filed a reply to all

13   the objections they received to sort of summarize.  There

14   were so many different objections, how many different issues

15   were raised, there was a chart that was appropriate to

16   summarize those objections and sort of where they stood.

17             At the end of that process, however, and that

18   second day of hearing, ultimately, after considering all the

19   issues, a lot of which, frankly, are addressed in your

20   objection, in terms of the adequacy of the information, in

21   terms of recovery, which was a focal point of the

22   conversations about adequate information, I ultimately

23   granted the relief of approving the disclosure statement so

24   that the plan could be submitted, could be circulated, could

25   be voted upon.

1            Now, there's other steps that will go forward.

2      There'll be a plan supplement, and there may be additional

3      developments in the case -- there probably almost invariably

4      will be, that will be publicized between now and the

5      confirmation hearing, which doesn't occur until February.

6      So Valentine's Day, if you would like to lodge it in your

7      memory.

8            So I've already approved the disclosure statement.

9      It doesn't mean the disclosure statement is perfect.  That's

10     not the standard in the code.  It means that I found it

11     contained adequate information.  And just since you're here

12     and you've filed this and raised this issue and to try to be

13     helpful for folks who have similar concerns, one of the

14     things that was discussed in detail is how to describe the

15     recoveries when there are so many different issues that may

16     impact the recoveries.  And so there were charts, there were

17     numbers, there were lots of changes to what was included in

18     the disclosure statement and there were a lot of people with

19     differing views as to what adequate disclosure would look

20     like depending on the seat that they were sitting in and

21     whose interest they were representing.

22            And so ultimately, we ended up with something that

23     puts in a lot of what I might call risk factors, that

24     identifies the different things that may happen in the case

25     and outcomes that may happen in litigation that will affect

1    the recovery.  And so at the end of the day, it meant that

2    the disclosure, the adequate disclosure, if you are a non-

3    lawyer and a non-bankruptcy lawyer, you may say, well, I'm

4    not quite sure how to understand all these risk factors

5    because it doesn't give me dollars and cents, precise

6    dollars and cents as to what I'm going to get.  But that's

7    because there are so many different issues that still have

8    to be decided that will impact that.  And some of those are

9    subject to adversary proceedings.  And so that's what the

10   disclosure statement does, is identify all those different

11   issues that are currently the subject of pending litigation

12   that is being teed up.

13            And, in fact, I think there was an opposition to

14   something filed this week on one of those adversary

15   proceedings, and so that's why the information in the

16   disclosure statement is not as simple as saying, if you're

17   in class x and you're this kind of creditor, you're going to

18   receive this many cents for every dollar you invested.  And

19   it's also complicated by the fact that there's a desire to

20   pay things in kind where possible, which means that you have

21   all sorts of different currencies that are implicated by the

22   plan and the disclosure statement.

23            So this is a very longwinded, roundabout way of

24   saying that if you're looking for a particular dollar value

25   in the disclosure statement as to exactly what you're going

1    to get, you won't find it because it's not known at this

2    time, but is the subject of a lot of factors.  And so those

3    are things that are being litigated, and the court will have

4    to decide, absent the settlement.  And so that's probably

5    the best answer I can give you on that to sort of try to

6    address what I took to be the thrust of your concerns.

7              And with that, before I hear from you, sir, I

8    thought I would throw it over to Mr. O'Neal to see if he had

9    anything he wanted to add to my explanation, add or amend.

10             MR. O'NEAL:  No, Your Honor.  Sean O'Neal, again,

11   on behalf of the debtors.  I think you've explained it

12   thoroughly and yet concisely.

13             THE COURT:  All right.  So, as in many things in

14   life, they don't work out exactly as planned.  So there is

15   disclosure as often the case in these very large Chapter 11

16   cases.  There's a lot of disclosure, but it's a certain kind

17   of disclosure.  And again here, there's a lot of disclosure

18   of risk factors because the precise payout is unknowable.

19   It's unusual in the sense it's a cryptocurrency case.  So

20   there's a lot of different factors that will play into that,

21   including the in-kind distributions that are talked about.

22   But it is not unheard of or even particularly unusual that

23   the actual outcome of a case for creditors won't be known.

24             So, for example, I presided over the American

25   Airlines case more than a decade ago, and in that case, it

Page 34

1    was tied to the market, to the stock price that existed at

2    the time, which was also not precisely knowable.  So just to

3    give an example that this case is not entirely unique that

4    way.  It's sometimes the way cases with a lot of

5    complicating factors and a lot of complicated legal issues

6    will end up working themselves out.

