**Hearing Date and Time: January 18, 2024 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: January 11, 2024 at 4:00 p.m. (Prevailing Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, *et al.*,[1]<br><br>                         Debtors. | Chapter 11<br><br>Case No.: 23-10063 (SHL)<br><br>Jointly Administered |

## NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT BY AND AMONG GENESIS GLOBAL CAPITAL AND MOONALPHA FINANCIAL SERVICE LIMITED

**PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that on December 28, 2023, the Debtors filed the annexed *Debtors' Motion for Entry of an Order Approving a Settlement Agreement By and Among Genesis Global Capital and Moonalpha Financial Services Limited*. A hybrid hearing (the

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]      Holdco, and its Debtor and non-Debtor subsidiaries are collectively referred to as the "Company".

"Hearing") on the Motion will be held before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 on **January 18, 2024 at 10:00 a.m. (the "Hearing Date")**.

**PLEASE TAKE FURTHER NOTICE** that parties wishing to register for the Hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances. Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so by calling the following muted, listen-only number: 1-929-205-6099, Access Code: 92353761344#.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections, if any, to the Motion or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **January 11, 2024 at 4:00 p.m. (Eastern Time) (the "Objection Deadline")** and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order").

**PLEASE TAKE FURTHER NOTICE** that if no written objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit A to the Motion, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing. If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Debtors.

*[Signature page follows]*

Dated:  December 28, 2023                    /s/ *Jane VanLare*
       New York, New York

                                     Sean A. O'Neal
                                     Luke A. Barefoot
                                     Jane VanLare
                                     Thomas S. Kessler
                                     CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                     One Liberty Plaza
                                     New York, New York 10006
                                     Telephone: (212) 225-2000
                                     Facsimile: (212) 225-3999

                                     *Counsel to the Debtors*
                                     *and Debtors-in-Possession*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

Counsel to the Debtors
and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING A
SETTLEMENT AGREEMENT BY AND AMONG GENESIS GLOBAL CAPITAL
AND MOONALPHA FINANCIAL SERVICES LIMITED**

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

JURISDICTION AND VENUE ........................................................................................ 3

BACKGROUND ................................................................................................................ 3

    A.    The Chapter 11 Cases ........................................................................................ 3

    B.    Babel Entities' Restructuring Proceedings .................................................... 4

    C.    Background and History of Dealings Between the Parties............................. 4

THE SETTLEMENT AGREEMENT ............................................................................... 6

RELIEF REQUESTED....................................................................................................... 9

BASIS FOR RELIEF ......................................................................................................... 9

    A.    The Debtors are Entitled to Setoff ............................................................... 10

    B.    Relief From the Automatic Stay, to the Extent Required, to Effectuate a Setoff in Principle is Appropriate............................................................................... 12

    C.    The Debtors are Authorized Pursuant to Bankruptcy Rule 9019 to Settle Claims....... 14

    D.    The Settlement Agreement Falls Well Within the Range of Reasonableness.............. 16

NOTICE............................................................................................................................ 18

NO PRIOR REQUEST ..................................................................................................... 18

CONCLUSION................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Bohack Corp. v. Borden, Inc.* (*In re Bohack Corp.*),
    599 F.2d 1160 (2d Cir. 1979)....................................................................................13

*Citizens Bank of Maryland v. Strumpf*,
    516 U.S. 16 (1995)....................................................................................................10

*In re Bennett Funding Grp.*,
    212 B.R. 206 (B.A.P. 2d Cir. 1997)................................................................10, 12, 13

*In re Croton River Club, Inc.*,
    52 F.3d 41 (2d Cir. 1995) ............................................................................................9

*In re Drexel Burnham Lambert Group, Inc.*,
    134 B.R. 499 (Bankr. S.D.N.Y. 1991)..................................................................14, 16

*In re Drexel Burnham Lambert Grp., Inc.*,
    113 B.R. 830 (Bankr. S.D.N.Y. 1990)......................................................................13

*In re Frost Bros., Inc.*,
    No. 91 Civ. 5244 (PNL), 1992 U.S. Dist. LEXIS 18301 (S.D.N.Y. Nov. 30, 1992)..............15

*In re Lehman Bros. Holdings, Inc.*,
    433 B.R. 101 (Bankr. S.D.N.Y. 2010)......................................................................12

*In re Lehman Bros. Holdings, Inc.*,
    439 B.R. 811 ..............................................................................................................13

*In re Neshaminy Office Bldg. Assocs.*,
    62 B.R. 798 (E.D. Pa. 1986) ....................................................................................15

*In re Project Orange Assocs., LLC*,
    432 B.R. 89 (Bankr. S.D.N.Y. 2010)........................................................................13

*In re Prudential Lines, Inc.*,
    148 B.R. 730 (Bankr. S.D.N.Y. 1992)......................................................................12

*In re PSA, Inc.*,
    277 B.R. 51 (Bankr. D. Del. 2002) ..........................................................................11

*In re Purofied Down Prods. Corp.*,
    150 B.R. 519 (S.D.N.Y. 1993)........................................................................................14, 15

*In re RCS Cap. Dev.*,
    No. 11-28746-RJD, 2013 WL 3618550 (9th Cir. B.A.P. 2013) ...............................................11

*In re W.T. Grant Co.*,
    699 F.2d 599 (2d Cir. 1983)........................................................................................................15

*Momentum Mfg. Corp. v. Emp. Creditors Comm.* (*In re Momentum Mfg. Corp.*),
    25 F.3d 1132 (2d Cir. 1994)....................................................................................................2, 9

*Nellis v. Shugrue*,
    165 B.R. 115 (S.D.N.Y. 1994)....................................................................................................15

*Scherling v. Hellman Elec. Corp.* (*In re Westchester Structures*, Inc.),
    181 B.R. 730 (Bankr. S.D.N.Y. 1995) ..............................................................................10, 12

*State Bank of Florence v. Miller* (*In re Miller*),
    459 B.R. 657 (B.A.P. 6th Cir. 2011).........................................................................................11

*U.S. v. Energy Res. Co.*,
    495 U.S. 545 (1990)....................................................................................................................10

**Federal Statutes**

11 U.S.C. § 101(5) ...........................................................................................................................9

11 U.S.C. § 105(a) ...........................................................................................................................9

11 U.S.C. § 362.................................................................................................................10, 12, 13

11 U.S.C. § 553(a) .........................................................................................................................10

11 U.S.C. § 558...............................................................................................................................11

11 U.S.C. § 1102(a) ..........................................................................................................................3

11 U.S.C. § 1107(a) ..........................................................................................................................3

11 U.S.C. § 1108...............................................................................................................................3

28 U.S.C. §§ 157...............................................................................................................................3

28 U.S.C. § 1334...............................................................................................................................3

ii

28 U.S.C. §§ 1408 ...................................................................................................................3

28 U.S.C. § 1409 ....................................................................................................................3

**State Statutes**

N.Y. Debt. & Cred. Law § 151 ..............................................................................................11

**Other Authorities**

Fed. R. Bankr. P. 1015(b) .......................................................................................................3

Fed. R. Bankr. P. 9019.................................................................................................3, 9, 14

Fed. R. Bankr. P. 6004(h) .......................................................................................................2

N.Y. U.C.C.............................................................................................................................8

Genesis Global Capital, LLC ("GGC") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and these cases, collectively, the "Chapter 11 Cases") hereby submit this Motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to sections 105(a), 553 and 558 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the settlement agreement by and among GGC and Moonalpha Financial Services Limited ("Moonalpha"). In support of this Motion, the Debtors rely upon the *Declaration of A. Derar Islim in Support of Debtors' Motion Approving a Settlement Agreement By and Among Genesis Global Capital and Moonalpha Financial Services Limited* (the "Islim Declaration"), filed contemporaneously herewith, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors seek the Court's approval of the settlement agreement between GGC and Moonalpha, attached hereto as Exhibit B (the "Settlement Agreement")[1] to resolve the Moonalpha USDT 150m Claim (as defined herein) held by Moonalpha and its affiliates against GGC and the GGC USDC 470m Claim (as defined herein) held by GGC against Moonalpha. The settlement will, among other things, benefit the Debtors' estates by effectuating a setoff of all relevant amounts with respect to the GGC MLA (as defined herein) and the Moonalpha MLA (as defined herein) as of June 30, 2023 including the outstanding principal, interest and late fees, and the collateral posted by each party under the GGC MLA and the Moonalpha MLA. The settlement will result in a net claim held by GGC against Moonalpha of approximately $184.8 million, as

---

[1]      Capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

well as remove the risks, expenses, and uncertainty associated with protracted litigation between the Debtors and Moonalpha.

