Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shl

4    Adv. Case No. 23-01192-shl

5    - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    GENESIS GLOBAL HOLDCO, LLC,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   GEMINI TRUST COMPANY, LLC,

13               Plaintiff,

14         v.

15   GENESIS GLOBAL CAPITAL, LLC, et al.,

16               Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19               United States Bankruptcy Court

20               300 Quarropas Street, Room 248

21               White Plains, NY 10601

22

23               January 3, 2024

24               10:11 AM

25

```
 1    B E F O R E :

 2    HON SEAN H. LANE

 3    U.S. BANKRUPTCY JUDGE

 4

 5    ECRO: ALIANNA PERSAUD

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

1    HEARING re OMNIBUS HEARING

2

3    HEARING re Doc. # 1114 Notice Of Agenda

4

5    HEARING re Doc. # 1064 Motion to Amend / Debtors Second

6    Motion to Amend the Order Authorizing the Debtors to Retain

7    and Compensate Certain Professionals Utilized in the

8    Ordinary Course of Business

9

10   HEARING re Doc. # 1103 Conference Regarding Confirmation

11   Discovery Schedule

12

13   HEARING re Doc. #994 [REDACTED] Debtors Third Omnibus

14   Objection To Certain Claims  (Duplicate) (Non-Substantive)

15   ***Claims 213 and 291 Withdrawn From Motion See Doc.

16   #1024***

17

18   HEARING re Doc. #995 [REDACTED] Debtors Fourth Omnibus

19   Objection To Certain Claims  (Duplicate, Amended, No

20   Liability) (Non-Substantive)

21

22   HEARING re Doc. #998 [REDACTED] Debtors Sixth Omnibus

23   Objection To Certain Claims (Modify and Allow as Modified)

24    (Non-Substantive)

25

1    HEARING re Doc. #999 [REDACTED] Debtors Seventh Omnibus

2    Objection To Certain Claims (Modify and Allow as

3    Modified)(Non-Substantive)

4

5    HEARING re Doc. # 1000 [REDACTED] Debtors Eighth Omnibus

6    Objection To Certain Claims (Duplicate) (Non-Substantive)

7

8    HEARING re Doc. #1002 [REDACTED] Debtors Ninth Omnibus

9    Objection To Certain Claims (Duplicate )(Non-Substantive)

10

11    HEARING re Doc. #1003 [REDACTED] Debtors Tenth Omnibus

12    Objection To Certain Claims (Non-Substantive )(Duplicate)

13

14    HEARING re Doc. #1004 [REDACTED] Debtors Eleventh Omnibus

15    Objection To Certain Claims (Duplicate )(Non-Substantive)

16

17    HEARING re Doc. #1005 [REDACTED] Debtors Twelfth Omnibus

18    Objection To Certain Claims (Duplicate )(Non-Substantive)

19

20    HEARING re Doc. #1006 [REDACTED] Debtors Thirteenth Omnibus

21    Objection To Claims (Duplicate) (Non-Substantive)

22

23    HEARING re Doc. #1007 [REDACTED] Debtors Fourteenth Omnibus

24    Objection To Certain Claims (Duplicate )(Non-Substantive)

25

1    HEARING re Doc. #996 [REDACTED] Debtors Fifth Omnibus

2    Objection To Certain Claims (No Liability )(Non-Substantive)

3

4    HEARING re Adversary proceeding: 23-01192-shl Gemini Trust

5    Company, LLC v. Genesis Global Capital, LLC et al

6    Pre-Motion Conference

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 6

1    A P P E A R A N C E S :

2

3    CLEARY GOTTLIEB STEEN & HAMILTON LLP

4         Attorneys for the Debtors

5         One Liberty Plaza

6         New York, NY 10006

7

8    BY:  JANE VANLARE

9         LUKE A. BAREFOOT

10        DEANDRA FIKE

11        BRAD LENOX

12

13   HUGHES HUBBARD & REED LLP

14        Attorneys for Gemini Trust Company, LLC

15        One Battery Park Plaza

16        New York, NY 10004

17

18   BY:  ANSON B. FRELINGHUYSEN

19        JEFFREY S. MARGOLIN

20

21

22

23

24

25

1   WHITE & CASE LLP

2        Attorneys for the Official Committee

3        of Unsecured Creditors

4        1221 Avenue of the Americas

5        New York, NY 10020

6

7   BY:  COLIN WEST

8

9   ALVAREZ AND MARSAL

10       For the Debtors

11       600 Madison Avenue, 8th Floor

12       New York, NY 10022

13

14   BY:  PAUL KINEALY

15

16   ALSO PRESENT TELEPHONICALLY:

17   PHILIP ABELSON

18   ERIC C. DAUCHER

19   KEN LUKASZEWSKI

20   ERIC S. MEDINA

21   MICHELE MEISES

22   ANAIS MITRA

23   AMANDA PARRA CRISTE

24   GREGORY F. PESCE

25   GABE SUTHERLAND

Page 8

1    FRANCISCO VAZQUEZ

2    ETHANIEL COX

3    OXANA KOZLOV

4    OLIVER BAKES

5    BRENDON BARNWELL

6    ANDREW BEHLMANN

7    ELIZABETH BEITLER

8    BENJAMIN S. BELLER

9    DANIEL BRENNER

10   GABRIEL BRUNSWICK

11   BRIAN BULTHUIS

12   SAM CASCANTE

13   LOUIS CHERNONA

14   SADHANA CHERUKURI

15   TOM CONHEENEY

16   WILLIAM DALSEN

17   ERIC C. DAUCHER

18   MICHAEL DIYANNI

19   ERIN E. DIERS

20   PETER DOYLE

21   MICHAEL S. ETKIN

22   MADDIE HUNDLEY

23   DERAR ISLIM

24   ALI A. ISMAIL

25   ZUL JAMAL

Page 9

1    THOMAS S. KESSLER

2    BARAK KLEIN

3    GLEN KRATOCHVIL

4    MICHAEL LETO

5    JESSICA LIOU

6    KEN LUKASZEWSKI

7    MEI MA

8    KYLE MCKUHEN

9    MATTHREW MELBON

10   CARL W. MILLS

11   ANAIS MITRA

12   WAL NEUSCHAEFER

13   JOHN NGUYEN

14   SEAN A. O'NEAL

15   MICHAEL PAPANDREA

16   ARIANNA PRETTO-SAKMANN

17   PHILIP RIES

18   BRIAN ROSEN

19   HEATH ROSENBLAT

20   RYAN ROWAN

21   JEFFREY D. SAFERSTEIN

22   GENESIS G. SANCHEZ TAVAREZ

23   DAVID JOSEPH SAVAL

24   JORDAN SAZANT

25   DAVID Z. SCHWARTZ

Page 10

1   JOE SCIAMETTA

2   J. CHRISTOPHER SHORE

3   FURQAAN SIDDIQUI

4   DUSTIN P. SMITH

5   JASON SOTO

6   ANDREW SULLIVAN

7   GABE SUTHERLAND

8   ANDREW SWIFT

9   BRIAN TICHENOR

10  REBECCA TRICKEY

11  ANDREW TSANG

12  FRANCISCO VAZQUEZ

13  ANDREW W. WEAVER

14  GREG M. ZIPES

15  IAN BERKMAN

16  ALEX VAN VOORHEES

17  MIKE LEGGE

18  AKIKO MATSUDA

19  ERIC IAN ASQUITH

20  SABRINA ASHA BREMER

21  DANA L. CASTRO HERMIDA

22  RODNIKA CARTER

23  JADE DYER-KENNEDY

24  ASHLYN GALLAGHER

25  MIRANDA HATCH

1   HOO RI KIM

2   DIETRICH KNAUTH

3   BRADLEY LENOX

4   SAMUEL LEVANDER

5   THOMAS Q. LYNCH

6   JACK MASSEY

7   RICHARD CHESTER MINOTT

8   TYLER OKADA

9   CHRISTIAN RIBEIRO

10   KENNEDY ROSE

11   KATIE ROSS

12   ANDRES FELIPE SAENZ

13   SAMIRA SARAN

14   PETER J. SPROFERA

15   CATHY  TA

16   GEMMA TUNG

17   MICHAEL WEINBERG

18   TIM WOLFE

19

20

21

22

23

24

25

Page 12

```
1                    P R O C E E D I N G S
2              THE COURT:  Good morning.  How are you?  Happy New
3    Year.
4              MS. VANLARE:  Happy New Year.  Good, how are you?
5              THE COURT:  Oh, just dandy.  Thank you.  Give me
6    two seconds here to just -- good to go.  Good morning.  This
7    is Judge Sean Lane in the United States Bankruptcy Court for
8    the Southern District of New York.  And we are here this
9    morning for a 10 o'clock hearing -- omnibus hearing in
10   Global Holdco, LLC, a Chapter 11 case.  First off, Happy New
11   Year to all of you, and with that, we will turn to
12   appearances.  So, starting with the Debtors.
13             MS. VANLARE:  Good morning, Your Honor.  Jane
14   Vanlare, Cleary, Gottlieb, Steen & Hamilton, and my
15   colleagues also are on the line.  That would be Mr. Lenox,
16   Mr. Barefoot, Mr. O'Neal and others, as well.
17             THE COURT:  All right.  Good morning to you all.
18   On behalf of the Official Committee of Unsecured Creditors?
19             MR. WEST:  Good morning, Your Honor.  Colin West,
20   White & Case, on behalf of the Official Committee of
21   Unsecured Creditors, and with me today is my partner, Chris
22   Shore.
23             THE COURT:  Good morning.  On behalf of Gemini
24   Trust Company?
25             MR. FRELINGHUYSEN:  Good morning, Your Honor, and
```

Page 13

1    Happy New Year.  This is Anson Frelinghuysen from Hughes

2    Hubbard & Reed.  With me today are my colleagues, Jeff

3    Margolin and Carl Mills.

4              THE COURT:  Good morning.  On behalf of the Ad Hoc

5    Group of Genesis Lenders?

6              MR. ROSEN:  Good morning, Your Honor, Brian Rosen,

7    Proskauer Rose and with me today is my partner, Mr. Peter

8    Doyle.

9              THE COURT:  Good morning to you, as well.  And as

10   is often the case, we have a lengthy, lengthy list of

11   appearances, and I'm not going to try to go through every

12   single one as I know a lot of people are here to listen in.

13   But let me get, at this point, any other appearances from

14   folks who anticipate speaking at today's hearing.  All

15   right.  I'm not hearing anyone, but I will say, to the

16   extent that someone ends up needing to speak who doesn't

17   anticipate that at the moment, you can always make your

18   appearance at that time.  So, with that, I'll turn it over

19   to Debtors.  I do have a copy of the Amended Agenda and so,

20   you can let me know the best way to proceed.

21             MS. VANLARE:  Thank you, Your Honor.  I'm going to

22   pass the virtual podium to Ms. Deandra Fike, our colleague

23   who will present the first item on the agenda.

24             THE COURT:  Wonderful.  Please proceed, counsel.

25             MS. FIKE:  Good morning, Your Honor.  This is

Page 14

1    Deandra Fike of Cleary Gottlieb on behalf of the Debtors.

2    I'll be presenting Item 1 on the uncontested portion of the

3    agenda, which is the Debtors' Second Motion to Amend the

4    Order authorizing the Debtors to retain and compensate

5    certain professionals utilized in the ordinary course of

6    business, which is located at Docket No. 1064.  The Motion

7    seeks to increase the overall case cap on payments to

8    ordinary course professionals from $500,000 to $1 million.

9    As these (indiscernible) have not progressed for almost a

10   year, certain ordinary course professionals or OCPs are

11   approaching the case limit or have had minor overages in an

12   individual month.  (indiscernible) to continue payments to

13   the OCPs for the necessary services without the additional

14   burden from the resources of the Debtor is at stake and that

15   would accompany submissions of full retention applications

16   and fee applications and statements.

17           The Debtor (indiscernible) that the Motion, the

18   U.S. Trustee, counsel for the Committee and counsel for the

19   Ad Hoc Group of Lenders (indiscernible) indicated any

20   concern with relief sought in this Motion, nor has any

21   objection to the Motion been filed.  (indiscernible) the

22   Debtor, therefore, asserts that the relief requested in the

23   Motion is in the best interest of the Debtors and

24   respectfully request that the Court authorize the increase

25   in the overall case cap.  And the inadvertent payments in

Page 15

1   excess of the OCP case cap should also be approved on a nunc

2   pro tunc basis as set more defined in the Motion.

3           THE COURT:  All right.  Thank you very much.  Is

4   there any party that wishes to be heard on this Ordinary

5   Course Professional Motion?  All right.  Hearing no

6   response, seeing no objection on the docket, I'm happy to

7   grant the Motion in all respects and just note what's set

8   forth in the Motion, which is, we're talking about ordinary

9   course professionals.  Sometimes people in bankruptcy in

10  large cases, sort of conflate the professional fees that

11  relate specifically to the bankruptcy with the professional

12  fees that are required for an ongoing Debtor to continue to

13  do what it needs to do as a matter of its business.  So, all

14  right, well thank you very much, counsel.  I'm happy to see

15  you.  I believe it's the first time I've had the pleasure of

16  seeing you in this case.  I look forward to future

17  appearances.  Thank you.

18          MS. FIKE:  Thank you, Your Honor.  We will submit

19  the Order to your Chambers.  And Your Honor, I will now also

20  be presenting Items 2, 3 and 6 through 12 on the uncontested

21  portion of the agenda which corresponds --

22          THE COURT:  All right.  Well, so closed out your

23  next appearances quicker than I anticipated, so that's good

24  to see.

25          MS. FIKE:  Yes, and this corresponds to the

Page 16

