Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 23-10063-shl

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   GENESIS GLOBAL HOLDCO, LLC, et al.,

8            Debtors.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11                   United States Bankruptcy Court

12                   300 Quarropas Street, Room 248

13                   White Plains, NY 10601

14

15                   November 28, 2023

16                   2:03 PM

17

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

Page 2

1   HEARING re ***Participants In Person*** Doc #952 Amended

2   Notice Of Agenda

3

4   HEARING re Objection of the Genesis Crypto Creditors Ad Hoc

5   Group to (A) Debtors Motion to Approve (I) the Adequacy of

6   Information in the Disclosure Statement, (II) Solicitation

7   and Voting Procedures, (III) Forms of Ballots, Notices, and

8   Notice Procedures in Connection Therewith, and (IV) Certain

9   Dates With Respect Thereto, and (B) Amended Disclosure

10  Statement with Respect to the Amended Joint Plan of Genesis

11  Global Holdco, LLC et al., Under Chapter 11 of the

12  Bankruptcy Code (related document(s)950, 461)

13

14  HEARING re ***Participants In Person***Doc. #461 (Disclosure

15  Statement) Motion To Approve (I) The Adequacy Of Information

16  In The Disclosure Statement, (II) Solicitation And Voting

17  Procedures, (III) Forms Of Ballots, Notices, And Notice

18  Procedures In Connection Therewith, And (FV) Certain Dates

19  With Respect Thereto

20

21  HEARING re ***Participants In Person***Doc. #785 Third

22  Motion To Extend Exclusivity Period For Filing A Chapter 11

23  Plan And Disclosure Statement

24

25  Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    CLEARY GOTTLIEB STEEN HAMILTON, LLP

4         Attorneys for Debtors

5         One Liberty Plaza

6         New York, NY 10006

7

8    BY:  SEAN O'NEAL

9         JAN VANLARE

10

11   WHITE & CASE LLP

12        Attorneys for Official Committee

13        1221 Avenue of the Americas

14        New York, NY 10020

15

16   BY:  J. CHRISTOPHER SHORE

17        TODD WEST

18        PHILLIP ABELSON

19

20

21

22

23

24

25

Page 4

1   PROSKAUER ROSE LLP

2        Attorneys for Ad Hoc Group of Genesis Lenders

3        Eleven Times Square

4        New York, NY 10036

5

6   BY:  BRIAN ROSEN

7        JORDAN SAZANT

8

9   PRYOR CASHMAN LLP

10        Attorney for Ad Hoc Group of Dollar-Denominated

11        Creditors

12        7 Times Square

13        New York, NY 10036

14

15   BY:  MATTHEW W. SILVERMAN

16

17   HUGHES HUBBARD REED LLP

18        Attorneys for Gemini Trust Company, LLC, as Agent

19        One Battery Park Plaza

20        New York, NY 10004

21

22   BY:  ANSON B. FRELINGHUYSEN

23        ERIN DIERS

24

25

Page 5

1   LOWENSTEIN SANDLER LLP

2        Attorneys for Securities Class Action Lead Plaintiffs

3        65 Livingston Avenue

4        Roseland, NJ 07068

5

6   BY: MICHAEL PAPANDREA

7

8   WEIL GOTSHAL MANGES LLP

9        Attorneys for Digital Currency Group, Inc.

10       767 Fifth Avenue

11       New York, NY 10153

12

13   BY:  JEFFREY D. SAFERSTEIN

14        FURQAAN SIDDIQUI

15

16   UNITED STATES DEPARTMENT OF JUSTICE

17        Attorneys for the U.S. Trustee

18        201 Varick Street, Suite 1006

19        New York, NY 10014

20

21   BY:  GREGORY ZIPES

22

23

24

25

Page 6

1    OTTERBOURG P.C.

2        Attorney for SOF International, LLC

3        230 Park Avenue

4        New York, NY 10169

5

6    BY:  JAMES DREW

7

8    SECURITIES AND EXCHANGE COMMISSION

9        Attorney for SEC

10       950 East Paces Ferry Road, N.E., Suite 900

11       Atlanta, GA 30326

12

13   BY:  WILLIAM MATTHEW UPTEGROVE

14       THERESE SCHEUER

15

16   MCDERMOTT WILL & EMERY

17       Attorneys for Genesis Crypto Creditors Ad Hoc Group

18       One Vanderbilt Avenue

19       New York, NY 10017

20

21   BY:  DARREN AZMAN

22

23

24

25

Page 7

1    LATHAM WATKINS

2         Attorney for Joint Liquidators of Three Arrows Capital

3         1271 Avenue of the Americas

4         New York, NY 10020

5

6    BY:  BRETT NEVE

7         ADAM J. GOLDBERG

8

9    HORWOOD MARCUS BERK CHARTERED

10        Attorney for Foundry Digital LLC

11        500 West Madison, Suite 3700

12        Chicago, IL 60661

13

14   BY:  DANTE WEN

15

16   ALSO PRESENT:

17   PAUL ARONZON

18   ERIA IAN ASQUITH

19   KENNETH AULET

20   LUKE A. BAREFOOT

21   BRENDON BARNWELL

22   ANDREW BEHLMANN

23   ELIZABETH BEITLER

24   JEFFREY BERNSTEIN

25   DANIEL BRENNER

Page 8

1    BRIAN BULTHUIS

2    SAM CASCANTE

3    TOM CONHEENEY

4    ERIC C. DAUCHER

5    MICHAEL DIYANNO

6    MICHAEL S. ETKIN

7    DERAR ISLIM

8    ALI A. ISMAIL

9    ZUL JAMAL

10   HOO RI KIM

11   BARAK KLEIN

12   GLEN KRATOCHVIL

13   MICHAEL LETO

14   MEI MA

15   JEFFREY S. MARGOLIN

16   MICHELE MEISES

17   EVELYN J. MELTZER

18   ANAIS MITRA

19   NIMA MOHEBBI

20   JOHN NGUYEN

21   AMANDA PARRA CRISTE

22   GREGORY F. PESCE

23   REBEKAH PRESLEY

24   ARIANNA PRETTO-SAKMANN

25   CHRISTIAN RIBIERO

1   JOE SCIAMETTA

2   VIRGINIA T. SHEA

3   JASON SOTO

4   ANDREW SULLIVAN

5   GABE SUTHERLAND

6   ANDREW SWIFT

7   NACIF TAOUSSE

8   BRIAN TICHENOR

9   FRANCISCO VAZQUEZ

10  MEHANA VUNNAMADALA

11  ANDREW W. WEAVER

12  MICHAEL WEINBERG

13  COLIN WEST

14  ALEX VAN VOORHEES

15  MARI BICKNELL

16  SABRINA ASHA BREMER

17  RODNIKA CARTER

18  JADE DYER-KENNEDY

19  PAUL FABSIK

20  DEANDRA FIKE

21  ASHLYN GALLAGHER

22  UDAY GORREPATI

23  DAVID C. HARTMAN

24  MIRANDA HATCH

25  MIKE LEGGE

Page 10

1   BRADLEY LENOX

2   SAMUEL LEVANDER

3   THOMAS Q. LYNCH

4   JACK MASSEY

5   KYLE MCKUHEN

6   RICHARD CHESER MINOTT

7   JONATHAN RANDLES

8   KATIE ROSS

9   ANDREAS FELIPE SAENZ

10   SAMIRA SARAN

11   DAVID Z. SCHWARTZ

12   ANDY SERBE

13   PETER J. SPROFERA

14   CHRIS STABLE

15   VINCE SULLIVAN

16   CATHY TA

17   KATE THOMAS

18   GEMMA TUNG

19   TIM WOLFE

20

21

22

23

24

25

Page 11

1              P R O C E E D I N G S

2              THE COURT:  Good afternoon.  Please be seated.  We

3    are here this afternoon -- even judges forget to unmute

4    themselves from time to time.  We are here this afternoon

5    for the Genesis cases.  And my thought would be to get

6    appearances and then ask how you want to proceed.  I know

7    we've had a couple of chambers' conferences in past

8    hearings.  Again, subject to the usual rules about giving an

9    update about what we talked about.  And so, I'm also happy

10   to make that -- to throw that out there to the extent the

11   parties want to do that today.  We can do appearances before

12   or after.

13              So, let me hear from Debtor's counsel about what

14   you propose in terms of moving forward.

15              MR. O'NEAL:  Good afternoon.  Sean O'Neal, Cleary

16   Gottlieb, on behalf of the Debtors.  I thought what we could

17   do is we could start with a brief status conference just on

18   the case.  And then I think the main constituents are

19   willing to do a chambers' conference just briefly.

20   Shouldn't be long.

21              THE COURT:  All right.

22              MR. O'NEAL:  There is one technical issue which is

23   one of the hopeful attendees for the chambers' conference is

24   not here.  And so, I'm hoping we could maybe dial that

25   person in.  It's part of the McDermott Group.  If that's

Page 12

1    okay.

2              THE COURT:  All right.  Let's take those one at a

3    time.  So, then we'll start with appearances, and we'll go

4    from there.  So, let me get appearances starting with

5    Debtor's counsel.

6              MR. O'NEAL:  Sean O'Neal and Jan VanLare on behalf

7    of the Debtors.

8              THE COURT:  All right.  On behalf of the Official

9    Committee?

10             MR. SHORE:  Chris Shore from White & Case along

11   with Todd West and Phil Abelson.  Good afternoon, Your

12   Honor.

13             THE COURT:  Good afternoon.  On behalf of the Ad

14   Hoc Group of Claimants?

15             MR. ROSEN:  Good afternoon, Your Honor.  Brian

16   Rosen and Jordan Sazant on behalf of the Ad Hoc Group.

17             THE COURT:  All right.  On behalf of what I

18   understand to be the Ad Hoc Group of Dollar Lenders?

19             MR. SILVERMAN:  Good afternoon, Your Honor.

20   Matthew Silverman, Pryor Cashman, on behalf of the Ad Hoc

21   Group of Dollar Lenders.

22             THE COURT:  Good afternoon.  On behalf of Gemini

23   Trust Company?

24             MR. FRELINGHUYSEN:  Good afternoon, Your Honor.

25   Anson Frelinghuysen, Hughes Hubbard & Reed, on behalf of

Page 13

1    Gemini Trust Company LLC.  I am joined here today by Erin

2    Diers as well.

3            THE COURT:  Thank you.  Good afternoon.  On behalf

4    of the Securities Class Action Lead Plaintiff, I think is

5    how it's identified.  Is there anyone here for those folks?

6            MR. PAPANDREA:  Good afternoon, Your Honor.  It's

7    Mike Papandrea from Lowenstein Sandler on behalf of the

8    Securities Class Action Lead Plaintiff.

9            THE COURT:  All right.  Good afternoon.  Now I

10   realize, as is often the case and always the case here,

11   there are pages and pages of appearances.  And I know a lot

12   of those folks are listen-only.  So, at this point I'll turn

13   it over to the folks who think that they may need to say

14   something at today's hearing.  For appearances, I'm going to

15   start first with the people who are in the courtroom, and

16   then in a minute I'll signal and open it up to people who

17   are on Zoom.  So, first in the courtroom.

18           MR. SAFERSTEIN:  Good afternoon, Your Honor.

19   Jeffrey Saferstein from Weil Gotshal & Manges on behalf of

20   Digital Currency Group.  I'm here with my colleague, Furqaan

21   Siddiqui.  Thank you.

22           THE COURT:  All right.  Good afternoon.  Anyone

23   else here in the courtroom who needs to make an appearance?

24           MR. ZIPES:  Greg Zipes with the U.S. Trustee's

25   Office.  Good afternoon.

```
 1              THE COURT:  Good afternoon.  Anyone else here in

 2     the courtroom?  All right.  So, with that, I'll turn it over

 3     to the folks who are on Zoom.  Anyone else who needs to make

 4     an appearance in the case who is on Zoom?

 5              MR. DREW:  Yes, Your Honor.  James Drew,

 6     Otterbourg PC, on behalf of SOF International LLC.

 7              THE COURT:  All right.  Good afternoon.  Anyone

 8     else?

 9              MR. UPTEGROVE:  Good afternoon, Your Honor.

10     William Uptegrove on behalf of the United States Securities

11     and Exchange Commission.  With me today is my colleague,

12     Therese Scheuer.

13              THE COURT:  All right.  Good afternoon.  Anyone

14     else?

15              MR. AZMAN:  Good afternoon, Your Honor.  Darren

16     Azman from McDermott Will & Emery, Counsel to the Genesis'

17     Ad Hoc Group.

18              THE COURT:  Good afternoon.

19              Anyone else?  Counsel, I see your lips moving, but

20     I think you're on mute.

21              MR. NEVE:  Good afternoon, Your Honor.  Brett Neve

22     of Latham & Watkins on behalf of the Joint Liquidators,

23     Three Arrows Capital.  I am joined by my colleague, Adam

24     Goldberg.

25              THE COURT:  All right.  Good afternoon.  Anyone
```

Page 15

1    else?

2           MR. WEN:  Good afternoon, Your Honor.  Dante Wen

3    on behalf of Foundry Digital LLC.

4           THE COURT:  Good afternoon.  Anyone else?  All

5    right.  I will issue the usual caveat that if someone who

6    has not made an appearance at some point needs to speak,

7    you'll just make your appearance at that point, and we'll

8    take it from there.  Obviously, happy to hear from anybody

9    who needs to be heard from.

10          And so, with that, let's turn it over to Mr.

11   O'Neal for a status of the case, recognizing that today is a

12   continued hearing on the disclosure statements.  And Mr.

13   O'Neal, take it away.

14          MR. O'NEAL:  Thank you, Your Honor.  Sean O'Neal,

15   Cleary Gottlieb, on behalf of the Debtors.

16          We have made substantial progress since the last

17   hearing.  And I wanted to outline a few points of progress.

18   I guess first, yesterday we filed a plan and disclosure

19   statement as amended reflecting a variety of agreements with

20   the main constituents here resolving virtually all of the

21   disclosure statement objections but for two.

22          In addition, we have reached agreement with the

23   Official Committee of Unsecured Creditors and the Ad Hoc

24   Group of GGC Lenders on the terms of a plan pursuant to a

25   plan support agreement.  That plan support agreement has

Page 16

1    been the subject of many, many discussions, and I'm happy to

2    say that we have just released signature pages on that, and

3    we will be filing perhaps even as we speak a modified plan

4    and disclosure statement that will reflect the agreements

5    with the Ad Hoc Group and the Official Committee of

6    Unsecured Creditors.

7          It's also our understanding that but for one

8    reservation of rights that Gemini is also supportive of the

9    plan, realizing that we have a fair number of issues that we

10   are still going to be litigating with Gemini, but we've

11   worked very hard over the past few weeks to come up with

12   language in the plan and the disclosure statement that is

13   kind of neutral to those litigations.

14          In addition --

15          THE COURT:  Let me just back up.

16          MR. O'NEAL:  Yes.

17          THE COURT:  One question on that.  Am I reading

18   the tea leaves correctly to understand that the import of

19   that is to try to get as much as possible to an agreed-upon

20   disclosure statement and agreed-upon plan such that you can

21   get to that and then turn to the litigation?

22          MR. O'NEAL:  Correct.  Correct.  And it's really

23   about the -- you'll hear more about this, Your Honor.  But

24   it's really about the reserve mechanisms and how we deal

25   with the number of different variables that could arise out

Page 17

1   of the multiple litigations that have been commenced between

2   Gemini and the Debtors.

3          THE COURT:  I can see the advantage of trying to

4   litigate issues sort of in one time period rather than

5   litigate a plan confirmation and then litigate again.  So,

6   that was certainly going to be the subject of some

7   discussion at some point today.  So, thank you for that

8   update.

9          MR. O'NEAL:  In addition, we have reached

10  agreement with DCG, our corporate parent, with respect to

11  amendments to the partial repayment agreement.  We have just

12  filed on the docket the amendment to the partial repayment

13  agreement.  There's a lot to it, but the main thing, at

14  least from our perspective, is that we will receive

15  approximately $200 million or a little over $200 million in

16  value over the next few weeks and then full payment of all

17  amounts sought in the turnover action by April 1st, 2024,

18  and entry -- or we will be asking Your Honor for entry of an

19  order akin to a confession of judgment, a consent judgment

20  that we would ask you to enter.  And then pursuant to the

21  partial repayment agreement, we would forebear from

22  exercising any execution rights on that judgment until April

23  1st, or if there are defaults under the agreement, until

24  such time as those defaults.

25          THE COURT:  All right.  The is the notion that

Page 18

1    would be a 9019 or would it simply be a more limited motion

2    pursuant to a stipulation to enter a consent judgment?

3              MR. O'NEAL:  Excellent question, the subject of

4    much discussion.  And what you will find via our filing a

5    motion, the motion -- and this is really at the request of

6    the Creditor's Committee and the Ad Hoc Group.  We believe

7    that we had the inherent authority to control that

8    litigation, but they asked us to file a motion seeking

9    approval of the actions that we would be taking in

10   furtherance of it.  And in any event, we would need Your

11   Honor's signature on the consent judgment.  So, you'll see

12   that is a motion that will be filed in the adversary

13   proceedings, and it's based on both 363(b) and 9019.

14             THE COURT:  All right.  No need to parse the

15   precise levels of authority and sources of authority if

16   everyone is on the same page.  I get it.

17             MR. O'NEAL:  In addition, we have our hearing

18   coming up on the Three Arrows Capital settlement.  I believe

19   no objections have been filed.  And I think that's on

20   November 30th.

21             THE COURT:  All right.  And just to back up for

22   one second.  I made the joke about no need to parse

23   authority.  The most important thing I think is transparency

24   so that everybody understands what's happening, why it's

25   happening, and the justification for it.  So, the filing of

Page 19

1    a motion accomplishes that and so I don't mean to make light

2    of that.  That's a significant thing, and it sounds like you

3    all have worked closely to make sure to very emphatically

4    check that box.  So, thank you for that.

5            MR. O'NEAL:  Certainly.  And, Your Honor, even if

6    we hadn't filed the motion, we would have filed the partial

7    repayment agreement, as we did with the original partial

8    repayment agreement.  Though we were not seeking authority

9    for it, we filed it for exactly the reason you just said.

10   We would like to have transparency in this case.

11           In addition, as I noted, we filed a number of

12   different lawsuits with respect to Gemini, including a

13   variety of causes of action relating to what we call the

14   first tranche of GPTC that was allegedly foreclosed upon on

15   November 16th, 2022 as well as counterclaims to the Gemini

16   lawsuits and a motion to dismiss with respect to the second

17   tranche of GBTC or what we call the second tranche of GPTC,

18   which is GPTC that the Debtors hold but Gemini alleges were

19   either pledged to Gemini or that they have a constructive

20   trust over that.  Obviously, we disagree with that, and

21   that's the subject of the litigation.  In addition, we have

22   filed preference causes of action.

23           And all of that said, our main goal here is to

24   still try to see if we can reach a global resolution with

25   all of the constituencies.  And when I say that I really

Page 20

```
 1    mean DCG and Gemini.  We still haven't reached kind of a

 2    total settlement with DCG or Gemini.  We would like to do

 3    that if we can possibly, and we're going to continue those

 4    discussions even as we're soliciting the no-deal plan.

 5            One of the big successes of the plan, as Your

 6    Honor may have seen, is we filed also the distribution

 7    principles.  The distribution principles are really the a

 8    creditor-driven process, the subject of intense negotiation

 9    over many months resolving an intercreditor dispute

10    effectively between digital asset lenders and dollar

11    lenders.  And so, the distribution principles are really a

12    settlement, a compromise among various constituencies, the

13    dollar lenders and the crypto lenders.  And so, we are very

14    happy that we've achieved that settlement, and it is baked

15    into the plan.  And we very much thank the Ad Hoc Group and

16    the Creditors' Committee for all of their work on pulling

17    that together.

18            I would say that because this is Genesis, there is

19    a new Ad Hoc Group that has formed.  It would be not really

20    a genesis hearing if there wasn't a new Ad Hoc Group.  They

21    have come and gone, and we've seen KME, and we've seen Brown

22    Rudnik, and now we have a McDermott Ad Hoc Group.  They have

23    filed a 2019 statement.  It's in redacted form.  But we

24    understand the members and we see the amounts that they

25    currently hold, which is I think a little over $150 million
```

Page 21

1    in claims.

2            So, I think with that, Your Honor, that's all the

3    status report that I have.  And I think -- I don't know if

4    anybody wants to respond to that status report.  Happy to

5    allow others to do that.  But I think next steps would be

6    possibly a short chambers' conference if we can figure out

7    how to bring in Mr. Azman, who I guess didn't realize the

8    chambers' conference was going to be in White Plains rather

9    than Bowling Green.

10            THE COURT:  Well, that's where the case is.

11    That's where I sit, just for future reference for any

12    parties looking to show up to hearings in-person.

13            So, yeah, I'm not exactly sure how to do that.  I

14    suppose somebody could dial the person up on their phone and

15    just have them listen in.  That's fine.  Again, it's

16    important to make sure everybody who wants to be included is

17    included.  But since it's a chambers' conference, it's more

18    informal.  So, if you all want to work out something

19    informally that might be faster than doing something

20    informally, we all have phones that have speaker buttons on

21    them.  So, that may be a way to go.

22            MR. O'NEAL:  And that is exactly what we were

23    thinking.  I did a little research and I saw that there was

24    no phone in the chambers' conference room.

25            THE COURT:  No, there is no phone back there.

Page 22

1    That's because the origin of that is that used to be a jury

2    deliberation room.  So, that's why actually the seating in

3    this courtroom is a bit off.  What I always refer to as

4    right field actually used to be the jury box.  I had the

5    pleasure of trying a jury trial in here many years ago.  But

6    that's why there's no phone in there, so none of the jurors

7    could communicate with the outside world.  But we'll make

8    the best of it.  And I know I signed a bunch of electronics

9    orders, so we should have sufficient tech to get that person

10   on the phone.

11          So, what I would do now is first ask if there's

12   anybody who wants to chime in by nature of updates.  And

13   first I'll ask if there's anybody in the courtroom who

14   wishes to chime in.

15          For purposes of Zoom, there are the various

16   microphones.  But that's also safe.  You can do it -- right

17   where you are is fine as well.

18          MR. ROSEN:  Your Honor, Brian Rosen, Proskauer

19   Rose, on behalf of the Ad Hoc Group.

20          I rise only to say two things.  One, thank, as Mr.

21   O'Neal did, the Debtors as well as the UCC in all of their

22   efforts in connection with the plan and the disclosure

23   statement and the plan support agreement, but also to say

24   that in connection with the plan support agreement, I just

25   want the Court to be aware that approximately $2.1 billion

Page 23

1    worth of claims represented by the Ad Hoc Group have

2    executed the plan support agreement and we're very happy

3    with that result, Your Honor.  Thank you.

4            THE COURT:  All right.  Thank you very much for

5    that happy news.

6            Anyone else who wishes to chime in here in the

7    courtroom as to status?

8            MR. AZMAN:  Your Honor, it's Darren Azman from

9    McDermott Will & Emery, again, Counsel to the newly formed

10   Ad Hoc Committee that counsel just referenced.

11           Your Honor, I thought it might make sense to take

12   just a couple of minutes to introduce our committee to the

13   Court if now would be a good time for you.

14           THE COURT:  Briefly.  Because we do have a

15   disclosure statement hearing that is on the calendar.  And I

16   appreciate you being here, but obviously you are joining a

17   case in progress and so that's -- you join the case as it is

18   as opposed to starting from square one.  So, I will give you

19   a brief moment to jump in, Counsel.  So, go ahead.

20           MR. AZMAN:  Thanks very much.  Your Honor, my

21   group consists of holders of bitcoin and Ethereum claims.

22   That's in contrast to fiat and stable coin claims.  As of

23   today, our group controls more than 9,000 bitcoin and 1,800

24   Ethereum claims, and the group is continuing to grow.

25           This group formed just before Thanksgiving when I

Page 24

1   was hired.  And, Your Honor, although I am new to this case,

2   I'm not new to crypto cases.  I led the representation of

3   the Official Creditors' Committee --

4            THE COURT:  All right.  Let me cut you off.  I

5   really do need you to get to brass tacks.  We have a lot of

6   people here.  I'm very sensitive to the amount of time and

7   money that will be spent in cases on professional fees, and

8   I think people are trying to keep that to a minimum where

9   possible.

10           So, I do have your objection, which does describe

11  your views about the disclosure statement.  And obviously

12  we'll get to that in a bit.  But again, I just wanted to get

13  sort of a -- if you could give me a quick and dirty summary

14  as to who you are, which I think you did, and what you're

15  hoping to accomplish in this case that isn't covered by your

16  objection.

17           MR. AZMAN:  Sure.  We filed a short disclosure

18  statement objection.  We've had discussion with the Debtors

19  in advance of the hearing today to try to finalize language.

20  We're not quite there yet, although I think we will be there

21  soon.  And once we do, we can submit that language to

22  chambers.  But I did want to spend maybe one minute just

23  telling Your Honor what we're here for and we hope to

24  accomplish if that's okay.

25           THE COURT:  Briefly, again.  I'm sorry.  I jumped

1   in because I just got the sense, rightly or wrongly, that

2   there was a longer speech that was going to unfold.  And now

3   is not the time for such a long speech.

4            MR. AZMAN:  Understood, Your Honor.

5            THE COURT:  Briefly.  Go ahead, Counsel.

6            MR. AZMAN:  Yeah, sure.  So, in short, Your Honor,

7   the crypto creditors' view, at least my group, is that

8   they're getting the short end of the stick.  There are two

9   other ad hoc groups in this case --

10           THE COURT:  Okay.  So, here's what we're not

11   doing.  I have your objection.  We're going to get to your

12   objection.  So, that's what your objection says, because I

13   read it when it was filed on the 27th.  So, after we've

14   already had our first disclosure statement hearing.  So, I

15   read it and I'll consider it.  And I get it from paragraph

16   one, sentence one.  So, we're going to argue that later.

17   Now is not the time for that.

18           So, again, is there anything in particular other

19   than what's said in your objection that you need to convey

20   to me for purposes of -- again, we have a lot of people,

21   interested parties in the case.  So, I'm just trying to keep

22   things as efficient as possible.

23           MR. AZMAN:  Let's keep moving.

24           THE COURT:  All right.  So, don't worry, Counsel,

25   we will get to your objection.  Again, I read it when I

Page 26

1    received it and we'll chat about it to the extent that the

2    parties don't reach an agreement, or even perhaps if they

3    do.  So, that's fine.

4            Anybody else as to the status of the case briefly?

5    If not, what I'm going to do is I'm going to take a short

6    adjournment.  We'll make sure to dial in the party to

7    participate informally.  And the idea, again, is that people

8    will just chat about things that might be best left to a

9    chambers' conference.  We will come back and make a report

10   of that so that nobody is left in the dark in terms of a

11   summary.  And the idea is that it's 25 after two.  We will

12   plan to come back in say 20 minutes once we take the break.

13   And if it's going to go longer than that, I will pop back on

14   and let you know.  Again, I appreciate everybody's time and

15   their patience, and I don't want anyone to feel like they're

16   sort of stuck in the hall waiting endlessly.  That's not the

17   intent.  So, we'll try to, as we just discussed, keep things

18   moving.

19           So, we'll take a break for about 20 minutes.  I

20   would encourage folks who are on the line and Zoom to stay

21   on the line.  The idea is to keep this brief enough so that

22   nobody has to go to the extra effort of jumping on and off.

23   And I'll give you an update in 20 minutes if for some reason

24   we haven't come back in full at that time.  So, thank you

25   very much.  I am going to mute my line in the meantime, and

Page 27

1    we'll talk to you all very shortly.  And thanks again for

2    your patience and good humor.

3              (Recess)

4              THE COURT:  I am aware that somebody has made a

5    request to record the proceedings.  They were recorded by

6    virtue of a transcript.  But there is a ban -- well, there

7    are rules about recording things outside the official

8    recording by the court.  And so, people are not permitted to

9    videotape this.  So, I just want to be clear about that.

10   Again, I understand people might not know the rules.  That's

11   why I just wanted to hop on and let you know.  Thank you.

12             (Recess)

13             THE COURT:  All right.  Good afternoon once again.

14   So, let me start by again thanking everybody who is on the

15   Zoom for their patience and good humor as we had a

16   discussion in chambers.

17             So, as we discussed in the past, certainly want to

18   make sure to give you a rundown of what was discussed.  So,

19   let me just pull my appropriate notes here.  Give me one

20   second.

21             So, the discussion was about the status of the

22   case.  And that took a couple of forms.  And there are

23   probably two main things that were the focus of it.  One was

24   litigation.  There's been a lot of discussion about

25   litigation.  And after all this is a sort of confirm and

Page 28

1    then proceed with litigation kind of plan.  But there's also

2    potential litigation about things relating to the plan such

3    as the distribution principles.  And of course, all these

4    conversations about litigation happen in the context of this

5    case, which are unique, as every case has its own unique set

6    of facts.  And among those things includes the lawsuit

7    brought by the New York Attorney General that really is

8    against the Debtor, parents, Gemini, a lot of the same folks

9    about a lot of the same issues to this extent.  It's about

10   what the creditors, that is the investors, should get and

11   how they should be made whole or as whole as they can be

12   made in the context of either the bankruptcy or litigation

13   in that case.

14          And so, in response to those comments I'll say now

15   what I said in there, which is that it's always important to

16   think about these things as rationally and without emotion

17   as you can.  It's important to -- the best way to do that

18   really is to sort of think about litigation analysis.

19          I clerked for a judge who had tremendous success

20   in settling cases that were getting ready to go to a jury

21   trial because he always would try to put the emotional

22   issues to the side and think about it how an insurance

23   company like Lloyds of London would settle it; what are your

24   litigation risks, what's your likelihood of success, what's

25   the upside and what's the downside.  And in this case,

Page 29

1    there's an even greater context here, which is that

2    settlements here may impact the lawsuit brought by the New

3    York Attorney General's office to the extent there's

4    overlap.  I'm obviously not the New York Attorney General,

5    and so I have no authority and can't speak for them.

6           But to the extent that the cases have a similarity

7    in looking out after the investors, trying to figure out how

8    best to handle things with the investors who here are

9    creditors in this case will go a long way towards moving

10   things forward.  And litigation is expensive.  It's also

11   time-consuming.  And once litigation starts in earnest, it

12   takes on a life of its own.  I can say that as someone who

13   is a litigator and a federal litigator for many, many years

14   before taking the bench.

15          So, I encourage everybody involved, as I said in

16   there and I'll say out here, to think as clear-eyed and

17   dispassionately about these issues as they can.  Information

18   is key so that you can make an intelligent assessment.  And

19   obviously anything I can do to assist, I'm happy to do that

20   as long as the parties who are involved in whatever dispute

21   agree that that would be helpful.  Obviously, I am not

22   somebody who can mediate disputes because I have to decide

23   the disputes of, they come to me.  So, I always stay away

24   from talking with anybody about the merits of things except

25   in the context of making rules.  So, it's true now, it was

1      true in the conversation that we just had off the record.

2              The other second aspect of the conversation was

3      talking about the alternatives that are available in this

4      case.  And I said in there and I'll say out here that it

5      struck me that this is not the Debtor's preferred course of

6      proceeding.  They had another way of proceeding with another

7      plan involving settlements of various kinds, and they didn't

8      get the necessary creditor support.  And so, they turned to

9      what is a liquidation plan.

10              And that really means that the options for

11     purposes of Chapter 7 -- I'm sorry, for purposes of Chapter

12     11 -- that is this kind of case.  Once you reach the point

13     where you're talking about a litigation plan, meaning we'll

14     confirm, agree to liquidate, and then sue, there aren't a

15     whole lot of other options unless the parties reach an

16     agreement.  And the only other options short of an agreement

17     or this plan in some form or another involve something like

18     a Chapter 7 liquidation, so a conversion of the case.  And

19     one of the things that the Debtors were supposed to do and

20     did do in the context of the plan is include a liquidation

21     analysis saying that if we liquidated in Chapter 7, how

22     would people fare.  And obviously, people can look at that

23     for themselves.  That's attached to the proposed plan.

24              And I'm not giving away anything to say that the

25     Debtor's view that a Chapter 7 liquidation is much worse

Page 31

1    because it involves additional administrative expense.  It

2    also involves the monetization of everything as opposed to

3    in-kind distributions, which has, I am told, negative tax

4    consequences as well as the problem of timing being somewhat

5    more indiscriminate in terms of making those assets into

6    dollars.

7            And so, I think that view about the Chapter 7

8    liquidation being not a preferrable option is shared by

9    everybody, no matter how disparate a view they have on other

10   legal issues.  And so, I think that is important to keep

11   this in mind when looking at things.  Even if you put aside

12   your views about the particular legal merits and facts of

13   your particular issue, that the overall global context of

14   the case and the alternatives, they are fairly narrow at

15   this point.  They are some form of liquidation plan which is

16   what I have in front of me, a Chapter 7 liquidation, or some

17   sort of settlement.

