Benjamin Mintz
Marcus Asner
Justin Imperato
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
Tel: (212) 836-8000
Facsimile: (212) 836-8689
Email: benjamin.mintz@arnoldporter.com
         marcus.asner@arnoldporter.com
         justin.imperato@arnoldporter.com

*Counsel to Soichiro "Michael" Moro*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No. 23-10063 (SHL) |
| Debtors. | (Jointly Administered) |

**RESPONSE IN OPPOSITION TO DEBTORS' OBJECTION TO CLAIM NOS. 375, 398, AND 408 IN EIGHTEENTH OMNIBUS OBJECTION TO CERTAIN CLAIMS**

Soichiro "Michael" Moro ("Moro") files this response ("Response") to the *Debtors' Eighteenth Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Co-Liability Contingent)* [ECF No. 1120] (the "Objection"). For the reasons set forth below, the Court should overrule the Objection in part. In support of this Response, Moro respectfully states as follows:

---

[1] The debtors in these Chapter 11 cases and the last four digits of each debtor's taxpayer identification number are as follows: Genesis Global Holdco, LLC (8219) ("Genesis Holdco"); Genesis Global Capital, LLC (8564) ("Genesis Capital"); and Genesis Asia Pacific Pte. Ltd. (2164R) ("Genesis Pacific," and together with Genesis Holdco and Genesis Pacific, the "Debtors"). For the purpose of these Chapter 11 cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

**PRELIMINARY STATEMENT**

1.  Moro's claims against the Debtors' estates generally fall into one of three categories: (i) contingent indemnification claims (the "Contingent Indemnification Claims") based on liability that could be imposed upon Moro in the Actions and Investigations (as defined below) as a result of his various roles with the Debtors and non-Debtor subsidiaries and affiliates (collectively, the "Company"); (ii) non-contingent claims for the advancement and reimbursement of defense costs incurred to date (the "Incurred Defense Costs") in connection with the Actions and Investigations; and (iii) future defense costs (the "Future Defense Costs") in connection with the Actions and Investigations.

2.  The Debtors seek to disallow the Contingent Indemnification Claims pursuant to section 502(e)(1)(B) of the Bankruptcy Code. Moro does not oppose disallowance with respect to such claims relating to the McGreevy Action and the NYAG Action (each as defined below), subject to Moro's reservation of rights under section 502(j) of the Bankruptcy Code to reassert such disallowed claims at a later date upon an appropriate showing of cause. However, the elements of section 502(e)(1)(B) are not satisfied with respect to Moro's Contingent Indemnification Claims related to the Future Actions (as defined below) and accordingly the Debtors' Objection should be denied in such respect. Specifically, the Debtors have not established that they could be co-liable with Moro in respect of claims that may be asserted against Moro in the Future Actions.

3.  The Debtors did not object to the Incurred Defense Costs,[2] but seek to disallow the Future Defense Costs pursuant to section 502(e)(1)(B). The "co-liability" and "contingent"

---

[2] The Debtors did not object to the Incurred Defense Costs, but reserved their right to assert further objections to such claims on all grounds and/or to seek to equitably subordinate such claims. *See* Objection ¶ 29. Moro reserves all of his rights with respect thereto.

elements of section 502(e)(1)(B) are not satisfied with respect to the Future Defense Costs and accordingly the Debtors' Objection should be denied in such respect.

## BACKGROUND

4. In addition to his other roles within the Company, Moro served as Genesis Capital's Chief Executive Officer during the period February 2018 through August 2022; Genesis Global Trading, Inc.'s ("GGT's") Chief Executive Officer during the period March 2016 through August 2022; and GGT's Chief Operating Officer during the period April 2015 through March 2016.

5. Moro filed proofs of claim numbers 375, 398, and 408 (collectively, the "Moro Claims") against each of the Debtors asserting "rights of contribution, indemnification, reimbursement and subrogation under applicable law and, upon information and belief, each Debtor's bylaws and the bylaws of other entities within the Company" as a result of his various roles with various Genesis entities throughout the Company. Moro Claims ¶ 6. Moro also asserted indemnification claims for defense costs (the "Defense Costs") incurred "in connection with pending lawsuits, investigations, and disputes (collectively, the "Pending Civil Cases and Investigations") . . . ." *Id.* ¶ 7.

