Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |
| | **Related Docket Nos. 999 & 1076** |

**DEBTORS' REPLY IN SUPPORT OF THE SEVENTH
OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO CERTAIN CLAIMS
PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (MODIFY AND
ALLOW AS MODIFIED) WITH RESPECT TO CLAIM NOS. 402 AND 405**

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

## **TABLE OF CONTENTS**

                                                                                          **Page**

TABLE OF AUTHORITIES ........................................................................................    ii

PRELIMINARY STATEMENT ................................................................................    1

BACKGROUND .........................................................................................................    3

A.    Claim No. 402. ...................................................................................................    3

B.    Claim No. 405. ...................................................................................................    5

C.    Seventh Omnibus Objection and the Claimants' Response. ...................................    6

ARGUMENT ...............................................................................................................    8

A.    The Plain Language of the MLAs Undermines Claimants' Reading
      of the Late Fees. .................................................................................................    9

      1.    The MLAs plainly state that the Late Fees accrue at a 1%
            annual interest rate. ....................................................................................    9

      2.    The Claimants' reading of Section III(b) is unreasonable. .........................    13

B.    The Disputed Claims do not Provide Sufficient Evidence to
      Support the Disputed Late Fees. ...........................................................................    14

C.    The Disputed Loan Fees Were Improperly Calculated on a
      Compounded Basis. ............................................................................................    18

CONCLUSION.............................................................................................................    20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abir v. Malky Inc.*,
    59 A.D.3d 646 (Sup. Ct. N.Y. 2009) ................................................................ 14

*Adar Bays LLC v. GeneSYS ID, Inc.*,
    179 N.E.3d 612 (N.Y. 2021) ............................................................................. 13

*DRAW Cap. Partners, LLC v. Republic of Argentina*,
    No. 18-CV-00548, 2018 WL 5777024 (S.D.N.Y. Nov. 2, 2018) ...................... 18

*Greenfield v. Philles Recs.*,
    780 N.E.2d 166 (N.Y. 2002) ............................................................................. 12

*In re City of New York*,
    No. 35057/04, 2006 WL 2446140 (N.Y. Sup. Ct. Aug. 24, 2006) ................... 18

*Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*,
    127 A.D.3d 48 (N.Y. App. Div. 2015) ............................................................. 13

*Prospect Cap. Corp. v. Credito Real USA Fin. LLC*,
    No. 23-CV-3005 (JSR), 2023 WL 7498071 (S.D.N.Y. Nov. 14, 2023) ...... 16, 17

*Reiss v. Fin. Performance Corp.*,
    764 N.E.2d 958 (N.Y. 2001) ............................................................................. 16

*Rourke v. Fred H. Thomas Associates*,
    216 A.D.2d 717 (N.Y. App. Div. 1995) ........................................................... 18

*Schron v. Troutman Sanders LLP*,
    986 N.E.2d 430 (N.Y. 2013) ............................................................................. 16

*Vintage, LLC v. Laws Const. Corp.*,
    920 N.E.2d 342 (N.Y. 2009) ............................................................................. 16

**Rules and Statutes**

11 U.S.C. § 502 ........................................................................................................ *passim*

Fed. R. Bankr. P. 7012(b) ........................................................................................ 15

**Page(s)**

Fed. R. Bankr. P. 3007 ......................................................................................................... 1

N.Y. Penal L. § 190.40 ....................................................................................................... 13

N.Y. Penal L. § 190.42 ....................................................................................................... 13


**Other Authorities**

Annualize, Merriam-Webster Dictionary Online, https://www.merriam-
webster.com/dictionary/annualized (last visited Jan. 12, 2024) ........................................ 10

EVIDENCE, Black's Law Dictionary (11th ed. 2019)....................................................... 16

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors," and these cases, the "Chapter 11 Cases") hereby submit this reply (the "Reply") in support of the *Debtors' Seventh Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Modify and Allow as Modified)* (the "Seventh Omnibus Objection") (ECF No. 999) and in reply to the *Response in Opposition to Debtors' Objections to Claim Nos. 402 and 405 in Seventh Omnibus Objection [ECF No. 999]* (the "Response") [1] (ECF No. 1076), and seek entry of a supplemental proposed order substantially in the form attached hereto as Exhibit A modifying the Disputed Claims (defined below) and allowing the Disputed Claims as modified.  In support of this Reply, the Debtors rely upon the *Supplemental Declaration of Paul Kinealy in Support of the Debtors' Reply in Support of the Seventh Omnibus (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Modify and Allow as Modified) With Respect to Claim Nos. 402 and 405* (the "Supplemental Kinealy Declaration"), attached hereto as Exhibit B and incorporated herein by reference, and respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1.      The nature of the parties' disputes as they relate to Claim No. 402 and Claim No. 405 are narrow.  First, does the phrase "1% (annualized, calculated daily)" used in the written agreements governing the parties' lending relationships establish a 1% *annual* interest rate or a 1% *daily* interest rate?  The Debtors maintain that this language plainly means what the agreement says.  "Annualized" specifies that the 1% rate applicable to the Late Fees is to be calculated over

---

[1]      Capitalized terms used herein but not defined shall have the meaning ascribed to them in the Seventh Omnibus Objection or the Response, as applicable.

[2]      All capitalized terms used in this Preliminary Statement shall have the meanings ascribed to them elsewhere in this Reply.

the period of one year, which is necessary where the loans between the parties may be for a period of more or less than one year.  Indeed, the Claimants do not dispute, and even endorse, this bedrock principle of what "annualized" is generally understood to mean in the context of short term loans such as those at issue here.  All that the Claimants are able to offer in their Response are instead superficial contract interpretation arguments that are either self-defeating, unsupported, or entirely irrelevant.  Indeed, as an implicit acknowledgement of the frailty of their arguments made to support the Debtors' purported liability, the Claimants go on to gesture towards the potential, and premature need, for discovery and extrinsic evidence that the Claimants baselessly hope exists to contradict the plain terms of the parties' agreement.[3]

2.      Second, and similarly, the Claimants have calculated the prepetition Loan Fees such that the applicable interest is compounding daily (*i.e.*, accruing interest on interest), which is not provided for by any language in the MLAs or Loan Term Sheets.  The Claimants have also failed to identify a legal basis outside the four corners of the contract entitling them to such compound interest, nor could they.  Under settled law in New York, Claimants cannot recover compound interest absent an express agreement between the parties, or an applicable statute, providing for such interest.  Neither the MLAs nor any other provision entitles the Claimants to such interest on interest under governing New York law.

