CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION SEEKING ENTRY**
**OF AN ORDER AUTHORIZING, BUT NOT DIRECTING, (I)**
**THE SALE OF TRUST ASSETS AND (II) GRANTING RELATED RELIEF**

Genesis Global Holdco, LLC ("Holdco"), Genesis Global Capital, LLC ("GGC")

and Genesis Asia Pacific Pte Ltd. ("GAP"), as debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors," and these cases, collectively, the "Chapter 11 Cases")

hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached

hereto as Exhibit B (the "Proposed Order"), pursuant to sections 105(a) and 363 of title 11 of the

United States Code (the "Bankruptcy Code"), rules 2002 and 6004 of the Federal Rules of

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10003.

Bankruptcy Procedure (the "Bankruptcy Rules"), and upon the *Declaration of Michael DiYanni in Support of the Debtors' Motion Seeking Entry of an Order Authorizing, But Not Directing, (I) the Sale of Trust Assets and (II) Granting Related Relief* (the "DiYanni Declaration"), attached hereto as Exhibit A, respectfully state as follows:

## BACKGROUND

### A. The Chapter 11 Cases

1.      On January 19, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the Southern District of New York (the "Court").  Historically, the Debtors and their non-debtor subsidiaries (collectively, the "Company") have engaged in lending, borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.  On February 3, 2023, a committee of unsecured creditors (the "Committee") was appointed in these cases pursuant to the *Notice of Appointment of Official Committee of Unsecured Creditors*, ECF No. 55.

2.      Following the significant turmoil in the digital asset industry as a whole, the Debtors, their management, directors and employees and the Debtors' professionals have worked tirelessly to stabilize their businesses, preserve their estates and chart a path towards a transparent, efficient and consensual restructuring.  Beginning months before the Petition Date and continuing throughout the duration of these Chapter 11 Cases, the Debtors have engaged in extensive discussions with their creditors and stakeholders in an effort to reach a value-maximizing and consensual resolution to the Debtors' financial situation, including by seeking and participating in a Court-approved mediation process.

**B.  The Trust Assets**

3.      One of the Debtors' and their estates' significant assets are shares[2] issued by three Delaware statutory trusts (collectively, the "Trusts") managed by Grayscale Investments, LLC ("Grayscale" or the "Sponsor"), a wholly-owned subsidiary of Digital Currency Group, Inc. ("DCG"): (i) the Grayscale Bitcoin Trust (the "GBTC Trust"),[3] (ii) the Grayscale Ethereum Trust (the "ETHE Trust")[4] and (iii) the Grayscale Ethereum Classic Trust (the "ETCG Trust" and, together with the ETHE Trust, the "ETH Trusts").[5]  The purpose of the Trusts is to hold either bitcoin ("BTC"), ether ("ETH") or Ethereum Classic ("ETC"), which are digital assets that are created and exist on a blockchain operating a decentralized, peer-to-peer and cryptographic network (e.g., Bitcoin, Ethereum or Ethereum Classic).  As of September 30, 2023, the GBTC Trust held approximately 3.2% of the total BTC in circulation.  As of December 31, 2022, the ETHE Trust held approximately 2.5% of the total ETH in circulation and the ETCG Trust held approximately 8.5% of the total ETC in circulation.

---

[2]      As described more fully herein, there are currently pending disputes between the Debtors and Gemini (defined below) related to both the Initial GBTC Shares (defined below) and the Additional GBTC Shares (defined below).  This Motion is without prejudice to the parties' respective rights, arguments and defenses in respect of those disputes.

[3]      The GBTC Trust is governed by that certain *Sixth Amended and Restated Declaration of Trust and Trust Agreement of Grayscale Bitcoin Investment Trust* dated January 9, 2024 (the "GBTC Trust Agreement").  A copy of the GBTC Trust Agreement is attached as Exhibit 4.1 to the Current Report of Grayscale Bitcoin Trust (Form 8-K) (Jan. 9, 2024) (the "GBTC 8-K").  For further information on the GBTC Trust and the recent GBTC Conversion Event, see Registration Statement on Form S-3 of the Grayscale Bitcoin Trust (Form S-3) (Jan 9, 2024).

[4]      The ETHE Trust is governed by that certain *Amended and Restated Declaration of Trust and Trust Agreement of Ethereum Investment Trust* dated July 3, 2018 (the "ETHE Trust Agreement").  A copy of the ETHE Trust Agreement is attached as Exhibit 4.1 to the Ethereum Trust Annual Report (Form 10-K) (Mar. 1, 2023) (the "ETHE 10-K").

[5]      The ETCG Trust is governed by that certain *Second Amended and Restated Declaration of Trust and Trust Agreement of Ethereum Classic Investment Trust* dated September 12, 2018 (the "ETCG Trust Agreement" and, together with the ETHE Trust Agreement, the "ETH Trust Agreements").  A copy of the ETCG Trust Agreement is attached as Exhibit 4.1 to the Ethereum Classic Trust Annual Report (Form 10-K) (Mar. 1, 2023) (the "ETCG 10-K").

4.      The Trusts can provide a cost-effective and convenient vehicle for investors to obtain indirect exposure to digital assets they hold.  The Trusts hold digital assets and issue common units of fractional undivided beneficial interest (with respect to the GBTC Trust, the "GBTC Shares", with respect to the ETHE Trust, the "ETHE Shares", and with respect to the ETCG Trust, the "ETCG Shares"), which represent ownership in the respective Trust.

5.      The GBTC Shares were approved for listing on NYSE Arca, Inc. ("NYSE Arca") on January 10, 2024 and are tradeable without restriction on NYSE Arca as of January 11, 2024 (the "GBTC Conversion Event").  As a result of the GBTC Conversion Event, the GBTC Shares are now redeemable for cash.

