CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF FILING OF ARBITRATION DEMAND WITH RESPECT TO LATE
FEES AND ENFORCEMENT COSTS UNDER THE DCG LOAN AND DCGI LOAN**

>        **PLEASE TAKE NOTICE** that, on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC and its affiliates Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific Pte. Ltd., as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" and the cases, the "Chapter 11 Cases"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

>        **PLEASE TAKE FURTHER NOTICE** that, on February 8, 2024, GGC filed a Demand for Arbitration, attached hereto as Exhibit A (the "Arbitration Demand"),[2] with the

---

[1]        The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10003.

[2]        Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Arbitration Demand.  On February 5, 2024, counsel to the Debtors requested that counsel for the DCG Parties notify the Debtors by February 7, 2024 as to whether the DCG Parties would consent to submitting to the jurisdiction of the Bankruptcy

American Arbitration Association under the 2022 Commercial Arbitration Rules, seeking the payment of certain Late Fees and enforcement costs relating to that certain master lending agreement between GGC and DCG (the "DCG MLA") and that certain master lending agreement between GGC and DCGI (the "DCGI MLA" and together with the DCG MLA, the "MLAs"), which amounts were not sought pursuant to those certain turnover actions captioned as *Genesis Global Capital, LLC v. Digital Currency Group, Inc.*, 23-ap-01168 (Bankr. S.D.N.Y. 2023) and *Genesis Global Capital, LLC v. DCG International Investments, Ltd.*, 23-ap-01169 (Bankr. S.D.N.Y. 2023).

**PLEASE TAKE FURTHER NOTICE** that, GGC reserves and does not waive any rights, defenses, arguments, privileges and/or remedies in connection with the MLAs.

| | |
|---|---|
| Dated:   February 8, 2024<br>New York, New York | */s/ Sean A. O'Neal*<br>Sean A. O'Neal<br>Luke A. Barefoot<br>Jane VanLare<br>Thomas S. Kessler<br>CLEARY GOTTLIEB STEEN &<br>HAMILTON LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>*Counsel for the Debtors*<br>*and Debtors-in-Possession* |

---

Court with respect to the matters addressed in the Arbitration Demand.  To date, the DCG Parties have not provided a response.

## Exhibit A

**Arbitration Demand**

AMERICAN ARBITRATION ASSOCIATION
NEW YORK, NEW YORK

| | |
|---|---|
| Genesis Global Capital, LLC<br><br>        Claimant,<br><br>    -against-<br><br>Digital Currency Group, Inc. and DCG<br>International Investments, Ltd.<br><br>        Respondents. | AAA Case: ------------------- |

**<u>DEMAND FOR ARBITRATION</u>**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: +1 212 225 2000
Facsimile: +1 212 225 3999

*Attorneys for Claimant*

**TABLE OF CONTENTS**

I.    **INTRODUCTION** ................................................................................................. 1

   A.   Preliminary Statement ................................................................. 1

   B.   Parties To The Arbitration ........................................................... 4

   C.   Arbitration Agreements ............................................................... 6

II.    **FACTUAL BACKGROUND** ..................................................................... 7

   A.   GGC And Respondents Enter Into The MLAs And Other Loan Agreements ............ 7

   B.   Although The Loans Matured And Payment On The Principal Amounts Was Immediately Due, Respondents Initially Argued That The Loans Had Not Matured ............................................................................................. 12

   C.   GGC Initiates The Turnover Actions And Respondents Agree That Certain Amounts Are Owed Under The MLAs ................................................... 14

   D.   Respondents Continue To Refuse To Make Payments Owed On The Late Fees And Other Amounts Owed Under The MLAs ....................................... 16

III.   **LEGAL CLAIMS** ................................................................................ **18**

IV.   **RELIEF SOUGHT** .............................................................................. **20**

1.      Genesis Global Capital, LLC ("GGC" or "Claimant") hereby submits this Demand for Arbitration pursuant to the Amended and Restated Master Loan Agreement, dated November 10, 2022 (the "DCG MLA")[1] and the Master Loan Agreement, dated June 21, 2019 (the "DCGI MLA"),[2] against Digital Currency Group, Inc. ("DCG") and DCG International Investments, Ltd. ("DCGI," and together with DCG, "Respondents").[3]

# I.   INTRODUCTION

## A.   Preliminary Statement

2.      This is a case of a straightforward breach of contract, the core facts of which are largely undisputed:

- GGC entered into a series of loans with its parent company, DCG, and DCG's wholly owned subsidiary, DCGI.

- Following the execution of a Master Digital Currency Loan Agreement with DCG, dated May 16, 2018 (the "Initial DCG MLA"), and various Loan Term Sheets, which were later amended pursuant to the DCG MLA and other Loan Term Sheets, GGC loaned US $500 million (denominated in fiat currency) to DCG.

- Pursuant to the DCGI MLA and a Loan Term Sheet dated June 21, 2019, GGC agreed to make a loan to DCGI of 18,697.74308758 Bitcoin ("BTC").

- The DCG MLA and the DCGI MLA (together, the "MLAs") are substantially identical in their terms, requiring DCG or DCGI, as the case may be, to repay the principal amount on the Maturity Date (as defined in the MLAs), as well as certain additional fees if payment is not timely made.

- After DCG and DCGI required GGC to extend the Maturity Dates of the loans without any consideration, each of the loans became due as of the applicable Maturity Date in May 2023.

- Neither DCG nor DCGI paid the principal amount owed under the MLAs on the applicable Maturity Date.

---

[1]   *See generally* Amended and Restated Master Loan Agreement between Genesis Global Capital, LLC and Digital Currency Group, Inc., dated Nov. 10, 2022 ("DCG MLA") (Exhibit C-1).

[2]   *See generally* Master Loan Agreement between Genesis Global Capital, LLC and DCG International Investments, Ltd., dated June 21, 2019 ("DCGI MLA") (Exhibit C-2).

