**Proposed Hearing Date, Time: February 14, 2024 at 10:00 AM (Prevailing Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
Andrew Weaver
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING A**
**SETTLEMENT AGREEMENT BETWEEN THE DEBTORS**
**AND THE NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ...................................................................... 1

JURISDICTION AND VENUE ....................................................................... 3

BACKGROUND ............................................................................................ 4

OVERVIEW OF THE SETTLEMENT AGREEMENT .................................... 5

RELIEF REQUESTED ................................................................................. 10

BASIS FOR RELIEF ................................................................................... 10

A.    The Debtors Are Authorized Pursuant to Bankruptcy Rule 9019 to
       Settle Claims ................................................................................... 11

B.    The Settlement Agreement Falls Well Within the Range of
       Reasonableness ............................................................................... 13

NOTICE ...................................................................................................... 15

NO PRIOR REQUEST ................................................................................ 15

CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.)*,
52 F.3d 41 (2d Cir. 1995).............................................................................................. 10

*In re Drexel Burnham Lambert Grp., Inc.*,
134 B.R. 499 (Bankr. S.D.N.Y. 1991)........................................................................ 11, 13

*In re Frost Bros., Inc.*,
No. 91 Civ. 5244 (PNL), 1992 U.S. Dist. LEXIS 18301 (S.D.N.Y. Nov. 30, 1992) ... 12

*In re Neshaminy Off. Bldg. Assocs.*,
62 B.R. 798 (E.D. Pa. 1986) ........................................................................................ 11

*In re Purofied Down Prods. Corp.*,
150 B.R. 519 (S.D.N.Y. 1993).............................................................................. 11,12,13

*In re W.T. Grant Co.*,
699 F.2d 599 (2d Cir. 1983)......................................................................................... 12

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*,
25 F.3d 1132 (2d Cir. 1994)......................................................................................... 10

*Nellis v. Shugrue*,
165 B.R. 115 (S.D.N.Y. 1994)...................................................................................... 12

*U.S. v. Energy Res. Co.*,
495 U.S. 545 (1990)...................................................................................................... 11

**Rules and Statutes**

28 U.S.C. § 157............................................................................................................. 3

28 U.S.C. § 1334........................................................................................................... 3

28 U.S.C. § 1408........................................................................................................... 3

28 U.S.C. § 1409........................................................................................................... 3

**Page(s)**

11 U.S.C. § 105(a) .......................................................................................... 1, 10, 11

**Other Authorities**

Fed. R. Bankr. P. 9019 ...................................................................................... *passim*

Fed. R. Bankr. P. 1102 ........................................................................................... 4

Fed. R. Bankr. P. 1107 ........................................................................................... 4

Fed. R. Bankr. P. 1108 ........................................................................................... 4

Fed. R. Bankr. P. 1015 ........................................................................................... 4

2 Collier on Bankruptcy ¶ 105.01 (16th ed. 2023) ............................................. 11

Genesis Global Capital, LLC ("GGC"), Genesis Asia Pacific Pte. Ltd. ("GAP"), and Genesis Global Holdco, LLC ("GGH" and, collectively with GGC and GAP, the "Debtors" and these cases, collectively, the "Chapter 11 Cases") hereby submit this Motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the settlement agreement between the Debtors and the Office of the New York Attorney General (the "NYAG"). In support of this Motion, the Debtors rely upon the *Declaration of Paul Aronzon in Support of Debtors' Motion for Entry of an Order Approving a Settlement Agreement Between the Debtors and the New York State Office of the Attorney General* (the "Aronzon Declaration"), filed contemporaneously herewith as **Exhibit B**, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors seek approval to enter into a settlement agreement with NYAG, through entry into that certain Stipulation and Consent to Judgment between NYAG and the Debtors, attached hereto as **Exhibit C**, and that certain Order and Judgment on Consent as to the Debtors, attached hereto as **Exhibit D** (collectively, the "Settlement Agreement"),[1] to resolve (a) solely as to the Debtors, the action commenced by NYAG in the Supreme Court of the State of New York, County of New York (the "NY Court") by Summons and Complaint on October 19, 2023 against the Debtors, Gemini Trust Company, LLC ("Gemini"), Digital Currency Group, Inc. ("DCG"), Soichiro Moro (a.k.a. Michael Moro) ("Moro") and Barry E. Silbert ("Silbert" and, collectively with Gemini, DCG, and Moro, the "Other Defendants"), styled as *The People of the State of New York v. Gemini Trust Co. et. al.,* Case No. 452784/2023 (the "NY Action"), and (b)

---

[1]      Capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

the allowance of the proofs of claim numbered 855, 856 and 857 filed by NYAG in these Chapter 11 Cases (collectively, the "Proofs of Claim").

2.      The Proofs of Claim and NY Action allege that the Debtors, among other things, used fraudulent practices and engaged in repeated fraudulent or illegal acts to defraud investors, in violation of the Martin Act, Article 23-A of the New York General Business Law, New York General Business Law § 359-e, and Executive Law § 63(12).

3.      As more fully described in the Settlement Agreement,[2] to resolve the NY Action as it relates to the Debtors and the Proofs of Claim, the Settlement Agreement provides, among other things, that NYAG shall have an allowed general unsecured claim against each of (i) GGH, (ii) GGC, and (iii) GAP (collectively, the "Allowed NYAG Claims") in an aggregate amount equal to the NYAG Claims Amount (as defined below), which shall be paid only after payment in full of all other allowed administrative expense, secured, priority, Intercompany Claims, and general unsecured claims (subject to certain exceptions set forth in the Settlement Agreement), it being understood that payment in full of general unsecured claims shall be calculated as if any general unsecured claim based on a loan[3] or investment denominated in any type of digital asset is converted into the equivalent U.S. dollar value using the price of the applicable digital asset on the applicable distribution calculation date or as otherwise ordered by the Bankruptcy Court.  NYAG agrees that any distributions it receives in respect of the Allowed NYAG Claims will be turned over from a Victims' Fund to holders of allowed general unsecured claims against GGH, GGC,

---

[2]      Any summary of the Settlement Agreement contained in this Motion is solely for illustrative purposes and is qualified in its entirety by the actual terms and conditions of the Settlement Agreement.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.
[3]      For the avoidance of doubt, the terms "loan", "lender" and "investment" in this Motion are used solely for ease of reference and in no way reflect a determination of whether such transactions constitute, involve, or relate to the issuance, exchange, purchase, sale, promotion, negotiation, advertisement, investment advice, or distribution of securities or commodities.

and GAP (subject to certain exceptions set forth in the Settlement Agreement) on a pro rata basis and in a manner consistent with the Distribution Principles to compensate such holders of allowed claims for the full and fair amounts of their actual losses. The Settlement Agreement, if approved by the Bankruptcy Court, would also resolve any objection by NYAG to confirmation of the Chapter 11 Plan (defined below).

4.       The Settlement Agreement is the product of extensive negotiations between NYAG and the Debtors.  The proposed settlement will, among other benefits to the Debtors' estates, resolve the NYAG Action, as well as the Proofs of Claim filed by NYAG in these Chapter 11 Cases, thereby eliminating the risks, expenses, and uncertainty associated with protracted litigation against NYAG.  Entry into the Settlement Agreement is an exercise of the Debtors' sound business judgment and has been approved by the Special Committee of the Board of Directors of Holdco (the "Special Committee"), which, following consultation with the Debtors' legal and financial advisors, has concluded that the Settlement Agreement is in the best interests of the Debtors' estates and their creditors.

5.       Accordingly, and for all of the reasons set forth herein, the Debtors submit that entry into the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Debtors' estates.  The Debtors respectfully request that the Court grant the relief requested in this Motion, approve the Settlement Agreement, and enter the Proposed Order.

## JURISDICTION AND VENUE

6.       The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court" or the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28

3

U.S.C. § 157(b).  The statutory predicates for the relief requested herein are Section 105 of the

Bankruptcy Code and Bankruptcy Rule 9019.

## **<u>BACKGROUND</u>**

7.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code (the date of such filing, the "<u>Petition Date</u>").  The Debtors are

operating their businesses as debtors-in-possession under Sections 1107(a) and 1108 of the

Bankruptcy Code.  The Debtors' bankruptcy proceedings have been consolidated for procedural

purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).  *See Joint*

*Administration Order* (ECF No. 37).  No trustee or examiner has been appointed in the Chapter

11 Cases.  The Official Committee of Unsecured Creditors for the Chapter 11 Cases (the

"<u>Committee</u>") was appointed by the United States Trustee for Region 2 on February 3, 2023,

pursuant to Section 1102(a) of the Bankruptcy Code.  *See Notice of Appointment of Official*

*Committee of Unsecured Creditors* (ECF No. 55).

