DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Benjamin S. Kaminetzky
Brett M. McMahon
Jacquelyn S. Knudson

*Counsel to Grayscale Investments, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No. 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**GRAYSCALE INVESTMENTS, LLC'S LIMITED OBJECTION TO DEBTORS'
MOTION SEEKING ENTRY OF AN ORDER AUTHORIZING, BUT NOT DIRECTING,
(I) THE SALE OF TRUST ASSETS AND (II) GRANTING RELATED RELIEF**

Grayscale Investments, LLC ("Grayscale" or the "Sponsor") respectfully submits this limited objection (the "Limited Objection") in opposition to the *Debtors' Motion Seeking Entry of an Order Authorizing, But Not Directing, (I) the Sale of Trust Assets and (II) Granting Related Relief* (February 2, 2024) [Dkt. No. 1227] (the "Motion"), and respectfully states as follows:

**Background**

1. Grayscale is a Delaware limited liability company that established and serves as the sponsor of numerous Delaware statutory trusts that allow investors to gain exposure to digital assets in the form of publicly traded securities, while avoiding the challenges of buying, storing,

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number (as applicable), are Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R) (collectively, the "Debtors"). For purposes of these Chapter 11 cases, the service address for the Debtors is 175 Greenwich St., 38th Floor, New York, New York 10007.

and safekeeping digital assets directly, including three trusts in which the Debtors hold shares: Grayscale Bitcoin Trust (BTC) (Ticker: GBTC) ("GBTC"), Grayscale Ethereum Trust (ETH) (Ticker: ETHE) ("ETHE"), and Grayscale Ethereum Classic Trust (ETC) (Ticker: ETCG) ("ETCG"). (Mot. ¶¶ 3-4.) GBTC is governed by the GBTC Trust Agreement,[2] ETHE is governed by the ETHE Trust Agreement, and ETCG is governed by the ETCG Trust Agreement (collectively, the "Trust Agreements"). (*See id.* ¶ 3 nn.3, 4 & 5.) According to the Motion, the Debtors hold and wish to sell or transfer 35,939,233 GBTC Shares; 8,717,520 ETHE Shares; and 2,970,892 ETCG Shares (collectively, the "Trust Assets"). (*Id.* ¶ 7.)

2.  In January 2024, GBTC was uplisted from OTCQX, OTC Markets, Inc.'s top-tier over-the-counter trading marketplace, to NYSE Arca, Inc. ("NYSE Arca") as an exchange-traded fund ("ETF"). (*Id.* ¶ 5.) Accordingly, GBTC Shares are publicly traded on NYSE Arca and can be redeemed for cash pursuant to a redemption program. (*Id.*) As the Debtors acknowledge, and as set forth in the GBTC Trust Agreement, GBTC's Registration Statement, NYSE Arca's Form 19b-4 to list and trade GBTC as an ETF, and as is the case for every ETF, only "Authorized Participants" are capable of redeeming GBTC Shares. (*See id.* ¶ 5(a); GBTC Trust Agreement § 5.2; GBTC Reg. Stmt. (Form S-3) at 31 (Jan. 8, 2024); Form 19b-4 re: GBTC, 89 Fed. Reg. 2661, 2677 (Jan. 16, 2024).) An "Authorized Participant" must (i) be a registered broker-dealer; and (ii) enter into a Participant Agreement with Grayscale and the Transfer Agent (i.e., The Bank of New York Mellon), which includes other requirements, such as being a direct participant of the Depository Trust Clearing Corporation (collectively, the "Authorized Participant Requirements"). (*See* Mot. ¶ 5(a); GBTC Trust Agreement § 1.1 (p. 2); GBTC Reg. Stmt. at 31.) None of the Debtors is an Authorized Participant. Additionally, redemptions of GBTC Shares by Authorized

---

[2] Terms used and not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Participants are subject to written approval by Grayscale, in its sole discretion and on a case-by-case basis (the "Redemption Consent Rights"). (*See* Mot. ¶ 5(a) (citing GBTC Reg. Stmt. at 34).)

3. ETHE Shares and ETCG Shares are quoted on OTCQX and may be bought and sold by investors in the secondary market to the extent such transactions are exempt from the registration requirements of the Securities Act of 1933 (the "Securities Act"). (*Id.* ¶¶ 6.)

4. Under the Trust Agreements, GBTC Shares, ETHE Shares, and ETCG Shares (collectively, the "Trust Shares") constituting "restricted securities" cannot be sold, assigned, or otherwise disposed of without Grayscale's prior written consent, which may be provided or withheld in its sole discretion (the "Transfer Consent Rights," and together with the Redemption Consent Rights, the "Consent Rights"). (*Id.* ¶¶ 6 (citing Section 4.2 of the ETHE Trust Agreement and the ETCG Trust Agreement), 35; GBTC Trust Agreement § 4.2.)

