WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jeffrey D. Saferstein
Jessica Liou
Furqaan Siddiqui

*Attorneys for Digital Currency Group, Inc.*
*and DCG International Investments Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*, | Case No. 23-10063 (SHL) |
| Debtors.[1] | Jointly Administered |

**DIGITAL CURRENCY GROUP, INC.'S AND DCG**
**INTERNATIONAL INVESTMENTS LTD.'S OBJECTION AND**
**RESERVATION OF RIGHTS TO DEBTORS' MOTION SEEKING**
**ENTRY OF AN ORDER AUTHORIZING, BUT NOT DIRECTING,**
**(I) THE SALE OF TRUST ASSETS AND (II) GRANTING RELATED RELIEF**

Digital Currency Group, Inc. and DCG International Investments Ltd.

(collectively, "**DCG**") hereby submits this objection and reservation of rights (the "**Objection**")[2]

to the *Debtors' Motion Seeking Entry of an Order Authorizing, But Not Directing, (I) The Sale of*

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Genesis Global Holdco, LLC (8219) ("**GGH**"); Genesis Global Capital, LLC (8564) ("**GGC**"); Genesis Asia Pacific Pte. Ltd. (2164R) ("**GAP**," and collectively with GGH and GGC, the "**Debtors**"). For the purpose of these chapter 11 cases, the service address for the Debtors is 175 Greenwich St., 38th Floor, New York, NY 10007.

[2]  Unless explicitly stated otherwise, all references to DCG's positions are fully adopted by DCG International Investments Ltd.

*Trust Assets and (II) Granting Related Relief* (Docket No. 1227) (the "**Trust Assets Sale Motion**"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      As stated in the Trust Assets Sale Motion, the Trust Assets[3] are ***significant*** assets of the Debtors' Estates, which they seek to now sell on shortened notice after years of holding a majority of these assets and despite the fact that a sale of the sheer quantity of the Trust Assets at issue will pose a serious risk of value destruction.  While DCG believes that any decision on the sale of the Trust Assets should await the outcome of the hearing on the Debtors' Amended Plan, if the Court is inclined to grant the Debtors' Trust Assets Sale Motion, it should the require the hiring of a broker with expertise with these assets and any sales should be done in consultation with DCG.

2.      As of the Petition Date, the Debtors held approximately 35,939,233 GBTC Assets, with an estimated value of approximately $1.38 billion as of January 30, 2024.  As of February 2, 2024, the Debtors also hold (i) 8,717,520 of ETHE Assets, with an estimated value of approximately $170 million as of January 30, 2024, and (ii) 2,970,892 of ETCG Assets worth approximately $38 million as of January 30, 2024.[4]  In total, the Trust Assets the Debtors seek to sell through the Trust Assets Sale Motion, on seven (7) days' notice, equals approximately $1.6 billion.

---

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the Trust Assets Sale Motion.

[4] DCG notes that the Debtors have correctly stated that under the Partial Repayment Agreement dated September 12, 2023 between DCG Parties and GGC (as amended, the "**PRA**") multiple security interests were granted to GGC from the DCG Parties over certain ETHE Shares and ETCG Shares. However, the Debtors dispute that the DCG Parties have satisfied their obligations under the PRA through their transfer to GGC all of their rights, title and interest in the ETHE Assets and the ETCG Assets.  For the avoidance of doubt, the PRA is clear that the DCG Parties are entitled to transfer the ETHE Assets and the ETCG Assets to GGC to pay down the undisputed obligations owing to GGC as set forth in the PRA, which the DCG Parties have done as of January 5, 2024.

3.      Given the significant value of the Trust Assets and the uncertainty surrounding the

Debtors' Amended Plan, DCG believes the Trust Assets Sale Motion should be adjourned until

after the Court has ruled on the Amended Plan, which DCG believes in patently unconfirmable for

the plethora of issues as identified in *Digital Currency Group, Inc. and DCG International

Investments LTD's Objection to Confirmation of the Debtors' Amended Plan* (Docket No. 1257)

(the "**DCG Plan Objection**"), including but not limited to, the Debtors' failure to comply with

Bankruptcy Code sections 502(b), 1129(a)(1), 1229(a)(3), 1129(a)(7).

### OBJECTION

4.      The Debtors' stated reasons for expediently selling the Trust Assets at this juncture

of the chapter 11 cases – after years of holding the overwhelming majority of the Trust Assets in

the Estates – have no merit.  Given the uncertainty around the Debtors' Amended Plan and when

distributions to creditors might actually occur, there appears to be no immediate need for the relief

requested by the Debtors and DCG requests that the hearing on this motion be adjourned until after

this Court rules on the Debtors' Amended Plan when there will be more clarity on who is to receive

residual value from the Estates – and therefore more clarity on who will mostly be affected thereby.

5.      Despite the Debtors' arduous efforts to exclude DCG from receiving any recovery

in these Chapter 11 Cases, DCG hopes it is aligned with the Debtors' on one aspect: the

maximization of value of the Debtors' Estates.  The Trust Assets Sale Guidelines–and overall

timing of the sale–as set forth in the Trust Assets Sale Motion however, do not safeguard this

objective.  Any potential loss from not optimizing the sale of these shares may fall directly on

DCG.  Accordingly, if the Trust Assets Sale Motion is granted, the Debtors should be *required,*

not just authorized, to hire a broker with relevant specialized expertise to assist with the sale and

DCG should be given consultation rights over any potential sale transactions, as the Committee and Ad Hoc Group have, including rights with respect to the timing and method of such sales.

## RELIEF REQUESTED

6.      DCG hereby requests that this Court adjourn the sale of the Trust Assets Sale Motion until a plan is confirmed.

7.      Alternatively, if the Trust Assets Sale Motion is granted, DCG respectfully requests this Court require that (i) the Debtors hire a broker (in consultation with DCG) with specific expertise with these types of assets and (ii) DCG shall have the same consultation rights as the Committee and Ad Hoc Group with respect to the sale.

## RESERVATION OF RIGHTS

8.      DCG will attempt to work with the Debtors to resolve their concerns prior to the Trust Assets Sale Motion Hearing, however, given the unreasonable time period in which the Debtors have sought the relief as set forth in the Trust Assets Sale Motion, DCG reserves all rights, claims, defenses, and remedies, including, without limitation, to supplement and amend this Objection, to raise further and other objections, to introduce evidence prior to or at any hearing regarding the Trust Assets Sale Motion in the event DCG's objections are not resolved prior to such hearing and to seek to introduce documents or other relevant information in support of the positions set forth in this Objection.

[*Remainder of the Page Intentionally Left Blank*]

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, DCG respectfully requests that the Court

not grant the Trust Assets Sale Motion until such time that the Debtors address the concerns as

described herein and grant such further relief as the Court may deem appropriate.

Dated: February 9, 2024                 Respectfully submitted,
      New York, New York

*/s/ Jeffrey D. Saferstein*
Jeffrey D. Saferstein
Jessica Liou
Furqaan Siddiqui
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310-8000
Fax:  (212) 310-8007
jeffrey.saferstein@weil.com
jessica.liou@weil.com
furqaan.siddiqui@weil.com

*Attorneys for Digital Currency Group, Inc.*
*and DCG International Investments Ltd.*