CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' REPLY SEEKING ENTRY**
**OF AN ORDER AUTHORIZING, BUT NOT DIRECTING, (I)**
**THE SALE OF TRUST ASSETS AND (II) GRANTING RELATED RELIEF**

Genesis Global Holdco, LLC ("Holdco"), Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific Pte Ltd. ("GAP"), as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors," and these cases, collectively, the "Chapter 11 Cases") hereby submit this reply (the "Reply") in opposition to (i) *Digital Currency Group, Inc.'s and DCG International Investment Ltd.'s Objection and Reservation of Rights to Debtors' Motion Seeking Entry of an Order Authorizing, but Not Directing (I) the Sale of Trust Assets and (II)*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10003.

*Granting Related Relief*, ECF No. 1285 (the "DCG Objection") and (ii) *Grayscale Investments, LLC's Limited Objection to Debtors' Motion Seeking Entry of an Order Authorizing, But Not Directing, (I) The Sale of Trust Assets and (II) Granting Related Relief*, ECF No. 1283 (the "Grayscale Objection" and, together with the DCG Objection, the "Objections"), and in further support of the *Debtors' Motion Seeking Entry of an Order Authorizing But Not Directing (I) The Sale of Trust Assets and (II) Granting Related Relief*, ECF No. 1227 (the "Motion");[2] and upon the *Declaration of Michael DiYanni in Support of the Debtors' Motion Seeking Entry of an Order Authorizing, But Not Directing, (I) the Sale of Trust Assets and (II) Granting Related Relief*, ECF No. 1227, Ex. A (the "DiYanni Declaration"), attached as Exhibit A to the Motion, and (i) the *Supplemental Declaration of Michael DiYanni in Support of the Debtors' Motion Seeking Entry of an Order Authorizing, But Not Directing, (I) The Sale of Trust Assets and (II) Granting Related Relief (*the "Supplemental DiYanni Declaration"), (ii) the *Declaration of Christian Ribeiro DiYanni in Support of the Debtors' Motion Seeking Entry of an Order Authorizing, But Not Directing, (I) The Sale of Trust Assets and (II) Granting Related Relief* (the "Ribeiro Declaration"), and (iii) the *Notice of Revised Proposed Order Granting Debtors' Motion Seeking Entry of an Order (I) Authorizing, But Not Directing, the Sale of Trust Assets and (II) Granting Related Relief* (the "Revised Proposed Order"), each filed contemporaneously herewith and incorporated herein by reference, and respectfully state as follows:

**PRELIMINARY STATEMENT**

1. With the support of the Creditors Committee and the Ad Hoc Group, the Debtors are seeking to monetize more than $1 billion in Trust Assets in light of recent events such as the conversion of the GBTC Trust to an Exchange Traded Fund and the pendency of

---

[2] Capitalized terms not otherwise defined in this Reply have the meanings ascribed to them in the Motion.

2

distributions under the Debtors' chapter 11 plan. The only parties to object to the Debtors' request are DCG and Grayscale, both of which would profit substantially by preventing, or at least delaying, the sale or redemption of the Trust Assets as a result of above-market management fees they charge the Trusts. Because of these above market fees, the Debtors' interests in the assets underlying the Trusts (e.g., BTC, ETHE) are losing value. Unless the Debtors are permitted to redeem or transfer the Trust Assets, they will be forced to continue transferring out-sized value to DCG, even as DCG continues litigating against the estates to artificially limit creditors' recovery and evade DCG's obligations to repay the Debtors. Given DCG's past and current conduct, the Debtors are concerned that unless the Court approves the Motion, DCG will make every effort to cause Grayscale to not approve of redemptions and transfers, thereby violating fundamental principles of bankruptcy law to the detriment of the Debtors' estates. Moreover, the Objections have no basis because the Debtors intend to comply with applicable securities laws, use brokers and Authorized Participants in order to transfer or redeem the Trust Assets, and otherwise make every effort to maximize value for the estates.

