UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al*.,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**SUPPLEMENTAL DECLARATION OF MICHAEL
DIYANNI IN FURTHER SUPPORT OF DEBTORS' MOTION
SEEKING ENTRY OF AN ORDER AUTHORIZING, BUT NOT DIRECTING,
(I) THE SALE OF TRUST ASSETS AND (II) GRANTING RELATED RELIEF**

I, Michael DiYanni, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Managing Director & Head of Risk Advisory at Moelis & Company LLC ("Moelis"), the Debtors' retained investment banker and capital markets advisor in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), which has its principal office at 399 Park Avenue, 5th Floor, New York, New York, 10022.

2. I incorporate by reference and direct the Court to my declaration already filed in connection with the *Debtors' Motion for an Order Authorizing, But Not Directing, (I) the Sale of Trust Assets and (II) Granting Related Relief*, ECF No. 1227 (the "Motion")[2] for information on my professional background, qualifications and experience.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

3. I submit this supplemental declaration (the "Supplemental Declaration") in further support of the Motion. Except as otherwise indicated herein, all facts set forth in this Supplemental Declaration are based upon my personal knowledge, information provided to me by the Debtors' representatives or advisors, or upon client matter records or other relevant documents kept in the ordinary course of business that were reviewed either by me or other employees at Moelis under my supervision and direction. In making this Declaration, I have relied in part on information and material that the Debtors' representatives and advisors have gathered, prepared, verified and provided to me, for my benefit, in preparing this Declaration. I am not being compensated for this testimony other than through payments received by Moelis in its capacity as financial advisor to the Debtors. If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

4. The GBTC Trust is required to pay Grayscale, as the Sponsor, a monthly management fee that is calculated based on the net asset value of the Trust. Following the GBTC Trust's conversion to an ETF, the Trust has been paying Grayscale a fee of approximately 1.5% of the Trust's net asset value annually. Using values as of February 9th, the fees attributable to the approximately 35.9 million GBTC Shares the Debtors currently hold is approximately $1.9 million per month.[3]

5. Similar fees apply to the ETHE Trust, which carries a 2.5% annual fee which, using values as of February 9th, amounts to approximately $431,000 in fees per month relating solely to the Debtors' ETHE Assets. Likewise, the ETCG Trust bears a 2.5% annual fee which based on

---

[3] The fee is required to be paid in BTC, but for purposes of this Motion, the Debtors have calculated the equivalent value in USD.

values as of February 9th, amount to approximately $133,000 in fees per month relating solely to the Debtors' ETCG Assets.

6. Because the Trusts pay these fees to Grayscale in the denomination of the digital asset they hold, holders of the Trust Shares bear the burden of these fees through the diminution in value of the assets held by the Trusts, which, in turn, reduces the value of the Debtors' Trust Assets. The majority of BTC ETF sponsors charge annual fees of 0.30% or below, a fraction of the 1.5% annual fee charged by Grayscale in relation to the BTC.

7. Since the GBTC Conversion Event occurred on January 10, 2024, approximately 170 million GBTC Shares have been redeemed by holders.

8. With respect to redemptions of GBTC shares, the Debtors fully intend to facilitate redemptions through an Authorized Participant, who are themselves broker-dealers, as the Grayscale Objection outlines. With respect to any outright sales of the Trust Assets, the Debtors do intend to utilize a broker consistent with the authority the proposed order grants them.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 12, 2024
      New York, New York

*/s/ Michael DiYanni*
Michael DiYanni
Managing Director
Moelis & Company LLC
*Investment Banker to the Debtors*