**Hearing Date: February 26, 2024 at 9:30 a.m. (prevailing ET)**
**Objection Deadline: February 20, 2024 at 4:00 p.m. (prevailing ET)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
Andrew Weaver
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF HEARING ON DEBTORS'**
**REQUEST FOR ENTRY OF AN ORDER PURSUANT TO**
**11 U.S.C. § 105 AND FED. R. BANKR. P. RULE 2004 (I) AUTHORIZING**
**THE EXAMINATION OF DIGITAL CURRENCY GROUP, INC. AND DCG**
**INTERNATIONAL INVESTMENTS, LTD. AND (II) GRANTING RELATED RELIEF**

   **PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its affiliates Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific Pte. Ltd. ("GAP"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

**PLEASE TAKE FURTHER NOTICE** that, on February 12, 2024, the Debtors filed the *Debtors' Request for Entry of an Order Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. Rule 2004 (I) Authorizing the Examination of Digital Currency Group, Inc. and DCG International Investments, Ltd. and (II) Granting Related Relief* (the "Application").

**PLEASE TAKE FURTHER NOTICE** a hearing (the "Hearing") on the Application will be held before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 on **February 26, 2024 at 9:30 a.m. (the "Hearing Date")**.

**PLEASE TAKE FURTHER NOTICE** that parties wishing to register for the Hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances. Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so by calling the following muted, listen-only number: 1-929-205-6099, Access Code: 92353761344#.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections, if any, to the Motions or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **February 20, 2024 at 4:00 p.m. (Eastern Time) (the "Objection Deadline")** and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order").

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit A to the Application, which order the Bankruptcy Court may enter with no further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application can be viewed and/or obtained (i) by accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may affect your rights. Please read the Application carefully and, if you have one available, discuss it with your attorney. (If you do not have an attorney, you should consider consulting with one.)

[*Remainder of page intentionally left blank*]

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Application, or if you want the Court to hear your position on the Application, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Application and may enter orders granting the relief requested by the Debtors.

Dated:    February 12, 2024
            New York, New York

*/s/ Sean A. O'Neal*_____
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors and*
*Debtors-in-Possession*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
Andrew Weaver
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' REQUEST FOR ENTRY OF AN ORDER PURSUANT TO
11 U.S.C. § 105 AND FED. R. BANKR. P. RULE 2004 (I) AUTHORIZING
THE EXAMINATION OF DIGITAL CURRENCY GROUP, INC. AND DCG
INTERNATIONAL INVESTMENTS, LTD. AND (II) GRANTING RELATED RELIEF**

Genesis Global Capital, LLC ("GGC") and certain of its affiliated debtors and

debtors-in-possession (collectively, the "Debtors") hereby submit this request (the "Request") for

entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"),

pursuant to section 105 of title 11 the United States Code (the "Bankruptcy Code") and Rule 2004

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

examination of Digital Currency Group, Inc. ("DCG"), DCG International Investments, Ltd. ("DCGI" and, together with DCG, the "DCG Parties") and the Non-Party Entity (as defined below).  In support of this Request, the Debtors respectfully state as follows:

## BACKGROUND RELEVANT TO THIS REQUEST

1.      On January 19, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the Southern District of New York (the "Court").  Historically, the Debtors and their non-debtor subsidiaries (collectively, the "Company") have engaged in lending, borrowing, spot trading, derivatives and custody services for digital assets and fiat currency.  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.  On February 3, 2023, a committee of unsecured creditors (the "Committee") was appointed in these cases pursuant to the *Notice of Appointment of Official Committee of Unsecured Creditors*, ECF No. 55.

2.      Debtor Genesis Global Holdco, LLC ("Holdco") is wholly owned by DCG, a corporation organized under the laws of Delaware, with a principal place of business in Connecticut.  DCG engages in venture capital investing in the digital currency market.

3.      GGC, in turn, is wholly owned by Holdco.  GGC, a private limited liability company organized under the laws of Delaware, is registered as a Money Services Business (an "MSB") with the Financial Crimes Enforcement Network ("FinCEN").  FinCEN, a bureau within the Treasury Department, has regulatory responsibilities for administering the Bank Secrecy Act and the USA PATRIOT Act, the FY2021 National Defense Authorization Act and the Corporate Transparency Act.

