

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shl

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GENESIS GLOBAL HOLDCO, LLC

8

9         Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                   United States Bankruptcy Court

12                   300 Quarropas Street, Room 248

13                   White Plains, NY 10601

14

15                   Friday, February 9, 2024

16                   3:00 PM

17

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: UNKNOWN

1    HEARING re Status Conference re: Confirmation Hearing

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

```
 1    A P P E A R A N C E S :

 2

 3    CLEARY GOTTLIEB STEEN & HAMILTON

 4         Attorneys for Debtors

 5         One Liberty Plaza

 6         New York, NY 10006

 7

 8    BY:  SEAN A. O'NEAL, ESQ.

 9         JANE VANLARE, ESQ.

10         THOMAS KESSLER, ESQ.

11         ANDREW WEAVER, ESQ.

12

13    WHITE & CASE LLP

14         Attorneys for Official Committee of Unsecured Creditors

15         1221 Avenue of the Americas

16         New York, NY 10020-1095

17

18    BY:  CHRIS SHORE, ESQ.

19         COLIN T. WEST, ESQ.

20         PHILIP ABELSON, ESQ.

21

22

23

24

25
```

Page 4

1   PROSKAUER ROSE LLP

2         Attorneys for Ad Hoc Group

3         Eleven Times Square

4         New York, NY 10036-8299

5

6   BY:   BRIAN S. ROSEN, ESQ.

7         JORDAN SAZANT, ESQ.

8

9   WEIL, GOTSHAL & MANGES LLP

10        Attorneys for DCG

11        767 Fifth Avenue

12        New York, NY 10153

13

14  BY:   JEFFREY D. SAFERSTEIN, ESQ.

15        JONATHAN D. POLKES, ESQ.

16        CAROLINE ZALKA, ESQ.

17        JESSICA LIOU, ESQ.

18        FURQAAN SIDDIQUI, ESQ.

19

20  MCDERMOTT WILL & EMERY

21        Attorney for CCAHG

22        One Vanderbilt Avenue

23        New York, NY 10017-3852

24

25  BY:   GREER GRIFFITH, ESQ.

```
 1    WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN LLP

 2         Attorney for the New York State Attorney General

 3         1201 RXR Plaza

 4         Uniondale, NY 11556

 5

 6    BY:  THOMAS A. DRAGHI, ESQ.

 7

 8    MEDINA LAW FIRM LLC

 9         Attorney for BAO Family Holdings

10         8603 South Dixie Highway, #404

11         Miami, FL 33156

12

13    BY:  ERIC MEDINA, ESQ.

14

15    STATE OF TEXAS OFFICE OF ATTORNEY GENERAL

16         Attorneys for Texas State Securities Board and

17         Department of Banking

18         300 West 15th Street

19         Austin, TX 78701

20

21    BY:  LAYLA MILLIGAN, ESQ.

22         SEAN FLYNN, ESQ.

23

24

25
```

1    UNITED STATES SECURITIES AND EXCHANGE COMMISSION

2         Attorney for the United States Securities and Exchange

3         Commission

4         950 East Paces Ferry Road, NE, Suite 900

5         Atlanta, GA 30326

6

7    BY:  WILLIAM M. UPTEGROVE, ESQ.

8

9    HUGHES HUBBARD & REED

10        Attorney for Gemini Trust Company, LLC

11        One Battery Park Plaza

12        New York, NY 10004-1482

13

14   BY:  ANSON B. FRELINGHUYSEN, ESQ.

15

16

17

18

19

20

21

22

23

24

25

Page 7

1                    P R O C E E D I N G S

2              THE COURT:  This is Judge Sean Lane in the United

3     States Bankruptcy Court for the Southern District Of New

4     York, and we're here this afternoon for a court-scheduled

5     conference in the Genesis case.  We'll start with

6     appearances.  Let me find out who's here from the debtor.

7              MR. O'NEAL:  Your Honor, Sean O'Neal, Cleary

8     Gottlieb, on behalf of the debtors.  I'm with my colleagues

9     Jane VanLare, Tom Kessler and Andrew Weaver.

10              THE COURT:  Who's here for the committee?

11              MR. SHORE:  Good afternoon, Your Honor.  Chris

12     Shore, from White & Case.  I'm here along with my partners

13     Colin West and Phil Abelson.

14              THE COURT:  On behalf of the ad hoc group?

15              MR. ROSEN:  Your Honor, Brian Rosen, Proskauer

16     Rose.  I believe I'm going to be joined in just a minute by

17     my colleague Jordan Sazant.

18              THE COURT:  On behalf of DCG?

19              MR. SAFERSTEIN:   Good afternoon, Your Honor.

20     Jeffrey Saferstein, from Weil Gotshal & Manges.  I'm here

21     with my partners Jonathan Polkes, Caroline Zalka, Jessica

22     Liou and Furqaan Siddiqui.

23              THE COURT:  On behalf of CCAHG?

24              MS. GRIFFITH:  Good afternoon, Your Honor.  Greer

25     Griffith, from McDermott Will & Emery.

Page 8

```
 1              THE COURT:  Anyone else who wants to make an

 2      appearance who's not yet done so.

 3              MR. DRAGHI:  Good afternoon, Your Honor.  Tom

 4      Draghi, from Westerman Ball.  How have you been, sir?

 5      Counsel to the New York attorney general's office.

 6              THE COURT:  All right.  Good afternoon.  Anyone

 7      else?

 8              MR. MEDINA:  Good afternoon, Your Honor.  Eric

 9      Medina, for BAO Family Holdings.

10              THE COURT:  Good afternoon.  On behalf of Gemini?

11      I don't believe I've had Gemini's appearance.

12              MR. FRELINGHUYSEN:  Good afternoon, Your Honor.

13      Anson Frelinghuysen, Hughes Hubbard and Reid, on behalf of

14      Gemini Trust Company, LLC.

15              THE COURT:  Anyone else?

16              MS. MILLIGAN:  Good afternoon, Your Honor.  Layla

17      Milligan and my colleague Sean Flynn, with the Texas

18      attorney general's office, appearing on behalf of the Texas

19      State Securities Board and Department of Banking.

20              THE COURT:  Anyone else?

21              MR. UPTEGROVE:  Good afternoon, Your Honor.

22      William Uptegrove, on behalf of the United States Securities

23      and Exchange Commission.

24              THE COURT:  Anyone else?  All right.  So I

25      received a letter dated February 9th dealing with the amount
```

Page 9

1    of things that have been filed on proposed short notice in

2    this case to coincide with the confirmation hearing on the

3    14th and let me put a little bit of additional background

4    around this.

