**Hearing Date and Time: March 19, 2024 at 11:00 A.M. (ET)**
**Objection Deadline: March 7, 2024 at 4:00 P.M. (ET)**

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

---

**THIS OBJECTION SEEKS TO DISALLOW AND
EXPUNGE CERTAIN FILED PROOFS OF CLAIM**

**PLEASE CAREFULLY REVIEW THE
ATTACHED OBJECTION AND THE ATTACHMENTS
THERETO TO DETERMINE WHETHER IT AFFECTS YOUR CLAIM(S)**

**IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT DEBTORS' COUNSEL:
DEANDRA FIKE, ESQ., DFIKE@CGSH.COM OR KATHARINE ROSS, ESQ.,
KROSS@CGSH.COM**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

### NOTICE OF HEARING ON DEBTORS' TWENTY-THIRD
### OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO CERTAIN CLAIMS
### PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)

**PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

**PLEASE TAKE FURTHER NOTICE** that February 15, 2024 the Debtors filed the *Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Twenty-Third Omnibus Objection"). A hearing (the "Hearing") on the Twenty-Third Omnibus Objection will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10610 pursuant to the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 44) (the "Case Management Order") and to the *Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related Relief* (ECF No. 498) (the "Claims Procedures Order"). The Hearing will commence on **March 19, 2024, at 11:00 a.m. (Prevailing Eastern Time)**, and will be conducted through Zoom for government. Pursuant to the Claims Procedures Order, the Debtors reserve the right to adjourn the Hearing in their sole discretion on further notice. *See* Claims Procedures Order at 3.

**PLEASE TAKE FURTHER NOTICE** that parties wishing to register for the Zoom Hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances. Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so by calling the following muted, listen-only number: 1-929-205-6099, Access Code: 92353761344#.

**PLEASE TAKE FURTHER NOTICE** that any objections or responses ("Responses"), if any, to the Twenty-Third Omnibus Objection or the relief requested therein shall be made in writing, filed with the Court no later than **March 7, 2024, at 4:00 p.m. (Prevailing Eastern Time)** (the "Response Deadline"), and served as required by the Case Management Order.[3]

**PLEASE TAKE FURTHER NOTICE** that if no Responses are timely filed and served with respect to the Twenty-Third Omnibus Objection, the Debtors may, on or after the Response Deadline, submit to the Court an order substantially in the form annexed as **Exhibit A**

---

[2]     Holdco, and its Debtor and non-Debtor subsidiaries are collectively referred to as the "Company".

[3]     See paragraph 20 of the Nineteenth Omnibus Objection regarding submission of Responses written and signed by a claimant themselves rather than by an attorney on behalf of the claimant.

to the Twenty-Third Omnibus Objection, which order the Court may enter with no further notice or opportunity to be heard.

          **PLEASE TAKE FURTHER NOTICE** copies of the Twenty-Third Omnibus Objection can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov, or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration located at One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165, at https://restructuring.ra.kroll.com/genesis or by calling +1 212 257 5450. Note that a PACER password is needed to access documents on the Court's website.

          **PLEASE TAKE FURTHER NOTICE** that the Hearing may affect your rights. Please read the Twenty-Third Omnibus Objection carefully and, if you have one available, discuss it with your attorney. (If you do not have an attorney, you should consider consulting with one.)

          **PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Twenty-Third Omnibus Objection, or if you want the Court to hear your position on the Twenty-Third Omnibus Objection, then you or your attorney must attend the Hearing. If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Twenty-Third Omnibus Objection and may enter orders granting the relief requested by the Debtors.

Dated:   February 15, 2024
         New York, New York

*/s/ Luke A. Barefoot*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' TWENTY-THIRD OMNIBUS OBJECTION
(NON-SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT
TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)**

**TO THE CLAIMANTS WHOSE CLAIMS ARE OBJECTED TO BY THIS OBJECTION (THE "TWENTY-THIRD OMNIBUS OBJECTION" OR "OBJECTION"):**

- **THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.**

- **YOU SHOULD LOCATE YOUR CLAIM(S) ON EXHIBIT 1 TO THE PROPOSED ORDER.**

- **YOUR RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND ANY FURTHER OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

**YOUR CLAIM(S) MAY BE DISALLOWED, EXPUNGED, RECLASSIFIED, REDUCED, OR OTHERWISE AFFECTED AS A RESULT OF THIS OBJECTION. THEREFORE, PLEASE READ THIS OBJECTION CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS, CONSISTENT WITH PRIOR COURT ORDERS, TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS SUBJECT TO THIS OBJECTION.**

Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors," and these cases, the "Chapter 11 Cases") hereby object to and incorporate by reference the No Liability Setoff Claims (as defined herein) listed on Exhibit 1 to the proposed order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the *Revised Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related Relief* (ECF No. 498) (the "Claims Objection Procedures Order") and seek entry of the Proposed Order disallowing and expunging the No Liability Setoff Claims. In support of this Objection, the Debtors submit the *Declaration of Paul Kinealy in Support of the Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Kinealy Declaration"), attached hereto as Exhibit B and incorporated by reference, and respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1.      Through this Objection, the Debtors seek to address certain claims asserted by claimants with whom the Debtors have mutually owing obligations outstanding, resulting in a net claim after setoff in the Debtors' favor.  As such, after accounting for the result of a setoff of the parties' mutual obligations, the claimants subject to this Objection have no claim against the Debtors.  Regardless of the valuation date that the Debtors employ, the claimants simply have no net claim as against the Debtors' estates and their claims should be expunged on that basis.[3]

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory bases for the relief requested herein are Bankruptcy Code sections 105 and 502, and Bankruptcy Rule 3007.

## BACKGROUND

### A.      The Chapter 11 Cases

3.      Holdco (together with the other Debtors and Holdco's Non-Debtor Subsidiaries, the "Company") and its non-Debtor affiliate Genesis Global Trading, Inc. ("GGT") provide

---

[2]      All capitalized terms used in this Preliminary Statement shall have the meaning ascribed to them elsewhere in the Objection.

[3]      The Debtors reserve all rights as to pursuing relief to affirmatively collect on the amounts the claimants subject to this objection owe to the estates.  Moreover, while the Debtors continue to assert that Petition Date pricing, consistent with the Setoff Principles and the Digital Asset Conversion Table, attached respectively as Exhibits E and M to the Plan Supplement, should govern, even if a more contemporaneous valuation date were employed, the claimants would still have no net claim against the Debtors' estates.  *See* Kinealy Decl. ¶ 6.

lending and borrowing, spot trading, derivatives and custody services for digital assets and fiat currency. The Debtors engaged in lending, borrowing and certain trading services, while the non-Debtor subsidiaries engaged in derivatives, custody and most of the Company's trading services. Holdco is a sister company of GGT and 100% owned by Digital Currency Group, Inc. Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of A. Derar Islim in Support of First Day Motions and in Compliance with Local Rule 1007-2* (ECF No. 17), the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (ECF No. 19) and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* (ECF No. 28) (together, the "First Day Declarations").[4]

4.       On January 19, 2023, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date") with the Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of the Related Chapter 11 Cases* (ECF No. 37). No trustee or examiner has been appointed in the Chapter 11 Cases. On February 3, 2023, an official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases pursuant to the *Notice of Appointment of Official Committee of Unsecured Creditors* (ECF No. 55).

---

[4]       Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declarations.

5.      On March 21, 2023, each Debtor filed its *Summary of Assets and Liabilities* (ECF Nos. 145, 146, and 147) and *Statement of Financial Affairs* (ECF Nos. 142, 143 (as amended by ECF No. 450), and 144) (the "Schedules" and "Statements," respectively).

6.      On April 4, 2023, the Court granted the *Order (I) Establishing Bar Dates for Submitting Proofs of Claim, (II) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (III) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (IV) Providing Certain Supplemental Relief* (ECF No. 200) (the "Bar Date Order"), which established May 22, 2023 as the general date by which most creditors have submitted their proofs of claim (the "General Bar Date").

7.      The General Bar Date passed on May 22, 2023. As of February 12, 2024, 1,463 proofs of claim have been filed against the Debtors.

8.      On November 28, 2023, the Debtors filed the *Debtors' Amended Joint Chapter 11 Plan* (as may be amended, the "Plan") (ECF No. 989). On December 29, 2023, the Debtors filed the *Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* (as may be amended, the "Plan Supplement") (ECF No. 1117), which included, among other exhibits, Exhibit E, listing certain digital assets and their U.S. Dollar equivalent as of 11:11 p.m. (prevailing Eastern time) on the Petition Date (the "Digital Asset Conversion Table"). On January 9, 2024, the Debtors filed Exhibit M to the Plan Supplement (the "Setoff Principles") (ECF No. 1144), which provided an explanation of the principles that would govern the Debtors' exercise of their setoff rights with respect to certain claims (the "Setoff Claims"), which were attached as Exhibit 1 thereto.

