**KATTEN MUCHIN ROSENMAN LLP**
Steven Reisman
Shaya Rochester
Julia Mosse
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: (212) 940-8700

-and-

Patrick Smith (*pro hac vice* application pending)
2029 Century Park East
Suite 2600
Los Angeles, California 90067-3012
Telephone: (312) 902-5379
Telephone: (310) 788-4400

*Counsel for* ▮▮▮▮▮▮▮▮▮▮▮▮

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*, | Case No. 23-10063 (SHL) |
| Debtors.[1] | Jointly Administered |

### STATEMENT IN SUPPORT OF CONFIRMATION OF DEBTORS' AMENDED JOINT CHAPTER 11 PLAN, REPLY TO DCG'S PLAN CONFIRMATION OBJECTION AND RESERVATION OF RIGHTS

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number (as applicable) are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (9564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND.................................................................................... 3

    A.    Creditor's Pre-Petition Transactions with GGC ...................................... 3

    B.    GGC Breaches Its Contractual Obligations to Creditor.......................... 5

    C.    The Genesis Chapter 11 Cases and the Setoff Principles ...................... 6

    D.    The DCG Objection ................................................................................. 8

THE SETOFF PRINCIPLES ARE REASONABLE, LOGICALLY CONSISTENT,
EQUITABLE AND SHOULD BE APPROVED ........................................................... 9

REGARDLESS OF WHETHER THE COURT APPROVES THE SETOFF
PRINCIPLES, DCG'S SETOFF METHODOLOGY SHOULD NOT APPLY TO
CREDITOR.................................................................................................................. 15

IF THE SETOFF PRINCIPLES ARE NOT APPROVED,  THE PLAN MUST BE
RESOLICITED............................................................................................................. 17

RESERVATION OF RIGHTS ................................................................................... 18

CONCLUSION............................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cohen v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.),*
    138 B.R. 687 (Bankr. S.D.N.Y. 1992) ........................................................ 11, 12

*In re Am.-CV Station Grp., Inc.,*
    56 F.4th 1302 (11th Cir. 2023) ............................................................................ 17

*In re Brooks,*
    452 B.R. 809 (Bankr. D. Kan. 2011) .................................................................... 10

*In re Heritage Highgate, Inc.,*
    679 F.3d 132 (3d Cir. 2012) ................................................................................ 10

*In re Hous. Reg'l Sports Network, L.P.,*
    886 F.3d 523 (5th Cir. 2018) .................................................................................. 9

*In re Integra Realty Res., Inc.,*
    354 F.3d 1246 (10th Cir. 2004) ........................................................................... 10

*In re Moody & Newton, Inc.,*
    71 B.R. 55 (Bankr. M.D. Fla. 1987) ................................................................... 11

*In re Mushroom Transp. Co.,*
    382 F.3d 325 (3d Cir. 2004) ........................................................................... 11, 12

*In re Schertz Hardware, Inc.,*
    Nos. 99-82828, 00-8048, 2001 WL 34076351 (Bankr. C.D. Ill. Mar. 14, 2001) ................................ 11

*In re Sears Holding Corp.,*
    51 F.4th 53 (2d Cir. 2022) ..................................................................................... 9

*In re Secs. Grp. 1980,*
    74 F.3d 1103 (11th Cir. 1996) .............................................................................. 11

*In re Taylor,*
    599 F.3d 880 (9th Cir. 2010) ............................................................................... 10

*New York v. Gemini Tr. Co., LLC, et al.,*
    Index No. 452784/2023 (Sup. Ct., N.Y. Cnty. Feb. 9, 2024) ............................... 14

**Statutes**

11 U.S.C § 506 ........................................................................................................ 10

11 U.S.C. § 550 ...................................................................................................... 10

11 U.S.C. § 553 ................................................................................................................. 10, 11

11 U.S.C. § 562 ...................................................................................................................... 12

11 U.S.C. § 1127 .................................................................................................................... 17

11 U.S.C. § 1129 ...................................................................................................................... 8

**Rules**

Fed. R. Bankr. P. 3019(a) ...................................................................................................... 17

**Other Authorities**

S. Rep. No. 95-989 (1978) ..................................................................................................... 11

███████████████████ ("**Creditor**"), by and through his undersigned counsel,

hereby submits this *Statement in Support of Confirmation of Debtors' Amended Joint Chapter 11*

*Plan, Reply to DCG's Plan Confirmation Objection and Reservation of Rights* (the "**Statement**").

In support of this Statement, Creditor respectfully states as follows:

<u>**PRELIMINARY STATEMENT**[2]</u>

1.      Creditor supports confirmation of the Plan, including in particular the "Setoff

Principles for Allowance of Certain Claims" contained in Exhibit M to the *Notice of Filing of Plan*

*Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1144] (the "**Setoff**

**Principles**").

2.      The Setoff Principles represent a reasonable, logically consistent and

fundamentally fair method for netting the mutual obligations owed by and to the Debtors and the

affected creditors (defined herein as the "Setoff Claimants").  Specifically, the Setoff Principles

apply Petition Date pricing to *all* of the parties' mutual obligations that are subject to setoff.  By

using this approach, the Setoff Principles distribute the substantial appreciation in the value of

cryptocurrency since the Petition Date ████████████████████████████████ to

both the Setoff Claimants and the Debtors' bankruptcy estates.  As an alternative to this balanced

approach, the Debtors could have employed several different valuation methodologies that would

have allocated all or substantially all of the appreciation in cryptocurrency to the Setoff Claimants,

which would have resulted in substantially higher claims against the Debtors' estates.  The Setoff

Principles, however, do not do that and instead represent a compromise that strikes a fair balance

between the Setoff Claimants and the Debtors' estates.

