**PRYOR CASHMAN LLP**
Seth H. Lieberman
Matthew W. Silverman
7 Times Square
New York, New York 10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
slieberman@pryorcashman.com
msilverman@pryorcashman.com

*Attorneys to the Ad Hoc Group of Dollar Lenders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*, | Case No. 23-10063 (SHL) |
| Debtors.[1] | Jointly Administered |

**STATEMENT OF THE AD HOC GROUP OF DOLLAR
LENDERS IN SUPPORT OF CONFIRMATION OF
DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

The Ad Hoc Group of Dollar Lenders (the "Dollar Ad Hoc Group") in the above-captioned Chapter 11 Cases, hereby files this statement in support of confirmation of the *Debtors' Amended Joint Chapter 11 Plan* [ECF No. 989] (the "Plan"),[2] and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The Plan should be confirmed and all objections to it, including the objections filed by Digital Currency Group, Inc. and DCG International Investments Ltd. (together, "DCG") [ECF No. 1257] (the "DCG Objection"), the Genesis Crypto Creditors Ad Hoc Group [ECF No. 1238]

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable) are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (9564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

(the "CCAHG Objection"), and the United States Trustee [ECF No. 1202] (the "UST Objection" and, together with the DCG Objection and the CCAHG Objection, the "Objections"), should be overruled.  The Plan is the result of exhaustive negotiations and collaboration among the Debtors, their creditors, and other stakeholders aimed at achieving a fair and equitable distribution of the Debtors' assets.  Success was far from guaranteed at the outset of these Chapter 11 Cases.  Now, however, the Debtors find themselves on the verge of confirming a Plan built upon a complex network of interconnected agreements involving various creditor groups designed to allow the Debtors to achieve a value-maximizing wind-down and an efficient distribution to creditors of, among other things, the Debtors' Cash and Digital Assets.  The Dollar Ad Hoc Group supports confirmation of the Plan.

2. The Plan is the product of extensive and challenging negotiations between the Debtors and their key stakeholders.  It satisfies the purpose and intent of the Chapter 11 process, embodying the spirit of compromise necessary for navigating and resolving complex competing interests among creditor classes.  The culmination of this process was the PSA entered into among the Debtors, the Committee and the PSA Creditors, which includes creditors holding claims against the Debtors denominated in USD, BTC, and ETH, pursuant to which the PSA Creditors agreed to support the Plan.

3. The Distribution Principles form the backbone of the Plan and led to the execution of the PSA.  They were heavily negotiated among several of the Debtors' creditor constituencies, including the Committee, the Ad Hoc Group, Gemini, and the Dollar Ad Hoc Group.  The Distribution Principles describe the allocation and distribution of the Debtors' current and future Distributable Assets, as well as GBTC shares and ETHE shares, under the Plan.  The Distribution Principles follow a five-step process, involving the calculation of a creditor's *pro rata* share of Allocable Assets, the valuation of Allocable Assets, allocation of Allocable Assets to the

2

appropriate Denomination Groups, and distributions.

4. The Distribution Principles reflect a detailed approach to maximizing in-kind and like-kind distributions to creditors. The proposed mechanisms, including the allocation of assets to specific Denomination Groups and the consideration of various asset types, demonstrate a commitment to fairness and efficiency in the distribution process and include components now embodied in treatments under the Plan. The resolution of the disputes among groups of creditors with claims denominated in varying currencies spares the Debtors from engaging in prolonged and costly legal battles with members of those groups during the confirmation process. That litigation would result in continued uncertainty faced by the Debtors, without any assurance of a favorable outcome.

5. The Plan should be confirmed because it complies with all of the requirements of the Bankruptcy Code and represents a viable path forward to emergence from these Chapter 11 Cases.

## STATEMENT IN SUPPORT OF PLAN

6. The Dollar Ad Hoc Group has worked collaboratively with the Debtors, the Committee, and the Ad Hoc Group to resolve critical issues raised by these Chapter 11 Cases, leading to a plan of reorganization that maximizes recoveries for all unsecured creditors of the Debtors.

7. The Plan is the product of extensive arms-length, good faith negotiations, culminating in an agreement among the Debtors and the major constituencies of these Chapter 11 Cases, which provides for a substantial near-term distribution to creditors and preserves certain causes of action against the DCG Parties and others that will fund additional long-term distributions.

