**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 23-10063 (SHL)<br><br>Jointly Administered |

**DIRECT TESTIMONY OF ADAM W. VEROST IN SUPPORT OF DIGITAL CURRENCY GROUP, INC.'S AND DCG INTERNATIONAL INVESTMENTS LTD.'S OBJECTION TO CONFIRMATION OF THE AMENDED JOINT PLAN OF <u>GENESIS GLOBAL HOLDCO, LLC, ET AL.</u>**

I, Adam W. Verost, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1. I submit this Declaration to provide the testimony that I would give at the confirmation hearing of the Amended Joint Chapter 11 Plan of Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific Pte. Ltd. (together, the "**Debtors**"), filed November 28, 2023 [Docket No. 989], including the supplements to the Amended Plan, filed December 29, 2023 [Docket No. 1117], January 6, 2024 [Docket No. 1131], January 8, 2024 [Docket No. 1137], and January 9, 2024 [Docket No. 1144] (and as may be further amended, supplemented or modified, the "**Amended Plan**"), scheduled to begin on February 26, 2024, in support of Digital Currency Group, Inc.'s and DCG International Investments Ltd.'s (together, "**DCG**") objection to confirmation of the Amended Plan.

2. The statements in this Declaration are, except as otherwise noted, based on information that is publicly available, provided by the Debtors or their advisors, or other interested

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these chapter 11 cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

- 1 -

parties, my personal knowledge, and Ducera's employees working directly with me or under my supervision or direction.[2]

## Background and Qualifications

3. I have been a Partner in Ducera since June 2015. Before joining Ducera, I held positions at other restructuring advisory firms, including, most recently as a Managing Director, at Perella Weinberg Partners L.P. I have also held positions at Kramer Capital Partners, LLC, Greenhill & Co., and Houlihan Lokey, Inc. I received a Bachelor of Science degree from Indiana University in Finance, Accounting, and International Business.

4. I have advised on numerous large, complex chapter 11 cases to debtors, creditor groups, asset purchasers, committees, boards of directors, and special committees in a number of bankruptcy matters including, but not limited to: (a) *In re CBL & Associates Properties, Inc., et al.*, Case No. 20-35226 (Bankr. S.D. Tex.); (b) *In re Specialty Retail Shops Holding Corp.*, Case No. 19-80064 (Bankr. D. Neb.); (c) *In re Atari Interactive, Inc.*, Case No. 13-10176 (Bankr. S.D.N.Y.); (d) *In re Masonite Corporation*, Case No. 09-10844 (Bankr. D. Del.); (e) *In re Complete Retreats*, LLC, Case No. 06-50245 (Bankr. D. Conn.); (f) *In re UAL Corporation, et al.*, Case No. 02-B48191 (Bankr. N.D. Ill.); (g) *In re Orius Corp.*, Case No. 05-63876 (Bankr. N.D. Ill.); (h) *In re Stations Holding Co.*, Case No. 02-10882 (Bankr. D. Del.); (i) *In re KCS Energy, Inc.*, Case No. 00-00028 (Bankr. D. Del.); (j) *In re Harnischfeger Industries, Inc.*, Case No. 99-2171 (Bankr. D. Del.); and (k) *In re Core Scientific, Inc.*, Case No. 22-90341 (Bankr. S.D. Tex.).

5. I hold the Series 7 and Series 63 securities licenses.

6. I have served as the Co-Chairman of Ducera's Fairness Opinion Committee since its inception.

---

[2] Capitalized terms used herein but otherwise not defined shall have the meanings given to such terms in the Amended Plan.

**Executive Summary**

7. As set forth in Section I below, ███████████████████████████████ ███████████████████████████████████████████ (the "**Final Recovery Model**"), ███████████████████████████████████████████ ███████████████████████████████████████████ █████. Under the Distribution Principles, the Debtors distribute this Excess Value to crypto-denominated creditors, resulting in creditors receiving ████████████████████ █████.[3]

8. The Excess Value rises ████████████████████████ if certain adjustments are made ██████████████, including ████████████████████████ ███████████████████████████████████████████ █████

9. As set forth in Section II below, ███████████████████████████ ███████████████████████████████████████████ ████████████████████████████████, resulting in creditors █████████ ███████████████████████████████████.

