WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jeffrey D. Saferstein
Jonathan D. Polkes
Caroline Hickey Zalka
Jessica Liou
Furqaan Siddiqui

*Attorneys for Digital Currency Group, Inc.*
*and DCG International Investments Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*, | Case No. 23-10063 (SHL) |
| Debtors.[1] | Jointly Administered |

**DIGITAL CURRENCY GROUP, INC.'S AND DCG INTERNATIONAL**
**INVESTMENTS LTD.'S MOTION FOR AUTHORITY TO FILE**
**THE VEROST DIRECT TESTIMONY DECLARATION UNDER SEAL**

Digital Currency Group, Inc. ("**DCG**") and DCG International Investments Ltd. ("**DCGI**"

together, the "**DCG Parties**") hereby submit this motion (the "**Motion**") for entry of an order,

substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to

sections 105(a) and 107(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule

9018 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9018-1

of the Local Rules for the United States Bankruptcy Court for the Southern District of New York

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R) (collectively, the "**Debtors**"). For the purpose of these chapter 11 cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

(the "**Local Rules**"), authorizing the DCG Parties to redact and file under seal portions of *Adam W. Verost's Direct Testimony In Support of Digital Currency Group, Inc.'s and DCG International Investments LTD.'s Objection to Confirmation of the Debtors' Amended Plan* (the "**Verost Direct Declaration**"), attached hereto as __Exhibit B,__ that quotes or references certain confidential or commercially sensitive testimony and documentation produced by certain parties during discovery related to confirmation of the Amended Plan. The DCG Parties are filing the Verost Direct Declaration with the proposed redactions contemporaneously herewith. In support of this Motion, the DCG Parties respectfully state as follows:

**Background**

1.      On April 20, 2023, the Court entered the *Stipulation and Confidentiality Agreement and Protective Order* (the "**Protective Order**") (Docket No. 238). Pursuant to paragraph 13 of the Protective Order, documents reflecting or referring to confidential information must be filed under seal. *Id.*, ¶13.

2.      On October 24, 2023, the Debtors filed an amended chapter 11 plan, commonly referred to as the "No Deal Plan." *See Debtors' Amended Joint Chapter 11 Plan* (Docket No. 838) (as amended, modified, or supplemented from time to time, the "**Amended Plan**"). The Debtors simultaneously filed a disclosure statement with the Amended Plan. *Amended Disclosure Statement with Respect to the Amended Joint Plain of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* (Docket No. 839) (as amended, modified, or supplemented from time to time, the "**Disclosure Statement**").

3.      The Debtors revised their proposed chapter 11 plan several times, with the most recent version filed as the Amended Plan on November 28, 2023 (Docket No. 989), which the Court approved for solicitation on December 6, 2023. *See Order Authorizing Debtors' Motion to Approve (I) The Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting*

2

*Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto (Docket No. 1027)* (the "**Disclosure Statement Order**") (Docket No. 1031).

4.      The DCG Parties objected to confirmation of the Amended Plan on February 5, 2024, and amended the objection the next day, on February 6, 2024. *See Digital Currency Group, Inc. and DCG International Investments Ltd.'s Objection to Confirmation of the Debtors' Amended Plan* (Docket Nos. 1248 and 1257, respectively) (the "**DCG Parties' Objection**").

5.      Pursuant paragraph 47 of the *Order Implementing Certain Notice And Case Management Procedures (Docket No. 44)*, all direct testimony must be submitted by affidavit or declaration to the adversary and the Court no later than three (3) business days before the hearing. The date of the confirmation hearing is currently February 26, 2024. *See Order (I) Adjourning (A) Confirmation Hearing, (B) SEC Settlement Motion And (C) Related Deadlines And (II) Authorizing Debtors To Shorten Notice Period Regarding Debtors' Motion To Approve NYAG Settlement* (Docket No. 1305).

## Jurisdiction and Venue

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, dated January 31, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1.

