WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jeffrey D. Saferstein
Furqaan Siddiqui

*Attorneys for Digital Currency Group, Inc.*
*and DCG International Investments Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                          :
                                               :    Chapter 11
                                               :
**GENESIS GLOBAL HOLDCO, LLC**, *et al.*,      :    Case No. 23-10063 (SHL)
                                               :
                    Debtors.[1]                :    (Jointly Administered)
                                               :
------------------------------------------------------------x

DIGITAL CURRENCY GROUP, INC. AND DCG
INTERNATIONAL INVESTMENT, LTD'S OBJECTION TO
THE DEBTORS' REQUEST FOR ENTRY OF AN ORDER AUTHORIZING
EXAMINATION PURSUANT TO 11 U.S.C. § 105 AND FED. R. BANKR. P. RULE 2004

Digital Currency Group, Inc. and DCG International Investments, Ltd. (collectively, "**DCG**") submit this objection (the "**Objection**") to the *Debtors' Request for Entry of an Order Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. Rule 2004 (I) Authorizing the Examination of Digital Currency Group, Inc. and DCG International Investments, Ltd. and (II)*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these chapter 11 cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

*Granting Related Relief* [Docket No. 1303] (the "**Rule 2004 Application**")[2] and respectfully state as follows:

## Response and Limited Objection

1. The Debtors raise issues with the certain information requests needed for their internal compliance requirements in connection with DCG's payoff—through third-party financing (such party, the "**Financing Party**")—of the remaining undisputed amounts owed to GGC under that certain Master Loan Agreement between GGC and DCGI, dated June 21, 2019 (the "**DCGI MLA**") and that certain Amended and Restated Master Loan Agreement between GGC and DCG, dated November 10, 2022 (the "**DCG MLA**," and together with the DCGI MLA, the "**MLAs**").[3]

2. DCG has been working with the Debtors to provide the necessary AML/KYC/OFAC sanctions related information which the Debtors need to satisfy their internal compliance requirements. In fact, DCG's business team has been working directly with GGC's business team, and has included the Financing Party in such discussions, to provide GGC with such information directly. DCG understands that the Financing Party and GGC have undergone multiple rounds of information exchanges to fulfill GGC's requests of the Financing Party – and that there is one outstanding request from GGC to the Financing Party that is still pending.

3. DCG intends to continue to work with the Debtors to satisfy the requests *actually* needed for the Debtors to comply with their standard KYC policies and procedures, with an

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such term in that certain Partial Repayment Agreement, dated as of September 12, 2023, as amended by the Amendment to Partial Repayment Agreement, dated as of November 28, 2023, the "**PRA**").

[3] DCG refers to that certain Notice of Payoff letter, dated January 5, 2024 ("**Notice of Payoff**"), whereby the DCG Parties informed GGC that, on January 5, 2024 (the "**Payoff Date**"), the DCG Parties satisfied in full their respective obligations under the Loan Documents except for the Disputed Amounts (as defined the PRA).

understanding that DCG may not be in possession of all of the information the Debtors seek from DCG.  However, several aspects of the Debtors' Rule 2004 Application go beyond the scope of information needed by GGC to comply with their AML/KYC/OFAC sanctions related compliance and resemble more of a fishing expedition in connection with the Debtors' purported claims against DCG.  For example, the Debtors seek, among other things, loan documentation between DCG and the Financing Party.  The Debtors posit that the request concerns "the significant amount of indebtedness incurred by DCG as part of the Debtors' evaluation of the creditworthiness of DCG." Rule 2004 Application, pg. 8.  Rule 2004 forbids this type of fishing expedition in furtherance of an apparent ulterior motive.  *See id.*; *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Corp.*, Adv. Pro. No. 08-01789 (SMB), 2014 WL 5486279, at *3 (Bankr. S.D.N.Y. Oct. 30, 2014) (holding that Rule 2004 inquiries cannot meander into matters unrelated to the administration of the estate).

4. This request has nothing to do with the Debtors' compliance or regulatory needs, nor does it have any grounding in Rule 2004 itself.  *See* Fed. R. Bankr. P. Rule 2004 ("The examination of an entity under this rule…may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate.").  DCG's loan agreement and related documentation with the Financing Party simply does not fall within the scope of Rule 2004 under these circumstances. Such documentation does not relate to the Debtors, or to any matter which may affect the administration of the Debtors' estates.  In fact, if such a request related to the Debtors, the Debtors may as well seek every single agreement DCG has with *any* third party.

