**KATTEN MUCHIN ROSENMAN LLP**
Steven J. Reisman
Shaya Rochester
Julia Mosse
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: (212) 940-8700

-and-

Patrick Smith (*pro hac vice* application pending)
2029 Century Park East
Suite 2600
Los Angeles, California 90067-3012
Telephone: (312) 902-5379
Telephone: (310) 788-4400

*Counsel for Teddy André Amadéo Gorisse*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*, | Case No. 23-10063 (SHL) |
| Debtors.[1] | Jointly Administered |

**AMENDED STATEMENT IN SUPPORT OF CONFIRMATION OF
DEBTORS' AMENDED JOINT CHAPTER 11 PLAN, REPLY TO DCG'S PLAN
CONFIRMATION OBJECTION AND RESERVATION OF RIGHTS**

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number (as applicable) are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (9564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

    A.     Creditor's Pre-Petition Transactions with GGC ....................................... 3

    B.     GGC Breaches Its Contractual Obligations to Creditor........................... 5

    C.     The Genesis Chapter 11 Cases and the Setoff Principles ....................... 6

    D.     The DCG Objection ................................................................................. 7

THE SETOFF PRINCIPLES ARE REASONABLE, LOGICALLY CONSISTENT,
EQUITABLE AND SHOULD BE APPROVED ............................................................. 9

REGARDLESS OF WHETHER THE COURT APPROVES THE SETOFF
PRINCIPLES, DCG'S SETOFF METHODOLOGY SHOULD NOT APPLY TO
CREDITOR....................................................................................................................... 14

IF THE SETOFF PRINCIPLES ARE NOT APPROVED,  THE PLAN MUST BE
RESOLICITED ................................................................................................................. 16

RESERVATION OF RIGHTS .......................................................................................... 16

CONCLUSION.................................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cohen v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*,
   138 B.R. 687 (Bankr. S.D.N.Y. 1992) ........................................................................... 11

*In re Am.-CV Station Grp., Inc.*,
   56 F.4th 1302 (11th Cir. 2023) .................................................................................... 16

*In re Brooks*,
   452 B.R. 809 (Bankr. D. Kan. 2011) ............................................................................ 10

*In re Heritage Highgate, Inc.*,
   679 F.3d 132 (3d Cir. 2012) .......................................................................................... 9

*In re Hous. Reg'l Sports Network, L.P.*,
   886 F.3d 523 (5th Cir. 2018) ......................................................................................... 9

*In re Integra Realty Res., Inc.*,
   354 F.3d 1246 (10th Cir. 2004) .................................................................................... 10

*In re Moody & Newton, Inc.*,
   71 B.R. 55 (Bankr. M.D. Fla. 1987) ............................................................................ 10

*In re Mushroom Transp. Co.*,
   382 F.3d 325 (3d Cir. 2004) ......................................................................................... 11

*In re Schertz Hardware, Inc.*,
   Nos. 99-82828, 00-8048, 2001 WL 34076351 (Bankr. C.D. Ill. Mar. 14, 2001) ............... 10

*In re Sears Holding Corp.*,
   51 F.4th 53 (2d Cir. 2022) ............................................................................................ 9

*In re Secs. Grp. 1980*,
   74 F.3d 1103 (11th Cir. 1996) ...................................................................................... 10

*In re Taylor*,
   599 F.3d 880 (9th Cir. 2010) ......................................................................................... 9

*New York v. Gemini Tr. Co., LLC, et al.*,
   Index No. 452784/2023 (Sup. Ct., N.Y. Cnty. Feb. 9, 2024) ......................................... 13

**Statutes**

11 U.S.C § 506 ...................................................................................................................... 9

11 U.S.C. § 550 .................................................................................................................... 10

11 U.S.C. § 553 .................................................................................................................................... 10

11 U.S.C. § 562 .................................................................................................................................... 12

11 U.S.C. § 1127 .................................................................................................................................. 16

11 U.S.C. § 1129 .................................................................................................................................... 8

**Rules**

Fed. R. Bankr. P. 3019(a) ..................................................................................................................... 16

**Other Authorities**

S. Rep. No. 95-989 (1978) ................................................................................................................... 10

Teddy André Amadéo Gorisse ("*Creditor*"), by and through his undersigned counsel, hereby submits this *Amended Statement in Support of Confirmation of Debtors' Amended Joint Chapter 11 Plan, Reply to DCG's Plan Confirmation Objection and Reservation of Rights* (the "*Statement*").[2]  In support of this Statement, Creditor respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1.    Creditor supports confirmation of the Plan, including in particular the "Setoff Principles for Allowance of Certain Claims" contained in Exhibit M to the *Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1144] (the "*Setoff Principles*").

