# Exhibit A

## MASTER DIGITAL CURRENCY LOAN AGREEMENT

This Master Digital Currency Loan Agreement ("Agreement") is made on this 24th day of July, 2018 ("Effective Date") by and between Genesis Global Capital, LLC ("Genesis" or "Lender"), a corporation organized and existing under the laws of Delaware with its principal place of business at 111 Town Square Place, Suite 1203, Jersey City, NJ 07310 and Teddy Gorisse ("Teddy Gorisse" or "Borrower") an individual residing at ████████████████████████
████████████████████████

### RECITALS

**WHEREAS**, subject to the terms and conditions of this Agreement, Borrower may, from time to time, seek to initiate a transaction pursuant to which Lender will lend Bitcoin to Borrower and Borrower will return such Bitcoin to Lender upon the termination of the Loan; and

Now, therefore, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, the Borrower and the Lender hereby agree as follows:

### I.   Definitions

"*Authorized Agent*" has the meaning set forth in Exhibit A.

"*Borrow Fee*" means the fee paid by Borrower to the Lender for the Loan.

"*Borrower*" means Teddy Gorisse.

"*Business Day*" means a day on which Genesis is open for business. Genesis follows the New York Stock Exchange calendar of holidays.

"*Callable Option*" means the Borrower and Lender each have the option to redeliver or recall an Open Deal Loan at any time during the term of the deal.

"*Digital Currency*" means Bitcoin (BTC), Bitcoin Cash (BCH), Ether (ETH), Ether Classic (ETC), or Litecoin (LTC), or any digital currency that the Borrower and Lender agree upon.

*Digital Currency Address*" means an identifier of 26-34 alphanumeric characters that represents a possible destination for a transfer of Digital Currency.

"*Fixed Term (Puttable) Deal*" means a Loan with a pre-determined Maturity Date, where only Borrower can return the Digital Currency prior to maturity.

"*Fixed Term Deal*" means a Loan with a pre-determined Maturity Date, where neither the Lender nor the Borrower have an option, and to which Early Termination Fees (as defined below) apply.

"***Hard Fork***" means a permanent divergence in the block chain, commonly occurs when non-upgraded nodes can't validate blocks created by upgraded nodes that follow newer consensus rules, or an airdrop or any other event which results in the creation of a new token.

"***Lender***" means Genesis.

"***Loan***" means a request for a loan or an actual loan of Digital Currency made pursuant to and subject to this Agreement.

"***Loan Effective Date***" means the date upon which a Loan begins.

"***Maturity Date***" means the date upon which a Loan is terminated.

"***Open Deal***" means a Loan without a Maturity Date where Borrower may redeliver the Digital Currency and Lender to may recall the Digital Currency at any time, subject to this Agreement.

## II.   General Operation.

(a) Loans of Digital Currency

Subject to the terms and conditions hereof, Borrower may, in its sole and absolute discretion, request the Lender to a Loan to Borrower a specified amount of Digital Currency, and Lender may, in its sole and absolute discretion, extend such Loan or decline to extend such Loan.

(b) Loan Procedure

From time to time during the Term of this Agreement, at any time from the hours of 9:00 am New York time to 4:00 pm New York time on a Business Day (the "Request Day"), an Authorized Agent of Borrower may by email directed to ▮@genesiscap.com request from Lender a Loan of a specific number of Digital Currency (a "Lending Request"). Provided Lender receives such Lending Request prior to 3:00 pm New York time, Lender shall by email directed to ▮▮▮▮▮▮ inform Borrower whether Lender agrees to make such a Loan; Lender's failure to respond prior to 5:00 pm New York time on the day of the Lending Request shall be deemed as a denial of such Lending Request.

As part of its Lending Request, Borrower shall provide the following information:

(i)   The type of Digital Currency requested
(ii)  the amount of Digital Currency requested;
(iii) whether the Loan is a Fixed Term Deal, a Fixed Term (Puttable) Deal or an Open Deal;
(iv)  the Loan Effective Date; and
(v)   the Maturity Date (if a Fixed Term Deal or a Fixed Term (Puttable) Deal).

If Lender agrees to make a Loan, the Lender shall commence transmission to the Borrower's Digital Currency Address the amount of Digital Currency set forth in the Lending Request (the "Borrowed Amount") on or before 5:00 pm EST on the Request Day.

