**WHITE & CASE LLP**
J. Christopher Shore
Philip Abelson
Colin T. West
Michele J. Meises
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

– and –

Amanda Parra Criste (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

*Counsel to Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |
| | Re: Docket Nos. 1275, 1341 |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND THE NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases

of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") submits

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these chapter 11 cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

this statement (the "**Statement**") in support of the *Debtors' Motion for Entry of an Order Approving a Settlement Agreement Between the Debtors and the New York State Office of the Attorney General* [Docket No. 1275] (the "**NYAG Settlement Motion**")[2]. The Committee also joins in the Debtors' arguments in support of the NYAG Settlement Motion and in reply to *Digital Currency Group, Inc. and DCG International Investments Ltd.'s Objection and Reservation of Rights to Debtors' Motion for Entry of an Order Approving a Settlement Agreement Between the Debtors and the New York State Office of the Attorney General* and Declarations in support thereof [Docket Nos. 1341, 1342, 1343] (the "**DCG Objection**") and respectfully states as follows:

## PRELIMINARY STATEMENT

1. In objecting to the NYAG Settlement Motion, DCG stands alone. Its objection is a second desperate attempt to extract equity value at the expense of providing its customers with a full recovery based on their contractual entitlements. Just as it did with the Plan and the Distribution Principles, DCG again is objecting to a settlement to which the real parties in interest (here, other government units with a higher priority than DCG) do not object. The DCG Objection largely rehashes DCG's faulty arguments against Plan confirmation, including that the settlement agreement between the Debtors and NYAG (the "**NYAG Settlement**") proposes to distribute assets in violation of the absolute priority rule and in excess of the NYAG's petition date "dollarized" claim value.[3] The Committee does not believe that the NYAG Settlement violates the Bankruptcy Code in any way and, in any event, DCG lacks standing to object to the NYAG Settlement Motion for the same reasons that it lacks standing to object to Plan confirmation. Even if DCG did have standing to object to the NYAG Settlement Motion, the Debtors have clearly met

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the NYAG Settlement Motion or the *Debtors' Amended Joint Chapter 11 Plan* [Docket No. 1325], as applicable.

[3] DCG Obj. ¶¶ 1, 43.

2

their burden in demonstrating that the NYAG Settlement falls within the range of reasonableness and should be approved.

## ARGUMENT

2. The Committee joins the arguments made by the Debtors in their reply in support of the NYAG Settlement Motion, but wants to stress certain points in support of the NYAG Settlement Motion and in reply to the DCG Objection:

   a. *DCG Lacks Standing to Object*

3. DCG does not have a pecuniary interest in these Chapter 11 Cases and therefore does not have a basis to object to the NYAG Settlement Motion. DCG sheepishly skirts the issue of the sheer quantum of allowed claims asserted by government units.[4] The reality is that the face amount of such claims against the Debtors is **$30 billion**.[5] Such a hurdle ensures that DCG is out of the money under any scenario, and thus DCG has no financial interest in these cases. *Savage & Assocs., P.C. v. K&L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 60 (2d Cir. 2011) ("The general theory behind [section 1109 of the Bankruptcy Code] is that anyone holding a **direct financial stake** in the outcome of the case should have an opportunity . . . to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest.") (emphasis added) (quotations and citations omitted).

   b. *The NYAG Settlement Satisfies Bankruptcy Rule 9019*

4. DCG alleges that the NYAG Settlement provides the Debtors with "no value," as they would be no worse off if they litigated the claims to judgment and lost.[6] This could not be

---

[4] DCG Obj. ¶¶ 32–34.

[5] *See* Government Proofs of Claim, JX-94.

[6] DCG Obj. ¶ 59.

3

further from the truth. In the NY Action, the NYAG has sought restitution, disgorgement of profits, pre-judgment interest, penalties, as well as injunctive relief.[7] Additionally, the NYAG filed nonsubordinated proofs of claim for over $1.1 billion plus unspecified disgorgement and restitution against each of the Debtors.[8] The NYAG Settlement settles all claims asserted in the NY Action and resolves the proofs of claim against the Debtors, which alone could have significantly diluted creditor recoveries. It does so by providing the NYAG with an allowed claim that is reduced on a dollar-for-dollar basis for every dollar of distributions received by customers. To the extent customers do not receive their full contractual entitlement under the Plan, then the NYAG Settlement provides for the NYAG to turn over any recoveries on its allowed claim to the customers via a Victims Fund. In this way, the NYAG Settlement is entirely consistent with the restitution-based relief that the NYAG has sought in the NY Action.

5.    To be clear DCG does not challenge the merits of the underlying claims and allegations asserted in the NY Action, which the Committee, based on its own independent investigation of the Debtors' prepetition conduct, believes have merit. The NYAG Settlement is therefore reasonable because it takes risk off the table and eliminates what would be costly litigation for *both* sides. The NYAG Settlement also carves a path to making distributions to customers as soon as possible, as the NYAG has agreed not to object to the Plan including any of the transactions that it contemplates despite the injunctive relief it sought in the NY Action.

