Sean A. O'Neal
Luke A. Barefoot
Rishi Zutshi
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' OPPOSITION TO THE GENESIS CRYPTO CREDITORS AD HOC
GROUP'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING THE
<u>PROPOSED RELEASES AND THE SPECIAL COMMITTEE INVESTIGATION</u>**

---

[1] The Genesis Debtors in the above-captioned cases, along with the last four digits of each Genesis Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of the above-captioned cases, the service address for the Genesis Debtors is 175 Greenwich Street, Floor 38, New York, NY, 10007.

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 3 |
| I. There Is No Basis to Exclude Evidence Concerning Releases or the Special Committee Investigation | 3 |
| II. The Debtors Have Not Waived Privilege | 7 |
| CONCLUSION | 9 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Grunstein v. Silva*,
   Case No. 3932–VCN, 2012 WL 5868896 (Del. Ch. Nov. 20, 2012) .......................... 3

*In re DBSD N. Am., Inc.*,
   419 B.R. 179 (Bankr. S.D.N.Y. 2009) ........................................................... 5-6

*In re Res. Cap., LLC*,
   491 B.R. 63 (Bankr. S.D.N.Y. 2013) ............................................................. 3

*In re Subpoena Issued to Dennis Friedman, Esq.*,
   286 B.R. 505 (S.D.N.Y. Dec. 10, 2002) ........................................................ 6

*Mitre Sports Intern. Ltd. v. Home Box Office, Inc.*,
   304 F.R.D. 369 (S.D.N.Y. 2015) ............................................................... 8, 9

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   Case No. AP 08-01789 (SMB), 2017 WL 2602332 (Bankr. S.D.N.Y. June 15, 2017)   6

**Rules and Statutes**

Fed. R. Evid. 502 ................................................................................... 8, 9

Genesis Global Holdco, LLC, Genesis Global Capital, LLC and Genesis Asia Pacific Pte Ltd., as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors," and these cases, collectively, the "Chapter 11 Cases") hereby submit this opposition (the "Opposition") to *The Genesis Crypto Creditors Ad Hoc Group's Motion* in Limine *to Preclude Evidence Regarding the Proposed Releases and the Special Committee Investigation* [ECF No. 1350] (the "Motion"),[1] and respectfully state as follows:

## PRELIMINARY STATEMENT

1. In the Debtors' *Memorandum of Law in Support of Confirmation and Omnibus Reply to Objections to Confirmation of the Plan of Reorganization of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* [ECF No. 1330] (the "Confirmation Brief"), the Debtors provided extensive support for why the inclusion of customary releases for certain Genesis personnel (the "Releases") was within the sound business judgment of the Special Committee, fully addressing the objections regarding the Releases that the Genesis Crypto Creditors Ad Hoc Group (the "CCAHG") previously raised.  The CCAHG responded with this Motion as a last-ditch distraction, asking the Court to take the extraordinary step of precluding the Debtors from introducing any evidence regarding the Releases at the confirmation hearing.  There is no basis for the relief that the CCAHG seeks.

2. The CCAHG's argument relies on inapplicable case law holding that a litigant may not unfairly surprise an adversary by affirmatively introducing new evidence at trial that the litigant has previously shielded from discovery based on privilege.  That law has no application here because there will be no unfair surprise from the introduction of Mr. Aronzon's

---

[1] Capitalized terms not otherwise defined in this Objection have the meanings ascribed to them in the Motion or the Amended Plan.

affirmative testimony. Mr. Aronzon's testimony, which is set out in his declaration, simply identifies provisions in the Plan Supplement and Disclosure Statement that describe the considerations justifying the Special Committee's approval of Releases and confirms that these disclosures "are a fair and accurate representation of the process that led to the Special Committee's approval of the releases of Release Genesis Personnel." Aronzon Decl. ¶ 83. In other words, the evidence that the Debtors intend to introduce consists of facts that have already been publicly disclosed and of which the CCAHG has been on notice since December 2023.

