Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF FILING OF PLAN SUPPLEMENT
FOR THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

**PLEASE TAKE NOTICE** that, on December 29, 2023, Genesis Global Holdco, LLC and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed the *Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* (ECF No. 1117), which included the following materials: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Members of the Litigation Oversight Committee and Wind-Down Debtors Oversight Committee; (c) the List of Intercompany Claims that Constitute Excluded Claims; (d) the Retained Causes of Action; (e) the Digital Assets Conversion Table; and (f) Justifications for Exculpated & Released Parties.[2]

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific PTE. LTD. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Debtors' Amended Joint Chapter 11 Plan* (ECF No. 989) (the "Plan") or the *Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* (ECF No. 1031) (the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE** that, on January 6, 2024, the Debtors filed the following additional exhibits to the Plan Supplement: (a) the identity of the PA Officer and (b) the candidates for the New Board.

**PLEASE TAKE FURTHER NOTICE** that, on January 8, 2024, the Debtors filed the following additional exhibits to the Plan Supplement: (a) the Plan Administration Agreement; (b) the Litigation Oversight Committee Bylaws; (c) the Wind-Down Oversight Committee Bylaws; and (d) the New Governance Documents.

**PLEASE TAKE FURTHER NOTICE** that, on January 9, 2024, the Debtors filed, as an additional exhibit to the Plan Supplement, the Setoff Principles for Allowance of Certain Claims.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the following additional exhibits to the Plan Supplement, as may be modified, amended, or supplemented from time to time:

| | |
|---|---|
| **Exhibit I:** | Revised Plan Administration Agreement |
| **Exhibit I-1:** | (Blackline) Revised Plan Administration Agreement |
| **Exhibit J:** | Revised Litigation Oversight Committee Bylaws |
| **Exhibit J-1:** | (Blackline) Revised Litigation Oversight Committee Bylaws |
| **Exhibit K:** | Revised Wind-Down Oversight Committee Bylaws |
| **Exhibit K-1:** | (Blackline) Revised Wind-Down Oversight Committee Bylaws |
| **Exhibit N:** | Gemini Reserve Principles |
| **Exhibit O:** | Gemini Lender Distribution Principles |

**PLEASE TAKE FURTHER NOTICE** that the Debtors expressly reserve the right, subject to the terms and conditions set forth in the Plan to alter, amend, modify, or supplement any document in the Plan Supplement and to file additional documents to be included in the Plan Supplement. Certain of the documents in the Plan Supplement remain subject to ongoing negotiations between the Debtors and other parties to those documents, and the Debtors and all such parties reserve their rights with regard to those documents. To the extent any document in the Plan Supplement is altered, amended, modified, or supplemented in any material respect, in accordance with the terms of the Plan, prior to the Confirmation Hearing (as defined below), the Debtors will file a blackline of such document with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that the forms of the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is approved, the documents in substantially the form contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

2

PLEASE TAKE FURTHER NOTICE that the hearing (the "Confirmation Hearing") will be held before the Honorable Sean H. Lane of the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, on February 26, 2024 at 9:30 a.m. (prevailing Eastern Time), to consider the confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court. Please take further notice that the Confirmation Hearing may be continued from time to time by the Bankruptcy Court without further notice other than by such adjournment being announced in open court or by notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

PLEASE TAKE FURTHER NOTICE that parties wishing to appear or be heard at the Confirmation Hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances.

PLEASE TAKE FURTHER NOTICE that copies of all pleadings filed in these chapter 11 cases can be viewed and/or obtained: (i) by visiting the Debtors' case website at https://restructuring.ra.kroll.com/genesis/, (ii) otherwise from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, or by calling +1 888-524-2017 or (iii) accessing the Court's website at www.nysb.uscourts.gov. Note that a PACER password is needed to access documents on the Court's website.

Dated: February 24, 2024
New York, New York

/s/ Sean A. O'Neal
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for the Debtors*
*and Debtors-in-Possession*

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 21-11831 (SHL) |
| Debtors. | Jointly Administered |

**PLAN SUPPLEMENT FOR THE**
**DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

**TABLE OF CONTENTS[2]**

**Exhibit I:**   Revised Plan Administration Agreement

**Exhibit I-1:**   (Blackline) Revised Plan Administration Agreement

**Exhibit J:**   Revised Litigation Oversight Committee Bylaws

**Exhibit J-1:**   (Blackline) Revised Litigation Oversight Committee Bylaws

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific PTE. LTD. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Debtors' Amended Joint Chapter 11 Plan* (ECF No. 989) (the "Plan") or the *Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC* et al., *Under Chapter 11 of the Bankruptcy Code* (ECF No. 1031) (the "Disclosure Statement").

**Exhibit K:**    Revised Wind-Down Oversight Committee Bylaws

**Exhibit K-1:** (Blackline) Revised Wind-Down Oversight Committee Bylaws

**Exhibit N:**    Gemini Reserve Principles

**Exhibit O:**    Gemini Lender Distribution Principles

*[Remainder of page intentionally left blank]*

# **EXHIBIT I**

**Revised Plan Administration Agreement**

## PLAN ADMINISTRATION AGREEMENT

This PLAN ADMINISTRATION AGREEMENT (this "**Agreement**"), dated as of [●], by and between (a) Genesis Global Holdco, LLC, on behalf of itself and its debtor subsidiaries (collectively, the "**Debtors**" or the "**Wind-Down Debtors**," as applicable) and (b) Mark Renzi (the "**PA Officer**," and, together with the Debtors, the "**Parties**"), sets forth the PA Officer's rights, powers, and obligations in connection with the *Joint Chapter 11 Plan of Genesis Global Holdco, LLC and Its Debtor Affiliates* [Docket No. [●]] (together with the supplements and exhibits thereto and as may be amended, modified, or supplemented from time to time, the "**Plan**").[1]

## RECITALS

WHEREAS, on January 19, 2023 (the "**Petition Date**"), the Debtors filed the Chapter 11 Cases;

WHEREAS, the Plan was confirmed by order of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on [●], 2024 [Docket No. [●]] (together with the exhibits thereto, the "**Confirmation Order**");

WHEREAS, the Effective Date of the Plan occurred on the date hereof;

WHEREAS, the Plan provides for, on the Effective Date, among other things:

(a)     the appointment of the PA Officer to administer the distributions to the Wind-Down Debtors' Beneficiaries in accordance with and pursuant to the Distribution Principles and serve as the successor to and representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of prosecuting Retained Causes of Action belonging to such Estates (including any Causes of Action that belong to the Other Genesis Entities) that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan;

(b)     the establishment of the Wind-Down Oversight Committee to oversee the PA Officer and the Wind-Down Debtors' wind-down activities in accordance with the Plan (including the Distribution Principles) and this Agreement and to manage the Wind-Down Reserve; and

(c)     the establishment of the Litigation Oversight Committee to direct and consult with the PA Officer with respect to the strategy and pursuit of Retained Causes of Action, including the management and direction of counsel and other advisors to pursue the Retained Causes of Action (as directed by the Litigation Oversight Committee), approval of settlements of

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

any Retained Causes of Action (if any), and management of the Litigation Reserve;

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the undersigned parties hereto hereby agree as follows:

## ARTICLE I
## THE PA OFFICER

1.    Appointment.  The PA Officer has been selected in accordance with Article IV.A.2 of the Plan and is hereby appointed as of the date hereof for the purpose of effectuating the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order, as applicable (collectively, the "**Plan Documents**").  As set forth in the Plan Documents, the PA Officer shall succeed to such powers as would have been applicable to the Debtors, the Debtors' officers, and the Debtors' Estates from and following the Effective Date and shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims that are entitled to receive distributions pursuant to the Plan.  The Parties intend that an independent contractor relationship shall be created by this Agreement.

2.    Scope of Services.  Subject to the oversight of the New Board, the Wind-Down Oversight Committee, and/or the Litigation Oversight Committee (as applicable), as set forth in the Plan Documents, the PA Officer shall provide, and is authorized to provide, post-Effective Date administration, wind-down, dissolution, and liquidation services that are necessary, required, desirable, or advisable to effectuate the transactions contemplated by the Plan Documents and to make certain distributions under the Plan.  Without limiting the provisions of the Plan (including the Distribution Principles) applicable to the PA Officer, the PA Officer shall be authorized and empowered to perform the following services on behalf of the Wind-Down Debtors and the Debtors' Estates:

(a)    allocate the Wind-Down Debtors' Assets among, and administer distributions under the Plan to, the applicable Denomination Groups, in accordance with and pursuant to the Distribution Principles, including, among other things, determining when to make such distributions and any related record date for such distributions, determining which Digital Assets are available for distribution after the Effective Date, and selecting the entities (in its discretion) to make or facilitate distributions pursuant to the Plan;

(b)    in consultation with the Wind-Down Oversight Committee, compromise or settle any Claims related to the Wind-Down Debtors' Assets (including litigating, settling, abandoning, or seeking dismissal of any Retained Causes of Action) and any other claims, rights, or causes of action assigned to the Wind-Down Debtors without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided*, *however*, that the Wind-Down Oversight Committee's Consent shall be required for any settlement that would Allow a Claim at a value at or above $5,000,000; *provided further* that the Litigation Oversight Committee's Consent shall be required for any settlement of Retained Causes of Action in accordance with the Plan and this Agreement;

(c)  conduct any Monetization Transactions of non-Cash Wind-Down Debtors' Assets (except for Retained Causes of Action, GBTC shares, and ETHE shares), and purchase any Digital Assets on any terms it deems reasonable to maximize the distribution of the Wind-Down Debtors' Assets to creditors on an in-kind basis, without further order of the Bankruptcy Court;

(d)  conduct any Monetization Transactions of Retained Causes of Action without further order of the Bankruptcy Court, but only to the extent the PA Officer has obtained the prior consent of the New Board and the Litigation Oversight Committee's Consent;

(e)  at the direction of the Wind-Down Oversight Committee representatives of the Denomination Groups to whom such assets have been allocated, conduct any Monetization Transactions of GBTC shares or ETHE shares without further order of the Bankruptcy Court in accordance with the Distribution Principles and the Un-Distributable Asset Monetization Agreement contained therein, free of any prohibition on assignability or transfer under applicable nonbankruptcy law that otherwise may be applicable to such shares, but only in accordance with the Distribution Principles; *provided* that, absent further order of the Bankruptcy Court, notwithstanding anything to the contrary in the Plan (including the Distribution Principles), the Additional GBTC Shares Reserve shall be held in reserve by the Wind-Down Debtors and shall not be distributed, subject to any Monetization Transactions, or otherwise subject to dissipation, use, or encumbrance without Gemini's Consent;

(f)  upon the sale, liquidation, transfer, or other disposition of the Wind-Down Debtors' Assets, deposit the proceeds of all such sales, liquidations, transfers, or dispositions into one or more of the Wind-Down Accounts (and such proceeds shall become and be deemed to be Distributable Assets);

(g)  with five (5) Business Days' prior notice to the New Board, the Wind-Down Oversight Committee, and, with respect to the abandonment of any Retained Cause of Action, the Litigation Oversight Committee, abandon any of the Wind-Down Debtors' Assets that the PA Officer determines in his, her, or its reasonable discretion to be of *de minimis* value or burdensome to the Wind-Down Debtors, including any pending adversary proceeding or other legal action commenced or commenceable by the Debtors prior to the Effective Date;

(h)  pay the charges that it incurs on or after the Effective Date for Wind-Down Debtors' Expenses, professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court;

(i)  together with the New Board, manage each Wind-Down Debtor, in consultation with or as directed by the Wind-Down Oversight Committee as provided under the Plan Documents and otherwise in accordance with this Agreement and the applicable New Governance Documents and subject to the Wind-Down Budget;

(j)  manage the Wind-Down Budget and Wind-Down Reserve, as applicable, pay the Wind-Down Debtors' Expenses incurred in connection with making distributions or otherwise carrying out the PA Officer's duties under the Plan, and determine, in consultation with the Wind-Down Oversight Committee (and, as to the Litigation Reserve, the Litigation Oversight

3

Committee), any surplus of Cash and Digital Assets in any Claims Reserve, Litigation Reserve, or Wind-Down Reserve;

(k)    prepare and file post-Effective Date quarterly operating reports (including with respect to the month in which the Effective Date occurs);

(l)    file with the Bankruptcy Court, and provide to the New Board and the Wind-Down Oversight Committee, no later than thirty-one (31) days after June 30 and December 31 of each calendar year, semi-annual reports (in a form reasonably acceptable to the New Board and the Wind-Down Oversight Committee) regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by the PA Officer, and other matters relating to the implementation of the Plan;

(m)    prepare and file appropriate tax returns and other reports on behalf of the Wind-Down Debtors and the Debtors and pay taxes or other obligations owed by the Wind-Down Debtors and the Debtors and comply with all applicable tax withholding and reporting requirements imposed by any Governmental Unit;

(n)    invest Cash, *provided* that any such investment shall be limited to the right and power to invest in U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act of 1940 or money market funds containing only such U.S. Government securities;

(o)    subject to the New Governance Documents, issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents except those expressly required pursuant to the Plan;

(p)    seek an order from the Bankruptcy Court removing or replacing members of the Wind-Down Oversight Committee and the Litigation Oversight Committee for cause;

(q)    seek an order from the Bankruptcy Court appointing a Person, with such Person's prior written consent, to the Wind-Down Oversight Committee or the Litigation Oversight Committee if a vacancy in such committee has been left unfilled for five (5) or more Business Days; *provided* that the PA Officer shall seek to appoint a Person that has the most support from the members of the applicable committee;

(r)    upon (i) full performance of all duties and functions set forth in the Plan and this Agreement or (ii) determination, in consultation with the Wind-Down Oversight Committee, that the Wind-Down Debtors lack sufficient resources to complete such duties and functions, file a certificate of dissolution with the Bankruptcy Court and take any other necessary actions it deems appropriate to dissolve the Wind-Down Debtors, including taking all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states and executing any certificate of dissolution or equivalent document on behalf of any Wind-Down Debtor, without the need for any action or approval by the shareholders or board of directors or managers of such Wind-Down Debtor;

(s)    manage the Wind-Down Debtors' books and records and authorize the sharing of confidential or privileged information with the Wind-Down Oversight Committee or Litigation Oversight Committee as appropriate to carry out their duties under the Plan, or permit the destruction or abandonment of the Wind-Down Debtors' books, records, electronically stored information, or other documents, consistent with the Plan; *provided* that nothing herein shall affect the obligations of the Wind-Down Debtors to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

(t)    be responsible for the ongoing administration of the Chapter 11 Cases and all actions related to the closing of the Chapter 11 Cases;

(u)    retain counsel, accountants, financial advisors, or other professionals as are reasonably necessary and appropriate in furtherance of the PA Officer's fiduciary obligations and pay such professionals from the Wind-Down Reserve; *provided* that the PA Officer shall receive the consent of the Wind-Down Oversight Committee with respect to the retention of counsel to support the wind-down and administration of the Wind-Down Debtors and shall receive the consent of the Litigation Oversight Committee with respect to counsel retained to evaluate and/or prosecute the Retained Causes of Action; *provided further* that the PA Officer shall consult with (i) the Wind-Down Oversight Committee and Litigation Oversight Committee prior to the retention of any other professionals and (ii) the Wind-Down Oversight Committee and/or Litigation Oversight Committee, as applicable, regarding the terms of engagement prior to entering into any engagement agreement with any professionals appointed pursuant to this Article 2(u); and

(v)    take such actions as are necessary and reasonable to carry out the purposes of the Plan Documents, including winding down the Debtors' Estates.

3.    <u>Compensation, Fees, and Expenses.</u>

(a)    The Wind-Down Debtors shall pay the PA Officer's compensation and reimburse the PA Officer's expenses as set forth herein as such amounts come due in the ordinary course without the need for Bankruptcy Court approval.

(b)    [The PA Officer's compensation shall be based upon an initial term of up to twelve (12) months, to be paid as follows: $[●] per month for the first [●] months following the Effective Date and $[●] per month for the [●] through [●] months following the Effective Date.]

(c)    The fees and expenses of the PA Officer (including those incurred prior to the Effective Date in connection with the preparation of this Agreement) shall be payable from the Wind-Down Reserve, subject to the Wind-Down Budget, on a monthly basis in advance not later than the first (1st) Business Day of each month.

(d)    In addition to the foregoing, the PA Officer shall be entitled to reimbursement of actual, reasonable and documented, out-of-pocket and direct expenses incurred in connection with the services to be provided under this Agreement and/or the Plan Documents, as applicable.

(e)      The PA Officer may employ, without further order of the Bankruptcy Court, professionals (including, without limitation, professionals previously employed by the Debtors or the Committee) to assist in carrying out its duties under this Agreement and may compensate and reimburse the expenses of these professionals based upon the nature of the work performed by such professional, without further order of the Bankruptcy Court, in accordance with the applicable professional's engagement letter, which shall be payable from the Wind-Down Reserve, subject to the Wind-Down Budget; *provided* that the PA Officer shall receive the consent of the Wind-Down Oversight Committee with respect to the retention of counsel to support the wind-down and administration of the Wind-Down Debtors and shall receive the consent of the Litigation Oversight Committee with respect to the retention of counsel to evaluate and/or prosecute the Retained Causes of Action; *provided further* that the PA Officer shall consult with the Wind-Down Oversight Committee and Litigation Oversight Committee prior to the retention of any other professionals.  The PA Officer, the Wind-Down Oversight Committee, and the Litigation Oversight Committee may employ the same professionals to the extent appropriate, as determined by each in its reasonable discretion and in accordance with this Agreement, the Wind-Down Oversight Committee Bylaws, or the Litigation Oversight Committee Bylaws, as applicable.

(f)      The PA Officer shall not be entitled to receive from the Debtors or Wind-Down Debtors or their Estates any vacation pay, sick leave, retirement, pension, or social security benefits, workers' compensation, disability, unemployment insurance benefits, or any other employee benefits.  Notwithstanding the foregoing, as provided in the Plan, the PA Officer shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that are entitled to receive distributions pursuant to Plan.

4.      <u>Estate Representative</u>.  The PA Officer shall be deemed to be the estate representative for each Debtor (and each Wind-Down Debtor) as the party-in-interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal that may directly or indirectly affect the Wind-Down Debtors' Assets.  The PA Officer is hereby appointed as the attorney-in-fact for each Wind-Down Debtor with full power and authority, subject to any applicable consent or consultation rights set forth in the Plan, to take any action or execute any documents on behalf of the Wind-Down Debtors that may be necessary or appropriate to carry out the transactions set forth in the Plan.

5.      <u>Insurance and Bonding</u>.  The PA Officer shall obtain insurance coverage (in the form of an errors and omissions policy or otherwise) that will cover the PA Officer and the PA Parties (as defined below) with respect to the liabilities and obligations of the PA Officer under this Agreement in an amount and on terms reasonably acceptable to the PA Officer.  Unless otherwise agreed to by the New Board, the PA Officer shall serve with a bond, the terms of which shall be agreed to by the New Board, and the cost and expense of which shall be paid by the Wind-Down Debtors.

6.      <u>Privilege; Common Interest</u>.    All attorney-client privileges, work product protections, common interest or joint defense privileges, mediation privileges, or any other protections, privileges, or immunities from disclosure held by the Wind-Down Debtors (any such privilege or protection, a "**Privilege**"), including, but not limited to, Privileges transferred to the Wind-Down Debtors from the Debtors, shall vest in the PA Officer solely in his or her capacity as such, and the PA Officer shall stand in the same position as the Debtors, their Estates, and/or the

Wind-Down Debtors as to all such Privileges, shall succeed to all of the rights of the Debtors, their Estates, and/or the Wind-Down Debtors to preserve, assert, or waive any such Privilege, and shall be deemed to be the assignee by each Debtor, its Estate, and each Wind-Down Debtor of each such Privilege as of the Effective Date. Consistent with the PA Officer's fiduciary duties, the PA Officer agrees to work with the Wind-Down Oversight Committee and Litigation Oversight Committee to satisfy their duties under the Plan and understands that the PA Officer and Wind-Down Debtors (on the one hand) and the Wind-Down Oversight Committee and/or Litigation Oversight Committee (on the other hand) have certain common, mutual, and interrelated legal rights, interests, and obligations in connection with the Chapter 11 Cases, the transactions provided for under the Plan, the Retained Causes of Action, and the wind-down of the Wind-Down Debtors. In furtherance of those common and interrelated legal rights, interests, and obligations, no Privilege shall be waived by disclosure between or among any of the Wind-Down Debtors, the PA Officer, the Wind-Down Oversight Committee, and/or the Litigation Oversight Committee or their respective professionals of information that is subject to any Privilege or any Privilege jointly held by the Wind-Down Debtors and the PA Officer. The PA Officer shall provide any information that is confidential or subject to Privilege and is reasonably requested by the Wind-Down Oversight Committee and/or the Litigation Oversight Committee in furtherance of the performance of their duties, including, without limitation, any information related to the Retained Causes of Action or the identity of any individual on the list of Released Genesis Personnel (as defined in Exhibit F of the Plan Supplement [Docket No. 1117]). The PA Officer shall be authorized and permitted to share such information (subject to the obligation of confidentiality set forth in Section 8) without waiving any applicable Privilege or violating any duty of confidentiality.

7.    <u>Maintenance and Disposition of Wind-Down Debtors' Records</u>.  The PA Officer shall maintain accurate records of the administration of the Wind-Down Debtors' assets, including receipts and disbursements and other activity of each Wind-Down Debtor. The PA Officer may, but has no obligation to, engage a claims agent (including the Debtors' existing claims agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Wind-Down Debtors. The PA Officer shall be provided with originals or copies of, or access to all documents, communications, and business records of each Debtor that are in the possession of each Debtor and reasonably necessary or requested by the PA Officer for the administration and disposition of the Wind-Down Debtors' assets and the other activities and duties required to be performed by the PA Officer under the Plan, including with respect to the investigation and prosecution of the Retained Causes of Action.  The PA Officer shall be authorized to share materials reasonably requested by the Wind-Down Oversight Committee or Litigation Oversight Committee without violating any obligation of confidentiality or waiving any privilege, doctrine, immunity or protection from discovery or disclosure.

8.    <u>Confidentiality</u>. The PA Officer shall treat confidentially all information not publicly available that is received by the PA Officer in connection with this engagement or that is developed during this engagement, and the PA Officer shall not disclose such information except with the Wind-Down Oversight Committee, Litigation Oversight Committee, any party that has agreed in writing to maintain such information confidential, or as required by a court order or other legal process.  For the avoidance of doubt, this provision shall apply in all respects to any non-public information regarding the Wind-Down Debtors' Beneficiaries, and the PA Officer shall agree to comply with the *Order Granting the Debtors' and the Official Committee of Unsecured*

*Creditors' Motions for Entry of an Order Requiring the Redaction of Certain Personally Identifiable Information* [Docket No. 694].

9.        <u>Indemnity</u>.  It shall be the sole responsibility of the Wind-Down Debtors to indemnify and defend the PA Officer and his or her employees, employers, designees, or professionals (collectively, the "**PA Parties**") from and against any and all claims, liability, loss, costs, damage, or expense (including reasonable attorneys' fees) asserted against them by reason of or arising out of or related to this Agreement or performance under this Agreement or the Plan Documents or any related transactions that are taken or omitted to be taken as set forth in this Agreement or the Plan Documents, payable solely from the Wind-Down Debtors' Assets; *provided* that there shall be no obligation to indemnify or defend a PA Party on account of specific acts or omissions resulting from such PA Party's willful misconduct, gross negligence or actual fraud, or from the PA Party's breach of the terms of this Agreement or the Plan, including, without limitation, failure to act in accordance with the directions of the Wind-Down Oversight Committee where applicable; *provided further* that any action taken or omitted to be taken in the case of the PA Officer with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute fraud, willful misconduct, or gross negligence.  Notwithstanding anything in the Plan Documents to the contrary, the PA Officer shall be indemnified and held harmless and shall have no liability to the Wind-Down Debtors, Holders of Claims or Interests, or any other party under any circumstances for any acts or omissions taken (or not taken) at the direction of the Wind-Down Oversight Committee or the Litigation Oversight Committee.

10.        <u>Liability of the PA Parties; Exculpation</u>.  The PA Parties shall not be liable for any losses, claims, damages, liabilities, or expenses in connection with (i) the affairs of the Wind-Down Debtors or for any act or omission taken or omitted to be taken pursuant to the discretion, powers, and authority conferred, or in good faith believed to be conferred, by this Agreement, the Plan, any Final Order, or applicable law, other than to the extent that such specific acts or omissions is determined, in a Final Order, to be the result of such PA Party's willful misconduct, gross negligence, or actual fraud and (ii) the affairs of, or any act or omission taken or omitted to be taken by, any distribution agent engaged by the PA Officer to the extent such exculpation is not provided for under the terms of engagement between the PA Officer and such distribution agent. The PA Officer shall be entitled to enjoy all of the rights, powers, immunities, and privileges applicable to a chapter 7 trustee, subject to the provisions of the Plan and this Agreement.  The PA Officer may, in connection with the performance of his or her functions, and in his or her sole and absolute discretion, consult with its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.  Notwithstanding the foregoing, the PA Officer shall not have any obligation to consult with any attorneys, accountants, financial advisors, or agents, and his or her determination not to do so shall not result in the imposition of liability on the PA Officer or and PA Parties unless such determination is based on willful misconduct, gross negligence, or actual fraud.  The PA Parties shall not be liable whatsoever except for the performance of such duties and obligations as are specifically set forth in the Plan (including the Distribution Principles), and no implied covenants or obligations shall be read into this Agreement, the Wind-Down Oversight Committee Bylaws, or the Litigation Oversight Committee Bylaws against any of them.  The Wind-Down Debtors shall promptly, upon submission of invoices therefor, pay expenses reasonably incurred by the PA Officer or any PA Party in defending, participating in, or settling

8

any action, proceeding, or investigation in which such PA Party is a party or is threatened to be made a party and which arises out of or due to such PA Party's duties, acts, or omissions, or the consequences of such duties, acts, or omissions, with respect to the implementation of the Plan or otherwise in connection with the affairs of the Wind-Down Debtors, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise; *provided, however*, that no expenses shall be paid to the PA Officer to the extent such expenses result from the PA Officer's willful misconduct, gross negligence, or actual fraud or are otherwise inconsistent with the provisions of the Plan or this Agreement.

11.     <u>Removal, Resignation, or Replacement of the PA Officer</u>.

(a)     The PA Officer shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtors are dissolved in accordance with the Plan and this Agreement, and (ii) the date on which the PA Officer resigns, is terminated in accordance with this Agreement, or is otherwise unable to serve.

(b)     The PA Officer may resign its duties at any time upon thirty (30) days' written notice to the Bankruptcy Court and the Notice Parties, *provided that* such resignation shall only become effective upon the appointment of a permanent or interim successor PA Officer as set forth in this Agreement. Upon the appointment of a successor PA Officer, such successor shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor PA Officer pursuant to this Agreement, the Plan, and the Confirmation Order, and all responsibilities of the predecessor PA Officer shall be terminated.

(c)     The PA Officer may be removed (i) for any reason, by the majority vote of the Wind-Down Oversight Committee, in consultation with the Litigation Oversight Committee; *provided* that, to the extent there is any dispute regarding the removal of the PA Officer (including any dispute relating to any compensation or expense reimbursement due under this Agreement), to the fullest extent permitted by law, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute, or (ii) upon motion by any party in interest, by the Bankruptcy Court for cause shown after notice and a hearing.

(d)     In the event that a PA Officer resigns, is removed, or is otherwise unable to serve and must be replaced, the Wind-Down Oversight Committee shall elect a successor to be appointed by the New Board to serve as a PA Officer. If the Wind-Down Oversight Committee does not elect a successor within five (5) Business Days, then the Bankruptcy Court, upon the motion of any party in interest, including counsel to the Wind-Down Debtors, shall appoint a successor to serve as a PA Officer. The successor PA Officer appointed shall immediately become fully vested with all of the rights, powers, duties, and obligations of the predecessor PA Officer pursuant to this Agreement, the Plan, and the Confirmation Order and shall serve until replaced or reappointed by the Wind-Down Oversight Committee pursuant to this section.

(e)     Notwithstanding anything to the contrary contained in this Agreement, any PA Officer who is removed or resigns pursuant to this Agreement shall (i) retain its right to coverage under any applicable insurance policies and indemnification in accordance with <u>Article I.9</u> hereof for its acts or omissions occurring prior to such removal or resignation and (ii) be entitled to all fees and expenses accrued up to the date of such removal or resignation pursuant to

this Agreement, including any travel or related expenses incurred in returning from the location of the services being provided under this Agreement prior to such termination or resignation date.

## ARTICLE II
## TERMINATION

1.    This Agreement shall terminate automatically upon the earlier of the date which (a) all of the Chapter 11 Cases have been closed and all payments have been made under the Plan (including the PA Officer's compensation and reimbursement), or (b) the Wind-Down Debtors are dissolved in accordance with Article IV.A.14 of the Plan.

