Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF FILING OF PLAN SUPPLEMENT
FOR THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

      **PLEASE TAKE NOTICE** that, on December 29, 2023, Genesis Global Holdco, LLC and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed the *Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* (ECF No. 1117), which included the following materials: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Members of the Litigation Oversight Committee and Wind-Down Debtors Oversight Committee; (c) the List of Intercompany Claims that Constitute Excluded Claims; (d) the Retained Causes of Action; (e) the Digital Assets Conversion Table; and (f) Justifications for Exculpated & Released Parties.[2]

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific PTE. LTD. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Debtors' Amended Joint Chapter 11 Plan* (ECF No. 989) (as may be amended, supplemented, or modified from time to time, the "Plan") or the *Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* (ECF No. 1031) (the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE** that, on January 6, 2024, the Debtors filed the following additional exhibits to the Plan Supplement: (a) the identity of the PA Officer and (b) the candidates for the New Board.

**PLEASE TAKE FURTHER NOTICE** that, on January 8, 2024, the Debtors filed the following additional exhibits to the Plan Supplement: (a) the Plan Administration Agreement; (b) the Litigation Oversight Committee Bylaws; (c) the Wind-Down Oversight Committee Bylaws; and (d) the New Governance Documents.

**PLEASE TAKE FURTHER NOTICE** that, on January 9, 2024, the Debtors filed, as an additional exhibit to the Plan Supplement, the Setoff Principles for Allowance of Certain Claims.

**PLEASE TAKE FURTHER NOTICE** that, on February 23, 2024, the Debtors filed the following additional exhibits to the Plan Supplement: (a) the Revised Plan Administration Agreement, (b) a blackline of the Revised Plan Administration Agreement against the Plan Administration Agreement filed on January 8, 2024, (c) the Revised Litigation Oversight Committee Bylaws, (d) a blackline of the Revised Litigation Oversight Committee Bylaws against the Litigation Oversight Committee Bylaws filed on January 8, 2024, (e) the Revised Wind-Down Oversight Committee Bylaws, (f) a blackline of the Revised Wind-Down Oversight Committee Bylaws against the Wind-Down Oversight Committee Bylaws filed on January 8, 2024, (g) the Gemini Reserve Principles, and (h) the Gemini Lender Distribution Principles.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file, as an additional exhibit to the Plan Supplement, the form of Cooperation Agreement.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expressly reserve the right, subject to the terms and conditions set forth in the Plan to alter, amend, modify, or supplement any document in the Plan Supplement and to file additional documents to be included in the Plan Supplement. Certain of the documents in the Plan Supplement remain subject to ongoing negotiations between the Debtors and other parties to those documents, and the Debtors and all such parties reserve their rights with regard to those documents. To the extent any document in the Plan Supplement is altered, amended, modified, or supplemented in any material respect, in accordance with the terms of the Plan, prior to the Confirmation Hearing (as defined below), the Debtors will file a blackline of such document with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that the forms of the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is approved, the documents in substantially the form contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

**PLEASE TAKE FURTHER NOTICE** that the hearing (the "Confirmation Hearing") will be held before the Honorable Sean H. Lane of the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, on February 26, 2024 at 9:30 a.m. (prevailing Eastern Time), to consider the confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court. Please take further notice that the Confirmation Hearing may be continued from time to time by

2

the Bankruptcy Court without further notice other than by such adjournment being announced in open court or by notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE** that parties wishing to appear or be heard at the Confirmation Hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances.

**PLEASE TAKE FURTHER NOTICE** that copies of all pleadings filed in these chapter 11 cases can be viewed and/or obtained: (i) by visiting the Debtors' case website at https://restructuring.ra.kroll.com/genesis/, (ii) otherwise from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, or by calling +1 888-524-2017 or (iii) accessing the Court's website at www.nysb.uscourts.gov. Note that a PACER password is needed to access documents on the Court's website.

| | |
|---|---|
| Dated: February 26, 2024<br>New York, New York | */s/ Sean A. O'Neal*<br>Sean A. O'Neal<br>Luke A. Barefoot<br>Jane VanLare<br>Thomas S. Kessler<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>*Counsel for the Debtors*<br>*and Debtors-in-Possession* |

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 21-11831 (SHL) |
| Debtors. | Jointly Administered |

**PLAN SUPPLEMENT FOR THE
DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

**TABLE OF CONTENTS**[2]

**Exhibit P:**   Form of Cooperation Agreement

*[Remainder of page intentionally left blank]*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific PTE. LTD. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Debtors' Amended Joint Chapter 11 Plan* (ECF No. 989) (the "Plan") or the *Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* (ECF No. 1031) (the "Disclosure Statement").

