CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
Andrew Weaver
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF FILING OF PROPOSED FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND ORDER (I) CONFIRMING THE DEBTORS'
AMENDED JOINT CHAPTER 11 PLAN AND (II) GRANTING RELATED RELIEF**

> **PLEASE TAKE NOTICE** that, on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and certain of its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

> **PLEASE TAKE FURTHER NOTICE** that, on January 20, 2023, the Debtors filed the *Debtors' Joint Chapter 11 Plan* [ECF No. 20].

> **PLEASE TAKE FURTHER NOTICE** that, on June 13, 2023, the Debtors filed a revised plan [ECF No. 427] and the *Disclosure Statement with Respect to the Amended Joint*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

*Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* [ECF No. 429] (as amended, modified, or supplemented from time to time, the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE** that, on November 27, 2023, the Debtors filed a further revised (i) plan [ECF No. 979] and (ii) Disclosure Statement [ECF No. 980].

**PLEASE TAKE FURTHER NOTICE** that, on November 28, 2023, the Debtors filed the solicitation version of the Plan [ECF No. 989] (as modified, amended, or supplemented from time to time, the "Plan").

**PLEASE TAKE FURTHER NOTICE** that, on December 6, 2023, the Court entered the *Order Authorizing Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto*, ECF No. 1027, approving the Disclosure Statement, solicitation procedures, and solicitation materials, including notices, forms, and ballots.

**PLEASE TAKE FURTHER NOTICE** that, on December 6, 2023, the Debtors filed the solicitation version of the Disclosure Statement [ECF. No. 1031].

**PLEASE TAKE FURTHER NOTICE** that, on February 15, 2024, the Debtors filed a further revised Plan [ECF No. 1325].

**PLEASE TAKE FURTHER NOTICE** that, on February 26, 2024, the Debtors filed a further revised Plan [ECF No. 1392].

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the *Proposed Findings of Fact, Conclusions of Law, and Order (I) Confirming the Debtors' Amended Joint Chapter 11 Plan and (II) Granting Related Relief* (the "Proposed Confirmation Order"), which is attached hereto as **Exhibit A**. The Proposed Confirmation Order does not reflect all of the comments by the official committee of unsecured creditors (the "Committee"), and all rights of the Committee with respect to the Proposed Confirmation Order are expressly reserved. Following the Confirmation Hearing (as defined below), the Debtors expect to ask the Court to enter the Proposed Confirmation Order, which may be further revised.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider approval of the Plan commenced on **February 26, 2024 at 9:30 a.m. (prevailing ET) and will continue on February 27, 2024 at 11:00 a.m. (prevailing ET) and February 28, 2024 at 11:00 a.m. (prevailing ET)** (collectively, the "Confirmation Hearing"). The Confirmation Hearing will be held in person before the Honorable Sean H. Lane, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601.

**PLEASE TAKE FURTHER NOTICE** that while parties wishing to attend the hearing virtually via Zoom must register for the Confirmation Hearing on or before each day of the Confirmation Hearing using the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who

made eCourt Appearances, using the email addresses submitted with those appearances. Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so by calling the following muted, listen-only number: 1-929-205-6099, Access Code: 92353761344#.

        **PLEASE TAKE FURTHER NOTICE** that parties who are not in the courtroom, including any parties making an appearance via Zoom and members of the media, will **not** be permitted to participate or listen in to any evidentiary portion of the Confirmation Hearing unless permission is granted by the Court. The Debtors will file a notice in advance of closing arguments notifying parties of the time when the Zoom will commence to broadcast closing arguments at the Confirmation Hearing.

        **PLEASE TAKE FURTHER NOTICE** copies of the Plan, Disclosure Statement, the Proposed Confirmation Order, and all pleadings filed in these chapter 11 cases may be viewed and/or obtained (i) by accessing the Court's website at www.nysb.uscourts.gov or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, at https://restructuring.ra.kroll.com/genesis or by calling +1 212 257 5450. Note that a PACER password is needed to access documents on the Court's website.

| | | |
|---|---|---|
| Dated: | February 26, 2024<br>New York, New York | */s/ Jane VanLare*_____<br>Sean A. O'Neal<br>Luke A. Barefoot<br>Jane VanLare<br>Thomas S. Kessler<br>Andrew Weaver<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>*Counsel to the Debtors and Debtors-in-Possession* |

## Exhibit A

**Proposed Confirmation Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

## [PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) CONFIRMING THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN AND (II) GRANTING RELATED RELIEF

WHEREAS, the above-captioned debtors and debtors-in-possession (collectively, the "***Debtors***") having:

a.      commenced, on January 19, 2023 (the "***Petition Date***"), the Chapter 11 Cases[2] (the "***Chapter 11 Cases***") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***");

b.      filed, on January 20, 2023, the *Declaration of A. Derar Islim in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* [ECF No. 17] (the "***Islim First Day Declaration***");

c.      filed, on January 20, 2023, the *Declaration of Paul Aronzon in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* [ECF No. 19] (the "***Aronzon First Day Declaration***");

d.      filed, on January 20, 2023, the *Declaration of Michael Leto in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2* [ECF No. 28] (the "***Leto First Day Declaration***," and together with the Islim First Day Declaration and the Aronzon First Day Declaration, the "***First Day Declarations***");

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]      Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Plan. The rules of interpretation set forth in Article I.B of the Plan apply.

e.      continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

f.      filed, on January 20, 2023, the *Debtors' Joint Chapter 11 Plan* [ECF No. 20];

g.      obtained, on April 4, 2023, the *Order (I) Establishing Bar Dates for Submitting Proofs of Claim, (II) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (III) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (IV) Providing Certain Supplemental Relief* [ECF No. 200] (the "***Bar Date Order***");

h.      filed, on June 13, 2023, a revised plan [ECF No. 427] and the *Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* [ECF No. 429] (as amended, modified, or supplemented from time to time, the "***Disclosure Statement***");

i.      filed, on June 29, 2023, the *Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices, and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [ECF No. 461] (as amended, modified, or supplemented from time to time, the "***Disclosure Statement Motion***");

j.      filed, on October 24, 2023, a further revised plan [ECF No. 838];

k.      filed, on October 25, 2023, a further revised Disclosure Statement [ECF No. 839];

l.      filed, on November 4, 2023, a further revised (i) plan [ECF No. 886] and (ii) Disclosure Statement [ECF No. 887];

m.      filed, on November 7, 2023, a further revised (i) plan [ECF No. 897] and (ii) Disclosure Statement [ECF No. 900];

n.      filed, on November 17, 2023, a further revised (i) plan [ECF No. 948] and (ii) Disclosure Statement [ECF No. 950];

o.      filed, on November 20, 2023, an amended notice (the "***Amended Disclosure Statement Hearing Notice***") setting forth, among other things, the date and time set for the hearing to consider the adequacy of the Disclosure Statement (the "***Disclosure Statement Hearing***") and the deadlines for filing objections to the Disclosure Statement [ECF. No. 958];

p.      filed, on November 27, 2023, a further revised (i) plan [ECF No. 979] and (ii) Disclosure Statement [ECF No. 980];

q.      filed, on November 28, 2023, the solicitation version of the *Debtors' Amended Joint Chapter 11 Plan* [ECF No. 989] (as subsequently amended, modified, or supplemented, the "***Plan***");

2

r.    obtained, on December 6, 2023, the *Order Authorizing Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [ECF No. 1027] (the "***Disclosure Statement Order***");

s.    filed, on December 6, 2023, the solicitation version of the Disclosure Statement [ECF. No. 1031];

t.    distributed, in accordance with the Disclosure Statement Order, (i) the solicitation version of the Disclosure Statement; (ii) the Plan; (iii) the ballots (the "***Ballots***") for voting on the Plan to Classes 3, 4, 5, and 6 against GGH, Classes 3, 4, 5, 6, and 7 against GGC and Classes 3, 4, 5, and 6 against GAP under the Plan (collectively, the "***Voting Classes***"); and (iv) the Notices of Non-Voting Status (as defined in the Disclosure Statement Order);

u.    served, on December 6, 2023, the notice (the "***Confirmation Hearing Notice***") setting forth, among other things, the date and time set for the hearing to consider the Confirmation of the Plan (the "***Confirmation Hearing***") and the deadlines for filing objections to the Plan upon all known Holders of Claims and the parties on the Debtors' master service list and posted the Confirmation Hearing Notice on the Debtors' public website for the Chapter 11 Cases;

v.    caused notice of the Confirmation Hearing to be published on December 14, 2023, in *USA Today* [ECF No. 1065] and *The New York Times* [ECF No. 1066] (together, the "***Confirmation Hearing Publication Notices***");

w.    filed, on December 29, 2023, the *Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1117] (the "***First Plan Supplement***");

x.    filed, on January 6, 2024, the *Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1131] (the "***Second Plan Supplement***");

y.    filed, on January 8, 2024, the *Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1137] (the "***Third Plan Supplement***");

z.    filed, on January 9, 2024, the *Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1144] (the "***Fourth Plan Supplement***");

aa.   filed, on January 25, 2024, the *Declaration of Alex Orchowski on Behalf of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Amended Chapter 11 Plan* [ECF No. 1295] (the "***Voting Report***"), which was amended on February 12, 2024 (the "***Amended Voting Report***" and, together with the Voting Report, the "***Voting Reports***") and which includes a tabulation of votes cast on the Plan by timely and properly completed Ballots received by Kroll Restructuring Administration LLC

3

("***Kroll***") in its capacity as the Solicitation Agent for the Debtors in the Chapter 11 Cases;

bb.     filed, on February 15, 2024, a further revised Plan [ECF No. 1325];

cc.     filed, on February 16, 2024, the *Memorandum of Law in Support of Confirmation and Omnibus Reply to Objections to Confirmation of the Plan of Reorganization of Genesis Global Holdco, LLC et al., Under Chapter 11 of the Bankruptcy Code* [ECF No. 1330] (the "***Confirmation Brief***"), which includes the *Declaration of Joseph J. Sciametta, Managing Director of Alvarez & Marsal North America LLC, in Support of Confirmation of the Debtors' Amended Joint Chapter 11 Plan*, as Exhibit C attached thereto (the "***Sciametta Confirmation Declaration***"), and the *Declaration of Paul Aronzon, Member of the Special Committee of Board of Directors of Genesis Global Holdco, LLC, in Support of Confirmation of the Debtors' Amended Joint Chapter 11 Plan*, as Exhibit D attached thereto (the "***Aronzon Confirmation Declaration***" and, together with the Sciametta Confirmation Declaration, the "***Confirmation Declarations***");

dd.     filed, on February 24, 2024, the *Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1379] (the "***Fifth Plan Supplement***"); and

ee.     filed, on February 26, 2024, the *Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1391] (the "***Sixth Plan Supplement***" and, collectively with the First Plan Supplement, the Second Plan Supplement, the Third Plan Supplement, the Fourth Plan Supplement, and the Fifth Plan Supplement, the "***Plan Supplement***").

ff.     filed, on February 26, 2024, a further revised Plan [ECF No. 1392], a copy of which is attached hereto as **Exhibit A**;

WHEREAS the Bankruptcy Court having:

a.      entered, on April 4, 2023, the Bar Date Order;

b.      set November 28, 2023, as the voting record date (the "***Voting Record Date***") for Holders of all Claims eligible to vote under the Plan;

c.      entered, on December 6, 2023, the Disclosure Statement Order;

d.      set December 9, 2023 (or as soon as reasonably practicable thereafter) as the date by which the Debtors were required to complete solicitation;

e.      set January 10, 2024 at 4:00 p.m. (prevailing Eastern Time) as the deadline by which Ballots were required to be received by the Debtors' Solicitation Agent (the "***Voting Deadline***"), which the Debtors subsequently extended for various parties with the Court's approval;

f.     set January 25, 2024 as the deadline (the "***Voting Certification Filing Deadline***") by which the Debtors were required to file the Voting Report;

g.     set January 29, 2024 at 4:00 p.m. (prevailing Eastern Time) as the deadline by which parties in interest were required to file objections to the Plan (the "***Confirmation Objection Deadline***"), which the Debtors subsequently extended for certain parties with the Court's approval;

h.     reviewed the Plan, the Confirmation Brief, the Confirmation Declarations, the Plan Supplement, the Voting Reports, the Confirmation Hearing Publication Notices, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including any and all objections, declarations, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

i.     held the Confirmation Hearing on February 26[, 27, and 28], 2024;

j.     heard the statements, arguments, and objections, if any, made by counsel in respect of Confirmation of the Plan;

k.     considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation of the Plan;

l.     taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in the Chapter 11 Cases;

m.     overruled any and all objections to the Plan, Confirmation, and all statements and reservations of right not consensually resolved, withdrawn, or waived unless otherwise indicated herein;

n.     [rendered, on _____ __, 2024, a [bench] decision regarding confirmation of the Plan (the "***Bench Decision***")];

o.     [rendered, on _____ __, 2024, a memorandum decision regarding confirmation of the Plan (the "***Memorandum Decision***," and together with the Bench Decision, the "***Decision***"))].

