Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-10063-shl

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GENESIS GLOBAL HOLDCO, LLC,

8

9              Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    One Bowling Green

14                    New York, NY 10004-1408

15

16                    Wednesday, February 21, 2024

17                    11:22 AM

18

19

20

21   B E F O R E :

22   HON. SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: ARIANNA PERSAUD

1    CONFERENCE re discovery requests in connection with a

2    pending 9019 motion

3

4    RULING re discovery requests in connection with a pending

5    9019 motion

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Doreen A. Bolognini

Page 3

1    A P P E A R A N C E S :

2

3    CLEARY GOTTLIEB STEEN & HAMILTON LLP

4         Attorneys for Debtor

5         One Liberty Plaza

6         New York, NY 10006

7

8    BY:  THOMAS S. KESSLER (VIRTUALLY)

9         SEAN A. O'NEAL (VIRTUALLY)

10

11   WEIL GOTSHAL & MANGES LLP

12        Attorneys for Digital Currency Group (DCG)

13        767 Fifth Avenue

14        New York, NY 10153-0119

15

16   BY:  JOSH WESNESKI (VIRTUALLY)

17        JEFFREY D. SAFERSTEIN (VIRTUALLY)

18        FURQAAN SIDDIQUI (VIRTUALLY)

19

20   PROSKAUER ROSE LLP

21        Attorneys for Ad Hoc Group

22        Eleven Times Square

23        Eighth Avenue and 41st Street

24        New York, NY 10036-8299

25

Page 4

1  BY:  BRIAN S. ROSEN (VIRTUALLY)

2       JORDAN SAZANT (VIRTUALLY)

3

4  MCDERMOTT WILL & EMERY

5       Attorneys for Crypto Creditor Ad Hoc Group

6       One Vanderbilt Avenue

7       New York, NY 10017-3852

8

9  BY:  GREER GRIFFITH (VIRTUALLY)

10      JOSEPH B. EVANS (VIRTUALLY)

11

12 WHITE & CASE LLP

13      Attorneys for Committee of Unsecured Creditors

14      1221 Avenue of the Americas

15      New York, NY 10020-1095

16

17 BY:  SEQUOIA KAUL (VIRTUALLY)

18

19

20

21

22

23

24

25

Page 5

1                    P R O C E E D I N G S

2              THE COURT:  Good morning.  This is Judge Sean Lane

3    in the United States Bankruptcy Court for the Southern

4    District of New York, and we're here for an 11 o'clock

5    conference in the Genesis case, specifically about a

6    discovery issue that has arisen.

7              And so, let me start by getting appearances, first

8    on the behalf of the Debtor.

9              MR. KESSLER:  Good morning, Your Honor.  Tom

10   Kessler from Cleary Gottlieb Steen and Hamilton, on behalf

11   of the Debtors.  And I am joined this morning by my partner

12   Sean O'Neal.

13             THE COURT:  All right.  Good morning.  And on

14   behalf of DCG?

15             MR. WESNESKI:  Good morning, Your Honor.  Josh

16   Wesneski from Weil Gotshal and Manges, on behalf of DCG.

17   With me is Jeff Saferstein and Furqaan Siddiqui.

18             THE COURT:  All right, good morning.  On behalf of

19   the Ad Hoc Group?

20             MR. ROSEN:  Good morning, Your Honor.  Brian

21   Rosen, Proskauer Rose.  With me this morning is Mr. Jordan

22   Sazant.

23             THE COURT:  Good morning.  On behalf of the Crypto

24   Ad Hoc Group?

25             MS. GRIFFITH:  Good morning, Your Honor.  Greer

Page 6

1    Griffith from McDermott Will and Emery.  With me today is my

2    colleague Joe Evans.

3              THE COURT:  All right, good morning.  And anyone

4    else who needs to make an appearance this morning who I may

5    have inadvertently overlooked?

6              MS. KAUL:  Good morning, Your Honor.  Sequoia Kaul

7    from White and Case on behalf of the Committee of Unsecured

8    Creditors.

9              THE COURT:  All right.  My apologies.  I -- I had

10   you written down but I hadn't called you, so I clearly

11   goofed there.  Thank you very much for making your presence

12   known.

13             Anyone else who needs to make an appearance?  All

14   right.  So today is the follow-up on a conversation that was

15   -- that we dipped our toe in the water but didn't actually

16   fully jump in the other day.

17             And, Mr. Kessler, I think it was your discovery

18   issue, so why don't you start us off and I will make sure to

19   circle the virtual room for everybody's views who's

20   interested before we're done.

21             MR. KESSLER:  Very good.  Thank you, Your Honor.

22   Tom Kessler from Cleary Gottlieb, again for the record.

23   This is a, I think, a pretty straightforward dispute that we

24   have with DCG.

25             We served discovery requests on DCG in connection

Page 7

1   with a pending 9019 motion seeking to settle the New York

2   Attorney General's claims.  Among other things, those

3   requests asked for communications between DCG and the New

4   York Attorney General's Office.  The time period that we

5   sought for those communications was July 14th, 2023 through

6   February 8th, 2024.  That's the same period that DCG asked

7   for communications from the Debtors and the same period that

8   the Debtors produced communications in response to DCG's

9   requests.

10         After some back and forth, DCG has agreed to

11   produce, and just this morning has produced communications

12   beginning on October 19th, 2023.  That's the date of the New

13   York Attorney General's initial complaint, but they have

14   refused to provide documents from the earlier period, from

15   July 14th through 10/19.  And argue those documents are

16   every bit as responsive as the later set.

