**Hearing Date and Time: March 19, 2024 at 11:00 A.M. (ET)**
**Objection Deadline: March 7, 2024 at 4:00 P.M. (ET)**

**K&L GATES LLP**
Robert T. Honeywell
599 Lexington Ave.
New York, NY 10022
Telephone: (212) 536 – 3900

*Counsel to GPD Holdings LLC d/b/a CoinFlip*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No. 230-10063 (SHL) |
| Debtors. | (Jointly Administered) |

**RESPONSE AND RESERVATION OF RIGHTS OF GPD HOLDINGS LLC D/B/A COINFLIP TO DEBTORS' TWENTY-THIRD OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)**

GPD Holdings LLC d/b/a CoinFlip ("Coinflip" or the "Claimant"), by its undersigned counsel, hereby files this response and reservation of rights (the "Response") to the Debtors' *Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Objection"), and respectfully represents to the Court as follows:

**PRELIMINARY STATEMENT**

1.      The central issue in the Debtors' objection to Coinflip's claim is the applicable date for determining the USD conversion price for setoff purposes, as applied to the digital assets lent

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).

by debtor Genesis Global Capital, LLC (the "Debtor") to Coinflip and the collateral posted by Coinflip with the Debtor. Coinflip asserts that the appropriate valuation date is when it terminated its lending contract with the Debtor pre-petition on November 17, 2022. The Debtor provides no basis or explanation for its Objection, stating simply that they have reviewed their books and records and determined that "[t]he Debtors have no remaining liability owed to the creditor after setoff of amounts owed to the Debtors by the creditor" – without saying more or providing any calculation of what they found in their books and records.

2. It is incumbent on the Debtors to explain why they are objecting to the Claim. But Coinflip surmises that the Debtors are attempting to take advantage of market movements in digital assets between the date this loan agreement was terminated (November 17, 2022), entitling Coinflip to exercise its setoff remedies, and the Debtors' Chapter 11 filing two months later on January 19, 2023.

3. The Court should not countenance this gaming of market movements to deprive Coinflip of its contractually agreed setoff remedies under applicable state law (New York). Even if this Court has approved USD conversion rates for purposes of digital assets held by the Debtors on the Petition Date, these values cannot be applied retroactively to void a creditor's setoff claim that accrued months earlier.

## COINFLIP'S CLAIM

4. On January 19, 2023 (the "Petition Date"), debtor Genesis Global Capital, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). These Chapter 11 cases are being jointly administered together with the lead bankruptcy case of Genesis Global Holdco, LLC pursuant to the *Order Directing Joint Administration of Related Chapter 11 Cases* (Dkt. No. 37).

5. On April 4, 2023 the Court entered the *Order (I) Establishing Bar Dates for Submitting Proofs of Claim, (II) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (III) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (IV) Providing Certain Supplemental Relief* (Dkt. No. 200) (the "Bar Date Order") requiring, among other things, that all claims be filed on or before May 22, 2023 at 4:00 p.m. (ET).

6. On May 22, 2023, the Claimant filed Claim No. 514 against the Debtor, and on July 7, 2023, the Claimant amended such claim by filing Claim No. 810 for amounts owed to it totaling at least $669,552.00 (the "Claim").

7. The background of the Claim is set forth in the Addendum filed therewith. (The Omnibus Objection also includes a copy of the Claim and its Addendum.) In summary:

   a. Prior to the Petition Date, the Debtor provided lending and borrowing services for digital assets and fiat currency to the Claimant, which in turn used the lent digital assets in connection with its business of operating a network of digital asset based automated teller machines to increase access to cryptocurrency for the general public.

   b. On November 27, 2019, the Claimant and the Debtor entered into that certain Master Loan Agreement (the "Loan Agreement") and subsequently entered into three term sheets for specific digital asset loans: that certain Loan Term Sheet dated September 15, 2021, for borrowing 1,700 LTC (the "LTC Term Sheet"), that certain Loan Term Sheet dated September 15, 2021, for borrowing 90 ETH (the "ETH Term Sheet"), and that certain Loan Term Sheet dated June 2, 2022, for borrowing 235 BTC (the "BTC Term Sheet," and collectively with the LTC Term Sheet and ETH Term Sheet, the "Term Sheets"). Under Section II(b) of the Loan

3

        Agreement, in the event of a conflict between the Loan Agreement and a Term Sheet, the terms in such Term Sheet govern.

c.     The Loan Agreement required the Claimant to post collateral in digital assets and/or U.S. dollars ("Collateral") to the Debtor equal to 120% of the valued of any loaned assets (the "Loaned Assets"), but the parties could and did modify this collateral level by the Term Sheets. At the time of termination, the Collateral requirement was 50% of loan value and a 65% level triggered a "Margin Refund" amount.

