Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 23-10063-shl

4  Adv. Case No. 24-01312-shl

5  - - - - - - - - - - - - - - - - - - - - - - - - - - x

6  In the Matter of:

7

8  GENESIS GLOBAL HOLDCO, LLC,

9

10          Debtor.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - x

12  GENESIS GLOBAL CAPITAL, LLC,

13                  Plaintiff,

14          v.

15  DIGITAL CURRENCY GROUP, INC.,

16                  Defendant.

17  - - - - - - - - - - - - - - - - - - - - - - - - - - x

18                  United States Bankruptcy Court

19                  300 Quarropas Street, Room 248

20                  White Plains, NY 10601

21

22                  March 19, 2024

23                  11:28 AM

24

25

1    B E F O R E :

2    HON SEAN H. LANE

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:   ART

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1    HEARING re Omnibus Hearing

2

3    HEARING re Doc. #1471 Notice Of Agenda

4

5    HEARING re Doc. #1429 Motion to Authorize / Debtors Motion

6    for Entry of an Order (I) Authorizing the Debtors to Further

7    Extend the Coverage Period of Certain Insurance Policies and

8    (II) Granting Related Relief

9

10   HEARING re Doc. #1315 Motion for Omnibus Objection to Claim

11   (s) / Debtors Twenty-Third Omnibus Objection (Non-

12   Substantive) to Certain Claims Pursuant to 11 U.S.C. 502 and

13   Fed. R. Bankr, P. 3007 (No Liability )

14

15   HEARING re Doc. #1303 (2004) Application For FRBP 2004

16   Examination /Debtors Request For Entry of an Order Pursuant

17   to 11 U.S.C. 105 and Fed. R. Bankr. P. Rule 2004 (I)

18   Authorizing the Examination of Digital Currency Group, In.

19   and DCG International Investments, Ltd. and (II) Granting

20   Related Relief

21

22

23

24

25

1    HEARING re Doc. #1304 (Seal: 2004) Motion to File Under Seal

2    /Debtors Motion for Authority to Redact and File Certain

3    Information Under Seal in Connection with the Genesis

4    Debtors Request for Entry of an Order Pursuant to 11 U.S.C.

5    105 and Fed. R. Bankr. P. Rule 2004 Authorizing the

6    Examination of Digital Currency Group, Inc. and DCG

7    International Investments, Ltd. (related document(s)1303)

8

9    HEARING re Adversary Proceeding 24-01312 Genesis Global

10   Capital, LLC v. Digital Currency Group, Inc.

11   Pre-Trial Conference

12

13   HEARING re Adversary Proceeding 24-01312 Genesis Global

14   Capital, LLC v. Digital Currency Group, Inc.

15   Notice of Agenda for Hearing to be Held March 19, 2024, at

16   11:00 A.M. (Prevailing Eastern Time) (related

17   document(s)1471, 1303, 1315, 1429)

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 5

```
 1    A P P E A R A N C E S :

 2    CLEARY GOTTLIEB STEEN HAMILTON LLP

 3         Attorneys for Debtors

 4         One Liberty Plaza

 5         New York, NY 10006

 6

 7    BY:  LUKE A. BAREFOOT

 8         DEANDRA FIKE

 9         BRADLEY LENOX

10         CHRISTIAN RIBEIRO

11

12    WHITE & CASE

13         Attorney for Official Committee of Unsecured Creditors

14         1221 Avenue of the Americas

15         New York, NY 10020

16

17    BY:  COLIN WEST

18         PHILIP ABELSON

19

20    HUGHES HUBBARD REED

21         Attorney for Gemini Trust Company, LLC

22         1 Battery Park Plaza

23         New York, NY 10004

24

25    BY:  JEFFREY S. MARGOLIN
```

Page 6

```
 1   PROSKAUER ROSE LLP

 2        Attorney for Ad Hoc Group of Genesis Lenders

 3        11 Times Square

 4        New York, NY 10036

 5

 6   BY:  BRIAN ROSEN

 7        JORDAN SAZANT

 8

 9   WEIL GOTSHAL MANGES, LLP

10        Attorney for Digital Currency Group, Inc.

11        767 Fifth Avenue

12        New York, NY 10153

13

14   BY:  FURQAAN SIDDIQUI

15        CAROLINE ZALKA

16

17

18

19

20

21

22

23

24

25
```

Page 7

1                    P R O C E E D I N G S

2          THE COURT:  All right.  The next matter that is on

3     is Genesis Global Holdco, LLC, and so let me find out who is

4     here on behalf of the debtor.

5          MR. BAREFOOT:  Good morning, Your Honor.  Luke

6     Barefoot from Cleary Gottlieb Steen & Hamilton, for the

7     debtors, and I'm joined by my colleagues, Deandra Fike, Brad

8     Lenox and Christian Ribeiro.

9          THE COURT:  All right.  Good morning, and let me

10    find out who's here on behalf of the committee.

11         MR. WEST:  Good morning, Your Honor.  Colin West,

12    of White & Case, for the official committee.  I'm joined by

13    Phil Abelson, and I will figure out how to turn my video on

14    shortly.

15         THE COURT:  All right, and on behalf of the ad hoc

16    group?

17         MR. ROSEN:  Your Honor, Brian Rosen, Proskauer

18    Rose, on behalf of the ad hoc group, and I am joined by Mr.

19    Jordan Sazant.

20         THE COURT:  All right, and on behalf of DCG?

21         MR. SIDDIQUI:  Your Honor, Furqaan Siddiqui, Weil

22    Gotshal & Manges, on behalf of DCG.  I'm joined today by my

23    colleague, Caroline Zalka.

24         THE COURT:  All right.  Good morning, and I know

25    today's agenda is not quite as expansive as the agenda we

Page 8

```
 1    had yesterday when I saw you nice folks.  So rather than go

 2    through the long list of appearances, a lot of them are

 3    listed only, at the point, I'll ask if there's anybody else

 4    who's here who wishes to enter an appearance for today's

 5    hearing.

 6            MR. MARGOLIN:  Good morning, Your Honor.  Jeffrey

 7    Margolin, Hughes Hubbard & Reed, on behalf of Gemini Trust

 8    Company, LLC.

 9            THE COURT:  All right.  Good morning.  Anyone

10    else?  All right.  So with that, give me about 30 seconds to

11    move one stack of papers to the side and grab the binder

12    that was helpfully provided, and I'll turn it over to

13    debtors' counsel to move through the agenda at Docket 1471.

14    So thank you for that.

15            Counsel?

16            MR. BAREFOOT:  Your Honor, Luke Barefoot from

17    Cleary Gottlieb, for the debtors.  Before -- we do have a

18    largely uncontested agenda today.  Before turning to the

19    agenda, I did just briefly want to update the court and

20    parties in interest that the debtors did successfully

21    conclude negotiations on the definitive documentation for

22    the settlement with Gemini Trust Company and last evening

23    filed the motion pursuant to Rule 9019 for approval of that

24    settlement.  The hearing date that was set down for that was

25    April 18th of this year.
```

