**Hearing Date and Time: May 8, 2024 at 11:00 A.M. (ET)**
**Response Deadline: April 26, 2024 at 4:00 P.M. (ET)**

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

> **THIS OBJECTION SEEKS TO DISALLOW AND
> EXPUNGE CERTAIN FILED PROOFS OF CLAIM**
>
> **PLEASE CAREFULLY REVIEW THE
> ATTACHED OBJECTION AND THE ATTACHMENTS
> THERETO TO DETERMINE WHETHER IT AFFECTS YOUR CLAIM(S)**
>
> **IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT DEBTORS' COUNSEL:
> DEANDRA FIKE, ESQ., DFIKE@CGSH.COM OR KATHARINE ROSS, ESQ.,
> KROSS@CGSH.COM**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

**NOTICE OF HEARING ON
DEBTORS' TWENTY-EIGHTH
OMNIBUS OBJECTION (NON-SUBSTANTIVE)
TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502 AND
FED. R. BANKR. P. 3007 (NO LIABILITY AND INSUFFICIENT DOCUMENTATION)**

**PLEASE TAKE NOTICE** that on January 19, 2023 (the "Petition Date"), Genesis Global Holdco, LLC ("Holdco") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on April 5, 2024, the Debtors filed the *Debtors' Twenty-Eighth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability and Insufficient Documentation)* (the "Twenty-Eighth Omnibus Objection"). A hearing (the "Hearing") on the Objection will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10610 pursuant to the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 44) (the "Case Management Order") and the *Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related Relief* (ECF No. 498) (the "Claims Procedures Order"). The Hearing will commence on **May 8, 2024, at 11:00 A.M. (Prevailing Eastern Time)**, and will be conducted through Zoom for government. Pursuant to the Claims Procedures Order, the Debtors reserve the right to adjourn the Hearing in their sole discretion on further notice. *See* Claims Procedures Order at 3.

**PLEASE TAKE FURTHER NOTICE** that parties wishing to register for the Zoom Hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances. Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so by calling the following muted, listen-only number: 1-929-205-6099, Access Code: 92353761344#.

**PLEASE TAKE FURTHER NOTICE** that any objections or responses ("Responses"), if any, to the Twenty-Eighth Omnibus Objection or the relief requested therein shall be made in writing, filed with the Court no later than **April 26, 2024, at 4:00 P.M. (Prevailing Eastern Time)** (the "Response Deadline"), and served as required by the Case Management Order.[3]

---

[2]     Holdco, and its Debtor and non-Debtor subsidiaries are collectively referred to as the "Company".

[3]     See paragraph 39 of the Twenty-Eighth Omnibus Objection regarding submission of Responses written and signed by a claimant themselves rather than by an attorney on behalf of the claimant.

**PLEASE TAKE FURTHER NOTICE** that if no Responses are timely filed and served with respect to the Twenty-Eighth Omnibus Objection, the Debtors may, on or after the Response Deadline, submit to the Court an order substantially in the form annexed as **Exhibit A** to the Twenty-Eighth Omnibus Objection, which order the Court may enter with no further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** copies of the Twenty-Eighth Omnibus Objection can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov, or (ii) from the Debtors' notice and claims agent, Kroll Restructuring Administration located at One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165, at https://restructuring.ra.kroll.com/genesis or by calling +1 212 257 5450.  Note that a PACER password is needed to access documents on the Court's website.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may affect your rights. Please read the Twenty-Eighth Omnibus Objection carefully and, if you have one available, discuss it with your attorney.  (If you do not have an attorney, you should consider consulting with one.)

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Twenty-Eighth Omnibus Objection, or if you want the Court to hear your position on the Twenty-Eighth Omnibus Objection, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Twenty-Eighth Omnibus Objection and may enter orders granting the relief requested by the Debtors.

Dated:    April 5, 2024
        New York, New York

*/s/ Luke A. Barefoot*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**Hearing Date and Time: May 8, 2024 at 11:00 A.M. (ET)**
**Response Deadline: April 26, 2024 at 4:00 P.M. (ET)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' TWENTY-EIGHTH
OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO
CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502 AND
FED. R. BANKR. P. 3007 (NO LIABILITY AND INSUFFICIENT DOCUMENTATION)**

**TO THE CLAIMANTS WHOSE CLAIMS ARE OBJECTED TO BY THIS
OBJECTION (THE "TWENTY-EIGHTH OMNIBUS OBJECTION" OR
"OBJECTION"):**

- **THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE
  CERTAIN FILED PROOFS OF CLAIM.**

- **YOU SHOULD LOCATE YOUR NAME AND CLAIM(S) ON
  EXHIBIT A-1 TO THE PROPOSED ORDER.**

- **YOUR RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND
  BY ANY FURTHER OBJECTION(S) THAT MAY BE FILED BY
  THE DEBTORS.  YOUR CLAIM(S) MAY BE DISALLOWED,
  EXPUNGED, RECLASSIFIED, REDUCED, OR OTHERWISE
  AFFECTED AS A RESULT OF THIS OBJECTION.  THEREFORE,
  PLEASE READ THIS OBJECTION CAREFULLY AND DISCUSS IT
  WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN
  ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO
  THE DEBTORS' RIGHTS, CONSISTENT WITH PRIOR COURT
  ORDERS, TO PURSUE FURTHER SUBSTANTIVE OR NON-**

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich St., 38th Floor, New York, NY 10007.

**SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED
ON <u>EXHIBIT A-1</u> TO THE PROPOSED ORDER.**

Genesis Global Holdco, LLC ("<u>Holdco</u>") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "<u>Debtors</u>," and these cases, the "<u>Chapter 11 Cases</u>") hereby object to and incorporate by reference those certain claims listed on <u>Exhibit A-1</u> to the proposed order, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Proposed Order</u>"), pursuant to section 502 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the *Revised Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related Relief* (ECF No. 498) (the "<u>Claims Objection Procedures Order</u>") and seek entry of the Proposed Order disallowing and expunging the Three Arrows Fund Claims (as defined below). In support of this Objection, the Debtors submit the *Declaration of Adrian Gariboldi in Support of the Debtors' Twenty-Eighth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability and Insufficient Documentation)* (the "<u>Gariboldi Declaration</u>"), attached hereto as <u>Exhibit B</u> and incorporated by reference, and the *Declaration of Paul Kinealy in Support of the Debtors' Twenty-Eighth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability and Insufficient Documentation)* (the "<u>Kinealy Declaration</u>"), attached hereto as <u>Exhibit C</u> and incorporated by reference, and respectfully state as follows:

**<u>Jurisdiction</u>**

38.    The United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern

District of New York dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory bases for the relief requested herein are Bankruptcy Code sections 105 and 502, and Bankruptcy Rule 3007.

## Background

### A.    Procedural History

2.    On January 19, 2023, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date") with the Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of the Related Chapter 11 Cases* (ECF No. 37). No trustee or examiner has been appointed in the Chapter 11 Cases. On February 3, 2023, an official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases pursuant to the *Notice of Appointment of Official Committee of Unsecured Creditors* (ECF No. 55).

3.    On March 21, 2023, each Debtor filed its *Summary of Assets and Liabilities* (ECF Nos. 145, 146, and 147) and *Statement of Financial Affairs* (ECF Nos. 142, 143 (as amended by ECF No. 450), and 144) (the "Schedules" and "Statements," respectively).

4.    On April 4, 2023, the Court granted the *Order (I) Establishing Bar Dates for Submitting Proofs of Claim, (II) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (III) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (IV) Providing Certain Supplemental Relief* (ECF No. 200) (the "Bar Date Order"), which

established May 22, 2023 as the general date by which most creditors have submitted their proofs of claim (the "General Bar Date").

5.      The General Bar Date passed on May 22, 2023.  As of April 1, 2024, 1,607 proofs of claim have been filed against the Debtors.

**B.      The Claims Resolution Process**

6.      In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

7.      The Debtors' Claims agent, Kroll Restructuring Administration (the "Claims Agent"), has prepared and maintains a register (the "Claims Register") of proofs of claim (each a "Proof of Claim") that were filed in these Chapter 11 Cases asserting claims against the Debtors (collectively, the "Claims," and each holder of a Claim, a "Claimant").  Pursuant to the *Stipulation and Confidentiality Agreement and Protective Order* (ECF No. 328) (the "Protective Order"), the Court's *Memorandum of Decision* (ECF No. 581) (the "Redaction Decision"), and the *Order Granting the Debtors' and the Official Committee of Unsecured Creditors' Motions for Entry of an Order Requiring the Redaction of Certain Personally Identifiable Information* (ECF No. 694) (the "Redaction Order"), much of that information is maintained under seal to protect the confidentiality of the Debtors' creditors.  The Debtors and their advisors are comprehensively reviewing and reconciling all claims, including both the claims listed on the Schedules ("Scheduled Claims") and the Claims asserted in the Proofs of Claim (including any supporting documents).  The Debtors are also comparing the Claims asserted in the Proofs of Claim with their Books and Records to determine the validity of the asserted Claims.

8.      The reconciliation process includes identifying particular categories of claims that may be targeted for disallowance, reduction and allowance or reclassification and allowance.  To

reduce the number of Claims, and to avoid possible double recovery or otherwise improper recovery by Claimants, as well as unnecessary duplication or noise in the voting pool in respect of the Debtors' ongoing solicitation, the Debtors will continue to file omnibus objections to such categories of claims if and where warranted. This Objection is one such omnibus objection.

9.    On July 12, 2023, the Court entered the Claims Objection Procedures Order granting the Debtors relief from certain requirements of Bankruptcy Rule 3007. The Debtors submit that this Objection and the notice provided to the Claimants in connection herewith are consistent with the Claims Objection Procedures Order, the Bankruptcy Code and the Bankruptcy Rules.

### C.    Three Arrows Capital

10.    Three Arrows Capital Ltd. ("3AC") is an investment fund incorporated in the British Virgin Islands (the "BVI") that focused on the trading and dealing in cryptocurrency and other digital assets.

11.    On January 10, 2019, Genesis Global Capital, LLC ("GGC") and 3AC entered into a Master Loan Agreement and related pledge agreements (the "2019 GGC MLA"). On January 24, 2020, Genesis Asia Pacific Ptd. Ltd. ("GAP") entered into a Master Loan Agreement and a related pledge agreement with 3AC (the "2020 GAP MLA" and, together with the 2019 Master Loan Agreement, the "3AC MLAs"). The 3AC MLAs governed the lending and borrowing relationship between 3AC and GGC or GAP, as applicable.

12.    On July 20, 2020, GGC and GAP executed that certain Assignment and Assumption of Master Loan Agreement, pursuant to which GGC assigned to GAP all of its right, title, benefit, privileges and interest in and all of its burdens, obligations and liabilities in connection with that 2019 GGC MLA and related pledge agreements.

13.    In June of 2022, 3AC failed to meet its margin calls for various digital currency lending firms, including margin calls issued by the Debtors, resulting in its lenders issuing notices of default on many of 3AC's loans.  On June 13, 2022, GAP issued to 3AC a notice of default on all outstanding loans issued pursuant to the 3AC MLAs.

14.    On June 27, 2022, 3AC commenced liquidation proceedings before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "3AC BVI Proceeding").  On July 1, 2022, the joint liquidators appointed in the 3AC BVI Proceeding (the "3AC Joint Liquidators") filed for chapter 15 recognition of the 3AC BVI Proceeding in the Bankruptcy Court for the Southern District of New York.  On July 28, 2022, that court entered an order recognizing the 3AC BVI Proceeding as a foreign main proceeding.

15.    On July 14, 2022, GAP and Digital Currency Group, Inc. ("DGG"), the ultimate corporate parent of the Debtors, entered into that certain Assignment & Assumption Agreement (the "2022 GAP-DCG A&A Agreement"), pursuant to which among other things, GAP assigned to DCG and DCG assumed, all of GAP's right, title, benefit, privileges and interests in, and all of GAP's burdens, obligations and liabilities relating to (i) GAP's lending activities with 3AC, including all outstanding loans (the "3AC Loans"), (ii) the 3AC MLAs, and (iii) the related Pledge Agreements dated May 28, 2020, November 16, 2021, and January 27, 2022, each as amended, restated, amended and restated, supplemented or otherwise modified, which governed pledges of collateral in connection with the 3AC Loans (collectively, the "Pledge Agreements").

16.    On December 1, 2022, the Joint Liquidators commenced an action in the 3AC BVI Proceeding against GGC, GAP and DCG (the "3AC BVI Lawsuit") seeking to recover certain cryptocurrency assets that secured the 3AC Loans on which GAP foreclosed in June of 2022 (the "Disputed Collateral").

6

17.     On May 22, 2023, the Joint Liquidators filed substantively identical proofs of claim numbers 523, 526 and 527 against Holdco, GGC and GAP (the "3AC Initial Claims").  On August 18, 2023, and in response to an omnibus objection to the Original Claims filed by the Debtors seeking to expunge those claims,[2] the Joint Liquidators filed revised proofs of claim numbers 981, 982 and 990 (the "3AC Amended Claims" and together with the Original Claims, the "3AC Claims").

18.     On November 22, 2023, the Debtors, DCG, the Joint Liquidators and 3AC executed a settlement agreement resolving the 3AC Amended Claims against the Debtors (the "Settlement Agreement") and reserving the Debtors' rights pursuant to the 2022 DCG-GAP A&A Agreement.

19.     On November 30, 2023, the Court approved the Settlement Agreement and entered the *Order Approving Settlement Agreement Between the Genesis Debtors and the Joint Liquidators of Three Arrows Capital, Ltd.* (the "Order") ECF No. 1012, allowing one general unsecured claim by 3AC against GGC in the amount of $33,000,000 (the "Allowed 3AC Claim Amount") and preserving the Debtors' right to obtain payment from DCG on account of such claim.  Order ¶ 4.  The Settlement Agreement became effective as of December 22, 2023, upon which date the remainder of the 3AC Claims were deemed expunged and withdrawn with prejudice.  *Notice of Effective Date of Debtors' Executed Settlement Agreement Between the Genesis Debtors and the Joint Liquidators of Three Arrows Capital, Ltd.*, ECF No. 1118.

---

[2]     *See Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526, and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (ECF No. 530); *see also Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (ECF No. 658).

D.    **Three Arrows Fund**

20.    Three Arrows Fund, Ltd. (the "Three Arrows Fund") is the offshore "feeder fund" of 3AC incorporated in the BVI.  Gariboldi Decl., Ex. 1, Three Arrows Fund Chapter 15 Petition ¶ 12.

21.    The Three Arrows Fund was set up to invest substantially all of its assets in 3AC. *Id.* ¶ 13.  This master/feeder structure was used to permit the pooling of investor assets with similar investment objectives, in an effort to achieve economies of scale and efficiencies in portfolio management, while preserving the separate identities of the investors and the underlying assets they had sought to invest in.  *Id.*  Organizational charts depicting 3AC and its affiliated entities reflect this master/feeder structure between 3AC and the Three Arrows Fund. Gariboldi Decl., Ex. 2, Three Arrows Organizational Chart.

22.    3AC represented to GAP and GGC during the course of its financial relationship with those entities that the Three Arrows Fund was a feeder fund for 3AC.  Gariboldi Decl., Ex. 3, June 13, 2022 3AC-Genesis Telegram Chat ("Three Arrows Capital Ltd is the master fund where we have all trading/assets.  Three Arrows Fund LP and Three Arrows Fund Ltd are the feeder funds."); Gariboldi Decl., Ex. 4, Three Arrows Administration Agreement (describing Three Arrows Fund as a "Feeder Fund" and 3AC as a "Master Fund").  The Three Arrows Fund was not party to the 3AC MLAs or the Pledge Agreements, nor did the Three Arrows Fund have any direct lending relationship with the Debtors.  Kinealy Decl. ¶ 8.

23.    Following the liquidation of 3AC, the Three Arrows Fund had little purpose. Gariboldi Decl., Ex. 1, Three Arrows Fund Chapter 15 Petition ¶ 20.  On January 27, 2023, the directors and sole voting shareholder of the Three Arrows Fund placed it into a formal liquidation process in the BVI by written resolution (the "Three Arrows Fund BVI Proceeding").  *Id.*  On February 8, 2024, the joint liquidators appointed in the Three Arrows Fund BVI Proceeding (the

"Three Arrows Fund Joint Liquidators") filed a chapter 15 recognition petition for the Three

Arrows Fund BVI Proceeding in the Bankruptcy Court for the Southern District of New York.

On March 11, 2024, the that court entered an order recognizing the Three Arrows Fund BVI

Proceeding as a foreign main proceeding.

24.     On May 18, 2023, the Three Arrows Fund filed proofs of claim numbers 323

("Claim No. 323"), 324 ("Claim No. 324"), and 325 ("Claim No. 325"), and on May 22, 2023,

proofs of claim numbers 468 ("Claim No. 468"), 488 ("Claim No. 488"), and 502 ("Claim No.

502," and together with Claim No. 323, Claim No. 324, Claim No. 325, Claim No. 468, and

Claim No. 488, the "Three Arrows Fund Claims"), which are listed in Exhibit A-1 to the

Proposed Order.

25.     Claim Nos. 323, 324, and 325 contain no supporting documentation or addenda

and assert unliquidated amounts on the basis of "[c]laims from loan agreements and/or

investments between Debtor, creditor and/or creditor's affiliates."  Kinealy Decl., Ex. 1, Claim

No. 323 at 7; Kinealy Decl., Ex. 2, Claim No. 324 at 7; Kinealy Decl., Ex. 3, Claim No. 325 at

7.  Claim Nos. 468, 488 and 502 assert unliquidated amounts on the basis of "[l]oan agreements

and/or investments," and contain identical addenda alleging that the Debtors and certain of their

non-Debtor affiliates "enter[ed] into Bitcoin commodity swaps with counterparties even though

[none] of the [Debtors] was a swap dealer registered with the [Commodities Future Trading

Commission]," that the "[Debtors] violated the Commodity Exchange Act ("CEA") by not

registering as swap dealers," and that the Three Arrows Fund "suffered actual damages from the

Bitcoin and other digital asset swaps with [the Debtors], and those entities are liable to [the Three

Arrows Fund] for their violations of the [CEA]."  *See* Kinealy Decl., Ex. 4, Claim No. 468 ¶¶ 4–

9

5, 11; Kinealy Decl., Ex. 5, Claim No. 488 ¶¶ 4–5, 11; Kinealy Decl., Ex. 6, Claim No. 502 ¶¶ 4–5, 11.

## **Relief Requested**

26.    For the reasons set forth below, the Debtors object to each of the Three Arrows Fund Claims listed in Exhibit A-1 to the Proposed Order on the basis that they are not prima facie valid because they (i) fail to sufficiently specify the basis for the Claim and do not include adequate supporting documentation with respect to Claim Nos. 468, 488 and 502, or *any* supporting documentation with respect to Claim Nos. 323, 324, and 325, to enable the Debtors to ascertain the validity of the Claim and (ii) are otherwise inconsistent with or contradict the Debtors' Books and Records insofar as they are not reflected in the Debtors' Books and Records. By this Objection, the Debtors respectfully request that the Court enter the Proposed Order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing in full each of the Three Arrows Fund Claims.

## **Basis for Relief**

27.    When asserting a proof of claim against a bankruptcy estate, a claimant must allege facts that, if true, would support a finding that a debtor is legally liable to a claimant. *See In re Avaya, Inc.*, 608 B.R. 366, 369–70 (Bankr. S.D.N.Y. 2019).  Where a claimant alleges sufficient facts to support a claim, that claim is afforded prima facie validity. *See id.*  A party wishing to dispute such a claim must produce evidence in sufficient force to negate that claim's prima facie validity. *Id.*  Once an objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence. *Id.*  The burden of persuasion is always on the claimant. *Id.*

28.    Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  Bankruptcy Rule 3007(d) and the Claims Objection Procedures Order permit the Debtors to file an objection to more than one claim on non-substantive bases, including because such claims "[are] inconsistent with or contradict[] the Debtors' books and records" and "fail[] to sufficiently specify the basis for the claim or does not include sufficient documentation to ascertain the validity of the claim[.]"  Claims Objection Procedures Order at ¶¶ 1(a)(i) and (v).  The Claims Objection Procedures Order further permits the Debtors to file an omnibus objection to claims that "seek recovery of amounts for which the Debtors are not liable."  Claims Objection Procedures Order ¶ 1(a)(iii).

29.    Courts in this District have previously disallowed and expunged claims filed against a debtor where such debtor has determined, after a thorough review and analysis of its Books and Records and the supporting documentation provided, it is not liable.  *See*, *e.g.*, Order*, In re LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG) (Bankr. S.D.N.Y. January 2, 2022) (ECF No. 3997); *see also In re Sunedison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. Jan. 20, 2021) (ECF No. 6362) (disallowing and expunging no liability claims); *In re Nine West Holdings, Inc.*, Case No. 18-10847 (SCC) (Bankr. S.D.N.Y. May 21, 2019) (ECF No. 1483) (same); *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Nov. 13, 2017) (ECF No. 1889) (same).  This Court has also previously disallowed and expunged claims filed against the Debtors in these Chapter 11 Cases on the same basis.  *See Order Granting Debtors' Fifth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (ECF No. 1170); *Order Granting Debtors' Tenth Omnibus*

11

*Objection (Non-Substantive) to Certain Claims Pursuant To 11 U.S.C. § 502 and Fed. R. Bankr.*
*P. 300*7 *(No Liability)* (ECF No. 1173); *Order Granting Debtors' Fourteenth Omnibus Objection*
*(Non-Substantive) to Certain Claims Pursuant To 11 U.S.C. § 502 and Fed. R. Bankr. P. 300*7
*(No Liability)* (ECF No. 1177).

## **OBJECTION**

30.     The Debtors and/or their advisors have reviewed the Claims Register, the Three
Arrows Fund Claims, and the Debtors' Books and Records.  *See* Ex. B, Kinealy Decl. ¶ 4.
Through this review, the Debtors have determined, with the help of Alvarez and Marsal North
America LLC ("A&M"), the Debtors' financial advisor, that the Three Arrows Fund Claims (i)
fail to sufficiently specify the basis of the alleged liability against the Debtors and provide
adequate supporting documentation with respect to Claim Nos. 468, 488 and 502 (as described
in further detail below), or *any* supporting documentation with respect to Claim Nos. 323, 324,
and 325, to enable the Debtors and their advisors to ascertain their validity and (ii) are otherwise
inconsistent with or contradict the Debtors' Books and Records in that they are not reflected in
the Debtors' Books and Records.  *See* Kinealy Decl. ¶ 5.  Indeed, with respect to 3AC and its
affiliated entities, including the Three Arrows Fund, the Debtors' Books and Records reflect only
transactions between 3AC and GAP and between 3AC and GGC.  *See* Kinealy Decl. ¶ 6.

31.     The fact that the Debtors' Books and Records do not reflect any transactions with
the Three Arrows Fund is consistent with the Three Arrows Fund's position as a feeder fund to
3AC that, as the Three Arrows Fund itself attests, was set up to invest substantially all of its
assets in 3AC.  *See* Gariboldi Decl., Ex. 1, Three Arrows Fund Chapter 15 Petition ¶ 20.
Moreover, that no financial relationship existed between Three Arrows Fund and any of the
Debtors is supported by 3AC's public filings in the 3AC Chapter 15 Court, *see* Gariboldi Decl.,
Ex. 2, Three Arrows Organizational Chart, as well as the information 3AC disclosed to the

Debtors over the course of the lending relationships between 3AC and GGC and between 3AC and GAP. *See* Gariboldi Decl., Ex. 3, June 13, 2022 3AC-Genesis Telegram Chat; Gariboldi Decl., Ex. 4, Three Arrows Administration Agreement. Further, the Three Arrows Fund was not party to the 3AC MLAs nor the Pledge Agreements, nor party to any other lending relationship with the Debtors. *See* Kinealy Decl. ¶ 8. Put simply, the Debtors only had a direct relationship with 3AC, and the 3AC Claims arising from such relationship were fully and finally settled pursuant to the Settlement Agreement.

32.     Moreover, as noted above, the Three Arrows Fund Claims contain no information to contradict the above stated evidence or establish there was any financial relationship between the Three Arrows Fund and any of the Debtors. Claim Nos. 323, 324 and 325 contain no supporting documentation whatsoever to allow the Debtors to identify any direct relationship between the Three Arrows Fund and the Debtors that would give rise to the alleged liability. *See* Kinealy Decl. ¶ 6. As this Court has explained, "if [claims] don't have supporting documentation, then they're not prima facie valid, in which case, [the Debtors] presented sufficient evidence to say they're not in [the Debtors'] books and records." *In re Genesis Global Holdco, LLC*, Case No. 23-10063, Jan. 3, 2023 Hr'g Tr. at 25:21–25:24.

33.     While Claim Nos. 468, 488 and 502 do attach some documentation, such documentation is insufficient as it does not provide evidence of a direct relationship between the Three Arrows Fund and the Debtors.[3] *See* Kinealy Decl. ¶ 6. Claim Nos. 468, 488 and 502

---

[3]     In fact, the supporting documentation attached to Claim Nos. 468, 488 and 502 is the only difference between those claims and Claim Nos. 323, 324 and 325, which are otherwise substantially identical. *See* Kinealy Decl. ¶ 7. Thus, despite Three Arrows Funds not describing these claims as amended claims, Claim Nos. 468, 488 and 502 appear to be duplicates of Claim Nos. 323, 324 and 325, only adding the supporting addenda, as detailed herein. *Compare* Kinealy Decl., Exs. 1–3, Claim Nos. 323, 324 and 325 at 7 (asserting unliquidated amounts on the basis of "[c]laims from loan agreements and/or investments between Debtor, creditor and/or creditor's affiliates") *with* Kinealy Decl., Exs. 4–6, Claim Nos. 468, 488 and 502 at 7 (asserting unliquidated amounts on the basis of "Loan agreements and/or investments (see addendum)"). As such, Claim Nos. 323, 324 and 325 should be

instead merely assert in a conclusory fashion that the Three Arrows Fund "suffered actual damages from the Bitcoin and other digital asset swaps with Genesis Lenders, and those entities are liable to [the Three Arrows Fund] for their violations of the CEA," but offer no evidence that any of the Debtors engaged in Bitcoin and other digital asset swaps with the Three Arrows Fund. *See* Kinealy Decl., Ex. 4, Claim No. 468 ¶ 11; Kinealy Decl., Ex. 5, Claim No. 488 ¶ 11; Kinealy Decl., Ex. 6, Claim No. 502 ¶ 11. This Court has additionally specified that, even for claims that provide supporting documentation, "by producing evidence in equal force to the prima facie case, an objector can negate a claim's presumptive legal validity, which shifts the burden back to the Claimant to prove by a preponderance of the evidence that . . . the claim should be allowed" and "where a claimant has not submitted sufficient documentation to support their proof of claim, they haven't met their prima facie burden and that is a basis for a claim being expunged." *In re Genesis Global Holdco, LLC*, Case No. 23-10063, Jan. 3, 2023 Hr'g Tr. at 22:3–22:8; 24:8–24:11.

34.     Finally, upon review, the Debtors' Books and Records do not reflect the existence of any financial relationship between the Debtors and the Three Arrows Fund, nor do they reflect the existence of the Three Arrows Fund as a Claimant or any evidence supporting the Three Arrows Fund Claims. The Debtors are therefore unable to independently verify the liability asserted in the Three Arrows Fund Claims. *See* Kinealy Decl. ¶ 5.

35.     Because the Three Arrows Fund Claims fail to sufficiently specify the basis for the alleged liability asserted against the Debtors and provide sufficient documentation to ascertain their validity, and the Debtors are otherwise unable to verify the asserted liability

---

expunged on the additional basis that they are amended by Claim Nos. 468, 488 and 502. *See* Claims Procedures Order at 2.

through a review of their Books and Records, the Three Arrows Fund Claims do not meet the standards for prima facie validity and, to avoid impermissible recoveries, the Debtors request that the Court disallow and expunge each of the Three Arrows Fund Claims in its entirety.

## **Separate Contested Matters**

36.    To the extent that a response is filed regarding any of the Three Arrows Fund Claims and the Debtors are unable to resolve the response, such Three Arrows Fund Claims and the objection by the Debtors to such claims asserted herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each Three Arrows Fund Claim.

## **Responses to Omnibus Objection**

37.    To contest this Objection, a Claimant must file and serve a written response to this Objection (a "Response") so that it is received no later than **4:00 P.M.** (prevailing Eastern Time) on **April 26, 2024** (the "Response Deadline").   Every Response must be filed electronically with the Court on the docket of *In re Genesis Global Holdco, LLC*, Case No. 23-10063 (the "Docket") and served upon the following entities so that the Response is received no later than the Response Deadline, at the following addresses:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York 10006
> Attn:  Sean O'Neal, Esq., Luke A. Barefoot, Esq., Jane VanLare, Esq. and Thomas S. Kessler, Esq.
> soneal@cgsh.com, lbarefoot@cgsh.com, jvanlare@cgsh.com and tkessler@cgsh.com
>
> -and-
>
> Genesis Global Holdco, LLC
> 175 Greenwich St., 38th Fl.

