Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF FILING OF PLAN SUPPLEMENT
FOR THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

       **PLEASE TAKE NOTICE** that, on December 29, 2023, Genesis Global Holdco, LLC and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>") filed the *Plan Supplement for the Debtors' Amended Joint Chapter 11 Plan* (ECF No. 1117), which included the following materials: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Members of the Litigation Oversight Committee and Wind-Down Debtors Oversight Committee; (c) the List of Intercompany Claims that Constitute Excluded Claims; (d) the Retained Causes of Action; (e) the Digital Assets Conversion Table; and (f) Justifications for Exculpated & Released Parties.[2]

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific PTE. LTD. (2164R).  For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Debtors' Amended Joint Chapter 11 Plan* (ECF No. 1392) (as may be amended, supplemented, or modified from time to time, the "<u>Plan</u>") or the *Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC* et al., *Under Chapter 11 of the Bankruptcy Code* (ECF No. 1031) (the "<u>Disclosure Statement</u>").

**PLEASE TAKE FURTHER NOTICE** that, on January 6, 2024, the Debtors filed the following additional exhibits to the Plan Supplement: (a) the identity of the PA Officer and (b) the candidates for the New Board.

**PLEASE TAKE FURTHER NOTICE** that, on January 8, 2024, the Debtors filed the following additional exhibits to the Plan Supplement: (a) the Plan Administration Agreement; (b) the Litigation Oversight Committee Bylaws; (c) the Wind-Down Oversight Committee Bylaws; and (d) the New Governance Documents.

**PLEASE TAKE FURTHER NOTICE** that, on January 9, 2024, the Debtors filed, as an additional exhibit to the Plan Supplement, the Setoff Principles for Allowance of Certain Claims.

**PLEASE TAKE FURTHER NOTICE** that, on February 23, 2024, the Debtors filed the following additional exhibits to the Plan Supplement: (a) the Revised Plan Administration Agreement, (b) a blackline of the Revised Plan Administration Agreement against the Plan Administration Agreement filed on January 8, 2024, (c) the Revised Litigation Oversight Committee Bylaws, (d) a blackline of the Revised Litigation Oversight Committee Bylaws against the Litigation Oversight Committee Bylaws filed on January 8, 2024, (e) the Revised Wind-Down Oversight Committee Bylaws, (f) a blackline of the Revised Wind-Down Oversight Committee Bylaws against the Wind-Down Oversight Committee Bylaws filed on January 8, 2024, (g) the Gemini Reserve Principles, and (h) the Gemini Lender Distribution Principles.

**PLEASE TAKE FURTHER NOTICE** that, on February 26, 2024, the Debtors filed, as an additional exhibit to the Plan Supplement, the form of Cooperation Agreement.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the following additional exhibits to the Plan Supplement: (a) the Revised Plan Administration Agreement, (b) a blackline of the Revised Plan Administration Agreement against the Revised Plan Administration Agreement filed on February 23, 2024, and (c) the identity of the GAP Director.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expressly reserve the right, subject to the terms and conditions set forth in the Plan to alter, amend, modify, or supplement any document in the Plan Supplement and to file additional documents to be included in the Plan Supplement.  Certain of the documents in the Plan Supplement remain subject to ongoing negotiations between the Debtors and other parties to those documents, and the Debtors and all such parties reserve their rights with regard to those documents.  To the extent any document in the Plan Supplement is altered, amended, modified, or supplemented in any material respect, in accordance with the terms of the Plan, prior to the Confirmation Hearing (as defined below), the Debtors will file a blackline of such document with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that the forms of the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan.  If the Plan is approved, the documents in substantially the form contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

**PLEASE TAKE FURTHER NOTICE** that copies of all pleadings filed in these chapter 11 cases can be viewed and/or obtained: (i) by visiting the Debtors' case website at

https://restructuring.ra.kroll.com/genesis/, (ii) otherwise from the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, or by calling +1 888-524-2017 or (iii) accessing the Court's website at www.nysb.uscourts.gov. Note that a PACER password is needed to access documents on the Court's website.

Dated: April 9, 2024          */s/ Sean A. O'Neal*
    New York, New York        Sean A. O'Neal
                              Luke A. Barefoot
                              Jane VanLare
                              Thomas S. Kessler
                              CLEARY GOTTLIEB STEEN & HAMILTON LLP
                              One Liberty Plaza
                              New York, New York 10006
                              Telephone:  (212) 225-2000
                              Facsimile:  (212) 225-3999

                              *Counsel for the Debtors*
                              *and Debtors-in-Possession*

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 21-11831 (SHL) |
| Debtors. | Jointly Administered |

**PLAN SUPPLEMENT FOR THE
DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

**TABLE OF CONTENTS[2]**

**Exhibit Q:**    Revised Plan Administration Agreement

**Exhibit R:**    (Blackline) Revised Plan Administration Agreement

**Exhibit S:**    Identity of the GAP Director

*[Remainder of page intentionally left blank]*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific PTE. LTD. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Debtors' Amended Joint Chapter 11 Plan* (ECF No. 1392) (as may be amended, supplemented, or modified from time to time, the "Plan") or the *Amended Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC* et al., *Under Chapter 11 of the Bankruptcy Code* (ECF No. 1031) (the "Disclosure Statement").

## **EXHIBIT Q**

**Revised Plan Administration Agreement**

## PLAN ADMINISTRATION AGREEMENT

This PLAN ADMINISTRATION AGREEMENT (this "**Agreement**"), dated as of [●], by and between (a) Genesis Global Holdco, LLC, on behalf of itself and its debtor subsidiaries (collectively, the "**Debtors**" or the "**Wind-Down Debtors**," as applicable) and (b) Mark Renzi (the "**PA Officer**," and, together with the Debtors, the "**Parties**"), sets forth the PA Officer's rights, powers, and obligations in connection with the *Debtors' Amended Joint Chapter 11 Plan* [Docket No. [●]] (together with the supplements and exhibits thereto and as may be amended, modified, or supplemented from time to time, the "**Plan**").[1]

## RECITALS

WHEREAS, on January 19, 2023 (the "**Petition Date**"), the Debtors filed the Chapter 11 Cases;

WHEREAS, the Plan was confirmed by order of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on [●], 2024 [Docket No. [●]] (together with the exhibits thereto, the "**Confirmation Order**");

WHEREAS, the Effective Date of the Plan occurred on the date hereof;

WHEREAS, the Plan provides for, on the Effective Date, among other things:

    (a)    the appointment of the PA Officer to administer the distributions to the Wind-Down Debtors' Beneficiaries in accordance with and pursuant to the Distribution Principles and serve as the successor to and representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of prosecuting Retained Causes of Action belonging to such Estates (including any Causes of Action that belong to the Other Genesis Entities) that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan;

    (b)    the establishment of the Wind-Down Oversight Committee to oversee the PA Officer and the Wind-Down Debtors' wind-down activities in accordance with the Plan (including the Distribution Principles) and this Agreement and to manage the Wind-Down Reserve; and

    (c)    the establishment of the Litigation Oversight Committee to direct and consult with the PA Officer with respect to the strategy and pursuit of Retained Causes of Action, including the management and direction of counsel and other advisors to pursue the Retained Causes of Action (as directed by the Litigation Oversight Committee), approval of settlements of

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

any Retained Causes of Action (if any), and management of the Litigation Reserve;

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the undersigned parties hereto hereby agree as follows:

## ARTICLE I
## THE PA OFFICER

1.    <u>Appointment</u>.  The PA Officer has been selected in accordance with <u>Article IV.A.2</u> of the Plan and is hereby appointed as of the date hereof for the purpose of effectuating the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order, as applicable (collectively, the "**Plan Documents**").  As set forth in the Plan Documents, the PA Officer shall succeed to such powers as would have been applicable to the Debtors, the Debtors' officers, and the Debtors' Estates from and following the Effective Date and shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims that are entitled to receive distributions pursuant to the Plan.  The Parties intend that an independent contractor relationship shall be created by this Agreement.

