**Hearing Date: May 8, 2024 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: May 1, 2024 at 4:00 p.m. (Prevailing Eastern Time)**

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF DEBTORS' MOTION**
**FOR ENTRY OF AN ORDER (I) APPROVING A**
**SETTLEMENT AGREEMENT WITH GPD HOLDINGS**
**LLC D/B/A COINFLIP AND (II) GRANTING RELATED RELIEF**

　　　　　**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors-in-possession ("Debtors"), by and through their undersigned counsel, filed a motion (the "Motion") for entry of an order, substantially in the form attached thereto as Exhibit A (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

---

[1] 　　　　The Debtors in the above-captioned cases, along with the last four digits of each Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of the above-captioned cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

(i) approving a settlement and compromise by and among the Debtors and GPD Holdings LLC d/b/a CoinFlip and (ii) granting related relief.

PLEASE TAKE FURTHER NOTICE THAT a hearing on the Motion will be held via Zoom before the Honorable Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 on **May 8, 2024 at 11:00 a.m. (Eastern Time)** (the "Hearing Date").

PLEASE TAKE FURTHER NOTICE that responses or objections, if any, to the Motion or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **May 1, 2024 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline") and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order"). The Debtors shall have until **May 6, 2024 at 12:00 p.m. (Eastern Time)** (the "Reply Deadline") to file their reply, if any.

PLEASE TAKE FURTHER NOTICE that parties wishing to register for the Zoom hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances. Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so by calling the following muted, listen-only number: 1-929-205-6099, Access Code: 92353761344#.

PLEASE TAKE FURTHER NOTICE that if no written objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit A to the Motion, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

PLEASE TAKE FURTHER NOTICE that the Hearing may affect your rights. Please read the Motion carefully and, if you have one available, discuss it with your attorney. (If you do not have an attorney, you should consider consulting with one.)

PLEASE TAKE FURTHER NOTICE that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing. If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Debtors.

Dated:   April 17, 2024
         New York, New York

/s/ Luke A. Barefoot
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for the Debtors
and Debtors-in-Possession*

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) APPROVING A SETTLEMENT AGREEMENT WITH
## GPD HOLDINGS LLC D/B/A COINFLIP AND (II) GRANTING RELATED RELIEF

---

[1] The Debtors in the Chapter 11 Cases along with the last four digits of each Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564) ("GGC"); Genesis Asia Pacific Pte. Ltd. (2164R) ("GAP").  For the purpose of the Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

JURISDICTION AND VENUE ..................................................................................... 2

BACKGROUND ............................................................................................................ 3

A.    The Chapter 11 Cases ............................................................................................ 3

B.    Prepetition Dealings Between the Parties ............................................................. 3

C.    The Claim Against the Debtors............................................................................. 5

RELIEF REQUESTED................................................................................................... 7

BASIS FOR RELIEF ..................................................................................................... 9

A.    The Settlement is Fair, Equitable, Reasonable, and in the Best
      Interest of the Debtors' Estates ............................................................................ 9

B.    The Settlement Agreement Falls Well Within the Range
      of Reasonableness ................................................................................................. 12

NOTICE......................................................................................................................... 15

NO PRIOR REQUEST .................................................................................................. 15

CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. of Chicago (In re Ionosphere Clubs, Inc.),*
156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ............................... 9

*Citizens Bank of Maryland v. Strumpf,*
516 U.S. 16 (1995) ........................................................................................ 10

*Cosoff v. Rodman (In re W.T. Grant Co.),*
699 F.2d 599 (2d Cir. 1983) ........................................................................... 10

*Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.),*
52 F.3d 41 (2d Cir. 1995) ............................................................................... 12

*Fla. Trailer & Equip. Co. v. Deal,*
284 F.2d 567 (5th Cir. 1960) .......................................................................... 10

*In re Ben-Artzi,*
2021 WL 5871718 (Bankr. S.D.N.Y. Dec. 10, 2021) ...................................... 11

*In re Chemtura Corp.,*
439 B.R. 561 (Bankr. S.D.N.Y. 2010) ........................................................... 11

*In re Dewey & LeBoeuf LLP,*
478 B.R. 627 (Bankr. S.D.N.Y. 2012) ........................................................... 11

*In re Hibbard Brown & Co.,*
217 B.R. 41 (Bankr. S.D.N.Y. 1998) ............................................................. 10

*In re Purofied Down Prods. Corp.,*
150 B.R. 519 (S.D.N.Y. 1993) .................................................................... 10, 11

*In re RCS Cap. Dev.,*
2013 WL 3618550 (9th Cir. B.A.P. 2013) ...................................................... 10

-ii-

**Page(s)**

*In re Westchester Structures, Inc.*,
   181 B.R. 730 (Bankr. S.D.N.Y. 1995) ................................................................ 10

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*,
   25 F.3d 1132 (2d Cir. 1994) ................................................................ 12

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
   478 F.3d 452 (2d Cir. 2007) ................................................................ 11

*Nellis v. Shugrue*,
   165 B.R. 115 (S.D.N.Y. 1994) ................................................................ 10, 12

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*,
   390 U.S. 414 (1968) ................................................................ 9

*U.S. v. Energy Res. Co.*,
   495 U.S. 545 (1990) ................................................................ 12

*Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*,
   134 B.R. 499 (Bankr. S.D.N.Y. 1991) ................................................................ 9

## Rules and Statutes

11 U.S.C. § 105(a) ................................................................ *passim*

11 U.S.C. § 1102 ................................................................ 3

11 U.S.C. § 1107 ................................................................ 3

11 U.S.C. § 1108 ................................................................ 3

28 U.S.C. § 157 ................................................................ 2, 3

28 U.S.C. § 1334 ................................................................ 2

28 U.S.C. § 1408 ................................................................ 3

28 U.S.C. § 1409 ................................................................ 3

NY C.P.L.R. § 5004 ................................................................ 5

**Page(s)**

**Other Authorities**

Fed. R. Bankr. P. 1015(b) ................................................................................................ 3

Fed. R. Bankr. P. 9019(a) ................................................................................................ *passim*

Genesis Global Holdco, LLC ("Holdco")[1] and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the settlement agreement by and among the Debtors and GPD Holdings LLC d/b/a CoinFlip ("CoinFlip," and together with the Debtors, each a "Party" and collectively the "Parties"), attached hereto as Exhibit B (as may be amended by the Parties, the "Settlement Agreement"). In support of this Motion, the Debtors submit the *Declaration of Derar Islim in Support of the Debtors' Motion for Entry of an Order (I) Approving a Settlement Agreement with GPD Holdings LLC d/b/a CoinFlip and (II) Granting Related Relief* (the "Islim Declaration"), attached hereto as Exhibit C, and respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1.      Through this Motion, the Debtors seek this Court's approval of the Settlement Agreement to fully resolve outstanding claims between GGC and Coinflip, including those claims set forth in the proof of claim filed by CoinFlip in these Chapter 11 Cases.

