OXANA KOZLOV, SBN 209210
(Admitted Pro Hac Vice)
649 Dunholme Way
Sunnyvale, CA 94087
Telephone:     408-431-4543
Facsimile:     650-887-2135

*Counsel to Creditor* ▮▮▮▮▮▮▮▮ *(Claim No. 223)*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | : | Case No. 23-10063 (SHL) |
| Debtors. | : | (Jointly Administered) |

**CLAIMANT'S RESPONSE AND
RESERVATION OF RIGHTS TO DEBTORS' TWENTY-THIRD
OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO CERTAIN CLAIMS
PURSUANT TO 11 U.S.C. § 502 AND FED. R. BANKR. P. 3007 (NO LIABILITY)**

▮▮▮▮▮▮▮▮[2] in Claim No. 223 (the "Claimant"), by his undersigned counsel, hereby files this response and reservation of rights (the "Response") to the *Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (Docket No. 1315) (the "Objection"), and respectfully represents to the Court as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).

[2] Pursuant to the *Order Granting the Debtors' and the Official Committee of Unsecured Creditors' Motions for Entry of an Order Requiring the Redaction of Certain Personally Identifiable Information* (Docket No. 694) (the "Sealing Order"), counsel has redacted the Claimant's name from the public version of the Response and will provide unredacted copies pursuant to paragraph 6 of the Sealing Order.

1

**PRELIMINARY STATEMENT**

1.  By the Objection, the Debtors attempt to eradicate Claimant's claim (Claim No. 223) (the "Claim"), with inadequate factual support as to material facts and a critical failure to acknowledge that the Debtors and Claimant have yet to agree on a valuation date, nor has such a date been adjudicated, for purposes of determining the outstanding amounts owed from debtor Genesis Global Capital, LLC (the "Debtor") to the Claimant, and from the Claimant to the Debtor (the "Valuation Date"). This determination is crucial to establish the value of the Claim for purposes of setoff. It is particularly significant here, where the Debtor lent ETH/ETHW tokens to Claimant, and Claimant posted USDT tokens with the Debtor as collateral for the loan, given the volatility in the ETH/ETHW market, which directly effects the value of the mutual claims between the Claimant and the Debtor.

2.  The Debtors state in the Objection that a setoff of the Debtor's and Claimant's mutually-owed obligations results in a net claim in the Debtor's favor. *See* Objection ¶ 15. However, the Debtors fail to establish a basis for why the Claimant would owe the Debtor a net claim or even propose a Valuation Date in the Objection in order to determine the value of the Claim, burying the well-established "Petition Date pricing" in a footnote and erroneously attempting to curate the option of "more contemporaneous pricing" without any legal support for such option.[3]

3.  Without a Valuation Date agreed to by the Debtor and Claimant, or in the alternative, a Valuation Date adjudicated by this Court after an evidentiary hearing and considering the arguments set forth below, it is impossible to ascertain if the Claim is fully

---

[3] *See Declaration of Paul Kinealy in Support of Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. 502 and Fed. R. Bankr. P. 3007 (No Liability)* (Docket No. 1315) (the "Kinealy Declaration").

2

satisfied by the Debtor's mutual claim or if the Debtor owes money to the Claimant. In accordance with applicable New York law and the Bankruptcy Code, Claimant is entitled to valuation of its Claim and of the Debtor's mutual claim as of the Termination Date (as defined below), or alternatively, as of the Petition Date (as defined below), but certainly not some random date in the future as unilaterally selected by the Debtor.

## BACKGROUND

4. On January 19, 2023 (the "Petition Date"), the Debtor along with certain of its affiliates filed their respective petitions for voluntary relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.

5. On April 4, 2023, the Bankruptcy Court entered the *Order (i) Establishing Bar Dates for Submitting Proofs of Claim, (ii) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (iii) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (iv) Providing Certain Supplemental Relief* (Docket No. 200), setting May 22, 2023, at 4:00 PM Eastern Time as the general bar date.

