Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
John A. Pintarelli
Patrick E. Fitzmaurice
Hugh M. McDonald
Rahman Connelly

*Attorneys for Paul Pretlove, David Standish
and James Drury, in their capacities as Joint
Liquidators of Three Arrows Fund, Ltd (in
Liquidation)*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No. 23-10063 (SHL) |
| Debtors. | Jointly Administered |

## CLAIMANT TAFL'S RESPONSE TO DEBTORS' NON-SUBSTANTIVE OBJECTION TO CLAIM NOS. 323, 324, 325, 468, 488, AND 502

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219) ("GGH"); Genesis Global Capital, LLC (8564) ("GGC"); Genesis Asia Pacific Pte. Ltd. (2164R) ("GAP"). For purposes of these chapter 11 cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10003.

i

# <u>CONTENTS</u>

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. BACKGROUND ..................................................................................................................... 2

   A.  General Background ......................................................................................................... 2

   B.  Transactions Between TACL and the Debtors Involved Transfers of TAFL
      Property to the Debtors ................................................................................................... 4

   C.  The JLs Have Been Hampered in Their Investigation ................................................... 5

III. ARGUMENT ......................................................................................................................... 5

   A.  Failure to Attach Supporting Documentation to a Proof of Claim Is Not a Basis
      For Disallowance ............................................................................................................ 8

   B.  In Any Event, The Debtors Had in Their Possession Documentation Adequate to
      Support TAFL's Claims When They Filed the Objection. .............................................. 9

       1.  Transactions Supporting Wrongful Foreclosure Claims............................................ 10

       2.  Transactions Supporting CEA Claims ....................................................................... 12

   C.  The Debtors' Books and Records Are Not Determinative of the True Ownership
      of the Assets Posted as Collateral. ................................................................................. 14

IV. CONCLUSION ...................................................................................................................... 16

4885-1862-3937.v11

# AUTHORITIES

Page(s)

## Cases

*Bank of New York Mellon v. Lane (In re Lane)*,
589 B.R. 399 (B.A.P. 9th Cir. 2018)...........................................................................................6

*In the Matter of the Arbitration of a Certain Controversy Between Genesis Asia Pacific
Pte. Ltd. Against Three Arrows Capital Ltd*, Arbitration No. 01-22-0003-5568-1-MS ...........3

*In re AMR Corp.*,
No. 11-15463 (SHL), 2021 Bankr. LEXIS 3256 (Bankr. S.D.N.Y. Nov. 29, 2021)...........7, 15

*In re Ditech Holding Corp.*,
No. 19-10412 (JLG), 2024 WL 2232435 (Bankr. S.D.N.Y. May 16, 2024)...........................8

*In re Jenny Lynn Min. Co.*,
780 F.2d 585 (6th Cir. 1986) ....................................................................................................9

*In re Pinnock*,
594 B.R. 609 (Bankr. S.D.N.Y. 2018).......................................................................................6

*In re Shaver*,
247 B.R. 436 (Bankr. E.D. Tenn. 1999) ...................................................................................9

*In re Three Arrows Capital, Ltd*,
Case No. 22-10920 (MG), (Bankr. S.D.N.Y.) .....................................................................2, 3

*In re Three Arrows Fund, Ltd (In Liquidation)*,
Case No. 24-10210 (MG) (Bankr. S.D.N.Y.) ...................................................................2, 3, 4

## Statutes and Codes

United States Code
    Title 7, section 6s(a)(1).........................................................................................................8
    Title 7, section 25.................................................................................................................8
    Title 11, section 502(b)(1) .................................................................................................6, 7
    Title 11, section 1520............................................................................................................3
    Title 11, section 1521(a)(4)...................................................................................................3

British Virgin Islands Insolvency Act, 2003.................................................................................1

Commodity Exchange Act, 7 USC § 1, *et seq.*..............................................................5, 6, 8, 16

<u>Rules and Regulations</u>

Federal Rules of Bankruptcy Procedure

Rule 3001(c)(1) ........................................................................................................................9
Rule 7001(2) ............................................................................................................................1

