PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Patrick E. Fitzmaurice
Hugh M. McDonald

*Attorneys for Petitioners Paul Pretlove, David Standish and*
*James Drury, in their capacities as Joint Liquidators of*
*of Three Arrows Fund, Ltd (in Liquidation)*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Three Arrows Fund, Ltd (In Liquidation),<br><br>    Debtor in a Foreign Proceeding.[1] | Case No. 24-10210 (MG)<br><br>Chapter 15 |

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND FOR RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE, <u>AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>

---

[1] The Debtor's company registration number is 1710548. The Debtor's registered office is P.O. Box 2283, 1st Floor, Columbus Centre, Road Town, Tortola, British Virgin Islands.

## Table of Contents

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     JURISDICTION AND VENUE .......................................................................... 2

III.    BACKGROUND ............................................................................................. 3

        A.    TAFL's Corporate Structure ................................................................ 3

        B.    TAFL's Pre-Liquidation Business ....................................................... 4

        C.    Events Leading up to the TAFL's Liquidation ................................... 4

IV.     THE BVI PROCEEDING AND BVI INSOLVENCY LAW ........................... 5

V.      WINDING UP ACTIVITIES IN THE CAYMAN ISLANDS ......................... 8

VI.     RELIEF REQUESTED ................................................................................... 10

VII.    BASIS FOR RELIEF ..................................................................................... 11

        A.    TAFL is an Eligible Debtor Under Chapter 15 of the Bankruptcy Code ............... 11

        B.    The BVI Proceeding is a Foreign Proceeding and the Liquidators are Foreign
              Representatives .......................................................................... 12

        C.    The BVI Proceeding Is a Foreign Main Proceeding ....................... 15

        D.    Alternatively, the BVI Proceedings Should Be Recognized as a Foreign Non-Main
              Proceeding ............................................................................. 18

        E.    The BVI Proceeding Meets All Other Requirements for Recognition ............... 19

        F.    Relief Pursuant to Section 1521 of the Bankruptcy Code is Appropriate .............. 20

VIII.   NO PRIOR REQUEST ................................................................................... 21

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ABC Learning Centres Ltd.*,
    445 B.R. 318 (Bankr. D. Del. 2010) .................................................................................. 15

*In re Aerovias Nacionales de Colombia S.A.*,
    303 B.R. 1 (Bankr. S.D.N.Y. 2003) .................................................................................. 11

*In re Ashapura Minechem Ltd.*,
    480 B.R. 129 (S.D.N.Y. 2012) .......................................................................................... 14

*In re B.C.I. Finances Pty Ltd.*,
    583 B.R. 288 (Bankr. S.D.N.Y. 2018) .............................................................................. 11

*In re Barnet*,
    737 F.3d 238 (2d Cir. 2013) .............................................................................................. 11

*In re Betcorp Ltd.*,
    400 B.R. 266 (Bankr. D. Nev. 2009) ........................................................................... 13, 14

*In re Cenargo Int'l, PLC*,
    294 B.R. 571 (Bankr. S.D.N.Y. 2003) .............................................................................. 11

*In re ENNIA Caribe Holding N.V.*,
    594 B.R. 631, 638-39 (Bankr. S.D.N.Y. 2018) ................................................................ 14

*In re Fairfield Sentry Ltd. (GBD)*,
    Case No. 10-13164, 2011 WL4357421, at *10 n.8 (S.D.N.Y. Sept. 16, 2011) ...................... 19

*In re Global Cord Blood Corp.*,
    Case No. 22-11347, 2022 WL 17478530, at *7 (Bankr. S.D.N.Y. Dec. 5, 2022) ................. 13

*In re Gold & Honey, Ltd.*,
    410 B.R. 357 (Bankr. E.D.N.Y. 2009) ............................................................................. 14

*In re Grand Prix Assocs., No. 09-16545 (DHS)*,
    2009 WL 1410519, at *22 (Bankr. D.N.J. May 18, 2009) .................................................. 16

*In re Millennium Global Emerging Credit Master Fund Limited*,
    458 B.R. 63 (Bankr. S.D.N.Y. 2011) aff'd 474 B.R. 88 (S.D.N.Y. 2012) ............................ 16

*In re Octaviar Admin. Pty Ltd.*,
    511 B.R. 361 (Bankr. S.D.N.Y. 2014) ......................................................................... 2, 11

*In re Suntech Power Holdings Co.*,
    520 B.R. 399 (Bankr. S.D.N.Y. 2014) .................................................................... 2, 16, 18

*Morning Mist Holdings Ltd. V. Krys (In re Fairfield Sentry Ltd.)*,
    714 F.3d 127 (2d Cir. 2013) .............................................................................................. 15

**Page(s)**

**Statutes**

11 U.S.C. § 101(23). ................................................................................... 12, 13

11 U.S.C. § 101(24) ......................................................................................... 12

11 U.S.C. § 109(a) ........................................................................................... 11

11 U.S.C. § 365 ................................................................................................ 18

11 U.S.C. § 507 ................................................................................................ 19

11 U.S.C. § 1501(a)(1)-(5)). ............................................................................. 2

11 U.S.C. § 1502(2) ......................................................................................... 19

11 U.S.C. § 1502(4) ......................................................................................... 15

11 U.S.C. § 1502(5) ......................................................................................... 19

11 U.S.C. § 1506 .............................................................................................. 11

11 U.S.C. § 1515(b) ......................................................................................... 20

11 U.S.C. § 1515(c) ......................................................................................... 20

11 U.S.C. § 1516(d) ......................................................................................... 15

11 U.S.C. § 1517(a) ......................................................................................... 11

11 U.S.C. § 1517(b)(1) .................................................................................... 15

11 U.S.C. § 1520 .............................................................................................. 20

11 U.S.C. § 1521(a) ......................................................................................... 20

**Other Authorities**

*In re Ashapura Minechem Ltd.*,
    Case No. 11-14668 (JMP) (Bankr. S.D.N.Y. Nov. 22, 2011) .................................... 14

