| | |
|---|---|
| Adam J. Goldberg | Daniel Scott Schecter (*pro hac vice* pending) |
| Brett M. Neve (*pro hac vice* pending) | Nima H. Mohebbi (*pro hac vice* pending) |
| Nacif Taousse | Caitlin J. Campbell (*pro hac vice* pending) |
| Brian S. Rosen (*pro hac vice* pending) | **LATHAM & WATKINS LLP** |
| **LATHAM & WATKINS LLP** | 10250 Constellation Blvd. Suite 1100 |
| 1271 Avenue of the Americas | Los Angeles, CA 90067 |
| New York, NY 10020 | Telephone: (424) 653-5500 |
| Telephone: (212) 906-1200 | Facsimile: (424) 653-5501 |
| Facsimile: (212) 751-4864 | Email: daniel.schecter@lw.com |
| Email: adam.goldberg@lw.com | nima.mohebbi@lw.com |
| brett.neve@lw.com | caitlin.campbell@lw.com |
| nacif.taousse@lw.com | |
| brian.rosen@lw.com | |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Three Arrows Capital, Ltd.,[1] | Case No. 22-10920 (   ) |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF RUSSELL CRUMPLER**
**IN SUPPORT OF VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING AND RELATED RELIEF**

I, Russell Crumpler, pursuant to 28 U.S.C. Section 1746, hereby declare under penalty of perjury under the laws of the United States of America, as follows:

1. I am a Senior Managing Director of Teneo (BVI) Limited ("Teneo") in the British Virgin Islands. I, along with my colleague Christopher Farmer (also of Teneo), have been appointed as joint liquidators of Three Arrows Capital Ltd. (the "Debtor") by the Eastern Caribbean Supreme Court in the High Court of Justice (Commercial Division).

2. I submit this declaration in support of the *Verified Petition under Chapter 15 for Recognition of a Foreign Proceeding* pending in the British Virgin Islands ("BVI") [Docket. No.

---

[1] The last four digits of the Debtor's British Virgin Islands company registration number are 0531. The location of the Debtor's registered office is ABM Chambers, P.O. Box 2283, Road Town, Tortola, VG1110, British Virgin Islands.

2] (the "Verified Petition" and together with the Form of Voluntary Petition [Docket. No. 1], the "Petition")[2] to provide background on the Debtor and the BVI proceeding, and other relevant events leading up thereto. I have reviewed the Petition and it is my belief that the relief sought therein is necessary to implement the liquidation described herein.

3. I am over the age of 18 and I am duly authorized to make this declaration acting in my capacity as joint liquidator of the Debtor. Except as otherwise indicated, the facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor. I am authorized to submit this declaration on behalf of the Debtor, and if called upon to testify, I could and would testify competently to the facts set forth herein.

4. Section I of this declaration describes my professional background and experience. Section II describes the Debtor, including specific information about the Debtor's business and connections to the United States. Section III describes the events leading up to the Debtor's insolvency and the appointment of joint liquidators in the BVI proceeding. Section IV provides an overview of a related arbitration against the Debtor,[3] including a description of how that related proceeding could threaten the ability of joint liquidators in the BVI proceeding to properly discharge their duties with regards to the entirety of the Debtor's creditor body. Finally, Section V describes the need for Chapter 15 relief.

**I.     PROFESSIONAL BACKGROUND AND EXPERIENCE**

5. I joined Teneo earlier this year following the acquisition of KPMG's BVI restructuring business by Teneo. Before joining Teneo, I was a Managing Director of KPMG (BVI) Limited and the Head of Restructuring for KPMG's Islands Group. Teneo's BVI team

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Verified Petition.

[3]   As of the filing of the petition in this case, the creditor who had initiated this arbitration agreed to a temporary stay of the proceedings.

2

(formerly KPMG) has been named Insolvency Practice of the Year in the BVI Finance awards for 2019 and 2020.

6.  I am a UK Joint Insolvency Examination Board qualified insolvency professional and a fellow of the Institute of Chartered Accountants in England and Wales. I have led the advisory team in the BVI since 2011 and have been working as a restructuring and insolvency specialist since 2000. I am a licensed insolvency practitioner in the BVI and the former chair of Recovery and Insolvency Specialists Association (BVI) Limited, the BVI's INSOL[4] member organization.

7.  I have extensive restructuring experience from numerous complex, multi-jurisdictional engagements, including serving as a court-appointed liquidator in several high-profile matters, a number of which have caused me to seek recognition under the US Bankruptcy Code. I also have substantial experience across a number of business sectors, with a specific focus on contentious insolvencies, asset tracing, and the financial services industry.

