**Hearing Date: June 25, 2024 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: June 18, 2024 at 4:00 p.m. (Prevailing Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF DEBTORS' MOTION**
**FOR ENTRY OF AN ORDER (I) APPROVING A SETTLEMENT**
**AGREEMENT WITH A CLAIMANT AND (II) GRANTING RELATED RELIEF**

       **PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors-in-possession ("Debtors"), by and through their undersigned counsel, filed a motion (the "Motion") for entry of an order, substantially in the form attached thereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

---

[1]     The Genesis Debtors in the above-captioned cases, along with the last four digits of each Genesis Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of the above-captioned cases, the service address for the Genesis Debtors is 175 Greenwich Street, New York, New York, 10007.

(i) approving a settlement and compromise by and among the Debtors and one of GGC's creditors that filed a proof of claim in the Chapter 11 Cases (the "Claimant")[2] and (ii) granting related relief.

  **PLEASE TAKE FURTHER NOTICE THAT** a hearing on the Motion will be held via Zoom before the Honorable Sean H. Lane, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601 on **June 25, 2024 at 11:00 a.m. (Eastern Time)** (the "Hearing Date").

  **PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the Motion or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **June 18, 2024 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline") and (b) served as required by the *Order Implementing Certain Notice and Case Management Procedures*, ECF No. 44 (the "Case Management Order"). The Debtors shall have until **June 21, 2024 at 12:00 p.m. (Eastern Time)** (the "Reply Deadline") to file their reply, if any.

  **PLEASE TAKE FURTHER NOTICE** that parties wishing to register for the Zoom hearing should use the eCourt Appearances link on the Court's website: https://www.nysb.uscourts.gov/ecourt-appearances. After the deadline to make appearances passes, the Court will circulate by email prior to the Hearing the Zoom links to those persons who made eCourt Appearances, using the email addresses submitted with those appearances. Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so by calling the following muted, listen-only number: 1-929-205-6099, Access Code: 92353761344#.

  **PLEASE TAKE FURTHER NOTICE** that if no written objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court the Proposed Order, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

  **PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtors' proposed notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/genesis or by calling +1 888 524 2017.

  **PLEASE TAKE FURTHER NOTICE** that the Hearing may affect your rights. Please read the Motion carefully and, if you have one available, discuss it with your attorney. (If you do not have an attorney, you should consider consulting with one.)

  **PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Bankruptcy Court to hear your position on the Motion, then you or your attorney must attend the Hearing. If you or your attorney do not follow the foregoing

---

[2]    Pursuant to the *Order Granting the Debtors' and the Official Committee of Unsecured Creditors' Motions for Entry of an Order Requiring the Redaction of Certain Personally Identifiable Information* (the "Sealing Order") (ECF No. 694), the Debtors have redacted the name of Claimant (who is an Individual Lender as defined in the Sealing Order) in the Motion. The Debtors shall provide unredacted copies of the Motion to those parties required under paragraph 5 of the Sealing Order.

steps, the Bankruptcy Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Debtors.

Dated:  June 4, 2024　　　　　　　　　　CLEARY GOTTLIEB STEEN & HAMILTON LLP
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　/s/ *Jane VanLare*
　　　　　　　　　　　　　　　　　　　　Sean A. O'Neal
　　　　　　　　　　　　　　　　　　　　Luke A. Barefoot
　　　　　　　　　　　　　　　　　　　　Jane VanLare
　　　　　　　　　　　　　　　　　　　　Thomas S. Kessler
　　　　　　　　　　　　　　　　　　　　One Liberty Plaza
　　　　　　　　　　　　　　　　　　　　New York, New York 10006
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 225-2000
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 225-3999

　　　　　　　　　　　　　　　　　　　　*Counsel for the Debtors*
　　　　　　　　　　　　　　　　　　　　*and Debtors-in-Possession*

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION**
**FOR ENTRY OF AN ORDER (I) APPROVING A SETTLEMENT**
**AGREEMENT WITH A CLAIMANT AND (II) GRANTING RELATED RELIEF**

---

[1]     The Genesis Debtors in the Chapter 11 Cases along with the last four digits of each Genesis Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564) ("GGC"); Genesis Asia Pacific Pte. Ltd. (2164R) ("GAP").  For the purpose of the Chapter 11 Cases, the service address for the Genesis Debtors is 175 Greenwich Street, New York, New York, 10007.

Genesis Global Holdco, LLC ("Holdco")[2] and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) approving a settlement and compromise by and among the Debtors and ██████████ (the "Claimant")[3] (the "Claimant" and together with the Debtors each a "Party" and collectively the "Parties"). In support of this Motion, the Debtors submit the *Declaration of Andrew Sullivan in Support of the Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement with Claimant* (the "Sullivan Declaration"), attached hereto as **Exhibit C**, and respectfully state as follows:

## PRELIMINARY STATEMENT[4]

1.    Through this Motion, the Debtors seek this Court's approval of a settlement agreement, substantially in the form attached hereto as **Exhibit B** (the "Settlement Agreement"),

---

[2]    All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement (as defined herein).

[3]    Pursuant to the *Order Granting the Debtors' and the Official Committee of Unsecured Creditors' Motions for Entry of an Order Requiring the Redaction of Certain Personally Identifiable Information* (the "Sealing Order") (ECF No. 694), the Debtors have redacted the name of Claimant (who is an Individual Lender as defined in the Sealing Order). The Debtors shall provide unredacted copies of this Motion to those parties required under paragraph 5 of the Sealing Order.

[4]    All capitalized terms used in this Preliminary Statement shall have the meaning ascribed to them elsewhere in the Motion.

which will fully resolve all claims among and between GGC and Claimant, including those claims set forth in the proof of claim filed by Claimant in these Chapter 11 Cases.

2.      Pursuant to the MLAs, Claimant alleges that GGC owes Claimant (i) the aggregate amount of 230,000,000 USDT that was provided by Claimant to GGC in connection with the Borrower MLA and (ii) unpaid interest fees and late fees in connection with the Lender MLA in the amount of 14,880.32910 USDT as of the Petition Date.  GGC alleges that Claimant owes GGC the aggregate amount of 151,000 ETH and 151,000 ETHW as unpaid principal and (ii) unpaid interest fees in the amount of 910.137 ETH and 546.082 ETHW as of the Petition Date.

