# EXHIBIT A

**PRYOR CASHMAN LLP**
Seth H. Lieberman
Matthew W. Silverman
Daniel I. Brenner
7 Times Square
New York, New York 10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
slieberman@pryorcashman.com
msilverman@pryorcashman.com
dbrenner@pryorcashman.com

*Attorneys to the Ad Hoc Group of Dollar Lenders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-10063 (SHL)<br><br>Jointly Administered |

**DECLARATION OF SETH H. LIEBERMAN, ESQ. IN SUPPORT OF THE APPLICATION OF THE AD HOC GROUP OF DOLLAR LENDERS FOR ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4), FOR ALLOWANCE AND REIMBURSEMENT OF REASONABLE PROFESSIONAL FEES AND ACTUAL, NECESSARY EXPENSES IN MAKING A SUBSTANTIAL CONTRIBUTION TO THESE CASES**

I, Seth H. Lieberman, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1. I am a partner at the law firm Pryor Cashman LLP ("Pryor Cashman").

2. I submit this declaration (the "Declaration") in support of the application (the "Application") of the Ad Hoc Group of Dollar Lenders (the "Dollar Ad Hoc Group") for allowance and reimbursement of reasonable professional fees and actual, necessary expenses in making a

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (9564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 250 Park Avenue South, 5th Floor, New York, NY 10003.

substantial contribution to these cases.[2]

3. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge attained while working with the Dollar Ad Hoc Group, my review of relevant documents, and my views based upon my experience.

4. I believe all information herein to be true to the best of my knowledge, information, and belief. I am authorized to submit this Declaration on behalf of the Dollar Ad Hoc Group and, if called upon to testify, I could and would testify competently to the facts set forth herein.

5. Pryor Cashman was retained by the Dollar Ad Hoc Group in connection with these cases in or around July 2023.

6. At the time Pryor Cashman was engaged, the Debtors had remained in bankruptcy without material progress on the formulation of a plan of reorganization for six months.

7. The goal of the Dollar Ad Hoc Group was not to antagonize the case parties that had been involved in plan negotiations up to that point, but rather to provide a competent base of creditors with dollar-denominated claims with which the Debtors and the Committee could work to drive consensus across the Debtors' creditor body. In so doing, the Dollar Ad Hoc Group, through its counsel at Pryor Cashman, hoped to expedite the plan process and facilitate a consensual restructuring.

8. To achieve this objective, over the next several months Pryor Cashman collaborated with professionals representing the Debtors and the Committee. During numerous meet and confers, Pryor Cashman exchanged ideas and provided feedback on behalf of the Dollar Ad Hoc Group on several distribution and plan proposals with the goal of arriving at a plan and distribution mechanic that would garner sufficient support among the Debtors' creditors to achieve

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Application.

2

confirmation and a swift exit from bankruptcy.

9. It is my understanding that in or around November 2023, the Debtors' negotiations with various case parties, including the Dollar Ad Hoc Group, resulted in the Plan, which incorporated the Distribution Principles, that was ultimately confirmed by the Court on May 31, 2024.

10. The Plan provides for, among other things, the payment of the Dollar Ad Hoc Group's fees and expenses up to $300,000 as an allowed administrative expense claim.

11. It is my understanding that in its objection to confirmation of the Plan, the U.S. Trustee objected to, among other things, the payment of the Dollar Ad Hoc Group's fees and expenses, asserting that such payment is permissible only if the Dollar Ad Hoc Group are found to have made a substantial contribution under section 503(b) of the Bankruptcy Code.

12. To resolve what it understood to be the U.S. Trustee's opposition to the Plan's fee reimbursement provisions, consistent with the agreement reached among the parties and the Court at the confirmation hearing, on April 18, 2024, Pryor Cashman provided counsel for the U.S. Trustee invoices for fees and expenses incurred by Pryor Cashman in connection with its representation of the Dollar Ad Hoc Group through March 31, 2024. A copy of Pryor Cashman's email correspondence to counsel for the U.S. Trustee, which correspondence included those invoices, is attached hereto as **Exhibit 1**.

13. In response, counsel for the U.S. Trustee acknowledged that the Plan's fee payment provisions capped the reimbursement of Pryor Cashman's fees and expenses at $300,000, but that the fees and expenses actually incurred by Pryor Cashman through March 31, 2024 were approximately $425,000. Counsel for the U.S. Trustee conceded that, in his experience, it would be unlikely to find more than $125,000 in objectionable fees. A copy of counsel for the U.S. Trustee's email correspondence to Pryor Cashman is attached hereto as **Exhibit 2**.

14. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: New York, New York
       June 7, 2024

                                    */s/ Seth H. Lieberman*
                                    Seth H. Lieberman, Esq.

# EXHIBIT 1

# Silverman, Matthew W.

| | |
|---|---|
| **From:** | Silverman, Matthew W. |
| **Sent:** | Thursday, April 18, 2024 3:19 PM |
| **To:** | Greg M. Zipes (greg.zipes@usdoj.gov) |
| **Cc:** | Lieberman, Seth H.; Brenner, Daniel |
| **Subject:** | In re Genesis Global Holdco, LLC, et al., Case No. 23-10063 - Dollar Ad Hoc Group Redacted Invoices |
| **Attachments:** | Genesis - Dollar Ad Hoc Group - Redacted Invoices.rar |

Mr. Zipes:

As you know, we are counsel to the Ad Hoc Group of Dollar Lenders (the "Dollar Ad Hoc Group") in connection with the bankruptcy cases of Genesis Global Holdco, LLC and its affiliated debtors.

