UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK          NOT FOR PUBLICATION
------------------------------------------------------------x
In re:                                                   Chapter 11

GENESIS GLOBAL HOLDCO, LLC, *et al.*,    Case No. 23-10063 (SHL)

                Wind-Down Debtors.          (Jointly Administered)
------------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S:**

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
*Counsel for the Wind-Down Debtors*
One Liberty Plaza
New York, New York 10006
By:    Sean A. O'Neal, Esq.
        Luke A. Barefoot, Esq.
        Jane VanLare, Esq.
        Thomas S. Kessler, Esq.

**ARNOLD & PORTER KAYE SCHOLER LLP**
*Counsel for Soichiro "Michael" Moro*
250 West 55th Street
New York, New York 10019
By:    Benjamin Mintz, Esq.
        Marcus Asner, Esq.
        Justin Imperato, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is the application of Soichiro "Michael" Moro for allowance of an administrative expense claim under Bankruptcy Code Sections 503(b)(3)(D) and 503(b)(4) for what he characterizes as a substantial contribution to the cases of the above-captioned debtors (collectively, the "Debtors" or the "Wind-Down Debtors"). *See Application of Soichiro "Michael" Moro for Allowance of an Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Counsel's Services Incurred in Making a Substantial

*Contribution to These Chapter 11 Cases* [ECF No. 1932]¹ (the "Application").² The Debtors filed an objection to the Application. *See Wind-Down Debtors' Objection to the Application of Soichiro "Michael" Moro for Allowance of an Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Counsel's Services Incurred in Making a Substantial Contribution to These Chapter 11 Cases* [ECF No. 2055] (the "Objection"). Mr. Moro filed a response to the Objection, to which the Debtors replied. *See Response in Opposition to Wind-Down Debtors' Objection to the Application of Soichiro "Michael" Moro for Allowance of an Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Counsel's Services Incurred in Making a Substantial Contribution to These Chapter 11 Cases* [ECF No. 2073] (the "Response"); *see also Reply in Support of Wind-Down Debtors' Objection to the Application of Soichiro "Michael" Moro for Allowance of an Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Counsel's Services Incurred in Making a Substantial Contribution to These Chapter 11 Cases* [ECF No. 2080] (the "Reply"). The Court held a hearing on the Application on December 10, 2024 (the "Hearing") and took the matter under advisement. *See* Hr'g Tr. 20:11–22:12 (Dec. 10, 2024) [ECF No. 2085]. For the reasons explained below, the Court finds that Mr. Moro has not met his burden for allowance of an administrative claim.

## BACKGROUND

In January 2023, the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. In late November 2023, the Debtors filed their amended plan [ECF No.

---

¹ Unless otherwise indicated, references in this Memorandum of Decision to docket entries on the Case Management/Electronic Case Files ("ECF") system are to Case No. 23-10063.

² Terms not otherwise defined herein shall have the meanings given to them in the Application.

2

989] (the "Plan"), which the Court confirmed at the end of May 2024.  *See Findings of Fact, Conclusions of Law, and Order (I) Confirming the Debtors' Amended Joint Chapter 11 Plan and (II) Granting Related Relief* [ECF No. 1736].  In early August 2024, the Debtors filed the *Notice of (I) Occurrence of Effective Date for the Debtors' Amended Joint Chapter 11 Plan and (II) Final Deadlines for Filing Certain Claims* [ECF No. 1907], which notified parties in interest that the Plan's effective date had occurred and that requests for administrative expense claims were due by September 1, 2024.  Mr. Moro filed his Application by this deadline.

