# EXHIBIT A

SEQUOR LAW, P.A.
Edward H. Davis, Jr. (pro hac vice forthcoming)
Fernando J. Menendez, Jr.
Joseph Rome
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
E-mail: edavis@sequorlaw.com
E-mail: fmenendez@sequorlaw.com
E-mail: jrome@sequorlaw.com

*Attorneys for Wo Weidong*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GENESIS DIGITAL HOLDCO, LLC, et al., | Case No. 23-10063 (SHL) |
| Wind-Down Debtors. | (Jointly Administered) |

**DECLARATION OF WO WEI DONG IN SUPPORT OF *EX PARTE* MOTION**
**FOR AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE AUTHORIZING MOVANT TO ISSUE**
**SUBPOENA TO THE WIND-DOWN DEBTORS**

I, Wo Wei Dong, [1] under penalties of perjury, pursuant to 28 U.S.C. § 1746, do hereby declare:

1.      I am a national and resident of the People's Republic of China ("PRC"). Because

English is not my first language, I make this Declaration with the aid of a translator. If called upon

to testify, I would testify as to all matters set forth in this Declaration with the aid of an interpreter.

---

[1] "Wo" is my surname and "Wei Dong" is my given name. In Chinese, surnames are written
before given names.

1

2.      I file this declaration in support of my Motion for an Order Pursuant to Rule 2004

of the Federal Rules of Bankruptcy Procedure authorizing the issuance of a subpoena to the Wind-

Down Debtors relating to the amounts distributed to ███████████████████████████████

on account of Claim No. 405 in the above-captioned proceeding.

**OVERVIEW OF THE SINGAPORE PROCEEDING
AND BENEFICIAL OWNERSHIP IN ███**

3.      In February 2024, I, together with Exchange Union Company, Shanghai Huiyin

Group Co. Ltd., and Shanghai Shengyi Information Network Co., Ltd. (the "Applicants") as

claimants (*i.e.*, plaintiffs), commenced a litigation proceeding in The High Court of The Republic

of Singapore under case number HC/OC 107/2024 (the "Singapore Proceeding") seeking, among

other things, damages for the large-scale misappropriation of assets beneficially belonging to me,

and interim relief to prevent the further dissipation of those assets. A true and correct copy of the

amended Statement of Claim in the Singapore Proceeding is attached as **Exhibit A** hereto.

4.      As will be explained further below, the mentioned misappropriation was part of a

larger conspiracy between my son, James Wo Quan ("James Wo"), my daughter, Wo Qi, my wife,

Sin Hongmin ("Mdm Sun") and, apparently, my employee Terence John Culver ("Culver"), to

wrongfully seize control of and misappropriate assets rightfully belonging to me, including the

assets of ███. I will not here elaborate in detail on the other misappropriated assets, which are of

limited relevance to the information sought relating to ███, save to state for context that these

include:

    a.   digital assets held across over 900 decentralised digital wallets;

    b.   accounts maintained with various cryptocurrency exchanges; investments in

         various target companies and blockchain developmental projects; and

c.  shares in various entities which are a part of the Huiyin Group (and, relatedly, my entitlement to the underlying assets of such entities and their wholly-owned subsidiaries).

5.  These wrongful actions—including, specifically, the misconduct in relation to ███████ assets—were carried out without my consent or authorisation and in breach of trust.

6.  Against this backdrop of the broader misappropriation, I and several companies that I own and control (*i.e.,* the Applicants) filed suit the Singapore Proceeding for the recovery of all these assets. Since, I have secured orders in the Singapore Proceeding freezing the bulk of the digital assets in dispute.

## MY PERSONAL BACKGROUND AND COMPANIES

7.  I am an entrepreneur that has been blessed with substantial success. After graduating from university in the PRC in 1989, I began my career in primary market equity investments, secondary market stock investments, and real estate investments, among other things. When the first ranking of wealthy people was published in the PRC in 2003, I was ranked 388th.

8.  In the late 1990s and early 2000s, I established the Huiyin Group, an investment firm encompassing sectors such as medicine, information technology, modern agriculture, tourism, and digital assets. From its inception and to the present, I have remained the beneficial owner and actual controller of the Huiyin Group.

9.  Over time, the Huiyin Group expanded to include (without limitation) the below-listed companies both in and out of the PRC, which were formed with my approval and pursuant to my instructions. I provided the capital for each of these companies. Although I did not personally hold the shares in all the below-listed companies, every company was either directly held by me or by various nominees that I appointed, and who agreed, to hold the relevant shares in trust for

3

me and on my behalf pursuant to various oral and written agreements. At all times, I personally

retained sole ultimate beneficial ownership over all the entities which together comprise the Huiyin

Group:

    a.  Shanghai Huiyin Group Co., Ltd ("**SHHYG**"), a company incorporated in the

PRC in 2001, the shares of which are held by me as to 90% and Mdm Sun as to

10% as my nominee. Mdm Sun assumed the 10% shareholding from my mother.

At all times, consistent with Mdm Sun being my nominee, my wife injected no

capital into SHHYG and took no part in the operations of the core of the Huiyin

Group's business in trading and investment in financial or digital assets.

    b.  Exchange Union Company ("**EUC**"), a company incorporated in the Cayman

Islands in 2017, the shares in which are 100% owned by SHHYG, and hence, of

which I am the sole beneficial owner.

    c.  Shanghai Shengyi Information Network Co., Ltd ("**SHSY**"), a company

incorporated in the PRC in 2015, the shares in which are 97.18% owned by Sun

Rui and 2.82% owned by Sun Li Qun, both as my nominees and held on trust for

the Huiyin Group (and ultimately, me).

    d.  ███████████████████████ a company incorporated in the

Cayman Islands in 2018, the shares of were registered in the name of Mdm Sun

as my nominee and held in trust for me, and of which I am the sole beneficial

owner.

    e.  Smart River Investments Limited ("**SRIL**"), a company incorporated in the

British Virgin Islands ("**BVI**") and acquired by me in 2009, the shares of which

were similarly registered in the name of Mdm Sun as my nominee and held in trust for me, and of which I am the sole beneficial owner.

10.     To be clear, I provided the capital for each and all of the companies comprising the Huiyin Group, and thus am the beneficial owner of both the companies and their assets.

11.     Rather than personally holding shares or directorship in █████ or SRIL, I entrusted the shareholding and positions to Mdm Sun as my nominee. Because my wife's position was simply that of a nominee, she has never taken any active part in the business of the Huiyin Group, ████, or SRIL beyond assisting with minor administrative tasks. On the contrary, my wife and I had an express, unambiguous verbal agreement that she would hold the shares in █████ and SRIL in trust for me and on my behalf and to act as director in accordance with my instructions and for my benefit.

## MY DIGITAL ASSETS BUSINESS AND INVESTMENTS

12.     I will briefly explain my digital asset holdings, which originally began as investments that I made using my personal wealth, and which gradually evolved such that these investments and corresponding assets were held by or through the Huiyin Group (and its subsequent iterations), for and on my behalf.

13.     In or around 2014, I started to invest my personal resources in what was at the time a novel asset class—cryptocurrency—including buying large quantities of Bitcoin ("**BTC**") tokens. I experienced considerable success.

14.     As my digital asset holdings grew substantially, it became difficult to manage them entirely on my own. As such, around 2016, I decided to form a team of employees within the various entities of the Huiyin Group to help with the day-to-day operation, administration, and

5

trading of my digital assets, and to delegate the management of my personal digital assets as part of the Huiyin Group's business. To this end, among other things:

a.   In 2016, I established a USD 20 million blockchain venture fund as part of the Huiyin Group, targeted at digital assets investments (the "**Huiyin Blockchain Venture**").

b.   I arranged for capital injections of USD10.25 million and Renminbi ("**RMB**") 22 million into SRIL and Mdm Sun's Credit Suisse accounts in 2016 and 2017 respectively, the latter with instructions for the amount to be transferred to SRIL. As mentioned above, SRIL is part of the Huiyin Group and had originally been utilized for the Huiyin Group's offshore equity and gold investments. With these 2016 and 2017 capital injections, SRIL was repurposed for the Huiyin Group's blockchain investments.

c.   From December 2016 to January 2017, I directed my employees to purchase 4,000 physical BTC tokens for RMB 27.3 million.

d.   In May 2017, I issued Huiyin Group-wide announcements declaring that digital assets would be the Huiyin Group's main business platform.

15.    Even though I professionalized the administration of my personal digital asset investments by incorporating them into a new business of the Huiyin Group, I continued to make all management and investment decisions. These decisions included how assets should be deployed or invested, what investment projects should be pursued, and how the companies involved in the administration and operation of the Huiyin Group's business should be operated and run. I would convey my instructions either formally through Group-wide announcements to

6

all employees, informally via text messages to the various employees or, alternatively, orally at meetings of the Huiyin Group's management.

16.    Under my direction, the Huiyin Group conducted various forms of investments, including the following of relevance to the present application:

    a.  Digital asset investments in the primary market, the initial market for new cryptocurrencies where we invested via private offering rounds and/or initial coin offerings;

    b.  Digital asset trades in the secondary market involving cryptocurrencies which had already been made publicly available; and

    c.  Non-digital asset investments in various digital and blockchain related securities companies and businesses.

17.    ███ and SRIL are among the companies which served as investment vehicles to hold the Huiyin Group's non-PRC investment entitlements and proceeds arising out of the above activities. As ███ and SRIL were intended to be and operated as investment vehicles, I would generally only instruct for funds to be transferred to such vehicles from various entities under the Huiyin Group when a particular investment or project had been identified; the funds so transferred would thereafter be utilized immediately for the transaction or acquisition.

18.    Over time, the Huiyin Group's cryptocurrency and blockchain-related digital asset holdings and investment business was rebranded into what was first known as the "███ Platform" and subsequently, the "Shengyi Platform", although at all times the assets continued to be managed and operated at my overall instruction as beneficial owner. Indeed, the ███ and Shengyi Platforms continued to operate as part of the overarching Huiyin Group under my control, including the staff of the said Platforms being subject to overall appraisal according to the Huiyin Group's internal

7

processes (and my overall appraisal), and the Platforms being bound by Group-wide pronouncements as I would from time-to-time issue. As such, my subsequent declarations as regards Huiyin Group should be understood as encompassing the ███ and Shengyi Platforms.

19.    Distinct from the digital assets held through ███ and SRIL, I continued to invest in digital assets through various decentralised wallets as well as accounts held with cryptocurrency exchanges such as Binance, Gate.io, Kraken, and OKX.

20.    I controlled these wallets and accounts through my employees. Initially, I nominated individuals or Huiyin Group companies to operate these wallets and accounts on an informal basis without any particularized written agreements, but, following an incident of theft in November 2021 (the "Nov 21 Theft"), I executed Authorisation to Operate Agreements (as updated and renewed where applicable) with eight authorised employees that assisted me with the operation and administration of these digital assets.

21.    My daughter, Wo Qi, began to work for me in July 2021 shortly after graduating from college. Partly in response to the Nov 21 Theft, I felt it was important to put the immediate control of these assets in the hands of someone I could completely trust, and I completely trusted Wo Qi because she was my daughter. Therefore, I felt it was safer to delegate responsibility for the control over many of these wallets and accounts to her.

22.    Following the appointment of Wo Qi as my nominee in control of various wallets and accounts, I instructed two of the individuals subject to Authorisation to Operate Agreements to hand over to Wo Qi all necessary means and credentials to access and operate my digital wallets, which included usernames, passwords, Google codes, Application Programming Interface ("API") keys, email addresses and passwords, and all other necessary information required to carry out cryptocurrency token transfers. In addition, I instructed a full handover of control and operation of

bank accounts, relevant information and documents as well as all financial records to Wo Qi, in order to assist me with management of assets or finance of the various companies that I beneficially owned. Because of the absolute trust I placed in her, I did not require her to sign an Authorisation to Operate Agreement expressly recognizing my control over these assets.

23.    For over two years, Wo Qi faithfully executed my instructions as to the digital assets in her care.

## THE INITIAL DISCOVERY OF MISAPPROPRIATION

24.    As mentioned at the outset, there was a concerted and coordinated effort by my wife, my two children, and/or Mr Culver, to misappropriate the property that I had delegated to their control as employees of my companies.

25.    Sometime in the early hours of 5 December 2023, I instructed my daughter to make certain transfers to certain accounts held by EUC with certain cryptocurrency exchanges. These accounts were registered to EUC and controlled and managed (at my instruction) by my daughter at the time. Specifically, I instructed the transfer of: (i) 3.85 million USDC to a Binance Account; (ii) 1 million USDC to a Gate.io Account; and (iii) 1 million USDC to the OKX Account.

26.    My employees discovered that only some of the transfers had been executed according to my instructions. Specifically, one of my employees, a Mr. Lu, reported to me that 3.85 million USDC had been received in the Binance Account and 1 million USDC had been received in the OKX Account. However, the 1 million USDC which were supposed to have been transferred by the 1st Defendant into the Gate.io Account was never received. Initially, I suspected another theft in the manner of the Nov 21 Theft, and I instructed my employees to investigate accordingly.

27.    Upon investigation, I discovered that the API keys associated with the intended sender wallets had been deleted. To make matters worse, as I later found out from the transaction IP logs, my daughter also executed unauthorised log-ins to the exchange accounts of EUC, and, around the same time, transferred out broad swathes of digital assets without my consent.

28.    In conjunction with the misappropriated digital assets, and in quick succession, my daughter, wife, and/or son also:

    a.    unilaterally deleted all Telegram chats between them, my Huiyin Group employees, and me (through which I had given instructions and received reports as to the dealing and trade in the digital assets), as well as my private Telegram chat with my daughter, all by 11 December 2023;

    b.    gained unauthorised access to the email account of one Ms Chen, a Huiyin Group employee who served as the authorised contact person for (*inter alia*) ▮▮▮ and SRIL vis-à-vis its corporate service providers, and instructed a change in the contact person to my daughter and wife instead. To-date, I have not been able to restore this change;

    c.    issued "formal warnings" against various of my Huiyin Group employees as regards (unspecified) "inappropriate behaviour [they] may take or have taken" and revoked their authority; and

    d.    stopped responding to my instructions and reporting to me regarding the Huiyin Group assets entrusted to them, and, apparently, also procured the cooperation of Mr Culver.

29.    As set forth in the Statement of Claim in the Singapore Proceeding, the dissipation of assets held for my benefit included those held through ▮▮▮, including in particular, proceeds

10

of distribution by Genesis Global Capital LLC and/or its affiliates ("Genesis") on a receivables claim held in the name of the ███ (the 3rd Defendant in the Singapore Proceeding), which comprised approximately 6.3 million DOT tokens worth an estimated USD 41.79 million (as of 31 December 2024) (the "Genesis Proceeds").

30.    I provided ███ with the funds that formed the basis of its Claim No. 405 and receipt of the Genesis Proceeds. Specifically, I caused a transfer to ███ and instructed Terry Culver at ███ to enter into the fixed term loan agreement to loan 7,000,000 DOT to Genesis Global Capital, LLC ("GGC"). Pursuant to my instructions, Mr. Culver signed the relevant loan agreement on behalf of ███. The Genesis Proceeds constitute amounts remaining to be paid by GGC following its repayment of 1,000,000 DOT in November 2022.

## I HAD NO OPTION BUT TO FILE THE SINGAPORE PROCEEDING

31.    Given the context described above, I (along with the other Applicants) was compelled in February 2024 to commence the Singapore Proceeding, where I believed my wife and daughter were resident at the time.

32.    Ancillary to the Singapore Proceeding, I and the other claimants also sought an interim proprietary injunction that issued on 29 February 2024. That interim injunction, amongst other things:

a.  Restrained my wife, daughter, ███, and SRIL from dealing with, disposing of, or diminishing the value of specified digital assets, which included the Centrifuge transferred out of the OKX Account.

b.  Restrained my wife, daughter, ███, and Persons Unknown from dealing with, disposing of, or diminishing the value of the same specified digital assets.

11

33.    Subsequently, on 20 May 2024, my daughter, wife, ▮▮▮, SRIL, and W3 BVI, being the 1st to 4th and 9th Defendants in the Singapore Proceeding, entered appearances in the Singapore Proceeding and filed a pleading in which they claimed that all the relevant digital wallets and underlying assets constituting the subject matter of the Singapore Proceeding belonged to my wife and were managed and controlled solely on her behalf. As already mentioned, this assertion is false and contradicted by the available evidence. My son and the companies for which he is the nominee shareholder have been served with legal process noticing them of the Singapore Proceeding, but they have not entered any appearance in Singapore.

34.    On 30 August and 16 October 2024, the Singapore court held an *inter partes* hearing to determine whether the initial temprorary proprietary injunction should be maintained pending the final judgment on the merits in Singapore Proceeding. My wife and daughter opposed the maintenance and continuation of the injunction.

35.    The Singapore court maintained the proprietary injunction over Defendants' objection. Moreover, to give "teeth" to the injunction order, the Singapore court ordered my wife, daughter, SRIL, and ▮▮▮, amongst others, to additionally disclose the whereabouts of the bulk of the digital assets in dispute. Accordingly, the Singapore court was persuaded that, for the purpose of sustaining the injunction and on an interim basis, there was sufficient evidence to substantiate Applicants' case that I was the beneficial owner of the assets sought to be preserved. A true and correct copy of the Singapore court's disclosure order is attached as **Exhibit B** hereto.

36.    However, the commencement of the Singapore Proceeding appears to have only caused my wife and two children to double down on their misconduct. To compound the situation and further speak to their bad faith, recent events and discoveries point to there being a real risk of dissipation as to all the stolen assets:

12

a. My daughter has repeatedly breached the Singapore court's injunction orders freezing the digital assets by transferring or permitting to be transferred enjoined tokens.

b. Specifically, as recently as October 2024, the Singapore Court had granted a fresh injunction order against my daughter, wife, ████, and SRIL prohibiting the disposal of various digital assets worth about USD 140 million (as of 19 February 2024). In aid of that injunction, the Singapore Court had also ordered them to disclose the whereabouts of the digital assets under their control that were subject to the injunction within 28 days, *i.e.*, by 13 November 2024. *See* Exhibit B.

c. They have failed to provide sufficient disclosure, breaching the disclosure order issued by the Singapore court. Instead, on the due date for compliance of 13 November 2024, they sought to avoid such disclosure by filing frivolous, eleventh-hour applications designed to delay the execution of the disclosure order—although no stay of execution of the relevant order for disclosure has been granted thus far.

d. Consistent with such conduct, my daughter has also given false information to the Singapore court under affirmation, disclaiming receipt of certain assets from me and disclaiming her control over certain decentralised wallets which formed part of the chain of dissipation of the digital assets.

e. It was also recently discovered that my daughter has been untruthful with the Singapore court as regards her present whereabouts, stating that she was residing in a particular address in Singapore up to November 2024, when in fact my wife and daughter had both vacated the residence at that address.

13

f.   My son initially refused to participate in the Singapore Proceeding. Counsel for my

son only appeared in May 2025.

### MY WIFE, DAUGHTER, AND SON CONTINUE TO REFUSE
### TO ACCOUNT FOR THE MISAPPROPRIATED ASSETS

37.    To-date, my wife and two children have refused my numerous demands to return

and account for the assets they transferred, and they have also refused to return control of various

accounts and management rights of companies I beneficially own. They have effectively ceased

communication.

38.    Instead, they have sought to deny that they originally held all the assets under

dispute in the Singapore Proceeding (including the shares in ████ and SRIL) in trust for me and

have asserted that my wife has always been the ultimate beneficial owner. Without any disrespect

to my wife, this is simply not true. My wife spent many years as a housewife raising our children,

with no active involvement in the Huiyin Group and/or the ████ Platform save for being my

nominee in certain companies (including ████ and SRIL). The only aspect of the Huiyin Group's

business in which my wife took active part in was the Chinese fine art and auction business, a self-

contained artwork department known as the "Jinghua Department", which was set up in 2012 for

my wife to pursue a personal interest.

39.    Furthermore, on June 3, 2025, I received notice that my wife had filed a lawsuit in

Shanghai for divorce. Presumably, she will seek a division of the marital estate, which will include

many of the assets in dispute in the Singapore Proceeding.

### PURPOSE OF THE MOTION

As the above facts make clear, the regrettable circumstance I find myself in is that my son,

daughter, and wife have exploited the trust that I placed in them by nominating them to positions

of control over my and the Huiyin Group's assets, and they have cut me off from all control and visibility over the assets. They continue to dissipate the assets I earned over a lifetime of investment even whilst I struggle to obtain the information, records, communications and documents which I require to vindicate my rights and prove my case as against them, as well as to investigate the full extent of their wrongdoing and dissipation. My wife's divorce proceeding, her and my daughter's recent conduct in the Singapore Proceeding, and my son's refusal to participate in those proceedings until recently, as highlighted above, have exacerbated my concern as to the status of the assets I beneficially own and are held in trust for me, including the receivables of ███ as reflected in the claim filed in the above-captioned proceeding.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 10 July 2025, in Shanghai, China.

*Wo Wei Dong*

_____

Wo Wei Dong

15

*EXHIBIT A*

**IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

Case No.: HC/OC 107/2024

Sub Case No.: HC/SUM 700/2025

Doc No.: HC/ORC 2188/2025

Filed: 15-April-2025 02:27 PM





Between

1. EXCHANGE UNION COMPANY
   (Cayman Islands Registration No. 325282)

2. SHANGHAI HUIYIN GROUP CO. LTD
   (China Registration No. 310000000081559)

3. SHANGHAI SHENGYI INFORMATION NETWORK CO., LTD
   (China Registration No. 91310230342255548L)

4. WO WEI DONG
   (China Passport No. EJ420888)

...Claimant(s)

And

1. WO QI
   (China Passport No. E61431735)

2. SUN HONGMIN
   (China Passport No. ED9443725)

3. DIGITAL FINANCE GROUP COMPANY
   (Cayman Islands Registration No. SI-338982)

4. SMART RIVER INVESTMENTS LIMITED
   (British Virgin Islands Registration No. 1528647)

5. GATE GROUP
   (ID Unknown)

6. PAYWARD VENTURES, INC.
   (ID Unknown)

7. NEST SERVICES LIMITED
   (Seychelles Registration No. 238045)

8. PERSONS UNKNOWN
   (ID Unknown)

9. W3 CAP HOLDING CO., LTD
   (British Virgin Islands Registration No. 2083355)

10. CREATE FORTUNE PTE. LTD.
    (Singapore UEN No. 201736156E)

11. JUMBO ACCESS INVESTMENTS LIMITED
    (British Virgin Islands Registration No. 1959900)

12. WO QUAN
    (China Passport No. EG5308553)

...Defendant(s)

**ORDER OF COURT**

| | |
|---|---|
| Case No: | HC/OC 107/2024 |
| SubCase No: | HC/SUM 700/2025 |
| Before: | The learned Assistant Registrar Chong Ee Hsiun |
| Venue: | Supreme Court, in Chamber 2-8 |
| Hearing date/Time: | 14-April-2025, 2:30pm |

The Court made the following orders in the above application:

1. The Claimants are granted permission to amend their Statement of Claim (Amendment No. 1) dated 16 July 2024 in the manner shown in the draft amended Statement of Claim (Amendment No. 2) annexed hereto, save that:



(a) at Annex E, (internal) page 175, the name of the 2nd Defendant should be "Sun Hongmin" instead of "Sun Hong Ming"; and
(b) at Annex E, (internal) page 175, the 3rd Defendant should be "Digital Finance Group Company" instead of "Exchange Union Company".

2. The Claimants are to file their Statement of Claim (Amendment No. 2)  by 16 April 2025, 4pm.

3. The 1st to 4th and 9th Defendants are to file their Defence (Amendment No. 2) by 14 May 2025, 4pm.

4. The costs of and occasioned by HC/SUM 700/2025 be the 1st to 4th and 9th Defendants' costs in the cause.

5. The Claimants and the 1st to 4th and 9th Defendants shall endeavour to agree on the 1st to 4th and 9th Defendants' consequential costs after paragraph 3 has been complied with, and if they are not able to agree, they are to file their respective written submissions on the issue of consequential costs (which shall be limited to 3 pages), by 4 June 2025, 4pm.

Date of Order    14 April 2025

Notes:
1. The person or entity served with this judgment/order and who/which has been ordered to pay money, to do or not to do any act must comply immediately or within the time specified in the judgment/order, if any.
2. Failure to comply may result in enforcement of judgment/order proceedings, including contempt of Court proceedings, against the said person or entity.

| | | |
|---|---|---|
| 1 | Name of Document: Annex: | Draft amended Statement of Claim (Amendment No. 2) |





HC/OC/107/2024 HC/SUM/700/2023 HC/ORC/2148/2023 HC/OC/107/2024 HC/SUM/700/2023

JILL TAN

REGISTRAR

SUPREME COURT

SINGAPORE

*https://www.courtorders.gov.sg*
*Access code: 96xyulbpo-107*

Getting this document from the Authentic Court Orders
Portal verifies:
(a) that it was issued by the Courts of the Republic of
Singapore or, in the case of a Schedule of Assets, that it was
filed with the Courts in relation to an application for a Grant
of Probate/Letter of Administration; and (b) the text of the
document was issued on 14 Apr 2025



3

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

---

## IN THE GENERAL DIVISION
## OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

HC/OC107/2024

<div style="text-align:right">Between</div>

| | |
|---|---|
| Amended as deleted and underlined in black pursuant to by order of Court made on 16 July 2024<br><br>Dated this 16th day of July 2024<br><br>*[signature]*<br>Solicitors for the 1st to 4th Claimants<br>Drew & Napier LLC | 1. **EXCHANGE UNION COMPANY** (Cayman Islands Company Registration No.325282)<br>2. **SHANGHAI HUIYIN GROUP CO. LTD** (People's Republic of China Company Registration No. 310000000081559)<br>3. **SHANGHAI SHENGYI INFORMATION NETWORK CO., LTD** (People's Republic of China Company Registration No. 91310230342255548L)<br>4. **WO WEI DONG** (People's Republic of China Passport No. EJ420888<u>8</u>) |

<div style="text-align:right">…Claimants</div>

<div style="text-align:right">And</div>

| | |
|---|---|
| <span style="color:red">Amended as deleted and underlined in red pursuant to order of Court made on [•]<br><br>Dated this [•] of [•] 2025<br><br>_____<br>Solicitors for the 1st to 4th Claimants<br>Setia Law LLC</span> | 1. **WO QI** (People's Republic of China Passport No. E61431735)<br>2. **SUN HONGMIN** (People's Republic of China Passport No. ED9443725)<br>3. **DIGITAL FINANCE GROUP COMPANY** (Cayman Islands Company Registration No. SI-338982)<br>4. **SMART RIVER INVESTMENTS LIMITED** (British Virgin Islands Company Registration No. 1528647)<br>5. **GATE GROUP** (Identification No. Unknown)<br>6. **PAYWARD VENTURES, INC.** (Identification No. Unknown)<br>7. <span style="color:red">~~**BINANCE HOLDINGS LTD.**~~ **NEST SERVICES LIMITED** ~~(Identification No. Unknown)~~Seychelles Registration No. 238045</span>)<br>8. **PERSONS UNKNOWN**<br>9. **W3 CAP HOLDING CO., LTD** (British Virgin Islands Company Registration No. 2083355)<br>10. <u>**CREATE FORTUNE PTE. LTD.** (Singapore UEN No. 201736156E)</u><br>11. <u>**JUMBO ACCESS INVESTMENTS LIMITED** (British Virgin Islands Company Number 1959900)</u><br>12. <u>**WO QUAN** (People's Republic of China Passport No. EG5308553)</u> |

<div style="text-align:right">…Defendants</div>

## STATEMENT OF CLAIM (AMENDMENT NO. ~~1~~2)

## I.    ~~THE PARTIES~~INTRODUCTION

1.    The 4th Claimant, Mr Wo Wei Dong, is a Chinese national. He owns and operates a group of companies within the People's Republic of China ("**PRC**") and outside the PRC involved in the trading of various financial assets, including conventional assets and novel forms of digital assets such as cryptocurrencies and non-fungible tokens ("**NFTs**"). These companies include the 1st to 3rd Claimants and the 3rd, 4th and 9th to 11th Defendants (the 3rd, 4th,~~and~~ 9th to 11th Defendants being collectively referred to as the "**Foreign Companies**"). The 4th Claimant has, at all material times, been the ultimate beneficial owner of the 1st to 3rd Claimants and the Foreign Companies (and their direct and indirect subsidiaries and underlying assets).

2.    The 4th Claimant is also the sole originator and/or contributor of the funds and/or means used to acquire a substantial number of "**Digital Assets**" comprised of: (a) digital assets ~~("Digital Assets")~~ (the "**Listed Tokens**") held in various ~~cryptocurrency~~ digital wallets including digital wallets on various cryptocurrency exchanges (comprising (i) wallets entrusted to the 1st Defendant on the 4th Claimant's instructions and authorisation (the "**Entrusted Digital Wallets**", as listed in **Annex A**), or (ii) wallets that had been newly-created by the 1st Defendant on the 4th Claimant's instructions and authorisation to receive then-newly listed tokens from primary market investments (respectively, the "**New Digital Wallets**" and the "**Newly Listed Tokens**")); and (b) digital assets, shares, or the entitlement(s) to such assets by way of returns on the 4th Claimant's investments into various primary market cryptocurrency projects (the "**Project Investments**"). The Listed Tokens are set out in Table 1 of **Annex C**. The Project Investments are

set out in Tables 2 and 3 of **Annex C.**

2A.     Similarly, the 4th Claimant is also the sole originator and/or contributor of the funds and/or means used to acquire various fiat currency, assets held in securities and other trading accounts, shares in various companies (including the Foreign Companies and their subsidiaries) and underlying assets held through them or in their names (known as the "**Non-Digital Assets**"). The Non-Digital Assets which are the subject-matter of these proceedings are listed at **Annex E** hereto. The 4th Claimant was at all material times and is the sole ultimate beneficial owner of both the Digital Assets and the Non-Digital Assets, collectively known as the "**Assets**". Further, in respect of the business and affairs of the Foreign Companies and their subsidiaries comprised in the Non-Digital Assets, at all material times since their incorporation and/or acquisition, all decisions (whether as to management, investments, or operations)  were at all material times made by or with the approval and/or mandate of the 4th Claimant, by the 4th Claimant himself, or through his proxies or agents on the 4th Claimant's instructions.

3.     The 1st to 3rd Claimants and 3rd, and 4th and 9th to 11th Defendants, along with other companies and businesses, had been beneficially owned and controlled by the 4th Claimant to, among other things, assist him to hold, administer and/or operate his vast amounts of ~~Digital~~ Assets. The 4th Claimant would typically appoint and had appointed persons and companies from his group of companies and businesses, including the 1st to 3rd Claimants, and the 3rd, and 4th, 9th to 11th Defendants to act as his agents and trustees in holding, administering and operating his ~~Digital~~ Assets ~~including those held in the Entrusted Digital Wallets~~.

3A.     The Claimants contend that after the 4th Claimant had rejected the 2nd

Defendant's request for him to divide half of the ownership and control of the Assets belonging beneficially to him with the 1st and 12th Defendants (who are the 2nd Defendant and 4th Claimant's children), the 1st, 2nd and 12th Defendants (as his immediate family members) took advantage of the trust reposed by the 4th Claimant in them, and the access granted to them vis-a-vis the Assets, to wrongfully seize control of such Assets (including the Foreign Companies, their underlying assets, and the Digital Assets) in order to seek to usurp the 4th Claimant's ultimate beneficial ownership thereover. Such wrongful seizure was pursuant to a conspiracy between two or more of the 1st to 4th and 8th to 12th Defendants, perpetrated at least from December 2023 onwards, in which these Defendants through concerted and coordinated measures, sought to additionally deny the 4th Claimant's ultimate rights and/or entitlements to the Assets, refused to account for the Assets, and/or dissipated the Assets, in the manner summarily set out below and further detailed in the ensuing sections based on investigations which remain ongoing:-

(a)    in respect of the Digital Assets, the 1st Defendant and/or the 2nd Defendant, together with the 12th Defendant and/or the 3rd, 4th, 9th to 11th Defendants nominally held by them for the 4th Claimant and acting through the 2nd and/or 12th Defendants, in breach of trust and/or fiduciary duties, seized control of the Digital Assets, refused to adhere to the 4th Claimant's directions and/or to account to him in respect of these Assets, and thereafter caused and/or facilitated the dissipation of all or part of the Digital Assets, into various cryptocurrency wallets owned and/or controlled by one or more of them and/or persons yet unknown across at least three levels of dissipation (the "**Impugned**

**Wallets**") by way of unauthorised transfers, through amongst others:

(i)     the deletion of API and private keys to cause the Claimants to lose access to the Digital Assets;

(ii)    the refusal to return access to, return, and/or account for the Digital Assets to the Claimants, such that they lost virtually all information regarding, access to, oversight and/or control over, the same;

(iii)   the unilateral deletion of chat records which demonstrated that the Digital Assets had historically been dealt with at the 4th Claimant's instructions and/or mandate, and/or had been under his ultimate control and/or ownership;

(iv)    subsequent surreptitious dissipations by way of various unauthorised transfers of Digital Assets from digital wallets which had been entrusted to the 1st Defendant (i.e. the Entrusted Wallets), to various other exchange-associated Impugned Wallets which were outside the control of the Claimants, and/or other unknown wallets (a significant number of which have since been ascertained to be owned and/or controlled by the 12th Defendant); and/or

(v)     amidst the above wrongful seizure and surreptitious dissipation to persons unknown, the concerted denial by the 1st, 2nd, 3rd, 4th, and 12th Defendants of the 4th Claimant's ultimate beneficial ownership of the Digital Assets, including in particular by way of false assertions that they were beneficially owned by the 2nd Defendant

despite her having not contributed any funding to, and never having dealt with or managed, the Digital Assets. Such conduct was designed by the 1st, 2nd, 3rd, 4th and/or 12th Defendants, to facilitate the continued wrongful dissipation and/or to delay the unravelling by the Claimants of what had become of the Digital Assets, in particular the fact that a large part of these Digital Assets to the tune of about at least USD 66 million[1] had been dissipated to or through the 12th Defendant;

(b) in respect of the Non-Digital Assets, the 1st, 2nd and/or 12th Defendants and/or the Foreign Companies nominally held by them for the 4th Claimant and acting through them, have in breach of trust and/or fiduciary duties: (i) refused to recognize and/or denied the 4th Claimant's ultimate beneficial ownership of the Foreign Companies (and/or their and their subsidiaries' underlying assets) and the 10% Share in 2C (as defined at paragraph 8 below); and (ii) excluded or prevented the 4th Claimant from exercising his full rights and/or entitlements arising from his ultimate beneficial interests in the Foreign Companies (and/or to their and/or their subsidiaries' underlying assets), including the right to manage, keep oversight and control of the underlying assets, investments, and operations of the Foreign Companies and their subsidiaries, and/or to instruct their respective officers to implement his decisions, instructions, and/or mandate,

---

[1] Estimated market value as of 19 February 2024.

including by way of, amongst others:

(i)     the 1st, 2nd and 12th Defendants, and through the 3rd, 4th, and 9th to 11th Defendants refused to carry out the 4th Claimant's instructions;

(ii)    the unauthorised exercise of the 2nd and 12th Defendants' powers as nominee directors and sole shareholders of the Foreign Companies to procure various changes to the persons authorised to instruct the corporate secretarial service providers in respect of these Foreign Companies (and their subsidiaries), effecting unauthorised changes to the directors of the Foreign Companies' subsidiaries, their financial officers, the operators of their bank accounts and their website domain operation rights, as well as procuring another nominee of the 4th Claimant, Mr Culver (as defined below), to no longer adhere to his instructions, such that the Claimants ceased to have access and/or control over the Foreign Companies (and their subsidiaries and underlying assets);

(iii)   the refusal to account to, the 4th Claimant for the shares in, the underlying assets held through or in the names of, and/or control over, the Foreign Companies (and their subsidiaries);

(iv)    the unilateral deletion of chat records which demonstrated that the Non-Digital Assets had historically been dealt with at the 4th Claimant's instructions and/or mandate, and/or were under the 4th Claimant's ultimate control and/or ownership;

(v)     the concerted denial of the 4th Claimant's ultimate beneficial

ownership of the Foreign Companies (and their subsidiaries and underlying assets), including in particular by way of false assertions on the part of the 1st, 2nd and 12th Defendants that the Foreign Companies (and their subsidiaries) and the underlying Non-Digital Assets were beneficially owned by the 2nd Defendant and not the 4th Claimant, despite the 2nd Defendant having not contributed any funding to, and never having dealt with or managed, the same; and/or

(vi) amidst such wrongful seizure, and pending continuing investigations, the dissipation of all or part of the Non-Digital Assets to persons yet unknown, including in particular, proceeds of distribution by Genesis Global Capital LLC and/or its affiliates ("**Genesis**") on a receivables claim held in the name of the 3rd Defendant, with such proceeds of distribution comprising approximately 6.3 million DOT tokens worth an estimated USD 41.79 million (as of 31 December 2024) (the "**Genesis Proceeds**").

Pending continuing investigations and discovery, and by reason of the wrongful destruction and/or retention of relevant documents by the 1st, 2nd, and/or 12th Defendants, the particulars set out in this Statement of Claim are the best particulars that the Claimants are able to provide at this juncture. The Claimants thus reserve the right to augment the pleadings as may be necessary at the appropriate juncture.

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

## II.      THE PARTIES

4.      The 1st Claimant, Exchange Union Company, is a limited liability company incorporated in the Cayman Islands and has its registered address at Sertus Incorporations (Cayman) Limited, Sertus Chambers, Governors Square Suite 5-204, 23 Lime Tree Bay Avenue, the Cayman Islands. The 1st Claimant is the registered owner of accounts with the cryptocurrency exchanges "Binance" (User ID: 362024442) (the "**Binance Account**"), "OKX" (User ID: 25416156282843136) (the "**OKX Account**") and "Gate.io" (User ID: 9123501) (the "**Gate.io Account**"), in which some of the Digital Assets were held.

5.      The 2nd Claimant, Shanghai Huiyin (Group) Co Ltd, is incorporated in the PRC and wholly owns the 1st Claimant. The 2nd Claimant's registered address is at 686 Wanhangdu Road, Shanghai. The 4th Claimant legally holds 90% of the shares in the 2nd Claimant. The 2nd Defendant holds the remaining 10% of the shares in the 2nd Claimant on trust for the 4th Claimant as his nominee.

6.      The 3rd Claimant, Shanghai Shengyi Information Network Co., Ltd, is a company incorporated in the PRC and has its registered address at Room 111, Block B, Building 6, No. 2, Guanshan Road, Chengqiao Town,Chongming District, Shanghai (Shanghai Chongming Industrial Park).

7.      The 1st Defendant, Ms Wo Qi, is the 4th Claimant's daughter. She graduated from Barnard college, Columbia University, New York USA, with bachelor's degrees in economics and Asian and Middle Eastern Cultures in May 2020. From in or around July 2021, the 1st Defendant was appointed by the 4th Claimant to work in and/or with the 4th Claimant's various companies and business including the 1st to 3rd Claimants and the Foreign Companies. In such capacity:-

(a) From in or around October 2021, after the 1st Defendant first joining the Huiyin Group in July 2021 (as defined at paragraph 18 below), the 4th Claimant (acting for himself and the other Claimants) first delegated to the 1st Defendant access to and control over the Non-Digital Assets which were in the form of fiat assets held by, through and/or in the names of the Foreign Companies and/or their subsidiaries, as well as those comprised in the 2nd and 12th Defendants' bank accounts and accounts with exchanges to hold and manage on trust for and/or at the instruction and/or mandate of the 4th Claimant.

(b) From in or around November 2021, the 1st Defendant was also appointed by the 4th Claimant (acting for himself and the other Claimants) to operate and administer his Digital Assets in private wallets and exchange accounts, which were ultimately held on trust for him.

7A.    Consequently, the 1st Defendant was entrusted by the 4th Claimant to act as, and acted as, *de facto* treasurer of the Assets, in that she was charged with responsibility to safekeep such Assets and to deal with them for various investment, trading, or other purposes as instructed and/or authorised by the 4th Claimant. To this end, at all material times, the 1st Defendant owed the Claimants fiduciary duties (including duty to act in the Claimants' best interests and duties of good faith and loyalty), and/or the duty to act solely upon the instructions and/or authorisation of the 4th Claimant.

8.    The 2nd Defendant, Mdm Sun Hongmin, is the 4th Claimant's wife and was at all material times an employee of the Huiyin Group (as defined at paragraph 18

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

below). While ~~s~~She has, at all material times, been an employee of the Huiyin Group, she only oversaw the Huiyin Group's fine arts distribution and auctioneering business, Jinghua Art Gallery, and apart from that, served as a nominee shareholder and director (in a manner similar to other Huiyin Group employees who had also been nominated by the 4th Claimant to act as nominee shareholder and director) in some of the Huiyin Group's subsidiaries which were ultimately beneficially owned by the 4th Claimant~~'s companies~~, including the 3rd, 4th, and 9th Defendants~~the Foreign Companies~~. She ~~held and~~ holds all the shares in the 3rd, 4th, and 9th Defendants~~the Foreign Companies~~, a 10% shareholding in the 2nd Claimant ("**10% Share in 2C**") and some of the Digital Assets, on trust for the 4th Claimant. Save as to the above, the 2nd Defendant did not at any point oversee, manage, involve herself in, and/or provide funding from monies beneficially belonging to her for, the business and/or affairs of the 3rd, 4th, 9th Defendants (and their subsidiaries and/or underlying assets). Nor did she provide any consideration for the 10% Share in 2C.

9.    The 3rd Defendant, Digital Finance Group Company, is a Cayman Islands Company incorporated on 21 June 2018. Its registered address is at Sinclair Corporate Services Ltd, P.O. Box 498 3rd Floor Genesis Building, Genesis Close, Grand Cayman KY1-1106. As explained at paragraphs 1 and 8 above, the 4th Claimant is the ultimate beneficial owner of the 3rd Defendant (and its underlying assets) and the 2nd Defendant holds all the shares in the 3rd Defendant (and/or all rights and/or entitlements to its underlying assets) on trust for the 4th Claimant.

10.      The 4th Defendant, Smart River Investments Limited, is a company incorporated in the British Virgin Islands and has its registered address at Vistra Corporate Services Centre, Wickams Cay II, Road Town, Tortola, VG1110, British Virgin Islands. The 4th Defendant is the sole registered shareholder of Silvery Capital Holding Company, which in turn is the sole registered shareholder of Matrix Limited, both companies incorporated in Abu Dhabi ("**Silvery Capital**" and "**Matrix**"). As explained at paragraphs 1 and 8 above, the 4th Claimant is the ultimate beneficial owner of the 4th Defendant (and its direct and indirect subsidiaries and their underlying assets) and the 2nd Defendant holds all the shares in the 4th Defendant (and/or all rights and/or entitlements to its and/or its direct and indirect subsidiaries' and their underlying assets) on trust for the 4th Claimant. The 4th Defendant is also the registered owner of an account with the cryptocurrency exchange known as "Kraken", operated by the 6th Defendant, which has been used to hold some of the Digital Assets.

11.      ~~The Claimants contend that the 1st Defendant and/or the 2nd Defendant have, wrongfully and in breach of trust, taken control of the Digital Assets and made unauthorised transfers of the Digital Assets (the "Stolen Digital Assets") into various cryptocurrency wallets ("Impugned Wallets").~~

12.      The 5th to 7th Defendants are entities which own cryptocurrency exchanges that host some of the Impugned Wallets which the Stolen Digital Assets have presently been traced to:

| (A) S/No. | (B) Cryptocurrency Exchange | (C) Owner/ Operator |
|---|---|---|
| 12.1 | Gate.io | 5th Defendant *Gate Group* |

| 12.2 | Kraken | 6th Defendant |
| | | ***Payward Ventures, Inc.*** |
| 12.3 | Binance | 7th Defendant |
| | | ***Nest Services Limited*** |

13.    The 8th Defendant refers to Persons Unknown who own, control and/or know the passwords to some of the Impugned Wallets (which include wallets which were onward recipients of the Digital Assets originating from and/or traceable back to the Entrusted Digital Wallets (the "**Stolen Digital Assets**"). Save for Impugned Wallets held on the 5th, 6th and 7th Defendant~~'~~s' cryptocurrency exchanges that were registered in the name of the 12th Defendant, Mr Wo Quan, ~~the son of the 4th Claimant and the 2nd Defendant,~~ the Claimants have so far been unable to and/or are yet to fully ascertain the identities of other such unknown wallet owners.

14.    The 9th Defendant, W3 Cap Holding Co., Ltd, is a company incorporated in the British Virgin Islands. Its registered address is at 2/F, Palm Grove House, P.O. Box 3340, Road Town, Tortola, British Virgin Islands. The 9th Defendant is the 100% shareholder of W3 Capital Pte Ltd ("**W3 FO**"), a family office incorporated in Singapore, as well as Assets Bay Investments Limited, a British Virgin Islands incorporated company ("**Assets Bay**"). The 4th Claimant is the ultimate beneficial owner of the 9th Defendant (and its subsidiaries and their underlying assets). The shares of the 9th Defendant are all held in the name of the 2nd Defendant. The 2nd Defendant in turn, holds all the shares of the 9th Defendant (and/or all rights and/or entitlements to its and its subsidiaries' underlying assets) on trust for the 4th Claimant. As explained at paragraphs 1 and 8 above, the 4th Claimant is the ultimate beneficial owner of the 9th Defendant.

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

14A.    The 10th Defendant, Create Fortune Pte. Ltd., is a company incorporated in Singapore. Its registered address is at 600 North Bridge Road #12-02/03. Parkview Square, Singapore 188778. The 12th Defendant is nominally the sole director and shareholder of the 10th Defendant. As explained at paragraphs 1 and 8 above, the 4th Claimant is the ultimate beneficial owner of the 10th Defendant (and its underlying assets).

14B.    The 11th Defendant, Jumbo Access Investments Limited, is a company incorporated in the British Virgin Islands. Its registered address is at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands. The 12th Defendant is also nominally the sole director and shareholder of the 11th Defendant. As explained at paragraphs 1 and 8 above, the 4th Claimant is the ultimate beneficial owner of the 11th Defendant (and its underlying assets).

14C.    The 12th Defendant, Wo Quan, is the son of the 4th Claimant and the 2nd Defendant. He graduated from Fudan University in Shanghai, the PRC in 2015 with dual bachelor's degrees in Mathematics and Economics, and graduated from Teachers College, Columbia University in New York, USA in 2016 with a degree in Applied Statistics. From in or around November 2016, the 12th Defendant began assisting the 4th Claimant with work in the 4th Claimant's various companies and business on a full-time basis, including the 1st to 3rd Claimants and the Foreign Companies. From 1 January 2017 to 31 December 2022, the 12th Defendant was formally employed by the 4th Claimant through the 2nd Claimant under an employment contract. ~~While there was no formal contract of employment signed between the 2nd Claimant and the 12th Defendant, given that the 12th Defendant~~

~~was the 4th Claimant's son, it was understood that the 12th Defendant owed the 2nd~~ ~~Claimant, and by extension, the 4th Claimant (as the ultimate beneficial owner of~~ ~~the 2nd Claimant), fiduciary duties and duties of good faith and loyalty.~~

14CA.  Subsequently, as further discussed at paragraphs 24B to 24E, from around July 2019 onward, the 4th Claimant delegated the 12th Defendant as his nominee to become responsible for the Huiyin Group's overseas primary market investment assets and/or business, which became known to the public as the 'DFG Platform', and in such connection, arranged for him to act as nominee director and shareholder of the 10th and 11th Defendants, and for him to be designated as the 'founder' and 'Chief Executive Officer' ("**CEO**") of the DFG Platform.  At all material times, the DFG Platform comprised of the 3rd, 4th, 9th, 10th, and 11th Defendants and their direct and indirect subsidiaries (i.e. Silvery Capital, Matrix, W3 FO and Assets Bay, hereinafter referred to as the "**Subsidiaries**"), and their underlying assets.

14CB.  At all material times, the 12th Defendant acted for and on behalf of the 4th Claimant as his nominee and agent in respect of the above roles, and to this end, reported to the 4th Claimant in the course of carrying out his tasks and/or duties in the above roles, with his performance being regularly assessed by the 4th Claimant. Consequently, at all material times, the 12th Defendant owed the 4th Claimant fiduciary duties (including duty to act in their best interests, and duties of good faith and loyalty, as well as a duty to act solely in accordance with the 4th Claimant's instruction and/or authorization.

14D.   The 12th Defendant is the 4th Claimant's agent, trustee and nominee in respect of the 10th and 11th Defendants' shares (and/or all rights and/or entitlements to their underlying assets), which the 12th Defendant holds on trust for

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

the 4th Claimant. The Claimants refer to paragraphs 45B and 45C below. ~~As such, the 12th Defendant is also the 4th Claimant's agent, trustee and nominee in respect of the assets held through the 10th and 11th Defendants.~~

~~15.    At all material times since the incorporation and/or acquisition of the Foreign Companies, all management decisions in relation to the assets, investments and operations of the Foreign Companies were made by or with the approval of the 4th Claimant, by the 4th Claimant himself, or through his stated proxies or agents on the 4th Claimant's instructions.~~

~~16.    The Claimants' claim is that the 1st and/or 2nd Defendants have in breach of trust, (a) wrongfully denied that the 4th Claimant is the ultimate beneficial owner of the Foreign Companies and the 10% Share in 2C; and (b) excluded or prevented the 4th Claimant from exercising his full rights in relation to his beneficial interests in the Foreign Companies, including the rights to manage and control all of the assets, investments and operations of the Foreign Companies and their subsidiaries and to instruct their respective officers to implement his decisions.~~

## II.    **BACKGROUND FACTS AS TO THE HUIYIN GROUP AND THE MANAGEMENT AND CUSTODY OF THE ASSETS**

17.    After the 4th Claimant completed his university studies in the PRC in 1989, he built a career focussed on primary market equity investment, secondary stock investment and real estate investment, among other things.

18.    In 1997 and 2001 respectively, the 4th Claimant established Shanghai Huiyin Investment Co., Ltd and the 2nd Claimant (collectively and together with all companies founded by and are beneficially owned by the 4th Claimant, the "**Huiyin**

**Group**"). The 4th Claimant became a very successful businessman and entrepreneur. When the first ranking of wealthy people in the PRC was published in the PRC by Sina Finance in 2003, the 4th Claimant was ranked 388th out of the 400 people on the list. Under the 4th Claimant's leadership, the Huiyin Group became one of the most influential investment firms in China, managing a broad portfolio of investments in industries such as medicine, information technology services, modern agriculture and tourism. From around 2016, the operations and business of Huiyin Group expanded into several other companies and businesses including the 1st and 3rd Claimants and the Foreign Companies.

**(A)     The 4th Claimant's Digital Assets**

(1)     Digital Assets

19.     In or around 2014, the 4th Claimant started to invest in cryptocurrencies with his personal resources. This turned out to be highly successful.

20.     Subsequently, in or around 2016, the 4th Claimant formed a team of employees from his various companies to help him with the day-to-day operation and administration of his Digital Assets, which had grown substantially since 2014. The day-to-day administration and operation of the 4th Claimant's Digital Assets entailed the carrying out of his investment and trading decisions given or made in the "primary" and "secondary" cryptocurrency markets. The "primary market" is the initial market for new cryptocurrencies, which is generally divided into private and public rounds. At this stage, the persons or entities embarking on a project to launch a new cryptocurrency would seek funding and investment. The parties to the project may sell tokens to specific investors including private equities through

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

multiple private rounds of offerings. They may also make initial coin offerings. Initial coin offerings are public offerings of a cryptocurrency, similar to initial public offerings in stocks. ~~is where blockchain companies conduct private fundraising prior to creating cryptocurrency tokens available to the public for the first time.~~ The "secondary market" is where previously issued cryptocurrencies are traded after they have been publicly made available for the first time.

21.    The 4th Claimant's Digital Assets, insofar as they related to Listed Tokens, had been held in Entrusted Digital Wallets. Some of the Entrusted Digital Wallets ~~a~~were registered to individuals who are the 4th Claimant's trustees and nominees or companies of which the 4th Claimant was and is the ultimate beneficial owner, and which had been under his control, including:

21.1.    the Binance Account, OKX Account and Gate.io Account, which ~~a~~were registered in the 1st Claimant's name;

21.2.    in respect of three (3) accounts with the Kraken cryptocurrency exchange which have held the 4th Claimant's Digital Assets:

(a)    one account with Kraken, which is registered in the 2nd Defendant's name, as the 4th Claimant's nominee. In or around 2016, pursuant to an oral agreement between the 2nd Defendant and the 4th Claimant, the 2nd Defendant agreed to hold this account and the Digital Assets therein on trust for the 4th Claimant;

(b)    another account with Kraken which is registered in the 4th Defendant's name. The 2nd Defendant holds all the shares in the 4th Defendant (and/or its underlying assets) on trust for the 4th Claimant

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

___

as his nominee and the 4th Claimant is the ultimate beneficial owner of the 4th Defendant. The 4th Claimant appointed Mr Zhang Hong, an employee within the Huiyin Group, to operate the Kraken account registered in the 4th Defendant's name; and

(c)     one other account with Kraken, which is registered in one Mr Zhang Xin's name ("Mr **Zhang X.**"), as the 4th Claimant's nominee. This account ~~i~~was held and operated on trust on behalf of the 4th Claimant. Mr Zhang X.~~in~~ was and is employed within one of the 4th Claimant's group of companies.

21.3.   Sun Liqun ("**Ms Sun**"), Cao Haibin, Zhang Beiyuan, Zeng Lixin, Yu Feng, Liu Jin ("**Mr Liu**"), Feng ~~Zhen~~ Jian, Zhang Xin, and Tang Chenhui ("**Employees**") were at all material times and are employees within the 4th Claimant's group of companies. The Employees at all material times held ~~hold~~ accounts on cryptocurrency exchange platforms operated by the 5th Defendant, the 7th Defendant, OKX and Huobi on trust for the 4th Claimant.

22.     The individuals that the 4th Claimant had appointed and authorised to help him in the holding, administration and operation of the Digital Assets were at all material times long-standing employees within his group of companies, including the 1st to 3rd Claimants. Initially, their appointment was done on an informal basis, without any written agreement. However, in or around 3 November 2021, following an incident involving the theft through a phishing scam of some of the Digital Assets (the "**Nov 21 Theft**"), the 4th Claimant decided to formalise written agreements with these individuals to clearly define their nominee and trust relationships as well as the scope of their duties and the 4th Claimant's rights in relation to his Digital

Assets.

23.     Consequently, in or around end December 2021, the 4th Claimant entered into an "*Authorisation to Operate Agreement*" ("**Authorisation Agreement**") with each of eight individuals, namely, Zhang Hong ("**Mr Zhang H.**"), Peng Jianfeng ("**Mr Peng**"), Lu Hexiang ("**Mr Lu**"), Lai Weiqing ("**Mr Lai**"), Yu Lu, Zhu Yanan, Su Ying and Luo Yan, who were assisting him with the administration and operation of his Digital Assets at that point in time (each, an "**Authorised Individual**"). The Authorisation Agreements set out the scope of each Authorised Individual's responsibilities in relation to the operation and administration of the 4th Claimant's Digital Assets. Each such agreement also clearly described the 4th Claimant's rights in respect of and ownership of the Digital Assets. In particular, the key terms provided for in these agreements entailed:

23.1.   acknowledgement that all rights and interests, including ownership, intellectual property rights, data rights, trade secret rights, and any other rights and interests related to the Digital Assets, belong to the 4th Claimant. Correspondingly, the Authorised Individual would accept that he did not have ownership, disposal rights, intellectual property rights, or any other rights and interests over the Digital Assets;

23.2.   each Authorised Individual's duties and powers being described, including the obligations to faithfully perform the duties of an agent, to strictly adhere to the 4th Claimant's authorizations, instructions, time limits, paths, methods, and to strictly comply with any "Trading Codes" and/or confidentiality terms set out in the Authorisation Agreement or its annexes to carry out the transaction operations entrusted to the Authorised

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~ ~~16 July 2024~~[•] 2025*

Individual; and

23.3.    each    Authorised    Individual    being    prohibited    from    stealing, misappropriating, violating usage provisions of the respective Authorisation Agreement, embezzling, illegally transferring, or gifting away the Digital Assets, temporarily or permanently storing, transferring in, or transferring out the Digital Assets (in whole or in part) to accounts or wallets other than as instructed by the 4th Claimant.

24.    On 29 September 2022, three of the initial eight Authorised Individuals (namely, Mr Lu, Mr Peng and Mr Lai) signed updated Authorisation Agreements. These updated agreements further delineated the Authorised Individuals' duties in relation to their operation and administration of the Digital Assets entrusted to them with greater specificity. On 29 November 2022, one of the initial eight Authorised Individuals renewed his Authorisation Agreement, with no further material updates to its terms. Even though the 1st, 2nd and/or 12th Defendants were employees of the Huiyin Group for reasons pleaded herein, due to the fact that they were the immediate family members of the 4th Defendant, he reposed a greater level of trust in them, and thus he did not put in place similar written authorisation agreements with them spelling out his beneficial ownership and control over the various Digital Assets held by or through them or the 3rd and/or 4th, and 10th and/or 11th Defendants (of which the 2nd and 12th Defendants served as nominee director and sole shareholder respectively acting ultimately on behalf of the 4th Claimant).

(2)    The 4th Claimant's employment

and the role of the 12th Defendant

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

24A.    Upon or around the 12th Defendant's graduation from Teachers College, Columbia University in New York, USA in 2016, the 4th Claimant brought the 12th Defendant into the Huiyin Group to work for him through the 4th Claimant's various companies and business relating to digital assets, including the 1st to 3rd Claimants and the Foreign Companies, in or around November 2016. Shortly before that, in around August 2016, the 4th Claimant began to move his businesses into active investments into cryptocurrency markets, after the 4th Claimant had experimented with such digital asset investments from 2014 – 2016 or thereabouts. Around the same time, December 2016, ~~T~~the Huiyin Group formally established a US$20 million blockchain venture capital fund known as the "**Huiyin Blockchain Venture**" in December 2016 to manage the 4th Claimant's investments into the blockchain and cryptocurrency industry.

24B.    The 12th Defendant was employed within the Huiyin Group to, among other things, assist with the 4th Claimant's primary market investments into digital assets. The 12th Defendant thereby gained experience and prominence in the cryptocurrency primary market as a result of opportunities provided to him by the 4th Claimant in the Huiyin Group and through his employment with the 2nd Claimant.

24C.   As the 12th Defendant became more confident and well known in the primary market, the 4th Claimant conferred on the 12th Defendant autonomy to decide on investments in projects in the primary market in or around December 2017, in accordance with the 4th Claimant's instructions on the general investment direction where the value of such investment is less than USD 1 million. However, for investments exceeding USD 1 million, the 12th Defendant was required to obtain the 4th Claimant's approval before proceeding with any such investment. Further,

the 12th Defendant was required to and did report to the 4th Claimant as regards primary market cryptocurrency project investments which had been entered into (such as the Project Investments listed in Tables 2 and 3 of **Annex C**), work deliverables communicated to the 12th Defendant by the 4th Claimant, meetings, verbal communications, post-investment management reports and other means.

24D.   The Huiyin Group achieved remarkable progress in the cryptocurrency market under the 4th Claimant's leadership and vision. From August 2018 to 2020, a "**DFG Platform**", involving several of Huiyin Group's overseas companies, including the 3rd, 4th, 9th, 10th and 11th Defendants (and their direct and indirect subsidiaries), was created to replace "~~H~~uiyin Blockchain Venture". The 12th Defendant gave a speech in 28 August 2018 where he acknowledged the successes of the Huiyin Group through the leadership of the 4th Claimant in investment and management of assets.

24E.   The 4th Claimant magnanimously believed that it would benefit the 12th Defendant's future development to allow him to take the credit and receive public recognition for being the "founder" and 'CEO' of the DFG Platform. Notwithstanding the 12th Defendant being allowed to become the "face" of the DFG Platform, the 4th Claimant remained in full and/or ultimate control of the strategic direction and/or actions taken by all companies within the DFG Platform. At all material times, the 12th Defendant remained subordinate to the 4th Claimant's instructions and directions. The 12th Defendant was also the 4th Claimant's agent and nominee in respect of the DFG Platform (and its underlying assets), and the 4th Claimant's trustee in respect of the shares of and assets held by or in the names of the 10th and 11th Defendants, and owed the 4th Claimant fiduciary duties in relation thereto

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

(including the duty to act in the best interests of the 4th Claimant and duty of good faith and loyalty), and a duty to exercise any power in respect of the DFG Platform and/or conduct its business and/or deal with its underlying assets solely for the ultimate benefit and/or purposes of the 4th Claimant, and/or solely with the 4th Claimant's instruction and/or authorisation).

### (3) ~~(2)~~ The 1st Defendant's administration and operation of the Digital Assets

25.    The 1st Defendant graduated from university in the USA in or around May 2020. The 4th Claimant arranged for the 1st Defendant to start employment and training in the 4th Claimant's various companies and businesses including the 1st to 3rd Claimants and the Foreign Companies, from or around July 2021.

26.    Mr Zhang Hong ("**Mr Zhang H.**") and Mr Peng ~~Jianfeng ("Peng")~~ were two of the eight Authorised Individuals who assisted the 4th Claimant with the administration and operation of his Digital Assets in or around 2017. They held the positions of "Token Transfer Manager" and "Token Transfer Officer" respectively.

27.    In or around 3 November 2021, after the Nov 21 Theft, Mr Zhang H. and Mr Peng were temporarily suspended from administering and operating the 4th Claimant's Digital Assets pending investigations and criminal proceedings in China relating to the Nov 21 Theft. Mr Zhang H. and Mr Peng were eventually exonerated from wrongdoing through the Chinese criminal process in February 2022.

28.    In reaction to the Nov 21 Theft, the 4th Claimant decided to appoint and entrust the 1st Defendant as his agent and trustee to administer and operate his Digital Assets that were previously handled by Mr Zhang H. and Mr Peng. The 1st Defendant's appointment was by way of an oral agreement made between the 4th

Claimant and the 1st Defendant in or around November 2021 (the "**D1 Oral Agreement**").

29.     Pursuant to the D1 Oral Agreement, it~~ ~~was also agreed that the 1st Defendant's remuneration would be 10,000 USD Coins ("**USDC**") (a type of cryptocurrency token) per month, with any additional remuneration to be agreed upon on an ad- hoc basis. <u>As the 1st Defendant was the only person that the 4th Claimant had entrusted to carry out token transfer at that time, i</u>~~I~~t was further agreed that the 1st Defendant could unilaterally withdraw her remuneration from the 4th Claimant's Digital Assets. <u>It was also agreed that in consideration of the D1 Oral Agreement, the 1st Defendant would not need to return a sum of RMB 2.2 million which she had received from the 4th Claimant in 2016.</u>

30.     The D1 Oral Agreement was also to the effect that as part of the 1st Defendant's duties in administering and operating the 4th Claimant's Digital Assets, the 1st Defendant would be responsible for executing token transfers of the Digital Assets in the Entrusted Digital Wallets in accordance with the 4th Claimant's instructions. To facilitate this, in or around November <u>to December</u> 2021, the 4th Claimant arranged for the 1st Defendant to receive all necessary means and credentials (including all usernames, passwords, codes, security keys, *etc.*) to access and operate his Entrusted Digital Wallets at that time from <u>Mr </u>Zhang<u> H.</u> and <u>Mr </u>Peng. A list of addresses of the Entrusted Digital Wallets that were formerly handled by <u>Mr </u>Zhang<u> H.</u> and <u>Mr </u>Peng and <u>gradually</u> put under the 1st Defendant's administration and operation from or around November 2021 is set out in a statement signed by <u>Mr </u>Peng dated 31 January 2024.

31.     From <u>after</u> November 2021, the number of Entrusted Digital Wallets

expanded to include ~~the N~~new ~~D~~digital ~~W~~wallets which the 4th Claimant had instructed the 1st Defendant to create ~~("**New Digital Wallets**")~~. The New Digital Wallets were amongst other things, created to hold returns from the 4th Claimant's investments in primary market cryptocurrency projects, ultimately for and on behalf of the 4th Claimant. The returns on investments in these primary market cryptocurrency projects were paid out by way of cryptocurrency tokens, i.e. the Newly Listed Tokens, into the New Digital Wallets.

32.    However, while the 4th Claimant had entrusted the 1st Defendant with the creation, operation and administration of the New Digital Wallets, the 4th Claimant did not require the 1st Defendant to provide him with the full operating means and details of these New Digital Wallets, including the login credentials and security keys. Consequently, the 4th Claimant does not have such information, the full details of which ~~a~~were only known to the 1st Defendant. A list of addresses of the known Entrusted Digital Wallets which the 1st Defendant administered and operated as of 6 December 2023 is at **Annex A**, updated as at 6 May 2024. A list of the Claimants' Digital Assets entrusted to and within the control or custody of the 1st Defendant, acting for and on behalf of the Claimants, as of 6 December 2023 (to the best of the Claimants' knowledge and records) is set out in **Annex C**, with their total estimated value (as of 19 February 2024) being approximately USD 192.3 million. Subject to discovery and further particulars from the Defendants, the Claimants reserve their rights to amend and/or supplement **Annex A and Annex C**.

33.    ~~From~~ After November 2021, there were two separate teams assisting the 4th Claimant with the administration and operation of his Digital Assets. These

comprised: (a) the "Trading Team", headed by ~~one Mr Lu Hexiang ("**Lu**")~~Mr Lu, who is an Authorised Individual; and (b) a "Token Transfer Team", headed by the 1st Defendant. The Token Transfer team was responsible for carrying out transfers of the Digital Assets to cryptocurrency wallets/ accounts in accordance with the 4th Claimant's instructions. The Trading Team was responsible for carrying out trades of cryptocurrencies on the secondary market based on the 4th Claimant's instructions and decisions.

34.      To facilitate communication and workflow between the two teams, various Telegram Group Chats were created (in addition to bilateral Telegram chats in which the 4th Claimant communicated with the persons involved). The 4th Claimant would give his instructions in relation to the administration and operation of his Digital Assets in these Telegram bilateral or Group Chats or orally. However, these Telegram Group Chats, and the 1st Defendant's bilateral chat records with the 4th Claimant, have since been unilaterally deleted by the 1st Defendant in or around December 2023.

35.      From February 2022, the 1st Defendant was assisted by Mr Peng in respect of transfers of Digital Assets in the primary market. Mr Peng was authorised to access some of the Entrusted Digital Wallets to administer and operate the part of the Digital Assets in the primary market. The 1st Defendant was entrusted with sole access to administer and operate the 4th Claimant's Digital Assets on the secondary market.

36.      From November 2021 to at least up until 23 August 2023, the 1st Defendant carried out her trust and/or fiduciary duties in respect of the administration and operation of the Digital Assets under the Oral Agreement on the following bases:

36.1.   the 1st Defendant was accorded powers of administration and operation of cryptocurrency token transfers with respect to the Digital Assets in accordance with the 4th Claimant's instructions exclusively;

36.2.   all rights and interests, including ownership, intellectual property rights, trade secret rights and any other interests in respect of the Digital Assets entrusted to the 1st Defendant ultimately belonged to the 4th Claimant; ~~and~~

36.3.   the 1st Defendant was not entitled to make any unauthorised use of the Digital Assets, including transacting, transferring, disposing of or making any dealings of any sort with respect to the Digital Assets without the 4th Claimant's instructions; and~~.~~

36.4.   the 1st Defendant was to report to the 4th Claimant on the status of investments and Digital ~~a~~Assets that she was involved in. In particular, she was to report on the quantum of Digital Assets held whether in private wallets or in exchange accounts, and to inform the 4th Claimant whenever transactions which he had instructed her to carry out, were completed (and the balance of Digital Assets upon such completion). The 1st Defendant was also to provide reports to the 4th Claimant as regards the Project Investments, the most recent of which that the 4th Claimant has been able to recover is dated 23 August 2023 (and the Project Investments reported therein have been set out in **Annex C**, Table 2).

37.   By way of illustration, ~~O~~on or around 23 August 2023, the 1st Defendant provided the 4th Claimant with a report on an overview of his Digital Assets (as at or around 23 August 2023) that were listed on cryptocurrency exchanges and which were administered and operated by her in accordance with the 4th Claimant's

instructions (the "**23.8.2023 Report**"). The types of tokens, approximate number of each type of token reported by the 1st Defendant and estimated market values as of 23 August 2023 are at **Annex B**. As of 23 August 2023, the eight (8) types of cryptocurrencies listed in the 23.8.2023 Report amounted in value to about USD 67,088,484.01. However, the 23.8.2023 Report does not account for all of the 4th Claimant's Digital Assets as of that date.

37A.    Pursuant to the D1 Oral Agreement, and/or by reason of the trust and confidence reposed in the 1st Defendant and the authority vested in her by the 4th Claimant acting for himself and the other Claimants, to manage such Digital Assets beneficially owned by him as *de facto* treasurer, as detailed above, the 1st Defendant owed fiduciary duties to the Claimants, and/or acted as trustee over the Digital Assets for the Claimants, and was to exercise her powers to deal with such Digital Assets solely for the ultimate benefit and/or purposes of the Claimants, and/or solely with the 4th Claimant's instruction and/or authorisation. The 1st Defendant was similarly designated the *de facto* treasurer in respect of the fiat Non-Digital Assets beneficially belonging to the 4th Claimant, as further elaborated upon at paragraph 46.4 below.

**(B)**        **The Foreign Companies, and the 2nd Claimant, and the Non-Digital Assets**

(i) The 2nd Claimant, Shanghai Huiyin Group Co. Ltd

38.    The 1st Claimant is wholly owned by the 2nd Claimant. The 2nd Claimant was incorporated in 2001 by the 4th Claimant. At the time of the 2nd Claimant's incorporation in 2001, its shares were held by the following parties in the

proportions as detailed below:

38.1.   the 4th Claimant held 57.1% of the 2nd Claimant's shares;

38.2.   the 4th Claimant's mother, Ms Zhuang Lihua ("**Ms Zhuang**"), held 33.5%

of the 2nd Claimant's shares; and

38.3.   another company within the 4th Claimant's group of companies,

Shanghai Huiyin Investment Limited Co. ("**Huiyin Investment**"), held

9.4% of the 2nd Claimant's shares.

39.   Ms Zhuang and Huiyin Investment held the shares in the 2nd Claimant on

behalf of the 4th Claimant. The 4th Claimant is the true owner of all the shares in

the 2nd Claimant since its incorporation.

40.   Subsequently, as Ms Zhuang grew more advanced in age and suffered

from ailing health, the 4th Claimant decided to have the 2nd Defendant hold some

of his shares in the 2nd Claimant, instead of Ms Zhuang. Therefore, in or around

20~~20~~01, the 4th Claimant orally requested the 2nd Defendant to hold the 10% Share

in 2C as his nominee, on trust. The 2nd Defendant acceded to the 4th Claimant's

request to act as his trustee and nominee in respect of the 10% Shares in 2C ("**2C**

**Agreement**"). Pursuant to the 2C Agreement, the 4th Claimant and the 2nd

Defendant have held 90% and 10% of the shares in the 2nd Claimant respectively,

from July 2015~~2021~~ onwards.

41.   While the 2nd Defendant was recorded in the 2nd Claimant's Constitution

dated 10 November 20~~20~~01 ~~to have~~ as having injected funds totalling RMB 50

million into the 2nd Claimant between 20 July 2001 to 31 May 2017, the 2nd

Defendant had not in fact done so. Pursuant to the 2C Agreement, the 2nd

Defendant was never required to, and had in fact never injected any funds of her own into the 2nd Claimant. Any and all funds which have been recorded to have been injected into the 2nd Claimant by the 2nd Defendant had originated from the 4th Claimant.

42.    By reason of the facts set out at paragraphs 38 to 41 above, the 2nd Claimant is also wholly owned by the 4th Claimant.

### (ii) The 3rd Defendant, Digital Finance Group Company

43.    The 3rd Defendant was incorporated on 21 June 20183 pursuant to the 4th Claimant's instructions. The 3rd Defendant was originally intended to operate as a holding company for the Huiyin Group's (and ultimately, the 4th Claimant's) overseas assets and investments. The 4th Claimant is the ultimate beneficial owner of the 3rd Defendant (and the underlying assets held through it and/or in its name).

43.1.    In or around May 2018, the 4th Claimant instructed his agents, Mr He Bingyu ("**Mr He**") and Ms Shi Xiaohong ("**Ms Shi**"), to liaise with corporate services providers, Richful Deyong International Business (China) Limited, regarding the incorporation of the 3rd Defendant in the Cayman Islands.

43.2.    The 4th Claimant entered into an oral agreement with the 2nd Defendant that the 2nd Defendant would hold all the shares in the 3rd Defendant, and along with the 3rd Defendant, would hold all rights and/or entitlements to the underlying assets held through it and/or in its name, on trust for the 4th Claimant (the "**DFG Agreement**").

*Particulars*

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

(a)    In or around May 2018, the 4th Claimant requested the 2nd Defendant to hold all the shares in the 3rd Defendant, and along with the 3rd Defendant, the rights and/or entitlements to the underlying assets held through it and/or in its name, on trust for him, as the ultimate beneficial owner of these shares and assets, and for her to be registered and to act as the nominal director and shareholder of the 3rd Defendant. The 2nd Defendant agreed in her personal capacity, and on behalf of the 3rd Defendant as its intended nominal sole director and nominal sole shareholder.

(b)    In reliance on and in accordance with the DFG Agreement, in or around May 2018, the 4th Claimant instructed Mr He and Ms Shi to make the necessary arrangements to register the 2nd Defendant as the nominal sole shareholder and director of the 3rd Defendant.

(c)    As part of the DFG Agreement, the 2nd Defendant also agreed that she was only to act in respect of the 3rd Defendant in accordance with the 4th Claimant's instructions and to execute such corporate documents as she might be directed by the 4th Claimant to sign from time to time. The 2nd Defendant was therefore never involved in the actual management of the 3rd Defendant and/or the underlying assets held through it and/or in its name.

(d)    By reason of the DFG Agreement, the 2nd and/or 3rd Defendants acted as trustees for and owed fiduciary duties to the 4th Claimant, including amongst others a duty to act in the 4th Claimant's best interests, duties of good faith and loyalty, and a duty to exercise of

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

her powers as nominal sole director and nominal sole shareholder of the 3rd Defendant only in his best interests and/or accordance with his instructions and/or authorisation.

43.3.   The 4th Claimant provided the instructions and all necessary funding for the incorporation of the 3rd Defendant, through his proxies or agents, which included the 2nd and 3rd Claimants.

43.4    Insofar as the affairs and operations of the Foreign Companies and the Subsidiaries and the 12th Defendant's role in relation thereto are concerned, ~~The~~ the Claimants refer to and repeat paragraphs 14CA, 14CB, 24D and 24E above. The 4th Claimant and the 12th Defendant had agreed between them that the 12th Defendant would be permitted to be held out as the public face of the DFG Platform (which included the Foreign Companies and the Subsidiaries) ~~as well as the 3rd Defendant~~. This was on the express agreement between the 4th Claimant and the 12th Defendant, or alternatively, the understanding that the DFG Platform ~~and 3rd Defendant~~ would be managed and operated by the 12th Defendant as the 4th Claimant's agent, whereby he would be subject to the authorisation, instructions and directions of the 4th Claimant ("**DFG W~~Q~~J Agreement**"). Consequently, the 12th Defendant was permitted to be known as the "founder" of the DFG Platform and the ~~Chief Executive Office~~CEO of the 3rd Defendant. The 12th Defendant thereby owe~~ds~~ to the 4th Claimant fiduciary duties and duties of good faith and loyalty.

43.5    Quite apart from the 12th Defendant, from 2018 onwards, the 4th Claimant had also procured the services of one Mr Terence John Culver ("**Mr**

**Culver**"), to work with the 1st and 12th Defendants to manage and operate the businesses and assets of the DFG Platform (which comprised the Foreign Companies and the Subsidiaries, and/or the underlying assets held by or through them), subject to the instructions, directions, and/or authorisation of the 4th Claimant, as further detailed in paragraph 46 below. Amongst others, due to restrictions on the trading of U.S. securities, the 4th Claimant delegated to Mr Culver the task of managing and trading with the securities assets in the 3rd and 4th Defendants' Fidelity accounts, on the 4th Claimant's behalf and subject to his instruction, direction, and/or authorisation. For this purpose (and as further detailed at paragraphs 46.2 to 46.3 below):

(a) from August 2018 to February 2022, Mr Culver was employed by Best Wisdom Technology, LLC ("**BWTL**") as its CEO. BWTL (which has since been shut down), was a company which the 4th Claimant ultimately beneficially owned in the U.S., with the shares in BWTL held at all material times by the 4th Claimant's nominees and Huiyin Group employees, Mr Hou Tuanzhang and Ms Yin Lina;

(b) from 1 April 2022 onwards, Mr Culver was employed by the 3rd Defendant as its Executive Director;

(c) concurrently, from 1 September 2020 onwards, Mr Culver was also employed as the Senior Executive Officer ("**SEO**") of Matrix, a Subsidiary of the 4th Defendant;

(d) when the 4th Claimant invited Mr Culver to join the Huiyin Group in 2018, he offered Mr Culver a yearly salary of USD 800,000 (i.e. USD

66,667 per month), and a biannual performance-related bonus pegged at a base of USD 100,000. From such point onwards, Mr Culver's salaries and bonuses were at all material times funded indirectly and decided by the 4th Claimant, although from September 2020 onwards, at Mr Culver's request, Mr Culver was employed through Ruby Moriarty, LLC, a Delaware-incorporated company which he had informed the Claimants was beneficially owned by him.

43A.  The 3rd Defendant held the following Non Digital ~~a~~Assets as at 29 November 2023 for and on behalf of the 4th Claimant as its sole ultimate beneficial owner. It was the 4th Claimant who had provided the 3rd Defendant with the funds to acquire these assets, through his agents, companies and proxies (with further particulars thereof set out in paragraphs 44A to 44C below)~~.~~:-

(a)    Securities in the form of 4,186,078 units of Grayscale Bitcoin Trust ETF ("**GBTC**"), 998,136 units of Grayscale Ethereum Trust ("**ETHE**") and cash ~~of~~ (USD) ~~4,082,441~~ held with Fidelity worth 150,753,172 USD in total as at 29 November 2023. In or around 10 June 2024, the assets held by the 3rd Defendant with Fidelity Brokerage Services LLC and/or its affiliates ("**Fidelity**") as at 29 November 2023 was worth about 296,575,380 USD in total. ~~Pending discovery from the Defendants, the Claimants are unable to provide "Fidelity"'s exact legal name as all records of such Fidelity accounts are in the 1st to 4th and/or 9th to 121th Defendants' possession.~~

(b)    Accounts receivables of ~~38 million~~37,907,447 USD from Genesis Global Capital LLC and proceeds thereof; ~~and~~

(c)    Investments in various companies totalling about USD 12.15 million

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

(including~~of~~ about 1 million USD into Digital Future Alliance Limited, 500,000 USD into Open Relay and 6.9 million USD into Ledger SAS), and returns thereon.

(d)     investments assigned to the 3rd Defendant by Orient Space Pte Ltd, into the following companies (amongst others) and returns thereon - Ethernode LLC; Monetization Solutions Inc, Cryzen LLC, Slips Entertainment Inc, Button Blockchain Technologies Inc, Helios Classic Limited, Pulse Agent Inc, SALDO Inc, Second State Inc, Onesmart Technology SA de CB, W3 Engineers Ltd, and VREX LAB Co., Ltd.

43AA.  The 3rd Defendant additionally maintained and mains accounts in its name with Morgan Stanley, FV Bank and Summit National Bank, with BlockFi, and with Kraken and Binance exchanges, and held and holds such accounts and all the underlying assets therein, for and on behalf of and on trust for the Claimants.

### (iii) The 4th Defendant, Smart River Investments Limited

44.     The 4th Defendant was acquired by the 4th Claimant on 13 May 2009. The 4th Claimant is the ultimate beneficial owner of the 4th Defendant (and the underlying assets held through it and/or in its name).

44.1.   In or around early 2009, the 4th Claimant instructed his agent, one Mr Liu Jin, to commence negotiations regarding the acquisition of the 4th Defendant.

44.2.   The 4th Claimant entered into an oral agreement with the 2nd Defendant that the 2nd Defendant would hold all the shares in the 4th Defendant and along

with the 4th Defendant, would hold all rights and/or entitlements to the underlying assets held in its name of or through it, on trust for the 4th Claimant (the "**SRIL Agreement**").

<u>*Particulars*</u>

(a)     In or around April or May 2009, the 4th Claimant requested the 2nd Defendant to hold all the shares in the 4th Defendant, and along with the 3rd Defendant, the rights and/or entitlements to the underlying assets held through it and/or in its name, on trust for him, as the ultimate beneficial owner of these shares and assets, and for her to be registered and to act as the nominal director and shareholder of the 4th Defendant. The 2nd Defendant agreed in her personal capacity and on behalf of the 4th Defendant as its intended nominal sole director and nominal sole shareholder.

(b)     In reliance on and in accordance with the SRIL Agreement, in or around April or May 2009, the 4th Claimant informed his agent, one Mr Zeng Lixin, to make the necessary arrangements to register the 2nd Defendant as the nominal sole shareholder and director of the 4th Defendant as part of the acquisition process.

(c~~d~~)     As part of the SRIL Agreement, the 2nd Defendant also agreed that she was only to act in respect of the 4th Defendant in accordance with the 4th Claimant's instructions and to execute such corporate documents as she might be directed by the 4th Claimant to sign from time to time. The 2nd Defendant was therefore never involved in the actual management of the 4th Defendant, and/or the underlying

assets held in the name of and/or through it.

(d)     By reason of the SRIL Agreement, the 2nd and/or 4th Defendants owed fiduciary duties to the 4th Claimant, including amongst others a duty to act in his best interests, duties of good faith and loyalty, and a duty to exercise her powers as nominal sole director and nominal sole shareholder of the 4th Defendant only in his best interests and/or solely in accordance with his instructions and/or authorisation.

(e)     Paragraphs 43.2 to 43.5 above are repeated.

44.3.   The 4th Claimant provided the instructions and all necessary funding for the acquisition of the 4th Defendant, through his proxies or agents, which included the 2nd and 3rd Claimants.

44A.   The 4th Defendant held the following assets as at 29 November 2023 for and on behalf of the 4th Claimant as its sole ultimate beneficial owner. It was the 4th Claimant, who had provided the 4th Defendant with the funds to acquire these assets, through his agents, companies and proxies.

(a)     Securities in the form of 963,922 units of GBTC held with Fidelity and cash of about 472,361 (USD), totalling USD 30,373,221.08 as at 29 November 2023. The assets held by the 4th Defendant in its Fidelity account as at 29 November 2023 is worth about 59,975,266 USD in total on or around 10 June 2024;

(b)     Investments in company equity totalling about USD 22,396,000 19.4 million, including (amongst others) in Coinlist, 3iQ, Fintech Holdings, LLC ("**FV**

**Bank**"), Atlas, ChainSafe, Bloq,Inc., and Circle Internet Financial Limited, and the returns thereon; ~~and~~

(c)    All of the 10,000 shares in Silvery Capital and all of the shares in Matrix (whose registered capital was USD 23,600,000), as well as their underlying assets; ~~Holding Company ("~~**~~Silvery Capital~~**~~"), a company incorporated in the Abu Dhabi. Silvery Capital wholly owns Matrix Limited, which is another company incorporated in the Abu Dhabi. Matrix Limited has a registered capital of 23,600,000 USD.~~

(d)    Bank accounts maintained with United Overseas Bank Singapore ("**UOB Singapore**"), Credit Agricole, and FV Bank. In particular, the UOB Singapore and Credit Agricole bank accounts in the 4th Defendant's name were also linked with bank accounts with the aforementioned banks in the 2nd Defendant's name;

(e)    A securities account maintained with Morgan Stanley; and

(f)    An account with Kraken exchange.

44B.    Specifically as to the assets maintained in accounts with Fidelity in the names of the 3rd and 4th Defendants, the acquisition of such assets was carried out using funds primarily derived from two investments projects involving Ledger Holdings Inc. ("**LedgerX**"), and Genesis Global Capital LLC ("**Genesis**"), which in turn were originally funded by the 4th Claimant through the Huiyin Group, with such investments having been carried out at the 4th Claimant's instructions:

*LedgerX*:

(a)   In or around 2016, the 4th Claimant made the decision for the Huiyin Group to invest an aggregate amount of about USD 13.5 million in LedgerX. To this end, in December 2016, the 4th Claimant arranged for USD 10.2 million to be deposited into the 4th Defendant's Credit Suisse bank account (which has since been closed). Subsequently, in 2017, the 4th Claimant also arranged for a further RMB 22 million (approximately USD 3.3 million at the time) to be transferred to the 2nd Defendant's Credit Suisse bank account (which has since been closed), with instructions that it be transferred to the 4th Defendant for further investments into LedgerX. Pursuant to this instruction, USD 13,556,703 was invested into LedgerX and the 4th Defendant acquired LedgerX Series B and Series C Preference Shares, and convertible bonds in return.

(b)   In or around September 2021, FTX.US finalised its acquisition of LedgerX, and the LedgerX shares held by the 4th Defendant were sold. As a result of this, in or around September 2021 and September 2022, about USD 72.8 million (including certain director's allowances) was received by the 4th Defendant (the "**LedgerX Proceeds**"). The LedgerX Proceeds were deposited into the 4th Defendant's Silvergate bank account (which has since been closed). The LedgerX proceeds were then further distributed between the 3rd and 4th Defendants, and applied amongst others as follows:

   (i)   to fund the 3rd and 4th Defendants' respective Fidelity securities accounts, which the 4th Claimant had instructed Mr Culver to set up on the 4th Claimant's behalf in December 2020; and

   (ii)   USD 38 million to the 9th Defendant to facilitate the funding of its

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

---

and/or its Subsidiaries' investments and/or activities (as to which see paragraph 45A below).

(c)     In or around December 2021 and May 2022, the 4th Claimant instructed the 1st Defendant to transfer USD 10 million each (i.e. a total of USD 20 million) of the LedgerX Proceeds from the 4th Defendant's Silvergate bank account to the 3rd Defendant's Silvergate bank account (which has since been closed), and to then transfer the USD 10 million each on two occasions (i.e. a total of USD 20 million) to the 3rd Defendant's Fidelity account. The 4th Claimant then instructed Mr Culver to purchase assets with this sum under the 3rd Defendant's Fidelity account (see, sub-paragraph (e) below).

(d)     In or around September 2022, the 4th Claimant had instructed the 1st Defendant to transfer USD 10 million of the LedgerX proceeds from the 4th Defendant's Silvergate bank account to the 4th Defendant's Fidelity account. The 4th Claimant then instructed Mr Culver to use the funds to purchase the 963,922 units of GBTC in the 4th Defendant's Fidelity account.

*Genesis*:

(e)     In or around May 2022, the 4th Claimant had caused 70 million USDC which beneficially belonged to him to be staked with Genesis, in consideration for a loan of USD 70 million by Genesis, which proceeds were first deposited into the 3rd Defendant's account maintained with Genesis, at the 4th Claimant's instructions, and then subsequently into the 3rd Defendant's Fidelity account (to which the 4th Claimant had also instructed the transfer of USD 20 million of the LedgerX Proceeds: see, sub-paragraph (c) above). The 4th Claimant then instructed Mr Culver to use the funds to purchase the

4,186,078 units of GBTC and 998,136 units of ETHE under the 3rd Defendant's Fidelity account.

44C.    The 3rd and 4th Defendants' Fidelity accounts were, prior to December 2023, managed on the instructions of the 4th Claimant. In particular, there had been Telegram group chats in which the 1st and 12th Defendants, Mr Culver, and the 4th Claimant participated, wherein the 4th Claimant would give his instructions regarding trades to be made under the Fidelity accounts, and Mr Culver would report on trade settlements and the status of the Fidelity accounts and the Non-Digital Assets maintained therein to the 4th Claimant (the "**Fidelity Group Chats**"). As recently as 29 November 2023, Mr Culver also provided a report of the GBTC and ETHE contained in the said Fidelity accounts to the 4th Claimant in a bilateral Telegram chat between them.

### (iv) The 9th Defendant, W3 Cap Holding Co., Ltd

45.    The 9th Defendant was incorporated by the 4th Claimant on 24 November 2021. The 4th Claimant is the ultimate beneficial owner of the 9th Defendant.

45.1.    In or around September 2021, the 4th Claimant instructed the 1st Defendant to incorporate the 9th Defendant in the British Virgin Islands.

45.2.    The 4th Claimant entered into an oral agreement with the 2nd Defendant that the 2nd Defendant would hold all the shares in the 9th Defendant, and along with the 9th Defendant, would hold the rights and/or entitlements to the underlying assets held through it and/or in its name, on trust for the 4th Claimant (the "**W3 Holding Agreement**").

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

*Particulars*

(a)   In or around September 2021, the 4th Claimant requested the 2nd Defendant to hold all the shares in the 9th Defendant, and along with the 9th Defendant, the rights and/or entitlements to the underlying assets held through and/or in its name on trust for him, as the ultimate beneficial owner of these shares and assets, and for her to be registered and act as the nominal director and shareholder of the 9th Defendant. The 2nd Defendant agreed in her personal capacity, and on behalf of the 9th Defendant in her capacity as its intended nominal sole director and nominal sole shareholder.

(b)   In reliance on and in accordance with the W3 Holding Agreement, in or around September 2021, the 4th Claimant instructed the 1st Defendant to make the necessary arrangements to register the 2nd Defendant as the nominal sole shareholder and director of the 9th Defendant.

(c)   As part of the W3 Holding Agreement, the 2nd Defendant also agreed that she was only to act in respect of the 9th Defendant in accordance with the 4th Claimant's instructions and to execute such corporate documents as she might be directed by the 4th Claimant to sign from time to time. The 2nd Defendant was therefore never involved in the actual management of the 9th Defendant.

(d)   By reason of the W3 Holding Agreement, the 2nd and/or 9th Defendants owed fiduciary duties to the 4th Claimant, including amongst others a duty to act in his best interests, duties of loyalty

and good faith, and a duty to exercise of her powers as nominal sole director and nominal sole shareholder of the 9th Defendant solely in his best interests and/or solely in accordance with his instructions and/or authorisation.

45.3.    The 4th Claimant provided the instructions and all necessary funding for the incorporation of the 9th Defendant, through his proxies or agents, which included the 2nd and 3rd Claimants.

45A.    The 9th Defendant held the following assets as at 29 November 2023, for and on behalf of the 4th Claimant as the sole ultimate beneficial owner. It was the 4th Claimant, who had provided the funds for the 9th Defendant to acquire these assets, through his agents, companies and proxies.

(a)    100% of shares in W3 FO ~~Capital Pte Ltd~~, a company incorporated in Singapore, and the underlying assets held through it and/or in its name (including amongst others a bank account maintained by W3 FO with UOB Singapore); and

(b)    Assets Bay and the underlying assets held through and/or in its name, which as last known included ~~Investments Limited ("**Assets Bay**"), a company incorporated in the British Virgin Island. Assets Bay holds the United Overseas Bank Singapore ("**UOB Singapore**")~~, its paid-in capital of approximately USD 38.2 million, which included cash deposits of USD 32 million (which comprised of USD 5 million in a bank account with Credit Agricole and USD 27 million in bank accounts with UOB Singapore and Indosuez Wealth Management), and 100,000 shares in Coinbase Global,

Inc., which shares it had acquired for 6 million USD.

### (v) The 10th Defendant, Create Fortune Pte. Ltd.

45B.   The 10th Defendant was incorporated on 15 December 2017. The 4th Claimant is the ultimate beneficial owner of the 10th Defendant. The 4th Claimant entered into an oral agreement with the 12th Defendant in or around November 2017, for the 12th Defendant to hold all the shares in the 10th Defendant, and along with the 10th Defendant, to hold the rights and/or entitlements to the underlying assets held through it and/or in its name, on trust for the 4th Claimant (the "**Create Fortune Agreement**").

(a)    In or around November 2017, the 4th Claimant informed the 12th Defendant that it was necessary for development of the blockchain and digital currency business to incorporate the 10th Defendant in Singapore. The 4th Claimant requested the 12th Defendant to hold all the shares in the 10th Defendant, and along with the 10th Defendant, to hold the rights and/or entitlements to the underlying assets held through and/or in its name, on trust for him, as the ultimate beneficial owner of these shares and assets, and for the 12th Defendant to be registered and to act as the nominal director and shareholder of the 10th Defendant. The 12th Defendant agreed in his personal capacity, and on behalf of the 10th Defendant in his capacity as its intended nominal sole director and nominal sole shareholder.

(b)    In reliance on and in accordance with the Create Fortune Agreement, in or around November 2017, the 4th Claimant instructed his agents, Mr He and Ms Chen Xiaojie ("**Ms Chen**"), to make the necessary arrangements to

incorporate the 10th Defendant and to register the 12th Defendant as the nominal sole shareholder and director of the 10th Defendant, as part of the incorporation process.

(c)    As part of the Create Fortune Agreement, the 12th Defendant also agreed that (a) he was only to act in respect of the 10th Defendant in accordance with the 4th Claimant's instructions, save for any investments made through the 10th Defendant into primary market projects which were of less than 1 million USD, in accordance with the 4th Claimant's directions as to the general investment strategy; and (b) he was to provide regular reports (whether verbally or in writing) on the performance of the 10th Defendant to the 4th Claimant and as and when the 4th Claimant requires. Paragraphs 43.4 and 43.5 above are repeated.

(d)    The 4th Claimant provided the instructions and all necessary funding for the incorporation of the 10th Defendant, through his proxies or agents, which included the 2nd and 3rd Claimants.

(e)    The 10th Defendant was mainly used for the 4th Claimant's investments into shares in the primary markets.

(f)    ~~Specifically, b~~Between 1 April 2021 to 18 October 2022 (both dates inclusive), the 10th Defendant invested USD 2,001,640~~ million~~ into various projects, including Bitquery, Inc, FV Bank and Ngrave. It was the 4th Claimant who provided the funds which the 10th Defendant used to make investments through his agents, companies and proxies.

(g)    Apart from such investments, the 10th Defendant at all material times

maintained assets in an account with UOB Singapore which as of 3 July 2023 contained USD 1,366,376.54 in deposits. To this end, Ms Sun ~~Liqun ("Ms Sun") – one of the Employees –~~ had been the 10th Defendant's treasurer since the beginning of 2019. From March 2019, the 4th Claimant instructed and authorised Ms Sun to operate the 10th Defendant's ~~UOB Singapore bank~~ said account's internet payment systems. On 20 December 2023, Ms Sun discovered that her password for accessing the 10th Defendant's UOB Singapore bank account has been changed without her and the 4th Claimant's knowledge ~~and~~as a result of which she and the 4th Claimant ~~was~~ have been unable to access 10th Defendant's UOB Singapore bank account since.

(h)     By reason of the foregoing, the 10th and 12th Defendants owed the 4th Claimant fiduciary duties, the 12th Defendant held the shares in the 10th Defendant and/or the rights and/or entitlements to the underlying assets held by it or in its name on trust for the 4th Claimant, and the 10th Defendant held its underlying assets on trust for the 4th Claimant.

45BA.  The abovementioned underlying Assets which were held in the name of the 10th Defendant, and which were held by it and the 12th Defendant on trust for the 4th Claimant, includes the Non-Digital Assets listed in the row corresponding to the 10th Defendant in **Annex E**.

        (vi)     The 11th Defendant, Jumbo Access Investments Limited

45C.  The 11th Defendant was incorporated on 1 November 2017. The 4th Claimant is the ultimate beneficial owner of the 11th Defendant. The 4th Claimant

entered into an oral agreement with the 12th Defendant that the 12th Defendant would hold all the shares in the 11th Defendant and, along with the 11th Defendant, would hold the rights and/or entitlements to the underlying assets held in its name and/or through it, on trust for the 4th Claimant (the "**Jumbo Agreement**").

(a)    In or around October 2017, the 4th Claimant informed the 12th Defendant that it was necessary for the development of his blockchain and digital currency business to incorporate the 11th Defendant in the British Virgin Islands. The 4th Claimant requested that the 12th Defendant holds all the shares in the 11th Defendant and, along with the 11th Defendant, the rights and/or entitlements to the underlying assets held in its name and/or through it on trust for him, as the ultimate beneficial owner of these shares and assets, and for the 12th Defendant to be registered and to act as the nominal director and shareholder of the 11th Defendant. The 12th Defendant agreed in his personal capacity and on behalf of the 11th Defendant as its intended nominal sole director and nominal sole shareholder.

(b)    In reliance on and in accordance with the Jumbo Agreement, in or around October 2017, the 4th Claimant instructed his agent, Mr He and Ms Shi to make the necessary arrangements to incorporate the 11th Defendant and to register the 12th Defendant as the nominal sole shareholder and director of the 11th Defendant, as part of the incorporation process.

(c)    As part of the Jumbo Agreement, the 12th Defendant also agreed that (a) he was only to act in respect of the 11th Defendant in accordance with the 4th Claimant's instructions, save for any investments made through the 11th Defendant into primary market projects which were less than 1 million USD

pursuant to the general strategy and direction of investments decided by the 4th Claimant; and (b) he was to provide regular reports (whether verbally or in writing) on the performance of the 11th Defendant to the 4th Claimant and as and when the 4th Claimant requires. Paragraphs 43.4 and 43.5 above are repeated.

(d)    The 4th Claimant provided the instructions and all necessary funding for the incorporation of the 11th Defendant, through his proxies or agents, which included the 2nd and 3rd Claimants.

(e)    The 11th Defendant was mainly used for the 4th Claimants' investments into the primary market for digital currencies, using funds provided by the 4th Claimant.

(f)    As the 12th Defendant had not submitted written reports of the 11th Defendant's performance and asset holdings to the 4th Defendant on a regular basis, until discovery and fuller disclosure by the Defendants, the Claimants are unable to specify fully the Non-Digital ~~a~~Assets that are currently held by the 11th Defendant. Typically, the 11th Defendant would only be used as a vehicle to sign contracts with external parties. The Claimants have included the known investments made in the name of the 11th Defendant at Tables 2 and 3 of **Annex C**.

(g)    By reason of the foregoing, the 11th and 12th Defendants owed the 4th Claimant fiduciary duties, the 12th Defendant held the shares in the 11th Defendant and/or the rights and/or entitlements to the underlying assets held by it or in its name on trust for the 4th Claimant, and the 11th Defendant held its underlying assets on trust for the 4th Claimant.

45D.   The abovementioned underlying Assets which were held in the name of the 11th Defendant, and which were held by it and the 12th Defendant on trust for the 4th Claimant, includes a bank account with UOB Singapore (which was linked to a bank account with UOB Singapore in the name of the 12th Defendant), and the Non-Digital Assets listed in the row corresponding to the 11th Defendant in **Annex E.**

(vii)    The Administration and Management of the Foreign Companies and the Non-Digital Assets

46.   As pleaded at paragraph 24D above, the DFG Platform (of which the Foreign Companies were a part) was created to replace the Huiyin Blockchain Venture. At all material times, the Huiyin Blockchain Venture and the DFG Platform (as well as its later successor in name, the Shengyi Platform) was managed by the 4th Claimant, who would lead other members of the leadership team (including the 1st and 12th Defendants and Mr Culver) in carrying out overall goal- or objective setting, delineating various authorisation limits, the appointment of persons to the leadership team, and assessing the performance of the Huiyin Group employees within the leadership team for the purposes of award of performance bonuses. Accordingly, aAt all material times since the incorporation/ acquisition of the Foreign Companies, all management decisions in relation to the assets, investments and operations of the Foreign Companies were made by or with the approval of the 4th Claimant by himself or through his proxies or agents on his instructions. Such management decisions included those implemented through delegated authority conferred by the 4th Claimant on officers appointed by him to manage the day to day operations of the Foreign Companies on his behalf from

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

time to time, in accordance with and in order to carry out his instructions.

46.1.    The 4th Claimant's proxies and agents included ~~his son,~~ the 1st and 12th Defendants ~~Mr Wo Quan~~ and Mr Culver ~~one Mr Terence James Culver ("Mr Culver")~~. Specifically, in such capacity and as members of the Huiyin Group, the 4th Claimant: (a) appointed the 12th Defendant to no less than 10 senior positions within the leadership team of the Huiyin Group at various points of time from 2017 to 2021, including the deputy leader of the Huiyin Group international blockchain investment team (who was in charge of options), the product manager of the DFG Platform, the Executive Director of the Shengyi Platform and, as pleaded above, the CEO of DFG Platform; (b) appointed Mr Culver to the roles pleaded at paragraph 43.5 above; and (c) appointed the 1st Defendant as the *de facto* treasurer with the authorities and responsibilities in the manner pleaded at paragraphs 7, 37A and 46.4 above.

46.2.    The 4th Claimant would meet in the course of each year with the 12th Defendant ~~Mr Wo Quan~~, Mr Culver and the 1st Defendant to report to and update the 4th Claimant on the status and progress of the overseas investments undertaken by the Foreign Companies, to discuss and receive the 4th Claimant's strategic directives, objectives and decisions, and to confirm the 4th Defendant's investment decisions. The 12th Defendant ~~Mr Wo Quan~~, Mr Culver and the 1st Defendant would also provide progress reports to the 4th Claimant as and when necessary, throughout the year.

46.3.    From time to time, the 4th Claimant would also appraise the work performance of the 12th Defendant ~~Mr Wo Quan~~, Mr Culver and the 1st

Defendant and decide on their roles and positions, bonuses, remuneration for their work in respect of the Foreign Companies.

46.4.    The 4th Claimant had also delegated authority to the 1st Defendant, to act in accordance with his instructions in relation to the assets, investments and operations of the Foreign Companies~~.~~, in that he had appointed the 1st Defendant as the *de facto* primary treasurer for (in addition to the Digital Assets) the fiat Non-Digital Assets held through the bank, exchange and/or securities accounts in the names of the Foreign Companies, the 2nd and 12th Defendants, which are set out in **Annex E**. To this end, the 4th Claimant directed for the 1st Defendant to be given access to and control over all the bank and/or securities accounts of the Foreign Companies, as well as the bank and/or exchange accounts of the 2nd and 12th Defendants, listed in **Annex E**, and in relation thereto, designated the 1st Defendant with responsibility to execute inter-account transfers subject to the 4th Claimant's instructions and/or authorisation. Consequently, the 1st Defendant owed fiduciary duties to the Claimants, and/or acted as trustee over such fiat Non-Digital Assets for the Claimants, and was to exercise her powers to deal with such fiat Non-Digital Assets solely for the benefit and/or purposes of the Claimants, and/or with the 4th Claimant's instructions and/or authorisation.

*Particulars*

(a)    In July 2021, the 1st Defendant joined the Huiyin Group and was tasked by the 4th Claimant to assist him in managing work relating to the asset management or finances of some companies which are

ultimately beneficially owned by the 4th Claimant.

(b)   The 1st Defendant was tasked to take over the role of Mr He ~~Bingyu~~ (**"Mr He"**), who was tasked to handle part of the responsibilities of the Chief Financial Officer of the 3rd Defendant at that time.

(c)   Pursuant to the above, the 4th Claimant instructed Mr He to perform a full handover of control and operation of bank accounts, relevant work, information and documents to the 1st Defendant and to induct the 1st Defendant into her new role. Accordingly, Mr He handed over the control and operation of rights of the following UOB Singapore bank accounts, ~~which belong to overseas companies that are ultimately beneficially owned by the 4th Claimant, to the 1st Defendant~~:

(i)    the 4th Defendant, the 10th Defendant, the 11th Defendant and subsidiaries of the Foreign Companies's ~~United Overseas Bank~~ UOB Singapore bank accounts ~~bearing account no. 88-25531-18~~; and

(ii)   the 2nd and 12th Defendants' personal UOB Singapore bank accounts.

(iii)  ~~the 4th Defendant's Silvergate Bank account bearing account no. 5090022327;~~

(iv)   ~~the 3rd Defendant's Silvergate Bank account bearing account no. 5090022301;~~

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

<div style="padding-left:3em">

(v)  ~~the 1st Claimant's Silvergate Bank account bearing account no. 5090001214;~~

(vi)  ~~Silvery Capital Holding Company Limited's Silvergate Bank account bearing account no. 5090019125; and~~

(vii)  ~~Matrix Limited's Silvergate Bank account bearing account number 5090016089.~~

</div>

(d)  At that time, Mr Zheng Bing ("**Mr Zheng**") was tasked to handle part of the responsibilities of the Chief Financial Officer of the 3rd Defendant. The 4th Claimant also instructed Mr He and Mr Zheng~~bing~~ to hand over to the 1st Defendant the operating rights of the following Silvergate bank accounts, which are ultimately beneficially owned by the 4th Defendant, through the Foreign Companies. ~~all documentary (both physical and electronic) records in relation to the 3rd and 4th Defendants' finances, including bank statements and records.~~ Post-handover, the 3rd and 4th Defendants' latest Silvergate Bank statements were sent to the 1st Defendant through Telegram each month, pursuant to her directions. This arrangement continued until the Silvergate Bank accounts were closed in the first quarter of 2023.

<div style="padding-left:3em">

(i)  the 4th Defendant's Silvergate Bank account bearing account no. 5090022327;

(ii)  the 3rd Defendant's Silvergate Bank account bearing account no. 5090022301;

</div>

        (iii)    the 1st Claimant's Silvergate Bank account bearing account no. 5090001214;

        (iv)    Silvery Capital Holding Company Limited's Silvergate Bank account bearing account no. 5090019125; and

        (v)    Matrix Limited's Silvergate Bank account bearing account number 5090016089.

(e)    The 4th Claimant had also instructed Mr Zheng to handover all financial records (including bank statements in both hard copy and digital documents) to the 1st Defendant.

46.5    In addition to the above Non-Digital Assets which were held in the names of the Foreign Companies, and/or held by the 2nd and 12th Defendants, on trust for the 4th Claimant, the 2nd and 12th Defendants also held other Non-Digital Assets in bank or cryptocurrency exchange accounts maintained in their personal names, for and on behalf of and/or on trust for the 4th Claimant. Such Non-Digital Assets, which were beneficially owned by the 4th Claimant, were procured to be deposited by the 4th Claimant through his agents, companies and/or proxies, for purposes of investments and/or activities of, and/or to be carried out through or in the names of the Foreign Companies, for his sole and ultimate benefit. The accounts maintained by the 2nd and 12th Defendants which held Non-Digital Assets that the 4th Claimant indirectly funded in the above manner, and which he ultimately beneficially owns, included:

(a)    in the name of the 2nd Defendant: all bank account listed in the first

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

---

row of **Annex E**, and an account with Kraken exchange, and all assets held thereunder;

(b)     in the name of the 12th Defendant: one bank account with UOB Singapore held in his name, and all assets held thereunder.

46.6    By reason of the trust and confidence reposed in the 2nd and 12th Defendants, and the authority vested in them by the 4th Claimant, as the persons through whom such Assets in the bank and/or exchange accounts were held, and/or pursuant to the DFG, SRIL, W3, Create Fortune, and Jumbo Agreements (as the case may be), the 2nd and 12th Defendants owed fiduciary duties to the 4th Claimant, and/or acted as trustees over such Assets for the 4th Claimant, including the duty to act in the Claimants' best interests and to exercise their powers to deal with such Assets solely in his best interests and/or with the 4th Claimant's instructions and/or authorisation.

III.     ~~THE CLAIMANTS' CLAIMS IN RELATION TO THE DIGITAL ASSETS~~ UNLAWFUL SEIZURE AND DISSIPATION OF THE ASSETS

(A)     The Digital Assets ~~The 1st Defendant is liable to the 4th Claimant and/or the Claimants for breach of contract~~

47.     In respect of the Digital Assets, from at least 5 December 2023 onwards, the 1st, 2nd, 3rd, 4th, 9th, 10th, 11th, and/or 12th Defendants embarked on an unlawful scheme to seize control of the Digital Assets; purport that the Digital Assets were beneficially owned by the 2nd Defendant instead of the 4th Claimant, refuse to

account as to the whereabout and status of the Digital Assets to the 4th Claimant and/or the Claimants, and/or dissipate such Digital Assets, as further detailed below. ~~The 1st Defendant acted in breach of the Oral Agreement in failing to carry out the 4th Claimant's instructions and in carrying out other 37nauthorized acts in relation to the Digital Assets. Subject to discovery and provision of further particulars by the Defendants, the best particulars of the 1st Defendant's breach of the Oral Agreement are as follows:-~~

47.1   On 5 December 2023:

    (a)   Sometime in the early hours of 5 December 2023, the 4th Claimant instructed the 1st Defendant to make various transfers of the cryptocurrencies: (i) 3.85 million USDC to the 1st Claimant's Binance Account; (ii) 1 million USDC to the 1st Claimant's Gate.io Account; and (iii) 1 million USDC to the 1st Claimant's OKX Account.

    (b)   At or around 3am on 5 December 2023, Lu – an Authorised Individual – reported to the 4th Claimant that 3.85 million USDC had been received by the 1st Claimant's Binance Account and 1 million USDC had been received by the 1st Claimant's OKX Account. However, the 1 million USDC which were supposed to have been transferred by the 1st Defendant into the 1st Claimant's Gate.io Account was never received.

47.2   Between 6 and 7 December 2023:

    (a)   In relation to the 1st Claimant's Binance Account:

        (i)   On or around 4.05pm on 6 December 2023, the 1st

Defendant logged into the 1st Claimant's Binance Account without the 4th Claimant's knowledge, authorisation or consent using the Internet Protocol ("**IP**") address 220.255.53.223.

(ii)   On or around 5.30pm on 6 December 2023, Lu discovered that he was unable to place orders and/or execute trades using the 1st Claimant's Binance Account as his trading rights had been suspended. Upon the recovery of access to the Binance account by the Claimants on 11 December 2023 and checking, Binance's Technical Support team informed Lu that the Application Programming Interface ("**API**") keys to the 1st Claimant's Binance Account had been deleted at or around 5.09pm on 6 December 2023 (UTC+0) (*i.e.* at 1.09am on 7 December 2023 (Shanghai time)) from IP address 220.255.53.223, located in Singapore.

(iii)   The 1st Defendant had previously made an authorised login to the 1st Claimant's Binance Account using the IP address 220.255.53.223 on 6 December 2023 at approximately 10.40am. The purpose of this authorised log-in was for the update of an API for a transaction which the 4th Claimant had, through Mr Lu, instructed her to carry out. The 1st Defendant had reported the completion of this to the 4th Claimant and Mr Lu thereafter. As such, the Claimants were able to establish that the 1st Defendant used the IP address

220.255.53.223.

(b)    In relation to the 1st Claimant's OKX Account:

(i)    On or around 5.17pm on 6 December 2023, the 1st Defendant logged into the 1st Claimant's OKX Account without the 4th Claimant's knowledge, authorisation or consent, again using the IP address 220.255.53.223.

(ii)    On or around 5.30pm on 6 December 2023, Lu discovered that he was suddenly unable to place orders and/or execute trades using the 1st Claimant's OKX Account as his trading rights had been suspended.

(iii)    On or around 1.09am on 7 December 2023 (Shanghai time), the 1st Defendant deleted the API keys of the 1st Claimant's OKX Account without the 4th Claimant's prior knowledge, authorisation or consent.

47.3    From 8 December 2023 to date:

(a)    ~~Between 8 and 9~~On 12 December 2023, after the 4th Claimant recovered access to the below-mentioned accounts, he discovered abnormal withdrawals and transfers of his Digital Assets held in the 1st Claimant's Binance Account and OKX Account, which were not instructed or authorised by him. The withdrawals and transfers were carried out from the IP address 220.255.53.223. The 1st Defendant had wrongfully executed, permitted and/or facilitated these transfers.

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

(b)     ~~From 9 December 2023 to date~~ In addition to the unauthorised withdrawals from the 1st Claimant's Binance and OKX Accounts, the 1st Defendant also made, permitted, and/or facilitated substantial unauthorised withdrawals of the Stolen Digital Assets from the Entrusted Digital Wallets to Impugned Wallets, without the 4th Claimant's knowledge, authorisation or consent.

(c)     ~~To date, the 1st Defendant has refused, neglected and otherwise failed to accede to the 4th Claimant's numerous demands to return and account for his Digital Assets.~~

(d)     ~~To date, the 1st Defendant continues to wrongfully exclude the 4th Claimant from accessing his Digital Assets.~~

(e)     A list of the Claimants' Digital Assets entrusted to the 1st Defendant as of 6 December 2023 is at **Annex C**. The Digital Assets in **Annex C** had a total estimated value of about USD 192.3 million~~171,700,789.49~~ as of 19 February 2024.

(f)     A tabulation of unauthorised transfers of Digital Assets comprised of Listed Tokens that were executed, permitted and/or facilitated by the 1st Defendant from Entrusted Digital Wallets into Impugned Wallets from 8 December 2023 ~~2024~~ to 8 February 2024, as a consequence of the facts and matters set out in paragraph 47 ~~paragraph 11~~ above, is set out at **Annex D**.

(g)     In particular, pending continuing investigations, the 1st Defendant had executed, permitted and/or facilitated the following

unauthorised transfers of Digital Assets to Impugned Wallets maintained with the 5th to 7th Defendants (i.e. cryptocurrency exchange operators), and/or other unknown private or exchange Impugned Wallets, across up to three levels of dissipation, with a large part of such Digital Assets discerned to have been received by the 12th Defendant via his exchange accounts and/or wallets, as particularised below:-

*(Note: where pleaded below, all market values are estimations as of 19 February 2024, but are without prejudice to the Claimants' right to seek for the Digital Assets to be valued as of a different date and/or on a different basis.)*

(i)     The "**Gate Dissipations**": Transfers of the Digital Assets listed in S/N 1-17 and 38 of **Annex D** from the Entrusted Digital Wallets to Impugned Wallets maintained with Gate.io exchange, operated by the 5th Defendant (the "**Impugned Gate Wallets**"). The aggregate market value of the Digital Assets so dissipated is approximately USD 4.12 million as of 19 February 2024.

Immediately following upon the transfer set out in S/N 8 of **Annex D** which took place on 1 January 2024, i.e. from the Entrusted Digital Wallet (listed in col. C of Annex D) to the Impugned Gate Wallet (listed in col. F of Annex D), on 2 January 2024, Digital Assets comprising 5,610,202 ASTR were withdrawn from the account associated with the

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

---

Impugned Gate Wallets, to wallet address a4dnrDeHZ1kw
hjSgLy33xqQnjQup2iM1YVRAupWJwoHPjbs   ("**Wallet
a4dnr**"). This was then followed by the transfer on 12
January 2024, of approximately 5,560,295 ASTR from
Wallet a4dnr to the Impugned Binance Wallet (as defined
below) address aApwjZ6GbDJQoKJRwv62WBmTxhc6KvK
1K9oaWCDnNtvLB1E. The aggregate market value of the
Digital Assets so dissipated is approximately USD 960,000;

(ii)   The "**Kraken Dissipations**": Transfers of the Digital Assets
listed in S/N 18-21 of **Annex D** from the Entrusted Digital
Wallets to Impugned Wallets maintained with Kraken
exchange, operated by the 6th Defendant (the "**Impugned
Kraken Wallets**"). The aggregate market value of the Digital
Assets so dissipated is approximately USD 11.52 million.

Immediately following upon the transfers set out in S/N 20-
21 of Annex D, i.e. of 2,258,792 RNDR from the Entrusted
Digital Wallets to the Impugned Kraken Wallets on 26
December 2023, and on the same day, the said RNDR
tokens were transferred to wallet address 0x975294377472
4b1C5d95E7d6d4FAa87F0F70820e ("**Wallet_0x975**"). On
16 January 2024 (UTC), 2,258,782 RNDR was then
dissipated from Wallet 0x975 to Binance deposit address
0xd72e05f99eae1c08099a7836904868ea920cdd72
("**Binance Deposit Wallet 0xd72**"), which is associated with

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

the same Binance user-account as the Impugned Binance Wallets (as defined below). The aggregate market value of the Digital Assets so dissipated is approximately USD 11.39 million;

(iii)   Transfers of the Digital Assets listed in S/N 22-34, 37 and 37A of **Annex D** from the Entrusted Digital Wallets to Impugned Wallets maintained with Binance exchange (the "**Impugned Binance Wallets**"). The aggregate market value of the Digital Assets so dissipated is approximately USD 49.93 million;

(iv)   Transfers of the Digital Assets listed in S/N 35-36, 39-65 of **Annex D**, from the Entrusted Digital Wallets to Impugned Wallets of unknown association ("**Impugned Unknown Wallets**"). The aggregate market value of the Digital Assets so dissipated is approximately USD 38.60 million.

Immediately following upon the transfers set out in S/N 39-43 of Annex D, i.e. of 8,813,095 GLMR transferred from the Entrusted Digital Wallets to the Impugned Unknown Wallets on 16 January 2024, the Digital Assets listed thereunder were further dissipated from the Impugned Unknown Wallets to further unknown wallet(s), and thereafter to Binance Deposit Wallet 0xd72. On 17 January 2024, a total of 8,813,096 GLMR was deposited into the Binance Deposit Wallet 0xd72. The aggregate market value of the Digital

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

<div style="margin-left:2em">

Assets so dissipated is approximately USD 4.09 million;

(v)   By way of third-level dissipation, following upon the above deposits of the Digital Assets to the Impugned Binance Wallets and Binance Deposit Wallet 0xd72 set out in paragraphs 47.3(g)(i), (ii) and (iv) above, the relevant Binance account(s) associated with the Impugned Binance Wallets and Binance Deposit Wallet 0xd72 were then hollowed out by way of a series of transfers up to and including 22 February 2024 (being 2 days after the commencement of these proceedings and the filing of an injunction application, both on 20 February 2024), into wallets under the control of and/or maintained by as-yet-unidentified persons. As such, the aggregate market value of the Digital Assets originally stored in the Entrusted Wallets which were dissipated through the Impugned Binance Wallets as set out above, is **at least USD 66.37 million**.

</div>

47.3A   The Impugned Gate and Binance Wallets through which the above Digital Assets were dissipated, via transfers of at least three levels, have since been identified as being associated with Gate.io and Binance user-accounts respectively which were registered and maintained in the name of the 12th Defendant (the "**12D Gate Account**" and "**12D Binance Account**" respectively). Further, the Impugned Kraken Wallet with address 7MpPM98aAquuw3gGLhf36pmiYEjtVN6FFcTNdctPtomLP9E5, which received the HDX tokens listed in S/N 18-19 of **Annex D**, was also identified

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

---

as having been registered and maintained in the name of the 12th Defendant (the "**12D Kraken Account**").

47.3B  Amidst the above dissipative transfers from the Entrusted Digital Wallets, and the Impugned Gate, Kraken and Unknown Wallets, to the Impugned Binance Wallets, the 12D Binance Account was accessed multiple times between December 2023 and January 2024 from the Singapore IP address 220.255.53.223, being the same IP address used by the 1st Defendant. Paragraph 47.2(a)(iii) above is repeated.

47.3C  In particular, dissipation of the Digital Assets in the form of the ASTR and ENJ tokens discussed below occurred notwithstanding that on 22 February 2024, the Honourable Justice Chionh Sze Chyi Mavis had issued the Order of Court no. HC/ORC 999/2024 ("**ORC 999**") prohibiting the 1st to 4th Defendants from dealing with, disposing of, or diminishing the value of the said ASTR and ENJ tokens, and/or the fruits and proceeds thereof arising from any sale, disposal or transfer:

*ASTR*:

(ii)    In or around 1 – 12 January 2024, approximately 264 million ASTR tokens were transferred from Entrusted Digital Wallets either: (a) directly to 12D's Binance Account (as set out in S/N 26-43 of **Annex D**); and/or (b) indirectly through 12D's Gate Account and Wallet a4dnr (as set out in paragraph 47.3(g)(iii) above), before being transferred to 12D Binance Account.

(iii)   Thereafter, in or around 15 January 2024, the said ASTR tokens

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

totalling approximately 264 million, were transferred out of 12D's Binance Account, to 4 private wallets (addresses YfuT5MLk1jaSazKTr1jPTWAPx24QPb1aX1weuvyZCdZD4gk, XoL4pyRBPDPjXNHM7ntkjKSBcbEDuJiG3Qf1cB322KoNmaN, ZJ2UujM1o41wgUs5JfJ3wyG5HVxE8iu6dtyCx2GD7fpfpyr, and XY2CX3kZqyQ3J3FQcJiaG2A5443V7wVzqxRXEfoqgZpQKHc (collectively, the "**4 ASTR Wallets**")).

(iv)    Subsequently, during June to July 2024, whilst ORC 999 was in force the said 264 million ASTR tokens were transferred out from the 4 ASTR Wallets to other as-yet-unidentified wallets.

*ENJ*:

(v)    Between 12 and 15 July 2024, a total of 14,582,835 ENJ tokens (which were amongst those listed in Annex C Table 1) were transferred out of 2 Entrusted Digital Wallets (S/N 768 and 891 of Annex A), to the wallet address enCniTZWDbeW9yPS5DoseMb1aL Nv8vhKaLivAD5FzhJQgipnu ("**Wallet enCni**"), of which controllers and/or owners are as yet unknown.

47.4    Following upon the above unlawful seizure of the Digital Assets, in or around December 2023, the ~~The~~ 1st Defendant ~~has since~~ unilaterally deleted all Telegram Group Chats, which were created to facilitate communications and workflow between the Token Transfer and Trading Teams that the 1st Defendant was a part of and by which the 4th Claimant would give his instructions in relation to the administration and operation of his Digital Assets, as well as her Telegram chats with the 4th Claimant.

Further, the 1st, 2nd and 12th Defendants have since refused to communicate with the 4th Claimant.

47.4A The 1st Defendant has since December 2023 stopped adhering to instructions from the 4th Claimant as regards the Digital Assets entrusted to her for administration and management for the 4th Claimant, including for their return and for her to account for them, and stopped reporting to the Claimants all information concerning such Digital Assets, including their whereabouts, status, and proceeds. This extended to the Newly Listed Tokens and the Project Investments. The 1st Defendant has refused, neglected and otherwise failed to accede to the 4th Claimant's numerous demands to return and account for his Digital Assets, and continues to wrongfully exclude the 4th Claimant from accessing his Digital Assets. Similarly, in respect of the Digital Assets comprised in the returns from and/or entitlements under the Project Investments, and/or held by and/or through the 10th, 11th and/or 12th Defendants, around the same time as the 1st Defendant's above conduct, the 12th Defendant stopped adhering to instructions from the 4th Claimant, stopped reporting or providing information to the Claimants, and failed to account to the 4th Claimant for such Digital Assets (including as to their whereabouts, status, and proceeds).

47.5 On 26 January 2024, the Claimants instructed their lawyers, Drew & Napier LLC ("**D&N**") to write to the 1st Defendant to demand that she return him his Digital Assets ("**D&N 26.1.24 Letter**").

47.6 On 12 February 2024, the 1st Defendant's lawyers, M/s Rajah & Tann

Singapore LLP ("**R&T**"), replied to D&N with the 1st Defendant's allegation that all the Digital Assets belong to the 2nd and/or the 3rd Defendants (the "**R&T 12.2.24 Letter**"). In the R&T 12.2.2024 Letter, it was also asserted that the 1st Defendant had transferred all the Digital Assets to the 2nd and/or 3rd Defendants on 8 December 2023. To the extent any transfers of the Digital Assets were made without the 4th Claimants' and/or the Claimants' authority, such transfers were carried out by the 1st Defendant in breach of the D1 Oral Agreement.

47.7   Whilst asserting that all the Digital Assets had been purportedly transferred to and belonged to the 2nd and/or 3rd Defendants, and refusing to report to, grant access to, and/or account for the Digital Assets, the 1st, 2nd, and/or 12th Defendants had surreptitiously dissipated and/or facilitated the dissipation of the Digital Assets set out at paragraph 47.3(g) above, to the 12D Gate, Kraken and Binance accounts of the 8th Defendant and/or 12th Defendant (and beyond, as set out in paragraph 47.3C above). Further, so as to further obfuscate and delay the unravelling of such dissipative transfers, and the role of the 8th and/or 12th Defendant as a conduit for and/or beneficiary of such dissipation, the 1st, 2nd, and/or 12th Defendants shut out the Claimants from access to any information to evaluate and ascertain the status and whereabouts of all Digital Assets (including those held in the names of the 10th and 11th Defendants), and failed to report to and/or account for the same, all whilst the 12th Defendant had refused to appear and participate in these proceedings whilst leaving the 1st to 4th and 9th Defendants to defend these proceedings on the false pretext that the Digital Assets belong beneficially to the 2nd Defendant.

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

47.8    The foregoing acts and/or omissions on the part of the 2nd and/or 12th
Defendants are attributable to the 3rd, 4th, 10th, and/or 11th Defendants
insofar as they pertain to Digital Assets held by, in the names of, and/or
through these companies in respect of which the 2nd and/or 12th Defendants
as the case maybe act as nominee director and shareholder, and/or over
which the 2nd Defendant asserts beneficial ownership and/or over which the
12th Defendant has any right of access or control.

47A    By reason of the matters pleaded above:-

(a)    the 1st, 2nd, 3rd, 4th, 10th, 11th and/or 12th Defendants are liable for to
the Claimants for unlawful means conspiracy. Such parties
wrongfully and with intent to cause loss to the Claimants by unlawful
means, conspired and combined together to seize control of and
dissipate the Digital Assets in breach of trust, fiduciary duties, and/or
contract;

(b)    the 1st Defendant is liable for breach of the D1 Oral Agreement, and
breach of trust and/or fiduciary duties, in respect of the above
wrongful seizure and/or retention of the Digital Assets and/or
Entrusted Digital Wallets; effecting, facilitating, and/or permitting the
unauthorised transfer of the Digital Assets including to the 8th and/or
12th Defendants; failing to report to and/or account to the 4th
Claimant and/or Claimants for the Digital Assets;

(c)    the 2nd Defendant is liable for inducing the 1st Defendant's above
breach of the D1 Oral Agreement; dishonestly assisting in the 1st
Defendant's breach of trust; and/or receiving the Digital Assets

knowing that the same were wrongfully seized and

(d)    the 2nd, 3rd, and/or 4th Defendants are liable for breach of the DFG Agreement and/or SRIL Agreement, insofar as the 2nd Defendant's above wrongful conduct pertains to assets held by, in the name of, and/or through the 3rd and/or 4th Defendants;

**(B)    The Non-Digital Assets**

48.    ~~The Claimants aver that by reason of the matters pleaded herein, the 1st Defendant is liable to the 4th Claimant and/or the Claimants for breaches of the Oral Agreement.~~ In respect of the Non-Digital Assets, any two or more of the 1st to 4th and 9th to 12th Defendants, similarly jointly conspired and embarked on an unlawful scheme to in coordination wrongfully seize control of the Non-Digital Assets which they held on trust for the 4th Claimant. A list of the Non-Digital Assets is at **Annex E**. Pending continuing investigations, the above wrongful seizure of control took place, amongst others, in the following manner:

48.1.    On or around 4 December 2023, unbeknownst to the 4th Claimant at the time the 12th Defendant procured Mr Feng Jian, an IT employee of the Huiyin Group, to grant the former access to the management account and password of the 'dfg.group' domain, allegedly for certain back-up purposes. This domain had been purchased by Mr Peng on the 4th Claimant's directions in or around 21 May 2018, and control thereover had subsequently on or around 30 November 2021 been provided by an IT employee of the Huiyin Group to Mr Culver, on the 4th Claimant's instructions.

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

48.2.   Previously, Ms Chen had been appointed by the 4th Claimant to be the contact person for the Foreign Companies. On or around 7 December 2023, the 1st, 2nd and/or 12th Defendants wrongfully accessed Ms Chen's email account on the 'dfg.group' domain, and impersonated Ms Chen to write to the company secretarial services providers of the Foreign Companies to inform them that Ms Chen would no longer serve as the contact person for these companies and to request that the contact person be changed to the 1st Defendant and the 2nd Defendant instead. This was done without Ms Chen's or the 4th Claimant's knowledge, consent or authority.

48.3.   On or around 8 December 2023, the 2nd Defendant also procured, without the 4th Claimant's consent or prior knowledge, a change in directorship over Silvery Capital, from Mr He, a Huiyin Group employee, to the 12th Defendant. Mr He had previously been the director of Silvery Capital from the point of its incorporation up until 8 December 2023 when such change occurred, at the 4th Claimant's authorisation and nomination.

48.4.   On 7 December 2023, the 2nd Defendant sent Ms Chen a "*Warning Notice*", stating, alleging, among other things, that (a) she was the sole shareholder and director of the 3rd Defendant; that (b) Ms Chen is the 3rd Defendant's previous contact person in charge of incorporation; and that (c) Ms Chen had no right to engage any course of action that may change the shareholding structure of the 3rd Defendant.

48.5.   On or around 11 December 2023, the 2nd Defendant instructed a law firm in Shanghai, Bright & Young Law Firm, to send Ms Chen a "Letter of

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

Demand" demanding that Ms Chen return the official seal and other company documents of the 4th Defendant to the 2nd Defendant within 10 days of the letter, among other things. This came after the 1st Defendant had private contacted Ms Chen in early December 2023 to request that Ms Chen hand over to her the company seals and other materials of the Foreign Companies (which Ms Chen up till such point maintained on the instructions and authorisation of the 4th Claimant), to the 1st Defendant, which request Ms Chen had rejected on the 4th Claimant's instructions.

48.6.   On 20 December 2023, the 1st and/or 12th Defendants modified the password to the 10th Defendant's bank account with UOB Singapore, resulting in the Employee Ms Sun, who had up until such point managed the said account in accordance with the 4th Claimant's instructions and who had served as the financial officer for the 10th Defendant on the 4th Claimant's nomination, losing access to such account.

48.7.   On 14 March 2024, on behalf of the 2nd Defendant, Bright & Young Law Firm sent another "*Letter of Demand*" to Ms Chen demanding that Ms Chen return the official seal and other company documents of the 3rd Defendant to the 2nd Defendant within 10 days of the letter, among other things.

48.8.   On 11 March 2024, the Claimants through D&N wrote to the lawyers for the 2nd to 4th Defendants, R&T, regarding whether the Claimants' position that the beneficial ownership and right to control the 3rd, 4th and 9th Defendants belonged to the 4th Claimant was in dispute (the "**D&N 11.3.24 Letter**"). The Claimants also requested that, amongst other things:

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~ ~~16 July 2024~~[•] 2025*

---

    (a)    the 2nd Defendant sign all documents and do all things necessary to effect the transfer of all the shares of the Foreign Companies to the 4th Claimant and/or his nominees;

    (b)    the 2nd Defendant revoke all her instructions to the officers and corporate secretarial services providers of the Foreign Companies not to take instructions from the 4th Claimant and/or his agents and to direct them to resume taking instructions from the 4th Claimant and/or his proxies and agents and no one else; and

    (c)    the 2nd Defendant resign as director of the Foreign Companies and handover all directorships in the Foreign Companies to the 4th Claimant and/or his nominees.

On 22 March 2024, R&T responded to state that the 1st to 4th Defendants "*deny the allegations set out at paragraphs 3 to 7 of the D&N 11.3.24 Letter*".

48.9.    Further, the 2nd and/or 12th Defendants instructed and/or procured Mr Culver to stop taking instructions from the 4th Claimant, and from giving the 4th Claimant any information concerning the Non-Digital Assets. Mr Culver also claimed for the first time that all trading instructions required the 2nd Defendant's consent on the basis that she was the registered shareholder of the Foreign Companies.

48.10.    The 1st Defendant also deleted the Fidelity Group Chats which evidenced that the Non-Digital Assets had previously been dealt with and/or managed on instructions from the 4th Claimant, and/or which evidenced

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

the fact that she, the 12th Defendant and Mr Culver had, prior to or around 5 December 2023, accounted to the 4th Claimant as regards the Non-Digital Assets. Around the same time, the 12th Defendant also deleted his bilateral Telegram chat with the 4th Claimant. Consistent with the above, the 1st, 2nd and 12th Defendants have since then refused to communicate with the 4th Claimant.

48.11. Consequently, from in or around December 2023, the 1st, 2nd and 12th Defendants stopped taking instructions from and/or granting access to the 4th Claimant, accounting to him, and/or providing information to him regarding the business, affairs, and underlying Non-Digital Assets of the Foreign Companies and/or the Subsidiaries over which the 1st, 2nd, and/or 12th Defendants acted as nominees and/or trustees for the 4th Claimant, as the case may be, including in particular:

(d) The 1st Defendant: All fiat assets maintained in accounts maintained in the names of the Foreign Companies and/or the Subsidiaries, and the 2nd and 12th Defendants, which the 4th Claimant had entrusted her with access to and oversight over;

(e) The 2nd Defendant: The shares and underlying assets of the 3rd, 4th and 9th Defendants and their Subsidiaries, the 10% Share in 2C, and the assets held in her name (see: row corresponding to the 2nd Defendant in **Annex E**); and

(f) The 12th Defendant: The shares and underlying assets of the 10th and 11th Defendant, the underlying assets comprised in the DFG Platform, and the assets held in his name (see: the rows

corresponding to the 12th Defendant in **Annex E**).

48.12. Quite apart from the above wrongful seizure, pending continuing investigations, the Claimants have ascertained that the 2nd, 3rd, and/or 12th Defendants, with the assistance of Mr Culver, had sometime in the course of 2024 directly or indirectly caused at least the Genesis proceeds in the form of 6.3 million DOT tokens worth about 41.79 million (see: paragraph [3(b)(v)] above), which was comprised in the Non-Digital Assets held on trust for the 4th Claimant and for which they were accountable to him, to be paid out to persons as-yet unknown, without notice to the 4th Claimant and/or his authorisation.

48.13. As a result of the matters pleaded above, the 4th Claimant has been wrongfully deprived of his management rights over, access to, and control of the Foreign Companies, the underlying Non-Digital Assets in their names or held through them and/or the Subsidiaries, and the 10% Share in 2C.

48.14. The foregoing acts and/or omissions on the part of the 2nd and/or 12th Defendants are attributable to the 3rd, 4th, 9th, 10th, and/or 11th Defendants insofar as they pertain to the Non-Digital Assets held by, in the names of, and/or through these companies in respect of which the 2nd and/or 12th Defendants as the case maybe act as nominee director and shareholder, and/or over which the 2nd Defendant asserts beneficial ownership and/or over which the 12th Defendant has any right of access or control.

*Statement of Claim (Amendment No.12): 6 May16 July 2024[•] 2025*

---

**IV.     LIABILITY IN RESPECT OF THE DIGITAL ASSETS**

**(C)     Liability for unlawful means conspiracy to seize control of and/or dissipate the Digital Assets**

48A.    The Claimants aver that by reason of the matters pleaded in Section III(A) above, the 1st, 2nd, 3rd, 4th, 10th, 11th and/or 12th Defendants, and/or any two or more of them are liable to the Claimants for unlawful means conspiracy. Such persons, wrongfully and with intent to cause loss to the Claimants by unlawful means, conspired and combined together to seize control of and dissipate the Digital Assets in breach of trust and/or fiduciary duties.

48B.    Such combination and/or agreement to perform the acts complained of may be inferred from the matters pleaded at Section III(A) above, including without limitation:

(a)    As set out in paragraph 47.2 above, the 1st Defendant deleted the API keys to the 1st Claimant's Binance and OKX Accounts, as a result of which, the Claimants and the Employees were no longer able to access the said Accounts and the Digital Assets therein.

(b)    As set out in paragraphs 47.3(a), (f) and (g) above, the 1st Defendant executed, permitted and/or facilitated unauthorised withdrawals of Digital Assets from the Entrusted Digital Wallets (including the 1st Claimant's exchange accounts) which had been entrusted to her safekeeping and control, to Impugned Wallets, without the 4th Claimant's knowledge, authorisation or consent. In particular, the 1st Defendant executed, permitted and/or facilitated the dissipation of the

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

Digital Assets which had been withdrawn from the Entrusted Wallets, at the first level, into the Impugned Gate, Kraken, Binance, and Unknown Wallets; at the second level, from among the unauthorised deposits into the Impugned Gate, Kraken and Unknown Wallets, Digital Assets were further dissipated to the Impugned Binance Wallets; and at the third level, from the Impugned Binance Wallets into as-yet-unknown wallets, as a result of which, the Impugned Binance Wallets have been almost entirely hollowed out.

(c)    By the 1st Defendant's own position, she carried out at least some of the above unauthorised transfers of Digital Assets from the Entrusted Digital Wallets comprising the first level dissipation, on the instructions of the 2nd and/or 3rd Defendants, whilst the 2nd and/or 2rd Defendants contend that such Digital Assets belonged to them, in circumstances where they knew or ought to have known that the said Digital Assets belonged to, and were held by the 1st Defendant on trust for, the 4th Claimant, and such dissipation was in breach of trust and/or fiduciary duties.

(d)    The Impugned Gate and Binance Wallets, and at least one Impugned Kraken Wallet, were registered and maintained with the respective exchanges in the names of the 12th Defendant. Paragraph 47.3A above is repeated. The 12th Defendant thereby procured, permitted and/or facilitated the use of his exchange accounts with Gate.io, Kraken and Binance for the purpose of enabling the dissipative transfers at the first, second and third levels stated above, in circumstances where he knew

or ought to have known that the said Digital Assets belonged to, and were held by the 1st Defendant on trust for, the 4th Claimant, and such dissipation was in breach of trust and/or fiduciary duties.

(e)    The 1st, 2nd, 3rd, 4th and/or 12th Defendants falsely denied the 4th Claimants' beneficial ownership over the Digital Assets, and falsely claimed instead that the said Digital Assets were beneficially owned by the 2nd and/or 3rd Defendants;

(f)    The 1st, 2nd, 3rd, 4th, 10th, 11th, and/or 12th Defendants failed and/or refused to account to the 4th Claimant and/or the Claimants as to the status and whereabouts of the Digital Assets respectively directly or indirectly held by or through them and/or in their names.

(g)    The 1st Defendant unilaterally deleted all Telegram group chats which evidenced that the Digital Assets had previously been dealt with and/or managed on instructions from the 4th Claimant and/or on his behalf, and/or which evidenced the fact that the same belonged to the 4th Claimant.

48C.    The above were carried out in breach of fiduciary duties owed to the 4th Claimant by the 1st, 2nd, 3rd, 4th, 10th, 11th and/or 12th Defendants, in breach of trust, and/or in breach of contract, and with intention to injure the Claimants, such injury being (without limitation) the 4th Claimant's and/or Claimants' deprivation of rights of control, access, and/or ownership over the Digital Assets.

**(D)    ~~Further and/or in the alternative, the 1st Defendant is liable to the 4th Claimant and/or the Claimants for~~ Liability for breaches of trust and/or**

**fiduciary duties and accessory liability**

49.     To the extent that any of the Digital Assets were seized, retained by, and/or transferred to, the 1st, 2nd, 3rd, 4th, 10th, 11th and/or 12th Defendant's/slegal ownership, the 1st, 2nd, 3rd, 4th, 10th, 11th, and/or 12th Defendants hold and/or held the Digital Assets on trust for the 4th Claimant and/or the Claimants. The facts pleaded at Sections II and III(A) above are repeated in this regard, and further highlighted (without derogation therefrom) as follows.

49.1    In or around November 2021, pursuant to the D1 Oral Agreement, the 4th Claimant gave instructions for all necessary means and credentials to access and operate his Entrusted Digital Wallets to be transferred to the 1st Defendant to facilitate her duties in relation to the administration and operation of the Digital Assets.

49.2    At all material times, the 1st Defendant knew that the Digital Assets weare beneficially owned by the 4th Claimant and/or Claimants. In particular, the 1st Defendant was present at the signing of the Authorisation Agreements on 30 December 2021 and did not raise any issue with the statement in the agreements that the 4th Claimant "*owns all rights … in the [Digital Assets]*".

49.3    Further, to the extent any of the Digital Assets were transferred to the 1st Defendant's legal ownership by reason of her holding the API private keys or API to some of the cryptocurrency wallets which held the Digital Assets, they are held on trust by the 1st Defendant for the 4th Claimant.

(a) The means and credentials to access and operate the 4th Claimant's Entrusted Digital Wallets were transferred to the 1st Defendant for the sole purpose of facilitating the performance of her duties to administer and operate the Digital Assets in accordance with the 4th Claimant's instructions pursuant to the D1 Oral Agreement, and not to or for the benefit the 1st Defendant or any other parties or in accordance with the instructions of any other parties including the 2nd Defendant. The Claimants repeat paragraph 36 above.

(b) As explained at paragraph 2 above, the 4th Claimant is the sole originator and/or contributor of the funds and/or means used to acquire the Digital Assets.

    (i) As explained at paragraph 19 above, in or around 2014, the 4th Claimant started to invest in cryptocurrencies with his personal resources.

    (ii) In 2014 and 2016, the 4th Claimant bought various physical and non-physical Bitcoins through an exchange. At the peak of the 4th Claimant's holdings, he held more than 10,000 Bitcoins. Over the years, these Bitcoins were traded and used to purchase other cryptocurrency tokens such as ETC and "DOT" tokens, which form part of the pool of Digital Assets.

    (iii) The Digital Assets also comprise of cryptocurrency tokens which are returns from the 4th Claimant's investments in various primary market cryptocurrency projects.

(c)     The 1st Defendant gave no consideration for the Digital Assets which were transferred to her control pursuant to the Oral Agreement.

50.     Further and/or in the alternative, as the 4th Claimant's and/or the Claimants' agent in respect of the administration and operation of the Digital Assets, the 1st Defendant owed fiduciary duties to the 4th Claimant and/or the Claimants.

50.1    Pursuant to the Oral Agreement, the 1st Defendant agreed to be the 4th Claimant's and/or the Claimants' agent in respect of the administration and operation of the Digital Assets.

50.2    As the 4th Claimant's and/or the Claimants' agent in relation to the administration and operation of the Digital Assets, the 1st Defendant was accorded authority and/or power to effect transfers of the Digital Assets in accordance with the 4th Claimant's instructions. In particular, as explained at paragraph 30 above, the 1st Defendant was provided with all the necessary credentials to control and access the Entrusted Digital Wallets to facilitate her duties in relation to the administration and operation of the Digital Assets.

50.3    The 1st Defendant thereby consented to being accorded and entrusted by the 4th Claimant with discretion and power and the ability to unilaterally and significantly influence the 4th Claimants rights, position, legal and/ or practical interests in the Digital Assets.

50.4    In the circumstances, the 1st Defendant owed the 4th Claimant and/or Claimants the duty of good faith and honesty and the duty to administer and

operate the Digital Assets for the 4th Claimant's and/or the Claimants' benefit.

51.    However, the 1st Defendant acted in breach of trust and/or her fiduciary duties owed to the 4th Claimant. Subject to discovery and provision of further particulars by the Defendants, the best particulars the Claimants can give of the 1st Defendant's breaches of trust pertain to her ignoring or otherwise refusing to comply with the 4th Claimant's instructions with respect to the Digital Assets and the carrying out of, permitting, and/or facilitating other unauthorised acts in relation to the Digital Assets are as follows, without derogation from the matters set out in Section III(A) above:

51.1    The 4th Claimant and/or the Claimants repeat paragraphs 47.1 to 47.3C above.

51.2    The 1st Defendant also refused to recognise the 4th Claimant's beneficial ownership of the Digital Assets and continues to impede and/or exclude the 4th Claimant and/or the Claimants' from accessing the Digital Assets to the 4th Claimant's detriment by blatantly ignoring the 4th Claimant's and/or the Claimants' demands to return the Digital Assets.

51.3    The 1st Defendant also wrongfully executed, permitted and/or facilitated the dissipation of the Digital Assets from the Entrusted Wallets to the Impugned Wallets, as set out in paragraphs 47.3 – 47.3C above.

52.    The Claimants aver that by reason of the matters pleaded herein, the 1st Defendant is liable to the 4th Claimant and/or the Claimants for breaches of trust and/or her fiduciary duties in relation to the administration and operation of the

Digital Assets which were entrusted to her by the 4th Claimant to hold on his behalf.

52A.    Further and/or alternatively, in respect of the Digital Assets held through or in the names of the 3rd, 4th, 10th, and/or 11th Defendants, and the Digital Assets over which the 12th Defendant has rights of management, access, and/or control by reason of his role as CEO of the DFG Platform and/or as nominee director and shareholder of the 10th and 11th Defendants, the 2nd and/or 12th Defendants (and/or the 3rd, 4th, 10th, and 11th Defendants to which the acts and omissions of the former are attributable) are liable to the 4th Claimant and/or the Claimants for breaches of trust and/or of their respective fiduciary duties owed to the 4th Claimant and/or Claimants.  Sections II and III(A) are repeated in this regard. The 4th Claimant and/or Claimants highlight in particular the 2nd and 12th Defendants' conduct, acting in concert with the 1st Defendant, to wrongfully seize, retain, refuse access to, and/or failing to account for such Digital Assets.

52B.    Further or alternatively, the 1st, 2nd, and/or 12th Defendants (and/or the 3rd, 4th, 10th, and 11th Defendants to which the acts and omissions of the former are attributable) are liable for dishonestly assisting in the above breaches of trust and/or fiduciary duties. Amongst others, their conduct was not honest by the ordinary standards of reasonable and honest people and they knew or ought to have known that by those standards their conduct was dishonest.  Sections II and III(A) are repeated in this regard, and the following are highlighted without derogation therefrom:-

(a)    At all material times, these Defendants knew that the ultimate beneficial owner and sole funder of the Digital Assets was the 4th Claimant, and that the Digital Assets had at all times prior to the wrongful seizure of control

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

from December 2023 been held and managed on behalf and on the instructions of the 4th Claimant, and not the 2nd Defendant. Nonetheless, these Defendants have falsely alleged that the Digital Assets were ultimately beneficially owned by the 2nd Defendant, including by way of affidavits filed by them or on their behalf in this action (in particular, 1st affidavits of the 1st, 2nd and 12th Defendants dated 28 March 2024 (respectively, "**WQI1**", "**SHM1**" and "**WQJ1**")), in particular of which, the 1st and 2nd Defendants had made in their personal capacities as well as on behalf of the 3rd and 4th Defendants).

(b)    These Defendants additionally knew or ought to have known that the 1st Defendant's conduct in transferring the Digital Assets listed in Annex D out of the Entrusted Wallets was unauthorised, and/or their seizure, refusal to account and/or retention of the Digital Assets, were in breach of trust and/or fiduciary duties by reason amongst others of their having been privy to the various agreements pleaded at Section II above, and/or the ensuing implementation thereof. Further, these Defendants were aware that they had given no consideration for any of the Digital Assets, all of which had been indirectly funded by the 4th Claimant. Further, by the 1st Defendant's own position, the 2nd Defendant had instructed the transfers of the Digital Assets out of the Entrusted Wallets, thereby assisting in the 1st Defendant's breach of trust and/or fiduciary duties, whilst the 12th Defendant facilitated the dissipation of Digital Assets entrusted to and in the custody of the 1st Defendant, through the 12D Gate and Binance Accounts, and paragraphs 47.3A to 47.3C above are repeated in this regard.

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

52C.   Further and/or in the alternative, insofar as the 2nd, 8th, and/or 12th Defendants directly or indirectly received and/or retained and/or exercise control over any of the Digital Assets, they are liable to account for all such Assets by reason of the fact that such Assets were received in circumstances where they knew or ought to have known that such Assets were held on trust for the 4th Claimant and/or Claimants, and/or were seized and/or dissipated in breach of trust and/or fiduciary duties. Sections II and III(A) and paragraphs 52A and 52B above are repeated in this regard. Without limitation, it is averred that:

(a)    the 2nd Defendant is liable for knowing receipt by reason of her purporting to exercising ultimate control over, retain and/or receive the Digital Assets on the false pretext that she is the ultimate beneficial owner thereof;

(b)    the 12th Defendant is liable for knowingly receiving the Digital Assets as pleaded at paragraphs 47.3 and 47.3A above as having been received by, or into wallets associated with, the 12D Gate, Kraken and Binance Accounts, whilst the 8th Defendant is liable for knowingly receiving the remainder of the Stolen Digital Assets.

52D.   Further and/or in the alternative, by reason of the matters set out in the Sections II and III(A) and paragraphs 52A to 52C above, the 1st 2nd, 8th, and 12th Defendants' knowledge that the 1st, 3rd, 4th, 10th, 11th and/or 12th Defendants, as the case may be, had seized, and/or retained access, control and/or ownership of the Digital Assets nominally held by or through them and/or in their names, in breach of contract, trust and/or fiduciary duties, and/or their involvement in the wrongful seizure and/or retention of Digital Assets to the exclusion of the 4th Claimant and/or Claimants, made it unconscionable for each and all of them to

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

directly or indirectly retain the benefit of the Digital Assets and/or any proceeds thereof in his/her/their possession, control or custody.

52E.    As a result of the matters set out in paragraphs 52B to 52D above, the 1st, 2nd, 3rd, 4th, 8th 10th, 11th, and/or 12th Defendants are liable to account to the 4th Claimant and/or the Claimants as constructive trustees on the grounds of dishonest assistance and/or knowing receipt, and/or on remedial constructive trust.

**(E)      Liability for breach of contract**

52F.    The 1st Defendant acted in breach of the D1 Oral Agreement, amongst others by reason of her failing to carry out the 4th Claimant's instructions, failing to account to the 4th Claimant and/or Claimants, denying access to the 4th Claimant and/or Claimants, and/or carrying out the unauthorised transfers of the Digital Assets. The Claimants repeat paragraphs 28-30, 37A, 47-47A above in this regard.

52G.    The 2nd Defendant acted in breach of the DFG Agreement and the SRIL Agreement, amongst others, by permitting and/or facilitating the seizure, retention, denial of access, failure to account and/or report, and/or unauthorised transfers, of the Digital Assets held nominally in the name of, through, and/or by the 3rd and 4th Defendants in respect of which the 2nd Defendant was and is the nominal director and shareholder.

52H.    The 12th Defendant acted in breach of the DFG WQJ Agreement, Create Fortune Agreement and Jumbo Agreement, and the 10th and 11th Defendants acted in breach of the Create Fortune Agreement and Jumbo Agreement respectively, amongst other by failing to act solely on the instructions and/or authorisation of the 4th Claimant, failing to account to the 4th Claimant and carrying out other

unauthorised acts in relation to the Digital Assets, in particular in relation to the Project Investments. The Claimants repeat Sections II and III(A) above. By reason of the matters pleaded therein, the 10th, 11th, and/or 12th Defendants are liable to the Claimants for breaches of the above Agreements.

**(F)    (C)    The 2nd and 12th Defendants are  is liable Liability for inducing the breach of the D1 Oral Agreement between the 1st Defendant and the 4th Claimant**

53.    At all material times, the 2nd and 12th Defendants were was well aware that (a) the Digital Assets that were under the 1st Defendant's administration and operation were ultimately beneficially owned by the 4th Claimant; and that (b) the 1st Defendant's involvement in the administration and operation of the Digital Assets was pursuant to the 4th Claimant's appointment of the 1st Defendant as his agent.

53.1    Sometime between September 2023 and October 2023, the 2nd Defendant and the 4th Claimant had a family telephone conference call. Their children, the 1st Defendant and the 12th Defendant Mr Wo Quan, were with the 2nd Defendant at that time and participated in the call.

53.2    During the call, the 2nd Defendant asked that the 4th Claimant gives half of all his assets, including his Digital Assets to their children, with each of them receiving 25%. The 4th Claimant disagreed.

53.3    Subsequently, sometime in November 2023, the 2nd Defendant had another telephone call with the 4th Claimant and had also left the 4th Claimant multiple voice messages to where she reiterated her demand that the 4th

Claimant gives half of his assets, including his Digital Assets, and half of his management rights in all the companies that he owned and controlled to their children. The 4th Claimant again disagreed.

53.4   At no point in time did the 4th Claimant relinquish his beneficial interests or management rights to the Digital Assets and in the Foreign Companies, through the Oral Agreement, 2C Agreement, DFG Agreement, SRIL Agreement and the W3 Holding Agreement.

54.   Subject to discovery and provision of further particulars by the Defendants, the best particulars the Claimants can give of the 2nd Defendant's inducement of the 1st Defendant to breach the Oral Agreement with the 4th Claimant are as follows.

54.1   The 4th Claimant and/or the Claimants repeat Section III(A) above, in particular paragraphs 47.1 to 47.3C, 47.5 and 47.6 above.

54.2   In the R&T 12.2.24 Letter, the 1st Defendant asserted, among other things that:

(a)   The Digital Assets in the Entrusted Digital Wallets allegedly "*belong to and/or are otherwise owned by [the 3rd Defendant], which, in turn, is wholly owned by [the 2nd Defendant] … the trust ultimate beneficial owner of the Digital Assets*";

(b)   On or around 6 December 2023, the 1st Defendant allegedly "*discovered there had been certain trades in the EUC Accounts which raised concerns*". The 1st Defendant "*reported this to [the 2nd Defendant], who instructed [the 1st Defendant] to disable [the Claimants'] access to the API keys to the EUC Accounts*"; and

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

  (c) "*On or around 8 December 2023, on [the 2nd Defendant's] instructions, the [1st Defendant] transferred the Digital Assets to the [3rd Defendant/ the 2nd Defendant's] wallets*".

b. The Claimants deny the allegations in the R&T 12.2.2024 Letter at paragraphs 54.2(a) and 54.2(b) ~~54.3(a) and 54.3(b)~~ above. The claim in paragraph 54.2(c) ~~54.3(c)~~ above is also not admitted.

54A. Subject to discovery and provision of further particulars by the Defendants, the best particulars the Claimants can give of the 12th Defendant's inducement of the 1st Defendant to breach her D1 Oral Agreement with the 4th Claimant are as follows.

(a) Paragraphs 47.3(g), and 47.3A – 47.3C above are repeated. ~~It came to the Claimants' attention by an email from the 5th Defendant on 18 April 2024 that between 8 December 2023 to 21 February 2024 ("**Relevant Period**"), a large number of the Digital Assets which the 4th Claimant had entrusted to the 1st Defendant was deposited into an account held in the 12th Defendant's name ("**WQ Gate Account**") on the Gate.io cryptocurrency exchange operated by the 5th Defendant ("**Deposits**"). The Deposits largely cohere with a list of unauthorised transfers of the 4th Claimant's Digital Assets from 8 December 2023 onwards, at rows 1 to 17 of **Annex D**.~~

(b) ~~During the Relevant Period, Digital Assets worth about USD 2.5 million (valued as at 18 April 2024) were withdrawn from the WQ Gate Account.~~

(c) The 1st Defendant gave a fictitious account of various matters in dispute in ~~an 1st Affidavit made in this action on 28 March 2024 ("**1WQ**")~~ WQ1,

including the false claims at paragraphs 31 – 33 about how the 12th Defendant and the 2nd Defendant were supposedly in charge of the trading strategy of an ill-defined "*Digital Finance Group*" which she abbreviated to "*DFG*". This was done without differentiating as to whether the 1st Defendant was referring to the 3rd Defendant or not. The 1st Defendant also acknowledged in ~~1~~WQI1 the 4th Claimant's claim that from 9 December 2023 onwards, the 1st Defendant made the unauthorised transfers of the 4th Claimant's Digital Assets listed in rows 1 – 5, 7 – 9, 15 – 17, 21, 35 and 36 of **Annex D**. The 1st Defendant asserted in ~~1~~WQI1 that a number of such transfers were made "*in the ordinary course of DFG's business **upon [the 12th Defendant]'s instructions**"* (emphasis added).

(d)     The 4th Claimant has never given the 12th Defendant permission to give the alleged instructions the 1st Defendant described in ~~1~~WQI1 as being "*in the ordinary course of DFG's business*" concerning the 4th Claimant's Digital Assets in **Annex D**. The 12th Defendant has thereby instigated the wrongful removal of the 4th Claimants' assets in breach of trust duties owed to the 4th Claimant as well as his employment duties.

55.     In the circumstances, to the extent that any unauthorised transfers of the Digital Assets made by the 1st Defendant were on the instructions of the 2nd and 12th Defendant<u>s</u>, the 2nd and 12th Defendant<u>s are</u> ~~is~~ liable to the 4th Claimant and/or the Claimants for inducing breaches of the D1 Oral Agreement.

~~(D) Further and/or in the alternative, the 2nd Defendant is liable to the 4th Claimant and/or the Claimants for breach of trust in relation to the Digital Assets which were held by her on trust for the 4th Claimant~~

56. ~~The 4th Claimant and/or the Claimants repeat paragraphs 54 and 55 above.~~

57. ~~The Claimants repeat paragraphs 8 and 21.2(a) above. In the circumstances, some of the Digital Assets have been held in cryptocurrency wallets registered in the 2nd Defendant's name as the 4th Claimant's nominee. Such Digital Assets were, at all material times, ultimately beneficially owned by the 4th Claimant.~~

58. ~~In the circumstances, to the extent that any of the Digital Assets held on trust by the 2nd Defendant for the 4th Claimant were the subject of any 51 nauthorized transfers or trades made by the 1st Defendant on the 2nd Defendant's instructions, such transfers or trades that were instructed by the 2nd Defendant amount to breaches of trust in relation to the Digital Assets which were held by her on trust for the 4th Claimant and/or the Claimants.~~

**(E)    ~~Further and/or in the alternative, the 1st – 4th and 12th Defendants are liable to the 4th Claimant and/or the Claimants~~  Liability for conversion of the Digital Assets**

59.    The 4th Claimant and/or the Claimants aver that by reason of the facts and matters pleaded herein, the <u>1st, 2nd, 3rd, 4th, 8th, 10th, 11th, and/or 12th Defendants</u> ~~1st – 4th and 12th Defendants~~ are liable to the 4th Claimant and/or the Claimants for the wrongful conversion of the Digital Assets. Subject to discovery and provision of further particulars by the Defendants, the best particulars the Claimants can give of this claim are as follows:

59.1    The 4th Claimant and/or the Claimants have rightful ownership title to the Digital Assets.

59.2    The 4th Claimant had entrusted the access, control and dominion over the Digital Assets to the 1st Defendant for the sole purpose of facilitating her given task of administering and operating the Digital Assets on the 4th Claimant's instructions, pursuant to the D1 Oral Agreement.

59.3    As agreed in the D1 Oral Agreement, at no point did the 4th Claimant and/or the Claimants relinquish to the 1st – 4th and 12th Defendants the ownership rights or any rights to sell and dispose of the Digital Assets without the 4th Claimant's and/or the Claimants' instructions.

59.4    In fact, it was an essential term of the D1 Oral Agreement that the 1st Defendant was to act on the 4th Claimant's instructions at all times in her administration and operation of the Digital Assets.

59.5    The 4th Claimant and/or the Claimants repeat paragraphs 47.1 to 47.6 above.

59.6    The assertion in the R&T 12.2.24 Letter to the effect that the Digital Assets in the Entrusted Digital Wallets allegedly "*belong to and/or are otherwise owned by [the 3rd Defendant], which, in turn, is wholly owned by [the 2nd Defendant]*" shows that 1st – 3rd Defendant have denied or purported to deny the ownership rights of the 4th Claimant and/or Claimants to the Digital Assets. As part of the Digital Assets are nominally held by the 2nd – 4th Defendants directly, the continuing denial of the ownership rights of the 4th Claimant to the Digital Assets in this action by the 2nd – 4th Defendants constitutes conversion of those Digital Assets by the 2nd – 4th Defendants.

59.7    The 10th, 11th, and 12th Defendants have similarly refused to account for

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

and denied access to the Digital Assets directly or indirectly held nominally through them or in their names or otherwise under their control, thereby similarly denying the ownership rights of the 4th Claimant and/or Claimants to the same.

60.    To the extent that any of the ~~Stolen~~ Digital Assets ~~were~~ have been transferred to Impugned Wallets and/or other digital wallets owned or controlled by the 1st – 4th, 8th,and/or 12th Defendants ~~and to the WQ Gate Account~~, the 4th Claimant and/or the Claimants claim that the 1st – 4th,. 8th,and 12th Defendants have wrongfully converted the Digital Assets for their own use and enjoyment, and/or wrongfully deprived the 4th Claimant and/or the Claimants (as the rightful owner) of the use and enjoyment of the Digital Assets.

**(F)    The 4th Claimant and/or the Claimants suffered loss and damage and their entitlement to equitable compensation**

61.    By reason of the aforesaid matters, the 4th Claimant and/or the Claimants have suffered loss and damage and/or are entitled to equitable compensation. The 4th Claimant and/or the Claimants claim against the Defendants damages and/or equitable compensation (to be assessed and without limitation as to such other basis for assessment as may be determined by the Court) in the form of the full value of the Digital Assets as at such date as may be determined by the Court, and/or without derogation from any entitlement for such higher or other sums and/or any alternative basis for assessment:

61.1    the profits that would have been made had the Digital Assets remained under the 4th Claimant's and /or the Claimants' control;

61.2    less the profits actually made from the Digital Assets between 6 December 2023 to the date of judgment, where the value of such expected profits is greater than the actual profits made; and

61.3    add the losses in value of the Digital Assets between 6 December 2023 to the date of judgment.

62.    The above are the best particulars that the Claimants can provide pending discovery.

**(G)    Further and/or in the alternative, the 1st to 4th Defendants and/or 8th and 10th to 12th Defendants are unjustly enriched by the Digital Assets**

63.    The 4th Claimant and/or the Claimants repeat Sections II and III(A) above, including in particular paragraphs 47.1 to 47.6 above.

64.    Further and/or in the alternative, the Claimants aver that by reason of the matters pleaded herein, the 1st to 4th Defendants and/or 8th and 10th to 12th Defendants are liable to the 4th Claimant and/or the Claimants for unjust enrichment.

64.1    At all material times, the 4th Claimant and/or the Claimants are the rightful owners of the Digital Assets.

64.2    Pursuant to the Oral Agreement between the 1st Defendant and the 4th Claimant, the 1st Defendant was only entitled to unilaterally withdraw 10,000 USDC tokens per month as her remuneration for administering and operating the Digital Assets. The Digital Assets were worth approximately USD 172 million as of 19 February 2024.

64.3    The 1st Defendant's wrongful act of seizing and/or retaining the Digital Assets, and/or transferring the Stolen Digital Assets to Impugned Wallets owned or controlled by her, the 2nd and 3rd Defendants and/or the 8th and 12th Defendants, and excluding the 4th Claimant and/or the Claimants access to the Digital Assets, whether in the Impugned Wallets or through any form of control by the 1st – 4th, ~~and~~ 8th, 10th, 11th and/or 12th Defendants, is an unjust enrichment at the 4th Claimant's and/or the Claimant's expense.

64.4    Such enrichment is unjust by reason, among other things, of the retention and/or holding of any such Digital Assets without the knowledge, consent or authority of the 4th Claimant and/or Claimants against the backdrop of the ~~1st Defendant's~~ various breaches of duties set out at Section III(A) above ~~paragraphs 49 to 52~~ as well as the absence of any basis or consideration for the 1st to 4th, ~~and~~ 8th 10th, 11th and/or 12th Defendants to retain or hold on to the Digital Assets.

**(H)    The 1st, 2nd, 3rd, 8th 10th, 11th, and ~~8~~12th Defendants hold the Digital Assets on remedial constructive trust for the 4th Claimant**

65.    The Claimants repeat paragraphs 49 to 52 and 56 to 58.

66.    The 1st, 2nd, 3rd, 8th, 10th, 11th and 12~~8~~th Defendants hold the Digital Assets on remedial constructive trust for the 4th Claimant.

67.    At all material times, the 1st Defendant was fully aware, and know that, the Digital Assets are ultimately beneficially owned by the 4th Claimant. Further, the 1st Defendant was fully aware that the 1st, 2nd, 3rd, 8th, 10th, 11th and 12~~8~~th Defendants are not entitled to the Digital Assets.

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

68.    However, the 1st Defendant wrongfully carried out unauthorised transfers of the ~~Stolen~~ Digital Assets in **Annex D** to Impugned Wallets of which the 1st, 2nd, 3rd, 8th and/or the 12~~8~~th Defendants own, control and/or know the passwords to, without the 4th Claimant's consent and wrongfully excluded the 4th Claimant from the Digital Assets that remain in the Entrusted Digital Wallets. In respect of the Digital Assets held by or through the 10th and/or 11th Defendants, the 12th Defendant acting for himself and for the 10th and 11th Defendants, wrongfully seized, retained, and/or excluded the 4th Claimant and/or the Claimants from access to and/or control over such Digital Assets.

69.    The 4th Claimant is thus entitled to a declaration that the 1st, 2nd, 3rd, 8th, 10th, 11th and 12~~8~~th Defendants hold the Digital Assets on remedial constructive trust for the 4th Claimant and/or the Claimants.

## V.    THE CLAIMANTS' CLAIMS IN RELATION TO THE SHARES IN THE FOREIGN COMPANIES, SUBSIDIARIES & 10% SHARE IN 2C & The NON-DIGITAL ASSETS

**(A)    The 1st, 2nd and 12th Defendants and the Foreign Companies are liable to the 4th Claimant for unlawful means conspiracy to seize control of the Foreign Companies and the underlying assets held through them and/or in their names**

69A.    The Claimants aver that by reason of the matters pleaded in Section III(B) above, the 1st, 2nd and 12th Defendants and the Foreign Companies, or any two or more of them are liable for jointly and unlawfully conspiring in coordination to seize control of the Foreign Companies and the underlying assets held through them

and/or in their names, with intent to injure the 4th Claimant. Such combination and/or agreement to perform the acts complained of may be inferred from, amongst others and without limiting the matters set out in Section IV(A) above, the following overt acts of the 1st, 2nd and 12th Defendants, which are attributable to them personally and to the Foreign Companies for which they were the sole nominal director, shareholder and/or treasurer, as the case may be:

(a)     The 12th Defendant took steps to procure access to the 'dfg.group' domain, and subsequent to this, either the 1st or 2nd Defendant caused an email to be sent from Ms Chen's email address on such domain to change the authorised contact person for the Foreign Companies to the 2nd Defendant. Thereafter, the 2nd Defendant took steps to exclude Ms Chen and/or the Claimants from access to the Foreign Companies' affairs. Paragraphs 48.1 to 48.3, 48.6 to 48.7 and 48.9 above are repeated.

(b)     The 2nd Defendant directly or indirectly procured a change in directorship over Silvery Capital from Mr He to the 12th Defendant. Paragraph 48.5 above is repeated.

(c)     The 1st and/or 12th Defendants modified the password to the 10th Defendant's bank account with UOB Singapore, as a result of which Ms Sun was no longer able to access the account. Paragraph 48.8 above is repeated.

(d)     Shortly after the 1st Defendant's unsuccessful request to Ms Chen for the handover of the company seals and other materials of the Foreign Companies, the 2nd Defendant instructed Bright & Young to send a lawyer's letter to Ms Chen demanding the return of the same. Paragraph

48.5 above is repeated.

(e)     The 1st, 2nd and 12th Defendants stopped adhering to the 4th Claimants' instructions and providing information to him as regards the Foreign Companies, the Subsidiaries, and/or their underlying assets, and also instructed and/or procured Mr Culver to do the same. The 1st Defendant also unilaterally deleted the Fidelity Group Chats, and around the same time, the 12th Defendant deleted his bilateral Telegram chat with the 4th Claimant. Paragraphs 48.4 and 48.10 above are repeated.

(f)     The 1st, 2nd and 12th Defendants all denied the 4th Claimant's ultimate beneficial ownership to the Foreign Companies, the Subsidiaries, and/or their underlying assets, by falsely asserting that it is the 2nd Defendant who beneficially owns them instead. This is despite the Foreign Companies, the Subsidiaries and/or their underlying assets having all been indirectly funded by the 4th Claimant, and 1st, 2nd and 12th Defendants having provided no funding and/or consideration for them.

(g)     The 2nd and/or 12th Defendants, including with the assistance of Mr Culver, procured the transfer and/or dissipation of the Non-Digital Assets to yet-unknown persons, in particular, the Genesis Proceeds.

69B.   The above acts carried out were in breach of the 1st, 2nd, 12th Defendants and/or the Foreign Companies' fiduciary duties owed to the 4th Claimant and/or in breach of trust and/or contract, with intent to injure the 4th Claimant, such injury being the deprivation of all rights of access, control, and/or ownership of the Non-Digital Assets. Further or alternatively, they were carried out in circumstances where the 1st, 2nd, 12th Defendants and the Foreign Companies knew or ought to

have known that such acts were in breach of contract, fiduciary duties and/or trust owed to the 4th Claimant, and/or in breach of trust.

**(A)(B)** ~~**Further, the 2nd** Defendant is liable~~ **Liability to the 4th Claimant for breach of trust and/or fiduciary duties and/or breach of contract in relation to Non-Digital Assets ~~the shares~~ held on trust by ~~her~~ the 2nd Defendant**

70.    Pursuant to the 2C Agreement, DFG Agreement, the SRIL Agreement and the W3 Holding Agreement, the 2nd Defendant holds the 10% Share in 2C and all the shares in the 3rd, 4th and 9th Defendants ~~Foreign Companies~~ as well as assets under accounts in her name maintained with UOB Singapore, Bank of America Merrill Lynch, Credit Agricole and Kraken, on trust for the 4th Claimants. Additionally, pursuant to the DFG Agreement, the SRIL Agreement and the W3 Holding Agreement, which the 2nd Defendant had entered into both in her personal capacity as well as for and on behalf of the 3rd, 4th and/or 9th Defendants, the 2nd Defendant along with the 3rd, 4th and/or 9th Defendants also held the underlying assets held through and/or in the names of the 3rd, 4th and/or 9th Defendants, including in particular all of the shares in their Subsidiaries (and in turn, the underlying assets held through and/or in the names of the Subsidiaries) on trust for the 4th Claimant. Section III(B) and paragraphs 49, 40, 43.2-43.5, 44.2, 45.3 and 53.4 are repeated in this regard, with the following highlighted without limitation therefrom.

70.1    The 4th Claimant provided the instructions and all necessary means and/or funding for the incorporation and/or acquisition of the 2nd Claimant (including the 10% Share in 2C) and the 3rd, 4th and/or 9th Defendants

(and/or the Subsidiaries and/or the underlying assets held through them and/or in their names) ~~Foreign Companies~~. The 2nd Defendant gave no consideration for the 10% Share in 2C and the shares in the 3rd, 4th and 9th Defendants (and/or their Subsidiaries and/or the underlying assets held through them and/or in their names) ~~Foreign Companies~~. Nor did the 3rd, 4th, and/or 9th Defendants (and/or their Subsidiaries) give any valuable consideration and/or funding for the underlying assets held through them and/or in their names.

70.2    Pursuant to the 2C Agreement, DFG Agreement, the SRIL Agreement and the W3 Holding Agreement, the 2nd Defendant (in her personal capacity and for and on behalf of the 3rd, 4th, and 9th Defendants) also agreed to be the 4th Claimant's agent, trustee, and/or nominee, and to act only in accordance with the 4th Claimant instructions and to execute such corporate documents as she might be directed by the 4th Claimant to sign from time to time.

70.3    The 2nd Defendant (in her personal capacity and for and on behalf of the 3rd, 4th, and 9th Defendants) was therefore accorded and entrusted by the 4th Claimant with discretion and power and the ability to unilaterally and significantly influence the 4th Claimants rights, position, legal and/ or practical interests in the 10% Share in 2C and the 3rd, 4th and/or 9th Defendants ~~Foreign Companies,~~ (and their Subsidiaries and/or underlying assets held through them and/or in their names).

71.    In the circumstances, the 2nd Defendant and the 3rd, 4th, and/or 9th Defendant (acting through the 2nd Defendant) at all material times owed the 4th

Claimant the duty to perform her trust and fiduciary duties honestly and to act in good faith for the 4th Claimant's benefit.

72.    However, the 2nd Defendant acted in breach of trust and/or her fiduciary duties owed to the 4th Claimant by (a) exercising the legal powers attached to her directorships and/or shareholdings to the 4th Claimant's detriment; (b) refusing to recognise the 4th Claimant's beneficial ownership in the 10% Share in 2C and the ~~Foreign Companies~~ 3rd, 4th and/or 9th Defendants (and the underlying assets held through them and/or in their names), and/or retaining and/or refusing to convey the shares in the 3rd, 4th and/or 9th Defendants (and the underlying assets held through them and/or in their names) ~~Foreign Companies~~ despite the 4th Claimant's demands; ~~and~~(c) making an affidavit filed on 28 March 2024 in this action, wrongfully claiming to be the true beneficial owner of the 10% Share in 2C and all the shares in the 3rd, ~~and~~ 4th and/or 9th Defendants~~and W3 FO, the family office company owned by the 9th Defendant at paragraph 14 above.~~;   (d) the 2nd Defendant exercising the legal powers attached to her directorship and/or shareholdings without authorisation and to the 4th Claimant's detriment, as detailed at paragraphs 48-48.14 above; and (e) procuring, permitting, and/or facilitating the transfer and/or dealing with the Non-Digital Assets held through and/or in the names of the 3rd, 4th, and/or 9th Defendants and/or their Subsidiaries, without the instruction and/or authorisation of the 4th Claimant, including in particular the Genesis Proceeds.

72A.   Further or alternatively, insofar as the above wrongful acts and/or omissions on the part of the 2nd Defendant extend to the business, affairs, and underlying assets held through and/or in the names of the 3rd, 4th, and/or 9th

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

Defendants, they are attributable to the 3rd, 4th, and/or 9th Defendants, as a consequence of which they are similarly liable for breach of trust and fiduciary duties owed to the 4th Claimant.

72B.   Further or alternatively, by reason of the matters set out above, the 2nd Defendant has been unjustly enriched in respect of the shares in the Foreign Companies and/or Subsidiaries and/or the underlying assets held by and/or through them, whilst the 3rd, 4th, and/or 9th Defendants have been unjustly enriched by the underlying assets held by and/or through them, and/or holds such assets on remedial constructive trust for the 4th Claimant.

72C.   Further or alternatively, the 1st and/or 12th Defendants are liable for dishonestly assisting in the perpetration of the above breaches of trust and/or fiduciary duties on the part of the 2nd, 3rd, 4th, and/or 9th Defendants in respect of the shares in these companies (and their Subsidiaries and/or underlying assets held through and/or in their names), by reason of amongst others the matters set out in Section V(A) above, in circumstances where they knew or ought to have known that such assets were at all material times beneficially owned by the 4th Claimant, and the seizure, retention, and/or transfer thereof were in breach of trust and/or fiduciary duties owed to the 4th Claimant.

72D.    Further or alternatively, the 1st 2nd and/or 12th Defendant(s) is/are liable for breach of trust and/or fiduciary duties, and has/have been unjustly enriched, in respect of the fiat Non-Digital Assets held through and/or in the names of the 2nd, 3rd, 4th, 9th and/or 12th Defendants and/or the 3rd, 4th, 9th, 10th and/or 11th Defendants' Subsidiaries, in particular the assets held under bank accounts maintained with UOB Singapore, Bank of America Merrill Lynch, Credit Agricole,

FV Bank, Morgan Stanley, and/or Summit National Bank as listed in **Annex E** in respect of which the operation and/or access had been vested in the 1st Defendant by the 4th Claimant, and , and/or hold such assets on remedial constructive trust for the 4th Claimant. Section V(A) and paragraphs 37A and 46.4 are repeated in this regard.

73.   The 2nd Defendant has also exercised the legal powers attached to her directorship and/or shareholdings to the 4th Claimant's detriment. Further or alternatively, by reason of the above, the 2nd, 3rd, 4th, and/or 9th Defendants acted in breach of the 2C Agreement, DFG Agreement, the SRIL Agreement and the W3 Holding Agreement respectively.

73.1   One Ms Chen Xiaojie ("**Ms Chen**") was appointed by the 4th Claimant to be the contact person for the Foreign Companies.

73.2   In or around 7 December 2023, the 1st and/or 2nd Defendant wrongfully accessed Ms Chen's email account and impersonated Ms Chen to write to the company secretarial services providers of the Foreign Companies to inform them that Ms Chen would no longer serve as the contact person for the companies and to request that the contact person be changed to the 1st Defendant and the 2nd Defendant instead. This was done without Ms Chen's or the 4th Claimant's knowledge, consent or authority.

73.3   On 7 December 2023, the 2nd Defendant sent Ms Chen a "Warning Notice", stating, alleging, among other things, that (a) she was the sole shareholder and director of the 3rd Defendant; that (b) Ms Chen is the 3rd Defendant's previous contact person in charge of incorporation; and that (c) Ms Chen had no right to engage any course of action that may change the

shareholding structure of the 3rd Defendant.

73.4    On or around 11 December 2023, the 2nd Defendant instructed a law firm in Shanghai, Bright & Young Law Firm, to send Ms Chen a "Letter of Demand" demanding that Ms Chen return the official seal and other company documents of the 4th Defendant to the 2nd Defendant within 10 days of the letter, among other things.

73.5    On 14 March 2024, on behalf of the 2nd Defendant, Bright & Young Law Firm sent another "Letter of Demand" to Ms Chen Xiaojie demanding that Ms Chen return the official seal and other company documents of the 3rd Defendant to the 2nd Defendant within 10 days of the letter, among other things.

73.6    Further, the 2nd Defendant instructed Mr Culver to stop taking instructions from the 4th Claimant. The 2nd Defendant also claimed that all trading instructions required her consent on the basis that she was the registered shareholder of the Foreign Companies.

73.7    As a result of the matters pleaded above, the 4th Claimant has lost his management rights and control of the Foreign Companies.

74.    The 2nd Defendant has refused to recognise the 4th Claimant's beneficial ownership and/or refused to convey the 10% Share in 2C and the shares in the Foreign Companies.

74.1    On 11 March 2024, the Claimants instructed their lawyers, D&N, to write to

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

the lawyers for the 2nd to 4th Defendants, R&T regarding whether the Claimants' position that the beneficial ownership and right to control the 3rd, 4th and 9th Defendants belonged to the 4th Claimant was in dispute (the "**D&N 11.3.24 Letter**").

74.2    In the D&N 11.3.24, the Claimants also requested that, amongst other things:

(a)    the 2nd Defendant sign all documents and do all things necessary to effect the transfer of all the shares of the Foreign Companies to the 4th Claimant and/or his nominees;

(b)    the 2nd Defendant revoke all her instructions to the officers and corporate secretarial services providers of the Foreign Companies not to take instructions from the 4th Claimant and/or his agents and to direct them to resume taking instructions from the 4th Claimant and/or his proxies and agents and no one else; and

(c)    the 2nd Defendant resign as director of the Foreign Companies and handover all directorships in the Foreign Companies to the 4th Claimant and/or his nominees.

74.3    On 22 March 2024, R&T responded to state that the 1st to 4th Defendants "*deny the allegations set out at paragraphs 3 to 7 of [the D&N 11.3.24 Letter].*

**~~(B)~~(C)    ~~The 12th Defendant is liable~~ Liability to the 4th Claimant for breach of trust and/or fiduciary duties and/or breach of contract in relation to**

**~~the~~ Non-Digital Assets ~~shares held on trust by him for the 4th Claimant in the 10th and 11th Defendants & the DFG WQJ Agreement with respect to the 3rd Defendant~~**

74A.    Pursuant to the Create Fortune Agreement and the Jumbo Agreement, the 12th Defendant is the sole director of and holds all of the shares in the 10th and 11th Defendants and the underlying assets held through them and/or in their names, as well as assets under a UOB Singapore account in his name, on trust for the 4th Claimant.

(a)    The 4th Claimant provided the instructions and all necessary means and/or funding for the incorporation of and the subscription of shares in the 10th and 11th Defendants, and/or underlying assets held through and/or in their names, as well as the above UOB Singapore bank account. The 12th Defendant gave no consideration for his shares in the 10th and 11th Defendants, and/or such other assets.

(b)    Pursuant to the Create Fortune Agreement and the Jumbo Agreement, the 12th Defendant also agreed that he was only to act in respect of the 10th to 11th Defendants in accordance with the 4th Claimant's instructions, save for any primary market projects investments made through the 10th to 11th Defendants, and/or through his own name (the latter of which are listed at S/N 61-66 of **Annex C**, Table 3), ~~into primary market projects~~ which were less than USD 1 million and were in accordance with the 4th Claimants instructions as to the general strategic direction of investments. The returns on and/or entitlements arising from such investments were nonetheless agreed to be held by the 10th – 12th Defendants (as the case may be) on

trust and on the behalf of the 4th Claimant;

(c) The 12th Defendant (acting for himself and for and on behalf of the 10th and 11th Defendants) was therefore accorded and entrusted by the 4th Claimant with discretion and power and the ability to unilaterally and significantly influence the 4th Claimant's rights, position, legal and/ or practical interests in the 10th and 11th Defendants as well as any assets held through them for the 4th Claimant.

(d) In the circumstances, the 12th Defendant and the 10th and 11th Defendants (acting through the 12th Defendant) at all material times owed the 4th Claimant the fiduciary duty to perform his trust and/or fiduciary duties honestly and to act in good faith for the 4th Claimant's benefit.

(e) However, the 12th Defendant acted in breach of trust and/or his fiduciary duties owed to the 4th Claimant by (a) refusing to recognise the 4th Claimant's beneficial ownership in the 10th to 11th Defendants and the underlying assets held through them and/or in their names, and/or by him personally, by reason of the matters set out in Section III above, including in particular, making various false statements in ~~an affidavit made in this action on 28 March 2024 ("1JWQ")~~ WQJ1, including at paragraph 7 ~~there~~of ~~1JWQ~~, where he stated that it was the 2nd Defendant who had provided the funds for investment into various startup projects in the cryptocurrency industry by the DFG Platform, which included the 10th to 11th Defendants; and (b) failing to account to the 4th Claimant and/or refusing to act in respect of the 10th and 11th Defendants and the underlying assets held through them and/or in their names and/or by him personally, in accordance with the 4th

Claimant's instructions.

74B.   On account of the allegations and various statements made in WQJ1 ~~1JWQ~~, the 12th Defendant has also repudiated his obligations owed to the 4th Claimant under the DFG WQ~~J~~ Agreement at paragraph 43.4 above. The 12th Defendant ~~4th  Claimant~~ is therefore acting in breach of contract, trust and/or his fiduciary duties owed to the 4th Claimant by refusing to manage and operate the 10th and 11th Defendants, their Subsidiaries, and/or underlying assets held through or in their names ~~3rd  Defendant~~ in accordance with the DFG WQ~~J~~ Agreement.

74C.   Further or alternatively, insofar as the above wrongful acts and/or omissions on the part of the 12th Defendant extend to the business, affairs, and underlying assets held through and/or in the names of the 10th and 11th Defendant, they are attributable to the 10th and 11th Defendants, as a consequence of which they are similarly liable for breach of trust and fiduciary duties owed to the 4th Claimant.

74D.   Further or alternatively, by reason of the matters set out above, the 12th Defendant has been unjustly enriched in respect of the shares in the Foreign Companies and/or the underlying assets held by and/or through them, whilst the 10th and/or 11th  Defendants have been unjustly enriched by the underlying assets held by and/or through them, and they hold such assets on remedial constructive trust for the 4th Claimant.

74E.   Further or alternatively, the 1st and/or 2th Defendants are liable for dishonestly assisting in the perpetration of the above breaches of trust and/or fiduciary duties on the part of the 10th and/or 11th Defendants in respect of the shares in these companies (and/or underlying assets held through and/or in their

names), by reason of amongst others the matters set out in Section V(A) above, in circumstances where they knew or ought to have known that such assets were at all material times beneficially owned by the 4th Claimant, and the seizure, retention, and/or transfer thereof were in breach of trust and/or fiduciary duties owed to the 4th Claimant.

74F.    Further or alternatively, the 1st and/or 12th Defendant is liable for breach of trust and/or fiduciary duties in respect of the *fiat* Non-Digital Assets held through and/or in the names of the 10th and/or 11th Defendants, in particular the assets held under bank accounts maintained with UOB Singapore in respect of which the operation and/or access had been vested in the 1st Defendant by the 4th Claimant, and/or they hold such assets on remedial constructive trust for the 4th Claimant. Section V(A) and paragraphs 7, 37A, 43.4, 45B, 45C, 46.4 and 52H, are repeated in this regard.

74G.    Further or alternatively, the 12th Defendant is liable for breach of trust and/or fiduciary duties in respect of the Non-Digital Assets held through and/or in the names of the 10th and/or 11th Defendants, which were under his control and/or management in his capacity as CEO of the DFG Platform. Section V(A) and paragraphs 43.4, 45B and 45C are repeated in this regard.

**~~(C)~~ (D) ~~TL~~oss and damage and equitable compensation**

75.    By reason of the aforesaid matters, the 4th Claimant have suffered loss and damage and/or are entitled to equitable compensation. The 4th Claimant ~~and/or the Claimants~~ seek from the Defendants damages and/or equitable compensation (to be assessed) in the form of the full value of the Non-Digital Assets which he has

been deprived of as at such date as may be determined by the Court, and/or without derogation from any entitlement for such higher or other sums and/or any alternative basis for assessment:

a.   the profits that would have been made had the management rights to and control of the ~~Foreign Companies~~Non-Digital Assets remained with the 4th Claimant;

b.   less the profits actually made from the investments made or assets owned by the Foreign Companies between 6 December 2023 to the date of judgment, where the value of such expected profits is greater than the actual profits made; and

c.   add the losses incurred as a result of the 1st, ~~and/or~~ 2nd and/or 12th Defendant's management of the investments and assets of the Foreign Companies between 6 December 2023 to the date of judgment.

76.   The above are the best particulars that the Claimants can provide pending discovery and/or further particulars provided by the Defendants.

**AND THE CLAIMANTS CLAIM**

*In respect of the Digital Assets:*

(1)   A declaration that the 1st to 4th, 8th, 10th to ~~and~~ 812th Defendants hold the Digital Assets, whether owned by the 4th Claimant directly or through the 1st to 3rd Claimants and 2nd to 4th Defendants, on trust and/or constructive trust for the 4th Claimant and/or the Claimants, and in that connection:

(2)   An order that the 1st to 4th, 8th, 10th to 12th Defendants do forthwith

deliver up and/or return the Digital Assets that are in their possession and/or their control to the 4th Claimant and/or the Claimants;

(3)    An order that the 1st to 4th, 8th, 10th to 12th Defendants do forthwith, provide to the Claimants a full and complete account of the movement of the Digital Assets, or such money, ~~or~~ funds or proceeds representing the value of the Digital Assets as have been possessed or received by ~~the~~such Defendants or by any person on their behalf or to their order after 6 December 2023 or from such other date from which the 1st Defendant may be found to have effected any unauthorised disposals of the Digital Assets;

(4)    A tracing order in respect of the Digital Assets, or any part thereof, for the Claimants to trace and recover the assets or the proceeds thereof into which the Digital Assets have been converted, if any, and an order that any and all such assets and/or proceeds shall forthwith be delivered up to the Claimants;

(5)    An order for payment by the 1st to 4th, 8th and 10th to ~~8~~12th Defendants to the Claimants of all sums found to be due to the Claimants on the taking of an account, including interests, benefits, profits and/or traceable assets, and/or equitable compensation to be assessed in respect of any and all breaches of trust and/or fiduciary duty, dishonest assistance and/or knowing receipt, in respect of the Digital Assets as against the 1st – 4th, 8th and 10th to 12th Defendants;

(6)    Further or alternatively, damages to be assessed; ~~in respect of any losses~~

~~as a result of breaches of trust by any of the 1st to 4th, 8th and 812th Defendants, by reason of imposition of a constructive trust over the Digital Assets, whether owned by the 4th Claimant directly or through the 1st to 3rd Claimants and 2nd to 4th Defendants, as well as their fruits and proceeds (if disposed of);~~

(7)    A declaration that the 4th Claimant is the true beneficial owner of the Digital Assets;

(8)    An order that each of the 5th to 7th Defendants disclose to the 4th Claimant, in respect of each specific Impugned Wallet hosted by them on their respective cryptocurrency exchange

  (a)  the current balances of each such Impugned Wallet that are traceable to the Digital Assets;

  (b)  information and documents collected by the respective Defendant in relation to each such Impugned Wallet hosted by them; and

  (c)  details of all transactions involving each Impugned Wallet hosted by them from the dates on which the Digital Assets were credit against each such Impugned Wallet.

*In respect of the shares in the Foreign Companies (and their underlying assets) and the 10% Share in 2C;*

(9)    A declaration that the 1st Defendant is liable to the 4th Claimant and/or the Claimants for breach of the D1 Oral Agreement; the 2nd, 3rd, 4th, and 9th Defendants are liable to the 4th Claimant and/or Claimants for breach of the

DFG Agreement, SRIL Agreement, and W3 Holding Agreement;;the 12th, 10th, and 11th Defendants are liable to the 4th Claimant and/or Claimants for breach of the Create Fortune Agreement and Jumbo Agreement;

(10)   A declaration that the 1st to 4th, 8th and 10th to 8~~12~~th Defendants had been unjustly enriched in respect of the Digital Assets which each of them had seized, received, and/or retained, and/or hold the same on remedial constructive trust for the 4th Claimant and/or Claimants;

(11)   A declaration that the 1st to 4th, 8th and 10th to 12th Defendants or any two or more of them had unlawfully conspired to wrongfully seized, retain, and/or dissipate the Digital Assets (and any and all proceeds, benefits, assets and/or properties therefrom);

***In respect of the Non-Digital Asset***:

~~(9)~~ (12)  A declaration that the 4th Claimant is the true beneficial owner of the 10% Share in 2C as well as all the shares of the Foreign Companies and the rights and entitlements to the underlying assets held through the Foreign Companies and/or the Subsidiaries, and/or in their names; and that the 1st to 4th and 9th to 12th Defendants acted in breach of trust and/or fiduciary duties in respect of the Non-Digital Assets held through or in the names of the Foreign Companies;

~~(10)~~ (13)      An order that the trusts of the 10% Share in 2C and all of the shares in the Foreign Companies (and the rights and entitlements held through the Foreign Companies and/or the Subsidiaries, and/or in their names that are held in the names of the 2nd Defendant and the 12th Defendant in favour of

the 4th Claimant as the true beneficial owner be terminated, with all such shares held in the name of the 2nd Defendant and the 12th Defendant in the 10% Share in 2C and the Foreign Companies the Foreign Companies and/or the Subsidiaries, and/or in their names forthwith transferred to the 4th Claimant and/or his nominee;

~~(11)~~ (14)    An order that the 2nd Defendant and the 12th Defendant resigns and handover all ~~her~~ their directorships in the Foreign Companies to the 4th Claimant and/or his nominees;

~~(12)~~ (15)    An order that the 1st Defendant, ~~and/or~~ 2nd Defendant and/or 12th Defendant and/or the Foreign Companies: (a) disgorge and account for all the shares in the Foreign Companies and their Subsidiaries, and all underlying ~~trust~~ assets or properties of the Foreign Companies (and any and all proceeds, benefits, assets and/or properties therefrom) that are subject to the trusts binding on the 1st, 2nd and/or 12th Defendants; (b) sign all documents and do all things necessary to effect the transfer of control and ownership of all such assets and properties to the 4th Claimant or such nominees as he may direct;

(16)    An order for an inquiry as to what has become of the Non-Digital Assets, and that the 1st, ~~and/or~~ 2nd and/or 12th Defendants and/or the Foreign Companies, provide full updated reports as to all financial operations, status, location and values of all assets, investments and funds (and any and all proceeds, benefits, assets and/or properties therefrom) of the Foreign Companies and their Subsidiaries, from 6 December 2023 to the date of any judgment made in this action, and an order for payment of all

sums found due to the 4th Claimant and/or delivery up forthwith of any and all such assets, investments, and funds, and any and all such proceeds, benefits and/or properties therefrom, on such account and inquiry;

~~(13A)~~ (17)    A tracing order in respect of the assets held by the Foreign Companies, or any part thereof, for the Claimants to trace and recover the assets or the proceeds thereof into which such assets have been converted, if any, and an order that any and all such assets and/or proceed shall forthwith be delivered up to the 4th Claimant and/or his nominees;

~~(13B)~~ (18)    Equitable compensation for the breaches of trust and/or fiduciary duties on the part of the 1st, 2nd, 12th Defendants and/or the Foreign Companies~~Further damages to be assessed in respect of any losses as a result of breaches of trust by any of the 1st to 4th and 12th Defendants, including by reason of imposition of a constructive trust over the assets held by the Foreign Companies, as well as their fruits and proceeds (if disposed of)~~;

(19)    A declaration that the 1st Defendant is liable to the 4th Claimant and/or the Claimants for breach of the D1 Oral Agreement in respect of the fiat Non-Digital Assets which were under her control and/or oversight; the 2nd, 3rd, 4th, and/or 9th Defendants are liable to the 4th Claimant for breach of the DFG Agreement, SRIL Agreement, and W3 Holding Agreement; the 12th, 10th, and/or 11th Defendants are liable to the 4th Claimant for breach of the Create Fortune Agreement and Jumbo Agreement;

(20)    A declaration that the 1st, 2nd, 3rd, 4th, 9th, 10th, 11th, and/or 12th Defendants had been unjustly enriched in respect of the Non-Digital Assets which each

*Statement of Claim (Amendment No.~~12~~): ~~6 May~~~~16 July 2024~~[•] 2025*

of them had seized, received, and/or retained, and/or hold the same on remedial constructive trust for the 4th Claimant and/or Claimants;

(21)    A declaration that the 1st, 2nd, 3rd, 4th, 9th, 10th, 11th, and/or 12th Defendants or any two or more of them had unlawfully conspired to wrongfully seized, retain, and/or dissipate the Digital Assets (and any and all proceeds, benefits, assets and/or properties therefrom);

(22)    Damages to be assessed;

*General:*

~~(14)~~(23)        All necessary and consequential accounts, inquiries and directions be taken and made;

~~(15)~~(24)        Interest on a compounded basis or otherwise to be calculated in such manner as may be determined by this Honourable Court;

~~(16)~~(25)        Costs on an indemnity basis; and

~~(17)~~(26)        Such further and/or other reliefs as this Honourable Court deems fit to grant.

~~Re-d~~Dated this ~~6th~~ ~~17th  day of~~ ~~May~~~~July 2024~~[xx] day of [xx] 2025.

*Statement of Claim (Amendment No.1): 6 May [xx] January 2025*

**[certification]**

## ANNEX A

**List of addresses of the 4th Claimant's digital wallets including wallets held on various cryptocurrency exchanges containing his Digital Assets that were entrusted to the 1st Defendant, as at 6 December 2023**

1.    0x14A64596D1B86B8251b144e8D37b1FbA9876c495

2.    0xb2d3592120d07556C7BC1a275FC91D047E065940

3.    0xc3d31B7a26b9DB8e8199b9ABB39B73Ef196fd537

4.    0x3D04e630C257E3e49fc49D0b1de40D2499636E6C

5.    0x46dC070400595715DDb0Da58e4B9E9681b9786D6

6.    0xab2887E7708f357850140A978997f3AA05E3256b

7.    0xAd525DDb8D903756bF328Fd09aFb3db3bd4d8ADA

8.    0XCAfD2C24244c04395fF407942495eFd5EcD47388

9.    0xBC2fB0c34089a601225A0F03083Ee048dE738A06

10.    0x4b373311002E98f581Bc1F5d6E4d781AB37c67bF

11.    0x9c172634BeF0f5359aCf5F07A54100790aE74789

12.    0xB96279D9d3E0F601907BB391C461672EDD9Fc734

13.    0xD57a352ADEbAfe028740042A7B826cb566BeD38D

14.    0xBc24A2a096B0A51e185f8ec3714DDd6ba124f84e

15.    0xf06AC6e9A59EF34f6199259b0C58F389559c4e5B

16.    0X6B07F4539cC93088BF6204DF37596203b9a04613

17.    0xe927ccbec4bB189e6EbDEd3c446e2b59168f1Ec5

18.    0x27C8bbEEB401567445C9d1e0a6380ABF2759F475

19.    0xE0F047968054Cf1503b6FF270F22F1104F0fb5F4

20.   0x42b2c4473F8b47434DfcBBC7ec6409Ccf65dfB4B

21.   0x4045f91DF5aA4204d415b3955790bdCa4882db76

22.   0xd4c984D50DDD45Ad914e0Bd79ee917B0A6517E8A

23.   0xf8E7d2f62225dF56f99B7A3a772d00d9a9ef4254

24.   0x1772dD8f298B69Af2DF3797962B9F9E3aB2B0509

25.   0x0447b0D8AE4F6cD307bE1868F2569E697a52634F

26.   0x8BA77F0Eaa0a6f590d39166361c923B494da4147

27.   0xE58f30519c370f25F8f082d1B10cEE1537Df86e3

28.   0x276C7b35561F40a2af535260c4862f4f30Ea4714

29.   0xB90Be845b8908eE3C3FDE2De96dFda17ac0DB864

30.   0xFAb15610B348Fec42E5D07B3e9B1C52F6fe0c109

31.   0x9202023d274Bb13e3A46b1D3a876D6048f2C2297

32.   0x81b45bEAb44ca4bFc88A1A358c18939f5a52b5B7

33.   0xe73aB87ea9B3aeb166145126B958951Babdc781c

34.   0xC144213A95Fbe5a3Bd694b2AfA06eb8fA5233340

35.   0x992Fa30F142B48D573CC3895DdC0c710eff87697

36.   0xaee336dA4D221Db9E82Ff14bE53854EfaFD021f1

37.   0x3BD45dEc0490fB71F079CCAA6356a19ec4eFC9E8

38.   0x19Fac20FBdECaD3901c7824dB07a81bc31d3aea3

39.   0x5Fef5e942881025302Aa65A050B31aa985d708eE

40.   0x77A967486189A0A90663BafB53C4788141878491

41.   0x4b3629643c9f8f3Ba92CD29e9AEC766D9397fd9b

42.   0xe6BCD01e4aBf42F599b5Dc2a58cE4CC599D4dfec

43.    0x5a599828eB05EfAc7549B078D8b4135f5d969F1b

44.    0xa28b52197e85a318F2aAB4215d1CD49126856a8A

45.    0x4Bc5C812A50da864e201e6c0cAc12684feeEe914

46.    0xc1f3f8CC201B9158526bd0D9D15F33eE430114De

47.    0x0d766f14811bB2b392e17588Bc823d6d0532b3d9

48.    0x63d5bdb383261F96D7072B6bfEFD07c6C24C4e6e

49.    0x3A379801776436140c37821a67aFc35DFe1E7b4a

50.    0x98590a13312c891D3E1D318bDBd123B845e678df

51.    0x8Fa82Aa5914F8353C99c2E366CBF831556db9AD6

52.    0xdef1a676bDDd797a20cb9D49b7DB69b9b159276f

53.    0x194b2165Cd9748633e2b2a6b6ac1c6FE3Dce1cD2

54.    0x17cafa7545D50aA48Ae7f19696759E9b6f4769B0

55.    0x67FBC78D2fdaC07Ed2D040De9F50581310483596

56.    0xeFbBd648571Cb44Df604c9C4518E04f20d7D1Ea2

57.    0xA145C7373a0cF490040fff05C343Fb83Da32BC97

58.    0x211b586dE6C0643e1520D09195F0F7DFFF2dd9A1

59.    0xc67829132049FCC2aFDd93c9dED2bDBB501ece12

60.    0x2085481EE27FFfb3bb1993569109894e48Cbd28a

61.    0xa7BBCbc6f7daeeCF47aFF0902ed0FbC2ad4F6b28

62.    0x7fba873fCc06794a80099DE93e1b560E4f42C9F2

63.    0x3df694602da4d4D6e50cf34BD669B2f93e336198

64.    0xc2aa867D79f25750B5ebB53C3eB7bF161FEC8506

65.    0xa25Cbb1178651D1e116537A39076D43e2d2FB4B8

66.  0xA7A27143de8813A13D0D932542E874186BdeB7f3

67.  0x0a6e41A6928528f588F23741b5ce18f883f95E65

68.  0xf07DABe04f1843C7F880452A67AFEd0bb0f1dA65

69.  0x64F8A9d722f02DC1ff33AbdC254508bDa8a4dfD4

70.  0x6f2Cae46d361e42a580A5fC8AD7ECceebc646B4e

71.  0x70EA85777732890b3B91d1B1fA6b7De2947B0b99

72.  0X1786BA2A954BF37Cd3ef012f292C97504FaF9c71

73.  0x6464b563a8354445b3a1D273f2d944989fEa711f

74.  0xad3cE0963b0B0C3eDB658d51b15076D0714A86De

75.  0x0bd1506D8B6d1BF73a183Ddee48f9502687Ac3ac

76.  0x8727722AE94d9432dEee1131c01809635D718805

77.  0x1bc65686af2da8AA1B691A253409cA38e47Fa842

78.  0x5e1e2bd07F9026CC6939932295522dC1780091f7

79.  0xaF9ea70b873fE48DE0ee07bFe435D48c38E448b2

80.  0x8c1215B3c15e863616f72e9dfBAf9d93A1E67dCc

81.  0x0632F684b76395D8cB584E5F8269Dd33E6B88f3C

82.  0x66D71377a776aa5D440a6894270ae5819e732226

83.  0x73CA49cE914811b2a29e2aC3D800D91209c6e281

84.  0x113B901BA43cF3283f20A6a26FfC3da4ffbFB1f8

85.  0x199e55820d68506b8a307c12adb2A7580E0210FF

86.  0x091009aeae372C66a72EF8d4498f4bcDe733ed36

87.  0x094aAc271e7EaDE9B03d3F3354A6988c2891D9e1

88.  0X6B5a8AF7D4632217513f056B5fD98ac062837c3A

89. 0x7c42B4D8762c40Fd1923B969779Ed4C67439e1D1

90. 0xd14a1d114549b74CB1ef7C54F322F014b20B3e92

91. 0xc7B7D4aF7D0b748f40e5a906b4a5BDdeDfB3dF00

92. 0x409464bd7080154282D22ff97FeB0a9104edcFdA

93. 0x3b78743d66a6B2A8E59037B1063fC0c93CE1BD2A

94. 0xBcb74F06adae7311f6Dec5c6Bc544377111964D2

95. 0xb5aB21138f2ea195dD15f77501eD7D60B9Ab46E9

96. 0x20553aA6E7bed0875E99108fFF88f5fC3E0cD5E9

97. 0x8F341A79287DC86206cAfe576F90Baaf4C7F31d9

98. 0x40C1a1FB43Ddec8d0c327AEE37eEF8E06fF9FE1f

99. 0x2A71b039eC2763Ba9857DBe67b6A7F48DD8a5b2F

100. 0x4BA392a748Ca260bc0faBA4405f6b639594d77e9

101. 0xAAeb5325305C268DB2A6AF9490dAF4fee55d92a7

102. 0x88beca148443316F9cc49398F1d360B821C6Dfa2

103. 0x5a48f05A6fa866482A7C5583868f12A4e7C26FFd

104. 0x9AA1DdBF7b215f5929D4f5B6AB959dbdd8dFF24C

105. 0xaDECadd1692439f2553C15b24C229311447Ced62

106. 0x772AEe440De9E49f30d56aa820C1B813388b6972

107. 0xB0DAaAA12f8BCC71dbDBD9Ed26713fA189C34A15

108. 0x6DD019130f96a4f0dda8542e397A5AEdf7A5359B

109. 0x3696eB01641daB84F5CC0529816d903E8c377dC6

110. 0x29b1201e792a0f4Cb359E89917880D81c46A798f

111. 0x49a1d4D1C6E16f2843f693067aE2A652AcF58cac

112.  0xc60F4f91dD4EbcfA3E55200Cd9f5BE07D6E88675

113.  0xB67BF6514786101cd33361590759eF8550Ee4308

114.  0xfB3300A41725749fB0Fc3A3470de966a50D27155

115.  0xc08F92239Ff8254Ec09Bc30b134382267CACABE6

116.  0x3671492be8963ecae6a27FBC786F505E7fd3666E

117.  0x9eC215ED9A14b9080A08F4d6D6Ec270d6383d2d4

118.  0xa9E31c88c4593cE013CF2B4DD40337C56C416A38

119.  0xaea314DAe48eECE53D9debCDD5559a2c3E793ddf

120.  0x75500c7eaA9c0407BEbc9e688bA2b073A1B77074

121.  0x0612ac62Ea9D9DCf3Df5B09a53588A861def97Da

122.  0x491D5F20D848EC2b6975CECaA6D708A5A23f478a

123.  0x58CE89C9471ae15260D180CAceE933dd0298ded7

124.  0x2c24A99e801E0b2c7255fFbA2bE10065BD5923a3

125.  0xc405c74A85EFfec138FbDa5B313103447c8158EC

126.  0xEadA5074fa2ccE0053D26b1396F39c1189a3aEf0

127.  0x577194FFD67f91Af45086474685E9c71AC0fd4c3

128.  0xC286bEccf232B73112CEB76Cd0421b6BB8d47D4d

129.  0x5d97d351848b8410E2cb01d56CE594b70CC03Ec0

130.  0x8Dfe7F3Da0a9bd0BbB7359b00C05665c5134eCBF

131.  0xE1AFE27AC6ECA558E9DEB4342243C80EDa28Ccc6

132.  0x01B2913d48E8787d59bD03286c0a798b75aE18DB

133.  0x47A9265c947D18e2Cb3c70a6e560eFf5932D7049

134.  0xBb4d7C2a8c8445c48f62110e3a389CfB44274bf5

126

135. 0x5053A07f2615127ed49c5676591D269c4bE493Fb

136. 0xD2e487B78352f00C54313B75DE77acfB5e70F453

137. 0x1F613f2aE8795836ED2848A112CcE71607f33369

138. 0x2b51C0C023c782A2a388069AA8A109dea00F2BA7

139. 0xFC76515367b6Bf8e59BFff6E4a31ac31aF34A1fe

140. 0x3986f3c2c03e1cda95Eb4C1665F4b7F4E3d023Dc

141. 0x23C4790137498B8Bd7d38D54d0810b3E4152347F

142. 0x1f4b311F8142f36e68aa02EE17CF8cC66f145a1D

143. 0x604B29af0802C312F39e3c4357A583193153Ba93

144. 0x189A3A8fdBfa368171B021150Bce37CFD1A7DEC3

145. 0xf9F8424E623764bE6a897a380e0CF0b81AbF6452

146. 0xCc60E9188083656F8A83D16C1fFdaA0a08f54D72

147. 0x711fDcFA00460F728652f709D8C55545922Bd5De

148. 0x68D465bd7e055A5fbA25161AA134D06E35AA90aF

149. 0x51F9EA56CEC6e2d401E5cf79Ec1F387d582e8Ec8

150. 0x8115c3dCD76bb9a4E391738eC81873200E136397

151. 0x91E25108c6539C21e6a049d6D76E30483A31e559

152. 0x456c9cb49e731D0C3F11172a1dffa99eB481b343

153. 0xDD4bF64089E34985b85B3F4F8188573CB1b012B9

154. 0x18d33B6bf74Cafc815Ab77199418133A8A3d8dd4

155. 0xd20896799f7cB67116a430272e1fB4b745769B0D

156. 0x7374A1b6f5a18481DD231B2be465dF232126582c

157. 0x4E6b5ee9F8989E516303f97c2570bD6646502d9c

158.   0xD03Cf5CB0a11B0008eA4840405B0FA0416480292

159.   0x29dbb09C6f3cC3E8AA85b54cA807f444E2a853fb

160.   0x288F16BAFa613168F9F398430205d10C921Dc557

161.   0x4126C1654B46Fe678159BC6B645F05Ef425411af

162.   0x5e6a11fc68F3C433B21821a544c75B7601C4ff0E

163.   0x2fB7ae6c6F2Ad235029ff2Cfc4695667870126AD

164.   0xA0255149C3931E39C301b81aF8c1cd97e82BD270

165.   0xaE03786476c44E180769b7A77539FC754aEB25D5

166.   0xC1221f07DEDd727d8376a39850cB2BD7C2DE4428

167.   0xa771cEf5792Ca4648A757d0F28546dA76856Fb71

168.   0x28a1fb296b51FAf78923320AfD480C3D200fc31c

169.   0xeA86123440b504820E5f6E7860c90FF267992aBc

170.   0xDdB906CA36A4fAe496c3472A2C90836de4bF6eAb

171.   0X27763F767BB9CBCC98628D5D8F42299e7042c71f

172.   0x0bbc1Ab12F1E61aD1fEF8f74e507a8E8127be608

173.   0x102eEEfCa0b4B90eB0A319Bbc927c28878576745

174.   0x58D3A13e8990218A7CAA8D0d0F2e9eAA34D7ffD2

175.   0x7EA34506dB0e3BE531e32433d124554B580425c5

176.   0x76969Aa8d3780c2b5e49167f7E186001116dA6df

177.   0xfb4563B829739A9Fb7794588757A276c86D85B76

178.   0xb5aB0b4C1A51894F6eBAa8153ec98B9a70d6eaa2

179.   0x9f534D41FB4Ec58194516cF707bED88Fa2F674e1

180.   0x23194D15269bE6EB33B30067D4d3f5848fb1FD60

181.   0x1CD9551C4847f2456D3A434b8d915AA7826Fd1fE

182.   0xa8e5907911193F914C6bf8bAfAa238ea75261635

183.   0xF24C5B5769aA88e652aF8CDF51604546741409b1

184.   0x8034a366d788AEf289b10a8845c4DEcFF1c4Ee01

185.   0x0F10543d50b5dAd0C4a73E1d3B4c137185131f65

186.   0x2b14946985704bd32490Fda4c9A8E4Ca49166461

187.   0xeD9FfdA10f45763f60743D790708E2E64C6e965c

188.   0x4456100538044f9c0E5D0A99235CeC532bb33a01

189.   0XB974959B19A52732468A98baE179A7F5779Ec277

190.   0x21A6a9F41BE6355e4FC2f52cC89aefCf8268f897

191.   0XACAA5281bC5DB2778400D99C9D935056A2887173

192.   0x3Fb902C827e897BBf71D6F28858161f57F9e4455

193.   0x6428278D8307237BAd30a3ad4E576236bc3FdB1F

194.   0xD975bB833cb66b75Ad97721313e8EC3598D49a2d

195.   0x54B0904418550a67a442FCE95Aa8b0EB8dfc5abb

196.   0xaDfdBF5e2efFA1d952595E873c30dED7C2877FDa

197.   0x9250054887473E99ecc400505019Cedd38fF4670

198.   0xA82A2E222ae0f60894fe48E2cF041882Bc62f974

199.   0x75cD5B351Ae075D364ea05D7d664527D084d882F

200.   0x0a9565a19D7e976ef929f2db932D3cb230708De6

201.   0x7d2AAF39CAB0A826a08b38b5EDB3bFE0bDb383bf

202.   0xeB6926dB43CD7BC961443f19842EE70A536E970f

203.   0xF207a6780156435e7D50c536dcb0dCcC717f18A3

129

204.  0x9d9a6ba0c2F9FD1B68F2e6B587F880Dc2F7124Bc

205.  0x753C871bc5fE6f670936832e961e06fa5fB69cB6

206.  0x4Fcd989150B2FeA4450e8d25C5682a11575f69c0

207.  0x51b4396697167050Fb88bCF6eb2F6BeF7dCE4170

208.  0x1399f1f44A20e8C6022De4941550e97db2467937

209.  0xBE5A912C9397f054AF7DfD0eB906B0b31A943A04

210.  0xd0821ccbccf549Fdc0ff16DFBA24e5CAe3427E83

211.  0x7Fd7887C11bf9912B928BA002BE9F271422C2cCF

212.  0x5805f83ff46807F98e61133640F04576353ad76E

213.  0x585d78653784c00CdEe8705FE9eDb39fAf074d9f

214.  0xE954554534721dDA746A7EBCA52beE6e70d5C00E

215.  0x90300AEABE97C0732C13B8415d4a3FC6BD39c27a

216.  0x1197aaacDbc130Fa5FBe031dd7f67Ac196fb2BD8

217.  0x18d6C8507F791B1CB892563dc4E9Fdd15D4551AF

218.  0x5AC380a8e2dDE9bA56C536F4e2bDec4b4c1B97c7

219.  0x0aa623887A8493422D393850Fc8D3de0c85D7656

220.  0x22c2dc06f85caae758b4c29ba3766670c310175c

221.  0x9cf683991bc7E9E68AF7544B35eF5b068070338a

222.  13hpmjrqsXwyHNWVRDWazwa4g2yr6nf2vZKbmGEHtfEhDQMs

223.  1tWJDFMmLF1M4BtbLpyEEeHDimroMeTyH8WjA8G3GaBC6KB

224.  15HvdL3Qy8LwDLSkkVNSpYBixspuxfpqDttWGQmS9BUGr7Rr

225.  168TE6Z5L2tqXD5srehxFhnoe5YyrbBBa4PDr2ELB1jB3Mhn

226.  134YDQ9rFQePaodRMpBeRCXvU46zaVBk95zfhQphY7tuZxr

227.    16CxEKdEnM1yXcKeNrg3JUoiyDXaWfeJ8Xqqu8VAbNv2SnDZ

228.    1Uaosu1dQ5SYB1MuytcmybmZMKbQZVaL4LdUguT57t9nRyS

229.    16aXBANMe5d6GAejrWT5vuAvhgGdaMiXRoboayGTPASjruoF

230.    15WtPKCFVCXgP3tHowAYj17Wrg1jo4sLmAHdYNPqmbzwWsrT

231.    16949efYRomeh5n5Uh3uUZGf96tyj68siQ6UFT8nTS6ti37L

232.    16Ca4v8QkntvVa23roZuNZ5m62BH3LX5T3mzQNXEKdMULniM

233.    14BYsHAXbKJw7qBUebBpmy3jgYYPuysjHWu2Qpas1BRzaXZ

234.    16Dx4qLvLEE3ZDPbhrXBosPbfBUDxFtcwS8BfTEtBu9sRcnF

235.    14ZpvUzUYmsFamM1cTzEVqtAeGsKCvt2uw5M9Sj2YnKxA4CL

236.    15L2MdCoBu22ioyHKFDjDUZpvKUAU5gtArEmeQipEUc3dAao

237.    133TspFX13pQysB7ooV4C7SzFyoGZydsMJkbb7Gja4grYvUS

238.    1429oiVVBa8hrUFn9PMxVVeDahzPNqBKbXFZ35adasTPZKtf

239.    15hJHzu2Cp87hPsgUqYM4UNLNue8Ssw2uR8M1r3sneukdo3W

240.    128kS1mV1vt3xiri7W9RKPPULa7WWBiCHD6fAFHgZoN385Xt

241.    12bq5GNqfrziPXF7BDhNd4cnstCkqQqzHKahfuRnLN5S7QNF

242.    1f6pqS4cUfm1EXxR3fdrGbDPj2TMvRN2vZ3sPkoGqVrHq5b

243.    15zpWGPDtuP5JBbW8BYcthXEDR5wYoUhiFM1ucbbZs7JeLLK

244.    1n9vF3T2PmuZgpWrMkRPDdbnVBZhqMeT744iCDGpGzMbhyb

245.    14C7h64VZFjR7kqk26f7w9CFkFvzQDZ4d5Pyb1RDABM27oqB

246.    1WwC2KLHaRpiTmfnHaLuhpA5k2uJRAT79mfjaSCvEwARCZB

247.    14TvS1Q4Y31wNiV8J5Y3cu1t7CSfR9mJ8hJ8dTqSNjevD2QP

248.    16b3uThYPxyy6PCmF2rrGyxMzPvJ247Szu9YBDZAiTGPdaJt

249.    16ZqtvAzk53LuwtTJdg55zEXXASZzNH8pcGeiBhSJ5PRNFqV

131

250.    14vMTZVuKEYKGhQCm1nMR8Sqic1H5XA1nbqqXeEJQqXKAxh

251.    13bSk4KqTbtLtW1SMdwAcjrNuWVU9hvrwycMHBerSot1wdVJ

252.    14eVQpmmLM2MXtLV9tUEggytSxT5EWK9Df9dmsuYKzqrj34t

253.    1niomQNa2y4cQfuSJ27fM79WAFhgSsSrbCbMSktqyA5qdSF

254.    13yPg6VS7bXMCANgiGtfMNCGj81pWG85w7ATKajRFgXyk9hb

255.    12yyZpuUfSTrwhcMwPzvq5e7BseftP1Q3G4s5QMbyF9rfDyH

256.    13JiDCMYasv9huvNz4Rpjumo56GEbMj1MSAZmGbQa3pVtHw5

257.    16ihpoSrhkvGRWvUFeruj1b4btzRksxbhKJ4Ab3Ki3CCZZrY

258.    128mAt5i7Y5rBSJ4xs5YhWDFCSkgTzSFuaQPJRizniuuomLY

259.    15ZGkvxtT5VztUR9XUM3C5vf5JGsJkbaDS7NrhaqdozqAp6F

260.    131B8XRWhMYXgmDEvQNS55Dm1jcmdMk7W8Z8nFZLhWcdkUCq

261.    138UkRvcXSvFvyLU5wPjEx6cxbsvdhvLSnKEbxKQQXgnAcTz

262.    15qbQuYZKcM3j88RvWKo2j37RKeJ5ir9iXHfZ79HjJyfcsQG

263.    131WknZqpMhV1uYUbNvgNbCU4fkJHd4wUyBijC3E1p21WNEt

264.    15qEAeQwttFdGjbYaBq1Br7KAKxNdVog799b1FJoYFVZP18Z

265.    15P8cRq5pcRyp3ELmtRBJ81cMAdQ4Ub56BURpKbmg2EMWqrJ

266.    1ft689TS8BgKHC1sU8BNih7VZvQnLAiwYuy815J2Kq7716T

267.    14QXGKvRZxVK8Hrpt9gv72wF3WMu8CejTaiNWLmxxZvjPyU2

268.    15PsyJwqCvjFABiovYLyBzWz8vz7Bva4jEhi2ovQeeBUaMTj

269.    14FqErt3kTsgTPm8A9A2Uwc6Jsb7pcvMpmS6jzn15CnC1WM8

270.    16jNzaygQcpk7nQ8SXzuQkTS7K87rEB7TumqBuH2sufehr2T

271.    146LjfuqufqwzWNUVSYruPHvoZKnodZQv2rjJ7ea39fEG2fx

272.    12VaCTmbjNEDghp4pn2woU6SmxwpUP6hAfPoWjRmL4Tk465N

273.   0x06A84B6eF3410827Cb626F63727a49564743B563

274.   0xc4592B70b1a1c2147310959BEEe7534f6f1B1df7

275.   0xEBB03Ae307664390BFd5D895e861b2D179A6a73a

276.   0X72F1488B906C3909487C1CB2CFA99a26a357c0F5

277.   0xFfC3C3f292e1F96D5E03fB749271BdDd15d0F19E

278.   0xEE96253C6e4897063D5eAB6Cf04946fFD0E1a014

279.   0xB2c205ACc63596853993516D285C9fDf97391A8d

280.   0x0cdcAc02e6066ad7102b7C1bcB1504AD7517582f

281.   0x028584E5Efd6bc1FDa85947319338bc872693F2f

282.   0xBB471c8B42Fb41B6c32Ad63E394D9724C4b84091

283.   0x88B7092bD09cE0aDe9A4C409Fde7B857d14E6847

284.   0x5Ac9159034A33B5c3A1D20E5bEdc0fA283d8b5d2

285.   0x47511047Fa905426d3b9eFabadE7C27BC8a40794

286.   0x49489f25CC2fbDAb3c74D13d1503f0F1230db27A

287.   0x75e53092022E77Bb8AefCB2463a59D50C41a7734

288.   20x7f70FD22c4ad596198E2EbE4A90eB61b565B28c7

289.   0x66F943D9803EbDD967c01a662063bbF658a32a10

290.   0xfc59eabD33Bbda7d61948A3a9153947E09538ed3

291.   0xEe90e95Ac0B939ccb238461283B41764f83293E9

292.   0xD888770D96F6df3C8934adFf4F9c85203a4fAC10

293.   0xec322DB5c3EB3d0718B381A0004e99B6D505E9c0

294.   0x2831DEbD3dd5F6f408DfE8b611b625d20d8E2f8c

295.   0x3468D2DACBC96C7977d03686a6ecEfeAA1633857

296.   0xFe37c74B70f288BbFe417800eA97B52433AE94D0

297.   0x566C2CFDA06dA11d20411fD05831ed0B7dC0A49a

298.   0x0C56b542e3753462B7289F464673FCCc46D60b8D

299.   0x34125Ec4465c31ed8846B0b64D0602938a27Bf75

300.   0x230e86a55d3d7c2957A224dac87587Fa9ca1cF1c

301.   0xe5D3897070Ff320267D595e383f3049934938567

302.   0x8a2f2d501aec4a794dea4219fcb4c6da37099991

303.   0x04efabaac51112ad225ef4484f851141d8c6654c

304.   0x7d1d6ee2d956115f4247db574de2ed0afa2937fd

305.   0x94ba0d842dd8bdaaef6594fe9781bc2eb689035a

306.   0xb867d85ca2e2d0aef3f3d24ce9a520028fa82fa3

307.   0xae1fd9c5a698280d97f73d06edcc87be7bc9f9d1

308.   0xf3572cc7663e8ebd027552a069dbd447424aaee4

309.   0x12bf2d60d1e4a13594723caafab4c9791fc41a59

310.   0x7d0cf01947b866721c5cf904c40bf213f38399f6

311.   0xcc30d1a64bcc4b245734921783fe333c2bf1d7e0

312.   0x219a0406664ce7fac3f51978e95bb71253cb1cbf

313.   0xdb16158cae6f18eb5dcb7f342fbfa703af0ebb3d

314.   0xb8ca352c93135e0ec54538eada2e7b53bdfa3935

315.   0x08a04dc41ecf2ff1ae468be3d6f98df181623555

316.   0x97f19b65799ca6f7bf52bd0702013fdd9fdba614

317.   0x6eeb586cd59cbe9f98ad4b323eefa8f10fb4le8d

318.   0x29d88dee9710efa33b8d01c25d5994600894268f

319.   0x21faf9618c225353be6fa6587fa0a668daad1b67

320.   0x68f3aee0d89f17ffda243bf677ad5bfe8f2564a5

321.   0x7e229d516eaafb614e06dc34f8f49f5b2b3102cd

322.   0x8df831236a565544f2f6c6e5f885fb2f423670d3

323.   0x852a1faebd9d47e5e1cac3622f23ea55158baff3

324.   0xa4174f8cd0ed25b83796edf5bc7ac3e13d80c916

325.   0x876ded9e0b688a6480051c34e4f909968afa8cf0

326.   0xe1d2b4602b98a482c790b21e5fcee5318d62e30c

327.   0x2ac52eccffe07d7b149f38025bddc9b2286ca7df

328.   0xed69e60fc5b66559b348d5b64a2c1e1cf8f8bc17

329.   0x914365d6998bffddef8ddd5e5ebaad247601e436

330.   0x8b1e03857e3fbbe5a29ebf0f71e0369b9ef93980

331.   0x3320b1a7445161b1d475b5fc48da54c5db0e7f18

332.   0x403e6ebd91dce23fc53b1164934946b2918fedef

333.   0x5468142a87c357104c79396c5a19f7db62a7dd20

334.   0xe760784d45738d61b81940cc8005e72ee055862e

335.   0x855e14a0c3b735f4bef4b3b15e25b92b46da135b

336.   0xca95a43ce5f2bf775fe4147elec58e593c038562

337.   0xfbf3840b61c268fe411ce67fdb74885df704e857

338.   0x487f2a44b6d366c99ed81f50112018a771976a23

339.   0x179aabfaba593d4ff3cc1450048307f62e5bfe2b

340.   0xe4245ad29a16adf53f6d30849da8c9e5a8bc44a7

341.   0x3e1f61f1c7e7f09430a2fcf92944c26b83f7d058

342.  0xa1e7ff6755943805240715ef09e192e77b3c33da

343.  0x488872e3d065967ad5d13096f491f7cdd75ca691

344.  0xf01d126ed00ed3358a31767da819ef40617124a5

345.  0x4efcc5fa4ad79057167e66ce3d47d6ec05bfcb70

346.  0x6e4a62f2754853c9b80c5d8617f0a8cd2f0267e8

347.  0x1d9a3bed399eaf96f25e2ba9c7c6e0e2549af5e4

348.  0xb9e894a37b7005049188956a62761b9cf421c128

349.  0xc13a385b19382ac78860056723e7f6ddc7ecb0e5

350.  0xe713493c197bbbb40874338d3d8813f84978f513

351.  0x7e8760e0f52249aa593efd0fef1ce290d9fd8f82

352.  0x40138eb09931d01d168125c47b05768522704a7d

353.  0xC7a65b717e5ddafe1cc73731202dcd50485c3907

354.  0x86beb26e94ac7ec79f4d6a7e9a2f5246dceba5fd

355.  0x58005bce466c42c6f3c8318a8b95ed966c73b86a

356.  0xad0f24f5685a0af993949346570f9a29e21142eb

357.  0xd3e2418595e78020e4398a101e4128310e7ecd46

358.  0xf088c505da3357245c8c5f40e2dd15758ca9a960

359.  0xe0c0a9805f076fd5ab33146654e8c7690f868009

360.  0xf1db0ea2e10ff22c8ed2b95c06fca0f51e2de4f5

361.  0x97c6c988f9e602f91e1967a887886d6039939a2d

362.  0xC700d1e4555569248D72c4336Bd4B9978505FC63

363.  0x336f594Ab5440f62993222dC0F3cEff8865f4F8E

364.  0xC9ae7E89D7F0580a0318DFeCd2Aa61b4A9D0D99C

365.    0xF9A8e12f263bD2342BdfDf0A84cbB7e5556F6BBA

366.    0xe2C7656862f03128DE561dEe499e818cB5AA5912

367.    0x9e89769283a2aACb297648D48d960B154F54fc08

368.    0x9cA3944885331d7B5D8283C2CC9aa8484b2b136D

369.    0x060BFcC6C2437151CbF2402b6E373dBB220DD7c4

370.    0x2c2f072b02Be4Dafeef56D36F4870bee141256DC

371.    0x9bF516D9d49aDc43c937d841a953abf35a44F6BC

372.    0x9AB816106B0012b4F43639BeE203f23D10602E47

373.    0x96fDAbaDD41aB9FeE5EE8AceE094f2CA62480E38

374.    0x75F1bDDAB01b82c9f5E4b892F862E43b0c59dcc2

375.    0x023FBB598a16896f4c5430D7D4619fC354Faa012

376.    0xe0EaA2CE8674677b2Dc2E680943E856333bF955f

377.    0x585b92B1e6Ca190804c4CA3e142aaA47DBedc447

378.    0x3AdC9a82cb8F8bF9ce9FDFdd99aa3Fd3aD7b2FC4

379.    0x461BcBE981667C0b84B29D773518926Df907d2d6

380.    0x1e9BDc2a519115EF6AaACD08eF738e92E40D9b48

381.    0xCC71ff863A4509C3544430A923E9CC0F7cF97d2d

382.    0x533C7514b90C4F9Df1cd1dB28CfEBf3C551B3109

383.    0x0Bcdcd6521bC88525d299978b32eB8c887c78F8C

384.    0xAbDE443f927B5567bFc9cD1DFbe7C5D47fD56078

385.    0x1e924fE2973e0b13F5912AD9B079b9DbDd8648B7

386.    0x6D778C63E8dd6b1cd9B4aaacd9F9e8742424e8F9

387.    0x1896935D76ACB82C95c6dF69e30ea02f003FA96C

388.  0x55d202a23815920D9B0e8928c5c8d19F3BE0e8f4

389.  0xCC38E51e14b1f8A69755B0fE14F407920b935Bf2

390.  0xF6A55BDe3ead1a3e94F9a8bf8dc76035FCb800D2

391.  0x437b557F641082F7d00a2a428A44797d506D311e

392.  0x07fb9773bE8fdDDf8C9F10e0E26f0767197c30a1

393.  0xfB8F73b36b28F48d8ce1Da396E6e16ec34a6502d

394.  0x38CEe582aD223D9Fb7ad93c9B0e68764b49bF781

395.  0xBb568e6990b6b43A34009aCa7F1c007a84773634

396.  0x57D39D9afAd92c41b3BD6d9d772112Fd4d5eD1a6

397.  0x220d81dD61Df19F74675a5fC4583D93033b86Fb9

398.  0X201D22FEA82A36c6E3907B1bb4B43287384b8529

399.  0x20eb7eCCEf31145443a3444e4e8C4F0c903eA257

400.  0x4Ae9598499560903AA7E028272574b8C3FbC3225

401.  0x26C0E05523103AFf22cf01eb0042bB5fEe430db9

402.  0xBD2BC297b55Edf8e54Bb27AE9c300a5A57898845

403.  0xfBeB3c4eeA3007165141bc85F25873b03dc1819b

404.  0x3F33693c46a249561B5B3771b91de373ee32AF10

405.  0xe8de2A5F48B6bc002B0E1f04E3ac14D4abfc949f

406.  0x97e3355Cf252A7E45a87f032786B3A2A1834C3B0

407.  0x82bB043f77c6CC8F4848B4e55F41A27f13a99a34

408.  0x51c4FBa0a3285bB45f5d1f01e7a64B56C62b9e2c

409.  0xb139afB2aAa480126c88287d70963271918e8491

410.  0x5F8B391B81746d6F1e4d2b7aF9eB220DdFCda305

411.    0x2671aFf5E0F5Bd1973672404c1879863D6a2ab29

412.    0xd5f9cf90fdD230d8d55411D763Da9bDDAfaA6cB7

413.    0x79B9D18cd901681E84AAe9122c6e64ED856bC84E

414.    0xac45bde2B00aa5A7FA470e0c0ff13298E18E2287

415.    0x34862e84Dc7d77A7Ce9cf58a39d9E404f15afcD3

416.    0xC74548758494eFC2E6639637D99A2435d278AF67

417.    0XAECF3e78311757DF986243b7641c5A6aC16770d3

418.    0x7ea8eBa494ae6B2942e31Ab730b2692a25E020EB

419.    0x7089bf4e8AC653C418b78aC5614E94E450970ECF

420.    0x46F127CA845dCE745560eD991fCDBbb9599eFe7f

421.    0x34a3d72640f94f331e04979456bd7b3DEa7Af227

422.    0x02e9610EEBd98D4E65CA978F4ECD269C40E1c707

423.    0x87cF9d7702215fa1035778D4Db825ED5a4E1Af47

424.    0x980595DdFE8656AdFF739efCA0b40F0fdc3d53Da

425.    0xCaF407EFbd326ebDd6A3d8d67161D48324B81F5C

426.    0x9dc72A973Aee9B85be8C0E9966CEe01cBeEF772f

427.    0x22a07CD1e65a3E20156b66Da8707F131b755A353

428.    0x52f9bb417beb3D69Ef4FD1025eD57Ce88b3AfD6A

429.    0xCd8d8a649ed3816A105909e9827adED33C3ab39e

430.    0xa0226d0d3fA9a19ff81Bd00AE3f654E74b736c86

431.    0x60CF862A72782aAa6E8Dd57A7823676c7368ba95

432.    0x2eEc58F5aFB86C4C104FadDf4e08eCAb358cc1da

433.    0x93806A149890C331Ac7995478c726548ab4cC073

434.   0x752e19F6ad084Ac04d4F32eDe08A3C5EE8013Da5

435.   0xd88dD26b4589eFA75EB67D9606DDe8A94d2cD698

436.   0x1ed4AFeb737ac929E62607bE140765Cf3416b9f8

437.   0x71ff83A0285a651D093614D44F3322F594FFf1Ac

438.   0x3C9c54319a195940254CCb55612415d67beE9593

439.   0xBffefe0943732A52fd68796d190441B321d09b24

440.   0xa6891a4F1A75b4743249C59B7c5308Ce7B4BC3Ce

441.   0xf35697E3B8e89432f541e887C2FD452B6990B545

442.   0x6b06BCebD69B25aB53448908EBf9836E99442F0A

443.   0x050819C0144eC395175B86f33816BAD5B59C5C68

444.   0xbE6B4632900eFb52194B5254EFE27E9843c51886

445.   0x5fcC2f245c6CD5Aaba91c36DDF64dA3dd664b814

446.   0x178EB57f05398aC0224946d3632dA79dC7726aF8

447.   0xc9Dcb1Ef56fD1E4DC519Ba99F3a608254A626de6

448.   0x54B176826829572516DB0a4e3a6779B78eac3AfF

449.   0xe43aD5F84b0E086381300a767431f7EE6884328d

450.   0x0E13245d8ec5Bd7A0c250bd1D33Cb8413CcC672E

451.   0x505DC5CA3D1aBa63dAb0a6D93F598D79811250E1

452.   0x44cdD22600f4e29E380efAd21c00208Bea2c294b

453.   0xe948c8BE37e5DafE7A9CD3EA2e855eeb95E28C66

454.   0x35Dbb71ec17B11c45583713f6BD1c1df4eF1e98f

455.   0xBbE1F83AB1F5D0C807037177ec18fd6de7998aa0

456.   0x3705B3C549abFD7d7Be65886c493f3b284B5131A

457. 0xadB0561EB2d43f233EF3203efD341e308Edc76C9

458. 0x3fC93CDE531D4350B70fEDF2636266fFB1EdBE25

459. 0x2Ff5459406e078d5683f7B986B84Ad089B5648AD

460. 0x7684E93d5D9B59eA8E64afA741b865adFbF68aFF

461. 0xB6CC382212dfA9b34329b7E7E7266817b55f2b38

462. 0x3506E998De785Ebd3BAbB82554BdE38811959f03

463. 0xE159Ba930F8458C3bB36894d7EDb27bAc74C5b5f

464. 0x9a249c9bac9874C2E1b16cD2EF94D1a395c18Fab

465. 0x71222b2356fE36cF18c1B1cfEf86C3554439eAa3

466. 0x04c4096A926488EC2Fb8Fdc995D7A2Bfa380c989

467. 0x918BCb7e7d8Aad6e6e21b95ed8D6222F5C6AC07D

468. 0x257F2b8780f518DF351C34e140A99ece479095A5

469. 0xd963EE45F148f770285e779c78CACe32Fdc3F120

470. 0xC770F837e76990c75Ba7D10969cA086600CA44b6

471. 0xab8B677b2578AFa41527a03Bb264A41C8FAa3F06

472. 0xd40A1D5b0aa79e9782190DA455EbC55aBB2ac9F0

473. 0xd8ceAB7C522F5C9af77B0062FCF11e487569EC33

474. 0xdB5fCA3296765D5a0c30Ee917012C9Ac2f463Ad9

475. 0xf7d3b5555189D42D830d9111DE27214014284Bf9

476. 0xd4EFa5DB3b295aa33908d91fb98DbF8446B8094e

477. 0x1f69f515543EC28DBE55092Cf0B3015Cf386425F

478. 0xD512f1246A43F34d618a5a91E06Bc8d198Bea1cF

479. 0xb7d2468Cc90Db4be7442970E13110610fCcA50CE

480.   0x15c5E71a4D639e122bacfd1eF8b1aad44D87e58D

481.   0x5e9ED27e55EC648230642Fa86e3533f3a3D61f79

482.   0x849839d3D3390af669DD76722e1453f82ABe5d0d

483.   0xcC4118c489F92C8b67916cB449D066dd675F74d1

484.   0xeBFb67b10bBDF251B93c3A889eBc466434afe8Ab

485.   0x7e7becB26DEa65DCC68b32d0c21c4A81e04cE9D3

486.   0x46F266037d365d3034d5c0d6f9350272dE4Cde8E

487.   0xa1071311314A07353879B70d438f7bE1F9484ea1

488.   0xB2609E79C74307ECB86C2ed778D4888c8BED13De

489.   0x43F54C6DaBEbb2c78cC96f62b6f7e509695bFf99

490.   0xCC776c8Ec116d743Aa1813733B6286b3ba43BB8B

491.   0xD3D2aDbF5778d16De3862ce6EBFf55C7a45C713E

492.   0xeD8b8B52bf6e1B8da38F542C12f0da3dA7115961

493.   0x7af5d9788389e8B0E255c24DEf1d5251893ae292

494.   0x1Bf8316Dc1F600e890500C80ad97498B435a215f

495.   0xDc34F8a82C515DFb1Bc26637809f47187c7fB558

496.   0x2925488BA79E8A25309212F2102FAc8E06a31e45

497.   0x29cCD31E9Fe883CCC8F3BC6C56D0bD1117C61A0c

498.   0xCf190d7E8a02f0e5DCFd26AA35FEAa2fc046B65C

499.   0x92255FbdCbd72fc278ed5b7572297aF39db7956A

500.   0x63c3d58BF8b680017A9e7Be9F8f206890761454F

501.   0xc52e24f67b10677cd24ECA1e931A266cDE2273bD

502.   0xA1e23EDa1434b5c18aB4482d7767535DB313c70A

503.  0x3b5F1fb2c92d6a0f72800153D52F8Dc71dd6C54E

504.  0x53fd75B7CD48c0faD185E68Bb62Dd33a904cd1c8

505.  0xD28288b5abe5297a3bBFF0ac6ea2930831d462Fe

506.  0xC6077DDb6F8AB2D0e2A16B09d40fa62BBf63B035

507.  0x90A57Be4144Db1E270157221997EC870c9c783B9

508.  0xbfb8ef05475645faDaBC044D0B095048d6Ca332D

509.  0xCd7e0B03609a440f541937029fcFe175f4c4C185

510.  0x223060c80252dd40fb0461AA9f42850A54a5279A

511.  0x142924994f093182da87aa8b49DFD54928D861C2

512.  0x5449842492fD191A4B0f6Bb2870C1A3b4dCc09aB

513.  0xDBb8B2d2D2E33272E01Cc895AA1ea63F4581cb25

514.  0xfa721814E95C5BC82435F200a86b1d6362b51CD7

515.  0x2e7a7838D8B8dB7d6e7869b966ff48C6dc0c4c47

516.  0xbc7ec5a522d36E47Cd1E683171F5Bcf3e3151ec8

517.  0xC05Be8011ae7715C6632392B00FAb02066eE92a9

518.  0xE95C26751A9f227e94997BaF3bA8bfdbBC6E913A

519.  0x879009fD95206625fCd0a2cEf736F79083275e96

520.  0X98921894Ae1FF074D26525631c6fcc26C638E957

521.  0x4819D8e30d4177c1c703eb9060BC7DFF81F70851

522.  0x35179fA7eA31D84F4BF91F92D939Cb2bBEeeCFA9

523.  0x1Fa0Bc4c11F6D574f5D143F05935720971885cD6

524.  0x5B56Fb97FAEee704a42Aa99C0872300a55Bc1CAa

525.  0x2c1174C55b99e7E0D557abbf44667905A4bb0525

526.  0xC69417587Bb8C60B784DabE0Eb48b2c35B5eaa22

527.  0xCDD01622B2FCcA7307E87098248e228fbEB2Fb36

528.  0x50235F097a548A71C03409f63c4Decede3d327af

529.  0xB517DFcBB1F8fbc1027Ad3Ad7dc2f37Fd7fD13F8

530.  0x7f7cB4b563Fc7F061B6AD388ceCd01BF8fB3dbf1

531.  0xC584f808dc87197d2b21AD4B67eC9910E9Ab0a17

532.  0x8BF3C05F7A3D0ac6e7c2EA3fd98cd9176Eb33f3b

533.  0x762F7De5a618EC68D83Ac727412e1133A838DF6A

534.  0xEa046cbd2E8De3815F20a937b57EB8f73D4440C9

535.  0xb5A63f36E100e1D1EbC5b4D6504Cf33E15568137

536.  0x55B3fDd8470776fc7F950fc637F520825e97e100

537.  0xAad0211caE85304A2E8465A4f42973f3FD2a6ee0

538.  0x9A5C1D6Ce91Bf6c2f54a51384E078493079Cc8ac

539.  0x26D9981D65Aa544c6C24ba7a619cA9d9c9e6f467

540.  0x65966305F51AAF19DF2ADB67c9829df425B9b152

541.  0x3B9B160A92Eb66aA7d04Fa5BC9Ae91D7DFe4925E

542.  0xC26f7A4F0435CEf3Cb6831A9B97C972DE7984F32

543.  0xDE2A1EF548a33Ad0Ee7aAe4CBC71126D7B353EE1

544.  0xEcC6a78adf7De3BD1412502dC895b5ab536783B9

545.  0xFE4f06D38A0B67D11F9d8845B7B89a818D53Dc3E

546.  0x4CC2b3D909aF6Eb2c8b69a6D0CA90E3657CC58d6

547.  0x8d2B1942df898DB99E6cA29182c2324166BfDA07

548.  0x677Ae63DecE8Cb33E2F948FfdC5bCAb9C303a29b

549.  0x575130A9DBf32a8Bbc27a941c73BA82d1d727820

550.  0xf759e4b4512C2fBEEa1315066281DAA8a30d7F77

551.  0x305B9453fE15300BfA20CE27cD4597b351e746C7

552.  0x7290F1030C51009b2Fc3A1864C0b0D0cA1065A9C

553.  0x5Dd7F444dd188F6C494AAFF8fea5f3D54B18Cd82

554.  0xC820D36b00BeCB595b22D37C931faB54dd6ae9ce

555.  0xCE5Fd80b168975C11b14910bac0939e81d0deb2D

556.  0x11Ac79f11C5AaAf291f7D4f41E10d6CF81362Be6

557.  0x8F866d0E65A7D31Fe39dFC0E2b728e41Ef899cb9

558.  0xAF57195A126B7f227974a1Dc8fA2cC71C628EE55

559.  0xE1c9b679324673a71684437EB58eF7237c7Df109

560.  0x561B1f5D7415EcacFce0BaA50101921397ED137a

561.  0xEfe56b7f23FB4Ac22c9aac2366BA4D1451231b44

562.  0x592eD2104D9f43B5550cF93c3f311BeA60D44AFD

563.  0xc7FC9E43008075eE07487F2106DD88aa90486cB8

564.  0xA4957175eCC31109dB901A6F12f64fF233e65f8f

565.  0xfaa163ba1ebe99F1d1140AFcB61F462D15E5B573

566.  0x6e0bEF1a67E73814DE61222F745c788d40648FFa

567.  0x021c77b287d9a26DDA0292AB4EB38bE265745Ad1

568.  0x7294470D0592475D53077ed90DA26a2F6f05A248

569.  0x67743E34bf70e65F728825c56EddcE424Ca63aD5

570.  0x622dBCc3a9E86Dd1D78cc947dFDEE147f5DFE740

571.  0x4C48bC1f95BCc2e57b814bcA879126a284F43a42

572.   0xf4E55a3D28fD64F85A6E913C5b60f05659dCf587

573.   0xFF6D50f6f428541D24FC305bAff4fe8fea69762f

574.   0x3405c59D66ebE2BAFFDD8c8b8fc39f80416Fde12

575.   0x2fc8b827D247AaE932cFa2eD5F7C676dA7013e42

576.   0xA4314242453AA1E8FEEd49240D5Fe52B8319d52B

577.   0xCA5E7e53768d6Bd01A474E74758291C4cbcb192D

578.   0xDBBdb781F4d0E9C7e4f572e6ed522df5eFA5453D

579.   0xf3E27De9FB9782b232a8EdCe7EE2ffB48924261f

580.   0x72BE04f4162B250B02be19b52aB8d378baD7704d

581.   0x68f6CcaAe83C0103AE40f18c6279801C00f14e8e

582.   0x95F9500366211CE145999A9b6d5e3Dd0A49aF55c

583.   0x3C1fDfe7bB65be860109bB874aD60E963B2f59Ca

584.   0x1bd53996C2944FA43cBD723A57a2ccC6f4A3d609

585.   0x7302d50dB53eBb11921320fa7c95De3c8719Db09

586.   0x5f71675bd3bB34761463075AB6F71ffDF59d5E11

587.   0x141c6772aD0136f4304B16983eF28c9a0d4A4fE2

588.   0x09E936241755268739914A1974Ed93ba6480635c

589.   0x0436aEec77BD4D639C855728A3fE1dfc8A078481

590.   0xa1d386114dd208B7DEa7FCD28E7e531394Dd6092

591.   0xB6F61270aE81141De3082b49e08bBDa49A28B479

592.   0x83D56368Be5228b98c6c0d6dff4Dd804f76Ceea0

593.   0x6fC6128215Ba5695900a0180e522C91d43EE59dA

594.   0xA9a2104b34F874975A2A3e2177c4EF4f1dE85f93

595.   0xA47C7e7A0369473BeEa98ff4E2263c9a5010ae4E

596.   0x875bB3F8eA32c36660915aD6aE30fC1B6A24AE60

597.   0xb781C662FE0505cB3F1D2d58aA26237AfC6992Be

598.   0x6e43337f2fEA9D42d0A401f8bd9C9203B0B231A0

599.   0x944A48c38AC396C04bdb470B1A4f8DB7a38331fa

600.   0xD0B26c794BB82d3DBD54A5E4269b46977A147Ac4

601.   0x78b85902FEF3d68553B140BDD039bb294E329604

602.   0xa574789AA727c63A046482154f2d19114De53331

603.   0xBb1217D488a60E54e04042c5A5076ccD70ffB405

604.   0x350522697Bcc560af89315f17c3A100BDfeDA89a

605.   0x8672D2797C3bF08C96DB89EafdE32eF90BcE5e7a

606.   0X7B3F51FD87A9fBAE8A9C13ebaF61eB42cB90083e

607.   0x96044cd2B49f4dcb823Dfa529B6184799ED5e3dE

608.   0xaf5F917B8a0C594c1862EC28766e15345AC9897B

609.   0x166541830dC3B144ff5F905C4015eE4e9c73A00A

610.   0x72Dcab148ea3ed87A206a9510A2Db0946C03D90c

611.   0x1e78032A48EccC64f657E8876b9CB53C6802B0F8

612.   0x5c22429cBBA985506306161bF8b78258BE7B8DF1

613.   0x813c86515073318BF28643597c3c45001E2Fa32D

614.   0x36822AD3f4dF3E49EB042AFE74e43551d3c3Adba

615.   0x9C70BFaD030E1Cd90AB603d8237bE30AF8cC8E1C

616.   0xb9026428b9abB4332aEaf9ea09fc083832b8d249

617.   0xC9Dac37C688DCfF656C9f241e53848C32465Acf8

618.    Z7xeMfYdEJrtYPsWFBfLTU9UKjVQQABHq6Yt2veCL3n8j9G

619.    14BfMPxXhmwE7FNYyanYSx92Eu228V1aM8Ktoci8t45Lj8EC

620.    5D7CCGj8Xkm8bM3P4rdNarftKBjAEHsQTbhCw3UzpkbUmVob

621.    cZfmLjAWhBsmegJuUJTFNbKAKRMqQV9qButTsBh6Qu3Utj19o

622.    25bJRuBCbz41wXvMBspV5g5mqnQSixFqhTpLo3oFeVPyK1gb

623.    15GPi2rksDUfMVLSomZvgV6c3aQash2zn66wri2SJJFKDxT8

624.    7LEohHbR3odxvKmQfuji5f9aoGCTgHxdUgDeP4Pw26k3vzT1

625.    Z7xeMfYdEJrtYPsWFBfLTU9UKjVQQABHq6Yt2veCL3n8j9G

626.    0xC9Dac37C688DCfF656C9f241e53848C32465Acf8

627.    14mrBENVFgXg2SDQqcKbS6GU7hFz41KQfpWLeH4nki5ki1QG

628.    2NSiis9v7vKoYEztKQ6PbHRVLbk2fhmUmKF7r9zyJ5MDqxRh

629.    GvaLreeM436fJt8haR9ep6EsWkeEnpwRc82NKGQtVBwfgrM

630.    5GRNvPrNt3t31AkPrNLsidw9MkSc73VvXP2qmi3cx56752Fq

631.    t1yuv6PqQJZdR7RNp4SKsYvYp7rcazoKai5ZgWeinCzkXN6

632.    EVAMXLuZGhXcjPWb3JgX6a5qfPq2FH9usUZNuzW5XNQGvEw

633.    12uqqYG6ngx5JcaamyYdmJ3EYh7Eut27XzNJ9Yhu9pBRi8E8

634.    a3c7zog8Lw6H3J7B24VCrpLMQcssM88bkkmNFYFoApBXTU9FC

635.    129ePE9AounDK4TFny7mT9fwsHjeu9C2N8y3D8HL4mAxCE1u

636.    yGFBYGws8DYemPJ6LYC3tYkaLZfrCt3AMAyNt3yNV5QuibZD4

637.    14yqraxgFiZjhkN7s4sHZAxu1FhUpg2KTd2oS61oQunaf2ks

638.    5G3YiFhcPwJGGDMbuRpHR28k9dhq8NUBP8JKGo2Srpm4UUxi

639.    a3eBzpipvQ7thhExZ9aXWcDH55STb2vbxgQ2kpo755H8cQx5C

640.    24Kh5q8hyncC7GHW3qDRJXxHLoC95ba5jMQ8EBrj8dVRWH8h

641. rkNZr3uDCrjo9UaEmTNYjRS3puYyEK3MUHrzpa8CvJSwpYc

642. 24f850a842fbe6b0261fee97c132a27bc59c6f44

643. 16SQamh7JU4grStq4goM6RzsMy8FRiTkj3n8Rex7ahReahsW

644. GZpAH6ax4VrWJmLAFpuiEnz6ByAuJeDmsaF34rR9HHWJ

645. GZpAH6ax4VrWJmLAFpuiEnz6ByAuJeDmsaF34rR9HHWJ

646. 133F5mJXSSw26XwtFEPJK8VNrEh2hkoKKhQFTD4oaG6dhPgi

647. 12eT9NeG5omxb8Keq6e4wSdVutGXUfvVXySStmBeSAgh5CDb

648. 0xdB2211a74A768cc8e4149b60B939AbadBe5dce28

649. 0X9900Dea0Da14E9A9B32F963a706992298e5B5e4c

650. 0x55a7F701eCa92CFD95f7523885409A6dA27cd945

651. 0x46C9228440e8C373a32f3255F51438b907C3F9C6

652. 0x6Dde7Dbf3F263cA07fDf11D9fD213Aa26731F968

653. 0xEaf3B28A87D498530cDC7f0700E70502CF896D3f

654. 0xef84B5F98947fB2f3f26c3676dA3C78971c235c0

655. 0x937E4944A24a0AF93F02cefDA3bba1c7eABD3Dc3

656. 0xCc17B8d528F0c586b3926e3C21C8Bd8943eaf388

657. 0x2564Fa89CD5567fEbde74435bFA24f8A9076d074

658. 0xD4FBf48d400391aBf46430B68249920859BbB79c

659. 0x214706f94Fb7563B6a76737a6f648F1901E3D5E8

660. 0xaDA6ED82874C3891d4FfbD191e91105C4fFE36B6

661. 0x9fd5242117e4F656E81B2F8f3b22835E0339F1aA

662. 0x454655112aBf3c51A8D3EF07fAD3Fa01F444cCFb

663. 0x25124eA46ab7Dcf874637C95e30936E6e6dFDa9d

664.   0x5Db94C17e3Bd22Ad0d3b898b1866d44cf8Aea8Ee

665.   0xF1A42467886a0bB4BdA921fDE5bB2087C296d6bD

666.   0x2D87138900d3aAeB022Ee6b1Acc74F5c97eF5c94

667.   0X554492D68BB1FFa924dC71F0426D19E98fa9911a

668.   0x9EBDfEb54dA1716405FebbdadcF1B5F27D41d79a

669.   0xBAcd3B2aAcAcb1D0f36D0749222bb19aee7c34ee

670.   0x20F9dd7961e9d2fD62b52bb22BEFF4A3b9BF9D62

671.   0xDE432D900f87D9608e3f3543fa699E376eDba928

672.   0x1E281fFA13064a2437dc0aEa194D28451E10567c

673.   0x187eB5e2dDA9467a4Cc1a6e4fD6f9aDB8f907B3C

674.   0x6e0dFAd71193e43d2b749107a45CebF6acb1Ce24

675.   0xEfAE087918F41Af8DD4aB8e477B40119297Ac374

676.   0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f

677.   0x2C20E739552cd0BEAF523930BAAD7754C426C962

678.   0x20aD017D62304C8e8f6C6B3080B057A44e941146

679.   0x7fc967f103aa2bdb7457f9a8b35b4c8b9a64bbda

680.   secret1j3l27ql3alzr2f4lq0pd4dqdv4795flvvf8sjm

681.   pylo186ef72jekkgjy2w60vly0h4selytc7gdgxa34y

682.   7kBQhp1jEmkbVuPu2RWBCNc1zLyFLUTc2JRurXcDbbs2b

683.   506ad0039bfa815dc5c011e345b0d88d30805cf2

684.   12TnUDiLnJBQDsvgMqwvWunTbyGGrpmsteQFcgnd7krzTKbs

685.   7K4LkipjzdHC4aQuRPNRJgYEKYGoKNSfmuJXNkJbHdKiBgD9

686.   wd8xfcBneXyd1EdniEMw4suscBKgeUqE57C54sZZRRPT8EBKr

687.   E36zCo9YsvrXzjcAuhyGiKJtwYryC2vGXWWr45E3U3y26q9

688.   a3bfwSMaavhWNDNX7eMc9Zx6dgA2P55MX7RQD1Pstn8D2DQbo

689.   dBk2Axm63RmAEMTo3E4nKP1Ut83BvZ12Hj3JneRttRv9YWL

690.   XQ5mBRMhkZ31AwztWM3QR7aqPyk8jvUqMAuh718S2qRs1Xv

691.   XQ5mBRMhkZ31AwztWM3QR7aqPyk8jvUqMAuh718S2qRs1Xv

692.   14FvXEEtVcseoPxkmd3JQkvFb4rQzUeJikZTmqmxapNT3Rup

693.   248X79evLXcvMz1PpwqYBmaW3vHMYJwWcA6mvgCyDNKKrmfi

694.   ZCDpBwuR5FHagz5JHSRJGFNpVZtGPnufTL7rFzTu6LtT4tV

695.   123XEgdHAcaqFfzNtJgYh1RfKe3qLr8J34jctvdpXvW82WiH

696.   unfZaa5zPqrpucoCSLk1M9VkQJFtTQJj7z1JLhWCMoBdyWXUr

697.   cmUndshUMqCC2RAKVxgxR2DCYubfwuRAi4Qb2VdK453ied7

698.   21v7pc3K1XL6pG31wdUnU25unVUmtgRVvUGw3m4qAUSzqpQG

699.   21v7pc3K1XL6pG31wdUnU25unVUmtgRVvUGw3m4qAUSzqpQG

700.   WypXeLJ64xU2y1hQy5faWknZ4mJcmGtymWGyLrKrCUZSNxv

701.   1xgtUsRiYsopp15mJzZfHzRcR1NZ2SmtvesNyK23Pfm3NB4

702.   WtzBSaSe1FSc72QHyPgYoKYqqiqpwbNqdRXTPXXMfeCT4P7

703.   14BfMPxXhmwE7FNYyanYSx92Eu228V1aM8Ktoci8t45Lj8EC

704.   Z7xeMfYdEJrtYPsWFBfLTU9UKjVQQABHq6Yt2veCL3n8j9G

705.   eucuMCx1XBb3boLQn4giMja7osnTanhUmegViZwfBeGR3V7

706.   123VLbzCPY2c2t3u2VgNj1W3AoiovbRYY6Rh6LUMNqczx5KM

707.   cg49ZGfAVnVkAg4oAGXYtkzBWnQzDzt8Vz5vGZSFgXmY6jvNv

708.   13T2oWobCbiVXbhDWHh7Ky3E4u9bxNe8C3kwUihkWtetd8NE

709.   yGFBYGws8DYemPJ6LYC3tYkaLZfrCt3AMAyNt3yNV5QuibZD4

710.  ungy68vAhsqxZtiuGxj1unTMy3WzE1qEx8zKfHJGHn9nk77Vk

711.  12xHpDo9q3jejdVZ4jj9BcS5Hu4PH9QbPbChR9SdBgLA5a6k

712.  7KYr6iuZ3NqSaKyn8H9dyPBr1U4ujh5PGr6yBCxbMYnsp64y

713.  ungUM9dAGWHyj6khcXB3we6kpGWu1Lc1RLXmRDj1ASwU1ZLdy

714.  yGEgoHergqzfvbKtg6e5vQPyBnfkzCovpNWpdzQ7MkCaz41NC

715.  dgFNB3a8nz1fyvLVw1HT22dAov9cFBiXEXV7FJRxou5mMZV

716.  2LBsB7qPpq76mPkaqfAT6KtbhCvCzXbMqpQQR2oYCo4VjwqL

717.  dDzySTkEUD7KoMbhG997G3xDXin5tv5c7CZyHky2JWEXHvnBx

718.  22ptQ9DBfxUvJDYC84XNxd6KkkVKpyhoGzk1ZysdpEH2twiB

719.  Xtb7BWAkW7HWvWsbQ8G57mCXKmrZ4ZCLHyMVZf8VxJbV5vV

720.  5E1zftY5yGUBJ6V376g93TbvSH4jaqrTK6UDFrTGdbJduH8Y

721.  12uqqYG6ngx5JcaamyYdmJ3EYh7Eut27XzNJ9Yhu9pBRi8E8

722.  wd9QiyWLQYNPgKNSceVXn8J8P83XcXtUJkY37QRUhTSmZUkLS

723.  ddoPVWX6SCSEy1NDApn2hdnRby1EyoEfdh5qeZhvwkMQBBM

724.  a3c7zog8Lw6H3J7B24VCrpLMQcssM88bkkmNFYFoApBXTU9FC

725.  14jDrBJaJqJ5A98c9TKwFWmdKiAzpx8QttQrC46rKFk6QrHy

726.  fTBQ8YzcaYS6VZPaec5WvNBCd2mA3uY2Xjdt9xf6PK2711F

727.  GJYNAPP5R3XUFwXxX5z1KJUcgTawKPTGmX7RRPTExw4ykSp

728.  ZfX991bEHfhwS9vg7j4926kZ8tU6sH1qbBWGUKMdXiXpeN8

729.  24bpS6ic9k3LijBFCn8B2XRsnZbwNnRcnHxALtXrwogyEGvA

730.  wdBE6z9Nt4WjgAtze1yK5cWrmu4bNSxac7S5fSvsectLEBd3D

731.  15GPi2rksDUfMVLSomZvgV6c3aQash2zn66wri2SJJFKDxT8

732.  258zHxGni8Dvv5P5s6NATVkrWRqXRXLCfVeG1YTSvrCC38B8

733.   14rdLHrTLQAmDv7cehqVQyzp1moQNDTxgJRxCkxr12Sbcrsa

734.   5FvLBxbPUcuHnP76h4nVGqAfA9okfuupbohU3TyVSwR5SU2u

735.   efRjvRJF5JxnBtNysK5rmW21zBuSbZ2BNWNQ86tmQX5FFx4Lb

736.   enDGmzm4VSkFcWNVQuHgPBJ6t8uAbHUzmLL53wNVt1DgR5zjt

737.   12KV1H43M1Y25SUXkSZZ3fXTJXFQnTuENJrLKaB89gvEmqBz

738.   XFnJEm4GTuerjVrH6xfwAraXwxt4P3qK1czPzPdTxtgBhVA

739.   15chRJPK4qE2akY1W9GTLrYXWJuezCBVrDSMRycy2tG2u4bP

740.   aYziG6KzHbfN3ZL2ofaEMsejjd8G7L6nvD1WPqUMAEUK1ea

741.   14mPgmAEYKY1HanK2cM6jtndMvjsYm4kwfbDMUzV1v5yuCbx

742.   ZhgyisFTmue4sodZGkDdQ7kbMTLpgDMtNMsRuCzLC4RJqhN

743.   15BZq1JpGCjhaJRS5cxm1ogGHUQHnvxsqTcWfn7Q6rjceXV8

744.   a7s7y1qBf7LMbSkcHMsuK1PWu7m4r7UnAPAkCKuR8i44Fjs

745.   12WKgEJzZXDvhWgnAUKXjoHYXEnqgVWtb9Ye9xuzPJ7mVBn3

746.   wd91CpCPJKCfXiGYp2zJg6oNh6bDDJVy5ohDTQqgngvhuFkqD

747.   0xA3d0345077220AF673D6b24eC13E3F763BE37Bc0

748.   0x9FCbBa142084cF324b1A0E7E0899dc9ee1Efa878

749.   0x3328289009B2e9590A70981A44d1dA587A1E696E

750.   1xXNRbEzCVThLTdBaByoXSpDtiK19ndU4eSkLoehmuJgsmH

751.   1gud1HYW7tvygdkSxV1tjXJ7WieodBNVWuZUaaD2ddQS4Ca

752.   162SQf2AN95ck2y5L3RG9XxdJjXmBJomSz6yu7yDnDpf7TrN

753.   12PdnSER3MrnA3HUD7VvFiN7t8izGVw7qnwCXhpDrZW5Rfu5

754.   16GdprNFZb2EQeAtf6RoqoT44uunWW1Q2AkxD6yzLBF5ifLX

755.   16KU2bvTFZn7c4ouKbyZWGE1ie88Ed2WAmGYZkMqm9WGeXSF

756.   b4unak5TwNRZkpCpMLBJ12XRYbB44bLxqV3uWNvrMxwk2jW

757.   XcxMSAS5KkyvMEKLNJHMrKPVMitPn6A7QAbLGUEw8eiks91

758.   b4unak5TwNRZkpCpMLBJ12XRYbB44bLxqV3uWNvrMxwk2jW

759.   0x4eEa3427ad5c17943847b348FEd16D462f88caF9

760.   0x4eEa3427ad5c17943847b348FEd16D462f88caF9

761.   XFjKjMJcQoaAnaZ9YaBGzPS6tqFkAHGgNpFZAiPqWNbze3w

762.   1BPJXfjTMRpgLWV3ywMDKXj6rtbjRgjy2d

763.   ~~0x2AD9034E50373629fb57Cb04Fe0f1e078a169D42~~

764.   0x52b77D2617A62651EF50a4956dE47f13e48A2B2c

765.   0x764Cbc3Af4Fa3243f3d38EE3aB1F7b6C640d1C6A

766.   0x0f9BA1621CAd82ea963D82046A44486f34C45b28

767.   0x521055Ee79cd8fDE5A13432606d39a882B28Bbf7

768.   enDgUqLRKkgWUr9QsnWdYqPakFiMjMUcQh2YFHaKLbPKCzAyQ

769.   GDN8YBtPVRkjR7YtEKMUMXzBdtsNYWW7djdsxcQDqSZSxmM

770.   0x6Af84909828076142C0a07f66d5Ac7E90b857Fe8

771.   0x85DB7a5236Cc1E56882C6d4cd45bc8d57f1c89a9

772.   0xF5953178cF7f851bBee308Ca1A4bf6a8CB3246A9

773.   0x59bd71EeeE67093BE8ea199d069000d9E6092E47

774.   0x764Cbc3Af4Fa3243f3d38EE3aB1F7b6C640d1C6A

775.   0xda47f26480b36a0fb07c51d8aed74d59729f254f

776.   0x315b6dc18893ffd0a1ea6c7dac09035b8296788c

777.   0x2aa242c77b22c3d8d5c6d6d86751949698f99d62

778.   0xe81dd1f6ae0446b55c5018e2b9c4c0fcca3ec54d

779.   0x3502826b207f7ba1d60402a1ab3503156a68dbd2

780.   0x710fc66af5226a5c57f2d130f948f6ce1c310cd2

781.   0x6e2fc9292b44989f1e7f6aeb69abd9f348c2b9ae

782.   0xe51fd999a18b033a672811c40918151b8a5c7da5

783.   0x3606d76b7c011bbf578814a439709ddf80aa9e28

784.   0x362da240fe796c0918668e388fd58e81ead39218

785.   0x491899549ba35c3ffbe6af87126a501f63d2542c

786.   0x5f181d43db0d3d0e519888c3976041cba0a89307

787.   0x624854584a31ee540ce4522cdd33e11da88515c8

788.   0x6269b7a81f946afb1cdba40bb7f49313738049cc

789.   0x6471812b64811c04bbef3d1689acfc17169edb6b

790.   0x7df9575531c06b133b34e762aa01fa1edafc7b8e

791.   0x0e2ba0ecfc11d1a23411e3c68fc57150d764a052

792.   0x113f9f9de0d9b903cf4bdd391037e041b36e85ad

793.   0x620b679d7a206f8eb2822cdea2754978ada9af55

794.   0xd4912f2f4972cd96f9f3319ac15f291c013309b4

795.   0x000b8a0ad25bb4d1a2bf020e5a5c584564056fae

796.   0x1d2db8f0417b4c09457b2dac7a001d1626e114ce

797.   0x246ee5081e7bc8a5bb9500c3df31e28afebf872f

798.   0x73e9fc4fd9ddd62b59f1061f167f23979f7208a8

799.   0xba797c27796b1b798f693feb32c7b5b40bdc8077

800.   0xbf3cec8930e28f4f777b7ab3459f9ea9f31e257f

801.   0xc51423ba79a191ea9d2ba38f96c540e1e8b696c3

802.  0xd2b83e2f85d1fb7931f97f862a031c2cd4c0d94d

803.  0xa4d4c6d10d1c39761b5fb286de7c8cd984ef11cd

804.  0x6457c7fb177b77d485260605837893fae9409104

805.  0x017a605466ea25e03ae5ca35f804842333ac8579

806.  1216TvnMFYPWmvjpyCCKXPYNjqbZzw6bh9i27ZL2LTTDEYGQ

807.  12U64vFk9bjtTS7YgVKjvbVpAj3yh2ZFXQRFNo6sY8XdqG1Y

808.  145uBakrFFa1Gg9UTVTM4V6SorJQdg2Ah9eVq3EubsxXB6Km

809.  14x7BhfZuqaVSmJfE1gjMEsHXbfUi9NEFQGmbbWBiDMEc9of

810.  15D6Lp4u1CRgXGMKrTa2DQfKragXKGSrSZ7oS1vVuegArEVm

811.  15D6Lp4u1CRgXGMKrTa2DQfKragXKGSrSZ7oS1vVuegArEVm

812.  15kN53asZDKx4C3sXDvVp7Ac4vEG1e6xqGENxcinCE4S2hk8

813.  16AX273Jq4nGAdmarvvAgKKKzeuHEe6ShBCy57FE8HWheSo1

814.  16dEbf86P5SPByCFLY8P1rRUXgy7dVcNKizkHk53PbsMjfqS

815.  16PWg22WgBcxjPxXkthcLnF3L2HH71n5zR3EuZrKKQG9iTSW

816.  15b9ayaywpMZAHFtYxsesE2ZG7BUxpzzqEKvSwJFN5aV4SmG

817.  14fe5rmFQ1HfeNAxGDqpTiaskTrn5XN8PtKN6DeivbRQxBH1

818.  1bBH2YTrLmMAAoTdpwGUsE8GtP6WhEAXrHYa9sCCMfow9EE

819.  15cpb2HBDvBazERLmsKywdHtwsn9riVRLBjDXj1RsWRDezEs

820.  1Bn62yy57fbi8iNM1rXr4R6XZM872a6WjFEKUXDbRzPgfez

821.  13fsraXNWYMxfJFkyixPAN6JjP3tDeRWktybukEJrxQ246w6

822.  1k3Tq1oAp9AyTPDhxRtnCeENTSCZ5XnCQbF6sbpx3cejNbn

823.  0x491899549ba35c3ffbe6af87126a501f63d2542c

824.  TVATUmujgxidA8DvRzrHU5znHmcF81fYN3

156

825. 0x5f181d43db0d3d0e519888c3976041cba0a89307

826. 0x627572542787c5e7806025f095c0eec8b11fdb2c

827. TSNEsNrkYTWCSh2MzoHjQ44WDGo6HwgkHg

828. TLuTF6Pvpww7xzmBYMsXQqfEMxreC3LTsc

829. TP3z8MHyFEJ2PBDdMQLdpvAtGkGofao241

830. 0x4c8f835573487aa8a7b740c2bc661a383aa8fc12

831. 16U1iM9HLEnLnLgg8JUbpdjVhUbwWbyJyK

832. 0xc9bea3cc700d620e5e1e902b94e67aaaf8aa38f1

833. 0xc9bea3cc700d620e5e1e902b94e67aaaf8aa38f1

834. 0x0b4ae30c1dadd2b91803322dfd51a3fee78d9326

835. 1127t9i1syiis7LFeWvzxN3YxQwYZHAQkhPSy9qBqq63uEms

836. 12q11Lou11uhU37sxEzrpwsMY6ne1Jfr3GUaAcEAWuz6sWNa

837. 14jaQk8ApZqd5eUG7EcB7V6tELcq9tKFRvvjE4mbFAcAaiYc

838. 14KEMtbkSLsioxHcNoRThdK9U7LhD7iAqAz96C3abgMqCAtu

839. 14pYuqT81gWfLYCN3RnSoshsTbXkYEoo731SE3YeHLPoq5BW

840. 15b4xVYjemwweoqGBSQjkkmrA3UYyhRjVMeG3Yimhn7GMshy

841. 15t8kBqXtdgsqKdQ44js66Q6g28cv5Q1s9SDmijiHgPVefmJ

842. 1685o9WZm8Xt4mWGCT94KDzdwj8Wq1xibrWTjPAZ6zYbvBpJ

843. bc1q2klkwpadf7gdvel6s3l25a09jhnpyfmvw8uj0q

844. 0x9a6Abf2133b8Ba850a4DE65a214B5fd0Ed68BF88

845. 13TGXdYvDMHeL9cV4jAr2RknP1hAFHiMBJJzwB2BVAeDfECo

846. 0x7a437e736dd169B706f4c8b9dFEbEb02fbc633cA

847. enESTYANZNHxHopxztgomTGLEtaUYgUxcp2izKE7QazzA5FQ5

848.   13ifUBXzoyPTTRLhJ7eJybJoAFRLqBwvgNBPTmVCWUw1uVGe

849.   bc1qlzj9p7pgdp59ufIr5jdrxelxzva4hg9gtkh0jz

850.   0x104E903644A04F0D2218d6F4fD891Ae947c7e03c

851.   0x210d9e5D5666F0f8f9F70aC805eD1a86112774c5

852.   0x23edb9914076286f17a001a51daeaeefc441b84f

853.   0xae33c8bab22ed0bbdd1bb0502346b38abfcf6dc0

854.   0xc85b7950974be581C3Af48461D238e9eda2D59Eb

855.   13wLsB2sJWmNaF992wsLBnf6jMAPoVfcDKtyXs5NMfV6vz3b

856.   36oj5QqrCULHcbj7kZ9UGRsU9Gy2dA7m1z

857.   39KiF2PcB9i3KUbDb4NdNtVbnKw4ncGg5k

858.   0x280f2eba005073afc5403434e57d8ea5af3233f4

859.   0x3c2b465fa87262ba8b5f1f63bd928423975803fe

860.   0xd43cb11be295Bef0F4A50f405eb4E60B786C9386

861.   pLoJcxWEwaeW9E68ZijiDZ4VXCBnKATYbAfpPnEEmG2HQWU

862.   0xA9aA4714e85b8d4C1A218189cbF433D1780fC342

863.   0x280F2EBa005073AFc5403434E57d8EA5Af3233F4

864.   0x3c2b465FA87262Ba8b5F1f63BD928423975803fE

865.   DqkpyEj16hufHyN5CNBtwuAoEPCWCAFPFfsvVADRxTBBro1

866.   14T6Vuig8srvYgErzWRBXXJ2swmCXmGsqwrp5MRiW5YYh5HV

867.   5FWoMaTcH6bT79EM2sNBPNTt2KmYqTijmT8Kv4SMwzX2WfSC

868.   G2R1toUuTcNro3noaBEHKptAv3ne8XvDpy5JiiKRnjXFrmi

869.   133F5mJXSSw26XwtFEPJK8VNrEh2hkoKKhQFTD4oaG6dhPgj

870.   efRBqpgNu7jgoHaMQWjDGrpc5amGNDuPxq1Jc8SJByfPQpfpF

871.  5E6wwS3TaffYezwNHbLJAyfDzchP1TFBFCfmHv5T2B57XDZG

872.  15VJCcYhTUwWc4NC2jsuyRs1ce9Hw677VYuWvYRCPaAuG4iU

873.  5GZ14HHdbhg3AXMg56puqH2rm29eEnYyR4B2mFRqqV9P5oUd

874.  13eFQnV1qUYB5dHBcNKDHtPp5hBwDkHqbRKNczsxrEHLCX8E

875.  15MFpsZqaUHeMC5CtWf6u1ZPaYU48RZu3j1m8wyoxmzy6up7

876.  15D9My7q88xMWUjrYUf5gZxxwHtCxKaiK63QrGe4GxctBpkf

877.  15SLkKcQSn9883yHpf6ppaba3GbmmBYQBBa3YjwDMuuc9VY7

878.  15Mg4j7Sjq9WShkup1PsrnmJDNSFoM44bsmKw12yWA7dFLZe

879.  15VJCcYhTUwWc4NC2jsuyRs1ce9Hw677VYuWvYRCPaAuG4iU

880.  15SLkKcQSn9883yHpf6ppaba3GbmmBYQBBa3YjwDMuuc9VY7

881.  dfazMZpewDKdLj3jkmMh2McTovNEZT2wAGxAFPY9yDNKa3UrM

882.  15LBNVjANisHXxQAQMzvAMNu3LdGsx6nZzCtYmGyvRNt5ezi

883.  12Mx1T18r4wxu4swSSq39eVyJpjGjBj9coTVDEK6azRSJred

884.  15ERGnuAsE5FqK88FL3AkdxjrPcdrCEFGr74ovyBio8zfWt4

885.  13Da2daqUzP8Yg6jdAw3RfZQiHtXdP34DKmCQrHR6EuXj6Tv

886.  13vW3Mg72HWKt229mKwPmcNLWhbEUSz4NE7r1LuUuan6AS39

887.  142tjyjeEYCrQtPss6x5jJrtVr7jwWZYH7UzwnUNWVqhk3Q8

888.  1ZQsfu4h5LUPuyGUPWEKdGmCSCGBJXjVYpUksGmRcEP9fhH

889.  1XPYw5t1kLheLKJmjQxaY161HMFCeoo4Fcwnbipst25iiwz

890.  15PwmnS8FfutBGJszxzBQ9afhTzPebmJWvTnBBxeB2yiZC5k

891.  enCgVWRhBeJiQ696uNmPwhoj8TmniM492VBdibyvzxnJo9WN6

892.  12ZRvZf3wb4jdhFuC2aSMKkgAsfo8HhS5uh7PG5J8fhBNNNk

893.  13Qk6AjxhBc6GtY8KF1va9H4ir5H89WRYzcazFD3WQyStmDh

894.   14kP33HNCMRqY37VyhfimdqJWwNNM4unoLBVucYVQRX4Dqzg

895.   15Zcy5jBrM22mmyNPU1e6FaSg5neJQcuE3eAXi4yubAD8XG2

896.   16guUSYTTKtanADS5gkzHhiBwZp5SJ7awSnhnrLDFc9qVxXg

897.   16RVUhBrc7XZfhBq4TaSiGVRWT2GyzHetuGL1xpHaGRbDLcj

898.   13r4GXU2Ji53uTcitto8NGPr2bhaN9opRu7njeYtM3PdnxE4

899.   12Mu8TnPcy4dJtmKo9oFxpLcLu65nNegdeFGsDwd5uJwMPYZ

900.   14NUxENDEt7Kn4PiYiXfMKZPjv1S7kiQCeSVpiGYy7Sx7y7o

901.   154MebqEHi1umZYwQukus1yQAj59tL8iPrd9bfhk8Zn5QNqF

902.   165ccNcbdrPS256BbSHphiYA6CjLeMFo4RUS8PnyQZcqPGp9

903.   1EZuwvQ7YRyx15J7tJLbQAz9tyMREBCQJK3GWHWRktwXf6B

904.   16ZPXQvWiWWFv9eYV8bBqpBeP4uGC3e6BiBnRFXTKw8Xqrm5

**ANNEX B**

**List of cryptocurrencies administered and operated by the 1st Defendant on cryptocurrency exchanges in accordance with the 4th Claimant's instructions in the 1st Defendant's report of 23.8.2023 to the 4th Claimant and their estimated values as at 23.8.2023**

| (A) S/N | (B) Token type of Digital Asset | (C) Approximate Quantity | (D) Value per type (USD) | (E) Approximate Cumulative Value (USD) |
|---|---|---|---|---|
| 1. | DOT | 8,200,000 | $4.42060 | $36,248,920.00 |
| 2. | ASTR | 246,000,000 | $0.06043 | $14,865,780.00 |
| 3. | ENJ | 18,900,000 | $0.24080 | $4,551,120.00 |
| 4. | GLMR | 9,400,000 | $0.19436 | $1,826,984.00 |
| 5. | RNDR | 2,580,000 | $1.38750 | $3,579,750.00 |
| 6. | ETH | 1192 | $1,634.40 | $1,948,204.80 |
| 7. | BTC | 143 | $26,040.47 | $3,723,787.21 |
| 8. | METIS | 28,300 | $12.14 | $343,562.00 |
| | Total Approximate Value (USD) as at 23 August 2023 | | | $67,088,108.01 |

**Annex B** -Page **1** of **1**

## ANNEX C

### List & values of all ~~digital~~ assets entrusted by the
### Claimants to the 1st ~~and 12th~~ Defendant~~s~~ as of 6 December 2023

Details of the Claimants' Digital Assets entrusted to the 1st ~~and 12th~~ Defendant~~s~~ as of 6 December 2023 having a total value of about USD 183,029,781.49~~171,700,778.49~~ as at 19 February 2024 derived from the sum of the grand total values under Tables 1 ~~and 2~~to 3 as follows

### TABLE 1 "Listed" Tokens

Note 1: "Listed" tokens are cryptocurrency tokens which are listed on cryptocurrency exchanges and traded on such exchanges.

| (A) S/N | (B) Token type | (C) Approximate No. of Tokens | (D) Estimated Market Value (USD, as at 19.2.2024) |
|---|---|---|---|
| 1. | DOT | 8,140,000 | 63,760,620.00 |
| 2. | ASTR | 284,940,000 | 49,123,656.00 |
| 3. | ENJ | 21,050,000 | 7,100,165.00 |
| 4. | GLMR | 9,400,000 | 4,365,539.60 |
| 5. | RNDR | 2,470,000 | 15,328,747.46 |
| 6. | ETH | 1,192 | 3,527,660.34 |
| 7. | BTC | 143 | 7,513,512.58 |
| 8. | METIS | 28,300 | 2,597,821.51 |
| 9. | CAPS | 36,026,212 | 870,754 |
| 10. | VPP | 4,404,628 | 291,586 |
| 11. | NEWO | 8,261,455 | 92,859 |
| 12. | RMRK | 40,000 | 96,980 |
| 13. | ARSW | 11,185,013 | 45,970 |
| 14. | UNQ | 5,878,856 | 79,365 |
| 15. | ZLK | 530,316 | 21,398 |
| 16. | INTR | 284,648 | 17,791 |
| 17. | BNC | 32,006 | 24,171 |
| 18. | SHFT | 1,568,788 | 11,923 |
| 19. | BRO | 2,287,040 | 11,938 |
| 20. | FCL | 625,000 | 13,625 |
| 21. | KWT | 5,794,594 | 14,255 |
| 22. | LAY | 7,160,420 | 5,156 |
| 23. | SRS | 20,000,000 | 7,800 |

| (A)<br>S/N | (B)<br>Token type | (C)<br>Approximate No. of Tokens | (D)<br>Estimated Market Value (USD, as at 19.2.2024) |
|---|---|---|---|
| 24. | aSEED(Acala) | 9,158 | 8,447 |
| 25. | OVL | 400,000 | 9,000 |
| 26. | KKT | 11,111,111 | 7,222 |
| 27. | EARN | 6,457,143 | 6,328 |
| 28. | ATID | 7,222,222 | 6,356 |
| 29. | GOV | 2,333,333 | 4,410 |
| 30. | QTZ | 6,713,470 | 4,767 |
| 31. | TIDAL | 20,937,500 | 6,072 |
| 32. | UNQ | 356,867 | 4,818 |
| 33. | NOVA | 74,403 | 2,247 |
| 34. | LTY | 33,346,279 | 2,334 |
| 35. | PETS | 234,464 | 2,005 |
| 36. | ARKN | 3,377,777 | 2,027 |
| 37. | NOVA | 51,463 | 1,554 |
| 38. | KRAC | 400,167 | 2,001 |
| 39. | WBOND | 10,000,000 | 1,400 |
| 40. | AFK | 2,083,333 | 750 |
| 41. | Starly | 140,126 | 824 |
| 42. | HDX | 660 | 18 |
| 43. | ATID | 6,033 | 5 |
| 44. | TEA | 7,017 | Negligible |
| 45. | GSN | 109,978 | Negligible |
| 46. | KEEY | 100 | Negligible |
| 47. | ~~BEDROCK~~ | ~~345,454~~ | ~~Negligible~~ |
| 48. | SuperBonds | 500,000 | Negligible |
| 49. | INTR | 26,119,381 | 1,632,461 |
| 50. | KSM | 19,161 | 925,284 |
| 51. | HDX | 19,787,846 | 550,102 |
| 52. | POKT | 2,053,517 | 518,513 |
| 53. | ACA | 3,320,273 | 378,776 |
| 54. | DORA | 1,264,105 | 235,149 |
| 55. | KINT | 249,202 | 195,573 |
| 56. | REEF | 71,479,290 | 127,948 |

| (A) S/N | (B) Token type | (C) Approximate No. of Tokens | (D) Estimated Market Value (USD, as at 19.2.2024) |
|---|---|---|---|
| 57. | THG | 1,841,308 | 106,059 |
| 58. | SAITO | 11,200,000 | 101,808 |
| 59. | LMR | 3,333,333 | 86,700 |
| 60. | ZTG | 642,857 | 78,235 |
| 61. | SDN | 163,463 | 63,521 |
| 62. | TEER | 62,664 | 57,017 |
| 63. | CAPS | 1,450,035 | 35,047 |
| 64. | KAR | 156,251 | 31,731 |
| 65. | MYRA | 974,671 | 7,378 |
| 66. | SWASH | 462,962 | 5,879 |
| 67. | USDC | 2,310 | 2,310 |
| 68. | BTC | 0.0189 | 993 |
| 69. | CFG | 172,130.54 | 110,695 |
| 70. | USDT | 1,468,602.74 | 1,468,602 |
| 71. | USDC | 499,976.28 | 499,976 |
| **Total value as at 19~~3~~.2.2024 (USD)** | | | ~~154,995,878.49~~ 162,215,635.49 |

**TABLE 2: ~~"Unlisted"~~ Project Investments**
**[pursuant to data in the 1st Defendant's Report to the 4th Claimant in August 2023]**

Note 2: "Unlisted" tokens are tokens which the 4th Claimant received as a return on his investments in various cryptocurrency projects. These tokens have yet to be listed on any exchange. The 4th Claimant has valued these tokens based on the moneys he invested into the respective cryptocurrency projects which yielded the unlisted tokens.

Note 3: Some projects which the 4th Claimant invested in have yet to issue tokens. These are depicted in Column D with the "-" mark.

Note 4: The 1st Defendant was instructed by the 4th Claimant to create new digital wallets to hold the returns by way of tokens paid or to be paid out from the projects the 4th Claimant invested into, under Notes 2 and 3 above. Such wallets are now under Wo Qi's control, resulting in the 4th Claimant being unable to access all such tokens.

Note 5: The 4th Claimant's investments in the projects at rows 7 and 15 of the table below were made through DOT cryptocurrency tokens, not cash.

| (A) S/N | (B) Project Name | (C) Investment Date | (D) Token | (E) Amount Invested |
|---|---|---|---|---|
| 1. | RAND | 1/6/2022 | RND | USD 500,000 |
| 2. | NFT3 | 1/7/2022 | - | USD 100,000 |
| 3. | Swing | 1/7/2022 | SWING | USD 200,000 |
| 4. | MetaDojo | 1/10/2022 | - | USD 500,000 |
| 5. | HydraDX | 1/22/2022 | HDX | USD 250,000 |
| 6. | Arthswap | 1/27/2022 | ARSW | USD 250,000 |
| 7. | HydraDX | 1/27/2022 | HDX | 150,000 DOT<br>$18.07 per coin as at 1/27/2022, which works out to USD 2,710,500 invested |
| 8. | Minterest | 2/7/2022 | MNT | USD 300,000 |
| 9. | Subsquid | 2/11/2022 | SQD | USD 500,000 |
| 10. | Starlay | 2/28/2022 | LAY | USD 100,000 |
| 11. | AFKDAO | 3/29/2022 | AFK | USD 120,000 |
| 12. | Astrid | 3/29/2022 | ATID | USD 300,000 |
| 13. | ~~Sirius Finance~~ | ~~4/7/2022~~ | ~~SRS~~ | ~~USD 200,000~~ |
| 14. | Melaxy | 4/8/2022 | IFS | USD 200,000 |
| 15. | Unique | 4/10/2022 | UNQ | 25,000 DOT<br>$19.78 per coin as at 4/10/2022, which works out to USD 494,500 invested |
| 16. | DAM (Ivy Wallet) | 4/27/2022 | - | USD 300,000 |
| 17. | Aperion | 5/2/2022 | APRS | USD 500,000 |
| 18. | Cosmize | 5/13/2022 | - | USD 99,000 |
| 19. | CypherMOD | 5/19/2022 | - | USD 2,500,000 |

| (A) S/N | (B) Project Name | (C) Investment Date | (D) Token | (E) Amount Invested |
|---|---|---|---|---|
| 20. | RAND | 6/30/2022 | - | USD 500,000 |
| 21. | Sumi | 7/10/2022 | - | USD 500,000 |
| 22. | Talisman | 7/17/2022 | - | USD 1,500,000 |
| 23. | Shardeum | 8/3/2022 | SHM | USD 1,000,000 |
| 24. | PWN DAO | 1/10/2023 | - | USD 400,000 |
| 25. | Earn Network | 2/20/2023 | EARN | USD 100,000 |
| 26. | Linera | 6/30/2023 | - | USD 250,000 |
| 27. | Zetachain | 8/29/2023 | - | USD 2,000,000 |
| 28. | MyContainer (Earn Network) | 12/29/2021 | EARN | USD 330,000 |
| **Grand total value invested (USD)** | | | | ~~16,704,900.00~~ **16,504,900.00** |

**TABLE 3: Project Investments –**

**Other Investments into primary market cryptocurrency projects, based on (a) the Claimants' various pre-investment investigation reports (b) the 12th Defendant's post-investment management report (c) recollection of the work process by the Claimants' token transfer team and (d) external identification of the DFG Platform's project addresses**

Note 6: The 4th Claimant is unable to set out the amount of money invested into the projects at rows 40 to 51 of the table below without discovery of relevant documents from the Defendants because the Defendants have deprived him of possession, custody and power over the relevant documents.

| (A) S/N | (B) Project Name | (C) Investment Date | (D) Token | (E) Value of Investment (USD) |
|---|---|---|---|---|
| 1. | HydraDX | 9/12/2020 | HDX | 80,000 |
| 2. | UT | 30/1/2021 | UT | 50,000 |
| 3. | zCloak | 27/2/2021; 17/8/2021 | - | 725,000 |
| 4. | T3RN | 11/3/2021 | T3RN | 200,000 |
| 5. | EQ finance | 16/3/2021 | EQ | 175,000 |
| 6. | Bit.Country | 26/3/2021 | NEER | 300,000 |
| 7. | TPR | 1/4/2021 | TPR | 550,000 |
| 8. | Parami | 4/4/2021 | AD3 | 100,000 |
| 9. | SubDAO | 6/4/2021 | GOV | 70,000 |
| 10. | 大饼画 | 19/4/2021 | - | 606,503 |
| 11. | DAOSquare | 20/4/2021 | RICE | 50,000 |
| 12. | FTA | 20/4/2021 | FTA | 350,000 |
| 13. | Eco Fund | 27/4/2021 | - | 500,000 |
| 14. | Republic | 28/4/2021 | NOTE | 50,000 |
| 15. | DoinGud | 4/5/2021 | - | 200,000 |
| 16. | MUSE NETWORK | 7/5/2021 | MUSE | 250,000 |
| 17. | Minterest | 11/5/2021 | MNT | 250,000 |
| 18. | TTN | 19/5/2021 | TTN | 250,000 |
| 19. | StarryNift | 26/5/2021 | SNFT | 100,000 |
| 20. | Composable | 1/6/2021 | PICA; LAYR | 3,000,000 |
| 21. | Source Network (Source, Inc.) | 12/6/2021 | OPEN | 150,000 |

| (A) S/N | (B) Project Name | (C) Investment Date | (D) Token | (E) Value of Investment (USD) |
|---|---|---|---|---|
| 22. | Laconic | 6/8/2021 | - | 250,000 |
| 23. | Zien X | 13/8/2021 | - | 150,000 |
| 24. | OpenDeFi | 19/8/2021 | ODEFI | 250,000 |
| 25. | Kibo | 19/8/2021 | KBT | 62,500 |
| 26. | Talisman | 20/8/2021 | - | 125,000 |
| 27. | OP Games | 26/8/2021 | - | 100,000 |
| 28. | EthereumCentral | 2/9/2021 | - | 100,000 |
| 29. | Steady State | 15/9/2021 | - | 150,000 |
| 30. | Iron Sail | 29/9/2021 | KEEY | 1,000,000 |
| 31. | Ruby Protocol (Ruby) | 6/10/2021 | RUBY | 300,000 |
| 32. | Grant | 19/10/2021 | - | 50,000 |
| 33. | Bit.country | 23/10/2021 | - | 50,000 |
| 34. | Subsquid | 2021/10/29; | SQD | 100,000 |
| 35. | Yield App | 9/11/2021 | YLD | 185,000 |
| 36. | Alphaday (Alphabox) | 21/11/2021 | - | 100,000 |
| 37. | Airwaive | 9/2/2022 | - | 250,000 |
| 38. | Pool Data | 16/2/2022 | - | 200,000 |
| 39. | TEA DAO | 24/3/2022 | TEA | 100,000 |
| 40. | Bifrost | 1/9/2020 | BNC | Unknown |
| 41. | Crust Network | 15/9/2020 | CRU | Unknown |
| 42. | Chainflip | 31/3/2021 | FLIP | Unknown |
| 43. | ColdStack | 9/4/2021 | CLS | Unknown |
| 44. | Evanesco | 16/4/2021 | EVA | Unknown |
| 45. | Polkarare | 25/4/2021 | PRARE | Unknown |
| 46. | StartFi | 21/5/2021 | - | Unknown |
| 47. | Apricot Finance | 3/6/2021 | APRT | Unknown |
| 48. | DeepDAO | 4/6/2021 | - | Unknown |
| 49. | Divergence | 9/6/2021 | DIVER | Unknown |

| (A) S/N | (B) Project Name | (C) Investment Date | (D) Token | (E) Value of Investment (USD) |
|---|---|---|---|---|
| 50. | Spool DAO | 18/6/2021 | SPOOL | Unknown |
| 51. | Dexlab | 30/6/2021 | DXL | Unknown |
| 52. | Subquery | 10/2/2021 | 50 Shares | USD 75,000 (equivalent in USDC) |
| 53. | Big Time Studios | 27/4/2021 | 100,000 shares | USD 300,000 (equivalent in USDC) |
| 54. | Nayms | 29/4/2021 | 200,000 shares | USD 200,000 (equivalent in USDT) |
| 55. | Mintable | 21/5/2021 | 16,827 shares | USD 110,000 (equivalent in USDT) |
| 56. | NGRAVE.IO | 7/9/2021 | Unknown | USD 300,000 (equivalent in USDT) |
| 57. | Polkaname | 17/11/2021 | 1% shareholding | USD 100,000 (equivalent in USDT) |
| 58. | Ternoa | 22/11/2021 | Unknown | USD 333,333 (equivalent in USDT) |
| 59. | Yours | 13/10/2016 | - | 25,000 (equivalent in BTC) |
| 60. | PopChest | 11/1/2017 | - | 400,000 (equivalent in BTC) |
| 61. | SatoshiPay | 26/1/2017 | - | EUR 200,260, equivalent to USD 213,937.76 (equivalent in BTC) |
| | **Value of total known investment (USD)** | | | **At least 13,586,273.76** |

169

## ANNEX D

Tabulation of Digital Assets transferred by Wo Qi from Entrusted Digital Wallets into Impugned Wallets from 8.12.2023 - 8.2.2024 (at the first level of dissipation)

The various types of Digital Assets comprising cryptocurrency tokens of the type described at column (D) and number, at Column (E), which were subject to unauthorised transfers by Wo Qi from Mr Wo Weidong's digital wallets ("**Entrusted Digital Wallets**") at Column (C) on the specific dates at Column (B), into recipient wallet addresses at Column (F) ("**Impugned Wallets**"), held with on various cryptocurrency exchanges, including those of the 5th to 7th Defendants as well as other exchanges whose identities cannot be ascertained.

| (A) S/N | (B) Transfer Date (Y/M/D) | (C) Originating Entrusted Digital Wallet Addresses | (D) Token | (E) No. | (F) Impugned Wallet | (G) Estimated market value (USD as of 19.2.2024) |
|---|---|---|---|---|---|---|
| I. | Digital wallets holding Stolen Digital Assets held on the Gate exchange, operated by the 5th Defendant | | | | | |
| 1. | 2024/1/26 | 0x7e0324b39Aa585f13d3CCc2Ed1375592AB DABE9f | DORA | 1,251,590 | 0x34576B58bAae93e9622ccc13001987803428 b559 | 232,820.77 |
| 2. | 2024/1/26 | 0x7e0324b39Aa585f13d3CCc2Ed1375592AB DABE9f | DORA | 12,515 | 0x34576B58bAae93e9622ccc13001987803428 b559 | 2,328.04 |
| 3. | 2024/1/21 | 0x7e0324b39Aa585f13d3CCc2Ed1375592AB DABE9f | USDC | 2,310 | 0x34576B58bAae93e9622ccc13001987803428 b559 | 2,310.00 |
| 4. | 2024/1/21 | 0x2C20E739552cd0BEAF523930BAAD7754 C426C962 | THG | 1,841,308 | 0x34576B58bAae93e9622ccc13001987803428 b559 | 106,059.34 |
| 5. | 2024/1/21 | 0x2C20E739552cd0BEAF523930BAAD7754 C426C962 | MYRA | 974,671 | 0x34576B58bAae93e9622ccc13001987803428 b559 | 7,378.26 |

| (A)<br>S/N | (B)<br>Transfer Date<br>(Y/M/D) | (C)<br>Originating Entrusted Digital Wallet Addresses | (D)<br>Token | (E)<br>No. | (F)<br>Impugned Wallet | (G)<br>Estimated market value (USD as of 19.2.2024) |
|---|---|---|---|---|---|---|
| 6. | 2024/1/13 | XQ5mBRMhkZ31AwztWM3QR7aqPyk8jvUqMAuh718S2qRs1Xv | SDN | 163,463 | WQnkfwF2jYsg7VL8BrvnfrkXknbNk4ByGyMCm RL6jVz8vvs | 63,521.72 |
| 7. | 2024/1/13 | rkNZr3uDCrjo9UaEmTNYjRS3puYyEK3MUH rzpa8CvJSwpYc pLoJcxWEwaeW9E68ZijiDZ4VXCBnKATYb AfpPnEEmG2HQWU | KAR | 156,251 | pLoJcxWEwaeW9E68ZijiDZ4VXCBnKATYbAfp PnEEmG2HQWU ommXeZTBcB49HhignVzvNf2UDDUY HwkY6dk3pMEVJHSyjme | 31,731.45 |
| 8. | 2024/1/1 | 0x7e0324b39Aa585f13d3CCc2Ed1375592AB DABE9f | ASTR | 5,610,352 | 0x34576b58baae93e9622ccc1300198 7803428 b559 | 967,224.68 |
| 9. | 2023/12/28 | 0x2c20e739552cd0beaf523930baad7754c42 6c962 | CAPS | 1,450,035 | 0x34576b58baae93e9622ccc1300198 7803428 b559 | 35,047.34 |
| 10. | 2023/12/27 | wdBE6z9Nt4WjgAtze1yK5cWrmu4bNSxac7S 5fSvsectLEBd3D | INTR | 25,119,381 | wd7yNbgJXrxcquaL3U3SxGAcmsgVVi qMnF7s WPDyd667gVhgV | 1,569,961.31 |
| 11. | 2023/12/27 | wd8xfcBneXyd1EdniEMw4suscBKgeUqE57C 54sZZRRPT8EBKr | INTR | 1,000,000 | wd7yNbgJXrxcquaL3U3SxGAcmsgVVi qMnF7s WPDyd667gVhgV | 62,500.00 |
| 12. | 2023/12/26 | a3bfwSMaavhWNDNX7eMc9Zx6dgA2P55MX7RQD1Pstn8D2DQbo | KINT | 249,202 | a3ageRr6UFgWCtK4St382xCqoNWqEK5VEF MCeX4J6SpsaVALF | 195,573.73 |
| 13. | 2023/12/26 | dDzySTkEUD7KoMbhG997G3xDXin5tv5c7C ZyHky2JWEXHvnBx | ZTG | 642,857 | dDyVe7EfYVLmPWnfifvqvmWK5jD6djm76qYy HUAnW71igaFoT | 78,235.70 |
| 14. | 2023/12/26 | 2LBsB7qPpq76mPkaqfAT6KtbhCvCzXbMqp QQR2oYCo4VjwqL | TEER | 62,664 | 2Ji4pcGU74Ygvaj3NSu7osz9hdvwpD6MUoQQ 8EZjoaFtPRw5 | 57,017.97 |

171

| (A) | (B) | (C) | (D) | (E) | (F) | (G) |
|---|---|---|---|---|---|---|
| S/N | Transfer Date (Y/M/D) | Originating Entrusted Digital Wallet Addresses | Token | No. | Impugned Wallet | Estimated market value (USD as of 19.2.2024) |
| 15. | 2023/12/26 | 0x7e0324b39aa585f13d3ccc2ed1375592abd abe9f | LMR | 3,333,333 | 0x34576b58baae93e9622ccc13001987803428 b559 | 86,699.99 |
| 16. | 2023/12/26 | 0x7e0324b39aa585f13d3ccc2ed1375592abdabe9f | SWASH | 462,962 | 0x34576b58baae93e9622ccc13001987803428b559 | 5,879.62 |
| 17. | 2023/12/26 | 0x7e0324b39aa585f13d3ccc2ed1375592abd abe9f | SAITO | 11,200,000 | 0x34576b58baae93e9622ccc13001987803428 b559 | 101,808.00 |
| 38. | 2024/1/20 | 506ad0039bfa815dc5c011e345b0d88d30805cf2 | POKT | 2,053,517 | 9d7aa270a2444c01c7ea740f1952338dc237f2af | 518,513.05 |
| II. | Digital wallets holding stolen digital assets held on the Kraken exchange, operated by the 6th Defendant | | | | | |
| 18. | 2024/1/26 | 7KYr6iuZ3NqSaKyn8H9dyPBr1U4ujh5PGr6y BCxbMYnsp64y | HDX | 4,443,846 | 7MpPM98aAquuw3gGLhf36pmiYEjtVN6FFcTN dctPtomLP9E5 | 33.36 |
| 19. | 2024/1/26 | 7K4LkipjzdHC4aQuRPNRJgYEKYGoKNSfmu JXNkJbHdKiBgD9 | HDX | 15,344,000 | 7MpPM98aAquuw3gGLhf36pmiYEjtVN6FFcTN dctPtomLP9E5 | 123,505.56 |
| 20. | 2023/12/26 | 0x20ad017d62304c8e8f6c6b3080b057a44e9 41146 | RNDR | 490,927 | 0xd43cb11be295bef0f4a50f405eb4e60b786c93 86 | 426,563.20 |
| 21. | 2023/12/26 | 0x2c20e739552cd0beaf523930baad7754c42 6c962 | RNDR | 1,767,865 | 0xd43cb11be295bef0f4a50f405eb4e60b786c93 86 | 10,971,317.15 |
| III. | Digital wallets holding stolen digital assets held on the Binance exchange, operated by the 7th Defendant | | | | | |

| (A) S/N | (B) Transfer Date (Y/M/D) | (C) Originating Entrusted Digital Wallet Addresses | (D) Token | (E) No. | (F) Impugned Wallet | (G) Estimated market value (USD as of 19.2.2024) |
|---|---|---|---|---|---|---|
| 22. | 2024/2/1 | 16GdprNFZb2EQeAtf6RoqoT44uunWW1Q2A kxD6yzLBF5ifLX | DOT | 54,273 | 13wiwEdkogdAyChmi9PwMHyurCq5Aj 1UH9DS x7iwBuSVCfp | 425,120.41 |
| 23. | 2024/2/1 | 0x2ad9034e50373629fb57cb04fe0f1e078a16 9d42 | USDC | 500,000 | 0x9682df1247f884b2be5400156f6929b 647f219f7 | 500,000 |
| 24. | 2024/1/20 | 12TnUDiLnJBQDsvgMqwvWunTbyGGrpmste | DOT | 150,000 | 13wiwEdkogdAyChmi9PwMHyurCq5Aj 1UH9DS | 1,174,950.00 |
| 25. | 2024/1/18 | 12xHpDo9q3jejdVZ4jj9BcS5Hu4PH9QbPbC h R9SdBgLA5a6k | DOT | 150,000 | 13wiwEdkogdAyChmi9PwMHyurCq5Aj 1UH9DS x7iwBuSVCfp | 1,174,950.00 |
| 26. | 2024/1/15 | Xtb7BWAkW7HWvWsbQ8G57mCXKmrZ4Z CLHyMVZf8VxJbV5vV | ASTR | 12,851,927 | aApwjZ6GbDJQoKJRwv62WBmTxhc6 KvK1K9 oaWCDnNtvLB1E | 2,215,672.21 |
| 27. | 2024/1/15 | WtzBSaSe1FSc72QHyPgYoKYqqiqpwbNqd R XTPXXMfeCT4P7 | ASTR | 10,113,158 | aApwjZ6GbDJQoKJRwv62WBmTxhc6 KvK1K9 oaWCDnNtvLB1E | 1,743,508.44 |
| 28. | 2024/1/15 | ZCDpBwuR5FHagz5JHSRJGFNpVZtGPnuf T L7rFzTu6LtT4tV | ASTR | 45,841,411 | aApwjZ6GbDJQoKJRwv62WBmTxhc6 KvK1K9 oaWCDnNtvLB1E | 7,903,059.25 |
| 29. | 2024/1/15 | XQ5mBRMhkZ31AwztWM3QR7aqPyk8jvUq MAuh718S2qRs1Xv | ASTR | 39,577,373 | aApwjZ6GbDJQoKJRwv62WBmTxhc6 KvK1K9 oaWCDnNtvLB1E | 6,823,139.10 |
| 30. | 2024/1/13 | XFjKjMJcQoaAnaZ9YaBGzPS6tqFkAHGgN p FZAiPqWNbze3w | ASTR | 21,687,893 | aApwjZ6GbDJQoKJRwv62WBmTxhc6 KvK1K9 oaWCDnNtvLB1E | 3,738,992.75 |
| 31. | 2024/1/12 | WypXeLJ64xU2y1hQy5faWknZ4mJcmGtym WGyLrKrCUZSNxv | ASTR | 60,389,123 | aApwjZ6GbDJQoKJRwv62WBmTxhc6 KvK1K9 oaWCDnNtvLB1E | 10,411,084.80 |

| (A)<br>S/N | (B)<br>Transfer Date<br>(Y/M/D) | (C)<br>Originating Entrusted Digital Wallet Addresses | (D)<br>Token | (E)<br>No. | (F)<br>Impugned Wallet | (G)<br>Estimated market value (USD as of 19.2.2024) |
|---|---|---|---|---|---|---|
| 32. | 2024/1/12 | ZfX991bEHfhwS9vg7j4926kZ8tU6sH1qbBWGUKMdXiXpeN8 | ASTR | 33,401,612 | aApwjZ6GbDJQoKJRwv62WBmTxhc6KvK1K9oaWCDnNtvLB1E | 5,758,437.91 |
| 33. | 2024/1/12 | b4unak5TwNRZkpCpMLBJ12XRYbB44bLxqV3uWNvrMxwk2jW | ASTR | 15,489,129 | aApwjZ6GbDJQoKJRwv62WBmTxhc6KvK1K9oaWCDnNtvLB1E | 2,670,325.84 |
| 34. | 2024/1/12 | XcxMSAS5KkyvMEKLNJHMrKPVMitPn6A7QAbLGUEw8eiks91 | ASTR | 19,962,641 | aApwjZ6GbDJQoKJRwv62WBmTxhc6KvK1K9oaWCDnNtvLB1E | 3,441,559.31 |
| 37. | 2024/1/23 | 5E1zftY5yGUBJ6V376g93TbvSH4jaqrTK6UD FrTGdbJduH8Y | REEF | 71,479,280 | 5CUKEptHf8x4KFDrofGkFQuVKipBomBdP4gKazKexafpBxxo | 127,947.91 |
| 37A. | 2024/2/1 | 15PwmnS8FfutBGJszxzBQ9afhTzPebmJWvTnBBxeB2yiZC5k | DOT | 233,147 | 13wiwEdkogdAyChmi9PwMHyurCq5Aj1UH9DSx7iwBuSVCfp | 1,826,248.28 |
| IV. | | Digital wallets holding stolen digital assets held on unknown exchanges | | | | |
| 35. | 2024/2/8 | 0x2C20E739552cd0BEAF523930BAAD7754 C426C962 | METIS | 22,527 | 0xfe8078e29982eeA4fC93Ef9D4c784433a750D74c | 2,067,883.99 |
| 36. | 2024/2/8 | 0x7e0324b39Aa585f13d3CCc2Ed1375592AB DABE9f | METIS | 5,771 | 0xC356c10128653Dc2Cd6eE0CF2190D72F00852E99 | 529,753.56 |
| 37. | 2024/1/23 | 5E1zftY5yGUBJ6V376g93TbvSH4jaqrTK6UD FrTGdbJduH8Y | REEF | 71,479,290 | 5CUKEptHf8x4KFDrofGkFQuVKipBomBdP4gK azKexafpBxxo | |
| 38. | 2024/1/20 | 506ad0039bfa815dc5c011e345b0d88d30805 cf2 | POKT | 2,053,517 | 9d7aa270a2444c01c7ea740f1952338dc237f2af | |

| (A) S/N | (B) Transfer Date (Y/M/D) | (C) Originating Entrusted Digital Wallet Addresses | (D) Token | (E) No. | (F) Impugned Wallet | (G) Estimated market value (USD as of 19.2.2024) |
|---|---|---|---|---|---|---|
| 39. | 2024/1/16 | 0x52b77D2617A62651EF50a4956dE47f13e48A2B2c | GLMR | 1,024,423 | 0xE4307D1E93f23bf867ca6f72F0cd94d47c90d708 | 475,761.50 |
| 40. | 2024/1/16 | 0x521055Ee79cd8fDE5A13432606d39a882B28Bbf7 | GLMR | 604,305 | 0xE4307D1E93f23bf867ca6f72F0cd94d47c90d708 | 280,650.72 |
| 41. | 2024/1/16 | 0x0f9BA1621CAd82ea963D82046A44486f34 C45b28 | GLMR | 2,207,257 | 0xE4307D1E93f23bf867ca6f72F0cd94d47c90d708 | 1,025,092.09 |
| 42. | 2024/1/16 | 0x764Cbc3Af4Fa3243f3d38EE3aB1F7b6C640d1C6A | GLMR | 3,906,193 | 0x8EF56d4565e1D1a980027833366DF7ecb33967A7 | 1,814,110.25 |
| 43. | 2024/1/16 | 0x4eEa3427ad5c17943847b348FEd16D462f88caF9 | GLMR | 1,070,917 | 0xE4307D1E93f23bf867ca6f72F0cd94d47c90d708 | 497,354.21 |
| 44. | 2024/1/1 | 24bpS6ic9k3LijBFCn8B2XRsnZbwNnRcnHxA LtXrwogyEGvA | ACA | 130,209 | 22jvChwqUdCDcq69NMMdBXfTnJAqGWwYVZCXiALyLsoyzcqL | 14,854.24 |
| 45. | 2023/12/30 | enDGmzm4VSkFcWNVQuHgPBJ6t8uAbHUz mLL53wNVt1DgR5zjt | ENJ | 5,003,099 | enDoD1TVUKWv9gx4K25vgNDYWwuFKXK5auR5hsU1xJEPBzi8P | 1,687,545.63 |
| 46. | 2023/12/24 | GJYNAPP5R3XUFwXxX5z1KJUcgTawKPTGmX7RRPTExw4ykSp | KSM | 19,161 | ESGYwfpqctTTTx7dRsmvfzYYbMyWPEFy2gefhhraHMR5cnr | 925,284.69 |
| 47. | 2023/12/24 | 24bpS6ic9k3LijBFCn8B2XRsnZbwNnRcnHxA LtXrwogyEGvA | ACA | 3,109,475 | 22jvChwqUdCDcq69NMMdBXfTnJAqGWwYVZCXiALyLsoyzcqL | 354,728.91 |
| 48. | 2023/12/24 | 21v7pc3K1XL6pG31wdUnU25unVUmtgRVvU Gw3m4qAUSzqpQG | ACA | 80,589 | 22jvChwqUdCDcq69NMMdBXfTnJAqGWwYVZCXiALyLsoyzcqL | 9,193.59 |

| (A) S/N | (B) Transfer Date (Y/M/D) | (C) Originating Entrusted Digital Wallet Addresses | (D) Token | (E) No. | (F) Impugned Wallet | (G) Estimated market value (USD as of 19.2.2024) |
|---|---|---|---|---|---|---|
| 49. | 2023/12/24 | 0x0f9BA1621CAd82ea963D82046A44486f34 C45b28 | GLMR | 632,810 | 0x38837338160553eF7c30aB786372605FF82b4037 | 56,190.05 |
| 50. | 2023/12/24 | 0x52b77D2617A62651EF50a4956dE47f13e48A2B2c | GLMR | 120,990 | 0x38837338160553eF7c30aB786372605FF82b4037 | 293,888.99 |
| V. | Digital wallets holding stolen digital assets which are not held with any exchange transferred out from EUC's Binance and OKX Accounts | | | | | |
| 51. | 2023/12/9 | 0x28C6c06298d514Db089934071355E5743bf21d60 | RNDR | 7.26 | 0x7a437e736dd169B706f4c8b9dFEbEb02fbc633cA | 45.06 |
| 52. | 2023/12/9 | 0x28C6c06298d514Db089934071355E5743bf21d60 | RNDR | 221884.04 | 0x7a437e736dd169B706f4c8b9dFEbEb02fbc633cA | 1,377,005.70 |
| 53. | 2023/12/9 | enC1zkqfU5X4x84LMKSzcRdsSSiF7M1Nt7o vm62jRXr78uT1h | ENJ | 4.97 | enESTYANZNHxHopxztqomTGLEtaUYgUxcp2izKE7QazzA5FQ5 | 1.68 |
| 54. | 2023/12/9 | enC1zkqfU5X4x84LMKSzcRdsSSiF7M1Nt7o vm62jRXr78uT1h | ENJ | 1321359 | enESTYANZNHxHopxztqomTGLEtaUYgUxcp2izKE7QazzA5FQ5 | 445,694.40 |
| 55. | 2023/12/9 | 1qnJN7FViy3HZaxZK9tGAA71zxHSBeUweir KqCaox4t8GT7 | DOT | 4.92 | 13ifUBXzoyPTTRLhJ7eJybJoAFRLqBwvgNBPTmVCWUw1uVGe | 38.54 |
| 56. | 2023/12/9 | 1qnJN7FViy3HZaxZK9tGAA71zxHSBeUweir KqCaox4t8GT7 | DOT | 560622.1 | 13ifUBXzoyPTTRLhJ7eJybJoAFRLqBwvgNBPTmVCWUw1uVGe | 4,391,352.91 |

| (A) S/N | (B) Transfer Date (Y/M/D) | (C) Originating Entrusted Digital Wallet Addresses | (D) Token | (E) No. | (F) Impugned Wallet | (G) Estimated market value (USD as of 19.2.2024) |
|---|---|---|---|---|---|---|
| 57. | 2023/12/9 | bc1qm34lsc65zpw79lxes69zkqmk6ee3ewf0j77s3h | BTC | 0.0189 | bc1qlzj9p7pgdp59uflr5jdrxelxzva4hg9gtkh0jz | 993.04 |
| 58. | 2023/12/9 | 0x6cc5f688a315f3dc28a7781717a9a798a59f da7b | CFG | 100 | 0x7a437e736dd169B706f4c8b9dFEbEb02fbc633cA | 64.31 |
| 59. | 2023/12/9 | 0x6cc5f688a315f3dc28a7781717a9a798a59f da7b | CFG | 172030.54 | 0x7a437e736dd169B706f4c8b9dFEbEb02fbc633cA | 110,631.12 |

## ANNEX E

**List of Non-Digital Assets held by the 1st – 4th and 9th – 12th Defendants on trust for the 4th Claimant**

| Legal owner | Non-Digital Assets |
|---|---|
| **2nd Defendant**<br>**Sun Hong Ming** | (a) 10% shares in the 2nd Claimant, Shanghai Huiyin Group Co. Ltd<br>(b) All shares and/or other interest(s) in the 3rd Claimant, Digital Finance Group Company<br>(c) All shares and/or other interest(s) in the 4th Defendant, Smart River Investments Limited<br>(d) All shares and/or other interest(s) in the 9th Defendant, W3 Cap Holding Co., Ltd<br>(e) UOB bank account in the name of the 2nd Defendant (which is linked to the UOB Singapore account maintained in the name of the 4th Defendant) and all assets therein<br>(f) Bank of America Merrill Lynch bank account in the name of the 2nd Defendant and all assets therein<br>(g) Credit Agricole bank account in the name of the 2nd Defendant (which is linked to the Credit Agricole account in the name of the 4th Defendant) and all assets therein<br>(h) Bank of New York Mellon bank account in the name of the 2nd Defendant and all assets therein<br>(i) Account registered in the name of the 2nd Defendant with Kraken exchange and all non-digital assets therein<br>(j) Various unexited investments entered into in the name of the 2nd Defendant, totalling USD 417,665 in investment value |
| **3rd Defendant**<br>**Exchange Union Company** | All assets of the 3rd Defendant, including but not limited to the following specific assets:<br>(a) Securities account maintained with Fidelity Brokerage Services LLC and/or its affiliates ("**Fidelity**") and all assets held therein<br>(b) Various unexited investments entered into in the 3rd Defendant's name, with a total investment value of USD 12,152,777.39, including (but not limited to):<br>(i) investments into Digital Future Alliance Limited, Open Relay and Ledger SAS; |

| Legal owner | Non-Digital Assets |
|---|---|
| | (ii) investments assigned to the 3rd Defendant by Orient Space Pte. Ltd., into the following companies:<br>(1) Ethernode LLC<br>(2) Monetization Solutions, Inc<br>(3) Cryzen LLC<br>(4) Slips Entertainment Inc.<br>(5) Button Blockchain Technologies, Inc.<br>(6) Helios Classic Limited<br>(7) Pulse Agent Inc<br>(8) SALDO, INC.<br>(9) Second State Inc<br>(10) Onesmart Technology SA de CV<br>(11) W3 Engineers Ltd.<br>(12) VREX LAB Co., Ltd. |
| | (c) Accounts receivable from Genesis Global Capital LLC in the value of USD 37,907,447 (which were later distributed in the form of the Genesis Proceeds) |
| | (d) FV Bank bank account in the name of the 3rd Defendant and all assets therein |
| | (e) Morgan Stanley securities account in the name of the 3rd Defendant and all assets therein |
| | (f) Summit National Bank bank account in the name of the 3rd Defendant and all assets therein |
| | (g) Account registered in the name of the 3rd Defendant with Kraken exchange and all non-digital assets therein |
| | (h) Account registered in the name of the 3rd Defendant with Binance exchange and all non-digital assets therein |
| | (i) Account registered in the name of the 3rd Defendant with BlockFi and all non-digital assets therein |
| **4th Defendant**<br><br>**Smart River Investments Limited** | All assets of the 4th Defendant, including but not limited to the following specific assets: |
| | (a) UOB Singapore bank account in the name of the 4th Defendant and all assets therein (which is linked to the UOB Singapore account maintained in the name of the 2nd Defendant) |
| | (b) FV Bank bank account in the name of the 4th Defendant and all assets therein |
| | (c) Morgan Stanley bank account in the name of the 4th Defendant and all assets therein |

| Legal owner | Non-Digital Assets |
|---|---|
| | (d) Credit Agricole bank account in the name of the 4th Defendant and all assets therein (which is linked to the Credit Agricole account maintained in the name of the 2nd Defendant) |
| | (e) Securities account maintained with Fidelity and all assets held therein |
| | (f) Account registered in the name of the 4th Defendant with Kraken exchange and all non-digital assets therein |
| | (g) Various unexited investments made in the name of the 4th Defendant into various companies including Coinlist, 3iQ, Fintech Holdings, LLC, Atlas, ChainSafe, Bloq,Inc., and Circle Internet Financial Limited, with a total investment value of USD 19,401,423.26 |
| | (h) All shares and/or other interest(s) in Silvery Capital Holding Company ("**Silvery Capital**"), a company incorporated in Abu Dhabi, and its underlying assets including but not limited to the following specific assets: |
| |    (i) FV Bank bank account held in the name of Silvery and all assets therein |
| |    (ii) Shares and/or other interest(s) in Matrix Limited, a company incorporated in Abu Dhabi |
| **9th Defendant**<br><br>**W3 Cap Holding Co., Ltd** | All assets of the 9th Defendant, including but not limited to the following specific assets:<br><br>(a) All shares and/or other interest(s) in Assets Bay Investments Limited ("**Assets Bay**"), and its underlying assets including but not limited to: its paid-up capital of approximately USD 38.2 million, which included cash deposits of USD 32 million (which comprised of USD 5 million in a bank account with Credit Agricole and USD 27 million in bank accounts with UOB Singapore and Indosuez Wealth Management), and 100,000 shares in Coinbase Global, Inc., which shares it had acquired for 6 million USD; and Fidelity account in the name of Assets Bay and all assets therein<br><br>(b) All shares and/or other interest(s) in W3 Capital Pte Ltd ("**W3 FO**"), and its underlying assets including:<br><br>   (i) UOB Singapore account held in the name of W3 FO and all assets therein |
| **10th Defendant**<br><br>**Create Fortune Pte. Ltd.** | All assets of the 10th Defendant, including but not limited to the following specific assets:<br><br>(a) UOB Singapore bank account no. 349903151511 held in the name of the 10th Defendant and all assets therein (which as of 3 July 2023 comprised USD 1,366,376.54 in deposits)<br><br>(b) Investments into various projects including Bitquery, Inc, FV Bank, Ngrave with a total value of USD 2,001,640 |

| Legal owner | Non-Digital Assets |
|---|---|
| | (c)  Shares and/or other interest(s) in Mintable Pte. Ltd. held in the name of the 10th Defendant |
| **11th Defendant**<br><br>**Jumbo Access Investments Limited** | All assets of the 11th Defendant, including but not limited to the following specific assets:<br><br>(a)  UOB Singapore bank account held in the name of the 11th Defendant and all assets therein (which is linked to the UOB Singapore account in the name of the 12th Defendant) |
| **12th Defendant**<br><br>**Wo Quan** | (a)  All shares and/or other interest(s) in the 10th Defendant, Create Fortune Pte. Ltd.<br>(b)  All shares and/or other interest(s) in the 11th Defendant, Jumbo Access Investments Limited<br>(c)  UOB Singapore bank account held in the name of the 12th Defendant (which is linked to the UOB Singapore account in the name of the 11th Defendant) and all assets therein |

# *EXHIBIT B*

**IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

Case No.: HC/OC 107/2024

Sub Case No.: HC/SUM 464/2024

Doc No.: HC/ORC 5740/2024

Filed: 01-November-2024 08:34 PM



Between

1. EXCHANGE UNION COMPANY
   (Cayman Islands Registration No. 325282)

2. SHANGHAI HUIYIN GROUP CO. LTD
   (China Registration No. 310000000081559)

3. SHANGHAI SHENGYI INFORMATION NETWORK CO.,
   LTD
   (China Registration No. 91310230342255548L)

4. WO WEI DONG
   (China Passport No. EJ420888)



...Claimant(s)

And

1. WO QI
   (China Passport No. E61431735)

2. SUN HONGMIN
   (China Passport No. ED9443725)

3. DIGITAL FINANCE GROUP COMPANY
   (Cayman Islands Registration No. SI-338982)

4. SMART RIVER INVESTMENTS LIMITED
   (British Virgin Islands Registration No. 1528647)

5. GATE GROUP
   (ID Unknown)

6. PAYWARD VENTURES, INC.
   (ID Unknown)

7. NEST SERVICES LIMITED
   (Seychelles Registration No. 238045)

8. PERSONS UNKNOWN
   (ID Unknown)

9. W3 CAP HOLDING CO., LTD
   (British Virgin Islands Registration No. 2083355)

10. CREATE FORTUNE PTE. LTD.
    (Singapore UEN No. 201736156E)

11. JUMBO ACCESS INVESTMENTS LIMITED
    (British Virgin Islands Registration No. 1959900)

12. WO QUAN
    (China Passport No. EG5308553)

...Defendant(s)

**ORDER OF COURT**

Case No:            HC/OC 107/2024

SubCase No:         HC/SUM 464/2024

Before:             The Honourable Judicial Commissioner Kristy Tan

Venue:              Chamber 6F

Hearing date/Time:  16-October-2024 at 10 am

The Court made the following orders in the above application:

a.  Para 1 of HC/ORC 999/2024 is discharged.

b.  Until the conclusion of the action in HC/OC 107/2024 ("OC 107") or further order, a proprietary injunction is granted prohibiting the 1st, 2nd, 3rd and 4th Defendants from dealing with, disposing of, or diminishing the value of:



i. the digital assets in the type, amount and wallet locations as of 6 December 2023 listed in Annex I to this order and the traceable proceeds thereof;

ii. the five physical bitcoins (each representing 5 digital BTC value) that were handed by C4 to D1 in or around 5 September 2022 and the traceable proceeds thereof;

iii. any returns or proceeds from the investments specified in Annex II to this order and the traceable proceeds thereof.

c.  The 1st, 2nd, 3rd and 4th Defendants shall file and serve on the Claimants, within 28 days from the date of this order, an affidavit disclosing what has become of the assets referred to in subparas (b.i) – (b.iii) above that were under their access, control or dominion as of and from 6 December 2023 todate.

d.  Until the conclusion of the action in OC 107 or further order, a proprietary injunction is granted prohibiting the 1st, 2nd and 3rd Defendants from dealing with, disposing of, or diminishing the value of the digital assets listed in S/N 811, 1836, 3945 and 4957 of Annex III to this order and the traceable proceeds thereof.

e. The 1st, 2nd and 3rd Defendants shall file and serve on the Claimants, within 28 days from the date of this order, an affidavit disclosing what has become of the assets referred to in para (d) above that were under their access, control or dominion.

f. The Claimants shall fortify their undertaking as to damages that D1-D4 may incur from compliance with this order by paying the amount of US$630,475 to their Singapore solicitors to hold as stakeholders for the first year of litigation beginning from the commencement of OC 107, with liberty to D1-D4 to apply for proportionate increase in the event the litigation progresses beyond the first year.

g. Until the conclusion of the action in OC 107 or further order, a proprietary injunction is granted prohibiting the 8th Defendant from dealing with, disposing of, or diminishing the value of the digital assets listed in Annex III to this order and the traceable proceeds thereof.

h. The 8th Defendant shall file and serve on the Claimants, within 14 days from the date of this order, an affidavit disclosing what has become of the assets referred to in para (g) above that were under their access, control or dominion.

i. Until the conclusion of the action in OC 107 or further order, the 5th Defendant is prohibited from dealing with, disposing of, or diminishing the number of the digital assets listed in S/N 1¬17 in Annex III to this order in the Gate.io user account(s) pertaining to the following wallet addresses (the "**Gate.io Wallets**") and, where applicable, the fruits or proceeds thereof:

i. 0x34576B58bAae93e9622ccc13001987803428b559;

ii. WQnkfwF2jYsg7VL8BrvnfrkXknbNk4ByGyMCmRL6jVz8vvs;

iii. pLoJcxWEwaeW9E68ZijiDZ4VXCBnKATYbAfpPnEEmG2HQWU;

iv. wd7yNbgJXrxcquaL3U3SxGAcmsgVViqMnF7sWPDyd667gVhgV;

v. a3ageRr6UFgWCtK4St382xCqoNWqEK5VEFMCeX4J6SpsaVALF;

vi. dDyVe7EfYVLmPWnfifvqvmWK5jD6djm76qYyHUAnW71igaFoT; and

vii. 2Ji4pcGU74Ygvaj3NSu7osz9hdvwpD6MUoQQ8EZjoaFtPRw5,

j. The 5th Defendant shall file and serve on the Claimants, within 14 days from the date of this order or such date that the 5th Defendant and Claimants may agree on, an affidavit disclosing:

i. The current balance of each of the Gate.io Wallets;

ii. Information and documents collected by the 5th Defendant in relation to the owners of each of the Gate.io Wallets; and



iii. Details of all transactions involving each of the Gate.io Wallets from 8 December 2023 to the date of disclosure.

k. Until the conclusion of the action in OC 107 or further order, the 6th Defendant is prohibited from dealing with, disposing of, or diminishing the number of digital assets listed in S/N 18¬21 in Annex III to this order in the Kraken user account(s) pertaining to the following wallet addresses (the "**Kraken Wallets**") and, where applicable, the fruits or proceeds thereof:

i. 7MpPM98aAquuw3gGLhf36pmiYEjtVN6FFcTNdctPtomLP9E5; and

ii. 0xd43cb11be295bef0f4a50f405eb4e60b786c9386

l. The 6th Defendant shall file and serve on the Claimants, within 14 days from the date of this order or such date that the 6th Defendant and Claimants may agree on, an affidavit disclosing:

i. the current balance of each of the Kraken Wallets;

ii. information and documents collected by the 6th Defendant in relation to the owners of each of the Kraken Wallets; and

iii. details of all transactions involving each of the Kraken Wallets from 8 December 2023 to the date of disclosure.

m. Until the conclusion of the action in OC 107 or further order, the 7th Defendant is prohibited from dealing with, disposing of, or diminishing the number of digital assets listed in S/N 22¬34 in Annex III to this order in the Binance user account(s) pertaining to the following wallet addresses (the "**Binance Wallets**") and, where applicable, the fruits or proceeds thereof:

i. 13wiwEdkogdAyChmi9PwMHyurCq5Aj1UH9DSx7iwBuSVCfp; and

ii. aApwjZ6GbDJQoKJRwv62WBmTxhc6KvK1K9oaWCDnNtvLB1E

n. The 7th Defendant shall file and serve on the Claimants, within 14 days from the date of this order or such date that the 7th Defendant and Claimants may agree on, an affidavit disclosing:

i. the current balance of each of the Binance Wallets;

ii. information and documents collected by the 7th Defendant in relation to the owners of each of the Binance Wallets; and

iii. details of all transactions involving each of the Binance Wallets from 8 December 2023 to the date of disclosure.

o. The Claimants shall bear the reasonable costs and expenses of the 5th, 6th and 7th Defendants in complying with this order, with any such costs to be fixed by the court if not agreed.

p. The Claimants may serve this order and any court documents relevant to HC/SUM 464/2024 ("SUM 464") out of jurisdiction on the 8th Defendant, and may effect substituted service of the Originating Claim in OC 107, SUM 464, this order and any court documents relevant to SUM 464 on the 8th Defendant by transferring a Non-Fungible Token containing embedded hyperlinks to the said documents, to the digital wallets listed in column (F) of the table at Annex III to this order.

q. No order is made on prayer (m) of SUM 464.

r. Prayer (n) of SUM 464 is dismissed.

s. The costs of and occasioned by SUM 464 shall be costs in the cause of OC 107.

Date of Order    16 October 2024



Notes:
1. The person or entity served with this judgment/order and who/which has been ordered to pay money, to do or not to do any act must comply immediately or within the time specified in the judgment/order, if any.

2. Failure to comply may result in enforcement of judgment/order proceedings, including contempt of Court proceedings, against the said person or entity.

| 1 | Name of Document: | Annex I |
| | Annex: | |

| 2 | Name of Document: | Annex II |
| | Annex: | |

| 3 | Name of Document: | Annex III |
| | Annex: | |





*https://www.courtorders.gov.sg*
*Access code: 8u6kpyrncs*

JILL TAN
REGISTRAR
SUPREME COURT
SINGAPORE

Getting this document from the Authentic Court Orders
Portal verifies:
(a) that it was issued by the Courts of the Republic of
Singapore or, in the case of a Schedule of Assets, that it was
filed with the Courts in relation to an application for a Grant
of Probate/Letter of Administration; and (b) the text of the
document was issued on 16 Oct 2024



**Annex I**

| (A) S/N | (B) Token | (C) Wallet in which tokens were held, as at 6.12.2023[1], | (D) Full Wallet Address | (E) Amount |
|---|---|---|---|---|
| 1. | | 647 | 12eT9NeG5omxb8Keq6e4wSdVutGXUfvVXySStmBeSAgh5CDb | 200,000 |
| 2. | | 869 | 133F5mJXSSw26XwtFEPJK8VNrEh2hkoKKhQFTD4oaG6dhPgj | 700,000 |
| 3. | | 754 | 16GdprNFZb2EQeAtf6RoqoT44uunWW1Q2AkxD6yzLBF5ifLX | 53,935 |
| 4. | | 723 | ddoPVWX6SCSEy1NDApn2hdnRby1EyoEfdh5qeZhvwkMQBBM | 150,000 |
| 5. | | 750 | 1xXNRbEzCVThLTdBaByoXSpDtiK19ndU4eSkLoehmuJgsmH | 267,987 |
| 6. | | 751 | 1gud1HYW7tvygdkSxV1tjXJ7WieodBNVWuZUaaD2ddQS4Ca | 232,152 |
| 7. | | 752 | 162SQf2AN95ck2y5L3RG9XxdJjXmBJomSz6yu7yDnDpf7TrN | 230,230 |
| 8. | | 755 | 16KU2bvTFZn7c4ouKbyZWGE1ie88Ed2WAmGYZkMqm9WGeXSF | 234,178 |
| 9. | DOT | 882 | 15LBNVjANisHXxQAQMzvAMNu3LdGsx6nZzCtYmGyvRNt5ezi | 478,707 |
| 10. | | 883 | 12Mx1T18r4wxu4swSSq39eVyJpjGjBj9coTVDEK6azRSJred | 195,870 |
| 11. | | 884 | 15ERGnuAsE5FqK88FL3AkdxjrPcdrCEFGr74ovyBio8zfWt4 | 256,878 |
| 12. | | 885 | 13Da2daqUzP8Yg6jdAw3RfZQiHtXdP34DKmCQrHR6EuXj6Tv | 175,412 |
| 13. | | 886 | 13vW3Mg72HWKt229mKwPmcNLWhbEUSz4NE7r1LuUuan6AS39 | 175,537 |
| 14. | | 887 | 142tjyjeEYCrQtPss6x5jJrtVr7jwWZYH7UzwnUNWVqhk3Q8 | 176,862 |
| 15. | | 888 | 1ZQsfu4h5LUPuyGUPWEKdGmCSCGBJXjVYpUksGmRcEP9fhH | 175,171 |
| 16. | | 889 | 1XPYw5t1kLheLKJmjQxaY161HMFCeoo4Fcwnbipst25iiwz | 175,273 |
| 17. | | 892 | 12ZRvZf3wb4jdhFuC2aSMKkgAsfo8HhS5uh7PG5J8fhBNNNk | 228,349 |
| 18. | | EUC's Binance Account | Not Applicable | 560,627 |

---

[1] See Annex A of Statement of Claim (Amendment No.1) filed on 16.7.2024 ("**SOC (A1)**")

**Annex I | Page 1**

| (A)<br>S/N | (B)<br>Token | (C)<br>Wallet in which tokens were held, as at 6.12.2023[1], | (D)<br>Full Wallet Address | (E)<br>Amount |
|---|---|---|---|---|
| 19. | | | Total | 4,667,168 |
| 20. | ASTR | 691 | XQ5mBRMhkZ31AwztWM3QR7aqPyk8jvUqMAuh718S2qRs1Xv | 39,435,191 |
| 21. | | 694 | ZCDpBwuR5FHagz5JHSRJGFNpVZtGPnufTL7rFzTu6LtT4tV | 45,534,047 |
| 22. | | 702 | WtzBSaSe1FSc72QHyPgYoKYqqiqpwbNqdRXTPXXMfeCT4P7 | 9,540,916 |
| 23. | | 618(704) | Z7xeMfYdEJrtYPsWFBfLTU9UKjVQQABHq6Yt2veCL3n8j9G<br>Z7xeMfYdEJrtYPsWFBfLTU9UKjVQQABHq6Yt2veCL3n8j9G | 77,199,834 |
| 24. | | 719 | Xtb7BWAkW7HWvWsbQ8G57mCXKmrZ4ZCLHyMVZf8VxJbV5vV | 12,757,494 |
| 25. | | 728 | ZfX991bEHfhwS9vg7j4926kZ8tU6sH1qbBWGUKMdXiXpeN8 | 16,580,940 |
| 26. | | 756 | b4unak5TwNRZkpCpMLBJ12XRYbB44bLxqV3uWNvrMxwk2jW | 15,370,766 |
| 27. | | 757 | XcxMSAS5KkyvMEKLNJHMrKPVMitPn6A7QAbLGUEw8eiks91 | 19,805,541 |
| 28. | | 759 | 0x4eEa3427ad5c17943847b348FEd16D462f88caF9 | 19,059,790 |
| 29. | | 761 | XFjKjMJcQoaAnaZ9YaBGzPS6tqFkAHGgNpFZAiPqWNbze3w | 21,504,762 |
| 30. | | | Total | 276,789,281 |
| 31. | ENJ | 736 | enDGmzm4VSkFcWNVQuHgPBJ6t8uAbHUzmLL53wNVt1DgR5zjt | 4,885,398 |
| 32. | | 768 | enDgUqLRKKgWUr9QsnWdYqPakFiMjMUcQh2YFHaKLbPKCzAyQ | 4,040,870 |
| 33. | | 891 | enCgVWRhBeJiQ696uNmPwhoj8TmniM492VBdibyvzxnJo9WN6 | 4,927,404 |
| 34. | | EUC's Binance Account | Not Applicable | 1,320,000 |
| 35. | | | Total | 15,173,672 |
| 36. | GLMR | 760 | 0x4eEa3427ad5c17943847b348FEd16D462f88caF9 | 1,067,224 – (26,634) |
| 37. | | 764 | 0x52b77D2617A62651EF50a4956dE47f13e48A2B2c | 1,653,925 – (41,275) |

**Annex I | Page 2**

| (A)<br>S/N | (B)<br>Token | (C)<br>Wallet in which tokens were held, as at 6.12.2023[1], | (D)<br>Full Wallet Address | (E)<br>Amount |
|---|---|---|---|---|
| 38. | | 765 | 0x764Cbc3Af4Fa3243f3d38EE3aB1F7b6C640d1C6A | 3,893,584 – (97,167) |
| 39. | | 766 | 0x0f9BA1621CAd82ea963D82046A44486f34C45b28 | 2,423,492 – (60,480) |
| 40. | | 767 | 0x521055Ee79cd8fDE5A13432606d39a882B28Bbf7 | 602,363 – (15,032) |
| 41. | | _Total_ (with a reduction in the additional number of GLMR tokens in the relevant wallet)[2] | | 9,640,588 – (240,588) =<br>**9,400,000** |
| 42. | | 678 | 0x20aD017D62304C8e8f6C6B3080B057A44e941146 | 490,927 – (2,114) |
| 43. | | 677 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 | 1,767,865 – (7,613) |
| 44. | RNDR | EUC's Binance Account | Not Applicable | 221,891 – (956) |
| 45. | | _Total_ (with a reduction in the number of RNDR tokens across the three wallets)[3] | | 2,480,683 – (10,683) =<br>**2,470,000** |
| 46. | ETH | 844 | 0x9a6Abf2133b8Ba850a4DE65a214B5fd0Ed68BF88 | 1,192 |
| 47. | BTC | 843 | bc1q2klkwpadf7gdvel6s3l25a09jhnpyfmvw8uj0q | 118 |
| 48. | | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 28,271 |
| 49. | METIS | 677 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 | 27 |
| 50. | | | _Total_ | **28,298** |
| 51. | CAPS | 733 | 14rdLHrTLQAmDv7cehqVQyzp1moQNDTxgJRxCkxr12Sbcrsa | 36,026,212 |
| 52. | VPP | 614 | 0x36822AD3f4dF3E49EB042AFE74e43551d3c3Adba | 4,404,628 |

---

[2] The Claimants have inadvertently omitted to include the additional 240,588 GLMR tokens from staking proceeds when preparing Annex C in SOC (A1).

[3] The Claimants have inadvertently omitted 10,683 RNDR tokens from the tally of RNDR tokens in Table C of Annex C in SOC (A1).

**Annex I | Page 3**

| (A)<br>S/N | (B)<br>Token | (C)<br>Wallet in which tokens were held, as at 6.12.2023[1], | (D)<br>Full Wallet Address | (E)<br>Amount |
|---|---|---|---|---|
| 53. | NEWO | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 8,261,455 |
| 54. | RMRK | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 40,000 |
| 55. | aRSW | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 11,185,013 |
| 56. | UNQ | 713 | ungUM9dAGWHyj6khcXB3we6kpGWu1Lc1RLXmRDj1ASwU1ZLdy | 5,878,856 |
| 57. | ZLK | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 530,316 |
| 58. | INTR | 686 | wd8xfcBneXyd1EdniEMw4suscBKgeUqE57C54sZZRRPT8EBKr | 284,648 |
| 59. | BNC | 705 | eucuMCx1XBb3boLQn4giMja7osnTanhUmegViZwfBeGR3V7 | 12,000 |
| 60. | | 723 | ddoPVWX6SCSEy1NDApn2hdnRby1EyoEfdh5qeZhvwkMQBBM | 5,999 |
| 61. | | 869 | 133F5mJXSSw26XwtFEPJK8VNrEh2hkoKKhQFTD4oaG6dhPgj | 14,007 |
| 62. | | | **Total** | **32,006** |
| 63. | SHFT | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 1,568,788 |
| 64. | BRO | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 2,287,040 |
| 65. | FCL | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 625,000 |
| 66. | KWT | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 5,794,594 |
| 67. | LAY | 677 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 | 7,160,420 |
| 68. | SRS | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 20,000,000 |
| 69. | aSEED (Acala) | 698 | 21v7pc3K1XL6pG31wdUnU25unVUmtgRVvUGw3m4qAUSzqpQG | 9,158 |
| 70. | OVL | 677 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 | 400,000 |
| 71. | KKT | 677 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 | 11,111,111 |

**Annex I | Page 4**

| (A) S/N | (B) Token | (C) Wallet in which tokens were held, as at 6.12.2023[1], | (D) Full Wallet Address | (E) Amount |
|---|---|---|---|---|
| 72. | EARN | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 6,457,143 |
| 73. | ATID | 677 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 | 7,222,222 |
| 74. | GOV | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 2,333,333 |
| 75. | QTZ | 636 | yGFBYGws8DYemPJ6LYC3tYkaLZfrCt3AMAyNt3yNV5QuibZD4 | 6,713,470 |
| 76. | TIDAL | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 20,937,500 |
| 77. | UNQ | 696 | unfZaa5zPqrpucoCSLk1M9VkQJFtTQJj7z1JLhWCMoBdyWXUr | 356,867 |
| 78. | NOVA | 644 | GZpAH6ax4VrWJmLAFpuiEnz6ByAuJeDmsaF34rR9HHWJ | 74,403 |
| 79. | LTY | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 33,346,279 |
| 80. | PETS | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 234,464 |
| 81. | ARKN | 677 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 | 3,377,777 |
| 82. | NOVA | 682 | 7kBQhp1jEmkbVuPu2RWBCNc1zLyFLUTc2JRurXcDbs2b | 51,463 |
| 83. | KRAC | 677 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 | 400,167 |
| 84. | WBOND | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 10,000,000 |
| 85. | AFK | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 2,083,333 |

**Annex I | Page 5**

| (A) S/N | (B) Token | (C) Wallet in which tokens were held, as at 6.12.2023[1], | (D) Full Wallet Address | (E) Amount |
|---|---|---|---|---|
| 86. | Starly | 677 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 | 140,126 |
| 87. | HDX | 685 | 7K4LkipjzdHC4aQuRPNRJgYEKYGoKNSfmuJXNkJbHdKiBgD9 | 660 |
| 88. | ATID | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 6,033 |
| 89. | TEA | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 7,017 |
| 90. | GSN | 676 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f | 109,978 |
| 91. | KEEY | 677 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 | 100 |
| 92. | SuperBonds | 644 | GZpAH6ax4VrWJmLAFpuiEnz6ByAuJeDmsaF34rR9HHWJ | 500,000 |
|  |  |  | **Total** | 518,481,334 |

## Annex II

| (A) S/N | (B) Project Name | (C) Investment Date | (D) Token | (E) Amount Invested |
|---|---|---|---|---|
| 1. | RAND | 1/6/2022 | RND | USD 500,000 |
| 2. | NFT3 | 1/7/2022 | - | USD 100,000 |
| 3. | Swing | 1/7/2022 | SWING | USD 200,000 |
| 4. | MetaDojo | 1/10/2022 | - | USD 500,000 |
| 5. | HydraDX | 1/22/2022 | HDX | USD 250,000 |
| 6. | Arthswap | 1/27/2022 | ARSW | USD 250,000 |
| 7. | HydraDX | 1/27/2022 | HDX | 150,000 DOT $18.07 per coin as at 1/27/20222, which works out to USD 2,710,500 invested |
| 8. | Minterest | 2/7/2022 | MNT | USD 300,000 |
| 9. | Subsquid | 2/11/2022 | SQD | USD 500,000 |
| 10. | Starlay | 2/28/2022 | LAY | USD 100,000 |
| 11. | AFKDAO | 3/29/2022 | AFK | USD 120,000 |
| 12. | Astrid | 3/29/2022 | ATID | USD 300,000 |
| 13. | ~~Sirius Finance~~ | ~~4/7/2022~~ | ~~SRS~~ | ~~USD 200,000~~ |
| 14. | Melaxy | 4/8/2022 | IFS | USD 200,000 |
| 15. | Unique | 4/10/2022 | UNQ | 25,000 DOT $19.78 per coin as at 4/10/2022, which works out to USD 494,500 invested |
| 16. | DAM (Ivy Wallet) | 4/27/2022 | - | USD 300,000 |
| 17. | Aperion | 5/2/2022 | APRS | USD 500,000 |
| 18. | Cosmize | 5/13/2022 | - | USD 99,000 |
| 19. | CypherMOD | 5/19/2022 | - | USD 2,500,000 |
| 20. | RAND | 6/30/2022 | - | USD 500,000 |
| 21. | Sumi | 7/10/2022 | - | USD 500,000 |
| 22. | Talisman | 7/17/2022 | - | USD 1,500,000 |
| 23. | Shardeum | 8/3/3033 | SHM | USD 1,000,000 |
| 24. | PWN DAO | 1/10/2023 | - | USD 400,000 |
| 25. | Earn Network | 2/20/2023 | EARN | USD 100,000 |
| 26. | Linera | 6/30/2023 | - | USD 250,000 |
| 27. | Zetachain | 8/29/2023 | - | USD 2,000,000 |
| 28. | MyContainer (Earn Network) | 12/29/2021 | EARN | USD 330,000 |
| **Grand total value invested (USD)** | | | | ~~16,704,9000.00~~ **16,504,900.00** |

**Annex III**

| (A) S/N | (B) Transfer Date (UTC) | (C) Originating Entrusted Digital Wallet Address (S/N in Annex A) | (D) Token | (E) No. | (F) Impugned Wallet | (G) Transaction Hash |
|---|---|---|---|---|---|---|
| I. | **Digital wallets holding stolen digital assets held on the Gate Exchange, operated by the 5th Defendant** | | | | | |
| 1. | 2024/1/26 17:08:23 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f (Wallet 676) | DORA | 90 | 0x34576B58bAae93e9622ccc13001987803428b559 | 0xaf4c7ad73e73ba80106b5aa47b97573b33e20afb343e060317464eccacab5d08 |
| | 2024/1/26 17:16:11 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f (Wallet 676) | DORA | 1,251,500 | 0x34576B58bAae93e9622ccc13001987803428b559 | 0x536990a2154f40c59b3bf730472cec0bde3a64f7516f362dc40c76b5bd10c3d9 |
| 2. | 2024/1/26 17:01:59 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f (Wallet 676) | DORA | 12,515 | 0x34576B58bAae93e9622ccc13001987803428b559 | 0x0f4f9c08f16c73cce16ce62b8a9147fa66383426e51fe357978ba0435310d122 |
| 3. | 2024/1/21 15:45:08 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f (Wallet 676) | USDC | 2,310 | 0x34576B58bAae93e9622ccc13001987803428b559 | 0x69e197bf30bcb0a3643be7ad5c53acbf98aee2fb0d29d9306e31958a77737a2f |
| 4. | 2024/1/21 15:48:29 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 (Wallet 677) | THG | 1,841,308 | 0x34576B58bAae93e9622ccc13001987803428b559 | 0xb0bd29b3c858557e9da6f4ead2f2c95cd754e63e52a0ee5f0913351a3f7295a1 |
| 5. | 2024/1/21 15:51:23 | 0x2C20E739552cd0BEAF523930BAAD7754C426C962 (Wallet 677) | MYRA | 974,671 | 0x34576B58bAae93e9622ccc13001987803428b559 | 0x43f079a372d16e5ff5eac7b1c0cf93830ee61535b572710afde56800e642ae51 |
| 6. | 2024/1/13 08:10:12 | XQ5mBRMhkZ31AwztWM3QR7aqPyk8jvUqMAuh718S2qRs1Xv (Wallet 690 / 691) | SDN | 163,463 | WQnkfwF2jYsg7VL8BrvnfrkXknbNk4ByGyMCmRL6jVz8vvs | 0xe22922b73c3a0829af9827f9bd17c6f3d12e1af72d897cfd07a85383f327fd4e |
| 7. | 2024/1/13 14:43:18 | rkNZr3uDCrjo9UaEmTNYjRS3puYyEK3MUHrzpa8CvJSwpYc (Wallet 641) | KAR | 143,228 | pLoJcxWEwaeW9E68ZijiDZ4VXCBnKATYbAfpPnEEmG2HQWU | 0x77726ac13e0360c8c39e5d0dc51b7662426834b97097f68efc1681773a0c3517 |

**Annex III | Page 1**

| (A)<br>S/N | (B)<br>Transfer Date (UTC) | (C)<br>Originating Entrusted Digital Wallet Address (S/N in Annex A) | (D)<br>Token | (E)<br>No. | (F)<br>Impugned Wallet | (G)<br>Transaction Hash |
|---|---|---|---|---|---|---|
| | 2024/1/13 17:26:24 | rkNZr3uDCrjo9UaEmTNYjRS3puYyEK3MUHrzpa8CvJSwpYc (Wallet 641) | KAR | 13,021.97 | pLoJcxWEwaeW9E68ZijiDZ4VXCBnKATYbAfpPnEEmG2HQWU | 0x749ae7914a84a42e75d505f9bb7d9c4ac292efeb13d8a7d4b3295d3cab1e9da9 |
| 8. | 2024/1/1 15:04:06 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f (Wallet 676) | ASTR | 1,000 | 0x34576b58baae93e9622ccc13001987803428b559 | 0x37c463fc628eafbd255b6b4cfaafaa8ccdb7a94623a4f275a1fb562fd286a742 |
| | 2024/1/1 15:33:24 | 0x7e0324b39Aa585f13d3CCc2Ed1375592ABDABE9f(Wallet 676) | ASTR | 5,609,352 | 0x34576b58baae93e9622ccc13001987803428b559 | 0x22a61a05588100d0098c41a203460667048acdab5976eab4a20aa33c13a988e8 |
| 9. | 2023/12/28 14:37:23 | 0x2c20e739552cd0beaf523930baad7754c426c962 (Wallet 677) | CAPS | 1,450,035 | 0x34576b58baae93e9622ccc13001987803428b559 | 0x2b7cf223d758fb349c62a6ce95a65403e10548ebd7004ef799c9b9193ff55250 |
| 10. | 2023/12/27 16:00:24 | wdBE6z9Nt4WjgAtze1yK5cWrmu4bNSxac7S5fSvsectLEBd3D (Wallet 730) | INTR | 25,119,381 | wd7yNbgJXrxcquaL3U3SxGAcmsgVViqMnF7sWPDyd667gVhgV | 0x0a4fbb6f923c61d0d27af1d1c9c98562e2a34019786e4d77c7bc296cc0507731 |
| 11. | 2023/12/27 15:35:00 | wd8xfcBneXyd1EdniEMw4suscBKgeUqE57C54sZZRRPT8EBKr(Wallet 686) | INTR | 1,000,000 | wd7yNbgJXrxcquaL3U3SxGAcmsgVViqMnF7sWPDyd667gVhgV | 0x41d769e6903b3084ef74eac74e8a4d2cd73c044dc68d9e701af70a4f09227b77 |
| 12. | 2023/12/26 17:19:25 | a3bfwSMaavhWNDNX7eMc9Zx6dgA2P55MX7RQD1Pstn8D2DQbo (Wallet 688) | KINT | 249,202 | a3ageRr6UFgWCtK4St382xCqoNWqEK5VEFMCeX 4J6SpsaVALF | 0x5fad971022b6c6e7e0409f5fecdc563da5dfd9a4cf7138152362a61e20661219 |
| 13. | 2023/12/26 18:04:30 | 2LBsB7qPpq76mPkaqfAT6KtbhCvn5tv5c7CZyHky2JWEXHvnBx (Wallet 717) | ZTG | 642,857 | 2Ji4pcGU74Ygvaj3NSu7osz9hdvwpD6MUoQQ8EZjnW71igaFoT | 0xfc8956b4419f65915e3e2ca3f820b49428cd328e00e687e7149f9d8b96bbd6d8 |

**Annex III | Page 2**

| (A)<br>S/N | (B)<br>Transfer Date (UTC) | (C)<br>Originating Entrusted Digital Wallet Address (S/N in Annex A) | (D)<br>Token | (E)<br>No. | (F)<br>Impugned Wallet | (G)<br>Transaction Hash |
|---|---|---|---|---|---|---|
| 14. | 2023/12/26 17:49:24 | 2LBsB7qPpq76mPkaqfAT6KtbhCv CzXbMqpQQR20YCo4VjwqL (Wallet 716) | TEER | 62,664 | 2Ji4pcGU74Ygvaj3NSu7osz9hdvwpD6MUoQQ8EZj oaFtPRw5 | 0x3083e3a755211896d5983ee278b68b20c56d2f854529cdea425f25a3520fc430 |
| 15. | 2023/12/26 17:05:11 | 0x7e0324b39aa585f13d3ccc2ed1375592abdabe9f (Wallet 676) | LMR | 3,333,333 | 0x34576b58baae93e9622ccc13001987803428b559 | 0x7e0f4e8fd439e82571f5905c14893764b999a03c48cebfb1fd601bbad7dbff2c |
| 16. | 2023/12/26 17:04:11 | 0x7e0324b39aa585f13d3ccc2ed1375592abdabe9f (Wallet 676) | SWASH | 462,962 | 0x34576b58baae93e9622ccc13001987803428b559 | 0xbb76390794302cb22c268cf46bf1b790dace434018f013dd65d488f147baa37f |
| 17. | 2023/12/26 16:57:35 | 0x7e0324b39aa585f13d3ccc2ed1375592abdabe9f (Wallet 676) | SAITO | 11,200,000 | 0x34576b58baae93e9622ccc13001987803428b559 | 0xb4020b3ab0f3f55b9610c4f29061d2246f1824bb05bd966bdae683325a9acb1b |
| II. | **Digital wallets holding stolen digital assets held on the Kraken Exchange, operated by the 6th Defendant** | | | | | |
| 18. | 2024/1/26 16:23:18 | 7KYr6iuZ3NqSaKyn8H9dyPBr1U4ujh5PGr6yBCxbMYnsp64y (Wallet 712) | HDX | 1,200 | 7MpPM98aAquuw3gGLhf36pmiYEjtVN6FFcTNdctPtomLP9E5 | 0x5fa47818b86c32ead878fef7bef9d974e8afe1dadb527179a3511565fbfbb425 |
| | 2024/1/26 16:38:18 | 7KYr6iuZ3NqSaKyn8H9dyPBr1U4ujh5PGr6yBCxbMYnsp64y (Wallet 712) | HDX | 4,442,646 | 7MpPM98aAquuw3gGLhf36pmiYEjtVN6FFcTNdctPtomLP9E5 | 0x8c32175456ce3930bd6cc897f57d2efb61e33e7e7d9c594fea6d38d97fe09daf |
| 19. | 2024/1/26 16:52:18 | 7K4LkipjzdHC4aQuRPNRJgYEKYGoKNSfmuJXNkJbHdKiBgD9(Wallet 685) | HDX | 15,344,000 | 7MpPM98aAquuw3gGLhf36pmiYEjtVN6FFcTNdctPtomLP9E5 | 0x9e20ef2bfcab92e5629c832fee32f0d63af704df90e0b35bbd4aae2777ba0e99 |

**Annex III | Page 3**

| (A)<br>S/N | (B)<br>Transfer<br>Date (UTC) | (C)<br>Originating Entrusted<br>Digital Wallet Address (S/N<br>in Annex A) | (D)<br>Token | (E)<br>No. | (F)<br>Impugned Wallet | (G)<br>Transaction Hash |
|---|---|---|---|---|---|---|
| 20. | 2023/12/26<br>16:51:59 | 0x20ad017d62304c8e8f6c6b<br>3080b057a44e941146<br>(Wallet 678) | RNDR | 490,927 | 0xd43cb11be295bef0f4a50f405eb4e<br>60b786c9386 | 0x7c86ae079a3ebf3a8cf0a7f74444<br>ebb1ff07caa73d59167a15356e4b8<br>db52229 |
| 21. | 2023/12/26<br>16:33:23 | 0x2c20e739552cd0beaf5239<br>30baad7754c426c962<br>(Wallet 677) | RNDR | 10 | 0xd43cb11be295bef0f4a50f405eb4e<br>60b786c9386 | 0x67de5c5706bba73bb857566fdd9<br>c3ec39dfc9b6eea410b75e9c67589<br>a95cdccd |
|  | 2023/12/26<br>17:06:35 | 0x2c20e739552cd0beaf5239<br>30baad7754c426c962<br>(Wallet 677) | RNDR | 1,767,855 | 0xd43cb11be295bef0f4a50f405eb4e<br>60b786c9386 | 0xa329b706a22f5b972bfabf2c46de<br>6b6a7f8839b09594dde1f2c132a29<br>0a7d8f9 |
| III. | **Digital wallets holding stolen digital assets held on the Binance Exchange, operated by the 7th Defendant** | | | | | |
| 22. | 2024/2/1<br>16:26:24 | 16GdprNFZb2EQeAtf6RoqoT<br>44uunWW1Q2AkxD6yzLBF5i<br>fLX (Wallet 754) | DOT | 54,273 | 13wiwEdkogdAyChmi9PwMHyurCq5<br>Aj1UH9DSx7iwBuSVCfp | 0xf8492ac52dfcf625219745225761<br>e7fca13a7533752e9d2eb23cb0562<br>841d001 |
| ~~23.~~ | ~~2024/2/1<br>05:37:35~~ | ~~0x2ad9034e50373629fb57cb<br>04fe0f1e078a169d42 (Wallet<br>763)~~ | ~~USDC~~ | ~~500,000~~ | ~~0x9682df1247f884b2be5400156f692<br>9b647f219f7~~ | ~~0x6477e3bdb1f437a3cd411e1b8fa<br>44a586fa9abaff82ed9a0906bb066<br>6ca9925d~~ |
| 24. | 2024/1/20<br>16:54:06 | 12TnUDiLnJBQDsvgMqwvW<br>unTbyGGrpmsteQFcgnd7krz<br>TKbs (Wallet 684) | DOT | 150,000 | 13wiwEdkogdAyChmi9PwMHyurCq5<br>Aj1UH9DSx7iwBuSVCfp | 0x8d52e67381b7fd06df7603d4952<br>9731ed5dfa5d3bdc97ce270fc776a<br>c6ef7de8 |
| 25. | 2024/1/18<br>14:56:42 | 12xHpDo9q3jejdVZ4jj9BcS5<br>Hu4PH9QbPbChR9SdBgLA5<br>a6k (Wallet 711) | DOT | 10 | 13wiwEdkogdAyChmi9PwMHyurCq5<br>Aj1UH9DSx7iwBuSVCfp | 0xb4567ad5eaf72a6b981ee7f857b<br>624f94c6d66f9aaf78fe4c5a0d78e9<br>c0ddcbe |
|  | 2024/1/18<br>15:01:24 | 12xHpDo9q3jejdVZ4jj9BcS5<br>Hu4PH9QbPbChR9SdBgLA5<br>a6k (Wallet 711) | DOT | 149,990 | 13wiwEdkogdAyChmi9PwMHyurCq5<br>Aj1UH9DSx7iwBuSVCfp | 0xa176377320b975bee1f84de9cae<br>c29bb49b985cf9fe19a5bbd7adda8f<br>83ffc45 |

**Annex III | Page 4**

| (A)<br>S/N | (B)<br>Transfer<br>Date (UTC) | (C)<br>Originating Entrusted<br>Digital Wallet Address (S/N<br>in Annex A) | (D)<br>Token | (E)<br>No. | (F)<br>Impugned Wallet | (G)<br>Transaction Hash |
|---|---|---|---|---|---|---|
| 26. | 2024/1/15<br>14:51:36 | Xtb7BWAkW7HWvWsbQ8G5<br>7mCXKmrZ4ZCLHyMVZf8Vx<br>JbV5vV (Wallet 719) | ASTR | 1,350 | aApwjZ6GbDJQoKJRwv62WBmTxh<br>c6KvK1K9oaWCDnNtvLB1E | 0x9df8add84b4181feb92df7212cb3<br>a248cf6c233f6c57e10572436ed60<br>3e098f9 |
| | 2024/1/15<br>15:00:54 | Xtb7BWAkW7HWvWsbQ8G5<br>7mCXKmrZ4ZCLHyMVZf8Vx<br>JbV5vV (Wallet 719) | ASTR | 12,850,577 | aApwjZ6GbDJQoKJRwv62WBmTxh<br>c6KvK1K9oaWCDnNtvLB1E | 0x24cf03376082f7e4513fd78ed23b<br>bb75b77fd312b9220e9d8f0cf4a6c6<br>9fcd8b |
| 27. | 2024/1/15<br>15:38:06 | WtzBSaSe1FSc72QHyPgYo<br>KYqqiqpwbNqdRXTPXXMfe<br>CT4P7 (Wallet 702) | ASTR | 10,113,158 | aApwjZ6GbDJQoKJRwv62WBmTxh<br>c6KvK1K9oaWCDnNtvLB1E | 0xaefea8a8b191d0b5a4939bfc70c<br>86a95fdaa29a77aef3a15528ad164<br>fa3819eb |
| 28. | 2024/1/15<br>15:05:54 | ZCDpBwuR5FHagz5JHSRJ<br>GFNpVZtGPnufTL7rFzTu6Lt<br>T4tV (Wallet 694) | ASTR | 45,841,411 | aApwjZ6GbDJQoKJRwv62WBmTxh<br>c6KvK1K9oaWCDnNtvLB1E | 0x2cc3bbcaa8f72da517a2d34161a<br>2266389dcd0d0188c1484b732a39<br>a246e2789 |
| 29. | 2024/1/15<br>15:13:36 | XQ5mBRMhkZ31AwztWM3Q<br>R7aqPyk8jvUqMAuh718S2q<br>Rs1Xv (Wallet 690) | ASTR | 39,577,373 | aApwjZ6GbDJQoKJRwv62WBmTxh<br>c6KvK1K9oaWCDnNtvLB1E | 0xb924515bb4c3e4c26f00b4d885ff<br>9e0d623eca38d5d228bd69954202<br>0911d7f5 |
| 30. | 2024/1/13<br>07:38:12 | XFjKjMJcQoaAnaZ9YaBGzP<br>S6tqFkAHGgNpFZAiPqWNb<br>ze3w (Wallet 761) | ASTR | 21,687,893 | aApwjZ6GbDJQoKJRwv62WBmTxh<br>c6KvK1K9oaWCDnNtvLB1E | 0xff4fde2ddadede62e0195265e69<br>8954be241cd6a28625cdc252cb12<br>ddf3ec19c |
| 31. | 2024/1/12<br>15:58:30 | WypXeLJ64xU2y1hQy5faWk<br>nZ4mJcmGtymWGyLrKrCUZ<br>SNxv (Wallet 700) | ASTR | 60,389,123 | aApwjZ6GbDJQoKJRwv62WBmTxh<br>c6KvK1K9oaWCDnNtvLB1E | 0x28acf49c4fe2c4471478e1d08c0<br>5f63ae79ba3ce632f91e0c50e0ed4<br>e563f4a0 |
| 32. | 2024/1/12<br>15:03:42 | ZfX991bEHfhwS9vg7j4926kZ<br>8tU6sH1qbBWGUKMdXiXpe<br>N8 (Wallet 728) | ASTR | 125 | aApwjZ6GbDJQoKJRwv62WBmTxh<br>c6KvK1K9oaWCDnNtvLB1E | 0xf0953eeb88254272c2620cd195b<br>41fcd086ed83e50fa8a036ee34e38<br>044d1406 |

**Annex III | Page 5**

| (A)<br>S/N | (B)<br>Transfer<br>Date (UTC) | (C)<br>Originating Entrusted<br>Digital Wallet Address (S/N<br>in Annex A) | (D)<br>Token | (E)<br>No. | (F)<br>Impugned Wallet | (G)<br>Transaction Hash |
|---|---|---|---|---|---|---|
| | 2024/1/12<br>15:35:18 | ZfX991bEHfhwS9vg7j4926kZ<br>8tU6sH1qbBWGUKMdXiXpe<br>N8 (Wallet 728) | ASTR | 33,401,487 | aApwjZ6GbDJQoKJRwv62WBmTxh<br>c6KvK1K9oaWCDnNtvLB1E | 0xfd8c2f42d23dec538164111a432<br>03f7310d5c732aaf765bd5cc4234b<br>ccc29218 |
| 33. | 2024/1/12<br>15:54:00 | b4unak5TwNRZkpCpMLBJ1<br>2XRYbB44bLxqV3uWNvrMx<br>wk2jW (Wallet 756) | ASTR | 15,489,129 | aApwjZ6GbDJQoKJRwv62WBmTxh<br>c6KvK1K9oaWCDnNtvLB1E | 0xc73c0884e90ab3520bc5b2af9c0<br>98ee4ed503a5a2e1f41eaabe49f11<br>3be9b266 |
| 34. | 2024/1/12<br>15:45:12 | XcxMSAS5KkyvMEKLNJHMr<br>KPVMitPn6A7QAbLGUEw8ei<br>ks91(Wallet 757) | ASTR | 19,962,641 | aApwjZ6GbDJQoKJRwv62WBmTxh<br>c6KvK1K9oaWCDnNtvLB1E | 0x03ad50565d4456bcd1be5fb84f4<br>a9ac64de9ed67f1931411cd48e02e<br>695b2a5a |
| **IV.** | **Digital wallets holding stolen digital assets held on unknown exchanges** | | | | | |
| 35. | 2024/2/8<br>00:41:20<br>(UTC+8) | 0x2C20E739552cd0BEAF52<br>3930BAAD7754C426C962<br>(Wallet 677) | METIS | 22,527 | 0xfe8078e29982eeA4fC93Ef9D4c78<br>4433a750D74c | 0x96e12ea4b05a93d802fe45c6b6e<br>1cc9c3a5a329e73f5d893ace85199<br>3972d5e0 |
| 36. | 2024/2/8<br>00:15:50<br>(UTC+8) | 0x7e0324b39Aa585f13d3CC<br>c2Ed1375592ABDABE9f<br>(Wallet 676) | METIS | 5,771 | 0xC356c10128653Dc2Cd6eE0CF21<br>90D72F00852E99 | 0xec91bcff40bc865cad53049da7e<br>1298a3601b613bc6cf481f8601734<br>02579805 |
| 37. | 2024/1/23<br>15:22:20 | 5E1zftY5yGUBJ6V376g93Tb<br>vSH4jaqrTK6UDFrTGdbJduH<br>8Y (Wallet 720) | REEF | 1,780 | 5CUKEptHf8x4KFDrofGkFQuVKipB<br>omBdP4gKazKexafpBxxo | 0xac789efc6b1e7f8ab8ab0011d36<br>a57e401330c94dc15ec1c0c430fb8<br>52470387- efa14 |
| | 2024/1/23<br>15:30:30 | 5E1zftY5yGUBJ6V376g93Tb<br>vSH4jaqrTK6UDFrTGdbJduH<br>8Y (Wallet 720) | REEF | 71,477,500 | 5CUKEptHf8x4KFDrofGkFQuVKipB<br>omBdP4gKazKexafpBxxo | 0x6d964d5570d237c02ca68212d0<br>77cbbbf112f851a19c33b1be0be64<br>6d8a64795- 76f87 |
| 38. | 2024/1/20<br>23:06 | 506ad0039bfa815dc5c011e3<br>45b0d88d30805cf2 (Wallet<br>683) | POKT | 114 | 9d7aa270a2444c01c7ea740f195233<br>8dc237f2af | 66FD3FD64267C990EC9E52438A<br>13A30CBF7D63FC1D63F60A8EB<br>6F1FD9172F2F2 |

**Annex III | Page 6**

| (A)<br>S/N | (B)<br>Transfer<br>Date (UTC) | (C)<br>Originating Entrusted<br>Digital Wallet Address (S/N<br>in Annex A) | (D)<br>Token | (E)<br>No. | (F)<br>Impugned Wallet | (G)<br>Transaction Hash |
|---|---|---|---|---|---|---|
| | 2024/1/20<br>23:49 | 506ad0039bfa815dc5c011e3<br>45b0d88d30805cf2 (Wallet<br>683) | POKT | 2,053,403 | 9d7aa270a2444c01c7ea740f195233<br>8dc237f2af | 057FAC30CDA16C0C170BBCC11<br>426B1FBC70F6439969416BADBD<br>9C6BABEE9E5F8 |
| 39. | 2024/1/16<br>18:23:06 | 0x52b77D2617A62651EF50a<br>4956dE47f13e48A2B2c<br>(Wallet 764) | GLMR | 1,024,423 | 0xE4307D1E93f23bf867ca6f72F0cd<br>94d47c90d708 | 0x0ce82db1ca0f8c9c328987af424<br>7e219ee906fb0ea2879f778e71e02<br>b43b6086 |
| 40. | 2024/1/16<br>18:14:00 | 0x521055Ee79cd8fDE5A134<br>32606d39a882B28Bbf7<br>(Wallet 767) | GLMR | 604,305 | 0xE4307D1E93f23bf867ca6f72F0cd<br>94d47c90d708 | 0x5460126065c0a570341c66c860f<br>eb3d43ae8b86ddb3b533368c200a<br>ab69b9f33 |
| 41. | 2024/1/16<br>18:31:00 | 0x0f9BA1621CAd82ea963D8<br>2046A44486f34C45b28<br>(Wallet 766) | GLMR | 2,207,257 | 0xE4307D1E93f23bf867ca6f72F0cd<br>94d47c90d708 | 0x184f0bcbda39ec884f7eb4cc774<br>5b54a8db234c2bbe2818e94af8e2<br>0c832ba2e |
| 42. | 2024/1/16<br>17:55:06 | 0x764Cbc3Af4Fa3243f3d38E<br>E3aB1F7b6C640d1C6A<br>(Wallet 765) | GLMR | 24 | 0x8EF56d4565e1D1a980027833366<br>DF7ecb33967<br>A7 | 0x1c82ff4b2a38b8af1bd8c94f1c86<br>60774513ece2955e7d076195bc65<br>d5e9a8a0 |
| | 2024/1/16<br>18:03:54 | 0x764Cbc3Af4Fa3243f3d38E<br>E3aB1F7b6C640d1C6A<br>(Wallet 765) | GLMR | 3,906,169 | 0x8EF56d4565e1D1a980027833366<br>DF7ecb33967<br>A7 | 0xe80e4a460fb931ad7ec08b41f2a<br>012f7db065ad06ec8d5dd993bdc48<br>7efa6e6c |
| 43. | 2024/1/16<br>17:46:48 | 0x4eEa3427ad5c17943847b<br>348FEd16D462f88caF9<br>(Wallet 759 / 760) | GLMR | 13 | 0xE4307D1E93f23bf867ca6f72F0cd<br>94d47c90d708 | 0xed94566ac990fe7a21be37503c2<br>79a42eacebe846513600906031b6<br>95beb9d6d |

**Annex III | Page 7**

| (A)<br>S/N | (B)<br>Transfer<br>Date (UTC) | (C)<br>Originating Entrusted<br>Digital Wallet Address (S/N<br>in Annex A) | (D)<br>Token | (E)<br>No. | (F)<br>Impugned Wallet | (G)<br>Transaction Hash |
|---|---|---|---|---|---|---|
| | 2024/1/16<br>17:53:30 | 0x4eEa3427ad5c17943847b<br>348FEd16D462f88caF9<br>(Wallet 759 / 760) | GLMR | 1,070,904 | 0xE4307D1E93f23bf867ca6f72F0cd<br>94d47c90d708 | 0x5bf45859f7ef578d1e29de77bbaf<br>9b68a63a072a0be65f9a936e7c89<br>3a6e9bec |
| 44. | 2024/1/1<br>14:52:24 | 24bpS6ic9k3LijBFCn8B2XRs<br>nZbwNnRcnHxALtXrwogyEG<br>vA (Wallet 729) | ACA | 130,209 | 22jvChwqUdCDcq69NMMdBXfTnJA<br>qGWwYVZCXiALyLsoyzcqL | 0x037871c2743066aa2b676d34bff<br>d54efcbfc9237ed1cf19ab4308098f<br>cf69a1c |
| 45. | 2023/12/30<br>17:05:00 | enDGmzm4VSkFcWNVQuH<br>gPBJ6t8uAbHUzmLL53wNVt<br>1DgR5zjt (Wallet 736) | ENJ | 2,000 | enDoD1TVUKWv9gx4K25vgNDYW<br>wuFKXK5auR5hsU1xJEPBzi8P | 0x44cf19ffc179309bee0d4a4f19f2d<br>e281d3647192f641aa17978e0b5a<br>d5f83eb |
| | 2023/12/30<br>17:09:54 | enDGmzm4VSkFcWNVQuH<br>gPBJ6t8uAbHUzmLL53wNVt<br>1DgR5zjt (Wallet 736) | ENJ | 5,001,100 | enDoD1TVUKWv9gx4K25vgNDYW<br>wuFKXK5auR5hsU1xJEPBzi8P | 0x6fc7a9bf1bbb9e9131b8409b2d1<br>74d9148600d5bfbe7b5a8a14e465<br>9f50da8f0 |
| 46. | 2023/12/24<br>16:16:30 | GJYNAPP5R3XUFwXxX5z1<br>KJUcgTawKPTGmX7RRPTE<br>xw4ykSp (Wallet 727) | KSM | 1 | ESGYwfpqctTTTx7dRsmvfzYYbMy<br>WPEFy2gefhhraHMR5cnr | 0x535853c023aaf893c02d47e14f9<br>6dce236656a517b0c4bcdbffd59ce<br>ab145b9a |
| | 2023/12/24<br>16:25:36 | GJYNAPP5R3XUFwXxX5z1<br>KJUcgTawKPTGmX7RRPTE<br>xw4ykSp (Wallet 727) | KSM | 19,160 | ESGYwfpqctTTTx7dRsmvfzYYbMy<br>WPEFy2gefhhraHMR5cnr | 0x2deb8add827565c369ae761fcd3<br>405c65b5c073478eef26cbee10f2a<br>654f6dcb |
| 47. | 2023/12/24<br>08:22:06 | 24bpS6ic9k3LijBFCn8B2XRs<br>nZbwNnRcnHxALtXrwogyEG<br>vA (Wallet 729) | ACA | 100 | 22jvChwqUdCDcq69NMMdBXfTnJA<br>qGWwYVZCXiALyLsoyzcqL | 0x0a10dc7510fddc000deffaaa8248<br>04c87e1764bb55791d9c087dadac<br>89c0306b |
| | 2023/12/24<br>08:27:42 | 24bpS6ic9k3LijBFCn8B2XRs<br>nZbwNnRcnHxALtXrwogyEG<br>vA (Wallet 729) | ACA | 3,109,375 | 22jvChwqUdCDcq69NMMdBXfTnJA<br>qGWwYVZCXiALyLsoyzcqL | 0xa3afde632ffbeb494105a397110<br>2b7a008d71db5d4a95e29562ccb1<br>74df8292b |

**Annex III | Page 8**

| (A)<br>S/N | (B)<br>Transfer Date (UTC) | (C)<br>Originating Entrusted Digital Wallet Address (S/N in Annex A) | (D)<br>Token | (E)<br>No. | (F)<br>Impugned Wallet | (G)<br>Transaction Hash |
|---|---|---|---|---|---|---|
| 48. | 2023/12/24 08:30:00 | 21v7pc3K1XL6pG31wdUnU2 5unVUmtgRVvUGw3m4qAU SzqpQG (Wallet 698) | ACA | 80,589 | 22jvChwqUdCDcq69NMMdBXfTnJA qGWwYVZCXiALyLsoyzcqL | 0x661131bab993945a94671335b6 f778b9030509ea83b3a5bf31ce560 23278b3fd |
| 49. | 2023/12/24 06:58:42 | 0x0f9BA1621CAd82ea963D8 2046A44486f34C45b28 (Wallet 766) | GLMR | 120,990 | 0x38837338160553eF7c30aB78637 2605FF82b4037 | 0x8414577fcb184b24ece1ce9f79f5 38189ac55c06c4d9d5fd04de3c390 890bbaa |
| 50. | 2023/12/24 06:28:42 | 0x52b77D2617A62651EF50a 4956dE47f13e48A2B2c (Wallet 764) | GLMR | 100 | 0x38837338160553eF7c30aB78637 2605FF82b4037 | 0xa3c76349672cdb09757c93efbdd 9907bceecb9b2a31b7f615b9ebe8a ac40ac04 |
| | 2023/12/24 06:47:54 | 0x52b77D2617A62651EF50a 4956dE47f13e48A2B2c (Wallet 764) | GLMR | 632,710 | 0x38837338160553eF7c30aB78637 2605FF82b4037 | 0x676f7a7a466c67746b5f4daa932 208de44b938092e5cb5a1fc05b2c1 b12b7729 |
| V. | **Digital wallets holding stolen digital assets which are nto held with any exchange transferred out from EUC's Binance and OKX Accounts** | | | | | |
| 51. | 2023/12/9 14:52:35 | 0x28C6c06298d514Db08993 4071355E5743bf21d60 (Binance Exchange Hot Wallet) | RNDR | 7.26 | 0x7a437e736dd169B706f4c8b9dFE bEb02fbc633cA | 0x997ed826efb286df06d1d933d39 0417840257bacd36caeb4581281b 24f383332 |
| 52. | 2023/12/9 15:00:47 | 0x28C6c06298d514Db08993 4071355E5743bf21d60 (Binance Exchange Hot Wallet) | RNDR | 221,884.04 | 0x7a437e736dd169B706f4c8b9dFE bEb02fbc633cA | 0x72be2a265708f35ef04999dc56d 3df35821f45d3e8c69a652e3d25b2 a1f9c1e1 |
| 53. | 2023/12/9 15:10:12 | enC1zkqfU5X4x84LMKSzcR dsSSi F7M1Nt7ovm62jRXr78uT1h | ENJ | 4.97 | enESTYANZNHxHopxztqomTGLEta UYgUxcp2izKE 7QazzA5FQ5 | 0x2bac83d07272601a54695cb3be 9c2a6d4f13d471dbba97ad773868 3a3c615423 |

**Annex III | Page 9**

| (A)<br>S/N | (B)<br>Transfer Date (UTC) | (C)<br>Originating Entrusted Digital Wallet Address (S/N in Annex A) | (D)<br>Token | (E)<br>No. | (F)<br>Impugned Wallet | (G)<br>Transaction Hash |
|---|---|---|---|---|---|---|
| | | (Binance Exchange Hot Wallet) | | | | |
| 54. | 2023/12/9 15:16:06 | enC1zkqfU5X4x84LMKSzcRdsSSi F7M1Nt7ovm62jRXr78uT1h( Binance Exchange Hot Wallet) | ENJ | 1,321,359 | enESTYANZNHxHopxztqomTGLEtaUYgUxcp2izKE 7QazzA5FQ5 | 0xebd553b795b92796ac6f121180aeead61a30f124e84839b6c62d13d76770d6a1 |
| 55. | 2023/12/9 15:28:12 | 1qnJN7FViy3HZaxZK9tGAA71zxH SBeUweirKqCaox4t8GT7(Binance Exchange Hot Wallet) | DOT | 4.92 | 13ifUBXzoyPTTRLhJ7eJybJoAFRLqBwvgNBPTmV CWUw1uVGe | 0xd340820958216eb2f29f71377980b21434733a6c321106540fb7720900ede8ba |
| 56. | 2023/12/9 15:36:12 | 1qnJN7FViy3HZaxZK9tGAA71zxH SBeUweirKqCaox4t8GT7(Binance Exchange Hot Wallet) | DOT | 560,622.1 | 13ifUBXzoyPTTRLhJ7eJybJoAFRLqBwvgNBPTmV CWUw1uVGe | 0xc0485fd4916ea90ae46e4ca9ffdd759a4f63ca232f13bcccd1a4058270b2f856 |
| 57. | 2023/12/9 11:43:03 | bc1qm34lsc65zpw79lxes69zkqmk6 ee3ewfOj77s3h (Binance Exchange Hot Wallet) | BTC | 0.0189 | bc1qlzj9p7pgdp59uflr5jdrxelxzva4hg9gtkh0jz | 66f0af77b09f751fe2a45dd705c5b8b61614b9f8daf27c011e2b4566c2b8b2b7 |
| 58. | 2023/12/9 14:40:35 | 0x6cc5f688a315f3dc28a7781717a9a798a59fda7b (OKX Exchange Hot Wallet) | CFG | 100 | 0x7a437e736dd169B706f4c8b9dFEbEb02fbc633cA | 0x2a99845ba0a8f97668392162ed689b3e19944406408f744fd8e77f930fa0aa00 |
| 59. | 2023/12/9 14:44:35 | 0x6cc5f688a315f3dc28a7781717a9a798a59fda7b (OKX Exchange Hot Wallet) | CFG | 172,030.54 | 0x7a437e736dd169B706f4c8b9dFEbEb02fbc633cA | 0x2ba6c40ac1f7c6375e736bee2695522877c42e41b3b5de2c1d5d977b4fcef913 |

**Annex III | Page 10**