# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| GENESIS GLOBAL HOLDCO, LLC, GENESIS GLOBAL CAPITAL, LLC, and GENESIS ASIA PACIFIC PTE. LTD., <br><br> Plaintiffs <br><br> v. <br><br> DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, DUCERA PARTNERS, LLC, and MICHAEL KRAMER, <br><br> Defendants. | C.A. No. |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. § 1452(a), defendant Digital Currency Group, Inc. ("DCG")[1] hereby removes the above-captioned action (the "Action") from the Court of Chancery of the State of Delaware to the United States District Court for the District of Delaware.[2] This Court has original jurisdiction over this Action pursuant to 28 U.S.C. § 1334(b). As grounds for removal, DCG states as follows:

---

[1] All other defendants join in this notice and consent to removal. (*See* Exhibits B-F.)

[2] DCG does not waive and expressly reserves all rights, claims, and defenses, including, without limitation, all defenses relating to jurisdiction, venue, and arbitrability. DCG, Ducera, and the individual defendants do not waive any defenses they may have to personal jurisdiction through the filing of or consent to this Notice of Removal.

## INTRODUCTION

1. On May 13, 2025, Genesis filed this Action in the Court of Chancery of the State of Delaware. (Ex. A, Complaint, *Genesis Glob. Holdco, LLC v. Digital Currency Grp., Inc.*, C.A. No. 2025-0532 (Del. Ch. May 13, 2025) (Doc. 1).)

2. Each of the plaintiffs in the Action—Genesis Global Holdco, LLC ("GGH"), Genesis Global Capital, LLC ("GGC"), and Genesis Asia Pacific PTE Ltd. ("GAP") (and together "Genesis," "Debtors," or "Plaintiffs")—is a Debtor in chapter 11 bankruptcy proceedings that they commenced in January 2023 and that currently remain pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). (*In re: Genesis Glob. Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y.).)

3. Despite proceeding before the New York Bankruptcy Court for two-and-one-half years—including litigating three separate adversary proceedings against DCG or its affiliates, as well as adversary proceedings against multiple other parties—Plaintiffs commenced *this* Action in the Delaware Court of Chancery. Six days later, however, in what can be characterized only as a textbook case of improper forum shopping and claim-splitting, two of the same Plaintiffs commenced yet another adversary proceeding against DCG and certain other defendants in this Action, asserting claims based on many of the same facts and events and raising similar legal issues as this Action. But this time, Plaintiffs chose to bring their case in the Bankruptcy Court in New York.

4. Plaintiffs' claims in both cases are entirely without merit. But, beyond that, there simply is no valid basis for subjecting two different courts and the Defendants to plainly duplicative proceedings that will further constrain scarce resources and create a substantial risk of inconsistent rulings on key issues—including, prominently, when Plaintiffs became insolvent.

2

Defendant DCG—with the full support of all other Defendants in this Action—accordingly removes this Action to this Court with the intention of seeking to transfer it to the Bankruptcy Court, so that it can proceed efficiently and in coordination with Plaintiffs' duplicative adversary proceeding against many of the same parties that is already pending there.

5. This Action, like the adversary proceeding Plaintiffs commenced nearly simultaneously in the Bankruptcy Court, is plainly "related to" their bankruptcy within the meaning of Sections 1334(b) and 1442(a). It was commenced by the Debtors (i.e., Plaintiffs). As described in Plaintiffs' confirmed, Amended Joint Chapter 11 plan and the Disclosure Statement they prepared to explain that plan to their creditors, the claims asserted in this Action are assets of their estate. In fact, these claims are the lynchpin of their baseless plan to try to force DCG to provide a windfall to their creditors far in excess of the dollar-value of their pre-petition claims, which they have already recovered through the bankruptcy. The Chapter 11 plan, moreover, specifically provides that the Bankruptcy Court maintains jurisdiction to hear the claims asserted in this Action. This Action never should have been filed in the Delaware Court of Chancery in the first place and belongs in the Bankruptcy Court in New York. This removal is the first step in rectifying Plaintiffs' improper choice to engage in forum shopping and claim splitting.

