# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| GENESIS GLOBAL HOLDCO, LLC, GENESIS GLOBAL CAPITAL, LLC, and GENESIS ASIA PACIFIC PTE. LTD., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 1:25-cv-00733-UNA |
| DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, DUCERA PARTNERS LLC, and MICHAEL KRAMER, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND</u>

*Of Counsel*:

Philippe Z. Selendy
Jennifer M. Selendy
Claire E. O'Brien
Laura M. King
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, New York 10104
(212) 390-9000
pselendy@selendygay.com
jselendy@selendygay.com
cobrien@selendygay.com
lking@selendygay.com

Dated: June 13, 2025

Rudolf Koch (#4947)
Robert L. Burns (#5314)
Andrew L. Milam (#6564)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302)-651-7700
Koch@rlf.com
Burns@rlf.com
Milam@rlf.com

*Attorneys for Plaintiffs Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific PTE. Ltd.*

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ...................................................3

SUMMARY OF ARGUMENT ................................................................................3

STATEMENT OF FACTS .......................................................................................4

ARGUMENT ...........................................................................................................8

I.     THE COURT SHOULD DECIDE THE REMAND MOTION BEFORE HEARING ANY TRANSFER MOTION ..........................................................8

II.    THE COURT LACKS JURISDICTION AND MUST REMAND THE CASE TO CHANCERY COURT ...................................................................................9

    A.    There Is No Federal "Related To" Jurisdiction.........................................9

        1.    Plaintiffs' Claims Do Not Have a "Close Nexus" to the Bankruptcy.........9

        2.    DCG's Allegations of Claim Splitting are Irrelevant to the Third Circuit's Test for "Related To" Jurisdiction ...............................................13

    B.    Mandatory Abstention Requires Remand.............................................14

    C.    In the Alternative, the Court Should Remand on Equitable Grounds or Under the Permissive Abstention Doctrine.............................................17

        1.    Genesis's Chosen Forum of Chancery Court is Uniquely Appropriate and Can Provide Prompt, Final Relief....................................18

        2.    Litigating in Chancery Court is Fair and Efficient ....................................20

        3.    This Case Has No Impact on the Post-Confirmation Bankruptcy ............20

CONCLUSION.........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Armstrong v. Pomerance*,
  423 A.2d 174 (Del. 1980) .................................................................................. 19

*In re Drauschak*,
  481 B.R. 339 (Bankr. E.D. Pa. 2012) ................................................................ 17

*In re The Fairchild Corp.*,
  452 B.R. 525 (Bankr. D. Del. 2011) .............................................................. 10, 12

*In re Fed.-Mogul Glob., Inc.*,
  282 B.R. 301 (Bankr. D. Del. 2002) .................................................................. 17

*Gorse v. Long Neck, Ltd.*,
  107 B.R. 479 (D. Del. 1989) .............................................................................. 18

*In re Grace Cmty., Inc.*,
  262 B.R. 625 (Bankr. E.D. Pa. 2001) ............................................................... 8, 9

*In re Insilco Techs.,Inc.*,
  330 B.R. 512 (Bankr. D. Del. 2005) ........................................................ 10, 12, 13

*Intell. Ventures I LLC v. Altera Corp.*,
  842 F. Supp. 2d 744 (D. Del. 2012) .................................................................. 17

*LJM2 Co–Inv., L.P. v.LJM2 Cap. Mgmt., L.P.*,
  2003 WL 431684 (D. Del. Feb. 24, 2003) ................................................ 14, 15, 17

*MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.*,
  1985 WL 21129 (Del. Ch. Oct. 9, 1985) ............................................................ 19

*In re Maxus Energy Corp.*,
  560 B.R. 111 (Bankr. D. Del. 2016) .................................................................. 14

*N.Y. Com. Bank v. Pullo*,
  2013 WL 494050 (Bankr. S.D.N.Y. Feb. 7, 2013) .............................................. 17

*Nice Sys., Inc. v. Witness Sys., Inc.*,
  2006 WL 2946179 (D. Del. Oct. 12, 2006) ........................................................ 19

*Pacor v. Higgins*,
    743 F.2d 984 (3d Cir. 1984)............................................................................... 11

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
    615 B.R. 529 (D. Del. 2020)................................................................ 14, 15, 16

*QC Commc'ns Inc. v. Quartarone*,
    2013 WL 1970069 (Del. Ch. May 14, 2013)................................................... 19

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004)...................................................................... passim

*Rogers v. Guaranty Tr. Co.*,
    288 U.S. 123 (1933)........................................................................................ 19

*Rowland v. Bissell Homecare, Inc.*,
    73 F.4th 177 (3d Cir. 2023) .............................................................................. 9

*Royal Indem. Co. v. Admiral Ins. Co. Inc.*,
    2007 WL 4171649 (D.N.J. 2007) ..................................................................... 9

*In re Santa Clara Cnty. Child Care Consortium*,
    223 B.R. 40 (B.A.P. 1st Cir. 1998) .................................................................. 9

*Shandler v. DLJ Merch. Banking, Inc.*,
    2009 WL 2483776 (Del. Ch. Aug. 11, 2009) ................................................ 14

*Stahl v. Stahl*,
    2003 WL 22595288 (S.D.N.Y. Nov. 7, 2003)................................................. 9

*Stern v. Marshall*,
    564 U.S. 462 (2011)............................................................................ 8, 13, 16

*Street v. The End of the Rd. Tr.*,
    386 B.R. 539 (D. Del. 2008) ........................................................................ 11

*In re Topps Co. S'holders Litig.*,
    924 A.2d 951 (Del. Ch. 2007)........................................................................ 18

*Triple T. Constr. v. Township of West Milford*,
    2017 WL 123434 (D.N.J. 2017) .................................................................... 18

*In re Washington Mut., Inc.*,
    2012 WL 4755209 (Bankr. D. Del. Oct. 4, 2012) ......................................... 13

*Wells Fargo Bank N.A. v. Johnson*,
    2012 WL 1203427 (D. Del. Apr. 4, 2012)................................................ 17, 18

