# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GENESIS GLOBAL HOLDCO, LLC, GENESIS GLOBAL CAPITAL, LLC, and GENESIS ASIA PACIFIC PTE. LTD., <br><br>                                   Plaintiffs <br><br>       v. <br><br> DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, DUCERA PARTNERS, LLC, and MICHAEL KRAMER, <br><br>                                   Defendants. | C.A. No. 25-cv-733-RGA |

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ....................................................................................... ii

TABLE OF DEFINITIONS .......................................................................................... v

PRELIMINARY STATEMENT ................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................... 2

SUMMARY OF ARGUMENT .................................................................................... 3

FACTUAL BACKGROUND ....................................................................................... 5

ARGUMENT .............................................................................................................. 10

I.      The Court Has Subject Matter Jurisdiction Over This Action ............................ 10

II.     Mandatory Abstention Does Not Apply .............................................................. 13

III.    This Court Should Neither Permissively Abstain Nor Equitably Remand .......... 17

IV.     The Court Should Not Defer Ruling on Defendants' Transfer Motion ............... 20

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES[*]

### CASES

PAGE(S)

*Allied Signal Recovery Tr. v. Allied Signal, Inc.*,
    298 F.3d 263 (3d Cir. 2002) ............................................... 3, 14

*In re AstroPower Liquidating Tr.*,
    335 B.R. 309 (Bankr. D. Del. 2005) ............................ 11, 12

*Bank of Am., N.A. v. US Airways, Inc.*,
    2005 WL 3525680 (D. Del. Dec. 21, 2005) ................... 4, 20

*In re Carriage House Condos. L.P.*,
    415 B.R. 133 (Bankr. E.D. Pa. 2009) ............................ 14-15

*In re Essar Steel Minn., LLC*,
    47 F.4th 193 (3d Cir. 2022) ....................................... 10-11

*In re EXDS, Inc.*,
    352 B.R. 731 (Bankr. D. Del. 2006) ............................. 11, 12

*Exec. Benefits Ins. Agency v. Arkison*,
    573 U.S. 25 (2014) ...................................................... 17

*In re Firestar Diamond, Inc.*,
    654 B.R. 836 (Bankr. S.D.N.Y. 2023) ............................... 18

*In re Genesis Glob. Holdco, LLC*,
    660 B.R. 439 (Bankr. S.D.N.Y. 2024) ............................ 8, 18

*In re Insilco Techs., Inc.*,
    330 B.R. 512 (Bankr. D. Del. 2005) ............................. 12-13

*Kurz v. EMAK Worldwide, Inc.*,
    464 B.R. 635 (D. Del. 2011) ................................. 4, 17, 19

*In re Longview Power, LLC*,
    516 B.R. 282 (Bankr. D. Del. 2014) ............................. 3, 13

*Miller v. CareMinders Home Care, Inc.*,
    2014 WL 1779362 (D.N.J. Apr. 30, 2014) ......................... 18

---

[*] In case citations in this brief, unless otherwise stated, all emphasis has been added and all citations and internal quotation marks have been omitted.

*In re MPC Comput., LLC*,
    465 B.R. 384 (Bankr. D. Del. 2012) ......................................................................... 11

*In re Penson Worldwide, Inc.*,
    587 B.R. 6 (Bankr. D. Del. 2018) ........................................................................... 19

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
    615 B.R. 529 (D. Del. 2020) .................................................................................. 15

*In re Prithvi Catalytic, Inc.*,
    2015 WL 1651433 (Bankr. W.D. Pa. Apr. 8, 2015) ............................................ 12

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    170 F. Supp. 2d 1346 (J.P.M.L. 2001) ................................................................. 20

*In re Purdue Pharm. L.P.*,
    Adv. Pro. No. 22-07029, 2024 WL 3023476 (Bankr. S.D.N.Y. June 14, 2024) ................... 18

*Rahl v. Bande*,
    316 B.R. 127 (S.D.N.Y. 2004) .............................................................................. 14

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004) ........................................................................... 10, 12

*In re Semcrude, L.P.*,
    442 B.R. 258 (Bankr. D. Del. 2010) ...................................................... 4, 14, 15, 16

*Sergent v. McKinstry*,
    472 B.R. 387 (E.D. Ky. 2012) ............................................................................... 14

*Shared Network Users Grp., Inc. v. WorldCom Techs., Inc.*,
    309 B.R. 446 (E.D. Pa. 2004) ................................................................................ 17

*In re Shenango Grp. Inc.*,
    501 F.3d 338 (3d Cir. 2007) ..................................................................... 3, 10, 11, 12

*Stoe v. Flaherty*,
    436 F.3d 209 (3d Cir. 2006) .................................................................................. 15

*Street v. The End of the Rd. Tr.*,
    386 B.R. 539 (D. Del. 2008) ............................................................................. 3, 13

*Tipico Prods. Co. v. Dorato Foods, LLC*,
    2007 WL 150481 (D.N.J. Jan. 17, 2007) .............................................................. 14

*In re Tribune Media Co.*,
    902 F.3d 384 (3d Cir. 2018) .................................................................................. 16

*In re TXNB Internal Case*,
    483 F.3d 292 (5th Cir. 2007) ................................................................................. 14

*Wellness Int'l Network, Ltd. v. Sharif*,
    575 U.S. 665 (2015) ........................................................................... 16

*In re Worldcom, Inc. Sec. Litig.*,
    293 B.R. 308 (S.D.N.Y. 2003) ........................................................... 15

<u>STATUTES & RULES</u>

11 U.S.C. § 502(b) .................................................................................. 6
28 U.S.C. § 157(b) ............................................................................ 16, 17
28 U.S.C. § 1334(b) ................................................................ 1, 3, 10, 12
28 U.S.C. § 1334(c)(1) ........................................................................... 17
28 U.S.C. § 1334(c)(2) ............................................................ 1, 3, 13, 14
28 U.S.C. § 1367 ...................................................................................... 3
28 U.S.C. § 1367(a) ............................................................................... 14
28 U.S.C. § 1452(b) ............................................................................... 17

# TABLE OF DEFINITIONS

"**Action**" means this action, *Genesis Global Holdco, LLC v. Digital Currency Group, Inc.*, filed in the Court of Chancery of the state of Delaware, C.A. No. 2025-0532-KSJM (Del. Ch. filed May 13, 2025), and removed to this Court, C.A. No. 1:25-cv-00733-RGA (D. Del. removed June 12, 2025).

"**Actions**" means this Action together with the Adversary Proceeding.

"**Adversary Proceeding**" means the adversary proceeding filed in the Bankruptcy Court, *Genesis Global Capital, LLC v. Digital Currency Group, Inc.*, Adv. Pro. No. 23-10063-shl (Bankr. S.D.N.Y. filed May 19, 2025).

