# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| GENESIS GLOBAL HOLDCO, LLC, GENESIS GLOBAL CAPITAL, LLC, and GENESIS ASIA PACIFIC PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, DUCERA PARTNERS LLC, and MICHAEL KRAMER, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:25-cv-00733-RGA <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

*Of Counsel*:

Philippe Z. Selendy
Jennifer M. Selendy
Claire E. O'Brien
Laura M. King
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, New York 10104
(212) 390-9000
pselendy@selendygay.com
jselendy@selendygay.com
cobrien@selendygay.com
lking@selendygay.com

Rudolf Koch (#4947)
Robert L. Burns (#5314)
Andrew L. Milam (#6564)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302)-651-7700
Koch@rlf.com
Burns@rlf.com
Milam@rlf.com

*Attorneys for Plaintiffs Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific PTE. Ltd.*

Dated: July 7, 2025

## TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     THE COURT SHOULD DECIDE THE REMAND MOTION BEFORE
HEARING THE TRANSFER MOTION ................................................................2

II.    THE COURT LACKS JURISDICTION AND MUST REMAND THE CASE .................2

       A.     "Related To" Jurisdiction Does Not Exist ................................................2

       B.     In the Alternative, Abstention is Mandatory ...........................................5

       C.     In the Alternative, the Court Should Remand on Permissive Abstention or
Equitable Grounds ...................................................................................9

CONCLUSION ...............................................................................................................................10

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Signal Recovery Tr. v. Allied Signal, Inc.*,
  298 F.3d 263 (3d Cir. 2002) .................................................................................................... 6

*In re AstroPower Liquidating Tr.*,
  335 B.R. 309 (Bankr. D. Del. 2005) ........................................................................................ 3

*Borough of West Mifflin v. Lancaster*,
  45 F.3d 780 (3d Cir. 1995) ...................................................................................................... 6

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
  709 F.2d 190 (3d Cir. 1983) .................................................................................................... 9

*In re Conseco, Inc.*,
  318 B.R. 425 (Bankr. N.D. Ill. 2004) ...................................................................................... 5

*Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*,
  857 F.2d 943 (3d Cir. 1988) .................................................................................................... 8

*In re Essar Steel Minn., LLC*,
  47 F.4th 193 (3d Cir. 2022) ..................................................................................................... 3

*In re EXDS, Inc.*,
  352 B.R. 731 (Bankr. D. Del. 2006) ........................................................................................ 3

*In re The Fairchild Corp.*,
  452 B.R. 525 (Bankr. D. Del. 2011) ........................................................................................ 4

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) .................................................................................................... 3

*In re Gen. Wireless Operations Inc.*,
  2017 WL 6033562 (Bankr. D. Del. Dec. 1, 2017) ................................................................... 7

*In re Genesis Glob. Holdco, LLC*,
  660 B.R. 439 (Bankr. S.D.N.Y. 2024) ..................................................................................... 4

*In Re G-I Holdings, Inc.*,
  564 B.R. 217 (Bankr. D.N.J. 2016) ......................................................................................... 5

*In re Insilco Techs., Inc.*,
  330 B.R. 512 (Bankr. D. Del. 2005) ........................................................................................ 3

*LJM2 Co-Investment, L.P. v. LJM2 Capital Management, L.P.*,
  2003 WL 431684 (D. Del. Feb. 24, 2003) .................................................................................. 7

*In re Longview Power*,
  516 B.R. 282 (Bankr. D. Del. 2014) ......................................................................................... 7

*In re MPC Comput., LLC*,
  465 B.R. 384 (Bankr. D. Del. 2012) ......................................................................................... 3

*In re Nu Ride Inc.*,
  2025 WL 1600566 (Bankr. D. Del. June 5, 2025) .................................................................... 3

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
  848 F.2d 414 (3d Cir. 1988) ..................................................................................................... 4

*In re Penson Worldwide*,
  587 B.R. 6 (Bankr. D. Del. 2018) ............................................................................................. 4

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
  615 B.R. 529 (D. Del. 2020) ................................................................................................. 6, 8

