# Exhibit 5

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| GENESIS GLOBAL HOLDCO, LLC, GENESIS GLOBAL CAPITAL, LLC, and GENESIS ASIA PACIFIC PTE. LTD., <br><br> Plaintiffs <br><br> - against - <br><br> DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, DUCERA PARTNERS, LLC, and MICHAEL KRAMER, <br><br> Defendants. | C.A. No. 1:25-cv-00733-RGA |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. § 1412 AND 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 3

SUMMARY OF ARGUMENT ..................................................................................... 4

FACTUAL BACKGROUND ......................................................................................... 5

ARGUMENT ............................................................................................................... 11

I.   This Action Is "A Case or Proceeding Under Title 11" Within the Meaning of
     Section 1412 Because It Is "Related To" Plaintiffs' Bankruptcy ....................... 12

II.  Transfer to the SDNY Serves Both the Interests of Justice and the Convenience of
     the Parties and Witnesses .................................................................................... 15

     A.   Transfer to SDNY Will Further the Interests of Justice .............................. 15

     B.   Transfer Will Serve the Convenience of the Parties and Witnesses ........... 18

III. The Court Should Not Defer Ruling on Defendants' Transfer Motion ............... 19

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*Abrams v. Gen. Nutrition Cos.*,
    2006 WL 2739642 (D.N.J. Sept. 25, 2006) ........................................................... 12

*Ascent Pharms., Inc. v. Purdue Pharm. L.P.*,
    2024 WL 3023476 (Bankr. S.D.N.Y. June 14, 2024) ........................................... 18

*Bank of Am., N.A. v. US Airways, Inc.*,
    2005 WL 3525680 (D. Del. Dec. 21, 2005) ........................................... 5, 17, 20

*Cent. Va. Comm. College v. Katz*,
    546 U.S. 356 (2006) .................................................................................. 13

*CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc.*,
    309 F. Supp. 2d 637 (D.N.J. 2004) .................................................... 16

*Eagle Pharms., Inc. v. Eli Lilly & Co.*,
    2018 WL 3492145 (D.N.J. July 20, 2018) ........................................... 5, 15-16, 18

*In re Essar Steel Minn., LLC*,
    47 F.4th 193 (3d Cir. 2022) ........................................................... 4, 13, 14

*In re Firestar Diamond, Inc.*,
    654 B.R. 836 (Bankr. S.D.N.Y. 2023) .................................................. 18

*In re Genesis Glob. Holdco, LLC*,
    660 B.R. 439 (Bankr. S.D.N.Y. 2024) ........................................... 9, 18

*In re Howmedica Osteonics Corp.*,
    867 F.3d 390 (3d Cir. 2017) ........................................................ 4, 15, 17

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) ........................................................ 15, 17, 18

*Kurz v. EMAK Worldwide, Inc.*,
    464 B.R. 635 (D. Del. 2011) ........................................... 5, 12, 15, 16, 17, 19

*Mar. Elec. Co. v. United Jersey Bank*,
    959 F.2d 1194 (3d Cir. 1991), *reh'g granted and opinion vacated* (Jan. 10, 1992),
    *opinion reinstated on reh'g* (Mar. 24, 1992) .................................. 4, 12

*Miller v. CareMinders Home Care, Inc.*,
    2014 WL 1779362 (D.N.J. Apr. 30, 2014) ........................................... 19

*Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. Withumsmith Brown, P.C.*,
  692 F.3d 283 (3d Cir. 2012) ................................................................................. 13

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
  170 F. Supp. 2d 1346 (J.P.M.L. 2001) ........................................................... 19-20

*In re Resorts Int'l*,
  372 F.3d 154 (3d Cir. 2004) ................................................................................. 13

*Schlenker v. Immucor, Inc.*,
  2009 WL 5033972 (E.D. Pa. Dec. 22, 2009) ........................................................ 16

*In re Seven Fields Dev. Corp.*,
  505 F.3d 237 (3d Cir. 2007) ................................................................................. 13

*In re Shenango Grp. Inc.*,
  501 F.3d 338 (3d Cir. 2007) ........................................................................... 4, 13

*Street v. The End of the Rd. Tr.*,
  386 B.R. 539 (D. Del. 2008) ........................................................................ 12, 13

*Thomason Auto Grp., LLC v. Ferla*,
  2009 WL 3491163 (D.N.J. Oct. 23, 2009) .......................................................... 17

*In re Venoco LLC*,
  998 F.3d 94 (3d Cir. 2021) ........................................................................... 13, 14

*In re Welded Constr., L.P.*,
  609 B.R. 101 (Bankr. D. Del. 2019) ................................................................... 15

## STATUTES & RULES

11 U.S.C. § 1123(a)(5) ............................................................................................. 9

28 U.S.C. § 1334(b) ........................................................................................... 4, 12

28 U.S.C. § 1404(a) ................................................................................................ 12

28 U.S.C. § 1412 ..................................................................................................... 12

Digital Currency Group, Inc. ("DCG"), Barry Silbert, Mark Murphy, Soichiro "Michael" Moro, Ducera Partners, LLC ("Ducera") and Michael Kramer (together, "Defendants") move pursuant to 28 U.S.C. §§ 1412 and 1404(a) to transfer this action (the "Action") filed by Plaintiffs Genesis Global Holdco, LLC ("GGH"), Genesis Global Capital, LLC ("GGC"), and Genesis Asia Pacific Pte. Ltd. ("GAP," and together with GGH and GGC, "Plaintiffs" or "Genesis") to the U.S. District Court for the Southern District of New York ("SDNY") for referral to the U.S. Bankruptcy Court for the SDNY (the "Bankruptcy Court").

## PRELIMINARY STATEMENT

Plaintiffs filed two actions in May 2025, in two different courts, days apart, against many of the *same* Defendants, based on the *same* transactions and occurrences and raising similar factual and legal issues. One was brought in the SDNY Bankruptcy Court, where Plaintiffs sought Chapter 11 protection in January 2023 and have been pursuing their bankruptcy cases before the Honorable Sean H. Lane for the past two-and-one-half years. By contrast, Plaintiffs filed *this* Action only six days earlier in the Delaware Court of Chancery, which until then, had had no nexus whatsoever with Plaintiffs' bankruptcy—a clear attempt at forum shopping.

