# Exhibit 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GENESIS GLOBAL HOLDCO, LLC, GENESIS GLOBAL CAPITAL, LLC, and GENESIS ASIA PACIFIC PTE. LTD., | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:25-cv-00733-RGA ) ) |
| DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, DUCERA PARTNERS LLC, and MICHAEL KRAMER, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

## ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

*Of Counsel*:

Philippe Z. Selendy
Jennifer M. Selendy
Claire E. O'Brien
Laura M. King
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, New York 10104
(212) 390-9000
pselendy@selendygay.com
jselendy@selendygay.com
cobrien@selendygay.com
lking@selendygay.com

Dated: June 30, 2025

Rudolf Koch (#4947)
Robert L. Burns (#5314)
Andrew L. Milam (#6564)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302)-651-7700
Koch@rlf.com
Burns@rlf.com
Milam@rlf.com

*Attorneys for Plaintiffs Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific PTE. Ltd.*

## TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ..................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ....................................................3

SUMMARY OF ARGUMENT ...................................................................................4

STATEMENT OF FACTS .........................................................................................4

ARGUMENT ...........................................................................................................5

I.     THE COURT SHOULD DECIDE THE REMAND MOTION BEFORE HEARING THE TRANSFER MOTION ..........................................................5

II.    THE COURT SHOULD DENY THE TRANSFER MOTION...........................7

    A.    The Court Should Deny the Transfer Motion as Moot ...........................7

    B.    Section 1412 Does Not Apply ..............................................................7

        1.    There is No "Related To" Jurisdiction.........................................8

        2.    Section 1412 Permits Transfer Only of Cases and Proceedings "Arising Under" the Bankruptcy Code ......................................12

    C.    The Discretionary Factors Weigh Strongly Against Transfer Under Both Sections 1412 and 1404(a)..............................................................13

        1.    Plaintiffs' Forum Choice is Paramount.......................................14

        2.    Transfer to S.D.N.Y. Does Not Further the Interests of Justice ...............15

        3.    Delaware Serves the Convenience of the Parties.......................19

CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bank of America, N.A. (USA) v. U.S. Airways, Inc.*,
  2005 WL 3525680 (D. Del. Dec. 21, 2005)..............................................................7

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988)......................................................................................5

*CNH Am. LLC v. Kinzenbaw*,
  2009 WL 3737653 (D. Del. Nov. 9, 2009) ..............................................................14

*Co. of America Sales Practice Litigation*,
  170 F. Supp. 2d 1346 (J.P.M.L. 2001)..................................................................7

*David & Lily Penn, Inc. v. TruckPro, LLC*,
  2019 WL 4671158 (D. Del. Sept. 25, 2019) ............................................................14

*In re Essar Steel Minnesota, LLC*,
  47 F.4th 193 (3d Cir. 2022) ...........................................................................8

*In re The Fairchild Corp.*,
  452 B.R. 525 (D. Del. 2011) .......................................................................10, 11

*In re Genesis Glob. Holdco, LLC*,
  660 B.R. 439 (Bankr. S.D.N.Y. 2024)..................................................................11

*In Re G-I Holdings, Inc.*,
  564 B.R. 217 (Bankr. D.N.J. 2016) ....................................................................17

*In re Grace Cmty., Inc.*,
  262 B.R. 625 (Bankr. E.D. Pa. 2001) ...................................................................5

*In re Haws*,
  158 B.R. 965 (Bankr. S.D. Tex. 1993) .................................................................10

*In re Hayes Lemmerz Int'l Inc.*,
  312 B.R. 44 (Bankr. D. Del. 2004) ..................................................................7, 13

*Intell. Ventures I LLC v. Altera Corp.*,
  842 F. Supp. 2d 744 (D. Del. 2012)..........................................................7, 13, 15, 20

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995)................................................................ 20

*Maritime Electric Co. v. United Jersey Bank*,
    959 F.2d 1194 (3d Cir. 1991).......................................................... 12, 13

*Metro Storage Int'l LLC v. Harron*,
    275 A.3d 810 (Del. Ch. 2022)........................................................... 18

*Miller v. Careminders Home Care, Inc.*,
    2014 WL 1779362 (D.N.J. Apr. 30, 2014) ...................................... 14

*Multibank, Inc. v. Access Glob. Cap. LLC*,
    594 B.R. 618 (Bankr. S.D.N.Y. 2018).............................................. 12

*Nice Sys., Inc. v. Witness Sys., Inc.*,
    2006 WL 2946179 (D. Del. Oct. 12, 2006) ..................................... 20

*N. Am. Catholic Educ. Programming Found., Inc. v. G*heewalla,
    2006 WL 2588970 (Del. Ch. Sept. 1, 2006),
    *aff'd*, 930 A.2d 92 (Del. 2007)......................................................... 17

*In re Nu Ride Inc.*,
    2025 WL 1600566 (Bankr. D. Del. June 5, 2025) .......................... 11

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
    848 F.2d 414 (3d Cir. 1988)............................................................. 11

*Onewoo Corp. v. Hampshire Brands, Inc.*,
    566 B.R. 136 (Bankr. S.D.N.Y. 2017).............................................. 12

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
    615 B.R. 529 (D. Del. 2020).............................................................. 6

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004).......................................................... 1, 10

*Robert D. Mabe, Inc. v. OptumRX*,
    43 F.4th 307 (3d Cir. 2022) ............................................................. 12

*In re Seven Fields Development Corp.*,
    505 F.3d 237 (3d Cir. 2007)............................................................ 8, 9

*In re Shenango Group Inc.*,
    501 F.3d 338 (3d Cir. 2007)............................................................ 8, 9

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970).............................................................. 14

*Stern v. Marshall*,
    564 U.S. 462 (2011) ................................................................................................. 19

