# Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GENESIS GLOBAL HOLDCO, LLC, GENESIS GLOBAL CAPITAL, LLC, and GENESIS ASIA PACIFIC PTE. LTD., | |
| Plaintiffs, | |
| v. | C.A. No. 1:25-cv-00733-RGA |
| DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, DUCERA PARTNERS, LLC, and MICHAEL KRAMER, | |
| Defendants. | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1412 AND 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.   This Action Is "A Case or Proceeding Under Title 11" Within the Meaning of Section 1412 Because It Is "Related To" Plaintiffs' Bankruptcy .................................................. 2

II.  Transfer to the SDNY Best Serves All Public and Private Interests .................................. 5

   A.  Transfer to SDNY Will Further the Interests of Justice ..................................................... 5

   B.  Transfer Will Serve the Convenience of the Parties and Witnesses ................................... 8

III. The Court Should Not Defer Ruling on Defendants' Transfer Motion ............................ 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES[*]

## CASES

PAGE(S)

*In re AstroPower Liquidating Tr.*,
335 B.R. 309 (Bankr. D. Del. 2005) ..................................................................... 2

*Autodesk Can. Co. v. Assimilate, Inc.*,
2009 WL 3151026 (D. Del. Sept. 29, 2009) ......................................................... 9

*Cashedge, Inc. v. Yodlee, Inc.*,
2006 WL 2038504 (D. Del. July 19, 2006) .......................................................... 8

*CNH Am. LLC v. Kinzenbaw*,
2009 WL 3737653 (D. Del. Nov. 9, 2009) ........................................................... 9

*David & Lily Penn, Inc. v. TruckPro, LLC*,
2019 WL 4671158 (D. Del. Sept. 25, 2019) ......................................................... 9

*Eagle Pharms., Inc. v. Eli Lilly & Co.*,
2018 WL 3492145 (D.N.J. July 20, 2018) ............................................................ 6

*In re The Fairchild Corp.*,
452 B.R. 525 (Bankr. D. Del. 2011) ...................................................................... 4

*In re Grace Cmty., Inc.*,
262 B.R. 625 (Bankr. E.D. Pa. 2001) ................................................................. 10

*In re Howmedica Osteonics Corp.*,
867 F.3d 390 (3d Cir. 2017) .................................................................................. 6

*Mar. Elec. Co. v. United Jersey Bank*,
959 F.2d 1194 (3d Cir. 1991) ................................................................................ 5

*Miller v. Careminders Home Care, Inc.*,
2014 WL 1779362 (D.N.J. Apr. 30, 2014) ........................................................... 9

*In re MPC Computs., LLC*,
465 B.R. 384 (Bankr. D. Del. 2012) ...................................................................... 2

---

[*] Unless otherwise stated, all emphasis has been added and all citations and internal quotation marks have been omitted from case and other citations in this brief. Capitalized terms have the same meaning as in the Opening Brief in Support of Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1412 and 28 U.S.C. § 1404(a) (D.I. 19) (the "Opening Brief"). As used herein, "Remand Motion" refers to Plaintiffs' Motion to Remand (D.I.4) and the Opening Brief in Support of Plaintiffs' Motion to Remand (D.I. 5); "Transfer Motion" means Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1412 and 28 U.S.C. § 1404(a) (D.I. 18); "Remand Opposition" means Defendants' Answering Brief in Opposition to Plaintiffs' Motion to Remand (D.I. 26); and "Opposition" refers to Plaintiffs' Answering Brief in Opposition to Defendants' Motion to Transfer (D.I. 28).

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
   2006 WL 2588971 (Del. Ch. Sept. 1, 2006) ........................................................... 7

*In re Nu Ride Inc.*,
   2025 WL 1600566 (Bankr. D. Del. June 5, 2025) ............................................ 4, 5

*Onewoo Corp. v. Hampshire Brands, Inc.*,
   566 B.R. 136 (Bankr. S.D.N.Y. 2017) ................................................................. 5

*In re Resorts Int'l, Inc.*,
   372 F3d 154 (3d Cir. 2004) ...................................................................... 1, 2, 3, 4

*In re Shenango Grp. Inc.*,
   501 F.3d 338 (3d Cir. 2007) ............................................................................ 2, 4

*Sisti v. Norfolk S. R.R. Corp.*,
   2023 WL 7110701 (E.D. Pa. Oct. 26, 2023) ...................................................... 9

