DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Elliot Moskowitz
Daniel J. Schwartz
Marc J. Tobak

*Counsel to Digital Currency Group, Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, et al., | Case No. 23-10063 (SHL) |
| Debtors.[1] | Jointly Administered |

**OBJECTION TO DEBTORS' MOTION TO ENFORCE THE PLAN**

---

[1] The Wind-Down Debtors in these cases, along with the last four digits of each Wind-Down Debtor's registration number in the applicable jurisdiction, are as follows: Genesis Global Holdco, LLC (8219), Genesis Global Capital, LLC (8564), and Genesis Asia Pacific Pte. Ltd. (2164R).

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .......................................................................................................................... 4

ARGUMENT ................................................................................................................................. 7

      I.      The Plan Expressly Permits "Any Party" to Enforce Its Terms .................. 7

      II.     DCG Has Article III and Prudential Standing to Enjoin the Creditor Suits ................................................................................................................ 10

      III.    This Court Should Decide the Preliminary Injunction To Centralize Disputes About the Plan, Bankruptcy Law, and Estate Property .............. 12

      IV.    Application of Third Circuit Law to the Delaware Suit Is Not Before the Court—Not Here and Not in the Preliminary Injunction Action ..................................................................................................................... 14

CONCLUSION ........................................................................................................................... 16

## TABLE OF AUTHORITIES

<u>CASES</u>

<u>PAGE(S)</u>

*De Sapio v. Kohlmeyer*,
   35 N.Y.2d 402 (1974) ........................................................................................................ 8

*In re Emoral, Inc.*,
   740 F.3d 875 (3d Cir. 2014) .......................................................................................... 9, 10

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ........................................................................................................ 10

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*,
   7 N.Y.3d 96 (2006) ........................................................................................................... 8

*In re Genesis Glob. Holdco, LLC*,
   660 B.R. 439 (Bankr. S.D.N.Y. 2024) ............................................................................ 12

*In re Ionosphere Clubs, Inc.*,
   85 F.3d 992 (2d Cir. 1996) ............................................................................................... 8

*Mental Disability L. Clinic, Touro L. Ctr. v. Hogan*,
   519 F. App'x 714 (2d Cir. 2013) ..................................................................................... 10

*Nassau Tr. Co. v. Montrose Concrete Prods. Corp.*,
   56 N.Y.2d 175 (198) ......................................................................................................... 8

*Nnebe v. Daus*,
   644 F.3d 147 (2d Cir. 2011) ............................................................................................ 10

*In re Quigley Co.*,
   391 B.R. 695 (Bankr. S.D.N.Y. 2008) ............................................................................ 11

*Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*,
   922 F.2d 984 (2d Cir. 1990) ........................................................................................... 12

*Singleton v. Wulff*,
   428 U.S. 106 (1976) ........................................................................................................ 11

*Soule v. Conn. Ass'n of Sch., Inc.*,
   90 F.4th 34 (2d Cir. 2023) .............................................................................................. 11

*Texaco Inc. v. Sanders* (*In re Texaco Inc.*),
   182 B.R. 937 (Bankr. S.D.N.Y. 1995) ............................................................................ 12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .................................................................................................. 10

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009) ............................................................................................. 9, 13

*In re Tronox Inc.*,
   855 F.3d 84 (2d Cir. 2017) ........................................................................................ 9

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................................ 11

*Wiener v. AXA Equitable Life Ins. Co.*,
   113 F.4th 201 (2d Cir. 2024) ..................................................................................... 8

*Williams v. Buffalo Pub. Sch.*,
   758 F. App'x 59 (2d Cir. 2018) ................................................................................. 8

### STATUTES & RULES

11 U.S.C. § 1141(a) ........................................................................................................ 8

11 U.S.C. § 1142(a) ........................................................................................................ 9

28 U.S.C. § 1334(e) ...................................................................................................... 12

Digital Currency Group, Inc. ("**DCG**") hereby objects to the *Motion to Enforce the Plan Against Digital Currency Group, Inc.* [ECF No. 2180] (the "**Motion to Enforce**"). For the reasons that follow, the Court should deny the Motion to Enforce in its entirety.

