**Hearing Date: To Be Determined**

Philippe Z. Selendy
Jennifer M. Selendy
Claire E. O'Brien
Laura M. King
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, New York 10104
(212) 390-9000
pselendy@selendygay.com
jselendy@selendygay.com
cobrien@selendygay.com
lking@selendygay.com

*Attorneys for Genesis Global Holdco, LLC,
Genesis Global Capital, LLC, and Genesis
Asia Pacific Pte. Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, *et al.*,<br><br>　　　　　　　　Debtors.[1] | Chapter 11<br><br>Case No.: 23-10063 (SHL)<br><br>Jointly Administered<br><br>Re: ECF Nos. 2180, 2213 |

### DEBTORS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO ENFORCE THE PLAN AGAINST DIGITAL CURRENCY GROUP, INC.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Genesis Global Holdco, LLC (8219), Genesis Global Capital, LLC (8564), and Genesis Asia Pacific Pte. Ltd. (2164R).

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT...................................................................................................................................3

I.    The Court Should Grant the Motion to Enforce Because DCG Has No Rights Under the Plan................................................................................................................3

II.    The Falco Dismissal Demonstrates This Court Should Grant the Motion to Enforce................................................................................................................................8

III.    In the Alternative, the Court Should Hold the Motion to Enforce and Injunction Adversary Proceeding in Abeyance....................................................................................9

CONCLUSION...............................................................................................................................10

i

The Debtors[2] respectfully submit this reply in support of their Motion to Enforce the Plan Against Digital Currency Group, Inc., ECF No. 2180 (the "Motion to Enforce"), and in opposition to DCG's Objection to Debtors' Motion to Enforce the Plan, ECF No. 2213 (the "Objection").

## PRELIMINARY STATEMENT

1.  All parties agree that the Debtors have the exclusive right under the Plan to control the Genesis estate's Retained Causes of Action. The Debtors, at the direction of the Genesis Litigation Oversight Committee ("LOC"), have been discharging their fiduciary obligations related thereto since Plan confirmation, including by filing the Delaware Action and a separate preference action against DCG and other defendants in this Court. The Debtors have also been aware of the Creditor Actions since their inception and have been discussing those cases with the relevant plaintiffs for months. The Debtors' approach has proved successful in streamlining litigation and preserving estate and judicial resources: one of the plaintiffs, Vincent Falco, voluntarily dismissed his complaint following extensive discussions between his counsel and the LOC's counsel, and now fully supports the Debtors in their lawsuits against DCG. As a result, the *only* active Creditor Action is the Sokolowskis' *pro se* case in the Middle District of Pennsylvania (the "Pennsylvania Sokolowski Action"), which asserts a single statutory consumer protection claim under Pennsylvania law.[3] The Debtors continue to communicate with the Sokolowskis as

---

[2] Undefined capitalized terms have the meaning given to them in the Debtors' Motion to Enforce the Plan Against Digital Currency Group, Inc., ECF No. 2180 (the "Motion to Enforce").

[3] The Sokolowskis and DCG have represented that the Sokolowskis' second lawsuit filed in the District of Connecticut (the "Connecticut Sokolowski Action") will proceed only if the Pennsylvania Sokolowski Action is dismissed for lack of personal jurisdiction, and the Sokolowskis moved to stay the Connecticut Sokolowski Action. Plaintiffs' Motion to Stay Proceedings, *Sokolowski v. Digital Currency Grp., Inc.*, 25-cv-870 (D. Conn. May 30, 2025), ECF No. 2; Defendants' Consented to Motion for Extension of Time to Respond to Complaint, *Sokolowski v. Digital Currency Grp., Inc.*, 25-cv-870 (D. Conn. July 29, 2025), ECF No. 20.

the Debtors await the outcome of DCG's fully briefed and dispositive motion to dismiss pending in the Pennsylvania Sokolowski Action.

