**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

In re:                                              Chapter 11

GENESIS GLOBAL HOLDCO, LLC, *et al.*                Case No. 23-10063 (SHL)

                              Debtors.              (Jointly Administered)
------------------------------------------------------------------x

<u>**MEMORANDUM OF DECISION**</u>

**A P P E A R A N C E S :**

**KIM & SERRITELLA LLP**
*Counsel for Eric Asquith*
110 W. 40th Street, 10th Floor
New York, NY 10018
By:    James R. Serritella, Esq.
         Hee-Jean Kim, Esq.

**HUGHES HUBBARD & REED LLP**
*Counsel for Gemini Trust Company LLC*
One Battery Park Plaza
New York, NY 10004
By:    Carl W. Mills, Esq.
         Erin Diers, Esq.
         Anson B. Frelinghuysen, Esq.

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
*Counsel for the Debtors*
One Liberty Plaza
New York, New York 10006
By:    Luke A. Barefoot, Esq.

**MEDINA LAW FIRM**
*Counsel for BAO Family Holdings, LLC*
641 Lexington Avenue, 13th Floor
New York, NY 10022
By:    Eric Medina, Esq.

**UNITED STATES DEPARTMENT OF JUSTICE**
*United States Trustee*
Office of the United States Trustee

Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10003
By:      Gregory M. Zipes, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is *Gemini Trust Company, LLC's Motion as Against Eric Asquith (I) To Enforce the Settlement Agreement Among the Debtors, Gemini Trust Company, LLC, the Ad Hoc Group of Genesis Lenders, and the Official Committee of Unsecured Creditors; (II) To Enforce the Court's Order Approving the Settlement Agreement; and (III) For Injunctive Relief* [ECF No. 1991][1] (the "Motion").  Eric Asquith filed an *Opposition Brief re: Gemini Trust Company, LLC's Motion as Against Him* [ECF No. 2015] (the "Asquith Opposition") and BAO Family Holdings, LLC ("BAO") filed an *Objection to Motion to Enjoin Gemini Lender Claims* [ECF No. 2017] (the "BAO Opposition").  The Debtors have filed a *Statement and Reservation of Rights with Respect to Gemini Trust Company, LLC's Motion to Enforce* [ECF No. 2014] (the "Statement and Reservation of Rights") and Gemini Trust Company, LLC ("Gemini") filed an *Omnibus Reply in Further Support of Its Motion as Against Eric Asquith* [ECF No. 2026] (the "Reply to Motion").  A hearing was held on October 9, 2024 (the "Hearing"), at which time the Motion was taken under consideration.

Two questions are raised by the Motion.  First, is Eric Asquith ("Mr. Asquith"), a Gemini Lender (as defined below), bound by the settlement agreement (the "Settlement Agreement")[2] that was approved by this Court in April 2024 between Gemini and the Debtors, among others.

---

[1]      Unless otherwise indicated, references in this Memorandum of Decision to docket entries on the Case Management/Electronic Case Files ("ECF") system are to Case No. 23-10063.

[2]      The Settlement Agreement is attached as Exhibit B to the *Debtors' Motion for Entry of an Order Approving a Settlement Agreement Among the Debtors, Gemini Trust Company, LLC, the Ad Hoc Group of Genesis Lenders, and the Official Committee of Unsecured Creditors* [ECF No. 1499] (the "Settlement Mot.").

*See Order Approving Settlement Agreement Among the Debtors, Gemini Trust Company, LLC,*
*the Ad Hoc Group of Genesis Lenders and the Official Committee of Unsecured Creditors* [ECF
No. 1598] (the "Settlement Order").  Second, assuming Mr. Asquith is bound, does the
Settlement Agreement resolve all claims of the Gemini Lenders against Gemini such that Mr.
Asquith can no longer pursue such claims in the pending Asquith Arbitration (as defined below)
against Gemini.  On the one hand, Gemini argues that the Settlement Agreement's resolution of
the Gemini Master Claim (as defined below) filed in this case resolves all potential claims of
Gemini Lenders like Mr. Asquith, including those pending against Gemini in the Asquith
Arbitration.  On the other hand, Mr. Asquith and BAO contend that the Settlement Agreement
only resolves the specific claims identified in the Gemini Master Claim against the Debtors but
does not include a release of any claims by Gemini Lenders against Gemini.  This Memorandum
of Decision constitutes the Court's findings of fact and conclusions of law for the foregoing
questions.  For the reasons set forth below, the Court finds that Mr. Asquith is bound by the
Settlement Agreement but that he is not barred from pursuing his separate claims, if any, in an
Asquith Arbitration against Gemini to recover damages that he has not otherwise been
compensated for as part of the Settlement Agreement.

## **BACKGROUND**

These cases have significant history.  While this decision will not recount all of that
history, it will provide sufficient background so that parties who did not participate in these
bankruptcy cases (such as an arbitrator) will be able to understand the Court's ruling.  *See In re*
*Genesis Glob. Holdco, LLC*, 660 B.R. 439 (Bankr. S.D.N.Y. 2024) (decision confirming plan of
reorganization and overruling various objections to that plan).

## I.    The Debtors' Prepetition Relationship with Gemini and the Gemini Lenders

Prior to the filing of these bankruptcy cases, the Debtors and their subsidiaries and affiliates were in the business of trading, borrowing, and lending digital assets and fiat currency to and from institutional and individual customers.[3]  *See id*.  As part of that business, Debtor Genesis Global Capital, LLC ("GGC") had entered into a master digital asset loan agreement (the "MLA") with Gemini and certain users of the Gemini platform (each such user, a "Gemini Lender" and, collectively, the "Gemini Lenders").  *See* Settlement Mot. Ex. D, Lynch Declaration (the "Lynch Decl.") at ¶ 4; *id.* Ex 2, MLA; *see also* Motion at ¶ 11.  Gemini offered a lending and interest earning product called Earn under which Gemini customers who participated in Earn (the "Earn Users") could choose to invest their Digital Assets with GGC, with Gemini serving as custodian and agent to the Earn Users.[4]  *See* Lynch Decl. Ex. 1, Gemini Earn Program Terms and Authorization Agreement (the "Earn Agreement" and the transactional arrangements as set forth therein, the "Earn Program") at § 3; *see also* Lynch Decl. Ex. 2, MLA at § I(b); Adversary Complaint at ¶ 22, Adv. Pro. No. 23-01192 [ECF No. 1] (the "Adversary Complaint"); Motion at ¶ 11.  Paragraph 3 of the Earn Agreement specifically provided that Gemini possessed the authority to act in any way it "determine[d] to be desirable, necessary or appropriate to implement and administer [Gemini Lender's] authorization to lend Available Digital Assets."  Earn Agreement at § 3.  Each Gemini Lender also agreed that, in the event of a default by GGC, Gemini would be entitled to exercise any rights and remedies under the MLA

---

[3]    "Digital Assets" is defined as "a digital currency or crypto asset in which transactions are verified and records are maintained by a decentralized system using cryptography, rather than by a centralized authority, including Stablecoins, digital coins, and tokens, such as security tokens, utility tokens, and nonfungible tokens, and governance tokens."  Settlement Agreement at Art I.