7            So hopefully that explanation is somewhat helpful

8    to you, sir.  And obviously, I don't expect necessarily for

9    you to answer me today as to what you want to do with your

10   objection.  If you want to think about it and then reach out

11   to the court or reach out to the creditors' committee or

12   somebody else that you might be dealing with who's happy to

13   act as an intermediary, I'm sure Mr. O'Neal's firm would be

14   happy to do that after you get a chance to ponder all this.

15   I know it's a lot of information.  There's a lot to think

16   about in this case.  So anything further --

17           MR. CRADAVILLE:  Thank you, Your Honor.

18           MR. O'NEAL:  I'm sorry, Your Honor.  I believe you

19   were cut off on your last statement.  I couldn't quite --

20           THE COURT:  No, I was just asking if he had

21   anything else he wanted to be heard on.  And it's always

22   difficult in these virtual hearings to know exactly when

23   somebody wants to speak and when somebody doesn't.  But

24   certainly if that individual would like to chime in with

25   anything else, happy to hear it, and I hope my comments are

Page 35

1    somewhat helpful.

2            And with that, let me ask if anybody, including

3    that individual, wishes to be heard in connection with this

4    particular issue.

5            All right.  Hearing nobody else, thank you all for

6    being here virtually and your patience as we work through

7    some technical issues, speaking of technical issues, and I

8    will wait to hear from the debtors and the other

9    professionals in terms of trying to work our way through

10   this form.  And so I do thank the individual who filed this

11   objection for, perhaps this was not your intent, but you're

12   actually serving as a very helpful canary in the coal mine

13   for a test run for us to work through these issues to make

14   sure that by the time we get to confirmation we've got any

15   bugs in the system worked out and everybody is crystal clear

16   on how to proceed.

17           So it's very helpful.  We're always trying to make

18   the system better, so this is a chance for us to improve it.

19   And what I will wait for is revised proposed order and

20   proposed consent form.  If it's helpful to have a conference

21   on the issue, I'd be happy to do that, too.  I'll be guided

22   by what the interested parties would like to do, and we'll

23   wait to hear from you on that.

24           MR. O'NEAL:  Thank you, Your Honor.  We will

25   confer and revert, and we really appreciate your time and

Page 36

1      also we appreciate the pleading that was filed.  So thank

2      you.

3                  THE COURT:  Yeah.  Absolutely.  Absolutely.  All

4      right.  With that, I'd just like to wish everybody very

5      happy holidays to you and your families.  Be well.  As a

6      recent recipient of a second bout of COVID, try to avoid

7      that.  It's not a very good holiday gift.  So be happy and

8      healthy, and we will see you in the new year.  I believe

9      it's January 3rd.

10                 MR. O'NEAL:  Correct, Your Honor.  That's correct.

11                 THE COURT:  All right.  Thank you very much.

12                 MR. O'NEAL:  Thank you.

13                 THE COURT:  Be well.

14                 MR. O'NEAL:  Bye-bye.

15                 (Whereupon these proceedings were concluded at

16     3:06 PM)

17

18

19

20

21

22

23

24

25

Page 37

1                         I N D E X

2

3                            RULINGS

4                                          Page        Line

5   Adversary Proceeding 23-01168-shl

6        Doc. #9 Debtor's Motion for Entry of

7        (I) Consent Judgment Against the DCG

8        Parties and (II) Order Authorizing,

9        to the extent necessary, GGC to Take

10       Actions in Furtherance of the Partial

11       Repayment Agreement Pursuant to Sections

12       105(a) and 363(b) of the Bankruptcy

13       Code, or, in the alternative,

14       Bankruptcy Rule 9019(a)                    17          22

15

16  Adversary Proceeding 23-01169-shl

17       Doc. #11 Debtor's Motion for Entry of

18       (I) Consent Judgment Against the DCG

19       Parties and (II) Order Authorizing,

20       to the extent necessary, GGC to Take

21       Actions in Furtherance of the Partial

22       Repayment Agreement Pursuant to Sections

23       105(a) and 363(b) of the Bankruptcy

24       Code, or, in the alternative,

25       Bankruptcy Rule 9019(a)                    17          22

Page 38

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 27, 2023