2.     In summary, the Settlement Agreement provides that (a) there are no outstanding amounts payable by GGC to Moonalpha and that the outstanding amount payable by Moonalpha to GGC shall be the aggregate amount of (i) $184,826,855.00 (the "Calculated Post Set-Off Debt") plus (ii) additional amounts for interest and late fees under the GGC MLA (as defined herein), subject to certain triggers including if the High Court of Singapore does not approve Moonalpha's proposed scheme of arrangement[2] by the milestones set forth in the Settlement Agreement, (b) Moonalpha shall not object to the Debtors' chapter 11 plan to the extent that such a plan is consistent with the terms and conditions of the Settlement Agreement and (c) Moonalpha and GGC shall fully, unconditionally, and irrevocably release their claims arising out of or in connection with the Moonalpha USDT 150m Claim and the GGC USDC 470m Claim.

3.     The Settlement Agreement is the product of extensive negotiations among GGC and Moonalpha and their respective advisors.  Entry into the Settlement Agreement is an exercise of the sound business judgment of GGC and has been approved by the Special Committee of the Board of Directors of Genesis Global Holdco, LLC (the "Special Committee").  The Special Committee, following consultation with the Debtors' legal and financial advisors, has considered the risks associated with litigation of the Moonalpha USDT 150m Claim and the GGC USDC 470m Claim and has concluded that the Settlement Agreement is in the best interests of the Debtors' estates and their creditors.

---

[2]      The proposed scheme of arrangement was set out in Annex A to the Originating Application (Without Notice) filed in HC/OA 881/2023 on August 30, 2023.

4.      Accordingly, and for all of the reasons set forth below, the Settlement Agreement is fair and equitable, reasonable and in the best interests of the Debtors' estates.  The Debtors respectfully request that the Court grant the relief requested in this Motion and approve the Settlement Agreement.

## JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 105(a), 553 and 558 of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

### A.  The Chapter 11 Cases

6.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' bankruptcy proceedings have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).  *See Joint Administration Order* (ECF No. 37).  No trustee or examiner has been appointed in the Genesis Bankruptcy Proceedings.  The Official Committee of Unsecured Creditors for the Genesis Bankruptcy Proceedings (the "Committee") was appointed by the United States Trustee for Region 2 on February 3, 2023, pursuant to Section 1102(a) of the Bankruptcy Code.  *See Notice of Appointment of Official Committee of Unsecured Creditors* (ECF No. 55).

### B.  Babel Entities' Restructuring Proceedings

7.      Moonalpha is part of a set of companies, comprising of Moonalpha, Babel Holding Limited, Babel Block Limited, Babel Asia Asset Management Private Limited and Shinar Trading Services Private Limited (the "Babel Entities"), that are collectively undergoing a court-supervised restructuring in Singapore (the "Babel Entities Restructuring").

8.      The Babel Entities filed a moratorium application with the High Court of Singapore on March 6, 2023.  The moratorium application was granted by the High Court of Singapore, thereby pausing creditor actions against the Babel Entities.[3]  On August 30, 2023, the Babel Entities proposed a scheme of arrangement to effectuate the Babel Entities Restructuring (the "Scheme").  GGC's claim amount for the purposes of its vote for the scheme was set as the Calculated Post Set-Off Debt.  On December 18, 2023, the creditors of the Babel Entities approved the Scheme.  A hearing to approve the Scheme is likely to take place in January or February 2024.[4]

### C.  Background and History of Dealings Between the Parties

9.      The Debtors' pre-petition operations included lending and borrowing services for digital assets.  GGC in particular is a private limited liability company that provided lending and borrowing services for digital assets and fiat currency.  As part of these operations, prior to the Petition Date, the Debtors engaged in various borrowing and lending transactions with Moonalpha and its affiliates.

---

[3]      The Singapore High Court granted the moratoria applications of Babel Holding Limited, Babel Asset Management Private Limited, Babel Block Limited, Moonalpha Financial Service Limited and Shinar Trading Services Private Limited in HC/OA 192/2023, HC/OA 193/2023, HC/OA 194/2023, HC/OA 195/2023 and HC/OA 196/2023.

[4]       The moratoria are presently scheduled to end three weeks after the Scheme Meeting. i.e. January 7 ,2024. Babel Holding Limited filed an application for and was granted leave to convene a Scheme Meeting for the purpose of considering the proposed Scheme of Arrangement in HC/OA 881/2023.

10.    On May 10, 2019, GGC and Moonalpha entered into a Master Loan Agreement with GGC as lender and Moonalpha as borrower (the "GGC MLA"). The GGC MLA is governed by New York law. GGC and Moonalpha executed the following loan term sheets under the GGC MLA:

(a)    the Loan Term Sheet dated March 9, 2022 in respect of a fixed term loan by GGC to Moonalpha for USDC 150 million at a loan fee of 7.50% per annum with a maturity date of June 9, 2022;

(b)    the Loan Term Sheet dated March 9, 2022 in respect of a fixed term loan by GGC to Moonalpha for USDC 150 million at a loan fee of 7.75% per annum with a maturity date of  September 9, 2022;

(c)    the Loan Term Sheet dated April 4, 2022 in respect of a fixed term loan by GGC to Moonalpha for USDC 100 million at a loan fee of 8.50% per annum with a maturity date of October 4, 2022; and

(d)    the Loan Term Sheet dated May 16, 2022 in respect of an open term loan by GGC to Moonalpha for USDC 80 million at a borrow fee of 9.00% per annum (for which only USDC 70 million in principal amount is currently outstanding).

11.    The outstanding principal amount under the GGC MLA is 470 million USDC (plus interest and other fees where applicable, the "GGC USDC 470m Claim").  Moonalpha posted collateral of 15,407.85 BTC (the "15,407.85 BTC Collateral") and 20,000 ETH (the "20,000 ETH Collateral") in respect of the GGC USDC 470M Claim and has a claim against GGC for the return of such collateral. [5]

12.    On February 6, 2020, GGC and Moonalpha entered into a Master Loan Agreement with GGC as borrower and Moonalpha as lender (the "Moonalpha MLA").  The Moonalpha MLA is governed by New York law. GGC and Moonalpha executed the following loan term sheets under the Moonalpha MLA:

---

[5]    Using the respective VWAP as agreed to by the parties and as set forth in the Settlement Agreement, the BTC and ETH collateral is collectively valued at around $367.9 million.

(a)     the Loan Term Sheet dated April 7, 2022 in respect of a fixed term loan by Moonalpha to GGC for USDT 50 million at a loan fee of 2.85% per annum with a maturity date of August 17, 2022;

(b)     the Loan Term Sheet dated  May 11, 2022 in respect of a fixed term loan by Moonalpha to GGC for USDT 50 million at a loan fee of 4.00% per annum with a maturity date of August 11, 2022; and

(c)      the Loan Term Sheet dated May 11, 2022 in respect of a fixed term loan by Moonalpha to GGC for USDT 50 million at a loan fee of 4.00% per annum with a maturity date of August 11, 2022.

13.     The outstanding principal amount under the Moonalpha MLA is 150 million USDT, (the "Moonalpha USDT 150m Claim").  GGC posted collateral of 150 million USDC in respect of the Moonalpha USDT 150M Claim (the "USDC 150 million Collateral") [6] and has a claim against Moonalpha for the return of the USDC 150 million Collateral.

## THE SETTLEMENT AGREEMENT

14.     In March 2023, Moonalpha and GGC commenced settlement negotiations to resolve all outstanding claims under the GGC MLA and the Moonalpha MLA, including principal, interest, late fees, and the setoff of the value of collateral posted by each party and in possession of the other party under the respective loan agreements.