```
 1     Debtors' 3rd, 4th and 8th through 14th on those claims

 2     objections.  (indiscernible) Items 4 and 5 on the

 3     uncontested portion of the agenda as Item 1 on the contested

 4     portion of the Agenda, the Debtors' 5th, 6th and 7th omnibus

 5     claims objections will be presented by my colleague, Brad

 6     Lenox.

 7               THE COURT:  All right.  So, let me just make sure

 8     which ones.  Are you going to do them as a group or one at a

 9     time, counsel?

10               MS. FIKE:  Yes, Your Honor.  If no objection given

11     that there's a fair amount of overlap between these items, I

12     would prefer just jointly presenting the uncontested omnibus

13     objection for your consideration.

14               THE COURT:  All right.  That's fine.  So, let me

15     just make sure you've covered the numbers again just so I

16     can keep appropriate track.  Thank you.  Proceed.

17               MS. FIKE:  Yes.  Thank you, Your Honor.  These

18     objections relate to claims that were amended, were

19     improperly asserted against multiple Debtors where only one

20     was potentially liable and claims for which the Debtors'

21     books and records show no liability, assert ownership of

22     equity interests or (indiscernible) either Master Claims

23     filed by the Ad Hoc Group or Gemini or (indiscernible) other

24     claims asserted by the same Creditor for the same amount.