18           So, that's what we talked about.  And again, I

19   think it's important for people to -- bankruptcy is not

20   something that is easy to necessarily see all the options

21   and all the variations and all the context that comes into

22   thinking about these things rationally.  It can be very

23   challenging for really smart people who aren't bankruptcy

24   experts.  There's no shame in that, obviously.  But it is

25   something to keep aware of.  Because lots of smart people

Page 32

1    will say I can figure this out.  And you can, but you just

2    have to be aware that there's a lot of things that go into

3    it that might not be obvious on the first or even the second

4    glance.  And so, I certainly encourage folks to get as much

5    information and dispassionate and expert advice as they can

6    so they can make the best decision for themselves and an

7    informed decision.  We all know litigation is expensive.  We

8    all know that -- everyone agrees that this case we're trying

9    to wrap up as quickly as we can.  But I'm a blunt

10   instrument.  If people can't reach agreements, I will decide

11   things as best I can under the facts and the law on whatever

12   legal issue is presented to me.  That doesn't necessarily

13   result in as good an outcome as a settlement would for any

14   particular party.  But that's my job.  And so, I will do it

15   to the best of my ability as promptly as I can.  But again,

16   I encourage people to make sure to exhaust other options so

17   that you feel like your litigation as a matter of choice

18   rather than as a matter of a default path.  That's not a

19   good place to be.

20           So, with that, let me ask any party if there's

21   something that we talked about off the record that I failed

22   to mention and is worth highlighting.

23           MR. O'NEAL:  Your Honor, Sean O'Neal, Cleary

24   Gottlieb, on behalf of the Debtors.  I think you covered it

25   all, and we thank you very much for your time and that

1     excellent summary.

2            THE COURT:  All right.  There was one other thing

3     we talked about that I think is particularly noteworthy for

4     folks who are here who have been following the case

5     individually.  We've had some discussions over time about

6     communications in the case by individual creditors.  There

7     was also separate and apart from that a motion to seal

8     certain creditor information.  I issued a ruling on that.

9     That ruling complicated a bit, and by necessity, the way an

10    individual might communicate with the Court about this case.

11    And the idea is that the ruling about sealing concluded that

12    I found in that decision that it was appropriate to keep

13    certain information, identifying information of creditors

14    off the public record.  But that means if somebody

15    individually wishes to be heard if they have counsel among

16    the official committee or one of the ad hoc groups, then

17    that person can speak for them.  But if they don't or they

18    wanted to communicate separately, how do they do that and

19    what are the consequences of that.

20            And I understand that the Debtors put together

21    sort of what I would say is sort of a working first draft

22    after consultation with the committee about a way to handle

23    that.  And I think they are in the process of circulating

24    that.  I think I saw a copy just before or just as I came

25    out here.  And so, I took a brief look at it.  And so, Mr.

1    O'Neal, anything that you or anyone on your team wants to

2    say as to that?

3            MS. VANLARE:  Your Honor, happy to describe some

4    of the principles that we tried to -- we're happy to do that

5    now.

6            THE COURT:  You know what?  Since we're on the

7    topic now, I think it makes sense.  So, I would either pull

8    that microphone closer to you or grab the podium, whatever

9    is more convenient for you.

10            MS. VANLARE:  Good afternoon again.

11            THE COURT:  Good afternoon.

12            MS. VANLARE:  Jan VanLare, Cleary Gottlieb Steen &

13    Hamilton, on behalf of the Debtors.

14            So, as Your Honor just articulated, you had

15    expressed concerns several hearings ago regarding

16    individuals who have chosen to contact the court with

17    letters.  They typically are pro se creditors.  That's of

18    course quite common in bankruptcy cases, but there is a

19    challenge because at the same time we have an order in these

20    cases sealing and confidential information.  The typical

21    process would be for those letters to get filed.  And so, --

22            THE COURT:  I just want to reiterate that point.

23    The typical process is anything that's sent to me either by

24    email or in a letter, I put on the docket.  And so, that's

25    the normal way that happens.  And it's just automatic

Page 35

1    regardless of the case.  So, that's somewhat what presents

2    the challenge.

3              So, Ms. VanLare, please.  Sorry to interrupt.

4              MS. VANLARE:  Mindful of those concerns, what we

5    would propose -- of course subject to your views and input

6    from creditors, because really we're just trying to

7    streamline communications, make sure people have a way to

8    participate in the case and at the same time, are mindful of

9    the confidentiality concerns -- is a cover letter of sorts

10   that can be submitted with a letter to Your Honor that

11   basically allows the creditor to check off a box that says

12   yes, I consent to my name being publicly filed, or no I do

13   not consent.  And that sort of makes it the creditor's

14   choice as to whether or not they want to reveal their

15   identity and have their communication filed or if they

16   choose not to do that.

17             The other piece of this, we do think it's

18   important that parties who are seeking relief in the case do

19   identify themselves.  And so, we -- and I'm speaking on

20   behalf of the Debtors.  Obviously, creditors may have other

21   views.  But we think it's important that those people

22   seeking relief or who are opposing relief do identify

23   themselves as part of the record.  And so, we just -- part

24   of the protocol is really to lay the --

25             THE COURT:  To inform people that that's -- yeah.

Page 36

1           MS. VANLARE:  To inform people.  Exactly.

2           THE COURT:  That's the choice.  And let me expand

3      on that.  As anybody who read the opinion -- and I certainly

4      forgive you if you don't -- on sealings, that opinion made

5      clear from the get-go that core proceedings are normally

6      public.  Transparency is very important in the bankruptcy

7      court.  It's a value we hold dear.  And there is,

8      notwithstanding that, a rule that says that under

9      appropriate and narrow circumstances, that you can seal

10     certain kinds of information.  And that's what the opinion

11     was about, where to draw that line.

12          But it is very clear, and I think it's consistent

13     with how other cryptocurrency cases have been handled, that

14     if you want to participate as a party in terms of asking for

15     relief, opposing relief, or for example being a member of

16     the Official Committee of Unsecured Creditors, that you are

17     voluntarily willing to make your identity public because

18     people can't litigate anonymously.

19          And so, part of the protocol I understand is to

20     also educate and remind people so that they are very clear-

21     eyed about the choice, saying in submitting this to the

22     court, I understand I'm putting my name out there in

23     submitting this letter and understand the consequences of

24     that.  Because some people may say, well, I don't feel

25     strongly enough about this particular view that I want to

Page 37

1    express that I'm willing to give up my privacy, and I will

2    instead find another avenue among either the Official

3    Committee or an Ad Hoc Group that I'm a part of to ask them

4    to take my concerns into consideration.

5           So, Ms. VanLare, am I right in saying that you

6    plan to circulate that among folks, or you already have

7    recently and that is the idea, to maybe put it on

8    presentment once you reach some sort of general consensus?

9           MS. VANLARE:  We're happy to do that, Your Honor.

10   We did circulate it to counsel to the Committee, and they've

11   provided some feedback.  We circulated it to Mr. Zipes.  I

12   know he had some concerns.  We have not yet had a chance to

13   circulate it to other creditor groups.  So, I'm happy to do

14   that and happy to put it before Your Honor on presentment.

15          THE COURT:  All right.  And for anybody who

16   doesn't know -- again, highlights the fact that bankruptcy

17   is a lot of things that are not part of anybody's normal

18   life -- presentment means that someone presents an order to

19   the court saying unless somebody objects to this order, we

20   would like you to enter it.  And so, the idea here is that

21   Ms. VanLare on behalf of the Debtors will canvass with all

22   the groups who were involved in the case to get their

23   comments.  And if we can get to an agreed-upon form of

24   order, that addresses this problem, then we'll put it on for

25   presentment and get it entered so that when we get closer to

Page 38

1    something like confirmation and people might want to be

2    heard, that they have a vehicle to do that.  Anything else,

3    Ms. VanLare, on this?

4              MS. VANLARE:  On this issue, no.

5              THE COURT:  All right.  So, with that, I will turn

6    it back over to the Debtors to pick up where we are in terms

7    of the matters on for today's hearing.

8              MS. VANLARE:  Thank you, Your Honor.  I'll just

9    stay at the podium because that's my cue as well.

10              So, in terms of the objections that are remaining,

11    as Mr. O'Neal said, we've made even more progress since the

12    last hearing on the disclosure statement.  We're really down

13    to two.  One is the objection filed by SOF, and two is the

14    limited objection that was filed by the McDermott Group.

15              What I would propose to do, Your Honor, is just to

16    go through the objections that we've resolved and through

17    our various discussions.  There were some things we would

18    like to put on the record.

19              THE COURT:  Yes, please.

20              MS. VANLARE:  So, we do have -- I have a statement

21    on the record as well as Mr. O'Neal will make a statement on

22    the record with respect to the Gemini objection.

23              THE COURT:  And let me just pick up the thread.

24    At the last hearing, we addressed a whole large number of

25    objections, sort of ran those to ground, resolving a number

Page 39

1   of those.  And so, those are sort of off the table for

2   purposes of today.  So, we really are picking up where we

3   left off.  And so, with that, please proceed.

4           MS. VANLARE:  That's correct, Your Honor.  We are

5   really down to a handful, and we further decreased that

6   number.

7           So, I'll just make a general note.  I think this

8   reflects discussions with the U.S. Trustee as well as others

9   that parties -- points that prior objections that parties

10  made in their pleadings that really are confirmation issues.

11  We just want to make clear that we agree that those are

12  preserved, and everyone's rights are reserved for

13  confirmation.  They can raise them at the confirmation

14  stage.

15          THE COURT:  All right.  And just to expand on that

16  for a moment, the disclosure statement is about whether the

17  disclosure statement and attachments, which include the

18  proposed plan, provide adequate information for someone to

19  vote on the plan.  And that's what it's about.  It does not

20  mean that the Court is making a ruling on any of the

21  particular provisions of the plan, saying that they are

22  appropriate, not appropriate, approved, not approved.

23  That's what a confirmation hearing is for.  It's about

24  whether -- what's in the plan.  And what the Debtors are

25  trying to do in this case is appropriately disclose so

Page 40

1    people have adequate information.

2           MS. VANLARE:   Thank you, Your Honor.   So, next I

3    would like to make a statement on the record regarding the

4    distributions.   You've heard a lot about the distribution

5    principles, and this is a related point.   What we would like

6    to do is just lay out some of the principles that we intend

7    to apply for the sake of transparency so that folks know

8    what our intentions are.

9           So, first, as we have said in the past, we are

10   focused on making in-kind distributions to creditors to the

11   extent possible as this has been the overwhelming request by

12   our creditors.

13          We have had numerous productive discussions over

14   the last several months with regulators including the SEC

15   regarding our plan for making distributions of digital

16   assets to creditors.

17          For purposes of transparency, we would like to put

18   on the record exactly what we intend to do.   Our objective

19   here is to create transparency and provide notice to

20   everyone.   The Debtors also want to avoid surprises later on

21   in the process.   And that's why we would like to lay out the

22   key principles, as I mentioned, that we intend to use that

23   are consistent with the proposed plan and disclosure

24   statement.

25          And this way if any of the governmental actors or

Page 41

1  anyone else has concerns, they can raise them in advance of

2  confirmation.

3          As described in the distribution principles, our

4  goal is to maximize in-kind and like-kind recoveries.  To

5  that end, we expect to make distributions of cash, stable

6  coin, BTC, ETH, and Altcoin to creditors.  Altcoin is a

7  defined term in the plan.  It means any digital asset that's

8  not Bitcoin, ETH, or a stable coin.

9          In order to achieve our goal of maximizing in-kind

10 recoveries, we may purchase Bitcoin and ETH to distribute to

11 Bitcoin and ETH creditors.

12          At this point, we do not intend to purchase any

13 altcoin or stablecoin beyond what we already have on hand to

14 distribute to Altcoin and stable coin creditors.

15          We may also well excess stablecoin and altcoin if

16 we have excess stablecoin and altcoin on hand beyond what

17 would be distributed to stablecoin and altcoin creditors.

18          Right now, our best estimate subject to change is

19 that we will have approximately $4 million in access altcoin

20 and approximately $2 million in access stablecoin that we

21 would sell.

22          As described in the plan and the distribution

23 principles, the SEC would receive three days' notice and an

24 opportunity to object before any purchase or sales of

25 altcoin or stablecoin.

Page 42

 1              We may sell GBTC and ETH shares through a

 2    registered broker-dealer to make distributions to creditors

 3    of the proceeds of any such sales.

 4              Again, it's our goal to be transparent.  And that

 5    is the reason that we are describing all of this on the

 6    record today.

 7              We have discussed this with regulators, including

 8    the SEC, and we have not heard any objections to this

 9    proposed course of action.

10              We do want to make sure that everyone is aware of

11    the plan so that our creditors know what to expect going

12    forward.  And if anyone has any issues or objections with

13    what we have described, we ask that you let us know.  And of

14    course, anyone who objects to this has the ability to do so

15    in advance of confirmation.

16              So, with that, Your Honor, I would like to cede

17    the podium to Mr. O'Neal, who will describe -- make some

18    points on the Gemini objection and the resolution.

19              MR. O'NEAL:  Your Honor, Sean O'Neal, Cleary

20    Gottlieb, on behalf of the Debtors.

21              I'm about to read an agreed-upon statement on the

22    record.  It's agreed upon by the Debtors, Gemini, the Ad Hoc

23    Group, and the Creditors' Committee.  It's a bit long, so

24    here we go.

25              On October 31st, Gemini objected to approval of

Page 43

1    the disclosure statement because it asserted that the Gemini

2    lenders were prejudiced by the terms of the plan including

3    the proposed treatment of its claims, of two tranches of

4    GBTC shares, which are the subject of the pending

5    litigations that I mentioned earlier.

6            Since the initial continuance of the hearing on

7    November 7th, Gemini, the Debtors, the Ad Hoc Group, and the

8    Committee have worked in good faith to draft plan terms to

9    preserve the status quo for the Gemini lenders and the

10   Debtors pending the determination of the adversary

11   proceedings filed by Gemini on October 27th and the

12   counterclaims and separate claims filed by Genesis last

13   week.  These are the claims and counterclaims and defenses

14   presented in adversary proceeding 23-01192 and 23-01203.

15           Although we were not able to reach final agreement

16   on reserve terms prior to today's hearing, the proposed plan

17   provides a mechanism for us to continue negotiating those

18   reserves.  And also, a mechanism to allow us to seek Your

19   Honor's help in the event that these negotiations fail after

20   a prescribed period.  This language is in Sections 1(A)(10),

21   1(A)(1)(10), 4(A)(12), (A)(B), and then also 9(A)(8).

22           When we say preserving the status quo, we mean

23   both reserving the legal rights and also preserving

24   sufficient GBTC shares at the Debtors and Gemini as

25   applicable for the range of potential legal outcomes in the

Page 44

1    adversary proceedings.

2          The purpose of this statement is to indicate to

3    Gemini and the Court that there is an alignment of purpose

4    with respect to the reserve language and that the issues

5    pertain only to the rather difficult negotiation of language

6    that accounts for the various scenarios that would permit

7    reserves to be released as legal issues are resolved in the

8    adversary proceedings.

9          The disclosure statement includes a description of

10   the following plan provisions and key principles.  I'll just

11   go through those briefly.  And this kind of puts in kind of

12   layperson's terms some of the things that we say more

13   legalistically in the plan.

14         Following the effective date, Gemini Lenders will

15   receive distributions at the same distribution rate as all

16   other general unsecured creditors.  If the adversary

17   proceedings are not resolved at the time of any estate

18   distributions, each Gemini lender will be treated as if the

19   entire claim is unsecured despite Gemini's assertions that

20   the claim is secured by collateral.

21         The dispute with respect to additional GBTC

22   shares, the additional GBTC shares are the GBTC shares that

23   the Debtors currently hold, which are the subject of

24   Gemini's lawsuit alleging that they have a security interest

25   or a constrictive trust.  Sometimes we call that Tranche

Page 45

1    Two.

2              That must be resolved as a condition to the plan

3    effectiveness and before distributions to creditors can be

4    made.  This ensures that no creditor is prejudiced with

5    respect to the distributions of additional GBTC shares.

6              To be clear, if the Debtors prevail in the

7    adversary proceedings with respect to the additional GBTC

8    shares, Gemini Lenders will receive distributions from any

9    proceeds of the additional GBTC shares at the same

10   distribution rate and subject to the same terms as all other

11   general unsecured creditors.  Moreover, the plan provides

12   that this condition precedent cannot be waived without

13   Gemini's consent.

14             The Gemini GBTC shares, that is the GBTC shares

15   that Gemini holds and that they allege to have foreclosed

16   upon on November 16th, 2022, which are the subject of

17   various counterclaims by the Debtors, those will be reserved

18   pending full -- or those will be reserved in full pending

19   the resolution of the adversary proceedings related to those

20   shares.

21             As provided for in Section 1(A)(1)(10) of the

22   plan, that's in the definitions, the Debtors will work to

23   reach agreement with Gemini, the Committee, and the Ad Hoc

24   Group on the reserve terms promptly and by no later than 10

25   days prior to the voting deadline.

Page 46

1          If the parties cannot reach agreement by that

2   date, we may ask Your Honor for assistance in that.

3          As you can imagine, Your Honor, we all share a

4   deep desire to have the various Gemini lawsuits resolved as

5   soon as possible.  This is especially true with respect to

6   the additional GBTC shares that the Debtors currently hold.

7   We believe that the disputes over the purported pledge and

8   constructed trust can be resolved in advance of

9   confirmation, and we will be asking Your Honor's assistance

10  in helping us expedite that dispute.

11         We understand that with this statement on the

12  record, Gemini is willing to withdraw its objection to the

13  disclosure statement while reserving its right to oppose

14  confirmation of the plan on other grounds.

15         THE COURT:  Thank you very much.

16         MR. O'NEAL:  Thank you.

17         THE COURT:  Anything from Gemini?

18         MR. FRELINGHUYSEN:  Good afternoon, Your Honor.

19  Anson Frelinghuysen, Hughes Hubbard & Reed, for Gemini Trust

20  Company on behalf of the Gemini Lenders.

21         For the past month, Gemini has been working with

22  the Debtors, the UCC, and the Ad Hoc Group on language to

23  create these appropriate reserves to maintain the status quo

24  while these litigations are going forward.  Mr. O'Neal's

25  statement on the record was agreed upon and reflects the

Page 47

1    history, tensions, and go-forward process.  So, that does

2    resolve our objection to the disclosure statement.

3            Unfortunately, we are not done, and we are not all

4    the way there and we're not ready to support the plan all

5    the way.  So, I would just like to put a few reservations on

6    the record as well so we're aware of what would come up at

7    confirmation.

8            THE COURT:  Well, today is not a confirmation

9    hearing, so I'm just trying to avoid sliding into one.  So,

10   certainly to the extent that there are -- I thought the

11   agreed-upon statement was agreed upon so that it freed the

12   way to the disclosure statement approval.  So, when you say

13   you have some reservations, I guess I'm a little let's see

14   as to where the reservations fit in the global resolution as

15   to the disclosure statement.

16           MR. FRELINGHUYSEN:  With respect to the disclosure

17   statement, we are resolved on those.  We had some issues

18   that are going to push over to confirmation.

19           THE COURT:  Well, that's -- all your rights are

20   reserved in that context.  So, I'm just trying to avoid

21   turning today into a confirmation hearing which is, as you

22   know, is sort of the regular rules of the road for

23   bankruptcy judges when confronted with the disclosure

24   statement hearings and the potential bleeding between the

25   two.  So, I really am trying to avoid getting into

Page 48

1    confirmation objections.  Certainly, I have your papers that

2    were filed and are summarized.  I know the debtor had a

3    chart of various objections, and obviously all your rights

4    of Gemini are preserved as to confirmation.

5              MR. FRELINGHUYSEN:  Right.  So, these would be

6    issues that would come up after we were able to file our

7    objection.  These are issues that came up in the month that

8    we were working on language to make the plan confirmable and

9    something that we wouldn't be opposed to at a disclosure

10   statement phase.

11             THE COURT:  I confess I'm not -- I'm not quite

12   sure how this is working.  But go ahead.  Because I don't

13   know we're going to get through today if every agreement has

14   a tail to it, meaning that we've got caveats to the

15   agreement.  And, frankly, I'm not sure how to consider that

16   you're about to say but let me hear it and then we'll sort

17   it out.

18             MR. FRELINGHUYSEN:  Your Honor, I think we'll

19   focus on one item that was added to the plan which pertains

20   to a term referred to as Gemini insiders.  This is --

21             THE COURT:  So, is there something in the

22   disclosure statement that's a problem?  If it has to do with

23   the plan, it's a confirmation objection.

24             MR. FRELINGHUYSEN:  Well, this was added to the

25   plan this morning, so there is no statement in the

Page 49

1    disclosure statement about it.

2         THE COURT:  All right.  Go ahead.

3         MR. FRELINGHUYSEN:  The Gemini insiders are Gemini

4    lenders that also happen to be potentially insiders of

5    Gemini that would be treated differently as a result of

6    their status as Gemini insiders through the plan.  There's

7    just something that we agreed to in the -- we didn't agree

8    to that term being added.  It was added to the plan as part

9    of our process on reaching agreement that we were able to be

10   comfortable with today.  But we will be opposing that at

11   confirmation.

12        THE COURT:  But is there something about approving

13   the disclosure statement that waives your rights as to that

14   particular provision?

15        MR. FRELINGHUYSEN:  I don't think the disclosure

16   statement --

17        THE COURT:  So, I guess I'm trying to avoid going

18   through the things that you have a substantive objection to

19   for confirmation.  Because, again, that's not the purpose of

20   today's hearing.  And I think we will be here much longer,

21   because if you do it, then I can imagine there may be

22   numerous other parties whose disclosure statement objections

23   are otherwise resolved who may want to put things on the

24   record as to confirmation.  But we have a time and place for

25   that.  It's called the confirmation hearing.

1          So, again, if there's something in the disclosure

2     statement that is problematic that doesn't provide adequate

3     information or provides misleading information, let's get to

4     it.  But otherwise, if it's about the plan and nothing about

5     approval of the disclosure statement will impair your rights

6     -- and again my understanding is that you reserve all your

7     rights to confirmation -- I don't want to get into that

8     today.  I suspect the plan, as these plans do, will continue

9     to pick up provisions between now and whenever we have the

10    hearing.

11          MR. FRELINGHUYSEN:  Absolutely.  And that's the

12    only one I'll mention.  There was a longer list.

13          THE COURT:  Okay, fair enough.  I know it puts you

14    in a difficult position if it's added today.  But, again, I

15    think you can understand my point.  It's not about your

16    particular objection per se, but just the potential of

17    having everyone note their confirmation objections now,

18    which may not be the best use of anybody's time.

19          MR. FRELINGHUYSEN:  Absolutely.  Thank you, Your

20    Honor.

21          THE COURT:  All right.  Thank you very much.

22          All right, next up?

23          MS. VANLARE:  Next up, Your Honor, I would like to

24    address the remaining objections which are unresolved as of

25    today.  That's first the objection filed by SOF.  SOF is one

Page 51

```
 1      of the Gemini lenders.  And then the McDermott Group.

 2              So, taking those in order, the objection filed by

 3      SOF relating to the disclosure statement, I believe we've

 4      made a lot of progress, but unfortunately, we are not able

 5      to fully resolve it.

 6              I would just like to say a few words about what we

 7      do disclose regarding recoveries for general unsecured

 8      creditors and for Gemini lenders and then I'll let Mr. Drew

 9      make his argument regarding --

10              THE COURT:  Can we back up for one second?  I

11      don't know if -- you'll tell me whether this is a useful way

12      to think about it or not.  But certainly, what I think we

13      did at the last hearing is you had a chart.  And so, for

14      each objection, you had identified the individual issues

15      that were raised.  And so, for SOF International and the

16      objection at 874, I think there were one, two, three, four,

17      five, six, seven such entries.  And so, does it make sense

18      to use that as a way to go forward, or not so much?

19              MS. VANLARE:  I wasn't planning to go through that

20      because we have added additional disclosures in response to

21      Mr. Drew's comments and others.  And so, I was just going to

22      lay out what we --

23              THE COURT:  What you think is left.

24              MS. VANLARE:  Exactly.  And then let him tell Your

25      Honor as to what he believes is still missing.  And then I
```

Page 52

1   of course will absolutely respond as to why we think what we

2   have is more than adequate.

3          So, in terms of what the disclosure statement

4   contains both in the body of the disclosure statement as

5   well as the exhibits, obviously as is typical, we have

6   recovery percentages for various classes of creditors.

7   However, we went beyond that given that we are dealing with

8   digital assets.  Those assets fluctuate in value.  And so,

9   we filed an additional exhibit to the disclosure statement

10  which has the -- which we've entitled Illustrative Range of

11  Recoveries.  That exhibit seeks to convey to creditors the

12  impact of the fluctuations and digital asset prices on

13  recovery percentages.

14         Now with respect to the Gemini claims in

15  particular, of course Your Honor is aware there is a

16  substantial litigation, the Gemini adversary proceeding

17  that's underway.  That too will affect recoveries for Gemini

18  lenders.  There are lots of permutations, lots of

19  possibilities.  There is a first tranche, there is a second

20  tranche of GBTC.  There are multiple arguments made with

21  respect to the first tranche as well as with respect to the

22  second tranche.  There is also the -- you know, prices can

23  continue to fluctuate.

24         So, what we've tried to do is lay out recovery

25  ranges so that people have an idea of what the recovery

Page 53

1   percentages may be.  We've also added additional language in

2   the footnotes in the exhibit that basically say if Gemini

3   were to prevail with respect to one of the arguments, the

4   impact on recoveries for unsecured creditors could decrease

5   by as much as 10 percent.  So, we tried to add additional

6   disclosures on those point.  We have extensive discussion of

7   the Gemini adversary proceeding in the body of the

8   disclosure statement.  We've laid out the arguments they've

9   made that we've responded to.  They've submitted a

10  statement, they being Gemini.  So, we have a lot of

11  disclosures in prose in the body of the disclosure statement

12  regarding the adversary proceeding and some of the

13  arguments.

14          We've also added additional language specifically

15  in response to SOF with respect to, again, what happens if

16  Gemini were to prevail with respect to the GBTC shares and

17  what happens with the appreciation in the value of the coin.

18          We really think that we've gone above and beyond

19  in terms of providing adequate disclosure on these issues.

20  We think that doing -- and really our approach through this

21  process, Your Honor, which I think is probably the reason

22  we've been able to resolve virtually every single objection,

23  is that whenever faced with a request to include more

24  disclosure, we've opted to include more disclosure.  And

25  really the only times we don't is if we think it's actually

Page 54

1    misleading.  And this is -- you know, we think we've added

2    as much disclosure as we possibly could here.  We think that

3    some of the things that they've requested we added, but

4    others we really do think would not be -- not only not

5    required but would be confusing and misleading.

6           So, with that, I am sure Mr. Drew would like to

7    describe what he thinks is missing, and then I would like to

8    respond.

9           THE COURT:  All right.  Thank you.  Mr. Drew?

10          MR. DREW:  Thank you, Your Honor.  That's all

11   accurate, what Counsel just described.  And I appreciate the

12   changes that have been made.  We filed the objection on

13   November 1st, and there have been numerous changes since

14   then.  The disclosures are much more robust than they were

15   before, so that's all appreciated.

16          The one thing that I am asking for is a table --

17   and I'll back up.  There's a large amount narrative and

18   prose about the Gemini litigation and treatment of the

19   collateral and the values of it.  I am coming at this from

20   the perspective of trying to put myself in the shoes of the

21   200,000-plus Gemini creditors that are out there that are --

22   many of them are relatively small and may not have the time

23   or inclination to study this document.

24          And what I think is appropriate is to include a

25   table that shows the recoveries that includes both the

Page 55

1    efficiency claim that is coming from the Debtor plus the

2    collateral that is coming from Gemini, those two amounts

3    totaled together in different scenarios that are possible.

4    You know, plausible based on the litigation positions.

5            So, for example, what I believe is the -- okay, I

6    don't know the merits of it.  But a plausible scenario is

7    that the foreclosure on Tranche One was proper.  And in that

8    case, the GBTC shares that are currently held by Gemini,

9    which are currently valued at over $900 million would be I

10   believe distributed for the benefit of Gemini Earn

11   creditors.  Those creditors would then have a deficiency

12   claim based on a value of the collateral as of the petition

13   date, though there would be a percentage distribution that

14   deficiency claim, the two numbers would be added together to

15   reach a total recovery.  Collateral value plus deficiency

16   claim recovery.

17           That number in that scenario is well north of a

18   hundred cents.  Okay?  That's one scenario.  And there are

19   other scenarios.  And I appreciate some of this is

20   complicated to express and different possibilities.  But I

21   just think it's worthwhile for the Debtor's professionals

22   and their financial advisors to lay out what does the plan

23   mean based on the known values that we know in the different

24   scenarios.  It's not that -- you know, four or five

25   different scenarios.

1          THE COURT:  Are you talking about adding things to

2     the range of recoveries or are you talking about something

3     different?

4          MR. DREW:  So, what I am proposing is a standalone

5     schedule that addresses Gemini Earn creditors specifically.

6     And it would have columns --

7          THE COURT:  Well, so let me back up.  Counsel,

8     would you remind me where I can find the range of -- like

9     the illustrative range of recoveries just so I'm looking at

10    the right thing?

11         MS. VANLARE:  Your Honor, I believe it's Exhibit E

12    to the disclosure statement.

13         THE COURT:  I have a number of flags, but that

14    flag appears to have fallen off, so I'm not -- I flagged it

15    for this reason.

16         MS. VANLARE:  Give us a minute.  We'll try to get

17    you a page number.

18         THE COURT:  All right.  So, if I'm looking at the

19    document that has 312 total pages, what page it might be?

20    Or I can use the number at the bottom or the top.

21         MS. VANLARE:  Try Page 287, Your Honor.  I believe

22    that should take you to Exhibit E.

23         THE COURT:  All right.  Thank you.  All right.

24    Right you are.  Okay, great.

25         Mr. Drew, just give me a second to just look at

Page 57

1    this in the context of your comment.  Because one of the

2    things that I'm always concerned about is in adding things,

3    you begin to add things and then people really don't know

4    what things to look at.  And I think the point of the range

5    of recoveries is to give people some sense of what they may

6    be facing.  So, I will say I'm more inclined to add

7    something to that than I am to create something new unless

8    somebody says I don't understand if the range of recovery

9    says one thing and your table says something else what I'm

10   supposed to glean from all this.  So, that's -- sometimes

11   more is nor more I guess is one way of saying it.

12            So, I do see in the context of that there is an

13   illustrative range of recoveries.  And there are footnotes.

14   And then I do see that there are after that various

15   response, one by DGC and one by Gemini, that lay out views

16   about some of the issues that you're talking about in the

17   sense of various views.

18            So, is there a way to incorporate your concerns in

19   the context of existing documents rather than create another

20   document which might be at war with some of these?

21            MR. DREW:  Well, Your Honor, what I think this

22   might be illustrating is that this document that you just

23   pointed us to is confusing.  This document I believe is only

24   talking about the deficiency claim or recovery on whatever

25   deficiency claim these lenders would have against the

Page 58

1    debtor.  And that's got a range in different --

2            THE COURT:  Well, I'm taking it at face value.  I

3    think if some creditor looks at it, they'll say illustrative

4    range of recoveries.  I don't think they will view it as so

5    limited.  So, it doesn't say illustrative range of recovery

6    for deficiency claims.  So, again, my thought is I would

7    rather have one document.  If it needs tweaks for purposes

8    of completeness and/or accuracy, I'm fine with that.  I just

9    am loathe to have competing documents that tell a different

10   narrative, even if it's a numerical one, that just may be

11   more confusing.

12           So, Ms. VanLare, any thoughts?

13           MS. VANLARE:  Your Honor, perhaps I can clarify

14   what I believe that Mr. Drew is asking and then I can

15   explain why it is we think it's inappropriate to include.

16           So, as I mentioned, there are lots of arguments

17   that are part of the Gemini adversary proceeding.  One of

18   them has to do with the foreclosure, the alleged foreclosure

19   on the first tranche.  Of course, we dispute that there

20   should have been a foreclosure.  There is a dispute as well

21   with respect to if the court were to find that the

22   foreclosure was appropriate, the -- if the Court were to

23   find that the foreclosure were appropriate, there would then

24   be a valuation of the GBTC shares.  That valuation would

25   then be as of the date of the foreclosure.  As a result,

Page 59

1   there would be a deficiency claim that Mr. Drew has

2   referenced.

3          Now, if the foreclosure -- if the Court were to

4   find the foreclosure had not occurred, the value of the GBTC

5   shares, which of course has appreciated, would then be

6   measured as of today's date.  So, that has an impact on the

7   deficiency claim.  Again, that's only one scenario within a

8   complicated set of potential outcomes of the litigation and

9   of the issues.

10          THE COURT:  So, my thought is you've got an

11   illustrative range of recoveries.  You also have a Gemini

12   response that on the first page talks about challenging the

13   validity of the foreclosure and talking about the different

14   tranches.  And so, my thought is that I'm concerned with

15   creating a separate document.  But if there's something that

16   can provide additional information as to what a creditor

17   might recover or not recover, whether it's adding a note to

18   the illustrative range of recoveries or an agreed-upon

19   addition to the Gemini response, which I know is responding

20   to something else.  So, I realize that I'm sort of

21   identifying the problem and -- I'm probably doing some

22   violence to the architecture of all of this.  But I'm open

23   to suggestions.