6. The Moro Claims further assert that, through and including May 17, 2023, Moro has "incurred $535,273.42 in Defense Costs with respect to the Pending Civil Cases and Investigations for which he is entitled to indemnity from the Debtors" and that "Claimant expects to incur additional Defense Costs for similar matters which may arise in the future (together with the Pending Civil Cases and Investigations, the "Civil Cases and Investigations")." *Id.* ¶¶ 7-8. Moro "expressly reserve[d] his right to assert additional claims against the Debtors' estates for the indemnification of additional Defense Costs incurred in connection with any of the Civil Cases and Investigations." *Id.* ¶ 8. Following the filing of the Moro Claims, Moro incurred additional

3

Defense Costs in the amount of $593,814.39, such that the total amount of Incurred Defense Costs through December 31, 2023 is $1,129,087.81.

7.     On May 9, 2023, the Court entered an order that, among other things, modified the automatic stay to the extent necessary to: (i) allow any of the Debtors' current and former directors and officers, including Moro (collectively, the "Insured Individuals") to enforce their rights and demand and receive proceeds payable under the Insurance Policies (as defined in the Lift Stay Order (as defined below)) to the extent of their coverage thereunder; and (ii) authorize the Insurers (as defined in the Lift Stay Order) to advance such proceeds to the Insured Individuals for their defense costs incurred in connection with pending lawsuits, investigations, and disputes, as well as any additional matters that may arise in the future, in accordance with the terms of the Insurance Policies. *See* ECF No. 300 (the "Lift Stay Order"). To date, Moro has recovered $633,796.73 from the Insurance Companies, leaving Moro with outstanding unreimbursed defense costs of $495,291.08 as of December 31, 2023. To the extent any of those amounts and any future amounts are recovered from the Insurance Companies, the claims asserted in the Moro Claims are subject to reduction.

8.     On January 2, 2024, the Debtors objected to the Moro Claims, asserting, among other things, (i) the Moro Claims "do not contain any information sufficient for the Debtors to determine the source of the alleged liability beyond vague reference to 'pending lawsuits, investigations, and disputes', none of which are identified by name . . . [and] therefore [the Debtors] submit that the Moro Claims do not meet the standards for *prima facie* validity and should be dismissed . . . ", Objection ¶ 19, and (ii) portions of the Moro Claims should be disallowed under section 502(e)(1)(B) of the Bankruptcy Code. *See* Objection ¶¶ 20-30. However, the

4

Debtors do not dispute Moro's underlying legal entitlement to contribution, indemnification, reimbursement and subrogation nor do they dispute Moro's claim for the Incurred Defense Costs.

9. Pursuant to the Amended and Restated Operating Agreement of Genesis Capital dated January 19, 2022 by Genesis Holdco and any other individual who, or entity that, shall become a member of Genesis Capital (the "Genesis Capital Operating Agreement"):

> [Genesis Capital] shall indemnify and hold harmless [Genesis Holdco] and each current and former officer and employee of [Genesis Capital] against any loss, damage or expense (including, without limitation, attorneys' fees, including those incurred in enforcing this indemnity) incurred by [Genesis Holdco] or such officer or employee as a result of any act performed or omitted on behalf of [Genesis Capital] or in furtherance of its interests, except to the extent that it is finally determined that [Genesis Holdco] or such officer or employee acted in a manner that constituted gross negligence or willful misconduct. [Genesis Capital] shall, at the request of [Genesis Holdco] or such officer or employee, advance amounts and/or pay expenses as incurred in connection with [Genesis Capital's] indemnification obligation contained in this Section.

Genesis Capital Operating Agreement ¶ 14.

10. Pursuant to the Amended and Restated Operating Agreement of Genesis Holdco dated July 19, 2022 by Digital Currency Group, Inc. and any other individual who, or entity that, shall become a member of Genesis Holdco (the "Genesis Holdco Operating Agreement"):

> [Genesis Holdco] shall indemnify and hold harmless the Directors and each current and former officer and employee of the [Genesis Holdco] against any loss, damage or expense (including, without limitation, attorneys' fees, including those incurred in enforcing this indemnity) incurred by such Director, officer or employee as a result of any act performed or omitted on behalf of [Genesis Holdco] or in furtherance of its interests, except to the extent that it is finally determined that such Director, officer or employee acted in a manner that constituted gross negligence or willful misconduct. [Genesis Holdco] shall, at the request of such Director, officer or employee, advance amounts and/or pay expenses as incurred in connection with [Genesis Holdco's] indemnification obligation contained in this Section.