3.      What is before the Court is an objection filed by the Debtors to disallow those portions of the Disputed Claims relating to the Disputed Late Fees and the Disputed Loan Fees.  As to the former, the Disputed Claims do not provide any information or evidence to establish the Debtors' liability for the Disputed Late Fees, and so should not be afforded prima facie validity.

---

[3]      The parties agree that pursuant to the Claims Objection Procedures Order, this matter is proceeding as a Sufficiency Hearing (as defined therein) without consideration of evidence beyond what was submitted in the Disputed Claims.  The Debtors submit that the Court can decide the Seventh Omnibus Objection on that basis.  *See* Claims Objection Procedures Order ¶ 2(a).

The Response fares no better and amounts to an effort to read the word "annualized" out of the parties' agreement. Moreover, because the language at issue was standard language used across the Debtors' lending relationships, the Claimants' efforts to misconstrue it in their favor would potentially have significant consequences for the Debtors' claims pool more broadly.[4] As to the Disputed Loan Fees, the Claimants have likewise failed to provide any information or evidence to establish the Debtors' liability for the Disputed Loan Fees as calculated, another basis on which the Disputed Claims should not be afforded prima facie validity. Consequently, the Debtors respectfully submit that this Court should sustain the Seventh Omnibus Objection, overrule the Response, and enter an order reducing the Disputed Claims to the amounts that are supported by both the Disputed Claims themselves and the Debtors' Books and Records.

## **BACKGROUND**

### A. Claim No. 402.

4.      On June 3, 2020, the holder of Claim No. 402 ("Claimant No. 402"),[5] as lender, entered into a Master Loan Agreement with Debtor Genesis Global Capital, LLC ("GGC"), as borrower (the "Claim No. 402 MLA"),[6] which the parties agree governed the lending relationship between the parties.

5.      The Claim No. 402 MLA states that "[f]or each Calendar Day in excess of the Maturity Date . . . in which Borrower has not returned the entirety of the Loaned Assets or failed to timely pay any outstanding Loan Fee . . . , Borrower shall incur an additional fee (the "Late

---

[4]      The Debtors do not concede and expressly reserve rights as to application of the Claimants' arguments to other claimants who have not pressed their tortured interpretation of the form of master lending agreement used by the Debtors.

[5]      The names of the holders of Claim No. 402 and Claim No. 405 have been redacted pursuant to the *Stipulation and Confidentiality Agreement and Protective Order* (ECF No. 238). Redacted copies of Claim No. 402 and Claim No. 405 are attached hereto as Exhibit C and Exhibit D respectively.

[6]      The Claim No. 402 MLA is attached as Exhibit 1 to Claim No. 402.

Fee") of a **1% (annualized, calculated daily)** on all outstanding portions of the Loaned Digital

Currencies." *See* Claim No. 402, Ex. 1, Claim No. 402 MLA § III(b) (emphasis added).

6.      The Claim No. 402 MLA also provides that GGC will pay interest in the form of a

Loan Fee (as defined therein).  *See* Claim No. 402, Ex. 1, Claim No. 402 MLA § III(a).  It further

provides in relevant part:

> Except as Borrower and Lender may otherwise agree, Loan Fees
> shall accrue from and include the date on which the Loaned Digital
> Currencies are transferred to Borrower to the date on which such
> Loaned Digital Currencies are repaid in their entirety to Lender.
>
> Lender shall calculate any Loan Fees owed on a daily basis and
> provide borrower with the calculation upon request.  The Loan Fee
> will be calculated off all outstanding portions of the Loaned Digital
> Currencies.

*Id.*

7.      On December 27, 2021, Claimant No. 402, GGC, and Debtor Genesis Asia Pacific

Pte. Ltd. ("GAP") entered into an Assignment and Assumption of Master Loan Agreement,

whereby GGC assigned all of its rights, interests and obligations under the Claim No. 402 MLA

to GAP.

8.      On May 28, 2022, Claimant No. 402, as lender, and GAP, as borrower, entered into

a Loan Term Sheet under the Claim No. 402 MLA (the "Claim No. 402 Loan Term Sheet"),[7]

pursuant to which Claimant No. 402 provided USDC 10,000,000 to GAP as a fixed term loan set

to mature on November 28, 2022 (the "Claim No. 402 Loan").  The Claim No. 402 Loan Term

Sheet provides for an "8.00% annual" borrow fee (*i.e.*, Loan Fee).  Claim No. 402, Ex. 3, Claim

No. 402 Loan Term Sheet.

---

[7]      The Loan Term Sheet entered into under the Claim No. 402 MLA is attached to Claim No. 402 as Exhibit 3.

9.      On May 22, 2023, Claimant No. 402 filed Claim No. 402 in the Chapter 11 Cases. Claim No. 402 asserts a general unsecured claim against GAP for principal, prepetition Loan Fees, and prepetition Late Fees purportedly due under the Claim No. 402 Loan in the aggregate amount of USDC 17,075,824.8878320.

**B.  Claim No. 405.**

10.      On August 6, 2019, the holder of Claim No. 405 ("<u>Claimant No. 405</u>" and, together with Claimant No. 402, the "<u>Claimants</u>"), as lender, entered into a Master Loan Agreement with GGC, as borrower (the "<u>Claim No. 405 MLA</u>"[8] and, together with the Claim No. 402 MLA, the "<u>MLAs</u>"),[9] which governed the lending relationship between the parties.

11.      In terms identical to the Claim No. 402 MLA, the Claim No. 405 MLA states that "[f]or each Calendar Day in excess of the Maturity Date . . . in which Borrower has not returned the entirety of the Loaned Assets or failed to timely pay any outstanding Loan Fee . . . , Borrower shall incur an additional fee (the "<u>Late Fee</u>") of a **1% (annualized, calculated daily)** on all outstanding portions of the Loaned Digital Currencies." *See* Claim No. 405 MLA § III(b) (emphasis added).