(a)     Through its redemption program, the GBTC Trust may redeem GBTC Shares only from Authorized Participants, which are certain eligible financial institutions that have entered into a Participant Agreement with the Sponsor and the Transfer Agent (as defined in the GBTC Trust Agreement) and must be registered broker-dealers.  Due to regulatory restrictions, the GBTC Trust is not currently able to create or redeem shares via receipt or delivery of BTC directly to Authorized Participants (termed "in-kind transactions").  Accordingly, Authorized Participants may only deliver or receive cash in exchange for GBTC Shares by following certain procedures (the "Redemption Procedures").  To effect a redemption, Authorized Participants are required to place an order for the redemption, pursuant to which the GBTC Trust will distribute BTC to an intermediary (termed a "Liquidity Provider"), which accepts the BTC underlying the GBTC Trust Shares and delivers cash in exchange. Redemptions of the GBTC Shares are further subject to approval by the GBTC Trust Sponsor in writing (the "Redemption Consent Requirement").  *See* GBTC Registration Statement at 34.

6.      Because the ETH Trusts do not have a redemption program, holders of the ETHE Shares and the ETCG Shares (together, the "ETH Shares") are unable to redeem such

shares. While the ETH Shares are transferable and tradable over the counter on the OTCQX

Market operated by OTC Markets, Inc., if the ETH Shares were purchased in a private placement

or directly from the ETH Trusts and have not been held for the requisite holding period under Rule

144, the shares may be restricted securities and may not be resold except in transactions exempt

from registration under the Securities Act of 1933 (the "Securities Act"). *See* ETHE 10-K at 25;

ETCG 10-K at 26. Moreover, pursuant to Section 4.2 of each of the ETH Trust Agreements, any

holder of ETH Shares may not sell, assign or otherwise dispose of any or all of its ETH Shares

without first obtaining the prior written consent of the Sponsor (the "Transfer Consent

Requirement" and together with the Redemption Consent Requirement, the "Sponsor Consent

Requirements"). *See* ETH Trust Agreements, § 4.2. The GBTC Shares are not subject to a

Transfer Consent Requirement.

**C. The Debtors' Trust Assets**

7.    As of the date hereof, the Debtors hold units in the following Trusts

(collectively, the "Trust Assets"), in the quantities set forth below:

| Trusts | Quantity of Units | Estimated Value as of 1/30/24 |
|---|---|---|
| Grayscale Bitcoin Trust (ticker: GBTC) | 35,939,233 | $1,383,660,470.50 |
| Grayscale Ethereum Trust (ticker: ETHE) | 8,717,520 | $169,991,640.00 |
| Grayscale Ethereum Classic Trust (ticker: ETCG) | 2,970,892 | $38,027,417.58 |
| **Total Estimated Value as of 1/30/24** | | **$1,591,679,528.10** |

8.    **GBTC Assets**. As of the Petition Date, GGC held 35,939,233 GBTC

Shares (the "GBTC Assets"). The Debtors estimate that the market value of the GBTC Assets is

approximately $1.38 billion as of January 30, 2024.[6]

---

[6]        This estimate is based on market price of $38.50 per share, as of January 30, 2024.

9.      On August 15, 2022, GGC and Gemini Trust Company, LLC ("Gemini"),
as agent for users of Gemini participating in Gemini's Earn Program (the "Gemini Lenders"),
entered into a security agreement pursuant to which GGC pledged and transferred 30,905,782
shares of GBTC (the "Initial GBTC Shares") to Gemini for the benefit of the Gemini Lenders to
secure its obligations to the Gemini Lenders.  On November 7, 2022, GGC and Gemini amended
the security agreement (the "First Amendment") to extend its term.  On November 16, 2022,
Gemini sent a notice to GGC asserting that it had foreclosed on the Initial GBTC Shares through
a private sale.  GGC disputes (a) whether Gemini's foreclosure satisfied applicable law, including
whether there was any foreclosure of the Initial GBTC Shares and whether any sale was completed
in a commercially reasonable manner in accordance with the notice requirements set forth in the
Uniform Commercial Code, and (b) whether the First Amendment is avoidable as a fraudulent
transfer pursuant to section 548 of the Bankruptcy Code.  Gemini disputes both that the foreclosure
was improper and that the transfer (if any) that took place pursuant to the First Amendment is
avoidable as a fraudulent transfer.  As a result, the Debtors' and Gemini's rights, title to, and
interests in the Initial GBTC Shares are in dispute. This Motion is without prejudice to Gemini's
or the Debtors' respective positions in connection with such disputes.

10.     On November 10, 2022, GGC, Gemini and DCG entered into a second
amendment of the security agreement whereby DCG agreed to deliver 31,180,804 additional
GBTC Shares (the "Additional GBTC Shares") to GGC and GGC agreed to pledge and transfer
those shares to Gemini for the benefit of the Gemini Lenders.  While DCG delivered the Additional
GBTC Shares, the shares were never transferred to Gemini and remain with GGC.

11.     On or around May 22, 2023, Gemini filed a proof of claim asserting, among
other things, that such claim is secured to the extent of the Additional GBTC Shares on the basis

that GGC was holding the shares, whether in constructive trust or otherwise, for the benefit of Gemini and the Gemini Lenders.  *See* Proof of Claim No. 356 at 7.

12.    On October 27, 2023, Gemini commenced an adversary proceeding (the "Gemini Adversary Proceeding") seeking to establish GGC's and Gemini's respective rights and title to the Initial GBTC Shares and the Additional GBTC Shares.  *See Gemini Trust Company, LLC v. Genesis Global Capital, LLC, et al.*, Adv. Pro. No. 23-1192 (SHL) (Bankr. S.D.N.Y. Oct. 27, 2023), ECF No. 1 (the "Gemini Complaint").  GGC has moved to dismiss counts II, III and IV of the Gemini Complaint (all counts related to the Additional GBTC Shares).  On January 18, 2024, the Court held a hearing on GGC's motion to dismiss and stated that it intended to issue a ruling on the motion prior to the Debtors' plan confirmation hearing.

13.    Aside from Gemini's alleged interests in the Additional GBTC Shares and the Redemption Consent Requirement, the Debtors are not aware of any other third party asserting an interest in or right over the GBTC Assets.  Of the GBTC Assets, 4,758,423 GBTC Shares were obtained by GGC as a result of its exercise of remedies in connection with the default of Three Arrows Capital, Ltd. and are not the subject of any asserted interest by Gemini or any other party.