[3]   Unless otherwise specified, capitalized terms used but not defined herein shall have the meaning ascribed to them in the DCG MLA or DCGI MLA, as applicable.

3.      As a result of DCG's and DCGI's failure to make timely payment, the loans continued to accrue interest, known as "Loan Fees," and also began to accrue "Late Fees" (as both capitalized terms are further defined and described below).  While DCG and DCGI initially argued that the Maturity Date had not occurred, DCG and DCGI each has since acknowledged that it owes certain amounts under the MLAs and entered into a partial repayment agreement with GGC dated September 12, 2023 (as may be amended from time to time, the "Partial Repayment Agreement"),[4] designed to settle undisputed obligations, while mutually reserving rights with respect to all disputed obligations and GGC's asserted right to compensation for the reasonable enforcement costs that had accrued, and that were continuing to accrue, based on DCG's and DCGI's failure to make payment.

4.      Notwithstanding DCG's acceptance of its obligations to pay certain amounts owed, DCG has refused to make payment on the Late Fees owed under the DCG MLA, which are in excess of US $27.1 million as of the date of this Demand for Arbitration (the "Demand"), and DCG and DCGI have refused to make payment of enforcement costs owed under the MLAs, both of which are continuing to accrue.

---

[4]      *See generally* Partial Repayment Agreement, Exhibit A to Notice of Voluntary Stay of Prosecution of Complaints against DCG and DCGI, *Genesis Global Capital, LLC v. Digital Currency Group Inc.*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Sept. 12, 2023) ("Partial Repayment Agreement") (Exhibit C-3).  The Partial Repayment Agreement was a result of turnover proceedings (the "Turnover Actions") brought by GGC under section 542(b) of title 11 of the U.S. Code ("Chapter 11"), which permits a debtor to obtain a judgment requiring the payment of "a debt that is property of the [debtor's] estate and that is matured, payable on demand[.]"  The Partial Repayment Agreement was subsequently amended primarily to revise the payment schedule, to collateralize Respondents' obligations, and to provide for the entry of a mutually agreed stipulated order and judgment (the "Stipulated Order and Judgment") holding DCG and DCGI liable for any payments not subsequently made in accordance with the Partial Repayment Agreement.  On December 22, 2023, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approved the Partial Repayment Agreement, authorized GGC to take all actions in furtherance of the Partial Repayment Agreement, and entered the Stipulated Order and Judgment.  *See* Order Authorizing GGC to Take Actions in Furtherance of the Partial Repayment Agreement with the DCG Parties, *Genesis Global Capital, LLC v. Digital Currency Group, Inc.*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Dec. 22, 2023) (Exhibit C-4).  GGC reserves all rights, including as may be necessary to enforce the Partial Repayment Agreement in the Bankruptcy Court.

Because DCG disputes its obligation to pay Late Fees on the DCG Loans (as defined below), such Late Fees were excluded from the scope of the Turnover Actions and the Partial Repayment Agreement (as discussed in further detail below), and the dispute does not arise under the Partial Repayment Agreement and is subject to the jurisdiction of AAA and a tribunal constituted pursuant to its rules, as provided in the DCG MLA.  *See* DCG MLA (Exhibit C-1) § XIII.

5.      DCG has relied on its nonsensical interpretation of an obvious scrivener's error to withhold payment of the Late Fees.  Section III(c) of the DCG MLA states that DCG shall incur Late Fees "on all outstanding and overdue portions of the *Loaned Digital Currencies* and Loan Fees."[5]  DCG contends that because the DCG Loans (as defined below) were not denominated in "Digital Currencies," but rather in U.S. Dollars, DCG does not owe any Late Fees on the overdue principal and Loan Fees under the DCG MLA.  However, the plain language of the provision governing the payment of the Late Fees makes clear that the parties understood and intended that DCG or DCGI (as the case may be) would owe Late Fees on the principal amount of *any loans* not paid as of the Maturity Date.  Moreover, DCG's own conduct – having paid or agreed to pay the Loan Fees under the DCG MLA, which accrue until all "Loaned Digital Currencies" have been repaid – confirms the parties' understanding and intention.  Upon information and belief, and as discussed in further detail below, the reference to "Loaned Digital Currencies" in the Late Fee provision of the DCG MLA is the result of the parties' inadvertent omission when updating the Initial DCG MLA to account for the lending of U.S. dollars, among other changes that were made to conform the language in the Initial DCG MLA to the parties' actual practice.

6.      DCG's and DCGI's efforts to avoid payment on the Late Fees and other amounts on the Loans that both DCG and DCGI have acknowledged they owe has caused GGC to engage in various collection efforts, for which GGC has incurred and is continuing to incur substantial costs and expenses, all of which DCG and DCGI agreed to pay and therefore owe and will continue to owe under the MLAs.

7.      Because DCG has continued to refuse to pay the Late Fees in breach of its obligations under the DCG MLA, and because DCG and DCGI have failed to pay the collection costs associated with GGC's enforcement of its rights under the MLAs, GGC hereby initiates

---

[5]      DCG MLA (Exhibit C-1) § III(c) (emphasis added).

this Arbitration in order to recover the Late Fees under the DCG MLA and the enforcement costs under the MLAs that have accrued and are continuing to accrue, and to which GGC is rightfully entitled.

**B.   Parties To The Arbitration**

    i.    <u>Genesis Global Capital, LLC</u>

8.    Claimant Genesis Global Capital, LLC is a limited liability corporation organized under the laws of Delaware. GGC is 100% owned by Genesis Global Holdco, LLC ("Genesis Holdco"), which is in turn 100% owned by DCG.

9.    GGC provided lending and borrowing services for digital assets, otherwise known as "cryptocurrency," and fiat currency. Following severe disruption in the cryptocurrency market arising from, *inter alia,* the collapse of FTX, GGC, together with its affiliated debtors Genesis Holdco and Genesis Asia Pacific Pte. Ltd., filed for bankruptcy in January 2023. Those bankruptcy proceedings remain pending.