8.      On July 14, 2023, NYAG filed the Proofs of Claim, asserting claims against the

Debtors exceeding an estimated $1.1 billion in restitution, plus additional amounts in disgorgement

of ill-gotten gains and damages, as well as injunctive and other equitable relief under New York

law.

9.      On October 19, 2023, NYAG filed a complaint (the "<u>Complaint</u>") against the

Debtors and the Other Defendants in the NY Action.

10.     On November 28, 2023, the Debtors filed the *Debtors' Amended Joint Chapter 11*

*Plan* (ECF No. 989) (the "<u>Chapter 11 Plan</u>")

11.     In November 2023, the Debtors and NYAG commenced settlement negotiations

with respect to the NY Action and the Proofs of Claim. Aronzon Decl. ¶ 5.

12.     After months of hard-fought negotiation, the Debtors and NYAG have reached a resolution of the NY Action.  The Debtors, with the consent of NYAG, have now filed this Motion, seeking this Court's approval of the Settlement Agreement.  The Settlement Agreement will become binding upon approval by the Court.

<u>**OVERVIEW OF THE SETTLEMENT AGREEMENT**</u>

13.     The principal terms and conditions of the Settlement Agreement are generally as follows:

(a)     NYAG shall have an allowed general unsecured claim against each of (i) GGH, (ii) GGC, and (iii) GAP in the Chapter 11 Cases, including in each of the classes of general unsecured claims against the Debtors in any chapter 11 plan (e.g., under the Amended Plan (as defined below), Class 3 – Fiat-or-Stablecoin-Denominated Unsecured Claims, Class 4 BTC-Denominated Unsecured Claims, Class 5 ETH-Denominated Unsecured Claims, Class 6 – Alt-Coin-Denominated Unsecured Claims, and Class 7 – Gemini Lender Claims), in an aggregate amount equal to the NYAG Claims Amount (as defined below), which shall be paid only after payment in full of all other allowed administrative expense, secured, priority, Intercompany Claims (as defined in the Chapter 11 Plan), and general unsecured claims (excluding, for the avoidance of doubt, any claims of the Other Defendants or their affiliates (other than allowed Intercompany Claims or general unsecured claims of the Debtors and their subsidiaries), any general unsecured claims of Governmental Units (as defined in the Chapter 11 Plan or the Amended Plan), or any subordinated claims), it being understood that payment in full of general unsecured claims shall be calculated as if any general unsecured claim based on a loan or investment denominated in any type of digital asset is converted into the equivalent U.S. dollar

value using the price of the applicable digital asset on the applicable distribution calculation date or as otherwise ordered by the Court.  In addition, with respect to any distributions to NYAG in the GGC Bankruptcy Case with respect to any dollar-denominated unsecured claims, the Allowed NYAG Claims in such class shall be treated as *pari passu* with any allowed claims of the Securities and Exchange Commission in such class, including with respect to any distributions to be made on account of such allowed claims.

(b)     The total amount of the Allowed NYAG Claims shall be the amount equal to the difference between (i) the aggregate amount of allowed general unsecured claims against GGH, GGC, and GAP (excluding, to the extent applicable, any general unsecured claims of the Other Defendants or any of their affiliates, other than any allowed general unsecured claims of (x) the Debtors and their subsidiaries or (y) Gemini, solely to the extent Gemini is deemed to be the holder of allowed general unsecured claims on account of Gemini Lenders (as defined in the Amended Plan (as defined below)) and not in any other capacity) calculated in accordance with paragraph 4 of the Order and Judgment on Consent (the "Aggregate Claim Amount") *minus* (ii) the aggregate value of the distributable assets distributed, or to be distributed, to the holders of general unsecured claims against GGH, GGC, and GAP (excluding, to the extent applicable, any distributions to the Other Defendants or any of their affiliates, other than any allowed general unsecured claims of (x) the Debtors and their subsidiaries or (y) Gemini, solely to the extent Gemini is deemed to be the holder of allowed general unsecured claims on account of Gemini Lenders (as defined in the Amended Plan (as defined below)) and not in

any other capacity) on or prior to the applicable distribution date pursuant to any chapter 11 plan that is confirmed by the Court or otherwise by a chapter 7 trustee appointed in the Chapter 11 Cases (such difference, the "<u>NYAG Claims Amount</u>"). To the extent that holders of such allowed general unsecured claims (excluding, to the extent applicable, any distributions to the Other Defendants or any of their affiliates, other than any allowed general unsecured claims of (x) the Debtors and their subsidiaries or (y) Gemini, solely to the extent Gemini is deemed to be the holder of allowed general unsecured claims on account of Gemini Lenders (as defined in the Amended Plan (as defined below)) and not in any other capacity) receive distributions from other settlements, including, without limitation, distributions made from claims held by other regulatory authorities, the NYAG Claims Amount shall be reduced on a dollar-for-dollar basis.

(c)     Notwithstanding anything contained in the Settlement Agreement, in the Amended Plan (as defined below), or in the order confirming the Amended Plan to the contrary, with respect to any allowed claim that is arising from, related to, or denominated in digital assets, the Aggregate Claim Amount shall be calculated as if any allowed claim based on a loan  or investment denominated in a digital asset is converted into the equivalent U.S. dollar value using the price of the applicable digital asset on the applicable distribution calculation date, which distribution calculation date shall be no earlier than thirty (30) days before the applicable distribution date.

(d)      Any distributions that NYAG receives in respect of the Allowed NYAG Claims will be turned over to holders of allowed general unsecured claims against GGH,

GGC and GAP (excluding, for the avoidance of doubt, the Other Defendants or any of their affiliates, or holders of subordinated claims) on a pro rata basis (the "Victims' Fund").  Distributions from the Victims' Fund will be made in a manner consistent with the Distribution Principles (as defined in the Amended Plan (as defined below)) to compensate such holders of allowed claims for the full and fair amounts of their actual losses.  In order to reduce costs and improve efficiency, NYAG may appoint GGC as the distribution agent to make any such distributions in respect of the Victims' Fund.  Notwithstanding anything to the contrary in the Settlement Agreement, if GGC is acting as the distribution agent for NYAG, GGC may appoint Gemini (or, with GGC's and NYAG's prior written consent, an entity appointed by Gemini) to act as agent for the Debtors in a manner consistent with the Gemini Distribution Agent (as defined in the Amended Plan (as defined below)) to make or facilitate distributions to Gemini Lenders (as defined in the Amended Plan (as defined below)).

(e)     The Debtors are permanently restrained and enjoined from violation of the Martin Act, Article 23-A of the General Business Law, General Business Law § 359-e, and Executive Law § 63(12).

(f)     The Debtors are permanently restrained and enjoined from directly or indirectly conducting or transacting business in the State of New York.  The Debtors certify under penalty of perjury that they will cease conducting or transacting business in the State of New York and that they will not conduct or transact business in the State of New York in the future.  Nothing in the Settlement Agreement shall prohibit the Debtors from taking any actions in connection with the Chapter 11

Cases, including, without limitation, winding down their businesses, making distributions to creditors, prosecuting any rights or defenses in any adversary proceedings or other litigation, investigations, or actions arising out of or related to the Chapter 11 Cases, or any other action as ordered by the Court.

(g)    The Debtors shall, in connection with this action (i) accept service of any subpoenas or other documents; (ii) maintain books and records, as required under the Amended Plan (as defined below); (iii) authenticate business records; and (iv) cooperate with NYAG's efforts to seek and obtain approval of the Settlement Agreement, including taking all reasonable and necessary steps needed to obtain court approval.

(h)    The Debtors consent to the jurisdiction of New York State courts with respect to the Settlement Agreement, and exclusively choose New York State law to govern any and all disputes arising out of the Settlement Agreement and the enforcement thereof.  The Court shall have exclusive jurisdiction with respect to the Chapter 11 Plan, including the Amended Plan (as defined below).  To the extent the New York State Court approves the Settlement Agreement, the New York State Court shall retain jurisdiction to enforce the Settlement Agreement.

(i)    The Debtors shall amend the Chapter 11 Plan to incorporate the terms of the Settlement Agreement (the "Amended Plan").

(j)    NYAG will not object to the Amended Plan proposed by the Debtors in the Chapter 11 Cases, or any other chapter 11 plan, provided that in each case such chapter 11 plan is consistent with the Settlement Agreement, including by, among other things, providing that (i) payment in full of general unsecured claims shall be calculated as

if any general unsecured claim denominated in any type of digital asset is converted into the equivalent U.S. dollar value using the price of the applicable digital asset on the applicable distribution calculation date, as it is currently defined in the Chapter 11 Plan, (ii) NYAG shall be entitled to distributions in respect of the NYAG Claims in a manner consistent with paragraphs 2, 3, and 4 of the Order and Judgment on Consent, and (iii) NYAG does not release any claims it has or may have against the Other Defendants (i.e., Gemini, DCG, Moro, and Silbert).