5. By and through the Motion, the Debtors ask the Court to "abrogate" Grayscale's Consent Rights and the legal and regulatory requirements of the Authorized Participant Requirements in connection with the redemption, sale, or transfer of the Trust Assets. (*See* Mot. ¶¶ 19(b)-(d), 35.) Specifically, the Debtors seek an order from this Court that would (i) require Grayscale to redeem any GBTC Shares upon request by the Debtors notwithstanding the terms of the relevant Trust Agreements, GBTC's Registration Statement, NYSE Arca's Form 19b-4 to list and trade GBTC as an ETF, and the Redemption Consent Rights (i.e., the terms dictating that only Authorized Participants are capable of redeeming GBTC Shares and establishing Grayscale's express right to approve redemptions in its sole discretion and on a case-by-case basis); (ii) allow the Debtors and/or Gemini to sell or transfer their GBTC Shares without seeking or obtaining Grayscale's prior written consent; and (iii) allow the Debtors to sell or transfer their ETHE Shares

3

and ETCG Shares without seeking or obtaining Grayscale's prior written consent. (*See, e.g.*, *id.* ¶¶ 19(b)-(d), 22, 32, 35; Mot. Ex. B, Proposed Order ¶ 2(b)-(d).)

6. Surprisingly, although the Motion expressly seeks to abrogate Grayscale's Consent Rights and the Authorized Participant Requirements, Grayscale did not receive any notice from the Debtors concerning their intention to seek authorization to redeem, sell, or transfer the Trust Assets in contravention of the Consent Rights and the Authorized Participant Requirements; the Debtors made no effort before (or after) filing the Motion to confer with Grayscale about its Consent Rights and the Authorized Participant Requirements as they apply to the Trust Assets; and Grayscale (to the best of its knowledge) has neither been served with the Motion nor otherwise received notice from the Debtors that the Motion—which plainly affects Grayscale's rights and, if granted, could subject Grayscale to liability—was filed.[3] The Debtor's apparent failure to serve the Motion on Grayscale is particularly troubling where the Debtors are asking the Court to deem Grayscale as having consented to the requested relief abrogating their Consent Rights and the Authorized Participant Requirements unless Grayscale filed an objection. (Mot. ¶ 35.) Grayscale first learned of the Motion only on February 6, 2024, and has reacted quickly to protect its interests through the submission of this Limited Objection.

## Limited Objection

7. To be clear, Grayscale takes no position herein as to whether the Debtors[4] should be authorized to sell or transfer the Trust Assets for the benefit of the bankruptcy estates and the

---

[3] Nor did Grayscale receive notice or service of the *Debtors' Motion to Shorten the Notice Period for the Debtors' Motion Seeking Entry of an Order Authorizing, But Not Directing, (I) the Sale of Trust Assets and (II) Granting Related Relief* (February 2, 2024) [Dkt. No. 1228], which sought to set a hearing on the Motion for February 8, 2024, and to limit Grayscale's time to object and avoid purportedly being deemed to have consented to the requested relief.

[4] Because the Motion appears to seek Court authorization for Gemini to engage in sale or transfer transactions involving Trust Assets (*see, e.g.*, Mot. ¶¶ 19(b)-(c), 31; Mot. Ex. B, Proposed Order ¶ 2(b)-(c)), references to the

( . . . *cont'd*)

Debtors' creditors. Nor does Grayscale intend to delay, impede, or obstruct the Debtors' sale or transfer of Trust Assets in compliance with applicable laws and regulations, including federal and state securities laws.

8. Grayscale objects, however, to the Debtors' requested relief because (a) Grayscale *cannot* "be required to redeem any GBTC [Shares] upon request by the Debtors" (*see* Mot. ¶ 19(d)) given that neither the Debtors nor Grayscale is an Authorized Participant with the ability to "redeem" GBTC Shares; and (b) stripping Grayscale of its Transfer Consent Rights in connection with the sale or transfer of the Trust Assets would undermine Grayscale's ability to ensure that those transactions comply with applicable law and regulations, including securities laws and rules.