## REPLY

2. DCG is the parent company that acts as sole member of Grayscale Investments LLC.[3] The GBTC Trust is required to pay Grayscale, as the Sponsor, a monthly management fee that is calculated based on the net asset value of the Trust. Following the GBTC Trust's conversion to an exchange-traded fund (an "ETF"),[4] the Trust has been paying Grayscale a fee of approximately 1.5% of the Trust's net asset value annually. *See* Ribeiro Decl., Ex. 1, § 6.8(a). Using values as of February 9th, the fees attributable to the 35.9 million GBTC shares the

---

[3] *See* SEC Form 8-k for Grayscale Bitcoin Trust dated December 31, 2023 at item 8.01.

[4] *See* Ribeiro Decl. ¶ 6; *id.*, Ex. 4, GBTC 10-K, Item 8.01

Debtors currently hold is approximately $1.9 million per month.[5]  Supp. DiYanni Decl. at ¶ 4. Similar fees apply to the ETHE Trust, which carries a 2.5% annual fee amounting to approximately $431,000 in monthly fees (using February 9th prices) attributable to the Debtors' ETHE Assets.[6] Likewise, the ETCG Trust bears a 2.5% annual fee, which based on values as of February 9th, amount to approximately $133,000 in fees per month attributable to Debtors' ETCG Assets.[7] Because the Trusts pay these fees to Grayscale in the denomination of the digital asset they hold, holders of the Trust Shares bear the burden of these fees through the diminution in value of the assets held by the Trusts, which, in turn, reduces the value of the Debtors' Trust Assets.[8]  The majority of BTC ETF sponsors charge annual fees of 0.30% or below, a fraction of the 1.5% annual fee charged by Grayscale in relation to the BTC.  Supp. DiYanni Decl. ¶ 6.  Since the GBTC Conversion Event occurred on January 10, 2024, approximately 170 million GBTC Shares have been redeemed by holders.  Supp. DiYanni Decl. ¶ 7.

   3. Against this background, DCG's objections come as unsurprising.  First, DCG objected to the timing of the sale, seeking to defer any decision on permitting the Debtors to monetize their GBTC Shares until after learning of the outcome at a hearing on the Debtors' chapter 11 plan.  DCG Objection ¶ 4.  It is understandable that a non-fiduciary like DCG is myopically focused on preserving its dividend revenue streams, which depend on maximizing payments to Grayscale for as long as possible.  By contrast, the Debtors and the other fiduciaries that support the Motion recognize that given the large number of the GBTC Shares they hold, and

---

[5] The fee is required to be paid in BTC, but for purposes of this Motion, the Debtors have calculated the equivalent value in USD.

[6] *See* Ribeiro Decl., Ex. 2, § 6.8(a); Supp. DiYanni Decl. ¶ 5.

[7] *See* Ribeiro Decl., Ex. 3, § 6.8(a); Supp. DiYanni Decl. ¶ 5.

[8] *See* Ribeiro Decl., Ex. 1, § 6.8(a)(i); *id.*, Ex. 2, § 6.8(a)(i); *id.*, Ex. 3, § 6.8(a)(i); Supp. DiYanni Decl. ¶ 6.

the anticipated upcoming effective date of a chapter 11 plan, the Debtors need to begin the task of monetizing their GBTC Assets, particularly to ensure that they avoid diminution in the value of these assets through their liquidation. In any event, the Court has rebuffed DCG's efforts to indefinitely push off the hearing on the Motion, first by granting the motion to shorten notice with respect to the Motion, *see* ECF No. 1241, and again on the record at the February 9, 2024 status conference.

4. Second, to the extent that the DCG Objection suggests that the Debtors and DCG are not aligned in maximizing proceeds from the sales or redemptions of GBTC, nothing could be further from the truth. The Debtors, in their exercise of their fiduciary duties, share DCG's interests in conducting the sales or redemption process in a way that obtains maximum value for the benefit of the estates. Respectfully, it is DCG that has perverse incentives to have its affiliates receive as many fees for as long as possible so that DCG can collect dividends. For this same reason, DCG and Grayscale's apparent desire to maintain unfettered consent rights and the extensive consultation rights is no surprise and should be rejected. DCG can obtain updates along with all other creditors through the Debtors' periodic cash and coin reports.

5. To the extent that the DCG and Grayscale Objections suggest that either the Debtors should be required to utilize a broker, and/or that they fail to understand the contractually required Authorized Participant requirements, those objections are misplaced. First, with respect to any outright sales of the Trust Assets, the Debtors do intend to utilize a broker consistent with the authority the proposed order grants them. Supp. DiYanni Decl. ¶ 8. Second, with respect to redemptions of GBTC Shares, the Debtors understand the Redemption Procedures, which are themselves summarized in the Motion,[9] and contrary to Grayscale's contention, *see* Grayscale Obj.