4.      As a registered MSB, GGC has certain obligations to adhere to Anti-Money Laundering ("AML"), Office of Foreign Assets Control ("OFAC") sanction, and Know Your Customer (KYC) regulations and obligations, which necessitate understanding both the origin and estimation of all funds processed.  As an extension of these regulatory obligations, GGC's internal policies prohibit third-party payments.  These policies are designed to minimize compliance risks, such as obscured fund origins, potential sanctions breaches, and conflicts of interests.

The DCG Loans and DCGI Loans

5.      On September 12, 2023, GGC, DCG and DCGI entered into that certain *Partial Repayment Agreement* (as may be amended from time to time, the "Partial Repayment Agreement"),[2] providing for a limited forbearance of enforcement rights by GGC in respect of the DCG Parties' obligations to GGC under that certain *Amended and Restated Master Loan Agreement* dated November 10, 2022 between GGC and DCG (the "DCG MLA") and that certain *Master Loan Agreement* dated June 21, 2019 between GGC and DCGI (the "DCGI MLA" and, together with the DCG MLA, the "MLAs").  Pursuant to the Partial Repayment Agreement, the DCG Parties made certain payments to GGC in satisfaction of certain obligations under the DCG MLA (the "DCG Loans") and the DCGI MLA (the "DCGI Loan" and, together with the DCG Loans, the "Loans").

---

[2]      A copy of the original Partial Repayment Agreement is attached as Exhibit A to the Notice of Voluntary Stay of Prosecution of Complaints against DCG and DCGI, *Genesis Global Capital, LLC v. Digital Currency Group Inc.*, 23-ap-1168 (SHL) (Bankr. S.D.N.Y. 2023) ("DCG AP"), ECF No. 4.  The original Partial Repayment Agreement was amended on November 28, 2023 by the *Amendment to Partial Repayment Agreement*, attached as Exhibit C to the *Debtors' Motion for Entry of (I) Consent Judgment Against the DCG Parties and (II) Order Authorizing, to the Extent Necessary, GGC to Take Actions in Furtherance of the Partial Repayment Agreement Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, or, in the Alternative, Bankruptcy Rule 9019(a)*, DCG AP ECF No. 9.  On December 22, 2023, this Court approved the Partial Repayment Agreement, as amended, and authorized GGC to take all actions in furtherance of the Partial Repayment Agreement.  *See* DCG AP ECF No. 19.

6.        On January 5, 2024, GGC received, three wire transfers of $189,489,046.05 as a payment of certain obligations under the DCG Loans.[3]  Of the approximately $189 million paid, $169,246,736.04 was paid by an entity not party to the Partial Repayment Agreement or to the MLAs (the "Non-Party Entity"), and with which the Company has never had any relationship or prior dealings.

7.        Accordingly, in light of various regulatory and compliance considerations, GGC sought to conduct due diligence on the Non-Party Entity.  Between January 10, 2024 and February 7, 2024, GGC made several requests for information to DCG necessary to complete this due diligence process.  While DCG provided a some of the information requested, certain critical information regarding beneficial ownership and control was not provided and remains outstanding, despite repeated requests.

8.        On January 23, 2024, counsel to the Debtors sent the DCG Parties an informal document request under Rule 2004 seeking the voluntary production of documents and information relating to the relationship between the DCG Parties and the Non-Party Entity, including any loan documentation between the two parties, and the Non-Party Entity's direct and indirect ownership (the "Prior Request").  The Debtors requested the DCG Parties produce such documents and information by January 29, 2024.

---

[3]        The same day, the DCG Parties sent GGC the *Payoff Notice* contending that this payment resulted in the payment in full of all of the DCG Parties respective obligations under the Loans.  However, as noted in GGC's letter response to the DCG Parties dated January 8, 2023, a copy of which is attached as Exhibit 4 to the *Notice of Transfer of PRA Collateral and Receipt of Payments from Digital Currency Group, Inc. and DCG International Investments, Ltd. in Connection with Obligations Subject to Turnover Actions*, DCG AP ECF No. 24, GGC disputes that the DCG Parties have repaid all Outstanding Undisputed Amounts (as defined in the Partial Repayment Agreement) under the Loans.  Nothing herein or in the Proposed Order shall constitute a waiver or otherwise affect or alter any of the rights, defenses, privileges and/or remedies that the Debtors, the Committee of Unsecured Creditors (the "UCC") or the Ad Hoc Group of Genesis Lenders (the "Ad Hoc Group") may have in connection with the Loans, the Partial Repayment Agreement or asserted in any correspondence between the DCG Parties and GGC.