5            Chambers had gotten a call, a heads-up there might

6    be a pleading filed in connection with the AG's case, and

7    obviously they couldn't make that public because things

8    aren't resolved until they're resolved.  So we took it in

9    the spirit in which was offered, just to keep chambers in

10   the loop for scheduling purposes.

11           My understanding from that call was that the

12   notion was that, given the timing, that the confirmation

13   hearing would likely be pushed off.  We then received the

14   motion as well as the request to shorten time to keep

15   everything on for the 14th, and in light of the prior

16   communication, I had chambers reach out to essentially

17   inquire, saying that seemed to be at odds with what we had

18   understood, and also that it just seemed to be at odds with

19   good sense, frankly, because without seeing anything or

20   reading anything other than sort of an introductory

21   paragraph, it was pretty clear that there would be parties

22   in this case who had a view about, or may have a view about

23   the AG settlement.  There were conversations that took place

24   this morning, and then, frankly, nothing happened.

25           So as somebody who in my prior life spent a lot of

Page 10

1    time thinking about process, I understand we're going to get

2    to the substantive issues here.  But the last thing that

3    anyone should have to grapple with is due process issues.  I

4    understand there's a need in cases to move quickly.  We do

5    that, I think, fairly nimbly in this court.  But the notion

6    that we need to move everything forward at breakneck speed,

7    to continue to move things forward at breakneck speed, in

8    instances where the amount of time involved is exceedingly

9    short, it just doesn't make good sense.  It injects

10   additional problems into the process.  And regardless of who

11   wins or loses, then you have potential appeal points dealing

12   with due process issues.  That's very Machiavellian.  But

13   the main point is that it's just not the way to do business.

14          So we're not having this motion heard on the 14th.

15   It's not happening.  It shouldn't happen.  I don't know

16   who's right, who's wrong, objections, any of that.  I don't

17   know anything about the substance.  But it just doesn't make

18   good procedural sense.  I understand that people would like

19   things in the case to move forward quickly, but we've been

20   doing this case for a while now, and I'm unaware of anything

21   that justifies the speed involved, other than we have a

22   hearing date.  Well, now you don't.

23          So with that, I'm no longer asking anybody their

24   opinion about what should happen.  I'm going to tell people

25   what's going to happen, and I'll be a little less subtle in

Page 11

```
 1      the future.  So the 14th is out.  I know the normal notice

 2      period for these sorts of settlements is 21 days.  It was

 3      filed on the 8th, if I remember correctly.  I frankly don't

 4      know that we need that amount of notice involved.  I know

 5      that's what the rules normally provide for, but I do think

 6      we have highly motivated parties here.

 7              So my suggestion, and also every time I do one of

 8      these things and I clear a calendar, I put people on other

 9      days, and then I move them again.  And there is no pecking

10      order here in terms of whose rights are more or less

11      important.  In bankruptcy, everybody's, as a customer, is

12      important.  So I have days that are open on the 23rd and the

13      26th, which is a Friday and a Monday.  And so that's where

14      I'm leaning towards and working backwards towards there.

15      And to the extent we couldn't get it done in those two days,

16      I'm sure I could find time to finish up on the 27th or 28th,

17      given what I'm hearing from the parties about the ballpark

18      figures of how long things will take.

19              So that's where I am, and people can try to

20      persuade me otherwise.  And obviously, if there's some

21      legitimate reason that that doesn't work, I'm happy to hear

22      it.  But I also did spend enough time this morning spinning

23      wheels trying to sort of avoid having to get you all

24      together for a conference on this, seeing as how it's as

25      inevitable as looking and seeing the light at the other end
```

Page 12

1    of the tunnel.  But it turned out to be another train.  So

2    that's where I am.

3            So I'm happy to hear from Mr. O'Neal to start, and

4    then I'll hear from DCG and I'll hear from anybody else who

5    wishes to be heard.

6            MR. O'NEAL:  Thank you, Your Honor.  Sean O'Neal.

7    I'm hoping you can hear me well.  It's been a while since

8    I've done --

9            THE COURT:  I can hear you just fine.

10           MR. O'NEAL:  -- a court call from home.  So I

11   apologize.  We agree with you that the attorney general

12   stipulation and confirmation should be heard at the same

13   time.  And I think we had received that word from chambers.

14   And we've been in the process of trying to identify dates

15   that lawyers and witnesses would be available and so

16   apologize for the confusion and miscommunication there.  But

17   that was certainly something we were trying to do.

18   Obviously, the creditors are sensitive to any delay and we

19   were trying to see if we could continue to achieve the

20   deadline.  And we've heard you loud and clear.  I think the

21   23rd and the 26th are actually dates that we had circled

22   around as dates that could work.  We may need another day,

23   though.  We had three days before and things haven't --

24           THE COURT:  Yeah.  No, I figured --

25           MR. O'NEAL:  Yeah.

1          THE COURT:  -- if we work with those days, then I

2     can try to clear the 27th or the 28th off --

3          MR. O'NEAL:  Yeah.

4          THE COURT:  -- after 11:00 and use essentially the

5     rest of one of those days.