**B.      Relationship Between Debtors and Holders of the Setoff Claims**

9.      The Debtors' operations included lending and borrowing services for cash and certain digital assets. In the course of those operations, Debtor Genesis Global Capital, LLC

("GGC") entered into lending relationships with, among others, the holders of the Setoff Claims (the "Setoff Claimants").  As part of these lending relationships, GGC entered into certain Master Digital Currency Loan Agreements with the Setoff Claimants, with GGC as the lender and the Setoff Claimants as the borrowers, pursuant to which GGC loaned cash or digital assets to a Setoff Claimant (together with any term sheets or amendments executed pursuant thereto, the "Lender MLAs" and such amounts owed by the Setoff Claimants to GGC pursuant to the Lender MLAs, the "Claimant Obligations").  GGC and the Setoff Claimants also entered into certain Master Digital Currency Loan Agreements, with GGC as the borrower and the applicable Setoff Claimants as the lenders, pursuant to which the Settlement Claimants loaned cash or digital assets to GGC (together with any term sheets or amendments executed pursuant thereto, the "Borrower MLAs" and such amounts owed by GGC to the applicable Setoff Claimants pursuant to the Borrower MLAs, the "GGC Obligations").[5]  By virtue of the Lender MLAs and/or the Borrower MLAs, GGC and the Setoff Claimants have mutually-owed obligations.[6]  *See* Ex. B, Kinealy Decl. ¶ 5.

10.     Each of the Setoff Claimants has a Scheduled Claim (as defined below) with respect to the GGC Obligations.  Further, certain of the Setoff Claimants filed a proof of claim in the Chapter 11 Cases with respect to the GGC Obligations (collectively, the "Filed Setoff Claims"), which claims superseded the Scheduled Claim pursuant to Rule 3003(c)(4).  This Objection concerns a subset of the Setoff Claims (the "No Liability Setoff Claims," and the holders of such claims, the "No Liability Setoff Claimants") for which application of the setoff will result in (i)

---

[5]     The Lender MLAs and Borrower MLAs are in each case governed by New York law.

[6]     For the avoidance of doubt, none of the GGC Obligations, nor any of the Setoff Claims, relate to any loans whereby GGC pledged cash or digital asset collateral to secure its obligations as borrower under such loans.

complete satisfaction of the respective No Liability Setoff Claims and (ii) a net claim in favor of the Debtors (a "Net Claim").[7] *See* Ex. B, Kinealy Decl. ¶ 6.

## C.    The Claims Resolution Process

11.    In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

12.    The Debtors' Claims agent, Kroll Restructuring Administration (the "Claims Agent"), has prepared and maintains a register (the "Claims Register") of proofs of claim (each a "Proof of Claim") that were filed in these Chapter 11 Cases asserting claims against the Debtors (collectively, the "Claims," and each holder of a Claim, a "Claimant").  Pursuant to the *Stipulation and Confidentiality Agreement and Protective Order* (ECF No. 328) (the "Protective Order"), the Court's *Memorandum of Decision* (ECF No. 581) (the "Redaction Decision"), and the *Order Granting the Debtors' and the Official Committee of Unsecured Creditors' Motions for Entry of an Order Requiring the Redaction of Certain Personally Identifiable Information* (ECF No. 694) (the "Redaction Order"), much of that information is maintained under seal to protect the confidentiality of the Debtors' creditors.  The Debtors and their advisors are comprehensively reviewing and reconciling all claims, including both the claims listed on the Schedules ("Scheduled Claims") and the Claims asserted in the Proofs of Claim (including any supporting documents).  The Debtors are also comparing the Claims asserted in the Proofs of Claim with their Books and Records to determine the validity of the asserted Claims.

---

[7]    Pursuant to the Redaction Order (ECF No. 694), the names and addresses of the Setoff Claimants subject to this Objection are redacted from the publicly-filed version of Exhibit 1 to the Proposed Order and Exhibits C-J of this Objection.  Given the procedural posture, while this Objection does not seek return of or address the return of the net amount owed to the Debtors' estates, the Debtors and the Committee reserve all rights in connection therewith.

13.      The reconciliation process includes identifying particular categories of claims that may be targeted for disallowance, reduction and allowance or reclassification and allowance. To reduce the number of Claims, and to avoid improper recovery by Claimants, as well as unnecessary duplication or noise in the voting pool in respect of the Debtors' upcoming solicitation, the Debtors will continue to file omnibus objections to such categories of claims if and where warranted. This Objection is one such omnibus objection.

14.      On July 12, 2023, the Court entered the Claims Objection Procedures Order granting the Debtors relief from certain requirements of Bankruptcy Rule 3007. The Debtors submit that this Objection and the notice provided to the Claimants in connection herewith are consistent with the Claims Objection Procedures Order, the Bankruptcy Code and the Bankruptcy Rules.

## RELIEF REQUESTED

15.      For the reasons set forth below, the Debtors object to each of the No Liability Setoff Claims on the basis that a setoff of the Debtors' and No Liability Setoff Claimants' mutually-owed obligations results in the full satisfaction of No Liability Setoff Claims and a Net Claim in favor of the Debtors. Accordingly, the Debtors have no remaining liability for the No Liability Setoff Claims. By this Objection, the Debtors respectfully request that the Court enter the Proposed Order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, disallowing in full each of the No Liability Setoff Claims.

## BASIS FOR RELIEF

16.      When asserting a proof of claim against a bankruptcy estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. *See In re Avaya, Inc.*, 608 B.R. 366, 369-70 (Bankr. S.D.N.Y. 2019). Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be allowed to the extent that "such claim is unenforceable

against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C.
§ 502(b)(1).  Bankruptcy Rule 3007(d) and the Claims Objection Procedures Order permit the
Debtors to file an objection to more than one claim on non-substantive bases, including because
such claims "seek recovery of amounts for which the Debtors are not liable."  Claims Objection
Procedures Order ¶ 1(a)(iii).

17.    Courts in this district have previously disallowed and expunged claims filed against
a debtor where such debtor has determined, after a thorough review and analysis of its Books and
Records and the supporting documentation provided, it is not liable.  *See*, *e.g.*, Order, *In re LATAM
Airlines Grp. S.A.*, No. 20-11254 (JLG) (Bankr. S.D.N.Y. January 2, 2022) (ECF No. 3997); *see
also In re Sunedison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. Jan. 20, 2021) (ECF No.
6362) (disallowing and expunging no liability claims); *In re Nine West Holdings, Inc*., Case No.
18-10847 (SCC) (Bankr. S.D.N.Y. May 21, 2019) (ECF No. 1483) (same); *In re Avaya Inc.*, Case
No. 17-10089 (SMB) (Bankr. S.D.N.Y. Nov. 13, 2017) (ECF No. 1889) (same).  This Court has
also previously disallowed and expunged claims filed against the Debtors in these Chapter 11
Cases on the same basis.  *See Order Granting Debtors' Fifth Omnibus Objection (Non-
Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No
Liability)* (ECF No. 1170).

18.    Additionally, section 558 of the Bankruptcy Code preserves for a debtor's estate
"the benefit of any defense available to the debtor as against any entity other than the estate." 11
U.S.C. § 558.  Courts have interpreted Section 558 to include setoff rights.  *See, e.g.*, *In re
Westchester Structures, Inc.*, 181 B.R. 730, 739–40 (Bankr. S.D.N.Y. 1995) ("Section 558 of the
Bankruptcy Code also preserves for the benefit of the estate any right to setoff the debtor may
have."); *In re RCS Cap. Dev.*, 2013 WL 3618550 at *8 (9th Cir. B.A.P. 2013) ("The Code

preserves a debtor's right to effectuate a setoff under § 558, as it exists under state law."). Unlike a creditor's right to set off under section 553 of the Bankruptcy Code, section 558 of the Bankruptcy Code is broader and "eliminates the pre-petition/post-petition distinction and, in essence, obliterates the requirement that the mutual debts must both be pre-petition obligations." See *In re PSA, Inc.*, 277 B.R. 51, 53 (Bankr. D. Del. 2002) (citations omitted); *see also State Bank of Florence v. Miller (In re Miller)*, 459 B.R. 657, 675 n.16 (B.A.P. 6th Cir. 2011) (holding that, unlike setoff under section 553 of the Bankruptcy Code, setoff under section 558 does not require that the mutual debts both be prepetition obligations).

19.      Each of the Borrower MLAs and the Lender MLAs are governed by New York law, which provides a statutory right of setoff to debtors. *See* N.Y. Debt. & Cred. Law § 151 ("Every debtor shall have the right upon . . . the filing of a petition under . . . the federal bankruptcy act or amendments thereto . . . to set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such debtor to such creditor"); *see also In re Prudential Lines, Inc.*, 148 B.R. 730, 740-41 (Bankr. S.D.N.Y. 1992 (noting that a debtor has a setoff right upon the filing of a bankruptcy petition). In addition, debtors have a common law right of setoff under New York law. *See Official Comm. of Unsecured Creditors v. Manufacturer's and Trader's Trust Co. (In re Bennett Funding Grp., Inc.)*, 146 F.3d 136, 139 (2d Cir. 1998) ("There is also no question that New York has long recognized a common law right of setoff.").

20.      "Under New York law, to offset debts, they must be mutual." *In re Westchester Structures, Inc.*, 181 B.R. at 740 (citing *Beecher v. Petier A. Vogt Mfg.*, 227 N.Y. 468 (1920)). "Mutuality, in turn, exists when the debts and credits are in the same right and are between the same parties, standing in the same capacity." *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 101,

107 (Bankr. S.D.N.Y. 2010) (citing *Scherling v. Hellman Elec. Corp. (In re Westchester Structures)*, 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995)) (internal quotations omitted). As set forth above, the GGC Obligations and the Claimant Obligations in respect of the No Liability Setoff Claims under the Borrower MLAs and Lender MLAs satisfy the mutuality requirement of applicable New York law. In each case, GGC loaned cash or digital assets to a No Liability Setoff Claimant and GGC also borrowed cash or digital assets from the same respective No Liability Setoff Claimant.