---

[2] Capitalized terms used in this Preliminary Statement are defined subsequently in the Statement.  Capitalized terms used and not defined elsewhere in the Statement shall have the meaning ascribed to them in the Plan.

3.       The Setoff Principles' balanced valuation approach stands in stark contrast to the inconsistent and lopsided approach advanced by DCG (defined herein) in its *Objection to Confirmation of the Debtors' Amended Plan* [ECF No. 1257] (the "**DCG Objection**").  Under DCG's setoff valuation methodology, obligations owed by the Debtors to the Setoff Claimants are valued as of the Petition Date, while obligations owed by the Setoff Claimants to the Debtors are valued based on **current pricing**.  Unsurprisingly, DCG does not cite a single legal authority to support this methodology.  Functionally, DCG's unbalanced approach takes all of the appreciation in the value of cryptocurrency during these Chapter 11 Cases away from the Setoff Claimants and gives it exclusively to the Debtors' estates and potentially to DCG.  As a result, ███████ ███████ of dollars could flow to DCG and away from the Setoff Claimants.

4.       DCG's approach is particularly inappropriate in light of the unique facts and circumstances underlying Creditor's claims against the Debtors.  Indeed, as set forth below, on multiple occasions prior to the Petition Date, the Debtors breached their contractual obligations to Creditor.  But for those breaches, ***the Debtors would have not have any claims or setoff rights against Creditor***.  In other words, Creditor would not be subject to the Setoff Principles at all if the Debtors had simply complied with their contractual obligations.  Thus, it would be highly prejudicial to calculate Creditor's alleged obligations to the Debtors using current pricing (as proposed by DCG), given that Creditor would have no obligation at all if the Debtors had complied with their contractual obligations.  Put simply, the Debtors should not be allowed to benefit from their breaches.

5.       While the Court need not address the facts and circumstances of Creditor's case at the Confirmation Hearing, they highlight the compromise that the Setoff Principles represent and the benefit that they provide to the Debtors' estates by fixing the amount of the Setoff Claimants'

net claims against the estates and avoiding the cost and risk of litigation.  In the event that the Setoff Principles are not approved in their current form in connection with the Plan, Creditor reserves all of his rights, including his right to file a motion or other pleading seeking entry of an order allowing Creditor's claims against the Debtors in an amount that ***exceeds the value*** of Creditor's net claim resulting from the application of the Setoff Principles.

6.    It would also be particularly inappropriate to adopt DCG's setoff valuation approach, in light of the significant allegations of misconduct that have been levelled against DCG by numerous parties, including without limitation, the Debtors' Special Committee, the Committee and multiple governmental agencies, including the New York Attorney General.  Regardless of how DCG's misconduct is ultimately adjudicated, DCG should, at a very minimum, not be allowed to profit from these Chapter 11 Cases to the detriment of the Setoff Claimants and other creditors.

7.    Finally, by the Debtors' own admission, the Setoff Principles are an integral component of the Plan.  Further, Creditor relied upon the Setoff Principles when voting in favor of the Plan.  Accordingly, if the Court does not approve the Setoff Principles in connection with the Plan and/or the Plan is modified to exclude or alter the Setoff Principles, Creditor's rights would be materially and adversely impacted and the Plan would need to be resolicited.

8.    For these reasons, as described in more detail below, Creditor respectfully requests that the Plan, including the Setoff Principles, be confirmed.

## **FACTUAL BACKGROUND**

### A.    **Creditor's Pre-Petition Transactions with GGC**

9.    Prior to the Petition Date, Debtor Genesis Global Capital, LLC ("***GGC***") and Creditor entered into multiple loan transactions involving digital assets.  The parties' loan transactions were governed by various loan agreements, including the MDCLA and MLA (as such terms are defined below).

10.    On July 24, 2018, GGC and Creditor entered into that certain Master Digital Currency Loan Agreement (as amended, the "***MDCLA***") pursuant to which GGC agreed to loan certain digital assets, including Bitcoin tokens ("***BTC***"), to Creditor.  *See Declaration of Shaya Rochester in Support of Statement in Support of Confirmation of Debtors' Amended Joint Chapter 11 Plan, Reply to DCG's Plan Confirmation Objection and Reservation of Rights* ("***Rochester Decl.***"), Exhibit ("***Ex.***") A at 1.

11.    On May 10, 2019, GGC and Creditor entered into that certain Master Loan Agreement (as amended, the "***MLA***") pursuant to which Creditor agreed to lend U.S. Dollars or digital currency, including EthereumPoW tokens ("***ETHW***") and Ethereum tokens ("***ETH***"), to GGC.  Rochester Decl., Ex. B at 1-2.

12.    Pursuant to the MLA and a loan term sheet, dated October 19, 2022 (the "***October 19, 2022 Loan Term Sheet***" and such transaction, "***October 19, 2022 Transaction***"), Creditor loaned ███ ETHW[3] to GGC (the "***ETHW Loaned Assets***").  *Id.*, Ex. C.