8. As evidenced by the PSA and the ballots cast in favor of the Plan, the Plan is

supported by an overwhelming majority of the Debtors' unsecured creditors.[3]

9.  The Dollar Ad Hoc Group supports the Plan and hereby joins the Debtors' response to the Objections.

### A.  Payment of the Restructuring Fees and Expenses is Appropriate

10. The United States Trustee (the "U.S. Trustee") wrongly argues that section 503(b) of the Bankruptcy Code is the only legal basis for the Dollar Ad Hoc Group to receive payment of its fees and expenses, and that the Dollar Ad Hoc Group must first satisfy the Bankruptcy Code's substantial contribution requirements in order to procure reimbursement for its fees and expenses. *See* UST Objection, pp. 16-18.  The U.S. Trustee is mistaken.  In fact, "section 503(b) does not provide, in words or substance, that it is the *only* way by which fees of this character may be absorbed by an estate.  Thus, the Court is free to look to other provisions of the Code that might also authorize a payment." *In re Adelphia Commc'ns Corp.*, 441 B.R. 6, 12–13 (Bankr. S.D.N.Y. 2010) (emphasis in original; footnote omitted).

11. The U.S. Trustee ignores other relevant provisions of the Bankruptcy Code, including sections 363(b), 1123(b)(3) and (b)(6), 1129(a)(4), as well as Bankruptcy Rule 9019. Long-standing precedent, both in this district and districts throughout the country, have permitted confirmation of plans of reorganization that provide for the payment of fees and expenses of non-estate professionals. *See e.g., In re Purdue Pharma L.P.,* 633 B.R. 53, 66 (Bankr. S.D.N.Y. 2021) (confirming a plan that provided for the payment of fees of non-estate professionals negotiated as part of a settlement pursuant to section 1129(a)(4) and Rule 9019), *overruled on other grounds by* 2021 WL 5979108 (S.D.N.Y. Dec. 16, 2021); *In re Stearns Holdings, LLC,* 607 B.R. 781, 793 (Bankr. S.D.N.Y. 2019) (confirming a plan that provided for the payment of fees of non-estate

---

[3] *See* Exhibit A to the *Amended Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Amended Chapter 11 Plan* [ECF No. 1295].

professionals under Rule 9019); *In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Oct. 22, 2013) [ECF No. 10367] (confirming a plan that provided for the payment of fees of individual creditors under sections 1129(a)(4) and 1123(b)(6)); *Adelphia,* 441 B.R. at 14–19 (allowing payment of professional fees to non-estate professionals under a plan pursuant to sections 1123(b)(6) and 1129(a)(4)); *In re Mallinckrodt PLC,* 639 B.R. 837, 906 (Bankr. D. Del. 2022) (confirming a plan providing for the payment of fees of non-estate professionals pursuant to section 1129(a)(4) and Rule 9019 and overruling an objection premised on a section 503(b) argument raised by the U.S. Trustee); *In re Extraction Oil & Gas, Inc.,* No. 20-11548 (CSS) (Bankr. D. Del. Dec. 28, 2020) [ECF No. 1534], Dec. 23, 2020 Hr'g Tr. at 84:7–18 ("I would generally agree with this concept that 363 allows you to do anything unless it's controverted by the code in another provision . . . . So I don't think necessarily that 503 is exclusive on these issues . . . .");[4] *In re Vanguard Natural Resources, LLC,* No. 17-30560 (MI) (Bankr. S.D. Tex. 2017) [ECF No. 1109] (confirming a plan providing for the payment of fees of non-estate professionals pursuant to section 1123(b)(3) and Rule 9019).[5]

12.     The U.S. Trustee's reliance on *Davis v. Elliot Management Corp. (In re Lehman Bros. Holdings, Inc.)*, 508 B.R. 283 (S.D.N.Y. 2014) is misplaced. *See* UST Objection, p. 17. In *Lehman*, the debtors sought to include language in their plan that would allow for payment of professional fees and expenses of individual members of the creditors' committee "solely on the basis of their committee membership." *Lehman*, 508 B.R. at 291. Notably, this Court has

---

[4] A copy of the *Extraction Oil & Gas* confirmation hearing transcript is attached hereto as **Exhibit A**.

[5] *See also In re Bethlehem Steel Corp.*, No. 02-2854 (MBM), 2003 WL 21738964, at *10 (S.D.N.Y. July 28, 2003) (affirming bankruptcy court's approval of reimbursement of creditors' counsel's costs and expenses pursuant to sections 363(b) and 105(a)); *In re Mallinckrodt PLC*, No. 20-1252 (JTD), 2022 WL 906458 (D. Del. Mar. 28, 2022) (affirming bankruptcy court's approval of reimbursement of three ad hoc groups' professionals' fees and expenses pursuant to sections 363(b) and 365(a)); *In re Amyris, Inc.*, No. 23-11131 (TMH) (Bankr. D. Del. Sep. 7, 2023) [ECF No. 192] (allowing payment of professional fees of an ad hoc group pursuant to sections 105(a), 363(b) and 365).

previously rejected similar arguments as those offered by the U.S. Trustee here. *See In re AMR Corp.*, 497 B.R. 690, 695 (Bankr. S.D.N.Y. 2013) (overruling an objection by the U.S. Trustee and holding the payment of professional fees of individual members of the creditors committee contemplated under the plan was proper pursuant to sections 1129(a)(4) and 1123(b)(6)). Here, the Debtors propose to pay the fees of the Dollar Ad Hoc Group pursuant to a settlement, memorialized in the PSA and Plan, which was heavily negotiated and agreed to by the parties. *See* Plan, Art. II.E. In fact, the Plan provides that "[p]ursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 . . . the provisions of the Plan . . . shall constitute a good-faith compromise and settlement of all Claims and Interests" and "[t]he Plan shall be deemed a motion to approve the good-faith compromise and settlement . . . pursuant to Bankruptcy Rule 9019 . . . ." *See* Plan, Art. VIII.A.