10. The difference between the Debtors' ████████████████████ is a function of several different assumptions, ████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ █████[4] ███████████████████████████████████████████ ███████████████████████████████████████████

---

[3] Total claims determined as of the Petition Date in USD will be referred to as "**Petition Date Claims**."
[4] ███████████████████████████████████████████.

- 3 -

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████.[5]

11.    ███████████████████████████████████████████████████████████

██████████ if certain adjustments are made ███████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████

12.    Finally, as set forth in Section III below, the definition of the Recovery Cap and other terms of the Distribution Principles and Setoff Principles materially reduce, if not wholly eliminate, the possibility of reaching the Recovery Cap through digital asset price appreciation. The Debtors' proposal thus materially reduces, if not wholly eliminates, the possibility of digital asset price appreciation creating Excess Value for distribution to holders of subordinated claims and equity.

## I.    High Case No-Deal Recoveries

13.    The first page of the Final Recovery Model states ██████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████.[6] The Final Recovery Model █████

████████████████████████████████,[7] ██████████████████████████

14.    I understand as follows with respect to the ██████████ the Final Recovery Model:

---

[5] ████████████████████████████████████████████████ GENESIS_CONF_00004284 at 91 ████████████████████████████████████████████
████ GENESIS_CONF_00004284 at 89 ██████████████████████████████████████
[6] GENESIS_CONF_00004284 at 85.
[7] GENESIS_CONF_00004284 at 86, n.1.

Pg 5 of 12

a. ███████████████████████████████████████.[8]

b. ███████████████████████████████████████.[9]

c. ███████████████████████████████████████
███████████████.[10]

d. ███████████████████████████████████████
███████████████████████████████.[11]

e. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████[12]

f. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

15. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

---

[8] GENESIS_CONF_00004284 at 86 ███████████████████████████
[9] ███████████████████████████████████████
GENESIS_CONF_00004284 at 87 █████████████████████████
[10] GENESIS_CONF_00004284 at 86 ███████████████████████
[11] GENESIS_CONF_00004284 at 86 ████████████████████████████
[12] *Id.*; Sciametta Dep. Tr. 47:11-48:7.

███████████████████████████████████████████████████████████████████
███████.

16. *Pricing Update.* ████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████.[13] ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████.

17. *Setoff Principles.* I understand that the Debtors have proposed Setoff Principles that would govern the calculation of net claims when a holder of a claim that is entitled to receive a distribution from the Debtors also owes a debt to the Debtors.[14] For these counterparties, the Setoff Principles determine the value of digital assets owed to the Debtors as of the Petition Date, rather than as of current pricing.[15] Given the appreciation of digital assets since the Petition Date, this decreases the value of the assets used for setoff and thereby increases the net claims against the Debtors. The Debtors calculate █████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████.[16]

18. ████████. ███████████████████████████████████████████████

---

[13] ████████████████████████████████████████████████████████ Sciametta Dep. Tr. 223:21-224:3. ██████████████████████████████████████████
██████████████████████████████████████████████████████████████████
████████████████ My calculations reflect █████████████████████████
████████████.
[14] *See* GENESIS_DCG_CONF_00000373 at 78; *see also* Amended Plan Supplement filed January 9, 2024, at 5 [Docket No. 1144].
[15] Sciametta 72:16-23; GENESIS_DCG_CONF_00000373 at 78.
[16] GENESIS_DCG_CONF_00000382; Sciametta Dep. Tr. 73:15-21. *See also* Sciametta Dep. Tr. 91:3-11.

[REDACTED].[17] [REDACTED]

[REDACTED] [REDACTED][18] [REDACTED]

[REDACTED]

19. In sum, [REDACTED]

[REDACTED]



20. Excess Value would further increase if, for example, [REDACTED]

[REDACTED][20] or [REDACTED]

[REDACTED]

[REDACTED].

## II.    Low Case No-Deal Recoveries

21. I further understand as follows with respect [REDACTED] the Final Recovery Model:

---

[17] GENESIS_CONF_00004284 at 87, n.3.
[18] *See* Amended Plan, Section III.K
[19] [REDACTED]
[REDACTED].
[20] *See* GENESIS_CONF_00004284 at 87. The Debtors [REDACTED]
[REDACTED]. Sciametta Dep. Tr. 53:3-54:12; 55:23-56:15.

a. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■.[21]

b. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■.[22]

c. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■.[23]

22. Excess Value ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■ if the following updates or modifications are applied ■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■.

 a. *Pricing Update.* ■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■.

 b. *Setoff Principles/*■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■.

23. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■,[24] ■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■.[25]

24. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

---

[21] GENESIS_CONF_00004284 at 91.
[22] GENESIS_CONF_00004284 at 91.
[23] GENESIS_CONF_00004284 at 91; Sciametta Dep. Tr. 49:3-16.
[24] Notice of Appointment of Official Committee of Unsecured Creditors, dated February 3, 2023 [Docket No. 53].
[25] Sciametta Dep. Tr. 154:19-155:17; 165:3-25.

23-10063-shl    Doc 1328    Filed 02/15/24    Entered 02/15/24 23:54:14    Main Document
Pg 9 of 12

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████.[26] █████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████

25.    ████████████████████████████████████████

█████████████████████████████████████████████

██████████████████:



---

[26] ████████████████████████████████████████████████████████████████████████████████████████. Sciametta Dep. Tr. 149:2-21; 151:17-152:11.

[27] ████████████████████████████████████████████████████████████████████████████

- 9 -

### III. Impact of Distribution Principles on Claims and Recoveries

26. The Distribution Principles establish a Recovery Cap equal to 100% of the in-kind Claim Assets underlying such Holders' Allowed Unsecured Claims.[28] Excess Value is not distributed to holders of subordinated claims and equity unless and until the Recovery Cap is reached.

27. Mathematically, the definition of the Recovery Cap and other terms of the Distribution Principles and Setoff Principles materially reduce, if not wholly eliminate, the possibility of reaching the Recovery Cap through digital asset appreciation; and thus operate to materially reduce, if not wholly eliminate, the possibility of digital asset price appreciation creating Excess Value for distribution to holders of subordinated claims and equity.

28. By formulaically linking the Debtors' liabilities to the Debtors' assets, the Distribution Principles mathematically reduce the possibility of reaching the Recovery Cap through digital price appreciation.

   a. For example, with every price-driven increase in the value of the Debtors' BTC assets, the Debtors' in-kind BTC liability within the Recovery Cap is recalculated using the same increased BTC price.

   b. Generally, this causes the liability to increase proportionally with assets; e.g., a 5% increase in BTC price increases both the Debtors' BTC assets by 5% and BTC liabilities by 5%.

   c. Since asset growth must chase an increasing dollar value of the Recovery Cap, the possibility of reaching the Recovery Cap is reduced relative to a fixed dollar value Recovery Cap.

---

[28] Amended Plan, Exhibit A, Distribution Principles, at 8 [Docket No. 989].

29. The interaction between the Distribution Principles and Setoff Principles also mathematically reduces the possibility of reaching the Recovery Cap through digital price appreciation.

    a. The Setoff Principles fix the calculated value of certain loans receivable at Petition Date value.[29]

    b. Consequently, if prices of digital assets increase and cause in-kind liabilities to increase, the loans receivable remain fixed at their stipulated value, unable to appreciate to offset the in-kind liability growth.

30. Under certain circumstances, by formulaically linking the Debtors' liabilities to the Debtors' assets, the Distribution Principles mathematically eliminate the possibility of reaching the Recovery Cap through digital price appreciation.

    a. For example, if the Debtors are "short" an asset (i.e., in-kind liabilities are greater than in-kind assets), the growth of in-kind liabilities caused by price increases will outpace the growth of assets caused by price increases. If the price doubles: the asset value doubles, the in-kind claims double, and the shortfall of assets to liabilities doubles.

    b. The Final Recovery Model shows ███████████████████████████████████████████████████████████████.[30] ███████████████████████████████████████

    c. The Debtors' detailed liquidity file[31] and loan book[32] ████████████████████████████████████████████████████████

---

[29] Amended Plan Supplement filed January 9, 2024, at 5 [Docket No. 1144].
[30] GENESIS_CONF_00004284 at 86, 91.
[31] GENESIS_DCG_CONF_00000380.
[32] AM_GEGCB_0014545.

.

\* \* \*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| Dated: February 15, 2024<br>New York, New York | By: /s/ Adam W. Verost<br>Adam W. Verost<br>**Ducera Partners, LLC**<br>11 Times Square, 36th Floor<br>New York, NY 10036<br>Telephone: (212) 671-9757<br>Email: averost@ducerapartners.com |