## Relief Requested

7.      The DCG parties respectfully request that this Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, authorizing the DCG Parties to redact and

file confidential and commercially sensitive portions of the Verost Direct Declaration, and

directing the Verost Direct Declaration remain under seal, confidential, and unavailable to any

third party without further order from the Court, *provided*, *however*, that copies shall be provided

on a confidential basis to the Court, the Debtors, the U.S. Trustee, the official committee of

unsecured creditors (the "**Committee**") and, subject to the DCG Parties' and the Debtors' consent

or an order of the Court, other parties that so request and have assented to the terms of the

Protective Order (as defined below).

## Basis for Relief

8.      Section 107(b) of the Bankruptcy Code is a codified exception to the general rule

of access and protects entities from potential harm caused by the disclosure of confidential

information.  Section 107(b)(1) provides, in relevant part, that a court may "protect an entity with

respect to a trade secret or confidential research, development, or commercial information."  11

U.S.C. § 107(b).  Bankruptcy Rule 9018 and Local Rule 9018-1 establish the procedure by which

a party in interest may obtain a protective order authorizing the filing of a document under seal

pursuant to section 107(b) of the Bankruptcy Code.  Bankruptcy Rule 9018 provides, in relevant

part, "[o]n motion or its own initiative, with or without notice, the court may make any order which

justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential

research, development, or commercial information . . . ."  Fed. R. Bank. P. 9018.  Section 105(a)

of the Bankruptcy Code further allows the court under its equitable powers to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11

U.S.C. § 105(a).

9.      Section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018 are designed to

"protect business entities from disclosure of information that could reasonably be expected to

cause the entity commercial injury."  *In re Glob. Crossing*, Ltd., 295 B.R. 720, 725 (Bankr.

4

S.D.N.Y. 2003). If the Court determines that filed documents are covered by Section 107(b), the Court must issue a remedy that will protect the interested party and "has no discretion to deny the application." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994); *see also In re Northstar Energy, Inc.*, 315 B.R. 425, 428 (Bankr. E.D. Tex. 2004) ("In fact, § 107(b) *mandates* the protection of certain types of information, including 'confidential commercial information.'") (emphasis in original); *In re Glob. Crossing*, 295 B.R. at 725. Section 107(b) is "designed to protect 'business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury.'" *In re Northstar Energy, Inc.*, 315 B.R. at 429 (*citing In re Glob. Crossing, Ltd.*, 295 B.R. at 725).

10.     Courts have recognized the term "commercial information" is broad under section 107(b) of the Bankruptcy Code. "Commercial information" need not rise to the level of a trade secret to be protected by section 107(b) and the moving party is not required to demonstrate "good cause." *In re Orion Pictures*, 21 F.3d at 28.[2] Once a court determines that a party in interest is seeking protection of information that falls within the ambit of section 107(b) of the Bankruptcy Code, "the court is required to protect a requesting interested party and has no discretion to deny the application." *Id*. Courts have further held that the resulting sealing order should be broad (*i.e.*, "any order which justice requires"). *In re Glob. Crossing, Ltd.*, 295 B.R. at 724; *In re MF Global, Inc.*, 2012 WL 3260393, at *2 (Bankr. S.D.N.Y. 2012) (citing to *Orion*, 21 F.3d at 27 (emphasis in original)); *see also* Fed. R. Bankr. P. 9018.

---

[2]     This Court and other courts in this District have granted relief for similar requests to file commercially sensitive business information under seal. *See*, *e.g.*, Order, *In re Avianca Holdings S.A., et al.*, Case No. 20-11133 (MG) (S.D.N.Y. Bankr. June 19, 2020) (Docket No. 299) (business and personal information); Order, In re *Walter Inv. Mgmt. Corp.*, Case No. 17-13446 (JLG) (S.D.N.Y. Bankr. Dec. 13, 2017) (Docket No. 83) (business information).