5. This does not constitute good cause.  The purpose of a Rule 2004 examination is to assist the moving party to "investigate the debtor, and the assets of and the claims against the

3

bankruptcy estate, turn the assets into cash and distribute those funds to creditors," but "where a proposed examination goes beyond that purpose it should be carefully scrutinized." *In re J&R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010); *see also In re Continental Forge Co., Inc.*, 73 B.R. at 1007 ("The examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper."). A Rule 2004 examination is not permitted for matters not related to the financial condition of the debtor and the moving party "bears the burden of proving that good cause exists for taking the requested discovery." *In re Metiom, Inc.*, 318 B.R. 263, 268 (Bankr. S.D.N.Y. 2004); *In re Drexel Burnham Lambert Group*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991); *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) amended, No. 1-91-10100, 1994 WL 731628 (Bankr. S.D. Ohio Aug. 2, 1994).

6. In determining whether good cause exists, a court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel*, 123 B.R. at 712; *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 392 (Bankr. W.D. Pa. 2008) (explaining that Bankruptcy Rule 2004 is not intended to permit discovery based on nothing more than curiosity of a party in interest and that "good cause" must be evaluated using a balancing test). Good cause is shown if the "examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.*, 318 B.R. at 268 (quoting *In re Dinubilo*, 177 B.R. 932, 943 (Bankr. E.D. Cal. 1993)); *see also In re Youk-See*, 450 B.R. 312, 320 (Bankr. D. Mass. 2011) ("Good cause is established if the party in interest seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests.") (citation omitted).

4

7.      Here, the Debtors have failed to show good cause for the Prior Requests (as defined in the Rule 2004 Application), as they simply do not relate at all to any KYC needs or any potential claim of the Debtors, and instead, relate solely to the confidential business relationship between DCG and the Financing Party.[4]  The Debtors cite to the "creditworthiness" of DCG – and refer to two highly disputed obligations—$33 million arising out of the Three Arrows Capital, Ltd. obligations, and $27 million in Late Fees and enforcement costs under the DCG MLA—plus the promissory note obligation due in nine years, as support for these requests.  These bases are wholly insufficient and DCG's loan agreement with the Financing Party is irrelevant to these disputed amounts and the nine-year promissory note.

8.      As the non-KYC information sought in the Rule 2004 Application is irrelevant to any of its purported claims, the Rule 2004 Application with respect to the non-KYC information should be denied.  *In re Johns-Manville Corp.*, 42 B.R. at 364-65 (reversing bankruptcy order granting Rule 2004 discovery because the requested information was irrelevant to the purported inquiry); *In re Continental Forge Co., Inc.*, 73 B.R. at 1007 (denying a Rule 2004 request where the requested documents were irrelevant or went beyond the scope of the purported inquiry); *Securities Investor Protection Corp.*, 2014 WL 5486279, at *3 (denying a Rule 2004 request because the information sought was irrelevant to the administration of the estate).

9.      The most fundamental limitation of Rule 2004 is that discovery must relate to the finances or management of the *debtor* or its estate: "the explicit language of Rule 2004 *requires that an examination concern the debtor or the debtor's estate." In re Underwood,* 457 B.R. 635, 645 (Bankr. S.D. Ohio 2011) (emphasis added). This is no less true when the examination is of a

---

[4] To the extent the Prior Requests do include KYC-related information requests, DCG understands that such information has been provided or that discussions are otherwise ongoing.

5

creditor or other third party, and the language in Rule 2004 allowing examination of "any matter relevant to the case" is not to the contrary. *Id.* at 644 ("[T]he use of a 2004 examination is not permitted for matters not related to the financial condition of a debtor or the debtor's estate.") (citation omitted). Consequently, requests for discovery under Rule 2004 that extend beyond the "acts, conduct, or property and financial condition of the debtor" as the Rule 2004 Application here requests are not for a proper purpose and therefore must be denied. *In re Hilsen*, No. 87-11261 (JMP), 2008 WL 2945996, at *1 (Bankr. S.D.N.Y. July 25, 2008).

### Reservation of Rights

10. DCG reserves all rights, claims, defenses, and remedies, including, without limitation, to supplement and amend this Response, to raise further and other objections, to introduce evidence prior to or at any hearing regarding the Rule 2004 Application in the event DCG's objections are not resolved prior to such hearing.

Dated: February 20, 2024
       New York, New York

Respectfully submitted,

*/s/ Jeffrey D. Saferstein*
Jeffrey D. Saferstein
Furqaan Siddiqui
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Tel:   (212) 310-8000
Fax:   (212) 310-8007
       Jeffrey.Saferstein@weil.com
       Furqaan.Siddiqui@weil.com

*Attorneys for Digital Currency Group, Inc. and DCG International Investments Ltd..*