2.    The Setoff Principles represent a reasonable, logically consistent and fundamentally fair method for netting the mutual obligations owed by and to the Debtors and the affected creditors (defined herein as the "Setoff Claimants").  Specifically, the Setoff Principles apply Petition Date pricing to *all* of the parties' mutual obligations that are subject to setoff.  By using this approach, the Setoff Principles distribute the substantial appreciation in the value of cryptocurrency since the Petition Date to both the Setoff Claimants and the Debtors' bankruptcy estates.  As an alternative to this balanced approach, the Debtors could have employed several different valuation methodologies that would have allocated all or substantially all of the appreciation in cryptocurrency to the Setoff Claimants, which would have resulted in substantially higher claims against the Debtors' estates.  The Setoff Principles, however, do not do that and instead represent a compromise that strikes a fair balance between the Setoff Claimants and the Debtors' estates.

---

[2] On February 15, 2024, Creditor filed his original *Statement in Support of Confirmation of Debtors' Amended Joint Chapter 11 Plan, Reply to DCG's Plan Confirmation Objection and Reservation of Rights* [ECF No. 1317] (the "*Original Statement*").  This Statement replaces and supersedes the Original Statement.

[3] Capitalized terms used in this Preliminary Statement are defined subsequently in the Statement.  Capitalized terms used and not defined elsewhere in the Statement shall have the meaning ascribed to them in the Plan.

3.      The Setoff Principles' balanced valuation approach stands in stark contrast to the inconsistent and lopsided approach advanced by DCG (defined herein) in its *Objection to Confirmation of the Debtors' Amended Plan* [ECF No. 1257] (the "**DCG Objection**").   Under DCG's setoff valuation methodology, obligations owed by the Debtors to the Setoff Claimants are valued as of the Petition Date, while obligations owed by the Setoff Claimants to the Debtors are valued based on ***current pricing***.   Unsurprisingly, DCG does not cite a single legal authority to support this methodology.   Functionally, DCG's unbalanced approach takes all of the appreciation in the value of cryptocurrency during these Chapter 11 Cases away from the Setoff Claimants and gives it exclusively to the Debtors' estates and potentially to DCG.   As a result, substantial value could flow to DCG and away from the Setoff Claimants.

4.      DCG's approach is particularly inappropriate in light of the unique facts and circumstances underlying Creditor's claims against the Debtors.   Indeed, as set forth below, on multiple occasions prior to the Petition Date, the Debtors breached their contractual obligations to Creditor.   But for those breaches, ***the Debtors would have not have any claims or setoff rights against Creditor***.   In other words, Creditor would not be subject to the Setoff Principles at all if the Debtors had simply complied with their contractual obligations.   Thus, it would be highly prejudicial to calculate Creditor's alleged obligations to the Debtors using current pricing (as proposed by DCG), given that Creditor would have no obligation at all if the Debtors had complied with their contractual obligations.   Put simply, the Debtors should not be allowed to benefit from their breaches.

5.      While the Court need not address the facts and circumstances of Creditor's case at the Confirmation Hearing, they highlight the compromise that the Setoff Principles represent and the benefit that they provide to the Debtors' estates by fixing the amount of the Setoff Claimants'

net claims against the estates and avoiding the cost and risk of litigation. In the event that the Setoff Principles are not approved in their current form in connection with the Plan, Creditor reserves all of his rights, including his right to file a motion or other pleading seeking entry of an order allowing Creditor's claims against the Debtors in an amount that **exceeds the value** of Creditor's net claim resulting from the application of the Setoff Principles.

6.      It would also be particularly inappropriate to adopt DCG's setoff valuation approach, in light of the significant allegations of misconduct that have been levelled against DCG by numerous parties, including without limitation, the Debtors' Special Committee, the Committee and multiple governmental agencies, including the New York Attorney General. Regardless of how DCG's misconduct is ultimately adjudicated, DCG should, at a very minimum, not be allowed to profit from these Chapter 11 Cases to the detriment of the Setoff Claimants and other creditors.

7.      Finally, by the Debtors' own admission, the Setoff Principles are an integral component of the Plan. Further, Creditor relied upon the Setoff Principles when voting in favor of the Plan. Accordingly, if the Court does not approve the Setoff Principles in connection with the Plan and/or the Plan is modified to exclude or alter the Setoff Principles, Creditor's rights would be materially and adversely impacted and the Plan would need to be resolicited.

8.      For these reasons, as described in more detail below, Creditor respectfully requests that the Plan, including the Setoff Principles, be confirmed.

## FACTUAL BACKGROUND

### A.      Creditor's Pre-Petition Transactions with GGC

9.      Prior to the Petition Date, Debtor Genesis Global Capital, LLC ("**GGC**") and Creditor entered into multiple loan transactions involving digital assets. The parties' loan transactions were governed by various loan agreements, including the MDCLA and MLA (as such terms are defined below).