Specifics of a loan shall be memorialized using the Loan Term Sheet attached as Exhibit B.

(c) Callable Option

Applicable to Open Deal Loans, Lender may at any time from 9:00 am until 5:00 pm New York time on a Business Day (the "Recall Request Day") exercise the Callable Option and recall all or any portion of Digital Currency loaned to Borrower (the "Recall Amount"). Borrower will then have until 5.00 pm New York time on the second Business Day from the Recall Request Day (the "Recall Delivery Day") to deliver the Recall Amount.

Borrower may at any time from 9:00 am until 5:00 pm New York time on a Business Day (the "Redelivery Day") exercise the Callable Option and deliver all or any portion of Digital Currency loaned to Borrower.

(d) Termination of Loan

Loans will terminate:

 (i) If a Fixed Term Deal, upon redelivery by Borrower of the Digital Currency at the Maturity Date (or sooner if Borrower returns the Digital Currency and pays the Early Termination Fee);

 (ii) If a Fixed Term (Puttable) Deal, upon redelivery by Borrower of the Digital Currency at the Maturity Date or sooner;

 (iii) If an Open Deal, upon redelivery by Borrower of the Digital Currency once the Borrower or Lender exercises the Callable Option;

 (iv) If either a Term Deal or an Open deal, upon an Event of Default as defined in Section VII

(e) Redelivery of Borrowed Digital Currency

Upon termination of the Loan according to this Agreement, the Borrower shall commence redelivery of the borrowed Digital Currency on or before 5:00 pm New York time of the applicable Business Day (i.e., the Maturity Date, the Recall Delivery Day, or the Redelivery Day).

**III. Borrow Fees and Transaction Fees.**

(a) Borrow Fee Calculation

When a Loan is executed, the Borrower will be responsible to pay the Borrow Fee as agreed to in the relevant Loan Term Sheet, annualized and subject to change if agreed by Borrower and Lender. The Borrow Fee shall be payable, unless otherwise agreed by the Borrower and Lender, in the relevant Digital Currency.

Lender shall calculate any Borrow Fees owed on a daily basis and provide Borrower with the calculation upon request.

(b) Late Fee

For each Calendar Day in excess of the Maturity Date or the Recall Delivery Day (whichever is applicable) in which Borrower has not returned any Digital Currency, Borrower shall incur an additional fee (the "Late Fee") of 10% (annualized, calculated daily) of the notional amount of the Loan in addition to the Borrow Fee.

(c) Payment of Borrow Fees and Late Fees

An invoice for Borrow Fees and any Late Fees (the "Invoice Amount") shall be sent out on the first Business Day of the month and shall include any Borrow Fees incurred from the previous month. Borrower shall have up to five Business Days to submit payment for the invoice (the "Invoice Due Date").

(d) Early Termination Fees

If Borrower returns a Fixed Term Deal prior to the Maturity Date, Borrower shall pay to Lender an "Early Termination Fee" equal to twenty five percent (25%) of the Borrow Fee that would have accrued from the date of the repayment until the Maturity Date of the Loan. The Early Termination Fee is due upon the return of the borrowed Digital Currency. There is no Early Termination Fee due for any Loan other than a Fixed Term Deal, and the Early Termination Fee shall not apply if Borrower returns the borrowed Digital Currency to Lender in the event of a Hard Fork (as defined in Section IV) for the purposes of allowing Lender to split the tokens in accordance with Section IV (h). For the avoidance of doubt, no Early Termination Fees shall be payable for any Loans originated prior to the date of this Amended and Restated Agreement.

(e) Taxes and Fees

All transfer or other taxes or third party fees payable with respect to the transfer and/or return of any Borrowed Amount hereunder shall be paid by Borrower.

**IV.    Collateral Requirements**

(a) Collateral

Borrower shall provide as collateral an amount of U.S. Dollars to be determined and agreed upon by the Borrower and Lender ("Collateral") and memorialized using the Loan Term Sheet attached as Exhibit B. The Collateral will be defined as a percentage of the value of the borrowed Digital Currency, such value determined by a spot rate agreed upon in the Loan Term Sheet. Lender shall be entitled to use the Collateral to conduct its digital currency lending and borrowing business, including transferring the Collateral to other non-Genesis bank accounts.