6.    In stark contrast to DCG, the parties with an economic interest in these cases are the customers and the governmental entities. DCG asks the Court to ignore the *Iridium* factor that assesses whether creditors support the settlement, straining to argue that this factor does not apply

---

[7]    *See* NYAG Amended Complaint, P-014.
[8]    *See* Government Proofs of Claim, JX-94.

in the bankruptcy context.[9]  This is because the Plan was overwhelmingly accepted by almost every single customer and is unopposed by governmental entities whose claims are senior to DCG's out-of-the-money equity interests.  Rather than ignoring this factor as DCG requests, the Court should give it great weight.

7.     In sum, from the perspective of the customers and the estates, the NYAG Settlement is a stunning result. It subordinates the NYAG's billion-dollar claims, maximizes the return of customers' full contractual entitlements as provided for in the Distribution Principles, and avoids costly litigation of the NY Action, the proofs of claim, and an objection to the Plan.  The NYAG Settlement should therefore be approved.

      c.  *The NYAG Settlement Is Not a Sub Rosa Plan*

8.     In arguing that the NYAG Settlement is a *sub rosa* plan that attempts to "short circuit" plan confirmation requirements, DCG obscures the fact that a Plan already has been voted on and accepted by the Debtors' customers.  The NYAG Settlement does not alter the Plan, and therefore, no customer's voting rights will be infringed by the settlement.  The NYAG Settlement neither dictates the terms of the Plan, nor forces any customers to waive their claims against the Debtors.  The NYAG Settlement simply resolves all of the NYAG's claims against the Debtors (and any related disputes) in a fair and equitable way that is beneficial for all of the Debtors' customers.  *See In re Energy Future Holdings Corp.*, 648 F. App'x 277, 285 (3d Cir. 2016) (proposed settlement of claims asserted against chapter 11 debtor was not improper *sub rosa* plan,

---

[9] DCG Obj. ¶ 75.

5

where there was "no evidence . . . that any other creditor's recovery is impacted by the settlement, or that any requirement of Chapter 11 is subverted by the plan").

\* \* \*

9.    As noted, the Committee strongly supports the NYAG Settlement, but it has some concerns that the NY Action could impede the Wind-Down Debtors' ability to pursue the Retained Causes of Action against DCG and certain of the other defendants in the NY Action. As this Court is aware, the preservation and prosecution of those Retained Causes of Action constitute a fundamental aspect of the Plan and a key source of additional value for customers that have been harmed by DCG's actions. Indeed, the Plan contains certain features to support the Wind-Down Debtors' estates' post-Effective Date pursuit of these Retained Causes of Action including (i) the appointment of a Litigation Oversight Committee that will be tasked with working with the PA Officer to pursue these claims and (ii) a specific reserve of up to $70 million to fund the litigation.

10.    Because there is certain (but not total) overlap between the claims asserted in the NY Action and the Retained Causes of Action, a possible conflict exists regarding the proper party to bring these claims. The Committee believes that it is imperative that the order approving the NYAG Settlement (if one is entered) make clear that nothing in the order prevents the Wind-Down Debtors from pursuing the Retained Causes of Action. To this end, the Committee and the NYAG agreed to the insertion of the following language in the order, if any, approving the NYAG Settlement: "For the avoidance of doubt, nothing in this Order or the Settlement Agreement shall be deemed to limit, or have the effect of limiting, (1) the power of the Debtors (or their successors and assigns) to pursue any Retained Causes of Action or (2) to the extent not inconsistent with the Settlement Agreement, any provision of any confirmation order entered in these cases". The Committee requests that this Court include such language in the order, if any, approving the NYAG

Pg 7 of 8

Settlement. Additionally, the Committee hopes and expects that the NYAG will work with the post-Effective Date entities established under the Plan and the Confirmation Order to coordinate litigation of claims against DCG, among others.

WHEREFORE, the Committee respectfully requests that the Court (i) grant the NYAG Settlement Motion, (ii) overrule the DCG Objection, and (iii) grant such other relief as is just, proper, and equitable.

[*Remainder of page intentionally left blank*]

Dated: February 23, 2024  
New York, New York

Respectfully submitted,

By: */s/ Philip Abelson*

**WHITE & CASE LLP**  
J. Christopher Shore  
Philip Abelson  
Colin T. West  
Michele J. Meises  
1221 Avenue of the Americas  
New York, New York 10020  
Telephone: (212) 819-8200  
Facsimile: (212) 354-8113  
Email: cshore@whitecase.com  
philip.abelson@whitecase.com  
colin.west@whitecase.com  
michele.meises@whitecase.com

– and –

Amanda Parra Criste (admitted *pro hac vice*)  
200 South Biscayne Boulevard, Suite 4900  
Miami, FL 33131  
Telephone: (305) 371-2700  
Facsimile: (305) 358-5744  
Email: aparracriste@whitecase.com

*Counsel to Official Committee of Unsecured Creditors*