3. As this Court recognized earlier in this case when it approved the FTX settlement, there is no obligation for the Debtors to waive privilege in order to obtain court approval of a settlement, provided that the Debtors have met their burden by providing sufficient non-privileged information to show that entry into a settlement—or, in this case, inclusion of the Releases in the Amended Plan—is a valid exercise of the Debtors' business judgment. Many of the justifications that the Debtors have identified for why the Releases reflect a valid business judgment do not implicate privilege. This includes, among other things, the contributions that the Released Genesis Personnel have made to the Debtors' restructuring efforts, the benefits of continued cooperation from those individuals in connection with ongoing litigation and other proceedings, the very limited director and officers insurance coverage, the fact that personnel would be entitled to indemnification in defending against any potential claims, and the narrow scope of the Releases, which expressly carve out claims arising out of gross negligence, fraud or willful misconduct. With respect to the Special Committee's Investigation, which is the focus of the CCAHG's Motion, the Debtors have taken care not to waive privilege by limiting Mr. Aronzon's declaration to identifying public disclosures that provide a detailed description of the scope and process of the investigation without disclosing specific legal analysis performed by

counsel. In short, the Debtors are not using privileged information as a "sword" and there is no basis to prohibit the Debtors from introducing non-privileged facts and information to demonstrate that inclusion of the Releases in the Amended Plan is a valid exercise of the Special Committee's business judgment.

4. Finally, the Court should also reject the CCAHG's alternative, makeweight argument that the Debtors have somehow effected a subject matter waiver of all privilege associated with the Special Committee investigation. The Debtors have not waived privilege, the Motion identifies no facts to the contrary, and the Motion does not even address the relevant law, which clearly disfavors a finding of broad subject-matter waivers of privilege.

## ARGUMENT

**I.    There Is No Basis to Exclude Evidence Concerning Releases or the Special Committee Investigation**

5. The CCAHG's main argument for excluding evidence about Releases is based on a "sword and shield" doctrine that has no application here. As the CCAHG's own cases make clear, this doctrine simply provides that a Court may preclude a party from unfairly surprising an adversary at trial by introducing testimony or evidence "if that same testimony or evidence was withheld from [an adversary] during discovery based on attorney-client privilege." *In re Res. Cap., LLC*, 491 B.R. 63, 68 (Bankr. S.D.N.Y. 2013) (quoting *Cary Oil Co. v. MG Ref. & Mktg., Inc.*, 257 F. Supp. 2d 751, 761 (S.D.N.Y. 2003)).[2]

6. This caselaw has no application here because the affirmative testimony that the CCAHG seeks to exclude consists primarily of a declaration from Mr. Aronzon that has already

---

[2] The CCAHG cites additional out-of-circuit cases which are all inapposite for the same reason. *See, e.g.*, *Grunstein v. Silva*, Case No. 3932–VCN, 2012 WL 5868896, at *1 (Del. Ch. Nov. 20, 2012) (excluding a witness's testimony on tax liability and the legality of the sale of a business when the witness had refused to answer questions on these topics during his deposition).

-3-

been filed and which does not pose any risk of unfair surprise.[3] Nor does Mr. Aronzon's declaration contain any information that was previously withheld on the basis of privilege. Rather, the declaration identifies prior public disclosures made by the Debtors that describe the considerations relevant to the Special Committee's determination that inclusion of the Releases in the Amended Plan is appropriate. Aronzon Decl. ¶ 83, Exs. 1–3 (consisting of excerpts of the Plan Supplement and Disclosure Statement).

7. Notably, these prior public disclosures identify several factors which do not relate to the Special Committee Investigation or implicate any privileged legal advice. These include that:

- the Releases apply only to officers, directors and employees who contributed to the Debtors' restructuring efforts;

- the Releases apply to Genesis personnel whose cooperation may be critical to the resolution of litigation against other parties, including DCG and Gemini, as well as various regulatory and enforcement actions relating to the Debtors' prepetition business;

- the Releases apply to Genesis personnel that are entitled to indemnification pursuant to the Debtors' governing documents, meaning that litigation against such individuals would deplete assets of the estate;

- any surviving claims against release Genesis personnel would be costly and unlikely to result in significant recoveries in light of the minimal directors and officers insurance coverage; and

- the Releases expressly exclude any claims arising out of gross negligence, fraud, or willful misconduct;

- the Amended Plan does not impose any non-consensual releases by third parties. Aronzon Decl., Ex. 1; *see also* Confirmation Brief ¶ 64–77.