2.    Upon termination of this Agreement pursuant to Article II.1, the PA Officer shall be entitled to all fees and expenses provided for under this Agreement accrued up to the date of such termination and any further fees and expenses associated with the dissolution of the Wind-Down Debtors' Estates.

## ARTICLE III
## MISCELLANEOUS PROVISIONS

1.    Notice.    All invoices, notices, requests, demands, and other communications permitted or required to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed conclusively to have been given:  (a) when personally delivered; (b) when sent by electronic mail during a Business Day (or on the next Business Day if sent after the close of normal business hours or on any non-Business Day); (c) one (1) Business Day after being sent by reputable overnight express courier (charges prepaid); or (d) three (3) Business Days following mailing by certified or registered mail, postage prepaid and return receipt requested. Unless another address is specified in writing, notices, requests, demands, and communications to the Parties hereto shall be sent to the addresses indicated below:

To the Wind-Down Debtors:

c/o Genesis Global Holdco LLC
175 Greenwich Street, Floor 38
New York, NY 10007
Attn:  A. Derar Islim

To the PA Officer:

        Mark Renzi
        c/o Berkeley Research Group, LLC
        99 High Street
        27th Floor
        Boston, MA 02110
        E-mail: mrenzi@thinkbrg.com

To the Wind-Down Oversight Committee:

        Amelia Alvarez; Olivier Cohen; Teddy Gorisse;
        Vadim Khramov; Mark Nuvelstijn; Khing Oei;
        Refael Sofair

To the Litigation Oversight Committee:

        Vijay Boyapati; Olivier Cohen; Teddy Gorisse;
        Vadim Khramov; Ari Litan; Mark Nuvelstijn;
        Refael Sofair

2.      <u>Survivability</u>.  <u>Sections I.6, I.7, and II.3</u> and all other provisions necessary to the enforcement of the intent of this Agreement shall survive the termination or expiration of this Agreement.

3.      <u>Inconsistencies</u>.  In the event of an inconsistency between this Agreement and the Plan, the terms of this Agreement shall control in all respects.  In the event of an inconsistency between the Confirmation Order, the Plan, and this Agreement, the Confirmation Order shall control.

4.      <u>Severability</u>.  If any portion of this Agreement shall be determined to be invalid or unenforceable, the remainder of this Agreement shall be valid and enforceable to the maximum extent provided by applicable law.

5.      <u>Assignment</u>.  Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be assigned by any of the Parties (whether by operation of law or otherwise) without the prior written consent of the PA Officer and the Wind-Down Oversight Committee.

6.      <u>Governing Law</u>.  This Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to choice of law or principles thereof.  In any court proceeding arising out of or related to this Agreement, each of the Parties hereby waives any right to trial by jury.  Each of the Parties hereby submits to the exclusive jurisdiction of the Bankruptcy Court for purposes of any proceeding arising from or related to this Agreement, and each of the Parties agrees not to commence any action, suit, or proceeding relating thereto except in the Bankruptcy Court.

7.      Entire Agreement.  This Agreement and the Plan Documents encompass all of the terms and conditions between the Wind-Down Debtors and the PA Officer concerning the subject matter hereof.  This Agreement may not be amended or modified in any respect except in a writing signed by the PA Officer with the consent of the Wind-Down Oversight Committee.

8.      Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same Agreement.  A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission (.pdf) shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

9.      Amendments.  This Agreement may be amended by written agreement of the PA Officer with the consent of the Wind-Down Oversight Committee; *provided*, *however*, that such amendment may not be inconsistent with the Plan or Confirmation Order.

[SIGNATURE PAGES FOLLOW]

THE DEBTORS:

GENESIS GLOBAL HOLDCO LLC, ON
BEHALF OF ITSELF AND ITS AFFILIATED
DEBTORS


By:_____
Name: A. Derar Islim
Title: Interim Chief Executive Officer

THE PA OFFICER:

MARK RENZI
BERKELEY RESEARCH GROUP, LLC


By:_____
Name: Mark Renzi

# EXHIBIT I-1

**(Blackline) Revised Plan Administration Agreement**

## PLAN ADMINISTRATION AGREEMENT

This PLAN ADMINISTRATION AGREEMENT (this "**Agreement**"), dated as of [●], by and between (a) Genesis Global Holdco, LLC, on behalf of itself and its debtor subsidiaries (collectively, the "**Debtors**" or the "**Wind-Down Debtors**," as applicable) and (b) Mark Renzi (the "**PA Officer**," and, together with the Debtors, the "**Parties**"), sets forth the PA Officer's rights, powers, and obligations in connection with the *Joint Chapter 11 Plan of Genesis Global Holdco, LLC and Its Debtor Affiliates* [Docket No. [●]] (together with the supplements and exhibits thereto and as may be amended, modified, or supplemented from time to time, the "**Plan**").[1]

## RECITALS

WHEREAS, on January 19, 2023 (the "**Petition Date**"), the Debtors filed the Chapter 11 Cases;

WHEREAS, the Plan was confirmed by order of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on [●], 2024 [Docket No. [●] (together with the exhibits thereto, the "**Confirmation Order**");

WHEREAS, the Effective Date of the Plan occurred on the date hereof;

WHEREAS, the Plan provides for, on the Effective Date, among other things:

(a)     the appointment of the PA Officer to administer the distributions to the Wind-Down Debtors' Beneficiaries in accordance with and pursuant to the Distribution Principles and serve as the successor to and representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of prosecuting Retained Causes of Action belonging to such Estates (including any Causes of Action that belong to the Other Genesis Entities) that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan;

(b)     the establishment of the Wind-Down Oversight Committee to oversee the PA Officer and the Wind-Down Debtors' wind-down activities in accordance with the Plan (including the Distribution Principles) and this Agreement and to manage the Wind-Down Reserve; and

(c)     the establishment of the Litigation Oversight Committee to direct and consult with the PA Officer with respect to the strategy and pursuit of Retained Causes of Action, including the management and direction of counsel and other advisors to pursue the Retained Causes of Action (as directed by the Litigation Oversight Committee), approval of settlements

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

of any Retained Causes of Action (if any), and management of the Litigation Reserve;

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the undersigned parties hereto hereby agree as follows:

# ARTICLE I
# THE PA OFFICER

1.    <u>Appointment</u>.   The PA Officer has been selected in accordance with <u>Article IV.A.2</u> of the Plan and is hereby appointed as of the date hereof for the purpose of effectuating the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order, as applicable (collectively, the "**Plan Documents**").   As set forth in the Plan Documents, the PA Officer shall succeed to such powers as would have been applicable to the Debtors, the Debtors' officers, and the Debtors' Estates from and following the Effective Date and shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims that are entitled to receive distributions pursuant to the Plan.  The Parties intend that an independent contractor relationship shall be created by this Agreement.

2.    <u>Scope of Services</u>.   Subject to the oversight of the New Board, the Wind-Down Oversight Committee, and/or the Litigation Oversight Committee (as applicable), as set forth in the Plan Documents, the PA Officer shall provide, and is authorized to provide, post-Effective Date administration, wind-down, dissolution, and liquidation services that are necessary, required, desirable, or advisable to effectuate the transactions contemplated by the Plan Documents and to make certain distributions under the Plan.  Without limiting the provisions of the Plan (including the Distribution Principles) applicable to the PA Officer, the PA Officer shall be authorized and empowered to perform the following services on behalf of the Wind-Down Debtors and the Debtors' Estates:

(a)    allocate the Wind-Down Debtors' Assets among, and administer distributions under the Plan to, the applicable Denomination Groups, in accordance with and pursuant to the Distribution Principles, including, among other things, determining when to make such distributions and any related record date for such distributions, determining which Digital Assets are available for distribution after the Effective Date, and selecting the entities (in its discretion) to make or facilitate distributions pursuant to the Plan;

(b)    in consultation with the Wind-Down Oversight Committee, compromise or settle any Claims related to the Wind-Down Debtors' Assets (including litigating, settling, abandoning, or seeking dismissal of any Retained Causes of Action) and any other claims, rights, or causes of action assigned to the Wind-Down Debtors without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided*, *however*, that the Wind-Down Oversight Committee's Consent shall be required for any settlement that would Allow a Claim at a value at or above $5,000,000; *provided further* that

the Litigation Oversight Committee's Consent shall be required for any settlement of Retained Causes of Action in accordance with the Plan and this Agreement;

(c)  conduct any Monetization Transactions of non-Cash Wind-Down Debtors' Assets (except for Retained Causes of Action, GBTC shares, and ETHE shares), and purchase any Digital Assets on any terms it deems reasonable to maximize the distribution of the Wind-Down Debtors' Assets to creditors on an in-kind basis, without further order of the Bankruptcy Court;

(d)  conduct any Monetization Transactions of Retained Causes of Action without further order of the Bankruptcy Court, but only to the extent the PA Officer has obtained the prior consent of the New Board and the Litigation Oversight Committee's Consent;

(e)  at the direction of the Wind-Down Oversight Committee representatives of the Denomination Groups to whom such assets have been allocated, conduct any Monetization Transactions of GBTC shares or ETHE shares without further order of the Bankruptcy Court in accordance with the Distribution Principles and the Un-Distributable Asset Monetization Agreement contained therein, free of any prohibition on assignability or transfer under applicable nonbankruptcy law that otherwise may be applicable to such shares, but only in accordance with the Distribution Principles; *provided* that, absent further order of the Bankruptcy Court, notwithstanding anything to the contrary in the Plan (including the Distribution Principles), the Additional GBTC Shares Reserve shall be held in reserve by the Wind-Down Debtors and shall not be distributed, subject to any Monetization Transactions, or otherwise subject to dissipation, use, or encumbrance without Gemini's Consent;

(f)  upon the sale, liquidation, transfer, or other disposition of the Wind-Down Debtors' Assets, deposit the proceeds of all such sales, liquidations, transfers, or dispositions into one or more of the Wind-Down Accounts (and such proceeds shall become and be deemed to be Distributable Assets);

(g)  with five (5) Business Days' prior notice to the New Board, the Wind-Down Oversight Committee, and, with respect to the abandonment of any Retained Cause of Action, the Litigation Oversight Committee, abandon any of the Wind-Down Debtors' Assets that the PA Officer determines in his, her, or its reasonable discretion to be of *de minimis* value or burdensome to the Wind-Down Debtors, including any pending adversary proceeding or other legal action commenced or commenceable by the Debtors prior to the Effective Date;

(h)  pay the charges that it incurs on or after the Effective Date for Wind-Down Debtors' Expenses, professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court;

(i)  together with the New Board, manage each Wind-Down Debtor, in consultation with or as directed by the Wind-Down Oversight Committee as provided under the Plan Documents and otherwise in accordance with this Agreement and the applicable New Governance Documents and subject to the Wind-Down Budget;

(j)  manage the Wind-Down Budget and Wind-Down Reserve, as applicable, pay the Wind-Down Debtors' Expenses incurred in connection with making distributions or

3

otherwise carrying out the PA Officer's duties under the Plan, and determine, in consultation with the Wind-Down Oversight Committee (and, as to the Litigation Reserve, the Litigation Oversight Committee), any surplus of Cash and Digital Assets in any Claims Reserve, Litigation Reserve, or Wind-Down Reserve;

(k)    prepare and file post-Effective Date quarterly operating reports (including with respect to the month in which the Effective Date occurs);

(l)    file with the Bankruptcy Court, and provide to the New Board and the Wind-Down Oversight Committee, no later than thirty-one (31) days after June 30 and December 31 of each calendar year, semi-annual reports (in a form reasonably acceptable to the New Board and the Wind-Down Oversight Committee) regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by the PA Officer, and other matters relating to the implementation of the Plan;

(m)    prepare and file appropriate tax returns and other reports on behalf of the Wind-Down Debtors and the Debtors and pay taxes or other obligations owed by the Wind-Down Debtors and the Debtors and comply with all applicable tax withholding and reporting requirements imposed by any Governmental Unit;

(n)    invest Cash, *provided* that any such investment shall be limited to the right and power to invest in U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act of 1940 or money market funds containing only such U.S. Government securities;

(o)    subject to the New Governance Documents, issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents except those expressly required pursuant to the Plan;

(p)    seek an order from the Bankruptcy Court removing or replacing members of the Wind-Down Oversight Committee and the Litigation Oversight Committee for cause;

(q)    seek an order from the Bankruptcy Court appointing a Person, with such Person's prior written consent, to the Wind-Down Oversight Committee or the Litigation Oversight Committee if a vacancy in such committee has been left unfilled for five (5) or more Business Days; *provided* that the PA Officer shall seek to appoint a Person that has the most support from the members of the applicable committee;

(r)    upon (i) full performance of all duties and functions set forth in the Plan and this Agreement or (ii) determination, in consultation with the Wind-Down Oversight Committee, that the Wind-Down Debtors lack sufficient resources to complete such duties and functions, file a certificate of dissolution with the Bankruptcy Court and take any other necessary actions it deems appropriate to dissolve the Wind-Down Debtors, including taking all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states and executing any certificate of dissolution or equivalent document on behalf of

any Wind-Down Debtor, without the need for any action or approval by the shareholders or board of directors or managers of such Wind-Down Debtor;

(s)    manage the Wind-Down Debtors' books and records and authorize the sharing of confidential or privileged information with the Wind-Down Oversight Committee or Litigation Oversight Committee as appropriate to carry out their duties under the Plan, or permit the destruction or abandonment of the Wind-Down Debtors' books, records, electronically stored information, or other documents, consistent with the Plan; *provided* that nothing herein shall affect the obligations of the Wind-Down Debtors to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

(t)    be responsible for the ongoing administration of the Chapter 11 Cases and all actions related to the closing of the Chapter 11 Cases;

(u)    retain counsel, accountants, financial advisors, or other professionals as are reasonably necessary and appropriate in furtherance of the PA Officer's fiduciary obligations and pay such professionals from the Wind-Down Reserve; *provided* that the PA Officer shall receive the consent of the Wind-Down Oversight Committee with respect to the retention of counsel to support the wind-down and administration of the Wind-Down Debtors and shall receive the consent of the Litigation Oversight Committee with respect to counsel retained to evaluate and/or prosecute the Retained Causes of Action; *provided further* that the PA Officer shall consult with (i) the Wind-Down Oversight Committee and Litigation Oversight Committee prior to the retention of any other professionals; and and (ii) the Wind-Down Oversight Committee and/or Litigation Oversight Committee, as applicable, regarding the terms of engagement prior to entering into any engagement agreement with any professionals appointed pursuant to this Article 2(u); and

(v)    take such actions as are necessary and reasonable to carry out the purposes of the Plan Documents, including winding down the Debtors' Estates.

3.    <u>Compensation, Fees, and Expenses</u>.

(a)    The Wind-Down Debtors shall pay the PA Officer's compensation and reimburse the PA Officer's expenses as set forth herein as such amounts come due in the ordinary course without the need for Bankruptcy Court approval.

(b)    [The PA Officer's compensation shall be based upon an initial term of up to twelve (12) months, to be paid as follows: $[●] per month for the first [●] months following the Effective Date and $[●] per month for the [●] through [●] months following the Effective Date.]

(c)    The fees and expenses of the PA Officer (including those incurred prior to the Effective Date in connection with the preparation of this Agreement) shall be payable from the Wind-Down Reserve, subject to the Wind-Down Budget, on a monthly basis in advance not later than the first (1st) Business Day of each month.

(d)     In addition to the foregoing, the PA Officer shall be entitled to reimbursement of actual, reasonable and documented, out-of-pocket and direct expenses incurred in connection with the services to be provided under this Agreement and/or the Plan Documents, as applicable.

(e)     The PA Officer may employ, without further order of the Bankruptcy Court, professionals (including, without limitation, professionals previously employed by the Debtors or the Committee) to assist in carrying out its duties under this Agreement and may compensate and reimburse the expenses of these professionals based upon the nature of the work performed by such professional, without further order of the Bankruptcy Court, in accordance with the applicable professional's engagement letter, which shall be payable from the Wind-Down Reserve, subject to the Wind-Down Budget; *provided* that the PA Officer shall receive the consent of the Wind-Down Oversight Committee with respect to the retention of counsel to support the wind-down and administration of the Wind-Down Debtors and shall receive the consent of the Litigation Oversight Committee with respect to the retention of counsel to evaluate and/or prosecute the Retained Causes of Action; *provided further* that the PA Officer shall consult with the Wind-Down Oversight Committee and Litigation Oversight Committee prior to the retention of any other professionals.  The PA Officer, the Wind-Down Oversight Committee, and the Litigation Oversight Committee may employ the same professionals to the extent appropriate, as determined by each in its reasonable discretion and in accordance with this Agreement, the Wind-Down Oversight Committee Bylaws, or the Litigation Oversight Committee Bylaws, as applicable.

(f)     The PA Officer shall not be entitled to receive from the Debtors or Wind-Down Debtors or their Estates any vacation pay, sick leave, retirement, pension, or social security benefits, workers' compensation, disability, unemployment insurance benefits, or any other employee benefits.  Notwithstanding the foregoing, as provided in the Plan, the PA Officer shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that are entitled to receive distributions pursuant to Plan.

4. <u>Estate Representative</u>.  The PA Officer shall be deemed to be the estate representative for each Debtor (and each Wind-Down Debtor) as the party-in-interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal that may directly or indirectly affect the Wind-Down Debtors' Assets.  The PA Officer is hereby appointed as the attorney-in-fact for each Wind-Down Debtor with full power and authority, subject to any applicable consent or consultation rights set forth in the Plan, to take any action or execute any documents on behalf of the Wind-Down Debtors that may be necessary or appropriate to carry out the transactions set forth in the Plan.

5. <u>Insurance and Bonding</u>.  The PA Officer shall obtain insurance coverage (in the form of an errors and omissions policy or otherwise) that will cover the PA Officer and the PA Parties (as defined below) with respect to the liabilities and obligations of the PA Officer under this Agreement in an amount and on terms reasonably acceptable to the PA Officer.  Unless otherwise agreed to by the New Board, the PA Officer shall serve with a bond, the terms of which shall be agreed to by the New Board, and the cost and expense of which shall be paid by the Wind-Down Debtors.

6. <u>Privilege; Common Interest</u>.  All attorney-client privileges, work product protections, common interest or joint defense privileges, mediation privileges, or any other protections, privileges, or immunities from disclosure held by the Wind-Down Debtors (any such privilege or protection, a "**Privilege**"), including, but not limited to, Privileges transferred to the Wind-Down Debtors from the Debtors, shall vest in the PA Officer solely in his or her capacity as such, and the PA Officer shall stand in the same position as the Debtors, their Estates, and/or the Wind-Down Debtors as to all such Privileges, shall succeed to all of the rights of the Debtors, their Estates, and/or the Wind-Down Debtors to preserve, assert, or waive any such Privilege, and shall be deemed to be the assignee by each Debtor, its Estate, and each Wind-Down Debtor of each such Privilege as of the Effective Date. Consistent with the PA Officer's fiduciary duties, the PA Officer agrees to work with the Wind-Down Oversight Committee and Litigation Oversight Committee to satisfy their duties under the Plan and understands that the PA Officer and Wind-Down Debtors (on the one hand) and the Wind-Down Oversight Committee and/or Litigation Oversight Committee (on the other hand) have certain common, mutual, and interrelated legal rights, interests, and obligations in connection with the Chapter 11 Cases, the transactions provided for under the Plan, the Retained Causes of Action, and the wind-down of the Wind-Down Debtors.  In furtherance of those common and interrelated legal rights, interests, and obligations, no Privilege shall be waived by disclosure between or among any of the Wind-Down Debtors, the PA Officer, the Wind-Down Oversight Committee, and/or the Litigation Oversight Committee or their respective professionals of information that is subject to any Privilege or any Privilege jointly held by the Wind-Down Debtors and the PA Officer. The PA Officer shall provide any information that is confidential or subject to Privilege and is reasonably requested by the Wind-Down Oversight Committee and/or the Litigation Oversight Committee in furtherance of the performance of their duties, including, without limitation, any information related to the Retained Causes of Action or the identity of any individual on the list of Released Genesis Personnel (as defined in Exhibit F of the Plan Supplement [Docket No. 1117]). The PA Officer shall be authorized and permitted to share such information (subject to the obligation of confidentiality set forth in Section 8) without waiving any applicable Privilege or violating any duty of confidentiality.

7.      <u>Maintenance and Disposition of Wind-Down Debtors' Records</u>.  The PA Officer shall maintain accurate records of the administration of the Wind-Down Debtors' assets, including receipts and disbursements and other activity of each Wind-Down Debtor. The PA Officer may, but has no obligation to, engage a claims agent (including the Debtors' existing claims agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Wind-Down Debtors. The PA Officer shall be provided with originals or copies of, or access to all documents, communications, and business records of each Debtor that are in the possession of each Debtor and reasonably necessary or requested by the PA Officer for the administration and disposition of the Wind-Down Debtors' assets and the other activities and duties required to be performed by the PA Officer under the Plan, including with respect to the investigation and prosecution of the Retained Causes of Action.  The PA Officer shall be authorized to share materials reasonably requested by the Wind-Down Oversight Committee or Litigation Oversight Committee without violating any obligation of confidentiality or waiving any privilege, doctrine, immunity or protection from discovery or disclosure.

8.      <u>Confidentiality</u>. The PA Officer shall treat confidentially all information not publicly available that is received by the PA Officer in connection with this engagement or that is developed during this engagement, and the PA Officer shall not disclose such information except with the Wind-Down Oversight Committee, Litigation Oversight Committee, any party that has agreed in writing to maintain such information confidential, or as required by a court order or other legal process.  For the avoidance of doubt, this provision shall apply in all respects to any non-public information regarding the Wind-Down Debtors' Beneficiaries, and the PA Officer shall agree to comply with the *Order Granting the Debtors' and the Official Committee of Unsecured Creditors' Motions for Entry of an Order Requiring the Redaction of Certain Personally Identifiable Information* [Docket No. 694].

9.      <u>Indemnity</u>.  It shall be the sole responsibility of the Wind-Down Debtors to indemnify and defend the PA Officer and his or her employees, employers, designees, or professionals (collectively, the "**PA Parties**") from and against any and all claims, liability, loss, costs, damage, or expense (including reasonable attorneys' fees) asserted against them by reason of or arising out of or related to this Agreement or performance under this Agreement or the Plan Documents or any related transactions that are taken or omitted to be taken as set forth in this Agreement or the Plan Documents, payable solely from the Wind-Down Debtors' Assets; *provided* that there shall be no obligation to indemnify or defend a PA Party on account of specific acts or omissions resulting from such PA Party's willful misconduct, gross negligence or actual fraud, or from the PA Party's breach of the terms of this Agreement or the Plan, including, without limitation, failure to act in accordance with the directions of the Wind-Down Oversight Committee where applicable; *provided further* that any action taken or omitted to be taken in the case of the PA Officer with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute fraud, willful misconduct, or gross negligence.  Notwithstanding anything in the Plan Documents to the contrary, the PA Officer shall be indemnified and held harmless and shall have no liability to the Wind-Down Debtors, Holders of Claims or Interests, or any other party under any circumstances for any acts or omissions taken (or not taken) at the direction of the Wind-Down Oversight Committee or the Litigation Oversight Committee.

10.    <u>Liability of the PA Parties; Exculpation</u>.  The PA Parties shall not be liable for any losses, claims, damages, liabilities, or expenses in connection with (i) the affairs of the Wind-Down Debtors or for any act or omission taken or omitted to be taken pursuant to the discretion, powers, and authority conferred, or in good faith believed to be conferred, by this Agreement, the Plan, any Final Order, or applicable law, other than to the extent that such specific acts or omissions is determined, in a Final Order, to be the result of such PA Party's willful misconduct, gross negligence, or actual fraud and (ii) the affairs of, or any act or omission taken or omitted to be taken by, any distribution agent engaged by the PA Officer to the extent such exculpation is not provided for under the terms of engagement between the PA Officer and such distribution agent.  The PA Officer shall be entitled to enjoy all of the rights, powers, immunities, and privileges applicable to a chapter 7 trustee, subject to the provisions of the Plan and this Agreement.  The PA Officer may, in connection with the performance of his or her functions, and in his or her sole and absolute discretion, consult with its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.  Notwithstanding the foregoing, the PA Officer shall not have any obligation to consult with any attorneys, accountants, financial advisors, or agents, and his or her determination not to do so shall not result in the imposition of liability on the PA Officer or and PA Parties unless such determination is based on willful misconduct, gross negligence, or actual fraud.  The PA Parties shall not be liable whatsoever except for the performance of such duties and obligations as are specifically set forth in the Plan (including the Distribution Principles), and no implied covenants or obligations shall be read into this Agreement, the Wind-Down Oversight Committee Bylaws, or the Litigation Oversight Committee Bylaws against any of them.   The Wind-Down Debtors shall promptly, upon submission of invoices therefor, pay expenses reasonably incurred by the PA Officer or any PA Party in defending, participating in, or settling any action, proceeding, or investigation in which such PA Party is a party or is threatened to be made a party and which arises out of or due to such PA Party's duties, acts, or omissions, or the consequences of such duties, acts, or omissions, with respect to the implementation of the Plan or otherwise in connection with the affairs of the Wind-Down Debtors, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise; *provided, however*, that no expenses shall be paid to the PA Officer to the extent such expenses result from the PA Officer's willful misconduct, gross negligence, or actual fraud or are otherwise inconsistent with the provisions of the Plan or this Agreement.

11.    <u>Removal, Resignation, or Replacement of the PA Officer</u>.

(a)    The PA Officer shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtors are dissolved in accordance with the Plan and this Agreement, and (ii) the date on which the PA Officer resigns, is terminated in accordance with this Agreement, or is otherwise unable to serve.

(b)    The PA Officer may resign its duties at any time upon thirty (30) days' written notice to the Bankruptcy Court and the Notice Parties, *provided that* such resignation shall only become effective upon the appointment of a permanent or interim successor PA Officer as set forth in this Agreement.  Upon the appointment of a successor PA Officer, such successor shall become fully vested with all of the rights, powers, duties, and obligations of the

predecessor PA Officer pursuant to this Agreement, the Plan, and the Confirmation Order, and all responsibilities of the predecessor PA Officer shall be terminated.

(c)     The PA Officer may be removed (i) for any reason, by the majority vote of the Wind-Down Oversight Committee, in consultation with the Litigation Oversight Committee; *provided* that, to the extent there is any dispute regarding the removal of the PA Officer (including any dispute relating to any compensation or expense reimbursement due under this Agreement), to the fullest extent permitted by law, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute, or (ii) upon motion by any party in interest, by the Bankruptcy Court for cause shown after notice and a hearing.

(d)     In the event that a PA Officer resigns, is removed, or is otherwise unable to serve and must be replaced, the Wind-Down Oversight Committee shall elect a successor to be appointed by the New Board to serve as a PA Officer.  If the Wind-Down Oversight Committee does not elect a successor within five (5) Business Days, then the Bankruptcy Court, upon the motion of any party in interest, including counsel to the Wind-Down Debtors, shall appoint a successor to serve as a PA Officer.  The successor PA Officer appointed shall immediately become fully vested with all of the rights, powers, duties, and obligations of the predecessor PA Officer pursuant to this Agreement, the Plan, and the Confirmation Order and shall serve until replaced or reappointed by the Wind-Down Oversight Committee pursuant to this section.

(e)     Notwithstanding anything to the contrary contained in this Agreement, any PA Officer who is removed or resigns pursuant to this Agreement shall (i) retain its right to coverage under any applicable insurance policies and indemnification in accordance with Article I.9 hereof for its acts or omissions occurring prior to such removal or resignation and (ii) be entitled to all fees and expenses accrued up to the date of such removal or resignation pursuant to this Agreement, including any travel or related expenses incurred in returning from the location of the services being provided under this Agreement prior to such termination or resignation date.

## ARTICLE II
## TERMINATION

1.     This Agreement shall terminate automatically upon the earlier of the date which (a) all of the Chapter 11 Cases have been closed and all payments have been made under the Plan (including the PA Officer's compensation and reimbursement), or (b) the Wind-Down Debtors are dissolved in accordance with Article IV.A.14 of the Plan.

2.     Upon termination of this Agreement pursuant to Article II.1, the PA Officer shall be entitled to all fees and expenses provided for under this Agreement accrued up to the date of such termination and any further fees and expenses associated with the dissolution of the Wind-Down Debtors' Estates.