# EXHIBIT P

**Form of Cooperation Agreement**

**CONFIDENTIAL COOPERATION AGREEMENT AND GENERAL RELEASE**

**CONFIDENTIAL COOPERATION AGREEMENT AND GENERAL RELEASE** (the "<u>Agreement</u>"), dated [_____], 2024, sets forth the terms of the separation between you ("<u>**You**</u>") and Genesis Global Capital, LLC (the "<u>Company</u>" and, together with Genesis Global Holdco, LLC and its subsidiaries as the context so requires, the "<u>Company Group</u>"). Unless otherwise defined herein, capitalized terms shall have the meanings ascribed thereto in that certain Debtors' Amended Joint Chapter 11 Plan [Docket No. 989], as may be modified, amended, revised, or supplemented (the "<u>**Plan**</u>").

1. In exchange for the mutual covenants and promises set forth herein and the release (the "<u>Individual Release</u>") provided pursuant to the terms and provisions of Article VIII, Sections D and E, of the Plan, You agree to provide the Company Group, as well as its successors in interest, including, without limitation, the Wind Down Oversight Committee (the "<u>WDOC</u>") and the Litigation Oversight Committee (the "<u>LOC</u>"), with your full cooperation (<u>i.e.</u>, by phone, email, and/or in person) in good faith with respect to any matters relating to your duties and responsibilities (including, without limitation, providing any necessary information to the Company Group, the WDOC and the LOC) as reasonably requested by the Company, the WDOC or the LOC. In the event that (a) in the opinion of either the WDOC or the LOC, You fail to provide the full cooperation reasonably requested, the WDOC or the LOC, as the case may be, may request entry of an order of the Bankruptcy Court, upon notice to You and with your ability to contest such request, and such order being entered by the Bankruptcy Court and becoming a Final Order, notwithstanding the provisions of the Plan or any order confirming the Plan and authorizing the granting of the aforementioned releases, such release shall be deemed not to have been given and be void *ab initio*, and (b) the Company Group, the WDOC or the LOC requires your cooperation in accordance with this Paragraph 1, including, without limitation, in connection with any litigation or preparation therefor, the Company or the Wind Down Debtors will reimburse You for any reasonable out-of-pocket expenses that You properly incur in connection with your cooperation hereunder.

2. You will cooperate fully with the Company Group, the WDOC and the LOC in its prosecution, defense of or other participation in any investigation, administrative, judicial or other proceeding arising from any internal and/or external charge, complaint or other action which has been or may be filed. Nothing in this Agreement shall prohibit or restrict You from making any disclosure of information required or expressly protected by law, including initiating, testifying, assisting, complying or providing truthful testimony if required to do so by court order or legal or administrative process. You agree that, in the event You are subpoenaed or requested by any person or entity (including, but not limited to, any government agency) to give testimony (in a deposition, court proceeding or otherwise) which in any way relates to your employment by the Company Group, if legally permitted, You will give prompt notice of such request to the Company, the WDOC and the LOC, and, if legally permitted, will make no disclosure until the Company, the WDOC or the LOC, as the case may be, has had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

3. Should You be subject to investigative demands or legal action, or asked to testify by court order or legal or administrative process, for matters relating to your work for the Company or the Company Group, You will be indemnified as provided for in (i) the Amended and Restated Certificate of Incorporation and Amended and Restated Bylaws of SecondMarket, Inc.; (ii) the Amended and Restated Operating Agreement of Genesis Global Holdco, LLC, and Amended

and Restated Operating Agreement of Genesis Global Capital, LLC; or (iii) any other valid pre-existing indemnification agreements in place between You and the Company Group or between You and a member of the Company Group, as applicable, in each case, subject to the confirmation and effectiveness of the Plan for those companies of the Company Group that have filed for bankruptcy protection in the U.S. Bankruptcy Court.

4. In exchange for the mutual covenants and promises set forth herein and the Individual Release, You, for yourself, your successors, administrators, heirs and assigns (collectively referred to hereafter in this Agreement as "Releasors"), hereby knowingly and voluntarily release, waive and forever discharge the Company Group and their predecessors, successors, affiliates, assigns, shareholders, insurers, directors, officers, employees, agents and attorneys, whether past, present or future (the "Released Parties") from any and all actions, suits, debts, demands, damages, claims, judgments, liabilities, benefits, or other remedial measure of any nature, including costs and attorneys' fees, whether known or unknown, which exist or may exist up to and including the date of this Agreement, including but not limited to, all claims arising out of your relationship with or termination of employment by the Company Group, their subsidiaries, affiliates, and parent companies, predecessors, successors, assigns, or that are in any way connected with or related to any Company Group compensatory benefit plan, program, policy or arrangement, including, but not limited to, any claim:

(a) for breach of contract (expressed, implied or oral), quasi contract, detrimental reliance, wrongful or constructive discharge, impairment of economic opportunity, under common law or equity, any tort, any personal injury, under implied or express employment contracts and/or waiver, estoppel;

(b) under Title VII Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, as amended by the Older Workers Benefits Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Civil Rights Act of 1866 and 1991, the Equal Pay Act of 1963, the Employment Retirement Income Security Act of 1974, the Family and Medical Leave Act, the Fair Labor Standards Act, the Worker Adjustment and Retraining Notification Act, or their state or local equivalents;

(c) under the New York State Human Rights Law, the New York City Administrative Code, the New York Labor Law (including, but not limited to, the New York State Worker Adjustment and Retraining Notification Act, all provisions prohibiting discrimination and retaliation, and all provisions regulating wage and hour law), the New York State Correction Law, the New York State Civil Rights Law, Section 125 of the New York Workers' Compensation Law, or the New York Paid Family Leave Law;

(d) for compensation, salary, wages, overtime, bonuses, commissions, stock options, incentive compensation or similar benefit, units, or similar awards, grants or equity-based compensation or interests, severance pay, pension, vacation pay, paid time off, reimbursement, life insurance, employee benefit plans of the Company Group, or any employee fringe benefits;

(e) for any other state, federal or local law, statute, regulation or ordinance

    prohibiting employment discrimination, harassment or retaliation;

    (f)    under any policy, agreement, understanding or promise, written or oral, formal or informal, between the Company Group or any affiliate of a member of the Company Group and You; and

    (g)    for compensatory damages, punitive damages, or attorneys' fees, costs, disbursements and the like. You agree that, except for any claims in the immediately following paragraph in this Paragraph 4, You have received all compensation and interests, bonuses, overtime, incentives, commissions, stock options, incentive units, equity-based compensation or interests, expense reimbursements, paid vacation or other paid time-off, severance or other benefits owed to You by the Company Group and further agree that You have no claims against the Company Group for such salary, bonus, overtime, incentives, commissions, stock options, incentive units, equity-based compensation or interests, vacation pay or other paid time-off, severance or other benefits. You intend this release to be a general release of any and all claims to the fullest extent permissible by law. You acknowledge that the release set forth herein is essential and is a material term of this Agreement, and that without such release, no agreement would have been reached by the parties and any benefits or consideration under this Agreement would not have been paid.

Notwithstanding anything to the contrary contained in this Agreement, You do not waive (i) any claim or right based on any facts or set of facts that may arise after your execution of this Agreement; (ii) any claim or right You may have under this Agreement, including, without limitation, in respect of indemnification pursuant to Paragraph 3 hereof; (iii) any indemnification claims or rights under any pre-existing valid indemnification agreements between You and Company Group or between You and any affiliate of a member of the Company Group; (iv) any unemployment insurance claim; (v) any workers' compensation insurance benefits; (vi) continued participation in certain benefits under COBRA (and any state law counterpart); (vii) any claim for medical, hospital, surgical or physician's services benefits arising under the Company Group's applicable health insurance plan; (viii) any claims that cannot be waived as a matter of law, including any claims to accrued and unpaid base salary; (ix) any claims with respect to any Digital Currency Group Stock Appreciation Rights that you may hold on the date hereof; (x) any claims for accrued and vested benefits under any employee benefit plan of the Company Group that cannot be waived or rejected as a matter of law; or (xi) any amounts asserted in timely filed proofs of claim against the Company Group, as to which all parties reserve their respective rights, claims, objections and defenses.

5.    The Releasors agree not to bring any action, suit or proceeding whatsoever (including the initiation of governmental proceedings or investigations of any type) against any of the Released Parties for any matter or circumstance concerning which the Releasors have released the Released Parties under this Agreement. Further, the Releasors agree not to encourage any other person or suggest to any other person that he, she or it institute any legal action against the Released Parties. Nothing in this Agreement prevents or prohibits You from communicating with, disclosing factual information to, participating in an investigation or proceeding conducted by, or filing a charge, complaint or claim with law enforcement or a governmental agency such as the Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Securities and Exchange Commission, the Financial Industry