**NOW**, **THEREFORE**, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered, admitted, or adduced by counsel at the Confirmation Hearing and the entire record of the Chapter 11 Cases establish just cause for the

relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact and Conclusions of Law, and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### IT IS HEREBY DETERMINED AND FOUND THAT:

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Bankruptcy Rule 7052, made applicable to this proceeding under Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to section 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of title 28 of the United States Code, and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

**C.     Eligibility for Relief.**

3.     The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.  As such, the Debtors are proper proponents of the Plan.

**D.     Commencement and Joint Administration of the Chapter 11 Cases.**

4.     On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  By prior order of the Bankruptcy Court, the Chapter 11 Cases were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [ECF No. 37].  The Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.  On February 3, 2023, the U.S. Trustee appointed the Official Committee of Unsecured Creditors [ECF No. 55] (the "*Committee*") in the Chapter 11 Cases.

**E.     Judicial Notice.**

5.     The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and/or its duly-appointed agent, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

**F.     Notice.**

6.     Due, timely, proper, and adequate notice of the Disclosure Statement, the Plan, the Plan Supplement, the proposed assumption of Executory Contracts and Unexpired Leases, and the Confirmation Hearing, together with the Voting Deadline and the Confirmation Objection Deadline, has been provided substantially in accordance with the Disclosure Statement Order, including as set forth in the Voting Reports.

7.        Such notice (including the Confirmation Hearing Notice, the Confirmation Hearing Publication Notices, Plan Supplement Notices and notice of the Plan Modifications) was appropriate and satisfactory based upon the facts and circumstances of the Chapter 11 Cases and pursuant to sections 1125 and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018, and 3020, and other applicable law and rules.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required, and due, proper, timely, and adequate notice of the Confirmation Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

**G.        Solicitation.**

8.        In accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and all other applicable rules, laws, and regulations applicable to such solicitation, the Debtors, through their Solicitation Agent, and, to the extent described in the Disclosure Statement Order, Gemini, served Ballots and associated documents on all Holders of Claims against and Interests in the Debtors, as appropriate, as follows: (a) for all Holders of Claims in the Non-Voting Classes (as defined in the Disclosure Statement Order) and Holders of Disputed Claims in the Voting Classes, the Confirmation Hearing Notice and the applicable Notice of Non-Voting Status (as defined in the Disclosure Statement Order); (b) for all parties in Classes 3 through 6 against GGH and GAP and Classes 3 through 7 against GGC, (i) the Confirmation Hearing Notice, (ii) the Disclosure Statement Order (without exhibits, except for the Solicitation and Voting Procedures (as defined in the Disclosure Statement Order) attached thereto as Exhibit 1), (iii) the Disclosure Statement (with exhibits, including the Plan), and (iv) the applicable Ballot or Gemini Lenders' Ballot (as defined in the Disclosure Statement Order), including if served on a provisional basis.  *See* ECF Nos. 1194 and 1313.  The Debtors also have served notice of the Plan Supplement (the "***Plan Supplement Notices***"), *see* ECF Nos. 1156, 1182, 1189, 1225, and

8

[[●]], and the Plan, *see* ECF Nos. 1037, 1385, and [[●]], as required by and deemed sufficient and appropriate in the Disclosure Statement Order.

9.       Each eligible Holder of a Claim in the Voting Classes received a Ballot.  The form of the Ballots adequately addressed the particular needs of the Chapter 11 Cases and was appropriate for the Holders of Claims in each Voting Class.  The instructions on each Ballot advised that, for the Ballot to be counted, the Ballot had to be properly executed, completed, and delivered to Kroll, in its capacity as the Voting Agent for the Debtors in the Chapter 11 Cases (the "***Voting Agent***"), so that it was actually received by the Voting Agent on or before the applicable Voting Deadline.  The period during which the Debtors solicited acceptance of the Plan was a reasonable period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

10.      The Debtors were not required to solicit votes from Class 1 (Other Priority Claims) and Class 2 (Secured Claims) against GGH, GAP, and GGC, as each such Class is Unimpaired under the Plan and, thus, presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

11.      The Debtors were not required to solicit votes from Class 9 against GGH (Intercompany Claims), Classes 10 and 11 against GGC (Intercompany Claims and Intercompany Interests, respectively), and Classes 9 and 10 against GAP (Intercompany Claims and Intercompany Interests, respectively), as each Holder of Claims or Interests, as applicable, in such Classes is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

12.      The Debtors were not required to solicit votes from Holders of Claims and Interests in Class 7 against GGH (Subordinated Claims), Class 8 against GGH (Government Penalty Claims), Class 10 against GGH (Interests), Class 8 against GGC (Subordinated Claims), Class 9

against GGC (Government Penalty Claims), Class 7 against GAP (Subordinated Claims), and Class 8 against GAP (Government Penalty Claims) (collectively, the "***Deemed Rejecting Classes***"), as the Holders of Claims or Interests in such Classes are Impaired and not entitled to receive distributions on account of their Claims or Interests under the Plan and, thus, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

13.     As described in and as evidenced by the Voting Reports, the transmittal and service of the Solicitation Materials (all of the foregoing, the "***Solicitation***") was timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required. The Solicitation complied with the Solicitation and Voting Procedures (as defined in the Disclosure Statement Order), was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and any other applicable rules, laws, and regulations.

**H.     Voting.**

14.     The Voting Reports filed with the Bankruptcy Court certify the method and results of the Ballots tabulated for the Voting Classes.  As set forth in the Amended Voting Report, the Plan has been overwhelmingly accepted by the Holders of Claims in the Voting Classes and each Voting Class accepted the Plan or shall be presumed to accept the Plan pursuant to Article III.H of the Plan.  As evidenced by the Voting Reports, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation and Voting Procedures (as defined in the Disclosure Statement Order), and the Local Rules.  Furthermore, Gemini, in its role prescribed in the Disclosure Statement Order, has acted in good faith and in a manner consistent with the Disclosure

Statement Order, including the Solicitation and Voting Procedures, in providing the Gemini

Voting Statement (as defined in the Disclosure Statement Order).

## I.  Plan Supplement.

15.  On December 29, 2023, the Debtors filed the First Plan Supplement, consisting of

(a) the Schedule of Assumed Executory Contracts and Unexpired Leases, (b) an exhibit identifying

the members of the Litigation Oversight Committee and the Wind-Down Oversight Committee,

(c) an exhibit identifying the intercompany claims that shall constitute Excluded Claims, (d) an

exhibit identifying the Retained Causes of Action, (e) the Digital Assets Conversion Table, and (f)

the Justifications for Exculpated & Released Parties.[3]  On January 6, 2024, the Debtors filed the

Second Plan Supplement, consisting of (g) an exhibit disclosing the identity and affiliations of the

PA Officer and (h) an exhibit disclosing the identity of the candidates for the New Board.[4]  On

January 8, 2024, the Debtors filed the Third Plan Supplement, consisting of (i) the Plan

Administration Agreement, (j) the Litigation Oversight Committee Bylaws, (k) the Wind-Down

Oversight Committee Bylaws, and (l) the New Governance Documents.[5]  On January 9, 2024, the

Debtors filed the Fourth Plan Supplement, consisting of (m) the Setoff Principles for Allowance

of Certain Claims.[6]  On February 24, 2024, the Debtors filed the Fifth Plan Supplement, consisting

of (n) the Gemini Reserve Principles and (o) the Gemini Lender Distribution Principles, and

including revised versions of the Plan Administration Agreement, Litigation Oversight Committee

Bylaws, and Wind-Down Oversight Committee Bylaws.[7]  On February 26, 2024, the Debtors filed

---

[3]  *See Notice of Filing of Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1117].

[4]  *See Notice of Filing of Plan Supplement to the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1131].

[5]  *See Notice of Filing of Plan Supplement to the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1137].

[6]  *See Notice of Filing of Plan Supplement to the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1144].

[7]  *See Notice of Filing of Plan Supplement to the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1379].

the Sixth Plan Supplement, consisting of (p) a form cooperation agreement entered into by Genesis Personnel being released under the Plan.[8]

16.     All such materials in the Plan Supplement comply with the terms of the Plan, the filing and notice of the Plan Supplement was proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all applicable law, and no other or further notice is or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan as if set forth in full therein.  Subject to the terms of the Plan, the Debtors reserve the right to and may alter, amend, update, or modify the Plan Supplement before the Effective Date, *provided* that any such alteration, amendment, update, or modification shall be in compliance with the Plan, Bankruptcy Code, the Bankruptcy Rules, and the terms of this Confirmation Order.

**J.     Modifications of the Plan.**

17.     Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors proposed certain modifications to the Plan as reflected herein, in the Plan Supplement, and/or in the revised Plan filed with the Bankruptcy Court prior to entry of this Confirmation Order (collectively, the "***Plan Modifications***").  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (a) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially and adversely change the treatment of any Claims, (d) require additional disclosure or re-solicitation of any Holders of any Claims or Interests, or (e) require that Holders of Claims in the Voting Classes be afforded an opportunity to change their previously cast acceptances of the Plan.  Under the circumstances, the

---

[8]     *See Notice of Filing of Plan Supplement to the Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1391].

form and manner of notice of the proposed Plan Modifications are adequate, and no other or further notice of the proposed Plan Modifications is necessary or required.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications.  The Holders of Claims in the Voting Classes are not permitted to change their respective acceptances to rejections as a consequence of the Plan Modifications.

**K.    Bankruptcy Rule 3016.**

18.    In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the Plan proponents.  The release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**L.    Burden of Proof: Confirmation of the Plan.**

19.    The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard. Each witness who testified and/or submitted a Confirmation Declaration on behalf of the Debtors or the Committee in connection with Confirmation was credible, reliable, and qualified to testify and/or submit such Confirmation Declaration as to the topics addressed in his or her testimony.

**M.    Compliance with Bankruptcy Code Requirements:  Section 1129(a)(1).**

20.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, more particularly:

(i)      Proper Classification: Sections 1122 and 1123(a)(1).

21.     Article III of the Plan designates ten (10) Classes of Claims and Interests for GGH and GAP and eleven (11) Classes of Claims and Interests for GGC.  Each Class comprises only Claims or Interests that are substantially similar to other Claims or Interests, as the case may be, in each such Class.   The various Classes are all based on valid business, factual, or legal considerations.   More generally, Secured Claims, General Unsecured Claims, and Interests are each classified separately from each other.   General Unsecured Claims are separately classified based on types of digital asset and/or fiat currencies Holders of General Unsecured Claims were contractually entitled to receive from the respective Debtor and such Holders' relationship with the respective Debtor.   Intercompany Claims occupy their own Class, as do Interests in GGH and Intercompany Interests in GGC and GAP, respectively.   The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)     Specified Unimpaired Classes: Section 1123(a)(2).

22.     Article III of the Plan specifies that Claims in the following Classes are Unimpaired under the Plan (the "***Unimpaired Classes***"), thereby satisfying section 1123(a)(2) of the Bankruptcy Code:

| Debtor | Class | Claim or Interest | Status |
| --- | --- | --- | --- |
| GGH | 1 | Other Priority Claims | Unimpaired |
| GGH | 2 | Secured Claims | Unimpaired |
| GGH | 9 | Intercompany Claims | Impaired or Unimpaired |
| GGC | 1 | Other Priority Claims | Unimpaired |
| GGC | 2 | Secured Claims | Unimpaired |
| GGC | 10 | Intercompany Claims | Impaired or Unimpaired |
| GGC | 11 | Intercompany Interests | Impaired or Unimpaired |
| GAP | 1 | Other Priority Claims | Unimpaired |
| GAP | 2 | Secured Claims | Unimpaired |
| GAP | 9 | Intercompany Claims | Impaired or Unimpaired |
| GAP | 10 | Intercompany Interests | Impaired or Unimpaired |

14

(iii)    Specified Treatment of Impaired Classes: Section 1123(a)(3).

23.    Article III of the Plan specifies that the Claims in the following Classes are Impaired under the Plan, and describes the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code:

| Debtor | Class | Claim or Interest | Status |
|--------|-------|-------------------|--------|
| GGH | 3 | Fiat-or-Stablecoin-Denominated Unsecured Claims | Impaired |
| GGH | 4 | BTC-Denominated Unsecured Claims | Impaired |
| GGH | 5 | ETH-Denominated Unsecured Claims | Impaired |
| GGH | 6 | Alt-Coin-Denominated Unsecured Claims | Impaired |
| GGH | 7 | Subordinated Claims | Impaired |
| GGH | 8 | Government Penalty Claims | Impaired |
| GGH | 9 | Intercompany Claims | Impaired or Unimpaired |
| GGH | 10 | Interests | Impaired |
| GGC | 3 | Fiat-or-Stablecoin-Denominated Unsecured Claims | Impaired |
| GGC | 4 | BTC-Denominated Unsecured Claims | Impaired |
| GGC | 5 | ETH-Denominated Unsecured Claims | Impaired |
| GGC | 6 | Alt-Coin-Denominated Unsecured Claims | Impaired |
| GGC | 7 | Gemini Lender Claims | Impaired |
| GGC | 8 | Subordinated Claims | Impaired |
| GGC | 9 | Government Penalty Claims | Impaired |
| GGC | 10 | Intercompany Claims | Impaired or Unimpaired |
| GGC | 11 | Intercompany Interests | Impaired or Unimpaired |
| GAP | 3 | Fiat-or-Stablecoin-Denominated Unsecured Claims | Impaired |
| GAP | 4 | BTC-Denominated Unsecured Claims | Impaired |
| GAP | 5 | ETH-Denominated Unsecured Claims | Impaired |

| GAP | 6 | Alt-Coin-Denominated Unsecured Claims | Impaired |
|---|---|---|---|
| GAP | 7 | Subordinated Claims | Impaired |
| GAP | 8 | Government Penalty Claims | Impaired |
| GAP | 9 | Intercompany Claims | Impaired or Unimpaired |
| GAP | 10 | Intercompany Interests | Impaired or Unimpaired |

(iv)    No Discrimination: Section 1123(a)(4).

24.    Article III of the Plan, as further set forth in the Distribution Principles, provides for the same rights and treatment by the Debtors of each Allowed Claim or Allowed Interest in each respective Class unless the Holder of a particular Allowed Claim or Allowed Interest has agreed to a less favorable treatment of such Allowed Claim or Allowed Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)    Adequate Means for Plan Implementation: Section 1123(a)(5).

25.    Article IV of the Plan, as well as other provisions thereof, provides adequate and proper means for implementation of the Plan.  Among other things, Article IV of the Plan, the Distribution Principles, and the Plan Supplement: (a)  provide for the sources of consideration for Plan distributions and the establishment of reserves; (b) provide, through the Distribution Principles, for the equitable calculation of distributions across Claims denominated in fiat currency and different types of Digital Assets; (c) provide for the vesting of all assets in each of the appropriate Wind-Down Debtors free and clear of all Liens, Claims, charges, or other Encumbrances (other than, for the avoidance of doubt, any Allowed General Unsecured Claims, Allowed Government Penalty Claims, and Allowed Subordinated Claims); (d) authorize the amendment of the certificates of incorporation and bylaws of the Wind-Down Debtors; (e) provide for the appointment of the officers and directors of the Wind-Down Debtors, including the PA Officer and the New Board, and the members of the Litigation Oversight Committee and Wind-

Down Oversight Committee; (f) provide for the cancellation of all notes, instruments, certificates, and other documents, including credit agreements and indentures, unless otherwise provided in the Plan; (g) provide for the exemption from registration under the Securities Act of any Securities issued under the Plan (to the extent set forth in the Plan); (h) provide for the preservation of Causes of Action and the appointment of the Litigation Oversight Committee and the PA Officer to pursue such Retained Causes of Action; and (i) provide for the reinstatement or discharge of Intercompany Claims and Intercompany Interests (to the extent set forth in the Plan) and the settlement of intercompany accounts.

(vi)    <u>Voting Power of Equity Securities: Section 1123(a)(6)</u>.

26.    Article IV.B.8 of the Plan provides that the Wind-Down Debtors' New Governance Documents shall include prohibitions on the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.

(vii)    <u>Designation of Directors and Officers: Section 1123(a)(7)</u>.

27.    Article IV.A.2 and Article VI.B.9 of the Plan outline the manner of selecting the PA Officer and the New Board, which accords with applicable corporate law, the Bankruptcy Code, the interests of creditors and equity security holders, and public policy, and, therefore, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

(viii)    <u>Impairment / Unimpairment of Classes: Section 1123(b)(1)</u>.

28.    The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Specifically, Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

    (ix)   <u>Assumption and Rejection of Executory Contracts and Unexpired Leases: Section 1123(b)(2)</u>.

29.    The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  In accordance with the provisions of sections 365 and 1123(b)(2) of the Bankruptcy Code, except as otherwise provided in the Plan, the Plan Supplement, or this Confirmation Order, Article V.A of the Plan provides that all Executory Contracts or Unexpired Leases shall be rejected as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (i) is designated on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement; (ii) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court; (iii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iv) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date; or (v) is the subject of a motion to reject pursuant to which the requested effective date of such rejection is any date other than the Effective Date.

    (x)   <u>Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action: Section 1123(b)(3)</u>.

30.    The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.  Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, which distributions, releases, and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan (including the Distribution Principles), and the distributions, releases, and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The compromise and settlement of all such Claims, Interests, and controversies embodied in the Plan are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and are

fair, equitable, and reasonable. The foregoing includes, without limitation, the settlement of Claims, Causes of Action, and controversies embodied in the Distribution Principles and Article IV of the Plan.

31. Article VIII.D of the Plan describes certain releases granted by the Debtors and their Estates (the "***Debtor Releases***") against a group of specified individuals and entities (the "***Released Parties***"). The Debtors' proposal of the Debtor Releases followed an exhaustive, months-long independent internal investigation conducted by the Special Committee and its advisors as well as arm's-length negotiations with the Released Parties. Moreover, in order to further ensure that the Estates can continue to benefit from the Released Parties' knowledge and information, the Debtors modified the Plan to provide releases only to those Genesis Personnel who agree to cooperate with assisting with litigation of the Retained Causes of Action by the Wind-Down Debtors by executing the Cooperation Agreement.

32. For the reasons set forth on the record of the Chapter 11 Cases and the evidence proffered, admitted, or adduced at the Confirmation Hearing, the Debtor Releases are (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (c) in the best interests of the Debtors and their Estates; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtors and after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Wind-Down Debtors, or their Estates asserting any Claim or Cause of Action released pursuant to such releases. For all of the above-discussed reasons, the Debtor Releases represent a valid settlement of any claims the Debtors and their estates may have against the Released Parties, pursuant to section 1123(b)(3)(A) and Bankruptcy Rule 9019.

33.    Article VIII.D of the Plan describes certain releases granted by certain non-Debtors (the "***Non-Debtor Releases***") of the Released Parties.  With respect to the Non-Debtor Releases, any granting of such releases required express "opt in" consent by Holders of Claims eligible to vote on the Plan, such that only Holders of Claims who affirmatively (i) voted in favor of the Plan, and (ii) elected to opt in to granting releases are deemed to have granted Non-Debtor Releases pursuant to the Plan.  The Non-Debtor Releases are fully consensual because the Debtors widely publicized the Non-Debtor Releases and the accompanying opt-in mechanism, including by reproducing the full text of the Non-Debtor Releases in bold-face type in the Plan, Disclosure Statement, Ballots, and Notices of Non-Voting Status.  Holders were also provided clear instructions on how to opt in to the Non-Debtor Releases and were expressly advised to review the Solicitation Materials and seek legal advice on the consequences of opting in to the Non-Debtor Releases.

34.    The Non-Debtor Releases are (a) in exchange for the good and valuable consideration provided by the Released Parties for the reasons set forth in Exhibit F of the Plan Supplement and otherwise as stated on the record at the Confirmation Hearing; (b) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (c) in the best interests of the Debtors and their Estates; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) an essential component of the Plan and the Restructuring; and (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such releases except as expressly set forth in the Plan.

35.    The Non-Debtor Releases are integral to the Plan because the Released Parties, *inter alia*, facilitated participation in both the formation of the Plan and the chapter 11 process generally, and their continued cooperation is necessary for implementation and administration of

the Plan. As such, the Non-Debtor Releases offer certain protections to parties that participated

constructively in the Debtors' chapter 11 process by, among other things, supporting the Plan.

36.    The exculpation, described in Article VIII.F of the Plan (the "***Exculpation***"), is

appropriate under applicable law because it was proposed in good faith and is appropriately limited

in scope. The Exculpated Parties played critical roles in and made significant contributions to the

Chapter 11 Cases, and participated in good faith in formulating and negotiating the Plan. The

exculpation provisions of the Plan are essential to the Plan. For the avoidance of doubt, nothing

in Article VIII.F of the Plan shall, nor shall it be deemed to, release or exculpate (a) any Exculpated

Party for any act or omission after the Effective Date or (b) any DCG Party.

37.    The injunction provision set forth in Article VIII.G of the Plan is necessary to

implement, preserve, and prevent actions against the Debtors, the Wind-Down Debtors, the

Exculpated Parties, and the Released Parties, and by extension the compromise and settlement

upon which the Plan is founded, and is narrowly tailored to achieve this purpose.

38.    The terms of the release, exculpation, and injunction provisions are consistent with

the Bankruptcy Code and section 1123(b) of the Bankruptcy Code is satisfied.

39.    Article IV.B.14 of the Plan appropriately provides that in accordance with

section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII of the Plan, the

Wind-Down Debtors shall retain, and may enforce, all rights to commence and pursue, as

appropriate, any and all Causes of Action belonging to the Debtors or their Estates (including any

Causes of Action that belong to the Other Genesis Entities), whether arising before or after the

Petition Date, including any Retained Causes of Action, unless such Causes of Action are

expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final

Order of the Bankruptcy Court or any other court. The provisions regarding the preservation of

Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

40.      The release of all mortgages, deeds of trust, Liens, pledges, or other security interests against the property of the Estates described in Article VIII.C (the "*Lien Release*") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

(xi)      Modification of Rights: Section 1123(b)(5).

41.      The Plan modifies the rights of Holders of Claims or Interests, as applicable, as permitted by section 1123(b)(5) of the Bankruptcy Code.

(xii)      Additional Plan Provisions: Section 1123(b)(6).

42.      The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to Holders of Allowed Claims and Interests pursuant to the Distribution Principles, (b) resolution of Disputed Claims, (c) allowance of certain Claims, and (d) retention of Court jurisdiction, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.  The failure to address any provisions of the Bankruptcy Code specifically in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

(xiii)      Cure of Defaults: Section 1123(d).

43.      Article V.C of the Plan provides for the satisfaction of any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned by the Debtors pursuant to the Plan by payment of the cure amount (if any) in Cash by the Debtors or the Wind-Down Debtors, as applicable, on the Effective Date or as soon as practicable thereafter, subject to the limitations set forth in Article V.C of the Plan or on such other terms as the parties

22

to such Executory Contracts or Unexpired Leases may otherwise agree.  Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

**N.      Debtors' Compliance with the Bankruptcy Code: Section 1129(a)(2).**

44.      The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

    a.   is an eligible debtor under section 109 of the Bankruptcy Code, and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code; and

    b.   complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Materials and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**O.      Plan Proposed in Good Faith: Section 1129(a)(3).**

45.      The Plan (including the Distribution Principles, the Plan Supplement, and all other documents and agreements necessary to effectuate the Plan) was negotiated, developed, and proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In so determining, the Bankruptcy Court has considered the facts and record of the Chapter 11 Cases, the Disclosure Statement, and evidence proffered, admitted, or adduced at the Confirmation Hearing, and examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan, and the process leading to Confirmation. The Plan is the result of months of good-faith, arm's-length negotiations between the Debtors and a wide assortment of parties in interest in these Chapter 11 Cases, including DCG, the Committee, the Ad Hoc Group, the Dollar Group (as defined in the PSA), and Gemini.  The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of maximizing recoveries of their stakeholders in accordance with the absolute priority rule.

46.     Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan and necessary for the Debtors' successful implementation of the Plan.

**P.    Payment for Services or Costs and Expenses: Section 1129(a)(4).**

47.     The Debtors have satisfied section 1129(a)(4) of the Bankruptcy Code.  Any payment made or to be made by the Debtors for services or for costs and expenses of the Professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.  All such costs and expenses of the Professionals shall be paid in accordance with the Plan, and all other estimated costs and expenses of the Professionals shall be escrowed in the Professional Fee Escrow Account no later than the Effective Date.

**Q.    Directors, Officers, and Insiders: Section 1129(a)(5).**

48.     The Debtors have complied with the requirements of section 1129(a)(5) of the Bankruptcy Code.  Article IV.A.2, Article IV.A.3, Article IV.A.4, and Article IV.B.9 of the Plan describe the manner in which the PA Officer, the Wind-Down Oversight Committee, the Litigation Oversight Committee, and the New Board, respectively, shall be identified or determined.  Moreover, an exhibit identifying the PA Officer was filed as Exhibit G of the Plan Supplement, an exhibit identifying the members of the Litigation Oversight Committee and the Wind-Down Oversight Committee was filed as Exhibit B of the Plan Supplement, and a list of the five (5) candidates proposed to serve as directors of the New Board (subject to appointment by DCG in accordance with the Plan) was filed as Exhibit H to the Plan Supplement.  The Plan therefore provides the necessary disclosure of the identities and affiliations of each of the individuals that will serve as officers and directors of the Wind-Down Debtors and satisfies the requirements of

section 1129(a)(5)(A) of the Bankruptcy Code.  The selection and appointment of the PA Officer, the Wind-Down Oversight Committee, the Litigation Oversight Committee, and the New Board in accordance with the Plan was and is consistent with the interests of Holders of Claims and Interests and with public policy, in compliance with section 1129(a)(5) of the Bankruptcy Code.

49.     As of the Effective Date, the term of the current members of the board of directors, board of managers, or other governing body of the Debtors shall expire automatically and each person serving as a director or manager of a Debtor shall be removed and shall be deemed to have resigned and cease to serve automatically.  As such, the Debtors are not required to make any "insider" disclosure as contemplated by section 1129(a)(5)(B).  For these reasons, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**R.     No Rate Changes: Section 1129(a)(6).**

50.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**S.     Best Interest of Creditors: Section 1129(a)(7).**

51.     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached to the Disclosure Statement as Exhibit C and the other evidence related thereto in support of the Plan that was proffered, admitted, or adduced at the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Impaired Claim or Interest against a Debtor either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective

Date, that is not less than the amount that such Holder would receive or retain if such Debtors were hypothetically liquidated under chapter 7 of the Bankruptcy Code as of the Effective Date.

**T.      Acceptance by Certain Classes: Section 1129(a)(8).**

52.      Section 1129(a)(8) requires acceptance by each Class of Claims or Interests that is Impaired by the Plan.  As described in the Voting Reports, the Classes of Impaired Claims entitled to vote on the Plan voted overwhelmingly to accept the Plan.  Holders of Class 7 Subordinated Claims against GGH, Class 8 Government Penalty Claims against GGH, Class 10 Interests in GGH (Interests), Class 8 Subordinated Claims against GGC, Class 9 Government Penalty Claims against GGC, Class 7 Subordinated Claims against GAP, and Class 8 Government Penalty Claims against GAP are Impaired and conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (such Classes, collectively, the "***Deemed Rejecting Classes***").  As such, the Debtors do not meet the requirement of section 1129(a)(8).  Notwithstanding the foregoing, the Plan is confirmable because, with respect to the Deemed Rejecting Classes, section 1129(b) of the Bankruptcy Code is satisfied as set forth below.

**U.      Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code: Section 1129(a)(9).**

53.      As required by section 1129(a)(9) of the Bankruptcy Code, Article II of the Plan provides for payment in full of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims and Article III of the Plan provides for payment in full of Allowed Other Priority Claims.  Therefore, the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

**V.      Acceptance by at Least One Impaired Class: Section 1129(a)(10).**

54.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Reports, each of the Voting Classes—Classes 3, 4, 5, and 6 against

GGH, Classes 3, 4, 5, 6, and 7 against GGC, and Classes 3, 4, 5, and 6 against GAP, which are Impaired—voted or is presumed to accept the Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**W.      Feasibility: Section 1129(a)(11).**

55.      The Plan contemplates the liquidation of the Debtors.  As such, the Debtors need not demonstrate feasibility to satisfy section 1129(a)(11).

**X.      Payment of Fees: Section 1129(a)(12).**

56.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.D of the Plan provides for the payment of all fees due and payable by the Debtors and/or the Wind-Down Debtors under 28 U.S.C. § 1930(a).

**Y.      Continuation of Employee Benefits: Section 1129(a)(13).**

57.      The Plan provides for costs and expenses of administration of the Debtors' Estates pursuant to section 1114(e)(2) of the Bankruptcy Code to be classified as an Administrative Expense Claim to be paid in accordance with Article II.A of the Plan.  Therefore, the Plan complies with Section 1129(a)(13) of the Bankruptcy Code.

**Z.      Non-Applicability of Certain Sections: 1129(a)(14), (15), and (16).**

58.      Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.  The Debtors (a) are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation, (b) are not individuals, and (c) are each a moneyed, business, or commercial corporation.

**AA.     "Cram Down" Requirements: Section 1129(b).**

59.      The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes are deemed to reject the Plan, the Plan

27

may be confirmed pursuant to section 1129(b) of the Bankruptcy Code.  The evidence in support of the Plan that was proffered, admitted, or adduced at or prior to the Confirmation Hearing is reasonable, persuasive, credible, and accurate, has not been controverted by other evidence, and establishes that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  *Second*, the Plan is fair and equitable with respect to such Deemed Rejecting Classes.  The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Deemed Rejecting Class will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no Holder of a Claim in a Class senior to such Deemed Rejecting Classes is receiving more than 100% on account of its Claim.  *Third*, the Plan does not discriminate unfairly with respect to such Deemed Rejecting Classes because similarly situated Holders of Claims and Interests will receive substantially similar treatment on account of their Claims and Interests irrespective of Class.  *Fourth*, to the extent Intercompany Claims and/or Intercompany Interests are Impaired, the Holders of such Claims and Interests are Plan proponents and accordingly not dissenting creditors or shareholders for whom section 1129(b)(1)'s requirements would need to be satisfied.  Accordingly, the Plan satisfies the requirement of section 1129(b)(1) and (2) of the Bankruptcy Code.  The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**BB.    Only One Plan: Section 1129(c).**

60.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan is the only chapter 11 plan filed with respect to each Debtor in each of the Chapter 11 Cases.

**CC.    Principal Purpose of the Plan: Section 1129(d).**

61.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**DD.    Not Small Business Cases: Section 1129(e).**

62.    The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**EE.    Good Faith Solicitation: Section 1125(e).**

63.    Based on the record before the Bankruptcy Court in the Chapter 11 Cases, including evidence proffered, admitted, or adduced at or prior to the Confirmation Hearing, (i) the Debtors and the other Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, the Disclosure Statement Order (including the Solicitation and Voting Procedures), and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the development of the Plan, all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) to the extent that any Digital Asset is deemed to be a "security" by the SEC or any Governmental Unit, to the extent that section 1125(e) of the Bankruptcy Code applies, the Debtors and each of their respective Affiliates, agents (including, for the avoidance of doubt, Gemini in its role prescribed in the Disclosure Statement Order), representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities (if any) offered and sold, and in the distribution of Digital Assets, under the Plan and any previous

plan, and, therefore, none of such parties or individuals shall have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities (if any) offered and sold under the Plan and any previous plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation set forth in Article VIII.F of the Plan.

**FF.    Satisfaction of Confirmation Requirements.**

64.    Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, admitted, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**GG.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

65.    Without limiting or modifying the rights of any party set forth in Article X.A or Article X.B of the Plan, each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.

**HH.    Implementation.**

66.    The terms of the Plan, including the Plan Supplement, and all exhibits and schedules thereto, including the Distribution Principles, and all other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan, and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the "***Plan Documents***") are incorporated by reference and constitute essential elements of the Plan and this Confirmation Order.  Consummation of each such Plan Document is in the best interests of the Debtors, the Debtors' Estates, and Holders of Claims and Interests, and such Plan

30

Documents (including, for the avoidance of doubt, the Distribution Principles) are hereby approved. The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and the Plan Documents (including, for the avoidance of doubt, the Distribution Principles) have been negotiated in good faith, at arm's-length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

## II.    Settlements Embodied in Plan Satisfy Bankruptcy Rule 9019.

67.    All of the settlements and compromises (including the Distribution Principles) pursuant to and in connection with the Plan or incorporated by reference into the Plan, comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Bankruptcy Rule 9019 and in consideration for the benefits provided under the Plan, any and all compromise and settlement provisions of the Plan (including the Distribution Principles) constitute good-faith compromises, are in the best interests of the Debtors, the Debtors' Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable. The foregoing includes, without limitation, the Distribution Principles, the GGC/GGH Settlement in Article IV.C of the Plan, and the GAP/GGC Settlement in Article IV.D of the Plan.

## JJ.    Payment of the Ad Hoc Group Restructuring Expenses.

68.    The Ad Hoc Group has substantially contributed to these Chapter 11 Cases, and the development, negotiation, and confirmation of the Plan. Among other things, the Ad Hoc Group has negotiated the terms of, and drafted, the PSA, negotiated and developed the terms of the Plan and the Distribution Principles, assisted with developing and reaching the settlement between the Debtors and the NYAG. Additionally, with the Ad Hoc Group's assistance, the Debtors were able to obtain signatures of Holders of Claims in an amount exceeding $2 billion, all of which voted to

accept the Plan, including the payment of the Ad Hoc Group Restructuring Expenses.  For these reasons, the Ad Hoc Group Restructuring Expenses shall be allowed as administrative expenses, which shall be paid on the Effective Date.

**KK.    Payment of the Dollar Group Restructuring Fees and Expenses.**

69.    The Dollar Group (as defined in the PSA) has substantially contributed to these Chapter 11 Cases, and the development, negotiation, and confirmation of the Plan.  Among other things, the Dollar Group has assisted with negotiating and developing the terms of the Plan and the Distribution Principles.  Additionally, with the Dollar Group's assistance, the Debtors were able to obtain signatures of Holders of, among other things, Fiat-or-Stablecoin-Denominated Unsecured Claims in an amount exceeding $450 million, all of which voted to accept the Plan, including the payment of the Dollar Group Restructuring Fees and Expenses.  For these reasons, the Dollar Group Restructuring Fees and Expenses shall be allowed as administrative expenses, which shall be paid on the Effective Date.

**LL.    New Governance Documents.**

70.    The Debtors have exercised sound business judgment in amending the operating agreements of GGH and GGC and the constitution of GAP and have provided adequate notice thereof.  The New Governance Documents have been negotiated in good faith and at arm's length and are deemed to have been made in good faith and for legitimate business purposes.  The terms and conditions of the New Governance Documents are fair and reasonable.

**MM.    Plan Administration Agreement.**

71.    The Debtors have exercised sound business judgment in determining to enter into the Plan Administration Agreement and have provided adequate notice thereof.   The Plan Administration Agreement has been negotiated in good faith and at arm's length and is deemed to

have been made in good faith and for legitimate business purposes.  The terms and conditions of the Plan Administration Agreement are fair and reasonable.

**NN.    Wind-Down Oversight Committee.**

72.    The Debtors have exercised sound business judgment in determining to establish the Wind-Down Oversight Committee and negotiating the Wind-Down Oversight Committee Bylaws and have provided adequate notice thereof.  The Wind-Down Oversight Committee Bylaws have been negotiated in good faith and at arm's length and are deemed to have been made in good faith and for legitimate business purposes.  The terms and conditions of the Wind-Down Oversight Committee Bylaws are fair and reasonable.

**OO.    Litigation Oversight Committee.**

73.    The Debtors have exercised sound business judgment in determining to establish the Litigation Oversight Committee and negotiating the Litigation Oversight Committee Bylaws and have provided adequate notice thereof.  The Litigation Oversight Committee Bylaws have been negotiated in good faith and at arm's length and are deemed to have been made in good faith and for legitimate business purposes.  The terms and conditions of the Litigation Oversight Committee Bylaws are fair and reasonable.

**PP.    Plan Support Agreement.**

74.    The PSA has been negotiated in good faith and at arm's length and is deemed to have been made in good faith and for legitimate business purposes.  The terms and conditions of the PSA are fair and reasonable.  Any surviving obligations under the PSA shall terminate on a final basis upon the Effective Date, subject to section 6.3 thereof.

**QQ.    Good Faith.**

75.    The Debtors, the Committee, the Ad Hoc Group SteerCo, Gemini, and the other Released Parties and Exculpated Parties acted in good faith and will be acting in good faith if they

proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers

contemplated thereby in accordance with the Plan; and (b) take the actions authorized and directed

by this Confirmation Order.  The entry of the Confirmation Order shall constitute the Bankruptcy

Court's finding and determination that (a) each Released Party's in-court efforts to develop,

negotiate, and propose the Plan were, with respect to each other Released Party and any other

Person, in good faith and not by any means forbidden by law and (b) the settlements reflected in

the Plan are (i) in the best interests of the Debtors and their Estates, (ii) fair, equitable, and

reasonable, and (iii) approved by the Bankruptcy Court pursuant to sections 105(a) and 363 of the

Bankruptcy Code and Bankruptcy Rule 9019.

**RR.    Retention of Jurisdiction.**

76.    The Bankruptcy Court may properly, and upon the Effective Date shall, retain

jurisdiction over all matters arising in or related to, the Chapter 11 Cases, including the matters set

forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

## ORDER

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED,
THAT:**

1.    **Findings of Fact and Conclusions of Law**.  The above-referenced findings of fact

and conclusions of law are hereby incorporated by reference as though fully set forth herein and

shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable to this proceeding under Bankruptcy Rule 9014. To the extent any of the foregoing

findings of fact constitute conclusions of law, they are deemed as such.  To the extent any of the

foregoing conclusions of law constitute findings of fact, they are deemed as such.

2.    **Confirmation of the Plan**.  The Plan is approved in its entirety and **CONFIRMED**

under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the

Plan, including, without limitation, the Plan Documents (including, for the avoidance of doubt, the Distribution Principles) are hereby authorized and approved. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order. The failure to specifically describe, include, or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan is confirmed in its entirety, except as expressly modified herein, the Plan Documents (including, for the avoidance of doubt, the Distribution Principles) are approved in their entirety, and all are incorporated herein by this reference.

3.    **Objections**. All objections to Confirmation of the Plan and other responses, comments, statements, or reservation of rights, if any, in opposition to the Plan that have not been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order are overruled on the merits.

4.    **Plan Classification Controlling.** The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classification set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

5.    **Confirmation Hearing Notice**.    The Confirmation Hearing Notice, the Confirmation Hearing Publication Notices, and any other notice filed or otherwise published by the Debtors in connection with Confirmation of the Plan complied with the terms of the Disclosure Statement Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and are approved in all respects.

6.    **Solicitation**.    The solicitation of votes on the Plan complied with the Solicitation and Voting Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and applicable non-bankruptcy law, and is approved in all respects.

7.    **Plan Modifications**.    The modifications, amendments, and supplements made to the Plan following the solicitation of votes thereon constitute technical changes and do not materially adversely affect or change the proposed treatment of any Claims or Interests.    After giving effect to such modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code.    The filing of the Plan and proposed form of this Confirmation Order with the Bankruptcy Court on February [[●]], 2024, which contain such modifications, and the disclosure of such modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.    Accordingly, such modifications do not require additional disclosure or re-solicitation of votes under sections 1125, 1126, or 1127 of the Bankruptcy Code or Bankruptcy Rule 3019, nor do they require that the Holders of Claims in the Voting Classes be afforded an opportunity to change their previously cast votes on the Plan.    The Holders of Claims in the Voting Classes who voted to accept the solicitation version of the Plan are deemed to accept the Plan as

modified.  The Plan, as modified, is, therefore, properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

8.      **No Action Required.**   No action of the respective directors, equity holders, managers, or members of the Debtors or the Wind-Down Debtors (as applicable) is required to authorize the Debtors or the Wind-Down Debtors (as applicable) to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, or any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Plan Administration Agreement, the Litigation Oversight Committee Bylaws, the Wind-Down Oversight Committee Bylaws, and the other Plan Documents (including, for the avoidance of doubt, the Distribution Principles).

9.      **Binding Effect**.   On the date of and after entry of this Confirmation Order, in accordance with section 1141(a) of the Bankruptcy Code and subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(d), 6004(h), or otherwise, the terms of the Plan, the Plan Documents (including, for the avoidance of doubt, the Distribution Principles), and this Confirmation Order shall be immediately effective (and/or adopted, where applicable) and enforceable and deemed binding upon the Debtors or the Wind-Down Debtors (as applicable), and any and all Holders of Claims or Interests and such Holder's respective heirs, executors, administrators, successors or assigns, Affiliates, officers, directors, managers, agents, representatives, attorneys, beneficiaries, or guardians (regardless of whether or not (a) the Holders of such Claims or Interests voted to accept or reject, or are deemed to have accepted or rejected, the Plan or (b) the Holders of such Claims or Interests are entitled to a distribution under the Plan),

all Entities that are parties to or are subject to the settlements, compromises, releases (including the releases set forth in Article VIII of the Plan), waivers, exculpations, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.  The Plan and the Plan Documents (including, for the avoidance of doubt, the Distribution Principles) constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents (including, for the avoidance of doubt, the Distribution Principles), and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

10. **Effectiveness of All Actions**.  All actions contemplated by the Plan, including all actions pursuant to, in accordance with, or in connection with the Plan Documents (including, for the avoidance of doubt, the Distribution Principles), are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the Debtors or the Wind-Down Debtors (as applicable).

11. **Plan Implementation**.

(a)    Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, on, or, unless specifically provided otherwise herein or the Plan, prior to the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors or the Wind-Down Debtors (as applicable), in accordance with Article IV of the Plan, may take all actions as may be necessary or appropriate to effect any

transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Distribution Principles, including (a) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; and (c) all other actions that the Debtors or the Wind-Down Debtors (as applicable) determine are necessary or appropriate and that are not inconsistent with the Plan.

(b)      Except as set forth in the Plan, upon the Effective Date, all actions (whether to occur before, on, or after the Effective Date) contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including (i) the appointment of the New Board, the PA Officer, the GAP Director, and the members of the Litigation Oversight Committee and the Wind-Down Oversight Committee, (ii) the implementation of the Restructuring, (iii) the re-vesting of the Wind-Down Debtors' Assets in the Wind-Down Debtors and the transactions and distributions contemplated under the Plan, the Distribution Principles, including any rebalancing of Distributable Assets or other Monetization Transactions, and the Gemini Lender Distribution Principles, including any rebalancing of Digital Assets in connection therewith, (iv) the rejection, assumption, or assumption and assignment, as appropriate, of any Executory Contracts and Unexpired Leases, (v) the appointment of the Gemini Distribution Agent as agent for the Debtors and the Wind-Down Debtors to make or facilitate distributions to Gemini Lenders pursuant to the Plan, and (vi) all other actions contemplated by the Plan and the Definitive Documents.  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Wind-Down Debtors, and any corporate action required by the Debtors or the

Wind-Down Debtors in connection with the Plan (including any items listed in the first sentence of this paragraph) shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors.

(c)    On or (as applicable) before the Effective Date, the appropriate directors, managers, officers, or other authorized persons of the Debtors shall be authorized and empowered to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the transactions contemplated by the Plan) in the name of and on behalf of the Wind-Down Debtors to the extent not previously authorized by the Bankruptcy Court.  To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the Debtors or the Wind-Down Debtors (as applicable), this Confirmation Order shall, pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the Debtors or the Wind-Down Debtors (as applicable).

(d)    All such transactions effected by the Debtors during the pendency of the Chapter 11 Cases from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Confirmation Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

12.    **The Wind-Down Debtors' Activities.**    The Wind-Down Debtors shall be successors to the Debtors' rights, title, and interests to the Debtors' Assets.  The Wind-Down Debtors shall not conduct business operations and shall be charged with winding down the Debtors' Estates for the benefit of the Wind-Down Debtors' Beneficiaries.  Each Wind-Down

40

Debtor shall be managed by the PA Officer and the New Board, which shall consult with or be directed by the Wind-Down Oversight Committee and the Litigation Oversight Committee, in accordance with the applicable New Governance Documents, the Plan Administration Agreement, the Wind-Down Oversight Committee Bylaws, and the Litigation Oversight Committee Bylaws, and shall be subject to the Wind-Down Budget.  On the Effective Date, the Wind-Down Debtors and the PA Officer shall execute the Plan Administration Agreement.  In the event of any conflict between the terms of Article IV.A of the Plan and the terms of the Plan Administration Agreement, the terms of the Plan Administration Agreement shall control.

13.     **PA Officer.**  The appointment of the PA Officer is hereby approved, and the PA Officer's duties shall commence as of the Effective Date.  The PA Officer shall administer the distributions to the Wind-Down Debtors' Beneficiaries in accordance with and pursuant to the Distribution Principles and shall serve as the successor to and representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of enforcing Retained Causes of Action belonging to such Estates (including any Causes of Action that belong to the Other Genesis Entities) that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan.

14.     The powers, rights, and responsibilities of the PA Officer shall be specified in the Plan Administration Agreement and shall include the authority and responsibility to fulfill the items identified in the Plan.  Other rights and duties of the PA Officer and the Wind-Down Debtors' Beneficiaries shall be as set forth in the Plan Administration Agreement.  Pursuant hereto and the Plan Administration Agreement, the PA Officer shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that are entitled to receive distributions pursuant to the Plan.

15.     In accordance with the Plan Administration Agreement, the PA Officer shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtors are dissolved in accordance with the Plan and the Plan Administration Agreement, and (ii) the date on which the PA Officer resigns, is terminated (in accordance with the Plan Administration Agreement and the Wind-Down Oversight Committee Bylaws), or is otherwise unable to serve; *provided*, *however*, that, in the event that a PA Officer resigns, is terminated, or is otherwise unable to serve, the Wind-Down Oversight Committee shall elect a successor to be appointed by the New Board to serve as a PA Officer in accordance with the Plan Administration Agreement. If the Wind-Down Oversight Committee does not elect a successor within the time periods specified in the Plan Administration Agreement, then the Bankruptcy Court, upon the motion of any party-in-interest, including counsel to the Wind-Down Debtors, shall approve a successor to serve as a PA Officer.

16.     **Wind-Down Oversight Committee**. The appointment of the Wind-Down Oversight Committee is hereby approved, and the Wind-Down Oversight Committee's responsibilities shall commence as of the Effective Date. The Wind-Down Oversight Committee's responsibilities shall include (i) reviewing, and advising the PA Officer with respect to, the execution of Monetization Transactions, and distribution or other disposition of the Distributable Assets in accordance with the Plan (including the Distribution Principles) and the Plan Administration Agreement and (ii) approving any material amendments to the Distribution Principles. For the avoidance of doubt, in advising the PA Officer, the Wind-Down Oversight Committee shall maintain the same fiduciary responsibilities as the PA Officer, which for the avoidance of doubt includes fiduciary duties to all Holders of Claims and Interests that are entitled to receive distributions pursuant to the Plan. Vacancies on the Wind-Down Oversight Committee shall be filled by the unanimous consent of the remaining member or members of the Wind-Down

Oversight Committee, which consent shall not be unreasonably withheld, conditioned, or delayed, in accordance with the Wind-Down Oversight Committee Bylaws.  If a vacancy on the Wind-Down Oversight Committee is not filled within five (5) Business Days of such vacancy occurring, the PA Officer shall have the authority to seek an order from the Bankruptcy Court approving the appointment of a Person selected by a majority of the Members (or if no Person has the approval of a majority of the members of the Wind-Down Oversight Committee, the Person with the support of a plurality of such members), with such Person's prior written consent, to the Wind-Down Oversight Committee to fill such vacancy.  The PA Officer shall also have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Wind-Down Oversight Committee for cause.

17.     The Wind-Down Oversight Committee Bylaws, substantially in the form filed with the Plan Supplement, are hereby approved in their entirety, and the Wind-Down Debtors are authorized to adopt the Wind-Down Oversight Committee Bylaws.  On the Effective Date, the Wind-Down Oversight Committee shall be deemed to have adopted the Wind-Down Oversight Committee Bylaws, which shall require the membership of the Wind-Down Oversight Committee to at all times, except as otherwise provided in the Wind-Down Oversight Committee Bylaws (including, without limitation, with respect to the occurrence of a Gemini Recovery Event or a USD Recovery Event), include the following: (i) at least two (2) Wind-Down Oversight BTC Members, (ii) at least one (1) Wind-Down Oversight ETH Member, (iii) at least two (2) Wind-Down Oversight Fiat-or-Stablecoin Members, (iv) the Wind-Down Oversight Gemini Lender Member (unless a Gemini Recovery Event has occurred), and (v) the Wind-Down Oversight Crossover Member; *provided*, *however*, that the Wind-Down Oversight Committee Bylaws shall expressly provide that the Wind-Down Oversight Gemini Lender Member shall be recused from

all matters pertaining to (x) any Causes of Action or other claims against any Gemini Party or any Gemini Lender and (y) any Claim asserted by Gemini or any Gemini Lender, including in the Proofs of Claim Filed by Gemini in the Chapter 11 Cases at Claim Nos. 356, 369, 400, 406, 407, and 413.

18.     **Litigation Oversight Committee**. The appointment of the Litigation Oversight Committee is hereby approved, and the Litigation Oversight Committee's responsibilities shall commence as of the Effective Date.  The Litigation Oversight Committee's responsibilities shall include (i) reviewing, and advising the PA Officer with respect to, the strategy and pursuit of Retained Causes of Action, including the selection, management, and direction of counsel and other advisors retained to investigate, analyze, and pursue the Retained Causes of Action, (ii) approving settlements on account of any Retained Causes of Action, and (iii) managing the Litigation Reserve.  For the avoidance of doubt, in advising the PA Officer, the Litigation Oversight Committee shall maintain the same fiduciary responsibilities as the PA Officer, which for the avoidance of doubt includes fiduciary duties to all Holders of Claims and Interests that are entitled to receive distributions pursuant to the Plan.  Vacancies on the Litigation Oversight Committee shall be filled by the unanimous consent of the remaining member or members of the Litigation Oversight Committee, which consent shall not be unreasonably withheld, conditioned, or delayed.  If a vacancy on the Litigation Oversight Committee is not filled within five (5) Business Days of such vacancy occurring, the PA Officer shall have the authority to seek an order from the Bankruptcy Court approving the appointment of a Person selected by a majority of the Members (or if no Person has the approval of a majority of the members of the Litigation Oversight Committee, the Person with the support of a plurality of such members), with such Person's prior written consent, to the Litigation Oversight Committee to fill such vacancy.  The PA Officer shall

also have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Litigation Oversight Committee for cause.

19.    The Litigation Oversight Committee Bylaws, substantially in the form filed with the Plan Supplement, are hereby approved in their entirety, and the Wind-Down Debtors are authorized to adopt the Litigation Oversight Committee Bylaws.  On the Effective Date, the Litigation Oversight Committee shall be deemed to have adopted the Litigation Oversight Committee Bylaws, which shall require the membership of the Litigation Oversight Committee to at all times, except as otherwise provided in the Litigation Oversight Committee Bylaws (including, without limitation, with respect to the occurrence of a Gemini Earn Recovery Event or a USD Recovery Event), include the following: (i) at least two (2) Litigation Oversight BTC Members, (ii) at least two (2) Litigation Oversight Fiat-or-Stablecoin Members, (iii) at least one (1) Litigation Oversight ETH Member, (iv) at least one (1) Litigation Oversight Crossover Member; and (v) at least one (1) Litigation Oversight Gemini Lender Member (unless a Gemini Recovery Event occurs); *provided*, *however*, that the Litigation Oversight Committee Bylaws shall expressly provide that the Litigation Oversight Gemini Lender Member shall be recused from all matters pertaining to (x) any Causes of Action or other claims against any Gemini Party or any Gemini Lender and (y) any Claim asserted by Gemini or any Gemini Lender, including in the Proofs of Claim Filed by Gemini in the Chapter 11 Cases at Claim Nos. 356, 369, 400, 406, 407, and 413; and, *provided*, *further*, that upon the occurrence of a USD Recovery Event, the Litigation Oversight Fiat-or-Stablecoin Members shall be deemed to resign their positions, and the Litigation Oversight Committee shall be reduced to five (5) members.

20.    **Plan Administration Agreement**.    The Plan Administration Agreement, substantially in the form filed with the Plan Supplement, is hereby approved in its entirety, and the Debtors are authorized to enter into the Plan Administration Agreement.

21.    **Reports to Be Filed by the PA Officer.**  The PA Officer, on behalf of the Wind-Down Debtors, shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the Plan Administration Agreement, including the New Board and the Wind-Down Oversight Committee), no later than thirty-one (31) days after June 30 and December 31 of each calendar year, a semi-annual report (in a form reasonably acceptable to the New Board and the Wind-Down Oversight Committee) regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it, and other matters relating to the implementation of the Plan.

22.    For each reporting period until the Gemini Distribution Agent shall have completed its final distribution to the Gemini Lenders, the Gemini Distribution Agent shall provide to the PA Officer, for inclusion in its semi-annual report, information pertaining to (i) the aggregate distributions, by Asset type, received by the Gemini Distribution Agent from the Estates on behalf of the Allowed Gemini Lender Claims, and (ii) the aggregate distributions of Digital Assets made by the Gemini Distribution Agent directly to the Gemini Lenders on behalf of their Allowed Gemini Lender Claims.

23.    **Fees and Expenses of the Wind-Down Debtors**.  The Wind-Down Debtors' Expenses, including the documented fees and expenses of the Gemini Distribution Agent, as set forth in the Plan, shall be paid from the Wind-Down Reserve, subject to the Wind-Down Budget. The fees and expenses of the PA Officer (including those incurred prior to the Effective Date in connection with the preparation of the Plan Administration Agreement) shall be paid after the

Effective Date pursuant to the terms and conditions of the Plan Administration Agreement.  The

PA Officer, on behalf of the Wind-Down Debtors, may employ (with the consent of the Wind-

Down Oversight Committee or the Litigation Oversight Committee, as applicable), without further

order of the Bankruptcy Court, professionals (including professionals previously employed by the

Debtors or other parties in interest) to assist in carrying out its duties under the Plan Administration

Agreement and may compensate and reimburse the expenses of these professionals based upon the

nature of the work performed by such professional, without further order of the Bankruptcy Court,

subject to any limitations and procedures established by the Plan Administration Agreement.  For

the avoidance of doubt, the PA Officer, the Wind-Down Oversight Committee, and the Litigation

Oversight Committee may employ the same professionals to the extent appropriate, as determined

by each in its reasonable discretion and in accordance with the Plan Administration Agreement,

the Litigation Oversight Committee Bylaws, or the Wind-Down Oversight Committee Bylaws, as

applicable.

24.    **Settlement of Claims by the PA Officer**.  Except as otherwise provided in the

Plan or the Plan Administration Agreement, on and after the Effective Date, the PA Officer, in

consultation with the Wind-Down Oversight Committee, may compromise or settle any Claims

related to the Wind-Down Debtors' Assets without supervision or approval by the Bankruptcy

Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and may pay the

charges that it incurs on or after the Effective Date for Wind-Down Debtors' Expenses,

professionals' fees, disbursements, expenses, or related support services without application to the

Bankruptcy Court; *provided, however*, that the Wind-Down Oversight Committee's Consent shall

be required for any settlement that would Allow a Claim at a value at or above $5 million; *provided*

*further* that the Litigation Oversight Committee's Consent shall be required for any settlement of Retained Causes of Action as provided in the Plan and in the Plan Administration Agreement.

25.     **Sales of Assets by the Wind-Down Debtors**.  The PA Officer may conduct any Monetization Transactions of non-Cash Wind-Down Debtors' Assets (except for Retained Causes of Action, GBTC shares, ETHE shares, and ETCG shares) on any terms it deems reasonable, subject to the Distribution Principles, without further order of the Bankruptcy Court.  The PA Officer may conduct any Monetization Transactions of Retained Causes of Action without further order of the Bankruptcy Court, but only to the extent the PA Officer has obtained the prior consent of the New Board and the Litigation Oversight Committee's Consent, subject to the provisions of the Plan Administration Agreement.  Subject to Article IV.A.12.a of the Plan, the PA Officer may conduct any Monetization Transactions of GBTC shares, ETHE shares, or ETCG shares without further order of the Bankruptcy Court and free of any prohibition on assignability or transfer under applicable non-bankruptcy law that otherwise may be applicable to such shares, but only in accordance with the Distribution Principles.  Upon the sale, liquidation, transfer, or other disposition of the Wind-Down Debtors' Assets by the PA Officer, the PA Officer shall deposit the proceeds of all such sales, liquidations, transfers, or dispositions into one or more of the Wind-Down Accounts (and such proceeds shall become and be deemed to be Distributable Assets).  The Additional GBTC Shares Reserve and the Gemini GBTC Shares Reserve shall be governed by the Gemini Reserve Principles.

26.     **Monetization and Rebalancing of Assets by the Gemini Distribution Agent**.  The Gemini Distribution Agent shall, at its sole discretion and to the maximum extent permitted by law, be authorized to (i) enter into a Monetization Transaction of assets distributed or transferred to the Gemini Distribution Agent, including the Gemini GBTC Shares (other than the

Gemini GBTC Shares Reserve, which shall be subject to the limitations set forth in the Gemini Reserve Principles), the Gemini Reserved Coins (solely to the extent included in the Gemini Asset Value), and the Gemini Earn Operations Assets, and (ii) rebalance the Cash and Digital Assets distributed or transferred to the Gemini Distribution Agent, including the Gemini GBTC Shares (other than the Gemini GBTC Shares Reserve, which shall be subject to the limitations set forth in the Gemini Reserve Principles), the Gemini Reserved Coins (solely to the extent included in the Gemini Asset Value), and the Gemini Earn Operations Assets, in each case, to the Gemini Distribution Agent to make distributions in respect of Gemini Lender Claims denominated in Digital Assets in the like kind form of Digital Asset in which such Claims are denominated; provided, however, that in no event shall the Gemini Distribution Agent be authorized to provide any Holder of an Allowed Claim with any lesser treatment than such Holder was entitled to under the Plan. The Gemini Distribution Agent, to the maximum extent permitted by law, is authorized to effectuate rebalancing by buying and selling of Digital Assets or otherwise exchanging any type of Digital Asset into any other type of Digital Asset.

27.    **Dissolution of the Wind-Down Debtors**.  On and after the Effective Date, the Wind-Down Debtors shall be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court, and the Wind-Down Debtors, subject to the remaining provisions of Article IV.A.14 of the Plan, shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.  As soon as practicable after the Effective Date, the Wind-Down Debtors shall take such actions as the Wind-Down Debtors may determine to be necessary or desirable to carry out the purposes of the Plan.

28.    Upon making all distributions provided for under the Plan, the Wind-Down Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any

jurisdiction in which the applicable Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) except as otherwise provided in the Plan, shall be deemed to have cancelled all Interests pursuant to the Plan, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

29.     The Wind-Down Debtors shall dissolve on the earlier of the date on which: (i) (a) the Wind-Down Debtors have made the final liquidation, administration, and distribution of the Wind-Down Debtors' Assets in accordance with the terms of the Plan Administration Agreement and the Plan, and the PA Officer has fully performed all other duties and functions as set forth under the Plan, the Confirmation Order, and/or the Plan Administration Agreement and (b) the Chapter 11 Cases of the Debtors have been closed; or (ii) the PA Officer determines in his, her, or its reasonable judgment, with notice to the New Board and in consultation with the Wind-Down Oversight Committee, that the Wind-Down Debtors lack sufficient assets and financial resources, after reasonable collection efforts, to complete the duties and powers assigned to him, her, or it under the Plan, the Confirmation Order, and/or the Plan Administration Agreement.  After (x) the final distributions pursuant to the Plan, (y) the Filing by or on behalf of the Wind-Down Debtors of a certification of dissolution with the Bankruptcy Court, and (z) any other action deemed appropriate by the PA Officer, the Wind-Down Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions, including the Filing of any documents with the secretary of state for the state in which the Wind-Down Debtors are formed or any other jurisdiction.  The PA Officer, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states.  Any

certificate of dissolution or equivalent document may be executed by the PA Officer on behalf of any Wind-Down Debtor without the need for any action or approval by the shareholders or board of directors or managers of such Wind-Down Debtor.

30.     **Establishment of Appropriate Escrow Accounts and Reserves**.  In accordance with the terms of the Plan, on or before the Effective Date, the Debtors shall establish and hold in trust in a segregated account: (i) the Claims Reserve for each Debtor, (ii) the Professional Fee Escrow Account, (iii) the Litigation Reserve, (iv) the Wind-Down Reserve for each Wind-Down Debtor, and (v) the Disputed Claims Reserve for each applicable Wind-Down Debtor.

31.     **Sources of Consideration for Plan Distributions; Digital Asset Rebalancing**. The Wind-Down Debtors shall make distributions under and in accordance with the Plan (and the Distribution Principles) from Distributable Assets, the Additional GBTC Shares Reserve (subject to the Gemini Reserve Principles), the Gemini GBTC Shares Reserve (subject to the Gemini Reserve Principles), the Claims Reserve, the Disputed Claims Reserve, and the Professional Fee Escrow Account, as applicable.

32.     The Debtors and the Wind-Down Debtors, in consultation with the Wind-Down Oversight Committee and the Gemini Distribution Agent, shall, to the maximum extent permitted by law, be authorized to rebalance their Cash and Digital Assets to enable the Debtors or the Wind-Down Debtors, as applicable, to make distributions in respect of Claims denominated in Digital Assets in the like kind form of Digital Asset in which such respective Claims are denominated. The Debtors, the Wind-Down Debtors, and the Gemini Distribution Agent, to the maximum extent permitted by law, are authorized to effectuate such rebalancing by buying and selling Digital Assets or otherwise exchanging any type of Digital Asset into any other type of Digital Asset; *provided, however*, that no distribution in the form of Digital Assets shall be made to any Holder

that has not responded to all requests by the Debtors, the Wind-Down Debtors, the Disbursing Agent, or the Gemini Distribution Agent, as applicable, for information necessary to facilitate a particular distribution to such Holder.

33.     The Wind-Down Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Wind-Down Debtors to satisfy their obligations under the Plan.  Except as set forth in the Plan, any changes in intercompany account balances resulting from such transfers may be accounted for and/or settled in accordance with the Debtors' historical intercompany account settlement practices and any such action will not violate the terms of the Plan.

34.     **Vesting of Assets**.  Except as otherwise provided in the Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated in the Plan or therein, on the Effective Date: all Assets in each Estate, including all books, records, electronically stored information (including documents and communications), Retained Causes of Action, and any Assets owned or acquired by any of the Debtors, including all assets of GGT that relate to the Debtors, shall vest in each applicable Wind-Down Debtor free and clear of all Liens, Claims, charges, or other encumbrances (other than, for the avoidance of doubt, any Allowed General Unsecured Claims, Allowed Government Penalty Claims, and Allowed Subordinated Claims), including any prohibition on assignability or transfer under applicable non-bankruptcy law.  The vesting of Assets pursuant to the Plan shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Wind-Down Debtors as if the asset or right was still held by the Debtors.  On and after the Effective Date, except as otherwise provided in the Plan, the New Governance Documents, or the Plan Administration Agreement, each Wind-Down Debtor may use, acquire, or dispose of property,

52

and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and free of any prohibition on assignability or transfer under applicable non-bankruptcy law that otherwise may be applicable.

35.    Notwithstanding any prohibition on assignability or transfer under applicable non-bankruptcy law, on and after the Effective Date, if additional Assets become available, such additional Assets shall be treated as if they were transferred to (as applicable) and vested in the applicable Wind-Down Debtor as a successor to the Debtors with all attendant rights, title, and interests in and to all such Assets, in accordance with section 1141 of the Bankruptcy Code.  All such Assets shall automatically vest in the Wind-Down Debtors free and clear of all Liens, Claims, charges, or other encumbrances (other than, for the avoidance of doubt, any Allowed General Unsecured Claims, Allowed Government Penalty Claims, and Allowed Subordinated Claims pursuant to the terms of the Plan).

36.    Except as otherwise provided for in the Plan, to the extent that any Holder of a Secured Claim that has been satisfied in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Wind-Down Debtors that are necessary to cancel and/or extinguish such Liens and/or security interests.

37.    On and after the Effective Date, the Wind-Down Debtors may present Bankruptcy Court order(s) or assignment(s) suitable for filing in the records of every county or governmental agency where the property vested in accordance with the foregoing paragraph is or was located, which provide that such property is conveyed to and vested in the Wind-Down Debtors.  The

Bankruptcy Court order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred, assigned, and/or vested free and clear of. The Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished, and no notice, other than by the Plan, shall be given prior to the presentation of such Bankruptcy Court order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any of the property vested in accordance with Article IV.B.5 of the Plan shall be conclusively deemed to have consented to the transfer, assignment, and vesting of such property to or in the Wind-Down Debtors free and clear of all Liens, Claims, charges, or other encumbrances by failing to object to confirmation of the Plan, except as otherwise provided in the Plan.

38.    **Cancellation of Existing Securities and Agreements**.  On the Effective Date, except to the extent otherwise provided in the Plan: (a) all Interests, and each certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest shall be cancelled or extinguished and the Debtors and the Wind-Down Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of, or Claims against or Interests in, the Debtors shall be released; *provided* that, notwithstanding the releases set forth in Article VIII of the Plan, this Confirmation Order, or the occurrence of the Effective Date, any indenture or agreement that governs the rights of the Holder of a Claim or Interest shall

continue in effect solely for purposes of enabling Holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided therein, including the Distribution Principles; *provided further* that, absent the consent of the Debtors and the Committee's Consent, nothing in Article IV.B.6 of the Plan shall effectuate a cancellation of any Intercompany Interests, Intercompany Claims (except for claims settled as part of the GAP/GGC Settlement or the GGC/GGH Settlement), or Interests.

39.      Notwithstanding anything to the contrary in Article IV.B.6 of the Plan, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, a Debtor or its Interests, as a result of the cancellations, terminations, satisfaction, or releases provided for in Article IV.B.6 of the Plan shall be deemed null and void and shall be of no force and effect. Nothing contained in the Plan shall be deemed to cancel, terminate, or release the obligation of a Debtor or any of its counterparties under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by such Debtor or Wind-Down Debtor, as applicable, pursuant to the Plan or a Final Order of the Bankruptcy Court.

40.      **New Governance Documents**.  On the Effective Date, the New Governance Documents, substantially in the forms set forth in the Plan Supplement, shall be deemed to be valid, binding, and enforceable in accordance with their terms and provisions.

41.      **Directors and Officers of the Wind-Down Debtors**.  As of the Effective Date, the term of the current members of the board of directors, board of managers, or other governing body of the Debtors shall expire automatically and each person serving as a director or manager of a Debtor shall be removed and shall be deemed to have resigned and cease to serve automatically.  The New Board shall be appointed by DCG subject to the limitations set forth in

the Plan; *provided*, *however*, in selecting the Persons for appointment to the New Board, DCG shall only be entitled to appoint those Persons who are identified on a list of five (5) candidates selected by the Committee and the PSA Majority Creditors (as represented by the Ad Hoc Group Counsel), in consultation with the Debtors; *provided*, *further*, that following the Effective Date, the Wind-Down Oversight Committee shall be responsible for identifying any nominees to replace any member of the New Board who needs to be replaced by submitting a list of three (3) Persons for each member of the New Board who needs to be replaced; and, *provided*, *further*, that in no event shall DCG be entitled to terminate any member of the New Board. The New Board shall govern each of the Wind-Down Debtors and consult with the Wind-Down Oversight Committee on various matters identified in the Plan and the Plan Administration Agreement.

42.    **Preservation of Causes of Action.**  In accordance with and subject to section 1123(b)(3) of the Bankruptcy Code, but subject in all respects to Article VIII of the Plan, the Wind-Down Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action belonging to the Debtors or their Estates (including any Causes of Action that belong to the Other Genesis Entities), whether arising before or after the Petition Date, including any Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Wind-Down Debtors shall be vested with all rights, powers, and privileges of the Debtors (including the rights and powers of the Debtors under chapter 5 of the Bankruptcy Code) and may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors. Notwithstanding anything to the contrary in the Plan, all rights in any Retained Causes of Action shall vest in the Wind-Down Debtors as of the Effective Date, and may be

pursued by the PA Officer in accordance with the provisions of the Plan and the Plan Administration Agreement.

43.     No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Wind-Down Debtors will not pursue any and all available Causes of Action against such Entity. The Debtors or the Wind-Down Debtors expressly reserve all rights to prosecute any and all Causes of Action (including any Causes of Action that belong to the Other Genesis Entities) against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court or any other court, including pursuant to Article VIII of the Plan, the Debtors and the Wind-Down Debtors expressly reserve all Causes of Action (including any Causes of Action that belong to the Other Genesis Entities) for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance shall any Cause of Action preserved pursuant to Article IV.B.14 of the Plan include (a) any claim or Cause of Action with respect to, or against, a Released Party or Exculpated Party, subject in all respects to Article VIII of the Plan, or (b) any Resolved Preference Claims.  On the Effective Date, the Gemini Preference Action shall be dismissed with prejudice, and the Debtors shall take any and all action reasonably necessary, including, without limitation, filing a notice of dismissal with the Bankruptcy Court within five (5) days of the date thereof, to effectuate such dismissal.

44.     In accordance with and subject to section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in the Plan, any Causes of Action that a Debtor may hold against any Entity (including any Causes of Action that belong to the Other Genesis Entities) shall vest in the applicable Wind-Down Debtor.  The applicable Wind-Down Debtors, through their authorized agents or representatives (including the PA Officer), shall retain and may exclusively enforce any and all such Causes of Action.  The Wind-Down Debtors shall have the exclusive right, authority, and, at the direction of the Litigation Oversight Committee, ability to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing (at the direction of the Litigation Oversight Committee) without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court; *provided* that any settlement, compromise, release, withdrawal, or abandonment of any Cause of Action shall require the Litigation Oversight Committee's Consent.

45.     **Substitution in Pending Legal Actions.**  On the Effective Date, the Wind-Down Debtors shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for the applicable Debtors and the Committee, as applicable, in any Causes of Action pending before the Bankruptcy Court or any other court that relates to a Wind-Down Debtors' Asset (including any Causes of Action that belong to the Other Genesis Entities) without the need for filing any motion for such relief.

46.     **Insurance.**  The Wind-Down Debtors shall be authorized to obtain directors', managers', and officers' liability insurance policies. Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Wind-Down Debtors shall be deemed to have assumed all D&O Liability Insurance Policies (including tail coverage liability insurance) pursuant

to section 365(a) of the Bankruptcy Code, to the extent they are Executory Contracts. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Wind-Down Debtors' assumption of each of the D&O Liability Insurance Policies, to the extent they are Executory Contracts, and all D&O Liability Insurance Policies and obligations thereunder shall remain in full force and effect in accordance with their terms.

47.     **Executory Contracts and Unexpired Leases.**  On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to assume, assume and assign, or reject Executory Contracts and Unexpired Leases, and all Executory Contracts or Unexpired Leases shall be deemed rejected as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (i) is designated on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement; (ii) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court; (iii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iv) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date; or (v) is the subject of a motion to reject pursuant to which the requested effective date of such rejection is any date other than the Effective Date.

48.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's order approving the assumptions, assumptions and assignments, or rejections, as applicable, of Executory Contracts or Unexpired Leases as set forth in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date

shall re-vest in and be fully enforceable by the applicable Wind-Down Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment under applicable federal law.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Wind-Down Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases with the Committee's Consent and the Wind-Down Oversight Committee's Consent, as applicable, at any time on or prior to the date that is forty-five (45) days after the Effective Date on no less than seven (7) days' notice to the applicable non-Debtor counterparties.

49.    Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date (or as soon as reasonably practicable thereafter) by a Final Order.

50.    To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the

Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

51.    For the avoidance of doubt, nothing in the Schedules shall in any way be construed as or deemed to be evidence of or reflect an admission on behalf of any of the Debtors that any of the Debtors' master lending agreements or master borrowing agreements, or the loan term sheets associated therewith, shall constitute Executory Contracts.

52.    All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court and served on the Debtors or the Wind-Down Debtors, as applicable, no later than thirty (30) days after the later of (a) the effective date of the rejection of the applicable Executory Contract or Unexpired Lease and (b) the date of entry of an order of the Bankruptcy Court approving the rejection of the applicable Executory Contract or Unexpired Lease.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time shall be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Wind-Down Debtors, the Estates, or their property (as applicable), without the need for any objection by the Debtors or the Wind-Down Debtors, or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and any Claim arising out of such rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, and released, and be subject to the permanent injunction set forth in Article VIII of the Plan, notwithstanding anything in the Proof of Claim, if any, to the contrary.  All Allowed Claims arising from the rejection by any Debtor of any Executory Contracts or Unexpired Leases pursuant to section 365 of the Bankruptcy Code shall

be treated as General Unsecured Claims in accordance with Article III.B–D of the Plan and may

be objected to in accordance with the provisions of Article VII of the Plan and the applicable

provisions of the Bankruptcy Code and the Bankruptcy Rules.

53.    The Indemnification Obligations shall remain in full force and effect and shall not

be discharged or Impaired by Confirmation of the Plan, and the Indemnification Obligations shall

be deemed and treated as Executory Contracts assumed by the Debtors under the Plan, and shall

continue as obligations of the Wind-Down Debtors; *provided*, *however*, that the Wind-Down

Debtors shall not indemnify (i) employees, directors, or officers of the Debtors for any claims or

Causes of Action arising out of or related to any act or omission that constitutes fraud, gross

negligence, or willful misconduct or (ii) any current or former employees, directors, or officers of

the Debtors that are also DCG Parties.

54.    To the extent that any of the Debtors' insurance policies constitute Executory

Contracts, such insurance policies (including all D&O Liability Insurance Policies) and any

agreements, documents, or instruments relating thereto are treated as and deemed to be Executory

Contracts under the Plan and shall be assumed by the Wind-Down Debtors on the Effective Date,

and all other insurance policies shall vest in the Wind-Down Debtors.

55.    **Distributions**.  The procedures governing distributions contained in Article VI of

the Plan, the Distribution Principles, and the Gemini Lender Distribution Principles shall be, and

hereby are, approved in their entirety.

56.    **Claims Register**.  Any duplicate Claim or Interest, any Claim or Interest that has

been paid or satisfied, or any Claim that has been amended or superseded may be adjusted or

expunged on the Claims Register at the direction of the Debtors, the Wind-Down Debtors, or the

PA Officer, as applicable, without the Debtors, the Wind-Down Debtors, or the PA Officer, as

applicable, having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

57.     A Claim may be amended before the Confirmation Date only as agreed upon by the Debtors and the Holder of such Claim, or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules, or applicable non-bankruptcy law. On or after the Confirmation Date, the Holder of a Claim (other than an Administrative Expense Claim, a Claim for rejection damages for which the applicable objection deadline has not passed, or a Professional Fee Claim) must obtain prior authorization from the Bankruptcy Court or the Debtors or the Wind-Down Debtors, as applicable, to File or amend a Claim. Any new or amended Claim (other than Administrative Expense Claims, Claims for rejection damages for which the applicable objection deadline has not passed, or Professional Fee Claims) filed after the Confirmation Date without such prior authorization shall not appear on the Claims Register and shall be deemed Disallowed in full and expunged without any action required of the Debtors or the Wind-Down Debtors and without the need for any court order.

58.     **Late Filed Claims**.  On the Effective Date, any Claim that has been listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim has been timely filed, shall be deemed Disallowed and shall be expunged without further action and without any further notice to or action, order, or approval of the Bankruptcy Court. Except as provided in the Plan or this Confirmation Order, in an order of the Bankruptcy Court, or otherwise agreed, any and all Proofs of Claim Filed after the applicable bar date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of

such Claims, unless at or prior to the Confirmation Hearing such late Claim has been Allowed by a Final Order.

59.    **Professional Compensation**.    The provisions governing compensation of Professionals set forth in Article II.B of the Plan are approved in their entirety.  All final requests for payment of Professional Fee Claims through and including the Effective Date shall be Filed no later than sixty (60) days after the Effective Date.  Objections to any Professional Fee Claim shall be Filed and served on the Debtors or, from and after the Effective Date, the Wind-Down Debtors and the requesting Professional no later than twenty (20) days after such final request for payment of Professional Fee Claims is Filed with the Bankruptcy Court.

60.    **Ad Hoc Group Restructuring Expenses**.    The Ad Hoc Group Restructuring Expenses shall be allowed as administrative expenses and are hereby approved in their entirety. The Ad Hoc Group Restructuring Expenses shall be paid on the Effective Date.

61.    **Dollar Group Restructuring Fees and Expenses**.    The Dollar Group Restructuring Fees and Expenses shall be allowed as administrative expenses and are hereby approved in their entirety.  The Dollar Group Restructuring Fees and Expenses shall be paid on the Effective Date.

62.    **Subordination.**    Except as expressly provided in the Plan, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Wind-Down Debtors, as applicable,

reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto. The Debtors and the Wind-Down Debtors reserve their rights to seek to subordinate any and all portions of the DCG Claims and/or the Excluded Party Claims.

63.    **Compromise and Settlement of Claims, Interests, and Controversies**. Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, which distributions, releases, and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan, including the Distribution Principles, the general settlement and/or release of Claims, Interests, and controversies described in Article VIII of the Plan, the GAP/GGC Settlement described in Article IV.C of the Plan, and the GGC/GGH Settlement described in Article IV.D of the Plan, and the distributions, releases, and other benefits provided thereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

64.    The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and are fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Wind-Down Debtors may compromise and settle Claims against, and Interests in, the Debtors and

their Estates and Causes of Action against other Entities, subject to any applicable consent rights and procedures set forth in the Plan.

65.     **Release, Exculpation, and Injunction Provisions**.  All injunction, release, and exculpation provisions set forth in the Plan, including, but not limited to, those contained in Articles VIII.C, VIII.D, VIII.E, VIII.F, and VIII.G of the Plan, are approved and shall be effective and binding on all persons and entities to the extent provided therein.

66.     **No Discharge.**  Nothing in the Plan or this Confirmation Order grants the Debtors a discharge pursuant to section 1141(d) of the Bankruptcy Code.

67.     **Governmental Entities**.

68.     Notwithstanding any language to the contrary contained in the Disclosure Statement, the Plan and/or this Confirmation Order, no provision of the Plan or the Confirmation Order shall (i) preclude the SEC or any other Governmental Unit from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC or any other Governmental Unit from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor Person or non-Debtor Entity in any forum.

69.     The enforcement of any money judgment by the SEC or other Governmental Units against the Debtors or the Wind-Down Debtors shall be subject to the Plan.  In addition, the SEC and other Governmental Units reserve their rights to amend any Filed Proofs of Claim and the Debtors and the Wind-Down Debtors reserve all of their defenses and rights to dispute such amendments.

70.     Notwithstanding anything to the contrary in the Plan, the Disclosure Statement, or this Confirmation Order, or any findings announced in connection with the Plan, the Disclosure Statement, or this Confirmation Order, nothing in the Plan, the Disclosure Statement, or this

Confirmation Order shall constitute a finding under either federal or state (including New York State) securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the SEC or other Governmental Units to challenge transactions involving crypto tokens on any basis is expressly reserved.  The Bankruptcy Court is not making any findings as to the availability of any exemptions under the securities laws.

71.    Nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) of the State of Texas or New Jersey (a "*Texas or New Jersey Governmental Unit*") that is not a Claim as defined in 11 U.S.C. § 101(5); (ii) any Claim of a Texas or New Jersey Governmental Unit against the Debtors arising on or after the Confirmation Date; (iii) any liability to a Texas or New Jersey Governmental Unit under police and regulatory statutes or regulations that any Entity would be subject to as the owner or operation of property after the Confirmation Date; or (iv) any liability to a Texas or New Jersey Governmental Unit on the part of any Person other than the Debtors.  Nor shall anything in this Confirmation Order enjoin or otherwise bar a Texas or New Jersey Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence; *provided*, however, that any Claim of any Governmental Unit arising before the Petition Date shall remain subject to the Bar Date Order and nothing in this Confirmation Order or the Plan shall modify in any respect the Bar Date Order.

72.    Further, nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order shall relieve any entity from any obligation to address or

comply with information requests or inquiries from any Texas or New Jersey Governmental Unit. Nothing in this Order shall affect any setoff or recoupment rights of any Texas or New Jersey Governmental Unit. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

73.     Any and all state regulatory orders and regulatory judgments issued to or against Debtors prior to, during or after this Bankruptcy Case are not discharged, released, or otherwise affected by confirmation of the Plan. For the avoidance of doubt, the State of Texas and State of New Jersey and their agencies opt out of any and all releases provided in the Plan. The Claims of the State of Texas and its agencies shall be addressed as reflected in the Stipulation & Order entered at ECF No. 1370 and the Claims of the State of New Jersey and its agencies shall be addressed as reflected in the Stipulation & Order entered at ECF No. 1369.

74.     **Tax Withholding**. In connection with the Plan, to the extent applicable, the Debtors, the Wind-Down Debtors, the PA Officer, the Disbursing Agent, the Gemini Distribution Agent, and any applicable withholding agent shall comply with all applicable tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions until receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. All Persons holding Claims against any Debtor shall be required to

68

provide any additional information reasonably necessary for the Debtors, the Wind-Down Debtors, the PA Officer, the Disbursing Agent, the Gemini Distribution Agent, and any applicable withholding agent to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, including an IRS Form W-8 or W-9, as applicable, and any other applicable tax forms. The Debtors, the Wind-Down Debtors, the PA Officer, the Disbursing Agent, the Gemini Distribution Agent, and any applicable withholding agent reserve the right to allocate all distributions made under the Plan in a manner that complies with all other legal requirements, such as applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.  Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

75.    **Payment of Statutory Fees**.  On or before the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930 shall be paid by the Debtors in Cash.  After the Effective Date, each Wind-Down Debtor shall pay any and all such fees owed by it for each quarter (including any fraction thereof), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, until its respective Chapter 11 Case is converted, dismissed, or a Final Decree is issued, whichever occurs first.  The Wind-Down Debtors shall continue to file quarterly, post-confirmation operating reports in accordance with the U.S. Trustee's guidelines.

76.    **Documents, Mortgages, and Instruments**.  Each federal, state, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, or instruments necessary or appropriate to effectuate, implement, or consummate the Plan.

77.    **Return of Deposits**.  All utilities, including, but not limited to, any Person or Entity that received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases are directed to return such deposits or other form of adequate assurance of performance to the Wind-Down Debtors promptly following the occurrence of the Effective Date, if not returned or applied earlier.

78.    **Filing and Recording**.  This Confirmation Order is binding upon and shall govern the acts of all Persons or Entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons and Entities, who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, (a) any issuance, transfer, or exchange of a Security (if any), (b) any creation of any Lien, mortgage, deed of trust, or other security interest, or (c) any sale, liquidation, or transfer of property, in each case, pursuant to, in contemplation of, or in connection with, the Plan, including the transfer of any Assets to the Wind-Down Debtors and any rebalancing of Distributable Assets, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall

forgo the collection of any such tax or governmental assessment and accept for filing and recordation any instruments of transfer or other relevant documents without the payment of any such tax, recordation fee, or governmental assessment.

79.     **Continued Effect of Stays and Injunctions**.  Unless otherwise provided in the Plan, this Confirmation Order, or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

80.     **Authorization to Consummate**.  The Debtors are authorized to consummate the Plan and the Restructuring at any time after entry of this Confirmation Order subject to satisfaction, or waiver in accordance with Article IX.B of the Plan, of the conditions precedent to the Effective Date set forth in Article IX of the Plan.

81.     **Conditions Precedent to the Effective Date**.  The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan.

82.     **Nonseverability of Plan Provisions upon Confirmation**.  Subject to Article XII.H of the Plan, each term and provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent, the Committee's Consent, the Ad Hoc Group's Consent, and solely to the extent that (i) the treatment of Gemini Lender Claims, (ii) the provisions with respect to the Additional GBTC Shares or the

Gemini GBTC Shares (subject to the Gemini Determinations), or (iii) the Gemini Distribution Agent's role pursuant to the Distribution Principles is not consistent with the terms set forth in the Plan (including the Gemini Lender Distribution Principles), Gemini's Consent (if the Gemini Acceptance Event has occurred and is continuing); and (c) nonseverable and mutually dependent.

83. **Post-Confirmation Modifications**.    Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and the restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights, with the Committee's Consent, the Ad Hoc Group's Consent, and Gemini's Consent (if the Gemini Acceptance Event has occurred and is continuing at the time of such alteration, amendment, or modification) or in the exercise of the Debtors' Fiduciary Duty Action, to alter, amend, or modify the Plan (including any exhibit or Plan Supplement), one or more times, after Confirmation, and, to the extent necessary, initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan (including any exhibit or Plan Supplement), or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.  Notwithstanding anything to the contrary in the Plan, the Disclosure Statement, or this Confirmation Order, the Debtors shall provide at least three (3) Business Days' prior written notice with an opportunity to object to the SEC (c/o William M. Uptegrove, U.S. Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326, UptegroveW@SEC.GOV) of any alteration, amendment, or modification of the Distribution Principles.

84. **Lead Securities Plaintiffs Matters**.  Until the entry of a final order of judgment or settlement in the securities class action pending in the United States District Court for the District of Connecticut under the caption, *William McGreevy, Ashwin Gowda, Translunar Crypto LP,*

*Christopher Buttenham, and Alex Sopinka, individually and on behalf of all others similarly situated v. Digital Currency Group, Inc. and Barry Silbert*, Case No. 3:23-cv-00082 (the "**Securities Litigation**"), the Debtors and any transferees, successors, and/or assigns (including the Wind-Down Debtors and PA Officer) of the Debtors' books, records, documents, files, electronic data (in whatever format, including native format), or any tangible object potentially relevant to the Securities Litigation, wherever stored (collectively, the "**Potentially Relevant Books and Records**") shall preserve and maintain such Potentially Relevant Books and Records, and shall not destroy, abandon, transfer, or otherwise render unavailable such Potentially Relevant Books and Records without providing counsel to the lead plaintiff(s) in the Securities Litigation at least sixty (60) days' advance written notice and an opportunity to object and be heard by a court of competent jurisdiction.    In the event the lead plaintiff(s) timely object(s) to any such destruction, abandonment, or transfer, the Potentially Relevant Books and Records shall be preserved until the earlier of (a) a final order of the Bankruptcy Court or other court of competent jurisdiction regarding the disposition of the Potentially Relevant Books and Records, and (b) the date the party in possession, custody, or control of such Potentially Relevant Books and Records provides originals or true copies thereof to counsel for the lead plaintiff(s) in the Securities Litigation.

85.    **Gemini Matters**.  Until the entry of a Final Order of judgment or dismissal with prejudice in any and all litigations, arbitrations, or regulatory proceedings related to or arising from the Gemini Earn Program in which Gemini is a party (collectively, the "**Earn Actions**"), the Debtors, the Wind-Down Debtors, the PA Officer, and any transferee or custodian of the Debtors shall preserve and maintain all documents relating to the Gemini Earn Program, all communications between the Debtors and Gemini, and all documents related to inter-company obligations among the Debtors, the Other Genesis Entities, and/or the DCG Parties (collectively,

the "*Gemini Litigation Documents*") as subject to a duty to preserve them under the Federal Rules of Civil Procedure, federal law, and analogous state law and shall not destroy, abandon, transfer, or otherwise render unavailable such Gemini Litigation Documents without providing counsel to Gemini (c/o Anson B. Frelinghuysen, Esq., Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York New York 10004, email: anson.frelinghuysen@hugheshubbard.com; and Jack Baughman, Esq., Baughman Kroup Bosse PLLC, One Liberty Plaza, 46th Floor, New York, New York 10006, email: jbaughman@bkbfirm.com) at least sixty (60) days' advance written notice and an opportunity to object and be heard by a court of competent jurisdiction. In the event Gemini timely objects to any such destruction, abandonment, or transfer, the Gemini Litigation Documents shall be preserved until the earlier of (a) a final order of the Bankruptcy Court or other court of competent jurisdiction regarding the disposition of the Gemini Litigation Documents and (b) the date the party in possession, custody, or control of such Gemini Litigation Documents provides originals or true copies thereof to counsel for Gemini in the applicable Earn Actions. For the avoidance of doubt, the injunction set forth in Article VIII.G of the Plan shall not affect in any manner any rights of Gemini to seek and obtain Gemini Litigation Documents through discovery in the Earn Actions, or the defenses of the Debtors, the Wind-Down Debtors, the PA Officer, or any transferee or custodian of the Debtors with respect to any such discovery.

86.     **Reversal/Stay/Modification/Vacatur of Confirmation Order**. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors prior to the effective date of such reversal, stay, modification, or

vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation

Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this

Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall

be governed in all respects by the provisions of this Confirmation Order and the Plan or any

amendments or modifications thereto.

87.    **Applicable Non-Bankruptcy Law.**  The provisions of this Confirmation Order,

the Plan, and related documents, or any amendments or modifications thereto, shall apply and be

enforceable notwithstanding any otherwise applicable non-bankruptcy law.

88.    **Waiver of Filings**.  Any requirement under section 521 of the Bankruptcy Code or

Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the

Bankruptcy Court or the Office of the United States Trustee for the Region 2 for the Southern

District of New York (the "***U.S. Trustee***") (except for monthly operating reports or any other post-

confirmation reporting obligation to the U.S. Trustee) is hereby waived as to any such list,

schedule, or statement not filed as of the Confirmation Date.

89.    **Dissolution of Statutory Committees**.  On the Effective Date, the Committee and

any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve

automatically and all members thereof (solely in their capacities as such) shall be released and

discharged from all rights, duties, and responsibilities arising from, or related to, the Chapter 11

Cases; *provided*, *however*, that the Committee shall continue to exist and its Professionals shall

continue to be retained without further order of the Bankruptcy Court with respect to (a) the

preparation and prosecution of any final fee applications of the Committee's Professionals and (b)

all final fee applications Filed with the Bankruptcy Court.

90.     **Notice of Entry of the Confirmation Order and Occurrence of Effective Date**. The Debtors or the Wind-Down Debtors, as applicable, shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of applicable deadlines (the "***Notice of Confirmation***") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with the Confirmation Hearing Notice seven (7) Business Days after the Effective Date; *provided* that no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Service of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice shall be necessary.

91.     No later than ten (10) Business Days after the Effective Date, the Wind-Down Debtor shall cause the Notice of Confirmation, modified for publication, to be published on one occasion in The New York Times (national edition) and CoinDesk.  Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary.

92.     **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

93.    **References to Particular Plan Provisions**.  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or this Confirmation Order.

94.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

95.    **Effect of Conflict**.  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms and provisions of the Plan and this Confirmation Order, then, solely to the extent of such inconsistency, the terms and provisions of this Confirmation Order govern and control.  The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless otherwise expressly stated herein or by further order of the Court.

96.    **Final Order.**  This Confirmation Order is a Final Order, and the period in which an appeal must be filed shall commence upon the entry hereof.

97.    **Retention of Jurisdiction**.  Except as set forth in the Plan or this Confirmation Order, the Bankruptcy Court may properly and, upon the Effective Date, shall retain jurisdiction over all matters arising in and under, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

**# # # END OF ORDER # # #**

**Exhibit A**

**Plan**