17         Number 1, as I mentioned, it's the same time

18   period that DCG itself sought discovery from the Debtors

19   for.  And I think more directly, during the discovery that

20   has been adduced over the past week, there have been lines

21   of questioning and depositions that have inquired as to the

22   appropriateness of the settlement in light of the purported

23   or relative value of the claims asserted by the New York

24   Attorney General.  There have been questions questioning the

25   timing of the settlement discussions that the Debtors were

Page 8

1      having with the New York Attorney General's Office.

2              And so, from our perspective, to the extent that

3      there were communications going on between DCG and between

4      the New York Attorney General, in particular, with respect

5      to a potential settlement of the claims that were being

6      investigated and then formally brought by the New York AG,

7      we think that bears on the arguments that we expect DCG to

8      make in their filing here in about half an hour.

9              So it's a small -- as far as we understand it's a

10     narrow time parameter.  I expect it to be a small set of

11     documents.  I will confess that as of the last discussion we

12     had with DCG's Counsel yesterday late afternoon, it was our

13     understanding that they had not searched for those

14     communications and couldn't tell whether or what the volume

15     of those communications would be or whether there were any

16     relative communications in that time period.  And so,

17     without that information we're simply not in a position to

18     accept the premise that searching, collecting, and producing

19     those documents would somehow be a burden.

20              THE COURT:  All right.  Mr. Wesneski, what can you

21     tell me?

22              MR. WESNESKI:  Sure, Your Honor.  Thank you.  Josh

23     Wesneski of Weil Gotshal, on behalf of DCG.  Just one quick

24     point in response to Mr. Kessler's last comment.  We have

25     undertaken some efforts to figure out the universe of

Page 9

1    documents here.

2           As I expressed to Mr. Kessler, the challenge with

3    the additional time period is that there are additional

4    custodians we would have to collect from beyond what has

5    already been done.  We are working with those folks to try

6    and get ahead of this issue if we need to, but there are

7    documents that we don't believe are relevant but would be

8    perhaps technically responsive to the RFP's from the

9    Debtors.  So there are some documents, again, we don't think

10   they're relevant.

11          But I think more -- more sort of centrally, you

12   know, we're here on a motion by the Debtors to approve of a

13   settlement between the Debtors and the New York Attorney

14   General.  DCG is not a party to that settlement.  The claims

15   against DCG are not being settled under that agreement.

16   They're not even really at issue except perhaps

17   collaterally.

18          So what DCG thinks about the claims against it or

19   the efforts with the New York Attorney General to settle

20   with those claims, has really no bearing on whether or not

21   the settlement here for the Debtors is justifiable within

22   the range of reasonable settlement.

23          THE COURT:  Well, I'm not so sure about that,

24   right?  The -- I've read the complaint.  It's customer-

25   focused to say that at the end of the day they think the

Page 10

1    customers ended up on the short end of the stick and that

2    that was a result of -- of the actions of the Defendants.

3    And so, if -- if that's the case, how exactly the actions of

4    various parties overlapped in terms of what the customers

5    ultimately got in the AG's point of view, the actual overlap

6    may be not precise, but if -- I'm having trouble siloing it

7    as a totally separate issue.

8            And so, if -- if you're going to make a run at the

9    claim saying -- and I think it was just said about whether

10   the -- there's essentially questioning the relative value of

11   the claim, I think is how Mr. Kessler put it -- I -- I --

12   I'm having trouble understanding why those conversations

13   couldn't theoretically be -- be relevant.

14           MR. WESNESKI:  Well, I think, Your Honor, there's

15   -- there are two questions.  One is with respect to the

16   underlying conduct, is there overlap between the claims

17   against DCG and the claims against the Debtors; and

18   certainly that's the case.  Much of the, you know, the same

19   -- much of the same conduct that is alleged with respect to

20   the Debtors also forms the basis for the claims against DCG.

21   And we think that there are additional arguments that DCG

22   has access to that the Debtors don't have access to, but --

23   but I agree certainly, as sort of basically that the

24   allegations are the same.

25           But what we're asking here is whether the

Page 11

1    negotiations as to a settlement overlap or are relevant to

2    the evaluation of the settlement put forth by the Debtors

3    that focuses exclusively on the Debtor's (inaudible).

4           So the Debtors certainly are of the opinion

5    through the settlement that their claims can be desegregated

6    from those of DCG, that they can be evaluated separately and

7    they can be settled separately.  So they've taken that

8    position that they can in fact be siloed; they have siloed

9    them in their settlement with the New York Attorney General.

10   So we don't think that they can pull in the claims against

11   DCG and look at, you know, what DCG has advocated to the New

12   York Attorney General about the value of those claims or the

13   merits of those claims, to say whether the settlement here

14   is within the reasonable range of values.

15          And I'll add just one more point here.  You know,

16   we -- we have been trying to work collaboratively and -- and

17   productively with the Debtors, and I think that we have done

18   so on both sides.  Where we were, you know, sort of headed

19   was to try and figure out what actually is it that the

20   Debtors want here.  You know, I understood the Debtors were

21   principally concerned about was the timing point.

22          The timing of the settlement discussions between

23   the Debtors and the New York Attorney General has lined up

24   or not lined up with what DCG was doing within that same

25   time period.  And the time period that was represented to me

Page 12

1    was late-Fall through February 2024.  That's the time period

2    that the Debtors are concerned about with respect to their

3    negotiations and we've produced the documents between DCG

4    and the New York Attorney General in that timespan.

5           What we're talking about is pre-complaint

6    negotiations or discussions or communications that -- that

7    necessarily would not overlap or line up with the -- the

8    time period that we're talking about later on between the

9    Debtors and the New York Attorney General.  So I think based

10   on what they have represented to us at least, is the basis

11   for why they need these documents.  We've provided all the

12   information that they need to make any deductions or

13   conclusions about what DCG was saying or negotiating with

14   the New York Attorney General during those relevant time

15   period.

16           So I think, you know, we're already sort of on --

17   I think we're already sort of in the outer boundaries of

18   relevancy.  You know, we wanted to negotiate that.  We

19   wanted to compromise so that's why we produced the documents

20   that we did.  But now, trying to go even further to a time

21   period that we think really doesn't have any overlap or

22   relevance to what the Debtors have indicated is the basis

23   for their document request.

24           THE COURT:  All right.  Let me circle the room,

25   and we'll start with the official committee.

Page 13

1          MS. KAUL:  Nothing from us, Your Honor.

2          THE COURT:  All right.  Anything from the Ad Hoc

3     Group?

4          MR. ROSEN:  Nothing, Your Honor, other than the

5     fact that I thought it was interesting that Mr. Wesneski

6     said that this was a settlement and that they really didn't

7     have anything to say about it because it was a settlement

8     that the Debtors entered into, and yet they served us with

9     discovery, claiming that we should be responsive to that,

10    even though the Ad Hoc Group was not a party to the

11    settlement itself.  I thought it was just a little bit

12    contradictory on his part.  Thank you, Your Honor.

13         THE COURT:  All right, thank you.  On behalf of

14    the Crypto Ad Hoc Group?

15         MS. GRIFFITH:  Nothing from us, Your Honor.

16         THE COURT:  All right.  Anybody that I may have

17    missed who wants to chime in?  All right.

18         I am -- I'm -- see this the way the Debtors see

19    this for a couple of reasons.  I -- I -- the notion that you

20    can have exactly the same -- I mean, there was a concession

21    that this is overlapping conduct for the claim, same

22    allegations, and the notion you can silo it simply because

23    there's a settlement of one party and not another, that

24    doesn't make any sense to me, right?  Individual defendants

25    settle cases all the time.  That doesn't mean that -- and --

Page 14

1    and settling or not settling is a -- is a function of a lot

2    of different considerations by parties.  But that doesn't

3    mean in an instance where you're really talking about the

4    same allegations that -- that if the -- if -- if DCG is

5    asked for this kind of information for this exact same

6    period, it -- it seems frankly, fairly aggressive to say

7    that -- that what's good for the goose isn't good for the

8    gander.  And so, I don't -- I -- I don't see any way that

9    this isn't relevant.

10              Now again, I don't know exactly when who was

11   talking to with who about what, but that's not the way you

12   look at discovery because that's what the -- the argument

13   will be about the 9019 and the merits of whatever the issues

14   are.  But for purposes of discovery, the fact that there's

15   overlapping allegations by the AG's about what they view as

16   improper conduct that led them to sue the parties that they

17   sued because of damage to the customers is -- so it seems to

18   be -- if it's relevant for the Debtors and indeed for the Ad

19   Hoc Group, it -- it would seem to certainly be fair game for

20   DCG.

21              And as to the timeframe, I can understand the

22   timeframe issue but again, it's what DCG has asked for the

23   same timeframe, and if -- if you think that timeframe is

24   relevant, then it seems only fair to -- to hold you to that

25   same view when -- when looking at discovery the other way.

Page 15

```
 1              So -- so from my point of view, it also doesn't

 2      seem to be frankly, a particularly voluminous set of

 3      documents that you're going to get, you know, in terms of

 4      what discovery looks like it matters.  It seems to be fair,

 5      and again, it seems to be proportional to what the ask is

 6      for -- for the other way.

 7              And so, again, given the same -- same allegations,

 8      the fact that you're -- you're both -- both parties are --

 9      are parties to the AG's lawsuit and -- and what the

10      settlement is, the reasonableness as to the settlement

11      really has to do with people's views about the litigation.

12      It seems to be fair game.

13              So -- so that's my ruling and I trust that those

14      documents can be searched for and produced.  It sounds like

15      there are additional custodians.  And so, in light of that,

16      what I'd ask is that those documents be produced as soon as

17      possible on a rolling basis.  There's no need to wait for

18      all the documents to be assembled to start producing what

19      you already have in your possession.

20              And so with that, any other issues anyone needs to

21      address here this morning?

22              MR. SAFERSTEIN:  Your Honor, if I may?  Jeffrey

23      Saferstein from Weil Gotshal on behalf of DCG.

24              THE COURT:  Okay.

25              MR. SAFERSTEIN:  Your Honor, I just wanted to
```

1    preview for the Court our objection will be filed in the

2    next 20 minutes or so to the motion for approval to

3    settlement with the New York Attorney General.  And again, I

4    want to preview for the Court we're going to be filing that

5    under seal given the confidential information that we've

6    received from other parties.

7            So as we discussed yesterday, our plan is to work

8    with parties to see what actually needs to be redacted and

9    filed under seal and what does not.  But I just wanted to

10   let Your Honor know that that was happening.

11           THE COURT:  I appreciate that.  And -- and

12   frankly, those conversations are easier to have when you

13   file what you have filed, and then you can send it out to

14   people and say what if anything needs to remain under seal.

15   So I think the one-step, two-step we're going to have then

16   is -- is what we sort of contemplated the other day.  You

17   file it under seal and then once you have those

18   conversations you file a -- a subsequent unredacted, either

19   full or partially unredacted document that you can link back

20   on the ECF system to the original filing and so people will

21   understand sort of the one-step, two-step.  But thank you

22   for the heads-up.

23           And obviously do us a favor and send us an

24   unredacted copy.  I know you all have been very good about

25   doing that.  You'd be surprised the cases where sometimes we

Page 17

1   -- we have to ask people to get those and we really -- when

2   something's redacted obviously, we -- you don't send it to

3   us, we don't have it.  So that would be great.  Thank you

4   for bringing that issue up.   Anything else?

5              MR. SAFERSTEIN:  Nothing here, Your Honor.  Thank

6   you.

7              THE COURT:  All right.

8              MR. KESSLER:  Your Honor, it's Tom Kessler from

9   Cleary Gottlieb again for the Debtors.  Two short things.

10  One, like Mr. Saferstein, I suspect we'll also be filing our

11  reply under seal and we'll work with everyone to make sure

12  that we're following the proper procedures.

13             I appreciate Your Honor's direction in terms of

14  rolling production.  I would just say that given that our

15  objection that our reply deadline is coming by Friday mid-

16  day, that we would ask that that production of documents be

17  completed not later than tomorrow.

18             THE COURT:  Yeah, I think it needs to be completed

19  as soon as possible.  I -- I would agree with that, and

20  because the alternative is something nobody wants, which is,

21  Your Honor, we're making an argument here sitting in court

22  that we could make in our papers because we didn't have the

23  documents, and that's bad for everybody.  We'd much rather

24  have everybody be able to -- to lay out what they want in

25  their papers and then we at least know what we're fighting

1    about, so it's in everybody's interest to have that step

2    taken.

3        So obviously I'm -- I'm not on the ground here so

4    I don't really know what the production involves, so I have

5    the luxury of saying do it as quickly as possible and hope

6    that that will resolve all issues.  Being in your shoes in

7    the past, I -- I know it's not that simple but I appreciate

8    all efforts that you can take to remove this as an issue.

9        MR. WESNESKI:  Thank you, Your Honor.  This is

10   Josh Wesneski from DCG.  I have every confidence that we'll

11   be able to produce them tomorrow, and if for some reason

12   there is issues, Mr. Kessler and I will work them out as I

13   think we've been able to in the past, but I have every

14   confidence we'll be able to meet that deadline.

15       THE COURT:  All right.  I appreciate it.  And

16   obviously, given the complexity of the litigation, the fact

17   that I've had a very small amount of conversations of this

18   type is attributed to the fact that you're working together

19   and communicating well, and I appreciate that.  We all know

20   how poorly cases work when that's not happening.  So thank

21   you all very much.  And with that, I bid you all  --

22       MS. GRIFFITH:  Your Honor?

23       THE COURT:  Yes.

24       MS. GRIFFITH:  Your Honor, Greer Griffith from the

25   Crypto Creditor Ad Hoc Group.  While we're all together, I

Page 19

1    have a brief clarification question about the hearing next

2    week.  I believe at an earlier conference with you, you

3    mentioned that each of the parties would have 15 minutes for

4    an opening statement.  I'm just following up to confirm that

5    that is correct and that is still your intention.

6              THE COURT:  Yeah, that's my intention, just to

7    basically the layout, the skeleton on which the various

8    facts will come in and how they fit.  But 15 minutes is

9    really 15 minutes in the sense of what I need is the basics.

10   We'll obviously get into things in granularity, certainly

11   your papers do that.  But yeah, 15 minutes would -- would

12   work.

13             I -- I -- depending on the -- the extensiveness of

14   the objections, I -- I may have to think about whether if

15   the Debtors are responding to a number of different

16   objections, whether that's sufficient time, but then again,

17   if the Debtors and the various other parties in support are

18   splitting up arguments and we have roughly the same number

19   of people on, for and against, then it may work itself out.

20   But -- but yes, so the idea is -- is brief opening

21   statements.

22             MS. GRIFFITH:  Thank you, Your Honor.

23             THE COURT:  Certainly.  And that's -- obviously

24   it's much easier to figure out the logistics and to deal

25   with all that stuff when we're in person as opposed to Zoom,

Page 20

1    not that Zoom isn't efficient and effective for lots of

2    things, but for -- for the more complicated you get, as we

3    all know, the harder it is to make it work effectively, so.

4              All right.  Anything else from any other party?

5    All right.

6              UNIDENTIFIED SPEAKER:  Not from us, Your Honor.

7              THE COURT:  Thank you all for taking the time

8    today.  Be well and see you all soon.

9              UNIDENTIFIED SPEAKER:  Thank you very much, Your

10   Honor.

11             UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

12

13             (Whereupon these proceedings were concluded at

14   11:44 AM)

15

16

17

18

19

20

21

22

23

24

25

Page 21

1                   C E R T I F I C A T I O N

2

3        I, Doreen A. Bolognini, certified that the foregoing

4                                      cord of the proceedings.

5

6    _____

7    Doreen A. Bolognini

8

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 24, 2024

[& - believe]                                                                    Page 1

| & | 4 | | |
| --- | --- | --- | --- |

**&**   3:3,11 4:4,12

**1**

**1**   7:17
**10/19**   7:15
**10004-1408**
  1:14
**10006**   3:6
**10017-3852**   4:7
**10020-1095**
  4:15
**10036-8299**
  3:24
**10153-0119**
  3:14
**11**   5:4
**11501**   21:23
**11:22**   1:17
**11:44**   20:14
**1221**   4:14
**14th**   7:5,15
**15**   19:3,8,9,11
**19th**   7:12

**2**

**20**   16:2
**2023**   7:5,12
**2024**   1:16 7:6
  12:1 21:25
**21**   1:16
**23-10063**   1:3
**24**   21:25

**3**

**300**   21:22
**32891**   21:5
**330**   21:21

**4**

**41st**   3:23

**7**

**767**   3:13

**8**

**8th**   7:6

**9**

**9019**   2:2,5 7:1
  14:13

**a**

**able**   17:24
  18:11,13,14
**accept**   8:18
**access**   10:22,22
**accurate**   21:4
**actions**   10:2,3
**actual**   10:5
**actually**   6:15
  11:19 16:8
**ad**   3:21 4:5
  5:19,24 13:2
  13:10,14 14:18
  18:25
**add**   11:15
**additional**   9:3
  9:3 10:21
  15:15
**address**   15:21
**adduced**   7:20
**advocated**
  11:11
**afternoon**   8:12
**ag**   8:6
**ag's**   10:5 14:15
  15:9

**aggressive**   14:6
**agree**   10:23
  17:19
**agreed**   7:10
**agreement**
  9:15
**ahead**   9:6
**allegations**
  10:24 13:22
  14:4,15 15:7
**alleged**   10:19
**alternative**
  17:20
**americas**   4:14
**amount**   18:17
**anybody**   13:16
**apologies**   6:9
**appearance**
  6:4,13
**appearances**
  5:7
**appreciate**
  16:11 17:13
  18:7,15,19
**appropriaten...**
  7:22
**approval**   16:2
**approve**   9:12
**argue**   7:15
**argument**
  14:12 17:21
**arguments**   8:7
  10:21 19:18
**arianna**   1:25
**arisen**   5:6
**asked**   7:3,6
  14:5,22

**asking**   10:25
**assembled**
  15:18
**asserted**   7:23
**attorney**   7:2,4
  7:13,24 8:1,4
  9:13,19 11:9
  11:12,23 12:4
  12:9,14 16:3
**attorneys**   3:4
  3:12,21 4:5,13
**attributed**
  18:18
**avenue**   3:13,23
  4:6,14

**b**

**b**   1:21 4:10
**back**   7:10
  16:19
**bad**   17:23
**bankruptcy**
  1:1,12,23 5:2
**based**   12:9
**basically**   10:23
  19:7
**basics**   19:9
**basis**   10:20
  12:10,22 15:17
**bearing**   9:20
**bears**   8:7
**beginning**   7:12
**behalf**   5:8,10
  5:14,16,18,23
  6:7 8:23 13:13
  15:23
**believe**   9:7
  19:2

**beyond** 9:4
**bid** 18:21
**bit** 7:16 13:11
**bolognini** 2:25
  21:3,7
**boundaries**
  12:17
**bowling** 1:13
**brian** 4:1 5:20
**brief** 19:1,20
**bringing** 17:4
**brought** 8:6
**burden** 8:19

**c**

**c** 3:1 5:1 21:1,1
**called** 6:10
**case** 1:3 4:12
  5:5 6:7 10:3,18
**cases** 13:25
  16:25 18:20
**centrally** 9:11
**certainly** 10:18
  10:23 11:4
  14:19 19:10,23
**certified** 21:3
**challenge** 9:2
**chime** 13:17
**circle** 6:19
  12:24
**claim** 10:9,11
  13:21
**claiming** 13:9
**claims** 7:2,23
  8:5 9:14,18,20
  10:16,17,20
  11:5,10,12,13

**clarification**
  19:1
**clearly** 6:10
**cleary** 3:3 5:10
  6:22 17:9
**collaboratively**
  11:16
**collaterally**
  9:17
**colleague** 6:2
**collect** 9:4
**collecting** 8:18
**come** 19:8
**coming** 17:15
**comment** 8:24
**committee**
  4:13 6:7 12:25
**communicati...**
  18:19
**communicati...**
  7:3,5,7,8,11
  8:3,14,15,16
  12:6
**complaint** 7:13
  9:24 12:5
**completed**
  17:17,18
**complexity**
  18:16
**complicated**
  20:2
**compromise**
  12:19
**concerned**
  11:21 12:2
**concession**
  13:20

**concluded**
  20:13
**conclusions**
  12:13
**conduct** 10:16
  10:19 13:21
  14:16
**conference** 2:1
  5:5 19:2
**confess** 8:11
**confidence**
  18:10,14
**confidential**
  16:5
**confirm** 19:4
**connection** 2:1
  2:4 6:25
**considerations**
  14:2
**contemplated**
  16:16
**contradictory**
  13:12
**conversation**
  6:14
**conversations**
  10:12 16:12,18
  18:17
**copy** 16:24
**correct** 19:5
**counsel** 8:12
**country** 21:21
**couple** 13:19
**court** 1:1,12
  5:2,3,13,18,23
  6:3,9 8:20 9:23
  12:24 13:2,13

  13:16 15:24
  16:1,4,11 17:7
  17:18,21 18:15
  18:23 19:6,23
  20:7
**creditor** 4:5
  18:25
**creditors** 4:13
  6:8
**crypto** 4:5 5:23
  13:14 18:25
**currency** 3:12
**custodians** 9:4
  15:15
**customer** 9:24
**customers** 10:1
  10:4 14:17

**d**

**d** 3:17 5:1
**damage** 14:17
**date** 7:12 21:25
**day** 6:16 9:25
  16:16 17:16
**dcg** 3:12 5:14
  5:16 6:24,25
  7:3,6,10,18 8:3
  8:7,23 9:14,15
  9:18 10:17,20
  10:21 11:6,11
  11:11,24 12:3
  12:13 14:4,20
  14:22 15:23
  18:10
**dcg's** 7:8 8:12
**deadline** 17:15
  18:14

**deal** 19:24
**debtor** 1:9 3:4 5:8
**debtor's** 11:3
**debtors** 5:11 7:7,8,18,25 9:9 9:12,13,21 10:17,20,22 11:2,4,17,20 11:20,23 12:2 12:9,22 13:8 13:18 14:18 17:9 19:15,17
**deductions** 12:12
**defendants** 10:2 13:24
**depending** 19:13
**depositions** 7:21
**desegregated** 11:5
**different** 14:2 19:15
**digital** 3:12
**dipped** 6:15
**direction** 17:13
**directly** 7:19
**discovery** 2:1,4 5:6 6:17,25 7:18,19 13:9 14:12,14,25 15:4
**discussed** 16:7
**discussion** 8:11

**discussions** 7:25 11:22 12:6
**dispute** 6:23
**district** 1:2 5:4
**document** 12:23 16:19
**documents** 7:14,15 8:11 8:19 9:1,7,9 12:3,11,19 15:3,14,16,18 17:16,23
**doing** 11:24 16:25
**doreen** 2:25 21:3,7

**e**

**e** 1:21,21 3:1,1 5:1,1 21:1
**earlier** 7:14 19:2
**easier** 16:12 19:24
**ecf** 16:20
**ecro** 1:25
**effective** 20:1
**effectively** 20:3
**efficient** 20:1
**efforts** 8:25 9:19 18:8
**eighth** 3:23
**either** 16:18
**eleven** 3:22
**emery** 4:4 6:1
**ended** 10:1

**entered** 13:8
**essentially** 10:10
**evaluated** 11:6
**evaluation** 11:2
**evans** 4:10 6:2
**everybody** 17:23,24
**everybody's** 6:19 18:1
**exact** 14:5
**exactly** 10:3 13:20 14:10
**except** 9:16
**exclusively** 11:3
**expect** 8:7,10
**expressed** 9:2
**extensiveness** 19:13
**extent** 8:2

**f**

**f** 1:21 21:1
**fact** 11:8 13:5 14:14 15:8 18:16,18
**facts** 19:8
**fair** 14:19,24 15:4,12
**fairly** 14:6
**fall** 12:1
**far** 8:9
**favor** 16:23
**february** 1:16 7:6 12:1 21:25

**fifth** 3:13
**fighting** 17:25
**figure** 8:25 11:19 19:24
**file** 16:13,17,18
**filed** 16:1,9,13
**filing** 8:8 16:4 16:20 17:10
**first** 5:7
**fit** 19:8
**focused** 9:25
**focuses** 11:3
**folks** 9:5
**follow** 6:14
**following** 17:12 19:4
**foregoing** 21:3
**formally** 8:6
**forms** 10:20
**forth** 7:10 11:2
**frankly** 14:6 15:2 16:12
**friday** 17:15
**full** 16:19
**fully** 6:16
**function** 14:1
**furqaan** 3:18 5:17
**further** 12:20

**g**

**g** 5:1
**game** 14:19 15:12
**gander** 14:8
**general** 7:24 8:4 9:14,19 11:9,12,23

[general - lines]                                              Page 4

12:4,9,14 16:3
**general's** 7:2,4
 7:13 8:1
**genesis** 1:7 5:5
**getting** 5:7
**given** 15:7 16:5
 17:14 18:16
**global** 1:7
**go** 12:20
**going** 8:3 10:8
 15:3 16:4,15
**good** 5:2,9,13
 5:15,18,20,23
 5:25 6:3,6,21
 14:7,7 16:24
**goofed** 6:11
**goose** 14:7
**gotshal** 3:11
 5:16 8:23
 15:23
**gottlieb** 3:3
 5:10 6:22 17:9
**granularity**
 19:10
**great** 17:3
**green** 1:13
**greer** 4:9 5:25
 18:24
**griffith** 4:9
 5:25 6:1 13:15
 18:22,24,24
 19:22
**ground** 18:3
**group** 3:12,21
 4:5 5:19,24
 13:3,10,14
 14:19 18:25

**h**

**h** 1:22
**half** 8:8
**hamilton** 3:3
 5:10
**happening**
 16:10 18:20
**harder** 20:3
**headed** 11:18
**heads** 16:22
**hearing** 19:1
**hoc** 3:21 4:5
 5:19,24 13:2
 13:10,14 14:19
 18:25
**hold** 14:24
**holdco** 1:7
**hon** 1:22
**honor** 5:9,15
 5:20,25 6:6,21
 8:22 10:14
 13:1,4,12,15
 15:22,25 16:10
 17:5,8,21 18:9
 18:22,24 19:22
 20:6,10,11
**honor's** 17:13
**hope** 18:5
**hour** 8:8

**i**

**idea** 19:20
**improper**
 14:16
**inadvertently**
 6:5

**inaudible** 11:3
**indicated**
 12:22
**individual**
 13:24
**information**
 8:17 12:12
 14:5 16:5
**initial** 7:13
**inquired** 7:21
**instance** 14:3
**intention** 19:5
 19:6
**interest** 18:1
**interested** 6:20
**interesting**
 13:5
**investigated**
 8:6
**involves** 18:4
**issue** 5:6 6:18
 9:6,16 10:7
 14:22 17:4
 18:8
**issues** 14:13
 15:20 18:6,12

**j**

**jeff** 5:17
**jeffrey** 3:17
 15:22
**joe** 6:2
**joined** 5:11
**jordan** 4:2
 5:21
**joseph** 4:10
**josh** 3:16 5:15
 8:22 18:10

**judge** 1:23 5:2
**july** 7:5,15
**jump** 6:16
**justifiable** 9:21

**k**

**kaul** 4:17 6:6,6
 13:1
**kessler** 3:8 5:9
 5:10 6:17,21
 6:22 9:2 10:11
 17:8,8 18:12
**kessler's** 8:24
**kind** 14:5
**know** 9:12
 10:18 11:11,15
 11:18,20 12:16
 12:18 14:10
 15:3 16:10,24
 17:25 18:4,7
 18:19 20:3
**known** 6:12

**l**

**lane** 1:22 5:2
**late** 8:12 12:1
**lawsuit** 15:9
**lay** 17:24
**layout** 19:7
**led** 14:16
**legal** 21:20
**liberty** 3:5
**light** 7:22
 15:15
**line** 12:7
**lined** 11:23,24
**lines** 7:20

| | | | |
|---|---|---|---|
| **link** 16:19 | **mineola** 21:23 | **ny** 1:14 3:6,14 | **p** |
| **litigation** 15:11 | **minutes** 16:2 | 3:24 4:7,15 | **p** 3:1,1 5:1 |
| 18:16 | 19:3,8,9,11 | 21:23 | **papers** 17:22 |
| **little** 13:11 | **missed** 13:17 | **o** | 17:25 19:11 |
| **llc** 1:7 | **morning** 5:2,9 | | **parameter** |
| **llp** 3:3,11,20 | 5:11,13,15,18 | **o** 1:21 5:1 21:1 | 8:10 |
| 4:12 | 5:20,21,23,25 | **o'clock** 5:4 | **part** 13:12 |
| **logistics** 19:24 | 6:3,4,6 7:11 | **o'neal** 3:9 5:12 | **partially** 16:19 |
| **look** 11:11 | 15:21 | **objection** 16:1 | **particular** 8:4 |
| 14:12 | **motion** 2:2,5 | 17:15 | **particularly** |
| **looking** 14:25 | 7:1 9:12 16:2 | **objections** | 15:2 |
| **looks** 15:4 | **n** | 19:14,16 | **parties** 10:4 |
| **lot** 14:1 | | **obviously** | 14:2,16 15:8,9 |
| **lots** 20:1 | **n** 3:1 5:1 21:1 | 16:23 17:2 | 16:6,8 19:3,17 |
| **luxury** 18:5 | **narrow** 8:10 | 18:3,16 19:10 | **partner** 5:11 |
| **m** | **necessarily** | 19:23 | **party** 9:14 |
| | 12:7 | **october** 7:12 | 13:10,23 20:4 |
| **make** 6:4,13,18 | **need** 9:6 12:11 | **office** 7:4 8:1 | **past** 7:20 18:7 |
| 8:8 10:8 12:12 | 12:12 15:17 | **official** 12:25 | 18:13 |
| 13:24 17:11,22 | 19:9 | **okay** 15:24 | **pending** 2:2,4 |
| 20:3 | **needs** 6:4,13 | **old** 21:21 | 7:1 |
| **making** 6:11 | 15:20 16:8,14 | **once** 16:17 | **people** 16:14 |
| 17:21 | 17:18 | **opening** 19:4 | 16:20 17:1 |
| **manges** 3:11 | **negotiate** 12:18 | 19:20 | 19:19 |
| 5:16 | **negotiating** | **opinion** 11:4 | **people's** 15:11 |
| **matter** 1:5 | 12:13 | **opposed** 19:25 | **period** 7:4,6,7 |
| **matters** 15:4 | **negotiations** | **original** 16:20 | 7:14,18 8:16 |
| **mcdermott** 4:4 | 11:1 12:3,6 | **outer** 12:17 | 9:3 11:25,25 |
| 6:1 | **new** 1:2,14 3:6 | **overlap** 10:5 | 12:1,8,15,21 |
| **mean** 13:20,25 | 3:14,24 4:7,15 | 10:16 11:1 | 14:6 |
| 14:3 | 5:4 7:1,3,12,23 | 12:7,21 | **persaud** 1:25 |
| **meet** 18:14 | 8:1,4,6 9:13,19 | **overlapped** | **person** 19:25 |
| **mentioned** | 11:9,11,23 | 10:4 | **perspective** 8:2 |
| 7:17 19:3 | 12:4,9,14 16:3 | **overlapping** | **plan** 16:7 |
| **merits** 11:13 | **notion** 13:19 | 13:21 14:15 | **plaza** 3:5 |
| 14:13 | 13:22 | **overlooked** 6:5 | **point** 8:24 10:5 |
| **mid** 17:15 | **number** 7:17 | | 11:15,21 15:1 |
| | 19:15,18 | | |

poorly  18:20
position  8:17
   11:8
possession
   15:19
possible  15:17
   17:19 18:5
potential  8:5
pre  12:5
precise  10:6
premise  8:18
presence  6:11
pretty  6:23
preview  16:1,4
principally
   11:21
procedures
   17:12
proceedings
   20:13 21:4
produce  7:11
   18:11
produced  7:8
   7:11 12:3,19
   15:14,16
producing  8:18
   15:18
production
   17:14,16 18:4
productively
   11:17
proper  17:12
proportional
   15:5
proskauer  3:20
   5:21

provide  7:14
provided  12:11
pull  11:10
purported  7:22
purposes  14:14
put  10:11 11:2

**q**

question  19:1
questioning
   7:21,24 10:10
questions  7:24
   10:15
quick  8:23
quickly  18:5

**r**

r  1:21 3:1 5:1
   21:1
range  9:22
   11:14
rather  17:23
read  9:24
really  9:16,20
   12:21 13:6
   14:3 15:11
   17:1 18:4 19:9
reason  18:11
reasonable
   9:22 11:14
reasonableness
   15:10
reasons  13:19
received  16:6
record  6:22
   21:4
redacted  16:8
   17:2

refused  7:14
relative  7:23
   8:16 10:10
relevance
   12:22
relevancy
   12:18
relevant  9:7,10
   10:13 11:1
   12:14 14:9,18
   14:24
remain  16:14
remove  18:8
reply  17:11,15
represented
   11:25 12:10
request  12:23
requests  2:1,4
   6:25 7:3,9
resolve  18:6
respect  8:4
   10:15,19 12:2
responding
   19:15
response  7:8
   8:24
responsive
   7:16 9:8 13:9
result  10:2
rfp's  9:8
right  5:13,18
   6:3,9,14 8:20
   9:24 12:24
   13:2,13,16,17
   13:24 17:7
   18:15 20:4,5

road  21:21
rolling  15:17
   17:14
room  6:19
   12:24
rose  3:20 5:21
rosen  4:1 5:20
   5:21 13:4
roughly  19:18
ruling  2:4
   15:13
run  10:8

**s**

s  3:1,8 4:1 5:1
saferstein  3:17
   5:17 15:22,23
   15:25 17:5,10
saying  10:9
   12:13 18:5
sazant  4:2 5:22
seal  16:5,9,14
   16:17 17:11
sean  1:22 3:9
   5:2,12
searched  8:13
   15:14
searching  8:18
see  13:18,18
   14:8 16:8 20:8
seeking  7:1
seem  14:19
   15:2
seems  14:6,17
   14:24 15:4,5
   15:12
send  16:13,23
   17:2

[sense - true]                                                        Page 7

sense  13:24
    19:9
separate  10:7
separately  11:6
    11:7
sequoia  4:17
    6:6
served  6:25
    13:8
set  7:16 8:10
    15:2
settle  7:1 9:19
    13:25
settled  9:15
    11:7
settlement  7:22
    7:25 8:5 9:13
    9:14,21,22
    11:1,2,5,9,13
    11:22 13:6,7
    13:11,23 15:10
    15:10 16:3
settling  14:1,1
shl  1:3
shoes  18:6
short  10:1 17:9
siddiqui  3:18
    5:17
sides  11:18
signature  21:5
silo  13:22
siloed  11:8,8
siloing  10:6
simple  18:7
simply  8:17
    13:22

sitting  17:21
skeleton  19:7
small  8:9,10
    18:17
solutions  21:20
something's
    17:2
soon  15:16
    17:19 20:8
sort  9:11 10:23
    11:18 12:16,17
    16:16,21
sought  7:5,18
sounds  15:14
southern  1:2
    5:3
speaker  20:6,9
    20:11
specifically  5:5
splitting  19:18
square  3:22
start  5:7 6:18
    12:25 15:18
statement  19:4
statements
    19:21
states  1:1,12
    5:3
steen  3:3 5:10
step  16:15,15
    16:21,21 18:1
stick  10:1
straightforw...
    6:23
street  3:23
stuff  19:25

subsequent
    16:18
sue  14:16
sued  14:17
sufficient
    19:16
suite  21:22
support  19:17
sure  6:18 8:22
    9:23 17:11
surprised
    16:25
suspect  17:10
system  16:20

                t

t  21:1,1
take  18:8
taken  11:7
    18:2
talking  12:5,8
    14:3,11
technically  9:8
tell  8:14,21
terms  10:4
    15:3 17:13
thank  6:11,21
    8:22 13:12,13
    16:21 17:3,5
    18:9,20 19:22
    20:7,9,11
theoretically
    10:13
things  7:2 17:9
    19:10 20:2
think  6:17,23
    7:19 8:7 9:9,11
    9:25 10:9,11

10:14,21 11:10
    11:17 12:9,16
    12:17,21 14:23
    16:15 17:18
    18:13 19:14
thinks  9:18
thomas  3:8
thought  13:5
    13:11
time  7:4,17
    8:10,16 9:3
    11:25,25 12:1
    12:8,14,20
    13:25 19:16
    20:7
timeframe
    14:21,22,23,23
times  3:22
timespan  12:4
timing  7:25
    11:21,22
today  6:1,14
    20:8
toe  6:15
together  18:18
    18:25
tom  5:9 6:22
    17:8
tomorrow
    17:17 18:11
totally  10:7
transcribed
    2:25
transcript  21:4
trouble  10:6,12
true  21:4

trust  15:13
try  9:5 11:19
trying  11:16
  12:20
two  10:15
  16:15,21 17:9
type  18:18

**u**

u.s.  1:23
ultimately  10:5
under  9:15
  16:5,9,14,17
  17:11
underlying
  10:16
understand  8:9
  14:21 16:21
understanding
  8:13 10:12
understood
  11:20
undertaken
  8:25
unidentified
  20:6,9,11
united  1:1,12
  5:3
universe  8:25
unredacted
  16:18,19,24
unsecured  4:13
  6:7

**v**

value  7:23
  10:10 11:12

values  11:14
vanderbilt  4:6
various  10:4
  19:7,17
veritext  21:20
view  10:5
  14:15,25 15:1
views  6:19
  15:11
virtual  6:19
virtually  3:8,9
  3:16,17,18 4:1
  4:2,9,10,17
volume  8:14
voluminous
  15:2

**w**

wait  15:17
want  11:20
  16:4 17:24
wanted  12:18
  12:19 15:25
  16:9
wants  13:17
  17:20
water  6:15
way  13:18 14:8
  14:11,25 15:6
we've  12:3,11
  16:5 18:13
wednesday
  1:16
week  7:20 19:2
weil  3:11 5:16
  8:23 15:23
wesneski  3:16
  5:15,16 8:20

8:22,23 10:14
  13:5 18:9,10
white  4:12 6:7
work  11:16
  16:7 17:11
  18:12,20 19:12
  19:19 20:3
working  9:5
  18:18
written  6:10

**x**

x  1:4,10

**y**

yeah  17:18
  19:6,11
yesterday  8:12
  16:7
york  1:2,14 3:6
  3:14,24 4:7,15
  5:4 7:1,4,13,23
  8:1,4,6 9:13,19
  11:9,12,23
  12:4,9,14 16:3

**z**

zoom  19:25
  20:1