d.     On November 16, 2022, the Claimant notified the Debtor that the Collateral-to-loan ratio had reached 129.25%, far in excess of the 65% trigger level, and requested a Margin Refund to reduce the Collateral level to the required 50% level. The Debtor refused on November 17, 2022 by a Telegram message to the Claimant.

e.     On November 17, 2022 (the "Termination Date"), the Claimant exercised its termination remedy under the Loan Agreement, citing multiple breaches under the Loan Agreement, demanding the return of all Collateral, and offering to transfer all Loan Assets to the Debtor and pay all outstanding Loan Fees (as defined in the Loan Agreement).

f.     On January 5, 2023, the Claimant sent a second notice restating its demand for its Collateral in exchange for returning the Loaned Assets and paying all Loan Fees, or alternatively to set off all amounts mutually owed – based on Termination Date asset values – with the excess payable to the Claimant (then calculated at $645,763.35).

g.     The Claimant has since adjusted its calculation of the amount owed to it after setoff, using Termination Date asset values, as $659,310.10, and also claimed prejudgment

4

interest on such amount at the 9% rate under New York law.  *See* Addendum to Claim, ¶ 18 and Exhibit G thereto.

8. The Debtor has never responded to the Claimant's offers and has never returned any of the Collateral to the Claimant.

## COINFLIP'S RESPONSE TO DEBTOR' CLAIM OBJECTION

**A.     A Right of Setoff is Expressly Provided for under the Loan Agreement**

9. The Loan Agreement provides for various default remedies for Claimant as the non-defaulting party. Section XVII establishes that "all Loans [] constitute a single business and contractual relationship," that all mutual obligations under the Loan Agreement "may be applied against each other and netted," and that "***the non-defaulting Party shall be entitled to set off claims and apply property held by it in respect of any Loan hereunder against obligations owing to it in respect of any other Loan with the Defaulting Party***."  Loan Agreement § XVII (emphasis added). Section IX(f) further provides that "[i]n addition to its rights hereunder, the non-defaulting Party shall have any rights otherwise available to it under any other agreement or applicable law."

10. In light of the foregoing, the Claimant's Claim asserts a right of setoff based on the valuation of the Collateral as of the Termination Date, when its remedies under the Loan Agreement and New York law accrued.  As stated in the Claim:

> Claimant asserts its right to set off the Parties' mutual obligations under New York law and Section 553 of the Bankruptcy Code, and reserves the right to assert any other remedies available under New York law and any defenses to its liability under the Loan Agreement (including without limitation recoupment). *See In re Waterscape Resort LLC*, 544 B.R. 507, 526-27 (Bankr. S.D.N.Y. 2016) (describing setoff and recoupment under New York law).

Claim No. 810, Addendum ¶ 17.

5

**B.      The Debtor Has Not Explained the Basis for Its Objection to the Claim**

11.     As noted above, the Debtors have objected to the Claim but provided no explanation whatsoever of the basis of its objection, simply stating:

> The Debtors have no remaining liability owed to the creditor after setoff of amounts owed to the Debtors by the creditor.

Objection, Exhibit 1 ("Objection Reason"); Objection, Proposed Order, Exhibit 1.

12.     Similarly, the Debtors' supporting declaration states that they have reviewed their books and records and determined that no amounts are owed and in fact the Debtors are owed an amount, *whether or not* asset values are used as of the Termination Date or the Petition Date:

> **Regardless of the valuation date that the Debtors employ**, the claimants simply have no net claim as against the Debtors' estates and their claims should be expunged on that basis.

Objection, ¶ 1 (emphasis added). The Debtors then add in a footnote to this statement:

> The Debtors reserve all rights as to pursuing relief to affirmatively collect on the amounts the claimants subject to this objection owe to the estates. Moreover, while the Debtors continue to assert that Petition Date pricing, consistent with the Setoff Principles and the Digital Asset Conversion Table, attached respectively as Exhibits E and M to the Plan Supplement, should govern, **even if a more contemporaneous valuation date were employed, the claimants would still have no net claim against the Debtors' estates**. See Kinealy Decl. ¶ 6.

Objection ¶ 1 n.3 (emphasis added). The Kinealy Declaration in turn states the same:

> The Debtors have further determined through this review of their Books and Records and the No Liability Setoff Claimants' competing loan obligations to the Debtors, with the help of A&M, that a setoff of the parties' mutual obligations, **regardless of whether Petition Date pricing is used or more contemporaneous pricing data is used**, results in either event in the full satisfaction of No Liability Setoff Claims identified on Exhibit 1 to the Proposed Order and a Net Claim in favor of the Debtors.

Objection, Exhibit B (Kinealy Decl.), ¶ 6 (emphasis added).

13.     However, the Debtors provide no "contemporaneous pricing data" to support their

6

Objection, nor any calculation whatsoever of how they reached the above conclusion that no amounts are owed to the Claimant after setoff, let alone that the Claimant owes a net amount *to the Debtors*.

14.    In contrast, the Claimant has provided a detailed calculation of such net amounts using contemporaneous pricing data as of the Termination Date. *See* Addendum to Claim, ¶ 18 and Exhibit G thereto.

C.    **Coinflip May Exercise Setoff Under Applicable State Law**

15.    The Loan Agreement is expressly governed by New York law. Loan Agreement § XIII.

16.    The Claim may thus exercise its contractual setoff remedies under New York law, as expressly provided by the Loan Agreement. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 B.R. 224, 234 (Bankr. S.D.N.Y. 2023) ("The Bankruptcy Code 'does not establish an independent right of setoff, but section 553 does preserve any right of setoff that may exist under applicable non-bankruptcy law'") (citing *In re Lehman Brothers Holdings Inc.,* 433 B.R. 101, 107 (Bankr. S.D.N.Y. 2010)). Eligibility for setoff under section 553 requires simply that: "(1) the amount owed by Debtor must be a prepetition debt; (2) Debtor's claim against the creditor must also be prepetition; and (3) Debtor's claim against the creditor and the debt owed the creditor must be mutual." *Id.*

17.    The parties expressly agreed that in the event of a default under the Loan Agreement, the non-defaulting party could exercise setoff as a default remedy under Section XVII and Section IX(f) of the Loan Agreement. *See supra* at ¶ 9.

18.    The Debtors' assertion of setoff now in their Objection, whether using "contemporaneous" or Petition Date asset values, is an admission that the parties' obligations under the Loan Agreement were mutual pre-Petition Date debts.

7

19. The requirements of Section 553 are thus met, as the Debtors apparently do not dispute. The only issue is how the parties' setoff rights should be calculated.

**D.    The Collateral Should be Valued as of the Termination Date**

20. "State law setoff rights are 'not affected by the Bankruptcy Code.'" *Pereira v. Cogan*, 267 B.R. 500, 508 (S.D.N.Y. 2001). Except for sections 362 and 363, "nothing in the Bankruptcy Code affects creditors' prebankruptcy setoff rights . . . ." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20, 116 S. Ct. 286, 290, 133 L. Ed. 2d 258 (1995). It is well established under New York law that courts must "enforce contract provisions clearly expressing the intent of the parties. *Beth Israel Med. v. Hori. Blue Cross*, 448 F.3d 573 (2d Cir. 2006) (citing *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (N.Y. 2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." (citations omitted)).

21. The Claimant preserved its contractual right of setoff in accordance with Section XVII of the Loan Agreement in its termination notices and in its Claim, entitling it to net the Debtor's obligations under the Loan Agreement against its own based on value of the Collateral as of the Termination Date, when such setoff rights accrued as a default remedy. The fact that the Debtor remains in possession of the Collateral and now asserts the right to use Petition Date asset values, months after the Claimant's setoff rights accrued, has no effect on the Claimant's setoff rights as they existed on the Termination Date.

22. Accordingly, the Claimant is entitled to net the mutual obligations existing between it and the Debtor as of the Termination Date, regardless of the Debtor's attempt to extinguish the Claimant's Claim using Petition Date values. Likewise, as the Debtor has provided no "contemporaneous" asset values as of the Termination Date, its Objection on that basis should be

8

overruled and the Claimant's Claim allowed in full.

## CONCLUSION

WHEREFORE, Coinflip respectfully requests that the Court (i) overrule the Debtors' Objection as it relates to Coinflip, (ii) affirm Coinflip's right to set off the parties' mutual debts using the valuation methodology included in its Claim, (iii) allow Coinflip's Claim in full, including the awarding of prejudgment interest at the New York prejudgment rate of 9%, and (iv) grant such other or further relief the Court deems just and proper.

Date: March 7, 2024

                                          Respectfully submitted,

                                          */s/ Robert T. Honeywell*
                                          **K&L GATES LLP**
                                          Robert T. Honeywell
                                          599 Lexington Ave.
                                          New York, NY 10022
                                          Telephone: (212) 536 - 3900
                                          E-mail: Robert.Honeywell@klgates.com

                                          *Counsel to GPD Holdings LLC d/b/a CoinFlip*