Page 9

```
 1              THE COURT:  All right.  Thank you very much.  I

 2      appreciate the update, as I'm sure many people do who are

 3      listening in.  Thank you.

 4              MR. BAREFOOT:  So unless Your Honor prefers

 5      otherwise, we'd propose to just follow the order that was

 6      laid out in the revised agenda for the hearing.

 7              THE COURT:  All right.  That's just fine with me.

 8      Oh, I see Mr. Rosen has a hand raised.  One, I'd like to

 9      express how impressed I am that you know how to do that, and

10      two, I'm happy to hear from you before we launch into the

11      agenda.

12              MR. ROSEN:  Yeah.  Thank you, Your Honor.  I

13      apologize for interrupting.  I thought we were trying to go

14      for April 16th.

15              Mr. Barefoot, was that changed?

16              MR. BAREFOOT:  You are correct, and I misspoke.  I

17      apologize.  It is April 16th, and thank you, Mr. Rosen, for

18      correcting me.

19              MR. ROSEN:  Thanks, Luke.

20              THE COURT:  All right.  We've got a lot of dates,

21      a lot of things going on.  So thank you for working together

22      to get that figured out, and so back to you, Mr. Barefoot.

23              MR. BAREFOOT:  Your Honor, I'll turn the podium

24      over to my colleague, Ms. Fike, to present the insurance

25      extension motion.
```

Page 10

1           THE COURT:  All right, please.

2           MS. FIKE:  Good morning, Your Honor.  Deandra

3    Fike, of Cleary Gottlieb, for the debtors.  I'll be

4    presenting Item 1 on the uncontested portion of the agenda

5    today, which corresponds to the debtors' motion for entry of

6    an order authorizing the debtors to further extend the

7    coverage period of certain insurance policies and granting

8    related relief.  This is filed at Docket Number 1429 and

9    should be found in Your Honor's binder at Tab 8.

10          THE COURT:  Yes, I've got it.  Thanks.

11          MS. FIKE:  Okay.  Great.  Before moving on to the

12   substance, I'd like to request to move into evidence the

13   declaration of Andrew Sullivan, which was attached to the

14   motion as Exhibit D as his direct testimony in support of

15   the motion.

16          THE COURT:  All right.  Anyone wish to be heard on

17   that request?  All right.  I'm happy to receive that

18   declaration in support of the motion.

19          MS. FIKE:  Thank you, Your Honor.  And Mr.

20   Sullivan is on the line, should the court have any

21   questions.

22          THE COURT:  All right.  I appreciate his presence.

23   Thank you.

24          MS. FIKE:  As for the merits, Your Honor, as

25   stated in the motion, and as the court may recall, the

Page 11

1   debtors have a series of both primary and excess directors'

2   and officers' insurance policies, all of which are claims-

3   made policies, meaning the beneficiaries of such policies

4   must file any claims during the coverage period in order to

5   access the coverage provided by the policies.

6           Though originally the policies were set to expire

7   in June of 2023, the debtors previously received this

8   court's approval on similar motions to extend the coverage

9   period on these insurance policies through March 28th of

10  this year, under the belief that this would be sufficient

11  time for the debtors to emerge from Chapter 11.

12          Given, however, as Your Honor noted, that we had

13  closing arguments for the hearing on confirmation of the

14  debtors' plan just yesterday, we are seeking through this

15  motion an additional two-month extension through May 28th of

16  2024 of the coverage period, at which point the debtors are

17  hopeful they will indeed have reached emergence.  The total

18  cost for this extension is approximately $206,000, and the

19  debtors will additionally receive a pro rata refund to the

20  extent that they emerge prior to the May 28, 2024 extension

21  date.  And as noted, the motion is proceeding uncontested.

22          So with that, Your Honor, unless you have any

23  further questions, we would respectfully request entry of

24  the proposed order.

25          THE COURT:  All right.  Thank you very much.  Any

1    party wish to be heard on this motion, which is at Docket

2    1429?

3            Hearing no response, I am happy to grant the

4    motion.  I find it appropriate under the facts and

5    circumstances of the case and consistent with applicable law

6    and just generally a good idea.  So the motion is granted,

7    and we can move on to this item.

8            MS. FIKE:  Thank you very much, Your Honor.  We'll

9    submit the order.  I'll now cede the virtual podium to my

10   colleague for the next agenda item.

11           MR. LENOX:  Good morning, Your Honor.  Brad Lenox,

12   of Cleary Gottlieb, for the debtors.  The second --

13           THE COURT:  Good morning.

14           MR. LENOX:  Oh, sorry.  The second uncontested

15   item on today's agenda is the debtors' 23rd omnibus

16   objection to certain claims which is going forward today

17   solely with respect to Claim Numbers 84, 261, 262, 337 and

18   Schedule Number 3.1.0244, each of which is identified on

19   Exhibit 1 to the proposed order.

20           With respect to the remainder of the claims

21   identified in the motion -- in the claims objection, that

22   has been adjourned to the April 16th omnibus hearing.

23   Before proceeding to the substance, I'd like to first move

24   into evidence the declaration of Paul Kinealy of Alvarez &

25   Marsal, which was attached to the claims objection as

Page 13

1    Exhibit B.

2              THE COURT:  All right.  Any party wish to be heard

3    on that request?  All right.  Hearing no response.  I'm

4    happy to receive that as evidence in support of the motion.

5              MR. LENOX:  Thank you, Your Honor.  And Mr.

6    Kinealy is on the line should Your Honor have any further

7    questions.  Each of the claims identified on Exhibit 1 to

8    the proposed order assert liabilities against the debtor

9    arising out of lending agreements executed between these

10   claimants and the debtors.

11             The debtors have determined, in consultation with

12   their advisors, that there also exists outstanding

13   obligations owed by these claimants to the debtors pursuant

14   to these same lending agreements.  In each case, setoff of

15   these mutually owing obligations would result in

16   extinguishment of any liabilities of the debtors and a net

17   claim owed to the debtors by these applicable claimants.

18             The debtors and their advisors analyzed the

19   valuation of these claimants' obligations to the debtors in

20   the postpetition period, which in any circumstance is the

21   relevant period here, and regardless of whether the petition

22   date or another date more contemporary filing of the

23   objection is used, the result is the same, that no liability

24   to the debtors would exist.

25             Further, I want to note that this claims objection

Page 14

1    does not seek authority to actually effectuate any setoff

2    nor collect on the amounts that would be owed to the debtors

3    as a result, and as set forth in the pleadings, the debtors

4    reserve all rights with respect to that.

5            In sum, because the debtors are not liable with

6    respect to each of these claims as a result of outstanding

7    mutually owing obligations between the parties consistent

8    with Rule 3007, Section 506 of the Bankruptcy Code, and the

9    claims procedure order, the debtors respectfully request

10   that the objection be sustained and that each of the claims

11   I listed at the outset be disallowed in full and expunged

12   from the claims register.

13           THE COURT:  All right.  Thank you very much.  Let

14   me ask if anybody wishes to be heard on this claim objection

15   as to the specific claims that are teed up for today.  All

16   right.  The court notes that there's no response.

17           I will grant the claim objection as to the matter

18   specifically on for today for all the reasons highlighted

19   here this morning and set forth more fully in the claims

20   objection.

21           I do note, and I won't spend the time to go -- the

22   standard for claims objections, I've done it before in prior

23   cases, and it's set forth in the objection itself at Docket

24   1315, starting on Page 8 of the motion, which also talks

25   about the applicable setoff standards.  So given the review

Page 15

1    of the books and records and based on the information in

2    supporting declaration, in short, that the debtors have

3    determined the amounts owed by the debtors to these no

4    liability setoff claimants and the amounts owed by those

5    claimants to the debtors, and also determining that when you

6    net all that out, results in a full satisfaction of the

7    claims that are identified here.  So I agree, and those

8    claims are expunged.  Thank you, and I appreciate the

9    declarant being available.

10           MR. LENOX:  Of course, Your Honor, and thank you

11   very much.  We will submit a proposed order.

12           THE COURT:  All right.  Thank you very much.  Next

13   up?

14           MR. LENOX:  Your Honor, my colleague, Christian

15   Ribeiro,  will be handling the next agenda item.

16           THE COURT:  All right.  Counsel?

17           MR. RIBEIRO:  Good morning, Your Honor.  Christian

18   Ribeiro, Cleary Gottlieb Steen & Hamilton, counsel for the

19   debtors.  We're here today before the court on items -- I

20   forget what items are on the agenda, but they're Tab Numbers

21   1 through 4 in your hearing binder, and that's the rule 2004

22   motion, as well as the attendant sealing motion that we

23   filed with the Rule 2004 motion.  So before we get into the

24   Rule 2004 motion, I'd like to start with the sealing motion

25   --

1                THE COURT:  Please.

2                MR. RIBEIRO:  -- which is ECF number 1304 and Tab

3     2 of the hearing binder.  The sealing motion seeks a court

4     order authorizing the debtors to file the Rule 2004 motion

5     under seal.  It was filed initially under seal, so we're

6     seeking a further court order to approve that filing.

7                Filed with the Rule 2004 motion is a document

8     request which includes confidential and commercially

9     sensitive information.  This information is subject to a

10    confidentiality agreement between the debtors and DCG that

11    requires the debtors to maintain the confidentiality of such

12    information.  And since the filing of the sealing motion,

13    however, the debtors have also filed a revised proposed

14    order with respect to the Rule 2004 motion which includes a

15    revised document request containing the same information.

16                So if the court grants the sealing motion, we

17    would like the court's order granting this motion to include

18    authorization for the debtors to file that revised proposed

19    order under seal as well.  And then, of course, once the

20    order is entered, that would be under seal as well.  This

21    motion is uncontested, and we're not aware of any formal or

22    informal responses that were made to this request.

23                So unless Your Honor has any questions, we

24    respectfully request that the court enter the proposed

25    order, which we will revise to include within the scope the

Page 17

1    revised proposed order that we filed.

2              THE COURT:  All right.  Thank you very much.  Any

3    party that wishes to be heard on the sealing motion?  All

4    right.  So let me ask, Counsel, there's a general

5    description of what's under seal.  I understand it's

6    confidential business information.  I assume the intention

7    is to file a -- if it has already been done, a public

8    redacted version of the papers.

9              MR. RIBEIRO:  Correct.  That's what was filed with

10   the Rule 2004 motion, as well as the revised proposed order

11   that was filed in a redacted form.  We have provided

12   chambers with a copy of the unredacted order.

13             THE COURT:  All right.  Great.  I thought so.  I

14   just wanted to confirm, and I appreciate that.  I know that

15   that's an extra bit of work.  In the interest of the

16   transparency of public proceedings, it's serving a valuable

17   purpose.

18             So with that, I'm happy to grant the request for

19   sealing and just make sure that for all the reasons you set

20   forth in the motion, confidential business information, very

21   standard stuff, like some other sealing issues we've had

22   earlier in the case.

23             What I'd ask is you had mentioned other things

24   that were filed and you wanted to make sure they were

25   covered.  Just make sure the proposed order that is

Page 18

1    submitted has language that would do that.  Excuse me, and

2    you could do that one of two ways.  You could specifically

3    identify pleadings, or you could say, or other pleadings

4    filed in connection with this motion, however you want to do

5    it, and that way we have everything covered.

6            MR. RIBEIRO:  Sounds good, Your Honor.  Thank you.

7    So we're moving on now to the Rule 2004 motion.  That's at

8    ECF 1303, Tab Number 1 on Your Honor's binder.  And we also

9    have the debtors' reply filed at 1371, which is Tab 4 of

10   your hearing binder.

11           By this motion, the debtors are seeking order

12   compelling DCG and DCGI together, I'll call them the DCG

13   parties, to respond to certain document and information

14   requests which are set forth in further detail in the

15   motion.  And as referenced, we filed a revised proposed

16   order.  That's at ECF 1487.  And we sent that to Your Honor,

17   to chambers this morning.

18           THE COURT:  Yeah.

19           MR. RIBEIRO:  We filed the revised proposed order

20   to reflect the resolution of certain categories of documents

21   and information requests that were initially made by the

22   debtors that have since been satisfied.  That's the know

23   your customer, anti-money laundering, OFAC and sanctions

24   compliance-related requests.  After struggling a bit to

25   obtain this information through regular means, we included

Page 19

1    these requests within the scope of our Rule 2004 motion,

2    which does seek a broader set of documents.  However, today

3    we are happy to report that we have received the information

4    required by the debtors to satisfy their risk-based

5    compliance obligations, of course, without waiving our

6    rights if we need further information.  So we revised the

7    proposed order and the request attached as Exhibit

8    (indiscernible) motion to strike the requests related to

9    those requests.

10           THE COURT:  All right.  I do have the revised

11   notice of revised proposed order.  That's at Docket 1487.

12   And I did see the blackline version, and it sounds like this

13   is again memorializing the agreed upon resolution part of

14   the 2004 application.  Let me just ask if DCG wants to be

15   heard at all in connection with this specific notice of

16   revised proposed order.

17           MR. SIDDIQUI:  Yes, Your Honor.  Furqaan Siddiqui,

18   on behalf of DCG.  We agree with Mr. Ribeiro.  We

19   understand, per communications and per what's been stated on

20   the record today, that the KYC information has been received

21   by the debtors.  So we have nothing further on that.  We do

22   take issue with the remaining requests under the proposed

23   order (indiscernible) --

24           THE COURT:  Yeah.  We'll get to, yeah.

25           MR. SIDDIQUI:  Yeah.

Page 20

1          THE COURT:  All right.  So this is -- I'm going to

2    grant this.  I'm going to grant proposed relief that's

3    memorialized in the order that is submitted at Docket 1487.

4    And that leaves other issues that are the subject of things.

5    And I'll turn back to debtors' counsel to tee that up.  And

6    I understand, if I'm understanding it correctly, the thing

7    that's agreed to is all the know your own customer and other

8    related requirements that need to be satisfied in terms of

9    receipt of the money and those that are not resolved are

10   essentially getting information about the relationship

11   between DCG and the counterparty that supplied the funds.

12          MR. RIBEIRO:  Right.  That's correct.  And just to

13   clarify a little bit, the revised proposed order that we

14   submitted just revises the proposed order to eliminate the

15   requests related to the KYC.  So there's no proposed order

16   to enter with respect to an agreement with DCG.  It's just

17   reflecting that we're deleting from our motion, from the

18   scope of our motion a request for those documents.

19          THE COURT:  Okay.  I got you.  All right.

20          MR. RIBEIRO:  So the proposed order will just be

21   granting this motion.

22          THE COURT:  Because they've been voluntarily

23   supplied.

24          MR. RIBEIRO:  Right.  Exactly.  So continuing on,

25   Your Honor, a brief summary of the events leading up to

Page 21

1    where we are.  As Your Honor is well aware, DCG is the

2    debtors --

3              THE COURT:  Well, I can probably spare you that.

4    So let me do that.  So as I understand the bidding, and this

5    would be helpful to get sort of the most up to date thinking

6    of folks on this.  I understand that you all want -- I guess

7    my question is, what is the scope of what you want, because

8    I understand the theory behind your request.  There is a

9    question of how far you can use that theory in terms of the

10   expanse of what you can ask for.  And so that's why I

11   appreciate your thinking about what the debtor has

12   specifically asked for and specifically decided not to ask

13   for and where you draw that line.

14             MR. RIBEIRO:  Sure.  So I think our request could

15   be thought of in two categories.  Perhaps there's the first

16   category, which is the loan documentation and any related

17   agreements that the debtors would like to see.  We think

18   it's very important to obtain this information and to see

19   those documents.

20             DCG, being the debtors' largest borrower, we'd

21   like to understand DCG's financial information, see what

22   they've agreed to with this third-party lender, understand

23   what restrictions have been imposed on DCG and what might

24   impact DCG's ability to repay us on the multitude of

25   obligations that they owe us, including the $1.1 billion

Page 22

1    note that's still outstanding and DCG owes the debtors.  So

2    there's that category, and we do think there's a second

3    category that the debtors have requested and that we're

4    entitled to.  That information seeks sort of documents,

5    communications relating to that transaction.

6              So maybe not the loan documentation specifically,

7    any security documents, all of that.  But we're seeking any

8    correspondence between DCG and that third-party lender which

9    will help us evaluate any potential causes of actions that

10   we might have against DCG related to this financing

11   arrangement.  So that's how we think about the request, Your

12   Honor.

13             THE COURT:  All right.  All right.  What else

14   would you like to tell me before I hear from DCG?  Or you

15   want to, as Judge Chapman used to say, keep your powder dry

16   for the moment?

17             MR. RIBEIRO:  Yeah.  I'll just add that we think

18   it's really important to obtain this information.  As

19   fiduciary of the estate, the debtors have an obligation to

20   fully evaluate the nature and scope and the full extent of

21   the estate's assets.  The receivables we have from DCG are

22   important property interests that the debtors have, and so

23   with that, we'll rest.

24             THE COURT:  All right.  All right.  So let me hear

25   from DCG.

1          MR. SIDDIQUI:  Yeah.  Good morning, Your Honor.

2     Furqaan Siddiqui, again, Weil Gotshal & Manges, on behalf of

3     DCG.  So, Your Honor, as Christian stated, I'd like to

4     clarify just one point.  There is one obligation, and it is

5     the promissory note that is due in eight years.  The other

6     two referenced obligations are, in fact highly disputed

7     claims.

8          One is, I believe they've asserted the $33 million

9     claim against DCG arising out of the Three Arrows

10    obligations and $27 million of late fees and enforcement

11    costs.  Both of these are highly disputed and are subject to

12    pending proceedings, one which is before Your Honor in this

13    court.  So if these documents are being sought in connection

14    with those claims, we believe that the documents should be

15    sought in those proceedings.  With respect to the promissory

16    note, you know, as noted, we don't see the relevance --

17         THE COURT:  So that's the -- I mean, you're sort

18    of invoking the pending proceedings rule.

19         MR. SIDDIQUI:  Right.  Right.  Now, again, Your

20    Honor, the debtors have sort of also stated that they need

21    to see this in connection with the promissory note due in

22    eight years.  We just don't see the relevance of our current

23    loan obligation with a third party for amounts owed in eight

24    years.  And we've told the debtors the salient terms of the

25    debt, that we have secured debt.  We've told them how much

Page 24

1    it is.   The proceeds are in the debtors' bank account.

2    We've shared information about our lender for the KYC

3    purposes which Mr. Ribeiro indicated the debtors have

4    received.

5          Now, notwithstanding the fact that we don't think

6    it's relevant, in order to avoid this hearing today, we've

7    repeatedly reached out over the course of the last month,

8    over four times via email and numerous calls.   And the only

9    reason I raised that is because I believe in the reply the

10   debtors indicated that we give off an illusion of

11   compliance, which I believe is unfounded.   But we finally

12   got a response from the debtors on Thursday, and we've been

13   working towards a resolution.   As of last night, we thought

14   we had a resolution.   We agreed to provide the debtors with

15   our loan agreements -- our loan agreement and the related

16   security agreement to the debtors on a PEO basis.   And then

17   as of the last minute after 9:00 p.m. last night, debtors'

18   counsel came back with a new ask to disseminate these

19   documents with the UCC and the ad hoc group.

20         So while we don't see the relevance for the debtor

21   to have these documents to begin with, because our

22   obligation to the debtor, our undisputed obligation to the

23   debtor is eight years from now, in order to avoid the

24   hearing today, we were willing to share it.   We still -- we

25   certainly --

1          THE COURT:  What would you be willing to share it

2     on?  Sort of attorneys' eyes only, professionals' eyes only?

3          MR. SIDDIQUI:  Yeah, that's right, Your Honor.

4     The documents have confidentiality provisions.  And also our

5     lender is very sensitive about having these contractual

6     agreements sort of disseminated widely with other folks.

7     And they agreed in this instance to let the debtors see it

8     on a PEO basis.  And while we're fine with that, we really

9     don't see the need or reason for anyone else to see it.  You

10    know, it's unclear --

11         THE COURT:  I guess I'm asking about for the UCC

12    and ad hoc whether you'd be willing to let just the

13    professionals see it.  I can understand there are a lot of

14    parties when you start looking at all the customers.  And so

15    question is whether your client would agree to have just

16    those lawyers see it.  And again, everybody reserves their

17    rights to fight about it in the future.

18         But I think I've said this before, you all know

19    disputes are much harder to resolve about information

20    sharing when it's a theoretical rather than an actual

21    dispute.  And so the first rule of thumb in judge's school

22    is to say get out the information you can get out, and let's

23    see where we are.  We don't have any particular wisdom of

24    Solomon on that, but other than get the information out and

25    then that tends to narrow the scope of disputes.  So would

1   your client be willing to give the UCC and ad hoc counsel,

2   professionals that information?

3           MR. SIDDIQUI:  Your Honor, I think on balance,

4   when you look at the relevance for the debtors' stated

5   purpose of assessing our creditworthiness in eight years and

6   what we're providing them and the sensitivity around it, I

7   don't think we're amenable to sharing it with the UCC or the

8   ad hoc group.  For what the debtors state they need it for,

9   I think debtors' counsel is more than capable of assessing

10  the loan agreement and making that determination and letting

11  their constituents know.  However, we don't believe that is

12  necessary to provide this loan agreement to three separate

13  law firms for the debtors' stated purposes.

14          THE COURT:  All right.  Anything else from DCG?

15          MR. SIDDIQUI:  Nothing, Your Honor.  I guess I

16  would note that we understand that the UCC and the ad hoc

17  group filed joinders this morning.  And at this point, Your

18  Honor, we've been trying to come to a resolution.  We hope

19  that Your Honor would see that providing this to the debtors

20  on a PEO basis hopefully is sufficient for what the debtors

21  ask, and that's all.

22          THE COURT:  All right.  Let me circle back to

23  debtors' counsel.  Oh, you're on mute.  Joys of COVID.

24          MR. RIBEIRO:  Oh, the beauty.

25          THE COURT:  And I see, I see Mr. Rosen.  I see

Page 27

1    hand's up.  I'm going to hear from debtors and then I'll

2    circle the virtual group and hear from the committee and the

3    ad hoc group.

4             MR. RIBEIRO:  Sure.  Yeah.  Just to respond to a

5    couple of points made by Mr. Siddiqui, first, he essentially

6    admits that there's one obligation that DCG has that

7    matters, which is the $1.1 billion note.  Of course, he

8    distinguishes the other two obligations, now invoking for

9    the first time the pending proceeding rule.

10            THE COURT:  Yeah.  I didn't see that cited in the

11   papers.  It did occur to me because I had that come up in

12   other cases, although it was a very factually

13   distinguishable kind of circumstance.  So let me -- while

14   we're talking about it, let's nail that down.  Is your

15   current request focused on the promissory note as opposed to

16   those other two that are subject of other proceedings?

17            MR. RIBEIRO:  Right.  We think it is because it's

18   seeking to evaluate the DCG's creditworthiness, and so while

19   their issues might be adjacent, we don't think it implicates

20   the pending proceeding rule because the information --

21   primarily because the information sought is not to aid the

22   debtors in bringing the other proceedings that they've

23   brought.

24            I would note that courts looking at whether to

25   apply the pending proceeding rule, look at the primary

1    purpose of the Rule 2004 examination, and whether it's to

2    further the administration of the bankruptcy case or to aid

3    in pending litigation.  And here it's clear that the

4    debtors' primary purpose is in aid of the administration of

5    the bankruptcy case.  And in fact, Your Honor weighed in on

6    this issue in In re Cambridge Analytica, which is at 600

7    B.R. 750.  And I think in that case, Your Honor did

8    distinguish quite well in two situations.  There was one

9    situation where a third party purchased a claim against the

10   debtor, thereby becoming a creditor of the debtor, and then

11   sought to obtain Rule 2004 discovery against one of the

12   debtors, which was a codefendant in separate litigation.

13          And you just distinguished that request made by

14   other creditors of the debtor in that case for similar

15   documents, because in distinguishing that request, Your

16   Honor determined that their Rule 2004 motion was filed to

17   further their interest as creditors of the debtors.  They

18   had meaningful involvement in the case since its inception,

19   since the case's inception, and that the Rule 2004 request

20   was relevant to their status as creditors, not in any --

21          THE COURT:  So let me back up for a second.  The

22   thing that sometimes can frustrate me with the pending

23   proceeding rule, and Cambridge Analytica was a sort of nice,

24   clear example of what you shouldn't do.  But when there's

25   more than one potential way of getting the information,

Page 29

1    discovery is a very practical set of disputes, whether you

2    call it 2004 or actual discovery in a proceeding.  So my

3    thought is, if the information, if it's going to be shared

4    one way or the other, one should sort of moot out the other.

5    So my thought is, I don't know if there are pending requests

6    for this kind of information as to the $33 million, the $27

7    million obligations in those other proceedings, or there's

8    an intent to do that, or if they're asked for and those

9    proceedings, there's not going to be an objection because

10   the pending proceeding rule sometimes can be very much a

11   stand on ceremony kind of problem.

12          So this is sort of the tail end of the dog, as I

13   understand it, among the parties and what they're really

14   fighting about.  But while we're talking about it, is there

15   anything you can tell me about that in the context of the

16   other proceedings and whether it's going to come up anyway?

17          MR. RIBEIRO:  So no, there's no pending requests

18   that are identical or similar to these requests that we're

19   making now.  And just to expand further, we don't see how

20   obtaining the loan documentation between DCG and this third-

21   party lender would aid the debtors in this litigation in

22   respect either of the 3(a)(c) indemnification claim or the

23   arbitration proceeding.  And again, there are no requests

24   that are similar to these requests being made now.

25          THE COURT:  All right.  Anything else that you

Page 30

1    wanted to address before I hear from the committee and the

2    ad hoc group?

3              MR. RIBEIRO:  Sure.  Just a couple more points,

4    just to clarify a bit on the status of the pre-motion

5    discussions.  I think Mr. Siddiqui is being a little unfair

6    in characterizing our discussions.  He reached out to me on

7    Sunday and I called him immediately back.  We've been

8    discussing --

9              THE COURT:  Well, I'll cut you off.  Again, to

10   quote "Hamilton," I'm not in the room where it happens, and

11   I know that a judge's ability to understand the back and

12   forth is exceedingly limited, and I've been on the wrong

13   side of that in my former life, where some judge thought

14   something that's was going on and it was completely

15   different.

16             So I have learned not -- to avoid where I can

17   trying to figure out what actually happens in those

18   conversations.  So, I mean, what I see is that there is a --

19   this motion has been pending for a while, and so I'm

20   heartened to hear that some of the information that clearly

21   should have been turned over has finally been turned over.

22   It really shouldn't take a motion to deal with that kind of

23   stuff.  The know your customer and other related regulatory

24   information is pretty low hanging fruit for purposes of a

25   Rule 2004.  So I'm glad that that's resolved.

1           So, anything else, Counsel, before I hear from the

2    other folks?

3           MR. RIBEIRO:  Sure.  Thank you, Your Honor.  And

4    just the last point we'll make is with respect to providing

5    these documents to the committee and the ad hoc group on a

6    professional eyes only basis.  I think it's clear here that

7    the committee and the ad hoc group have an interest in

8    seeing this information.  They are the beneficiaries as

9    creditors of the debtors' estate, and we've been working

10   hand in hand since the beginning of these cases, and

11   especially throughout the plan confirmation process, to work

12   together to reach a resolution on all the contested issues.

13   And so we do think that they have an interest here, and

14   that's why we're seeking to be able to share the documents

15   that we receive on a professional eyes only basis.

16          THE COURT:  All right.  I will say I'm inclined to

17   agree with you on that, but let me hear from the committee.

18          MR. WEST:  Thank you, Your Honor.  Colin West, of

19   White & Case, for the official committee of unsecured

20   creditors.  I think I'll be very brief.  We think the

21   information requested is plainly relevant to assessing the

22   value of what we believe is one of the debtors' largest

23   assets and for the reasons Mr. Ribeiro stated.  The

24   committee representing unsecured creditors obviously has an

25   interest in knowing that information.  We did file a

Page 32

1    joinder, a very brief joinder this morning in which we

2    stated our willingness to receive the information requested

3    on a professionals' eyes only basis.  We think that's

4    appropriate and we would, of course, observe all appropriate

5    confidentiality obligations.  But we do think we need the

6    information to understand what value is in the debtors'

7    estate and what value will ultimately be distributed to

8    creditors.  And that's all I have, Your Honor.

9            THE COURT:  All right, and let me hear from the ad

10   hoc group.

11           MR. ROSEN:  Thank you, Your Honor.  Brian Rosen,

12   Proskauer Rosen, on behalf of the ad hoc group.  Just a few

13   items in addition.  One, I think there was one other

14   possibility or issue outstanding, not just on the $33

15   million or the $27 million, but also the issue asserted with

16   respect to the conversion of obligations to cash that were

17   paid.  And I think that is sort of folded into all of those

18   points.

19           We also filed a joinder, Your Honor, and what we

20   tried to do there was not just piggyback to what was being

21   said by the debtors and the UCC, but also the fact that we

22   took the court's guidance with respect to trying to see if

23   we could have conversations, real conversations, in order to

24   move this process forward and to see if there was some

25   possibility of resolution of what the outstanding issues are

Page 33

1     with DCG, the ad hoc group, the UCC and the debtors.  And

2     what we said in our joinder, Your Honor, is this information

3     is important for us to be able to formulate a proposal or to

4     see if we can get from here to there.  And as we said in

5     there, what is the art of the possible?  Because if there

6     are provisions in that loan documentation which make it

7     totally unavailable to any or the debtors -- excuse me, the

8     DCG assets or the ability to make payments, we think it's

9     important to know what that is so that we can formulate

10    whatever proposal is on a going forward basis.

11            So we did, like the UCC, state in our joinder that

12    we would be willing to accept this on professional eyes only

13    basis in order to move that process forward.  And we would

14    hope that we would be able to get whatever the documents and

15    information are being provided to the debtors would

16    similarly come along to Proskauer Rose and to White & Case.

17    Thank you, Your Honor.

18            THE COURT:  All right.  Any other comments from

19    any other party?  All right.  So here's where I am.  The

20    issues that are off the table are off the table.  I will

21    tell you that I think that they were entirely appropriate

22    requests and in fact, essential for the debtors to get that

23    information so that they didn't have legal exposure.

24            As for the -- let's start with the promissory

25    note.  It's an obligation of the estate.  So the standard is

Page 34

1    that you look for -- I mean, I always describe it to people

2    who aren't bankruptcy experts, who come in in smaller cases,

3    that you're looking at the assets and liabilities of the

4    estate, and this is an asset.  And if the asset has more or

5    less value by virtue of the involvement of this other party,

6    that's relevant to know.  And I will say this is distinct

7    when you think about these things along a spectrum, which is

8    how 2004 sort of plays out.  You've got Cambridge Analytica

9    over here, and the fact an entity might have ways of doing

10   various things in terms of raising funds to pay obligations

11   that are all behind the cloak of corporateness.  But when

12   this is in circumstance where that third party is the one

13   that transmitted the funds.

14           So essentially, you sort of, as they say in trial

15   practice, open the door, right, to saying, well, who are

16   they?  What are their involvement?  What's the relationship?

17   DCG would have a better argument if it was just money coming

18   from DCG, and the debtor said, where did the money come

19   from?  You still have a 2004 argument, but this third party

20   provided the funds.  And so that's not something the debtors

21   required.  It's something that DCG decided to do for its own

22   business reasons, which it's entitled to do.  And I'm not

23   casting any aspersions, but it does open the door.  And so I

24   think for that obligation, I think the loan obligations and

25   related security agreement are perfectly fair game.  I think

1   that's probably why there were discussions about resolving

2   that.

3           I understand DCG's reluctance to share this with

4   any larger number of people than it is required to do so.

5   But I think the committee and the UCC professionals,

6   attorneys' eyes only, however you work that out, is entirely

7   appropriate.  I mean, we spent a bunch of time talking about

8   the involvement.  It's pretty clear that the UCC and the ad

9   hoc committee have been involved, exceedingly involved,

10  essentially involved.  And in fact, I think I sort of tipped

11  my hand the other day in talking about substantial

12  contribution.  In fact, even the U.S. trustee's office

13  agreed about substantial contribution and frankly they're a

14  tough sell on that issue.

15          So having sort of had that discussion the other

16  day sort of shows that the UCC and the ad hoc group are

17  really very much partners in trying to make this case work.

18  So I think with professional eyes only, it's entirely

19  appropriate.  I entirely understand not wanting to share

20  this with all the customers and nobody's asking for that.

21  That seems like a bad idea that everyone agrees is a bad

22  idea.

23          So as for the other two obligations, the $33

24  million, the $27 million, to the extent that there are

25  similar issues about the assets and liabilities, I frankly

Page 36

1     am inclined to reach the same conclusion.  It's not quite as

2     easy a sell in the sense that I don't understand there to be

3     a third party who's sort of volunteered themselves to step

4     into the fray.  But it's still an asset and liability, an

5     asset or liability of the debtors to determine things.  So I

6     think the agreements, relevant agreements would be

7     appropriate.

8          As to the second category, documents and

9     communications about the transactions, I'm not at this point

10    inclined to grant those.  I think there may come a time when

11    somebody can identify why they would be relevant and I think

12    we can revisit there.  Let's first see the agreements and

13    try to put the pieces together to understand what the

14    contractual documents say and the implications on the estate

15    and creditors.  And if there's a live controversy, a live

16    issue, I think I certainly am in much better position to

17    figure out whether that 2004 request is appropriate.

18         So I'm not denying it.  I'm pushing it to another

19    date.  So the first category, I think I side with the

20    debtors completely.  On the second category, I'm not ready

21    to go there.  I will make a note about the pending

22    proceeding rules.  I don't know that that doctrine was sort

23    of briefed in the opposition that I got.  I did think about

24    it.  There was sort of mention of -- I think I was waiting

25    for it in the connection with one of the paragraphs and

Page 37

1   discussions, but I think it was sort of raised in spirit.

2   But nobody's raised a particular argument as fleshed that

3   out to say, hey, they're asking for it here, and this is how

4   they're going to weaponize it here, and they couldn't get it

5   there or any of that.

6           I've heard generally, like, well, there's other

7   proceedings.  That generic comment doesn't get you the

8   pending proceeding rule.  You need to be more specific than

9   that.  And so, again, there is authority that you can ask

10  for information on the same general set of financial

11  transactions for different reasons and separate those out.

12  And so I think a credible explanation has been provided here

13  as to why the debtors and the estate need this information

14  and why it's relevant.  And I haven't been provided with

15  anything that triggers the pending proceeding rule in a way

16  that would bar that request.  So that's my ruling.

17          So for the first request, loan documents, related

18  agreements, yes, including for the professionals on the

19  committee and the ad hoc group, and for all of the

20  transactions that are discussed.  But as for documents and

21  communications relating to those transactions, I'm going to,

22  whatever you want me to do, adjourn it, deny it without

23  prejudice to reasserting it later.  I don't think I have

24  enough to go there.  And again, I think it would be helpful

25  to see the agreements and understand their significance

Page 38

```
1    before going through that because I think saying documents
2    and communications relating to could be exceedingly broad.
3    I do know 2004, there's lots of case law about it being a
4    fishing expedition, but I think we're not there yet.  And so
5    if we get there, we get there.  If we don't, we don't, and
6    we'll cross that bridge when we come to it.
7             So that's my ruling.  I am happy to regale you all
8    with the applicable legal standard on Rule 2004.  It's all
9    set forth in your papers.  You're smart folks.  You know it.
10   I'm going to skip that part of it in the interest of
11   compassion.  But if there's any clarification anybody wants
12   on any particular legal issue, I'm happy to give it.  So
13   with that, let me ask if there's anything else from the
14   debtors on this 2004 application.
15            MR. RIBEIRO:  No, Your Honor.  We really
16   appreciate it.  We will revise the order, run that by
17   opposing counsel and submit that to chambers.
18            THE COURT:  All right.  Anything else from DCG?
19            MR. SIDDIQUI:  Yeah, Your Honor, just a couple of
20   points.  First, I just wanted to briefly clarify what I
21   indicated, that there was one undisputed obligation.  I was
22   actually just trying to make allusion to the fact that out
23   of the three bases, the promissory note is not subject to
24   another pending proceeding.
25            THE COURT:  Yeah, no, that's how I took it.
```

Page 39

1           MR. SIDDIQUI:  Fair enough.  And then the other

2    point is, with respect to the actual documents that are

3    shared, we had agreed, or tentatively agreed yesterday

4    evening to provide the debtors with the loan agreement and

5    the security agreement.  We would request that this court

6    sort of clarify that that is what we would actually be

7    providing to the UCC and the ad hoc group on a PEO basis.

8    We would like to avoid having to provide the entire closing

9    set and confidential information and schedules, et cetera.

10   If the debtors and the committee advisors need to see the

11   loan agreement and the salient terms, they should be able to

12   gather all that from the actual loan agreement and from the

13   actual security agreement.

14           THE COURT:  So I will say I'm going to plead the

15   Fifth because I'm not qualified enough.  I don't know the

16   deal documents and I don't know the contract.  I think

17   you've seen by my ruling that this seems reasonable, this

18   seems too far.  So I think you can apply those principles.

19   If the debtors have anything they want to chime in to

20   advance this particular discussion.

21           But I don't think the parties' papers really did

22   that kind of deep dive in terms of this is in, this is out.

23   I don't know if an attachment to the contract is relevant or

24   not for what you all are doing.  You all are in a much

25   better position to assess that.  So I'll keep my nose out of

Page 40

1    it.  That's when courts are essentially throwing darts at

2    dartboards.  And it's not the kind of decision-making you

3    should really want.  But let me ask debtors' counsel if

4    there's any comments you have on that that might help move

5    things along.

6           MR. RIBEIRO:  Sure, Your Honor.  What we're

7    seeking is all the loan documentation and related

8    agreements.  I think it's important to have the full suite

9    of documents because how else are we going to understand

10   what we're seeking to understand if we don't have the

11   relevant documents and all the related documents.  And so I

12   do think that's the loan documentation, security agreements,

13   pledge documents, and I think that's consistent with Your

14   Honor's ruling today.  So that's all I have to say.

15          THE COURT:  All right.  Anything else from DCG?

16          MR. SIDDIQUI:  Nothing else, Your Honor, aside

17   from if they're seeking to understand the obligations, that

18   would be in the loan agreement and the security agreement.

19          THE COURT:  Well, again, I understand clients

20   don't like to share information like this, but I think it's

21   appropriate under the standards.

22          MR. SIDDIQUI:  Your Honor, the debtors agreed to

23   this last night.  So I don't --

24          THE COURT:  Well, I know, but you didn't agree

25   enough to make it go away today.  So again, I'm not in the

Page 41

1    room where it happened.  So I can't sort of betray the

2    agreements because agreements are I give you this, but you

3    dropped that.  And so again, you don't want me mucking

4    around with it, and when you reach agreements and you

5    present them as agreements, then that's almost always you

6    get the touchdown sign, which I'm happy to give.  But if you

7    talk and you don't care and it's in front of me, it's in

8    front of me.  So I don't know any other way to do it that

9    would be successful.  Anything from the committee?  Anything

10   else from the committee?  Oh, you're on mute.

11          MR. WEST:  Sorry.  No, Your Honor, nothing else

12   from the committee.  We'll work with the debtors and DCG and

13   hopefully not have to raise any other issues with the court.

14          THE COURT:  All right.  And last but not least,

15   anything else from the ad hoc group?

16          MR. ROSEN:  Your Honor, just to reiterate what Mr.

17   Ribeiro said, which is schedules and things like that are

18   very, very important to understand the extent of any

19   collateralization that might have been provided.  So we'll

20   take a look at everything that comes in, and to the extent

21   there are any issues, we'll coordinate with the debtors and

22   the UCC and bring them to the court's attention if

23   necessary.  Thank you.

24          THE COURT:  All right.  Thank you very much.  All

25   right.  I'll wait on an electronic version of proposed order

Page 42

1   on that that you revised based on today's proceedings.  And

2   with that, hearing nothing else from anyone else, we are

3   adjourned.  If you need --

4           MR. BAREFOOT:  Your Honor?

5           THE COURT:  I'm sorry.  Go ahead.

6           MR. BAREFOOT:  I apologize.  We have the pretrial

7   conference in the adversary proceedings

8           THE COURT:  Oh, I'm sorry.  Sorry.  My apologies.

9   Not intending to kick you to the curb without handling

10  anything we need to, so let's do that.  That is a status

11  item on the agenda.  So that's the adversary complaint and

12  actually has some overlap with the discussions we were just

13  having, I guess.  So let me hear from the debtors to start

14  us off.

15          MR. BAREFOOT:  Thank you, Your Honor.  Luke

16  Barefoot, from Cleary Gottlieb, again, for the debtors.

17  This is the adversary proceeding captioned GGC v. DCG, and

18  it's Case Number 24-1312.

19          Your Honor, I'm pleased to report that through

20  discussions with Weil Gotshal, we've reached agreement on a

21  form of proposed scheduling order.  And with Your Honor's

22  permission, I'd just propose to briefly walk through the

23  terms of that scheduling order and provide Your Honor with a

24  little bit of context on the parties' thinking about the

25  structure of that order and the gravamen of the complaint.

Page 43

1           THE COURT:  All right.  Please.

2           MR. BAREFOOT:  So, Your Honor, I believe this is

3    our first appearance before you in this adversary

4    proceeding, but as you may have heard from the context of

5    the Rule 2004 discussion that we just had, the subject

6    matter of the dispute is actually quite familiar to you.

7    You may recall that in November of last year, the court

8    approved the debtors' settlement with the liquidators of

9    Three Arrows Capital.  And in that settlement we allowed a

10   claim in favor of the debtors' estate in the amount of $33

11   million.

12          In the settlement agreement and order, we

13   expressly reserved our rights to pursue claims against DCG

14   for payment on that $33 million claim of Three Arrows

15   Capital.  And this adversary proceeding ties the knot and

16   does exactly that.  It seeks a declaratory judgment that

17   under the terms of the agreements between the debtors and

18   DCG, DCG took assignment of all of the obligations, burdens

19   and liabilities in connection with the debtors' loans to

20   Three Arrows.

21          DCG answered that complaint as scheduled on March

22   11th of this month, and we filed the proposed scheduling

23   order that has been agreed to between the parties on Friday,

24   and that's at Docket Item Number 6.  Effectively, Your

25   Honor, the proposed scheduling order contemplates that the

Page 44

1   parties would file cross-motions for partial judgment on the

2   pleadings, which would be briefed as set out in the

3   scheduling order between now and May 30th.

4           By way of just brief explanation on the thinking

5   behind that, the parties have a difference of reading and

6   interpretation of the agreements that underlie the claims

7   and the Three Arrows Capital claims against the estate.  The

8   parties' intent is that those contractual disputes would be

9   resolved through the motions for judgment on the pleadings.

10  The parties have also agreed that pending the resolution of

11  the competing motions for judgment on the pleadings, that

12  discovery on the affirmative defenses asserted by DCG in the

13  answer would be stayed.  So unless Your Honor has any

14  questions, we would respectfully request entry of the

15  consensual scheduling order, and we'll be off to the races

16  on our 12(c) motions.

17          THE COURT:  All right.  Let me hear from DCG.

18          MS. ZALKA:  Caroline Zalka, from Weil Gotshal, for

19  DCG, Your Honor.  Good morning.  I'm pleased to report,

20  obviously, that the parties were able to work consensually

21  towards a schedule to propose to the court that made sense

22  for all involved.  I look forward to briefing the motion for

23  judgment on the pleadings if the court enters the proposed

24  order.

25          THE COURT:  All right.  Thank you very much.  That

Page 45

```
 1    all sounds fine to me.  I appreciate you working together to

 2    come up with a schedule, and I haven't seen the proposed

 3    order yet.  I don't know if it contemplates a particular

 4    hearing date.  I'm assuming it probably just leaves that

 5    open for another time.  And that makes sense, just so I can

 6    make sure that I have enough time lead up to get familiar

 7    with your arguments before we come in.  But with that

 8    understanding, I am happy to go along with the parties'

 9    agreement.  Again, I appreciate the efforts to efficiently

10    move the case along.  Anyone else we need to discuss on the

11    --

12           MR. BAREFOOT:  Thank you, Your Honor.  Just to

13    answer the question --

14           THE COURT:  Sure.

15           MR. BAREFOOT:  -- the scheduling order does not

16    propose a hearing date.  And we'll consult with Ms. Zalka

17    and propose to reach out to chambers after the briefing is

18    completed.

19           THE COURT:  Yeah, that's great.  I know I have a

20    slightly different take on that, and I imagine different

21    judges do as well.  So I appreciate that.  All right.

22    Anything else, Mr. Barefoot, in connection with the

23    adversary complaint?

24           MR. BAREFOOT:  Neither the adversary complaint nor

25    the agenda.  This concludes for today, Your Honor.
```

1            THE COURT:  All right.  Anything else from DCG?

2            MS. ZALKA:  Nothing from DCG, Your Honor.

3            THE COURT:  All right.  Thank you.  Anything else

4     from any other party?  All right.  And, Mr. Barefoot, I'm

5     assuming that any other dates that you need, you have been

6     in contact with Ms. Ebanks, and we'll steer clear of my much

7     less systematic scheduling approach.

8            MR. BAREFOOT:  Understood, Your Honor.

9            THE COURT:  All right.  Thank you very much.  With

10    that, good to see you all again, and have a good afternoon.

11            MR. BAREFOOT:  Thank you, Your Honor.

12            (Whereupon these proceedings were concluded at

13    12:25 PM)

14

15

16

17

18

19

20

21

22

23

24

25

```
                                                      Page 47

1                         I N D E X

2

3                           RULINGS

4                                          Page      Line

5    Debtors' Motion for Entry of an Order

6    Authorizing the Debtors To Further Extend

7    the Coverage Period of Certain Insurance

8    Policies and Granting Related Relief

9    (Doc. #1429)                           12         3

10

11   Motion for Omnibus Objection to

12   Claim(s) / Debtors' Twenty-Third Omnibus

13   Objection (Non-Substantive) to Certain

14   Claims Pursuant to 11 USC 502 and

15   Fed. R. Bankr. P. 3007 (No Liability)

16   (Doc. #1315)                           14         17

17

18   Motion to File Under Seal / Debtors'

19   Motion for Authority to Redact and

20   File Certain Information Under Seal

21   (Doc. #1304)                           17         18

22

23

24

25
```

```
1    Application for FBRP 2004 Examination /

2    Debtors' Request for Entry of an Order

3    Pursuant to 11 USC 105 and Fed. R. Bankr.

4    P. Rule 2004 (I) Authorizing the

5    Examination of Digital Currency Group,

6    Inc. and DCG International Investments,

7    Ltd. and (II) Granting Related Relief

8    (Doc. #1303)                            37        17

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**Page 49**

1                      C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   *Sonya M. Ledanski Hyde*

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  March 21, 2024