New York, NY 10007
Attn: Andrew Sullivan
asullivan@Genesistrading.com

-and-

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
Attn: Philip Abelson, Esq.
philip.abelson@whitecase.com

-and-

Bankruptcy Court of the Southern District of New York
Chambers of Judge Sean H. Lane
300 Quarropas Street
White Plains, NY 10610
Attn: Chambers of Judge Sean H. Lane

38.     Every Response to this Objection must contain, at minimum, the following
information:

      a.     A caption identifying the name of the Bankruptcy Court, the names
of the Debtors, the case number and the title of the Objection to which the
Response is directed;

      b.     The name of the Claimant and description of the basis for the Claim;

      c.     The specific factual basis and supporting legal argument upon which
the party will rely in opposing this Objection;

      d.     A short statement describing the reasons for which the Claim should
not be disallowed as set forth in the Objection

      e.     Additional documentation or other evidence upon which the
Claimant relies in opposing the Objection (if it was not included with the Proof
of Claim previously filed with the Court);

      f.     The address(es) to which the Debtors must return any reply to the
Claimant's Response, if different from that presented in your Proof of Claim;
and

g.       The name, address, and telephone number of the person (which may be the Claimant or its legal representative) holding ultimate authority to resolve the Claim on the Claimant's behalf.

39.    Additionally, where a Claimant sends the Court a written Response that is not signed by an attorney, and the Claimant does not file the Response on the docket, the Claimant must include with its Response a completed Court Communication Form (as defined, and in accordance with the requirements set forth, in the Notice of Protocol for Written Communications to the Bankruptcy Court by Creditors, ECF No. 1094 (the "<u>Written Communications Protocol</u>")) authorizing the Court to file the Response on the Court docket and acknowledging that the Claimant's name and any contact information included in the Response as well as in the Court Communication Form will be publicly available.   The Court Communication Form is attached as Exhibit A to the Written Communications Protocol.  **Failure to include a completed Court Communication Form or to consent to this acknowledgement will result in the Response not being filed on the docket or considered by the Court.**  Written Communications Protocol at 2.

40.    If a Claimant fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order disallowing or modifying the Three Arrows Fund Claims, without further notice to the Claimant or a hearing.

<u>**Replies to Responses**</u>

41.    The Debtors may, at their option, file and serve a reply to any Response no later than two (2) business days prior to the Hearing.

<u>**Adjournment of Hearing**</u>

42.    The Debtors reserve the right to adjourn the Hearing on any Responses to this Objection.  In the event that the Debtors notice such an adjournment, it will be noted on the

17

notice of agenda for the Hearing, and such agenda will be served on the affected Claimants by serving the person designated in the Response.

**Reservation of Rights**

43.    The Debtors expressly reserve the right to amend, modify or supplement this Objection.  Should the grounds of objection stated in this Objection be dismissed or overruled, the Debtors reserve the right to object to each of the Three Arrows Fund Claims on any other grounds that the Debtors discover or elect to pursue.  This Objection sets out non-substantive objections to each of the Three Arrows Fund Claims identified on Exhibit A-1 to the Proposed Order.  The Debtors reserve their right to assert other non-substantive objections and/or one or more substantive objections to the Three Arrows Fund Claims set forth on Exhibit A-1 at a later time, to the extent consistent with the Claims Objection Procedures Order.

44.    Notwithstanding anything contained in this Objection or the attached exhibits, nothing herein shall be construed as (i) an admission or finding as to the validity of any Claim against a Debtor, (ii) a waiver of the right of the Debtors or the Official Committee of Unsecured Creditors (the "UCC") to dispute any Claim against any Debtor on any grounds whatsoever at a later date, including on grounds of equitable subordination under section 510(c) and/or disallowance under section 502(d) of the Bankruptcy Code, (iii) a promise by or requirement on any Debtor to pay any Claim, or (iv) a waiver of the rights of the Debtors or the UCC under the Bankruptcy Code or any other applicable law.

**Notice**

45.    The Debtors have provided notice of this Objection in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management*

*Procedures* (ECF No. 44) (the "Case Management Order").  The Debtors respectfully submit

that no other or further notice need be provided

**No Prior Request**

46.      No prior request for the relief requested herein has been made to this or any other

Court.

*[The remainder of this page is left blank intentionally].*

19

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein the Debtors respectfully request that this

Court (a) enter the Proposed Order and (b) grant such other and further relief as is just and proper.

| | | |
|---|---|---|
| Dated: | April 5, 2024<br>New York, New York | _/s/ Luke A. Barefoot_<br>Sean A. O'Neal<br>Luke A. Barefoot<br>Jane VanLare<br>Thomas S. Kessler<br>CLEARY GOTTLIEB STEEN &<br>HAMILTON LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>_Counsel to the Debtors and_<br>_Debtors-in-Possession_ |

# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**ORDER GRANTING**
**DEBTORS' TWENTY-EIGHTH**
**OMNIBUS OBJECTION (NON-SUBSTANTIVE)**
**TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502 AND**
**FED. R. BANKR. P. 3007 (NO LIABILITY AND INSUFFICIENT DOCUMENTATION)**

Upon the *Debtors' Twenty-Eighth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability and Insufficient Documentation)* (the "Objection")[2] filed by the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), requesting an order pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing or expunging, as applicable, each of the Three Arrows Fund Claims to the extent set forth in Exhibit A-1 attached hereto (the "Order"); and upon the *Declaration of Adrian Gariboldi in Support of Debtors' Twenty Eighth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability and Insufficient Documentation)*, attached to the Objection as Exhibit B; and upon the *Declaration of Paul Kinealy in Support of Debtors' Twenty Eighth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr.*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich St., 38th Floor, New York, NY 10007.

[2]    Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Objection.

*P. 3007 (No Liability and Insufficient Documentation)*, attached to the Objection as <u>Exhibit C</u>; and

upon all other documentation filed in connection with the Objection and the Three Arrows Fund

Claims; and adequate notice of the Objection having been given as set forth in the Objection; and

it appearing that no other or further notice is required; and the Court having jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from

the United States District Court for the Southern District of New York dated January 31, 2012;

and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and

that the Court may enter a final order consistent with Article III of the United States Constitution;

and the Court having found that venue of this proceeding and the Objection in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in

the Objection is in the best interests of the Debtors, their estates, their creditors and other parties

in interest; and the Court having found that the Debtors' notice of the Objection and opportunity

for a hearing on the Objection was appropriate and no other notice need be provided; and the Court

having reviewed the Objection and having heard the statements in support of the relief requested

therein at a hearing before the Court (the "<u>Hearing</u>"); and the Court having determined that the

legal and factual bases set forth in the Objection and on the record of the Hearing establish just

cause for the relief granted herein; and all responses to the Objections (if any) having been

withdrawn or overruled; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor;

     IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

     1.    The Objection is GRANTED with respect to each of the Three Arrows Fund Claims

identified on <u>Exhibit A-1</u> attached hereto.

     2.    The Three Arrows Fund Claims are disallowed in full and shall be automatically

expunged from the Claims Register.

3.      This Order shall be deemed a separate Order with respect to each of the Three Arrows Fund Claims identified on Exhibit A-1 attached hereto.

4.      The Debtors, the Debtors' claims agent, Kroll Restructuring Administration LLC, and the clerk of this Court are authorized to take all actions necessary and appropriate to give effect to this Order, including updating the Claims Register to reflect the relief granted herein.

5.      Except as provided in this Order, nothing in this Order shall be deemed (i) an admission or finding as to the validity of any Claim against a Debtor, (ii) a waiver of the right of the Debtors or the Official Committee of Unsecured Creditors (the "UCC") to dispute any Claim against any Debtor on any grounds whatsoever at a later date, (iii) a promise by or requirement on any Debtor to pay any Claim, or (iv) a waiver of the rights of the Debtors or the UCC under the Bankruptcy Code or any other applicable law.

6.      This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.


Dated: _____, 2024
            White Plains, New York

                                    _____
                                    HONORABLE SEAN H. LANE
                                    UNITED STATES BANKRUPTCY JUDGE

3

# EXHIBIT A-1

**Three Arrows Fund Claims**

**Genesis Global Holdco, LLC Case No. 23-10063**
**Twenty-Eighth Omnibus Objection**
**Exhibit 1 - Three Arrows Fund Limited Claims**

## CLAIMS TO BE DISALLOWED

| # | NAME & ADDRESS | CLAIM # | ASSERTED DEBTOR | DATE FILED | TOTAL ASSERTED IN KIND AMOUNT |
|---|---|---|---|---|---|
| 1 | THREE ARROWS FUND, LTD (IN LIQUIDATION) ATTN: JAMES DRURY LM BUSINESS CENTRE FISH LOCK ROAD 4TH FLOOR ROAD TOWN, TORTOLA VG-11100 BRITISH VIRGIN ISLANDS | 323 | Genesis Global Capital, LLC | 05/18/23 | Unliquidated |
| | *Reason: Insufficient documentation and inconsistent with the Debtors' books and records.* | | | | |
| 2 | THREE ARROWS FUND, LTD (IN LIQUIDATION) ATTN: JAMES DRURY LM BUSINESS CENTRE FISH LOCK ROAD 4TH FLOOR ROAD TOWN, TORTOLA VG-11100 BRITISH VIRGIN ISLANDS | 324 | Genesis Asia Pacific Pte. Ltd. (Singapore) | 05/18/23 | Unliquidated |
| | *Reason: Insufficient documentation and inconsistent with the Debtors' books and records.* | | | | |
| 3 | THREE ARROWS FUND, LTD (IN LIQUIDATION) ATTN: JAMES DRURY LM BUSINESS CENTRE FISH LOCK ROAD 4TH FLOOR ROAD TOWN, TORTOLA VG-11100 BRITISH VIRGIN ISLANDS | 325 | Genesis Global Holdco, LLC | 05/18/23 | Unliquidated |
| | *Reason: Insufficient documentation and inconsistent with the Debtors' books and records.* | | | | |
| 4 | THREE ARROWS FUND, LTD (IN LIQUIDATION) ATTN: JAMES DRURY LM BUSINESS CENTRE FISH LOCK ROAD 4TH FLOOR ROAD TOWN, TORTOLA VG-11100 BRITISH VIRGIN ISLANDS | 468 | Genesis Global Holdco, LLC | 05/22/23 | Unliquidated |
| | *Reason: Insufficient documentation and inconsistent with the Debtors' books and records.* | | | | |

**Genesis Global Holdco, LLC Case No. 23-10063**
**Twenty-Eighth Omnibus Objection**
**Exhibit 1 - 3AC Fund Limited Claims**

## CLAIMS TO BE DISALLOWED

| # | NAME & ADDRESS | CLAIM # | ASSERTED DEBTOR | DATE FILED | TOTAL ASSERTED IN KIND AMOUNT |
|---|---|---|---|---|---|
| 5 | THREE ARROWS FUND, LTD (IN LIQUIDATION) ATTN: JAMES DRURY LM BUSINESS CENTRE FISH LOCK ROAD 4TH FLOOR ROAD TOWN, TORTOLA VG-11100 BRITISH VIRGIN ISLANDS | 488 | Genesis Asia Pacific Pte. Ltd. (Singapore) | 05/22/23 | Unliquidated |
| | *Reason: Insufficient documentation and inconsistent with the Debtors' books and records.* | | | | |
| 6 | THREE ARROWS FUND, LTD (IN LIQUIDATION) ATTN: JAMES DRURY LM BUSINESS CENTRE FISH LOCK ROAD 4TH FLOOR ROAD TOWN, TORTOLA VG-11100 BRITISH VIRGIN ISLANDS | 502 | Genesis Global Capital, LLC | 05/22/23 | Unliquidated |
| | *Reason: Insufficient documentation and inconsistent with the Debtors' books and records.* | | | | |

# **EXHIBIT B**

**Gariboldi Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

## DECLARATION OF ADRIAN GARIBOLDI IN SUPPORT OF DEBTORS' TWENTY-EIGHTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY AND INSUFFICIENT DOCUMENATION)

I, Adrian Gariboldi, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am an associate at the law firm Cleary Gottlieb Steen & Hamilton LLP, counsel to the Debtors in the above-captioned chapter 11 case.

2.      I respectfully submit this declaration in support of the *Debtors' Twenty-Eighth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability and Insufficient Documentation)* (the "Objection").[2]

3.      A true and correct copy of the *Verified Petition for Recognition of Foreign Main Proceeding and for Related Relief Under Chapter 15 of the Bankruptcy Code, and Memorandum of Law In Support Thereof*, Case No. 24-10210 at ECF No. 7, is attached hereto as Exhibit B-1.

4.      A true and correct copy of Exhibit A to the *Supplemental Declaration Of Russell Crumpler in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main*

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich St., 38th Floor, New York, NY 10007.

[2]      Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Objection.

*Proceeding and Related Relief* (the "Three Arrows Organizational Chart") filed in *In re: Three Arrows Capital, Ltd*, Case No. 22-10920 at ECF No. 37-1, is attached hereto as Exhibit B-2.

5.  A true and correct copy of a Telegram chat between certain employees of the Debtors and the founders of 3AC, dated June 13, 2022 (the "June 13, 2022 3AC-Genesis Telegram Chat"), is attached hereto as Exhibit B-3.

6.  A true and correct copy of an administration agreement between Apex Fund Services Ltd., Three Arrows Capital, Ltd, and Three Arrows Fund, Ltd, dated December 15, 2015 (the "Administration Agreement") is attached hereto as Exhibit B-4.

Dated: April 5, 2024
       New York, New York

Respectfully submitted,

*/s/  Adrian Gariboldi*
Adrian Gariboldi
agariboldi@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

*Counsel to the Debtors and
Debtors-in-Possession*

**<u>Exhibit B-1</u>**

**Three Arrows Fund Chapter 15 Petition**

PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Patrick E. Fitzmaurice
Hugh M. McDonald

*Attorneys for Petitioners Paul Pretlove, David Standish and
James Drury, in their capacities as Joint Liquidators of
of Three Arrows Fund, Ltd (in Liquidation)*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 24-10210 (MG) |
| Three Arrows Fund, Ltd (In Liquidation), | Chapter 15 |
| Debtor in a Foreign Proceeding.[1] | |

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING
## AND FOR RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE,
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

---

[1] The Debtor's company registration number is 1710548. The Debtor's registered office is P.O. Box 2283, 1st Floor, Columbus Centre, Road Town, Tortola, British Virgin Islands.

**Table of Contents**

I. PRELIMINARY STATEMENT ..................................................................................... 1

II. JURISDICTION AND VENUE ...................................................................................... 2

III. BACKGROUND ............................................................................................................ 3

    A. TAFL's Corporate Structure ................................................................................. 3

    B. TAFL's Pre-Liquidation Business ........................................................................ 4

    C. Events Leading up to the TAFL's Liquidation ..................................................... 4

IV. THE BVI PROCEEDING AND BVI INSOLVENCY LAW ........................................ 5

V. WINDING UP ACTIVITIES IN THE CAYMAN ISLANDS ....................................... 8

VI. RELIEF REQUESTED ................................................................................................ 10

VII. BASIS FOR RELIEF .................................................................................................. 11

    A. TAFL is an Eligible Debtor Under Chapter 15 of the Bankruptcy Code ............... 11

    B. The BVI Proceeding is a Foreign Proceeding and the Liquidators are Foreign
        Representatives .................................................................................................... 12

    C. The BVI Proceeding Is a Foreign Main Proceeding ............................................. 15

    D. Alternatively, the BVI Proceedings Should Be Recognized as a Foreign Non-Main
        Proceeding ........................................................................................................... 18

    E. The BVI Proceeding Meets All Other Requirements for Recognition ................... 19

    F. Relief Pursuant to Section 1521 of the Bankruptcy Code is Appropriate .............. 20

VIII. NO PRIOR REQUEST ................................................................................................ 21

4866-3915-8421

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ABC Learning Centres Ltd.,*
445 B.R. 318 (Bankr. D. Del. 2010) ..................................................................... 15

*In re Aerovias Nacionales de Colombia S.A.,*
303 B.R. 1 (Bankr. S.D.N.Y. 2003) ...................................................................... 11

*In re Ashapura Minechem Ltd.,*
480 B.R. 129 (S.D.N.Y. 2012).............................................................................. 14

*In re B.C.I. Finances Pty Ltd.,*
583 B.R. 288 (Bankr. S.D.N.Y. 2018) .................................................................. 11

*In re Barnet,*
737 F.3d 238 (2d Cir. 2013).................................................................................. 11

*In re Betcorp Ltd.,*
400 B.R. 266 (Bankr. D. Nev. 2009) ............................................................... 13, 14

*In re Cenargo Int'l, PLC,*
294 B.R. 571 (Bankr. S.D.N.Y. 2003) .................................................................. 11

*In re ENNIA Caribe Holding N.V.,*
594 B.R. 631, 638-39 (Bankr. S.D.N.Y. 2018)..................................................... 14

*In re Fairfield Sentry Ltd. (GBD),*
Case No. 10-13164, 2011 WL4357421, at *10 n.8 (S.D.N.Y. Sept. 16, 2011)...................... 19

*In re Global Cord Blood Corp.,*
Case No. 22-11347, 2022 WL 17478530, at *7 (Bankr. S.D.N.Y. Dec. 5, 2022)................. 13

*In re Gold & Honey, Ltd.,*
410 B.R. 357 (Bankr. E.D.N.Y. 2009).................................................................. 14

*In re Grand Prix Assocs., No. 09-16545 (DHS),*
2009 WL 1410519, at *22 (Bankr. D.N.J. May 18, 2009) .................................... 16

*In re Millennium Global Emerging Credit Master Fund Limited,*
458 B.R. 63 (Bankr. S.D.N.Y. 2011) aff'd 474 B.R. 88 (S.D.N.Y. 2012)............................ 16

*In re Octaviar Admin. Pty Ltd.,*
511 B.R. 361 (Bankr. S.D.N.Y. 2014) ............................................................. 2, 11

*In re Suntech Power Holdings Co.,*
520 B.R. 399 (Bankr. S.D.N.Y. 2014)........................................................ 2, 16, 18

*Morning Mist Holdings Ltd. V. Krys (In re Fairfield Sentry Ltd.),*
714 F.3d 127 (2d Cir. 2013)................................................................................. 15

4866-3915-8421

|  | **Page(s)** |
|---|---|

**Statutes**

11 U.S.C. § 101(23). ............................................................................................... 12, 13

11 U.S.C. § 101(24) ................................................................................................. 12

11 U.S.C. § 109(a) ................................................................................................... 11

11 U.S.C. § 365 ........................................................................................................ 18

11 U.S.C. § 507 ........................................................................................................ 19

11 U.S.C. § 1501(a)(1)-(5)). ...................................................................................... 2

11 U.S.C. § 1502(2) .................................................................................................. 19

11 U.S.C. § 1502(4) .................................................................................................. 15

11 U.S.C. § 1502(5) .................................................................................................. 19

11 U.S.C. § 1506 ...................................................................................................... 11

11 U.S.C. § 1515(b) .................................................................................................. 20

11 U.S.C. § 1515(c) .................................................................................................. 20

11 U.S.C. § 1516(d) .................................................................................................. 15

11 U.S.C. § 1517(a) .................................................................................................. 11

11 U.S.C. § 1517(b)(1) .............................................................................................. 15

11 U.S.C. § 1520 ...................................................................................................... 20

11 U.S.C. § 1521(a) .................................................................................................. 20

**Other Authorities**

*In re Ashapura Minechem Ltd.*,
   Case No. 11-14668 (JMP) (Bankr. S.D.N.Y. Nov. 22, 2011) ................................... 14

*In re Fairfield Sentry Limited, et al.*,
   Case No. 10-13164 (JPM) (Bankr. S.D.N.Y. July 22, 2010) .................................... 15

*In re Kingate Global Fund, Ltd., et al. (in Liquidation)*,
   Case No. 19-12853 (SMB) (Bankr. S.D.N.Y. Oct. 18, 2019) ................................... 15

*In re Three Arrows Capital, Ltd*,
   Case No. 22-10920 (MG) (Bankr. S.D.N.Y. July 28, 2022) .................................... 15

iii

4866-3915-8421

Paul Pretlove, David Standish and James Drury, duly appointed joint liquidators (the "**Petitioners**") of Three Arrows Fund, Ltd (In Liquidation) ("**TAFL**" or the "**Debtor**"), an exempted company with limited liability in liquidation the British Virgin Islands (the "**BVI Proceeding**") under the British Virgin Islands Insolvency Act, 2003 (the "**Act**"), by its undersigned United States counsel, Pillsbury Winthrop Shaw Pittman LLP, hereby respectfully submit the Official Form Petition, this Verified Petition (together, the "**Petition**"), the accompanying Declaration of Paul Pretlove executed on February 8, 2024 (the "**Pretlove Decl.**"), the Declaration of Scott Cruickshank executed on February 8, 2024 (the "**Cruickshank Decl.**"), and the Declaration of John A. Pintarelli executed on February 8, 2024 (the "**Pintarelli Decl.**" and, together with the Pretlove Decl. and the Cruickshank Decl., the "**Declarations**"), for entry of an order (the "**Proposed Order**"), substantially in the form attached hereto as **Exhibit A**, pursuant to Chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

    a. recognition of the BVI Proceeding as a foreign main proceeding under section 1517(b)(1) of title 11 of the United States Code (the "**Bankruptcy Code**") or in the alternative as a foreign nonmain proceeding under section 1517(b)(2) of the Bankruptcy Code;

    b. recognition of Petitioners as TAFL's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

granting relief pursuant to sections 1502 and 1521 of the Bankruptcy Code.

## I.   PRELIMINARY STATEMENT

1.    The purpose of Chapter 15 of the Bankruptcy Code is to provide effective mechanisms for dealing with cases of cross-border insolvency, with the express objectives of: (a) cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; (b) greater legal certainty for trade and investment; (c) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, shareholders and other interested entities, including the debtor; (d) the

protection and maximization of the debtor's assets; and (e) the facilitation of the rescue of financially troubled businesses. *See* 11 U.S.C. § 1501(a)(1)-(5)); *see also In re Suntech Power Holdings Co.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014). To that end, the Petitioners request recognition of the BVI Proceeding as a foreign main proceeding primarily to obtain this Court's assistance in staying all proceedings and any actions against TAFL, its property and assets, including transfers thereof, as well as to facilitate the Liquidators' efforts to collect TAFL's assets and investigate TAFL's business, financial affairs and potential claims against third parties. Recognition of the BVI Proceeding as a foreign main proceeding would confer upon TAFL the protections afforded by sections 362 and 1520 of the Bankruptcy Code, thereby preventing any one stakeholder from gaining an advantage over other stakeholders or otherwise interfering with the BVI Proceeding and implementation of orders of the BVI Court.

## II.     JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and sections 109 and 1501 of the Bankruptcy Code.

2.      Venue in this District is proper pursuant to 28 U.S.C. § 1410(1) because TAFL has assets within this District.

3.      With regard to section 1410(1), the Debtor has an interest in certain funds deposited with Pillsbury and held by Pillsbury in a trust account located in New York, New York with JPMorgan Chase Bank, N.A. (the "**Pillsbury Retainer**"). *See* Pintarelli Decl. ¶ 3. *See, e.g.*, *Suntech Power*, 520 B.R. at 416 (holding that establishing a deposit account in New York "had the effect of establishing a basis for venue in [the Southern District of New York] under 28 U.S.C. § 1410(1)"); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372-74 (Bankr. S.D.N.Y. 2014) (recognizing retainer as property for jurisdictional purposes).

2

4.       This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

5.       The statutory bases for the relief requested are sections 105(a), 362, 1504, 1506, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## III.   **BACKGROUND**

6.       On May 3, 2012, TAFL was incorporated as an exempted company with limited liability under the laws of the BVI and operated pursuant to a Memorandum and Articles of Association dated May 3, 2012 (as later amended and restated on October 3, 2021). Pretlove Decl. ¶ 10; Cruickshank Decl. ¶ 14.

7.       On January 27, 2023, TAFL's sole voting shareholder, Three Arrows Capital Pte. Ltd. ("**TAC Pte**") executed a resolution to place the Fund into liquidation (the "**Liquidation Resolution**") pursuant to Section 159(2) of the Act, and David Standish, James Drury and I were appointed joint liquidators (in such capacity, the "**JLs**"). Pretlove Decl. ¶ 11.

8.       TAFL's registered office address is ABM Corporate Services, Ltd. 1st Floor, Columbus Centre Road Town, Tortola VG1110 BVI. Pretlove Decl. ¶ 12; Cruickshank Decl. ¶ 15.

### A.   **TAFL's Corporate Structure**

9.       TAFL was founded by Kyle Davies and Su Zhu. It has two registered directors (whose powers ceased following the appointment of the Liquidators) who are Messrs. Davies and Zhu (collectively, the "**Directors**"). Pretlove Decl. ¶ 13.

10.       TAC Pte is TAFL's sole voting member, holding 100% of the management shares. The other equity classes, each of which holds participating non-voting shares in TAFL, were split into six (6) preferred participating share classes, seventeen (17) participating share classes and one (1) restricted participating share class. *Id*. ¶ 14.

3

### B. TAFL's Pre-Liquidation Business

11.     TAFL was formed to make investments and short-term opportunities trading. *Id.* ¶ 15.

12.     TAFL is the offshore feeder fund of Three Arrows Capital, Ltd ("**TACL**"). TACL is a Professional Fund within the meaning of the Securities and Investment Business Act, 2010, of the BVI. The investors in TACL are TAFL and Three Arrows Fund, LP (the "**Onshore Fund**," and together with TAFL, the "**Feeder Funds**"). *Id.* ¶ 16.

13.     The Feeder Funds were set up to invest substantially all of their assets in TACL. *Id.* ¶ 17. The master/feeder structure is used to permit the pooling of investor assets with similar investment objectives, in an effort to achieve economies of scale and efficiencies in portfolio management, while preserving the separate identities of the investors and the underlying assets they had sought to invest in. *Id.*

14.     TACL was one of the largest crypto and digital asset venture capital firms in the world. The "Three Arrows" group started off trading traditional currencies in emerging markets. TACL then diversified into option, equities and crypto currency. *Id.* ¶ 18. By 2018, TACL was fully focused on trading cryptocurrency. *Id.*

15.     More recently it is believed TACL's business model was such that it borrowed either cryptocurrency or U.S. dollars to trade on the cryptocurrency market. *Id.* ¶ 19. TACL's lenders were largely institutional lenders and a few high net-worth individuals who fall under the category of accredited investors. *Id.*

### C. Events Leading up to the TAFL's Liquidation

16.     A substantial part of the Three Arrows investment portfolio was in a cryptocurrency known as Luna (Terra/Luna) which was associated with a stablecoin, namely TerraUSD. *Id.* ¶ 20. It was widely accepted that TerraUSD was to be pegged to the U.S. Dollar and thus, considered, a

4

stablecoin (meaning a cryptocurrency pegged to a fiat currency). *Id*. On May 9, 2022, Terra/Luna crashed and its value wiped out completely. *Id*. Put simply, Terra/Luna became worthless. *Id*.

17.     It was widely reported that this crash wiped out US$40 billion in value from the markets. *Id*. ¶ 21. The effect of the Terra/Luna crash caused the general cryptocurrency market and coin prices to fall because Bitcoin was sold to defend the peg of Terra to the US dollar, which drove the price of Bitcoin down. *Id*. The sentiment towards cryptocurrency became poor very rapidly, as the prices of other cryptocurrencies dipped quickly. *Id*. The sell-off was akin to panic selling, as the market ditched risky assets such as cryptocurrency. *Id*. This led to a contagion effect of the contraction of credit i.e. as lenders pulled back their loans. *Id*.

18.     As a result of which, we understand that creditors to TACL made margin calls on loans due and whilst TACL was initially able to meet these margin calls, it was subsequently unable to meet all of them when the lenders reacted *en masse*. *Id*. ¶ 22.

19.     On June 27, 2022, Russell Crumpler and Christopher Farmer were appointed by the Eastern Caribbean Supreme Court (the Court) in the BVI (the "**BVI Court**") as the joint liquidators of the TACL (the "**TACL Liquidators**"). *Id*. ¶ 23.

20.     Following the liquidation of TACL, the Fund had little purpose. *Id*. ¶ 24. A BVI company may be placed into liquidation upon the appointment of a liquidator by (a) the members of a company, by qualifying resolution or (b) order of the BVI Court. Cruickshank Decl. ¶ 16. Noting that the directors continue to have a fiduciary duty to the Fund and its stakeholders, its directors and sole voting shareholder resolved to place the Fund into a formal liquidation process by written resolution on January 27, 2023. *Id*.; Pretlove Decl. ¶ 24.

## IV.     THE BVI PROCEEDING AND BVI INSOLVENCY LAW

21.     The principal BVI legislation and rules that govern the liquidation of BVI companies (including that of the Fund) are:

5

  a. the Act and, with respect to the liquidation of a company, specifically Parts VII thru IX and XII through XIII of the Act; and

  b. the BVI Insolvency Rules, 2005 (as amended) (the "**Rules**").

Cruickshank Decl. ¶ 13.

  22. Liquidation in the BVI is not a "debtor in possession" process. *Id*. ¶ 19. Upon the appointment of liquidators of a BVI company,

  a. the liquidator takes custody and control of the assets of the company;

  b. the directors and other officers of the company remain in office, but they cease to have any powers, functions or duties other than those required or permitted under this Part or authorized by the liquidator;

  c. unless the Court otherwise orders, no person may—

    i. commence or proceed with any action or proceeding against the company or in relation to its assets; or

    ii. exercise or enforce, or continue to exercise or enforce any right or remedy over or against assets of the company;

  d. unless the Court otherwise orders, no share in the company may be transferred;

  e. no alteration may be made in the status of or to the rights or liabilities of a member, whether by an amendment of the memorandum or articles or otherwise;

  f. no member may exercise any power under the memorandum or articles, or otherwise, except for the purposes of this Act; and

  g. no amendment may be made to the memorandum or articles of the company.

*Id.*

  23. This statutory "stay" of legal actions against the debtor or its property is similar to the U.S. automatic stay provided for under the Bankruptcy Code and serves to, *inter alia*, facilitate the JLs' ability to determine all of the rights of stakeholders, including investors and creditors, collectively and comprehensively. *Id*. ¶ 20. The restraint or stay against enforcement does not affect the rights of secured creditors to take possession of or otherwise deal with assets of the company over which it has a security interest. *Id*.

6

24.     Other than by order of the BVI Court, liquidation is a "terminal" process, in the sense that it is designed to finally wind up the company's affairs under the stewardship of the independent liquidators, and then to bring the existence of the company to an end. *Id.* ¶ 21. The Liquidators general duties require them:

a.  to take possession of, protect and realise the assets of the company;

b.  to distribute the assets or the proceeds of the realization of the assets in accordance with the Act;

c.  if there are surplus assets remaining, to distributed them, or the proceeds of realisation of the surplus assets, in accordance with the Act; and

d.  make reports and, as required, send copies of such reports to creditors and the BVI Court.

*Id.*

25.     The BVI Proceeding is judicial in nature, in the sense that even if it is not commenced by an order of the BVI Court, (a) the JLs act as officers of the BVI Court; (b) the BVI Court may impose additional duties on the JLs (other than those in the Act and Rules) with respect to a liquidation; (c) throughout the liquidation process the liquidators report to, are supervised by and may seek sanction or directions of the BVI Court; and (c) the liquidation is brought to a close and the company dissolved by an order of the BVI Court. *Id.* ¶ 22.

26.     In addition to being officers of the BVI Court, Liquidators are agents of the company. *Id.* ¶ 23. The Liquidators' powers are set out in Schedule 2 of the Act, which include, *inter alia*, the power to:

a.  Pay any class of creditors in full;

b.  Make a compromise or arrangement with creditors or persons claiming to be creditors;

c.  Commence, continue, discontinue or defend any action or other legal proceedings in the name of or on behalf of the company;

d.  Carry on the business of the company;

7

      e.   Sell or otherwise dispose of property;

      f.   Borrow money;

      g.   Call meetings of creditors; and

      h.   Appoint a solicitor, accountant or other professionally qualified person.

*Id.*

27.      Since the JLs were appointed by its members, at any time, the BVI Court may provide that certain of the JLs powers may only be exercised with sanction of the BVI Court. *Id.* ¶ 24.

28.      A general principle underlying the BVI insolvency regime is that creditors and shareholders are treated on a *pari passu* basis, subject to certain exceptions, with a priority of distribution scheme that I believe is not too dissimilar for the priority scheme under the U.S. Bankruptcy Code. *Id.* ¶ 25. Appeals from the liquidators' decision to admit or reject a claim are made to the BVI Court. *Id.*

29.      Official liquidators are also required to prepare reports and accounts with respect to their conduct of the liquidation and investigation of the company's financial affairs, and to deliver those to the BVI Court. *Id.* ¶ 26.

30.      The BVI Court must approve the liquidators' remuneration. *Id.* ¶ 27.

31.      BVI liquidation proceedings are fair and equitable, insofar as all creditors and interest holders have the opportunity to be heard by the BVI Court and no creditors will be prejudiced on the sole basis that they are foreign based. *Id.* ¶ 29. All creditors are treated equally, regardless of where they are domiciled. *Id.*

## V.   WINDING UP ACTIVITIES IN THE BVI

32.      Since execution of the Liquidation Resolution, the Liquidators have performed a number of statutory duties including:

8

    a. providing notice to the BVI Financial Services Commission, the Registrar of Corporate Affairs, the office of the registered agent, all known stakeholders (creditors and contributories), professional advisors, the fund administrator and counterparties of the Liquidators appointment;

    b. advertising their appointment in the BVI Beacon, the Virgin Islands Official Gazette, the London Gazette and the Financial Times;

    c. retaining counsel in the BVI and the United States to seek chapter 15 recognition of the BVI Proceeding;

    d. soliciting the filing of proofs of debt and interests to crystallize claims against and interests in the TAFL estate; and

    e. notifying creditors of, and holding, the first meeting of creditors.

See generally Pretlove Decl. ¶ 25-31.

33. The Liquidators have commenced their investigation into the financial affairs of TAFL. *Id*. ¶ 32. To gain a better understanding the TAFL's business, the Liquidators have written to its legal advisors, its auditor, its investment manager and former investment manager, its banks and the TACL liquidators/foreign representatives. *Id*.

34. The Fund's assets were purportedly comprised of investments in TACL. *Id*. ¶ 33. The Fund's investments and accounting for those investments are not as straightforward as reported. *Id*. Upon information and belief, TAFL's investors made certain transfers of cash or cryptocurrencies to "Three Arrows" investment accounts maintained by U.S. parties at a time when TAFL and TACL had already exceeded the number of shares each was legally entitled to issue. *Id*. It is unclear, based on the information currently available to the Liquidators, how those investments were funded and booked, or whether TAFL and/or its investors have legal or equitable claims to those investments. *Id*. It is very important that the Liquidators obtain access to the relevant documents to investigate any claims, legal or equitable, it may have against third parties.

35. The ASCENT NAV Packs note that at the time of the Liquidators' appointment, unsecured claims against TAFL were in excess of $25 million. *Id*. ¶ 34. The Liquidators have

9

received proofs of debt for more than $10 million and additional redemption requests exceeding $5 million. *Id*. The Liquidators have rejected one of the proofs of debt filed by a purported creditor, being received from the Liquidators of TACL which was not substantiated. That rejection has not been formally appealed but the claim was received for voting purposes at the first creditors' meeting and the Liquidators of TACL were permitted to observe that meeting in any event. No formal claim adjudication process has commenced, no distribution has been declared and no asset recoveries have been made to warrant the same. *Id*.

36.     Based on the schedule of Investors provided by ASCENT, TAFL had 703,547 issued and fully paid-up shares across ten (10) different classes of shares. *Id*. ¶ 35.

37.     Since his initial appointment as official liquidator, Mr. Pretlove has overseen and generally directed all activities related to TAFL, including the investigation, from the BVI. *See generally* Pretlove Decl. ¶¶ 32-36. A significant proportion of the work to date relating to the BVI Proceeding has been conducted in the BVI, and all of the work is supervised by Mr. Pretlove and, with the execution of the Liquidation Resolution, ultimately subject to the supervision of the BVI Court. *Id*.

38.     Additionally, stakeholders are actively participating in the BVI Proceeding. Pretlove Decl. ¶¶ 37, 47.

**VI.     RELIEF REQUESTED**

39.     By this Verified Petition, the Petitioners seek:

    a.   recognition of the BVI Proceeding as a foreign main proceeding under section 1517(b)(1) of the Bankruptcy Code or, in the alternative, as a foreign nonmain proceeding under section 1517(b)(2) of the Bankruptcy Code;

    b.   recognition of Petitioners as TAFL's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

    c.   relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

4866-3915-8421

## VII.    BASIS FOR RELIEF

40.    Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a "foreign proceeding" if it appears that recognition will not undermine U.S. public policy and: "(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a); *see also* 11 U.S.C. § 1506.

41.    Each of those requirements is met here, and entry of the Proposed Order attached hereto as Exhibit A will significantly aid the Liquidators' efforts to administer and recover TAFL's assets to satisfy its liabilities as well as ensure a fair and equitable treatment of and greater distributions to TAFL's creditors and interest holders.

### A.    TAFL is an Eligible Debtor Under Chapter 15 of the Bankruptcy Code

42.    Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor." 11 U.S.C. § 109(a). Section 109(a) has been applied to cases commenced under Chapter 15 and is usually satisfied if the foreign debtor has nominal amounts of property in the United States. *See In re Barnet*, 737 F.3d 238, 248 (2d Cir. 2013); *In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 294 (Bankr. S.D.N.Y. 2018) ("retainer account constitutes property of the [d]ebtors that satisfies the [s]ection 109(a)"); *Octaviar*, 511 B.R. at 373 (section 109(a) is satisfied even if the debtor manufactures eligibility by depositing a $10,000 retainer in a client trust account); *In re Cenargo Int'l, PLC*, 294 B.R. 571, 603 (Bankr. S.D.N.Y. 2003) (debtor was eligible under Chapter 15 since it had joint bank accounts and pledged stock in the United States); *In re Aerovias Nacionales de Colombia S.A.*, 303 B.R. 1, 8-9 (Bankr. S.D.N.Y. 2003) (minimal amount of property in the United States is enough to establish section 109(a) eligibility).

11

43.    TAFL is an eligible debtor under section 109(a) because it has property in the United States in the form of an undrawn retainer with Pillsbury Winthrop Shaw Pittman LLP. Pintarelli Decl. ¶ 3; *see* Pretlove Decl. ¶ 40. These funds are held in J.P. Morgan Chase client trust account in New York. *Id*. In addition, TAFL has (a) a claim filed against a debtor that is the subject of a chapter 11 case pending before the U.S. Bankruptcy Court for the District of Delaware and the JLs anticipate filing additional claims in a recently filed case, (b) legal and/or equitable claims to investment assets in U.S. entities acquired with TAFL's funds and (c) potential litigation claims against U.S. parties. *See* Pretlove Decl. ¶ 40.

**B.    The BVI Proceeding is a Foreign Proceeding and the Liquidators are Foreign Representatives**

44.    Section 101(23) of the Bankruptcy Code defines a foreign proceeding as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). This definition incorporates the term foreign representative, which the Bankruptcy Code in turn defines as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The Liquidators and the BVI Proceeding undoubtedly satisfy each of these requirements.

45.    First, the BVI Proceeding is a judicial proceeding in a foreign country. Pursuant to the Liquidation Resolution and the Act, the BVI Proceeding and the Liquidators' management of TAFL's assets and affairs are subject to the supervision and control of the BVI Court. Cruickshank Decl. ¶¶ 21, 22, 24. All creditor claims against TAFL must be submitted in the BVI Proceeding,

12

and all claimants have the right to access the BVI Court and appeal initial decisions of the Liquidators regarding their claims. Pretlove Decl. ¶ 43; Cruickshank Decl. ¶¶ 25, 29.

46.     Second, the BVI Proceeding is being conducted by the Liquidators, who were properly appointed upon a written resolution of the sole voting member, TAC Pte., dated January 27, 2023, appointing the JLs as liquidators. Cruickshank Decl. ¶ 16. Upon the appointment of the liquidators, the BVI Proceeding commenced. *Id*. As such, each of the Liquidators is a "person authorized in a foreign proceeding to administer the reorganization or the liquidation of [TAFL's] assets or affairs," within the meaning of section 101(24).

47.     Third, the Act provides the statutory bases for BVI entities to wind up and liquidate. Cruickshank Decl. ¶ 13. Thus, the Act and the Rules taken together are "a law relating to insolvency or the adjustment of debt." *Id*.; 11 U.S.C. § 101(23); *In re Global Cord Blood Corp.*, No. 22-11347, 2022 WL 17478530, at *7 (Bankr. S.D.N.Y. Dec. 5, 2022).

48.     Finally, the BVI Proceeding is a "collective proceeding" in that the liquidation process is binding on all creditors. A collective proceeding concerns the "treatment of and potential benefit to creditors" and "all interests or the interests of a creditor body as a whole, not just individuals." *Global Cord*, 2022 WL 17478530, at *7 (recognition denied because creditors have not received formal notice of the Cayman proceeding, nor been granted standing to participate in the BVI Proceeding; nor has the BVI Proceeding involved any effort to identify or classify creditors or determine how and whether to satisfy their claims); *see also In re Betcorp. Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009) (noting that a "collective proceeding is one that considers the rights and obligations of all creditors" and holding that a voluntary liquidation abroad qualifies, where the "procedure is compulsory" and "any attempt by a creditor to undermine the collective nature of liquidation is outlawed"). This concept "contemplates both the consideration and

13

eventual treatment of claims of various types of creditors . . . ." *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136, 140 (Bankr. S.D.N.Y. 2012) ("The main test of whether a proceeding is collective is whether *all* creditors' interests were considered in the proceeding.").

49.     In *construing* collective proceeding, "[t]his Court has taken a broad view of what it means to 'consider' the rights of creditors, holding that a foreign proceeding can be 'collective' even if some creditors are not able to participate directly." *In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638-39 (Bankr. S.D.N.Y. 2018) (finding proceeding collective despite possibility creditors were not allowed to participate; reasoning that relevant foreign insolvency statute ensured proceedings were in creditors' interest); *See Ashapura Minechem*, 480 B.R. at 136, 140 ("The main test of whether a proceeding is collective is whether *all* creditors' interests were considered in the proceeding.").

50.     The BVI Proceeding provides for a stay or moratorium so that, among other things, no one creditor can proceed with or commence against the Debtor any suit, action, or other proceeding without the leave of the BVI Court. Cruickshank Decl. ¶ 20. Creditors' appeals from the official liquidators' decision to admit or reject proofs of debt are made to the BVI Court. *Id.* ¶¶ 25, 29. Ultimately, the BVI Proceeding is intended to treat all claims of creditor and interests of shareholders (partners), collectively and comprehensively, rather than any single creditor or stakeholder alone. *Id.* ¶ 20. *See, e.g.*, *In re Ashapura Minechem Ltd.*, No. 11-14668 (JMP) (Bankr. S.D.N.Y. Nov. 22, 2011), ECF No. 34, at 6 (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009)); *In re Gold & Honey, Ltd.*, 410 B.R. 357, 370 (Bankr. E.D.N.Y. 2009) (citations omitted).

51.     Liquidation is a "terminal" process, in the sense that it is designed to finally wind up the company's affairs under the stewardship of the independent official liquidators, deal with

14

the claims of creditors and interests of partners, collectively and comprehensively, and then to bring the existence of the company to an end. Cruickshank Decl. at ¶¶ 21, 22.

52.    As discussed above, numerous courts in this and other districts have found that liquidation proceedings under the Act qualify as a "foreign proceeding," and that joint liquidators appointed pursuant to the Act qualify as a "foreign representative" for purposes of section 101(23) and (24). *See, e.g.*, *In re Three Arrows Capital, Ltd*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y. July 28, 2022) (ECF No. 47) (recognizing BVI liquidation as foreign main proceeding); *In re Kingate Global Fund, Ltd., et al. (in Liquidation)*, Case No. 19-12853 (SMB) (Bankr. S.D.N.Y. Oct. 18, 2019) (ECF No. 28) (order recognizing BVI liquidation as foreign main proceeding); *In re Fairfield Sentry Limited, et al.*, Case No. 10-13164 (JPM) (Bankr. S.D.N.Y. July 22, 2010) (ECF No. 47) (same).

53.    For the foregoing reasons, the BVI Proceeding is a "foreign proceeding" within the meaning of section 1517(a)(1) of the Bankruptcy Code.

### C.    The BVI Proceeding Is a Foreign Main Proceeding

54.    The BVI Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because TAFL's COMI is in the BVI. Pretlove Decl. ¶ 44. The Bankruptcy Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign proceeding "shall be recognized" as a foreign main proceeding if it is pending where the debtor has its COMI. *See* 11 U.S.C. § 1517(b)(1).

55.    Although the Bankruptcy Code does not define "center of main interests," pursuant to section 1516(c) of the Bankruptcy Code, in the absence of evidence to the contrary, the debtor's registered office, which in this case is the BVI, is presumed to be its COMI. 11 U.S.C. §1516(c). *See also In re ABC Learning Centres Ltd*., 445 B.R. 318, 333 (Bankr. D. Del. 2010) (holding that

15

debtor's registered jurisdiction was its COMI where debtor established the section 1516 presumption, and no evidence was presented rebutting that presumption).

56. Here, the registered office of TAFL is in the BVI and has been since the time of TAFL's formation. Pretlove Decl. ¶¶ 12, 45, 49; Cruickshank Decl. ¶ 15. Further, there is no contrary evidence to rebut the resulting presumption that the BVI is TAFL's COMI.

57. Regardless, a foreign debtor's COMI is determined at the time the Chapter 15 petition is filed. *Morning Mist Holdings Ltd. V. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013) ("a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests."); *In re Millennium Global Emerging Credit Master Fund Limited,* 458 B.R. 63 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 88 (S.D.N.Y. 2012) (describing same COMI test). Where, as here, liquidators of a foreign debtor haves engaged in substantial liquidation efforts and related activities prior to the filing of the Chapter 15 petition, courts will consider such activities in the determination of the debtor's COMI. *Fairfield Sentry Ltd.*, 714 F.3d at 137.

58. In addition to the presumption provided under section 1516, courts consider any relevant factors, including: (a) the location of the debtor's assets; (b) the location of the debtor's books and records; (c) the location of the majority of the debtor's creditors; (d) the commercial expectations and knowledge of the debtor's creditors; and (e) the location of those who actually manage the debtor. *See, e.g.*, *Suntech Power*, 520 B.R. at 416; *In re Grand Prix Assocs.,* No. 09-16545 (DHS), 2009 WL 1410519, at *22 (Bankr. D.N.J. May 18, 2009). These factors, however, are not dispositive or exclusive, and none of the factors are required. *See Fairfield Sentry*, 714 F.3d at 137-38. Further, courts have also looked to whether a Chapter 15 debtor's COMI would have

16

been readily ascertainable to parties in interest, such as the debtor's creditors. *See Grand Prix*, 2009 WL 1410519, at *6.

59.     Here, there is no doubt that TAFL's COMI is the BVI. While TAFL has claims to certain investment assets in the United States and other jurisdictions, the significant majority of decisions related to the winding up are made by Liquidators resident in the BVI and under the supervision of the BVI Court. Pretlove Decl. ¶¶ 42, 46, 48; Cruickshank Decl. ¶¶ 22, 28. Its investments were purportedly recorded as investments in a BVI fund, TACL. It is likely the Liquidators will dispute how TACL accounted for their investments, which were arguably direct investments of TAFL in the underlying funds. *See Id*. ¶ 47. Those disputes will likely be resolved by the BVI Court. The collection of any value from TAFL's investments will be overseen from the BVI by the Liquidators through the winding up proceeding of TAFL, including via the Liquidators' negotiation of potential settlements and oversight of contemplated litigation. *Id*. at ¶ 46.

60.     Since the commencement of the BVI Proceeding, substantially all activities associated therewith have been conducted and/or overseen by the Liquidators from the BVI, including overseeing the collection of information related to TAFL's assets. Pretlove Decl. ¶¶ 32-36. Among other things, the Liquidators have overseen and filed all necessary notices and displaced the prior management (the Directors) of TAFL and assumed their duties, are engaged in the process of investigating and assessing the claims of TAFL and its creditors and investors, are gathering information about the operation and management of TAFL's business before the BVI Proceeding and are engaged in discussions with creditors and interest holders. *Id*. ¶¶ 25-37.

61.     The *Suntech* opinion issued by this Court is instructive. In *Suntech,* the Court held that the activities of a Cayman provisional liquidator were sufficient to establish the Cayman

17

Islands as the debtor's COMI, even though the debtor's principal place of business prior to foreign

liquidation was in China. *Suntech Power*, 520 B.R. at 419.

62.     A primary factor in this Court's COMI analysis for *Suntech* was the provisional

liquidator's active involvement in managing the debtor fund's subsidiaries. As stated, the

Liquidators have been continuously working on managing the liquidation of TAFL and gathering

information related to how its investment funds were deployed, the TACL's purported investments,

how they were structured and what led to its downfall, including any claims TAFL may have,

contractual, at law or in equity, related to its investments. In *Suntech,* day-to-day operations of the

debtor fund was left to a board of directors, while the Liquidators in this case have absolute

management control over TAFL subject to the supervision of the BVI Court. *Id*. at 417.

63.     As set forth in detail in paragraphs 32-38 above, as well as in the accompanying

Pretlove Decl., it is respectfully submitted that the level of liquidation and ongoing business

activity in this case substantially exceeds what this Court and other courts have previously found

sufficient to establish COMI.

64.     Under the circumstances, the Liquidators submit that there is ample evidence and

precedent to support recognition of the BVI Proceeding as a foreign main proceeding.

**D.      Alternatively, the BVI Proceedings Should Be Recognized as a Foreign Non-Main Proceeding.**

65.     The BVI Proceeding meets the requirements of a "foreign main proceeding"

pursuant to section 1502 of the Bankruptcy Code. Nevertheless, should the Court determine that

the BVI Proceeding should not be recognized as a foreign main proceeding, the Liquidators submit

that, in the alternative, the BVI Proceeding should be recognized as a foreign nonmain proceeding

under sections 1517(b)(2) and 1502(5) of the Bankruptcy Code.

18

66.     Section 1502(5) of the Bankruptcy Code defines a foreign nonmain proceeding as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). In turn, "establishment" is defined by section 1502(2) as being "any place of operations where the debtor carries out non-transitory economic activity." 11 U.S.C. § 1502(2). The "establishment" requirement is satisfied by the local conduct of business. *See In re Fairfield Sentry Ltd. (GBD)*, No. 10-13164, 2011 WL4357421, at *10 n.8 (S.D.N.Y. Sept. 16, 2011) ("This Court agrees with the Bankruptcy Court that if main recognition were not granted, non-main recognition of Sentry's BVI Proceeding would be appropriate because Sentry has an establishment in the BVI for the conduct of non-transitory economic activity, *i.e.* a local place of business.").

67.     The Petitioners respectfully submit that, at a minimum, their activities in the BVI constitute non-transitory economic activity. Pretlove Decl. ¶¶ 32-37, 45. There is no foreign or domestic insolvency proceeding other than the BVI Proceeding. *Id*. at ¶ 40.

68.     As such, there can be no dispute that the BVI Proceeding is a legitimate insolvency proceeding. Under the circumstances and given that TAFL's ongoing winding up activities are being conducted from the BVI, at a minimum, this Court should recognize the BVI Proceeding as a foreign nonmain proceedings pursuant to Chapter 15 and further, to grant the Liquidators the discretionary relief requested.

### E.     The BVI Proceeding Meets All Other Requirements for Recognition

69.     In addition to being a foreign main (or nonmain) proceeding brought by duly appointed foreign representatives, the BVI Proceeding meets all other requirements for recognition under section 1515 of the Bankruptcy Code. The Petition is accompanied by certified copies of the Liquidation Resolution, which evidences the commencement of the BVI Proceeding and the appointment of the Liquidators as joint official liquidators of TAFL. The Petition also is

19

accompanied by a declaration that contains a statement identifying all foreign proceedings with respect to TAFL that are known to the Liquidators. *See* 11 U.S.C. §§ 1515(b), (c); *see also* Pretlove Decl. ¶ 40.

70.     The Petition likewise is accompanied by a declaration containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a statement indicating that there are no other persons or entities known to the Liquidators that are authorized to administer foreign proceeding with respect to TAFL, and a list of all parties to litigation with TAFL in the United States. *See* Pretlove Decl. ¶ 40, <u>Exhibit B</u>. All documents supporting the Petition are in English. *See* 11 U.S.C. § 1515(d). For all of these reasons, this Court can and should find that all of the requirements for recognition of the BVI Proceeding as a foreign main proceeding under Chapter 15 have been satisfied.

### F.     Relief Pursuant to Section 1521 of the Bankruptcy Code is Appropriate

71.     In addition to the relief that is automatically provided by section 1520 of the Bankruptcy Code upon recognition of a foreign main proceeding,[2] Petitioners request additional relief pursuant to section 1521 of the Bankruptcy Code to protect TAFL's assets and its creditors' interests. Section 1521 of the Bankruptcy Code provides, in part, that the court may grant a foreign representative "any appropriate relief," including "any additional relief that may be available to a trustee," subject to certain limitations (which do not apply here) where necessary to effectuate the purpose of Chapter 15 and to protect the debtor's assets and creditors' interests. 11 U.S.C. § 1521(a) .

72.     Petitioners request that the Court grant additional relief pursuant to section 1521(a)(4) of the Bankruptcy Code and authorize the Liquidators to issue subpoenas and obtain

---

[2] Upon recognition of the BVI Proceeding as a foreign main proceeding, certain relief is automatically granted as a matter of right. *See* 11 U.S.C. § 1520.

20

discovery from parties with whom TAFL either conducted business directly or indirectly through

TACL with third parties or its directors and/or advisors to aid in its investigation of TAFL's

business affairs and to locate additional information about assets of TAFL, which include potential

equitable claims to assets here in the United States.

## VIII.  NO PRIOR REQUEST

73.     No prior request for the relief sought in this Petition has been made to this or any

other court.

WHEREFORE, for the foregoing reasons, Petitioners respectfully request entry of the

Proposed Order attached hereto as Exhibit A, (i) recognizing the BVI Proceeding as a "foreign

main proceeding," (ii) recognizing Petitioners as TAFL's foreign representatives, (iii) granting

additional relief under section 1521, and (iii) granting such other and further relief as the Court

deems just and proper.

New York, New York
Dated: February 8, 2024                    Respectfully submitted,

                                           PILLSBURY WINTHROP SHAW PITTMAN LLP

                                           /s/ John A. Pintarelli
                                           John A. Pintarelli
                                           Patrick E. Fitzmaurice
                                           Hugh M. McDonald
                                           31 West 52nd Street
                                           New York, NY 10019-6131
                                           Telephone: 212-858-1000
                                           Facsimile: 212-858-1500

                                           *Attorneys for Petitioners Paul Pretlove, David
                                           Standish, James Drury, in their capacities as Joint
                                           Liquidators of Three Arrows Fund, Ltd (In
                                           Liquidation)*

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, Paul Pretlove declares as follows:

My colleagues David Standish, James Drury and I are the duly appointed joint liquidators (the "**Petitioners**") of Three Arrows Fund, Ltd (In Liquidation), an exempted company in liquidation in the British Virgin Islands by way of a resolution of its sole voting shareholder dated January 27, 2023 to liquidate the company and appoint the Petitioners as joint liquidators under the Companies Act of the BVI (2023 Revision). I have full authority to verify the foregoing *Verified Petition for Order Recognizing Foreign Main Proceeding and Granting Additional Relief Under Chapter 15 of the Bankruptcy Code and Memorandum of Law in Support Thereof* (the "**Verified Petition**"). I have read the Verified Petition, am informed, and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of February 2024 in Tortola, British Virgin Islands.

Paul Pretlove
Solely in his capacity as Joint Liquidator for Three
Arrows Fund, Ltd (In Liquidation)

**EXHIBIT A**

(Proposed Recognition Order)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

Three Arrows Fund, Ltd (In Liquidation),

    Debtor in a Foreign Proceeding.[1]

Case No. 24-10210 (MG)

Chapter 15

## (PROPOSED) ORDER GRANTING RECOGNITION AND RELIEF IN AID OF A FOREIGN MAIN PROCEEDING PURSUANT TO SECTIONS 1504, 1509, 1515, 1517, 1520, AND 1521 OF THE BANKRUPTCY CODE

Paul Pretlove, David Standish and James Drury, duly appointed joint official liquidators ("**Petitioners**" or "**Liquidators**") of Three Arrows Fund, Ltd (In Liquidation) ("**TAFL**" or "**Debtor**"), an exempted company with limited liability in liquidation the British Virgin Islands (the "**BVI Proceeding**") under the British Virgin Islands Insolvency Act, 2003 (the "**Act**"), by its United States counsel, Pillsbury Winthrop Shaw Pittman LLP having filed the Official Form Petition and the *Verified Petition for Recognition of Foreign Insolvency Proceeding and Application for Additional Relief under Chapter 15 of the Bankruptcy Code, and Memorandum of Law In Support Thereof* (the "**Verified Petition**" and, together with the Official Form Petition, the "**Petition**") and the accompanying Pretlove Declaration, Cruickshank Declaration and Pintarelli Declaration, seeking relief pursuant to chapter 15 of the Bankruptcy Code; and upon due consideration of the Petition, Pretlove Declaration, Cruickshank Declaration and Pintarelli Declaration, together with all exhibits thereto, in support of the Petition; and a hearing having been held on March __, 2024 to consider the Petition, at which the Pretlove Declaration, Cruickshank Declaration and Pintarelli Declaration were received into evidence; and appropriate

---

[1] The Debtor's company registration number is 1710548. The Debtor's registered office is P.O. Box 2283, 1st Floor, Columbus Centre, Road Town, Tortola, British Virgin Islands.

and timely notice of the filing of the Petition and the Hearing thereon having been given by the Liquidators pursuant to section 1514 of the Bankruptcy Code; and such notice having been adequate and sufficient for all purposes; and no other or further notice being necessary or required; and no objections or other responses having been filed; and all interested parties having had an opportunity to be heard at the Hearing; and after due deliberation and sufficient cause appearing therefore, the Court makes the following facts and conclusions of law:

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501 and the *Amending Standing Order of Reference* from the United States District Court for the Southern District of New York dated February 1, 2012.

B.      Venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1410 (2) because TAFL possesses assets within this district, and the Court may enter a final order consistent with Article III of the United States Constitution.

C.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

D.      The Liquidators are the "foreign representatives" of TAFL within the meaning of 11 U.S.C. § 101(24).

E.      The chapter 15 cases of TAFL was properly commenced pursuant to 11 U.S.C. §§ 1504, 1509 and 1515.

F.      The Liquidators have satisfied the requirements of 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

G.      The BVI Proceeding is a foreign proceeding within the meaning of 11 U.S.C. § 101(23).

H.      The BVI Proceeding is entitled to recognition by this Court pursuant to 11 U.S.C. § 1517.

I.      The BVI Proceeding is pending in the British Virgin Islands, the country where TAFL's center of main interests is located and, accordingly, the BVI Proceeding is a foreign main proceeding pursuant to 11 U.S.C. § 1502(4) and is entitled to recognition as a foreign main proceeding pursuant to 11 U.S.C. § 1517(b)(1).

J.      The Liquidators are entitled to all of the relief afforded under 11 U.S.C. § 1520 and the additional relief provided for herein pursuant to 11 U.S.C. § 1521.

K.      The relief granted hereby is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to 11 U.S.C. §§ 1507, 1517, 1520 and 1521.

**NOW, THEREFORE, IT IS HEREBY ORDERED**:

1.      The Petition is granted as set forth herein.

2.      The BVI Proceeding is hereby recognized as a foreign main proceeding pursuant to 11 U.S.C. § 1517(a) and (b)(1).

3.      The relief and protection afforded under 11 U.S.C. § 1520 is hereby granted, including the application of the automatic stay under section 362 of the Bankruptcy Code to TAFL and its property in the territorial jurisdiction of the United States; ***provided***, that nothing herein modifies or limits the exceptions to the automatic stay that are set forth in section 362 or elsewhere in the Bankruptcy Code. Accordingly, extent to the extent permitted by section 362 or elsewhere in the Bankruptcy Code, all persons and entities are stayed from:

(a)      executing against TAFL's property or assets;

(b)      taking or continuing any act to obtain possession of, or exercise control over, the Liquidators (with respect to TAFL), TAFL, or any of TAFL's property or assets;

(c)      taking or continuing any act to create, perfect or enforce a lien or other security interest, set-off or other claim against the Liquidators (with respect to TAFL), TAFL, or any of TAFL's property or assets as of the date of the

filing of the Petition, or otherwise seeking the issuance of or issuing any restraining notice or other process or encumbrance with respect to TAFL or any of TAFL's property or assets; and

(d)    transferring, relinquishing or disposing of any property of the Funds to any person or entity other than the Liquidators.

4.    The Liquidators or any third person acting pursuant to the Liquidators' instructions or agreement may transfer funds or property belonging to TAFL into or out of the United States of America in accordance with their respective obligations to TAFL or under the BVI Proceeding; *provided, however*, that the Liquidators shall file and serve notice at least 14 calendar days prior to a transfer of funds or property out of the United States (which notice shall describe the property being transferred) to provide an opportunity for parties in interest to object to such a transfer or to seek a stay of such a transfer if such parties in interest believe there are grounds for such relief. Such notice shall be served on all parties who are generally entitled to receive notices in these proceedings pursuant to Bankruptcy Rule 2002 and, in addition, on any person who has or has asserted an interest in such property.

5.    The Liquidators are hereby authorized to issue subpoenas in accordance with applicable procedural rules for the examination of witnesses and/or the production of documents within the territorial jurisdiction of the United States concerning the assets, affairs, rights, obligations or liabilities of TAFL and (to the extent relevant) TAFL's affiliates, including subpoenas to intermediary banks that process U.S. dollar denominated wire transfers and maintain records of such transfers; *provided*, that any subpoenas served pursuant to the authority set forth in this paragraph shall be without prejudice to the recipients' rights to object in accordance with the applicable procedural rules.

6.    The Liquidators are hereby authorized to take possession and to seek turnover of any and all documents, records, filings, or other information, however stored, that belongs to TAFL

and that is found in the territorial jurisdiction of the United States.

7.      The Liquidators are authorized to operate the business of TAFL that is the subject of the BVI Proceeding and may exercise the powers of a trustee under and to the extent provided by 11 U.S.C. §§ 1520 and 1521.

8.      The administration or realization of all or part of the assets of TAFL within the territorial jurisdiction of the United States of America is hereby entrusted to the Liquidators and the Liquidators are hereby established as the exclusive representatives of TAFL in the United States of America.

9.      This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any request for additional relief or any adversary proceeding brought in and through this chapter 15 case, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

10.     Notwithstanding Bankruptcy Rule 7062, made applicable to this chapter 15 case by Bankruptcy Rule 1018, the terms and conditions of this Order shall be effective and enforceable immediately upon its entry, and this Order shall become final and appealable.


New York, New York
Dated: March __, 2024


_____
Honorable Martin Glenn
United States Bankruptcy Judge

## **Exhibit B-2**

**Three Arrows Organizational Chart**



# Organizational Structure Chart
*As of 7/19/22*



**Exhibit B-3**

**June 13, 2022 3AC-Genesis Telegram Chat**

**Short Message Report**

| Conversations: 1 | Participants: 10 |
|---|---|
| Total Messages: 169 | Date Range: 6/13/2022 |

**Outline of Conversations**

 **Kyle - Su - Matt Private Group , chat between [s,Matt B,Kyle,Arianna Pretto-Sakmann,Derar,Leon Marshall,Andrew,Michael Moro,Michael Kraines,Mark Murphy]** · 169 messages on 6/13/2022 ·
Andrew · Arianna Pretto-Sakmann · Derar · Kyle · Leon Marshall · Mark Murphy · Matt B · Michael Kraines · Michael Moro · s

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **Kyle - Su - Matt Private Group , chat between [s,Matt B,Kyle,Arianna Pretto-Sakmann,Derar,Leon Marshall,Andrew,Michael Moro,Michael Kraines,Mark Murphy]**

**S**    **s**   EDITED                6/13/2022, 12:24 AM

Hi Matt, think i have a proposal which helps solve matters:

1) you send usdc to blockfi, blockfi sends you 24894776 gbtc + 6200854 ethe

**> S**    **s**                6/13/2022, 12:31 AM

The ltv on this at blockfi is around 130% vs last price

**> MB**    **Matt B**                6/13/2022, 12:51 AM

how much USDC is this rouhgly?

**S**    **s**                6/13/2022, 12:24 AM

2) we pledge you Deribit (we own 20k/120k shares outstanding, last rd $3b)

**D**    **Derar**                6/13/2022, 12:25 AM

*Joined the conversation*

**LM**    **Leon Marshall**             6/13/2022, 12:25 AM

*Joined the conversation*

**S**    **s**                6/13/2022, 12:25 AM

3) we pledge you starkware, 7,403,860 shares marked at $35.22 last rd

**S**    **s**                6/13/2022, 12:30 AM

4) you send us 2482 BTC, 212 BTC, 257 BTC. This wipes all urgent MCs

Later on you can send us

538 BTC, 1164 BTC. This wipes nonurgent margin calls

**S**    **s**                6/13/2022, 12:30 AM

Would this work?

**S**    **s**                6/13/2022, 12:30 AM

Id like to get this btc sent out to counterparties asap

**MB**    **Matt B**                6/13/2022, 12:31 AM

hey there - digesting this

**S**    **s**                6/13/2022, 12:31 AM

So this is superovercollat if you use coinnav

**S**    **s**                6/13/2022, 12:32 AM

I would like the 2482, 257 asap if possible as those are most time sensitive

**MB**    **Matt B**                6/13/2022, 12:32 AM

can you give me a sense of if all if the above happened, what the total assets pledged to Genesis would be (at NAV) relative to the total debt wed have to you

**S** | **s** | 6/13/2022, 12:34 AM

You guys would be in solid surplus as thatd be +$770m from deribit+starkware

**S** | **s** EDITED | 6/13/2022, 12:34 AM

Gbtc worth 600m coinnav

**S** | **s** EDITED | 6/13/2022, 12:35 AM

Ethe 80m coinnav

**S** | **s** | 6/13/2022, 12:35 AM

Debt against that at blockfi around 350-400m

**S** | **s** | 6/13/2022, 12:36 AM

So youd be getting +300m from gbtc+ethe

**S** | **s** | 6/13/2022, 12:36 AM

And wed be pledging you our largest privates also

**S** | **s** | 6/13/2022, 12:36 AM

Otherwise we will be forced to pledge these away which would just slow the process

**MB** | **Matt B** | 6/13/2022, 12:41 AM

thank you - this is helpful, can you give us a min to digest, dig through a bit

**MB** | **Matt B** | 6/13/2022, 12:41 AM

were also wrangling senior folks on our side to assess

**S** | **s** | 6/13/2022, 12:42 AM

Thank you

**S** | **s** | 6/13/2022, 12:48 AM

We are also fine to share the conversation w the counterparties and you can send them directly for the 2482 and 257 (those are matrixport + galaxy)

**S** | **s** | 6/13/2022, 12:48 AM

perhaps that would be helpful as well from your perspective

**MB** | **Matt B** | 6/13/2022, 1:03 AM

what is the time table you guys have to post this margin?

**S** | **s** | 6/13/2022, 1:04 AM

Wed like it in the next couple hrs if possible

**MB** | **Matt B** | 6/13/2022, 1:05 AM

if you guys fulfill those calls, do you think those lenders will declare you in default?

**S** | **s** EDITED | 6/13/2022, 1:05 AM

Yes -- sry typo

**S** | **s** | 6/13/2022, 1:05 AM

We just had calls w them

**S** | **s** | 6/13/2022, 1:05 AM

To explain what we are working on with you guys

**MB** | **Matt B** | 6/13/2022, 1:06 AM

so regardless of if you make those calls or not, they will declare you in default?

S | s | 6/13/2022, 1:06 AM

No

S | s | 6/13/2022, 1:06 AM

If we make the calls, we are then not in default

MB | Matt B | 6/13/2022, 1:06 AM

right ok thats what I was asking ^

S | s | 6/13/2022, 1:06 AM

Sry misread

MB | Matt B | 6/13/2022, 1:21 AM

in the case we do the above the way I'm thinking about this is the following:
- Genesis deploys 300-400mm of USDC and 100mm of BTC to cover existing margin calls
- Genesis gets roughly the same amount of collateral at discounted value
- What happens if prices continue to run down - do the other lenders call for more margin? How much more?
- What is TAC thinking on how to genereate return post this event?

S | s | 6/13/2022, 1:24 AM

1) the positions are mostly closed, these are the residual calls

S | s | 6/13/2022, 1:27 AM

2) our balance sheet while illiquid is still fine. We are open to doing a funding round at some pt though to get capital injection / institutionalize business

> MB | Matt B | 6/13/2022, 1:30 AM

can you guys put something together that shows this relatively granularly - doesnt need to be ultra precise but like something that we can show to others internally to get buy in. And also, the total residual debt left with other lenders if we paid off the above?

S | s | 6/13/2022, 1:31 AM

For the balance sheet

MB | Matt B | 6/13/2022, 1:33 AM

there is also a third party requirement for Deribit to sign off on the transfer of equity that we'd have to put together, so its hard to extend more capital here without knowing what we can ultimately try and structure / get upside in

> S | s | 6/13/2022, 1:34 AM

There isnt, as these shares are held in spv and can be transferred without deribit approval

MB | Matt B | 6/13/2022, 1:43 AM

another question for you - if we were to unwind all the above and move forward with proposal - you guys are basically even with us in terms of collat at market value and loans outstanding, but then you still have long delta of BTC and other crypto of ~$2.5B, and so if there is further deterioation, we're just going to increase our m2m loss

MB | Matt B | 6/13/2022, 1:43 AM

right?

MB | Matt B | 6/13/2022, 1:43 AM

like how do you think about the continued move down?

S | s | 6/13/2022, 1:45 AM

We would reduce on way down as well as raise permanent external capital in tacl itself instead of second vehicle

**S**                                                                        6/13/2022, 1:46 AM

We had been in discussions to raise a 2nd fund w numerous potential LPs, we would end up just doing this in tacl itself

**MB**    **Matt B**                                                          6/13/2022, 1:48 AM

what are the other assets left to TAC ex starkware, and deribit

**S**                                                                        6/13/2022, 1:49 AM

Blockfi has agreed to do gbtc + ethe vs usd novation also

**MB**    **Matt B**                                                          6/13/2022, 1:49 AM

are there venture investments etc?

**S**                                                                        6/13/2022, 1:50 AM

Yes we have many venture investments but theyre all smaller

**MB**    **Matt B**                                                          6/13/2022, 1:50 AM

what do we think the aggregate m2m value is roughly?

**S**                                                                        6/13/2022, 1:53 AM

The next 3 biggest would be worldcoin 25m, aptos (novi) 15m and fuel labs 20m

**S**                                                                        6/13/2022, 2:15 AM

Theres 100m of illiquid defi, 100m total of other smaller venture

**MB**    **Matt B**                                                          6/13/2022, 2:18 AM

thank you - working through everything

**MB**    **Matt B**                                                          6/13/2022, 2:20 AM

are you guys borrowing against GBTC/ETHE held at other brokers in tradfi as well that's not included here?

> **S**                                                                      6/13/2022, 2:20 AM

Yes

**S**                                                                        6/13/2022, 2:20 AM

Equities First

**MB**    **Matt B**                                                          6/13/2022, 2:21 AM

~ how much?

**S**                                                                        6/13/2022, 2:25 AM

14m gbtc, 2m ethe

**S**                                                                        6/13/2022, 2:26 AM

2m gbtc anchorage

**MB**    **Matt B**                                                          6/13/2022, 2:26 AM

any of the tradfi dealers like cannacord etc?

**S**                                                                        6/13/2022, 2:27 AM

We trade via canaccord but dont borrow from them

**MB**    **Matt B**                                                          6/13/2022, 2:30 AM

okay - and just to confirm, can you list all current margin calls needed to fulfill right now?

**MB**    **Matt B**                                                          6/13/2022, 2:31 AM

what would be helpful is the total debt (amount and denomination) and total collateral held (amount and denomination) with the other lenders along with above^

**MB**  **Matt B**                                                                6/13/2022, 2:32 AM

going to loop you guys in with Barry cool?

> **S**  **s**                                                                    6/13/2022, 2:34 AM

Yes

**S**  **s**                                                                      6/13/2022, 2:34 AM

BTC
Matrixport 2482, there was 9.6k btc and 50k eth there. We have been selling that as well last 12hrs
Galaxy 257, 3782 btc vs 100m usd
BitDAO 212, 1.7k btc vs 50m usd

**MB**  **Matt B**                                                                6/13/2022, 2:48 AM

trying to just get full picture to Barry etc, who are your largest LPs

> **S**  **s**                                                                    6/13/2022, 2:51 AM

See the email, will follow up

**MB**  **Matt B**                                                                6/13/2022, 2:53 AM

thank you and LP info would be helpful

**MB**  **Matt B**                                                                6/13/2022, 2:54 AM

can you send an up to date org strucutre / how LP/GP works etc

> **K**  **Kyle**                                                                 6/13/2022, 2:58 AM

Three Arrows Capital Ltd is the master fund where we have all trading/assets.  Three Arrows Fund LP and Three Arrows
Fund Ltd are the feeder funds.  We have several management companies - Three Arrows Capital Pte Ltd in SG, ThreeAC
Ltd in the BVI, and setting up a new on soon in Dubai.  We're in the process of moving over to Dubai (allows us to raise an
external investor fund).  ~95% of LP's are me/Su and 100% of the GP ownerships.

**AP**  **Arianna Pretto-Sakmann**                                               6/13/2022, 2:56 AM
*Joined the conversation*

**A**  **Andrew**                                                                 6/13/2022, 2:56 AM
*Joined the conversation*

**MB**  **Matt B**                                                                6/13/2022, 2:56 AM

adding Arianna as well to help consolidate asks

**MB**  **Matt B**                                                                6/13/2022, 3:04 AM

Thanks

**MB**  **Matt B**                                                                6/13/2022, 3:04 AM

most important thing we need right now is the full list of assets, liabilities and who you have outstanding margin calls with
and for how much — can we get this, this is most helpful to determine course of action and just need to see in digestible
format

> **MB**  **Matt B**                                                              6/13/2022, 3:12 AM

can you guys work on this?

> **MB**  **Matt B**                                                              6/13/2022, 3:33 AM

This one

**K**  **Kyle**  6/13/2022, 3:11 AM

Starkware and Deribit docs coming (big file will upload with a link).

**> MB**  **Matt B**  6/13/2022, 3:12 AM

ty

**MB**  **Matt B**  6/13/2022, 3:19 AM

over email most helpful and just outlined well. we are keen to work something out and have whole time involved, so just trying to be organized and dilligent

**MB**  **Matt B**  6/13/2022, 3:28 AM

Also how is the general tone with other lenders right now?

**> K**  **Kyle**  6/13/2022, 3:31 AM

Mixed

**MB**  **Matt B**  6/13/2022, 3:31 AM

Who is putting most pressure?

**K**  **Kyle**  6/13/2022, 3:32 AM

Galaxy and they are the smallest

**MB**  **Matt B**  6/13/2022, 3:33 AM

Okay mind just working on this specific list for us?

**MB**  **Matt B**  6/13/2022, 3:33 AM

Barry asking for this over email to have - gives us most info we need to determine next steps

**K**  **Kyle**  6/13/2022, 3:34 AM

I'll ask our team.  But in this environment we have no idea how to mark stuff and the legal liability of sending something that's not audited is too much of a risk for us.

**MB**  **Matt B**  6/13/2022, 3:36 AM

This is to have on hand to make reasonable decisions, it doesn't need to be audited. You guys know the assets you hold and we just want to get a clear breakout of those and the current liabilities.

**MB**  **Matt B**  6/13/2022, 3:37 AM

Help us get clear info and it's a lot easier for us to move/ think about how we can get other lenders off your back, push for forbearance etc.

**MB**  **Matt B**  6/13/2022, 3:37 AM

Thinking about structure at same time but just trying to get reasonable sense of entity assets/debt and to whom

**K**  **Kyle**  6/13/2022, 3:38 AM

Understood and thank you

**MM**  **Michael Moro**  6/13/2022, 4:02 AM

*Joined the conversation*

**MB**  **Matt B**  6/13/2022, 4:11 AM

while you guys are working on the broken out assets and liabilities we're thinking something like this to at least get us and you through the next 48 hours:

- We're trying to avoid you being in default based on a missed margin call which will occur around 9AM
- We can do this via a short 2-day forbearance of the margin call in exchange for a pledge of you and Su's personal interests in TAC
- Contingent on you guys getting forbearance agreements from the other lenders as well
- You can tell the other lenders if they need liquidity, we can help them and we're working on a structure to get you guys

more liquidity imminently and to contact us directly if they want
- Once we have mutual forbearance, and a detailed list of all the assets/liabilities from you guys, we will continue working in the morning on a more comprehensive plan
- If you guys are contemplating cutting a deal/transaction with another 3rd party, you also have to tell us and be transparent

If you guys agree to the above lets have you start communicating that to other lenders and we will draw up the forbearance and pledge of your interest in TAC as collateral.

K    **Kyle**                                                                                      6/13/2022, 4:23 AM

We can pledge our LP and GP shares.  It is going for us to coordinate forbearance agreements with all lenders (especially at this hour).

MB    **Matt B**                                                                                  6/13/2022, 4:24 AM

Are you amenable to pursuing them though (despite them potentially not being responsive right now?)

MB    **Matt B**                                                                                  6/13/2022, 4:25 AM

have any lenders officially declared you in default yet?

> K    **Kyle**                                                                                    6/13/2022, 4:26 AM

Galaxy..

K    **Kyle**                                                                                      6/13/2022, 4:26 AM

I have no idea what a forbearance agreement is actually

MB    **Matt B**                                                                                  6/13/2022, 4:27 AM

its an agreement whereby the lenders agree not to enforce their rights under a default - we are conceding a right that we have for assurances and protections and wed want the same from other lenders

MB    **Matt B**                                                                                  6/13/2022, 4:28 AM

we can still probably push them to concede their rights and forbear the default if they agree to, who from Galaxy are you talking to

K    **Kyle**                                                                                      6/13/2022, 4:28 AM

@lukagalaxy

K    **Kyle**                                                                                      6/13/2022, 4:28 AM

Pls feel free to ask him

MB    **Matt B**                                                                                  6/13/2022, 4:28 AM

did they provide written notice of default?

K    **Kyle**                                                                                      6/13/2022, 4:28 AM

Yes..

MB    **Matt B**                                                                                  6/13/2022, 4:28 AM

okay let me talk with him

K    **Kyle**                                                                                      6/13/2022, 4:29 AM

thank you

MB    **Matt B**                                                                                  6/13/2022, 4:30 AM

whats the margin call total to galaxy and what denomination?

K    **Kyle**                                                                                      6/13/2022, 4:30 AM

278 BTC

MB    **Matt B**                                                                                  6/13/2022, 4:31 AM

can we get the assets/liabilities breakout? this is really important for us

> MB **Matt B**                                                                 6/13/2022, 4:37 AM

where does this stand?

K **Kyle**                                                                      6/13/2022, 4:36 AM



*Image: photo_1@13-06-2022_04-36-44.jpg (12 KB)*

S **s**                                                                         6/13/2022, 4:39 AM

3782.6045 btc vs 100m usdc

MB **Matt B**                                                                   6/13/2022, 4:40 AM

that's for Galaxy, we've asked for a comprehensive list of assets on your balance sheet (tokens, investments, liquids etc) and then liabilities in debt and to whom. This is key to us working out our longer term proposal to you guys.

MB **Matt B**                                                                   6/13/2022, 4:40 AM

Im trying to buy you time right now with margin call forbearance etc across lenders to give us a day or two to structure something

MB **Matt B**                                                                   6/13/2022, 4:44 AM

this is going to be part of the agreement - so trying to get ahead of this:

-they have disclosed all assets and liabilities involving any affiliate or related party of TACs without exception, &

-all such figures are clearly labeled in terms of the basis of measurement and are accurate to the best knowledge of the mgmt team

MB **Matt B**                                                                   6/13/2022, 4:45 AM

also need this breakout for our own analysis/proposal

MB **Matt B**                                                                   6/13/2022, 4:45 AM

I'm talking to Luka now

MB **Matt B**                                                                   6/13/2022, 5:02 AM

^update on this?

K **Kyle**                                                                      6/13/2022, 5:23 AM

Separate from the pledge, we could also sell Deribit and Starkware equity positions to free up balance sheet.

> MB **Matt B**                                                                 6/13/2022, 5:26 AM

will come back on this thought as well in a couple hrs, but really need to see comprehensive picture

MB **Matt B**                                                                   6/13/2022, 5:25 AM

thanks, do you have an update on the assets/liabilities - again Barry is going to ask to see this first thing in AM to get a sense, w/o it there isnt much we can do

MB **Matt B**                                                                   6/13/2022, 5:25 AM

not sure why we cant get this report

MB **Matt B**                                                                   6/13/2022, 7:37 AM

Hey all- checking in here?

| | | |
|---|---|---|
| MB | **Matt B**  EDITED | 6/13/2022, 7:57 AM |

do you guys have intention on working through this with us? Not sure why communication has been this tough. Feel like it is everyones best interest to work together.

| | | |
|---|---|---|
| MB | **Matt B** | 6/13/2022, 7:58 AM |

@kyled1 @btcmaximalist

| | | |
|---|---|---|
| K | **Kyle** | 6/13/2022, 7:58 AM |

Hey Matt, we're here.

| | | |
|---|---|---|
| MB | **Matt B** | 6/13/2022, 7:59 AM |

cool, the main thing that we need once again is the remainder of the diligence items we asked, specifically a brakout of remaninig assets and liabilities and to whom on the balance sheet - this will allow us to come back with some osrt of firm proposal

| | | |
|---|---|---|
| MB | **Matt B** | 6/13/2022, 7:59 AM |

can we get this together this morning?

| | | |
|---|---|---|
| MB | **Matt B** | 6/13/2022, 7:59 AM |

what are your competing priorities at moment?

| | | |
|---|---|---|
| K | **Kyle** | 6/13/2022, 8:02 AM |

I need to hear back from legal, we can have our fund admin prepare a statement but I don't think I can just send an internal breakdown without a 3rd party.

| | | |
|---|---|---|
| MB | **Matt B** | 6/13/2022, 8:10 AM |

where are you guys at with the other lenders?

| | | |
|---|---|---|
| MB | **Matt B** | 6/13/2022, 8:19 AM |

and if you cant get us assets and liabilities - how do you think we can proceed forward before declaring you guys in default and going intro bankruptcy? Feels like the only path forward here is to be transparent here with us and let us put something your way thats reasonable - what are the other alternatives?

| | | |
|---|---|---|
| K | **Kyle** | 6/13/2022, 8:27 AM |

Agree

| | | |
|---|---|---|
| K | **Kyle** | 6/13/2022, 8:31 AM |

What would help would be to sell you out Deribit or Starkware

| | | |
|---|---|---|
| MB | **Matt B** | 6/13/2022, 8:35 AM |

our decision to take down specific assets is also contingent on what we know the value of TAC is to see how reasonable a bailout is - its tough when you guys are not willing to share this information

| | | |
|---|---|---|
| MB | **Matt B** | 6/13/2022, 8:36 AM |

the legal liability of sending us unaudited breakdown of financials should be the least concerning thing to you right now

| | | |
|---|---|---|
| MB | **Matt B** | 6/13/2022, 8:43 AM |

you and @btcmaximalist  mind hopping  on a call?

| | | |
|---|---|---|
| MB | **Matt B** | 6/13/2022, 8:47 AM |

@kyled1

| | | |
|---|---|---|
| K | **Kyle** | 6/13/2022, 8:58 AM |

Can we do on chat pls?

| | | |
|---|---|---|
| MB | **Matt B** | 6/13/2022, 8:59 AM |

we'd really prefer to just cut through this and hop on a call

**Matt B**                                                                                    6/13/2022, 9:03 AM

?

**Matt B**                                                                                    6/13/2022, 9:07 AM

I keep going back to this, but working with us on something seems to be the only way you guys will come away with value - I dont understand why we cant have better dialogue?

**Kyle**                                                                                      6/13/2022, 9:11 AM

We're working with another lender as well to fix.  Basically looking for BTC or USD against a pledge of Deribit/Starkware. Or alternatively we can even sell Deribit/Starkware.

**Kyle**                                                                                      6/13/2022, 9:12 AM

Let's try to get done here, but on chat pls

**Matt B**                                                                                    6/13/2022, 9:13 AM

which lender are you guys trying to deal with?

**Matt B**                                                                                    6/13/2022, 9:13 AM

if you work out a deal with that lender and then default to Genesis how does that help you?

**Kyle**                                                                                      6/13/2022, 9:17 AM

Not looking to default.  Would you be open to buying Deribit and Starkware, or do as a pledge for a loan.  Either suits.

**Matt B**                                                                                    6/13/2022, 9:18 AM

what would the use of proceeds for if we were to take as pledge?

**Matt B**                                                                                    6/13/2022, 9:20 AM

if we buy deribit/stark what do you do with cash? if we lend against them, what do you do with cash?

**Kyle**                                                                                      6/13/2022, 9:23 AM

To meet calls and for margin, starting with yours and Galaxy's

**Matt B**                                                                                    6/13/2022, 9:25 AM

where are the other lenders at?

**Matt B**                                                                                    6/13/2022, 9:27 AM

why would we lend money to then just have it be pledged back as collateral to meet our margin call - thats the same as just taking deribit/stark as collateral to meet the call?

**Matt B**                                                                                    6/13/2022, 9:28 AM

we're happy to entertain a pledge/purchase of this stuff but our team isnt going to do anything if you guys catn even meet the basic diligence requests

**Matt B**                                                                                    6/13/2022, 9:54 AM

?

**Arianna Pretto-Sakmann**                                                                    6/13/2022, 9:59 AM

Kyle, I want to understand what the legal implications are of sharing accounts.  We are entitled to see updated numbers, as the lender and creditor.

**Matt B**                                                                                    6/13/2022, 9:59 AM

what about pledging some of the deribit/stark to Galaxy to cover the $10mm or so you owe there and then the remainder to us to meet our margin call - then you guys can start hedging downside etc

> **Arianna Pretto-Sakmann**                                                                  6/13/2022, 10:00 AM

I would be more than happy to hop on with counsel to sort out any issues with sharing.

**MK**  **Michael Kraines**                                                                6/13/2022, 10:03 AM
*Joined the conversation*

**MM**  **Mark Murphy**                                                                    6/13/2022, 10:03 AM
*Joined the conversation*

**MB**  **Matt B**                                                                         6/13/2022, 10:20 AM
@kyled1 what do you think the current m2m of the starkware shares are and how about the deribit?

**AP**  **Arianna Pretto-Sakmann**                                                         6/13/2022, 11:58 AM
Kyle, Su, we want to come to the table with a mutually agreeable solution on, among other things, the Deribit and
StarkWare shares. Please send across all most recent (even unaudited) financial information relating to Three Arrows
Capital and any affiliates (if not consolidated) as soon as possible. If that doesn't come by 2pm ET, we regret that we will
have to declare an immediate default under your 2020 contract with Genesis Asia Pacific for failure to respond to the
various margin calls. As a reminder, if we declare a default the entire Loan Balance becomes immediately due and
payable and any Collateral will be transferred from the collateral account to our operating account.

**MB**  **Matt B**                                                                         6/13/2022, 12:57 PM
hey @kyled1 and @btcmaximalist - I spoke with Galaxy and they are fine to not press on the default so long as we find a
path with you guys, so we're still keen to do that and figure out a way to work in the equity, but your lack of
responsiveness here gives us pretty little confidence. We're getting close to the 2PM ET mark which will basically push
this out of our hands.

**AP**  **Arianna Pretto-Sakmann**                                                         6/13/2022, 6:24 PM
@kyled1 and @S Z, Three Arrows defaulted on the second MLA at 5:50pm.  Please see attached Notice of Default, also
to be sent by email.

**AP**  **Arianna Pretto-Sakmann**                                                         6/13/2022, 6:24 PM
Notice of Default_Three Arrows Capital

*Attachment: file_-Genesis_Three Arrows_Notice of Default_6.13.22_executed.pdf (172 KB)*



*Image: thumbnail_-Genesis_Three Arrows_Notice of Default_6.13.22_executed.pdf_thumb.jpg (15 KB)*

**<u>Exhibit B-4</u>**

**Three Arrows Administration Agreement**



# ADMINISTRATION AGREEMENT

Between

**Three Arrows Capital, Ltd (the "Master Fund")**

And

**Three Arrows Fund, Ltd (the "Feeder Fund")**

And

**Apex Fund Services Ltd. (the "Administrator")**

Dated on the  15  day of December 2015

## INDEX

| SECTION | HEADING | PAGE NO. |
|---|---|---|
| 1. | Interpretation and Definitions | 1 |
| 2. | Appointment of Administrator | 2 |
| 3. | Representations and Warranties | 2 |
| 4. | Covenants | 3 |
| 5. | Responsibility and Limitations on Responsibility | 4 |
| 6. | Administration Fees | 6 |
| 7. | Effective Date and Termination | 7 |
| 8. | Confidentiality | 8 |
| 9. | Indemnity | 9 |
| 10. | No Conflict or Accounting for Profit | 10 |
| 11. | Right to use Data Processing Records | 10 |
| 12. | Authorised Signatories | 10 |
| 13. | Instructions and Notices | 11 |
| 14. | Entire Agreement | 11 |
| 15. | Governing Law and Jurisdiction | 11 |
| 16. | Amendments and Waivers | 12 |
| 17. | Assignment | 12 |
| 18. | Severance | 12 |
| 19. | General | 12 |
| 20. | Non-Exclusivity | 13 |
| 21. | Non-Solicitation | 13 |
| 22. | Customer Services | 14 |

| | |
|---|---|
| First Schedule (Administration Services) | 15 |
| Second Schedule (Authorised Signatories) | 18 |
| Third Schedule (Fees ) | 19 |
| Fourth Schedule (Apex Funds 247) | 20 |

This Agreement is made on the |5day of December 2015

**BETWEEN**

(1)    Three Arrows Fund Capital, Ltd, having its registered office at c/o ABM Corporate Services, Ltd., ABM Chambers, P.O. Box 2283, Road Town, Tortola, British Virgin Islands (hereinafter referred to as the "<u>Master Fund</u>")

And

(2)    Three Arrows Fund, Ltd, having its registered office at c/o ABM Corporate Services, Ltd., ABM Chambers, P.O. Box 2283, Road Town, Tortola, British Virgin Islands (hereinafter referred to as the "<u>Feeder Fund</u>")

And

(3)    Apex Fund Services Ltd, having its registered office at 20 Reid Street, Williams House, 3rd Floor, Hamilton HM11, Bermuda (hereinafter referred to as the "<u>Administrator</u>").

**WHEREAS:-**

A.    The Master Fund and Feeder Fund was duly formed in accordance with the laws of British Virgin Islands ("BVI") with a view to carrying on the business of an open-ended investment fund. The Master Fund and Feeder Fund wishes to appoint and engage the services of the Administrator.

B.    The Administrator is a limited liability company incorporated under the Companies Act, 1981 of Bermuda as amended, which is authorised by the Bermuda Monetary Authority (hereinafter called the "Regulator") to administer collective investment schemes. The Administrator is willing to assist the Master Fund and Feeder Fund by acting as administrator and providing services to the Master Fund and Feeder Fund subject to and in accordance with the provisions hereinafter set forth.

**IT IS HEREBY AGREED** as follows:

1.    **Interpretation and Definitions**

1.1    In this Agreement, words importing the singular number only shall include the plural and *vice versa*, and words importing the masculine gender only shall include the feminine gender, and words importing persons shall include corporations.  The headings are inserted for convenience only and shall not affect the meaning of any of the provisions of the Agreement.

1.2    Unless the context otherwise requires and except as varied or otherwise specified in this Agreement, words and expressions used in this Agreement shall bear the same meaning as in the Memorandum of Association and Articles of Association of the Master Fund and Feeder Fund (the "<u>Articles</u>") or if not defined therein, as in the Confidential Explanatory Memorandum of the Master Fund and Feeder Fund as may be amended, modified or supplemented from time to time (the "<u>Prospectus</u>").

1

1.3    In this Agreement, "Apex Group" means Apex Fund Services Holdings Ltd., a company registered in Bermuda, and its subsidiaries and affiliates for the time being including the Administrator.

1.4    In this Agreement, "gross negligence", in relation to a person, means a standard of conduct beyond negligence whereby that person acts with reckless disregard for the consequences of his or her action or inaction.

1.5    In this Agreement, "Operating Procedures" means procedures as may be agreed from time to time between the Master Fund and Feeder Fund and the Administrator.

1.6    This Agreement shall include the Schedules.

## 2.    Appointment of Administrator

2.1    The Master Fund and Feeder Fund hereby appoints the Administrator to act as the administrator in respect of the Master Fund and Feeder Fund and to provide the administration services set out in the First Schedule to this Agreement ("First Schedule") subject to the terms and conditions set forth in this Agreement and subject to compliance with the rules of the Regulator and all the applicable laws, rules and regulations. The Administrator accepts such appointment and agrees to render the administration services described in the First Schedule for the remuneration provided in this Agreement in relation to the provision of administrative services.

2.2    The Administrator will provide the function of acting as the administrator to the Master Fund and Feeder Fund in accordance with the Articles, the Prospectus and applicable law with the professional skill and care that would reasonably be expected of a prudent and professional administrator.

2.3    In carrying out its duties and functions hereunder, the Administrator shall at all times be subject to the control of and review by the directors of the Master Fund and Feeder Fund (the "Directors") and shall in all respects observe and comply with the Articles and shall comply with and conform to all the reasonable and proper orders, directions and requirements of the Directors. The Administrator shall, to the extent the same shall be necessary or advisable, consult with the Directors.

2.4    Except as expressly provided in this Agreement, or as the Administrator may be otherwise authorized, the Administrator has no authority to act for or represent the Master Fund and Feeder Fund.

2.5    The Administrator may delegate to Apex Fund Services (Singapore) Pte. Ltd. (the "sub-Administrator") all its powers and duties relating to the administration services set-out in this Agreement. Such sub-delegation shall be the object of an Agreement for the delegation of duties to be entered into by the Administrator and the sub-Administrator. Unless otherwise agreed between the Master Fund and Feeder Fund, the Administrator and the sub-Administrator, any fees and expenses payable to the sub-Administrator shall be borne by the Administrator, and the Administrator shall remain primarily liable to the Master Fund and Feeder Fund for the performance of any duties or functions so delegated by the Administrator.

2

**3.    Representations and Warranties**

3.1    The Master Fund and Feeder Fund represents and warrants to the Administrator:

    3.1.1    proper execution, delivery and performance of this Agreement and the consummation of the obligations contemplated;

    3.1.2    compliance with the terms of the Agreement by the Master Fund and Feeder Fund and that such compliance does not and will not conflict with nor result in a breach of any of the terms or provisions of, or constitute a default under the Articles or other constitutive powers of the Master Fund and Feeder Fund or any deed, mortgage or other agreement or instrument to which the Master Fund and Feeder Fund is a party or by which they are (or their properties are) bound or any existing applicable law or rule or regulation or any judgement, order or decree of any Court of competent jurisdiction applicable to or binding on the Master Fund and Feeder Fund;

    3.1.3    it is an open-ended  professional fund that has full power and authority to conduct its business and to execute and deliver and comply with the provisions of this Agreement; and

    3.1.4    all necessary authorisations, consents and approvals have been obtained and that this Agreement when duly executed and delivered creates valid and binding obligations of the Master Fund and Feeder Fund in accordance with its terms.

3.2    The Administrator represents and warrants to the Master Fund and Feeder Fund:

    3.2.1    due execution, delivery and performance of this Agreement and the consummation of the transactions contemplated;

    3.2.2    compliance with the terms of the Agreement by the Administrator and that such compliance does not and will not conflict with nor result in a breach of any of the terms or provisions of, or constitute a default under the Articles or Prospectus or other constitutive powers of the Administrator or any deed, mortgage or other agreement or instrument to which the Administrator is a party or by which they are (or their properties are) bound or any existing applicable law or rule or regulation or any judgement, order or decree of any Court of competent jurisdiction applicable to or binding on the Administrator;

    3.2.3    the Administrator is a company duly incorporated under the laws of Bermuda and has full power and authority to conduct its business (as presently conducted) and to execute and deliver and comply with the provisions of this Agreement; and

    3.2.4    all necessary authorisations, consents and approvals have been obtained and that this Agreement when duly executed and delivered creates valid and binding obligations of the Administrator in accordance with its terms.

## 4.      Covenants

The Master Fund and Feeder Fund covenants with the Administrator that for as long as this Agreement shall operate it shall:

4.1      promptly give or procure that the Administrator be given such information as the Administrator may reasonably require in order to enable them to perform its duties in a timely manner and shall not stop, countermand, restrain nor seek to restrain nor otherwise interfere with any arrangements, instructions, procedures or authority pursuant to which the Administrator has taken action under this Agreement provided that the Master Fund and Feeder Fund shall be entitled to substitute new instructions or any instructions in respect of which the Administrator has not taken action and to subsequently instruct the Administrator to revise or reverse any action taken pursuant to instructions given by the Master Fund and Feeder Fund;

4.2      prepare and provide material and information of a non-financial nature for inclusion in annual or other reports of the Master Fund and Feeder Fund;

4.3      procure that the Administrator is provided with the prices of investments which are not listed, quoted or dealt in on a recognised exchange or which are not available from the pricing services designated by the Master Fund and Feeder Fund and that prompt responses are received to any request by the Administrator for clarification or confirmation of prices so provided including, but not limited to, clarification as to the methodology utilised by the Master Fund and Feeder Fund for valuing unquoted assets and whether such methodology meets recognised standards in reaching such valuations;

4.4      determine the source of and make available funds to be utilised in making redemptions and/or distributions to the holders of Participating Shares of the Master Fund and Feeder Fund (the "Shareholders");

4.5      promptly notify the Administrator of any concerns in connection with Shareholders introduced to the Administrator by the Master Fund and Feeder Fund or its delegate(s) in the context of relevant money laundering legislation/regulations in the event that any suspicious circumstances relating to any such Shareholders come to its attention; and

4.6      notify the Administrator in writing as soon as reasonably practicable of any material changes occurring from time to time in the Master Fund's and Feeder Fund's constitution, legal status, directors or/ and of any changes occurring from time to time in the constitution, legal status, directors or ownership (where such change exceeds 20%) of the Master Fund's and Feeder Fund's Manager Shares.

## 5.      Responsibility and Limitations on Responsibility

### 5.1      Responsibility

The Administrator shall exercise reasonable care in the performance of its duties under this Agreement and shall not be liable for any loss of any nature whatsoever suffered by the Master Fund and Feeder Fund in connection with the performance by the Administrator of its obligations under this Agreement, except a loss resulting

4

directly from negligence, wilful misconduct or fraud or material breach of the Agreement on the part of the Administrator. The Administrator shall not be liable for any indirect, special or consequential loss howsoever arising.

## 5.2   Anti-Money Laundering

5.2.1   The Master Fund and Feeder Fund recognises that it is subject to the provisions of relevant money laundering legislation and regulations in the BVI and relevant legislations on Anti-Money Laundering and Anti-Terrorist Financing (together the "Law"). As such, the Master Fund and Feeder Fund is subject to the provisions of the Law and the requirement that it establishes an effective anti-money laundering and counter-financing of terrorism ("AML & CFT") program to address compliance therewith, including, among other things, the requirements to verify the identity of Shareholders, Directors or persons subscribing for Shares ("Subscribers") and shall maintain proper and adequate "Customer Due Diligence" ("CDD") procedures in order to enable compliance with the Law.

5.2.2   The Master Fund and Feeder Fund and the Administrator agree that the Administrator's business relationship is with the Master Fund and Feeder Fund and not with Shareholders or others for the purposes of relevant AML & CFT requirements.

5.2.3   The Administrator shall carry out, on behalf of the Master Fund and Feeder Fund, relevant AML & CFT requirements and CDD checks on investors in the Master Fund and Feeder Fund introduced to the Administrator by the Master Fund and Feeder Fund or its delegate(s).

## 5.3   Force Majeure

Notwithstanding any other provision set out in this Agreement, no party shall be liable for any action taken, or any delay in taking or failure to take any action required to be taken under this Agreement or otherwise to fulfil its obligations (including without limitation the failure to receive or make any payment) in the event and to the extent that the taking of such action or such delay or failure arises out of or is caused by war, insurrection, riot, civil commotion, act of God, market closure, any law, decree, regulation or order of any government or governmental body (including any court or tribunal), or any other cause whatsoever beyond its reasonable control ("Force Majeure Event") provided that in determining matters within the reasonable control of the Administrator regard shall be had to such contingency measures that may from time to time be disclosed by the Administrator to the Master Fund and Feeder Fund and the Administrator shall use its best endeavours to minimise the effects of any Force Majeure Event. The Administrator shall promptly notify the Master Fund and Feeder Fund of the occurrence of a Force Majeure Event and of the cessation of the continuance of any Force Majeure Event. If a Force Majeure Event is continuing for a period of more than 14 days, the Master Fund and Feeder Fund may terminate this Agreement upon one month's notice to the Administrator as appropriate.

### 5.4   Information provided to the Administrator

The Administrator may from time to time rely on information provided to it by or on behalf of the Master Fund and Feeder Fund or others in the course of discharging its duties under this Agreement. The Administrator shall not be liable to the Master Fund and Feeder Fund for any loss, liability, claim, cost or expense suffered by any person as a result of the Administrator (i) having relied absolutely or in part upon the authority, accuracy, truth and completeness of information so provided to it including, without limitation, information supplied to the Administrator by or on behalf of the Master Fund and Feeder Fund in relation to trades in respect of the assets of the Master Fund and Feeder Fund and in relation to the expenses of the Master Fund and Feeder Fund; or (ii) having relied absolutely or in part upon the authority, accuracy, truth and completeness of information furnished to the Administrator by or on behalf of the Master Fund and Feeder Fund or by any pricing sources selected by the Master Fund and Feeder Fund in the course of the Administrator discharging its duties with respect to the calculation of the net asset value ("NAV") of the Master Fund and Feeder Fund.

### 5.5   Approval of Net Asset Value ("NAV")

Upon preparation and review of the final NAV of the Master Fund and Feeder Fund, the Administrator shall send the NAV reports to the Master Fund and Feeder Fund in accordance with the time frames agreed between the Administrator and the Master Fund and Feeder Fund in the Operating Procedures. The Statement of Holding (showing NAV per share and the total value of shares held in the Master Fund and Feeder Fund by each Shareholder) shall be released to the Shareholders upon the acknowledgement of the Master Fund's and Feeder Fund's receipt and approval of the final NAV reports. The Administrator shall not cause the Statement of Holding to be released to the Shareholders without the Master Fund's and Feeder Fund's approval of the final NAV.

### 5.6   General

The Administrator shall not be liable in respect of any action taken or omitted to be taken under this Agreement in accordance with a legal opinion or other advice of a reputable professional advisor approved by the Master Fund and Feeder Fund (such approval not to be unreasonably withheld) or at the discretion of the Master Fund and Feeder Fund or its agents pursuant to this Agreement or if the Master Fund and Feeder Fund has not given or procured that the Administrator be given such information as the Administrator may reasonably require in order to perform its obligations under this Agreement or for any delay in the provision of such information to the Administrator and the Master Fund and Feeder Fund acknowledges that the Administrator has no responsibility for nor duty to perform any investigation as to the completeness, accuracy or sufficiency of any information provided to it by the Master Fund and Feeder Fund in connection with the performance of its duties under this Agreement (provided that the Administrator shall promptly notify and seek clarification from the person providing such information if the Administrator has reason to believe that such information may be incomplete, inaccurate or insufficient) and shall not be responsible to any person whatsoever for any liability, loss, damage, claim, cost or expense suffered or incurred as a result of the Administrator relying upon such information.

### 5.7   No Monitoring Responsibilities

The Administrator shall have no responsibility for ensuring compliance by or on behalf of the Master Fund and Feeder Fund with the legislation or regulations or exemptions from legislation or regulations of any jurisdiction in which the Investor Shares of the Master Fund and Feeder Fund are offered, placed or sold including, and without limitation, the United States of America. The Master Fund and Feeder Fund acknowledges that the duties of the Administrator pursuant to this Agreement shall not constitute a duty to monitor or enforce the compliance of the Master Fund and Feeder Fund or its delegates or any other person whatsoever with any investment restriction or guideline imposed in relation to the Master Fund and Feeder Fund.

### 5.8   No Trust

The Administrator shall not, save as directed by the Master Fund and Feeder Fund, be bound by any notice, actual or constructive, of any trust or other right or interest of any third party over or affecting the Participating Shares registered in the name of any Shareholder.

## 6.   Administration Fees

For the services provided pursuant to this Agreement, the Master Fund and Feeder Fund shall pay the Administrator, out of the assets of the Master Fund and Feeder Fund and/or its relevant Portfolio(s), as administration fees, such sums as set out in the Third Schedule or such other sums as may be agreed in writing by the parties from time to time, together with VAT, if any, thereon. Administration fees shall be computed and payable monthly and shall be drawn directly from the Master Fund's and Feeder Fund's bank account on the last business day of each calendar month or as soon as practicable thereafter in the case of fixed fees, and in the case of fees that are based on the Master Fund's and Feeder Fund's NAV, as soon as practicable after the Master Fund's and Feeder Fund's NAV has been computed and agreed for the respective month. Should any of the Master Fund's and Feeder Fund's NAV's be subsequently adjusted during the Master Fund and Feeder Fund's audit review, any adjustment to the administration fees chargeable shall be settled after the final audit report has been issued. The administration fees shall include all properly vouched disbursements and out-of-pocket expenses reasonably incurred by the Administrator in the performance of its duties under this Agreement.

## 7.   Effective Date and Termination

7.1   This Agreement shall become effective as of its execution, and shall continue in full force and effect until terminated as provided in this clause. The initial term is for one (1) year from the effective date. Subject to sub-clause 7.2, this Agreement shall be automatically renewed for each subsequent one year period under the same terms and conditions. Written notice of termination shall be provided no less than six (6) months before each automatic renewal.

7.2   This Agreement may be terminated forthwith by any party ("non-defaulting party") giving notice in writing to the other party ("defaulting party") if at any time:

7.2.1   the defaulting party shall go into liquidation (except for a voluntary liquidation for the purposes of reconstruction or amalgamation upon terms previously approved in writing by the non-defaulting party) or a receiver or examiner is appointed to the defaulting party or upon the happening of a like event whether at the direction of an appropriate regulatory agency or a court of competent jurisdiction or otherwise;

7.2.2   the defaulting party shall commit any material breach of the provisions of this Agreement which, if capable of remedy, shall not have been remedied within 30 days after the service of written notice requiring it to be remedied; or

7.2.3   any authorisation by the Regulator is revoked.

The parties agree to notify the other forthwith in the event of the occurrence of any of the events referred to in clause 7.2 of this Agreement.

7.3   On the termination of this Agreement, the Master Fund and Feeder Fund shall pay to the Administrator all fees and other monies, expenses and disbursements accrued and due to it up to the date of such termination, including transfer and dissolution fees.

7.4   On the termination of this Agreement, the Administrator shall deliver or cause to be delivered to the Master Fund and Feeder Fund, or as the Master Fund and Feeder Fund shall direct, all accounts, records, registers, correspondence and documents relating to the affairs of or belonging to the Master Fund and Feeder Fund in the possession or under the control of the Administrator including original documents of the shareholders of the Master Fund and Feeder Fund.

7.5   The termination of this Agreement shall be without prejudice to any rights that may have accrued to one party against the other prior to termination.

7.6   Clauses 7.1 to 7.4 shall be subject to the effect that, if the Master Fund's and Feeder Fund's launch does not materialise, this Agreement shall be deemed terminated by mutual agreement of the parties and no fee shall be payable to the Administrator by the Master Fund and Feeder Fund other than the implementation fee (as outlined in the Third Schedule).

## 8.   Confidentiality

8.1   For the purpose of this clause, confidential information ("Confidential Information") includes, without limitation, materials in any language that are or relate to:

8.1.1   financial, investments, commercial, business, technical, operational, administrative, marketing materials, client communication materials or other information or data (including but not limited to all information about existing investments, potential investment opportunities of any kind whatsoever, clients, potential clients, Shareholders, potential Shareholders, suppliers, financial accounts, trade secrets, know-how, new products, business opportunities and future plans for the development of the business of the Master Fund and Feeder Fund), supplied or received (whether in oral, written, magnetic, electronic, digital or any other form) by the Administrator

8

and in any way relating to the Master Fund and Feeder Fund or the Administrator;

8.1.2   the business of the Master Fund and Feeder Fund, Administrator and its affiliates (including, without limitation, presentations, articles, correspondence, reports, documents, logos, slogans, themes, layouts, presentations, artwork, computer programs, charts or related items, and the names and expertise of employees, and any and all other know-how, ideas, and other technical, business, financial, client and product development plans, forecasts, strategies, techniques and information);

8.1.3   computer programs, computer code, modules, scripts, algorithms, features and modes of operation, inventions (whether or not patentable), techniques, processes, schematics, testing procedures, software design and architecture, design and function specifications, analysis and performance information, user documentation, internal documentation, designs, ideas, concepts, metaphors and content for sites on the World Wide Web, the Internet and other computer networks; and

8.1.4   copies, analyses, compilations, studies and other documents which contain or otherwise reflect or are generated from any such information.

8.2   Unless required by applicable law or with the written authority of the other party neither of the parties hereto shall during the term of this Agreement or thereafter disclose to any person, firm, corporation or governmental agency whatsoever any Confidential Information of the other party or information which is proprietary in nature, of which it may in the course of its duties and operations hereunder or otherwise become possessed and each party shall use all reasonable endeavors to prevent any such disclosure as aforesaid.

8.3   The Administrator agrees that where the Master Fund and Feeder Fund or the Master Fund's and Feeder Fund's appointee provides it with Confidential Information relating to the Master Fund and Feeder Fund, it shall use all reasonable endeavors to keep such information confidential.

8.4   Where the Master Fund and Feeder Fund or the Master Fund's and Feeder Fund's appointee has elected to participate in the capital introduction platform organized by Apex Capital Introduction Services Ltd. ("Apex CIS"), all information relating to the Master Fund and Feeder Fund and pertinent to the Apex CIS platform, including the Apex CIS online portal, shall not be considered Confidential Information and may be provided by the Administrator to Apex CIS.

8.5   The Administrator and the sub-Administrator are is bound by regulatory and other obligations under the law of the jurisdiction in which they operate it operates and any action or inaction on the part of the Administrator or the sub-Administrator as a result of their its compliance with their its regulatory obligations shall not constitute a breach of the Administrator's duties to the Master Fund and Feeder Fund or a breach of any data protection regulations or provisions. Any provided, however, that prior to making any disclosure required by law, regulation or regulatory disclosures concerning the Fund by agency, the Administrator or the sub-Administrator shall not constitute a

breach of the Administrator's confidentiality duties to the use its reasonable best efforts Fund.

8.6  The Administrator acknowledges that it will receive non-public information concerning the Shareholders (including but not limited to the Shareholder's name, address, assets and income) (collectively, the "Information") and agrees to protect the Information and, subject to clause 8.3, shall provide it only (i) to the Master Fund and Feeder Fund and the Master Fund's and Feeder Fund's affiliates, attorneys, accountants and auditors in furtherance of Administrator's business and (ii) as otherwise required by law and regulatory rules.

## 9.  Indemnity

9.1  The Master Fund and Feeder Fund shall indemnify the Administrator and hold it harmless from and against all liabilities, damages, costs, claims and expenses (including and without limitation reasonable legal fees and amounts reasonably in settlement with the agreement of the Master Fund and Feeder Fund, such agreement not to be unreasonably withheld) incurred by the Administrator, their directors, officers, employees, servants, or agents in the performance of any of their individual obligations or duties under this Agreement (including and without limitation complying with instructions given to the Administrator by or on behalf of the Master Fund and Feeder Fund) save where such liabilities, damages, costs, claims and expenses arise from the Administrator's own negligence, wilful misconduct or fraud or material breach of this Agreement.

9.2  The Administrator shall as a condition precedent to its right to be indemnified under this clause, give the Master Fund and Feeder Fund notice promptly in writing of the following:

9.2.1  details of any claim made against the Administrator;

9.2.2  any circumstance of which the Administrator shall become aware which may give rise to a claim or loss; and

9.2.3  the receipt of written notice from any person of an intention to make a claim against the Administrator.

Such notice having been given to the Master Fund and Feeder Fund, the Administrator as appropriate shall promptly give to the Master Fund and Feeder Fund full details in writing of the circumstances which may give rise to a claim or loss against the Administrator.

9.3  With respect to any claim against the Administrator for which the Administrator may seek indemnification from the Master Fund and Feeder Fund pursuant to this clause 9, the Administrator agrees to:

9.3.1  regularly consult with the Master Fund and Feeder Fund and/or Master Fund's and Feeder Fund's advisers, regarding the Master Fund's and Feeder Fund's preferred course of action with respect to the claim;

9.3.2   upon request by the Master Fund and Feeder Fund, hand over to the Master Fund and Feeder Fund the conduct of all correspondence and all legal proceedings in relation thereto;

9.3.3   follow directions from the Master Fund and Feeder Fund with respect to the claim; and

9.3.4   obtain the Master Fund's and Feeder Fund's written consent (such consent not to be unreasonably withheld or delayed) prior to admitting liability, making any payment, entering into any settlement or incurring any costs or expenses with respect of such claim.

9.4   Any indemnity expressly given to the Administrator in this Agreement shall be in addition to, and without prejudice to, any indemnity allowed at law.

## 10.   No Conflict or Accounting for Profit

10.1   In this section, "Associated Company" means Apex Fund Services Holdings Ltd., which is registered as an exempt company under registration number 43608 in Bermuda, or any of its direct or indirect subsidiaries and affiliates for the time being.

10.2   Nothing contained in this Agreement shall prevent the Administrator or any Associated Company from acting as the administrator or in any other capacity for any other person or from buying, holding and dealing in any assets for its own account or any of its customers notwithstanding that the same or similar assets may be held by or for the account of the Master Fund and Feeder Fund and the Administrator shall not be deemed to be affected by notice of, or to be under any duty to disclose to the Master Fund and Feeder Fund or the custodian information which has come into its or any of its Associated Companies' possession as a result of such arrangements and shall not be liable to account to the Master Fund and Feeder Fund or the custodian or to the shareholders or any other person for any profits or benefits made or derived by or in connection with any such transaction. The Administrator has internal procedures in place to ensure that any personal account dealing by employees does not conflict with the Administrator's or any Associated Company's duties to its customers.

## 11.   Right to Use Data Processing Records

The Administrator is authorized to maintain all accounts, registers, corporate books and other documents relating to the Master Fund and Feeder Fund or its affairs on computer records and to produce at any time during the course of legal proceedings, copies or reproductions of these documents made by photographic, photo static or data processing procedures as juridical proof thereof.

## 12.   Authorised Signatories

12.1   Any two of the persons identified in the Second Schedule ("Authorised Signatories") are authorised, on the Master Fund's and Feeder Fund's behalf, to issue instructions, acknowledgements and notices to the Administrator.

12.2    Amendments to the current list of the Authorised Signatories may be made at any time, on written notice, signed in accordance with the Master Fund's and Feeder Fund's signing arrangements or by a resolution of its Directors.

## 13.    Instructions and Notices

13.1    In carrying out its duties under this Agreement, the Administrator will comply with all reasonable instructions of the Master Fund and Feeder Fund in connection therewith. All instructions, acknowledgements or notices required to be given from time to time under this Agreement shall be given by telephone, e-mail, telefax or electronic communication or by letter or by such other means as may from time to time be agreed between the parties (including, without limitation, oral instructions) to the intended recipient at the address set out in this Agreement or at such address, telephone, e-mail or telefax numbers or addresses as may from time to time be notified by each party to the other and shall be deemed to be duly given upon receipt. All oral instructions shall be promptly confirmed in writing but non-receipt of confirmation shall not affect the validity of the oral instructions. Dispatch of notices sent by telefax shall be confirmed in original form by the addressor provided that non-receipt of such confirmation shall not invalidate such notices.

13.2    The Administrator may in the absence of negligence, wilful misconduct or fraud rely on any instruction, acknowledgement or notice which it reasonably believes to have been issued by the Authorised Signatories of the Master Fund and Feeder Fund as listed in the Second Schedule of this Agreement.

13.3    The Administrator may decline to accept or act upon any instruction to it or other communication if it reasonably considers that compliance with such instruction would not be feasible or would breach the terms of the Articles, the requirements of the Regulator or any government department or body whose requirements (whether legally binding or not) the Administrator is subject to, any applicable law, decree, regulation or order of any government or governmental body (including any court or tribunal) or which would be contrary to any provision of this Agreement provided that the Administrator shall not be under any obligation to ensure that any instruction received by it would not contravene any of the laws, authorities or documents referred to and provided that the Administrator shall immediately notify the Master Fund and Feeder Fund of its refusal to act and give its reasons therefore where permitted under applicable law to do so.

13.4    The Administrator and the Master Fund and Feeder Fund may record all telephone conversations between them and any such recordings may be submitted in evidence in any proceedings relating to this Agreement.

## 14.    Entire Agreement

This Agreement together with the Schedules constitute the entire agreement between the parties, which supersedes all proposals or prior agreements and understandings relating to the subject matter of this Agreement.

### 15.  Governing Law and Jurisdiction

This Agreement shall be construed and the provisions interpreted under and in accordance with the laws of Bermuda and the parties to this Agreement irrevocably submit to the non-exclusive jurisdiction of the Bermuda Courts.

### 16.  Amendments and Waivers

16.1  Any provision of this Agreement may be amended if such amendment is in writing and is signed by the Administrator and the Master Fund and Feeder Fund and is in accordance with the requirements of the Regulator. Any rights of any of the parties may be waived provided such waiver is in writing and is signed by the Administrator and the Master Fund and Feeder Fund.

16.2  No failure to exercise and no delay on the part of the Administrator or the Master Fund and Feeder Fund in exercising any right, power or privilege under this Agreement shall operate as a waiver nor shall any single or partial exercise of any right, power or privilege preclude the further exercise thereof.

### 17.  Assignment

This Agreement and the rights and obligations created under this Agreement may not be assigned in whole or in part by any of the parties without the prior consent in writing of the other parties (such consent not to be unreasonably withheld) and such assignment shall be in accordance with the requirements of the Regulator.

### 18.  Severance

Each provision of this Agreement is severable and distinct from the others.   The parties intend that every provision of it shall be and remain valid and enforceable to the fullest extent permitted by law. If any provision is or at any time becomes to any extent invalid, illegal or unenforceable for any reason, it shall to that extent be deemed not to form part of this Agreement but the validity, legality and enforceability of the remaining parts of this Agreement shall not be thereby affected or impaired.

### 19.  General

19.1  Nothing in this Agreement shall affect the rights, duties or obligations of the Administrator and the Master Fund and Feeder Fund to each other or of the Administrator or the Master Fund and Feeder Fund to any third party under any existing agreement not related to this Agreement.

19.2  This Agreement may be executed by the parties on separate counterparts, in any number, each of which will constitute an original but all of which together shall constitute one and the same agreement.

19.3  The Administrator shall not be liable, to the Master Fund and Feeder Fund nor the Investment Manager, for any suit or compensation or punitive damages (the "Damages") that may arise, including, but not limited to, Damages as a result of any direct or indirect economic loss, of, for example, profit, or expected management performance fees, or goodwill or business reputation, or NAV of, or investor

subscription in the Master Fund and Feeder Fund or the Investment Manager. In the event of a breach by the Administrator of its contractual duties under this Agreement, which breach is determined and declared by a court or adjudicator of competent jurisdiction and authority, the Master Fund's and Feeder Fund's claims for remedy shall be exclusively limited to the recovery of liquidated damages, agreed upon hereby to be limited so as not to exceed in value the sum of the Administrator's annual fees and remuneration as they are detailed in the Third Schedule. For the avoidance of doubt, this clause is not intended to limit the Administrator's liability in the event of loss arising from the Administrator's fraud, gross negligence or wilful misconduct.

## 20.    Non-Exclusivity

The services of the Administrator  hereunder are not to be deemed exclusive and the Administrator  shall be free to render similar services to other parties so long as its services hereunder are not impaired thereby and to retain for its own use and benefit all fees or other moneys payable thereby and the Administrator  shall not be deemed to be affected with notice of or to be under any duty to disclose to the Master Fund and Feeder Fund any fact or thing which comes to its notice or to the notice of its servant or agent in the course of rendering similar services to other parties or in the course of its business in any other capacity or in any manner whatsoever otherwise than in the course of carrying out its duties hereunder. In the event of any conflict between the interests of the Master Fund and Feeder Fund and its other clients, the Administrator shall act in the best interests of the Master Fund and Feeder Fund so far as practicable, having regard to its principles of equity and its obligations to such other clients.

## 21.    Non-Solicitation

### 21.1   Non-Solicitation of Employees

During the term of this Agreement, and for a period of one year thereafter, the Master Fund and Feeder Fund shall not, directly or indirectly, either for itself or on behalf of any other person, without the prior written consent of the Administrator, solicit to employ, employ or  retain as a consultant or independent contractor, any person who at the relevant time is, or during the preceding six months was, in the employ of the Administrator and/or any other member of the Apex Group and was known by the Master Fund and Feeder Fund to be so employed.

### 21.2   Acknowledgements of the Master Fund and Feeder Fund

The Master Fund and Feeder Fund acknowledges and agrees that, due to the unique nature of the services to be provided by the Administrator's employees and the confidential nature of the information that the Administrator's employees will possess, the covenants set forth in this clause 21 are reasonable and necessary for the protection of the business and goodwill of the Administrator and its affiliates. The Master Fund and Feeder Fund expressly acknowledges the importance to the Administrator of the covenants set forth in this clause 21, and recognizes that the Administrator would not enter into this Agreement and would not permit the Master Fund and Feeder Fund access to the services without the Master Fund's and Feeder Fund's agreement thereto.

21.3    Payment of Search Fees

The Master Fund and Feeder Fund agrees that in the event of a breach of sub-clause 21.1, the breaching party shall become immediately obliged to pay to the Administrator on demand an amount up to US$20,000, representing a reimbursement of search fees and advertising costs incurred by the Administrator and/or any other member of the Apex Group, as applicable, for the purpose of seeking a replacement for the employee solicited, employed or retained in breach of sub-clause 21.1. It is acknowledged that such amount is additional to any other remedy that the Administrator may have in relation to such breach and does not represent liquidated damages for such breach.

## 22.    Customer Service

The Administrator will at all times ensure that a full service team is assigned to the Master Fund and Feeder Fund who will be responsible for the day-to-day operational and accounting services. The contact details of the client service team will be provided within the Operating Procedures and the team will be available to address the day to day needs of the Master Fund and Feeder Fund and any queries arising from same. If however the Master Fund and Feeder Fund or its delegates are not 100% satisfied with the service they receive then in order to help us continually improve our service please contact the owner and Group Managing Director directly at the below details:

Name: Peter Hughes
Email: peter@apex.bm
Contact Number: +447780997609

## FIRST SCHEDULE

### Administration Services

1.    The  services to be provided by the Administrator are as follows:

1.1.   Calculating the NAV of the Participating Shares in accordance with the Articles and the Prospectus. Calculation shall be based upon traded rather than settled positions. The Administrator shall promptly notify the Master Fund and Feeder Fund of circumstances of which it becomes aware which will render impossible or impractical the calculation of the NAV;

1.2.   Keeping the books and records of the Master Fund and Feeder Fund as required by applicable law or otherwise as the Master Fund and Feeder Fund may require for the proper recording of the financial affairs of the Master Fund and Feeder Fund in compliance with the General Accepted Accounting Principle ("USGAAP"). Keeping the books and records up-to-date and providing such periodical reports as agreed with the Master Fund and Feeder Fund;

1.3.   Offering an online web reporting portal which provides real time up-to-date information and analysis for which terms and conditions are contained in the Fourth Schedule (the "Apex Funds 247");

1.4.   Keeping a register of the Shareholders of the Master Fund and Feeder Fund (the "Register") containing the following information:

   i.    the name and address of each Shareholder;

   ii.   the number of shares held by each Shareholder

   iii.  the date on which the name of each Shareholder was entered in respect of the shares standing in his name and where he became a holder of shares by virtue of an instrument of transfer a sufficient reference to enable the name and address of the transferor to be identified; and

   iv.   the date on which any transfer was registered and the name and address of the transferee.

1.5.   Arranging the issue, allotment, transfer, redemption of shares of the Master Fund and Feeder Fund in accordance with the Articles and the Prospectus, including receiving subscription applications, reviewing the information contained in the subscription applications and enter on the Register all issues, transfers, redemptions of shares of the Master Fund and Feeder Fund and liaising with Shareholders and applicants in respect of subscriptions as applicable;

1.6.   The Administrator shall maintain the Register in such form and in such manner as directed by the Master Fund and Feeder Fund and specifically shall:

   i.    permit no alteration in the form or content of the Register without the consent of the Master Fund and Feeder Fund;

   ii.   hold the Register open for inspection in accordance with the applicable laws and the Articles;

16

iii.   give anyone authorized by the Master Fund and Feeder Fund access at all reasonable times to the Register and to all ancillary documents and records and will supply to anyone authorized for the purpose by the Master Fund and Feeder Fund at the request and expense of the Master Fund and Feeder Fund any copy or extract of or from the Register and all supporting documents as soon as reasonably possible after the same has been requested;

iv.   supply to the Master Fund and Feeder Fund such information or explanations as the Master Fund and Feeder Fund may require in relation to the Register, the contents thereof and all ancillary documents and records;

v.    issue and execute share certificates or contract notes, as the case may be, relating to all issued Participating Shares of the Master Fund and Feeder Fund and dispatch thereof to the persons entitled thereto or to the order of such persons or to their agents and maintain a record of payment instructions; and

vi.   retain records in such a manner and for such period as prescribed by the applicable laws.

1.7   Notifying the Master Fund's and Feeder Fund's regulator and the Directors without delay of any suspension in the determination of the NAV in accordance with the requirements set out in the Articles and the Prospectus;

1.8   Liaising with the Master Fund's and Feeder Fund's auditors with respect to the audit of the financial statements for each financial year of the Master Fund and Feeder Fund so as to enable the auditors to complete the annual audit of the Master Fund and Feeder Fund such that the audited financial statements can be included in the Master Fund's and Feeder Fund's annual report and published within the time limits set out in the Prospectus and providing to the Auditors such information concerning the Master Fund and Feeder Fund as they may reasonably require from the Administrator in order to carry out such audit;

1.9   Reconciling at least once every calendar month records of investments maintained by the Master Fund and Feeder Fund or the custodian or any other counterparts such as fund administrators, private equity managers or sub-custodians;

1.10   Recording and monitoring under/over expense provisions;

1.11   Adjusting operating expenses provisions as necessary;

1.12   Calculating all the operating expenses and notifying the Master Fund and Feeder Fund about such calculations;

1.13   Supplying such information or reports to the Master Fund and Feeder Fund as may from time to time be agreed by the parties;

1.14   Maintaining the records and accounts of the Master Fund and Feeder Fund in such manner as to enable the Administrator to carry out its duties hereunder;

1.15   In relation to each financial year end of the Master Fund and Feeder Fund, preparing the management accounts of the Master Fund and Feeder Fund and if requested by the Master Fund and Feeder Fund, preparing also the financial statements for the immediately preceding financial year of the Master Fund and Feeder Fund containing such information as is required for inclusion in the Master Fund's and Feeder Fund's annual report. In each case having regard to applicable accounting standards and submitting such financial statements and reports to the Investment Manager for

17

review and approval and arranging for the copying and binding of such financial statements and reports and the distribution of same to the appropriate parties;

1.16    Providing all administration services required for the transfer of the Master Fund and Feeder Fund to another administrator or for the Master Fund's and Feeder Fund's dissolution where applicable; and

1.17    Any other services as agreed between the Master Fund and Feeder Fund and the Administrator from time to time.

## SECOND SCHEDULE

### Authorised Signatories

The persons set out in the attached Board Resolutions of the Master Fund and Feeder Fund.

| | |
|---|---|
| | |
| | |
| | |
| | |

## THIRD SCHEDULE

### Administration Fees

Fees are agreed as follows:

A. Three Arrows Capital, Ltd (the "Master Fund")

    (1) One time set-up fee of USD 7,000 for the administration service.

    (2) The administration, registrar and transfer agency fee as follows:

| Assets under Management | Fees |
|---|---|
| First USD 100 million | 10 bps p.a. |
| Next USD 100 million | 8 bps p.a. |
| Thereafter | 6 bps p.a. |

    The above fees will be subject to a minimum of USD 78,000 per annum (USD 6,500 per month).

    Such fees include Monthly formal NAV reporting and investor reporting.

    (3) Out of pocket expenses: 10% of the monthly administration, registrar and transfer agency fee, subject to a maximum of USD 300 per month.

    (4) Audit assistance and financial statements preparation fees: USD 3,000 per financial statement.

    (5) FATCA Services Fees
    (a) One time Registration fee – USD 500
    (b) Annual fee – USD 3,000 per annum and USD 60 per Investor

    (6) Apex 247 Fees
    (a) One Time set up fee – USD 1,000
    (b) Recurring charge - USD 300 per month **(Waived for first year)**

B. Three Arrows Fund, Ltd (the "Feeder Fund")

    (1) The administration, registrar and transfer agency fee is as follows:

    Apex will charge a fixed fee of USD 12,000 per annum (USD 1,000 per month) per feeder fund.
    Such fees include Monthly formal NAV reporting and investor reporting.

    (2) Out of pocket expenses: 10% of the monthly administration, registrar and transfer agency fee, subject to a maximum of USD 300 per month.

    (3) Audit assistance and financial statements preparation fees: USD 3,000 per financial statement.

(4) UK and US FATCA Services Fee
   (a) One time Registration fee – USD 500
   (b) Annual fee – USD 3,000 per annum and USD 60 per Investor

(5) Apex 247 Fees
   (a) One Time set up fee – USD 1,000
   (b) Recurring charge - USD 300 per month **(Waived for first year)**

For the provision of additional administration services where the Master Fund and Feeder Fund is transferred to another administrator or where the Master Fund and Feeder Fund is dissolved, a minimum fixed fee of US$7,500, subject to any additional administration fees incurred.

Fees are subject to review after the first two year period of operation and at the end of each calendar year thereafter.

Fees are invoiced monthly in arrears and are due ten (10) business days after the invoice has been sent to the Master Fund and Feeder Fund. Payments received after the due dates are subject to a late charge of 10% per month.

## FOURTH SCHEDULE

### Apex Funds 247

The Administrator offers portfolio managers and fund investors an online web reporting portal which provides real time up-to-date information and analyses (the "**Apex Funds 247**"). The Master Fund and Feeder Fund may opt to use Apex Funds 247 as part of its administration services and the Administrator shall provide the Master Fund and Feeder Fund with the Apex Funds 247 facility subject to the following terms and conditions:

1 - The Master Fund and Feeder Fund shall obtain manager and investor access to the Apex Funds 247 website.

2- The Administrator shall provide the Master Fund and Feeder Fund with appropriate usernames and passwords for access to the Apex Funds 247 website.

3- The Administrator shall provide the Master Fund and Feeder Fund with accurate and up-to-date information on the Apex Funds 247 website.

4- The Administrator shall not be liable for any damages, losses or expenses (including direct, indirect, special, incidental, consequential or punitive damages) arising from the use or inability to use the Apex Funds 247 website or the information contained in that website, or any error, omission, interruption, defect, delay, computer virus, system failure, loss of data or otherwise, even if the Administrator or its representatives are advised of the possibility of such damages, losses or expenses.

5- The Administrator shall not be held liable in cases where the Master Fund and Feeder Fund runs a report with a date range that goes beyond the latest locked NAV date; in such cases, the Administrator shall not be held liable for any damages, losses or expenses if the data is incomplete, inaccurate or not finalised.

6- The termination by the Master Fund and Feeder Fund of the Apex Funds 247 service is subject to a 90 days written notice to the Administrator.

7- For the Apex Funds 247 services, the Master Fund and Feeder Fund shall pay to the Administrator such sums as set out in the Third Schedule or such other sums as may be agreed in writing by the parties from time to time.

**IN WITNESS** whereof this Agreement has been executed by the parties in the manner hereinafter appearing on the day and year first above written

**SIGNED** for and on behalf of
**THREE ARROWS CAPITAL, LTD**
**THREE ARROWS FUND, LTD**
in the presence of :-

_____
Director

_____
Director

**PRESENT** when the **COMMON SEAL**
of **APEX FUND SERVICES LTD.**
is attached hereto:

_____
Director

_____
Director/Secretary   SHARON WARD

**BY AND**
in the presence of :-

Amy Durham

23

**<u>Exhibit C</u>**

**Kinealy Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

### DECLARATION OF PAUL KINEALY
### IN SUPPORT OF DEBTORS' TWENTY-EIGHTH OMNIBUS
### OBJECTION (NON-SUBSTANTIVE) TO CERTAIN CLAIMS
### PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007
### (NO LIABILITY AND INSUFFICIENT DOCUMENTATION)

I, Paul Kinealy, make this declaration pursuant to 28 U.S.C. § 1746 and state as follows:

### BACKGROUND

1.      I am a Senior Director at Alvarez and Marsal North America, LLC ("A&M"), the financial advisor for the above-captioned Debtors.

2.      In my capacity as Senior Director, I am authorized to submit this Declaration in support of the *Debtor's Twenty-Eighth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability and Insufficient Documentation)* (the "Objection").[2]

3.      I am familiar with the Debtors' day-to-day operations, financing arrangements, business affairs and Books and Records and am responsible for overseeing the review and analysis of claims filed in the Debtors' Chapter 11 Cases.  All facts set forth herein are based on my personal

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich St., 38th, New York, NY 10007.

[2]      Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Objection.

knowledge, my review or the review of employees of A&M of the Claims and other relevant documents or information provided by the Debtors' employees and advisors.  If I were called upon to testify, I could and would competently testify to each of the facts set forth herein on that basis, including that I, or employees of A&M, personally reviewed the Three Arrows Fund Claims on Exhibit A-1 to the Proposed Order as part of the claims reconciliations process in these Chapter 11 Cases.

### FACTUAL BASIS OF OBJECTION

4.      Either I or one or more of the Debtors' employees or advisors operating at A&M's direction have reviewed the Claims Register, the Debtors' Books and Records, each of the Three Arrows Fund Claims identified on Exhibit A-1 to the Proposed Order and the facts and circumstances set forth in the Objection regarding such Claims.

5.      We have determined that for the Three Arrows Fund Claims identified in Exhibit A-1 to the Proposed Order, no supporting information sufficient to identify the basis for the asserted liability or ascertain its validity was provided by the Claimant with respect to Claim Nos. 323, 324, and 325 (as further discussed below), and insufficient documentation was provided with respect to Claim Nos. 468, 488 and 502, and the Debtors' Books and Records otherwise do not reflect the existence of the asserted Claim or of the Claimant asserting such Claim recovery against the Debtors.  As the Three Arrows Fund Claims do not have sufficient supporting documentation and are not found within the Debtors' Books and Records, there is no liability against the Debtors for such Claims.

6.      Of the Three Arrows Fund Claims, Claim Nos. 323, 324, and 325 (attached hereto as Exhibits C-1, C-2, and C-3, respectively) contain no supporting documentation or addenda and assert unliquidated amounts on the basis of "[c]laims from loan agreements and/or investments between Debtor, creditor and/or creditor's affiliates."  *See* Ex. C-1, Claim No. 323 at 7; Ex. C-2,

2

Claim No. 324 at 7; Ex. C-3, Claim No. 325 at 7. Only Claim Nos. 468, 488 and 502 (attached hereto as Exhibits C-4, C-5, and C-6, respectively) include any detail setting out the basis of the claim. *See* Ex. C-4, Claim No. 468 ¶¶ 4–5, 11; Ex. C-5, Claim No. 488 ¶¶ 4–5, 11; Ex. C-6, Claim No. 503 ¶¶ 4–5, 11 (alleging that the Debtors and other non-Debtor affiliates "enter[ed] into Bitcoin commodity swaps with counterparties even though [none] of the [Debtors] was a swap dealer registered with the [Commodities Future Trading Commission]," that the "[Debtors] violated the Commodity Exchange Act ("CEA") by not registering as swap dealers," and that the Three Arrows Fund "suffered actual damages from the Bitcoin and other digital asset swaps with [the Debtors], and those entities are liable to [the Three Arrows Fund] for their violations of the [Commodities Exchange Act]." Claim Nos. 468, 488, and 502, however, do not include any supporting documentation evidencing any transactions between Claimant and the Debtors, or otherwise provide information sufficient to identify the basis for the Claimant's purported liability against Holdco. Indeed, with respect to 3AC and its affiliated entities, including the Three Arrows Fund, the Debtors' Books and Records reflect only transactions between 3AC and GAP and between 3AC and GGC.

7. In any event, Claim Nos. 323, 324 and 325 are also substantially identical to Claim Nos. 468, 488 and 502, with the latter only adding supporting addenda. *Compare* Exs. C-1–C-3, Claim Nos. 323, 324 and 325 at 7 (asserting unliquidated amounts on the basis of "[c]laims from loan agreements and/or investments between Debtor, creditor and/or creditor's affiliates") *with* Exs. C-4–C-6, Claim Nos. 468, 488 and 502 at 7 (asserting unliquidated amounts on the basis of "[l]oan agreements and/or investments (see addendum)").

8. Finally, the Three Arrows Fund was not party to the 3AC MLAs or the Pledge Agreements, and the Debtors' Book and Records do not otherwise reflect the existence of any other lending relationship between the Three Arrows Fund and the Debtors.

9.      I submit that the facts and circumstances set forth in the Objection are true and accurate to the best of my knowledge, information and belief, and the Three Arrows Fund Claims identified on Exhibit A-1 to the Proposed Order should be disallowed in full.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on April 5, 2024                   */s/ Paul Kinealy*
                                            Paul Kinealy

**<u>Exhibit C-1</u>**

**Claim No. 323**

# Genesis Proof of Claim Form

## Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

## Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed (January 19, 2023). That date is on the notice of bankruptcy (Form 309) that you received.**

☐  Check here to see further instructions on completing your claim form:

**Claim Number: 323**

## Debtor Selection

**Fill in this information to identify the case (Select only one Debtor per claim form):**

○ Genesis Global Holdco, LLC (Case No. 23-10063)
◉ Genesis Global Capital, LLC (Case No. 23-10064)
○ Genesis Asia Pacific PTE. LTD. (Case No. 23-10065)

## Part 1: Identify the Claim

### 1. Who is the current Creditor?
Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

◉ No
○ Yes

Creditor Name

| Three Arrows Fund, Ltd (in Liquidation) |
|---|

Other names the creditor used with the debtor

| |
|---|

### 2. Has this claim been acquired from someone else?

◉ No
○ Yes

From whom?

| |
|---|

### 3. Where should notices and payments to the Creditor be sent?
[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

| Three Arrows Fund, Ltd (in Liquidation) |
|---|

Address 1 (Street address, "Care of:", or "Attention To:"):

| Attention to: James Drury |
|---|

Address 2:

| 4th Floor, LM Business Centre, Fish Lock Road |
|---|

Address 3:

| |
|---|

Address 4:

| |
|---|

City:

| Road Town, Tortola |
|---|

State or Province (use 2-letter abbreviation if US or Canada):

| British Virgin Islands |
|---|

Zip Code | Postal Code:

| VG-11100 |
|---|

**Is the creditor address outside of the US?**

○ No
◉ Yes

Country (if outside of the US):

British Virgin Islands

Contact phone:

+1 284 346 9600

Contact email:

james.drury@interpathadvisory.vg

**Should payments go to a different address?**

◉ No
○ Yes

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

◉ No
○ Yes

Claim number on court claims registry (if known)

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
○ Yes

Who made the earlier filing?

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
◯ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

|  |
|---|

**\* 7. How much is the claim?** (If your claim is based on cryptocurrency holdings, please provide the number of units associated with your claim. Do not provide a value for your cryptocurrency holding claim in United States Dollars. Only provide a United States Dollar value for your claim if your claim is based in United States Dollars.)

A. To the extent you assert a claim that is denominated in US Dollars, list the value of the claim in US Dollars as of the date the case was filed (January 19, 2023):

| $ | Unliquidated |
|---|---|

**Does this amount include interest or other charges?**

◉ No
◯ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

B. With regard to coins loaned to the Debtors, list the number of each type of coin loaned to the Debtors as of the date the case was filed (January, 19, 2023).

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| 0x (ZRX) | | Livepeer (LPT) | |
| 1inch Network (1INCH) | | Loopring (LRC) | |
| Aave (AAVE) | | Maker (MKR) | |
| Alchemix (ALCX) | | Moonbeam (GLMR) | |
| Algorand (ALGO) | | Multi Collateral Dai (DAI) | |
| Amp (AMP) | | Near (NEAR) | |
| Ankr (ANKR) | | Neo (NEO) | |
| ApeCoin (APE) | | Orchid (OXT) | |
| Axie Infinity (AXS) | | PAX Gold (PAXG) | |
| Balancer (BAL) | | Polkadot (DOT) | |
| Bancor (BNT) | | Polygon (MATIC) | |
| Basic Attention Token (BAT) | | Rally (RLY) | |
| Binance Coin (BNB) | | Ren (REN) | |

Genesis Proof of Claim Form

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin (BTC) | | Ribbon Finance (RBN) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin Cash (BCH) | | Serum (SRM) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin SV (BSV) | | Shiba Inu (SHIB) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Cardano (ADA) | | SKALE (SKL) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Chainlink (LINK) | | Solana (SOL) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Chiliz (CHZ) | | Stellar (XLM) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Compound (COMP) | | Storj (STORJ) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Cosmos (ATOM) | | SushiSwap (SUSHI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Curve DAO Token (CRV) | | Synthetix (SNX) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Decentraland (MANA) | | Terra Classic (LUNC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| DogeCoin (DOGE) | | TerraClassicUSD (USTC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| EOS (EOS) | | Tether (USDT) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Ethereum (ETH) | | Tezos (XTZ) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Ethereum Classic (ETC) | | The Graph (GRT) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| EthereumPoW (ETHW) | | The Sandbox (SAND) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Fantom (FTM) | | Tokemak (TOKE) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Fetch.ai (FET) | | Tron (TRX) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Filecoin (FIL) | | UMA (UMA) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Flow (FLOW) | | Uniswap (UNI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Gemini Dollar (GUSD) | | USD (USD) | |

Genesis Proof of Claim Form

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Helium (HNT) | | USD Coin (USDC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Horizen (ZEN) | | Wrapped Bitcoin (WBTC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Injective (INJ) | | Wrapped Luna (WLUNA) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Kusama (KSM) | | XRP (XRP) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Kyber Network Crystal v2 (KNC) | | Yearn.Finance (YFI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Litecoin (LTC) | | Zcash (ZEC) | |

| Coin List | Count |
|---|---|
| BIT (BitDAO) | |

Do you hold additional coins in your account not listed above?

○ No
○ Yes

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

> Claims from loan agreements and/or investments between Debtor, creditor and/or creditor's affiliates

Are you a current or former Gemini Trust Company, LLC user?

○ No
○ Yes

If yes, is your claim related to any loans you made through the Gemini Earn Program?

○ No
○ Yes

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

☐ Motor vehicle

☐ Other

Describe:

Basis for perfection:

Value of property (all amounts in US $ dollars):

Amount of the claim that is secured (all amounts in US $ dollars):

Amount of the claim that is unsecured (all amounts in US $ dollars):

Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):

Interest Rate Type:                                    Annual Interest Rate (when case was filed) %:

○ Fixed
○ Variable

**10. Is this claim based on a lease?**

◉ No
○ Yes

Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property. (If the property is cryptocurrency, identify each type of cryptocurrency, the respective number of units of each type of cryptocurrency, and whether the property was posted by you or the Debtor):

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

◉ No

○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

◉ No

○ Yes.

**Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim (all amounts in US $ dollars).**

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

 I am the creditor.
○ I am the creditor's attorney or authorized agent.
○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

## Executed on date (Calculated in UTC)

| 05/18/2023 |
|---|

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

| James Kenneth Drury |
|---|

Title/Company:

| Joint Liquidator |
|---|

Address 1:

| 4th Floor, LM Business Centre, Fish Lock Road |
|---|

Address 2:

| Road Town |
|---|

City:

| Tortola |
|---|

State or Province (use 2-letter abbreviation if US or Canada):

| British Virgin Islands |
|---|

Zip Code | Postal Code:

| VG-1110 |
|---|

Is this address outside of the US?

○ No
● Yes

Country (if outside of the US):

| British Virgin Islands |
|---|

Contact phone:

| +1 284 346 9600 |
|---|

Contact email:

| james.drury@interpathadvisory.vg |
|---|

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

○ I have supporting documentation
● I do not have supporting documentation

Genesis Proof of Claim Form

Confirmation of Submission

**Your Form has been successfully submitted...**

DOCUMENT ID

cd75be3e282393011ed79f560251282730a5af84

Submitted Date Time

2023-05-18T18:24:43.916Z

Status

Submitted

CONFIRMATION ID

3315-61-ALWWW-959932280

Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

Orbeon Forms 2022.1.3.202304130216 PE

**<u>Exhibit C-2</u>**

**Claim No. 324**

Genesis Proof of Claim Form

# Genesis Proof of Claim Form

## Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

[                                                                    ]

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

## Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed (January 19, 2023). That date is on the notice of bankruptcy (Form 309) that you received.**

☐ Check here to see further instructions on completing your claim form:

**Claim Number: 324**

## Debtor Selection

**Fill in this information to identify the case (Select only one Debtor per claim form):**

○ Genesis Global Holdco, LLC (Case No. 23-10063)
○ Genesis Global Capital, LLC (Case No. 23-10064)
◉ Genesis Asia Pacific PTE. LTD. (Case No. 23-10065)

## Part 1: Identify the Claim

### 1. Who is the current Creditor?
Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

◉ No
○ Yes

Creditor Name

| Three Arrows Fund, Ltd (in Liquidation) |
|---|

Other names the creditor used with the debtor

|  |
|---|

### 2. Has this claim been acquired from someone else?

◉ No
○ Yes

From whom?

|  |
|---|

### 3. Where should notices and payments to the Creditor be sent?
[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

| Three Arrows Fund, Ltd (in Liquidation) |
|---|

Address 1 (Street address, "Care of:", or "Attention To:"):

| Attention to: James Drury |
|---|

Address 2:

| 4th Floor, LM Business Centre, Fish Lock Road |
|---|

Address 3:

|  |
|---|

Address 4:

|  |
|---|

City:

| Road Town, Tortola |
|---|

State or Province (use 2-letter abbreviation if US or Canada):

| British Virgin Islands |
|---|

Zip Code | Postal Code:

| VG-11100 |
|---|

**Is the creditor address outside of the US?**

○ No
◉ Yes

Country (if outside of the US):

British Virgin Islands

Contact phone:

+1 284 346 9600

Contact email:

james.drury@interpathadvisory.vg

**Should payments go to a different address?**

◉ No
○ Yes

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

◉ No
○ Yes

Claim number on court claims registry (if known)

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
○ Yes

Who made the earlier filing?

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

_____

**\* 7. How much is the claim?** (If your claim is based on cryptocurrency holdings, please provide the number of units associated with your claim. Do not provide a value for your cryptocurrency holding claim in United States Dollars. Only provide a United States Dollar value for your claim if your claim is based in United States Dollars.)

A. To the extent you assert a claim that is denominated in US Dollars, list the value of the claim in US Dollars as of the date the case was filed (January 19, 2023):

| $ | Unliquidated |

**Does this amount include interest or other charges?**

◉ No
○ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

B. With regard to coins loaned to the Debtors, list the number of each type of coin loaned to the Debtors as of the date the case was filed (January, 19, 2023).

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| 0x (ZRX) | | Livepeer (LPT) | |
| 1inch Network (1INCH) | | Loopring (LRC) | |
| Aave (AAVE) | | Maker (MKR) | |
| Alchemix (ALCX) | | Moonbeam (GLMR) | |
| Algorand (ALGO) | | Multi Collateral Dai (DAI) | |
| Amp (AMP) | | Near (NEAR) | |
| Ankr (ANKR) | | Neo (NEO) | |
| ApeCoin (APE) | | Orchid (OXT) | |
| Axie Infinity (AXS) | | PAX Gold (PAXG) | |
| Balancer (BAL) | | Polkadot (DOT) | |
| Bancor (BNT) | | Polygon (MATIC) | |
| Basic Attention Token (BAT) | | Rally (RLY) | |
| Binance Coin (BNB) | | Ren (REN) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin (BTC) | | Ribbon Finance (RBN) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin Cash (BCH) | | Serum (SRM) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin SV (BSV) | | Shiba Inu (SHIB) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Cardano (ADA) | | SKALE (SKL) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Chainlink (LINK) | | Solana (SOL) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Chiliz (CHZ) | | Stellar (XLM) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Compound (COMP) | | Storj (STORJ) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Cosmos (ATOM) | | SushiSwap (SUSHI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Curve DAO Token (CRV) | | Synthetix (SNX) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Decentraland (MANA) | | Terra Classic (LUNC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| DogeCoin (DOGE) | | TerraClassicUSD (USTC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| EOS (EOS) | | Tether (USDT) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Ethereum (ETH) | | Tezos (XTZ) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Ethereum Classic (ETC) | | The Graph (GRT) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| EthereumPoW (ETHW) | | The Sandbox (SAND) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Fantom (FTM) | | Tokemak (TOKE) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Fetch.ai (FET) | | Tron (TRX) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Filecoin (FIL) | | UMA (UMA) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Flow (FLOW) | | Uniswap (UNI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Gemini Dollar (GUSD) | | USD (USD) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Helium (HNT) | | USD Coin (USDC) | |
| Horizen (ZEN) | | Wrapped Bitcoin (WBTC) | |
| Injective (INJ) | | Wrapped Luna (WLUNA) | |
| Kusama (KSM) | | XRP (XRP) | |
| Kyber Network Crystal v2 (KNC) | | Yearn.Finance (YFI) | |
| Litecoin (LTC) | | Zcash (ZEC) | |
| BIT (BitDAO) | | | |

Do you hold additional coins in your account not listed above?

○ No
○ Yes

Genesis Proof of Claim Form

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

Claims from loan agreements and/or investments between Debtor, creditor and/or creditor's affiliates

Are you a current or former Gemini Trust Company, LLC user?

○ No
○ Yes

If yes, is your claim related to any loans you made through the Gemini Earn Program?

○ No
○ Yes

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

☐ Motor vehicle

☐ Other

Describe:

Basis for perfection:

Value of property (all amounts in US $ dollars):

Amount of the claim that is secured (all amounts in US $ dollars):

Amount of the claim that is unsecured (all amounts in US $ dollars):

Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):

Interest Rate Type:                                    Annual Interest Rate (when case was filed) %:

○ Fixed
○ Variable

**10. Is this claim based on a lease?**

◉ No
○ Yes

Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property. (If the property is cryptocurrency, identify each type of cryptocurrency, the respective number of units of each type of cryptocurrency, and whether the property was posted by you or the Debtor):

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

◉ No

○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

◉ No

○ Yes.

**Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim (all amounts in US $ dollars).**

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ⦿ I am the creditor.
- ◯ I am the creditor's attorney or authorized agent.
- ◯ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ◯ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

## Executed on date (Calculated in UTC)

05/18/2023

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

James Kenneth Drury

Title/Company:

Address 1:

4th Floor, LM Business Centre, Fish Lock Road

Address 2:

Road Town

City:

Tortola

State or Province (use 2-letter abbreviation if US or Canada):

British Virgin Islands

Zip Code | Postal Code:

VG-1110

Is this address outside of the US?

○ No
◉ Yes

Country (if outside of the US):

British Virgin Islands

Contact phone:

+1 284 346 9600

Contact email:

james.drury@interpathadvisory.vg

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

○ I have supporting documentation
◉ I do not have supporting documentation

## Confirmation of Submission

### Your Form has been successfully submitted...

DOCUMENT ID

c7efcaa45803ff017c7feef32b0ba084a95346da

Submitted Date Time

2023-05-18T18:26:47.855Z

Status

Submitted

CONFIRMATION ID

3315-61-OWWYM-949282266

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

Orbeon Forms 2022.1.3.202304130216 PE

**Exhibit C-3**

**Claim No. 325**

# Genesis Proof of Claim Form

## Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

[                                                                    ]

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

## Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed (January 19, 2023). That date is on the notice of bankruptcy (Form 309) that you received.**

☐  Check here to see further instructions on completing your claim form:

## Debtor Selection

**Fill in this information to identify the case (Select only one Debtor per claim form):**

- ◉ Genesis Global Holdco, LLC (Case No. 23-10063)
- ○ Genesis Global Capital, LLC (Case No. 23-10064)
- ○ Genesis Asia Pacific PTE. LTD. (Case No. 23-10065)

## Part 1: Identify the Claim

### 1. Who is the current Creditor?
Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

- ◉ No
- ○ Yes

Creditor Name

| Three Arrows Fund, Ltd (in Liquidation) |
|---|

Other names the creditor used with the debtor

|  |
|---|

### 2. Has this claim been acquired from someone else?

- ◉ No
- ○ Yes

From whom?

|  |
|---|

### 3. Where should notices and payments to the Creditor be sent?
[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

| Three Arrows Fund, Ltd (in Liquidation) |
|---|

Address 1 (Street address, "Care of:", or "Attention To:"):

| Attention to: James Drury |
|---|

Address 2:

| 4th Floor, LM Business Centre, Fish Lock Road |
|---|

Address 3:

|  |
|---|

Address 4:

|  |
|---|

City:

| Road Town, Tortola |
|---|

State or Province (use 2-letter abbreviation if US or Canada):

| British Virgin Islands |
|---|

Zip Code | Postal Code:

| VG-11100 |
|---|

**Is the creditor address outside of the US?**

- ○ No
- ◉ Yes

Genesis Proof of Claim Form

Country (if outside of the US):

British Virgin Islands

Contact phone:

+1 284 346 9600

Contact email:

james.drury@interpathadvisory.vg

**Should payments go to a different address?**

◉ No
○ Yes

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

◉ No
○ Yes

Claim number on court claims registry (if known)

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
○ Yes

Who made the earlier filing?

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

|  |
|--|

**\* 7. How much is the claim?** (If your claim is based on cryptocurrency holdings, please provide the number of units associated with your claim. Do not provide a value for your cryptocurrency holding claim in United States Dollars. Only provide a United States Dollar value for your claim if your claim is based in United States Dollars.)

A. To the extent you assert a claim that is denominated in US Dollars, list the value of the claim in US Dollars as of the date the case was filed (January 19, 2023):

| $ | Unliquidated |
|---|--------------|

**Does this amount include interest or other charges?**

◉ No
○ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

B. With regard to coins loaned to the Debtors, list the number of each type of coin loaned to the Debtors as of the date the case was filed (January, 19, 2023).

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| 0x (ZRX) | | Livepeer (LPT) | |
| 1inch Network (1INCH) | | Loopring (LRC) | |
| Aave (AAVE) | | Maker (MKR) | |
| Alchemix (ALCX) | | Moonbeam (GLMR) | |
| Algorand (ALGO) | | Multi Collateral Dai (DAI) | |
| Amp (AMP) | | Near (NEAR) | |
| Ankr (ANKR) | | Neo (NEO) | |
| ApeCoin (APE) | | Orchid (OXT) | |
| Axie Infinity (AXS) | | PAX Gold (PAXG) | |
| Balancer (BAL) | | Polkadot (DOT) | |
| Bancor (BNT) | | Polygon (MATIC) | |
| Basic Attention Token (BAT) | | Rally (RLY) | |
| Binance Coin (BNB) | | Ren (REN) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin (BTC) | | Ribbon Finance (RBN) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin Cash (BCH) | | Serum (SRM) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin SV (BSV) | | Shiba Inu (SHIB) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Cardano (ADA) | | SKALE (SKL) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Chainlink (LINK) | | Solana (SOL) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Chiliz (CHZ) | | Stellar (XLM) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Compound (COMP) | | Storj (STORJ) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Cosmos (ATOM) | | SushiSwap (SUSHI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Curve DAO Token (CRV) | | Synthetix (SNX) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Decentraland (MANA) | | Terra Classic (LUNC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| DogeCoin (DOGE) | | TerraClassicUSD (USTC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| EOS (EOS) | | Tether (USDT) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Ethereum (ETH) | | Tezos (XTZ) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Ethereum Classic (ETC) | | The Graph (GRT) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| EthereumPoW (ETHW) | | The Sandbox (SAND) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Fantom (FTM) | | Tokemak (TOKE) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Fetch.ai (FET) | | Tron (TRX) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Filecoin (FIL) | | UMA (UMA) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Flow (FLOW) | | Uniswap (UNI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Gemini Dollar (GUSD) | | USD (USD) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Helium (HNT) | | USD Coin (USDC) | |
| Horizen (ZEN) | | Wrapped Bitcoin (WBTC) | |
| Injective (INJ) | | Wrapped Luna (WLUNA) | |
| Kusama (KSM) | | XRP (XRP) | |
| Kyber Network Crystal v2 (KNC) | | Yearn.Finance (YFI) | |
| Litecoin (LTC) | | Zcash (ZEC) | |
| BIT (BitDAO) | | | |

Do you hold additional coins in your account not listed above?

○ No
○ Yes

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

Claims from loan agreements and/or investments between Debtor, creditor and/or creditor's affiliates

Are you a current or former Gemini Trust Company, LLC user?

◉ No
○ Yes

If yes, is your claim related to any loans you made through the Gemini Earn Program?

○ No
○ Yes

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

☐ Motor vehicle

☐ Other

Describe:

Basis for perfection:

Value of property (all amounts in US $ dollars):

Amount of the claim that is secured (all amounts in US $ dollars):

Amount of the claim that is unsecured (all amounts in US $ dollars):

Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):

Interest Rate Type:

○ Fixed
○ Variable

Annual Interest Rate (when case was filed) %:

**10. Is this claim based on a lease?**

◉ No
○ Yes

Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property. (If the property is cryptocurrency, identify each type of cryptocurrency, the respective number of units of each type of cryptocurrency, and whether the property was posted by you or the Debtor):

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

◉ No

○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.
S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or
services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before
the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.
11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

◉ No

○ Yes.

**Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim (all amounts in US $ dollars).**

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ⦿ I am the creditor.
- ○ I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

## Executed on date (Calculated in UTC)

05/18/2023

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

James Kenneth Drury

Title/Company:

Joint Liquidator

Address 1:

4th Floor, LM Business Centre, Fish Lock Road

Address 2:

Road Town

City:

Tortola

State or Province (use 2-letter abbreviation if US or Canada):

British Virgin Islands

Zip Code | Postal Code:

VG-1110

Is this address outside of the US?

○ No
◉ Yes

Country (if outside of the US):

British Virgin Islands

Contact phone:

+1 284 346 9600

Contact email:

james.drury@interpathadvisory.vg

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

○ I have supporting documentation
◉ I do not have supporting documentation

## Confirmation of Submission

**Your Form has been successfully submitted...**

| DOCUMENT ID | Submitted Date Time |
|---|---|
| 429deac2076b57644016625409e51886a6c087eb | 2023-05-18T18:27:32.82Z |

| Status | CONFIRMATION ID |
|---|---|
| Submitted | 3315-61-VESXP-570501257 |

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

Orbeon Forms 2022.1.3.202304130216 PE

**<u>Exhibit C-4</u>**

**Claim No. 468**

# Genesis Proof of Claim Form

## Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

If EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

## Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed (January 19, 2023). That date is on the notice of bankruptcy (Form 309) that you received.**

☑ Check here to see further instructions on completing your claim form:

**Claim Number: 468**

## Debtor Selection

**Fill in this information to identify the case (Select only one Debtor per claim form):**

- ⦿ Genesis Global Holdco, LLC (Case No. 23-10063)
- ◯ Genesis Global Capital, LLC (Case No. 23-10064)
- ◯ Genesis Asia Pacific PTE. LTD. (Case No. 23-10065)

## Part 1: Identify the Claim

### 1. Who is the current Creditor?

Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

- ⦿ No
- ◯ Yes

Creditor Name

| Three Arrows Fund, Ltd (in Liquidation) |
| --- |

Other names the creditor used with the debtor

|  |
| --- |

### 2. Has this claim been acquired from someone else?

- ⦿ No
- ◯ Yes

From whom?

|  |
| --- |

### 3. Where should notices and payments to the Creditor be sent?

[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

| Three Arrows Fund, Ltd (in Liquidation) |
| --- |

Address 1 (Street address, "Care of:", or "Attention To:"):

| Attention to: James Drury |
| --- |

Address 2:

|  |
| --- |

Address 3:

|  |
| --- |

Address 4:

|  |
| --- |

City:

| Road Town, Tortola |
| --- |

State or Province (use 2-letter abbreviation if US or Canada):

| British Virgin Islands |
| --- |

Zip Code | Postal Code:

| VG-11100 |
| --- |

**Is the creditor address outside of the US?**

- ◯ No
- ⦿ Yes

Country (if outside of the US):

British Virgin Islands

Contact phone:

+1 284 346 9600

Contact email:

james.drury@interpathadvisory.vg

**Should payments go to a different address?**

⦿ No
◯ Yes

**Would you like to add any additional noticing addresses?**

⦿ No
◯ Yes

**4. Does this claim amend one already filed?**

⦿ No
◯ Yes

Claim number on court claims registry (if known)

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

⦿ No
◯ Yes

Who made the earlier filing?

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

|  |
|--|

**\* 7. How much is the claim?** (If your claim is based on cryptocurrency holdings, please provide the number of units associated with your claim. Do not provide a value for your cryptocurrency holding claim in United States Dollars. Only provide a United States Dollar value for your claim if your claim is based in United States Dollars.)

A. To the extent you assert a claim that is denominated in US Dollars, list the value of the claim in US Dollars as of the date the case was filed (January 19, 2023):

| $ | Unliquidated |
|---|--------------|

**Does this amount include interest or other charges?**

◉ No
○ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

B. With regard to coins loaned to the Debtors, list the number of each type of coin loaned to the Debtors as of the date the case was filed (January, 19, 2023).

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| 0x (ZRX) | | Livepeer (LPT) | |
| 1inch Network (1INCH) | | Loopring (LRC) | |
| Aave (AAVE) | | Maker (MKR) | |
| Alchemix (ALCX) | | Moonbeam (GLMR) | |
| Algorand (ALGO) | | Multi Collateral Dai (DAI) | |
| Amp (AMP) | | Near (NEAR) | |
| Ankr (ANKR) | | Neo (NEO) | |
| ApeCoin (APE) | | Orchid (OXT) | |
| Axie Infinity (AXS) | | PAX Gold (PAXG) | |
| Balancer (BAL) | | Polkadot (DOT) | |
| Bancor (BNT) | | Polygon (MATIC) | |
| Basic Attention Token (BAT) | | Rally (RLY) | |
| Binance Coin (BNB) | | Ren (REN) | |

Genesis Proof of Claim Form

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin (BTC) | | Ribbon Finance (RBN) | |
| Bitcoin Cash (BCH) | | Serum (SRM) | |
| Bitcoin SV (BSV) | | Shiba Inu (SHIB) | |
| Cardano (ADA) | | SKALE (SKL) | |
| Chainlink (LINK) | | Solana (SOL) | |
| Chiliz (CHZ) | | Stellar (XLM) | |
| Compound (COMP) | | Storj (STORJ) | |
| Cosmos (ATOM) | | SushiSwap (SUSHI) | |
| Curve DAO Token (CRV) | | Synthetix (SNX) | |
| Decentraland (MANA) | | Terra Classic (LUNC) | |
| DogeCoin (DOGE) | | TerraClassicUSD (USTC) | |
| EOS (EOS) | | Tether (USDT) | |
| Ethereum (ETH) | | Tezos (XTZ) | |
| Ethereum Classic (ETC) | | The Graph (GRT) | |
| EthereumPoW (ETHW) | | The Sandbox (SAND) | |
| Fantom (FTM) | | Tokemak (TOKE) | |
| Fetch.ai (FET) | | Tron (TRX) | |
| Filecoin (FIL) | | UMA (UMA) | |
| Flow (FLOW) | | Uniswap (UNI) | |
| Gemini Dollar (GUSD) | | USD (USD) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Helium (HNT) | | USD Coin (USDC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Horizen (ZEN) | | Wrapped Bitcoin (WBTC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Injective (INJ) | | Wrapped Luna (WLUNA) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Kusama (KSM) | | XRP (XRP) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Kyber Network Crystal v2 (KNC) | | Yearn.Finance (YFI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Litecoin (LTC) | | Zcash (ZEC) | |

| Coin List | Count |
|---|---|
| BIT (BitDAO) | |

Do you hold additional coins in your account not listed above?

○ No
○ Yes

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

Loan agreements and/or investments (see addendum)

Are you a current or former Gemini Trust Company, LLC user?

○ No
○ Yes

If yes, is your claim related to any loans you made through the Gemini Earn Program?

○ No
○ Yes

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

☐ Motor vehicle

☐ Other

Describe:

**Basis for perfection:**

**Value of property (all amounts in US $ dollars):**

**Amount of the claim that is secured (all amounts in US $ dollars):**

**Amount of the claim that is unsecured (all amounts in US $ dollars):**

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):**

Interest Rate Type:                                          Annual Interest Rate (when case was filed) %:

○ Fixed
○ Variable

**10. Is this claim based on a lease?**

◉ No
○ Yes

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).**

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property. (If the property is cryptocurrency, identify each type of cryptocurrency, the respective number of units of each type of cryptocurrency, and whether the property was posted by you or the Debtor):

Genesis Proof of Claim Form

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

◉ No

○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.
S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or
services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before
the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.
11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

◉ No

○ Yes.

**Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which
the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim (all amounts in US $ dollars).**

Genesis Proof of Claim Form

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ● I am the creditor.
- ○ I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

## Executed on date (Calculated in UTC)

| 05/22/2023 |
|---|

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

| James Kenneth Drury |
|---|

Title/Company:

| Joint Liquidator |
|---|

Address 1:

4th Floor, LM Business Centre, Fish Lock Road

Address 2:

Road Town

City:

Tortola

State or Province (use 2-letter abbreviation if US or Canada):

British Virgin Islands

Zip Code | Postal Code:

VG-1110

Is this address outside of the US?

○ No
● Yes

Country (if outside of the US):

British Virgin Islands

Contact phone:

+1 284 346 9600

Contact email:

james.drury@interpathadvisory.vg

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

● I have supporting documentation
○ I do not have supporting documentation

**Attach a single PDF attachment that is less than 5 megabytes in size**

| TAFL Proof of Claim Addendum.pdf | 179 KB |

**Attachment Filename**

TAFL Proof of Claim Addendum.pdf

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, et al., | Chapter 11<br><br>Case No.: 23-10063 (SHL)<br><br>Jointly Administered |

<u>**ADDENDUM TO PROOF OF CLAIM OF THREE ARROWS FUND, LTD.**</u>

    1.      The Joint Liquidators ("**Joint Liquidators**") of the Three Arrows Fund, Ltd. ("**TAFL**"), based on their authority to recover all assets of TAFL, bring claims against Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific PTE, Ltd. and their affiliates and assigns (collectively, "**Genesis Lenders**"), for damages associated with a Bitcoin commodity swap transactions with Genesis Lenders (that was executed by Three Arrows Capital Ltd. (**"3AC"**)) in order to participate in the Grayscale Bitcoin Trust ("GBTC") and other trusts managed by non-debtor Grayscale Investments ("Grayscale") and distributed by non-debtor Genesis Global Trading, Inc. **"Genesis Trading"**).  For sake of readability, the claims below refer simply to GBTC and Bitcoin but apply to additional Grayscale-managed trusts invested in by or for TAFL and others. The damages— to be fully determined in the future—stem from the Genesis Lenders' failure to register as swap dealers under the Commodity Exchange Act (**"CEA"**) and for participating in a manipulative device or contrivance in violation of the CEA.

    2.      Grayscale pitched representatives of TAFL and others on trying to take advantage of a premium to Net Asset Value ("**NAV**") exhibited by GBTC and other crypto trusts issued and managed by Grayscale Investments (the "**Grayscale Arbitrage**") prior to on or about March 2021. The Grayscale Arbitrage worked as follows: Grayscale, the manager of GBTC, the Genesis Lenders, "**Genesis Lenders"**) and Genesis Global Trading, Inc. ("Genesis Trading") jointly marketed to representatives TAFL and others that they could:

    (1)   enter into Bitcoin swaps with Genesis Lenders under which counterparties received Bitcoin at the outset of the swap;

1

(2)   purchase privately-issued shares from GBTC in return for the Bitcoin received from Genesis Lenders, which shares were issued by GBTC to Genesis Trading as the sole Authorized Participant of GBTC and then transferred on to its counterparties;

(3)   wait 6 months under SEC Rule 144, at which point Grayscale would remove legends from the privately-issued shares and allow counterparties to sell their GBTC shares publicly on the OTC markets at the hoped-for premium to NAV; and

(4)   Counterparties would transfer  back the Bitcoin received under the swap to Genesis Lenders plus an additional amount of Bitcoin that essentially reflected interest.

3.      The Genesis Lenders promoted and furthered the Grayscale Arbitrage by entering into Bitcoin commodity swaps with counterparties even though neither of the Genesis Lenders was a swap dealer registered with the CFTC.

4.      The Genesis Lenders disguised the fact that they were entering into commodity swaps with counterparties by documenting the transactions under a bespoke document made for the crypto lending market—The Master Digital Currency Loan Agreement.  The Genesis Lenders treated those transactions as though they were entirely unregulated.

5.      The Genesis Lenders violated the Commodity Exchange Act ("**CEA")** by not registering as swap dealers. Each loan of Bitcoin allowed an investor to receive X amount of Bitcoin that it could use to invest in GBTC.  Upon redemption, an investor would be required to transfer back X+Y amount of Bitcoin, with the Y reflecting interest. Such transactions allowed investors to buy GBTC and enter into the Grayscale Arbitrage. The transaction described above is a swap under the CEA.

6.      Section 1a(47) of the CEA defines a swap, in relevant part, as —

any agreement, contract, or transaction . . . (iii) that provides on an executory basis for the exchange, on a fixed or contingent basis, of 1 or more payments based on the value or

level of 1 or more interest or other rates, currencies, commodities, securities, instruments of indebtedness, indices, quantitative measures, or other financial or economic interests or property of any kind, or any interest therein or based on the value thereof, and that transfers, as between the parties to the transaction, in whole or in part, the financial risk associated with a future change in any such value or level without also conveying a current or future direct or indirect ownership interest in an asset (including any enterprise or investment pool) or liability that incorporates the financial risk so transferred, including any agreement, contract, or transaction commonly known as . . . (XXII) a commodity swap.

7.      The CFTC has said that Bitcoin is a commodity. The Bitcoin transaction that Grayscale and the Genesis Lenders pitched and entered into with counterparties was a commodity swap. It clearly falls under the term "commodity swap" in the definition. The transaction also is an executory contract based on the value of a commodity where counterparties bore the financial risk associated with a future change in any such value because counterparties had to buy back an amount of Bitcoin based on the original amount plus interest at the prevailing market rate to settle the swap.

8.      Section 4s(a)(1), of the CEA says, "It shall be unlawful for any person to act as a swap dealer unless the person is registered as a swap dealer with the Commission." Section 4d(g) says, in relevant part, "It shall be unlawful for any person to be an introducing broker unless such person shall have registered under this chapter with the Commission as an introducing broker." Section 1a(31) defines an introducing broker, in relevant part, as "any person . . . engaged in soliciting or accepting orders for (aa) the purchase or sale of any commodity for future delivery, security futures product, or swap."

9.      Section 22 of the CEA says, in relevant part:

Any person (other than a registered entity or registered futures association) who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in

3

subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person . . . (B) who made through such person . . . any swap . . . (C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of . . . a swap . . . (D) who purchased or sold a . . . swap if the violation constitutes . . . (i) the use or employment of, or an attempt to use or employ, in connection with a swap . . . any manipulative device or contrivance in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after July 21, 2010.

10.     CFTC Rule 180.1 is modeled on SEC Rule 10b-5 and broadly prohibits, among other things, fraud in connection with swaps.

11.     TAFL suffered actual damages from the Bitcoin and other digital asset swaps with Genesis Lenders, and those entities are liable to TAFL for their violations of the CEA.  Actual damages in the context of dealing with unregistered swap entities should be calculated based on the notional amount of the swaps that a counterparty entered into because, if Grayscale and the Genesis Lenders had complied with the CEA, they would not have marketed or entered into the swaps at all.

12.     This proof of claim is filed, inter alia, to protect the Joint Liquidators and TAFL from any forfeiture of all rights it may have. The Joint Liquidators and TAFL reserve the right to amend and/or supplement this proof of claim at any time and in any manner and/or to file additional proofs of claim for any additional claims which may be based on the same or additional documents or grounds of liability. This includes, but is not limited to, the right to amend this proof of claim to modify the amount of its claim and/or to include additional amounts due to the TAFL that may continue to accrue, based upon the facts in the record now and as further facts may be established in the future.

13.     Filing this proof of claim is not (a) waiver or release of the Joint Liquidator's or TAFL's rights against any person, entity or property; (b) waiver or release of the Joint Liquidator's and TAFL's right to have any and all non-core matters determined by a state court or United States District Court, as applicable; (c) an election of remedy; (d) a waiver or release of any rights which the Joint Liquidators and TAFL may have to a jury trial; or

4

(e) a waiver of the right to move to withdraw the reference in the future with respect to the subject matter of this proof of claim, any objection thereto or any other proceedings which may be commenced in this case against or otherwise involving Joint Liquidators or TAFL.

14.    Notwithstanding anything herein to the contrary, this proof of claim is not intended to assert rights against or on behalf of 3AC nor should be construed as intending to control or obtain possession of any property, right or asset of 3AC, all of which remain with 3AC unless otherwise adjudicated by a court of competent jurisdiction.

## Confirmation of Submission

**Your Form has been successfully submitted...**

| DOCUMENT ID | Submitted Date Time |
|---|---|
| 351c460abff4e4cc40ff977d4986c5df6c6b6f42 | 2023-05-22T19:50:21.337Z |

| Status | CONFIRMATION ID |
|---|---|
| Submitted | 3315-61-UWQDK-469770767 |

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

Orbeon Forms 2022.1.3.202304130216 PE

**<u>Exhibit C-5</u>**

**Claim No. 488**

Genesis Proof of Claim Form

# Genesis Proof of Claim Form

## Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

## Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed (January 19, 2023). That date is on the notice of bankruptcy (Form 309) that you received.**

☐ Check here to see further instructions on completing your claim form:

**Claim Number: 488**

Genesis Proof of Claim Form

## Debtor Selection

**Fill in this information to identify the case (Select only one Debtor per claim form):**

○ Genesis Global Holdco, LLC (Case No. 23-10063)
○ Genesis Global Capital, LLC (Case No. 23-10064)
◉ Genesis Asia Pacific PTE. LTD. (Case No. 23-10065)

## Part 1: Identify the Claim

### 1. Who is the current Creditor?

Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

◉ No
○ Yes

Creditor Name

| Three Arrows Fund, Ltd (in Liquidation) |

Other names the creditor used with the debtor

|  |

### 2. Has this claim been acquired from someone else?

◉ No
○ Yes

From whom?

|  |

### 3. Where should notices and payments to the Creditor be sent?

[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

Where should notices to the Creditor be sent?

Name:

| Three Arrows Fund, Ltd (in Liquidation) |

Address 1 (Street address, "Care of:", or "Attention To:"):

| Attention to: James Drury |

Address 2:

| 4th Floor, LM Business Centre, Fish Lock Road |

Address 3:

|  |

Address 4:

|  |

City:

| Road Town, Tortola |

State or Province (use 2-letter abbreviation if US or Canada):

| British Virgin Islands |

Zip Code | Postal Code:

| VG-11100 |

**Is the creditor address outside of the US?**

○ No
◉ Yes

Country (if outside of the US):

British Virgin Islands

Contact phone:

+1 284 346 9600

Contact email:

james.drury@interpathadvisory.vg

**Should payments go to a different address?**

◉ No
○ Yes

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

◉ No
○ Yes

Claim number on court claims registry (if known)

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
○ Yes

Who made the earlier filing?

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

[                                                                                          ]

**\* 7. How much is the claim?** (If your claim is based on cryptocurrency holdings, please provide the number of units associated with your claim. Do not provide a value for your cryptocurrency holding claim in United States Dollars. Only provide a United States Dollar value for your claim if your claim is based in United States Dollars.)

A. To the extent you assert a claim that is denominated in US Dollars, list the value of the claim in US Dollars as of the date the case was filed (January 19, 2023):

$ [          ]  Unliquidated

**Does this amount include interest or other charges?**

◉ No
○ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

B. With regard to coins loaned to the Debtors, list the number of each type of coin loaned to the Debtors as of the date the case was filed (January, 19, 2023).

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| 0x (ZRX) | | Livepeer (LPT) | |
| 1inch Network (1INCH) | | Loopring (LRC) | |
| Aave (AAVE) | | Maker (MKR) | |
| Alchemix (ALCX) | | Moonbeam (GLMR) | |
| Algorand (ALGO) | | Multi Collateral Dai (DAI) | |
| Amp (AMP) | | Near (NEAR) | |
| Ankr (ANKR) | | Neo (NEO) | |
| ApeCoin (APE) | | Orchid (OXT) | |
| Axie Infinity (AXS) | | PAX Gold (PAXG) | |
| Balancer (BAL) | | Polkadot (DOT) | |
| Bancor (BNT) | | Polygon (MATIC) | |
| Basic Attention Token (BAT) | | Rally (RLY) | |
| Binance Coin (BNB) | | Ren (REN) | |

Genesis Proof of Claim Form

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Bitcoin (BTC) | | Ribbon Finance (RBN) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Bitcoin Cash (BCH) | | Serum (SRM) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Bitcoin SV (BSV) | | Shiba Inu (SHIB) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Cardano (ADA) | | SKALE (SKL) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Chainlink (LINK) | | Solana (SOL) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Chiliz (CHZ) | | Stellar (XLM) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Compound (COMP) | | Storj (STORJ) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Cosmos (ATOM) | | SushiSwap (SUSHI) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Curve DAO Token (CRV) | | Synthetix (SNX) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Decentraland (MANA) | | Terra Classic (LUNC) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| DogeCoin (DOGE) | | TerraClassicUSD (USTC) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| EOS (EOS) | | Tether (USDT) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Ethereum (ETH) | | Tezos (XTZ) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Ethereum Classic (ETC) | | The Graph (GRT) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| EthereumPoW (ETHW) | | The Sandbox (SAND) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Fantom (FTM) | | Tokemak (TOKE) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Fetch.ai (FET) | | Tron (TRX) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Filecoin (FIL) | | UMA (UMA) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Flow (FLOW) | | Uniswap (UNI) | |

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
| Gemini Dollar (GUSD) | | USD (USD) | |

Genesis Proof of Claim Form

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Helium (HNT) | | USD Coin (USDC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Horizen (ZEN) | | Wrapped Bitcoin (WBTC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Injective (INJ) | | Wrapped Luna (WLUNA) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Kusama (KSM) | | XRP (XRP) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Kyber Network Crystal v2 (KNC) | | Yearn.Finance (YFI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Litecoin (LTC) | | Zcash (ZEC) | |

| Coin List | Count |
|---|---|
| BIT (BitDAO) | |

Do you hold additional coins in your account not listed above?

○ No
○ Yes

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

Loan agreements and/or investments (see addendum)

Are you a current or former Gemini Trust Company, LLC user?

○ No
○ Yes

If yes, is your claim related to any loans you made through the Gemini Earn Program?

○ No
○ Yes

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

☐ Motor vehicle

☐ Other

Describe:

**Basis for perfection:**

**Value of property (all amounts in US $ dollars):**

**Amount of the claim that is secured (all amounts in US $ dollars):**

**Amount of the claim that is unsecured (all amounts in US $ dollars):**

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):**

Interest Rate Type:                           Annual Interest Rate (when case was filed) %:

○ Fixed
○ Variable

**10. Is this claim based on a lease?**

◉ No
○ Yes

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).**

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property. (If the property is cryptocurrency, identify each type of cryptocurrency, the respective number of units of each type of cryptocurrency, and whether the property was posted by you or the Debtor):

Genesis Proof of Claim Form

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

⦿ No

○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U. S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

⦿ No

○ Yes.

**Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim (all amounts in US $ dollars).**

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ◉ I am the creditor.
- ○ I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

## Executed on date (Calculated in UTC)

| 05/22/2023 |

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

| James Kenneth Drury |

Title/Company:

| Joint Liquidator |

Address 1:

4th Floor, LM Business Centre, Fish Lock Road

Address 2:

Road Town

City:

Tortola

State or Province (use 2-letter abbreviation if US or Canada):

British Virgin Islands

Zip Code | Postal Code:

VG-1110

Is this address outside of the US?

○ No
◉ Yes

Country (if outside of the US):

British Virgin Islands

Contact phone:

+1 284 346 9600

Contact email:

james.drury@interpathadvisory.vg

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

◉ I have supporting documentation
○ I do not have supporting documentation

**Attach a single PDF attachment that is less than 5 megabytes in size**

| 📄 TAFL Proof of Claim Addendum.pdf | 179 KB |

**Attachment Filename**

TAFL Proof of Claim Addendum.pdf

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, et al., | Chapter 11<br><br>Case No.: 23-10063 (SHL)<br><br>Jointly Administered |

## ADDENDUM TO PROOF OF CLAIM OF THREE ARROWS FUND, LTD.

1.       The Joint Liquidators ("**Joint Liquidators**") of the Three Arrows Fund, Ltd. ("**TAFL**"), based on their authority to recover all assets of TAFL, bring claims against Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific PTE, Ltd. and their affiliates and assigns (collectively, "**Genesis Lenders**"), for damages associated with a Bitcoin commodity swap transactions with Genesis Lenders (that was executed by Three Arrows Capital Ltd. ("**3AC**")) in order to participate in the Grayscale Bitcoin Trust ("GBTC") and other trusts managed by non-debtor Grayscale Investments ("Grayscale") and distributed by non-debtor Genesis Global Trading, Inc. "**Genesis Trading**").  For sake of readability, the claims below refer simply to GBTC and Bitcoin but apply to additional Grayscale-managed trusts invested in by or for TAFL and others. The damages— to be fully determined in the future—stem from the Genesis Lenders' failure to register as swap dealers under the Commodity Exchange Act ("**CEA**") and for participating in a manipulative device or contrivance in violation of the CEA.

2.       Grayscale pitched representatives of TAFL and others on trying to take advantage of a premium to Net Asset Value ("**NAV**") exhibited by GBTC and other crypto trusts issued and managed by Grayscale Investments (the "**Grayscale Arbitrage**") prior to on or about March 2021. The Grayscale Arbitrage worked as follows: Grayscale, the manager of GBTC, the Genesis Lenders, "**Genesis Lenders**") and Genesis Global Trading, Inc. ("Genesis Trading") jointly marketed to representatives TAFL and others that they could:

(1)   enter into Bitcoin swaps with Genesis Lenders under which counterparties received Bitcoin at the outset of the swap;

1

(2)   purchase privately-issued shares from GBTC in return for the Bitcoin received from Genesis Lenders, which shares were issued by GBTC to Genesis Trading as the sole Authorized Participant of GBTC and then transferred on to its counterparties;

(3)   wait 6 months under SEC Rule 144, at which point Grayscale would remove legends from the privately-issued shares and allow counterparties to sell their GBTC shares publicly on the OTC markets at the hoped-for premium to NAV; and

(4)   Counterparties would transfer  back the Bitcoin received under the swap to Genesis Lenders plus an additional amount of Bitcoin that essentially reflected interest.

3.      The Genesis Lenders promoted and furthered the Grayscale Arbitrage by entering into Bitcoin commodity swaps with counterparties even though neither of the Genesis Lenders was a swap dealer registered with the CFTC.

4.      The Genesis Lenders disguised the fact that they were entering into commodity swaps with counterparties by documenting the transactions under a bespoke document made for the crypto lending market—The Master Digital Currency Loan Agreement.  The Genesis Lenders treated those transactions as though they were entirely unregulated.

5.      The Genesis Lenders violated the Commodity Exchange Act ("**CEA**") by not registering as swap dealers. Each loan of Bitcoin allowed an investor to receive X amount of Bitcoin that it could use to invest in GBTC.  Upon redemption, an investor would be required to transfer back X+Y amount of Bitcoin, with the Y reflecting interest. Such transactions allowed investors to buy GBTC and enter into the Grayscale Arbitrage. The transaction described above is a swap under the CEA.

6.      Section 1a(47) of the CEA defines a swap, in relevant part, as —

any agreement, contract, or transaction . . . (iii) that provides on an executory basis for the exchange, on a fixed or contingent basis, of 1 or more payments based on the value or

2

level of 1 or more interest or other rates, currencies, commodities, securities, instruments of indebtedness, indices, quantitative measures, or other financial or economic interests or property of any kind, or any interest therein or based on the value thereof, and that transfers, as between the parties to the transaction, in whole or in part, the financial risk associated with a future change in any such value or level without also conveying a current or future direct or indirect ownership interest in an asset (including any enterprise or investment pool) or liability that incorporates the financial risk so transferred, including any agreement, contract, or transaction commonly known as . . . (XXII) a commodity swap.

7.      The CFTC has said that Bitcoin is a commodity. The Bitcoin transaction that Grayscale and the Genesis Lenders pitched and entered into with counterparties was a commodity swap. It clearly falls under the term "commodity swap" in the definition. The transaction also is an executory contract based on the value of a commodity where counterparties bore the financial risk associated with a future change in any such value because counterparties had to buy back an amount of Bitcoin based on the original amount plus interest at the prevailing market rate to settle the swap.

8.      Section 4s(a)(1), of the CEA says, "It shall be unlawful for any person to act as a swap dealer unless the person is registered as a swap dealer with the Commission." Section 4d(g) says, in relevant part, "It shall be unlawful for any person to be an introducing broker unless such person shall have registered under this chapter with the Commission as an introducing broker." Section 1a(31) defines an introducing broker, in relevant part, as "any person . . . engaged in soliciting or accepting orders for (aa) the purchase or sale of any commodity for future delivery, security futures product, or swap."

9.      Section 22 of the CEA says, in relevant part:

Any person (other than a registered entity or registered futures association) who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in

3

subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person . . . (B) who made through such person . . . any swap . . . (C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of . . . a swap . . . (D) who purchased or sold a . . . swap if the violation constitutes . . . (i) the use or employment of, or an attempt to use or employ, in connection with a swap . . . any manipulative device or contrivance in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after July 21, 2010.

10.     CFTC Rule 180.1 is modeled on SEC Rule 10b-5 and broadly prohibits, among other things, fraud in connection with swaps.

11.     TAFL suffered actual damages from the Bitcoin and other digital asset swaps with Genesis Lenders, and those entities are liable to TAFL for their violations of the CEA. Actual damages in the context of dealing with unregistered swap entities should be calculated based on the notional amount of the swaps that a counterparty entered into because, if Grayscale and the Genesis Lenders had complied with the CEA, they would not have marketed or entered into the swaps at all.

12.     This proof of claim is filed, inter alia, to protect the Joint Liquidators and TAFL from any forfeiture of all rights it may have. The Joint Liquidators and TAFL reserve the right to amend and/or supplement this proof of claim at any time and in any manner and/or to file additional proofs of claim for any additional claims which may be based on the same or additional documents or grounds of liability. This includes, but is not limited to, the right to amend this proof of claim to modify the amount of its claim and/or to include additional amounts due to the TAFL that may continue to accrue, based upon the facts in the record now and as further facts may be established in the future.

13.     Filing this proof of claim is not (a) waiver or release of the Joint Liquidator's or TAFL's rights against any person, entity or property; (b) waiver or release of the Joint Liquidator's and TAFL's right to have any and all non-core matters determined by a state court or United States District Court, as applicable; (c) an election of remedy; (d) a waiver or release of any rights which the Joint Liquidators and TAFL may have to a jury trial; or

4

(e) a waiver of the right to move to withdraw the reference in the future with respect to the subject matter of this proof of claim, any objection thereto or any other proceedings which may be commenced in this case against or otherwise involving Joint Liquidators or TAFL.

14.      Notwithstanding anything herein to the contrary, this proof of claim is not intended to assert rights against or on behalf of 3AC nor should be construed as intending to control or obtain possession of any property, right or asset of 3AC, all of which remain with 3AC unless otherwise adjudicated by a court of competent jurisdiction.

## Confirmation of Submission

**Your Form has been successfully submitted...**

| DOCUMENT ID | Submitted Date Time |
|---|---|
| 0cdddddc5c550ade1b55392513bcb33ed0fbe2bc3 | 2023-05-22T19:49:43.792Z |

| Status | CONFIRMATION ID |
|---|---|
| Submitted | 3315-61-MJLUG-435457327 |

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

Orbeon Forms 2022.1.3.202304130216 PE

**<u>Exhibit C-6</u>**

**Claim No. 502**

Genesis Proof of Claim Form

# Genesis Proof of Claim Form

## Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

## Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed (January 19, 2023). That date is on the notice of bankruptcy (Form 309) that you received.**

☑ Check here to see further instructions on completing your claim form:

**Claim Number: 502**

Genesis Proof of Claim Form

## Debtor Selection

**Fill in this information to identify the case (Select only one Debtor per claim form):**

- ○ Genesis Global Holdco, LLC (Case No. 23-10063)
- ● Genesis Global Capital, LLC (Case No. 23-10064)
- ○ Genesis Asia Pacific PTE. LTD. (Case No. 23-10065)

## Part 1: Identify the Claim

**1. Who is the current Creditor?**

Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

- ● No
- ○ Yes

Creditor Name

| Three Arrows Fund, Ltd (in Liquidation) |
|---|

Other names the creditor used with the debtor

| |
|---|

**2. Has this claim been acquired from someone else?**

- ● No
- ○ Yes

From whom?

| |
|---|

**3. Where should notices and payments to the Creditor be sent?**

[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

| Three Arrows Fund, Ltd (in Liquidation) |
|---|

Address 1 (Street address, "Care of:", or "Attention To:"):

| Attention to: James Drury |
|---|

Address 2:

| |
|---|

Address 3:

| |
|---|

Address 4:

| |
|---|

City:

| Road Town, Tortola |
|---|

State or Province (use 2-letter abbreviation if US or Canada):

| British Virgin Islands |
|---|

Zip Code | Postal Code:

| VG-11100 |
|---|

**Is the creditor address outside of the US?**

- ○ No
- ● Yes

Country (if outside of the US):

British Virgin Islands

Contact phone:

+1 284 346 9600

Contact email:

james.drury@interpathadvisory.vg

**Should payments go to a different address?**

◉ No
◯ Yes

**Would you like to add any additional noticing addresses?**

◉ No
◯ Yes

**4. Does this claim amend one already filed?**

◉ No
◯ Yes

Claim number on court claims registry (if known)

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
◯ Yes

Who made the earlier filing?

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

[                                                                                          ]

**\* 7. How much is the claim?** (If your claim is based on cryptocurrency holdings, please provide the number of units associated with your claim. Do not provide a value for your cryptocurrency holding claim in United States Dollars. Only provide a United States Dollar value for your claim if your claim is based in United States Dollars.)

A. To the extent you assert a claim that is denominated in US Dollars, list the value of the claim in US Dollars as of the date the case was filed (January 19, 2023):

[ $ ] [ Unliquidated                                                                      ]

**Does this amount include interest or other charges?**

◉ No
○ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

B. With regard to coins loaned to the Debtors, list the number of each type of coin loaned to the Debtors as of the date the case was filed (January, 19, 2023).

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| 0x (ZRX) | | Livepeer (LPT) | |
| 1inch Network (1INCH) | | Loopring (LRC) | |
| Aave (AAVE) | | Maker (MKR) | |
| Alchemix (ALCX) | | Moonbeam (GLMR) | |
| Algorand (ALGO) | | Multi Collateral Dai (DAI) | |
| Amp (AMP) | | Near (NEAR) | |
| Ankr (ANKR) | | Neo (NEO) | |
| ApeCoin (APE) | | Orchid (OXT) | |
| Axie Infinity (AXS) | | PAX Gold (PAXG) | |
| Balancer (BAL) | | Polkadot (DOT) | |
| Bancor (BNT) | | Polygon (MATIC) | |
| Basic Attention Token (BAT) | | Rally (RLY) | |
| Binance Coin (BNB) | | Ren (REN) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin (BTC) | | Ribbon Finance (RBN) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin Cash (BCH) | | Serum (SRM) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Bitcoin SV (BSV) | | Shiba Inu (SHIB) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Cardano (ADA) | | SKALE (SKL) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Chainlink (LINK) | | Solana (SOL) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Chiliz (CHZ) | | Stellar (XLM) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Compound (COMP) | | Storj (STORJ) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Cosmos (ATOM) | | SushiSwap (SUSHI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Curve DAO Token (CRV) | | Synthetix (SNX) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Decentraland (MANA) | | Terra Classic (LUNC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| DogeCoin (DOGE) | | TerraClassicUSD (USTC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| EOS (EOS) | | Tether (USDT) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Ethereum (ETH) | | Tezos (XTZ) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Ethereum Classic (ETC) | | The Graph (GRT) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| EthereumPoW (ETHW) | | The Sandbox (SAND) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Fantom (FTM) | | Tokemak (TOKE) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Fetch.ai (FET) | | Tron (TRX) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Filecoin (FIL) | | UMA (UMA) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Flow (FLOW) | | Uniswap (UNI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Gemini Dollar (GUSD) | | USD (USD) | |

Genesis Proof of Claim Form

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Helium (HNT) | | USD Coin (USDC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Horizen (ZEN) | | Wrapped Bitcoin (WBTC) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Injective (INJ) | | Wrapped Luna (WLUNA) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Kusama (KSM) | | XRP (XRP) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Kyber Network Crystal v2 (KNC) | | Yearn.Finance (YFI) | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| Litecoin (LTC) | | Zcash (ZEC) | |

| Coin List | Count |
|---|---|
| BIT (BitDAO) | |

Do you hold additional coins in your account not listed above?

○ No
○ Yes

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

Loan agreements and/or investments (see addendum)

Are you a current or former Gemini Trust Company, LLC user?

○ No
○ Yes

If yes, is your claim related to any loans you made through the Gemini Earn Program?

○ No
○ Yes

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

☐ Motor vehicle

☐ Other

Describe:

Basis for perfection:

Value of property (all amounts in US $ dollars):

Amount of the claim that is secured (all amounts in US $ dollars):

Amount of the claim that is unsecured (all amounts in US $ dollars):

Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):

Interest Rate Type:

○ Fixed
○ Variable

Annual Interest Rate (when case was filed) %:

**10. Is this claim based on a lease?**

◉ No
○ Yes

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).**

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property. (If the property is cryptocurrency, identify each type of cryptocurrency, the respective number of units of each type of cryptocurrency, and whether the property was posted by you or the Debtor):

Genesis Proof of Claim Form

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

○ No

○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.
S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or
services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before
the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.
11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

◉ No

○ Yes.

**Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim (all amounts in US $ dollars).**

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ⦿ I am the creditor.
- ○ I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

## Executed on date (Calculated in UTC)

05/22/2023

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

James Kenneth Drury

Title/Company:

Joint Liquidator

Address 1:

4th Floor, LM Business Centre, Fish Lock Road

Address 2:

Road Town

City:

Tortola

State or Province (use 2-letter abbreviation if US or Canada):

British Virgin Islands

Zip Code | Postal Code:

VG-1110

Is this address outside of the US?

○ No
● Yes

Country (if outside of the US):

British Virgin Islands

Contact phone:

+1 284 346 9600

Contact email:

james.drury@interpathadvisory.vg

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

● I have supporting documentation
○ I do not have supporting documentation

**Attach a single PDF attachment that is less than 5 megabytes in size**

| TAFL Proof of Claim Addendum.pdf | 179 KB |
|---|---|

**Attachment Filename**

TAFL Proof of Claim Addendum.pdf

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, et al., | Chapter 11<br><br>Case No.: 23-10063 (SHL)<br><br>Jointly Administered |

**ADDENDUM TO PROOF OF CLAIM OF THREE ARROWS FUND, LTD.**

1.      The Joint Liquidators ("**Joint Liquidators**") of the Three Arrows Fund, Ltd. ("**TAFL**"), based on their authority to recover all assets of TAFL, bring claims against Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific PTE, Ltd. and their affiliates and assigns (collectively, "**Genesis Lenders**"), for damages associated with a Bitcoin commodity swap transactions with Genesis Lenders (that was executed by Three Arrows Capital Ltd. ("**3AC**")) in order to participate in the Grayscale Bitcoin Trust ("GBTC") and other trusts managed by non-debtor Grayscale Investments ("Grayscale") and distributed by non-debtor Genesis Global Trading, Inc. **"Genesis Trading"**).  For sake of readability, the claims below refer simply to GBTC and Bitcoin but apply to additional Grayscale-managed trusts invested in by or for TAFL and others. The damages— to be fully determined in the future—stem from the Genesis Lenders' failure to register as swap dealers under the Commodity Exchange Act (**"CEA"**) and for participating in a manipulative device or contrivance in violation of the CEA.

2.      Grayscale pitched representatives of TAFL and others on trying to take advantage of a premium to Net Asset Value ("**NAV**") exhibited by GBTC and other crypto trusts issued and managed by Grayscale Investments (the "**Grayscale Arbitrage**") prior to on or about March 2021. The Grayscale Arbitrage worked as follows: Grayscale, the manager of GBTC, the Genesis Lenders, "**Genesis Lenders")** and Genesis Global Trading, Inc. ("Genesis Trading") jointly marketed to representatives TAFL and others that they could:

(1)   enter into Bitcoin swaps with Genesis Lenders under which counterparties received Bitcoin at the outset of the swap;

(2)     purchase privately-issued shares from GBTC in return for the Bitcoin received from Genesis Lenders, which shares were issued by GBTC to Genesis Trading as the sole Authorized Participant of GBTC and then transferred on to its counterparties;

(3)     wait 6 months under SEC Rule 144, at which point Grayscale would remove legends from the privately-issued shares and allow counterparties to sell their GBTC shares publicly on the OTC markets at the hoped-for premium to NAV; and

(4)     Counterparties would transfer  back the Bitcoin received under the swap to Genesis Lenders plus an additional amount of Bitcoin that essentially reflected interest.

3.     The Genesis Lenders promoted and furthered the Grayscale Arbitrage by entering into Bitcoin commodity swaps with counterparties even though neither of the Genesis Lenders was a swap dealer registered with the CFTC.

4.     The Genesis Lenders disguised the fact that they were entering into commodity swaps with counterparties by documenting the transactions under a bespoke document made for the crypto lending market—The Master Digital Currency Loan Agreement.  The Genesis Lenders treated those transactions as though they were entirely unregulated.

5.     The Genesis Lenders violated the Commodity Exchange Act ("**CEA**") by not registering as swap dealers. Each loan of Bitcoin allowed an investor to receive X amount of Bitcoin that it could use to invest in GBTC.  Upon redemption, an investor would be required to transfer back X+Y amount of Bitcoin, with the Y reflecting interest. Such transactions allowed investors to buy GBTC and enter into the Grayscale Arbitrage. The transaction described above is a swap under the CEA.

6.     Section 1a(47) of the CEA defines a swap, in relevant part, as —

any agreement, contract, or transaction . . . (iii) that provides on an executory basis for the exchange, on a fixed or contingent basis, of 1 or more payments based on the value or

2

> level of 1 or more interest or other rates, currencies, commodities, securities, instruments of indebtedness, indices, quantitative measures, or other financial or economic interests or property of any kind, or any interest therein or based on the value thereof, and that transfers, as between the parties to the transaction, in whole or in part, the financial risk associated with a future change in any such value or level without also conveying a current or future direct or indirect ownership interest in an asset (including any enterprise or investment pool) or liability that incorporates the financial risk so transferred, including any agreement, contract, or transaction commonly known as . . . (XXII) a commodity swap.

7.      The CFTC has said that Bitcoin is a commodity. The Bitcoin transaction that Grayscale and the Genesis Lenders pitched and entered into with counterparties was a commodity swap. It clearly falls under the term "commodity swap" in the definition. The transaction also is an executory contract based on the value of a commodity where counterparties bore the financial risk associated with a future change in any such value because counterparties had to buy back an amount of Bitcoin based on the original amount plus interest at the prevailing market rate to settle the swap.

8.      Section 4s(a)(1), of the CEA says, "It shall be unlawful for any person to act as a swap dealer unless the person is registered as a swap dealer with the Commission." Section 4d(g) says, in relevant part, "It shall be unlawful for any person to be an introducing broker unless such person shall have registered under this chapter with the Commission as an introducing broker." Section 1a(31) defines an introducing broker, in relevant part, as "any person . . . engaged in soliciting or accepting orders for (aa) the purchase or sale of any commodity for future delivery, security futures product, or swap."

9.      Section 22 of the CEA says, in relevant part:

> Any person (other than a registered entity or registered futures association) who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in

3

subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person . . . (B) who made through such person . . . any swap . . . (C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of . . . a swap . . . (D) who purchased or sold a . . . swap if the violation constitutes . . . (i) the use or employment of, or an attempt to use or employ, in connection with a swap . . . any manipulative device or contrivance in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after July 21, 2010.

10.     CFTC Rule 180.1 is modeled on SEC Rule 10b-5 and broadly prohibits, among other things, fraud in connection with swaps.

11.     TAFL suffered actual damages from the Bitcoin and other digital asset swaps with Genesis Lenders, and those entities are liable to TAFL for their violations of the CEA.  Actual damages in the context of dealing with unregistered swap entities should be calculated based on the notional amount of the swaps that a counterparty entered into because, if Grayscale and the Genesis Lenders had complied with the CEA, they would not have marketed or entered into the swaps at all.

12.     This proof of claim is filed, inter alia, to protect the Joint Liquidators and TAFL from any forfeiture of all rights it may have. The Joint Liquidators and TAFL reserve the right to amend and/or supplement this proof of claim at any time and in any manner and/or to file additional proofs of claim for any additional claims which may be based on the same or additional documents or grounds of liability. This includes, but is not limited to, the right to amend this proof of claim to modify the amount of its claim and/or to include additional amounts due to the TAFL that may continue to accrue, based upon the facts in the record now and as further facts may be established in the future.

13.     Filing this proof of claim is not (a) waiver or release of the Joint Liquidator's or TAFL's rights against any person, entity or property; (b) waiver or release of the Joint Liquidator's and TAFL's right to have any and all non-core matters determined by a state court or United States District Court, as applicable; (c) an election of remedy; (d) a waiver or release of any rights which the Joint Liquidators and TAFL may have to a jury trial; or

4

(e) a waiver of the right to move to withdraw the reference in the future with respect to the subject matter of this proof of claim, any objection thereto or any other proceedings which may be commenced in this case against or otherwise involving Joint Liquidators or TAFL.

14.    Notwithstanding anything herein to the contrary, this proof of claim is not intended to assert rights against or on behalf of 3AC nor should be construed as intending to control or obtain possession of any property, right or asset of 3AC, all of which remain with 3AC unless otherwise adjudicated by a court of competent jurisdiction.

Confirmation of Submission

**Your Form has been successfully submitted...**

DOCUMENT ID

| 698ed2a69e2d90c02ab707fdf0f2b3f267c61c38 |

Submitted Date Time

| 2023-05-22T19:49:56.967Z |

Status

| Submitted |

CONFIRMATION ID

| 3315-61-HLXBR-199168142 |

Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

Orbeon Forms 2022.1.3.202304130216 PE