2.    <u>Scope of Services</u>.  Subject to the oversight of the New Board, the Wind-Down Oversight Committee, and/or the Litigation Oversight Committee (as applicable), as set forth in the Plan Documents, the PA Officer shall provide, and is authorized to provide, post-Effective Date administration, wind-down, dissolution, and liquidation services that are necessary, required, desirable, or advisable to effectuate the transactions contemplated by the Plan Documents and to make certain distributions under the Plan.  Without limiting the provisions of the Plan (including the Distribution Principles) applicable to the PA Officer, the PA Officer shall be authorized and empowered to perform the following services on behalf of the Wind-Down Debtors and the Debtors' Estates:

(a)    allocate the Wind-Down Debtors' Assets among, and administer distributions under the Plan to, the applicable Denomination Groups, in accordance with and pursuant to the Distribution Principles, including, among other things, determining when to make such distributions and any related record date for such distributions, determining which Digital Assets are available for distribution after the Effective Date, and selecting the entities (in its discretion) to make or facilitate distributions pursuant to the Plan;

(b)    in consultation with the Wind-Down Oversight Committee, compromise or settle any Claims related to the Wind-Down Debtors' Assets (including litigating, settling, abandoning, or seeking dismissal of any Retained Causes of Action) and any other claims, rights, or causes of action assigned to the Wind-Down Debtors without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided*, *however*, that the Wind-Down Oversight Committee's Consent shall be required for any settlement that would Allow a Claim at a value at or above $5,000,000; *provided further* that the Litigation Oversight Committee's Consent shall be required for any settlement of Retained Causes of Action in accordance with the Plan and this Agreement;

2

(c)    conduct any Monetization Transactions of non-Cash Wind-Down Debtors' Assets (except for Retained Causes of Action, GBTC shares, and ETHE shares), and purchase any Digital Assets on any terms it deems reasonable to maximize the distribution of the Wind-Down Debtors' Assets to creditors on an in-kind basis, without further order of the Bankruptcy Court;

(d)    conduct any Monetization Transactions of Retained Causes of Action without further order of the Bankruptcy Court, but only to the extent the PA Officer has obtained the prior consent of the New Board and the Litigation Oversight Committee's Consent;

(e)    at the direction of the Wind-Down Oversight Committee representatives of the Denomination Groups to whom such assets have been allocated, conduct any Monetization Transactions of GBTC shares or ETHE shares without further order of the Bankruptcy Court in accordance with the Distribution Principles and the Un-Distributable Asset Monetization Agreement contained therein, free of any prohibition on assignability or transfer under applicable nonbankruptcy law that otherwise may be applicable to such shares, but only in accordance with the Distribution Principles; *provided* that, absent further order of the Bankruptcy Court, notwithstanding anything to the contrary in the Plan (including the Distribution Principles), the Additional GBTC Shares Reserve shall be held in reserve by the Wind-Down Debtors and shall not be distributed, subject to any Monetization Transactions, or otherwise subject to dissipation, use, or encumbrance without Gemini's Consent;

(f)    upon the sale, liquidation, transfer, or other disposition of the Wind-Down Debtors' Assets, deposit the proceeds of all such sales, liquidations, transfers, or dispositions into one or more of the Wind-Down Accounts (and such proceeds shall become and be deemed to be Distributable Assets);

(g)    with five (5) Business Days' prior notice to the New Board, the Wind-Down Oversight Committee, and, with respect to the abandonment of any Retained Cause of Action, the Litigation Oversight Committee, abandon any of the Wind-Down Debtors' Assets that the PA Officer determines in his, her, or its reasonable discretion to be of *de minimis* value or burdensome to the Wind-Down Debtors, including any pending adversary proceeding or other legal action commenced or commenceable by the Debtors prior to the Effective Date;

(h)    pay the charges that it incurs on or after the Effective Date for Wind-Down Debtors' Expenses, professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court;

(i)    together with the New Board, manage each Wind-Down Debtor, in consultation with or as directed by the Wind-Down Oversight Committee as provided under the Plan Documents and otherwise in accordance with this Agreement and the applicable New Governance Documents and subject to the Wind-Down Budget;

(j)    manage the Wind-Down Budget and Wind-Down Reserve, as applicable, pay the Wind-Down Debtors' Expenses incurred in connection with making distributions or otherwise carrying out the PA Officer's duties under the Plan, and determine, in consultation with the Wind-Down Oversight Committee (and, as to the Litigation Reserve, the Litigation Oversight

Committee), any surplus of Cash and Digital Assets in any Claims Reserve, Litigation Reserve, or Wind-Down Reserve;

       (k)     prepare and file post-Effective Date quarterly operating reports (including with respect to the month in which the Effective Date occurs);

       (l)     file with the Bankruptcy Court, and provide to the New Board and the Wind-Down Oversight Committee, no later than thirty-one (31) days after June 30 and December 31 of each calendar year, semi-annual reports (in a form reasonably acceptable to the New Board and the Wind-Down Oversight Committee) regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by the PA Officer, and other matters relating to the implementation of the Plan;

       (m)     prepare and file appropriate tax returns and other reports on behalf of the Wind-Down Debtors and the Debtors and pay taxes or other obligations owed by the Wind-Down Debtors and the Debtors and comply with all applicable tax withholding and reporting requirements imposed by any Governmental Unit;

       (n)     invest Cash, *provided* that any such investment shall be limited to the right and power to invest in U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act of 1940 or money market funds containing only such U.S. Government securities;

       (o)     subject to the New Governance Documents, issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents except those expressly required pursuant to the Plan;

       (p)     seek an order from the Bankruptcy Court removing or replacing members of the Wind-Down Oversight Committee and the Litigation Oversight Committee for cause;

       (q)     seek an order from the Bankruptcy Court appointing a Person, with such Person's prior written consent, to the Wind-Down Oversight Committee or the Litigation Oversight Committee if a vacancy in such committee has been left unfilled for five (5) or more Business Days; *provided* that the PA Officer shall seek to appoint a Person that has the most support from the members of the applicable committee;

       (r)     upon (i) full performance of all duties and functions set forth in the Plan and this Agreement or (ii) determination, in consultation with the Wind-Down Oversight Committee, that the Wind-Down Debtors lack sufficient resources to complete such duties and functions, file a certificate of dissolution with the Bankruptcy Court and take any other necessary actions it deems appropriate to dissolve the Wind-Down Debtors, including taking all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states and executing any certificate of dissolution or equivalent document on behalf of any Wind-Down Debtor, without the need for any action or approval by the shareholders or board of directors or managers of such Wind-Down Debtor;

(s)     manage the Wind-Down Debtors' books and records and authorize the sharing of confidential or privileged information with the Wind-Down Oversight Committee or Litigation Oversight Committee as appropriate to carry out their duties under the Plan, or permit the destruction or abandonment of the Wind-Down Debtors' books, records, electronically stored information, or other documents, consistent with the Plan; *provided* that nothing herein shall affect the obligations of the Wind-Down Debtors to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

(t)     be responsible for the ongoing administration of the Chapter 11 Cases and all actions related to the closing of the Chapter 11 Cases;

(u)     retain counsel, accountants, financial advisors, or other professionals as are reasonably necessary and appropriate in furtherance of the PA Officer's fiduciary obligations and pay such professionals from the Wind-Down Reserve; *provided* that the PA Officer shall receive the consent of the Wind-Down Oversight Committee with respect to the retention of counsel to support the wind-down and administration of the Wind-Down Debtors and shall receive the consent of the Litigation Oversight Committee with respect to counsel retained to evaluate and/or prosecute the Retained Causes of Action; *provided further* that the PA Officer shall consult with (i) the Wind-Down Oversight Committee and Litigation Oversight Committee prior to the retention of any other professionals and (ii) the Wind-Down Oversight Committee and/or Litigation Oversight Committee, as applicable, regarding the terms of engagement prior to entering into any engagement agreement with any professionals appointed pursuant to this Article 2(u); and

(v)     take such actions as are necessary and reasonable to carry out the purposes of the Plan Documents, including winding down the Debtors' Estates.

3.     <u>Compensation, Fees, and Expenses</u>.

(a)     The Wind-Down Debtors shall pay the PA Officer's compensation and reimburse the PA Officer's expenses as set forth herein as such amounts come due in the ordinary course without the need for Bankruptcy Court approval.

(b)     The PA Officer's compensation shall be based upon the standard hourly rates set forth in the *Second Supplemental Declaration of Evan Hengel Pursuant to Federal Rule of Bankruptcy Procedure 2014(a) in Connection with the Retention of Berkeley Research Group, LLC as Financial Advisor to the Official Committee of Unsecured Creditors* [Docket No. 1310], subject to periodic  adjustment to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business.

(c)     The fees and expenses of the PA Officer (including those incurred prior to the Effective Date in connection with the preparation of this Agreement) shall be payable from the Wind-Down Reserve, subject to the Wind-Down Budget, on a monthly basis in advance not later than the first (1st) Business Day of each month.

(d)     In addition to the foregoing, the PA Officer shall be entitled to reimbursement of actual, reasonable and documented, out-of-pocket and direct expenses incurred

5

in connection with the services to be provided under this Agreement and/or the Plan Documents, as applicable.

(e)   The PA Officer may employ, without further order of the Bankruptcy Court, professionals (including, without limitation, professionals previously employed by the Debtors or the Committee) to assist in carrying out its duties under this Agreement and may compensate and reimburse the expenses of these professionals based upon the nature of the work performed by such professional, without further order of the Bankruptcy Court, in accordance with the applicable professional's engagement letter, which shall be payable from the Wind-Down Reserve, subject to the Wind-Down Budget; *provided* that the PA Officer shall receive the consent of the Wind-Down Oversight Committee with respect to the retention of counsel to support the wind-down and administration of the Wind-Down Debtors and shall receive the consent of the Litigation Oversight Committee with respect to the retention of counsel to evaluate and/or prosecute the Retained Causes of Action; *provided further* that the PA Officer shall consult with the Wind-Down Oversight Committee and Litigation Oversight Committee prior to the retention of any other professionals.   The PA Officer, the Wind-Down Oversight Committee, and the Litigation Oversight Committee may employ the same professionals to the extent appropriate, as determined by each in its reasonable discretion and in accordance with this Agreement, the Wind-Down Oversight Committee Bylaws, or the Litigation Oversight Committee Bylaws, as applicable.

(f)   The PA Officer shall not be entitled to receive from the Debtors or Wind-Down Debtors or their Estates any vacation pay, sick leave, retirement, pension, or social security benefits, workers' compensation, disability, unemployment insurance benefits, or any other employee benefits.   Notwithstanding the foregoing, as provided in the Plan, the PA Officer shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that are entitled to receive distributions pursuant to Plan.

4.   <u>Estate Representative</u>.   The PA Officer shall be deemed to be the estate representative for each Debtor (and each Wind-Down Debtor) as the party-in-interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal that may directly or indirectly affect the Wind-Down Debtors' Assets.   The PA Officer is hereby appointed as the attorney-in-fact for each Wind-Down Debtor with full power and authority, subject to any applicable consent or consultation rights set forth in the Plan, to take any action or execute any documents on behalf of the Wind-Down Debtors that may be necessary or appropriate to carry out the transactions set forth in the Plan.

5.   <u>Insurance and Bonding</u>.   The PA Officer shall obtain insurance coverage (in the form of an errors and omissions policy or otherwise) that will cover the PA Officer and the PA Parties (as defined below) with respect to the liabilities and obligations of the PA Officer under this Agreement in an amount and on terms reasonably acceptable to the PA Officer.   Unless otherwise agreed to by the New Board, the PA Officer shall serve with a bond, the terms of which shall be agreed to by the New Board, and the cost and expense of which shall be paid by the Wind-Down Debtors.

6.   <u>Privilege; Common Interest</u>.   All attorney-client privileges, work product protections, common interest or joint defense privileges, mediation privileges, or any other protections, privileges, or immunities from disclosure held by the Wind-Down Debtors (any such

privilege or protection, a "**Privilege**"), including, but not limited to, Privileges transferred to the Wind-Down Debtors from the Debtors, shall vest in the PA Officer solely in his or her capacity as such, and the PA Officer shall stand in the same position as the Debtors, their Estates, and/or the Wind-Down Debtors as to all such Privileges, shall succeed to all of the rights of the Debtors, their Estates, and/or the Wind-Down Debtors to preserve, assert, or waive any such Privilege, and shall be deemed to be the assignee by each Debtor, its Estate, and each Wind-Down Debtor of each such Privilege as of the Effective Date. Consistent with the PA Officer's fiduciary duties, the PA Officer agrees to work with the Wind-Down Oversight Committee and Litigation Oversight Committee to satisfy their duties under the Plan and understands that the PA Officer and Wind-Down Debtors (on the one hand) and the Wind-Down Oversight Committee and/or Litigation Oversight Committee (on the other hand) have certain common, mutual, and interrelated legal rights, interests, and obligations in connection with the Chapter 11 Cases, the transactions provided for under the Plan, the Retained Causes of Action, and the wind-down of the Wind-Down Debtors.  In furtherance of those common and interrelated legal rights, interests, and obligations, no Privilege shall be waived by disclosure between or among any of the Wind-Down Debtors, the PA Officer, the Wind-Down Oversight Committee, and/or the Litigation Oversight Committee or their respective professionals of information that is subject to any Privilege or any Privilege jointly held by the Wind-Down Debtors and the PA Officer. The PA Officer shall provide any information that is confidential or subject to Privilege and is reasonably requested by the Wind-Down Oversight Committee and/or the Litigation Oversight Committee in furtherance of the performance of their duties, including, without limitation, any information related to the Retained Causes of Action or the identity of any individual on the list of Released Genesis Personnel (as defined in Exhibit F of the Plan Supplement [Docket No. 1117]). The PA Officer shall be authorized and permitted to share such information (subject to the obligation of confidentiality set forth in Section 8) without waiving any applicable Privilege or violating any duty of confidentiality.

7.    <u>Maintenance and Disposition of Wind-Down Debtors' Records</u>.  The PA Officer shall maintain accurate records of the administration of the Wind-Down Debtors' assets, including receipts and disbursements and other activity of each Wind-Down Debtor. The PA Officer may, but has no obligation to, engage a claims agent (including the Debtors' existing claims agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Wind-Down Debtors. The PA Officer shall be provided with originals or copies of, or access to all documents, communications, and business records of each Debtor that are in the possession of each Debtor and reasonably necessary or requested by the PA Officer for the administration and disposition of the Wind-Down Debtors' assets and the other activities and duties required to be performed by the PA Officer under the Plan, including with respect to the investigation and prosecution of the Retained Causes of Action.  The PA Officer shall be authorized to share materials reasonably requested by the Wind-Down Oversight Committee or Litigation Oversight Committee without violating any obligation of confidentiality or waiving any privilege, doctrine, immunity or protection from discovery or disclosure.

8.    <u>Confidentiality</u>. The PA Officer shall treat confidentially all information not publicly available that is received by the PA Officer in connection with this engagement or that is developed during this engagement, and the PA Officer shall not disclose such information except with the Wind-Down Oversight Committee, Litigation Oversight Committee, any party that has agreed in writing to maintain such information confidential, or as required by a court order or other legal process.  For the avoidance of doubt, this provision shall apply in all respects to any non-

public information regarding the Wind-Down Debtors' Beneficiaries, and the PA Officer shall agree to comply with the *Order Granting the Debtors' and the Official Committee of Unsecured Creditors' Motions for Entry of an Order Requiring the Redaction of Certain Personally Identifiable Information* [Docket No. 694].

9.      <u>Indemnity</u>.   It shall be the sole responsibility of the Wind-Down Debtors to indemnify and defend the PA Officer and his or her employees, employers, designees, or professionals (collectively, the "**PA Parties**") from and against any and all claims, liability, loss, costs, damage, or expense (including reasonable attorneys' fees) asserted against them by reason of or arising out of or related to this Agreement or performance under this Agreement or the Plan Documents or any related transactions that are taken or omitted to be taken as set forth in this Agreement or the Plan Documents, payable solely from the Wind-Down Debtors' Assets; *provided* that there shall be no obligation to indemnify or defend a PA Party on account of specific acts or omissions resulting from such PA Party's willful misconduct, gross negligence or actual fraud, or from the PA Party's breach of the terms of this Agreement or the Plan, including, without limitation, failure to act in accordance with the directions of the Wind-Down Oversight Committee where applicable; *provided further* that any action taken or omitted to be taken in the case of the PA Officer with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute fraud, willful misconduct, or gross negligence.   Notwithstanding anything in the Plan Documents to the contrary, the PA Officer shall be indemnified and held harmless and shall have no liability to the Wind-Down Debtors, Holders of Claims or Interests, or any other party under any circumstances for any acts or omissions taken (or not taken) at the direction of the Wind-Down Oversight Committee or the Litigation Oversight Committee.

10.      <u>Liability of the PA Parties; Exculpation</u>.   The PA Parties shall not be liable for any losses, claims, damages, liabilities, or expenses in connection with (i) the affairs of the Wind-Down Debtors or for any act or omission taken or omitted to be taken pursuant to the discretion, powers, and authority conferred, or in good faith believed to be conferred, by this Agreement, the Plan, any Final Order, or applicable law, other than to the extent that such specific acts or omissions is determined, in a Final Order, to be the result of such PA Party's willful misconduct, gross negligence, or actual fraud and (ii) the affairs of, or any act or omission taken or omitted to be taken by, any distribution agent engaged by the PA Officer to the extent such exculpation is not provided for under the terms of engagement between the PA Officer and such distribution agent. The PA Officer shall be entitled to enjoy all of the rights, powers, immunities, and privileges applicable to a chapter 7 trustee, subject to the provisions of the Plan and this Agreement. The PA Officer may, in connection with the performance of his or her functions, and in his or her sole and absolute discretion, consult with its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.   Notwithstanding the foregoing, the PA Officer shall not have any obligation to consult with any attorneys, accountants, financial advisors, or agents, and his or her determination not to do so shall not result in the imposition of liability on the PA Officer or and PA Parties unless such determination is based on willful misconduct, gross negligence, or actual fraud.   The PA Parties shall not be liable whatsoever except for the performance of such duties and obligations as are specifically set forth in the Plan (including the Distribution Principles), and no implied covenants or obligations shall be read into this Agreement, the Wind-Down Oversight Committee Bylaws, or the Litigation Oversight Committee Bylaws against any of them.   The

8

Wind-Down Debtors shall promptly, upon submission of invoices therefor, pay expenses reasonably incurred by the PA Officer or any PA Party in defending, participating in, or settling any action, proceeding, or investigation in which such PA Party is a party or is threatened to be made a party and which arises out of or due to such PA Party's duties, acts, or omissions, or the consequences of such duties, acts, or omissions, with respect to the implementation of the Plan or otherwise in connection with the affairs of the Wind-Down Debtors, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise; *provided, however*, that no expenses shall be paid to the PA Officer to the extent such expenses result from the PA Officer's willful misconduct, gross negligence, or actual fraud or are otherwise inconsistent with the provisions of the Plan or this Agreement.

11.     Removal, Resignation, or Replacement of the PA Officer.

(a)     The PA Officer shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtors are dissolved in accordance with the Plan and this Agreement, and (ii) the date on which the PA Officer resigns, is terminated in accordance with this Agreement, or is otherwise unable to serve.

(b)     The PA Officer may resign its duties at any time upon thirty (30) days' written notice to the Bankruptcy Court and the Notice Parties, *provided that* such resignation shall only become effective upon the appointment of a permanent or interim successor PA Officer as set forth in this Agreement.  Upon the appointment of a successor PA Officer, such successor shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor PA Officer pursuant to this Agreement, the Plan, and the Confirmation Order, and all responsibilities of the predecessor PA Officer shall be terminated.

(c)     The PA Officer may be removed (i) for any reason, by the majority vote of the Wind-Down Oversight Committee, in consultation with the Litigation Oversight Committee; *provided* that, to the extent there is any dispute regarding the removal of the PA Officer (including any dispute relating to any compensation or expense reimbursement due under this Agreement), to the fullest extent permitted by law, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute, or (ii) upon motion by any party in interest, by the Bankruptcy Court for cause shown after notice and a hearing.

(d)     In the event that a PA Officer resigns, is removed, or is otherwise unable to serve and must be replaced, the Wind-Down Oversight Committee shall elect a successor to be appointed by the New Board to serve as a PA Officer.  If the Wind-Down Oversight Committee does not elect a successor within five (5) Business Days, then the Bankruptcy Court, upon the motion of any party in interest, including counsel to the Wind-Down Debtors, shall appoint a successor to serve as a PA Officer.  The successor PA Officer appointed shall immediately become fully vested with all of the rights, powers, duties, and obligations of the predecessor PA Officer pursuant to this Agreement, the Plan, and the Confirmation Order and shall serve until replaced or reappointed by the Wind-Down Oversight Committee pursuant to this section.

(e)     Notwithstanding anything to the contrary contained in this Agreement, any PA Officer who is removed or resigns pursuant to this Agreement shall (i) retain its right to coverage under any applicable insurance policies and indemnification in accordance with

Article I.9 hereof for its acts or omissions occurring prior to such removal or resignation and (ii) be entitled to all fees and expenses accrued up to the date of such removal or resignation pursuant to this Agreement, including any travel or related expenses incurred in returning from the location of the services being provided under this Agreement prior to such termination or resignation date.

## ARTICLE II
## TERMINATION

1.     This Agreement shall terminate automatically upon the earlier of the date which (a) all of the Chapter 11 Cases have been closed and all payments have been made under the Plan (including the PA Officer's compensation and reimbursement), or (b) the Wind-Down Debtors are dissolved in accordance with Article IV.A.14 of the Plan.

2.     Upon termination of this Agreement pursuant to Article II.1, the PA Officer shall be entitled to all fees and expenses provided for under this Agreement accrued up to the date of such termination and any further fees and expenses associated with the dissolution of the Wind-Down Debtors' Estates.

## ARTICLE III
## MISCELLANEOUS PROVISIONS

1.     Notice.  All invoices, notices, requests, demands, and other communications permitted or required to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed conclusively to have been given:  (a) when personally delivered; (b) when sent by electronic mail during a Business Day (or on the next Business Day if sent after the close of normal business hours or on any non-Business Day); (c) one (1) Business Day after being sent by reputable overnight express courier (charges prepaid); or (d) three (3) Business Days following mailing by certified or registered mail, postage prepaid and return receipt requested.  Unless another address is specified in writing, notices, requests, demands, and communications to the Parties hereto shall be sent to the addresses indicated below:

To the Wind-Down Debtors:

> c/o Genesis Global Holdco, LLC
> 175 Greenwich Street, Floor 38
> New York, NY 10007
> Attn:   A. Derar Islim

To the PA Officer:

> Mark Renzi
> c/o Berkeley Research Group, LLC
> 99 High Street
> 27th Floor
> Boston, MA 02110
> E-mail: mrenzi@thinkbrg.com

To the Wind-Down Oversight Committee:

> Amelia Alvarez; Olivier Cohen; Teddy Gorisse;
> Vadim Khramov; Mark Nuvelstijn; Khing Oei;
> Refael Sofair

To the Litigation Oversight Committee:

> Vijay Boyapati; Olivier Cohen; Teddy Gorisse;
> Vadim Khramov; Ari Litan; Mark Nuvelstijn;
> Refael Sofair

2.    <u>Survivability</u>.  <u>Sections I.6, I.7, and II.3</u> and all other provisions necessary to the enforcement of the intent of this Agreement shall survive the termination or expiration of this Agreement.

3.    <u>Inconsistencies</u>.  In the event of an inconsistency between this Agreement and the Plan, the terms of this Agreement shall control in all respects.  In the event of an inconsistency between the Confirmation Order, the Plan, and this Agreement, the Confirmation Order shall control.

4.    <u>Severability</u>.  If any portion of this Agreement shall be determined to be invalid or unenforceable, the remainder of this Agreement shall be valid and enforceable to the maximum extent provided by applicable law.

5.    <u>Assignment</u>.  Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be assigned by any of the Parties (whether by operation of law or otherwise) without the prior written consent of the PA Officer and the Wind-Down Oversight Committee.

6.    <u>Governing Law</u>.  This Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to choice of law or principles thereof.  In any court proceeding arising out of or related to this Agreement, each of the Parties hereby waives any right to trial by jury.  Each of the Parties hereby submits to the exclusive jurisdiction of the Bankruptcy Court for purposes of any proceeding arising from or related to this Agreement, and each of the Parties agrees not to commence any action, suit, or proceeding relating thereto except in the Bankruptcy Court.

7.      <u>Entire Agreement</u>.  This Agreement and the Plan Documents encompass all of the terms and conditions between the Wind-Down Debtors and the PA Officer concerning the subject matter hereof.  This Agreement may not be amended or modified in any respect except in a writing signed by the PA Officer with the consent of the Wind-Down Oversight Committee.

8.      <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same Agreement.  A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission (.pdf) shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

9.      <u>Amendments</u>.  This Agreement may be amended by written agreement of the PA Officer with the consent of the Wind-Down Oversight Committee; *provided*, *however*, that such amendment may not be inconsistent with the Plan or Confirmation Order.

[SIGNATURE PAGES FOLLOW]

THE DEBTORS:

GENESIS GLOBAL HOLDCO, LLC, ON
BEHALF OF ITSELF AND ITS AFFILIATED
DEBTORS


By:_____
Name: A. Derar Islim
Title: Interim Chief Executive Officer

THE PA OFFICER:

MARK RENZI
BERKELEY RESEARCH GROUP, LLC


By:_____
Name: Mark Renzi

**EXHIBIT R**

**(Blackline) Revised Plan Administration Agreement**

## PLAN ADMINISTRATION AGREEMENT

This PLAN ADMINISTRATION AGREEMENT (this "**Agreement**"), dated as of [●], by and between (a) Genesis Global Holdco, LLC, on behalf of itself and its debtor subsidiaries (collectively, the "**Debtors**" or the "**Wind-Down Debtors**," as applicable) and (b) Mark Renzi (the "**PA Officer**," and, together with the Debtors, the "**Parties**"), sets forth the PA Officer's rights, powers, and obligations in connection with the *Debtors' Amended* Joint Chapter 11 Plan ~~of Genesis Global Holdco, LLC and Its Debtor Affiliates~~ [Docket No. [●]] (together with the supplements and exhibits thereto and as may be amended, modified, or supplemented from time to time, the "**Plan**").[1]

## RECITALS

WHEREAS, on January 19, 2023 (the "**Petition Date**"), the Debtors filed the Chapter 11 Cases;

WHEREAS, the Plan was confirmed by order of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on [●], 2024 [Docket No. [●]] (together with the exhibits thereto, the "**Confirmation Order**");

WHEREAS, the Effective Date of the Plan occurred on the date hereof;

WHEREAS, the Plan provides for, on the Effective Date, among other things:

(a)    the appointment of the PA Officer to administer the distributions to the Wind-Down Debtors' Beneficiaries in accordance with and pursuant to the Distribution Principles and serve as the successor to and representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of prosecuting Retained Causes of Action belonging to such Estates (including any Causes of Action that belong to the Other Genesis Entities) that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan;

(b)    the establishment of the Wind-Down Oversight Committee to oversee the PA Officer and the Wind-Down Debtors' wind-down activities in accordance with the Plan (including the Distribution Principles) and this Agreement and to manage the Wind-Down Reserve; and

(c)    the establishment of the Litigation Oversight Committee to direct and consult with the PA Officer with respect to the strategy and pursuit of Retained Causes of Action, including the management and direction of counsel and other advisors to pursue the Retained Causes of Action (as directed by the Litigation Oversight Committee), approval of settlements

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

of any Retained Causes of Action (if any), and management of the Litigation Reserve;

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the undersigned parties hereto hereby agree as follows:

## ARTICLE I
## THE PA OFFICER

1.    <u>Appointment</u>.   The PA Officer has been selected in accordance with <u>Article IV.A.2</u> of the Plan and is hereby appointed as of the date hereof for the purpose of effectuating the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order, as applicable (collectively, the "**Plan Documents**").   As set forth in the Plan Documents, the PA Officer shall succeed to such powers as would have been applicable to the Debtors, the Debtors' officers, and the Debtors' Estates from and following the Effective Date and shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims that are entitled to receive distributions pursuant to the Plan.   The Parties intend that an independent contractor relationship shall be created by this Agreement.

2.    <u>Scope of Services</u>.   Subject to the oversight of the New Board, the Wind-Down Oversight Committee, and/or the Litigation Oversight Committee (as applicable), as set forth in the Plan Documents, the PA Officer shall provide, and is authorized to provide, post-Effective Date administration, wind-down, dissolution, and liquidation services that are necessary, required, desirable, or advisable to effectuate the transactions contemplated by the Plan Documents and to make certain distributions under the Plan.   Without limiting the provisions of the Plan (including the Distribution Principles) applicable to the PA Officer, the PA Officer shall be authorized and empowered to perform the following services on behalf of the Wind-Down Debtors and the Debtors' Estates:

(a)    allocate the Wind-Down Debtors' Assets among, and administer distributions under the Plan to, the applicable Denomination Groups, in accordance with and pursuant to the Distribution Principles, including, among other things, determining when to make such distributions and any related record date for such distributions, determining which Digital Assets are available for distribution after the Effective Date, and selecting the entities (in its discretion) to make or facilitate distributions pursuant to the Plan;

(b)    in consultation with the Wind-Down Oversight Committee, compromise or settle any Claims related to the Wind-Down Debtors' Assets (including litigating, settling, abandoning, or seeking dismissal of any Retained Causes of Action) and any other claims, rights, or causes of action assigned to the Wind-Down Debtors without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided*, *however*, that the Wind-Down Oversight Committee's Consent shall be required for any settlement that would Allow a Claim at a value at or above $5,000,000; *provided further* that

the Litigation Oversight Committee's Consent shall be required for any settlement of Retained Causes of Action in accordance with the Plan and this Agreement;

      (c)     conduct any Monetization Transactions of non-Cash Wind-Down Debtors' Assets (except for Retained Causes of Action, GBTC shares, and ETHE shares), and purchase any Digital Assets on any terms it deems reasonable to maximize the distribution of the Wind-Down Debtors' Assets to creditors on an in-kind basis, without further order of the Bankruptcy Court;

      (d)     conduct any Monetization Transactions of Retained Causes of Action without further order of the Bankruptcy Court, but only to the extent the PA Officer has obtained the prior consent of the New Board and the Litigation Oversight Committee's Consent;

      (e)     at the direction of the Wind-Down Oversight Committee representatives of the Denomination Groups to whom such assets have been allocated, conduct any Monetization Transactions of GBTC shares or ETHE shares without further order of the Bankruptcy Court in accordance with the Distribution Principles and the Un-Distributable Asset Monetization Agreement contained therein, free of any prohibition on assignability or transfer under applicable nonbankruptcy law that otherwise may be applicable to such shares, but only in accordance with the Distribution Principles; *provided* that, absent further order of the Bankruptcy Court, notwithstanding anything to the contrary in the Plan (including the Distribution Principles), the Additional GBTC Shares Reserve shall be held in reserve by the Wind-Down Debtors and shall not be distributed, subject to any Monetization Transactions, or otherwise subject to dissipation, use, or encumbrance without Gemini's Consent;

      (f)     upon the sale, liquidation, transfer, or other disposition of the Wind-Down Debtors' Assets, deposit the proceeds of all such sales, liquidations, transfers, or dispositions into one or more of the Wind-Down Accounts (and such proceeds shall become and be deemed to be Distributable Assets);

      (g)     with five (5) Business Days' prior notice to the New Board, the Wind-Down Oversight Committee, and, with respect to the abandonment of any Retained Cause of Action, the Litigation Oversight Committee, abandon any of the Wind-Down Debtors' Assets that the PA Officer determines in his, her, or its reasonable discretion to be of *de minimis* value or burdensome to the Wind-Down Debtors, including any pending adversary proceeding or other legal action commenced or commenceable by the Debtors prior to the Effective Date;

      (h)     pay the charges that it incurs on or after the Effective Date for Wind-Down Debtors' Expenses, professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court;

      (i)     together with the New Board, manage each Wind-Down Debtor, in consultation with or as directed by the Wind-Down Oversight Committee as provided under the Plan Documents and otherwise in accordance with this Agreement and the applicable New Governance Documents and subject to the Wind-Down Budget;

      (j)     manage the Wind-Down Budget and Wind-Down Reserve, as applicable, pay the Wind-Down Debtors' Expenses incurred in connection with making distributions or

otherwise carrying out the PA Officer's duties under the Plan, and determine, in consultation with the Wind-Down Oversight Committee (and, as to the Litigation Reserve, the Litigation Oversight Committee), any surplus of Cash and Digital Assets in any Claims Reserve, Litigation Reserve, or Wind-Down Reserve;

(k)    prepare and file post-Effective Date quarterly operating reports (including with respect to the month in which the Effective Date occurs);

(l)    file with the Bankruptcy Court, and provide to the New Board and the Wind-Down Oversight Committee, no later than thirty-one (31) days after June 30 and December 31 of each calendar year, semi-annual reports (in a form reasonably acceptable to the New Board and the Wind-Down Oversight Committee) regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by the PA Officer, and other matters relating to the implementation of the Plan;

(m)    prepare and file appropriate tax returns and other reports on behalf of the Wind-Down Debtors and the Debtors and pay taxes or other obligations owed by the Wind-Down Debtors and the Debtors and comply with all applicable tax withholding and reporting requirements imposed by any Governmental Unit;

(n)    invest Cash, *provided* that any such investment shall be limited to the right and power to invest in U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act of 1940 or money market funds containing only such U.S. Government securities;

(o)    subject to the New Governance Documents, issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents except those expressly required pursuant to the Plan;

(p)    seek an order from the Bankruptcy Court removing or replacing members of the Wind-Down Oversight Committee and the Litigation Oversight Committee for cause;

(q)    seek an order from the Bankruptcy Court appointing a Person, with such Person's prior written consent, to the Wind-Down Oversight Committee or the Litigation Oversight Committee if a vacancy in such committee has been left unfilled for five (5) or more Business Days; *provided* that the PA Officer shall seek to appoint a Person that has the most support from the members of the applicable committee;

(r)    upon (i) full performance of all duties and functions set forth in the Plan and this Agreement or (ii) determination, in consultation with the Wind-Down Oversight Committee, that the Wind-Down Debtors lack sufficient resources to complete such duties and functions, file a certificate of dissolution with the Bankruptcy Court and take any other necessary actions it deems appropriate to dissolve the Wind-Down Debtors, including taking all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states and executing any certificate of dissolution or equivalent document on behalf of

any Wind-Down Debtor, without the need for any action or approval by the shareholders or board of directors or managers of such Wind-Down Debtor;

(s)    manage the Wind-Down Debtors' books and records and authorize the sharing of confidential or privileged information with the Wind-Down Oversight Committee or Litigation Oversight Committee as appropriate to carry out their duties under the Plan, or permit the destruction or abandonment of the Wind-Down Debtors' books, records, electronically stored information, or other documents, consistent with the Plan; *provided* that nothing herein shall affect the obligations of the Wind-Down Debtors to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

(t)    be responsible for the ongoing administration of the Chapter 11 Cases and all actions related to the closing of the Chapter 11 Cases;

(u)    retain counsel, accountants, financial advisors, or other professionals as are reasonably necessary and appropriate in furtherance of the PA Officer's fiduciary obligations and pay such professionals from the Wind-Down Reserve; *provided* that the PA Officer shall receive the consent of the Wind-Down Oversight Committee with respect to the retention of counsel to support the wind-down and administration of the Wind-Down Debtors and shall receive the consent of the Litigation Oversight Committee with respect to counsel retained to evaluate and/or prosecute the Retained Causes of Action; *provided further* that the PA Officer shall consult with (i) the Wind-Down Oversight Committee and Litigation Oversight Committee prior to the retention of any other professionals and (ii) the Wind-Down Oversight Committee and/or Litigation Oversight Committee, as applicable, regarding the terms of engagement prior to entering into any engagement agreement with any professionals appointed pursuant to this Article 2(u); and

(v)    take such actions as are necessary and reasonable to carry out the purposes of the Plan Documents, including winding down the Debtors' Estates.

3.    <u>Compensation, Fees, and Expenses</u>.

(a)    The Wind-Down Debtors shall pay the PA Officer's compensation and reimburse the PA Officer's expenses as set forth herein as such amounts come due in the ordinary course without the need for Bankruptcy Court approval.

(b)    [The PA Officer's compensation shall be based upon ~~an initial term of up to twelve (12) months, to be paid as follows: $[●] per month for the first [●] months following the Effective Date and $[●] per month for the [●] through [●] months following the Effective Date.~~]the standard hourly rates set forth in the *Second Supplemental Declaration of Evan Hengel Pursuant to Federal Rule of Bankruptcy Procedure 2014(a) in Connection with the Retention of Berkeley Research Group, LLC as Financial Advisor to the Official Committee of Unsecured Creditors* [Docket No. 1310], subject to periodic  adjustment to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business.

(c)        The fees and expenses of the PA Officer (including those incurred prior to the Effective Date in connection with the preparation of this Agreement) shall be payable from the Wind-Down Reserve, subject to the Wind-Down Budget, on a monthly basis in advance not later than the first (1st) Business Day of each month.

(d)        In addition to the foregoing, the PA Officer shall be entitled to reimbursement of actual, reasonable and documented, out-of-pocket and direct expenses incurred in connection with the services to be provided under this Agreement and/or the Plan Documents, as applicable.

(e)        The PA Officer may employ, without further order of the Bankruptcy Court, professionals (including, without limitation, professionals previously employed by the Debtors or the Committee) to assist in carrying out its duties under this Agreement and may compensate and reimburse the expenses of these professionals based upon the nature of the work performed by such professional, without further order of the Bankruptcy Court, in accordance with the applicable professional's engagement letter, which shall be payable from the Wind-Down Reserve, subject to the Wind-Down Budget; *provided* that the PA Officer shall receive the consent of the Wind-Down Oversight Committee with respect to the retention of counsel to support the wind-down and administration of the Wind-Down Debtors and shall receive the consent of the Litigation Oversight Committee with respect to the retention of counsel to evaluate and/or prosecute the Retained Causes of Action; *provided further* that the PA Officer shall consult with the Wind-Down Oversight Committee and Litigation Oversight Committee prior to the retention of any other professionals.  The PA Officer, the Wind-Down Oversight Committee, and the Litigation Oversight Committee may employ the same professionals to the extent appropriate, as determined by each in its reasonable discretion and in accordance with this Agreement, the Wind-Down Oversight Committee Bylaws, or the Litigation Oversight Committee Bylaws, as applicable.

(f)        The PA Officer shall not be entitled to receive from the Debtors or Wind-Down Debtors or their Estates any vacation pay, sick leave, retirement, pension, or social security benefits, workers' compensation, disability, unemployment insurance benefits, or any other employee benefits.  Notwithstanding the foregoing, as provided in the Plan, the PA Officer shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that are entitled to receive distributions pursuant to Plan.

4.    <u>Estate Representative</u>.    The PA Officer shall be deemed to be the estate representative for each Debtor (and each Wind-Down Debtor) as the party-in-interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal that may directly or indirectly affect the Wind-Down Debtors' Assets.  The PA Officer is hereby appointed as the attorney-in-fact for each Wind-Down Debtor with full power and authority, subject to any applicable consent or consultation rights set forth in the Plan, to take any action or execute any documents on behalf of the Wind-Down Debtors that may be necessary or appropriate to carry out the transactions set forth in the Plan.

5.    <u>Insurance and Bonding</u>.  The PA Officer shall obtain insurance coverage (in the form of an errors and omissions policy or otherwise) that will cover the PA Officer and the PA Parties (as defined below) with respect to the liabilities and obligations of the PA Officer under this Agreement in an amount and on terms reasonably acceptable to the PA Officer.  Unless otherwise agreed to by the New Board, the PA Officer shall serve with a bond, the terms of which shall be agreed to by the New Board, and the cost and expense of which shall be paid by the Wind-Down Debtors.

6.    <u>Privilege; Common Interest</u>.    All attorney-client privileges, work product protections, common interest or joint defense privileges, mediation privileges, or any other protections, privileges, or immunities from disclosure held by the Wind-Down Debtors (any such privilege or protection, a "**Privilege**"), including, but not limited to, Privileges transferred to the Wind-Down Debtors from the Debtors, shall vest in the PA Officer solely in his or her capacity as such, and the PA Officer shall stand in the same position as the Debtors, their Estates, and/or the Wind-Down Debtors as to all such Privileges, shall succeed to all of the rights of the Debtors, their Estates, and/or the Wind-Down Debtors to preserve, assert, or waive any such Privilege, and shall be deemed to be the assignee by each Debtor, its Estate, and each Wind-Down Debtor of each such Privilege as of the Effective Date. Consistent with the PA Officer's fiduciary duties, the PA Officer agrees to work with the Wind-Down Oversight Committee and Litigation Oversight Committee to satisfy their duties under the Plan and understands that the PA Officer and Wind-Down Debtors (on the one hand) and the Wind-Down Oversight Committee and/or Litigation Oversight Committee (on the other hand) have certain common, mutual, and interrelated legal rights, interests, and obligations in connection with the Chapter 11 Cases, the transactions provided for under the Plan, the Retained Causes of Action, and the wind-down of the Wind-Down Debtors.  In furtherance of those common and interrelated legal rights, interests, and obligations, no Privilege shall be waived by disclosure between or among any of the Wind-Down Debtors, the PA Officer, the Wind-Down Oversight Committee, and/or the Litigation Oversight Committee or their respective professionals of information that is subject to any Privilege or any Privilege jointly held by the Wind-Down Debtors and the PA Officer. The PA Officer shall provide any information that is confidential or subject to Privilege and is reasonably requested by the Wind-Down Oversight Committee and/or the Litigation Oversight Committee in furtherance of the performance of their duties, including, without limitation, any information related to the Retained Causes of Action or the identity of any individual on the list of Released Genesis Personnel (as defined in Exhibit F of the Plan Supplement [Docket No. 1117]). The PA Officer shall be authorized and permitted to share such information (subject to the obligation of confidentiality set forth in Section 8) without waiving any applicable Privilege or violating any duty of confidentiality.

7.    <u>Maintenance and Disposition of Wind-Down Debtors' Records</u>.  The PA Officer shall maintain accurate records of the administration of the Wind-Down Debtors' assets, including receipts and disbursements and other activity of each Wind-Down Debtor. The PA Officer may, but has no obligation to, engage a claims agent (including the Debtors' existing claims agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Wind-Down Debtors. The PA Officer shall be provided with originals or copies of, or access to all documents, communications, and business records of each Debtor that are in the possession of each Debtor and reasonably necessary or requested by the PA Officer for the administration and disposition of the Wind-Down Debtors' assets and the other activities and duties required to be performed by the PA Officer under the Plan, including with respect to the investigation and prosecution of the Retained Causes of Action.  The PA Officer shall be authorized to share materials reasonably requested by the Wind-Down Oversight Committee or Litigation Oversight Committee without violating any obligation of confidentiality or waiving any privilege, doctrine, immunity or protection from discovery or disclosure.

8.    <u>Confidentiality</u>. The PA Officer shall treat confidentially all information not publicly available that is received by the PA Officer in connection with this engagement or that is developed during this engagement, and the PA Officer shall not disclose such information except with the Wind-Down Oversight Committee, Litigation Oversight Committee, any party that has agreed in writing to maintain such information confidential, or as required by a court order or other legal process.  For the avoidance of doubt, this provision shall apply in all respects to any non-public information regarding the Wind-Down Debtors' Beneficiaries, and the PA Officer shall agree to comply with the *Order Granting the Debtors' and the Official Committee of Unsecured Creditors' Motions for Entry of an Order Requiring the Redaction of Certain Personally Identifiable Information* [Docket No. 694].

9.    <u>Indemnity</u>.  It shall be the sole responsibility of the Wind-Down Debtors to indemnify and defend the PA Officer and his or her employees, employers, designees, or professionals (collectively, the "**PA Parties**") from and against any and all claims, liability, loss, costs, damage, or expense (including reasonable attorneys' fees) asserted against them by reason of or arising out of or related to this Agreement or performance under this Agreement or the Plan Documents or any related transactions that are taken or omitted to be taken as set forth in this Agreement or the Plan Documents, payable solely from the Wind-Down Debtors' Assets; *provided* that there shall be no obligation to indemnify or defend a PA Party on account of specific acts or omissions resulting from such PA Party's willful misconduct, gross negligence or actual fraud, or from the PA Party's breach of the terms of this Agreement or the Plan, including, without limitation, failure to act in accordance with the directions of the Wind-Down Oversight Committee where applicable; *provided further* that any action taken or omitted to be taken in the case of the PA Officer with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute fraud, willful misconduct, or gross negligence.  Notwithstanding anything in the Plan Documents to the contrary, the PA Officer shall be indemnified and held harmless and shall have no liability to the Wind-Down Debtors, Holders of Claims or Interests, or any other party under any circumstances for any acts or omissions taken (or not taken) at the direction of the Wind-Down Oversight Committee or the Litigation Oversight Committee.

10.     Liability of the PA Parties; Exculpation.  The PA Parties shall not be liable for any losses, claims, damages, liabilities, or expenses in connection with (i) the affairs of the Wind-Down Debtors or for any act or omission taken or omitted to be taken pursuant to the discretion, powers, and authority conferred, or in good faith believed to be conferred, by this Agreement, the Plan, any Final Order, or applicable law, other than to the extent that such specific acts or omissions is determined, in a Final Order, to be the result of such PA Party's willful misconduct, gross negligence, or actual fraud and (ii) the affairs of, or any act or omission taken or omitted to be taken by, any distribution agent engaged by the PA Officer to the extent such exculpation is not provided for under the terms of engagement between the PA Officer and such distribution agent.  The PA Officer shall be entitled to enjoy all of the rights, powers, immunities, and privileges applicable to a chapter 7 trustee, subject to the provisions of the Plan and this Agreement.  The PA Officer may, in connection with the performance of his or her functions, and in his or her sole and absolute discretion, consult with its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.  Notwithstanding the foregoing, the PA Officer shall not have any obligation to consult with any attorneys, accountants, financial advisors, or agents, and his or her determination not to do so shall not result in the imposition of liability on the PA Officer or and PA Parties unless such determination is based on willful misconduct, gross negligence, or actual fraud.  The PA Parties shall not be liable whatsoever except for the performance of such duties and obligations as are specifically set forth in the Plan (including the Distribution Principles), and no implied covenants or obligations shall be read into this Agreement, the Wind-Down Oversight Committee Bylaws, or the Litigation Oversight Committee Bylaws against any of them.   The Wind-Down Debtors shall promptly, upon submission of invoices therefor, pay expenses reasonably incurred by the PA Officer or any PA Party in defending, participating in, or settling any action, proceeding, or investigation in which such PA Party is a party or is threatened to be made a party and which arises out of or due to such PA Party's duties, acts, or omissions, or the consequences of such duties, acts, or omissions, with respect to the implementation of the Plan or otherwise in connection with the affairs of the Wind-Down Debtors, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise; *provided, however*, that no expenses shall be paid to the PA Officer to the extent such expenses result from the PA Officer's willful misconduct, gross negligence, or actual fraud or are otherwise inconsistent with the provisions of the Plan or this Agreement.

11.     Removal, Resignation, or Replacement of the PA Officer.

(a)     The PA Officer shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtors are dissolved in accordance with the Plan and this Agreement, and (ii) the date on which the PA Officer resigns, is terminated in accordance with this Agreement, or is otherwise unable to serve.

(b)     The PA Officer may resign its duties at any time upon thirty (30) days' written notice to the Bankruptcy Court and the Notice Parties, *provided that* such resignation shall only become effective upon the appointment of a permanent or interim successor PA Officer as set forth in this Agreement.  Upon the appointment of a successor PA Officer, such successor shall become fully vested with all of the rights, powers, duties, and obligations of the

predecessor PA Officer pursuant to this Agreement, the Plan, and the Confirmation Order, and all responsibilities of the predecessor PA Officer shall be terminated.

(c)     The PA Officer may be removed (i) for any reason, by the majority vote of the Wind-Down Oversight Committee, in consultation with the Litigation Oversight Committee; *provided* that, to the extent there is any dispute regarding the removal of the PA Officer (including any dispute relating to any compensation or expense reimbursement due under this Agreement), to the fullest extent permitted by law, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute, or (ii) upon motion by any party in interest, by the Bankruptcy Court for cause shown after notice and a hearing.

(d)     In the event that a PA Officer resigns, is removed, or is otherwise unable to serve and must be replaced, the Wind-Down Oversight Committee shall elect a successor to be appointed by the New Board to serve as a PA Officer. If the Wind-Down Oversight Committee does not elect a successor within five (5) Business Days, then the Bankruptcy Court, upon the motion of any party in interest, including counsel to the Wind-Down Debtors, shall appoint a successor to serve as a PA Officer. The successor PA Officer appointed shall immediately become fully vested with all of the rights, powers, duties, and obligations of the predecessor PA Officer pursuant to this Agreement, the Plan, and the Confirmation Order and shall serve until replaced or reappointed by the Wind-Down Oversight Committee pursuant to this section.

(e)     Notwithstanding anything to the contrary contained in this Agreement, any PA Officer who is removed or resigns pursuant to this Agreement shall (i) retain its right to coverage under any applicable insurance policies and indemnification in accordance with Article I.9 hereof for its acts or omissions occurring prior to such removal or resignation and (ii) be entitled to all fees and expenses accrued up to the date of such removal or resignation pursuant to this Agreement, including any travel or related expenses incurred in returning from the location of the services being provided under this Agreement prior to such termination or resignation date.

## ARTICLE II
## TERMINATION

1.     This Agreement shall terminate automatically upon the earlier of the date which (a) all of the Chapter 11 Cases have been closed and all payments have been made under the Plan (including the PA Officer's compensation and reimbursement), or (b) the Wind-Down Debtors are dissolved in accordance with Article IV.A.14 of the Plan.

2.     Upon termination of this Agreement pursuant to Article II.1, the PA Officer shall be entitled to all fees and expenses provided for under this Agreement accrued up to the date of such termination and any further fees and expenses associated with the dissolution of the Wind-Down Debtors' Estates.

## ARTICLE III
## MISCELLANEOUS PROVISIONS

1.    <u>Notice</u>.   All invoices, notices, requests, demands, and other communications permitted or required to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed conclusively to have been given:  (a) when personally delivered; (b) when sent by electronic mail during a Business Day (or on the next Business Day if sent after the close of normal business hours or on any non-Business Day); (c) one (1) Business Day after being sent by reputable overnight express courier (charges prepaid); or (d) three (3) Business Days following mailing by certified or registered mail, postage prepaid and return receipt requested.  Unless another address is specified in writing, notices, requests, demands, and communications to the Parties hereto shall be sent to the addresses indicated below:

To the Wind-Down Debtors:

c/o Genesis Global Holdco, LLC
175 Greenwich Street, Floor 38
New York, NY 10007
Attn:   A. Derar Islim

To the PA Officer:

Mark Renzi
c/o Berkeley Research Group, LLC
99 High Street
27th Floor
Boston, MA 02110
E-mail: mrenzi@thinkbrg.com

To the Wind-Down Oversight Committee:

Amelia Alvarez; Olivier Cohen; Teddy Gorisse;
Vadim Khramov; Mark Nuvelstijn; Khing Oei;
Refael Sofair

To the Litigation Oversight Committee:

Vijay Boyapati; Olivier Cohen; Teddy Gorisse;
Vadim Khramov; Ari Litan; Mark Nuvelstijn;
Refael Sofair

2.    <u>Survivability</u>.  <u>Sections I.6, I.7, and II.3</u> and all other provisions necessary to the enforcement of the intent of this Agreement shall survive the termination or expiration of this Agreement.

3.    <u>Inconsistencies</u>.  In the event of an inconsistency between this Agreement and the Plan, the terms of this Agreement shall control in all respects.  In the event of an inconsistency between the Confirmation Order, the Plan, and this Agreement, the Confirmation Order shall control.

4.    Severability.  If any portion of this Agreement shall be determined to be invalid or unenforceable, the remainder of this Agreement shall be valid and enforceable to the maximum extent provided by applicable law.

5.    Assignment.    Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be assigned by any of the Parties (whether by operation of law or otherwise) without the prior written consent of the PA Officer and the Wind-Down Oversight Committee.

6.    Governing Law.    This Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to choice of law or principles thereof.  In any court proceeding arising out of or related to this Agreement, each of the Parties hereby waives any right to trial by jury.  Each of the Parties hereby submits to the exclusive jurisdiction of the Bankruptcy Court for purposes of any proceeding arising from or related to this Agreement, and each of the Parties agrees not to commence any action, suit, or proceeding relating thereto except in the Bankruptcy Court.

7.    Entire Agreement.  This Agreement and the Plan Documents encompass all of the terms and conditions between the Wind-Down Debtors and the PA Officer concerning the subject matter hereof.  This Agreement may not be amended or modified in any respect except in a writing signed by the PA Officer with the consent of the Wind-Down Oversight Committee.

8.    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same Agreement.  A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission (.pdf) shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

9.    Amendments.  This Agreement may be amended by written agreement of the PA Officer with the consent of the Wind-Down Oversight Committee; *provided*, *however*, that such amendment may not be inconsistent with the Plan or Confirmation Order.

[SIGNATURE PAGES FOLLOW]

12

THE DEBTORS:

GENESIS GLOBAL HOLDCO, LLC, ON
BEHALF OF ITSELF AND ITS AFFILIATED
DEBTORS


By:_____
Name: A. Derar Islim
Title: Interim Chief Executive Officer

THE PA OFFICER:

MARK RENZI
BERKELEY RESEARCH GROUP, LLC


By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Name: Mark Renzi

## <u>EXHIBIT S</u>

### Identity of the GAP Director

Pursuant to Article IV.B.7 of the Plan, upon the Effective Date, Lip Chih Ng (a current director of GAP) shall be appointed as the GAP Director.  As of the Effective Date, the GAP Director will receive the following compensation: (a) an annual fee equal to S$9,500 per annum and (b) an hourly rate equal to S$950.