2.      The Parties agree that, pursuant to prepetition lending agreements, there are mutually-owing obligations between GGC and CoinFlip, whereby CoinFlip owes GGC certain Loaned Assets and GGC owes CoinFlip certain Posted Collateral. The Parties disagree on, *inter*

---

[1]      All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement (as defined herein).

[2]      All capitalized terms used in this Preliminary Statement shall have the meaning ascribed to them elsewhere in the Motion.

*alia*, the date upon which those obligations should be valued for purposes of set off. However, the delta of roughly $766,000 between the Parties is *de minimis* in the context of the Debtors' overall claims pool. Thus, in order to resolve the dispute, the Parties have entered into the Settlement Agreement, which provides that, among other things, each Party shall retain all amounts currently held and Coinflip shall have an allowed general unsecured claim against GGC in the amount of $200,000 (denominated in U.S. Dollars).[3]

3.      The Settlement Agreement, if approved, will provide benefit to the Debtors' estates by, among other things, resolving a claim against the Debtors, where the delta between the claimant and the Debtors' is *de minimis*; narrowing the total amount of general unsecured claims against the estates; and eliminating the risks, expenses, and uncertainty associated with potential continued litigation among the Parties.

4.      Accordingly, and for all the reasons set forth herein, the Debtors submit that entry into the Settlement Agreement is a sound exercise of the Debtors' business judgment, fair and equitable, reasonable, and in the best interests of the Debtors' estates. The Debtors respectfully request that the Court grant the relief requested in this Motion, approve the Settlement Agreement, and enter the Proposed Order.

## **JURISDICTION AND VENUE**

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012

---

[3]      Any summary of the Settlement Agreement contained herein is solely for illustrative purposes and is qualified in its entirety by the actual terms and conditions of the Settlement Agreement. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

(Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.  The Chapter 11 Cases

6.      On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).  *See Joint Administration Order* (ECF No. 37).  No trustee or examiner has been appointed in the Chapter 11 Cases.  The Official Committee of Unsecured Creditors (the "Committee") was appointed by the United States Trustee for Region 2 on February 3, 2023, pursuant to Section 1102(a) of the Bankruptcy Code.  *See Notice of Appointment of Official Committee of Unsecured Creditors* (ECF No. 55).

### B.  Prepetition Dealings Between the Parties[4]

7.      The Debtors' operations include lending and borrowing services for digital assets.  Beginning in 2019, Genesis Global Capital, LLC ("GGC") and CoinFlip[5] entered into various agreements that set out the terms of their lending relationship.

8.      Specifically, on November 27, 2019, GGC, as lender, entered into a Master Loan Agreement with CoinFlip, as borrower (the "MLA"), pursuant to which GGC could, from

---

[4]      The Debtors hereby incorporate by reference the recitals contained in the Stipulation (as defined below) into this Background.

[5]      In response to an inquiry from Counsel to the Ad Hoc Group of Genesis Lenders (the "AHG"), the Debtors have confirmed with counsel for CoinFlip that it has no relationship with the Debtors' parent, Digital Currency Group, Inc.  While counsel for the Debtors sought to confirm this resolved the AHG's questions concerning the Motion, they did not receive a further response before the deadline to timely file the Motion for the proposed hearing date.

time to time, loan digital assets or U.S. Dollars ("USD") to CoinFlip, subject to the terms and conditions stated therein. The MLA required CoinFlip to post collateral in digital assets and/or USD to secure its obligations to GGC (the "Collateral") unless otherwise agreed to by the parties or modified in the Loan Term Sheets (as defined in the MLA). The MLA provided that any Collateral transferred to GGC under the MLA would secure all obligations of CoinFlip to GGC under the MLA.

9.    CoinFlip and GGC subsequently entered into three loan term sheets, pursuant to which GGC loaned specific digital asset to CoinFlip (the "Loans"): (i) that certain Loan Term Sheet dated September 15, 2021, pursuant to which GGC loaned 1,700 LTC to CoinFlip, with a Loan Fee of 10.50% per annum (the "LTC Term Sheet"); (ii) that certain Loan Term Sheet dated September 15, 2021, pursuant to which GGC loaned 90 ETH to CoinFlip, with a Loan Fee of 8.00% per annum (the "ETH Term Sheet"); and (iii) that certain Loan Term Sheet dated June 2, 2022, pursuant to which GGC loaned 235 BTC to CoinFlip, with a Loan Fee of 5.5% per annum, and CoinFlip pledged 61 BTC, 466 ETH, 1,806 LTC and $3,104,112 USD (both originally and later posted cash collateral) as Collateral (the "BTC Term Sheet" and, together with the LTC Term Sheet and the ETH Term Sheet, the "Term Sheets"; such loaned digital assets are referred to herein as the "Loaned Assets," and such pledged Collateral as the "Posted Collateral").[6]

10.    On November 16, 2022, CoinFlip sent GGC an email stating that its collateral-to-loan value was 129.25% and requesting "a margin refund of $3,079,787.97" (the "Margin Refund Demand"). On November 17, 2022, GGC and CoinFlip had an exchange on the

---

[6]    While the third WHEREAS clause of the Stipulation (as defined below) inadvertently referred to only the portion of the cash collateral that CoinFlip had posted to GGC as called for in the BTC Term Sheet, the final alternative claims figures included in the Stipulation reflected the total aggregate cash collateral posted by CoinFlip to GGC on account of the Loaned Assets. In any event, any ambiguity in such WHEREAS clause has been corrected in the Settlement Agreement.

Telegram messaging application regarding the Margin Refund Demand.  On November 17, 2022, CoinFlip sent GGC a document entitled "Notice of Termination" (the "Termination Notice").  On January 5, 2023, CoinFlip sent GGC a document entitled "Follow-Up to Notice of Termination" (which included a copy of the Termination Notice).  The Parties dispute that CoinFlip's Termination Notice actually and properly terminated the Loans.

### C.  The Claim Against the Debtors

11.    On or about May 22, 2023, CoinFlip filed proof of claim number 514 ("Claim No. 514"), timely amended on July 7, 2023 by proof of claim number 810 ("Claim No. 810"), against GGC in the Chapter 11 Cases, asserting a claim in the amount of at least $669,552.00 after setting off the mutual obligations of the Parties under the MLA, consisting of the following values asserted by CoinFlip:  (1) $659,310.10, as the value of Posted Collateral held by the Debtor less the value of the Loaned Assets held by CoinFlip, in each case based on market value at close of business as of the Termination Notice; plus (2) pre-judgment interest on such amount at the New York prejudgment rate (9%) under New York C.P.L.R. § 5004 from November 17, 2022 through the Petition Date.

12.    On November 11, 2023, the Debtors filed the *Debtors' Fourth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Duplicate, Amended and No Liability)* (the "Fourth Omnibus Objection") (ECF No. 995), seeking to disallow and expunge Claim No. 514, among other claims, on the grounds that it had been amended and superseded by Claim No. 810.  On January 19, 2024, this Court entered the *Order Granting Debtors' Fourth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Duplicate, Amended and No Liability)* (ECF No. 1169), disallowing and expunging Claim No. 514.

13.     On February 15, 2024, the Debtors filed the *Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Twenty-Third Omnibus Objection") (ECF No. 1315), seeking to disallow and expunge certain proofs of claim, including Claim No. 810, on the basis that claimants included in the Twenty-Third Omnibus Objection had mutually-owing obligations outstanding, resulting in a net claim after setoff in the Debtors favor such that the claimants had no claim against the Debtors.[7]

14.     On March 7, 2024, CoinFlip filed the *Response and Reservation of Rights of GPD Holdings LLC d/b/a CoinFlip to Debtors' Twenty-Third Omnibus Objection (Non Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "CoinFlip Response") (ECF No. 1436), which opposed the relief sought in the Twenty-Third Omnibus Objection as to CoinFlip and Claim No. 810.

15.     On April 1, 2024, the Debtors filed the *Stipulation By and Among the Debtors and GPD Holdings LLC d/b/a CoinFlip Regarding the Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Stipulation") (ECF No. 1541), stipulating as to the value of the Loaned Assets and Posted Collateral if the Court were to value each using November 17, 2022 (the "Termination Date"), the Petition Date, or the date of the filing of the Kinealy Declaration (as defined and attached as Exhibit B to the Twenty-Third Omnibus Objection).

---

[7]     On March 11, 2024, the Debtors filed the *Notice of Adjournment of Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability) Solely with Respect to Claim Nos. 223, 353, and 810* (ECF No. 1454), adjourning the Twenty-Third Omnibus Objection with respect to certain claims, including Claim No. 810 to the April 16, 2024 omnibus hearing.  On April 11, 2024, the Debtors filed the *Notice of Further Adjournment of Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability) Solely with Respect to Claim No. 810* (ECF No. 1570), further adjourning *sine die* the Twenty-Third Omnibus Objection solely with respect to Claim No. 810.

16.     On April 9, 2024, CoinFlip filed the *Supplemental Response and Memorandum of Law of GPD Holdings LLC d/b/a CoinFlip Regarding the Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Supplemental Response") (ECF. No. 1557).

17.     The Parties agree that there are mutually-owing obligations between GGC and CoinFlip under the MLA and Term Sheets whereby CoinFlip owes GGC certain Loaned Assets (the "CoinFlip Obligations") and GGC owes CoinFlip certain Posted Collateral (the "GGC Obligations").  Subsequently, the Parties executed the Settlement Agreement on April 17, 2024.

## RELIEF REQUESTED

18.     By this Motion, the Debtors respectfully request that the Court enter the Proposed Order, approving the Settlement Agreement.  The Settlement Agreement terms, as they relate to the Debtors, are as follows[8]:

a.     **Settlement Amount**: As of the Settlement Effective Date, in full settlement of the Genesis Obligations and the Claimant Obligations, and in exchange for the releases described in Section 2 of this Settlement Agreement: (i) Claim No. 810 shall be Allowed[9] as a General Unsecured Claim against GGC in the amount of $200,000 (denominated in U.S. Dollars) (the "Settlement Claim Amount") and classified as a Class 3 claim (Fiat-or-Stablecoin-Denominated Unsecured Claims) under Section III.C.3 of the Plan and, subject to occurrence of the Effective Date of the Plan, entitled to the treatment provided thereunder (the "Class 3 Treatment"); and (ii) CoinFlip shall be entitled to retain the Loaned Assets and the Debtors shall be entitled to retain the Posted Collateral.

b.     **Covenant Not to Object to or Prevent Confirmation or Consummation of Genesis Plan**:  As of the Settlement Effective Date (as defined below), the Claimant shall not object, appeal or otherwise seek to prevent the consummation or

---

[8]     Any summary of the Settlement Agreement contained herein is solely for illustrative purposes and is qualified in its entirety by the actual terms and conditions of the Settlement Agreement.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

[9]     Capitalized terms not defined in this Section herein shall have the meanings ascribed thereto in the *Debtors' Amended Joint Chapter 11 Plan* (ECF No. 1392), as may be subsequently amended, modified, or supplemented (the "Plan") or the Settlement Agreement, as applicable.

confirmation or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object to, appeal or otherwise seek to prevent the consummation or confirmation of any chapter 11 plan, including the Plan, in respect of the Debtors, solely to the extent that such plan is not inconsistent with the terms and conditions of this Settlement Agreement (including, without limitation, the substantive provisions of the Class 3 Treatment); provided that nothing in this Settlement Agreement (and neither a vote to accept any such chapter 11 plan nor the acceptance of such plan, to the extent applicable) shall be construed to limit the Claimant's right to appear as a party-in-interest in any matter to be adjudicated in the Chapter 11 Cases, so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Settlement Agreement and are not for the purposes of hindering, delaying, or preventing the approval or consummation of this Settlement Agreement.

c.    **Releases**:

i.    **Mutual Release:** On the Settlement Effective Date (as defined below), each of the Parties, on behalf of itself, its affiliates, and each and all of its and its affiliates' respective past, present and future agents, heirs, executors, administrators, conservators, predecessors, successors, assigns, noteholders, direct and indirect parents, principals, subsidiaries, affiliates, related companies, shareholders, interest holders, investors, members, partners (including, without limitation, general and limited partners), managers, representatives, receivers, attorneys and beneficiaries, and the past, present and future officers, directors and employees of each of them (all such releasing persons and entities collectively, the "Releasing Parties"), does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge each other Party and each other Party's respective past, present and future agents, heirs, executors, administrators, conservators, successors, assigns, noteholders, participants, co-participants, direct and indirect parents, principals, subsidiaries, affiliates, related companies, shareholders, interest holders, investors, members, partners (including, without limitation, general and limited partners), managers, directors, representatives, contractors, service providers, receivers, attorneys and beneficiaries, and the past, present and future officers, directors, and employees (all such released persons and entities collectively, the "Released Parties") from, against, and in respect of any and all past, present and future claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, that any of the Releasing Parties have or may have against any of the Released Parties since the beginning of time, in each case that are under, arising out of or in connection with the CoinFlip MLA, the Term Sheets, the Claimant Obligations, or the Genesis Obligations (all of the foregoing, the "Released Claims", which Released Claims shall include any

8

right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with, any of the foregoing), in all cases other than the Allowed CoinFlip Claim, the Class 3 Treatment and the Parties' obligations under this Settlement Agreement (the "Mutual Release").

## BASIS FOR RELIEF

### A. The Settlement is Fair, Equitable, Reasonable, and in the Best Interest of the Debtors' Estates

16.     The Debtors have determined, in consultation with their advisors, that the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Debtors' estates.  By this Motion, the Debtors request approval of the Settlement Agreement pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).  Bankruptcy Rule 9019(a) provides, in the relevant part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the [E]state[s]." *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *In re Terrestar Corp.*, No. 11-10612 (SHL) (Bankr. S.D.N.Y. Aug. 24, 2012) (ECF No. 593) (approving a settlement providing for pre-confirmation distribution under Bankruptcy Rule 9019).

17.     In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), a court must find that the proposed settlement is fair and equitable, reasonable, and in the best interests of the debtor's estates and creditors.  *See Protective Comm. For Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *see also Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  A decision to approve a particular compromise or settlement is within the sound discretion of the bankruptcy court.  *See Drexel Burnham,* 134 B.R. at 505.  In addition, a bankruptcy court should exercise its discretion

9

"in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see also Nellis v. Shugrue*, 165 B.R. 115, 122–23 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above.").

18.    In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvas the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *See In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (in making the determination of reasonableness, the court need not conduct a "mini-trial" on the merits); *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); Memorandum Decision, *In re Genesis Global Holdco LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y, October 6, 2023) (ECF No. 781, the "FTX Settlement Order").[10]  "All that [the proponent of the settlement] must do is establish [that] it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly [the settlement] might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (citation omitted). In the Second Circuit, bankruptcy courts apply the following factors (the "*Iridium* Factors") in determining whether a settlement is fair and equitable:

    (a)    the balance between the litigation's possibility of success and the settlement's future benefits;

---

[10]    The Debtors note that the Settlement Agreement puts the Debtors in the same position they would be in if they were to effectuate a setoff pursuant to Bankruptcy Code sections 553 and 558, which they would be entitled to do, as the Parties independently have the right to effectuate the Settlement Agreement as a setoff pursuant to those same provisions. *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995); *In re Westchester Structures, Inc.*, 181 B.R. 730, 739–40 (Bankr. S.D.N.Y. 1995); *In re RCS Cap. Dev.*, 2013 WL 3618550 at *8 (9th Cir. B.A.P. 2013).

(b)    the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

(c)    the "paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;"

(d)    whether other parties in interest support the settlement;

(e)    the "competency and experience of counsel" who support the settlement;

(f)    the "nature and breadth of releases to be obtained by officers and directors;" and

(g)    the "extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007).

19.    Where most or all the *Iridium* Factors are satisfied, a settlement should be approved. *See In re Ben-Artzi*, 2021 WL 5871718 (Bankr. S.D.N.Y. Dec. 10, 2021) (approving a settlement where most but not all of the *Iridium* Factors were satisfied). When evaluating the necessary facts, a court may rely on the opinion of the debtor, parties to the settlement, and professionals. *See In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 641 (Bankr. S.D.N.Y. 2012) at 641; *see also In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010); *In re Purofied Down Prods. Corp.*, 150 B.R. at 522-23. In particular, the business judgment of the debtor in recommending the settlement should be factored into the court's analysis. *See MF Global Inc*., 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) (citing *JP Morgan Chase Bank, N.A.*

*v. Charter Commc'ns Operating LLC (In re Charter Commc'ns)*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009)); *see also Nellis*, 165 B.R. at 122–23.

20.    Additionally, under section 105 of the Bankruptcy Code, the Court has broad discretion to "carry out the provisions of this title."  11 U.S.C. § 105(a); *see also Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.)*, 52 F.3d 41, 45 (2d Cir. 1995) (holding that bankruptcy courts have broad equity power to manage the affairs of debtors); *Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[B]ankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

21.    The purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  2 Collier on Bankruptcy ¶ 105.01 (16th ed. 2023).  Such power conforms to the Court's inherent equitable authority.  *See, e.g., U.S. v. Energy Res. Co*., 495 U.S. 545, 549 (1990).

**B.  The Settlement Agreement Falls Well Within the Range of Reasonableness**

22.    In this case, weighing the reasonableness factors for purposes of Bankruptcy Rule 9019, the Debtors, following extensive consultation with their advisors, have concluded that the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Debtors' estates and, thus, should be approved.[11]  Islim Decl. ¶ 10.

---

[11]    The Debtors note that in its order approving the FTX Settlement Order, this Court found that "specific analysis and details of the resulting conclusions of the Genesis Debtors in consultation with their counsel about the value of each claim" is not necessary, and that the Court is not required to "conduct a 'mini-trial' to determine the merits of the underlying litigation."  FTX Settlement Order at 19-20.  Instead, this Court held it had "an appropriate evidentiary basis to review and approve" the agreement at issue given the Debtors and their restructuring professionals had "conducted a thorough analysis of all the claims", and the settlement negotiations were "primarily handled on behalf of the Genesis Debtors by their counsel . . . ."  *Id*. at 20-21.  Those same circumstances are met here.  *See infra* ¶¶ 12-18.

23.    ***First***, the Settlement Agreement will result in a full resolution of a $669,552.00 claim against the Debtors' estates, which will be allowed at $200,000.00 under the terms of the Settlement Agreement.   Therefore, the Settlement Agreement will benefit all unsecured creditors by reducing the total amount of General Unsecured Claims at a significant discount to the asserted amount and will therefore serve to maximize recoveries available to creditors.  Islim Decl. ¶ 6.

24.    ***Second***, as to the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay, the Debtors anticipate full litigation of Claim No. 810 would require the incurrence of not insignificant legal fees and costs, particularly relative to the value of the claim.   Islim Decl. ¶ 7.   In litigating Claim No. 810, the Parties would face additional briefing and a full trial on the merits before a final decision could be entered.   While the Parties have almost fully briefed the Debtors' objection to Claim No. 810 (with a reply to the Supplemental Response not yet filed), the existing briefing occurred in the context of a sufficiency hearing under the *Revised Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related Relief* (ECF No. 498) (the "Claims Procedures Order").  If the Court were to deny relief with respect to the Debtors on account of the Twenty-Third Omnibus Objection, this would lead to fulsome, evidentiary litigation, in addition to the costs attendant to preparation for a contested sufficiency hearing.  *See* Claims Procedures Order at ¶ 2.  The Debtors anticipate that the likely costs associated with such discovery and litigation would constitute a significant drain on the estate of the Debtors.  Islim Decl. ¶ 7.  Moreover, particularly in light of the fact that the Petition Date dollar value of the Debtors' claim pool numbers in the billions, the relative cost of litigating Claim No. 810 compared to its value would not be an efficient use of

estate resources.    Additionally, the resolution of the claim for $200,000.00 represents a compromise between CoinFlip's asserted claim of $669,552.00 payable by GGC to CoinFlip, and the amount the Debtors seek valued as of the Petition Date, which is $96,840.59 payable by CoinFlip to GGC. *See* Claim No. 810; Stipulation ¶ 3.  Thus the cost and complexity of litigating Claim No. 810 supports the reasonable nature of the Settlement Agreement.  Islim Decl. ¶ 7.

25.    ***Third***, the Settlement Agreement removes the risk of a potential adverse decision, which could negatively impact the Debtors' ability to resolve certain claims subject to the Twenty-Third Omnibus Objection, which have not yet been fully briefed or decided by this Court.  Islim Decl. ¶ 8.  Consequently, an adverse decision with respect to Claim No. 810 could lead to litigation between the Debtors and such creditors given the similarity of the MLAs to other lending agreements used by the Debtors, which litigation would result in the Debtors' estates incurring significant additional expenses. Islim Decl. ¶ 8.  Therefore, mitigating the risk of potential adverse decisions with respect to Claim No. 810 is in the best interests of the Debtors' estate.

26.    ***Fourth***, the Settlement Agreement is the product of arm's-length negotiations and significant efforts to reconcile CoinFlip's outstanding claim.  The Settlement Agreement was proposed, negotiated, and entered into by the Debtors and CoinFlip, both of whom are sophisticated parties, with the assistance of competent counsel, without collusion, in good faith, and from arm's-length bargaining positions.  Islim Decl. ¶ 9.  The Debtors, CoinFlip and their respective counsel have concluded it is ultimately in their best interests to enter into the Settlement Agreement.

27.    ***Fifth***, regarding the competency and experience of counsel supporting the Settlement Agreement, the Parties are represented by sophisticated and experienced

professionals—highly regarded law firms with significant restructuring, litigation, and other relevant experience.  Islim Decl. ¶ 9.

28.    ***Sixth***, and finally, the Debtors have exercised their informed business judgment to determine the Settlement Agreement is fair and reasonable and in the best interest of the Debtors upon consideration of the above-outlined factors.  Islim Decl. ¶ 10.

29.    Accordingly, the Debtors submit that the settlement and compromise embodied in the Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable, and should be approved.

### NOTICE

30.    The Debtors have provided notice of this Motion in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order").  The Debtors submit that, considering the nature of the relief requested, no other or further notice need be provided.

### NO PRIOR REQUEST

31.    No prior request for the relief requested herein has been made to this or any other Court.


*[The remainder of this page is left blank intentionally.]*

15

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as Exhibit A, approving the Settlement Agreement and (b) grant such other and further relief as is just and proper.

Dated:    April 17, 2024
            New York, New York

*/s/ Luke A. Barefoot*
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
*Counsel to the Debtors*
*and Debtors-in-Possession*

16

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

## ORDER (I) APPROVING A SETTLEMENT AGREEMENT WITH
## GPD HOLDINGS D/B/A COINFLIP AND (II) GRANTING RELATED RELIEF

Upon the Motion[2] of Genesis Global Holdco, LLC ("Holdco") and its affiliated

debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (the

"Chapter 11 Cases") for entry of an order (this "Order") pursuant to section 105(a) of title 11 of

the United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") approving a settlement and compromise by and

among the Debtors and CoinFlip; and the Court having jurisdiction to decide the Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having

found that it has personal jurisdiction over CoinFlip; and due and proper notice of the relief sought

in the Motion and the opportunity for a hearing thereon having been provided in accordance with

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of the Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Bankruptcy Rule 2002(a)(3) and the Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Settlement Agreement is fair and reasonable, is a valid exercise of the Debtors' business judgment, and constitutes reasonably equivalent value among the parties thereto.

3.      Pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Settlement Agreement is approved, and the Debtors are authorized to enter into the Settlement Agreement.

4.      Upon the Settlement Effective Date (as defined in the Settlement Agreement), pursuant to the terms of the Settlement Agreement, (a) Claim No. 810 is hereby ALLOWED as a General Unsecured Claim against GGC in the amount of $200,000.00 (denominated in U.S. Dollars); (b) such claim shall be classified as a Class 3 claim (Fiat-or-Stablecoin-Denominated Unsecured Claims) under Section III.C.3 of the Plan and, subject to occurrence of the Effective Date of the Plan, entitled to the treatment provided thereunder; and (c) CoinFlip shall be entitled to retain the Loaned Assets and the Debtors shall be entitled to retain the Posted Collateral.

5.      The Parties are authorized to take any action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement in accordance with this Order, including without limitation to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement in accordance with this Order.

6.      This Court shall retain exclusive jurisdiction over the parties to the Settlement Agreement and any matters, claims, rights or disputes arising from or related to the Motion or the implementation, interpretation or enforcement of this Order.

Dated: _____, 2024
         White Plains, New York

                                        _____
                                        THE HONORABLE SEAN H. LANE
                                        UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement"), dated April 17, 2024 is made and entered into by (i) Genesis Global Capital, LLC ("GGC") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the jointly-administered chapter 11 cases proceeding under the caption *In re Genesis Global Holdco, LLC, et al.* Case No. 23-10063 (SHL) (the "Chapter 11 Cases") and GPD Holdings LLC d/b/a CoinFlip ("CoinFlip" or the "Claimant" and, together with the Debtors, each a "Party" and, collectively, the "Parties");

**WHEREAS,** on November 27, 2019, the Claimant entered into a Master Loan Agreement with GGC, with GGC as the lender and the Claimant as the borrower, (the "CoinFlip MLA"), pursuant to which GGC could, from time to time, loan digital assets or U.S. Dollars ("USD") to CoinFlip, subject to the terms and conditions stated therein;

**WHEREAS,** the CoinFlip MLA required CoinFlip to post collateral in digital assets and/or USD to secure its obligations to GGC (the "Collateral") unless otherwise agreed to by the parties or modified in the Loan Term Sheets (as defined in the CoinFlip MLA);

**WHEREAS,** the CoinFlip MLA provided that any Collateral transferred to GGC under the CoinFlip MLA would secure all obligations of CoinFlip to GGC under the CoinFlip MLA;

**WHEREAS,** CoinFlip and GGC subsequently executed three term sheets under the CoinFlip MLA for specific digital asset loans (the "CoinFlip Loans"): (i) that certain Loan Term Sheet dated September 15, 2021, pursuant to which GGC lent 1,700 LTC to CoinFlip, with a Loan Fee of 10.50% per annum (the "LTC Term Sheet"), (ii) that certain Loan Term Sheet dated September 15, 2021, pursuant to which GGC lent 90 ETH to CoinFlip, with a Loan Fee of 8.00% per annum (the "ETH Term Sheet"), and (iii) that certain Loan Term Sheet dated June 2, 2022, pursuant to which GGC lent 235 BTC to CoinFlip, with a Loan Fee of 5.5% per annum, and CoinFlip pledged to GGC 61 BTC, 466 ETH, 1,806 LTC and 3,104,112 USD (both originally and later posted cash collateral) as Collateral (the "BTC Term Sheet" and, together with the LTC Term Sheet and the ETH Term Sheet, the "Term Sheets"; such loaned digital assets are referred to herein as the "Loaned Assets," and such pledged Collateral as the "Posted Collateral");

**WHEREAS,** the Posted Collateral secured all of the CoinFlip Loans, pursuant to the terms of the CoinFlip MLA;

**WHEREAS,** the CoinFlip MLA and the Term Sheets are governed by the laws of the State of New York;

**WHEREAS,** on January 19, 2023, (the "Petition Date") the Debtors filed their respective petitions for voluntary relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), initiating the Chapter 11 Cases;

1

**WHEREAS**, on April 4, 2023, the Bankruptcy Court entered the *Order (i) Establishing Bar Dates for Submitting Proofs of Claim, (ii) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (iii) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (iv) Providing Certain Supplemental Relief* (ECF No. 200), setting May 22, 2023 at 4:00 PM Eastern Time as the general bar date;

**WHEREAS**, on or about May 22, 2023, the Claimant timely filed proof of claim number 514, which the Debtors objected to as part of the *Debtors' Fourth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Duplicate, Amended and No Liability)* (the "Fourth Omnibus Objection") (ECF No. 995),[1] and CoinFlip timely amended by filing proof of claim number 810 on July 7, 2023 ("Claim No. 810") against GGC in the Chapter 11 Cases in the aggregate amount of $669,552.00;

**WHEREAS**, on February 15, 2024, the Debtors filed the *Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Twenty-Third Omnibus Objection") (ECF No. 1315), which seeks to disallow and expunge certain proofs of claim, including Claim No. 810;

**WHEREAS**, on March 7, 2024, CoinFlip filed the *Response and Reservation of Rights of GPD Holdings LLC d/b/a CoinFlip to Debtors' Twenty-Third Omnibus Objection (Non Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "CoinFlip Response") (ECF No. 1436), which opposed the relief sought in the Twenty-Third Omnibus Objection as to CoinFlip and Claim No. 810;

**WHEREAS**, on April 1, 2024, the Debtors filed the *Stipulation By and Among the Debtors and GPD Holdings LLC d/b/a CoinFlip Regarding the Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Stipulation") (ECF No. 1541);

**WHEREAS**, on April 9, 2024, CoinFlip filed the *Supplemental Response and Memorandum of Law of GPD Holdings LLC d/b/a CoinFlip Regarding the Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Supplemental CoinFlip Response") (ECF. No. 1557);

**WHEREAS**, the Parties agree that there are mutually-owing obligations between GGC and CoinFlip under the CoinFlip MLA and Term Sheets whereby CoinFlip owes GGC certain Loaned Assets (together with all other obligations under the CoinFlip MLA and Term Sheets, including the payment of Loan Fees and/or Late Fees (as defined in the CoinFlip MLA), the "Claimant Obligations") and GGC owes CoinFlip certain Posted Collateral (together with all other obligations under the CoinFlip MLA and Term Sheets, the "Genesis Obligations") – although the Parties disagree on, *inter alia*, the date upon which the Claimant Obligations and the Genesis Obligations should be set off against each other;

---

[1]     On January 19, 2024 the Bankruptcy Court entered the *Order Granting Debtors' Fourth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (Duplicate, Amended and No Liability)* (ECF No. 1169), disallowing and expunging Claim No. 514.

**NOW, THEREFORE**, in consideration of the above and the respective promises, conditions, terms, and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

1.      **COMMITMENTS OF GGC AND THE CLAIMANT**

(a)      Settlement Amount: As of the Settlement Effective Date (defined below), in full settlement of the Genesis Obligations and the Claimant Obligations, and in exchange for the releases described in Section 2 of this Settlement Agreement: (i) Claim No. 810 shall be Allowed[2] as a General Unsecured Claim against GGC in the amount of $200,000 (denominated in U.S. Dollars) (the "Settlement Claim Amount") and classified as a Class 3 claim (Fiat-or-Stablecoin-Denominated Unsecured Claims) under Section III.C.3 of the Plan and, subject to occurrence of the Effective Date of the Plan, entitled to the treatment provided thereunder (the "Class 3 Treatment"); and (ii) CoinFlip shall be entitled to retain the Loaned Assets and the Debtors shall be entitled to retain the Posted Collateral.

(b)      Motion for Approval: The Debtors shall file a motion with the Bankruptcy Court seeking entry of an order (the "Approval Order") (i) approving the Parties' entry into this Settlement Agreement, on terms and conditions consistent with this Settlement Agreement, and (ii) allowing Claim No. 810 as modified in the Settlement Claim Amount (the "Allowed CoinFlip Claim"). Claimant agrees to reasonably cooperate with requests from the Debtors relating to obtaining entry of the Approval Order.

(c)      Covenant Not to Object to or Prevent Confirmation or Consummation of Genesis Plan: As of the Settlement Effective Date (as defined below), the Claimant shall not object, appeal or otherwise seek to prevent the consummation or confirmation or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object to, appeal or otherwise seek to prevent the consummation or confirmation of any chapter 11 plan, including the Plan, in respect of the Debtors, solely to the extent that such plan is not inconsistent with the terms and conditions of this Settlement Agreement (including, without limitation, the substantive provisions of the Class 3 Treatment); provided that nothing in this Settlement Agreement (and neither a vote to accept any such chapter 11 plan nor the acceptance of such plan, to the extent applicable) shall be construed to limit the Claimant's right to appear as a party-in-interest in any matter to be adjudicated in the Chapter 11 Cases, so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Settlement Agreement and are not for the purposes of hindering, delaying, or preventing the approval or consummation of this Settlement Agreement.

2.      **RELEASES**

(a)      Mutual Release. On the Settlement Effective Date (as defined below), each of the Parties, on behalf of itself, its affiliates, and each and all of its and its affiliates' respective past, present and future agents, heirs, executors, administrators, conservators, predecessors,

---

[2]      Capitalized terms not defined herein shall have the meanings ascribed thereto in the *Debtors' Amended Joint Chapter 11 Plan* (ECF No. 1392), as may be subsequently amended, modified, or supplemented (the "Plan").

successors, assigns, noteholders, direct and indirect parents, principals, subsidiaries, affiliates, related companies, shareholders, interest holders, investors, members, partners (including, without limitation, general and limited partners), managers, representatives, receivers, attorneys and beneficiaries, and the past, present and future officers, directors and employees of each of them (all such releasing persons and entities collectively, the "Releasing Parties"), does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge each other Party and each other Party's respective past, present and future agents, heirs, executors, administrators, conservators, successors, assigns, noteholders, participants, co-participants, direct and indirect parents, principals, subsidiaries, affiliates, related companies, shareholders, interest holders, investors, members, partners (including, without limitation, general and limited partners), managers, directors, representatives, contractors, service providers, receivers, attorneys and beneficiaries, and the past, present and future officers, directors, and employees (all such released persons and entities collectively, the "Released Parties") from, against, and in respect of any and all past, present and future claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, that any of the Releasing Parties have or may have against any of the Released Parties since the beginning of time, in each case that are under, arising out of or in connection with the CoinFlip MLA, the Term Sheets, the Claimant Obligations, or the Genesis Obligations (all of the foregoing, the "Released Claims", which Released Claims shall include any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with, any of the foregoing), in all cases other than the Allowed CoinFlip Claim, the Class 3 Treatment and the Parties' obligations under this Settlement Agreement (the "Mutual Release").

(b)     Exceptions to Mutual Release.

(i)     Notwithstanding any other provision of this Settlement Agreement, the Mutual Release does not affect the Parties' respective obligations under this Settlement Agreement or the Parties' respective rights to bring any claims or other causes of action arising out of or in connection with a breach of this Settlement Agreement.

(ii)     Notwithstanding any other provision of this Settlement Agreement, any affiliates or subsidiaries of the Digital Currency Group other than the Debtors (the "DCG Entities"), and such DCG Entities' respective directors, officers, employees, attorneys, accountants, and other professionals (collectively, the "DCG Persons"), are not Released Parties or Releasing Parties, and the Parties do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, all claims or other causes of action against any DCG Entity or DCG Person.

(iii)     Except as expressly set forth in this Settlement Agreement, the Parties do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or other causes of action against any person or entity that is not one of the Released Parties.

3.    **REPRESENTATIONS & ACKNOWLEDGEMENTS**

(a)    <u>Mutual Representations and Warranties of All Parties</u>.  Each Party represents and warrants to each other Party that as of the date of this Settlement Agreement:

(i)    in the case of GGC, subject to the entry of the Approval Order, it has the requisite organizational power and authority to enter into this Settlement Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Settlement Agreement;

(ii)    this Settlement Agreement constitutes a legal, valid, and binding obligation of such Party, enforceable against such Party in accordance with its terms; provided that GGC's obligations shall become binding only upon entry of the Approval Order and such order is not subject to any stay of effectiveness;

(iii)    the execution and delivery of this Settlement Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate or other organizational action on its part;

(iv)    in the case of GGC, subject to the entry of the Approval Order, the execution, delivery, and performance by it of this Settlement Agreement do not violate any provision of law, rule or regulation applicable to it or its certificates of incorporation, bylaws or other organizational documents; and

(v)    before executing this Settlement Agreement, it has been fully informed of its terms, contents, conditions and effects, it has had a full and complete opportunity to discuss this Settlement Agreement with its attorney or attorneys, it is not relying in any respect on any statement or representation made by any other Party and no promise or representation of any kind has been made to such Party separate and apart from what is expressly contained in this Settlement Agreement.

4.    **MISCELLANEOUS PROVISIONS**

(a)    <u>No Admission of Liability.</u>  The undersigned Parties each acknowledge and agree that the matters set forth in this Settlement Agreement constitute the settlement and compromise of disputed and potentially disputed claims and defenses, that this Settlement Agreement is not an admission or evidence of liability or infirmity by any of them regarding any claim or defense, and that the Settlement Agreement shall not be offered or received in evidence by or against any Party except to enforce its terms.

(b)    <u>Specific Performance</u>.  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Settlement Agreement by any Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach of this Settlement Agreement, including an order of the Bankruptcy Court or another court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.  Each Party also agrees that it will not (i) seek, and will waive any requirement for, the securing or posting of a bond in connection with any Party seeking or obtaining such relief or (ii) raise as a defense thereto the necessity of

proving the inadequacy of money damages as a remedy.

(c)    <u>Damages</u>.  Notwithstanding anything to the contrary in this Settlement Agreement, none of the Parties or any of their respective successors or assigns shall make a claim against, or seek to recover from, any other Party or the successors, assigns, directors, officers, employees, counsel, representatives, agents, or attorneys-in-fact of any of them for any special, indirect, consequential, exemplary, or punitive damages or damages for lost profits in respect of any claim for breach of contract or any other theory of liability arising out of or related to this Settlement Agreement.

(d)    <u>Further Assurances</u>.  The Parties shall use their reasonable best efforts to take, or cause to be taken, all appropriate action to do or cause to be done all things necessary under applicable law, and to execute and deliver such documents and other papers, in each case, as may be required to carry out the provisions of this Settlement Agreement and consummate and make effective the transactions contemplated hereby.

(e)    <u>Execution in Counterparts.</u>  This Settlement Agreement may be executed in counterparts by one or more of the Parties and all such counterparts when so executed shall together constitute the final Settlement Agreement, as if one document had been signed by all Parties; and each such counterpart, upon execution and delivery, shall be deemed a complete original, binding the Parties subscribed thereto upon the execution by all Parties to this Settlement Agreement.  Delivery of this signed agreement by facsimile transmission or by .pdf, .jpeg, .TIFF or other form of electronic mail attachment will be deemed effective as delivery of a manually executed counterpart prior to and in the absence of manual delivery and will be binding upon the parties.

(f)    <u>Governing Law</u>.  This Settlement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York).

(g)    <u>Consent to Jurisdiction</u>.  This Settlement Agreement shall be deemed to be made in New York.  Each Party irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the Bankruptcy Court for any action, suit or proceeding arising out of or based upon this Settlement Agreement or any matter relating to it, and waives any objection that it may have to the laying of venue in the Bankruptcy Court or that the Bankruptcy Court is an inconvenient forum or does not have personal jurisdiction over it.  To the extent that the Bankruptcy Court abstains from exercising or determines that it lacks jurisdiction over any such action, suit or proceeding, the Parties irrevocably submit to the jurisdiction of the federal and state courts of competent jurisdiction located in the Borough of Manhattan in the State of New York for the purposes of this Settlement Agreement and waive any objections as to venue or inconvenient forum.  Each Party waives any right to a trial by jury in any lawsuit, action or proceeding directly or indirectly based upon, arising out of or relating to this Settlement Agreement or any amendment, instrument, document or agreement delivered or to be delivered in connection with this Settlement Agreement and agrees that any such lawsuit, action or proceeding will be tried before a court and not before a jury.

6

(h)    Notices.  Any notices required hereunder shall be sent by registered mail, first class, return receipt requested, and by email, to the following:

(i)    If to GGC:

Andrew Sullivan
Genesis Global Holdco, LLC
175 Greenwich St., 38th Fl.
New York, NY 10007
asullivan@genesistrading.com

with copies to:

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225 2416
(212) 225 2929
(212) 225 2872
soneal@cgsh.com
lbarefoot@cgsh.com
jvanlare@cgsh.com
tkessler@cgsh.com

(ii)    If to the Claimant:

GPD Holdings LLC
Attn: Julie Hartley, Esq.
4957 Oakton St. #263
Skokie, IL 60077
jhartley@coinflip.tech

with copies to:

K&L Gates LLP
Robert T. Honeywell
599 Lexington Avenue
New York, NY 10022
(212) 536 4863
robert.honeywell@klgates.com

and

Carly S. Everhardt
200 S. Biscayne Boulevard, Suite 3900
Miami, FL 33131
(305) 539 3341
carly.everhardt@klgates.com

(i)    Entire Agreement and Amendments.  This Settlement Agreement constitutes the entire agreement and understanding between and among the Parties concerning the matters set forth herein and supersedes any prior agreements or understandings.  This Settlement Agreement may not be amended or modified, nor may any of its provisions be waived, except in writing signed by the Parties bound thereby, or by their respective authorized attorney(s), or other representative(s).

(j)    Assignment.  Neither this Settlement Agreement nor any of the rights and obligations of the Parties hereunder may be assigned by either Party without the prior written consent of the other Party, which consent will not be unreasonably withheld, except that each Party shall have the right to assign any or all of its rights and delegate any or all of its obligations hereunder to any of its affiliates or any successor in interest (whether by merger, acquisition, asset purchase, or otherwise), provided, that no assignment to any affiliate or successor in interest shall relieve or discharge the assigning party from any of its obligations hereunder.  Any assignment in violation of this section shall be void and of no force or effect.

(k)    Indemnification.  In the event of the breach of this Settlement Agreement, the breaching Party will indemnify, defend, and hold harmless the non-breaching Party and any of its affiliates, officers, directors, employees, agents, and subsidiaries from and against any dispute, claim, cause of action, liability, damage, cost, or expense (including, without limitation, reasonable attorneys' fees and court costs) arising out of or in connection with such breach.

(l)    Bankruptcy Court Approval.  This Settlement Agreement is binding upon the Parties upon signing, subject, solely in the case of GGC, to the entry of the Approval Order and such order is not subject to any stay of effectiveness.

(m)    Settlement Effective Date.  The "Settlement Effective Date" shall occur on the date that (i) signature pages executed by each of the Parties have been delivered to each of the other Parties, and (ii) the Bankruptcy Court has entered the Approval Order and such order is not subject to any stay of effectiveness.

**[*The remainder of this page is intentionally left blank.*]**

**IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

**GENESIS GLOBAL CAPITAL, LLC**

Date: April 17, 2024                    BY: _Andrew Sullivan_____
                                        F42F6115E20F498...

TITLE: General Counsel

PRINT NAME: Andrew Sullivan


**GPD HOLDINGS LLC D/B/A COINFLIP**

Date: April 17, 2024                    BY:_____

TITLE: General Counsel

PRINT NAME: Larry J. Lipka

**IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

**GENESIS GLOBAL CAPITAL, LLC**

Date: April 17, 2024                     BY:_____

TITLE: General Counsel

PRINT NAME: Andrew Sullivan

**GPD HOLDINGS LLC D/B/A COINFLIP**

Date: April 17, 2024                     BY: _Larry Lipka_____

TITLE: General Counsel

PRINT NAME: Larry J. Lipka

## **EXHIBIT C**

**Islim Declaration**

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas. S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DECLARATION OF A. DERAR ISLIM
IN SUPPORT OF THE DEBTORS' MOTION
FOR ENTRY OF AN ORDER (I) APPROVING A
SETTLEMENT AGREEMENT WITH GPD HOLDINGS LLC
D/B/A COINFLIP AND (II) GRANTING RELATED RELIEF**

I, A. Derar Islim, hereby declare under penalty of perjury, pursuant to section

1746 of title 28 of the United States Code, as follows:

1.      I submit this declaration (the "Islim Declaration") in support of the *Debtors' Motion*

*for Entry of an Order (I) Approving Settlement Agreement with GPD Holdings LLC d/b/a CoinFlip*

*and (II) Granting Related Relief* (the "Motion").[2]

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]      All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

**A.      Background**

2.      I am the interim Chief Executive Officer of Genesis Global Holdco, LLC, ("Holdco," and together with Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific PTE. Ltd., the "Debtors", and together with the Debtors and Holdco's non-Debtor subsidiaries, the "Company").  I have held my current title since August 17, 2022.

3.      I am generally familiar with the day-to-day operations and affairs of the Debtors, and have been directly involved in overseeing the Debtors' operations since the initiation of the Chapter 11 Cases.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge attained while working with the Debtors; discussions with other members of the Debtors' team and the Debtors' other advisors; my review of relevant documents; and my views based upon my professional experience.

4.      To the extent that the Debtors learn that any information provided herein is materially inaccurate, the Debtors will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my knowledge, information and belief.  I am authorized to submit this Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

**B.      The Settlement Agreement**

5.      Settlement negotiations were primarily handled on behalf of the Debtors by the Debtors' counsel Cleary Gottlieb Steen & Hamilton LLP, who consulted with Company's senior management and kept us updated about the process and progress of negotiations.

6.      The Settlement Agreement will result in a full resolution of a $669,552.00 claim against the Debtors' estates, to be allowed at $200,000.00.  Therefore, the Settlement Agreement will benefit all unsecured creditors by narrowing the total amount of General Unsecured Claims at

a significant discount to the asserted amount and adding immediate distributable assets to the estates that will therefore serve to maximize recoveries available to creditors.

7.      The Debtors anticipate full litigation of the claim would be both protracted and expensive, particularly relative to the value of the claim. In litigating Claim No. 810, the Parties could face discovery, briefing, and a full trial on the merits before a final decision could be entered. While the Parties have almost fully briefed the Debtors' objection to Claim No. 810, the existing briefing occurred in the context of a sufficiency hearing under the *Revised Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 (I) Establishing Claims Objection and Notice Procedures, (II) Establishing Claim Hearing Procedures and (III) Granting Related Relief* (ECF No. 498) (the "Claims Procedures Order"). If the Court were to deny relief with respect to the Debtors on account of the Twenty-Third Omnibus Objection, this would lead to fulsome, evidentiary litigation, in addition to the costs attendant to preparation for a contested sufficiency hearing. *See* Claims Procedures Order at ¶ 2. The Debtors anticipate that the likely costs associated with such discovery and litigation would constitute a significant drain on the estate of the Debtors relative to the size of Claim No. 810. Additionally, the resolution of the claim for $200,000.00 represents a compromise between CoinFlip's asserted claim of $669,552.00 payable by GGC to CoinFlip, and the amount the Debtors' seek valued as of the Petition Date, which is $96,840.59 payable by CoinFlip to GGC. *See* Claim No. 810; Stipulation ¶ 3. Thus the cost and complexity of litigating Claim No. 810 supports the reasonable nature of the Settlement Agreement.

8.      The Settlement Agreement removes the risk of a potential adverse decisions, which could negatively impact the Debtors' ability to resolve certain claims subject to the Twenty-Third Omnibus Objection which have not yet been fully briefed or decided by this Court. Consequently,

an adverse decision with respect to Claim No. 810 could lead to litigation between the Debtors and such creditors given the similarity of the MLAs to other lending agreements used by the Debtors, which litigation would result in the Debtors' estates incurring significant additional expenses. Therefore, mitigating the risk of potential adverse decisions with respect to Claim No. 810 is in the best interests of the Debtors' estates.

9.     The Settlement Agreement is the product of great efforts by both the Debtors and CoinFlip and is the product of extensive arm's length negotiations between the Debtors and CoinFlip.   On the part of the Debtors, the Settlement Agreement was also approved after consultation with senior management of the Debtors, which carefully weighed and considered the settlement prior to providing their approval.   The Parties are represented by sophisticated and experienced professionals—highly regarded law firms with significant restructuring, litigation, and other relevant experience.  The Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Genesis Debtors' estates.

10.     The Debtors have exercised their informed business judgment to determine the Settlement Agreement is fair and reasonable and in the best interest of the Debtors.

Dated: April 17, 2024
        New York, New York

/s/ A. Derar Islim
A. Derar Islim
Genesis Global Holdco, LLC