6. On May 10, 2023, the Claimant timely filed the Claim against the Debtor in the aggregate amount of $230,014,880.33, and correctly asserted that the Claim is subject to setoff. The Claim is based on amounts owed from the Debtor to the Claimant in accordance with two master digital currency loan agreements, the basis of which is detailed as follows:

    a. On March 4, 2018, the Claimant entered into the Master Digital Currency Loan Agreement with the Debtor, as lender, and the Claimant, as borrower, pursuant to which the Debtor loaned the Claimant 151,000 ETH and 151,000 ETHW tokens (the "Borrower MLA").

3

  b. On March 26, 2018, the Claimant entered into the Master Digital Currency Loan Agreement with the Debtor, as borrower, and the Claimant, as lender, pursuant to which the Claimant pledged 230,000,000 USDT tokens to be held by the Debtor as collateral (the "Lender MLA," and, together with the Borrower MLA, the "MLAs").

  c. The MLAs are both governed by New York law.

  d. On November 11, 2022, the Claimant notified the Debtor via Telegram, as had been the parties' customary practice for communicating, of his intent to terminate the MLAs (the "Notice Date") and requested full satisfaction of mutually outstanding obligations. In accordance with the terms of the MLAs, the MLAs should have terminated 30 days after the Notice Date, on December 11, 2022 (the "Termination Date"). *See Declaration of* ▮▮▮▮▮▮▮▮ *in Support of Claimant's Response and Reservation of Rights to Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*, dated April 30, 2024, filed in support of this Response, ¶¶ 5-7 (the "Claimant Declaration").

  7. On February 15, 2024, the Debtors filed the Objection and listed the Claim as a "No Liability Setoff Claim" to be expunged. Docket No. 1315.

## RESPONSE

### A. The Objection Lacks Basis and Is Premature Because the Parties Have Not Agreed to a Valuation Date and no Valuation Date Has Been Adjudicated

  8. In the Objection, the Debtors state that "a setoff of the Debtors' and No Liability Setoff Claimants' mutually-owed obligations results in the full satisfaction of No Liability Setoff Claimants' Claims and a Net Claim in favor of the Debtors." *See* Objection ¶ 15. Instead of

4

proposing or asserting a specific Valuation Date, the Debtors attempt to circumvent the importance of a Valuation Date by not even proposing a specific Valuation Date in the Objection, and only vaguely asserting "Petition Date pricing" or "more contemporaneous pricing" in the Kinealy Declaration.

9. It is well-established law that, absent a codified exception, claims in bankruptcy cases are determined in U.S. dollars as of the petition date, and such date should be used to determine amounts for setoff. 11 U.S.C. § 502(b). Though not forthright in acknowledging this principle, the Debtors do admit that they have been using the "Petition Date Pricing" to value certain claims. *See* Objection ¶ 1, n. 3 ("Moreover, while the Debtors continue to assert that Petition Date pricing, consistent with the Setoff Principles and the Digital Asset Conversion Table, attached respectively as Exhibits E and M to the Plan Supplement, should govern, even if a more contemporaneous valuation date were employed . . . .").

10. While the Debtors erroneously seem to contemplate a potential "more contemporaneous date," for purposes of valuing claims, presumably to create an option for a valuation of claims that takes advantage of the market movements since the Petition Date, they provide absolutely no legal or factual support for a contemporaneous date and in fact, no such support exists. Indeed, they provide no basis of why the setoff would result in a net claim in the Debtor's favor. Further, even if a more current Valuation Date could be supported by any law, the volatile crypto market could continue to inflate or, alternatively, rapidly drop at any time, significantly changing the amounts owed from the Debtor to the Claimant and vice versa, and there is no reasonable support for the assertion that the Claim results in a net positive for the Debtor without a date certain for valuation. Moreover, to leave the Valuation Date to the whims of the Debtor is inequitable, provides no certainty as to the value of claims for purposes of setoff,

5

and is contrary to the Bankruptcy Code provisions that provide for setoff as of the petition date in the absence of a codified exception. *See* 11 U.S.C. § 502(b).

11. Additionally, in filing the Objection, the Debtors fail to recognize that alternate dates, such as the Termination Date, could apply in accordance with state law and the Bankruptcy Code, and in this case, result in a net claim in favor of the Claimant.

**B.   The Claimant Has the Right to Exercise Setoff Under the Bankruptcy Code and New York Law**

12. Absent exception, setoff in bankruptcy is governed by Section 553(a) of the Bankruptcy Code, which preserves the right of setoff under applicable law when four conditions are met: (1) the creditor holds a pre-petition claim against the debtor; (2) the creditor owes a pre-petition debt to the debtor; (3) the claim and debt are mutual; and (4) the claim and debt are both valid and enforceable. *See* 11 U.S.C. § 553(a).

13. The term "mutual" is not defined in the Bankruptcy Code, but courts have generally found that the claim and debt need to be between the same parties acting in the same capacity and with the same right, but the debts do not need to have arisen out of the same transaction. *See Western Tie & Timber Co. v. Brown*, 196 U.S. 502, 509-510 (1905); *see also Burton v. United States*, 155 B.R. 241, 243 (Bankr. S.D. Ala. 1992).

14. Section 553 of the Bankruptcy Code does not create rights of setoff, but instead recognizes such rights that exist under other applicable law, including state law, and preserves such rights if the other requirements of Section 553 (*supra* ¶ 12) and the Bankruptcy Code are met. *See In re Delta Air Lines,* 341 B.R. 439, 443 (Bankr. S.D.N.Y. 2006) ("[t]he setoff right to which the statute applies is exclusively a right under non-bankruptcy or state law. Section 553 does not create a federal right of setoff, nor does it enhance, diminish or otherwise modify any state law right of setoff."). The general rule when applying state law is that the nature and

validity of the obligations sought to be setoff will be determined in accordance with the law of the state where the facts transpired (or where the contracts are governed). *See* 5 Collier on Bankruptcy, P 553.04 (16th 2024).

15. The MLAs are expressly governed by New York law. *See* Borrower MLA, § XI; Lender MLA, § X. New York law provides for a right of setoff, including for every debtor after filing a petition under the Bankruptcy Code, to setoff and apply against any indebtedness of a creditor the amount owed to that creditor. *See* N.Y. McKinney's Debtor and Creditor Law § 151.

16. Further, while legislation and bankruptcy courts in any jurisdiction have yet to determine applicability of Bankruptcy Code provisions to cryptocurrencies, cryptocurrencies are not excluded from the definition of securities under the Bankruptcy Code. *See* 11 U.S.C. § 101(49). Alternatively, if cryptocurrencies are deemed to not be securities because they are commodities, the Bankruptcy Code definition of "commodities contracts" would be applicable. *See* 11 U.S.C. §§ 761(4)(A); 761(4)(F)(i). Unlike most contracts, setoff under securities and commodities contracts is governed by Section 562 of the Bankruptcy Code which sets forth the measurement date when evaluating damages as the earlier of (1) the date the contract is rejected; or (2) the date that the contract is liquidated, terminated, or accelerated. *See* 11 U.S.C. § 562(a).

17. Accordingly, the Claimant has the right under New York state law and the Bankruptcy Code to exercise setoff as of the Claim as of the Termination Date.

**C.  The Valuation Date Should be the Termination Date, or Alternatively, the Petition Date**

18. Section 562 of the Bankruptcy Code sets forth that damages arising under contracts that govern volatile and market based securities and commodities, like cryptocurrencies, which arguably fit into the definition of securities under the Bankruptcy Code,

(unless they are deemed commodities and thus fit squarely into the definition of commodities contracts under the Bankruptcy Code) should be valued as of the termination date. *See* 11 U.S.C. § 562(a). Further, under New York law, the Valuation Date for purposes of setoff would be the Termination Date if the Debtor did not file its chapter 11 case. Accordingly, the Termination Date established by the Claimant should be recognized by the Bankruptcy Court as the Valuation date for purposes of setting off mutual claims. *See Pereira v. Cogan*, 267 B.R. 500, 508 (S.D.N.Y. 2001) ("State law setoff rights are 'not affected by the Bankruptcy Code'.").

19. The use of the Termination Date as the Valuation Date for set off of the Claimant's and the Debtor's claims results in the Claimant having a net claim of $38,606,714.8, so the correct Valuation Date is critical to the adjudication of the Claim and the Objection. *See* Claimant Declaration, ¶ 8.

20. Moreover, Section XVIII of the Lender MLA and Section XXI of the Borrower MLA provide, among other options, for termination of the respective agreement upon 30 days' notice by either party to the other. Further, Section XI of the Lender MLA and Section XII of the Borrower MLA provide for the same notice provision, which states:

> [u]nless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by Express or certified mail (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a party may designate in accordance herewith), or to the respective address set forth below . . . . Either party may change its address by giving the other party written notice of its new address as herein provided.

Section XI of the Lender MLA; Section XII of the Borrower MLA.

21. The Claimant notified the Debtor of his intent to terminate the MLAs via Telegram on the Notice Date, as had been the parties to the MLAs customary practice for communicating, requesting full satisfaction of mutually outstanding obligations. *See* Claimant

8

Declaration, ¶¶5, 7. In accordance with the terms of the MLAs, after the expiration of the 30-day period after the Notice Date, the MLAs terminated on the Termination Date. *Id.*, ¶ 6.

22. While the Debtor may argue that Claimant's termination of the MLAs was not in strict accord with the form of notice specified in the MLAs, multiple courts have recognized that under New York law, strict compliance with contract notice provisions is not required unless the party being notified did not receive actual notice, or was otherwise prejudiced by such notice. *See Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey*, 706 F.Supp.2d 350, 360 (S.D.N.Y. 2009); *Suarez v. Ingalls*, 723 N.Y.S.2d 380, 381 (2001); *Dellicarri v. Hirschfeld*, 619 N.Y.S.2d 816, 817 (1994).

23. Additionally, the Claimant and the Debtor communicated regularly via Telegram, which arguably could be construed as a change in the notice provisions in the MLAs. *See* Claimant Declaration, ¶ 5. A sequence of previous conduct between parties can be used to determine a common basis of understanding known as a "course of dealing." *See Well Luck Co., Inc. v. F.C. Gerlach & Co., Inc.*, 421 F.Supp.2d 533 (E.D.N.Y. 2005) (citing Restatement (Second) of Contracts § 223(1) (1979)). A "course of dealing" between parties can further be used as evidence to establish consent to intended contractual terms. *Id*.

24. Accordingly, the Claimant submits that termination via Telegram was sufficient in accordance with the regular course of dealing between the Debtor and the Claimant and therefore, that the Termination Date should be effective and the Valuation Date for purposes of setoff in accordance with the MLAs, New York law, and the Bankruptcy Code.

25. In the event this Court does not hold that the Termination Date is the proper date of setoff for the Claim, the only plausible alternate date for purposes of determining setoff is the well-established (for claim value determinations) Petition Date. *See In re Lehman Brothers*

*Holdings Inc.*, 594 B.R. 564 (Bankr. S.D.N.Y. 2018) (holding that the exception to the general rule of evaluating claims as of the petition date is very narrow, and finding that in a circumstance where claims under securities contracts were settled (and not expressly rejected, liquidated, or terminated within the meaning of the statute), the de facto valuation is the petition date, rather than the date of settlement). Accordingly, the Debtors' assertion of a potential "contemporaneous date" is meritless and contrary to the Bankruptcy Code's express provisions.

## **DEMAND FOR DISCOVERY**

26. As a result of the genuine issues of material fact being in dispute concerning the Objection and the valuation date, a contested matter exists pursuant to Bankruptcy Rule 9014. Therefore, to obtain critical evidence from the Debtor and thereby establish the Valuation Date, the Claimant will concurrently seek discovery of the Debtor upon filing this Response. Accordingly, Claimant respectfully submits that the hearing on the Objection may not be used for adjudication of the Objection and should only be used for an initial conference regarding the timing a scope of discovery.

## **RESERVATION OF RIGHTS**

27. Claimant reserves the right to amend, modify, or supplement this Response in all respects and to make additional arguments at the hearing held to consider the relief requested in the Disclosure Statement. Nothing herein constitutes a waiver of Claimant's rights or remedies under the MLAs or applicable law.

## **CONCLUSION**

WHEREFORE, the Claimant respectfully requests that the Bankruptcy Court (i) overrule the Objection as it pertains to the Claim, (ii) affirm the Claimant's right to set off the mutual

10

obligations under the MLAs as of the Termination Date, and (iii) grant such other or further relief the Court deems just and proper.

Date:   May 1, 2024
Sunnyvale, California

Respectfully submitted,

By: */s/ _Oxana Kozlov*_____
Oxana Kozlov, Counsel to the Creditor ▮▮▮▮▮▮▮▮