4885-1862-3937.v11

TO THE HONORABLE JUDGE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE

Paul Pretlove, David Standish, and James Drury, duly appointed joint liquidators (the "JLs") of claimant Three Arrows Fund, Ltd (In Liquidation) ("TAFL"), an exempted company with limited liability in liquidation the British Virgin Islands under the British Virgin Islands Insolvency Act, 2003, by and through their undersigned United States counsel, Pillsbury Winthrop Shaw Pittman LLP, respectfully respond to *Debtors' Twenty-Eighth Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and FED. R. BANKR. P. 3007 (No Liability and Insufficient Documentation)* [ECF No. 1548] (the "Objection") seeking to disallow and expunge Claim Nos. 323, 324, 325, 468, 488, and 502 ("TAFL's Claims"). In support of this response, the JLs submit the Declaration of L. James Dickinson, attached as **Exhibit A** (the "Dickinson Decl.") and respectfully state:

I.    **PRELIMINARY STATEMENT**

1.    Discovery conducted in connection with this contested matter not only resolves the asserted non-substantive arguments raised in the Objection but also reveals that TAFL has additional claims against the Debtors; these claims are based on information that has previously been kept from TAFL and the JLs and that the JLs have only recently been able to uncover.

2.    Pursuant to FED. R. BANKR. P. 7001(2) an adversary proceeding is necessary to resolve those claims which relate generally to the ownership of assets foreclosed upon by the Debtors in June of 2022 after Three Arrows Capital, Ltd ("TACL" or "3AC") was unable to satisfy margin calls on loans from the Debtors. As explained below, much of the collateral initially posted by TACL to secure those loans belonged to TAFL, not TACL. TACL lacked authority to transact with that collateral and the Debtors' initial acceptance of, and later foreclosure on, that collateral gives rise to claims by TAFL against the Debtors.

3.     These TAFL assets appear to be a subset of what TACL and the Debtors termed the "Disputed Collateral" in (i) the 3AC BVI Lawsuit[2] TACL filed against the Debtors and others, and (ii) the 3AC Claims[3] against the Debtors in this case. The latter dispute was resolved pursuant to a Settlement Agreement[4] to which TAFL was not party and for which TAFL was not given any notice. Indeed, the JLs understand that TACL did not receive the approval of either the bankruptcy court overseeing TACL's chapter 15 case or the BVI court to enter into the settlement.

4.     Plainly TAFL cannot be bound by an agreement concerning property it owns for which it received no notice.

5.     In any event, as set forth more fully below, the Debtors' non-substantive objections to TAFL's Claims should be overruled and those claims should be allowed in their entirety.

## II.    BACKGROUND

### A.    General Background

6.     TAFL was formed to make investments and short-term opportunities trading. It is the offshore feeder fund of TACL.[5] The JLs understand that TAFL was set up to invest substantially all of its assets in TACL, one of the largest crypto and digital asset venture capital firms in the world. Before its collapse, TACL's business focused on borrowing either cryptocurrency or U.S. dollars to trade on the cryptocurrency market. After TACL began trading in cryptocurrency, it grew into one of the largest and best-known cryptocurrency hedge funds.[6]

---

[2]    As defined in Objection ¶ 16.

[3]    As defined in Objection ¶ 17.

[4]    As defined in Objection ¶ 18.

[5]    *See* Verified Petition for Recognition of Foreign Main Proceeding and for Related Relief Under Chapter 15 of the Bankruptcy Code, and Memorandum of Law In Support Thereof, *In re Three Arrows Fund, Ltd (In Liquidation)*, Case No. 24-10210 (MG) (Bankr. S.D.N.Y.), ECF No. 7 ("TAFL's Chapter 15 Petition"), attached as **Exhibit A-1**, at ¶ 12.

[6]    *See* Declaration of Russell Crumpler in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief, *In re Three Arrows Capital, Ltd*, Case No. 22-10920 (MG), (Bankr. S.D.N.Y.), ECF No. 3, attached as **Exhibit A-7**, at ¶ 15.

2

7.      The Debtors were the primary lender to TACL, and generally required TACL to post collateral valued between 100% and 150% of the amount of each loan as security. This collateral was typically deposited in an account governed by various loan agreements, pledge agreements, and asset control agreements between the parties.[7]

8.      In response to financial pressures, demands from certain of its creditors, and the filing of petitions by creditors for liquidation, on June 27, 2022, Russell Crumpler and Christopher Farmer (the "TACL JLs") were appointed by the Eastern Caribbean Supreme Court in the BVI as the joint liquidators of TACL. The TACL JLs immediately sought chapter 15 recognition "to stay active efforts by individual creditors to seize assets and to preserve the status quo and afford the [TACL JLs] an opportunity stabilize the [TACL] estate, preserve the [TACL]'s assets, and conduct a complete investigation of [TACL], claims against its estate, and its assets, including causes of action."[8]

9.      On January 27, 2023, TAFL's sole voting shareholder – Three Arrows Capital Pte. Ltd. – executed a resolution to place TAFL into liquidation. The JLs were appointed as joint liquidators of TAFL. After several months of difficulty obtaining information from the TACL JLs and to pursue claims to assets held in the U.S., the JLs filed a petition for chapter 15 recognition.[9] In addition to the relief provided under 11 U.S.C. § 1520, the JLs specifically sought and obtained additional relief pursuant to 11 U.S.C. § 1521(a)(4) for authorization to "issue subpoenas in accordance with applicable procedural rules for the examination of witnesses and/or the production

---

[7]     *See* Witness Statement of Arianna Pretto-Sakmann, *In the Matter of the Arbitration of a Certain Controversy Between Genesis Asia Pacific Pte. Ltd. Against Three Arrows Capital Ltd*, Arbitration No. 01-22-0003-5568-1-MS, attached as **Exhibit A-2**, at ¶ 8 and the chart thereunder.

[8]     *See* Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief, *In re Three Arrows Capital, Ltd*, Case No. 22-10920 (MG), (Bankr. S.D.N.Y.), ECF No. 2, attached as **Exhibit A-10**, at ¶ 1.

[9]     *See* Chapter 15 Petition for Recognition, *In re Three Arrows Fund, Ltd (In Liquidation)*, Case No. 24-10210 (MG) (Bankr. S.D.N.Y.), ECF No. 1, attached as **Exhibit A-8**.

4885-1862-3937.v11

of documents within the territorial jurisdiction of the United States concerning the assets, affairs, rights, obligations or liabilities of TAFL and (to the extent relevant) TAFL's affiliates."[10]

**B.      Transactions Between TACL and the Debtors Involved Transfers of TAFL Property to the Debtors**

10.      It is apparent that the founders of TAFL and TACL did not always respect the separate corporate identities of the two funds. For example,

> a.  TAFL purportedly issued 192,383 shares outside of any subscription agreement based upon contributions by TAFL investors to a TACL controlled account after January 31, 2022;[11]
>
> b.  DeFiance, Starry Night and Warbler Share Classes were purportedly issued but never legally scribed to at the TACL level, though they were subscribed to at the TAFL level;[12] and
>
> c.  TACL purportedly issued shares vastly exceeding the amount authorized in its governing documents after September 1, 2020.[13]

11.      In sum, TAFL investors contributed funds between September 2020 and January 2022 to acquire shares in TAFL for which no valid, corresponding purchase of TACL shares was, or could have been, made. As a result, the proceeds of those investments together with any assets acquired with them, and the proceeds of such assets, were TAFL's separate property held on trust for the benefit of TAFL and its investors.

---

[10]    *See* Order Granting Recognition and Relief in Aid of a Foreign Main Proceeding, *In re Three Arrows Fund, Ltd (In Liquidation)*, Case No. 24-10210 (MG) (Bankr. S.D.N.Y.), ECF No. 32, attached as **Exhibit A-9**, at ¶ 5.

[11]    These funds paid in by TAFL's investors, and any assets acquired with those funds, are TAFL's separate property giving TAFL proprietary claims under BVI law to those funds and/or any assets acquired with them, or their proceeds. *See* TAFL Claim Form and Explanatory Note in TACL's BVI liquidation proceeding, attached as **Exhibit A-4**, at Section A.

[12]    In other words, TAFL issued shares in these classes to investors under TAFL's operative documents, but TACL lacked the corporate authority to do the same and so did not issue similar shares in those classes. As a result, any assets acquired with the proceeds from such share issuances are deemed as a matter of BVI law to be held on trust for TAFL. *See id* at Section B.

[13]    By contrast, TAFL's governing documents were amended to authorize the issuance of additional shares to investors. *See id* at Section C.

4885-1862-3937.v11

12.     Discovery in this contested matter has revealed for the first time to the JLs that cash and cryptocurrency from TAFL's investors were – without authorization – transferred by TACL to the Debtors in connection with lending and other transactions between those parties.

**C.      The JLs Have Been Hampered in Their Investigation**

13.     As noted above, the TACL JLs had a significant head start over the JLs given that their appointment was seven (7) months earlier. After their appointment, the TACL JLs engaged in a well-publicized effort to obtain discovery from various parties including the administrator for each of TACL and TAFL, ASCENT Funds Services (Singapore) Pte. Ltd. The TACL JLs also seized a computer server that housed books and records belonging to both funds.

14.     For months, the TACL JLs refused to turn over TAFL's books and records,[14] and TAFL's pursuit of chapter 15 recognition was at least partially motivated by TAFL's need for access to its own documents[15] and the TACL JLs' refusal to share information. It is only recently that information has begun to flow from the TACL JLs, more than a month after the Debtors' Objection to TACL's Claims was filed, though the TACL JLs' production remains incomplete.

## III.   ARGUMENT

15.     TAFL's Claims against the Debtors relate to damages TAFL has suffered (i) in relation to unauthorized transactions with the Debtors involving cryptocurrency and other digital assets owned by TAFL. The Debtors have purported to foreclose on those assets in connection with lending relationships they had with TACL;[16] and (ii) in connection with violations of the Commodity Exchange Act by the Debtors in connection with cryptocurrency swaps.[17] In particular, the JLs assert a claim

---

[14]   *See* letter from John Pintarelli to Judge Martin Glenn dated March 4, 2024, attached as **Exhibit A-3**.

[15]   *See* TAFL's Chapter 15 Petition, attached as **Exhibit A-1**, at ¶ 72.

[16]   Claim Nos. 323, 324, and 325 (the "Wrongful Foreclosure Claims").

[17]   Claim Nos. 468, 488, and 502 (the "CEA Claims").

4885-1862-3937.v11

. . . for damages associated with a Bitcoin commodity swap transactions with Genesis Lenders (that was executed by [TACL]) in order to participate in the Grayscale Bitcoin Trust ("GBTC") and other trusts managed by non-debtor Grayscale Investments [] and distributed by non-debtor Genesis Global Trading, Inc. [].

*Addendum to Proof of Claim of Three Arrows Fund, Ltd*, in the case of GGH, attached to the Objection as Exhibit C-4, at p. 161 of 200, ¶ 1.[18]

The Genesis Lenders disguised the fact that they were entering into commodity swaps with counterparties by documenting the transactions under a bespoke document made for the crypto lending market—The Master Digital Currency Loan Agreement. The Genesis Lenders treated those transactions as though they were entirely unregulated.

*Id.* at p. 162 of 200 ¶ 4.

The Genesis Lenders violated the Commodity Exchange Act [] by not registering as swap dealers. Each loan of Bitcoin allowed an investor to receive X amount of Bitcoin that it could use to invest in GBTC. Upon redemption, an investor would be required to transfer back X+Y amount of Bitcoin, with the Y reflecting interest. Such transactions allowed investors to buy GBTC and enter into the Grayscale Arbitrage. The transaction described above is a swap under the CEA.

*Id.* at ¶ 5.

16.    The Debtors' Objection to TAFL's Claims is non-substantive, and the Debtors do not challenge in any way the merits of either the Wrongful Foreclosure Claims or the CEA Claims against them.

17.    For example, with respect to the CEA Claims, the Debtors do not object on the basis that the proofs of claim fail to plead a violation of the Commodity Exchange Act or that the JLs do not have standing to assert claims against the Debtors under the Commodity Exchange Act. *In re Pinnock*, 594 B.R. 609, 612-13 (Bankr. S.D.N.Y. 2018) (objection based on lack of standing is "substantive" and governed by section 502(b)(1)); *Bank of New York Mellon v. Lane (In re*

---

[18]    In the case of GAP, attached to the Objection as Exhibit C-4, at p. 178 of 200. In the case of GGC, attached to the Objection as Exhibit C-5, at p. 195 of 200.

4885-1862-3937.v11

*Lane*), 589 B.R. 399, 407-08 (B.A.P. 9th Cir. 2018) ("[T]he question of whether standing is a substantive or procedural objection has been addressed by only a few courts. However, those courts are unanimous in stating that it is a substantive objection under § 502(b)(1) . . . .").

18.     Instead, the Debtors generically assert that TAFL's Claims "(i) fail to sufficiently specify the basis of the alleged liability against the Debtors and provide adequate supporting documentation . . . and (ii) are otherwise inconsistent with or contradict the Debtors' Books and Records in that they are not reflected in the Debtors' Books and Records [because] the Debtors' Books and Records reflect only transactions between 3AC and GAP and between 3AC and GGC."[19]

19.     To be valid, a proof of claim must allege sufficient fact to state a claim for relief that is plausible on its face.

> Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If the claim is properly filed, it is prima facie evidence that the claim is valid. *See* FED. R. BANKR. P. 3001(f). A party in interest may object to a proof of claim, and once an objection is made, the court must determine whether the objection is well founded. *See* 4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. rev. 2013).
>
> . . .
>
> Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g., In re Residential Capital, LLC*, 518 B.R. at 731; *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure.") (citations omitted). Accordingly, a claimant must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

*In re AMR Corp.*, No. 11-15463 (SHL), 2021 Bankr. LEXIS 3256, at *3-5 (Bankr. S.D.N.Y. Nov. 29, 2021).

---

[19]     *See* Objection ¶ 30.

7

20.    The Court can court can consider documents attached to a response to a claim objection even if those documents were not attached to the proof of claim itself. *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2024 WL 2232435, at *2 (Bankr. S.D.N.Y. May 16, 2024) ("The Court takes judicial notice of the documents annexed to the Response because they are integral to the Claim.").

21.    To the extent that these non-substantive objections have any merit, they have been cured as set forth herein and/or are belied by documents produced by the Debtors in this contested matter.

**A.    Failure to Attach Supporting Documentation to a Proof of Claim Is Not a Basis For Disallowance**

22.    The crux of the Debtors' objection is that the proofs of claim "fail to sufficiently specify the basis of the alleged liability against the Debtors." There is no merit to that contention.

23.    With respect to the CEA Claims, the addenda attached to the proofs of claim explain the basis for TAFL's Claims in careful detail. The addenda explain that the Debtors "pitched representatives of TAFL" to invest in their products and "jointly marketed" their investment capabilities "to representatives [of] TAFL." As a consequence of those marketing efforts, TAFL was induced to invest in "Grayscale-managed trusts invested in[,] by[,] or for TAFL and others."

24.    The proofs of claim detail the JLs' basis for contending that the transactions were disguised "Bitcoin commodity swap transactions" subject to CFTC oversight. The proofs of claim conclude that the Debtors violated section 4s(a)(1) of the Commodity Exchange Act by offering these products without registering with the CFTC and explain that 7 U.S.C. § 25 creates a private right of action for any person that incurred actual damages as a result of a violation of the Commodity Exchange Act.

4885-1862-3937.v11

25.     The Debtors make no effort whatsoever to engage with these allegations. Instead, they contend that the claims should be disallowed because the JLs fail to "provide adequate supporting documentation." But where, as here, the debtor is not an individual, the Federal Rules of Bankruptcy Procedure do not require a proof of claim to attach supporting documentation unless the claim is based on a writing. *See* FED. R. BANKR. P. 3001(c)(1). TAFL's claims are based on the Debtors' violation of a federal statute. They are akin to a tort claim and are not based on a contract or other writing. *See In re Shaver*, 247 B.R. 436, 439-40 (Bankr. E.D. Tenn. 1999) ("FED. R. BANKR. P. 3001(c) is inapplicable to claims that are based on a statutory obligation such as federal income tax, as opposed to claims that are based on a writing."); *In re Jenny Lynn Min. Co.*, 780 F.2d 585, 587 (6th Cir. 1986) ("Attaching a copy of the statute would have added nothing to the proof of claim. Proof of claim # 15 was not based on a 'writing.'").

**B.      In Any Event, The Debtors Had in Their Possession Documentation Adequate to Support TAFL's Claims When They Filed the Objection.**

26.     On May 9, 2024, the Debtors produced a spreadsheet that appears to reflect all loan transactions with counterparty "Three Arrows Capital" (the "Genesis-TACL Loan History"). For each transfer, the Genesis-TACL Loan History specifies, *inter alia*, (i) the transfer date; (ii) the type of currency transferred; (iii) the amount transferred; (iv) the transaction type (e.g., loan origination, loan returned, collateral received, collateral returned, and interest paid); and (v) a description that includes, for example, the interest rate for each loan. The Genesis-TACL Loan History contains 1,667 transactions between the Debtors and TACL. A table reflecting the complete 324-page spreadsheet is attached as **Exhibit A-5**, and a truncated and reformatted table reflecting only the columns relevant to this matter is attached as **Exhibit A-6**.

4885-1862-3937.v11

27.    The JLs' analysis of the Genesis-TACL Loan History remains ongoing, but transactions have been identified that potentially fall within the circumstances described in both the Wrongful Foreclosure Claims and the CEA Claims.

    *1.*    <u>*Transactions Supporting Wrongful Foreclosure Claims*</u>

28.    The Genesis-TACL Loan History contains 348 transactions reflecting the receipt of collateral securing loans from the Debtors to TACL and 291 transactions reflecting the return of the collateral, as shown in **Chart 1**.



**Chart 1**.

29.    The month in which each of the 348 collateral posting transactions occurred is shown in **Chart 2**.

10



**Chart 2**.

30.    Of the 348 collateral posting transactions, 129 occurred after January 31, 2022, the point in time after which TAFL purportedly issued 192,383 shares outside of any subscription agreement based upon contributions by TAFL investors to a TACL controlled account. *See supra*, ¶ 10.a. The JLs contend those contributions were posted as collateral to secure loans from the Debtors.

31.    Of the 348 collateral posting transactions, 193 occurred after September 1, 2020, the point in time after which TACL purportedly issued shares vastly exceeding the amount authorized in its governing documents. *See supra*, ¶ 10.c. The JLs contend those contributions were posted as collateral to secure loans from the Debtors.

32.    Therefore, it is at least plausible that some of the collateral foreclosed upon by the Debtors was not actually TACL's property to post or pledge.

11

2.    *Transactions Supporting CEA Claims*

33.    The CEA Claims allege that Grayscale Arbitrage began with a loan from Genesis of BTC that was used to purchase GBTC, followed by a 6-month waiting period after which a participant would sell the GBTC and return the BTC plus interest.[20]

34.    The Genesis-TACL Loan History contains 1,011 loan transactions, including 342 loan originations from the Debtors to TACL; 466 loan repayments from TACL to the Debtors; and 203 interest payments from TACL to the Debtors, as shown in **Chart 3**.



**Chart 3**.

35.    The loan originations, loan repayments, and interest payments were conducted using twenty-five (25) different currencies, most frequently using U.S. Dollars (USD) (228 transaction) and Bitcoin (BTC) (170 transactions), as shown in **Chart 4**.

---

[20]    *See Addendum to Proof of Claim of Three Arrows Fund, Ltd*, in the case of GGH, attached to the Objection as Exhibit C-4, at pp. 161-620 of 200, ¶ 2(1)-(4).

4885-1862-3937.v11



**Chart 4**.

36.    The month in which each of the 170 BTC transactions occurred is shown in

**Chart 5**.



**Chart 5**.

37.    It is at least plausible that one or more of the above loans was a part of the Grayscale

Arbitrage. Additionally, the Genesis-TACL Loan History confirms that TACL was trading in the

Grayscale-related cryptocurrency GBTC because TACL borrowed against and posted GBTC as

13

4885-1862-3937.v11

collateral on thirteen (13) occasions and the Debtors returned GBTC on four (4) occasions, as shown **Chart 6**.[21]



**Chart 6**.

38.    TACL's use of GBTC as collateral for the loans made to it by the Debtors supports swap transactions described in the CEA Claims. Therefore, the Debtors already had in their possession documentation sufficient to render TAFL's Claims plausible when they filed the Objection.

**C.    The Debtors' Books and Records Are Not Determinative of the True Ownership of the Assets Posted as Collateral.**

39.    The Debtors cite, as bases for *disallowance*, an alleged lack of a direct relationship between the Debtors and TAFL and a supposed lack of evidence in their books and records that any of the Debtors engaged in swaps with TAFL.[22] Whether the Debtors believed that TACL owned the collateral it posted to secure its loans is not at issue in this non-substantive objection, and whether the Debtors' books and records reflected a direct relationship with TAFL has no

---

[21]    The GBTC transactions are also listed in **Exhibit A-6**, at p. 17 (5/29/2020 and 6/17/2020), p. 23 (10/18/2020), p. 25 (11/21/2020), p. 27 (11/22/2020), p. 30 (3/9/2021), p. 41 (1/10/2022), p. 42 (1/25/2022), p. 44 (5/11/2022 and 5/12/2022), and p. 46 (6/13/2022).

[22]    *See* Objection ¶ 33.

14

bearing on the ownership of the collateral at the time it was posted. *Nemo dat quod non habet*. No one can give what they do not have.

40.    As set forth more fully above, in various ways TAFL investors purchased TAFL shares or otherwise made investments into TAFL in situations where a corresponding investment by TAFL into TACL was not possible. In these circumstances, those investment proceeds, and any property acquired with them, are TAFL property held on trust or otherwise for the benefit of TAFL and its investors.

41.    Nevertheless, according to the Genesis-TACL Loan History, the Debtors accepted collateral from TACL that was actually TAFL property, as shown in **Chart 2**.

42.    While the JLs continue to analyze the limited set of documents they have received, it is at least plausible that some of the collateral foreclosed upon by the Debtors was not actually TACL's property to post or pledge, regardless of the fact that the Debtors consider TACL (not TAFL) the counterparty in collateral posting transactions.

43.    In response to the Debtors' non-substantive Objection to its claims, TAFL is required only to show that its claims for relief against the Debtor are plausible because the Debtors have not offered evidence that would shift the burden back to the claimant.

> Although Rule 3001(f) establishes the initial evidentiary effect of a filed claim, the burden of proof rests on different parties at different times. Correctly filed proofs of claim constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim. By producing evidence equal in force to the prima facie case, an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to prove by a preponderance of the evidence that under applicable law the claim should be allowed.

*In re AMR Corp.*, 2021 Bankr. LEXIS 3256, at *3-4 (internal citations and quotations omitted). The TAFL JLs have clearly shown that TAFL's Claims are plausible.

4885-1862-3937.v11

44.    First, the JLs have shown that it is plausible that TACL transferred TAFL property to the Debtors and the Debtors foreclosed on that property purportedly pursuant to their lending relationship with TACL. Second, TAFL has shown a plausible claim for relief under the CEA. As a result, the Debtors' non-substantive objection to the TACL Claims should be overruled.

45.    Further, as set forth more fully above, information obtained during discovery in this contested matter has revealed additional claims TAFL has against the Debtors that the JLs could not have previously known about given their lack of access to TAFL's books and records largely caused by the TACL JLs' wrongful withholding of that information. That said, having obtained the Genesis-TACL Loan History through discovery on this contested matter and having identified additional claims against the Debtors, the JLs intend to file a motion for leave to amend their claims, consistent with the above, in advance of the Omnibus Hearing scheduled fro June 20th.[23]

## IV.    **CONCLUSION**

For the foregoing reasons, the Objection should be denied as to TAFL's Claims, and the JLs should be permitted to amend their claims and commence an adversary proceeding to determine the Debtors' interest, if any, in the assets improperly foreclosed upon.

---

[23]    In a letter dated May 15th, counsel for the JLs informed counsel for the Debtors of this basis and their intention of seeking the Court's permission to file an amended claim and asked to postpone the hearing to avoid wasting judicial and party resources. In a letter dated May 17th, counsel for the Debtors refused to postpone the hearing.

4885-1862-3937.v11

Dated: May 31, 2024
      New York New York

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ John A. Pintarelli*
John A. Pintarelli
Patrick E. Fitzmaurice
Hugh M. McDonald
Rahman Connelly
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500

*Attorneys for Paul Pretlove, David Standish and James Drury, in their capacities as Joint Liquidators of Three Arrows Fund, Ltd (In Liquidation)*

4885-1862-3937.v11