*In re Fairfield Sentry Limited, et al.*,
    Case No. 10-13164 (JPM) (Bankr. S.D.N.Y. July 22, 2010) ..................................... 15

*In re Kingate Global Fund, Ltd., et al. (in Liquidation)*,
    Case No. 19-12853 (SMB) (Bankr. S.D.N.Y. Oct. 18, 2019) ..................................... 15

*In re Three Arrows Capital, Ltd*,
    Case No. 22-10920 (MG) (Bankr. S.D.N.Y. July 28, 2022) ...................................... 15

4866-3915-8421

Paul Pretlove, David Standish and James Drury, duly appointed joint liquidators (the "**Petitioners**") of Three Arrows Fund, Ltd (In Liquidation) ("**TAFL**" or the "**Debtor**"), an exempted company with limited liability in liquidation the British Virgin Islands (the "**BVI Proceeding**") under the British Virgin Islands Insolvency Act, 2003 (the "**Act**"), by its undersigned United States counsel, Pillsbury Winthrop Shaw Pittman LLP, hereby respectfully submit the Official Form Petition, this Verified Petition (together, the "**Petition**"), the accompanying Declaration of Paul Pretlove executed on February 8, 2024 (the "**Pretlove Decl.**"), the Declaration of Scott Cruickshank executed on February 8, 2024 (the "**Cruickshank Decl.**"), and the Declaration of John A. Pintarelli executed on February 8, 2024 (the "**Pintarelli Decl.**" and, together with the Pretlove Decl. and the Cruickshank Decl., the "**Declarations**"), for entry of an order (the "**Proposed Order**"), substantially in the form attached hereto as **Exhibit A**, pursuant to Chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

    a. recognition of the BVI Proceeding as a foreign main proceeding under section 1517(b)(1) of title 11 of the United States Code (the "**Bankruptcy Code**") or in the alternative as a foreign nonmain proceeding under section 1517(b)(2) of the Bankruptcy Code;

    b. recognition of Petitioners as TAFL's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

granting relief pursuant to sections 1502 and 1521 of the Bankruptcy Code.

## I.  PRELIMINARY STATEMENT

1.    The purpose of Chapter 15 of the Bankruptcy Code is to provide effective mechanisms for dealing with cases of cross-border insolvency, with the express objectives of: (a) cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; (b) greater legal certainty for trade and investment; (c) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, shareholders and other interested entities, including the debtor; (d) the

protection and maximization of the debtor's assets; and (e) the facilitation of the rescue of financially troubled businesses. *See* 11 U.S.C. § 1501(a)(1)-(5)); *see also In re Suntech Power Holdings Co.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014). To that end, the Petitioners request recognition of the BVI Proceeding as a foreign main proceeding primarily to obtain this Court's assistance in staying all proceedings and any actions against TAFL, its property and assets, including transfers thereof, as well as to facilitate the Liquidators' efforts to collect TAFL's assets and investigate TAFL's business, financial affairs and potential claims against third parties. Recognition of the BVI Proceeding as a foreign main proceeding would confer upon TAFL the protections afforded by sections 362 and 1520 of the Bankruptcy Code, thereby preventing any one stakeholder from gaining an advantage over other stakeholders or otherwise interfering with the BVI Proceeding and implementation of orders of the BVI Court.

## II.    **JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and sections 109 and 1501 of the Bankruptcy Code.

2.     Venue in this District is proper pursuant to 28 U.S.C. § 1410(1) because TAFL has assets within this District.

3.     With regard to section 1410(1), the Debtor has an interest in certain funds deposited with Pillsbury and held by Pillsbury in a trust account located in New York, New York with JPMorgan Chase Bank, N.A. (the "**Pillsbury Retainer**"). *See* Pintarelli Decl. ¶ 3. *See, e.g.*, *Suntech Power*, 520 B.R. at 416 (holding that establishing a deposit account in New York "had the effect of establishing a basis for venue in [the Southern District of New York] under 28 U.S.C. § 1410(1)"); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372-74 (Bankr. S.D.N.Y. 2014) (recognizing retainer as property for jurisdictional purposes).

2

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

5.      The statutory bases for the relief requested are sections 105(a), 362, 1504, 1506, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## III.    BACKGROUND

6.      On May 3, 2012, TAFL was incorporated as an exempted company with limited liability under the laws of the BVI and operated pursuant to a Memorandum and Articles of Association dated May 3, 2012 (as later amended and restated on October 3, 2021). Pretlove Decl. ¶ 10; Cruickshank Decl. ¶ 14.

7.      On January 27, 2023, TAFL's sole voting shareholder, Three Arrows Capital Pte. Ltd. ("**TAC Pte**") executed a resolution to place the Fund into liquidation (the "**Liquidation Resolution**") pursuant to Section 159(2) of the Act, and David Standish, James Drury and I were appointed joint liquidators (in such capacity, the "**JLs**"). Pretlove Decl. ¶ 11.

8.      TAFL's registered office address is ABM Corporate Services, Ltd. 1st Floor, Columbus Centre Road Town, Tortola VG1110 BVI. Pretlove Decl. ¶ 12; Cruickshank Decl. ¶ 15.

### A.    TAFL's Corporate Structure

9.      TAFL was founded by Kyle Davies and Su Zhu. It has two registered directors (whose powers ceased following the appointment of the Liquidators) who are Messrs. Davies and Zhu (collectively, the "**Directors**"). Pretlove Decl. ¶ 13.

10.     TAC Pte is TAFL's sole voting member, holding 100% of the management shares. The other equity classes, each of which holds participating non-voting shares in TAFL, were split into six (6) preferred participating share classes, seventeen (17) participating share classes and one (1) restricted participating share class. *Id*. ¶ 14.

3

### B.    TAFL's Pre-Liquidation Business

11.    TAFL was formed to make investments and short-term opportunities trading. *Id.* ¶ 15.

12.    TAFL is the offshore feeder fund of Three Arrows Capital, Ltd ("**TACL**"). TACL is a Professional Fund within the meaning of the Securities and Investment Business Act, 2010, of the BVI. The investors in TACL are TAFL and Three Arrows Fund, LP (the "**Onshore Fund**," and together with TAFL, the "**Feeder Funds**"). *Id.* ¶ 16.

13.    The Feeder Funds were set up to invest substantially all of their assets in TACL. *Id.* ¶ 17. The master/feeder structure is used to permit the pooling of investor assets with similar investment objectives, in an effort to achieve economies of scale and efficiencies in portfolio management, while preserving the separate identities of the investors and the underlying assets they had sought to invest in. *Id.*

14.    TACL was one of the largest crypto and digital asset venture capital firms in the world. The "Three Arrows" group started off trading traditional currencies in emerging markets. TACL then diversified into option, equities and crypto currency. *Id.* ¶ 18. By 2018, TACL was fully focused on trading cryptocurrency. *Id.*

15.    More recently it is believed TACL's business model was such that it borrowed either cryptocurrency or U.S. dollars to trade on the cryptocurrency market. *Id.* ¶ 19. TACL's lenders were largely institutional lenders and a few high net-worth individuals who fall under the category of accredited investors. *Id.*

### C.    Events Leading up to the TAFL's Liquidation

16.    A substantial part of the Three Arrows investment portfolio was in a cryptocurrency known as Luna (Terra/Luna) which was associated with a stablecoin, namely TerraUSD. *Id.* ¶ 20. It was widely accepted that TerraUSD was to be pegged to the U.S. Dollar and thus, considered, a

4

stablecoin (meaning a cryptocurrency pegged to a fiat currency). *Id.* On May 9, 2022, Terra/Luna crashed and its value wiped out completely. *Id.* Put simply, Terra/Luna became worthless. *Id.*

17.     It was widely reported that this crash wiped out US$40 billion in value from the markets. *Id.* ¶ 21. The effect of the Terra/Luna crash caused the general cryptocurrency market and coin prices to fall because Bitcoin was sold to defend the peg of Terra to the US dollar, which drove the price of Bitcoin down. *Id.* The sentiment towards cryptocurrency became poor very rapidly, as the prices of other cryptocurrencies dipped quickly. *Id.* The sell-off was akin to panic selling, as the market ditched risky assets such as cryptocurrency. *Id.* This led to a contagion effect of the contraction of credit i.e. as lenders pulled back their loans. *Id.*

18.     As a result of which, we understand that creditors to TACL made margin calls on loans due and whilst TACL was initially able to meet these margin calls, it was subsequently unable to meet all of them when the lenders reacted *en masse*. *Id.* ¶ 22.

19.     On June 27, 2022, Russell Crumpler and Christopher Farmer were appointed by the Eastern Caribbean Supreme Court (the Court) in the BVI (the "**BVI Court**") as the joint liquidators of the TACL (the "**TACL Liquidators**"). *Id.* ¶ 23.

20.     Following the liquidation of TACL, the Fund had little purpose. *Id.* ¶ 24. A BVI company may be placed into liquidation upon the appointment of a liquidator by (a) the members of a company, by qualifying resolution or (b) order of the BVI Court. Cruickshank Decl. ¶ 16. Noting that the directors continue to have a fiduciary duty to the Fund and its stakeholders, its directors and sole voting shareholder resolved to place the Fund into a formal liquidation process by written resolution on January 27, 2023. *Id.*; Pretlove Decl. ¶ 24.

## IV.     THE BVI PROCEEDING AND BVI INSOLVENCY LAW

21.     The principal BVI legislation and rules that govern the liquidation of BVI companies (including that of the Fund) are:

5

    a.   the Act and, with respect to the liquidation of a company, specifically Parts VII thru IX and XII through XIII of the Act; and

    b.   the BVI Insolvency Rules, 2005 (as amended) (the "**Rules**").

Cruickshank Decl. ¶ 13.

22.    Liquidation in the BVI is not a "debtor in possession" process. *Id*. ¶ 19. Upon the

appointment of liquidators of a BVI company,

    a.   the liquidator takes custody and control of the assets of the company;

    b.   the directors and other officers of the company remain in office, but they cease to have any powers, functions or duties other than those required or permitted under this Part or authorized by the liquidator;

    c.   unless the Court otherwise orders, no person may—

        i.   commence or proceed with any action or proceeding against the company or in relation to its assets; or

       ii.   exercise or enforce, or continue to exercise or enforce any right or remedy over or against assets of the company;

    d.   unless the Court otherwise orders, no share in the company may be transferred;

    e.   no alteration may be made in the status of or to the rights or liabilities of a member, whether by an amendment of the memorandum or articles or otherwise;

    f.   no member may exercise any power under the memorandum or articles, or otherwise, except for the purposes of this Act; and

    g.   no amendment may be made to the memorandum or articles of the company.

*Id.*

23.    This statutory "stay" of legal actions against the debtor or its property is similar to

the U.S. automatic stay provided for under the Bankruptcy Code and serves to, *inter alia*, facilitate

the JLs' ability to determine all of the rights of stakeholders, including investors and creditors,

collectively and comprehensively. *Id*. ¶ 20. The restraint or stay against enforcement does not

affect the rights of secured creditors to take possession of or otherwise deal with assets of the

company over which it has a security interest. *Id.*

6

24.     Other than by order of the BVI Court, liquidation is a "terminal" process, in the sense that it is designed to finally wind up the company's affairs under the stewardship of the independent liquidators, and then to bring the existence of the company to an end. *Id.* ¶ 21. The Liquidators general duties require them:

     a.   to take possession of, protect and realise the assets of the company;

     b.   to distribute the assets or the proceeds of the realization of the assets in accordance with the Act;

     c.   if there are surplus assets remaining, to distributed them, or the proceeds of realisation of the surplus assets, in accordance with the Act; and

     d.   make reports and, as required, send copies of such reports to creditors and the BVI Court.

*Id.*

25.     The BVI Proceeding is judicial in nature, in the sense that even if it is not commenced by an order of the BVI Court, (a) the JLs act as officers of the BVI Court; (b) the BVI Court may impose additional duties on the JLs (other than those in the Act and Rules) with respect to a liquidation; (c) throughout the liquidation process the liquidators report to, are supervised by and may seek sanction or directions of the BVI Court; and (c) the liquidation is brought to a close and the company dissolved by an order of the BVI Court. *Id.* ¶ 22.

26.     In addition to being officers of the BVI Court, Liquidators are agents of the company. *Id.* ¶ 23. The Liquidators' powers are set out in Schedule 2 of the Act, which include, *inter alia*, the power to:

     a.   Pay any class of creditors in full;

     b.   Make a compromise or arrangement with creditors or persons claiming to be creditors;

     c.   Commence, continue, discontinue or defend any action or other legal proceedings in the name of or on behalf of the company;

     d.   Carry on the business of the company;

7

4866-3915-8421

  e. Sell or otherwise dispose of property;

  f. Borrow money;

  g. Call meetings of creditors; and

  *h.* Appoint a solicitor, accountant or other professionally qualified person.

*Id.*

27. Since the JLs were appointed by its members, at any time, the BVI Court may provide that certain of the JLs powers may only be exercised with sanction of the BVI Court. *Id.* ¶ 24.

28. A general principle underlying the BVI insolvency regime is that creditors and shareholders are treated on a *pari passu* basis, subject to certain exceptions, with a priority of distribution scheme that I believe is not too dissimilar for the priority scheme under the U.S. Bankruptcy Code. *Id.* ¶ 25. Appeals from the liquidators' decision to admit or reject a claim are made to the BVI Court. *Id.*

29. Official liquidators are also required to prepare reports and accounts with respect to their conduct of the liquidation and investigation of the company's financial affairs, and to deliver those to the BVI Court. *Id.* ¶ 26.

30. The BVI Court must approve the liquidators' remuneration. *Id.* ¶ 27.

31. BVI liquidation proceedings are fair and equitable, insofar as all creditors and interest holders have the opportunity to be heard by the BVI Court and no creditors will be prejudiced on the sole basis that they are foreign based. *Id.* ¶ 29. All creditors are treated equally, regardless of where they are domiciled. *Id.*

## V. WINDING UP ACTIVITIES IN THE BVI

32. Since execution of the Liquidation Resolution, the Liquidators have performed a number of statutory duties including:

8

a.  providing notice to the BVI Financial Services Commission, the Registrar of Corporate Affairs, the office of the registered agent, all known stakeholders (creditors and contributories), professional advisors, the fund administrator and counterparties of the Liquidators appointment;

b.  advertising their appointment in the BVI Beacon, the Virgin Islands Official Gazette, the London Gazette and the Financial Times;

c.  retaining counsel in the BVI and the United States to seek chapter 15 recognition of the BVI Proceeding;

d.  soliciting the filing of proofs of debt and interests to crystallize claims against and interests in the TAFL estate; and

e.  notifying creditors of, and holding, the first meeting of creditors.

See generally Pretlove Decl. ¶ 25-31.

33.    The Liquidators have commenced their investigation into the financial affairs of TAFL. *Id*. ¶ 32. To gain a better understanding the TAFL's business, the Liquidators have written to its legal advisors, its auditor, its investment manager and former investment manager, its banks and the TACL liquidators/foreign representatives. *Id*.

34.    The Fund's assets were purportedly comprised of investments in TACL. *Id*. ¶ 33. The Fund's investments and accounting for those investments are not as straightforward as reported. *Id*. Upon information and belief, TAFL's investors made certain transfers of cash or cryptocurrencies to "Three Arrows" investment accounts maintained by U.S. parties at a time when TAFL and TACL had already exceeded the number of shares each was legally entitled to issue. *Id*. It is unclear, based on the information currently available to the Liquidators, how those investments were funded and booked, or whether TAFL and/or its investors have legal or equitable claims to those investments. *Id*. It is very important that the Liquidators obtain access to the relevant documents to investigate any claims, legal or equitable, it may have against third parties.

35.    The ASCENT NAV Packs note that at the time of the Liquidators' appointment, unsecured claims against TAFL were in excess of $25 million. *Id*. ¶ 34. The Liquidators have

4866-3915-8421

received proofs of debt for more than $10 million and additional redemption requests exceeding $5 million. *Id*. The Liquidators have rejected one of the proofs of debt filed by a purported creditor, being received from the Liquidators of TACL which was not substantiated. That rejection has not been formally appealed but the claim was received for voting purposes at the first creditors' meeting and the Liquidators of TACL were permitted to observe that meeting in any event. No formal claim adjudication process has commenced, no distribution has been declared and no asset recoveries have been made to warrant the same. *Id*.

36.     Based on the schedule of Investors provided by ASCENT, TAFL had 703,547 issued and fully paid-up shares across ten (10) different classes of shares. *Id*. ¶ 35.

37.     Since his initial appointment as official liquidator, Mr. Pretlove has overseen and generally directed all activities related to TAFL, including the investigation, from the BVI. *See generally* Pretlove Decl. ¶¶ 32-36. A significant proportion of the work to date relating to the BVI Proceeding has been conducted in the BVI, and all of the work is supervised by Mr. Pretlove and, with the execution of the Liquidation Resolution, ultimately subject to the supervision of the BVI Court. *Id*.

38.     Additionally, stakeholders are actively participating in the BVI Proceeding. Pretlove Decl. ¶¶ 37, 47.

**VI.     RELIEF REQUESTED**

39.     By this Verified Petition, the Petitioners seek:

   a.     recognition of the BVI Proceeding as a foreign main proceeding under section 1517(b)(1) of the Bankruptcy Code or, in the alternative, as a foreign nonmain proceeding under section 1517(b)(2) of the Bankruptcy Code;

   b.     recognition of Petitioners as TAFL's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

   c.     relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

10

## VII.   BASIS FOR RELIEF

40.    Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a "foreign proceeding" if it appears that recognition will not undermine U.S. public policy and: "(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a); *see also* 11 U.S.C. § 1506.

41.    Each of those requirements is met here, and entry of the Proposed Order attached hereto as Exhibit A will significantly aid the Liquidators' efforts to administer and recover TAFL's assets to satisfy its liabilities as well as ensure a fair and equitable treatment of and greater distributions to TAFL's creditors and interest holders.

### A.    TAFL is an Eligible Debtor Under Chapter 15 of the Bankruptcy Code

42.    Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor." 11 U.S.C. § 109(a). Section 109(a) has been applied to cases commenced under Chapter 15 and is usually satisfied if the foreign debtor has nominal amounts of property in the United States. *See In re Barnet*, 737 F.3d 238, 248 (2d Cir. 2013); *In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 294 (Bankr. S.D.N.Y. 2018) ("retainer account constitutes property of the [d]ebtors that satisfies the [s]ection 109(a)"); *Octaviar*, 511 B.R. at 373 (section 109(a) is satisfied even if the debtor manufactures eligibility by depositing a $10,000 retainer in a client trust account); *In re Cenargo Int'l, PLC*, 294 B.R. 571, 603 (Bankr. S.D.N.Y. 2003) (debtor was eligible under Chapter 15 since it had joint bank accounts and pledged stock in the United States); *In re Aerovias Nacionales de Colombia S.A.*, 303 B.R. 1, 8-9 (Bankr. S.D.N.Y. 2003) (minimal amount of property in the United States is enough to establish section 109(a) eligibility).

11

43.    TAFL is an eligible debtor under section 109(a) because it has property in the United States in the form of an undrawn retainer with Pillsbury Winthrop Shaw Pittman LLP. Pintarelli Decl. ¶ 3; *see* Pretlove Decl. ¶ 40. These funds are held in J.P. Morgan Chase client trust account in New York. *Id*. In addition, TAFL has (a) a claim filed against a debtor that is the subject of a chapter 11 case pending before the U.S. Bankruptcy Court for the District of Delaware and the JLs anticipate filing additional claims in a recently filed case, (b) legal and/or equitable claims to investment assets in U.S. entities acquired with TAFL's funds and (c) potential litigation claims against U.S. parties. *See* Pretlove Decl. ¶ 40.

**B.    The BVI Proceeding is a Foreign Proceeding and the Liquidators are Foreign Representatives**

44.    Section 101(23) of the Bankruptcy Code defines a foreign proceeding as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). This definition incorporates the term foreign representative, which the Bankruptcy Code in turn defines as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The Liquidators and the BVI Proceeding undoubtedly satisfy each of these requirements.

45.    First, the BVI Proceeding is a judicial proceeding in a foreign country. Pursuant to the Liquidation Resolution and the Act, the BVI Proceeding and the Liquidators' management of TAFL's assets and affairs are subject to the supervision and control of the BVI Court. Cruickshank Decl. ¶¶ 21, 22, 24. All creditor claims against TAFL must be submitted in the BVI Proceeding,

4866-3915-8421

and all claimants have the right to access the BVI Court and appeal initial decisions of the Liquidators regarding their claims. Pretlove Decl. ¶ 43; Cruickshank Decl. ¶¶ 25, 29.

46.    Second, the BVI Proceeding is being conducted by the Liquidators, who were properly appointed upon a written resolution of the sole voting member, TAC Pte., dated January 27, 2023, appointing the JLs as liquidators. Cruickshank Decl. ¶ 16. Upon the appointment of the liquidators, the BVI Proceeding commenced. *Id*. As such, each of the Liquidators is a "person authorized in a foreign proceeding to administer the reorganization or the liquidation of [TAFL's] assets or affairs," within the meaning of section 101(24).

47.    Third, the Act provides the statutory bases for BVI entities to wind up and liquidate. Cruickshank Decl. ¶ 13.    Thus, the Act and the Rules taken together are "a law relating to insolvency or the adjustment of debt." *Id.*; 11 U.S.C. § 101(23); *In re Global Cord Blood Corp.*, No. 22-11347, 2022 WL 17478530, at *7 (Bankr. S.D.N.Y. Dec. 5, 2022).

48.    Finally, the BVI Proceeding is a "collective proceeding" in that the liquidation process is binding on all creditors. A collective proceeding concerns the "treatment of and potential benefit to creditors" and "all interests or the interests of a creditor body as a whole, not just individuals." *Global Cord*, 2022 WL 17478530, at *7 (recognition denied because creditors have not received formal notice of the Cayman proceeding, nor been granted standing to participate in the BVI Proceeding; nor has the BVI Proceeding involved any effort to identify or classify creditors or determine how and whether to satisfy their claims); *see also In re Betcorp. Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009) (noting that a "collective proceeding is one that considers the rights and obligations of all creditors" and holding that a voluntary liquidation abroad qualifies, where the "procedure is compulsory" and "any attempt by a creditor to undermine the collective nature of liquidation is outlawed"). This concept "contemplates both the consideration and

13

eventual treatment of claims of various types of creditors . . . ." *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136, 140 (Bankr. S.D.N.Y. 2012) ("The main test of whether a proceeding is collective is whether *all* creditors' interests were considered in the proceeding.").

49.     In *construing* collective proceeding, "[t]his Court has taken a broad view of what it means to 'consider' the rights of creditors, holding that a foreign proceeding can be 'collective' even if some creditors are not able to participate directly." *In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638-39 (Bankr. S.D.N.Y. 2018) (finding proceeding collective despite possibility creditors were not allowed to participate; reasoning that relevant foreign insolvency statute ensured proceedings were in creditors' interest); *See Ashapura Minechem*, 480 B.R. at 136, 140 ("The main test of whether a proceeding is collective is whether *all* creditors' interests were considered in the proceeding.").

50.     The BVI Proceeding provides for a stay or moratorium so that, among other things, no one creditor can proceed with or commence against the Debtor any suit, action, or other proceeding without the leave of the BVI Court. Cruickshank Decl. ¶ 20. Creditors' appeals from the official liquidators' decision to admit or reject proofs of debt are made to the BVI Court. *Id.* ¶¶ 25, 29. Ultimately, the BVI Proceeding is intended to treat all claims of creditor and interests of shareholders (partners), collectively and comprehensively, rather than any single creditor or stakeholder alone. *Id.* ¶ 20. *See, e.g.*, *In re Ashapura Minechem Ltd.*, No. 11-14668 (JMP) (Bankr. S.D.N.Y. Nov. 22, 2011), ECF No. 34, at 6 (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009)); *In re Gold & Honey, Ltd.*, 410 B.R. 357, 370 (Bankr. E.D.N.Y. 2009) (citations omitted).

51.     Liquidation is a "terminal" process, in the sense that it is designed to finally wind up the company's affairs under the stewardship of the independent official liquidators, deal with

14

the claims of creditors and interests of partners, collectively and comprehensively, and then to bring the existence of the company to an end. Cruickshank Decl. at ¶¶ 21, 22.

52.     As discussed above, numerous courts in this and other districts have found that liquidation proceedings under the Act qualify as a "foreign proceeding," and that joint liquidators appointed pursuant to the Act qualify as a "foreign representative" for purposes of section 101(23) and (24). *See, e.g.*, *In re Three Arrows Capital, Ltd*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y. July 28, 2022) (ECF No. 47) (recognizing BVI liquidation as foreign main proceeding); *In re Kingate Global Fund, Ltd., et al. (in Liquidation)*, Case No. 19-12853 (SMB) (Bankr. S.D.N.Y. Oct. 18, 2019) (ECF No. 28) (order recognizing BVI liquidation as foreign main proceeding); *In re Fairfield Sentry Limited, et al.*, Case No. 10-13164 (JPM) (Bankr. S.D.N.Y. July 22, 2010) (ECF No. 47) (same).

53.     For the foregoing reasons, the BVI Proceeding is a "foreign proceeding" within the meaning of section 1517(a)(1) of the Bankruptcy Code.

### C.     The BVI Proceeding Is a Foreign Main Proceeding

54.     The BVI Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because TAFL's COMI is in the BVI. Pretlove Decl. ¶ 44. The Bankruptcy Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign proceeding "shall be recognized" as a foreign main proceeding if it is pending where the debtor has its COMI. *See* 11 U.S.C. § 1517(b)(1).

55.     Although the Bankruptcy Code does not define "center of main interests," pursuant to section 1516(c) of the Bankruptcy Code, in the absence of evidence to the contrary, the debtor's registered office, which in this case is the BVI, is presumed to be its COMI. 11 U.S.C. §1516(c). *See also In re ABC Learning Centres Ltd*., 445 B.R. 318, 333 (Bankr. D. Del. 2010) (holding that

15

debtor's registered jurisdiction was its COMI where debtor established the section 1516 presumption, and no evidence was presented rebutting that presumption).

56.     Here, the registered office of TAFL is in the BVI and has been since the time of TAFL's formation. Pretlove Decl. ¶¶ 12, 45, 49; Cruickshank Decl. ¶ 15. Further, there is no contrary evidence to rebut the resulting presumption that the BVI is TAFL's COMI.

57.     Regardless, a foreign debtor's COMI is determined at the time the Chapter 15 petition is filed. *Morning Mist Holdings Ltd. V. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013) ("a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests."); *In re Millennium Global Emerging Credit Master Fund Limited,* 458 B.R. 63 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 88 (S.D.N.Y. 2012) (describing same COMI test). Where, as here, liquidators of a foreign debtor haves engaged in substantial liquidation efforts and related activities prior to the filing of the Chapter 15 petition, courts will consider such activities in the determination of the debtor's COMI. *Fairfield Sentry Ltd.*, 714 F.3d at 137.

58.     In addition to the presumption provided under section 1516, courts consider any relevant factors, including: (a) the location of the debtor's assets; (b) the location of the debtor's books and records; (c) the location of the majority of the debtor's creditors; (d) the commercial expectations and knowledge of the debtor's creditors; and (e) the location of those who actually manage the debtor. *See, e.g.*, *Suntech Power*, 520 B.R. at 416; *In re Grand Prix Assocs.,* No. 09-16545 (DHS), 2009 WL 1410519, at *22 (Bankr. D.N.J. May 18, 2009). These factors, however, are not dispositive or exclusive, and none of the factors are required. *See Fairfield Sentry*, 714 F.3d at 137-38. Further, courts have also looked to whether a Chapter 15 debtor's COMI would have

16

been readily ascertainable to parties in interest, such as the debtor's creditors. *See Grand Prix*, 2009 WL 1410519, at *6.

59.    Here, there is no doubt that TAFL's COMI is the BVI. While TAFL has claims to certain investment assets in the United States and other jurisdictions, the significant majority of decisions related to the winding up are made by Liquidators resident in the BVI and under the supervision of the BVI Court. Pretlove Decl. ¶¶ 42, 46, 48; Cruickshank Decl. ¶¶ 22, 28. Its investments were purportedly recorded as investments in a BVI fund, TACL. It is likely the Liquidators will dispute how TACL accounted for their investments, which were arguably direct investments of TAFL in the underlying funds. *See Id*. ¶ 47. Those disputes will likely be resolved by the BVI Court. The collection of any value from TAFL's investments will be overseen from the BVI by the Liquidators through the winding up proceeding of TAFL, including via the Liquidators' negotiation of potential settlements and oversight of contemplated litigation. *Id*. at ¶ 46.

60.    Since the commencement of the BVI Proceeding, substantially all activities associated therewith have been conducted and/or overseen by the Liquidators from the BVI, including overseeing the collection of information related to TAFL's assets. Pretlove Decl. ¶¶ 32-36. Among other things, the Liquidators have overseen and filed all necessary notices and displaced the prior management (the Directors) of TAFL and assumed their duties, are engaged in the process of investigating and assessing the claims of TAFL and its creditors and investors, are gathering information about the operation and management of TAFL's business before the BVI Proceeding and are engaged in discussions with creditors and interest holders. *Id*. ¶¶ 25-37.

61.    The *Suntech* opinion issued by this Court is instructive. In *Suntech,* the Court held that the activities of a Cayman provisional liquidator were sufficient to establish the Cayman

17

Islands as the debtor's COMI, even though the debtor's principal place of business prior to foreign

liquidation was in China. *Suntech Power*, 520 B.R. at 419.

62.    A primary factor in this Court's COMI analysis for *Suntech* was the provisional

liquidator's active involvement in managing the debtor fund's subsidiaries. As stated, the

Liquidators have been continuously working on managing the liquidation of TAFL and gathering

information related to how its investment funds were deployed, the TACL's purported investments,

how they were structured and what led to its downfall, including any claims TAFL may have,

contractual, at law or in equity, related to its investments. In *Suntech,* day-to-day operations of the

debtor fund was left to a board of directors, while the Liquidators in this case have absolute

management control over TAFL subject to the supervision of the BVI Court. *Id*. at 417.

63.    As set forth in detail in paragraphs 32-38 above, as well as in the accompanying

Pretlove Decl., it is respectfully submitted that the level of liquidation and ongoing business

activity in this case substantially exceeds what this Court and other courts have previously found

sufficient to establish COMI.

64.    Under the circumstances, the Liquidators submit that there is ample evidence and

precedent to support recognition of the BVI Proceeding as a foreign main proceeding.

**D.    Alternatively, the BVI Proceedings Should Be Recognized as a Foreign Non-Main Proceeding.**

65.    The BVI Proceeding meets the requirements of a "foreign main proceeding"

pursuant to section 1502 of the Bankruptcy Code. Nevertheless, should the Court determine that

the BVI Proceeding should not be recognized as a foreign main proceeding, the Liquidators submit

that, in the alternative, the BVI Proceeding should be recognized as a foreign nonmain proceeding

under sections 1517(b)(2) and 1502(5) of the Bankruptcy Code.

18

66.     Section 1502(5) of the Bankruptcy Code defines a foreign nonmain proceeding as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). In turn, "establishment" is defined by section 1502(2) as being "any place of operations where the debtor carries out non-transitory economic activity." 11 U.S.C. § 1502(2). The "establishment" requirement is satisfied by the local conduct of business. *See In re Fairfield Sentry Ltd. (GBD)*, No. 10-13164, 2011 WL4357421, at *10 n.8 (S.D.N.Y. Sept. 16, 2011) ("This Court agrees with the Bankruptcy Court that if main recognition were not granted, non-main recognition of Sentry's BVI Proceeding would be appropriate because Sentry has an establishment in the BVI for the conduct of non-transitory economic activity, *i.e.* a local place of business.").

67.     The Petitioners respectfully submit that, at a minimum, their activities in the BVI constitute non-transitory economic activity. Pretlove Decl. ¶¶ 32-37, 45. There is no foreign or domestic insolvency proceeding other than the BVI Proceeding. *Id*. at ¶ 40.

68.     As such, there can be no dispute that the BVI Proceeding is a legitimate insolvency proceeding. Under the circumstances and given that TAFL's ongoing winding up activities are being conducted from the BVI, at a minimum, this Court should recognize the BVI Proceeding as a foreign nonmain proceedings pursuant to Chapter 15 and further, to grant the Liquidators the discretionary relief requested.

### E.     The BVI Proceeding Meets All Other Requirements for Recognition

69.     In addition to being a foreign main (or nonmain) proceeding brought by duly appointed foreign representatives, the BVI Proceeding meets all other requirements for recognition under section 1515 of the Bankruptcy Code. The Petition is accompanied by certified copies of the Liquidation Resolution, which evidences the commencement of the BVI Proceeding and the appointment of the Liquidators as joint official liquidators of TAFL. The Petition also is

19

accompanied by a declaration that contains a statement identifying all foreign proceedings with respect to TAFL that are known to the Liquidators. *See* 11 U.S.C. §§ 1515(b), (c); *see also* Pretlove Decl. ¶ 40.

70.    The Petition likewise is accompanied by a declaration containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a statement indicating that there are no other persons or entities known to the Liquidators that are authorized to administer foreign proceeding with respect to TAFL, and a list of all parties to litigation with TAFL in the United States. *See* Pretlove Decl. ¶ 40, <u>Exhibit B</u>. All documents supporting the Petition are in English. *See* 11 U.S.C. § 1515(d). For all of these reasons, this Court can and should find that all of the requirements for recognition of the BVI Proceeding as a foreign main proceeding under Chapter 15 have been satisfied.

## F.    Relief Pursuant to Section 1521 of the Bankruptcy Code is Appropriate

71.    In addition to the relief that is automatically provided by section 1520 of the Bankruptcy Code upon recognition of a foreign main proceeding,[2] Petitioners request additional relief pursuant to section 1521 of the Bankruptcy Code to protect TAFL's assets and its creditors' interests. Section 1521 of the Bankruptcy Code provides, in part, that the court may grant a foreign representative "any appropriate relief," including "any additional relief that may be available to a trustee," subject to certain limitations (which do not apply here) where necessary to effectuate the purpose of Chapter 15 and to protect the debtor's assets and creditors' interests. 11 U.S.C. § 1521(a) .

72.    Petitioners request that the Court grant additional relief pursuant to section 1521(a)(4) of the Bankruptcy Code and authorize the Liquidators to issue subpoenas and obtain

---

[2]  Upon recognition of the BVI Proceeding as a foreign main proceeding, certain relief is automatically granted as a matter of right. *See* 11 U.S.C. § 1520.

4866-3915-8421

discovery from parties with whom TAFL either conducted business directly or indirectly through TACL with third parties or its directors and/or advisors to aid in its investigation of TAFL's business affairs and to locate additional information about assets of TAFL, which include potential equitable claims to assets here in the United States.

## VIII.    NO PRIOR REQUEST

73.    No prior request for the relief sought in this Petition has been made to this or any other court.

WHEREFORE, for the foregoing reasons, Petitioners respectfully request entry of the Proposed Order attached hereto as Exhibit A, (i) recognizing the BVI Proceeding as a "foreign main proceeding," (ii) recognizing Petitioners as TAFL's foreign representatives, (iii) granting additional relief under section 1521, and (iii) granting such other and further relief as the Court deems just and proper.

New York, New York
Dated: February 8, 2024                          Respectfully submitted,

                                        PILLSBURY WINTHROP SHAW PITTMAN LLP

                                        */s/ John A. Pintarelli*
                                        John A. Pintarelli
                                        Patrick E. Fitzmaurice
                                        Hugh M. McDonald
                                        31 West 52nd Street
                                        New York, NY 10019-6131
                                        Telephone: 212-858-1000
                                        Facsimile: 212-858-1500

                                        *Attorneys for Petitioners Paul Pretlove, David Standish, James Drury, in their capacities as Joint Liquidators of Three Arrows Fund, Ltd (In Liquidation)*

4866-3915-8421

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Paul Pretlove declares as follows:

My colleagues David Standish, James Drury and I are the duly appointed joint liquidators (the "**Petitioners**") of Three Arrows Fund, Ltd (In Liquidation), an exempted company in liquidation in the British Virgin Islands by way of a resolution of its sole voting shareholder dated January 27, 2023 to liquidate the company and appoint the Petitioners as joint liquidators under the Companies Act of the BVI (2023 Revision). I have full authority to verify the foregoing *Verified Petition for Order Recognizing Foreign Main Proceeding and Granting Additional Relief Under Chapter 15 of the Bankruptcy Code and Memorandum of Law in Support Thereof* (the "**Verified Petition**"). I have read the Verified Petition, am informed, and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of February 2024 in Tortola, British Virgin Islands.

Paul Pretlove
Solely in his capacity as Joint Liquidator for Three
Arrows Fund, Ltd (In Liquidation)

4866-3915-8421