## II. THE DEBTOR

8.  The Debtor has represented in public BVI filings that it is an investment firm engaged in short-term opportunities trading, and is heavily invested in cryptocurrency, funded through borrowings. As of April 2022, the Debtor was reported to have over $3 billion of assets under its management. This was reported, for example, in a June 17, 2022 article published by the Wall Street Journal, a true and correct copy of which is attached hereto as **Exhibit 1.**

9.  On May 3, 2012, Debtor was incorporated as a Business Company under the laws of the British Virgin Islands ("BVI"). It was co-founded by Kyle Davies and Su Zhu. It had

---

[4] INSOL is a world-wide federation of national associations of accountants and lawyers who specialize in turnaround and insolvency.

3

three directors: Davies, Zhu, and Mark James Dubois, a BVI resident. Its sole shareholder owning all of its "management shares" is Three Arrows Capital Pte. Ltd.

10. As an investment firm registered in the BVI, the Debtor is also regulated by the BVI Financial Services Commission, and is consequently required to, *inter alia,* provide annual reporting to the Commission and comply with BVI rules and regulations, as well as subject itself to potential audit and enforcement actions.

11. I understand that Three Arrows Capital Pte. Ltd. (the direct parent entity of the Debtor) operated as a regulated fund manager in Singapore until last year, when it shifted its domicile to the BVI, as part of a global corporate plan to relocate operations to Dubai. I also understand that, on June 30, 2022, the Monetary Authority of Singapore (the "MAS") issued a "reprimand" of Three Arrows Capital Pte. Ltd. for providing false information to the MAS and exceeding the assets under management for a registered fund management company. A true and correct copy of the MAS's press release is attached hereto as **Exhibit 2.**

12. It is my understanding and belief that Mr. Davies and Mr. Zhu's current location remains unknown, but they are rumored to have left Singapore.

13. Currently, the Debtor's registered office and address for service is located at c/o ABM Corporate Services, Ltd 1st Floor, Columbus Centre, P.O. Box 2283, Road Town, Tortola, British Virgins Islands, VG1110.

14. The Debtor has property in and connections to the United States and New York, New York. For example, I am aware that the Debtor has assets in the form of interests in a $150,000 retainer with the New York office of Dan Tan Law, counsel to the Debtor, through a transfer by Solitaire LLP, the Debtor's Singapore-based counsel, which is being held in a client trust account located in New York, New York. I am also aware that the Debtor is a borrower under certain loan agreements that are governed by the laws of the State of New York, provide

4

for loans to be made in U.S. Dollars or Bitcoin, and include forum selection clauses designating arbitration in New York as the forum for resolution of disputes arising in connection with the loan agreement. Further, one of these loan agreements is currently the subject of a pending (but temporarily stayed) arbitration against the Debtor, as described in more detail below.

## III.   THE DEBTOR'S INSOLVENCY AND THE APPOINTMENT OF JOINT LIQUIDATORS

### The Debtor Becomes Insolvent

15.    The Debtor was well known in the cryptocurrency industry as a leading proprietary trading fund. Since Debtor began trading in cryptocurrency in recent years, it grew into one of the largest and best known cryptocurrency hedge funds.

16.    I understand that the Debtor borrowed digital and fiat currency from multiple lenders to fund its cryptocurrency investments. I also understand from various news outlets that a substantial portion of the Debtor's investment portfolio was comprised of one type of cryptocurrency called Luna. This was reported, for example, in the previously-mentioned June 17, 2022 Wall Street Journal article. *See* Exhibit 1.

17.    I understand based on various news reports that, in mid-May 2022, Luna lost 99% of its value. I also understand that, following this "crash" in the value of Luna, prices of other cryptocurrencies also experienced further rapid declines, which were in addition to general downward trends in the cryptocurrency markets that have been prevalent during 2022. Among other news sources, the Luna crash and subsequent downturn of the cryptocurrency market was also covered in the June 17, 2022 Wall Street Journal article. *See* Exhibit 1.

18.    I am informed and believe that, in the weeks that followed, the Debtor reportedly defaulted on its obligations to several of its major lenders, many of which liquidated the Debtor's positions. I also understand that, by mid-June 2022, the Debtor was rumored to be facing more

than $400 million in liquidations. These events were widely reported, including in a June 16, 2022 article published by Fortune, a true and correct copy of which is attached hereto as **Exhibit 3**.

19. I understand that, later that month, some of the Debtor's known creditors publicly acknowledged that the Debtor had failed to repay hundreds of millions of loaned assets, including one creditor who publicly stated Debtor owed it the equivalent of $675 million in cryptocurrencies, and that it planned to pursue recovery against the Debtor. This was reported in a June 27, 2022 Wall Street Journal article, among other publications. A true and correct copy of the June 27, 2022 Wall Street Journal article is attached hereto as **Exhibit 4.**

20. I am also aware that one of the Debtor's largest known creditors initiated arbitration against the Debtor seeking repayment of amounts loaned and provisional relief on an emergency basis with respect to the Debtor's remaining assets, but has agreed to temporarily stay those proceedings, as explained further below.

21. With many creditors seeking to enforce their rights to collect on the Debtor's outstanding debt obligations, the risk increased that the Debtor would dissipate it assets without consideration of each individual lender's ability to recoup its losses.

### DRB Panama Inc. Seeks Appointment of Provisional Liquidators; Debtor Seeks Appointment of Liquidators

22. Under BVI law, in my experience, a "liquidator" effectively serves to help wind up the affairs of a BVI company and protect its assets, so that, *inter alia*, its debts, liabilities and claims can be resolved fairly for the benefit of all creditors. It is, in essence, a collective remedy.

23. On June 24, 2022, one of the Debtor's many creditors—DRB Panama Inc. ("DRB")—filed an application to appoint joint provisional liquidators—and thereafter, full liquidators—in the Eastern Caribbean Supreme Court in the High Court of Justice (Commercial

Division) located in BVI (the "BVI Commercial Court").  The application was assigned claim number BVIHCOM2022/0117.

24. Subsequently, on June 27, 2022, the Debtor filed its own application for the appointment of joint liquidators before the BVI Commercial Court, and requested that the application be heard urgently on an *ex parte* basis.  The Debtor's originating application stated that Debtor is "in default of its [many] loan obligations" and "is insolvent" under applicable law, and thus seeks the appointment of joint liquidators pursuant to sections 159(1)(a), 162(1)(a) and 162(1)(b) of the BVI Insolvency Act 2003.  In essence, the Debtor acknowledged, publicly, the many reports released in the press over the prior few weeks regarding the nature of its ability to operate as a going concern.

25. Despite seeking the appointment of joint liquidators through its own petition, DRB did not oppose the Debtor's request.  The Debtor's application was assigned claim number BVIHC(COM)2022/0119.  A true and correct copy of the originating application filed by the Debtor is attached hereto as **Exhibit 5**.

### Joint Liquidators Are Appointed

26. On June 29, 2022, the Honorable Mr. Justice Jack of the BVI Commercial Court heard the Debtor's application for the appointment of joint liquidators on an *ex parte* basis.  Justice Jack consolidated DRB's application with Debtor's application under claim number BVIHC(COM)2022/0119.  Justice Jack then formally appointed Mr. Farmer and myself as joint liquidators of the Debtor in the matter (also referred to as the "BVI Proceeding"), with the power to act jointly or severally on behalf of Debtor of all matters relating to the winding up of its business.

27. The order appointing us as joint liquidators states that we have the power to: "(a) commence, continue, discontinue or defend any claim, action or legal proceeding in the United

States of America ('US') as [we] see fit; (b) commence proceedings pursuant to Chapter 15 of US Bankruptcy Code as [we] deem appropriate; and (c) seek recognition of this order in any jurisdiction as [we] may deem appropriate." It further states that we shall have "all those powers set out in section 186 and Schedule 2 of the Insolvency Act 2003," including the "[p]ower to carry on the business of the Company so far as may be necessary for its beneficial liquidation," "[p]ower to make a compromise or arrangement with creditors or persons claiming to be creditors," "[p]ower to commence, continue or defend any action or other legal proceedings in the name and on behalf of the Company[,]" and the "[p]ower to sell or otherwise dispose of property of [the Debtor]." A true and correct copy of the BVI Commercial Court's June 29, 2022 order issued in the BVI Proceeding is attached hereto as **Exhibit 6**. Section 162 of the Bankruptcy Act also provides that we have "the powers necessary to carry out the functions and duties of a liquidator under this Act[.]"

28.     Based on this order, it is my understanding that Mr. Farmer and myself, as court-appointed joint liquidators of the Debtor, have a legal duty, subject to judicial supervision, to conduct an accounting and, ultimately, to dissolve the Debtor and marshal and distribute its assets to its creditors in a fair, legal, and orderly fashion. It is also my understanding that, because of the BVI Proceeding, the Debtor's key corporate activities moving forward will be conducted by myself and Mr. Farmer and will occur in the BVI.

29.     To that end, Mr. Farmer and I have already centralized the Debtor's activities in the BVI, including directing all creditors to correspond with us in the BVI (which will occur pursuant to court-sanctioned protocols), and establishing a bank account in the BVI in the Debtor's name. I also understand that many creditors have retained BVI counsel.

**IV. THE ARBITRATION PROCEEDING**

30. Despite our appointment as joint liquidators, I understand that one of the Debtor's largest known creditors has initiated an arbitration in New York, New York against the Debtor, which is being administered by the American Arbitration Association under its Commercial Arbitration Rules and is governed by New York law. I also understand that this creditor had applied for emergency relief with the intention of conserving Debtor's assets, or, alternatively, freezing the Debtor's assets pending an arbitration of the creditor's claims. The creditor had further requested that an emergency arbitrator issue an interim order while its emergency application is pending restraining the Debtor from taking any action with respect to its assets. A hearing on the creditor's application for emergency relief was set for July 5, 2022, but as of the filing of the petition in this case, the creditor has agreed to a temporary stay of all proceedings.

31. More specifically, on or about June 28, 2022, in our capacity as joint liquidators, Mr. Farmer and I reached out to Dan Tan Law, current counsel for the Debtor in the arbitration, to inquire about the status of the arbitration. Dan Tan and Mark Beckett are currently leading the defense for the Debtor in that matter. We informed Messrs. Beckett and Tan of our role. We also asked that they communicate to the creditor's counsel our request that the creditor put its request for emergency relief on temporary hold to give us the opportunity to evaluate the arbitration in connection with the BVI Commercial Court's order appointing joint liquidators in the BVI Proceeding. As communicated through its counsel, the creditor agreed to a temporary stay of all proceedings, including the application for emergency relief and an interim order in the arbitration.

**V. NEED FOR CHAPTER 15 RELIEF**

32. I am advised by BVI counsel that the BVI proceeding comports with BVI law, and, based on consultation with U.S. counsel, I believe that it also satisfies the requirement for

9

recognition under Chapter 15 of the Bankruptcy Code. In light of the many circumstances—including the significant number of creditors that will likely seek recovery against Debtor—a Chapter 15 proceeding is undeniably necessary. Absent recognition, I would expect other creditors of the Debtor to seek to exercise self-help remedies in the United States and elsewhere, in contravention of the BVI Commercial Court's order.

33. Accordingly, recognition of the BVI proceeding, enforcement of the BVI Commercial Court's order appointing joint liquidators within the territorial jurisdiction of the United States, granting all relief afforded to foreign main proceedings under 11 U.S.C. Section 1520, and imposing an automatic stay of all proceedings against the Debtor within the United States will be critical components to liquidating the Debtor without disruption or the threat of adverse actions by dissenting creditors against the Debtor or its assets in the United States. Without assistance from this Court, liquidation could be fundamentally undermined to the detriment of all parties in interest. I believe that the interests of all the Debtor's creditors are aligned with the Debtor in seeking the relief requested in the Petition, which will ensure that liquidation is carried out successfully.

34. Additionally, as a joint liquidator of the Debtor, I have the power to, among other things, investigate the affairs involving Debtor's assets for purposes of recovering assets for the benefit of the creditors. I am seeking recognition to, among other things, obtain documentary and testimonial evidence from witnesses in furtherance of my investigative and asset recovery efforts.

35. Because I was only recently appointed as a joint liquidator, I have only recently started my investigative work. The work of the Foreign Representatives will include investigation of the details of the Debtor's transactions leading up to its insolvency, as well as its outstanding obligations, and taking possession of the Debtor's liquid and illiquid assets, which I

understand and believe to be located in and/or potentially subject to the laws of a number of different jurisdictions (keeping in mind that the Debtor's digital assets are intangible and transferrable). Thereafter, I hope to make recoveries to the extent possible, including by filing actions and asserting such proprietary claims as may be available to me in the United States or elsewhere. I may also bring claims against any third parties that are subject to suit and may have damaged or owe money to the Debtor in the United States, so that I can maximize creditors' ability to collect on their claims.

36.  I have also requested that the Court cause the Proposed Order to become effective immediately upon entry, notwithstanding the 14-day stay of effectiveness of that order. I believe that a waiver of the 14-day stay of effectiveness period is necessary to shield the Debtor's assets from aggressive creditors and provide a breathing spell so that Mr. Farmer and I can fulfill our judicial duties, and immediately begin accounting for and liquidating the Debtor's assets, as was ordered by the BVI Commercial Court. Further delay could result in an unfair distribution of assets to creditors or loss of market confidence in the Debtor, which may seriously impact the viability of the Debtor's business.

Dated: July 1, 2022  /s/ Russell Crumpler

Russell Crumpler of Teneo (BVI) Limited as joint liquidator of the Three Arrows Capital Ltd. (the "Debtor")