3.      The Settlement Agreement provides, among other things that (a) Claimant shall pay GGC $40,000,000 and (b) the Debtors and Claimant shall mutually release each other from any and all liability and claims as set forth in the Settlement Agreement, including for any transfers by the Debtors to Claimant during the Preference Period.[5]

4.      The Settlement Agreement, if approved, will provide benefit to the Debtors' estates by, among other things, adding $40,000,000 to the Debtors' assets available for distributions to holders of allowed claims, resolving a large claim against the Debtors and therefore narrowing the total amount of general unsecured claims against the estates, releasing the Disputed Claim Reserve Amount to ultimately benefit holders of allowed claims, and eliminating the risks, expenses, and uncertainty associated with potential continued litigation among the Parties.  Entry into the Settlement Agreement has been approved by the Special Committee, which, following

---

[5]      Any summary of the Settlement Agreement contained herein is solely for illustrative purposes and is qualified in its entirety by the actual terms and conditions of the Settlement Agreement.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

consultation with the Debtors' legal and financial advisors, has concluded that the Settlement Agreement is in the best interests of the Debtors' estates and their creditors.

5.         Accordingly, and for all the reasons set forth herein, the Debtors submit that entry into the Settlement Agreement is a sound exercise of the Debtors' business judgment, as well as fair and equitable, reasonable, and in the best interests of the Debtors' estates.  The Debtors respectfully request that the Court grant the relief requested in this Motion, approve the Debtors' entry into the Settlement Agreement, and enter the Proposed Order.

## JURISDICTION AND VENUE

6.         This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.  The Chapter 11 Cases

7.         On January 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the date of such filing, the "Petition Date").  The Debtors are operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).  *See Joint Administration Order* (ECF No. 37).  No trustee or examiner has been appointed in the Chapter 11 Cases.  The Official Committee of Unsecured Creditors (the "Committee") was appointed by the United States Trustee

for Region 2 pursuant to Section 1102(a) of the Bankruptcy Code.  *See Amended Notice of Appointment of Official Committee of Unsecured Creditors* (ECF No. 1595).

### B.      The Relationship Between the Parties

8.      On March 4, 2018, Debtor Genesis Global Capital, LLC ("GGC") and Claimant entered into a Master Digital Currency Loan Agreement (the "Borrower MLA"), with GGC as the lender and Claimant as the borrower, pursuant to which GGC could, from time to time, loan digital assets or U.S. dollars ("USD") to Claimant, subject to the terms and conditions stated therein.  On March 26, 2018, Claimant entered into a Master Digital Currency Loan Agreement with GGC, with GGC as the borrower and Claimant as the lender (the "Lender MLA," and, together with the Borrower MLA, the "MLAs").

9.      Claimant and GGC subsequently executed certain loans under the Borrower MLA.  GGC alleges that, pursuant to the Borrower MLA, Claimant owes GGC (i) the aggregate amount of 151,000 ETH and 151,000 ETHW as unpaid principal ("Principal Obligations") and (ii) unpaid interest fees in the amount of 910.137 ETH and 546.082 ETHW as of the Petition Date (the "Interest Fees" and together with the Principal Obligations, the "Claimant Obligations").

10.      Claimant alleges that GGC owes Claimant (i) the aggregate amount of 230,000,000 USDT that was provided by Claimant to GGC in connection with the Borrower MLA and (ii) unpaid interest fees and late fees in connection with the Lender MLA in the amount of 14,880.32910 USDT as of the Petition Date (collectively, the "Genesis Obligations")

11.      On May 10, 2023, Claimant filed proof of claim number 223 against GGC ("Claim No. 223") in the aggregate amount of $230,014,880.3291.

### C.  Litigation Related to Claim No. 223

12.      On February 15, 2024, the Debtors filed the *Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. 502 and Fed. R. Bankr. P.*

*3007* to disallow certain Claims, including Claim No. 223, on the grounds that those Claims were asserted by claimants with whom the Debtors have mutually owing obligations outstanding, resulting in a net claim after setoff in the Debtors' favor (ECF No. 1315, the "Claim Objection"). On May 1, 2024, Claimant filed a response and accompanying declaration to the Claim Objection (ECF No. 1643, the "Claim Objection Response") asserting that Claimant was owed no more than $38,606,714.80 by the Debtors.   The Claim Objection Response also served a demand for discovery concerning the Claim Objection.

13.     On May 20, 2024, the Debtors filed the *Notice of Presentment of Scheduling Order and Stipulation and Agreed Order for Estimation of a Claim Solely for the Purpose of Determining Reserves Pursuant to the Debtors' Amended Joint Chapter 11 Plan*, (ECF No. 1694, the "Stipulation and Scheduling Proposed Order").   The Stipulation and Scheduling Proposed Order memorialized an agreement (i) determining the amount to be reserved for Claim No. 223 at $38,606,714.80 (the "Disputed Claim Reserve Amount") without prejudice to all other rights, claims and remedies of Claimant or the Debtors and (ii) setting a schedule for discovery related to the Claim Objection with respect to Claim No. 223, including determining the amount of Claim No. 223 and the liability of the Debtors to Claimant or the liability of Claimant to the Debtors. The schedule also sets a final evidentiary hearing on or after October 30, 2024.

## RELIEF REQUESTED

14.     By this Motion, the Debtors respectfully request that the Court enter the Proposed Order, approving the Settlement Agreement.   The Settlement Agreement terms, as they relate to the Debtors, are as follows:

a.     **Settlement Payment**: In full and final settlement of the Genesis Obligations and the Claimant Obligations and any and all claims the Debtors, its successors, assigns and estate has or may have, whether known or unknown, against Claimant in exchange for the releases described in Section 2 of the Settlement Agreement,

within ten (10) business days after the Settlement Effective Date (as in the Settlement Agreement) which can be extended by five (5) business days with the Debtors' consent, not to be unreasonably withheld, Claimant shall pay to GGC Forty Million U.S. Dollars ($40,000,000) (the "Settlement Payment") by wire transfer of immediately available funds in accordance with the wire transfer instructions set in the Settlement Agreement.

b.    **Releases**:

i.    **Mutual Release of the Debtors and Claimant:** Subject to the exceptions enumerated in section 2(b) of the Settlement Agreement, on the Settlement Effective Date, each of the Parties, on behalf of itself, its affiliates, and each and all of its and its affiliates' respective past, present and future agents, heirs, executors, administrators, conservators, predecessors, successors, assigns, noteholders, direct and indirect parents, principals, subsidiaries, affiliates, related companies, shareholders, interest holders, investors, members, partners (including, without limitation, general and limited partners), managers, representatives, receivers, attorneys and beneficiaries, and the past, present and future officers, directors and employees of each of them (all such releasing persons and entities collectively, the "Releasing Parties"), does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge each other Party and each other Party's respective past, present and future agents, heirs, executors, administrators, conservators, successors, assigns, noteholders, participants, co-participants, direct and indirect parents, principals, subsidiaries, affiliates, related companies, shareholders, interest holders, investors, members, partners (including, without limitation, general and limited partners), managers, directors, representatives, contractors, service providers, receivers, attorneys and beneficiaries, and the past, present and future officers, directors, and employees (all such released persons and entities collectively, the "Released Parties") from, against, and in respect of any and all past, present and future claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, that any of the Parties have or may have against any of the other Parties since the beginning of time through the Settlement Effective Date including, but not limited to, (i) any claims under, arising out of or in connection with Claim No. 223 and/or the MLAs, including claims for the avoidance or recovery of transfers pursuant to sections 544, 547, 548, 550, and 553 of the Bankruptcy Code or any similar claims under any other state or federal law or principle of equity, (ii) and any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with, any of the foregoing.

**BASIS FOR RELIEF**

**D.      The Settlement is Fair, Equitable, Reasonable, and in the Best Interest of the Debtors' Estates**

15.     The Debtors have determined, in consultation with their advisors, that the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Debtors' estates.  By this Motion, the Debtors request approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019(a).  Bankruptcy Rule 9019(a) provides, in the relevant part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the [E]state[s]."  *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

16.     In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), a court must find that the proposed settlement is fair and equitable, reasonable, and in the best interests of the debtor's estates and creditors.  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. of Chicago* (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).  A decision to approve a particular compromise or settlement is within the sound discretion of the bankruptcy court.  *See Drexel Burnham,* 134 B.R. at 505.  In addition, a bankruptcy court should exercise its discretion "in light of the general public policy favoring settlements."  *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see also Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above.").

17.     In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvas the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman* (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (in making the determination of reasonableness, the court need not conduct a "mini-trial" on the merits).   "All that [the proponent of the settlement] must do is establish [that] it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly [the settlement] might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (citation omitted).   In the Second Circuit, bankruptcy courts apply the following factors in determining whether a settlement is fair and equitable:

(a)     the balance between the litigation's possibility of success and the settlement's future benefits;

(b)     the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

(c)     the "paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;"

(d)     whether other parties in interest support the settlement;

(e)     the "competency and experience of counsel" who support the settlement;

(f)     the "nature and breadth of releases to be obtained by officers and directors;" and

(g)     the "extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007).

18.     Where most or all the factors are satisfied, a settlement should be approved. See *In re Ben-Artzi*, 2021 Bankr. LEXIS 3377, 2021 WL 5871718 (Bankr. S.D.N.Y. Dec. 10, 2021) (approving a settlement where most but not all of the Iridium factors were satisfied).  When evaluating the necessary facts, a court may rely on the opinion of the debtor, parties to the settlement, and professionals.  *In re Dewey & LeBoeuf LLP*, 478 B.R. at 641; *see also In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010); *In re Purified Down Prods. Corp.*, 150 B.R. at 522-23.  In particular, the business judgment of the debtor in recommending the settlement should be factored into the court's analysis.  *MF Glob. Inc.*, 2012 WL 3242533, at *5 (citing *JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC* (In re Charter Commc'ns), 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009)).  "While the bankruptcy court may consider the objections lodged by parties in interest, such objections are not controlling. . .. [T]he bankruptcy court must still make informed and independent judgment."  *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006).

### E.   The Settlement Agreement Falls Well Within the Range of Reasonableness

19.     In this case, weighing the reasonableness factors for purposes of Bankruptcy Rule 9019, the Debtors, with approval of the Special Committee of the Board of Directors of Holdco (the "Special Committee") and following extensive consultation with the Debtors' advisors, have concluded that the Settlement Agreement is fair and equitable, reasonable,

10

and in the best interests of the Debtors' estates and, thus, should be approved.[6]  Sullivan Decl. ¶ 13.

20.    ***First***, the Settlement Agreement will result in not only full resolution of the proof of claim filed in the amount of $230,014,880.3291 against the Debtors' estates, which will be expunged under the terms of the Settlement Agreement, but also a $40,000,000 Settlement Payment that will add immediate value to the Debtors' estate, which amount is well within the range of reasonableness.  The Settlement Agreement will also allow for the release of the Disputed Claim Reserve Amount, which amount would become available for distributions to the Debtors' creditors. Therefore, the Settlement Payment will benefit all unsecured creditors by narrowing the total amount of General Unsecured Claims and adding immediate distributable assets to the estates that will therefore serve to maximize recoveries available to creditors.  Sullivan Decl. ¶ 8.

21.    ***Second***, as to the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay, the Debtors anticipate full litigation of Claim No. 223 would be both protracted and expensive.  Sullivan Decl. ¶ 9.  In prosecuting Claim No. 223, the Parties would face fact discovery, potential expert discovery, briefing and a full trial on the merits scheduled on or after October 2024 pursuant to the Stipulation and Scheduling Order before a final decision could be entered.  Sullivan Decl. ¶ 9.  The Debtors anticipate that the likely costs associated with such discovery and litigation would constitute a significant drain on the estate of

---

[6]    The Debtors note that in the order approving their *Motion Pursuant To Federal Rule Of Bankruptcy Procedure 9019(a) For Entry Of An Order Approving Settlement Agreement With FTX Debtors* (the "FTX Settlement Order", ECF No. 781), this Court found that "specific analysis and details of the resulting conclusions of the Genesis Debtors in consultation with their counsel about the value of each claim" is not necessary, and that the Court is not required to "conduct a 'mini-trial' to determine the merits of the underlying litigation." FTX Settlement Order at 19-20.  Instead, this Court held it had "an appropriate evidentiary basis to review and approve" the agreement at issue given the Genesis Debtors and their restructuring professionals had "conducted a thorough analysis of all the claims", and the settlement negotiations were "primarily handled on behalf of the Genesis Debtors by their counsel in consultation with the independent Special Committee and the Company's senior management."  *Id.* at 20-21.  Those same circumstances are met here.  *See infra* ¶¶ 37-47.

the Debtors.  Sullivan Decl. ¶ 9.  Further, even if the Debtors were to receive a favorable decision on the Claim Objection, the Debtors could face additional costs and delays in enforcing such decision.  Sullivan Decl. ¶ 10.  Thus, the cost and complexity of litigating Claim No. 223 supports the reasonable nature of the Settlement Agreement.  Sullivan Decl. ¶ 10.

22.     ***Third***, the Settlement Agreement is the product of arm's-length negotiations and significant efforts to reconcile Claimant's outstanding claims.  The Settlement Agreement was proposed, negotiated, and entered into by the Debtors and Claimant with the assistance of competent counsel, without collusion, in good faith, and from arm's-length bargaining positions. Sullivan Decl. ¶ 11.  On the part of the Debtors, the Settlement Agreement was approved by the Special Committee, which carefully weighed and considered the settlement prior to providing its approval.  Sullivan Decl. ¶ 12.  In sum, the decision by the Parties to execute the Settlement Agreement was made after an assessment of the available facts and the law, and thus the Settlement Agreement was the result of truly arm's-length negotiations.  Sullivan Decl. ¶ 11.

23.     ***Fourth***, and finally, the Debtors have exercised their informed business judgment to determine the Settlement Agreement is fair and reasonable and in the best interest of the Debtors upon consideration of the above outlined factors.  Sullivan Decl. ¶ 13.

24.     Accordingly, the Debtors submit that the settlement and compromise embodied in the Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable, and should be approved.

### NOTICE

25.     The Debtors have provided notice of this Motion in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures*,

ECF No. 44 (the "<u>Case Management Order</u>").  The Debtors submit that, considering the nature of the relief requested, no other or further notice need be provided.

**<u>NO PRIOR REQUEST</u>**

26.     No prior request for the relief requested herein has been made to this or any other Court.

*[The remainder of this page is left blank intentionally.]*

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that this Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, approving

the Settlement Agreement and (b) grant such other and further relief as is just and proper.

Dated:    June 4, 2024
         New York, New York

                                */s/ Jane VanLare*
                                Sean A. O'Neal
                                Luke A. Barefoot
                                Jane VanLare
                                CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                One Liberty Plaza
                                New York, New York 10006
                                Telephone: (212) 225-2000
                                Facsimile: (212) 225-3999

                                *Counsel to the Debtors*
                                *and Debtors-in-Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

**ORDER (I) APPROVING A SETTLEMENT**
**AGREEMENT WITH A CLAIMANT AND (II) GRANTING RELATED RELIEF**

Upon the Motion[2] of Genesis Global Holdco, LLC ("Holdco") and its affiliated

debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (the

"Chapter 11 Cases") for entry of an order (this "Order") pursuant to section 105(a) of title 11 of

the United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement and compromise by and

among the Debtors and the holder of Claim No. 223 (the "Claimant" and together with the Debtors

each a "Party" and collectively the "Parties")[3]; and the Court having jurisdiction to decide the

Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the

Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and

---

[1]     The Genesis Debtors in the Chapter 11 Cases, along with the last four digits of each Genesis Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).  For the purpose of the Chapter 11 Cases, the service address for the Genesis Debtors is 175 Greenwich Street, New York, New York, 10007.

[2]     All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3]     Pursuant to the *Order Granting the Debtors' and the Official Committee of Unsecured Creditors' Motions for Entry of an Order Requiring the Redaction of Certain Personally Identifiable Information* (the "Sealing Order") (ECF No. 694), the Debtors have redacted the name of Claimant (who is an Individual Lender as defined in the Sealing Order).  The Debtors shall provide unredacted copies of this Motion to those parties required under paragraph 5 of the Sealing Order.

consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that it has personal jurisdiction over Claimant; and due and proper notice of the relief sought in the Motion and the opportunity for a hearing thereon having been provided in accordance with the Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Settlement Agreement is fair and reasonable, is a valid exercise of the Debtors' business judgment, and constitutes reasonably equivalent value among the parties thereto.

3.      Pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Settlement Agreement is approved, and the Debtors are authorized to enter into the Settlement Agreement.

4.      Upon the Settlement Effective Date (as defined in the Settlement Agreement), following receipt of the Settlement Payment, pursuant to the terms of the Settlement Agreement, Claim No. 223 shall be deemed expunged and satisfied.

5.      The Parties are authorized to take any action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement in accordance with this Order, including without limitation to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement in accordance with this Order.

6.      This Court shall retain exclusive jurisdiction over the parties to the Settlement Agreement and any matters, claims, rights or disputes arising from or related to the Motion or the implementation, interpretation or enforcement of this Order.

Dated: _____, 2024
          White Plains, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

**Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement"), dated June 3, 2024 is made and entered into by and among (i) Genesis Global Capital, LLC ("GGC") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the jointly-administered chapter 11 cases proceeding under the caption *In re Genesis Global Holdco, LLC, et al.* Case No. 23-10063 (SHL) (the "Genesis Bankruptcy Cases"); (ii) Genesis Global Holdco, LLC's non debtor direct and indirect affiliates and subsidiaries GGC International Limited, Genesis Bermuda Holdco Limited, Genesis Global Markets Limited, Genesis UK Holdco Limited, Genesis Custody Limited, Genesis Global Assets, LLC, GGA International Limited, Genesis Global Labs, LLC, Genesis Global Trading, Inc., Genesis Asia (Hong Kong) Limited, and all other wholly-owned or controlled subsidiaries (collectively with the Debtors, the "Genesis Entities") and (iii) ▮▮▮▮▮▮▮ (the "Claimant" and, together with the Genesis Entities, each a "Party" and, collectively, the "Parties");

**WHEREAS**, on March 4, 2018, Claimant entered into a Master Digital Currency Loan Agreement with GGC, with GGC as the lender and the Claimant as the borrower, (the "Borrower MLA");

**WHEREAS**, on March 26, 2018, Claimant entered into a Master Digital Currency Loan Agreement with GGC, with GGC as the borrower and the Claimant as the lender (the "Lender MLA," and, together with the Borrower MLA, the "MLAs");

**WHEREAS**, the MLAs are each governed by the laws of the State of New York;

**WHEREAS**, on January 19, 2023, (the "Petition Date") each of the Debtors filed their respective petitions for voluntary relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), initiating the Genesis Bankruptcy Cases;

**WHEREAS**, on April 4, 2023, the Bankruptcy Court entered the *Order (i) Establishing Bar Dates for Submitting Proofs of Claim, (ii) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (iii) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (iv) Providing Certain Supplemental Relief* (ECF No. 200), setting May 22, 2023 at 4:00 PM Eastern Time as the general bar date;

**WHEREAS**, on or about May 10, 2023, the Claimant filed proof of claim number 223 ("Claim No. 223") against GGC in the Genesis Bankruptcy Cases in the aggregate amount of $230,014,880.3291;

**WHEREAS**, on February 15, 2024, the Debtors filed the *Debtors' Twenty-Third Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (the "Twenty-Third Omnibus Objection") (ECF No. 1315), which seeks to disallow and expunge certain proofs of claim, including Claim No. 223;

**WHEREAS**, on May 1, 2024, Claimant filed the *Response to Motion Twenty Third Omnibus Objection* (the "Claimant Response") (ECF No. 1643) and Claimant's declaration in support thereof, dated May 1, 2024 (ECF No. 1644), which opposed the relief

1

sought in the Twenty-Third Omnibus Objection as to the Claimant and Claim No. 223;

**WHEREAS**, on May 20, 2024, the Debtors filed the *Notice of Presentment of Scheduling Order and Stipulation and Agreed Order for Estimation of a Claim Solely for the Purpose of Determining Reserves Pursuant to the Debtors' Amended Joint Chapter 11 Plan* (the "Stipulation") (ECF No. 1694);

**WHEREAS**, Claimant alleges that GGC owes Claimant (i) the aggregate amount of 230,000,000 USDT that was provided by Claimant to GGC in connection with the Borrower MLA and (ii) unpaid interest fees and late fees in connection with the Lender MLA in the amount of 14,880.32910 USDT as of the Petition Date (collectively, the "Genesis Obligations");

**WHEREAS**, GGC alleges that, pursuant to the Borrower MLA, Claimant owes GGC (i) the aggregate amount of 151,000 ETH and 151,000 ETHW as unpaid principal ("Principal Obligations") and (ii) unpaid interest fees in the amount of 910.137 ETH and 546.082 ETHW as of the Petition Date (the "Interest Fees" and together with the Principal Obligations, the "Claimant Obligations");

**WHEREAS**, sections 547(b) and 550 of the Bankruptcy Code provide for the avoidance and recovery of transfers of a debtor's property to or for the benefit of a creditor for or on account of an antecedent debt where: (a) the transfer was made during the ninety-day period preceding the Petition Date (i.e., October 21, 2022 through January 19, 2023, the "Preference Period"); (b) at the time of such transfer, the debtor was insolvent; and (c) the transfer enables the creditor to receive more than it would have in a chapter 7 bankruptcy case;

**WHEREAS**, the Debtors have a duty and the authority to investigate, pursue, commence, prosecute, compromise, settle, or otherwise resolve matters pertaining to transfers made during the Preference Period;

**NOW, THEREFORE**, in consideration of the above and the respective promises, conditions, terms, and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

## 1.   COMMITMENTS OF GGC AND THE CLAIMANT

(a)   Settlement Payment: aIn full and final settlement of the Genesis Obligations and the Claimant Obligations and any and all claims the Debtors, its successors, assigns and estate has or may have, whether known or unknown, against Claimant in exchange for the releases described in Section 2 of this Settlement Agreement, within ten (10) business days after the Settlement Effective Date (as defined below) which can be extended by five (5) business days with the Debtors' consent not to be unreasonably withheld, Claimant shall pay to GGC Forty Million U.S. Dollars ($40,000,000) (the "Settlement Payment") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth below.

(b)   Wire Transfer Instructions: No later than one (1) business day following the Settlement Effective Date, the Debtors shall provide notice to Claimant (which notice may be delivered via e-mail to Claimant's counsel listed in Section 4(h) hereof) of its bank account number, routing number, SWIFT Code, telephonic wire confirmation coordinates, and any other

information necessary for sending and receipt of an international wire transfer from Claimant. On or before the date for making the Settlement Payment set forth above and after Claimant, or Claimant's representative, obtains telephonic confirmation from GGC of the wire details from the coordinates provided for herein, Claimant shall initiate the wire transfer to the Debtors to be received by the Debtors within ten (10) business days following the Settlement Effective Date, which can be extended by five (5) business days with the Debtors' consent not to be unreasonably withheld.  No later than one (1) business day following initiation of the wire transfer to the Debtors, Claimant shall deliver to counsel to the Debtors (which notice may be delivered via e-mail to Debtors' counsel listed in Section 4(h) hereof) confirmation of such transfer, including the applicable federal reference number or other identification.

(c)    Motion for Approval: The Debtors shall file and properly serve on all necessary and required parties and parties in interest a motion with the Bankruptcy Court (the "Approval Motion") seeking entry of an order, among other relief, (i) authorizing the Parties' entry into this Settlement Agreement on terms and conditions consistent with this Settlement Agreement, (ii) directing the Claimant to make the Settlement Payment on the terms set forth in this Settlement Agreement, (iii) that this Settlement Agreement is binding on the Debtors and their estates, including any chapter 7 trustee for the debtors, and (iv) deeming Claim No. 223 as satisfied and expunged (the "Approval Order").

## 2.    RELEASES

(a)    Mutual Release. On the Settlement Effective Date (as defined below), each of the Parties, on behalf of itself, its affiliates, and each and all of its and its affiliates' respective past, present and future agents, heirs, executors, administrators, conservators, predecessors, successors, assigns, noteholders, direct and indirect parents, principals, subsidiaries, affiliates, related companies, shareholders, interest holders, investors, members, partners (including, without limitation, general and limited partners), managers, representatives, receivers, attorneys and beneficiaries, and the past, present and future officers, directors and employees of each of them (all such releasing persons and entities collectively, the "Releasing Parties"), does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge each other Party and each other Party's respective past, present and future agents, heirs, executors, administrators, conservators, successors, assigns, noteholders, participants, co-participants, direct and indirect parents, principals, subsidiaries, affiliates, related companies, shareholders, interest holders, investors, members, partners (including, without limitation, general and limited partners), managers, directors, representatives, contractors, service providers, receivers, attorneys and beneficiaries, and the past, present and future officers, directors, and employees (all such released persons and entities collectively, the "Released Parties") from, against, and in respect of any and all past, present and future claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, that any of the Parties have or may have against any of the other Parties since the beginning of time through the Effective Date including, but not limited to, (i) any claims under, arising out of or in connection with Claim No. 223 and/or the MLAs, including claims for the avoidance or recovery of

3

transfers pursuant to sections 544, 547, 548, 550, and 553 of the Bankruptcy Code or any similar claims under any other state or federal law or principle of equity, (ii) and any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with, any of the foregoing (all of the foregoing, the "Released Claims").

    (b)    Exceptions to Mutual Release.

        (i)    Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect their respective obligations under this Settlement Agreement or the Parties' respective rights to bring any claims or other causes of action arising out of or in connection with a breach of this Settlement Agreement.

        (ii)    Notwithstanding any other provision of this Settlement Agreement, any affiliates or subsidiaries of the Digital Currency Group other than the Genesis Entities (the "DCG Entities"), and such DCG Entities' respective directors, officers, employees, attorneys, accountants, and other professionals (collectively, the "DCG Persons"), are not Released Parties or Releasing Parties, and the Parties do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, all Claims or other causes of action against any DCG Entity or DCG Person.

        (iii)    Notwithstanding any other provision of this Settlement Agreement, the Parties do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or other causes of action against any person or entity that is not one of the Released Parties.

## 3.    REPRESENTATIONS & ACKNOWLEDGEMENTS

    (a)    Representations and Warranties of Claimant: Claimant represents and warrants that as of the execution date and as of the Settlement Effective Date:

        (i)    Claimant is not a person with whom dealings are restricted or prohibited under economic sanctions issued or administered by the United States, European Union and its member states, the United Kingdom, or United Nations Security Council ("Sanctions"), including as a result of being (i) included in a list of persons subject to sanctions, (ii) located, organized, or resident in a country or territory subject to country- or territory-wide sanctions (as of the date hereof, Cuba, Iran, North Korea, Syria, or the Crimea, Donetsk, Luhansk, or Zaporizhzhia regions of Ukraine, each, a "Sanctioned Territory"), (iii) directly or indirectly owned or controlled, or acting on behalf of, any of the foregoing (a "Sanctioned Person");

        (ii)    Claimant will not directly or indirectly lend, contribute, provide or otherwise make available all or any part of any funds or assets subject to this Settlement Agreement to fund or facilitate any activity or business of, with, in, or relating to a Sanctioned Person or Sanctioned Territory, or in any other manner that would result in a violation of Sanctions;

        (iii)    Claimant represents and covenants that no funds or assets used in

4

connection with the transactions contemplated under this Settlement Agreement (i) constitute the property of, or are beneficially owned, directly or indirectly, by any Sanctioned Person; (ii) are derived from any transactions or business with any Sanctioned Person or Sanctioned Territory; (iii) are derived from any illegal activity, including any activity in violation of applicable anti-money laundering laws; or (iv) would otherwise result in a violation of Sanctions by, or a restriction on the use of such funds or assets with respect to, any person participating in the transactions contemplated hereby.

(b)     Mutual Representations and Warranties of All Parties.  Each Party represents and warrants to each other Party that as of the date of execution of this Settlement Agreement:

(i)     subject to the Approval Order, it has the requisite organizational power and authority to enter into this Settlement Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Settlement Agreement;

(ii)     this Settlement Agreement constitutes a legal, valid, and binding obligation of such Party, enforceable against such Party in accordance with its terms; provided that the Parties' obligations shall become binding only upon entry of the Approval Order;

(iii)     the execution and delivery of this Settlement Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate or other organizational action on its part;

(iv)     the execution and delivery of this Settlement Agreement and the performance of its obligations hereunder do not violate any provision of law, rule or regulation applicable to it or any of its affiliates or its certificate of incorporation, bylaws or other organizational documents or those of any of its affiliates; and

(v)     before executing this Settlement Agreement, it has been fully informed of its terms, contents, conditions and effects, it has had a full and complete opportunity to discuss this settlement with its attorney or attorneys, it is not relying in any respect on any statement or representation made by any other Party and no promise or representation of any kind has been made to such Party separate and apart from what is expressly contained in this Settlement Agreement.

## 4.     MISCELLANEOUS PROVISIONS

(a)     No Admission of Liability.  The undersigned Parties each acknowledge and agree that the matters set forth in this Settlement Agreement constitute the settlement and compromise of potentially disputed claims and defenses, that this Settlement Agreement is not an admission or evidence of liability or infirmity by any of them regarding any claim or defense, and that the Settlement Agreement shall not be offered or received in evidence by or against any Party except to enforce its terms.

(b)     Specific Performance.  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Settlement Agreement by any

Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach of this Settlement Agreement, including an order of the Bankruptcy Court or another court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder. Each Party also agrees that it will not (i) seek, and will waive any requirement for, the securing or posting of a bond in connection with any Party seeking or obtaining such relief or (ii) raise as a defense thereto the necessity of proving the inadequacy of money damages as a remedy.

(c)      Damages. Notwithstanding anything to the contrary in this Settlement Agreement, none of the Parties or any of their respective successors or assigns shall make a claim against, or seek to recover from, any other Party or the successors, assigns, affiliates, directors, officers, employees, counsel, representatives, agents, or attorneys-in-fact of any of them for any special, indirect, consequential, exemplary, or punitive damages or damages for lost profits in respect of any claim for breach of contract or any other theory of liability arising out of or related to this Settlement Agreement.

(d)      Further Assurances. The Parties shall use their reasonable best efforts to take, or cause to be taken, all appropriate action to do or cause to be done all things necessary under applicable law, and to execute and deliver such documents and other papers, in each case, as may be required to carry out the provisions of this Settlement Agreement and consummate and make effective the transactions contemplated hereby.

(e)      Execution in Counterparts. This Settlement Agreement may be executed in counterparts by one or more of the Parties and all such counterparts when so executed shall together constitute the final Settlement Agreement, as if one document had been signed by all Parties; and each such counterpart, upon execution and delivery, shall be deemed a complete original, binding the Parties subscribed thereto upon the execution by all Parties to this Settlement Agreement. Delivery of this signed agreement by facsimile transmission or by .pdf, .jpeg, .TIFF or other form of electronic mail attachment will be deemed effective as delivery of a manually executed counterpart prior to and in the absence of manual delivery and will be binding upon the parties.

(f)      Governing Law. This Settlement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York).

(g)      Consent to Jurisdiction. This Settlement Agreement shall be deemed to be made in New York. Each Party irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the Bankruptcy Court for any action, suit or proceeding arising out of or based upon this Settlement Agreement or any matter relating to it, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it. To the extent that the Bankruptcy Court abstains from exercising, or determines that it lacks, jurisdiction over any such action, suit or proceeding, the Parties irrevocably submit to the jurisdiction of the federal and state courts of competent jurisdiction located in the Borough of Manhattan in the State of New York for the purposes of this Settlement Agreement and waive any objections as to venue or inconvenient forum. Each

Party waives any right to a trial by jury in any lawsuit, action or proceeding directly or indirectly based upon, arising out of or relating to this Settlement Agreement or any amendment, instrument, document or agreement delivered or to be delivered in connection with this Settlement Agreement and agrees that any lawsuit, action or proceeding will be tried before a court and not before a jury.

(h) <u>Notices</u>. Any notices required hereunder shall be sent by registered mail, first class, return receipt requested, and by email, to the following:

    (i)    If to GGC:

Andrew Sullivan
Genesis Global Holdco, LLC
175 Greenwich St., 38th Fl.
New York, NY 10007
asullivan@genesistrading.com

with copies to:

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225 2416
(212) 225 2929
(212) 225 2872
soneal@cgsh.com
lbarefoot@cgsh.com
jvanlare@cgsh.com
tkessler@cgsh.com

    (ii)    If to Claimant:

███████████
c/o Oxana Kozlov, Esq.
649 Dunholme Way
Sunnyvale, CA 94087
okozlov@gmail.com

and

Oxana Kozlov, Esq.
649 Dunholme Way
Sunnyvale, CA 94087

7

okozlov@gmail.com

and

Edward H. Tillinghast, III
Sheppard Mullin
30 Rockefeller Plaza
New York, NY 10112-0015
(212) 653 8700
etillinghast@sheppardmullin.com

(i)     Entire Agreement and Amendments.  This Settlement Agreement constitutes the entire agreement and understanding between and among the Parties concerning the matters set forth herein and supersedes any prior agreements or understandings.  This Settlement Agreement may not be amended or modified, nor may any of its provisions be waived, except in writing signed by the Parties bound thereby, or by their respective authorized attorney(s), or other representative(s).

(j)     Assignment.  Neither this Settlement Agreement nor any of the rights and obligations of the Parties hereunder may be assigned by either Party without the prior written consent of the other Party, which consent will not be unreasonably withheld, except that each Party shall have the right to assign any or all of its rights and delegate any or all of its obligations hereunder to any of its affiliates or any successor in interest (whether by merger, acquisition, asset purchase, or otherwise), provided, that no assignment to any affiliate or successor in interest shall relieve or discharge the assigning party from any of its obligations hereunder.  Any assignment in violation of this section shall be void and of no force or effect.

(k)     Indemnification.  In the event of the breach of this Settlement Agreement, the breaching Party will indemnify, defend, and hold harmless the non-breaching Party and any of its affiliates, officers, directors, employees, agents, and subsidiaries from and against any dispute, claim, cause of action, liability, damage, cost, or expense (including, without limitation, reasonable attorneys' fees and court costs) arising out of or in connection with such breach.

(l)     Bankruptcy Court Approval.  This Settlement Agreement is binding upon the Parties upon signing, subject to the entry of the Approval Order and such Approval Order being a final order and not subject to any appeal, stay, re-argument or petition for certiorari.

(m)    Settlement Effective Date.  The "Settlement Effective Date" shall occur on the date that is the later of the (i) signature pages executed by each of the Parties have been delivered to each of the other Parties, and (ii) the Bankruptcy Court has entered the Approval Order, which is final and not subject to any appeal, re-argument, stay or petition for certiorari.

*[The remainder of this page is intentionally left blank.]*

**IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

**GENESIS GLOBAL CAPITAL, LLC**

Date: June 3, 2024

BY: _/s/_

TITLE: General Counsel

PRINT NAME: Andrew Sullivan

**GENESIS GLOBAL HOLDCO, LLC**

Date: June 3, 2024

BY: _/s/_

TITLE: General Counsel

PRINT NAME: Andrew Sullivan

**GENESIS ASIA PACIFIC PTE. LTD.**

Date: June 3, 2024

BY: _/s/_

TITLE: Authorized Signatory

PRINT NAME: Andrew Sullivan

**GGC INTERNATIONAL LIMITED**

Date: June 3, 2024

BY: _/s/_

TITLE: Director

PRINT NAME: Andrew Sullivan

**GENESIS BERMUDA HOLDCO LIMITED**

Date: June 3, 2024

BY: _/s/_

TITLE: Corporate Secretary

9

PRINT NAME: Andrew Sullivan

**GENESIS GLOBAL MARKETS LIMITED**

Date: June 3, 2024

BY: _/s/_

TITLE: Corporate Secretary

PRINT NAME: Andrew Sullivan

**GENESIS UK HOLDCO LIMITED**

Date: June 3, 2024

BY: _/s/_

TITLE: Director

PRINT NAME: Andrew Sullivan

**GENESIS CUSTODY LIMITED**

Date: June 3, 2024

BY: _/s/_

TITLE: Director

PRINT NAME: Andrew Sullivan

**GENESIS GLOBAL ASSETS, LLC**

Date: June 3, 2024

BY: _/s/_

TITLE: Manager

PRINT NAME: Andrew Sullivan

**GGA INTERNATIONAL LIMITED**

Date: June __, 2024

BY: _/s/_

TITLE: Authorized Signatory

10

PRINT NAME: Andrew Sullivan

**GENESIS GLOBAL LABS, LLC**

Date: June 3, 2024

BY: _/s/_

TITLE: Manager

PRINT NAME: Andrew Sullivan

**GENESIS GLOBAL TRADING, INC.**

Date: June 3, 2024

BY: _/s/_

TITLE: General Counsel

PRINT NAME: Andrew Sullivan

**GENESIS ASIA (HONG KONG) LIMITED**

Date: June 3, 2024

BY: _/s/_

TITLE: Director

PRINT NAME: Diana Kim

11

Date: June___, 2024



**IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

**GENESIS GLOBAL CAPITAL, LLC**

Date: June 3, 2024

BY: _/s/ Andrew Sullivan_

TITLE: General Counsel

PRINT NAME: Andrew Sullivan

**GENESIS GLOBAL HOLDCO, LLC**

Date: June 3, 2024

BY: _/s/ Andrew Sullivan_

TITLE: General Counsel

PRINT NAME: Andrew Sullivan

**GENESIS ASIA PACIFIC PTE. LTD.**

Date: June 3, 2024

BY: _/s/ Andrew Sullivan_

TITLE: Authorized Signatory

PRINT NAME: Andrew Sullivan

**GGC INTERNATIONAL LIMITED**

Date: June 3, 2024

BY: _/s/ Andrew Sullivan_

TITLE: Director

PRINT NAME: Andrew Sullivan

**GENESIS BERMUDA HOLDCO LIMITED**

Date: June 3, 2024

BY: _/s/ Andrew Sullivan_

TITLE: Corporate Secretary

PRINT NAME: Andrew Sullivan

**GENESIS GLOBAL MARKETS LIMITED**

Date: June 3, 2024

BY: */s/ Andrew Sullivan*

TITLE: Corporate Secretary

PRINT NAME: Andrew Sullivan

**GENESIS UK HOLDCO LIMITED**

Date: June 3, 2024

BY: */s/ Andrew Sullivan*

TITLE: Director

PRINT NAME: Andrew Sullivan

**GENESIS CUSTODY LIMITED**

Date: June 3, 2024

BY: */s/ Andrew Sullivan*

TITLE: Director

PRINT NAME: Andrew Sullivan

**GENESIS GLOBAL ASSETS, LLC**

Date: June 3, 2024

BY: */s/ Andrew Sullivan*

TITLE: Manager

PRINT NAME: Andrew Sullivan

**GGA INTERNATIONAL LIMITED**

Date: June __, 2024

BY: */s/ Andrew Sullivan*

TITLE: Authorized Signatory

PRINT NAME: Andrew Sullivan

**GENESIS GLOBAL LABS, LLC**

Date: June 3, 2024               BY: */s/ Andrew Sullivan*

TITLE: Manager

PRINT NAME: Andrew Sullivan

**GENESIS GLOBAL TRADING, INC.**

Date: June 3, 2024               BY: */s/ Andrew Sullivan*

TITLE: General Counsel

PRINT NAME: Andrew Sullivan

**GENESIS ASIA (HONG KONG) LIMITED**

Date: June 3, 2024               BY: */s/ Diana Kim*

TITLE: Director

PRINT NAME: Diana Kim

## **EXHIBIT C**

**Sullivan Declaration**

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.:  23-10063 (SHL) |
| Debtors. | Jointly Administered |

**DECLARATION OF ANDREW SULLIVAN**
**IN SUPPORT OF THE DEBTORS' MOTION**
**FOR ENTRY OF AN ORDER (I) APPROVING A SETTLEMENT**
**AGREEMENT WITH A CLAIMANT AND (II) GRANTING RELATED RELIEF**

I, Andrew Sullivan, hereby declare under penalty of perjury, pursuant to section

1746 of title 28 of the United States Code, as follows:

1.     I submit this declaration (the "Sullivan Declaration") in support of the *Debtors'*

*Motion for Entry of an Order (I) Approving Settlement Agreement with a Claimant and (II)*

*Granting Related Relief* (the "Motion").[2]

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number as applicable, are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

[2]     All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

A. **Background**

2.     I am the General Counsel for Genesis Global Holdco, LLC ("Holdco," and together with Genesis Global Capital, LLC ("GGC") and Genesis Asia Pacific PTE. Ltd., the "Debtors," and together with the Debtors and Holdco's non-Debtor subsidiaries, the "Company").

3.     I am generally familiar with the day-to-day operations and affairs of the Debtors. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge attained while working with the Debtors; my discussions with member of the Special Committee; discussions with other members of the Debtors' team and the Debtors' other advisors; my review of relevant documents; and my views based upon my professional experience.

4.     To the extent that the Debtors learn that any information provided herein is materially inaccurate, the Debtors will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my knowledge, information and belief.  I am authorized to submit this Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

B. **The Settlement Process**

5.     Settlement negotiations and mediation were primarily handled on behalf of the Debtors by the Debtors' counsel Cleary Gottlieb Steen & Hamilton LLP, who regularly consulted with Company's senior management and with the Special Committee of the Board of Directors of Genesis Global Holdco, LLC (the "Special Committee") and kept us updated about the process and progress of negotiations.

C. **The Settlement Agreement**

6.     The terms of the Settlement Agreement provide significant and near-term benefits to the Debtors and their creditors, in contrast to the uncertainty and expense of fulsome litigation of Claim No. 223.

2

7.      If approved, the Settlement Agreement would resolve disputes among the Parties about Claim No. 223, permitting the Debtors and their advisors to focus resources and attention on implementing the Plan and making distributions to creditors pursuant to the Plan, rather than depleting estate assets with further litigation expenses.

8.      The Settlement Payment will add immediate value to the Debtors' estate and therefore increase distributable assets to creditors.  The Settlement Agreement will also allow for the release of the Disputed Claim Reserve Amount, which amount would become available for distributions to the Debtors' creditors.  The Settlement Payment will therefore benefit all holders of general unsecured claims by narrowing the total amount of General Unsecured Claims and adding immediate distributable assets to the estate serving to maximize recoveries available to creditors.

9.      The Debtors anticipate full litigation of Claim No. 223 would be both protracted and expensive.  Litigation of Claim No. 223 would involve complex issues of first impression resulting from the nature of the digital assets at issue.  In prosecuting Claim No. 223, the Parties would face fact discovery, potential expert discovery, briefing, and a full trial on the merits scheduled on or after October 2024 before a final decision could be entered.  The Debtors anticipate that the likely costs associated with such discovery and litigation would constitute a significant drain on the estate of the Debtors.

10.     Even if the Debtors were to receive a favorable decision on the Claim Objection, the Debtors could face additional costs and delays in enforcing such decision against the Claimant. Thus, the cost and complexity of litigating Claim No. 223 supports the reasonable nature of the Settlement Agreement.

11.     The Settlement Agreement is the product of significant efforts by both the Debtors

and the Claimant and is the product of extensive arm's-length negotiations between the Debtors

and the Claimant.   The Parties are represented by sophisticated and experienced professionals.

The Parties have been engaged in discussions related to Claim No. 223 for several months in

anticipation of litigation related to Claim No. 223.

12.     I also believe that the Debtors' professionals fully understand the complexity of the

disputes underlying Claim No. 223, as they have been analyzing, discussing and preparing for

litigation on these issues for several months already.   The Debtors' professionals fully understand

the potential consequences to the estates' creditors if the Settlement Agreement is not

consummated and have recommended that the Debtors enter into the Settlement Agreement.

13.     In summary, the Settlement Agreement is the product of lengthy, arm's-length

negotiations between the Parties.   The Debtors have concluded that the Settlement Agreement is

fair and equitable, reasonable, and in the best interests of the Debtors' estates.


Dated:  June 4, 2024
        New York, New York

                                        _/s/ Andrew Sullivan_____
                                        Andrew Sullivan
                                        Genesis Global Holdco, LLC