Pursuant to your request, as communicated to us by Debtors' counsel, attached please find invoices for fees and expenses incurred by my firm in connection with our representation of the Dollar Ad Hoc Group through March 31, 2024. You'll note that the invoices have been redacted to protect privilege.

Please let me know if you have any questions.

Thank you,
Matt

───────────────────────────────────────

**MATTHEW W. SILVERMAN**
**PRYOR CASHMAN LLP**
7 Times Square, New York, NY 10036-6569
msilverman@pryorcashman.com

Direct Tel: 212-326-0824

www.pryorcashman.com
*A member of Interlaw, an International Association of Independent Law Firms*

# EXHIBIT 2

**Silverman, Matthew W.**

| | |
|---|---|
| **From:** | Zipes, Greg (USTP) <Greg.Zipes@usdoj.gov> |
| **Sent:** | Thursday, April 18, 2024 4:46 PM |
| **To:** | Weinberg, Michael; O'Neal, Sean A. |
| **Cc:** | brosen@proskauer.com; Lieberman, Seth H.; Brenner, Daniel; Silverman, Matthew W. |
| **Subject:** | RE: questions about PSA and Dollar Group professional fees |

I am willing to have a conference with the Court. I am traveling on Monday and Tuesday but can be available on Wednesday in the afternoon.

However, you should know that we have again discussed the Court's comments internally in my office.

As to the fees of the ad hoc groups, we'd like a ruling from the Court on our objection, including whether Section 503 applies at all (as we believe) and whether a generalized statement on the record that the ad hoc committees "substantially contributed" to grant fees is sufficient to grant all fees (we believe it does not).

**I understand that you will be asserting that Section 503 is not the appropriate standard for the review of fees. Some minimal application that meets Section 503 standards (regardless of whether you believe Section 503 applies) could largely avoid this fight, but I do understand that is a bridge you do not wish to cross and I respect it.**

That said, I do want to review fees if at all possible and provide you with any comments. To that end, I am still uncertain whether Brian has provided me with all time records, or provided me with statements that have already been culled to eliminate certain time entries that would not fall under Section 503. I'd ask that Brian answer that question. As to the Dollar Group, these fees are capped at $300,000. I do have to review those fees as well, but that group's total request is approximately $425,000. Effectively, I'd have to find more than $125,000 in objectionable fees, something that is unlikely based on my experience.

Knowing that overall fee number of the ad hoc group is helpful to me, and I have been asking for it.

I attach the relevant portion of the transcript of the hearing on February 27, 2024. I believe Mr. Aronzon's testimony is the only testimony at the confirmation hearing supplementing the settlement request:

```
Page 72
. . .
13 Q. Are you charged with reviewing fees in a case
14 (crosstalk)
15 A. Fees -- I am -- I don't know what you mean by
16 reviewing. But I am certainly concerned about
17 fees and expenses, and costs of the business.
18 And so to that extent, I'm sure we will have an
19 opportunity to look at the applications and the
20 like.
21 Q. Are you aware that the debtor is supporting
22 the Ad Hoc's -- one of the Ad Hoc group's
23 professional fees in this case?
24 A. I am. I'm aware of a handful of fees and
25 expenses that were part and parcel of the
Page 73
```

1

1 settlement that we are supporting, yes.
2 Q. And did you review any of those fees of the
3 Ad Hoc group?
4 A. I only -- Of the Ad Hoc group, I just
5 reviewed sort of the all-in number, because I'm
6 quite familiar, after having thousands of hours
7 of meetings with them, or our professionals
8 having those meetings, that they were very, very
9 (indiscernible)
10 Q. And I don't want to put you on the spot as a
11 (indiscernible) but you're generally familiar
12 with the term substantial contribution?
13 A. I am.
14 Q. And you're aware that that is not coextensive
15 with all the fees in a case. Correct?
16 A. I'm sorry, that it's not what?
17 Q. If a party is asking for a substantial
18 contribution, and they're proving legal fees in
19 that regard, or professional fees, that's not
20 necessarily all the fees, that's a specific
21 subsection of fees. Is that your understanding
22 or substantial contribution?
23 A. Yes. Other people do seek substantial
24 contribution for things other than attorney's
25 fees, yes.
Page 74
1 Q. And you're aware that the Ad Hoc group might
2 be performing certain (indiscernible)
3 professional might be serving, and I'm just
4 talking generally right now, might be providing
5 services to the Ad Hoc group individuals, not
6 necessarily contributing to the estate. Is that
7 your understanding of substantial contribution?
8 A. I'm not aware that they provided individual
9 services to members of their group. They could
10 have, but I'm not aware of it.
11 Q. Okay. But you didn't review all the
12 individual fees, did you?
13 A. No.

Happy holidays to all.

Greg Zipes