The basis for Mr. Moro's request is the filing in March 2023 of his *Motion for Entry of an Order Modifying the Automatic Stay, to the Extent Applicable, to Allow for Advancement and Payments Under D&O Insurance Policy* [ECF No. 165] (the "Lift Stay Motion").  Mr. Moro previously served as the chief executive officer of Debtor Genesis Global Capital, LLC and chief executive officer and chief operating officer of non-Debtor Genesis Global Trading, Inc.  *See* Lift Stay Motion ¶ 10; *see also* Application ¶ 6.  In connection with his former roles, Mr. Moro incurred hundreds of thousands of dollars in defense costs relating to pending lawsuits, investigations, and disputes, and expected to incur additional defenses costs for similar matters in the future.  *See* Lift Stay Motion ¶¶ 11, 15; *see also* Application ¶¶ 8–9.  As a result, Mr. Moro sought an order modifying the stay, to the extent applicable, to allow him to enforce his rights and demand (and receive) proceeds payable under a D&O Policy for defense costs.  *See* Lift Stay Motion at 1–2, ¶ 20.  The Debtors did not oppose the relief sought, but requested it be expanded to include all Insured Individuals and Insurance Policies.  *See Debtors' Response to Motion for Entry of an Order Modifying the Automatic Stay, to the Extent Applicable, to Allow for Advancements and Payments Under D&O Policy* ¶¶ 4–5 [ECF No. 234]; Hr'g Tr. 40:10–41:13

3

(Apr. 26, 2023) [ECF No. 288].[3] Mr. Moro did not object to the expansion. *See Reply in Support of the Motion for Entry of an Order Modifying the Automatic Stay, to the Extent Applicable, to Allow for Advancements and Payments Under D&O Policy* ¶ 1 [ECF No. 249]; Hr'g Tr. 12:18–13:7, 43:23–44:11 (Apr. 26, 2023) [ECF No. 288]. The Lift Stay Order was entered on May 9, 2023, permitting all Insured Individuals to enforce their rights and demand and receive proceeds from Insurers under all Insurance Policies. *See Order Motion for Entry of an Order Modifying the Automatic Stay, to the Extent Applicable, to Allow for Advancements and Payments Under D&O Policies* [ECF No. 300].

Mr. Moro now argues that because the Debtors did not consent to the relief sought in the Lift Stay Motion prior to its filing, he was forced to file and prosecute the motion. *See* Application ¶ 2. Mr. Moro seeks payment of $119,826.11 incurred by his counsel for prosecuting the Lift Stay Motion, claiming that this was a "substantial contribution" in these cases that resulted in significant benefits. *See id.* ¶¶ 4–5. The Debtors oppose the Application by arguing, among other things, that Mr. Moro was acting in his own self-interest and that, in any event, the relief only benefitted a small subset of creditors. *See* Objection at 2–3, ¶¶ 30–40.

**DISCUSSION**

I. **Legal Standard**

"Sections 503(b)(3)(D) and (b)(4) of the Bankruptcy Code permit, in certain limited circumstances, the payment of fees for professional services rendered by an attorney or an accountant to entities that have made a 'substantial contribution to a [bankruptcy] case.'" *In re*

---

[3] The Official Committee of Unsecured Creditors filed an objection to the Lift Stay Motion. *See Objection of the Official Committee of Unsecured Creditors to the Motion for Entry of an Order Modifying the Automatic Stay, to the Extent Applicable, to Allow for Advancements and Payments Under D&O Policy* [ECF No. 235].

4

*Celsius Network LLC*, 2024 WL 4763002, at *2 (Bankr. S.D.N.Y. Nov. 12, 2024) (citing *In re Lehman Bros. Holdings Inc.*, 508 B.R. 283, 294 (S.D.N.Y. 2014)).

Taken together, Sections 503(b)(3)(D) and 503(b)(4) provide that a creditor may recover from a debtor's estate (1) actual necessary expenses and (2) reasonable attorneys' fees and expenses incurred in making a substantial contribution to the debtor's estate. *See In re Granite Partners*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997); *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989); *see also Trade Creditor Grp. v. L.J. Hooker Corp., Inc. (In re Hooker Invs., Inc.)*, 188 B.R. 117, 120 (S.D.N.Y. 1995) ("Section 503(b) provides that a creditor who has made 'a substantial contribution' to a bankruptcy case shall receive an administrative expense amount equal to its reasonable fees and necessary expenses and, if applicable, its counsel's reasonable fees and expenses."), *aff'd*, 104 F.3d 349 (2d Cir. 1996); *In re Dana Corp.*, 390 B.R. 100, 107 (Bankr. S.D.N.Y 2008) ("Section 503(b) of the Bankruptcy Code authorizes the bankruptcy court to award compensation to creditors for their legal and other expenses incurred in making a substantial contribution in the case."). Section 503(b) provides, in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including . . .
>
> > (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . .
> >
> > > (D) a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title; . . .
> >
> > (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. §§ 503(b)(3)(D), (b)(4).

5

In assessing whether there has been a substantial contribution, courts consider (i) whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case, (ii) whether the services conferred a direct, significant, and demonstrably positive benefit upon the estate, and (iii) whether the services were duplicative of services performed by others. *See In re Dana Corp.*, 390 B.R. at 108; *see also In re Hooker Invs., Inc.*, 188 B.R. at 120. Courts may also consider whether the applicant's non-compensable activities increased the administrative costs to the estate. *See In re Dana Corp.*, 390 B.R. at 108; *In re Granite Partners*, 213 B.R. at 446.

But the test for assessing such an application is a strict one. The benefit received by the estate must be more than an incidental one arising from activities that the applicant has pursued in protecting its own interests. *See In re Dana Corp.*, 390 B.R. at 108. Efforts undertaken by creditors solely to further their own self-interest are not compensable under Section 503(b), and services calculated primarily to benefit the client do not justify an award even if they also confer an indirect benefit on the estate. *See id.*; *see also In re Granite Partners*, 213 B.R. at 446. Compensation is strictly limited to extraordinary creditor actions which lead to directly tangible benefits to the creditors, debtor, or estate and is reserved for those rare and extraordinary circumstances where the creditor's involvement truly enhances the administration of the estate. *See In re Dana Corp.*, 390 B.R. at 108. "On the whole, a successful showing of substantial contribution is difficult to attain, and any benefit received by an estate must be 'more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests.'" *In re Celsius Network LLC*, 2024 WL 4763002, at *3 (citations omitted). Additionally, services should not deplete estate assets without providing a corresponding greater benefit. *See In re Best Prod. Co., Inc.*, 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994); *In re U.S.

6

*Lines, Inc.*, 103 B.R. at 429; *In re Granite Partners*, 213 B.R. at 446 ("[I]nsubstantial services include those that do not actually increase the size of the estate . . . or deplete the assets of the estate without providing any corresponding greater benefit."). "Creditors face an especially difficult burden in passing the 'substantial contribution' test since they are presumed to act primarily in their own interests." *In re Best Prod. Co., Inc.*, 173 B.R. at 866 (citing *In re U.S. Lines, Inc.*, 103 B.R. at 430). As a result, "the general rule remains that attorneys must look to their own clients for payment." *Id.*

Whether a creditor's conduct has made a substantial contribution is a question of fact. *See In re Hooker Invs., Inc.,* 188 B.R. at 120. The burden of proof is on the applicant to demonstrate, by a preponderance of the evidence, that it has made a substantial contribution in the case. *See In re Dana Corp.*, 390 B.R. at 108. Mere conclusory statements regarding one's involvement in an act resulting in a "substantial contribution" are insufficient. *See In re U.S. Lines, Inc.*, 103 B.R at 430. "Corroborating testimony by a disinterested party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding compensation to activities which otherwise might not constitute a 'substantial contribution.' [] Absent, or in addition to, such corroborating testimony, a court's own first-hand observance of the services provided may be a sufficient basis on which to find a 'substantial contribution.'" *Id.*; *see also In re Granite Partners*, 213 B.R. at 447.

II. **Analysis of Substantial Contribution Here**

Applying these principles here, the Court will deny the Application because the movant has not satisfied the heavy burden for granting an administrative claim for several reasons.

First, the Court finds that Mr. Moro's efforts were motivated by self-interest because the Lift Stay Motion was filed to benefit him personally. *See* Lift Stay Motion at 1–2, ¶ 20 (seeking

order modifying stay to allow Mr. Moro to pursue reimbursement of defense costs from D&O Policy). Mr. Moro's actions were purely self-interested, as the Lift Stay Motion sought relief for himself, and him alone. *See In re Bayou Group, LLC*, 431 B.R. 549, 561 (Bankr. S.D.N.Y. 2010) ("Third parties, who generally represent only their clients' interests and only indirectly contribute to the case's administration, therefore normally would not be compensated by the estate on an administrative priority basis."); *see also In re Dana Corp.*, 390 B.R. at 108 ("Efforts undertaken by creditors solely to further their own self interest are not compensable under section 503(b).") (citation omitted). Mr. Moro's services did not benefit all creditors, the Debtors' estates, or all parties in interest. Mr. Moro's actions also did not, in any way, contribute to the Debtors' successful reorganization. Mr. Moro did not participate in negotiations of the Plan, facilitate its confirmation, or object to the Plan such that a more favorable result was reached. *See In re U.S. Lines*, 103 B.R. at 430 (services that warrant a substantial contribution award "generally take the form of constructive contributions in key reorganizational aspects, when *but for* the role of the creditor, the movement towards final reorganization would have been substantially diminished") (citing *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 690 (Bankr. S.D. Cal. 1988)) (quotations omitted and emphasis added); *In re Granite Partners*, 213 B.R. at 447 ("The applicant must demonstrate a 'credible connection' between his efforts and the reorganization process."). Nor did Mr. Moro undertake actions typically taken by estate-compensated professionals.

Indeed, Mr. Moro did not independently seek to pursue stay relief on behalf of similarly situated creditors; rather, he sought relief only for himself. It was the Debtors who requested that the stay relief be expanded to cover parties other than Mr. Moro. As such, Mr. Moro's actions represent the self-interested efforts that are not compensable under Section 503(b). *See In re*

8

*Bayou Group, LLC*, 431 B.R. at 561 ("Creditors face an especially difficult burden in passing the 'substantial contribution' test since they are presumed to act primarily for their own interests . . . and services calculated primarily to benefit the client do not justify an award even if they also confer an indirect benefit on the estate.") (citations and quotations omitted); *see also In re D.W.G.K. Restaurants, Inc.*, 84 B.R at 690 ("[R]elief from stay is a classically adversarial action in which debtor and creditor have antagonistic interests. Again, the [claimants], allege no tangible benefit. Clearly, this is a self-interested action by the [claimants], for which compensation is not available"). To award Mr. Moro a substantial contribution administrative expense claim here would allow the exception of substantial contribution relief to swallow the general rule of not compensating parties who are acting in their own self-interest.

Second, the benefit conferred here does not justify a finding of substantial contribution. Mr. Moro argues that his efforts resulted in substantial benefits beyond merely himself, which include (i) that Insured Individuals can seek and receive reimbursement from Insurers, (ii) a corresponding reduction in the claims pool, leaving more funds available for distribution to other creditors, and (iii) a reduction in legal fees incurred by the Debtors' estates by obviating the need for the Debtors to address hypothetical lift stay motions or indemnification claims filed by other Insured Individuals. But the Court disagrees. In fact, the stay relief affected only a small subset of creditors. At the Hearing, Mr. Moro's counsel identified only fifteen current directors and officers who were affected, and an unspecified number of former directors and officers. *See* Hr'g Tr. 11:5–14 (Dec. 10, 2024). Thus, the universe of affected creditors here is finite and extremely narrow, when compared with the entire extensive creditor body. To the extent Mr. Moro argues that $2.5 million to $3 million has been paid by the Insurers, resulting in a corresponding reduction in the claims pool, the Court notes that only two indemnification claims

9

were filed, and one was expunged. *See* Objection ¶ 30. There is also no evidence that similarly situated creditors filed indemnification claims or chose not to file claims because of the Lift Stay Order. *See* Objection ¶ 38.[4] Thus, the record reflects that the effect on the claims pool was minimal and did not confer a direct, significant, and demonstrable benefit to the estate. *See In re Villa Luisa, L.L.C.,* 354 B.R. 345, 348 (Bankr. S.D.N.Y. 2006); *In re Granite Partners, L.P.*, 213 B.R. at 445. Mr. Moro also argues that Insurers have paid between $2.5 million and $3 million to Insured Individuals who would have otherwise been entitled to distributions from the Debtors' estates. But the Court finds that the sums paid under the Insurance Policies are not considerable in amount, value, or worth given the size of these cases and the claims pool and did not contribute to the Debtors' reorganization.

In any event, any benefit conferred on parties other than Mr. Moro by the Lift Stay Motion was a result of Debtors' actions, not Mr. Moro's efforts, as it was the Debtors who pushed for *expanded* stay relief as to *all* Insured Individuals and all Insurance Policies. *See In re Bayou Group, LLC*, 431 B.R at 562 (substantial contribution claims typically allowed only when a party has "played a leadership role that normally would be expected of an estate-compensated professional but was not so performed."). An award of substantial contribution here would create a disincentive for a debtor to take appropriate action in a case if such efforts can be leveraged for the benefit of an individual creditor like Mr. Moro. Additionally, Mr. Moro's actions forced the Debtors to incur additional legal fees and expenses in addressing the Lift Stay Motion and objecting to this Application, further increasing administrative costs to the estate and

---

[4] In any event, if any hypothetical additional indemnification claims had been filed, the Debtors would have objected to them, potentially expunging those claims such that they would have no effect on the claims pool. *See* Objection ¶ 30.

reducing any overall benefit. *See In re Dana Corp.*, 390 B.R. at 108; *In re Granite Partners*, 213 B.R. at 446.

Third, while the Court finds that Mr. Moro's counsel's services were not duplicative of services provided by other professionals, the relief sought was ordinary and routine. Such routine activities do not constitute a substantial contribution. *In re ASARCO, LLC*, 2010 WL 3812642, at *8 (Bankr. S.D. Tex. Sept. 28, 2010) ("Activities of a creditor or their counsel that are ordinary, expected, routine, or duplicative do not constitute a substantial contribution to a debtor's estate."). Mr. Moro cites *In re SONICblue Inc.*, 422 B.R. 204 (Bankr. N.D. Cal. 2009) and *In re 9085 E. Mineral Office Building, Ltd.*, 119 B.R. 246 (Bankr. D. Co. 1990) for the proposition that where a creditor's actions result in the reduction of estate fees, the creditor has made a substantial contribution. But those cases are inapplicable because they involved objections to debtors' professionals' fee applications where any reduction led to an increased asset pool to be used for recovery to the debtor's creditors. Mr. Moro is not objecting to the Debtors' counsel's fees here. While he argues that, because the stay was lifted as to all Insured Individuals, those individuals do not need to file stay relief motions or indemnification claims, the record does not establish that Mr. Moro's action would have meaningfully saved legal fees charged to the estates.

## CONCLUSION

Considering the factual record here and applying the multifactor test for substantial contribution, the Court finds that Mr. Moro has not met the burden necessary for the award of an administrative expense claim for all the reasons stated above. Accordingly, the Application is denied, and the Objection is sustained.[5]

---

[5] Because Mr. Moro has not established a substantial contribution, the Court does not need to address the reasonableness of his requested compensation. *See* 11 U.S.C. § 503(b)(4); *see also Celsius Network LLC*, 2024 WL

11

The Debtors should settle an order on five days' notice that is consistent with the terms of this Memorandum of Decision. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Files docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon counsel to Mr. Moro.

Dated: White Plains, New York
      April 7, 2025

                                      */s/ Sean H. Lane*
                                      UNITED STATES BANKRUPTCY JUDGE

---

4763002, at *5 (declining to address reasonableness of requested compensation where creditor did not establish a substantial contribution).