## FACTUAL BACKGROUND

6. Plaintiffs are wholly owned subsidiaries of defendant DCG. (Ex. A, Compl., ¶¶ 23-25.)[3] Prior to filing for bankruptcy in January 2023, Plaintiffs engaged in the business of lending,

---

[3] While DCG remains the record owner of 100% of Plaintiffs' equity, it played a limited role in selecting Plaintiff GGH's current board. (*See* Ex. G, Debtors' Amended Joint Chapter 11 Plan (the "Amended Plan") §§ IV.B.7, 9, *In re: Genesis Glob. Holdco, LLC*, Case No. 23-10063 (Bankr. S.D.N.Y. filed July 21, 2024) (Doc. 1874).) Moreover, under the Amended Plan, management authority over Plaintiffs was vested in a "PA Officer," who is authorized to pursue claims on their behalf as advised by a "Litigation Oversight Committee" selected by Plaintiffs' creditors. (*See id.* §§ IV.A.1-2, IV.A.4.)

3

borrowing, and trading crypto assets (such as Bitcoin) and fiat currency (such as U.S. dollars) primarily to and from institutional and high net worth individual customers. (*Id.* ¶¶ 1, 23-25, 44.)

7. During 2022, as cryptocurrency values declined and the digital asset market experienced one system shock after another, DCG undertook substantial effort and expended significant resources (without any obligation to do so) in an attempt to preserve Genesis as a going concern. Between June and November 2022 alone, DCG paid and contributed hundreds of millions of dollars in crypto assets and fiat currency to Genesis through equity infusions, loan repayments and loan forgiveness, which, during the pendency of the Genesis bankruptcy cases, have appreciated in value to well over $1 billion. When Three Arrows Capital Pte. Ltd. ("3AC"), one of Genesis's largest counterparties, collapsed in June 2022 and defaulted on approximately $2.5 billion in loans, DCG—despite having no obligation whatsoever to provide any support to its subsidiary—assumed the payable to fill the balance sheet's equity hole in agreeing to pay up to $1.1 billion to cover whatever amounts could not ultimately be recovered from 3AC. (*See id.* ¶¶ 10, 121, 156, 158.) Several months following the 3AC default, the crypto industry experienced yet another unprecedented and unforeseeable shock in November 2022, when FTX Trading Ltd. and its sister company, Alameda Research LLC—one of Genesis's larger borrowers—collapsed and sought bankruptcy protection, resulting in massive market contagion. (*Id.* ¶¶ 17, 47, 88.) Ultimately, the good-faith efforts of both Genesis and DCG proved insufficient, and Genesis sought bankruptcy protection.

8. On January 19, 2023, Plaintiffs filed petitions for Chapter 11 bankruptcy in the Bankruptcy Court. (*Id.* ¶ 20).

9. Throughout the bankruptcy, and prior to the filing of this Action, Genesis routinely commenced and defended multiple adversary proceedings before the Bankruptcy Court in New

4

York to litigate various claims against different parties, including *at least three* prior adversary proceedings against DCG or its subsidiaries.[4]

10. Plaintiffs filed an Amended Chapter 11 Plan on November 28, 2023 and their Amended Disclosure Statement with respect to the plan on December 6, 2023. The Bankruptcy Court issued Orders confirming the Plan on May 17 and 31, 2024. (*In re: Genesis Glob. Holdco, LLC*, 660 B.R. 439 (Bankr. S.D.N.Y. 2024); Findings of Fact, Conclusions of Law, and Order (I) Confirming the Debtors' Amended Joint Chapter 11 Plan and (II) Granting Related Relief, *In re: Genesis Glob. Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. May 31, 2024) (Doc. 1736).)

11. Plaintiffs filed their further Amended Plan on July 21, 2024, which had an effective date of August 2, 2024. (*See* Notice of (I) Occurrence of Effective Date for the Debtors' Amended Joint Chapter 11 Plan and (II) Final Deadlines for Filing Certain Claims, *In re: Genesis Glob. Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. Aug. 2, 2024) (Doc. 1907).)[5]

12. As a result of the support DCG provided to Genesis before bankruptcy and a substantial recovery in the value of crypto assets during the bankruptcy, Genesis's creditors have already fully recovered their out-of-pocket losses as measured by the dollar value of their asset

---

[4] *See Genesis Glob. Cap., LLC v. Digital Currency Group, Inc.*, Adv. Pro. No. 23-01168 (Bankr. S.D.N.Y. filed Sept. 6, 2023); *Genesis Glob. Cap., LLC v. DCG Int'l Invs. Ltd.*, Adv. Pro. No. 23-01169 (Bankr. S.D.N.Y. filed Sept. 6, 2023); *Gemini Trust Co., LLC v. Genesis Glob. Cap., LLC*, Adv. Pro. No. 23-01192 (Bankr. S.D.N.Y. filed Oct. 27, 2023); *Genesis Glob. Cap., LLC v. Digital Currency Group, Inc.*, Adv. Pro. No. 24-01312 (Bankr. S.D.N.Y. filed Feb. 7, 2024); *Genesis Glob. Cap., LLC. v. Redacted*, Adv. Pro. No. 25-01028 (Bankr. S.D.N.Y. filed Jan. 31, 2025).

[5] Because the July 21, 2024 Amended Plan purportedly made only non-substantive changes, it did not require further confirmation under the terms of the prior, confirmed plan. (*See* Notice of Filing of Amended Joint Chapter 11 Plan, *In re: Genesis Glob. Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. July 21, 2024) (Doc. 1875).)

5

holdings as of the date of the bankruptcy filing. In fact, some creditors have already received ***more than 100%*** of the dollar-value of their claims as of the bankruptcy filing, with many creditors having obtained full in-kind recoveries of cryptocurrency assets they had lent to Genesis—a fact that Genesis itself has acknowledged. (*Compare* Ex. A, Compl. ¶ 22 (Genesis has repaid approximately $4.3 billion of claims) *with* Ex. H, Genesis Confirmation Hearing Tr. (Feb. 27, 2024) at 119:21-121:6 (testimony by Genesis's financial advisor that Genesis owed $2.914 billion as valued in dollars on the petition date); *see also id.* at 121:7-122:10 (testimony by Genesis's financial advisor that in "high case" scenario, and without taking into account the full increase in the value of crypto assets during the bankruptcy, after creditors received the petition-date dollar-value of their claims, "there would be another $900.5 million available for in-kind recoveries under the distribution principles").)

13. Notwithstanding the extraordinary recovery Genesis' creditors have already received in the bankruptcy, the Litigation Oversight Committee ("LOC")—the body that oversees Genesis's litigation under the Amended Plan—caused Genesis to file this Action to try to force DCG, together with its current and former officers and advisors, to pay over Bitcoin and other crypto assets sufficient to remunerate Genesis's creditors for all cryptocurrency they claim Genesis owed them but had not repaid as of the commencement of the bankruptcy. This Action is thus a cynical attempt by a relatively small number of sophisticated creditors to mischaracterize the efforts of DCG in 2022 to preserve Genesis as a going concern and now force Defendants to guarantee them the substantial increase in the market values of Bitcoin and other crypto assets since the start of the bankruptcy cases. In essence, through this Action, Genesis is seeking to recover an unprecedented windfall on behalf of its creditors.

14. Genesis will have the opportunity to present these arguments to a court. The question is which court. Over the course of the bankruptcy cases and in Genesis's Plan of Liquidation itself, Genesis announced repeatedly that it intended to bring causes of action against DCG and others—the Plan contains pages of descriptions about the causes of action to come, and the Plan states that the Bankruptcy Court is vested with jurisdiction to hear such claims. (Ex. I, Amended Disclosure Statement at 37-44, *In re Genesis Glob. Holdco, LLC*, Case No. 23-10063 (Bankr. S.D.N.Y. Dec. 6, 2023) (Doc. 1031) (describing Debtors' potential claims against DCG and its affiliates, including "alter ego claims, preferences, fraudulent conveyances, equitable subordination, recharacterization, and improper setoff"); Ex. G, Am. Plan § XI.7 (Bankruptcy Court retains jurisdiction to "adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor").)

15. However, for strategic reasons known only to it, Genesis ultimately decided to split its claims into two separate actions. Instead of bringing the lawsuit against DCG in the Bankruptcy Court as the Plan suggested, Genesis instead decided to bring most—but not all—of its claims in the Delaware Court of Chancery, which to that point had *zero* involvement in the Genesis cases. Then, just days after filing this Action, Genesis filed an adversary proceeding in the Bankruptcy Court seeking to recover payments allegedly made by GGC and GAP (both plaintiffs in this Action) to DCG and certain other defendants named herein as purported preferences under federal bankruptcy law and state fraudulent transfer law. (*Genesis Glob. Cap., LLC v. Digital Currency Grp., Inc.* (the "Adversary Proceeding"), Adv. Pro. No. 25-01097 (Bankr. S.D.N.Y. filed May 19, 2025).)

16. This is rank, impermissible claim splitting. The Adversary Proceeding involves substantially similar parties as this Action—the plaintiffs in the Adversary Proceeding are both

7

plaintiffs in this Action; and DCG, Ducera Partners, LLC, and a number of the individual defendants in this Action are also named as defendants in the Adversary Proceeding. (*Compare* Ex. A, Compl. ¶¶ 23-25, 27-33 *with* Ex. J, Complaint, *Genesis Glob. Cap., LLC v. Digital Currency Grp., Inc.*, Adv. Pro. No. 25-01097 (Bankr. S.D.N.Y. filed May 19, 2025 (Doc. 1) (the "Adversary Complaint") ¶¶ 18-21, 28-29.)

17. Moreover, the Adversary Complaint is based on substantially overlapping factual allegations as the Complaint in this Action, and both complaints similarly present important, overlapping *legal* questions for decision that raise a severe risk of inconsistent rulings. For example, both the Complaint in this Action and the Adversary Complaint, among other things, (i) allege that Genesis lacked adequate risk management practices and concentrated its loans among a small number of counterparties (*compare* Ex. A, Compl. ¶¶ 81-102, *with* Ex. J, Adversary Compl. ¶¶ 47-63); (ii) mischaracterize the $1.1 billion promissory note that DCG provided to Genesis to shore up its balance sheet as a subterfuge (*compare* Ex. A, Compl. ¶¶ 154-60, *with* Ex. J, Adversary Compl. ¶¶ 80-82); and (iii) outright misrepresent hundreds of millions of dollars in equity infusions and loan forgiveness by DCG and its subsidiaries as alleged looting and preferential transfers (*compare* Ex. A, Compl. ¶¶ 185-88, 210, *with* Ex. J, Adversary Compl. ¶¶ 103-06). The Complaint in this Action and the Adversary Complaint likewise will require a court to determine the date on which Genesis became insolvent (*compare, e.g.*, Ex. A, Compl. ¶¶ 1, 9, 107-11, 219, 225, *with* Ex. J, Adversary Compl. ¶¶ 3, 56, 106, 153), and whether the same defendants improperly withdrew assets from Genesis following its alleged insolvency (*compare* Ex. A, Compl. ¶¶ 13, 116, 124, 138, 189, *with* Ex. J, Adversary Compl. ¶¶ 1, 91-93, 97-102, 125-34).

8

18. Thus, regardless of the merits of Plaintiffs' claims in this Action—and there are none—this Action belongs in the Bankruptcy Court. It was filed by the Debtors to extract additional money on behalf of their creditors. The claims asserted in the Action are the largest remaining assets of Debtors' estate. Indeed, the claims were the centerpiece of the Debtors' Amended Plan, and the LOC, which must supervise this Action under the Amended Plan, is required to exercise its authority consistent with the Plan and subject to the Bankruptcy Court's supervision. The Bankruptcy Court, which has overseen every aspect of Debtors' Chapter 11 cases for more than two years, including prior adversary proceedings litigated by parties to this Action, is intimately familiar with the underlying issues and facts. The Amended Plan specifically gives the Bankruptcy Court authority to hear the claims in this Action, and, more generally, bankruptcy courts routinely adjudicate claims—like those at issue in this Action—involving the assets of a debtor's estate. The Bankruptcy Court necessarily must address the same facts and legal issues in the Adversary Proceeding. It is far more appropriate for this Action, which is an integral part of the Debtors' bankruptcy, to proceed in the Bankruptcy Court than in the Delaware Court of Chancery, where it will burden an additional court, not to mention the parties, with litigating duplicative claims in two different fora simultaneously.

19. This Court has original jurisdiction over the Action pursuant to 28 U.S.C. § 1334(b), because the Action is "related to" Title 11 bankruptcy proceedings and a related adversary proceeding. Accordingly, this Action is subject to removal under 28 U.S.C. § 1452(a).

9

## GROUNDS FOR REMOVAL

20. The Action may be removed under 28 U.S.C. § 1452(a) because it is a civil proceeding "related to" a case under the federal Bankruptcy Code within the meaning of the statute, and this Court therefore has original jurisdiction over this Action under 28 U.S.C. § 1334(b).

21. "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action." *Street v. The End of the Rd. Tr.*, 386 B.R. 539, 545 (D. Del. 2008) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (internal quotation marks and citation omitted). This Action unquestionably meets these requirements.

22. This Action is related to Genesis's Chapter 11 bankruptcy proceedings, and the Debtors in the bankruptcy proceedings are all parties to this Action.

23. This Action is also related to the Adversary Proceeding pending in the Bankruptcy Court, which asserts causes of action arising exclusively under Title 11, within the meaning of 28 U.S.C. § 1334(b). Indeed, GGC and GAP, both plaintiffs here, are plaintiffs in the Adversary Proceeding. The Adversary Proceeding asserts claims against four of the seven defendants in this Action, and it is based on overlapping factual allegations and presents certain identical legal issues.

24. In the post-confirmation context, the relevant inquiry for "related to" jurisdiction is "whether there is a 'close nexus' between the underlying claims and the bankruptcy proceeding. When a matter 'affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan,' it will have the requisite close nexus and render post-confirmation jurisdiction appropriate." *Street*, 386 B.R. at 545 (quoting *In re Resorts Int'l*, 372 F.3d 154, 168-69 (3d Cir. 2004)) (citation omitted).

25. Here, the claims Genesis is pursuing in the Action are the "Retained Causes of Action" as set forth in the Debtors' confirmed Plan and are assets of the estate. *See* Ex. G, Am. Plan §§ I.A.19, 35, 208.

26. As also set forth in the Plan, this litigation is subject to oversight by Debtors' PA Officer and the LOC, and their pursuit, settlement, or other disposition of the Retained Causes of Action must comport with the Plan. *See id.* §§ I.A.164, IV.A.2, 4.

27. Genesis's claims asserted in the Action are being financed with a litigation reserve being administered as part of and pursuant to the Plan. *See id.* §§ I.A.171, IV.B.2.c.

28. Moreover, the assets the Genesis bankruptcy estate may use to compensate creditors include those that are the subject of causes of action asserted against Defendants in the Action. *See id.* §§ I.A.78, IV.B.3.

29. This Action is a hornbook civil proceeding "related to cases under title 11" within the meaning of 28 U.S.C. § 1334(b) and has the requisite close nexus to the bankruptcy proceedings and the Adversary Proceeding, because it will affect the implementation, execution, and administration of the Plan. This Court thus has original jurisdiction over the Action.

## OTHER PROCEDURAL REQUIREMENTS

30. In accordance with 28 U.S.C. § 1446(a), copies of the process, pleadings, and orders served upon Defendant DCG are attached hereto as Exhibits A and K-P.

31. The Defendants' time to respond to the summons and Complaint by answer, demurrer, or motion has not expired and no defendant has served or filed an answer or motion or otherwise appeared in response to the Complaint.

32. Because the Defendants filed this Notice of Removal within thirty days of service of the Complaint, removal is timely under 28 U.S.C. § 1446(b).

33. Within seven (7) days of filing this Notice, Defendants intend to file a motion pursuant to 28 U.S.C. § 1404 to transfer this Action to the Southern District of New York so that it can proceed before the Bankruptcy Court.

34. Defendants reserve the right to amend or supplement this Notice of Removal.

WHEREFORE, Defendants respectfully remove Plaintiffs' Action from the Court of Chancery of the State of Delaware to this Court pursuant to 28 U.S.C. § 1452(a).

| | |
|---|---|
| Dated: June 12, 2025 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | |
| | */s/ Kevin M. Coen* |
| | Kevin M. Coen (#4775) |
| | Jacob M. Perrone (#7250) |
| | 1201 N. Market Street, 16th Floor |
| | Wilmington, DE 19801 |
| | Tel: (302) 658-9200 |
| | kcoen@morrisnichols.com |
| | jperrone@morrisnichols.com |
| | |
| | -and- |
| | |
| | DAVIS POLK & WARDWELL LLP |
| | Marshall S. Huebner (*pro hac vice application to be filed*) |
| | Benjamin S. Kaminetzky *(pro hac vice application to be filed)* |
| | Elliot Moskowitz *(pro hac vice application to be filed)* |
| | Daniel J. Schwartz *(pro hac vice application to be filed)* |
| | Matthew R. Brock *(pro hac vice application to be filed)* |
| | 450 Lexington Avenue |
| | New York, NY 10017 |
| | (212) 450-4000 |
| | ben.kaminetzky@davispolk.com |
| | elliot.moskowitz@davispolk.com |
| | daniel.schwartz@davispolk.com |
| | matthew.brock@davispolk.com |
| | |
| | *Counsel for Digital Currency Group, Inc.* |

13