## Statutes

10 Del. C. § 341 ................................................................................................................ 16

11 U.S.C. § 547 ................................................................................................................... 2

11 U.S.C. § 548 ................................................................................................................... 2

28 U.S.C. § 1331 ............................................................................................................... 15

28 U.S.C. § 1332 ............................................................................................................... 15

28 U.S.C. § 1334 ......................................................................................................... passim

28 U.S.C. § 1404 ................................................................................................................. 2

28 U.S.C. § 1452 ......................................................................................................... 1, 3, 17

## Other Authorities

*A Short History of the Delaware Court of Chancery—1792-1992,*
    18 Del. J. Corp. L. 819 (1993) ...................................................................................... 16

Genesis Global Holdco, LLC ("GGH"), Genesis Global Capital, LLC ("GGC"), and Genesis Asia Pacific PTE. Ltd. ("GAP," and together with GGH and GGC, "Genesis" or "Plaintiffs") respectfully submit this opening brief in support of their Motion to Remand.

## **PRELIMINARY STATEMENT**

Genesis—a former cryptocurrency lending and borrowing platform—filed a Complaint in the Court of Chancery of the State of Delaware ("Chancery Court") to recover in-kind damages worth over two billion dollars against their controlling parent company, Delaware-incorporated cryptocurrency investment firm Digital Currency Group, Inc. ("DCG"); DCG's founder and CEO, Barry Silbert; DCG executives Michael Kraines and Mark Murphy (together with DCG and Silbert, the "DCG Defendants"); the former CEO of Delaware-organized GGC, Michael Moro; DCG's Delaware-organized financial adviser, Ducera Partners LLC ("Ducera"); and Ducera's founder and DCG stockholder, Michael Kramer (together with the DCG Defendants, Moro, and Ducera, "Defendants"). Plaintiffs assert quintessential Delaware common law causes of action of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, civil conspiracy, fraud, negligent misrepresentation, and alter ego—all based on pre-petition misconduct—seeking damages and equitable relief, including the return of cryptocurrencies in kind, for Defendants' egregious corporate wrongdoing, fraud, and disregard of the Delaware corporate form, perpetrated to benefit DCG at the expense of Genesis and its customers.

There is no federal jurisdiction under 28 U.S.C. §§ 1452(a) and 1334(b) to hear this action. Prevailing Third Circuit precedent requires Defendants to demonstrate that the Complaint has a "close nexus" relationship to the Genesis bankruptcy in order to establish federal jurisdiction. The Genesis bankruptcy plan (the "Plan") was confirmed more than a year ago, and Plaintiffs' claims have nothing to do with its interpretation or administration, or other integral elements of the Plan. DCG's Notice of Removal (the "Notice"), D.I. 1, does not demonstrate otherwise.

Rather than try to satisfy the Third Circuit "close nexus" test, DCG argues about factual overlap and asserts "claim splitting," pointing to an adversary complaint that GGC and GAP filed in the Bankruptcy Court for the Southern District of New York ("S.D.N.Y. Bankruptcy Court"), which brings preference claims. But the test for federal jurisdiction is not whether this matter is in any way connected to the bankruptcy proceeding, or whether the common law claims involve some of the same underlying facts as a later-filed adversary proceeding seeking to claw back preferential transfers by corporate insiders. Rather, the test in this Circuit is whether Plaintiffs' common law claims for self-dealing and fraud implicate the *interpretation, implementation*, or *administration* of the bankruptcy *Plan of Confirmation*. They do not.

Plaintiffs properly filed retained core bankruptcy claims arising under 11 U.S.C. §§ 547 and 548 in S.D.N.Y. Bankruptcy Court, which has jurisdiction to issue a final decision on those claims. Plaintiffs properly filed retained state common law claims governed by Delaware law in Chancery Court because (1) there is no federal jurisdiction over those claims, (2) the S.D.N.Y. Bankruptcy Court cannot constitutionally issue a final decision on those claims (the Bankruptcy Court's recommendations would be subject to de novo review in the S.D.N.Y. District Court), and (3) the Chancery Court has specialized expertise to hear Delaware common law claims, including equitable claims, asserted by Plaintiffs. If Defendants want to argue "claim splitting," they must do so to the Chancery Court.

Even if jurisdiction existed, the doctrines of mandatory and permissive abstention under 28 U.S.C. § 1334(c)(2), as well as principles of comity, efficiency, and respect for the Chancery Court's unique expertise, compel remand. As such, the Court should grant the Motion to Remand.[1]

---

[1] Defendants note their plan to file a motion to transfer this case under 28 U.S.C. § 1404 within seven days. As set forth herein, this Court lacks jurisdiction to entertain that motion.

## NATURE AND STAGE OF THE PROCEEDINGS

On May 13, 2025, Plaintiffs commenced this Delaware common law action in Chancery Court, asserting Delaware state law claims.  The action was filed and is directed by the Litigation Oversight Committee ("LOC"), a representative body of creditors who are empowered to pursue certain retained causes of action against third parties to make creditors whole.[2]

On June 12, 2025, DCG filed the Notice pursuant to 28 U.S.C. § 1452(a), seeking to remove this state-law action from Chancery Court on the ground that it is purportedly "related to" Genesis's bankruptcy proceeding—which was commenced nearly two-and-a-half years ago on January 19, 2023, and in which the Plan was confirmed more than a year ago on May 17, 2024, with an effective date of August 2, 2024.  In the Notice, DCG indicates its intent to move to transfer this action to the S.D.N.Y. Bankruptcy Court, arguing that it is a more convenient forum to litigate this case.  Notice ¶¶ 4-5.  On June 12, 2025, Plaintiffs met and conferred with DCG but were unable to reach agreement on remand.  Plaintiffs now move to remand to Chancery Court.

## SUMMARY OF ARGUMENT

1.      As a threshold matter, the Court should decide Plaintiffs' Motion to Remand before it hears any transfer motion that Defendants may later file.  This Court must determine whether it has federal jurisdiction at all before it may purport to exercise such jurisdiction to rule on any subsequent motions for relief.  *See infra* § I.

---

[2] Contrary to Defendants' characterization of this action and the LOC as a "relatively small number of sophisticated creditors" seeking a windfall, Notice ¶ 13, the LOC represents the interests of over 400 individual and institutional creditors, hundreds of whom are not financially sophisticated and have claims under $1 million.  Even among those creditors with larger claims are individuals whose investments were based solely on a long-term conviction in the value of cryptocurrency and otherwise have no above-average knowledge of finance or lending.  This action is strongly supported by the creditor body.

2. There is no federal "related to" jurisdiction over this case. Under binding Third Circuit law, an action filed after a bankruptcy plan has been confirmed is "related to" a bankruptcy *only* if it has a "close nexus" relationship to the bankruptcy, meaning the action must "affect[] the interpretation, implementation, consummation, execution, or administration of a confirmed plan." That is not the case here, as the resolution of Plaintiffs' Delaware common law claims will not require any interpretation of the Plan, interfere with its implementation, impact the Plan. *See infra* § II.A. While DCG asserts that this action is "related to" the Genesis bankruptcy because recovery may benefit creditors, the Third Circuit has already rejected that contention, and DCG's argument of "claim splitting" does not support a showing of "close nexus" under the controlling Third Circuit standard.

3. In the alternative, the doctrine of mandatory abstention requires remand. This case clearly satisfies every one of the factors that require the Court to abstain from hearing this case. *See infra* § II.B.

4. Finally, even if abstention were not mandatory, the Court should remand under the permissive abstention doctrine and on equitable grounds. It is in the interests of justice and comity for a Delaware state court to decide Plaintiffs' Delaware common law claims against their Delaware parent corporation and Delaware fiduciaries—especially because Plaintiffs' chosen forum, Chancery Court, is undisputably the court with the most experience and expertise determining issues of Delaware business law. *See infra* § II.C.

## STATEMENT OF FACTS

Silbert incorporated DCG in Delaware in 2015 to serve as the nucleus of his cryptocurrency empire. D.I. 1-1, Ex. A ("Compl.") ¶ 40. Genesis was the grossly undercapitalized cryptocurrency lending arm of the DCG conglomerate. *Id.* ¶ 44. GGC, a Delaware LLC, accepted crypto and fiat currency deposits from lenders, loaned those assets to borrowers, and profited from the difference

in interest rates charged to borrowers and offered to lenders. *Id.* ¶¶ 23, 44-45. GAP lent cryptocurrency sourced by Delaware-organized GGC to borrowers based in Asia. *Id.* ¶ 25. GGH, a Delaware holding company LLC, was GGC's and GAP's direct parent. *Id.* ¶ 23. DCG wholly owned GGH, and through GGH, wholly owned both GGC and GAP. *Id.* ¶ 23-25.

The DCG Defendants flouted corporate formalities, making decisions for Genesis and using it as the "de facto" treasury for the DCG empire. *Id.* ¶ 63. For nearly their entire existence, neither GGH nor GGC had their own boards of directors or any formal management procedures, and GAP only nominally had a board of directors. *Id.* ¶¶ 23-25. DCG executives Silbert, Kraines, and Murphy operated as the "De Facto Managers" of Genesis. *Id.* ¶¶ 28-30.

The DCG Defendants operated Genesis without adequate risk management protocols, leaving it vulnerable to the extreme volatility in the crypto industry. *Id.* ¶¶ 80-108. Without proper diligence or loan loss reserves, the DCG Defendants caused Genesis to issue billions of dollars in undercollateralized loans to highly concentrated, risky counterparties, including Three Arrows Capital ("3AC") and Alameda Trading ("Alameda")—both of which are now bankrupt, with disgraced founders. *Id.* ¶ 3 n.3-4; *id.* ¶¶ 92-102. These non-creditworthy counterparties proffered DCG-affiliate products as collateral for their loans and engaged in risky trading that benefited DCG and Silbert by increasing the amount of bitcoin deposited at DCG affiliate Grayscale Investments LLC, and thereby generating massive fees on those bitcoin deposits. *Id.* ¶¶ 68-79, 96, 101. DCG also caused Genesis to issue hundreds of millions of dollars in unsecured loans to DCG and DCG's affiliates on preferential off-market terms without arms'-length negotiations, taking the liquidity provided by Genesis's individual and institutional customers for itself. *Id.* ¶¶ 103-06. Due to reckless lending practices mandated by DCG, by no later than December 31, 2021, Genesis was insolvent. *Id.* ¶¶ 107-11.

The DCG Defendants intentionally operated Genesis as DCG's alter ego. *Id.* ¶¶ 57-79. DCG commissioned external reports on its alter ego exposure that confirmed enterprise-threatening problems, including the lack of independent boards for GGC and GGH, Genesis's low capitalization rate, DCG's control over decision making at Genesis, and DCG's improper use of Genesis as its de facto treasury. *Id.* ¶¶ 52-67. The DCG Defendants did not address any of the identified problems and continued to operate Genesis for DCG's benefit. *Id.* ¶¶ 53, 87.

In 2022, a market downturn exacerbated Genesis's fragile condition. *See id.* ¶ 112. First, in May 2022, digital assets TerraUSD and LUNA collapsed and Genesis lost $51 million. *Id.* ¶ 112-17. Next, on June 13, 2022, one of Genesis's largest borrowers, 3AC, imploded. *Id.* ¶¶ 118-21. Due to the risky lending practices that benefited DCG, Genesis did not have sufficient collateral to cover 3AC's default. *Id.* ¶¶ 121-22. Genesis was left with a $1.1 billion hole in its balance sheet. *Id.* Using Genesis as their mouthpiece, the DCG Defendants quickly reassured the market and Genesis's lenders that Genesis was unaffected by the 3AC collapse, that Genesis continued to operate business as usual, and that DCG was supporting Genesis. *Id.* ¶¶ 123-41. The DCG Defendants knew these statements were false, that Genesis was insolvent and in a clear liquidity crunch, and that DCG had no intention of providing actual support to Genesis. *Id.*

Instead of providing Genesis with liquidity, DCG, with the assistance of Ducera and Kramer, designed a transaction to conceal the $1.1 billion hole in Genesis's balance sheet. *Id.* ¶¶ 155-58. DCG issued Genesis a commercially unreasonable promissory note (the "Promissory Note") that was listed on the Genesis balance sheet as an asset worth $1.1 billion even though it was worth, at best, a tiny fraction of that value. *Id.* ¶¶ 155-58, 166. Under the Promissory Note's terms, DCG "assumed" an amount equal to Genesis' 3AC exposure at that time, but DCG did not have to pay Genesis until 2032, and the Promissory Note accrued only 1% annual interest. *Id.*

¶ 156.  The Promissory Note created the appearance of a DCG-supported, solvent Genesis but did nothing to address Genesis's desperate need for liquidity and equity.  *Id.* ¶ 158.

Armed with a fraudulent Genesis balance sheet, DCG used Genesis to deceive Genesis counterparties.  *Id.* ¶¶ 159-76.  In particular, DCG needed to convince Gemini Trust Company, LLC ("Gemini") and Bitvavo Custody B.V. ("Bitvavo") to keep assets at Genesis.  *Id.* ¶ 149.  Gemini was custodian for hundreds of thousands of individual lenders' deposits, totaling more than $2 billion, which it transferred to Genesis through the Gemini "Earn Program," effectively acting as Genesis's largest lender.  *Id.* ¶ 45.  Bitvavo was Genesis's second largest lender, with hundreds of millions worth of assets loaned to Genesis.  *Id.* ¶ 46.  DCG's lies successfully prevented Gemini and Bitvavo from pulling assets out of Genesis.  *Id.* ¶ 176.

In November 2022, Alameda, GGC's largest borrower, collapsed, along with its sister company FTX.  *Id.* ¶¶ 197-98.  As a result of Genesis's extreme exposure to Alameda, the $1.1 billion hole on its balance sheet, and the hundreds of millions in loans outstanding to DCG, Genesis could not continue.  *Id.* ¶ 210.  On November 16, 2022, Genesis suspended withdrawals, preventing its lenders, including Gemini, from accessing their cryptocurrencies.  *Id.* ¶¶ 210-11.

Defendants' wrongdoing decimated Genesis.  Plaintiffs filed petitions for bankruptcy relief on January 19, 2023, in S.D.N.Y. Bankruptcy Court.  *Id.* ¶ 212.  Genesis's bankruptcy Plan was confirmed on May 17, 2024, with an effective date of August 2, 2024.  *Id.*  As is typical, in the Plan, Plaintiffs retained certain causes of action, including against Defendants.  *Id.* ¶ 214.

On May 13, 2025, Plaintiffs commenced this action in Chancery Court.  They seek monetary and injunctive relief, including an in-kind award of damages, imposition of an equitable trust, disgorgement of DCG's profits, and a declaratory judgment that Genesis was the alter ego of DCG.  *Id.* ¶¶ 366-73.  In full embrace of a blame-the-victim strategy, DCG asserts that, if the

Genesis creditors' losses are measured by the current dollar value of the cryptocurrency lost by the creditors, the creditors are seeking a "windfall" because they have already been made whole. Notice ¶ 12. DCG seeks to portray the LOC as a savvy and unrepresentative body that seeks to recover their coins and not just the historic dollar value of those coins as if Genesis creditors' sophistication or the fact that their stolen cryptocurrency has appreciated in value since the wrongdoing is a defense to Defendants' self-dealing and fraud. The moral hazard underlying DCG's position is breathtaking. Defendants are alleged to have breached their fiduciary duties and defrauded creditors causing them to lose billions worth of cryptocurrency. Yet, because Defendants stole cryptocurrency, the value of which has appreciated since Defendants' breaches of duty and fraud, DCG proffers that the wrongdoers should only have to return the dollar value of the coins at the time they were stolen—thereby allowing Defendants and not creditors to benefit from the appreciation of the stolen property. DCG already lost that argument. Compl. ¶ 213.

## **ARGUMENT**

### I.     THE COURT SHOULD DECIDE THE REMAND MOTION BEFORE HEARING ANY TRANSFER MOTION

In the Notice, DCG claims that it will seek to transfer this action "to the Southern District of New York so that it can proceed before the Bankruptcy Court." Notice ¶ 33; *accord id.* ¶ 5. Putting aside the fact that the S.D.N.Y. Bankruptcy Court lacks constitutional authority to issue a final judgment on Plaintiffs' common law claims, *Stern v. Marshall*, 564 U.S. 462, 475 (2011), the Court should not hear any transfer motion before first determining whether federal jurisdiction exists and, only if it so determines, then considering whether mandatory or equitable doctrines compel or counsel in favor of remand to Chancery Court.

"Jurisdiction is always a threshold issue." *In re Grace Cmty., Inc.*, 262 B.R. 625, 629 (Bankr. E.D. Pa. 2001). The Court "must first evaluate whether the state court action was properly

removed; that is, [the Court] must determine whether it has subject matter jurisdiction over the proceeding." *In re Santa Clara Cnty. Child Care Consortium*, 223 B.R. 40, 44 (B.A.P. 1st Cir. 1998); *accord Stahl v. Stahl*, 2003 WL 22595288, at *2 (S.D.N.Y. Nov. 7, 2003). Because Plaintiffs' Remand Motion implicates the threshold issue of the Court's jurisdiction, the Remand Motion must be decided before any transfer motion. *See In re Grace Cmty., Inc.*, 262 B.R. at 629; *Royal Indem. Co. v. Admiral Ins. Co. Inc.*, 2007 WL 4171649, at *2 (D.N.J. Nov. 19, 2007) (court "must answer the jurisdictional question before it can consider transferring the case"). Plaintiffs reserve all rights to respond, at the appropriate time, to any motion to transfer filed by Defendants.

## II. THE COURT LACKS JURISDICTION AND MUST REMAND THE CASE TO CHANCERY COURT

There is no federal jurisdiction because this action—which asserts solely Delaware state law claims and involves Delaware entities and their fiduciaries—does not have a "close nexus" to the Genesis bankruptcy, as required under the Third Circuit's test for "related to" jurisdiction. *See In re Resorts Int'l, Inc.* ("*Resorts*"), 372 F.3d 154, 169 (3d Cir. 2004); *infra* § II.A. In the alternative, the Court should remand the case under the mandatory abstention doctrine, *infra* § II.B, or under the permissive abstention doctrine and on equitable grounds, *infra* § II.C.

### A. There Is No Federal "Related To" Jurisdiction Over This Case

This action is not "related to" the Genesis bankruptcy proceeding under binding Third Circuit law. "Defendants, as the parties seeking to remove the case to federal court, bear the burden of establishing federal jurisdiction." *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 180 (3d Cir. 2023) (citation omitted). DCG cannot meet its burden here because this case has no effect on any integral aspect of the Genesis bankruptcy process.

#### 1. Plaintiffs' Claims Do Not Have a "Close Nexus" to the Bankruptcy

To meet the threshold for federal jurisdiction in this Circuit, an action must have a "close

nexus" to a bankruptcy proceeding, meaning it "must affect an integral aspect of the bankruptcy process." *Resorts*, 372 F.3d at 167. The Plan was confirmed more than a year ago, on May 17, 2024, and the debtors are being liquidated for the benefit of creditors. The Third Circuit has made clear that "the scope of bankruptcy court jurisdiction diminishes with plan confirmation." *Id.* at 165. After a bankruptcy plan has been confirmed, a litigation cannot have a "close nexus" to the bankruptcy case unless it "affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan." *Id.* at 168-69. Caselaw applying the Third Circuit's "close nexus" test makes plain that Plaintiffs' common law claims based on pre-petition wrongdoing do not implicate the administration or other required elements of a bankruptcy plan just because they return value to the estate for the benefit of creditors. *See, e.g.*, *In re The Fairchild Corp.* ("*Fairchild*"), 452 B.R. 525, 531-32 (Bankr. D. Del. 2011).

Plaintiffs' Delaware state law claims (for breach of fiduciary duty, aiding and abetting, fraud, negligent misrepresentation, unjust enrichment, and alter ego) do not require interpretation of the Plan or interfere with its implementation, consummation, execution, or administration. In fact, they have nothing to do with the Plan. Genesis's claims in the Complaint focus on Defendants' misconduct leading up to the Genesis bankruptcy, including Defendants' self-dealing and disregard for fiduciary duties owed to Plaintiffs, the sufficiency of the risk management practices Defendants directed, and their fraudulent misrepresentations to creditors to delay a bankruptcy while DCG looted crypto assets from Genesis. These issues do not have a "close nexus to the Plan. *See, e.g.*, *In re Insilco Techs., Inc.* ("*Insilco*"), 330 B.R. 512, 524 (Bankr. D. Del. 2005) (no "related to" jurisdiction over fiduciary breach, fraud, and unjust enrichment claims as their resolution "does not require interpretation of the Plan and will not affect the bankruptcy estate or the Debtor").

DCG concedes that the "close nexus" test is the applicable standard, *see* Notice ¶ 24, but it mischaracterizes that standard by quoting the inapposite "conceivable effect" test, a lower standard that applies only **before** confirmation of a bankruptcy plan, *see id.* ¶ 21 (citing *Street v. The End of the Rd. Tr.*, 386 B.R. 539, 545 (D. Del. 2008) (quoting *Pacor Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984))). Under the "conceivable effect" test, there is "related to" jurisdiction where "the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor*, 743 F.2d at 994 (citations and emphasis omitted).[3] By contrast, the proper inquiry under the "close nexus" test is whether the state law action "affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan." *See Street*, 386 B.R. at 545; *see also* Notice ¶ 24.

DCG does not and cannot show that this action meets the controlling "close nexus" test. Rather, DCG asserts only that the causes of action are estate "assets" that Genesis "may use to compensate creditors," that the causes of action here are "Retained Causes of Action" set forth in the Plan, that disposition of those causes of action "must comport with the Plan," and that this litigation is "being financed with a litigation reserve being administered as part of and pursuant to the Plan." Notice ¶¶ 25-28. But DCG's argument proves too much: virtually any post-bankruptcy litigation by an estate is authorized by a bankruptcy plan, is funded by a reserve, and is an asset that is pursued for the benefit of creditors. If such omnipresent facts were sufficient, they would provide bankruptcy courts the very "unending jurisdiction" that the Third Circuit foreclosed in *Resorts*. *See Resorts*, 372 F.3d at 160, 167.

DCG's arguments have already been considered and rejected by this Circuit. No "related

_____

[3] Thus, DCG argues, under the inapplicable "conceivable effect" test, the outcome of the case "could alter" debtor's rights, liabilities, and options. Notice ¶ 21.

to" jurisdiction exists merely because recovery in this matter may benefit Genesis's creditors. Notice ¶ 28. *See Fairchild*, 452 B.R. at 531 ("The scope of the bankruptcy court's post-confirmation jurisdiction would be unlimited if the potential gain or loss of assets alone was sufficient to confer bankruptcy court jurisdiction."). The Third Circuit rejected the same argument in *Resorts*, holding that "the potential to increase assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus sufficient to confer 'related to' bankruptcy court jurisdiction post-confirmation."[4] *Resorts*, 372 F.3d at 170. In fact, common law claims against third parties based on pre-petition conduct are routinely found *not* to "relate to" a confirmed plan merely because the proceeds of the litigation will go to creditors. *Fairchild*, 452 B.R. at 532 (breach of contract claim filed post-confirmation was not "related to" bankruptcy "even though the Agreements were created prepetition and the breach arguably occurred before confirmation of the plan" and recovery "will enhance the estate and allow for a greater distribution" to creditors); *Insilco*, 330 B.R. at 523-24 (no "related to" jurisdiction over fraud, unjust enrichment, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty claims that "arose prepetition" although recovery "could result in additional assets to distribute to creditors").

DCG further errs in arguing that there is purportedly "related to" jurisdiction under Article XI of Plaintiffs' Bankruptcy Plan, which states that the S.D.N.Y. Bankruptcy Court retains jurisdiction to "adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor." Notice ¶ 14. Article XI is irrelevant to this Court's jurisdiction. As the Third Circuit has squarely held, these types of generic provisions do not and *cannot* manufacture federal jurisdiction. *Resorts*, 372 F.3d at 161 ("neither the bankruptcy court nor the parties can write their

---

[4] The *Resorts* court noted, "[a]t the most literal level, it is impossible for the bankrupt[cy] debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." *Resorts*, 372 F.3d at 165.

own jurisdictional ticket"); *In re Washington Mut., Inc.*, 2012 WL 4755209, at *5 (Bankr. D. Del. Oct. 4, 2012).  Where no "related to" jurisdiction otherwise exists, "retention of jurisdiction provisions in a plan … are *fundamentally irrelevant*."  *Resorts*, 372 F.3d at 161 (emphasis added); *see also, e.g.*, *In re Washington Mut., Inc.*, 2012 WL 4755209, at *5.

### 2.  DCG's Allegations of Claim Splitting are Irrelevant to the Third Circuit's Test for "Related To" Jurisdiction

Ignoring the body of law that explicitly *requires* Plaintiffs to file their non-bankruptcy claims in a court with the jurisdiction to adjudicate them, DCG advances meritless arguments that filing Delaware state law claims in a Delaware court and bankruptcy claims in an adversary proceeding in Bankruptcy Court constitutes "claim splitting" because of purportedly "overlapping factual allegations and … certain identical legal issues."  Notice ¶ 16.  That is wrong.  Plaintiffs' state common law claims cannot be finally adjudicated in bankruptcy court, which lacks constitutional authority to enter final judgment on them.  *Stern*, 564 U.S. at 475.  By contrast, the adversary proceeding—which asserts preference and transfer claims arising under the Bankruptcy Code (including against eight different parties who are not defendants in the Delaware action)— was filed in the bankruptcy court because that court can issue a final ruling on those claims.  Even if a transfer motion were granted here, the S.D.N.Y. District Court would hear these important issues of Delaware law de novo after years of proceedings in bankruptcy court, belying Defendants' claim that transfer would be "efficient."

*Insilco* is instructive and guides Plaintiffs in this action.  There, the Trustee attempted to pursue the same type of state law claims at issue here along with "core" bankruptcy claims which mirror the claims that GGC and GAP brought in an adversary proceeding in the S.D.N.Y. Bankruptcy Court.  The bankruptcy court in *Insilco* found it "lack[ed] jurisdiction to hear" the state law claims.  *Insilco*, 330 B.R. at 526.  The Trustee appealed, and this Court affirmed.  *See In re*

*Insilco Techs., Inc.*, 394 B.R. 747, 751 (D. Del. 2008). The Trustee then properly filed the state law claims in the Chancery Court, just as Plaintiffs have done here. *See Shandler v. DLJ Merch. Banking, Inc.*, 2009 WL 2483776 (Del. Ch. Aug. 11, 2009).

In any event, DCG's assertion of purported claim splitting is not itself a basis for "related to" jurisdiction and DCG cites no case to the contrary. The fact that Plaintiffs filed an adversary proceeding asserting retained preference claims that arise under the Bankruptcy Code in the Bankruptcy Court is a red herring. *See* Notice ¶ 23. The question is not whether Plaintiffs' state law action is "related to" an *adversary proceeding* but rather whether the state law action has the requisite "close nexus" to the confirmed Bankruptcy Plan that is required under Third Circuit law. As set forth above, there is no such "close nexus" in this case.

### B.     Mandatory Abstention Requires Remand

To the extent the Court finds there is "related to" jurisdiction, the mandatory abstention provision of 28 U.S.C. § 1334(c)(2) requires remand. Section 1334(c)(2) dictates that federal courts must abstain from hearing a case where: (1) a motion for abstention is timely made; (2) the proceeding is based on a state law claim or cause of action; (3) the proceeding is "related to" a case under title 11 but does not "arise under" title 11 or "arise in" a case under title 11; (4) federal courts would not have jurisdiction but for section 1334(b); (5) the action was commenced in a state forum of appropriate jurisdiction; and (6) the action can be "timely adjudicated" in that state forum. 28 U.S.C. § 1334(c)(2); *see Principal Growth Strategies, LLC v. AGH Parent LLC*, 615 B.R. 529, 534-35 (D. Del. 2020) (Connolly, C.J.). Each of those requirements is met here.

*First*, Plaintiffs' motion is timely. Plaintiffs moved for remand just one day after DCG filed its Notice, and this Court has not conducted any proceedings. *See LJM2 Co–Inv., L.P. v. LJM2 Cap. Mgmt., L.P.*, 2003 WL 431684, at *2 (D. Del. Feb. 24, 2003); *In re Maxus Energy Corp.*, 560 B.R. 111, 115, 121 (Bankr. D. Del. 2016).

*Second*, this case concerns only Delaware common law causes of action—breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, fraud, negligent misrepresentation, unjust enrichment, and alter ego. Delaware has a strong interest in enforcing its laws, including with respect to abuse of the corporate form, and Plaintiffs assert quintessential Chancery Court claims that are plainly "based upon State law." 28 U.S.C. § 1334(c)(2); *see also LJM2 Co–Inv.*, 2003 WL 431684, at *2 (concluding action asserting claims that included breach of fiduciary duty and unjust enrichment "involve[d] only state-law-based claims").

*Third*, this case does not arise under title 11 or arise in a case under title 11. A claim "arises under" title 11 only where "the Bankruptcy Code creates the cause of action or provides the substantive rights invoked." *Principal Growth Strategies*, 615 B.R. at 537 (citation omitted). "Claims 'arise in' a case under title 11 only if the claims 'by their nature, not their particular factual circumstances, could only arise in the context of a bankruptcy case.'" *Id.* (citation omitted). The claims in this action are state law claims, not Bankruptcy Code claims. They do not invoke rights under the Bankruptcy Code, and they exist independent of any bankruptcy proceeding. DCG does not argue otherwise.

*Fourth*, there is no purported basis for federal jurisdiction other than Section 1334(b). DCG does not and cannot contend that there is federal question or diversity jurisdiction here. Plaintiffs' claims do not "aris[e] under the Constitution, laws, or treaties of the United States," *see* 28 U.S.C. § 1331, and there is not complete diversity between Plaintiffs and Defendants, *see* 28 U.S.C. § 1332(a). Plaintiff GGH and Defendant DCG, for instance, both are Delaware residents. DCG's only claim for federal jurisdiction is that the Complaint is "related to" the Genesis bankruptcy proceedings.

*Fifth*, Chancery Court is a state forum of appropriate jurisdiction. *See LJM2 Co–Inv.*, 2003

15

WL 431684, at *3. It has jurisdiction under 10 *Del. C.* § 341 because Plaintiffs assert equitable claims and seek equitable relief. In fact, Chancery Court was established to pursue "the fundamental purpose of an equity court—to provide relief suited to the circumstances when no adequate remedy is available at law." *See* William T. Quillen & Michael Hanrahan, *A Short History of the Delaware Court of Chancery—1792-1992*, 18 Del. J. Corp. L. 819, 820 (1993).

*Sixth*, Plaintiffs' action will be timely adjudicated in Chancery Court. This Court recognizes that Chancery Court "is well known for its expeditious handling of complex civil litigation." *Principal Growth Strategies*, 615 B.R. at 538. Chancery Court is an efficient venue, and its keen familiarity with corporate issues such as breach of fiduciary duty and alter ego will ensure that this case is resolved promptly. Indeed, because Chancery Court has final jurisdiction to hear the claims in the Complaint through a bench trial, Plaintiffs intend to swiftly prosecute their claims and bring this matter to trial for final resolution. By comparison, litigation in the S.D.N.Y. Bankruptcy Court—where the judges oversee urgent and significant Chapter 11 restructurings each day, and where the Constitution requires an additional layer of de novo review of Plaintiffs' claims in the S.D.N.Y. District Court—would delay resolution of Plaintiffs' Delaware common law claims. If this case remains in federal court on "related to" jurisdiction, it will be referred to a bankruptcy court under standing orders of reference in either the S.D.N.Y. or the District of Delaware. *See* Am. Standing Order of Reference Re: Title 11 (S.D.N.Y. Jan. 31, 2012); Am. Standing Order of Reference Re: Title 11 (D. Del. Feb. 29, 2012). A bankruptcy court could not render a final judgment on Plaintiffs' Delaware common law claims; it could issue only "proposed findings of fact and conclusions of law," which a district court would review and determine de novo before entering judgment. *See Stern*, 564 U.S. at 475 (in a proceeding "related to a case under title 11," a bankruptcy judge "may only 'submit proposed findings of fact and

16

conclusions of law to the district court'"); *see also N.Y. Com. Bank v. Pullo*, 2013 WL 494050, at *6 (Bankr. S.D.N.Y. Feb. 7, 2013) (holding that remand to state court "provides a more direct route … to obtain a final adjudication on the merits" than adjudication by the bankruptcy court). Those multiple layers of judicial review would both prolong the proceedings and waste court resources. *See In re Drauschak*, 481 B.R. 330, 347-48 (Bankr. E.D. Pa. 2012) (holding inability of bankruptcy court to enter final judgment on claims favors mandatory and permissive abstention). That is not efficient; it is forum shopping. DCG's motive is to transfer this case to its preferred forum—a preference which should be given no weight. *See, e.g.*, *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012) (for purposes of a motion to transfer, defendant's choice of forum is given less weight than plaintiff's selection).

Accordingly, under 28 U.S.C. § 1334(c)(2), the Court "shall abstain from hearing" Plaintiffs' claims and remand to Chancery Court. *See LJM2 Co–Inv.*, 2003 WL 431684, at *2-4 (concluding mandatory abstention required remand to Chancery Court).

### C.     In the Alternative, the Court Should Remand on Equitable Grounds or Under the Permissive Abstention Doctrine

Even if abstention were not mandatory, remand is especially appropriate under the doctrines of equitable remand and permissive abstention. *See Wells Fargo Bank N.A. v. Johnson*, 2012 WL 1203427, at *4 (D. Del. Apr. 4, 2012) (holding mandatory abstention requirements were met and, in any event, remand was also appropriate "for equitable reasons"). When a "claim or cause of action" is removed under Section 1452(a), the Court "may remand … on any equitable ground." 28 U.S.C. § 1452(b). Likewise, under 28 U.S.C. § 1334(c)(1), courts may, "in the interest of justice, or in the interest of comity with State courts or respect for State law, … abstain[] from hearing a … proceeding … related to a case under title 11." The factors relevant to equitable remand and permissive abstention "are identical." *In re Fed.-Mogul Glob., Inc.*, 282 B.R. 301,

17

314 (Bankr. D. Del. 2002). They include: (1) "the court's duty to decide matters properly before it"; (2) "plaintiffs['] choice of forum as between state and federal courts"; (3) the nature of the claim or claims, that is, "whether purely state law matters which could be better addressed by the state court are involved"; (4) "prejudice to involuntarily removed parties"; (5) "comity considerations"; (6) "economical and/or duplicative use of judicial resources"; and (7) the "effect a remand decision would have on the efficient and economic administration of the estate." *Wells Fargo Bank N.A.*, 2012 WL 1203427, at *3 (citing *Gorse v. Long Neck, Ltd.*, 107 B.R. 479, 482 (D. Del. 1989)). Here, each factor weighs strongly in favor of remand.

### 1. Genesis's Chosen Forum of Chancery Court is Uniquely Appropriate and Can Provide Prompt, Final Relief

The first, second, third, and fifth factors—the Court's duty, Plaintiffs' choice of forum, the nature of the claims, and comity—concern the appropriateness of Plaintiffs' chosen state forum compared to the federal court of removal. Plaintiffs' choice should be respected.

Plaintiffs chose to litigate their Delaware state law claims—concerning the Delaware fiduciary duties owed by Delaware entities, officers, directors, and managers—in a Delaware state court. Not only would remanding to Chancery Court give effect to that choice, but also it would show comity to Delaware state courts. *See Triple T. Constr. v. Township of West Milford*, 2017 WL 123434, at *4 (D.N.J. Jan. 12, 2017) ("Remand would serve the goals of judicial economy and comity by allowing the New Jersey courts to apply New Jersey law."). Moreover, Plaintiffs chose to litigate in Chancery Court, the premier court in the country for adjudicating Delaware corporate affairs. Chancery Court—as well as the entities and individuals doing business in Delaware and their customers—has a strong interest in establishing, maintaining, and enforcing a coherent body of law over claims between Delaware companies, like the claims here. Federal courts, on the other hand, "only deal episodically with [Delaware] law." *In re Topps Co. S'holders*

*Litig.*, 924 A.2d 951, 959 (Del. Ch. 2007); *see Rogers v. Guaranty Tr. Co.*, 288 U.S. 123, 130 (1933) (recognizing that "[i]t has long been settled … that a court—state or federal"—will leave controversies regarding a company organized under the laws of another state "to the courts of the state of the domicile"); *Armstrong v. Pomerance*, 423 A.2d 174, 178 (Del. 1980) (noting the "excessive uncertainty about the meaning of … Delaware law" if federal and state forums interpret Delaware law).

Additionally, Plaintiffs' claims involve important issues of Delaware law regarding fiduciary duties, veil-piercing, and in-kind recovery in the context of an otherwise largely unregulated cryptocurrency industry. These issues—which relate to the "quintessential equitable claim" of breach of fiduciary duty, *see QC Commc'ns Inc. v. Quartarone*, 2013 WL 1970069, at *1 (Del. Ch. May 14, 2013)—should be heard by the Chancery Court, a court of equity that has unique expertise in the law governing Delaware companies. *See MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.*, 1985 WL 21129, at *2 (Del. Ch. Oct. 9, 1985) ("[N]ovel and substantial issues of Delaware corporate law … are best resolved in a Delaware court ….").

Plaintiffs GGH and GGC and Defendants DCG and Ducera are Delaware companies. The individual defendants are or were all officers, directors, and managers of Delaware entities. Delaware's interest in deciding this action should be respected here, where remand would allow the court most familiar with Delaware business law to oversee claims and set important precedent concerning fiduciary duties in the nascent cryptocurrency industry to prevent future abuse of Delaware law.[5] Moreover, preventing Plaintiffs from pursuing their claims in their chosen forum

---

[5] DCG's suggestion that Chancery Court is an inefficient or otherwise inappropriate venue, *see* Notice ¶ 15, is incredible. Aside from Chancery Court's noted efficiency and expertise, there can be no question that a Delaware state court is an appropriate venue. GGC, GGH, DCG, and Ducera all are Delaware companies, and as a general matter, "[a] corporation's decision to incorporate in

would reward DCG's abuse of Delaware business law. DCG operated Genesis as its alter ego for years, harming Genesis in the process. As detailed in the Complaint, Genesis had no ability to push back against DCG's directives and decisions. DCG should not get to continue calling the shots for Genesis after driving Genesis to destruction due to its own self-dealing. Plaintiffs should be allowed to seek recovery for the harm DCG caused them in their chosen court.

### 2.     Litigating in Chancery Court is Fair and Efficient

The fourth and sixth factors—prejudice to involuntarily removed parties and preservation of judicial resources—concern fairness and efficiency. Both strongly favor remand. Keeping this case in federal court would delay its resolution, prejudicing Plaintiffs and wasting judicial resources. As discussed, Chancery Court is known for its speedy and expert adjudication, and Plaintiffs' claims will reach final resolution rapidly in Chancery Court. *See supra* § II.B.

### 3.     This Case Has No Impact on the Post-Confirmation Bankruptcy

The final factor is how, if at all, remand would impact estate administration. Here, remand will have no impact on the administration or operation of the estate. The Plan was confirmed more than a year ago, and it has been effective for over ten months. Indeed, to the extent there is any impact on the estate, remand would preserve estate resources by ensuring litigation in a convenient and efficient forum and recoup damages for the ultimate benefit of Genesis creditors quicker.

Plaintiffs should be allowed to pursue their Delaware state law claims against their Delaware-incorporated parent for breach of Delaware fiduciary duties and egregious abuse of the Delaware corporate form in Delaware Chancery Court. Any other outcome would be inequitable.

### **<u>CONCLUSION</u>**

The Court should remand this case to Chancery Court.

---

a particular state is a rational and legitimate reason to choose to litigate in that state." *Nice Sys., Inc. v. Witness Sys., Inc.*, 2006 WL 2946179, at *2 (D. Del. Oct. 12, 2006).

*Of Counsel*:

Philippe Z. Selendy
Jennifer M. Selendy
Claire E. O'Brien
Laura M. King
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, New York 10104
(212) 390-9000
pselendy@selendygay.com
jselendy@selendygay.com
cobrien@selendygay.com
lking@selendygay.com

Dated: June 13, 2025

*/s/ Rudolf Koch*
Rudolf Koch (#4947)
Robert L. Burns (#5314)
Andrew L. Milam (#6564)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302)-651-7700
Koch@rlf.com
Burns@rlf.com
Milam@rlf.com

*Attorneys for Plaintiffs Genesis Global Holdco, LLC,*
*Genesis Global Capital, LLC, and Genesis Asia*
*Pacific PTE. Ltd.*

21