"**Amended Plan**" means Debtors' Amended Joint Chapter 11 Plan filed in the Bankruptcy Case on July 21, 2024 (Doc. No. 1874), excerpts of which were filed in this Action as Exhibit G to Defendants' Notice of Removal, D.I. 1-1 at 218-43.

"**Bankruptcy Case**" means *In re Genesis Global Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. filed Jan. 23, 2023).

"**Bankruptcy Court**" means the United States Bankruptcy Court for the SDNY.

"**Complaint**" means the complaint in this Action, which was filed as Exhibit A to Defendants' Notice of Removal, D.I. 1-1 at 1-205.

"**DCG**" means Defendant Digital Currency Group, Inc.

"**Defendants**" means DCG, Barry Silbert, Michael Kraines, Mark Murphy, Soichiro "Michael" Moro, Ducera and Michael Kramer.

"**Disclosure Statement**" means the Amended Disclosure Statement With Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al. Under Chapter 11 of the Bankruptcy Code filed in the Bankruptcy Case on December 6, 2023 (Doc. No. 1031), excerpts of which were filed in this Action as Exhibit I to Defendants' Notice of Removal, D.I. 1-1 256-72.

"**Ducera**" means Defendant Ducera Partners, LLC.

"**Ex.**" means an exhibit to the accompanying Declaration of Kevin M. Coen in Support of Defendants' Opposition to Plaintiffs' Motion to Remand.

"**GAP**" means Plaintiff Genesis Asia Pacific Pte. Ltd.

"**Genesis**" means Plaintiffs GGH, GGC and GAP.

"**GGC**" means Plaintiff Genesis Global Capital, LLC.

"**GGH**" means Plaintiff Genesis Global Holdco, LLC.

"**LOC**" means the Litigation Oversight Committee created by the Amended Plan.

"**Plaintiffs**" means GGH, GGC and GAP.

"**Remand Motion**" means Plaintiffs' Motion to Remand and Opening Brief in Support of Plaintiffs' Motion to Remand, D.I. 4 and D.I. 5. Citations to D.I. 5 refer to the internal page numbers of the Opening Brief rather than the page numbers of the PDF.

"**SDNY**" means the Southern District of New York.

"**Transfer Motion**" means Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1412 and 28 U.S.C. § 1404(a) and the Opening Brief in Support of Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1412 and 28 U.S.C. § 1404(a), D.I. 18 and D.I. 19.

## PRELIMINARY STATEMENT

In May 2025, Genesis filed this Action in Delaware's Court of Chancery. Four business days later, Genesis filed an Adversary Proceeding against the same Defendants, based on the same core allegations and raising many of the same issues, in the SDNY Bankruptcy Court. That court is also where Genesis filed voluntary petitions for chapter 11 bankruptcy in January 2023, and where it has been litigating against DCG and others for years. Genesis now wants to bring some, but not all, of its claims in the Bankruptcy Court and some, but not all, of its claims in the Court of Chancery. The question is whether this attempt at claim splitting should be permitted. It should not, and the Remand Motion should be denied.

*First*, this Court has jurisdiction over Genesis's claims—and is vested with authority to transfer them to the Bankruptcy Court—because they are "related to" the Bankruptcy Case under 28 U.S.C. § 1334(b). Genesis's claims are inextricably tied to its Amended Plan and Disclosure Statement, as well as the Bankruptcy Court's confirmation order. Those documents describe the exact claims Genesis is pursuing here as its plan's "key component[]," its estates' "most valuable" assets and the "focus" of its current activity necessary to effectuate and administer the plan. That is why the plan expressly retains Bankruptcy Court jurisdiction over them. This Action, moreover, could raise important questions about how to interpret Genesis's plan and related Bankruptcy Code provisions, issues that are best addressed by the Bankruptcy Court.

*Second*, this Action does not trigger mandatory abstention under Section 1334(c)(2). Mandatory abstention is inapplicable to litigation, such as this Action, commenced *after* a debtor files for bankruptcy. Genesis also cannot satisfy the prerequisites for abstention. Genesis is foreclosed from seeking mandatory abstention because it agreed with DCG to litigate exclusively in New York in the promissory note cited as the basis for nearly all of Plaintiffs' claims. This Action also could have been filed in federal court, along with the Adversary Proceeding,

because, in addition to being related to the Bankruptcy Case, the claims are covered by supplemental jurisdiction. And remand would make it all but impossible to timely adjudicate this Action in state court, given that the same legal, factual and discovery issues will be subject to serial litigation and relitigation in both the Court of Chancery and the Bankruptcy Court. Even more concerning, asking two courts to render decisions on the same factual and legal issues—such as the solvency of Genesis at various points of time, which is a key allegation in both Actions—creates an inherent risk of inconsistent rulings between the two courts.

*Third*, the Court should not permissively abstain or equitably remand this Action. Plaintiffs chose to file their bankruptcy in New York, elected to litigate there for years and filed their recent Adversary Proceeding there, too. The Bankruptcy Court is thus an appropriate venue, and Plaintiffs choice of the Court of Chancery is entitled to little deference. There also is no reason that Plaintiffs' claims should not be litigated before the Bankruptcy Court, which regularly applies Delaware law (applicable, in any event, to only a subset of Plaintiffs' claims). The Bankruptcy Court is far more familiar with the parties and the issues than the Court of Chancery, enabling it to more efficiently dispose of the Actions. Interests of judicial economy further weigh strongly in favor of consolidating these two Actions in the Bankruptcy Court.

Accordingly, the Remand Motion should be denied, and Defendants' Transfer Motion should be granted.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed this Action in the Delaware Court of Chancery on May 13, 2025 and served Defendants on May 16, 2025. (D.I. 1 ¶ 1; D.I. 1-1 at 342, 346, 350, 354, 358.) DCG, with the consent and joinder of all Defendants, timely removed the Action to this Court on June 12, 2025. (D.I. 1 at 1 n.2, ¶ 32.) Plaintiffs filed their Remand Motion on June 13, 2025. Defendants filed their Transfer Motion on June 20, 2025.

2

## SUMMARY OF ARGUMENT

1.      This Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1334(b)
because it is "related to" Genesis's Bankruptcy Case.  Plaintiffs are the debtors, the claims are
estate assets, and the recoveries (if any) are necessary to make further distributions to creditors.
The claims are specifically set forth in Genesis's Amended Plan, the related disclosure statement
and the Bankruptcy Court's confirmation order, all of which recognize these claims as the key
focal point of Plaintiffs' current activity.  The plan sets aside $70 million in estate assets to fund
this Action, entrusts its prosecution to a plan-created and creditor-selected "PA Officer" and
LOC and retains jurisdiction over these very claims in the Bankruptcy Court.  The claims here
also could raise important bankruptcy law issues that the Bankruptcy Court should decide in the
first instance.  This Action thus bears a "close nexus" to Plaintiffs' bankruptcy and will have
more than an incidental impact on the administration and effectuation of the Amended Plan and
distributions to creditors.  *See, e.g.*, *In re Shenango Grp., Inc.*, 501 F.3d 338, 343 (3d Cir. 2007).

2.      Mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply to this Action.
*First*, mandatory abstention only applies to actions commenced *before* a debtor's bankruptcy but
this Action was filed *after* Genesis was already in bankruptcy.  *In re Longview Power, LLC*, 516
B.R. 282, 294 (Bankr. D. Del. 2014).  Moreover, Plaintiffs have waived any argument for
mandatory abstention by agreeing to exclusive New York choice of forum provisions with
Defendants.  *Street v. The End of the Road Tr.*, 386 B.R. 539, 547 (D. Del. 2008).  *Second*,
"related to bankruptcy" jurisdiction is not the sole basis for asserting the claims in this Action in
federal court because Plaintiffs also could have—and should have—asked the Bankruptcy Court
in the Adversary Proceeding to exercise supplemental jurisdiction under 28 U.S.C. § 1367.  *See,
e.g.*, *Allied Signal Recovery Trust v. Allied Signal, Inc.*, 298 F.3d 263, 266, 268-69 (3d Cir.
2002).  *Third*, Plaintiffs make no showing (as they must) that this Action can expeditiously be

adjudicated in the Court of Chancery. Remand all but guarantees delay and untimely adjudication because it would ensure that related claims cannot be adjudicated in a single forum and would be subject to potentially inconsistent rulings, duplicative motion practice and delay. *See, e.g.*, *In re Semcrude, L.P.*, 442 B.R. 258, 274-75 (Bankr. D. Del. 2010).

3.      The Court should neither equitably remand nor permissively abstain from hearing this Action. Plaintiffs' chose to file their Bankruptcy Case in the SDNY, have repeatedly litigated related proceedings there, and even filed their duplicative Adversary Proceeding there just days after filing this Action. Their choice of the Court of Chancery as the preferred forum thus warrants no deference. The Bankruptcy Court also is far more familiar with the parties and the issues presented by this Action, and therefore can resolve it more efficiently than the Court of Chancery—and certainly more efficiently than permitting two closely related Actions to proceed in two different courts. The potential applicability of Delaware law to a subset of Plaintiffs' claims does not change that, as the Bankruptcy Court regularly applies Delaware law and is at least as familiar with the New York law (and foreign law) principles applicable to the majority of Plaintiffs' claims. Furthermore, the Bankruptcy Court is a more convenient and efficient forum for the parties, their counsel and potential witnesses—all of whom are centered in or around New York. *See, e.g.*, *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 646-48 (D. Del. 2011).

4.      This Court should not defer ruling on Defendants' Transfer Motion until after ruling on remand. This Court should either decide both motions together given the substantial overlap between them, or it may transfer this Action to the SDNY to permit the Bankruptcy Court, with its greater familiarity with the relevant considerations, to decide the Remand Motion. *See, e.g.*, *Bank of Am., N.A. v. U.S. Airways, Inc.*, 2005 WL 3525680 (D. Del. Dec. 21, 2025).

## FACTUAL BACKGROUND

Plaintiffs are wholly owned subsidiaries of DCG.[1]  (D.I. 1 ¶ 6 & n.3.)  Defendants are

DCG, its current and former officers (Silbert, Kraines, Murphy), its financial advisor (Ducera,

Ducera's CEO (Kramer), and Genesis's former CEO (Moro).  (D.I. 1 ¶ 16; D.I. 1-1 at 18-22

¶¶ 23-25, 27-33.)  Plaintiffs formerly were in the business of lending, borrowing, and trading

crypto assets (e.g., Bitcoin) and fiat currency (e.g., U.S. dollars) primarily to and from

institutions and high net worth individuals.  (D.I. 1 ¶ 6.)  During 2022, crypto asset prices

plummeted, and the digital asset industry experienced multiple unforeseeable and unprecedented

shocks.  (*Id.* ¶ 7.)  Some of Genesis's largest borrowers, Three Arrows Capital (a large crypto

hedge fund) and Alameda (a large crypto trading firm affiliated with the FTX exchange),

collapsed in June and November 2022, defaulting on billions of dollars' worth of loans from

Genesis as the resulting widespread market contagion further drove down crypto prices.  (*Id.*)

Despite DCG's substantial, good-faith efforts to preserve Genesis as a going concern—including

hundreds of millions of dollars in equity infusions, loan forgiveness and loan repayments—

Plaintiffs could not remain a going concern and failed to repay their loans.  (*Id.*)  Several months

after these events, Plaintiffs—all Delaware LLCs—chose to file their voluntary Chapter 11

bankruptcy petitions in the SDNY Bankruptcy Court on January 19, 2023.  (*Id.* ¶ 8.)

The Bankruptcy Case has been heavily litigated.  Genesis litigated five adversary

proceedings in the Bankruptcy Court—including three separate proceedings against DCG and its

subsidiaries.  (D.I. 1 ¶ 9 & n.4.)  DCG and Genesis also produced substantial discovery and

sought Bankruptcy Court resolution of related disputes.  (Ex. A.)

---

[1] While DCG remains the record owner of 100% of Plaintiffs' equity, it played a limited role in selecting Plaintiff GGH's current board (*see* D.I. 1-1 at 238-40 (§§ IV.B.7, 9)), and management of Plaintiffs is vested in a creditor-selected PA Officer (*see infra* at 8.)

On November 28, 2023, Plaintiffs filed an Amended Joint Chapter 11 Plan and then a further Amended Plan on July 21, 2024, which became effective as of August 2, 2024.  (D.I. 1-1 at 218-43.)  The Amended Plan contains "Distribution Principles" that govern the distribution of Genesis's assets.  (Ex. B at Ex. A.)  Under these principles, Genesis does not just repay the value of the assets it owed when it filed for bankruptcy in 2023, defined as the "Petition Date Value." (*Id*. at 2.)  Instead, Genesis agreed to repay the owed assets "in-kind," regardless of whether the present value of those assets in any way corresponds to the Petition Date Value.  (*Id*.)  For instance, if Genesis owed a creditor one bitcoin in 2022 worth $20,000, Genesis would not just repay $20,000.  Rather, Genesis would repay one bitcoin or its present value, even if that present value is worth more than $100,000, giving the creditor a potential windfall result.

DCG objected to these Distribution Principles in the Bankruptcy Case.  Among other things, DCG argued that in-kind repayment without regard to value violated Section 502(b) of the Bankruptcy Code, which requires the Bankruptcy Court to "determine the amount of [claims] in lawful currency of the United States," i.e., dollars, "as of the date of filing of the petition," i.e., the Petition Date Value, *see* 11 U.S.C. § 502(b).  (Ex. C at 11-24.)  The Bankruptcy Court declined to reach the substance of this objection on the ground that DCG lacked standing.  (Ex. D at 72.)  It found that DCG's equity interest would not entitle it to participate in any portion of Plaintiffs' estate assets, regardless of how Genesis's debts were valued, because Genesis's liabilities exceeded its assets, even if the liabilities were valued using their Petition Date Values. (*Id*.)  Thus, this question remains unanswered.

As a result of the significant contributions that DCG made to Genesis in an unsuccessful attempt to keep it in business, as well as the significant recovery in crypto asset values, Plaintiffs' creditors have been remarkably successful in recovering their pre-petition claims in

the Bankruptcy Case. Indeed, Plaintiffs have already repaid over 100% of the Petition Date

Value of their creditors' claims. (D.I. 1 ¶¶ 7, 12.) A relatively small number of creditors,

however, hope to use Genesis as a means to extract from DCG and the other Defendants the

further market value increases experienced by Bitcoin and other digital currencies in the years

since Genesis's bankruptcy filing. (*Id.* ¶ 13.) In essence, they want Defendants to guarantee

them the purported lost profits they might have realized from subsequent increases in crypto

asset values had Genesis repaid them in 2022, and had they retained the assets until today.

On December 6, 2023, Plaintiffs filed their Disclosure Statement with respect to their

Amended Plan. (*Id.* ¶ 10.) On December 29, 2023, Plaintiffs filed their first "Plan Supplement,"

which contained a 10-page exhibit describing the causes of action expressly reserved by the

Debtors, including "all Causes of Action that may be brought . . . against any DCG Party

(including DCG and Barry Silbert) or against Ducera LLC and/or its current or former

employees, directors, officers, equity holders, and agents (including) and related parties,

including claims for alter ego, preference, fraudulent conveyance, breach of fiduciary duty,

equitable subordination, recharacterization, and improper setoff, breach of contract, and claims

sounding in fraud or aiding and abetting fraud." (Ex. E at 11.)

The claims in this Action feature prominently in the Amended Plan and Disclosure

Statement. (D.I. 1 ¶¶ 5, 14, 25.) The Disclosure Statement, for example, describes Genesis's

pursuit of the "Retained Causes of Action"—which include "all causes of action or other claims

against . . . any of the DCG Parties"—as one of the Amended Plan's "key components," and

calls "the estates' claims against the DCG Parties" their "most valuable Distributable Assets."

(Ex. F at 2-3, 119.) The Disclosure Statement goes on to describe in detail Plaintiffs' "Potential

Claims Against the DCG Parties," including claims based, among other things, on alter-ego

liability, the promissory note issued by DCG in June 2022 and various transactions undertaken on September 29, 2022 (D.I. 1-1 at 265-72)—all focal points of the Complaint in this Action (*see, e.g., id.* at 13-14 ¶¶ 14-15, 56-82 ¶¶ 92-135, 90-122 ¶¶ 147-96).

Genesis also set aside $70 million of estate assets in a reserve to fund litigation brought by the creditor-appointed PA Officer (i.e., plan administrator) and LOC against Defendants and others in accordance with the Amended Plan. (D.I. 1 ¶¶ 6 n.3, 13, 18, 26-27; D.I. 1-1 at 227-28 (§§ I.A.164, 171), 230-33 (§ IV.A.1-2, A.4), 234-35 (§ IV.B.2.c).) The "Retained Causes of Action" asserted here likewise are assets of Plaintiffs' bankruptcy estates, and recoveries (if any) will be distributed to Plaintiffs' creditors pursuant to the Distribution Principles. (D.I. 1 ¶¶ 25, 28; D.I. 1-1 at 223 (§ I.A.19), 224-25 (§ I.A.35), 226 (§ I.A.78), 229 (§ I.A.208), 235-36 (§ IV.B.3).) Under the Amended Plan, the Bankruptcy Court retains express jurisdiction to "adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor [i.e., Plaintiffs in this Action]"—expressly including the Retained Causes of Action asserted here. (D.I. 1 ¶ 14; D.I. 1-1 at 242 (§ XI.7), 243 (§ XI.13).)[2]

In confirming the Amended Plan, the Bankruptcy Court relied on Plaintiffs' intention to pursue the claims asserted in this Action, recognizing that "litigation aimed at DCG" was "the contemplated focus" of Genesis's "post-confirmation activity" under the plan. *In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 511 (Bankr. S.D.N.Y. 2024). The Bankruptcy Court specifically found that the Amended Plan satisfied all Bankruptcy Code requirements, in part, because it "provided for the preservation of Causes of Action and the appointment of the [LOC] and the PA Officer to pursue such Retained Causes of Action." (Ex. G ¶ 25.)

---

[2] As provided in the Amended Plan, the Debtors automatically become the "Wind-Down Debtors" on and after the effective date and are not separate entities. (D.1-1 at 236 (§ IV.B.4); *see also* Ex. B at 30-31 (§ I.A.236, 240-42), 34 (§ I.F).)

Plaintiffs filed this Action on May 13, 2025 in the Delaware Court of Chancery, asserting claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, unjust enrichment, fraud, negligent misrepresentation, and alter ego.  (D.I.1-1 at 136-203.)  Four business days later, GGC and GAP—two of the Plaintiffs in this Action—filed an Adversary Proceeding in the Bankruptcy Court against DCG, Silbert, Ducera and Kramer (all of whom are Defendants in this Action), as well as other defendants affiliated with DCG, related to Mr. Silbert, or affiliated with that relative.  (D.I. 1 ¶¶ 3-5, 15; D.I. 1-1 at 274-338.)  The Adversary Proceeding asserts claims for preference, voidable transfer, fraudulent transfer, recovery of property, and disallowance of bankruptcy claims.  (D.I. 1 ¶ 15; D.I. 1-1 at 279 ¶ 9.)

As described in Defendants' Notice of Removal, both Actions involve largely the same Plaintiffs and Defendants and are based on substantially overlapping allegations.  (D.I. 1 ¶ 17; *compare* D.I. 1-1 at 18-22 ¶¶ 23-25, 27-33, *with id.* at 281-84 ¶¶ 18-21, 28-29.)  Both allege, among other assertions, that:  (i) Genesis lacked adequate risk management practices and concentrated its loans among a small number of counterparties (*compare* D.I. 1-1 at 50-62 ¶¶ 81-102 *with id.* 288-94 ¶¶ 47-63); (ii) Genesis and DCG mischaracterized a $1.1 billion promissory note that DCG provided to Genesis in June 2022 to shore up its balance sheet (*compare id.* 93-97 ¶¶ 154-60, *with id.* 299-301 ¶¶ 80-82); and (iii) DCG and Genesis misrepresented the nature of equity infusions and loan forgiveness by DCG and its subsidiaries (*compare id.* 114-16 ¶¶ 185-88, *with id.* 306-07 ¶¶ 103-06).  Both Actions require resolution of many of the same legal and factual questions, including the date by which Genesis became insolvent (*compare, e.g., id.* 5 ¶ 1, 11 ¶ 9, 64-67 ¶¶ 107-11, 138 ¶ 219, 141-42 ¶ 225, *with id.* 276-77 ¶ 3, 291-92 ¶ 56, 307 ¶ 106, 317 ¶ 153), and whether the same defendants improperly withdrew assets from Genesis following its alleged insolvency (*compare id.* 12-13 ¶ 13, 71 ¶ 116, 75 ¶ 124, 85-86 ¶ 138, 117-18 ¶ 189, *with id.*

9

275-76 ¶ 1, 303-06 ¶¶ 91-93, 97-102, 310-12 ¶¶ 125-34). And both Actions seek the same relief—compelling certain Defendants to return assets in kind that they allegedly misappropriated from Genesis. (*Compare*, *e.g.*, *id.* 204 ¶ 367, *with id.* 322-23 (¶ (d).) Accordingly, the Adversary Proceeding and this Action present the courts with the *same* factual and legal issues.

## ARGUMENT

The Court should deny Genesis's Remand Motion. The Court has subject matter jurisdiction over this Action—and authority to transfer it to the Bankruptcy Court—under 28 U.S.C. § 1334(b), as this matter is critical to the administration of Genesis's estate and may require the Court to interpret key provisions of Genesis's Amended Plan and/or related Bankruptcy Code provisions. Moreover, mandatory abstention does not apply. The Court also should not permissively abstain and/or equitably remand this action, and instead should allow this action to remain in federal court to proceed in concert with the related Adversary Proceeding, which arises out of the same alleged facts and circumstances as the instant matter.

## I. The Court Has Subject Matter Jurisdiction Over This Action

This Action qualifies for "related to bankruptcy" jurisdiction under 28 U.S.C. § 1334(b). (D.I. 1 at ¶¶ 20-29.) "[B]ankruptcy court jurisdiction does not disappear" after confirmation. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004). Rather, "related to" jurisdiction exists, where, as here, the action has a "close nexus" to the bankruptcy plan, "as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan." *Id.* at 168-69. A close nexus also exists where, as here, the debtor is "a party to the dispute" and the dispute would have had a "more than incidental" effect "on the debtor's liabilities." *See In re Shenango*, 501 F.3d at 344; *see In re Essar Steel Minn., LLC*, 47 F.4th 193, 197 (3d Cir. 2022) ("related matters" include state-law claims "imported into the bankruptcy because of their impact on the size of the debtor's estate, and hence the distribution to the

10

debtor's creditors").  Further, there is a close nexus where—again as here—the plan specifically

describes the relevant claims and retains jurisdiction over them.  *In re MPC Comput., LLC*, 465

B.R. 384, 393-94 (Bankr. D. Del. 2012) (finding "close nexus where the plan describes the facts

from which the cause of action arose."); *In re EXDS, Inc.*, 352 B.R. 731, 739 (Bankr. D. Del.

2006) ("The fact that the Plan provided for the retention of jurisdiction for the explicit purpose of

pursuing these pre-petition claims is sufficient to warrant jurisdiction."), *abrogated on other*

*grounds by In re Seven Fields Dev. Corp.*, 505 F.3d 237 (3d Cir. 2007); *In re AstroPower*

*Liquidating Tr.*, 335 B.R. 309, 325 (Bankr. D. Del. 2005) (similar).  Courts also find a close

nexus where an action requires them to interpret a debtor's bankruptcy plan—again, as this

Action requires.  *In re Shenango*, 501 F.3d at 344 (action involved "interpretation of the Plan's

provision relating to the debtor's liability" to creditors).

The requisite "close nexus" exists here.  Plaintiffs are the Debtors.  The claims are "key

components" of the Amended Plan, Plaintiffs' "most valuable" assets and the "focus" of their

post-confirmation conduct, on which the Bankruptcy Court relied at confirmation.  The claims

(i) are funded out of estate assets (the Litigation Reserve), (ii) are overseen by plan-created

officers and bodies (the PA Officer and LOC), and (iii) will have more than an incidental effect

on Plaintiffs' ability to discharge their liabilities to creditors.  (*Supra* at 7-8).  Indeed, the plan

cannot be effectuated without these claims.  (*Id.*)  The Amended Plan, with its Plan Supplement

and Disclosure Statement, specifically describes the Retained Causes of Action that Plaintiffs are

pursuing here and provides for the Bankruptcy Court to retain jurisdiction over those claims.

(*Id.*)  This Action turns, in part, on important bankruptcy law issues relating to the Amended

Plan, such as whether Section 502 of the Bankruptcy Code limits how much debtors (and their

creditors) can recover, given that the creditors already have fully recovered their out-of-pocket

loss as measured in dollar value as of the time Plaintiffs filed for bankruptcy. (*Supra* at 6-7.) Because Plaintiffs' claims were "manifestly contemplated by the Plan, litigating them serves the implementation, consummation, [and] execution of the Plan," and therefore a close nexus exists. *EXDS*, 352 B.R. at 738.

The Third Circuit's decision in *Resorts* does not foreclose jurisdiction here (*Contra* D.I. 5 at 11-13.) The close-nexus test was not satisfied there because a litigation trust—not the debtor—sued nearly seven years after plan confirmation for alleged malpractice arising from a post-confirmation audit. *Resorts Int'l*, 372 F.3d at 159, 169-70. In stark contrast, Plaintiffs here *are* the Debtors, the Action arose from alleged pre-petition conduct, the Bankruptcy Court specifically retained jurisdiction over the claims, the Action will have a "more than incidental" effect on Genesis's distribution to its creditors and it may require a court to interpret the Bankruptcy Code and the Amended Plan. *See In re Shenango*, 501 F.3d at 344 (distinguishing *Resorts* on these bases); *In re Prithvi Catalytic, Inc.*, 2015 WL 1651433, at *5-6 (Bankr. W.D. Pa. Apr. 8, 2015) (similar).

Nor does *Resorts* render the Amended Plan's retention of jurisdiction "irrelevant." (*Contra* D.I. 5 at 13.) While a plan's generic retention provision cannot support jurisdiction over a claim that arose "almost seven years after Reorganization Plan confirmation," *Resorts Int'l*, 372 F.3d at 159, 161, since *Resorts*, numerous courts in this Circuit have held that there *is* a close nexus where, as here, a plan "specifically describes an action over which the Court had 'related to' jurisdiction pre-confirmation and expressly provides for the retention of such jurisdiction." *AstroPower*, 335 B.R. at 325.[3] Thus, this Court has jurisdiction under 28 U.S.C. § 1334(b).

---

[3] For this reason, Genesis's reliance on *In re Insilco Technologies* also is misplaced. There, the court only found that it lacked jurisdiction over claims that were not "specifically described in the Disclosure Statement and the Plan." *In re Insilco Techs., Inc.*, 330 B.R. 512, (….continued)

## II.    Mandatory Abstention Does Not Apply

Genesis asserts that Section 1334(c)(2)'s mandatory abstention provision requires this Court to decline to hear this Action and remand (D.I. 5 at 14-17), but this contention also fails.

### A.    This Action Was Filed Post-Bankruptcy and Plaintiffs Waived Mandatory Abstention Through a New York Choice of Forum Clause

Mandatory abstention applies only to litigations filed *before* bankruptcy.  *See In re Longview Power*, 516 B.R. at 295 (collecting cases).  For good reason:  a contrary rule "could create flawed incentives, encouraging parties to take the risk of commencing post-petition litigation, in hopes of convincing a bankruptcy court to defer to that other forum."  *Id.*  Section 1334(c)(2) does not require abstention from this post-petition Action.

Regardless, Plaintiffs waived the right to seek mandatory abstention by agreeing to litigate exclusively in New York in an agreement underlying their claims in this Action.  The Complaint cites DCG's promissory note to Genesis 114 times, including as the explicit basis for at least seven causes of action.  (*See, e.g.*, D.I. 1-1 at 142-43 ¶ 226, 146 ¶ 233, 150 ¶ 241, 154 ¶ 248, 158 ¶ 256, 162-63 ¶ 267, 165 ¶ 275, 172 ¶ 292, 175-76 ¶ 298, 179 ¶ 304, 181-82 ¶ 309, 193-94 ¶ 344, 195 ¶ 346, 196-97 ¶ 349, 203 ¶ 365.)  The note includes a broad choice of forum clause in which DCG and GGC agree to "submit to the exclusive jurisdiction of the State and Federal courts located in the state of New York."  (Ex. H § 2.2.)  This "valid forum selection clause[] . . . constitute[s] a waiver of any right to mandatory abstention under § 1334(c)(2)." *Street*, 386 B.R. at 547.

### B.    Supplemental Jurisdiction Over the Claims Defeats Mandatory Abstention

Next, mandatory abstention does not apply because this Action *could* have been

525 (Bankr. D. Del. 2005).  Here, by contrast, the claims *are* specifically described in both.

commenced in federal courts as part of Plaintiffs' Adversary Proceeding without reliance on "related to" jurisdiction under Section 1334. *See* 28 U.S.C. § 1334(c)(2). Specifically, the claims in this Action are subject to supplemental jurisdiction because they are based on the same case or controversy as the claims in the Adversary Proceeding. *See* 28 U.S.C. § 1367(a). Supplemental jurisdiction defeats mandatory abstention. *See Allied Signal Recovery Trust*, 298 F.3d at 266, 268-69 (mandatory abstention did not apply to case asserting both bankruptcy code claims and state law claims subject to supplemental jurisdiction); *Sergent v. McKinstry*, 472 B.R. 387, 404 (E.D. Ky. 2012) ("Because this Court can exercise supplemental jurisdiction . . . [t]he Bankruptcy Court was not required to abstain[.]") (citing *In re TXNB Internal Case*, 483 F.3d 292 (5th Cir. 2007)); *Tipico Prods. Co., Inc. v. Dorato Foods, LLC*, 2007 WL 150481, at *3 n.2 (D.N.J. Jan. 17, 2007) (same); *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004) (same).

### C. The Court of Chancery Cannot Timely Adjudicate the Claims

Plaintiffs' claim splitting all but ensures that this Action cannot be timely adjudicated in the Court of Chancery. Plaintiffs make the conclusory assertion that the Court of Chancery is known for "expeditious handling of complex civil litigation" (D.I. 5 at 16), but, be that as it may, it is *Plaintiffs*' burden "to *show* that [this] [A]ction[] can be timely adjudicated in state court," and, "[a] naked assertion that the matter can be timely adjudicated in the state court, without more is insufficient to satisfy this requirement." *Semcrude*, 442 B.R. at 274 (alteration in original). Plaintiffs make no effort to satisfy their burden. They do not submit any evidence— and cannot argue—that this Action has advanced beyond the initial phase in the Court of Chancery, that it is materially more advanced than the Adversary Proceeding in the Bankruptcy Court, or that there is any reason to believe it will be adjudicated before the Adversary Proceeding. *See In re Carriage House Condo. L.P.*, 415 B.R. 133, 145 (Bankr. E.D. Pa. 2009) (timely adjudication requirement not satisfied where "there was no competent evidence whatever

in the record" as to state court's expeditiousness).

Further, mandatory abstention requires more than just showing that the state court proceeding is more advanced or can proceed quickly. "[T]imeliness in this context must be determined with respect to needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed." *See Stoe v. Flaherty*, 436 F.3d 209, 219 (3d Cir. 2006). Plaintiffs' claim-splitting strategy makes timely adjudication all but impossible by effectively guaranteeing additional complexity and delay in both Actions. It incentivizes the parties to serially litigate and then relitigate the same dispositive legal and factual issues (and non-dispositive discovery issues) in both courts, in hopes of using a favorable ruling in one court to obtain a better outcome in the other.[4] The inevitable result would be delay, duplication, waste of resources and increased expenses for both courts and all parties. *See, e.g.*, *Semcrude,* 442 B.R. at 275 ("[I]t is simply not plausible to suggest that these three actions will be administered promptly and efficiently in separate proceedings and in different jurisdictions."); *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y. 2003) ("If each of the actions removed from state court were remanded, it would lead to duplicative motion practice and repetitive discovery, as well as requiring common issues to be resolved separately by courts across the country.").[5] Transferring this Action to the Bankruptcy Court—not remanding it to

---

[4] A ruling by one court on an issue could even estop the other from adjudicating it at all. For instance, if the Court of Chancery finally ruled that Genesis only became insolvent in November of 2022, under principles of res judicata and/or collateral estoppel, the Adversary Proceeding would have to be dismissed in full or stayed pending appellate review in Delaware. Even then, Plaintiffs doubtless would argue that the Adversary Proceeding should proceed, leading to even more litigation and further impeding timely adjudication of these Actions.

[5] *Principal Growth Strategies, LLC v. AGH Parent LLC*, 615 B.R. 529, 538 (D. Del. 2020), cited by Plaintiffs (D.I. 5 at 16), is thus inapposite because there—unlike here—"denial of the remand motion [would] not result in consolidation of this action with the SDNY actions," because "there [was] no pending motion to transfer."

15

the Court of Chancery—is what will produce timely and efficient adjudication.

The Bankruptcy Court is best suited to—and, in fact, is the only court that *can*—timely adjudicate both Actions. The Bankruptcy Court has presided over the Bankruptcy Case for years, and the parties have already engaged in extensive adversary litigation and discovery there. (*Supra* at 5.) Thus, the Bankruptcy Court is better positioned to address disputes than the Court of Chancery, which is not yet familiar with the facts and issues. *See Semcrude*, 442 B.R. at 275 ("[T]he Court's familiarity with the parties and the issues, forged over the past several years, is likely to aid in the prompt and efficient adjudication of the disputes[.]"). Even more, Plaintiffs' Adversary Proceeding—as an acknowledged "core proceeding"—must proceed in federal court (and will automatically be referred to the Bankruptcy Court). *See* 28 U.S.C. § 157(b). Only the Bankruptcy Court, therefore, can adjudicate both Actions together. The Bankruptcy Court also is more convenient to the parties, their businesses and most of the potential witnesses, all of whom are located in and around New York—including Genesis's former employees and witnesses associated with Gemini, which assigned claims Genesis is pursuing here. (*Supra* at 4.)

Plaintiffs suggest that the Bankruptcy Court cannot timely adjudicate this Action's state-law claims because it cannot enter a final judgment but instead will have to issue a report and recommendation to be reviewed *de novo* by the district court. (D.I. 5 at 16-17.) That is incorrect; parties can consent to entry of a final judgment by the Bankruptcy Court on any claim, and Genesis so consented in the Adversary Proceeding (D.I. 1-1 at 281 ¶ 16). *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 683-84, 686 (2015) (parties can consent, expressly or impliedly, to bankruptcy court's final adjudication of any claim); *In re Tribune Media Co.*, 902 F.3d 384, 395-96 (3d Cir. 2018) (proof of claim is "knowing[] and voluntar[y] submi[ssion] to the Bankruptcy Court's deciding [the] claims"). Genesis's cynical (and nakedly tactical)

16

assertion that it will decline to do so if this Action is transferred is not a basis for abstention.[6]  In

any event, district court review comes into play only if a party objects to the Bankruptcy Court's

decision.  That Bankruptcy Court decisions—like the Court Chancery's decisions—are, in effect,

appealable does not foreclose timely adjudication in the Bankruptcy Court.

## III.  This Court Should Neither Permissively Abstain Nor Equitably Remand

Neither equitable remand nor permissive abstention under Sections 1452(b) or 1334(c)(1)

is appropriate.  Courts deciding these issues analyze "1. the court's duty to decide matters

properly before it; 2. plaintiff's choice of forum as between state and federal courts; 3. nature of

the claim or claims, that is, whether purely state law matters which could be better addressed by

the state court are involved; 4. prejudice to involuntarily removed parties; 5. comity

considerations; 6. economical and/or duplicative use of judicial resources and 7. effect a remand

decision would have on the efficient and economic administration of the estate."  *Kurz*, 464 B.R.

at 645-46; *Shared Network Users Grp., Inc. v. WorldCom Techs., Inc.*, 309 B.R. 446, 450-51

(E.D. Pa. 2004).  These factors all cut against remand.

Citing the first, second, third, and fifth factors, Plaintiffs contend that their choice of the

Court of Chancery "should be respected," pointing out that certain parties are Delaware entities

and that Delaware law governs some of their claims.  (D.I. 5 at 18-20.)  Plaintiffs, however, all

but ignore the Adversary Proceeding they filed in the Bankruptcy Court just days after filing this

---

[6] Plaintiffs claim that they only asserted claims in the Adversary Proceeding on which the Bankruptcy Court can issue a final judgment.  That is wrong.  They asserted state-law preference and fraudulent transfer claims, which, notwithstanding "core" status under 28 U.S.C. § 157(b), cannot be finally determined by a bankruptcy court absent consent by all parties and are subject to *de novo*, district court review.  *See, e.g.*, *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 30, 35-36 (2014).  Not all Defendants in the Adversary Proceeding filed proofs of claim or otherwise consented to Bankruptcy Court jurisdiction (*see, e.g.*, D.I. 1-1 at 275, 320-21 (e.g., Luno), undermining Plaintiffs' stated rationale for their claim splitting (D.I. 5 at 13).

Action, and that litigating both Actions in separate fora would be massively duplicative and wasteful of judicial resources. (*Supra* at 9-10.) Further, Plaintiffs elide their choice to file their Bankruptcy Case in the Bankruptcy Court and litigate in that court—including in prior adversary proceedings against DCG and its affiliates—for over two years. (*Supra* at 5.) Plaintiffs' choice of forum is thus entitled to no deference—particularly given their express agreement to litigate with Defendants exclusively in New York (*see supra* at 13). *See, e.g.*, *Miller v. Careminders Home Care, Inc.*, 2014 WL 1779362, at *4 (D.N.J. Apr. 30, 2014) (little deference to plaintiff's choice of forum "when a related action is pending in a different forum").

While Plaintiffs argue that a Delaware court should hear this Action because it is familiar with Delaware fiduciary duty law (D.I. 5 at 19), Plaintiffs disregard that Delaware law applies, at most, to a limited subset of their claims. For example, Delaware law does not apply to claims involving GAP, which is incorporated in Singapore (D.I. 1-1 at 19 ¶ 25), and New York law likely governs Plaintiffs' fraud and negligent misrepresentation claims because the alleged conduct occurred in New York and involves entities headquartered in New York—including Plaintiffs and Gemini, the assignor of the fraud claims. (*Id.* at 18-19 ¶¶ 23-24, 26.) Plaintiffs contend that New York courts address Delaware law only "episodically" (D.I. 5 at 18), but that, too, is wrong. The Bankruptcy Court regularly addresses the same Delaware law issues presented here—including *in the Bankruptcy Case itself. See Genesis Glob. Holdco, LLC*, 660 B.R. at 509-11 (Lane, J.) (applying Delaware corporate governance law in confirming Amended Plan); *In re Purdue Pharma L.P.*, Adv. Pro. No. 22-07029, 2024 WL 3023476, at *4-5 (Bankr. S.D.N.Y. June 14, 2024) (Lane, J.) (Delaware law); *In re Firestar Diamond, Inc.*, 654 B.R. 836, 874-75 (Bankr. S.D.N.Y. 2023) (Lane, J.) (Delaware veil-piercing law). And, while this Action presents potentially complex issues of *bankruptcy* law, Plaintiffs' Delaware law claims "are

neither novel nor complex" and readily "can be adjudicated by the bankruptcy court." *Kurz*, 464 B.R. at 646. The Bankruptcy Court, moreover, will have to decide the issues at the heart of this case regardless of whether this Court remands this Action because the Adversary Proceeding raises many of the same questions of law and fact.

Plaintiffs assert that the fourth and sixth equitable factors, i.e., prejudice and the economical or duplicative use of judicial resources, favor remand (D.I. 5 at 20), but their argument fails (*see supra* at 4). Genesis is at home in the Bankruptcy Court and cannot claim prejudice from litigating there, *see Kurz*, 464 B.R. at 647 (denial of remand would not prejudice plaintiff who filed proof of claim in transferee bankruptcy court), and Plaintiffs' conclusory assertions about rapid adjudication in the Court of Chancery are irrelevant to judicial economy concerns.[7] By contrast, Plaintiffs' brief has nothing to say about the veritable "800-pound gorilla" on this issue—i.e., their duplicative, near simultaneous Adversary Proceeding pending in the Bankruptcy Court. *In re Penson Worldwide*, 587 B.R. 6, 24 (Bankr. D. Del. 2018) (no abstention where "judicial economy suggests" that relevant issues, which were "inextricably interlinked," should "be resolved by one court").

Plaintiffs argue that "remand will have no impact on the administration or operation of the [bankruptcy] estate," except to "preserve estate resources by ensuring litigation in a convenient and efficient forum." (D.I. 5 at 20.) But it defies common sense to argue that litigating this Action and the Adversary Proceeding in different courts somehow could preserve estate resources. Even more, Plaintiffs' claims in this Action were specifically set forth in the Amended Plan and Disclosure Statement, and whatever court decides this Action may need to

---

[7] Tellingly, Plaintiffs did not move to expedite when they filed their Complaint in this Action.

interpret the Amended Plan and resolve important bankruptcy law issues. (*See supra* Point I.)
Remanding to a court that is not familiar with the Amended Plan and does not deal principally
with bankruptcy law hardly promotes efficient and economic administration of the estate.

## IV. The Court Should Not Defer Ruling on Defendants' Transfer Motion

Both this motion and Defendants' Transfer Motion turn on identical questions of law,
including which Court is best suited to hear the instant Action. The Court should either decide
Defendants' Transfer Motion together with the Remand Motion or transfer this Action to the
Bankruptcy Court so that Judge Lane can decide remand. This Court need not, as Plaintiffs
contend (D.I. 5 at 8-9), defer ruling on transfer. Multiple courts have recognized that "remand
motions can be presented to and decided by the transferee judge," and therefore "there is no need
to delay transfer in order to accommodate any interest of the transferor court in resolving a
pending remand motion." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 170 F. Supp. 2d
1346, 1347 (J.P.M.L. 2001); *see also, e.g., Bank of Am., N.A.*, 2005 WL 3525680, at *1.
Moreover, it is appropriate to transfer an action *before* deciding a motion for remand where, as
here, the Bankruptcy Court "is simply in a far better position than this Court to expeditiously
decide critical questions pertaining to [plaintiff's] Motion To Remand and the merits of the
case," including whether the plaintiff's claims in the state lawsuit were "'functionally identical'
to administrative claims filed" by the same plaintiff in the bankruptcy. *Bank of Am., N.A.*, 2005
WL 3525680, at *3.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Genesis's
Motion to Remand.

Dated: June 27, 2025

MORRIS, NICHOLS, ARSHT &
   TUNNELL LLP

*/s/ Kevin M. Coen*
Kevin M. Coen (#4775)
Jacob M. Perrone (#7250)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
(302) 658-9200
kcoen@morrisnichols.com
jperrone@morrisnichols.com

-and-

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner *(admitted pro hac vice)*
Benjamin S. Kaminetzky *(admitted pro hac vice)*
Elliot Moskowitz *(admitted pro hac vice)*
Daniel J. Schwartz *(admitted pro hac vice)*
Matthew R. Brock *(admitted pro hac vice)*
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
marshall.huebner@davispolk.com
ben.kaminetzky@davispolk.com
elliot.moskowitz@davispolk.com
daniel.schwartz@davispolk.com
matthew.brock@davispolk.com

*Counsel for Digital Currency Group, Inc.*

MORRIS, NICHOLS, ARSHT &
  TUNNELL LLP

*/s/ S. Mark Hurd*
S. Mark Hurd (#3297)
Jacob M. Perrone (#7250)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
shurd@morrisnichols.com
jperrone@morrisnichols.com

-and-

CLIFFORD CHANCE US LLP
Daniel Silver (*pro hac vice application to be
filed*)
Anthony M. Candido (*pro hac vice
application to be filed*)
John P. Alexander (*pro hac vice application
to be filed*)
Two Manhattan West
375 9th Ave.
New York, NY 10001
(212) 878-8000
Daniel.silver@cliffordchance.com
Anthony.candido@cliffordchance.com
John.alexander@cliffordchance.com


*Counsel for Defendant Barry Silbert*

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/ Patricia L. Enerio*
Patricia L. Enerio (# 3728)
Brendan Patrick McDonnell (# 7086)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 472-7300
penerio@hegh.law
bmcdonnell@hegh.law

-and-

ARNOLD & PORTER KAYE SCHOLER LLP

Marcus Asner (*pro hac vice application to be filed*)
Christian Schultz (*pro hac vice application to be filed*)
Michael Krouse (*pro hac vice application to be filed*)
Tyler Fink (*pro hac vice application to be filed*)
Kodjo Kumi (*pro hac vice application to be filed*)
250 W 55th Street
New York, NY 10019-9601
212.836.8000
Marcus.Asner@arnoldporter.com
Christian.Schultz@arnoldporter.com
Michael.Krouse@arnoldpoert.com
Tyler.Fink@arnoldporter.com
Kodjo.Kumi@arnoldporter.com

*Counsel for Soichiro "Michael" Moro*

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

*/s/ Kevin M. Coen*

Kevin M. Coen (#4775)
Jacob M. Perrone (#7250)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
(302) 658-9200
kcoen@morrisnichols.com
jperrone@morrisnichols.com

-and-

SIMPSON THACHER & BARTLETT LLP

Jeffrey H. Knox (*admitted pro hac vice*)
Karen M. Porter (*admitted pro hac vice*)
900 G Street, N.W.
Washington, District of Columbia 20001
Tel: (202) 636-5500
Fax: (202) 636-5502
jeffrey.knox@stblaw.com
karen.porter@stblaw.com

Peter E. Kazanoff (*admitted pro hac vice*)
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-3525
Fax: (212) 455-2502
pkazanoff@stblaw.com

*Attorneys for Defendant Mark Murphy*

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)
Maliheh Zare (#7133)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
mzare@mccarter.com

-and-

MORRISON & FOERSTER LLP

Jessica Kaufman (*pro hac vice application to
be filed*)
Janie C. Buckley (*pro hac vice application to
be filed*)
250 West 55th Street
New York, NY 10019-9601
212.468.8000
Jkaufman@mofo.com
jbuckley@mofo.com

*Counsel for Defendants Ducera Partners,
LLC and Michael Kramer*

Case 23-10063-JTD Case 1:23-cv-11843 Document 26-7 Filed 07/14/25 Entered 07/14/25 19:46:24 Exhibit Filed 07/14/25 Page 34 of 34 Page ID #:3600

Pg 34 of 34

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Emily L. Skaug (#6921)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
eskaug@bayardlaw.com

- and -

PILLSBURY WINTHROP SHAW
PITTMAN LLP

Richard P. Donoghue (*pro hac vice application
to be filed*)
Ari Berman (*pro hac vice application to be
filed*)
31 West 52nd Street
New York, NY 10019-6131
(212) 858-1000
Richard.Donoghue@pillsburylaw.com
AriBerman@pillsburylaw.com

*Attorneys for Defendant Michael Kraines*