*Rahl v. Bande*,
  316 B.R. 127 (S.D.N.Y. 2004) .................................................................................................. 6

*In re Resorts Int'l, Inc.*,
  372 F.3d 154 (3d Cir. 2004) ............................................................................................. 3, 4, 5

*In re Semcrude, L.P.*,
  442 B.R. 258 (Bankr. D. Del. 2010) ......................................................................................... 7

*Sergent v. McKinstry*,
  472 B.R. 387 (E.D. Ky. 2012) .................................................................................................. 6

*In re Shenango Grp., Inc.*,
  501 F.3d 338 (3d Cir. 2007) ..................................................................................................... 3

*Stoe v. Flaherty*,
  436 F.3d 209 (3d Cir. 2006) ..................................................................................................... 7

*Street v. End of the Rd. Tr.*,
  386 B.R. 539 (D. Del. 2008) ................................................................................................. 3, 8

*Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*,
  2019 WL 3431107 (D. Del. July 30, 2019) .............................................................................. 8

*Tipico Prods. Co. v. Dorato Foods, LLC*,
  2007 WL 150481 (D.N.J. Jan. 17, 2007) .................................................................................. 6

**Statutes**

11 U.S.C. § 502 ............................................................................................................................. 5

11 U.S.C. § 547 ........................................................................................................................... 10

11 U.S.C. § 548 ........................................................................................................................... 10

28 U.S.C. § 1367 ........................................................................................................................... 6

28 U.S.C. § 1334 ...................................................................................................................... 6, 7

N.Y. Debt. & Cred. Law § 274 ................................................................................................... 10

**Other Authorities**

*The Genius of the Modern Chancery System*,
   2012 COLUM. BUS. L. REV. 570 (2012) ..................................................................................... 6

*Litigation in the Delaware Court of Chancery and the Delaware Supreme Court*, Delaware,
   https://corplaw.delaware.gov/delaware-court-chancery-supreme-court ..................................... 6

Plaintiffs[1] respectfully submit this reply brief in support of their Remand Motion.

## PRELIMINARY STATEMENT

Defendants' opposition to the Remand Motion (the "Remand Opposition"), D.I. 26, confirms they cannot satisfy the *Resorts* "close nexus" test for post-confirmation "related to" jurisdiction. The closest Defendants come is to contend that "this matter is critical to the administration of Genesis's estate and ***may*** require the Court to interpret key provisions of Genesis's Amended Plan ***and/or*** related Bankruptcy Code provisions." *Id.* at 10 (emphasis added); *id.* at 19-20 ("whatever court decides this Action ***may*** need to interpret the Amended Plan and resolve important bankruptcy law issues" (emphasis added)). But Defendants do not say which Plan provision *may* need to be interpreted or otherwise substantiate their assertion. Defendants likewise fail to explain why or how the resolution of Plaintiffs' Delaware claims is purportedly "critical" to the administration of the Genesis estate. Further, Defendants' reliance on Bankruptcy Code provisions as a defense cannot create federal jurisdiction. Nor do Defendants grapple with the crux of Plaintiffs' Remand Motion: that these claims arise under Delaware law and the S.D.N.Y. Bankruptcy Court does not have constitutional authority to resolve them.

Unable to meet the *Resorts* test, Defendants adduce a list of facts purportedly connecting the parties and claims to the Plan. If those facts were enough to create jurisdiction, every post-confirmation litigation contemplated by a confirmed plan would have a "close nexus" sufficient to proceed in federal court. Defendants' position would eviscerate longstanding Third Circuit precedent and contradict the basic principle that federal jurisdiction is limited.

Defendants' response to the necessity of mandatory abstention is also meritless. Their argument that supplemental jurisdiction provides an independent basis for jurisdiction is wrong,

---

[1] Undefined capitalized terms have the meaning given to them in the Remand Motion. D.I. 4-5.

and their contention that Chancery Court cannot resolve Plaintiffs' claims quickly is unsubstantiated. Moreover, Section 1334(c)(2) does not depend on whether the action was commenced before bankruptcy. Nor did Plaintiffs waive mandatory abstention as to their Delaware claims—none of which concern breach of contract—by virtue of a forum selection clause for unasserted contract claims regarding a promissory note that Defendants devised and imposed upon Genesis long after Defendants began their campaign of corporate malfeasance.

Defendants fare no better in opposing permissive abstention and equitable remand. Plaintiffs chose Chancery Court as their preferred forum to adjudicate Delaware claims against Delaware entities and the fiduciaries of Delaware entities. Plaintiffs' choice should be respected.

## ARGUMENT

**I.    THE COURT SHOULD DECIDE THE REMAND MOTION BEFORE HEARING THE TRANSFER MOTION**

The soundest, most efficient approach is for the Court to resolve the Remand Motion's threshold questions (whether this action can or should be heard in federal court) before considering Defendants' subsequent discretionary motion to transfer (comparing the relative convenience of federal forums) (the "Transfer Motion"), D.I. 19. *Contra* D.I. 26 at 20; *see* D.I. 5 at 8-9; D.I. 28 at 5-7 (the "Transfer Opposition"). All parties agree this Court first must resolve the gating question of "related to" jurisdiction. Because the Remand Motion is dispositive of and moots the Transfer Motion, and because the contested issues regarding abstention and equitable remand do not require bankruptcy expertise, the Court should resolve the entire Remand Motion first.

**II.   THE COURT LACKS JURISDICTION AND MUST REMAND THE CASE**

**A.    "Related To" Jurisdiction Does Not Exist**

Despite submitting multiple briefs contending that there is federal jurisdiction, *see* D.I. 1; D.I. 19; D.I. 26, Defendants do not remotely satisfy the controlling *Resorts* test for post-

confirmation "related to" jurisdiction, which requires a showing that Plaintiffs' Delaware claims involve "the interpretation, implementation, consummation, execution, or administration" of the Plan. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004). As Defendants bear the burden on removal, *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007), that failure is dispositive.

Rather than follow Third Circuit law, Defendants shift the goalposts by misconstruing the *Resorts* post-confirmation standard for "related to" jurisdiction. Thus, Defendants misleadingly extract general language from inapplicable cases to try to broaden the standard. *See* D.I. 28 at 8-9. That contravenes the well-established principle that removal statutes are "*strictly construed, requiring remand … if any doubt exists over whether removal was proper*." *Street v. End of the Rd. Tr.*, 386 B.R. 539, 543 (D. Del. 2008) (emphasis added).

Defendants' arguments would sweep into federal court most, if not all, post-confirmation litigation. The requisite "close nexus" does not exist simply because the debtors are a party and the dispute may affect "the debtor's liabilities." D.I. 26 at 10 (citing *In re Shenango Grp., Inc.*, 501 F.3d 338, 344 (3d Cir. 2007); *In re Essar Steel Minn., LLC*, 47 F.4th 193, 197 (3d Cir. 2022)). It is immaterial that post-confirmation litigation is "funded out of estate assets" and "overseen by plan-created officers and bodies (the PA Officer and LOC)." *Id.* at 11. Nor does a "close nexus" exist because the Plan "describes the relevant claims and retains jurisdiction over them." *Id.* (citing *In re MPC Comput., LLC*, 465 B.R. 384, 393-94 (Bankr. D. Del. 2012); *In re EXDS, Inc.*, 352 B.R. 731, 739 (Bankr. D. Del. 2006); *In re AstroPower Liquidating Tr.*, 335 B.R. 309, 325 (Bankr. D. Del. 2005)).[2] That describes all post-confirmation litigation—yet *Resorts* makes plain that not

---

[2] As Judge Walrath explained in *In re Nu Ride Inc.*, 2025 WL 1600566, at *5 (Bankr. D. Del. June 5, 2025), specifically mentioning and retaining jurisdiction over claims in a plan does not establish federal jurisdiction "absent evidence that [the action] has a substantial nexus to the Plan." *Contra* D.I. 26 at 11. *See also Resorts*, 372 F.3d at 167-69; *In re Insilco Techs., Inc.*, 330 B.R. 512, 526 (Bankr. D. Del. 2005). In other words, Defendants still must satisfy the governing *Resorts* test.

3

every such case has a "close nexus" for "related to" jurisdiction. *Resorts*, 372 F.3d at 167-68; *In re The Fairchild Corp.*, 452 B.R. 525, 531-32 (Bankr. D. Del. 2011); D.I. 28 at 10.[3]

As all modern bankruptcy plans do, the Plan describes "Retained Causes of Action" to put third parties on notice and avoid waiver of those claims. *See, e.g.*, *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988); *see also Fairchild.*, 452 B.R. at 531-32; D.I. 28 at 11. The Plan delegates authority to the LOC to pursue those claims and maximize creditor recoveries as a part of post-confirmation activity and creates a litigation reserve to fund that activity. But the *resolution* of Plaintiffs' claims does not require interpretation of the Plan. Indeed, the claims indisputably could have been brought in Chancery Court even if Genesis had never filed for bankruptcy, placing this action squarely outside the *Resorts* standard.

Defendants also incorrectly contend that Plaintiffs' Delaware claims were "key components" and the "focus" of the Plan. D.I. 26 at 11. In reality, Genesis's Disclosure Statement describes "funding of a Litigation Reserve"—for all post-confirmation litigation, not this case—as one of many "key components" of the Plan. D.I. 27-1, Ex. F at 2-3. Similarly, the bankruptcy court's decision approving the Plan describes litigation as the "focus" of "*post-confirmation activity*"—not the Plan. *In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 511 (Bankr. S.D.N.Y. 2024) (emphasis added).

By contrast, the decision approving the Plan does provide that the principles for distributing estate assets to creditors are "[c]entral to the Plan," explaining that they reflect a settlement among substantially all creditor constituencies, reached after months of negotiations. *Id.* at 490. Thus,

---

[3] Defendants cite *In re Penson Worldwide*, 587 B.R. 6, 24 (Bankr. D. Del. 2018), to suggest overlapping issues create jurisdiction. D.I. 26 at 19. But *Penson* only held that "core" issues requiring adjudication of a *proof of claim* in bankruptcy should be handled in bankruptcy court. *Penson*, 587 B.R. at 12-13. The Delaware case does not require the adjudication of *any* "core" issue or proof of claim.

4

the *distribution principles*—not post-confirmation litigation—were key to and the focus of Plan confirmation. Defendants do not explain how Plaintiffs' Delaware claims could affect the long-confirmed distribution principles, pursuant to which Genesis is already making distributions, and which will not change based on this case. *See Resorts*, 372 F.3d at 167 (for close nexus, "the claim must *affect* an integral aspect of the bankruptcy process" (emphasis added)).

Finally, Defendants argue this case will "turn[], in part, on important bankruptcy law issues" because they apparently intend to argue Section 502(b) of the Bankruptcy Code limits Plaintiffs' recovery. D.I. 26 at 11. Wrong. Section 502(b) governs the allowance of claims in bankruptcy, and the time to invoke it was the confirmation hearing. DCG objected under Section 502(b) and was overruled by the Bankruptcy Court when it confirmed the Plan, *id*. at 6—a ruling that DCG did not appeal. Far from "turn[ing]" on Defendants' potential effort to relitigate final Bankruptcy Court rulings, Plaintiffs' recovery turns on Delaware law and equity. In any event, under the well-pleaded complaint rule, a defense is not a basis for removal, and Defendants do not explain how attempting to relitigate a ruling they never appealed could possibly satisfy the governing *Resorts* test. *See, e.g.*, *In Re G-I Holdings, Inc.*, 564 B.R. 217, 247-48 (Bankr. D.N.J. 2016); *In re Conseco, Inc.*, 318 B.R. 425, 432 (Bankr. N.D. Ill. 2004).

**B.     In the Alternative, Abstention is Mandatory**

Even if federal jurisdiction were present—and it is not—abstention would be mandatory. Defendants concede four of six elements for mandatory abstention. As for the two elements they contest, Defendants contend, incorrectly, that supplemental jurisdiction is an independent basis for jurisdiction and that Chancery Court cannot expeditiously resolve Plaintiffs' claims. Defendants also make two "Hail Mary" attempts to bypass the doctrine: (1) relying on overruled precedent to assert that mandatory abstention applies only to litigations filed before bankruptcy, and (2) arguing that Plaintiffs waived mandatory abstention through a purported forum selection clause in the

5

DCG-issued promissory note.  The unprincipled nature of Defendants' arguments underscores the baseless foundation of their attempt at removal.

*First*, Defendants contend that this case could have been commenced in S.D.N.Y. Bankruptcy Court under 28 U.S.C. § 1367 "as part of Plaintiffs' Adversary Proceeding" because the "claims … are based on the same case or controversy." D.I. 26 at 14.[4]  The question, however, is not whether the *claims* at issue could have been brought in a *specific* federal case under Section 1367, but whether this "*action* could … have been commenced" in federal court *absent* "related to" jurisdiction.  28 U.S.C. § 1334(c)(2) (emphasis added).  This action could not have been filed in federal court absent "related to" jurisdiction because there is no diversity or federal question jurisdiction.[5]  It is black letter law that supplemental jurisdiction is not an independent basis for jurisdiction.  *E.g.*, *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 784 (3d Cir. 1995).

*Second*, Chancery Court is the premier court for litigation of Delaware corporate affairs and is renowned nationwide for speedy and efficient adjudication.  *See Principal Growth Strategies, LLC v. AGH Parent LLC*, 615 B.R. 529, 538 (D. Del. 2020).[6]  It is baseless to suggest Chancery Court cannot "timely adjudicat[e]" this case, and that S.D.N.Y. Bankruptcy Court is the

---

[4] Plaintiffs' preference and fraudulent transfer claims arise out of nearly 150 discrete pre-petition transfers of funds from Genesis that must be examined individually under the Bankruptcy Code and applicable state law.  Those claims do not arise out of the same relevant facts and circumstances underpinning Defendants' fiduciary breaches and fraud.

[5] Defendants rely upon inapposite cases that asserted *both* federal and state claims, making supplemental jurisdiction available in those actions.  *See Allied Signal Recovery Tr. v. Allied Signal, Inc.*, 298 F.3d 263 (3d Cir. 2002); *Sergent v. McKinstry*, 472 B.R. 387 (E.D. Ky. 2012); *Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004); *Tipico Prods. Co. v. Dorato Foods, LLC*, 2007 WL 150481 (D.N.J. Jan. 17, 2007).

[6] *See also, e.g.*, William Savitt, *The Genius of the Modern Chancery System*, 2012 COLUM. BUS. L. REV. 570, 584-85 (2012); *Litigation in the Delaware Court of Chancery and the Delaware Supreme Court*, Delaware, https://corplaw.delaware.gov/delaware-court-chancery-supreme-court.

only court that can timely hear Plaintiffs' claims. D.I. 26 at 14-17.[7] The S.D.N.Y. Bankruptcy Court cannot constitutionally resolve Plaintiffs' Delaware claims. *See* D.I. 5 at 16-17. Even leaving that limitation aside, the alleged efficiency of bankruptcy court adjudication is irrelevant to mandatory abstention. In *LJM2 Co-Investment, L.P. v. LJM2 Capital Management, L.P.*, 2003 WL 431684 (D. Del. Feb. 24, 2003), the court abstained over objections that Chancery Court was unfamiliar with the parties or claims and would be frustrated by a related litigation in federal court: "Section 1334(c)(2) does not require that the state court be intimately familiar with the parties or claims, or even that it be more familiar with these elements than the federal court …. The statute requires merely that the state court can timely adjudicate the action." *Id.* at *3 (citation omitted). The court was confident Chancery Court could ably and timely adjudicate issues regarding the federal case. *Id.*

*Third*, Defendants wrongly assert that "[m]andatory abstention applies only to litigations filed *before* bankruptcy," D.I. 26 at 13, relying on *In re Longview Power*, 516 B.R. 282 (Bankr. D. Del. 2014). Defendants fail to bring to this Court's attention that the *Longview* judge later disavowed the very opinion upon which Defendants rely, and applied mandatory abstention in an action commenced after a bankruptcy petition. According to the *Longview* judge:

> [*Longview*] relied on … non-binding precedent holding that only a pre-petition suit met the "is commenced" prong. … The Third Circuit in *Stoe* [*v. Flaherty*, 436 F.3d 209, 213-16 (3d Cir. 2006),] … however, implicitly held that post-petition commencement is sufficient by approving mandatory abstention in a factual scenario involving a state court action filed post-petition. … *Longview* and *Stoe* are neither distinguishable nor reconcilable. *Longview* must of course yield to *Stoe*.

*In re Gen. Wireless Operations Inc.*, 2017 WL 6033562, at *4 (Bankr. D. Del. Dec. 1, 2017). Other

---

[7] *In re Semcrude, L.P.*, 442 B.R. 258, 265 (Bankr. D. Del. 2010), is not apposite: that case concerned remand to state courts (Oklahoma and Kansas) that do not have the well-known efficiency and expertise of Chancery Court.

7

cases in this District likewise have applied mandatory abstention to actions filed after commencement of a bankruptcy. *See, e.g.*, *Principal Growth Strategies*, 615 B.R. at 533, 539-40; *Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2019 WL 3431107, at *1, *6-8 (D. Del. July 30, 2019).

*Fourth*, Defendants argue that Plaintiffs waived mandatory abstention as to all claims through a purported forum selection clause in a promissory note issued by DCG. D.I. 26 at 13. That is incorrect. Plaintiffs do not assert contract claims under the note, and the fiduciary duties that *are* the subject of the Delaware claims do not arise from the narrow contractual basis of the note. Plaintiffs' claims do not concern the note's meaning, nor the contractual relationship between DCG and Genesis, nor do they arise from performance or non-performance. *Cf. Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944 (3d Cir. 1988). Rather, it is Genesis's longstanding fiduciary relationship with Defendants, which far pre-dates the June 30, 2022 note, that gives rise to the claims here. The note's forum selection clause does not cover Defendants' misconduct in devising the note, imposing it on Genesis, and defrauding creditors about it, much less the dozens of other fiduciary breaches, frauds, and injustices alleged in the Complaint. Defendants' single case, *Street*, 386 B.R. at 543, is not persuasive, as it (1) involved *contract* claims, (2) under a dissimilar forum selection clause that said, "[a]ny dispute or controversy arising under or in connection with the Agreement shall be settled by the Bankruptcy Court." Even if Plaintiffs had asserted contract claims under the note—and they do not—Plaintiffs could have filed those claims in state court in New York rather than federal court, *see* D.I. 27-1, Ex. H § 2.2, further belying the argument of waiver.[8]

---

[8] Defendants' attempt to invoke this clause in the promissory note DCG used to commit fraud is unavailing for another reason: DCG controlled Genesis and its former CEO, Defendant Moro,

8

### C. In the Alternative, the Court Should Remand on Permissive Abstention or Equitable Grounds

The Court should reject Defendants' claim-splitting arguments against permissive abstention and equitable remand because Plaintiffs properly filed this action in Chancery Court while filing the distinct adversary proceeding in S.D.N.Y. Bankruptcy Court. *See also* D.I. 28 at 16-18. The adversary proceeding seeks recovery for the specific sums of nearly 150 distinct transfers from Genesis to 12 different Genesis insiders. Those transfer claims do not overlap substantially with the Delaware claims. Plaintiffs filed their Delaware claims in Chancery Court because it has constitutional authority to resolve them,[9] renowned expertise in Delaware corporate issues, and available forms of equitable relief.[10] The LOC believes Chancery Court has the greatest potential to maximize creditor recoveries.[11] Any purported efficiency in having those claims resolved alongside the separate transfer claims in Bankruptcy Court (asserted against a much larger group of defendants) would be dwarfed by the loss of the expertise of Chancery Court as well as the additional layer of judicial review of the bankruptcy opinion in the District Court.

---

who signed the note supposedly on behalf of Genesis. Thus, there is evidence that the note was not an arm's-length transaction, rendering the purported forum selection clause unenforceable as contrary to public policy. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983)), *overruled on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989).

[9] That parties can consent to Bankruptcy Court jurisdiction has no bearing here, as Plaintiffs do not consent on their Delaware claims, which is their constitutional right. *Contra* D.I. 26 at 16-17.

[10] Contrary to Defendants' unsupported contention, D.I. 26 at 18, these claims are governed by Delaware law, which Delaware has a strong interest in maintaining. And while Defendants argue that Plaintiffs' claims are "neither novel nor complex," *id.* at 18-19, they ignore the extraordinary facts of their corporate wrongdoing and the novel nature of the requested in-kind relief. Chancery Court is indisputably the court best suited to resolve those issues.

[11] Defendants contend that Plaintiffs' forum choice should receive no deference because they chose to file their chapter 11 petitions in S.D.N.Y. Bankruptcy Court and multiple disputes were litigated during the bankruptcy. D.I. 26 at 17-18. Defendants' argument again proves too much: every debtor would be required to litigate all post-confirmation disputes in federal court.

It is more efficient to litigate the actions as filed rather than as Defendants suggest. Plaintiffs' Delaware Complaint concerns, *inter alia*, (1) whether DCG, Silbert, Murphy, Kraines, and Moro breached their fiduciary duties when Genesis was insolvent, including by (a) operating Genesis without proper risk management practices, and (b) causing Genesis to extend valuable and highly-concentrated cryptocurrency and USD loans to uncreditworthy counterparties such as Three Arrows Capital, Alameda Research, and DCG in exchange for less valuable, illiquid, or no collateral because those practices benefitted DCG and Silbert; (2) whether Ducera and Kramer aided and abetted those breaches; (3) whether Silbert, Kraines, and Murphy conspired to control Genesis with the objective of enriching DCG and Silbert; (4) whether DCG and Silbert were unjustly enriched through their disloyal operation of Genesis; (5) whether DCG, Silbert, Kraines, Murphy, and Moro defrauded Gemini Trust Co., which acted as agent for over 300,000 individual creditors that loaned cryptocurrency to Genesis; and (6) whether Genesis was the alter ego of DCG.

By contrast, the adversary proceeding concerns, *inter alia*, whether the estate can avoid nearly 150 transfers from Genesis to DCG, Silbert, DCG International Investments Ltd., HQ Enhanced Yield Fund LP, Grayscale Operating LLC, Foundry Digital LLC, Genesis Global Trading, Inc., Luno Australia Pty Ltd., Ducera LLC, Kramer, Alan Silbert, and INX Limited, because they were made in the year before Genesis's bankruptcy, by Genesis insiders, while Genesis was insolvent, and where the insiders received more as a result of those transfers than they would have under a chapter 7 liquidation. *See* 11 U.S.C. § 547(b); N.Y. Debt. & Cred. Law § 274. The adversary proceeding also alleges that several purported tax payments to DCG were constructively fraudulent. *See* 11 U.S.C. § 548(a). These are highly technical claims, in which bankruptcy courts have particular expertise, and which are not asserted in the Delaware Complaint.

## **CONCLUSION**

The Court should remand this case to Chancery Court.

10

| | |
|---|---|
| *Of Counsel*: | /s/ Robert L. Burns |
| | Rudolf Koch (#4947) |
| Philippe Z. Selendy | Robert L. Burns (#5314) |
| Jennifer M. Selendy | Andrew L. Milam (#6564) |
| Claire E. O'Brien | RICHARDS, LAYTON & FINGER, P.A. |
| Laura M. King | 920 North King Street |
| SELENDY GAY PLLC | Wilmington, Delaware 19801 |
| 1290 Avenue of the Americas | (302)-651-7700 |
| New York, New York 10104 | Koch@rlf.com |
| (212) 390-9000 | Burns@rlf.com |
| pselendy@selendygay.com | Milam@rlf.com |
| jselendy@selendygay.com | |
| cobrien@selendygay.com | *Attorneys for Plaintiffs Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific PTE. Ltd.* |
| lking@selendygay.com | |

Dated: July 7, 2025

11