This Action and the substantially similar one in the Bankruptcy Court form the crux of Plaintiffs' effort to generate impermissible windfall gains for their creditors. Prior to bankruptcy, Plaintiffs' business was borrowing and lending crypto assets (e.g., Bitcoin). But, following unprecedented turmoil in the crypto markets in 2022, and despite hundreds of millions of dollars in equity infusions from DCG, Plaintiffs could not remain a going concern and failed to repay their crypto- and dollar-denominated loans. Due in no small measure to the assets DCG had provided, Plaintiffs' creditors already have recovered 100% or more of the dollar-value of the crypto assets they were owed as of the date Plaintiffs filed for bankruptcy. But now, seeking to benefit from the substantial increase in crypto asset values since Plaintiffs filed for

bankruptcy, Plaintiffs and their creditors filed the instant lawsuits in an attempt to force Defendants to guarantee them, risk-free, the extraordinary price appreciation that Plaintiffs' creditors would have enjoyed had Genesis timely repaid its loans and had those creditors continued holding their crypto assets over the past two-plus years. Both litigations rely on the same core allegations: that Plaintiffs were insolvent since the end of 2021 and that Defendants—through the *same* set of alleged transactions—looted Plaintiffs and caused them to default on their loans. In both, Plaintiffs seek in-kind returns of crypto assets Defendants allegedly took from them. The principal difference is that in this Action, Plaintiffs assert state-law claims such as breach of fiduciary duty, unjust enrichment and fraud, whereas in the Bankruptcy Court, Plaintiffs assert preference claims under the bankruptcy code and state fraudulent transfer laws.

This difference, however, cannot justify litigating in two separate courts. Proceeding in two different fora is massively duplicative and will waste court resources, create an unwarranted risk of inconsistent rulings and magnify litigation expenses. Accordingly, Defendants removed this Action and now move for transfer to the SDNY for referral to the Bankruptcy Court.

This Action readily satisfies all requirements for transfer under both Section 1412, the bankruptcy transfer statute, and Section 1404(a), the general transfer statute for civil actions. As a threshold matter—and contrary to Plaintiffs' arguments in their motion to remand—this Action indisputably is "a case or proceeding under chapter 11" within the meaning of Section 1412 because it is "related to" Plaintiffs' bankruptcy cases pending in the Bankruptcy Court. Plaintiffs are the debtors, the claims at issue are assets of their estates, and they are pursuing them under their amended Chapter 11 Plan, which was confirmed by, and remains subject to, the Bankruptcy Court's jurisdiction and oversight. Plaintiffs are funding this litigation with a $70 million reserve set aside from their estates under the plan. And, as described at length in Plaintiffs' plan

disclosure statement and in the Bankruptcy Court's confirmation order, this litigation is a "key" feature of the plan and the principal "focus" of Plaintiffs' post-confirmation activity. No surprise, then, that Plaintiffs' plan expressly provides for the Bankruptcy Court to retain jurisdiction over this Action. These factors, and others that Defendants will address in their forthcoming opposition to Plaintiffs' remand motion, demonstrate a close nexus between this Action and Plaintiffs' bankruptcy, confirming federal jurisdiction and the propriety of transfer.

Transfer also satisfies the other requirements under Sections 1412 and 1404(a) because it serves both the "interests of justice" and the "convenience of the parties" and witnesses. Plaintiffs are litigating a highly similar case in the Bankruptcy Court (where this Action will be referred upon transfer). Transfer will conserve judicial resources by allowing *all* of Plaintiffs' related litigation against Defendants to proceed in a coordinated fashion in a single forum before the court most familiar with the parties and the issues, thereby promoting judicial economy and avoiding unnecessary duplication and waste of court and party resources. Crucially, transfer will minimize the risk of inconsistent rulings on the numerous overlapping legal and factual issues presented by Plaintiffs' two cases, including—prominently—the date of Plaintiffs' insolvency and the propriety of the alleged looting transactions. Further, the Bankruptcy Court is located proximately to the parties and potential witnesses, who are all based in and around New York.

Nor, contrary to Plaintiffs' arguments, should this Court defer ruling on transfer until after deciding their remand motion. Bankruptcy jurisdiction is clear here, and all relevant public and private factors support transfer. The remand motion can be considered by the Bankruptcy Court after transfer, or this Court can consider both motions together. A jurisdictional inquiry thus provides no basis to put off granting the clear relief to which Defendants are entitled.

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

Plaintiffs filed this Action in the Delaware Court of Chancery on May 13, 2025 and

served Defendants on May 16, 2025.  (D.I. 1 ¶ 1; D.I. 1-1 at 355-71.)  DCG, with the consent

and joinder of all Defendants, timely removed the Action on June 12, 2025.  (D.I. 1 at 1 n.2,

¶ 32; D.I. 1-1 at 219-230.)  Defendants now move to transfer this Action to the SDNY for

referral to the Bankruptcy Court.  (D.I. 1 ¶¶ 3, 5, 33.)

## SUMMARY OF ARGUMENT

1.      This case should be transferred to the SDNY pursuant to 28 U.S.C. §§ 1412 and

1404(a) for referral to the Bankruptcy Court because it is "a proceeding under title 11," and

transfer would serve both the interests of justice and the convenience of the parties and

witnesses.  Section 1412 governs the transfer of cases, such as this one, that are "related to" a

bankruptcy.  *See, e.g.*, *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1211 (3d Cir.

1991)*, reh'g granted and opinion vacated* (Jan. 10, 1992), *opinion reinstated on reh'g* (Mar. 24,

1992).  This Action is related to Plaintiffs' bankruptcy proceedings pursuant to 28 U.S.C.

§ 1334(b) because, among other things, it involves (i) claims by the debtors (i.e., Plaintiffs),

where (ii) those claims are key assets of the estate and were an important focus of the

Bankruptcy Court's confirmation order, (iii) the Action is being funded by estate assets, (iv) the

Action is being overseen by a PA Officer and Litigation Oversight Committee created by the

plan; (v) it is being pursued to effectuate and administer the plan, and will provide the principal

mechanism for additional recoveries (if any) for Plaintiffs' creditors, and (vi) the Bankruptcy

Court retains jurisdiction over these claims under the plan.  Accordingly, the Action has more

than an incidental effect on Plaintiffs, their bankruptcy estates and their plan, and, as such, has a

"close nexus" to their bankruptcy proceedings.  *See, e.g., In re Essar Steel Minn., LLC,* 47 F.4th

193, 198 (3d Cir. 2022); *In re Shenango Grp. Inc.*, 501 F.3d 338, 344 (3d Cir. 2007).

2.      All relevant public and private interests support transferring this Action to the

SDNY.  *See, e.g., In re Howmedica Osteonics Corp.*, 867 F.3d 390, 403-04, 408 (3d Cir. 2017).

a.       Transfer serves the interests of justice because it will enable the

Bankruptcy Court to coordinate this Action with Plaintiffs' adversary proceeding against

many of the same Defendants that is pending in that court, which is based on the same

transactions and occurrences and raises similar factual and legal issues.  The Bankruptcy

Court, which has overseen Plaintiffs' bankruptcy, also is substantially more familiar with

the parties and the issues in this Action.  Transfer will promote efficiency and judicial

economy, conserve resources, and eliminate the risk of inconsistent rulings.  *See, e.g.*,

*Eagle Pharms., Inc. v. Eli Lilly & Co.*, 2018 WL 3492145, at *6 (D.N.J. July 20, 2018).

b.       Transfer also serves the convenience of the parties and witnesses.  It will

enable Plaintiffs and Defendants to litigate in a single forum and thereby reduce wasteful

duplication and litigation expenses.  Moreover, all of the parties and witnesses are located

in an around New York, making the Bankruptcy Court a more conducive forum.  *See,*

*e.g., Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 648-49 (D. Del. 2011).

3.       This Court should not defer ruling on this motion until after it rules on Plaintiffs'

pending motion to remand.  The law is clear that this Court may transfer this Action to the

Bankruptcy Court for the Bankruptcy Court to decide the remand motion, or else may decide

both motions together.  Either approach would be more efficient.  *See, e.g., Bank of Am., N.A. v.*

*U.S. Airways, Inc.*, No. Civ.A 05-793, 2005 WL 3525680 (D. Del. Dec. 21, 2005).

### **FACTUAL BACKGROUND**[1]

As described more fully in Defendants' Notice of Removal, Plaintiffs are wholly owned

---

[1] The factual averments in this section are drawn from Defendants' Notice of Removal
(D.I. 1) and Plaintiffs' complaint in this Action (D.I. 1-1 at 1-205) (the "Complaint").
References to "Ex. ___" refer to exhibits to the Declaration of Kevin M. Coen in Support of
Defendants' Motion to Transfer, unless context requires otherwise.

subsidiaries of DCG.[2]  (D.I. 1 ¶ 6 & n.3.)  Defendants are DCG, its current and former officers

(Silbert, Murphy and Kraines), its financial advisor (Ducera) and its CEO (Kramer), and

Genesis's former CEO (Moro).  (D.I. 1 ¶ 16; D.I. 1-1 at 18-22 ¶¶ 23-25, 27-33.)  Prior to filing

for bankruptcy in January 2023, Plaintiffs engaged in the business of lending, borrowing, and

trading crypto assets (such as Bitcoin) and fiat currency (such as U.S. dollars) primarily to and

from institutional and high net worth individual customers.  (D.I. 1 ¶ 6.)  During 2022, crypto

asset prices plummeted, and the digital asset industry experienced multiple unforeseeable and

unprecedented shocks.  (*Id.* ¶ 7.)  Some of Genesis's largest borrowers, Three Arrows Capital (a

crypto hedge fund) and Alameda (a crypto trading firm affiliated with the FTX exchange),

collapsed in June and November 2022, defaulting on billions of dollars' worth of loans from

Genesis as the resulting widespread market contagion further drove down crypto prices.  (*Id.*)

Despite DCG's substantial efforts to preserve Genesis as a going concern, several months after

these events, Plaintiffs—all Delaware LLCs—filed voluntary Chapter 11 bankruptcy petitions in

the New York Bankruptcy Court on January 19, 2023 (the "Bankruptcy Proceedings").  (*Id.* ¶ 8.)

Genesis's Bankruptcy Proceedings have been heavily litigated.  Genesis litigated five

contentious adversary proceedings in the Bankruptcy Court against multiple parties—including,

in at least three separate proceedings, against DCG and its subsidiaries.  (D.I. 1 ¶ 9 & n.4.)  DCG

and Genesis also produced substantial discovery and sought Bankruptcy Court resolution of

related disputes.  (Ex. A at 1.)  Plaintiffs have since agreed with DCG to permit the use of these

materials here.  (Ex. B ¶ 1.)

---

[2] While DCG remains the record owner of 100% of Plaintiffs' equity, it played a limited
role in selecting Plaintiff GGH's current board.  (*See* D.I. 1-1 at 238-40 (§§ IV.B.7, 9).)
Moreover, under the amended Chapter 11 plan, management authority over Plaintiffs is vested in
a "PA Officer," who is authorized to pursue claims on their behalf as advised by a "Litigation
Oversight Committee" selected by Plaintiffs' creditors. (*See id.* at 230-33 (§§ IV.A.1-2, 4).)

By all measures, Plaintiffs' creditors have already been remarkably successful in
recovering their pre-petition claims in the Bankruptcy Proceedings—largely due to contributions
that DCG had made to Genesis, without any obligation to do so, in an ultimately unsuccessful
attempt to keep it in business.  As a direct result of DCG's transfers of digital assets and cash
payments to Genesis over the course of 2022 in the form of equity infusions, loan forgiveness
and loan repayments—which are now worth well over a billion dollars due to a substantial
recovery in the market value of crypto assets—Plaintiffs have already repaid over 100% of the
dollar value of their creditors' claims as measured on the date Plaintiffs filed for bankruptcy.
(D.I. 1 ¶¶ 7, 12.)  A relatively small number of creditors, however, hope to use Genesis as a
means to extract from Defendants in this Action the market value increases experienced by
Bitcoin and other crypto assets during the pendency of the Bankruptcy Proceedings.  (*Id.* ¶ 13.)

On November 28, 2023, Plaintiffs filed an Amended Joint Chapter 11 Plan, and on
December 6, 2023, filed their Amended Disclosure Statement (the "Disclosure Statement") with
respect to the plan.  (*Id.* ¶ 10.)  On December 29, 2023, Plaintiffs filed their first "Plan
Supplement," which contained a ten-page exhibit describing the causes of action expressly
reserved by the Debtors, including "all Causes of Action that may be brought . . . against any
DCG Party (including DCG and Barry Silbert) or against Ducera LLC and/or its current or
former employees, directors, officers, equity holders, and agents (including ) and related parties,
including claims for alter ego, preference, fraudulent conveyance, breach of fiduciary duty,
equitable subordination, recharacterization, and improper setoff, breach of contract, and claims
sounding in fraud or aiding and abetting fraud."  (Ex. C at 11.)  The Bankruptcy Court issued
orders confirming the Plan on May 17 and 31, 2024 respectively.  (*Id.*)  Plaintiffs filed a further
Amended Plan on July 21, 2024, which became effective as of August 2, 2024 (thee "Amended

Plan"). (*See Id.* ¶ 11; D.I. 1-1 at 218-43.)

The claims in this Action feature prominently in both the Amended Plan and in the Disclosure Statement. (D.I. 1 ¶¶ 5, 14.) The Disclosure Statement, for example, describes Genesis's pursuit of the "Retained Causes of Action"—which include "all causes of action or other claims against . . . any of the DCG Parties"—as one of the Amended Plan's "key components." (Ex. D at 2-3.) The Disclosure Statement goes on to describe Plaintiffs' "Potential Claims Against the DCG Parties" in detail, devoting over seven pages to the claims that Genesis might bring against DCG based on, among other things, alter-ego liability, a promissory note issued by DCG in June 2022 and various transactions undertaken on September 29, 2022. (D.I. 1-1 at 265-72.) These alleged claims are focal points of the Complaint in this Action. (*See, e.g.*, D.I. 1-1 at 13-14 ¶¶ 14-15, 90-135 ¶¶ 147-196.)

Under the Amended Plan, Genesis also set aside a $70 million litigation reserve to fund litigation brought by the creditor-appointed PA Officer (i.e., plan administrator) and Litigation Oversight Committee ("LOC") against various defendants, including Defendants here, and any balance remaining in the reserve is to be distributed to creditors subject to the orders of the Bankruptcy Court. (D.I. 1 ¶¶ 6 n.3, 13, 18, 27; D.I. 1-1 at 228 (§I.A.171), 232 (§ IV.A.4), 234-35 (§ IV.B.2.c).) The Retained Causes of Action that Genesis is pursuing in this Action are assets of Plaintiffs' bankruptcy estates, and any recoveries therefrom will be distributed to Plaintiffs' creditors pursuant to the Amended Plan and its "Distribution Principles." (D.I. 1 ¶¶ 25, 28; D.I. 1-1 at 223 (§ I.A.19), 224-25 (§ I.A.35), 226 (§ I.A.78), 229 (§ I.A.208) & 235-35 (§ IV.B.3).) This Action is subject to oversight by Debtors' PA Officer as advised by the LOC, and their pursuit, settlement, or other disposition of the Retained Causes of Action must comport with the Plan. (D.I. 1 ¶ 26; D.I.1-1 at 227 (§ I.A.164), 23-33 (§§ IV.A.2, A.4).) Under the

Amended Plan, moreover, the Bankruptcy Court retains express jurisdiction to "adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor [i.e., Plaintiffs in this Action]"—including the Retained Causes of Action asserted here. (D.I. 1 ¶ 14; D.I. 1-1 at 242 (§ XI.7); *see also id.* at 243 § XI.13 (retaining jurisdiction to "resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases").)[3]

In confirming the Amended Plan, the Bankruptcy Court relied on Plaintiffs' intention to pursue the claims asserted in this Action. The Bankruptcy Court observed, for example, that "the contemplated focus of post-confirmation activity under this 'No Deal' Plan is litigation aimed at DCG . . . ." *In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 511 (Bankr. S.D.N.Y. 2024). Similarly, in its findings of fact, the Bankruptcy Court specifically found that the Amended Plan "provide[d] adequate and proper means for implementation of the Plan" as required by 11 U.S.C. § 1123(a)(5) because "Article IV of the Plan [i.e., the portion discussing the PA Officer's and LOC's pursuit of the Retained Causes of Action against Defendants], the Distribution Principles, and the Plan Supplement [including, for example, the lengthy description of the claims Plaintiffs are pursuing against Defendants in this Action] (a) provide for the sources of consideration for Plan distributions . . .; (b) provide for the equitable calculation of distributions across Claims denominated in fiat currency and different types of Digital Assets; [and] (i) provided for the preservation of Causes of Action and the appointment of the Litigation Oversight Committee and the PA Officer to pursue such Retained Causes of Action . . . ." (Ex. E ¶ 25.)

In May 2025, Plaintiffs commenced litigation against Defendants. For reasons known

---

[3] As provided in the Amended Plan, the Debtors automatically become the "Wind-Down Debtors" on and after the effective date and are not separate entities. (D.1-1 at 236 (§ IV.B.4); *see also* Ex. F at 30-31 (§ I.A.236, 240-42), 34 (§ I.F).)

only to Plaintiffs and their counsel, they elected to split their claims and file two substantially similar litigations against the same defendants, but in different courts. *First*, Plaintiffs commenced this Action on May 13, 2025 in the Delaware Court of Chancery. (D.I. 1 ¶¶ 1, 3, 15.) The Complaint asserts claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, unjust enrichment, fraud, negligent misrepresentation, and alter ego. (D.I.1-1 at 133-200.) Through these causes of action, Plaintiffs demand that DCG, together with its current and former officers and advisors, pay Bitcoin and other crypto assets to Genesis sufficient to remunerate Genesis's creditors for crypto assets they claim Genesis owed them but failed to repay as of the commencement of the Debtors' Bankruptcy Proceedings, and which they baselessly accuse Defendants of "loot[ing] from Genesis." (D.I. 1-1 at 14 ¶ 22.) Plaintiffs allege that their purpose in seeking this recovery is to obtain the value of "the appreciation of the cryptocurrency" since Genesis filed for bankruptcy (*id.*)—that is, to try and force Defendants to guarantee Plaintiffs' creditors the market value increases experienced by the crypto assets that Plaintiffs failed to repay when they filed for bankruptcy.

*Second*, just six days after filing this Action, GGC and GAP—two of the three Plaintiffs in *this* Action—filed an adversary proceeding in the Bankruptcy Court against DCG, Silbert, Moro, Ducera and Kramer (all of whom are Defendants in this Action), as well as several other defendants affiliated with DCG, related to Mr. Silbert, or affiliated with that relative. (*See Genesis Global Capital, LLC v. Digital Currency Group, Inc.*, Adv. Pro. No. 25-01097 (Bankr. S.D.N.Y. filed May 19, 2025) (the "Adversary Proceeding"); D.I. 1 ¶¶ 3-5, 15; D.I. 1-1 at 286-338.) The Adversary Proceeding asserts claims for preference, voidable transfer, fraudulent transfer, recovery of property, and disallowance of bankruptcy claims. (D.I. 1 ¶ 15; D.I. 1-1 at 279 ¶ 9.) Through the Adversary Proceeding, Genesis seeks "disgorgement in-kind of

cryptocurrency and USD which" Defendants allegedly looted from Plaintiffs GGC and GAP during the period January 2022 through January 2023 (D.I. 1-1 at 279 ¶ 9)—i.e., in essence the exact same relief they are seeking in this Action.

As described in Defendants' Notice of Removal, both actions involve largely the same plaintiffs and defendants and are based on substantially overlapping allegations. (D.I. 1 ¶ 17; *compare* D.I. 1-1 at 15-18 ¶¶ 23-25, 28-33 *with id.* at 281-84 ¶¶ 18-21, 28-29.) Both state, among other assertions that: (i) Genesis lacked adequate risk management practices and concentrated its loans among a small number of counterparties (*compare* D.I. 1-1 at 50-62 ¶¶ 81-102 *with id.* at 288-94 ¶¶ 47-63); (ii) Genesis and DCG mischaracterized a $1.1 billion promissory note that DCG provided to Genesis to shore up its balance sheet (*compare id.* at 93-7 ¶¶ 154-60, *with id.* 299-301 ¶¶ 80-82); and (iii) DCG and Genesis misrepresented the nature of equity infusions and loan forgiveness by DCG and its subsidiaries (*compare id.* 114-116 ¶¶ 185-88, *with id.* 306-07 ¶¶ 103-106. Both actions concern many of the same legal questions, including the date on which Genesis became insolvent (*compare, e.g., id.* at 5 ¶ 1, 11 ¶ 9, 64-67 ¶¶ 107-11, 138 ¶ 219, & 154-55 ¶ 225 *with id.* at 276-77 ¶ 3, 291-92 ¶ 56, 307 ¶ 106 & 316 ¶ 153) and whether the same defendants improperly withdrew assets from Genesis following its alleged insolvency (*compare id.* at 12-13 ¶ 13, 71 ¶ 116, 75 ¶ 124, 85 ¶ 138 & 117 ¶ 189 *with id.* at 275-76 ¶ 1, 303-06 ¶¶ 91-93, 97-102, 310-12 ¶¶ 125-34). And both actions seek the same relief of compelling defendants to return assets that they allegedly stole from Genesis. (*Compare, e.g., id.* at 217 ¶ 367 *with id.* at 322 (Prayer for Relief ¶ (d).) Accordingly, the Adversary Proceeding and this Action present the courts with the *same* factual and legal issues for determination.

## **ARGUMENT**

Transfer of this removed Action to the SDNY is appropriate under 28 U.S.C. §§ 1412 and 1404(a) so that it may proceed together with Plaintiffs' Adversary Proceeding before the

Bankruptcy Court. Section 1412, the bankruptcy transfer statute, permits transfer of "a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Similarly, Section 1404(a), the general transfer statute for civil actions, authorizes transfer "[f]or the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). As set forth below, this Action indisputably is "a case or proceeding under title 11," and transferring it to the Bankruptcy Court would promote the "interest of justice" and the convenience of the parties and witnesses. *See, e.g. Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 650 (D. Del. 2011) (transferring case removed under § 1452 to district where related bankruptcy was pending for automatic referral to bankruptcy court).

I.    **This Action Is "A Case or Proceeding Under Title 11" Within the Meaning of Section 1412 Because It Is "Related to" Plaintiffs' Bankruptcy**

Section 1412 governs the transfer of cases "related to" bankruptcy proceedings, such as this Action. *See, e.g., Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1211 (3d Cir. 1991)*, reh'g granted and opinion vacated* (Jan. 10, 1992), *opinion reinstated on reh'g* (Mar. 24, 1992) (Section 1412 was "proper method" for transferring "related to" bankruptcy case); *Abrams v. Gen. Nutrition Cos., Inc.*, 2006 WL 2739642, at *8 (D.N.J. Sept. 25, 2006) ("Although Section 1412 speaks only of proceedings 'under' the Bankruptcy Code, it is also applicable for determining whether a proceeding 'related to' a bankruptcy case may be transferred.").

As set forth in the Notice of Removal, this Action easily satisfies the standard for "related to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b) because it is closely related to Plaintiffs' Bankruptcy Proceedings pending in the Bankruptcy Court. (D.I. 1 ¶¶ 19-29.) "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action." *Street v. The End of the Rd. Tr.*, 386 B.R. 539, 545 (D. Del. 2008) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). "'Related matters are generally causes

of action under state law that are imported into the bankruptcy because of their impact on the size of the debtor's estate, and hence the distribution to the debtor's creditors.'" *In re Essar Steel Minn., LLC*, 47 F.4th 193, 197 (3d Cir. 2022) (citation omitted).

Post-confirmation, the relevant inquiry for "related to" jurisdiction is "whether there is a 'close nexus' between the underlying claims and the bankruptcy proceeding. When a matter 'affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan,' it will have the requisite close nexus and render post-confirmation jurisdiction appropriate." *Street*, 386 B.R. 539, 545 (D. Del. 2008) (quoting *In re Resorts Int'l*, 372 F.3d 154, 168-69 (3d Cir. 2004) (citation omitted)). Courts "apply varying standards that focus on whether the action could conceivably affect the implementation of a confirmed plan." *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294-95 (3d Cir. 2012). Thus, post-confirmation bankruptcy jurisdiction exists over a "proceeding [that] asks the [court] to enforce rights in the property of the debtors and their estates and will facilitate the fair distribution of their assets to creditors." *In re Venoco LLC*, 998 F.3d 94, 99 (3d Cir. 2021) (exercising such jurisdiction "furthers the Court's *in rem* functions" (citing *Cent. Va. Comm. College v. Katz*, 546 U.S. 356 (2006))). Likewise, the close-nexus test is satisfied where the debtor "is a party to the dispute," and the dispute would have a "more than incidental" effect "on the debtor's liabilities." *In re Shenango Grp. Inc.*, 501 F.3d 338, 344 (2007) (post-confirmation dispute regarding debtor's liability under bankruptcy plan to fund pension plan); *cf. In re Seven Fields Dev. Corp.*, 505 F.3d 237, 260, 262-63 (3d Cir. 2007) (post-confirmation dispute was core proceeding where it involved pre-confirmation conduct on which "the bankruptcy judge relied in confirming the plan" relating to debtors' solvency).

This Action readily satisfies these standards: (i) The debtors (i.e., Plaintiffs) are parties

to the Action; (ii) the claims at issue—the Retained Causes of Action—are assets of Plaintiffs'
estates; (iii) those claims are a "key feature" and the "focus" of the Amended Plan; (iv) the
Bankruptcy Court specifically relied on them in confirming the Amended Plan; (v) Plaintiffs are
funding the litigation from a reserve that is a "Distributable Assets" of their estates and remains
subject to the Bankruptcy Court's orders; (vi) the litigation is being managed by the PA Officer
and LOC, whose positions were created by the Amended Plan and who must comply with the
plan's terms, including the Distribution Principles; and (vii) the recoveries (if any) in this Action
are subject to and must comport with the Amended Plan's Distribution Principles and affect what
(if any) additional payments Plaintiffs' creditors will receive. (*See supra* 6-10; D.I. 1 ¶¶ 20-29.)

Further, this Action presents many of the same legal and factual issues as the Adversary
Proceeding, which Plaintiffs allege "arises under" their chapter 11 cases and, thus, is a core
proceeding that must be brought in the Bankruptcy Court. (*Supra* at 9-11; D.I. 1 ¶ 17; D.I. 1-1 at
279-80 ¶¶ 10-13.) Because the claims in both cases are inextricably intertwined, Plaintiffs, in
essence, are trying to litigate through this Action, outside of Bankruptcy Court, the issues that
will govern the Adversary Proceeding that they concede is a core proceeding and that can be
pursued only in Bankruptcy Court. *See* 28 U.S.C. § 157(b). In short, this proceeding asks a
court "to enforce rights in the property of the debtors and their estates and will facilitate the fair
distribution of their assets to creditors," *Venoco LLC*, 998 F.3d at 99, and will have a "more than
incidental" effect "on Plaintiffs' liabilities," *Shenango Grp. Inc.*, 501 F.3d at 344. While the
claims in this action are state causes of action, they have the potential for an outsized impact on
"the debtor's estate, and hence the distribution to the debtor's creditors.'" *Essar Steel Minn.,
LLC*, 47 F.4th at 197.[4] Because this Action is related to Plaintiffs' Bankruptcy Proceedings, and

---

[4] To the extent Plaintiffs contended in their remand motion that this case does not satisfy
(….continued)

because—as set forth below, it satisfies the remaining requirements of Sections 1412 and 1404(a), this Court should transfer it to the SDNY.

## II. Transfer to the SDNY Serves Both the Interests of Justice and the Convenience of the Parties and Witnesses

The remaining analysis under both Section 1412 and Section 1404(a) is "essentially the same, turning on the same issues of 'the interest of justice' and 'the convenience of the parties.'" *In re Welded Constr., L.P.*, 609 B.R. 101, 118 (Bankr. D. Del. 2019) (citation omitted). Courts have broad discretion to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum," and no single factor is determinative. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995) (internal quotation marks and citation omitted); *Kurz*, 464 B.R. at 650. Here, all relevant factors clearly support transfer to the SDNY.

### A. Transfer to SDNY Will Further the Interests of Justice

Transferring this Action will strongly serve the interests of justice by eliminating duplicative litigation, conserving judicial resources and reducing the risk of inconsistent rulings on legal and factual issues common to both this Action and the Adversary Proceeding. The interests of justice include "judicial economy considerations, which support 'having the two actions in the same district (through transfer)' when the two cases are in different courts but involve 'the same or similar issues and parties.'" *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (citation omitted); *see also Eagle Pharms., Inc. v. Eli Lilly & Co.*, 2018

---

the "close nexus" test under *Resorts International* (D.I. 5 at 9-13), they are wrong. That case "teaches that the mere fact that a dispute may arise post-confirmation is not determinative of the jurisdictional question," and the inquiry remains "multi-faceted." *Shenango Grp. Inc.*, 501 F.3d at 344. But as in *Shenango*—and unlike *Resorts International*—the debtors *are* parties to this Action, this Action *does* require interpretation and administration of the Amended Plan, and it *does* have more than an incidental "effect on the debtor's liabilities." *Id.* at 344.

WL 3492145, at *6 (D.N.J. July 20, 2018) (transferring action to "eliminate any possibility of inconsistent rulings or duplicative discovery" (citing *CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 651 (D.N.J. 2004) ("[T]ransferring a case serves not only private interests but also the interests of justice" where "related lawsuits are pending elsewhere" as it "eliminates the possibility of inconsistent results . . . and conserves judicial resources.")).

Courts routinely transfer actions where, as here, they relate to a bankruptcy proceeding in another district. *See, e.g.*, *Kurz*, 464 B.R. at 648-50 (transferring case for referral to bankruptcy court as "the most effective and economical use of judicial resources because that court is familiar with both the details of the bankruptcy case and the [removed action]" and would promote "the strong public policy favoring centralization of bankruptcy matters"); *Schlenker v. Immucor, Inc.*, 2009 WL 5033972, at *5 (E.D. Pa. Dec. 22, 2009) (transferring because "[t]he presence of a related case in the transferee forum is a strong factor favoring transfer").

Here, judicial economy overwhelmingly supports transfer. This Action and the Adversary Proceeding are closely related, with many overlapping parties and legal and factual issues. (*Supra* 10-11; D.I. 1 ¶¶ 2, 15, 23.) By nearly simultaneously filing both actions in different courts, Plaintiffs have transparently split their claims and engaged in improper forum shopping. (D.I. 1 ¶¶ 3, 5, 15-16; *see also supra* at 8-10.) Absent transfer, two different courts— i.e., this Court (or, if this Action is remanded, the Delaware Court of Chancery) and the Bankruptcy Court—will have to decide many overlapping factual and legal issues, including the propriety and value of the June 2022 promissory note that DCG provided to Genesis, the nature and value of the challenged September 2022 transactions, the date on which Plaintiffs became insolvent, and whether Defendants retain any of Plaintiffs' (or their creditors') crypto assets, as well as whether such assets are subject to disgorgement. (*Supra* at 10; D.I. 1 ¶ 17.) And,

regardless of which court decides these issues in *this* Action, the Bankruptcy Court will have to decide them in the Adversary Proceeding, making it the *only* forum that can efficiently resolve these issues across the spectrum of litigation among the parties. Transferring this Action to the SDNY for referral to the Bankruptcy Court thus will eliminate the unnecessary burden that Plaintiffs' claim splitting has forced on a second court and will ensure the parties with consistent legal and factual rulings on the overlapping issues in the two cases. *See Howmedica*, 867 F.3d at 402.[5]

Moreover, the Bankruptcy Court, unlike the Court of Chancery or this Court, is already familiar with many of the overlapping factual and legal issues because Judge Lane has been presiding over the Bankruptcy Proceedings—including five litigated adversary proceedings and discovery disputes involving parties here—for the last two-and-one-half years. (*Supra* 6-7; D.I. 1 ¶ 9 & n.4.) The efficiency gains resulting from Bankruptcy Cour adjudication alone strongly support transfer. *See, e.g., Bank of Am., N.A. (USA) v. US Airways, Inc.*, 2005 WL 3525680, at *3 (D. Del. Dec. 21, 2005) (transferee bankruptcy court was "simply in a far better position than [the transferor court] to expeditiously decide critical questions pertaining to . . . the merits of the case"); *Kurz*, 464 B.R. at 649 (transferee court was familiar "both the details of the bankruptcy case and the [present matter]"); *Thomason Auto Grp., LLC v. Ferla*, 2009 WL 3491163, at *6 (D.N.J. Oct. 23, 2009) (transferring for "efficient administration of the bankruptcy estate and proceedings and the avoidance of duplicative or inconsistent rulings, given the overlapping

---

[5] Other public interests that courts consider as part of the "interest of justice" inquiry also support transfer. A judgment by the Bankruptcy Court would be enforceable and there are no practical or administrative issues with litigating before the Bankruptcy Court, before which the majority of Plaintiffs and Defendants are currently litigating the substantially similar Adversary Proceeding. Nor does Delaware have any particular interest in a dispute between Plaintiffs and Defendants who are based in or around New York concerning transactions entered into in New York. *See, e.g.*, *Jumara*, 55 F.3d at 879-80 (enumerating additional factors).

issues and claims, favors transfer.").  Transfer likewise will avoid the practical difficulties and waste of resources entailed by having "two different courts overseeing [potential] discovery and ruling on the inevitable motions that discovery sought in one venue has already been precluded in another," making it the proper outcome here.  *Eagle Pharms., Inc.*, 2018 WL 3492145, at *6.[6]

### B. Transfer Will Serve the Convenience of the Parties and Witnesses

Transferring this Action to the SDNY for referral to the Bankruptcy Court similarly will serve the relative convenience of the parties.  Courts generally assess the parties' convenience by balancing private interests including: (1) "the plaintiffs' forum preference as manifested by the plaintiffs' original forum choice," (2) "the defendant's preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of the books and records."  *Jumara*, 55 F.3d at 879) (citations and internal quotation marks omitted).

These interests favor transfer here.  Defendants prefer to litigate this Action with the Adversary Proceeding in the Bankruptcy Court.  While Plaintiffs filed this Action in the Court of Chancery, their original choice of forum is entitled to little weight because they chose to file

---

[6] Plaintiffs' argument in their remand motion (D.I. 5 at 18-20) that this Action should proceed in the Court of Chancery because it involves breach of fiduciary duty claims governed by Delaware law is misplaced.  Delaware law likely does not apply to the GAP-related claims, as GAP is incorporated in Singapore (D.I. 1-1 at 19 ¶ 25), and New York law likely governs Plaintiffs' fraud and negligent misrepresentation claims because the alleged conduct occurred in New York and involves entities headquartered in New York.  While Plaintiffs contend that New York courts address Delaware law only "episodically," the Bankruptcy Court regularly addresses the same Delaware law issues presented here—including *in the Bankruptcy Proceedings* themselves.  *See Genesis Glob. Holdco, LLC*, 660 B.R. at 509-11 (Lane, J.) (applying Delaware corporate governance law in confirming Plaintiffs' plan); *Ascent Pharms., Inc. v. Purdue Pharma L.P.*, Adv. Pro. No. 22-07029, 2024 WL 3023476, at *4-5 (Bankr. S.D.N.Y. June 14, 2024) (Lane, J.) (applying Delaware law); *In re Firestar Diamond, Inc.*, 654 B.R. 836, 874-75 (Bankr. S.D.N.Y. 2023) (Lane, J.) (applying Delaware veil-piercing law).

their voluntary Chapter 11 petitions in the SDNY and, nearly simultaneously with this Action, filed the Adversary Proceeding in the Bankruptcy Court, thereby conceding that there is no hardship in litigating there. *See, e.g.*, *Miller v. Careminders Home Care, Inc.*, 2014 WL 1779362, at *4 (D.N.J. Apr. 30, 2014) (holding that "the Plaintiff's choice of forum is entitled to less deference when a related action is pending in a different forum"). The parties, witnesses and the events underlying Plaintiffs claims are all centralized around New York. Plaintiffs and Defendants are based in New York or the greater New York area. (D.I. 1-1 at 18-22 ¶¶ 23-25, 27-33.) Plaintiffs assert certain claims as an assignee of non-party Gemini Trust Company, LLC, which is likewise based in New York. (*Id.* at 19-20 ¶ 26.) Accordingly, the events at issue largely took place in or around New York. Many of the parties' current and former employees and advisers who may be called as witnesses if this action survives a motion to dismiss, as well as other evidence, are located in or near New York. Further, all parties have selected New York lawyers as their primary counsel. The Bankruptcy Court is therefore convenient for all parties and potential witnesses. *See Kurz*, 464 B.R. at 648-49 (transferring action based on similar private interests). Conversely, this action has absolutely no connection to Delaware beyond the fact that some of the entities involved are organized under the laws of Delaware (D.I. 1-1 at 18, ¶¶ 23- 24, 20 ¶ 27, 22 ¶ 32), which has no bearing on the forum's convenience.

## III.    The Court Should Not Defer Ruling on Defendants' Transfer Motion

In their motion to remand, Plaintiffs mistakenly contend that this Court should hold off on ruling on this motion to transfer until after it has determined the remand issue. (D.I. 5 at 8-9.) Not so. The sole basis on which Plaintiffs request deferral is the supposed need for this Court to assure itself of its subject matter jurisdiction. But it is well established that "remand motions can be presented to and decided by the transferee judge," and therefore, "there is no need to delay transfer in order to accommodate any interest of the transferor court in resolving a pending

remand motion." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 170 F. Supp. 2d 1346,

1347 (J.P.M.L. 2001); *see also, e.g., Bank of Am., N.A. v. U.S. Airways, Inc.*, 2005 WL 3525680,

at *1 (D. Del. Dec. 21, 2005) (granting motion to transfer under Section 1412 and declining to

rule on motion to remand). *Bank of America* is instructive. There, this Court confirmed that it

had jurisdiction under Section 1334 following removal and then transferred the case to the

district where the debtor's bankruptcy was pending because the bankruptcy judge "[wa]s simply

in a far better position than this Court to expeditiously decide critical questions pertaining to

Bank of America's Motion To Remand and the merits of the case," including whether the

plaintiff's claims in the state lawsuit were "'functionally identical' to administrative claims filed"

by the same plaintiff in the Bankruptcy. *Bank of Am., N.A.*, 2005 WL 3525680, at *3. So too

here. The same jurisdictional inquiry presented by the remand motion is also a component of the

transfer analysis under Section 1412, and it is not a close question. For practical and efficiency

reasons, this Court should either transfer this proceeding to the SDNY and allow Judge Lane to

determine Plaintiffs' remand motion, or it should consider both motions together and deny

Plaintiffs' remand motion and grant Defendants' transfer motion.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court transfer this

Action to the SDNY for referral to the Bankruptcy Court.

DATED: June 20, 2025

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

*/s/ Kevin M. Coen*
Kevin M. Coen (#4775)
Jacob M. Perrone (#7250)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
kcoen@morrisnichols.com
jperrone@morrisnichols.com

-and-

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner
*(admitted pro hac vice)*
Benjamin S. Kaminetzky
*(admitted pro hac vice)*
Elliot Moskowitz
*(admitted pro hac vice)*
Daniel J. Schwartz
*(admitted pro hac vice)*
Matthew R. Brock
*(admitted pro hac vice)*
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
marshall.huebner@davispolk.com
ben.kaminetzky@davispolk.com
elliot.moskowitz@davispolk.com
daniel.schwartz@davispolk.com
matthew.brock@davispolk.com

*Counsel for Digital Currency Group, Inc.*

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

*/s/ S. Mark Hurd*
S. Mark Hurd (#3297)
Jacob M. Perrone (#7250)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
shurd@morrisnichols.com
jperrone@morrisnichols.com

-and-

CLIFFORD CHANCE US LLP
Daniel Silver
(*pro hac vice application to be filed*)
Anthony M. Candido
(*pro hac vice application to be filed*)
John P. Alexander
(*pro hac vice application to be filed*)
Two Manhattan West
375 9th Ave.
New York, NY 10001
(212) 878-8000
Daniel.silver@cliffordchance.com
Anthony.candido@cliffordchance.com
John.alexander@cliffordchance.com

*Counsel for Defendant Barry Silbert*

HEYMAN ENERIO GATTUSO
   & HIRZEL LLP

*/s/ Patricia L. Enerio*
Patricia L. Enerio (#3728)
Brendan Patrick McDonnell (#7086)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 472-7300
penerio@hegh.law
bmcdonnell@hegh.law

- and -

ARNOLD & PORTER KAYE
   SCHOLER LLP

Marcus Asner
(*pro hac vice application to be filed*)
Christian Schultz
(*pro hac vice application to be filed*)
Michael Krouse
(*pro hac vice application to be filed*)
Tyler Fink
(*pro hac vice application to be filed*)
Kodjo Kumi
(*pro hac vice application to be filed*)
250 W 55th Street
New York, NY 10019-9601
212.836.8000
Marcus.Asner@anroldporter.com
Christian.Schultz@arnoldporter.com
Michael.Krouse@arnoldpoert.com
Tyler.Fink@arnoldporter.com
Kodjo.Kumi@arnoldporter.com

*Counsel for Soichiro "Michael" Moro*

MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP

*/s/ Kevin M. Coen*
Kevin M. Coen (#4775)
Jacob M. Perrone (#7250)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
(302) 658-9200
kcoen@morrisnichols.com
jperrone@morrisnichols.com

- and -

SIMPSON THACHER & BARTLETT
LLP

Jeffrey H. Knox
(*pro hac vice application to be filed*)
Karen M. Porter
(*pro hac vice application to be filed*)
900 G Street, N.W.
Washington, District of Columbia 20001
Tel: (202) 636-5500
Fax: (202) 636-5502
jeffrey.knox@stblaw.com
karen.porter@stblaw.com

Peter E. Kazanoff
(*pro hac vice application to be filed*)
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-3525
Fax: (212) 455-2502
pkazanoff@stblaw.com

*Attorneys for Defendant Mark Murphy*

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)
Maliheh Zare (#7133)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
mzare@mccarter.com

- and -

MORRISON & FOERSTER LLP

Jessica Kaufman
(*pro hac vice application to be filed*)
Janie C. Buckley
(*pro hac vice application to be filed*)
250 West 55th Street
New York, NY 10019-9601
212.468.8000
Jkaufman@mofo.com
jbuckley@mofo.com

*Counsel for Defendants Ducera Partners,
LLC and Michael Kramer*