*Street v. End of the Rd. Tr.*,
    386 B.R. 539 (D. Del. 2008) ..................................................................................... 8

*Tolliver v. Qlarant Quality Sols., Inc.*,
    2022 WL 797829 (D. Del. Mar. 16, 2022) ............................................................... 7

*In re Venoco, LLC*,
    596 B.R. 480 (Bankr. D. Del. 2019) ........................................................................ 9

*In re Venoco, LLC*,
    610 B.R. 239 (D. Del. 2020) ..................................................................................... 9

*In re Venoco LLC*,
    998 F.3d 94 (3d Cir. 2021) .................................................................................... 8, 9

## Statutes

11 U.S.C. § 101 ............................................................................................................... 17

28 U.S.C. § 1334 ............................................................................................................. 12

28 U.S.C. § 1404 ............................................................................................................... 3

28 U.S.C. § 1412 ........................................................................................................ 2, 3, 4

28 U.S.C. § 1452 ........................................................................................................... 4, 6

## Other Authorities

*Preserving Estate Causes of Action for Post-Confirmation Litigation*,
    32 Cal. Bankr. J. 427 (2013) ................................................................................... 11

Genesis Global Holdco, LLC ("GGH"), Genesis Global Capital, LLC ("GGC"), and Genesis Asia Pacific PTE. Ltd. ("GAP," and together with GGH and GGC, "Genesis" or "Plaintiffs") respectfully submit this answering brief in opposition to the Motion to Transfer ("Transfer Motion") filed by Digital Currency Group, Inc. ("DCG"), Barry Silbert, Mark Murphy, Michael Moro, Ducera Partners LLC ("Ducera"), and Michael Kramer, and joined by Michael Kraines (together with DCG, Silbert, Murphy, Moro, Ducera, and Kramer, "Defendants").

## PRELIMINARY STATEMENT

This Delaware lawsuit has no "close nexus" with "the interpretation, implementation, consummation, execution, or administration" of Genesis's confirmed bankruptcy plan (the "Plan"), and "related to" jurisdiction is therefore absent. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004). As described in Plaintiffs' Opening Brief in Support of their Motion to Remand (the "Remand Motion"), D.I. 5, Genesis—a former Delaware cryptocurrency lending and borrowing platform—filed a Verified Complaint ("Complaint") in the Court of Chancery of the State of Delaware ("Chancery Court") asserting Delaware common law claims against its controlling parent company, Delaware-incorporated cryptocurrency investment firm DCG; DCG's founder and CEO, Silbert; DCG executives Kraines and Murphy; Genesis's former CEO, Moro; DCG's Delaware-organized financial advisor, Ducera; and Ducera's founder and DCG stockholder, Kramer. Plaintiffs' Complaint details extraordinary pre-petition corporate wrongdoing, breach of Delaware fiduciary duties, and disregard of the Delaware corporate form. Plaintiffs seek primarily equitable remedies, including the return of cryptocurrencies in kind. Plaintiffs chose to litigate their Delaware state law claims in a court that has the constitutional authority to resolve them. Chancery Court is also best suited to resolve claims of egregious corporate malfeasance under Delaware law in the unregulated cryptocurrency industry, and to address the novel legal issue of in-kind recovery related to uniquely volatile assets.

Lacking any basis for subject matter jurisdiction, this case cannot be heard in any federal court nor transferred to the Southern District of New York ("S.D.N.Y."). Within one day of DCG's improper attempt to remove this Delaware state law action, Plaintiffs filed their Remand Motion, explaining that there is no federal jurisdiction and, in any event, that abstention and equitable doctrines compel remand to Chancery Court—the premier court in the country for corporate disputes such as this one. *See generally* D.I. 5. Faced with Defendants' subsequent Transfer Motion, this Court must first determine whether there is federal jurisdiction to hear this action before ruling on Defendants' later-filed request for transfer. The Court should also determine whether removal to federal court is proper at all under the mandatory and permissive abstention doctrines and principles of equitable remand, before considering a discretionary motion challenging Plaintiffs' chosen venue based on convenience. Defendants' arguments to the contrary improperly invite this Court to skip over Plaintiffs' dispositive abstention and equitable remand arguments, which compel and warrant remand even if this Court had "related to" jurisdiction (it does not). Accordingly, the Court should decide the Remand Motion first, before the Transfer Motion. And because the case should be remanded, the Transfer Motion should be denied as moot.

But even if this Court reaches the merits of Defendants' later-filed Transfer Motion, it should deny that motion. As an initial matter, transfer under 28 U.S.C. § 1412 is improper because no "related to" jurisdiction exists. The Plan was confirmed over a year ago, and Plaintiffs are winding down, liquidating, and distributing their assets. This case does not implicate the interpretation, administration, or any other aspect of the Plan. Rather than explain how state law litigation that could have been brought regardless of Plaintiffs' bankruptcy satisfies the binding "close nexus" legal test for post-confirmation "related to" jurisdiction, Defendants cherry-pick dicta from irrelevant cases to urge the Court to apply a more lenient "related to" standard. Instead,

2

well-reasoned precedent requires remand.  This Court should reject Defendants' efforts to conjure up federal jurisdiction where none exists.

Nor should this case be transferred under the discretionary factors of 28 U.S.C. §§ 1412 and 1404(a).  Plaintiffs' choice of forum is the paramount factor and must be given deference. Defendants must set forth compelling reasons to upset that choice and they have not carried their heavy burden here.  They concede that the "principal difference" between this case and the adversary proceeding pending in S.D.N.Y. Bankruptcy Court "is that in this Action, Plaintiffs assert state-law claims such as breach of fiduciary duty, unjust enrichment and fraud, whereas in the Bankruptcy Court, Plaintiffs assert over 150 preference claims under the bankruptcy code and state fraudulent transfer laws."  D.I. 19 at 2.  That difference is dramatic and dispositive: if this state law action were transferred and referred to S.D.N.Y. Bankruptcy Court, Genesis's insolvency claims would be resolved in the Bankruptcy Court while its Delaware claims would either be reviewed de novo by the District Court, or would otherwise require additional delay and litigation while Plaintiffs move to withdraw the Bankruptcy Court reference for this case to proceed separately in S.D.N.Y. District Court, should they prefer to litigate their Delaware claims before a court with authority to resolve them.  Far from being efficient for the parties or the courts, transfer would require multiple courts and layers of judicial review not required in Chancery Court, as well as added litigation, time, and expense.  In any event, Defendants' claims of substantial overlap in the two cases are a distortion that vastly overstate any connection between Plaintiffs' Delaware common law claims and the highly technical preference claims brought under the Bankruptcy Code against DCG and its affiliates in the adversary proceeding.

## NATURE AND STAGE OF THE PROCEEDINGS

On May 13, 2025, Plaintiffs commenced this common law action in Chancery Court.  The action is directed by the Litigation Oversight Committee ("LOC"), a representative body of

Genesis creditors who are empowered to pursue certain retained causes of action belonging to the estate against third parties to make creditors whole.[1]  On June 12, 2025, DCG filed a Notice of Removal ("Notice") pursuant to 28 U.S.C. § 1452(a), seeking removal to federal court on the ground that there is "related to" jurisdiction.  D.I. 1.  The next day, on June 13, 2025, Plaintiffs moved to remand for lack of federal jurisdiction, or in the alternative, under the doctrines of mandatory or permissive abstention or on equitable grounds.  D.I. 4-5.  On June 20, 2025, after 5 p.m., Defendants moved to transfer this action to S.D.N.Y. to trigger a standing order that would direct this case to S.D.N.Y. Bankruptcy Court.  D.I. 18-19.  Plaintiffs oppose the Transfer Motion.

## SUMMARY OF ARGUMENT

1.      The Court should decide Plaintiffs' Remand Motion before the Transfer Motion. The Court must determine whether it has jurisdiction (it does not) and should determine whether removal to federal court is warranted at all under abstention and equitable remand doctrines before considering Defendants' later-filed and discretionary Transfer Motion.  *See infra* § I.

2.      Because this Court should remand, it should deny the Transfer Motion as moot. The Court should also deny the Transfer Motion on its merits, including because there is no "related to" jurisdiction, Section 1412 only permits transfer of cases and proceedings "arising under" the Bankruptcy Code, and the discretionary factors such as Plaintiffs' choice of forum, the interests of justice, and the convenience of the parties all weigh against transfer.  *See infra* § II.

## STATEMENT OF FACTS

Plaintiffs incorporate the Statement of Facts in their Remand Motion.  *See* D.I. 5 at 4-8.

---

[1] If, as DCG contends, creditors had already been made whole in the bankruptcy, there would be no need for an LOC, empowered to pursue litigation to recoup creditor losses.

## ARGUMENT

I.    **THE COURT SHOULD DECIDE THE REMAND MOTION BEFORE HEARING THE TRANSFER MOTION**

The Court should resolve the Remand Motion before considering the Transfer Motion, because the Remand Motion raises the threshold question of whether removal of Plaintiffs' state law claims from Plaintiffs' chosen forum to federal court was proper.  First, the Remand Motion asks the Court to determine whether there is "related to" jurisdiction such that a federal court may hear Plaintiffs' claims at all.  *See In re Grace Cmty., Inc.*, 262 B.R. 625, 629 (Bankr. E.D. Pa. 2001) (recognizing jurisdiction as a "threshold issue").  Then—only if the Court concludes jurisdiction exists—the Remand Motion asks the Court to decide whether it must or should remand on abstention or equitable grounds.  In other words, it presents the Court with the initial question of whether a state or federal court should hear Plaintiffs' claims. Only if the Court determines that Plaintiffs' claims can and should be heard in federal court should the Court proceed to consider the secondary question of which federal court is the most convenient forum.

Defendants seek piecemeal adjudication of Plaintiffs' first-filed motion, undermining their purported desire for efficiency.  Resolving the Remand Motion in full before hearing the Transfer Motion avoids unnecessary transfer and burdening another federal court with dispositive arguments for abstention and equitable remand already pending—and soon to be fully briefed— here.  This is exactly the kind of "jurisdictional ping-pong" that federal courts disfavor. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988).

Defendants are wrong to contend that the S.D.N.Y. Bankruptcy Court is better positioned to resolve the abstention and equitable remand issues. D.I. 19 at 20.

*First*, the S.D.N.Y. Bankruptcy Court does not have constitutional authority to resolve Plaintiffs' claims, and transfer to S.D.N.Y. will likely trigger litigation over withdrawing the

reference to S.D.N.Y. Bankruptcy Court—further delaying a ruling on the dispositive threshold issues of whether Plaintiffs' claims can or should be heard in federal court at all.

*Second*, this Court is well-situated to resolve the abstention and equitable remand issues raised in the Remand Motion. Indeed, the plain language of 28 U.S.C. § 1452—the statute under which Defendants removed this case—explicitly provides that *this Court*, not the S.D.N.Y. Bankruptcy Court, shall decide remand. *See* 28 U.S.C. § 1452(b) ("*The court to which such claim or cause of action is removed* may remand such claim or cause of action on any equitable ground." (emphasis added)). In any event, this is not a situation where resolution of the Remand Motion would benefit from any specialized expertise or knowledge that Judge Lane obtained presiding over Genesis's bankruptcy proceedings. Defendants ask this Court to address the same "related to" jurisdictional issue raised in the Remand Motion for purposes of transfer under Section 1412— thereby conceding that this Court shall determine jurisdiction. *See* D.I. 19 at 12-15, 20. In response to mandatory abstention, Defendants make arguments about the interpretation of federal jurisdictional statutes, the Promissory Note, and the relative expediency of Chancery Court, including due to alleged overlap between this Delaware common law action and the highly technical preference claims pending in the adversary proceeding. *See* D.I. 26 at 13-17. In response to permissive abstention and equitable remand, Defendants repeat the same argument regarding alleged overlap with the preference claims, argue that Plaintiffs chose to file their bankruptcy petitions and various adversary proceedings in S.D.N.Y. Bankruptcy Court, and suggest that S.D.N.Y. Bankruptcy Court is familiar with Delaware law. *See id.* at 17-20. Defendants' arguments are baseless: this Court is more than capable of deciding the relevant legal issues, which have little or no connection to issues raised during the bankruptcy proceedings. *See, e.g.*, *Principal Growth Strategies, LLC v. AGH Parent LLC*, 615 B.R. 529 (D. Del. 2020) (Connolly, C.J.)

(addressing mandatory abstention and equitable remand before remanding to Chancery Court over objections of alleged claim-splitting with action pending in S.D.N.Y. Bankruptcy Court).

*Third*, the caselaw cited by Defendants—*In re Prudential Insurance Co. of America Sales Practice Litigation*, 170 F. Supp. 2d 1346 (J.P.M.L. 2001), and *Bank of America, N.A. (USA) v. U.S. Airways, Inc.*, 2005 WL 3525680 (D. Del. Dec. 21, 2005)—is inapposite. *Prudential* bears no resemblance to this case, as federal jurisdiction was not at issue there and the case addressed consolidation of pretrial proceedings in an MDL. 170 F. Supp. 2d at 1347-48. In *Bank of America*, the court first addressed the threshold issue of subject matter jurisdiction—just as this Court should—but transferred the remand analysis to the bankruptcy court to adjudicate whether the claims at issue were "core," *i.e.*, arising in the bankruptcy or under the Bankruptcy Code, or merely "related to" the bankruptcy. 2005 WL 3525680, at *1-3. Here, no party contends that Plaintiffs' state law claims are "core."

The Court should resolve the first-filed threshold Remand Motion in full before the secondary request for discretionary relief presented in the Transfer Motion.

## II. THE COURT SHOULD DENY THE TRANSFER MOTION

Transfer is improper under Sections 1412 and 1404(a). Defendants have not carried their "heavy" burden to prove transfer is warranted. *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 750 (D. Del. 2012); *In re Hayes Lemmerz Int'l Inc.*, 312 B.R. 44, 46 (Bankr. D. Del. 2004).

### A. The Court Should Deny the Transfer Motion as Moot

Because the Court should grant the Remand Motion, *see generally* D.I. 5, the Court should deny the Transfer Motion as moot. *See, e.g.*, *Tolliver v. Qlarant Quality Sols., Inc.*, 2022 WL 797829, at *3 (D. Del. Mar. 16, 2022) (denying pending motions as moot after granting remand).

### B. Section 1412 Does Not Apply

Defendants incorrectly contend the Court can transfer under Section 1412, which provides

for transfer of "a case or proceeding under title 11 … in the interest of justice or for the convenience of the parties." Defendants argue that (1) there is "related to" jurisdiction; and (2) despite its plain language providing for transfer of only cases and proceedings "under title 11," Section 1412 permits transfer of "related to" cases. D.I. 19 at 12-15. Both arguments fail.

### 1.    There is No "Related To" Jurisdiction

This action lacks the requisite "close nexus" for "related to" jurisdiction under *Resorts*. *See* D.I. 5 at 9-14. To start, just as DCG did in the Notice, Defendants mischaracterize and misapply governing Third Circuit law for "related to" jurisdiction after bankruptcy plan confirmation. They erroneously state that "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action." D.I. 19 at 12 (quoting *Street v. End of the Rd. Tr.*, 386 B.R. 539, 545 (D. Del. 2008)). As is apparent from the decision in *Street*, that language describes the "conceivable effect" test, not the "close nexus" test that governs "related to" jurisdiction post-confirmation. *See* D.I. 5 at 11.[2]

Defendants rely heavily on *In re Seven Fields Development Corp.*, 505 F.3d 237 (3d Cir. 2007), *In re Venoco LLC*, 998 F.3d 94 (3d Cir. 2021), and *In re Shenango Group Inc.*, 501 F.3d 338 (3d Cir. 2007), in an attempt to contort the post-confirmation standard for "related to" jurisdiction. Defendants argue that "related to" jurisdiction exists because "the debtors are parties to this Action, this Action does require interpretation and administration of the Amended Plan, and it does have more than an incidental 'effect on the debtor's liabilities.'" D.I. 19 at 14-15 n.4 (quoting *Shenango*, 501 F.3d at 344). That is not the *Resorts* close nexus test, and none of

---

[2] Defendants also quote general dicta from *In re Essar Steel Minnesota, LLC*, 47 F.4th 193 (3d Cir. 2022), to argue incorrectly that "[r]elated matters are generally causes of action under state law that are imported into the bankruptcy because of their impact on the size of the debtor's estate, and hence the distribution to the debtor's creditors." D.I. 19 at 4, 12-13. *Essar* involved core claims of breach of a bankruptcy plan and did not apply the *Resorts* close nexus test.

Defendants' cases alter *Resorts*.

*Seven Fields* is irrelevant as it does not address "related to" jurisdiction. *Seven Fields*, 505 F.3d at 263 (affirming finding of "arising in" jurisdiction). *Venoco* concerned sovereign immunity under the Eleventh Amendment, and neither the Third Circuit nor the District Court addressed "related to" jurisdiction. 998 F.3d at 108; *In re Venoco, LLC*, 610 B.R. 239 (D. Del. 2020).[3]

*Shenango*, on the other hand, applies and *confirms* the *Resorts* close nexus standard. The claims concerned the debtor's obligations *under its reorganization plan* to fund benefit increases under a pension plan. *Shenango*, 501 F.3d at 344 ("This dispute concerns Shenango's Reorganization Plan *and the interpretation of the Plan's provision* relating to the debtor's liability …." (emphasis added)). Because both parties in *Shenango* "relied upon the text of the [r]eorganization [p]lan to support their respective positions in the funding dispute," which required the Court to construe the plan and resolve conflicting interpretations, there was a "close nexus" under *Resorts*. *Id.* at 342, 344 ("Consistent with that approach [in *Resorts*] ... we conclude that the … claim that Shenango is obligated by the [r]eorganization [p]lan to immediately fund the [p]ension [p]lan has a close nexus with the bankruptcy proceeding."). Unlike *Shenango*, Defendants do not and cannot contend that Plaintiffs' claims arise from the text of the Plan or that resolving them requires interpretation of the Plan. Defendants cannot identify a single provision of the Plan that must be interpreted to resolve the merits of Plaintiffs' claims. That failure is dispositive under *Resorts*.

Instead of applying the *Resorts* "close nexus" test, Defendants list facts about this litigation

---

[3] The bankruptcy court in *Venoco* found "related to" jurisdiction as an alternative basis for jurisdiction only after concluding there was core "arising in" jurisdiction. *In re Venoco, LLC*, 596 B.R. 480, 489-90 (Bankr. D. Del. 2019). The bankruptcy court did not alter the *Resorts* test. Moreover, the facts are inapposite: *Venoco* involved ownership of a facility that the debtor used on an oil field where it had drilling rights. *Id.* at 484-85.

and features common to virtually all modern bankruptcy plans, none of which establishes the requisite close nexus for federal jurisdiction. *See* D.I. 19 at 13-14. In so doing, Defendants attempt to substitute the ordinary meaning of the word "related" for the legal standard for "related to" jurisdiction under *Resorts*—the actual test they must satisfy to establish federal jurisdiction.

That Plaintiffs are debtors, and that this litigation is being directed by the LOC and the Plan Administrator, is not sufficient for "related to" jurisdiction. *Contra id.* at 14. *Resorts* rejected that argument. *Resorts*, 372 F.3d at 168. Relying on *In re Haws*, 158 B.R. 965 (Bankr. S.D. Tex. 1993), a breach of fiduciary duty action by a trustee for a liquidating trust against a partner of the debtor in which the court found there was no "related to" jurisdiction, the Third Circuit explained that there is no "close nexus" over an action brought by a "liquidating trustee representing a group of creditors appointed pursuant to the confirmed plan of reorganization" that does not ask "to construe or interpret the confirmed plan or to see that federal bankruptcy laws are complied with in the face of violations" of a plan. *Resorts*, 372 F.3d at 168.

Nor is "related to" jurisdiction established because Plaintiffs' claims are estate assets, and the litigation is funded by an estate litigation reserve. *Contra* D.I. 19 at 14. Otherwise, every post-confirmation litigation would be "related to" a bankruptcy—also rejected by *Resorts*. *Resorts*, 372 F.3d at 167-68 (collecting cases in which litigation involved claims held by a bankruptcy estate but there was no "related to" jurisdiction); *see also In re The Fairchild Corp.*, 452 B.R. 525, 531-32 (D. Del. 2011) (finding no "related to" jurisdiction over claims "belong[ing] to the reorganized debtor"). That the Plan funds a reserve to bring lawsuits such as this one for the benefit of creditors does not bear on whether those lawsuits have a legally sufficient "close nexus" to the Plan.

Defendants also argue that Plaintiffs' claims are a "key feature" and the "focus" of the Plan, and that the S.D.N.Y. Bankruptcy Court "specifically relied on them" when confirming the

Plan. D.I. 19 at 14. That is entirely incorrect. The Plan preserves generally defined "Causes of Action" to put creditors on notice and avoid risking waiver of those claims.[4] If doing so were sufficient to establish "related to" jurisdiction, then every post-confirmation case would be "related to" the bankruptcy. That is not the law. Moreover, contrary to Defendants' assertions, nowhere in its 135-page confirmation order does the Bankruptcy Court call Plaintiffs' claims a "key feature" or "focus" of the Plan, *contra* D.I. 19 at 3, 14, because they were not. The confirmation order references "Retained Causes of Action" twice, describing litigation as the "focus" of "*post-confirmation activity*"—not of the Plan or its confirmation. *In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 511 (Bankr. S.D.N.Y. 2024).

Moreover, the fact that recoveries in this action must comply with the Plan's distribution principles is likewise insufficient for "related to" jurisdiction. *Contra* D.I. 19 at 14. Not only is that true of any post-confirmation litigation, but as explained in the Remand Motion, *see* D.I. 5 at 10, simply returning value to the estate for the benefit of the creditors does not implicate the administration or other required elements of a bankruptcy plan. *See, e.g.*, *Fairchild*, 452 B.R. at 531-32; *accord In re Nu Ride Inc.*, 2025 WL 1600566, at *7 (Bankr. D. Del. June 5, 2025).

Finally, the alleged overlap between this litigation and the adversary proceeding in S.D.N.Y. Bankruptcy Court does not create "related to" jurisdiction. *Contra* D.I. 19 at 14-15. As described in the Remand Motion and below, Defendants mischaracterize the extent of any overlap, overstate the relevance of purportedly overlapping issues to the adversary proceeding's preference

---

[4] "Unless the debtor properly retains or preserves its causes of action in the plan, courts will find—under various principles of preclusion, estoppel, and standing—that such causes of action are forever barred as a result of plan confirmation." *See* Roye Zur, *Preserving Estate Causes of Action for Post-Confirmation Litigation*, 32 Cal. Bankr. J. 427, 427 (2013); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (precluding debtor from litigating claim not described in plan).

claims, and minimize the importance of different legal standards that will apply under the Bankruptcy Code and under Delaware law regardless of the forum in which the claims are heard. *See* D.I. 5 at 13-14; *see also infra* § II.C.2.

> ### 2. Section 1412 Permits Transfer Only of Cases and Proceedings "Arising Under" the Bankruptcy Code

Even if "related to" jurisdiction existed over Plaintiffs' Delaware common law claims, Section 1412 still does not permit transfer. As other courts have acknowledged, the plain language of Section 1412 provides that a "district court may transfer a case or proceeding *under title 11* to a district court for another district"—not cases "related to" a proceeding under title 11. *See, e.g.*, *Multibank, Inc. v. Access Glob. Cap. LLC*, 594 B.R. 618, 621-22 (Bankr. S.D.N.Y. 2018). Section 1412 "differs from many other sections of title 28" in that it "only refers to … cases or proceedings 'under' title 11." *See id.* at 622. By contrast, Section 1334 says that the district courts have jurisdiction over "civil proceedings arising under title 11 *or arising in or related to* a case under title 11." 28 U.S.C. § 1334(b) (emphasis added). The Third Circuit has consistently held that "[i]f [a] statute's plain language is unambiguous and expresses Congress's intent with sufficient precision, [the Court] need not look further." *See, e.g.*, *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 320 (3d Cir. 2022) (citations omitted).

While Defendants cite some caselaw suggesting that Section 1412 applies to cases "related to" a bankruptcy, they all hinge on cursory language in *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991), which was decided before *Resorts*. Other courts have observed that *Maritime* provides "no real analysis of the issue and no discussion at all of the fact that Section 1412 by its terms applies only to cases arising 'under' the Bankruptcy Code." *See, e.g.*, *Onewoo Corp. v. Hampshire Brands, Inc.*, 566 B.R. 136, 139-40 (Bankr. S.D.N.Y. 2017).

12

Given the absence of any analysis by the Third Circuit addressing the plain language of Section 1412, the Court should not rely on *Maritime* as a basis to transfer under Section 1412. To the extent that decision addressed Section 1412, it was also narrow. *Maritime* provided only that "[w]here a civil proceeding already pending in one district court becomes 'related to' a chapter 13 case *subsequently filed* in another district court," a court may transfer pursuant to section 1412. *Mar. Elec.*, 959 F.2d at 1212. This action, in contrast, is a post-confirmation litigation.

### C. The Discretionary Factors Weigh Strongly Against Transfer Under Both Sections 1412 and 1404(a)

Independently, the Court should not transfer under either Section 1412 or 1404(a) because the discretionary factors weigh strongly in favor of litigating in Delaware. *Intell. Ventures*, 842 F. Supp. 2d at 752; *see also Hayes*, 312 B.R. at 46 ("A determination of whether to transfer venue under section 1412 turns on the same issues as a determination under section 1404(a) …." (citation and alterations omitted)). Courts in the Third Circuit consider several factors when ruling on transfer, including: (1) "plaintiff's choice of forum"; (2) "defendant's forum preference"; (3) "practical considerations that would make the trial easy, expeditious, or inexpensive"; (4) "the public policies of the fora"; (5) "the familiarity of the judge with the applicable state law"; (6) "the local interest in deciding local controversies at home"; and (7) "the convenience of the witnesses— but only to the extent that the witnesses may actually be unavailable for trial in one of the fora."[5] *Hayes*, 312 B.R. at 46; *Intell. Ventures*, 842 F. Supp. 2d at 752. The first, second, fourth, fifth, and sixth factors concern the parties' desired forums, and the third and seventh factors concern efficiency and convenience.

Plaintiffs' choice to litigate their Delaware claims—against their self-dealing parent

---

[5] Defendants omit "the local interest in deciding local controversies at home" from their recitation of the relevant factors. *See* D.I. 19 at 18.

company, de facto managers, and disloyal fiduciaries—in Delaware, paired with Delaware's substantial interest in adjudicating Delaware corporate litigation, its expertise in the same, and its constitutional authority to resolve Plaintiffs' claims, decisively favor denying the Transfer Motion. *See* D.I. 5 at 14-20.  No practical factors favor transfer or outweigh Plaintiffs' choice of forum.

### 1.    Plaintiffs' Forum Choice is Paramount

It is "black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *David & Lily Penn, Inc. v. TruckPro, LLC*, 2019 WL 4671158, at *2 (D. Del. Sept. 25, 2019) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).  Given this deference to Plaintiffs' choice of forum, "unless the balance of convenience strongly favors a transfer in favor of [the] defendant, the plaintiff's choice of forum should prevail." *CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009) (quoting *Shutte*, 431 F.2d at 25).  Despite overwhelming caselaw providing special deference to Plaintiffs' forum choice, Defendants all but ignore Plaintiffs' choice of forum and incorrectly contend that it should be afforded "little weight."  D.I. 19 at 18-19.[6]

Defendants' argument holds no water.  Plaintiffs have extremely strong reasons for choosing to litigate this case in Delaware that belie Defendants' assertion of forum shopping.  First, as discussed in the Remand Motion, Plaintiffs prefer to litigate their claims in the Delaware court system, which has renowned expertise in Delaware law on fiduciary duties and veil-piercing, and which has a strong interest in adjudicating disputes among its corporate citizens.  *See* D.I. 5 at 14-

---

[6] In support, Defendants cite a single, unreported, inapposite case from the District of New Jersey, *Miller v. Careminders Home Care, Inc.*, 2014 WL 1779362 (D.N.J. Apr. 30, 2014).  D.I. 19 at 19. *Miller* did not involve a request for transfer to a court without the constitutional authority to adjudicate the plaintiff's claims.  *Id.* at *1.

20; *Autodesk Canada Co. v. Assimilate, Inc.*, 2009 WL 3151026, at *9 (D. Del. Sept. 29, 2009) (denying motion to transfer from Delaware and recognizing Delaware's "substantial interest in addressing lawsuits brought against Delaware corporations"), *report and recommendation adopted*, 2010 WL 11712352 (D. Del. Feb. 12, 2010); *Intell. Ventures*, 842 F. Supp. 2d at 760 (same).[7]  The facts supporting Plaintiffs' quintessential Delaware claims, including fiduciary breach and alter ego, are extraordinary, and Plaintiffs' novel request for equitable in-kind relief should be decided by a Delaware court of equity in the first instance.  Second, Plaintiffs prefer to litigate their Delaware claims in a court with constitutional authority to resolve them, where an added layer of de novo judicial review is not required.  D.I. 5 at 16.  Finally, Plaintiffs prefer to litigate their state law claims in a court that is not also overseeing and necessarily prioritizing urgent and significant Chapter 11 restructurings each day.

Moreover, as detailed throughout the Complaint, before looting Genesis and causing its demise, DCG controlled and made decisions for Genesis to benefit DCG at the expense of Genesis and its creditors.  *See, e.g.*, D.I. 1-1, Ex. A ¶¶ 80-108.  Plaintiffs are finally beyond the control of DCG and, directed by the LOC that represents the interests of the broader and diverse Genesis creditor body, chose to seek relief in Delaware for the harm caused by DCG's wrongdoing.  Through the Notice and Transfer Motion, DCG is once again trying to dictate what happens at Genesis at the expense of Genesis and its creditors.  For once, DCG's preferences should not be prioritized over the best interests of Genesis and its creditors.

### 2.    Transfer to S.D.N.Y. Does Not Further the Interests of Justice

Defendants argue that transfer "will strongly serve the interests of justice by eliminating

---

[7] Defendants make an unfounded assertion that New York law may govern some claims in the Complaint.  D.I. 19 at 18 n.6.  Plaintiffs disagree, and in any event, Defendants' mere assertion of purported governing law does not dictate transfer, as that issue has not been litigated.

duplicative litigation, conserving judicial resources[,] and reducing the risk of inconsistent rulings" between this action and the adversary proceeding. D.I. 19 at 15. These arguments are either overstated or flat wrong.

Defendants primarily base their efficiency argument on the presumption that this action is "related to" the bankruptcy proceedings. *See id.* at 16. But as discussed, *supra* § I, the Court should fully resolve the Remand Motion and find that there is no "related to" jurisdiction and that removal to federal court is improper before reaching the Transfer Motion.

Defendants' other arguments based on the "interests of justice" are equally unconvincing. For example, Defendants make the conclusory statement that there are "many overlapping parties" between this action and the adversary proceeding. D.I. 19 at 16. Yet, there is no meaningful overlap among parties. Between the seven defendants in this action and the 12 defendants in the adversary proceeding, there are only three common defendants.

Defendants also cite purportedly "overlapping factual and legal issues" between this action and the adversary proceeding and say that transfer will minimize the risk of inconsistent rulings. *Id.* But again, they mischaracterize the extent of any overlap. For example, they say both cases require a court to decide "the propriety and value of the June 2022 promissory note," and "the nature and value of the challenged September 2022 transactions." *Id.* at 16. But the relevance and evidentiary value of these transactions to Plaintiffs' Delaware claims differs from the adversary proceeding. In the Delaware action, Plaintiffs allege, among other things, that this conduct breached Defendants' fiduciary duties. S.D.N.Y. Bankruptcy Court cannot issue a final ruling on those fiduciary breaches. In the adversary proceeding, on the other hand, the Bankruptcy Court must conduct a highly technical analysis on a transaction-by-transaction level to determine if each transaction satisfies the elements of a preference claim or fraudulent transfer claim. Further, the

focus of the adversary proceeding is not on the impropriety of the note.[8]

Defendants also say both actions require determination of "the date on which Plaintiffs became insolvent." *Id.* That is another red herring. Under Delaware law, there are multiple pathways to demonstrate insolvency: "[i]nsolvency may be demonstrated by either showing (1) a deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued in the face thereof, or (2) an inability to meet maturing obligations as they fall due in the ordinary course of business." *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 2006 WL 2588971, at *10 (Del. Ch. Sept. 1, 2006) (internal quotation marks and footnote omitted), *aff'd*, 930 A.2d 92 (Del. 2007). In the adversary proceeding, the Bankruptcy Code's definition of insolvency governs. *See* 11 U.S.C. § 101(32)(A) (defining "insolvent" as when "the sum of [the] entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of [certain property]"). Permissibly, these different pathways for proving insolvency could lead to different operative insolvency dates for Plaintiffs' Delaware claims and the preference claims pending in S.D.N.Y. Bankruptcy Court. This is true regardless of the forum in which Plaintiffs' Delaware claims are heard, as the Delaware tests for insolvency will always govern and apply to Plaintiffs' Delaware claims, and the Bankruptcy Code test for insolvency will always govern and apply to the preference claims.

Finally, Defendants say this action and the adversary proceeding both require resolving "whether Defendants retain any of Plaintiffs' (or their creditors') crypto assets, as well as whether

---

[8] To the extent DCG suggests the purported value of the note is somehow relevant to its defenses in the adversary proceeding that is not a proper basis to seek transfer of Plaintiffs' state law claims to bankruptcy court. It is axiomatic under the well-pleaded complaint rule that "if the Bankruptcy Code is only implicated as part of a defense to the complaint, the complaint is not removable to the bankruptcy court." *See, e.g.*, *In Re G-I Holdings, Inc.*, 564 B.R. 217, 247–48 (Bankr. D.N.J. 2016).

such assets are subject to disgorgement." D.I. 19 at 16. Again, this is not a basis for transfer. Putting aside the absence of substantial overlap between the defendants in the two cases, the adversary proceeding in the S.D.N.Y. Bankruptcy Court seeks recovery of the property transferred or its value under Section 550 of the Bankruptcy Code. This statutory bankruptcy remedy is in stark contrast to Plaintiffs' request for an equitable trust over any Genesis assets that Defendants improperly took or converted, and the related disgorgement of wrongfully retained compensation and benefits under Delaware common law. The former requires interpreting and applying the federal Bankruptcy Code, whereas the latter is a distinct equitable remedy, arising under Delaware law that is designed to strip wrongdoers of ill-gotten gains and is not limited by the Bankruptcy Code's cap on transfers to be avoided. *See, e.g.*, *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 859 (Del. Ch. 2022) (noting that a proven fiduciary duty breach "causes the remedial aperture to widen to encompass remedies other than the standard legal solution of compensatory damages"). None of the purported overlap between this action and the adversary proceeding justify transfer or overcome Plaintiffs' choice of forum.

In fact, Defendants omit the many factual and legal issues relevant to this action but not to the adversary proceeding. For example, the adversary proceeding does not involve whether Defendants here made fraudulent statements, breached their fiduciary duties, approved reckless loans to third-parties, operated Genesis as DCG's alter ego, or assisted each other in committing any of those wrongs. Those are the key issues that are determinative of Plaintiffs' Delaware common law claims, and they should be decided by a court that specializes in Delaware law and has constitutional authority to issue a final ruling on those issues.

Defendants are thus flat-out wrong when they contend that the S.D.N.Y. Bankruptcy Court "will have to decide" these issues, and that it is "the *only* forum that can efficiently resolve these

issues across the spectrum of litigation among the parties." D.I. 19 at 17. The S.D.N.Y. Bankruptcy Court does not have constitutional authority to issue a final judgment on Plaintiffs' common law claims, further undercutting the contention that it is an efficient forum. *See Stern v. Marshall*, 564 U.S. 462, 475 (2011). If this action landed before the Bankruptcy Court, the Bankruptcy Court would "submit proposed findings of fact and conclusions of law to the district court" for de novo review of Plaintiffs' common law claims, *see id.*, wasting judicial resources by necessitating lengthy and costly litigation with two layers of judicial review. Defendants say that transfer will avoid "two different courts" deciding "many overlapping factual and legal issues," D.I. 19 at 16, but transfer will not avoid that supposed issue at all; it would merely introduce the S.D.N.Y. District Court as the second court deciding purportedly common issues.[9] Leaving these Delaware common law claims to the Delaware courts will permit the S.D.N.Y. Bankruptcy Court to focus on the technical analysis required to evaluate the nearly 150 transfers to numerous parties of U.S. dollars and cryptocurrency that serve as the basis for the separate preference claims.

Lastly, Defendants argue that transfer will economize discovery. *Id.* at 18. But good-faith negotiation and agreement among the parties can address any potentially overlapping discovery, as exemplified by the agreement between Plaintiffs and DCG that allows the parties to use materials produced in the bankruptcy proceedings in prosecuting the Delaware action. *See id.* at 6 (citing agreement).

### 3.       Delaware Serves the Convenience of the Parties

Defendants also incorrectly contend that transfer will "serve the relative convenience of

---

[9] For the same reason, Defendants' reliance on Judge Lane's familiarity with the underlying issues, D.I. 19 at 17, is unpersuasive, because Plaintiffs' common law claims would be reviewed de novo and decided by an S.D.N.Y. District Court unfamiliar with this case. Regardless, no S.D.N.Y. court has specialized expertise in the Delaware law issues here—unlike Delaware courts.

the parties." *Id.* at 18. As an initial matter, "[a] corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state." *Nice Sys., Inc. v. Witness Sys., Inc.*, 2006 WL 2946179, at *2 (D. Del. Oct. 12, 2006) (holding that because defendants "chose to be corporate citizens of Delaware," they "cannot now complain because they are involved in litigation in Delaware"). Every Defendant is either a Delaware company or an officer, director, manager, or controller of the company Defendants. Two of the three Plaintiffs are Delaware LLCs. And the claims at issue involve core matters of Delaware fiduciary duties and frauds and injustices committed through blatant disregard of the Delaware corporate form. These Delaware connections "weigh[] in favor of keeping the litigation in Delaware." *See Intell. Ventures*, 842 F. Supp. 2d at 756 (citation omitted). Defendants' argument that potential witnesses "are located in or near New York" is meritless. D.I. 19 at 19. The "convenience of the witnesses" is a factor "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Intell. Ventures*, 842 F. Supp. 2d at 756 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). Defendants present no evidence that witnesses, controlled by Delaware corporate citizens, will not appear for trial. Accordingly, this factor should be afforded no weight.

## CONCLUSION

The only purported justification for transfer that Defendants can conjure is their own preference to litigate in S.D.N.Y. Because Defendants have failed to carry the heavy burden of showing transfer is warranted, the Court should deny the Transfer Motion.

*Of Counsel*:

Philippe Z. Selendy
Jennifer M. Selendy
Claire E. O'Brien
Laura M. King
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, New York 10104
(212) 390-9000
pselendy@selendygay.com
jselendy@selendygay.com
cobrien@selendygay.com
lking@selendygay.com

Dated: June 30, 2025

*/s/ Robert L. Burns*
Rudolf Koch (#4947)
Robert L. Burns (#5314)
Andrew L. Milam (#6564)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302)-651-7700
Koch@rlf.com
Burns@rlf.com
Milam@rlf.com

*Attorneys for Plaintiffs Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific PTE. Ltd.*