*Synthes, Inc. v. Knapp*,
   978 F. Supp. 2d 450 (E.D. Pa. 2013) ................................................................. 9

*Tang v. Citic Cap. Holdings Ltd.*,
   2022 WL 6036573 (D.N.J. Oct. 7, 2022) ........................................................... 5

*Thomason Auto Grp., LLC v. Ferla*,
   2009 WL 3491163 (D.N.J. Oct. 23, 2009) ......................................................... 7

*Wendell v. Johnson & Johnson*,
   2010 WL 4025624 (D.N.J. Oct. 13, 2010) ......................................................... 8

### STATUTES & RULES

11 U.S.C. § 502 ....................................................................................................... 3

11 U.S.C. § 548 ....................................................................................................... 7

11 U.S.C. § 548(a)(1)(B)(ii) ................................................................................... 7

28 U.S.C. § 1404 ..................................................................................................... 1

28 U.S.C. § 1412 ............................................................................................. 1, 2, 5

## PRELIMINARY STATEMENT

This Action meets all requirements under Sections 1412 and 1404 for transfer to the SDNY Bankruptcy Court—the court that has presided over Plaintiffs' bankruptcy for the past two-and-one half years and overseen litigation among the parties in *this* Action, and where Plaintiffs chose to file nearly simultaneously their interrelated Adversary Proceeding. This Action is "a case or proceeding under Title 11" because it intimately relates to Plaintiffs' Bankruptcy Proceeding; the claims asserted were the principal focus of Plaintiff's Amended Plan and the Bankruptcy Court's confirmation order, and—as Plaintiffs have admitted—their most valuable assets. Transfer also serves the interests of justice because, absent transfer, Plaintiffs' attempt to split their claims against Defendants and litigate some in the Court of Chancery and some in Bankruptcy Court is nearly certain to waste judicial resources, produce duplicative litigation on common issues, and create an untenable risk of inconsistent rulings. And transfer readily serves the convenience of the parties and witnesses, all of whom are based in and around New York and will benefit from not having to litigate closely related claims in two different fora.

Plaintiffs' Opposition is wrong on both substance and procedure and offers little beyond a rehash of the legally deficient arguments in their Remand Motion. On substance, it defies logic—and Third Circuit precedent—that forcing two different courts to preside over related cases would serve the interests of justice. Nor does it make sense that Delaware would be a more convenient forum than the Bankruptcy Court in New York—where the events underlying Plaintiffs' claims occurred and where virtually all parties and potential witnesses are based.

Plaintiffs are also wrong that this Court cannot consider Defendants' Transfer Motion and their make-weight arguments to the contrary are unavailing. This Action is nothing like *Resorts* and is obviously "related to" Plaintiffs' bankruptcy because it was brought by the debtors, is funded by debtors' estates, and is overseen by the debtors' PA officer and LOC, which were

created by their Amended Plan.  Further, this Action asserts claims that are key estate assets that

must be pursued to implement the Amended Plan, and the outcome of which will have a decisive

impact on Plaintiffs' creditors.  All of this and more establishes a "close nexus" between this

Action and Plaintiffs' Bankruptcy Proceeding.  Plaintiffs' contention that Section 1412 does not

apply to this Action is without merit.  And, as Defendants demonstrated, courts regularly decide

transfer and remand together or allow the transferee court to resolve remand.

     For these reasons and those set forth below and in Defendants' Opening Brief and

Remand Opposition, the Court should grant the Transfer Motion and deny remand.

## ARGUMENT

**I.**    **This Action Is "A Case or Proceeding Under Title 11" Within the Meaning of Section 1412 Because It Is "Related To" Plaintiffs' Bankruptcy**

     As Defendants showed in their Opening Brief and Remand Opposition, transfer under

Section 1412 is proper because this Action is "related to" Plaintiffs' Bankruptcy Proceedings.

(D.I. 19 at 12-15; D.I. 26 at 10-12.)  Post-confirmation, "related to" jurisdiction exists where the

action has a "close nexus" to the bankruptcy plan.  *See In re Resorts Int'l, Inc.*, 372 F.3d 154,

168-69 (3d Cir. 2004).  "Matters that affect the interpretation, implementation, consummation,

execution, or administration of the confirmed plan will typically have the requisite close nexus."

*Id.* at 167.  Thus, a close nexus exists where, as here, the debtor "is a party to the dispute," the

dispute would have a "more than incidental" effect "on the debtor's liabilities," *In re Shenango

Grp. Inc.*, 501 F.3d 338, 344 (3d Cir. 2007), and/or the plan specifically describes the claims and

retains jurisdiction over them, *In re MPC Computs., LLC*, 465 B.R. 384, 393-94 (Bankr. D. Del.

2012); *In re AstroPower Liquidating Tr.*, 335 B.R. 309, 325 (Bankr. D. Del. 2005) (same).

     Plaintiffs' claims have a close nexus to their Bankruptcy Proceedings because the claims

at issue are "key components" of the Amended Plan, Plaintiffs' "most valuable" asset and the

"focus of post-confirmation activity," and the Bankruptcy Court relied on them in confirming the Amended Plan. (D.I. 19 at 9; D.I. 27-1 at 81-83.) These claims are specifically described in the Amended Plan, its Plan Supplement and Disclosure Statement, and the Bankruptcy Court explicitly retained jurisdiction over them—reflecting its considered view that such jurisdiction is proper. (D.I. 1-1 at 242 (§ XI.7), 265-72.) The Amended Plan leaves no room to doubt that these claims are essential for its implementation because it discusses the claims, the PA officer and LOC who oversee this litigation, and the Litigation Reserve that funds it, in a section expressly entitled "Means for Implementation of the Plan." (*Id.* at 230-36.) And, as discussed in Defendants' Remand Opposition, this Action will require answering complex bankruptcy law questions, including whether Section 502 of the Bankruptcy Code limits how much Plaintiffs and their creditors can recover, given that Plaintiffs have already repaid over 100% of the dollar value of their creditors' claims as of the date Plaintiffs filed for bankruptcy. (D.I. 26 at 11-12.)

With no meaningful response to Defendants' arguments, Plaintiffs largely ignore them, arguing instead that Defendants applied some test other than the "close nexus" test. (D.I. 28 at 8.) Not so. Defendants explicitly analyzed that standard (D.I. 19 at 13) and, for the reasons discussed, have demonstrated more than a close nexus here. Plaintiffs' contrary conclusion finds no support in logic or law. Plaintiffs chiefly rely on *Resorts*, where a litigation trust—not the debtor—brought suit nearly seven years after plan confirmation for alleged malpractice arising from a post-confirmation audit. *Resorts*, 372 F.3d at 159, 169-70. The debtor there, unlike here, "[was] not a party to the malpractice action," and because the debtor—again unlike here—had transferred all of its rights in the malpractice claim to the litigation trust and had emerged from bankruptcy, its "estate no longer exist[ed]." *Id.* at 157. Moreover, recovery on the malpractice claim would go first to satisfying the trust's potential liabilities in an action brought against it by

3

the debtor—"a dispute the Bankruptcy Court decided," *id.* at 158—and only remained "available for *possible* distribution to the" litigation trust's beneficiaries, who were former creditors of the debtor. *Id.* at 157. These facts were critical to the Court's reasoning that there was no close nexus. As the Third Circuit explained, while the malpractice suit "will affect the former creditors as Litigation Trust beneficiaries, they *no longer have a close nexus to the bankruptcy plan or proceeding* because they exchanged their creditor status to attain rights to the litigation claims." *Id.* at 169. By contrast, *none* of that is true here: Plaintiffs *are* the Debtors, the claims *are* estate assets, and any recoveries on the claims *are the principal source* of further distributions to Plaintiffs' creditors, who *remain* creditors of the bankruptcy estate. Thus, unlike *Resorts*, this Action *will* have a "more than incidental" effect on Genesis's distribution to its creditors and thus satisfies the close nexus test. *See Shenango*, 501 F.3d at 344.

The two other bankruptcy cases Plaintiffs cite—neither of which is binding—do not help them. They merely hold that "potential to increase recovery for trust beneficiaries cannot be sufficient, *in and of itself*, to establish a close nexus …." *In re The Fairchild Corp.*, 452 B.R. 525, 532 (Bankr. D. Del. 2011); *In re Nu Ride Inc.*, 2025 WL 1600566, at *7 (Bankr. D. Del. June 5, 2025) (similar). Both decisions involved plans that—unlike Plaintiffs' Amended Plan here—"only included a broad general retention of jurisdiction provision," *Fairchild*, 452 B.R. at 532, did not give the claims at issue a "prominent place and description in the Plan and Disclosure Statement," and thus did not "support a finding that this lawsuit is the lynchpin of the Debtors' Plan," *Nu Ride*, 2025 WL 1600566, at *7. Precisely the opposite is true here: the Amended Plan and Disclosure Statement spend *pages* describing the "Retained Causes of Action" against the "DCG Parties" in detail and provide for the Bankruptcy Court to retain jurisdiction over them, thus emphasizing their close nexus to Plaintiffs' Bankruptcy Proceeding.

(D.I. 1-1 at 229 (§ XI.208), 230-36, 265-72; D.I. 19 at 8-9; D.I. 26 at 7-8.) *Nu Ride*, in fact,

supports *Defendants'* position because it sharply distinguished the claims at issue there that

lacked a close nexus from "other Retained Causes of Action which [went] into much greater

detail (including names of adversaries and some description of the Debtors' claims)." 2025 WL

1600566, at *7. That is exactly the case here.

       As a last-ditch effort, Plaintiffs assert that Section 1412 does not apply to cases that are

"related to" bankruptcy but do not "arise under" the bankruptcy code. (D.I. 28 at 12-13.) But, as

Plaintiffs concede (*see id.*), the Third Circuit as well as district courts within this circuit have

held otherwise (D.I. 19 at 12 (citing cases)). Plaintiffs' citation to a single, non-binding, out-of-

circuit bankruptcy court case does not alter Third Circuit law on this issue. (*See* D.I. 28 at 12

(citing *Onewoo Corp. v. Hampshire Brands, Inc.*, 566 B.R. 136 (Bankr. S.D.N.Y. 2017)).)

Plaintiffs attempt to distinguish *Maritime Electric*, cited in Defendants' Transfer Motion, as

holding only that transfer pursuant to Section 1412 is appropriate where a "civil proceeding

already pending in one district court becomes 'related to' a chapter 13 case *subsequently filed* in

another district court." (D.I. 28 at 13 (citing *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d

1194, 1212 (3d Cir. 1991)).) But courts interpret *Maritme* "consistently" to hold that Section

1412 is "applicable for determining whether a proceeding 'related to' a bankruptcy case may be

transferred," *see Tang v. Citic Cap. Holdings Ltd.*, 2022 WL 6036573, at *5 (D.N.J. Oct. 7,

2022) (collecting cases)—precisely as Defendants argue here.

## II.    Transfer to the SDNY Best Serves All Public and Private Interests

### A.    Transfer to SDNY Will Further the Interests of Justice

       The interests of justice are best served by transferring this Action to the Bankruptcy

Court to proceed in concert with Plaintiffs' duplicative Adversary Proceeding. (D.I. 19 at 15-

18.) Doing so avoids duplicative litigation, conserves judicial resources, and minimizes the risk

of inconsistent rulings.  *See In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402, 409 (3d Cir.

2017); *Eagle Pharms., Inc. v. Eli Lilly & Co.*, 2018 WL 3492145, at *6 (D.N.J. July 20, 2018).

Plaintiffs' contrary position (D.I. 28 at 13) defies common sense and has the analysis backwards.

Plaintiffs do not deny the clear intersection of facts and legal issues between this Action

and the Adversary Proceeding.  In fact, they effectively concede it by suggesting that the

inefficiency of litigating the same issues in two different fora can be reduced by "good-faith

negotiation and agreement among the parties."  (D.I. 28 at 19.)  But, even if Plaintiffs'

amorphous proposal somehow reduced the burden and expense *on the parties*—and it certainly

does not—it still would do nothing to remedy the wholesale waste of *judicial* resources

occasioned by their claim splitting, not to mention the accompanying substantial risk of

inconsistent rulings on common questions, and the negative incentives it creates for the parties to

continually relitigate issues in both courts using favorable rulings in one venue to drive preferred

outcomes in the other.  (D.I. 19 at 16-17; D.I. 26 at 15-16.)

Plaintiffs contend that Defendants overstate the link between this Action and the

Adversary Proceeding and attempt to draw a series of technical distinctions between the cases—

but to no avail.  *First*, they incorrectly assert that only three defendants in this Action are also

named in the Adversary Proceeding.  (D.I. 28 at 16.)  In fact, a majority of Defendants in this

Action, four out of seven, are named in both cases—DCG, Silbert, Ducera, and Kramer.  (D.I. 19

at 2, 10.)  And Plaintiffs do not and cannot dispute that *all* the plaintiffs in the Adversary

Proceeding are also Plaintiffs in this Action.  In any event, Plaintiffs cite no authority holding

transfer appropriate only when two related actions share all, not just most, of the same parties.

*Second*, Plaintiffs concede that both Actions will require a court to assess the *same*

transactions between DCG and Plaintiffs but contend that the "relevance and evidentiary value"

of these transactions differ in each case because Plaintiffs chose to assert different legal theories in each. (D.I. 28 at 16-17.) That is flatly wrong. *See, e.g.*, *Thomason Auto Grp., LLC v. Ferla*, 2009 WL 3491163, at *6 (D.N.J. Oct. 23, 2009) (transferring for "avoidance of duplicative or inconsistent rulings, given the overlapping issues and claims," even though parties and claims in bankruptcy case were different from those in RICO action). Plaintiffs, moreover, do not deny that a ruling on a common issue in one court may preclude the parties from contesting that issue in the other forum. (*See* D.I. 19 at 16-18; D.I. 26 at 15 n.4.) Thus, while the specific legal theories may be different, "the claims brought here and in the Bankruptcy Court are inextricably intertwined." *Thomason Auto Grp.,* 2009 WL 3491163, at *5.

*Third*, Plaintiffs similarly concede that the date of Genesis's insolvency will be a crucial determination in both Actions, but argue that transfer is not warranted because "the different pathways for proving insolvency" under Delaware law and under the Bankruptcy Code "could lead to different operative insolvency dates." (D.I. 28 at 17; *see* D.I. 19 at 11, 16.) That, too, is incorrect. Insolvency for fraudulent transfer claims under Section 548 (asserted in the Adversary Proceeding) *must* and for Delaware law claims (asserted in this Action) *may* be based on whether the debtor was balance sheet insolvent and could not repay its debts. (*Compare* 11 U.S.C. § 548(a)(1)(B)(ii) *with, e.g.*, *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 2006 WL 2588971, at *10 (Del. Ch. Sept. 1, 2006).) Plaintiffs, in fact, acknowledge that this test will be relevant to their claims in this Action. (*See* D.I. 28 at 17.)

*Fourth*, the Opposition concedes that both Actions involve claims that Defendants looted Plaintiffs' assets and seek disgorgement of those assets, but Plaintiffs suggest that the applicable legal standards might differ in each case. (*Id*. at 17-18.) Yet, other than asserting that looting claims and disgorgement remedies will be determined under bankruptcy law in the Adversary

7

Proceeding and under Delaware equity principles in this Action, Plaintiffs offer no explanation whatsoever as to how these standards differ as a practical matter or why they are better decided by two different judges as opposed to the single judge (Judge Lane) who is most familiar with these issues and how they apply to Plaintiffs here.  (D.I. 19 at 17); *see also Wendell v. Johnson & Johnson*, 2010 WL 4025624, at *4 (D.N.J. Oct. 13, 2010) ("While this action and the [related] Action are not identical in every respect, the lawsuits involve . . . the same set of facts and substantially similar legal theories," which supported transfer); *Cashedge, Inc. v. Yodlee, Inc.*, 2006 WL 2038504, at *2 (D. Del. July 19, 2006) (transfer despite differences in related actions).

*Fifth*, Plaintiffs suggest that potential for *de novo* review of the Bankruptcy Court's decisions by the district court on non-core claims such as those asserted in this Action weighs against transfer.  (D.I. 28 at 18-19.)  Plaintiffs, however, fail to cite any authority for their contention that the possible appealability of the Bankruptcy Court's determinations (which is true in any type of case) cuts against transfer.  Indeed, if they were right, no court could *ever* transfer state law claims to a bankruptcy court, which is plainly not the law.  (D.I. 26 at 16-17.)  Moreover, Plaintiffs ignore that parties can consent to entry of a final judgment by the Bankruptcy Court on any claim—as they did in the Adversary Proceeding.  (*Id.*)  That Plaintiffs have tactically (and cynically) refused to do so in this Action does not weigh against transfer.

## B.    Transfer Will Serve the Convenience of the Parties and Witnesses

Transferring this Action to the SDNY for referral to the Bankruptcy Court will also strongly serve the relative convenience of the parties and potential witnesses.  (D.I. 19 at 18-19.) In their Opposition, Plaintiffs fail to address most of the private convenience factors considered by courts, including the location of all relevant events underlying their claims, the location of all the parties (and primary counsel for the parties), the location of potential trial witnesses— including the parties' current and former employees and Gemini (Plaintiffs' assignor for certain

claims)—and the location of the potential evidence. (*Id.*)  For this Action, all those considerations center on New York, where the Bankruptcy Court is located.  (D.I. 19 at 19.)

Instead, Plaintiffs assert that Defendants' sole basis for requesting transfer is "their own preference to litigate in S.D.N.Y." (D.I. 28 at 20), which is wrong, and that their own choice of forum is supposedly "paramount" (*id.* at 14-15).  But, while Plaintiffs' choice of forum is one factor among many that courts consider (D.I. 19 at 18), Defendants demonstrated that it is accorded little weight when, as here, the same Plaintiffs have repeatedly chosen to commence litigation in a different forum (*id.* at 18-19 (citing *Miller v. Careminders Home Care, Inc.*, 2014 WL 1779362, at *4 (D.N.J. Apr. 30, 2014))), or when, as here, "none of the conduct complained of occurred in plaintiff's selected forum," *Sisti v. Norfolk S. R.R. Corp.*, 2023 WL 7110701, at *2 (E.D. Pa. Oct. 26, 2023).  By contrast, "the presence of a related action in the transferee forum"—such as Plaintiffs' Adversary Proceeding—"is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors … would suggest the opposite." *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 459 (E.D. Pa. 2013).[1]

To the extent some of Plaintiffs' claims are governed by Delaware law (*see* D.I. 28 at 14-15), the Bankruptcy Court is well equipped to apply that law because it regularly does so and already has considered it in the Bankruptcy Proceedings themselves.  (*See* D.I. 19 at 18 n.6.) Plaintiffs effectively conceded that point when they chose to initiate the Bankruptcy Proceedings in the Bankruptcy Court, which required that court to decide questions of Delaware law.  (*Id.*) Thus, both private and public factors strongly support transfer to the Bankruptcy Court.

---

[1] Plaintiffs' cited cases are inapposite because in those cases, unlike here, the "operative events" did not occur in the proposed transferee state, *David & Lily Penn, Inc. v. TruckPro, LLC*, 2019 WL 4671158, at *3 (D. Del. Sept. 25, 2019); and the parties and witnesses were in multiple states. *CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at *3 (D. Del. Nov. 9, 2009); *see also Autodesk Canada Co. v. Assimilate, Inc.*, 2009 WL 3151026, at *3 (D. Del. Sept. 29, 2009).

## III.    The Court Should Not Defer Ruling on Defendants' Transfer Motion

Plaintiffs spend the first three pages of their Opposition contending that this Court should not even consider transfer until it has decided the question of remand.  (D.I. 28 at 5-7.)  But, as explained in Defendants' Opening Brief, the Court should either transfer this Action to allow the Bankruptcy Court to decide the issue of remand or decide both the transfer and remand motions together.  (D.I. 19 at 19-20.)  Most of the arguments Plaintiffs make, moreover, are a redux of the jurisdictional and abstention arguments from their Remand Motion.  Defendants have fully addressed those arguments and will not do so again here.  (*See generally* D.I. 26.)

Courts routinely transfer cases so that remand motions can be decided by the transferee court.  (*Id*. at 20 (collecting cases).)  While Plaintiffs quibble with this authority, they cite no precedent holding that this Court *cannot* transfer this Action before deciding remand.  (D.I. 28 at 7.)  Rather, as even their cases acknowledge, many courts "elect to hear the motion to change venue first to allow the matter to be transferred to the bankruptcy court in which the main bankruptcy case is proceeding, so that the 'home' bankruptcy court can decide if remand or abstention is appropriate."  *In re Grace Cmty., Inc.*, 262 B.R. 625, 629 (Bankr. E.D. Pa. 2001).  Plaintiffs also claim that transfer will cause delay because they will seek to withdraw the reference to the Bankruptcy Court.  (D.I. 28 at 5-6.)  But they can hardly claim prejudice from delay they cause.  Indeed, if they were truly interested in a speedy resolution, they could have mooted this entire venue dispute by simply filing all their claims in one action.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court transfer this Action to the SDNY for referral to the Bankruptcy Court.

Dated: July 7, 2025

                MORRIS, NICHOLS, ARSHT
                  & TUNNELL LLP

                */s/ Kevin M. Coen*

                Kevin M. Coen (#4775)
                Jacob M. Perrone (#7250)
                1201 N. Market Street, 16th Floor
                Wilmington, DE 19801
                Tel: (302) 658-9200
                kcoen@morrisnichols.com
                jperrone@morrisnichols.com

                -and-

                DAVIS POLK & WARDWELL LLP
                Marshall S. Huebner
                *(admitted pro hac vice)*
                Benjamin S. Kaminetzky
                *(admitted pro hac vice)*
                Elliot Moskowitz
                *(admitted pro hac vice)*
                Daniel J. Schwartz
                *(admitted pro hac vice)*
                Matthew R. Brock
                *(admitted pro hac vice)*
                450 Lexington Avenue
                New York, NY 10017
                (212) 450-4000
                marshall.huebner@davispolk.com
                ben.kaminetzky@davispolk.com
                elliot.moskowitz@davispolk.com
                daniel.schwartz@davispolk.com
                matthew.brock@davispolk.com

                *Counsel for Digital Currency Group, Inc.*

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

*/s/ S. Mark Hurd*
S. Mark Hurd (#3297)
Jacob M. Perrone (#7250)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
shurd@morrisnichols.com
jperrone@morrisnichols.com

-and-

CLIFFORD CHANCE US LLP
Daniel Silver
(*pro hac vice application to be filed*)
Anthony M. Candido
(*pro hac vice application to be filed*)
John P. Alexander
(*pro hac vice application to be filed*)
Two Manhattan West
375 9th Ave.
New York, NY 10001
(212) 878-8000
Daniel.silver@cliffordchance.com
Anthony.candido@cliffordchance.com
John.alexander@cliffordchance.com

*Counsel for Defendant Barry Silbert*

HEYMAN ENERIO GATTUSO
  & HIRZEL LLP

*/s/ Brendan Patrick McDonnell*
Patricia L. Enerio (# 3728)
Brendan Patrick McDonnell (# 7086)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 472-7300
penerio@hegh.law
bmcdonnell@hegh.law

-and-

ARNOLD & PORTER KAYE
  SCHOLER LLP

Marcus Asner
(*pro hac vice application to be filed*)
Christian Schultz
(*pro hac vice application to be filed*)
Michael Krouse
(*pro hac vice application to be filed*)
Tyler Fink
(*pro hac vice application to be filed*)
Kodjo Kumi
(*pro hac vice application to be filed*)
250 W 55th Street
New York, NY 10019-9601
212.836.8000
Marcus.Asner@anroldporter.com
Christian.Schultz@arnoldporter.com
Michael.Krouse@arnoldpoert.com
Tyler.Fink@arnoldporter.com
Kodjo.Kumi@arnoldporter.com

*Counsel for Soichiro "Michael" Moro*

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

/s/ Kevin M. Coen
Kevin M. Coen (#4775)
Jacob M. Perrone (#7250)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
(302) 658-9200
kcoen@morrisnichols.com
jperrone@morrisnichols.com

-and-

SIMPSON THACHER & BARTLETT
LLP

Jeffrey H. Knox
(*pro hac vice application to be filed*)
Karen M. Porter
(*pro hac vice application to be filed*)
900 G Street, N.W.
Washington, District of Columbia 20001
Tel: (202) 636-5500
Fax: (202) 636-5502
jeffrey.knox@stblaw.com
karen.porter@stblaw.com

Peter E. Kazanoff
(*pro hac vice application to be filed*)
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-3525
Fax: (212) 455-2502
pkazanoff@stblaw.com

*Attorneys for Defendant Mark Murphy*

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)
Maliheh Zare (#7133)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
mzare@mccarter.com

-and-

MORRISON & FOERSTER LLP

Jessica Kaufman
(*pro hac vice application to be filed*)
Janie C. Buckley
(*pro hac vice application to be filed*)
250 West 55th Street
New York, NY 10019-9601
212.468.8000
Jkaufman@mofo.com
jbuckley@mofo.com

*Counsel for Defendants Ducera Partners,*
*LLC and Michael Kramer*

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Emily L. Skaug (#6921)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
eskaug@bayardlaw.com

-and-

PILLSBURY WINTHROP SHAW
PITTMAN LLP

Richard P. Donoghue
(*pro hac vice application to be filed*)
Ari Berman
(*pro hac vice application to be filed*)
31 West 52nd Street
New York, NY 10019-6131
(212) 858-1000
Richard.Donoghue@pillsburylaw.com
AriBerman@pillsburylaw.com

*Attorneys for Defendant Michael Kraines*