## PRELIMINARY STATEMENT

The Debtors have burdened the Court with a motion asking it to enjoin DCG from pursuing the Preliminary Injunction Action against parties suing DCG in violation of the Plan, Confirmation Order, and controlling Second Circuit law.[2] The Debtors agree with DCG that parties suing DCG on estate causes of action are violating the Plan and its injunctions, and do not dispute that the claims that the relevant individual creditors have brought against DCG are estate claims. Yet, the Debtors seek to enjoin DCG—because the Debtors believe that they alone should get to decide whether and when to take action to stop misuse of estate property.

That the Debtors have sought to enjoin DCG is baffling enough. The Debtors are fiduciaries for the estate, and the Plan specifically imposes fiduciary duties on the Litigation Oversight Committee charged with directing the Debtors' litigation positions. It would be far more typical of an estate fiduciary to jealously guard and zealously protect estate property from third parties attempting to use it for their own benefit, rather than waste estate resources trying to enjoin a third party from seeking to conserve estate property. It would also be far more typical of a debtor to encourage parties to respect the

---

[2] *Digital Currency Grp., Inc. v. Falco et. al. (In re Genesis Global HoldCo, LLC)*, Adv. Pro. No. 25-01111-SHL (Bankr. S.D.N.Y. July 8, 2025) (the "**Preliminary Injunction Action**"); Debtors' Amended Joint Chapter 11 Plan of Reorganization [ECF No. 1874] (the "**Plan**"); Findings of Fact, Conclusions of Law, and Order Confirming the Debtors' Amended Joint Chapter 11 Plan of Reorganization entered on May 31, 2024 [ECF No. 1736] (the "**Confirmation Order**"). Unless otherwise noted, ECF numbers reference docket entries in the above-captioned chapter 11 proceedings, *In re Genesis Global HoldCo, LLC*, No. 23-10063-SHL (Bankr. S.D.N.Y.).

Bankruptcy Court as the centralized locus in which questions about the Plan, the property of the estate, and the application of bankruptcy law to those objects should be adjudicated. The Debtors, however, argue the opposite, curiously asserting that that this Court's centralized adjudication of the Preliminary Injunction Action is an "ineffective and inefficient use of judicial resources" as compared to having questions of Plan interpretation and bankruptcy law addressed by a different court.

DCG is all the more baffled by the Motion to Enforce because DCG, as a matter of courtesy and prudence, provided Debtors' counsel with more than a week's advance notice of the Preliminary Injunction Action. DCG even provided the Debtors with a draft of DCG's brief, more than a week before filing, and DCG was led to believe that the Debtors supported the relief that DCG sought. Nearly a week after DCG's filing—and only three seconds[3] before the Debtors' Motion to Enforce was docketed—the Debtors' counsel first informed DCG that the Debtors were "not aligned" because the Debtors believed "[DCG]'s principal purpose is to strengthen your removal and transfer efforts in Delaware rather than achieve a stay or dismissal of the creditor claims." (Ex. A.)[4] The Debtors' counsel did not explain why the Debtors so believed. And frankly, after reading and re-reading the Motion to Enforce, the basis for the Debtors' belief is no more apparent.

Not only is it strange that the Debtors come to Court to try to enjoin relief that they seem to support, their argument for doing so is completely unfounded. The Debtors'

---

[3] DCG's counsel received this email from Debtors' counsel at 7:17:39 PM on July 14 (see Ex. A); the Motion to Enforce was docketed at 7:17:42 PM.

[4] Citations in the form of "Ex. A" are to Exhibits to the Declaration of Benjamin S. Kaminetzky in Support of DCG's Objection to Debtors' Motion to Enforce the Plan, dated August 8, 2025.

2

core legal contention—that the Debtors have the exclusive right to seek injunctive relief against third parties' use of estate causes of action in violation of the Plan—is wrong in numerous ways. The Plan contains no language barring DCG or any other party in interest from enforcing any of its provisions. Indeed, the precise opposite is true: the Plan expressly <u>preserves</u> the right of "<u>any party</u> under the Plan . . . [to] bring[] an action in the Bankruptcy Court to enforce the terms of the Plan." (Plan at Art. VIII.G (emphasis added).) Controlling Second Circuit authority affirms that a defendant (like DCG) sued in violation of a bankruptcy court order can obtain injunctive relief to stop such improper litigation. Being made to defend claims improperly brought by third parties is ample injury to satisfy the constitutional and prudential prerequisites for standing to seek the preliminary injunction.

Which leaves the Debtors' assertion that DCG brought this action to obtain some kind of ruling or comment from this Court to influence the removal and transfer issues before the District of Delaware. That is simply not so. DCG has not asked this Court to assess, in any respect, whether bankruptcy jurisdiction exists over the Delaware Suit, and has not sought to apply Third Circuit standards for such jurisdiction to <u>any</u> action— because those standards do not apply to the Preliminary Injunction Action in this Court. Only the Debtors have injected those issues into this matter, and the Court should, respectfully, reject the Debtors' attempt to twist the Preliminary Injunction Action into a moot court on questions not presented anywhere in the pleadings in that case. For these reasons and the reasons that follow, the Debtors' Motion to Enforce should be denied.

3

## BACKGROUND

The factual basis and relief sought for the Preliminary Injunction Action are detailed in DCG's Complaint and Memorandum of Law in Support of its Motion for a Preliminary Injunction (the "**Preliminary Injunction Brief**"). *See Digital Currency Grp., Inc. v. Falco et. al. (In re Genesis Glob. HoldCo, LLC)*, Adv. Pro. No. 25-01111-SHL (Bankr. S.D.N.Y. July 8, 2025). DCG here summarizes only those facts relevant to the Motion to Enforce, and, to the extent necessary, incorporates the Statement of Facts of its Preliminary Injunction Brief by reference.

DCG is a holding company that was the ultimate corporate parent of Genesis. (Preliminary Injunction Brief at 4.) DCG is the defendant in several civil actions relating to Genesis. In some of those actions, plaintiffs assert direct claims that are not property of the estate, such as claims for "control person" liability under the federal securities laws, or claims pursued by the New York Attorney General. *E.g.*, *McGreevy v. Digital Currency Grp., Inc.*, 23-cv-82 (D. Conn. 2023); *People v. Gemini Trust Co., LLC et. al.*, No. 452784/2023 (N.Y. Sup. Ct. 2023). Those civil actions are not relevant here.

In the two categories of civil actions that are relevant to the Preliminary Injunction Action, plaintiffs are pursuing claims that belong to the Debtors' estate. First, in the Delaware Suit and the Adversary Proceeding, the Plaintiffs/Debtors pursue claims owned by the estate, on behalf of the estate. *See* Notice of Removal, Exhibit A, *Genesis Global HoldCo, LLC v. Digital Currency Grp., Inc.*, No. 25-cv-733 (D. Del. June 12, 2025) [ECF No. 1-1] (the "**Delaware Suit**"); Complaint, *Genesis Global Capital, LLC v. Digital Currency Grp., Inc. (In re Genesis Global HoldCo, LLC)*, Adv. Pro. No. 25-01097 (Bankr. S.D.N.Y. May 19, 2025) [ECF No. 1] (the "**Adversary Proceeding**").

Second, several individuals (the "**Creditor Defendants**") have sued DCG, and contend that DCG is liable for the unrecovered digital assets they lent to Genesis because DCG's alleged mismanagement led to Genesis's downfall, or because DCG allegedly joined with Genesis to harm Genesis's customers as a group.  Amended Complaint, *Sokolowski v. Digital Currency Grp., Inc.*, No. 4:25-cv-00001-PJC (M.D. Pa. Mar. 25, 2025) [ECF No. 22] (the "**Pennsylvania Sokolowski Action**"); Complaint, *Sokolowski v. Digital Currency Grp., Inc.*, No. 3:25-cv-00870 (D. Conn. May 30, 2025) [ECF No. 1] (the "**Connecticut Sokolowski Action**" and, together, the "**Creditor Suits**"); (*see also* Preliminary Injunction Brief at 11-13.)  One of these individuals voluntarily dismissed his suit, without prejudice, after the Preliminary Injunction Action was filed.[5]  The remaining Creditor Defendants in the Preliminary Injunction Action therefore attempt to pursue claims owned by the estate, for their benefit alone.  (*See* Preliminary Injunction Brief at 18-22.)

DCG is harmed by the Creditor Suits because it is being sued by plaintiffs that do not have the right to sue DCG on those causes of action.  In addition to harming DCG, the Creditor Defendants were harming the estate by using estate property—estate causes of action—for the Creditor Defendants' individual benefit, in violation of Plan and Confirmation Order provisions that vest the Debtors with "the exclusive right, authority, and, at the direction of the Litigation Oversight Committee, ability to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to

---

[5] When DCG commenced the Preliminary Injunction Action, there were three Creditor Suits; two brought by the Sokolowskis and one brought by Vincent Falco.  On July 25, 2025, Falco voluntarily dismissed his complaint.  Notice of Voluntary Dismissal Without Prejudice, *Falco v. Digital Currency Grp., Inc.*, No. 1:25-cv-03771-DLC (S.D.N.Y. July 25, 2025) [ECF No. 42].  Consequently, the remaining Creditor Suits are the two suits brought by the Sokolowskis.

5

judgment any [estate] Causes of Action." (*E.g.*, Plan at Art. IV.B.14.) The Plan enjoins certain actions, but expressly provides that the Plan's injunction "does <u>not enjoin any party</u> under the Plan . . . from bringing an action in the Bankruptcy Court to enforce the terms of the Plan." (Plan at Art. VIII.G (emphasis added).) Thus, while DCG has moved to dismiss the Pennsylvania Sokolowski Action, it has not asked that court to determine whether the Sokolowskis assert derivative claims. Instead, DCG noted in its briefing that it would seek relief in this Court to address the Sokolowskis' improper assertion of estate causes of action.[6]

DCG had no obligation to confer with the Debtors before seeking relief from this Court, but, as a matter of prudence and courtesy, DCG sought to discuss its intention to file the Preliminary Injunction Action with the Debtors' counsel. After that discussion took place by conference call, on June 30, 2025, DCG's counsel sent, on a common interest basis, a draft of DCG's brief in support of its Motion for a Preliminary Injunction. Debtors' counsel, Jennifer Selendy, responded on July 1, and the parties exchanged several more emails regarding the Preliminary Injunction Action over the following days.

On July 8, 2025, DCG commenced the Preliminary Injunction Action as anticipated. At that time, DCG believed that it did so with the support of the Debtors.

DCG's counsel had no further communications with the Debtors' counsel regarding the Preliminary Injunction Action for nearly a week, until July 14, 2025. On that day, approximately three seconds before the Motion to Enforce was docketed, DCG's

---

[6] Reply Memorandum of Law in Support of Motion to Dismiss at 24 n.12, *Sokolowski v. Digital Currency Group, Inc.*, No. 4:25-cv-00001-PJC (M.D. Pa. July 1, 2025) [ECF No. 52] (noting that "Plaintiff does not have standing" because its claims "are exclusively entrusted to the Genesis bankruptcy estate" and previewing that "DCG intends to promptly file an adversary proceeding in the U.S. Bankruptcy Court for the Southern District of New York seeking to enjoin individual creditors, such as Plaintiffs, from pursuing derivative claims against it.").

counsel received an email from the Debtors' counsel. That email stated that the Debtors now believed the Preliminary Injunction Action was "misguided" and that its "principal purpose" was to "strengthen [DCG's] removal and transfer efforts in Delaware." (Ex. A.)

The Motion to Enforce seeks entry of an order enjoining DCG to dismiss the Preliminary Injunction Action, and preemptively imposing sanctions, attorneys' fees and costs against DCG if the Preliminary Injunction Action is not dismissed, *see* Proposed Order at 3 [ECF No. 2180].

## ARGUMENT

### I. The Plan Expressly Permits "Any Party" to Enforce Its Terms

In the Preliminary Injunction Action, DCG invoked this Court's broad statutory and equitable powers to enforce the Plan and the Confirmation Order. (Preliminary Injunction Brief at 14.) While the Debtors argue that "DCG has violated the terms of the Plan and Confirmation Order" by commencing the Preliminary Injunction Action (Mot. ¶ 27), the Debtors are wrong, and the Plan, as well as relevant law, prove as much.

As an initial matter, the Debtors appear to agree with DCG that Article IV.B.14 of the Plan vests the Debtors with exclusive rights to prosecute estate causes of action (Mot. ¶ 29), and that Article VIII "enjoin[s] non-Debtors from prosecuting estate causes of action, directly or derivatively." (Mot. ¶ 28.) The Debtors also appear to agree with DCG that the Creditor Suits allege estate causes of action, as at no point do the Debtors dispute either the governing legal standards or their application to the Creditor Suits. Nevertheless, the Debtors argue that DCG has "violated" the Plan because the Plan purportedly gives the Debtors the exclusive right to enforce the Plan's injunction against third parties pursuing estate claims.

7

By arguing that <u>DCG</u> violated the Plan by seeking to <u>stop</u> the Creditor Suits, the Debtors attempt to turn the Plan on its head. Nothing in the Plan gives the Debtors the exclusive right to enforce the Plan. The provision that the Debtors cite for this proposition does no such thing: It only reserves for the Debtors exclusive rights in the estate's "Causes of Action" and equitable rights. The Plan does not purport to divest other parties of their own rights to enforce the Plan. Indeed, it says the opposite with crystal clarity: Article VIII.G expressly provides that "[n]otwithstanding anything to the contrary in the foregoing," the Plan injunction "does not enjoin <u>any party</u> under the Plan . . . <u>from bringing an action in the Bankruptcy Court to enforce the terms of the Plan</u>." (Plan at Art. VIII.G (emphases added).) That is exactly what DCG has done—commenced the Preliminary Injunction Action to enforce the terms of the Plan and the Confirmation Order—and exactly why DCG has <u>complied with the express terms of the Plan</u> by commencing the Preliminary Injunction Action.[7]

It is no surprise that the Plan allows parties other than the Debtors to enforce its provisions. A confirmed plan is binding on a broad range of parties, encompassing the debtor, all creditors and all equity holders. 11 U.S.C. § 1141(a). Section 1142 of the Code mandates that the Debtors "shall carry out the plan and shall comply with any

---

[7] The Debtors do not have exclusive authority to seek injunctive relief to prevent violations of the Plan. But even if they did have any such rights, the Debtors waived or are estopped from asserting such rights against DCG. *See, e.g., Wiener v. AXA Equitable Life Ins. Co.*, 113 F.4th 201, 215 (2d Cir. 2024) (contractual rights may be waived through "affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage" (quoting *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006)); *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (equitable estoppel is appropriate where party invoking it was "misled into acting upon the belief that [] enforcement [of a right] would not be sought"); *Williams v. Buffalo Pub. Sch.*, 758 F. App'x 59, 63-64 (2d Cir. 2018) (defendants impliedly waived contractual right through contrary conduct); *Fundamental Portfolio Advisors,* 7 N.Y.3d at 105 (where appellant "actively encouraged and assisted" business relationship, such conduct constituted waiver of noncompete); *Nassau Tr. Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184 (1982) (providing elements of estoppel under New York law); *De Sapio v. Kohlmeyer*, 35 N.Y.2d 402, 406 (1974) (right to compel arbitration was waived through voluntary participation in non-arbitral proceedings).

orders of the court," 11 U.S.C. § 1142(a), and authorizes the Court to direct the debtor and "any other necessary party" to "perform any other act . . . that is necessary for the consummation of the plan." *Id.* More broadly, it is well established that a party aggrieved by another party's violation of a court order may invoke that court's equitable powers to enforce its own orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (debtors' insurers could invoke bankruptcy court's "jurisdiction to interpret and enforce its own prior orders" to enjoin actions which violated plan of reorganization). Consequently, DCG, like any party aggrieved by another party's violation of the Plan, may invoke this Court's statutory and equitable authority to issue orders enforcing the Plan.

These principles apply with equal force where, as DCG demonstrates in the Preliminary Injunction Action, a third party is violating plan provisions that bar anyone but the estate from bringing these suits. It would make little sense if, as the Debtors argue, only a debtor can police third parties' use of estate property and defendants impermissibly sued on estate causes of action could only raise that issue as part of a standing defense in the underlying actions. Indeed, controlling Second Circuit law, and persuasive Third Circuit authority, proves just the opposite. In both *In re Tronox*, 855 F.3d 84, 93 (2d Cir. 2017) and *In re Emoral*, 740 F.3d 875, 877-78 (3d Cir. 2014), the defendants against whom third parties attempted to assert derivative claims sought and obtained injunctive relief enforcing the terms of bankruptcy court orders regarding estate claims. *Tronox*, 855 F.3d at 93 ("[Defendant] subsequently moved in the District Court to enforce the [Bankruptcy Court's] Injunction."); *Emoral*, 740 F.3d at 877-78 (Defendant "filed in the Bankruptcy Court a Motion to Enforce" (internal quotation mark omitted)).

9

If the Debtors' position in its Motion to Enforce were correct, in those cases only the estates' representatives could have properly sought and obtained injunctive relief enforcing the boundaries of estate causes of action. That the Second Circuit and Third Circuit, respectively, each affirmed the relief that <u>defendants</u> obtained to enjoin litigation against them proves DCG may properly seek relief in the Preliminary Injunction Action.

## II. DCG Has Article III and Prudential Standing to Enjoin the Creditor Suits

DCG has standing to enjoin the Creditor Suits because it is being injured by the Creditor Suits, because the relief DCG seeks, if granted, would remedy that injury, and because it is asserting its own rights to enforce the Plan.

A plaintiff establishes Article III standing upon showing "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *E.g., FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). DCG easily clears that hurdle. It has suffered the requisite injury in fact by being sued in the Creditor Suits and investing resources in defending those actions. *See Mental Disability L. Clinic, Touro L. Ctr. v. Hogan*, 519 F. App'x 714, 717 (2d Cir. 2013) ("This Court has explicitly rejected the argument that litigation expenses are insufficient to demonstrate an injury in fact for the purposes of Article III standing."); *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011) (diversion and expenditure of resources was sufficient for Article III standing); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (injury-in-fact traditionally consists of "physical harm, monetary harm, or various intangible harms"). Its relevant injuries are being caused by the Creditor Defendants' decision to pursue estate causes of action contrary to the Plan. And those injuries will be redressed by an order enjoining the Creditor Defendants from pursuing estate causes of action.

10

*Soule v. Conn. Ass'n of Sch., Inc.*, 90 F.4th 34, 48 (2d Cir. 2023) (Article III standing was satisfied where it was "likely that granting the above-described injunctive relief would eliminate some effects of the alleged legal violation that produced the injury in fact" (cleaned up)).

DCG also has the requisite prudential standing to pursue the Preliminary Injunction Action.  As DCG demonstrated in Part I, above, DCG is <u>not</u> asserting a right that belongs to the Debtors; to the contrary, as a party on whom the Plan is binding, DCG has its own rights to enforce the Plan.  The smattering of cases that the Debtors cite for the principle that a party generally may not invoke a third party's rights has no application here, and is no basis to deny DCG the relief that it seeks.  (Mot. ¶ 30 (citing *Warth v. Seldin*, 422 U.S. 490 (1975) (petitioners who were not excluded by town's zoning ordinances could not challenge ordinances as being allegedly discriminatory), *Singleton v. Wulff*, 428 U.S. 106, 113 (1976) (physicians had standing to challenge Missouri statute limiting Medicaid reimbursement for abortions), and *In re Quigley Co., Inc.*, 391 B.R. 695, 702-03 (Bankr. S.D.N.Y. 2008) (insurers lacked standing to object to plan provisions that only impacted other parties' rights).)

The Debtors' final argument—that DCG lacks standing because it "cannot show that its requested preliminary injunction would result in 'any recovery for DCG's equity interests'"—borders on nonsensical.  (Mot. ¶ 31.)  It is true that this Court previously held that DCG lacked Article III standing to object to the Plan's "Distribution Principles" on the ground that they "improperly provide creditors with too much return" because DCG was an out-of-the-money equity holder and could not show that its harm would be redressed by a favorable ruling.  *In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 503

11

(Bankr. S.D.N.Y. 2024). But that has nothing to do with the Preliminary Injunction Action. DCG did not file the Preliminary Injunction Action to protect recoveries on its equity interests. Indeed, DCG does not believe there will be any proceeds from estate causes of action against DCG because such causes of action are without merit, as DCG will set forth in detail in its forthcoming motions to dismiss. DCG has standing to file the Preliminary Injunction Action not as an equity holder hoping for distributions, but as a defendant being sued by individuals improperly asserting estate causes of action.

### III.    This Court Should Decide the Preliminary Injunction To Centralize Disputes About the Plan, Bankruptcy Law, and Estate Property

By design, this Court is the centralized locus in which questions of the Plan, the property of the estate, and the application of bankruptcy law to those objects should be adjudicated. *E.g.*, *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990) (in order to "centralize all disputes concerning property of the debtor's estate" and to avoid "uncoordinated proceedings in other arenas . . . [t]he Bankruptcy Code provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court" (internal quotation marks omitted)); *Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937 (Bankr. S.D.N.Y. 1995) ("A bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders."). The Judicial Code vests this Court (and the District Court) with "original and exclusive" jurisdiction over the Debtors' chapter 11 cases, and with "exclusive jurisdiction" over property of the Debtor's estate. 28 U.S.C. § 1334(e). This Court, like all courts of the United States, "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers*, 557 U.S. at 151. And this Court retained jurisdiction to interpret and enforce the Plan and Confirmation Order. (Confirmation Order at ¶¶ 74, 172; Plan at

12

XI.7, 9, 11, 12.) For all of these reasons, DCG has asked this Court to interpret and apply the Plan and bankruptcy law to the Creditor Suits pending in two district courts. This Court, and any court hearing an appeal therefrom, can ensure that these cases can be governed by a single and consistent interpretation of the Plan and application of Second Circuit law to the Plan.

The Debtors want the opposite: They argue that having this Court address the question once is an "ineffective and inefficient use of judicial resources." (Mot. ¶ 34.) Instead, they suggest allowing the district court presiding over the Pennsylvania Sokolowski Action to decide DCG's pending motion to dismiss, and only if that motion is denied in part or whole will the Debtors "take [] protective steps." (Mot. ¶ 2.) The Debtors' approach is dubious in the extreme. DCG did <u>not</u> ask the district court presiding over the Pennsylvania Sokolowski action to decide whether the claims in that case are estate causes of action that the Sokolowskis cannot assert; instead, it noted that it would ask this Court to decide the issue.[8] Consequently, deferring to the Pennsylvania Sokolowski Action likely leaves the question unanswered. Or, in the extremely unlikely event that the court were to go beyond the issues presented to it and rule that the Sokolowskis assert estate claims, its decision would bind only DCG and the Sokolowskis. Either way, the Debtors' approach invites copycat litigation by other creditors and risks requiring these issues to be briefed and litigated all over again. Because judicial economy is best served by answering a question once, judicial economy favors having this Court decide whether the Creditor Suits assert estate claims.

---

[8] Reply Memorandum of Law in Support of Motion to Dismiss at 24 n.12, *Sokolowski v. Digital Currency Group, Inc.*, No. 4:25-cv-00001-PJC (M.D. Pa. July 1, 2025) [ECF No. 52] ("DCG intends to promptly file an adversary proceeding in the U.S. Bankruptcy Court for the Southern District of New York seeking to enjoin individual creditors, such as Plaintiffs, from pursuing derivative claims against it.").

IV. **Application of Third Circuit Law to the Delaware Suit Is Not Before the Court—Not Here and Not in the Preliminary Injunction Action**

DCG commenced the Preliminary Injunction Action to obtain the injunction it seeks in that proceeding: an order stopping the Creditor Defendants from pursuing estate causes of action against DCG. In doing so, DCG asserted that the Creditor Suits are within the "related to" jurisdiction of this Court because the Creditor Suits could have a "conceivable effect" on the Debtors' estate—as is amply illustrated by the instant Motion to Enforce and the Debtors' agreement that only the Debtors may pursue such claims. DCG also provided the Debtors with a draft of their pleading in which all of this was spelled out, a full week before commencing the Preliminary Injunction Action. Despite all of this, the Debtors argue that DCG's "true objectives" are not to obtain the relief that DCG seeks in its papers, but to "bolster" DCG's position that the Debtors' Delaware Suit satisfies the Third Circuit's standard for "related to" jurisdiction through "implicit efforts to conflate" that question with this Court's jurisdiction to enjoin the Creditor Suits. (Mot. ¶ 37.)

Here, DCG is at a loss. Yes, DCG has shown that this Court has jurisdiction over the Creditor Suits under the Second Circuit's standard, but even the Debtors argue that that question "is wholly different from the question of whether" the Delaware Suit satisfies the Third Circuit's standard. (Mot. ¶ 37.) DCG does not even mention the Third Circuit's standard for "related to" jurisdiction or whether the Creditor Suits, the Delaware Suit, or any other action satisfies the Third Circuit standard, anywhere in the Preliminary Injunction Action—for the good reason that this Court is in the Second Circuit. Yes, it is true that DCG quotes from the Plan in both the Preliminary Injunction Action and in the remand litigation in the Delaware Suit. But there is only one confirmed Plan. Its

14

provisions are the same whether quoted here or in Delaware, and by quoting the Plan here the Debtors do not "imply" that this Court should weigh on the issues for which DCG quoted the Plan to the court in Delaware. Indeed, DCG makes no arguments in the Preliminary Injunction Action about the jurisdiction of this Court (or any court) over the Delaware Suit. And yes, DCG's motion to transfer the Delaware Suit to this Court, and the Debtors' opposing motion to remand the Delaware Suit to state court (both of which were filed in June) were fully briefed on July 7. But any attempt to draw sinister inferences from the fact that July 7 is the day before July 8 fails. DCG informed the Debtors of its intent to file the Preliminary Injunction Action and provided the Debtors with a draft of the motion <u>before</u> the conclusion of such briefing on July 7.

Most importantly—and fatal to the Debtors' conspiracy theory that DCG's true goal is to create a record for the Delaware Action—DCG has <u>not</u> put the Preliminary Injunction Action before the Delaware court despite ample opportunity to do so. By the time briefing was concluded in the Delaware Action, on July 7, 2025, DCG had informed the courts presiding over the Falco Action (twice, once on June 20, 2025[9] and then on June 24, 2025[10]) and the Sokolowski Action (on July 1, 2025)[11] that DCG intended to seek relief in this Court. But, as the exhibits that the Debtors attached to their Motion to Enforce demonstrate, DCG did <u>not</u> mention these issues in its briefs to the Delaware court. (*See generally* O'Brien Decl. Ex. 3 [ECF No. 2184] (DCG's Opposition to

---

[9] Rule 26(f) Report, *Falco v. Digital Currency Grp., Inc.*, No. 1:25-cv-03771-DLC (S.D.N.Y. June 20, 2025) [ECF No. 20].

[10] Letter Motion, *Falco v. Digital Currency Grp., Inc.*, No. 1:25-cv-03771-DLC (S.D.N.Y. June 24, 2025) [ECF No. 24].

[11] Reply Memorandum of Law in Support of Motion to Dismiss at 24 n.12, *Sokolowski v. Digital Currency Group, Inc.*, No. 4:25-cv-00001-PJC (M.D. Pa. July 1, 2025) [ECF No. 52].

15

Remand, filed June 27); O'Brien Decl. Ex. 7 [ECF No. 2184] (DCG's Reply Brief in Support of Motion to Transfer, filed July 7).) Had DCG intended the Preliminary Injunction Action to influence the Delaware court, as the Debtors imagine, it makes no sense for DCG to have forgotten to even mention the Preliminary Injunction Action to the Delaware court when it had already informed two other district courts of its intent to commence that suit. That the Debtors need to resort to opaque hermeneutics to explain how DCG's motion is "really" an attempt to present a jurisdictional question that DCG did not ask this Court to decide proves that the Debtors are wrong. What DCG "really" seeks is the relief that it asks for in the Preliminary Injunction Action: to stop the Creditor Defendants from suing DCG in violation of the Plan and controlling law.

## CONCLUSION

For the foregoing reasons, DCG respectfully requests that this Court deny the Motion to Enforce in its entirety.

Dated: August 8, 2025
New York, New York

Respectfully submitted,

*/s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Elliot Moskowitz
Daniel J. Schwartz
Marc J. Tobak
*Attorneys for Digital Currency Group, Inc.*

16