2. The Debtors believe that DCG, unhappy with being sued by the Debtors in two different courts, filed the Injunction Adversary Proceeding for strategic purposes for the reasons detailed in the Motion to Enforce. DCG only filed its Injunction Adversary Proceeding and Injunction Motion, seeking *preliminary injunctive* relief, six months after the first Creditor Action was filed, but within weeks of when the Debtors filed their Remand Motion in the Delaware Action. Putting aside DCG's intent or the Debtors' beliefs, however, DCG undeniably seeks to exert control over what it contends are the Debtors' Retained Causes of Action through the Injunction Adversary Proceeding: it seeks to enjoin the Creditor Actions. Doing so violates the Plan's mandate vesting the Debtors with the exclusive right to prosecute Retained Causes of Action as they deem fit.[4]

3. DCG relies on general, generic Plan language that parties under the Plan may enforce it to try to justify usurping the Debtors' exclusive right to control estate causes of action under the Plan. The Plan does not permit just *any* party to enforce it, nor does DCG have rights *under* the Plan to enforce here. As a result, DCG lacks a contractual basis—and thus prudential standing and party in interest standing—to seek to enjoin the Creditor Actions.

---

[4] DCG asserts that the Debtors "appear to agree with DCG that the Creditor Suits allege estate causes of action," Obj. 7, but the Debtors have not expressed a view on whether the Creditor Actions assert direct or derivative claims, *see* Mot. ¶ 33 ("The precise issue of whether Falco and the Sokolowskis have adequately pleaded direct claims against DCG, Silbert, and Moro should be decided by the District Courts presiding over those cases in a motion to dismiss …."). The Sokolowskis have submitted a statement regarding the Motion to Enforce contending that they are not creditors and their Pennsylvania statutory consumer protection claim, as pleaded, is a direct consumer claim. ECF No. 2215 ¶¶ 2, 7.

2

4.  The Debtors want to continue to deal with the remaining Creditor Actions as efficiently as possible and without burdening numerous courts with duplicative litigation. The Court should grant the Motion to Enforce and dismiss the Injunction Adversary Proceeding to ensure the Debtors can continue to pursue and control Retained Causes of Action in their discretion, in the best interest of the estate, and collaboratively with all Genesis creditors.

5.  In the alternative, the Court should hold the Motion to Enforce and the Injunction Adversary Proceeding in abeyance pending the resolution of the Pennsylvania Sokolowski Action, as developments in that case could moot both disputes before this Court. In fact, on August 6, 2025, the Debtors sent DCG a proposal to hold both motions in abeyance until such time as the Middle District of Pennsylvania rules on the motion to dismiss the *pro se* Sokolowski complaint pending before it. *See* Decl. of Jennifer Selendy ("Selendy Decl."), Ex. 2. DCG did not accept that proposal, which would have resulted in judicial efficiency and minimized costs to the estate. Selendy Decl., ¶ 4. If DCG's motion to dismiss prevails, the presiding District Court will dismiss that complaint. If another outcome results, however, the Debtors reserve all rights to enforce their rights under the Plan as necessary or appropriate at that time.

## ARGUMENT

**I.    The Court Should Grant the Motion to Enforce Because DCG Has No Rights Under the Plan**

6.  This Court has already found that DCG lacks a direct economic interest in, and thus standing to be heard regarding, the way value is being distributed under the Plan. Given the size and composition of the Debtors' claims pool, DCG cannot establish that modification to the economic provisions of the Plan would result in recovery for DCG. *In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 496-98 (Bankr. S.D.N.Y. 2024) ("DCG lacks standing because the Debtors are insolvent, as their liabilities significantly exceed their assets."). The Court explained that

3

"DCG is out of the money as an equity holder by billions of dollars …. These economics confirm what the Plan is: a settlement among creditors about how to divide limited assets given that all creditors will not be paid in full." *Id.* at 456. The Court's holdings are dispositive here.

7.  DCG asserts that it derives authority to seek to enjoin the Creditor Actions from the Plan's general, generic provision that parties under the Plan are not enjoined from enforcing it. Obj. 3. Article VIII.G, which DCG quotes, provides that "[n]otwithstanding anything to the contrary in the foregoing, the injunction does not enjoin **any party under the Plan** … **from bringing an action in the Bankruptcy Court to enforce the terms of the Plan**." Plan, Art. VIII.G (emphasis added); *contra* Obj. 3. But DCG does not identify any rights that it purportedly has under the Plan that entitle it to seek to enjoin the Creditor Actions.

8.  By contrast, the right to control estate causes of action belongs exclusively to the Debtors. The Plan's specific provisions regarding Retained Causes of Action vest the right to prosecute them exclusively with the Debtors. Plan, Art. IV.B.14; Confirmation Order ¶¶ 116-18. Specifically, the Plan and Confirmation Order provide that the Debtors (including through the Plan Administrator and at the direction of the LOC) "**shall have the exclusive right, authority, and … ability to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing** … without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court." Plan, Art. IV.B.14 (emphasis added); Confirmation Order ¶¶ 116-18.

9.  The Plan is a contract. *See, e.g.*, *In re Frontier Ins. Grp., Inc.*, 585 B.R. 685, 693 (Bankr. S.D.N.Y. 2018), *aff'd*, 598 B.R. 87 (S.D.N.Y. 2019). Under well-established contract principles, the specific language of a plan is given greater weight than any general language it

4

contains.  *See, e.g.*, *Int'l Bhd. of Elec. Workers, Loc. Union 43 v. NLRB*, 9 F.4th 63, 75 (2d Cir. 2021); *In re Arcapita Bank B.S.C.(c)*, 520 B.R. 15, 25-26 (Bankr. S.D.N.Y. 2014).  Moreover, when general and specific provisions of a plan are inconsistent, the specific provision controls. *See Arcapita*, 520 B.R. at 26.  Every provision of the contract must be interpreted to have effect. *In re Texaco, Inc.*, 668 B.R. 1, 28 (Bankr. S.D.N.Y. 2025) ("Contracts are also to be interpreted to avoid inconsistencies and to give meaning to all of its terms." (citation omitted)).

10.    The Plan's general provisions in Article VIII.G allowing parties *under* the Plan to enforce its provisions do not give DCG the rights it claims to have.  To be entitled to enforce a provision of the Plan, a party must have a *right under that provision of* the Plan, such as, for example, a right to a certain treatment, or distributions, or payment of professional fees, or a release.  As a matter of hornbook contract law, "only parties to the contract and intended third-party beneficiaries of the contract have prudential standing to appear and enforce agreements." *See In re Motors Liquidation Co.*, 580 B.R. 319, 340, 348-49 (Bankr. S.D.N.Y. 2018) (citation omitted) (no prudential standing where party seeking to be heard was not an intended beneficiary of agreement); *see also Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (holding that a non-party to a contract lacks standing in a contract proceeding to enforce the agreement unless unequivocal terms clearly evidence an intent to permit such standing).  DCG has not identified *any* rights it has under the Plan.  It simply cannot enforce the Plan with respect to rights it does not have under the Plan.  And it certainly cannot enforce rights that are reserved exclusively for the Debtors under the Plan.

11.    As DCG has no contractual right to enforce the Plan's provision regarding prosecution and control of estate claims, it lacks prudential standing to pursue the Injunction

5

Adversary Proceeding.[5] To demonstrate prudential standing, DCG "must assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the legal rights or interests of third parties." *In re Quigley Co., Inc.*, 391 B.R. 695, 702-03 (Bankr. S.D.N.Y. 2008) (citation omitted) (holding that "[p]rudential limitations on standing play an especially important role in bankruptcy proceedings"); *In re SunEdison, Inc.*, 2019 WL 2572250, at *6 (holding third party lacks standing to seek relief "based on a secondary effect of an injury to the Debtors (pre-petition) or their estates (post-petition)"). Likewise, under Section 1109(b), DCG must demonstrate "a direct financial stake in the outcome of the case." *In re Teligent, Inc.*, 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009) (citation omitted). Party in interest status is not present "where a party's interest in the proceeding is not a direct one." *In re Celsius Network LLC*, 659 B.R. 850, 864 (Bankr. S.D.N.Y. 2024) (citation omitted); *see also In re Refco Inc.*, 505 F.3d 109, 117 n.10 (2d Cir. 2007) ("[P]arty-in-interest standing under § 1109(b) does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding."); *In re Saint Vincents Cath. Med. Ctrs. of N.Y.*, 429 B.R. 139, 149-50 (Bankr. S.D.N.Y. 2010) (similar). This Court has already conducted an extensive analysis and discussion of these principles as applied to DCG and found DCG lacks prudential and party in interest standing regarding the Plan's economic provisions. *See infra* ¶ 6; *In re Genesis Glob. Holdco, LLC*, 660 B.R. at 496.

12. Indeed, DCG expressly *disavows* any pecuniary rights under the Plan that could support prudential or party in interest standing. DCG states that it "did not file the Preliminary Injunction Action to protect recoveries on its equity interests. Indeed, DCG does not believe there will be any proceeds from estate causes of action against DCG because such causes of action are

---

[5] Because DCG has not demonstrated prudential standing or that it satisfies 11 U.S.C. § 1109(b), the Court need not reach DCG's argument that it has Article III standing. *Cf. In re Teligent, Inc.*, 640 F.3d 53, 60 n.3 (2d Cir. 2011).

6

without merit." Obj. 12. DCG concedes that it is not asserting standing as an "equity holder hoping for distributions" but rather, it argues it has standing "as a defendant being sued by individuals improperly asserting estate causes of action." *Id.* But nothing in the Plan affords DCG protection from expenditures in litigation by a third party outside of the bankruptcy.

13. The few cases DCG cites—*In re Tronox Inc.*, 855 F.3d 84 (2d Cir. 2017), *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014), and *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009)—lend no support. *Contra* Obj. 9. None of these cases involved non-debtors commencing adversary proceedings to enjoin third-party actions pursuant to a bankruptcy plan. In *Tronox* and *Emoral*, non-debtor defendants sued to enforce settlement agreements that had extinguished and released those non-debtors from certain claims—that is, agreements to which the non-debtors were express beneficiaries and received a specific benefit, the releases. *Tronox*, 855 F.3d at 92; *Emoral*, 740 F.3d at 877-78. Thus, when creditors later sued the non-debtors for claims that were extinguished and released by those settlements, the non-debtor defendants—as intended beneficiaries of those settlement agreements—had rights under those agreements and standing to enforce them. *Tronox*, 855 F.3d at 92; *Emoral*, 740 F.3d at 877-78. The Plan here did not confer releases on DCG, so there is no analog to the settlement agreements in *Tronox* and *Emoral*. Like *Tronox* and *Emoral*, *Travelers* also involved a settlement order between the debtors and a non-debtor—the debtors' insurer. *Travelers Indem. Co.*, 557 U.S. at 141-42. The insurer invoked the bankruptcy court's jurisdiction to enforce the settlement order, which was incorporated into the reorganization plan and which enjoined actions against the insurer. *Id.* at 150-51. *Travelers* therefore does not support DCG's position any more than *Tronox* and *Emoral*.[6]

---

[6] DCG also cites *Travelers* for the unremarkable proposition that this Court may interpret and enforce its own prior orders to enjoin actions which violate the Plan. Obj. 9, 12. While the Court

7

14. Unlike the settlement agreements at issue in *Tronox*, *Emoral*, and *Travelers*, there is nothing the Plan here that gives DCG the right to enforce what it agrees are the Debtors' "exclusive rights to prosecute estate causes of action." Obj. 7. There is no order of this Court, nor provision of the Plan, that gives DCG an enforceable right or release providing that DCG can avoid suits by third parties; rather, the Plan gives the Debtors the right to control estate causes of action against parties including DCG. Therefore, DCG's Adversary Proceeding is in direct conflict with the express terms of the Plan, contrary to its contention of purported compliance. *Contra id.* at 8. DCG violates the Plan by hijacking the Debtors' exclusive right to prosecute and take action on Retained Causes of Action in an attempt to shield itself from lawsuits pending in other jurisdictions.[7]

## II. The Falco Dismissal Demonstrates This Court Should Grant the Motion to Enforce

15. While the Debtors believe that Genesis creditors may pursue direct claims against DCG, litigations by third parties against DCG could encroach on estate causes of action. With the goal of avoiding unnecessary litigation that would waste estate resources, the Debtors reached out to the plaintiffs in the Creditor Actions. After discussion with the Debtors—and without the need for judicial intervention—Falco dismissed his action. After voluntarily dismissing his case, Falco posted on X, formerly Twitter: "[B]ecause the Genesis Bankruptcy Litigation Oversight

---

has the right to enforce its own orders, *Travelers* does not establish that *DCG* has the right to assert the Adversary Proceeding to enjoin the Creditor Actions.

[7] DCG appears to argue that the Debtors have "waived or are estopped from asserting" their exclusive rights under the Plan, Obj. 8 n.7, noting DCG believed it had the Debtors' support, *id.* at 6. That is incorrect. On July 1, 2025, after DCG shared its draft Injunction Motion, the Debtors wrote to DCG, explaining: "There are a number of points in your brief with which we disagree, although we are aligned on the requested relief. While the LOC does not intend to join DCG's motion, we will likely file a 'me too' submission of some kind in support of enjoining the actions. If you'd like to discuss further, please let me know." Selendy Decl., Ex. 1. The Debtors never promised DCG anything, and DCG never reached back out to discuss.

8

Committee has now brought an action on behalf of all Genesis bankruptcy crypto-creditors seeking in-kind recovery, I want to defer to that action, at least for now. I appreciate the goal of the LOC to achieve justice and maximize full in-kind recovery, which has been my desire all along, and have confidence in the LOC and its counsel in seeking that goal." Selendy Decl., Ex. 3. The Debtors likewise have continued to communicate with the Sokolowskis.

16.     The voluntary dismissal of the Falco Action demonstrates why it is critical that this Court protect the Debtors' exclusive right with respect to estate causes of action. By vesting the Debtors with that exclusive right, the Plan ensures that the Debtors retain the discretion necessary to best preserve estate resources, here by seeking an out of court resolution, as determined by the Debtors—not by DCG. It is also important to preserve the LOC's goal of collaborating with creditors and unifying them against DCG and others that harmed them before Genesis's downfall.

### III.    In the Alternative, the Court Should Hold the Motion to Enforce and Injunction Adversary Proceeding in Abeyance

17.     In the alternative, the Debtors ask the Court to hold the Motion to Enforce and the Injunction Adversary Proceeding in abeyance pending resolution of the Pennsylvania Sokolowski Action. As the Debtors explain in their Motion to Enforce, the Sokolowskis bring a single consumer protection claim against DCG under Pennsylvania law. DCG's motion to dismiss that claim is fully briefed and ready for decision by the presiding District Court. DCG moved to dismiss the claim for several independent reasons. Citing their reply brief, DCG says "it has not asked th[e Pennsylvania] court to determine whether the Sokolowskis assert derivative claims," Obj. 5. DCG omits the key portion of its brief in support of dismissal in which it asserts the claims belong to the estate: "Plaintiff does not have standing to bring any claims based on veil piercing because such claims are exclusively entrusted to the Genesis bankruptcy estate." Reply Mem. of Law in Support of Mot. to Dismiss of Defs. Digital Currency Group, Inc. and Barry E. Silbert at

9

24 n.12, *Sokolowski v. Digital Currency Grp., Inc.*, 25-cv-1 (M.D. Pa. July 1, 2025), ECF No. 52 (citing *Tronox*). A ruling on the motion to dismiss in the Pennsylvania Action may moot the need for the Debtors to seek additional relief here.

18. Additionally, while the Connecticut Sokolowski Action brings claims against DCG, the Sokolowskis and DCG have represented that the Connecticut Sokolowski Action will proceed only if the Pennsylvania Sokolowski Action is dismissed for lack of personal jurisdiction, and the Sokolowskis already moved to stay the action in Connecticut. *Supra* note 3. Accordingly, nothing about the proceedings in the Connecticut Sokolowski Action requires the Debtors to spend unnecessary resources now to enjoin that action.

19. Following the Falco dismissal and in recognition of the efficiencies to be gained by the Debtors' pursuit of their own rights, the Debtors offered to adjourn the Motion to Enforce if DCG would adjourn its unfounded Adversary Proceeding pending a ruling in the Pennsylvania Sokolowski Action. Selendy Decl., Ex. 2. DCG did not accept that offer. Selendy Decl., ¶ 4. DCG's refusal speaks volumes. Regardless, an adjournment would protect all rights and best serve the interests of efficiency.

## CONCLUSION

The Court should grant the Motion to Enforce and dismiss the Injunction Adversary Proceeding. In the alternative, the Court should hold the Motion to Enforce and the Injunction Adversary Proceeding in abeyance pending the resolution of the Pennsylvania Sokolowski Action.

| | |
|---|---|
| Dated: New York, NY<br>August 13, 2025 | Respectfully submitted,<br><br>SELENDY GAY PLLC<br><br>By:  /s/  *Philippe Z. Selendy*<br>Philippe Z. Selendy<br>Jennifer M. Selendy<br>Claire E. O'Brien<br>Laura M. King<br>SELENDY GAY PLLC<br>1290 Avenue of the Americas<br>New York, NY  10104<br>Tel: 212-390-9000<br>pselendy@selendygay.com<br>jselendy@selendygay.com<br>cobrien@selendygay.com<br>lking@selendygay.com<br><br>*Attorneys for Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific Pte. Ltd.* |