[4]    While Gemini represented that it partnered with "accredited third party borrow*er*s [in Earn] . . . who [were] vetted through a risk management framework . . . [,]" Gemini's sole lending partner for Earn was GGC.  Asquith Opposition Ex. B, Serritella Declaration (the "Serritella Decl.") Ex. 1, Amended Statement of Claim at ¶ 154, AAA No. 01-22-0005-3033 (the "ASOC").

and would be "fully protected in acting in any manner [Gemini] deems reasonable and appropriate." *Id.* at § 5.[5]

Mr. Asquith created an Earn User profile in 2022. *See* ASCO at ¶¶ 2, 33. In 2022, Mr. Asquith deposited approximately $1,082,000 into his Earn account with Gemini and, in turn, with GGC. *See id.* at ¶ 34.

As part of Earn, Gemini Lenders like Mr. Asquith were entitled to redeem their Digital Assets at "any time" for their current market value plus interest. *See, e.g.*, Adversary Complaint at ¶ 31; *see also* Asquith Opposition at ¶ 51; ASOC at ¶¶ 2, 51. The Gemini web page for Earn promised that in all cases, Earn redemptions would be made within five (5) business days upon request. *See* Asquith Opposition at ¶ 57; *see also* ASOC at ¶ 57.[6] Gemini represented that upon an Earn redemption, Earn Users could earn interest rates above 8.05%. *See* ASOC at ¶¶ 47, 57.

On November 16, 2022, however, GGC suspended all Earn redemptions (the "Earn Redemption Suspension Date"). *See* Adversary Complaint at ¶¶ 31, 43; ASOC at ¶ 40. Approximately one month later, in December 2022, Mr. Asquith filed an arbitration proceeding (the "Asquith Arbitration") with the American Arbitration Association against Gemini and GGC in connection with his investment in Earn that alleged, among other things, claims for fraud, fraud in the inducement and fraudulent concealment, negligence, unjust enrichment, promissory estoppel, civil conspiracy, negligent infliction of emotional distress, breach of fiduciary duty, and violations of Massachusetts General Laws Ch. 93A ("93A"). *See* Adversary Complaint, AAA

---

[5]    Under the MLA, GGC was obligated to indemnify Gemini for any liabilities, losses, costs, damages, expenses or causes of action arising from any breach by GGC under the MLA, except to the extent such liabilities or other obligations were incurred as a result of a breach by Gemini. *See* MLA at § XXI; *see also* Motion at ¶ 12.

[6]    *See also* MLA at § II(b) (providing that GGC shall, for any Digital Asset(s) that an Earn User requests to be returned, "return such Digital Assets within three [b]usiness [d]ays to a Digital Asset [a]ddress provided by [c]ustodian"); *id.* at § VI(a) (providing that GGC's failure "to return any and all [Digital Assets loaned] upon termination of any [l]oan" would be an event of default if not cured within two business days).

No. 01-22-0005-3033.

## II.    The Debtors' Bankruptcy Case

On January 19, 2023 (the "Petition Date"), GGC and various affiliates filed these Chapter 11 cases.  With the filing of these cases, the Asquith Arbitration was automatically stayed with respect to GGC.

During the early stages of these cases, the Court entered an order that provided for Gemini to file a master proof of claim "*against GGC and/or any other Debtor* that Gemini determine[d might] have liability to the Gemini Lenders for the repayment of the Gemini Borrowings." *Order (I) Establishing Bar Dates for Submitting Proofs of Claim, (II) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (III) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (IV) Providing Certain Supplemental Relief* at ¶ 7 [ECF No. 200] (the "Bar Date Order") (emphasis added).  On May 22, 2023, Gemini timely filed the master proof of claim (the "Gemini Master Claim") on behalf of the Gemini Lenders.  *See* Claim No. 356; *see also Stipulation and Order by and Between the Debtors and Gemini Trust Company, LLC, on Behalf of Gemini Lenders, Allowing the Gemini Master Claim (Claim No. 356)* at ¶ 4 [ECF No. 1393] (the "Gemini Master Claim Stipulation"). The Gemini Master Claim covers the Gemini Lenders' claims against Debtor GGC.  *See* Bar Date Order at ¶ 7; *see also* Gemini Master Claim Stipulation at ¶ 4 ("The Bar Date Order authorized and directed Gemini to file [the Gemini] [M]aster [C]laim on behalf of each of the Gemini Lenders . . . against GGC and/or any other Debtor that Gemini determined may have liability to the Gemini Lenders for repayment of Gemini Lenders' loans to GGC pursuant to the [] Earn Program.").

Generally speaking, the Gemini Master Claim sought recovery for digital coins that

Gemini Lenders had loaned to GGC through Gemini but that had not been returned to the

Gemini Lenders; the Gemini Master Claim also sought payment of any other compensation to

which Earn Users were entitled under the MLA.  *See* Claim No. 356; MLA at §§ II–IV;

*Response to Motion /Reservation of Rights filed by Eric S. Medina, Esq. on behalf of BAO*

*Family Holdings LLC* at 3–4 [ECF No. 1562] (the "BAO Reservation of Rights"); *see also* Hr'g

Tr., October 9, 2024, at 15:20–24 [ECF No. 2039]; Motion at ¶ 21.  More specifically, the

Gemini Master Claim can be broken into various defined categories.  The term "Loaned Coins"

captures all Gemini Lender claims for any Digital Assets loaned into the Earn Program but not

returned to Gemini Lenders upon an Earn redemption under the terms of the MLA.  *See* MLA at

§ II; Claim No. 356; *see also* BAO Reservation of Rights at ¶ 4.  "Loan Fees" cover all Gemini

Lender claims regarding interest due and owing to Gemini Lenders from the date with which the

Digital Assets are loaned to GGC up until the loan maturity date (the "Maturity Date"), date of

an Earn redemption, or Earn Redemption Suspension Date, as applicable.  *See* MLA at § III(a);

Claim No. 356; *see also* BAO Reservation of Rights at ¶ 4.  "Late Fees" includes all Gemini

Lender claims for interest due and owing to Gemini Lenders after the Maturity Date, Earn

Redemption Suspension Date, or after any Earn redemption that does not occur.  *See* MLA at §

III(a); Claim No. 356; *see also* BAO Reservation of Rights at ¶ 4.  Together, the Loan Fees and

Late Fees constitute the forms of interest (the "Interest") that contractually exist in the MLA and

Earn Agreement.  *See* Hr'g Tr., October 9, 2024, at 20:12–14 (explaining that the Interest

contractually existing consists of the Loan Fees and Late Fees); *see also id.* at 13:3–4 (explaining

Gemini's intention for Interest to primarily cover the Loan Fees and Late Fees); *id.* at 19:18–23,

28:1–2, 44:8–9, 49:23-25–50:1–2.  The term "New Tokens" captures Gemini Lender claims for

incremental tokens earned as a result of a Hard Fork[7] in the relevant blockchain or an Applicable Airdrop.[8]  Finally, the term "Additional MLA Claims" covers any additional Gemini Lender claim that may arise in law or equity that the Debtors may owe to the Gemini Lenders in connection with the MLA, the security agreement entered into by Gemini and GGC on August 15, 2022 (the "Security Agreement"), and all agreements related thereto because of the "[Debtors] continuing failure to honor obligations due and owing to the Gemini Lenders . . . ." Claim No. 356; *see* BAO Reservation of Rights at 3–4.

The Gemini Master Claim was filed "in the name of Gemini, solely in its capacity as agent for and on behalf of the Gemini Lenders, as a general unsecured pre-petition claim" for a United States dollar ("USD") equivalent of $1,048,812,059.50.  *See* Gemini Master Claim Order, Ex. 1.

## III.    The Settlement Agreement

In March 2024, the Debtors filed the Settlement Motion to resolve the treatment of the Gemini Master Claim in these bankruptcy cases, with Gemini filing a statement in support of the Settlement Agreement, which is governed by New York law.  *See* Settlement Mot.; Settlement Agreement at § 11.3; *Gemini Trust Company, LLC's Statement in Support of Debtors' Motion for Entry of an Order Approving a Settlement Agreement Among the Debtors, Gemini Trust Company, LLC, the Ad Hoc Group of Genesis Lenders, and the Official Committee of Unsecured Creditors* [ECF No. 1500] (the "Gemini Statement in Support").  The Settlement Agreement—

---

[7]      "Hard Fork" is defined as "a permanent divergence in the blockchain (e.g., when non-upgraded nodes cannot validate blocks created by upgraded nodes that follow newer consensus rules, or an airdrop or any other event which results in the creation of a new token)."  MLA at Recitals.

[8]      "Airdrop" means "a distribution of a new token or tokens resulting from the ownership of a preexisting token" while "Applicable Airdrop" means "an Airdrop for which the distribution of new tokens can be definitively calculated according to its distribution method, such as a pro rata distribution based on the amount of the relevant Digital Asset held at a specified time."  MLA at Recitals.

the culmination of more than 15 months of negotiations between the Debtors, Gemini, an ad hoc group of Gemini Lenders represented by Proskauer Rose LLP (the "AHG"), and the official committee of unsecured creditors (the "Committee")—resolved the Gemini Master Claim by providing for material distributions to Gemini Lenders.  *See* Settlement Mot. at ¶¶ 4, 22, 35, 44; *see also* Settlement Mot. Ex. C, Coheeney Declaration at ¶¶ 11–12, 14 (the "Coheeney Decl."). The settlement payment through the Gemini Master Claim, as approved, was considered "the full and final settlement of the amount of the Digital Assets in the Gemini Master Claim."  Gemini Master Claim Stipulation at ¶ 2; *Stipulation and Order by and Between the Debtors and Gemini Trust Company, LLC, on Behalf of Gemini Lenders, Allowing the Gemini Master Claim (Claim No. 356)* at ¶ 2 [ECF No. 1597] (the "Gemini Master Claim Order").  Under the Settlement Agreement, Gemini Lenders received coin-for-coin recoveries for the return of their Digital Assets—worth more than $1 billion as of the Petition Date—that the Gemini Lenders had lent to GGC, but that, as of the Earn Redemption Suspension Date GGC had not returned, plus any appreciation in value of their Digital Assets.  *See* Settlement Mot. Ex. E, Gemini 9019 Motion Notice at ¶ 3 (explaining that if Gemini Lenders lent one bitcoin in the Earn Program, they would receive one bitcoin back plus "any and all appreciation of [Digital] [A]ssets since [Gemini Lenders] lent them into the Earn [P]rogram."); Hr'g Tr., October 9, 2024, at 11:6–7, 22:11–12, 54:19–21, 55:6–7, 11–12, 63:14–15; *see also* Motion at ¶ 36; Adversary Complaint at ¶ 3 n.2; Memorandum of Decision [ECF No. 1691] at ¶ 5 (rejecting the confirmation objection of GGC's parent company, Digital Currency Group, Inc. ("DCG"), that claims should be valued as of the date of the filing of the Debtors' bankruptcy); *see generally* Settlement Agreement.

The Settlement Agreement here was a significant accomplishment for Gemini Lenders as no crypto currency customers had ever recovered any appreciation in the value of their coins

following the filing of a bankruptcy. *See, e.g.*, *In re FTX Trading Ltd., et al.* [Case No. 22-11068 (JTD), ECF No. 19069] at ¶ 1 ("[T]he value of the [cryptocurrency-based] claims must be determined as of the petition date as if the bankruptcy had never occurred.") (citing 11 U.S.C. § 502(b)); *see also id.* at § I ¶ 4 (same); *In re Celsius Network LLC, et al.* [Case No. 22-10964 (MG), ECF No. 3972] at ¶ 175 (explaining that cryptocurrency claims would be valued "as of the Petition Date . . . ."); *id.* at ¶ 215 (same); *In re Desolation Holdings LLC, et al.* [Case No. 23-10597 (BLS), ECF No. 517] Ex. A, Art I at § A ¶ 37 (providing that certain cryptocurrency claimants would receive a "Customer Distribution" of "100% of the amount of Cryptocurrencies associated with such Customer's account as of the Petition Date[.]"); *In re Bittrex, Inc.* [Case No. 23-10598 (BLS), ECF No. 147] at ¶ 4 (same). Following an uncontested hearing on April 16, 2024 (the "Settlement Hearing"), the Court approved the Settlement Agreement on April 19, 2024. *See generally* Settlement Order.

A.    **Authority to Enter into the Settlement Agreement**

Section 5.1(c) of the Settlement Agreement provides that the Settlement Order would (i) "include a determination by the Bankruptcy Court that Gemini [had] the authority to bind the Gemini Lenders to [the] Settlement Agreement and its terms pursuant to the terms of the Gemini Earn Agreements"; (ii) "confirm that the Gemini Lenders were bound by the terms of [the] Settlement Agreement"; and (iii) "provide authority for Gemini to effectuate, as agent for the Gemini Lenders and as the Gemini Distribution Agent," among other things, "the distributions and other transactions contemplated by [the] Settlement Agreement." Settlement Agreement at § 5.1(c). Indeed, the Settlement Order provides that "Gemini [had] the authority to bind the Gemini Lenders pursuant to the terms of the Gemini Earn Agreements, and the Gemini Lenders are bound by the terms of the Settlement Agreement." Settlement Order at ¶ F.

## B.      Distributions Under the Settlement Agreement

The Settlement Agreement provides that initial distributions to Gemini Lenders would constitute approximately 97% of the Digital Assets owed to each Gemini Lender as of the Earn Redemption Suspension Date on account of the Gemini Master Claim, and that the remaining asset balance will be credited in-kind as recoveries are received from DCG (the "DCG Receipts").  *See* Settlement Mot. Ex. E, Gemini 9019 Motion Notice at ¶ 5; *see also* Coheeney Decl. at ¶ 20.  Initial contributions by Gemini in the amount of either (a) 50 million dollars, (b) Digital Assets having a value of 50 million dollars, or (c) a combination of USD and Digital Assets having a value of 50 million dollars (the "Gemini Contribution") were to be deposited into a segregated account numbered 34162511 (the "Redemption Account") within five business days following the settlement effective date, which occurred on May 9, 2024 (the "Settlement Effective Date").  *See* Settlement Agreement at §§ 2.1–2.5; *see also Notice of Settlement Effective Date and Completion of the Genesis Distribution Pursuant to the Settlement Agreement Among the Debtors, Gemini Trust Company, LLC, the Ad Hoc Group of Genesis Lenders, and the Official Committee of Unsecured Creditors* at ¶ 5 [ECF No. 1676].

Section 2.5(b) of the Settlement Agreement clarifies that the distribution of the Gemini Contribution and Gemini Distribution Assets[9] would reduce the Gemini Master Claim on a coin-for-coin basis with respect to each Digital Asset so delivered to the Gemini Lenders, except for the completion Digital Assets (the "Completion Digital Assets") which would be distributed in accordance with Section 2.5(c) of the Settlement Agreement "on behalf of the Debtors to the Gemini Lenders in its sole and absolute discretion[,]" with certain exceptions not relevant to the

---

[9]      "Gemini Distribution Assets" are defined as "the USD and Digital Assets acquired by the Gemini Distribution Agent from the proceeds of (a) the Digital Asset Rebalance referenced in Section 2.5 [of the Settlement Agreement], (b) the Gemini Contribution, (c) the Genesis Distribution, and (d) any DCG Receipts."  Settlement Agreement Art. I at § 1.2.

present dispute.  Settlement Agreement at §§ 2.5(b)–(c); *see* Settlement Mot. at §§ B(c), B(g).

Completion Digital Assets constituted the remaining 2.24% of Gemini Distribution Assets after

accounting for the 97.76% in initial distributions.  *See, e.g.*, *Notice of Distribution to Gemini*

*Lenders of Completion Digital Assets Resulting in 100% in Kind Distributions to Gemini*

*Lenders* at ¶ 9 [ECF No. 1791] (the "100% Distribution Notice").

On the Settlement Effective Date, the Debtors completed the distributions contemplated

by Section 2.4 of the Settlement Agreement.  *See Notice of Distribution to Gemini Lenders and*

*Compliance with the Settlement Agreement Among the Debtors, Gemini Trust Company, LLC,*

*the Ad Hoc Group of Genesis Lenders, and the Official Committee of Unsecured Creditors* at ¶ 6

[ECF No. 1717] (the "Distribution Notice").

As of June 20, 2024, the Gemini Lenders received 100% of the Gemini Distribution

Assets.[10]  *See* 100% Distribution Notice at ¶ 10; *see also* Motion at ¶ 57.  As of September 2024,

GGC returned Digital Assets worth more than $2.3 billion to the Gemini Lenders collectively,

including returning Digital Assets worth more than $1 million to Mr. Asquith.  *See* Settlement

Mot. Ex. E, Gemini 9019 Motion Notice at ¶ 3; Motion at ¶ 7.

    **i.**       **Post-Distribution Liability Under the Settlement Agreement**

Section 2.5(c) of the Settlement Agreement provides that, following distribution of the

Digital Assets in accordance with Sections 2.5(b) and 2.5(c) of the Settlement Agreement,

"neither Gemini nor the Gemini Distribution Agent[11] [would] have any further obligations to the

---

[10]      The "Genesis Distribution" is defined as "the number and type of Alt-Coins set forth on Schedule "D" [to the Settlement Agreement] (the "Genesis Alt-Coin Distribution"); and (ii) an amount in USD equal to (i) the MCDA Value minus (ii) the sum of (A) the Gemini Contribution, (B) the DCG Amount, (C) the Gemini GBTC Value, (D) the Effective Date Value of the Genesis Alt-Coin Distribution to the extent made in accordance with Section 2.4(a)(i) [of the Settlement Agreement], and (E) the Effective Date Value of the Gemini Earn Operations Assets (the "Genesis USD Distribution" and together with the Genesis Alt-Coin Distribution, the "Genesis Distribution")." Settlement Agreement at § 2.4(a).

[11]      Gemini was appointed as the Gemini Distribution Agent solely for the purpose of effectuating the Settlement Agreement.  *See, e.g.*, *Notice of Distribution to Gemini Lenders and Compliance with the Settlement*

Gemini Lenders with respect to the Gemini Master Claim."[12]  *See* Settlement Agreement at §

2.5(c).  Section 2.5(c) of the Settlement Agreement ostensibly releases Gemini (and the Gemini

Distribution Agent) from claims by all Gemini Lenders for Loaned Coins, Loan Fees, Late Fees,

New Tokens or Additional MLA Claims.  *See id.*  Section 10.1 of the Settlement Agreement

provides that the Gemini Distribution Agent's distribution of the Digital Assets would be "in full

satisfaction of each Individual Earn Obligation," which the Settlement Agreement defined as,

"for each Gemini Lender, the amount of Digital Assets owed, as of the [Earn Redemption]

Suspension Date, pursuant to the Gemini Earn Agreement to which such Gemini Lender is a

party, as such amount is listed as a 'pending redemption' on such Gemini Lender's Earn account

page . . . as of [March 19, 2024]."  *Id.* at §§ 1.2, 10.1.  Section 10.1 of the Settlement Agreement

clarifies that claims for Loaned Coins under the Gemini Master Claim are satisfied by

distributions under the Settlement Agreement.  *See id.* at § 10.1.

The Settlement Agreement explicitly provides for the following releases: (i) the Debtors,

AHG (for itself and on behalf of SteerCo Members,[13] but not with respect to any other AHG

---

*Agreement Among the Debtors, Gemini Trust Company, LLC, the Ad Hoc Group of Genesis Lenders, and the Official Committee of Unsecured Creditors* at ¶ 4 [ECF No. 1717]; *see also* Settlement Order at ¶ 7.

[12]     Paragraph 15 of the Settlement Order mirrors the language in Section 2.5(c) of the Settlement Agreement, except for the last five words—"asserted against the Debtor Releasees"—which were added to the Settlement Order just one day prior to the Settlement Hearing, in response to the BAO Reservation of Rights.  *See Notice of Revised Proposed Order Approving Settlement Agreement Among the Debtors, Gemini Trust Company, LLC, the Ad Hoc Group of Genesis Lenders and the Official Committee of Unsecured Creditors* [ECF No. 1582] (the "Notice of Revised Proposed Order").  The BAO Reservation of Rights was filed in response to the language in Section 2.5(c) and was withdrawn after "asserted against the Debtor Releasees" was added to Paragraph 15 of the Settlement Order.  *See Notice of Withdrawal of Reservation of Rights Regarding Motion for Approval of Compromise by Debtors, Gemini Trust Company, LLC, Ad Hoc Group of Genesis Lenders, and Official Committee of Unsecured Creditors* [ECF No. 1571].  The final Settlement Order language provides that "[f]ollowing the distribution of the Gemini Distribution Assets in accordance with Section 2.5(b) of the Settlement Agreement . . . neither Gemini nor the Gemini Distribution Agent shall have any further obligations to the Gemini Lenders with respect to the Gemini Master Claim asserted against the Debtor Releasees."  Settlement Order at ¶ 15.  The Settlement Order provides that "[i]n the event of any conflict between the Settlement Agreement and th[e] [Settlement] Order, the terms of th[e] [Settlement] Order shall govern."  *Id.* at ¶ 3.

[13]     "SteerCo Members" are defined as the members of the steering committee of the AHG as of March 19, 2024.  *See* Settlement Agreement Art. I at § 1.2.

members) and the Committee's release of the Gemini Releasees;[14] (ii) Gemini's release of the

Debtors, AHG and the Committee; and (iii) the Debtors' release of the Gemini Lenders.  *See*

Settlement Agreement at §§ 3.1–3.2.  There are no releases given by all Gemini Lenders (apart

from the AHG for itself and on behalf of SteerCo Members) to anyone in the Settlement

Agreement.

## DISCUSSION

For the reasons set forth below, the Court finds that Mr. Asquith, a Gemini Lender, is

bound by the Settlement Agreement and is barred from pursuing claims against Gemini covered

by the Settlement Agreement, including claims for Loaned Coins, Loan Fees, Late Fees, New

Tokens, or Additional MLA Claims.  But Mr. Asquith is not barred from pursuing other claims

that he may have against Gemini to the extent he has not received a full recovery on any such

claims.

## I.    Whether Gemini Lenders Such as Mr. Asquith are Bound by the Settlement Agreement

"A settlement agreement is a contract that is interpreted according to general principles of

contract law" under the laws of New York.  *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir.

2007) (internal citations omitted); *see also Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443

(2d Cir. 2005).  Under such general principles, the Court looks first to determine whether the

Settlement Agreement is ambiguous.  *See, e.g.*, *Deutsche Bank Secs., Inc. v. Rhodes*, 578 F.

Supp. 2d 652, 662 (S.D.N.Y. 2008); *see also Liberty Mut. Fire Ins. Co. v. JDS Constr. Grp.*

[Case No. 21-01931 (JLR), ECF No. 131].  A contract is unambiguous if "its language has a

'definite and precise meaning,' providing no reasonable basis for a difference of opinion."

---

[14]    "Gemini Releasees" are defined as "Gemini and, solely in their capacities as such, its past and present officers, directors, principals, employees, successors, attorneys, and insurers." *Id.*

*Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 441 (2d Cir. 2024)

(quoting *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002)); *see also Donohue v.*

*Cuomo*, 184 N.E.3d 860, 867 (2022) ("Ambiguity in a contract arises when the contract, read as

a whole, fails to disclose its purpose and the parties' intent, or when specific language is

susceptible of two reasonable interpretations.") (*quoting Ellington v. EMI Music, Inc.*, 24 N.Y.3d

239, 244 (2014)).  If the contract is unambiguous, the Court's inquiry is confined to the plain

language of the agreement to determine the rights and obligations of the parties.  *See Edwards v.*

*Poulmentis*, 307 A.D.2d 1051, 1052 (2003).  Extrinsic evidence is inadmissible to vary the clear

and unambiguous terms of the contract.  *See id.*; *see also Herzfeld v. Herzfeld*, 50 A.D.3d 851,

852 (2008) (collecting New York cases).

Where a contract is ambiguous, however, "extrinsic evidence may be considered 'to

ascertain the correct and intended meaning of a term' or terms." *Eternity Glob. Master Fund*

*Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 179 (2d Cir. 2004) (internal citations

omitted).  "Where a contract was negotiated between sophisticated, counseled businesspeople

negotiating at arm's length, courts should be especially reluctant to interpret an agreement as

impliedly stating something which the parties specifically did not include." *Donohue*, 184

N.E.3d at 866 (citations and quotation marks omitted).

Section 5.1(c) of Settlement Agreement contemplates that the Settlement Order shall

"include a determination by the Bankruptcy Court that Gemini has the authority to bind the

Gemini Lenders to this Settlement Agreement and its terms pursuant to the terms of the Gemini

Earn Agreements" and "confirm that the Gemini Lenders are bound by the terms of this

Settlement Agreement."  Settlement Agreement at § 5.1(c).  Consistent with this provision, the

Settlement Order does provide that "Gemini ha[d] the authority [as agent] to bind the Gemini

Lenders pursuant to the terms of the Gemini Earn Agreements, and the Gemini Lenders are bound by the terms of the Settlement Agreement." Settlement Order at ¶ F.  There is no ambiguity.  The Settlement Order plainly states that the Gemini Lenders are bound by the Settlement Agreement.  As a Gemini Lender, Mr. Asquith is bound by the Settlement Agreement.  Having determined that Mr. Asquith is bound by the Settlement Agreement, the question becomes whether that agreement released claims that he might have against Gemini.

## II.    <u>The Scope of Claims Released Under the Settlement Agreement</u>

"A release freely entered into that clearly waives a right to pursue a cause of action is binding."  *Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 87 (2d Cir. 1998).  "But a release should not be read to include matters of which the parties had no intention to dispose."  *Id*.  An intent to release a claim must be "clearly established and cannot be inferred from doubtful or equivocal . . . language . . . ."  *Id.* at 87–88 (citations omitted).

Section 2.5(c) of the Settlement Agreement releases Gemini (and the Gemini Distribution Agent) from liability for claims by Gemini Lenders for Loaned Coins, Loan Fees, Late Fees, New Tokens, and Additional MLA Claims.  *See* Settlement Agreement at § 2.5(c).  But nowhere in the Settlement Order do the Gemini Lenders release Gemini from any obligations by Gemini unrelated to the Gemini Master Claim, and the Settlement Order controls to the extent the Settlement Order and Settlement Agreement conflict.  *See* Settlement Order at ¶ 3.  Section 3.1 of the Settlement Agreement is similarly clear: It releases the Gemini Releasees from a garden variety of claims by the Debtor Releasors, the AHG (for itself and on behalf of SteerCo Members, but not with respect to any other AHG members) and the UCC.  *See* Settlement Agreement at § 3.1.  The Settlement Agreement provides no releases on the part of the Gemini Lenders (apart from the AHG for itself and on behalf of SteerCo Members) to anyone in the Settlement Agreement.  *See id*. at §§ 3.1–3.2.  Reading the release language in its entirety, and in

16

conjunction with the language in Section 2.5(c) of the Settlement Order, it is evident that the Settlement Agreement did not intend to release all claims that Gemini Lenders might have against Gemini.  If the language in Section 2.5(c) of the Settlement Agreement regarding the treatment of the Gemini Master Claim was intended to resolve all claims by Gemini Lenders against Gemini, then the release provision of Section 3.1 of the Settlement Agreement would be irrelevant.  In fact, the dismissal of the adversary proceeding that the Debtors commenced against Mr. Asquith (Adv. Pro. No. 23-1190), which allowed Gemini Lenders to resume pursuing claims against Gemini in the Asquith Arbitration, is entirely consistent with the notion that the Gemini Lenders are not barred from pursuing any separate claims they might have against Gemini that were not covered by the Gemini Master Claim.

There is nothing in the record to suggest that the failure to include language releasing the Gemini Lenders reflects anything more than the scope of the parties' compromise, as opposed to a mistake or oversight.  As an initial matter, the Settlement Agreement was the result of more than 15 months of negotiations between six sophisticated entities and their counsel.  *See* ASOC at ¶ 2; Motion at ¶¶ 2, 11, 26.  The Settlement Agreement is replete with releases and explicitly includes releases in Article 3 as to: (1) the Gemini Releasees on the part of (i) the Debtors, (ii) the AHG (for itself and for the SteerCo Members, but not with respect to any other AHG members), and the (iii) Committee; (2) Gemini and the Gemini Distribution Agent on the part of (i) the Debtors and (ii) Related Parties; and (3) the Debtor Releasees, the AHG, the SteerCo Members, and the UCC, on the part of the Gemini Releasors.[15]  *See* Settlement Agreement at §§ 3.1–3.2.  Since the Settlement Agreement includes numerous, clear releases in Article 3, the

---

[15]    "Gemini Releasors" is defined as "Gemini and, solely in their capacities as such, its officers, directors, shareholders, employees, subsidiaries, agents, attorneys and representatives."  Settlement Agreement Art. I at § 1.2.

highly qualified, professional drafters knew how to write an explicit release and resolution of

claims.  Just one day prior to the Settlement Hearing, moreover, the language "asserted against

the Debtor Releasees"[16] was added after "neither Gemini nor the Gemini Distribution Agent

shall have any further obligations to the Gemini Lenders with respect to the Gemini Master

Claim" in Paragraph 15 of the Settlement Order.  *See* Notice of Revised Proposed Order;

Settlement Order at ¶ 15.  The last-minute addition clarified the scope of Gemini and the Gemini

Distribution Agent's release: following distribution of the Digital Assets in accordance with the

Settlement Agreement, Gemini and the Gemini Distribution Agent would be released from any

obligations by the Debtors or Related Parties[17] relating to claims by Gemini Lenders for Loaned

Coins, Loan Fees, Late Fees, New Tokens and Additional MLA Claims (*i.e.*, from any

obligations relating to the Gemini Master Claim).  Neither the Settlement Agreement, the

Settlement Motion, the Settlement Order, nor the Gemini Statement in Support indicates that all

Gemini Lenders[18] would be releasing any claims against Gemini.  Under the Settlement

Agreement, the only claim that all Gemini Lenders are releasing is the Gemini Master Claim—

which is asserted against the Debtor Releasees and not the Gemini Releasees.  *See* Settlement

Agreement at § 2.5(c); Settlement Order at ¶ 15.  Therefore, the Settlement Agreement—which

---

[16]    "Debtor Releasees" is defined as "each Debtor and, solely in their capacities as such, its respective Related Parties; provided, however, that "Debtor Releasees" shall not include any DCG Parties or any Excluded Parties." Settlement Agreement Art. I at § 1.2.

[17]    "Related Party" is defined as, "in their capacities as such, with respect to any entity, such entity's predecessors, successors and assigns, parents, subsidiaries, affiliates, and all of their respective current and former officers and directors, principals, shareholders, members, managers, partners, employees, agents, trustee, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, and such persons' respective heirs, executors, estates, servants, and nominees; provided, however, that "Related Party" shall not include any DCG Party or any Excluded Party." Settlement Agreement Art. I at § 1.2.

[18]    Indeed, Section 3.1 of the Settlement Agreement clarifies that the AHG's release of Gemini is "for itself and on behalf of the SteerCo Members, but not with respect to any other AHG members," and is "as an Entity."  *See* Settlement Agreement at § 3.1.  "Entity" is defined as the "meaning ascribed to it in Section 101(15) of the Bankruptcy Code[,]" and Section 101(15) of the Bankruptcy Code defines "Entity" as "person, estate, trust, governmental unit, and United States trustee."  *Id.* Art. I; 11 U.S.C. § 101(15).

does not include a release of claims against Gemini on the part of Gemini Lenders other than the

AHG on behalf of itself and the SteerCo Members—cannot, therefore, resolve all potential

claims by Gemini Lenders against Gemini.  Accordingly, the only claims released by all Gemini

Lenders pursuant to the Settlement Agreement and Settlement Order are claims covered by the

Gemini Master Claim.[19]

Having determined that the Gemini Master Claim is the only claim covered by the

Settlement Agreement, the Court must examine the scope of the Gemini Master Claim to

determine how that settlement, if at all, impacts the claims that Gemini Lenders, like Mr.

Asquith, have against Gemini.

The Gemini Master Claim includes claims for (a) Loaned Coins, (b) Loan Fees, (c) Late

Fees, (d) New Tokens, and (e) Additional MLA Claims.  *See* Claim No. 356; *see also* BAO

Reservation of Rights.  As discussed above, Loan Fees capture interest due up until the Maturity

Date, date of an Earn redemption, or Earn Redemption Suspension Date, Late Fees cover interest

due after the Maturity Date, Earn Redemption Suspension Date, or after any Earn redemption

that does not occur, New Tokens cover incremental tokens generated by any Hard Fork or

Applicable Airdrop, and Additional Gemini MLA Claims include any claims by Gemini Lenders

against the Debtors for breaching the MLA, Earn Agreement, or Security Agreement.  *See* Claim

No. 356; *see also* BAO Reservation of Rights at 3–4; MLA at §§ II–IV.  Accordingly, the

Gemini Master Claim—and its related settlement—resolves claims for (a) Digital Assets loaned

into the Earn Program but not returned to Gemini Lenders upon an Earn redemption, (b) Interest

---

[19]    Consistent with the interpretation above, the language in the Settlement Order was narrowed just one day
before the Settlement Hearing to clarify that Gemini (and the Gemini Distribution Agent) would be released from
any obligations *by the Debtors (or Related Parties)* related to the Gemini Master Claim for Loaned Coins, Loan
Fees, Late Fees, New Tokens or Additional MLA Claims.  *See* Notice of Revised Proposed Order; Settlement Order
at ¶ 15.

covered by the MLA and Earn Agreement, (c) incremental tokens earned as a result of a Hard

Fork or an Applicable Airdrop, and (d) any additional Gemini Lender claim that the Debtors may

owe to the Gemini Lenders in connection with the MLA, Earn Agreement, or any related

agreements.

As already discussed, there is nothing in the Settlement Agreement that provides a

general release of any and all claims that the Gemini Lenders may have against Gemini.  That

said, it is well established that "[a] plaintiff seeking compensation for the same injury under

different legal theories is . . . only entitled to one recovery."  *US Airways, Inc. v. Sabre Holdings

Corp.*, 938 F.3d 43, 67 n.10 (2d Cir. 2019) (citing *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d

490, 497 (2d Cir. 1995)); *see also Int'l Fidelity Ins. Co. v. City of New York*, 263 F. Supp. 2d

619, 636 (E.D.N.Y. 2003) ("U]nder the New York doctrine of double recovery, defendants are

precluded from bringing claims seeking a second recovery for the same injury"); *Zarcone v.

Perry*, 434 N.Y.S.2d 437, 438–44 (1980) (finding double recovery rule barred plaintiff who had

already recovered damages in federal court on same alleged facts constituting state action);

*Leighty v. Brunn*, 125 A.D.2d 648, 649–50 (1986) ("It is beyond cavil that a plaintiff is entitled

to only one recovery with respect to an identical damage claim."); *In re Drs. Hosp. of Hyde

Park, Inc.*, 494 B.R. 344, 359 (Bankr. N.D. Ill. 2013) (holding that New York law adheres to the

single recovery principle, which holds that there may not be more than one recovery of damages

for a single, indivisible injury).  "While double recovery is barred, it is well-established that,

until finally paid, a claimant may seek recovery of the same loss from two different parties."

*Fed. Ins. Co. v. PGG Realty, LLC*, 529 F. Supp. 2d 460, 463 (S.D.N.Y. 2008); *see also In re

Nanobeak Biotech Inc.*, 656 B.R. 350, 369 (Bankr. S.D.N.Y. 2024) (explaining that, until finally

paid in full, litigants may look to multiple parties to recover the same loss) (citing *Jones v. Brand

*(In re Belmonte),* 551 B.R. 723, 732 (Bankr. E.D.N.Y. 2016)); 18B C. Wright, A. Miller, & E.

Cooper, Federal Practice and Procedure § 4476, at 539 (2nd ed. 2002) (referring to the "general

rule that pursuit of remedies against one party is not an election that forecloses remedies against

another party").

Applying those principles here, the Court concludes that many but not necessarily all of

the claims of Mr. Asquith (as a Gemini Lender) against Gemini are precluded by the settlement

here.  Mr. Asquith argues that he has numerous claims against Gemini that are not barred and are

based on a variety of legal theories including fraud, fraud in the inducement and fraudulent

concealment, civil conspiracy, unjust enrichment, negligent infliction of emotional distress,

breach of fiduciary duty, and violations of certain Massachusetts General Laws.  Mr. Asquith

contends that these are all unaffected by the settlement because they are claims against non-

Debtor Gemini and not claims against the Debtors for the return of Digital Tokens, Interest, or

otherwise as asserted in the Gemini Master Claim.  *See* Hr'g Tr., October 9, 2024, at 67:10–14

("[I]f [Asquith's] claim is for [I]nterest and [L]ate [F]ees relating in any way to actions that the

Debtor took . . . that claim is definitely barred.  But to the extent that the claim arises as a result

of what Gemini did, that's a different claim."); *id.* at 57:15–17 ("[I]nterest and [L]ate [F]ees used

as a measure of damages relating to other claims for which Gemini [] may be liable to Gemini

[L]enders is [] different" than Interest used as a measure of damages for claims for which GGC

is liable to Gemini Lenders for the failure to timely make Earn redemptions).  Put another way,

Mr. Asquith argues that his claims against Gemini as stated in the ASOC—unlike his claims

against GGC as stated in the Gemini Master Claim, which are attributable to GGC's breach of

the MLAs, Earn Agreements, and related agreements—are attributable to Gemini's misconduct

vis-à-vis the Gemini Lenders which predates any monies going to the Debtors.  *See id.* at 43:24–

44:3 ("[Asquith is] not seeking to hold Gemini liable for breach of contract for the crypto leaving

and not coming back.  [Asquith is] seeking to hold Gemini liable for making misrepresentations

to the Gemini [L]enders[.]").

But a quick review of Mr. Asquith's claims in the Asquith Arbitration helps clarify the

situation.  Mr. Asquith's ASOC filed in the Asquith Arbitration broadly seeks four categories of

damages: (1) statutory pre- and post-judgment interest, (2) expectation damages or lost

investment income, (3) damages resulting from negligent infliction of emotional distress, and (4)

statutory multiple damages under Massachusetts Law.  *See* ASOC at ¶¶ 70–71; *see also* Asquith

Decl. at ¶ 10; Asquith Opposition Art. V at ¶ 4.  While these damages are repackaged under a

variety of different theories of harm, they ultimately seek redress for a single, indivisible harm:

Debtors' failure to return Digital Assets that the Gemini Lenders had lent to GGC, but that, as of

the Earn Redemption Suspension Date, GGC had not returned, plus any appreciation in value of

those Digital Assets.  Throughout the ASOC, Mr. Asquith avers that he "placed his tokens in the

Gemini Earn [P]rogram expecting to receive payments on accrued interest and related fees[,]"

with the "expectation that he could safely and quickly withdraw his [Digital Assets] at any

time[,]" but that he was unable to withdraw his Digital Assets since mid-November 2022 and

"has not received interest payments and related fees since [then]."  ASOC at ¶¶ 186–190; *see*

*also id.* at ¶ 124 (explaining that Earn Users "have neither been paid interest and fees owed to

them from the time their assets were first withheld, nor had their accounts updated to reflect that

interest and fees [were] due to them.").

Indeed, many of the damages sought against Gemini in the ASOC seek the same recovery

already received under the Settlement Agreement as part of the recovery on the Gemini Master

Claim.  The "interest" and "fees" sought in the ASOC relate to the same Digital Assets covered

by the Gemini Master Claim, for which substantial recoveries have already been received. With respect to Mr. Asquith's claims for damages for common law fraud, fraudulent inducement, and fraudulent concealment, he seeks accrued "interest" and "related fees" in connection with the Debtors' failure to return Digital Assets invested in the Earn Program since mid-November 2022. *See id.* at ¶¶ 209, 211, 223, 226, 231, 235. With respect to his claim for damages for civil conspiracy, Mr. Asquith seeks recovery for accrued "interest" and "fees related to [Earn Users'] investments [] that Earn Users were [un]able to withdraw . . . ." *Id*. at ¶¶ 247, 252. With respect to his claim for damages for breach of fiduciary duties, Mr. Asquith seeks recovery for "interest accrued from mid-November 2022, and related fees . . . ." *Id*. at ¶¶ 264, 268. Continuing this same pattern, with respect to Mr. Asquith's claim for damages for negligence, he seeks recovery for "interest and fees" for the inability to access Digital Assets for "approximately a year and a half." *Id*. at ¶¶ 297, 300.

In short, Mr. Asquith's right to assert claims in the Asquith Arbitration must be tempered by his recovery in these bankruptcy cases. Mr. Asquith received Digital Assets worth more than $1 million dollars on account of his claims against the Debtors for Loaned Coins, Interest, New Tokens and Additional MLA Claims. *See* Settlement Mot. Ex. E, Gemini 9019 Motion Notice at ¶ 3; Motion at ¶ 7. This recovery constitutes a coin-for-coin recovery whereby Gemini Lenders like Mr. Asquith received the benefit of any increase in value of their Digital Assets from the time they lent them to Debtors through to the time Debtors returned them. *See, e.g.*, Motion at ¶¶ 57–58 ("On June 20, 2024, the Gemini Distribution Agent made final distributions to Gemini Lenders, returning *all* of the Digital Assets owed to Gemini Lenders as of November 16, 2022.") (emphasis added); *see also* Distribution Notice at ¶¶ 6–7; 100% Distribution Notice at ¶¶ 6–7, 10; Settlement Mot. Ex. E, Gemini 9019 Motion Notice at ¶ 3. So to the extent the Gemini

Lenders recovered on account of their claims for Loaned Coins, Loan Fees, Late Fees, New Tokens, and Additional MLA Claims against the Debtors, it is unclear what else Mr. Asquith would be entitled to receive as damages.  Of course, the Court will not opine on the merits of the specific claims or asserted damages against non-Debtors in an arbitration not before this Court; such a task is best left to any arbitrator presiding over such matters.  So to the extent the recovery received in these bankruptcy cases on these items is robust but not complete, one supposes that Gemini Lenders could seek to recover the remaining delta if liability against Gemini could be established.  *See Fed. Ins. Co.*, 529 F. Supp. 2d at 463; *see also In re Nanobeak Biotech Inc.*, 656 B.R. at 369 (citing *In re Belmonte*, 551 B.R. at 732).  Accordingly, the Court will not categorically bar Mr. Asquith from pursuing potential claims not before it against a non-Debtor, Gemini, on account of conduct that does not include the Debtors' failure to return Digital Assets or pay Interest, or the Debtors' breach of the MLA, Earn Agreement, or Security Agreement. But insofar as Mr. Asquith has received full, coin-for-coin recoveries on account of the distributions made pursuant to the Gemini Master Claim, plus any appreciation in value of Digital Assets following the Petition Date, he has already recovered significant recompense under the Settlement Agreement for which Mr. Asquith cannot doubly recover.

## **CONCLUSION**

For the reasons stated above, Mr. Asquith is bound to the Settlement Agreement and is barred from pursuing any claims against the Debtors, but is not barred from pursuing his separate claims, if any, that he may have against non-Debtor, Gemini, for which he has not already received a recovery.   Gemini shall file an order on five days' notice consistent with this Memorandum of Decision.  The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the

proposed order attached as an exhibit to the notice.  A copy of the notice and proposed order

shall also be served upon counsel to Mr. Asquith.  Gemini shall serve a copy of this

Memorandum of Decision on Mr. Asquith and all parties in interest within five days of entry of

this Memorandum of Decision.

Dated: White Plains, New York
      January 13, 2026

*/s/ Sean H. Lane*               
UNITED STATES BANKRUPTCY JUDGE