15.     Against the backdrop of market volatility and constant fluctuations in prices for the various digital assets at issue, the Settlement Agreement crystallizes the price of BTC, ETH and USDC for the purposes of set-off.  Islim Declaration at ¶ 9.  Accordingly, the Parties agreed to calculate the value of the BTC, ETH and USDC using each of its respective Volume Weighted Average Price ("VWAP") from June 17, 2022, the date on which the Babel Entities announced the suspension of redemptions and withdrawals, to June 30, 2023.  The Parties agreed that, based

---

[6]     Using the respective VWAP as agreed to by the parties and as set forth in the Settlement Agreement, the USDC collateral is valued at around $149.9 million.

on such calculations and for purposes of the Settlement Agreement, the BTC is priced as USD 21,887.72, the ETH is priced as USD 1,535.05 and the USDC is priced as USD 1.00. For purposes of the settlement, the Parties also agreed that the price of USDT shall be USD 1.00.

16.     The Parties used VWAP to calculate and effectuate a set-off of various amounts at issue under the GGC MLA and the Moonalpha MLA including the principal, interest, late fees, and the value of the collateral posted by each party and reached an agreement that the net claim held by GGC against Moonalpha is $184.8 million.

17.     The key terms of the Settlement Agreement are as follows:

(a)     **Set Off**.  In consideration of each Party agreeing to set off its rights against each other, the Parties agree that the GGC USDC 470m Claim, Moonalpha USDT 150m Claim (including Interest, Late Fees and other fees where applicable) and any Collateral deposited thereof shall henceforth be mutually set off such that there shall be no outstanding amounts payable by GGC to Moonalpha and the outstanding amount payable by Moonalpha to GGC shall be the aggregate amount of USD 184,826,855 ("Calculated Post Set-off Debt").  For the avoidance of doubt, Moonalpha agrees that it is not entitled to any Late Fees arising out of or in relation to the Moonalpha USDT 150M Claim.

(i)     Under the following circumstances, GGC will be entitled to additional interest and late fees for the GGC USDC 470m Claim that has accrued since June 30, 2023 (the "Uncalculated Post Set-off Debt"):

(1)     If the Babel Entities' scheme is not approved by creditors during the scheme meeting;

(2)     If the Babel Entities' scheme is not approved by the Singapore court by March 30, 2024, or, if there is an appeal against the order approving the scheme, then the date on which the court provides the decision on the appeal; or

(3)     The scheme is terminated without full performance.

(b)     **Full Settlement of Claims**.  The Settlement Agreement fully and finally settles and discharges all other claims each Party may have against the other in respect of the GGC MLA and the Moonalpha MLA subject to the Court and the Singapore

Court's approval of provisions of the Settlement Agreement.  Except for GGC's claim against Moonalpha in respect of the Calculated Post Set-off Debt and the terms of the Uncalculated Post Set-off Debt, no Party shall have any claim against any other Party in respect of the GGC MLA and the Moonalpha MLA.

(c)     **Foreclosure of Collateral.**  The Parties expressly acknowledge that the Settlement Agreement (and any agreement as to the Calculated Post Set-off Debt and Uncalculated Post Set-off Debt agreed in this Agreement) is intended to be a binding and conclusive determination of the rights and obligations as between GGC and Moonalpha and its successors, assigns and any administrator (or analogous appointment holder) in any insolvency proceedings of GGC and/or Moonalpha (as the case may be).  For the avoidance of doubt, upon execution of the Settlement Agreement, the Parties expressly acknowledge and agree that (i) the 15,407.85 BTC Collateral, the 20,000 ETH Collateral and the USDC 150 million Collateral shall be deemed foreclosed upon by the respective Parties under the New York Uniform Commercial Code, any state or federal laws of similar comport in the United States and in Singapore, (ii) GGC holds full title to the 15,407.85 BTC Collateral and the 20,000 ETH Collateral and (iii) Moonalpha holds full title to the USDC 150 million Collateral.

(d)     **Court Approval.**  GGC's obligations under the Settlement Agreement are expressly subject to the approval of this Court.

(e)     **Expungement of Moonalpha's Claims**.  As of the date Moonalpha executes the Settlement Agreement, all claims filed by Moonalpha against the Debtors in the Chapter 11 Cases shall be deemed expunged.

(f)     **Covenant Not to Object to Genesis Plan.**  Moonalpha shall not object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the Debtors, solely to the extent that such plan is consistent with the terms and conditions of the Settlement Agreement.

(g)     **Mutual Releases.**  The Settlement Agreement provides that Moonalpha, on the one hand, and GCC, on the other hand, on behalf of itself, and each and all of its and its respective past, present and future agents, heirs, executors, administrators, conservators, predecessors, successors and assigns, (all such releasing persons and entities collectively, the "Releasing Parties"), shall fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge each other and their respective past, present and future agents, heirs, executors, administrators, conservators, successors and assigns (all such released persons and entities collectively, the "Released Parties") from, against, and in

respect of any and all past, present and future Claims (as defined in 11 U.S.C. § 101(5)), cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, that such Party may have or may have against any other Party since the beginning of time, under, arising out of or in connection with the GGC USDC 470m Claim or the Moonalpha USDT 150m Claim the GGC MLA, and the Moonalpha MLA, including without limitation under that certain Standstill Letter dated July 29, 2022 entered by and among Babel Holding Limited, Babel Block Limited, Moonalpha Financial Services Limited, GGC and GGC International Limited;.

(h)   **Exceptions to Mutual Release**.  The Parties' respective releases do not affect their respective obligations under the Settlement Agreement or the Parties' respective rights to bring any Claims or other causes of action arising out of or in connection with a breach of the Settlement Agreement.

## RELIEF REQUESTED

18.   By this Motion, the Debtors seek entry of an order substantially in the form attached hereto as **Exhibit A**, approving the Settlement Agreement pursuant to sections 105(a), 553 and 558 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

## BASIS FOR RELIEF

19.   Under section 105 of the Bankruptcy Code, the Court has broad discretion to "carry out the provisions of this title."  11 U.S.C. § 105(a); *see also Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.)*, 52 F.3d 41, 45 (2d Cir. 1995) (holding that bankruptcy courts have broad equity power to manage the affairs of debtors); *Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[B]ankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

20.     The purpose of section 105(a) is "to assure the bankruptcy courts' power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 at 105–06 (15th ed. Rev. 2008). Such power conforms to the Court's inherent equitable authority. *See, e.g., U.S. v. Energy Res. Co.*, 495 U.S. 545, 549 (1990). The relief requested herein is both necessary and appropriate to allow the Debtors to successfully administer these Chapter 11 Cases and to maximize the value of their estates. Accordingly, the Court may enter the Order.

**A.  <u>The Debtors are Entitled to Setoff</u>**

21.     The Debtors' commencement of the Chapter 11 Cases imposed an automatic stay on any party's post-petition right to exercise "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor . . ." 11 U.S.C. § 362(a)(7).

22.     Section 553 of the Bankruptcy Code preserves Moonalpha's prepetition set off rights. "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 553(a). In other words, "[a]lthough no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff that otherwise exists is preserved in bankruptcy." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995*); see also Official Comm. of Unsecured Creditors v. Mfrs. and Traders Tr. Co. (In re Bennett Funding Grp., Inc.)*, 146 F.3d 136, 138-39 (2d Cir. 1998); *Scherling v. Hellman Electric Corp. (In*

10

*re Westchester Structures, Inc.*), 181 B.R. 730, 738-39 (Bankr. S.D.N.Y. 1995) ([The Bankruptcy Code] "is not an independent source of setoff rights.") (internal citations omitted).

23.    Similarly, Section 558 of the Bankruptcy Code preserves for a debtor's estate "the benefit of any defense available to the debtor as against any entity other than the estate." 11 U.S.C. § 558. Courts have interpreted Section 558 to include setoff rights. *See, e.g., In re Westchester Structures, Inc.*, 181 B.R. at 739-40 (Bankr. S.D.N.Y. 1995) ("Section 558 of the Bankruptcy Code also preserves for the benefit of the estate any right to setoff the debtor may have."). Unlike a creditor's right to set off under section 553 of the Bankruptcy Code, section 558 of the Bankruptcy Code is broader and "eliminates the pre-petition/post-petition distinction and, in essence, obliterates the requirement that the mutual debts must both be pre-petition obligations." *See In re PSA, Inc.*, 277 B.R. 51, 53 (Bankr. D. Del. 2002) (citations omitted); *see also State Bank of Florence v. Miller (In re Miller)*, 459 B.R. 657, 675 n.16 (B.A.P. 6th Cir. 2011) (holding that, unlike setoff under section 553 of the Bankruptcy Code, setoff under section 558 does not require that the mutual debts both be prepetition obligations).

24.    The availability of a debtor's setoff rights is determined under applicable state law. *See Westchester Structures, Inc.*, 181 B.R. at 739; *In re RCS Cap. Dev.*, No. 11-28746-RJD, 2013 WL 3618550 at *8 (9th Cir. B.A.P. 2013) ("The Code preserves a debtor's right to effectuate a setoff under § 558, as it exists under state law.") (internal citation omitted). New York law provides a right of setoff to the Debtors. "Every debtor shall have the right upon . . . the filing of a petition under any of the provisions of the federal bankruptcy act or amendments thereto . . . to set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such debtor to such creditor, at or at any time after, the happening of any of the above mentioned events . . . " N.Y. Debt. & Cred. Law § 151; *see also In re*

*Prudential Lines, Inc.*, 148 B.R. 730, 740-41 (Bankr. S.D.N.Y. 1992) (noting that a debtor has a setoff right upon the filing of a bankruptcy petition); *see also Official Comm. of Unsecured Creditors v. Manufacturer's and Trader's Trust Co. (In re Bennett Funding Grp., Inc.)*, 146 F. 3d 136, 139 (2d Cir. 1998) ("There is also no question that New York has long recognized a common law right of setoff.").

25.     As set forth above, the setoff rights with respect to the Moonalpha USDT 150m Claim and the GGC USDC 470m Claim are determined under New York law because both the GGC MLA and the Moonalpha MLA are governed by New York law.  "Under New York law, to offset debts, they must be mutual."  *In re Westchester Structures, Inc.*, 181 B.R. at 740 (citing *Beecher v. Petier A. Vogt Mfg.*, 227 N.Y. 468 (1920)).  "Mutuality, in turn, exists when the debts and credits are in the same right and are between the same parties, standing in the same capacity." *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 101, 107 (Bankr. S.D.N.Y. 2010) (citing *Scherling v. Hellman Elec. Corp. (In re Westchester Structures)*, 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995)) (internal quotations omitted).

26.     The debts owing between GGC and Moonalpha satisfy the mutuality requirement of applicable New York law because all debts were incurred pursuant to loans between the same parties in the same capacities as lender or borrower.  Further, both the Moonalpha USDT 150m Claim and the GGC USDC 470m Claim arose prior to the Petition Date.

27.     Accordingly, GGC and Moonalpha's rights under New York law to set off mutual debts owing under the loans are preserved under sections 553 and 558 of the Bankruptcy Code.

## B.  <u>Relief From the Automatic Stay, to the Extent Required, to Effectuate a Setoff in Principle is Appropriate</u>

28.     Section 362(d)(1) of the Bankruptcy Code provides that a court may provide relief from the automatic stay "for cause, including the lack of adequate protection of an interest in

property of such party in interest." 11 U.S.C. § 362(d)(1). "Cause is an intentionally broad and flexible concept which must be determined on a case-by-case basis." *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (quoting *In re Brown*, 311 B.R. 409, 412–13 (E.D. Pa. 2004)) (internal citation omitted). When deciding whether to modify the stay, a court will review the facts of each request to determine whether relief is appropriate under the circumstances. *See, e.g., In re Drexel Burnham Lambert Grp., Inc.*, 113 B.R. 830, 837-38 (Bankr. S.D.N.Y. 1990).

29.    In addition, courts have long recognized that the exercise of setoff rights allows for courts to more efficiently conduct the bankruptcy process, resolve connected claims, and avoid potentially absurd results. *See In re Lehman Bros. Holdings, Inc.*, 439 B.R. 811, 824 ("Equity favors the right of setoff as a means to avoid multiplicity of lawsuits, inconvenience, injustice, and inefficient use of judicial resources.") (citing *In re Lehman Bros. Holdings Inc.*, 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009)); *In re Bennett Funding Grp.*, 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997)("'[T]he right of set off ... allows entities that owe each other to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'") (quoting *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995)).

30.    For these reasons, courts in the Second Circuit "ha[ve] repeatedly favored the allowance of setoffs" and held that the existence of the right of setoff constitutes sufficient cause to lift the automatic stay. *Bohack Corp. v. Borden, Inc. (In re Bohack Corp.)*, 599 F.2d 1160, 1164 (2d Cir. 1979). "Setoff 'occupies a favored position in our history of jurisprudence,' a position with which the courts should interfere 'only under the most compelling circumstances.'" *In re Bennett Funding Grp., Inc.*, 212 B.R. at 212 (B.A.P. 2d Cir. 1997) (quoting *In re Bohack Corp.*, 599 F.2d at 1164); *see also In re Lehman Bros. Holdings, Inc.*, 439 B.R. at 824 ("setoff ordinarily should be permitted 'unless the court finds after due reflection that allowance would not be

13

consistent with the provisions and purposes of the Bankruptcy [Code] as a whole.'") (quoting *In re Bohack Corp.*, 599 F.2d at 1165).

31.     Here, the exercise of a setoff pursuant to the Settlement Agreement would result in the resolution of sizable mutual claims between GGC and Moonalpha, thereby winnowing the value of outstanding claims and maximizing the estates' assets that can be distributed to their creditors through their proposed chapter 11 plan.  Accordingly, relief from the automatic stay to allow GGC and Moonalpha to exercise setoff rights with respect to the GGC USDC 470m Claim and the Moonalpha USDT 150m Claim is appropriate and would serve to more efficiently resolve these Chapter 11 Cases through the exercise of rights long favored by the courts and specifically protected under the Bankruptcy Code.

### C.   The Debtors are Authorized Pursuant to Bankruptcy Rule 9019 to Settle Claims

32.     Bankruptcy Rule 9019 permits a debtor-in-possession to enter into compromises and settlements with the approval of the Bankruptcy Court.  *See* Bankruptcy Rule 9019(a).  In order to approve a compromise or a settlement under Bankruptcy Rule 9019(a), the bankruptcy court must find that the compromise or settlement is "in the best interests of the estate." *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 523 (S.D.N.Y. 1993) (citation omitted).  In making this finding, the bankruptcy court should form an informed and independent judgment as to whether a proposed compromise is in the best interests of the debtor's estate. *Id*.  The settlement need not result in the best possible outcome for the debtor, but must not "fall below the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (citation omitted).

33.     In determining whether a compromise or settlement should be approved under Bankruptcy Rule 9019(a), the bankruptcy court should not substitute its own judgment for that of

the debtor.  *See In re Neshaminy Office Bldg. Assocs*., 62 B.R. 798, 803 (E.D. Pa. 1986).  In fact, the bankruptcy court may consider the opinions of the debtor-in-possession or the trustee that the settlement is fair and reasonable.  *See Nellis v. Shugrue*, 165 B.R. 115, 122–23 (S.D.N.Y. 1994). Furthermore, the bankruptcy court need not conduct a "mini-trial" to decide the numerous issues of law and fact raised by the settlement, but rather must "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *Purofied Down Prods*., 150 B.R. at 522 (citations omitted); *see also In re W.T. Grant Co*., 699 F.2d 599, 608 (2d Cir. 1983); *In re Frost Bros., Inc*., No. 91 Civ. 5244 (PNL), 1992 U.S. Dist. LEXIS 18301, at \*16 (S.D.N.Y. Nov. 30, 1992); Memorandum Decision, *In re Genesis Global Holdco LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y, October 6, 2023), ECF No. 781.  This requirement "reflect[s] the considered judgment that little would be saved by the settlement process if bankruptcy courts could approve settlements only after an exhaustive investigation and determination of the underlying claims," *Purofied Down Prods*., 150 B.R. at 522–23, and the fact that settlements are "favored and, in fact, encouraged" in bankruptcy.  *Nellis*, 165 B.R. at 123 (internal citation omitted).

34.     Courts in this Circuit have set forth the following factors to be considered in evaluating the reasonableness of settlement:

(a)     the probability of success in litigation, with due consideration for the uncertainty in fact and law;

(b)     the difficulties of collecting any litigated judgment;

(c)     the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay;

(d)     the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

(e)     the competence and experience of counsel who support the settlement;

    (f)      the relative benefits to be received by members of any affected class;

    (g)     the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion; and

    (h)     the debtor's informed judgment that the settlement is fair and reasonable.

*See Purofied Down Prods.*, 150 B.R. at 522; *Drexel Burnham*, 134 B.R. at 506.

### D.  The Settlement Agreement Falls Well Within the Range of Reasonableness

35.     It is well within the range of reasonableness for GGC to enter into the Settlement Agreement, which is the result of good faith and arm's length negotiations.  The Debtors, acting through their independent Special Committee and following extensive consultation with the Debtors' advisors, have concluded that the Settlement Agreement is fair and equitable, reasonable and in the best interests of the Debtors' estates and, thus, should be approved.

36.     ***First***, the Settlement Agreement will result in GGC having no outstanding amounts payable to Moonalpha.  Taken independently from the GGC USDC 470m Claim, Moonalpha could potentially assert a claim of at least 150 million USDT against GGC and a claim for the return of the 15,407.85 BTC Collateral and 20,000 ETH Collateral.  Under the Settlement Agreement, which eliminates any claims from Moonalpha under the Moonalpha MLA, GGC would avoid any risk in potential litigation against Moonalpha regarding the Moonalpha USDT 150m Claim and the USDC 150 million Collateral.

37.     ***Second***, the Settlement Agreement will maximize recoveries available to creditors by avoiding extensive litigation costs.  Full litigation of either or both of the Moonalpha USDT 150m Claim or the GGC USDC 470m Claim would be expensive and may also be protracted.  Any recoveries which the Debtors might be owed would likely occur in the distant future, given Moonalpha's own restructuring proceedings in Singapore.  Islim Decl. ¶ 10.  Moreover, any

litigation would entail significant professional fees, including but not limited to discovery, preparation of experts, and motion practice.  Islim Decl. ¶ 10.

38.    **Third**, litigating the Moonalpha USDT 150m Claim and the GGC USDC 470m Claim would entail various litigation risks which the Settlement Agreement avoids.  In particular, the Settlement Agreement avoids the possibility of the Debtors taking a position with respect to the Moonalpha USDT 150m Claim or the GGC USDC 470m Claim that could negatively impact the Debtors' defenses to other claims or claims, which they might assert against third parties. Further, the Settlement Agreement crystallizes the date used to calculate the price of BTC and ETH for the purposes of set-off.  Islim Decl. ¶ 9-10.  The Settlement Agreement also removes uncertainty regarding litigation in Singapore, the effects of any applicable local law, and the possibility of enforcement of a judgment against GGC in Singapore. Islim Decl. ¶ 10.

39.    **Fourth**, the Settlement Agreement is the product of significant effort to reconcile Moonalpha and the Debtors' outstanding claims against one another.  Islim Decl. ¶ 12.  If approved, the Settlement Agreement would fully and finally resolve these claims, permitting the Debtors and their advisors to focus resources and attention on other claims and confirmation of the Plan and on beginning to make distributions to creditors.  Islim Decl. ¶ 11.  Absent the Parties reaching this mutual agreement, it is uncertain whether an expeditious resolution of claims between the Parties could be achieved.

40.    **Finally**, the Parties are represented by sophisticated and experienced professionals—highly regarded law firms and financial advisors with significant restructuring, litigation, and other relevant experience.  Islim Decl. ¶ 12.  The Debtors' professionals, for their part, fully understand the difficulties and costs of succeeding in any contemplated litigation .  Islim Decl. ¶ 12.  The Settlement Agreement is the product of arm's length negotiations between the

Debtors and Moonalpha.  Islim Decl. ¶ 7.  The Debtors' professionals fully understand the potential

consequences to creditors of the Debtors' estates if the Settlement Agreement is not consummated

and have recommended that GGC enter into the Settlement Agreement.  *See* Islim Decl. ¶ 12.

41.     Accordingly, the Debtors submit that the settlement and compromise embodied in

the Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable and

should be approved.

## NOTICE

42.     The Debtors have provided notice of this Motion in accordance with the procedures

set forth in the Case Management Order.  The Debtors submit that, in light of the nature of the

relief requested, no other or further notice need be provided.

## NO PRIOR REQUEST

43.     No prior motion for the relief requested herein has been made to this or any other

court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that this Court (a) enter an order, substantially in the form attached hereto as Exhibit A, and

(b) grant such other and further relief as is just and proper.

Dated: December 28, 2023          */s/ Jane VanLare*
     New York, New York          Sean A. O'Neal
                      Luke Barefoot
                      Jane VanLare
                      Thomas S. Kessler
                      CLEARY GOTTLIEB STEEN & HAMILTON LLP
                      One Liberty Plaza
                      New York, New York 10006
                      Telephone: (212) 225-2000
                      Facsimile: (212) 225-3999

                      *Counsel to the Debtors and Debtors-in-Possession*

**A. Derar Islim Declaration**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, et al.,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DECLARATION OF A. DERAR ISLIM IN SUPPORT OF DEBTORS' MOTION FOR
ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT BY AND
AMONG GENESIS GLOBAL CAPITAL
AND MOONALPHA FINANCIAL SERVICE LIMITED**

I, A. Derar Islim, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.     I submit this declaration (the "Declaration") in support of the *Debtors' Motion for Entry of an Order Approving a Settlement Agreement By and Among Genesis Global Capital and Moonalpha Financial Services Limited* (the "Motion"),[2] filed concurrently with this Declaration.

**A.     Background**

2.     I am the interim Chief Executive Officer of Genesis Global Holdco, LLC, ("Holdco," and together with Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific PTE. Ltd., the "Debtors", and together with the Debtors and Holdco's non-Debtor subsidiaries, the "Company"). I have held my current title since August 17, 2022 and have been a member of senior management at the Company and Genesis Global Trading, Inc. ("GGT"), which is a sister

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.  .

company of Holdco, for almost three years, and was historically the Chief Operating Officer at GGT.

3.      I am generally familiar with the day-to-day operations and affairs of the Debtors, and have been directly involved in managing the Debtors' operations since the initiation of the Chapter 11 Cases.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge attained while working with the Debtors; my discussions with members of the Special Committee of the Board of Directors of Holdco (the "Special Committee"); discussions with other members of the Debtors' team and the Debtors' other advisors; my review of relevant documents; and my views based upon my professional experience.

4.      To the extent that the Debtors learn that any information provided herein is materially inaccurate, the Debtors will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my knowledge, information and belief.  I am authorized to submit this Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## B.    The Settlement Process

5.      GGC and Moonalpha (together, the "Parties") commenced negotiations to explore the possibility of a settlement agreement in March 2023 to resolve all outstanding claims under the GGC MLA and the Moonalpha MLA, including principal, interest, late fees, and the setoff of the value of collateral posted by each party under the respective loan agreements.

6.      Settlement negotiations were primarily handled on behalf of GGC by the Debtors' counsel Cleary Gottlieb Steen & Hamilton LLP and the Debtors' Singapore counsel, Prolegis, LLC, who regularly consulted with the Special Committee as well as the Company's senior management, and kept us updated about the process and progress of negotiations.

7.      After extensive arms-length negotiations between the Parties' respective counsel via email correspondence and telephone conversations, the Parties reached an agreement in principle on or around December 14, 2023.  In this case, weighing the reasonableness factors for purposes of Bankruptcy Rule 9019, the Debtors, acting through their independent Special Committee and their advisors have concluded that the Settlement Agreement is fair and equitable, reasonable and in the best interests of the Debtors' estates and, thus, should be approved.

C.      **The Settlement Agreement**

8.      The terms of the Settlement Agreement provide significant and near-term benefits to the Debtors and their creditors, in contrast to the uncertainty and expense of litigation of the outstanding claims under the GGC MLA and the Moonalpha MLA.

9.      The Settlement Agreement provides that (a) there are no outstanding amounts payable by GGC to Moonalpha and that the outstanding amount payable by Moonalpha to GGC shall be the aggregate amount of (i) $184,826,855.00 (the "Calculated Post Set-Off Debt") plus (ii) additional amounts for interest and late fees under the GGC MLA (as defined herein), subject to certain triggers including if the High Court of Singapore does not approve Moonalpha's scheme of arrangement by the milestones set forth in the Settlement Agreement, (b) Moonalpha shall not object to the Debtors' chapter 11 plan to the extent that such a plan is consistent with the terms and conditions of the Settlement Agreement; and (c) Moonalpha and GGC shall fully, unconditionally and irrevocably release each their claims arising out of or in connection with the Moonalpha USDT 150m Claim and the GGC USDC 470m Claim, except with respect to any obligations expressly preserved under the Settlement Agreement.  Further, the Settlement Agreement crystallizes the price of BTC, ETH and USDC for the purposes of set-off.  Accordingly, the Parties agreed to calculate the value of the BTC, ETH and USDC using each of its respective Volume Weighted Average Price ("VWAP") from June 17, 2022, the date on which the Babel

3

Entities announced the suspension of redemptions and withdrawals, to June 30, 2023.  The Parties

agreed that, based on such calculations and for purposes of the Settlement Agreement, the BTC is

priced as USD 21,887.72, the ETH is priced as USD 1,535.05 and the USDC is priced as USD

1.00. For purposes of the settlement, the Parties also agreed that the price of USDT shall be USD

1.00.

10.     The Settlement Agreement will save the Debtors from expensive and protracted

litigation, and the possibility of a litigated judgment that results in the Debtors owing Moonalpha.

Any recoveries which the Debtors might be owed under the GGC MLA would likely occur in the

distant future, if at all, given Moonalpha's own restructuring proceedings in Singapore.  The

Settlement Agreement also removes uncertainty regarding litigation in Singapore, the effects of

any applicable local law and the possibility of enforcement of a judgment against GGC in

Singapore.  Moreover, any litigation would entail significant professional fees, including but not

limited to discovery, preparation of experts, and motion practice.  The Settlement Agreement will

also avoid the possibility of rulings in either these Chapter 11 Cases or the Babel Entities

Restructuring that could negatively impact the Debtors' defenses to claims or claims which they

might assert against third parties.

11.     If approved, the Settlement Agreement would fully and finally resolve the GGC

USDC 470m Claim and the Moonalpha USDT 150m Claim, permitting the Debtors and their

advisors to focus resources and attention on other claims, confirmation of the Plan and on

beginning to make distributions to creditors.

12.     The Settlement Agreement is the product of significant efforts to reconcile GGC

and Moonalpha's outstanding claims against one another and is the product of extensive arm's

length negotiations between the Debtors and Moonalpha.   The Parties are represented by

4

sophisticated and experienced professionals—highly regarded law firms and financial advisors with significant restructuring, litigation and other relevant experience and understand the potential consequences to creditors of the Debtors' estates if the Settlement Agreement is not consummated and have recommended that GGC enter into the Settlement Agreement. The Settlement Agreement is fair and equitable, reasonable and in the best interests of the Debtors' estates.

Dated: December 28, 2023
New York, New York

/s/ A. Derar Islim
A. Derar Islim
Interim Chief Executive Officer
Genesis Global Holdco, LLC

**EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

## ORDER APPROVING A SETTLEMENT AGREEMENT BY AND AMONG GENESIS GLOBAL CAPITAL AND MOONALPHA FINANCIAL SERVICE LIMITED

Upon the motion of Genesis Global Holdco, LLC ("Holdco") and its affiliated

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") for

entry of an order (this "Order") approving the Settlement Agreement[2] pursuant to sections

105(a), 553 and 558 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

1. The Debtors have demonstrated sound business judgment for entering into the

Settlement Agreement.

2. The terms of the Settlement Agreement evidence good faith, arms' length

negotiations, are fair and in the best interest of the Debtors' estates, including their creditors and

other stakeholders.

3. The settlement is plainly within the range of reasonableness and in the best

interest of the Debtors and their estates and the creditors in this case.

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

4.      Based on the record before the Court, the Debtors have demonstrated good and sufficient basis for the Court to approve the Motion.

## IT IS HEREBY ORDERED THAT:

5.      The Motion is GRANTED to the extent set forth herein.

6.      The settlement is approved and authorized and GGC is authorized to perform in accordance with the terms of the Settlement Agreement.

7.      The provisions of the Settlement Agreement are incorporated herein by reference and shall be effective and binding as though fully set forth herein.

8.      GGC is authorized to enter into the Settlement Agreement and to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions that may be reasonably necessary or appropriate to implement the agreements, and perform all obligations contemplated thereunder.

9.      This Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, their creditors, successors, and assigns, and any affected third parties, notwithstanding the subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) this Order likewise shall be binding.

10.     The terms and provisions of this Order shall be immediately effective and enforceable upon its entry.  The effectiveness of this Order shall not be stayed pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure or otherwise.

11.     The automatic stay arising pursuant to section 362(a) of the Bankruptcy Code is modified to the extent necessary to effect the terms set forth in the Settlement Agreement.

12.     The Debtors' claims agent, Kroll LLC, and the clerk of this Court are authorized to take all actions necessary and appropriate to give effect to this Order.

13.     This Court shall retain jurisdiction with respect to any matters, claims, rights or

disputes arising from or related to the Motion or the implementation, interpretation or enforcement

of this Order.


Dated:     _____, 2023
               White Plains, New York          _____
                                               The Honorable Sean H. Lane
                                               United States Bankruptcy Judge

# **EXHIBIT B**

## **Settlement Agreement**

## SET-OFF AGREEMENT

This Set-off Agreement ("**Agreement**") is entered into on <u>December 16</u> 2023 by and between:

1.  **MOONALPHA FINANCIAL SERVICE LIMITED**, a company incorporated in Hong Kong with company registration number 2298761 and registered office at Flat/RM 1903, 19/F, Lee Garden One, 33 Hysan Avenue, Causeway Bay, Hong Kong ("**Moonalpha**"); and

2.  **GENESIS GLOBAL CAPITAL, LLC**, a company organized under the laws of Delaware with company number 0450792002 and principal place of business at 111 Town Square Place, Suite 1203, Jersey City, NJ 07310, United States of America ("**GGC**" collectively with Moonalpha, the "**Parties**")

**WHEREAS**:

(A)   Moonalpha is part of a set of companies, comprising of Moonalpha, Babel Holding Limited, Babel Block Limited, Babel Asia Asset Management Private Limited and Shinar Trading Services Private Limited, that is undergoing a collective restructuring in Singapore.

(B)   Each of GGC and its affiliates Genesis Global Holdco, LLC and Genesis Asia Pacific Pte. Ltd, is currently a debtor-in-possession under chapter 11, Title 11 of the United States Code, in the United States Bankruptcy Court for the Southern District of New York, jointly administered as *In re Genesis Holdco, LLC, et al.*, Case No. 23-10063 (SHL) (the "**Genesis Restructuring**").

(C)   GGC has a claim against Moonalpha for the repayment of USDC 470 million in principal amount (plus interest and other fees where applicable) ("**GGC USDC 470m Claim**") pursuant to the following:

  (1)   Loan Term Sheet dated 9 March 2022 in respect of a fixed term loan by GGC to Moonalpha for USDC 150 million at a loan fee of 7.50% per annum with a maturity date of 9 June 2022;

  (2)   Loan Term Sheet dated 9 March 2022 in respect of a fixed term loan by GGC to Moonalpha for USDC 150 million at a loan fee of 7.75% per annum with a maturity date of 9 September 2022;

  (3)   Loan Term Sheet dated 4 April 2022 in respect of a fixed term loan by GGC to Moonalpha for USDC 100 million at a loan fee of 8.50% per annum with a maturity date of 4 October 2022;

  (4)   Loan Term Sheet dated 16 May 2022 in respect of an open term loan by GGC to Moonalpha for USDC 80 million at a borrow fee of 9.00% per annum (for which only USDC 70 million in principal amount is currently outstanding); and

  (5)   Master Loan Agreement dated 10 May 2019 (" **10 May 2019 MLA**") under which it was agreed that GGC would lend digital currency or USD to Moonalpha, and

Moonalpha would pay a loan fee and return such digital currency or USD to GGC upon the termination or maturity of the loan.

(D)     Moonalpha has posted collateral of 15,407.85 BTC ("**15,407.85 BTC Collateral**") and 20,000 ETH ("**20,000 ETH Collateral**") in respect of the GGC USDC 470m Claim.

(E)     Moonalpha has a claim against GGC for the repayment of USDT 150 million in principal amount (plus interest and other fees where applicable) ("**Moonalpha USDT 150m Claim**") pursuant to the following:

(1)     Loan Term Sheet dated 7 April 2022 in respect of a fixed term loan by Moonalpha to GGC for USDT 50 million at a loan fee of 2.85% per annum with a maturity date of 17 August 2022;

(2)     Loan Term Sheet dated 11 May 2022 in respect of a fixed term loan by Moonalpha to GGC for USDT 50 million at a loan fee of 4.00% per annum with a maturity date of 11 August 2022;

(3)     Loan Term Sheet dated 12 May 2022 in respect of an open term loan by Moonalpha to GGC for USDT 50 million at a loan fee of 4.00% per annum; and

(4)     Master Loan Agreement dated 6 February 2020 under which it was agreed that Moonalpha would lend digital currency or USD to GGC, and GGC would pay a loan fee and return such digital currency or USD to Moonalpha upon the termination or maturity of the loan.

(F)     GGC has posted collateral of USDC 150 million in respect of the Moonalpha USDT 150m Claim ("**USDC 150 million Collateral**") and has a claim against Moonalpha for the return of the same.

(G)     The Parties now wish to enter into an agreement to fully and finally settle claims under the various agreements referred to in Recitals (C)(1) to (4) and (E)(1) to (3) herein, and to settle and determine all claims arising out of and/or in connection with the GGC USDC 470m Claim and the Moonalpha USDT 150m Claim, that may be brought by or arise against any of the Parties, including, without limitation, with respect to the 15,407.85 BTC Collateral, the 20,000 ETH Collateral, and the USDC 150 million Collateral.

(H)     In calculating the Calculated and Uncalculated Post Set-off Debt (as defined below), the BTC Price, ETH Price and USDC Price shall be calculated using its respective VWAP, denominated in USD, from the Gate Raise Date to 30 June 2023 (both dates inclusive). The Parties agree that, based on such calculation, the BTC Price is USD 21,887.72, the ETH Price is USD 1,535.05 and the USDC Price is USD 1.00. For the purposes of simplicity, the USDT Price shall be USD 1.00.

(I)     Each of the parties have entered into this agreement in good faith and for the purpose of carrying on its business and there are reasonable grounds for each party believing that the transaction would benefit themselves.

(J)  For the avoidance of doubt, this Agreement is not intended to extinguish the Calculated Post Set-off Debt and the Uncalculated Post Set-off Debt (as defined below), which Moonalpha acknowledges remain due and outstanding to GGC.

**NOW IT IS HEREBY AGREED** as follows:

(1)  The following words and phrases in this Agreement shall have the meanings as defined below:

| Word/Phrase | Definition |
| --- | --- |
| "**Babel Entities**" | The set of companies comprising *inter alia* Moonalpha, Babel Holding Limited, Babel Block Limited, Babel Asia Asset Management Private Limited and Shinar Trading Services Private Limited. |
| "**Babel Entities Restructuring**" | The Singapore Court-supervised restructuring of various entities in the Babel Entities, including Moonalpha, in HC/OAs 192 to 196 of 2023. |
| "**BTC Price**" | The calculation of the Volume Weighted Average Price ("**VWAP**") of BTC from the Gate Raise Date to 30 June 2023 (both dates inclusive). |
| "**Collateral**" | Each of the 15,407.85 BTC Collateral and 20,000 ETH Collateral extended by Moonalpha to GGC (as defined at Recital (D), and the USDC 150 million Collateral as defined at Recital (F). |
| "**ETH**" | Ethereum. |
| "**ETH Price**" | The calculation of the VWAP of ETH from the Gate Raise Date to 30 June 2023 (both dates inclusive). |
| "**Gate Raise Date**" | 17 June 2022. |
| "**GGC**" | Genesis Global Capital, LLC. |
| "**GGC USDC 470m Claim**" | As defined in Recital (C). |
| "**Genesis**" | GGC, Genesis Global Holdco, LLC and Genesis Asia Pacific Pte. Ltd. collectively. |
| "**Genesis Restructuring**" | As defined in Recital (B) |
| "**Interest**" | Interest chargeable on the GGC USDC 470m Claim and the Moonalpha USDT 150m Claim, including pre-Gate Raise Date interest, post-Gate Raise Date interest between 1 June 2022 and the Interest Cut-Off Date, and |

| | |
|---|---|
| | any applicable and payable interest accruing after the Interest Cut-Off Date pursuant to Clause 6(a) of this Agreement. |
| **"Interest Cut-Off Date"** | The Record Date in the Scheme, which shall be 30 June 2023. |
| **"Late Fees"** | Late fees chargeable on the GGC USDC 470m Claim and the Moonalpha USDT 150m Claim, save as waived and/or determined herein. |
| **"Long Stop Date"** | 31 March 2024 |
| **"Moonalpha"** | Moonalpha Financial Service Limited. |
| **"Moonalpha USDT 150m Claim"** | As defined in Recital (E). |
| **"Calculated Post Set-off Debt"** | As defined at Clause 2 of the Agreement. |
| **"Scheme"** | The scheme of arrangement proposed by Babel Holding Limited to the Babel Entities' creditors in the Babel Entities Restructuring as enclosed to the Originating Application (Without Notice) filed in HC/OA 881/2023 on 30 August 2023, or any further or amended scheme of arrangement that may be subsequently proposed by one or more Babel Entities to the Babel Entities' creditors in the Babel Entities Restructuring, including that by any Babel Entity agreeing to assume liabilities of other Babel Entity for the purposes of a Scheme. |
| **"USD"** | United States Dollars. |
| **"Uncalculated Post Set-off Debt"** | The amount of debt to be calculated according to the formula below in the event that (i) the Scheme is not approved by the Babel Entities' creditors by the requisite majority under Singapore law at the Scheme Meeting (as defined in the Scheme); (ii) the Scheme is not approved by the Singapore Court at the court hearing (including any appeal) to approve the Scheme, with approval to be obtained by no later than (A) the Long Stop Date, or (B) (where an appeal has been lodged against the order of the High Court of Singapore for the approval or non-approval of the Scheme) the date on which the Court of Appeal of Singapore provides its decision in respect of |

such appeal; or (iii) the Scheme is terminated without full performance for any reason whatsoever:

USDC 470 million Interest * USDC Price + USDC 470 million Late Fees * USDC Price - USDT 150 million Interest * USDT Price.

For the purposes of the formula above, the applicable accrual period for any Interest and Late Fees, which shall be in addition to the Interest and Late Fees already included in the Calculated Post Set-off Debt, commences on the Interest Cut-Off Date and ends on the date of the relevant adjudication or full payment.

| | |
|---|---|
| "**USDC**" | USD Coin. |
| "**USDC 470m Interest**" | The number of USDCs accrued and outstanding as interest under the relevant Loan Term Sheets listed at Recitals (C)(1) to (4) above through the Interest Cut-Off Date. |
| "**USDC 470m Late Fees**" | The number of USDCs accrued and outstanding as late fees in respect of the relevant Loan Term Sheets listed at Recitals (C)(1) to (4) above, calculated according to the methodology specified in the 10 May 2019 MLA at Clause III(C), through the Interest Cut-Off Date. |
| "**USDC Price**" | The calculation of the VWAP of USDC from the Gate Raise Date to 30 June 2023 (both dates inclusive). |
| "**USDT**" | Tether. |
| "**USDT 150m Interest**" | The number of USDTs accrued and outstanding as interest under the relevant Loan Term Sheets listed at Recitals (E)(1) to (4) above through the Interest Cut-Off Date. |

(2)   In consideration of each Party agreeing to set off its rights against each other, the Parties agree that the GGC USDC 470m Claim, Moonalpha USDT 150m Claim (including Interest, Late Fees and other fees where applicable) and any Collateral deposited thereof shall henceforth be mutually set off such that there shall be **no** outstanding amounts payable by GGC to Moonalpha and the outstanding amount payable by Moonalpha to GGC shall be the aggregate amount of USD 184,826,855 ("**Calculated Post Set-off Debt**"). For the avoidance of doubt, Moonalpha agrees that it is not entitled to any Late Fees arising out of or in relation to the Moonalpha USDT 150m Claim.

(3)     The Parties expressly acknowledge that that this Agreement (and any agreement as to the Calculated Post Set-off Debt and Uncalculated Post Set-off Debt agreed in this Agreement) is intended to be a binding and conclusive determination of the rights and obligations as between GGC and Moonalpha and its successors, assigns, and any administrator (or analogous appointment holder) in any insolvency proceedings of GGC and/or Moonalpha (as the case may be). For the avoidance of doubt, upon execution of this Agreement, the Parties expressly acknowledge and agree that (i) the 15,407.85 BTC Collateral, the 20,000 ETH Collateral and the USDC 150 million Collateral shall be deemed foreclosed upon by the respective Parties under the New York Uniform Commercial Code, any state or federal laws of similar comport in the United States and in Singapore, (ii) GGC holds full title to the 15,407.85 BTC Collateral and the 20,000 ETH Collateral, and (iii) Moonalpha holds full title to the USDC 150 million Collateral.

(4)     GGC's obligations under this Agreement are expressly subject to the approval of the United States Bankruptcy Court for the Southern District of New York in respect of the Genesis Restructuring.

(5)     Clauses (2) and (3) above, and Clauses (6)b, (7), (8), (9) and (10) below, are subject to

    a.   the Singapore Court's approval of any scheme(s) of arrangement consistent with the terms of this Agreement; and

    b.   such terms being consistent with the adjudication process in relation to the Scheme.

(6)     Notwithstanding Clause (5) above:

    a.   If and only in the event that (i) the Scheme is not approved by the Babel Entities' creditors by the requisite majority(ies) under Singapore law at the Scheme Meeting (as defined in the Scheme); (ii) the Scheme is not approved by the Singapore Court at the hearing (including any appeal) to approve the Scheme, with such approval of the High Court of Singapore to be obtained by no later than (A) the Long Stop Date, or (B) where an appeal has been lodged against the order of the High Court of Singapore for the approval or non-approval of the Scheme, the date on which the Court of Appeal of Singapore provides its decision in respect of such appeal; or (iii) the Scheme is terminated without full performance for any reason whatsoever;

       i.   The Calculated Post Set-off Debt shall immediately become due and payable by Moonalpha to Genesis;

      ii.   The Uncalculated Post Set-off Debt (if any) shall become due and payable as between the Parties;

     iii.   Clauses (1) to (4) and (7) to (10) of this Agreement (and any other provisions of this Agreement required to give the foregoing clauses their full effect) shall apply, the Parties shall be subject to any mandatory applicable law, and be entitled to rely on the same as a conclusive determination of the rights and obligations as between GGC and Moonalpha and its successors, assigns, and any administrator (or analogous appointment holder) in any insolvency proceedings of GGC and/or Moonalpha (as the case may be);

   iv. For the avoidance of doubt, in such a situation, subject to Clause (2) herein, Late Fees and Interest will continue to accrue solely on the GGC USDC 470m Claim until the date of the relevant adjudication or full payment, and be payable by Moonalpha to GGC;

   v. The Long-Stop Date may be extended by agreement between the Parties.

  b. The Parties agree that for the purposes of the adjudication process in relation to the Scheme:

   i. Moonalpha agrees that it will not dispute any adjudication by the appointed Scheme Manager(s) as to the quantum of Genesis' debt should such adjudication be consistent with *inter alia* the terms of this Agreement.

(7) The Parties' agreement herein fully and finally settles and discharges all other claims each Party may have against the other in respect of the agreements referred to in Recitals (C)(1) to (4) and (E)(1) to (3) herein, subject to Clauses 4 and 5 (or Clause 6 if applicable). Save for GGC's claim against Moonalpha in respect of the Calculated Post Set-off Debt and the Uncalculated Post Set-off Debt (as agreed herein), no Party shall have any claim against any other Party in respect of the agreements referred to in Recitals (C)(1) to (4) and (E)(1) to (3) herein.

(8) As of the date Moonalpha executes this Agreement, all claims filed by Moonalpha against Genesis in the Genesis Restructuring shall be deemed expunged.

(9) Moonalpha shall not object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of Genesis, solely to the extent that such plan is consistent with the terms and conditions of this Agreement.

(10) Moonalpha, on the one hand, and GCC, on the other hand, on behalf of itself, and each and all of its and its respective past, present and future agents, heirs, executors, administrators, conservators, predecessors, successors and assigns, (all such releasing persons and entities collectively, the "**Releasing Parties**"), do hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge each other and their respective past, present and future agents, heirs, executors, administrators, conservators, successors and assigns (all such released persons and entities collectively, the "**Released Parties**") from, against, and in respect of any and all past, present and future Claims (as defined in 11 U.S.C. § 101(5)), cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, that such Party may have or may have against any other Party since the beginning of time, under, arising out of or in connection with the GGC USDC 470m Claim or the Moonalpha USDT 150m Claim, including without limitation under that certain Standstill Letter dated July 29, 2022 entered by and among Babel Holding Limited, Babel Block Limited, Moonalpha Financial Services Limited, GGC and GGC International Limited; *provided* that the Parties' respective releases do not affect their respective obligations under this

Agreement or the Parties' respective rights to bring any Claims or other causes of action arising out of or in connection with a breach of this Agreement.

(11)   Each Party shall bear its own costs and expenses, including all legal and professional costs, incurred or to be incurred in relation to the negotiations, preparation, execution and implementation of this Agreement and the transactions contemplated hereunder.

(12)   No amendment, variation, supplement, deletion or replacement of or from this Agreement or any of its terms shall be effective unless made in writing and signed by or on behalf of each Party, *provided further* that any material amendment, variation, supplement, deletion or replacement of or from this Agreement or any of its terms shall not be effective unless approved by the New York Bankruptcy Court as set forth in Clause 4 herein.

(13)   Each Party hereby represents and warrants to each of the other Parties that:
   a.   it has the requisite organizational power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Agreement;
   b.   this Agreement constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms;
   c.   the execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate or other organizational action on its part;
   d.   the execution, delivery, and performance by it of this Agreement does not violate any provision of law, rule or regulation applicable to it or any of its affiliates or its certificate of incorporation, bylaws or other organizational documents or those of any of its affiliates;
   e.   it has had ample opportunity to seek its own legal advice in respect to its rights and obligations under this Agreement; and
   f.   it fully understands its rights and obligations under this Agreement, and unconditionally agrees to be bound by the terms and conditions set out in this Agreement.

(14)   It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach of this Agreement, including an order of the New York Bankruptcy Court or the Singapore Court, as applicable, or another court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder. Each Party also agrees that it will not (i) seek, and will waive any requirement for, the securing or posting of a bond in connection with any Party seeking or obtaining such relief or (ii) raise as a defense thereto the necessity of proving the inadequacy of money damages as a remedy.

(15)   This Agreement contains the entire agreement and the understanding of the Parties and supersedes all prior agreements, understandings or arrangements (both oral and written) in relation to the subject matter of this Agreement. The Parties represent that in entering into this Agreement, they have not relied on any representation, oral or otherwise, save what is stated expressly in this Agreement.

(16)    This Agreement may be signed in any number of counterparts which shall together constitute the same agreement. Any Party may enter into this Agreement by signing any such counterpart. Each counterpart may be signed and executed by the Parties and transmitted by facsimile or email transmission and shall be as valid and effectual as if executed as an original.

(17)    In the event of the breach of this Settlement Agreement, the breaching Party will indemnify and hold harmless the non-breaching Party and any of its affiliates, officers, directors, employees, agents, and subsidiaries for any and all reasonable attorneys' fees and court costs arising out of or in connection with such breach.

(18)    If any provision of this Agreement shall be held to be illegal, invalid or unenforceable, in whole or in part, under any applicable law or regulation, such provision shall to that extent be deemed not to form part of this agreement, and the legality, validity and enforceability of the remainder of this Agreement shall not be affected.

(19)    The validity, construction and performance of this Agreement (and any claim, dispute or matter arising under or in connection with it or its enforceability) shall be governed by and construed in accordance with the laws of the State of New York, and the Parties submit to the non-exclusive jurisdiction of the New York courts.

(20)    This Agreement shall be binding upon and inure solely to the benefit of the Parties hereto and their permitted assigns, successors and any administrator (or analogous appointment holder) in any insolvency proceedings of GGC and/or Moonalpha (as the case may be) as described herein.  Nothing herein, express or implied, is intended to or shall confer upon any other person or entity, any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement, including any rights to enforce this Agreement.

In witness whereof each of the parties has executed this Agreement by its duly authorised signatory on the date set out at the beginning.

SIGNED BY
NAME:    YANG ZHOU
DESIGNATION:    Director
For and on behalf of
**MOONALPHA FINANCIAL SERVICE LIMITED**

SIGNED BY
NAME:
DESIGNATION:
For and on behalf of
**GENESIS GLOBAL CAPITAL, LLC**

Andrew Sullivan
General Counsel, Lending