25     And before even (indiscernible) to these objections, I'd
```

Page 17

1    like to move to introduce into evidence the Declarations of

2    Paul Kinealy at Alvarez & Marsal North America, LLC, which

3    are each attached as Exhibit B to each of the Omnibus

4    Objections.

5               THE COURT:  All right.  Any objection to receiving

6    that Declaration into evidence for purposes of today's

7    hearing?  All right.  Hearing no response, I'm happy to

8    receive that Declaration in support of the Omnibus Claims

9    Objections.

10              MS. FIKE:  Thank you, Your Honor, and I understand

11   Mr. Kinealy is on the line should Your Honor have any

12   questions for him.

13              THE COURT:  Oh, thank you.

14              MS. FIKE:  Additionally, due to potential

15   conflicts of interest, Kobre & Kim LLP is acting as full

16   counsel to the Debtors with respect to Proof of Claim No.

17   225, which is subject to the third objection and Proof of

18   Claim No. 44, which is subject to the fourth objection.  I

19   understand that a representative of that firm is also on the

20   line today to the extent Your Honor should have any

21   questions, however, has no responses from the specific

22   claimants have been filed and the objections are proceeding

23   on an uncontested basis.  Cleary Gottlieb will be presenting

24   the objections in full with that little caveat.

25              THE COURT:  All right.  Thank you very much and I

Page 18

1    know to reach out to Kobre & Kim as counsel if anything

2    comes up as to those two claims.  Thank you.

3           MS. FIKE:  Thank you, Your Honor.  Moving on to

4    the (indiscernible), with respect to the Debtor's Third

5    Omnibus Objection, the Debtors object to the claims on

6    Exhibit 1 to the proposed Order on the grounds that there

7    are duplicates of the Ad Hoc Master Claim filed on behalf of

8    its members, pursuant to the authority granted by this Court

9    in the Bar Date Order.  Similarly, skipping ahead of it,

10    with respect to the 8th through 14th Omnibus Objections, the

11    Debtors object to the claims on Exhibit 1 to each of the

12    proposed Orders on the grounds that they are duplicates of

13    the Gemini Master Claim filed by Gemini Trust Company, LLC

14    on behalf of the Gemini lenders pursuant to the authority

15    granted by this Court, also in the Bar Date Order.  The

16    Debtors, with the aid of their advisors, identified such

17    Gemini duplicate claims based on a variety of information,

18    including whether the Claimant indicated they were a Gemini

19    lender in their Proof of Claim, whether or not

20    (indiscernible) documentation or in response to Question 8

21    on the Proof of Claim form, and through informal exchanges

22    of information between the Debtors and Gemini.  The Debtors

23    seek to disallow and expunge such claims to avoid improper

24    duplicate recoveries for the same Claimant against the

25    Debtors' estate.

                                                                    Page 19

1             And finally, for the Debtors' 4th Omnibus

2    Objection, the Debtors have object to the claims on Exhibits

3    1 through 5 of the proposed Order on the grounds that the

4    claims are duplicates of another claim filed against the

5    same Debtor entity by or on behalf of the same Claimant and

6    relating to the same supported liability.  The claims have

7    been amended and superseded by one or more claims

8    subsequently filed by or on behalf of the same Claimant with

9    respect to the same supported liability.  The claims were

10   improperly filed against multiple Debtors where only a

11   single Debtor is potentially liable.  The Debtors have no

12   liability for the claim if the amount claimed is not

13   reflected in the Debtors' books and records.  And similar,

14   with respect to a single claim, the supporting documentation

15   made clear that the claim was based on ownership of equity

16   security in one of the Debtors and therefore, is an equity

17   interest rather than a valid claim against the Debtors.  And

18   with that, unless Your Honor has any questions pursuant to

19   Rule 3007 and the Claims Procedures Order, the Debtors

20   request that the claims listed on the Exhibit to the

21   proposed Order, Omnibus Objections 3, 4 and 8 through 14,

22   other than those whose objections have been withdrawn or

23   adjourned as indicated on the Agenda be disallowed in full

24   and expunged from the register.

25             THE COURT:  All right.  Thank you very much.  Let

Page 20

1    me specifically ask Gemini if it wishes to be heard in

2    connection with any of this.  Obviously, because many of

3    these claim objections are relating to the Gemini master

4    claims.  Anything from Gemini?

5              MR. MARGOLIN:  Good morning, Your Honor.  Jeff

6    Margolin, Hughes Hubbard & Reed, for Gemini.  Your Honor,

7    we've coordinated with the Debtors in connection with these

8    Omnibus Objections and that we have no issue with the relief

9    requested before the Court this morning.

10             THE COURT:  All right.  Thank you very much.  Let

11   me ask if any other party wishes to be heard in connection

12   with these objections, that is 3, 4 and 8 through 14.  All

13   right, hearing no responses, I am happy to grant in full --

14   I'm just going to group them this way, 3 and 8 through 14

15   because they're all of a similar ilk, that is, they're all

16   duplicates of the Gemini Master Claims and therefore, it's

17   appropriate to expunge these duplicate claims.  There

18   doesn't appear to be any dispute that they are duplicate

19   claims and that's why I wanted to make sure to touch base

20   with Gemini just to make sure we're all on the same page.

21   And I also note there was a conversion rate correction for a

22   claim that's mentioned in the 3rd Omnibus Objection and

23   that's a matter of calculation.  Again, it seems entirely

24   appropriate to make sure that the numbers are correct.  So,

25   I'm happy to grant those objections.

1              At some point this morning, it's appropriate, I

2     think, for me to put on the record the basic rules of the

3     Claims Objections and now is probably as good a time as any

4     since this is the first set.  So, Section 502(a) of the

5     Bankruptcy Code provides that a filed Proof of Claim is

6     deemed allowed unless a party in interest objects.  If the

7     claim is properly filed, and we'll get to that in a minute,

8     it is prima facie evidence that the claim is valid.  See

9     Federal Rule of Bankruptcy Procedure 3001(f).  But that's a

10    rule that requires a claimant to attach supporting documents

11    to a Proof of Claim.  See Rule 3001(c).  So, a party in

12    interest may object to a proof of claim and once an

13    objection is made, the Court must determine whether the

14    objection is well-founded.  And there's more cases on that

15    than you can shake a stick at, so I'll just simply cite

16    Colliers on Bankruptcy Paragraph 502.02, subsection 2.

17             Although Rule 3001(f) establishes the initial

18    evidentiary effect of a filed claim, the burden of proof

19    rests in different parties and different times.  See

20    Allegheny International, Inc. at 954 F.2d 167 at 173 (3rd

21    Circuit 1992).  So, claims objections have a shifting burden

22    of proof.  Correctly filed proofs of claims constitute prima

23    facie evidence of the validity and amount of the claim and

24    to overcome this prima facie evidence, an objecting party

25    must conform with the evidence which it believed would

Page 22

1    refute at least one of the allegations essential to the

2    claim.   See Sherman v. Novak 254 Bankruptcy Reporter 768 at

3    773 (2nd Circuit 2000).   By producing evidence in equal

4    force to the prima facie case, an objector can negate a

5    claim's presumptive legal validity, which shifts the burden

6    back to the Claimant to prove by a preponderance of the

7    evidence that under applicable law, the claim should be

8    allowed.   See Kramer vs. Motors Company at GUC Trust 2013

9    U.S. District Lexis 143957, Star Pages 12-13 Southern

10   District of New York September 26, 2013.   See also In Re MF

11   Global Holdings, Ltd. 2012 Westlaw 5499847 at Star 3

12   Southern District of New York November 13, 2012.   So, if an

13   objector does not introduce evidence as to the -- about the

14   claim or the excessiveness of the amount, a claimant doesn't

15   actually need to offer any proof of the merits of its claim.

16   So, in other words, an objector has to come forward with

17   something of substance.

18           So, getting back to what is a prima facie valid

19   claim, the caselaw is clear that if a claimant fails to

20   comply with the Rule 3001 documentation requirements, the

21   Claimant is not entitled to prima facie validity of the

22   claim.   See, among other things, In Re (indiscernible) 424

23   Bankruptcy Reporter 104 at 112, Bankruptcy Southern District

24   of New York 2010.   That's a consumer case dealing with a

25   mortgage, but the same rules apply to all claims.   See also,

Page 23

1    In Re Umberg 2008 Westlaw 4829846 Star 2, Bankruptcy

2    District of Connecticut 2008.  See also, In Re Hate, 393

3    Bankruptcy Reporter 484 at 493 Bankruptcy Southern District

4    of Texas 2008.  So, Bankruptcy Code Section 502(b)(1) also

5    provides that claims may be disallowed if unenforceable

6    against the Debtor and property of the Debtor under any

7    agreement or applicable law and to determine whether a claim

8    is allowable by law, Bankruptcy Courts look to applicable

9    non-bankruptcy law.  See In Re W.R. Grayson Company 346

10   Bankruptcy Reporter 672 at 674 Bankruptcy District of

11   Delaware 2006.  And in assessing a proof of claim, federal

12   pleading standards apply.  See In Re Residential Capital 518

13   Bankruptcy Reporter at 731.  See also In Re DJK Residential,

14   LLC 416 Bankruptcy Reporter 100 at 106 Bankruptcy Southern

15   District of New York 2009.  And that means that a claimant

16   must allege enough facts to state a claim for relief that is

17   plausible on its face.  See Vaughn vs. Air Line Pilots

18   Association International 604 F.3d 703, 709 Second Circuit

19   2010, and that's citing Iqbal vs. -- sorry, Ashcroft vs.

20   Iqbal 556 U.S. 662 at 678 2009, a case, among many, that

21   parsed the plausibility rules, which I don't think we need

22   to do a deep dive into at the moment.  So, those are the

23   general rules about claims objections.

24          And there's also case authority that makes it very

25   clear that pro se claimants are required to conform to these

Page 24

1   same rules regardless of their pro se status.  See In Re

2   Residential Capital 2013 Westlaw 5524728 at Page Star 4,

3   Bankruptcy Southern District of New York 2013.  See also

4   Powers vs. Runyon 974 (indiscernible) 693 at 696 Southern

5   District of Indiana 1997, which talks about, all pleadings

6   of a pro se litigant are considered liberally.  There's no

7   lower standard when it comes to the rules of evidence and

8   procedures.  And so that means that where a claimant has not

9   submitted sufficient documentation to support their proof of

10  claim, they haven't met their prima facie burden and that is

11  a basis for a claim being expunged.  And again, that's see

12  In Re Residential Capital 2013 Westlaw 5524728.

13          So, with that, those are the rules that I'm

14  applying for all the Claimant's objections today and

15  obviously would apply for any other claims objections in the

16  future.  And so, I'm happy to grant, as we just discussed,

17  the objections to Numbers 3 and 8 through 14.  I did have a

18  question for the 4th Omnibus Claim Objection.  I certainly

19  understand and I think there are a number of charts,

20  exhibits, for the Claim Objections where you have multiple

21  basis, so I certainly understand for the 4th Omnibus Claim

22  Objection and agree with you on the duplicates, the amended

23  -- the multiple Debtor claims.  And there's caselaw that

24  talks about the fact that an equity interest is not a claim

25  and so, therefore, I'm happy to grant that, as well.  Let me

Page 25

1    just throw out a cite for purposes of that going forward.

2    So, that is, an equity interest is not a claim against the

3    Debtor which an equity holder may assert a right to payment

4    by filing a proof of claim.  So, see In Re Pine Lake Village

5    Apartment Company, 21 Bankruptcy Reporter 478 at 480,

6    Bankruptcy Southern District of New York 1982.  And that's

7    discussed in another case, Motors Liquidation Corporation

8    2012 Westlaw 1886755 Southern District of New York Decision

9    for May 21, 2012 by Judge Sullivan on the District Court.

10           So, my question relates to the one other thing

11   that's left on the 4th Omnibus Claim Objection, which is the

12   no books and records objection.  And so, looking at this

13   Omnibus Claim Objection and some of the others, I obviously,

14   in circumstances like this, don't have the claims themselves

15   unless they're filed because there's a party that's handling

16   the claims who is acting as claims agent as opposed to the

17   Clerk of the Court.  So, that gives me a challenge in

18   analyzing if the claims themselves are prima facie valid.

19   So, there's several ways that that comes up in the context

20   of the claim objection, which you all know, obviously, is,

21   if they don't have supporting documentation, then they're

22   not prima facie valid, in which case, you presented

23   sufficient evidence to say they're not in your books and

24   records.  But if they have submitted appropriate

25   documentation that makes the prima facie valid, then the

Page 26

1    question is, how to sort through the different statements

2    and whether they're going to contest the matter or whether

3    there's a sufficient -- there's another more detailed

4    explanation that means that their other claims objection

5    rules allow me to grant the claims objection that is

6    unenforceable against the Debtor or there's something else

7    in more detail.

8              So, some of the claims objections, like Number, I

9    think it's 7, say that the claims -- certain claims aren't

10   prima facie valid, which when we get to that, my question

11   will be whether that means there's no supporting

12   documentation.  For this one, I didn't see necessarily that

13   statement, so I was just trying to figure out for the books

14   and records aspect of the 4th Omnibus Claim Objection, do

15   those have documentation?  Do those not have documentation?

16   So, is the objection based on the lack of documentation, and

17   the books and records, or is it based on something else?

18   So, sorry, that's a very, very long windup, counsel, to my

19   question about what the sort of, drilling down a little bit

20   on the books and records aspect of the 4th Omnibus.

21             MS. FIKE:  (indiscernible) and our apologies.  We

22   should have included that.  The no books and records claims,

23   as stated in Declaration of Paul Kinealy (indiscernible) the

24   Debtor is going back and forth with their advisors to review

25   the Debtors' books and records, as well as taking a look at

1    the claims and determining that there was insufficient

2    information for the Debtors and the Debtors' advisors to

3    determine what the basis of the liability against the

4    Debtors would have been, and therefore, assert there is no

5    liability against the Debtors.  We're happy to --

6             THE COURT:  Well, where's the argument that the

7    claims are not prima facie valid because they didn't contain

8    information -- documentation attached that would state that

9    kind of a claim against the Debtors?  Or is it something

10   where it's a more -- it might look one way, but when you

11   drill down, it's not?  So, again, the shifting burdens can

12   be an interesting conversation in terms of how to parse

13   these things.  So, that's why I'm just trying to drill down

14   just to get a good sense of what they are.  And also, since

15   this is the first claims objection, I think, that we've

16   gotten together on, particularly for books and records, it's

17   always good to, sort of, just get everybody on the same page

18   on that.  So, your thoughts, counsel?

19             MS. FIKE:  Yes.  So, this is insufficient

20   documentation and the no books and records portion of it

21   comes in as we're asserting that it's inconsistent with the

22   Debtors' books and records in so far as it's non-reflective

23   in the Debtors' books and record, and therefore, we also

24   weren't --

25             THE COURT:   See, that's fine.  If there was

Page 28

1    sufficient documentation and there was a books and records

2    objection, then I'd have a contested matter in a lot of

3    instances because I wouldn't be able to figure out which one

4    is which, and that's why it's important to get to the

5    question of whether the documentation is sufficient.  And

6    so, I don't know if it's possible to get a little more

7    detail, just for purposes of making an appropriate record,

8    as to what the documentation that was submitted for these

9    claims looked like and why it's not sufficient for prima

10   facie validity.  Often times I don't need to do that because

11   I have the claims themselves, and so that's another way to

12   proceed in the future just to make it easier.  You can say,

13   "Judge, if you'll look at this claim, for example, they all

14   look this way, and this is a good example.  And if you look

15   at it, you'll see it says 'X', but it doesn't provide the

16   following information.  We can't -- therefore, it's not

17   prima facie valid."  But without that, another way to do it

18   is to have your Declarant, sort of, walk me through that

19   based on your analysis of the proofs of claim.  I'm happy to

20   do it whatever way is easiest and most efficient.  So, we

21   could do it now.  We could also adjourn this portion and tee

22   it up the next time we get together.  I'm open to your

23   suggestion.

24           MS. FIKE:  Understood, Your Honor.  This is our

25   way of explaining that we have insufficient documentation

1    and so, for the majority of these claims, obviously I don't

2    have them in front of me either at the moment, but they were

3    lacking documentation.  So, we're happy to have our

4    Declarant, if he's prepared, to walk through the exhibits

5    which contains all the notebooks and records claims, attest

6    to that or if -- of course, being sensitive to the

7    (indiscernible) rulings as to the proofs of claim.  Or

8    otherwise, of course, if Mr. Kinealy is more comfortable, we

9    can address this more fully at a later date.

10          THE COURT:  So, let me do it this way for Mr.

11   Kinealy.  Because I know Mr. Kinealy is the Declarant for a

12   whole bunch of Claims Objections and don't necessarily have

13   everything readily at hand.  So, what I'd say is, if you

14   want to think about how you want to handle this one, we can

15   go to the other ones and loop back and that would be fine.

16   Again, I'm not trying to put anybody on the spot.  There's a

17   lot of claims at issue that are the subject of these Claims

18   Objections and there are, in fact, a lot of Claims

19   Objections.  So, if Mr. Kinealy wants to take a moment to

20   think about it, that's fine, we can loop back to that.

21   Again, the idea is that, going forward, one way to do it is

22   to give me the claims.  The other way to do it is to give me

23   a description and say, "Here's the kind of information.

24   Either some of them had no documentation or the

25   documentation they had was of this kind and that's not

1    sufficient and doesn't give the prima facie validity because

2    it doesn't give us the following information we need to

3    understand things." So, hopefully this is helpful and

4    obviously, if anybody has any questions, I'm happy to have a

5    discussion about it back and forth.  The idea is for

6    everybody to be on the same page and things to be as clear

7    as possible.  So, let's leave the 4th Omnibus Objection for

8    a moment, unless Mr. Kinealy wants to dive in now, in which

9    case, I won't stand in his way, but I'm also, again, happy

10   to wait after we go through the other objections.  Mr.

11   Kinealy, do you have a preference?

12           MR. KINEALY:  Let's get back to it.  I think I

13   know -- I just want to check a couple of things, but let's

14   come back to it.

15           THE COURT:  That's --

16           MS. FIKE:  And Your Honor, we're happy to actually

17   adjourn these, so that we have the hearing coming up on the

18   18th so that we can provide that supplemental information.

19           THE COURT:  All right.  Well, I'll give you a

20   chance to chat about it while we do the other ones.  I'm

21   happy -- there's an old game show, Password, your option,

22   pass or play.  I'm dating myself here but I'm happy to do it

23   whatever way is most efficient and sensible.  So, with that,

24   we'll move on to the other Claims Objections.  But just to

25   be absolutely clear, claim objections, the 3rd one is

1    granted, Claims Objections 8 through 14 are granted and

2    Claim Objection 4 is granted as to duplicate, which is I

3    guess (i) amended, (ii) multiple Debtor claims, (iii) and no

4    liability, meaning equity interest, which is (v).  And so,

5    we're only talking about one aspect of the 4th Omnibus

6    Objection that's open is the notebooks and records.  So, all

7    right, with that, thank you very much and we can move onto

8    the next Claim Objection, whoever would like to jump in.

9              MS. FIKE:  Thank you, Your Honor.  We'll submit

10   the Orders with that change, and we'll circle back to you on

11   that.  I will now pass the virtual podium to my colleague,

12   Brad Lenox, who will present the next agenda item.

13             THE COURT:  All right.  Thank you very much.  And

14   one thing I'll say, I don't have the -- without having the

15   benefit of the claim in front of me, I'm often just setting

16   out some general rules and so, you can -- I trust you all

17   will just give me the details.  There's a bunch of different

18   ways to do that and I'll leave that to your considered

19   professional judgment.  So, all right.  Mr. Lenox?

20             MR. LENOX:  Good morning, Your Honor.  Brad Lenox

21   of Cleary Gottlieb for the Debtors.  I will be addressing

22   the 4th and 5th agenda items on the uncontested portion of

23   today's agenda, as well as the sole contested item.

24             THE COURT:  All right.

25             MR. LENOX:  I will begin with Agenda Item No. 4,

Page 32

1    which is the Debtors' 6th Omnibus Objection to certain

2    claims which was filed at ECF No. 998, and which can be

3    found at Tab 9 in Your Honor's binder.  Before proceeding

4    with the substance of this objection, I will address a few

5    housekeeping items.  First, the Debtors move to introduce

6    into evidence the Declaration of Paul Kinealy of Alvarez and

7    Marsal, the Debtors' financial advisor, which was filed as

8    Exhibit B in support of the 6th Omnibus Claims Objection.

9              THE COURT:  All right.  Anybody wish to be heard

10   on that request?  Hearing no party, I'm happy to receive his

11   Declaration in support of the 6th Omnibus Claim Objection.

12             MR. LENOX:  Thank you, Your Honor.  And second, as

13   was the case with certain of the Claims Objections presented

14   by my colleague, Ms. Fike, Kobre & Kim is acting as sole

15   counsel to the Debtors with respect to Claim No. 45, which

16   is subject to this objection.  And as was the case with the

17   prior objections, because no specific response from this

18   Claimant was filed and the Objection is otherwise proceeding

19   on an uncontested basis, Cleary Gottlieb will be presenting

20   the objection in full, with that note.

21             THE COURT:  All right.  Thank you.

22             MR. LENOX:  And third and finally, the Debtors

23   have filed the Joint Stipulation and Proposed Order at ECF

24   No. 1102 with the holder of claim per 1050, which is one of

25   the claims subjected to the Debtors' objection.  And the

Page 33

1   Debtors have also withdrawn the 6th Omnibus Objection as to

2   this claim.  Consequently, the 6th Omnibus Claims Objection

3   is not going forward today with respect to Claim No. 1050.

4           THE COURT:  All right, and that's on for

5   presentment tomorrow, I believe.

6           MR. LENOX:  Correct, Your Honor.  Proceeding to

7   the substance, the Debtors' 6th Omnibus Claims Objection

8   seeks to modify and allow as modified, certain Proofs of

9   Claim that the Debtors, in consultation with Alvarez &

10   Marsal, believe were filed against an incorrect Debtor

11   entity.  Specifically, for each of the affected claims, the

12   Debtors' schedules or books and records do not support a

13   basis for liability against the Debtor entity identified in

14   the applicable Proof of Claim.  Each of the affected Proofs

15   of Claim, however, does correspond to a claim scheduled

16   against a different Debtor entity in an amount consistent

17   with or greater than the filed claim.  These disputed claims

18   are identified on Exhibit 1 to the proposed Order filed with

19   the Objection.  None of the affected Proofs of Claim include

20   any evidence to support a claim for liability against a

21   Debtor other than the applicable Debtor identified in the

22   Debtors' schedules and books and records.  Consequently,

23   consistent with the Claims Objections Procedures Order

24   previously entered by this Court, the 6th Omnibus Claims

25   Objection is necessary to prevent improper recovery and to

Page 34

1    assure that the Claims Register is accurate and consistent

2    with the Debtors' schedules and books and records.  We note

3    that the Debtors filed a revised proposed Order at ECF No.

4    1110 to clarify the Debtors' reservations of their rights

5    with respect to the affected claims.  And unless Your Honor

6    has any questions, the Debtors respectfully request that the

7    Court sustain the 6th Omnibus Claims Objection and enter

8    this revised proposed Order.

9              THE COURT:  All right.  Thank you very much.  Let

10   me ask if there's any party that wishes to be heard on the

11   6th Omnibus Claim Objection.  All right, hearing no

12   response, I note there's also no objection on the docket.

13   Counsel, I think you just answered, in your recitation, the

14   question I had.  I noted that Exhibit 1, while there's

15   mention in the Claim Objection itself about amounts, the

16   Exhibit 1 actually really only talks about the Debtor.  And

17   I'm assuming, based on your statement a minute ago that

18   that's because all the claim amounts, none of them are going

19   down, they're either at the same amount or greater amount.

20   Is that correct?

21             MR. LENOX:  Correct, Your Honor.  The claims, as

22   filed, would be allowed in the amount asserted in the Proof

23   of Claim.

24             THE COURT:  All right.  All right.  Thank you very

25   much.  And so, I'm happy to grant your request to modify the

Page 35

1    claims against the correct Debtor as set forth in Exhibit 1

2    based on the evidentiary record that I have.  And I have one

3    last question, which may, in fact, be a stupid one, but it's

4    a good opportunity for me to get educated.  I did see that

5    claims would be allowed in the amounts asserted and you can

6    convert the claims to cash, but reserve the right to pay in

7    crypto, and so my question is, and it may be -- I may just

8    not have enough background on exactly how this is going to

9    work, is if you're converting it now, does that mean it has

10   to be reconverted later?  And if so, I was just wondering

11   the reason behind that approach, so maybe you can educate me

12   on that particular issue.

13         MR. LENOX:  Your Honor, the intention is to

14   preserve optionality for actual distribution of the Plan,

15   but the allowance in USD is as required by 502(b) of the

16   Bankruptcy Code.

17         THE COURT:  All right, and I'm assuming there'll

18   be, essentially -- I guess my question, how the true up

19   would be in the sense of whether there would be any winners

20   and losers by virtue of converting and then reconverting

21   because I can imagine both circumstances and that's kind of

22   a Plan issue in some ways.  So, I don't know if there's

23   anything else worth discussing on that issue now or if it's

24   a premature discussion.

25         MR. LENOX:  Yeah, respectfully Your Honor, we

Page 36

1     would submit that that's a Plan-related issue as it relates

2     more precisely to the specific distribution mechanics of the

3     Plan.

4                THE COURT:  All right, but I guess it would be

5     correct to say that while it's being converted consist with

6     the requirements of the Code that is claimed to being paid

7     in cash, that the Debtors are keeping track of the amount of

8     the claim and the applicable currency for purposes of

9     optionality and the Plan and payouts in the future.

10               MR. LENOX:  Yes, that's correct, Your Honor.

11               THE COURT:  Okay.  Thank you.  All right.  All

12    right, with that, that was my only other question.  I'm

13    happy to, again, as I said, the 6th Omnibus Claim Objection

14    as entirely appropriate under the facts and circumstances

15    here and applicable law on claims objections.  And so, the

16    6th Omnibus Claim Objection is granted.  So, next up

17    counsel?

18               MR. LENOX:  Thank you, Your Honor.  I will now

19    turn to Agenda Item No. 5, which is the Debtors' 7th Omnibus

20    Objection to certain claims, which was filed at ECF No. 999,

21    and which can be found at Tab 11 of Your Honor's binder.  I

22    will similarly begin with a few housekeeping items.  The

23    Debtors move to introduce into evidence the Declaration of

24    Paul Kinealy, which was also filed as Exhibit B to this 7th

25    Omnibus Claims Objection.

1          THE COURT:  All right.  Anyone wish to be heard on

2     that request?  All right.  Hearing no response, I'm happy to

3     receive it as evidence.

4          MR. LENOX:  Thank you, Your Honor.  Second and

5     finally, the Debtors' Objection as to Claim Nos. 55, 363,

6     402 and 405 has been adjourned to the January 18, 2024

7     hearing scheduled before Your Honor.  And so, the relief

8     requested with respect to those claims will be addressed at

9     that time.

10          THE COURT:  All right.  Thank you very much.  And

11     just a side note, I do appreciate the status notes in the

12     agenda that are very helpful to sort through those things.

13     So, thank you for including that in the agenda.

14          MR. LENOX:  Of course, Your Honor.  And one

15     additional adjournment-related item to add, last evening the

16     Debtors also requested from Chambers a similar adjournment

17     as to Claim No. 493, and so subject to Your Honor's granting

18     of this request, the Debtors' Objection will also not be

19     going forward today as to that claim.

20          THE COURT:  All right.  I'm happy to grant that

21     request.  Thank you.

22          MR. LENOX:  Thank you, Your Honor.  Turning to the

23     substance, the Debtors' 7th Omnibus Claims Objection seeks

24     to modify and allow as modified, certain claims that the

25     Debtors, in consultation with Alvarez & Marsal, believe were

Page 38

1    filed in incorrect amounts and/or against any incorrect

2    Debtor.  Those claims where the Debtors dispute both the

3    Debtor identified in the applicable Proof of Claim and the

4    asserted amounts are listed on Exhibit 1 to the proposed

5    Order.  And those claims where the Debtors solely dispute

6    the amount are listed on Exhibit 2 to the proposed Order.

7    None of the affected Proof of Claims included evidence to

8    support a claim for liability in the asserted amount or

9    against the Debtor other than the applicable Debtor in the

10   applicable amount identified in the Debtor schedules and

11   books and records.

12            Consequently, and consistent with the Claims and

13   Procedures Order previously entered by this Court, the 7th

14   Omnibus Claims Objection is necessary to prevent improper

15   recovery and ensure that the Claims Register is accurate and

16   consistent with the Debtors' schedules and books and

17   records.  And similarly, as was the case with the 6th

18   Omnibus Claims Objection, the Debtors also filed a revised

19   proposed Order at ECF No. 1111, which contains identical

20   changes as were made to the 6th Omnibus Claims Objections

21   proposed Order.  So, unless Your Honor has any questions,

22   the Debtors respectfully request that the Court sustain the

23   7th Omnibus Claims Objection and enter this revised proposed

24   Order.

25            THE COURT:  All right.  Thank you very much.  Any

Page 39

1    party that wishes to be heard on the 7th Omnibus Claim

2    Objection?  All right, hearing no response, I also note that

3    there was no opposition on the docket.  And so, two minor

4    questions, one is, you had said that none of the claims

5    actually present evidence of the amounts due and therefore,

6    essentially, you looked to the Debtors' books and records

7    for the schedule claims.  So, I did see the line in the 7th

8    Omnibus Claim Objection saying none of the claims are prima

9    facie valid, so I'm assuming that for purposes of again,

10   thinking about the burden shifting that goes on for claims

11   objections, that the notion is here that they aren't prima

12   facie valid because they don't contain that information and

13   therefore, I can look to the Debtors' books and records, the

14   Declaration that's been provided and the schedules for that

15   amount.

16          MR. LENOX:  Yes, Your Honor, the same logic and

17   line of thinking as described by my colleague, Ms. Fike,

18   would similarly apply as to this Claims Objection.

19          THE COURT:  Well, but I think I saw the line here

20   that I didn't see in the 4th one which says none of the

21   claims are prima facie valid.  And so, again, because

22   depending on what the record is, sometimes you can have

23   evidence that's conflicting, where nothing is dispositive.

24   But if you don't have a prima facie valid claim and you all

25   come forward with appropriate evidence as you have here,

Page 40

1    then that's the end of the story as opposed to a prima facie

2    valid claim, for example, one that would say, "Here's

3    everything I have and here's the documentation that includes

4    everything that I would need for a prima facie valid claim."

5    Then you have conflicting evidence, and you have to figure

6    out how best to sort through that or what other explanations

7    might apply.  So, again, I did see that line here in the 7th

8    Omnibus Objection that said that none of the claims here

9    that are objected to in terms of amount are prima facie

10   valid.  And so, that's, again, that's why I'm like a dog

11   with a bone on this particular issue in terms of making sure

12   that we comport with the claim objection protocols.  So, am

13   I right in understanding that for the ones that are books

14   and records or referencing the schedule, that those claims

15   don't actually -- they aren't prima facie valid in the sense

16   that they don't include an actual amount that would give

17   them that status?

18           MR. LENOX:  Yes, Your Honor.  That is correct.

19           THE COURT:  All right.  Thank you very much.  So,

20   sorry for these questions that I'm asking, it's a long build

21   up.  So, if I lose you along the way, please let me know.

22   And the only other question I had was just for purposes of

23   the record, I saw in the Exhibit 1 chart here and I note

24   that it has type of claim under the Bankruptcy Code prior

25   already administrative secured, etc., etc., and then goes on

Page 41

```
1    to talk about the subtotal in kind amount and then on the

2    other side, the subtotal pro forma amount.  And I thought it

3    might be helpful to just put a brief explanation on the

4    record as to what that means in plain English so people know

5    because I would expect we might see more of those kinds of

6    charts in the future and that that concept is going to play

7    itself out going forward.  So, I'd appreciate it if you

8    could just give a short explanation of the nomenclature in

9    the chart.

10            MR. LENOX:  Of course, Your Honor, and Mr.

11   Kinealy, of course, should please jump in with any

12   additional information to the extent helpful.  But in short,

13   the intention of the chart with respect to the in-kind

14   amount was to reflect the amounts actually asserted in the

15   Proof of Claim, whether they be in crypto currency or in

16   USD.  And the pro forma amount in the subsequent column is

17   to reflect the conversion for purposes of allowance to USD

18   as required under 502(b).

19            THE COURT:  All right.  Mr. Kinealy, anything you

20   wanted to add to that?

21            MR. KINEALY:  No, that's correct.  What he said.

22            THE COURT:  All right.  Thank you very much.  With

23   that counsel, anything else to add to the 7th Omnibus Claim

24   Objection?

25            MR. LENOX:  No, Your Honor.
```

Page 42

1          THE COURT:  All right.  So, given the factual

2    record before me as we've discussed here today and noting

3    the lack of objection either on the docket or here at the

4    hearing, and the additional information provided on the

5    record, I am happy to grant the 7th Omnibus Objection in

6    full, that is to correct incorrect Debtors and also to amend

7    the claims to the amounts that are reflected in the schedule

8    or the books and records where those amounts differed from

9    the claims.  So, that is granted.  Thank you very much.

10   Next up?

11          MR. LENOX:  Your Honor, I believe that will

12   conclude the uncontested portion of today's agenda, and so I

13   will now proceed to the sole contested portion of the --

14   sole contested item on today's agenda, which is the Debtors'

15   5th Omnibus Objection to certain claims which was filed at

16   ECF No. 996, and which can be found at Tab 6 in Your Honor's

17   binder.

18          THE COURT:  All right.  Thank you.  Please

19   proceed.

20          MR. LENOX:  Thank you, Your Honor.  The Debtors

21   received only one response in opposition to the Debtors'

22   Objection, which was filed by Ms. Allison Stahl-Drew at ECF

23   No. 1070 with respect to Claim No. 747.  Unless Your Honor

24   has any issues with this approach, I would propose beginning

25   with the 5th Omnibus Claims Objection as it relates to

Page 43

1    claims (indiscernible) Claim No. 707 and then separately

2    addressing Ms. Drew's response.

3              THE COURT:  Yes, please.

4              MR. LENOX:  Again, as a threshold matter, the

5    Debtors move to introduce into evidence the Declaration of

6    Paul Kinealy of Alvarez & Marsal, which was filed as Exhibit

7    B in support of the Claims Objection.

8              THE COURT:  All right.  Anyone wish to be heard on

9    that request?  Hearing no response and seeing no objection

10   on the docket, I'm happy to receive that as evidence.

11             MR. LENOX:  Thank you, Your Honor.  Turning again

12   to the substance, the Debtors' 5th Omnibus Claims Objection

13   seeks to disallow and expunge in full certain claims of the

14   Debtor and consultation with Alvarez & Marsal have

15   determined are not reflected in the Debtors' books and

16   records and where Claimants have failed to provide any

17   informational evidence in support of the asserted

18   liabilities.

19             Consequently, these claims, which are listed on

20   Exhibit 1 to the proposed order, should be disallowed in

21   full in order to prevent improper recovery.  Therefore, the

22   Debtors respectfully request that Your Honor sustain the

23   objection, other than with respect to Claim Number 747,

24   which will be addressed shortly, and enter the proposed

25   order attached as Exhibit A.

Page 44

1           THE COURT:  All right, thank you very much.  And

2    let me ask if there's any party that wishes to be heard on

3    the fifth omnibus claim objection.

4           Hearing no response and putting aside for one

5    minute the claim objection where there was an opposition

6    that was filed, on ECF 1071, I did see in Paragraph 19 of

7    this claim objection, it says that the no-liability claims

8    addressed in its objections do not meet the standards for

9    prima facie validity.  And so my understanding, to translate

10   that to the specifics here, is that they don't actually

11   present a dollar amount or documentation that allows -- that

12   gives it that status.  Is that right, counsel?

13          MR. LENOX:  Yes, that is right, Your Honor.

14          THE COURT:  All right, and so given that lack of

15   prima facie validity and the declaration that's been

16   provided and which serves as evidence, I'm happy to grant

17   the claim objection as to all the claims other than the one

18   where an opposition was filed.  And we'll turn to that one

19   next, but for the rest of them, I find it's appropriate

20   under the facts and circumstances and applicable law, again,

21   using the shifting burdens of claim objections.

22          And again, I appreciate, and when we go forward to

23   claims objections in the future, it's always helpful to have

24   just the detail you can provide when we get into the prima

25   facie validity issue, just so I have a good understanding of

Page 45

1    that.  And we can go ahead at whatever hearing when it's

2    scheduled, rather than go to the expense and time of having

3    another hearing.  And it's fine if we do that, as

4    appropriate, but just so that we're all on the same page.

5             So with that, we can turn to the one claim that

6    had an objection.   Counsel?

7             MR. LENOX:  Of course, Your Honor.  Turning now to

8    the contested portion of this objection, the Debtors filed

9    the fifth omnibus claims objection to disallow and expunge

10   in full Claim Number 747, filed by Ms. Allyson Staahl-Drew

11   against the Debtor, Genesis Global Holdco, LLC, which claim

12   I will refer to for convenience as the contested claim.

13            After careful review, the Debtors have determined

14   that the contested claim does not correspond to any

15   liability in the Debtor's books and records, nor did the

16   contested claim provide any evidence or information in

17   support of Holdco's alleged liability.  For this reason

18   alone, the contested claim should be disallowed and expunged

19   in full.

20            Further, as noted in the objection and the

21   Debtor's reply, the contested claim was also filed over a

22   month after the general bar date set in these cases, and no

23   explanation was provided for the delay, nor was there any

24   acknowledgment that the contested claim was timely.  And

25   where these factors are present, courts are reluctant to

Page 46

1   make a finding of excusable delay relief, which in any

2   event, Ms. Drew did not seek in her proof of claim nor her

3   response.

4          Although the Debtors are cognizant that Ms. Drew

5   does not appear to be represented by counsel in these cases,

6   the untimely feature of the contested claim nonetheless

7   provides a separate basis for this Court to disallow the

8   contested claim.

9          Finally, the contested claim is also duplicative

10  of certain master claims filed in these cases by Gemini

11  Trust Company on behalf of certain Gemini users that

12  objected to provide loans to the Debtor, Genesis Global

13  Capital, as part of the Gemini Earn Program.

14          Ms. Drew's response states that the liability

15  asserted in the contested claim relates to certain funds

16  held in her Gemini account, specifically funds that "Gemini

17  owes me in the form of Earn-related digital assets."  Ms.

18  Drew attached to her response a screenshot of what she

19  describes as a copy of her Gemini digital wallet collecting

20  this balance.  And Ms. Drew also asserts that her claim for

21  this balance was included in such a master claim by Gemini

22  on her behalf.

23          Based on these facts provided in the response,

24  counsel to Gemini has separately confirmed that Ms. Drew was

25  an Earn Program participant and that the amounts asserted in

Page 47

1    the contested claim are otherwise reflected in the

2    applicable Gemini master claim.  Although courts in this

3    district have held that it is impermissible for a claimant

4    to amend a proof of claim through a response to a claims

5    objection, Ms. Drew's response nonetheless makes it clear

6    that the contested claim is duplicative of a Gemini master

7    claim and should further be disallowed on that basis.

8            In sum, there are multiple independent bases on

9    which the contested claim should be disallowed.  And so

10   based on the arguments presented in the fifth omnibus

11   claim's objection, the Debtors reply, and at today's

12   hearing, the Debtors respectfully request that this Court

13   overrule Mr. Drew's response, sustain the objection, and

14   enter the proposed order filed as Exhibit A to -- as to the

15   contested claim.

16           THE COURT:  All right, thank you very much.  And

17   let me ask if anybody wishes to be heard as to the objection

18   to Claim Number 747, in particular the individual who filed

19   that claim.

20           All right, I'm hearing no response.  Having taken

21   a look at the claim objection, the opposition at ECF 1071,

22   and the reply on ECF 1112, it's my understanding that

23   granting this objection would not prejudice the Claimants,

24   any rights the Claimant has to recover as part of the Gemini

25   master claims that have been filed.

1           MR. LENOX:  That is correct, Your Honor.

2           THE COURT:  All right, and so as it appears clear

3    that her claim is actually wholly duplicative of the Gemini

4    master claims, and that that doesn't appear to be a dispute

5    based on her opposition as well as the Debtor's reply, I'm

6    happy to grant the omnibus objection as to this claim, 747,

7    for all the reasons stated, again, noting that nothing in

8    the claim objection prevents this claimant from recovering

9    through the Gemini master claims that have been filed.  And

10   for that, I know that the Debtor's agree, you're looking at

11   Footnote 6 of the reply at 1112.

12           And so -- and let me ask, Mr. Lenox, I think, one

13   last question to sort of go backwards.  I'm assuming that

14   the same principle applies to the extent there are any other

15   claims, individual Claimants, whose claims may have been

16   objected to and those claim objections granted based on

17   books and records or anything else for that matter to the

18   extent that they have -- are entitled to recover as part of

19   the Gemini master claims.  None of the claim objections that

20   have been granted impact that ability to recover as part of

21   the Gemini master claims?

22           MR. LENOX:  Yes, that's correct, Your Honor.

23           THE COURT:  All right, thank you very much.  I --

24   and I guess that's important, just in the sense that it

25   sounds like it's entirely possible that a claim might not be

Page 49

1    reflected in the Debtor's books and records, but it may

2    nonetheless be part of one of the Gemini master claims, just

3    based on the way records were kept and who was in charge of

4    what.

5              MR. LENOX:  Correct, Your Honor.

6              THE COURT:  All right, so but by extension, then,

7    it means that anybody whose claim is subject to an objection

8    by books and records but who is part of the Gemini master

9    claims essentially will not be prejudiced to the extent that

10   they're allowed to recover through their -- the Gemini

11   master claims.  All right, that's helpful to know.  I

12   appreciate that explanation.  And so the reply, I think, is

13   very helpful in sorting through those issues, which I

14   imagine will play forward as the case continues.

15             So with that, I'm happy to grant the objection to

16   Claim Number 747, and what's next?

17             MR. LENOX:  Thank you, Your Honor.  I will be

18   passing the podium over to my colleague, Jane VanLare.

19             MS. FIKE:  And Your Honor, if I could, this is

20   Deandra Fike from Clearly Gottlieb.  If I could briefly jump

21   in, we just want to confirm for the fourth omnibus objection

22   for the Exhibit 4 claim, the books and records, we'll be

23   adjourning those to the January 18th hearing, and we'll

24   provide you the supplemental information to make sure

25   (indiscernible) is clear.

Page 50

```
 1              THE COURT:  All right, thank you very much for

 2      that information.  I appreciate it.  Happy to do that, but I

 3      also wanted to give you a chance to the extent that that was

 4      something we could address today.  But again, I'll leave it

 5      to your considered professional judgment, you and Mr.

 6      Kinealy, and I look forward to having that conversation on

 7      the 18th.  Thank you very much.

 8              MS. FIKE:  Okay, thank you, Your Honor.  I'll cede

 9      the podium to Ms. VanLare.

10              THE COURT:  All right, Ms. Vanlare?

11              MS. VANLARE:  Yes, thank you, Your Honor.  Jane

12      Vanlare again, Clearly Gottlieb Steen and Hamilton on behalf

13      of the Debtors.  Your Honor, the remainder of the agenda, we

14      have a discovery dispute with respect to Gemini that counsel

15      to Gemini has filed, a letter, and requested this

16      conference, and we'd like to address that next.

17              But also, Your Honor, this is not on the agenda,

18      but I believe that your chambers have requested us to

19      address another claims-related matter, which we'd like to do

20      following the discovery dispute, and my colleague, Mr.

21      Schwartz, will address that after we finish, given the

22      client issue at hand.

23              THE COURT:  All right, I don't know the latter

24      matter that you mentioned, whether that's the request for an

25      additional claims objection hearing date or something
```

1    different.  Okay.  My -- we'll do the discovery first.  My

2    question for that, and the reason to have a discussion, is,

3    I want to make sure not to, for lack of a more eloquent

4    term, cannibalize time on claims objections if that time may

5    be, in terms of sequencing, more appropriately directed to

6    the confirmation hearing, because I note that the dates that

7    were thrown out, I think, were the 7th, 8th, and 9th.

8              And we'll have any opposition to confirmation

9    filed at the end of, I guess, it's January 29th, and a reply

10   due on the 12th.  And so it's all a question of sequencing,

11   which you all have a better handle on what's -- what the

12   critical path is for purposes of confirmation.  So we can

13   talk about that in a minute after we get through discovery,

14   but I at least wanted to tell you the thing that I was

15   thinking about in terms of having a discussion so you can at

16   least mull it over while we talk about the specific

17   discovery issue.

18             All right, so speaking of that, I do have the

19   letter dated December 28th at Docket 1103.  And so I also

20   have in front of me the schedule that, looking at from

21   Docket 1027, which is -- that was filed on December 6th, and

22   that order, which is the confirmation timeline discovery

23   schedule, and so just to make sure I have all the requisite

24   dates.

25             So it sounds like it makes sense to hear from

Page 52

1    Gemini first.  I do have the letter.  I have read it, marked

2    it up.  So no one needs to repeat everything that's in it,

3    but certainly, I want to give you a chance to highlight

4    things.

5          One of the things I'm -- I was a little -- I had a

6    question about was, it's -- the idea is Gemini can't --

7    since it can't go ahead with the proposed discovery, I

8    wasn't sure if it was talking about all discovery or

9    essentially carving out the specific discovery, saying,

10   Judge, this is something we want to do, we want to be able

11   to do this, or it's essentially putting a full stop on

12   discovery, is what the request is.

13         Because what's -- what was teed up is, looking at

14   the confirmation timeline, all parties served their request

15   for production, and non-Debtor discovery parties noticed any

16   fact deposition, survey, testimony, subpoenas, any non-party

17   witnesses, produced documents on a rolling basis, et cetera,

18   et cetera, and then also noticing fact depositions and

19   testimonial subpoenas on any non-parties.  And those were

20   both listed for December 27th, so with that, I'll turn it

21   over to you all to tee the issue up.

22         MR. MILLS:  Good morning, Your Honor.  Carl Mills

23   from Hughes Hubbard and Reed on behalf of the Gemini Trust

24   Company.  And I'll answer your first question, go back to

25   that in a moment, but first, the Debtors put this on the

1   agenda, the discovery dispute.  We really see it right now

2   as more of a timing dispute.  Your Honor just mentioned the

3   January 29th deadline for confirmation objections.  And

4   Gemini is working towards that deadline diligently and has

5   been for well over a month, but unfortunately, rather than

6   cooperation, we've been met with some (indiscernible), but -

7   -

8           THE COURT:  No, I have the letter, and I want to

9   stay away from hyperbole, so I guess -- so that's why I'm

10  trying to get down to brass tacks.  So what is it

11  specifically you're requesting?  To say, Judge, we have

12  these requests that we want to make to these individuals,

13  and to the extent that they -- those requests would have to

14  be made by the 27th, we just want to put a pin in that and

15  move ahead with everything else?  Or does, in your mind,

16  that somehow impact everything else?

17          MR. MILLS:  Right now, what we're specifically

18  requesting is relief from the deadlines, as it pertains to

19  discovery, that we want to meet on Monday with the ad hoc

20  group, but we are unable to because we don't have the

21  identities of any of the members of the ad hoc group, the

22  steering committee, and the ad hoc group members who signed

23  the plan support agreement.  And so to the extent that we do

24  not have that information, we cannot serve discovery.  We

25  obviously don't think it's appropriate for deadlines to be

Page 54

1    enforced against Gemini.

2            THE COURT:  All right, but it's as to those

3    specific individuals?

4            MR. MILLS:  Yes, we had served discovery on the ad

5    hoc group as a group, and on the Debtor, and awaiting

6    responses, we have to date -- have received substantive

7    responses and objections to many of those discovery

8    requests.  But relief from the deadlines, now, as we move --

9            THE COURT:  Well, but again, that answers my

10   question, which was, you are going forward with other

11   discovery.  Right?  So this is a specific carve-out of a

12   specific issue?

13           MR. MILLS:  Yes, Your Honor, but we do think that

14   the discovery that we're seeking from the ad hoc group is

15   important enough that if we are not able to get to the

16   discovery, we might not be able to meet the confirmation

17   objection deadline, and that could jeopardize

18   (indiscernible).

19           THE COURT:  Well, we'll get to that in a minute.

20   So I have your letter.  I don't have a response from the

21   Debtors or other folks who have skin in this particular

22   game.  So Mr. Mills, unless there's something you wanted to

23   particularly highlight that's not in your letter, what I'd

24   like to do is hear from those other folks, and then we can

25   see where we are, and I'll loop back to you for your

Page 55

1    response.  All right?

2         MR. MILLS:  Yep, the one thing, Your Honor, thank

3    you, Your Honor, that I would like to highlight is that we

4    had an offer on December 28th of the names of the steering

5    committee members, but to date, we still haven't even gotten

6    (indiscernible) to -- you know, we've received nothing

7    despite months of --

8         THE COURT:  No, I got that.  That's in your

9    letter.  I -- I got it, and so we'll have to figure out the

10   significance of that and -- as we go, so let me hear from

11   other parties who are -- have an interest in this, so those

12   will clearly appear to be the Debtor and the ad hoc group,

13   so we'll start with the Debtors.

14        MS. VANLARE:  Thank you, Your Honor.  Yeah, I'll

15   start, and then I'll pass the virtual podium to counsel to

16   the ad hoc group.

17        Your Honor, so at issue, as I'm sure you saw in

18   the letter that Mr. Mills submitted, at issue is that Gemini

19   has requested the identities of the individuals who form

20   part of the ad hoc group.  There's no surprise, I don't

21   think, to anyone in the context of this case as well as

22   other crypto cases, but there are obviously a lot of

23   concerns surrounding individual personally identifiable

24   information.

25        We obviously have a redaction order in place, and

Page 56

1    while the order is not directly relevant to this issue, we

2    are as the Debtors very mindful of the concern from our

3    Creditor body.  We had a series of meet and confers with

4    counsel to Gemini that included us, the counsel to the ad

5    hoc group, counsel to the committee.  As the letter notes,

6    and I think Mr. Mills has just noted, the ad hoc group --

7    counsel to the ad hoc group did offer to provide the

8    identities of the steering committee as well as a 30(b)(6)

9    witness on behalf of the ad hoc group.  Counsel to the ad

10   hoc group did however clarify that it is unable to accept

11   service on behalf of the individual members, because it does

12   not represent the individual members, and that has been a

13   sticking point.  On the timeline --

14             THE COURT:  So let me interrupt for a second, just

15   so I understand what sort of is an issue and what's not.  So

16   it doesn't -- it sounds like confidentiality is the concern.

17   Is anybody disputing that Gemini is entitled to information

18   if confidentiality issues can be resolved?

19             MS. VANLARE:  Well, Your Honor, we do not think

20   that counsel to Gemini has articulated any relevance of this

21   information to their objections, and that's really been our

22   struggle.  The -- in terms of the time --

23             THE COURT:  Well, let me -- sorry to interrupt

24   you, and this is easier to do in person than on Zoom, so my

25   apologies.

Page 57

1          MS. VANLARE:  Sure.

2          THE COURT:  But the reason why I ask is because

3     there was a mention of a 30(b)(6).  Right?  And that's

4     certainly -- that's one of my notes here is to ask about

5     that, because it's a way of saying, well, we don't -- we --

6     as participants in the case, they have -- they get certain

7     rights, but they also have certain obligations, but it's a

8     way of addressing things, and but it does seem to, in some

9     ways, implicitly concede that, well, have a crack at it.

10          We may disagree with you as to where -- what

11     significance any of this has to do down the road, but for

12     purposes of discovery, we're okay with providing it.  And

13     maybe the Debtors don't have really skin in that game.

14     Maybe that's really the ad hocs -- a question to the ad

15     hocs, but I don't know if the Debtors have a view about that

16     one way or the other.

17          MS. VANLARE:  Well, Your Honor, we do think that

18     what the ad hoc group has offered is reasonable.  We think

19     that the offering of a 30(b)(6) witness as well as the

20     identities of the steering committee members who were the

21     principal members involved in negotiating the plan, is a

22     very reasonable and productive solution to this issue.  And

23     again, we struggle -- we tried very hard but struggled to

24     understand any relevance of the purported objections to

25     getting a list of 80-some-plus individual names.

Page 58

1           THE COURT:  All right, I got it.  So let me hear

2    from the ad hoc group.  Although, Ms. Vanlare, I may have

3    stolen some of your thunder.

4           MR. ROSEN:   Thank you very much, Your Honor.

5    Brian Rosen, Proskauer Rose, on behalf of the ad hoc group.

6    Mr. Doyle, Peter Doyle, my partner here, is going to be

7    handling the discussions with me.

8           THE COURT:  All right, thank you.

9           Counsel?

10          MR. DOYLE:   Thank you, Your Honor.  Your Honor,

11   there are three primary independent reasons why Gemini is

12   not entitled to this discovery.  First, they have failed to

13   meet their burden on relevance.  We have drilled down into

14   their purported claims here, statements.  Mr. Rosen has

15   addressed at length the scope and nature of the releases.

16   There is no relevance to the discovery that they claim to

17   need to here so urgently (indiscernible).

18          In light of the offers, as the Court has

19   highlighted in the 30(b)(6) representative binding the

20   group, any additional discovery on these matters should be

21   cumulative and balanced against the confidentiality,

22   privacy, and burden associated with that.

23          And then third, any delay or hardship here that

24   Gemini might claim is of their own making.  They had known

25   since the outset that the counsel for the ad hoc group

Page 59

1    represents the group only and cannot accept service on

2    behalf of any other individuals seeking at this late date

3    the names beyond the ad hoc group, individuals -- sorry,

4    beyond the steering committee of the ad hoc group the names

5    of the individuals who were not involved in negotiations,

6    and no, are not recipient witnesses of any possible relevant

7    topics, and who, I add, could live and be located around the

8    globe and now claim that that is central discovery.  It's

9    unfair.  The letter from -- in so as we --

10          THE COURT:  Let me just ask a very specific

11   question.  Again, I appreciate everybody's good humor and

12   willingness to be interrupted on these things.  It sounds

13   like the ad hoc group is -- has offered a 30(b)(6).  You

14   just repeated that now, and you just mentioned the names of

15   the steering committee.  So is it right to say that that's -

16   - I know Ms. Vanlare said this, but obviously, you're -- you

17   represent the ad hoc, so I want to make sure I'm very clear

18   as to what you're willing to do and what's on the table.

19          And so it sounds like the 30(b)(6) is on the

20   table.  Again, preserving any rights, you have to argue

21   about relevance, and I get it.  We'll get to that.  Is --

22   are -- providing the names of the steering committee, is

23   that -- am I correct in understanding that that's on the

24   table in terms of -- subject to all appropriate

25   confidentiality requirements?

Page 60

1          MR. ROSEN:  Your Honor, again, Brian Rosen.  Yes,

2    Gemini did serve us with a 30(b)(6) deposition notice.  We

3    have not contested that.  We have said that we would make a

4    30(b)(6) witness available.  We'd do it in the context of

5    the meet and confer's offer to counsel that we would provide

6    the names of the steering co members, since they were the

7    individuals and the only individuals who were responsible

8    for the negotiation of the plan, but as Mr. Doyle did say,

9    we are not authorized to accept service on their behalf.

10   And it's that that Gemini is opposed to, because they did

11   not want to go through the process of serving that, as may

12   be required under the federal rules.

13          THE COURT:  All right, thank you very much.

14   That's helpful to understand what the ultimate destination

15   of that particular rabbit hole looks like.

16          All right, but I cut you off, Mr. Doyle.  Anything

17   else you wanted to explain?

18          MR. DOYLE:  Well, Your Honor, it's those three

19   independent reasons that we rest on.  In particular, there

20   are extensive topics in the 30(b)(6) deposition notice we

21   want to take to prepare our witnesses, subject to

22   objections.  There -- the Hughes Hubbard letter, the

23   December 28th letter, does concede that they have known

24   since they made first inquiry that we as counsel for the ad

25   hoc committee could not accept service on behalf of the

Page 61

1    other individuals.  By their own admission, they've known

2    that for over a month since early December.  So --

3              THE COURT:  All right.

4              MR. DOYLE:  -- again, the --

5              THE COURT:  I got it.  All right, so Mr. Mills,

6    your response?

7              MR. MILLS:  Your Honor, the issue for us is not

8    that Proskauer won't accept service on behalf of the

9    individual members.  It's that they also will not give us

10   the names and addresses of the individual members so that we

11   can serve discovery directly on them.  And we've been asking

12   for that information --

13             THE COURT:  So let's discuss that.  So as an old

14   trial lawyer, federal rules of civil procedure have always

15   had the notion of proportionality in discovery, and to the

16   extent there was any -- that notion had been lost in more

17   recent years, it's recently been reinvigorated.  And those

18   are the rules of the road.  Right?  We're here in bankruptcy

19   court, where -- but those are obviously the kind of

20   principals that animate what we do.  And so in short, we

21   don't let the perfect be the enemy of the good, and we do

22   balance what's appropriate.

23             I did see in your letter, and I'd be interested if

24   you have any justification for standing on ceremony as to

25   knowing the identity of each one of the individuals.  I

Page 62

1    don't -- I'm having trouble understanding why, as a matter

2    of going ahead with this proceeding, that would be

3    necessary.  Now, I can understand that perhaps there might

4    be some bells and whistles needed to lock that down, so if

5    there's some sort of statement made, representation made,

6    that the folks on the steering committee are the folks who -

7    - the only folks who were involved in plan negotiations,

8    maybe that's something.  I'd certainly take the

9    representation of counsel here today as that, but sometimes

10   people want a more formal version of that --

11            MR. MILLS:  (Indiscernible).

12            THE COURT:  -- but you know, one could make the

13   argument that a 30(b)(6) should really get it done, but even

14   if it is in a 30(b)(6), I have trouble imagining it would go

15   beyond providing the identity of the steering committee.

16   But certainly, as we all know, the best way to deal with

17   questions about what theoretically is appropriate is to

18   start doing stuff and then see how it all plays out.

19            So my thought is, why shouldn't you go ahead with

20   the 30(b)(6), see where you are?  If there's some

21   information that you're not getting, then we can cross -- or

22   as some litigator I know once said, we can burn that bridge

23   when we get to it.  But let's get there first and see what

24   specific issues are then -- are left.  So your thoughts on

25   that, Mr. Mills?

Page 63

1          MR. MILLS:  Thank you, Your Honor.  Two things,

2    one, a major source of concern for Gemini, and I think, many

3    of the other Creditors and parties of interest, our

4    potential preferential transfers that went to members of the

5    ad hoc group, and that we have no expectation, was limited

6    to members of the steering committee.

7          And the major issue, which goes to -- now there

8    are 36 (indiscernible) in the first instance to try to get

9    information and then follow it up with some other discovery

10   is, we really don't have any information at all about the

11   steering -- the ad hoc group or the steering committee other

12   than what's in the disclosure statement, which is not much.

13   We don't have any of the underlying correspondence.  We

14   don't have any way to connect claims that have been filed in

15   the case with members of the ad hoc group.

16          THE COURT:  But that -- I don't know that what you

17   just said is a plan issue.  It's kind of sort of almost --

18   we're almost talking about it, introducing each other -- you

19   know, getting an introduction after this case has been going

20   on a year.  I -- that does seem to be an odd thing to stand

21   on ceremony in terms of discovery for purposes of

22   confirmation.

23          So but I understand you're talking about a

24   preferential -- you're talking about preferences, but some

25   of the things -- so I'm looking at your letter, and you

Page 64

1    identified three things that you wanted to know, which is

2    your view about the plan abandoning realizable value by

3    releasing preference claims.  And second is the idea of

4    providing releases to the ad hoc group members without a

5    showing of adequate contribution, and three, producing

6    potential Creditor recovery by agreeing to pay the

7    restructuring expenses.

8              Certainly, I don't know that to the extent that

9    there have been agreements reached about releases and paying

10   certain restructuring expenses, that all seems to be things

11   that, at least in the first instance, that you can ask the

12   Debtors about, you can ask the committee about.  And maybe

13   you can ask the folks who are on the steering committee for

14   the ad hoc group, but I can't -- who negotiated the plan,

15   but again, I just don't see any basis to understand why the

16   entire member of the ad hoc group would be relevant to that.

17   I mean, whether they're identified or not, putting aside

18   confidentiality issues, I think we'd run into the same

19   problem, which is to say, why do we need to go down that

20   rabbit hole for purposes of confirmation discovery?

21             MR. MILLS:  And Your Honor, to be clear, we have

22   no intention of serving discovery on every member of the ad

23   hoc group, but we ask for all of the information so that we

24   could start to winnow it down to the appropriate recipients

25   of that discovery.

1           THE COURT:  But isn't that what a 30(b)(6) does?

2    Right?  So you start --

3           MR. MILLS:  If we don't --

4           THE COURT:  -- there, and if you don't get the

5    information you need, you follow up.  And if for some reason

6    you get an answer that says, we don't have that information,

7    and then you say, well, we think somebody -- some member of

8    the ad hoc group should have that information, then we have

9    a live case and controversy for purposes of discovery.  But

10   right now, we just have theory.

11          And discovery disputes, I can say, in my 13-plus

12   years on the bench are always the least -- it's a -- least

13   useful to have any discussions about discovery disputes

14   where we're talking about theoretical controversies.  Let's

15   get done what we can get done, see where we are.  Everybody

16   reserves their rights, and usually, if we can move forward,

17   the amount of disputes that we have that need to be

18   adjudicated shrink dramatically.  So --

19          MR. MILLS:  And Your Honor, if I may --

20          THE COURT:  Yeah.

21          MR. MILLS:  -- that's why we raised this as a

22   timing issue, right, not as a discovery issue.  Again, we

23   didn't actually --

24          THE COURT:  But we have a month.  I mean, the

25   entire Chrysler case was done in a month.  We have a month,

Page 66

1   so I think we're not there yet, so I would think that a

2   30(b)(6) that's properly done, the identification of the

3   steering committee members, all under appropriate sealing

4   that I'm sure you can work out, and then we see where we

5   are.  So I would say to schedule that promptly, get your

6   list of what you want to ask to the extent it's different or

7   you have more things to say than what's identified in the

8   bottom of this letter.  And then, let's see where we are.

9          So let me ask, I think you all have a gist of

10  where I'm going with this.  If anybody has anything that

11  they want to throw out that would help move the ball

12  forward, I recognize that as sitting in this chair, I am not

13  privy to all the extensive conversations that have occurred,

14  and so Judges are all -- that's the other reason why we ask

15  you all to do what you can and then figure out where we are,

16  is because I am not in the room where it happens, and I'm

17  acutely aware of that, having been on the other side.  So

18  I'm throwing darts as best I can, but I welcome any addition

19  wisdom or thoughts about how to move things forward in a

20  productive way.  So I think we should start with a 30(b)(6).

21          Mr. Mills, you should get your topics out, and

22  then the committee, the ad hoc group, can figure out what --

23  how it's going to respond to that, who it's going to

24  identify.

25          And so let me ask counsel to the ad hoc group if

Page 67

1    there's any impediments that they see with going ahead in

2    that fashion.

3            MR. ROSEN:  No, Your Honor.  We're prepared to go

4    forward in that fashion.  We will make some objections to

5    the topics as are appropriate, but we will bear witness, and

6    we think we can cover these topics.

7            THE COURT:  All right.  And so, Mr. Mills, I think

8    the flash point you anticipate about not getting everything

9    you need, I mean, that's what -- that's the whole point of

10   the 30(b)(6) identification of topics, so that they can find

11   the appropriate folks.  If they need to designate more than

12   one person, then that's what they'll do.  And so let me ask

13   the Debtors if you have any other -- any thoughts about

14   missing anything in terms of proceeding along this course.

15           MS. VANLARE:  No, Your Honor.  I think you got the

16   issues exactly right, and as I mentioned, we think this is a

17   very reasonable way to --

18           THE COURT:  Thank you, I so rarely hear that, so I

19   appreciate it.  It's -- rather be lucky than good.

20           All right, so Mr. Mills, so let me ask about

21   timing of this.  Right?  Because I don't want to create a

22   fire drill or a problem for anybody.  We have a month.

23   That's a decent amount of time, but it's not an unlimited

24   amount of time.  But if the 30(b)(6) process drags on, we

25   could find ourselves with this kind of conversation at the

Page 68

1    end of January for reasons that could have been avoided.

2             So what -- what's the -- have the parties talked

3    about a timetable for getting the 30(b)(6) notice out with

4    the topics and then designating a witness and having that

5    witness testify so that if there are any hanging chads, so

6    to speak, that are left and things to follow up, we have

7    time to do that.  So Mr. Mills, what's your thought about a

8    schedule?

9             MR. MILLS:  Your Honor, we -- Gemini served

10   30(b)(6) topics almost two weeks ago on both the Debtors and

11   the ad hoc group.  We haven't received a response formally

12   from either.

13            THE COURT:  All right, all right, that's --

14            MR. MILLS:  And so we're awaiting that, and then

15   we're ready to go, other than we also served document

16   requests, and it would be very helpful to have some of those

17   documents prior to the 30(b)(6) deposition, but we haven't

18   heard anything about when we might be getting those, either.

19            THE COURT:  Well, getting --

20            MR. ROSEN:  Your Honor.

21            THE COURT:  Yeah, go ahead.

22            MR. ROSEN:  I'm sorry for -- yes, Mr. Mills is

23   correct.  They served the deposition notice on the 21st, and

24   it is currently scheduled for January 22nd at -- yeah, at

25   Cleary's offices or remotely.  So we will be responding

Page 69

1    appropriately.

2            THE COURT:  All right, so I certainly encourage

3    folks to get as much information out as quickly as possible.

4    I think that's, frankly, the way you all have been

5    approaching it, because your -- the scheduling order, which

6    you put together and I approved, talks about things on a

7    rolling basis with production at the earliest possible date.

8    That's to avoid problems of saying, well, we didn't have

9    this document when we were going to talk to this witness, or

10   we had that document but we would have added a topic to our

11   30(b)(6) examination.  So I encourage the documents to get

12   produced as quickly as possible.

13           And as for the 22nd, I don't want to micromanage

14   anybody's schedule.  That usually doesn't work so well, but

15   I will say, to the extent that anything can be done, I

16   wouldn't let it slip, given the objection deadline.  And to

17   the extent that it could be moved up, that's probably not

18   the worst idea, either, so that there's time to get

19   everything done without affecting the confirmation schedule.

20           So all right, so with that, that's my ruling on

21   the discovery issue that's raised by the letter of December

22   28th, Docket 1103.

23           And Mr. Mills, anything else that you wanted to

24   raise that would be helpful to talk about at this point?

25           MR. MILLS:  Many things, Your Honor, but I think

Page 70

1    we'll stand on the record (indiscernible).

2            THE COURT:  All right.  All right.

3            MR. MEDINA:  Your Honor?

4            THE COURT:  Yes.

5            MR. MEDINA:  Your Honor, this is Eric Medina for

6    BAO Holdings.  We haven't appeared in this case before, but

7    I filed a notice of appearance, and I just had a question

8    regarding this topic, because it just came to light, and I

9    actually just realized that this was going to be -- I was

10   informed that this was going to be on the calendar this

11   morning, and I just had a question for you, Judge, and for

12   counsel, because I've spoken with Ms. Vanlare of Cleary

13   regarding some information.

14           Your Honor, my client is an earned user who is

15   owned a couple million dollars and is --

16           THE COURT:  Mr. Medina, before we jump into your

17   issue, I want to make sure to close out the issue that we

18   were talking about, just for --

19           MR. MEDINA:  Sure.

20           THE COURT:  -- as a matter of good order.  So let

21   me ask the ad hoc group counsel if there's anything else

22   that we should discuss in connection with the letter.

23           MR. ROSEN:  No, Your Honor.

24           THE COURT:  All right, and last but not least, Ms.

25   Vanlare, anything else from the Debtors?

```
 1              MS. VANLARE:  No, Your Honor.

 2              THE COURT:  All right, Mr. Medina, you have the

 3      floor.

 4              MR. MEDINA:  Thank you, Your Honor.  I'll be very

 5      brief.  Judge, we're just getting involved in this case.

 6      The long and the short of it is, we're just trying to get

 7      some information with regards to some of the documents and

 8      information that was been -- that's been marked

 9      confidential.  Some of it, I hear Your Honor loud and clear

10      on what Your Honor is thinking as with regards to the

11      request made by Mr. Mills's office regarding information.

12      But I just have --

13              THE COURT:  Well, let me ask whether -- so let me

14      ask whether you've had the conversation with counsel for

15      various parties about this request.  First, I'm -- it's

16      probably not the best way to go to have the conversation

17      first with me, so I -- if it's coming up for the first time

18      now, I'm going to very politely and gently give you the

19      Heisman Trophy pose, which is to say you should go talk to

20      each other --

21              MR. MEDINA:  Yes.

22              THE COURT:  -- and see where you are.

23              MR. MEDINA:  Yes.

24              THE COURT:  And you'll have to work around the

25      confidentiality issues that have been raised by the decision
```

Page 72

1    that I issued on that.  But I think everyone here recognizes

2    that that's designed to protect everybody's privacy to the

3    maximum extent possible, but then, when litigating and

4    injecting yourself into the fray, that does come with

5    obligations to provide appropriate information for purposes

6    of anything that needs to be litigated.

7            So Mr. Medina, if you haven't had those

8    conversations yet, I would encourage you to do that

9    promptly, and I don't want to jump in front of that.  I

10   don't want anyone to feel like they were hijacked.  That's,

11   and again, I'm happy to discuss discovery issues.  Well,

12   "happy" may be an overstatement, but I'm always willing to

13   discuss discovery issues if they can move a case forward

14   efficiently rather than get too bogged down in too many

15   letters and motions, and frankly, I think the parties in

16   this case have handled it very appropriately.

17           I know that Gemini's letter was only after a lot

18   of discussion back and forth with the parties.  It was

19   brief.  It was straightforward, and so that's the way I'd

20   like to do it, but again, I think Gemini handled it

21   appropriately by knowing that they had essentially a live

22   dispute before coming to the Court.

23           MR. MEDINA:  Naturally, Your Honor, but if I may,

24   just briefly, I hear you loud and clear, Judge.  I think

25   what I wanted to get to was, I'd like to have some of those

Page 73

1       further conversations.  I'm wondering if there's a date

2       that's been set, any kind of discovery or holding that --

3       excuse me, a holding date that's been set to address any of

4       these kinds of issues.  I think I heard the 22nd.

5                THE COURT:  No, I think they're raised as we go

6       along, and there is a --

7                MR. MEDINA:  Okay.

8                THE COURT:  -- confirmation timeline and discovery

9       schedule that's at Docket 1027.

10               MR. MEDINA:  Yeah, I don't --

11               THE COURT:  And as I said, I'm happy to make

12      myself available to deal with things.  You know, my

13      background as a litigator, and I know that sometimes it's

14      just helpful to get answers on these things, and also, that

15      spending a lot of money and time writing discovery motions

16      or extensive letters is not necessarily the best use of

17      anybody's time for issues that can be explained and

18      addressed as they've been done here today.

19               So with that, I'll let you have at it, and my

20      general rule is that I'm happy to talk to people about

21      discovery so long as I'm not the first conversation that you

22      all have had.  That's what the meet and confer rules are

23      about, and so wiser minds than mine have came up with those

24      rules, and I -- I'm going to follow those for discovery.

25      But you'll see -- have those conversations and see where you

Page 74

1   end up.

2            MR. MEDINA:  All right, good.  Thank you, Judge.

3            THE COURT:  All right, so with that, Ms. Vanlare,

4   let me ask if there's anything else that we need to address

5   here from the point of view of the Debtors today.

6            MS. VANLARE:  Not on this issue, Your Honor, but

7   I'm just going to allow my colleague, Mr. Schwartz --

8            THE COURT:  Okay.

9            MS. VANLARE:  -- to discuss the matter that we

10   previously (indiscernible).

11            THE COURT:  All right, Mr. Schwartz, happy to hear

12   from you.

13            MR. SCHWARTZ:  Good morning, Your Honor.

14            THE COURT:  And again, my -- so there are times

15   when certain claim objections are things that say, Judge, we

16   have to get this resolved before confirmation, it literally

17   stands in the way of confirmation because of the issue or

18   because of the amount.  And then, there are other times

19   where, notwithstanding their importance, they're not

20   necessarily in the critical path.

21            And so it may come as no surprise to you that

22   oftentimes we know we're going to have a contested

23   confirmation, and here in chambers, we start working on

24   those issues well before we have the confirmation hearing.

25   And so I don't want to distract from time-sensitive issues

Page 75

1   unless there's a good reason to do so.  So with that

2   buildup, Mr. Schwartz, I'm happy to hear from you.

3            MR. SCHWARTZ:  Understood, thank you, Your Honor.

4   Just so the record's clear, David Schwartz of Cleary

5   Gottlieb on behalf of the Debtors.  So Your Honor, we

6   totally understand that the confirmation is right around

7   what we had requested, those dates for those claims

8   objections.  As I'm sure Your Honor knows, we're -- as

9   you've seen from today and over the course of the coming

10  weeks, there are claims objections scheduled because we're

11  trying to resolve as many claims as possible in advance of

12  an effective date so that claimants can get distributions on

13  the effective date, assuming the plan is confirmed.

14           I think, as you've also seen, when a claim

15  objection is contested, we routinely, over the past few

16  weeks, we've sought and received an adjournment from Your

17  Honor of those contested claims objections, and so what I'd

18  propose is, if Your Honor is amenable to schedule, to allow

19  us to have those scheduled dates of the 7th, 8th, or 9th of

20  February.  And to the extent there is a response that would

21  lead to a contested matter or a contested objection, the

22  Debtors would, of course, as they've done in the past, try

23  to resolve that and would seek an adjournment.

24           THE COURT:  All right, I appreciate your

25  sensitivity to that and certainly understand your desire to

Page 76

1  get as much progress on this as possible.  And so that's

2  very helpful to know we're all on the same page, and I'm

3  happy to give you the date.  Do you prefer the 7th or the

4  8th?

5          MR. SCHWARTZ:  I think the 8th works well for the

6  Debtors, Your Honor.

7          THE COURT:  All right, so let's use the 8th at,

8  let's say, 11 o'clock.  And that sounds fine.  And again, I

9  know we had our conversation today about books and records

10 objections and some of the details that -- what the case all

11 looks like in particular circumstance.  And so I think

12 that'll also help us to move forward efficiently on those.

13 And it's my understanding that this would be -- the 8th

14 would just be for the claim objections or would it be for --

15 do you anticipate it being for anything else?

16         MR. SCHWARTZ:  I think as of now we anticipate it

17 being for the claims objections.  I think we will certainly

18 be mindful of what Your Honor just said in terms of chambers

19 getting ready for a potentially contested confirmation

20 hearing.  So before anything else goes on the calendar that

21 may be contested, we're happy to sort of work with your

22 chambers to make sure that we're all on the same page.

23         THE COURT:  Okay, great.  Thank you very much.  I

24 appreciate it.  These are always very helpful conversations,

25 very much in the help-us-to-help-you vein, so Mr. Schwartz,

Page 77

1    thank you very much for all the insight.  And so the 8th at

2    11 o'clock.

3              MR. SCHWARTZ:  Thank you, Your Honor.

4              THE COURT:  And with that, anything else from the

5    Debtors?

6              MR. SCHWARTZ:  No, Your Honor.  I believe that's

7    the -- we've completed the agenda.

8              THE COURT:  All right, and let me ask if there's

9    any other party that has any other issues that would be

10   appropriate or helpful to raise today.

11             All right, hearing nothing, thank you all very

12   much for being here, and I'll look forward to seeing you

13   soon.

14             MR. SCHWARTZ:  Thank you, Your Honor.

15             MS. VANLARE:  Thank you, Your Honor.

16             (Whereupon these proceedings were concluded at

17   11:49 AM)

18

19

20

21

22

23

24

25

Page 78

1                   C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   *[signature]*

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  January 5, 2024