24          MS. VANLARE:  Your Honor, we tried presenting

25   tables, we presented words.  We included words.  The problem

Page 60

1      is that Mr. Drew would like us to include what he calls

2      recoveries that are really not recoveries under the plan.

3      That's the issue we have.  Basically what Mr. --

4              THE COURT:  So, I can help on that.  I don't want

5      to get stuck in nomenclature because, frankly, I don't think

6      that folks who are creditors are going to be so inclined to

7      think of it that way.  I think we could stick in either a

8      note or somewhere else in the existing documents that makes

9      clear that there is a range of monies that may become

10     available to these particular creditors under these

11     circumstances depending on the outcome of the litigation.

12     Maybe it references the Genesis -- I'm sorry, not the

13     Genesis, the Gemini response.  But I don't want to add

14     another table.  I would rather have one stop shopping

15     because there's so much information in this that there's a

16     real -- again, I think we're on the same page as to that,

17     that more information might be confusing.

18              MS. VANLARE:  So, Your Honor, again, we've added

19     language to the disclosure statement.  I think the issue is

20     that Mr. Drew would like us to contemplate as to what

21     recoveries may be in the event that the foreclosure value is

22     fixed as of the foreclosure date.  There is then a

23     deficiency claim.

24              THE COURT:  Right.

25              MS. VANLARE:  We provide recoveries as to the

Page 61

1    deficiency claim.  What we don't do is say, okay, well,

2    Gemini will then be holding GBTC shares that are worth

3    substantially more that we think that they should then also

4    distribute to the Gemini lenders.  We don't know how or when

5    they may distribute them.  That may be an additional source

6    of value, but it is not a recovery under this plan.  So, we

7    think --

8              THE COURT:  But in the interest of full

9    disclosure, since this is a confirm a liquidation plan and

10   then sue, I do think it is consistent with the notion of

11   educating creditors to at least let them know how the

12   wrinkles might affect them.  But again, I think there's a

13   danger in doing it in a separate -- we already have several

14   narratives in here in several places.  So, I would encourage

15   -- and I'm happy to take a break and we can convene as early

16   as tomorrow again to talk about it.  But I would think that

17   there's some additional language -- and we can stay away

18   from language that forces someone to say whether it's a

19   recovery under the plan or it's not a recovery under the

20   plan.  Saying there's litigation, litigation could operate

21   several different ways.  If it goes this way, this is what

22   the impact will be.  There will be additional money and

23   Gemini will have to decide what to do with it.  If it goes

24   another way, this is what it looks like.

25              MS. VANLARE:  Your Honor, we have that language.

Page 62

```
 1              THE COURT:  So, where is that?

 2              MS. VANLARE:  So, it's in the disclosure statement

 3    on Page -- I have it as Page 19.  Let me just check if

 4    that's accurate.  Page 18 of the disclosure statement, which

 5    is Page 33 of the file.

 6              THE COURT:  Give me a minute to get there.

 7              MS. VANLARE:  Sure.

 8              THE COURT:  All right.

 9              MS. VANLARE:  So, Your Honor, this is a section

10    that talks at length about the Gemini Lender claims.  And

11    again, in addition to all of the disclosures, we talk about,

12    you know, this is kind of in the form of a Q&A.  How will

13    resolution of disputed issues with Gemini affect

14    distributions on such claims?  And then we say -- and this

15    is kind of middle of the first paragraph.  This is language

16    we added specifically in response to Mr. Drew.  And I'll

17    just read it.

18              "It's the Debtor's position that in the event

19    Gemini were to prevail in the Gemini adversary proceeding

20    with respect to the Gemini GBTC shares, any appreciation in

21    the value of the Gemini GBTC shares from the date of the

22    purported foreclosure until the date of any monetization

23    transaction of such Gemini GBTC shares should accrue to the

24    benefit of Gemini lenders.

25              "In this scenario, distributions to Gemini lenders
```

Page 63

1    from the Debtor's estates on the unsecured portion of their

2    claims would be equivalent to distributions received by

3    other similarly situated unsecured creditors.  However, in

4    this scenario, Gemini lenders would also receive from the

5    Gemini distribution agent their pro rata share of the

6    appreciation in value, if any, of the Gemini GBTC shares.

7    We've done this.  We've described what would happen in this

8    scenario.

9              THE COURT:  So, let me interrupt you for a second.

10             MS. VANLARE:  Of course.

11             THE COURT:  So, Mr. Drew, is your complaint that

12   there is no numbers associated with this narrative?

13             MR. DREW:  Your Honor, respectfully, I do

14   appreciate the narrative.  It was added at my request, and I

15   sincerely appreciate it.  What I'm saying is that the vast

16   majority of people won't find and understand this language.

17             THE COURT:  But the longer we make this, the

18   harder it will be for anybody to find the language that

19   applies in the first place.  So, every judge I know on the

20   court has a debate.  At what point do these things become so

21   long that we don't ask somebody to bomb it back to the stone

22   age and write a 25-page pamphlet?  And we don't do that be

23   we recognize there are so many nuances and complications and

24   resolutions that are baked in here that we could do a lot of

25   damage to things.

Page 64

1           But as it gets longer, it gets harder to find what

2     applies to you.  So, as I said, I much prefer to add to

3     existing narrative than to create a separate document.  I

4     don't -- given that language and the table, I don't see --

5     and the Gemini response, all of which -- that also

6     references the foreclosure issue.

7           So, I don't see a reason that it would be

8     beneficial to create another document out of whole cloth.

9     So, I am open to if you wanted to monetize some of these

10    thins if there are -- putting aside who wins and who loses,

11    if things go this way, this is how much money is at stake,

12    that could be added to this narrative, or there could be a

13    footnote to the range of recoveries that the recoveries

14    contemplated are separate and apart from the recoveries that

15    might otherwise be obtained by these creditors in litigation

16    as described and blah, blah, blah.  And that implicates so

17    much money based on these issues.

18          So, I think there are several ways to do it, but I

19    don't want to create a separate document.  It was hard

20    enough to find this.  I read this, what Ms. VanLare

21    mentioned, but I'll be damned if you put a gun to my head if

22    I could have found it as quickly as she did.  So, that's the

23    challenge.  And I don't think we're doing creditors any

24    favors by making it longer and then trying to figure out how

25    to harmonize some of these things.

Page 65

1          MR. DREW:  Understood, Your Honor.  And I don't

2    want to belabor this.  I think your comment earlier was

3    spot-on that creditors are not likely going to view it as

4    recovery from the debtor as distinct from recovery from the

5    collateral.  They only care what they're getting.  I think

6    it can be done as a part of the table that's there.

7          THE COURT:  Yes.  So, I think you could put in a

8    note in the table.  And if you want to also make a cross-

9    reference to the description that's in this Section N on

10   Page 18 for a more full description of the foreclosure

11   issues and how they might affect your recovery, please see.

12   I'll leave it to you all to sort of wordsmith it and figure

13   out how you want to do it.

14          I understand that as I first heard your comment,

15   that there was an importance in putting some numbers to the

16   narrative.  I think you can do that, and I think you can put

17   in sort of a placeholder and make a cross-reference, which

18   means we won't need to make this a page longer or two pages

19   longer.

20          MS. VANLARE:  Your Honor, I will just note.  We've

21   asked for numbers; we've asked for prose.  We have not

22   received it.  We've really tried to go back --

23          THE COURT:  I get it.  I'm making a ruling.  So,

24   we're good.  I understand he's looking out for his clients,

25   and I understand that you are concerned about overwhelming

Page 66

1    people with paper.  I think we've long passed and cross the

2    Rubicon on that.  So, I don't want to go any further across

3    the Rubicon.  And so, I think we can add something to the

4    table, the illustrative range of recoveries in a note.  It

5    sounds like you would be amenable to that.

6         MS. VANLARE:  Your Honor, the issue is I don't

7    know what it is we're adding.  That's my fundamental -- I

8    don't know what is being --

9         THE COURT:  So, here is what I understand based on

10   the statement -- and you can straighten me out if I'm wrong

11   -- is that what Mr. Drew talked about was specific numbers

12   that might become available depending on the outcome of the

13   litigation and the different ways of measuring who has what

14   rights and what impact that would have on these folks.  And

15   I think we can -- we do need -- if Mr. Drew wants numbers,

16   we need numbers.  I think the description of it narratively

17   is already on Page 18.  So, I get it.  But to the extent he

18   is concerned that somebody would look at the illustrative

19   range of recoveries and feel like there's something missing

20   there, you could put it in a note, a cross-reference.  But I

21   am largely agreeing, Ms. VanLare, I don't want to make it

22   longer.  I do not want to add a separate document.

23        So, I'm going to overrule the objection to the

24   extent that it seeks that.  I think there can be a little

25   tweaking at the margins.  And, Mr. Drew, I urge you to get

Page 67

1    some modest change, a sentence or two, a note or two to add

2    to, whether it's the illustrative range of recoveries or a

3    note on Page 18, and I think we should be good to go.

4              MR. DREW:  Thank you, Your Honor.

5              THE COURT:  All right.  So, what I would expect is

6    you can get that to Ms. VanLare.  And then if some reason

7    there is a dispute about it, you will let me know.  But

8    again, this is really just conveying I think what you

9    already described and what Mr. Drew described without making

10   the document any longer.

11             MS. VANLARE:  We're happy to consider again.

12   We've been asking.  If it's a simple sentence, we're happy

13   to add it so long as it's accurate.

14             THE COURT:  It has to be accurate.  And again, it

15   can stay away from anything that might be a third rail,

16   whether it's a recovery under the plan, we don't need to say

17   that.  Additional money may become available, you know, I'm

18   sure you can wordsmith it in a way that we don't need to

19   characterize it.  It will be as a result of the litigation

20   outcome.  So, I'm sure you can say it more eloquently than I

21   have.

22             MS. VANLARE:  Okay.

23             THE COURT:  All right.  Mr. Drew, anything else?

24             MR. DREW:  No, Your Honor.  Thank you.

25             THE COURT:  All right.  Thank you very much.  So,

Page 68

1   with that, I will -- I have made a ruling on the remaining

2   issue as to the SOF objection and consider that resolved.

3          And then there was one.

4          MS. VANLARE:  Yes, Your Honor.  So, that leaves

5   the McDermott Group objection.  I think we were trying to --

6   it was a limited objection obviously filed quite late.  We

7   were trying to work with the McDermott Group to try to add

8   some limited language.  We weren't able to get there by the

9   hearing today.  I think we would be amenable to including a

10  sentence or two that basically notes that there was a

11  McDermott Group holding X number of BTC, Y number of ETH

12  shares that we received from Mr. Azman --

13         THE COURT:  Well, I don't know if you need to make

14  it the McDermott Group.  The idea is that there's some view

15  that the folks who are dollar crypto claims have different

16  rights and including, but not limited to -- and frankly, I

17  don't -- at first blush it didn't immediately pop to my mind

18  how this and the safe harbors will combine to result in a

19  particular result, but we'll cross that bridge when we come

20  to it.  But I think the idea is you can invoke whatever the

21  issues are, Safe Harbor contracts of 562 and the date of

22  valuing the claims.

23         And so, do you have a thought where that would go?

24         MS. VANLARE:  I don't have a specific thought on

25  the location.  I think we're fine with that.  I think where

Page 69

1   we do have an issue is getting into, well, if this happened,

2   what's the impact on the plan, what's the impact on

3   creditors.  Because then we get into a back-and-forth as to

4   the merits of the position.  So, I think if we limit it to

5   what Your Honor just described, that would be fine with us

6   subject to obviously the Committee and the Ad Hoc Group and

7   others.  But as far as placement of that...

8           THE COURT:  Well, I think we can say that the

9   legal issue identified here in terms of the date of valuing

10  the claims will affect recovery and that that's a legal

11  issue to be determined at -- again, I'm sure there is a more

12  artful way to say it.  And I think I just stepped on one of

13  those third rails.  So, I will stay away from it.

14          I think there's a way to identify the legal issue

15  and they say it will impact these particular creditors.

16          So, Mr. Shore, do you have a particular -- you

17  want to bail me out with some particularly precise language?

18          MR. SHORE:  Sorry.  I would actually like to hear

19  the objection and then I'll respond.  I mean, if there's

20  anything else that counsel wants to add, and then I can

21  respond to it.

22          THE COURT:  All right.  Mr. Azman, you have the

23  floor.

24          MR. AZMAN:  Thank you.  Good afternoon again.

25  It's Darren Azman.  I've got a sore throat, so I'm going to

Page 70

1    take a lung break real quick.

2         So, Your Honor, again, we represent a group of

3    crypto holders.  Not fiat, not stablecoin.  The Court knows

4    what our previewed plan objection is, so I'm not going to

5    cover that again.  We are seeking to have a different

6    valuation for crypto creditors in the case.

7         The reason we filed the objection to the

8    disclosure statement is because this issue has the ability

9    to impact creditor recoveries, in particular creditor

10   recoveries by a magnitude of hundreds of millions of dollars

11   --

12        THE COURT:  What I need from you is the sentence

13   or two that you want to add.  So, that's what I need from

14   you.

15        MR. AZMAN:  Sure.  It's actually in our objection.

16   It's very short and sweet.  The problem that we had in

17   conversations before the hearing, I think actually the

18   Debtors and us are aligned.  We had received some initial

19   language from them that we actually signed off on with one

20   word change.  And quite frankly, if they were okay with

21   that, we would be good.  It sounds like there are other

22   parties, whether it's the Ad Hoc Group or the Committee,

23   that basically added another paragraph getting into the

24   merits of why this is the wrong argument, why we're going to

25   lose, what all of the ramifications are of this.  And when

Page 71

1    you get into the back and forth, well, we're going to want

2    to add our say in our report.

3            THE COURT:  So, here's what I would suggest then.

4    And you're right, I forgot you have language in Paragraph 9

5    on Page 6 of your pleading at Docket 982.  I would think

6    that you say you intend to object to confirmation on this

7    basis.  And then I think if there are parties that want to

8    say they have a different view, they have a different view.

9    And then resolution of that dispute will impact -- will

10   impact I guess the value of the claims.  I'm sure there is

11   an artful way to say that.  But I agree we should not be

12   litigating the objection here.  And so, at the same time, by

13   identifying yourself particularly and saying that you have

14   this view, then people will feel like they need to respond

15   and say they have a different view.  So, I think at this

16   point we can probably say you have one view, somebody else

17   has another view, and it will get resolved and it will have

18   an impact.

19           Certainly, anybody who is motivated will know that

20   you are the party that has made this argument and that the

21   other parties who have identified themselves as having a

22   different view, and if people want more information about

23   the nuances of all that, they know where to find you.

24           So, Mr. Azman, is that the kind of thing that

25   works for you?

1          MR. AZMAN:  Yes, it is.  And we'll basically look

2     at the language that they want to put in there.  We'll put

3     our position in, they'll put their position in and --

4          THE COURT:  No, we're not doing that.  This is to

5     -- that's what today is for.  So, we're going to deal with

6     that shortly.  I'll make myself available after I made a

7     ruling and people are going to get language on it.  But

8     we're not -- this isn't an open issue.

9          So, Mr. Shore, let me hear from you.  Let me back

10    up.  It is an open issue, but it won't be by the time we're

11    done.  Because then I'm not doing my job.

12         MR. SHORE:  Thank you, Your Honor.  Chris Shore

13    from White & Case on behalf of the Official Committee.  I

14    would like first to maybe frame the issue.  Second, to

15    correct the record, and third, to address this issue of what

16    should and should not be disclosed.

17         First, framing the issue.  Because it's obvious it

18    is a late pleading coming in and it is written largely to

19    crypto creditors.  And so, I think we need to frame the

20    issue because some people are more sophisticated than

21    others.

22         If you think about a general unsecured creditor,

23    the one that the Committee represents, they had a master

24    loan agreement with the Debtor.  As of the petition date

25    when the clock stopped, some had cash on deposit, some had

Page 73

1    bitcoin on deposit, some had Ethereum on deposit.

2            And one way to look at the world without talking

3    about what the appropriate way is, one way to look at the

4    world is when the clock stops, everything gets converted to

5    U.S. Dollars and that creates a claims pool.  And that

6    claims pool gets fixed on the petition date.  And then

7    people can understand, okay, here's the claims pool, here

8    are the asset values, here are my recoveries.

9            Another way to view the world, which the committee

10   has heard over time, is that the claims of different holders

11   depending on what they had on deposit will float over time.

12   So, as Bitcoin goes up, up, up, up, the claim goes up, up,

13   up, up.  And conversely if Bitcoin went down to $10, people

14   would argue that in fact to satisfy a 10-bitcoin claim, all

15   the Debtors have to do is go out with $100, buy the claims,

16   and get rid of them that way.

17           There is potentially a huge swing in recoveries.

18   That's the issue that we're talking about here.  And when we

19   talk about distinctions or disagreements between dollar

20   holders and crypto holders, that's the issue when we talk

21   about valuation data.  An ironically, the objection that's

22   being made today is creditors need to be told in order to

23   determine what their recoveries are that we can't determine

24   what your recoveries are until we know what the prices are

25   of these various coins either at the effective date or the

Page 74

1    date that the master loan agreement is either rejected or

2    terminated.  I'll come to that in a second.  That's the

3    issue.

4              I want to correct the record because it starts out

5    in the first sentence that crypto holders have been

6    marginalized in the case.  And it goes on to describe that

7    among others, the committee has not heard those voices.

8    That is not an accurate representation of what happened.

9    And we can forgive counsel, who just joined on Wednesday

10   before Thanksgiving.

11             But the Committee has been out from the beginning

12   of the case addressing this issue, listening to concerns of

13   creditors, hearing out individual creditors, speaking to

14   them patiently about the issue and describing the issue,

15   talking to their counsel, reviewing memoranda, and going

16   through these issues.  There are a myriad of issues that

17   come out of how we view the pricing, both economic, legal,

18   regulatory, all sorts of issues.

19             There was a proposal months ago.  One way to do it

20   is just to say, you know what, let's all vote on the plan.

21   And if the Court says it's petition date pricing, everybody

22   is in on it.  And if the Court says it's floating pricing,

23   we're all in on it.  And creditors were like, no, we don't

24   want that.  The Committee heard creditors holding billions

25   of dollars of claim, that they would rather try to resolve

1    it.

2            So, what has happened over the last six months is

3    an open discussion between the parties on various sides of

4    the debate as to how that issue should get resolved.  What

5    you heard today is creditors holding billions of dollars of

6    bitcoin and Ethereum have said we would like to settle it.

7    That settlement comes in the form of the plan, the plan

8    which has a provision that says we're going to calculate

9    your claim as of the petition date, but also has

10   distribution principles as to how that plumbing is going to

11   work.  So, that's what's here today, is a plan going out

12   which settles the issue of petition date pricing, floating

13   claims.  It's being proposed, it's embodied in the plan, it

14   will be subject to Your Honor's review and the 9019

15   standards that will go with that.

16           We have a group who participated in those

17   negotiations largely who has come to a different view and

18   wants to press the issue in front of the Court.  We don't

19   have to address that today, but that's the issue that is

20   framed.

21           Now, when we talk about the specific disclosures

22   and why you said the third rail, if you look at Paragraph 9,

23   I don't have a problem with the first sentence.  I don't

24   have a problem with the second sentence.

25           The third sentence, "Currently the plan values

Page 76

1    such claims as of the petition date," is incomplete.

2    Because it values the claims as of the petition date, but

3    then resolve the issue with respect to distribution

4    principles.

5           The next sentence, "If this happens," I call this

6    the easy button disclosure.  It's all going to be simple.

7    If the Court rules in our favor, then this happens.  As

8    we've all learned in this case, having been here for months

9    now, there is no easy button.  When I saw the drafting going

10   on, it's almost impossible to draft the permutations.  The

11   first thing is if the court rules in their favor, then the

12   plan isn't confirmed.

13          Now, one thing that could happen is we all go back

14   to the drawing board.  The other thing that happens is the

15   court has to determine whether the Debtors try to modify the

16   provision, is it a material modification.  If it's a

17   material modification, do we have to resolicit?  If it's not

18   a material modification -- and then we go down the next

19   thing.  If counsel convinces you, it's not a material

20   modification, which seems to be the opposite of the point

21   that's being made, then we have the sequalae to it.

22   Recognize that the argument that's being made is the master

23   loan agreement is either a forward contract, commodity

24   contract, securities contract, or general unsecured loan

25   depending upon what the currency was or not currency was on

Page 77

1    deposit at the time.  If it turns out that the -- we have to

2    start making all the disclosures of why people want to

3    settle this issue.

4           So, for example, if the Debtors -- if the ruling

5    was this is a forward's contract and the Debtor rejected it,

6    that would convert the claims at the -- maybe -- at the

7    current bitcoin price, but it would also be a prepetition

8    dollar claim.  A prepetition dollar claim does not receive

9    an in-kind distribution.  They get paid in dollars.

10          And we work our way down through all the

11   permutations.  The disclosures aren't happening.  There is -

12   - you said it last time, and I'm going to repeat it.  There

13   is one plan on file right now.  It is one that settles the

14   issue.  People will have their right to come in and say that

15   the settlement is not fair, that they have a 10 percent

16   chance of success on the issue of whether the claim should

17   be dollarized, or it should be a floating claim.  And they

18   have their rights to pursue those.  But what's in front of

19   the Court right now is a plan that resolves those issues.

20          So, we're not trying to step on any third rails.

21   We're not trying to disclose or tip the scales in any way.

22   The creditors have said we want to resolve this issue, $2.1

23   billion of creditors have said they want to resolve this

24   issue.  We have 150 who said they don't.  But it's not going

25   to play out in the context of the disclosure statement.

Page 78

1          So, I think the first two sentences are fine.  And

2     then I think the next sentence should be, and this dispute

3     is proposed to be settled under the plan.  See section

4     whatever-it-is for the settlement, for a description of the

5     settlement.

6          THE COURT:  All right.  Mr. Azman, I will give you

7     the last word on this.

8          MR. AZMAN:  Well, I didn't come prepared for my

9     speech.  I didn't think we were addressing the merits today.

10    But I think that Committee counsel has --

11         THE COURT:  Well, in fairness -- well, I thought

12    you might say something like that.  But in fairness, you

13    have to recognize that it is important to have an accurate

14    record and recitation of how we got here and that I

15    recognize you just got here, but again, I have to make sure

16    -- I'm happy to include something, right?  That's what today

17    is about.  But I do have to make sure that folks have a full

18    understanding of the variety of things that have happened

19    and the history that's led us to where we are and the

20    complexity of that history.  So, frankly, without Mr.

21    Shore's earlier part of the speech, his payoff about the

22    third sentence would not have made a lot of sense

23    necessarily to people listening in about why the statement

24    about the plan values of claims as of the petition date,

25    that being incomplete.

1        So, here's what I would propose.  The first two

2   sentences are fine.  I think the third sentence should say

3   something like the plan embodies a settlement between

4   various parties that will be identified that values such

5   claims as of the petition date resolving the recoveries

6   using essentially agreed-upon distribution mechanism.  And

7   then I think the next sentence would say something like the

8   crypto creditors' group objection if sustained would impact

9   the value of their claims, but that the precise impact is

10  difficult to determine without further litigation.  And so,

11  -- but you could probably put in something that says that --

12  I mean, it's clear that if you value it at a different date,

13  that in your view that -- and so maybe you just say it's

14  difficult to predict, but your group contends that those

15  claims will likely be entitled to a greater recovery and

16  take it from there.

17        MR. SHORE:  Yea, I would -- I think there does

18  need to be a little bit in the middle that says if this

19  objection is sustained, and the Court does not require re-

20  solicitation of a new plan, then -- right?  Because that's

21  why I rose before.  I don't think you have recoveries under

22  this plan if the plan is not confirmed.  We could talk about

23  what your recoveries might be under some other plan, but

24  that's not this disclosure statement.

25        THE COURT:  Well, I think that if there is a

Page 80

1    sentence that says the impact on the claims is -- it will

2    impact the value of the claims in a variety of ways that

3    can't be predicted, that includes the re-solicitation.  And

4    maybe there's a sentence after that that says this crypto

5    creditors' group thinks they would be higher, but other

6    parties don't agree with that assessment.

7            Because I agree that there's a lot of things that

8    would have to happen in the context of this.  And really,

9    we're not -- the prediction business is very dangerous.  So,

10   Mr. Rosen?

11           MR. ROSEN:  Yes, Your Honor.  Brian Rosen,

12   Proskauer Rose, on behalf of the Ad Hoc Group.

13           Your Honor, I'm fine with that.  But I realize all

14   of the things that could unfold.  And the one that is most

15   important to me and should be most important to every crypto

16   holder -- and Mr. Shore brought this up about payments and

17   dollars, is the need to include something like including,

18   without limitation, the imposition of significant tax

19   payments which shall become due as a result of that they are

20   asking for.  I mean, those are not the exact words.  But

21   that piece to me is critically important for crypto

22   creditors to know that they're going to get hit with a

23   significant tax liability that must be paid even before they

24   receive ultimate distributions pursuant to a plan.  Because

25   it becomes due immediately upon that event occurring in the

1    year it becomes -- in the year that it actually occurs.

2            If distributions are two or three years down the

3    road, that's irrelevant.  They have to pay that immediately

4    without distributions that they have received or won't

5    receive.  It's significant.

6            THE COURT:  So, Mr. Azman, what's your view about

7    that issue?

8            MR. AZMAN:  Well, I haven't really had any chance

9    to express any view yet.  So, maybe we can back up a few

10   steps.

11           THE COURT:  Well, Mr. Azman, I have not labored on

12   the point that you have arrived exceedingly late to the

13   party after we have already had a deadline long since passed

14   for objections to the disclosure statement after, in fact,

15   we had a lengthy disclosure statement hearing.  And then we

16   had today to finish up on the already filed but not yet

17   resolved disclosure statement objections, of which your

18   clients were not one of them.  So, you can pardon me for

19   giving you a little bit of a shorter leash.  That's the way

20   it goes.

21           So, the alternative is to not be heard at all.

22   And frankly, there's plenty of authority that permits me to

23   completely disregard your objection.

24           Now, the Debtors haven't asked me to do that.  I

25   think they've made the right call in doing so.  Because I

Page 82

1    think that's not the right result.  But we all know the

2    rules of the road.  When you file something like this out of

3    time at this posture, you are sledding uphill.

4              And so, with that said, I would keep those

5    comments to yourself.

6              So, what's your view about the tax implications?

7              MR. AZMAN:  We disagree with their view on the tax

8    implications.  And a number of the things that the Ad Hoc

9    Group and the Committee have asked us to include, which is

10   the language that you don't have in front of you.  We went

11   back and forth before the hearing.  There are a number of

12   things that are scare tactics.  They are designed to scare

13   certain creditors into thinking that our position is not

14   only wrong, but if successful, will not actually result in a

15   gain for crypto creditors.  Your Honor, we have $2 million

16   of crypto creditors who have left the group that is pushing

17   for this and had been part of the discussions for a year and

18   disagree.  And so, that was the back and forth that I was --

19              THE COURT:  Well, I know.  But they also decided

20   to make that decision after we already started the

21   disclosure statement hearing earlier this month.  And there

22   are consequences to that.

23              MR. AZMAN:  Completely fair, Your Honor.

24              THE COURT:  So, again, I know, Mr. Azman, that's

25   not -- you're taking the case as you find it.  I know that's

Page 83

1     not the way you prefer to be.  I get it.

2               So, here's where I am.  I am at a bit of an

3     impasse.  Because what I'm hearing is a complicated

4     narrative from all sides, but everybody has a different

5     complicated narrative.  And I can't let this particular

6     narrative hijack the disclosure statement.

7               So, I am inclined to ask the Debtors, who at a

8     certain point are just monetizing the value that they have,

9     to write something that says one of the issues in connection

10    with the plan is when to value the claims.  And this is the

11    subject of ongoing litigation.  There would be various

12    winners and losers as a result of that.  The litigation is

13    complicated, and its impact on the plan process would be

14    complicated.  And so, then make a reference to the various

15    different parties' recitations of their rights and the

16    implications.  Because if we start putting this in the way -

17    - this is going to be the result, no, this isn't going to be

18    the result, it's going to be confusing as all get-out to

19    everybody who doesn't have a lawyer.  And that's a bad

20    thing.  And I think we can just reference parties are well

21    represented in the case.

22               And so, now I know there's some language already

23    of this ilk in the disclosure statement, so it may be that

24    you can massage this or add a few sentences or a word or

25    two, and maybe you add a reference to various pleadings that

Page 84

1  have been filed where everybody has their full-blown

2  opportunity.  But it's not -- I don't think it's wise and

3  it's a fool's errand I guess to try to encapsulate all those

4  different views and outcomes in a paragraph here, because it

5  won't be a paragraph.

6          MR. O'NEAL:  Your Honor, Sean O'Neal if I may.

7          I think what you've just outlined is a good

8  suggestion which the Debtors can handle.  I think we would

9  want to add to it that we are trying to resolve these

10 complicated issues through the distribution principles.

11 Because I really want people to know that that's what we're

12 doing here.

13         THE COURT:  That's fine.  And I do think that's

14 what, as I understand it, why I haven't seen the

15 distribution principles up until now, because it was the

16 source of an ongoing negotiation.  I know not everybody is

17 happy with the results of the negotiation, but that doesn't

18 mean that that negotiation didn't happen.

19         So, I would ask you then to find appropriate

20 references where there is a full-blown statement of various

21 parties' view about the litigation and how it impacts the

22 people that they represent, and we can put that in a

23 footnote, in a very long string cite, whatever it is.  And

24 then if you actually have a link, then people could find

25 those things and read them to their heart's content.

1          MR. O'NEAL:  This has not been litigated in this

2     case.  There's been no briefings on this case, so there's

3     nothing to point to.  I think what we will do is a very

4     high-level description of what -- as what you've just said.

5     Because if we start going into all the details and the

6     arguments and the counter arguments, of which they are many

7     and they are complicated, it will be for many, many, many

8     pages.

9          THE COURT:  So, let me ask.  There are certainly

10    adversary proceeding complaints that we could cite, but

11    those present one side of the story.  Is there a place to

12    cite to?

13         MR. O'NEAL:  There's actually nothing with respect

14    to this issue.

15         THE COURT:  No, there isn't?

16         MR. O'NEAL:  This issue --

17         THE COURT:  Oh yeah.  I'm sorry, you're right.

18    You're right.

19         MR. O'NEAL:  We have never brought this issue to

20    Your Honor in any pleading.  We have tried to settle it

21    through the distribution principles.

22         THE COURT:  So, what are you proposing then to do,

23    Mr. O'Neal?

24         MR. O'NEAL:  Really just what you've just said, I

25    think, which is as I heard it -- I kind of tried to write it

Page 86

1    down -- one of the issues in this case is how to value

2    claims, particularly digital asset claims.  This is the

3    subject of ongoing discussions and could be litigated at

4    confirmation.  Any decision on that could impact or would

5    impact the plan and potential recoveries.  And then say that

6    the distribution principles have been drafted among key

7    stakeholders to try to resolve this issue and to reach a

8    reasonable compromise and settlement which will be presented

9    to the Court as part of the 9019 request at confirmation.

10             THE COURT:  All right.  I would add one thing to

11   this that is I think Mr. Azman's point, which is to say that

12   when you say it will impact the valuation of the claims, you

13   could probably add another clause or sentence that says

14   based on the rise or fall of the prices of -- and list the

15   assets that are implicated.  And then that way I think the

16   average creditor will have a sense of what that means

17   without spelling out the exact numbers.  So, if this crypto

18   asset has gone up later in time, earlier in time, people

19   will get that.  And if it's gone down, they'll get that as

20   well.

21             MR. O'NEAL:  I will do that.  We will do that.

22             THE COURT:  So, Mr. Azman, does that answer the

23   mail in terms of getting your clients essentially the gist

24   of the impact?

25             MR. AZMAN:  I think so.  I just want to clarify.

Page 87

1    I think your concept on the last point is that we can have a

2    sentence in there that -- I'm not asking for specific

3    dollars.  I agree with you, that's too complicated.  But I

4    think conceptually what you're getting at is that if we have

5    our way, that will result in --

6              THE COURT:  Well, I don't know.  See, that's the

7    thing.  The result, we don't know.  But the idea is why are

8    people fighting about it.  They're fighting about it because

9    certain crypto assets went up and certain -- and that's why

10   they're fighting about it.  And people have a view as to how

11   they think that will work out.  Other people have a

12   different view that it may not work out that way.  So, I

13   want to avoid the description going too far where we get

14   into that disagreement.  So, when we say impact the value of

15   the claims and then we just essentially explain that various

16   crypto assets have risen in value since the petition date,

17   and then that sort of clues people in as to why it's an

18   important issue for them.

19             MR. AZMAN:  Sure.  Your Honor, may I have 30

20   seconds just to describe why we're late to the game?

21   Because I do think it's important.  I will bless than 30

22   seconds, please.

23             THE COURT:  If you do that, then you're going to

24   put me or somebody else in the court in a position to

25   respond to that.  Because it's certainly clear that various

Page 88

1    of your clients have been involved in the case.  And so, my

2    -- I don't really want to be in the position of parsing it.

3    So, Mr. Azman, you've gotten your point across.  You filed

4    objection.  You're making your point as to a disclosure

5    statement tissue.  I think we've addressed it.  I think we

6    may want to leave on a high note for lack of a more precise

7    legal term.

8            So, I understand there are reasons, and I

9    understand you sort of previewed them before that you're not

10   happy with the results of the discussions that led to the

11   distribution principles.  I get that potion.  And beyond

12   that, I think probably it's not worth getting into that

13   debate.

14           MR. AZMAN:  Thank you, Your Honor.  Appreciate

15   your patience.

16           MR. O'NEAL:  Your Honor, if I may respond to

17   something that was said though.  And I will be very brief.

18   But I found in this case that when people say things that

19   are not accurate, that we need to address them.  Because if

20   we do not, they will take a life of their own.

21           THE COURT:  Well, listen, that's why I tried to

22   say to people earlier, wherever you end up, you need to get

23   informed in an objective way.  Bankruptcy is complicated.

24   These are complicated issues.  I've been on the bench for 13

25   years.  I did the American Airlines case.  I've done a bunch

1    of other cases.  I know complicated when I see it.  These

2    are complicated issues.  So, anybody who has a

3    straightforward narrative about how all this is going to

4    work out one way or the other is misguided.  So, people need

5    to get informed, and it's hard stuff to figure out.  And

6    everything has collateral consequences.  So, whether they're

7    taxes, whether there's settlements, whether there's dealing

8    with the New York Attorney General, there's a lot of things.

9    So, I don't want to be the accuracy police, but I still say

10   in a prior opinion I did call out counsel who I thought was

11   in the business of throwing grenades that were nothing more

12   than speculation.  And it does a huge disservice to the

13   creditors and to everybody involved in the case.  So, let's

14   leave it there.

15              MR. O'NEAL:  Can I have 30 seconds just because --

16   no?  Okay.

17              THE COURT:  I would really ask you to just leave

18   it there.

19              MR. O'NEAL:  All right.  Okay.

20              THE COURT:  Just because at this point, we're in

21   response and --

22              MR. O'NEAL:  All right.  I got you.  I understand.

23              THE COURT:  So, if I say it, I'm allowed to make

24   myself be the last word.

25              MR. O'NEAL:  I understand.

Page 90

1              THE COURT:  So, I'm going to invoke my privilege

2      that way.

3              MR. O'NEAL:  Okay.  I tried.

4              THE COURT:  Fair enough.

5              MR. O'NEAL:  Thank you, Your Honor.  I think with

6      that, then we'll pull together that language.  And then I

7      think Ms. VanLare is going to walk through the schedule

8      because that's part of the solicitation procedures order.

9      And then we'll turn after that to the exclusivity extension.

10             THE COURT:  All right.

11             MS. VANLARE:  Your Honor, I'm happy to --

12             THE COURT:  Hold on one second.  I'm just trying

13     to figure out how much longer we're going to go in terms of

14     imposing on court personnel.  So, it's 4:30 now.  Do we

15     think we're likely to wrap up by 5:00 or sort of in the

16     neighborhood, I guess?

17             MS. VANLARE:  I would think so.  I think the only

18     items I'm aware of is we wanted to talk about the schedule,

19     which can be quick or not depending on...

20             THE COURT:  Hold on one second.  Just give me one

21     minute.  I just want to make sure we don't have to cut off

22     in the middle of an important discussion.

23             All right, I think we're good.  5:00 is an

24     expiration, but not a hard stop time.  So, I think we're

25     good.  Again, I don't want to cut off prematurely.  We don't

Page 91

1    want to -- we want to finish today.  So, with that, Ms.

2    VanLare?

3              MS. VANLARE:  So, maybe what I'll do, Your Honor,

4    is I will just maybe point out some of the key dates just to

5    make sure everybody is aware.  This schedule is agreed upon

6    among the Debtors, the Creditors' Committee, the Ad Hoc

7    Committee.  And it's been widely circulated.

8              THE COURT:  I did want to confirm, I did see

9    there's a number of provisions about discovery.  Are those

10   things that have been negotiated among the parties?

11             MS. VANLARE:  Yes, yes.

12             THE COURT:  Okay.  That's good to know because

13   there are things in there that are I wouldn't say unusual

14   but are either very specific asks by one party or a result

15   of negotiations.  And since it's the result of negotiations,

16   I will stay out of it since you all have worked hard to make

17   that work.

18             MS. VANLARE:  Yes, Your Honor.  This has been

19   negotiated extensively.

20             THE COURT:  I figured.

21             MS. VANLARE:  Today's -- we did file a blackline

22   today.  It just tweaked the voting record date just given

23   the adjournment of the disclosure statement hearing.  So,

24   that's pushed to November 28th, which is tomorrow.

25             THE COURT:  So, the voting record date goes from

Page 92

1    the 3rd to the 28th?

2                MS. VANLARE:  To the 28th.

3                THE COURT:  All right.  I was going to ask you

4    about that.  All right.

5                MS. VANLARE:  The other change we made was the

6    plan supplement date went from December 22nd to the 29th.  I

7    think those are the only changes to the timeline.

8                We have the confirmation hearing here as February

9    14th through the 16th depending on Your Honor's

10   availability.  I don't know if that's something that you

11   know right now or if you would like us to coordinate with

12   chambers.  But that would be the timeline.

13               THE COURT:  Hold on one second.  I checked enough

14   dates that I now don't remember the details on those dates.

15   We'll check in a second.

16               I did have a question to ask you.  So, I see the

17   Rule 3018(a) motions.  And normally those are often

18   reserved, but not exercised.  They don't become a necessary

19   thing to decide.  I can see how this case might be a little

20   different that way.  And so, I know that the voting deadline

21   is January 10th, so what I would propose is starting a

22   hearing on the 21st in the afternoon at 2:00 p.m., and then

23   continuing it on that Wednesday, which I think is January

24   3rd, with the idea that we're still well out before the

25   voting deadline, but if it becomes a protracted matter, that

Page 93

1    people know we have enough time to get it done.

2           I don't think anybody wants to be contemplating

3    this on, so the 22nd is a Friday, and the Monday is

4    Christmas, so we probably want to avoid that particular

5    problem.  So, if that works for you, I was going to just

6    tweak the schedule that way.

7           MS. VANLARE:  So, just to make sure we got that,

8    so the hearing on Rule 3018(a) motions would be on December

9    21st --

10          THE COURT:  Yes.

11          MS. VANLARE:  -- rather than 22nd?

12          THE COURT:  At 2:00 p.m.

13          MS. VANLARE:  And then at 2:00 p.m., and then and

14   --

15          THE COURT:  Continuing to January 3rd at 10:00,

16   and that way, you know, you have enough court time.

17          MS. VANLARE:  I think that makes sense.  Okay.

18          THE COURT:  And I did also want to tweak the

19   reply, just because I know the objection deadline, I think,

20   is the 29th.

21          MS. VANLARE:  Yes.

22          THE COURT:  And I realize if it's February 2nd at

23   4:00, and the hearing is on the 12th, and the objection

24   deadline's the -- I'm sorry the hearing is on the 14th, and

25   the objection deadline's at 4:00 on the 12th, then that

1    really leaves me only one day.  So, I was going to ask you

2    if you could move that back a day to the 11th at 4:00.

3           MS. VANLARE:  The 11th is a Sunday.  Is that what

4    you're suggesting, Your Honor, or were you thinking the 9th?

5           THE COURT:  Oh, well, or make it -- make it the

6    12th at 10:00, just so I have the day so I have the 12th and

7    the 13th, just given a preview of the issues we might be

8    discussing.

9           MS. VANLARE:  Okay.

10          THE COURT:  All right, so any other thing --

11   anything else you want to say about deadlines?

12          MS. VANLARE:  I don't think so, Your Honor.  I

13   think we're good on deadlines.

14          THE COURT:  All right, let me just double check.

15   All right, the 14th through 16th is fine.

16          MS. VANLARE:  Okay, perfect.

17          THE COURT:  Thank you.

18          All right, and other comments about the order or

19   procedures?

20          MR. ZIPES:  Your Honor, if I may, Greg Zipes.

21   (Indiscernible), and it'll be very brief.  Your Honor, my

22   office did have objections to the disclosure statement, and

23   one of them was just generally the timing and the filing of

24   documents.  And again, today, we were able to work and

25   review everything.  There are some open-ended questions,

Page 95

1   actually, on a few points here, but for the most part, we've

2   been able to work through the latest changes.

3          My office is concerned about the last-minute

4   filings and just wanted to get some assurance that with

5   respect to the plan disclosure state -- the plan, that we'll

6   -- that the deadline will be firm, whatever that is, and

7   that amendments won't come after, for example, the objection

8   deadline for the plaintiff.

9          THE COURT:  Well, I think we're in a position with

10  the disclosure statements.  It's a little different, because

11  there were a lot of negotiations that came out of the last

12  hearing, and so obviously, if there are material changes to

13  the plan, they've got to be on appropriate notice.  And so,

14  I think that's our guiding principle, and I think you're

15  right to point that out and to be sensitive to that, and I

16  appreciate that.

17         MR. ZIPES:  Okay, thank you.

18         THE COURT:  Anything else from the UST while you

19  happen to be near the podium, Mr. Zipes?

20         MR. ZIPES:  Your Honor, we think we'll have some

21  plan objections, but those are reserved.

22         THE COURT:  Oh, and I recognize that we're not

23  here for a confirmation hearing.  My question would be, is

24  there anything worth identifying now such that there are

25  steps that can be taken to address concerns?  Sometimes

Page 96

1   that's the case, where if you get in front of it, they can

2   get resolved.  And there are other ones that are sort of

3   fundamentally in the DNA of the plan.

4            MR. ZIPES:  Your Honor, there are some points that

5   parties should not be -- that they should be familiar with

6   some of our objections.  I know this Court has ruled on some

7   of these objections, and we do appreciate that the opt-in

8   was added.  That wasn't -- that was a modification to the

9   process here in connection with releases, so to the extent

10  there were released parties, creditors and -- are able to

11  vote affirmatively on the releases.  That's kind of the gold

12  standard in terms of releases, so we appreciate that.

13           On exculpations, Your Honor, we raised that at the

14  disclosure statement stage as well, and this Court has

15  expressed its views, frankly, on what -- who can be

16  exculpated, fiduciaries versus non-fiduciaries.  That may be

17  an issue that we'll have to save for our confirmation.  And

18  Your Honor, there are a couple of other points in that

19  regard as well, but we'll take them.

20           THE COURT:  All right, and so I certainly would

21  appreciate it if there are other things that your office has

22  issues with that can be addressed in the course of between

23  now and the confirmation hearing, please share them as soon

24  as you're able with the Debtors, the Committee, interested

25  parties, just so we can get it in front of them.  And so, I

Page 97

1    sort of had one or two things that struck me that way that I

2    may flag before all that's said and done, just in terms of

3    things we can get in front of.  But if --

4              MR. ZIPES:  Your Honor, we were able to resolve a

5    lot of the issues, and as I told Debtor's counsel, we have a

6    certain process that we have to follow in our office as

7    well, so if I'm give a last-second change, I can't

8    necessarily convey that to the Court.  It's --

9              THE COURT:  No, I appreciate that.  So, what I

10   would just say is, as soon as you're able to communicate it,

11   the better.  Again, there are certain things like the

12   distribution principles that are fundamentally plan terms,

13   and getting you know, there are other things that are sort

14   of more process objections where people say, well, we have

15   this issue, unless the following things are done or the

16   following findings are made or the following pleading is

17   filed, and so those are the ones I'm just anxious to try to

18   see if we can move those along and clear up as many things

19   that are fixable as possible.

20             MR. ZIPES:  Agreed, Your Honor.

21             THE COURT:  All right, thank you.  I appreciate

22   that.

23             All right, Ms. VanLare, anything else that you had

24   on your list of things to address.

25             MS. VANLARE:  Nothing else from me, Your Honor.

Page 98

1    Mr. O'Neal would like to address the exclusivity issue.

2              THE COURT:  All right, and so when do you want me

3    to go through the order?  I had a couple of things --

4              MS. VANLARE:  Oh --

5              MR. ZIPES:  I think we should do that --

6              MS. VANLARE:  -- oh, I'm sorry.

7              THE COURT:  No, that's all right.

8              MS. VANLARE:  I should have asked, Your Honor,

9    yes.

10             THE COURT:  No, that's perfectly fine.  That --

11   you've got a lot on your plate.  So, perfectly fine.

12             MS. VANLARE:  Yes, we should do that.

13             THE COURT:  And we've already gone through one or

14   two things, and I don't have a lot, so...  And I'm using

15   Document 978, so the one that was filed on the 27th at

16   12:09.

17             MS. VANLARE:  Yep.

18             THE COURT:  All right.

19             MS. VANLARE:  Great, yep, I have that as well.

20             THE COURT:  All right, so we talked about dates.

21   So, if you look at Page 4, Paragraph E.

22             MS. VANLARE:  I'm there, Your Honor.

23             THE COURT:  All right, so this is just a minor

24   linguistic thing.  It says, "the date set forth below during

25   which Debtors may solicit exception to the plans is" -- I

Page 99

1    think it should say "provide," just -- it's just a language

2    thing, substantive.

3              MS. VANLARE:  Got it.

4              THE COURT:  And then on Page 6, I think we went

5    through all of the dates, and you -- I had a question about

6    using November 3rd for the voting record date, but you

7    changed that, so minor linguistic things.  "Solicitation

8    deadline within three business days of," and I think you'd

9    want to add "entry of the disclosure statement order."

10             MS. VANLARE:  Got it.

11             THE COURT:  And then stick that in also on the

12   "confirmation hearing notice of publication deadlines is

13   within 10 days of," and stick in "entry of the."

14             MS. VANLARE:  Okay.

15             THE COURT:  And Page 7, Paragraph 5, which

16   contemplates that the hearing may be adjourned from time to

17   time without notice other than adjournments in open court

18   and/or notice of adjournment filed on the Court.  Certainly,

19   you can adjourn it by notice of adjournment.  I guess my

20   thought would be that if it's adjourned in open court, I

21   think you normally had been filing a notice anyway, just

22   given the -- particularly given the circumstances of your

23   creditor body, so I think that's just a minor tweak, and I

24   think that --

25             MS. VANLARE:  So, I'm sorry, just so -- no, I

Page 100

1    understand --

2            THE COURT:  So, if it's adjourned in open court,

3    that you also file a notice.

4            MS. VANLARE:  Got it, got it.  So, maybe we can

5    just delete "announced in open court," and that way it's

6    just clear whenever --

7            THE COURT:  It's always by notice.  It's an

8    excellent idea.  So, going to Page 9, and this is a minor

9    thing, but just to make it a little more readable for non-

10   lawyers, I would move Paragraph 10 to before Paragraph 9.

11   And the reason why is, Paragraph 9 talks about distribution

12   of solicitation packages to everybody other than Gemini

13   Letters -- Lenders, and Paragraph 11 talks about it,

14   distribution for the Gemini Lenders, and I'd like to keep

15   those paragraphs together, so Paragraph 10 is on a different

16   topic, so just move it before Paragraph 9.

17           MS. VANLARE:  Okay.

18           THE COURT:  And in Paragraph 13 on Page 10, this

19   is talking about fees and that Gemini is going to get

20   reimbursed in connection with out-of-pocket expenses to --

21   for solicitation of votes, and I know that that whole

22   process is something that's been negotiated and has worked

23   well.  So, I don't know, it says "for the voices in doubt,

24   the Debtors and the Committee, each reserve their rights to

25   object to the reasonableness of Gemini's reimbursed fees."

Page 101

1    I know the US Trustee's office is usually a party that gets

2    that right to chime in as well as to the reasonableness of

3    fees.

4              MS. VANLARE:  Okay.

5              MR. ZIPES:  Thank you, Your Honor.

6              THE COURT:  And the next paragraph talks about

7    "the Debtors are authorized but not directed to distribute

8    the solicitation package, et cetera, et cetera, by regular

9    mail or electronic mail, where such holders provide an

10   electronic mail address, unless not otherwise practicable."

11   And I guess my question is, is there a circumstance where

12   you'd be splitting, like you might send a ballot by mail,

13   and say you can get everything else electronically, or is it

14   going to be one or the other?  And the idea is to not have

15   any confusion.

16            So, because I can imagine you're sending a lot of

17   attachments and whether the size is an issue, and that's why

18   the otherwise-practicable kicks in.  So, I guess that's my

19   question, is whether the solicitation package, where you're

20   talking about electronic mail, you're sending everything by

21   electronic mail, where that's the way you're communicating

22   with those -- that particular creditor.

23            MS. VANLARE:  I imagine there may be circumstances

24   where we send the ballots and information by regular mail as

25   to how to access electronically the voluminous documents,

1    you know, things like plan disclosure statement, links, and

2    things that.

3           THE COURT:  All right, well, let me ask the

4    Committee your views.  I'm just trying to make sure that

5    it's as clean as possible for purposes of creditors,

6    understanding what it is they're getting and what it is

7    they're supposed to do.

8           MR. SHORE:  Yeah, we've signed off on the

9    language.  We're comfortable with it the way it was.

10          THE COURT:  Okay.  All right.

11          Next page, 11, Paragraph 18.  At the very end, I

12   think there's just some extra verbiage that crept in there,

13   where it says, "or as soon as practicable thereafter."  Or

14   there's something missing, I'm not sure.

15          MS. VANLARE:  I agree, Your Honor.  If we could

16   just take that out.

17          THE COURT:  All right.  So, the next page, Page

18   12, middle of the page, it talks about Gemini is authorized

19   to provide the Gemini voting statement to Kroll by not less

20   than seven days following Gemini's receipt.  My comment

21   here, and it may be fine, is that there are a couple of

22   these places where you have hard dates and others where you

23   have shifting dates.  And I just want to make sure they

24   don't somehow collide if things slide or things get

25   extended, that you find yourself in an impossible situation

Page 103

1   in terms of complying with the order.  So, I'll just leave

2   it to you to double-check, so but just I noticed that

3   there's some hard dates and then some other dates that are

4   essentially tied to various events.

5         So, for the end of that paragraph, this is also

6   talking about any ballots received that would be considered

7   defective or excluded from the final voting results.

8   There's a concept in Paragraph 23 on the next page, talking

9   about the solicitation agent being authorized but not

10  required to contact parties who submit incomplete or

11  otherwise deficient ballots to make reasonable efforts to

12  secure such deficiencies.  And I would assume that we'd

13  import the same concept here for these things, where

14  somebody may have submitted something that in a form that

15  they shouldn't have.  Does that make sense?

16        So, we're doing it for defective -- deficient

17  ballots, and so here, we're mentioning that if you

18  essentially have a particular kind of defective ballot,

19  email, hard-copy mail, or hand delivery, that those'll be

20  defective.  You could maybe just even make a reference to

21  about -- "see Paragraph 23" or however you want to do it.

22        MS. VANLARE:  I just -- that all seems perfectly

23  reasonable.  I do want to just confirm, because this

24  Paragraph 20 deals with Gemini Lenders' ballots specifically

25  --

1          THE COURT:  Oh, I'm sorry, I'm looking at -- I'm

2     sorry, I meant the end of Paragraph 19.  And I understand

3     why you're confused if I gave you the wrong paragraph.

4     Sorry about that.

5          MS. VANLARE:  We'll take another look.  I -- if we

6     can, we will.  There is a -- there's a separate process that

7     we have created, working closely with Kroll as well as

8     Gemini with respect to the Gemini Lenders.  And so, --

9          THE COURT:  Right.  Yeah, I'm just trying to treat

10    everybody the same so that if --

11         MS. VANLARE:  Understood.

12         THE COURT:  -- we've got that concept with this --

13    when you've got the solicitation agent, that the folks who

14    are doing it through the Gemini lending voting portal should

15    probably get the same benefit of, if there's an obvious

16    mistake, and somebody is "authorized but not required to

17    contact the parties to get them to fix things."

18         MS. VANLARE:  The only issue I see, Your Honor, is

19    if we can't identify them, because there's a very specific

20    way that Gemini Lenders will be voting through the portal,

21    so maybe we can do what you're asking, but just say

22    something like "to the extent practicable."

23         THE COURT:  That's fine, yeah, that's fine.  And

24    that -- again, Paragraph 23 says "Authorized but not

25    required," so I'm perfectly fine with that, "to the extent

Page 105

1    practicable."  They can't pull a rabbit out of hat if you

2    don't have a hat, so that's perfectly fine.

3            So, for Paragraph 25, when I have language that

4    says, "No votes are -- to accept or reject, is receded to a

5    particular class," I just say that class shall be treated in

6    accordance with applicable law, as opposed to saying they're

7    voted to accept.  It's actually come up in some Sub 5 --

8    Chapter 5 cases recently in decisions.

9            And I don't think this is necessary, so but I'll

10   mention it, just for Paragraph 27.  It talks about both the

11   filing of the supplement and then notice of the filing of

12   the supplement.  And it says the notice should be at the

13   same time as the filing or soon thereafter, as soon as

14   practicable thereafter, which I'm assuming won't be more

15   than a day or two, so but I don't think it's necessary to

16   put in language to that effect.  I just want to make sure

17   that's sort of the understanding.

18            MS. VANLARE:  Yes.

19            THE COURT:  All right.  So, on Page 15, Paragraph

20   29, if you go to the end of that first sentence talking

21   about "not required to send solicitation packages to various

22   folks, including the -- any party to whom the disclosure

23   statement hearing notice was sent but was subsequently

24   returned as undeliverable."  I always put in "after a

25   reasonable search for alternative address," reasonable

Page 106

1    search, and then that way, I would take out the last

2    sentence that talks about "no one's required to do any

3    additional research."  And again, it's a reasonable search.

4    It's not -- you're not required to move Heaven and Earth,

5    but in this day and age of the Internet, there's information

6    reasonably available quickly.

7              So, turning to Paragraph 31 at the bottom of Page

8    15 and Paragraph 32, I was a little confused about the

9    timing for the assumption and rejection notices vis-à-vis

10   the filing of the objection to treatment.  So, if you go

11   onto Paragraph -- so it talks about the treatment objection.

12   It has to be filed by the confirmation objection deadline.

13   And but then the -- and that's in Paragraph 32, but then

14   Paragraph 31 says "at least 10 days prior to the

15   confirmation hearing, the assumption and rejection notices

16   need to be filed."  So, I don't know that the timing lines

17   up because I think the objection is due by the confirmation

18   objection deadline.  What is that, a week before?  So, --

19              MS. VANLARE:  So, maybe if we just say at least 10

20   days prior to the objection deadline for the confirmation --

21   to confirmation, rather than confirmation hearing?

22              THE COURT:  All right, to -- and then there's

23   also, in 32E, it says it's got to be served, filed, and

24   served, such that it's actually received no later than the

25   confirmation objection deadline.  There's a possibility that

1   somebody would only get like, four or five days for that.

2   And so, what I'd ask is, take a look at it so that somebody

3   gets a reasonable amount of time.  I would say they should

4   be able to get 14 days to take a look at it and figure out

5   if they have any issues, and then but I'm open to

6   suggestions on how you want to sequence it.

7           MS. VANLARE:  Okay, understood.

8           THE COURT:  And...  So, for Paragraph 35 on Page

9   17, the second part of it I get.  It talks about the Debtors

10  being authorized to supplement the exhibit about assumed

11  contracts.  And it basically says the second half is with

12  respect to any executory contract or unexpired lease that's

13  been resolved after the effective date.  So, I -- you can do

14  that whenever you want, and I get that.  The first half,

15  though, says that the Debtors are authorized to supplement

16  that at any time prior to the effective date.  And I don't

17  know how -- then we need to say something about what

18  somebody's ability to object is to that or be heard on that.

19          MS. VANLARE:  Okay, we've got that.

20          THE COURT:  So, I think you can add that.  Moving

21  onto Page 19, Paragraph G, it talks about if there's an

22  objection or request for estimation of a claim, and they --

23  you have it being temporarily disallowed.  In those

24  circumstances, I usually just put in "allowed" and the

25  undisputed amount of the claim or $1, whichever is greater,

Page 108

1    meaning a claim objection doesn't by itself mean somebody

2    can't vote.

3            I think we talked about the reply date, which I

4    think is mentioned on Paragraph 39, so that's -- and then I

5    had questions about the discovery stuff in Paragraph 44 and

6    45, but since it is the subject of agreement, I'm happy to

7    move on.  And I don't know that it'll make any wit of

8    difference, but in Paragraph 24 and Subparagraph C, it talks

9    about strongly encouraging parties to resolve any disputes

10   about deposition times.  It says "Debtors."  I think you

11   could say "the Court," because I certainly strongly do

12   encourage folks to resolve those.

13           MS. VANLARE:  I'm sorry, Your Honor, which

14   paragraph --

15           THE COURT:  Paragraph -- hold on, let me give you

16   that again.  Page 24, Subsection C, so it's near the top,

17   where it says, "the Debtors," I would just say "the Court."

18           MS. VANLARE:  Instead of the Debtors, the Court?

19           THE COURT:  Yeah.  I'd like to think that would

20   make it more likely.  I probably -- I'm probably not

21   accurate in that.  So, that's what I had on the order.  And

22   then, in the vein of thinking about issues that maybe folks

23   can get ahead of, I did see that there was a reference to

24   restructuring fees and expenses for a couple of groups, and

25   I don't know if you've talked to other folks about that or

Page 109

1    if that's the subject of a possible objection or not.

2            You would know better than I would, and so but if

3    you think that it might draw an objection, I would encourage

4    folks to think about whether it makes any sense to file some

5    sort of motion, because often, those issues devolve into a

6    substantial contribution, folks' role in the case, when we

7    end up dealing with it on a less than full developed record

8    later, and sometimes we can get in front of those issues.

9    So, you'll know better whether that's worth doing or not,

10   but I certainly have been there in the past.

11           MR. ZIPES:  Your Honor, may I just be heard on

12   that very briefly?

13           THE COURT:  Sure.

14           MR. ZIPES:  I agree with that generally because

15   our objection may, in connection with these, may involve a

16   question of whether there's substantial contribution or not,

17   so and what the standard should be.  And I think that's one

18   of the --

19           THE COURT:  I -- yeah, I've seen enough of those

20   objections.  That's why I want to flag this as an issue we

21   can get out in front of, and sometimes we end up having that

22   discussion, but I don't have a well, sort of a proper record

23   or procedural vehicle to move forward on that, and that's

24   not good for anybody.

25           So, on Paragraph -- on Page 116 of 312, there's a

Page 110

1    reference to the releases by the Debtor, and it references

2    released parties.  I think "released parties" is a defined

3    term in the plan, so I don't think it's defined in the

4    disclosure statement.  At least I couldn't find it, so I

5    think it needs to be defined somewhere in that --

6              MS. VANLARE:  And that's --

7              THE COURT:  -- in that -- it could be in that

8    paragraph, or it could be somewhere else, but just so

9    people, again, in the interest of adequate information -- I

10   will say, in that paragraph, which is IV, I think it is one

11   long sentence.  I promise never to penalize anybody if they

12   want to make it more than one sentence, because it is --

13   it's one of those sentences that I feel like I lose about 10

14   points of IQ by the time I finish it, so just something to

15   keep in mind.

16             The other thing I think is helpful in terms of

17   getting in front of things is to include a preview, which is

18   the Debtors will seek the relief as to the release parties,

19   and just a sentence or two that explains why, the general

20   reason, because I think it starts in the dialogue and sort

21   of gets in front of the issue for purposes of -- I mean, we

22   all know what kind of confirmation objections are often on

23   these issues.  We know the Supreme Court is going to

24   illuminate the issue further for us, but I think it's always

25   helpful to just provide a couple of sentences on that here.

Page 111

1          MS. VANLARE:  We did that, Your Honor.

2          THE COURT:  Oh.

3          MS. VANLARE:  We added actually several

4    paragraphs.

5          THE COURT:  Well, I see what's covered, so I see

6    connected with the amended disclosure statement, amended

7    plan, plan supplement.  Am I missing something in terms of -

8    - I see "in exchange for good and valuable consideration."

9          MS. VANLARE:  We actually added it somewhere else.

10   I'm just looking for the page number.

11         MR. O'NEAL:  We cross referenced.

12         MS. VANLARE:  Oh, we added --

13         THE COURT:  Oh, if you've got it, then do a cross

14   -- that's helpful.  The idea is that somebody knows.

15         MS. VANLARE:  That, we can do that.  Yep, yeah,

16   yep, happy to do that and have that --

17         THE COURT:  Okay, that's great.  And so, on Page

18   118 of 312, and I'm sorry, I'm being a little persnickety on

19   this one, but it says "entry of the confirmation order will

20   constitute approval of the releases," and I think that's not

21   technically accurate, because the confirmation order may say

22   what it's going to say, whatever it says, so I think you

23   should just say the Debtors are seeking approval of a

24   confirmation order that provides for these releases.

25         And let me see if there's anything else on my list

Page 112

```
 1    here.  So, I think, Ms. VanLare, I think you already

 2    preempted this, but I did see in a couple of spots a

 3    reference.  And I think it was in the distribution

 4    principles, about "regulatory legal or practical

 5    considerations may affect the ability of the Debtors to make

 6    in-kind or like-kind distributions."  And so, I think you

 7    covered it today by essentially saying, here's what we

 8    intend to do, we invited a conversation with the regulators.

 9             I'm glad you flagged the issue.  I think it's

10    important.  I remember Judge Glenn, I think, in his

11    cryptocurrency case, at a certain point, said, "Geez,

12    there's cases out there talking about what is and isn't a

13    security.  It doesn't affect this case.  I want to makes

14    sure people are thinking about the issues."  You clearly

15    have it in mind, and so again, another thing that I think is

16    helpful to get in front of, so thank you for doing that.

17    And I think with that, those are all my comments.

18             MS. VANLARE:  Just one other thing I wanted to

19    flag for Your Honor with respect to the order, just because

20    another change that we made today that will perhaps --

21             THE COURT:  Okay.

22             MS. VANLARE:  -- you may not have noted.  We did

23    add a paragraph.  It's a new Paragraph 55.  That was in

24    response to a request by the Securities and Exchange

25    Commission that is typical language that nothing herein is a
```

1    finding that this -- that anything's a security.

2              THE COURT:  Right.

3              MS. VANLARE:  So, I just, just for completeness's

4    sake, I wanted to mention that.  That's part of the black

5    line.

6              THE COURT:  Yeah, thank you, and I'm not a

7    securities lawyer.  I wasn't one before I got on the bench,

8    so my only goal really is to just flag the issue for

9    consideration.  I know you've thought about it and are

10   thinking about it, but just, I think what you did, this,

11   earlier today, to essentially invite a dialogue to the

12   extent that there's any issues about distribution and what's

13   intended, that folks start chatting and make sure that

14   people get comfort as to those issues.

15             So, I just wanted to throw that out there, and

16   again, I'm often sort of the last one to be in the know on

17   these things, so it may be that you're already well in front

18   of me.  And I see that the SEC is on the line and has raised

19   its hand.  I would like to compliment you for your technical

20   prowess in doing what many folks are unable to do, so I'm

21   happy to hear from you.  Counsel?

22             MR. UPTEGROVE:  Thank you, Your Honor.  Good

23   afternoon, again.  William Uptegrove for the United States

24   Securities and Exchange Commission.  I've had a couple of

25   points to make, and I thought this would be a good time to

Page 114

1   make them, given the topic.  And I'll be really brief.  The

2   (indiscernible) address our issues for the purpose of the

3   disclosure statement.  The SEC is, however, continuing to

4   reserve its right to raise confirmation issues at

5   confirmation.

6          Regarding the distribution, which Your Honor was

7   just talking about, we have had discussions with the

8   Debtors, and we expect to continue to have discussions with

9   the Debtors.  We're also continuing to review the plan and

10  distribution principles, but at this point, the SEC is not

11  taking a position on the procedures for the purpose of the

12  disclosure statement.  We don't see it as a disclosure

13  issue, and the distribution principles themselves

14  specifically say that there's change, so for that reason, if

15  nothing else, we're reserving our right to raise any issue

16  that's with not respect to confirmation.

17         However, we understand, and we appreciate that the

18  Court wants the parties to work out any wrinkles or issues

19  as soon as practical, and that's something that has been a

20  top of mind for us, and it will continue to be as we go

21  forward.  So, I just wanted to raise that, since we were on

22  the topic, Your Honor, so thank you for that.

23         THE COURT:  All right, no, I appreciate it.

24  That's really the point, and it sounds like you all are well

25  in front of me, and judges are never offended when we raise

Page 115

1    an issue and someone says, "No, Judge, we're all over that,"

2    and that's clearly the case for both the Debtors and the

3    SEC, and I appreciate that.

4         And we'll deal with issues as they arise, but we

5    never want to have a fire drill just because things have

6    gotten to that point.  That's in nobody's best interest, and

7    I know we've all had plenty of fire drills in the past, and

8    we're not anxious to have one unnecessarily, so thank you

9    for your efforts.  I appreciate your comments.

10        So, Ms. VanLare, anything else?

11        MS. VANLARE:  Nothing from me.

12        THE COURT:  Anything else from any other party as

13   to the disclosure statement?

14        All right, based on the fairly extensive record

15   established at this hearing and the prior hearing, the

16   objections that were filed, the resolution of the objections

17   that were addressed at this hearing and the prior hearing

18   and all the facts and circumstances of the case, I'm happy

19   to approve the disclosure statement as containing adequate

20   information as that term is used in the Bankruptcy Code and

21   applicable case law.

22        It contains quite a bit of information.  And it's

23   an important step towards moving the case forward, and

24   obviously, I do appreciate the challenges here where some of

25   what needed to be disclosed were things that were integral

Page 116

1    parts of the plan and that you ended up having to negotiate

2    certain things very much up front for the disclosure

3    statement, including the distribution principle.  So, thank

4    you for your hard work and efforts on that, and so the

5    disclosure statement is approved.  And I know we have a few

6    other matters to address.

7               MR. O'NEAL:  Thank you, Your Honor.  This is Sean

8    O'Neal of Clearly Gottlieb on behalf of the Debtors.  I

9    think we just have the matter of the exclusivity extension.

10   As you will recall, Your Honor, you extended it until this

11   hearing and then said that we could make an oral motion.

12   So, we're making an oral motion to extend it to the

13   confirmation hearing for plan exclusivity, and then 30 days

14   after the confirmation hearing for a solicitation.

15              THE COURT:  All right, any party that wishes to be

16   heard in connection with the request to extend exclusivity?

17              MR. ROSEN:  Your Honor, Brian Rosen, Proskauer

18   Rose, on behalf of the Ad Hoc Group.  Based upon the

19   execution of the plan support agreement and the covenants

20   which are in that plan support agreement regarding any

21   modifications to the amended plan, we do not oppose the

22   request for extension.

23              THE COURT:  All right, thank you very much.  Any

24   other party that wishes to be heard?

25              All right, hearing no objection, and based on the

1   entire record of the case, I'm happy to approve the oral

2   application for an extension of exclusivity.  One can

3   quibble about what progress looks like, but I can say after

4   this hearing and the prior hearing, this is progress.

5           So, it's also clear that while there's a lot yet

6   to be decided, that there has been substantial communication

7   and negotiation among stakeholders, so there really is no

8   credible argument that the Debtors are using the additional

9   time, in any way, shape, or form, improperly to disadvantage

10  creditors.  It's a tough case, and so people will continue

11  to negotiate and try to resolve issues, but a lot of

12  progress has been made, so it's an easy call, so the motion

13  is granted.

14          MR. O'NEAL:  Thank you, Your Honor.  We will

15  submit an order.

16          THE COURT:  All right, thank you very much.  And

17  with that, is there anything else that needs to be addressed

18  here today?

19          MR. O'NEAL:  Your Honor, I think we have concluded

20  all matters on the agenda.

21          THE COURT:  All right, and I understand we're back

22  here on Thursday.

23          MR. O'NEAL:  That's correct.

24          THE COURT:  Okay.

25          MR. O'NEAL:  I think that will be, though, a -- I

Page 118

1    think that's a virtual hearing, if I'm not mistaken.

2              THE COURT:  Yes, I think that's right, unless --

3              MR. O'NEAL:  Yeah.

4              THE COURT:  -- you would like to request others,

5    but I think those matters are much more straightforward than

6    today, so all right.  Well, thank you very much.  I

7    appreciate everybody's patience, good humor, and efforts in

8    moving the case forward.  And see you all very soon.

9              MR. O'NEAL:  Thank you.

10             MR. ZIPES:  Thank you, Your Honor.

11             THE COURT:  Thank you.

12             (Whereupon these proceedings were concluded at

13   5:10 PM)

14

15

16

17

18

19

20

21

22

23

24

25

1                    **I N D E X**

2

3                         RULINGS

4                                              Page        Line

5    Oral application for an extension           117          2

6    of exclusivity

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 120

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7    *[signature: Sonya M. Ledanski Hyde]*

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 1, 2023

| & | | | |
|---|---|---|---|
| **&**  3:11 6:16<br>12:10,25 13:19<br>14:16,22 23:9<br>34:12 46:19<br>72:13 | 102:11<br>**11501**   120:23<br>**116**   109:25<br>**117**   119:5<br>**118**   111:18<br>**11th**   94:2,3 | **2** | **29th**   92:6<br>93:20<br>**2:00**   92:22<br>93:12,13<br>**2:03**   1:16<br>**2nd**   93:22 |
| **0** | **12**  43:21<br>102:18 | **2**  41:20 82:15<br>119:5<br>**2.1**   22:25 77:22<br>**20**   26:12,19,23<br>103:24 | **3** |
| **07068**   5:4 | **12151**   120:7<br>**1221**   3:13<br>**1271**   7:3<br>**12:09**   98:16<br>**12th**   93:23,25<br>94:6,6 | **200**   17:15,15<br>**200,000**   54:21<br>**201**   5:18<br>**2019**   20:23<br>**2022**   19:15<br>45:16 | **30**   87:19,21<br>89:15 116:13<br>**300**   1:12<br>120:22<br>**3018**   92:17<br>93:8 |
| **1** | | **2023**   1:15<br>120:25<br>**2024**   17:17<br>**21st**   92:22 93:9<br>**22nd**   92:6 93:3<br>93:11 | **30326**   6:11<br>**30th**   18:20<br>**31**   106:7,14<br>**312**   56:19<br>109:25 111:18 |
| **1**  43:20,21,21<br>45:21,21<br>107:25 120:25<br>**1,800**   23:23<br>**10**  43:20,21<br>45:21,24 53:5<br>73:13,14 77:15<br>99:13 100:10<br>100:15,18<br>106:14,19<br>110:13<br>**100**   73:15<br>**10004**   4:20<br>**10006**   3:6<br>**10014**   5:19<br>**10017**   6:19<br>**10020**   3:14 7:4<br>**10036**   4:4,13<br>**1006**   5:18<br>**10153**   5:11<br>**10169**   6:4<br>**10601**   1:13<br>**10:00**   93:15<br>94:6<br>**10th**   92:21<br>**11**  2:11,22<br>30:12 100:13 | **13**  88:24<br>100:18<br>**13th**   94:7<br>**14**  107:4<br>**14th**   92:9<br>93:24 94:15<br>**15**  105:19<br>106:8<br>**150**   20:25<br>77:24<br>**16th**   19:15<br>45:16 92:9<br>94:15<br>**17**  107:9<br>**18**  62:4 65:10<br>66:17 67:3<br>102:11<br>**19**  62:3 104:2<br>107:21<br>**1st**   17:17,23<br>54:13 | **23**   103:8,21<br>104:24<br>**23-01192**   43:14<br>**23-01203**   43:14<br>**23-10063**   1:3<br>**230**   6:3<br>**24**   108:8,16<br>**248**   1:12<br>**25**   26:11 63:22<br>105:3<br>**27**   105:10<br>**27th**   25:13<br>43:11 98:15<br>**28**   1:15<br>**287**   56:21<br>**28th**   91:24<br>92:1,2<br>**29**   105:20 | **31st**   42:25<br>**32**   106:8,13<br>**32e**   106:23<br>**33**   62:5<br>**330**   120:21<br>**35**   107:8<br>**363**   18:13<br>**3700**   7:11<br>**39**   108:4<br>**3rd**   92:1,24<br>93:15 99:6 |
| | | | **4** |
| | | | **4**  41:19 43:21<br>98:21<br>**44**   108:5<br>**45**   108:6<br>**461**   2:12,14 |

| | | | |
|---|---|---|---|
| **4:00** 93:23,25 94:2 | **978** 98:15 | **achieve** 41:9 | 112:23 |
| **4:30** 90:14 | **982** 71:5 | **achieved** 20:14 | **added** 48:19,24 |
| | **9th** 94:4 | **action** 5:2 13:4 | 49:8,8 50:14 |
| **5** | **a** | 13:8 17:17 | 51:20 53:1,14 |
| **5** 99:15 105:7,8 | **abelson** 3:18 | 19:13,22 42:9 | 54:1,3 55:14 |
| **500** 7:11 | 12:11 | **actions** 18:9 | 60:18 62:16 |
| **55** 112:23 | **ability** 32:15 | **actors** 40:25 | 63:14 64:12 |
| **562** 68:21 | 42:14 70:8 | **actually** 22:2,4 | 70:23 96:8 |
| **5:00** 90:15,23 | 107:18 112:5 | 53:25 69:18 | 111:3,9,12 |
| **5:10** 118:13 | **able** 43:15 48:6 | 70:15,17,19 | **adding** 56:1 |
| **6** | 49:9 51:4 | 81:1 82:14 | 57:2 59:17 |
| **6** 71:5 99:4 | 53:22 68:8 | 84:24 85:13 | 66:7 |
| **60661** 7:12 | 94:24 95:2 | 95:1 105:7 | **addition** 15:22 |
| **65** 5:3 | 96:10,24 97:4 | 106:24 111:3,9 | 16:14 17:9 |
| **7** | 97:10 107:4 | **ad** 2:4 4:2,10 | 18:17 19:11,21 |
| **7** 4:12 30:11,18 | **above** 53:18 | 6:17 12:13,16 | 59:19 62:11 |
| 30:21,25 31:7 | **absolutely** | 12:18,20 14:17 | **additional** 31:1 |
| 31:16 99:15 | 50:11,19 52:1 | 15:23 16:5 | 44:21,22 45:5 |
| **767** 5:10 | **accept** 105:4,7 | 18:6 20:15,19 | 45:7,9 46:6 |
| **785** 2:21 | **access** 41:19,20 | 20:20,22 22:19 | 51:20 52:9 |
| **7th** 43:7 | 101:25 | 23:1,10 25:9 | 53:1,5,14 |
| **8** | **accomplish** | 33:16 37:3 | 59:16 61:5,17 |
| **8** 43:21 | 24:15,24 | 42:22 43:7 | 61:22 67:17 |
| **874** 51:16 | **accomplishes** | 45:23 46:22 | 106:3 117:8 |
| **9** | 19:1 | 69:6 70:22 | **address** 50:24 |
| **9** 43:21 71:4 | **accordance** | 80:12 82:8 | 72:15 75:19 |
| 75:22 100:8,10 | 105:6 | 91:6 116:18 | 88:19 95:25 |
| 100:11,16 | **accounts** 44:6 | **adam** 7:7 | 97:24 98:1 |
| **9,000** 23:23 | **accrue** 62:23 | 14:23 | 101:10 105:25 |
| **900** 6:10 55:9 | **accuracy** 58:8 | **add** 53:5 57:3 | 114:2 116:6 |
| **9019** 18:1,13 | 89:9 | 57:6 60:13 | **addressed** |
| 75:14 86:9 | **accurate** 54:11 | 64:2 66:3,22 | 38:24 88:5 |
| **950** 2:12 6:10 | 62:4 67:13,14 | 67:1,13 68:7 | 96:22 115:17 |
| **952** 2:1 | 74:8 78:13 | 69:20 70:13 | 117:17 |
| | 88:19 108:21 | 71:2 83:24,25 | **addresses** |
| | 111:21 120:4 | 84:9 86:10,13 | 37:24 56:5 |
| | | 99:9 107:20 | |

| | | | |
|---|---|---|---|
| **addressing** 74:12 78:9 | **affirmatively** 96:11 | 22:23,24 23:2 26:2 30:16,16 | **alternatives** 30:3 31:14 |
| **adequacy** 2:5 2:15 | **afternoon** 11:2 11:3,4,15 | 43:15 45:23 46:1 48:13,15 | **amanda** 8:21 |
| **adequate** 39:18 40:1 50:2 52:2 53:19 110:9 115:19 | 12:11,13,15,19 12:22,24 13:3 13:6,9,18,22 13:25 14:1,7,9 14:13,15,18,21 14:25 15:2,4 | 49:9 72:24 74:1 76:23 108:6 116:19 116:20 | **amenable** 66:5 68:9 |
| | | **agreements** 15:19 16:4 32:10 | **amended** 2:1,9 2:10 15:19 111:6,6 116:21 |
| **adjourn** 99:19 | | | **amendment** 17:12 |
| **adjourned** 99:16,20 100:2 | 27:13 34:10,11 46:18 69:24 | **agrees** 32:8 | **amendments** 17:11 95:7 |
| **adjournment** 26:6 91:23 99:18,19 | 92:22 113:23 | **ahead** 23:19 25:5 48:12 49:2 108:23 | **american** 88:25 |
| | **age** 63:22 106:5 | | **americas** 3:13 7:3 |
| **adjournments** 99:17 | **agenda** 2:2 117:20 | **airlines** 88:25 | **amount** 24:6 54:17 107:3,25 |
| **administrative** 31:1 | **agent** 4:18 63:5 103:9 104:13 | **akin** 17:19 **al** 1:7 2:11 | **amounts** 17:17 20:24 55:2 |
| **advance** 24:19 41:1 42:15 46:8 | **ago** 22:5 34:15 74:19 | **alex** 9:14 **ali** 8:8 | **anais** 8:18 |
| | **agree** 29:21 | **aligned** 70:18 | **analysis** 28:18 30:21 |
| **advantage** 17:3 | 30:14 39:11 49:7 71:11 | **alignment** 44:3 **allege** 45:15 | **andreas** 10:9 |
| **adversary** 18:12 43:10,14 44:1,8,16 45:7 45:19 52:16 53:7,12 58:17 62:19 85:10 | 80:6,7 87:3 102:15 109:14 | **alleged** 58:18 **allegedly** 19:14 **alleges** 19:18 **alleging** 44:24 | **andrew** 7:22 9:4,6,11 |
| | **agreed** 16:19 16:20 37:23 42:21,22 46:25 47:11,11 49:7 59:18 79:6 | | **andy** 10:12 |
| | | | **announced** 100:5 |
| | | **allow** 21:5 43:18 | **anonymously** 36:18 |
| **advice** 32:5 | 91:5 97:20 | **allowed** 89:23 107:24 | **anson** 4:22 12:25 46:19 |
| **advisors** 55:22 | **agreeing** 66:21 | | |
| **affect** 52:17 61:12 62:13 65:11 69:10 112:5,13 | **agreement** 15:22,25,25 17:10,11,13,21 17:23 19:7,8 | **allows** 35:11 **altcoin** 41:6,6 41:13,14,15,16 41:17,19,25 | **answer** 86:22 |
| | | | **anxious** 97:17 115:8 |
| | | **alternative** 81:21 105:25 | |

**anybody**  15:8
21:4 22:12,13
26:4 29:24
36:3 37:15
63:18 71:19
89:2 93:2
109:24 110:11

**anybody's**
37:17 50:18

**anything's**
113:1

**anyway**  99:21

**apart**  33:7
64:14

**appearance**
13:23 14:4
15:6,7

**appearances**
11:6,11 12:3,4
13:11,14

**appears**  56:14

**applicable**
43:25 105:6
115:21

**application**
117:2 119:5

**applies**  63:19
64:2

**apply**  40:7

**appreciate**
23:16 26:14
54:11 55:19
63:14,15 88:14
95:16 96:7,12
96:21 97:9,21
114:17,23
115:3,9,24

118:7

**appreciated**
54:15 59:5

**appreciation**
53:17 62:20
63:6

**approach**
53:20

**appropriate**
27:19 33:12
36:9 39:22,22
46:23 54:24
58:22,23 73:3
84:19 95:13

**appropriately**
39:25

**approval**  18:9
42:25 47:12
50:5 111:20,23

**approve**  2:5,15
115:19 117:1

**approved**
39:22,22 116:5

**approving**
49:12

**approximately**
17:15 22:25
41:19,20

**april**  17:17,22

**architecture**
59:22

**argue**  25:16
73:14

**argument**  51:9
70:24 71:20
76:22 117:8

**arguments**
52:20 53:3,8
53:13 58:16
85:6,6

**arianna**  8:24

**aronzon**  7:17

**arrived**  81:12

**arrows**  7:2
14:23 18:18

**artful**  69:12
71:11

**articulated**
34:14

**asha**  9:16

**ashlyn**  9:21

**aside**  31:11
64:10

**asked**  18:8
65:21,21 81:24
82:9 98:8

**asking**  17:18
36:14 46:9
54:16 58:14
67:12 80:20
87:2 104:21

**asks**  91:14

**aspect**  30:2

**asquith**  7:18

**asserted**  43:1

**assertions**
44:19

**assessment**
29:18 80:6

**asset**  20:10
41:7 52:12
73:8 86:2,18

**assets**  31:5
40:16 52:8,8
86:15 87:9,16

**assist**  29:19

**assistance**  46:2
46:9

**associated**
63:12

**assume**  103:12

**assumed**
107:10

**assuming**
105:14

**assumption**
106:9,15

**assurance**  95:4

**atlanta**  6:11

**attached**  30:23

**attachments**
39:17 101:17

**attendees**
11:23

**attorney**  4:10
6:2,9 7:2,10
28:7 29:3,4
89:8

**attorneys**  3:4
3:12 4:2,18 5:2
5:9,17 6:17

**aulet**  7:19

**authority**  18:7
18:15,15,23
19:8 29:5
81:22

**authorized**
101:7 102:18
103:9 104:16

104:24 107:10
107:15
**automatic**
34:25
**availability**
92:10
**available**   30:3
60:10 66:12
67:17 72:6
106:6
**avenue**   3:13
5:3,10 6:3,18
7:3 37:2
**average**   86:16
**avoid**   40:20
47:9,20,25
49:17 87:13
93:4
**aware**   22:25
27:4 31:25
32:2 42:10
47:6 52:15
90:18 91:5
**azman**   6:21
14:15,16 21:7
23:8,8,20
24:17 25:4,6
25:23 68:12
69:22,24,25
70:15 71:24
72:1 78:6,8
81:6,8,11 82:7
82:23,24 86:22
86:25 87:19
88:3,14
**azman's**   86:11

**b**

**b**   1:21 2:9 4:22
18:13 43:21
**back**   16:15
18:21 21:25
26:9,12,13,24
38:6 51:10
54:17 56:7
63:21 65:22
69:3 71:1 72:9
76:13 81:9
82:11,18 94:2
117:21
**bad**   83:19
**bail**   69:17
**baked**   20:14
63:24
**ballot**   101:12
103:18
**ballots**   2:7,17
101:24 103:6
103:11,17,24
**ban**   27:6
**bankruptcy**
1:1,11,23 2:12
28:12 31:19,23
34:18 36:6
37:16 47:23
88:23 115:20
**barak**   8:11
**barefoot**   7:20
**barnwell**   7:21
**based**   18:13
55:4,12,23
64:17 66:9
86:14 115:14
116:18,25

**basically**   35:11
53:2 60:3
68:10 70:23
72:1 107:11
**basis**   71:7
**battery**   4:19
**beginning**
74:11
**behalf**   11:16
12:6,8,13,16
12:17,20,22,25
13:3,7,19 14:6
14:10,22 15:3
15:15 22:19
32:24 34:13
35:20 37:21
42:20 46:20
72:13 80:12
116:8,18
**behlmann**   7:22
**beitler**   7:23
**belabor**   65:2
**believe**   18:6,18
46:7 51:3 55:5
55:10 56:11,21
57:23 58:14
**believes**   51:25
**bench**   29:14
88:24 113:7
**beneficial**   64:8
**benefit**   55:10
62:24 104:15
**berk**   7:9
**bernstein**   7:24
**best**   22:8 26:8
28:17 29:8
32:6,11,15

41:18 50:18
115:6
**better**   97:11
109:2,9
**beyond**   41:13
41:16 52:7
53:18 88:11
**bicknell**   9:15
**big**   20:5
**billion**   22:25
77:23
**billions**   74:24
75:5
**bit**   22:3 24:12
33:9 42:23
79:18 81:19
83:2 115:22
**bitcoin**   23:21
23:23 41:8,10
41:11 73:1,12
73:13,14 75:6
77:7
**black**   113:4
**blackline**   91:21
**blah**   64:16,16
64:16
**bleeding**   47:24
**bless**   87:21
**blown**   84:1,20
**blunt**   32:9
**blush**   68:17
**board**   76:14
**body**   52:4 53:7
53:11 99:23
**bomb**   63:21
**bottom**   56:20
106:7

bowling 21:9
box 19:4 22:4
35:11
bradley 10:1
brass 24:5
break 26:12,19
61:15 70:1
bremer 9:16
brendon 7:21
brenner 7:25
brett 7:6 14:21
brian 4:6 8:1
9:8 12:15
22:18 80:11
116:17
bridge 68:19
brief 11:17
23:19 26:21
33:25 88:17
94:21 114:1
briefings 85:2
briefly 11:19
23:14 24:25
25:5 26:4
44:11 109:12
bring 21:7
broker 42:2
brought 28:7
29:2 80:16
85:19
brown 20:21
btc 41:6 68:11
bulthuis 8:1
bunch 22:8
88:25
business 80:9
89:11 99:8

button 76:6,9
buttons 21:20
buy 73:15

**c**

c 3:1 8:4 9:23
11:1 108:8,16
120:1,1
calculate 75:8
calendar 23:15
call 19:13,17
44:25 76:5
81:25 89:10
117:12
called 49:25
calls 60:1
canvass 37:21
capital 7:2
14:23 18:18
care 65:5
carter 9:17
cascante 8:2
case 1:3 3:11
11:18 12:10
13:10,10 14:4
15:11 19:10
21:10 23:17,17
24:1,15 25:9
25:21 26:4
27:22 28:5,5
28:13,25 29:9
30:4,12,18
31:14 32:8
33:4,6,10 35:1
35:8,18 37:22
39:25 55:8
70:6 72:13
74:6,12 76:8

82:25 83:21
85:2,2 86:1
88:1,18,25
89:13 92:19
96:1 109:6
112:11,13
115:2,18,21,23
117:1,10 118:8
cases 11:5 24:2
24:7 28:20
29:6 34:18,20
36:13 89:1
105:8 112:12
cash 41:5
72:25
cashman 4:9
12:20
cathy 10:16
causes 19:13
19:22
caveat 15:5
caveats 48:14
cede 42:16
cents 55:18
certain 2:8,18
33:8,13 36:10
82:13 83:8
87:9,9 97:6,11
112:11 116:2
certainly 17:6
19:5 27:17
32:4 36:3
47:10 48:1
51:12 71:19
85:9 87:25
96:20 99:18
108:11 109:10

certified 120:3
cetera 101:8,8
challenge
34:19 35:2
64:23
challenges
115:24
challenging
31:23 59:12
chambers 11:7
11:19,23 21:6
21:8,17,24
24:22 26:9
27:16 92:12
chance 37:12
77:16 81:8
change 41:18
67:1 70:20
92:5 97:7
112:20 114:14
changed 99:7
changes 54:12
54:13 92:7
95:2,12
chapter 2:11
2:22 30:11,11
30:18,21,25
31:7,16 105:8
characterize
67:19
chart 48:3
51:13
chartered 7:9
chat 26:1,8
chatting
113:13

[check - committee]

check 19:4
35:11 62:3
92:15 94:14
103:2
checked 92:13
cheser 10:6
chicago 7:12
chime 22:12,14
23:6 101:2
choice 32:17
35:14 36:2,21
choose 35:16
chosen 34:16
chris 10:14
12:10 72:12
christian 8:25
christmas 93:4
christopher
3:16
circulate 37:6
37:10,13
circulated
37:11 91:7
circulating
33:23
circumstance
101:11
circumstances
36:9 60:11
99:22 101:23
107:24 115:18
cite 84:23
85:10,12
claim 44:19,20
55:1,12,14,16
57:24,25 59:1
59:7 60:23

61:1 73:12,14
74:25 75:9
77:8,8,16,17
107:22,25
108:1
claimants
12:14
claims 21:1
23:1,21,22,24
43:3,12,13
52:14 58:6
62:10,14 63:2
68:15,22 69:10
71:10 73:5,6,7
73:10,15 75:13
76:1,2 77:6
78:24 79:5,9
79:15 80:1,2
83:10 86:2,2
86:12 87:15
clarify 58:13
86:25
class 5:2 13:4,8
105:5,5
classes 52:6
clause 86:13
clean 102:5
clear 27:9
29:16 36:5,12
36:20 39:11
45:6 60:9
79:12 87:25
97:18 100:6
117:5
clearly 112:14
115:2 116:8

cleary 3:3
11:15 15:15
32:23 34:12
42:19
clerked 28:19
clients 65:24
81:18 86:23
88:1
clock 72:25
73:4
closely 19:3
104:7
closer 34:8
37:25
cloth 64:8
clues 87:17
code 2:12
115:20
coin 23:22 41:6
41:8,14 53:17
coins 73:25
colin 9:13
collateral
44:20 54:19
55:2,12,15
65:5 89:6
colleague
13:20 14:11,23
collide 102:24
columns 56:6
combine 68:18
come 16:11
20:21 26:9,12
26:24 29:23
47:6 48:6
68:19 74:2,17
75:17 77:14

78:8 95:7
105:7
comes 31:21
75:7
comfort 113:14
comfortable
49:10 102:9
coming 18:18
54:19 55:1,2
72:18
commenced
17:1
comment 57:1
65:2,14 102:20
comments
28:14 37:23
51:21 82:5
94:18 112:17
115:9
commission
6:8 14:11
112:25 113:24
committee
3:12 12:9
15:23 16:5
18:6 20:16
23:10,12 24:3
33:16,22 36:16
37:3,10 42:23
43:8 45:23
69:6 70:22
72:13,23 73:9
74:7,11,24
78:10 82:9
91:6,7 96:24
100:24 102:4

**commodity**
76:23
**common** 34:18
**communicate**
22:7 33:10,18
97:10
**communicati...**
101:21
**communicati...**
35:15 117:6
**communicati...**
33:6 35:7
**company** 4:18
12:23 13:1
28:23 46:20
**competing**
58:9
**complaint**
63:11
**complaints**
85:10
**completely**
81:23 82:23
**completeness**
58:8
**completeness's**
113:3
**complexity**
78:20
**complicated**
33:9 55:20
59:8 83:3,5,13
83:14 84:10
85:7 87:3
88:23,24 89:1
89:2

**complications**
63:23
**compliment**
113:19
**complying**
103:1
**compromise**
20:12 86:8
**concept** 87:1
103:8,13
104:12
**conceptually**
87:4
**concerned** 57:2
59:14 65:25
66:18 95:3
**concerns** 34:15
35:4,9 37:4,12
41:1 57:18
74:12 95:25
**concluded**
33:11 117:19
118:12
**condition** 45:2
45:12
**conference**
11:17,19,23
21:6,8,17,24
26:9
**conferences**
11:7
**confess** 48:11
**confession**
17:19
**confidential**
34:20

**confidentiality**
35:9
**confirm** 27:25
30:14 61:9
91:8 103:23
**confirmable**
48:8
**confirmation**
17:5 38:1
39:10,13,13,23
41:2 42:15
46:9,14 47:7,8
47:18,21 48:1
48:4,23 49:11
49:19,24,25
50:7,17 71:6
86:4,9 92:8
95:23 96:17,23
99:12 106:12
106:15,17,20
106:21,21,25
110:22 111:19
111:21,24
114:4,5,16
116:13,14
**confirmed**
76:12 79:22
**confronted**
47:23
**confused** 104:3
106:8
**confusing** 54:5
57:23 58:11
60:17 83:18
**confusion**
101:15

**conheeney** 8:3
**connected**
111:6
**connection** 2:8
2:18 22:22,24
83:9 96:9
100:20 109:15
116:16
**consensus** 37:8
**consent** 17:19
18:2,11 35:12
35:13 45:13
**consequences**
31:4 33:19
36:23 82:22
89:6
**consider** 25:15
48:15 67:11
68:2
**consideration**
37:4 111:8
113:9
**considerations**
112:5
**considered**
103:6
**consistent**
36:12 40:23
61:10
**consists** 23:21
**constituencies**
19:25 20:12
**constituents**
11:18 15:20
**constitute**
111:20

| | | | |
|---|---|---|---|
| **constrictive** 44:25 | **continued** 15:12 | **core** 36:5 | 13:3,9,22 14:1 |
| **constructed** 46:8 | **continuing** 23:24 92:23 | **corporate** 17:10 | 14:7,13,18,25 15:4 16:15,17 |
| **constructive** 19:19 | 93:15 114:3,9 | **correct** 16:22 16:22 39:4 | 17:3,25 18:14 18:21 21:10,25 |
| **consultation** 33:22 | **contract** 76:23 76:24,24 77:5 | 72:15 74:4 | 22:25 23:4,13 |
| **consuming** 29:11 | 107:12 | 117:23 | 23:14 24:4,25 |
| **contact** 34:16 | **contracts** 68:21 107:11 | **correctly** 16:18 | 25:5,10,24 |
| 103:10 104:17 | **contrast** 23:22 | **counsel** 11:13 12:5 14:16,19 | 27:4,8,13 33:2 33:10 34:6,11 |
| **containing** 115:19 | **contribution** 109:6,16 | 23:9,10,19 25:5,24 33:15 | 34:16,22 35:25 36:2,7,22 |
| **contains** 52:4 115:22 | **control** 18:7 | 37:10 54:11 56:7 69:20 | 37:15,19 38:5 38:19,23 39:15 |
| **contemplate** 60:20 | **controls** 23:23 | 74:9,15 76:19 | 39:20 44:3 |
| **contemplated** 64:14 | **convene** 61:15 **convenient** 34:9 | 78:10 89:10 97:5 113:21 | 46:15,17 47:8 47:19 48:11,21 |
| **contemplates** 99:16 | **conversation** 30:1,2 112:8 | **counter** 85:6 **counterclaims** | 49:2,12,17 50:13,21 51:10 |
| **contemplating** 93:2 | **conversations** 28:4 70:17 | 19:15 43:12,13 45:17 | 51:23 54:9 56:1,7,13,18 |
| **contends** 79:14 | **conversely** 73:13 | **country** 120:21 **couple** 11:7 | 56:23 58:2,21 58:22 59:3,10 |
| **content** 84:25 | **conversion** 30:18 | 23:12 27:22 96:18 98:3 | 60:4,24 61:8 62:1,6,8 63:9 |
| **context** 28:4,12 29:1,25 30:20 | **convert** 77:6 **converted** 73:4 | 102:21 108:24 110:25 112:2 | 63:11,17,20 65:7,23 66:9 |
| 31:13,21 47:20 57:1,12,19 | **convey** 25:19 52:11 97:8 | 113:24 **course** 28:3 | 67:5,14,23,25 68:13 69:8,22 |
| 77:25 80:8 | **conveying** 67:8 **convinces** | 30:5 34:18 35:5 42:9,14 | 70:3,12 71:3 72:4 74:21,22 |
| **continuance** 43:6 | 76:19 **coordinate** | 52:1,15 58:19 59:5 63:10 | 75:18 76:7,11 76:15 77:19 |
| **continue** 20:3 43:17 50:8 | 92:11 **copy** 33:24 | 96:22 **court** 1:1,11 | 78:6,11 79:19 79:25 81:6,11 |
| 52:23 114:8,20 117:10 | 103:19 | 11:2,21 12:2,8 12:13,17,22 | 82:19,24 84:13 85:9,15,17,22 |

| | | | **d** |
|---|---|---|---|
| 86:9,10,22 | **covenants** | 61:11 63:3 | |
| 87:6,23,24 | 116:19 | 64:15,23 65:3 | **d**  5:13 11:1 |
| 88:21 89:17,20 | **cover**  35:9 70:5 | 69:3,15 70:6 | 119:1 |
| 89:23 90:1,4 | **covered**  24:15 | 72:19 73:22 | **damage**  63:25 |
| 90:10,12,14,20 | 32:24 111:5 | 74:13,13,23,24 | **damned**  64:21 |
| 91:8,12,20,25 | 112:7 | 75:5 77:22,23 | **danger**  61:13 |
| 92:3,13 93:10 | **create**  40:19 | 79:8 80:5,22 | **dangerous** |
| 93:12,15,16,18 | 46:23 57:7,19 | 82:13,15,16 | 80:9 |
| 93:22 94:5,10 | 64:3,8,19 | 89:13 91:6 | **daniel**  7:25 |
| 94:14,17 95:9 | **created**  104:7 | 96:10 102:5 | **dante**  7:14 |
| 95:18,22 96:6 | **creates**  73:5 | 117:10 | 15:2 |
| 96:14,20 97:8 | **creating**  59:15 | **crept**  102:12 | **dark**  26:10 |
| 97:9,21 98:2,7 | **credible**  117:8 | **criste**  8:21 | **darren**  6:21 |
| 98:10,13,18,20 | **creditor**  20:8 | **critically**  80:21 | 14:15 23:8 |
| 98:23 99:4,11 | 30:8 33:8 | **cross**  65:8,17 | 69:25 |
| 99:15,17,18,20 | 35:11 37:13 | 66:1,20 68:19 | **data**  73:21 |
| 100:2,2,5,7,18 | 45:4 58:3 | 111:11,13 | **date**  44:14 46:2 |
| 101:6 102:3,10 | 59:16 70:9,9 | **crypto**  2:4 6:17 | 55:13 58:25 |
| 102:17 104:1,9 | 72:22 86:16 | 20:13 24:2 | 59:6 60:22 |
| 104:12,23 | 99:23 101:22 | 25:7 68:15 | 62:21,22 68:21 |
| 105:19 106:22 | **creditor's**  18:6 | 70:3,6 72:19 | 69:9 72:24 |
| 107:8,20 | 35:13 | 73:20 74:5 | 73:6,25 74:1 |
| 108:11,15,17 | **creditors**  2:4 | 79:8 80:4,15 | 74:21 75:9,12 |
| 108:18,19 | 4:11 6:17 | 80:21 82:15,16 | 76:1,2 78:24 |
| 109:13,19 | 15:23 16:6 | 86:17 87:9,16 | 79:5,12 87:16 |
| 110:7,23 111:2 | 20:16 24:3 | **cryptocurrency** | 91:22,25 92:6 |
| 111:5,13,17 | 25:7 28:10 | 36:13 112:11 | 98:24 99:6 |
| 112:21 113:2,6 | 29:9 33:6,13 | **cue**  38:9 | 107:13,16 |
| 114:18,23 | 34:17 35:6,20 | **currency**  5:9 | 108:3 120:25 |
| 115:12 116:15 | 36:16 40:10,12 | 13:20 76:25,25 | **dates**  2:9,18 |
| 116:23 117:16 | 40:16 41:6,11 | **current**  77:7 | 91:4 92:14,14 |
| 117:21,24 | 41:14,17 42:2 | **currently** | 98:20 99:5 |
| 118:2,4,11 | 42:11,23 44:16 | 20:25 44:23 | 102:22,23 |
| **courtroom** | 45:3,11 51:8 | 46:6 55:8,9 | 103:3,3 |
| 13:15,17,23 | 52:6,11 53:4 | 75:25 | **daucher**  8:4 |
| 14:2 22:3,13 | 54:21 55:11,11 | **cut**  24:4 90:21 | **david**  9:23 |
| 23:7 | 56:5 60:6,10 | 90:25 | 10:11 |

**day** 94:1,2,6
  105:15 106:5
**days** 41:23
  45:25 99:8,13
  102:20 106:14
  106:20 107:1,4
  116:13
**dcg** 17:10 20:1
  20:2
**deadline** 45:25
  81:13 92:20,25
  93:19 95:6,8
  99:8 106:12,18
  106:20,25
**deadline's**
  93:24,25
**deadlines**
  94:11,13 99:12
**deal** 16:24 20:4
  72:5 115:4
**dealer** 42:2
**dealing** 52:7
  89:7 109:7
**deals** 103:24
**deandra** 9:20
**dear** 36:7
**debate** 63:20
  75:4 88:13
**debtor** 28:8
  48:2 55:1 58:1
  65:4 72:24
  77:5 110:1
**debtor's** 11:13
  12:5 30:5,25
  55:21 62:18
  63:1 97:5

**debtors** 1:8 2:5
  3:4 11:16 12:7
  15:15 17:2
  19:18 22:21
  24:18 30:19
  32:24 33:20
  34:13 35:20
  37:21 38:6
  39:24 40:20
  42:20,22 43:7
  43:10,24 44:23
  45:6,17,22
  46:6,22 70:18
  73:15 76:15
  77:4 81:24
  83:7 84:8 91:6
  96:24 98:25
  100:24 101:7
  107:9,15
  108:10,17,18
  110:18 111:23
  112:5 114:8,9
  115:2 116:8
  117:8
**december** 92:6
  93:8 120:25
**decide** 29:22
  32:10 61:23
  92:19
**decided** 82:19
  117:6
**decision** 32:6,7
  33:12 82:20
  86:4
**decisions** 105:8
**decrease** 53:4

**decreased** 39:5
**deep** 46:4
**default** 32:18
**defaults** 17:23
  17:24
**defective** 103:7
  103:16,18,20
**defenses** 43:13
**deficiencies**
  103:12
**deficiency**
  55:11,14,15
  57:24,25 58:6
  59:1,7 60:23
  61:1
**deficient**
  103:11,16
**defined** 41:7
  110:2,3,5
**definitions**
  45:22
**delete** 100:5
**deliberation**
  22:2
**delivery**
  103:19
**denominated**
  4:10
**department**
  5:16
**depending**
  60:11 66:12
  73:11 76:25
  90:19 92:9
**deposit** 72:25
  73:1,1,11 77:1

**deposition**
  108:10
**derar** 8:7
**describe** 24:10
  34:3 42:17
  54:7 74:6
  87:20
**described** 41:3
  41:22 42:13
  54:11 63:7
  64:16 67:9,9
  69:5
**describing**
  42:5 74:14
**description**
  44:9 65:9,10
  66:16 78:4
  85:4 87:13
**designed** 82:12
**desire** 46:4
**despite** 44:19
**details** 85:5
  92:14
**determination**
  43:10
**determine**
  73:23,23 76:15
  79:10
**determined**
  69:11
**developed**
  109:7
**devolve** 109:5
**dgc** 57:15
**dial** 11:24
  21:14 26:6

dialogue
110:20 113:11
diers   4:23 13:2
difference
108:8
different   16:25
19:12 55:3,20
55:23,25 56:3
58:1,9 59:13
61:21 66:13
68:15 70:5
71:8,8,15,22
73:10 75:17
79:12 83:4,15
84:4 87:12
92:20 95:10
100:15
differently
49:5
difficult   44:5
50:14 79:10,14
digital   5:9 7:10
13:20 15:3
20:10 40:15
41:7 52:8,12
86:2
directed   101:7
dirty   24:13
disadvantage
117:9
disagree   19:20
82:7,18
disagreement
87:14
disagreements
73:19

disallowed
107:23
disclose   39:25
51:7 77:21
disclosed   72:16
115:25
disclosure   2:6
2:9,14,16,23
15:12,18,21
16:4,12,20
22:22 23:15
24:11,17 25:14
38:12 39:16,17
40:23 43:1
44:9 46:13
47:2,12,15,16
47:23 48:9,22
49:1,13,15,22
50:1,5 51:3
52:3,4,9 53:8
53:11,19,24,24
54:2 56:12
60:19 61:9
62:2,4 70:8
76:6 77:25
79:24 81:14,15
81:17 82:21
83:6,23 88:4
91:23 94:22
95:5,10 96:14
99:9 102:1
105:22 110:4
111:6 114:3,12
114:12 115:13
115:19 116:2,5
disclosures
51:20 53:6,11

54:14 62:11
75:21 77:2,11
discovery   91:9
108:5
discussed
26:17 27:17,18
42:7
discussing   94:8
discussion   17:7
18:4 24:18
27:16,21,24
53:6 75:3
90:22 109:22
discussions
16:1 20:4 33:5
38:17 39:8
40:13 82:17
86:3 88:10
114:7,8
dismiss   19:16
disparate   31:9
dispassionate
32:5
dispassionat...
29:17
dispute   20:9
29:20 44:21
46:10 58:19,20
67:7 71:9 78:2
disputed   62:13
disputes   29:22
29:23 46:7
108:9
disregard
81:23
disservice
89:12

distinct   65:4
distinctions
73:19
distribute
41:10,14 61:4
61:5 101:7
distributed
41:17 55:10
distribution
20:6,7,11 28:3
40:4 41:3,22
44:15 45:10
55:13 63:5
75:10 76:3
77:9 79:6
84:10,15 85:21
86:6 88:11
97:12 100:11
100:14 112:3
113:12 114:6
114:10,13
116:3
distributions
31:3 40:4,10
40:15 41:5
42:2 44:15,18
45:3,5,8 62:14
62:25 63:2
80:24 81:2,4
112:6
district   1:2
diyanno   8:5
dna   96:3
doc   2:1,14,21
docket   17:12
34:24 71:5

[document - equivalent]                                                Page 13

document   2:12
  54:23 56:19
  57:20,22,23
  58:7 59:15
  64:3,8,19
  66:22 67:10
  98:15
documents
  57:19 58:9
  60:8 94:24
  101:25
doing   21:19
  25:11 53:20
  59:21 61:13
  64:23 72:4,11
  81:25 84:12
  103:16 104:14
  109:9 112:16
  113:20
dollar   4:10
  12:18,21 20:10
  20:13 68:15
  73:19 77:8,8
dollarized
  77:17
dollars   31:6
  70:10 73:5
  74:25 75:5
  77:9 80:17
  87:3
double   94:14
  103:2
doubt   100:23
downside
  28:25
draft   33:21
  43:8 76:10

drafted   86:6
drafting   76:9
draw   36:11
  109:3
drawing   76:14
drew   6:6 14:5
  14:5 51:8 54:6
  54:9,10 56:4
  56:25 57:21
  58:14 59:1
  60:1,20 62:16
  63:11,13 65:1
  66:11,15,25
  67:4,9,23,24
drew's   51:21
drill   115:5
drills   115:7
driven   20:8
due   80:19,25
  106:17
dyer   9:18

**e**

e   1:21,21 3:1,1
  11:1,1 56:11
  56:22 98:21
  119:1 120:1
earlier   43:5
  65:2 78:21
  82:21 86:18
  88:22 113:11
early   61:15
earn   55:10
  56:5
earnest   29:11
earth   106:4
east   6:10

easy   31:20 76:6
  76:9 117:12
economic
  74:17
ecro   1:25
educate   36:20
educating
  61:11
effect   105:16
effective   44:14
  73:25 107:13
  107:16
effectively
  20:10
effectiveness
  45:3
efficiency   55:1
efficient   25:22
effort   26:22
efforts   22:22
  103:11 115:9
  116:4 118:7
either   19:19
  28:12 34:7,23
  37:2 60:7
  73:25 74:1
  76:23 91:14
electronic
  101:9,10,20,21
electronically
  101:13,25
electronics
  22:8
eleven   4:3
elizabeth   7:23
eloquently
  67:20

email   34:24
  103:19
embodied
  75:13
embodies   79:3
emery   6:16
  14:16 23:9
emotion   28:16
emotional
  28:21
emphatically
  19:3
encapsulate
  84:3
encourage
  26:20 29:15
  32:4,16 61:14
  108:12 109:3
encouraging
  108:9
ended   94:25
  116:1
endlessly   26:16
ensures   45:4
enter   17:20
  18:2 37:20
entered   37:25
entire   44:19
  117:1
entitled   52:10
  79:15
entries   51:17
entry   17:18,18
  99:9,13 111:19
equivalent
  63:2

eria  7:18
eric  8:4
erin  4:23 13:1
errand  84:3
especially  46:5
essentially
  79:6 86:23
  87:15 103:4,18
  112:7 113:11
established
  115:15
estate  44:17
estates  63:1
estimate  41:18
estimation
  107:22
et  1:7 2:11
  101:8,8
eth  41:6,8,10
  41:11 42:1
  68:11
ethereum
  23:21,24 73:1
  75:6
etkin  8:6
evelyn  8:17
event  18:10
  43:19 60:21
  62:18 80:25
events  103:4
everybody
  18:24 21:16
  27:14 29:15
  31:9 74:21
  83:4,19 84:1
  84:16 89:13
  91:5 100:12

104:10
everybody's
  26:14 118:7
everyone's
  39:12
exact  80:20
  86:17
exactly  19:9
  21:13,22 36:1
  40:18 51:24
example  36:15
  55:5 77:4 95:7
exceedingly
  81:12
excellent  18:3
  33:1 100:8
except  29:24
exception
  98:25
excess  41:15,16
exchange  6:8
  14:11 111:8
  112:24 113:24
excluded  103:7
exclusivity
  2:22 90:9 98:1
  116:9,13,16
  117:2 119:6
exculpated
  96:16
exculpations
  96:13
executed  23:2
execution
  17:22 116:19
executory
  107:12

exercised
  92:18
exercising
  17:22
exhaust  32:16
exhibit  52:9,11
  53:2 56:11,22
  107:10
exhibits  52:5
existing  57:19
  60:8 64:3
expand  36:2
  39:15
expect  41:5
  42:11 67:5
  114:8
expedite  46:10
expense  31:1
expenses
  100:20 108:24
expensive
  29:10 32:7
expert  32:5
experts  31:24
expiration
  90:24
explain  58:15
  87:15
explains
  110:19
express  37:1
  55:20 81:9
expressed
  34:15 96:15
extend  2:22
  116:12,16

extended
  102:25 116:10
extension  90:9
  116:9,22 117:2
  119:5
extensive  53:6
  115:14
extensively
  91:19
extent  11:10
  26:1 28:9 29:3
  29:6 40:11
  47:10 66:17,23
  96:9 104:22,25
  113:12
extra  26:22
  102:12
eyed  29:16
  36:21

**f**

f  1:21 8:22
  120:1
fabsik  9:19
face  58:2
faced  53:23
facing  57:6
fact  37:16
  73:14 81:14
facts  28:6
  31:12 32:11
  115:18
fail  43:19
failed  32:21
fair  16:9 50:13
  77:15 82:23
  90:4

| | | | |
|---|---|---|---|
| **fairly** 31:14 | 107:4 | 82:25 84:19,24 | **flag** 56:14 97:2 |
| 115:14 | **figured** 91:20 | 102:25 110:4 | 109:20 112:19 |
| **fairness** 78:11 | **fike** 9:20 | **finding** 113:1 | 113:8 |
| 78:12 | **file** 18:8 48:6 | **findings** 97:16 | **flagged** 56:14 |
| **faith** 43:8 | 62:5 77:13 | **fine** 21:15 | 112:9 |
| **fall** 86:14 | 82:2 91:21 | 22:17 26:3 | **flags** 56:13 |
| **fallen** 56:14 | 100:3 109:4 | 58:8 68:25 | **float** 73:11 |
| **familiar** 96:5 | **filed** 15:18 | 69:5 78:1 79:2 | **floating** 74:22 |
| **far** 69:7 87:13 | 17:12 18:12,19 | 80:13 84:13 | 75:12 77:17 |
| **fare** 30:22 | 19:6,6,9,11,22 | 94:15 98:10,11 | **floor** 69:23 |
| **faster** 21:19 | 20:6,23 24:17 | 102:21 104:23 | **fluctuate** 52:8 |
| **favor** 76:7,11 | 25:13 34:21 | 104:23,25 | 52:23 |
| **favors** 64:24 | 35:12,15 38:13 | 105:2 | **fluctuations** |
| **february** 92:8 | 38:14 43:11,12 | **finish** 81:16 | 52:12 |
| 93:22 | 48:2 50:25 | 91:1 110:14 | **focus** 27:23 |
| **federal** 29:13 | 51:2 52:9 | **fire** 115:5,7 | 48:19 |
| **feedback** 37:11 | 54:12 68:6 | **firm** 95:6 | **focused** 40:10 |
| **feel** 26:15 | 70:7 81:16 | **first** 13:15,17 | **folks** 13:5,12 |
| 32:17 36:24 | 84:1 88:3 | 15:18 19:14 | 13:13 14:3 |
| 66:19 71:14 | 97:17 98:15 | 22:11,13 25:14 | 26:20 28:8 |
| 110:13 | 99:18 106:12 | 32:3 33:21 | 32:4 33:4 37:6 |
| **fees** 24:7 | 106:16,23 | 40:9 50:25 | 40:7 60:6 |
| 100:19,25 | 115:16 | 52:19,21 58:19 | 66:14 68:15 |
| 101:3 108:24 | **filing** 2:22 16:3 | 59:12 62:15 | 78:17 104:13 |
| **felipe** 10:9 | 18:4,25 94:23 | 63:19 65:14 | 105:22 108:12 |
| **ferry** 6:10 | 99:21 105:11 | 68:17 72:14,17 | 108:22,25 |
| **fiat** 23:22 70:3 | 105:11,13 | 74:5 75:23 | 109:4,6 113:13 |
| **fiduciaries** | 106:10 | 76:11 78:1 | 113:20 |
| 96:16,16 | **filings** 95:4 | 79:1 105:20 | **follow** 97:6 |
| **field** 22:4 | **final** 43:15 | 107:14 | **following** 33:4 |
| **fifth** 5:10 | 103:7 | **fit** 47:14 | 44:10,14 97:15 |
| **fighting** 87:8,8 | **finalize** 24:19 | **five** 51:17 | 97:16,16 |
| 87:10 | **financial** 55:22 | 55:24 107:1 | 102:20 |
| **figure** 21:6 | **find** 18:4 37:2 | **fix** 104:17 | **fool's** 84:3 |
| 29:7 32:1 | 56:8 58:21,23 | **fixable** 97:19 | **footnote** 64:13 |
| 64:24 65:12 | 59:4 63:16,18 | **fixed** 60:22 | 84:23 |
| 89:5 90:13 | 64:1,20 71:23 | 73:6 | |

**footnotes** 53:2
57:13
**forces** 61:18
**forebear** 17:21
**foreclosed**
19:14 45:15
**foreclosure**
55:7 58:18,18
58:20,22,23,25
59:3,4,13
60:21,22 62:22
64:6 65:10
**foregoing**
120:3
**forget** 11:3
**forgive** 36:4
74:9
**forgot** 71:4
**form** 20:23
30:17 31:15
37:23 62:12
75:7 103:14
117:9
**formed** 20:19
23:9,25
**forms** 2:7,17
27:22
**forth** 69:3 71:1
82:11,18 98:24
**forward** 11:14
29:10 42:12
46:24 47:1
51:18 76:23
109:23 114:21
115:23 118:8
**forward's** 77:5

**found** 33:12
64:22 88:18
**foundry** 7:10
15:3
**four** 51:16
55:24 107:1
**frame** 72:14,19
**framed** 75:20
**framing** 72:17
**francisco** 9:9
**frankly** 48:15
60:5 68:16
70:20 78:20
81:22 96:15
**freed** 47:11
**frelinghuysen**
4:22 12:24,25
46:18,19 47:16
48:5,18,24
49:3,15 50:11
50:19
**friday** 93:3
**front** 31:16
75:18 77:18
82:10 96:1,25
97:3 109:8,21
110:17,21
112:16 113:17
114:25 116:2
**full** 17:16
26:24 45:18,18
61:8 65:10
78:17 84:1,20
109:7
**fully** 51:5
**fundamental**
66:7

**fundamentally**
96:3 97:12
**furqaan** 5:14
13:20
**further** 39:5
66:2 79:10
110:24
**furtherance**
18:10
**future** 21:11
**fv** 2:18

**g**

**g** 11:1 107:21
**ga** 6:11
**gabe** 9:5
**gain** 82:15
**gallagher** 9:21
**game** 87:20
**gbtc** 19:17 42:1
43:4,24 44:21
44:22,22 45:5
45:7,9,14,14
46:6 52:20
53:16 55:8
58:24 59:4
61:2 62:20,21
62:23 63:6
**geez** 112:11
**gemini** 4:18
12:22 13:1
16:8,10 17:2
19:12,15,18,19
20:1,2 28:8
38:22 42:18,22
42:25 43:1,7,9
43:11,24 44:3
44:14,18 45:8

45:14,15,23
46:4,12,17,19
46:20,21 48:4
48:20 49:3,3,5
49:6 51:1,8
52:14,16,17
53:2,7,10,16
54:18,21 55:2
55:8,10 56:5
57:15 58:17
59:11,19 60:13
61:2,4,23
62:10,13,19,19
62:20,21,23,24
62:25 63:4,5,6
64:5 100:12,14
100:19 102:18
102:19 103:24
104:8,8,14,20
**gemini's** 44:19
44:24 45:13
100:25 102:20
**gemma** 10:18
**general** 28:7
29:4 37:8 39:7
44:16 45:11
51:7 72:22
76:24 89:8
110:19
**general's** 29:3
**generally**
94:23 109:14
**genesis** 1:7 2:4
2:10 4:2 6:17
11:5 14:16
20:18,20 43:12
60:12,13

getting   25:8
   28:20 47:25
   65:5 69:1
   70:23 86:23
   87:4 88:12
   97:13 102:6
   110:17
ggc   15:24
gist   86:23
give   23:18
   24:13 26:23
   27:18,19 37:1
   56:16,25 57:5
   62:6 78:6
   90:20 97:7
   108:15
given   52:7 64:4
   91:22 94:7
   99:22,22 114:1
giving   11:8
   30:24 81:19
glad   112:9
glance   32:4
glean   57:10
glen   8:12
glenn   112:10
global   1:7 2:11
   19:24 31:13
   47:14
go   12:3 21:21
   23:19 25:5
   26:13,22 28:20
   29:9 32:2 36:5
   38:16 42:24
   44:11 47:1
   48:12 49:2
   51:18,19 64:11

65:22 66:2
67:3 68:23
73:15 75:15
76:13,18 90:13
98:3 105:20
106:10 114:20
goal   19:23 41:4
   41:9 42:4
   113:8
goes   61:21,23
   73:12,12 74:6
   81:20 91:25
going   13:14
   16:10 17:6
   20:3 21:8 25:2
   25:11,16 26:5
   26:5,13,25
   42:11 46:24
   47:18 48:13
   49:17 51:21
   60:6 65:3
   66:23 69:25
   70:4,24 71:1
   72:5,7 74:15
   75:8,10,11
   76:6,9 77:12
   77:24 80:22
   83:17,17,18
   85:5 87:13,23
   89:3 90:1,7,13
   92:3 93:5 94:1
   100:8,19
   101:14 110:23
   111:22
gold   96:11
goldberg   7:7
   14:24

good   11:2,15
   12:11,13,15,19
   12:22,24 13:3
   13:6,9,18,22
   13:25 14:1,7,9
   14:13,15,18,21
   14:25 15:2,4
   23:13 27:2,13
   27:15 32:13,19
   34:10,11 43:8
   46:18 65:24
   67:3 69:24
   70:21 84:7
   90:23,25 91:12
   94:13 109:24
   111:8 113:22
   113:25 118:7
gorrepati   9:22
gotshal   5:8
   13:19
gotten   88:3
   115:6
gottlieb   3:3
   11:16 15:15
   32:24 34:12
   42:20 116:8
governmental
   40:25
gptc   19:14,17
   19:18
grab   34:8
granted   117:13
great   56:24
   98:19 111:17
greater   29:1
   79:15 107:25

green   21:9
greg   13:24
   94:20
gregory   5:21
   8:22
grenades   89:11
ground   38:25
grounds   46:14
group   2:5 4:2
   4:10 5:9 6:17
   11:25 12:14,16
   12:18,21 13:20
   14:17 15:24
   16:5 18:6
   20:15,19,20,22
   22:19 23:1,21
   23:23,24,25
   25:7 37:3
   38:14 42:23
   43:7 45:24
   46:22 51:1
   68:5,7,11,14
   69:6 70:2,22
   75:16 79:8,14
   80:5,12 82:9
   82:16 116:18
groups   25:9
   33:16 37:13,22
   108:24
grow   23:24
guess   15:18
   21:7 47:13
   49:17 57:11
   71:10 84:3
   90:16 99:19
   101:11,18

guiding  95:14
gun  64:21

**h**

h  1:22
half  107:11,14
hall  26:16
hamilton  3:3
  34:13
hand  41:13,16
  103:19 113:19
handful  39:5
handle  29:8
  33:22 84:8
handled  36:13
happen  28:4
  49:4 63:7
  76:13 80:8
  84:18 95:19
happened  69:1
  74:8 75:2
  78:18
happening
  18:24,25 77:11
happens  34:25
  53:15,17 76:5
  76:7,14
happy  11:9
  15:8 16:1
  20:14 21:4
  23:2,5 29:19
  34:3,4 37:9,13
  37:14 61:15
  67:11,12 78:16
  84:17 88:10
  90:11 108:6
  111:16 113:21
  115:18 117:1

harbor  68:21
harbors  68:18
hard  16:11
  64:19 89:5
  90:24 91:16
  102:22 103:3
  103:19 116:4
harder  63:18
  64:1
harmonize
  64:25
hartman  9:23
hat  105:1,2
hatch  9:24
head  64:21
hear  11:13
  15:8 16:23
  48:16 69:18
  72:9 113:21
heard  15:9
  33:15 38:2
  40:4 42:8
  65:14 73:10
  74:7,24 75:5
  81:21 85:25
  107:18 109:11
  116:16,24
hearing  2:1,4
  2:14,21 13:14
  15:12,17 18:17
  20:20 23:15
  24:19 25:14
  38:7,12,24
  39:23 43:6,16
  47:9,21 49:20
  49:25 50:10
  51:13 68:9

70:17 74:13
  81:15 82:11,21
  83:3 91:23
  92:8,22 93:8
  93:23,24 95:12
  95:23 96:23
  99:12,16
  105:23 106:15
  106:21 115:15
  115:15,17,17
  116:11,13,14
  116:25 117:4,4
  118:1
hearings  11:8
  21:12 34:15
  47:24
heart's  84:25
heaven  106:4
held  55:8
help  43:19 60:4
helpful  29:21
  110:16,25
  111:14 112:16
helping  46:10
high  85:4 88:6
higher  80:5
highlighting
  32:22
highlights
  37:16
hijack  83:6
hired  24:1
history  47:1
  78:19,20
hit  80:22
hoc  2:4 4:2,10
  6:17 12:14,16

12:18,20 14:17
  15:23 16:5
  18:6 20:15,19
  20:20,22 22:19
  23:1,10 25:9
  33:16 37:3
  42:22 43:7
  45:23 46:22
  69:6 70:22
  80:12 82:8
  91:6 116:18
hold  19:18
  20:25 36:7
  44:23 46:6
  90:12,20 92:13
  108:15
holdco  1:7 2:11
holder  80:16
holders  23:21
  70:3 73:10,20
  73:20 74:5
  101:9
holding  61:2
  68:11 74:24
  75:5
holds  45:15
hon  1:22
honor  12:12,15
  12:19,24 13:6
  13:18 14:5,9
  14:15,21 15:2
  15:14 16:23
  17:18 19:5
  20:6 21:2
  22:18 23:3,8
  23:11,20 24:1
  24:23 25:4,6

32:23 34:3,14
35:10 37:9,14
38:8,15 39:4
40:2 42:16,19
46:2,3,18
48:18 50:20,23
51:25 52:15
53:21 54:10
56:11,21 57:21
58:13 59:24
60:18 61:25
62:9 63:13
65:1,20 66:6
67:4,24 68:4
69:5 70:2
72:12 80:11,13
82:15,23 84:6
85:20 87:19
88:14,16 90:5
90:11 91:3,18
94:4,12,20,21
95:20 96:4,13
96:18 97:4,20
97:25 98:8,22
101:5 102:15
104:18 108:13
109:11 111:1
112:19 113:22
114:6,22 116:7
116:10,17
117:14,19
118:10
**honor's** 18:11
43:19 46:9
75:14 92:9
**hoo** 8:10

**hop** 27:11
**hope** 24:23
**hopeful** 11:23
**hoping** 11:24
24:15
**horwood** 7:9
**hubbard** 4:17
12:25 46:19
**huge** 73:17
89:12
**hughes** 4:17
12:25 46:19
**humor** 27:2,15
118:7
**hundred** 55:18
**hundreds**
70:10
**hyde** 2:25
120:3,8

**i**

**ian** 7:18
**idea** 26:7,11,21
33:11 37:7,20
52:25 68:14,20
87:7 92:24
100:8 101:14
111:14
**identified** 13:5
51:14 69:9
71:21 79:4
**identify** 35:19
35:22 69:14
104:19
**identifying**
33:13 59:21
71:13 95:24

**identity** 35:15
36:17
**ii** 2:6,16
**iii** 2:7,17
**il** 7:12
**ilk** 83:23
**illuminate**
110:24
**illustrating**
57:22
**illustrative**
52:10 56:9
57:13 58:3,5
59:11,18 66:4
66:18 67:2
**imagine** 46:3
49:21 101:16
101:23
**immediately**
68:17 80:25
81:3
**impact** 29:2
52:12 53:4
59:6 61:22
66:14 69:2,2
69:15 70:9
71:9,10,18
79:8,9 80:1,2
83:13 86:4,5
86:12,24 87:14
**impacts** 84:21
**impair** 50:5
**impasse** 83:3
**implicated**
86:15
**implicates**
64:16

**implications**
82:6,8 83:16
**import** 16:18
103:13
**importance**
65:15
**important**
18:23 21:16
28:15,17 31:10
31:19 35:18,21
36:6 78:13
80:15,15,21
87:18,21 90:22
112:10 115:23
**imposing**
90:14
**imposition**
80:18
**impossible**
76:10 102:25
**improperly**
117:9
**inappropriate**
58:15
**inclination**
54:23
**inclined** 57:6
60:6 83:7
**include** 30:20
39:17 53:23,24
54:24 58:15
60:1 78:16
80:17 82:9
110:17
**included** 21:16
21:17 59:25

**includes** 28:6
44:9 54:25
80:3
**including**
19:12 40:14
42:7 43:2 68:9
68:16 80:17
105:22 116:3
**incomplete**
76:1 78:25
103:10
**incorporate**
57:18
**indicate** 44:2
**indiscernible**
94:21 114:2
**indiscriminate**
31:5
**individual** 33:6
33:10 51:14
74:13
**individually**
33:5,15
**individuals**
34:16
**inform** 35:25
36:1
**informal** 21:18
**informally**
21:19,20 26:7
**information**
2:6,15 29:17
32:5 33:8,13
33:13 34:20
36:10 39:18
40:1 50:3,3
59:16 60:15,17

71:22 101:24
106:5 110:9
115:20,22
**informed** 32:7
88:23 89:5
**inherent** 18:7
**initial** 43:6
70:18
**input** 35:5
**insiders** 48:20
49:3,4,6
**instrument**
32:10
**insurance**
28:22
**integral** 115:25
**intelligent**
29:18
**intend** 40:6,18
40:22 41:12
71:6 112:8
**intended**
113:13
**intense** 20:8
**intent** 26:17
**intentions** 40:8
**intercreditor**
20:9
**interest** 44:24
61:8 110:9
115:6
**interested**
25:21 96:24
**international**
6:2 14:6 51:15
**internet** 106:5

**interrupt** 35:3
63:9
**introduce**
23:12
**investors** 28:10
29:7,8
**invite** 113:11
**invited** 112:8
**invoke** 68:20
90:1
**involve** 30:17
109:15
**involved** 29:15
29:20 37:22
88:1 89:13
**involves** 31:1,2
**involving** 30:7
**iq** 110:14
**ironically**
73:21
**irrelevant** 81:3
**islim** 8:7
**ismail** 8:8
**issue** 11:22
15:5 31:13
32:12 38:4
60:3,19 64:6
66:6 68:2 69:1
69:9,11,14
70:8 72:8,10
72:14,15,17,20
73:18,20 74:3
74:12,14,14
75:4,12,18,19
76:3 77:3,14
77:16,22,24
81:7 85:14,16

85:19 86:7
87:18 96:17
97:15 98:1
101:17 104:18
109:20 110:21
110:24 112:9
113:8 114:13
114:15 115:1
**issued** 33:8
**issues** 16:9
17:4 28:9,22
29:17 31:10
39:10 42:12
44:4,7 47:17
48:6,7 51:14
53:19 57:16
59:9 62:13
64:17 65:11
68:21 74:16,16
74:18 77:19
83:9 84:10
86:1 88:24
89:2 94:7
96:22 97:5
107:5 108:22
109:5,8 110:23
112:14 113:12
113:14 114:2,4
114:18 115:4
117:11
**it'll** 94:21
108:7
**item** 48:19
**items** 90:18
**iv** 2:8 110:10

**j**

**j** 3:16 7:7 8:17
  10:13
**jack** 10:4
**jade** 9:18
**jamal** 8:9
**james** 6:6 14:5
**jan** 3:9 12:6
  34:12
**january** 92:21
  92:23 93:15
**jason** 9:3
**jeffrey** 5:13
  7:24 8:15
  13:19
**job** 32:14
  72:11
**joe** 9:1
**john** 8:20
**join** 23:17
**joined** 13:1
  14:23 74:9
**joining** 23:16
**joint** 2:10 7:2
  14:22
**joke** 18:22
**jonathan** 10:7
**jordan** 4:7
  12:16
**judge** 1:23
  28:19 63:19
  112:10 115:1
**judges** 11:3
  47:23 114:25
**judgment**
  17:19,19,22
  18:2,11

**jump** 23:19
**jumped** 24:25
**jumping** 26:22
**jurors** 22:6
**jury** 22:1,4,5
  28:20
**justice** 5:16
**justification**
  18:25

**k**

**kate** 10:17
**katie** 10:8
**keep** 24:8
  25:21,23 26:17
  26:21 31:10,25
  33:12 82:4
  100:14 110:15
**kennedy** 9:18
**kenneth** 7:19
**key** 29:18
  40:22 44:10
  86:6 91:4
**kicks** 101:18
**kim** 8:10
**kind** 16:13
  20:1 28:1
  30:12 31:3
  40:10 41:4,4,9
  44:11,11 62:12
  62:15 71:24
  77:9 85:25
  96:11 103:18
  110:22 112:6,6
**kinds** 30:7
  36:10
**klein** 8:11

**kme** 20:21
**know** 11:6
  13:11 21:3
  22:8 26:14
  27:10,11 32:7
  32:8 34:6
  37:12,16 40:7
  42:11,13 47:22
  48:2,13 50:13
  51:11 52:22
  54:1 55:4,6,23
  55:24 57:3
  59:19 61:4,11
  62:12 63:19
  66:7,8 67:7,17
  68:13 71:19,23
  73:24 74:20
  80:22 82:1,19
  82:24,25 83:22
  84:11,16 87:6
  87:7 89:1
  91:12 92:10,11
  92:20 93:1,16
  93:19 96:6
  97:13 100:21
  100:23 101:1
  102:1 106:16
  107:17 108:7
  108:25 109:2,9
  110:22,23
  113:9,16 115:7
  116:5
**known** 55:23
**knows** 70:3
  111:14
**kratochvil** 8:12

**kroll** 102:19
  104:7
**kyle** 10:5

**l**

**labored** 81:11
**lack** 88:6
**laid** 53:8
**lane** 1:22
**language** 16:12
  24:19,21 43:20
  44:4,5 46:22
  48:8 53:1,14
  60:19 61:17,18
  61:25 62:15
  63:16,18 64:4
  68:8 69:17
  70:19 71:4
  72:2,7 82:10
  83:22 90:6
  99:1 102:9
  105:3,16
  112:25
**large** 38:24
  54:17
**largely** 66:21
  72:18 75:17
**late** 68:6 72:18
  81:12 87:20
**latest** 95:2
**latham** 7:1
  14:22
**law** 32:11
  105:6 115:21
**lawsuit** 28:6
  29:2 44:24
**lawsuits** 19:12
  19:16 46:4

**lawyer** 83:19
113:7
**lawyers** 100:10
**lay** 35:24 40:6
40:21 51:22
52:24 55:22
57:15
**layperson's**
44:12
**lead** 5:2 13:4,8
**learned** 76:8
**lease** 107:12
**leash** 81:19
**leave** 65:12
88:6 89:14,17
103:1
**leaves** 16:18
68:4 94:1
**led** 24:2 78:19
88:10
**ledanski** 2:25
120:3,8
**left** 26:8,10
39:3 51:23
82:16
**legal** 31:10,12
32:12 43:23,25
44:7 69:9,10
69:14 74:17
88:7 112:4
120:20
**legalistically**
44:13
**legge** 9:25
**lender** 44:18
62:10

**lenders** 4:2
12:18,21 15:24
20:10,11,13,13
43:2,9 44:14
45:8 46:20
49:4 51:1,8
52:18 57:25
61:4 62:24,25
63:4 100:13,14
103:24 104:8
104:20
**lending** 104:14
**length** 62:10
**lengthy** 81:15
**lenox** 10:1
**leto** 8:13
**letter** 34:24
35:9,10 36:23
**letters** 34:17
34:21 100:13
**levander** 10:2
**level** 85:4
**levels** 18:15
**liability** 80:23
**liberty** 3:5
**life** 29:12 37:18
88:20
**light** 19:1
**likelihood**
28:24
**likely** 65:3
79:15 90:15
108:20
**limit** 69:4
**limitation**
80:18

**limited** 18:1
38:14 58:5
68:6,8,16
**line** 26:20,21
26:25 36:11
113:5,18 119:4
**lines** 106:16
**linguistic**
98:24 99:7
**link** 84:24
**links** 102:1
**lips** 14:19
**liquidate** 30:14
**liquidated**
30:21
**liquidation**
30:9,18,20,25
31:8,15,16
61:9
**liquidators** 7:2
14:22
**list** 50:12 86:14
97:24 111:25
**listen** 13:12
21:15 88:21
**listening** 74:12
78:23
**litigate** 17:4,5
17:5 36:18
**litigated** 85:1
86:3
**litigating** 16:10
71:12
**litigation** 16:21
18:8 19:21
27:24,25 28:1
28:2,4,12,18

28:24 29:10,11
30:13 32:7,17
52:16 54:18
55:4 59:8
60:11 61:20,20
64:15 66:13
67:19 79:10
83:11,12 84:21
**litigations**
16:13 17:1
43:5 46:24
**litigator** 29:13
29:13
**little** 17:15
20:25 21:23
47:13 66:24
79:18 81:19
92:19 95:10
100:9 106:8
111:18
**livingston** 5:3
**llc** 1:7 2:11
4:18 6:2 7:10
13:1 14:6 15:3
**lloyds** 28:23
**llp** 3:3,11 4:1,9
4:17 5:1,8
**loan** 72:24 74:1
76:23,24
**loathe** 58:9
**location** 68:25
**london** 28:23
**long** 11:20 25:3
29:9,20 42:23
63:21 66:1
67:13 81:13
84:23 110:11

| | | | |
|---|---|---|---|
| **longer** 25:2 | **lowenstein** 5:1 | 32:6,16 35:7 | **margolin** 8:15 |
| 26:13 49:20 | 13:7 | 36:17 38:21 | **mari** 9:15 |
| 50:12 63:17 | **luke** 7:20 | 39:7,11 40:3 | **massage** 83:24 |
| 64:1,24 65:18 | **lung** 70:1 | 41:5 42:2,10 | **massey** 10:4 |
| 65:19 66:22 | **lynch** 10:3 | 42:17 48:8 | **master** 72:23 |
| 67:10 90:13 | **m** | 51:9,17 63:17 | 74:1 76:22 |
| **look** 30:22 | | 65:8,17,18 | **material** 76:16 |
| 33:25 56:25 | **ma** 8:14 | 66:21 68:13 | 76:17,18,19 |
| 57:4 66:18 | **made** 15:6,16 | 72:6 78:15,17 | 95:12 |
| 72:1 73:2,3 | 18:22 27:4 | 82:20 83:14 | **matter** 1:5 |
| 75:22 98:21 | 28:11,12 36:4 | 89:23 90:21 | 31:9 32:17,18 |
| 104:5 107:2,4 | 38:11 39:10 | 91:5,16 93:7 | 92:25 116:9 |
| **looking** 21:12 | 45:4 51:4 | 94:5,5 100:9 | **matters** 38:7 |
| 29:7 31:11 | 52:20 53:9 | 102:4,23 | 116:6 117:20 |
| 56:9,18 65:24 | 54:12 68:1 | 103:11,15,20 | 118:5 |
| 104:1 111:10 | 71:20 72:6 | 105:16 108:7 | **matthew** 4:15 |
| **looks** 58:3 | 73:22 76:21,22 | 108:20 110:12 | 6:13 12:20 |
| 61:24 117:3 | 78:22 81:25 | 112:5 113:13 | **maximize** 41:4 |
| **lose** 70:25 | 92:5 97:16 | 113:25 114:1 | **maximizing** |
| 110:13 | 112:20 117:12 | 116:11 | 41:9 |
| **losers** 83:12 | **madison** 7:11 | **makes** 34:7 | **mcdermott** |
| **loses** 64:10 | **magnitude** | 35:13 60:8 | 6:16 11:25 |
| **lot** 13:11 17:13 | 70:10 | 93:17 109:4 | 14:16 20:22 |
| 24:5 25:20 | **mail** 86:23 | 112:13 | 23:9 38:14 |
| 27:24 28:8,9 | 101:9,9,10,12 | **making** 29:25 | 51:1 68:5,7,11 |
| 30:15 32:2 | 101:20,21,24 | 31:5 39:20 | 68:14 |
| 37:17 40:4 | 103:19 | 40:10,15 64:24 | **mckuhen** 10:5 |
| 51:4 53:10 | **main** 11:18 | 65:23 67:9 | **mean** 19:1 20:1 |
| 63:24 78:22 | 15:20 17:13 | 77:2 88:4 | 39:20 43:22 |
| 80:7 89:8 | 19:23 27:23 | 116:12 | 55:23 69:19 |
| 95:11 97:5 | **maintain** 46:23 | **manges** 5:8 | 79:12 80:20 |
| 98:11,14 | **majority** 63:16 | 13:19 | 84:18 108:1 |
| 101:16 117:5 | **make** 11:10 | **marcus** 7:9 | 110:21 |
| 117:11 | 13:23 14:3 | **marginalized** | **meaning** 30:13 |
| **lots** 31:25 | 15:7 19:1,3 | 74:6 | 48:14 108:1 |
| 52:18,18 58:16 | 21:16 22:7 | **margins** 66:25 | **means** 30:10 |
| | 23:11 26:6,9 | | 33:14 37:18 |
| | 27:18 29:18 | | |

41:7 65:18 86:16
meant 104:2
measured 59:6
measuring 66:13
mechanism 43:17,18 79:6
mechanisms 16:24
mediate 29:22
mehana 9:10
mei 8:14
meises 8:16
meltzer 8:17
member 36:15
members 20:24
memoranda 74:15
mention 32:22 50:12 105:10 113:4
mentioned 40:22 43:5 58:16 64:21 108:4
mentioning 103:17
merits 29:24 31:12 55:6 69:4 70:24 78:9
michael 5:6 8:5 8:6,13 9:12
michele 8:16

microphone 34:8
microphones 22:16
middle 62:15 79:18 90:22 102:18
mike 9:25 13:7
million 17:15 17:15 20:25 41:19,20 55:9 82:15
millions 70:10
mind 31:11 68:17 110:15 112:15 114:20
mindful 35:4,8
mineola 120:23
minimum 24:8
minor 98:23 99:7,23 100:8
minott 10:6
minute 13:16 24:22 56:16 62:6 90:21 95:3
minutes 23:12 26:12,19,23
miranda 9:24
misguided 89:4
misleading 50:3 54:1,5
missing 51:25 54:7 66:19 102:14 111:7
mistake 104:16

mistaken 118:1
mitra 8:18
modest 67:1
modification 76:16,17,18,20 96:8
modifications 116:21
modified 16:3
modify 76:15
mohebbi 8:19
moment 23:19 39:16
monday 93:3
monetization 31:2 62:22
monetize 64:9
monetizing 83:8
money 24:7 61:22 64:11,17 67:17
monies 60:9
month 46:21 48:7 82:21
months 20:9 40:14 74:19 75:2 76:8
morning 48:25
motion 2:5,15 2:22 18:1,5,5,8 18:12 19:1,6 19:16 33:7 109:5 116:11 116:12 117:12
motions 92:17 93:8

motivated 71:19
move 94:2 97:18 100:10 100:16 106:4 108:7 109:23
moving 11:14 14:19 25:23 26:18 29:9 107:20 115:23 118:8
multiple 17:1 52:20
mute 14:20 26:25
myriad 74:16

n

n 3:1 11:1 65:9 119:1 120:1
n.e. 6:10
nacif 9:7
name 35:12 36:22
narrative 54:17 58:10 63:12,14 64:3 64:12 65:16 83:4,5,6 89:3
narratively 66:16
narratives 61:14
narrow 31:14 36:9
nature 22:12
near 95:19 108:16

**necessarily**
31:20 32:12
78:23 97:8
**necessary** 30:8
92:18 105:9,15
**necessity** 33:9
**need** 13:13
18:10,14,22
24:5 25:19
65:18 66:15,16
67:16,18 68:13
70:12,13 71:14
72:19 73:22
79:18 80:17
88:19,22 89:4
106:16 107:17
**needed** 115:25
**needs** 13:23
14:3 15:6,9
58:7 110:5
117:17
**negative** 31:3
**negotiate**
116:1 117:11
**negotiated**
91:10,19
100:22
**negotiating**
43:17
**negotiation**
20:8 44:5
84:16,17,18
117:7
**negotiations**
43:19 75:17
91:15,15 95:11

**neighborhood**
90:16
**neutral** 16:13
**neve** 7:6 14:21
14:21
**never** 85:19
110:11 114:25
115:5
**new** 1:2 3:6,14
4:4,13,20 5:11
5:19 6:4,19 7:4
20:19,20 24:1
24:2 28:7 29:2
29:4 57:7
79:20 89:8
112:23
**newly** 23:9
**news** 23:5
**nguyen** 8:20
**nima** 8:19
**nj** 5:4
**nobody's** 115:6
**nomenclature**
60:5
**non** 96:16
100:9
**normal** 34:25
37:17
**normally** 36:5
92:17 99:21
**north** 55:17
**note** 39:7 50:17
59:17 60:8
65:8,20 66:4
66:20 67:1,3
88:6

**noted** 19:11
112:22
**notes** 27:19
68:10
**noteworthy**
33:3
**notice** 2:2,8,17
40:19 41:23
95:13 99:12,17
99:18,19,21
100:3,7 105:11
105:12,23
**noticed** 103:2
**notices** 2:7,17
106:9,15
**notion** 17:25
61:10
**notwithstand...**
36:8
**november** 1:15
18:20 19:15
43:7 45:16
54:13 91:24
99:6
**nuances** 63:23
71:23
**number** 16:9
16:25 19:11
38:24,25 39:6
55:17 56:13,17
56:20 68:11,11
82:8,11 91:9
111:10
**numbers** 55:14
63:12 65:15,21
66:11,15,16
86:17

**numerical**
58:10
**numerous**
40:13 49:22
54:13
**ny** 1:13 3:6,14
4:4,13,20 5:11
5:19 6:4,19 7:4
120:23

**o**

**o** 1:21 11:1
120:1
**o'neal** 3:8
11:15,15,22
12:6,6 15:11
15:13,14,14
16:16,22 17:9
18:3,17 19:5
21:22 22:21
32:23,23 34:1
38:11,21 42:17
42:19,19 46:16
84:6,6 85:1,13
85:16,19,23,24
86:21 88:16
89:15,19,22,25
90:3,5 98:1
111:11 116:7,8
117:14,19,23
117:25 118:3,9
**o'neal's** 46:24
**object** 41:24
71:6 100:25
107:18
**objected** 42:25
**objection** 2:4
24:10,16,18

[objection - own]                                                                Page 26

25:11,12,12,19
25:25 38:13,14
38:22 42:18
46:12 47:2
48:7,23 49:18
50:16,25 51:2
51:14,16 53:22
54:12 66:23
68:2,5,6 69:19
70:4,7,15
71:12 73:21
79:8,19 81:23
88:4 93:19,23
93:25 95:7
106:10,11,12
106:17,18,20
106:25 107:22
108:1 109:1,3
109:15 116:25
**objections**
15:21 18:19
38:10,16,25
39:9 42:8,12
48:1,3 49:22
50:17,24 81:14
81:17 94:22
95:21 96:6,7
97:14 109:20
110:22 115:16
115:16
**objective** 40:18
88:23
**objects** 37:19
42:14
**obtained** 64:15
**obvious** 32:3
72:17 104:15

**obviously** 15:8
19:20 23:16
24:11 29:4,19
29:21 30:22
31:24 35:20
48:3 52:5 68:6
69:6 95:12
115:24
**occurred** 59:4
**occurring**
80:25
**occurs** 81:1
**october** 42:25
43:11
**offended**
114:25
**office** 13:25
29:3 94:22
95:3 96:21
97:6 101:1
**official** 3:12
12:8 15:23
16:5 24:3 27:7
33:16 36:16
37:2 72:13
**oh** 85:17 94:5
95:22 98:4,6
104:1 111:2,12
111:13
**okay** 12:1
24:24 25:10
50:13 55:5,18
56:24 61:1
67:22 70:20
73:7 89:16,19
90:3 91:12
93:17 94:9,16

95:17 99:14
100:17 101:4
102:10 107:7
107:19 111:17
112:21 117:24
**old** 120:21
**once** 24:21
26:12 27:13
29:11 30:12
37:8
**one's** 106:2
**ones** 96:2
97:17
**ongoing** 83:11
84:16 86:3
**open** 13:16
59:22 64:9
72:8,10 75:3
94:25 99:17,20
100:2,5 107:5
**operate** 61:20
**opinion** 36:3,4
36:10 89:10
**opportunity**
41:24 84:2
**oppose** 46:13
116:21
**opposed** 23:18
31:2 48:9
105:6
**opposing** 35:22
36:15 49:10
**opposite** 76:20
**opt** 96:7
**opted** 53:24
**option** 31:8

**options** 30:10
30:15,16 31:20
32:16
**oral** 116:11,12
117:1 119:5
**order** 17:19
34:19 37:18,19
37:24 41:9
51:2 73:22
90:8 94:18
98:3 99:9
103:1 108:21
111:19,21,24
112:19 117:15
**orders** 22:9
**origin** 22:1
**original** 19:7
**otterbourg** 6:1
14:6
**outcome** 32:13
60:11 66:12
67:20
**outcomes**
43:25 59:8
84:4
**outline** 15:17
**outlined** 84:7
**outside** 22:7
27:7
**overall** 31:13
**overlap** 29:4
**overrule** 66:23
**overwhelming**
40:11 65:25
**own** 28:5 29:12
88:20

**p**

**p** 3:1,1 11:1
**p.c.** 6:1
**p.m.** 92:22
  93:12,13
**paces** 6:10
**package** 101:8
  101:19
**packages**
  100:12 105:21
**page** 18:16
  56:17,19,21
  59:12 60:16
  62:3,3,4,5
  63:22 65:10,18
  66:17 67:3
  71:5 98:21
  99:4,15 100:8
  100:18 102:11
  102:17,17,18
  103:8 105:19
  106:7 107:8,21
  108:16 109:25
  111:10,17
  119:4
**pages** 13:11,11
  16:2 56:19
  65:18 85:8
**paid** 77:9
  80:23
**pamphlet**
  63:22
**papandrea** 5:6
  13:6,7
**paper** 66:1
**papers** 48:1

**paragraph**
  25:15 62:15
  70:23 71:4
  75:22 84:4,5
  98:21 99:15
  100:10,10,11
  100:13,15,16
  100:18 101:6
  102:11 103:5,8
  103:21,24
  104:2,3,24
  105:3,10,19
  106:7,8,11,13
  106:14 107:8
  107:21 108:4,5
  108:8,14,15
  109:25 110:8
  110:10 112:23
  112:23
**paragraphs**
  100:15 111:4
**pardon** 81:18
**parent** 17:10
**parents** 28:8
**park** 4:19 6:3
**parra** 8:21
**parse** 18:14,22
**parsing** 88:2
**part** 11:25
  35:23,23 36:19
  37:3,17 49:8
  58:17 65:6
  78:21 82:17
  86:9 90:8 95:1
  107:9 113:4
**partial** 17:11
  17:12,21 19:6

  19:7
**participants**
  2:1,14,21
**participate**
  26:7 35:8
  36:14
**participated**
  75:16
**particular**
  25:18 31:12,13
  32:14 36:25
  39:21 49:14
  50:16 52:15
  60:10 68:19
  69:15,16 70:9
  83:5 93:4
  101:22 103:18
  105:5
**particularly**
  33:3 69:17
  71:13 86:2
  99:22
**parties** 11:11
  21:12 25:21
  26:2 29:20
  30:15 35:18
  39:9,9 46:1
  49:22 70:22
  71:7,21 75:3
  79:4 80:6
  83:15,20 84:21
  91:10 96:5,10
  96:25 103:10
  104:17 108:9
  110:2,2,18
  114:18

**parts** 116:1
**party** 26:6
  32:14,20 36:14
  71:20 81:13
  91:14 101:1
  105:22 115:12
  116:15,24
**passed** 66:1
  81:13
**past** 11:7 16:11
  27:17 40:9
  46:21 109:10
  115:7
**path** 32:18
**patience** 26:15
  27:2,15 88:15
  118:7
**patiently** 74:14
**paul** 7:17 9:19
**pay** 81:3
**payment** 17:16
**payments**
  80:16,19
**payoff** 78:21
**pc** 14:6
**penalize**
  110:11
**pending** 43:4
  43:10 45:18,18
**people** 13:15
  13:16 24:6,8
  25:20 26:7
  27:8,10 30:22
  30:22 31:19,23
  31:25 32:10,16
  35:7,21,25
  36:1,18,20,24

38:1 40:1
52:25 57:3,5
63:16 66:1
71:14,22 72:7
72:20 73:7,13
77:2,14 78:23
84:11,22,24
86:18 87:8,10
87:11,17 88:18
88:22 89:4
93:1 97:14
110:9 112:14
113:14 117:10
**percent** 53:5
77:15
**percentage**
55:13
**percentages**
52:6,13 53:1
**perfect** 94:16
**perfectly** 98:10
98:11 103:22
104:25 105:2
**period** 2:22
17:4 43:20
**permit** 44:6
**permits** 81:22
**permitted** 27:8
**permutations**
52:18 76:10
77:11
**persnickety**
111:18
**person** 2:1,14
2:21 11:25
21:12,14 22:9
33:17

**personnel**
90:14
**perspective**
17:14 54:20
**pertain** 44:5
**pertains** 48:19
**pesce** 8:22
**peter** 10:13
**petition** 55:12
72:24 73:6
74:21 75:9,12
76:1,2 78:24
79:5 87:16
**phase** 48:10
**phil** 12:11
**phillip** 3:18
**phone** 21:14,24
21:25 22:6,10
**phones** 21:20
**pick** 38:6,23
50:9
**picking** 39:2
**piece** 35:17
80:21
**place** 32:19
49:24 63:19
85:11
**placeholder**
65:17
**placement** 69:7
**places** 61:14
102:22
**plains** 1:13
21:8
**plaintiff** 13:4,8
95:8

**plaintiffs** 5:2
**plan** 2:10,23
15:18,24,25,25
16:3,9,12,20
17:5 20:4,5,15
22:22,23,24
23:2 26:12
28:1,2 30:7,9
30:13,17,20,23
31:15 37:6
39:18,19,21,24
40:15,23 41:7
41:22 42:11
43:2,8,16
44:10,13 45:2
45:11,22 46:14
47:4 48:8,19
48:23,25 49:6
49:8 50:4,8
55:22 60:2
61:6,9,19,20
67:16 69:2
70:4 74:20
75:7,7,11,13
75:25 76:12
77:13,19 78:3
78:24 79:3,20
79:22,22,23
80:24 83:10,13
86:5 92:6 95:5
95:5,13,21
96:3 97:12
102:1 110:3
111:7,7 114:9
116:1,13,19,20
116:21

**planning** 51:19
**plans** 50:8
98:25
**plate** 98:11
**plausible** 55:4
55:6
**play** 77:25
**plaza** 3:5 4:19
**pleading** 71:5
72:18 85:20
97:16
**pleadings**
39:10 83:25
**please** 11:2
35:3 38:19
39:3 65:11
87:22 96:23
**pleasure** 22:5
**pledge** 46:7
**pledged** 19:19
**plenty** 81:22
115:7
**plumbing**
75:10
**plus** 54:21 55:1
55:15
**pm** 1:16
118:13
**pocket** 100:20
**podium** 34:8
38:9 42:17
95:19
**point** 13:12
15:6,7 17:7
30:12 31:15
34:22 40:5
41:12 50:15

53:6 57:4
63:20 71:16
76:20 81:12
83:8 85:3
86:11 87:1
88:3,4 89:20
91:4 95:15
112:11 114:10
114:24 115:6
**pointed** 57:23
**points** 15:17
39:9 42:18
95:1 96:4,18
110:14 113:25
**police** 89:9
**pool** 73:5,6,7
**pop** 26:13
68:17
**portal** 104:14
104:20
**portion** 63:1
**position** 50:14
62:18 69:4
72:3,3 82:13
87:24 88:2
95:9 114:11
**positions** 55:4
**possibilities**
52:19 55:20
**possibility**
106:25
**possible** 16:19
24:9 25:22
40:11 46:5
55:3 97:19
102:5 109:1

**possibly** 20:3
21:6 54:2
**posture** 82:3
**potential** 28:2
43:25 47:24
50:16 59:8
86:5
**potentially**
49:4 73:17
**potion** 88:11
**practicable**
101:10,18
102:13 104:22
105:1,14
**practical** 112:4
114:19
**precedent**
45:12
**precise** 18:15
69:17 79:9
88:6
**predict** 79:14
**predicted** 80:3
**prediction**
80:9
**preempted**
112:2
**prefer** 64:2
83:1
**preference**
19:22
**preferrable**
31:8
**preferred** 30:5
**prejudiced**
43:2 45:4

**prematurely**
90:25
**prepared** 78:8
**prepetition**
77:7,8
**prescribed**
43:20
**present** 7:16
85:11
**presented**
32:12 43:14
59:25 86:8
**presenting**
59:24
**presentment**
37:8,14,18,25
**presents** 35:1
37:18
**preserve** 43:9
**preserved**
39:12 48:4
**preserving**
43:22,23
**presley** 8:23
**press** 75:18
**pretto** 8:24
**prevail** 45:6
53:3,16 62:19
**preview** 94:7
110:17
**previewed**
70:4 88:9
**price** 77:7
**prices** 52:12,22
73:24 86:14
**pricing** 74:17
74:21,22 75:12

**principle** 95:14
116:3
**principles** 20:7
20:7,11 28:3
34:4 40:5,6,22
41:3,23 44:10
75:10 76:4
84:10,15 85:21
86:6 88:11
97:12 112:4
114:10,13
**prior** 39:9
43:16 45:25
89:10 106:14
106:20 107:16
115:15,17
117:4
**privacy** 37:1
**privilege** 90:1
**pro** 34:17 63:5
**probably**
27:23 53:21
59:21 71:16
79:11 86:13
88:12 93:4
104:15 108:20
108:20
**problem** 31:4
37:24 48:22
59:21,25 70:16
75:23,24 93:5
**problematic**
50:2
**procedural**
109:23
**procedures** 2:7
2:8,17,18 90:8

94:19 114:11

**proceed**  11:6
28:1 39:3

**proceeding**
30:6,6 43:14
52:16 53:7,12
58:17 62:19
85:10

**proceedings**
18:13 27:5
36:5 43:11
44:1,8,17 45:7
45:19 118:12
120:4

**proceeds**  42:3
45:9

**process**  20:8
33:23 34:21,23
40:21 47:1
49:9 53:21
83:13 96:9
97:6,14 100:22
104:6

**productive**
40:13

**professional**
24:7

**professionals**
55:21

**progress**  15:16
15:17 23:17
38:11 51:4
117:3,4,12

**promise**
110:11

**promptly**
32:15 45:24

**proper**  55:7
109:22

**proposal**  74:19

**propose**  11:14
35:5 38:15
79:1 92:21

**proposed**
30:23 39:18
40:23 42:9
43:3,16 75:13
78:3

**proposing**  56:4
85:22

**prose**  53:11
54:18 65:21

**proskauer**  4:1
22:18 80:12
116:17

**protocol**  35:24
36:19

**protracted**
92:25

**provide**  39:18
40:19 50:2
59:16 60:25
99:1 101:9
102:19 110:25

**provided**  37:11
45:21

**provides**  43:17
45:11 50:3
111:24

**providing**
53:19

**provision**
49:14 75:8
76:16

**provisions**
39:21 44:10
50:9 91:9

**prowess**
113:20

**pryor**  4:9
12:20

**public**  33:14
36:6,17

**publication**
99:12

**publicly**  35:12

**pull**  27:19 34:7
90:6 105:1

**pulling**  20:16

**purchase**
41:10,12,24

**purported**
46:7 62:22

**purpose**  44:2,3
49:19 114:2,11

**purposes**  22:15
25:20 30:11,11
39:2 40:17
58:7 102:5
110:21

**pursuant**
15:24 17:20
18:2 80:24

**pursue**  77:18

**push**  47:18

**pushed**  91:24

**pushing**  82:16

**put**  28:21
31:11 33:20
34:24 37:7,14
37:24 38:18

40:17 47:5
49:23 54:20
64:21 65:7,16
66:20 72:2,2,3
79:11 84:22
87:24 105:16
105:24 107:24

**puts**  44:11
50:13

**putting**  36:22
64:10 65:15
83:16

**q**

**q&a**  62:12

**quarropas**
1:12

**question**  16:17
18:3 92:16
95:23 99:5
101:11,19
109:16

**questions**
94:25 108:5

**quibble**  117:3

**quick**  24:13
70:1 90:19

**quickly**  32:9
64:22 106:6

**quite**  24:20
34:18 48:11
68:6 70:20
115:22

**quo**  43:9,22
46:23

**r**

**r** 1:21 3:1 11:1 120:1

**rabbit** 105:1

**rail** 67:15 75:22

**rails** 69:13 77:20

**raise** 39:13 41:1 114:4,15 114:21,25

**raised** 51:15 96:13 113:18

**ramifications** 70:25

**ran** 38:25

**randles** 10:7

**range** 43:25 52:10 56:2,8,9 57:4,8,13 58:1 58:4,5 59:11 59:18 60:9 64:13 66:4,19 67:2

**ranges** 52:25

**rata** 63:5

**rate** 44:15 45:10

**rather** 17:4 21:8 32:18 44:5 57:19 58:7 60:14 74:25 93:11 106:21

**rationally** 28:16 31:22

**reach** 19:24 26:2 30:12,15 32:10 37:8 43:15 45:23 46:1 55:15 86:7

**reached** 15:22 17:9 20:1

**reaching** 49:9

**read** 25:13,15 25:25 36:3 42:21 62:17 64:20 84:25

**readable** 100:9

**reading** 16:17

**ready** 28:20 47:4

**real** 60:16 70:1

**realize** 13:10 21:7 59:20 80:13 93:22

**realizing** 16:9

**really** 16:22,24 18:5 19:25 20:7,11,19 24:5 28:7,18 30:10 31:23 35:6,24 38:12 39:2,5,10 47:25 53:18,20 53:25 54:4 57:3 60:2 65:22 67:8 80:8 81:8 84:11 85:24 88:2 89:17 94:1 113:8

114:1,24 117:7

**reason** 19:9 26:23 42:5 53:21 56:15 64:7 67:6 70:7 100:11 110:20 114:14

**reasonable** 86:8 103:11,23 105:25,25 106:3 107:3

**reasonableness** 100:25 101:2

**reasonably** 106:6

**reasons** 88:8

**rebekah** 8:23

**recall** 116:10

**receded** 105:4

**receipt** 102:20

**receive** 17:14 41:23 44:15 45:8 63:4 77:8 80:24 81:5

**received** 26:1 63:2 65:22 68:12 70:18 81:4 103:6 106:24

**recently** 37:7 105:8

**recess** 27:3,12

**recitation** 78:14

**recitations** 83:15

**recognize** 63:23 76:22 78:13,15 95:22

**recognizing** 15:11

**record** 27:5 30:1 32:21 33:14 35:23 38:18,21,22 40:3,18 42:6 42:22 46:12,25 47:6 49:24 72:15 74:4 78:14 91:22,25 99:6 109:7,22 115:14 117:1 120:4

**recorded** 27:5

**recording** 27:7 27:8

**recover** 59:17 59:17

**recoveries** 41:4 41:10 51:7 52:11,17 53:4 54:25 56:2,9 57:5,13 58:4 59:11,18 60:2 60:2,21,25 64:13,13,14 66:4,19 67:2 70:9,10 73:8 73:17,23,24 79:5,21,23 86:5

**recovery** 52:6 52:13,24,25

55:15,16 57:8
57:24 58:5
61:6,19,19
65:4,4,11
67:16 69:10
79:15
**redacted** 20:23
**reed** 4:17
12:25 46:19
**refer** 22:3
**reference**
21:11 65:9,17
66:20 83:14,20
83:25 103:20
108:23 110:1
112:3
**referenced**
23:10 59:2
111:11
**references**
60:12 64:6
84:20 110:1
**referred** 48:20
**reflect** 16:4
**reflecting**
15:19
**reflects** 39:8
46:25
**regard** 96:19
**regarding**
34:15 40:3,15
51:7,9 53:12
114:6 116:20
**regardless** 35:1
**registered** 42:2
**regular** 47:22
101:8,24

**regulators**
40:14 42:7
112:8
**regulatory**
74:18 112:4
**reimbursed**
100:20,25
**reiterate** 34:22
**reject** 105:4
**rejected** 74:1
77:5
**rejection** 106:9
106:15
**related** 2:12
40:5 45:19
**relating** 19:13
28:2 51:3
**relatively**
54:22
**release** 110:18
**released** 16:2
44:7 96:10
110:2,2
**releases** 96:9
96:11,12 110:1
111:20,24
**relief** 35:18,22
35:22 36:15,15
110:18
**remaining**
38:10 50:24
68:1
**remember**
92:14 112:10
**remind** 36:20
56:8

**repayment**
17:11,12,21
19:7,8
**repeat** 77:12
**reply** 93:19
108:3
**report** 21:3,4
26:9 71:2
**represent** 70:2
84:22
**representation**
24:2 74:8
**represented**
23:1 83:21
**represents**
72:23
**request** 18:5
27:5 40:11
53:23 63:14
86:9 107:22
112:24 116:16
116:22 118:4
**requested** 54:3
**require** 79:19
**required** 54:5
103:10 104:16
104:25 105:21
106:2,4
**research** 21:23
106:3
**reservation**
16:8
**reservations**
47:5,13,14
**reserve** 16:24
43:16 44:4
45:24 50:6

100:24 114:4
**reserved** 39:12
45:17,18 47:20
92:18 95:21
**reserves** 43:18
44:7 46:23
**reserving**
43:23 46:13
114:15
**resolicit** 76:17
**resolution**
19:24 42:18
45:19 47:14
62:13 71:9
115:16
**resolutions**
63:24
**resolve** 47:2
51:5 53:22
74:25 76:3
77:22,23 84:9
86:7 97:4
108:9,12
117:11
**resolved** 38:16
44:7,17 45:2
46:4,8 47:17
49:23 68:2
71:17 75:4
81:17 96:2
107:13
**resolves** 77:19
**resolving**
15:20 20:9
38:25 79:5
**respect** 2:9,10
2:19 17:10

19:12,16 38:22
44:4,21 45:5,7
46:5 47:16
52:14,21,21
53:3,15,16
58:21 62:20
76:3 85:13
95:5 104:8
107:12 112:19
114:16
**respectfully**
63:13
**respond** 21:4
52:1 54:8
69:19,21 71:14
87:25 88:16
**responded**
53:9
**responding**
59:19
**response** 28:14
51:20 53:15
57:15 59:12,19
60:13 62:16
64:5 89:21
112:24
**restructuring**
108:24
**result** 23:3
32:13 49:5
58:25 67:19
68:18,19 80:19
82:1,14 83:12
83:17,18 87:5
87:7 91:14,15
**results** 84:17
88:10 103:7

**returned**
105:24
**reveal** 35:14
**review** 75:14
94:25 114:9
**reviewing**
74:15
**ri** 8:10
**ribiero** 8:25
**richard** 10:6
**rid** 73:16
**right** 11:21
12:2,8,17 13:9
13:22 14:2,7
14:13,25 15:5
17:25 18:14,21
22:4,16 23:4
24:4 25:24
27:13 33:2
37:5,15 38:5
39:15 41:18
46:13 48:5
49:2 50:21,22
54:9 56:10,18
56:23,23,24
60:24 62:8
67:5,23,25
69:22 71:4
77:13,14,19
78:6,16 79:20
81:25 82:1
85:17,18 86:10
89:19,22 90:10
90:23 92:3,4
92:11 94:10,14
94:15,18 95:15
96:20 97:21,23

98:2,7,18,20
98:23 101:2
102:3,10,17
104:9 105:19
106:22 113:2
114:4,15,23
115:14 116:15
116:23,25
117:16,21
118:2,6
**rightly** 25:1
**rights** 16:8
17:22 39:12
43:23 47:19
48:3 49:13
50:5,7 66:14
68:16 77:18
83:15 100:24
**rise** 22:20
86:14
**risen** 87:16
**risks** 28:24
**road** 6:10
47:22 81:3
82:2 120:21
**robust** 54:14
**rodnika** 9:17
**role** 109:6
**room** 1:12
21:24 22:2
**rose** 4:1 22:19
79:21 80:12
116:18
**roseland** 5:4
**rosen** 4:6 12:15
12:16 22:18,18
80:10,11,11

116:17,17
**ross** 10:8
**rubicon** 66:2,3
**rudnik** 20:22
**rule** 36:8 92:17
93:8
**ruled** 96:6
**rules** 11:8 27:7
27:10 29:25
47:22 76:7,11
82:2
**ruling** 33:8,9
33:11 39:20
65:23 68:1
72:7 77:4
**rulings** 119:3
**rundown**
27:18

**s**

**s** 2:12 3:1 8:6
8:15 11:1
**sabrina** 9:16
**saenz** 10:9
**safe** 22:16
68:18,21
**saferstein** 5:13
13:18,19
**sake** 40:7
113:4
**sakmann** 8:24
**sales** 41:24
42:3
**sam** 8:2
**samira** 10:10
**samuel** 10:2
**sandler** 5:1
13:7

**saran** 10:10
**satisfy** 73:14
**save** 96:17
**saw** 21:23
　33:24 76:9
**saying** 30:21
　36:21 37:5,19
　39:21 57:11
　61:20 63:15
　71:13 105:6
　112:7
**says** 25:12
　35:11 36:8
　57:8,9,9 74:21
　74:22 75:8
　79:11,18 80:1
　80:4 83:9
　86:13 98:24
　100:23 102:13
　104:24 105:4
　105:12 106:14
　106:23 107:11
　107:15 108:10
　108:17 111:19
　111:22 115:1
**sazant** 4:7
　12:16
**scales** 77:21
**scare** 82:12,12
**scenario** 55:6
　55:17,18 59:7
　62:25 63:4,8
**scenarios** 44:6
　55:3,19,24,25
**schedule** 56:5
　90:7,18 91:5
　93:6

**scheuer** 6:14
　14:12
**schwartz** 10:11
**sciametta** 9:1
**se** 34:17 50:16
**seal** 33:7 36:9
**sealing** 33:11
　34:20
**sealings** 36:4
**sean** 1:22 3:8
　11:15 12:6
　15:14 32:23
　42:19 84:6
　116:7
**search** 105:25
　106:1,3
**seated** 11:2
**seating** 22:2
**sec** 6:9 40:14
　41:23 42:8
　113:18 114:3
　114:10 115:3
**second** 18:22
　19:16,17 27:20
　30:2 32:3
　51:10 52:19,22
　56:25 63:9
　72:14 74:2
　75:24 90:12,20
　92:13,15 97:7
　107:9,11
**seconds** 87:20
　87:22 89:15
**section** 45:21
　62:9 65:9 78:3
**sections** 43:20

**secure** 103:12
**secured** 44:20
**securities** 5:2
　6:8 13:4,8
　14:10 76:24
　112:24 113:7
　113:24
**security** 44:24
　112:13 113:1
**see** 14:19 17:3
　18:11 19:24
　20:24 31:20
　47:13 57:12,14
　64:4,7 65:11
　78:3 87:6 89:1
　91:8 92:16,19
　97:18 103:21
　104:18 108:23
　111:5,5,8,25
　112:2 113:18
　114:12 118:8
**seek** 43:18
　110:18
**seeking** 18:8
　19:8 35:18,22
　70:5 111:23
**seeks** 52:11
　66:24
**seems** 76:20
　103:22
**seen** 20:6,21,21
　84:14 109:19
**sell** 41:21 42:1
**send** 101:12,24
　105:21
**sending** 101:16
　101:20

**sense** 23:11
　25:1 34:7
　51:17 57:5,17
　78:22 86:16
　93:17 103:15
　109:4
**sensitive** 24:6
　95:15
**sent** 34:23
　105:23
**sentence** 25:16
　67:1,12 68:10
　70:12 74:5
　75:23,24,25
　76:5 78:2,22
　79:2,7 80:1,4
　86:13 87:2
　105:20 106:2
　110:11,12,19
**sentences** 78:1
　79:2 83:24
　110:13,25
**separate** 33:7
　43:12 59:15
　61:13 64:3,14
　64:19 66:22
　104:6
**separately**
　33:18
**sequalae** 76:21
**sequence** 107:6
**serbe** 10:12
**served** 106:23
　106:24
**set** 28:5 59:8
　98:24

settle 28:23
75:6 77:3
85:20
settled 78:3
settlement
18:18 20:2,12
20:14 31:17
32:13 75:7
77:15 78:4,5
79:3 86:8
settlements
29:2 30:7 89:7
settles 75:12
77:13
settling 28:20
seven 51:17
102:20
several 34:15
40:14 61:13,14
61:21 64:18
111:3
shame 31:24
shape 117:9
share 46:3 63:5
96:23
shared 31:8
shares 42:1
43:4,24 44:22
44:22,22 45:5
45:8,9,14,14
45:20 46:6
53:16 55:8
58:24 59:5
61:2 62:20,21
62:23 63:6
68:12

shea 9:2
shifting 102:23
shl 1:3
shoes 54:20
shopping
60:14
shore 3:16
12:10,10 69:16
69:18 72:9,12
72:12 79:17
80:16 102:8
shore's 78:21
short 21:6
24:17 25:6,8
26:5 30:16
70:16
shorter 81:19
shortly 27:1
72:6
show 21:12
shows 54:25
siddiqui 5:14
13:21
side 28:22
85:11
sides 75:3 83:4
signal 13:16
signature 16:2
18:11 120:7
signed 22:8
70:19 102:8
significant
19:2 80:18,23
81:5
silverman 4:15
12:19,20

similarity 29:6
similarly 63:3
simple 67:12
76:6
simply 18:1
sincerely 63:15
single 53:22
sit 21:11
situated 63:3
situation
102:25
six 51:17 75:2
size 101:17
sledding 82:3
slide 102:24
sliding 47:9
small 54:22
smart 31:23,25
sof 6:2 14:6
38:13 50:25,25
51:3,15 53:15
68:2
solicit 98:25
solicitation 2:6
2:16 79:20
80:3 90:8 99:7
100:12,21
101:8,19 103:9
104:13 105:21
116:14
soliciting 20:4
solutions
120:20
somebody
21:14 27:4
29:22 33:14
37:19 57:8

63:21 66:18
71:16 87:24
103:14 104:16
107:1,2 108:1
111:14
somebody's
107:18
somewhat 31:4
35:1
sonya 2:25
120:3,8
soon 24:21
46:5 96:23
97:10 102:13
105:13,13
114:19 118:8
sophisticated
72:20
sore 69:25
sorry 24:25
30:11 35:3
60:12 69:18
85:17 93:24
98:6 99:25
104:1,2,4
108:13 111:18
sort 17:4 24:13
26:16 27:25
28:18 31:17
33:21,21 35:13
37:8 38:25
39:1 47:22
48:16 59:20
65:12,17 87:17
88:9 90:15
96:2 97:1,13
105:17 109:5

109:22 110:20
113:16
**sorts** 35:9
74:18
**soto** 9:3
**sought** 17:17
**sounds** 19:2
66:5 70:21
114:24
**source** 61:5
84:16
**sources** 18:15
**southern** 1:2
**speak** 15:6
16:3 29:5
33:17
**speaker** 21:20
**speaking** 35:19
74:13
**specific** 66:11
68:24 75:21
87:2 91:14
104:19
**specifically**
53:14 56:5
62:16 103:24
114:14
**speculation**
89:12
**speech** 25:2,3
78:9,21
**spelling** 86:17
**spend** 24:22
**spent** 24:7
**splitting**
101:12

**spot** 65:3
**spots** 112:2
**sprofera** 10:13
**square** 4:3,12
23:18
**stable** 10:14
23:22 41:5,8
41:14
**stablecoin**
41:13,15,16,17
41:20,25 70:3
**stage** 39:14
96:14
**stake** 64:11
**stakeholders**
86:7 117:7
**standalone**
56:4
**standard** 96:12
109:17
**standards**
75:15
**start** 11:17
12:3 13:15
27:14 77:2
83:16 85:5
113:13
**started** 82:20
**starting** 12:4
23:18 92:21
**starts** 29:11
74:4 110:20
**state** 95:5
**statement** 2:6
2:10,15,16,23
15:19,21 16:4
16:12,20 20:23

22:23 23:15
24:11,18 25:14
38:12,20,21
39:16,17 40:3
40:24 42:21
43:1 44:2,9
46:11,13,25
47:2,11,12,15
47:17,24 48:10
48:22,25 49:1
49:13,16,22
50:2,5 51:3
52:3,4,9 53:8
53:10,11 56:12
60:19 62:2,4
66:10 70:8
77:25 78:23
79:24 81:14,15
81:17 82:21
83:6,23 84:20
88:5 91:23
94:22 96:14
99:9 102:1,19
105:23 110:4
111:6 114:3,12
115:13,19
116:3,5
**statements**
15:12 95:10
**states** 1:1,11
5:16 14:10
113:23
**status** 11:17
15:11 21:3,4
23:7 26:4
27:21 43:9,22
46:23 49:6

**stay** 26:20
29:23 38:9
61:17 67:15
69:13 91:16
**steen** 3:3 34:12
**step** 77:20
115:23
**stepped** 69:12
**steps** 21:5
81:10 95:25
**stick** 25:8 60:7
99:11,13
**stipulation**
18:2
**stone** 63:21
**stop** 60:14
90:24
**stopped** 72:25
**stops** 73:4
**story** 85:11
**straighten**
66:10
**straightforw...**
89:3 118:5
**streamline**
35:7
**street** 1:12
5:18
**string** 84:23
**strongly** 36:25
108:9,11
**struck** 30:5
97:1
**stuck** 26:16
60:5
**study** 54:23

**stuff** 89:5
  108:5
**sub** 105:7
**subject** 11:8
  16:1 17:6 18:3
  19:21 20:8
  35:5 41:18
  43:4 44:23
  45:10,16 69:6
  75:14 83:11
  86:3 108:6
  109:1
**submit** 24:21
  103:10 117:15
**submitted**
  35:10 53:9
  103:14
**submitting**
  36:21,23
**subparagraph**
  108:8
**subsection**
  108:16
**subsequently**
  105:23
**substantial**
  15:16 52:16
  109:6,16 117:6
**substantially**
  61:3
**substantive**
  49:18 99:2
**success** 28:19
  28:24 77:16
**successes** 20:5
**successful**
  82:14

**sue** 30:14
  61:10
**sufficient** 22:9
  43:24
**suggest** 71:3
**suggesting**
  94:4
**suggestion**
  84:8
**suggestions**
  59:23 107:6
**suite** 5:18 6:10
  7:11 120:22
**sullivan** 9:4
  10:15
**summarized**
  48:2
**summary**
  24:13 26:11
  33:1
**sunday** 94:3
**supplement**
  92:6 105:11,12
  107:10,15
  111:7
**support** 15:25
  15:25 22:23,24
  23:2 30:8 47:4
  116:19,20
**supportive**
  16:8
**suppose** 21:14
**supposed**
  30:19 57:10
  102:7
**supreme**
  110:23

**sure** 19:3 21:13
  21:16 24:17
  25:6 26:6
  27:18 32:16
  35:7 42:10
  48:12,15 54:6
  62:7 67:18,20
  69:11 70:15
  71:10 78:15,17
  87:19 90:21
  91:5 93:7
  102:4,14,23
  105:16 109:13
  112:14 113:13
**surprises**
  40:20
**suspect** 50:8
**sustained** 79:8
  79:19
**sutherland** 9:5
**sweet** 70:16
**swift** 9:6
**swing** 73:17

**t**

**t** 9:2 120:1,1
**ta** 10:16
**table** 39:1
  54:16,25 57:9
  60:14 64:4
  65:6,8 66:4
**tables** 59:25
**tacks** 24:5
**tactics** 82:12
**tail** 48:14
**take** 12:2 15:8
  15:13 23:11
  26:5,12,19

  37:4 56:22
  61:15 70:1
  79:16 88:20
  96:19 102:16
  104:5 106:1
  107:2,4
**taken** 95:25
**takes** 29:12
**talk** 27:1 61:16
  62:11 73:19,20
  75:21 79:22
  90:18
**talked** 11:9
  31:18 32:21
  33:3 66:11
  98:20 108:3,25
**talking** 29:24
  30:3,13 56:1,2
  57:16,24 59:13
  73:2,18 74:15
  100:19 101:20
  103:6,8 105:20
  112:12 114:7
**talks** 59:12
  62:10 100:11
  100:13 101:6
  102:18 105:10
  106:2,11 107:9
  107:21 108:8
**taousse** 9:7
**tax** 31:3 80:18
  80:23 82:6,7
**taxes** 89:7
**tea** 16:18
**team** 34:1
**tech** 22:9

| | | | |
|---|---|---|---|
| **technical** 11:22 | 69:24 72:12 | 32:11 37:17 | 61:16 64:18,23 |
| 113:19 | 88:14 90:5 | 38:17 44:12 | 65:2,5,7,16,16 |
| **technically** | 94:17 95:17 | 49:18,23 54:3 | 66:1,3,15,16 |
| 111:21 | 97:21 101:5 | 56:1 57:2,2,3,4 | 66:24 67:3,8 |
| **tell** 51:11,24 | 112:16 113:6 | 63:20,25 64:11 | 68:5,9,20,25 |
| 58:9 | 113:22 114:22 | 64:25 78:18 | 68:25 69:4,8 |
| **telling** 24:23 | 115:8 116:3,7 | 80:7,14 82:8 | 69:12,14 70:17 |
| **temporarily** | 116:23 117:14 | 82:12 84:25 | 71:5,7,15 |
| 107:23 | 117:16 118:6,9 | 88:18 89:8 | 72:19,22 78:1 |
| **tensions** 47:1 | 118:10,11 | 91:10,13 96:21 | 78:2,9,10 79:2 |
| **term** 41:7 | **thanking** 27:14 | 97:1,3,11,13 | 79:7,17,21,25 |
| 48:20 49:8 | **thanks** 23:20 | 97:15,18,24 | 81:25 82:1 |
| 88:7 110:3 | 27:1 | 98:3,14 99:7 | 83:20 84:2,7,8 |
| 115:20 | **thanksgiving** | 102:1,2,24,24 | 84:13 85:3,25 |
| **terminated** | 23:25 74:10 | 103:13 104:17 | 86:11,15,25 |
| 74:2 | **therese** 6:14 | 110:17 113:17 | 87:1,4,11,21 |
| **terms** 11:14 | 14:12 | 115:5,25 116:2 | 88:5,5,12 90:5 |
| 15:24 26:10 | **thereto** 2:9,19 | **think** 11:18 | 90:7,15,17,17 |
| 31:5 36:14 | **therewith** 2:8 | 13:4,13 14:20 | 90:23,24 92:7 |
| 38:6,10 43:2,8 | 2:18 | 18:19,23 20:25 | 92:23 93:2,17 |
| 43:16 44:12 | **thing** 17:13 | 21:2,3,5 24:8 | 93:19 94:12,13 |
| 45:10,24 52:3 | 18:23 19:2 | 24:14,20 28:16 | 95:9,14,14,20 |
| 53:19 69:9 | 33:2 54:16 | 28:18,22 29:16 | 98:5 99:1,4,8 |
| 86:23 90:13 | 56:10 57:9 | 31:7,10,19 | 99:21,23,24 |
| 96:12 97:2,12 | 71:24 76:11,13 | 32:24 33:3,23 | 102:12 105:9 |
| 103:1 110:16 | 76:14,19 83:20 | 33:24 34:7 | 105:15 106:17 |
| 111:7 | 86:10 87:7 | 35:17,21 36:12 | 107:20 108:3,4 |
| **thank** 13:3,21 | 92:19 94:10 | 39:7 48:18 | 108:10,19 |
| 15:14 17:7 | 98:24 99:2 | 49:15,20 50:15 | 109:3,4,17 |
| 19:4 20:15 | 100:9 110:16 | 51:12,12,16,23 | 110:2,3,5,10 |
| 22:20 23:3,4 | 112:15,18 | 52:1 53:18,20 | 110:16,20,24 |
| 26:24 27:11 | **things** 22:20 | 53:21,25 54:1 | 111:20,22 |
| 32:25 38:8 | 25:22 26:8,17 | 54:2,4,24 | 112:1,1,3,6,9 |
| 40:2 46:15,16 | 27:7,23 28:2,6 | 55:21 57:4,21 | 112:10,15,17 |
| 50:19,21 54:9 | 28:16 29:8,10 | 58:3,4,15 60:5 | 113:10 116:9 |
| 54:10 56:23 | 29:24 30:19 | 60:7,7,16,19 | 117:19,25 |
| 67:4,24,25 | 31:11,22 32:2 | 61:3,7,10,12 | 118:1,2,5 |

| | | | |
|---|---|---|---|
| **thinking** 21:23 | **tim** 10:19 | 78:9,16 81:16 | **tranches** 43:3 |
| 31:22 82:13 | **time** 11:4,4 | 91:1,22 94:24 | 59:14 |
| 94:4 108:22 | 12:3 17:4,24 | 112:7,20 | **transaction** |
| 112:14 113:10 | 23:13 24:6 | 113:11 117:18 | 62:23 |
| **thinks** 54:7 | 25:3,17 26:14 | 118:6 | **transcribed** |
| 80:5 | 26:24 29:11 | **today's** 13:14 | 2:25 |
| **thins** 64:10 | 32:25 33:5 | 38:7 43:16 | **transcript** 27:6 |
| **third** 2:21 | 34:19 35:8 | 49:20 59:6 | 120:4 |
| 67:15 69:13 | 44:17 49:24 | 91:21 | **transparency** |
| 72:15 75:22,25 | 50:18 54:22 | **todd** 3:17 | 18:23 19:10 |
| 77:20 78:22 | 71:12 72:10 | 12:11 | 36:6 40:7,17 |
| 79:2 | 73:10,11 77:1 | **together** 20:17 | 40:19 |
| **thomas** 10:3,17 | 77:12 82:3 | 33:20 55:3,14 | **transparent** |
| **those'll** 103:19 | 86:18,18 90:24 | 90:6 100:15 | 42:4 |
| **thought** 11:5 | 93:1,16 99:16 | **told** 31:3 73:22 | **treat** 104:9 |
| 11:16 23:11 | 99:17 105:13 | 97:5 | **treated** 44:18 |
| 47:10 58:6 | 107:3,16 | **tom** 8:3 | 49:5 105:5 |
| 59:10,14 68:23 | 110:14 113:25 | **tomorrow** | **treatment** 43:3 |
| 68:24 78:11 | 117:9 | 61:16 91:24 | 54:18 106:10 |
| 89:10 99:20 | **timeline** 92:7 | **took** 27:22 | 106:11 |
| 113:9,25 | 92:12 | 33:25 | **tremendous** |
| **thoughts** 58:12 | **times** 4:3,12 | **top** 56:20 | 28:19 |
| **thread** 38:23 | 53:25 108:10 | 108:16 114:20 | **trial** 22:5 28:21 |
| **three** 7:2 14:23 | **timing** 31:4 | **topic** 34:7 | **tried** 34:4 |
| 18:18 41:23 | 94:23 106:9,16 | 100:16 114:1 | 52:24 53:5 |
| 51:16 81:2 | **tip** 77:21 | 114:22 | 59:24 65:22 |
| 99:8 | **tissue** 88:5 | **total** 20:2 | 85:20,25 88:21 |
| **throat** 69:25 | **today** 11:11 | 55:15 56:19 | 90:3 |
| **throw** 11:10 | 13:1 14:11 | **totaled** 55:3 | **true** 29:25 30:1 |
| 113:15 | 15:11 17:7 | **tough** 117:10 | 46:5 120:4 |
| **throwing** | 23:23 24:19 | **towards** 29:9 | **trust** 4:18 |
| 89:11 | 39:2 42:6 47:8 | 115:23 | 12:23 13:1 |
| **thursday** | 47:21 48:13 | **tranche** 19:14 | 19:20 44:25 |
| 117:22 | 49:10 50:8,14 | 19:17,17 44:25 | 46:8,19 |
| **tichenor** 9:8 | 50:25 68:9 | 52:19,20,21,22 | **trustee** 5:17 |
| **tied** 103:4 | 72:5 73:22 | 55:7 58:19 | 39:8 |
| | 75:5,11,19 | | |

trustee's  13:24
  101:1
try  16:19 19:24
  24:19 26:17
  28:21 56:16,21
  68:7 74:25
  76:15 84:3
  86:7 97:17
  117:11
trying  17:3
  22:5 24:8
  25:21 29:7
  32:8 35:6
  39:25 47:9,20
  47:25 49:17
  54:20 64:24
  68:5,7 77:20
  77:21 84:9
  90:12 102:4
  104:9
tung  10:18
turn  13:12
  14:2 15:10
  16:21 38:5
  90:9
turned  30:8
turning  47:21
  106:7
turnover  17:17
turns  77:1
tweak  93:6,18
  99:23
tweaked  91:22
tweaking
  66:25
tweaks  58:7

two  15:21
  22:20 25:8
  26:11 27:23
  38:13,13 43:3
  45:1 47:25
  51:16 55:2,14
  65:18 67:1,1
  68:10 70:13
  78:1 79:1 81:2
  83:25 97:1
  98:14 105:15
  110:19
typical  34:20
  34:23 52:5
  112:25
typically  34:17

            u

u.s.  1:23 5:17
  13:24 39:8
  73:5
ucc  22:21
  46:22
uday  9:22
ultimate  80:24
unable  113:20
undeliverable
  105:24
under  2:11
  17:23 32:11
  36:8 60:2,10
  61:6,19,19
  67:16 78:3
  79:21,23
understand
  12:18 16:18
  20:24 27:10
  33:20 36:19,22

36:23 46:11
  50:15 57:8
  63:16 65:14,24
  65:25 66:9
  73:7 84:14
  88:8,9 89:22
  89:25 100:1
  104:2 114:17
  117:21
understanding
  16:7 50:6
  78:18 102:6
  105:17
understands
  18:24
understood
  25:4 65:1
  104:11 107:7
underway
  52:17
undisputed
  107:25
unexpired
  107:12
unfold  25:2
  80:14
unfortunately
  47:3 51:4
unique  28:5,5
united  1:1,11
  5:16 14:10
  113:23
unknown  1:25
unmute  11:3
unnecessarily
  115:8

unresolved
  50:24
unsecured
  15:23 16:6
  36:16 44:16,19
  45:11 51:7
  53:4 63:1,3
  72:22 76:24
unusual  91:13
update  11:9
  17:8 26:23
updates  22:12
uphill  82:3
upside  28:25
uptegrove  6:13
  14:9,10 113:22
  113:23
urge  66:25
use  40:22
  50:18 51:18
  56:20
used  22:1,4
  115:20
useful  51:11
using  79:6
  98:14 99:6
  117:8
ust  95:18
usual  11:8 15:5
usually  101:1
  107:24

            v

validity  59:13
valuable  111:8
valuation
  58:24,24 70:6
  73:21 86:12

**value** 17:16
36:7 52:8
53:17 55:12,15
58:2 59:4
60:21 61:6
62:21 63:6
71:10 79:9,12
80:2 83:8,10
86:1 87:14,16
**valued** 55:9
**values** 54:19
55:23 73:8
75:25 76:2
78:24 79:4
**valuing** 68:22
69:9
**van** 9:14
**vanderbilt**
6:18
**vanlare** 3:9
12:6 34:3,10
34:12,12 35:3
35:4 36:1 37:5
37:9,21 38:3,4
38:8,20 39:4
40:2 50:23
51:19,24 56:11
56:16,21 58:12
58:13 59:24
60:18,25 61:25
62:2,7,9 63:10
64:20 65:20
66:6,21 67:6
67:11,22 68:4
68:24 90:7,11
90:17 91:2,3
91:11,18,21

92:2,5 93:7,11
93:13,17,21
94:3,9,12,16
97:23,25 98:4
98:6,8,12,17
98:19,22 99:3
99:10,14,25
100:4,17 101:4
101:23 102:15
103:22 104:5
104:11,18
105:18 106:19
107:7,19
108:13,18
110:6 111:1,3
111:9,12,15
112:1,18,22
113:3 115:10
115:11
**variables**
16:25
**variations**
31:21
**varick** 5:18
**variety** 15:19
19:13 78:18
80:2
**various** 20:12
22:15 30:7
38:17 44:6
45:17 46:4
48:3 52:6
57:14,17 73:25
75:3 79:4
83:11,14,25
84:20 87:15,25
103:4 105:21

**vast** 63:15
**vazquez** 9:9
**vehicle** 38:2
109:23
**vein** 108:22
**verbiage**
102:12
**veritext** 120:20
**versus** 96:16
**videotape** 27:9
**view** 25:7
30:25 31:7,9
36:25 58:4
65:3 68:14
71:8,8,14,15
71:16,17,22
73:9 74:17
75:17 79:13
81:6,9 82:6,7
84:21 87:10,12
**views** 24:11
31:12 35:5,21
57:15,17 84:4
96:15 102:4
**vince** 10:15
**violence** 59:22
**virginia** 9:2
**virtual** 118:1
**virtually** 15:20
53:22
**virtue** 27:6
**vis** 106:9,9
**voices** 74:7
100:23
**voluminous**
101:25

**voluntarily**
36:17
**voorhees** 9:14
**vote** 39:19
74:20 96:11
108:2
**voted** 105:7
**votes** 100:21
105:4
**voting** 2:7,16
45:25 91:22,25
92:20,25 99:6
102:19 103:7
104:14,20
**vunnamadala**
9:10

| w |
|---|

**w** 4:15 9:11
**waiting** 26:16
**waived** 45:12
**waives** 49:13
**walk** 90:7
**want** 11:6,11
21:18 22:25
24:22 26:15
27:9,17 34:22
35:14 36:14,25
38:1 39:11
40:20 42:10
49:23 50:7
60:4,13 64:19
65:2,8,13 66:2
66:21,22 69:17
70:13 71:1,7
71:22 72:2
74:4,24 77:2
77:22,23 84:9

| | | | |
|---|---|---|---|
| 84:11 86:25 | 83:1,16 86:15 | **went** 52:7 | 89:4 91:17 |
| 87:13 88:2,6 | 87:5,12 88:23 | 73:13 82:10 | 94:24 95:2 |
| 89:9 90:21,25 | 89:4 90:2 | 87:9 92:6 99:4 | 114:18 116:4 |
| 91:1,1,8 93:4 | 92:20 93:6,16 | **west** 3:17 7:11 | **worked** 16:11 |
| 93:18 94:11 | 97:1 100:5 | 9:13 12:11 | 19:3 43:8 |
| 98:2 99:9 | 101:21 102:9 | **whichever** | 91:16 100:22 |
| 102:23 103:21 | 104:20 106:1 | 107:25 | **working** 33:21 |
| 103:23 105:16 | 117:9 | **white** 1:13 3:11 | 46:21 48:8,12 |
| 107:6,14 | **ways** 61:21 | 12:10 21:8 | 104:7 |
| 109:20 110:12 | 64:18 66:13 | 72:13 | **works** 71:25 |
| 112:13 115:5 | 80:2 | **widely** 91:7 | 93:5 |
| **wanted** 15:17 | **we've** 11:7 | **william** 6:13 | **world** 22:7 |
| 24:12 27:11 | 16:10 20:14,21 | 14:10 113:23 | 73:2,4,9 |
| 33:18 64:9 | 20:21 24:18 | **willing** 11:19 | **worry** 25:24 |
| 90:18 95:4 | 25:13 33:5 | 36:17 37:1 | **worse** 30:25 |
| 112:18 113:4 | 38:11,16 48:14 | 46:12 | **worth** 23:1 |
| 113:15 114:21 | 51:3 52:10,24 | **winners** 83:12 | 32:22 61:2 |
| **wants** 21:4,16 | 53:1,8,9,14,18 | **wins** 64:10 | 88:12 95:24 |
| 22:12 34:1 | 53:22,24 54:1 | **wise** 84:2 | 109:9 |
| 66:15 69:20 | 60:18 63:7,7 | **wishes** 22:14 | **worthwhile** |
| 75:18 93:2 | 65:20,21,22 | 23:6 33:15 | 55:21 |
| 114:18 | 66:1 67:12 | 116:15,24 | **wrap** 32:9 |
| **war** 57:20 | 76:8 88:5 95:1 | **wit** 108:7 | 90:15 |
| **watkins** 7:1 | 98:13 102:8 | **withdraw** | **wrinkles** 61:12 |
| 14:22 | 104:12 107:19 | 46:12 | 114:18 |
| **way** 21:21 | 115:7 | **wolfe** 10:19 | **write** 63:22 |
| 28:17 29:9 | **weaver** 9:11 | **word** 70:20 | 83:9 85:25 |
| 30:6 33:9,22 | **wednesday** | 78:7 83:24 | **written** 72:18 |
| 34:25 35:7 | 74:9 92:23 | 89:24 | **wrong** 66:10 |
| 40:25 47:4,5 | **week** 43:13 | **words** 51:6 | 70:24 82:14 |
| 47:12 51:11,18 | 106:18 | 59:25,25 80:20 | 104:3 |
| 57:11,18 60:7 | **weeks** 16:11 | **wordsmith** | **wrongly** 25:1 |
| 61:21,24 64:11 | 17:16 | 65:12 67:18 | |
| 67:18 69:12,14 | **weil** 5:8 13:19 | **work** 20:16 | **x** |
| 71:11 73:2,3,3 | **weinberg** 9:12 | 21:18 45:22 | **x** 1:4,9 68:11 |
| 73:9,16 74:19 | **wen** 7:14 15:2 | 68:7 75:11 | 119:1 |
| 77:10,21 81:19 | 15:2 | 77:10 87:11,12 | |

**[y - à]**

| y | zul   8:9 |
|---|---|
| **y**   68:11 | **à** |
| **yea**   79:17 | **à**   106:9 |
| **yeah**   21:13 | |
| 25:6 35:25 | |
| 85:17 102:8 | |
| 104:9,23 | |
| 108:19 109:19 | |
| 111:15 113:6 | |
| 118:3 | |
| **year**   81:1,1 | |
| 82:17 | |
| **years**   22:5 | |
| 29:13 81:2 | |
| 88:25 | |
| **yep**   98:17,19 | |
| 111:15,16 | |
| **yesterday** | |
| 15:18 | |
| **york**   1:2 3:6,14 | |
| 4:4,13,20 5:11 | |
| 5:19 6:4,19 7:4 | |
| 28:7 29:3,4 | |
| 89:8 | |
| **z** | |
| **z**   10:11 | |
| **zipes**   5:21 | |
| 13:24,24 37:11 | |
| 94:20,20 95:17 | |
| 95:19,20 96:4 | |
| 97:4,20 98:5 | |
| 101:5 109:11 | |
| 109:14 118:10 | |
| **zoom**   13:17 | |
| 14:3,4 22:15 | |
| 26:20 27:15 | |