Genesis Holdco Operating Agreement ¶ 14.

11. The actions and investigations which give rise to the Moro Claims include, without limitation, the following:

A. <u>The SEC Action</u>

12. On January 12, 2023, the U.S. Securities and Exchange Commission (the "SEC") filed a lawsuit (the "SEC Action") solely against Genesis Capital and Gemini Trust Company, LLC ("Gemini") in the District Court for the Southern District of New York, alleging that Genesis Capital and Gemini violated Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act") and seeking permanent injunctive relief, disgorgement of ill-gotten gains plus prejudgment interest, and civil penalties. *See Securities and Exchange Commission v. Genesis Global Capital, LLC and Gemini Trust Co., LLC*, Case No. 23-cv-00287, ECF No. 1 (S.D.N.Y. Jan. 12, 2023).

13. More specifically, the SEC's complaint alleges that between February 2021 and November 2022, Genesis Capital and Gemini engaged in an unregistered offer and sale of securities to U.S. retail investors, in violation of the federal securities laws, through an investment opportunity termed the "Gemini Earn" program, by which investors tendered crypto assets to Genesis Capital (with Gemini acting as the agent) in exchange for future interest payments. Genesis Capital then allegedly pooled the crypto assets from Gemini Earn investors with assets from other investors and deployed the crypto assets—primarily by lending the crypto assets to institutional counterparties—in order to generate revenue for its business, including the revenue necessary to pay interest to Gemini Earn investors. Genesis Capital allegedly earned revenue by lending the crypto assets at a higher rate than it paid to Gemini Earn and other investors and Gemini earned revenue by deducting an "agent fee" from interest payments made to Gemini Earn investors.

6

14. While Moro was not involved in the investigation that precipitated the commencement of the SEC Action and is not named as a defendant in the complaint, he may be called on to participate in the SEC Action. *See infra* ¶¶ 22-24. As a result, Moro has a claim for Future Defense Costs in connection with the SEC Action.

B. The McGreevy Action

15. On January 23, 2023, certain individuals filed a class action lawsuit (the "Securities Plaintiffs") against Digital Currency Group, Inc. ("DCG") and Barry Silbert in the United States District Court for the District of Connecticut. *See William McGreevy, Ashwin Gowda, Translunar Crypto LP, Christopher Buttenham, and Alex Sopinka v. Digital Currency Group, Inc., and Barry Silbert*, Case No. 3:23-cv-00082 (the "McGreevy Action"), ECF No. 1 (D. Conn. Jan. 23, 2023). The Debtors contend that each of the Securities Plaintiffs also filed claims against the Debtors based on purported liabilities arising out of the causes of action asserted in the McGreevy Action, both in their individual capacities and as proposed lead plaintiffs on behalf of the purported class. Moro has no basis to dispute that but is unable to verify the Debtors' contention based on the information publicly available on the Debtors' claims agent's website.

16. On November 13, 2023 (after the filing of the Moro Claims), the Securities Plaintiffs filed an amended complaint in the McGreevy Action at ECF No. 135 (the "McGreevy Complaint"). The McGreevy Complaint names as co-defendants Moro as well as each of DCG, the ultimate corporate parent of the Debtors, Barry Silbert ("Silbert"), founder and Chief Executive Officer of DCG, Glenn Hutchins, Lawrence Lenihan, Michael Kraines, Mark Murphy, and Derar Islim.

17. The Securities Plaintiffs allege the defendants misled investors regarding the insolvency of Genesis Capital, which allegedly stopped honoring redemption requests from

7

lenders attempting to obtain their digital assets in November 2022. The McGreevy Complaint asserts five claims against the defendants: (i) control person liability pursuant to Section 15 of the Securities Act for Genesis Capital's alleged violations of Section 5 and 12(a)(1) of the Securities Act; (ii) primary "scheme liability" under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder; (iii) control person liability pursuant to Section 20(a) of the Exchange Act for Genesis Capital's alleged violation of Section 10(b) of Exchange Act; (iv) primary liability for deceptive and unfair practices in violation of the Connecticut Unfair Trade Practices Act; and (v) primary liability for deceptive and unfair practices in violation of New York Uniform Deceptive Trade Practices Act.

18. On December 15, 2023, Moro filed his *Memorandum of Law in Support of Defendant Soichiro "Michael" Moro's Motion to Dismiss Plaintiff's Amended Complaint*. *See* McGreevy Action at ECF No. 138-1 ("Moro's Motion to Dismiss"). Moro's Motion to Dismiss the McGreevy Action is currently pending before the Connecticut District Court.

19. Moro has a claim for Contingent Indemnification Claims, Incurred Defense Costs, and Future Defense Costs in connection with the McGreevy Action.

C. <u>The NYAG Action</u>

20. On October 19, 2023, New York Attorney General Letitia James filed a lawsuit (the "NYAG Action") against Gemini, each of the Debtors, DCG, Silbert, and Moro in the Supreme Court of the State of New York, County of New York. *See N.Y. v. Gemini Trust Co., LLC et al.,* Index No. 452784/2023 (Sup. Ct. N.Y. Cty. Oct. 19, 2023). The complaint in the NYAG Action alleges, among other things, that the defendants defrauded investors of more than $1 billion through the Gemini Earn program.

8

21. Moro has a claim for Contingent Indemnification Claims, Incurred Defense Costs, and Future Defense Costs in connection with the NYAG Action.

D. The Government Investigations

22. As the Debtors are aware, there are other ongoing governmental investigations relating to the Debtors and that have or may in the future require Moro's participation (collectively, the "Government Investigations").

23. For example, on September 7, 2023, *Bloomberg* published a story titled "Winklevoss Claims Fuel US Probe of Silbert's DCG Crypto Empire" that stated:

> US law enforcement officials are homing in on the $1.1 billion promissory note that DCG issued to Genesis in the aftermath of the Three Arrows failure, and what Silbert told investors and others about the arrangement, according to the people familiar with the US probe. Federal prosecutors and regulators have talked to former and current Genesis executives, including former CEO Michael Moro, said one of the people. An attorney for Moro declined to comment.
>
> New York Attorney General Letitia James's office has also sought interviews with former and current Genesis executives in recent months as part of its own investigation into DCG.

24. Moro has a claim for Incurred Defense Costs and Future Defense Costs in connection with the Governmental Investigations.

E. The Company's Internal Investigation

25. In connection with the Company's own internal investigation (the "Internal Investigation") concerning, among other things, the Company's business dealings with 3AC (as defined in the Objection), the Company's advisors have requested documents and other information from Moro and Moro and his counsel have cooperated in good faith with those requests.

26. Moro has a claim for Incurred Defense Costs and Future Defense Costs in connection with the Company's Internal Investigation.

9

F. Future Actions

27. Moro also has a claim for Contingent Indemnification Claims and Future Defense Costs for any future action or proceeding that may be asserted against him or which otherwise give rise to Future Defenses Costs, including, without limitation, in connection with any new claims asserted against him in the pending actions described above or in connection with any future action or proceeding which may be commenced against Moro in connection with his various roles with the Company (the "Future Actions" and together with the SEC Action, the McGreevy Action, the NYAG Action, the Government Investigations and the Internal Investigation, the "Actions and Investigations").

## ARGUMENT

A. The Moro Claims Should Be Allowed Under Sections 502(a)-(b)

28. Federal Rule of Bankruptcy Procedure Rule 3001(f) dictates that a properly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. *See* Fed. R. Bankr. P. 3001(f). Unless a claim is challenged, it is deemed allowed under 11 U.S.C. § 502(a). Any party objecting to the claim has the burden of putting forth evidence sufficient to negate the *prima facie* validity of the claim by refuting one or more of the facts in the filed claim. *See In re Waterman Steamship Corp.*, 200 B.R. 770, 774-75 (Bankr. S.D.N.Y. 1996); *In re McCoy*, 163 B.R. 206, 209 (Bankr. M.D. Fla. 1994) ("Claims are prima facie valid as to the claim and the amount. . . . Debtor must present affirmative proof to support an objection and overcome the prima facie validity of the claim."). If the objector "produces sufficient evidence to negate one or more of the sworn facts in the proof of claim," the burden to demonstrate an entitlement to payment on its claim shifts back to the claimant. *See In re Hercules Offshore, Inc.*, 571 B.R. 633, 638 (Bankr. D. Del. 2017).

10

29.     The Moro Claims, which were properly filed and executed and disclosed Moro's relationship to the Debtors and the source of the Debtors' liability to Moro, contain information sufficient for the Debtors to determine the source of their liability to Moro.  *See* Moro Claims ¶¶ 4-8; *supra* ¶¶ 11-27.  Moro filed the Moro Claims on May 19, 2023.  At that time, (i) neither the McGreevy Complaint nor the NYAG Complaint had been filed and (ii) the Debtors were keenly aware of a number of ongoing governmental investigations involving the Debtors that may or may not have required Moro's participation and were also aware of the likelihood of lawsuits being commenced.  Under the circumstances and given the May 22, 2023 bar date (some 5 months before the NYAG filed the NYAG Complaint and 6 months before the Securities Plaintiffs filed the McGreevy Complaint), Moro sufficiently and adequately described the Actions and Investigations in a way that allowed the Debtors to understand the claims being asserted against them.  For this reason, the Debtors' objection to the Moro Claims on the basis that they do not meet the standard for *prima facie* validity should be overruled.

30.     Moreover, the Debtors have failed to provide any evidence negating the validity of the Moro Claims other than the unsubstantiated, conclusory statement that "[t]he Moro Claims do not contain any information sufficient for the Debtors to determine the source of the alleged liability beyond vague reference to 'pending lawsuits, investigations, and disputes', none of which are identified by name . . . [and] therefore [the Debtors] submit that the Moro Claims do not meet the standards for *prima facie* validity and should be dismissed . . . ." Objection ¶ 19.  The Debtors' statement alone, without affirmative proof, is insufficient to negate the *prima facie* validity of the Moro Claims and the Objection should thus be overruled.  Indeed, as demonstrated above and given the status of the Actions and Investigations at the time of the bar date, the Moro Claims allege facts sufficient to support Moro's claims against the Debtors' estates.

B. The Objection Under Section 502(e)(1)(B) Should Be Overruled In Part

31.     Section 502(e)(1)(B) of the Bankruptcy Code states, in pertinent part, that:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—
>
> . . .
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . .

11 U.S.C. § 502(e)(1)(B). The Debtors must establish that Moro has asserted a (i) contingent claim (ii) for reimbursement of a debt (iii) for which the Debtors and Moro are co-liable. *See In re GCO, LLC*, 324 B.R. 459, 465 (Bankr. S.D.N.Y. 2005); *In re Drexel Burnham Lambert Group Inc.*, 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992). The Debtors have the burden of proof on each of three elements set forth in section 502(e)(1)(B). *See Juniper Dev. Group v. Kahn (In re Hemingway Trans., Inc.)*, 993 F.2d 915, 925 (1st Cir.1993) (holding that the objecting party bears the burden of submitting substantial evidence on each element under section 502(e)(1)(B)); *In re RNI Wind Down Corp.*, 369 B.R. 174, 181 (Bankr. D. Del. 2007) ("*RNI Wind Down*") (applying the burden of proof standard recited in *In re Hemingway, Trans., Inc.*).

32.     Moro does not dispute that the Debtors can satisfy all three requirements for disallowance under section 502(e)(1)(B) with respect to Moro's Contingent Indemnification Claims related to the McGreevy Action and the NYAG Action, subject to the Debtors properly evidencing the proofs of claim filed by the Securities Plaintiffs in the McGreevy Action do in fact assert liabilities arising out of the scope of the cause of action asserted in the McGreevy Action. However, the Debtors have failed to establish that: (i) they could be co-liable under section 502(e)(1)(B) with respect to Moro's Contingent Indemnification Claims related to the Future

12

Actions; (ii) the Future Defense Costs are contingent; and (iii) Moro is "liable with the [D]ebtor[s]" to a third-party for his Future Defense Costs. Thus, neither the Contingent Indemnification Claims related to the Future Actions nor the Future Defense Costs are subject to disallowance under section 502(e)(1)(B).

> **i. The Debtors Are Not Co-Liable With Respect to (a) the Contingent Indemnification Claims Related to the Future Actions or (b) the Future Defense Costs**

33. "The co-liability requirement mandates a finding that the causes of action in the underlying lawsuit assert causes of action upon which, if proven, the debtor could be liable but for the automatic stay." *In re Vectrix Business Solutions, Inc.*, Case No. 01-35656-SAF-11, 2005 WL 3244199, at *3 (Bankr. N.D. Tex. Sept. 1, 2005) (citing *In re Wedtech Corp.*, 85 B.R. 285, 290 (Bankr. S.D.N.Y. 1988) ("*Wedtech*")).

34. The Debtors have not demonstrated how, if at all, they could be co-liable with Moro with respect to Moro's Contingent Indemnification Claims related to the Future Actions. The Debtors cannot make that showing at this time because the Future Actions have not yet been commenced, are not yet known, and may conceivably assert claims that do not implicate co-liability. Accordingly, the Debtors cannot satisfy section 502(e)(1)(B)'s co-liability requirement with respect to Moro's Contingent Indemnification Claims related to the Future Actions and the Objection should be overruled in such respect.

35. There is plainly no co-liability for the Future Defense Costs. Those are claims exclusive to Moro (based on his rights under applicable law and the Company's governance documents). To be sure, the parties in the Actions and Investigations have no legal entitlement to recover Moro's Defense Costs and indeed none have asserted such a right. *See In re Chemtura Corp.*, 436 B.R. 286, 296 (Bankr. S.D.N.Y. 2010) ("*Chemtura*") ("As the Debtors' counsel

admitted at oral argument, 'obviously the amounts [the Corporate Claimants] owe to their defense counsel are not amounts that they owe to the [Tort Plaintiffs].'").

36. In *Chemtura*, the debtors objected to proofs of claim filed by five claimants that were corporations for contribution and/or indemnification in connection with certain amounts the corporate claimants already had paid or might be called upon to pay in the future in certain tort litigation, including future defense costs associated with that litigation. *See id.* at 288-92. This bankruptcy court held that:

> [u]nder the inclusive language of section 502(e)(1)(B), and the broad interpretations of co-liability in the caselaw, the Debtors have satisfied the co-liability element with respect to the great bulk of the Unliquidated Contribution Claims. ***They have failed to do so, however, in one respect. To the extent the Corporate Claimants are asserting claims for the costs of defending diacetyl actions against the underlying Tort Plaintiffs, I rule that the Debtors have not established co-liability. Although such claims for defense reimbursement have some trappings of a traditional contribution claim, they differ from the remainder of the Contribution Claims in that they don't have their origins in a primary liability to the underlying Tort Plaintiff.*** As the Debtors' counsel admitted at oral argument, 'obviously the amounts [the Corporate Claimants] owe to their defense counsel are not amounts that they owe to the [Tort Plaintiffs].'

*Id*. at 296 (internal footnotes and citations omitted) (emphasis added).

37. Indeed, the Debtors are not, nor could they be, co-liable with Moro to any plaintiff or governmental body in the Actions and Investigations for Moro's Future Defense Costs. At this time, the Debtors could only potentially be co-liable for Moro's *liability* to those parties based on the merits of the claims in the Actions and Investigations. Moro's Future Defense Costs are therefore not subject to disallowance under section 502(e)(1)(B) and the Objection should be overruled. *See In re RNI Wind Down Corp.*, 369 B.R. 174 188-91 (Bankr. D. Del. 2007) (holding that a debtor's former officer's claim for advancement and indemnification of defense costs would not be disallowed because the debtor and the officer could only be co-liable on the underlying claims, and not on the defense costs associated with the claims); *In re Vectrix Business Solutions,*

14

*Inc.*, 2005 WL 3244199, at *3-4 ("Consequently, a claim by Lynd for indemnification for any liability in the *Ferrer* law suit would be disallowed under § 502(e)(1)(B). But Lynd only seeks an indemnification claim for his attorney's fees incurred in defending the lawsuit. Vectrix would not be co-liable with Lynd to the *Ferrer* plaintiffs for Lynd's attorney's fees in the *Ferrer* suit. Vectrix would only be coliable for Lynd's liability to the *Ferrer* plaintiffs on the merits of their securities law claim. Lynd's indemnification claim for attorney's fees is therefore not subject to § 502(e)(1)(B).").[3]

### ii. Moro's Future Defense Costs Are Not Contingent Claims

38. Moro Future Defense Costs are not contingent claims, they are unliquidated, and the Objection should therefore be overruled on this separate ground. "A claim is contingent where it 'has not yet accrued and . . . is dependent upon some future event that may never happen.'" *In re GCO Services, LLC*, 324 B.R. 459, 466 (Bankr. S.D.N.Y. 2005) (quoting *In the Matter of Provincetown–Boston Airlines, Inc.*, 72 B.R. 307, 310 (Bankr. M.D. Fla. 1987)). In contrast, an unliquidated claim is one "in which the amount owed has not been determined.'" *RNI Wind Down*, 369 B.R. at 183 (quoting Black's Law Dictionary, p. 264 (8th ed.2004)).

---

[3] An older line of cases held that the concept of co-liability under section 502(e)(1)(B) is broad enough to include defense costs relating to the underlying lawsuit, even though a debtor could not be co-liable to the plaintiff in the underlying lawsuit for such defense costs. *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 92, 97 (S.D.N.Y. 1992). This was based on a theory that the defense costs are "inextricably associated with and contingent upon" the underlying lawsuit. *In re Alper Holdings USA*, No. 07-12148 (BRL), 2008 WL 4186333, at *7 (Bankr. S.D.N.Y. Sept. 10, 2008). These courts' expansive interpretation of the co-liability requirement in section 502(e)(1)(B) ignores the plain meaning of the statute and the fundamental distinction between indemnification for damages versus for defense costs and has not been followed in more recent decisions, such as in *Chemtura* and *RNI Wind Down*. Courts interpreting section 502(e)(1)(B) in such a way often rely on the section's legislative history to support their expansive interpretation of the co-liability requirement. *See, e.g., Wedtech*, 85 B.R. at 289–90. As the statute is clear and unambiguous on its face there is no need to consult the legislative history. *See U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989). If one were to do so, however, the purpose of the statute is simple—"to prevent a double payment by the estate." *Wedtech*, 85 B.R. at 290. There is no risk of the Debtors having to make a double payment for Moro's Future Defense Costs. Thus, overruling the Debtors' Objection is consistent with the primary purpose of section 502(e)(1)(B).

15

39. In *RNI Wind Down*, the Delaware Bankruptcy Court held that an officer's claim for advancement of defense costs was not contingent, thereby distinguishing that claim from an indemnification claim requesting reimbursement, writing:

> [A]dvancement, by contrast, is a right whereby a potential indemnitee has the ability to force the company to pay his litigation expenses as they are incurred regardless of whether he will ultimately be entitled to indemnification. Advancement is typically not conditioned on a finding that the party seeking advancement has met any standard of conduct. The only proviso is that the officer must undertake to repay all monies advanced to him if it is later determined that he is not entitled to indemnification.

*RNI Wind Down*, 409 B.R. at 186.

40. *RNI Wind Down* involved a corporate officer who had been named as a defendant in a civil action brought by the SEC. He filed a proof of claim against the debtor's estate, seeking to enforce his right of indemnification and advancement, under the company's certificate of incorporation and bylaws, for his costs of defense, after he'd executed an undertaking to repay amounts advanced if it were ultimately determined that he wasn't entitled to indemnification. *See RNI Wind Down*, 369 B.R. at 180-81. The Delaware Bankruptcy Court overruled the section 502(e)(1)(B) objection to that claim, finding that of the three requirements for section 502(e)(1)(B) disallowance, only the "reimbursement" requirement had been satisfied, and that the "contingent" and "co-liable" requirements had not been. *See id.* at 182-87. The court held that the mere fact that it could not be determined at the time of the objection whether the debtor's former officer had acted in good faith, as required for him to obtain indemnification for his defense costs, and that he might ultimately be liable for repayment of defense costs advanced by the debtor if it were determined that such good faith was lacking, did not render the former officer's claim, pursuant to the debtor's by-laws, for advancement of whatever defense costs he had incurred a "contingent"

16

claim, such as might be disallowed under section 502(e)(1)(B). *See id.*[4] The former officer's undisputed right to pre-indemnification advancement of certain litigation related expenses was anything but contingent, the *RNI Wind Down* court held, noting that the advancement itself was not conditioned on a finding that the party seeking advancement had met any standard of conduct. *See id.* Because Moro's right to advancement of his future Defense Costs is not dependent upon any future event under the Genesis Holdco or Capital Operating Agreements, the Future Defense Costs are therefore not contingent.

41. In *Chemtura Corporation*, this Court agreed with the Delaware Bankruptcy Court's determination that defense costs incurred by a former officer in the future are unliquidated, but not contingent, claims:

> But *RNI* involved facts very different from those here. It did not involve a claim for contribution or indemnity for amounts paid to a third party (there the SEC; here Tort Claimants) upon a finding of wrongful conduct. Rather, it involved a claim simply for costs of defense, which I've already ruled may likewise be recovered here. Significantly, the claimant in *RNI* had waived any claims he might have for amounts he might have to pay on the underlying claims (there, by the SEC). ***The right to payment that Judge Sontchi found to be 'unliquidated but not contingent' was the right to the advancement of those costs of defense, and not the right to contribution or indemnity for amounts ultimately paid to a third party—the circumstance that would be relevant here. Judge Sontchi merely found (understandably, given appropriate analysis) that the right to advancement was a then-existing right (under the certificate of incorporation, bylaws and Delaware law), subject only to uncertainty at the time as to just how much the defense costs would turn out to be.*** Although the *RNI* estate might thereafter have a separate right in the future to establish a separate cause of action against the corporate affiliates to secure repayment of amounts advanced, that separate right didn't affect his right to advancement at the time.

---

[4] In reaching this conclusion, the Delaware Bankruptcy Court distinguished cases where courts found that claims for indemnification were contingent under section 502(e)(1)(B) because a right to indemnification must await a future decision as to the underlying liability of the entity requesting indemnification. *See id.* at 184-85. In particular, the Delaware Bankruptcy Court noted that the decisions *In re Wedtech Corp.*, 85 B.R. 285 (Bankr. S.D.N.Y. 1988), and *In re Provincetown-Boston Airlines Inc.*, 72 B.R. 307 (Bankr. M.D. Fla. 1987), both of which held that claims for indemnification are contingent under section 502(e)(1), were inapplicable to the claim because neither of those decisions addressed requests for advancement. In contrast to both *Wedtech* and *Provincetown-Boston Airlines*, the Delaware Bankruptcy Court noted that the claimant's right to advancement was already established; according to the debtors' corporate charter, he had the ability to force the debtors to pay his litigation expenses as they were incurred. *See RNI Wind Down*, 369 B.R. 186-87.

17

> . . .
>
> Thus, while we all understand and agree that there is a distinction between contingent and unliquidated, that distinction isn't material here. ***The unliquidated but non-contingent costs of defense here still result in a potentially allowable claim***, but the claims for contribution in the event that a Tort Claimant succeeds against Corporate Claimants are still contingent, and satisfy this prong of the 3-part test for establishing 502(e)(1)(B) disallowance.

*Chemtura*, 436 B.R. at 297 (emphasis added).

42. The Debtors' obligation to pay/advance Moro's Future Defense Costs is not contingent. It is an existing obligation, not subject to the satisfaction of any conditions, under section 14 of each of the Genesis Holdco Operating Agreement and the Genesis Capital Operating Agreement. Moro has incurred and continues to incur substantial costs and legal fees in defending and responding to the Actions and Investigations. The Genesis Holdco Operating Agreement and the Genesis Capital Operation Agreement provide that the Debtors shall, at the request of a former officer or director, advance amounts and/or pay expenses as incurred in connection with their indemnification obligations. *See* Genesis HoldCo Operating Agreement ¶ 14; Genesis Capital Operating Agreement ¶ 14.[5] Like the amount of the officer's claim at issue in *RNI Wind Down*, the amount of costs and legal fees that the Debtors agreed to pay and/or advance under the Genesis Holdco and Capital Operating Agreements are not fully liquidated, but the costs and legal fees also are not contingent. *See RNI Wind Down Corp.*, 369 B.R. at 182–83; *see also Chemtura*, 436 B.R. at 297. Because such liability is not contingent, the Court should overrule the Objection as to the Future Defense Costs.

---

[5] Indeed, Moro previously made two separate demands of the Debtors for indemnification with respect to defense costs Moro incurred through the dates of such requests and for the advancement of additional defense costs Moro would incur going forward. The Debtors denied both requests.

## RESERVATION OF RIGHTS

43.  Moro repeats and incorporates herein his reservation of rights set forth in paragraphs 13-15 of the Moro Claims.  Additionally, to the extent the Court sustains the Objection, Moro reserves his right under section 502(j) of the Bankruptcy Code to reassert any disallowed portion of his claims at a later date.  To the extent that there are facts in dispute, Moro reserves his right to present evidence at a trial on the Objection.

## NOTICE

44.  This Response will be served in accordance with and on the parties listed in the second paragraph 29 of the Objection.

## CONCLUSION

WHEREFORE, for the reasons set forth in this Objection, Moro respectfully requests that this Court (a) overrule the Objection in part and (b) grant such other and further relief as is just and proper.

Dated: January 23, 2024
      New York, New York

ARNOLD & PORTER KAYE SCHOLER LLP

/s/ Benjamin Mintz
Benjamin Mintz
Marcus Asner
Justin Imperato
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
Tel: (212) 836-8000
Facsimile: (212) 836-8689
Email: benjamin.mintz@arnoldporter.com
      marcus.asner@arnoldporter.com
      justin.imperato@arnoldporter.com