12.      In terms identical to the Claim No. 402 MLA, the Claim No. 405 MLA also provides that GGC will pay interest in the form of a Loan Fee (as defined therein). *See* Claim No. 405, Ex. 2, Claim No. 405 MLA § III(a).  It further provides in relevant part:

> Except as Borrower and Lender may otherwise agree, Loan Fees shall accrue from and include the date on which the Loaned Digital Currencies are transferred to

---

[8]      The Claim No. 405 MLA as drafted is between GGC and another third party.  Claimant No. 405 asserts that this third party assigned its obligations and interests under the MLA to Claimant No. 405.  *See* Addendum to Claim No. 405 at 2.  In any case, Claimant No. 405 does not dispute that the language of the Claim No. 405 MLA controls the lending arrangements between Claimant No. 405 and GGC.  *See* Response ¶ 14; Addendum to Claim No. 405 at 2.

[9]      The Claim No. 405 MLA is attached as Exhibit 2 to Claim No. 405.  Each of the MLAs are governed by New York law.  *See* MLAs § XI.

Borrower to the date on which such Loaned Digital Currencies are repaid in their entirety to Lender.

Lender shall calculate any Loan Fees owed on a daily basis and provide borrower with the calculation upon request.  The Loan Fee will be calculated off all outstanding portions of the Loaned Digital Currencies.

*Id.*

13.    On September 20, 2022, Claimant No. 405, as lender, and GGC, as borrower, entered into a Loan Term Sheet  under the Claim No. 405 MLA (the "Claim No. 405 Loan Term Sheet" and, together with the Claim No. 402 Loan Term Sheet, the "Loan Term Sheets"),[10] pursuant to which Claimant No. 405 provided DOT 7,000,000 to GGC as a fixed term loan set to mature on November 21, 2022 (the "Claim No. 405 Loan" and, together with the Claim No. 402, the "Loans").  The Claim No. 405 Loan Term Sheet provides for an "14.00% annual" borrow fee (*i.e.*, Loan Fee).  Claim No. 405, Ex. 1, Claim No. 405 Loan Term Sheet.

14.    On May 22, 2023, Claimant No. 405 filed Claim No. 405[11] in the Chapter 11 Cases. Claim No. 405 asserts a general unsecured claim against GGC for principal, prepetition Loan Fees, and prepetition Late Fees purportedly due under the Claim No. 405 Loan in the aggregate amount of DOT 11,351,699.3276656.

**C.  Seventh Omnibus Objection and the Claimants' Response.**

15.    On November 29, 2023, the Debtors filed the Seventh Omnibus Objection to modify the amount asserted in, and allow as modified, certain Claims, including the Disputed Claims, on the grounds that such asserted amounts were inconsistent with the Debtors' Books and Records and that the Claimants otherwise failed to provide any evidence to support the asserted amounts.  *See* Seventh Omnibus Objection ¶ 16; Ex. B, Kinealy Decl. ¶ 8.  As identified in Exhibit

---

[10]    The Loan Term Sheet entered into under the Claim No. 405 MLA is attached to Claim No. 405 as Exhibit 1.

[11]    Claim No. 402 and Claim No. 405 are referred to in this Reply collectively as the "Disputed Claims".

2 to proposed order attached to the Seventh Omnibus Objection, the Debtors' Books and Records support (a) liability against GAP with respect to Claim No. 402 in the amount of USDC 10,187,945.2006635 and (b) liability against GGC with respect to Claim No. 405 in the amount of DOT 6,313,027.55613159.[12]  The Debtors do not dispute the principal amounts asserted in the Disputed Claims; the Debtors and the Claimants solely disagree about how the Late Fees and Loan Fees (both as defined in the MLAs) are to be calculated under the terms of the MLAs. Supplemental Kinealy Declaration ¶¶ 4-5, 7.

16.    On December 21, 2023, the Claimants filed their Response to the Seventh Omnibus Objection.[13]  At bottom, the Claimants argue that the Late Fees should be calculated as accruing at "1% *per day*".  *See* Response ¶ 24.  Further, the Disputed Claims assert that the Late Fees should also accrue on (i) the underlying principal amount, (ii) all outstanding accrued Loan Fees, and (iii) all outstanding accrued Late Fees.  *See* Supplemental Kinealy Declaration ¶ 5.  The Debtors, on the other hand, have calculated the Late Fees precisely as the MLAs require: accruing at a 1% annual interest rate, calculated daily (*i.e.*, accruing at 1/365% per day), and as accruing only on the amount of unreturned principal—a reading compelled by the plain terms of the MLAs and supported by the Debtors' Books and Records.  *See* Supplemental Kinealy Declaration ¶¶ 5-6.  The below chart consists of the Late Fees for each of the Disputed Claims as determined by the Debtors, on the one hand, and the Claimants, on the other, and the resulting differences (such differences, collectively, the "Disputed Late Fees").  Supplemental Kinealy Declaration ¶ 6.

---

[12]    This amount reflets a DOT 1,000,000 paydown made by GGC on or about November 10, 2022, as reflected in the addendum to Claim No. 405.

[13]    In addition to opposing the Seventh Omnibus Objection, the Claimants affirmatively request that the Court allow the Disputed Claims on a final basis in the amounts asserted.  *See* Response at 1-2.  The Claimants' attempts to make, in effect, an affirmative motion for allowance of the Disputed Claims through a response to a claims objection is procedurally improper.  The only question before the Court is whether to sustain the Debtors' Seventh Omnibus Objection.

|  | Debtors | Claimant | Difference |
|---|---|---|---|
| Claim No. 402 | USDC 12,602.7397260274 | USDC 6,860,950.0815689 | USDC 6,848,347.34184287 |
| Claim No. 405 | DOT 8,876.58273352578 | DOT 4,988,407.82312113 | DOT 4,979,531.2403876 |

17.    In addition, the Disputed Claims, along with calculations contained in the addenda attached thereto, reflect compounding Loan Fees.  Calculating the Loan Fees as compound interest is similarly unsupported by the plain language of the MLAs and the Loan Term Sheets.  The Debtors, on the other hand, have calculated the Loan Fees as simple interest on the underlying principal, consistent with the term of the underlying agreements and supported by the Debtors' Books and Records.  *See* Supplemental Kinealy Declaration ¶ 7.[14]  The below chart consists of the Loan Fees for each of the Disputed Claims as determined by the Debtors, on the one hand, and the Claimants, on the other, and the resulting differences (such differences, collectively, the "Disputed Loan Fees").  Supplemental Kinealy Declaration ¶ 8.

|  | Debtors | Claimant | Difference |
|---|---|---|---|
| Claim No. 402 | USDC 175,342.466 | USDC 214,874.830 | USDC 39,532.364 |
| Claim No. 405 | DOT 191,032.671 | DOT 248,041.960 | DOT 57,009.289 |

## **ARGUMENT**

18.    As detailed in the Seventh Omnibus Objection, the Debtors request that this Court enter an order modifying the Disputed Claims, overruling the Response, and allowing the Disputed Claims as modified.  The Late Fee Amounts asserted by the Claimants are at odds with the plain language of the MLAs and inconsistent with the Debtors' Books and Records, and the Claimants have otherwise failed to provide any basis to support their tortured reading of the MLAs or that

---

[14]    In addition, the Disputed Claims use a 360-day debt year to determine the applicable daily interest rate with respect to the Loan Fees, which is similarly not supported by the MLAs or the Loan Term Sheets and inconsistent with the Debtors' Books and Records.  Supplemental Kinealy Declaration ¶ 7.

the Debtors are liable for the Disputed Late Fees.  Further, the Claimants' Response attempts to

create ambiguity in the MLAs where none exists and does not offer any additional grounds to

support their assertion that the Debtors are liable for the Disputed Late Fees.  As to the Disputed

Loan Fees, Claimants have likewise failed to provide any information or evidence to establish the

Debtors' liability for the Disputed Loan Fees as calculated.  Consequently, the Disputed Late Fees

and Disputed Loan Fees, as asserted in the Disputed Claims, should not be afforded prima facie

validity, and the Debtors respectfully request that this Court overrule the Response and sustain the

Seventh Omnibus Objection as to the Disputed Claims.

> **A.    The Plain Language of the MLAs Undermines Claimants' Reading of the Late Fees.**

19.    The Debtors and the Claimants disagree as to whether the MLAs unambiguously

provide that the Disputed Late Fees accrued at a 1% annual interest rate.[15]  *See* Response ¶ 24.  As

set forth below, because the MLAs themselves govern the Disputed Claims—and the plain

language of the MLAs themselves cannot support the Claimants' position—the Seventh Omnibus

Objection should be sustained and the Response overruled.

> **1.  The MLAs plainly state that the Late Fees accrue at a 1% annual interest rate.**

20.    Section III(b) of the MLAs, which is the provision directly addressing the accrual

of Late Fees, states in full:

> For each Calendar Day in excess of the Maturity Date or the Recall
> Delivery Day (whichever is applicable) in which Borrower has not
> returned the entirety of the Loaned Assets or failed to timely pay

---

[15]    As noted above, the Claimants also purport to include Late Fees on a compounding basis and on accrued but
unpaid Late Fees and Loan Fees (in additional to unreturned principal).  As the vast majority of the dispute between
the parties relates to the 1% daily vs. annual calculation, the Debtors address solely that methodology in this section.
For the avoidance of doubt, the Claimants' assertion regarding the accrual of Late Fees on any amounts other than
unreturned principal is not supported by the MLAs or the Loan Term Sheets, and inconsistent with the Debtors' Books
and Records, and should be disallowed for those reasons.  Supplemental Kinealy Declaration ¶ 5.  Similarly, and for
the reasons set forth in Section C of this Reply, calculation of the Late Fees on a compound basis is improper as a
matter of New York law.

> any outstanding Loan Fee in accordance with Section III(c),
> Borrower shall incur an additional fee (the "Late Fee") of a 1%
> (annualized, calculated daily) on all outstanding portions of the
> Loaned Digital Currencies.

The use of the term "annualized" in the parenthetical immediately proceeding "1%" specifies that

the annual interest rate applicable to the Loan Fees is 1%. The reason that the MLAs must specify

that the 1% rate has been "annualized" is because the applicable term of any loan entered into via

a separate loan term sheet pursuant to the MLAs could be for a period of less or more than one full

calendar year. The Claimants readily admit, and the Debtors do not dispute, that the Loans at issue

were in fact for less than one year. *See* Response ¶ 31 ("[A] late fee formula in a short-term loan

agreement calling for a numerical percentage rate to be 'annualized' is conspicuous and

overwhelming indication that such rate is based on a period of time shorter than a year.").

21.     Indeed, the very sources cited—and seemingly endorsed—by the Claimants state

that "annualized" and "annual interest rate" are synonymous. *See* Response ¶ 31 ("The term

'annualized' means 'to calculate or adjust to reflect based on a full year.'"); ("As used in finance,

'annualized' refers to the conversion of a short-term rate into an annual rate.").[16] Because the

Loans here were for less than one calendar year, "annualized" as it applies to the Late Fees means

that the 1% rate specified in the MLAs has been adjusted to reflect an annual, full year rate.

22.     The Claimants puzzlingly reach the *opposite* conclusion (and despite the contrary

statements of their own authorities) that "the parties were conspicuously and overwhelmingly

indicating that 1% was <u>not</u> an annual percentage rate." *See* Response ¶ 32. In support of this non-

---

[16]     The Claimants' quote of the definition of "annualized" from the Merriam-Webster Dictionary also
misrepresents the definition provided therein by failing to appreciate that the definition is for the verb "annualize" in
the present tense. *See* Resp. § 31. The Merriam-Webster Dictionary defines "annualize" (present tense) as "to
calculate or adjust to reflect a rate based on a full year." Annualize, Merriam-Webster Dictionary Online,
https://www.merriam-webster.com/dictionary/annualized (last visited Jan. 12, 2024). "Annualized" is listed therein
as the past tense form of the same verb. Plainly, used in the past tense or as an adjective as it is in the MLAs, the word
would mean "**having been** calculated or adjusted to reflect a rate based on a full year."

intuitive reading, the Claimants make three arguments: (i) that an adjacent provision of the MLAs supports their interpretation of Section III(b), (ii) that reading "annualized" to mean an "annual rate" would be "redundant and nonsensical," and (iii) that a 1% per annum Late Fee rate would "undermine[] the very purpose of the Loans having a Late Fee in the first place." *See* Response ¶¶ 33-37. Each of these arguments are readily refuted.

23. First, the Claimants cite to Sections III(a) (which is discussed in further detail below) and (e) of the MLAs, but do not provide any explanation for their conclusory reasoning that "[h]olistically reading these sections together, it is clear that the parties intended the Claimants to calculate the Late as a 1% fee each day the Loans remain outstanding . . . ." *See* Response ¶ 33. Indeed, that is because these sections actually undermine the Claimants' reading of Section III(b). Section III(a) of the MLAs states that "[w]hen a Loan is executed, the Borrower shall be responsible to pay the Loan Fee [*i.e.*, a financing fee for each Loan] as agreed to herein **and annualized in the relevant Loan Term Sheet** . . . ." (emphasis added). The Loan Term Sheets, in turn, each specify a "Borrow Fee" (*i.e.*, a Loan Fee) of "8.00% **annual**" or "14.00% **annual**." *See* Claim No. 402, Ex. 3 (emphasis added); Claim No. 405, Ex. 1 (emphasis added). In other words, "annualized" in Section III(a) refers to an annual, not a daily, interest rate, which is what the Loan Term Sheets reflect. In fact, this is precisely how the Claimants themselves treated the Loan Fee rate in the evidence submitted in the Disputed Claims. *See* Claim No. 402, Ex. 4 (showing a Loan Fee of "8%/year" calculated at a daily rate of 0.0222%); Claim No. 405, Ex. 3 (showing a Loan Fee of "14/year" calculated at a daily rate of 0.0389%).[17] Section III(e) itself

---

[17] To the extent that the Claimants are attempting to argue that the use of "annual" in the Loan Term Sheets somehow renders the meaning of "annualized" in Section III(a) different than in Section III(e), that argument also fails. "Annual" as used in the Loan Term Sheets merely effectuates and clearly states what Section III(a) requires: that the Loan Fee agreed to by the parties is to be "annualized in the relevant Loan Term Sheet." Unlike Late Fees, Loan Fees are not assigned a specific numerical rate of any kind in the MLAs. Consequently, any reading that provides

does not use the term "annualized" at all, and merely states that, for the purpose of reporting to the Internal Revenue Service, any Loan Fees paid in Digital Currency (as defined in the MLA) shall be calculated at a specific spot rate "on any day that Loan Fees accrue." This provision does nothing to alter the fact that the term "annualized" as used in Section III(a) (and by logical extension, Section III(b) as well) specifies an *annual* rate, a position seemingly adopted by the Claimants. Claimants' efforts to focus the Court on Section III(e) appears to be based solely on the fact that it uses the word "day", but at base it has no relevance to the dispute at issue.

24.    Second, the Claimants argue that "if 1% as used in Section III(b) is already an annual rate, calling on that rate to be 'annualized' would be redundant and nonsensical" or "superfluous." *See* Response ⁋ 34. But, again, the Claimants' position is readily dismissed by the plain language of Section III(b) and of the MLAs more generally. Nowhere else but Section III(b) is the Late Fee annual rate specified, so, rather than being redundant, "annualized" is actually *necessary* to make clear that 1% is, in fact, the annual rate applicable to the Late Fees.[18]

25.    Third and finally, the Claimants' argument that a 1% annual rate would "produce an absurd result" because, in effect, the Late Fees would not be sufficiently punitive is meritless. *See* Response ⁋ 35. The Claimants make much hay out of the "inherent risk of engaging in crypto currency transactions," *see* Response ⁋ 35, all of which do nothing to alter the plain, unambiguous meaning of the MLAs as the memorialization of the parties' informed consideration to enter into a lending arrangement on the terms specified therein. *See Greenfield v. Philles Recs.*, 780 N.E.2d 166, 166 (N.Y. 2002) (holding that, under New York law, contracts are construed in accordance

---

two different meanings to "annualize" and "annual" in the context of Section III(a) and the Loan Term Sheets would necessarily render one meaningless.

[18]    Given the arguments set out in the Response and the otherwise plain language of the MLAs, it is the Claimants, and not the Debtors, that seek to "create ambiguity where none exist." Response ⁋ 34.

with the parties' intent, and the best evidence of that intent is the parties' writing). Moreover, calling for the Court to speculate as to what rate would have been agreed to in order to sufficiently incentivize compliance with the MLA's terms is outside of the scope of a Sufficiency Hearing (as defined in the Claims Procedures Order) and should not be addressed by the Court at all unless it finds an ambiguity that requires extrinsic evidence.[19]

### 2. The Claimants' reading of Section III(b) is unreasonable.

26.    Despite vigorously arguing that "1%" should not be interpreted as the annual rate applicable to the Late Fees, the Claimants conspicuously fail to clearly state *what* the annual rate would be under their reading. That is because the Claimants believe, and baselessly assert in the Disputed Claims, that the correct annual rate would be a whopping **365%**.[20] The Debtors' reading of Section III(b), alternatively, is exactly what the MLA states, and the Claimants' unreasonable interpretation should be rejected under the accepted canons of construction.[21] Moreover, the Late Fee or Loan Fee rates that would result under the Claimants' methodology would exceed the criminal usury rate of 24% established under applicable New York law. *See* N.Y. Penal L. §§ 190.40, 190.42; *Adar Bays LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612, 649 (N.Y. 2021). Because the parties could have entered into loans under the MLAs that were below the $2.5 million limit

---

[19]    This result would also be inconsistent with how the Debtors have calculated interest and late fees under other lending agreements with respect to other similarly-situated Claims subject to the Seventh Omnibus Objection and the Court's treatment of such other Claims for which it has granted the Debtors' request in the Seventh Omnibus Objection to reduce and allow. *See* Seventh Omnibus Objection, Ex. 2; *see also* Jan. 3, 2024 Hr'g Tr. at 42:5-9.

[20]    Further, "annualized" as it relates to the Loan Fees (for which the Claimants have not convincingly argued should be read differently across provisions of the MLAs) under the Claimants' reading would result in annual interest rates of **2,920%** (with respect to Claim No. 402) and **5,110%** (for Claim No. 405). The Claimants have not adopted a consistent approach to interpreting the MLAs under their own methodology, and have not asserted that Loan Fees should accrue at these rates. As discussed throughout, however, the Claimants' calculation of Loan Fees is nevertheless unsupported.

[21]    *See Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.,* 127 A.D.3d 48, 54 (N.Y. App. Div. 2015) (contracts should not be interpreted to produce an absurd result, such as one rendering the contract commercially unreasonable).

to which New York criminal usury law would apply, the Claimants' reading of Section III(b) would render the MLA void and would relieve the Debtors from any obligation to repay such loans. *See Abir v. Malky Inc.,* 59 A.D.3d 646, 649 (N.Y. App. Div. 2009). Consequently, the Debtors' reading is the only one that appropriately gives effect to the plain language and intent of the MLAs.

**B.      The Disputed Claims do not Provide Sufficient Evidence to Support the Disputed Late Fees.**

27.      Beyond what ultimately amounts to the Claimants' views on how the plain terms of the MLAs should be interpreted, neither the Disputed Claims nor any of their supporting material provide any evidence sufficient to demonstrate that the applicable Debtors are liable for the Disputed Late Fees.  Each of the Disputed Claims includes an addendum (with a chart summarizing the applicable Disputed Claim) explaining the Debtors' purported liability and each of the following as exhibits: (i) the applicable MLA, (ii) the applicable Loan Term Sheet (as defined in the applicable MLA), and (iii) a table showing the applicable Claimant's calculations of its Disputed Claim according to its purported methodology.  As explained herein, neither the MLAs nor the Loan Term Sheets provide any support for the Disputed Late Fees, and so any charts, tables, or calculations based on the Claimants' contrary interpretation of those operative documents cannot independently provide sufficient support.

28.      Notably, the addenda to the Disputed Claims and the Response also make reference to written notices provided by each of the Claimants to the applicable Debtors stating that "unless and until the Loan was satisfied in full, Late Fees would accrue at the contract rate of 1% per day of the outstanding daily balance of the Loan" and that the Debtors subsequently acknowledged their default to the Claimants in writing.  *See* Addendum to Claim No. 402 at 3; Addendum to Claim No. 405 at 3; Response ¶¶ 7, 8, 17-20, 39.  The Claimants did not, however, included these

"demand letters" or the Debtors' purported responses as supporting documentation to the Disputed Claims or as exhibits to the Response. The Debtors acknowledge that Claimants' counsel provided the Debtors' counsel with the correspondence constituting these "demand letters," as well as the Debtors' responses thereto, which are attached hereto as <u>Exhibit E</u> (collectively, the "<u>Claimant No. 402 Demand Letter</u>") and <u>Exhibit F</u> (collectively, the "<u>Claimant No. 405 Demand Letter</u>" and, together with the Claimant No. 402 Demand Letter, the "<u>Demand Letters</u>"). [22]

29.    As a threshold matter, consistent with the Claims Procedures Order, the Debtors are permitted to object to the Disputed Claims based solely on the sufficiency of the information and documentation submitted by Claimants in support of their Claims. *See* Claims Procedures Order ¶ 1(a)(v) (permitting the Debtors to object to a claim on the basis that a claim "fails to . . . include sufficient documentation to ascertain the validity of the claims"); ¶ 2(a) (permitting the Debtors to resolve a Contested Claims (as defined in the Claims Procedures Order) at a non-evidentiary hearing to determine whether "the Contested Claim has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012(b)"). As noted, the Claimants did not include the Demand Letters as part of the Disputed Claims, providing instead only a summary of their purported contents and import. Nor did they amend their claim to include the Demand Letters, or attach them to the Response, opting instead for another summary. As the parties have agreed that the Objection is proceeding in the first instance as a Sufficiency Hearing (as defined in the Claims Procedures Order), the Demand Letters are in

---

[22]    The Claimants' insinuation that the Debtors have made any kind of admission as to the proper calculation of the Late Fee rate by failing to explicitly express their disagreement with the Claimants' unilaterally-asserted 1% daily rate in their responses to the Demand Letters is without merit. *See* Resp. ¶¶ 8, 17. The Debtors' responses to the Demand Letters merely acknowledge the Debtors' receipt of Claimants' correspondence and do not serve as an admission or acquiescence to Claimants' asserted Late Fee calculation. *See Prospect Cap. Corp.*, 2023 WL 7498071, at *6-8 ("To the extent defendant is now arguing that its unilateral sending of an email plus plaintiff's silence and continued evaluation of the transaction constitutes a binding written modification, that is completely without merit. In the absence of a signed writing by plaintiff, defendant's failure to offer any evidence of consideration is fatal.").

any event beyond the scope of what the Court need even review to determine the Objection unless it finds that extrinsic evidence is required.

30.    Even if the Demand Letters should properly be considered part of the Disputed Claims (which they cannot), they have no bearing on the Disputed Claims' prima facie validity given the clear language of the MLAs.  Where, as here, parties set forth their agreement in clear, unambiguous terms, a court will enforce the contract in accordance with the plain meaning of its terms.  *See Reiss v. Fin. Performance Corp.*, 764 N.E.2d 958, 958 (N.Y. 2001).  A contract is unambiguous where the contract's terms have "a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion."  *Vintage, LLC v. Laws Const. Corp.*, 920 N.E.2d 342, 342 (N.Y. 2009); *see also Prospect Cap. Corp. v. Credito Real USA Fin. LLC*, No. 23-CV-3005 (JSR), 2023 WL 7498071, at *3 (S.D.N.Y. Nov. 14, 2023) ("[L]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation.") (internal quotations omitted).  Extrinsic evidence is generally inadmissible where the contract is unambiguous.  *See, e.g., Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013).  The Demand Letters are purported by the Claimants to be evidence of an understanding regarding the Late Fees that does not appear on the face of the MLAs, and thus are extrinsic evidence that should not be admissible where the MLAs are unambiguous.  *See* EVIDENCE, Black's Law Dictionary (11th ed. 2019) ( defining "Extrinsic Evidence" as "1. Evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement.  Extrinsic evidence is usually not admissible to contradict or add to the terms of an unambiguous document.").

31.     To the extent that the Demand Letters are properly before this Court (and as, extrinsic evidence, they are not), they nonetheless do not operate to modify the clear terms of the MLAs.   The Demand Letters merely restate the Claimants' self-serving and contrary interpretation of Section III(b).  Even interpreting the Demand Letters generously as an offer to modify the otherwise plain language of the MLAs as they relate to Section III(b), they would not satisfy the MLAs requirements with respect to modification: Section XXI states that "No waiver or modification by either Party of any provision of this Agreement shall be deemed to have been made **unless expressed in writing and signed by both parties.**"  As clearly evidence by the Demand Letters, the Debtors did not sign, nor even affirmatively consent in any way, to the Claimants' post-hoc interpretation of Section III(b).   Thus, contrary to the Claimants' interpretation, the fact that the Debtors merely did not dispute the Claimants' purported methodology cannot serve as a foundation to modify an unambiguous written agreement.  *See* Response ¶¶ 8, 20.

32.     Finally, the Claimants' Response makes repeated references to what discovery or other extrinsic evidence the Claimants may seek to submit in support of the Disputed Claims. These statements do nothing to remedy the insufficiency of the Disputed Claims on their face, and are in any event an effective admission as to what a reasoned Court would decide on the Seventh Omnibus Objection based on the plain contractual terms.  Indeed, in the face of clear and unambiguous contractual language, the parties' dispute regarding the proper calculation of the Disputed Late Fees can and should be resolved without consideration of external evidence, consistent with the Claims Objection Procedures.  The Disputed Claims provide insufficient evidence in support of the asserted liability and should not be afforded prima facie validity, and so this Court is permitted to sustain the Seventh Omnibus Objection on that basis alone.

**C.    The Disputed Loan Fees Were Improperly Calculated on a Compounded Basis.[23]**

33.    Under New York law, compound interest (*i.e.* interest on interest) is not recoverable absent express agreement by contract or statutory authority. *See Rourke v. Fred H. Thomas Associates*, 216 A.D.2d 717, 718 (N.Y. App. Div. 1995) (Under New York law, "in the absence of an express agreement for either compound interest or interest on interest, or statutory authority, such interest is not recoverable.") (internal quotations omitted); *In re City of New York*, No. 35057/04, 2006 WL 2446140, at *2 (N.Y. Sup. Ct. Aug. 24, 2006) (Under New York law, "compound interest is recoverable only where the agreement at issue specifically sets forth plaintiff's entitlement to interest compounded annually."); *DRAW Cap. Partners, LLC v. Republic of Argentina*, No. 18-CV-00548, 2018 WL 5777024, at *3 (S.D.N.Y. Nov. 2, 2018) (holding that compound interest was not recoverable under New York law where "the plain language of the contract d[id] not include a specified rate of interest on interest.").

34.    As discussed above, courts will enforce an unambiguous contract in accordance with its plain terms. *See supra* ¶ 30 (citing cases). The MLAs provide, in relevant part, that "[t]he Loan Fee will be calculated off all outstanding portions of the Loaned Digital Currencies." Claim No. 402, Ex. 1, Claim No. 402 MLA § III(a); Claim No. 405, Ex. 2, Claim No. 405 MLA § III(a). It does *not* say that the Loan Fee should be calculated off of outstanding portions of the "Loaned Digital Currencies" (as defined therein) *and* any Loan Fees accrued to date. The relevant Loan Term Sheets in turn each provide an annual borrow fee, which similarly contains no language indicating that it should be compounded when calculated. *See* Claim No. 402, Ex. 3, Claim No. 402 Loan Term Sheet (providing for a "8.00% annual" borrow fee); Claim No. 405, Ex. 1, Claim

---

[23]    As noted elsewhere, the same argument set forth in this section are also applicable to the Claimants' calculation of Late Fees on a compounding basis.

No. 405 Loan Term Sheet (providing for a "14.00% annual" borrow fee).  There is no language in either the MLAs or the Loan Term Sheets that call for the loan fees to be calculated on a compound basis; the plain reading of the MLAs and term sheets is that they provide for calculation of simple interest.[24]  Further, Claimants fail to identify any independent statutory basis entitling them to compound interest on the Disputed Claims.  As the underlying agreements do not explicitly provide for calculation of compound interest, and Claimants have otherwise not identified an independent statutory basis for such interest, Claimants' calculation of the loan fee amounts on a compound basis are not prima facia valid.

---

[24]    For the avoidance of doubt, the Debtors also dispute the Claimants' calculation of the Loan Fees on a 360 day debt year, which is similarly unsupported by the MLAs or the Loan Term Sheets and so should be disallowed on that basis.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein and in the Seventh Omnibus Objection, the Debtors respectfully request that this Court enter the proposed order substantially in the form attached hereto as Exhibit A and grant such other and further relief as the Court deems just and proper.

Dated:    January 23, 2024  
           New York, New York

*/s/ Luke A. Barefoot*  
Sean A. O'Neal  
Luke A. Barefoot  
Jane VanLare  
Thomas S. Kessler  
CLEARY GOTTLIEB STEEN & HAMILTON LLP  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999  

*Counsel to the Debtors*  
*and Debtors-in-Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### ORDER GRANTING DEBTORS' SEVENTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (MODIFY AND ALLOW AS MODIFIED) WITH RESPECT TO CLAIM NOS. 402 AND 405

Upon the *Debtors' Seventh Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Modify and Allow As Modified)* (ECF No. 999) (the "Objection")[2] and the *Debtors' Reply in Support of the Seventh Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Modify and Allow As Modified) With Respect to Claim Nos. 402 and 405* (ECF No. __) (the "Reply") filed by the debtors in the above-captioned cases (the "Debtors"), requesting entry of an order (the "Order"), pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, modifying and allowing as modified Claim No. 402 and Claim No. 405; and upon the *Declaration of Paul Kinealy in Support of Debtors' Seventh Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Modify and Allow As Modified)*, attached to the Objection as Exhibit B, and the *Supplemental Declaration of Paul Kinealy in*

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]     Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Objection.

*Support of the Debtors' Reply in Support of the Seventh Omnibus (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Modify and Allow as Modified) With Respect to Claim Nos. 402 and 405*, attached to the Reply as <u>Exhibit B</u>; and upon all other documentation filed in connection with the Objection and the Disputed Claims; and adequate notice of the Objection having been given as set forth in the Objection; and it appearing that no other or further notice is required; and a hearing on the Objection having been held; and the Court having overruled the Response of Claimant No. 402 and Claimant No. 405; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Objection is GRANTED with respect to Claim No. 402 and Claim No. 405, and the Response is OVERRULED subject to the provisions of this Order.

2.      Claim No. 402 is hereby reduced to USDC 10,187,945.2006635.

3.      Claim No. 405 is hereby reduced to DOT 6,313,027.55613159.

4.      Subject to paragraph 8 of this Order, Claim No. 402 and Claim No. 405 are each hereby allowed as general unsecured claims in the amounts identified in paragraphs 2 and 3 of this Order.

5.      For the avoidance of doubt, nothing in the Objection or this Order shall govern, limit, alter or determine, for purposes of distributions, allocation of distributable value, or methods of distribution pursuant to a chapter 11 plan, the treatment, valuation, and/or denomination of any claims (including claims allowed pursuant to this Order).  For the avoidance of doubt, all claims, whether allowed by this Order or otherwise, will be subject to, and treated in accordance with, the terms of a confirmed chapter 11 plan (including any distribution methodology and mechanics contained therein).

6.      This Order shall be deemed a separate Order with respect to Claim No. 402 and Claim No. 405.  Any appeal and/or stay of this Order pending appeal by any Claimants whose Claims are subject to this Order shall only apply to the contested matter which involves such Claimants and shall not act to stay the applicability and/or finality of this Order with respect to the other contested matters listed in the Objection or this Order.

7.      The Debtors, the Debtors' claims agent, Kroll Restructuring Administration LLC, and the clerk of this Court are authorized to take all actions necessary and appropriate to give effect to this Order, including updating the Claims Register to reflect the relief granted herein.

8.      Nothing in this Order shall be deemed (i) an admission or finding as to the validity of any Claim against a Debtor, (ii) a waiver of the right of the Debtors or of the Official Committee of Unsecured Creditors to dispute any Claim against any Debtor on any grounds whatsoever at a later date, including on grounds of equitable subordination under Section 510(c) and/or disallowance under Section 502(d) of the Bankruptcy Code, (iii) a promise by or requirement on any Debtor to pay any Claim, or (iv) a waiver of the rights of the Debtors or of the Official Committee of Unsecured Creditors under the Bankruptcy Code or any other applicable law.

9.      This Court shall retain exclusive jurisdiction over any and all issues arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2024
         New York, New York

_____
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Supplemental Kinealy Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

## SUPPLEMENTAL DECLARATION OF PAUL KINEALY
## IN SUPPORT OF DEBTORS' SEVENTH OMNIBUS OBJECTION
## (NON-SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO
## 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (MODIFY AND ALLOW)

I, Paul Kinealy, make this declaration pursuant to 28 U.S.C. § 1746 and state as follows:

### BACKGROUND

1.      I am a Senior Director at Alvarez and Marsal North America, LLC ("A&M"), the financial advisor for the above-captioned Debtors.

2.      In my capacity as Senior Director, I am authorized to submit this supplemental declaration (the "Supplemental Declaration") in further support of the *Debtor's Seventh Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Modify and Allow)* (ECF No. 999) (the "Objection") and the *Debtors' Reply in Support of the Seventh Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Modify and Allow As Modified) With Respect to Claim Nos. 402 and 405* (the "Reply").[2]

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]      Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Objection and Reply, as applicable.

3.      I am familiar with the Debtors' day-to-day operations, financing arrangements, business affairs, Schedules and Books and Records and am responsible for overseeing the review and analysis of claims filed in the Debtors' Chapter 11 Cases.  All facts set forth herein are based on my personal knowledge, my review or the review of employees of A&M of the Claims and other relevant documents or information provided by the Debtors' employees and advisors.  If I were called upon to testify, I could and would competently testify to each of the facts set forth herein on that basis, including that I, or employees of A&M, personally reviewed Claim No. 402 and Claim No. 405 as part of the claims reconciliations process in these Chapter 11 Cases.

**FACTUAL BASIS OF OBJECTION**

4.      From our review of the Claims Register, the Schedules, the Debtors' Books and Records, Claim No. 402 and Claim No. 405, we have determined that the amounts asserted in Claim No. 402 and Claim No. 405 for principal owed to the Claimants are consistent with the Debtors' Schedules and Books and Records.

5.      We have determined that the amounts asserted in Claim No. 402 and Claim No. 405 for Late Fees (as defined in the MLAs) are inconsistent with the Debtors' Schedules and Books and Records.  We, upon consultation with the Debtors and a review of the Debtors' Books and Records, have determined that the Late Fees accrue on the principal loan amount at a rate of 1% per year, calculated daily (i.e. accruing at 1/365% per day), as we understand the plain language of the MLAs requires.  The Claimants, however, have calculated the Late Fees as accruing at a rate of 1% per day (i.e. accruing at 365% per year).  The Claimants have further improperly calculated the Late Fees on a compounded basis as accruing on top of the outstanding principal amount, all outstanding accrued Loan Fees, and all outstanding accrued Late Fees.

2

6.    For illustrative purposes, the below chart consists of the Late Fees for each of the Disputed Claims as we have calculated them, on the one hand, and as the Claimants have, on the other hand, and the resulting difference between the calculations:

|  | **Debtors** | **Claimant** | **Difference** |
|---|---|---|---|
| **Claim No. 402** | USDC 12,602.7397260274 | USDC 6,860,950.0815689 | USDC 6,848,347.34184287 |
| **Claim No. 405** | DOT 8,876.58273352578 | DOT 4,988,407.82312113 | DOT 4,979,531.2403876 |

7.    We have further determined that the amounts asserted in Claim No. 402 and Claim No. 405 for prepetition Loan Fees (as defined in the MLAs) are inconsistent with the Debtors' Books and Records. We, upon consultation with the Debtors and a review of the Debtors' Books and Records, have determined that the Loan Fees accrue as simple interest on the principal loan amount using a 365-day debt year, as we understand the plain language of the MLAs and applicable Loan Term Sheets requires. The Claimants, however, have improperly calculated the Loan Fees on a compounded basis. The Claimants also incorrectly used a 360-day debt year to determine the applicable daily interest rate with respect to the Loan Fees.

8.    For illustrative purposes, the below chart consists of the Loan Fees for each of the Disputed Claims as we have calculated them, on the one hand, and as the Claimants have, on the other hand, and the resulting difference between the calculations:

|  | **Debtors** | **Claimant** | **Difference** |
|---|---|---|---|
| **Claim No. 402** | USDC 175,342.466 | USDC 214,874.830 | USDC 39,532.364 |
| **Claim No. 405** | DOT 191,032.671 | DOT 248,041.960 | DOT 57,009.289 |

9.    I submit that the facts and circumstances set forth in the Objection and the Reply are true and accurate to the best of my knowledge, information and belief, and the Disputed Claims should be modified and allowed as modified.

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information and belief.

Executed on January 23, 2024        */s/ Paul Kinealy*
                                    Paul Kinealy

**<u>EXHIBIT C</u>**

**Claim No. 402**

**[REDACTED FOR PII]**

# **EXHIBIT D**

**Claim No. 405**

**[REDACTED FOR PII]**

**<u>EXHIBIT E</u>**

**Claimant No. 402 Demand Letter**

**[REDACTED FOR PII]**

## **EXHIBIT F**

**Claimant No. 405 Demand Letter**

**[REDACTED FOR PII]**