14.    **ETHE and ETCG Assets**.  As of the date hereof, the Debtors hold 8,717,520 ETHE Shares (the "ETHE Assets") and 2,970,892 ETCG Shares (the "ETCG Assets" and together with the ETHE Assets, the "ETH Assets").  The Debtors estimate that the market value of the ETH Assets is approximately $208 million as of January 30, 2024.[7]

15.    On November 28, 2023, pursuant to two security agreements (the "Security Agreements") entered into between GGC, DCG and its subsidiary, DCG International

---

[7]    This estimate is based on a market price of $19.50 per share of ETHE and $12.80 per share of ETCG, as of January 30, 2024.

Investments, Ltd. ("DCGI" and together with DCG, the "DCG Parties"), in connection with the Partial Repayment Agreement dated September 12, 2023,[8] (a) DCG granted to GGC a first priority continuing security interest in and lien on all of DCG's right, title and interest in and to (i) 37,917 ETHE Shares and (ii) 1,548,717 ETCG Shares; and (b) DCGI granted to GGC a first priority continuing security interest in and lien on all of DCGI's right, title and interest in and to (i) 4,830,343 ETHE Shares and (ii) 1,422,175 ETCG Shares.

16.    On December 28, 2023, the DCG Parties transferred to GGC all of their right, title and interest in the ETHE Assets and the ETCG Assets, purportedly in satisfaction of the DCG Parties' outstanding USD and BTC obligations under the Partial Repayment Agreement.[9] Aside from the Transfer Consent Requirement, the Debtors are not aware of any other party asserting any interest in or right over the ETHE Assets or the ETCG Assets.

---

[8]    A copy of the Partial Repayment Agreement is attached as Exhibit A to the "Notice of Voluntary Stay of Prosecution of Complaints Against Digital Currency Group, Inc. and DCG International Investments Ltd.", *Genesis Global Capital, LLC v. Digital Currency Group, Inc., et al.*, Adv. Pro. No. 23-1168 (SHL) (Bankr. S.D.N.Y. 2023) (the "DCG AP"), ECF No. 4.  The Partial Repayment Agreement was subsequently amended, which amendment is attached as Exhibit A to the "Debtors' Motion for Entry of (I) Consent Judgment Against the DCG Parties and (II) Order Authorizing, to the Extent Necessary, GGC to Take Actions in Furtherance of the Partial Repayment Agreement Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, or, in the Alternative, Bankruptcy Rule 9019(a)", DCG AP ECF No. 9.

[9]    The Debtors, Committee and Ad Hoc Group contend that the transfer of the ETHE Assets and ETCG Assets does not alter the obligation of the DCG Parties to repay the amounts owed under the DCG Loans and DCGI Loans (as defined in the Partial Repayment Agreement) in the same asset type as required in accordance with the original loans and that the DCG Parties are still obligated to pay transaction, conversion and/or enforcement costs relating to the collateral transfer and the Loan Agreements (as defined in the Partial Repayment Agreement).  The Debtors, the Committee and the Ad Hoc Group additionally dispute the DCG Parties contention that they have repaid all outstanding undisputed amounts under the Loan Documents (as defined in the Partial Repayment Agreement).  The Debtors have sent the DCG Parties letters reserving the rights on these issues.  *See Notice of Transfer of PRA Collateral and Receipt of Payments from Digital Currency Group, Inc., and DCG International Investments, Ltd. in Connection with Obligations Subject to Turnover Actions*, DCG AP ECF No. 24, Exs. 2, 3, 4.  Nothing herein or in the Proposed Order shall affect or alter any of the Debtors', Committee's, or Ad Hoc Group's respective rights, defenses, privileges and/or remedies under the Partial Repayment Agreement or asserted in any correspondence between the Debtors or the DCG Parties.

### D.  The Proposed Sale and Sale Guidelines

17.    Digital asset markets have been characterized by extreme and unpredictable price movements.  Because the value of the Trust Shares is linked to the price of the underlying digital assets, the Trust Shares are also subject to fluctuations in price.  Because the Debtors intend to make in-kind distributions to creditors to the maximum extent possible (and to make cash distributions where in-kind distributions are not possible), having flexibility to monetize the Trust Assets and to convert such amounts to the underlying asset will be more efficient and economically beneficial to the Debtors and their estates.

18.    The Debtors believe it would be beneficial to have the authority to sell and liquidate the Trust Assets to reduce any risk that fluctuations in price might have on the Debtors' estates and to facilitate distributions to creditors.  The Debtors therefore seek authorization from the Court to have the flexibility to begin to conduct sales of the Trust Assets, which the Debtors believe to be a prudent step and in the best interests of the estate.  The Committee, the Ad Hoc Group, and Gemini have informed the Debtors that they are supportive of this Motion, with the caveat that Gemini's support is conditioned on the Debtors' stated intention that this Motion be neutral with respect to the parties' disputes pertaining to the Initial GBTC Shares and the Additional GBTC Shares.  The Debtors believe that this Motion achieves this goal.

19.    The Debtors propose that they be authorized, but not directed, to conduct sales of the Trust Assets from the date of entry of the Proposed Order pursuant to the following guidelines (the "Trust Asset Sale Guidelines").

(a)    **Asset Sales**.  Notwithstanding and without prejudice to the disputes pending with respect to the Additional GBTC Shares, beginning on the date of this Court's entry of the Proposed Order, the Debtors will be immediately authorized, but not directed, to conduct sales or redemptions of the Trust Assets (which shall include, for the avoidance of doubt, the Additional GBTC Shares) including

pursuant to any available exemptions from registration under the Securities Act, including, but not limited to, sales in private placements and public sales pursuant to Rule 144, if applicable. The Debtors will undertake to comply with any and all needed exemptions from registration under the Securities Act in connection with the sales of the Trust Assets; *provided* that the Debtors shall (i) provide at least three (3) business days' advance notice to counsel for each of the Committee and the Ad Hoc Group of any proposed redemption, sale, or transfer and (ii) have obtained the written consent of the Committee and the Ad Hoc Group to such redemption, sale, or transfer, which consent may be provided through counsel (email shall suffice).

(b)    **Initial GBTC Shares Asset Sales**.  Notwithstanding and without prejudice to the disputes pending with respect to the Initial GBTC Shares, Gemini shall be authorized but not directed, in anticipation of its role as the Gemini Distribution Agent (as defined in the Plan), to begin conducting sales or redemptions of the Initial GBTC Shares, with the Debtors' interest in such shares (if any), as determined by the Court in connection with the Gemini Adversary Proceeding, to attach to the proceeds of any sale, transfer, or redemption of the Initial GBTC Shares, which proceeds shall be held in the same manner as Gemini currently holds the Initial GBTC Shares.  Gemini shall provide the Debtors, counsel of the Committee and counsel to the Ad Hoc Group with three days' advance notice of any proposed sale or redemption of the Initial GBTC Shares.  To the extent the Debtors prevail with respect to the Gemini GBTC Shares Determination (as defined in the Plan), the GBTC Assets will include any Initial GBTC Shares not yet sold by Gemini and the Debtors will be permitted to sell or redeem such shares in accordance with the order granting this Motion.[10]

---

[10]    In light of the pending disputes with respect to the Initial GBTC Shares and the Additional GBTC Shares, all rights, defenses and privileges with respect to ownership of such shares or the parties' interests in such shares, including any tax implications or liabilities resulting from the sale, transfer, or redemption of any Initial GBTC Shares or Additional GBTC Shares, are expressly reserved.  Nothing in this Motion, in the order granting the Motion, nor any action taken in connection therewith, shall be deemed or otherwise constitute an admission with respect to any issues relating to ownership of the Initial GBTC Shares or the Additional GBTC Shares by any party, or any related rights, obligations or liabilities.

(c)     **Maximization of Sale Proceeds**.  Both the Debtors and Gemini shall, on a good faith basis, use reasonable best efforts to maximize the market price of any Trust Assets or Initial GBTC Shares and the proceeds received from any sale thereof or any redemption thereof.

(d)     **Abrogation of the Sponsor Consent Requirements**.  In connection with any sales of the ETH Assets, the Debtors will not be required to comply with the Transfer Consent Requirement.  Moreover, the Sponsor shall be required to redeem any GBTC Assets upon request by the Debtors, notwithstanding the Redemption Consent Requirement, in the event the Debtors determine redemption of such shares is in the best interest of their estates, in consultation with the advisors to the Committee and the Ad Hoc Group; *provided* that the Debtors comply with the Redemption Procedures.

(e)     **Broker**.  The Debtors will be authorized, but not required, to retain and work with one or more established brokers of their choosing (with the consent of the advisors to the Committee and the Ad Hoc Group) with specialized knowledge in the digital asset markets (each, a "Broker") towards the marketing and sale of the Trust Assets and to pay any associated Broker fees.

(f)     **Timing of Sales or Redemptions**.  The Debtors shall have the authority to use their discretion in determining the timing for the sale or redemption of any Trust Assets, in consultation with the Committee, the Ad Hoc Group, and, solely with respect to the Additional GBTC Shares, Gemini.

(g)     **Purchase of BTC or ETH**.   To the extent not already authorized in the *Final Order (I) Authorizing Debtors to Continue to Operate the Existing Cash Management System, Including Existing Bank Accounts, Honor Certain Prepetition Obligations Related Thereto, and Maintain Existing Business Forms; (II) Permitting Continued Intercompany Transactions and Granting Certain Administrative Claims; (III) Extending the Time to Comply with the Requirements of Section 345 of the Bankruptcy Code and (IV) Granting Related Relief*, ECF No. 150 (the "Cash Management Order"), the Debtors shall be

11

authorized, but not directed, to use proceeds from the sales or redemption of any Trust Assets or cash on hand (in anticipation of receiving proceeds from the sale or redemption of any Trust Assets) to purchase BTC or ETH, as determined by the Debtors in their discretion in consultation with the advisors to the Committee and the Ad Hoc Group.

(h)   **Attachment of Interests**.  To the extent any party, including Gemini, is found to have any interest in the any Trust Assets, including the GBTC Assets, such interests shall attach to the same extent to the proceeds of any sales of such Trust Assets.

(i)   **Transfer of Authority to PA Officer and Wind Down Oversight Committee**. Upon the Effective Date of the Plan, any authority granted to the Debtors in connection with this Motion shall be transferred to and vest in the PA Officer, and any consent or consultation rights of the Committee shall be transferred to and vest in the Wind-Down Oversight Committee.

20.     The Debtors submit that the relief requested herein is reasonable and tailored to enable the Debtors to obtain the best value for the Trust Assets in an efficient manner and at a reduced cost and expense to the estates.  The Debtors further submit that the relief requested herein satisfies the requirements of section 363 of the Bankruptcy Code and will maximize value for the benefit of all of the Debtors' stakeholders.

## JURISDICTION AND VENUE

21.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

## RELIEF REQUESTED

22.     The Debtors hereby request entry of the Proposed Order pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 authorizing, but not directing, the sale of the Trust Assets consistent with the Trust Asset Sale Guidelines and free and clear of any liens, claims, interests and encumbrances, provided that any such liens, claims, interests or encumbrances attach to the proceeds from the sale of any Trust Assets. The Debtors also seek the authority, but not direction, to sell their ETH Assets notwithstanding the Transfer Consent Requirement and to redeem their GBTC Assets notwithstanding the Redemption Consent Requirement.

## BASIS FOR RELIEF

23.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). The standard applied to determine whether the use, lease, or sale of the estate's property should be authorized is the "business judgment" standard. *See Official Comm. Of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983).

24.     Satisfying the business judgment standard requires only a modest showing, specifically that a debtor articulate "a reasonable basis for its decisions (as distinct from a decision made arbitrarily or capriciously)." *Comm. Of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Once a debtor articulates a valid business justification, the business judgment rule presumes that, in making a business decision, the debtor acted "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *Official Comm. Of*

*Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 656

(S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  Moreover, a

court should be deferential to the determination of management where a debtor "articulates a

reasonable basis for its business decisions . . . , courts generally will not entertain objections to the

debtors' conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

25.    Finally, Bankruptcy Rule 6004(f)(1) authorizes a debtor to sell estate

property outside of the ordinary course of business by private sale.  *See* Fed. R. Bankr. P.

6004(f)(1).  Private sales by debtors outside of the ordinary course of business are appropriate

where the debtor demonstrates that the sale is permissible pursuant to section 363 of the

Bankruptcy Code.  *See, e.g.*, *In re Wellman, Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6,

2008) (approving private sale of industrial complex); *see also In re Schipper*, 933 F.2d 513, 515

(7th Cir. 1991) (private real estate sale by debtor approved when purchase price was the same as

independent appraisal); *In re Bakalis*, 220 B.R. 525, 531–32 (Bankr. E.D.N.Y. 1998) (trustee has

ample authority to conduct a sale of estate property through private sale).

26.    In addition, section 105(a) of the Bankruptcy Code provides that "[t]he

court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105(a).

**A.  The Sale or Redemption of the Trust Assets is a Sound Exercise of the Debtors'
Business Judgment.**

27.    The Debtors respectfully submit that the sale or redemption of the Trust

Assets is a sound exercise of the Debtors' business judgment and should be approved pursuant to

sections 105(a) and 363(b) of the Bankruptcy Code.  Since before the commencement of these

cases, the Debtors have worked closely with their advisors to determine the best path forward that

would maximize the value of their assets, a substantial portion of which are digital assets and other assets associated with the digital asset industry, such as the Trust Shares at issue herein.

28.     As these cases approach a critical juncture and the Debtors are working to confirm a chapter 11 plan, *see Debtors' Amended Joint Chapter 11 Plan*, ECF No. 989 (the "Plan"), the Debtors have determined that it is in the best interests of the estates and the Debtors' creditors to obtain the Court's approval to sell or redeem the Trust Assets, as the Debtors deem appropriate or necessary, in consultation with their advisors, the Committee, and the Ad Hoc Group, and, solely with respect to the Additional GBTC Shares, Gemini.  The utility of the Debtors' holdings of Trust Shares will be maximized if the Debtors have the flexibility to transfer or redeem the shares at opportune times.  With the flexibility to sell or redeem the Trust Assets, the Debtors are hoping to maximize the value of the Trust Assets and to position themselves to facilitate distributions to their creditors, whether by increasing the cash on hand to distribute to creditors or by using the cash proceeds to obtain BTC for distribution to creditors.  In light of all the facts available to the Debtors and their advisors, the Debtors believe that establishing the flexibility to sell or redeem the Trust Assets is a prudent step.  The Debtors also believe that obtaining authority to redeem and sell shares is necessary now, given the impact on market price from selling large quantities of Trust Shares at the same time and in light of the GBTC Conversion Event, to provide the Debtors with the ability to use their discretion in determining the timing for the sale or redemption of the Trust Assets.  Because of the Debtors' large holdings, selling their Trust Assets all at once may have an outsized impact on the wholesale price of the Trust Assets. Specifically with respect to the GBTC Assets, the Debtors believe that having the authority to redeem the GBTC Shares for cash, as opposed to selling the GBTC Shares, is necessary in order

to minimize the impact of recent volatility in the price of GBTC and similar assets on the sale price

of the Debtors' GBTC Assets.

29.     The Debtors also seek the authority to use cash on hand to purchase BTC

or ETH in anticipation of receiving proceeds from the sale, transfer or redemption of Trust Assets.

Because selling or redeeming the Trust Assets is a multi-step process that may entail delay between

the time the Debtors decide to sell or redeem the shares and the time the Debtors obtain proceeds

from the sale or redemption, the Debtors believe it is a sound exercise of their business judgment

to use cash on hand to purchase BTC or ETH, rather than being having to wait until they receive

cash proceeds from the sale or redemption of Trust Assets to purchase BTC or ETH, which will

allow the Debtors to preserve any value derived from the appreciation of BTC or ETH in the

interim.

30.     Moreover, the Debtors submit that the retention of one or more Brokers is

a sound exercise of the Debtors' business judgment.  The Debtors anticipate that their use of one

or more Brokers could provide several key benefits.  The Debtors anticipate that each Broker's

expertise will assist with determining the timing of sales, the appropriate trading venues and sale

counterparties, ultimately enabling the Debtors to appropriately price the Trust Assets and increase

the likelihood they will receive fair market value for the assets.

31.     The Debtors also believe that obtaining the Court's approval for Gemini to

begin conducting sales or redemptions of the Initial GBTC Shares in anticipation of its role as the

Gemini Distribution Agent (as defined in the Plan), notwithstanding and without prejudice to the

pending disputes with respect to such shares, is a prudent step, which allows the Debtors' creditors

to realize the benefits of selling such shares immediately without the need for delay in awaiting a

determination of the pending disputes.  The Debtors believe that the relief requested and the

Proposed Order imposes the appropriate protections to ensure that all interests in the Initial GBTC

Shares are protected until resolution of related disputes.

**B. The Proposed Transactions Should be Approved Free and Clear of Liens, Claims and Encumbrances**

32.     To procure the highest offers available for the Trust Assets, the Debtors

should be permitted to sell or redeem the shares free and clear of any and all liens, claims, interests

and other encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such

liens, claims, interests and encumbrances to attach to the proceeds of the sales.  The Debtors also

seek the Court's authorization to sell the Trust Assets notwithstanding the Transfer Consent

Requirement in the ETH Trust Agreements or the Redemption Consent Requirement in the GBTC

Trust Agreement.

33.     Section 363(f) permits a debtor to sell estate property free and clear of any

liens, claims, interests and encumbrances if any one of the following conditions is satisfied: (a)

applicable non-bankruptcy law permits sale of such property free and clear of such interest; (b)

such entity consents; (c) such interest is a lien and the price at which property is to be sold is

greater than the value of all liens on such property; (d) such interest is in bona fide dispute; or (e)

such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction

of such interest. 11 U.S.C. § 363(f).

34.     As the Court is aware, in the Gemini Adversary Proceeding, Gemini  seeks

to establish its purported security interest in, or a constructive trust or other legal entitlement over,

the Additional GBTC Shares.  *See* Gemini Complaint, ¶¶ 10, 80-85.  The Debtors dispute that any

such interest, constructive trust or other legal entitlement exists or should be imposed over any of

their GBTC Shares.  However, to the extent the Court were to find that a security interest,

constructive trust, or some other legal entitlement, was or should be created, such interests shall

attach to the proceeds of the sale of the Additional GBTC Shares, thereby preserving Gemini's rights, if any.

35.    As set forth above, the Trust Assets are subject to the Sponsor Consent Requirements, which require that the Debtors obtain the prior written consent of the Sponsor prior to selling, transferring or redeeming the shares, as applicable, which consent the Sponsor may withhold at its sole discretion.  To the extent the Sponsor fails to file an objection to this Motion, the Debtors request that the Sponsor be deemed to have consented to the requested relief, that the Court find the conditions of section 363(f) satisfied and that the Court permit the Debtors to sell, transfer or redeem the Trust Assets, as applicable, without obtaining the consent of the Sponsor.  *See In re GSC, Inc.*, 453 B.R. 132, 183 (Bankr. S.D.N.Y. 2022) ("Consent pursuant to section 363(f)(2) may be satisfied where an entity has not objected to a sale."); *see also In re Enron Corp.*, No. 01-16034 (AJG), 2004 WL 5361245, at *2 (Bankr. S.D.N.Y. Feb. 5, 2004) ("Those parties who did not object, or who withdrew their objections, to the Motion concerning the sale of the ECTRIC Claim are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code."); *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002).  As set forth above, the Debtors believe that the proposed sales, transfers or redemptions of the Trust Assets are a necessary step at this juncture in order to maximize the value of their estates.  The Debtors submit that, provided the Debtors receive the Court's approval and authorization to conduct sales or seek redemptions pursuant to the conditions set, any other conditions, restrictions or limitations on the Debtors' ability to sell their the Trust Assets amount to an unreasonable restraint of the Debtors' ability to sell valuable assets in their possession that they have determined, as a reasonable exercise of their sound business judgment, should be sold for the benefit of their creditors.  *See In re Shubh Hotels Pittsburgh, LLC*, 439 B.R. 637, 645-46 (Bankr. W.D. Pa. 2010) (approving a debtor's entry

into a franchising agreement over the objection of a secured lender with a veto power over the re-flagging of the hotel because "bankruptcy causes certain provisions of a loan document to be suspended" and the secured lender was adequately protected); *see also In re Daufuskie Island Props. LLC*, 431 B.R. 626, 642 (Bankr. S.C. 2010) (approving the sale of property owned by the debtor free and clear of the prior owner's repurchase right due to changed conditions and circumstances making the repurchase right "oppressive and unreasonable" and because the repurchase right was in bona fide dispute). For similar reasons, the Debtors believe that, in the event they determine that it is in the best interests of their estates to cause the Trusts to redeem any Trust Assets, that the Trusts be required to redeem such Trust Assets upon request, provided the Debtors comply with all other Redemption Procedures (other than the Redemption Consent Requirement). The Debtors should not be forced to retain any illiquid Trust Assets, thereby impeding their ability to make distributions to creditors, if they are otherwise unable to monetize the shares.

36.     Other than with respect to Gemini and the Sponsor, the Debtors are not aware of any other party asserting an interest to the Trust Assets. However, to the extent that the Trust Assets are burdened by a lien, claim, interest or encumbrance of which they are not aware, the Debtors respectfully submit that they be permitted to sell the Trust Assets free and clear of any such liens, claims, interests or encumbrances of any party that fails to assert such a lien, claim, interest or encumbrances in an objection to this Motion under section 363(f)(b), provided that notice of this Motion is provided to such party. *See In re GSC, Inc.*, 453 B.R. at 183 ("Consent pursuant to section 363(f)(2) may be satisfied where an entity has not objected to a sale."); *see also In re Enron Corp.*, 2004 WL 5361245, at *2 ("Those parties who did not object, or who withdrew their objections, to the Motion concerning the sale of the ECTRIC Claim are deemed to have

consented pursuant to section 363(f)(2) of the Bankruptcy Code."); *FutureSource LLC v. Reuters Ltd.*, 312 F.3d at 285.  Any interest in any of the Trust Assets sold in accordance with an order granting this Motion shall attach to the proceeds of the sale of such Trust Assets.

## **WAIVER OF RULE 6004(h)**

37.    In light of the nature of the relief requested herein, the Debtors submit that causes exists for the Court to enter an order waiving the fourteen-day stay period required under Bankruptcy Rule 6004(h).

## **NOTICE**

38.    Bankruptcy Rule 2002 provides for twenty-one-days' notice for the proposed sale of property of the estate other than in the ordinary course of business unless the court "for cause shown shortens the time or directs another method of giving notice."  *See* Bankruptcy Rule 2002(a)(2).  The Debtors are seeking that the Court, for cause shown, shorten the twenty-one-day period applicable to this Motion, as set forth in the *Debtors' Motion to Shorten the Notice Period for the Debtors' Motion Seeking Entry of an Order Authorizing, but not Directing, (I) the Sale of Trust Assets and (II) Granting Related Relief* (the "Motion to Shorten Time") filed contemporaneously herewith.  The Debtors submit that, in light of the nature of the relief requested and the cause shown in the Motion to Shorten Time, no other or further notice need be provided.

## **NO PRIOR REQUEST**

39.    No prior request for the relief requested herein has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as **Exhibit B**, and (b) grant such other and further relief as is just and proper.

Dated:  February 2, 2024
         New York, New York

/s/ Sean A. O'Neal
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and
Debtors-in-Possession*

**<u>EXHIBIT A</u>**

**DiYanni Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DECLARATION OF MICHAEL DIYANNI IN SUPPORT OF DEBTORS' MOTION
SEEKING ENTRY OF AN ORDER AUTHORIZING, BUT NOT DIRECTING,
(I) THE SALE OF TRUST ASSETS AND (II) GRANTING RELATED RELIEF**

I, Michael DiYanni, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.     I am a Managing Director & Head of Risk Advisory at Moelis & Company LLC ("Moelis"), the Debtors' retained investment banker and capital markets advisor in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), which has its principal office at 399 Park Avenue, 5th Floor, New York, New York, 10022.

2.     I have over twenty years of investment banking and trading experience, including work advising companies, equity investors, financial vehicles, and creditors across a broad range of industries and geographies in a broad range of transactions. Since joining Moelis, I have been involved in the execution of numerous market-leading structured credit transactions and advisor assignments. Prior to joining Moelis, I was an Executive Director at J.P. Morgan in the Fixed Income Group, where I led the North American Franchise Structuring Group and the Credit Hybrids Pricing and Execution Group. Prior to J.P. Morgan, I was a Director in the Fixed Income

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

Group at Citigroup on the Credit Derivatives Trading Desk in New York and London. I hold a Bachelor of Arts degree in Economics from Yale University and a Master of Science in Finance and Economics from the London School of Economics.

3.      I have been involved in several notable chapter 11 cases and restructuring assignments, including as advisor to the debtors in BlockFi Inc.'s ~2.4 billion restructuring; as advisors and investment banker to an ad hoc group in Core Scientific's ~1.5 billion restructuring; as advisors to the debtors in Voyager Digital's ~$1.9 billion restructuring; as advisor to the debtors in Hertz Global Holding's ~$24.0 billion restructuring; and as advisor to the financier in Obra Capital's ~$600 million replacement DIP financing and exit facility in GWG's chapter 11 restructuring. I have also been involved in numerous restructuring transactions outside of the chapter 11 context, including as advisor to secured financing counterparties in MFA Financial's ~$5.8 billion restructuring of its repurchase agreement portfolio; as advisor to the debtors in Ambac Financial Group's ~$5.0 billion restructuring; as advisor to secured financing counterparties in AG Mortgage Investment Trusts' ~$3.0 billion restructuring of its repurchase agreement portfolio; as advisor to Citigroup in its ~$1.7 billion settlement with Lehman Brothers; and as advisor to the Pan-Canadian Investors Committee for Third-Party Structured ABCP noteholders in their ~$30 billion restructuring and CCAA plan implementation.

4.      I submit this declaration (the "Declaration") in support of the *Debtors' Motion for an Order Authorizing, But Not Directing, (I) the Sale of Trust Assets and (II) Granting Related Relief* (the "Motion")[2] filed contemporaneously herewith.  Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, information provided to me by the Debtors' representatives or advisors, or upon client matter records or other relevant

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

documents kept in the ordinary course of business that were reviewed either by me or other employees at Moelis under my supervision and direction. In making this Declaration, I have relied in part on information and material that the Debtors' representatives and advisors have gathered, prepared, verified and provided to me, for my benefit, in preparing this Declaration. I am not being compensated for this testimony other than through payments received by Moelis in its capacity as financial advisor to the Debtors.  If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

5.      I understand that the Debtors currently own 35,939,233 GBTC Shares, 8,717,520 ETHE Shares and 2,970,892 ETCG Shares with a total aggregate market value of approximately $1.59 billion.[3]  I also understand that the Trust Shares are subject to the Sponsor Consent Requirements, which requires a holder of any Trust Shares to obtain the Sponsor's prior written consent before selling, transferring or redeeming the Trust Shares.

6.      I believe it would be in the best interests of the Debtors' estates to enable the Debtors to sell or redeem the Trust Assets, without the Sponsor's consent, to facilitate distributions to creditors pursuant to a confirmed chapter 11 plan in these Chapter 11 Cases. Because the Debtors seek to limit the market impact of any sale of the Trust Assets, it would be beneficial for the Debtors to have the discretion to sell some portion of the Trust Assets periodically over time. Similarly, because the Debtors seek to maximize the price they obtain for their Trust Assets, it would be beneficial for the Debtors to have the ability to redeem their Trust Assets.

7.      Moreover, I believe that the retention of one or more brokers could provide several key benefits.  I believe that each Broker's expertise will assist with determining the timing of sales,

---

[3]      This valuation is based on market price of $38.50 per share of GBTC, $19.50 per share of ETHE and $12.80 per share of ETCG, as of January 30, 2024.

the appropriate trading venues and sale counterparties, ultimately enabling the Debtors to appropriately price the Trust Assets and increase the likelihood they will receive fair market value for the assets.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 2, 2024
      New York, New York

                                         */s/ Michael DiYanni*
                                         Michael DiYanni
                                         Managing Director
                                         Moelis & Company LLC
                                         *Investment Banker to the Debtors*

**<u>Exhibit B</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

## ORDER GRANTING DEBTORS' MOTION SEEKING
## ENTRY OF AN ORDER AUTHORIZING, BUT NOT DIRECTING,
## (I) THE SALE OF TRUST ASSETS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Genesis Global Holdco, LLC ("Holdco") and

certain of its affiliates, as debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), for entry of an order (this "Order") authorizing and approving, but

not directing, the sale of the Trust Assets pursuant to sections 105(a) and 363 of the Bankruptcy

Code, Bankruptcy Rules 2002 and 6004, and the *Amended Standing Order of Reference* from the

United States District Court for the Southern District of New York dated January 31, 2012; and

the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that

the Court may enter a final order consistent with Article III of the United States Constitution; and

the Court having found that venue of this proceeding and the Motion in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in

the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in

interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]    All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

hearing on the Motion was appropriate and no other notice need be provided; and the Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before the Court (the "Hearing"); and the Court having determined that the legal and

factual bases set forth in the Motion and on the record of the Hearing establish just cause for the

relief granted herein; and all objections to the Motion (if any) having been withdrawn or overruled;

and upon all of the proceedings had before the Court; and after due deliberation and sufficient

cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED and approved to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to redeem, sell, or transfer the

Trust Assets (or the proceeds thereof), in their reasonable business judgment, in accordance with

the guidelines set forth below (the "Trust Asset Sale Guidelines"):

(a)    **Asset Sales**.  Notwithstanding and without prejudice to the disputes pending
with respect to the Additional GBTC Shares, beginning on the date of this
Court's entry of this Order, the Debtors will be immediately authorized, but not
directed, to conduct sales or redemptions of the Trust Assets (which shall
include, for the avoidance of doubt, the Additional GBTC Shares) including
pursuant to any available exemptions from registration under the Securities Act,
including, but not limited to, sales in private placements and public sales
pursuant to Rule 144, if applicable.  The Debtors shall undertake to comply with
any and all needed exemptions from registration under the Securities Act in
connection with the sales of the Trust Assets; *provided* that the Debtors shall (i)
provide at least three (3) business days' advance notice to counsel for each of
the Committee and the Ad Hoc Group of any proposed redemption, sale, or
transfer and (ii) have obtained the written consent of the Committee and the Ad
Hoc Group to such redemption, sale, or transfer, which consent may be provided
through counsel (e-mail shall suffice).

(b) **Initial GBTC Shares Asset Sales**.  Notwithstanding and without prejudice to the disputes pending with respect to the Initial GBTC Shares, Gemini, in anticipation of its role as the Gemini Distribution Agent (as defined in the Plan), shall be authorized, but not directed, to conduct sales or redemptions of the Initial GBTC Shares; *provided* that Gemini shall provide the Debtors, or, following the Plan Effective Date, the PA Officer, with three days' advance notice of any proposed sale or redemption of the Initial GBTC Shares.  Any interest of the Debtors' in such shares, as determined by the Court in connection with the Gemini Adversary Proceeding, shall attach to the proceeds of any sale, redemption, or transfer of the Initial GBTC Shares, which proceeds shall be held by Gemini in the same manner as it currently holds the Initial GBTC Shares.  To the extent the Debtors prevail with respect to the Gemini GBTC Shares Determination (as defined in the Plan), the term GBTC Assets as used in this Order shall include any Initial GBTC Shares not yet sold by Gemini, and the Debtors will be permitted to sell or redeem such shares in accordance with this Order.

(c) **Maximization of Sale Proceeds**.  Both the Debtors and Gemini shall, on a good faith basis, use reasonable best efforts to maximize the market price of any Trust Assets or Initial GBTC Shares and the proceeds received from any sale thereof or any redemption thereof.

(d) **Abrogation of the Sponsor Consent Requirements**.

(i) Notwithstanding anything in the ETH Trust Agreements, the Debtors shall not be required to obtain the prior written consent of the Sponsor pursuant to section 4.2 of the ETHE Trust Agreement and section 4.2 of the ETCG Trust Agreement.  The Transfer Agent (as defined in each of the ETH Trust Agreements) is authorized and directed to take any and all actions necessary to effectuate any sale of ETH Shares entered into by the Debtors pursuant to and in accordance with the Trust Asset Sale Guidelines and this Order.

3

(ii)    Notwithstanding anything in the GBTC Trust Agreement, the Debtors shall not be required to obtain the consent of the Sponsor to redeem the GBTC Shares nor shall the Sponsor suspend or reject a redemption order other than for reasons of illegality. Upon request of the Debtors, the GBTC Trust shall redeem such GBTC Assets in accordance with the Redemption Procedures.

(e)    **Broker**. The Debtors shall be authorized, but not required, to retain and work with one or more established Brokers of their choosing (with the consent of the advisors to the Committee and the Ad Hoc Group) on reasonable and customary terms to assist with conducting the sales of their Trust Assets in accordance with the Trust Asset Sale Guidelines set forth in this Order, and to pay the associated Broker fees.

(f)    **Timing of Sales or Redemptions**. The Debtors shall have the authority to use their discretion in determining the timing for the sale or redemption of any Trust Assets, in consultation with the Committee, the Ad Hoc Group, and, solely with respect to the Additional GBTC Shares, Gemini.

(g)    **Purchase of BTC or ETH**. To the extent not already authorized in the *Final Order (I) Authorizing Debtors to Continue to Operate the Existing Cash Management System, Including Existing Bank Accounts, Honor Certain Prepetition Obligations Related Thereto, and Maintain Existing Business Forms; (II) Permitting Continued Intercompany Transactions and Granting Certain Administrative Claims; (III) Extending the Time to Comply with the Requirements of Section 345 of the Bankruptcy Code and (IV) Granting Related Relief*, ECF No. 150 (the "Cash Management Order"), the Debtors shall be authorized, but not directed, to use proceeds from the sales or redemption of any Trust Assets or cash on hand (in anticipation of receiving proceeds from the sale or redemption of any Trust Assets) to purchase BTC or ETH, as determined by the Debtors in their discretion in consultation with the advisors to the Committee and the Ad Hoc Group. Any BTC or ETH purchased with proceeds from the

sale or redemption of any Trust Assets will be deemed to be the proceeds of the monetization of the Trust Assets.

(h) **Attachment of Interests**. To the extent any party, including Gemini, is found to have any interest in the any Trust Assets, including the GBTC Assets, such interests shall attach to the same extent to the proceeds of any sales of such Trust Assets.

(i) **Transfer of Authority to PA Officer and Wind Down Oversight Committee**. Upon the Effective Date of the Plan, any authority granted to the Debtors by this Order shall be transferred to and vest in the PA Officer, and any consent or consultation rights of the Committee or the Ad Hoc Group shall be transferred to and vest in the Wind-Down Oversight Committee.

3. Any party receiving notice of the Motion that fails to file a timely objection to the Motion and the terms of this Order is deemed to have consented to any redemptions, transfers or sales of Trust Assets free and clear of any interest in such Trust Assets, and the sales shall be free and clear of any liens, claims, encumbrances and interests, with any such liens, claims, encumbrances and interests to attach to the proceeds of such sales to the same extent; *provided, however*, that the foregoing shall not prejudice the rights of Gemini Trust Company, LLC provided in this Order or in the Gemini Adversary Proceeding.

4. All rights, defenses and privileges with respect to ownership of the Initial GBTC Shares and the Additional GBTC Shares or the parties' interests in such shares, including any tax implications or liabilities resulting from the sale, transfer, or redemption of any Initial GBTC Shares or Additional GBTC Shares, are expressly reserved. Nothing in this Order, nor any action taken in connection herewith, shall be deemed or otherwise constitute an admission with respect to any issues relating to ownership of the Initial GBTC Shares or the Additional GBTC Shares by any party, or any related rights, obligations or liabilities

5.     The rights of Gemini Trust Company, LLC to assert a security interest in, constructive trust over, or other legal entitlement to, the proceeds of the sale of the Additional GBTC Shares, and any and all rights of the Debtors, the Committee, and any other party in interest to oppose any such security interest, constructive trust, or other legal entitlement, are fully preserved.

6.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

7.     This Order is immediately effective and enforceable, notwithstanding any applicability of Bankruptcy Rule 6004(h) or otherwise.

8.     The Debtors are authorized and empowered to take all actions necessary to implement and effectuate the relief granted in this Order.

9.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation, interpretation or enforcement of this Order.


Dated: _____, 2024
              New York, New York

                                                          _____
                                                          THE HONORABLE SEAN H. LANE
                                                          UNITED STATES BANKRUPTCY JUDGE