10.    Claimant's address is:

> 175 Greenwich Street
> 38th Floor
> New York, New York
> 10007

11.    Claimant is represented by Cleary Gottlieb Steen & Hamilton LLP. All correspondence in this matter should be sent to its counsel at the following address:

> Sean A. O'Neal
> Ari D. MacKinnon
> Katie L. Gonzalez
> One Liberty Plaza
> New York, New York 10006
> T: 212-225-2000
> F: 212-225-3999
> soneal@cgsh.com
> amackinnon@cgsh.com
> kgonzalez@cgsh.com

ii.      Digital Currency Group, Inc.

12.      Respondent Digital Currency Group, Inc. is a corporation organized under the laws of Delaware that engages in venture capital investing in the digital currency market.  As stated above, DCG indirectly wholly owns GGC.  DCG also indirectly wholly owns DCGI, as further discussed below.

13.      DCG's address is:

> 290 Harbor Drive
> 5th Floor
> Stamford, Connecticut
> 06902

14.      Upon information and belief, DCG is represented by Weil, Gotshal & Manges LLP, at the following address:

> Jeffrey Saferstein
> Jessica Liou
> Furqaan Siddiqui
> Weil Gotshal & Manges LLP
> 767 5th Avenue
> New York, New York 10153
> T: 212-310-8000
> F: 212-310-8007
> jeffrey.saferstein@weil.com
> jessica.liou@weil.com
> furqaan.siddiqui@weil.com

iii.      DCG International Investments, Ltd.

15.      Respondent DCG International Investments, Ltd. is a corporation organized under the laws of Bermuda that also engages in venture capital investing in the digital currency market, primarily focused on international operations.  As stated above, DCGI is indirectly wholly owned by DCG.

16.      DCGI's address is:

> Century House
> 16 Par-la-Ville Road
> Pembroke, HM 08
> Hamilton, Bermuda

5

17.     Upon information and belief, DCGI is also represented by the same counsel at Weil, Gotshal & Manges LLP as DCG, with the same contact information as indicated above.

## C.    Arbitration Agreements

18.     The arbitration agreements upon which this proceeding is based are contained in Section XIII of the DCG MLA and Section XIII of the DCGI MLA (the "Arbitration Agreements"), which are identical, and provide as follows:

> XIII. Governing Law; Dispute Resolution.
>
> This Agreement is governed by, and shall be construed and enforced under, the laws of the State of New York without regard to any choice or conflict of laws rules. If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through negotiation it shall be finally resolved by arbitration administered in the County of New York, State of New York by the American Arbitration Association under its Commercial Arbitration Rules, or such other applicable arbitration body as required by law or regulation, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. The parties agree to waive their rights to a jury trial. If any proceeding is brought for the enforcement of this Agreement, then the successful or prevailing party shall be entitled to recover attorneys' fees and other costs incurred in such proceeding in addition to any other relief to which it may be entitled.[6]

19.     Pursuant to the Arbitration Agreements, the place of the arbitration shall be New York, New York. Section XIII of the MLAs also provides that New York law governs this dispute.

20.     According to the Arbitration Agreements, the AAA Commercial Arbitration Rules, effective as of September 1, 2022 (the "AAA Rules"), apply to this proceeding.[7] Pursuant to the applicable Procedures for Large, Complex Commercial Disputes, as well as R-

---

[6]     DCG MLA (Exhibit C-1) § XIII; DCGI MLA (Exhibit C-2) § XIII.

[7]     See AAA Commercial Arbitration Rules and Mediation Procedure, effective as of Sept. 1, 2022 ("AAA Rules"), R-1(a) ("The parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ('AAA') under its Commercial Arbitration Rules or by arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These Rules and any amendment to them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration or Submission Agreement received by the AAA.").

17(a) of the AAA Rules, this arbitration will be heard by a panel of three arbitrators, with each

side – GGC as Claimant, and DCG and DCGI as Respondents – appointing an arbitrator at

such time as either agreed upon by the parties or mandated by the AAA, with the third arbitrator

to be agreed by the two party-appointed arbitrators, in consultation with the respective parties.[8]

## II.   FACTUAL BACKGROUND

### A.   GGC And Respondents Enter Into The MLAs And Other Loan Agreements

21.      Beginning in 2018, GGC entered into a series of lending agreements with DCG

and DGCI.

#### 1.   The DCG Loans

22.      On May 16, 2018, GGC and DCG entered into the Initial DCG MLA, with GGC

designated as Borrower and DCG as Lender, which contemplated future lending and borrowing

pursuant to Loan Term Sheets.  The Initial DCG MLA originally contemplated that the loans

made by DCG to GGC would be made in the form of "Digital Currency," where Digital

Currency is defined to "mean[] Bitcoin (BTC), Bitcoin Cash (BCH), Ether (ETH), Ether

Classic (ETC), or Litecoin (LTC), or any digital currency that the Borrower and Lender agree

upon."[9]  The Initial DCG MLA included a provision that Late Fees "of 1% (annualized,

calculated daily) of the notional amount of the Loan in addition to the Borrow Fee" would be

---

[8]   *See* AAA Rules, L-2(a) ("[I]f the parties do not agree upon the number of arbitrators and a claim or counterclaim involves at least $3,000,000 then three arbitrators shall hear and determine the case; otherwise one arbitrator shall hear and determine the case."); AAA Rules, R-17(a) ("If the arbitration agreement does not specify the number of arbitrators or is ambiguous, and the parties do not otherwise agree, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed.  A party may request three arbitrators in the Demand or Answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.").

[9]   Master Digital Currency Loan Agreement between Genesis Global Capital, LLC and Digital Currency Group, Inc., dated May 16, 2018 (Exhibit C-5) §§ II(a) (provision on "Loans of Digital Currency," specifying that "[s]ubject to the terms and conditions hereof, Borrower may, in its sole and absolute discretion, request the Lender to Loan to Borrower a specified amount of Digital Currency, and Lender may, in its sole and absolute discretion, extend such Loan or decline to extend such Loan"), I (defining "Digital Currency").

incurred "[f]or each Calendar Day in excess of the Maturity Date or the Recall Delivery Date (whichever is applicable) in which Borrower has not returned any Digital Currency."[10]

23.     Notwithstanding the language in the Initial DCG MLA, which contemplated that *DCG* would make loans to GGC in the form of *Digital Currency*, in 2022, DCG and GGC entered into four Loan Term Sheets, pursuant to which *GGC* agreed to provide DCG with loans denominated in a *fiat currency* (U.S. Dollars) totaling US $500 million.  The four loans made are as follows (the "DCG Loans"):

- January 24 Loan: a fixed-term loan to DCG dated January 24, 2022, for a principal amount of US $100,000,000, and with an original maturity of July 24, 2022 (pursuant to the Loan Term Sheet);[11]

- February 23 Loan: a fixed-term loan to DCG dated February 23, 2022, for a principal amount of US $100,000,000, and with an original maturity of August 23, 2022 (pursuant to the Loan Term Sheet);[12]

- May 9 Loan: a fixed-term loan to DCG dated May 9, 2022, for a principal amount of US $200,000,000, and with a maturity of May 9, 2023 (pursuant to the Loan Term Sheet);[13] and

- May 10 Loan: a fixed-term loan to DCG dated May 10, 2022, for a principal amount of US $100,000,000, and with a maturity of May 10, 2023 (pursuant to the Loan Term Sheet).[14]

24.     The Initial DCG MLA was later revised, and, on November 10, 2022, GGC and DCG entered into the DCG MLA in order to memorialize the terms governing the DCG Loans, which included, among other changes, modifying the language to reflect DCG as the Borrower and GGC as the Lender, and to include provisions governing the posting of collateral and providing for GGC's ability to make margin calls.  In connection with the amendment, the parties entered into amended term sheets to extend the Maturity Dates of certain of the loans.

---

[10]    Master Digital Currency Loan Agreement between Genesis Global Capital, LLC and Digital Currency Group, Inc., dated May 16, 2018 (Exhibit C-5) § III(b).

[11]    *See* Loan Term Sheet for January 24 Loan, dated Nov. 11, 2022 (Exhibit C-6).

[12]    *See* Loan Term Sheet for February 23 Loan, dated Nov. 11, 2022 (Exhibit C-7).

[13]    *See* Loan Term Sheet for May 9 Loan, dated May 9, 2022 (Exhibit C-8).

[14]    *See* Loan Term Sheet for May 10 Loan, dated May 10, 2022 (Exhibit C-9).

The Maturity Date of the January 22 Loan was extended from July 24, 2022 to May 11, 2023, and the Maturity Date of the February 23 Loan was extended from August 23, 2022, to May 11, 2023.

25.     In addition to the principal amounts on each of the Loans stated above, the DCG MLA requires DCG, as the Borrower, to pay a "Loan Fee," or accrued interest on the principal amount of the Loans, calculated daily, as specified in the applicable term sheet for each loan,[15] and a "Late Fee" in connection with any outstanding amounts under the Loans not repaid on the applicable Maturity Date.[16]

26.     Section III(a) pertaining to the Loan Fee states:

> Unless otherwise stated, Borrower agrees to pay Lender a Loan Fee on each Loan.  When a Loan is executed, the Borrower will be responsible to pay the Loan Fee as agreed to herein and annualized in the relevant Loan Term Sheet and subject to change if thereafter agreed by Borrower and Lender.  Except as Borrower and Lender may otherwise agree, Loan Fees shall accrue from, but excluding, the date on which the Loaned Digital Currencies or Loaned U.S. Dollars are transferred to Borrower until, and including, the date on which such Loaned Digital Currencies are repaid in their entirety to Lender.  For any Loan, the minimum Loan Fee shall be the Loan Fee that would accrue for one day.[17]

27.     The interest rates for the DCG Loans are as follows:

- <u>January 24 Loan</u>: 12.00% annual

- <u>February 23 Loan</u>: 10.00% annual

- <u>May 9 Loan</u>: 10.66% annual

- <u>May 10 Loan</u>: 10.66% annual

28.     Section III(c) requires the payment of a Late Fee in the event that *the entirety of the Loan Assets* is not timely repaid:

---

[15]   DCG MLA (<u>Exhibit C-1</u>) § III(a).

[16]   DCG MLA (<u>Exhibit C-1</u>) § III(c).

[17]   DCG MLA (<u>Exhibit C-1</u>) § III(a).

For each Calendar Day in excess of the Maturity Date or the Recall Delivery Day (whichever is applicable) in which Borrower has not returned the entirety of the Loaned Assets or failed to timely pay any outstanding Loan Fee in accordance with Section III(c), Borrower shall incur an additional nominal fee (the "Late Fee") of a 10% (annualized, calculated daily) on all outstanding and overdue portions of the Loaned Digital Currencies and Loan Fees.  If a Late Fee is imposed under this Section III(c) due to an event that would constitute an Event of Default under Section VIII, the imposition of a Late Fee by the Lender does not constitute a waiver of its right to declare an Event of Default for the same event.[18]

29.    Also relevant here, Section XII of the DCG MLA requires that DCG pay to GGC reasonable costs and expenses (including attorneys' fees) associated with any enforcement on the DCG Loans or in the Event of Default on the DCG Loans:

In the event Borrower fails to pay any amounts due or to return any Digital Currency or upon the occurrence of any Event of Default in Section VIII hereunder, Borrower shall, upon demand, pay to Lender all reasonable costs and expenses, including without limitation, reasonable attorneys' fees and court costs, broker fees, and technology costs incurred by the Lender in connection with the enforcement of its rights hereunder.[19]

2.    The DCGI Loan

30.    On June 21, 2019, GGC and DCGI entered into the DCGI MLA.[20]  Under the DCGI MLA, GGC provided an open-term loan to DCGI pursuant to a Loan Term Sheet dated June 18, 2022, for a principal amount of amount of 18,697.74308758 BTC (the "DCGI Loan," together with the DCG Loans, the "Loans").

31.    The DCGI MLA requires DCGI, as the Borrower, to pay a "Loan Fee," or accrued interest on the principal amount of the Loans, calculated daily, as specified in the applicable term sheet for each loan,[21] and a "Late Fee" in connection with any outstanding

---

[18]    DCG MLA (Exhibit C-1) § III(c).

[19]    DCG MLA (Exhibit C-1) § XII.

[20]    *See* DCGI MLA (Exhibit C-2).

[21]    DCGI MLA (Exhibit C-2) § III(a).

amounts under the Loans not repaid on the applicable maturity date.[22]  The Loan Fee and the Late Fee provisions in the DCGI MLA are nearly identical to the Loan Fee and Late Fee provisions in the DCG MLA.

32.    Section III(a) pertaining to the Loan Fee states:

> Unless otherwise agreed, Borrower agrees to pay Lender a financing fee on each Loan (the "Loan Fee").  When a Loan is executed, the Borrower will be responsible to pay the Loan Fee as agreed to herein and annualized in the relevant Loan Term Sheet and subject to change if thereafter agreed by Borrower and Lender.  Except as Borrower and Lender may otherwise agree, Loan Fees shall accrue from and include the date on which the Loaned Digital Currencies are transferred to Borrower to the date on which such Loaned Digital Currencies are repaid in their entirety to Lender.  For any Loan, the minimum Loan Fee shall be the Loan Fee that would accrue for one day.  Lender shall calculate any Loan Fees owed on a daily basis and provide Borrower with the calculation upon request.  The Loan Fee will be calculated off all outstanding portions of the Loaned Digital Currencies.  The Loan Fee is payable monthly by Borrower in arrears.[23]

33.    Section III(c) pertaining to the Late Fee states:

> For each Calendar Day in excess of the Maturity Date or the Recall Delivery Day (whichever is applicable) in which Borrower has not returned the entirety of the Loaned Assets or failed to timely pay any outstanding Loan Fee in accordance with section III(c), Borrower shall incur an additional nominal fee (the "Late Fee") of a 5% (annualized, calculated daily) on all outstanding portions of the Loaded Digital Currencies and Loan Fees.  If a Late Fee is imposed under this Section III(b) due to an event that would constitute an Event of Default under Section VIII, the imposition of a Late Fee by the Lender does not constitute a waiver of its right to declare an Event of Default for the same event.[24]

34.    As with the DCG MLA, Section XII of the DCGI MLA also requires that DCGI pay to GGC reasonable costs and expenses (including attorneys' fees) associated with any enforcement on the DCGI Loan or in the Event of Default on the DCGI Loan:

> In the event Borrower fails to pay any amounts due or to return any Digital Currency or upon the occurrence of any Event of Default in

---

[22]    DCGI MLA (Exhibit C-2) § III(c).

[23]    DCGI MLA (Exhibit C-2) § III(a).

[24]    DCGI MLA (Exhibit C-2) § III(c).

Section VIII hereunder, Borrower shall, upon demand, pay to Lender all reasonable costs and expenses, including without limitation, reasonable attorneys' fees and court costs, broker fees, and technology costs incurred by the Lender in connection with the enforcement of its rights hereunder.[25]

**B.   Although The Loans Matured And Payment On The Principal Amounts Was Immediately Due, Respondents Initially Argued That The Loans Had Not Matured**

35.     On May 9, 2023, the May 9 Loan matured; on May 10, 2023, the May 10 Loan matured; and on May 11, 2023, the January 24 Loan, the February 23 Loan, and the remaining BTC due under the DCGI Loan matured (each date, a "Maturity Date").[26] Each Maturity Date triggered an obligation by DCG or DCGI to return the Loaned Assets (as defined in the DCG MLA and the DCGI MLA, respectively) under each of the Loans. Pursuant to Sections II(d)(i) and VIII(a) of both of the MLAs, each of DCG's and DCGI's failure to return the Loaned Assets outstanding under the Loans as of their Maturity Dates resulted in a termination of the Loans and constituted automatic Events of Default (as defined in both MLAs).

1.   The DCG Loans

36.     In an effort to avoid payment of the Principal Amounts as they became due, on May 9, 2023 – the very same Maturity Date for the January DCG Loans – DCG made an eleventh hour attempt to convert the Loans from their status as Outstanding Loans to Open Loans, as defined in the MLAs, as a ploy to give DCG more time to repay the principal of the Loans and suspend the accrual of the Loan Fees at Late Fees.[27] At 10:37 p.m. ET on May 9, 2023, DCG sent a request for wire instructions to GGC (the "May 9 DCG Request") for the repayment of the DCG Loans, asserting that the May 9 DCG Request itself "triggers the

---

[25]   DCGI MLA (Exhibit C-2) § XII.

[26]   On November 10, 2022, DCGI transmitted a letter notifying GGC of its "intent to partially repay the [DCGI] Loan," subsequent to which the "remaining Loan balance [would be] 4,550.45173345 [BTC]." Letter from A. Derar Islim (GGC) to M. Kraines (DCGI), dated Nov. 10, 2022 (Exhibit C-10).

[27]   *See* DCG MLA (Exhibit C-1) § II(c).

automatic conversion of the Outstanding Loans to Open Loans (as defined in the [DCG] MLA)."[28]

37.     This was an obvious distortion of Section II(c)(i) of the DCG MLA, which provides that the DCG Loans will convert to Open Loans only if (i) DCG makes a *timely request* for wire instructions for repayment of the Loans, *and* (ii) GGC *fails to provide* such wire instructions on the day prior to the applicable Maturity Date.

38.     With respect to condition (i), the May 9 DCG Request for wire instructions for repayment of the Loans at 10:37 p.m. ET on May 9, 2023 did not constitute a "timely" request, because the May 9 DCG Request did not afford GGC sufficient time to provide the wire instructions one day prior to the Maturity Date of the May 9 Loan or the May 10 Loan.[29] Specifically, the May 9 DCG Request was sent on – not before – the Maturity Date for the May 9 Loan, and was sent less than 90 minutes before midnight on the day prior to the Maturity Date for the May 10 Loan.

39.     Moreover, with respect to condition (ii) in Section II(c)(i) of the DCG MLA, GGC in fact provided the requested wire instructions promptly (before midnight on May 9, 2023) upon receiving the May 9 DCG Request.[30]

40.     As a result, the conditions articulated in Section II(c)(i) of the DCG MLA for the conversion of the DCG Loans to Open Loans were *not* met.

---

[28]   Emails between GGC and DCG, dated May 9 – 10, 2023 (Exhibit C-11).

[29]   *See* DCG MLA (Exhibit C-1) § II(c)(i) ("If, upon timely making such request, Lender has not provided to Borrower a Digital Currency Address or wire instructions, as applicable, for receiving the return or repayment of a Loan by Close of Business on the day prior to the earlier of the Maturity Date, the Recall Delivery Day or the Redelivery Day, as applicable, then such Loan will become an Open Loan on said Maturity Date or Redelivery Day, whichever applicable, and no additional Loan Fees shall be accrued after the Maturity Date or the Redelivery Day.").

[30]   *See* Emails between GGC and DCG, dated May 9 – 10, 2023 (Exhibit C-11) (Chief Legal Officer of Genesis Global Trading, Inc., on behalf of GGC, providing wire instructions in response to the May 9 DCG Request, and on May 10, 2023, Genesis Global Trading, Inc. Chief Legal Officer following up on the same email thread to ensure that delivery of her prior message had been successful).

41.     On May 12, 2023, GGC sent a letter to DCG, notifying DCG that its failure to repay the Loans as of the Maturity Date constituted a default and resulted in a termination of the Loans.[31]  GGC expressly reserved all rights under the DCG MLA and relating to the DCG Loans.[32]

### 2.   The DCGI Loan

42.     On May 9, 2023, substantially simultaneously with the May 9 DCG Request, DCGI sent to GGC a request that it "suspend the termination" of the DCGI Loan, which was due to mature on May 11, 2023, and to reinstitute the DCGI Loan "as an Open Loan (as defined in the MLA) consistent with [GGC and DCGI's] course of dealing."[33]  GGC responded on May 12, 2023, rejecting DCGI's request and expressly reserving all rights under the MLAs and relating to the Loans.[34]

43.     Under Section II(d)(iii) of the DCGI MLA, the right to suspend the termination of, and reinstitute, a Loan is in the sole discretion of GGC as lender.[35]  As stated in its May 12, 2023 letter, GGC has not agreed to suspend termination of the DCGI Loan or reinstitute the DCGI Loan as an Open Loan under Section II(d)(iii) of the DCGI MLA.[36]  Therefore, because the outstanding balance under the DCGI Loan was not repaid, it matured on May 11, 2023.

### C.   GGC Initiates The Turnover Actions And Respondents Agree That Certain Amounts Are Owed Under The MLAs

44.     In the months that followed DCG's and DCGI's unsuccessful attempt to convert the Loans from Outstanding Loans to Open Loans, DCG and DCGI continued to refuse to make

---

[31]   Letter from GGC to M. Katz (DCG and DCGI), dated May 12, 2023 ("Notice of Default Reservation of Rights") (Exhibit C-12).

[32]   Notice of Default Reservation of Rights (Exhibit C-12).

[33]   Email from G. Ingrassia (DCG) to A. Chan (GGC), dated May 9, 2023 (Exhibit C-13).

[34]   Notice of Default Reservation of Rights (Exhibit C-12).

[35]   Section II(d)(iii) of the DCGI MLA provides, in relevant part, that "Lender shall have the right *in its sole discretion* to suspend the termination of a Loan under this subsection (iii) and reinstitute the Loan." DCGI MLA (Exhibit C-2) § II(d)(iii) (emphasis added).

[36]   *See* Notice of Default Reservation of Rights (Exhibit C-12).

payment under the DCG MLA and the DCGI MLA, despite GGC's repeated demands for payment.[37] DCG's and DCGI's refusal to pay was particularly challenging for GGC and its creditors because GGC had filed for bankruptcy.

45.     Confronted with DCG's and DCGI's continued non-payment, on September 6, 2023, GGC initiated the Turnover Actions against DCG and DCGI in the Bankruptcy Court, seeking to recover undisputed amounts owed to GGC, *i.e.*, the principal amount of the DCG Loans and the DCG Loan Fees (denominated in U.S. Dollars), and the principle amount of the DCGI Loans and the DCGI Loan Fees and Late Fees (denominated in BTC).[38] In its Complaint seeking the turnover of the assets, GGC argued that DCG and DCGI were "wrongfully in possession" of such assets.[39] As a result of the Turnover Actions and other efforts to obtain amounts owed under the MLAs, GGC incurred (and is continuing to incur) significant costs and expenses.

46.     In mid-September 2023, the parties entered into the Partial Repayment Agreement, pursuant to which DCG and DCGI agreed to repay certain amounts owed under the MLAs, including principal and Loan Fees owed under the DCG MLA, as well as principal, Loan Fees, and Late Fees owed under the DCGI MLA, and GGC agreed to forbear on taking certain enforcement actions, subject to the terms and conditions of the Partial Repayment Agreement.[40] In the Partial Repayment Agreement, DCG and DCGI also acknowledged that

---

[37]   *See, e.g.*, DCG Late Fee Invoice Summary May 2023, dated May 31, 2023 (Exhibit C-14) (showing US $3,013,698.64 in Late Fees accrued on the DCG Loans as of May 31, 2023); DCG Late Fee Invoice Summary June 2023, dated June 30, 2023 (Exhibit C-15) (showing US $7,123,287.69 in Late Fees accrued on the DCG Loans as of June 30, 2023).

[38]   *See generally* Compl., *Genesis Global Capital, LLC v. Digital Currency Group, Inc.*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Sept. 6, 2023) (Exhibit C-16); Compl., *Genesis Global Capital, LLC v. DCG International Investments, Ltd.*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Sept. 6, 2023) (Exhibit C-17). GGC did not seek repayment of the Late Fees under the DCG MLA because the Late Fees are contested between the parties and turnover proceedings are only available for *undisputed* amounts owed between parties.

[39]   *See* Compl. ¶¶ 30-31, *Genesis Global Capital, LLC v. Digital Currency Group, Inc.*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Sept. 6, 2023) (Exhibit C-16).

[40]   *See generally* Partial Repayment Agreement (Exhibit C-3); *see also* Order Authorizing GGC to Take Actions in Furtherance of the Partial Repayment Agreement with the DCG Parties, *Genesis Global Capital, LLC v. Digital Currency Group, Inc.*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Dec. 22, 2023) (Exhibit C-4). GGC

the amounts GGC sought in the Turnover Actions were owed under the MLAs, and that, accordingly, "GGC has the right under Section XII of each of the DCG MLA and the DCGI MLA to seek reimbursement for all reasonable costs and expenses, including without limitation, reasonable attorneys' fees and court costs, broker fees, and technology costs incurred by GGC in connection with the enforcement of its rights."[41]  Although GGC made a formal demand for its enforcement costs (while reserving its rights to make future demands for additional enforcement costs that are continuously accruing) on February 1, 2024,[42] neither DCG nor DCGI has made payment of any enforcement costs incurred by GGC, as required under Section XII of the MLAs.

47.    Because DCG disputed its obligation to pay Late Fees under the DCG MLA, the Turnover Actions did not address the disputed DCG Late Fees, and such Late Fees were beyond the scope of what the Partial Repayment Agreement addressed.  As of the date hereof, DCG has not paid any Late Fees owed under Section III(c) of the DCG MLA.  Such Late Fees currently exceed US $27.1 million as of February 8, 2024, and are continuing to accrue.

### D.    Respondents Continue To Refuse To Make Payments Owed On The Late Fees And Other Amounts Owed Under The MLAs

48.    DCG's non-payment of the Late Fees owed under the DCG Loans appeared to be grounded, at least in part, on scrivener's errors in the text of the MLAs.  Specifically, although Section III(a) of the DCG MLA requires that DCG pay Loan Fees beginning on "the

---

reserves all rights to seek further payment of principal and other amounts owed under the MLAS, including with respect to any transaction or conversion costs associated with certain voluntary payments made by Respondents.

[41]   Partial Repayment Agreement (Exhibit C-3) at 3.

[42]   See Letter from S. O'Neal (Cleary Gottlieb) to J. Saferstein, J. Liou, and F. Siddiqui (Weil), dated Feb. 1, 2024 (Exhibit C-18).  Enforcement costs include, but are not limited to, the fees and expenses relating to (i) the negotiation and documentation of potential refinancings of the Loans, the Partial Repayment Agreement, and related documentation and potential forbearance agreements; (ii) the seeking of Bankruptcy Court approval of the Partial Repayment Agreement and related documentation; (iii) the liquidation of various trust shares transferred to GGC in connection with the Loans; (iv) enforcement of GGC's rights under the Partial Repayment Agreement; and (v) all other matters relating to the enforcement of GGC's rights under the Loans, in each case whether incurred by GGC or the Official Committee of Unsecured Creditors appointed in GGC's Chapter 11 cases (which are required to be paid by GGC in accordance with bankruptcy law).

date on which the Loaned Digital Currencies or Loaned U.S. Dollars are transferred to" DCG,

Section III(a) further states that DCG will continue to incur these Loan Fees until "the date on

which such *Loaned Digital Currencies* are repaid in their entirety to Lender."[43]   Similarly,

while Section III(c) of the DCG MLA makes clear that a Late Fee must be paid in the event

that DCG "has not returned the entirety of the Loaned Assets," Section III(c) also states that

the Late Fee shall be equal to "10% (annualized, calculated daily) on all outstanding and

overdue portions of the *Loaned Digital Currencies*."[44]

49.     DCG pointed to this language in order to argue that there does not exist any

obligation for DCG to pay Late Fees on the DCG Loans, which were denominated in U.S.

Dollars (not in Digital Currencies).  DCG is wrong.

50.     Because GGC has only ever loaned U.S. dollars under the DCG MLA, the

reference to "Loaned Digital Currencies" in the Late Fee provision is clearly a drafting error.

Indeed, under DCG's nonsensical reading of the DCG MLA, DCG's obligation to pay "Loan

Fees" would commence when U.S. Dollars were loaned but would never cease, as DCG would

never have fully repaid all "Loaned Digital Currencies."   Likewise, under DCG's absurd

interpretation of the DCG MLA, DCG would be obligated to pay a "Late Fee" on any "Loaned

Assets" – including U.S. Dollars – that it failed to timely repay, but that Late Fee would be

incalculable because it would be determined based only on "Loaned Digital Currencies" (which

were in fact never loaned under the DCG MLA).

51.     The drafting error in question arose as a result of failing to add "Loaned U.S.

Dollars" to the relevant portions of the Loan Fees and Late Fees provisions when the Initial

DCG MLA was amended in 2022.  Prior to that amendment, the parties were operating on an

informal basis pursuant to the Initial DCG MLA, which named GGC as Borrower and DCG as

---

[43]     DCG MLA (Exhibit C-1) § III(a) (emphasis added).

[44]     DCG MLA (Exhibit C-1) § III(c) (emphasis added).

Lender.  In an effort to formalize their existing arrangements, whereby GGC as *lender*, had lent DCG, as *borrower*, US $500 million, GGC used its form digital currency lending agreement, which did not contemplate U.S. Dollar lending at all, to draft the DCG MLA.  So while the general tenor of the agreement provides for U.S. Dollar lending and all attendant rights and obligations, in certain provisions references to Loaned U.S. Dollars were inadvertently left out.  But it is clear that the agreement provides for U.S. Dollar lending and all such attendant rights and obligations, even if the term "Loaned U.S. Dollars" was left out of a single clause, especially where the term "Loaned Assets" (which encompasses both Loaned U.S. Dollars and Loaned Digital Currencies) is used in an earlier part of the same very sentence.

52.     Neither DCG nor DCGI have provided any explanation as to their collective failure to pay the enforcement costs owed under Section XII (nor could they, given Respondents' own acknowledgement that such costs are owing in the Partial Payment Agreement).

## III.   LEGAL CLAIMS

53.     GGC has fully performed its obligations under the DCG MLA, including specifically extending the DCG Loans in U.S. Dollars contemplated by the DCG MLA.

54.     The DCG Loans matured on May 9, May 10, and May 11, 2023, and were not repaid as of such dates.  GGC promptly provided wire instructions upon request by DCG, such that the DCG Loans were not converted into Open Loans, nor were the Maturity Dates extended or waived in any way.  In the Partial Repayment Agreement, DCG and DGI admitted that the Maturity Date had passed and that it had defaulted on the DCG Loans and DCGI Loans.

55.     GGC has made a series of demands for repayment of the DCG Late Fees, which remain outstanding as of the date of this Demand.  While DCG has repaid the Loan Fees owing on the DCG Loans (even though the Loan Fees provision contained a scrivener's error referring to "Loaned Digital Currencies"), DCG has wrongly refused to pay the Late Fees owed on the

DCG Loans (which are similarly to be calculated on the basis of the outstanding amounts of "Loaned Digital Currencies").

56.     DCG's claim that no Late Fees are owed under the DCG Loans because there were no "Digital Loaned Currencies" loaned under the DCG MLA violates the parties' clear mutual intent and understanding in providing for Late Fees in the DCG MLA.  Specifically, Section III(c) makes clear that a Late Fee must be paid if all "Loaned Assets" (which, as defined under the DCG MLA, includes U.S. Dollars) are not timely repaid.  But, if DCG's interpretation were correct, no Late Fees would be owed in the event that DCG failed to timely repay U.S. Dollar denominated loans, which in fact are the only types of loans that have ever existed under the DCG MLA.  DCG's failure to pay Late Fees on the DCG Loans also is inconsistent with DCG's prior agreement to pay Loan Fees, which begin to accrue as soon as Digital Currencies or U.S. Dollars are loaned, and only cease to accrue when all "Digital Loaned Currencies" have been repaid (which of course has not occurred).

57.     Therefore, DCG's failure to repay the applicable Late Fees constitutes a breach of Section III(c) of the DCG MLA.  As a result of this breach, GGC is owed the full outstanding Late Fees, calculated in accordance with Section III, which exceed US $27.1 million as of the date of this Demand and are continuously accruing.

58.     In the alternative, reformation of the DCG MLA is required because the parties were mistaken about the language in Section III(c) of the DCG MLA apparently limiting Late Fees to any loans thereunder denominated in digital currency (of which there are none).  The parties clearly understood and intended for the words "Digital Loaned Currencies" to be rendered as "Loaned Assets," which has already been defined in the DCG MLA to include "any Digital Currency or U.S. Dollar amount transferred in a Loan hereunder until such Digital Currency (or identical Digital Currency) or U.S. Dollar amount is transferred back to Lender

19

hereunder."[45]  To the extent that Section III(c) literally permits the application of a Late Fee

only to unpaid "Loaned Digital Currencies," that materially alters the agreed-upon promises

and economic terms of the parties' deal, and, therefore, the DCG MLA should be reformed to

be consistent with the parties' mutual intent.  Upon reformation, DCG would again be

responsible for the payment of the more than US $27.1 million in Late Fees currently owed, as

well as any amounts that accrue as a result of DCG's continued non-payment.

59.     Moreover, both DCG and DCGI have continued to refuse to make payment of

enforcement costs owed under the MLAs, which are continuing to accrue.

## IV.  <u>RELIEF SOUGHT</u>

60.     Without prejudice to any or further relief to which Claimant may be entitled,

Claimant respectfully requests that the Tribunal:

a) Declare that DCG has breached the DCG MLA by failing to pay the Late Fees
   owed thereunder;

b) Order DCG to pay Claimant the Late Fees owed under Section III(c), which
   continue to accrue as of the filing date and will continue to accrue until such
   time of payment;

c) Declare that DCG and DCGI are liable to Claimant for all reasonable
   enforcement costs that have been incurred, and will be incurred, under Section
   XII of the MLAs;

d) Order DCG and DCGI to pay the enforcement costs owed under Section XII,
   which continue to accrue as of the filing date and will continue to accrue until
   such time of payment;

e) Order DCG and DCGI to compensate Claimant for its legal fees and other
   expenses in connection with this arbitration, as well as all costs of this

---

[45]     DCG MLA (<u>Exhibit C-1</u>) § I.

arbitration, in an amount to be determined, pursuant to Section XII and/or Section XIII of the MLAs and R-49 of the AAA Rules; and

    f)  Grant such other and further relief as the Tribunal may deem just and proper.

61.    Claimant reserves the right to amend or supplement this request, to make additional claims, and to request such additional or different relief as may be appropriate, in due course.

Dated: February 8, 2024
      New York, NY

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Sean A. O'Neal
Ari D. MacKinnon
Katie L. Gonzalez
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999
soneal@cgsh.com
amackinnon@cgsh.com
kgonzalez@cgsh.com

*Attorneys for Claimant*