(k)  Once approved by the Court, the Settlement Agreement shall be binding on NYAG and the Debtors regardless of whether the Court confirms the Amended Plan.

(l)  Nothing in the Settlement Agreement or the Amended Plan, including NYAG's amendments to Proofs of Claim numbered 855, 856, and 857, shall release any claims that NYAG may have against the Other Defendants (i.e., Gemini, DCG, Moro, and Silbert), who are Defendants named in the Complaint.  And, for the avoidance of doubt, nothing in the Settlement Agreement shall bind any other governmental agency or office.

## RELIEF REQUESTED

14.  By this Motion, the Debtors seek entry of an order substantially in the form attached hereto as **Exhibit A**, approving the Settlement Agreement pursuant to section 105(a) of the Bankruptcy Code and rule 9019 of the Bankruptcy Rules.

## BASIS FOR RELIEF

15.  Under section 105 of the Bankruptcy Code, the Court has broad discretion to "carry out the provisions of this title."  11 U.S.C. § 105(a); *see also Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.)*, 52 F.3d 41, 45 (2d Cir. 1995) (holding that bankruptcy courts have broad equity power to manage the affairs of debtors); *Momentum Mfg.*

*Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[B]ankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

16.    The purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 (16th ed. 2023). Such power conforms to the Court's inherent equitable authority. *See, e.g., U.S. v. Energy Res. Co.*, 495 U.S. 545, 549 (1990). The relief requested herein is both necessary and appropriate to allow the Debtors to successfully administer these Chapter 11 Cases through resolving certain disputes and streamlining distributions to the benefit of their creditors. Accordingly, the Court may enter the Order.

A.    **The Debtors Are Authorized Pursuant to Bankruptcy Rule 9019 to Settle Claims**

17.    Bankruptcy Rule 9019 permits a debtor-in-possession to enter into compromises and settlements with the approval of the Bankruptcy Court. *See* Bankruptcy Rule 9019(a). In order to approve a compromise or a settlement under Bankruptcy Rule 9019(a), the bankruptcy court must find that the compromise or settlement is "in the best interests of the estate." *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 523 (S.D.N.Y. 1993) (citation omitted). In making this finding, the bankruptcy court should form an informed and independent judgment as to whether a proposed compromise is in the best interests of the debtor's estate. *Id.* The settlement need not result in the best possible outcome for the debtor but must not "fall below the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (citation omitted).

18.    In determining whether a compromise or settlement should be approved under Bankruptcy Rule 9019(a), the bankruptcy court should not substitute its own judgment for that of the debtor. *See In re Neshaminy Off. Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986). In fact, the

bankruptcy court may consider the opinions of the debtor-in-possession or the trustee that the settlement is fair and reasonable. *See Nellis v. Shugrue*, 165 B.R. 115, 122–23 (S.D.N.Y. 1994). Furthermore, the bankruptcy court need not conduct a "mini-trial" to decide the numerous issues of law and fact raised by the settlement, but rather must "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Purofied Down Prods*., 150 B.R. at 522 (citations omitted); *see also In re W.T. Grant Co*., 699 F.2d 599, 608 (2d Cir. 1983); *In re Frost Bros., Inc*., No. 91 Civ. 5244 (PNL), 1992 U.S. Dist. LEXIS 18301, at *16 (S.D.N.Y. Nov. 30, 1992); Memorandum Decision, *In re Genesis Global Holdco LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y, October 6, 2023), ECF No. 781.  This requirement "reflect[s] the considered judgment that little would be saved by the settlement process if bankruptcy courts could approve settlements only after an exhaustive investigation and determination of the underlying claims," *Purofied Down Prods*., 150 B.R. at 522–23, and the fact that settlements are "favored and, in fact, encouraged" in bankruptcy.  *Nellis*, 165 B.R. at 123 (internal citation omitted).

19.    Courts in this Circuit have set forth the following factors to be considered in evaluating the reasonableness of settlement:

(a)    the probability of success in litigation, with due consideration for the uncertainty in fact and law;

(b)    the difficulties of collecting any litigated judgment;

(c)    the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay;

(d)    the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

(e)     the competence and experience of counsel who support the settlement;

(f)     the relative benefits to be received by members of any affected class;

(g)     the extent to which the settlement is truly the product of arm's-length bargaining
and not the product of fraud or collusion; and

(h)     the debtor's informed judgment that the settlement is fair and reasonable.

See *Purofied Down Prods.*, 150 B.R. at 522; *Drexel Burnham*, 134 B.R. at 506.

**B.    The Settlement Agreement Falls Well Within the Range of Reasonableness**

20.     It is well within the range of reasonableness for the Debtors to enter into the
Settlement Agreement, which is the result of good faith and arm's-length negotiations over the
course of several months.  Aronzon Decl. ¶ 7.  The Debtors, acting under the oversight of the
Special Committee and following extensive consultation with the Debtors' advisors, have
concluded that the Settlement Agreement is fair and equitable, reasonable and in the best interests
of the Debtors' estates and, thus, should be approved.  *Id.* ¶ 12.

21.     *First*, the Settlement Agreement will allow the Debtors to avoid extensive litigation
costs that would be incurred in protracted and complex litigation against NYAG.  *Id.* ¶ 10.  Any
litigation would entail significant professional fees, including but not limited to potential
discovery, preparation of experts, motion practice, trial and a post-trial remedies phase.  The NY
Action relates to business activities that the Debtors have ceased.  *Id.*  The Special Committee has
concluded that it would not be in the best interests of the Debtors' estates to continue to incur
litigation costs and expenses to defend against the NY Action related to business activities that are
not ongoing.  *Id.*  Any such litigation would significantly distract the Debtors at a time when there
are other priorities to maximize recoveries for creditors, including confirmation of the Amended
Plan.  *Id.*  If approved, the Settlement Agreement would fully and finally resolve the NY Action
as it relates to the Debtors and the Proofs of Claim, permitting the Debtors and their advisors to

focus resources and attention on other claims, confirmation of the Amended Plan and on beginning

to make distributions to creditors.  *Id.* ¶ 11.

22.     *Second*, pursuant to the Settlement Agreement, NYAG has agreed that it will

receive distributions only after payment in full of all other allowed administrative expense,

secured, priority, Intercompany Claims (as defined in the Chapter 11 Plan), and general unsecured

claims, it being understood that payment in full of general unsecured claims shall be calculated as

if any general unsecured claim based on a loan or investment denominated in any type of digital

asset is converted into the equivalent U.S. dollar value using the price of the applicable digital

asset on the applicable distribution calculation date or as otherwise ordered by the Bankruptcy

Court.  That is, NYAG has agreed to receive payment under the Settlement Agreement if and only

if all general unsecured creditors of the Debtors are made whole.  In addition, by virtue of the

settlement, NYAG has agreed not to assert any penalties that would be retained by NYAG and not

shared with creditors.  As such, the treatment and amount of the Allowed NYAG Claims is

reasonable in comparison to the potential risk of an adverse judgment following litigation of the

NY Action, which could result in civil penalties, disgorgement, and pre-judgment interest far in

excess of the Allowed NYAG Claims.  *Id.* ¶ 9.

23.     *Third*, pursuant to the Settlement Agreement, any distributions that NYAG receives

in respect of the Allowed NYAG Claims will be turned over to a Victims' Fund to compensate

holders of allowed general unsecured claims against GGH, GGC and GAP on a pro rata basis for

the full and fair amounts of their actual losses.

24.     *Fourth*, the Settlement Agreement is the product of arm's-length negotiations

between NYAG and the Debtors.  After months of hard-fought negotiations, the Debtors and

NYAG reached a resolution, as reflected in the Settlement Agreement.  *Id.* ¶ 7.

25.     Accordingly, the Debtors submit that the settlement and compromise embodied in the Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable and should be approved.

## NOTICE

26.     The Debtors have provided notice of this Motion in accordance with the procedures set forth in the Case Management Order.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## NO PRIOR REQUEST

27.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of this page is left blank intentionally]*

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as **Exhibit A** and (b) grant such other and further relief as is just and proper.

Dated:    February 8, 2024
           New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and
Debtors-in-Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

## ORDER APPROVING A SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND THE NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL

Upon the motion (the "Motion")[2] of Genesis Global Capital, LLC ("GGC") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") for entry of an order (this "Order") approving the Settlement Agreement pursuant to section 105(a) of the Bankruptcy Code and rule 9019 of the Bankruptcy Rules; and upon the *Declaration of Paul Aronzon in Support of Debtors' Motion for Entry of an Order Approving a Settlement Agreement Between the Debtors and the New York State Office of the Attorney General* (the "Aronzon Declaration") attached to the Motion as **Exhibit B**; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

found that the relief requested in the Motion is in the best interests of the Debtors and their estates; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and on the record of the Hearing establish just cause for the relief granted herein; and all objections to the Motion (if any) having been withdrawn or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

1. The Debtors have demonstrated sound business judgment for entering into the Settlement Agreement.

2. The terms of the Settlement Agreement evidence good faith, arm's-length negotiations and are fair and equitable.

3. The settlement is plainly within the range of reasonableness and in the best interests of the Debtors and their estates and the creditors in this case.

4. Based on the record before the Court, the Debtors have demonstrated good and sufficient basis for the Court to approve the Motion.

**IT IS THEREFORE ORDERED THAT:**

5. The Motion is GRANTED to the extent set forth herein.

6. The settlement is approved and authorized and the Debtors are authorized to perform in accordance with the terms of the Settlement Agreement.

7.      The provisions of the Settlement Agreement are incorporated herein by reference and shall be effective and binding as though fully set forth herein.  To the extent that there is any conflict between this Order and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

8.      As set forth in the Settlement Agreement, the NYAG Claims against GGC, GAP and GGH are hereby ALLOWED in the aggregate amount of the NYAG Claims Amount, which shall be paid only after payment in full of all other allowed administrative expense, secured, priority, Intercompany Claims (as defined in the Chapter 11 Plan), and general unsecured claims (excluding, for the avoidance of doubt, any claims of the Other Defendants or their affiliates (other than allowed Intercompany Claims or general unsecured claims of the Debtors and their subsidiaries), any general unsecured claims of Governmental Units (as defined in the Chapter 11 Plan or the Amended Plan), or any subordinated claims), it being understood that payment in full of general unsecured claims shall be calculated as if any general unsecured claim based on a loan[3] or investment denominated in any type of digital asset is converted into the equivalent U.S. dollar value using the price of the applicable digital asset on the applicable distribution calculation date, or as otherwise ordered by this Court.  In addition, with respect to any distributions to NYAG in the GGC Bankruptcy Case with respect to any dollar-denominated unsecured claims, the Allowed NYAG Claims in such class shall be treated as *pari passu* with any allowed claims of the Securities and Exchange Commission in such class, including with respect to any distributions to be made on account of such allowed claims.

---

[3]      For the avoidance of doubt, the terms "loan", "lender" and "investment" in this Motion are used solely for ease of reference and in no way reflect a determination of whether such transactions constitute, involve, or relate to the issuance, exchange, purchase, sale, promotion, negotiation, advertisement, investment advice, or distribution of securities or commodities.

9.    The Debtors are authorized to enter into the Settlement Agreement and to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions that may be reasonably necessary or appropriate to implement the agreements, and perform all obligations contemplated thereunder.

10.    This Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, their creditors, successors, and assigns, and any affected third parties, notwithstanding the subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) this Order likewise shall be binding.

11.    The terms and provisions of this Order shall be immediately effective and enforceable upon its entry.  The effectiveness of this Order shall not be stayed pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure or otherwise.

12.    The Debtors' claims agent, Kroll Restructuring Administration LLC, and the clerk of this Court are authorized to take all actions necessary and appropriate to give effect to this Order.

13.    This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation, interpretation or enforcement of this Order.


Dated: _____, 2024
          White Plains, New York

_____
The Honorable Sean H. Lane
United States Bankruptcy Judge

**Exhibit B**

**Aronzon Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, et al.,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

### DECLARATION OF PAUL ARONZON IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND THE NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL

I, Paul Aronzon, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.      I submit this declaration (the "Declaration")[2] in support of the *Debtors' Motion for Entry of an Order Approving a Settlement Agreement Between the Debtors and the New York State Office of the Attorney General* (the "Motion"), filed concurrently with this Declaration.

### BACKGROUND

2.      I am a member of the Special Committee of the Board of Directors (the "Special Committee") of Genesis Global Holdco, LLC ("Holdco," and together with Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific Pte. Ltd., the "Debtors," and together with the Debtors and Holdco's non-Debtor subsidiaries, the "Company"). I was appointed to Holdco's Board of Directors and the Special Committee on November 18, 2022. I have over 40 years of experience acting as a lead advisor in corporate reorganizations, including extensive experience

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]      Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

advising companies, boards and board committees, independent directors, sponsors, debtors, creditors, parties acquiring debt, assets or companies and other parties in corporate transactions.

3.      Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge attained while working with the Debtors; my discussions with members of the Special Committee of the Board of Directors of Holdco; discussions with other members of the Debtors' team and the Debtors' other advisors; my review of relevant documents; and my views based upon my professional experience.

4.      To the extent that the Debtors learn that any information provided herein is materially inaccurate, the Debtors will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my knowledge, information and belief. I am authorized to submit this Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## A.      __The Settlement Process__

5.      The Debtors and NYAG (together, the "Parties") commenced negotiations to explore the possibility of a settlement agreement in November 2023 to resolve the NY Action as it relates to the Debtors and the Proofs of Claim.

6.      Settlement negotiations were primarily handled on behalf of the Debtors by the Debtors' counsel, Cleary Gottlieb Steen & Hamilton LLP, who regularly consulted with the Special Committee as well as the Company's senior management and kept us updated about the process and progress of negotiations.

7.      After months of hard-fought negotiations between NYAG and the Debtors' counsel, the Parties reached an agreement on the terms of settlement pertaining to the NY Action as it relates to the Debtors and the Proofs of Claims. In this case, weighing the reasonableness factors for purposes of Bankruptcy Rule 9019, the Debtors, acting under the oversight of their

independent Special Committee and their advisors, have concluded that the Settlement Agreement is fair and equitable, reasonable and in the best interests of the Debtors' estates and, thus, should be approved.

**B.      The Settlement Agreement**

8.      The terms of the Settlement Agreement provide significant and near-term benefits to the Debtors and their creditors, in contrast to the uncertainty and expense of litigation of the NY Action and the Proofs of Claim.

9.      The treatment and amount of the Allowed NYAG Claims is reasonable in comparison to the potential risk of an adverse judgment following litigation of the NY Action, which could result in civil penalties, disgorgement, and pre-judgment interest far in excess of the Allowed NYAG Claims.

10.      The Settlement Agreement will allow the Debtors to avoid extensive litigation costs that would be incurred in protracted and complex litigation against NYAG.  Any litigation would entail significant professional fees, including but not limited to potential discovery, preparation of experts, motion practice, trial and a post-trial remedies phase.  The NY Action relates to business activities that the Debtors have ceased.  The Special Committee has concluded that it would not be in the best interests of the Debtors' estates to continue to incur litigation costs and expenses to defend against NYAG litigation related to business activities that are not ongoing.  Any such litigation would significantly distract the Debtors at a time where there are other priorities to maximize recoveries for creditors, including confirmation of the Chapter 11 Plan.

11.      If approved, the Settlement Agreement would fully and finally resolve the NY Action as it relates to the Debtors and the Proofs of Claim, permitting the Debtors and their advisors to focus resources and attention on other claims, confirmation of the Plan and on beginning to make distributions to creditors.  If approved, the Settlement Agreement would also

resolve any objection the NYAG may have to confirmation of the Amended Plan, therefore clearing a path to creditor recoveries.

12.     The Settlement Agreement is fair and equitable, reasonable and in the best interests of the Debtors' estates.

***

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 8, 2024
New York, New York

*/s/  Paul Aronzon*
Paul Aronzon
Member of the Special Committee of the
Board of Directors
Genesis Global Holdco, LLC

## Exhibit C

**Stipulation and Consent to Judgment**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

                     Plaintiff,

    -against-

GEMINI TRUST COMPANY, LLC; GENESIS
GLOBAL CAPITAL, LLC; GENESIS ASIA PACIFIC
PTE. LTD.; GENESIS GLOBAL HOLDCO, LLC;
DIGITAL CURRENCY GROUP, INC.; SOICHIRO
MORO (a.k.a. MICHAEL MORO); and BARRY E.
SILBERT.

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No.: 452784/2023

**STIPULATION AND
CONSENT TO JUDGMENT**

      **WHEREAS**, Plaintiff, the People of the State of New York, by Letitia James, Attorney General of the State of New York (the "OAG" or "Plaintiff") commenced this action (the "NY Action") in Supreme Court of the State of New York, County of New York (the "NY Court") by Summons and Complaint on October 19, 2023 (as the same may be amended, supplemented or modified, the "Complaint"), against the above-named defendants (collectively, the "Defendants") Genesis Global Capital, LLC ("GGC"), Genesis Asia Pacific Pte. Ltd. ("GAP"), and Genesis Global Holdco, LLC ("GGH" and, collectively with GGC and GAP, the "Genesis Defendants" or the "Debtors"), Gemini Trust Company, LLC ("Gemini"), Digital Currency Group, Inc. ("DCG"), Soichiro Moro (a.k.a. Michael Moro) ("Moro"), and Barry E. Silbert ("Silbert" and, collectively with Gemini, DCG and Moro, the "Other Defendants");

      **WHEREAS**, the Complaint alleges, among other things, that the Defendants used fraudulent practices and engaged in repeated fraudulent or illegal acts to defraud investors, in violation of the Martin Act, Article 23-A of the New York General Business Law, New York General Business Law § 359-e, and Executive Law § 63(12);

1

**WHEREAS**, the Genesis Defendants were served with the above-referenced Summons and Complaint;

**WHEREAS**, on January 19, 2023, each of the Genesis Defendants (*i.e.*, GGH, GGC and GAP) filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court, Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered under the lead case captioned, *In re Genesis Global Holdco, LLC, et al.*, Case No. 23-10063 (the "GGH Bankruptcy Case"), with the case of GGC having been assigned Case No. 23-10064 (the "GGC Bankruptcy Case"), and the case of GAP having been assigned Case No. 23-10065 (the "GAP Bankruptcy Case" and, collectively with the GGH Bankruptcy Case and the GGC Bankruptcy Case, the "Genesis Bankruptcy Proceedings");

**WHEREAS**, the OAG filed Proofs of Claim numbered 855, 856, and 857 against GGH, GGC, and GAP, respectively, in the Genesis Bankruptcy Proceedings, asserting claims for more than $1.1 billion against each of the Genesis Defendants, and alleging, among other things, that the Genesis Defendants engaged in schemes to defraud investors and used and employed fraudulent practices in violation of the Martin Act, engaged in persistent fraud and illegality in violation of Executive Law § 63(12), and sold or offered to sell unregistered securities or commodities in violation of General Business Law § 359-e;

**WHEREAS**, the Genesis Defendants have proposed a joint chapter 11 plan in the Genesis Bankruptcy Proceedings (Dkt. No. 989), which is subject to further amendment and confirmation by the Bankruptcy Court (the "Chapter 11 Plan"); and

**WHEREAS**, Plaintiff and the Genesis Defendants now desire to resolve the claims alleged in the Complaint against them upon the terms set forth below.

**NOW, THEREFORE,** the Genesis Defendants consent to entry of an order and judgment on consent against them as follows:

1.    The Genesis Defendants shall be bound by the terms of this Stipulation and Consent to Judgment and the Order and Judgment on Consent (the "Order and Judgment on Consent") and waive appeal thereof.

2.    The Genesis Defendants admit that they have been properly served with the Summons and Complaint and desire to settle and resolve this action as against them in its entirety.

3.    The Genesis Defendants neither admit nor deny the OAG's allegations set forth in the Complaint, except as to personal jurisdiction and subject matter jurisdiction, which the Genesis Defendants admit. The Genesis Defendants waive any and all arguments concerning lack of personal jurisdiction or subject matter jurisdiction. The Genesis Defendants shall (i) not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis; and (ii) not make or permit to be made any public statement to the effect that the Genesis Defendants do not admit the allegations of the Complaint, or that this Stipulation and Consent to Judgment contains no admission of the allegations, without also stating that the Genesis Defendants do not deny the allegations. Nothing in this paragraph affects the Genesis Defendants' (i) testimonial obligations or (ii) right to take legal or factual positions in litigation or other legal proceedings.

4.    The Genesis Defendants consent to the jurisdiction of New York State courts with respect to this Stipulation and Consent to Judgment and the Order and Judgment on Consent, and exclusively choose New York State law to govern any and all disputes arising out of this Stipulation and Consent to Judgment, the Order and Judgment on Consent, and the enforcement

3

thereof.  The Bankruptcy Court shall have exclusive jurisdiction with respect to the Chapter 11 Plan, including the Amended Plan (as defined below).  To the extent the NY Court approves this Stipulation and Consent to Judgment and the Order and Judgment on Consent, the NY Court shall retain jurisdiction to enforce this Stipulation and Consent to Judgment and the Order and Judgment on Consent.

5.      The Genesis Defendants and Plaintiff stipulate that Plaintiff shall have an allowed general unsecured claim against each of (i) GGH in the GGH Bankruptcy Case, (ii) GGC in the GGC Bankruptcy Case, and (iii) GAP in the GAP Bankruptcy Case (collectively, the "OAG Claims") in the Genesis Bankruptcy Proceedings, including in each of the classes of general unsecured claims against the Debtors in any chapter 11 plan (e.g., under the Amended Plan, Class 3 – Fiat-or-Stablecoin-Denominated Unsecured Claims, Class 4 BTC-Denominated Unsecured Claims, Class 5 ETH-Denominated Unsecured Claims, Class 6 – Alt-Coin-Denominated Unsecured Claims, and Class 7 – Gemini Lender Claims), in an aggregate amount equal to the OAG Claims Amount (as defined below), which shall be paid only after payment in full of all other allowed administrative expense, secured, priority, Intercompany Claims (as defined in the Chapter 11 Plan), and general unsecured claims (excluding, for the avoidance of doubt, any claims of the Other Defendants or their affiliates (other than allowed Intercompany Claims or general unsecured claims of the Genesis Defendants and their subsidiaries), any general unsecured claims of Governmental Units (as defined in the Chapter 11 Plan or the Amended Plan), or any subordinated claims), it being understood that payment in full of general unsecured claims shall be calculated as if any general unsecured claim based on a loan[1] or investment denominated in any

---

[1] For the avoidance of doubt, the terms "loan", "lender" and "investment" herein are used solely for ease of reference and in no way reflect a determination of whether such transactions constitute, involve, or relate to the issuance, exchange, purchase, sale, promotion, negotiation, advertisement, investment advice, or distribution of securities or commodities.

4

type of digital asset is converted into the equivalent U.S. dollar value using the price of the applicable digital asset on the applicable distribution calculation date or as otherwise ordered by the Bankruptcy Court.  In addition, with respect to any distributions to Plaintiff in the GGC Bankruptcy Case with respect to any dollar-denominated unsecured claims, the OAG Claims in such class shall be treated as *pari passu* with any allowed claims of the Securities and Exchange Commission in such class, including with respect to any distributions to be made on account of such allowed claims.

6.     The total amount of the OAG Claims shall be the amount equal to the difference between (i) the aggregate amount of allowed general unsecured claims against GGH, GGC, and GAP (excluding, to the extent applicable, any general unsecured claims of the Other Defendants or any of their affiliates, other than any allowed general unsecured claims of (x) the Genesis Defendants and their subsidiaries or (y) Gemini, solely to the extent Gemini is deemed to be the holder of allowed general unsecured claims on account of Gemini Lenders (as defined in the Amended Plan) and not in any other capacity) calculated in accordance with paragraph 7 below (the "Aggregate Claim Amount") *minus* (ii) the aggregate value of the distributable assets distributed, or to be distributed, to the holders of general unsecured claims against GGH, GGC, and GAP (excluding, to the extent applicable, any distributions to the Other Defendants or any of their affiliates, other than any allowed general unsecured claims of (x) the Genesis Defendants and their subsidiaries or (y) Gemini, solely to the extent Gemini is deemed to be the holder of allowed general unsecured claims on account of Gemini Lenders (as defined in the Amended Plan) and not in any other capacity) on or prior to the applicable distribution date pursuant to any chapter 11 plan that is confirmed by the Bankruptcy Court or otherwise by a chapter 7 trustee appointed in the Genesis Bankruptcy Proceedings (such difference, the "OAG Claims Amount").  To the extent

that holders of such allowed general unsecured claims (excluding, to the extent applicable, any distributions to the Other Defendants or any of their affiliates, other than any allowed general unsecured claims of (x) the Genesis Defendants and their subsidiaries or (y) Gemini, solely to the extent Gemini is deemed to be the holder of allowed general unsecured claims on account of Gemini Lenders (as defined in the Amended Plan) and not in any other capacity) receive distributions from other settlements, including, without limitation, distributions made from claims held by other regulatory authorities, the OAG Claims Amount shall be reduced on a dollar-for-dollar basis.

7.      Notwithstanding anything contained herein, in the Amended Plan, or in the order confirming the Amended Plan to the contrary, with respect to any allowed claim that is arising from, related to, or denominated in digital assets, the Aggregate Claim Amount shall be calculated as if any allowed claim based on a loan[2] or investment denominated in a digital asset is converted into the equivalent U.S. dollar value using the price of the applicable digital asset on the applicable distribution calculation date, which distribution calculation date shall be no earlier than thirty (30) days before the applicable distribution date.

8.      Plaintiff agrees that any distributions it receives in respect of the OAG Claims will be turned over to holders of allowed general unsecured claims against GGH, GGC and GAP (excluding, for the avoidance of doubt, the Other Defendants or any of their affiliates, or holders of subordinated claims) on a pro rata basis (the "Victims' Fund").  Distributions from the Victims' Fund will be made in a manner consistent with the Distribution Principles (as defined in the Amended Plan) to compensate such holders of allowed claims for the full and fair amounts of their actual losses. In order to reduce costs and improve efficiency, Plaintiff may appoint GGC as the

---

[2] *See supra* n. 1.

distribution agent to make any such distributions in respect of the Victims' Fund. Notwithstanding anything to the contrary herein, if GGC is acting as the distribution agent for Plaintiff, GGC may appoint Gemini (or, with GGC's and Plaintiff's prior written consent, an entity appointed by Gemini) to act as agent for the Genesis Defendants in a manner consistent with the Gemini Distribution Agent (as defined in the Amended Plan) to make or facilitate distributions to Gemini Lenders (as defined in the Amended Plan).

9.      Plaintiff agrees that, upon the execution of this Stipulation and Consent to Judgment, or within a reasonable time thereafter, the OAG will amend Proofs of Claim numbered 855, 856 and 857 filed against GGH, GGC and GAP, respectively, in the Genesis Bankruptcy Proceedings, to reflect, among other things, the Stipulation and Consent to Judgment and settlement of all claims relating to the NY Action as to the Genesis Defendants only.

10.      As stated in the Order and Judgment on Consent, the Genesis Defendants are permanently restrained and enjoined from directly or indirectly conducting or transacting business in the State of New York. The Genesis Defendants certify under penalty of perjury that they will cease conducting or transacting business in the State of New York and that they will not conduct or transact business in the State of New York in the future. For the avoidance of doubt, except as provided herein, nothing in the Order and Judgment on Consent shall prohibit the Genesis Defendants from taking any actions in connection with the Genesis Bankruptcy Proceedings, including, without limitation, winding down their businesses, making distributions to creditors, prosecuting any rights or defenses in any adversary proceedings or other litigation, investigations, or actions arising out of or related to the Genesis Bankruptcy Proceedings, or any other action as ordered by the Bankruptcy Court.

11.     As stated in the Order and Judgment on Consent, the Genesis Defendants are permanently restrained and enjoined from violation of the Martin Act, Article 23-A of the General Business Law, General Business Law § 359-e, and Executive Law § 63(12).

12.     As stated in the Order and Judgment on Consent, and subject to any orders of the Bankruptcy Court, the Genesis Defendants shall, in connection with the NY Action (i) accept service of any subpoenas or other documents; (ii) maintain books and records, as required under the Amended Plan; (iii) authenticate business records; and (iv) cooperate with the OAG's efforts to seek and obtain approval of this Stipulation and Consent to Judgment and the Order and Judgment on Consent by the NY Court, including taking all reasonable and necessary steps needed to obtain court approval.

13.     The Genesis Defendants shall amend the Chapter 11 Plan to incorporate the terms of the Stipulation and Consent on Judgment and Order and Judgment on Consent (the "Amended Plan").

14.     The Genesis Defendants acknowledge that they have received and reviewed a copy of the Order and Judgment on Consent and agree to the obligations and duties it imposes.

15.     The Genesis Defendants' failure to comply with any provision of the Order and Judgment on Consent shall be deemed to be a violation of the Order and Judgment on Consent, and upon any such violation, the OAG may take any and all steps available to enforce the Order and Judgment on Consent, including civil or criminal contempt.

16.     This Stipulation and Consent to Judgment is entered into by the Genesis Defendants as their own free and voluntary act with full knowledge and understanding of the nature of the actions and the obligations and duties imposed upon them by the Order and Judgment on Consent. The Genesis Defendants consent to the entry of the Order and Judgment on Consent without further

8

notice, and agree that no offers, agreements, or inducements of any nature whatsoever have been made to them by Plaintiff or any employee of the OAG to procure this Stipulation and Consent to Judgment, except as set forth in the annexed Order and Judgment on Consent.

17.     The Genesis Defendants expressly agree and acknowledge that, in the event of a violation of the Order and Judgment on Consent, neither this Stipulation and Consent to Judgment nor the Order and Judgment on Consent shall in any way bar or otherwise preclude the OAG from commencing, conducting, or prosecuting any investigation, action, or proceeding, however denominated, related to the Order and Judgment on Consent against the Genesis Defendants, or from using in any way statements, documents, or other materials produced or provided by the Genesis Defendants prior to or after the date of this Order and Judgment on Consent, and any statute of limitations or other time-related defenses are tolled from and after the effective date of the Order and Judgment on Consent.

18.     This Stipulation and Consent to Judgment and the Order and Judgment on Consent are binding on the Genesis Defendants and all of the Genesis Defendants' predecessors, successors, and assigns, including, without limitation, any chapter 7 trustee appointed in the Genesis Bankruptcy Proceedings.

19.     Plaintiff agrees that it will not object to the Amended Plan proposed by the Genesis Defendants in the Genesis Bankruptcy Proceedings, or any other chapter 11 plan, provided that in each case such chapter 11 plan is consistent with this Stipulation and Consent to Judgment and the Order and Judgment on Consent, including by, among other things, providing that (i) payment in full of general unsecured claims shall be calculated as if any general unsecured claim denominated in any type of digital asset is converted into the equivalent U.S. dollar value using the price of the applicable digital asset on the applicable distribution calculation date, as it is currently defined in

9

the Chapter 11 Plan, (ii) the OAG shall be entitled to distributions in respect of the OAG Claims in a manner consistent with paragraphs 5, 6, and 7 above, and (iii) the OAG does not release any claims it has or may have against the Other Defendants (*i.e.*, Gemini, DCG, Moro, and Silbert).

20.    The OAG shall seek approval of this Stipulation and Consent to Judgment and the Order and Judgment on Consent by the NY Court.

21.    Once approved by the Bankruptcy Court, the Stipulation and Consent to Judgment and Order and Judgment on Consent shall be binding on the Plaintiff and Genesis Defendants regardless of whether the Bankruptcy Court confirms the Amended Plan.

22.    Nothing in this Stipulation and Consent to Judgment and the Order and Judgment on Consent or the Amended Plan, including the OAG's amendments to Proofs of Claim numbered 855, 856, and 857, shall release any claims that OAG may have against the Other Defendants (*i.e.*, Gemini, DCG, Moro, and Silbert), who are Defendants named in the Complaint.  And, for the avoidance of doubt, nothing in this Stipulation and Consent to Judgment and the Order and Judgment on Consent shall bind any other governmental agency or office.

23.    The undersigned signatory on behalf of the Genesis Defendants represents and warrants that she/he has the authority to execute this Stipulation and Consent to Judgment on behalf of the Genesis Defendants.

24.    All correspondence required herein shall be delivered or mailed to the following addresses, unless a different address is specified in writing by the Party changing such address:

> If to the OAG:        Office of the Attorney General of the State of New York
> Attn: Gabriel Tapalaga, Assistant Attorney General
> Investor Protection Bureau
> 28 Liberty Street, 21st Floor
> New York, New York 10005

If to Defendants:    Sean A. O'Neal
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10005

Andrew Sullivan
Genesis Global Capital, LLC
175 Greenwich St., Fl. 38
New York, NY 10007

25.    Plaintiff may apply to the NY Court to make further applications for such other and further relief as it appears to the OAG is proper and necessary for the enforcement of this Stipulation and Consent to Judgment and the Order and Judgment on Consent.

26.    This Stipulation and Consent to Judgement may be executed in one or more counterparts and by way of electronic signature, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Stipulation and Consent to Judgement by electronic mail in portable document format (.pdf) shall be effective as delivery of an original executed counterpart of this Agreement.

Dated: February 8, 2024

Geoffrey Andreu, Esq.
Assistant Attorney General
Investor Protection Bureau
Office of the Attorney General of
the State of New York
28 Liberty Street
New York, New York 10005
(212) 416-8769

*Counsel for the People of the State of New York*

11

Dated: February 8, 2024

_Jason Gottlieb_
_____
Jason Gottlieb
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
Tel: (212) 735-8600
jgottlieb@morrisoncohen.com

*Counsel for Genesis Defendants*


_____
Arianna Pretto-Sakmann
Chief Legal Officer
175 Greenwich Street, 38th Floor
New York, NY 10007

Dated: February 8, 2024

_____

Jason Gottlieb
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
Tel: (212) 735-8600
jgottlieb@morrisoncohen.com

*Counsel for Genesis Defendants*

_____

Arianna Pretto-Sakmann
Chief Legal Officer
175 Greenwich Street, 38th Floor
New York, NY 10007

**Exhibit D**

**Order and Judgment on Consent**

At Part _____ of the Supreme Court of the
State of New York, held in and for the
County of New York, at the Courthouse,
60 Centre Street, Borough of Manhattan,
City and State of New York, on the
_____ day of _____, 2024

PRESENT:

Hon. _____, J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE PEOPLE OF THE STATE OF NEW YORK, by :     Index No.: 452784/2023
LETITIA JAMES, Attorney General of the State of
New York,     :

         Plaintiff,        :     **[PROPOSED] ORDER AND**
                                  **JUDGMENT ON CONSENT**
    -against-                **AGAINST GENESIS**
                                :     **GLOBAL CAPITAL, LLC,**
GEMINI TRUST COMPANY, LLC; GENESIS     **GENESIS ASIA PACIFIC**
GLOBAL CAPITAL, LLC; GENESIS ASIA PACIFIC :     **PTE. LTD., AND GENESIS**
PTE. LTD.; GENESIS GLOBAL HOLDCO, LLC;     **GLOBAL HOLDCO, LLC**
DIGITAL CURRENCY GROUP, INC.; SOICHIRO     :
MORO (a.k.a. MICHAEL MORO); and BARRY E.
SILBERT.     :

         Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff, the People of the State of New York, by Letitia James, Attorney General of the

State of New York (the "OAG" or "Plaintiff") commenced this action by Summons and Complaint

on October 19, 2023 (as the same may be amended, supplemented or modified, the "Complaint"),

against the above-named defendants (collectively, the "Defendants") Genesis Global Capital, LLC

("GGC"), Genesis Asia Pacific Pte. Ltd. ("GAP"), and Genesis Global Holdco, LLC ("GGH" and,

collectively with GGC and GAP, the "Genesis Defendants" or the "Debtors"), Gemini Trust

Company, LLC ("Gemini"), Digital Currency Group, Inc. ("DCG"), Soichiro Moro (a.k.a. Michael

Moro) ("Moro"), and Barry E. Silbert ("Silbert" and, collectively with Gemini, DCG and Moro, the "Other Defendants").

The Complaint alleges, among other things, that the Defendants used fraudulent practices and engaged in repeated fraudulent or illegal acts to defraud investors, in violation of the Martin Act, Article 23-A of the New York General Business Law, New York General Business Law § 359-e, and Executive Law § 63(12). The Complaint seeks damages, disgorgement of all amounts obtained in connection with or as a result of fraudulent and deceptive acts, restitution of all funds obtained by Defendants from investors in connection with the fraudulent and deceptive acts, and an injunction prohibiting Defendants from engaging in any business related to the issuance, offer, distribution, exchange, promotion, advertisement, negotiation, purchase, investment advice, or sale of securities or commodities within or from this state or violating the Martin Act, Article 23-A of the General Business Law, and Executive Law § 63(12).

The OAG filed Proofs of Claim numbered 855, 856, and 857 against GGH, GGC, and GAP, respectively, in the Genesis Bankruptcy Proceedings, asserting claims for more than $1.1 billion against each of the Genesis Defendants, and alleging, among other things, that the Genesis Defendants engaged in schemes to defraud investors and used and employed fraudulent practices in violation of the Martin Act, engaged in persistent fraud and illegality in violation of Executive Law § 63(12), and sold or offered to sell unregistered securities or commodities in violation of General Business Law § 359-e. The Proofs of Claim assert claims exceeding an estimated $1.1 billion in restitution, plus additional amounts in disgorgement of ill-gotten gains and damages, as well as injunctive and other equitable relief, under the Martin Act and New York Executive Law § 63(12).

2

As set forth in the Stipulation and Consent to Judgment ("Stipulation and Consent")[1], dated February 8, 2024, the Genesis Defendants acknowledge and admit that they have been properly served with the above-referenced Summons and Complaint and have entered a general appearance in this matter.  Plaintiff and the Genesis Defendants (together, the "Parties") desire to resolve the claims alleged in the Complaint against the Genesis Defendants upon the terms set forth in the Stipulation and Consent.  The Genesis Defendants consent to entry of this Order and Judgment on Consent (the "Order and Judgment on Consent") to fully and finally resolve the proceeding initiated by the OAG against them, pursuant to the terms of the Stipulation and Consent.

NOW, on motion of the OAG, consented to by the Genesis Defendants, upon the Stipulation and Consent, and upon all the pleadings, it is hereby:

1.       ORDERED, ADJUDGED, AND DECREED that the Stipulation and Consent and this Order and Judgment on Consent are binding on the Genesis Defendants and all of the Genesis Defendants' predecessors, successors, and assigns, including, without limitation, any chapter 7 trustee appointed in the Genesis Bankruptcy Proceedings, and that the Genesis Defendants and all such predecessors, successors, and assigns waive appeal thereof.

**General Unsecured Claim**

2.       It is further ORDERED, ADJUDGED, AND DECREED that Plaintiff shall have an allowed general unsecured claim against each of (i) GGH in the GGH Bankruptcy Case, (ii) GGC in the GGC Bankruptcy Case, and (iii) GAP in the GAP Bankruptcy Case (collectively, the "OAG Claims") in the Genesis Bankruptcy Proceedings, including in each of the classes of general unsecured claims against the Debtors in any chapter 11 plan (e.g., under the Amended Plan, Class 3 – Fiat-or-Stablecoin-Denominated Unsecured Claims, Class 4 BTC-Denominated

---

[1] All defined terms herein carry the same meanings as used in the Stipulation and Consent.

3

Unsecured Claims, Class 5 ETH-Denominated Unsecured Claims, Class 6 – Alt-Coin-Denominated Unsecured Claims, and Class 7 – Gemini Lender Claims), in an aggregate amount equal to the OAG Claims Amount (as defined below), which shall be paid only after payment in full of all other allowed administrative expense, secured, priority, Intercompany Claims (as defined in the Chapter 11 Plan), and general unsecured claims (excluding, for the avoidance of doubt, any claims of the Other Defendants or their affiliates (other than allowed Intercompany Claims or general unsecured claims of the Genesis Defendants and their subsidiaries), any general unsecured claims of Governmental Units (as defined in the Chapter 11 Plan or the Amended Plan), or any subordinated claims), it being understood that payment in full of general unsecured claims shall be calculated as if any general unsecured claim based on a loan[2] or investment denominated in any type of digital asset is converted into the equivalent U.S. dollar value using the price of the applicable digital asset on the applicable distribution calculation date or as otherwise ordered by the Bankruptcy Court.  In addition, with respect to any distributions to Plaintiff in the GGC Bankruptcy Case with respect to any dollar-denominated unsecured claims, the OAG Claims in such class shall be treated as *pari passu* with any allowed claims of the Securities and Exchange Commission in such class, including with respect to any distributions to be made on account of such allowed claims.

3.　　It is further ORDERED, ADJUDGED, AND DECREED that the total amount of the OAG Claims shall be the amount equal to the difference between (i) the aggregate amount of allowed general unsecured claims against GGH, GGC, and GAP (excluding, to the extent

---

[2] For the avoidance of doubt, the terms "loan", "lender" and "investment" herein are used solely for ease of reference and in no way reflect a determination of whether such transactions constitute, involve, or relate to the issuance, exchange, purchase, sale, promotion, negotiation, advertisement, investment advice, or distribution of securities or commodities.

applicable, any general unsecured claims of the Other Defendants or any of their affiliates, other than any allowed general unsecured claims of (x) the Genesis Defendants and their subsidiaries or (y) Gemini, solely to the extent Gemini is deemed to be the holder of allowed general unsecured claims on account of Gemini Lenders (as defined in the Amended Plan) and not in any other capacity) calculated in accordance with paragraph 4 below (the "Aggregate Claim Amount") *minus* (ii) the aggregate value of the distributable assets distributed, or to be distributed, to the holders of general unsecured claims against GGH, GGC, and GAP (excluding, to the extent applicable, any distributions to the Other Defendants or any of their affiliates, other than any allowed general unsecured claims of (x) the Genesis Defendants and their subsidiaries or (y) Gemini, solely to the extent Gemini is deemed to be the holder of allowed general unsecured claims on account of Gemini Lenders (as defined in the Amended Plan) and not in any other capacity) on or prior to the applicable distribution date pursuant to any chapter 11 plan that is confirmed by the Bankruptcy Court or otherwise by a chapter 7 trustee appointed in the Genesis Bankruptcy Proceedings (such difference, the "OAG Claims Amount").  To the extent that holders of such allowed general unsecured claims (excluding, to the extent applicable, any distributions to the Other Defendants or any of their affiliates, other than any allowed general unsecured claims of (x) the Genesis Defendants and their subsidiaries or (y) Gemini, solely to the extent Gemini is deemed to be the holder of allowed general unsecured claims on account of Gemini Lenders (as defined in the Amended Plan) and not in any other capacity) receive distributions from other settlements, including, without limitation, distributions made from claims held by other regulatory authorities, the OAG Claims Amount shall be reduced on a dollar-for-dollar basis.

4.      It is further ORDERED, ADJUDGED, AND DECREED that, notwithstanding anything contained herein, in the Amended Plan, or in the order confirming the Amended Plan to

the contrary, with respect to any allowed claim that is arising from, related to, or denominated in digital assets, the Aggregate Claim Amount shall be calculated as if any allowed claim based on a loan[3] or investment denominated in a digital asset is converted into the equivalent U.S. dollar value using the price of the applicable digital asset on the applicable distribution calculation date, which distribution calculation date shall be no earlier than thirty (30) days before the applicable distribution date.

5.     It is further ORDERED, ADJUDGED, AND DECREED that any distributions that Plaintiff receives in respect of the OAG Claims will be turned over to holders of allowed general unsecured claims against GGH, GGC and GAP (excluding, for the avoidance of doubt, the Other Defendants or any of their affiliates, or holders of subordinated claims) on a pro rata basis (the "Victims' Fund").  Distributions from the Victims' Fund will be made in a manner consistent with the Distribution Principles (as defined in the Amended Plan) to compensate such holders of allowed claims for the full and fair amounts of their actual losses.  In order to reduce costs and improve efficiency, Plaintiff may appoint GGC as the distribution agent to make any such distributions in respect of the Victims' Fund.  Notwithstanding anything to the contrary in the Stipulation and Consent, if GGC is acting as the distribution agent for Plaintiff, GGC may appoint Gemini (or, with GGC's and Plaintiff's prior written consent, an entity appointed by Gemini) to act as agent for the Genesis Defendants in a manner consistent with the Gemini Distribution Agent (as defined in the Amended Plan) to make or facilitate distributions to Gemini Lenders (as defined in the Amended Plan).

---

[3] *See supra* n. 1.

**Injunction**

6. It is further ORDERED, ADJUDGED, AND DECREED that the Genesis Defendants are permanently restrained and enjoined from violation of the Martin Act, Article 23-A of the General Business Law, General Business Law § 359-e, and Executive Law § 63(12).

7. It is further ORDERED, ADJUDGED, AND DECREED that the Genesis Defendants are permanently restrained and enjoined from directly or indirectly conducting or transacting business in the State of New York.  The Genesis Defendants certify under penalty of perjury that they will cease conducting or transacting business in the State of New York and that they will not conduct or transact business in the State of New York in the future.  For the avoidance of doubt, except as provided in the Stipulation and Consent, nothing in this Order and Judgment on Consent shall prohibit the Genesis Defendants from taking any actions in connection with the Genesis Bankruptcy Proceedings, including, without limitation, winding down their businesses, making distributions to creditors, prosecuting any rights or defenses in any adversary proceedings or other litigation, investigations, or actions arising out of or related to the Genesis Bankruptcy Proceedings, or any other action as ordered by the Bankruptcy Court.

**Cooperation**

8. It is further ORDERED, ADJUDGED, AND DECREED that, subject to any orders of the Bankruptcy Court, the Genesis Defendants shall, in connection with this action (i) accept service of any subpoenas or other documents; (ii) maintain books and records, as required under the Amended Plan; (iii) authenticate business records; and (iv) cooperate with the OAG's efforts to seek and obtain approval of the Stipulation and Consent and this Order and Judgment on Consent by this Court, including taking all reasonable and necessary steps needed to obtain court approval.

**Miscellaneous**

9.      It is further ORDERED, ADJUDGED, AND DECREED that the Genesis Defendants neither admit nor deny the OAG's allegations set forth in the Complaint, except as to personal jurisdiction and subject matter jurisdiction, which the Genesis Defendants admit.  The Genesis Defendants waive any and all arguments concerning lack of personal jurisdiction or subject matter jurisdiction.  The Genesis Defendants shall (i) not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis; and (ii) not make or permit to be made any public statement to the effect that the Genesis Defendants do not admit the allegations of the Complaint, or that the Stipulation and Consent contains no admission of the allegations, without also stating that the Genesis Defendants do not deny the allegations.  Nothing in this paragraph affects the Genesis Defendants' (i) testimonial obligations or (ii) right to take legal or factual positions in litigation or other legal proceedings.

10.      It is further ORDERED, ADJUDGED, AND DECREED that the Genesis Defendants consent to the jurisdiction of New York State courts with respect to this Order and Judgment on Consent and the Stipulation and Consent, and exclusively choose New York State law to govern any and all disputes arising out of this Order and Judgment on Consent, the Stipulation and Consent, and the enforcement thereof.  The Bankruptcy Court shall have exclusive jurisdiction with respect to the Chapter 11 Plan, including the Amended Plan (as defined below).  To the extent this Court approves this Order and Judgment on Consent and the Stipulation and Consent, this Court shall retain jurisdiction to enforce this Order and Judgment on Consent and the Stipulation and Consent.

11.     It is further ORDERED, ADJUDGED, AND DECREED that the Genesis Defendants shall amend the Chapter 11 Plan to incorporate the terms of the Stipulation and Consent and this Order and Judgment on Consent (the "Amended Plan").

12.     It is further ORDERED, ADJUDGED, AND DECREED that Plaintiff will not object to the Amended Plan proposed by the Genesis Defendants in the Genesis Bankruptcy Proceedings, or any other chapter 11 plan, provided that in each case such chapter 11 plan is consistent with the Stipulation and Consent and this Order and Judgment on Consent, including by, among other things, providing that (i) payment in full of general unsecured claims shall be calculated as if any general unsecured claim denominated in any type of digital asset is converted into the equivalent U.S. dollar value using the price of the applicable digital asset on the applicable distribution calculation date, as it is currently defined in the Chapter 11 Plan, (ii) the OAG shall be entitled to distributions in respect of the OAG Claims in a manner consistent with paragraphs 2, 3, and 4 above, and (iii) the OAG does not release any claims it has or may have against the Other Defendants (*i.e.*, Gemini, DCG, Moro, and Silbert).

13.     It is further ORDERED, ADJUDGED, AND DECREED that the Genesis Defendants' failure to comply with any provision of this Order and Judgment on Consent shall be deemed to be a violation of this Order and Judgment on Consent, and upon any such violation, the OAG may take any and all steps available to enforce this Order and Judgment on Consent, including civil or criminal contempt.

14.     It is further ORDERED, ADJUDGED, AND DECREED that the Genesis Defendants expressly agree and acknowledge that in the event of a violation of this Order and Judgment on Consent, neither the Stipulation and Consent nor this Order and Judgment on Consent shall in any way bar or otherwise preclude the OAG from commencing, conducting, or prosecuting

any investigation, action, or proceeding, however denominated, related to this Order and Judgment on Consent against the Genesis Defendants, or from using in any way statements, documents, or other materials produced or provided by the Genesis Defendants prior to or after the date of this Order and Judgment on Consent, and any statute of limitations or other time-related defenses are tolled from and after the effective date of this Order and Judgment on Consent.

15.     It is further ORDERED, ADJUDGED, AND DECREED that, once approved by the Bankruptcy Court, the Stipulation and Consent and this Order and Judgment on Consent shall be binding on the Plaintiff and Genesis Defendants regardless of whether the Bankruptcy Court confirms the Amended Plan.

16.     It is further ORDERED, ADJUDGED, AND DECREED that nothing in the Stipulation and Consent and this Order and Judgment on Consent or the Amended Plan, including the OAG's amendments to Proofs of Claim numbered 855, 856, and 857, shall release any claims that OAG may have against the Other Defendants (*i.e.*, Gemini, DCG, Moro, and Silbert), who are Defendants named in the Complaint.  And, for the avoidance of doubt, nothing in the Stipulation and Consent and this Order and Judgment on Consent shall bind any other governmental agency or office.

17.     It is further ORDERED, ADJUDGED, AND DECREED that all correspondence required herein shall be delivered or mailed to the following addresses, unless a different address is specified in writing by the Party changing such address:

| | |
|---|---|
| If to the OAG: | Office of the Attorney General of the State of New York<br>Attn: Gabriel Tapalaga, Assistant Attorney General<br>Investor Protection Bureau<br>28 Liberty Street, 21st Floor<br>New York, New York 10005 |
| If to Defendants: | Sean A. O'Neal<br>Cleary Gottlieb Steen & Hamilton LLP |

10

One Liberty Plaza
New York, NY 10005

Andrew Sullivan
Genesis Global Capital, LLC
175 Greenwich St., Fl. 38
New York, NY 10007

18.     It is further ORDERED, ADJUDGED, AND DECREED that Plaintiff may apply
to this Court to make further applications for such other and further relief as it appears to the OAG
is proper and necessary for the enforcement of the Stipulation and Consent and this Order and
Judgment on Consent.

19.     It is further ORDERED, ADJUDGED AND DECREED that if any clause,
provision, or section of this Order and Judgment on Consent shall, for any reason, be held illegal,
invalid, or unenforceable, such illegality, invalidity, or unenforceability shall not affect any other
clause, provision or section of this Order and Judgment on Consent and this Order and Judgment
on Consent shall be construed and enforced as if such illegal, invalid, or unenforceable clause,
section or provision had not been contained herein.

20.     It is further ORDERED, ADJUDGED AND DECREED that any failure of the
OAG to exercise any right under this Order and Judgment on Consent shall not constitute a waiver
of any rights of the OAG.


Dated: _____


Enter:


_____
Hon. Melissa A. Crane

11