9. *Redemptions.* The Motion reflects a fundamental misunderstanding on the part of the Debtors about how GBTC Shares can be redeemed. As explained above, only an Authorized Participant is permitted to redeem GBTC Shares. None of the Debtors is an Authorized Participant, so they are incapable of redeeming any GBTC Shares.[5] To bring the value of the GBTC Shares into the estates in the form of cash, the Debtors can sell the GBTC Shares via NYSE Arca, subject to the Transfer Consent Rights. But Grayscale cannot be compelled "to redeem any GBTC [Shares] upon request by the Debtors" (*id.* ¶ 19(d)) because doing so would violate the GBTC Trust Agreement and exceed the scope of the regulatory approvals that Grayscale and NYSE Arca have received for GBTC.

10. *Transfer Consent Rights.* The Debtors are asking the Court to effectively rewrite the Trust Agreements and ignore applicable securities laws to relieve them of their obligation to

---

"Debtors" should be read to include Gemini where and as appropriate in context. Non-Debtor Gemini should not be granted any rights or authorization with respect to the Trust Assets, including the right to sell or transfer Trust Assets irrespective of the Transfer Consent Rights, that the Debtors are not granted.

[5] Likewise, Gemini is not an Authorized Participant and cannot redeem any GBTC Shares (to the extent the Motion is seeking authority for Gemini to do so). (*See* Mot. ¶ 19(b)-(c).)

5

seek and obtain the requisite consent in accordance with Grayscale's standard process for approving the sale or transfer of Trust Shares. But the Transfer Consent Rights, which are memorialized in legally binding governing instruments for Delaware statutory trusts, exist for the purpose of—and are vital to—Grayscale's compliance with its legal and regulatory obligations to ensure that sales or transfers of Trust Shares, particularly Shares constituting "restricted securities," do not violate applicable law.

11.  Specifically, Grayscale cannot facilitate the resale or transfer of "restricted securities" within the meaning of Rule 144(a)(3) promulgated under the Securities Act except in transactions registered under the Securities Act or pursuant to an exemption from such registration requirements. To ensure that Trust Shares are only transferred in conformity with the securities laws and the provisions of the applicable Trust Agreements, any Trust Shares that constitute "restricted securities" bear a restrictive legend to that effect. Before such shares can be freely transferred, the legend must be removed based on a determination by Grayscale, with the assistance of counsel, that removal is appropriate and complies with applicable law.[6] In determining whether to grant approval, Grayscale (and its counsel) specifically examines whether the conditions of Rule 144, including the requisite holding period thereunder (generally, a minimum of six months), have been met. If the seller is or has been at any time within the last three months an affiliate of the issuer of the securities (i.e., GBTC, ETHE, or ETCG in the case of the Trust Shares), then the seller must comply with (and make representations to Grayscale regarding its compliance with)

---

[6] As the SEC has explained in an "investor publication" on its website, when an investor holds restricted securities, "the transfer agent won't remove the legend unless [the investor has] obtained the consent of the issuer—usually in the form of an opinion letter from the issuer's counsel—that the restrictive legend can be removed," and "[r]emoval of a legend is a matter solely in the discretion of the issuer of the securities." *See* U.S. Sec. & Exch. Comm'n, *Rule 144: Selling Restricted and Control Securities* (Jan. 16, 2013), https://www.sec.gov/reportspubs/investor-publications/investorpubsrule144.

the additional conditions of Rule 144, including volume limitations and manner-of-sale requirements, among others.

12. To permit Grayscale to make the relevant determinations before a sale or transfer is made, Section 4.2 of the Trust Agreements dictates that any shares constituting restricted securities "may not be resold, pledged or otherwise transferred without the prior written consent of the Sponsor, which it may withhold in its sole discretion." These Transfer Consent Rights provide Grayscale with the means to engage in the inquiry and approval process outlined above and to confirm that the shares are not being transferred in violation of law. Without the Transfer Consent Rights and the attendant ability to determine whether to remove any restrictive legends to facilitate sales or transfers by investors in Trust Shares, Grayscale could face civil liability for aiding and abetting violations of Section 5 of the Securities Act in the event investors engage in sales or transfers that do not comply with Rule 144 or other applicable laws. Additionally, Grayscale could be subject to potential criminal liability under Section 24 of the Securities Act.

13. Notably, Grayscale understands that the Debtors hold millions of Trust Shares constituting "restricted securities." Indeed, nearly 5 million ETHE Shares and 3 million ETCG Shares acquired by Debtor Genesis Global Capital, LLC in or about January 2024 from Digital Currency Group, Inc. ("DCG") and DCG International Investments, Ltd. (both of which are "affiliates" of the issuer of ETHE Shares and ETCG Shares) are "restricted securities" within the meaning of Rule 144(a)(3). Those shares are "[s]ecurities acquired directly . . . from an affiliate of the issuer, in a transaction . . . not involving any public offering." *See* Rule 144(a)(3)(i). Thus, those ETHE Shares and ETCG Shares may not be resold except in transactions registered under the Securities Act or pursuant to an exemption from the registration requirements.

7

14. Likewise, Grayscale understands that the Debtors currently hold nearly 12 million GBTC Shares that bear restrictive legends and constitute restricted securities.

15. Given that the Debtors hold millions of Trust Shares that are restricted securities, Grayscale must retain its Transfer Consent Rights so that it can make determinations about, among other things, whether (a) to remove the restrictive legends; (b) the requisite holding period under Rule 144 has been satisfied; and (c) to the extent the Debtors are affiliates of the Trusts, the Debtors are complying with (and providing sufficient representations regarding their compliance with) other applicable conditions, including with respect to the volume and manner of sales. If the Transfer Consent Rights were abrogated, Grayscale would not be able to ensure that all sales or transfers of the Trust Assets that are the subject of the Motion comply with applicable laws and rules, and would face the risk of liability for facilitating any unlawful sales. Accordingly, the Court should reject the Debtors' request to ignore relevant securities laws and rewrite the Trust Agreements to delete Grayscale's Transfer Consent Rights.

16. We are not aware of—and the Debtors certainly have not cited—any authority for the proposition that a court can line edit the governing instrument of a Delaware statutory trust to delete provisions that the Debtors would prefer not apply. The out-of-circuit cases that Debtors cite in a strained effort to support their novel position are inapposite. *In re Shubh Hotels Pittsburgh, LLC*, 439 B.R. 637 (Bankr. W.D. Pa. 2010), involved the approval of a franchise agreement over the objection of a secured lender who was likely to benefit from the agreement and was "more than adequately protected." *Id.* at 645-46. While the court noted (without citation) that bankruptcy may "cause[] certain provisions of a loan document to be suspended," *id.* at 645, that statement does not extend to provisions in the governing instrument for a Delaware statutory

8

trust. The instant matter does not involve a loan document, and Grayscale is not a secured lender enjoying adequate protection. In short, the case is inapt.

17. The Debtors' reliance on *In re Daufuskie Island Properties, LLC*, 431 B.R. 626 (Bankr. S.C. 2010), is equally unavailing. In that case, the court permitted property to be sold free and clear of a restrictive covenant on the grounds that non-bankruptcy law permitted the sale of the property free and clear of that interest. *See id.* at 643-45 (citing 11 U.S.C. § 363(f)(1)). Specifically, the court determined that South Carolina law supported a finding in that "very unusual case" that the restrictive covenant applicable to a piece of land was unenforceable under the "doctrine of changed conditions or changed circumstances." *Id.* at 644. That state-law doctrine permits the annulment of a restrictive covenant when there has been such a significant change "with regard to the servient property" that the covenant has been rendered "valueless to the covenantee and oppressive and unreasonable as to the covenantor." *Id.* The court found that "a changed condition exist[ed]" and "[s]imply no purpose would be served by permitting the restrictive covenant to continue." *Id.* at 645. The circumstances in that case are nothing like those presented here, where the provisions establishing Grayscale's Transfer Consent Rights are critical to its ability to ensure compliance with applicable laws, including federal securities laws. And there is no state-law basis for rewriting the Trust Agreements to excise the provisions clearly and unequivocally establishing the Transfer Consent Rights. To the contrary, it is a fundamental principle of contract law, routinely recognized and applied by this Court, that courts should not rewrite a contract by adding or deleting terms. *E.g.*, *In re Adelphia Commc'ns Corp.*, 638 B.R. 506, 515 (Bankr. S.D.N.Y. 2022) (citing and quoting authorities); *In re SE Opportunity Fund*, Case No. 11-14970 (SHL), 2015 WL 9315563, at *5 (Dec. 22, 2015) (explaining that "[r]ewriting [a] contract . . . is antithetical to the time-honored contract interpretation canons").

**Conclusion**

For the foregoing reasons, Grayscale respectfully requests that the Court deny that portion of the Motion seeking to abrogate Grayscale's Consent Rights and the Authorized Participant Requirements so that Grayscale can undertake its standard and customary process for ensuring that sales or transfers of Trust Assets are effectuated in compliance with applicable laws, including federal and state securities laws.

Dated:   February 9, 2024
         New York, New York

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

By:   /s/ Benjamin S. Kaminetzky
         Benjamin S. Kaminetzky

Benjamin S. Kaminetzky
Brett M. McMahon
Jacquelyn S. Knudson
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
ben.kaminetzky@davispolk.com
brett.mcmahon@davispolk.com
jacquelyn.swanner@davispolk.com

*Counsel for Grayscale Investments, LLC*