---

[9] *See* Motion ¶ 5(a) ("Through its redemption program, the GBTC Trust may redeem GBTC Shares only from Authorized Participants, which are certain eligible financial institutions that have entered into a Participant

5

¶ 5, the Debtors fully intend to comply with the Redemption Procedures (except to the extent they give the Sponsor any discretionary consent rights), including the facilitation of redemptions only through Authorized Participants, who are themselves broker-dealers. Supp. DiYanni Decl. at ¶ 8. The Debtors also fully intend to comply with all applicable securities laws and regulations.

6. It is only Grayscale's unilateral and absolute ability to reject any request to transfer the Debtors' Trust Assets or to redeem their GBTC Assets for commercial or litigation-motivated reasons, unrelated to any securities or regulatory considerations, or for no reason at all, that the Debtors take issue with.[10] Particularly in light of the history between the Debtors and Grayscale's parent company, DCG,[11] the disputes pending between the Debtors and DCG and DCG's past and current attempts to ignore or evade obligations owed to the Debtors, the Debtors believe that the relief requested is not only appropriate, but necessary to avoid any potential for DCG to continue to exert undue pressure and continue to deplete the Debtors' interests in the Trust Assets. The Debtors believe that under fundamental principles of bankruptcy law, Grayscale should not be permitted to stop or delay such sale or redemption. *See* 11 U.S.C. § 363(b).

---

Agreement with the Sponsor and the Trust Agent (as defined in the GBTC Trust Agreement) and must be registered broker-dealers.").

[10] Section 5.2(b) of the GBTC Trust Agreement provides the authority for the Sponsor to reject a Redemption Order (as defined in the GBTC Trust Agreement), which provides that the "redemption of Baskets may be suspended by the Sponsor generally, or refused with respect to a particular Redemption Order . . . for any other reason at any time or from time to time." Ribeiro Decl., Ex. 1, GBTC Trust Agreement § 5.2(b).

Sections 4.2 of each of the GBTC Trust Agreement, the ETHE Trust Agreement, and the ETCG Trust Agreement provide that the Trust Shares "may not be resold, pledged or otherwise transferred without the prior written consent of the Sponsor, which it may withhold in its sole discretion for any reason or for no reason at all." *See* Ribeiro Decl., Ex. 1, GBTC Trust Agreement § 4.2; *id.*, Ex. 2, ETHE Trust Agreement § 4.2; *id.*, Ex. 3, ETCG Trust Agreement § 4.2.

[11] *See Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC, et al., Under Chapter 11 of the Bankruptcy Code*, ECF No. 1031, Section VI.F "Special Committee Investigation".

7. Lastly, in response to Grayscale's suggestion that proper service of the Motion was not provided, the Debtors respectfully direct the Court to that certain *Affidavit of Service*, ECF No. 1290, which states that the Debtors' Claims and Noticing Agent provided Grayscale with copies of the Motion by email and First Class Mail on February 2, 2024, the same day that the Motion was filed.[12]

### CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) overrule the Objections, (b) enter an order, substantially in the form as the Revised Proposed Order, (b) overrule the DCG Objection and the Grayscale Objection, and (c) grant such other and further relief as is just and proper.

Dated: February 12, 2024
New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and Debtors-in-Possession*

---

[12] While this Affidavit of Service was initially filed in redacted form, *see* ECF No. 1231, on February 5, 2024, counsel for the Debtors received an unredacted copy of the Affidavit of Service which is identical to the version filed at ECF No. 1290. In addition, on February 5, 2024, the Debtors' Claims and Noticing Agent provided Grayscale with a copy by email and First Class Mail of the *Notice of Hearing on (A) Debtors' Motion for Entry of an Order Approving a Settlement Agreement Between Genesis Global Capital, LLC and the U.S. Securities and Exchange Commission and (B) Debtors' Motion Seeking Entry of an Order Authorizing, But Not Directing, (I) the Sale of Trust Assets and (II) Granting Related Relief* scheduling the hearing on the Motion. *See Affidavit of Service*, ECF No. 1289.