## JURISDICTION AND VENUE

9.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicate for the relief requested herein is Bankruptcy Rule 2004 and section 105 of the Bankruptcy Code.

## RELIEF REQUESTED

10.     The Debtors respectfully request that the Court enter the Proposed Order attached hereto as Exhibit A, authorizing examination of the DCG Parties and the Non-Party Entity pursuant to Bankruptcy Rule 2004.

## BASIS FOR RELIEF

11.     The DCG Parties' recent actions have presented obstacles to the Debtors' standard Know-Your-Customer ("KYC") policies and procedures—specifically FinCEN's Beneficial Ownership Rule (31 CFR § 1010.230) and the USA PATRIOT Act section 326 requirements.  On February 1, 2024, the DCG Parties indicated that the Non-Party Entity did not want to share the requested Beneficial Owner or Controlling Person information.[4]  On February 7, 2024, the Debtors informed the DCG Parties that applicable law required the Debtors to have the

---

[4]      On February 10, 2024, counsel for the Debtors and the DCG Parties held a meet and confer on the Prior Request, where counsel for the DCG Parties restated their basis for objecting to information concerning the relationship between the DCG Parties and the Non-Party Entity included in their responses and objections to the Prior Request dated January 29, 2024.  With the understanding that the AML/KYC/OFAC sanctions related information would continue to proceed between business teams, the Debtors requested that the DCG Parties inform them by February 5, 2024 whether they would be willing to provide a smaller subset of documents in a show of cooperation with the Debtors' requests.  On February 5, 2024, counsel for the Debtors again restated their same basis for objecting to the requests and did not produce any documents to the Debtors.

requested information.  The same day, the DCG Parties stated that they would communicate with the Non-Party Entity and revert back.  To date, the Debtors have received no further response.  This lack of information presents a barrier to compliance with AML/KYC standards and OFAC sanctions obligations and poses risks to the Company's commitment and obligation to prevent financial crimes.  Moreover, it creates a quandary for the Debtors—whether they choose to accept the payment or return the payment back to the Non-Party Entity, they risk breaching their regulatory and compliance obligations.

12.    Accordingly, the Debtors now seek discovery pursuant to Bankruptcy Rule 2004.  Although the Debtors remain willing to meet and confer with the DCG Parties to the extent they wish to discuss specific aspects of these requests, the DCG Parties should promptly provide responsive documents to these requests in light of the importance of the issues involved.

13.    Bankruptcy Rule 2004(a) provides that on "motion of any party in interest, the court may order the examination of any entity." *See* Fed R. Bankr. P. 2004(a).  The scope of an examination sought under Rule 2004 may relate to, among other things, "the acts, conduct or property . . . of the debtor, or to any matter which may affect the administration of the debtor's estate, or. . . the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired . . . and any other matter relevant to the case or to the formulation of a plan." *See* Fed R. Bankr. P. 2004(b).  Discovery under Rule 2004 thus "is broader than discovery under the Federal Rules of Civil Procedure . . . ." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991).  "As a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)

(citation omitted); *In re Serignese*, No. 19-10724 (JLG), 2019 WL 2366424, at *2 (Bankr. S.D.N.Y. 2019). Rule 2004 is "debtor-centric and allows considerable leeway . . . provided that there is a reasonable nexus to the debtor and the administration of the debtor's case." *In re Hilsen*, No. 87-11261, 2008 WL 2945996, at *1 (Bankr. S.D.N.Y. July 25, 2008). Recognizing the broad scope of Rule 2004, courts have allowed examinations of "[a]ny third party who has a relationship with a debtor." *Id.* at *4; *see also In re China Fishery Grp. Ltd.*, No. 16-11895 (JLG), 2017 WL 3084397 at *7 (Bankr. S.D.N.Y. July 19, 2017).

14.     The party seeking discovery under Rule 2004 bears the burden of showing "good cause" for the examination it seeks. *See In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004); *In re AOG Enm't, Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016). Good cause is shown if the party demonstrates that the Rule 2004 discovery "is necessary to establish the claim of the party seeking the examination or if denial of such request would cause the examiner undue hardship or injustice." *Metiom*, 558 B.R. at 268. (quotation omitted). Once the burden of good cause is met, the bankruptcy court must then "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel*, 123 B.R. at 712.

15.     Here, the Debtors have demonstrated good cause for examination of the DCG Parties pursuant to Rule 2004. An examination of the DCG Parties and the Non-Party Entity pursuant to Rule 2004 is necessary in order for the Debtors to obtain the information necessary to comply with their AML/KYC policies and procedures and OFAC sanctions obligations.

16.     The DCG Parties' actions to date have demonstrated a clear intent to frustrate the Debtors at every turn. By directing an unknown third party to directly pay the Debtors and then obfuscating the identity of that entity and obstructing the Debtors' ability to obtain crucial

information the Debtors have a duty and obligation to obtain, the DCG Parties have presented the Debtors with considerable legal and financial expenses, as well as risks under applicable laws and regulations.

17.    The DCG Parties have objected to the information requested on the basis that the request was untimely in contravention to the Court's order approving their Disclosure Statement, ECF No. 1027, is not related to Plan confirmation discovery or because it relates to reserved claims against DCG that would be the subject of a Retained Causes of Action under the Plan.  However, the information sought is not related to issues regarding confirmation of the Debtors' Plan or related to the Retained Causes of Action (although the Debtors reserve their rights with respect to whether the DCG Parties' refusal to provide the requested information may lead to a cause of action) and these are not valid bases for refusing to provide the information the Debtors seek.

18.    The Debtors' requests are unquestionably within the scope of Rule 2004, as they deal not only with information necessary for regulatory and internal policy requirements, but also with matters relating to the "act, conduct, or property . . . of the  debtor . . . or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b).  Moreover, the information sought relates to "the course of any money or property acquired[.]" Fed. R. Bankr. P. 2004(b).  In addition to seeking KYC/AML/OFAC sanctions related information (including information concerning the identity of the Non-Party Entity, the request also seek information concerning the significant amount of indebtedness incurred by DCG as party of the Debtors' evaluation of the creditworthiness of DCG, the Debtors' largest obligor that owes the Debtors substantial amounts, including approximately $33 million arising out of the Three Arrows Capital, Ltd. obligations, more than $27 million in Late Fees and enforcement costs under the DCG MLA

and a $1.1 billion promissory note. Moreover, the Debtors have received a wire transfer from an entity for which they had no information and with which they had no prior relationship. The Debtors are both unable to continue to hold that payment and unable to return it without jeopardizing their legal or regulatory status, thereby impacting the administration of the Debtors' estates. As the Debtors approach plan confirmation, the Debtors will begin making distributions to creditors which will, too, require compliance with AML/KYC policies and procedures and OFAC sanctions obligations. The Debtors cannot be expected to ignore these obligations here with the DCG Parties and jeopardize their continued ability to make distributions to other parties.

19.    Lastly, if there were any doubt whether the Debtors' request were appropriate, Rule 2004 permits the examination of an entity relating to "any other matter relevant to the case." Fed. R. Bankr. P. 2004. Authorizing the Debtors to examine the DCG Parties and the Non-Party Entity under Rule 2004 is, therefore, eminently appropriate and necessary here solely because the requests relate to the creditworthiness of their largest obligor, a significant source of recovery under the Debtors' proposed plan. The relief requested herein is consistent with other motions routinely granted by other courts in this District. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, Case No. 02–41729 (REG) (Bankr. S.D.N.Y. Apr. 24 and May 17 2006) (ECF Nos. 10562, 10868) (motion for, and order granting, Rule 2004 discovery of certain creditors where movant contemplated pursuing a motion to designate votes under section 1126 of the Bankruptcy Code for improper solicitation); *In re Aéropostale*, Case No. 16-11275 (SHL) (Bankr. S.D.N.Y. May 4 and June 2, 2016) (ECF Nos. 25, 230) (motion for, and order granting, Rule 2004 discovery of certain creditors alleged to have engaged in inequitable conduct in contemplation of debtor moving to equitably subordinate such creditors' claims).

## **NOTICE**

20.    The Debtors have provided notice of this Request in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 112).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **NO PRIOR REQUEST**

21.    No prior request for the relief requested herein has been made to this or any other Court.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

WHEREFORE, for the reason set forth herein the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as Exhibit A and (b) grant such other and further relief as is just and proper.

Dated:    February 12, 2024
           New York, New York

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**ORDER PURSUANT TO 11 U.S.C. § 105 AND**
**FED. R. BANKR. P. RULE 2004 (I) AUTHORIZING**
**THE EXAMINATION OF DIGITAL CURRENCY GROUP, INC. AND DCG**
**INTERNATIONAL INVESTMENTS, LTD. AND (II) GRANTING RELATED RELIEF**

Upon the Request[2] of Genesis Global Capital, LLC ("GGC") and certain of its

affiliated debtors and debtors-in-possession in the above captioned cases (collectively, the

"Debtors"), for entry of an order (this "Order") authorizing the examination of Digital Currency

Group, Inc. ("DCG"), DCG International Investments, Ltd. ("DCGI" and, together with DCG, the

"DCG Parties") and the Non-Party Entity pursuant to section 105 of title 11 the United States Code

(the "Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"); and upon the First Day Declarations; and the Court having jurisdiction over

this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*

from the United States District Court for the Southern District of New York dated January 31,

2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2),

and that the Court may enter a final order consistent with Article III of the United States

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]    All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Request.

Constitution; and the Court having found that venue of this proceeding and the Request in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Request is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and the Court having found that the Debtors' notice of the Request was appropriate and no other notice need be provided; and the Court having reviewed the Request; and the Court having determined that the legal and factual bases set forth in the Request establish just cause for the relief granted herein; and all objections to the Request (if any) having been withdrawn or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

The Request is GRANTED to the extent set forth herein.

1.      The DCG Parties and the Non-Party Entity are directed to produce documents, communications, and any other materials responsive to the requests attached as Exhibit B to the Motion.  The DCG Parties and the Non-Party Entity shall respond to such document requests no later than seven days after entry of this Order.

2.      This Order is without prejudice to the rights of the Debtors to apply for any further discovery of any entity.

3.      This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Request or the implementation, interpretation or enforcement of this Order.

Dated: _____, 2024
           New York, New York

_____
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**Rule 2004 Request**

## SCHEDULE A

The definitions and instructions set forth below apply to each of the requests for production of documents and interrogatories (the "Requests").

## I.    DEFINITIONS

In addition to any terms defined with the specific Requests, the following terms shall mean the following for purposes of these requests for production of documents:

1.    The Debtors incorporate by reference herein the Uniform Definitions in Discovery Requests set out in Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York made applicable to this proceeding by Rule 7026-1 of the Local Rules.

2.    "All," "any," and "each" shall each be construed, pursuant to Local Rule 7026-1, as encompassing any and all.

3.    "And" and "or" shall be construed, pursuant to Local Rule 7026-1, either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.    "Beneficial Ownership Attestation Form" shall mean the form attached hereto as Exhibit 1.

5.    "Chapter 11 Cases" means the above-captioned jointly administered chapter 11 cases of the Debtors.

6.    "Communication" means any transmittal and/or receipt of information (in the form of facts, ideas, inquiries or otherwise), whether oral or written and whether chance, prearranged, formal or informal, and specifically includes conversations in person, telephone conversations, e-mail (including instant messages and text messages), voicemail, letters, memoranda, statements, media releases, press conferences, magazines and newspaper articles, testimony before a governmental body, and video and audio transmissions.  For the avoidance of doubt, the term

"Communication" shall include any and all electronic messages and/or conversations using text messaging and mobile device chat services, including but not limited to Microsoft Teams, Telegram, Instant Bloomberg, Bloomberg messages, BlackBerry Messenger, Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, Signal, Slack, WeChat and Snapchat.

7.    "Concerning" means concerning, reflecting, relating to, relate to, arising out of, describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, collaborating, demonstrating, identifying, referencing, discussing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising therefrom, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

8.    "Court" means the United States Bankruptcy Court for the Southern District of New York.

9.    "DCG" means Digital Currency Group, Inc.

10.    "DCG MLA" means that certain *Amended and Restated Master Loan Agreement* dated November 10, 2022 between GGC and DCG.

11.    "DCG Parties" means, collectively, DCG, DCGI, and each of their respective Affiliates and subsidiaries (excluding the Debtors and the Other Genesis Entities) and, in their capacities as such, all of their respective current and former officers and directors, principals, shareholders, members, managers, partners, employees, agents, trustee, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, and management companies.

12.    "DCGI" means DCG International Investments Ltd.

13.    "DCGI MLA" means that certain *Master Loan Agreement* dated June 21, 2019 between GGC and DCGI.

14.    "Debtor" means Genesis Global Holdco, LLC, GGC and Genesis Asia Pacific Pte. Ltd.

15.    "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure, *i.e.*, "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." A draft or non-identical copy is a separate document within the meaning of this term. For the avoidance of doubt, the term "document" shall include any and all forms of recorded communications.

16.    "GGC" means Genesis Global Capital, LLC.

17.    "[ON FILE]" means [ON FILE] and all of its predecessors, successors and assigns, parents, subsidiaries, affiliates, members and each of their respective current and former officers and directors, principals, shareholders, members, managers, partners, employees, Representatives and agents.

18.    "MLAs" means the DCG MLA and the DCGI MLA.

19.    "Person" means any natural person, association, business, group, organization, legal entity, government entity, or other entity.

20.    "Relevant Period" means the time period beginning January 1, 2023 and continuing to the date of production.

21.    "Representative" means any agent, assign, director, employee, officer, representative or any other Person acting or purporting to act on another Person's behalf, and any predecessor or successor of the foregoing.

22.    "You" or "Your" as used herein means the DCG Parties and [ON FILE] and each of the DCG Parties' and [ON FILE]'s predecessors, successors, subsidiaries, departments, divisions, including without limitation, any organization or entity that the DCG Parties or [ON FILE] control, together with all present and former directors, officers, employees, or agents.

23.    The use of the singular form of any word includes the plural and vice versa, and the use of the term "including" means including without limitation.

## II.    INSTRUCTIONS

1.    These Requests are directed to the DCG Parties and [ON FILE] and the answers are to be completed to the best of the DCG Parties' and/or [ON FILE]'S knowledge and based on the best knowledge of the DCG Parties' and/or [ON FILE]'S counsel, agents, investigators, employees, Representatives, and any other Person acting or purporting to act on the DCG Parties' or [ON FILE]'s behalf.

2.    If an objection or request for relief is made to any part of a Request, the response shall state there is an objection to the Request and the legal and factual basis for such objection. Any ground not stated in a timely objection is waived unless the Court, for good cause, excuses the failure.

3.    No part of the Requests shall be left unanswered merely because an objection is made to another part of the Requests.

4.    If You assert a claim of privilege in response to any Request, You shall indicate with specificity and particularity the basis of said claim.

5.      If You deny a Request, You shall identify and explain with particularity the reason or reasons for denial.

6.      The Requests are continuing in nature.  In accordance with Rule 26(e) of the Federal Rules of Civil Procedure, You are required promptly to serve supplemental responses if You obtain further or different information.

7.      Unless otherwise indicated, the documents hereby requested for production and inspection include all documents in Your possession, custody or control.  Without limitation of the terms "possession, custody or control" as used in the preceding sentence, a document is in Your possession, custody or control if You have actual possession or custody or the right to obtain the document or a copy thereof upon request or demand from one or more of Your independent contractors, consultants, accountants, auditors or any other Person or public or private entity that has actual possession thereof.  This includes any documents contained in any computer, mobile device, server, mainframe or other storage device (including: (i) documents on or in computer memory; (ii) documents on or in computer or network backup files; and (iii) documents which have been "deleted" or "erased" but are recoverable) whether located on-site or at an off-site facility, within Your possession, custody or control.  For the avoidance of doubt, this also includes any documents contained on any personal computer, mobile device, server, mainframe or other storage device within Your possession, regardless of whether the device is issued or owned by You.

8.      The terms "all," "any" and "each" shall be construed as encompassing all, any and each.

9.      The connectives "and," "or" and "and/or" shall be construed either disjunctively or conjunctively as necessary, in each case, to bring within the scope of these Requests all responses that might otherwise be construed to be outside their scope.

10.     The terms "include," "includes," and "including" shall be deemed to be followed by the words "without limitation."  A list following any of these terms shall be interpreted to contain illustrative examples of the types of documents responsive to the Request, but does not constitute an exclusive, all-encompassing or exhaustive listing of every type of document responsive to the Request and shall not be deemed in any way to qualify, limit or restrict the scope of the Request.

11.     The term "possession" relates to all documents, including e-mail, text messages, mobile device chats, other messaging services and any other electronically-stored information. The term "possession" also includes documents contained in Your electronic mail (e-mail), cloud-based and mobile device directories, including: (a) "deleted" documents that have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" documents, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" documents, including all subdirectories irrespective of the title of such subdirectories.

12.     The documents produced pursuant to this Request are to be either: (a) segregated and identified by the number of the Request below to which they are responsive; or (b) produced as they are maintained in the ordinary course of business.

13.     Documents shall be produced with sufficient information to identify the files or repositories in which such responsive documents are maintained in the normal course of business,

including, for example, an index, key, code, or other means of ascertaining the source of the produced documents.

14.     All documents that are produced in electronic format should be provided with: (i) Group W "tiff" images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all metadata fields associated with each electronic document.  The Debtors also request that all spreadsheets created in Microsoft Excel or similar spreadsheet program be produced in their native format.  The Debtors reserve their rights to request that other documents be produced in their native format if necessary.  The following metadata fields are also to be produced with all documents produced in electronic format:

| Field Name | Description |
|---|---|
| BEGDOC | Auto-generated number assigned to first page of document |
| ENDDOC | Auto-generated number assigned to last page of document |
| BEGATTACH | Auto-generated number assigned to first page of the parent document in a family |
| ENDATTACH | Auto-generated number assigned to last page of an attachment in a document family |
| PARENT_ID | The beginning DOCID for a parent document |
| ATTACH_IDS | The beginning DOCID for all attachments |
| ATTCOUNT | The number of attachments to an email |
| DOC_TYPE | The type of file from the header (*e.g.*, Microsoft Outlook, Excel, Word, etc.) |
| PARENT_CHILD | Vendor populated field where "P" denotes a parent document and "A" denotes an attachment |
| PAGECOUNT | The number of pages of each individual document |
| FROM | Name of the sender of an email from the "From" field in Outlook |

| | |
|---|---|
| **TO** | Recipients of an email from the "To" field in Outlook |
| **CC** | Name of persons to whom a copy of an email was sent |
| **BCC** | The name of any person blind copied on an email |
| **SUBJECT** | The text in the "Subject" line or "Re" line of an email or application file |
| **CUSTODIAN** | The name of the person from which a collection of email or application files originate |
| **AUTHOR** | The name of the author or the creator of an application file from the "Author" field |
| **DATE_SENT** | The date on which an email was sent |
| **DATE_RCVD** | The date on which an email was received |
| **DATE_LASTMOD** | The date on which an email or application file was last modified |
| **DATE_CREATED** | The date an email or application file was created |
| **TIME_ CREATED** | The time at which an email or application file was created |
| **TIME_SENT** | The time at which an email was sent |
| **TIME_RCVD** | The time at which an email was received |
| **TITLE** | The text in the "Title" field of an application file |
| **LAST_AUTHOR** | The name in the "last author" field for an application file |
| **LAST_SAVED** | The date in the "last saved" field for an application file |
| **LAST_PRINTED** | The date in the "last printed" field for an application file |
| **APPLICATION** | The name of the application that generated the native file |
| **FILEEXT** | The file name extension for each email, attachment or application file |
| **FILENAME** | The name of the application file, including extension |
| **FILESIZE** | The size of a document in bytes |
| **SOURCEFOLDER** | The full path information for email, attachments and application files beginning with the original source folder name |
| **HASHVALUE** | Output of algorithm-generated value for each individual file |

| SEARCH_HIT | The search term or terms that "hit" on a document |
|---|---|
| NATIVE_FILE | Hyperlink to the native file |

15.   Documents attached to each other shall not be separated.

16.   A document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

17.   Each requested document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules or other documents at any time affixed thereto.  If a document responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

18.   Whenever You are asked to produce a document that is deemed by You to be properly withheld from production for any reason, You shall provide a privilege log that will include listing such document by title or subject heading, date, author, person who signed the document, addressee and all recipients, and a statement of the ground(s) asserted for withholding the document, including attorney-client privilege or work product privilege.

19.   If You withhold any document on the claim of attorney-client privilege, work product doctrine or similar protection, You shall identify the privilege or protection claimed as well as each document for which such privilege or protection is claimed, together with the following information with respect to each such document:

1.   Date;

2.   Sender;

3.   Addressee;

9

    4.       Subject;

    5.       The basis on which the privilege or protection is claimed; and

    6.       The names of Persons to whom copies of any part of the document were furnished, together with an identification of their employer and their job titles.

20.     If You maintain that any document requested by the Debtors has been destroyed, You shall set forth the contents of the document, the date of its destruction, and the name of the Person who authorized its destruction.

21.     If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, such document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of the Chapter 11 Cases unless otherwise permitted by the Court.

22.     If You previously but no longer possess items responsive to a particular Request, You must specify why You no longer possess such items and the name and address of any Person or entity known or believed by You to have possession, custody or control of such items.

23.     Where an objection is made to a Request, You must clearly state all grounds upon which Your objection is based and indicate whether any responsive materials are being withheld on the basis of that objection.

24.     Terms not specifically defined herein shall be given their ordinary meanings as You understand them to be used in the trade or pursuant to ordinary usage.

25.     Wherever appropriate in these Requests, the singular form of any word includes the plural and vice versa, and the masculine form of a word shall be interpreted as feminine and vice versa.

26.     Any ambiguity in a Request shall be construed to bring within the scope of the Request all responses that otherwise could be construed to be outside of its scope.

III.    **REQUESTS FOR PRODUCTION**

Each of the below Requests is limited to the Relevant Period, unless otherwise indicated.

1.      All Documents and Communications shared among or between (i) any of the DCG Parties on the one hand, and (ii) [ON FILE] the other hand, Concerning any actual or contemplated loan or financing requests, proposals or applications by or on behalf of any of the DCG Parties.

2.      All Documents and Communications shared among or between (i) any of the DCG Parties on the one hand, and (ii) [ON FILE] on the other hand, Concerning any loan or financing facility, agreement or arrangement entered into between any of the DCG Parties and [ON FILE], including but not limited to Documents and Communications sufficient to show all agreed upon terms and conditions of any such loan or financing facility, agreement or arrangement.

3.      All Documents and Communications shared among or between any of the DCG Parties Concerning actual or contemplated loan or financing requests, proposals, or applications by or on behalf of any of the DCG Parties.

4.      All Documents and Communications shared among or between any of the DCG Parties Concerning any loan or financing facility, agreement or arrangement entered into between any of the DCG Parties and [ON FILE], including but not limited to Documents and Communications sufficient to show all agreed upon terms and conditions of any such loan or financing facility, agreement or arrangement.

5.      All Documents and Communications Concerning the relationship between any of the DCG Parties and [ON FILE].

6.      Documents sufficient to show the direct and indirect ownership and controlling parties of [ON FILE]. Specifically, sufficient information to verify the identity of any natural

persons owning greater than or equal to 10% ownership interest and any natural persons with significant control over the entity.

7.    Documents sufficient to show that the wire transfer received from [ON FILE] was truly made on account of the DCG Parties obligations and that funds were derived from legitimate sources.

## IV.    **INTERROGATORIES**

**INTERROGATORY NO. 1:**    Provide a completed Beneficial Ownership Attestation Form, including identifying the names of any beneficial owners with a 10% or greater share in [ON FILE] and the name, physical personal address, and social security number of each controlling person of [ON FILE], and with the attestation box checked, representing a certification that the information provided is complete and correct, to the best of the completing person's knowledge.