6          MR. O'NEAL:  Okay.

7          THE COURT:  My inclination would be to use the

8     27th, and then that way we'd have the 28th in the afternoon

9     if we needed.

10          MR. O'NEAL:  And Your Honor, if I could, I mean, I

11     think it may be less problematic for some of the schedules

12     of the lawyers involved.  We will not have everybody on

13     board for the 23rd, two of our key senior lawyers who are

14     managing the process.  And then I think we also have a

15     problem with a witness, one of our witnesses on the 23rd.

16     So if we could, Your Honor, if we could suggest the 26th,

17     27th and then the 28th, I think that would work out better

18     because then our two senior lawyers who have been --

19          THE COURT:  Well, every time I use the 27th and

20     the 28th, I have to move things.

21          MR. O'NEAL:  Yeah.

22          THE COURT:  And I've already moved things.

23          MR. O'NEAL:  Understood.

24          THE COURT:  And so that's the problem.  So I'm

25     amenable to sequencing things.  It's a bench proceeding,

1    after all.  So we don't have to worry about shuttling a jury

2    in and out or any of those logistical things.  So if people

3    want to take things out of order, as long as people

4    understand what's happening on what day, so that people can

5    appropriately prepare.  But that seems to be a logistical

6    problem that can be solved.  So that would be my thought.

7    If somebody is the person for a particular witness and isn't

8    around the 23rd, we could do that witness on the 26th, but

9    we could hopefully make some hay on the 23rd.  So if we

10   wanted to do openings, some witnesses, and if there are

11   things that we can't do on the 23rd or that you'd ask not to

12   do, I'm sure we can work around that.

13            MR. O'NEAL:  Understood, Your Honor.  And I think

14   we could work with that schedule.  I'm looking to my

15   colleague, Jane VanLare, who seems to be nodding her head,

16   but I'll defer to her.

17            MS. VANLARE:  Thank you.  I think we can

18   (indiscernible) --

19            THE COURT:  All right, and the idea would be if

20   there's a particular order for things, that you circulate it

21   among parties so everybody else knows what they need to be

22   ready for and what they don't.

23            MR. O'NEAL:  Yes.

24            THE COURT:  But frankly, that's no different than

25   any other trial in terms of understanding who's up.

1            MR. O'NEAL:  And Your Honor, just to avoid any

2    kind of confusion or otherwise, is there any guidance that

3    Your Honor would want to give us?  So, for example, we could

4    try to put the New York attorney general stipulation on the

5    23rd.  That might work out better in some ways, and then we

6    would do witness --

7            THE COURT:  Well, this is where --

8            MR. O'NEAL:  -- or we could all combine it in a

9    single kind of bowl of soup, as they say, whatever your

10   preference is.

11           THE COURT:  So this is probably where me sticking

12   my nose in is not a good idea because it's really driven by

13   your schedules.  My thought is I want to give you court time

14   and you'll figure out how to appropriately use it.

15           MR. O'NEAL:  Understood.

16           THE COURT:  And so what I might do after we finish

17   talking is for me to get off the phone and ask you all to

18   stay on to try to maybe work out some of those logistics.

19   But let me do this.  Let me first circle the room about the

20   general dates, proposals first, and then we can start

21   talking about the specifics.  So let me hear from DGC --

22   DCG.  Excuse me.

23           MR. SAFERSTEIN:  Good afternoon, Your Honor.

24   Again, Jeffrey Saferstein, from Weil Gotshal & Manges.  Your

25   Honor, if you're proposing to start a hearing for the New

Page 16

1    York attorney general motion on the 23rd, we don't think

2    that that's enough time.  The motion seeks to --

3    essentially, the settlement seeks to take all of the excess

4    value of the estate and turn it over to the New York

5    attorney general's office.  We are going to need discovery.

6    We're going to want to know what went into this settlement.

7    We're going to want to depose the special committee members.

8    This is not a settlement of $20 million or 50.  This could

9    be -- if we're correct, in connection with our objections to

10   the plan, this could be a billion-dollar settlement or more.

11   And so to do it on -- I'm just counting days now -- 14 days

12   from now to start is just not enough time.  And I think with

13   respect to due process, we're going to need to have

14   discovery in connection with this.

15               THE COURT:  All right.  Let me hear from the

16   committee.

17               MR. SHORE:  Good afternoon, Your Honor.  I'm

18   frantically getting texts in from my team about the 23rd may

19   be a problem.  We'll figure out something.  We need to get

20   lawyers and the witness scheduled in that time, and we can

21   hang on the phone and answer.  But I do want to respond

22   because, not just to what Mr. Saferstein said, but what he

23   said in his letter regarding breaches of fiduciary duty and

24   the like.  I'd like to explain why the committee felt

25   comfortable going forward with the confirmation hearing

Page 17

1    without the AG settlement.  For all the talk of Section

2    502(b) of the code in the papers, everyone seems to be

3    forgetting about 502(a).  Each of the settlements that is

4    before the court that is outlined in Mr. Saferstein's letter

5    are the subject of proofs of claim filed against the

6    debtors.

7              So, for example, the New York AG filed a proof of

8    claim against each of the debtors seeking that amount, the

9    amount necessary to pay -- to assure that creditors with

10   claims against the debtors get their full contractual

11   rights, what Mr. Saferstein calls the surplus.  Nobody has

12   objected to those claims, not the least of which DCG has

13   not.  In effect, I mentioned that to Mr. Saferstein a month

14   ago, that if they were going to take the --

15             THE COURT:  No, I -- well, let me -- let me just -

16   - let me just cut this off, because we might end up segueing

17   to a much longer discussion that isn't the purpose for

18   today.  I'm not buying the notion that this has all come out

19   of the sky and it's a new, entirely new issue and that

20   nobody has any notice of the fact that there's a claim by

21   the New York attorney general's office and that it's on the

22   record and that, as the claimant, they are currently without

23   objection and therefore share in the recovery as an

24   unsecured creditor.  What my concern is that the settlement

25   has been much discussed in the case, and therefore it's a

Page 18

1    significant event, and without needing to put too fine a

2    point on it, people should have time to respond to it.  But

3    I don't sort of understand this to be something -- the

4    settlement may be something that's new, but the attorney

5    general's claim is not.  So I get that.  I get that.

6              So my problem is the sheer optics of five or six

7    days is just terrible.  And so it's just -- that's just not

8    appropriate.  And people need to have a chance to address

9    it.  And there's discovery.  You know, Chrysler was done in

10   30 days.  So people can act quickly, but five days is nuts

11   and I just don't think is appropriate, and it sends the

12   wrong message to everybody.

13             Also, frankly, I've got to process this and get

14   information, get up to speed.  You all know a lot more about

15   this than I do, and if I don't have time to do that, you may

16   get all your evidence in and all your argument in, and I'll

17   be spending the time afterwards to try to sort through it.

18   So there's a lot of reasons for pumping the brakes.  So

19   anything else from the committee?

20             MR. SHORE:  Just to be clear, Your Honor, you want

21   to move the confirmation hearing.  We have no problem moving

22   the confirmation hearing.  What I'm trying to say is there

23   should be no slippage because of the hearing of the New York

24   attorney general settlement because of DCG's purported need

25   to take months of discovery.  This can be done quickly.  I

 1   agree with you, and we should just get it done.

 2          THE COURT:  All right.  Let me hear from the ad

 3   hoc group.

 4          MR. ROSEN:  Thank you very much, Your Honor.

 5   Brian Rosen, Proskauer Rosen.  I apologize for the dress

 6   code for this afternoon.  It was a little quick.

 7          THE COURT:  Well, it's a sad situation when even

 8   Friday afternoon isn't safe.  But we do the best we can.

 9   It's fine.

10          MR. ROSEN:  Thank you, Your Honor.  On behalf of

11   the ad hoc committee, we obviously are very supportive of

12   where we're going here.  We have no problem if the court

13   wants to move the confirmation hearing and the corresponding

14   hearings.  Like Mr. Shore, we just don't believe that

15   significant discovery needs to be undertaken here.  If Mr.

16   Saferstein wants to take the deposition or some additional

17   discovery of the special committee, he's certainly able to

18   do that.  And I'm sure that the special committee will be

19   very expeditious in their response and their availability of

20   the appropriate person.  I can't imagine any more discovery

21   that would be necessary.  So we're fine, Your Honor, going

22   forward on the 23rd, if that makes sense for other people,

23   and we'll certainly be available the 26th, 27th and 28th.

24          THE COURT:  All right.  With that, let me hear

25   from CCAHG.

Page 20

```
1              MS. GRIFFITH:  Good afternoon, Your Honor.  We
2      have no objections to moving the confirmation hearing as you
3      propose.
4              THE COURT:  All right.  Obviously we're spending a
5      lot of time talking about the New York attorney general's
6      office.  So I want to make sure to hear from them as well.
7              MR. DRAGHI:  Good afternoon, Your Honor.  Again,
8      Tom Draghi, for the record.  The New York attorney general's
9      office is also on board for the February 23, 26, 27 and 28th
10     dates.
11             THE COURT:  All right.  All right.  Anyone else
12     who wishes to chime in?
13             MR. SAFERSTEIN:  Your Honor, it's Jeff Saferstein
14     again, for DCG.  I just want to make one thing clear.  We're
15     not opposed to proceeding with the confirmation hearing on
16     Wednesday.  It's the New York attorney general's motion
17     which we have an issue with.  So just to be clear on that
18     point, we're not requesting a delay --
19             THE COURT:  Well, here's the thing.  I don't know
20     how one impacts the other, and the original sentiment that
21     was expressed to chambers is to carry them together.  And in
22     the interest of being conservative, I can see doing that.  I
23     mean, if we're going to put on -- I don't know if anyone
24     needs to put on evidence as to the settlement.  Certainly
25     there's evidence as to confirmation.  It would make no
```

Page 21

1   sense, frankly, to have those people come back twice.  And

2   so my thought is there's some efficiency to it.  And I would

3   hate to run into a roadblock or simply end up, which is even

4   more challenging, having one bleed into the other in the

5   middle of the confirmation hearing.  And then we end up

6   having a lengthy discussion about the settlement that isn't

7   even fully baked because nobody's had a chance to respond to

8   it yet.  So that just seems to inject a lot of potential

9   problems.  And so I'm not a fan of trying to just close my

10  eyes and hope it goes okay.  That doesn't seem like a good

11  plan.

12          So my thought would be to have them together and

13  that way we don't have to worry about one bleeding into the

14  other.  We're having one hearing and we'll deal with it.  On

15  that score, I didn't understand the other motions, the SEC

16  motion and the trust asset sales motion to be the thing, Mr.

17  Saferstein, that you were concerned about.  The rest of your

18  letter really focuses on the New York AG motion and that

19  settlement, which makes sense to me.  So my thought is that,

20  unless somebody has a problem, that we could get some work

21  done on the 14th in dealing with those other matters, which

22  would allow us to move forward more expeditiously on

23  whatever dates we choose for the confirmation hearing and

24  the hearing on the AG's motion.

25          MR. SAFERSTEIN:  Your Honor, again, Jeffrey

Page 22

1   Saferstein, for DCG.  In 23 minutes, we'll be filing

2   objections to both the -- to the other two motions.  We do

3   think that they're premature.  We think that they should

4   follow confirmation of the amended plan.  We think that

5   they're all wrapped together.  Certainly the SEC motion,

6   again, it provides for a claim after creditors are paid.

7   And so depending on how Your Honor comes out on the merits

8   of our objection on the plan, we think that it has a real

9   impact on DCG, or it could have a real impact on DCG.

10          So again, we think that in our objection that

11  you'll see shortly, we're asking the court to put those off

12  until after confirmation.  Again, we could do it, I guess,

13  the same day, but we think that there's no reason that those

14  need to be heard on five business days' notice and four

15  business days' notice and that --

16          THE COURT:  Well, remind me of the timing.  The

17  SEC motion and the trust asset sales motion were filed

18  earlier.

19          MR. O'NEAL:  Correct.

20          THE COURT:  So I know the New York AG motion was

21  filed.  It was the last one filed.  And that came in, I

22  think, I don't know if it's in the evening.  I don't

23  remember the exact time.  But that's the last in time.  So I

24  don't remember exactly.  One's Docker 1220 --

25          MR. O'NEAL:  Certainly.  Your Honor, for --

Page 23

1            MR. SAFERSTEIN:  Both were filed with shortened

2    notice, Your Honor.

3            MR. O'NEAL:  The GBTC sale motion, and I just

4    happened to know this, was filed on the 2nd, and initially

5    it was scheduled for a more expedited hearing.  You asked

6    for us to push it out.  We pushed it to the 14th.  So that's

7    12 days' notice.  That's the motion to sell or redeem the

8    GBTC.  That's an important aspect to us because we're paying

9    $1.7 million a month in management fees to Mr. Saferstein's

10   clients for keeping that GBTC with that particular

11   management structure.

12           So we would like to -- and certainly this is post-

13   ETF conversion.  These are valuable assets, and we would

14   very much like to redeem those at the present.  And it

15   sounds like Mr. Saferstein already has an objection teed up.

16   So it sounds like they've had sufficient time to address the

17   motion.  And the SEC motion is simply an allowance of a $21

18   million claim in respect of an enforcement action that was

19   filed by the SEC with respect to the Gemini lawsuit.  Of

20   course Mr. Saferstein's clients are also defendants in that

21   action, I believe.

22           So I think, Your Honor, we would simply like to

23   get these things resolved and not take up time at

24   confirmation, particularly with respect to the GBTC sale

25   motion.  Those are assets of the estate that we would like

Page 24

1    to monetize immediately and not have to continue paying

2    management fees to the tune of $1.7 million a month,

3    particularly where those management fees are larger than

4    other competing ETF.

5              MR. SAFERSTEIN:  Your Honor, may I respond

6    briefly?

7              THE COURT:  Yeah.

8              MR. SAFERSTEIN:  Your Honor, you'll see in our

9    motion, we actually haven't had enough time to fully address

10   the motions.  We've obviously been preparing.  We had to

11   prepare our objection to confirmation.  We've been preparing

12   for the hearing.  From our view, this was clearly all filed

13   to overwhelm us, et cetera, while we were doing all that.

14   But putting that aside, these assets have been held by the

15   debtor for well over a year, and all of a sudden now it's an

16   emergency.

17             So I don't think there's an emergency need here.

18   We'd like it to be done in accordance with the rules on

19   proper notice.  And again, we think it should be heard

20   either as part of confirmation or after confirmation.

21   There's no reason needs to be heard next week on five

22   business days' notice.

23             MR. O'NEAL:  Your Honor, the ETF conversion just

24   occurred.

25             THE COURT:  No, but this is the one that was filed

Page 25

1    -- this is the one that was filed on February 2nd.

2              MR. O'NEAL:  Yes.

3              THE COURT:  So it's not five business days'

4    notice.

5              MR. SAFERSTEIN:  Well, sorry.  They sought to have

6    it heard yesterday.

7              THE COURT:  It doesn't matter what they sought.  I

8    didn't let them do that.

9              MR. O'NEAL:  Right.  That's correct.

10              THE COURT:  So it's on for the 14th, and it was

11    filed on the 2nd.

12              MR. SAFERSTEIN:  Well, we're five business --

13              THE COURT:  We all know that there are degrees of

14    problems vis-à-vis notice, and so shortening notice is one

15    thing, the degree to which it's shortened is another.  And

16    so this doesn't, frankly, seem to impact the issues for

17    confirmation.

18              So, Mr. Saferstein, my inclination is to split the

19    baby here since the SEC settlement, although I don't think

20    it's anywhere near the magnitude of the AG's settlement,

21    does seem to raise similar issues.  Maybe that one goes at

22    confirmation because it's a similar in kind problem and

23    argument from your client's perspective.  And so probably

24    there's some efficiencies to hearing those together, whereas

25    the other one, the trust asset sales motion, seems to be

Page 26

1    distinct and to not raise those same kinds of problems.

2            MR. SAFERSTEIN:  That's fine, Your Honor.  Just to

3    clarify, I'm sorry, it was five days for our objection, so

4    sorry, I made --

5            THE COURT:  No, that's fine.  That's fine.  So my

6    inclination is to hear the trust asset sales motion on the

7    14th as scheduled, to move the SEC motion to travel

8    connection with the New York AG motion because they raise

9    similar issues from the point of view of the DCG and its

10   objection and we don't want to repeat the same kind of

11   arguments in two separate hearings.  And so with that, today

12   is the 9th.  My thought is for people to work on discovery

13   next week.  And if, Mr. Saferstein, it helps, then I'm

14   already hearing that there's some problems with the 23rd.

15   Maybe we just start this on the 26th, by your clients, two

16   weeks to do this, get their discovery and be in a position

17   to respond.  We'll talk about a deadline for filing an

18   objection.

19           My sense would be, since today's the 9th, to file

20   your objection, have it due the 21st and then have the reply

21   due the 23rd.  So if you'd have your objection due the 21st

22   at noon, reply due the 23rd at noon and then we could start

23   everything on the 26th, go the whole day until 5:00.  I

24   confess I have something I need to be on, a call at 5:00.

25   But we can start at 9:00, 9:30, whatever time works for

Page 27

1    folks.  This avoids the problem of the 23rd.  Then I will

2    ask Ms. Eubanks to work her magic and to get it so that we

3    can go ahead on the 27th and the 28th to go from starting at

4    11:00 and I can even make the morning of the 29th available.

5    I cannot make the afternoon available.

6            So if for some reason we don't get through that,

7    the full day of the 26th, the 27th starting at 11:00, the

8    28th starting at 11:00 and the morning of the 29th, then

9    we'll have to look for other dates.  I can't do the 1st.

10   I'm supposed to be at the federal judicial center.  So we

11   might have to pick another day the following week, maybe the

12   7th or 8th.  But we'll cross that bridge when we come to it.

13   So that's what I would propose.  It's very much an art of

14   splitting the baby on these things to try to keep everybody

15   equally unhappy.  And so unless somebody wants to take a run

16   at that particular schedule that we've sort of inched

17   towards, that's what we'll do.

18           MR. O'NEAL:  Your Honor, that sounds wise and

19   appropriate to us.  We are good with that.  Obviously, it's

20   what you would have us do.  I think we do have a question in

21   terms of the confirmation, the confirmation hearing being

22   the 26th, and we're thinking then that we could move the

23   reply to a different date as well so that we have better --

24           THE COURT:  Well, so let me talk to you about

25   that.

1                MR. O'NEAL:  Yeah.

2                THE COURT:  I think we've already had a discussion

3       about how some of the objections in reading them are clearly

4       a function of people not knowing what the debtor's position

5       is, issues about release, issues about exculpation, the

6       justification for the value that's going to be conveyed to

7       the unsecured creditors.  And so I'm okay with moving it

8       from 10:00 on the 12th, but I think it needs to be filed

9       really soon because I think the more that the debtor's

10      position is out there --

11               MR. O'NEAL:  Certainly.

12               THE COURT:  -- the more it gives people a chance

13      to assess it and to figure out, if not resolutions of

14      issues, certainly the narrowing of the scope of issues.  You

15      all are very good at that, but you can only do that when you

16      have the appropriate amount of information that you can make

17      assessments as to what you think you would do if you were

18      wearing the robe.

19               MR. O'NEAL:  Certainly, Your Honor.

20               THE COURT:  So my thought is, if the hearing is on

21      the 26th, what did you propose to move --

22               MR. O'NEAL:  Yeah.  I almost wanted to hear what

23      you were going to say first before I proposed it.  But

24      perhaps I'll go first.  We would suggest that the 16th,

25      which would be that Friday.  So that would be ten days

1    before the hearing.

2           THE COURT:  All right.  So if I could push that

3    back a day to the 15th, because Fridays are days that I

4    don't have hearings, he says --

5           MR. O'NEAL:  Certainly.

6           THE COURT:  -- ignoring the current circumstance.

7           MR. O'NEAL:  Yes, during a hearing, of course.

8    Yes.

9           THE COURT:  But it's a day I'm more likely to have

10   large blocks of time to work on things.  And again, I do

11   think that the additional time is helpful.  There are -- I

12   mean, I took a look at some of the objections again before

13   coming out here, and there definitely are things that the

14   additional information would be helpful.

15          MR. O'NEAL:  Certainly.  Certainly.

16          THE COURT:  So let's say the 15th by close,

17   whatever time you want, and then that way I can get up the

18   morning of the 16th all dewy eyed and enthusiastic to read

19   your pleading.  So that would be all --

20          MR. O'NEAL:  Certainly.  On that score, I think

21   our --

22          THE COURT:  And we should talk about the witness

23   schedules as well.  I know that there was a back and forth

24   about witness, the declarations as well as motions in

25   limine, with some deadlines that were exceedingly tight that

Page 30

```
 1   would seem to make sense to adjust in light of the current

 2   circumstance.  So what would you propose for the schedule

 3   for submitting witness -- the written direct for

 4   declarations for witnesses?

 5           MR. O'NEAL:  Okay.  Your Honor, just real briefly

 6   in terms of the time then on the 15th, our close of business

 7   is, I hope, later than yours.  And so I would suggest that

 8   we do that at 11:00 --

 9           THE COURT:  No, not really.  So it's fine.

10           MR. O'NEAL:  Okay.  Well, I'm sorry to hear that.

11           THE COURT:  I've filed (indiscernible) in my life.

12   I'm not trying to wreck anybody's evening, but whatever time

13   you want to file it on the 15th is fine.

14           MR. O'NEAL:  Okay.  That's what we'll do there,

15   and then I think when it comes to the witness list and these

16   mechanics, we are now out of the realm of my expertise, and

17   I'm going to turn it over to the appropriate person on our

18   team.

19           THE COURT:  All right.

20           MS. VANLARE:  Good afternoon, Your Honor.  Jane

21   VanLare, Cleary Gottlieb Steen & Hamilton, on behalf of the

22   debtors.  For the declarations, we would propose the same

23   day, the 15th.  I think that's what we had been anticipating

24   doing under the current timeline, which is to file the fact

25   declarations in conjunction with the complication
```

Page 31

1    (indiscernible) --

2           THE COURT:  All right.  So let me ask, I know that

3    CCAHG, it just rolls off the tongue, had communicated about

4    this as well.  I'm assuming the 15th would work for you.

5           MS. GRIFFITH:  Yes, Your Honor.

6           THE COURT:  All right, and so for motions in

7    limine, what did you have in mind?

8           MS. GRIFFITH:  Your Honor, your rules say five

9    days before, typically before trial.  So we would propose

10   that we be able to file it five days before the rescheduled

11   day of February 26th.

12          THE COURT:  So that would be the close of business

13   on the 21st.  Would that work for you?

14          MS. GRIFFITH:  Yes, Your Honor.

15          THE COURT:  All right.  All right, and we'll use

16   those deadlines for anyone else who's filing declarations or

17   would file motions in limine.  I will say just in terms of

18   trying to figure out the sequence of events, motions in

19   limine, I tend to deal with them at the time I'm hearing

20   from the witness because they're often important to put in

21   context.

22          So I wouldn't anticipate spending time at the

23   front end of the hearing on it, just because the idea would

24   be to sort of put them in context with the witnesses.  But

25   just to let you know what my practice is, I know judges

Page 32

1    handle those things in many different ways.  All right.  So

2    we're talking about the 21st for that.  I think we

3    communicated with CCAHG about the witnesses, saying that the

4    rule is if, all things being equal, witnesses will testify

5    in person, and that this is subject to all the same

6    exceptions that existed pre-COVID under the applicable

7    rules.  And so I think we're having further discussions

8    about that, and we'll get back to you about that.

9            I understand no party objects -- if the court

10   thinks it's okay, then no party objects to your request to

11   have one of those witnesses by Zoom.  The one thing I will

12   say is that if someone does participate as a witness by

13   Zoom, they need to be in an appropriate spot.  I once had an

14   attorney use their phone as a hotspot for a trial during

15   COVID.

16           I am sure that this group of very fine lawyers

17   would not even think about doing something like that.  But

18   obviously you want to make sure that there's no issues in

19   terms of people not having anything in front of them, no

20   computers, no nothing and all that good stuff.  But to the

21   extent that exhibits are needed for the witness, that

22   somebody will be there to provide those to the witness.  So

23   I'm assuming that that's how you're thinking about any

24   remote testimony, Counsel?

25           MS. GRIFFITH:  Yes, Your Honor.

1          THE COURT:  All right.  All right, so with that --

2          MR. SHORE:  A few more clarifications, Your Honor,

3     if I might?

4          THE COURT:  Sure.

5          MR. SHORE:  Again, Chris Shore from White & Case,

6     on behalf of the committee.  First, the February 15th date

7     would also apply to briefs in support of confirmation, which

8     you can expect from the UCC and I think the ad hoc

9     committee.

10         THE COURT:  Correct.

11         MR. SHORE:  And then there is some debate going

12    back and forth between the teams as to whether or not those

13    briefs, and most importantly, the debtor's is subject to the

14    40-page limit or the 20-page limit?

15         THE COURT:  No, I think they would be -- so I

16    realize that debtors are responding to a number of different

17    objections, and I think people have asked us for extensions

18    of time.  Regrettably, we got those at different times,

19    which made it difficult for -- I'm trying to be fair to

20    everybody.  So I think the first one that came in was asking

21    for another extra 20 pages over 40 pages.  That seemed too

22    much.  So I'm just trying to do it so that we don't drown in

23    paper.  You all are very smart folks, and I think you can

24    say things.  At a certain point, briefs become a bit

25    unwieldy in length.  So I have no problem with 40 pages if

1   that's the brief that is being submitted by the party as

2   their statement.

3           I understand the debtors are responding to a

4   number of different briefs.  I think it makes sense for the

5   debtors to have some additional time, given that they're

6   doing that.  I think they had asked for between 70 and 100.

7   I'm not going to go to 100, but I'll go to 70, which seems

8   to be proportional to where everything is with everybody

9   else's submission.  So what's to be submitted on the 15th is

10  subject to 40-page limit, except for the debtor's, who I'm

11  going to grant 70 pages.  And again, I'm just trying to be

12  as fair as I can to folks.  So Mr. Shore, anything else?

13  You said you had two questions.  I wasn't sure if that --

14          MR. SHORE:  No.  Just the date and the page limit.

15          THE COURT:  All right.  So with that, let me ask

16  if there's anything else from any other party.

17          MR. SAFERSTEIN:  Your Honor, Jeffrey Saferstein,

18  again, from Weil Gotshal, on behalf of DCG.  Just one

19  clarification.  By moving the SEC motion to the 26th, can we

20  use the 21st as the objection deadline for that one as well?

21          THE COURT:  That seems appropriate to me.  Any

22  objection to that?

23          MR. O'NEAL:  No, Your Honor.

24          THE COURT:  All right.  Yeah.  The 21st at noon is

25  fine.

```
 1              MR. SAFERSTEIN:  Thank you.

 2              THE COURT:  All right.  Anything else from any

 3    other party?

 4              ANDREW WEAVER:  Your Honor, Andrew Weaver, Cleary

 5    Gottlieb, on behalf of the debtors.  Since we're all

 6    together and we've been talking hearing logistics, if we

 7    could just ask for a couple of clarifications now that we've

 8    moved the dates.

 9              THE COURT:  Sure.

10              MR. WEAVER:  I think it'd be helpful.  You'll be

11    happy to know that the parties have been working on joint

12    exhibits, and we're prepared to get you join exhibits for

13    next week.  I think with this extra time, we'll be able to

14    hopefully iron out any issues.  And obviously, there may be

15    additional exhibits in light of the additional items.  But

16    it'll be helpful for us to know when you would like to

17    receive hard copies.  The debtor's plan would be to submit,

18    at least as to confirmation issues, hard copies of all the

19    pleadings to you, and join exhibits, et cetera.

20              THE COURT:  I'm open to your suggestion because

21    the exhibits aren't evidence until somebody introduces them.

22    I don't look at them in advance.  I look at the written

23    directs.  So the written directs are much more important to

24    get in advance.  So if you want to send them up here on the

25    22nd, that would be fine.  And also, just, since we're
```

1    talking about logistics and how things work, again, judges

2    are different ways about these things.  My view, because

3    there's often very lengthy documents that people want to

4    introduce into evidence, is one is if it's not talked about

5    by somebody, it's not in, because the danger is for evidence

6    to be dumped on the court and that nobody really knows why

7    it's significant.  And then magically, it becomes some sort

8    of an appeal point in a sort of trial by ambush problem.

9            So I will only introduce something, allow you to

10   introduce something, accept it as evidence, if it's

11   discussed by the parties.  So it may be that people say,

12   well, Judge, we don't have a witness to talk about this, but

13   everybody agrees this is the agreement or this is the

14   document, and we just want to have the lawyer talk about it.

15   That's fine.  But the point is that I know why you're

16   introducing it, and the related point is that I will

17   consider what you identify as relevant in the document.

18           So, as you all know, we sometimes get very lengthy

19   documents, 80 pages, and people highlight a few pages, and I

20   will look at what you identify for me.  And so I do not go

21   independently searching for what I think is, to quote "My

22   Cousin Vinny," the case cracker.  You don't want me doing

23   that.  That's not how the system is supposed to work.  It

24   leads to surprises.  Surprises are not supposed to be part

25   of the system that way.  So I will look at what you identify

Page 37

1    for me as their relevant portions.  Obviously, other

2    interested parties can come up and point me to other things.

3    But again, if you don't cite to it or identify it as

4    something for me to look at and consider, I won't consider

5    it, because, again, it's not the way the adversary system is

6    supposed to work.  So, Mr. Weaver, other questions you might

7    have?

8            MR. WEAVER:  That's very helpful, Your Honor.  And

9    just to clarify, my sense is that parties will, in an

10   abundance of caution, want to have exhibits available that

11   may or may not be referred to during the hearings.  Would

12   your practice be at the end of, even after the end of

13   argument, to then admit documents into evidence?

14           THE COURT:  I'm happy to do it as we go, in terms

15   of figuring out what should be the evidentiary record,

16   because you have a witness talking about it, or it's fresh

17   in everybody's mind, and we can sort of have a sum up at the

18   end just to make sure we're all on the same page.  All trial

19   lawyers have all these habits of doing these things that

20   way.

21           So we'll make sure that we're all on the same

22   page.  But my point is just that I want to know why you're

23   introducing it.  And obviously, I understand that you may

24   introduce the whole document because it's the whole

25   document.  That's fine.  It's just that what I tend to do is

Page 38

```
 1    mark it up as you identify what you're talking about.  And

 2    then when I go back, if I need to go back, that's what I

 3    look at.

 4              MR. WEAVER:  Okay.  Understood, Your Honor.  Thank

 5    you.  And I think we just want to make sure we're all

 6    confirmed on the dates that the remaining declarations in

 7    lieu of direct will be on the 15th, and the motions in

 8    limine date is the 21st.  We just want to make sure we had

 9    that correct.

10              THE COURT:  That's what I have as well.

11              MR. WEAVER:  Okay.  Thank you, Your Honor.

12              THE COURT:  All right.  All right.  Any other

13    questions?  These are all useful.  Again, I'm not trying to

14    surprise anybody at how we'll conduct the hearing, so I'm

15    always happy to entertain any of these kinds of questions.

16    All right.  So what I think, in the interest of making sure

17    we're all on the same page, transparency for the people who

18    follow a case like this, is to put together an order that

19    memorializes the new schedule.  And I don't think the trial

20    points need to be in there, but just the deadlines and

21    things of that sort.  And if there's other things that, in

22    consultation with -- as the parties are consulting with each

23    other that you think are worthy of including in there, in

24    the interest of having just clarity, I'm happy to have you

25    included as well.  And so also, what are the records for the
```

1   deadlines are the deadlines and we know what we're doing.

2   But again, I'm happy to chat with parties about things like

3   this so that we can all do this efficiently.

4           So, one question.  I'm not sure if this is to Ms.

5   VanLare or Mr. Weaver, is I think we talked about potential

6   issues with the 23rd with counsel and/or the witnesses.  It

7   sounds like I didn't hear the same for the 26th.  So I would

8   think we would default back to our intended idea of putting

9   on very short openings and then going right to the witnesses

10  and trying to get those done on the 26th until we're

11  finished.  Does that make sense?  I mean, I understand you

12  need to talk to witnesses because they haven't heard any of

13  these dates.  But, assuming that works, is that the

14  intention?

15          MS. VANLARE:  That is our intention, yes, Your

16  Honor, subject to, as you said, just our confirmation that

17  the witnesses are available.  But that's what we would like

18  to do.

19          THE COURT:  All right.  All right.  With that, any

20  other questions, comments, concerns to be raised by any

21  party?

22          MR. O'NEAL:  Your Honor, just thank you for

23  setting up this status conference.  Having started the

24  process of herding the cats this morning, actually this

25  status conference was much more efficient.  So we greatly

Page 40

1   appreciate your taking the time and sorry to interrupt your

2   afternoon.

3            THE COURT:  No, no.  It's fine.  That's what I'm

4   here for.  I realize that there's a lot of interested

5   parties here.  And I don't lightly drag you all on short

6   notice away from whatever else you're doing.  But at a

7   certain point, the lack of clarity becomes very inefficient

8   and puts you all in a difficult spot of not knowing what the

9   process looks like.  So I'm always happy to have those

10  conversations.  And that's part of the job.  So, with that,

11  I bid you all a good rest of your Friday and weekend.  And

12  look forward to seeing the information start to come in.

13  And thank you all.

14           MR. O'NEAL:  Thank you.

15           MR. SAFERSTEIN:  Thank you, Honor.

16           (Whereupon these proceedings were concluded.)

17

18

19

20

21

22

23

24

25

Page 41

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *Sonya M. Ledanski Hyde*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 14, 2024