## **OBJECTION**

21.     The Debtors and/or their advisors have reviewed the Claims Register, the No Liability Setoff Claims, and the Debtors' Books and Records. *See* Ex. B, Kinealy Decl. ¶ 4. The Debtors and/or their advisors have also reviewed the No Liability Setoff Claimants' competing loan obligations to the Debtors. *See* Ex. B, Kinealy Decl. ¶ 4. Through this review, the Debtors have determined, with the help of Alvarez and Marsal North America LLC ("A&M"), the Debtors' financial advisor, the amounts owed by the Debtors to the No Liability Setoff Claimants and the amounts owed by the No Liability Setoff Claimants to the Debtors. *See* Ex. B, Kinealy Decl. ¶ 5.

22.     The Debtors have further determined through this review of their Books and Records, and the parties' competing loan obligations, with the help of A&M, that a setoff of the parties' mutual obligations would result in the full satisfaction of No Liability Setoff Claims identified on Exhibit 1 to the Proposed Order and a Net Claim in favor of the Debtors. *See* Ex. B, Kinealy Decl. ¶ 6. Accordingly, the No Liability Setoff Claims assert Claims for which the Debtors are not liable, in light of the setoff's resulting effect.[8] *See* Ex. B, Kinealy Decl. ¶ 6. The

---

[8]     Although the Debtors do not, through this Objection, seek to effectuate the setoff, given that the Debtors are owed more than the Claimants are owed, no claim can lie against the estate. *See Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995) ("The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'").

No Liability Setoff Claims subject to this Objection are listed in <u>Exhibit 1</u> to the Proposed Order, and copies of the applicable Proofs of Claim are attached to this Objection as <u>Exhibits C-I</u>.[9]

23.     Because the Debtors have no outstanding liability with respect to the No Liability Setoff Claims as a result of the rights of setoff that eliminate any liability on the part of the Debtors, the Debtors respectfully request that the Court disallow and expunge each of the No Liability Setoff Claims in its entirety.

## SEPARATE CONTESTED MATTERS

24.     To the extent that a response is filed regarding any No Liability Setoff Claims listed in this Objection and the Debtors are unable to resolve the response, such No Liability Setoff Claims and the Objection by the Debtors to such claim asserted herein shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding this Objection shall be deemed a separate order with respect to each No Liability Setoff Claims.

## RESPONSES TO OMNIBUS OBJECTION

25.     To contest this Objection, a Claimant must file and serve a written response to this Objection (a "<u>Response</u>") so that it is received no later than **4:00 P.M.** (prevailing Eastern Time) on **March 7, 2024** (the "<u>Response Deadline</u>").  Every Response must be filed electronically with the Court on the docket of *In re Genesis Global Holdco, LLC*, Case No. 23-10063 (the "<u>Docket</u>") and served upon the following entities so that the Response is received no later than the Response Deadline, at the following addresses:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza

---

[9]     One No Liability Setoff Claim subject to this Objection is a scheduled claim reflected in the Debtors' Books and Records and does not have a corresponding Proof of Claim.  This scheduled claim is reflected in <u>Exhibit 1</u> to the Proposed Order and additional information regarding this claim can be found in GGC's Schedules.  An excerpt from GGC's Schedules reflecting the relevant Scheduled Claim is attached hereto as <u>Exhibit J</u>.

New York, New York 10006
Attn:  Sean O'Neal, Esq., Luke A. Barefoot, Esq., and Jane VanLare, Esq.
soneal@cgsh.com, lbarefoot@cgsh.com, and jvanlare@cgsh.com

-and-

Genesis Global Holdco, LLC
175 Greenwich St., 38th Fl.
New York, NY 10007
Attn: Andrew Sullivan
asullivan@genesistrading.com

-and-

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
Attn: Philip Abelson, Esq.
philip.abelson@whitecase.com

-and-

Bankruptcy Court of the Southern District of New York
Chambers of Judge Sean H. Lane
300 Quarropas Street
White Plains, NY 10610
Attn: Chambers of Judge Sean H. Lane

26.     Every Response to this Objection must contain, at minimum, the following information:

    a.          A caption identifying the name of the Bankruptcy Court, the names of the Debtors, the case number and the title of the Objection to which the Response is directed;

    b.          The name of the Claimant and description of the basis for the Claim;

    c.          The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

    d.          A short statement describing the reasons for which the Claim should not be disallowed as set forth in the Objection

    e.          Additional documentation or other evidence upon which the Claimant relies in opposing the Objection (if it was not included with the Proof of Claim previously filed with the Court);

f.      The address(es) to which the Debtors must return any reply to the Claimant's Response, if different from that presented in your Proof of Claim; and

g.      The name, address, and telephone number of the person (which may be the Claimant or its legal representative) holding ultimate authority to resolve the Claim on the Claimant's behalf.

27.     Additionally, where a Claimant sends the Court a written Response that is not signed by an attorney, and the Claimant does not file the Response on the docket, the Claimant **must** include with its Response a completed Court Communication Form (as defined, and in accordance with the requirements set forth, in the *Notice of Protocol for Written Communications to the Bankruptcy Court by Creditors*, ECF No. 1094 (the "Written Communications Protocol")) authorizing the Court to file the Response on the Court docket and acknowledging that the Claimant's name and any contact information included in the Response as well as in the Court Communication Form will be publicly available.  The Court Communication Form is attached as Exhibit A to the Written Communications Protocol.  **Failure to include a completed Court Communication Form or to consent to this acknowledgement will result in the Response not being filed on the docket or considered by the Court.**  Written Communications Protocol at 2.

28.     If any Claimant fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order disallowing or modifying the No Liability Setoff Claims, without further notice to the Claimant or a hearing.

## REPLIES TO RESPONSES

29.     The Debtors may, at their option, file and serve a reply to any Response no later than two (2) business days prior to the Hearing.

## ADJOURNMENT OF HEARING

30.     The Debtors reserve the right to adjourn the Hearing on any Responses to this Objection.  In the event that the Debtors notice such an adjournment, it will be noted on the notice

of agenda for the Hearing, and such agenda will be served on the affected Claimants by serving the person designated in the Response.

**RESERVATION OF RIGHTS**

31.    The Debtors expressly reserve the right to amend, modify or supplement this Objection.  Should the grounds of objection stated in this Objection be dismissed or overruled, the Debtors reserve the right to object to each of the No Liability Setoff Claims on any other grounds that the Debtors discover or elect to pursue.  This Objection sets out non-substantive objections to each of the No Liability Setoff Claims identified in Exhibit 1 to the Proposed Order.  The Debtors reserve their right to assert other non-substantive objections and/or one or more substantive objections to the No Liability Setoff Claims set forth on Exhibit 1 at a later time, to the extent consistent with the Claims Objection Procedures Order.

32.    Notwithstanding anything contained in this Objection or the attached exhibits, nothing herein shall be construed as a waiver of any rights that the Debtors may have to (a) commence actions, including without limitation under Chapter 5 of the Bankruptcy Code, against the Claimants subject to this Objection, (b) enforce the Debtors' rights of setoff against the Claimants relating to such avoidance actions or (c) seek disallowance pursuant to Bankruptcy Code section 502(d) of each of the Claims of the Claimants that are subject to such avoidance actions.

**NOTICE**

33.    The Debtors have provided notice of this Objection in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 44) (the "Case Management Order").  The Debtors respectfully submit that no other or further notice need be provided.

15

## <u>NO PRIOR REQUEST</u>

34.     No prior request for the relief requested herein has been made to this or any other

Court.

[*The remainder of this page is left blank intentionally*]

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein the Debtors respectfully request that this Court (a) enter the Proposed Order and (b) grant such other and further relief as is just and proper.

Dated:    February 15, 2024                    */s/ Luke A. Barefoot*
        New York, New York                    Sean A. O'Neal
                                             Luke A. Barefoot
                                             Jane VanLare
                                             Thomas S. Kessler
                                             CLEARY GOTTLIEB STEEN &
                                             HAMILTON LLP
                                               One Liberty Plaza
                                             New York, New York 10006
                                             Telephone: (212) 225-2000
                                             Facsimile: (212) 225-3999

                                             *Counsel to the Debtors*
                                             *and Debtors-in-Possession*

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

### ORDER GRANTING DEBTORS' TWENTY-THIRD OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)

Upon the *Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Objection")[2] filed by the debtors in the above-captioned case (the "Debtors"), requesting entry of an order pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging in full each of the No Liability Setoff Claims identified on Exhibit 1 attached hereto (the "Order"); and upon the *Declaration of Paul Kinealy in Support of Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*, attached to the Objection as Exhibit B; and upon all other documentation filed in connection with the Objection and the No Liability Setoff Claims; and adequate notice of the Objection having been given as set forth in the Objection; and it appearing that no other or further notice is required; and sufficient cause appearing therefor;

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]    Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Objection.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.        For the reasons stated in the Objection, the Objection is GRANTED with respect to each of the No Liability Setoff Claims identified on Exhibit 1 attached hereto.

2.        Each of the No Liability Setoff Claims identified on Exhibit 1 is hereby disallowed in full and shall be automatically expunged from the Claims Register.

3.        This Order shall be deemed a separate Order with respect to each of the No Liability Setoff Claims identified on Exhibit 1.  Any appeal and/or stay of this Order pending appeal by any Claimants whose Claims are subject to this Order shall only apply to the contested matter which involves such Claimant and shall not act to stay the applicability and/or finality of this Order with respect to the other contested matters listed in the Objection or this Order.

4.        Nothing herein shall affect the Debtors' rights to pursue recovery of the Net Claims in any appropriate forum under any governing law.

5.        The Debtors, the Debtors' claims agent, Kroll Restructuring Administration LLC, and the clerk of this Court are authorized to take all actions necessary and appropriate to give effect to this Order, including updating the Claims Register to reflect the relief granted herein.

6.        Except as provided in this Order, nothing in this Order shall be deemed (i) an admission or finding as to the validity of any Claim against a Debtor, (ii) a waiver of the right of the Debtors of the Official Committee of Unsecured Creditors to dispute any Claim against any Debtor on any grounds whatsoever at a later date, (iii) a promise by or requirement on any Debtor to pay any Claim, or (iv) a waiver of the rights of the Debtors of the Official Committee of Unsecured Creditors under the Bankruptcy Code or any other applicable law.

7.        This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.

Dated: _____, 2024
        White Plains, New York

_____
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

## **No Liability Setoff Claims**

# Genesis Global Holdco, LLC Case No. 23-10063
## Twenty-Third Omnibus Objection
### Exhibit 1 - No Liability

## CLAIMS TO BE DISALLOWED

| # | NAME & ADDRESS | CLAIM # | ASSERTED DEBTOR | DATE FILED |
|---|---|---|---|---|
| 1 | NAME REDACTED<br>ADDRESS REDACTED | 337 | Genesis Global Capital, LLC | 05/19/23 |
| | *Reason: The Debtors have no remaining liability owed to the creditor after setoff of amounts owed to the Debtors by the creditor.* | | | |
| 2 | NAME REDACTED<br>ADDRESS REDACTED | 353 | Genesis Global Capital, LLC | 05/19/23 |
| | *Reason: The Debtors have no remaining liability owed to the creditor after setoff of amounts owed to the Debtors by the creditor.* | | | |
| 3 | NAME REDACTED<br>ADDRESS REDACTED | 84 | Genesis Global Capital, LLC | 04/13/23 |
| | *Reason: The Debtors have no remaining liability owed to the creditor after setoff of amounts owed to the Debtors by the creditor.* | | | |
| 4 | NAME REDACTED<br>ADDRESS REDACTED | GGC_3.1.0204 | Genesis Global Capital, LLC | 03/20/23 |
| | *Reason: The Debtors have no remaining liability owed to the creditor after setoff of amounts owed to the Debtors by the creditor.* | | | |
| 5 | NAME REDACTED<br>ADDRESS REDACTED | 810 | Genesis Global Capital, LLC | 7/7/2023* |
| | *Reason: The Debtors have no remaining liability owed to the creditor after setoff of amounts owed to the Debtors by the creditor.* | | | |
| 6 | NAME REDACTED<br>ADDRESS REDACTED | 261 | Genesis Global Capital, LLC | 05/15/23 |
| | *Reason: The Debtors have no remaining liability owed to the creditor after setoff of amounts owed to the Debtors by the creditor.* | | | |
| 7 | NAME REDACTED<br>ADDRESS REDACTED | 262 | Genesis Global Holdco, LLC | 05/15/23 |
| | *Reason: The Debtors have no remaining liability owed to the creditor after setoff of amounts owed to the Debtors by the creditor.* | | | |
| 8 | NAME REDACTED<br>ADDRESS REDACTED | 223 | Genesis Global Capital, LLC | 05/10/23 |
| | *Reason: The Debtors have no remaining liability owed to the creditor after setoff of amounts owed to the Debtors by the creditor.* | | | |

*Claim was filed after the General Bar Date

# **EXHIBIT B**

**Kinealy Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

### DECLARATION OF PAUL KINEALY IN SUPPORT OF DEBTORS' TWENTY-THIRD OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)

I, Paul Kinealy, make this declaration pursuant to 28 U.S.C. § 1746 and state as follows:

### BACKGROUND

1.        I am a Senior Director at Alvarez and Marsal North America, LLC ("A&M"), the financial advisor for the above-captioned Debtors.

2.        In my capacity as Senior Director, I am authorized to submit this Declaration in support of the *Debtor's Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Objection").[2]

3.        I am familiar with the Debtors' day-to-day operations, financing arrangements, business affairs and Books and Records and am responsible for overseeing the review and analysis of claims filed in the Debtors' Chapter 11 Cases.  All facts set forth herein are based on my personal knowledge, my review or the review of employees of A&M of the Claims and other relevant

---

[1]        The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]        Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Objection.

documents or information provided by the Debtors' employees and advisors.  If I were called upon to testify, I could and would competently testify to each of the facts set forth herein on that basis, including that I, or employees of A&M, personally reviewed the No Liability Setoff Claims on Exhibit 1 to the Proposed Order as part of the claims reconciliations process in these Chapter 11 Cases.

## **FACTUAL BASIS OF OBJECTION**

4.      Either I or one or more of the Debtors' employees or advisors operating at A&M's direction have reviewed the Claims Register, the Debtors' Books and Records, each of the No Liability Setoff Claims identified on Exhibit 1 to the Proposed Order, and the facts and circumstances set forth in the Objection regarding such Claims.  We have also reviewed the No Liability Setoff Claimants' competing loan obligations to the Debtors.

5.      Through this review, the Debtors have determined, with the help of A&M, the amounts owed by the Debtors to the No Liability Setoff Claimants and the amounts owed by the No Liability Setoff Claimants to the Debtors.

6.      The Debtors have further determined through this review of their Books and Records and the No Liability Setoff Claimants' competing loan obligations to the Debtors, with the help of A&M, that a setoff of the parties' mutual obligations, regardless of whether Petition Date pricing is used or more contemporaneous pricing data is used, results in either event in the full satisfaction of No Liability Setoff Claims identified on Exhibit 1 to the Proposed Order and a Net Claim in favor of the Debtors.  Accordingly, taking into account the result of the setoff, the No Liability Setoff Claims assert Claims for which the Debtors are no longer liable.

7.       I submit that the facts and circumstances set forth in the Objection are true and accurate to the best of my knowledge, information and belief, and the No Liability Setoff Claims identified in <u>Exhibit 1</u> to the Proposed Order should be disallowed in full.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on February 15, 2024        <u>*/s/ Paul Kinealy*</u>
                                      Paul Kinealy

## **Exhibit C**

**Claim No. 84**

**[REDACTED FOR PII]**

## **Exhibit D**

**Claim No. 223**

**[REDACTED FOR PII]**

## **Exhibit E**

**Claim No. 261**

**[REDACTED FOR PII]**

## **Exhibit F**

**Claim No. 262**

**[REDACTED FOR PII]**

## **Exhibit G**

**Claim No. 337**

**[REDACTED FOR PII]**

## **Exhibit H**

**Claim No. 353**

**[REDACTED FOR PII]**

**<u>Exhibit I</u>**

**Claim No. 810**

**[REDACTED FOR PII]**

**<u>Exhibit J</u>**

**Claim No. GGC 3.1.0204**

**[REDACTED FOR PII]**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**GLOBAL NOTES AND STATEMENT OF
LIMITATIONS, METHODOLOGY AND DISCLAIMERS
REGARDING THE DEBTORS' SCHEDULES OF ASSETS
AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

Genesis Global Holdco, LLC and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors," and the cases, the "Chapter 11 Cases")), have filed these respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the Schedules and Statements in accordance with section 521 of title 11 of the United States Code (the "Bankruptcy Code"), rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 1007–1 of the Bankruptcy Local Rules for the Southern District of New York (the "Local Rules").

These *Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of, each Debtor's respective Schedules and Statements. The Global Notes should be referred to and considered in connection with any review of the Schedules and Statements.[2] In the event that the Schedules and/or Statements differ from these Global Notes, the Global Notes control.

Mr. A. Derar Islim, Interim Chief Executive Officer of Genesis Global Holdco, LLC, has signed each set of the Schedules and Statements. Mr. Islim is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Islim has necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2]  These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors have prepared a Global Note with respect to any of individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.

Debtors' legal and financial advisors. Mr. Islim has not (and could not have) personally verified the accuracy of each such statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors, classification of such amounts, and respective creditor contact information.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. For the avoidance of doubt, the Debtors hereby reserve all of their rights, including to amend and/or supplement the Schedules and Statements, as may be necessary or appropriate.

The Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein and will not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law. In no event will the Debtors or their agents, attorneys, and/or financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

**The Schedules and Statements and these Global Notes should not be relied upon by any person or information relating to current or future financial conditions, events, or performance of any of the Debtors.**

## Global Notes and Overview of Methodology

1. **Description of Cases.** On January 19, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[3] The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only under lead case *In re Genesis Global Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y.).

---

[3]   Copies of publicly filed documents in these chapter 11 cases are available at https://restructuring.ra.kroll.com/genesis/ (free of charge) or the Court's website at https://www.nysb.uscourts.gov/ecf-and-pacer-information (for a fee).

The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 3, 2023, the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 55] (the "Committee").  The information provided herein, except as otherwise noted, is reported as of the close of business on the Petition Date.

2.      **Reservation of Rights**.  Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist.  The Debtors reserve all rights to:  (i) amend and/or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to amend the Schedules and Statements with respect to the description, designation, or Debtor against which any claim ("Claim")[4] is asserted; (ii) dispute or otherwise assert offsets, setoffs, or other defenses to any Claim reflected or not reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated"; or (iv) object to the extent, validity, enforceability, priority, or avoidability of any Claim (regardless of whether of such Claim is designated in the Schedules and Statements as "disputed," "contingent," or "unliquidated").  Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated" or a waiver of any right to later object to any claim on any grounds.  Listing a Claim does not constitute an admission of (a) liability or (b) amounts due or owed, if any, in each case, by the Debtor against which the Claim is listed or against any of the Debtors.  Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' Chapter 11 Cases, including, without limitation, issues involving or defenses against Claims, substantive consolidation, defenses, statutory, equitable subordination, characterization or recharacterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.  Any specific reservation or rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.  Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements.

(a)      **No Admission.**  Nothing contained in the Schedules and Statements, or the omission of any information in the Schedules or Statements, is intended as, or should be construed as, an admission or stipulation as to any matter addressed in the Schedules or Statements, including as to the validity or priority of any Claim against any Debtor, the status of any Person identified or not identified in the Schedules or Statements (including whether or not a Person is or is not an insider as that term is defined in the Bankruptcy Code) or any assertion made therein or

---

4       For the purposes of these Global Notes, the term Claim shall have the meaning as defined under section 101(5) of the Bankruptcy Code.

herein, or a waiver of any Debtor's rights to dispute any Claim or assert any cause of action or defense against any Person.

(b) **Recharacterization.** The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the Claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements. Nevertheless, due to the complexity of the Debtors' businesses, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items. Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, redesignate, add, or delete items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition. Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

(c) **Classifications.** Listing (i) a Claim on Schedule D as "secured," (ii) a Claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to dispute the characterization or classification of such Claims or contracts or to setoff such Claims, as appropriate, or that such Claim is not subject to objection. Failure to designate a claim on a given Debtor's Schedules as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated" or that such claim is not subject to objection.

(d) **Estimates and Assumptions.** The preparation of the Schedules and Statements required the Debtors to make commercially reasonable estimates and assumptions with respect to the reported amounts of certain assets and liabilities, the disclosure of certain contingent assets and liabilities, and the reported amounts of revenues and expenses during the applicable reporting periods. Actual results could differ from such estimates. The Debtors reserve their rights to amend the reported amount of assets, liabilities, revenues, and expenses to reflect changes in those estimates or assumptions.

(e) **Causes of Action.** Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets or avoid transfers. The Debtors reserve all rights with respect to any causes of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit,

4

obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law they may have (collectively, "Causes of Action"), and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such Claims, Causes of Action, or avoidance actions or in any way prejudice or impair the assertion of such Claims or Causes of Action.

(f)     **Property Rights.**  Exclusion of certain property, including, but not limited to, intellectual property, from the Schedules and Statements shall not be construed to be an admission that such property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain property, including, but not limited to, intellectual property, shall not be construed to be an admission that such property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all property rights, including but not limited to, intellectual property rights.

(g)     **Cryptocurrency.**  Certain of the Debtors' assets are cryptocurrencies, or digital tokens, based on a publicly accessible blockchain.  Cryptocurrencies are unique assets.  Certain laws and regulations that may be applicable to cryptocurrencies do not contemplate or address unique issues associated with the cryptocurrency economy, are subject to significant uncertainty, and vary widely across U.S. federal, state, and local and international jurisdictions.  The Debtors make no representations or admissions concerning the status of cryptocurrency as a "security" under any state, federal, or local domestic or international statute, including United States federal securities laws, and reserve all rights to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

(h)     **Insiders.**  In instances where the Schedules and Statements require information regarding "insiders," the Debtors have included information with respect to the individuals and entities who the Debtors believe may be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods.

The listing or omission of a party as an insider for purposes of the Schedules and Statements is for informational purposes and is not intended to be, nor should it be, construed as an admission that those parties are insiders for purpose of section 101(31) of the Bankruptcy Code.  Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for:

(a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity could successfully argue that it is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose. Furthermore, the listing or omission of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved.

3.    **Methodology.**

(a)    **Basis of Presentation.** Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements. The Schedules and Statements have not, however, been subject to procedures that would typically be applied to financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP") or International Financial Reporting Standards ("IFRS") and are not intended to reconcile fully with any financial statements of each Debtor prepared under GAAP or IFRS. Therefore, combining the assets and liabilities set forth in the Schedules and Statements would result in amounts that are substantially different from financial information that would be prepared on a consolidated basis under GAAP or IFRS. For financial reporting purposes, prior to the Petition Date, the Debtors prepared financial statements on a consolidated basis. Unlike the consolidated financial statements, the Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor. Moreover, given, among other things, the uncertainty surrounding the valuation, collection, and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, it is not an admission that the Debtor was solvent as of the Petition Date or at any time before the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, it is not an admission that the Debtor was insolvent at the Petition Date or any time before the Petition Date. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

(b)    **Confidential or Sensitive Information.** There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information (e.g. names, physical addresses and other information), or concerns for the privacy of an individual. The alterations will be limited to only what is necessary to protect the Debtor or applicable third party and in accordance with any order of the Court determining the appropriate scope of redactions in the Schedules and Statements. All such

6

redacted information shall be made available as directed by orders of the Court or to the individual customer or creditor scheduled, as applicable.

(c) **Duplication.** Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Schedules and Statements. Except as otherwise discussed below, to the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

(d) **Net Book Value.** In certain instances, current market valuations for certain assets are neither maintained by, nor readily available to, the Debtors. Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values. Market values may vary, sometimes materially, from net book values. The Debtors believe that it would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain the current market values of their property. Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined or unknown. For this reason, amounts ultimately realized will vary, potentially materially, from net book values.

Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may differ materially from fair market values. Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material. Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein. In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

In addition, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset. Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date.

(e) **Property.** The Debtors' office property leases are set forth on Schedule G. Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

(f) **Allocation of Liabilities.** The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

The liabilities listed on the Schedules and Statements do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statement as is necessary or appropriate. Further, the Debtors reserve all rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structures of any such transaction or any document or instrument related to any creditor's claim.

(g) **Undetermined Amounts.** The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

(h) **Unliquidated Claim Amounts.** Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

(i) **Totals.** All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements. To the extent there are unknown or undetermined amounts, the actual totals may be different than the listed totals.

(j) **Valuation of Cryptocurrency.** Cryptocurrency amounts are generally listed by coin amount rather than a conversion to price in U.S. dollars. To the extent cryptocurrency values are presented in U.S. dollars, they reflect the valuation as set forth in the Debtors' books and records as of the Petition Date or the time of the relevant transaction, as applicable. Actual net realizable value may vary significantly. The Debtors reserve all rights in this respect with such values presented in the Schedules and Statements.

Should the Debtors' plan of reorganization require Claims based in cryptocurrency to be paid out in U.S. dollars, the following conversion chart produced by the Debtors listing the types of cryptocurrency held and the valuation as of 11:11pm EST on January 19, 2023 shall be used to determine the U.S. dollar equivalent amount.

| Cryptocurrency | | Conversion Rate to USD as of January 19, 2023 at 11:11pm ET |
|---|---|---|
| 1INCH | 1inch Network | $0.45 |
| AAVE | AAVE | $81.34 |
| ADA | Cardano | $0.3394 |

| ALCX | Alchemix | $16.34 |
| ALGO | Algorand | $0.2199 |
| AMP | Amp | $0.00474 |
| ANKR | Ankr | $0.02344 |
| APE | ApeCoin | $4.987 |
| ATOM | Cosmos | $12.168 |
| AVAX | Avalanche | $16.18 |
| AXS | Axie Infinity | $8.37 |
| BAL | Balancer | $6.558 |
| BAT | Basic Attention Token | $0.24002 |
| BCH | Bitcoin Cash | $121.55 |
| BNB | Binance Coin | $294 |
| BNBW_BSC | Wrapped Binance Coin | $0 |
| BNT | Bancor | $0.39 |
| BSV | Bitcoin SV | $43.06 |
| BTC | Bitcoin | $21091.98 |
| BUSD | Binance USD | $1 |
| BUSD_BSC | Binance USD_Binance Smart Chain | $0 |
| CHZ | Chiliz | $0.1278 |
| COMP | Compound | $48.4 |
| CRV | Curve DAO Token | $0.9263 |
| DAI | Multi Collateral Dai | $0.9998 |
| DASH | Dash | $49.06 |
| DOGE | DogeCoin | $0.08148 |
| DOT | Polkadot | $5.864 |
| DPX | Dopex | $0 |
| EOS | EOS | $0.9796 |
| ETC | Ethereum Classic | $20.73 |
| ETH | Ethereum | $1554.65 |
| ETHE | Grayscale Ethereum Trust | $7.85 |
| ETHW | EthereumPoW | $3.84 |
| FET | Fetch.ai | $0.2741 |
| FIL | Filecoin | $4.399 |
| FLOW | Flow | $1.025 |
| FTM | Fantom | $0.30393 |
| FTT | FTX Token | $2.27 |
| GALA | Gala | $0.04558 |
| GBTC | Grayscale Bitcoin Trust | $11.46 |
| GLMR | Moonbeam | $0.3929 |
| GRT | The Graph | $0.0787 |
| GUSD | Gemini Dollar | $1 |
| HBAR | Hedera | $0.0612 |
| HNT | Helium | $2.9796 |
| INJ | Injective | $1.537 |
| KNC | Kyber Network Crystal v2 | $0.804 |
| KNC | Kyber Network Crystal | $0.804 |

| KSM | Kusama | $33.59 |
| LINK | Chainlink | $6.496 |
| LPT | Livepeer | $5.501 |
| LRC | Loopring | $0.2589 |
| LTC | Litecoin | $84.11 |
| LUNA | Terra | $0.00017375 |
| LUNC | Terra Classic | $0 |
| MANA | Decentraland | $0.6451 |
| MATIC | Polygon | $0.9531 |
| MKR | Maker | $661.19 |
| NEAR | Near | $2.098 |
| NEO | Neo | $7.45 |
| NU | NuCypher | $0.1335 |
| OMG | OMG Network | $1.2462 |
| OXT | Orchid | $0.0757 |
| PAXG | PAX Gold | $1907 |
| POLY | Polymath | $0.1738 |
| RBN | Ribbon Finance | $0.199 |
| REN | Ren | $0.072 |
| RLY | Rally | $0.0098 |
| SAND | The Sandbox | $0.7014 |
| SGB | Songbird | $0 |
| SHIB | Shiba Inu | $0.0000115 |
| SKL | Skale | $0.02727 |
| SNX | Synthetix | $2.24772 |
| SOL | Solana | $21.28 |
| SRM | Serum | $0.424 |
| STORJ | Storj | $0.33317 |
| SUSHI | SushiSwap | $1.1973 |
| TOKE | Tokemak | $0.99 |
| TRX | Tron | $0.06 |
| UMA | UMA | $1.81 |
| UNI | Uniswap | $6.189 |
| USDC | USD Coin | $1.00151 |
| USDP | Pax Dollar | $1 |
| USDT | Tether | $0.99998 |
| USTC | TerraClassicUSD | $0.0219 |
| WBTC | Wrapped Bitcoin | $21079.18 |
| WLUNA | Wrapped Terra | $0 |
| XEC | eCash | $0 |
| XLM | Stellar | $0.084244 |
| XRP | XRP | $0.39088 |
| XTZ | Tezos | $0.999 |
| YFI | Yearn.Finance | $6736.54 |
| ZEC | Zcash | $45.07 |
| ZEN | Horizen | $9.88 |

| ZRX | 0x | $0.20248 |
|-----|-----|---------:|

**(k)**      <u>**Paid Claims.**</u>   Pursuant to certain orders of the Court entered in the Debtors' chapter 11 cases entered shortly after the Petition Date (each, a "<u>First Day Order</u>" and collectively, the "<u>First Day Orders</u>") as well as other orders of the Court, the Debtors have authority to pay certain outstanding prepetition payables; as such, outstanding liabilities may have been reduced by any court-approved postpetition payments made on prepetition payables.   Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated.   Regardless of whether such claims are listed in the Schedules and Statements, to the extent the Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities.   Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Court where such order preserves the right to contest such payment.

**(l)**      <u>**Intercompany Receivables and Payables.**</u>   Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' books and records. Intercompany loan amounts scheduled may include accrued and unpaid interest. The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion of the Debtors' regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise.   For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including with respect to the characterization of intercompany claims, loans, and notes.

As described more fully in the Debtors' *Motion For Entry Of Interim And Final Orders (I) Authorizing Debtors To Continue To Operate The Existing Cash Management System, Including Existing Bank Accounts, Honor Certain Prepetition Obligations Related Thereto, And Maintain Existing Business Forms; (II) Permitting Continued Intercompany Transactions And Granting Certain Administrative Claims; (III) Extending The Time To Comply With The Requirements Of Section 345 Of The Bankruptcy Code; And (IV) Granting Related Relief* [Docket No. 15] (the "<u>Cash Management Motion</u>"), the Debtors engage in a range of intercompany transactions in the ordinary course of business.   Pursuant to the second interim order granting certain of the relief requested in the Cash Management Motion on an interim basis [Docket No. 99] (the "<u>Cash Management Order</u>"), the Bankruptcy Court has granted the Debtors authority to continue these intercompany transactions in the ordinary course of business on an interim basis.

Thus, intercompany balances as of the Petition Date, as set forth in Schedule E/F or Schedule A/B 77, may not accurately reflect current positions.

(m)  **Guarantees and Other Secondary Liability Claims.**  The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, and other such agreements.  The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify additional guarantees as they continue their review of their books and records and contractual agreements.  The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional guarantees are identified.

(n)  **Excluded Assets and Liabilities.**  The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation, accrued salaries and employee benefit accruals.  In addition, and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other order that may be entered by the Court.  Additionally, certain immaterial or *de minimis* assets and liabilities may have been excluded.

(o)  **Currency.**  Unless otherwise indicated, all amounts are reflected in U.S. dollars or amount of cryptocurrency coins.

(p)  **Setoffs.**  The Debtors may incur certain setoffs and other similar rights during the ordinary course of business.  Setoffs in the ordinary course can result from various items, including, without limitation, margin call or other lending-related transactions, intercompany transactions, and other disputes between the Debtors and their customers and/or suppliers.  These setoffs and other similar rights are consistent with the ordinary course of business in the Debtors' industry and may not be tracked separately.  Therefore, although such setoffs and other similar rights may have been included in the Schedules, other setoffs are not independently accounted for, or may not have occurred by the Petition Date and as such, may be excluded from the Schedules.   The Gemini Collateral as defined in the Restructuring Term Sheet, filed with the court on 2/10/23 Doc 80, is reflected as an offset to the overall Gemini claim in the amount of \$354,180,262.  The Debtors reserve all rights related to any purported exercise of remedies by Gemini.

(q)  **Claims and Causes of Action.**  The Debtors, despite reasonable efforts, may not have identified and/or set forth all of their Causes of Action or potential Causes of Action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets or avoid transfers.  The Debtors reserve all of their rights with respect to any Claims, Causes of Action, or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

**(r)**     **Executory Contracts.** Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Certain information, such as the contact information of the counterparty, may not be included where such information could not be obtained using the Debtor's reasonable efforts. Listing a contract or agreement on Schedule G does not constitute an admission that such contract is an executory contract or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G.

The contracts and agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, supplements, letters, memoranda and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Certain of the contracts and agreements listed on Schedule G may also consist of several parts, including purchase orders, letters and other documents that may not be listed on Schedule G or that may be listed as a single entry. Unless otherwise specified on Schedule G, each executory contract listed thereon shall include all exhibits, schedules, riders, modifications, memorandums, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract, without respect to whether such agreement, instrument, or other document is listed thereon. The Debtors expressly reserve their rights to challenge whether such related materials constitute an executory contract, a single contract or agreement, or multiple, severable or separate contracts.

The Debtors reserve all of their rights with respect to the executory contracts, including the right to amend Schedule G.

**(s)**     **Umbrella or Master Agreements.** Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement. The master service agreements have been listed in Schedule G, but do not reflect any decision by the Debtor as to whether or not such agreements are executory in nature.

**(t)**     **Credits and Adjustments.** The Claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and vendor payments, if applicable. The Debtors reserve all of their rights with regard to such credits, allowances, or

other adjustments, including, but not limited to, the right to modify the Schedules, assert claims objections and/or setoffs with respect to the same, or apply such allowances in the ordinary course of business on a post-petition basis.

(u)    **Payments.** The financial affairs and businesses of the Debtors are complex. Prior to the Petition Date, the Debtors and their non-Debtor affiliates maintained a cash management and disbursement system in the ordinary course of their businesses, as described in the Cash Management Motion (as defined herein). Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, if appropriate.

(v)    **Litigation.** Certain litigation actions reflected as claims against a particular Debtor may related to one or more of the other Debtors. The Debtors made reasonable efforts to accurately record those certain litigation actions (the "Litigation Actions") in the Schedules and Statements of the Debtor(s) that is the party to the Litigation Action. The inclusion of any Litigation Action in these Schedules and Statements does not constitute an admission by the Debtors of liability, the validity of any Litigation Action or the amount of any potential claim that may result from any claims with respect to any Litigation Action, or the amount, priority and/or treatment of any potential claim resulting from any Litigation Action currently pending or that may arise in the future.

**4.**    **Specific Schedules Disclosures.**

(a)    **Schedule A/B, Question 3 – Checking, Savings, Money Market, or Financial Brokerage Accounts.** Amounts listed are as of the Petition Date for the corresponding Debtor and reflect the actual bank balance, not the net book value.

(b)    **Schedule A/B, Question 15 – Non-Publicly Traded Stock.** Equity interests in subsidiaries and affiliates primarily arise from common stock ownership or member or partnership interests. For purposes of these Schedules, the Debtors have listed an undetermined value for the equity interests of all subsidiaries and affiliates. Nothing in these Schedules is an admission or conclusion of the Debtors regarding the value of such subsidiary and affiliate equity interests, which, under certain fair market or enterprise valuation analyses, may have value.

Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets or the impact of the industry environment and may differ materially from the actual value and/or performance of the underlying assets. As such, the value listed in these Schedules and Statements cannot be, and was not, used to determine the Debtors' enterprise valuation.

(c)    **Schedule A/B, Question 55 – Real Property.** The Debtors do not own any real property. The Debtors' office and other property leases are set forth on Schedule G.

(d)     **Schedule A/B, Question 72 – Tax Refunds and Unused Net Operating Losses (NOLs).**  The Debtors' response to the schedule question is indicative of certain gross non-tax effected net operating loss ("NOL") values as compared to the GAAP net deferred tax assets associated with such NOLs. The actual tax savings from these NOLs is dependent upon, among other things, the timing, character, and amount of any future or previous years' (provided NOLs are allowed to be carried back) income to which they can be applied. Amounts also do not reflect the consideration of any valuation allowances recorded pursuant to GAAP, which have the effect of reducing associated deferred tax assets.

(e)     **Schedule A/B, Question 73 – Interests in insurance policies or annuities.**  The Debtors have included a listing of their insurance policies in response to Question 73, however, a determination as to the surrender or refund value of each of the insurance policies has not been made and, therefore, the balance is listed as undetermined.

(f)     **Schedule A/B, Question 77 – Other property of any kind not already listed.**  Schedule A/B, Question 77 lists, among other things, the Debtors' cryptocurrency, or digital tokens, assets based on a publicly accessible blockchain in Rider 2.  The amounts listed in Rider 3 include collateral posted by the Debtors related to certain borrowings from counterparties.  All figures set forth in Schedule A/B, Question 77 are preliminary, unreviewed, and unaudited and are subject to final adjustments following, *inter alia*, completion of quarterly and year-end close procedures.

The listing by the Debtors of any account between a Debtor and another Debtor or between a Debtor and a non-Debtor affiliate is a statement of what appears in a particular Debtor's books and records and does not reflect any admission or conclusion of the Debtors regarding the allowance, classification, characterization, validity, or priority of such account.  The Debtors take no position in these Schedules and Statements as to whether such accounts would be allowed as a Claim, an Interest, or not allowed at all.  The Debtors and all parties in interest reserve all rights with respect to such accounts.

(g)     **Schedule D – Creditors Who Have Claims Secured by Property.**  Except as otherwise agreed pursuant to a stipulation, or agreed order, or general order entered by the Court that is or becomes final, the Debtors and their estates reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to any creditor of any Debtor.  The Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's Claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's Claim.

The Debtors have not included on Schedule D parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights.

(h)     **Schedule E/F – Creditors Who Have Unsecured Claims.**  The listing of any Claim on Schedule E/F does not constitute an admission by the Debtors that such

Claim or any portion thereof is entitled to priority treatment under section 507 of the Bankruptcy Code. The Debtors reserve all of their rights to dispute the amount and/or the priority status of any Claim on any basis at any time.

***Part 1 - Creditors with Priority Unsecured Claims.*** Pursuant to the *Final Order Authorizing the Payment of Certain Taxes and Fees* [Docket No. 97] (the "Taxes Order"), the Court granted the Debtors authority to pay, in their sole discretion, certain tax liabilities and regulatory fees, including certain business licensing fees, that accrued prepetition. Accordingly, any unsecured priority claims based upon prepetition tax accruals that have been or will be paid pursuant to the Taxes Order are not listed in Schedule E.

Furthermore, pursuant to the *Final Order (I) Authorizing Genesis Asia Pacific Pte. Ltd To (A) Pay Certain Employee Wages And Other Compensation And Related Obligations And (B) Maintain And Continue Employee Benefits And Programs In The Ordinary Course, And (II) Authorizing And Directing Applicable Banks To Honor All Transfers Related To Such Obligations* [Docket No. 100] (the "Wages Order"), the Court granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, and other compensation, reimbursable employee expenses, and employee medical and similar benefits, in the ordinary course of business. The Debtors believe that all such Claims have been, or will be, satisfied in the ordinary course during their Chapter 11 Cases pursuant to the authority granted in the Wages Order, and such satisfied amounts are not set forth on Schedule E.

The listing of a claim on Schedule E/F, Part 1 does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

***Part 2 - Creditors with Nonpriority Unsecured Claims.*** The liabilities identified in Schedule E/F, Part 2 are derived from the Debtors' books and records. The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of Claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed Claims or the correct amount of all unsecured Claims. Certain creditors listed on Schedule E/F may owe amounts to the Debtors and, as such, the Debtors may have valid setoff or recoupment rights with respect to such amounts, including on account of outstanding cryptocurrency or other loans. The amounts listed on Schedule E/F may not reflect any such right of setoff or recoupment and the Debtors reserve all rights to assert any such setoff or recoupment rights.

Schedule E/F, Part 2 contains information regarding threatened or pending litigation involving the Debtors. The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements. In certain instances, the date on which a litigation claim arose is an open issue of fact. Determining the date upon which each claim in Schedule E/F, Part 2 was incurred or arose would be unduly burdensome and

prohibitively costly and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F, Part 2.

Schedule E/F, Part 2 may also reflect prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2 does not include rejection damage claims, to the extent such damage claims exist, of the counterparties to the executory contracts and unexpired leases that have been or may be rejected.

Schedule E/F, Part 2 does not include certain deferred credits, deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, such amounts are reflected on the Debtors' books and records as required in accordance with GAAP.

The claims of individual creditors for, among other things, goods, services, or taxes listed on the Debtors' books and records may not reflect credits or allowances due from such creditors. The Debtors reserve all of their rights in respect of such credits or allowances. The dollar amounts listed may be exclusive of contingent or unliquidated amounts.

(i) **Schedule G – Executory Contracts and Unexpired Leases.** While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred. The Debtors reserve all rights to supplement or amend Schedule G as necessary.

Certain relationships between the Debtors and their vendors and account holders may be governed by a master services agreement, under which counterparties may place purchase orders or other ancillary agreements which may be considered executory contracts.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as supplemental agreements and letter agreement, which documents may not be set forth in Schedule G.

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same counterparty may appear multiple times in Schedule G. Multiple listings, if any, reflect distinct agreements between the applicable Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

5. **Specific Statements Disclosures.**

(a) **Statement Question 3 – Payments to Creditors.** All accounts payable disbursements listed in Statement Question 3 are made through the Debtors' cash management system, more fully described in the Cash Management Motion. Dates listed in Statement Questions 3 reflect the dates upon which the Debtor transferred funds to the relevant payee or disbursing agent. Certain disbursements may be excluded from Statement 3, such as disbursements to retained professionals (reported elsewhere). Certain payroll-related pass-through payments have been excluded from Statement 3.

Statement Question 3 also includes details regarding certain cryptocurrency transactions, including loans, borrows, repays, collateral returns, transfers, interest payments and other transactions, in order to provide a transparent transaction history. These transactions are also presented in USD value using the asset market price at the time of the transaction. The Debtors recognize that not all listed transactions are directly responsive to Statement Question 3, however they believe that presenting the transaction history provides the most accurate view.

For the avoidance of doubt, any payments made in connection with the Debtors' bankruptcy within the 12-month period prior to the Petition Date are disclosed in response to Statement Question 11 and therefore are not listed in response to Statement Question 3. Further, any payments made to an insider within the 12-month period prior to the Petition Date are disclosed in response to Statement Question 4 and therefore are not listed in response to Statement Question 3.

(b) **Statement Question 4 – Payments to Insiders.** The Debtors have responded to Statement Questions 4 and 30 in the attachment for Statement Question 4.

Statement Question 4 includes payments or other transfers of property made within one year before filing this case that benefited any insider. As described in the Cash

Management Motion, the Wages Motion, and the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* [Docket No. 28], the Debtors and their affiliates are parties to certain Shared Services Agreements where certain non-Debtor affiliates provide the Debtors with certain services, such as customer onboarding, shared management, employees, payroll and administrative support. Certain employees are employed by a non-Debtor affiliate and only devote a portion of their time supporting certain aspects of the Debtors' operations. Therefore, while a non-Debtor affiliate has made payments to certain employees who may be deemed insiders under the Bankruptcy Code, and those and other associated costs have been reimbursed by the Debtors pursuant to the Shared Services Agreement, such reimbursements would not be listed in response to Statement Question 4 as they were not direct payments by a Debtor to an employee who may be deemed an insider under the Bankruptcy Code.

Statement Question 4 also includes details regarding certain cryptocurrency transactions, including loans made to insiders and related repayments in order to provide a transparent transaction history. The Debtors recognize that not all listed transactions are directly responsive to Statement Question 4, however they believe that presenting the transaction history provides the most accurate view.

Individual payments among Debtors and to non-Debtor affiliates are not reflected in Statement 4 due to their complexity and volume. The Debtors have reported monthly intercompany positions in Statement Question 4. In addition, intercompany payables and receivables as of the Petition Date can be found on Schedule E/F and Schedule AB.

To the extent: (i) a person qualified as an insider in the year prior to the Petition Date but later resigned their insider status or (ii) did not begin the year as an insider but later became an insider, the Debtors have listed in response to Statement Question 4 all payments or transfers made during the applicable 12-month period, irrespective of when such person was defined as an "insider."

As discussed above, the inclusion of a party as an insider is not intended to be, nor should be, construed as a legal characterization of such party as an insider and does not act as an admission of any fact, Claim, right, or defense, and any such rights, Claims, and defenses are hereby expressly reserved.

(c)     **Statement Question 11 – Payments Made Related to Bankruptcy.** Although the Debtors have made reasonable efforts to distinguish between payments made for professional services related and unrelated to their restructuring efforts, some amounts listed in response to Statement Question 11 may include payments for professional services unrelated to bankruptcy.

\*     \*     \*     \*     \*

19

Debtor Name: Genesis Global Capital, LLC

Case Number: 23-10064

**Schedule F-1**
**Digital Currency and USD Payables**

| Schedule F Line | Creditor Name | Address | Indicate if claim is contingent, unliquidated, disputed | Is the claim subject to offset? (Yes/No) | Coin Amount |
|---|---|---|---|---|---|
| 3.1.0201 | NAME ON FILE | ADDRESS ON FILE | | | USD 1,450,226.65774237 / USDC 4,039.54615778603 |
| 3.1.0202 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.00008049946466959527 |
| 3.1.0203 | NAME ON FILE | ADDRESS ON FILE | | | USDC 0.00077978398522052 |
| 3.1.0204 | NAME ON FILE | ADDRESS ON FILE | | | FIL 2,400.00 |
| 3.1.0205 | NAME ON FILE | ADDRESS ON FILE | | | USDC 4,104.659.65846528 |
| 3.1.0206 | NAME ON FILE | ADDRESS ON FILE | | | USD 863.01000976625 |
| 3.1.0207 | NAME ON FILE | ADDRESS ON FILE | | | USDC 111.920370273535 |
| 3.1.0208 | NAME ON FILE | ADDRESS ON FILE | | | SOL 15,248.5776071566 |
| 3.1.0209 | NAME ON FILE | ADDRESS ON FILE | | | DOGE 786.613320214943 / ETH 0.067332588138160 / LINK 3.96684789637593 / ZEC 0.17742102745287 |
| 3.1.0210 | NAME ON FILE | ADDRESS ON FILE | | | BTC 6.6460355072243 |
| 3.1.0211 | NAME ON FILE | ADDRESS ON FILE | | | USD 1,780.30004982812 |
| 3.1.0212 | NAME ON FILE | ADDRESS ON FILE | | | USDC 205.205327521798 |
| 3.1.0213 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.392090004119764 |
| 3.1.0214 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.0003838987804046447 |
| 3.1.0215 | NAME ON FILE | ADDRESS ON FILE | | | USDC 5.9453485000825226 |
| 3.1.0216 | NAME ON FILE | ADDRESS ON FILE | | | USDC 6.696.34349336642 |
| 3.1.0217 | NAME ON FILE | ADDRESS ON FILE | | | SOL 65.736.35590853194 |
| 3.1.0218 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.00155633938311538 / BTC 0.0023341686975721 |
| 3.1.0219 | NAME ON FILE | ADDRESS ON FILE | | | 1INCH 2,033.86188947976<br>AAVE 22,927.5922013099<br>ALCX 5,822.33751677133<br>AMP 279,334.557.496127<br>ANKR 15,497.094.215975<br>APE 758,928.421426571<br>AXS 60,891.2263047058<br>BAL 23,241.80731.3072<br>BAT 6,232.345.48103629<br>BCH 29,296.1552025989<br>BNT 179,539.71360902<br>BTC 9,411.246644058046<br>CHZ 480,933.155803882<br>COMP 9,327.40685982043<br>CRV 2,076.587.47417786<br>DAI 2,866,703.70550049<br>DOGE 78,679,471.3580711<br>ETH 104,496.078013552<br>FET 1,353,292.38204151<br>FIL 7,741,682.43217707<br>FTM 14,098.284.5544024<br>GRT 11,522.396.0460061<br>GUSD 250,160.486.465164<br>INJ 90,264.289782438?<br>KNC 290,405.93736151<br>LINK 870,221.458937813<br>LPT 16,385.3273343762<br>LRC 1,784,763.22273649<br>LTC 84,531.524202033<br>MANA 3,881,489.73219182<br>MATIC 9,710,106.0603704<br>MKR 889.332466519054<br>OXT 2,455.316.98255408<br>PAXG 673.591862985309<br>RNDR 16,741.412530501355<br>REN 2,626.787.04211776<br>RLY 3,797,067.52257312<br>SKL 2,644.946.65626571<br>SNX 159,946.061579681<br>SOL 158.704.84765602<br>STORJ 1,206,819.44064744<br>SUSHI 306,785.23788951<br>TOKE 16,339.99111170645<br>UMA 40,408.4780902102<br>UNI 340,114.82619651?<br>USDC 10,462,276.0795673<br>WLUNA 0.01697304724508386<br>XTZ 462,830.320111918<br>YFI 62.753270314931<br>ZEC 29,147.16836296602<br>ZRX 1,817,674.49190599 |
| 3.1.0220 | NAME ON FILE | ADDRESS ON FILE | | | BTC 203.225949729347 / ETH 304.498716879753 |
| 3.1.0221 | NAME ON FILE | ADDRESS ON FILE | | | USDC 304.069830143355 |
| 3.1.0222 | NAME ON FILE | ADDRESS ON FILE | | | USDC 102.174.657523377 |
| 3.1.0223 | NAME ON FILE | ADDRESS ON FILE | | | BTC 41.57538598759 / ETH 258.17598393434357 / ETHW 234.64880074605 |
| 3.1.0224 | NAME ON FILE | ADDRESS ON FILE | | | USD 1.023.904.11148866 |
| 3.1.0225 | NAME ON FILE | ADDRESS ON FILE | | | USDC 27.49054999909311 / USDC 281.946.126114619 |
| 3.1.0226 | NAME ON FILE | ADDRESS ON FILE | | | BTC 33.89071437011129 / ETH 95.621313232349 / ETHW 94.4792402367714 / USD 43.063.2601916454 |
| 3.1.0227 | NAME ON FILE | ADDRESS ON FILE | | | ADA 215.72803779425 / BNB 0.49642098059815 / BTC 0.050865311245944 / DOT 0.45566130109681 / LNK 23.2237269204139 / LTC 0.63206050693004 / UNI 8.94726376080094 |
| 3.1.0228 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.00034761691496545 |
| 3.1.0229 | NAME ON FILE | ADDRESS ON FILE | | | BTC 81.00 / ETH 466.00 / ETHW 377.8027397222334 / USDC 1,808.00 |
| 3.1.0230 | NAME ON FILE | ADDRESS ON FILE | | | USD 3.104.112.00 |
| 3.1.0231 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.00054366558716716 / BTC 26.2586023665315 / ETH 104.8058043911 / ETHW 103.2810342181468 / USD 262.086.60023527 |
| 3.1.0232 | NAME ON FILE | ADDRESS ON FILE | | | USD 1.5196603991424 |
| 3.1.0233 | NAME ON FILE | ADDRESS ON FILE | | | USDC 37.6978148659726 |
| 3.1.0234 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.0081894631624 / USDC 205.205327521798 |
| 3.1.0235 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.50429034634555? |
| 3.1.0236 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.00038369875040464? / ETH 65.846.964252242 |
| 3.1.0237 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.70915438085782 |
| 3.1.0238 | NAME ON FILE | ADDRESS ON FILE | | | USD 15.285.556.0360871 |
| 3.1.0239 | NAME ON FILE | ADDRESS ON FILE | | | USDC 6,205.349.0850378 / USDT 34.832.186.2990578 |
| 3.1.0240 | NAME ON FILE | ADDRESS ON FILE | | | USD 150.1166224116151 |
| 3.1.0241 | NAME ON FILE | ADDRESS ON FILE | | | USDC 294.903.031592028 |
| 3.1.0242 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.00010653936519038 / ETH 1.016.32803479897 |
| 3.1.0243 | NAME ON FILE | ADDRESS ON FILE | | | ETH 0.00158454394089 / USD 166.013.94069873 |
| 3.1.0244 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.51568905921859 |
| 3.1.0245 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.51596809921859 |
| 3.1.0246 | NAME ON FILE | ADDRESS ON FILE | | | USDC 14.064.070101036S |
| 3.1.0247 | NAME ON FILE | ADDRESS ON FILE | | | USDC 81.393394416442 |
| 3.1.0248 | NAME ON FILE | ADDRESS ON FILE | | | |
| 3.1.0249 | NAME ON FILE | ADDRESS ON FILE | | | USD 0.003 |
| 3.1.0250 | NAME ON FILE | ADDRESS ON FILE | | | USD 0.003 |
| 3.1.0251 | NAME ON FILE | ADDRESS ON FILE | | | BTC 134.26 |
| 3.1.0252 | NAME ON FILE | ADDRESS ON FILE | | | USDC 25.029878877283? |
| 3.1.0253 | NAME ON FILE | ADDRESS ON FILE | | | BTC 12.55273167894829 / ETH 60.5900057842614 / ETHW 60.5900057942614 / LINK 196.193094275245 / LTC 83.0830068299822 / USD 10.248.508200062 |
| 3.1.0254 | NAME ON FILE | ADDRESS ON FILE | | | USDC 118.828481172837 |
| 3.1.0255 | NAME ON FILE | ADDRESS ON FILE | | | USDC 3.995.44995117187 |
| 3.1.0256 | NAME ON FILE | ADDRESS ON FILE | | | BTC 100.11868309726 / USD 17.326.770210312 |
| 3.1.0257 | NAME ON FILE | ADDRESS ON FILE | | | USDC 2.231.170.52113282 / USD 1.022.000024140? |
| 3.1.0258 | NAME ON FILE | ADDRESS ON FILE | | | BTC 0.370536082191 / ETH 5.98888100580 / ETHW 6.00967602051630 / USDC 491.047503072247 |
| 3.1.0259 | NAME ON FILE | ADDRESS ON FILE | | | USDC 153.4627782170656 |
| 3.1.0260 | NAME ON FILE | ADDRESS ON FILE | | | USDC 16.620112097897? |
| 3.1.0261 | NAME ON FILE | ADDRESS ON FILE | | | USDC 3.53006204209863 |
| 3.1.0262 | NAME ON FILE | ADDRESS ON FILE | | | USDC 40.9289309169905 / USDC 3.3718607677947 |