13.    Pursuant to the MLA and a loan term sheet, dated October 26, 2022 (the "***October 26, 2022 Loan Term Sheet***" and such transaction "***October 26, 2022 Transaction***" and together with the October 19, 2022 Transaction, the "***October 2022 Transaction***"), Creditor loaned ███ ETH[4] to GGC (the "***ETH Loaned Assets***" and together with ETHW Loaned Assets, the "***Loaned Assets***").  *Id.*, Ex. D.

14.    Pursuant to the MDCLA and a loan term sheet, dated November 12, 2022 (as amended and restated, the "***November 12, 2022 Term Sheet***" and such transaction, the "***November 2022 Transaction***"), GGC ***purported*** to loan (a) ██████ BTC and (b) ████████

---

[3] Creditor reserves the right to argue that Creditor loaned ███ ETHW to GGC, as set forth in the October 19, 2022 loan term sheet.
[4] Creditor reserves the right to argue that Creditor loaned ███ ETH to GGC, as set forth in the October 26, 2022 loan term sheet.

Cardano tokens ("**ADA**"), to Creditor (together, the "**Disputed Assets**"). *Id.*, Ex. E at 1, 2. As part of the November 2022 Transaction, Creditor also delivered ███ ETH to GGC as collateral for the Disputed Assets (the "**Collateral**"). *Id.*

15.    While the November 2022 Transaction was styled as a loan from GGC to Creditor, GGC maintained sole custody and possession over the Disputed Assets and Collateral at all times. *Id.*, Ex. F, § 7 at 2-3.

16.    Pursuant to the MDCLA, Creditor was entitled, at any time from 9:00 a.m. until 5:00 p.m. New York time on a business day, to exercise his "**Callable Option**" and deliver all or any portion of the Disputed Assets "loaned" to Creditor. *Id.*, Ex. A, § II(c). The November 2022 Transaction was to terminate upon delivery of the Disputed Assets in connection with the Callable Option. *Id.* § II(d)(iii).

17.    Pursuant to the MDCLA, if Creditor did not return the Disputed Assets upon the termination of the November 2022 Transaction, GGC was required to use the Collateral to purchase BTC and ADA in order to replenish GGC's supply of the Disputed Assets. *Id.* § IV(d). Upon Creditor's exercise of the Callable Option, GGC was obligated to return the surplus Collateral to Creditor after a sufficient amount of the Collateral had been liquidated to replenish the Disputed Assets. *Id.* § IV(e).

**B.    GGC Breaches Its Contractual Obligations to Creditor**

18.    On November 16, 2022, in breach of its contractual obligations, GGC announced that it was unilaterally suspending repayments of its loan obligations to all of its lenders, including Creditor (the "**GGC Repayment Suspension**"). ECF No. 1031 (Disclosure Statement), Art. V.

19.    Between November 15, 2022 and December 7, 2022, Creditor exercised the Callable Option on at least **five** separate occasions (the "**Callable Option Demands**") and sought

to terminate the November 2022 Transaction pursuant to the MDCLA.  In each instance, GGC failed to comply and thereby breached its obligations under the MDCLA.

20.    If GGC had complied with the Callable Option Demands, the Disputed Assets would have been replenished in full, the November 2022 Transaction would have terminated weeks before the Petition Date, GGC would have no setoff rights or claims against Creditor, and GGC would have been required to return the surplus Collateral to Creditor.

**C.    The Genesis Chapter 11 Cases and the Setoff Principles**

21.    On January 19, 2023 (the "***Petition Date***"), the above-captioned debtors (the "***Debtors***") commenced these Chapter 11 cases (the "***Chapter 11 Cases***") in this Court.

22.    On November 28, 2023, the Debtors filed the *Debtors' Amended Joint Chapter 11 Plan* [ECF No. 989] (as amended, modified or supplemented, the "***Plan***").  On December 6, 2023, the Debtors filed the solicitation version of the Plan.  ECF No. 1031.

23.    On December 29, 2023, the Debtors filed the *Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1117], which included, among other exhibits, Exhibit E listing certain digital assets and their U.S. Dollar equivalent as of 11:11 p.m. (Eastern) on the Petition Date (the "***Digital Assets Conversion Table***").  *See* Plan § I(A)(66), at 9, ECF No. 1031.

24.    On January 9, 2024, the Debtors filed the Setoff Principles,[5] which provide that all of the digital assets underlying the claims scheduled on the exhibit attached to the Setoff Principles (collectively the "***Scheduled Claims***" and such claimants, the "***Setoff Claimants***") shall be valued as of the ***Petition Date***.  Setoff Principles, at 1-2; *see also* ECF No. 1117, Ex. E (Digital Assets Conversion Table).

---

[5] For the avoidance of doubt, the term "Setoff Principles" as used herein refers only to the current proposed version of the Setoff Principles and excludes any modified version of the Setoff Principles.

25.     Specifically, the Setoff Principles provide that (a) all digital assets loaned by a Setoff Claimant to GGC (collectively, the "**GGC Obligations**"), (b) all digital assets borrowed by a Setoff Claimant from GGC (collectively, the "**Claimant Obligations**"), and (c) all digital assets pledged as collateral by a Setoff Claimant to GGC (collectively, the "**GGC-Held Collateral**"), shall **each** be valued in accordance with the Digital Assets Conversion Table, *i.e.*, as of the Petition Date.  *See* Setoff Principles, at 1-2.  The *Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* that contains the Setoff Principles expressly provides that "the forms of the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan."  ECF No. 1144 at 2.

26.     Creditor is a Setoff Claimant.  Accordingly, under the Setoff Principles, each of the Loaned Assets loaned by Creditor to GGC, the Disputed Assets purportedly loaned by GGC to Creditor, and the Collateral pledged by Creditor to GGC, are valued as of the Petition Date.

27.     As of the Petition Date, the Loaned Assets (inclusive of accrued but unpaid interest) were valued at approximately $███████[6] in U.S. Dollars, the Disputed Assets (inclusive of accrued but unpaid interest) were valued at approximately $███████[7] in U.S. Dollars, and the Collateral was valued at approximately $███████[8] in U.S. Dollars.

28.     If the Setoff Principles are approved by the Court, Creditor shall have an allowed net claim against GGC in the amount of $███████,[9] which will subsequently be denominated

---

[6] This amount is equal to (a) ███████ ETHW x $3.84/ETHW (the USD value of ETHW as of the Petition Date) *plus* (b) ███████ ETH x $1,554.64/ETH (the USD value of ETH as of the Petition Date) *plus* (c) approximately $███████ in accrued but unpaid interest as of the Petition Date.  *See* ECF No. 1117, Ex. E (Digital Assets Conversion Table, setting forth Petition Date coin prices).

[7] This amount is equal to (a) ███████ BTC x $21,091.98/BTC (the USD value of BTC as of the Petition Date) *plus* (b) ███████ x $0.34/ADA (the USD value of ADA as of the Petition Date) *plus* (c) approximately $███████ in accrued but unpaid interest.  *See* ECF No. 1117, Ex. E (Digital Assets Conversion Table, setting forth Petition Date coin prices).

[8] This amount is equal to ███████ ETH (which includes interest on the Collateral) x $1,554.64/ETH (the USD value of ETH as of the Petition Date).  *See* ECF No. 1117, Ex. E (Digital Assets Conversion Table, setting forth Petition Date coin prices).

[9] This amount is equal to (a) the USD value of the Loaned Assets *plus* (b) the USD value of the Collateral *less* (c) the

and paid in ETH and ETHW in accordance with the Plan, on account of the Loan Assets and remaining Collateral after the setoff is effectuated (the "***Creditor Allowed Net Claim***").  The Creditor Allowed Net Claim is exclusive of any interest accrued from and after the Petition Date, which interest, if any, will be paid in accordance with the terms of the Plan and the Court's determination on entitlement and amounts thereof.

**D.    The DCG Objection**

29.    On February 6, 2024, Digital Currency Group, Inc. and DCG International Investments Ltd. (together, "***DCG***") filed the DCG Objection.[10]  In the DCG Objection, DCG argues, *inter alia*, that the Setoff Principles "violate the Bankruptcy Code and applicable law" by allegedly "provid[ing] a select group" of creditors, including Creditor, a "windfall" as a result of valuing the GGC Obligations, the Claimant Obligations, and the GGC-Held Collateral as of the Petition Date.  *See* DCG Objection ¶ 66.  In particular, DCG argues that the Setoff Principles are proposed by the Debtors in bad faith in violation of section 1129(a)(3) of the Bankruptcy Code, because by valuing Claimant Obligations using Petition Date prices of digital assets instead of current prices, the Debtors have "artificially depress[ed] the value of the Estates' assets, while inflating the creditor's claim." *Id.* ¶¶ 66, 68.

30.    The DCG Objection, thus, advocates for an asymmetrical approach to valuation whereby Claimant Obligations to the Debtors are valued based on current pricing while the GGC Obligations and GGC-Held Collateral are valued as of the Petition Date (the "***DCG Setoff Methodology***").  *See id.*

---

USD value of the Disputed Assets.  *See supra* footnotes 5-7.

[10] DCG originally filed its objection on February 5, 2024 [ECF No. 1247] but was directed by the Court to file an amended version of its objection that complied with the page limits set forth in the Case Management Order.  *See* ECF No. 1256.

31.    The table on the following page compares the Setoff Principles to the DCG Setoff Methodology and illustrates the asymmetrical approach advanced by DCG:

| Asset Description Under Setoff Principles | Debtors' Setoff Principles | DCG Setoff Methodology |
|---|---|---|
| Claimant Obligations (*i.e.*, GGC claims against Setoff Claimant for assets loaned by GGC to Setoff Claimant) | Petition Date | *Current Price* |
| GGC-Held Collateral (*i.e.*, assets pledged as collateral by Setoff Claimant to GGC) | Petition Date | Petition Date |
| GGC Obligations (*i.e.*, Setoff Claimant claims against GGC for assets loaned by Setoff Claimant to GGC) | Petition Date | Petition Date |

32.    The valuation dates selected by the DCG are extremely unfavorable to the Setoff Claimants and are extremely beneficial to DCG.  By selecting the current pricing as the date to value only the Claimant Obligations, the Setoff Claimants' payment obligations to GGC increase substantially, given the substantial appreciation in the value of digital assets since the Petition Date.  Similarly, by selecting the Petition Date as the date to value the GGC-Held Collateral and the GGC Obligations, the payment obligations of the GGC estate to the Setoff Claimants is substantially lower than if current pricing were used.

## THE SETOFF PRINCIPLES ARE REASONABLE, LOGICALLY CONSISTENT, EQUITABLE AND SHOULD BE APPROVED

33.    Creditor supports the Plan and respectfully requests that the Court confirm the Plan and enter the Confirmation Order.  In particular, Creditor requests that the Court approve the Setoff Principles for the reasons set forth below.

34.    The Bankruptcy Code does not mandate a specific methodology for valuing the assets, liabilities, or collateral of a debtor; instead, bankruptcy courts have discretion to apply a case-specific valuation methodology that takes into account the specific facts of the chapter 11 cases.  *See, e.g.*, *In re Sears Holding Corp.*, 51 F.4th 53, 61 n.4 (2d Cir. 2022) ("[T]he bankruptcy court is entitled to deference as to the appropriate time at which to value the collateral[.]" (citation

omitted)); *In re Hous. Reg'l Sports Network, L.P.*, 886 F.3d 523, 528, 532 (5th Cir. 2018) (stating

that "[t]he Bankruptcy Code itself does not dictate the appropriate valuation date for Chapter 11

bankruptcies" and "[w]e continue to follow the flexible approach to valuation timing that allows

the bankruptcy court to take into account the development of the proceedings"); *In re Heritage

Highgate, Inc.*, 679 F.3d 132, 141 (3d Cir. 2012) ("Congress envisioned a flexible approach to

valuation whereby bankruptcy courts would choose the standard that best fits the circumstances of

a particular case."); *In re Taylor*, 599 F.3d 880, 890 (9th Cir. 2010) (stating that a bankruptcy court

"has discretion on how to value the property").

35.    While these cases were decided in the context of valuing a secured claim under

Bankruptcy Code section 506(a), the cases are applicable here because Creditor's claims against

GGC are likewise secured by virtue of Creditor's setoff rights.  11 U.S.C. § 506(a)(1) ("An allowed

claim of a creditor secured by a lien on property in which the estate has an interest, ***or that is

subject to setoff under section 553 of this title,*** is a secured claim to the extent of the value of such

creditor's interest in the estate's interest in such property, ***or to the extent of the amount subject

to setoff***, as the case may be . . . .") (emphasis added).

36.    Cases decided outside of the section 506(a) context have likewise applied a case-

specific valuation methodology that takes into account the facts and circumstances of the chapter

11 cases.  *See, e.g.*, *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004)

(Bankruptcy Code section 550(a) "does not define value nor indicate at what time value is to be

determined") (internal quotations omitted); *In re Brooks*, 452 B.R. 809, 816–17 (Bankr. D. Kan.

2011) ("[Section] 550(a) does not mandate that the trustee receive the value of an avoided lien, but

rather provides the bankruptcy court with the discretion to fashion relief that places the estate in

the position it would have occupied had the transfer not occurred.").

37.     Similarly, when adjudicating requests to set off mutual debts in bankruptcy, courts are not required to apply a specific methodology for valuing the debts that are subject to the proposed setoff, including the amount of debt owed to the estate by the creditor (*i.e.,* a Claimant Obligation). *See, e.g.*, *In re Secs. Grp. 1980*, 74 F.3d 1103, 1114 (11th Cir. 1996) ("[S]et off under § 553 is merely permissive and subject to the discretion of the bankruptcy court."); *In re Moody & Newton, Inc.*, 71 B.R. 55, 57-58 (Bankr. M.D. Fla. 1987) (taking a flexible approach to valuing collateral in the context of an "insufficiency analysis" instead of selecting a specific valuation date); *In re Schertz Hardware, Inc.*, Nos. 99-82828, 00-8048, 2001 WL 34076351, at *5 (Bankr. C.D. Ill. Mar. 14, 2001) (looking to Bankruptcy Code section 506(a) regarding calculations of "claim" and "debt" for setoff purposes rather than any date mandated by Bankruptcy Code section 553); *see also* S. Rep. No. 95-989, at 68 (1978) ("The subsection [506(a)] also provides for the valuation of claims which involve setoffs under section 553.").

38.     Here, the specific facts and circumstances of these Chapter 11 Cases support the Setoff Principles' use of the Petition Date as the proper date to value the Claimant Obligations, GGC-Held Collateral, and GGC Obligations.

39.     ***First***, the Setoff Principles are logically consistent, while the DCG Setoff Methodology is not.  Under the Setoff Principles, ***each*** of the Claimant Obligations, GGC-Held Collateral and GGC Obligations are valued as of the Petition Date.  The DCG Setoff Methodology, by contrast, is simply the result of cherry-picking.  Under the DCG Setoff Methodology, Claimant Obligations are valued as based on current pricing, while the GGC-Held Collateral and GGC Obligations are valued as of the Petition Date.  DCG Objection ¶ 68.  DCG does not cite to a single case to support its uneven valuation approach.[11]

---

[11] DCG cites *Cohen v. Drexel Burnham Lambert Grp., Inc.* (*In re Drexel Burnham Lambert Grp., Inc.*), 138 B.R. 687 (Bankr. S.D.N.Y. 1992) and *In re Mushroom Transp. Co.*, 382 F.3d 325 (3d Cir. 2004) for the proposition that

40.    ***Second***, the Debtors could have used a different valuation methodology than the methodology set forth in the Setoff Principles with a resulting higher total net claim amount against the Debtors' estates.  For example, the GGC-Held Collateral could be valued using current prices, which would provide the Setoff Claimants with the appreciation in value of the GGC-Held Collateral since the Petition Date and result in significantly higher claims for the Setoff Claimants.  Similarly, the GGC Obligations could be valued using current prices, which would provide the Setoff Claimants with the appreciation in value of the digital assets underlying the GGC Obligations and likewise result in significantly higher claims for the Setoff Claimants.[12]  The Setoff Principles, however, do not use those methodologies, although the Debtors certainly had ample authority to do so.

41.    The fact that the Setoff Principles do not use valuation methodologies that would have resulted in higher net claims for the Setoff Claimants also undermines DCG's baseless smear attack that "a small group of particularly powerful creditors have [] inserted favorable setoff provisions that allow them to minimize their obligations to the Debtors while maximizing their recoveries."  DCG Objection ¶ 8; *see also id.* ¶¶ 71-73 (DCG arguing that the Debtors "simply acquiesce[d] to creditors' demands" and that the Setoff Principles "were devised, in large part, to

---

"Chapter 11 debtors are obligated to ***maximize*** the value of the estate as a whole—not ***minimize*** the value of the estate and ***maximize*** the value of certain creditors' residual deficiency claims to the detriment of the overall estate."  DCG Objection ¶ 70 (emphasis in original).  Those cases are inapposite.  *Drexel* addressed whether the debtor should assume or reject a prepetition employment contract and, in that context, the court noted that "[d]etermining in a given case whether to assume or reject is a function of the trustee's routine duties … to maximize the value of property the estate has inherited from the pre-petition debtor and to minimize the pre-petition claims against the estate."  *Drexel*, 138 B.R. at 705 (citations omitted).  In *Mushroom*, the court held that, for purposes of tolling the statute of limitations, the debtor failed to exercise reasonable diligence over its agent who stole millions of dollars from the debtor.  In that context, the court noted that the debtor's "fiduciary duty to maximize" the value of the bankruptcy estate "includes the duty to protect and conserve property in its possession for the benefit of creditors."  *Mushroom*, 382 F.3d at 339 (internal quotations and citations omitted).  Here, the Debtors exercised their fiduciary duties in good faith when they determined that the Setoff Principles were an "integral" component of the Plan.  *See* ECF No. 1144 at 2.  DCG offers no legitimate basis to question the Debtors' business judgment.

[12] In fact, in their confirmation objection, the Genesis Crypto Creditors Ad Hoc Group argues against the use of Petition Date pricing to value crypto creditors' claims against the Debtors and advocates, instead, for valuation of such claims as of the Plan's Effective Date under section 562 of the Bankruptcy Code.  *See* ECF No. 1238 at 3.

engender support for the Debtors' Amended Plan by one particularly influential creditor sitting on the UCC"). If that were true, then the Setoff Principles would value the GGC-Held Collateral and/or GGC Obligations using current prices, giving the Setoff Claimants the benefit of the appreciation in value of the underlying digital assets, while using Petition Date prices to value Claimant Obligations to the Debtors. The Setoff Principles do no such thing. Instead, they evenly apply Petition Date pricing across the board to the parties' mutual obligations, representing compromises by all affected parties.

42.  *Third*, besides being logically inconsistent, the DCG Setoff Methodology is also extremely unfair. It takes *all* of the appreciation in the value of cryptocurrency since the Petition Date away from the Setoff Claimants and gives it to the GGC bankruptcy estate (thus potentially benefiting DCG). Specifically, if the Claimant Obligations are valued using current prices rather than the Petition Date (as proposed by DCG), the appreciation in cryptocurrency during the Chapter 11 Cases becomes a substantial *incremental* obligation owed by the Setoff Claimants to the GGC bankruptcy estate (thus potentially benefiting DCG). Moreover, by pegging the GGC Obligations and the GGC-Held Collateral to their Petition Date value, the Setoff Claimants do not receive any of the appreciation in value of the cryptocurrency underlying the GGC Obligations and GGC-Held Collateral. The DCG Setoff Methodology is thus doubly unfair to the Setoff Claimants. The Setoff Claimants are liable for all of the appreciation in cryptocurrency on the Claimant Obligations (the first level of unfairness) but get none of the appreciation in cryptocurrency on the GGC Obligations and GGC-Held Collateral (the second level of unfairness). By contrast, the Setoff Principles strike a fair balance between the Setoff Claimants and the GGC bankruptcy estate. Specifically, the Setoff Claimants receive the appreciation in cryptocurrency

on the Claimant Obligations, while the GGC estate receives the appreciation in cryptocurrency on the GGC Obligations and GGC-Held Collateral.

43.      **Fourth**, the DCG Setoff Methodology is particularly unfair in light of the serious allegations that have been leveled against DCG.  As this Court is aware, the Debtors' Special Committee, the Committee, the Ad Hoc Group and numerous other parties in interest, including the New York Attorney General and multiple other governmental agencies, have alleged that DCG engaged in serious misconduct prior to the Petition Date and that such misconduct may very well have precipitated the Chapter 11 Cases.  *See* ECF No. 1031 (Disclosure Statement), Art. IV(F) ("The Special Committee has concluded that there are colorable claims against certain DCG Parties for various causes of action, including potential claims based on alter ego theories, preference law, and other legally cognizable rights."); *see generally* Am. Compl., *New York v. Gemini Tr. Co., LLC, et al.*, Index No. 452784/2023 (Sup. Ct., N.Y. Cnty. Feb. 9, 2024) (detailing DCG's alleged misrepresentations and concealment with respect to the "DCG Scheme to conceal more than $1 billion in losses at the Genesis Entities").

44.      Under the DCG Setoff Methodology, however, ███████████████████ representing the appreciation in cryptocurrency during the Chapter 11 cases could flow away from the Setoff Claimants and to DCG.  Regardless of how DCG's misconduct is ultimately adjudicated, DCG should, at a very minimum, not be allowed to profit from the Chapter 11 Cases to the detriment of the Setoff Claimants.

45.      **Fifth**, in the specific case of Creditor, irrespective of how the Setoff Principles are adjudicated, it would be highly prejudicial to Creditor to calculate the Claimant Obligations using current prices, given that Creditor tried on multiple occasions **before the Petition Date** to set off the Collateral and replenish the Disputed Assets, but GGC responded by breaching its contractual

obligations. GGC would have no claims or setoff rights against Creditor if GGC had simply complied with its contractual obligations. GGC should not be allowed to benefit from its breaches.

46.    In sum, pursuant to the Court's broad authority to apply a valuation methodology that takes into account the specific facts and circumstances of these Chapter 11 Cases, the Court should approve the Setoff Principles.

## REGARDLESS OF WHETHER THE COURT APPROVES THE SETOFF PRINCIPLES, DCG'S SETOFF METHODOLOGY SHOULD NOT APPLY TO CREDITOR[13]

47.    As demonstrated by the Factual Background above, there are unique facts that support Creditor's rights of setoff and recoupment and claims against GGC such that, regardless of whether the Setoff Principles are approved, the DCG Setoff Methodology should not apply to Creditor. These facts include, without limitation: (i) Creditor never possessed or had custody of the Disputed Assets or Collateral; (ii) on multiple occasions prior to the Petition Date, GGC breached the MDCLA as well as the parties' prior course of dealing; (iii) if GGC had complied with the Callable Option Demands, GGC would have no setoff rights or claims against Creditor; and (iv) but for GGC's breaches, Creditor's claims against GGC would be significantly higher than the Allowed Creditor Net Claim resulting under the Setoff Principles. *See supra* Factual Background.[14]

48.    Despite Creditor's contractual rights and the parties' prior course of dealing, GGC failed to sell Collateral to replenish the Disputed Assets and failed to return any surplus Collateral

---

[13] In the DCG Objection, DCG argues: "If the Debtors want to propose setoffs, each should be brought to the Court with all of the facts laid out so the Court and all other parties in interest can consider the impact to the Estates." DCG Objection ¶ 75. While Creditor submits that the Setoff Principles should be confirmed as an integral part of the Plan, in the event that the Setoff Principles are not approved in connection with the Plan and/or the Plan is modified to exclude or alter the Setoff Principles, Creditor is prepared, at the appropriate time, to explain to the Court why the facts of his case support his claims against the Debtors, including in an amount **higher** than the Creditor Allowed Net Claim resulting under the Setoff Principles.

[14] To be clear, the Court need not adjudicate these Creditor-specific issues at the Confirmation Hearing. If, however, the Court declines to approve the Setoff Principles in connection with the Plan and/or the Plan is modified to exclude or alter the Setoff Principles, such ruling or modification, as applicable, should be without prejudice to and not affect, modify, alter or have any impact whatsoever on Creditor's rights, as set forth herein. *See infra*, Reservation of Rights.

to Creditor in breach of its obligations under the MDCLA. If GGC had complied with its contractual obligations (or acted in accordance with the parties' well-established course of dealing), the Disputed Assets would have been replenished in full, the November 2022 Transaction would have terminated weeks before the Petition Date, and GGC would have **no claims or setoff rights whatsoever against Creditor**. Indeed, GGC would have been required to return surplus Collateral to Creditor, which was worth approximately $██████[15] calculated in U.S. Dollars as of the Petition Date and which has since appreciated in value to approximately $██████[16] in U.S. Dollars (based on January 31, 2024 pricing).

49.    Based on these facts, it would be highly inequitable to value the Disputed Assets—which were never held by Creditor and which would have been replenished in full if GGC had not breached the MDCLA—using current pricing, as proposed by DCG. As part of a settlement, Creditor has nonetheless agreed to support the Setoff Principles under which Creditor is deemed to be holding the Disputed Assets (which has never been the case) and the Disputed Assets are valued as of the Petition Date, resulting in a Claimant Obligation in the amount of approximately $██████, even though this amount would be **zero** if GGC had not breached. *See infra* ¶ 51.

50.    Despite this concession, DCG asserts that the Disputed Assets should be valued based on current pricing. Based on the price of BTC and ADA as of January 31, 2024, the value of the Disputed Assets is approximately $██████. *See infra* ¶ 51.

51.    The table on the following page illustrates the different outcomes.

---

[15] This amount is equal to (a) $██████ (the USD value of the Collateral as of the Petition Date) less (b) $██████ (the USD value of the Disputed Assets as of the Petition Date). *See supra* ¶ 27.
[16] This amount is equal to $██████ (the USD value of the surplus Collateral as of the Petition Date) divided by $1,554.65/ETH (the Petition Date price of ETH), which results in ██████ ETH, which as of January 31, 2024 was equal to $██████ (*i.e.*, the price of ETH as of January 31, 2024 was $2,281.60.). For pricing, *see* https://www.coinbase.com.

| Type of Disputed Coin | Number of Disputed Coins | Price of Coin in USD | Value in USD |
|---|---|---|---|
| **Valuation of Disputed Assets Under Setoff Principles (using Petition Date pricing)** | | | |
| BTC | | $16,980.08 (as of Petition Date) | $ |
| ADA | ███ | $0.34 (as of Petition Date) | $ |
| Interest accrued on the BTC and ADA through the Petition Date | | | $ |
| **Total Claimant Obligation Owed by Creditor to GGC** | | | $ |
| **Valuation of Disputed Assets Under DCG Setoff Methodology (using current pricing)** | | | |
| BTC | | $42,288.06 (as of Jan 31, 2024) | $ |
| ADA | ███ | $0.5937 (as of Jan 31, 2024) | $ |
| Interest accrued on the BTC and ADA through the Petition Date | | | $ |
| **Total Claimant Obligation Owed by Creditor to GGC** | | | $ |
| **Valuation of Disputed Assets if GGC had not breached MDCLA** | | | |
| BTC | 0 (because coins would have been returned to GGC) | | $0.00 |
| ADA | 0 (because coins would have been returned to GGC) | | $0.00 |
| Interest accrued on the BTC and ADA through the Petition Date | | | $0.00 |
| **Total Claimant Obligation Owed by Creditor to GGC** | | | **$0.00**[17] |

52.     Accordingly, it would be highly inequitable, under the unique facts and circumstances underlying Creditor's rights of setoff and recoupment and claims against GGC, to apply the DCG Setoff Methodology to Creditor.

### IF THE SETOFF PRINCIPLES ARE NOT APPROVED, THE PLAN MUST BE RESOLICITED

53.     The Setoff Principles are an "integral" component of the Plan that substantially impact Creditor's, and other Setoff Claimants', recovery(ies) and on which Creditor relied when voting in favor of the Plan. *See Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1144] ("[T]he forms of the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan."). Accordingly, in the event that the Court does not approve the Setoff Principles in connection with the Plan and/or the Plan is

---

[17] Indeed, this number would be negative because, if GGC had not breached, GGC would have owed ETH to Creditor on account of the surplus Collateral remaining after a portion had been liquidated to replenish the Disputed Assets. *See supra* ¶ 48.

modified to exclude or alter the Setoff Principles, Creditor's rights would be materially and adversely impacted and the Plan would need to be resolicited.  *See* 11 U.S.C. § 1127(a); Fed. R. Bankr. P. 3019(a); *see also In re Am.-CV Station Grp., Inc.*, 56 F.4th 1302, 1305 (11th Cir. 2023) ("When a modification to a Chapter 11 reorganization plan materially and adversely affects the treatment of a class of claim or interest holders, those claim or interest holders are entitled to a new disclosure statement and another opportunity to vote.").

## **RESERVATION OF RIGHTS**

54.     Creditor expressly reserves all rights, remedies, and arguments, without waiver, with respect to the Plan and this Statement, including the right to supplement or add to the legal and factual arguments set forth herein and to further respond to any arguments at the Confirmation Hearing or otherwise.

55.     For the reasons described herein, there are unique facts underlying Creditor's rights of setoff and recoupment and claims against GGC.  Accordingly, if the Court declines to approve the Setoff Principles in connection with the Plan and/or the Plan is modified to exclude or alter the Setoff Principles, such ruling or modification, as applicable, should be without prejudice and shall not affect, modify, alter or have any impact whatsoever on: (a) Creditor's rights of setoff or recoupment, including without limitation, Creditor's ability to argue that an alternative valuation methodology should be used to determine Creditor's rights of setoff and recoupment; (b) Creditor's right to file a motion or other pleading with this Court seeking entry of an order authorizing Creditor to exercise his rights of setoff or recoupment; and/or (c) Creditor's right to file a motion or other pleading with this Court seeking entry of an order allowing the Creditor's claims against the Debtors in an amount to be determined by this Court, including in an amount that is ***higher*** than the Creditor Allowed Net Claim.

## **CONCLUSION**

56.     For the reasons set forth herein, Creditor respectfully requests that the Court enter

the Confirmation Order, confirm the Plan, including the Setoff Principles, and grant such other

and further relief as is just and proper.

Dated: February 15, 2024
New York, New York

**KATTEN MUCHIN ROSENMAN LLP**

*/s/ Steven J. Reisman*
Steven J. Reisman
Shaya Rochester
Julia Mosse
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: (212) 940-8700
Email: sreisman@katten.com
        shaya.rochester@katten.com
        julia.mosse@katten.com

-and-

Patrick Smith (*pro hac vice* application pending)
2029 Century Park East
Suite 2600
Los Angeles, California 90067-3012
Email: Patrick.smith@katten.com

*Counsel for* ██████████████