13. The Second Circuit established in *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007),[6] that all that is required for the Court to approve a Rule 9019 compromise and settlement is a finding that the settlement is above the lowest point in the range of reasonableness. *See e.g., Sterns,* 607 B.R. at 793; *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 258 (Bankr. S.D.N.Y. 2016). *See also, In re Genesis Glob. Holdco, LLC*, No. 23-10063 (SHL), 2023 WL 6543250 (Bankr. S.D.N.Y. Oct. 6, 2023) (approving the settlement agreement with FTX Debtors under Rule 9019). Moreover, it makes no difference whether the Court analyzes the settlements set forth in the Plan under section 1123 or Rule 9019 because the standards are the same. *Sabine*, 555 B.R at

---

[6] *Iridium* established certain factors should consider, including: "(1) The balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining." *Iridium,* 478 F.3d at 462.

256 (citing *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co., Inc.)*, 177 B.R. 791, 794 n. 4 (S.D.N.Y.1995) ("Irrespective of whether a claim is settled as part of a plan pursuant to section 1123(b)(3)(A) of the Bankruptcy Code or pursuant to separate motion under Bankruptcy Rule 9019, the standards applied by the Bankruptcy Court for approval are the same."), *aff'd*, 68 F.3d 26 (2d Cir.1995)). Additionally, a sound business reason is all that is required of a debtor that seeks to pay the fees of non-estate professionals pursuant to section 363, and deference is given to a debtor's business judgment. *See e.g., Official Comm. Of Unsecured Creditors of Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 29-32 (S.D.N.Y. 2005); *Bethlehem Steel*, 2003 WL 21738964, at *12.

14.    To the extent that DCG makes similar arguments, *see* DCG Objection ¶ 93, the Court should similarly reject its argument that the Dollar Ad Hoc Group's fees and expenses be disallowed. Like the U.S. Trustee, DCG suggests that the Dollar Ad Hoc Group must demonstrate that it made a substantial contribution for its fees and expenses to be reimbursed under the Plan. Alternatively, DCG summarily argues that the payment of those fees and expenses are unreasonable in violation of Section 1129(a)(4). *See id*.

15.    DCG's arguments fail for the same reasons as those set forth by the U.S. Trustee. Section 503(b) is not the only avenue by which a debtor can reimburse the fees and expenses of a non-estate professional. *See, e.g., Stearns*, 607 B.R. at 793 (citing *In re Charter Commn'cs*, 419 B.R. 221 (Bankr. S.D.N.Y. 2009) (finding that "where consideration is paid pursuant to a settlement, the Court need not review such payment under section 503(b) of the Bankruptcy Code")). In fact, courts routinely "endorse[] the notion that a debtor will sometimes need to negotiate certain payments to stakeholders in order to come to a consensual resolution . . ." *AMR Corp,* 497 B.R. at 695. That is precisely what occurred in these Chapter 11 Cases.

**B.     The CCAHG Objection Should be Overruled**

16.    The Dollar Ad Hoc Group joins in the arguments set forth in the Debtors' confirmation brief related to the treatment of the claims of members of the CCAHG. For the reasons set forth therein, the Dollar Ad Hoc Group respectfully requests that the Court overrule the CCAHG Objection.

## RESERVATION OF RIGHTS

17.    The Dollar Ad Hoc Group expressly reserves all rights, claims, arguments, defenses, and remedies with respect to the Objections, the Plan or any other issue in these Chapter 11 Cases, and to supplement, modify, and amend this statement in support of the Plan, and to raise additional arguments in writing or orally at the hearing on the Plan.

## CONCLUSION

18.    At bottom, the Plan comports with the requirements of the Bankruptcy Code, affords a meaningful, near-term distribution to the Debtors' creditors, and preserves valuable claims and causes of action against the DCG Parties, which will fund future distributions and will maximize overall recoveries for creditors.

19.    The Dollar Ad Hoc Group respectfully requests that the Court enter an order overruling the Objections and confirming the Plan.

Dated: New York, New York
      February 15, 2024

**PRYOR CASHMAN LLP**

*/s/ Seth H. Lieberman*
Seth H. Lieberman
Matthew W. Silverman
7 Times Square
New York, NY 10036
Telephone: (212) 421-4100
Email: slieberman@pryorcashman.com
       msilverman@pryorcashman.com

*Attorneys to the Ad Hoc Group of Dollar Lenders*