11.    Moreover, a court has broad authority to issue an order under Bankruptcy Rule 9018.  *See, e.g.*, *In re Global Crossing*, 295 B.R. at 724 ("When the requirements of Rule 9018 are satisfied, the authority to issue the resulting order is broad – any order which justice requires.  The Court notes that the authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice.") (internal citations omitted); *In re MF Global*, at *3 ("In cases where protection is required, however, the form of protection that must be granted is not commanded by the statute.  The Court has discretion when deciding how to protect commercial information.").

2.    This Court has entered an order in these cases, pursuant to 11 U.S.C. § 107(b), to protect commercially sensitive and confidential information.[3]  Specifically, on April 20, 2023, the Court entered the Protective Order, which established procedures to facilitate the production and exchange of Discovery Material (as defined in 2(b) of the Protective Order) that (i) contains confidential, trade secret, proprietary, or commercially sensitive business, financial, customer, or client information; (ii) contains private or confidential personal information; (iii) contains information that, pursuant to any domestic or foreign law, regulation, or court order, is kept confidential or is subject to restrictions on its use or disclosure; (iv) is subject to a confidentiality agreement or other form of non-disclosure agreement that (A) was entered into in good faith and for a legitimate business purpose and (B) was in effect on the date of entry of this Confidentiality Stipulation; (v) is otherwise entitled to protection under 11 U.S.C. § 107(b) or (c), Federal Rule of

---

[3]    The Court similarly entered an order authorizing the Debtors, pursuant to sections 107(c) and 105(a) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1, to redact the names, home addresses and email addresses of individuals listed on the consolidated creditors list and the addresses and email addresses of other creditors listed on the consolidated creditors list or other documents filed with this Court.  (Docket No. 694).

Civil Procedure 26(c), or Federal Rule of Bankruptcy Procedure 9018; and/or (vi) contains any other category of information given Confidential status by the Court. (Docket No. 238). Pursuant to the Protective Order, producing parties can designate Discovery Material as Confidential Material or Highly Confidential Material as applicable. Receiving parties may only use and disclose such material in accordance with the provisions of the Protective Order. Pursuant to paragraph 13, any document reflecting or referring to information that a party has designated as confidential must comply with all relevant rules for electronic filing under seal.

3.      Here, the Verost Direct Declaration contains references to confidential and sensitive non-public information disclosed to DCG during discovery pursuant to a non-disclosure agreement. Moreover, the redacted documents and testimony have been marked as "Highly Confidential Materials" by the agreement of the Debtors, the Committee, and other parties participating in discovery related to confirmation of the Amended Plan. Pursuant to that non-disclosure agreement and the agreement of the parties, the DCG Parties have agreed to hold this information in the strictest confidence and not disclose the same without permission of the parties. The DCG Parties do not have the Debtors' or other parties' consent to disclose the redacted information. Importantly, the relief requested in this Motion relates solely to documents and testimony that the parties, during the course of discovery, have marked as highly confidential.

4.      It is necessary to file the Verost Direct Declaration under seal in order to prevent the disclosure of confidential and commercially sensitive information that would harm the Debtors and/or creditors.

5.      Courts regularly grant requests to seal information of this kind. *In re Borders Group, Inc.*, 462 B.R. 42 (Bankr. S.D.N.Y. 2011) (sealing portions of a share purchase agreement containing commercial information); *In re Cred, Inc.*, Case No. 20-12836 (JTD), 2020 WL

13577187 (Bankr. D. Del. Sept. 21, 2020) (granting motion to redact the publication of personal identification information); *In re Zohar III, Corp., et al.*, Case No. 18-10512 (CSS) (Bankr. D. Del. May 17, 2018), D.I. 263 (authorizing debtors to file portions of settlement agreement and related information under seal).

6.      By this Motion, the DCG Parties respectfully request the Court enter the Proposed Order authorizing the DCG Parties to redact and file confidential and commercially sensitive portions of the Verost Direct Declaration under seal in accordance with the Bankruptcy Code, Bankruptcy Rule 9018, Local Rule 9018-1, and directing the Verost Direct Declaration remain confidential and under seal, and that no such information shall be made available to anyone, other than as set forth in the order approving this Motion.  The DCG parties will also provide unredacted copies of the Verost Direct Declaration to the Court, the Debtors, the U.S. Trustee, the Committee and, subject to the DCG Parties' and the Debtors' consent or an order of the Court, such other parties that may request and have signed the Protective Order.

## Notice

7.      The DCG Parties have provided notice of this Motion in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* (Docket No. 44).  The DCG Parties submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## No Prior Request

8.      No prior request for the relief requested herein has been made to this or any other Court.

## Conclusion

**WHEREFORE**, for the reasons set forth herein, the DCG Parties respectfully request that this Court (a) enter an order, substantially in the form attached hereto as **Exhibit A** and (b) grant such other and further relief as is just and proper.

Dated: February 15, 2024             Respectfully submitted,
      New York, New York

*/s/  Jeffrey D. Saferstein*
Jeffrey D. Saferstein
Jonathan D. Polkes
Caroline Hickey Zalka
Jessica Liou
Furqaan Siddiqui
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310-8000
Fax:  (212) 310-8007
jeffrey.saferstein@weil.com
jonathan.polkes@weil.com
caroline.zalka@weil.com
jessica.liou@weil.com
furqaan.siddiqui@weil.com

*Attorneys for Digital Currency Group, Inc.
and DCG International Investments Ltd.*

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*[1], | Case No.: 23-10063 (SHL) |
| Debtors | Jointly Administered |

### ORDER AUTHORIZING DIGITAL CURRENCY GROUP, INC.'S AND DCG INTERNATIONAL INVESTMENTS LTD.'S MOTION FOR AUTHORITY TO FILE THE VEROST DECLARATION AND DIRECT TESTIMONY UNDER SEAL

Upon the Motion[2] of Digital Currency Group, Inc. ("**DCG**") and DCG International Investments Ltd. ("**DCGI**" together, the "**DCG Parties**") for entry of an order (this "**Order**"), authorizing the DCG Parties to redact and file the declaration and direct testimony of Adam W. Verost (the "**Verost Direct Declaration**") and directing that such information remain confidential and under seal, as more fully described in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these chapter 11 cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]    All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

the Motion is in the best interests of the DCG Parties, the Debtors and their estates, creditors and

other parties in interest; and the Court having found that the DCG Parties' notice of the Motion

and opportunity for a hearing on the Motion was appropriate and no other notice need be provided;

and the Court having determined that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and all objections to the Motion (if any) having been

withdrawn or overruled; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

9.      The DCG Parties are authorized (i) to file the Verost Direct Declaration on the

public docket of this case in its redacted form, and (ii) to deliver to the Clerk of the Court a signed,

unredacted copy of this Order, hard copies and electronic copies of the Verost Direct Declaration

clearly labeled "FILED UNDER PENDING MOTION TO SEAL."

10.     The Verost Direct Declaration shall remain under seal and shall not be made

available, without the consent of the DCG Parties and the Debtors or without further order of this

Court, to anyone other than (on a confidential basis) this Court, the Debtors, the U.S. Trustee, the

Committee, and, subject to the DCG Parties' and the Debtors' consent or an order of the Court,

such other parties that may request and have signed the Protective Order.

11.     To the extent that the Verost Direct Declaration is attached or referred to in any

further pleadings or document filed with this Court relating to these chapter 11 Cases, this Order

shall apply to such pleading or document.

12.     Upon the passing of forty-five (45) days after the final disposition of the chapter 11

Cases, any party that has filed materials under seal shall reclaim all documents filed under seal or,

alternatively, the Office of the Clerk of the Court shall be authorized to destroy said documents in a manner consistent with the need to preserve confidentiality.

13.     Nothing in this Order prejudices the rights of any party in interest, including the U.S. Trustee, to seek, on appropriate motion, the unsealing of the Verost Direct Declaration, or any part thereof.

14.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation, interpretation or enforcement of this Order.

Dated: _____, 2024
      White Plains, New York

                                            _____
                                            HONORABLE SEAN H. LANE
                                            UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

**Redacted Verost Direct Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DIRECT TESTIMONY OF ADAM W. VEROST IN SUPPORT OF DIGITAL
CURRENCY GROUP, INC.'S AND DCG INTERNATIONAL INVESTMENTS LTD.'S
OBJECTION TO CONFIRMATION OF THE AMENDED JOINT PLAN OF
GENESIS GLOBAL HOLDCO, LLC, ET AL.**

I, Adam W. Verost, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1.      I submit this Declaration to provide the testimony that I would give at the confirmation hearing of the Amended Joint Chapter 11 Plan of Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific Pte. Ltd. (together, the "**Debtors**"), filed November 28, 2023 [Docket No. 989], including the supplements to the Amended Plan, filed December 29, 2023 [Docket No. 1117], January 6, 2024 [Docket No. 1131], January 8, 2024 [Docket No. 1137], and January 9, 2024 [Docket No. 1144] (and as may be further amended, supplemented or modified, the "**Amended Plan**"), scheduled to begin on February 26, 2024, in support of Digital Currency Group, Inc.'s and DCG International Investments Ltd.'s (together, "**DCG**") objection to confirmation of the Amended Plan.

2.      The statements in this Declaration are, except as otherwise noted, based on information that is publicly available, provided by the Debtors or their advisors, or other interested

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these chapter 11 cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

parties, my personal knowledge, and Ducera's employees working directly with me or under my supervision or direction.[2]

### Background and Qualifications

3.      I have been a Partner in Ducera since June 2015. Before joining Ducera, I held positions at other restructuring advisory firms, including, most recently as a Managing Director, at Perella Weinberg Partners L.P. I have also held positions at Kramer Capital Partners, LLC, Greenhill & Co., and Houlihan Lokey, Inc. I received a Bachelor of Science degree from Indiana University in Finance, Accounting, and International Business.

4.      I have advised on numerous large, complex chapter 11 cases to debtors, creditor groups, asset purchasers, committees, boards of directors, and special committees in a number of bankruptcy matters including, but not limited to: (a) *In re CBL & Associates Properties, Inc., et al.*, Case No. 20-35226 (Bankr. S.D. Tex.); (b) *In re Specialty Retail Shops Holding Corp.*, Case No. 19-80064 (Bankr. D. Neb.); (c) *In re Atari Interactive, Inc.*, Case No. 13-10176 (Bankr. S.D.N.Y.); (d) *In re Masonite Corporation*, Case No. 09-10844 (Bankr. D. Del.); (e) *In re Complete Retreats*, LLC, Case No. 06-50245 (Bankr. D. Conn.); (f) *In re UAL Corporation, et al.*, Case No. 02-B48191 (Bankr. N.D. Ill.); (g) *In re Orius Corp.*, Case No. 05-63876 (Bankr. N.D. Ill.); (h) *In re Stations Holding Co.*, Case No. 02-10882 (Bankr. D. Del.); (i) *In re KCS Energy, Inc.*, Case No. 00-00028 (Bankr. D. Del.); (j) *In re Harnischfeger Industries, Inc.*, Case No. 99-2171 (Bankr. D. Del.); and (k) *In re Core Scientific, Inc.*, Case No. 22-90341 (Bankr. S.D. Tex.).

5.      I hold the Series 7 and Series 63 securities licenses.

6.      I have served as the Co-Chairman of Ducera's Fairness Opinion Committee since its inception.

---

[2] Capitalized terms used herein but otherwise not defined shall have the meanings given to such terms in the Amended Plan.

**Executive Summary**

7.    As set forth in Section I below, ████████████████████████████

████████████████████████████████████████████████ (the "**Final

Recovery Model**"), ████████████████████████████████████████

████████████████████████████████████████████████████████

██████. Under the Distribution Principles, the Debtors distribute this Excess Value to crypto-

denominated creditors, resulting in creditors receiving ████████████████████

██████.[3]

8.    The Excess Value rises ████████████████████ if certain adjustments

are made ████████████, including ████████████████████████████

████████████████████████████████████████████████████████

████████

9.    As set forth in Section II below, ████████████████████████████

████████████████████████████    ████████████████████████████

████████████████████████████, resulting in creditors ██████████████

████████████████████████████.

10.    The difference between the Debtors' ████████████████████ is a function of

several different assumptions, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████[4] ████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[3] Total claims determined as of the Petition Date in USD will be referred to as "**Petition Date Claims**."
[4] ████████████████████████████████████████████████.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████.[5]

11.    ████████████████████████████████████████████████

██████████████ if certain adjustments are made ██████████████████████

██████████████████████████████████████████████████████████

██████████████████████

12.    Finally, as set forth in Section III below, the definition of the Recovery Cap and other terms of the Distribution Principles and Setoff Principles materially reduce, if not wholly eliminate, the possibility of reaching the Recovery Cap through digital asset price appreciation. The Debtors' proposal thus materially reduces, if not wholly eliminates, the possibility of digital asset price appreciation creating Excess Value for distribution to holders of subordinated claims and equity.

## I.    **High Case No-Deal Recoveries**

13.    The first page of the Final Recovery Model states ████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████.[6] The Final Recovery Model ██████

██████████████████████ ████,[7] ██████████████████████

14.    I understand as follows with respect to the ██████████ the Final Recovery Model:

---

[5] ██████████████████████████████████████ █ GENESIS_CONF_00004284 at 91 ██████████████████████████████████████████████████
  ██████ GENESIS_CONF_00004284 at 89 ████████████████████████████████████████
[6] GENESIS_CONF_00004284 at 85.
[7] GENESIS_CONF_00004284 at 86, n.1.



███████████████████████████████████████████████████████████████

████████.

16.    *Pricing Update.* ████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████.[13] ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████

17.    *Setoff Principles.* I understand that the Debtors have proposed Setoff Principles that would govern the calculation of net claims when a holder of a claim that is entitled to receive a distribution from the Debtors also owes a debt to the Debtors.[14] For these counterparties, the Setoff Principles determine the value of digital assets owed to the Debtors as of the Petition Date, rather than as of current pricing.[15] Given the appreciation of digital assets since the Petition Date, this decreases the value of the assets used for setoff and thereby increases the net claims against the Debtors. The Debtors calculate ████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████.[16]

18.    ████████.███████████████████████████████████████████████████

---

[13] █████████████████████████████████████████████████████████████Sciametta Dep. Tr. 223:21-224:3. ████████████████████████████████████████████████ My calculations reflect ███████████████████████████████████████ ████████████.

[14] *See* GENESIS_DCG_CONF_00000373 at 78; *see also* Amended Plan Supplement filed January 9, 2024, at 5 [Docket No. 1144].

[15] Sciametta 72:16-23; GENESIS_DCG_CONF_00000373 at 78.

[16] GENESIS_DCG_CONF_00000382; Sciametta Dep. Tr. 73:15-21. *See also* Sciametta Dep. Tr. 91:3-11.

████ .[17] ████████████████████████████████████

████████████ ██[18] ████████████████████████████

██████████

19.     In sum, ████████████████████████████

██████████████████████████ █

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

20.     Excess Value would further increase if, for example, ████████████

████████████████████████ ██[20] or ████████████████

████████████████████████████████████████████████

████ .

## II.     Low Case No-Deal Recoveries

21.     I further understand as follows with respect ████████████ the Final Recovery

Model:

---

[17] GENESIS_CONF_00004284 at 87, n.3.
[18] *See* Amended Plan, Section III.K
[19] ████████████████████████████████████████ .
[20] *See* GENESIS_CONF_00004284 at 87. The Debtors ████████████████████████
████████████████████████████████ . Sciametta Dep. Tr.
53:3-54:12; 55:23-56:15.

a. ██████████████████████████████████████.[21]

b. ████████████████████████████████.[22]

c. ████████████████████████████████████████████

████████████████████████████████████████.[23]

22.    Excess Value █████████████████████████████████████

███████████████████████████████████ if the following updates or

modifications are applied ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████.

a. *Pricing Update.* ████████████████████████████████

██████████████████████████████████

b. *Setoff Principles*██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████

23.    ████████████████████████████████████████

████████████████████████,[24] ██████████████████████████

████████████████████████████████████████████

██████████████████.[25]

24.    ████████████████████████████████████████

---

[21] GENESIS_CONF_00004284 at 91.

[22] GENESIS_CONF_00004284 at 91.

[23] GENESIS_CONF_00004284 at 91; Sciametta Dep. Tr. 49:3-16.

[24] Notice of Appointment of Official Committee of Unsecured Creditors, dated February 3, 2023 [Docket No. 53].

[25] Sciametta Dep. Tr. 154:19-155:17; 165:3-25.

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████[26] █████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████

25.    ████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████:



### III.    Impact of Distribution Principles on Claims and Recoveries

26.    The Distribution Principles establish a Recovery Cap equal to 100% of the in-kind Claim Assets underlying such Holders' Allowed Unsecured Claims.[28] Excess Value is not distributed to holders of subordinated claims and equity unless and until the Recovery Cap is reached.

27.    Mathematically, the definition of the Recovery Cap and other terms of the Distribution Principles and Setoff Principles materially reduce, if not wholly eliminate, the possibility of reaching the Recovery Cap through digital asset appreciation; and thus operate to materially reduce, if not wholly eliminate, the possibility of digital asset price appreciation creating Excess Value for distribution to holders of subordinated claims and equity.

28.    By formulaically linking the Debtors' liabilities to the Debtors' assets, the Distribution Principles mathematically reduce the possibility of reaching the Recovery Cap through digital price appreciation.

a.    For example, with every price-driven increase in the value of the Debtors' BTC assets, the Debtors' in-kind BTC liability within the Recovery Cap is recalculated using the same increased BTC price.

b.    Generally, this causes the liability to increase proportionally with assets; e.g., a 5% increase in BTC price increases both the Debtors' BTC assets by 5% and BTC liabilities by 5%.

c.    Since asset growth must chase an increasing dollar value of the Recovery Cap, the possibility of reaching the Recovery Cap is reduced relative to a fixed dollar value Recovery Cap.

---

[28] Amended Plan, Exhibit A, Distribution Principles, at 8 [Docket No. 989].

29.     The interaction between the Distribution Principles and Setoff Principles also mathematically reduces the possibility of reaching the Recovery Cap through digital price appreciation.

    a.  The Setoff Principles fix the calculated value of certain loans receivable at Petition Date value.[29]

    b.  Consequently, if prices of digital assets increase and cause in-kind liabilities to increase, the loans receivable remain fixed at their stipulated value, unable to appreciate to offset the in-kind liability growth.

30.     Under certain circumstances, by formulaically linking the Debtors' liabilities to the Debtors' assets, the Distribution Principles mathematically eliminate the possibility of reaching the Recovery Cap through digital price appreciation.

    a.  For example, if the Debtors are "short" an asset (i.e., in-kind liabilities are greater than in-kind assets), the growth of in-kind liabilities caused by price increases will outpace the growth of assets caused by price increases. If the price doubles: the asset value doubles, the in-kind claims double, and the shortfall of assets to liabilities doubles.

    b.  The Final Recovery Model shows ███████████████████████████ ███████████████████████████.[30] ████████████████ ███████████████

    c.  The Debtors' detailed liquidity file[31] and loan book[32] ███████████ ███████████████████████████████████

---

[29] Amended Plan Supplement filed January 9, 2024, at 5 [Docket No. 1144].
[30] GENESIS_CONF_00004284 at 86, 91.
[31] GENESIS_DCG_CONF_00000380.
[32] AM_GEGCB_0014545.



\*    \*    \*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated: February 15, 2024
      New York, New York

By: /s/ Adam W. Verost
    Adam W. Verost
    **Ducera Partners, LLC**
    11 Times Square, 36th Floor
    New York, NY 10036
    Telephone: (212) 671-9757
    Email: averost@ducerapartners.com