10.     On July 24, 2018, GGC and Creditor entered into that certain Master Digital Currency Loan Agreement (as amended, the "***MDCLA***") pursuant to which GGC agreed to loan certain digital assets, including Bitcoin tokens ("***BTC***"), to Creditor.  *See Declaration of Shaya Rochester in Support of Amended Statement by Creditor Teddy André Amadéo Gorisse in Support of Confirmation of Debtors' Amended Joint Chapter 11 Plan, Reply to DCG's Plan Confirmation Objection and Reservation of Rights* ("***Rochester Decl***."), Exhibit ("***Ex***.") A at 1.

11.     On May 10, 2019, GGC and Creditor entered into that certain Master Loan Agreement (as amended, the "***MLA***") pursuant to which Creditor agreed to lend U.S. Dollars or digital currency, including EthereumPoW tokens ("***ETHW***") and Ethereum tokens ("***ETH***"), to GGC.  Rochester Decl., Ex. B at 1-2.

12.     Pursuant to the MLA and loan term sheets, dated October 19, 2022 and October 26, 2022 (such transactions together, the "***October 2022 Transaction***"), Creditor loaned ETHW and ETH to GGC (collectively, the "***Loaned Assets***").

13.     Pursuant to the MDCLA and a loan term sheet, dated November 12, 2022 (such transaction, the "***November 2022 Transaction***"), GGC ***purported*** to loan BTC and Cardano tokens ("***ADA***"), to Creditor (together, the "***Disputed Assets***").  As part of the November 2022 Transaction, Creditor also delivered ETH to GGC as collateral for the Disputed Assets (the "***Collateral***").

14.     While the November 2022 Transaction was styled as a loan from GGC to Creditor, GGC maintained sole custody and possession over the Disputed Assets and Collateral at all times. *Id.*, Ex. C, § 7 at 2-3.

15.     Pursuant to the MDCLA, Creditor was entitled, at any time from 9:00 a.m. until 5:00 p.m. New York time on a business day, to exercise his "***Callable Option***" and deliver all or

any portion of the Disputed Assets "loaned" to Creditor.  *Id.*, Ex. A, § II(c).  The November 2022

Transaction was to terminate upon delivery of the Disputed Assets in connection with the Callable

Option.  *Id.* § II(d)(iii).

16.     Pursuant to the MDCLA, if Creditor did not return the Disputed Assets upon the

termination of the November 2022 Transaction, GGC was required to use the Collateral to

purchase BTC and ADA in order to replenish GGC's supply of the Disputed Assets.  *Id.* § IV(d).

Upon Creditor's exercise of the Callable Option, GGC was obligated to return the surplus

Collateral to Creditor after a sufficient amount of the Collateral had been liquidated to replenish

the Disputed Assets.  *Id.* § IV(e).

**B.      GGC Breaches Its Contractual Obligations to Creditor**

17.     On November 16, 2022, in breach of its contractual obligations, GGC announced

that it was unilaterally suspending repayments of its loan obligations to all of its lenders, including

Creditor (the "***GGC Repayment Suspension***").  ECF No. 1031 (Disclosure Statement), Art. V.

18.     Between November 15, 2022 and December 7, 2022, Creditor exercised the

Callable Option on at least *five* separate occasions (the "***Callable Option Demands***") and sought

to terminate the November 2022 Transaction pursuant to the MDCLA.  In each instance, GGC

failed to comply and thereby breached its obligations under the MDCLA.

19.     If GGC had complied with the Callable Option Demands, the Disputed Assets

would have been replenished in full, the November 2022 Transaction would have terminated

weeks before the Petition Date, GGC would have no setoff rights or claims against Creditor, and

GGC would have been required to return the surplus Collateral to Creditor.

C.    **The Genesis Chapter 11 Cases and the Setoff Principles**

20.    On January 19, 2023 (the "***Petition Date***"), the above-captioned debtors (the "***Debtors***") commenced these Chapter 11 cases (the "***Chapter 11 Cases***") in this Court.

21.    On November 28, 2023, the Debtors filed the *Debtors' Amended Joint Chapter 11 Plan* [ECF No. 989] (as amended, modified or supplemented, the "***Plan***"). On December 6, 2023, the Debtors filed the solicitation version of the Plan. ECF No. 1031. On February 15, 2024, the Debtors filed a further amended version of the Plan. ECF No. 1325.

22.    On December 29, 2023, the Debtors filed the *Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1117], which included, among other exhibits, Exhibit E listing certain digital assets and their U.S. Dollar equivalent as of 11:11 p.m. (Eastern) on the Petition Date (the "***Digital Assets Conversion Table***"). *See* Plan § I(A)(66), at 9, ECF No. 1031.

23.    On January 9, 2024, the Debtors filed the Setoff Principles,[4] which provide that all of the digital assets underlying the claims scheduled on the exhibit attached to the Setoff Principles (collectively the "***Scheduled Claims***" and such claimants, the "***Setoff Claimants***") shall be valued as of the ***Petition Date***. Setoff Principles, at 1-2; *see also* ECF No. 1117, Ex. E (Digital Assets Conversion Table).

24.    Specifically, the Setoff Principles provide that (a) all digital assets loaned by a Setoff Claimant to GGC (collectively, the "***GGC Obligations***"), (b) all digital assets borrowed by a Setoff Claimant from GGC (collectively, the "***Claimant Obligations***"), and (c) all digital assets pledged as collateral by a Setoff Claimant to GGC (collectively, the "***GGC-Held Collateral***"), shall ***each*** be valued in accordance with the Digital Assets Conversion Table, *i.e.*, as of the Petition

---

[4] For the avoidance of doubt, the term "Setoff Principles" as used herein refers only to the current proposed version of the Setoff Principles and excludes any modified version of the Setoff Principles.

Date.  *See* Setoff Principles, at 1-2.  The *Notice of Filing of Plan Supplement for the Debtors'
Amended Joint Chapter 11 Plan* that contains the Setoff Principles expressly provides that "the
forms of the documents contained in the Plan Supplement are integral to, and are considered part
of, the Plan."  ECF No. 1144 at 2.

25.    Creditor is a Setoff Claimant.  Accordingly, under the Setoff Principles, each of the
Loaned Assets loaned by Creditor to GGC, the Disputed Assets purportedly loaned by GGC to
Creditor, and the Collateral pledged by Creditor to GGC, are valued as of the Petition Date.

26.    If the Setoff Principles are approved by the Court, Creditor shall have an allowed
net claim against GGC equal to (a) the value of the Loaned Assets in U.S. Dollars as of the Petition
Date, *plus* (b) the value of the Collateral in U.S. Dollars as of the Petition Date, *less* (c) the value
of the Disputed Assets in U.S. Dollars as of the Petition Date, which allowed net claim will
subsequently be denominated and paid in ETH and ETHW in accordance with the Plan, on account
of the Loaned Assets and remaining Collateral after the setoff is effectuated (the "***Creditor Allowed
Net Claim***").  The Creditor Allowed Net Claim is exclusive of any interest accrued from and after
the Petition Date, which interest, if any, will be paid in accordance with the terms of the Plan and
the Court's determination on entitlement and amounts thereof.

### D.    The DCG Objection

27.    On February 6, 2024, Digital Currency Group, Inc. and DCG International
Investments Ltd. (together, "***DCG***") filed the DCG Objection.[5]  In the DCG Objection, DCG
argues, *inter alia*, that the Setoff Principles "violate the Bankruptcy Code and applicable law" by
allegedly "provid[ing] a select group" of creditors, including Creditor, a "windfall" as a result of

---

[5] DCG originally filed its objection on February 5, 2024 [ECF No. 1247] but was directed by the Court to file an
amended version of its objection that complied with the page limits set forth in the Case Management Order.  *See*
ECF No. 1256.

valuing the GGC Obligations, the Claimant Obligations, and the GGC-Held Collateral as of the Petition Date. *See* DCG Objection ¶ 66. In particular, DCG argues that the Setoff Principles are proposed by the Debtors in bad faith in violation of section 1129(a)(3) of the Bankruptcy Code, because by valuing Claimant Obligations using Petition Date prices of digital assets instead of current prices, the Debtors have "artificially depress[ed] the value of the Estates' assets, while inflating the creditor's claim." *Id.* ¶¶ 66, 68.

28.    The DCG Objection, thus, advocates for an asymmetrical approach to valuation whereby Claimant Obligations to the Debtors are valued based on current pricing while the GGC Obligations and GGC-Held Collateral are valued as of the Petition Date (the "***DCG Setoff Methodology***"). *See id.*

29.    The table below compares the Setoff Principles to the DCG Setoff Methodology and illustrates the asymmetrical approach advanced by DCG:

| Asset Description Under Setoff Principles | Debtors' Setoff Principles | DCG Setoff Methodology |
|---|---|---|
| Claimant Obligations (*i.e.,* GGC claims against Setoff Claimant for assets loaned by GGC to Setoff Claimant) | Petition Date | ***Current Price*** |
| GGC-Held Collateral (*i.e.,* assets pledged as collateral by Setoff Claimant to GGC) | Petition Date | Petition Date |
| GGC Obligations (*i.e.,* Setoff Claimant claims against GGC for assets loaned by Setoff Claimant to GGC) | Petition Date | Petition Date |

30.    The valuation dates selected by the DCG are extremely unfavorable to the Setoff Claimants and are extremely beneficial to DCG. By selecting the current pricing as the date to value only the Claimant Obligations, the Setoff Claimants' payment obligations to GGC increase substantially, given the substantial appreciation in the value of digital assets since the Petition Date. Similarly, by selecting the Petition Date as the date to value the GGC-Held Collateral and

the GGC Obligations, the payment obligations of the GGC estate to the Setoff Claimants is substantially lower than if current pricing were used.

## THE SETOFF PRINCIPLES ARE REASONABLE, LOGICALLY CONSISTENT, EQUITABLE AND SHOULD BE APPROVED

31.    Creditor supports the Plan and respectfully requests that the Court confirm the Plan and enter the Confirmation Order.  In particular, Creditor requests that the Court approve the Setoff Principles for the reasons set forth below.

32.    The Bankruptcy Code does not mandate a specific methodology for valuing the assets, liabilities, or collateral of a debtor; instead, bankruptcy courts have discretion to apply a case-specific valuation methodology that takes into account the specific facts of the chapter 11 cases.  *See, e.g.*, *In re Sears Holding Corp.*, 51 F.4th 53, 61 n.4 (2d Cir. 2022) ("[T]he bankruptcy court is entitled to deference as to the appropriate time at which to value the collateral[.]" (citation omitted)); *In re Hous. Reg'l Sports Network, L.P.*, 886 F.3d 523, 528, 532 (5th Cir. 2018) (stating that "[t]he Bankruptcy Code itself does not dictate the appropriate valuation date for Chapter 11 bankruptcies" and "[w]e continue to follow the flexible approach to valuation timing that allows the bankruptcy court to take into account the development of the proceedings"); *In re Heritage Highgate, Inc.*, 679 F.3d 132, 141 (3d Cir. 2012) ("Congress envisioned a flexible approach to valuation whereby bankruptcy courts would choose the standard that best fits the circumstances of a particular case."); *In re Taylor*, 599 F.3d 880, 890 (9th Cir. 2010) (stating that a bankruptcy court "has discretion on how to value the property").

33.    While these cases were decided in the context of valuing a secured claim under Bankruptcy Code section 506(a), the cases are applicable here because Creditor's claims against GGC are likewise secured by virtue of Creditor's setoff rights.  11 U.S.C. § 506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ***or that is***

*subject to setoff under section 553 of this title,* is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ***or to the extent of the amount subject to setoff***, as the case may be . . . .") (emphasis added).

34.     Cases decided outside of the section 506(a) context have likewise applied a case-specific valuation methodology that takes into account the facts and circumstances of the chapter 11 cases.  *See, e.g.*, *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004) (Bankruptcy Code section 550(a) "does not define value nor indicate at what time value is to be determined") (internal quotations omitted); *In re Brooks*, 452 B.R. 809, 816–17 (Bankr. D. Kan. 2011) ("[Section] 550(a) does not mandate that the trustee receive the value of an avoided lien, but rather provides the bankruptcy court with the discretion to fashion relief that places the estate in the position it would have occupied had the transfer not occurred.").

35.     Similarly, when adjudicating requests to set off mutual debts in bankruptcy, courts are not required to apply a specific methodology for valuing the debts that are subject to the proposed setoff, including the amount of debt owed to the estate by the creditor (*i.e.,* a Claimant Obligation).  *See, e.g.*, *In re Secs. Grp. 1980*, 74 F.3d 1103, 1114 (11th Cir. 1996) ("[S]et off under § 553 is merely permissive and subject to the discretion of the bankruptcy court."); *In re Moody & Newton, Inc.*, 71 B.R. 55, 57-58 (Bankr. M.D. Fla. 1987) (taking a flexible approach to valuing collateral in the context of an "insufficiency analysis" instead of selecting a specific valuation date); *In re Schertz Hardware, Inc.*, Nos. 99-82828, 00-8048, 2001 WL 34076351, at *5 (Bankr. C.D. Ill. Mar. 14, 2001) (looking to Bankruptcy Code section 506(a) regarding calculations of "claim" and "debt" for setoff purposes rather than any date mandated by Bankruptcy Code section 553); *see also* S. Rep. No. 95-989, at 68 (1978) ("The subsection [506(a)] also provides for the valuation of claims which involve setoffs under section 553.").

36.     Here, the specific facts and circumstances of these Chapter 11 Cases support the Setoff Principles' use of the Petition Date as the proper date to value the Claimant Obligations, GGC-Held Collateral, and GGC Obligations.

37.     *First*, the Setoff Principles are logically consistent, while the DCG Setoff Methodology is not.  Under the Setoff Principles, *each* of the Claimant Obligations, GGC-Held Collateral and GGC Obligations are valued as of the Petition Date.  The DCG Setoff Methodology, by contrast, is simply the result of cherry-picking.  Under the DCG Setoff Methodology, Claimant Obligations are valued based on current pricing, while the GGC-Held Collateral and GGC Obligations are valued as of the Petition Date.  DCG Objection ¶ 68.  DCG does not cite to a single case to support its uneven valuation approach.[6]

38.     *Second*, the Debtors could have used a different valuation methodology than the methodology set forth in the Setoff Principles with a resulting higher total net claim amount against the Debtors' estates.  For example, the GGC-Held Collateral could be valued using current prices, which would provide the Setoff Claimants with the appreciation in value of the GGC-Held Collateral since the Petition Date and result in significantly higher claims for the Setoff Claimants.  Similarly, the GGC Obligations could be valued using current prices, which would provide the

---

[6] DCG cites *Cohen v. Drexel Burnham Lambert Grp., Inc.* (*In re Drexel Burnham Lambert Grp., Inc.*), 138 B.R. 687 (Bankr. S.D.N.Y. 1992) and *In re Mushroom Transp. Co.*, 382 F.3d 325 (3d Cir. 2004) for the proposition that "Chapter 11 debtors are obligated to *maximize* the value of the estate as a whole—not *minimize* the value of the estate and *maximize* the value of certain creditors' residual deficiency claims to the detriment of the overall estate."  DCG Objection ¶ 70 (emphasis in original).  Those cases are inapposite.  *Drexel* addressed whether the debtor should assume or reject a prepetition employment contract and, in that context, the court noted that "[d]etermining in a given case whether to assume or reject is a function of the trustee's routine duties … to maximize the value of property the estate has inherited from the pre-petition debtor and to minimize the pre-petition claims against the estate."  *Drexel*, 138 B.R. at 705 (citations omitted).  In *Mushroom*, the court held that, for purposes of tolling the statute of limitations, the debtor failed to exercise reasonable diligence over its agent who stole millions of dollars from the debtor.  In that context, the court noted that the debtor's "fiduciary duty to maximize" the value of the bankruptcy estate "includes the duty to protect and conserve property in its possession for the benefit of creditors."  *Mushroom*, 382 F.3d at 339 (internal quotations and citations omitted).  Here, the Debtors exercised their fiduciary duties in good faith when they determined that the Setoff Principles were an "integral" component of the Plan.  *See* ECF No. 1144 at 2.  DCG offers no legitimate basis to question the Debtors' business judgment.

Setoff Claimants with the appreciation in value of the digital assets underlying the GGC Obligations and likewise result in significantly higher claims for the Setoff Claimants.[7] The Setoff Principles, however, do not use those methodologies, although the Debtors certainly had ample authority to do so. *See supra*, ¶¶ 32-35.

39.     The fact that the Setoff Principles do not use valuation methodologies that would have resulted in higher net claims for the Setoff Claimants also undermines DCG's baseless smear attack that "a small group of particularly powerful creditors have [] inserted favorable setoff provisions that allow them to minimize their obligations to the Debtors while maximizing their recoveries." DCG Objection ¶ 8; *see also id.* ¶¶ 71-73 (DCG arguing that the Debtors "simply acquiesce[d] to creditors' demands" and that the Setoff Principles "were devised, in large part, to engender support for the Debtors' Amended Plan by one particularly influential creditor sitting on the UCC"). If that were true, then the Setoff Principles would value the GGC-Held Collateral and/or GGC Obligations using current prices, giving the Setoff Claimants the benefit of the appreciation in value of the underlying digital assets, while using Petition Date prices to value Claimant Obligations to the Debtors. The Setoff Principles do no such thing. Instead, they evenly apply Petition Date pricing across the board to the parties' mutual obligations, representing compromises by all affected parties.

40.     ***Third***, besides being logically inconsistent, the DCG Setoff Methodology is also extremely unfair. It takes ***all*** of the appreciation in the value of cryptocurrency since the Petition Date away from the Setoff Claimants and gives it to the GGC bankruptcy estate (thus potentially benefiting DCG). Specifically, if the Claimant Obligations are valued using current prices rather

---

[7] In fact, in their confirmation objection, the Genesis Crypto Creditors Ad Hoc Group argues against the use of Petition Date pricing to value crypto creditors' claims against the Debtors and advocates, instead, for valuation of such claims as of the Plan's Effective Date under section 562 of the Bankruptcy Code. *See* ECF No. 1238 at 3.

than the Petition Date (as proposed by DCG), the appreciation in cryptocurrency during the Chapter 11 Cases becomes a substantial *incremental* obligation owed by the Setoff Claimants to the GGC bankruptcy estate (thus potentially benefiting DCG).  Moreover, by pegging the GGC Obligations and the GGC-Held Collateral to their Petition Date value, the Setoff Claimants do not receive any of the appreciation in value of the cryptocurrency underlying the GGC Obligations and GGC-Held Collateral.  The DCG Setoff Methodology is thus doubly unfair to the Setoff Claimants.  The Setoff Claimants are liable for all of the appreciation in cryptocurrency on the Claimant Obligations (the first level of unfairness) but get none of the appreciation in cryptocurrency on the GGC Obligations and GGC-Held Collateral (the second level of unfairness).  By contrast, the Setoff Principles strike a fair balance between the Setoff Claimants and the GGC bankruptcy estate.  Specifically, the Setoff Claimants receive the appreciation in cryptocurrency on the Claimant Obligations, while the GGC estate receives the appreciation in cryptocurrency on the GGC Obligations and GGC-Held Collateral.

41.    ***Fourth***, the DCG Setoff Methodology is particularly unfair in light of the serious allegations that have been leveled against DCG.  As this Court is aware, the Debtors' Special Committee, the Committee, the Ad Hoc Group and numerous other parties in interest, including the New York Attorney General and multiple other governmental agencies, have alleged that DCG engaged in serious misconduct prior to the Petition Date and that such misconduct may very well have precipitated the Chapter 11 Cases.  *See* ECF No. 1031 (Disclosure Statement), Art. IV(F) ("The Special Committee has concluded that there are colorable claims against certain DCG Parties for various causes of action, including potential claims based on alter ego theories, preference law, and other legally cognizable rights."); *see generally* Am. Compl., *New York v. Gemini Tr. Co., LLC, et al.*, Index No. 452784/2023 (Sup. Ct., N.Y. Cnty. Feb. 9, 2024) (detailing

DCG's alleged misrepresentations and concealment with respect to the "DCG Scheme to conceal more than $1 billion in losses at the Genesis Entities").

42.     Under the DCG Setoff Methodology, however, substantial value representing the appreciation in cryptocurrency during the Chapter 11 cases could flow away from the Setoff Claimants and to DCG.  Regardless of how DCG's misconduct is ultimately adjudicated, DCG should, at a very minimum, not be allowed to profit from the Chapter 11 Cases to the detriment of the Setoff Claimants.

43.     *Fifth*, in the specific case of Creditor, irrespective of how the Setoff Principles are adjudicated, it would be highly prejudicial to Creditor to calculate the Claimant Obligations using current prices, given that Creditor tried on multiple occasions *before the Petition Date* to set off the Collateral and replenish the Disputed Assets, but GGC responded by breaching its contractual obligations.  GGC would have no claims or setoff rights against Creditor if GGC had simply complied with its contractual obligations.  GGC should not be allowed to benefit from its breaches.

44.     In sum, pursuant to the Court's broad authority to apply a valuation methodology that takes into account the specific facts and circumstances of these Chapter 11 Cases, the Court should approve the Setoff Principles.

**REGARDLESS OF WHETHER THE COURT APPROVES THE SETOFF PRINCIPLES,
DCG'S SETOFF METHODOLOGY SHOULD NOT APPLY TO CREDITOR[8]**

45.     As demonstrated by the Factual Background above, there are unique facts that support Creditor's rights of setoff and recoupment and claims against GGC such that, regardless

---

[8] In the DCG Objection, DCG argues: "If the Debtors want to propose setoffs, each should be brought to the Court with all of the facts laid out so the Court and all other parties in interest can consider the impact to the Estates."  DCG Objection ¶ 75.  While Creditor submits that the Setoff Principles should be confirmed as an integral part of the Plan, in the event that the Setoff Principles are not approved in connection with the Plan and/or the Plan is modified to exclude or alter the Setoff Principles, Creditor is prepared, at the appropriate time, to explain to the Court why the facts of his case support his claims against the Debtors, including in an amount *higher* than the Creditor Allowed Net Claim resulting under the Setoff Principles.

of whether the Setoff Principles are approved, the DCG Setoff Methodology should not apply to Creditor. These facts include, without limitation: (i) Creditor never possessed or had custody of the Disputed Assets or Collateral; (ii) on multiple occasions prior to the Petition Date, GGC breached the MDCLA as well as the parties' prior course of dealing; (iii) if GGC had complied with the Callable Option Demands, GGC would have no setoff rights or claims against Creditor; and (iv) but for GGC's breaches, Creditor's claims against GGC would be significantly higher than the Allowed Creditor Net Claim resulting under the Setoff Principles. *See supra* Factual Background.[9]

46.     Despite Creditor's contractual rights and the parties' prior course of dealing, GGC failed to sell Collateral to replenish the Disputed Assets and failed to return any surplus Collateral to Creditor in breach of its obligations under the MDCLA. If GGC had complied with its contractual obligations (or acted in accordance with the parties' well-established course of dealing), the Disputed Assets would have been replenished in full, the November 2022 Transaction would have terminated weeks before the Petition Date, and GGC would have ***no claims or setoff rights whatsoever against Creditor***. Indeed, GGC would have been required to return surplus Collateral to Creditor, which has since appreciated in value due to the rise in cryptocurrency prices.

47.     Based on these facts, it would be highly inequitable to value the Disputed Assets— which were never held by Creditor and which would have been replenished in full if GGC had not breached the MDCLA—using current pricing, as proposed by DCG. As part of a settlement, Creditor has nonetheless agreed to support the Setoff Principles under which Creditor is deemed

---

[9] To be clear, the Court need not adjudicate these Creditor-specific issues at the Confirmation Hearing. If, however, the Court does not approve the Setoff Principles in connection with the Plan and/or the Plan is modified to exclude or alter the Setoff Principles, such lack of approval or modification, as applicable, should be without prejudice to and not affect, modify, alter or have any impact whatsoever on Creditor's rights, as set forth herein. *See infra*, Reservation of Rights.

to be holding the Disputed Assets (which has never been the case) and the Disputed Assets are valued as of the Petition Date, resulting in a substantial Claimant Obligation, even though the Claimant Obligation would be *zero* if GGC had not breached.

48.    Accordingly, it would be highly inequitable, under the unique facts and circumstances underlying Creditor's rights of setoff and recoupment and claims against GGC, to apply the DCG Setoff Methodology to Creditor.

### IF THE SETOFF PRINCIPLES ARE NOT APPROVED, THE PLAN MUST BE RESOLICITED

49.    The Setoff Principles are an "integral" component of the Plan that substantially impact Creditor's, and other Setoff Claimants', recovery(ies) and on which Creditor relied when voting in favor of the Plan.  *See Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1144] ("[T]he forms of the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan.").  Accordingly, in the event that the Court does not approve the Setoff Principles in connection with the Plan and/or the Plan is modified to exclude or alter the Setoff Principles, Creditor's rights would be materially and adversely impacted and the Plan would need to be resolicited.  *See* 11 U.S.C. § 1127(a); Fed. R. Bankr. P. 3019(a); *see also In re Am.-CV Station Grp., Inc.*, 56 F.4th 1302, 1305 (11th Cir. 2023) ("When a modification to a Chapter 11 reorganization plan materially and adversely affects the treatment of a class of claim or interest holders, those claim or interest holders are entitled to a new disclosure statement and another opportunity to vote.").

### RESERVATION OF RIGHTS

50.    Creditor expressly reserves all rights, remedies, and arguments, without waiver, with respect to the Plan and this Statement, including the right to supplement or add to the legal

and factual arguments set forth herein and to further respond to any arguments at the Confirmation Hearing or otherwise.

51.     For the reasons described herein, there are unique facts underlying Creditor's rights of setoff and recoupment and claims against GGC.  Accordingly, if the Court declines to approve the Setoff Principles in connection with the Plan and/or the Plan is modified to exclude or alter the Setoff Principles, such lack of approval or modification, as applicable, should be without prejudice and shall not affect, modify, alter or have any impact whatsoever on: (a) Creditor's rights of setoff or recoupment, including without limitation, Creditor's ability to argue that an alternative valuation methodology should be used to determine Creditor's rights of setoff and recoupment; (b) Creditor's right to file a motion or other pleading with this Court seeking entry of an order authorizing Creditor to exercise his rights of setoff or recoupment; and/or (c) Creditor's right to file a motion or other pleading with this Court seeking entry of an order allowing the Creditor's claims against the Debtors in an amount to be determined by this Court, including in an amount that is **_higher_** than the Creditor Allowed Net Claim.

[_remainder of page is intentionally blank_]

## **CONCLUSION**

52.     For the reasons set forth herein, Creditor respectfully requests that the Court enter

the Confirmation Order, confirm the Plan, including the Setoff Principles, and grant such other

and further relief as is just and proper.

Dated: February 21, 2024
New York, New York

                              **KATTEN MUCHIN ROSENMAN LLP**

                              */s/ Steven J. Reisman*
                              Steven J. Reisman
                              Shaya Rochester
                              Julia Mosse
                              50 Rockefeller Plaza
                              New York, NY 10020-1605
                              Telephone: (212) 940-8700
                              Email: sreisman@katten.com
                                         shaya.rochester@katten.com
                                         julia.mosse@katten.com

                              -and-

                              Patrick Smith (*pro hac vice* application pending)
                              2029 Century Park East
                              Suite 2600
                              Los Angeles, California 90067-3012
                              Email: Patrick.smith@katten.com

                              *Counsel for Teddy André Amadéo Gorisse*