(b) Margin Calls

If during the term of a Loan the value of the borrowed Digital Currency increases by the Margin Call rate indicated on the Loan Term Sheet as measured by the spot rate published on GDAX (such rate, the "Margin Call Spot Rate") over the spot rate indicated in the Loan Term Sheet, or the prior Margin Call Spot Rate, as applicable, Lender shall have the right to require Borrower to contribute additional Collateral so that the Collateral is at least the same percentage indicated in the Loan Term Sheet relative to the value of the borrowed Digital Currency at the Margin Call Spot Rate (the "Additional Collateral").

If Lender requires Borrower to contribute Additional Collateral, it shall send an email notification (the "First Notification") to the Borrower at the email address indicated in Section XII that sets forth: (i) the Margin Call Spot Rate and (ii) the amount of Additional Collateral required based on the Margin Call Spot Rate. Borrower shall have six (6) hours from the time Lender sends such First Notification to (x) respond and send payment to Lender in accordance with subsection (c) below, or (y) respond that the spot rate as indicated on GDAX has decreased sufficiently such that it is no longer at or above the Margin Call Spot Rate. If Lender agrees by email that Borrower's response according to (y) above is correct then no other action is required by Borrower.

If Borrower fails to respond to the First Notification within six hours, and the spot rate of the borrowed Digital Currency is still at least at the Margin Call Spot Rate, Lender shall send a second email notification (the "Second Notification") repeating the information in (i) and (ii) in the paragraph above. Borrower shall have three (3) hours from the time Lender sends the Second Notification to respond according to (x) or (y) above. Failure by Borrower to respond to either the First Notification or the Second Notification, shall give Lender the option to declare an Event of Default under Section VII below.

(c) Payment of Additional Collateral

Payment of the Additional Collateral shall be made by bank wire to the account specified in the Loan Term Sheet or by a return the amount of borrowed Digital Currency necessary to make the USD Collateral percentage indicated in the Loan Term Sheet correct based on the Margin Call Spot Rate.

(d) Default or Failure to Return Loan

In the event that Borrower does not return the Loan upon Termination or in the event of default pursuant to Section VII of this Agreement, Lender shall transfer that portion of the Collateral from the Collateral Account to Lender's operating account necessary for the payment of any liability or

obligation or indebtedness created by this Agreement, including, but not limited to using the Collateral to purchase the relevant Digital Currency to replenish Lender's supply of the relevant Digital Currency.

(e) Return of Collateral

Upon Borrower's redelivery of the Loan and acceptance of Lender of the Borrowed Digital Currency into Lender's wallet address, with such delivery being confirmed on the relevant Digital Currency blockchain ten times, Lender shall initiate the return of Collateral to a bank account in the name of Borrower.

V.  **Hard Fork**

(a) Notification

In the event of a hard fork in the Digital Currency blockchain, Lender shall provide email notification to Borrower.

(b) No Immediate Termination of Loans Due to Hard Fork

In the event of a hard fork in the Digital Currency blockchain, any outstanding Loans will not be immediately terminated.

(c) Redelivery of Borrowed Digital Currency

Genesis will receive the benefit of any incremental tokens generated as a result of a Hard Fork in the Digital Currency protocol that results in a second token (the "New Token") being created,. For purposes of this agreement, a Hard Fork will have been deemed to have occurred if any two of the following four conditions are met:
- *Hash Power*: the average hash power mining the New Token on the 30th day following the occurrence of the fork (calculated as a 30-day average on such date) is at least 5% of the hash power mining the relevant Digital Currency on the day preceding the Hard Fork (calculated as a 3-day average of the 3 days preceding the Hard Fork). The source for the relevant Digital Currency hash power will be blockchain.info (or, if blockchain.info does not provide the required information, bitinfocharts.com, and if neither provides the required information, the parties shall discuss in good faith to mutually agree upon another data source) and the source for the hash power of the New Token will be bitinfocharts.com (or, if bitinfocharts.com does not provide the required information, the parties shall discuss in good faith to mutually agree upon another data source prior to the 30-day mark of the creation of the New Token).
- *Market Capitalization*: the average market capitalization of the New Token (defined as the total value of all New Tokens) on the 30th day following the occurrence the Hard Fork (calculated as a 30-day average on such date) is at least 5% of the average market capitalization of the relevant Digital Currency (defined as the total value of the relevant Digital Currency) (calculated as a 30-day average on such date). The source for the relevant Digital Currency market capitalization will be blockchain.info (or, if

blockchain.info does not provide the required information, bitinfocharts.com, and if neither provides the required information, the parties shall discuss in good faith to mutually agree upon another data source) and the source for the market capitalization of the New Token will be (or, if bitinfocharts.com does not provide the required information, the parties shall discuss in good faith to mutually agree upon another data source prior to the 30-day mark of the creation of the New Token).
- *24-Hour Trading Volume*: the average 24-hour trading volume of the New Token on the 30th day following the occurrence the Hard Fork (calculated as a 30-day average on such date) is at least 1% of the average 24-hour trading volume of the relevant Digital Currency (calculated as a 30-day average on such date). The source for the relevant Digital Currency 24-hour trading volume will be blockchain.info (or, if blockchain.info does not provide the required information, bitinfocharts.com, and if neither provides the required information, the parties shall discuss in good faith to mutually agree upon another data source) and the source for the 24-hour trading volume of the New Token will be (or, if bitinfocharts.com does not provide the required information, the parties shall discuss in good faith to mutually agree upon another data source prior to the 30-day mark of the creation of the New Token).
- *Wallet Compatibility*: the New Token is supported by either BitGo wallets or Ledger wallets within 30 days of the Hard Fork.

If the Hard Fork meets the criteria above, Borrower will have up to 60 days from the Hard Fork to pay Genesis. Borrower can reimburse Genesis for the value of the New Tokens with any combination of a one-time Digital Currency payment reflecting the amount of the New Tokens due using the agreed upon spot rate at the moment of repayment, returning the borrowed Digital Currency so that Genesis can split the tokens themselves, sending the New Tokens directly to Genesis, or a U.S. Dollar cash payment at the agreed upon spot rate of the New Token at the time of repayment. For the avoidance of doubt, if Borrower returns a Loan to Lender prior to the 30th day following a Hard Fork, Borrower's obligations under this Section V shall continue for any New Tokens that meet the criteria in this subsection (c) for such Loan on the 30th day following the Hard Fork.

## VI.   Representations and Warranties.

(a) The Borrower represents to the Lender on the date hereof and on the date of each Loan Request made to the Borrower hereunder that each of this Agreement has been duly and validly authorized, executed and delivered on behalf of the Borrower and constitutes the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with its terms (except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally and subject to the availability of equitable remedies).

(b) Each party hereto represents and warrants that it has not relied on the other for any tax or accounting advice concerning this Agreement and that it has made its own determination as to the tax and accounting treatment of any Loan or any Digital Currency or funds received hereunder.

(c) Lender represents and warrants that it has, or will have at the time of transfer of any Digital Currency, the right to transfer such Digital Currency subject to the terms and conditions hereof, and that it owns the Digital Currency, free and clear of all liens.

(d) Borrower represents and warrants that it has, or will have at the time of return of any Digital Currency, the right to transfer such Digital Currency subject to the terms and conditions hereof, and, free and clear of all liens and encumbrances other than those arising under this Agreement.

## VII.   Default

It is further understood that the following defaults shall constitute events of default hereunder and are hereinafter referred to as an "Event of Default" or "Events of Default":

(a) the failure of the Borrower to return any Borrowed Amount or pay any Borrowing Fees when due hereunder, including payment of required Additional Collateral in accordance with Section IV;

(b) a material default in the performance of any of the other agreements, conditions, covenants, provisions or stipulations contained in any of the Loan Documents;

(c) any bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for the relief of debtors or dissolution proceedings shall be instituted by or against the Borrower and shall not be dismissed within thirty (30) days of their initiation; or

(d) any representation or warranty made in any of the Loan Documents proves to be untrue in any material respect as of the date of making or deemed making thereof.

## VIII.   Remedies

Upon the occurrence and during the continuation of any Event of Default, the Lender may, at its option, (a) declare the entire Borrowed Amount outstanding hereunder immediately due and payable, (b) terminate this Agreement upon notice to Borrower, and (c) exercise all other rights and remedies available to the Lender hereunder, under applicable law, or in equity; provided, that upon any Event of Default pursuant to Section V the Borrowed Amount and the amount of any Borrowing Fee then outstanding hereunder shall automatically become and be immediately due and payable.

## IX.   Rights and Remedies Cumulative.

No delay or omission by the Lender in exercising any right or remedy hereunder shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies hereunder. All rights of the Lender stated herein are cumulative and in addition to all other rights provided by law, in equity.

### X. Collection Costs.

In the event Borrower fails to pay any amounts due or to return any Digital Currency hereunder, the Borrower shall pay to the Lender upon demand all reasonable costs and expenses, including without limitation, reasonable attorneys' fees and court costs incurred by the Lender in connection with the enforcement of its rights hereunder.

### XI. Governing Law; Dispute Resolution.

This Agreement is governed by, and shall be construed and enforced under, the laws of the State of New York applicable to contracts made and to be performed wholly within such State, without regard to any choice or conflict of laws rules. If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through negotiation it shall be finally resolved by arbitration administered in the County of New York, State of New York by the American Arbitration Association under its Commercial Arbitration Rules, or such other applicable arbitration body as required by law or regulation, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. If any proceeding is brought for the enforcement of this Agreement, then the successful or prevailing party shall be entitled to recover attorneys' fees and other costs incurred in such proceeding in addition to any other relief to which it may be entitled.

### XII. Notices.

Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by Express or certified mail (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a party may designate in accordance herewith), or to the respective address set forth below:

Borrower:
Teddy Gorisse
[REDACTED]

Attn: Teddy Gorisse
Email: [REDACTED]

Lender:
Genesis Global Capital, LLC
111 Town Square Place, Suite 1203 Jersey City, NJ 07310
Attn: [REDACTED]
Email: [REDACTED]@genesiscap.co

Either party may change its address by giving the other party written notice of its new address as herein provided.

### XIII. Modifications.

All modifications or amendments to this Agreement shall be effective only when reduced to writing and signed by both parties hereto.

### XIV. Entire Agreement.

This Agreement and each exhibit referenced herein constitutes the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements.

### XV. Successors and Assigns.

This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, that neither party may assign this Agreement or any rights or duties hereunder without the prior written consent of the other party (such consent to not be unreasonably withheld). Notwithstanding the foregoing, in the event of a change of control of Lender or Borrower, prior written consent shall not be required so such party provides the other party with written notice prior to the consummation of such change of control. For purposes of the foregoing, a "change of control" shall mean a transaction or series of related transactions in which a person or entity, or a group of affiliated (or otherwise related) persons or entities acquires from stockholders of the party shares representing more than fifty percent (50%) of the outstanding voting stock of such party.

### XVI. Severability of Provisions.

Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

### XVII. Counterpart Execution.

This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by email or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by email or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

### XVIII. Relationship of Parties.

Nothing contained in this Agreement shall be deemed or construed by the parties, or by any third party, to create the relationship of partnership or joint venture between the parties hereto, it being understood and agreed that no provision contained herein shall be deemed to create any relationship between the parties hereto other than the relationship of Borrower and Lender.

### XIX. **No Waiver.**

The failure of or delay by Genesis to enforce an obligation or exercise a right or remedy under any provision of this Agreement or to exercise any election in this Agreement shall not be construed as a waiver of such provision, and the waiver of a particular obligation in one circumstance will not prevent Genesis from subsequently requiring compliance with the obligation or exercising the right or remedy in the future. No waiver or modification by either party of any provision of this Agreement shall be deemed to have been made unless expressed in writing and signed by both parties.

### XX. **Indemnification.**

Borrower shall indemnify and hold harmless Genesis from and against any and all claims, demands, losses, expenses and liabilities of any and every nature (including attorneys' fees of an attorney of Genesis' choosing to defend against any such claims, demands, losses, expenses and liabilities) that Genesis may sustain or incur or that may be asserted against Genesis arising out of Genesis' lending of Digital Currency to Borrower under this Agreement, except for any and all claims, demands, losses, expenses and liabilities arising out of or relating to Genesis's bad faith, gross negligence or willful misconduct in the performance of its duties under this Agreement.  This indemnity shall be an continuing obligation of Borrower, its successors and assigns, notwithstanding the termination of this Agreement.

### XXI. **Term and Termination.**

The Term of this Agreement shall commence on the date hereof for a period of one year, and shall automatically renew for successive one-year terms annually, unless either party provides notice of a desire to terminate the contract no less than ten (10) days prior to the end of such one-year period.   The foregoing notwithstanding, this Agreement may be terminated as set forth in Section VI or upon 30 days' notice by either party to the other.

In the event of a termination of this Agreement, any loaned Digital Currency shall be redelivered immediately and any fees owed shall be payable immediately.

### XXII. **Miscellaneous.**

Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders.  This Agreement is solely for the benefit of the parties hereto and their respective successors and assigns, and no other Person shall have any right, benefit, priority or interest under, or because of the existence of, this Agreement.  The section headings are for convenience only and shall not affect the interpretation or construction of this Agreement.  The Parties acknowledge that the Agreement and any Order are the result of negotiation between the Parties which are represented by sophisticated counsel and therefore none of the Agreement's provisions will be construed against the drafter.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered as of the date first above written.

**BORROWER:**

Teddy Gorisse

By: *TEDDY GORISSE* (Jul 24, 2018)
Name: TEDDY GORISSE
Title: Logistic manager


**LENDER:**

GENESIS GLOBAL CAPITAL, LLC

By: ▉▉▉▉▉▉▉▉
Name: ▉▉▉▉▉▉▉▉
Title: ▉▉▉▉▉▉▉▉

## EXHIBIT A

Authorized Agents.  The following are authorized to deliver Lending Requests on behalf of Borrower in accordance with Section 3 hereof:

Name:
Email:

Name:
Email:

Borrower may change its Authorized Agents by notice given to Lender as provided herein.

**EXHIBIT B**

**LOAN TERM SHEET**

The following loan agreement incorporates all of the terms of the Master Digital Currency Loan Agreement entered into by Genesis Global Capital, LLC ("Genesis") and Teddy Gorisse ("Teddy Gorisse") on [DATE] and the following specific terms:

| | |
|---|---|
| Lender: | Genesis Global Capital, LLC |
| Borrower: | Teddy Gorisse |
| Digital Currency: | _____ |
| Amount of Digital Currency: | _____ |
| Borrow Fee: | _____ |
| Loan Type: | _____ |
| Loan Term: | _____ |
| Spot Price for determination of Collateral: | _____ |
| USD Collateral: | _____% of Digital Currency Loan Value |
| Margin Call: | _____% Rise in Spot Rate |

USD Collateral Wiring Instructions:

Receiving Bank Routing Number: [REDACTED]
Receiving Bank Name: [REDACTED]
Receiving Bank Address: [REDACTED]
Beneficiary Name: Genesis Global Capital, LLC
Beneficiary Address: 111 Town Square Place, Suite 1203, Jersey City, NJ 07310
Beneficiary Account Number: [ACCOUNT NUMBER]

| | |
|---|---|
| GENESIS GLOBAL CAPITAL, LLC | Teddy Gorisse |
| By: _____ | By: _____ |
| Name: | Name: |
| Title: | Title: |

# Master Digital Currency Loan Agreement^Teddy Gorisse

Adobe Sign Document History                                    07/24/2018

| | |
|---|---|
| Created: | 07/24/2018 |
| By: | ▓▓▓▓▓▓▓▓▓▓▓▓@genesiscap.co) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAACS8DfceS_Snil-HhUraiHov9juhCrKWX |



## "Master Digital Currency Loan Agreement^Teddy Gorisse" History

- Document uploaded by ▓▓▓▓▓▓▓▓▓▓▓tt@genesiscap.co) from Reader
  07/24/2018 - 5:44:43 AM PDT-

- Document emailed to TEDDY GORISSE ▓▓▓▓▓▓▓▓▓▓▓ for signature
  07/24/2018 - 5:45:45 AM PDT

- Document viewed by TEDDY GORISSE ▓▓▓▓▓▓▓▓▓▓▓
  07/24/2018 - 7:38:48 AM PDT-

- Document e-signed by TEDDY GORISSE ▓▓▓▓▓▓▓▓▓▓▓
  Signature Date: 07/24/2018 - 7:39:43 AM PDT - Time Source: ▓▓▓▓▓▓▓▓▓▓▓

- Document emailed to ▓▓▓▓▓▓▓▓▓▓▓@genesiscap.co) for signature
  07/24/2018 - 7:39:43 AM PDT

- Document viewed by ▓▓▓▓▓▓▓▓▓▓▓@genesiscap.co)
  07/24/2018 - 8:06:26 AM PDT-

- Document e-signed by ▓▓▓▓▓▓▓▓▓▓▓@genesiscap.co)
  Signature Date: 07/24/2018 - 8:07:06 AM PDT - Time Source: ▓▓▓▓▓▓▓▓▓▓▓

Adobe Sign