---

[3] The Motion mentions the declaration of Mr. Joseph Sciametta on numerous occasion in connection with the Releases, but as the Debtors made clear to the CCAHG at the deposition of Mr. Sciametta, Mr. Sciametta is not a member of the Special Committee responsible for making the decision about Releases and he was not designated to testify regarding the Special Committee Investigation or the Releases under the Amended Plan. *See* Motion ¶¶ 7, 16–17. Further, the declaration of Mr. Sciametta contains no discussion of the Special Committee Investigation or the Releases.

8. The only information about the Special Committee Investigation contained in Mr. Aronzon's declaration is similarly limited to the disclosures that the Debtors provided in the Disclosure Statement. Those disclosures struck a careful balance of providing a description of the process by which the Debtors' counsel carried out the Special Committee Investigation without disclosing information about counsel's legal analysis or communications with the Special Committee that might result in a waiver of attorney-client privilege or attorney work product. Aronzon Decl., Ex. 3.

9. The CCAHG's real gripe is that the Debtors have made the "strategic choice" to preserve attorney-client privilege with respect to the legal analysis provided by Cleary Gottlieb Steen & Hamilton LLP ("Cleary") in connection with the Special Committee's Investigation. Motion ¶ 51. But, as this Court has recognized in similar circumstances earlier in this case, the Debtors should be afforded the discretion to make decisions regarding what evidence they present to demonstrate that a settlement or release is a valid exercise of the Debtors' business judgment. *See* Sept. 18 Hr'g Tr. 37:21–38:1 ("Obviously, any decision that's made in a case of whether to settle or not settle has certain -- is a product of lots of communications and conversations, and folks decide to share what they're going to share in terms of justifying it, and they have a burden to meet."). The Debtors should not be required to "throw open their books and completely discuss everything" in response to the CCAHG's unsubstantiated request to access the Debtors' privileged information. Sept. 18 Hr'g Tr. 38:9–10. The Debtors have satisfied their burden to establish that the Releases are a "valid exercise of [the debtor's] business judgment" for the reasons set out in the Debtors' Confirmation Brief. *See* Confirmation Brief ¶ 65–74; *see also In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009). The CCAHG has no authority to substitute its judgment for the Debtors on the issue of whether to preserve privilege

here.[4] And it is telling that neither the government authorities that have conducted their own independent investigations, nor the Official Committee of Unsecured Creditors (the "Creditors' Committee") have objected to the Releases.

10.    The CCAHG's Motion also fails because the CCAHG cannot demonstrate any prejudice resulting from introduction of evidence and testimony by the Debtors in support of the Releases. Most of the information that the Debtors seek to introduce and that the CCAHG seeks to exclude has been available to the CCAHG at least since the filing of the solicitation version of the Disclosure Statement on December 6, 2023 and of the Plan Supplement on December 29, 2023. *See Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* [ECF No. 1031]; *see also Notice of Filing Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan*, Exhibit F [ECF No. 1117]. The CCAHG cannot feign surprise or legitimately argue unfairness regarding the justifications for the Releases when the information contained in the Aronzon declaration has long existed in the public domain.

11.    Exclusion of this evidence is also unnecessary and improper here because the Court will serve as the factfinder during the confirmation hearing and will be able to determine what weight, if any, to give to Mr. Aronzon's testimony. It is well settled that the risk of prejudice is minimal when the judge, rather than a jury, serves as factfinder. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Case No. AP 08-01789 (SMB), 2017 WL 2602332, at *4 (Bankr. S.D.N.Y. June 15, 2017) (quoting *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009)) ("Because the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling

---

[4] The CCAHG misplaces reliance on *In re Subpoena Issued to Dennis Friedman, Esq.*, 286 B.R. 505, 509 n.4 (S.D.N.Y. Dec. 10, 2002). The court in that case held that the bankruptcy trustee controlled the privilege and had the authority to choose to waive it. Here, the Special Committee Controls the privilege and has not waived it.

is generally superfluous. It would be, in effect, 'coals to Newcastle,' asking the judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence.").

12. Finally, following the close of confirmation discovery, in consultation with the Creditors' Committee and the Ad Hoc Group of Genesis Lenders (the "Ad Hoc Group"), the Special Committee made the determination to require Genesis Released Personnel to execute cooperation agreements as a condition to release under the Plan (the "Cooperation Agreement"). *See Reservation of Rights of the Ad Hoc Group of Genesis Lenders to Confirmation of the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1240], at ¶ 1. The Cooperation Agreement commits the Genesis Released Personnel to assist with litigation of the Retained Causes of Action by the Wind-Down Debtors, which will be critical to the resolution of litigation against DCG and other parties to the benefit of the Debtors' creditors. The CCAHG's complaint that they could not question Mr. Aronzon regarding the Cooperation Agreement is simply a product of timing. Motion ¶ 44; Confirmation Brief ¶ 72. In any event, the complaint has no substance, as the Cooperation Agreement provides a clear benefit to creditors and serves to advance the goals of the Wind-Down Debtors in pursuing the Retained Causes of Action. And, for transparency purposes, the Debtors have shared the draft Cooperation Agreement with counsel to the CCAHG.

## II. The Debtors Have Not Waived Privilege

13. In a final feeble effort to convince the Court to preclude declarations and testimony in support of the Releases, the Motion contains a brief section comprising of only two paragraphs purporting to argue that the Debtors waived their privilege concerning the Special Committee Investigation and Releases because they shared the findings with other parties. Motion ¶ 61. This is plainly untrue.

14. First, it is clear that the Debtors have not waived privilege. In support of their argument, the CCAHG points to a single sentence in the Disclosure Statement stating, "Cleary has shared the findings from the Investigation with the Special Committee and counsel to the UCC and the Ad Hoc Group." Motion ¶ 61 (citing ECF No. 1031, at 36). But these "findings" refer to factual information (i.e., documents and other facts) that the Debtors shared with the Creditors' Committee and the Ad Hoc Group which were relevant to potential claims that could be asserted against DCG and related parties.

15. Such factual information cannot be privileged. The CCAHG itself concedes that underlying facts—including, for example, non-privileged documents—are not protected by privilege. *See, e.g.*, Motion ¶ 47. Additionally, Debtors withheld privileged documents identified during the course of the investigation from the productions made to the Creditors' Committee and the Ad Hoc Group, consistent with the Debtors' decision not to waive their privilege.

16. Second, even if privileged information had been shared with the Creditors' Committee or Ad Hoc Group (and it was not), there is no support for the CCAHG's sweeping proposition that there has been a waiver of privilege with respect to the entire subject matter of the Special Committee Investigation. Subject matter waiver is reserved for "rare case[s]." *Mitre Sports Intern. Ltd. v. Home Box Office, Inc.*, 304 F.R.D. 369, 372 (S.D.N.Y. 2015). Rule 502 of the Federal Rules of Evidence sets out the requirements for finding a subject-matter waiver: (i) the waiver must be intentional; (ii) the disclosed and undisclosed communications or information must concern the same subject matter; and (iii) they ought in fairness to be considered together. Fed. R. Evid. 502(a). Disclosure of privileged material in discovery, without more, does not result in a subject-matter waiver. *Mitre Sports Intern,* 304 F.R.D. at 372 (citing *Swift Spindrift, Ltd. v. Alvada*

*Ins., Inc.*, Case No. 09 Civ. 9342(AJN) (FM), 2013 WL 3815970, at *5–6 (S.D.N.Y. July 24, 2013).

17. Here, the CCAHG's claim that "Cleary has shared the findings from the Investigation," without more, comes nowhere close to constituting a subject matter waiver. Motion ¶ 61. The information shared with the Creditors' Committee and the Ad Hoc Group focused on those facts relevant to potential claims against DCG and related parties. The Releases, however, explicitly carve out DCG. Because the information does not concern the same subject matter, the CCAHG has failed to satisfy the requirements for subject-matter waiver under Rule 502(a)(ii).

18. Finally, the CCAHG also cannot satisfy the fairness factor in Rule 502. There is no unfair surprise to the CCAHG because the information the Debtors are seeking to introduce is information that the CCAHG has been on notice of since the filing of the Disclosure Statement. *See supra* ¶ 9. For these reasons, there has been no waiver of the Debtors' privilege—let alone a subject-matter waiver with respect to the entire Special Committee Investigation.

## CONCLUSION

19. WHEREFORE, for the reasons set forth above, the Debtors respectfully request that this Court deny the Motion.

| | |
|---|---|
| Dated: February 23, 2024<br>New York, New York | */s/ Rishi Zutshi*<br>Sean A. O'Neal<br>Luke A. Barefoot<br>Rishi Zutshi<br>Jane VanLare<br>Thomas S. Kessler<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>*Counsel to the Debtors and Debtors-in-Possession* |