## ARTICLE III
## MISCELLANEOUS PROVISIONS

1.    <u>Notice</u>.  All invoices, notices, requests, demands, and other communications permitted or required to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed conclusively to have been given:  (a) when personally delivered; (b) when sent by electronic mail during a Business Day (or on the next Business Day if sent after the close of normal business hours or on any non-Business Day); (c) one (1) Business Day after being sent by reputable overnight express courier (charges prepaid); or (d) three (3) Business Days following mailing by certified or registered mail, postage prepaid and return receipt requested.  Unless another address is specified in writing, notices, requests, demands, and communications to the Parties hereto shall be sent to the addresses indicated below:

To the Wind-Down Debtors:

                                  c/o Genesis Global Holdco LLC
175 Greenwich Street, Floor 38
New York, NY 10007
Attn:   A. Derar Islim

To the PA Officer:

                                  Mark Renzi
c/o Berkeley Research Group, LLC
99 High Street
27th Floor
Boston, MA 02110
E-mail: mrenzi@thinkbrg.com

To the Wind-Down Oversight Committee:

                                  Amelia Alvarez; Olivier Cohen; Teddy Gorisse;
Vadim Khramov; Mark Nuvelstijn; Khing Oei;
Refael Sofair

To the Litigation Oversight Committee:

                                  Vijay Boyapati; Olivier Cohen; Teddy Gorisse;
Vadim Khramov; Ari Litan; Mark Nuvelstijn;
Refael Sofair

2.    <u>Survivability</u>.  <u>Sections I.6, I.7, and II.3</u> and all other provisions necessary to the enforcement of the intent of this Agreement shall survive the termination or expiration of this Agreement.

3.    <u>Inconsistencies</u>.  In the event of an inconsistency between this Agreement and the Plan, the terms of this Agreement shall control in all respects.  In the event of an inconsistency between the Confirmation Order, the Plan, and this Agreement, the Confirmation Order shall control.

4.      Severability.  If any portion of this Agreement shall be determined to be invalid or unenforceable, the remainder of this Agreement shall be valid and enforceable to the maximum extent provided by applicable law.

5.      Assignment.    Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be assigned by any of the Parties (whether by operation of law or otherwise) without the prior written consent of the PA Officer and the Wind-Down Oversight Committee.

6.      Governing Law.    This Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to choice of law or principles thereof.  In any court proceeding arising out of or related to this Agreement, each of the Parties hereby waives any right to trial by jury.  Each of the Parties hereby submits to the exclusive jurisdiction of the Bankruptcy Court for purposes of any proceeding arising from or related to this Agreement, and each of the Parties agrees not to commence any action, suit, or proceeding relating thereto except in the Bankruptcy Court.

7.      Entire Agreement.  This Agreement and the Plan Documents encompass all of the terms and conditions between the Wind-Down Debtors and the PA Officer concerning the subject matter hereof.  This Agreement may not be amended or modified in any respect except in a writing signed by the PA Officer with the consent of the Wind-Down Oversight Committee.

8.      Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same Agreement.  A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission (.pdf) shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

9.      Amendments.  This Agreement may be amended by written agreement of the PA Officer with the consent of the Wind-Down Oversight Committee; *provided*, *however*, that such amendment may not be inconsistent with the Plan or Confirmation Order.

[SIGNATURE PAGES FOLLOW]

12

THE DEBTORS:

GENESIS GLOBAL HOLDCO LLC, ON BEHALF
OF ITSELF AND ITS AFFILIATED DEBTORS


By:_____
Name: A. Derar Islim
Title: Interim Chief Executive Officer

THE PA OFFICER:

MARK RENZI
BERKELEY RESEARCH GROUP, LLC


By:_____
Name: Mark Renzi

## **EXHIBIT J**

**Revised Litigation Oversight Committee Bylaws**

**BY-LAWS OF LITIGATION OVERSIGHT COMMITTEE
OF GENESIS GLOBAL HOLDCO, LLC, *ET AL.*,
CHAPTER 11 CASE NO. 23-10063 (SHL)**

### 1.    PURPOSE AND MEMBERSHIP

**1.1.    Designation of Committee.** The Litigation Oversight Committee (the "Committee") is established pursuant to that certain order of the United States Bankruptcy Court for the Southern District of New York on [●], 2024 [Docket No. [●]] (together with the exhibits thereto, the "Confirmation Order"), entered in the Chapter 11 case of Genesis Global Holdco, LLC and its affiliated debtor subsidiaries (the "Debtors").[1] The Committee is formed for the sole purpose of performing its obligations under the Plan and Confirmation Order, including, without limitation, to oversee the commencement, management, settlement, compromise or other disposition of the Retained Causes of Action in accordance with the Plan and the Plan Administration Agreement, and to manage the Litigation Reserve.

**1.2.    Members.** The Committee initially shall be comprised of seven individuals (each such individual, a "Member"). Each Member shall have one vote. The Members shall consist of the following seats (each, a "Seat"): (a) two Litigation Oversight BTC Members; (b) one Litigation Oversight ETH Member; (c) two Litigation Oversight Fiat-or-Stablecoin Members; (d) the Litigation Oversight Gemini Lender Member; and (e) the Litigation Oversight Crossover Member; *provided, however,* that, upon the occurrence of a USD Recovery Event pursuant to the Plan, the Seats for the two Litigation Oversight Fiat-or-Stablecoin Members shall be eliminated; *provided further, however,* that, upon the occurrence of a Gemini Recovery Event, the Seat for the Litigation Oversight Gemini Lender Member shall be eliminated. If at any time, the Committee Seats shall be an even number, one additional Seat shall be created by vote of at least four of the remaining Members, which Seat shall be designated as any Seat other than a Litigation Oversight Gemini Member according to such vote. In the event that the Committee is not able to designate a new Seat within in 5 business days of there being an even number of Seats, the PA Officer shall

---

[1]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the *Joint Chapter 11 Plan of Genesis Global Holdco, LLC and Its Debtor Affiliates* [Docket No. [●]] (together with the exhibits thereto and as may be amended, modified, or supplemented from time to time, the "Plan").

have the authority to seek an order from the Bankruptcy Court designating such new Seat. Any vacancy created by the designation of a new Seat shall be filled in accordance with Section 1.6 and the qualifications in the Plan. The initial Members mutually appointed by the official committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases by the U.S. Trustee on February 3, 2023, as described in further detail in the Notice of Appointment of Official Committee of Unsecured Creditors [Docket No. 53] (the "UCC"), and the PSA Majority Creditors (as represented by the Ad Hoc Group Counsel) (together with the UCC, the "Appointing Parties") are set forth in Exhibit B to the Plan Supplement [ECF No. 1117].

1.3.    **Representatives.** Any Member may designate an alternate representative to attend Committee meetings and to otherwise carry out the functions of such Member; *provided, however,* that (a) such alternate representative is approved by the majority of the other Members (excluding the Member seeking to designate such alternate representative) as the alternate representative for such Member, (b) such designation is made to the Chair (as defined below) and the PA Officer (as defined in the Plan) in writing prior to the relevant meeting, and (c) such alternate representative has agreed to abide by these By-laws and any applicable provisions of the Plan. Any alternate representative shall be deemed a Member for all purposes of the meetings in the absence of the applicable Member. Alternate representatives designated in accordance with this Section 1.3 shall be permitted to attend meetings of the Committee at the direction of its designating Member; *provided, however,* that at any meeting at which the designating Member is also present, such alternate representative shall only be a non-participating observer.

1.4.    **Resignation.** A Member only may resign from the Committee by giving written notice of such resignation to the Chair. Such resignation shall be effective immediately upon the giving of such written notice to the Chair. The Chair may resign as a Member of the Committee at any time upon the giving of written notice to each other Member and the PA Officer, which notice shall designate an interim Chair to serve until election of a replacement Chair pursuant to Section 2.4. If at any time a Member (a) sells, transfers, or assigns all of its rights to or interest in such Member's claim against any of the Debtors and no longer holds such claim or

- 2 -

(b) receives all distributions on account of its Allowed General Unsecured Claim that are to be made under the Plan, then such Member shall, as soon as practicable but in no event more than three Business Days thereafter, (i) give written notice to the PA Officer and to the remaining Members of the Committee, and (ii) be deemed to have resigned, effective immediately, from the Committee.

 1.5.    **Removal.** The Committee shall have the authority (pursuant to the determination described in the immediately following sentence) to direct the PA Officer to seek an order from the Bankruptcy Court to remove a Member for cause. Any such determination shall be made by at least two thirds of the then-existing Seats on the Committee (excluding the Seat for the Member that is the subject of such determination).

 1.6.    **Vacancy.** Vacancies on the Committee shall be filled by the unanimous consent of the remaining Member(s) of the Committee, which consent shall not be unreasonably withheld, conditioned or delayed, provided that any appointment of a replacement Member shall maintain the relative composition of Litigation Oversight BTC Members, Litigation Oversight ETH Member, Litigation Oversight Fiat-or-Stablecoin Members, Litigation Oversight Crossover Member, and Litigation Oversight Gemini Lender Member in existence at the time of such vacancy as set forth in Section 1.2. If a vacancy on the Committee is not filled within five Business Days of such vacancy occurring, the PA Officer shall have the authority to seek an order from the Bankruptcy Court approving the appointment of a Person selected by a majority of the Members (or if no Person has the approval of a majority of the Members, the Person with the support from the most number of Members), with such Person's prior written consent, to the Committee to fill such vacancy; *provided, however,* that any appointment of a replacement Member shall maintain the relative composition of Litigation Oversight BTC Members, Litigation Oversight ETH Member, Litigation Oversight Fiat-or-Stablecoin Members, Litigation Oversight Crossover Member, and Litigation Gemini Lender Member in existence at the time of such vacancy as set forth in Section 1.2. Each Person who thereafter becomes a Member (a "New Member") shall be deemed automatically to have ratified and accepted these By-laws in all respects, without necessity

of further action by such New Member, the Committee or any other person, and all references to Members herein shall apply in the same manner and form to such New Member.

1.7.    **Advisors to the Wind-Down Debtors.**    As provided in the Plan Administration Agreement, the consent of the Litigation Oversight Committee, by majority vote, shall be required for the PA Officer's (a) retention of legal counsel to the Wind-Down Debtors to evaluate, investigate, and/or prosecute the Retained Causes of Action (the "Wind-Down Debtors Litigation Counsel"), and (b) retention of other professionals, including accountants, financial advisors, investment bankers, co-counsel or other professionals for the Wind-Down Debtors (the "Other Wind-Down Debtors Advisors").  The PA Officer shall be required obtain the consent of the Litigation Oversight Committee, by majority vote, with respect to the material terms of engagement prior to entering into an engagement agreement with any Wind-Down Debtors Litigation Counsel and Other Wind-Down Debtors Advisor.

1.8.    **Counsel.**    The Committee may authorize the PA Officer to retain counsel for the Committee, which counsel may be the Wind-Down Debtors Litigation Counsel (in either case, the "Committee Counsel"). The Committee Counsel shall be authorized to act on the advice and instructions of a majority of the Members, subject to Section 7. Committee Counsel will not consent to or evidence the Committee's position on any matter except: (a) with the express authorization of the Committee; or (b) as emergency circumstances may require, in which event Committee Counsel will first attempt to contact the Committee. In the absence of that contact, Committee Counsel shall exercise its discretion, making it clear, where appropriate, that circumstances have not yet permitted contact with the Committee. In all matters where Committee Counsel is acting on behalf of the Committee, Committee Counsel shall, as permitted, provide a complete report of all such actions or activities to the Chair and explain the same to the Committee. Any material distributed by Committee Counsel, including minutes, is distributed in its capacity as counsel and is part of its continuing attorney-client privilege and work product privilege with its client, the Committee.

**1.9.    Committee Advisors.** The Committee may authorize the PA Officer to retain other advisors for the Committee, which advisors may be the Other Wind-Down Debtors Advisors (in either case, the "Other Professionals", and together with Committee Counsel, the "Committee Professionals"). To the extent the Committee Professionals generate reports for discussion at Committee meetings (a) the Committee Professionals shall issue, whenever possible, the reports to Committee Counsel, and (b) Committee Counsel shall distribute such reports to the Committee in advance of the Committee meeting. Any such distributed material is part of the continuing attorney-client privilege and work product privilege between the Committee and Committee Counsel.

**1.10.    Ex-Officio Members.** Upon the occurrence of a USD Recovery Event or Gemini Recovery Event, respectively, the Committee may (by majority vote) appoint any Wind-Down Oversight Fiat-or-Stablecoin Member or Wind-Down Oversight Gemini Lender Member who would otherwise have their Seat eliminated, to serve as an ex-officio member (an "Ex-Officio Member") of the Committee, which, for the avoidance of doubt, shall not be considered a Seat. Any such Ex-Officio Member shall not be considered in constituting a Quorum, and shall have no voting rights with respect to any Committee matter. Any such Ex-Officio Member shall be required to agree to abide by these By-laws and all applicable provisions of the Plan as if it were a Member of the Committee. For the avoidance of doubt, Ex-Officio Members shall be entitled to receive Confidential Information (as defined below) as if such Ex-Officio Member were a Member of the Committee; provided, however, that such Ex-Officio Members shall be at all times subject to the obligations of Articles 9, 10, and 16 hereof, and Sections 5.9 and 7.2 hereof.

**2.    COMMITTEE CHAIR**

**2.1.    Chair.** There shall be one Committee chair (the "Chair"), and there may be a secretary of the Committee (the "Secretary"), each of whom shall be elected by a majority vote of the Members, and each of whom shall serve until the earlier of its resignation, its removal or dissolution of the Committee at the closing of the Chapter 11 Cases.

- 5 -

**2.2.** **Authority.** The Chair shall have the authority to sign documents on behalf of the Committee as appropriate in order to implement decisions of the Committee. For the avoidance of doubt, the Chair shall have the right to vote on motions, propose motions, and participate as a full voting Member notwithstanding his or her position as Chair (except with respect to any vote for his or her removal as set forth in Section 2.3).

**2.3.** **Removal.** The Chair may be removed from his or her position as Chair, with or without cause, by affirmative vote of a majority of the Members (excluding the Chair). Upon removal of the Chair, the Committee promptly shall elect a successor in accordance with Section 2.4.

**2.4.** **Resignation; Successor Chair.** The Chair may voluntarily resign his or her position as Chair effective immediately upon the Chair providing notice to each of the Members and the PA Officer. If the Chair voluntarily resigns his or her position as Chair or is removed from his or her position as Chair as provided in Section 2.3, then the Committee promptly shall elect a successor by affirmative vote of a majority of the Members (including the former Chair).

**3.** **DUTIES OF THE SECRETARY**

**3.1.** **Secretary.** The Secretary, who, for the avoidance of doubt, may be the PA Officer, shall issue all authorized notices for, and shall keep minutes of, all meetings of the Committee. He or she shall have charge of the internal records and shall perform such other duties as the Committee may from time to time prescribe.

**4.** **QUORUM**

**4.1.** **Quorum.** A quorum shall consist of a majority of the Members (or alternate representatives designated in accordance with Section 1.3) present at a duly noticed meeting of the Committee ("Quorum").

**4.2.** **Proxy.** Proxies in respect of specific votes shall be permitted, provided that such proxy vote shall be confirmed in writing (including by electronic mail) to each other Member before such meeting. Voting by a designated alternate shall not be deemed to be voting by proxy.

5.      **MEETINGS**

5.1.      **Meetings of the Committee.** Regular meetings may be held from time to time on dates and at locations designated by the Chair or the Secretary. Duly noticed meetings may be held without a Quorum present, but no action may be taken at any meeting unless a Quorum is present at the beginning of the meeting and compliance with the following notice procedures have occurred. The Chair, or such other Member as the Chair may designate, shall preside at all meetings of the Committee.

5.2.      **Notice.** Announcements of the date and place of the next succeeding regular meeting shall be made by the Chair or the Secretary at a duly scheduled meeting or on not less than three days' notice of such meeting.

5.3.      **Emergency and Special Meetings.** In the event of an emergency, as reasonably determined by the Chair, the PA Officer, and/or Committee Counsel special meetings may be called upon reasonable prior written notice (including electronic mail) to each Member. In addition, any Member may request a special meeting upon reasonable prior written notice (including electronic mail) to all Members. If a special meeting is requested pursuant to this Section 5, the Chair may call the special meeting on behalf of the requesting Member.

5.4.      **Place of Meetings.** Members may participate in meetings in-person, by telephonic conference call or by virtual meeting, or by a combination thereof, unless the Committee, by majority vote, decides that an in-person only meeting is appropriate.

5.5.      **Who May Attend.** Due to the potentially sensitive, non-public nature of subjects that may be discussed by the Committee, meetings of the Committee shall not be open to persons other than Members (or their designated alternate(s) or designated counsel employed by a Member), the Secretary, the PA Officer and Committee Professionals, provided that non-legal advisors to individual Members may participate only with the approval of the majority vote of the other Members and as otherwise set forth in Sections 10 and 17.3. The Committee, by affirmative vote of a majority of its Members, may for special, limited purposes, permit other persons to attend who shall not be deemed Members under these By-laws.

**5.6.** **Recusal.** The Litigation Oversight Gemini Lender Member shall be recused from all matters pertaining to (a) any Causes of Action or other claims against any Gemini Party or any Gemini Lender, and (b) any Claim asserted by Gemini or any Gemini Lender, including in the Proofs of Claim Filed by Gemini in the Chapter 11 Cases at Claim Nos. 356, 369, 400, 406, 407 and 413.

**5.7.** **Adjournment.** A majority of Members present at a Committee meeting, whether or not constituting a Quorum, may adjourn any meeting to another time. Notice of the time of the adjourned meeting shall be given at least one Business Day before the adjourned meeting to the Members not present at the adjournment.

**5.8.** **Waiver of Notice.** The transactions of any Committee meeting, however called and noticed or wherever held, shall be as valid as though had at a meeting duly held after regular notice if (a) a Quorum is present, and (b) if, either before or after the meeting, each Member who did not receive proper notice and was not present (or if present and did not receive proper notice, actually protested the lack of proper notice to him or her at or prior to the meeting ) either agrees in writing to waive such notice or consents to holding the meeting.

**5.9.** **Committee Discussion and Materials.** Notwithstanding the foregoing, the Committee and its Members (including their respective counsel or advisors approved as set forth in Section 17.3, if any) shall not provide or furnish to third parties the details of the Committee's discussions and deliberations or the contents of any financial statements, reports, or other information prepared for Committee consideration at any meeting (unless such documents are specifically known to be not confidential). The Committee and/or its Members may provide such information to a third party only if consistent with Section 10.

**6.** **AGENDA**

**6.1.** **Meeting Agenda.** To the extent possible, matters shall be presented to the Committee upon written agenda prepared at the direction of the Chair and transmitted to the Members prior to Committee meetings.

- 8 -

**6.2.    Member Items.** Matters as to which any Member requests action by the Committee shall be presented to each Member and its counsel (if any), when feasible, prior to the meeting at which such matters are to be considered.

**6.3.    Minutes.** Minutes shall be recorded in draft form and distributed to all Members as soon as possible. The minutes need not be detailed but shall describe (a) Members and third parties in attendance, (b) items discussed and Committee resolutions, and (c) the result of any vote taken by the Committee. All recorded minutes shall be deemed recorded in draft form until approved by the Committee. Minutes shall be deemed approved by the Committee and deemed final following distribution to the Committee unless comments are received by the Secretary and Committee Counsel within seven Business Days after distribution to the Members, in which event revised minutes reflecting such comments may be distributed and shall be brought up for approval by vote of the Members at the next Committee meeting.

**6.4.    Written Communications.** Written communications to and among Members, their counsel and Committee Professionals, if any, may be made by hand, first-class mail, overnight courier, electronic mail transmission, or text message and instant message via cellular telephone or any other electronic communication platform or service at the then most current address e-mail address or telephone number provided to the Chair or the Secretary. Records of any such written communications shall be deemed sufficient and conclusive evidence of the communication, without the need for follow-up confirmation. It shall be the responsibility of each Member, its counsel or another Committee Professional, if any, to notify the Chair or the Secretary of any change in contact information. It shall be the responsibility of the Chair or the Secretary to provide promptly an updated Committee working group contact list to all Members, their counsel and other Committee Professionals, if any, when any changes are made.

## 7.    ACTION BY COMMITTEE

**7.1.    Action.** Subject to Section 9.1 and except as otherwise expressly provided for herein (including, without limitation, Sections 1.2,  2.3, and 5.6), the Committee may take any action as permitted by these By-laws (including, without limitation, the actions set forth in Section

8), (a) by majority vote of the Members present and entitled to vote at a meeting duly called and scheduled in accordance with <u>Section 5</u> at which a Quorum is present, or (b) by written consent (including via electronic communication) of the majority of all Members; *provided, however,* that any material amendment to these By-laws shall require the unanimous written consent of all Members or the unanimous consent of all Members present at a meeting duly called and scheduled in accordance with <u>Section 5</u> at which a Quorum is present. The Chair or Committee Counsel shall announce a determination as to any vote, which determination shall be deemed the position of the Committee with respect to such matter. The Committee may conduct a new vote on a matter previously considered by the Committee or revisit any prior vote if the PA Officer, Committee Counsel, or a majority of the Members believe that doing so is consistent with the Committee's fiduciary duties.

**7.2.     <u>Outside Communication.</u>** Unless and until any other person(s) is authorized to do so by the Committee, only the Chair shall speak for the Committee in reporting the Committee's resolutions to the PA Officer and Wind-Down Oversight Committee, or their respective advisors.  No Member shall speak to the press or media regarding Committee matters without first providing at least three Business Days' notice to all Members and the PA Officer.

**8.     <u>COMMITTEE FUNCTIONS</u>**

**8.1.     <u>Duties of the Committee.</u>** The purpose of the Committee is to perform the functions set forth in the Plan and the Plan Administration Agreement, including, among other things, to:  (a) review, and advise the PA Officer with respect to, the strategy and pursuit of Retained Causes of Action, including, but not limited to, the management and direction of counsel and other advisors; (b) approve settlements on account of any Retained Causes of Action; and (c) manage the Litigation Reserve. Each Member agrees and acknowledges that in advising or directing the PA Officer, the Committee shall maintain the same fiduciary responsibilities as the PA Officer, which for the avoidance of doubt includes fiduciary duties to all Holders of Claims that are entitled to receive distributions pursuant to the Plan. The Members shall seek to administer

- 10 -

the Plan and the Plan Administration Agreement and close the Chapter 11 Cases as promptly as possible.

       **8.2.**   **Ministerial Matters**. The Chair, in consultation with the PA Officer, may act on behalf of the Committee on matters that are routine or administrative (and, in each case, are nonmaterial); *provided*, *however*, that no action shall be taken on matters with respect to which any Member has requested full Committee consideration at any meeting of the Committee.

## 9.    **CONFLICTS OF INTEREST**

       **9.1.**   If any matter under consideration by the Committee appears to involve a potential or actual conflict of interest with any Member(s) serving on the Committee, the Member(s) with such potential or actual conflicting interest shall immediately (a) disclose to the Committee the existence of any potential or actual conflict of which he or she has knowledge, and (b) abstain from (i) attending any portion of the discussion of the matter, and (ii) voting on the matter being considered by the Committee. Consistent with the foregoing, any Member(s) having a potential or actual conflict of interest shall not have access to (A) Confidential Information (as defined below), and (B) reports or work product (including draft pleadings) prepared by or at the direction of the Committee Professionals, in each case with respect to the matter in which the potential or actual conflict of interest exists.

       **9.2.**   If determined by the other Members of the Committee to involve a conflict of interest, the conflicted Member may be excluded by majority vote of the Members then present and not subject to such conflict of interest from that portion of the meeting at which such matter is considered. The existence of a conflict of interest with respect to any specific matter shall not disqualify a Member from participating in the Committee on any other matters; *provided, however*, that the Committee may determine that a conflict is so substantial that the Member should be considered conflicted as to all matters until the conflict is resolved. Any Member subject to an alleged conflict of interest shall be provided with a reasonable opportunity to be heard and to

provide other Members with additional information and/or refute any allegations of its alleged conflict of interest prior to any Committee vote regarding such conflicted member's alleged conflict of interest.  Whether a conflict of interest exists as to a particular Member or a group of Members will be determined on an individual basis, and each Member shall have the opportunity to be heard and have the Committee vote in connection with its alleged conflict of interest.

9.3.    Nothing contained in these By-laws shall, subject to this <u>Section 9</u> and <u>Section 10</u>, (a) prevent any Member or any such Member's employer from (i) exercising (or omitting to exercise) or seeking (or omitting to seek) to enforce or protect any of his, her or its rights as an individual creditor or other party-in-interest in any of these cases as it may deem appropriate or (ii) acquiring additional claims against the Debtors or (b) otherwise affect the ability of any Member or such Member's employer to act in his, her or its capacity as an individual creditor or other party-in-interest as he, she or it deems appropriate.

10.    **CONFIDENTIALITY OF INFORMATION**

10.1.    Each Member agrees that it will use, and will ensure its Representatives (defined below) use, Confidential Information solely for the purpose described in <u>Section 8</u>.

10.2.    All information, irrespective of form or medium of communication, including, without limitation:  (a) communications and discussions (including in each meeting of the Committee and minutes thereof) among Members in their capacity as such and communications among Committee Professionals and the Committee, including information regarding specific positions taken by Members; (b) information or documents generated by the Committee or any of the Committee Professionals, or by any Member, or counsel or advisor to any Member for use of the Committee, whether or not based on or containing confidential information of a third party ((a) and (b) shall mean "<u>Confidential Committee Communications</u>"); (c) any documents, oral and written communications, electronic correspondence, all information posted in any electronic data room, in each case obtained by or made available to Members or their Representatives (as defined below) as a result of or in connection with their service on the Committee that is provided on a confidential basis; and (d) any information or material received

from the PA Officer, the Wind-Down Debtors or their Representatives, or any other party on a confidential basis that is not available to the public, including, without limitation, information concerning the Debtors' or Wind-Down Debtors' and certain of their affiliates' assets, liabilities, business operations, business practices, business plans, financial projections, financial and business analyses, intellectual property, trade secrets, the investigation conducted by the Special Committee as to certain Retained Causes of Action, any confidential Plan Supplement document, and any other documents prepared by the PA Officer, the Wind-Down Debtors or their affiliates or their Representatives (collectively, with any notes, analyses, reports, models, forecasts, projections, compilations, studies, interpretations, documents, or records to the extent containing, based upon or derived from any such information, in whole or in part, whether generated by the Members, or otherwise (including all summaries thereof or information derived therefrom)) (together with Confidential Committee Information, the "Confidential Information") is confidential and shall not be disclosed or revealed to third parties in any manner whatsoever (including via (i) electronic mail used or maintained by a Member in any personal or professional e-mail account(s), (ii) text messages and instant messages via cellular telephone or any other electronic communication platform or service in any form used, maintained, or created by a Member, or (iii) online posting on a Member's personal or professional social media profiles).

Notwithstanding the foregoing, "Confidential Information" shall not include information that: (A) is available to, or was in the possession of, a Member, on a non-confidential basis independently from the receipt of such information in its capacity as a Member or its capacity, if any, as a member, employee, or employer of an Appointing Party; (B) is available to the public other than as a result of a breach of any of the provisions of this Section 10; (C) becomes independently available to a Member by a means other than service on or in connection with its membership on the Committee so long as the Member's receipt of such information is not, to the knowledge of such Member, governed by any other confidentiality provisions or agreements; or (D) was or is independently developed by such Member without use of, or reference to, any Confidential Information. The use and disclosure (or non-disclosure) of Confidential Information

received by a Member from an Appointing Party or its Representatives outside of its capacity as a Member and pursuant to a separate agreement between such Member and the Appointing Party that is unrelated to such Member's service on the Committee shall be governed by the terms of such separate agreement and not subject to the confidentiality provisions hereof.

**10.3.** Notwithstanding the foregoing provisions of this Section 10, a Member may share any Confidential Information: (a) with other Members; (b) with the PA Officer; (c) with Committee Professionals and such Member's or such Member's employer's professional advisors, attorneys, financial consultants, auditors, fund administrators, regulators and employees (including employees of affiliates of such Member or such Member's employer), directors, officers or affiliates (collectively, "Representatives") who reasonably require such information to discharge the responsibilities of such Member as a Member of the Committee or as part of his or her job responsibilities with such Member's employer; *provided, however,* that with respect to disclosure to any non-legal outside advisors or auditors of a Member, such Representatives agree in writing to be, and are, bound by these confidentiality provisions and this obligation of confidentiality; (d) when required by law, rule, regulation or court (collectively, "Law"), only as to such portion of the Confidential Information as is required to be disclosed and is determined to be required to be disclosed by the disclosing Member, in consultation with counsel and upon notice to the Committee to the extent such notice is permitted by Law; (e) where requested by any regulatory authority or internal or outside auditor; (f) with respect to Confidential Information that is not Confidential Committee Information, with the Wind-Down Oversight Committee; (g) with a third party, provided that a confidentiality agreement reasonably acceptable to the Committee and, if related to Confidential Information provided to the Committee by the PA Officer, the PA Officer, is duly executed with such third party (it being agreed and understood that any such confidentiality agreement shall contain third-party beneficiary rights for the PA Officer if any Confidential Information of the Wind-Down Debtors and/or the PA Officer will be provided thereunder); and (h) in the context of court proceedings, after such Member has sought an order providing that such

information shall be filed under seal and has given notice of the filing of such motion to the Committee.

**10.4.**    Upon the resignation or removal of a Member, such Member shall promptly return to the Committee or certify in writing the destruction of written Confidential Information (including copies thereof) that was received by the Member in his or her capacity as a Member and in the course of his or her tenure as a Member of the Committee, or affirmatively state in writing (including electronic mail) that a good faith effort was made by the Member to destroy all such material. Notwithstanding the foregoing, a Member shall not be required to return or destroy Confidential Information that it deems appropriate to retain for the purposes of compliance with applicable Law, professional obligations or established document retention policies, provided that all such retained Confidential Information shall remain subject to the confidentiality provisions herein.

**10.5.**    Each Member hereby acknowledges that it may be receiving material, non-public information regarding the Company and certain of its subsidiaries and Affiliates, and that the trading of securities while in possession of such information is subject to the Member's fiduciary duties and may be restricted in accordance with federal and state securities laws.

**10.6.**    Notwithstanding the resignation or removal of a Member, such Member shall continue to be bound by this Section 10.

**10.7.**    If any Member or its Representative(s) violates the provisions of this Section 10, the Committee, by majority vote (or subject to order of the Bankruptcy Court), or the PA Officer, in accordance with the terms and provisions of these By-laws and the Plan Administration Agreement, may remove such Member from Committee membership. Pending such formal removal, the Member shall be excused from all Committee meetings. With regard to non-public information or materials the Committee receives that, thereafter, do not remain non-public or confidential, except through disclosure by a Member in violation of this Section 10, Members may use such information or materials without ascertaining if the chosen use is

- 15 -

consistent with a majority decision or intent of the Committee. Members shall not disclose the internal voting or deliberative processes of the Committee.

**10.8.** The obligations under this Section 10 shall cease to be of any further force and effect on the date that is one year from the date when both the Committee and the Wind-Down Oversight Committee have been discharged in accordance with their respective bylaws and the Plan.

## 11. EXPENSES

**11.1. Expenses and Fees.** Each Member shall be responsible for the payment of any expenses incurred by such Member in connection with Committee business; *provided, however,* that, after submitting an itemized list of reimbursable expenses to the PA Officer, each Member shall be reimbursed by the Wind-Down Debtors from the Wind-Down Reserve, subject to the Wind-Down Budget, for reasonable expenses incurred by him or her in connection with performing his or her responsibilities as a Member (including for each Member, one alternate representative designated in accordance with Section 1.3). For the avoidance of doubt, the Committee shall not pay any fees for professional advisors to any individual Member or any Appointing Party.

## 12. DISCHARGE

**12.1.** The Committee shall be discharged and dissolved, and the service of the Members completed when all Retained Causes of Action have been fully litigated, monetized or settled, or the Committee determines that it has fully performed its duties under the Plan and Section 8. In such instance, the Committee shall have no further liabilities or responsibilities, and the Committee shall be terminated.

## 13. COMMON INTEREST PRIVILEGE

**13.1.** Consistent with their fiduciary duties, the Committee agrees to work with the Wind-Down Debtors, the PA Officer, and the Wind-Down Oversight Committee to satisfy the PA Officer's and the Committee's duties under the Plan and the Plan Administration Agreement and to maximize the return of value in-kind to the creditors of the Debtors and their estates.

- 16 -

**13.2.**  Based on the duties described here, the Members understand and acknowledge that the Committee (on the one hand) and the PA Officer, Wind-Down Debtors, or Wind-Down Oversight Committee (on the other hand) have certain common, mutual and interrelated legal rights and obligations in connection with the Chapter 11 Cases, the transactions provided for under the Plan, the Retained Causes of Action, and the wind-down of the Company's entities. In furtherance of those common and interrelated legal rights and obligations, the Committee needs and wishes to ensure that it is free to share and exchange certain information with the Wind-Down Debtors, the PA Officer or the Wind-Down Oversight Committee and their respective Representatives that may be necessary and appropriate without waiving the protections of any applicable privilege, doctrine, immunity or protection from discovery or disclosure.

## 14.    LIABILITY OF COMMITTEE

**14.1.    Committee Liability.** The Committee, the Members, the PA Officer, the Appointing Parties and their respective professionals and agents shall not in any way be liable for any acts or omissions to act with respect to any of the matters contemplated by these By-laws except by reason of their gross negligence, willful misconduct, fraud or a criminal acts in the performance of their duties under the Plan or any act or omission that is otherwise inconsistent with the Plan or these By-laws.

**14.2.    Indemnification.** The Wind-Down Debtors shall indemnify the Committee, the Members, the PA Officer, the Appointing Parties and their respective alternate representatives, professionals and agents, and hold them harmless, from and against any and all liabilities, expense, claims, damages and losses incurred by any of them as a direct result of actions taken or omissions to act by them in such capacity or otherwise related to the Chapter 11 Cases or the Plan except by reason of their gross negligence, willful misconduct, fraud or criminal acts. Any dispute regarding such indemnification under this Section 14 shall be resolved by the Bankruptcy Court, which shall retain jurisdiction over matters relating to the indemnification provided under this Section 14.

**15.    RULES OF PROCEDURE**

**15.1.    Procedure.** The Chair shall preside over each Committee meeting in a manner that promotes fairness, a full opportunity for discussion and analysis of all business coming before the Committee, and a full opportunity for each Member to express its view. Parliamentary procedures and any formal "Rules of Order" shall not be followed.

**15.2.    Enforcement.** Each Appointing Party shall have the right of enforcement of the provisions hereof in the Bankruptcy Court until the Effective Date.

**16.    INFORMATION**

**16.1.    Privileges and Obligation to Respond to Ongoing Investigations.**

**(a)** Upon the Effective Date, as set forth in the Plan, all attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Wind-Down Debtors (any such privilege or protection, a "Privilege"), including, but not limited to, Privileges transferred to the Wind-Down Debtors from the Debtors, shall vest in the PA Officer solely in his or her capacity as such (and any other Person whom the PA Officer, with the consent of the Committee, may designate).

**(b)** Pursuant to Federal Rule of Evidence 502(d) (to the extent Rule 502(d) is relevant, notwithstanding the fact that the Wind-Down Debtors and the PA Officer are joint holders of certain attorney-client privileges, work product protections or other immunities or protections from disclosure), no Privileges shall be waived by disclosure between or among any of the Wind-Down Debtors, the PA Officer, the Committee Professionals, the Wind-Down Oversight Committee and/or the Committee of information that is subject to any Privilege or any Privilege jointly held by the Wind-Down Debtors and the PA Officer. The Committee may request, and the PA Officer shall provide, any information that is confidential or subject to Privilege and that is reasonably requested in connection with the Committee's performance of its duties set forth in Section 8, including, without limitation, any information related to the Retained Causes of Action or the identity of any individual on the list of Released Genesis Personnel (as defined in Exhibit F of the Plan Supplement [Docket No. 1117]). The PA Officer shall be authorized and permitted to

- 18 -

share such information (subject to the obligation of confidentiality set forth in <u>Section 10</u> and the common interest privilege set forth in <u>Section 13</u>) without waiving any applicable Privilege or violating any duty of confidentiality.

**(c)** If the Committee or any Member receives a request from a third party to disclose information that is subject to any Privilege (including Confidential Committee Information), the party or parties who receives such request will (A) pursue all reasonable steps to maintain the applicable Privilege, including, if necessary, by seeking a protective order against and/or otherwise objecting to the production of such material, (B) promptly notify the PA Officer or the Committee, as the case may be, (C) allow the PA Officer or the Committee, as the case may be, a reasonable opportunity under the circumstances to protect its Privileges and interests at such party's sole expense, including by seeking a protective order against and/or otherwise objecting to the production of such material, and (D) unless required by law, not disclose the materials in question unless and until any objection raised by the PA Officer or the Committee is resolved in favor of disclosure. For the avoidance of doubt, nothing herein is intended to limit the PA Officer's obligations to seek, and be granted, consent prior to a voluntary waiver of any Privilege held by the Wind-Down Debtors.

**16.2.    <u>Reliance on Debtors for Information.</u>** It is the responsibility of the Wind-Down Debtors, pursuant to, among other things, their cooperation obligations established in the Plan, to exercise commercially reasonable efforts to provide to the Committee reasonably complete and accurate information regarding the Retained Causes of Action and to provide periodic updates regarding such information to the extent applicable. The PA Officer, Members and Committee Professionals shall be entitled to rely on such information supplied by the Wind-Down Debtors and their agents concerning the Retained Causes of Action, and shall not be held liable to any party for any incompleteness or inaccuracy of such information.

17.    **OTHER**

17.1.   **Amendment.** These By-laws shall become effective upon the Effective Date of the Plan, and may only be amended, waived or repealed, in writing, by the unanimous consent of all Members.

17.2.   **Action by Members in Their Individual Capacity.** Nothing contained in these By-laws (subject to confidentiality and disclosure related restrictions contained in the By-laws) shall prevent any Member from exercising his, her or its rights as a creditor or party in interest in the Debtors' cases or from taking any action in his, her or its individual capacity as it deems appropriate. Individual Members are permitted to engage independent legal counsel, who shall be deemed a Representative of such Member and be bound by Section 10.   Individual Members also may retain their own financial advisor professionals, provided that disclosure of Confidential Information to such advisors and participation of any non-legal advisor to a Member in Committee meetings requires (i) such advisor to agree to be bound by the terms of Section 10 and (ii) the approval of a majority vote of the other Members.

17.3.   **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

17.4.   **Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over these By-laws to the fullest extent permitted.

[SIGNATURE PAGE FOLLOWS]

SIGNATURE PAGE FOR BY-LAWS OF THE LITIGATION OVERSIGHT COMMITTEE OF GENESIS GLOBAL HOLDCO, LLC, ET AL., CHAPTER 11 CASE NO. 23-10063 (SHL)

Approved by the undersigned initial Members as of [●], 2024:

**Initial Members**

By: _____
     **Name:**
     **Title:**

By: _____
     **Name:**
     **Title:**

By: _____
     **Name:**
     **Title:**

By: _____
     **Name:**
     **Title:**

By: _____
     **Name:**
     **Title:**

By: _____
     **Name:**
     **Title:**

By: _____
     **Name:**
     **Title:**

# EXHIBIT J-1

**(Blackline) Revised Litigation Oversight Committee Bylaws**

BY-LAWS OF LITIGATION OVERSIGHT COMMITTEE
OF GENESIS GLOBAL HOLDCO, LLC, *ET AL.*,
CHAPTER 11 CASE NO. 23-10063 (SHL)

## 1.    PURPOSE AND MEMBERSHIP

**1.1.    Designation of Committee.** The Litigation Oversight Committee (the "Committee") is established pursuant to that certain order of the United States Bankruptcy Court for the Southern District of New York on [●], 2024 [Docket No. [●]] (together with the exhibits thereto, the "Confirmation Order"), entered in the Chapter 11 case of Genesis Global Holdco, LLC and its affiliated debtor subsidiaries (the "Debtors").[1] The Committee is formed for the sole purpose of performing its obligations under the Plan and Confirmation Order, including, without limitation, to oversee the commencement, management, settlement, compromise or other disposition of the Retained Causes of Action in accordance with the Plan and the Plan Administration Agreement, and to manage the Litigation Reserve.

**1.2.    Members.** The Committee initially shall be comprised of seven individuals (each such individual, a "Member"). Each Member shall have one vote. The Members shall consist of the following seats (each, a "Seat"): (a) two Litigation Oversight BTC Members; (b) one Litigation Oversight ETH Member; (c) two Litigation Oversight Fiat-or-Stablecoin Members; (d) the Litigation Oversight Gemini Lender Member; and (e) the Litigation Oversight Crossover Member; *provided, however,* that, upon the occurrence of a USD Recovery Event pursuant to  the Plan, the Seats for the two Litigation Oversight Fiat-or-Stablecoin Members shall be eliminated; *provided further, however,* that, upon the occurrence of a Gemini ~~Earn~~ Recovery Event, the Seat for the Litigation Oversight Gemini Lender Member shall be eliminated. If at any time, the Committee Seats shall be an even number, one additional Seat shall be created by vote of at least four of the remaining Members, which Seat shall be ~~filled by~~ designated as any Seat other than a Litigation Oversight Gemini

---

[1]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the *Joint Chapter 11 Plan of Genesis Global Holdco, LLC and Its Debtor Affiliates* [Docket No. [●]] (together with the exhibits thereto and as may be amended, modified, or supplemented from time to time, the "Plan").

Member according to such vote, and a new Member shall be appointed to occupy such Seat.  In the event that the Committee is not able to designate a new Seat within in 5 business days of there being an even number of Seats, the PA Officer shall have the authority to seek an order from the Bankruptcy Court designating such new Seat. Any vacancy created by the designation of a new Seat shall be filled in accordance with Section 1.6 and the qualifications in the Plan. The initial Members mutually appointed by the official committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases by the U.S. Trustee on February 3, 2023, as described in further detail in the Notice of Appointment of Official Committee of Unsecured Creditors [Docket No. 53] (the "UCC"), and the PSA Majority Creditors (as represented by the Ad Hoc Group Counsel) (together with the UCC, the "Appointing Parties") are set forth in Exhibit B to the Plan Supplement [ECF No. 1117].

        1.3.   **Representatives.** Any Member may designate an alternate representative to attend Committee meetings and to otherwise carry out the functions of such Member; *provided, however,* that (a) such alternate representative is approved by the majority of the other Members (excluding the Member seeking to designate such alternate representative) as the alternate representative for such Member, (b) such designation is made to the Chair (as defined below) and the PA Officer (as defined in the Plan) in writing prior to the relevant meeting, and (c) such alternate representative has agreed to abide by these By-laws and any applicable provisions of the Plan. Any alternate representative shall be deemed a Member for all purposes of the meetings in the absence of the applicable Member. Alternate representatives designated in accordance with this Section 1.3 shall be permitted to attend meetings of the Committee at the direction of its designating Member; *provided, however,* that at any meeting at which the designating Member is also present, such alternate representative shall only be a non-participating observer.

        1.4.   **Resignation.** A Member only may resign from the Committee by giving written notice of such resignation to the Chair. Such resignation shall be effective immediately upon the giving of such written notice to the Chair. The Chair may resign as a Member of the

Committee at any time upon the giving of written notice to each other Member and the PA Officer, which notice shall designate an interim Chair to serve until election of a replacement Chair pursuant to Section 2.4.  If at any time a Member (a) sells, transfers, or assigns all of its rights to or interest in such Member's claim against any of the Debtors and no longer holds such claim or (b) receives all distributions on account of its Allowed General Unsecured Claim that are to be made under the Plan, then such Member shall, as soon as practicable but in no event more than three Business Days thereafter, (i) give written notice to the PA Officer and to the remaining Members of the Committee, and (ii) be deemed to have resigned, effective immediately, from the Committee.

1.5.    **Removal.** The Committee shall have the authority (pursuant to the determination described in the immediately following sentence) to direct the PA Officer to seek an order from the Bankruptcy Court to remove a Member for cause. Any such determination shall be made by at least two thirds of the then-existing Seats on the Committee (excluding the Seat for the Member that is the subject of such determination).

1.6.    **Vacancy.** Vacancies on the Committee shall be filled by the unanimous consent of the remaining Member(s) of the Committee, which consent shall not be unreasonably withheld, conditioned or delayed, provided that any appointment of a replacement Member shall maintain the relative composition of Litigation Oversight BTC Members, Litigation Oversight ETH Member, Litigation Oversight Fiat-or-Stablecoin Members, Litigation Oversight Crossover Member, and Litigation Oversight Gemini Lender Member in existence at the time of such vacancy as set forth in Section 1.2. If a vacancy on the Committee is not filled within five Business Days of such vacancy occurring, the PA Officer shall have the authority to seek an order from the Bankruptcy Court approving the appointment of a Person selected by a majority of the Members (or if no Person has the approval of a majority of the Members, the Person with the support from the most number of Members), with such Person's prior written consent, to the Committee to fill such vacancy; *provided, however,* that any appointment of a replacement Member shall maintain the relative composition of Litigation Oversight BTC Members,

- 3 -

Litigation Oversight ETH Member, Litigation Oversight Fiat-or-Stablecoin Members, Litigation Oversight Crossover Member, and Litigation Gemini Lender Member in existence at the time of such vacancy as set forth in <u>Section 1.2</u>. Each Person who thereafter becomes a Member (a "<u>New Member</u>") shall be deemed automatically to have ratified and accepted these By-laws in all respects, without necessity of further action by such New Member, the Committee or any other person, and all references to Members herein shall apply in the same manner and form to such New Member.

1.7. **<u>Advisors to the Wind-Down Debtors.</u>** As provided in the Plan Administration Agreement, the consent of the Litigation Oversight Committee, by majority vote, shall be required for the PA Officer's <u>(a)</u> retention of legal counsel to the Wind-Down Debtors to evaluate, investigate, and/or prosecute the Retained Causes of Action (the "<u>Wind-Down Debtors Litigation Counsel</u>"). As provided in the Plan Administration Agreement, the PA Officer is required to consult with the Litigation Oversight Committee with respect to his or her<u>, and (b)</u> retention of other professionals, including accountants, financial advisors, investment bankers, co-counsel or other professionals for the Wind-Down Debtors (the "<u>Other Wind-Down Debtors Advisors</u>"). <u>The PA Officer shall be required obtain the consent of the Litigation Oversight Committee, by majority vote, with respect to the material terms of engagement prior to entering into an engagement agreement with any Wind-Down Debtors Litigation Counsel and Other Wind-Down Debtors Advisor.</u>

1.8. **<u>Counsel.</u>** The Committee may authorize the PA Officer to retain counsel for the Committee, which counsel may be the Wind-Down Debtors Litigation Counsel (in either case, the "<u>Committee Counsel</u>"). The Committee Counsel shall be authorized to act on the advice and instructions of a majority of the Members, subject to <u>Section 7</u>. Committee Counsel will not consent to or evidence the Committee's position on any matter except: (a) with the express authorization of the Committee; or (b) as emergency circumstances may require, in which event Committee Counsel will first attempt to contact the Committee. In the absence of that contact, Committee Counsel shall exercise its discretion, making it clear, where appropriate,

that circumstances have not yet permitted contact with the Committee. In all matters where Committee Counsel is acting on behalf of the Committee, Committee Counsel shall, as permitted, provide a complete report of all such actions or activities to the Chair and explain the same to the Committee. Any material distributed by Committee Counsel, including minutes, is distributed in its capacity as counsel and is part of its continuing attorney-client privilege and work product privilege with its client, the Committee.

1.9.    **Committee Advisors.** The Committee may authorize the PA Officer to retain other advisors for the Committee, which advisors may be the Other Wind-Down Debtors Advisors (in either case, the "Other Professionals", and together with Committee Counsel, the "Committee Professionals"). To the extent the Committee Professionals generate reports for discussion at Committee meetings (a) the Committee Professionals shall issue, whenever possible, the reports to Committee Counsel, and (b) Committee Counsel shall distribute such reports to the Committee in advance of the Committee meeting. Any such distributed material is part of the continuing attorney-client privilege and work product privilege between the Committee and Committee Counsel.

1.10.    **Ex-Officio Members.** Upon the occurrence of a USD Recovery Event or Gemini Recovery Event, respectively, the Committee may (by majority vote) appoint any Wind-Down Oversight Fiat-or-Stablecoin Member or Wind-Down Oversight Gemini Lender Member who would otherwise have their Seat eliminated, to serve as an ex-officio member (an "Ex-Officio Member") of the Committee, which, for the avoidance of doubt, shall not be considered a Seat.  Any such Ex-Officio Member shall not be considered in constituting a Quorum, and shall have no voting rights with respect to any Committee matter.  Any such Ex-Officio Member shall be required to agree to abide by these By-laws and all applicable provisions of the Plan as if it were a Member of the Committee.  For the avoidance of doubt, Ex-Officio Members shall be entitled to receive Confidential Information (as defined below) as if such Ex-Officio Member were a Member of the Committee; provided, however, that such

Ex-Officio Members shall be at all times subject to the obligations of Articles 9, 10, and 16 hereof, and Sections 5.9 and 7.2 hereof.

**2.      COMMITTEE CHAIR**

> **2.1.   Chair.** There shall be one Committee chair (the "Chair"), and there may be a secretary of the Committee (the "Secretary"), each of whom shall be elected by a majority vote of the Members, and each of whom shall serve until the earlier of its resignation, its removal or dissolution of the Committee at the closing of the Chapter 11 Cases.

> **2.2.   Authority.** The Chair shall have the authority to sign documents on behalf of the Committee as appropriate in order to implement decisions of the Committee. For the avoidance of doubt, the Chair shall have the right to vote on motions, propose motions, and participate as a full voting Member notwithstanding his or her position as Chair (except with respect to any vote for his or her removal as set forth in Section 2.3).

> **2.3.   Removal.** The Chair may be removed from his or her position as Chair, with or without cause, by affirmative vote of a majority of the Members (excluding the Chair). Upon removal of the Chair, the Committee promptly shall elect a successor in accordance with Section 2.4.

> **2.4.   Resignation; Successor Chair.** The Chair may voluntarily resign his or her position as Chair effective immediately upon the Chair providing notice to each of the Members and the PA Officer. If the Chair voluntarily resigns his or her position as Chair or is removed from his or her position as Chair as provided in Section 2.3, then the Committee promptly shall elect a successor by affirmative vote of a majority of the Members (including the former Chair).

**3.      DUTIES OF THE SECRETARY**

> **3.1.   Secretary.** The Secretary, who, for the avoidance of doubt, may be the PA Officer, shall issue all authorized notices for, and shall keep minutes of, all meetings of the Committee. He or she shall have charge of the internal records and shall perform such other duties as the Committee may from time to time prescribe.

4.    **QUORUM**

    **4.1.**    **Quorum.** A quorum shall consist of a majority of the Members (or alternate representatives designated in accordance with Section 1.3) present at a duly noticed meeting of the Committee ("Quorum").

    **4.2.**    **Proxy.** Proxies in respect of specific votes shall be permitted, provided that such proxy vote shall be confirmed in writing (including by electronic mail) to each other Member before such meeting. Voting by a designated alternate shall not be deemed to be voting by proxy.

5.    **MEETINGS**

    **5.1.**    **Meetings of the Committee.** Regular meetings may be held from time to time on dates and at locations designated by the Chair or the Secretary. Duly noticed meetings may be held without a Quorum present, but no action may be taken at any meeting unless a Quorum is present at the beginning of the meeting and compliance with the following notice procedures have occurred. The Chair, or such other Member as the Chair may designate, shall preside at all meetings of the Committee.

    **5.2.**    **Notice.** Announcements of the date and place of the next succeeding regular meeting shall be made by the Chair or the Secretary at a duly scheduled meeting or on not less than three days' notice of such meeting.

    **5.3.**    **Emergency and Special Meetings.** In the event of an emergency, as reasonably determined by the Chair, the PA Officer, and/or Committee Counsel special meetings may be called upon reasonable prior written notice (including electronic mail) to each Member. In addition, any Member may request a special meeting upon reasonable prior written notice (including electronic mail) to all Members. If a special meeting is requested pursuant to this Section 5, the Chair may call the special meeting on behalf of the requesting Member.

    **5.4.**    **Place of Meetings.** Members may participate in meetings in-person, by telephonic conference call or by virtual meeting, or by a combination thereof, unless the Committee, by majority vote, decides that an in-person only meeting is appropriate.

5.5.    **Who May Attend.** Due to the potentially sensitive, non-public nature of subjects that may be discussed by the Committee, meetings of the Committee shall not be open to persons other than Members (or their designated alternate(s) or designated counsel employed by a Member), the Secretary, the PA Officer and Committee Professionals, provided that non-legal advisors to individual Members may participate only with the approval of the majority vote of the other Members and as otherwise set forth in Sections 10 and 17.3. The Committee, by affirmative vote of a majority of its Members, may for special, limited purposes, permit other persons to attend who shall not be deemed Members under these By-laws.

5.6.    **Recusal.** The Litigation Oversight Gemini Lender Member shall be recused from all matters pertaining to (a) any Causes of Action or other claims against any Gemini Party or any Gemini Lender, and (b) any Claim asserted by Gemini or any Gemini Lender, including in the Proofs of Claim Filed by Gemini in the Chapter 11 Cases at Claim Nos. 356, 369, 400, 406, 407 and 413.

5.7.    **Adjournment.**  A majority of Members present at a Committee meeting, whether or not constituting a Quorum, may adjourn any meeting to another time.  Notice of the time of the adjourned meeting shall be given at least one Business Day before the adjourned meeting to the Members not present at the adjournment.

5.8.    **Waiver of Notice.**  The transactions of any Committee meeting, however called and noticed or wherever held, shall be as valid as though had at a meeting duly held after regular notice if (a) a Quorum is present, and (b) if, either before or after the meeting, each Member who did not receive proper notice and was not present (or if present and did not receive proper notice, actually protested the lack of proper notice to him or her at or prior to the meeting ) either agrees in writing to waive such notice or consents to holding the meeting.

5.9.    **Committee Discussion and Materials.** Notwithstanding the foregoing, the Committee and its Members (including their respective counsel or advisors approved as set forth in Section 17.3, if any) shall not provide or furnish to third parties the details of the Committee's discussions and deliberations or the contents of any financial statements, reports, or

other information prepared for Committee consideration at any meeting (unless such documents are specifically known to be not confidential). The Committee and/or its Members may provide such information to a third party only if consistent with <u>Section 10</u>.

6.    **AGENDA**

     6.1.    **Meeting Agenda.** To the extent possible, matters shall be presented to the Committee upon written agenda prepared at the direction of the Chair and transmitted to the Members prior to Committee meetings.

     6.2.    **Member Items.** Matters as to which any Member requests action by the Committee shall be presented to each Member and its counsel (if any), when feasible, prior to the meeting at which such matters are to be considered.

     6.3.    **Minutes.** Minutes shall be recorded in draft form and distributed to all Members as soon as possible. The minutes need not be detailed but shall describe (a) Members and third parties in attendance, (b) items discussed and Committee resolutions, and (c) the result of any vote taken by the Committee. All recorded minutes shall be deemed recorded in draft form until approved by the Committee. Minutes shall be deemed approved by the Committee and deemed final following distribution to the Committee unless comments are received by the Secretary and Committee Counsel within seven Business Days after distribution to the Members, in which event revised minutes reflecting such comments may be distributed and shall be brought up for approval by vote of the Members at the next Committee meeting.

     6.4.    **Written Communications.** Written communications to and among Members, their counsel and Committee Professionals, if any, may be made by hand, first-class mail, overnight courier, electronic mail transmission, or text message and instant message via cellular telephone or any other electronic communication platform or service at the then most current address e-mail address or telephone number provided to the Chair or the Secretary. Records of any such written communications shall be deemed sufficient and conclusive evidence of the communication, without the need for follow-up confirmation. It shall be the responsibility of each Member, its counsel or another Committee Professional, if any, to notify the Chair or the

Secretary of any change in contact information. It shall be the responsibility of the Chair or the Secretary to provide promptly an updated Committee working group contact list to all Members, their counsel and other Committee Professionals, if any, when any changes are made.

## 7.   ACTION BY COMMITTEE

      7.1.   **Action.** Subject to <u>Section 9.1</u> and except as otherwise expressly provided for herein (including, without limitation, <u>Sections 1.2</u>,   <u>2.3</u>, and <u>5.6</u>), the Committee may take any action as permitted by these By-laws (including, without limitation, the actions set forth in <u>Section 8</u>), (a) by majority vote of the Members present and entitled to vote at a meeting duly called and scheduled in accordance with <u>Section 5</u> at which a Quorum is present, or (b) by written consent (including via electronic communication) of the majority of all Members; *provided, however,* that any material amendment to these By-laws shall require the unanimous written consent of all Members or the unanimous consent of all Members present at a meeting duly called and scheduled in accordance with <u>Section 5</u> at which a Quorum is present. The Chair or Committee Counsel shall announce a determination as to any vote, which determination shall be deemed the position of the Committee with respect to such matter. The Committee may conduct a new vote on a matter previously considered by the Committee or revisit any prior vote if the PA Officer, Committee Counsel, or a majority of the Members believe that doing so is consistent with the Committee's fiduciary duties.

      7.2.   **Outside Communication.** Unless and until any other person(s) is authorized to do so by the Committee, only the Chair shall speak for the Committee in reporting the Committee's resolutions to the PA Officer and Wind-Down Oversight Committee, or their respective advisors.  No Member shall speak to the press or media regarding Committee matters without first providing at least three Business Days' notice to all Members and the PA Officer.

## 8.   COMMITTEE FUNCTIONS

      8.1.   **Duties of the Committee.** The purpose of the Committee is to perform the functions set forth in the Plan and the Plan Administration Agreement, including, among other things, to:  (a) review, and advise the PA Officer with respect to, the strategy and pursuit of

Retained Causes of Action, including, but not limited to, the management and direction of counsel and other advisors; (b) approve settlements on account of any Retained Causes of Action; and (c) manage the Litigation Reserve. Each Member agrees and acknowledges that in advising or directing the PA Officer, the Committee shall maintain the same fiduciary responsibilities as the PA Officer, which for the avoidance of doubt includes fiduciary duties to all Holders of Claims that are entitled to receive distributions pursuant to the Plan. The Members shall seek to administer the Plan and the Plan Administration Agreement and close the Chapter 11 Cases as promptly as possible.

8.2.    **Ministerial Matters**. The Chair, in consultation with the PA Officer, may act on behalf of the Committee on matters that are routine or administrative (and, in each case, are nonmaterial); *provided*, *however*, that no action shall be taken on matters with respect to which any Member has requested full Committee consideration at any meeting of the Committee.

9.    **CONFLICTS OF INTEREST**

9.1.    If any matter under consideration by the Committee appears to involve a potential or actual conflict of interest with any Member(s) serving on the Committee, the Member(s) with such potential or actual conflicting interest shall immediately (a) disclose to the Committee the existence of any potential or actual conflict of which he or she has knowledge, and (b) abstain from (i) attending any portion of the discussion of the matter, and (ii) voting on the matter being considered by the Committee. Consistent with the foregoing, any Member(s) having a potential or actual conflict of interest shall not have access to (A) Confidential Information (as defined below), and (B) reports or work product (including draft pleadings) prepared by or at the direction of the Committee Professionals, in each case with respect to the matter in which the potential or actual conflict of interest exists.

9.2.    If determined by the other Members of the Committee to involve a conflict of interest, the conflicted Member may be excluded by majority vote of the Members then present and not subject to such conflict of interest from that portion of the meeting at which such matter is considered.  The existence of a conflict of interest with respect to any specific matter shall not disqualify a Member from participating in the Committee on any other matters; *provided, however*, that the Committee may determine that a conflict is so substantial that the Member should be considered conflicted as to all matters until the conflict is resolved.  Any Member subject to an alleged conflict of interest shall be provided with a reasonable opportunity to be heard and to provide other Members with additional information and/or refute any allegations of its alleged conflict of interest prior to any Committee vote regarding such conflicted member's alleged conflict of interest.  Whether a conflict of interest exists as to a particular Member or a group of Members will be determined on an individual basis, and each Member shall have the opportunity to be heard and have the Committee vote in connection with its alleged conflict of interest.

9.3.    Nothing contained in these By-laws shall, subject to this <u>Section 9</u> and <u>Section 10</u>, (a) prevent any Member or any such Member's employer from (i) exercising (or omitting to exercise) or seeking (or omitting to seek) to enforce or protect any of his, her or its rights as an individual creditor or other party-in-interest in any of these cases as it may deem appropriate or (ii) acquiring additional claims against the Debtors or (b) otherwise affect the ability of any Member or such Member's employer to act in his, her or its capacity as an individual creditor or other party-in-interest as he, she or it deems appropriate.

## 10.    <u>CONFIDENTIALITY OF INFORMATION</u>

10.1.    Each Member agrees that it will use, and will ensure its Representatives (defined below) use, Confidential Information solely for the purpose described in <u>Section 8</u>.

10.2.    All information, irrespective of form or medium of communication, including, without limitation:  (a) communications and discussions (including in each meeting of the Committee and minutes thereof) among Members in their capacity as such and

- 12 -

communications among Committee Professionals and the Committee, including information regarding specific positions taken by Members; (b) information or documents generated by the Committee or any of the Committee Professionals, or by any Member, or counsel or advisor to any Member for use of the Committee, whether or not based on or containing confidential information of a third party ((a) and (b) shall mean "<u>Confidential Committee Communications</u>"); (c) any documents, oral and written communications, electronic correspondence, all information posted in any electronic data room, in each case obtained by or made available to Members or their Representatives (as defined below) as a result of or in connection with their service on the Committee that is provided on a confidential basis; and (d) any information or material received from the PA Officer, the Wind-Down Debtors or their Representatives, or any other party on a confidential basis that is not available to the public, including, without limitation, information concerning the Debtors' or Wind-Down Debtors' and certain of their affiliates' assets, liabilities, business operations, business practices, business plans, financial projections, financial and business analyses, intellectual property, trade secrets, the investigation conducted by the Special Committee as to certain Retained Causes of Action, any confidential Plan Supplement document, and any other documents prepared by the PA Officer, the Wind-Down Debtors or their affiliates or their Representatives (collectively, with any notes, analyses, reports, models, forecasts, projections, compilations, studies, interpretations, documents, or records to the extent containing, based upon or derived from any such information, in whole or in part, whether generated by the Members, or otherwise (including all summaries thereof or information derived therefrom)) (together with Confidential Committee Information, the "<u>Confidential Information</u>") is confidential and shall not be disclosed or revealed to third parties in any manner whatsoever (including via (i) electronic mail used or maintained by a Member in any personal or professional e-mail account(s), (ii) text messages and instant messages via cellular telephone or any other electronic communication platform or service in any form used, maintained, or created by a Member, or (iii) online posting on a Member's personal or professional social media profiles).

Notwithstanding the foregoing, "Confidential Information" shall not include information that:   (A) is available to, or was in the possession of, a Member, on a non-confidential basis independently from the receipt of such information in its capacity as a Member or its capacity, if any, as a member, employee, or employer of an Appointing Party; (B) is available to the public other than as a result of a breach of any of the provisions of this Section 10; (C) becomes independently available to a Member by a means other than service on or in connection with its membership on the Committee so long as the Member's receipt of such information is not, to the knowledge of such Member, governed by any other confidentiality provisions or agreements; or (D) was or is independently developed by such Member without use of, or reference to, any Confidential Information. The use and disclosure (or non-disclosure) of Confidential Information received by a Member from an Appointing Party or its Representatives outside of its capacity as a Member and pursuant to a separate agreement between such Member and the Appointing Party that is unrelated to such Member's service on the Committee shall be governed by the terms of such separate agreement and not subject to the confidentiality provisions hereof.

**10.3.**   Notwithstanding the foregoing provisions of this Section 10, a Member may share any Confidential Information:   (a) with other Members; (b) with the PA Officer; (c) with Committee Professionals and such Member's or such Member's employer's professional advisors, attorneys, financial consultants, auditors, fund administrators, regulators and employees (including employees of affiliates of such Member or such Member's employer), directors, officers or affiliates (collectively, "Representatives") who reasonably require such information to discharge the responsibilities of such Member as a Member of the Committee or as part of his or her job responsibilities with such Member's employer; *provided, however,* that with respect to disclosure to any non-legal outside advisors or auditors of a Member, such Representatives agree in writing to be, and are, bound by these confidentiality provisions and this obligation of confidentiality; (d) when required by law, rule, regulation or court (collectively, "Law"), only as to such portion of the Confidential Information as is required to be disclosed and is determined

- 14 -

to be required to be disclosed by the disclosing Member, in consultation with counsel and upon notice to the Committee to the extent such notice is permitted by Law; (e) where requested by any regulatory authority or internal or outside auditor; (f) with respect to Confidential Information that is not Confidential Committee Information, with the Wind-Down Oversight Committee; (g) with a third party, provided that a confidentiality agreement reasonably acceptable to the Committee and, if related to Confidential Information provided to the Committee by the PA Officer, the PA Officer, is duly executed with such third party (it being agreed and understood that any such confidentiality agreement shall contain third-party beneficiary rights for the PA Officer if any Confidential Information of the Wind-Down Debtors and/or the PA Officer will be provided thereunder); and (h) in the context of court proceedings, after such Member has sought an order providing that such information shall be filed under seal and has given notice of the filing of such motion to the Committee.

**10.4.**    Upon the resignation or removal of a Member, such Member shall promptly return to the Committee or certify in writing the destruction of written Confidential Information (including copies thereof) that was received by the Member in his or her capacity as a Member and in the course of his or her tenure as a Member of the Committee, or affirmatively state in writing (including electronic mail) that a good faith effort was made by the Member to destroy all such material. Notwithstanding the foregoing, a Member shall not be required to return or destroy Confidential Information that it deems appropriate to retain for the purposes of compliance with applicable Law, professional obligations or established document retention policies, provided that all such retained Confidential Information shall remain subject to the confidentiality provisions herein.

**10.5.**    Each Member hereby acknowledges that it may be receiving material, non-public information regarding the Company and certain of its subsidiaries and Affiliates, and that the trading of securities while in possession of such information is subject to the Member's fiduciary duties and may be restricted in accordance with federal and state securities laws.

- 15 -

**10.6.** Notwithstanding the resignation or removal of a Member, such Member shall continue to be bound by this Section 10.

**10.7.** If any Member or its Representative(s) violates the provisions of this Section 10, the Committee, by majority vote (or subject to order of the Bankruptcy Court), or the PA Officer, in accordance with the terms and provisions of these By-laws and the Plan Administration Agreement, may remove such Member from Committee membership. Pending such formal removal, the Member shall be excused from all Committee meetings. With regard to non-public information or materials the Committee receives that, thereafter, do not remain non-public or confidential, except through disclosure by a Member in violation of this Section 10, Members may use such information or materials without ascertaining if the chosen use is consistent with a majority decision or intent of the Committee. Members shall not disclose the internal voting or deliberative processes of the Committee.

**10.8.** The obligations under this Section 10 shall cease to be of any further force and effect on the date that is one year from the date when both the Committee and the Wind-Down Oversight Committee have been discharged in accordance with their respective bylaws and the Plan.

## 11. EXPENSES

**11.1.    Expenses and Fees.** Each Member shall be responsible for the payment of any expenses incurred by such Member in connection with Committee business; *provided, however,* that, after submitting an itemized list of reimbursable expenses to the PA Officer, each Member shall be reimbursed by the Wind-Down Debtors from the Wind-Down Reserve, subject to the Wind-Down Budget, for reasonable expenses incurred by him or her in connection with performing his or her responsibilities as a Member (including for each Member, one alternate representative designated in accordance with Section 1.3). For the avoidance of doubt, the Committee shall not pay any fees for professional advisors to any individual Member or any Appointing Party.

- 16 -

**12.    DISCHARGE**

**12.1.**    The Committee shall be discharged and dissolved, and the service of the Members completed when all Retained Causes of Action have been fully litigated, monetized or settled, or the Committee determines that it has fully performed its duties under the Plan and Section 8.  In such instance, the Committee shall have no further liabilities or responsibilities, and the Committee shall be terminated.

**13.    COMMON INTEREST PRIVILEGE**

**13.1.**    Consistent with their fiduciary duties, the Committee agrees to work with the Wind-Down Debtors, the PA Officer, and the Wind-Down Oversight Committee to satisfy the PA Officer's and the Committee's duties under the Plan and the Plan Administration Agreement and to maximize the return of value in-kind to the creditors of the Debtors and their estates.

**13.2.**    Based on the duties described here, the Members understand and acknowledge that the Committee (on the one hand) and the PA Officer, Wind-Down Debtors, or Wind-Down Oversight Committee (on the other hand) have certain common, mutual and interrelated legal rights and obligations in connection with the Chapter 11 Cases, the transactions provided for under the Plan, the Retained Causes of Action, and the wind-down of the Company's entities. In furtherance of those common and interrelated legal rights and obligations, the Committee needs and wishes to ensure that it is free to share and exchange certain information with the Wind-Down Debtors, the PA Officer or the Wind-Down Oversight Committee and their respective Representatives that may be necessary and appropriate without waiving the protections of any applicable privilege, doctrine, immunity or protection from discovery or disclosure.

**14.    LIABILITY OF COMMITTEE**

**14.1.    Committee Liability.** The Committee, the Members, the PA Officer, the Appointing Parties and their respective professionals and agents shall not in any way be liable for any acts or omissions to act with respect to any of the matters contemplated by these By-laws

- 17 -

except by reason of their gross negligence, willful misconduct, fraud or a criminal acts in the performance of their duties under the Plan or any act or omission that is otherwise inconsistent with the Plan or these By-laws.

       **14.2.** **Indemnification.** The Wind-Down Debtors shall indemnify the Committee, the Members, the PA Officer, the Appointing Parties and their respective alternate representatives, professionals and agents, and hold them harmless, from and against any and all liabilities, expense, claims, damages and losses incurred by any of them as a direct result of actions taken or omissions to act by them in such capacity or otherwise related to the Chapter 11 Cases or the Plan except by reason of their gross negligence, willful misconduct, fraud or criminal acts. Any dispute regarding such indemnification under this <u>Section 14</u> shall be resolved by the Bankruptcy Court, which shall retain jurisdiction over matters relating to the indemnification provided under this <u>Section 14</u>.

## 15. <u>RULES OF PROCEDURE</u>

       **15.1.** **Procedure.** The Chair shall preside over each Committee meeting in a manner that promotes fairness, a full opportunity for discussion and analysis of all business coming before the Committee, and a full opportunity for each Member to express its view. Parliamentary procedures and any formal "Rules of Order" shall not be followed.

       **15.2.** **Enforcement.** Each Appointing Party shall have the right of enforcement of the provisions hereof in the Bankruptcy Court until the Effective Date.

## 16. <u>INFORMATION</u>

       **16.1.** <u>**Privileges and Obligation to Respond to Ongoing Investigations.**</u>

       **(a)** Upon the Effective Date, as set forth in the Plan, all attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Wind-Down Debtors (any such privilege or protection, a "<u>Privilege</u>"), including, but not limited to, Privileges transferred to the Wind-Down Debtors from the Debtors, shall vest in the PA Officer solely in his or her capacity as such (and any other Person whom the PA Officer, with the consent of the Committee, may designate).

- 18 -

**(b)** Pursuant to Federal Rule of Evidence 502(d) (to the extent Rule 502(d) is relevant, notwithstanding the fact that the Wind-Down Debtors and the PA Officer are joint holders of certain attorney-client privileges, work product protections or other immunities or protections from disclosure), no Privileges shall be waived by disclosure between or among any of the Wind-Down Debtors, the PA Officer, the Committee Professionals, the Wind-Down Oversight Committee and/or the Committee of information that is subject to any Privilege or any Privilege jointly held by the Wind-Down Debtors and the PA Officer.  The Committee may request, and the PA Officer shall provide, any information that is confidential or subject to Privilege and that is reasonably requested in connection with the Committee's performance of its duties set forth in <u>Section 8</u>, including, without limitation, any information related to the Retained Causes of Action or the identity of any individual on the list of Released Genesis Personnel (as defined in Exhibit F of the Plan Supplement [Docket No. 1117]).  The PA Officer shall be authorized and permitted to share such information (subject to the obligation of confidentiality set forth in <u>Section 10</u> and the common interest privilege set forth in <u>Section 13</u>) without waiving any applicable Privilege or violating any duty of confidentiality.

**(c)** If the Committee or any Member receives a request from a third party to disclose information that is subject to any Privilege (including Confidential Committee Information), the party or parties who receives such request will (A) pursue all reasonable steps to maintain the applicable Privilege, including, if necessary, by seeking a protective order against and/or otherwise objecting to the production of such material, (B) promptly notify the PA Officer or the Committee, as the case may be, (C) allow the PA Officer or the Committee, as the case may be, a reasonable opportunity under the circumstances to protect its Privileges and interests at such party's sole expense, including by seeking a protective order against and/or otherwise objecting to the production of such material, and (D) unless required by law, not disclose the materials in question unless and until any objection raised by the PA Officer or the Committee is resolved in favor of disclosure. For the avoidance of doubt, nothing herein is intended to limit

the PA Officer's obligations to seek, and be granted, consent prior to a voluntary waiver of any Privilege held by the Wind-Down Debtors.

  **16.2.** **Reliance on Debtors for Information.** It is the responsibility of the Wind-Down Debtors, pursuant to, among other things, their cooperation obligations established in the Plan, to exercise commercially reasonable efforts to provide to the Committee reasonably complete and accurate information regarding the Retained Causes of Action and to provide periodic updates regarding such information to the extent applicable. The PA Officer, Members and Committee Professionals shall be entitled to rely on such information supplied by the Wind-Down Debtors and their agents concerning the Retained Causes of Action, and shall not be held liable to any party for any incompleteness or inaccuracy of such information.

**17.**  **OTHER**

  **17.1.** **Amendment.** These By-laws shall become effective upon the Effective Date of the Plan, and may only be amended, waived or repealed, in writing, by the unanimous consent of all Members.

  **17.2.** **Action by Members in Their Individual Capacity.** Nothing contained in these By-laws (subject to confidentiality and disclosure related restrictions contained in the By-laws) shall prevent any Member from exercising his, her or its rights as a creditor or party in interest in the Debtors' cases or from taking any action in his, her or its individual capacity as it deems appropriate. Individual Members are permitted to engage independent legal counsel, who shall be deemed a Representative of such Member and be bound by Section 10.  Individual Members also may retain their own financial advisor professionals, provided that disclosure of Confidential Information to such advisors and participation of any non-legal advisor to a Member in Committee meetings requires (i) such advisor to agree to be bound by the terms of Section 10 and (ii) the approval of a majority vote of the other Members.

  **17.3.** **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

**17.4.** **Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over these By-laws to the fullest extent permitted.

[SIGNATURE PAGE FOLLOWS]

**SIGNATURE PAGE FOR BY-LAWS OF THE LITIGATION OVERSIGHT COMMITTEE OF GENESIS GLOBAL HOLDCO, LLC, ET AL., CHAPTER 11 CASE NO. 23-10063 (SHL)**

Approved by the undersigned initial Members as of [●], 2024:

**Initial Members**


**By:** _____
      **Name:**
      **Title:**


**By:** _____
      **Name:**
      **Title:**


**By:** _____
      **Name:**
      **Title:**

**By:** _____
      **Name:**
      **Title:**

**By:** _____
      **Name:**
      **Title:**

**By:** _____
      **Name:**
      **Title:**

**By:** _____
      **Name:**
      **Title:**

# **EXHIBIT K**

**Revised Wind-Down Oversight Committee Bylaws**

**BY-LAWS OF WIND-DOWN OVERSIGHT COMMITTEE**
**OF GENESIS GLOBAL HOLDCO, LLC, *ET AL.*,**
**CHAPTER 11 CASE NO. 23-10063 (SHL)**

## 1.    PURPOSE AND MEMBERSHIP

**1.1.    Designation of Committee.** The Wind-Down Oversight Committee (the "Committee") is established pursuant to that certain order of the United States Bankruptcy Court for the Southern District of New York on [●], 2024 [Docket No. [●]] (together with the exhibits thereto, the "Confirmation Order"), entered in the Chapter 11 case of Genesis Global Holdco, LLC and its affiliated debtor subsidiaries (the "Debtors").[1] The Committee is formed for the sole purpose of performing its obligations under the Plan and Confirmation Order, including, without limitation, to oversee the Wind-Down Debtors' wind-down activities in accordance with the Plan (including the Distribution Principles) and the Plan Administration Agreement, and to manage the Wind-Down Reserve, and to consult with or direct the PA Officer and New Board (as provided in the Plan, the Plan Administration Agreement, the New Governance Documents, and/or the Distribution Principles) with respect to certain transactions to be carried out by the Wind-Down Debtors or PA Officer under the Plan.

**1.2.    Members.** The Committee initially shall be comprised of seven individuals (each such individual, a "Member"). Each Member shall have one vote. The Members shall consist of the following seats (each, a "Seat"): (a) two Wind-Down Oversight BTC Members; (b) one Wind-Down Oversight ETH Member; (c) two Wind-Down Oversight Fiat-or-Stablecoin Members; (d) the Wind-Down Oversight Gemini Lender Member; and (e) the Wind-Down Oversight Crossover Member; *provided*, *however*, that, upon the occurrence of a Gemini Recovery Event, the Seat for the Wind-Down Oversight Gemini Lender Member shall be eliminated. If at any time, the Committee Seats shall be an even number, one additional Seat shall be created by vote of at least four of the remaining Members, which Seat shall be designated as any Seat other

---

[1]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the *Joint Chapter 11 Plan of Genesis Global Holdco, LLC and Its Debtor Affiliates* [Docket No. [●]] (together with the exhibits thereto and as may be amended, modified, or supplemented from time to time, the "Plan").

than the Wind-Down Oversight Gemini Member according to such vote. In the event that the Committee is not able to designate a new Seat within in 5 business days of there being an even number of Seats, the PA Officer shall have the authority to seek an order from the Bankruptcy Court designating such new Seat. Any vacancy created by the designation of a new Seat shall be filled in accordance with Section 1.6 hereof. The initial Members mutually appointed by the official committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases by the U.S. Trustee on February 3, 2023, as described in further detail in the Notice of Appointment of Official Committee of Unsecured Creditors [Docket No. 53] (the "UCC"), and the PSA Majority Creditors (as represented by the Ad Hoc Group Counsel) (together with the UCC, the "Appointing Parties") are set forth in Exhibit B to the Plan Supplement [ECF No. 1117].

    **1.3.    Representatives.** Any Member may designate an alternate representative to attend Committee meetings and to otherwise carry out the functions of such Member; *provided, however,* that (a) such alternate representative is approved by the majority of the other Members (excluding the Member seeking to designate such alternate representative) as the alternate representative for such Member, (b) such designation is made to the Chair (as defined below) and the PA Officer (as defined in the Plan) in writing prior to the relevant meeting, and (c) such alternate representative has agreed to abide by these By-laws and any applicable provisions of the Plan. Any alternate representative shall be deemed a Member for all purposes of the meetings in the absence of the applicable Member. Alternate representatives designated in accordance with this Section 1.3 shall be permitted to attend meetings of the Committee at the direction of its designating Member; *provided, however,* that at any meeting at which the designating Member is also present, such alternate representative shall only be a non-participating observer.

    **1.4.    Resignation.** A Member only may resign from the Committee by giving written notice of such resignation to the Chair. Such resignation shall be effective immediately upon the giving of such written notice to the Chair. The Chair may resign as a Member of the Committee at any time upon the giving of written notice to each other Member and the PA Officer, which notice shall designate an interim Chair to serve until election of a replacement Chair

pursuant to Section 2.4. If at any time a Member (a) sells, transfers, or assigns all of its rights to or interest in such Member's claim against any of the Debtors and no longer holds such claim or (b) receives all distributions on account of its Allowed General Unsecured Claim that are to be made under the Plan (including, without limitation, the Distribution Principles), then such Member shall, as soon as practicable but in no event more than three Business Days thereafter, (i) give written notice to the PA Officer and to the remaining Members of the Committee, and (ii) be deemed to have resigned, effective immediately, from the Committee.

1.5.    **Removal.**    The Committee shall have the authority (pursuant to the determination described in the immediately following sentence) to direct the PA Officer to seek an order from the Bankruptcy Court to remove a Member for cause. Any such determination shall be made by at least two thirds of the then-existing Seats of the Committee (excluding the Seat for the Member that is the subject of such determination).

1.6.    **Vacancy.** Vacancies on the Committee shall be filled by the unanimous consent of the remaining Member(s) of the Committee, which consent shall not be unreasonably withheld, conditioned or delayed, provided that any appointment of a replacement Member shall maintain the relative composition of Wind-Down Oversight BTC Members, Wind-Down Oversight ETH Member, Wind-Down Oversight Fiat-or-Stablecoin Members, Wind-Down Oversight Crossover Member, and Wind-Down Gemini Lender Member in existence at the time of such vacancy as set forth in Section 1.2. If a vacancy on the Committee is not filled within five Business Days of such vacancy occurring, the PA Officer shall have the authority to seek an order from the Bankruptcy Court approving the appointment of a Person selected by a majority of the Members (or if no Person has the approval of a majority of the Members, the Person with the support from the most number of Members), with such Person's prior written consent, to the Committee to fill such vacancy; *provided, however,* that any appointment of a replacement Member shall maintain the relative composition of Wind-Down Oversight BTC Members, Wind-Down Oversight ETH Member, Wind-Down Oversight Fiat-or-Stablecoin Members, Wind-Down Oversight Crossover Member, and Wind-Down Gemini Lender Member in existence at the time

of such vacancy as set forth in <u>Section 1.2</u>. Each Person who thereafter becomes a Member (a "<u>New Member</u>") shall be deemed automatically to have ratified and accepted these By-laws in all respects, without necessity of further action by such New Member, the Committee or any other person, and all references to Members herein shall apply in the same manner and form to such New Member.

       **1.7.**    <u>**Advisors to the Wind-Down Debtors.**</u>  As provided in the Plan Administration Agreement, the consent of the Wind-Down Oversight Committee, by majority vote, shall be required for the PA Officer's: (a) retention of, or decision not to retain, legal counsel to the Wind-Down Debtors  to support the wind-down and administration of the Wind-Down Debtors the (the "<u>Wind-Down Debtors Counsel</u>"), and (b) retention of other professionals, including accountants, financial advisors, investment bankers, co-counsel or other professionals for the Wind-Down Debtors (the "<u>Other Wind-Down Debtors Advisors</u>").  The PA Officer The PA Officer shall be required obtain the consent of the Wind-Down Oversight Committee, by majority vote, with respect to the material terms of engagement prior to entering into an engagement agreement with any Wind-Down Debtors Counsel and Other Wind-Down Debtors Advisor.

       **1.8.**    <u>**Counsel.**</u> The Committee may authorize the PA Officer to retain counsel for the Committee, which counsel may be the Wind-Down Counsel (in either case, the "<u>Committee Counsel</u>"). The Committee Counsel shall be authorized to act on the advice and instructions of a majority of the Members, subject to <u>Section 7</u>. Committee Counsel will not consent to or evidence the Committee's position on any matter except: (a) with the express authorization of the Committee; or (b) as emergency circumstances may require, in which event Committee Counsel will first attempt to contact the Committee. In the absence of that contact, Committee Counsel shall exercise its discretion, making it clear, where appropriate, that circumstances have not yet permitted contact with the Committee. In all matters where Committee Counsel is acting on behalf of the Committee, Committee Counsel shall, as permitted, provide a complete report of all such actions or activities to the Chair and explain the same to the Committee. Any material distributed

by Committee Counsel, including minutes, is distributed in its capacity as counsel and is part of its continuing attorney-client privilege and work product privilege with its client, the Committee.

1.9.     **Committee Advisors.** The Committee may authorize the PA Officer to retain other advisors for the Committee, which advisors may be the Other Wind-Down Advisors (in either case, the "Other Professionals", and together with Committee Counsel, the "Committee Professionals"). To the extent the Committee Professionals generate reports for discussion at Committee meetings (a) the Committee Professionals shall issue, whenever possible, the reports to Committee Counsel, and (b) Committee Counsel shall distribute such reports to the Committee in advance of the Committee meeting. Any such distributed material is part of the continuing attorney-client privilege and work product privilege between the Committee and Committee Counsel.

1.10.     **Ex-Officio Members.** Upon the occurrence of a USD Recovery Event or Gemini Recovery Event, respectively, the Committee may (by majority vote) appoint any Wind-Down Oversight Fiat-or-Stablecoin Member or Wind-Down Oversight Gemini Lender Member who would otherwise have their Seat eliminated, to serve as an ex-officio member (an "Ex-Officio Member") of the Committee, which, for the avoidance of doubt, shall not be considered a Seat. Any such Ex-Officio Member shall not be considered in constituting a Quorum, and shall have no voting rights with respect to any Committee matter.   Any such Ex-Officio Member shall be required to agree to abide by these By-laws and all applicable provisions of the Plan as if it were a Member of the Committee.  For the avoidance of doubt, Ex-Officio Members shall be entitled to receive Confidential Information (as defined below) as if such Ex-Officio Member were a Member of the Committee; provided, however, that such Ex-Officio Members shall be at all times subject to the obligations of Articles 9, 10, and 16 hereof, and Sections 5.9 and 7.3 hereof.

2.     **COMMITTEE CHAIR**

2.1.     **Chair.** There shall be one Committee chair (the "Chair"), and there may be a secretary of the Committee (the "Secretary"), each of whom shall be elected by a majority vote

of the Members, and each of whom shall serve until the earlier of its resignation, its removal or dissolution of the Committee at the closing of the Chapter 11 Cases.

      **2.2.**    **Authority.** The Chair shall have the authority to sign documents on behalf of the Committee as appropriate in order to implement decisions of the Committee. For the avoidance of doubt, the Chair shall have the right to vote on motions, propose motions, and participate as a full voting Member notwithstanding his or her position as Chair (except with respect to any vote for his or her removal as set forth in Section 2.3).

      **2.3.**    **Removal.** The Chair may be removed from his or her position as Chair, with or without cause, by affirmative vote of a majority of the Members (excluding the Chair). Upon removal of the Chair, the Committee promptly shall elect a successor in accordance with Section 2.4.

      **2.4.**    **Resignation; Successor Chair.** The Chair may voluntarily resign his or her position as Chair effective immediately upon the Chair providing notice to each of the Members and the PA Officer. If the Chair voluntarily resigns his or her position as Chair or is removed from his or her position as Chair as provided in Section 2.3, then the Committee promptly shall elect a successor by affirmative vote of a majority of the Members (including the former Chair).

**3.**    **DUTIES OF THE SECRETARY**

      **3.1.**    **Secretary.** The Secretary, who, for the avoidance of doubt, may be the PA Officer, shall issue all authorized notices for, and shall keep minutes of, all meetings of the Committee. He or she shall have charge of the internal records and shall perform such other duties as the Committee may from time to time prescribe.

**4.**    **QUORUM**

      **4.1.**    **Quorum.** A quorum shall consist of a majority of the Members (or alternate representatives designated in accordance with Section 1.3) present at a duly noticed meeting of the Committee ("Quorum").

       **4.2.**    **Proxy.** Proxies in respect of specific votes shall be permitted, provided that such proxy vote shall be confirmed in writing (including by electronic mail) to each other Member before such meeting. Voting by a designated alternate shall not be deemed to be voting by proxy.

**5.**    **MEETINGS**

       **5.1.**    **Meetings of the Committee.** Regular meetings may be held from time to time on dates and at locations designated by the Chair or the Secretary. Duly noticed meetings may be held without a Quorum present, but no action may be taken at any meeting unless a Quorum is present at the beginning of the meeting and compliance with the following notice procedures have occurred. The Chair, or such other Member as the Chair may designate, shall preside at all meetings of the Committee.

       **5.2.**    **Notice.** Announcements of the date and place of the next succeeding regular meeting shall be made by the Chair or the Secretary at a duly scheduled meeting or on not less than three days' notice of such meeting.

       **5.3.**    **Emergency and Special Meetings.** In the event of an emergency, as reasonably determined by the Chair, the PA Officer, and/or Committee Counsel special meetings may be called upon reasonable prior written notice (including electronic mail) to each Member. In addition, any Member may request a special meeting upon reasonable prior written notice (including electronic mail) to all Members. If a special meeting is requested pursuant to this Section 5, the Chair may call the special meeting on behalf of the requesting Member.

       **5.4.**    **Place of Meetings.** Members may participate in meetings in-person, by telephonic conference call or by virtual meeting, or by a combination thereof, unless the Committee, by majority vote, decides that an in-person only meeting is appropriate.

       **5.5.**    **Who May Attend.** Due to the potentially sensitive, non-public nature of subjects that may be discussed by the Committee, meetings of the Committee shall not be open to persons other than Members (or their designated alternate(s) or designated counsel employed by a Member), the Secretary, the PA Officer and Committee Professionals, *provided* that non-legal advisors to individual Members may participate only with the approval of the majority vote of the

other Members and as otherwise set forth in Sections 10 and 17.3. The Committee, by affirmative vote of a majority of its Members, may for special, limited purposes, permit other persons to attend who shall not be deemed Members under these By-laws.

5.6. **Recusal.** The Wind-Down Oversight Gemini Lender Member shall be recused from all matters pertaining to (a) any Causes of Action or other claims against any Gemini Party or any Gemini Lender, and (b) any Claim asserted by Gemini or any Gemini Lender, including in the Proofs of Claim Filed by Gemini in the Chapter 11 Cases at Claim Nos. 356, 369, 400, 406, 407 and 413.

5.7. **Adjournment.** A majority of Members present at a Committee meeting, whether or not constituting a Quorum, may adjourn any meeting to another time. Notice of the time of the adjourned meeting shall be given at least one Business Day before the adjourned meeting to the Members not present at the adjournment.

5.8. **Waiver of Notice.** The transactions of any Committee meeting, however called and noticed or wherever held, shall be as valid as though had at a meeting duly held after regular notice if (a) a Quorum is present, and (b) if, either before or after the meeting, each Member who did not receive proper notice and was not present (or if present and did not receive proper notice, actually protested the lack of proper notice to him or her at or prior to the meeting) either agrees in writing to waive such notice or consents to holding the meeting.

5.9. **Committee Discussion and Materials.** Notwithstanding the foregoing, the Committee and its Members (including their respective counsel or advisors approved as set forth in Section 17.3, if any) shall not provide or furnish to third parties the details of the Committee's discussions and deliberations or the contents of any financial statements, reports, or other information prepared for Committee consideration at any meeting (unless such documents are specifically known to be not confidential). The Committee and/or its Members may provide such information to a third party only if consistent with Section 10.

6.      **AGENDA**

6.1.      **Meeting Agenda.** To the extent possible, matters shall be presented to the Committee upon written agenda prepared at the direction of the Chair and transmitted to the Members prior to Committee meetings.

6.2.      **Member Items.** Matters as to which any Member requests action by the Committee shall be presented to each Member and its counsel (if any), when feasible, prior to the meeting at which such matters are to be considered.

6.3.      **Minutes.** Minutes shall be recorded in draft form and distributed to all Members as soon as possible. The minutes need not be detailed but shall describe (a) Members and third parties in attendance, (b) items discussed and Committee resolutions, and (c) the result of any vote taken by the Committee. All recorded minutes shall be deemed recorded in draft form until approved by the Committee. Minutes shall be deemed approved by the Committee and deemed final following distribution to the Committee unless comments are received by the Secretary and Committee Counsel within seven Business Days after distribution to the Members, in which event revised minutes reflecting such comments may be distributed and shall be brought up for approval by vote of the Members at the next Committee meeting.

6.4.      **Written Communications.** Written communications to and among Members, their counsel and Committee Professionals, if any, may be made by hand, first-class mail, overnight courier, electronic mail transmission, or text message and instant message via cellular telephone or any other electronic communication platform or service at the then most current address e-mail address or telephone number provided to the Chair or the Secretary. Records of any such written communications shall be deemed sufficient and conclusive evidence of the communication, without the need for follow-up confirmation. It shall be the responsibility of each Member, its counsel or another Committee Professional, if any, to notify the Chair or the Secretary of any change in contact information. It shall be the responsibility of the Chair or the Secretary to provide promptly an updated Committee working group contact list to all Members, their counsel and other Committee Professionals, if any, when any changes are made.

7.      **ACTION BY COMMITTEE**

      7.1.   **Action.** Subject to Section 9.1 and except as otherwise expressly provided for herein (including, without limitation, Sections 1.2, 2.3, 5.6, and 7.2), the Committee may take any action as permitted by these By-laws (including, without limitation, the actions set forth in Section 8), (a) by majority vote of the Members present and entitled to vote at a meeting duly called and scheduled in accordance with Section 5 at which a Quorum is present, or (b) by written consent (including via electronic communication) of the majority of all Members; *provided, however,* that the following actions shall require the unanimous written consent of all Members or the unanimous consent of all Members present at a meeting duly called and scheduled in accordance with Section 5 at which a Quorum is present: (i) any material amendment to these By-Laws or (ii) any material amendment to the Distribution Principles. The Chair or Committee Counsel shall announce a determination as to any vote, which determination shall be deemed the position of the Committee with respect to such matter. The Committee may conduct a new vote on a matter previously considered by the Committee or revisit any prior vote if the PA Officer, Committee Counsel, or a majority of the Members believe that doing so is consistent with its fiduciary duties.

      7.2.   **Certain Actions Under Distribution Principles**.  Nothing in these By-laws is intended to alter the Distribution Principles (including without limitation the "Un-Distributable Asset Monetization Agreement" set forth in the Distribution Principles), and the Members acknowledge and agree that monetization of Un-Distributable Assets (as defined in the Distribution Principles) by the PA Officer shall require only the affirmative unanimous vote of the Members occupying the applicable Seats that represent the Denomination Group (as defined in the Distribution Principles) to which such Un-Distributable Assets have been allocated (e.g., monetization of Un-Distributable Assets allocated to Holders of Allowed BTC-Denominated Unsecured Claims (and Remainder Gemini Lender Claims denominated in BTC) under the Distribution Principles shall only require the affirmative vote of the two Wind-Down Oversight BTC Members).

7.3.    **Outside Communication.** Unless and until any other person(s) is authorized to do so by the Committee, only the Chair shall speak for the Committee in reporting the Committee's resolutions to the PA Officer and Litigation Oversight Committee, or their respective advisors.  No Member shall speak to the press or media regarding Committee matters without first providing at least three Business Days' notice to all Members and the PA Officer.

8.    **COMMITTEE FUNCTIONS**

8.1.    **Duties of the Committee.** The purpose of the Committee is to perform the functions set forth in the Plan and the Plan Administration Agreement, including, among other things, to:  (a) review, and advise the PA Officer with respect to, the distribution or other disposition of the Distributable Assets in accordance with the Plan (including the Distribution Principles) and the Plan Administration Agreement, including, but not limited to, the exercise of any Monetization Transactions; and (b) approve any material amendments to the Distribution Principles. Each Member agrees and acknowledges that in advising or directing the PA Officer, the Committee shall maintain the same fiduciary responsibilities as the PA Officer, which for the avoidance of doubt includes fiduciary duties to all Holders of Claims that are entitled to receive distributions pursuant to the Plan. The Members shall seek to administer the Plan and the Plan Administration Agreement and close the Chapter 11 Cases as promptly as possible.

8.2.    **Ministerial Matters.** The Chair, in consultation with the PA Officer, may act on behalf of the Committee on matters that are routine or administrative (and, in each case, are nonmaterial); *provided*, *however*, that no action shall be taken on matters with respect to which any Member has requested full Committee consideration at any meeting of the Committee.

9.    **CONFLICTS OF INTEREST**

9.1.    If any matter under consideration by the Committee appears to involve a potential or actual conflict of interest with any Member(s) serving on the Committee, the Member(s) with such potential or actual conflicting interest shall immediately (a) disclose to the Committee the existence of any potential or actual conflict of which he or she has knowledge, and (b) abstain from (i) attending any portion of the discussion of the matter, and (ii) voting on the

- 11 -

matter being considered by the Committee. Consistent with the foregoing, any Member(s) having a potential or actual conflict of interest shall not have access to (A) Confidential Information (as defined below), and (B) reports or work product (including draft pleadings) prepared by or at the direction of the Committee Professionals, in each case with respect to the matter in which the potential or actual conflict of interest exists.

9.2.    If determined by the other Members of the Committee to involve a conflict of interest, the conflicted Member may be excluded by majority vote of the Members then present and not subject to such conflict of interest from that portion of the meeting at which such matter is considered.  The existence of a conflict of interest with respect to any specific matter shall not disqualify a Member from participating in the Committee on any other matters; *provided*, *however*, that the Committee may determine that a conflict is so substantial that the Member should be considered conflicted as to all matters until the conflict is resolved.  Any Member subject to an alleged conflict of interest shall be provided with a reasonable opportunity to be heard and to provide other Members with additional information and/or refute any allegations of its alleged conflict of interest prior to any Committee vote regarding such conflicted member's alleged conflict of interest.  Whether a conflict of interest exists as to a particular Member or a group of Members will be determined on an individual basis, and each Member shall have the opportunity to be heard and have the Committee vote in connection with its alleged conflict of interest.

9.3.    Nothing contained in these By-laws shall, subject to this Section 9 and Section 10, (a) prevent any Member or any such Member's employer from (i) exercising (or omitting to exercise) or seeking (or omitting to seek) to enforce or protect any of his, her or its rights as an individual creditor or other party-in-interest in any of these cases as it may deem appropriate or (ii) acquiring additional claims against the Debtors or (b) otherwise affect the ability of any Member or such Member's employer to act in his, her or its capacity as an individual creditor or other party-in-interest as he, she or it deems appropriate.

10.    **CONFIDENTIALITY OF INFORMATION**

  **10.1.** Each Member agrees that it will use, and will ensure its Representatives (defined below) use, Confidential Information solely for the purpose described in <u>Section 8</u>.

  **10.2.** All information, irrespective of form or medium of communication, including, without limitation:  (a) communications and discussions (including in each meeting of the Committee and minutes thereof) among Members in their capacity as such and communications among Committee Professionals and the Committee, including information regarding specific positions taken by Members; (b) information or documents generated by the Committee or any of the Committee Professionals, or by any Member, or counsel or advisor to any Member for use of the Committee, whether or not based on or containing confidential information of a third party ((a) and (b) shall mean "<u>Confidential Committee Communications</u>"); (c) any documents, oral and written communications, electronic correspondence, all information posted in any electronic data room, in each case obtained by or made available to Members or their Representatives (as defined below) as a result of or in connection with their service on the Committee that is provided on a confidential basis; and (d) any information or material received from the PA Officer, the Wind-Down Debtors or their Representatives, or any other party on a confidential basis that is not available to the public, including, without limitation, information concerning the Debtors' or Wind-Down Debtors' and certain of their affiliates' assets, liabilities, business operations, business practices, business plans, financial projections, financial and business analyses, intellectual property, trade secrets, the investigation conducted by the Special Committee as to certain Retained Causes of Action, any confidential Plan Supplement document, and any other documents prepared by the PA Officer, the Wind-Down Debtors or their affiliates or their Representatives (collectively, with any notes, analyses, reports, models, forecasts, projections, compilations, studies, interpretations, documents, or records to the extent containing, based upon or derived from any such information, in whole or in part, whether generated by the Members, or otherwise (including all summaries thereof or information derived therefrom)) (together with Confidential Committee Information, the "<u>Confidential Information</u>") is

confidential and shall not be disclosed or revealed to third parties in any manner whatsoever (including via (i) electronic mail used or maintained by a Member in any personal or professional e-mail account(s), (ii) text messages and instant messages via cellular telephone or any other electronic communication platform or service in any form used, maintained, or created by a Member, or (iii) online posting on a Member's personal or professional social media profiles).

Notwithstanding the foregoing, "Confidential Information" shall not include information that: (A) is available to, or was in the possession of, a Member, on a non-confidential basis independently from the receipt of such information in its capacity as a Member or its capacity, if any, as a member, employee, or employer of an Appointing Party; (B) is available to the public other than as a result of a breach of any of the provisions of this Section 10; (C) becomes independently available to a Member by a means other than service on or in connection with its membership on the Committee so long as the Member's receipt of such information is not, to the knowledge of such Member, governed by any other confidentiality provisions or agreements; or (D) was or is independently developed by such Member without use of, or reference to, any Confidential Information. The use and disclosure (or non-disclosure) of Confidential Information received by a Member from an Appointing Party or its Representatives outside of its capacity as a Member and pursuant to a separate agreement between such Member and the Appointing Party that is unrelated to such Member's service on the Committee shall be governed by the terms of such separate agreement and not subject to the confidentiality provisions hereof.

**10.3.** Notwithstanding the foregoing provisions of this Section 10, a Member may share any Confidential Information: (a) with other Members; (b) with the PA Officer; (c) with Committee Professionals and such Member's or such Member's employer's professional advisors, attorneys, financial consultants, auditors, fund administrators, regulators and employees (including employees of affiliates of such Member or such Member's employer), directors, officers or affiliates (collectively, "Representatives") who reasonably require such information to discharge the responsibilities of such Member as a Member of the Committee or as part of his or her job responsibilities with such Member's employer; *provided, however,* that with respect to disclosure

to any non-legal outside advisors or auditors of a Member, such Representatives agree in writing to be, and are, bound by these confidentiality provisions and this obligation of confidentiality; (d) when required by law, rule, regulation or court (collectively, "Law"), only as to such portion of the Confidential Information as is required to be disclosed and is determined to be required to be disclosed by the disclosing Member, in consultation with counsel and upon notice to the Committee to the extent such notice is permitted by Law; (e) where requested by any regulatory authority or internal or outside auditor; (f) with respect to Confidential Information that is not Confidential Committee Information, with the Litigation Oversight Committee; (g) with a third party, provided that a confidentiality agreement reasonably acceptable to the Committee and, if related to Confidential Information provided to the Committee by the PA Officer, the PA Officer, is duly executed with such third party (it being agreed and understood that any such confidentiality agreement shall contain third-party beneficiary rights for the PA Officer if any Confidential Information of the Wind-Down Debtors and/or the PA Officer will be provided thereunder); and (h) in the context of court proceedings, after such Member has sought an order providing that such information shall be filed under seal and has given notice of the filing of such motion to the Committee.

10.4.    Upon the resignation or removal of a Member, such Member shall promptly return to the Committee or certify in writing the destruction of written Confidential Information (including copies thereof) that was received by the Member in his or her capacity as a Member and in the course of his or her tenure as a Member of the Committee, or affirmatively state in writing (including electronic mail) that a good faith effort was made by the Member to destroy all such material. Notwithstanding the foregoing, a Member shall not be required to return or destroy Confidential Information that it deems appropriate to retain for the purposes of compliance with applicable Law, professional obligations or established document retention policies, provided that all such retained Confidential Information shall remain subject to the confidentiality provisions herein.

**10.5.** Each Member hereby acknowledges that it may be receiving material, non-public information regarding the Company and certain of its subsidiaries and Affiliates, and that the trading of securities while in possession of such information is subject to the Member's fiduciary duties and may be restricted in accordance with federal and state securities laws.

**10.6.** Notwithstanding the resignation or removal of a Member, such Member shall continue to be bound by this <u>Section 10</u>.

**10.7.** If any Member or its Representative(s) violates the provisions of this <u>Section 10</u>, the Committee, by majority vote (or subject to order of the Bankruptcy Court), or the PA Officer, in accordance with the terms and provisions of these By-laws and the Plan Administration Agreement, may remove such Member from Committee membership. Pending such formal removal, the Member shall be excused from all Committee meetings. With regard to non-public information or materials the Committee receives that, thereafter, do not remain non-public or confidential, except through disclosure by a Member in violation of this <u>Section 10</u>, Members may use such information or materials without ascertaining if the chosen use is consistent with a majority decision or intent of the Committee. Members shall not disclose the internal voting or deliberative processes of the Committee.

**10.8.** The obligations under this <u>Section 10</u> shall cease to be of any further force and effect on the date that is one year from the date when both the Committee and the Litigation Oversight Committee have been discharged in accordance with their respective bylaws and the Plan.

**11.    <u>EXPENSES</u>**

**11.1.    <u>Expenses and Fees.</u>** Each Member shall be responsible for the payment of any expenses incurred by such Member in connection with Committee business; *provided, however,* that, after submitting an itemized list of reimbursable expenses to the PA Officer, each Member shall be reimbursed by the Wind-Down Debtors from the Wind-Down Reserve, subject to the Wind-Down Budget, for reasonable expenses incurred by him or her in connection with performing his or her responsibilities as a Member (including for each Member, one alternate

representative designated in accordance with Section 1.3). For the avoidance of doubt, the Committee shall not pay any fees for professional advisors to any individual Member or any Appointing Party.

## 12.    DISCHARGE

**12.1.**    The Committee shall be discharged and dissolved, and the service of the Members completed when the Plan has been fully administered, the Wind-Down Debtors and their non-Debtor subsidiaries (together with the Debtors, the "Company") are fully and finally wound down, liquidated, dissolved or otherwise terminated pursuant to applicable Law, and the Chapter 11 Cases have been closed.  In such instance, the Committee shall have no further liabilities or responsibilities, and the Committee shall be terminated.

## 13.    COMMON INTEREST PRIVILEGE

**13.1.**    Consistent with their fiduciary duties, the Committee agrees to work with the Wind-Down Debtors, the PA Officer, and the Litigation Oversight Committee to satisfy the PA Officer's and the Committee's duties under the Plan and the Plan Administration Agreement and to maximize the return of value in-kind to the creditors of the Debtors and their estates.

**13.2.**    Based on the duties described here, the Members understand and acknowledge that the Committee (on the one hand) and the PA Officer, Wind-Down Debtors, or Litigation Oversight Committee (on the other hand) have certain common, mutual and interrelated legal rights and obligations in connection with the Chapter 11 Cases, the transactions provided for under the Plan, the Retained Causes of Action, and the wind-down of the Company's entities. In furtherance of those common and interrelated legal rights and obligations, the Committee needs and wishes to ensure that it is free to share and exchange certain information with the Wind-Down Debtors, the PA Officer or the Litigation Oversight Committee and their respective Representatives that may be necessary and appropriate without waiving the protections of any applicable privilege, doctrine, immunity or protection from discovery or disclosure.

14.     **LIABILITY OF COMMITTEE**

      **14.1.**   **Committee Liability.** The Committee, the Members, the PA Officer, the Appointing Parties and their respective professionals and agents shall not in any way be liable for any acts or omissions to act with respect to any of the matters contemplated by these By-laws except by reason of their gross negligence, willful misconduct, fraud or a criminal acts in the performance of their duties under the Plan or any act or omission that is otherwise inconsistent with the Plan or these By-laws.

      **14.2.**   **Indemnification.** The Wind-Down Debtors shall indemnify the Committee, the Members, the PA Officer, the Appointing Parties and their respective alternate representatives, professionals and agents, and hold them harmless, from and against any and all liabilities, expense, claims, damages and losses incurred by any of them as a direct result of actions taken or omissions to act by them in such capacity or otherwise related to the Chapter 11 Cases or the Plan except by reason of their gross negligence, willful misconduct, fraud or criminal acts. Any dispute regarding such indemnification under this Section 14 shall be resolved by the Bankruptcy Court, which shall retain jurisdiction over matters relating to the indemnification provided under this Section 14.

15.     **RULES OF PROCEDURE**

      **15.1.**   **Procedure.** The Chair shall preside over each Committee meeting in a manner that promotes fairness, a full opportunity for discussion and analysis of all business coming before the Committee, and a full opportunity for each Member to express its view. Parliamentary procedures and any formal "Rules of Order" shall not be followed.

      **15.2.**   **Enforcement.** Each Appointing Party shall have the right of enforcement of the provisions hereof in the Bankruptcy Court until the Effective Date.

16.     **INFORMATION**

      **16.1.**   **Privileges and Obligation to Respond to Ongoing Investigations.**

      **(a)** Upon the Effective Date, as set forth in the Plan, all attorney-client privileges, work product protections and other immunities or protections from disclosure held by

the Wind-Down Debtors (any such privilege or protection, a "<u>Privilege</u>"), including, but not limited to, Privileges transferred to the Wind-Down Debtors from the Debtors, shall vest in the PA Officer solely in his or her capacity as such (and any other Person whom the PA Officer, with the consent of the Committee, may designate).

(b) Pursuant to Federal Rule of Evidence 502(d) (to the extent Rule 502(d) is relevant, notwithstanding the fact that the Wind-Down Debtors and the PA Officer are joint holders of certain attorney-client privileges, work product protections or other immunities or protections from disclosure), no Privileges shall be waived by disclosure between or among any of the Wind-Down Debtors, the PA Officer, the Committee Professionals, the Litigation Oversight Committee and/or the Committee of information that is subject to any Privilege or any Privilege jointly held by the Wind-Down Debtors and the PA Officer.  The Committee may request, and the PA Officer shall provide, any information that is confidential or subject to Privilege and that is reasonably requested in connection with the Committee's performance of its duties set forth in <u>Section 8</u>.  The PA Officer shall be authorized and permitted to share such information (subject to the obligation of confidentiality set forth in <u>Section 10</u> and the common interest privilege set forth in <u>Section 13</u>) without waiving any applicable Privilege or violating any duty of confidentiality.

(c) If the Committee or any Member receives a request from a third party to disclose information that is subject to any Privilege (including Confidential Committee Information), the party or parties who receives such request will (A) pursue all reasonable steps to maintain the applicable Privilege, including, if necessary, by seeking a protective order against and/or otherwise objecting to the production of such material, (B) promptly notify the PA Officer or the Committee, as the case may be, (C) allow the PA Officer or the Committee, as the case may be, a reasonable opportunity under the circumstances to protect its Privileges and interests at such party's sole expense, including by seeking a protective order against and/or otherwise objecting to the production of such material, and (D) unless required by law, not disclose the materials in question unless and until any objection raised by the PA Officer or the Committee is resolved in favor of disclosure. For the avoidance of doubt, nothing herein is intended to limit the PA Officer's

obligations to seek, and be granted, consent prior to a voluntary waiver of any Privilege held by the Wind-Down Debtors.

      **16.2.**   **Reliance on Debtors for Information.** It is the responsibility of the Wind-Down Debtors, pursuant to, among other things, their cooperation obligations established in the Plan, to exercise commercially reasonable efforts to provide to the Committee reasonably complete and accurate information regarding the Wind-Down Debtors' assets and wind-down activities. The PA Officer, Members and Committee Professionals shall be entitled to rely on such information supplied by the Wind-Down Debtors or the PA Officer and shall not be held liable to any party for any incompleteness or inaccuracy of such information.

## 17.    OTHER

      **17.1.**   **Amendment.** These By-laws shall become effective upon the Effective Date of the Plan, and may only be amended, waived or repealed, in writing, by the unanimous consent of all Members.

      **17.2.**   **Action by Members in Their Individual Capacity.** Nothing contained in these By-laws (subject to confidentiality and disclosure related restrictions contained in the By-laws) shall prevent any Member from exercising his, her or its rights as a creditor or party in interest in the Debtors' cases or from taking any action in his, her or its individual capacity as it deems appropriate. Individual Members are permitted to engage independent legal counsel, who shall be deemed a Representative of such Member and be bound by Section 10. Individual Members also may retain their own financial advisor professionals, provided that disclosure of Confidential Information to such advisors and participation of any non-legal advisor to a Member in Committee meetings requires (i) such advisor to agree to be bound by the terms of Section 10 and (ii) the approval of a majority vote of the other Members.

      **17.3.**   **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

**17.4.** **Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over these By-laws to the fullest extent permitted.

[SIGNATURE PAGE FOLLOWS]

**SIGNATURE PAGE FOR BY-LAWS OF THE WIND-DOWN OVERSIGHT COMMITTEE OF GENESIS GLOBAL HOLDCO, LLC, ET AL., CHAPTER 11 CASE NO. 23-10063 (SHL)**

Approved by the undersigned initial Members as of [●], 2024:

**INITIAL MEMBERS**

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

## EXHIBIT K-1

**(Blackline) Revised Wind-Down Oversight Committee Bylaws**

**BY-LAWS OF WIND-DOWN OVERSIGHT COMMITTEE
OF GENESIS GLOBAL HOLDCO, LLC, *ET AL.*,
CHAPTER 11 CASE NO. 23-10063 (SHL)**

## 1. PURPOSE AND MEMBERSHIP

**1.1. Designation of Committee.** The Wind-Down Oversight Committee (the "Committee") is established pursuant to that certain order of the United States Bankruptcy Court for the Southern District of New York on [●], 2024 [Docket No. [●]] (together with the exhibits thereto, the "Confirmation Order"), entered in the Chapter 11 case of Genesis Global Holdco, LLC and its affiliated debtor subsidiaries (the "Debtors").[1] The Committee is formed for the sole purpose of performing its obligations under the Plan and Confirmation Order, including, without limitation, to oversee the Wind-Down Debtors' wind-down activities in accordance with the Plan (including the Distribution Principles) and the Plan Administration Agreement, and to manage the Wind-Down Reserve, and to consult with or direct the PA Officer and New Board (as provided in the Plan, the Plan Administration Agreement, the New Governance Documents, and/or the Distribution Principles) with respect to certain transactions to be carried out by the Wind-Down Debtors or PA Officer under the Plan.

**1.2. Members.** The Committee initially shall be comprised of seven individuals (each such individual, a "Member"). Each Member shall have one vote. The Members shall consist of the following seats (each, a "Seat"): (a) two Wind-Down Oversight BTC Members; (b) one Wind-Down Oversight ETH Member; (c) two Wind-Down Oversight Fiat-or-Stablecoin Members; (d) the Wind-Down Oversight Gemini Lender Member; and (e) the Wind-Down Oversight Crossover Member; *provided*, *however*, that, upon the occurrence of a Gemini ~~Earn~~ Recovery Event, the Seat for the Wind-Down Oversight Gemini Lender Member shall be eliminated. If at any time, the Committee Seats shall be an even number, one additional Seat shall be created by vote of at least four of the remaining Members, which Seat shall be ~~filled~~

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the *Joint Chapter 11 Plan of Genesis Global Holdco, LLC and Its Debtor Affiliates* [Docket No. [●]] (together with the exhibits thereto and as may be amended, modified, or supplemented from time to time, the "Plan").

by designated as any Seat other than the Wind-Down Oversight Gemini Member according to such vote, and a new Member shall be appointed to occupy such Seat.  In the event that the Committee is not able to designate a new Seat within in 5 business days of there being an even number of Seats, the PA Officer shall have the authority to seek an order from the Bankruptcy Court designating such new Seat. Any vacancy created by the designation of a new Seat shall be filled in accordance with Section 1.6 hereof.  The initial Members mutually appointed by the official committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases by the U.S. Trustee on February 3, 2023, as described in further detail in the Notice of Appointment of Official Committee of Unsecured Creditors [Docket No. 53] (the "UCC"), and the PSA Majority Creditors (as represented by the Ad Hoc Group Counsel) (together with the UCC, the "Appointing Parties") are set forth in Exhibit B to the Plan Supplement [ECF No. 1117].

1.3.    **Representatives.** Any Member may designate an alternate representative to attend Committee meetings and to otherwise carry out the functions of such Member; *provided, however,* that (a) such alternate representative is approved by the majority of the other Members (excluding the Member seeking to designate such alternate representative) as the alternate representative for such Member, (b) such designation is made to the Chair (as defined below) and the PA Officer (as defined in the Plan) in writing prior to the relevant meeting, and (c) such alternate representative has agreed to abide by these By-laws and any applicable provisions of the Plan. Any alternate representative shall be deemed a Member for all purposes of the meetings in the absence of the applicable Member.  Alternate representatives designated in accordance with this Section 1.3 shall be permitted to attend meetings of the Committee at the direction of its designating Member; *provided, however,* that at any meeting at which the designating Member is also present, such alternate representative shall only be a non-participating observer.

1.4.    **Resignation.** A Member only may resign from the Committee by giving written notice of such resignation to the Chair. Such resignation shall be effective immediately upon the giving of such written notice to the Chair. The Chair may resign as a Member of the

Committee at any time upon the giving of written notice to each other Member and the PA Officer, which notice shall designate an interim Chair to serve until election of a replacement Chair pursuant to Section 2.4. If at any time a Member (a) sells, transfers, or assigns all of its rights to or interest in such Member's claim against any of the Debtors and no longer holds such claim or (b) receives all distributions on account of its Allowed General Unsecured Claim that are to be made under the Plan (including, without limitation, the Distribution Principles), then such Member shall, as soon as practicable but in no event more than three Business Days thereafter, (i) give written notice to the PA Officer and to the remaining Members of the Committee, and (ii) be deemed to have resigned, effective immediately, from the Committee.

1.5.    **Removal.**    The Committee shall have the authority (pursuant to the determination described in the immediately following sentence) to direct the PA Officer to seek an order from the Bankruptcy Court to remove a Member for cause. Any such determination shall be made by at least two thirds of the then-existing Seats of the Committee (excluding the Seat for the Member that is the subject of such determination).

1.6.    **Vacancy.** Vacancies on the Committee shall be filled by the unanimous consent of the remaining Member(s) of the Committee, which consent shall not be unreasonably withheld, conditioned or delayed, provided that any appointment of a replacement Member shall maintain the relative composition of Wind-Down Oversight BTC Members, Wind-Down Oversight ETH Member, Wind-Down Oversight Fiat-or-Stablecoin Members, Wind-Down Oversight Crossover Member, and Wind-Down Gemini Lender Member in existence at the time of such vacancy as set forth in Section 1.2. If a vacancy on the Committee is not filled within five Business Days of such vacancy occurring, the PA Officer shall have the authority to seek an order from the Bankruptcy Court approving the appointment of a Person selected by a majority of the Members (or if no Person has the approval of a majority of the Members, the Person with the support from the most number of Members), with such Person's prior written consent, to the Committee to fill such vacancy; *provided, however,* that any appointment of a replacement Member shall maintain the relative composition of Wind-Down Oversight BTC Members,

Wind-Down Oversight ETH Member, Wind-Down Oversight Fiat-or-Stablecoin Members, Wind-Down Oversight Crossover Member, and Wind-Down Gemini Lender Member in existence at the time of such vacancy as set forth in <u>Section 1.2</u>. Each Person who thereafter becomes a Member (a "<u>New Member</u>") shall be deemed automatically to have ratified and accepted these By-laws in all respects, without necessity of further action by such New Member, the Committee or any other person, and all references to Members herein shall apply in the same manner and form to such New Member.

1.7.    <u>**Advisors to the Wind-Down Debtors.**</u>    As provided in the Plan Administration Agreement, the consent of the Wind-Down Oversight Committee, by majority vote, shall be required for the PA Officer's: (a) retention of, or decision not to retain, legal counsel to the Wind-Down Debtors  to support the wind-down and administration of the Wind-Down Debtors the (the "<u>Wind-Down Debtors Counsel</u>"). ~~As provided in the Plan Administration Agreement, the PA Officer is required to consult with~~ the Wind-Down Oversight Committee ~~with respect to his or her~~, and (b) retention of other professionals, including accountants, financial advisors, investment bankers, co-counsel or other professionals for the Wind-Down Debtors (the "<u>Other Wind-Down Debtors Advisors</u>").  The PA Officer The PA Officer shall be required obtain the consent of the Wind-Down Oversight Committee, by majority vote, with respect to the material terms of engagement prior to entering into an engagement agreement with any Wind-Down Debtors Counsel and Other Wind-Down Debtors Advisor.

1.8.    <u>**Counsel.**</u> The Committee may authorize the PA Officer to retain counsel for the Committee, which counsel may be the Wind-Down Counsel (in either case, the "<u>Committee Counsel</u>"). The Committee Counsel shall be authorized to act on the advice and instructions of a majority of the Members, subject to <u>Section 7</u>. Committee Counsel will not consent to or evidence the Committee's position on any matter except: (a) with the express authorization of the Committee; or (b) as emergency circumstances may require, in which event Committee Counsel will first attempt to contact the Committee. In the absence of that contact,

- 4 -

Committee Counsel shall exercise its discretion, making it clear, where appropriate, that circumstances have not yet permitted contact with the Committee. In all matters where Committee Counsel is acting on behalf of the Committee, Committee Counsel shall, as permitted, provide a complete report of all such actions or activities to the Chair and explain the same to the Committee. Any material distributed by Committee Counsel, including minutes, is distributed in its capacity as counsel and is part of its continuing attorney-client privilege and work product privilege with its client, the Committee.

1.9.    **Committee Advisors.** The Committee may authorize the PA Officer to retain other advisors for the Committee, which advisors may be the Other Wind-Down Advisors (in either case, the "Other Professionals", and together with Committee Counsel, the "Committee Professionals"). To the extent the Committee Professionals generate reports for discussion at Committee meetings (a) the Committee Professionals shall issue, whenever possible, the reports to Committee Counsel, and (b) Committee Counsel shall distribute such reports to the Committee in advance of the Committee meeting. Any such distributed material is part of the continuing attorney-client privilege and work product privilege between the Committee and Committee Counsel.

1.10.    **Ex-Officio Members.** Upon the occurrence of a USD Recovery Event or Gemini Recovery Event, respectively, the Committee may (by majority vote) appoint any Wind-Down Oversight Fiat-or-Stablecoin Member or Wind-Down Oversight Gemini Lender Member who would otherwise have their Seat eliminated, to serve as an ex-officio member (an "Ex-Officio Member") of the Committee, which, for the avoidance of doubt, shall not be considered a Seat.  Any such Ex-Officio Member shall not be considered in constituting a Quorum, and shall have no voting rights with respect to any Committee matter.  Any such Ex-Officio Member shall be required to agree to abide by these By-laws and all applicable provisions of the Plan as if it were a Member of the Committee.  For the avoidance of doubt, Ex-Officio Members shall be entitled to receive Confidential Information (as defined below) as if such Ex-Officio Member were a Member of the Committee; provided, however, that such

Ex-Officio Members shall be at all times subject to the obligations of Articles 9, 10, and 16 hereof, and Sections 5.9 and 7.3 hereof.

**2.      COMMITTEE CHAIR**

2.1.    **Chair.** There shall be one Committee chair (the "Chair"), and there may be a secretary of the Committee (the "Secretary"), each of whom shall be elected by a majority vote of the Members, and each of whom shall serve until the earlier of its resignation, its removal or dissolution of the Committee at the closing of the Chapter 11 Cases.

2.2.    **Authority.** The Chair shall have the authority to sign documents on behalf of the Committee as appropriate in order to implement decisions of the Committee. For the avoidance of doubt, the Chair shall have the right to vote on motions, propose motions, and participate as a full voting Member notwithstanding his or her position as Chair (except with respect to any vote for his or her removal as set forth in Section 2.3).

2.3.    **Removal.** The Chair may be removed from his or her position as Chair, with or without cause, by affirmative vote of a majority of the Members (excluding the Chair). Upon removal of the Chair, the Committee promptly shall elect a successor in accordance with Section 2.4.

2.4.    **Resignation; Successor Chair.** The Chair may voluntarily resign his or her position as Chair effective immediately upon the Chair providing notice to each of the Members and the PA Officer. If the Chair voluntarily resigns his or her position as Chair or is removed from his or her position as Chair as provided in Section 2.3, then the Committee promptly shall elect a successor by affirmative vote of a majority of the Members (including the former Chair).

**3.      DUTIES OF THE SECRETARY**

3.1.    **Secretary.** The Secretary, who, for the avoidance of doubt, may be the PA Officer, shall issue all authorized notices for, and shall keep minutes of, all meetings of the Committee. He or she shall have charge of the internal records and shall perform such other duties as the Committee may from time to time prescribe.

4.      **QUORUM**

      4.1.      **Quorum.** A quorum shall consist of a majority of the Members (or alternate representatives designated in accordance with Section 1.3) present at a duly noticed meeting of the Committee ("Quorum").

      4.2.      **Proxy.** Proxies in respect of specific votes shall be permitted, provided that such proxy vote shall be confirmed in writing (including by electronic mail) to each other Member before such meeting. Voting by a designated alternate shall not be deemed to be voting by proxy.

5.      **MEETINGS**

      5.1.      **Meetings of the Committee.** Regular meetings may be held from time to time on dates and at locations designated by the Chair or the Secretary. Duly noticed meetings may be held without a Quorum present, but no action may be taken at any meeting unless a Quorum is present at the beginning of the meeting and compliance with the following notice procedures have occurred. The Chair, or such other Member as the Chair may designate, shall preside at all meetings of the Committee.

      5.2.      **Notice.** Announcements of the date and place of the next succeeding regular meeting shall be made by the Chair or the Secretary at a duly scheduled meeting or on not less than three days' notice of such meeting.

      5.3.      **Emergency and Special Meetings.** In the event of an emergency, as reasonably determined by the Chair, the PA Officer, and/or Committee Counsel special meetings may be called upon reasonable prior written notice (including electronic mail) to each Member. In addition, any Member may request a special meeting upon reasonable prior written notice (including electronic mail) to all Members. If a special meeting is requested pursuant to this Section 5, the Chair may call the special meeting on behalf of the requesting Member.

      5.4.      **Place of Meetings.** Members may participate in meetings in-person, by telephonic conference call or by virtual meeting, or by a combination thereof, unless the Committee, by majority vote, decides that an in-person only meeting is appropriate.

- 7 -

5.5.    **Who May Attend.** Due to the potentially sensitive, non-public nature of subjects that may be discussed by the Committee, meetings of the Committee shall not be open to persons other than Members (or their designated alternate(s) or designated counsel employed by a Member), the Secretary, the PA Officer and Committee Professionals, *provided* that non-legal advisors to individual Members may participate only with the approval of the majority vote of the other Members and as otherwise set forth in Sections 10 and 17.3. The Committee, by affirmative vote of a majority of its Members, may for special, limited purposes, permit other persons to attend who shall not be deemed Members under these By-laws.

5.6.    **Recusal.** The Wind-Down Oversight Gemini Lender Member shall be recused from all matters pertaining to (a) any Causes of Action or other claims against any Gemini Party or any Gemini Lender, and (b) any Claim asserted by Gemini or any Gemini Lender, including in the Proofs of Claim Filed by Gemini in the Chapter 11 Cases at Claim Nos. 356, 369, 400, 406, 407 and 413.

5.7.    **Adjournment.**  A majority of Members present at a Committee meeting, whether or not constituting a Quorum, may adjourn any meeting to another time.  Notice of the time of the adjourned meeting shall be given at least one Business Day before the adjourned meeting to the Members not present at the adjournment.

5.8.    **Waiver of Notice.**  The transactions of any Committee meeting, however called and noticed or wherever held, shall be as valid as though had at a meeting duly held after regular notice if (a) a Quorum is present, and (b) if, either before or after the meeting, each Member who did not receive proper notice and was not present (or if present and did not receive proper notice, actually protested the lack of proper notice to him or her at or prior to the meeting) either agrees in writing to waive such notice or consents to holding the meeting.

5.9.    **Committee Discussion and Materials**.  Notwithstanding the foregoing, the Committee and its Members (including their respective counsel or advisors approved as set forth in Section 17.3, if any) shall not provide or furnish to third parties the details of the Committee's discussions and deliberations or the contents of any financial statements, reports, or

other information prepared for Committee consideration at any meeting (unless such documents are specifically known to be not confidential). The Committee and/or its Members may provide such information to a third party only if consistent with <u>Section 10</u>.

6.      **AGENDA**

  **6.1.** **Meeting Agenda.** To the extent possible, matters shall be presented to the Committee upon written agenda prepared at the direction of the Chair and transmitted to the Members prior to Committee meetings.

  **6.2.** **Member Items.** Matters as to which any Member requests action by the Committee shall be presented to each Member and its counsel (if any), when feasible, prior to the meeting at which such matters are to be considered.

  **6.3.** **Minutes.** Minutes shall be recorded in draft form and distributed to all Members as soon as possible. The minutes need not be detailed but shall describe (a) Members and third parties in attendance, (b) items discussed and Committee resolutions, and (c) the result of any vote taken by the Committee. All recorded minutes shall be deemed recorded in draft form until approved by the Committee. Minutes shall be deemed approved by the Committee and deemed final following distribution to the Committee unless comments are received by the Secretary and Committee Counsel within seven Business Days after distribution to the Members, in which event revised minutes reflecting such comments may be distributed and shall be brought up for approval by vote of the Members at the next Committee meeting.

  **6.4.** **Written Communications.** Written communications to and among Members, their counsel and Committee Professionals, if any, may be made by hand, first-class mail, overnight courier, electronic mail transmission, or text message and instant message via cellular telephone or any other electronic communication platform or service at the then most current address e-mail address or telephone number provided to the Chair or the Secretary. Records of any such written communications shall be deemed sufficient and conclusive evidence of the communication, without the need for follow-up confirmation. It shall be the responsibility of each Member, its counsel or another Committee Professional, if any, to notify the Chair or the

Secretary of any change in contact information. It shall be the responsibility of the Chair or the Secretary to provide promptly an updated Committee working group contact list to all Members, their counsel and other Committee Professionals, if any, when any changes are made.

7.    **ACTION BY COMMITTEE**

7.1.    **Action.** Subject to Section 9.1 and except as otherwise expressly provided for herein (including, without limitation, Sections 1.2, 2.3, 5.6, and 7.2), the Committee may take any action as permitted by these By-laws (including, without limitation, the actions set forth in Section 8), (a) by majority vote of the Members present and entitled to vote at a meeting duly called and scheduled in accordance with Section 5 at which a Quorum is present, or (b) by written consent (including via electronic communication) of the majority of all Members; *provided, however,* that the following actions shall require the unanimous written consent of all Members or the unanimous consent of all Members present at a meeting duly called and scheduled in accordance with Section 5 at which a Quorum is present:  (i) any material amendment to these By-Laws or (ii) any material amendment to the Distribution Principles. The Chair or Committee Counsel shall announce a determination as to any vote, which determination shall be deemed the position of the Committee with respect to such matter. The Committee may conduct a new vote on a matter previously considered by the Committee or revisit any prior vote if the PA Officer, Committee Counsel, or a majority of the Members believe that doing so is consistent with its fiduciary duties.

7.2.    **Certain Actions Under Distribution Principles**.    Nothing in these By-laws is intended to alter the Distribution Principles (including without limitation the "Un-Distributable Asset Monetization Agreement" set forth in the Distribution Principles), and the Members acknowledge and agree that monetization of Un-Distributable Assets (as defined in the Distribution Principles) by the PA Officer shall require only the affirmative unanimous vote of the Members occupying the applicable Seats that represent the Denomination Group (as defined in the Distribution Principles) to which such Un-Distributable Assets have been allocated (e.g., monetization of Un-Distributable Assets allocated to Holders of Allowed

BTC-Denominated Unsecured Claims (and Remainder Gemini Lender Claims denominated in BTC) under the Distribution Principles shall only require the affirmative vote of the two Wind-Down Oversight BTC Members).

      **7.3.**   **Outside Communication.** Unless and until any other person(s) is authorized to do so by the Committee, only the Chair shall speak for the Committee in reporting the Committee's resolutions to the PA Officer and Litigation Oversight Committee, or their respective advisors.  No Member shall speak to the press or media regarding Committee matters without first providing at least three Business Days' notice to all Members and the PA Officer.

## 8.    COMMITTEE FUNCTIONS

      **8.1.**   **Duties of the Committee.** The purpose of the Committee is to perform the functions set forth in the Plan and the Plan Administration Agreement, including, among other things, to:  (a) review, and advise the PA Officer with respect to, the distribution or other disposition of the Distributable Assets in accordance with the Plan (including the Distribution Principles) and the Plan Administration Agreement, including, but not limited to, the exercise of any Monetization Transactions; and (b) approve any material amendments to the Distribution Principles. Each Member agrees and acknowledges that in advising or directing the PA Officer, the Committee shall maintain the same fiduciary responsibilities as the PA Officer, which for the avoidance of doubt includes fiduciary duties to all Holders of Claims that are entitled to receive distributions pursuant to the Plan. The Members shall seek to administer the Plan and the Plan Administration Agreement and close the Chapter 11 Cases as promptly as possible.

      **8.2.**   **Ministerial Matters**. The Chair, in consultation with the PA Officer, may act on behalf of the Committee on matters that are routine or administrative (and, in each case, are nonmaterial); *provided*, *however*, that no action shall be taken on matters with respect to which any Member has requested full Committee consideration at any meeting of the Committee.

- 11 -

## 9.     CONFLICTS OF INTEREST

**9.1.**     If any matter under consideration by the Committee appears to involve a potential or actual conflict of interest with any Member(s) serving on the Committee, the Member(s) with such potential or actual conflicting interest shall immediately (a) disclose to the Committee the existence of any potential or actual conflict of which he or she has knowledge, and (b) abstain from (i) attending any portion of the discussion of the matter, and (ii) voting on the matter being considered by the Committee. Consistent with the foregoing, any Member(s) having a potential or actual conflict of interest shall not have access to (A) Confidential Information (as defined below), and (B) reports or work product (including draft pleadings) prepared by or at the direction of the Committee Professionals, in each case with respect to the matter in which the potential or actual conflict of interest exists.

**9.2.**     If determined by the other Members of the Committee to involve a conflict of interest, the conflicted Member may be excluded by majority vote of the Members then present and not subject to such conflict of interest from that portion of the meeting at which such matter is considered.  The existence of a conflict of interest with respect to any specific matter shall not disqualify a Member from participating in the Committee on any other matters; *provided*, *however*, that the Committee may determine that a conflict is so substantial that the Member should be considered conflicted as to all matters until the conflict is resolved.  Any Member subject to an alleged conflict of interest shall be provided with a reasonable opportunity to be heard and to provide other Members with additional information and/or refute any allegations of its alleged conflict of interest prior to any Committee vote regarding such conflicted member's alleged conflict of interest.  Whether a conflict of interest exists as to a particular Member or a group of Members will be determined on an individual basis, and each Member shall have the opportunity to be heard and have the Committee vote in connection with its alleged conflict of interest.

**9.3.**     Nothing contained in these By-laws shall, subject to this <u>Section 9</u> and <u>Section 10</u>, (a) prevent any Member or any such Member's employer from (i) exercising (or

omitting to exercise) or seeking (or omitting to seek) to enforce or protect any of his, her or its rights as an individual creditor or other party-in-interest in any of these cases as it may deem appropriate or (ii) acquiring additional claims against the Debtors or (b) otherwise affect the ability of any Member or such Member's employer to act in his, her or its capacity as an individual creditor or other party-in-interest as he, she or it deems appropriate.

10. **CONFIDENTIALITY OF INFORMATION**

10.1.    Each Member agrees that it will use, and will ensure its Representatives (defined below) use, Confidential Information solely for the purpose described in <u>Section 8</u>.

10.2.    All information, irrespective of form or medium of communication, including, without limitation:  (a) communications and discussions (including in each meeting of the Committee and minutes thereof) among Members in their capacity as such and communications among Committee Professionals and the Committee, including information regarding specific positions taken by Members; (b) information or documents generated by the Committee or any of the Committee Professionals, or by any Member, or counsel or advisor to any Member for use of the Committee, whether or not based on or containing confidential information of a third party ((a) and (b) shall mean "<u>Confidential Committee Communications</u>"); (c) any documents, oral and written communications, electronic correspondence, all information posted in any electronic data room, in each case obtained by or made available to Members or their Representatives (as defined below) as a result of or in connection with their service on the Committee that is provided on a confidential basis; and (d) any information or material received from the PA Officer, the Wind-Down Debtors or their Representatives, or any other party on a confidential basis that is not available to the public, including, without limitation, information concerning the Debtors' or Wind-Down Debtors' and certain of their affiliates' assets, liabilities, business operations, business practices, business plans, financial projections, financial and business analyses, intellectual property, trade secrets, the investigation conducted by the Special Committee as to certain Retained Causes of Action, any confidential Plan Supplement document, and any other documents prepared by the PA Officer, the Wind-Down Debtors or their affiliates

or their Representatives (collectively, with any notes, analyses, reports, models, forecasts, projections, compilations, studies, interpretations, documents, or records to the extent containing, based upon or derived from any such information, in whole or in part, whether generated by the Members, or otherwise (including all summaries thereof or information derived therefrom)) (together with Confidential Committee Information, the "Confidential Information") is confidential and shall not be disclosed or revealed to third parties in any manner whatsoever (including via (i) electronic mail used or maintained by a Member in any personal or professional e-mail account(s), (ii) text messages and instant messages via cellular telephone or any other electronic communication platform or service in any form used, maintained, or created by a Member, or (iii) online posting on a Member's personal or professional social media profiles).

Notwithstanding the foregoing, "Confidential Information" shall not include information that:  (A) is available to, or was in the possession of, a Member, on a non-confidential basis independently from the receipt of such information in its capacity as a Member or its capacity, if any, as a member, employee, or employer of an Appointing Party; (B) is available to the public other than as a result of a breach of any of the provisions of this Section 10; (C) becomes independently available to a Member by a means other than service on or in connection with its membership on the Committee so long as the Member's receipt of such information is not, to the knowledge of such Member, governed by any other confidentiality provisions or agreements; or (D) was or is independently developed by such Member without use of, or reference to, any Confidential Information. The use and disclosure (or non-disclosure) of Confidential Information received by a Member from an Appointing Party or its Representatives outside of its capacity as a Member and pursuant to a separate agreement between such Member and the Appointing Party that is unrelated to such Member's service on the Committee shall be governed by the terms of such separate agreement and not subject to the confidentiality provisions hereof.

**10.3.**    Notwithstanding the foregoing provisions of this Section 10, a Member may share any Confidential Information:  (a) with other Members; (b) with the PA Officer; (c) with Committee Professionals and such Member's or such Member's employer's professional

advisors, attorneys, financial consultants, auditors, fund administrators, regulators and employees (including employees of affiliates of such Member or such Member's employer), directors, officers or affiliates (collectively, "Representatives") who reasonably require such information to discharge the responsibilities of such Member as a Member of the Committee or as part of his or her job responsibilities with such Member's employer; *provided, however,* that with respect to disclosure to any non-legal outside advisors or auditors of a Member, such Representatives agree in writing to be, and are, bound by these confidentiality provisions and this obligation of confidentiality; (d) when required by law, rule, regulation or court (collectively, "Law"), only as to such portion of the Confidential Information as is required to be disclosed and is determined to be required to be disclosed by the disclosing Member, in consultation with counsel and upon notice to the Committee to the extent such notice is permitted by Law; (e) where requested by any regulatory authority or internal or outside auditor; (f) with respect to Confidential Information that is not Confidential Committee Information, with the Litigation Oversight Committee; (g) with a third party, provided that a confidentiality agreement reasonably acceptable to the Committee and, if related to Confidential Information provided to the Committee by the PA Officer, the PA Officer, is duly executed with such third party (it being agreed and understood that any such confidentiality agreement shall contain third-party beneficiary rights for the PA Officer if any Confidential Information of the Wind-Down Debtors and/or the PA Officer will be provided thereunder); and (h) in the context of court proceedings, after such Member has sought an order providing that such information shall be filed under seal and has given notice of the filing of such motion to the Committee.

10.4.    Upon the resignation or removal of a Member, such Member shall promptly return to the Committee or certify in writing the destruction of written Confidential Information (including copies thereof) that was received by the Member in his or her capacity as a Member and in the course of his or her tenure as a Member of the Committee, or affirmatively state in writing (including electronic mail) that a good faith effort was made by the Member to destroy all such material. Notwithstanding the foregoing, a Member shall not be required to

return or destroy Confidential Information that it deems appropriate to retain for the purposes of compliance with applicable Law, professional obligations or established document retention policies, provided that all such retained Confidential Information shall remain subject to the confidentiality provisions herein.

10.5.    Each Member hereby acknowledges that it may be receiving material, non-public information regarding the Company and certain of its subsidiaries and Affiliates, and that the trading of securities while in possession of such information is subject to the Member's fiduciary duties and may be restricted in accordance with federal and state securities laws.

10.6.    Notwithstanding the resignation or removal of a Member, such Member shall continue to be bound by this Section 10.

10.7.    If any Member or its Representative(s) violates the provisions of this Section 10, the Committee, by majority vote (or subject to order of the Bankruptcy Court), or the PA Officer, in accordance with the terms and provisions of these By-laws and the Plan Administration Agreement, may remove such Member from Committee membership. Pending such formal removal, the Member shall be excused from all Committee meetings. With regard to non-public information or materials the Committee receives that, thereafter, do not remain non-public or confidential, except through disclosure by a Member in violation of this Section 10, Members may use such information or materials without ascertaining if the chosen use is consistent with a majority decision or intent of the Committee. Members shall not disclose the internal voting or deliberative processes of the Committee.

10.8.    The obligations under this Section 10 shall cease to be of any further force and effect on the date that is one year from the date when both the Committee and the Litigation Oversight Committee have been discharged in accordance with their respective bylaws and the Plan.

## 11.    <u>EXPENSES</u>

11.1.    **<u>Expenses and Fees.</u>** Each Member shall be responsible for the payment of any expenses incurred by such Member in connection with Committee business; *provided,*

*however,* that, after submitting an itemized list of reimbursable expenses to the PA Officer, each Member shall be reimbursed by the Wind-Down Debtors from the Wind-Down Reserve, subject to the Wind-Down Budget, for reasonable expenses incurred by him or her in connection with performing his or her responsibilities as a Member (including for each Member, one alternate representative designated in accordance with <u>Section 1.3</u>). For the avoidance of doubt, the Committee shall not pay any fees for professional advisors to any individual Member or any Appointing Party.

## 12.    <u>DISCHARGE</u>

**12.1.**    The Committee shall be discharged and dissolved, and the service of the Members completed when the Plan has been fully administered, the Wind-Down Debtors and their non-Debtor subsidiaries (together with the Debtors, the "<u>Company</u>") are fully and finally wound down, liquidated, dissolved or otherwise terminated pursuant to applicable Law, and the Chapter 11 Cases have been closed.  In such instance, the Committee shall have no further liabilities or responsibilities, and the Committee shall be terminated.

## 13.    <u>COMMON INTEREST PRIVILEGE</u>

**13.1.**    Consistent with their fiduciary duties, the Committee agrees to work with the Wind-Down Debtors, the PA Officer, and the Litigation Oversight Committee to satisfy the PA Officer's and the Committee's duties under the Plan and the Plan Administration Agreement and to maximize the return of value in-kind to the creditors of the Debtors and their estates.

**13.2.**    Based on the duties described here, the Members understand and acknowledge that the Committee (on the one hand) and the PA Officer, Wind-Down Debtors, or Litigation Oversight Committee (on the other hand) have certain common, mutual and interrelated legal rights and obligations in connection with the Chapter 11 Cases, the transactions provided for under the Plan, the Retained Causes of Action, and the wind-down of the Company's entities. In furtherance of those common and interrelated legal rights and obligations, the Committee needs and wishes to ensure that it is free to share and exchange certain information with the Wind-Down Debtors, the PA Officer or the Litigation Oversight Committee

- 17 -

and their respective Representatives that may be necessary and appropriate without waiving the protections of any applicable privilege, doctrine, immunity or protection from discovery or disclosure.

## 14.    LIABILITY OF COMMITTEE

**14.1.    Committee Liability.** The Committee, the Members, the PA Officer, the Appointing Parties and their respective professionals and agents shall not in any way be liable for any acts or omissions to act with respect to any of the matters contemplated by these By-laws except by reason of their gross negligence, willful misconduct, fraud or a criminal acts in the performance of their duties under the Plan or any act or omission that is otherwise inconsistent with the Plan or these By-laws.

**14.2.    Indemnification.** The Wind-Down Debtors shall indemnify the Committee, the Members, the PA Officer, the Appointing Parties and their respective alternate representatives, professionals and agents, and hold them harmless, from and against any and all liabilities, expense, claims, damages and losses incurred by any of them as a direct result of actions taken or omissions to act by them in such capacity or otherwise related to the Chapter 11 Cases or the Plan except by reason of their gross negligence, willful misconduct, fraud or criminal acts. Any dispute regarding such indemnification under this Section 14 shall be resolved by the Bankruptcy Court, which shall retain jurisdiction over matters relating to the indemnification provided under this Section 14.

## 15.    RULES OF PROCEDURE

**15.1.    Procedure.** The Chair shall preside over each Committee meeting in a manner that promotes fairness, a full opportunity for discussion and analysis of all business coming before the Committee, and a full opportunity for each Member to express its view. Parliamentary procedures and any formal "Rules of Order" shall not be followed.

**15.2.    Enforcement.** Each Appointing Party shall have the right of enforcement of the provisions hereof in the Bankruptcy Court until the Effective Date.

16.    **INFORMATION**

16.1.    **Privileges and Obligation to Respond to Ongoing Investigations.**

**(a)** Upon the Effective Date, as set forth in the Plan, all attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Wind-Down Debtors (any such privilege or protection, a "Privilege"), including, but not limited to, Privileges transferred to the Wind-Down Debtors from the Debtors, shall vest in the PA Officer solely in his or her capacity as such (and any other Person whom the PA Officer, with the consent of the Committee, may designate).

**(b)** Pursuant to Federal Rule of Evidence 502(d) (to the extent Rule 502(d) is relevant, notwithstanding the fact that the Wind-Down Debtors and the PA Officer are joint holders of certain attorney-client privileges, work product protections or other immunities or protections from disclosure), no Privileges shall be waived by disclosure between or among any of the Wind-Down Debtors, the PA Officer, the Committee Professionals, the Litigation Oversight Committee and/or the Committee of information that is subject to any Privilege or any Privilege jointly held by the Wind-Down Debtors and the PA Officer.  The Committee may request, and the PA Officer shall provide, any information that is confidential or subject to Privilege and that is reasonably requested in connection with the Committee's performance of its duties set forth in Section 8.  The PA Officer shall be authorized and permitted to share such information (subject to the obligation of confidentiality set forth in Section 10 and the common interest privilege set forth in Section 13) without waiving any applicable Privilege or violating any duty of confidentiality.

**(c)** If the Committee or any Member receives a request from a third party to disclose information that is subject to any Privilege (including Confidential Committee Information), the party or parties who receives such request will (A) pursue all reasonable steps to maintain the applicable Privilege, including, if necessary, by seeking a protective order against and/or otherwise objecting to the production of such material, (B) promptly notify the PA Officer or the Committee, as the case may be, (C) allow the PA Officer or the Committee, as the case

- 19 -

may be, a reasonable opportunity under the circumstances to protect its Privileges and interests at such party's sole expense, including by seeking a protective order against and/or otherwise objecting to the production of such material, and (D) unless required by law, not disclose the materials in question unless and until any objection raised by the PA Officer or the Committee is resolved in favor of disclosure. For the avoidance of doubt, nothing herein is intended to limit the PA Officer's obligations to seek, and be granted, consent prior to a voluntary waiver of any Privilege held by the Wind-Down Debtors.

16.2.    **Reliance on Debtors for Information.** It is the responsibility of the Wind-Down Debtors, pursuant to, among other things, their cooperation obligations established in the Plan, to exercise commercially reasonable efforts to provide to the Committee reasonably complete and accurate information regarding the Wind-Down Debtors' assets and wind-down activities. The PA Officer, Members and Committee Professionals shall be entitled to rely on such information supplied by the Wind-Down Debtors or the PA Officer and shall not be held liable to any party for any incompleteness or inaccuracy of such information.

17.    **OTHER**

17.1.    **Amendment.** These By-laws shall become effective upon the Effective Date of the Plan, and may only be amended, waived or repealed, in writing, by the unanimous consent of all Members.

17.2.    **Action by Members in Their Individual Capacity.** Nothing contained in these By-laws (subject to confidentiality and disclosure related restrictions contained in the By-laws) shall prevent any Member from exercising his, her or its rights as a creditor or party in interest in the Debtors' cases or from taking any action in his, her or its individual capacity as it deems appropriate.  Individual Members are permitted to engage independent legal counsel, who shall be deemed a Representative of such Member and be bound by Section 10.  Individual Members also may retain their own financial advisor professionals, provided that disclosure of Confidential Information to such advisors and participation of any non-legal advisor to a

Member in Committee meetings requires (i) such advisor to agree to be bound by the terms of Section 10 and (ii) the approval of a majority vote of the other Members.

17.3.    **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

17.4.    **Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over these By-laws to the fullest extent permitted.

[SIGNATURE PAGE FOLLOWS]

**Signature Page for By-laws of the Wind-Down Oversight Committee of Genesis Global Holdco, LLC, et al., Chapter 11 Case No. 23-10063 (SHL)**

Approved by the undersigned initial Members as of [●], 2024:

**Initial Members**

By: _____
     Name:
     Title:

By: _____
     Name:
     Title:

By: _____
     Name:
     Title:

By: _____
     Name:
     Title:

By: _____
     Name:
     Title:

By: _____
     Name:
     Title:

By: _____
     Name:
     Title:

# **EXHIBIT N**

## **Gemini Reserve Principles**

## Gemini Reserve Principles

Articles I.A.10 and 119 of the *Debtors' Amended Joint Chapter 11 Plan* [Docket No. 1325] (as may be amended, modified, revised, or supplemented from time to time, the "Plan")[1] provide that the amount of Gemini GBTC Shares and Additional GBTC Shares that must be held in the Gemini GBTC Shares Reserve and the Additional GBTC Shares Reserve, respectively, shall be established in accordance with these "Gemini Reserve Principles".

The Gemini Reserve Principles set forth herein reflect the agreement of Gemini, the Debtors, the Committee, and the Ad Hoc Group. The Gemini Reserve Principles are integral to, and are considered part of, the Plan. If the Plan is confirmed, the Gemini Reserve Principles will be approved by the Bankruptcy Court pursuant to the Confirmation Order. The Debtors and Gemini each reserve all rights to jointly amend, modify, or supplement these Gemini Reserve Principles in accordance with the terms of the Plan, including, without limitation, solely with the Ad Hoc Group's Consent and the Committee's Consent.

For the avoidance of doubt, nothing in the Gemini Reserve Principles affects the rights or defenses of the Debtors, the Committee, the Ad Hoc Group, or Gemini in the pending adversary proceeding filed under Adv. Pro. 23-01192 (SHL) with respect to the Additional GBTC Shares and the Gemini GBTC Shares.

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

1. Additional GBTC Shares Reserve.

   a. Until the Gemini Additional Collateral Determination has occurred, the Additional GBTC Shares Reserve shall contain all of the Additional GBTC Shares or the proceeds thereof realized from any Monetization Transactions of the Additional GBTC Shares (subject to the terms and provisions of Paragraph 1(d) below).

   b. If required by the Gemini Additional Collateral Determination, the Debtors or the Wind-Down Debtors, as applicable, shall promptly, but under no circumstances later than five (5) Business Days following the Gemini Additional Collateral Determination or as otherwise directed by the Bankruptcy Court, transfer the Additional GBTC Shares or the proceeds thereof to the Gemini Distribution Agent consistent with the terms of the Gemini Additional Collateral Determination. For the avoidance of doubt, to the extent that the Debtors or the Wind-Down Debtors, as applicable, assert in writing[2] within five (5) Business Days following the Gemini Additional Collateral Determination, and Gemini agrees in writing with such assertion, that the Gemini Initial

---

1. Capitalized terms used but not defined herein shall have the meanings given to such terms in the Plan.

2. For purposes of the Gemini Reserve Principles, any writing may be provided via e-mail.

Value Allocation[3] exceeds the Asserted Gemini Claims Value[4], in each case calculated as of the date of the Gemini Additional Collateral Determination, (i) the Debtors or the Wind-Down Debtors, as applicable, shall not be required to transfer any such agreed excess amount of Additional GBTC Shares or proceeds thereof to the Gemini Distribution Agent and (ii) the so-agreed Additional GBTC Shares or the proceeds thereof shall (x) no longer be required to be held in reserve and (y) be available for distribution to Holders of Allowed General Unsecured Claims (including any Claims under Claim No. 406 to the extent Allowed) pursuant to the Plan (including, without limitation, pursuant to the Distribution Principles and the Gemini Lender Distribution Principles); *provided* that, if the Debtors, with the Committee's Consent and the Ad Hoc Group's Consent, or the Wind-Down Debtors, with the Wind-Down Oversight Committee's Consent, as applicable, and Gemini cannot agree on the excess amount of Additional GBTC Shares, or the proceeds thereof, within five (5) Business Days of the Debtors' or the Wind-Down Debtors' assertion of an excess, the Debtors, with the Committee's Consent and the Ad Hoc Group's Consent, or the Wind-Down Debtors, with the Wind-Down Oversight Committee's Consent, as applicable, or Gemini may seek a determination by the Bankruptcy Court of such excess, if any, on an expedited basis.

c.  If the Gemini Additional Collateral Determination is determined in favor of the Debtors, the Additional GBTC Shares Reserve or the proceeds thereof shall (i) no longer be required to be held in reserve and (ii) be available for distribution to Holders of Allowed General Unsecured Claims (including the Gemini Lenders) pursuant to the Plan (including, without limitation, pursuant to the Distribution Principles and the Gemini Lender Distribution Principles).

---

3.  "Gemini Initial Value Allocation" means the sum of (i) the value of the Gemini Reserved Coins using the Average Price, to the extent included in the calculation of the Gemini Asset Value; (ii) the value of the Gemini Earn Operations Assets using the Average Price; (iii) the value of the Additional GBTC Shares and the proceeds thereof as of the Gemini Additional Collateral Determination; and (iv) if, as of the Gemini Additional Collateral Determination, the Gemini GBTC Shares Determination is determined in favor of Gemini, the value of the Gemini GBTC Shares and the proceeds thereof (based on the value attributed to the Gemini GBTC Shares and the proceeds thereof in the Gemini Deficiency Claim Determination or, if the Gemini Deficiency Claim Determination has not occurred as of the Gemini Additional Collateral Determination, the value of the Gemini GBTC Shares on November 16, 2022 (i.e., $284,333,194.40) (the "November 16, 2022 Value")).

4.  "Asserted Gemini Claims Value" means, with respect to the Claims asserted in respect of the Secured Obligations in Claim Nos. 356 and 406, the aggregate value of such Claims to the extent they are Allowed and/or Disputed as of the specified calculation date; *provided* that (i) the Allowed and Disputed amount of such Claims shall be calculated as if any such Allowed and/or Disputed Claim that is asserted in a type of Digital Asset (including interest accrued on such Claims from the Petition Date to the date that is the later of the specified calculation date and six (6) months after the Effective Date at the rate (inclusive of both the loan fee and the late fee) set forth in the Gemini Earn Agreements) is converted into the equivalent U.S. dollar value using the price of the applicable Digital Asset on the specified calculation date; and (ii) if the Claims asserted in Claim No. 406 are Disputed as of the specified calculation date, the amount of Claim No. 406 shall be $25 million solely for purposes of calculating the Asserted Gemini Claims Value.

"Secured Obligations" has the meaning set forth in that certain Security Agreement, dated as of August 15, 2022, by and between GGC and Gemini, solely in its capacity as agent for the Gemini Lenders (as amended, restated, supplemented, waived, extended or otherwise modified from time to time).

d.   Notwithstanding anything to the contrary in the Plan, to preserve the value of the Additional GBTC Shares prior to the Gemini Additional Collateral Determination, the Debtors, with Gemini's Consent, the Ad Hoc Group's Consent, and the Committee's Consent, or the Wind-Down Debtors, with Gemini's Consent and the Wind-Down Oversight Committee's Consent, as applicable, may engage in one or more Monetization Transactions to all or a portion of Additional GBTC Shares held in the Additional GBTC Shares Reserve, and in the event that any such Monetization Transactions take place, the liquidated Additional GBTC Shares in the Additional GBTC Shares Reserve shall be replaced with the net proceeds realized from any such Monetization Transactions.

2.   <u>Gemini GBTC Shares Reserve</u>.

a.   Except as set forth in Paragraphs 2(b)–(d) below, until both the Gemini GBTC Shares Determination and the Gemini Deficiency Claim Determination have occurred, the Gemini GBTC Shares Reserve shall contain all of the Gemini GBTC Shares or the proceeds thereof realized from any Monetization Transactions of the Gemini GBTC Shares (subject to the terms and provisions of Paragraph 2(e) below).

b.   Until the Gemini GBTC Shares Determination has occurred, the Gemini GBTC Shares Reserve shall be reduced so that, as of each Distribution Calculation Date,[5] the Gemini Interim Value Allocation[6] shall not exceed the Asserted Gemini Claims Value, in each case calculated as of the applicable Distribution Calculation Date.

i.   Any Gemini GBTC Shares, or proceeds thereof, that are no longer required to be held in reserve pursuant to Paragraph 2(b) shall be transferred by Gemini or the Gemini Distribution Agent to the applicable Debtors or Wind-Down Debtors promptly, but under no circumstances later than five (5) Business

---

5.   "<u>Distribution Calculation Date</u>" means (i) for the initial Distribution Date, the date determined by the Debtors (in consultation with the Committee and, through the Ad Hoc Group Counsel, the PSA Creditors), the PA Officer (in consultation with the Wind-Down Oversight Committee), or as designated in a Final Order, and (ii) for each subsequent Distribution Date (if any), such date(s) determined by the PA Officer (in consultation with the Wind-Down Oversight Committee) or as designated in a Final Order.

6.   "<u>Gemini Interim Value Allocation</u>" means the sum of (i) the value of the Gemini Reserved Coins using the Average Price, to the extent included in the calculation of the Gemini Asset Value; (ii) the value of the Gemini Earn Operations Assets using the Average Price; (iii) to the extent that the Gemini Additional Collateral Determination is determined in favor of Gemini, the sum of (a) the value of the proceeds of the Additional GBTC Shares distributed, or to be distributed, to Holders of Allowed Gemini Lender Claims on or prior to Distribution Date for the applicable Distribution Calculation Date (valued in accordance with the Distribution Principles), and (b) the value of any Additional GBTC Shares not yet monetized as of the applicable Distribution Calculation Date; (iv) the value of the Distributable Assets distributed, or to be distributed, to Holders of Allowed Gemini Lender Claims on or prior to the Distribution Date for the applicable Distribution Calculation Date (valued in accordance with the Distribution Principles); and (v) the value of the Gemini GBTC Shares (based on the value attributed to the Gemini GBTC Shares in the Gemini Deficiency Claim Determination or, if the Gemini Deficiency Claim Determination has not occurred as of such Distribution Calculation Date, the November 16, 2022 Value of the Gemini GBTC Shares).

Days after the Excess GBTC Reconciliation Date[7]; *provided*, *however*, that the Gemini Distribution Agent and the Debtors, with the Ad Hoc Group's Consent and the Committee's Consent, or the Wind-Down Debtors, with the Wind-Down Oversight Committee's Consent, as applicable, may mutually agree in writing to set off any such excess reserve against the aggregate value of the Distributable Assets to be distributed to Holders of Allowed Gemini Lender Claims on the Distribution Date for the applicable Distribution Calculation Date.

   c.   If the Gemini GBTC Shares Determination occurs before the Gemini Deficiency Claim Determination:

       i.   If the Gemini GBTC Shares Determination is determined in favor of the Debtors, (x) Gemini or the Gemini Distribution Agent shall promptly, but under no circumstances later than five (5) Business Days following the Gemini GBTC Shares Determination or as otherwise directed by the Bankruptcy Court, transfer the Gemini GBTC Shares or the proceeds thereof to the applicable Debtors or Wind-Down Debtors and (y) the Gemini GBTC Shares or the proceeds thereof shall be available for distribution to Holders of Allowed General Unsecured Claims (including the Gemini Lenders) pursuant to the Plan (including, without limitation, pursuant to the Distribution Principles and the Gemini Lender Distribution Principles).

      ii.   If the Gemini GBTC Shares Determination is determined in favor of Gemini, (x) the Gemini GBTC Shares or the proceeds thereof contained in the Gemini GBTC Shares Reserve on the date of the Gemini GBTC Shares Determination shall no longer be required to be held in reserve, (y) the Gemini Distribution Agent shall distribute the proceeds of such Gemini GBTC Shares to Holders of Allowed Gemini Lender Claims on a *pro rata* basis in accordance with the Gemini Lender Distribution Principles, and (z) solely for purposes of making distributions on each applicable Distribution Date after the Gemini GBTC Shares Determination and prior to the Gemini Deficiency Claim Determination, (1) the allocation of Distributable Assets to each Holder of an Allowed Claim (other than an Allowed Gemini Lender Claim) on such Distribution Date in accordance with the Distribution Principles shall be determined by using the November 16, 2022 Value of the Gemini GBTC Shares to calculate the Remainder Gemini Lender Claims (as defined in the

---

7.   "Excess GBTC Reconciliation Date" means, in connection with each Distribution Calculation Date, the date on which Gemini and the Debtors, with the Ad Hoc Group's Consent and the Committee's Consent, or the Wind-Down Debtors, with the Wind-Down Oversight Committee's Consent, as applicable, mutually agree in writing as to the number of excess Gemini GBTC Shares or the value of the proceeds from the excess Gemini GBTC Shares to be transferred to the applicable Debtors or Wind-Down Debtors, taking into consideration the potential for setoff as described in Section 2(b); *provided* that, if the Debtors or the Wind-Down Debtors, as applicable, and Gemini cannot agree on the excess amount of Gemini GBTC Shares, or proceeds thereof, within five (5) Business Days of the applicable Distribution Calculation Date, the parties may seek a determination by the Bankruptcy Court of such excess, if any, on an expedited basis.

Distribution Principles), (2) the allocation of Distributable Assets to each Holder of an Allowed Gemini Lender Claim on such Distribution Date shall be determined by calculating the Remainder Gemini Lender Claims using, for purposes of valuing the Gemini GBTC Shares, the sum of (I) the value of the proceeds of the Gemini GBTC Shares distributed, or to be distributed, to Holders of Allowed Gemini Lender Claims on or prior to the applicable Distribution Calculation Date (valued in accordance with the Distribution Principles) and (II) the value of any Gemini GBTC Shares not yet monetized as of the Distribution Calculation Date, and (3) the Distributable Assets not allocated under the foregoing clauses (1) and (2) shall be held in reserve by the Debtors or the Wind-Down Debtors, as applicable, and distributed in accordance with the Gemini Deficiency Claim Determination.

d.   Following the occurrence of both the Gemini GBTC Shares Determination and the Gemini Deficiency Claim Determination, the remaining Gemini GBTC Shares Reserve, if any, shall be allocated pursuant to the terms of the Gemini GBTC Shares Determination and the Gemini Deficiency Claim Determination, as applicable, and distributed pursuant to the Plan (including, without limitation, pursuant to the Distribution Principles and the Gemini Lender Distribution Principles). For the avoidance of doubt, to the extent that, following such determinations, the Debtors or the Wind-Down Debtors, as applicable, assert in writing within five (5) Business Days following the later of the Gemini GBTC Shares Determination and the Gemini Deficiency Claim Determination (the "Final Calculation Date"), and Gemini agrees in writing with such assertion, that the Gemini Value Allocation[8] exceeds the Asserted Gemini Claims Value, in each case calculated using the Final Calculation Date, Gemini or the Gemini Distribution Agent shall promptly transfer any such excess (as agreed in writing between Gemini and the Debtors, with the Committee's Consent and the Ad Hoc Group's Consent, or the Wind-Down Debtors, with the Wind-Down Oversight Committee's Consent, as applicable) to the applicable Debtors or Wind-Down Debtors within five (5) Business Days of such agreement; *provided* that, if the Debtors, with the Committee's Consent and the Ad Hoc Group's Consent, or the Wind-Down Debtors, with the Wind-Down Oversight Committee's Consent, as applicable, and Gemini cannot agree on the excess amount, within five (5) Business Days of the applicable Debtors' or the Wind-Down Debtors' assertion of an excess, the Debtors, with the Committee's Consent and the Ad Hoc Group's Consent, or the Wind-Down Debtors, with the Wind-Down Oversight Committee's Consent, as applicable, or

---

8.   "Gemini Value Allocation" means the sum of (i) the value of the Gemini Reserved Coins using the Average Price, to the extent included in the calculation of the Gemini Asset Value; (ii) the value of the Gemini Earn Operations Assets using the Average Price; (iii) to the extent that the Gemini Additional Collateral Determination is determined in favor of Gemini, the sum of (a) the value of the proceeds of the Additional GBTC Shares distributed, or to be distributed, to Holders of Allowed Gemini Lender Claims on or prior to the Final Calculation Date (valued in accordance with the Distribution Principles), and (b) the value of any Additional GBTC Shares not yet monetized as of the Final Calculation Date; (iv) the value of the Gemini GBTC Shares as determined by the Gemini Deficiency Claim Determination; and (v) the value of the Distributable Assets distributed to Holders of Allowed Gemini Lender Claims on or prior to the Final Calculation Date (valued in accordance with the Distribution Principles).

Gemini may seek a determination by the Bankruptcy Court of such excess, if any, on an expedited basis.

e.  Notwithstanding anything to the contrary in the Plan, to preserve the value of the Gemini GBTC Shares prior to the occurrence of the Gemini Determinations, the Gemini Distribution Agent, with the prior written consent of the Debtors, with the Ad Hoc Group's Consent, and the Committee's Consent, or the Wind-Down Debtors, with the Wind-Down Oversight Committee's Consent, as applicable, may engage in one or more Monetization Transactions of all or a portion of the Gemini GBTC Shares held in the Gemini GBTC Shares Reserve, and in the event that any such Monetization Transactions take place, the liquidated Gemini GBTC Shares in the Gemini GBTC Shares Reserve shall be replaced with the net proceeds realized from any such Monetization Transactions.

# EXHIBIT O

## Gemini Lender Distribution Principles

**Gemini Lender Distribution Principles**

Articles I.A.105 and VI.B.1 of the *Debtors' Amended Joint Chapter 11 Plan* [Docket No. 989] (as may be amended, modified, revised, or supplemented from time to time, the "Plan")[1] provide that the Gemini Distribution Agent shall make or facilitate distributions to Holders of Allowed Gemini Lender Claims under the Plan.

The "Gemini Lender Distribution Principles" set forth herein reflect the agreement of Gemini and the Debtors, with the Committee's Consent and the Ad Hoc Group's Consent, regarding Gemini's performance of its role as the Gemini Distribution Agent. The Gemini Lender Distribution Principles are integral to, and are considered part of, the Plan. If the Plan is confirmed, the Gemini Lender Distribution Principles will be approved by the Bankruptcy Court pursuant to the Confirmation Order. The Debtors and Gemini each reserve all rights to jointly amend, modify, or supplement these Gemini Lender Distribution Principles in accordance with the terms of the Plan, including, without limitation, solely with the Ad Hoc Group's Consent and the Committee's Consent. The Gemini Lender Distribution Principles may not be amended, modified, or supplemented without the approval of Gemini.

1. <u>Distribution Passthrough</u>. With respect to any distribution made on account of the Gemini Master Claim[2] by the Debtors or the Wind-Down Debtors (as applicable), the Gemini Distribution Agent will distribute to each Holder of an Allowed Gemini Lender Claim the applicable portion of the relevant distribution consistent with the Distribution Principles, effectuating, in accordance with Article VI.B.1 of the Plan, any rebalancing transactions for the purpose of passing through, to the greatest extent practicable, distributions that are of the same type of Digital Asset claimed by such Holder of an Allowed Gemini Lender Claim. For the avoidance of doubt, the Gemini Earn Operations Assets shall be distributed to Holders of Allowed Gemini Lender Claims in accordance with the foregoing.

2. <u>Gemini GBTC Shares</u>. Subject to the Gemini Reserve Principles, to the extent that the Gemini GBTC Shares Determination is determined in favor of Gemini (or as otherwise mutually agreed in writing by Gemini and the Debtors, with the Committee's Consent and the Ad Hoc Group's Consent, or the Wind-Down Debtors, with the Litigation Oversight Committee's Consent, as applicable), the Gemini Distribution Agent shall use commercially reasonable efforts to convert the Gemini GBTC Shares into Cash or Digital Assets corresponding to the Gemini Digital Assets[3] (taking into consideration any other potential or actual distributions of assets from the Debtors or the Wind-Down Debtors (as applicable)) or to otherwise ensure equitable distributions to the Holders of

---

1. Capitalized terms used but not defined herein shall have the meanings given to such terms in the Plan.

2. "<u>Gemini Master Claim</u>" means the proof of claim, assigned Claim No. 356, filed against GGC by Gemini on behalf of the Gemini Lenders pursuant to the Bar Date Order.

3. "<u>Gemini Digital Assets</u>" means the Digital Assets claimed in the Gemini Master Claim.

Allowed Gemini Lender Claims. The Gemini Distribution Agent shall distribute such Cash and Digital Assets to the Holders of Allowed Gemini Lender Claims concurrently with the distributions from the Debtors or the Wind-Down Debtors (as applicable) and in a manner consistent with these Gemini Lender Distribution Principles.

3. <u>Distribution of Setoff Amount</u>. Subject to the Gemini Reserve Principles, the Gemini Distribution Agent shall distribute Cash and Digital Assets, obtained pursuant to Paragraph 2 hereof and in an amount equal to the Gemini GBTC Share Setoff Value[4] in the aggregate, to each Holder of an Allowed Gemini Lender Claim in proportion to such Holder's Setoff Percentage[5]; *provided, however*, that, to the extent the value of such Cash and Digital Assets (valued as of the date of the Gemini Deficiency Claim Determination) exceeds the Gemini GBTC Share Setoff Value, any such excess value shall be distributed in accordance with Paragraph 4 hereof.

4. <u>Distribution of Collateral Appreciation</u>. Subject to the Gemini Reserve Principles, to the extent applicable following the Gemini Deficiency Claim Determination, after accounting for distributions in respect of the Gemini GBTC Share Setoff Value in accordance with Paragraph 3 hereof, the Gemini Distribution Agent shall distribute Cash and Digital Assets, obtained pursuant to Paragraph 2 hereof and in an amount equal to the Gemini GBTC Share Appreciation Value[6] (if any) in the aggregate, to each Holder of an Allowed Gemini Lender Claim in proportion to such Holder's Appreciation Percentage[7]; *provided* that such Cash and Digital Assets will be valued as of the date of the Gemini Deficiency Claim Determination. Notwithstanding anything to the contrary herein, no Holder of an Allowed Gemini Lender Claim will receive a recovery greater than the full value, as of the date of the Gemini Deficiency Claim Determination, of the Digital Assets attributable to its portion of the Gemini Master Claim until all Holders of Allowed Gemini Lender Claims have recovered the full value of their Digital Assets as of the date of the Gemini Deficiency Claim Determination (taking into account (x) the value of any Distributable Assets distributed by the Debtors or the Wind-Down Debtors (as applicable) to Holders of Allowed Gemini Lender Claims in accordance with Paragraph 1 hereof and (y) the allocation of

---

4. "<u>Gemini GBTC Share Setoff Value</u>" means the value of the Gemini GBTC Shares as determined by the Gemini Deficiency Claim Determination.

5. "<u>Setoff Percentage</u>" means, as to each Holder of an Allowed Gemini Lender Claim, (i) the value of such Holder's portion of the Gemini Master Claim *divided by* (ii) the value of the Gemini Master Claim, each valued pursuant to the setoff date as determined by the Gemini Deficiency Claim Determination.

6. "<u>Gemini GBTC Share Appreciation Value</u>" means the difference between (i) the value of the Gemini GBTC Shares or the proceeds thereof as of the date of the Gemini Deficiency Claim Determination or, if the Gemini Distribution Agent has distributed any proceeds of the Gemini GBTC Shares to Holders of Allowed Gemini Lender Claims, the value of any Cash and Digital Assets distributed as of the date of such distribution, and (ii) the Gemini GBTC Share Setoff Value.

7. "<u>Appreciation Percentage</u>" means, as to each Holder of an Allowed Gemini Lender Claim, (i) the value of such Holder's portion of the Gemini Master Claim *divided by* (ii) the value of the Gemini Master Claim, each valued as of the date of the Gemini Deficiency Claim Determination.

the Gemini GBTC Share Setoff Value as set forth in Paragraph 3 hereof); *provided* that, if all Holders of Allowed Gemini Lender Claims have recovered the full value of their Digital Assets as of the date of the Gemini Deficiency Claim Determination, subject to the Gemini Reserve Principles, the Gemini GBTC Share Appreciation Value shall be distributed to the Holders of Allowed Gemini Lender Claims based on their Appreciation Percentage.

5. <u>Gemini Reserved Coins</u>. Concurrently with the initial distribution from the Debtors or the Wind-Down Debtors (as applicable), the Gemini Distribution Agent shall distribute the Gemini Reserved Coins, as set forth in the attached **Schedule A**, to each Holder of an Allowed Gemini Lender Claim in proportion to such Holder's Reserved Coin Percentage[8]; *provided*, *however*, that the Gemini Distribution Agent shall be authorized to rebalance the Gemini Reserved Coins in accordance with Article VI.B.1 of the Plan.[9]

---

8. "<u>Reserved Coin Percentage</u>" means, as to each Holder of an Allowed Gemini Lender Claim, (i) the value of such Holder's portion of the Gemini Master Claim *divided by* (ii) the value of the Gemini Master Claim, each valued using the Average Price.

9. Notwithstanding that the distribution of the Gemini Reserved Coins shall deemed a distribution on behalf of the Debtors or the Wind-Down Debtors, as applicable, the Gemini Master Claim shall not be reduced or offset by the Gemini Reserved Coins or distributions pertaining to them in any respect.

### Schedule A

**Gemini Reserved Coins**

| Coin List | Count |
|---|---|
| Amp (AMP) | 2,372,748.823604660 |
| Bitcoin (BTC) | 457.383110966580 |
| Multi Collateral Dai (DAI) | 1,855,610.309538650 |
| DogeCoin (DOGE) | 38,333,429.46439990 |
| Filecoin (FIL) | 0.00000000080 |
| Chainlink (LINK) | 109,377.2107158510 |
| Polygon (MATIC) | 1,183,437.459977260 |
| Solana (SOL) | 16,525.67398833310 |
| USD Coin (USDC) | 19,581,426.16581550 |
| Yearn.Finance (YFI) | 2.544557412717280 |