3

Regulatory Authority, any other securities regulatory agency or self-regulatory authority, the New York State Division of Human Rights, or their applicable state or local equivalents. To the fullest extent permitted by law, You agree that, if any claim, charge, complaint or action against the Company Group and Released Parties covered by the release provision of this Agreement is brought by You, for your benefit, or on your behalf, You expressly waive any claim to any form of monetary or other damages, including attorneys' fees and costs, or any other form of personal recovery or relief from the Company Group or Released Parties based upon any such claim, charge, complaint or action, except for any right You may have to receive an award from a government agency for information provided to it or from receiving an award for information provided to the staff of the Securities and Exchange Commission or any other securities regulatory agency or authority. You further agree and covenant that should any person, organization, or other entity file, charge, claim, sue, or cause or permit to be filed any civil action, suit or legal proceeding, or if any person, organization, or other entity has filed, charged, claimed, sued, or caused or permitted to be filed any civil action, suit or legal proceeding, against any of the Released Parties involving any matter occurring at any time in the past, You are not entitled to and will not seek or accept personal equitable or monetary relief in such civil action, suit or legal proceeding, to the fullest extent permitted by law. You further agree and covenant that You waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding asserted or brought against any of the Released Parties. You further represent and agree that You will immediately notify the Company if You have filed or pursued any complaints, charges or lawsuits with any court, governmental or administrative agency or arbitrator against the Released Parties asserting any claims that are released in Paragraph 4 above, and acknowledge that there are none pending as of the date You sign this Agreement. Notwithstanding the foregoing, nothing herein shall prevent You or the Company from initiating any action required to enforce the terms of this Agreement.

6. [By the terms of this Paragraph 6, You acknowledge that You have been advised by the Company, in writing, to consult with an attorney prior to signing this Agreement. In addition, You acknowledge that You have been given a period of twenty one (21) days to consider the Agreement, and You may accept the Agreement (and waive the remainder of such consideration period) by signing it and delivering it to Head of People of the Company, at any time, up to and including the forty-fifth day after You have received the Agreement.

7. You understand that You have the right to revoke this Agreement within a period of seven (7) days following You signing the Agreement, by submitting such revocation, in writing, to the Head of People of the Company. You further understand that the Agreement shall not become effective or enforceable until the seven-day revocation period has expired, You have not revoked, and it has been counter-signed by the Company.]

8. You represent that You fully understand your right to review all aspects of this Agreement with an attorney of your choice, that You have had the opportunity to consult with an attorney of your choice, that You have carefully read and fully understand all the provisions of this Agreement and that You are freely, knowingly and voluntarily entering into this Agreement.

9. This Agreement shall inure to the benefit of and be binding upon the Company Group, its successors and assigns, including the PA Officer, and shall inure to the benefit of and be binding upon You and your legal representatives and heirs.

10. This Agreement sets forth the entire agreement of the parties hereto concerning its subject matter, and supersedes any and all prior agreements, offer letters discussions, understandings, promises and expectations previously entered into by the Company Group and You or presented by the Company Group to You, excepting any valid pre-existing indemnification agreements between You and the Company Group or between You and any affiliate of a member of the Company Group.

11. The laws of the State of New York will apply to any dispute concerning this Agreement and/or your employment. Any dispute concerning or pertaining to this Agreement or the claimed breach of this Agreement and/or your employment shall take place only in state or federal court in the proper jurisdiction in New York. If any part of this Agreement should ever be determined to be unenforceable, it is agreed that this will not affect the enforceability of any other part or the remainder of this Agreement; provided, however, that upon a finding in a judicial proceeding that the release and waiver provided for in this Agreement is illegal, void or unenforceable, You agree, at the Company's (or the Wind Down Debtors') request, to execute a release and waiver of comparable scope that is legal and enforceable.

12. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The facsimile, email, or other electronically delivered signatures of the parties, including without limitation, electronic transmission of signatures of the parties complying with the U.S. federal ESIGN Act of 2000, the Uniform Electronic Transactions Act or other applicable law, shall be deemed to constitute original signatures and, when so signed, will be deemed to have been duly and validly executed and delivered, and will be valid and effective for all purposes, and facsimile or electronic copies hereof shall be deemed to constitute duplicate originals.

13. All Released Parties under this Agreement who are not signatories to this Agreement shall be deemed to be third party beneficiaries of this Agreement to the same extent as if they were signatories hereto.

14. No amendment, modification or alteration of the terms and provisions of this Agreement shall be binding unless the same shall be in writing and duly executed by You and the Company. No waiver of any of the provisions of this Agreement shall be deemed to or shall constitute a waiver of any other provisions hereof. No delay on the part of any party hereto in exercising any right, power or privilege hereunder shall operate as a waiver hereof.

15. In the event that any one or more of the provisions of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.

16. The paragraph and other headings contained in this Agreement are for the convenience of the parties hereto only and are not intended to be a part hereof or to affect the meaning or interpretation hereof.

--Signature Page Follows--

     If this Agreement correctly sets forth your understanding of our agreement with respect to the foregoing matters, please so indicate by signing below on the line provided for your signature.


By: _____
   A. Derar Islim
   Interim CEO
   Genesis Global Capital, LLC

I have read, understand and agree to all of the terms of this Agreement.


By: _____
   Name: [\_\_\_\_\_]
   Date: